WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

*Attorneys for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re:                                                    :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.,*   :    Case No. 08-13555 (JMP)
:
Debtors.                                 :    (Jointly Administered)
:
------------------------------------------------------------x

STIPULATION AND ORDER
GRANTING FURTHER ADEQUATE PROTECTION
TO SUMITOMO MITSUI BANKING CORPORATION

Lehman Brothers Holdings Inc. ("*LBHI*") and its affiliated debtor in the above referenced chapter 11 cases, Lehman Commercial Paper Inc. ("*LCPI*"), as debtors and debtors-in-possession (together, the "Debtors" and together with their debtor and non-debtor affiliates, "*Lehman*") and Sumitomo Mitsui Banking Corporation ("*SMBC*"), by and through their respective counsel hereby enter into this Stipulation and Order (this "*Stipulation*").

THE PARTIES HEREBY STIPULATE AND THE COURT HEREBY FINDS as follows:

A.    Commencing on September 15, 2008 (the "*LBHI Commencement Date*"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").  On October 5, 2008 (the "*LCPI*

*Commencement Date*"), LCPI and certain other affiliates of LBHI commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

   B. Prior to the LBHI Commencement Date, LBHI and SMBC entered into a Loan and Security Agreement dated as of May 27, 2008 (the "*Loan Agreement*") pursuant to which SMBC made loans and other financial accommodations to LBHI, the proceeds of which are stated in the Loan Agreement to be used to finance assets owned by LCPI.

   C. Pursuant to the Loan Agreement, LBHI and LCPI pledged to SMBC certain financial assets together with any and all replacements, substitutions, distributions on or proceeds thereof (the "*Collateral*") to secure LBHI's obligations to SMBC. The Collateral includes, without limitation, the corporate loans identified on Exhibit A hereto (the "*Pledged Assets*").

   D. SMBC has valid, perfected, and unavoidable first priority liens upon and security interests in the Collateral.

   E. As of the LBHI Commencement Date, the principal amount of $350,000,000, together with accrued and unpaid interest in an amount equal to $573,307.29, was outstanding under the Loan Agreement (the "*Obligations*").

   F. LCPI hereby represents and warrants that it is the sole legal and beneficial owner of the loan identified on Exhibit A as Carlsberg Refi 12 Oct 05 Multi-Currency Revolver (as funded, the "*Carlsberg Loans*" and the agreement governing the Carlsberg Loans being the "*Carlsberg Multi-Currency Revolver Agreement*"), and has good title to the Carlsberg Loans, free and clear of any options, pledges, interests, mortgages, security interests, liens, claims, rights of first refusal, purchase or repurchase rights, or any other third party rights of any kind or nature, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind, whether direct or indirect, absolute or contingent, matured or unmatured, liquidated

or unliquidated, other than the claims and interests of SMBC under the Loan Agreement.  Each of LBHI and LCPI hereby represents and warrants that as of the date hereof, it was not the owner or beneficiary of, any credit insurance or credit default protection in respect of the Pledged Assets.

G. On October 15, 2008, SMBC filed a Motion for an Entry of an Order Pursuant to 11 U.S.C. §362(d) and Fed. R. Bankr. P. 4001 Granting Relief from the Automatic Stay to Foreclose on its Collateral (the "*Motion*") [LCPI Doc. No. 17].  Objections to the Motion were resolved by entry of a Stipulation and Order Granting Adequate Protection (the "*Original Stipulation*") on December 17, 2008 [LBHI Doc. No. 2286].  Shortly thereafter, on January 16, 2009, this Court entered the Amended Stipulation and Order Granting Adequate Protection [LBHI Doc. No. 2567] (the "*Amended Stipulation*") to facilitate the transfer of one of the Pledged Assets as contemplated by the parties.

H. Under the Original Stipulation and the Amended Stipulation, SMBC reserved the right to seek further adequate protection.  In order to provide SMBC with further adequate protection, subject to approval of this Court, the Debtors have agreed to transfer the Carlsberg Loans to SMBC and SMBC has agreed to accept and assume the same on the terms set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND UPON COURT APPROVAL HEREOF, IT IS ORDERED THAT:

1. To adequately protect SMBC for any diminution in the value of the Collateral from and after the LCPI Commencement Date resulting from the stay imposed under Section 362 of the Bankruptcy Code, to enable the Debtors to reduce interest accrual under the Loan Agreement and to eliminate the Debtors' funding obligations and other liabilities under the

3

Carlsberg Loans, (a) the Debtors shall irrevocably sell, transfer, assign, grant and convey the Carlsberg Loans and the related transferred rights to SMBC with effect on and after date the agent makes the transfer effective (the "*Effective Date*"); and (b) SMBC shall irrevocably acquire the Carlsberg Loans, and assume and agree to perform and comply with all obligations and liabilities of LCPI with respect to, or in connection with, the Carlsberg Loans resulting from facts, events or circumstances arising or occurring on or after the Effective Date (the "*Assumed Obligations*").

2.  To accomplish the assignment of the Carlsberg Loans, the Debtors shall, within five (5) business days of the entry of this Stipulation, execute and deliver the Transfer Certificate specified by the Carlsberg Multi-Currency Revolver Agreement in substantially the form attached hereto as Exhibit B (the "*Transfer Certificate*"). In connection with the transfer of the Carlsberg Loans, the Debtors and SMBC have agreed to (a) the purchase of the funded principal amounts of the Carlsberg Loans, and (b) solely as a further benefit to the Debtors' estate, the assumption at par of LCPI's unfunded commitment under the Carlsberg Multi-Currency Revolver Agreement. As undertaken by the Debtors and SMBC under the Amended Stipulation, the exchange rate for the Carlsberg Loans shall be determined by reference to the Bloomberg Benchmark Currency Rates on the Effective Date. Consequently, immediately upon the Effective Date, in consideration of the purchase of the Carlsberg Loans, the outstanding amount of LBHI's Obligations under the Loan Agreement shall be reduced by an amount equal to the product of the U.S. dollar equivalent of the then funded principal amount of the Carlsberg Loans multiplied by .94. Any transfer fee associated with the Transfer Certificate shall be split between LCPI and SMBC and paid by SMBC to the agent on or before the Effective Date.

4

3.  The Debtors are authorized and directed, without further Order of this Court, to execute and deliver, and empowered and directed to perform under, consummate and implement, the terms of this Stipulation and the Transfer Certificate, together with all additional documents that may be reasonably necessary or desirable to consummate the transfer of the Carlsberg Loans to SMBC and to take all further actions as may be reasonably requested by SMBC for the purpose of performing its obligations under this Stipulation, including, without limitation, the assignment and transfer of the Carlsberg Loans to SMBC.

4.  SMBC agrees that it shall not seek further adequate protection or relief from the automatic stay until after September 1, 2009; _provided_, _that_, neither the Debtors nor SMBC shall be precluded from seeking this Court's approval of further consensual adequate protection arrangements.

5.  To the extent permitted under applicable law, the terms and provisions of this Stipulation shall be binding upon the Debtors and their successors and assigns, including, but not limited to, any trustee appointed in these cases, in any superseding case or in any case related hereto, and shall survive for the benefit of SMBC and the Debtors.

6.  The automatic stay imposed by Section 362 of the Bankruptcy Code shall be, and hereby is, lifted and vacated to the extent necessary, if any, to authorize the payments required hereunder and to implement and effectuate the terms and conditions of this Stipulation.

7.  Except as supplemented by this Stipulation, all of the terms, conditions, covenants, provisions, representations, warranties and conditions of the Amended Stipulation shall remain in full force and effect and are hereby acknowledged, ratified, confirmed and continued as if fully restated hereby.  It is the intention of the Debtors and SMBC that this

Stipulation shall not constitute a novation and shall in no way adversely affect, diminish or impair the Debtors' performance of their obligations under the Amended Stipulation.

8. On and after the effectiveness of this Stipulation, each reference in the Amended Stipulation such as "this Stipulation", "hereunder", "hereof" or words of like import internally referring to the Amended Stipulation, shall mean and be a reference to the Amended Stipulation, as supplemented by this Stipulation.

9. The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

10. This Stipulation can only be amended or otherwise modified by a signed writing executed by the parties hereto.

11. Each person who executes this Stipulation on behalf of a party hereto represents that he is duly authorized to execute this Stipulation on behalf of such party.

12. This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

13. If this Stipulation is not approved by the Bankruptcy Court, it shall be deemed null and void and shall not be referred to or used for any purpose by any of the parties hereto or any of the other parties in the Debtors' chapter 11 cases.

*[Remainder of Page Left Intentionally Blank.
Signature Page Follows.]*

New York, New York
Dated: June 2, 2009

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ Jacqueline Marcus

767 Fifth Avenue
New York, New York 10153
Telephone: 212.310.8000
Facsimile: 212.310.8007

*Attorneys for Debtors and Debtors in Possession*

**MAYER BROWN LLP**

By: /s/ Frederick D. Hyman

1675 Broadway
New York, New York 10019
Telephone: 212.506.2500
Facsimile: 212.262.1910

*Attorneys for Sumitomo Mitsui Banking Corporation*

SO ORDERED this 17th day June, 2009

    *s/ James M. Peck*
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A
**(As of 5/27/09)**

| CREDIT FACILITY | FACILITY | CURRENCY | COMMITMENT | OUTSTANDING FUNDED AMOUNTS |
|---|---|---|---|---|
| FORD MOTOR COMPANY (12/15/06) | 7-yr term | USD | 44,899,929.17 | 44,899,929.17 |
| TXU ENERGY (10/10/07) CITI | Term Loan B-2 | USD | 24,811,082.76 | 24,811,082.76 |
| TXU ENERGY (10/10/07) CITI | Term Loan B-3 | USD | 46,591,412.71 | 46, 591,412.71 |
| US INVESTIGATION SERVICES 08/21/07 | Term Loan | USD | 78,772,182.32 | 78,772,182.32 |
| CARLSBERG (27OCT07) | Term Loan A | GBP | £12,805,358.57 | €16,250,000.00 |
| CARLSBERG REFI (12OCT05) | Multi-Currency Revolver | EUR | €64,473,684.21[*] | €26,315,789.47 |
|  |  | CHF |  | SFr.20,263,157.89 |
| W E S T CORPORATION | Term Loan B-2 | USD | 18,997,423.59 | 18,997,423.59 |

---

[*] As of the date hereof, €24,794,342.11 of the Multi-Currency Revolving Commitment is unfunded and the funded portion of the Commitment is in two different currencies – Euros and Swiss Francs.

# **EXHIBIT B**

**FORM OF TRANSFER CERTIFICATE**

# Transfer Certificate

To:     Danske Bank A/S, as Agent

From:   Lehman Commercial Paper Inc. (the "**Existing Lender**") and Sumitomo Mitsui Banking Corporation (the "**New Lender**")

Dated: [●]

**Euro 1,425,000,000 Multicurrency Revolving Facility Agreement
dated 12 October 2005 (the "Agreement")**

1  We refer to the Agreement. This is a Transfer Certificate. Terms defined in the Agreement have the same meaning in this Transfer Certificate unless given a different meaning in this Transfer Certificate.

2  We refer to clause 22.5 (*Procedure for transfer*):

   (a)  The Existing Lender and the New Lender agree to the Existing Lender transferring to the New Lender by novation all or part of the Existing Lender's Commitment, rights and obligations referred to in the Schedule in accordance with clause 22.5 (*Procedure for transfer*).

   (b)  The proposed Transfer Date is [●].

   (c)  The Facility Office and address, fax number and attention details for notices of the New Lender for the purposes of clause 29.2 (*Addresses*) are set out in the Schedule.

3  The New Lender expressly acknowledges the limitations on the Existing Lender's obligations set out in of clause 22.4.3 (*Limitation of responsibility of Existing Lenders*).

4  This Transfer Certificate may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Transfer Certificate.

5  This Transfer Certificate is governed by English law.

## The Schedule

**Commitment/rights and obligations to be transferred**

| <u>Facility</u> | <u>Commitment</u> |
|---|---|
| Multi-Currency Revolving Facility | €64,473,684.21 |

*Facility Office address, fax number and attention details for notices and account details for payments are as on file with the Agent*

| LEHMAN COMMERCIAL PAPER INC. | SUMITOMO MITSUI BANKING CORPORATION |
|---|---|
| By: _____ | By: _____ |

This Transfer Certificate is accepted by the Agent and the Transfer Date is confirmed as [●].

DANKSE BANK A/S, as Agent

By: _____