**Hearing Date: June 24, 2009, 10:00 a.m**.

ENTWISTLE & CAPPUCCI LLP
Andrew J. Entwistle (AE-6513)
Johnston de F. Whitman, Jr. (JW-5781)
Jonathan H. Beemer (JB-0458)
Joshua K. Porter (KP-2660)
280 Park Avenue, 26th Floor West
New York, New York 10017
Telephone: (212) 894-7200

*Counsel for New York State Comptroller*
*Thomas P. DiNapoli, as Administrative*
*Head of the New York State and Local*
*Retirement Systems and Sole Trustee of*
*the New York State Common Retirement Fund*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., | Case No. 08-13555 (JMP) |
| Debtor. | (Jointly Administered) |

**LIMITED JOINDER OF THE NEW YORK STATE COMPTROLLER IN THE EXAMINER'S RESPONSE TO ERNST & YOUNG LLP'S OBJECTIONS TO THE EXAMINER'S RULE 2004 SUBPOENA**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

New York State Comptroller Thomas P. DiNapoli (the "Comptroller"), as Administrative Head of the New York State and Local Retirement Systems and sole Trustee of the New York State Common Retirement Fund ("NYSCRF"), by and through his undersigned counsel, respectfully submits this limited joinder (the "Joinder") in the Examiner's Response to Ernst &

Young's Objections to the Examiner's Rule 2004 Subpoena (the "Response") (Docket No. 3805). In support of this Joinder, the Comptroller respectfully represents:

**Preliminary Statement**

1. The Examiner's Response correctly identifies areas in which Ernst & Young LLP's Objections and Responses to the Examiner's Subpoena for Rule 2004 Examination (the "Objections") (Docket No. 3790) are wholly misguided. The Comptroller leaves Ernst & Young's ("E&Y") arguments regarding the relevance of specific documents and putative confidentiality issues to the sound discretion of the Examiner and the professionals that he has retained. The Comptroller, however, submits this Joinder to separately address the most glaring error in E&Y's Objections.

2. E&Y contends that the scope of the Examiner's investigation is limited to the few months preceding Lehman Brothers Holdings Inc.'s ("LBHI") September 15, 2008 bankruptcy filing. (*See* Objections at 1-3; *see also* E&Y's Reply Memorandum In Support of Its Objections and Responses to the Examiner's Subpoena for Rule 2004 Examination (Docket No. 3980) at 2.) Indeed, E&Y carries its misguided and unduly narrow view of the Examiner's investigation so far as to state that the investigation is "by design specifically and narrowly focused on 2008 events." (Objections at 5.) The record here -- including the language of the Court's January 16, 2009 Order Appointing the Examiner (the "Examiner Order") (Docket No. 2569) and the Examiner's Preliminary Work Plan approved by the Court on February 17, 2009 (the "Work Plan") (Docket No. 2855) -- demonstrates that E&Y is wrong.

3. Moreover, E&Y's position contravenes the statutory mandate under which the Court appointed the Examiner, which requires the Examiner to investigate allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity by current or former management of the debtor *and contains no temporal limitation to the Examiner's investigation.*

Here, the Examiner Order specifically incorporates the statute that governs an examiner's duties, and E&Y's constrained reading of the Order cannot insulate E&Y from producing all information relevant to the wide-inquiry that the statute requires the Examiner to perform.

4.   No party from which the Examiner seeks information should be permitted to obstruct the complete and transparent investigation of the circumstances surrounding LBHI's historic collapse. The Comptroller, therefore, respectfully requests that the Court overrule the Objections and affirm that the Examiner Order and Work Plan authorize a broad investigation consistent with the statutory scheme such that other parties from whom the Examiner seeks information will refrain from raising similar objections.

## Background to the Examiner's Appointment

5.   On October 20, 2008, The Walt Disney Company ("Disney") filed a motion to appoint an examiner to investigate, among other things, intercompany transfers and administrative claims between LBHI and its affiliates and prepetition conduct by certain of the Debtors' officers and directors (Docket No. 1143).

6.   On October 31, 2008, Bank of America, N.A. (Docket No. 1302) and Harbinger Capital Partners (Docket No. 1310) filed joinders in Disney's motion with certain suggested changes to the scope of the examiner investigation that Disney proposed.

7.   On November 4, 2008, the Comptroller filed his Motion for Appointment of a Trustee or, in the Alternative, an Examiner with Expanded Powers (the "Comptroller's Motion") (Docket No. 1376) pursuant to Sections 1104(a) and 1104(c) of Title 11 of the United States Code (the "Bankruptcy Code" or "Code"). While arguing for the appointment of an independent trustee, the Comptroller alternatively stressed that ample grounds existed for the Court to appoint an examiner with expanded powers pursuant to Section 1104(c) of the Bankruptcy Code to

broadly investigate the Debtor and its former management on behalf of all creditors, equity holders and parties-in-interest.

8. Even while objecting to the Comptroller's Motion, the Debtors conceded that appointing an examiner under Section 1104(c) of the Bankruptcy Code was required under the circumstances presented. (*See* January 5, 2009 Opposition of LBHI and affiliated debtors Comptroller's Motion (Docket No. 2427) at ¶ 31). The Official Committee of Unsecured Creditors made a similar concession in its January 9, 2009 Response to Disney's Motion. (*See* Docket No. 2477 at ¶¶ 1-2.)

9. Based upon the fact that appointment of an examiner was mandatory, coupled with the Court's guidance that the scope of the examiner's investigation would ultimately be a matter of the Court's discretion, the Comptroller elected, without prejudice, to defer the portion of his Motion seeking appointment of a Chapter 11 trustee under Section 1104(a) until receiving and reviewing the examiner's report or until such other circumstances may indicate that it is appropriate to place the trustee motion back on the Court's calendar. In so doing, the Comptroller noted that the manifest statutory intent of the Bankruptcy Code favored an examination guided by the hallmarks of flexibility, transparency, independence, integrity and freedom from bias. For this reason, the Comptroller emphasized that Sections 1104(c) and 1106(a)(3) of the Code provide that, subject to the discretion of the Court, an examiner shall investigate, among other things, "any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor or by current or former management" and all "acts, conduct, assets, liabilities, and financial condition of the debtor [and] operation of the debtor's business."

**Interested Parties Negotiate the Proposed Scope of the Examiner's Investigation**

10. On January 14, 2009, the Court conducted a hearing in connection with, among other things, the respective motions of Disney and the Comptroller regarding the appointment of an examiner. During this hearing, counsel for the Debtors assured the Court that an examiner appointed on the terms the Debtors proposed would investigate fraud, gross incompetence, or related misconduct (*See* Jan. 14, 2009 Morning Hr'g. Tr. at 85: 20-22; 101: 7-12). Debtors' counsel further represented that the form of [Proposed] Order submitted to the Court would include a provision that the examiner determine whether there are any facts "pertaining to fraud, dishonest [sic], incompetence, misconduct, mismanagement or irregularity in the affairs of the debtor or to a cause of action available to the estate." (January 14, 2009 Afternoon Hr'g. Tr. at 53: 6-15.) The Court so-ordered the record of the January 14, 2009 hearing. (*Id.* at 54: 17-19.)

11. Following the January 14, 2009 hearing, interested parties met and conferred concerning the examiner appointment. As instructed, counsel for the Debtors circulated a draft [Proposed] Order to other interested parties later that evening.

12. Counsel for the other interested parties promptly provided comments on the draft [Proposed] Order to Debtors' counsel on January 15-16, 2009. Among the comments provided, the Comptroller suggested that the "fraud" language set forth in section 1104(c) of the Code be included in the scope of the Examiner's investigation to remove any doubt that the Examiner's mandate would reflect the intent of the statute. Debtors' counsel refused to include the language or a reference to section 1104(c) based upon counsel's position that the [Proposed] Order's reference to sections 1106(a)(3) and (4) of the Code was all that was necessary. (*See* Ex. A hereto.)

13. Shortly after the Court entered the Examiner Order on January 16, 2009, Debtors'

EC.22320.5

5

counsel sent an e-mail to the Court addressing, among other issues, the Comptroller's position that a reference to section 1104(c) in the [Proposed] Order was advisable to confirm the Examiner's wide-mandate. Debtors' counsel replied:

> the Debtors incorporated into the proposed Order that the duties of the Examiner specifically include those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code. That inclusion covers the subjects that they desire the Examiner to investigate. The words of the statute need not be repeated in the body of the Order. Indeed the statutory language is more than sufficient to cover all aspects of the investigation that the Examiner may pursue. *There is no limitation on the Examiner under the statutory language unless the Court orders otherwise.*

(Emphasis added.) (Ex. B.)

14. In light of the above, Debtors' counsel conceded that the [Proposed] Order empowered the Examiner to investigate, among other things, "any other matter relevant to the case," including "fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor . . . ." 11 U.S.C. § 1106(a)(3)(4).

**The Court's Order Appointing the Examiner and The Examiner's Work Plan**

15. On January 16, 2009, the Court signed the Examiner Order. The Examiner Order enumerates a number of specific areas that the Examiner's investigation "shall include" (Examiner Order at ¶2) and confirms that "[t]he Examiner *shall perform* the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise. (Examiner Order at ¶3.) (Emphasis added.)

16. The Examiner Order makes clear that the Examiner was appointed pursuant to Section 1104(c)(2) of the Bankruptcy Code. (Examiner Order at 1.) As such, the Examiner's investigation includes "an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor" (11 U.S.C. § 1104(c)), and neither the statute nor the Examiner Order contains a temporal limitation on the information that the Examiner may

discover to perform these specified duties. Moreover, there is no indication that the duties specified in the Examiner Order are an exhaustive account of the areas that the Examiner is permitted to investigate.

17. The Examiner was appointed on January 20, 2009 (Docket No. 2583). The Examiner Order directed the Examiner to meet and confer with interested parties' representatives, including counsel for the Comptroller, to develop a work plan for the Examiner's investigation to submit to the Court. (Examiner Order at ¶¶11-12.) Pursuant to the Order, the Examiner met with representatives for interested parties on January 26, 2009.

18. The Court conducted a hearing on February 11, 2009 to consider, among other things, the Examiner's proposed Work Plan. During this hearing, the Court noted that the Examiner's mandate was "quite broad." (Feb. 11, 2009 Hrg. Tr. at 25: 21.) The Court approved the Work Plan at this hearing and entered an Order approving the Work Plan on February 17, 2009. The Court's Order approving the Work Plan affirms the Examiner's appointment pursuant to Section 1104(c)(2) of the Bankruptcy Code.

19. The Work Plan's definition of the "Investigation" includes "perform[ing] the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code. (Work Plan at ¶2.) Moreover, the Work Plan specifically provides that the Examiner will gather documents from the Debtors' auditors. (Work Plan at ¶19.) While the Work Plan provides for submission of the Examiner's Final Report within nine months of February 2009, it also anticipates that "the Examiner may need to advise the Court of the need for an expanded schedule." (Work Plan at ¶30.) As the Examiner correctly notes, E&Y's refusal to cooperate with the Examiner's investigation may jeopardize the timetable set forth in the Work Plan. (Response at 10.)

EC.22320.5                                   7

**The Examiner's Mandate Is Broad and Does Not Contain Specific Temporal Limitations**

20.     E&Y's Objections are founded upon the flawed premise that the Examiner Order and the Work Plan contain "plainly defined limitations" authorizing the Examiner to investigate "only certain specified matters."  (Objections at 1; *see also* Objections at 3 "Examiner's work plan[] directs the Examiner to investigate only the following specifically-delineated matters … .")  The Examiner Order and the Work Plan, however, only enumerate areas that the Examiner's investigation must "include."  Neither document can be read as preventing the Examiner from investigating other areas -- particularly those that sections 1104(c) and 1106(a)(3) and (4) require, which by statute are included in the Examiner's investigation unless the Court orders otherwise.[1]

21.     Based upon its fundamental misapprehension of the scope and subject matter of the Examiner's investigation, E&Y contends that the Examiner's subpoena is overbroad because the investigation is "by design [] specifically and narrowly focused upon 2008 events.  (Objections at 5.)  Again, E&Y is wrong.

22.     As the Examiner notes in his Response, the investigation must include determining whether colorable claims for breach of fiduciary duty exist against the Debtors' directors and officers.  (Response at 8.)  Moreover, both the Examiner Order and the Work Plan require the Examiner to investigate matters consistent with his duties under Sections 1106(a)(3) and (4) of the Bankruptcy Code, including whether LBHI fraudulently failed to disclose its true financial condition to E&Y and the public in the years leading up to LBHI's collapse.  There is no temporal boundary to the information that the Examiner may discover to discharge these

---

[1] The Objections also contain factual errors, including E&Y's claim that "[t]he parties requesting the appointment of an examiner argued that the scope of the Examiner's investigation should be narrowly focused on the months leading up to LBHI's bankruptcy." (Objections at 2.) As noted above, the Comptroller and others requested a broad investigation of the areas set forth in section 1104(c) of the Code, which are included in the Examiner's mandate.

EC.22320.5                                                8

duties. Instead, as the Examiner correctly states, his "mandate is open-ended" and nothing bars (or excuses) the Examiner from examining evidence from 2007 or before. (Response at 10.)

23. E&Y's errant constrained reading of the scope of the Examiner's investigation lies at the foundation of its General Objection 11, in which E&Y claims that documents other than E&Y's workpapers are irrelevant and "beyond the scope of the Examiner's work plan." (Objections at 11.) Furthermore, E&Y's incorrectly restrictive interpretation of the Examiner's mandate debases E&Y's Responses to Requests 1, 2, and 4 of the Examiner's Subpoena.

24. The putative temporal limitations to discoverable information upon which E&Y purports to rely in its Objections do not exist in the Examiner Order or in the Work Plan. Accordingly, such manufactured relevance boundaries cannot serve as a basis for E&Y or any other party to resist the discovery that the Examiner determines is appropriate to perform the full investigation with which he is charged. To that end, the Comptroller respectfully requests that the Court overrule the Objections on the grounds contained herein and in the Response and affirm that that the Examiner Order and Work Plan authorize a broad investigation consistent with statutory scheme.

**Conclusion**

For all of the foregoing reasons, New York State Comptroller, Thomas P. DiNapoli, joins in the Examiner's Response and respectfully requests that this Court grant the relief requested in the Response, affirm that E&Y's temporal limitations and relevance objections ore overruled, and affirm the broad scope of the Examiner's mandate.

Dated:    New York, New York
          June 17, 2009

                              ENTWISTLE & CAPPUCCI LLP

                              By:    /s/ Andrew J. Entwistle
                                  Andrew J. Entwistle (AE-6513)
                                  Johnston de F. Whitman, Jr. (JW-5781)
                                  Jonathan H. Beemer (JB-0458)
                                  Joshua K. Porter (KP-2660)
                                  280 Park Avenue, 26th Floor West
                                  New York, New York 10017
                                  Telephone:  (212) 894-7200

                              *Counsel for New York State Comptroller*
                              *Thomas P. DiNapoli, as Administrative*
                              *Head of the New York State and Local*
                              *Retirement Systems and Sole Trustee of*
                              *the New York State Common Retirement Fund*

# EXHIBIT A

## Joshua Porter

| | |
|---|---|
| **From:** | Andrew J. Entwistle |
| **Sent:** | Friday, January 16, 2009 1:02 PM |
| **To:** | Andrew J. Entwistle; 'harvey.miller@weil.com'; 'MBienenstock@deweyleboeuf.com'; 'ddunne@milbank.com'; 'jeffrey.sabin@bingham.com'; 'kobak@hugheshubbard.com'; 'Danna.Drori@usdoj.gov'; 'fsosnick@shearman.com'; 'jschiller@bsfllp.com'; 'metkin@lowenstein.com'; 'Diana.G.Adams@usdoj.gov'; 'Andy.Velez-Rivera@usdoj.gov'; 'Linda.Riffkin@usdoj.gov'; 'Tracy.Davis2@usdoj.gov' |
| **Cc:** | J. Whitman; Joshua Porter; Jonathan Beemer |
| **Subject:** | RE: Order Directing Appointment of an Examiner |

Harvey,

If you continue in your refusal to either incorporate the changes noted below or to follow the suggestions in my earlier email then please include this email chain AND our email exchange from this morning with the Proposed Order when you submit it to the Court.

Assuming you follow the changes noted in the below email chain it will not be necessary to make the change to the fiduciary duty paragraph noted in this morning's email.

Many Thanks.

Andrew

---

**From:** Andrew J. Entwistle
**Sent:** Friday, January 16, 2009 12:45 PM
**To:** 'harvey.miller@weil.com'; MBienenstock@deweyleboeuf.com; ddunne@milbank.com; jeffrey.sabin@bingham.com; kobak@hugheshubbard.com; Danna.Drori@usdoj.gov; fsosnick@shearman.com; jschiller@bsfllp.com; metkin@lowenstein.com; Diana.G.Adams@usdoj.gov; Andy.Velez-Rivera@usdoj.gov; Linda.Riffkin@usdoj.gov; Tracy.Davis2@usdoj.gov
**Cc:** J. Whitman; Joshua Porter; Jonathan Beemer
**Subject:** RE: Order Directing Appointment of an Examiner

Dear Harvey,

The changes you have made fail to address the issues set forth in my last email to you. By leaving out all of the Section 1104(c) language you have only served to exacerbate the problem. Please either include a reference to Section 1104(c) in your new paragraph #3 or use the language reflected in my earlier email. Your continued and indefensible insistence on excluding the statutory reference to the Debtors' current or former management and directors--even after the inapplicability of Caplin (which I note specifically contemplates the use of a Trustee or Examiner's investigation by creditors, including shareholders *@434) has been pointed out to you--leads one to the conclusion that the Board is improperly influencing the course of events here in trying to insulate itself from the Examiner's investigation. I trust you will give this simple solution thoughtful consideration.

Regards,

Andrew

---

**From:** joanne.pflaum@weil.com [mailto:joanne.pflaum@weil.com] **On Behalf Of** harvey.miller@weil.com
**Sent:** Friday, January 16, 2009 12:22 PM
**To:** MBienenstock@deweyleboeuf.com; ddunne@milbank.com; jeffrey.sabin@bingham.com; Andrew J. Entwistle; kobak@hugheshubbard.com; Danna.Drori@usdoj.gov; fsosnick@shearman.com; jschiller@bsfllp.com; metkin@lowenstein.com; Diana.G.Adams@usdoj.gov; Andy.Velez-Rivera@usdoj.gov; Linda.Riffkin@usdoj.gov;

Tracy.Davis2@usdoj.gov
**Subject:** Order Directing Appointment of an Examiner

Ladies and Gentlemen:

Attached is the second revised proposed Order Directing Appointment of an Examiner. Based upon the comments received, the objection of the Bank of America to including "parties in interest" being subject to the direction of cooperation with the examiner has been deleted. I assume that Bank of America has no further objections.

The comments of the UCC, including its proposed new decretal paragraph #9, has been included in the attachment, notwithstanding the comment of Mr. Etkin. I understand that the Committee is agreeable that there is no need to include in the last paragraph of the proposed order the parenthetical phrase or other language that would predetermine what may happen in the meet and confer required under that decretal paragraph. On that basis, I assume the UCC is satisfied with the revised order.

I understand that TWDC is satisfied.
The United States Trustee is satisfied.
The SIPA Trustee is satisfied.

That leaves Messrs. Entwistle and Etkin. In connection with their comments, I have eliminated the final bullet point in paragraph 2 of the proposed order and set out a new paragraph 3 which provides:
    The Examiner shall perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise.

The foregoing language captures all that I believe the NYS Comptroller and the Lead Plaintiffs need.

I propose to submit the attachment to the Bankruptcy Court this afternoon with a copy of a summary of any remaining objections. If any party wishes to submit a summary of its objections or comments, I would be happy to submit it with the proposed order. I assume with that information the Court will make a determination as to how it wishes to proceed.

Thank you all for your vigorous commentary and participation. I hope that we are at the terminal point.


Harvey R. Miller
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
212-310-8500 (phone)
212-310-8077 (fax)

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.

1/16/2009

# EXHIBIT B

----- Original Message -----
From: harvey.miller@weil.com <harvey.miller@weil.com>
To: jmp.chambers@nysb.uscourts.gov <jmp.chambers@nysb.uscourts.gov>
Cc: ddunne@milbank.com <ddunne@milbank.com>; efleck@milbank.com <efleck@milbank.com>;
jeffrey.sabin@bingham.com <jeffrey.sabin@bingham.com>; Andrew J. Entwistle;
kobak@hugheshubbard.com <kobak@hugheshubbard.com>; danna.Drori@usdoj.gov
<danna.Drori@usdoj.gov>; fsosnick@shearnan.com <fsosnick@shearnan.com>;
jschiller@bsflip.com <jschiller@bsflip.com>; diana.g.adams@doj.gov
<diana.g.adams@doj.gov>; linda.riffkin@usdoj.gov <linda.riffkin@usdoj.gov>; Andy.Velez-
Rivera@doj.gov <Andy.Velez-Rivera@doj.gov>; MBienenstock@deweyleboef.com
<MBienenstock@deweyleboef.com>; john.lucas@wei.com <john.lucas@wei.com>
Sent: Sat Jan 17 12:08:42 2009
Subject: Lehman Brothers Holdings Inc., et al ., Case No. 08 - 13555 (JMP) Proposed
Examiner Order


Dear Judge Peck,
Reference is made to the string of e-mails received last evening from Messrs Bienenstock,
Etkin and Entwistle.
I acknowledge that the comments made by Mr. Bienenstock as to the sequence of emails is
correct.
In the context of the comments made by each of the foregoing  I point out that  as a
result of the comments that had been received from Messrs Etkin and Entwistle, the Debtors
incorporated into the proposed Order that the duties of the Examiner specifically include
those set forth in sections 1106 (a) (3) and (4) of the Bankruptcy Code. That inclusion
covers the subjects that they desire the Examiner to investigate. The words of the statute
need not be repeated in the body of the Order. Indeed the statutory language is more than
sufficient to cover all aspects of the investigation that the Examiner may pursue. There
is no limitation on the Examiner under the statutory language unless the Court orders
otherwise.
As for Mr. Bienenstock's comments, as discussed with the OUST, questions of timing,
reports, coordination etc,. were deemed to be  subjects for the meet and confer  sessions.
The objective is not to constrain the views of the Examiner and to give it the opportunity
to weigh in on the process.
The Debtors proposed Order as supported by the OUST, the Creditors Committee, the SIPA
Trustee, Barclays Capital, Inc., the Harbinger Funds ( as defined), the Bank of America
and is not objectable to the office of the United States Attorney for the SDNY, fairly
cover the matters that were heard before the Court on January 14, 2009. Accordingly it
should be entered with any changes that the Court may deem appropriate.


Respectfully,


Harvey R. Miller

Harvey R. Miller
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
212-310-8500 (phone)
212-310-8077 (fax)

1

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.