1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC., et al.,


       Debtors.


- - - - - - - - - - - - - - - - - - - -x


       United States Bankruptcy Court

       One Bowling Green

       New York, New York


       June 17, 2009

       2:07 PM



B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2  HEARING re Motion Seeking Authorization of Intercompany Funding

3  of ARS Holdings II LLC by Lehman Brothers Holdings Inc. [Docket

4  No. 3872]

5

6  HEARING re Debtors' Motion for Approval of a Cross-Border

7  Insolvency Protocol [Docket No. 3647]

8

9  HEARING re Debtors' Motion for Authorization to Establish

10  Procedures to Sell or Abandon De Minimis Assets [Docket No.

11  3572]

12

13

14

15

16

17

18

19

20

21

22

23

24  Transcribed by:  Clara Rubin

25

3

```
 1
 2    A P P E A R A N C E S :
 3    WEIL, GOTSHAL & MANGES LLP
 4          Attorneys for Debtor Lehman Holding Brothers Inc. and
 5             Its Affiliated Debtors
 6          767 Fifth Avenue
 7          New York, NY 10153
 8
 9    BY:   GARRETT AVERY FAIL, ESQ.
10          ANTHONY J. ALBANESE, ESQ.
11          RICHARD P. KRASNOW, ESQ.
12
13
14    HUGHES HUBBARD & REED LLP
15          Attorneys for James W. Giddens, Trustee for the SIPA
16          Liquidation of Lehman Brothers Inc.
17          One Battery Park Plaza
18          New York, NY 10004
19
20    BY:   JAMES B. KOBAK JR., ESQ.
21
22
23
24
25
```

4

1

2    KRAMER LEVIN NAFTALIS & FRANKEL LLP

3          1177 Avenue of the Americas

4          New York, NY 10036

5

6    BY:   DANIEL M. EGGERMANN, ESQ.

7          THOMAS MOERS MAYER, ESQ.

8

9

10   MILBANK, TWEED, HADLEY & MCCLOY LLP

11         Attorneys for Official Committee of Unsecured Creditors

12         One Chase Manhattan Plaza

13         New York, NY 10005

14

15   BY:   DENNIS C. O'DONNELL, ESQ., OF COUNSEL

16         EVAN R. FLECK, ESQ.

17

18

19   SONNENSCHEIN NATH & ROSENTHAL LLP

20         Attorneys for Michael Frege, Insolvency Administrator for

21            Lehman Brothers Bankhaus AG

22         1221 Avenue of the Americas

23         New York, NY 10020

24

25   BY:   D. FARRINGTON YATES, ESQ.

5

```
 1
 2   WHITE & CASE LLP
 3        Attorneys for Ad Hoc Committee of LBHI Creditors
 4        1155 Avenue of the Americas
 5        New York, NY 10036
 6
 7   BY:   LISA THOMPSON, ESQ.
 8
 9
10   UNITED STATES DEPARTMENT OF JUSTICE
11        Office of the United States Trustee
12        33 Whitehall Street
13        21st Floor
14        New York, NY 10004
15
16   BY:   ANDREW D. VELEZ-RIVERA, ESQ.
17
18
19   BIEGING SHAPIRO & BURRUS LLP
20        Attorney for Creditor, Ironbridge Homes, LLC, et al.
21        4582 S. Ulster Street Parkway
22        Suite 1650
23        Denver, CO 80237
24
25   BY:   DUNCAN E. BARBER, ESQ. (TELEPHONICALLY)
```

6

1

2   CHAPMAN AND CUTLER LLP

3        Attorneys for Creditor, US Bank

4        111 West Monroe Street

5        Chicago, IL 60603

6

7   BY:   FRANKLIN H. TOP, III, ESQ. (TELEPHONICALLY)

8        JAMES HEISER, ESQ. (TELEPHONICALLY)

9

10

11   GARFIELD COUNTY ATTORNEY'S OFFICE

12        Creditor

13        108 8th Street

14        Glenwood Springs, CO 81601

15

16   BY:   DEBBIE QUINN, ESQ. (TELEPHONICALLY)

17

18

19   REED SMITH LLP

20        Attorneys for Interested Party, Bank of New York

21        All Offices

22

23   BY:   JOSEPH FILLOY, ESQ. (TELEPHONICALLY)

24

25

7

1

2    STUTMAN, TREISTER & GLATT

3         Attorneys for Creditor, Perry Capital

4         1901 Avenue of the Stars

5         12th Floor

6         Los Angeles, CA 90067

7

8    BY:   MARINA FINEMAN, ESQ. (TELEPHONICALLY)

9          JEFFREY H. DAVIDSON, ESQ. (TELEPHONICALLY)

10         ISAAC PACHULSKI, ESQ. (TELEPHONICALLY)

11

12

13   AURELIUS CAPITAL MANAGEMENT

14        Interested Party

15

16   BY:   DAVID TIOMKIN (TELEPHONICALLY)

17

18

19   THE BAUPOST GROUP

20        Interested Party

21        10 St. James Avenue

22        Suite 1700

23        Boston, MA 02116

24

25   BY:   MEGHAN S. MICHELS (TELEPHONICALLY)

8

CREDIT SUISSE FIRST BOSTON

     Interested Party

     Eleven Madison Avenue

     New York, NY 10010

BY:   ANDREW REBAK (TELEPHONICALLY)

9

P R O C E E D I N G S

1

2     THE COURT:  Be seated, please.

3     MR. FAIL:  Good morning -- good afternoon, Your Honor.

4     THE COURT:  Good afternoon.

5     MR. FAIL:  Garrett Fail, Weil, Gotshal & Manges, for

6   Lehman Brothers Holdings Inc. and its debtor affiliates.  I

7   first wanted to thank Your Honor for accommodating the debtors'

8   request for a hearing this afternoon between omnibus hearings.

9          There are three items on the agenda today, all of

10  which are uncontested.  So this should be able to proceed.

11  Unless Your Honor has another request, we could proceed in the

12  order that they appear on the agenda?

13     THE COURT:  Let's do it that way.

14     MR. FAIL:  Okay.  The first motion, Your Honor, is a

15  motion pursuant to Sections 105(a) and 363 of the Bankruptcy

16  Code for authorization of intercompany funding by Lehman

17  Brothers Holdings Inc. of ARS Holdings II LLC, LBHI's nondebtor

18  wholly-owned direct subsidiary.

19          As was set forth in the motion, Your Honor, ARS

20  Holdings is required to fund an earn-out payment to preserve

21  one of Lehman's valuable assets, a twenty-percent interest in

22  D.E. Shaw & Company, L.P. and D.E. Shaw & Co., LLC.  If ARS

23  Holdings were to fail to make the payment, it would be in

24  breach of the agreements governing the investment.

25          In order to satisfy its obligations, however, ARS

10

1   Holdings requires intercompany funding by LBHI.  LBHI's agreed

2   to provide the intercompany funding.  We've been advised -- the

3   debtors have been advised that the creditors' committee has

4   approved of LBHI's reasonable exercise in its business judgment

5   to do the funding.  In exchange for the funding, ARS Holdings

6   will receive a note, which is currently being negotiated to

7   accommodate a request from the creditors' committee's counsel.

8        Your Honor, by order to show cause, you set the

9   objection deadline for this motion as of the beginning of the

10   hearing.  And today there have been no objections interposed.

11        So if the Court has any questions, I'd be happy to

12   answer.  Otherwise, I would request that the motion be

13   approved.

14        THE COURT:  I have no questions about this, but I'll

15   simply inquire if any party-in-interest wishes to be heard with

16   regard to this?

17        MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,

18   Tweed, Hadley & McCloy, on behalf of the committee.  Just to

19   reiterate, we did review this proposed transaction.  Diligence:

20   the -- both the amount of the payment and the need and

21   justification for making the payment.  I believe that it is in

22   the best interest of the estates to allow this funding to be

23   made.

24        THE COURT:  Fine.  That makes it easier for me to say

25   yes.

11

1          MR. FAIL:  Thank you very much, Your Honor.

2          MR. KRASNOW:  Your Honor --

3          THE COURT:  Good afternoon.

4          MR. KRASNOW:  -- Richard Krasnow, Weil, Gotshal &

5     Manges LLP, for the debtors.  Your Honor, it is with great

6     pleasure that I appear before you this afternoon with respect

7     to the debtors' motion for approval of a cross-border

8     insolvency protocol.  That motion appears as docket number

9     3647.

10          Your Honor, I don't know that I really need to go into

11    great detail with regards to this protocol.  I think we first

12    reported on our efforts in this regard.  One of my partners,

13    Mr. Perez, and Mr. Erhmann from Alvarez & Marsal was here today

14    and has really been on point in this entire process.

15          We started on February 11th advising the Court as to

16    our intention to see whether or not we could do in this case

17    what has never been done before with regards to a cross-border

18    protocol involving multiple debtors in proceedings throughout

19    the world, governed by both civil and common law, to see

20    whether or not we could all gather together the administrators

21    and the Chapter 11 debtors in recognition of the fact that

22    Lehman, while a disparate enterprise in some respects, was

23    uniform and united in many others, cash management, data

24    systems and the like, to see if we could fill a vacuum, if you

25    will, that exists in the lack of any public law dealing with

12

1    something like that and arrive at a consensual private

2    agreement, if you will, amongst all of the administrators to

3    see if there were uniform approaches that we could arrive at in

4    dealing with common issues, common problems and, hopefully,

5    common solutions.

6         Your Honor, I'm hesitant to emphasize that which is in

7    the protocol and that which has been noted in two of the

8    statements in support that have been filed here, one by the

9    committee and one by the ad hoc committee of creditors of the

10   debtors, which is to say that this is not a binding agreement,

11   that if the Court were to approve, as we hope it does, the

12   protocol, all the Court is approving is the concept of the

13   protocol and not any resolutions that may be arrived at amongst

14   the administrators which may require subsequent approval by

15   whatever tribunals are implicated by those resolutions.

16        I would rather focus, Your Honor, on what this

17   protocol is.  It's more than aspirational, Your Honor.  It's an

18   enthusiastic indication and desire by the administrators, who

19   are parties to the protocol, and the Chapter 11 debtors that

20   there is a path to be followed and a desire, a mindset on the

21   part of the administrators and the debtors to try to cut our

22   way through the morass and indeed arrive at common solutions

23   here.

24        Your Honor, if -- and that enthusiasm is reflected in

25   part by the fact that one of the administrators who is a party

13

1   to the protocol, the Dutch trustee, and I've already apologized

2   to him before the hearing because I was convinced I will

3   mispronounce his name, Mr. Schinimelpenninck --

4       THE COURT:  How did he do, Mr. Schinimelpenninck?  Is

5   that right?  Did we pronounce your name correctly?

6       MR. SCHINIMELPENNINCK:  Yes.

7       THE COURT:  Or close enough at least?

8       MR. KRASNOW:  The protocol is working, Your Honor.

9       THE COURT:  Great.

10      MR. KRASNOW:  That if Your Honor is inclined to grant

11  this motion, and just so the Court is aware what the next steps

12  will be, there have been -- the parties have, in essence,

13  almost worked in furtherance of the protocol and consistent

14  with the ideals of the protocol even before it was signed,

15  indeed even before it was finalized.

16      There have been numerous discussions and meetings.

17  Mr. Ehrmann has travelled the world.  And some of the

18  administrators have even come to New York:  the Dutch trustee,

19  Dr. Frege, the administrator for Bankhaus.  We've also met with

20  PwC Switzerland, who is the administrator for Finance SA.

21      We -- the next steps will be -- those are individual

22  meetings.  Again, if Your Honor approves this, that there is a

23  meeting which is scheduled in London in mid-July to be attended

24  by all of the signatories to the protocol, as well as a number

25  of administrators who either have not yet obtained the

14

1   requisite approval to be signatories to the protocol -- that

2   would include the administrator in Luxembourg -- and others who

3   are still debating whether they will become formal members of

4   the protocol but, even if they do not, have indicated a desire

5   to participate in the process, which from our perspective is

6   the same as becoming a member of the protocol group, if you

7   will.  And those parties include, Your Honor, a representative

8   from LB Japan; the PwC Switzerland has indicated whether or not

9   they'd become a party to the protocol, that they would

10  participate in the meeting in London.  PwC Bermuda, they are

11  provisional liquidators in connection with a Bermudan entity;

12  they too have indicated an intention to appear.

13          I should also note, Your Honor, that as reflected in a

14  recent filing we made prior to the hearing, the trustee for

15  Lehman Brothers Inc. is a signatory to the protocol.  And the

16  trustee and his representatives will also be attending the

17  meeting.

18          So it's a very good start to what I'm sure will not be

19  a short process, but we are very optimistic that it will result

20  in a satisfactory resolution that will benefit all stakeholders

21  and will expedite in many ways the administration of our case

22  and other cases in a very cost-effective manner.

23          Your Honor, unless you have any questions, based on --

24          THE COURT:  I have two questions --

25          MR. KRASNOW:  Very well.

15

1    THE COURT:  -- based upon your presentation.  And you

2  should feel free to deflect responding if you think it would be

3  just as well not to respond.  One question involves the meeting

4  just adverted to take place in July.  What's the agenda for

5  that meeting, if there is one?  And what would be a successful

6  outcome of that meeting from the perspective of the debtors?

7  That's really a two-part question.

8    MR. KRASNOW:  Your Honor, one of the significant

9  common issues that is addressed in the protocol and in the

10  motion and in the prior presentations that we've made to the

11  Court relate to intercompany claims.  Intercompany claims fall

12  in at least two groups, and they're probably subgroups.  You

13  have intercompany claims that relate to trading relationships,

14  swaps and the like, derivatives, but you also have a

15  significant number of intercompany claims that represent loans

16  and advances, expenses, sharing of expenses, and the like.

17    And one of the primary focuses of the meeting will be

18  to discuss with the administrators, or continue the discussions

19  that we've already commenced, as to whether or not, given the

20  nature of the claims, given the manner in which Lehman operated

21  prior to the commencement of the case, whether there is a

22  methodology that can be adopted with respect to those claims

23  which would at least accelerate and facilitate agreements

24  amongst the parties as to the amounts of those claims.

25    Similarly -- and that's very much of a multilateral

16

1    kind of issue.  As to the trading, the derivatives and the

2    like, in one respect, Your Honor, the issues that arise amongst

3    and between the Lehman entities is bilateral in nature.  On the

4    other hand, there are multilateral issues as to how one might

5    calculate the claims that exist between the parties.  And that

6    too will be the subject of discussion.

7           I don't doubt that there will be discussions regarding

8    data-sharing issues, but I would say that those are two or

9    three of the topics that we would anticipate discussing.  I am

10   sure there will be more.  And we would anticipate that

11   subsequent to that meeting there will be further meetings,

12   maybe not all physical, but other meetings that we'll have as a

13   group, as subgroups and like.

14          And as I noted, Your Honor, and this was a point that

15   was addressed in some of the statements, and certainly it was a

16   point that was raised by some creditors who have inquired of us

17   with respect to the provisions of this protocol, to the extent

18   that any consensus that is reached amongst the administrators,

19   the parties to the protocol and those who would not participate

20   which would necessitate going back to the respective tribunals,

21   then, as it relates to us, we would come back to court and seek

22   approval of that.

23          Again, in approving this protocol, if the Court is

24   inclined to do so, the Court is not approving any specific

25   resolutions and proposals that may emanate from this process.

17

1          I hope I've answered Your Honor's questions.

2          THE COURT:  You have.  I have a second, and this is

3    the one you may want to duck.

4          MR. KRASNOW:  There's a reason for a podium, Your

5    Honor.

6          THE COURT:  On May 13th, I received a rather lengthy

7    letter with attachments from Linklaters on behalf of the U.K.

8    administrators setting forth a rationale for the U.K.

9    administrators not participating in the multilateral protocol.

10   You, on behalf of the estates, sent a letter as well the next

11   day, if I recall, raising some concerns about the involvement

12   of the U.K. Court, but apparently without notice to the

13   debtors, in authorizing the issuance and transmittal of that

14   letter.

15         I'm not trying to open up that Pandora's box, but my

16   general question is has anything positive in reference to the

17   relationship between the U.K. estate and the debtors' other

18   estates transpired since then?  And should I draw any comfort

19   from the fact that the July meeting is taking place in London?

20         MR. KRASNOW:  One answer, Your Honor, could be, if I

21   wanted to be a little humorous, is can we define "positive"?

22   But seriously, Your Honor, one of the reas -- there are a

23   number of reasons for selecting London, not the least of which

24   is you have parties coming from Asia, the U.S. and elsewhere.

25   Another reason -- and so that was a central location -- it

18

1   would certainly facilitate LBIE and PwC if they chose to come

2   on in and have dinner with us, as we are proposing to have as

3   part of the program, or participate in some of the meeting.  It

4   would certainly facilitate that.  And we are -- we would hope

5   that they would consider that.  They have, so far, indicated

6   that they don't have a current intention of participating in

7   that process.

8        Having said that, Your Honor, included in the

9   materials that were sent to the Court was a proposed memorandum

10  of understanding which went precisely to the proposed

11  methodology treatment, at least in terms of calculating amounts

12  of intercompany claims.  And I think that was something -- I

13  know it was something that was sent to numerous administrators,

14  as well as ourselves, through that submission.  And it was, I

15  think, the first written product that had been circulated

16  amongst the parties as a proposal.  And while we have some

17  questions about some of their suggestions and perhaps some

18  disagreements in that regard, we thought that it was a very

19  good talking piece.

20       And, indeed, there has been communication between

21  representatives of the debtors and PwC and LBIE regarding their

22  proposal.  And it's our intention to, in fact, include amongst

23  our agenda items at the meeting, since everybody received this,

24  to discuss that.  And certainly from our perspective, to the

25  extent that PwC wanted to have their views known and listen to

19

1    other parties' views, notwithstanding their belief that

2    multilateral approaches don't -- is not the approach that they

3    want to adopt, we would very much invite them.

4         We think it would be constructive for them to

5    articulate their views and for them to hear the views of

6    others.  And, you know, if everybody signs a piece of paper

7    which is said to be bilateral so you only have two parties but

8    it's the same document, yes, it's bilateral but it's

9    multilateral in nature.  And if characterizing that as

10   bilateral works for them, it works for us.

11        So I'm not -- I can't say whether they will agree to

12   what I've just said, but we're certainly hopeful.  And we know

13   that -- we understand that a number of administrators have

14   reached out, will be reaching out to them, to see whether or

15   not on some level they would show us the sights in London.

16        THE COURT:  Well, I hope the meeting in July turns out

17   to be a productive one and that the representatives of LBIE

18   find some time to intersect with the many other parties-in-

19   interest who will be at least in the same city at that time.

20        I'd also like to make a comment, because I think it's

21   appropriate for me to make this disclosure.  And I say this, in

22   part, because the protocol has not yet been approved, although,

23   no suspense here, it will be; it's just a question of when,

24   this afternoon, it's approved.  Ordinarily, court-to-court

25   communication is something which is authorized once a protocol

20

1    has been adopted within a particular jurisdiction.  And the ALI

2    and International Insolvency Institute together have

3    promulgated guidelines for court-to-court communications, which

4    guidelines are an exhibit to the debtors' motion.

5         That was more of a theoretical proposition until this

6    week when I received by fax a letter from the supervising judge

7    in the Netherlands simply transmitting to me a copy of a letter

8    that she had transmitted to Justice Blackburn of the High Court

9    of England in Wales.  And I'm not attempting now to

10   characterize that communication.  I'm simply noting that two

11   court-to-court communications have in fact taken place, one

12   being the letter from the supervising judge in the Netherlands

13   to Mr. Justice Blackburn, the other being the transmittal of

14   that letter to me, along with some other correspondence.

15        I simply wanted that to be publicly disclosed, because

16   in the ordinary course of court-to-court communication there is

17   a, I'll use the term again, protocol for giving some notice to

18   parties-in-interest that such communication either is about to

19   take place or has taken place.

20        MR. KRASNOW:  Thank you, Your Honor.  I guess I will

21   formally say it, even though the Court has indicated where it

22   is going, but unless the Court has any further questions, we

23   would simply request that the motion be granted and the

24   protocol be approved.

25        THE COURT:  I approve it with pleasure.

21

1      MR. KRASNOW:  Thank you, Your Honor.

2      MR. ALBANESE:  Good morning, Your Honor -- good

3  afternoon, rather.  Anthony Albanese with Weil, Gotshal &

4  Manges, on behalf of the debtors.  Your Honor, we're also here

5  today to submit to the Court the motion pursuant to Sections

6  105, 363, 554(a) of the Bankruptcy Code for authority to

7  establish procedures to sell or abandon de minimis assets.  And

8  the debtors have sought the Court's approval of the proposed

9  procedures in the motion in order to minimize the burden to the

10  debtors in relieving the debtors' estates of certain

11  unproductive, nonessential and burdensome assets that are not

12  necessary to the efficient winding-down of the estates.  The

13  relief sought would minimize the expenses that would be

14  associated with the selling of more than 117,000 assets.

15      I'll just quickly outline the procedures that are

16  detailed in the motion.  With respect to the sale procedures,

17  they're both sale and abandonment procedures.  With respect to

18  the proposed sale procedures, for assets that fall between

19  300,000 and 2 million, and the value will be measured by the

20  lesser of either the book value or the sale price, for those

21  assets, notice will be given to certain parties that are

22  detailed in the motion, including the creditors' committee and

23  the trustee.  And notice would be given to them, but Court

24  approval would not be sought.  And they'd be given ten days to

25  object from receipt of notice to any of the proposed sales.

22

1        For assets that fell in the category below that, below

2   300,000 dollars, notice would not be given to any parties and

3   Court approval would not be sought, with one exception:  Notice

4   would be given to the creditors' committee and to Barclays of

5   sale of ownership or the granting of exclusive rights of any

6   copyright, patent or trademark sales.  And, again, that would

7   be at any price, so it would cover the below-300,000 dollar

8   category that has been created.

9        Under the proposed abandonment procedures, notice of

10  all abandonments would be given irrespective of amounts.  And

11  parties would be given five days to object to any of the

12  proposed abandonments.  And monthly reports will be filed with

13  the Court, summarizing all the noticed de minimis sales and all

14  the abandonments for that month.

15       Your Honor, a number of objections have been filed, as

16  Your Honor, I'm sure, has seen.  All have been worked out,

17  resolved and withdrawn.  And, therefore, we ask the Court's

18  permission to have the proposed order, as revised, approved.

19       THE COURT:  I'm prepared to do that.  I just want to

20  inquire if anyone wishes to be heard with regard to this

21  matter?

22       MR. FLECK:  Good afternoon, Your Honor.  Evan Fleck of

23  Milbank, Tweed, Hadley & McCloy, on behalf of the official

24  committee of unsecured creditors.  Your Honor, in connection

25  with this motion, the committee reviewed the motion and

23

1    considered the procedures.  We are comfortable with the order.

2    We wanted to make the Court aware that the committee takes very

3    seriously procedures that take out of the committee's review

4    particular transactions.  Based upon our discussions with the

5    debtors about the assets that are the subject of this motion,

6    we are comfortable that the thresholds that have been agreed to

7    are appropriate.

8            And in the case of abandonment, given that we will

9    have review, and in the other category of sales, given the

10   modifications to the order, we are comfortable that it's

11   appropriate, and it's the appropriate balancing of a procedure

12   for truly de minimis assets.  And with that, Your Honor, we are

13   comfortable and supportive of the motion and the revised order.

14           THE COURT:  Fine.

15           MR. FLECK:  Thank you.

16           THE COURT:  The motion is granted.

17           MR. FAIL:  Thank you ver --

18           THE COURT:  Mr. Fail, it looks as if we've completed

19   the agenda.

20           MR. FAIL:  I think that's right, Your Honor.  Unless

21   anybody else has anything, thank you for your time.

22           THE COURT:  Fine.  We're adjourned.

23       (Proceedings were concluded at 2:33 PM)

24

25

24

```
 1
 2                        I N D E X
 3
 4                   R U L I N G S
 5     DESCRIPTION                        PAGE      LINE
 6     Debtors' motion seeking authorization of     10        24
 7     intercompany funding of ARS Holdings II LLC
 8     by Lehman Brothers Holdings Inc. granted
 9
10     Debtors' motion for approval of a            20        25
11     cross-border insolvency protocol granted
12
13     Debtors' motion for authorization to         23        16
14     establish procedures to sell or abandon
15     de minimis assets granted
16
17
18
19
20
21
22
23
24
25
```

25

1

2                          C E R T I F I C A T I O N

3

4      I, Clara Rubin, certify that the foregoing transcript is a true

5      and accurate record of the proceedings.

6

7      _____

8      CLARA RUBIN

9      AAERT Certified Electronic Transcriber (CET**D-491)

10

11     Veritext LLC

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date:   June 18, 2009

17

18

19

20

21

22

23

24

25