WHITE & CASE LLP

1155 Avenue of the Americas

New York, New York 10036

(212) 819-8200

J. Christopher Shore

Wachovia Financial Center

200 South Biscayne Boulevard, Suite 4900

Miami, Florida 33131

(305) 371-2700

Thomas E Lauria (admitted pro hac vice)

ATTORNEYS FOR DNB NOR BANK ASA

**Hearing Date: July 15, 2009 at 10:00 a.m.**
**(Prevailing Eastern Time)**
**Objections Due: July 10, 2009, at 4:00 p.m.**
**(Prevailing Eastern Time**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| -------------------------------------------------- x | | |
| **In re** | **:** | **Chapter 11** |
| | **:** | |
| **LEHMAN BROTHERS HOLDINGS INC.,** | **:** | **Case No. 08-13555 (JMP)** |
| **et al.,** | **:** | |
| | **:** | **Jointly Administered** |
| **Debtors.** | **:** | |
| -------------------------------------------------- x | | |

## MOTION OF DNB NOR BANK ASA
## PURSUANT TO 11 U.S.C. §§ 503(b), 507(b) FOR ALLOWANCE AND PAYMENT OF
## ADMINISTRATIVE EXPENSE CLAIM AND ALLOWING SETOFF OF SUCH CLAIM

TO:    THE HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE

DnB NOR Bank ASA ("DnB NOR"), by and through its undersigned counsel,

files this motion (the "Motion") for entry of an order allowing an administrative expense claim

arising from the failure of adequate protection, and providing for payment and setoff of that

claim and, in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1.      As of the commencement of this chapter 11 case, DnB NOR had a prepetition claim against Lehman Brothers Holdings Inc. ("LBHI") in the amount of US$25,071,256.94.  That claim was subject to setoff against and secured by a deposit in the name of LBHI of 99,113,236.36 Norwegian krone.  DnB NOR promptly and diligently pursued its right to setoff or to obtain adequate protection of the deposit securing its claim, first consensually and then with the assistance of this Court.  Nonetheless, in the intervening time, the value of DnB NOR's collateral (Norwegian krone) declined by nearly 14%.  By this Motion, DnB NOR seeks the allowance and payment of an administrative expense claim representing the diminution in currency value that DnB NOR suffered while the automatic stay was in place, as well as authorization to set off that post-petition administrative expense claim against additional funds held on deposit at DnB NOR, which this Court found to be a post-petition obligation.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.      The prerequisites for the relief requested herein are sections 503(b) and 507(b) of the Bankruptcy Code.

## BACKGROUND

4.      As of September 15, 2008, the date on which LBHI commenced this chapter 11 case (the "Commencement Date"), DnB NOR had a pre-petition claim against LBHI in the amount of $25,071,256.94 (the "DnB NOR Claim") owed under that certain Revolving Credit Facility dated as of March 1, 2008 between DnB NOR, as lender, and LBHI, as borrower

(the "Credit Facility").  LBHI asserted a prepetition claim against DnB NOR in the amount of

99,113,236.36 Norwegian krone (the "LBHI Claim") and a post-petition claim against DnB

NOR in the amount of 7,065,351.56 Norwegian krone (the "LBHI Post-Petition Claim") based

on a deposit account that LBHI maintains at DnB NOR.[1]  At the exchange rate then prevailing of

5.7826 Norwegian krone to one U.S. dollar, the LBHI Claim was worth $17,139,908.75 as of the

Commencement Date.  See NORGES BANK, Daily Exchange Rates (from 2001), available at

http://www.norges-bank.no/WebDAV/stat/en/valutakurser/valuta_dag.csv (accessed June 17,

2009) (the "Exchange Rate Table).

       5.      Pursuant to section 553 of the Bankruptcy Code, but for the automatic

stay, DnB NOR was entitled to set off the DnB NOR Claim against the LBHI Claim.  Under

section 506(a)(1) of the Bankruptcy Code, DnB NOR was a secured creditor, with the DnB NOR

Claim secured by the LBHI Claim.

       6.      On September 17, 2008, promptly after LBHI commenced its chapter 11

case, DnB NOR sent written notice to LBHI regarding DnB NOR's setoff rights and requested

LBHI's consent to effect a setoff of the DnB NOR Claim against the LBHI Claim, in lieu of DnB

NOR's filing a motion to lift the automatic stay or for adequate protection.  At the exchange rate

then prevailing of 5.8282 Norwegian krone to one U.S. dollar, the LBHI Claim was worth

$17,005,805.63.  See Exchange Table.

       7.      LBHI never responded to DnB NOR's request, and as a consequence,

DnB NOR filed its Motion of DnB NOR Bank ASA for Entry of (i) an Order Pursuant to 11

U.S.C. § 362(d) and FED. R. BANKR. P. 4001 Granting Relief from the Automatic Stay to Effect

Setoff or, in the Alternative, (ii) an Order Pursuant to 11 U.S.C. §§ 361 and 506(a) Requiring the

---

[1] As set forth below, in its Memorandum Decision dated May 12, 2009, this Court found that the LBHI Post-Petition
Claim is a post-petition deposit obligation.

Debtors to Provide Adequate Protection [ECF Doc. #465] (the "Setoff Motion"). On November 3, 2008, LBHI filed an objection to DnB NOR's Setoff Motion.

8.    The value of DnB NOR's collateral diminished materially during the initial period that its Setoff Motion was pending, as the Norwegian krone weakened against the U.S. dollar, with the dollar reaching a high during that period of 7.1468 Norwegian krone on October 23, 2008.  See Exchange Table.

9.    On November 5, 2008, the Court held a status conference on DnB NOR's Setoff Motion.  At that status conference, DnB NOR and LBHI entered into a stipulation on the record permitting DnB NOR to exchange its Norwegian krone collateral into U.S. dollars so that DnB NOR would not be subject to ongoing reduction in the value of its collateral.  Counsel for LBHI stated on the record that "[t]he debtors are agreeable to the conversion of the krona [sic] into U.S. dollars to protect it against deterioration in value." Tr. Hr'g Nov. 5, 2008, at 42:2-3 (remarks of Mr. Miller).

10.    Subsequently, DnB NOR, LBHI and the Official Committee of Unsecured Creditors entered into a Stipulation, Agreement and Order approved by the Court on January 22, 2009 [ECF Doc. # 2605] (the "Setoff Stipulation"), providing for consensual relief from the automatic stay to permit DnB NOR to effect a setoff with respect to the LBHI Claim in the amount of 99,113,236.36 Norwegian krone.  The parties agreed in the Setoff Stipulation that "[f]or the purposes of determining DnB NOR's deficiency claim, . . . the [LBHI Claim] shall be converted at the rate of 6.7288 NOK per USD, which the Parties agree is the exchange rate as of November 5, 2008." Setoff Stipulation, at ¶ 13.

11.    The Setoff Stipulation also contained the following reservation of rights:

[e]xcept as provided herein, this Stipulation and Agreement is without prejudice to (a) any assertion by DnB NOR that it is entitled to (i) set off additional amounts, including

> without limitation interest fees, and charges, with respect to its claims, (ii) adequate
> protection in respect of the [LBHI Claim] . . . , and (iii) any deficiency claim, and (b) any
> and all claims, counterclaims, rights defenses, objections and challenges that the Debtors
> and the Committee may have in respect of the foregoing.

Setoff Stipulation, at ¶ 16.

12.    At the exchange rate agreed upon in the Setoff Stipulation, DnB NOR's

Norwegian krone collateral was worth $14,728,226.92.  That is $2,411,681.83 less than the

collateral had been worth on the Commencement Date.

13.    On May 12, 2009, the Court issued a Memorandum Decision Denying

Relief from the Automatic Stay to Effectuate Setoff Under 11 U.S.C. § 553(a) [ECF Doc. #

3551], in which it concluded that LBHI Post-Petition Claim represented a post-petition

deposit against which DnB NOR could not setoff LBHI's prepetition obligations under the

Credit Facility.

14.    By email dated June 17, 2009, LBHI, through Alvarez & Marsal Financial

Industry Advisory Services LLP, requested that DnB NOR confirm the amounts held on deposit

at DnB NOR and indicated its intent to transfer those amounts out of LBHI's account at DnB

NOR.  By letter dated June 19, 2009, DnB NOR replied to LBHI's email and informed it that

DnB NOR intended to file the instant motion and that DnB NOR was imposing an administrative

freeze on LBHI's account pending resolution of the same.

15.    DnB NOR acted promptly after LBHI commenced its chapter 11 case to

protect its interest in its collateral, and nonetheless that collateral diminished as a consequence of

LBHI's inaction over a span of nearly two months.  DnB NOR is therefore entitled to an allowed

administrative expense claim in the amount of $2,411,681.83 (the "Administrative Expense

Claim") to compensate it for that diminution.

<u>BASIS FOR RELIEF</u>

16.     "[A] secured creditor has the right to receive protection for any decline in the value of collateral during the automatic stay." Travelers Life & Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C., Inc.), 98 B.R. 170, 173 (S.D.N.Y. 1989) (citing United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365 (1988)).  Section 507(b) of the Bankruptcy Code "grants superpriority status to a secured creditor when there is a failure of the adequate protection provided by the trustee under §§ 362, 363 or 364." In re Becker, 51 B.R. 971, 978 (Bankr. D. Minn. 1985).  Section 507(b) reads:

> [i]f the trustee, under section 362, 363 or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b).

17.     A creditor is entitled to a superpriority claim for adequate protection even after it and the debtor bargained for the adequate protection that ultimately failed.  As the *Becker* court stated:

> In the absence of: a provision in a stipulation specifically limiting the amount a creditor may claim as a superpriority administrative expense under § 507(b); or, a provision which in some manner acknowledges that the adequate protection provided constitutes the full adequate protection to which the creditor is entitled; there seems to be no compelling reason why the creditor should be held to have bargained away or compromised its full rights under the statute simply by agreeing, without imposition of a court order under protest, to accept adequate protection payments in a stated amount.

51 B.R. at 980.  The stipulation entered on the record of the November 5, 2008 status conference mentioned no such provision, and the Setoff Stipulation specifically reserved DnB NOR's right to assert an administrative expense claim and to seek adequate protection.

18.    At the November 5, 2008 status conference, LBHI provided DnB NOR

with adequate protection by consenting there to the conversion of DnB NOR's Norwegian krone

collateral into U.S. dollars "to protect it against deterioration in value."  Tr. Hr'g Nov. 5, 2008, at

42:2-3.  The purpose of adequate protection is, indeed, to provide a secured creditor with

"protection for any decline in the value of collateral during the automatic stay."  Travelers Life

& Annuity Co., 98 B.R. at 173 (emphasis added).  Inasmuch as adequate protection is provided

for the benefit of a secured creditor, DnB NOR was one with respect to its right of setoff; "[a]n

allowed claim of a creditor . . . that is subject to setoff under section 553 of [the Bankruptcy

Code] is a secured claim." 11 U.S.C. § 506(a)(1).   As such, section 507(b)'s requirement that

the debtor provide adequate protection is satisfied.

19.    Additionally, DnB NOR has an allowable priority administrative expense

claim, thus satisfying the second prong of section 507(b).  Section 503(b)(1) of the Bankruptcy

Code provides that administrative expenses include "the actual, necessary costs and expenses of

preserving the estate." 11 U.S.C. § 503(b)(1)(A).  Where a debtor has challenged a creditor's

request for relief from the automatic stay and provided adequate protection, it obviously desires

continued use of the property and believes that such use is of necessary benefit to the estate.  See

Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.), 991 F.2d 682, 687

(11th Cir. 1993) ("Debtor's efforts to retain the [collateral] demonstrate that the collateral was

beneficial to the estate."); In re McGill, 78 B.R. 777, 780 (Bankr. D.S.C. 1986) ("That the use of

the collateral was necessary to the debtor's reorganization is evidenced by the debtor's efforts to

retain the collateral by attempting to provide adequate protection."); In re Mutschler, 45 B.R.

494, 496 (Bankr. D.N.D. 1984) ("Presumably such use is desired by the debtor and is

contributing to the reorganization effort.  Otherwise, the debtor would doubtless return the

collateral and forgo providing adequate protection.  This beneficial use by the debtor is normally 'paid for' by the adequate protection."); see also 4 COLLIER ON BANKRUPTCY ¶ 507.12[1][b] ("Under section 362, if the trustee resisted the creditor's attempt to terminate the stay, the trustee obviously desired continued use of the property.").

20.    Here, LBHI never responded to DnB NOR's September 17, 2008 letter seeking LBHI's consent to exercise a setoff, and later opposed the Setoff Motion that DnB NOR filed as a consequence.  Only in its December 2, 2008 supplemental objection to the Setoff Motion—filed ten weeks after DnB NOR's initial request—did LBHI consent to the DnB NOR's effecting a setoff against the LBHI Claim.  LBHI's refusal to consent to the setoff evidences its belief that the amounts on deposit in the account were necessary and beneficial to its estate, and DnB NOR should not be required to bear the cost of LBHI's refusal to recognize and concede a setoff right that this Court itself described as "indisputabl[e]."  See Mem. Dec'n Denying Relief from Auto. Stay to Effectuate Setoff Under 11 U.S.C. § 533(a), at 4 (May 12, 2009).  The adequate protection that LBHI eventually provided to DnB NOR was insufficient to protect DnB NOR against the decline in the value of its collateral, and that decline was a direct and proximate result of LBHI's refusal to provide adequate protection or consent to modifying the stay earlier than it did.  As such, DnB NOR is entitled to an administrative expense claim under section 503(b), and the second prong of section 507(b) is therefore satisfied.

21.    DnB NOR submits that the amount of its administrative expense claim is $2,388,628.99, which is the deterioration in the dollar-equivalent value of its Norwegian krone collateral from the Commencement Date through November 5, 2008, when LBHI consented to provide adequate protection.

22.      Claims must be valued "in lawful currency of the United States as of the date of the filing of the petition." 11 U.S.C. § 501(b).  Courts have found that referring to quoted market prices, or compilations thereof, is appropriate for determining the value of a secured creditor's collateral.  *See* In re Aaura, Inc., 2006 WL 2568048, at *4 (Bankr. N.D. Ill. Sept. 1, 2006) (referring to market price for gold where gold was collateral); see also In re Continental Airlines Inc., 146 B.R. 536, 542 (Bankr. D. Del. 1992) (referring to Avitas Blue Books to determine market prices of aircraft securing claims).  Here, the dollar value of the cash collateral securing the DnB NOR Claim, as determined by standard quotations of the exchange rate between the Norwegian krone and the U.S. dollar, declined by $2,388,628.99, or nearly 14 percent, before DnB NOR was granted any protection of its interest in that cash collateral.

23.      DnB NOR acknowledges that courts in this district are divided over what date is the appropriate one to use in determining the value of property to calculate adequate protection, particularly as between the petition date and the date the creditor files a motion seeking adequate protection, see In re Best Prods. Co., Inc., 138 B.R. 155, 158 (Bankr. S.D.N.Y. 1992) (recognizing divide), but DnB NOR submits that the Commencement Date is the appropriate measure.  The Supreme Court has observed that "the 'interest in property' referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that interest is not adequately protected if the security is depreciating during the term of the stay."  Timbers, 108 S.Ct. at 630.  Moreover, a secured creditor is entitled to adequate protection of the value of its claim as of the petition date. In re Aaura, Inc., 2006 WL 2568048 (Bankr. N.D. Ill. Sept. 1, 2006) (concluding that secured creditor's claim, for purposes of adequate protection of interest in gold held as collateral, was fixed as of the petition date, such that subsequent increase in market price of gold provided

creditor with equity cushion and adequate protection).  It is from the petition date that the stay is

in effect, and it therefore ought to be from the petition date that a secured creditor's interest be

protected.  The Court should therefore award DnB NOR adequate protection in the amount of the

decline in the deposits' dollar-value equivalence from September 15, 2008 to November 5, 2008,

which totals $2,411,681.83.[2]

        24.    As set forth above, DnB NOR has imposed an administrative freeze on the

deposit account representing the LBHI Post-Petition Claim.  Inasmuch as Administrative

Expense Claim arose after the commencement of this chapter 11 case, it and the LBHI Post-

Petition Claim represent mutual debts owing between DnB NOR and LBHI's bankruptcy estate.

DnB NOR therefore is entitled to effect a setoff of the Administrative Expense Claim against the

LBHI Post-Petition Claim.

NOTICE

        25.    Notice of this motion will be provided by counsel to DnB NOR to: (a)

counsel to the Debtors; (b) the Office of the United States Trustee for Region 2; (c) counsel to

the Official Committee of Unsecured Creditors; and (e) all other parties requesting notice under

Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, DnB NOR submits

that such notice is sufficient and that no other or further notice need by given.

---

[2]      In the alternative, if the Court should determine that DnB NOR's collateral, the LBHI Claim, should be valued in U.S. dollars as of September 17, 2008, the date that DnB NOR demanded adequate protection from LBHI. In that event, DnB NOR is entitled to an administrative expense claim of $2,277,578.71.  While those courts that do not calculate adequate protection from the petition date generally prefer the date of the motion, they do so because "[b]y making a motion for adequate protection, a secured creditor demonstrates its concern and puts the debtor in a position where it must decide what it should do with the collateral." Best Prods., 138 B.R. at 158.  DnB NOR's September 17 letter demanded adequate protection and clearly stated DnB NOR's intent to seek relief from the Court if necessary, a course that DnB NOR diligently pursued.  The letter sufficiently put LBHI on notice of the decision facing it and satisfies the concern of the Courts that look to the date of the motion.

<u>NO PRIOR REQUEST</u>

26.    No prior request for the relief sought herein has been made to this or any

other Court.

<u>CONCLUSION</u>

WHEREFORE, DnB NOR respectfully requests that the Court enter an order:

(a) granting this Motion; (b) allowing the Administrative Expense Claim; (c) authorizing DnB

NOR to effect a setoff of the Administrative Expense Claim against the LBHI Post-Petition

Claim; (d) authorizing and directing LBHI to pay any deficiency on the Administrative Expense

Claim outstanding after such setoff; and (d) granting such other and further relief as the Court

deems just and proper.

Dated: New York, New York
       June 19, 2009

                                    WHITE & CASE LLP
                                    1155 Avenue of the Americas
                                    New York, NY 10036-2787
                                    (212) 819-8200

                                    By:   /s/ J. Christopher Shore
                                          J. Christopher Shore

                                    Wachovia Financial Center
                                    200 South Biscayne Blvd., Suite 4900
                                    Miami, Florida 33131
                                    (305) 371-2700
                                    Thomas E Lauria (admitted pro hac vice)