WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                  :
In re                                             :    Chapter 11 Case No.
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :    08-13555 (JMP)
                                                  :
                                     Debtors.     :    (Jointly Administered)
                                                  :
                                                  :
-------------------------------------------------------------------x

# DEBTORS' OBJECTION TO MOTION OF
# LAUREL COVE DEVELOPMENT LLC FOR AN ORDER
# (I) DIRECTING DEBTOR TO ASSUME OR REJECT
# AN EXECUTORY CONTRACT; AND (II) GRANTING RELATED RELIEF

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), respectively submit this objection in opposition to the Motion of Laurel Cove Development LLC ("Laurel Cove," the "Movant" or the "Borrower") for an Order (I) Directing Debtor to Assume or Reject an Executory Contract; and (II) Granting Related Relief, dated June 3, 2009 (the "Motion") [Docket No. 3755]:

**Preliminary Statement**

1. Only nine months into the largest and most complex chapter 11 cases in history, the Movant is attempting to force LBHI to make a premature decision to assume or reject just one of hundreds of loan agreements. The Motion fails as a matter of fact and law. The controlling case law could not be clearer: a debtor is entitled to defer its decision to assume or reject an executory contract until plan confirmation except under certain limited circumstances that are not applicable here. The construction loan agreement at issue here is one of over a million complex agreements, each with its own set of unique facts and circumstances, that is part of these proceedings. The Debtors have been actively, diligently and expeditiously managing these cases for the benefit of all creditors. There is no basis for allowing Laurel Cove to move to the front of the line. This is especially true given that, by its own admission, in just over the first year of its development project, LBHI already advanced Borrower the vast majority - - in excess of 70% - - of the maximum loan proceeds that the Borrower would ever be entitled to under the Loan Agreement (defined below).

2. The additional relief requested by the Movant is without any basis in law. As collateral for the Loan Agreement, LBHI has valid and perfected first lien deeds of trust and security interests in the Project (defined below) and its assets as set forth in the Loan Agreement (the "Liens"). Without any statutory or decisional authority whatsoever, and without even seeking relief from the automatic stay under section 362 of title 11 of the United States Code (the "Bankruptcy Code"), the Movant seeks authority to obtain alternative financing upon terms that would prime and therefore subordinate the Liens. As a threshold matter, it is inappropriate to address the Movant's request until there has been a sufficient opportunity to review the Loan Agreement and reach a decision to assume or reject within the context of LBHI's overall

business. More to the point, the law does not allow Movant to non-consensually subordinate the rights of LBHI's interests (unless Movant was itself a debtor in a chapter 11 case). Finally, all Movant offers is its representation that it found a "potential alternative" lender and that this "potential" lender "requires" the Debtor to subordinate its liens. Movant submits no term sheet and has offered no detail about the arrangement under which Laurel Cove expects the Debtors to subordinate a valuable $86.5 million interest.

    3.  The Motion is nothing more than Movant's attempt to get favorable treatment prior to confirmation. Movant has failed to demonstrate the requisite cause for such relief and the motion should be denied. If the Court were to grant the Motion compelling LBHI to prematurely accept or reject this loan, it will inevitably lead to borrowers under other loan agreements to seek the same relief. Responding to such continual motions would be an unnecessary distraction that takes the Debtors away from their efforts to administer these cases for the benefit of all creditors. Debtors request that the Motion be denied.

## Background

    4.  On May 15, 2007, LBHI and the Borrower entered into that certain Construction Loan Agreement, dated as of May 15, 2007, among LBHI, as lender and Laurel Cove, as borrower (the "Loan Agreement" [Docket No. 3755-1]), to fund the development of certain properties owned by Movant, including 1,120 acres located in College Grove, Williamson County, Tennessee (the "Project"). Pursuant to the Loan Agreement, LBHI agreed to provide up to $121.5 million to fund the Project. Movant admits that as of July 2008, LBHI had already advanced approximately $86,543,730.00. Motion ¶¶ 4, 7. The Loan Agreement was secured by LBHI's liens in "a security interest in the Project and its assets as set forth therein."

Motion ¶ 3.[1]

5.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

7.  On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

8.  On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

---

[1] The construction loan made pursuant to the terms of the Loan Agreement and the documents, instruments and agreements executed in connection therewith (collectively, the "Loan Documents") were the subject of a repurchase transaction made pursuant to the terms of a repurchase agreement by and among, Lehman Re Ltd. ("Lehman Re"), a non-debtor entity in these cases, Lehman Brothers Inc., and certain of the Debtors. As the result of such repurchase transaction, Lehman Re claims an ownership interest in the lender's position under Loan Documents and the construction loan made pursuant thereto (the "Loan"). The ownership of the Loan has not yet been determined. However, the precise ownership of the Loan is not relevant to this Motion; if anything, the very nature of the dispute would cut in favor of denying the Motion because the ownership of the Loan, and the Debtors' interests therein, if any, need to be resolved prior to any determination of whether to assume or reject the Loan Agreement. See In re Dana Corp. 350 B.R. 144, 148 (Bankr. S.D.N.Y. 2006) (motion to compel denied where parties to agreement were in dispute over contractual interpretation, "[u]ntil such time as these issues are resolved, the Debtors cannot know the precise nature and extent of the contract obligations [movant] is asking this Court to compel the Debtor to assume or reject"); In re Enron Corp., 279 B.R. 695, 702-04 (Bankr. S.D.N.Y. 2002) (motion to compel denied; debtors need not assume or reject loan until after determination by third party that would have impact on value of agreement).

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**The Movant Has Not Demonstrated Cause to Compel
LBHI to Immediately Assume or Reject the Loan Agreement**

9. The Movant has presented no valid reason why LBHI should be compelled to immediately assume or reject the Loan Agreement.

10. Pursuant to section 365(d)(2) of the Bankruptcy Code, a chapter 11 debtor has until confirmation of a plan to decide whether to assume or reject an executory contract. As Judge Gonzalez has aptly stated: "[i]t has been observed that it is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract." In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002).

11. A debtor is entitled to a "reasonable" amount of time to decide whether to assume or reject an executory contract. Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105 (2d Cir. 1983) ("the trustee or debtor in reorganization is allowed a reasonable time to decide whether to assume or reject"). There is no fixed timeframe for what constitutes a "reasonable time." See In re Dana Corp. 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006) ("The determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion based on the particular facts of each case.")

12. In cases involving large debtors with complex bankruptcies, courts have found that more time may be reasonable and necessary, and have regularly rejected motions to compel debtors to accept or reject executory contracts. In Dana, this Court declined to "shorten the time that Congress intended the Debtors to have to make [their] crucial decisions" regarding the assumption or rejection of their executory contracts. 350 B.R. at 149. The Court based its

ruling on the fact that the debtors were involved in a "large and complex" Chapter 11 reorganization, and had purchased goods and services from approximately 5,000 different suppliers.  Id. at 148.  See also Enron, 279 B.R at 703 (denying motion to compel where debtor was party to thousands of executory contracts); In re Republic Tech. Int'l, LLC, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001) (denying motion to compel debtor's assumption or rejection of contract where debtor is worth more than $1 billion and is party to at least 200 executory contracts).

13.    These cases are the largest and most complex chapter 11 cases in history.  LBHI simply has not been afforded the reasonable time necessary to stabilize its estates, review and analyze all of its assets and formulate its plan, as required by applicable case law.  The Debtors have over $613 billion of debt and thousands of creditors.  The size and complexity of these cases is evident from the fact that there have been over 4,000 docket entries in the first nine months since the petitions were filed – an average of about 15 each day, including Saturdays, Sundays and holidays.  This Court has witnessed the countless matters that require the attention of the Debtors' management on a daily basis.  It is simply too early to compel assumption or rejection of the Loan Agreement.

14.    With respect to assumption and rejection of executory contracts specifically, Debtors are currently in the process of analyzing the economic merits of the Loan Agreement in the context of their numerous other executory contracts.  A review of the docket shows that Debtors have been diligently working through their executory contracts; Debtors have made numerous motions to assume or reject executory contracts pursuant to section 365 of the Bankruptcy Code.  See, e.g., Docket Nos. 1130, 1541, 2100, 2462, 3589.  For example, just a few weeks ago, on June 3, 2009, the Court approved the rejection of 63 executory contracts by

the Debtors and the assumption of another 16 of the Debtors' executory contracts by a third party.  See Docket No. 3752.  Where bankruptcy cases are as complex and challenging as these cases, and a debtor has been diligently assuming and rejecting contracts, this Court has refused to compel a debtor to prematurely assume or reject a particular individual contract.  See Enron, 279 B.R. at 703 (denying a motion to compel where a review of entries on a docket shows that the Debtors are "diligently confronting the arduous task of reviewing all of these contracts.")  Debtors' efforts to diligently work through their executory contracts in an orderly fashion is in the best interests of the estate and should be permitted to continue.

15.    At bottom, the Motion is nothing more than the Movant's attempt to secure favorable treatment prior to confirmation.  The harm claimed by the Movant is no different than hundreds of other similarly situated borrowers.  Where a debtor is dealing with a multitude of claims, courts recognize that "[n]o possible benefit is accorded th[e] estate if it is required to make a business judgment on issues not in proportion to the complexities of the total case before formulating its Plan of Reorganization."  In re G-I Holdings, Inc., 308 B.R. 196, 213 (Bankr. D.N.J. 2004).  Granting the Motion would place the Debtors in an untenable position of prematurely either expending huge sums of cash to assume its executory contracts or facing the loss of financially advantageous contracts by rejection prior to formulating their final plan.  Indeed, this Motion is not the first motion seeking to compel Debtors to prematurely assume or reject executory contracts.  See, e.g., Docket No. 3182.  An order granting the Motion would set a troubling precedent and likely result in a flood of other counterparties to executory contracts overwhelming the Debtors with premature motions to compel.  This will clearly impede Debtors' orderly administration of these cases and in particular, its orderly evaluation of executory contracts.

16. In order to shorten a debtor's time for assumption or rejection, a movant must put forth a compelling reason. Theatre Holding Corp., 681 F.2d at 105; South St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 761 (2d Cir. 1996); Enron, 279 B.R. at 703 (factors include: the nature of interests at stake, the balance of harm to the litigants, the good to be achieved, the safeguards afforded the litigants, the complexity of the case, and the number of contracts the debtor must evaluate). It is Movant's burden to demonstrate sufficient cause. Dana, 350 B.R. at 147 ("Where a party seeks to shorten the Debtor's statutory period to assume or reject, the burden is on the movant to demonstrate cause.") See also Republic Tech., 267 B.R. at 554 (holding that in a complex case the movant faces "a very high burden of proof to justify requiring the [d]ebtors to consider its leases outside of a comprehensive business plan").

17. Here, the factors weigh more heavily in favor of denying the motion. As set forth above, these are extremely complex cases and Debtors have been diligently and expeditiously administering these cases. At the same time, even based solely on the claims in the Motion, Laurel Cove has violated a number of its obligations under the Loan Agreement. Movant admits that it has not "been able to keep current on real estate taxes." Motion ¶ 10. However, under the Loan Agreement, payments of such taxes are solely the responsibility of the Borrower. Loan Agreement ¶ 7.11(a). Indeed, Borrower's failure to pay these taxes is an Event of Default by the Borrower. Loan Agreement ¶ 11.1(c). Movant claims that it has "been incurring municipal violations based on its failure to be able to maintain the project." Motion ¶ 10. Yet, under the Loan Agreement, it is the sole responsibility of the Borrower to maintain compliance with municipal codes. Loan Agreement ¶ 7.13. Movant also states that certain vendors have placed liens on the Project. Motion ¶ 9. This is a violation of the Loan Agreement

and an Event of Default by the Borrower; Borrower is required to promptly pay and discharge these Liens. Loan Agreement ¶ 7.11(b); 11.1(c). Borrower cannot stand in violation of multiple provisions of the Loan Agreement and then claim that equities favor compelling LBHI to prematurely accept or reject the Loan Agreement.

18. Further, Borrower's parade of horribles regarding the purported state of the Project is suspect at best. Movant claims that work on the Project ceased, that the condition of the Project is deteriorating, that it owes various vendors $12 million and that it has failed to pay its real estate taxes. Motion ¶¶ 8-10. However, as of the Commencement Date, LBHI had already funded well in excess of 70% of all the funds it ever agreed to pay for the Project, more than $86.5 million. Motion ¶ 7. In the best case scenario for Borrower, under the Loan Agreement, no more than $34 million was left to fund. Motion ¶ 8. In light of this, the claim that Borrower is in massive debt to vendors and municipalities, from just the last nine months, and that the Project has come to a complete halt, calls into serious question whether there are not other reasons beyond what is alleged in the Motion as to why the Project is having difficulties.

19. Nonetheless, even if Laurel Cove were actually prejudiced, such prejudice need not stop the Court from denying the Motion. See, e.g., In re Teligent, Inc. 268 B.R. 723, 739 (Bankr. S.D.N.Y. 2001) (denying motion to compel debtor's assumption or rejection, despite allegation that the debtor's delay in deciding to assume or reject damaged creditor's "present income [and] his future prospects as well"); Hiser v. Blue Cross of Greater Phila. (In re St. Mary Hospital), 89 B.R. 503, 513 (Bankr. E.D. Pa. 1988) (denying motion to compel debtor's assumption or rejection despite debtor's failure to make payments to non-debtor counterparty

pursuant to contract).[2]

20. Given the size and complexity of these cases, coupled with the fact that these cases are only nine months old and have been extremely active, including with Debtors diligently assuming or rejecting various executory contracts, it is premature to compel assumption or rejection of the Loan Agreement. Accordingly, the Motion should be denied.

### The Movant Cannot Subordinate LBHI's Liens

21. The Movant's request for authorization to subordinate the Liens lacks factual or legal foundation. It is not surprising that Movant fails to cite or discuss any cause of action, statute, rule, precedent or procedure by which a movant can non-consensually prime the liens of a defaulting lender and allow a new lender a senior lien because the bankruptcy process itself is the only route that enables a borrower to obtain such relief.[3] As the Movant is not a debtor in a chapter 11 case, it does not and cannot cite any process by which the relative rights and liens of Movant's lenders can be non-consensually subordinated in favor of new lenders. Moreover, Movant represents only that it found a "potential alternative" lender and that such lender "requires" the Debtor to subordinate its liens. Motion ¶ 11. However, Movant submits no term sheet and has offered no detail about this arrangement under which it expects the Debtors to subordinate a valuable $86.5 million interest. The Motion should be denied.

---

[2] Movant's citation to Teligent is curious given that this Court denied the motion to compel in that case. 268 B.R. at 739. The other case cited by Movant, Theatre Holding Corp., 681 F.2d at 106, which sets forth the reasonableness standard, is distinguishable because in that case, debtors' primary asset was the lease sought to be compelled, and even one year into the bankruptcy, debtors were no closer to a plan of reorganization than at the outset.

[3] Section 364 of the Bankruptcy Code allows a debtor-in-possession to obtain additional credit and incur superpriority debt with a lien senior to any existing lien on property but does not apply here because the Movant is not a debtor-in-possession.

WHEREFORE the Debtors respectfully request that the Court deny the relief requested and grant the Debtors such other and further relief as is just.

Dated: June 19, 2009
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession