Hearing Date: July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: July 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Brett H. Miller
Todd M. Goren

*Attorneys for Levine Leichtman Capital Partners Deep Value Fund, L.P.*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
:
In re: : Chapter 11
:
LEHMAN BROTHERS HOLDINGS, INC., *et al.*, :
: Case No. 08-13555 (JMP)
:
: Jointly Administered
:
Debtors. :
:
-------------------------------------------------------------------x

**MOTION OF LEVINE LEICHTMAN CAPITAL PARTNERS DEEP
VALUE FUND, L.P. FOR AN ORDER COMPELLING DEBTORS' PERFORMANCE
UNDER ORDER DATED DECEMBER 16, 2008 [DOCKET NO. 2258]
PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE APPROVING
THE ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS
AND POST-PETITION PURCHASE AND SALE AGREEMENT, OR IN THE
ALTERNATIVE COMPELLING PAYMENT OF AN ADMINISTRATIVE EXPENSE**

Levine Leichtman Capital Partners Deep Value Fund, L.P., and certain of its affiliates (collectively, "LLCP") hereby files its motion for an order compelling performance under the Court's Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Conformation, dated December 16, 2008 (the "Assumption Order"), and that certain post-petition Purchase and Sale Agreement for Distressed Trades (the "P&S Agreement") by and between LLCP and Lehman Brothers Commercial Paper, Inc.("Lehman

ny-853406

CP"), or in the alternative compelling payment of an administrative expense, and in support thereof states as follows:

## JURISDICTION

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory provisions governing the relief requested in this Motion are 11 U.S.C. § § 105(a) and 365.

## INTRODUCTION

3.  Pursuant to the Debtors' motion dated November 14, 2008 (the "Trade Confirmation Motion") [Docket # 1541], the Debtors sought authority, among other things, to assume various oral and written trade confirmation, including a Trade Confirmation with LLCP (the "LLCP Trade Confirmation").[1] As described in more detail below, despite the fact that the Assumption Order approving the Trade Confirmation Motion was entered in December 2008, it took Lehman CP approximately three (3) months to finalize execution of the P&S Agreement with LLCP. In the P&S Agreement, Lehman CP requested an additional three (3) months, until June 15, 2009, to deliver 32,989 Class B Units and 40,630 Class C (the "Units"). **It has now been nearly a year since LLCP Trade Confirmations were executed, sixth months since entry of the Assumption Order, and the deadline for Lehman CP to deliver the Units has come and gone without delivery of same to LLCP**. Despite repeated requests for delivery of

---

[1] All defined terms not otherwise defined herein have the meaning ascribed to them in the Trade Confirmation Motion.

the Units, Lehman CP has been unable or unwilling to deliver the Units, or even give any assurance as to when such Units (or other replacement units) can or will be delivered to LLCP. In light of Lehman CP's failure to deliver the Units when due under the P&S Agreement, LLCP was left with no choice but to file the instant motion.

4. By the Motion, LLCP requests entry of order requiring Lehman CP to deliver the Units within 30 days (which will be approximately 60 days after Lehman CP's deadline in the P&S Agreement to deliver the Units), and failing that, granting LLCP an administrative expense in an amount equal to what LLCP is required to spend to source the Units from a third-party (plus costs associated therewith and costs associated with this Motion), which claim should be paid to LLCP within ten (10) business days of LLCP providing evidence to Lehman CP of its costs to obtain such units.

## BACKGROUND

Lehman CP Agrees to Sell the Units and Other Consideration to LLCP

5. On July 30, 2008 (the "Trade Date"), Lehman CP agreed to sell certain debt of Plastech Engineered Products, Inc. ("Plastech") and proceeds thereof (with a retroactive date to July 1, 2008 with respect to the proceeds) to LLCP pursuant to a P&S Agreement to be executed by the parties.

Lehman CP and Affiliates file for Bankruptcy Protection

6. Following the Trade Date, LLCP actively sought to finalize the LLCP Trade Confirmation and close the trade. This delay was exacerbated when on September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. and various affiliated entities (collectively, the

3

ny-853406

"Debtors") filed voluntary petitions under the Bankruptcy Code. Lehman CP and certain other affiliated entities followed with the filing of voluntary petitions on October 5, 2008.[2]

Assumption of the LLCP Trade Confirmation

7. Immediately upon the filing of Lehman CP's voluntary petition, LLCP immediately sought to confirm that Lehman CP intended to assume its obligations with respect to the Plastech trade. LLCP was assured that the trade would be assumed.

8. Thereafter, on November 14, 2008, the Debtors filed the Trade Confirmation Motion. Pursuant to the Motion, the Debtors sought authority to (i) assume the Assumed Trades; (ii) reject the Rejected Trades; and (iii) modify and assume certain other Open Trade Confirmations. The LLCP Trade Confirmation was among the Trade Confirmations to be assumed without modification pursuant to the Motion. In support of the Trade Confirmation Motion, the Debtors argued that their proposed assumptions are an exercise of good business judgment because the terms of the Assumed Trades are more favorable than what would otherwise be available in today's market. See Trade Confirmation Motion at ¶ 20.

9. On December 16, 2008, the Court entered the Assumption Order [Docket # 2258], which provided for, among other things, the Assumption of the LLCP Trade Confirmation. See Exhibit A to Assumption Order at p. 5.

10. It was not until February 19, 2009 that the P&S Agreement was finally executed. A copy of the P&S Agreement is annexed hereto as Exhibit A. Certain of the units that Lehman CP intended to transfer to LLCP were held in the name of LBI prior to the Petition Date. Upon information and belief, the Units were held in LBI's name only for administrative and/or

---

[2] On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers, Inc. ("LBI"), which proceeding is currently pending as an adversary

Footnote continued on next page.

regulatory purposes, and Lehman CP retained all equitable interest in the relevant units. *See* P&S Agreement, Section 4.1(d) ("Seller is the sole beneficial owner of the Units."). Section 3.3 of the P&S Agreement requires that Lehman CP "use all reasonable commercial efforts to deliver to Buyer [assignments of the Units] duly completed and executed on behalf of LBI . . . as soon as reasonably practicable and in any event on or before June 15, 2009."

Lehman CP's Failure to Deliver the Units

11. On May 29, 2009, counsel for Lehman CP requested a three-month extension of its deadline to deliver the Units until September 15, 2009. A copy of the May 29th correspondence is annexed hereto as Exhibit B. In response to this request, on June 3, 2009, counsel for Lehman CP requested a conference call with counsel for LBI and Lehman CP to discuss the situation and understand the need for an extension (the "June 3 Email"). A copy of the June 3 Email is annexed hereto as Exhibit C. As a result of the June 3 Email, a call was scheduled amongst the parties for June 10, 2009 to discuss the requested extension. Shortly before the June 10th call, counsel for Lehman CP advised that Lehman CP had reached a "tentative deal" with LBI to deliver the Units by the end of the June and requested that the call be adjourned. In response, counsel for Lehman CP requested that the call be rescheduled for the following day, but advised that a call would not be necessary (and that LLCP would likely agreed to the requested extension to the end of June) if LBI and Lehman CP could confirm by email the existence of an agreement to deliver the Units by June 30, 2009 (the "June 10 Email"). A copy of the June 10 Email is annexed as Exhibit D. Despite LLCP's request, a further call was never scheduled, and Lehman CP advised on June 11, 2009 that no agreement had been reached

---

proceeding related to the instant case

on the delivery of the Units by June 30th and that LBI could give no assurance as to when such units would be delivered.

12.     Prior to filing the instant motion, on June 11, 2009, counsel for LLCP attempted one last time to contact bankruptcy counsel for LBI to discuss the issue and attempt to obtain the Units (the "June 11 Email").  A copy of the June 11 Email is annexed as Exhibit E.  To date, LLCP has not received any response to the June 11 Email, and counsel for Lehman CP has not provided any further assurances as to whether the Units will be delivered.

13.     Lehman CP has had over seven months since it sought to assume the LLCP Trade Confirmation to deliver the Units (and over 3 months since execution of the P&S Agreement).  Yet, Lehman CP has failed to deliver the Units in that time (whether from LBI or a third-party), and has not even been able to provide LLCP with any explanation of what has been done to obtain delivery of the Units and when delivery of the Units can be expected.  Lehman CP's failure to deliver the Units as and when due has caused LLCP to incur significant legal fees in an effort to obtain delivery of the Units (particularly when combined with the significant legal fees LLCP was required to incur attempting to get Lehman CP to initially execute the P&S Agreement).  Such legal fees are several times in excess of what would be required to reasonably close even the most complex of debt trades.

## RELIEF REQUESTED

14.     LLCP hereby requests entry of Order (i) requiring Lehman CP to deliver the Units (whether by obtaining them from LBI or by sourcing them from a third-party) within 30 days from entry of the Order granting the Motion, (ii) in the event Lehman CP is unable to deliver the Units by such date, granting LLCP an administrative expense against Lehman CP in an amount equal to what LLCP is required to spend on the open market to source the Units from a non-

affiliated third-party in an arm's length transaction; (iii) granting LLCP an administrative expense for the additional costs and expenses it incurred in attempting to close the LLCP Trade Confirmation (including the filing and prosecution of this Motion) and obtain delivery of the Units; and (iv) requiring Lehman CP to pay such claims within [ten (10)] business days of LLCP providing evidence to Lehman CP of same.

15. By assuming the LLCP Trade Confirmation, the Debtors have a post-petition obligation to perform under such contract. *See e.g., In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 1000 (2d Cir. 1996) ("Where a debtor has been permitted by the bankruptcy court to assume a contract pursuant to *§ 365*, equitable estoppel principles may be applied by the court to deny the debtor permission to escape its obligation to perform the contract it assumed."); *In re Conseco, Inc.*, 330 B.R. 673, 687-88 (Bankr. N.D. Ill. 2006) ("debtor must perform all of its on-going obligations under assumed executory contracts"); *In re G. Paoletti, Inc.*, 205 B.R. 251, 264 (Bankr. N.D. Ca. 1997) ("If the contract is assumed, the trustee must perform the debtor's obligations under the contract . . . .").

16. Furthermore, the Debtors' failure to perform under the LLCP Trade Confirmation, gives rise to an administrative expense for LLCP for the additional costs it incurred (including legal costs incurred in connection with bringing the instant motion) as a result of the Debtors' non-performance. *See, e.g., In re Crummie*, 194 B.R. 230, 234 (N.D. Ca. 1996) ("If the debtor were not able to perform under the assumed contract and breached, such breach would give rise to a claim for damages caused by breach . . . such a claim would constitute an administrative expense under § 503."). Likewise, the Debtors failure to perform under a post-petition agreement such as the P&S Agreement also gives rise to an administrative expense. *See In re Airlift International, Inc.*, 761 F.2d 1503, 1509 (11th Cir. 1985) ("The policy

behind treating claims arising from post-petition breaches as administrative expenses is clear. The debtor in possession or trustee by assuming or entering into the contract makes a determination that the contract is in the best interest of the estate and its creditors."). *See also* 11 U.S.C. 365(g)(2)(A)

17.    Thus, should Lehman CP be unable to deliver the Units within 30 days as requested, there should be little doubt that LLCP is entitled to an administrative expense for its damages, which such claim should be equal to the amount LLCP is required to spend on the open market to replace the units that Lehman CP was contractually required to deliver, but failed to do so. It is well settled that "damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." *Lucente v. IBM*, 310 F.3d 243, 262 (2d Cir. 2002). Such damages should be measured based upon the value of the item at the time of the breach. *Id*. The Units that Lehman CP has failed to deliver, however, are very thinly traded and there is virtually no market for such units. Under these circumstances, the cost for LLCP to replace the Units is the appropriate measure of damages. *See In re September 11th Litigation*, 590 F. Supp. 2d 535, 541 (S.D.N.Y. 2008) ("[I]n some cases where the property is of a type 'seldom traded' and for which there is no 'market price,' . . . the property is considered 'specialty property' and replacement cost is considered the proper measure of fixing damage.")

18.    The LLCP Trade Confirmation has been open since July 2008. The Debtors have stated that closing trades "over weeks and months is a frequent and common occurrence in the secondary loan market." See Debtors' Omnibus Reply to Objections to Trade Confirmation Motion at ¶ 47 [Docket # 2208]. LLCP understands the complexity of the Debtors' tasks, but it has now been <u>nearly 1 year</u>, and the Debtors still have not delivered all of the units required

8

ny-853406

under the LLCP Trade Confirmation, nor have they given any indication that they have done anything to perform, or will do anything to perform. Under these circumstances, LLCP had little option but to file the instant motion in an attempt to obtain delivery of the Units (or otherwise be paid by Lehman CP for the replacement cost of such Units) so that it can finally close this transaction.

## REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(b)

19.   It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that no novel issues of law are raised in this motion and the relevant authorities are contained herein.

## CONCLUSION

20.   The Debtors should be required to timely comply with their obligations under their assumed Open Trade Confirmations and post-petition agreements such as the P&S Agreement. Accordingly, LLCP requests entry of Order (i) requiring Lehman CP to deliver the Units (whether by obtaining them from LBI or by sourcing them from a third-party) within 30 days from entry of the Order granting the Motion, (ii) in the event Lehman CP is unable to deliver the Units by such date, granting LLCP an administrative expense against Lehman CP in an amount equal to what LLCP is required to spend on the open market to source the Units from a non-affiliated third-party in an arm's length transaction; (iii) granting LLCP an administrative expense for the additional costs and expenses it incurred in attempting to close the LLCP Trade Confirmation (including the filing and prosecution of this Motion) and obtain delivery of the

Units; and (iv) requiring Lehman CP to pay such claims within [ten (10)] business days of LLCP providing evidence to Lehman CP of same.

21.     If the Court grants the relief requested in the Motion, Lehman CP will have nearly 60 days from the filing of the Motion to obtain the Units from LBI or a non-affiliated third-party. This period should provide Lehman CP with more than enough time to obtain the Units, and will allow them to control the cost of doing so.  If, however, Lehman CP is unable or unwilling to obtain the Units in the proposed period, LLCP should be permitted to obtain such Units on the open market and should be compensated by the Debtors for the cost of doing so.

WHEREFORE, for the reasons set forth herein, LLCP requests that the Court grant the relief requested herein and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June __, 2009

                          MORRISON & FOERSTER LLP

                          By: /s/ Brett H. Miller
                              BRETT H. MILLER
                              TODD M. GOREN
                              MORRISON & FOERSTER LLP
                              1290 Avenue of the Americas
                              New York, New York 10104
                              Telephone:  (212) 468-8000
                              Facsimile:  (212) 468-7900

                              *Attorneys for Levine Leichtman Capital*
                              *Partners Deep Value Fund, L.P.*

ny-853406