Hearing Date:  June 24, 2009 at 10:00 a.m. (Prevailing Eastern Time)

LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
David L. Neale (DN 1948)

Attorneys for Lessor and Sublessor,
Kalaimoku-Kuhio Development Corp.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                            :
**In re**                                   :    **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al*  :    **08-13555 (JMP)**
                                            :
                          Debtors.          :    **(Jointly Administered)**
                                            :
                                            :
----------------------------------------------------------------x

**REPLY OF KALAIMOKU-KUHIO DEVELOPMENT CORP. TO DEBTORS'**
**OBJECTION TO MOTION FOR AN ORDER (A) COMPELLING**
**PAYMENT OF POST-PETITION RENT AND CHARGES;**
**(B) GRANTING RELIEF FROM THE AUTOMATIC STAY; AND**
**(C) COMPELLING ASSUMPTION OR REJECTION OF LEASES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

      Kalaimoku-Kuhio Development Corp. (the "Landlord") hereby submits its reply to the objection filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including LB 2080 Kalakaua Owners LLC ("LB 2080"), as debtors and debtors in possession (together, the "Lehman Debtors") to the Landlord's motion (the "Motion") dated June 4, 2009 [Docket No. 3768] brought pursuant to Sections 362(d),

363(e), 365(d)(2) and 365(d)(3) of Title 11 of United States Code (the "Bankruptcy Code")[1] and Rules 4001(a) and 6006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order: (1) compelling payment of post-petition rents and charges immediately upon the entry of an order granting this Motion, (2) prospectively vacating the automatic stay, effective on the 3rd business day following default under the Leases (as defined herein), to exercise all of its rights and remedies under: (a) the "Amended and Restated Ground Lease" (the "Ground Lease"), pursuant to which LB 2080 is the lessee, and (b) the "Amended and Restated Sublease" (the "Ground Sublease," and with the Ground Lease, collectively referred to herein as the "Leases") pursuant to which LB 2080 is the sublessee, and under all applicable laws, in the event LB 2080 does not timely perform its post-petition obligations under the Leases, and (3) compelling assumption or rejection of the Leases.

All capitalized terms used herein shall have the meanings given in the Motion unless otherwise stated. In support of its reply, the Landlord respectfully represents as follows.

## PRELIMINARY STATEMENT

1. Despite the absolute and mandatory requirements of Section 365(d)(3), LB 2080 acknowledges that it has not, and cannot, pay post-petition rents and charges to the Landlord arising under the Leases, which currently exceed $612,000, and, by LB 2080's own admission, will increase by approximately $205,000 on July 1, 2009. Because it has no defense, LB 2080's objection to the Motion simply ignores the obligations of Section 365(d)(3) entirely, and urges the Court to adjourn the hearing on the Motion to the next omnibus hearing date of July 15, 2009 without any proposal or indication as to how the Landlord will be adequately protected for the unpaid post-petition rents and charges and the further delay of payment

---

[1] All references to Section or Sections shall be to the Bankruptcy Code unless otherwise stated.

2

thereof, and without any explanation as to what is exactly supposed to happen on or by July 15, 2009.

2. While LB 2080 indicates that it is "hopeful" that a sale agreement will be executed with a buyer "this week" (presumably, by Friday, June 26, 2009 which is just two days after the June 24, 2009 hearing date on the Motion), LB 2080 is also careful to note that "there is no assurance a sale will be consummated." Indeed, LB 2080 has mentioned a possible sale to the Landlord since January 2009, and has represented to the Landlord for the past several weeks that it is "very close" to having a sale agreement. Despite these long-standing reassurances, LB 2080 has yet to finalize any agreement with any buyer. In any event, sale discussions with prospective buyers does not excuse or eliminate the requirements of Section 365(d)(3) that LB 2080 timely perform its post-petition obligations under the Leases.

3. As LB 2080 acknowledges, no sale of the building can occur without a concurrent assignment of the Leases; yet, LB 2080 has refused to provide the Landlord with any information on the purported sale, such as: Who is the buyer? Is the buyer a single purpose entity specially created to acquire the building, and, if so, how is it capitalized? What is the purchase price? Is it an all cash sale or will there be a note involved? Who is responsible for the payment of cure obligations under the Leases? When is the sale supposed to close? What are the conditions and contingencies to closing? Simply put, the Landlord has not been supplied with the most basic information necessary to assess whether a sale is likely to occur, or whether the requirements associated with assumption and assignment of the Leases pursuant to Section 365, including, without limitation, determination of adequate assurance of future performance, can be met. There is no evidence that the Leases can be assumed and assigned even if a sale agreement with a buyer is reached.

3

4. The single biggest purpose of the Motion is for the Landlord to receive post-petition rents and charges accrued under the Leases, and the Motion reflects the Landlord's exercise of its rights under the Leases and Section 365(d)(3) to be paid the same. Indeed, the Lehman Debtors are no strangers to the concept of exercising their rights and remedies, having foreclosed upon KKO's interests in and to the building and the Leases. The Lehman Debtors elected to make loans to KKO (the developer/borrower), knowing full well that the property was subject to the Leases, and, therefore, a default under the Leases could result in the forfeiture of any building that KKO constructed upon the property with proceeds of the Lehman Debtors' loans. Therefore, a possible forfeiture of the building was always a self-inflicted business risk that the Lehman Debtors knowingly and intentionally undertook when it decided to make loans to KKO. Under these facts, there is no "windfall" to the Landlord, and to argue that LB 2080 will suffer unfair "harm" if the Motion is granted is wholly disingenuous. The Motion is not about terminating or defeating LB 2080's sale efforts. The Motion is about ensuring LB 2080's timely performance under the Leases as mandated by Section 365(d)(3) while it undertakes efforts to sell the building, and if it cannot timely perform or provide adequate protection for such non-performance, then the Landlord is entitled to relief from the automatic stay to enforce its rights.

5. Distilled to its very essence, LB 2080 is effectively seeking to force the Landlord to serve as an involuntary post-petition lender, without any of the protections normally given to a debtor-in-possession lender or any adequate protection for the losses and risks that it is being asked to bear, while LB 2080 continues to use the Landlord's property for free as it attempts a sale. It is therefore the Lehman Debtors that are obtaining a "windfall." The financing that LB 2080 seeks should be borne by a lender, or the sole member of LB 2080,

4

PAMI, LLC, which holds approximately $30,920,101 of the $31,512,581 total scheduled unsecured claims (which equates to 98% of the total scheduled unsecured claims) in this case. If LB 2080 wants to preserve the building for the benefit of creditors (with the main creditor being an insider), then as typically all debtors do, LB 2080 should have obtained post-petition financing or equity contributions in order to comply with its Bankruptcy Code obligations, including obligations under Section 365(d)(3).

6.    Based solely on the "hope" of a sale, LB 2080 requests that the hearing on the Motion be adjourned to the next omnibus hearing date of July 15, 2009, but it is unclear what is exactly supposed to happen on July 15, 2009. If a deal is made "this week" as LB 2080 indicates, does LB 2080 intend to pay to the Landlord all accrued post-petition rents and other charges by or on July 15, 2009, or will LB 2080 come into Court on July 15, 2009 (at which point post-petition rents and charges will exceed $825,000) requesting additional time? Also absent from the request for adjournment is any proposal or indication as to how the Landlord will be adequately protected for the unpaid post-petition rents and charges and the further delay in the payment thereof.

7.    The prospects for a sale are, at best, highly uncertain and speculative. The prospects for an assignment of the Leases are even more uncertain and speculative given the lack of any information about the buyer. Given LB 2080's representation to the Court that a deal is expected to occur "this week," the Landlord requests that the Court enter an order: (i) compelling LB 2080 to pay all post-petition rents and charges for the period from April 23, 2009 to June 30, 2009 by June 30, 2009, and all subsequent obligations under the Leases by not later than the third business day following the due date; and (ii) in the event the requirements of subsection (i) are not met, then the automatic stay shall be deemed terminated, and the Leases

5

shall be deemed rejected, effective July 1, 2009 (as to the payment required to be made on June 30, 2009) and on the next day following the third business day for all subsequent obligations under the Leases which are not timely performed.

8.     Given the mandate of Section 365(d)(3), the hardships to the Landlord if post-petition rents and charges are not paid immediately, and the representations of LB 2080 regarding a sale, the Landlord submits that the proposed terms of an order as described above in Paragraph 7, are fair, reasonable and warranted under the circumstances of this case.

**I.**

**LB 2080 SHOULD NOT BE ALLOWED TO AVOID OR DEFER ANY LONGER THE PERFORMANCE OF ITS POST-PETITION OBLIGATIONS UNDER THE LEASES**

9.     The mandate of Section 365(d)(3) is unequivocal. See In re Almacs, Inc., 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996). The primary goal of Section 365(d)(3) is to protect landlords, and prevent landlords from becoming involuntary post-petition lenders to debtors' estates. See In re Handy Andy Home Imp. Centers, Inc., 196 B.R. 87, 95 (Bankr. N.D.Ill. 1996). The legislative history of Section 365(d)(3) likewise demonstrates that its purpose is to ensure that landlords receive immediate payment for lease obligations, and prevent the injustice of landlords being forced to provide uncompensated services to debtors. See Centerpointe Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205, 211 (3rd Cir. 2001). Given that, in the bankruptcy context, a commercial landlord is generally required to provide ongoing services to the debtor (e.g., the use of its property, utilities, security, and other services) until the lease is assumed or rejected by the debtor, Section 365(d)(3) essentially ensures that each party will get the benefit of its bargain under the

6

lease.  Urban Retail Properties v. Loews Cineplex Entertainment Corp., 2002 WL 535479, at 5 (S.D.N.Y. Apr. 9, 2002).

10. Here, LB 2080 seeks to eviscerate the protections of Section 365(d)(3) and force the Landlord to finance its bankruptcy case.  The apparent primary reason is that it lacks funds, and is "hopeful" (but without any assurance) that a sale will occur, but LB 2080 does not provide any details of the purported sale or buyer.  As a result of the non-payment of accrued post-petition rents and charges due under the Leases, LB 2080 is essentially getting a loan from the Landlord, without adequate assurance that the Landlord will ever receive full payment.  The Landlord is not in the business of loaning money, and Section 365(d)(3) is meant to protect the Landlord from becoming an involuntary post-petition lender, and not be used as a financing vehicle by a cash-strapped debtor.  LB 2080's continued non-payment of post-petition rents and charges imposes on the Landlord the very risks of an involuntary creditor status that the 1984 amendments to the Bankruptcy Code Section 365(d)(3) were designed to eliminate.

11. Significantly, LB 2080 does not explain why it has not secured post-petition financing or contributions from any lender or member, respectively.  Perhaps LB 2080 has attempted to obtain financing or contributions, but neither any lender nor its member was willing to provide loans or contributions and assume the risks associated with non-performance by LB 2080.  Unfortunately for the Landlord, as a result of its defaults under Section 365(d)(3), LB 2080 has effectively forced the Landlord to "bridge the gap" with high risk, unsecured financing in excess of $612,000 (which will increase to over $825,000 on July 1, 2009) without any protections that it will ever be repaid.  LB 2080 admits that it currently has cash in excess of $100,000 and receives monthly rent from its sole space tenant and the owner of the adjacent

7

property of approximately $75,000 per month; however, none of the existing funds have been used to pay post-petition rents and charges to the Landlord.

12.    A "hope" for a sale does not excuse or modify LB 2080's obligations to timely perform under the Leases post-petition. LB 2080 seeks to fundamentally alter Landlord's rights under Section 365(d)(3) with no basis shown to do so. Indeed, "[s]hopping center landlords, even more so than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3rd Cir. 2000). The Landlord has not been paid rents since March 2009. LB 2080 filed its Chapter 11 case on April 23, 2009, and the Landlord has now waited more than 60 days from the Petition Date for payment of accrued post-petition rents and charges. Section 365(d)(3) does not permit any further delays, and, therefore, there is no basis for continuing the hearing on the Motion for an additional three weeks to July 15, 2009.

13.    A continuance of the hearing on the Motion is especially inappropriate given that there is absolutely no explanation as to what is expected to occur on July 15, 2009, or any proposal or indication as to how the Landlord will be adequately protected for the unpaid post-petition rents and charges and the further delay of payment thereof. More specifically, there is no indication that LB 2080 will have the funds by July 15, 2009 to pay all accrued post-petition rents and charges to the Landlord. There is also no indication as to why LB 2080 cannot pay the accrued post-petition rents and charges to the Landlord sooner than July 15, 2009 if a sale agreement is expected to be executed by the end of "this week." Under the circumstances, the Landlord submits that the entry of an order, on the terms set forth in Paragraph 7 above, is appropriate and warranted.

///

## II.

## IF POST-PETITION RENTS AND CHARGES ARE NOT IMMEDIATELY PAID, LANLDORD IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

14.     Under Section 362(d)(1), the Court may lift the automatic stay for cause, including the lack of adequate protection of an interest in property of such party in interest. The plain language of the statute, and the mandatory language of this subsection requires the Court to grant relief from stay unless the Landlord is adequately protected.  LB 2080 has the burden of proposing or providing the Landlord with adequate protection.  See In re Richards Pontiac, Inc., 6 B.R. 773, 777 (Bankr. E.D.N.Y. 1980).   The Bankruptcy Code does not define the phrase "adequate protection."  However, Congress expressly excluded the granting of an administrative expense as a means of providing adequate protection.  Id. at 777-78.

15.     When a debtor is in violation of Section 365(d)(3), as a condition to the court's extending the automatic stay, debtor must cure its post-petition defaults under the lease and remain current thereunder, pending confirmation of its liquidating plan or other disposition of this case. In re Joker Enterprises, Inc., 1995 WL 626372, at *3 (Bankr. S.D.N.Y. Oct. 13, 1995), *citing*, In re B.K.B. Enterprises, Inc., 97 B.R. 170, 173 (Bankr. S.D.N.Y. 1989) (bankruptcy court's stay of execution of warrant of eviction pending resolution of appeal before state court conditioned on debtor's current payment of rent).  Moreover, a landlord is entitled to adequate protection of its rights to be kept current on post-petition rent under Section 363(e).[2] In re Ernst Home Center, Inc., 209 B.R. 955, 965 (Bankr. W.D. Wash. 1997); In re RB

---

[2] Section 363(e) states: "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

9

Furniture, Inc., 141 B.R. 706, 713-714 (Bankr. C.D. Cal. 1992) (requiring rent to be held in a segregated account "to assure that funds are available to pay administrative rent for debtor's use of the property if it rejects the lease.").

16. The Landlord lacks adequate protection of the accruing post-petition rents, charges and obligations under the Leases. LB 2080 is in default of at least three months of rent and charges due under the Leases, totaling more than $1 million. The post-petition rents and charges are currently approximately $612,108.19, and are expected to increase by more than $200,000 on July 1, 2009. LB 2080's failure to comply with the provisions of Section 365(d)(3) to "timely perform" all of the obligations arising post-petition under the Leases constitutes lack of adequate protection that the Landlord will receive all accrued, but unpaid post-petition rents and charges, and performance of all other and future post-petition obligations under the Leases on a timely basis. See In re 1345 Main Partners, Ltd., 215 B.R. 536, 543 (Bankr. S.D. Ohio 1997) (finding that relief from the automatic stay was appropriate "if the Debtor attempts to occupy the premises without timely making the required rental payments"). Moreover, LB 2080 has failed to propose or provide the Landlord with any adequate protection of the accruing post-petition rents, charges and obligations under the Leases.

17. In support of its argument that there is no "cause" shown for terminating the stay under Section 362(d)(1), LB 2080 relies on the Second Circuit case, In re Sonnax Industries, Inc. ("Sonnax"), 907 F.2d 1280 (2d Cir. 1990). However, the Sonnax case concerned a stay of judicial proceedings, and the Second Circuit Court of Appeals evaluated factors to be weighed in deciding whether the litigation should be permitted to continue in another forum. There are no judicial proceedings between LB 2080 and the Landlord; therefore, the Landlord submits

that the Sonnax case, and the factors identified in that case, are distinguishable and does not apply to the facts herein.

18. "Cause" exists under Section 362(d)(1) to prospectively vacate the automatic stay to permit a landlord to exercise its rights and remedies under the lease where a debtor has failed to pay post-petition rent together with lack of evidence to show ongoing compliance with lease terms. See In re Pudgies Dev. NY, 239 B.R. at 696 (stay relief available remedy to landlord where debtor-tenant fails to comply with § 365(d)(3)); see also In re Rocchio, 125 B.R. 345, 347 (Bankr. R.I. 1991). Furthermore, LB 2080 has failed to propose or provide the Landlord with any adequate protection of the accruing post-petition rents, charges and obligations under the Leases. Therefore, the Court should deem the automatic stay to be terminated on the terms set forth in Paragraph 7 above.

19. Lifting of the automatic stay under Section 362(d)(2) is also appropriate and warranted under the circumstances. First, LB 2080 has no equity in the Leases because, as LB 2080 admits, the rent received by LB 2080 from the space tenants is less than what it is obligated to pay under the Leases. Second, LB 2080 admits that the Leases are not necessary to an effective reorganization because, as discussed in Section III below, it intends to reject the Leases if a sale agreement is not reached by July 15, 2009.

20. As aforementioned, the Landlord submits that an adjournment of the hearing on the Motion is inappropriate, unwarranted and would place an onerous burden upon the Landlord which has already waited over 60 days for payment of post-petition rents and charges. Additionally, Section 362(f) provides:

> "Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such

11

> interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section."

The Landlord will suffer irreparable damage if the hearing is continued for an additional three weeks because, without rents from LB 2080, it is experiencing extreme burden and hardship meeting its own loan obligations to its lender with respect to the property. For example, in addition to its ongoing loan obligations, the Landlord has had to pay the property taxes which is the responsibility of LB 2080. In other words, LB 2080's violation of Section 365(d)(3) is pushing the Landlord into financial distress. Therefore, pursuant to Section 362(f), an adjournment of the hearing on the Motion cannot occur unless the Court grants relief from the stay to the extent necessary to prevent such irreparable damage.

### A.     The "Windfall" Argument is Nonsensical, Misleading and a Red Herring.

21.     LB 2080 contends that stay relief will result in a "windfall" for the Landlord because LB 2080 will forfeit the building into which it invested over $45 million, to the detriment of all of its unsecured creditors (recognizing that 98% of the scheduled unsecured claims are held by LB 2080's parent company). LB 2080 further contends that stay relief will result in an "end run" of Section 507 of the Bankruptcy Code because the Landlord would receive the first priority payment of all of its pre-petition unsecured claims to the detriment of LB's other creditors. These contentions are without any merit and wholly disingenuous.

22.     The Leases are not new. The Lehman Debtors **elected** to make loans to KKO, the developer/borrower of the building, knowing full well that the land upon which KKO was to construct the building would be subject to the Leases. Thereafter, the Lehman Debtors again **elected** to foreclose upon KKO with the knowledge of the lease terms. Presumably, under its loan agreements with KKO, the Lehman Debtors had every right and power to pay or cure any defaults under the Leases, on behalf of KKO, to avoid a forfeiture of the building and

termination of the Leases and charge such payments to KKO's loan balance. In other words, the Lehman Debtors engaged in a loan transaction with KKO fully and completely aware of the risks associated with non-payment on the Leases. Those risks became even more direct when the Lehman Debtors, through LB 2080, became the tenant under the Leases, as a result of having elected to foreclose upon KKO's interests in the Leases.

23. The alleged "windfall" to the Landlord is entirely self-inflicted and created by the Lehman Debtors which voluntarily made loans to KKO and foreclosed upon KKO's interests in the building and the Leases upon default by KKO. The situation herein does not involve the Landlord refusing to accept post-petition rents and charges because it would rather seize the building. To the contrary, the Landlord would like nothing more than to be paid, immediately, all post-petition rents and charges due under the Leases because the Landlord suffers economic harm as a direct result of LB 2080's violation of Section 365(d)(3). However, that has not occurred for more than 60 days since LB 2080 filed Chapter 11, and the non-payment of post-petition rents and charges by LB 2080 has resulted in a "windfall" for the Lehman Debtors which have contributed <u>zero</u> dollars into LB 2080's estate while continuing to use the building and the Landlord's property without any compensation or any adequate protection.

### III.

### LB 2080 SHOULD BE COMPELLED TO IMMEDIATELY ASSUME OR REJECT THE LEASES

24. LB 2080 states, in Paragraph 33 of its objection to the Motion, that it intends to reject the Leases if it has not entered into a definitive purchase contract for the sale of the Property by July 15, 2009. The Landlord has no objection to this decision so long as all

accrued post-petition rents and charges are immediately paid as required by Section 365(d)(3). There is no basis for affording LB 2080 the privileges of Section 365(d)(4) (which allows a debtor in possession to assume or reject unexpired lease of nonresidential real property by the earlier of a date that is 120 days after the date of the order for relief or the date of the entry of an order confirming a plan) when it has violated the provisions of Section 365(d)(3) by failing to pay any post-petition rents and charges to the Landlord. The privilege of Section 365(d)(4) should only be extended if LB 2080 pays all accrued but unpaid post-petition rents and charges immediately.

25. For these reasons, the Landlord requests entry of an order: (i) compelling LB 2080 to pay all post-petition rents and charges for the period from April 23, 2009 to June 30, 2009 by June 30, 2009, and all subsequent obligations under the Leases by not later than the third business day following the due date; and (ii) in the event the requirements of subsection (i) are not met, then the automatic stay shall be deemed terminated, and the Leases shall be deemed rejected, effective July 1, 2009 (as to the payment required to be made on June 30, 2009) and on the next day following the third business day for all subsequent obligations under the Leases which are not timely performed.

///

///

///

///

///

WHEREFORE, for the reasons set forth in the Motion and herein, the Landlord requests that the Court grant the relief requested herein and grant such other and further relief as the Court may deem just and proper.

DATED: June 22, 2009

LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

By:  */s/ David L. Neale*
DAVID L. NEALE
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Lessor and Sublessor,
Kalaimoku-Kuhio Development Corp.