Hearing Date: June 24, 2009, 10:00 a.m.
Objection Deadline: June 23, 2009, 12:00 p.m.

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, <br><br> Debtors. | Chapter 11 Case No. <br><br> 08-13555 (JMP) <br><br> (Jointly Administered) |

**OBJECTION OF BARCLAYS CAPITAL INC. TO
PROPOSED JOINDERS IN DEBTORS' MOTION FOR AN ORDER
UNDER RULE 2004 AUTHORIZING DISCOVERY OF BARCLAYS CAPITAL INC.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Barclays Capital Inc. ("Barclays") respectfully objects as follows to the proposed joinders in the motion of Lehman Brothers Holdings Inc. ("LBHI") for an order pursuant to Federal Rule of Bankruptcy Procedure 2004 authorizing it to conduct certain discovery of Barclays (the "Motion" or "Debtors' Motion," Case No. 08-13555, Docket No. 3596). Those proposed joinders include (1) the Response of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. to Debtor's Motion for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing Discovery from Barclays Capital, Inc. (the "Committee Joinder") (Case No. 08-13555, Docket No. 3778); (2) the Joinder of the Bank of New York Mellon Trust Company,

N.A., as Indenture Trustee, to the Motion of Lehman Brothers Holdings Inc. for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing Discovery from Barclays Capital, Inc. (the "BNYM Joinder") (Case No. 08-13555, Docket No. 3829); and (3) the Joinder of Westernbank Puerto Rico to the Motion of Debtor and Debtor in Possession for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing Discovery from Barclays Capital, Inc. (the "Westernbank Joinder") (Case No. 08-13555, Docket No. 3819). Terms defined in the joinder submissions and in Barclays' Objection to the Debtors' Motion have the same meaning below.

## PRELIMINARY STATEMENT

1. The joinder submissions provide no support for the Debtors' Motion. Instead, they are based on (i) purported confusion and "lack of transparency" concerning matters that have been fully disclosed and as to which LBHI itself has complete information (*see* Committee Joinder, at ¶¶ 4-5); (ii) purported lack of progress by the Examiner concerning issues that the Debtors' Motion does not even address (*see* BNYM Joinder, at ¶¶ 5, 7-9), and (iii) matters that should be addressed by the Trustee in the LBI case (*see* Westernbank Joinder, at ¶¶ 3-4).

2. As Barclays showed in its Objection to the Debtors' Motion, the Debtors' request for discovery to explore potential claims should be denied because the claims upon which it is premised are meritless. The cure and compensation provisions of the Asset Purchase Agreement contradict those claims. The LBHI Estate has no right to reexamine and renegotiate a transaction that the Estate itself negotiated and presented to this Court for approval. Under the express terms of the Clarification Letter, neither the Seller nor the Purchaser is entitled to claim a purchase price adjustment. Moreover, Barclays has offered to produce voluntarily information reasonably related to performance of the cure and compensation terms of the Purchase Agreement. Barclays has also offered to produce to LBHI information that Barclays produces to the Examiner which

2

is responsive to LBHI's proposed document requests, provided the Examiner does not object to such production. No further discovery is warranted.

3. Nothing in the joinders suggests — nor could they — that LBHI itself does not have complete information concerning the matters raised in the joinders. Nor do the joinders even attempt to suggest that LBHI has any right to assert a claim against Barclays for a purchase price adjustment or based on the cure and compensation provisions of the Purchase Agreement. The joinders focus on peripheral matters. They seek information that LBHI's motion does not address. And they raise points that have no bearing on whether LBHI should be permitted to take discovery concerning the specific, meritless claims underlying LBHI's Motion. There is no justification for these parties to use the Debtors' Motion as a staging point from which to pursue unrelated matters.

## ARGUMENT

### I. THE COMMITTEE'S PROFESSED CONFUSION REGARDING THE SALE TRANSACTION IS UNJUSTIFIED, AND PROVIDES NO SUPPORT FOR THE DEBTORS' MOTION.

4. The Committee asserts that questions it raised in opposition to the December Settlement Motion remain unanswered. Committee Joinder, at ¶ 8. On the basis of such open questions, the Committee claims it is entitled to join in the Debtors' Motion and obtain further discovery or reconciliations from Barclays. But the Committee's submission fails to acknowledge that, in the intervening months, Barclays has fully addressed the Committee's questions concerning the events that the Committee claims are still a source of confusion.

5. The Creditors' Committee also focuses on matters as to which LBHI itself has complete information. In fact, the Committee purports to be confused by representations that LBHI itself supposedly made to the Committee concerning the Sale Transaction negotiations and changes in terms that LBHI itself negotiated. In essence, the Committee is seeking to join a

3

motion by LBHI to obtain from Barclays information about LBHI's own conduct and statements — information that is fully available to LBHI.

6. As detailed below, the Committee's assertion that there has been a lack of transparency is flatly incorrect. Barclays has met with the Committee and produced documents to it concerning each of the purported "discrepancies" listed in the chart at pages 5-6 of the Committee Joinder.

### A. Barclays Has Responded Fully To All Questions The Committee Has Raised Concerning The Sale Transaction.

7. On February 3, 2009, three senior executives of Barclays as well as Barclays' in-house and external counsel met with Committee counsel from Quinn Emanuel and the Committee's financial advisors from Houlihan Lokey. At that meeting, the Barclays executives attempted to answer all of the Committee's questions and explained the course of Barclays' negotiations with Lehman Brothers concerning the Sale Transaction.

8. The Barclays executives explained that different terms were discussed at different times and that, if parties investigating the transaction did not distinguish between what occurred at different times in the negotiations, there would be confusion. The Barclays executives explained that such confusion may lead certain parties to conclude erroneously that what was said about the terms of the transaction in an earlier phase was inaccurate or misleading when compared to terms ultimately agreed upon by the parties.

9. While the Committee still professes confusion concerning the transaction, there is no genuine basis for any confusion given the explanations provided in that meeting and given the information that is a matter of public record in this case and the LBI case. Even if there were any lingering confusion, these matters are fully known to LBHI and the LBI Trustee, as parties to the transaction. Accordingly, the Committee can obtain further clarification from LBHI and the

LBI Trustee. There is no basis for LBHI to take discovery concerning events in which LBHI was itself a central participant and no basis for the Committee to join in such a circular exercise.

### B. Barclays Produced Extensive Documentation Concerning Securities Which Were Considered For Transfer And Which Were Ultimately Transferred.

10. After meeting with the Committee, Barclays produced to the Committee material relating to the securities that Lehman had proposed transferring to Barclays during negotiations and concerning securities which Lehman actually did transfer to Barclays. Barclays' March 20, 2009 production to the Committee responded to the Committee's December 26, 2008 and February 10, 2009 requests for documents, which largely overlapped. The production included over 16,000 pages of material, including numerous schedules of securities, information concerning residential mortgage securities, the closing memorandum for the Sale Transaction, and appraisals of transferred real estate. On May 28, 2009, in response to a Creditors' Committee request, Barclays provided the electronic/EXCEL files for the spreadsheets in the March 20, 2009 production.

### C. The LBI Trustee Has Recently Made Further Disclosures Concerning the Fed Replacement Transaction.

11. The Committee should no longer have any legitimate questions concerning the Fed Replacement Transaction or the related settlement. In the LBI Trustee's May 29, 2009 Interim Report (Case No. 08-01420, Docket No. 1151), at paragraph 76, the Trustee again clearly described the circumstances of the Fed Replacement Transaction and the terms of the settlement. In view of Barclays' disclosures and the Trustee's disclosures, there should no longer be any genuine question about these events. And, even if there were any open questions, LBHI and the Committee should be required, at a minimum, to first confer with the LBI Trustee and his advisors at Deloitte concerning Deloitte's extensive analysis of these matters.

### D. The Committee Has Not Pursued Any Follow-up Inquiries.

12. In the period after the initial February meeting and the subsequent production of electronic documents, the Committee has not raised a single follow up question concerning the substance of the information that Barclays provided. The Committee has not asked to meet with anyone to address questions concerning the spreadsheets and other lists of securities that Barclays provided. It is not clear whether the Committee has raised any questions with the LBI Trustee, whose financial advisors at Deloitte apparently conducted extensive analysis and reconciliations before the Trustee agreed to the December 2008 settlement. It is also not clear whether the Committee has taken any steps to share its analysis with the Examiner or to coordinate in any way with the Examiner.

### E. There Is No Basis For The Committee's Request To Join The Motion.

13. In view of the extensive information already provided to the Committee and Barclays' willingness to continue addressing reasonable inquiries from the Committee if any are forthcoming, the Committee lacks a legitimate basis to join in the Motion. Much of the information the Committee claims not to have, but which Barclays clearly provided, is equally available from both LBHI and LBI. If the Committee has any genuine need for further information, it should be directed to address its inquiries to LBHI and LBI. The Committee made its submission apparently in an effort to bolster LBHI's unjustified attempt to reexamine and renegotiate the Sale Transaction. The Committee did so despite having made no genuine effort to follow up with Barclays directly concerning the questions the Committee claims to be unanswered. The Court should deny the Committee's joinder request.

6

## II. THERE IS NO BASIS FOR BNYM'S ASSERTION THAT THE EXAMINER IS NOT INVESTIGATING MATTERS ASSIGNED TO THE EXAMINER.

14. The BNYM Joinder asserts that the Examiner is not adequately addressing the issues that BNYM first raised in a Rule 2004 motion. Those issues were incorporated in the Order appointing the Examiner and assigned as a part of the Examiner's investigation. *See* Order Directing Appointment of An Examiner, at ¶ 2 (Case No. 08-13555, Docket No. 2569). There is no basis for BNYM's speculation that the Examiner is not fulfilling his mandate. There is no basis for BNYM's speculation that Barclays has not responded to the Creditors' Committee's information requests. And there is no basis for BNYM's assertion that Barclays is somehow misusing the examination process.

15. The BNYM Joinder illustrates precisely the concern about duplication of effort that this Court addressed in appointing an Examiner to conduct a comprehensive investigation. *See* Order Directing Appointment of An Examiner, at ¶¶ 11-12. According to BNYM, the Examiner's investigation should be replaced or supplemented by overlapping, duplicative, and piecemeal discovery by multiple parties — the Debtors, the Creditors' Committee, the LBI Trustee, BNYM, and any other creditor suspecting that the Examiner is not conducting an adequate investigation. This Court has already rejected this sort of backseat driving as wasteful and unnecessary. Both the BNYM Joinder and the Creditors' Committee Joinder repeat arguments that this Court considered fully and rejected in appointing an Examiner to conduct a single comprehensive investigation.

## III. WESTERNBANK'S CONCERNS ARE MORE PROPERLY DIRECTED TO THE LBI TRUSTEE.

16. The Westernbank Joinder is based on the possibility that certain securities Westernbank claims it had a right to purchase from LBI before LBI's liquidation may have been

among the securities transferred first to the Federal Reserve and then to Barclays in the Fed Replacement Transaction. Westernbank Joinder, at ¶ 3. Westernbank appears to be asserting that it has a claim against LBI and should, in the first instance, inquire of the LBI Trustee concerning the facts bearing on that claim. Similarly, Westernbank can best address any questions it has concerning purchase price allocation among the LBHI Estate and the LBI Estate with representatives of those Estates. LBHI and LBI are both parties to the purchase price allocation. It makes no sense for Westernbank to join in a motion by LBHI for discovery of Barclays when the information that Westernbank apparently seeks is available from LBHI itself and the LBI Trustee.

## CONCLUSION

For the foregoing reasons, the Court should deny the Debtors' Motion and should deny the requests made in the Committee Joinder, the BNYM Joinder, and the Westernbank Joinder.

Dated: June 23, 2009
       New York, New York

                          Respectfully submitted,

                          BOIES, SCHILLER & FLEXNER LLP

                          By: /s/ Hamish P.M. Hume
                          Jonathan D. Schiller
                          Hamish P.M. Hume
                          Jack G. Stern
                          575 Lexington Avenue
                          New York, NY 10022
                          Telephone: (212) 446-2300
                          Facsimile: (212) 446-2350

                          Attorneys for Barclays Capital Inc.