creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this agreement.

**Federal (Internal Revenue Code Section 6694) and State Preparer Standards.**

Federal law and certain state laws impose obligations on tax return preparers with respect to a position reported on a tax return or claim for refund that does not meet certain standards regarding levels of confidence. If during the course of this engagement we identify a position that does not meet these standards, we will advise you about your penalty exposure and whether you can avoid penalty through disclosure. If we are preparing the return or claim for refund and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you.

Our work may require consultation with a PricewaterhouseCoopers subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

**Other Matters**

By entering into this engagement letter, you are binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

* * * * *

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with Joseph Foy at (646) 471-8628 or Michelle Lee at (646) 471-1896. If the Services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

PricewaterhouseCoopers LLP

By: ___________________________

___________________________ Josephy Foy, Partner

**ACKNOWLEDGED AND AGREED:**

Jeff Ciongoli**, individually and on behalf of its subsidiaries and affiliates**

**Signature of client official:** ___________________________

**Please print name:** ___________________________

**Title:** ___________________________

**Date:** ___________________________

**Exhibit B**

March 23, 2009

Mr. Jeffry Ciongoli
Corporate Tax Department
Lehman Brothers Holdings Inc.
70 Hudson Street
Jersey City, NJ 07302-3988

**Re: Tax Recurring Services**

Dear Mr. Ciongoli:

This letter confirms that PricewaterhouseCoopers LLP ("we" or "us" or "our" or "PwC") is engaged to provide the services described below to Lehman Brothers Holdings Inc. ("LBHI" or "you" or "Client").

**Scope of Our Services**

PwC agrees to provide the following services ("Services"):

Tax Consultation Services in Connection with Federal Tax Controversy Matters
Certain PwC personnel with specialized and historic knowledge regarding LBHI and its subsidiaries' tax matters will provide assistance to LBHI and its Special Tax Counsel, McKee Nelson, LLP regarding tax controversy matters. These tax controversy matters as described in more detail in McKee Nelson's application for retention include the tax years 1997 through 2007 and deal with both with the Internal Revenue Service administrative level as well as litigation matters, to the extent its necessary.

Consultation with regards to Accounting for Income Taxes
Certain PwC personnel with specialized and historic knowledge regarding the LBHI and its subsidiaries' tax matters will provide assistance to LBHI with regards to the accounting for income taxes including, but not limited to interpretation and documentation of the tax accounting policies between the LBHI and its subsidiaries, assistance with documentation with regards to financial statement preparation as it related to income taxes for the LBHI and its subsidiaries.

Consultation Services in Connection with Preparation of Tax Return Filings
Certain PwC personnel with specialized and historic knowledge regarding LBHI and its subsidiaries' tax matters will provide assistance to LBHI with regards to the preparation of 2008 federal, state & local, and international income tax return preparation including, but not limited to the impact of all tax matters associated with tax controversy process on current and future tax return filing, determination, documentation of book/tax differences (deferred compensation, stock options, capital markets adjustments, etc), assistance with

the process surrounding the preparation of tax filing for international operations on US tax returns filings (i.e., foreign tax credits, foreign source income, Subpart F income, etc.), and impact of tax attributes and limitation on tax attributes on tax return filings.

Any Services covered by a separate agreement will be governed by the terms and conditions set forth thereunder.

Furthermore, LBHI agrees that it will not request PwC to perform any services under this engagement agreement that would duplicate any services provided or to be provided by Ernst & Young LLP under the Order approving LBHI's employment of Ernst & Young LLP entered by the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no. 08-13555-jmp, on January 15, 2009.

**Other PricewaterhouseCoopers Firms and Subcontractors**

We may subcontract portions of the Services to non-U.S. members of the PricewaterhouseCoopers international network of firms, and you authorize us to provide information we receive in connection with this engagement to such other member firms located outside the United States for the purpose of providing the Services and for related administration and regulatory compliance purposes. We will be responsible for those subcontracted Services being performed in accordance with all of the requirements of this letter. Each member of the PricewaterhouseCoopers international network of firms is a separate and independent legal entity and you agree to bring any proceeding arising from the Services against us and not other member firms.

We may engage (a) subcontractor(s), other than non-U.S. members of the PricewaterhouseCoopers international network of firms, to perform services in connection with this engagement. You agree that we may subcontract any of the Services hereunder provided that we shall be responsible for the fulfillment of our obligations under this agreement. You acknowledge that we may disclose your information to our subcontractor involved in the provision of the Services, including any subcontractor located outside of the United States.

**Ownership and Use**

We are providing these Services solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material delivered to you under this engagement letter, except as follows: PwC will own its working papers and preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which may have been discovered or created by PwC as a result of its provision of the Services. You will have a nonexclusive, non-

transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us. Any spreadsheets or software tools that PwC provides to Client are for Client's convenience and are provided as is. PwC will not be responsible for results obtained by anyone other than PwC from the use of those items.

**Your Responsibilities**

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.

If you wish to restrict the authorization to request services from us to certain members of your team, you will notify us of such restriction at your earliest convenience.

**Fees and Expenses**

Our fee is based on the time required by our professionals to complete the engagement. Individual hourly rates vary according to the experience and skill required. Hourly rates may be revised from time to time, and the adjusted rates will be reflected in billings.

Our current hourly rates are as follows:

| Professional Staff Class | General Tax Consulting Rate | National Office/Other |
|---|---|---|
| Partner | 704 | 560 - 890 |
| Managing Director | 583 | 450 - 700 |
| Director | 501 | 330 - 600 |
| Manager | 402 | |
| Senior Associate | 319 | |
| Associate | 231 | |
| Administrative/Other | 143 | |

We also will bill Client for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel.

The amount of our fee is based on the assumption that we will receive the information and assistance as detailed throughout this agreement. In the event we believe an additional fee is required as the result of the failure of Client to meet any of these requests or for any other reason, we will inform you promptly.

This agreement and the payment of any fees or expenses under this agreement are subject to the approval of the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no 08-13555-JMP.

**Payment Schedule**

Our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due on presentation and expected to be received within 30 days of the invoice date.

We reserve the right to charge interest on any past due balances at a rate of 1% per month or part thereof.

**Termination and Dispute Resolution**

This agreement has a term of two years. Either party may terminate this agreement or the Services by giving notice to that effect. Any dispute relating in any way to the Services or this letter shall be resolved by arbitration, except that either party shall be free to seek equitable relief in court. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect. The arbitration will be conducted before a panel of three arbitrators. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and in any event no later than two years after any such cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Limitations on Liability**

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our liability to pay damages for any losses incurred by you as a

result of breach of contract, negligence or other tort committed by us, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular service provided under this engagement letter. In addition, we will not be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

**Indemnification**

You agree to indemnify and hold us and other PricewaterhouseCoopers firms engaged as subcontractors hereunder, and our respective partners, principals and employees harmless from and against any and all third party claims resulting from any of the Services or Deliverables under this agreement, except to the extent determined to have resulted from our gross negligence or other intentional misconduct relating to such Services and/or Deliverables.

**Regulatory Matters**

Notwithstanding anything to the contrary in this agreement, you have no obligation of confidentiality with respect to any materials, advice or portions of Deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Other Written Advice**

Based on our discussions, it is anticipated that the written advice PricewaterhouseCoopers provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements**

Treasury Regulations Section 1.6011-4 requires that taxpayers disclose to the IRS their participation in certain reportable transactions. Additionally, certain states have adopted rules with purposes similar to Treasury Regulations under Internal Revenue Code Section 6011. You agree to advise us if you determine that any matter covered by this agreement is a reportable transaction that is required to be disclosed under Section 1.6011-4, or is a transaction requiring disclosure to a particular state under such state's particular statutes or regulations.

Similar rules under Internal Revenue Code Sections 6111 and 6112 require that we submit information returns and maintain lists of certain client engagements if we are material advisors to clients that have participated in a reportable transaction.

Additionally, certain states have adopted rules similar in scope to Internal Revenue Code Sections 6111 and 6112, thereby creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this agreement.

**Internal Revenue Code Section 6694 Preparer Standards**

Federal law imposes certain obligations on tax return preparers with respect to a position on a tax return or claim for refund that does not meet the "more likely than not" level of confidence. If during the course of this engagement we identify a position that does not meet the "more likely than not" standard, if required, we will advise you about your penalty exposure, if any, and whether you can avoid penalty through disclosure. If we are preparing the return and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you with the return.

Our work may require consultation with a PricewaterhouseCoopers subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

Several states also have standards regarding positions taken on returns and claims for refund. For instance, California has a standard similar to the federal standard that applies to certain California tax returns. We will discuss these issues with you as appropriate.

**Other Matters**

By entering into this engagement letter, you are binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

* * * * *

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with Joseph Foy at (646) 471-8628. If the Services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

PricewaterhouseCoopers LLP

By: ___________________________

Joseph Foy, Partner

**ACKNOWLEDGED AND AGREED:**

**Lehman Brothers Holdings Inc. on behalf of its subsidiaries and affiliates**

**Signature of client official:** ___________________________

**Please print name:** ___________________________

**Title:** ___________________________

**Date:** ___________________________

**Exhibit C**

March 23, 2009

Mr. Jeff Ciongoli
Lehman Brothers Holdings, Inc.
70 Hudson Street, 10th Floor
Jersey City, NJ 07302

Dear Mr. Cingoli:

This letter confirms that Lehman Brothers Holdings, Inc. and its affiliated debtors and debtors in possession ("LBHI", "you" or "Client") has engaged PricewaterhouseCoopers LLP ("we" or "us" or "our" or "PwC") to provide the services described below.

**Scope of Our Services**

You are engaging us to provide the following services (the "Services"):

PwC will assist LBHI in addressing all transfer pricing-related tax issues. Such services will include but shall not be limited to:

- Assisting with reconciliation of global allocation of trading profits or losses for formerly-related *(Question: are the affiliate entities still considered "related"?)* global LBHI entities. Business units formerly subject to such global allocations include:
    - Equity Derivatives
    - Fixed Income Derivatives
    - Structured Credit Transactions
    - Collateralized Debt Obligations
    - Foreign Exchange Options
    - Investment Banking
    - Private Equity
- Preparation of transfer pricing documentation for fiscal year 2008 in accordance with U.S. Internal Revenue Code Section 6662(e) for the LBHI business units with material intercompany transactions;.
- Assistance with any US federal and state income tax audits in connection with aforementioned intercompany pricing issues as subject to US Internal Revenue Code Section 482; and
- Assistance with negotiations amongst LBHI trustee and trustees of related LBHI entities operating in Europe and Asia relating to allocation of profits/losses from global trading operations.

Our work will leverage off of our extensive knowledge of LBHI's former global operations and transfer pricing policies, as a result of the detailed transfer pricing study performed by PwC in 2007-08; our work undertaken for the Advanced Pricing Agreement with the U.S., U.K., and Japan will serve as a basis for on-going work and deliverables.

LBHI also agrees that it will not request PwC to perform any services under this engagement agreement that would duplicate any services provided or to be provided by Ernst & Young LLP under the Order approving LBHI's employment of Ernst & Young LLP entered by the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no. 08-13555-jmp, on January 15, 2009.

**Other PricewaterhouseCoopers Firms and Subcontractors**

We may subcontract portions of the Services to non-U.S. members of the PricewaterhouseCoopers international network of firms, and you authorize us to provide information we receive in connection with this engagement, including your entire tax return information, to such other member firms located outside the United States for the purpose of providing the Services and for related administration and regulatory compliance purposes. We will be responsible for those subcontracted Services being performed in accordance with all of the requirements of this letter. Each member of the PricewaterhouseCoopers international network of firms is a separate and independent legal entity and you agree to bring any proceeding arising from the Services against us and not other member firms.

We may engage (a) subcontractor(s), other than non-U.S. members of the PricewaterhouseCoopers international network of firms, to perform services in connection with this engagement. You agree that we may subcontract any of the Services hereunder provided that we shall be responsible for the fulfillment of our obligations under this agreement. You acknowledge that we may disclose your information, including your entire tax return information, to our subcontractor involved in the provision of the Services, including any subcontractor located outside of the United States.

**Consent to Disclose Client Information**

Client authorizes PwC to participate in discussions with and to disclose your information, including your tax return information, to your agents and representatives acting on your behalf (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, (collectively, "Professional Advisors"), provided that: they have a need to know the information to assist or advise you in connection with the transaction or subject matter described in this letter (and not for the Professional Advisors' own benefit or any other purpose); you first advise such Professional Advisors that: (a) they do not acquire any benefits in or rights as a result of their access to, use of, or reliance on the Deliverables or Services; and (b) that PwC shall have no duty, liability or responsibility to such Professional Advisors in connection with the Deliverables and/or Services.

You have the ability to request a more limited disclosure than that authorized by this consent, as you may direct. This consent is valid for a period of three years following receipt of your information.

**Ownership and Use**

We are providing these Services solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material delivered to you under this engagement letter, except as follows: PwC will own its working papers and preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which may have been discovered or created by PwC as a result of its provision of the Services. You will have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us. Any spreadsheets or software tools that PwC provides to Client are for Client's convenience and are provided as is. PwC will not be responsible for results obtained by anyone other than PwC from the use of those items.

**Your Responsibilities**

To facilitate our work, you will need to provide the following assistance:

- Providing relevant company and financial information as requested;
- Participating in discussions with PwC regarding proposed approaches and methodologies;
- Reviewing all documents and submissions and providing comments.

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.

**Fees and Expenses**

We will bill you for our services based upon actual time spent on this engagement at our hourly rates for transfer pricing professionals, which are as follows:

| Position | Rate |
|---|---|
| Partner | $704 |
| Director | $501 |
| Manager | $402 |
| Senior Associate | $319 |
| Associate | $231 |

Please note that the hourly rates listed above are revised annually and therefore are subject to change.

We also will bill LBHI for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of running our travel department in a manner to maximize cost savings.

This agreement and the payment of any fees or expenses under this agreement are subject to the approval of the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no 08-13555-JMP.

**Payment Schedule**

Our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due on presentation and expected to be received within 30 days of the invoice date.

We reserve the right to charge interest on any past due balances at a rate of 1% per month or part thereof.

**Termination and Dispute Resolution**

Either party may terminate the Services by giving notice to that effect. Any dispute relating in any way to the Services or this letter shall be resolved by arbitration, except that either party shall be free to seek equitable relief in court. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in

effect. The arbitration will be conducted before a panel of three arbitrators. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and in any event no later than two years after any such cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Limitations on Liability**

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our liability to pay damages for any losses incurred by you as a result of breach of contract, negligence or other tort committed by us, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular service provided under this engagement letter. In addition, we will not be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

**Indemnification**

You agree to indemnify and hold us and other PricewaterhouseCoopers firms engaged as subcontractors hereunder, and our respective partners, principals and employees harmless from and against any and all third party claims resulting from any of the Services or Deliverables under this agreement, except to the extent determined to have resulted from our gross negligence or other intentional misconduct relating to such Services and/or Deliverables.

**Regulatory Matters**

Notwithstanding anything to the contrary in this agreement, you have no obligation of confidentiality with respect to any materials, advice or portions of Deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Other Written Advice.** Based on our discussions, it is anticipated that the written advice PricewaterhouseCoopers provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements.** Treasury Regulations Section 1.6011-4 requires that taxpayers disclose to the IRS their participation in certain reportable transactions. Additionally, certain states have adopted rules with purposes similar to Treasury Regulations under Internal Revenue Code Section 6011. You agree to advise us if you determine that any matter covered by this agreement is a reportable transaction that is required to be disclosed under Section 1.6011-4, or is a transaction requiring disclosure to a particular state under such state's particular statutes or regulations.

Similar rules under Internal Revenue Code Sections 6111 and 6112 require that we submit information returns and maintain lists of certain client engagements if we are material advisors to

clients that have participated in a reportable transaction. Additionally, certain states have adopted rules similar in scope to Internal Revenue Code Sections 6111 and 6112, thereby creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this agreement.

**Federal (Internal Revenue Code Section 6694) and State Preparer Standards.**

Federal law and certain state laws impose obligations on tax return preparers with respect to a position reported on a tax return or claim for refund that does not meet certain standards regarding levels of confidence. If during the course of this engagement we identify a position that does not meet these standards, we will advise you about your penalty exposure and whether you can avoid penalty through disclosure. If we are preparing the return or claim for refund and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you.

Our work may require consultation with a PricewaterhouseCoopers subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

**Other Matters**

By entering into this engagement letter, you are binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

* * * * *

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with Adam Katz at (646) 471-3215 or Frank Douglass at (646) 471-2730. If the Services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

PricewaterhouseCoopers LLP

By: ___________________________

___________________________ Adam M. Katz, Partner

**ACKNOWLEDGED AND AGREED:**

Jeff Ciongoli**, individually and on behalf of its subsidiaries and affiliates**

**Signature of client official:** ___________________________

**Please print name:** ___________________________

**Title:** ___________________________

**Date:** ___________________________

**Exhibit D**

February 9, 2009

Mr. Jeffry Ciongoli
Corporate Tax Department
Lehman Brothers Holdings Inc.
70 Hudson Street
Jersey City, NJ 07302-3988

**Re: Tax Recurring Services**

Dear Mr. Ciongoli:

This letter confirms that PricewaterhouseCoopers LLP ("we" or "us" or "our" or "PwC") is engaged to provide the services described below to Lehman Brothers Holdings Inc. ("LBHI" or "you" or "Client").

**Scope of Our Services**

PwC agrees to provide the following services ("Services"):

- Income/Franchise Taxes
  - Nexus study – analysis, determination, and documentation of all jurisdictions where the Client is filing income or franchise tax returns, and all jurisdictions where the Client is doing business;
  - Allocation and Apportionment Study – analysis, review, and documentation of how the Client sources its receipts in all state and local tax jurisdictions, and the implementation of any change in methodology of how the Client sources its receipts;
  - Income and franchise tax controversy and audit defense, including the research, analysis, and preparation of correspondence in support of the Client's positions;
  - Assistance with income and franchise taxes as they apply to banks and insurance companies;
  - Assistance with the performance of a unitary study, and the application of those documented findings to assist the client in analyzing, and choosing, the most beneficial method of filing its income and franchise tax returns (i.e., separate, combined, consolidated, etc.) in all applicable state and local jurisdictions;
  - Voluntary disclosure agreements in all jurisdictions we identify, as a result of any of our work covered in this Scope of Services;
- Sales/Use Taxes
  - Nexus study – analysis and determination of where the Client is doing business and where it should be filing sales or use tax returns;

  - Sale and use tax matrix to assist the Client in its tax decision process relating to, but not limited to, its fixed asset and expense purchases;
  - Sales and use controversy and audit defense, including the research, analysis, and preparation of correspondence in support of the Client's positions;
  - Tax planning and structuring assistance for all business transactions as it relates to sales and use taxes;
  - Voluntary disclosure agreements in all jurisdictions we identify, as a result of any of our work covered in this Scope of Services;
  - Reverse sales and use tax audit to determine if client underpaid or overpaid any sales or use taxes to any state or local jurisdictions;
  - Providing assistance to the Client with the completion and/or review of the Client's sales and use tax returns;
- <u>Excise Taxes</u>
  - Providing assistance to the Client relating to the research, analysis, calculation, and documentation of state and local excise or transactional taxes, including but not limited to (as applicable) the real estate transfer taxes, mortgage recording taxes, and utility taxes;
- <u>Abandoned and Unclaimed Property ("AUP")</u>
  - AUP Review – providing the Client with assistance to identify its exposures and liabilities relating to its abandoned and unclaimed property, including research, analysis, and any kind of written correspondence necessary;
  - Preparation of the AUP reports for all applicable jurisdictions for all applicable years;
  - AUP controversy and audit defense, including the research, analysis, and preparation of correspondence in support of the Client's positions;
- <u>Credits and Incentives</u>
  - Multistate Tax Credit Review ("MTC Review") – identify, quantify, and obtain the credits, both tax (federal, state, and local) and non-tax (federal, state, and local), available to the Client;
  - Credit and incentives controversy and audit defense, including the research, analysis, and preparation of correspondence in support of the Client's positions;
- <u>Employment Taxes</u>
  - Employment Tax Recovery Review – review of an employer's past transactions, such as mergers and reorganizations, to identify overpaid employment taxes and to determine if any refunds are available;
  - Employment Tax Process Review – implementation of best practices and improved policies and procedures, as they relate to the process of determining and reporting employment tax liabilities for both employers and employees;
  - Employment controversy and audit defense for federal, state, and local jurisdictions;
  - Employment Tax Reorganization Services – assists employers with all federal, state, and local employment tax laws relating to reorganizations

(mergers, acquisitions, conversions, etc.) to determine the proper and most beneficial treatment of its employment issues.

Any Services covered by a separate agreement will be governed by the terms and conditions set forth thereunder.

Furthermore, LBHI agrees that it will not request PwC to perform any services under this engagement agreement that would duplicate any services provided or to be provided by Ernst & Young LLP under the Order approving LBHI's employment of Ernst & Young LLP entered by the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no. 08-13555-jmp, on January 15, 2009.

**Other PricewaterhouseCoopers Firms and Subcontractors**

We may subcontract portions of the Services to non-U.S. members of the PricewaterhouseCoopers international network of firms, and you authorize us to provide information we receive in connection with this engagement to such other member firms located outside the United States for the purpose of providing the Services and for related administration and regulatory compliance purposes. We will be responsible for those subcontracted Services being performed in accordance with all of the requirements of this letter. Each member of the PricewaterhouseCoopers international network of firms is a separate and independent legal entity and you agree to bring any proceeding arising from the Services against us and not other member firms.

We may engage (a) subcontractor(s), other than non-U.S. members of the PricewaterhouseCoopers international network of firms, to perform services in connection with this engagement. You agree that we may subcontract any of the Services hereunder provided that we shall be responsible for the fulfillment of our obligations under this agreement. You acknowledge that we may disclose your information to our subcontractor involved in the provision of the Services, including any subcontractor located outside of the United States.

**Ownership and Use**

We are providing these Services solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material delivered to you under this engagement letter, except as follows: PwC will own its working papers and preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which may have been discovered or created by PwC as a result of its provision of the Services. You will have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us. Any spreadsheets or software tools that PwC provides to Client are for Client's convenience and are provided as is. PwC will not be responsible for results obtained by anyone other than PwC from the use of those items.

**Your Responsibilities**

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.

If you wish to restrict the authorization to request services from us to certain members of your team, you will notify us of such restriction at your earliest convenience.

**Fees and Expenses**

Our fee is based on the time required by our professionals to complete the engagement. Individual hourly rates vary according to the experience and skill required. Hourly rates may be revised from time to time, and the adjusted rates will be reflected in billings.

Our current hourly rates are as follows:

| Professional Staff Class | General Tax Consulting Rate | National Office/Other |
|---|---|---|
| Partner | 704 | 560 - 890 |
| Managing Director | 583 | 450 - 700 |
| Director | 501 | 330 - 600 |
| Manager | 402 | |
| Senior Associate | 319 | |
| Associate | 231 | |
| Administrative/Other | 143 | |

We also will bill Client for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel.

The amount of our fee is based on the assumption that we will receive the information and assistance as detailed throughout this agreement. In the event we believe an additional fee is required as the result of the failure of Client to meet any of these requests or for any other reason, we will inform you promptly.

This agreement and the payment of any fees or expenses under this agreement are subject to the approval of the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no 08-13555-JMP.

**Payment Schedule**

Our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due on presentation and expected to be received within 30 days of the invoice date.

We reserve the right to charge interest on any past due balances at a rate of 1% per month or part thereof.

**Termination and Dispute Resolution**

This agreement has a term of two years. Either party may terminate this agreement or the Services by giving notice to that effect. Any dispute relating in any way to the Services or this letter shall be resolved by arbitration, except that either party shall be free to seek equitable relief in court. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect. The arbitration will be conducted before a panel of three arbitrators. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and in any event no later than two years after any such cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Limitations on Liability**

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our liability to pay damages for any losses incurred by you as a result of breach of contract, negligence or other tort committed by us, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular service provided under this engagement letter. In addition, we will

not be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

**Indemnification**

You agree to indemnify and hold us and other PricewaterhouseCoopers firms engaged as subcontractors hereunder, and our respective partners, principals and employees harmless from and against any and all third party claims resulting from any of the Services or Deliverables under this agreement, except to the extent determined to have resulted from our gross negligence or other intentional misconduct relating to such Services and/or Deliverables.

**Regulatory Matters**

Notwithstanding anything to the contrary in this agreement, you have no obligation of confidentiality with respect to any materials, advice or portions of Deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Other Written Advice**

Based on our discussions, it is anticipated that the written advice PricewaterhouseCoopers provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements**

Treasury Regulations Section 1.6011-4 requires that taxpayers disclose to the IRS their participation in certain reportable transactions. Additionally, certain states have adopted rules with purposes similar to Treasury Regulations under Internal Revenue Code Section 6011. You agree to advise us if you determine that any matter covered by this agreement is a reportable transaction that is required to be disclosed under Section 1.6011-4, or is a transaction requiring disclosure to a particular state under such state's particular statutes or regulations.

Similar rules under Internal Revenue Code Sections 6111 and 6112 require that we submit information returns and maintain lists of certain client engagements if we are material advisors to clients that have participated in a reportable transaction. Additionally, certain states have adopted rules similar in scope to Internal Revenue Code Sections 6111 and 6112, thereby creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that

you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this agreement.

**Internal Revenue Code Section 6694 Preparer Standards**

Federal law imposes certain obligations on tax return preparers with respect to a position on a tax return or claim for refund that does not meet the "more likely than not" level of confidence. If during the course of this engagement we identify a position that does not meet the "more likely than not" standard, if required, we will advise you about your penalty exposure, if any, and whether you can avoid penalty through disclosure. If we are preparing the return and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you with the return.

Our work may require consultation with a PricewaterhouseCoopers subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

Several states also have standards regarding positions taken on returns and claims for refund. For instance, California has a standard similar to the federal standard that applies to certain California tax returns. We will discuss these issues with you as appropriate.

**Other Matters**

By entering into this engagement letter, you are binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

* * * * *

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with Joseph Foy at (646) 471-8628. If the Services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

PricewaterhouseCoopers LLP

By: ____________________________

Joseph Foy, Partner

**ACKNOWLEDGED AND AGREED:**

**Lehman Brothers Holdings Inc. on behalf of its subsidiaries and affiliates**

**Signature of client official:** ____________________________

**Please print name:** ____________________________

**Title:** ____________________________

**Date:** ____________________________

**Exhibit E**



PricewaterhouseCoopers LLP
300 Atlantic Street
Stamford, CT 06901
Telephone (203) 539 3000
Facsimile (813) 207 3999

March 23, 2009

Private & Confidential

Mr. Jeff Ciongoli
Lehman Brothers Holdings, Inc.
70 Hudson Street, 10th Floor
Jersey City, NJ 07302

Dear Jeff,

**International Assignment Services Engagement Letter**

This letter confirms that **PricewaterhouseCoopers LLP**, a Delaware Limited Liability partnership ("we" or "us" or "PwC") is pleased to be engaged to provide the services described below to **Lehman Brothers Holdings, Inc.** ("you", "your" or "Client").

**Scope of Our Services and Fees**

PwC will provide international assignment tax services to you and certain employees designated by you to receive such services ("Authorized Employees"). Our services will generally include US and foreign income tax return preparation, related tax compliance services, and tax consulting services (collectively the "Services").

Exhibit I summarizes the unit fees for tax return preparation and related services and our hourly billing rates for other services you may request from us. The Services to be performed and the related fees are agreed to in advance between Client and PwC.

LBHI also agrees that it will not request PwC to perform any services under this engagement agreement that would duplicate any services provided or to be provided by Ernst & Young LLP under the Order approving LBHI's employment of Ernst & Young LLP entered by the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no. 08-13555-jmp, on January 15, 2009.

This agreement and the payment of any fees or expenses under this agreement are subject to the approval of the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case of In re Lehman Brothers Holdings Inc., case no 08-13555-JMP.

**Our Responsibilities**

We will prepare and sign as preparer the US Federal, state and local individual income tax returns for the Authorized Employees. If required, we will also prepare foreign income tax returns, which may or may not require PwC to sign the returns as a preparer under foreign law.

We may also prepare other tax documents or calculations, including hypothetical tax calculations, tax equalization settlement calculations, and any other tax returns or documents described in Exhibit I,

Scope of Services and Fees, for each Authorized Employee of Client. We will also provide from time-to-time certain tax consulting services as may be requested by authorized Client personnel.

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants and similar standards established by foreign accounting professional organizations. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us. Any spreadsheets or software tools that PwC provides to Client are for Client's convenience and are provided as is. PwC will not be responsible for results obtained by anyone other than PwC from the use of those items.

We will perform our Services on the basis of the information you and the Authorized Employee have provided based on the applicable federal, foreign, state, or local tax laws, regulations, and associated interpretations relative to the appropriate jurisdiction as of the date the Services are provided.

**Your Responsibilities**

To facilitate our work, you will need to provide the following assistance:

Client is responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain internal controls.

You will designate a competent member of your management to oversee and direct our Services under this agreement, including identifying the purpose of the Services, identify for whom the Services are to be performed (e.g., the corporation, Authorized Employees, a director), the due date for our services, approval of estimated fees, prompt authorization of the payment of our invoices in accordance with the terms of our agreement, and the provision of certain payroll and compensation information, as discussed below.

Under the payroll reporting rules of the US and foreign countries, employers are generally required by law to prepare annual wage and withholding tax summaries of compensation paid or received by their employees (e.g., US Federal or State Forms W-2s, Wage and Tax Statement). A fundamental term of the engagement is that Client will provide us with accurate compensation information within a reasonable time period (generally 30 days) following the end of the Tax Year for each Authorized Employee, including the IRS Form W-2, the foreign equivalent of Form W-2 and a detailed breakdown of all elements of compensation and deduction of amounts reported on the annual Wage and Tax Statements. Client agrees to immediately inform us of any pending corrections to the year-end compensation information and to timely provide us with corrected Wage and Tax Statement and detailed breakdown of compensation.

We will prepare the Authorized Employees' US and foreign tax returns based on the US and Foreign equivalent of IRS Form W-2 and the detailed compensation information as submitted by Client to the tax authorities and provided to the Authorized Employees. We will not be responsible for verifying, analyzing, auditing, collating or reconciling the compensation information provided by Client. If Client and PwC agree that a complete and accurate tax return can not be prepared based on the

compensation information provided, Client and PwC may agree on the additional scope of services and fees required to provide corrected compensation information.

Where you require PwC to provide information directly to, or perform services directly for, a third party or subcontractor specified by you, you will accept responsibility for the work to be performed by such subcontractor. This information may include data provided by you, or your Authorized Employees (e.g., Form W-2 or other compensation data) or information prepared by PwC (e.g., tax equalization calculations or tax returns). PwC will not be responsible or liable to you or to any other person for the work performed by, or for any act, omission, default, or neglect of, such subcontractor. In the above circumstances, you will be responsible and liable for, and will indemnify PwC against, and from, any liability which we may incur to any person and against all claims, demands, proceedings, damages, losses, costs and expenses made against, suffered or incurred by us, directly or indirectly as a result of or in connection with the work performed by any such subcontractor or unauthorized disclosure of any Authorized Employee private or confidential information by any such subcontractor.

Client agrees that PwC shall not be liable for failure to perform its obligations under this Agreement to the extent that such failure is caused by the failure of Client or its Authorized Employees to provide PwC with information in accordance with this Agreement. This includes providing necessary consents to use of such information or other terms (including agreement to the Assignee.com website terms and conditions) as reasonably requested by PwC. Client agrees to ensure that all information provided by it or on its behalf or by its Authorized Employees is provided in accordance with applicable law and represents and undertakes that PwC and other PwC Firms and subcontractors shall be entitled to use such information to perform PwC's obligations under this Agreement.

**Responsibilities of Authorized Employees**

Except as described below with respect to electronic filling, Client acknowledges that the completion of certain tax compliance activities (e.g., signing of completed tax returns and submission to the tax authorities) are the responsibility of the Authorized Employees and may not be performed by PwC. We are not responsible for ensuring the submission of the income tax returns to the tax authorities, unless they are being filed electronically as described below.

The Internal Revenue Service and some states offer or require electronic filing for certain tax returns. As part of the services covered by under this agreement, where feasible PwC may act as the Electronic Return Originator (ERO) with respect to the returns indicated herein. An Authorized Employee's designation of PwC as the ERO allows the taxing authorities to disclose to us the following: (1) any acknowledgement that return(s) have been accepted; (2) the reason(s) for any delay in processing a return or refund; and (3) information regarding any refund offset. If a particular return is ineligible or unable to be processed electronically after making reasonable efforts to do so pursuant to the procedures established by the appropriate tax authority, PwC will provide Authorized Employees with a paper return that must be filed in accordance with the terms noted in this agreement.

Client acknowledges tax returns prepared by PwC generally require the signature of the Authorized employee and spouse, under the penalties of perjury, affirming that the tax returns and the accompanying schedules and statements are true, correct and complete to the best of each Authorized Employee's knowledge. Each Authorized Employee is responsible for understanding and agreeing

with the various amounts, computations and statements made in the tax returns before they are filed with the taxing authorities.

Client acknowledges that PwC will advise Authorized Employees that our understanding is that Authorized Employees will file tax returns as prepared by PwC unless the Authorized Employee informs PwC otherwise.

Client acknowledges that PwC will advise Authorized Employees of their responsibility to maintain and retain adequate documentation to support the tax returns as filed as penalties can be imposed by taxing authorities for the failure to produce adequate documentation supporting items included in a tax return.

Client acknowledges that PwC will advise Authorized Employees the tax returns are only for filing with the appropriate tax authorities and may not be used for any other purpose without our written consent.

Client acknowledges that PwC advises the Authorized Employees that from time-to-time Authorized Employees or PwC may wish to use e-mail to communicate, request or furnish personal information related to the preparation of the tax return of the Authorized Employees. PwC will advise Authorized Employees that the electronic transmission of information, including attachments to e-mail and access to e-mail systems by PwC employees, cannot be guaranteed to be secure from third party interception, error free or free from viruses or other damaging computer code, and that such information could be intercepted, corrupted, infected, lost, destroyed, delayed or incomplete, or otherwise be adversely affected during transmission or harmful to the recipient's computer system. PwC shall regard an Authorized Employee's acceptance of this statement as including the Authorized Employee's consent to accept and use e-mail as a means of communication to provide tax return preparation services.

**Other PwC Firms**

We may subcontract portions of the Services to non-US members of the PwC international network of firms and certain other accountants, and you agree we may provide information we receive in connection with this engagement to such other member firms and certain other accountants for the purpose of providing the Services and for related administration and regulatory compliance purposes. PwC will be responsible for those subcontracted Services being performed in accordance with all of the requirements of this letter. Each member of the PwC international network of firms and certain other accountants are separate and independent legal entities and you agree to bring any proceeding arising from the Services against PwC and not other member firms or certain other accountants.

**Ownership and Use**

We are providing these Services solely for your and or your Authorized Employees use and benefit and pursuant to a client relationship exclusively with you and your Authorized Employees. We disclaim any contractual or other responsibility to others based upon these Services or upon any deliverables or advice we provide.

You and the Authorized Employees will own all tangible written material delivered to you and the Authorized Employees respectively under this engagement letter, except as follows: PwC will own its working papers and pre-existing materials and any general skills, know-how, processes, or other

intellectual property (including a non-client specific version of any deliverables) which may have been discovered or created by PwC as a result of its provision of the Services. You and the Authorized Employees will have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

**Privacy**

PwC is a member of the Department of Commerce Safe Harbor program, and the data transfer from Client to PwC is covered by the requirements of Safe Harbor. For reference, the details of our Safe Harbor certification can be found on the Department of Commerce website at www.export.gov/safeharbor.

**Termination and Dispute Resolution**

This agreement shall continue until either party terminates the Services by giving notice to that effect. Any dispute relating in any way to the Services or this letter shall be resolved by arbitration, except that either party shall be free to seek equitable relief in court. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect. The arbitration will be conducted before a panel of three arbitrators. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitation on Liability provisions below. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and in any event no later than two years after any such cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Limitations on Liability**

PwC's liability to pay damages for any losses incurred by you as a result of breach of contract, negligence or other tort committed by us, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular service provided under this agreement to which the claim relates. The foregoing liability limit shall not apply to claims where it has been determined that PwC was grossly negligent, or acted wilfully or fraudulently. In addition, we will not be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to any third-party hardware, software, information or materials selected or supplied by you.

**Indemnification**

You agree to indemnify and hold us, and other PwC firms and certain other accountants engaged as subcontractors hereunder, and our respective partners, principals, and employees, harmless from and against any and all third-party claims resulting from any of the Services and/or Deliverables under this agreement, except to the extent determined to have resulted from our gross negligence or other intentional misconduct relating to such Services and/or Deliverables.





**Regulatory Matters**

***Confidentiality:*** Notwithstanding anything to the contrary in this Agreement, you have no obligation of confidentiality with respect to any materials, advice or portions of Deliverables to the extent they concern the tax structure or tax treatment of any transaction.

***Other Written Advice.*** Based on our discussions, it is anticipated that the written advice PwC provides during the course of this engagement will be Other Written Advice as defined by IRS Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.

***Tax Return Disclosure and Tax Advisor Listing Requirements.*** Treasury Regulations Section 1.6011-4 requires that taxpayers disclose to the IRS their participation in certain reportable transactions. Additionally, certain states have adopted rules with purposes similar to Treasury Regulations under Internal Revenue Code Section 6011. You agree to advise us if you determine that any matter covered by this Agreement is a reportable transaction that is required to be disclosed under Section 1.6011-4, or is a transaction requiring disclosure to a particular state under such state's particular statutes or regulations.

Similar rules under Internal Revenue Code Sections 6111 and 6112 require that we submit information returns and maintain lists of certain client engagements if we are material advisors to clients that have participated in a reportable transaction. Additionally, certain states have adopted rules similar in scope to Internal Revenue Code Sections 6111 and 6112, thereby creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this Agreement.

***Public Company Accounting Oversight Board ("PCAOB") Rules:*** You have represented to us, and by signing this Agreement, confirm that no other advisor providing advice or assistance with respect to the subject matter of this Agreement has imposed any conditions of confidentiality, as defined by PCAOB Rule 3522. In addition, you agree that if, after we begin providing services covered by this Agreement any other advisor imposes conditions of confidentiality with respect to the matter that is subject to this Agreement, you will notify us immediately so that we can cease all work in order to avoid any impairment to independence under PCAOB Rule 3522. We are not permitted to provide tax services to persons who have a financial reporting oversight role for any PwC audit client that is either a registrant with the United States Securities and Exchange Commission or a material subsidiary/ reporting division or component of such a registrant. You have confirmed that your Authorized employees are not currently such persons, and that if their circumstances change during the term of our engagement such that they become such a person, or if you become aware of any cause to believe that they may be such a person, you will promptly advise us of the relevant facts so that we can cease all work for such a person in order to avoid any impairment of independence under PCAOB Rule 3523. You confirm that the requirements for audit committee pre-approval under PCAOB Rule 3526 have been complied with relating to this engagement.

PRICEWATERHOUSECOOPERS



***Internal Revenue Code Section 6694 Preparer Standards:*** Federal law imposes certain obligations on tax return preparers with respect to a position on a tax return or claim for refund that does not meet the "more likely than not" level of confidence. If during the course of this engagement we identify a position that does not meet the "more likely than not" standard, we will advise Authorized Employees about potential penalty exposure, if any, and whether the Authorized Employee could avoid penalty through disclosure. If we are preparing the return and it is concluded that disclosure is required, we will prepare the disclosure and provide it to the Authorized Employee with the return. Our work may require consultation with a PricewaterhouseCoopers subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

Several states also have standards regarding positions taken on returns and claims for refund. For instance, California has a standard similar to the federal standard that applies to certain California tax returns. We will discuss these issues with your Authorized Employees as appropriate.

**Other Matters**

Neither party may assign or transfer this engagement letter, or any rights, obligations or claims arising under it, without the prior written consent of the other party. By entering into this engagement letter, you are legally binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

PwC is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

PRICEWATERHOUSECOOPERS



* * *

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with Al Giardina at (203) 539-4051 or Julie Baron at (203) 539 - 4026. If the Services and terms outlined in this letter and the attached Scope of Services and Fees (Exhibit I) are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

PricewaterhouseCoopers LLP

By: ______________________________

______________________________
Alfred Giardina, Partner

**ACKNOWLEDGED AND AGREED:**

Lehman Brothers Holdings Inc. on behalf of its subsidiaries and affiliates

Signature of client official: ______________________________

Please print name: ______________________________

Title: ______________________________

Date: ______________________________





**Appendix I**

**International Assignment Services**
**Tax Compliance Services**
**Scope of Services and Fees**

| PwC US Fee Schedule | |
|---|---|
| **Service Description** | **Unit Fee (US$)** |
| Assignee Tax Briefing | 1,200 |
| US Federal Income Tax Return (Form 1040) | 2.500 |
| US State and Local Income Tax Return (as required) | 750 |
| Extension Requests (with calculation) | 950 |
| Report of Foreign Bank and Financial Accounts, Form 90-22.1 | 500 |
| Federal and State E-Filing Fee | 275 |
| Additional fee for Preparation of K-1 Disclosures | 1,500* |
| Additional fee for Preparation of Organizer (shoebox) | 750 |
| Application for Individual Tax Identification Number, Form W-7 | 300 |

* To be reviewed upon receipt of Lehman Brother's K-1s and adjusted if additional disclosures and informational returns are required.

Hourly Rates

| | Stamford |
|---|---|
| | US$ |
| Partner | $733 |
| Director | $650 |
| Senior Manager | $579 |
| Manager | $500 |
| Senior Associate | $361 |
| Associate | $228 |
| CSA | 175 |

## II. RELIANCE ON INFORMATION PROVIDED BY CLIENT AND EMPLOYEES

The performance of our Services and amount of our fees is based on the assumption that we will receive the information and assistance as detailed throughout this Agreement. We will prepare the Authorized Employees income tax returns based on the US and Foreign equivalent of IRS Form W-2 and the detailed compensation information as submitted by Client to the tax authorities and provided to the Authorized Employees. In accordance with our professional responsibilities and related regulatory requirements, we will rely in good faith on the information provided to us for purposes of preparing the

PRICEWATERHOUSECOOPERS



income tax returns covered by this agreement. While we will exercise our normal due diligence and make reasonable inquiries where warranted, PwC is not responsible for verifying, analyzing, auditing, collating or reconciling the compensation information provided by client or other data provided by the employees. If PwC believes that a complete and accurate tax return can not be prepared based on the compensation and other information provided to us, Client and PwC may agree on the additional services and fees required to determine the correct compensation information.

## III. EXCLUDED SERVICES

The following services, tax returns, and information returns will not be prepared by PwC without specific authorization in writing designating the service and the employee for whom the services are to be performed. The following list is illustrative and not all inclusive:

i. Individual income tax planning advice for any employee,
ii. Information Reporting Filings, etc.
iii. City, State and Country Gross Receipts Filings,
iv. Wealth or Asset-based Tax Returns,
v. Homestead Tax Filings,
vi. Gift, Estate, Inheritance, or Trust Tax or Information Returns,
vii. Payroll Tax Filings,
viii. Sales, Use, or VAT Filings, and
ix. Information Reporting Filings, etc.

## IV. EXPENSES

We also will bill for our reasonable out-of-pocket expenses and in the case where travel is required and authorized by you, our internal per-ticket travel charge for booking travel. Our internal per-ticket travel charge is an allocation of estimated costs of running our travel department in an effort to maximize cost savings.

## V. BILLING PROCEDURES

Our standard practice is to invoice for our services on a monthly basis.

We reserve the right to charge interest on any past due balances at a rate of 1% per month or part thereof.