Hearing Date and Time: July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                                    :
**In re**                                           :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**          :        **08-13555 (JMP)**
                                                    :
                                    **Debtors.**    :        **(Jointly Administered)**
                                                    :
---------------------------------------------------------------------x

**NOTICE OF DEBTOR'S MOTION PURSUANT TO SECTIONS 105(A) AND**
**363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004, FOR**
**AUTHORIZATION TO ENTER INTO A CONFIRMATION LETTER WITH**
**HSH NORDBANK AG, NEW YORK BRANCH, AS COLLATERAL AGENT**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI," together with its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession, the "Debtors" and, collectively with their

non-debtor affiliates, "Lehman") for authorization, but not direction, to enter into a confirmation

letter with HSH Nordbank AG, New York Branch, as administrative agent and collateral agent

("HSHN"), and authorization, but not direction, to consummate the underlying LBHI-SkyPower

Transaction (as defined in the Motion) on the terms contemplated therein, pursuant to sections

105(a) and 363(b) under chapter 11 of title 11 of the United States Code, all as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and

Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee

for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New

York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian

Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley

& McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F.

Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official

Committee of Unsecured Creditors appointed in these cases; and (v) Mayer Brown LLP, 700

Louisiana Street, Suite 3400, Houston, TX 77002-2730, Attn:  Robert S. Goldberg, Esq.,

attorneys for HSHN; and (vi) any person or entity with a particularized interest in the Motion, so

as to be so filed and received by no later than **July 10, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 24, 2009
     Houston, Texas

/s/ Alfredo R. Perez
Alfredo R. Perez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5040
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                        :
**In re**                                               :    **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :    **08-13555 (JMP)**
                                                        :
                                 **Debtors.**           :    **(Jointly Administered)**
                                                        :
-------------------------------------------------------------------x

**DEBTOR'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004, FOR
AUTHORIZATION TO ENTER INTO A CONFIRMATION LETTER WITH
HSH NORDBANK AG, NEW YORK BRANCH, AS COLLATERAL AGENT**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI", together with its affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), files this motion and respectfully

represents:

**Background**

1.    Commencing on September 15, 2008 and periodically thereafter, LBHI

and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have

been consolidated for procedural purposes only and are being jointly administered pursuant to

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

## Jurisdiction

3.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

4.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

5.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## SkyPower Corp.

SkyPower Corp.'s Value

6.      SkyPower Corp., a Canadian corporation, is a non-debtor, indirect

subsidiary of LBHI, in which LBHI holds approximately an eighty percent interest

("SkyPower").  LBHI believes that SkyPower is a valuable asset of its estate, and, over time, its value can be derived for the benefit of creditors.  SkyPower is a leading developer of renewable energy projects in Canada and has interests in over 200 projects at various stages of development, representing over 11,000 MW of potential nameplate capacity.  SkyPower spearheads all phases of project development including construction and operation (the "Projects")

The Credit Agreement

7.        Beginning in 2007, SkyPower acquired 134 units of GE 1.5 MW XLE wind turbines (the "Turbines").  The Turbines were planned to be used in connection with SkyPower's Projects.  To finance the acquisition of the Turbines, SkyPower originally entered into a certain credit agreement, which has since been amended and/or otherwise modified from time to time and is now the Third Amended and Restated Credit Agreement, dated as of February 22, 2008 (the "Credit Agreement"), by and among SkyPower, as borrower, the financial institutions from time to time party thereto as lenders (collectively, the "Lenders") and HSH Nordbank AG, New York Branch  ("HSHN"), as administrative agent and collateral agent, pursuant to which the Lenders have extended certain loans (the "Loans") to SkyPower.  Pursuant to the Credit Agreement, the Lenders received a first lien on the Turbines and certain other assets of SkyPower's  Canadian wind energy development business (together, the "Liens").  Additionally, in connection with the Credit Agreement, LBHI entered into an Amended and Restated Equity Contribution Agreement, dated as of February 22, 2008, among SkyPower, LBHI, and HSHN (the "Equity Contribution Agreement"), pursuant to which LBHI agreed to make certain capital contributions to SkyPower upon the occurrence of specifically identified

events relating to the Turbines, including payments due under the Credit Agreement in the event
of a default thereunder.

8.    As a consequence of the commencement of LBHI's chapter 11 case,
SkyPower is in a financially difficult position.  LBHI's chapter 11 case (1) triggered a default
under the Credit Agreement and (2) deprived SkyPower of a source of development financing.
Because of the lack of financing, SkyPower has been unable to meet its obligations under the
Credit Agreement and has entered into a series of forbearance agreements with the Lenders to
avoid adverse consequences to its business including the possibility of foreclosure on its assets.
Currently in effect is the Third Amended and Restated Forbearance and Standstill Agreement,
dated as of May 22, 2009, by and among SkyPower and the Lenders (the "Forbearance
Agreement").  To provide SkyPower with the necessary liquidity, it began a process for seeking
out a strategic transaction which would enable SkyPower to acquire a new financially viable
sponsor and a means of paying off the Credit Agreement.  However, as result of SkyPower's
current financial situation, potential buyers' perceptions of the current valuation of the Turbines
is depressed, thereby causing the Turbines to artificially drop in value.  In addition, because of
the lack of alternative financing sources available as a result of today's credit crisis, the pool of
potential buyers currently in a position to acquire the Turbines is extremely limited.

9.    In addition to other events of default that have occurred under the Credit
Agreement, including LBHI's commencement of its chapter 11 case, SkyPower defaulted on the
repayment of its Loans upon the maturity date specified in the Credit Agreement.  To avoid such
adverse consequences of SkyPower's current inability to satisfy the Credit Agreement
obligations, LBHI has extended credit to SkyPower in accordance with the Cash Management

Order[1] (the "Intercompany Funding").  In connection with the Intercompany Funding, LBHI

obtained a note secured by a lien on SkyPower's property that is not subject to the Liens in favor

of the Lenders.  As required under the Cash Management Order, LBHI informed the Creditors'

Committee of the Intercompany Funding.  The Creditors' Committee advised LBHI that it had

no objection and consented to the funding.  Ultimately, if the Forbearance Agreement ceases to

be in effect, the Lenders could be in a position to foreclose on the Turbines and the other assets

of SkyPower's wind energy development business and the value of LBHI's equity will be lost.

The XLE Sale

      10.    To optimize SkyPower's business and preserve its investments, SkyPower

is currently negotiating the sale of 100 of the Turbines (the "XLE Sale") to a third party

purchaser (the "Purchaser").  The XLE Sale will produce significant proceeds (approximately

$135 million) that will be applied to payoff a significant portion of the existing credit facility

thereby relieving the pressure imposed on SkyPower's business as a result of its current liquidity

crisis.  A condition to LBHI's obligations under the Confirmation Letter (defined below) is that

the Lenders shall have agreed to provide a turbine supply loan to the Purchaser for purposes of

financing such person's acquisition in the XLE Sale, if such financing is required (the

"Financing").  As a condition to their consent to the XLE Sale and potential agreement to

provide the Financing, however, the Lenders also are requesting that LBHI enter into the

Confirmation Letter (defined below) and consummate the underlying LBHI-SkyPower

Transaction (defined below) on the terms contemplated therein.  Upon the closing of the XLE

---

[1] On November 6, 2008, the Court authorized the Debtors to continue to use Lehman's existing cash management system (the "Cash Management Order") [Docket No. 1416].  The Cash Management Order allows the Debtors to transfer cash to non-Debtor subsidiaries without seeking court approval provided (i) that the Debtors exercise commercially reasonable efforts to obtain a note accruing at a market rate of interest and a valid perfected lien in exchange for the transfer of cash; and (ii) if the amount transferred is in excess of $25 million, the Creditors' Committee consents.

Sale, the consummation of the LBHI-SkyPower Transaction, and the satisfaction of all

outstanding amounts payable to the Lenders under the Credit Agreement and related documents,

the Lenders will release their Liens.

## Relief Requested

11.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, LBHI

requests entry of an order authorizing, but not directing, LBHI to enter into a confirmation letter

(the "Confirmation Letter") with HSHN, substantially in the form annexed hereto as Exhibit A,

and authorization, but not direction, to consummate the underlying LBHI-SkyPower Transaction

(defined below) on the terms contemplated therein.

12.     Given the exigency of the circumstances and to avoid irreparable harm,

LBHI requests that the Court waive the requirements of Bankruptcy Rule 6004(h)[2] and direct

that the order granting the relief requested herein be effective immediately.  As set forth more

fully below, LBHI's decision to enter into the Confirmation Letter and consummate the LBHI-

SkyPower Transaction represents a reasonable exercise of its business judgment and will bring

substantial benefit to its estate and creditors.  Accordingly, the Confirmation Letter and the

LBHI-SkyPower Transaction should be approved.

## The Confirmation Letter

13.     LBHI and the Lenders have heavily negotiated the terms of the

Confirmation Letter[3] pursuant to which LBHI will agree, subject to the satisfaction of certain

conditions described below: (i) to purchase, or cause one of LBHI's controlled affiliates to

---

[2] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

[3] To the extent that there is any inconsistency between this summary of the Confirmation Letter and the Confirmation Letter itself, the terms of the Confirmation Letter control.

purchase, concurrently with the closing of the XLE Sale (the "XLE Closing"), 34 Turbines from

SkyPower for an amount equal to the XLE Amount (as defined below) (the "LBHI Purchase

Transaction"); or (ii) at LBHI's sole discretion, in lieu of the LBHI Purchase Transaction, to

provide debt financing (to be secured by liens on the 34 Turbines, such security interest to attach

only upon the satisfaction in full of SkyPower's obligations under the Credit Agreement and the

other Basic Documents (as defined in the Credit Agreement)) in the XLE Amount to SkyPower

immediately prior the XLE Closing and to cause SkyPower to use the XLE Amount to satisfy

obligations of SkyPower outstanding under the Credit Agreement and the other Basic Documents

at the time of the XLE Closing and not otherwise contemplated to be satisfied at the XLE

Closing (the "LBHI Alternative Transaction",[4] and together with the LBHI Purchase

Transaction, the ("LBHI-SkyPower Transaction")).  The XLE Amount, as defined in the

Confirmation Letter, means an amount denominated in Canadian dollars equal to (i) CDN

$214,000,000, *plus* (ii) the Canadian dollar amount of accrued and unpaid interest under the

Credit Agreement on the date of the XLE Closing, *less* (iii) US $135,074,627 *multiplied* by the

Exchange Rate (as defined in the Confirmation Letter).

14.    LBHI's obligations under the Confirmation Letter are subject to: (i) the

concurrent consummation of the XLE Sale in accordance with the terms of a definitive

agreement to be entered into by SkyPower with respect to the XLE Sale (the "XLE Sale

Agreement") and the prior or concurrent satisfaction of all conditions precedent to complete the

XLE Sale under the XLE Sale Agreement; (ii) the concurrent consummation of the funding by

the Lenders of a turbine supply loan to the third party purchaser in the XLE Sale for purposes of

---

[4]LBHI believes that the terms of the LBHI Alternative Transaction are at least fully consistent with the
minimum terms that the Debtors are required to make commercially reasonable efforts to achieve for
inter-company transfers of cash to their non-Debtor affiliates under the existing Cash Management Order.

financing such person's acquisition in the XLE Sale, if such financing is required; (iii) the concurrent receipt of a release, automatically effective only upon the Lenders' receipt of payment in full of all obligations owed under the Credit Agreement, the other Basic Documents and all other documents contemplated by the Credit Agreement, of SkyPower, LBHI and their respective Affiliates from all such obligations owed by any of them (other than such obligations under each such agreement which expressly survive the termination of such agreement in accordance with its terms); (iv) approval by the board of directors of LBHI, and (v) an order of the Bankruptcy Court authorizing and approving the LBHI-SkyPower Transaction and the completion thereof on the terms described herein.

### Sound Business Reasons Support
### LBHI's Decision to Enter into the Confirmation Letter

15.     As described more fully below, LBHI seeks authorization, but not direction, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to enter into the Confirmation Letter and consummate the LBHI-SkyPower Transaction to preserve the value of LBHI's interest in SkyPower and, thus, the equity of SkyPower for the benefit of LBHI's creditors.

16.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991));

*Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

17.    It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

18.    Ample business justifications support the relief requested in this Motion. As mentioned above, SkyPower is a leading developer of renewable energy projects and has numerous on-going projects in Canada and other countries. Extinguishing the Liens and relieving SkyPower from its onerous obligations under the Credit Agreement will not only allow SkyPower's business operations to move forward, but will also make SkyPower more marketable so that LBHI may preserve the value of its equity interest in SkyPower. In addition, the sale of SkyPower, unencumbered by the Liens, will enable LBHI to recoup its investments made through the Intercompany Funding, realize returns on its equity interest, and thereby maximize recoveries to its creditors. Accordingly, it is imperative that LBHI has the authorization, but not direction, to enter into the Confirmation Letter and consummate the LBHI-SkyPower Transaction.

19.      As a result of the current market, SkyPower is in a temporarily difficult position.  The XLE Sale will generate significant funds, and together with LBHI's undertakings in the Confirmation Letter, place SkyPower in a position to pay off the outstanding amounts owed under the Credit Agreement and be relieved of the current financial hardships on its business.  Unless LBHI enters into the Confirmation Letter and consummates the LBHI-SkyPower Transaction, the Lenders will not provide the necessary Financing to consummate the XLE Sale, and may foreclose on their collateral under the Credit Agreement, thereby preventing any opportunity for LBHI to realize value.  Given the current difficulties in the market, the Confirmation Letter and the proposed LBHI-SkyPower Transaction, including the XLE Sale, represent a reasonable exercise of LBHI's business judgment because, together, they represent the best available option to generate funds to pay off the Lenders.

20.      Specifically, under the LBHI Purchase Transaction, by acquiring the Turbines in today's depressed market, LBHI preserves its ability to monetize them at a future date and avoids selling them in a depressed market at a loss.  The Turbines can also be used at a SkyPower project that is under development.  As for the LBHI Alternative Transaction, LBHI will provide intercompany funding to SkyPower equal to the XLE amount and will receive a security interest in the remaining Turbines.  In these chapter 11 cases, this Court has approved intercompany funding between LBHI and certain of its non-debtor affiliates.  *See Order Granting LBHI's Motion, As Supplemented, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, For Authorization To Fund A Capital Contribution To Woodlands Commercial Bank*, dated February 17, 2009 [Docket No. 2846]; *Order Granting LBHI's Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 6004, for Authorization to Increase the Capital Level of Lehman Brothers Bank, FSB through (i)*

*the Settlement of Pending Disputes and (ii) a Direct Capital Contribution of up to $15 Million*, dated February 17, 2009 [Docket No. 2847]; and *Order Granting the Debtors Motion for Authorization to Invest Capital and to Perform Certain Related Actions to Support the Capital Level of Lehman Brothers Bank*, dated March 31, 2009 [Docket No. 3243]; *Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Authorizing Intercompany Funding by Lehman Brothers Holdings Inc. to ARS Holdings II LLC*, dated June 17, 2009 [Docket No. 4022]. Indeed, such funding clearly is contemplated by the Cash Management Order approved by this Court on November 6, 2008.[5]

21.     Pursuant to the Confirmation Letter, SkyPower will apply the XLE Amount received from either the LBHI Purchase Transaction or the LBHI Alternative Transaction to satisfy obligations of SkyPower outstanding under the Credit Agreement.  By entering into the Confirmation Letter and consummating the LBHI-SkyPower Transaction, LBHI will obtain a release by the Lenders of SkyPower, LBHI, and their respective affiliates from all obligations owed by any of them under the Credit Agreement and related documents, including the Equity Contribution Agreement (other than customary obligations, such as indemnities, that expressly survive the termination of such documents).

### **Waiver of Rule 6004(h)**

22.     For these reasons, entering into the Confirmation Letter and consummating the LBHI-SkyPower Transaction is in the best interests of LBHI's estate and its creditors and represents a reasonable exercise of its business judgment.  Since LBHI's Confirmation Letter and the Court approval thereof are conditions of the Funding, which, in turn, is a condition to the closing of the XLE Sale, LBHI requests that the Court waive the

---

[5] *See supra* note [1].

requirements of Bankruptcy Rule 6004(h) and direct that the order granting the relief requested herein be effective immediately. As such, the relief requested in this Motion should be granted.

### Notice

23.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, TX 77002-2730, Attn:  Robert S. Goldberg, Esq., attorneys for HSHN; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

24.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 24, 2009
        Houston, Texas

                                        /s/ Alfredo R. Perez
                                        Alfredo R. Perez

                                        WEIL, GOTSHAL & MANGES LLP
                                        700 Louisiana, Suite 1600
                                        Houston, TX 77002
                                        Telephone: (713) 546-5040
                                        Facsimile: (713) 224-9511

                                        Attorneys for Debtors
                                        and Debtors in Possession

**EXHIBIT A**
**(The Confirmation Letter)**

[  ], 2009


PRIVATE AND CONFIDENTIAL


HSH Nordbank AG, New York Branch
230 Park Avenue, 32nd Floor
New York NY 10169

Re:  Certain  XLE Wind Turbines Owned by SkyPower Corp.

Ladies and Gentlemen,

We understand that SkyPower Corp. ("*SkyPower*") is contemplating the sale of 100 GE 1.5 MW
XLE wind turbines owned by it to a third party (the "*XLE Sale*").  Lehman Brothers Holdings
Inc. ("*LBHI*" or "*we*") is pleased to advise HSH Nordbank ("*HSH*" or "*you*"), acting in its
capacity as administrative agent on behalf of the lenders under that certain Third Amended and
Restated Credit Agreement dated as of February 22, 2008 (as amended, restated, supplemented
or otherwise modified from time to time, the "*Credit Agreement*"), of LBHI's commitment (i) to
purchase, or cause one of LBHI's controlled Affiliates to purchase, concurrently with the closing
of the XLE Sale (the "*XLE Closing*"), 34 GE 1.5MW XLE wind turbines from Skypower for an
amount equal to the XLE Amount (as defined below) (the "*LBHI Purchase Transaction*"); or (ii)
at LBHI's sole discretion, instead of the LBHI Purchase Transaction, to provide debt financing
(with security in the 34 GE 1.5MW XLE wind turbines, such security interest to attach only upon
the satisfaction in full of SkyPower's obligations under the Credit Agreement and the other Basic
Documents) in the XLE Amount to SkyPower immediately prior the XLE Closing and to cause
SkyPower to use the XLE Amount to satisfy obligations of SkyPower outstanding under the
Credit Agreement and the other Basic Documents at the time of the XLE Closing and not
otherwise contemplated to be satisfied at the XLE Closing (the "*LBHI Alternative Transaction*,"
and together with the LBHI Purchase Transaction, the "*LBHI-SkyPower Transaction*").

For purposes of this letter (this "*Letter*"):

> "*Affiliates*" shall mean, with respect to any Person, any direct or indirect subsidiary of
> such Person, and any other Person that directly or indirectly controls, is controlled by, or
> is under common control with, such Person.  As used in this definition,
> "*control*"(including, with correlative meanings, "*controlled by*" and "*under common
> control with*") shall mean possession, directly or indirectly of power to direct or cause the
> direction of management or policies (whether through ownership of securities or
> partnership or other ownership interests, by contract or otherwise).

> "*Bankruptcy Case*" shall mean the cases commenced by LBHI and certain of its
> Affiliates under chapter 11 of title 11 of the United States Code in the United States

Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*"), which are being jointly administered under the case captions In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered).

"*Exchange Rate*" shall mean, in respect of the XLE Sale closing date, the United States and Canadian dollar foreign spot exchange rate (expressed per United States dollar) in late New York trading on the business day immediately prior to the date of such determination as published in the "Currencies" section of The Wall Street Journal; in the event that such rate does not appear on any Wall Street Journal page, the Exchange Rate shall be determined by reference to such other publicly available service for displaying exchange rates as may be agreed upon by HSH and LBHI.

"*Governmental Entity*" shall mean any federal or state court or governmental agency, authority, body or any instrumentality or political subdivision thereof.

"*Law*" shall mean any domestic law, statute, rule, or regulation.

"*Order*" shall mean any order, judgment, decree, writ or injunction of any Governmental Entity.

"*Person*" shall mean any individual, corporation, association, partnership, limited liability company, joint venture, joint stock or other company, business trust, trust, organization, governmental authority or other entity of any kind.

"*XLE Amount*" shall mean an amount denominated in Canadian dollars equal to (i) CDN$214,000,000, *plus* (ii) the Canadian dollar amount of accrued and unpaid interest under the Credit Agreement on the date of the XLE Closing, *less* (iii) US$135,074,627 *multiplied* by the Exchange Rate.

This Letter and LBHI's obligations hereunder are subject to (i) the concurrent consummation of the XLE Sale in accordance with the terms of a definitive agreement to be entered into by SkyPower with respect to the XLE Sale (the "*XLE Sale Agreement*") and the prior or concurrent satisfaction of all conditions precedent to complete the XLE Sale under the XLE Sale Agreement; (ii) the concurrent consummation of the funding by the Lenders (as defined in the Credit Agreement) of a turbine supply loan to the third party purchaser in the XLE Sale for purposes of financing such person's acquisition in the XLE Sale, if such financing is required; (iii) the concurrent receipt of a release, automatically effective only upon the Lenders' receipt of payment in full of all obligations owed under the Credit Agreement, the other Basic Documents (as defined in the Credit Agreement) and all other documents contemplated by the Credit Agreement, of SkyPower, LBHI and their respective Affiliates from all such obligations owed by any of them (other than such obligations under each such agreement which expressly survive the termination of such agreement in accordance with its terms); (iv) approval of the LBHI board of directors, and (v) an order of the Bankruptcy Court authorizing and approving the LBHI-SkyPower Transaction and the completion thereof on the terms described herein (the "*Bankruptcy Court Approval*").

LBHI shall, at its sole expense, and subject to the terms hereof, (x) promptly prepare a motion (the "_Motion_") to seek the Bankruptcy Court Approval, (y) timely submit the Motion for the earliest possible hearing of the Bankruptcy Court and (z) promptly prosecute the Motion.

LBHI hereby represents that (a) this Letter has been duly and validly executed and delivered by LBHI and constitutes a legal, valid and binding obligation of LBHI, enforceable against it in accordance with its terms; except as enforceability may be limited by bankruptcy Laws, other similar Laws affecting creditors' rights and general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity), and (b) except for the approval of the LBHI board of directors and the Bankruptcy Court Approval, no further approvals or authorizations of any other Governmental Entity or of LBHI or any of its Affiliates are required to be obtained or made for the consummation of the LBHI-SkyPower Transaction on the terms described herein and the execution, delivery and performance by LBHI of any documentation related to the LBHI-SkyPower Transaction.

This Letter may not be assigned by either LBHI or HSH without the prior written consent of the other party (except that LBHI may assign its commitment hereunder to any of its Affiliates so long as such assignment would not result in any additional approvals (except for any corporate, limited liability company or member approval which is obtained at the time of such assignment) being required for the LBHI-SkyPower Transaction), which may be granted or withheld in the sole discretion of such party, and any purported assignment without such consent shall be null and void and will automatically terminate all obligations and commitments of LBHI under this Letter.  This Letter is intended to be solely for the benefit of LBHI and HSH and is not intended to confer any benefits upon, or create any rights in favor of, any person other than LBHI and HSH, except that the Lenders shall be third party beneficiaries hereof.  This Letter may not be amended or any term or provision hereof waived or modified except by an instrument in writing signed by each of LBHI and HSH and delivered by each of them.  This Letter shall be governed by, and construed in accordance with, the Laws of the State of New York (without regard to any conflict of Laws provisions or principles).

The existence of this Letter and its terms are strictly confidential and are not to be disclosed to any third party and may not be used, circulated, quoted or otherwise referred to in any document, except with the prior written consent of the parties hereto; provided, that, (i) LBHI may disclose this Letter and its terms to any of its creditors or committees thereof (or the professionals of such committee) appointed in the Bankruptcy Case or in order to obtain the Bankruptcy Court Approval, and (ii) HSH may disclose this Letter and its terms to the Lenders.

Notwithstanding anything to the contrary contained herein, this Letter may be terminated at any time on or before the XLE Closing date (a) by written agreement of LBHI and HSH; or (b) by either LBHI or HSH by written notice to the other if (i) there shall be a final, non-appealable Order of a federal or state court in effect preventing consummation of the transactions contemplated hereby; (ii) there shall be any final action taken, or any statute, rule, regulation or Order enacted, promulgated or issued or deemed applicable to the transactions contemplated hereby, by any Governmental Entity which would make consummation of the transactions contemplated hereby illegal; or (iii) the XLE Closing shall not have occurred prior to September

30, 2009.  In the event of the termination of this Letter  as provided in this paragraph, this Letter shall forthwith become void and there shall be no liability or obligation on the part of any party hereto or, to the extent applicable, their respective officers, directors, members or Affiliates.

*[The remainder of this page is left blank intentionally.]*

Very truly yours,

**Lehman Brothers Holdings Inc.**

By: _____
    Name:
    Title:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                          :
In re                                                     :         **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,              :         **08-13555 (JMP)**
                                                          :
                      **Debtors.**                        :         **(Jointly Administered)**
                                                          :
-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 AUTHORIZING LBHI TO ENTER INTO A CONFIRMATION LETTER WITH HSH NORDBANK AG, NEW YORK BRANCH, AS COLLATERAL AGENT

Upon the motion, dated June 24, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI," together with its affiliated debtors in the above-captioned chapter 11

cases, as debtors and debtors-in-possession the "Debtors"), pursuant to sections 105(a) and 363

of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization, but not direction, to

enter into a confirmation letter (the "Confirmation Letter") with HSH Nordbank AG, New York

Branch, as administrative agent and collateral agent ("HSHN"), and consummate the LBHI-

SkyPower Transaction,[1] all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in

---

[1] Capital terms used but not defined shall have the meaning ascribed to them in the Motion.

accordance with the procedures set forth in the amended order entered February 13, 2009

governing case management and administrative procedures [Docket No. 2837] to (i) the United

States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, TX 77002-2730, Attn:

Robert S. Goldberg, Esq., attorneys for HSHN; and (vii) all parties who have requested notice in

these chapter 11 cases, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion; and the Court having

found and determined that the relief sought in the Motion is in the best interests of LBHI, its

estate and creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a) and 363 of the Bankruptcy Code,

LBHI is authorized, but not directed, to enter into the Confirmation Letter and consummate the

LBHI-SkyPower Transaction on the terms contemplated therein; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and this

Order is effective immediately upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June __, 2009
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE