Hearing Date and Time: July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
In re                                                  :    Chapter 11 Case No.
                                                       :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,               :    08-13555 (JMP)
                                                       :
                              Debtors.                 :    (Jointly Administered)
---------------------------------------------------------------------x

## NOTICE OF DEBTOR'S MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014 FOR AN ORDER APPROVING THE SALE OF ORDINARY SHARES AND NOTES ISSUED BY DELTA TOPCO LIMITED AND ORDINARY SHARES ISSUED BY DELTA PREFCO LIMITED AND RELATED RELIEF

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Commercial Paper Inc., as debtor and debtor in possession (together with Lehman

Brothers Holdings Inc. and its affiliated debtors in the above-captioned chapter 11 cases, the

"Debtors"), pursuant to sections 105 and 363 of title 11 of the United States Code and Rules

2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for approval of the sale of ordinary shares and notes issued by Delta Topco Limited and ordinary

shares issued by Delta Prefco Limited to LB I Group Inc., as more fully described in the Motion,

will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling

Green, New York, New York 10004 (the "Bankruptcy Court"), on **July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Sale Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **July 10, 2009, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Sale Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 24, 2009
      New York, New York

                /s/ Lori R. Fife
                Lori R. Fife

                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                Telephone: (212) 310-8000
                Facsimile: (212) 310-8007

                Attorneys for Debtors
                and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
|   |   |   |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
|   | : |   |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
|   | : |   |
| Debtors. | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**DEBTOR'S MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE**
**BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**2002, 6004 AND 9014 FOR AN ORDER APPROVING THE SALE OF ORDINARY**
**SHARES AND NOTES ISSUED BY DELTA TOPCO LIMITED AND ORDINARY**
**SHARES ISSUED BY DELTA PREFCO LIMITED AND RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Commercial Paper Inc. (the "LCPI"), as debtor and debtor in possession

(together with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), files this Motion and respectfully represents:

**Background**

1.        Commencing on September 15, 2008 and periodically thereafter, the

Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code").  LCPI, a wholly-owned direct subsidiary of LBHI,

commenced its chapter 11 case on October 5, 2008.  The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors

are authorized to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the U.S. Trustee appointed the statutory

committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the

"Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner").  By order dated January 20,

2009, the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

8.      Pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014, LCPI seeks authority to sell (i) 154,347,100 ordinary shares of Delta Topco Limited, a private limited company organized under the laws of Jersey ("Delta Topco"), and 1,418 ordinary shares of Delta Prefco Limited, a private limited company organized under the laws of Jersey ("Delta Prefco" and together with Delta Topco, the "Companies") (together the "Shares"), and (ii) a 15% unsecured loan note issued by Delta Topco due in 2016 in the principal amount of $552,823,297, and an unsecured PIK Note issued by Delta Topco due in 2016 in respect of the interest payable on such note (together, the "Loan Notes" and together with the Shares, the "Formula One Investment") to LB I Group Inc. (the "Purchaser"), a wholly-owned indirect subsidiary of LBHI pursuant to a sale agreement substantially in the form attached hereto as Exhibit A (the "Sale Agreement").

9.      In connection therewith, LCPI further seeks authority to enter into (i) a consulting agreement substantially in the form attached hereto as Exhibit B (the "Consulting Agreement"), pursuant to which LCPI will be obligated to pay certain fees and provide, as an administrative expense claim, certain limited indemnification, and (ii) an agreement with the Companies and the Purchaser substantially in the form attached hereto as Exhibit C (the "Letter Agreement") regarding the proposed transactions.

10.     As described in more detail below, the proposed transactions preserve LCPI's interest in the upside of the Formula One Investment and are in the best interest of LCPI's estate.

## Sale of the Formula One Investment

11.     The Companies are holding companies formed in 2007 to hold the

ordinary shares and refinance the debt of Alpha Topco Limited and Beta Topco 1 Limited

(together, the "Operating Entities"), which, in turn, hold the rights to commercially exploit the

FIA Formula One World Championship, a leading global motor racing series.  FIA Formula One

World Championship currently includes 11 teams competing in approximately 17 races per year

around the world.  The Operating Entities' revenue is predominantly derived from TV

broadcasts, race promotions, advertisements and hospitality revenue.  FIA Formula One World

Championship is widely considered to be the pinnacle of motorsport with the most

technologically advanced cars and the best drivers.  Its events are viewed by a global audience of

approximately 500 million people in 174 countries.

12.     LCPI acquired the Formula One Investment in 2006.  Through the

Formula One Investment, LCPI owns approximately 16% of the interest in the Operating

Entities.  As holder of more than 15% of the ordinary shares of each of the Companies, pursuant

to section 10.4(b) of the Investment and Shareholders Agreements of the Companies (the

"ISAs"), LCPI is entitled to appoint one of the directors of each of the Companies.

13.     Pursuant to Article 56 of the Articles of Association (the "Articles of

Association") of each of the Companies, the board of directors of each Company has the right to

require holders of the Companies' ordinary shares to sell their shares to a person or persons

designated by the board of directors upon the occurrence of an Insolvency Event (as defined in

the Articles of Association).  Pursuant to Clause 3.1 of Schedule 3 of the loan note instrument,

entered into by Delta Topco on November 24, 2006, as amended on September 18, 2008 (the

"Loan Note Instrument"), the forced sale provisions of Article 56 of the Articles of Association

of Delta Topco also apply to the Loan Notes and therefore, the board of directors of Delta Topco

has the right to require a holder to sell its Loan Notes to a person or persons designated by the board of directors. The Articles of Association and the Loan Note Instrument provide that the Shares and the Loan Notes are to be sold at a Fair Price (as defined in the Articles of Association and Loan Note Instrument, as applicable), as further described below.

14.     On October 10, 2008, LCPI received a letter from the Companies (i) invoking their rights under Article 56 of their Articles of Association and, with respect to the letter from Delta Topco, Clause 3.1 of Schedule 3 of the Loan Note Instrument, and (ii) directing LCPI to transfer its Formula One Investment to various funds, as designees of the Companies' boards of directors, in exchange for the Fair Price.

15.     LCPI has determined that it is not in the best interest of its estate to sell the Formula One Investment at the Fair Price because, as required to be calculated pursuant to the Articles of Association and the Loan Notes Instrument, the Fair Price applies a minority discount to the proceeds payable in respect of such a sale. In LCPI's business judgment, LCPI's pro rata share of a sale of a controlling interest in the Companies at their market value would yield a purchase price for the Formula One Investment materially in excess of the Fair Price. In order to preserve the ability to maximize the value of the Formula One Investment, LCPI has been in discussions with the Companies and is currently finalizing negotiations regarding the Letter Agreement with the Companies and the Purchaser. LCPI expects the Letter Agreement to provide that:

(a)     the Companies consent to the sale by LCPI of its Formula One Investment to the Purchaser (the "Proposed Sale"); provided that the Purchaser shall first have executed and delivered to the Companies a deed of adherence to, and in the form required by, each of the ISAs;

(b)       for the purposes of the Proposed Sale only, the Companies' boards of directors will waive their rights under the Articles of Association and Loan Notes Instrument to force a transfer by LCPI to a person designated by the boards of directors;

(c)       LCPI will (i) nominate Mr. Peter Sherratt to be a member of the board of directors of each of the Companies, in accordance with its right pursuant to Section 10.4 of the Companies' ISAs and (ii) following the Proposed Sale, Mr. Sherratt will serve as a director of the Companies until the earliest of (x) such time as LCPI or the Purchaser notifies the Companies in writing; (y) Mr. Sherratt's death, disability or resignation and (z) LCPI and the Purchaser no longer own collectively at least 10% of the issued shares of that Company;

(d)       the Purchaser will only replace Mr. Sherratt with one of the other members of the boards of directors at such time, or any other person with the consent of the relevant Company;

(e)       the Companies consent to Mr. Sherratt sharing certain information regarding the Companies that he may receive as a director with certain LCPI employees listed in the Letter Agreement; and

(f)       LCPI's rights under certain side letters with the Companies' majority shareholder relating to LCPI's ability to appoint a member of the board of Companies' boards of director and a limitation on the majority shareholder's ability to transfer certain shares of the Companies shall lapse and cease to be in effect.

16.       Upon Court approval, LCPI and the Purchaser intend to enter into the Sale Agreement, pursuant to which LCPI will sell all of its right, title and interest in the Formula One Investment to the Purchaser in exchange for the right to receive from the Purchaser all cash proceeds received by the Purchaser, from time to time after the consummation of such

transaction in respect of any securities or other non-cash property into which all or any portion of

the Formula One Investment may hereafter be converted or exchanged (including, without

limitation, dividend and interest income and any proceeds received in respect of a

recapitalization, sale or other disposition), less any out-of-pocket fees and expenses incurred by

Purchaser from time to time in connection with any such sale or other disposition.  Concurrently

with the sale, Purchaser will grant to LCPI a first priority security interest in all of the

Purchasers' right, title and interest in Formula One Investment.  If, on June 30, 2014, Purchaser

has not disposed of all of the Formula One Investment, then LCPI may, at any time thereafter,

demand that Purchaser pay to LCPI an amount equal to the then Fair Value (as defined in the

Sale Agreement).  The Sale Agreement includes standard representations and warranties and

conditions to the closing of the transaction.  As a condition to the Purchaser's consent to the

proposed transaction, the Purchaser required that LCPI indemnify it from and against any and all

claims, liabilities, losses, damages and expenses incurred by related to or arising out of

Purchaser's ownership of the Formula One Investment.

   17. The Purchaser and LCPI also intend to enter into the Consulting

Agreement, pursuant to which the Purchaser will retain Mr. Sherratt, and Mr. Sherratt will agree

to serve as a member of the board of directors of each of the Companies and provide consulting

services to the Purchaser in connection with the Purchaser's investment in the Companies.  The

Companies required that Mr. Sherratt serve as the Purchaser's representative on the Companies'

boards of directors because of, in part, Mr. Sherratt's previous involvement as a director of the

Companies through his role as a former employee of one of the Debtors' affiliates in the United

Kingdom.  LCPI also believes that Mr. Sherratt will be a valuable representative of LCPI's

interests with respect to the Formula One Investment as a result of his prior involvement and

intimate knowledge of the Companies' business.  As a condition to the Purchaser's consent to the proposed transaction, the Purchaser also required that LCPI (i) pay Mr. Sherratt the a fee of £500 per hour and (ii) reimburse Mr. Sherratt for expenses incurred (up to a £10,000 per quarter), in each case, in connection with services provided in accordance with the Consulting Agreement.  Furthermore, LCPI will indemnify Mr. Sherratt against any and all claims, liabilities, losses, damages and expenses incurred by him which (a) are related to or arise out of (i) actions taken or omitted to be taken by LCPI or LB I Group or (ii) actions taken or omitted to be taken by Mr. Sherratt with LCPI's of LBI Group's consent or in conformity with LCPI's or LBI Group's instructions or LCPI's or LBI Group's actions or omissions or (b) are otherwise related to or arise out of Mr. Sherratt's engagement by LCPI and LBI Group, and will reimburse Mr. Sherratt for all costs and expenses as they are incurred, in connection with investigating, preparing for, defending or appealing any action, formal or informal claim, investigation, inquiry or other proceeding, whether or not in connection with pending or threatened litigation, caused by or arising out of or in connection with Mr. Sherratt's actions pursuant to his engagement, whether or not he is named as a party thereto and whether or not any liability results therefrom; provided, however, LCPI will not be responsible for any claims, liabilities, losses, damages or expenses pursuant to clause (b) above that have resulted primarily from Mr. Sherratt's bad faith, gross negligence or willful misconduct.

### The Relief Requested is Warranted
### and in the Best Interests of LCPI and its Estate

18.    Ample authority exists for approval of the Proposed Sale.  Section 363 of the Bankruptcy Code provides, in relevant part, "that a debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard

for determining when it is appropriate for a court to authorize the use, sale or disposition of a

debtor's assets, courts in the Second Circuit and others, in applying this section, have required

that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*,

973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must

find from the evidence presented a good business reason to grant such application); *Committee of

Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)

(same).  Once a court is satisfied that there is a sound business justification for the proposed use,

sale, the court must then determine whether (i) the debtor has provided the interested parties with

adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is

proceeding in good faith. *See, e.g., In re Betty Owens Sch.*, 1997 U.S. Dist. Lexis 5877 (S.D.N.Y.

1997); *accord In re Delaware and Hudson Ry. Co.*, 124 B.R. at 166; *In re Decora Indus., Inc.*,

Case No.  00-4459, 2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).

> 19.    LCPI's decision to sell the Formula One Interest to the Purchaser and to

enter into the Letter Agreement, the Sale Agreement and the Consulting Agreement is an

exercise of its sound business judgment.  Absent this transaction, pursuant to the Articles of

Association of each of the Companies and the Loan Note Instrument, LCPI could be forced to

sell the Formula One Investment.  In such circumstances, LCPI could assert that the Companies'

exercise of the forced sale provisions in their Articles of Association and the Loan Note

Instrument would be a violation of the automatic stay imposed by section 362 of the Bankruptcy

Code.  Although LCPI believes it may prevail on the merits of such argument, because, *inter

alia*, the Articles of Association and the Loan Note Instrument are governed by Jersey law, LCPI

acknowledges that there is nonetheless a risk.  In addition, such action would require expending

resources of LCPI's estate.

20.     Furthermore, a forced sale of the Formula One Investment would yield a purchase price of a Fair Price calculated in accordance with the provisions of the Articles of Association of each of the Companies and the Loan Note Instrument, which require the application of a minority discount.  LCPI believes the Fair Value is currently less than the intrinsic value of the Formula One Investment, including as a result of the loss of a control premium in the forced sale context.   In addition, in a forced sale for a cash payment, LCPI would lose any future appreciation in the value of the Formula One Investment.  The Proposed Sale permits LCPI to retain all of the upside in its Formula One Investment (including its pro rata share of any control premium obtained in connection with a sale of the Companies or their assets), which LCPI has determined is valuable, without taking on material additional expenses. The ultimate consideration to be paid by the Purchaser (i) is fair and reasonable, (ii) is expected to provide for an equal or greater recovery for the LCPI's creditors than would be provided by the available alternative, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and non-bankruptcy law.  A sale of the Formula One Investment pursuant to the Sale Agreement and entry into the Consulting Agreement is an exercise of sound business judgment by LCPI and is meritorious and beneficial to its estate.

## Sale Free and Clear of Liens, Claims, Encumbrances, and Interests

21.     The Formula One Investment will be sold free and clear of any interest of any entity other than LCPI's estate.  Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if applicable nonbankruptcy law permits the sale of such property free and clear of such interest, if such entity consents, if such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, if such interest is in bona fide dispute, or if such entity could be compelled, in a legal or

equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f)(1) –

(5).  Although LCPI is unaware of any such interest in the Formula One Investment, with respect

to any party asserting a lien, claim, encumbrance or other interest against the assets, LCPI

anticipates that it will be able to satisfy one or more of the conditions set forth in section 363(f).

**The Sale Agreement Is the
<u>Product of Good Faith and Contains Fair Consideration</u>**

22.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's

interest in property purchased from the debtor notwithstanding that the sale conducted under

section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)]
> … does not affect the validity of a sale … to an entity that purchased … such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) "fosters the 'policy of not only affording finality to the

judgment of the bankruptcy court, but particularly to give finality to those orders and judgments

upon which third parties rely.'"  *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, *9

(S.D.N.Y. 1993) (quoting *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 at 147).  *See also

Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides

that good faith transfers of property will not be affected by the reversal or modification on appeal

of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re

Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m),

good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay

pending appeal").

23.     In certain circumstances involving proposed transactions with insiders,

courts have applied heightened scrutiny.  *See, e.g.*, *In re Enron Corp.*, 335 B.R. 22, 28 (S.D.N.Y

2005) ("Courts have held that transactions that benefit insiders must withstand heightened

scrutiny before they can be approved under § 363(b).”); *C & J Clark Am., Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*, 92 B.R. 87, 93 (Bankr. S.D.N.Y. 1988) (finding that insider transactions under section 363(b) have the possibility of abuse and thus are necessarily subjected to heightened scrutiny).  Although the Purchaser may be an considered an insider of LCPI, as defined in section 101(31) of the Bankruptcy Code, the Sale Agreement includes no unfair benefits to the Purchaser.  The sale of the Formula One Investment will be the product of arm’s-length, good-faith negotiations between LCPI and the Purchaser.  Based upon the record to be made at the hearing of this Motion, LCPI intends to request a finding that the Purchaser is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

### Relief Under Bankruptcy Rule 6004(h)

24.     Bankruptcy Rule 6004(h) provides that an “order authorizing the use, sale or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the Court orders otherwise.”  Fed. R. Bank. P. 6004(h).  LCPI seeks to consummate the Proposed Sale as soon as final documentation and execution of the Letter Agreement, the Consulting Agreement and the Sale Agreement can be achieved.  Waiver of the ten-day stay is therefore requested.

### Notice

25.     No trustee has been appointed in these chapter 11 cases.  LCPI has served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditor’s Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the Purchaser; (vii) the Companies

and (viii) all parties who have requested notice in these chapter 11 cases.  LCPI submits that no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by LCPI to this or any other court.

WHEREFORE LCPI respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  June 23, 2009
        New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT A**

US_ACTIVE:\20997176\07\20997176_7.DOC\58399.0003

<u>PURCHASE AGREEMENT</u>

**AGREEMENT** (the "<u>Agreement</u>"), dated as of this [•] day of [•], 2009 between Lehman Commercial Paper Inc., a New York corporation ("<u>Seller</u>") and LB I Group Inc., a Delaware corporation ("<u>Purchaser</u>").

**WHEREAS**, Seller is the holder of 154,347,100 ordinary shares of Delta Topco Limited, a private limited company organized under the laws of Jersey (the "<u>Delta Topco Shares</u>"), 1,418 ordinary shares of Delta Prefco Limited, a private limited company organized under the laws of Jersey (the "<u>Delta Prefco Shares</u>" and together with the Delta Topco Shares, the "<u>Shares</u>"), a 15% unsecured loan note due 2016 in the principal amount of $552,823,297 of Delta Topco Limited and unsecured Pik Notes due 2016 in respect of the interest payable on such note (together, the "<u>Loan Notes</u>" and together with the Shares, the "<u>Formula One Investment</u>");

**WHEREAS**, Seller is a debtor-in-possession under title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "<u>Bankruptcy Code</u>") and filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 5, 2008 in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>");

**WHEREAS**, on October 10, 2008, Seller received letters from Delta Topco Limited ("<u>Delta Topco</u>") and Delta Prefco Limited ("<u>Delta Prefco</u>" and together with Delta Topco, the "<u>Companies</u>") asserting that (i) Seller's bankruptcy proceedings are an Insolvency Event under the Articles of Association of the Companies (the "<u>Articles</u>") entitling the boards of directors of the Companies (the "<u>Boards</u>") to require Seller to transfer the Shares to the person or persons designated by the Boards (the "<u>Forced Share Transfer Provisions</u>"), (ii) pursuant to the provisions of the Loan Note Instrument entered into by Delta Topco on November 24, 2006, as amended on September 18, 2008 (the "<u>Loan Note Instrument</u>"), the provisions of the Articles relating to forced transfer on the occurrence of an Insolvency Event also apply to the Loan Notes and entitle the board of directors of Delta Topco (the "<u>Topco Board</u>") to require Seller to transfer the Loan Notes to the person or persons designated by the Topco Board (the "<u>Forced Note Transfer Provisions</u>" and together with the Forced Share Transfer Provisions, the "<u>Forced Sale Provisions</u>") and (iii) the Boards intend to require Seller to transfer the Formula One Investment to the members of the Companies designated by the Boards for the Fair Price (as defined in the Articles and the Loan Note Instrument);

**WHEREAS**, calculation of the Fair Price for the Shares and the Loan Notes applies a minority discount to the Formula One Investment;

**WHEREAS**, Seller believes the value obtainable for the Formula One Investment upon a sale of a controlling interest in Delta Topco and Delta Prefco would yield a higher value to Seller than the Fair Price obtained pursuant to the Forced Sale Provisions because Seller would receive a pro rata portion of a control premium in connection with such a transaction;

**WHEREAS**, the Companies have indicated a willingness to waive the Forced Sale Provisions if Seller transfers the Formula One Investment to Purchaser, a non-debtor affiliate of Seller and agrees to appoint Mr. Peter Sherratt as its designee on the Boards;

**WHEREAS**, Seller desires to sell, transfer and assign to Purchaser, and Purchaser desires to acquire and assume from Seller, the Formula One Investment, all as more specifically provided herein; and

**WHEREAS**, an order approving this Agreement was entered by the Bankruptcy Court in Seller's bankruptcy case on _____, 2009.

**NOW, THEREFORE**, in consideration of the premises and the respective covenants and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree and promise as follows:

1. <u>PURCHASE OF THE FORMULA ONE INVESTMENT</u>.  On the terms and subject to the conditions set forth in this Agreement, at the Closing Purchaser shall purchase, acquire and accept from Seller, and Seller shall sell, transfer, assign, convey and deliver to Purchaser all of Seller's right, title and interest in and to the Formula One Investment (the "<u>Purchase</u>").

2. <u>PURCHASE PRICE</u>.

2.1 <u>Payment of Net Proceeds</u>.  In consideration of the transfer to Purchaser of Seller's right, title and interest in and to the Formula One Investment, Seller shall be entitled to receive from Purchaser, and Purchaser shall pay to Seller, promptly following receipt thereof, the Net Proceeds (as hereinafter defined) received by Purchaser from time to time hereafter in respect of the Formula One Investment and any securities or other non-cash property into which all or any portion of the Formula One Investment may hereafter be converted or exchanged (the "<u>Applicable Formula One Assets</u>").  For purposes hereof, "<u>Net Proceeds</u>" shall mean any cash proceeds received by the Purchaser from time to time after the Closing in respect of the Applicable Formula One Assets (including, without limitation, dividend and interest income and any proceeds received in respect of a recapitalization, sale or other disposition of all or any portion of the Applicable Formula One Assets (a "<u>Sale Transaction</u>")), less any out-of-pocket fees and expenses incurred by Purchaser from time to time in connection with any Sale Transaction.  Seller acknowledges and agrees that, from and after the Closing, (i) Purchaser shall have the sole and exclusive right to make, in its sole discretion, all decisions with respect to the Applicable Formula One Assets, including, without limitation, decisions with respect to any Sale Transaction, (ii) the exercise by Purchaser of its discretion with respect to the Applicable Formula One Assets may directly affect the amount of Net Proceeds that may be payable to Seller hereunder and (iii) in the absence of fraud or willful misconduct on the part of Purchaser, Purchaser will not be liable to Seller for any decisions made by Purchaser with respect to the Applicable Formula One Assets (including, without limitation, any claims relating to or otherwise based upon the adequacy of consideration received by Purchaser in connection with or respect of any Sale Transaction).

2.2    <u>Payment of Fair Value</u>.  If, on June 30, 2014, Purchaser has not disposed of all of the Applicable Formula One Assets, then Seller may, at any time thereafter, upon written notice to Purchaser (the "<u>Payment Notice</u>") demand that Purchaser pay to Seller an amount equal to the then Fair Value (as hereinafter defined) of the Applicable Formula One Assets.  Payment shall be required within 15 days following Seller's delivery to Purchaser of a written notice (which may be, but shall not be required to be, included in the Payment Notice) setting forth its determination of Fair Value.  Such Payment shall be made by wire transfer of immediately available funds (in United States dollars) to such account or accounts as Seller shall have designated in writing to Purchaser.  Upon payment, all further obligations of Purchaser to Seller in respect of the Applicable Formula One Assets pursuant to this Agreement (including Purchaser's payment obligations pursuant to <u>Section 2.1</u> hereof) shall terminate, and Seller shall take such actions as may be necessary to release its security interest in the Applicable Formula One Assets.  For purposes hereof, "<u>Fair Value</u>" shall mean the amount determined by a nationally recognized investment banking firm (the "<u>Appraiser</u>") selected by Seller as being the Fair Value of the Applicable Formula One Assets as of the date of the Payment Notice calculated as follows:

2.2.1    With respect to that portion of the Applicable Formula One Assets that is comprised of all or part of the Formula One Investment, the Appraiser shall first determine, for each of Delta Topco and Delta Prefco, the open market value of all of the issued shares and Shareholder Loans (as defined in the Articles) (the "<u>Member Funds Value</u>"), taking into account the enterprise value on an external debt free and cash free basis of Delta Topco or Delta Prefco, as applicable, and its subsidiaries (the "<u>Enterprise Value</u>") with regard to its historic financial performance, its forecast performance and prospects and the performance and valuations of comparable businesses.  In considering the valuations of comparable businesses whose shares are publicly traded and/or which have been the subject of change of control transactions, the Appraiser will reduce the valuation for any premium paid on a change of control of such comparable business and that the shares are illiquid and not publicly traded.  The Member Funds Value for each of Delta Topco and Delta Prefco shall be the applicable Enterprise Value less the applicable Net Financial Debt (as defined in the Articles).  Next the Appraiser shall deduct from the Member Funds Value for each of Delta Topco and Delta Prefco the amount which would be payable on the repayment in full at the date of the valuation of the Shareholder Loans of such Company (including accrued interest) (the "<u>Equity Value</u>").  The Fair Value for each Share shall be the Equity Value of Delta Topco or Delta Prefco, as applicable (if a positive amount) divided by the number of issued shares of Delta Topco or Delta Prefco, as applicable, calculated on a fully diluted basis (and otherwise zero).  Fair Value of the Loan Notes shall be the aggregate amount payable upon their redemption as at the date by reference to which Fair Value is determined multiplied by the lower of (i) one and (ii) a fraction whose numerator is the Member Funds Value for Delta Topco and whose denominator is the amount then payable on redemption in full of all loan notes and pik notes issued from time to time under the Loan Note Instrument.

2.2.2    With respect to such portion of the Applicable Formula One Assets that is comprised of any asset other than the Formula One Investment, Fair Value shall be such value as determined by the Appraiser utilizing the principles set forth in subclause (a) above to the extent applicable and such other principles of valuation that it deems appropriate in determining the value of such assets.

- 3 -

3.     SECURITY INTEREST.  As security for payment of the Net Proceeds and/or the Fair Value of the Applicable Formula One Assets to Seller, at the Closing (as defined herein), Purchaser shall deliver, assign, pledge, set over and grant to Seller a first priority security interest in and to, all of its right, title and interest, whether now existing or hereafter arising or acquired, in the Applicable Formula One Assets.

4.     CLOSING.  The closing of the Purchase (the "Closing") shall take place at the office of Weil, Gotshal & Manges LLP located at 200 Crescent Court, Suite 300, Dallas, Texas (or at such other place as the parties may mutually agree) at 10:00 a.m., local time, on a date to be specified by the parties (the "Closing Date"), which date shall be no later than the third business day after satisfaction or waiver of the conditions set forth in Section 9 (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of those conditions at such time), unless another time, date or place is agreed to in writing by the parties hereto.

5.     TERMINATION OF AGREEMENT.  This Agreement may be terminated prior to the Closing at the election of Seller or Purchaser on or after the date that is twelve months following the date hereof if the Closing shall not have occurred by the close of business on such date.

6.     REPRESENTATIONS AND WARRANTIES BY SELLER.  Seller represents and warrants as of the date hereof to Purchaser as follows:

6.1     Power and Authority.  Seller has the power to enter into this Agreement and to carry out its obligations hereunder.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action on the part of Seller, and no other proceeding on the part of Seller is necessary to authorize the execution and delivery of this Agreement or the performance of any of the transactions contemplated hereby.  This Agreement has been duly executed and delivered on behalf of Seller and constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.2     Title to Formula One Investment.  Seller owns and has good title to the Shares and the Loan Notes, free and clear of all liens, encumbrances, pledges, mortgages, deeds of trust, security interests, claims, leases, charges, options, right of first refusal, easement, servitude or transfer restriction, except for those restrictions imposed by the Articles, the Investment and Shareholders Agreements of Delta Topco and Delta Prefco, each dated as of November 24, 2006, respectively (the "ISAs") and the Loan Note Instrument.

6.3     Authorization of Agreement; No Violation.  Neither the execution, delivery or performance of this Agreement nor the consummation of any of the transactions contemplated hereby:  (i) will violate or conflict with Seller's constitutive documents; or (ii) is prohibited by

any statute, law, ordinance, regulation, rule, judgment, decree or order of any court or governmental agency, board, bureau, body, department or authority applicable to Seller.

6.4    NO OTHER REPRESENTATIONS OR WARRANTIES.  **EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF SELLER SET FORTH IN THIS AGREEMENT, SELLER SHALL NOT BE DEEMED TO HAVE MADE ANY FURTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE FORMULA ONE INVESTMENT, INCLUDING WITHOUT LIMITATION, THE VALUE OF SUCH INVESTMENT.**

7.    REPRESENTATIONS AND WARRANTIES BY PURCHASER.  Purchaser represents and warrants as of the date hereof to Seller as follows:

7.1    Corporate Existence.  Purchaser is a corporation incorporated under the laws of the State of Delaware and has been duly organized and is validly existing and in good standing under the laws of the State of Delaware.

7.2    Power and Authority.  Purchaser has the power to enter into this Agreement and to carry out its obligations hereunder.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action on the part of Purchaser, and no other proceeding on the part of Purchaser is necessary to authorize the execution and delivery of this Agreement or the performance of any of the transactions contemplated hereby.  This Agreement has been duly executed and delivered on behalf of Purchaser and constitutes a legal, valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

7.3    Authorization of Agreement; No Violation.  Neither the execution, delivery or performance of this Agreement nor the consummation of any of the transactions contemplated hereby:  (i) will violate or conflict with Purchaser's constitutive documents; (ii) will result in any material breach of or material default under any provision of any material contract or agreement of any kind to which Purchaser is a party or by which Purchaser is subject; or (iii) is prohibited by any statute, law, ordinance, regulation, rule, judgment, decree or order of any court or governmental agency, board, bureau, body, department or authority applicable to Purchaser.

8.    COVENANTS.

8.1    Seller's Covenants.  Seller shall use commercially reasonable efforts to obtain I Director Consent (as defined in the Articles of the Companies) to the transactions contemplated by this Agreement (the "CVC Consent") and the waiver of the Boards of the Forced Sale Provisions (the "Waiver").

8.2    Purchaser's Covenants.

- 5 -

8.2.1    Purchaser shall cooperate with Seller to obtain the CVC Consent and the Waiver.

8.2.2    At the Closing, Purchaser will (i) notify the Companies in writing of its designation of Mr. Peter Sherratt as its director appointee to each of the Boards in accordance with the respective ISAs and (ii) enter into a consulting agreement with Mr. Sherratt in substantially the form of Exhibit A.

9.    CONDITION TO CLOSING.

9.1    Conditions Precedent to Obligations of Purchaser.  The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions:

9.1.1    The representations and warranties of Seller set forth in this Agreement shall be true and correct at and as of the Closing;

9.1.2    Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by it prior to the Closing Date;

9.1.3    Seller shall have obtained the CVC Consent and the Waiver; and

9.1.4    Seller shall have executed and delivered to Purchaser such instruments of transfer as are reasonably satisfactory to both parties to transfer the Formula One Investment to Purchaser.

9.2    Conditions Precedent to Obligations of Seller.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions:

9.2.1    The representations and warranties of Purchaser set forth in this Agreement shall be true and correct at and as of the Closing;

9.2.2    Purchaser shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by it prior to the Closing Date;

9.2.3    Seller shall have obtained the CVC Consent and the Waiver;

9.2.4    Purchaser shall have executed and delivered to Seller a security and pledge agreement in form and substance reasonably satisfactory to both parties to evidence the security interest to be granted to Seller pursuant to Section 3; and

9.2.5    Purchaser shall have executed and delivered to Seller such instruments of transfer as are reasonably satisfactory to both parties to transfer the Formula One Investment to Purchaser.

- 6 -

10.    <u>INDEMNIFICATION</u>.  Seller shall indemnify and hold harmless Purchaser from and against any and all claims, liabilities, losses, damages and expenses incurred by it which are related to or arise out of Purchaser's ownership of the Formula One Investment, and will reimburse Purchaser for all costs and expenses as they are incurred, in connection with investigating, preparing for, defending or appealing any action, formal or informal claim, investigation, inquiry or other proceeding, whether or not in connection with pending or threatened litigation, caused by or arising out of or in connection with Purchaser's ownership of the Formula One Investment, whether or not it is named as a party thereto and whether or not any liability results therefrom.  Seller will not be responsible for any claims, liabilities, losses, damages or expenses pursuant to this <u>Section 10</u> that have resulted primarily from Purchaser's bad faith, gross negligence or willful misconduct.  Seller further agrees that it shall not, without the prior written consent of Purchaser, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not Purchaser is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Purchaser from all liability arising out of such claim, action, suit or proceeding.  SELLER HEREBY ACKNOWLEDGES THAT THE FOREGOING INDEMNITY SHALL BE APPLICABLE TO ANY CLAIMS, LIABILITIES, LOSSES, DAMAGES OR EXPENSES THAT HAVE RESULTED FROM OR ARE ALLEGED TO HAVE RESULTED FROM THE ACTIVE OR PASSIVE OR THE SOLE, JOINT OR CONCURRENT ORDINARY NEGLIGENCE OF PURCHASER.

11.    <u>MISCELLANEOUS</u>.

11.1    <u>Assurance of Further Action</u>.  From time to time after the Closing and without further consideration from Purchaser, but at Purchaser's sole expense, Seller shall execute and deliver to Purchaser such further instruments of contribution, conveyance, assignment, transfer and delivery and take such other action as Purchaser may reasonably request in order to more effectively consummate the Purchase as contemplated herein.

11.2    <u>Waiver</u>.  Purchaser, on the one hand, and Seller, on the other hand, may by written notice to the other party hereto, if signed by such other party hereto:  (i) extend the time for or waive or modify the performance of any of the obligations or other acts of such other party hereto; or (ii) waive any inaccuracies in the representations and warranties contained in this Agreement.

11.3    <u>Notices</u>.  All notices hereunder to any party shall be in writing and shall be deemed to have been given and received when (i) delivered personally (against receipt), (ii) received by certified or registered mail, return receipt requested, postage prepaid, or (iii) sent by facsimile transmission upon receipt confirmed, in each case at the respective address or facsimile number for such party set forth below or at such other address or facsimile number as the intended recipient may specify in a notice pursuant to this <u>Section 11.3</u>.

- 7 -

If to Seller:

> Lehman Brothers Commercial Paper Inc.
> 399 Park Avenue (9th Floor)
> New York, NY 10022
> Attention: Ashvin B. Rao, Esq.
> Fax: 646-834-4769

If to Purchaser:

> LB I Group Inc.
> 399 Park Avenue (9th Floor)
> New York, NY 10022
> Attention: Ashvin B. Rao, Esq.
> Fax: 646-834-4769

11.4    Entire Agreement; Amendments.   This Agreement, together with the Exhibit hereto (which are incorporated herein), contains the entire agreement between the parties with respect to the transactions contemplated herein, supersedes all prior written agreements, negotiations and term sheets and all prior and contemporaneous oral understandings, if any, and may not be amended, supplemented or discharged except by an instrument in writing signed by authorized representatives of each of the parties.

11.5    Rights Under this Agreement; Assignability.  This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns, but shall not be assignable by any party without the prior written consent of the other party.

11.6    GOVERNING LAW; SUBMISSION TO JURISDICTION; CONSENT TO SERVICE OF PROCESS; WAIVER OF JURY TRIAL.

11.6.1 THIS AGREEMENT, AND ALL CLAIMS OR CAUSES OF ACTION (WHETHER IN CONTRACT OR TORT) THAT MAY BE BASED UPON, ARISE OUT OF OR RELATE TO THIS AGREEMENT (INCLUDING ANY AMENDMENT, SUPPLEMENT OR WAIVER OF THIS AGREEMENT), OR THE NEGOTIATION, EXECUTION OR PERFORMANCE OF THIS AGREEMENT (INCLUDING ANY AMENDMENT, SUPPLEMENT OR WAIVER OF THIS AGREEMENT) AND THE TRANSACTIONS CONTEMPLATED HEREBY, SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK.

11.6.2 EACH OF THE PARTIES:

11.6.2.1   SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED WITHIN THE BOROUGH OF MANHATTAN OF THE CITY, COUNTY AND STATE OF NEW YORK OVER ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS

CONTEMPLATED HEREBY, AND AGREES THAT ALL CLAIMS IN RESPECT OF SUCH DISPUTE OR ANY SUIT, ACTION OR PROCEEDING RELATED THERETO MAY BE HEARD AND DETERMINED IN SUCH COURTS, PROVIDED, HOWEVER, THAT DURING THE PENDENCY OF THE BANKRUPTCY CASE AND UPON CLOSING OF THE BANKRUPTCY CASE, TO THE EXTENT PERMITTED BY ORDER OF THE BANKRUPTCY COURT, THE BANKRUPTCY COURT SHALL HAVE AND RETAIN EXCLUSIVE JURISDICTION TO ENFORCE THE TERMS OF THIS AGREEMENT AND TO DECIDE ANY CLAIMS OR DISPUTES WHICH MAY ARISE OR RESULT FROM, OR BE CONNECTED WITH, THIS AGREEMENT, ANY BREACH OR DEFAULT HEREUNDER, OR THE TRANSACTIONS CONTEMPLATED HEREBY;

11.6.2.2    WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION WHICH SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH DISPUTE BROUGHT IN SUCH COURT OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE;

11.6.2.3    AGREES THAT A JUDGMENT IN ANY SUCH DISPUTE MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW;

11.6.2.4    IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY LEGAL PROCEEDINGS ARISING OUT OF OR RELATED TO THIS AGREEMENT; AND

11.6.2.5    CONSENTS TO PROCESS BEING SERVED BY ANY PARTY.

11.7    Headings; References to Sections, Exhibits and Schedules.  The headings of the Sections, paragraphs and subparagraphs of this Agreement are solely for convenience and reference and shall not limit or otherwise affect the meaning of any of the terms or provisions of this Agreement.  The references herein to Sections and Exhibits, unless otherwise indicated, are references to sections and exhibits to this Agreement.

11.8    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

LEHMAN COMMERCIAL PAPER INC.

By: _____
    Name:
    Title:

LB I GROUP INC.

By: _____
    Name:
    Title:

## **Exhibit A**

Consulting Agreement

(See attached.)

**EXHIBIT B**

_____, 2009

Mr. Peter Sherratt
[Address]

<u>Consulting Agreement</u>

Dear Sirs:

  This letter agreement (the "<u>Agreement</u>") sets forth the agreement between the parties hereto with respect to the board and consulting services to be provided by Mr. Peter Sherratt ("<u>Mr. Sherratt</u>") to LB I Group Inc. ("<u>LB I Group</u>"), an indirect, wholly owned subsidiary of Lehman Brothers Holdings Inc. ("<u>LBHI</u>").  LB I Group owns shares in Delta Topco Limited and Delta Prefco Limited (together, the "<u>Companies</u>") and notes in Delta Topco Limited that were transferred to it by Lehman Commercial Paper Inc., an indirect, wholly-owned subsidiary of LBHI ("<u>LCPI</u>") on the date hereof pursuant to that certain Purchase Agreement, dated as of the date hereof, by and between LCPI as seller, and LB I Group, as purchaser (the "<u>Purchase Agreement</u>").  In connection with the transactions contemplated by the Purchase Agreement, LB I Group desires to engage Mr. Sherratt to provide board and consulting services in connection with LB I Group's investment in the Companies, and LCPI agrees to be party to this Agreement for the purposes set forth herein.

  1. <u>Consulting Services</u>.  LB I Group hereby acknowledges that it has retained Mr. Sherratt to, and Mr. Sherratt acknowledges that Mr. Sherratt will serve as a member of the boards of directors of the Companies (the "<u>Boards</u>") and provide consulting services in connection with LB I Group's investment in the Companies to LB I Group.  LB I Group and Mr. Sherratt agree Mr. Sherratt will devote such of his business time and efforts to providing the consulting services as is reasonably requested by LB I Group during the term of this Agreement.  Mr. Sherratt shall share information regarding the Companies he receives in his capacity as a member of the Boards with representatives of LB I Group that have been designated by LB I Group to the Companies as well as to LB I Group's attorneys, accountants and other advisors on an as needed basis.

  2. <u>Board and Consulting Fees</u>.  As compensation for Mr. Sherratt's membership on the Boards and the consulting services provided to LB I Group pursuant to <u>Section 1</u> of this Agreement, Mr. Sherratt shall be paid an hourly fee (the "<u>Consulting Fees</u>") in the amount of £500.00 per hour.  Mr. Sherratt will submit to LB I Group, with a copy to LCPI, on a monthly basis, a written report reflecting in reasonable detail a description of the services provided by Mr. Sherratt under this Agreement during the preceding month together with the number of hours of services performed in respect of such services (the "<u>Services Report</u>").  The Consulting Fees payable hereunder in respect of services performed during any month shall be payable, in arrears, within ten business

days after receipt of the Services Report in respect of such month.  All payments will be made by check or by wire transfer of immediately available funds to the account or accounts of Mr. Sherratt designated in writing for such purpose.  Notwithstanding anything the contrary contained herein, all Consulting Fees, Reimbursable Expenses (as hereinafter defined), and other financial obligations or liabilities hereunder shall be borne by LCPI, and Mr. Sherratt shall look solely to LCPI for payment of or in respect of any such amounts or liabilities.

3.      Reimbursement of Expenses.  In addition to the compensation to be paid pursuant to Section 2 hereof, Mr. Sherratt shall be reimbursed as promptly as practicable following demand therefor, together with invoices or reasonably detailed descriptions thereof, for all reasonable out-of-pocket expenses incurred by Mr. Sherratt in connection with the performance by him of the services contemplated by Section 1 hereof (the "Reimbursable Expenses"); provided, however, that payment of any Reimbursable Expenses in excess of £10,000.00 in the aggregate per quarter is subject to approval by LCPI in its sole discretion.

4.      Term.  This Agreement shall have an initial term of one year, thereafter shall automatically renew for successive one-year periods until terminated by Mr. Sherratt upon not less than ninety (90) days written notice to LB I Group and LCPI; provided, however, that LB I Group and LCPI may terminate the this Agreement for any reason upon thirty (30) days' written notice to Mr. Sherratt.  Upon termination of this Agreement, LCPI shall pay to Mr. Sherratt as soon as practicable after such termination, any unpaid Consulting Fees and Reimbursable Expenses hereunder, and LCPI shall have no further obligation to pay Mr. Sherratt any other amounts pursuant to this Agreement. Notwithstanding the termination of this agreement, the provisions in Section 5 and Section 7 shall survive in accordance with their terms.

5.      Confidentiality.  Mr. Sherratt shall not, during the term of this Agreement or at any time thereafter, directly or indirectly, disclose, reveal, divulge or communicate to any person other than authorized officers, directors and employees of LB I Group or LCPI any Confidential Information (as defined below).  Mr. Sherratt shall not have any obligation to keep confidential any Confidential Information if and to the extent disclosure thereof is specifically required by applicable law; provided, however, that in the event disclosure is required by applicable law, Mr. Sherratt shall, to the extent reasonably possible, provide LB I Group with prompt notice of such requirement prior to making any disclosure so that LB I Group may seek an appropriate protective order. Promptly upon termination, for any reason, of this Agreement, Mr. Sherratt agrees to deliver to LB I Group all property and materials within Mr. Sherratt's possession or control which belong to LB I Group which contain Confidential Information.

"Confidential Information" means any information with respect to the Companies and LB I Group's investment in the Companies, including methods of operation, customer lists, products, prices, fees, costs, technology, formulas, inventions, trade secrets, know-how, software, marketing methods, plans, personnel, suppliers, competitors, markets, financial information or other specialized information or proprietary matters; provided, that, there

shall be no obligation hereunder with respect to, information that (i) is generally available to the public on the date hereof or (ii) becomes generally available to the public other than as a result of a disclosure not otherwise permissible hereunder.

6.      Remedies.  It is specifically understood and agreed that any breach of the provisions of Section 5 of this Agreement are likely to result in irreparable injury to LB I Group and LCPI and that the remedy at law alone will be an inadequate remedy for such breach, and that in addition to any other remedy they may have, LB I Group and LCPI shall be entitled (a) to enforce the specific performance of this Agreement by Mr. Sherratt and to seek both temporary and permanent injunctive relief (to the extent permitted by law) without bond and without liability should such relief be denied, modified or violated and (b) to cease making any payments or providing any benefit otherwise required by this Agreement, in each case in addition to any other remedy to which LB I Group or LCPI may be entitled at law or in equity.

7.      Indemnification.  LCPI shall indemnify and hold harmless Mr. Sherratt from and against any and all claims, liabilities, losses, damages and expenses incurred by him which (A) are related to or arise out of (i) actions taken or omitted to be taken by LCPI or LB I Group or (ii) actions taken or omitted to be taken by Mr. Sherratt with LCPI's or LB I Group's consent or in conformity with LCPI's or LB I Group's instructions or LCPI's or LB I Group's actions or omissions or (B) are otherwise related to or arise out of Mr. Sherratt's engagement hereunder, and will reimburse Mr. Sherratt for all costs and expenses as they are incurred, in connection with investigating, preparing for, defending or appealing any action, formal or informal claim, investigation, inquiry or other proceeding, whether or not in connection with pending or threatened litigation, caused by or arising out of or in connection with Mr. Sherratt's actions pursuant to his engagement hereunder, whether or not he is named as a party thereto and whether or not any liability results therefrom; provided, however, that Mr. Sherratt must first pursue any rights to indemnification by the Companies that he may have under the Companies' organizational documents or under other contractual or common law before seeking indemnification hereunder.  LCPI will not be responsible for any claims, liabilities, losses, damages or expenses pursuant to clause (B) of this Section 7 that have resulted primarily from Mr. Sherratt's bad faith, gross negligence or willful misconduct. LCPI also agrees that Mr. Sherratt shall not have any liability to LCPI for or in connection with such engagement except for any such liability for claims, liabilities, losses, damages or expenses incurred by LCPI that have resulted primarily from Mr. Sherratt's bad faith, gross negligence or willful misconduct.  LCPI further agrees that it shall not, without the prior written consent of Mr. Sherratt, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not Mr. Sherratt is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Mr. Sherratt from all liability arising out of such claim, action, suit or proceeding.  **LCPI HEREBY ACKNOWLEDGES THAT THE FOREGOING INDEMNITY SHALL BE APPLICABLE TO ANY CLAIMS, LIABILITIES, LOSSES, DAMAGES OR**

**EXPENSES THAT HAVE RESULTED FROM OR ARE ALLEGED TO HAVE RESULTED FROM THE ACTIVE OR PASSIVE OR THE SOLE, JOINT OR CONCURRENT ORDINARY NEGLIGENCE OF MR. SHERRATT.**

The foregoing right to indemnity shall be in addition to any rights that Mr. Sherratt may have at common law or otherwise and shall remain in full force and effect following the completion or any termination of the engagement.  Furthermore, the indemnity obligations of LCPI herein will be treated as administrative claims in LCPI's bankruptcy proceedings under title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "<u>Bankruptcy Case</u>").

8.    <u>Amendments and Waivers</u>.  This Agreement may not be amended except by an instrument in writing signed by each party hereto.  The party entitled to the benefit of a provision hereof may waive compliance with such provision only in a written instrument signed by such party.

9.    <u>Assignment</u>.  This Agreement and all provisions contained herein shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns; <u>provided</u>, <u>however</u>, neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties without the prior written consent of the other parties; provided, further, however, that LB I Group may assign its rights and/or obligations hereunder at an time to any affiliate of LB I Group or LBHI.

10.    <u>Notices</u>.  All notices hereunder, to be effective, shall be in writing and shall be deemed effective when delivered by hand or mailed by (a) certified mail, postage and fees prepaid, or (b) nationally recognized overnight express mail service, as follows:

If to LCPI:

Lehman Commercial Paper Inc.
399 Park Avenue (9th Floor)
New York, NY 10022
Attention: Ashvin B. Rao, Esq.
Fax: 646-834-4769

If to LB I Group:

LB I Group Inc.
399 Park Avenue (9th Floor)
New York, NY 10022
Attention: Ashvin B. Rao, Esq.
Fax: 646-834-4769

If to Mr. Sherratt:

4

[Address]

or to such other address as a party may notify the other pursuant to a notice given in accordance with this <u>Section 9</u>.

11.     <u>GOVERNING LAW; SUBMISSION TO JURISDICTION; CONSENT TO SERVICE OF PROCESS; WAIVER OF JURY TRIAL</u>..  THIS AGREEMENT, AND ALL CLAIMS OR CAUSES OF ACTION (WHETHER IN CONTRACT OR TORT) THAT MAY BE BASED UPON, ARISE OUT OF OR RELATE TO THIS AGREEMENT (INCLUDING ANY AMENDMENT, SUPPLEMENT OR WAIVER OF THIS AGREEMENT), OR THE NEGOTIATION, EXECUTION OR PERFORMANCE OF THIS AGREEMENT (INCLUDING ANY AMENDMENT, SUPPLEMENT OR WAIVER OF THIS AGREEMENT) AND THE TRANSACTIONS CONTEMPLATED HEREBY, SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK.

(a)     EACH OF THE PARTIES:

(i)     SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED WITHIN THE BOROUGH OF MANHATTAN OF THE CITY, COUNTY AND STATE OF NEW YORK OVER ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, AND AGREES THAT ALL CLAIMS IN RESPECT OF SUCH DISPUTE OR ANY SUIT, ACTION OR PROCEEDING RELATED THERETO MAY BE HEARD AND DETERMINED IN SUCH COURTS, PROVIDED, HOWEVER, THAT DURING THE PENDENCY OF THE BANKRUPTCY CASE AND UPON CLOSING OF THE BANKRUPTCY CASE, TO THE EXTENT PERMITTED BY ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (THE "<u>BANKRUPTCY COURT</u>"), THE BANKRUPTCY COURT SHALL HAVE AND RETAIN EXCLUSIVE JURISDICTION TO ENFORCE THE TERMS OF THIS AGREEMENT AND TO DECIDE ANY CLAIMS OR DISPUTES WHICH MAY ARISE OR RESULT FROM, OR BE CONNECTED WITH, THIS AGREEMENT, ANY BREACH OR DEFAULT HEREUNDER, OR THE TRANSACTIONS CONTEMPLATED HEREBY;

(ii)     WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION WHICH SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH DISPUTE BROUGHT IN SUCH COURT OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE;

(iii)     AGREES THAT A JUDGMENT IN ANY SUCH DISPUTE MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW;

(iv)    IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY LEGAL PROCEEDINGS ARISING OUT OF OR RELATED TO THIS AGREEMENT; AND

(v)    CONSENTS TO PROCESS BEING SERVED BY ANY PARTY.

12.    Severable Provisions.  The provisions of this Agreement are severable and the invalidity of any one or more provisions shall not affect the validity of any other provision.  In the event that a court of competent jurisdiction shall determine that any provision of this Agreement or the application thereof is unenforceable in whole or in part because of the duration or scope thereof, the parties hereto agree that said court in making such determination shall have the power to reduce the duration and scope of such provision to the extent necessary to make it enforceable, and that the Agreement in its reduced form shall be valid and enforceable to the full extent permitted by law.

13.    Independent Contractor.  In the performance of the services hereunder, Mr. Sherratt shall be deemed to be, and shall be, an independent contractor, and not a joint venturer, partner, employee or agent with or of LCPI or LB I Group and accordingly, shall not be entitled to any vacation pay, sick leave, disability or life insurance, retirement benefits, social security, workers' compensation benefits or other employee benefits of any kind.  Mr. Sherratt shall be fully and solely responsible and liable for any and all state and federal income taxes or other taxes due in respect of the compensation paid to him hereunder by LCPI.

14.    Other Understandings.  All discussions, understandings and agreements heretofore made between the parties hereto with respect to the subject matter hereof are merged in this Agreement, which alone fully and completely expresses the agreement of the parties hereto.

15.    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and the signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

_____

Peter Sherratt

LEHMAN COMMERCIAL PAPER INC.

By: _____
Name:
Title:

LB I GROUP INC.

By: _____
Name:
Title:

**EXHIBIT C**

**Lehman Commercial Paper Inc.**

June [●], 2009

Delta Topco Limited
Delta Prefco Limited
c/o CVC Capital Partners Limited
111 Strand
London
WC2R OAG

Attn: Donald Mackenzie, Nick Clarry and Tim Gallico

Re: Delta Topco Limited and Delta Prefco Limited (together, the "**Companies**")

Ladies and Gentlemen:

In response to your letter dated March 25, 2009, to Lehman Brothers Commercial Paper Inc. ("**LCPI**"), LCPI agrees that it will nominate Peter Sherratt as a member of the board of directors of each of the Companies (the "**Boards**") in accordance with Section 10.4(b) of the Investment and Shareholders Agreements of each of the Companies (the "**ISAs**"), subject to the Companies' agreement, by execution of this Deed in the space provided below, to the following:

(a)     each of the Companies will appoint, or cause to be reappointed, Mr. Sherratt as a member of its Board upon the written request of LCPI or LB I Group (as defined below), whether before or after the Transfers (as defined below), to serve until the earliest of (i) such time as LCPI or LB I Group notifies the Companies in writing; (ii) Mr. Sherratt's death, disability or resignation and (iii) LCPI and LB I Group no longer owning collectively at least 10% of the issued shares of that Company;

(b)     the Companies hereby consent to (i) the transfer by LCPI of all (but not some only) of (A) LCPI's shares in the Companies (the "**Shares**") and (B) the Loan Notes and the Pik Notes (each, as defined in the Loan Note Instrument, dated November 24, 2006, as amended on September 18, 2008 (the "**Loan Note Instrument**") of Delta Topco Limited to LB I Group Inc. ("**LB I Group**") (the "**Transfers**") and (ii) concurrently with the Transfers, the grant by LB I Group of a security interest in all of LB I Group's right, title and interest in and to the Shares, the Loan Notes and the Pik Notes to LCPI, provided that LB I Group shall first have executed a Deed of Adherence to, and in the form required by, each of the ISAs, and delivered them to the Companies;

(c)     for the purposes of the Transfers <u>only</u>, the Companies hereby waive the forced transfer provisions of the Articles of Association of the Companies and the Loan Note Instrument to the extent they may apply to the equity or debt interests held by LCPI. For the avoidance of doubt, LCPI and LB I Group agree that the aforementioned forced transfer provisions shall apply following the Transfers and that this waiver is limited to the current circumstances of LCPI and LB I Group;

(d)     the Companies consent to the sharing by Mr. Sherratt with the representatives of LCPI (LB I Group following the Transfers) listed on **Schedule A**, which list LCPI

(LB I Group following the Transfers) may modify from time to time with the consent of the Companies (such consent not to be unreasonably withheld) and on an as-needed basis only, LCPI's (LB I Group's following the Transfers) attorneys, any information regarding the Companies he may receive in his capacity as a director; **provided** that LCPI (LB I Group following the Transfers) acknowledges that any such information shall be subject to the confidentiality provisions of Clause 15 of the ISAs in accordance with their respective terms, and for these purposes LB I Group shall be responsible for procuring compliance with such confidentiality restrictions by each of the persons listed in Schedule A and by LCPI's attorneys; and

(e)     the Companies will take such action as is reasonably necessary to amend that certain draft Confidentiality Agreement, dated as of May _____, 2006, by and between Mr. Sherratt and Alpha Topco Limited in order to permit the actions contemplated by clause (d) above, and it shall be a condition of Mr. Sherratt's appointment or re-appointment that he executes the same.

LCPI and LB I Group hereby agree that all of their rights to appoint a director to the boards of the Companies, whether pursuant to the Articles of Association of the Companies or the ISAs, are irrevocably waived and released in their entirety, (but without affecting their rights under this Deed); **provided**, **however**, that in the event Mr. Sherratt is no longer able to serve as a member of the Boards due to death, incapacity, resignation or otherwise, LB I Group shall during such time as Mr. Sherratt is not able to serve on the Boards, and for as long as it satisfies the requirements of clause 10.4(b) of the ISAs be entitled to nominate either one of the other members of the Boards at such time, or a third party if mutually agreed between the parties, to be its representative, and during such time, the Companies shall provide LB I Group with such information and materials as are provided to other Investors pursuant to clause 14 of the ISAs.

The parties to this Deed agree that Section 1, Section 5 and Section 7 of those certain side letters dated on or around 23 May 2006 and 24 November 2006 and addressed by the CVC Funds to LCPI (the "**Side Letters**") shall lapse and cease to have effect upon completion of the Transfers, and LB I Group has and shall have no rights or obligations under Section 1, Section 5 or Section 7 of the Side Letters. The remaining provisions of the Side Letters shall remain in full force and effect and shall be assigned to LB I Group upon consummation of the Transfers. The CVC Funds may enforce this provision against LCPI and LB I Group.

LCPI and LB I Group request that the Companies acknowledge their agreement to the foregoing by executing this Deed in the space provided below.

Very truly yours,

**EXECUTED** and **DELIVERED**                                    )
as a **DEED** by LEHMAN BROTHERS COMMERCIAL PAPER INC    )
acting by Jack McCarthy, authorised signatory in the presence    )
of :                                                             )

Witness-          Signature:        …………………………………

                  Name:             …………………………………

                  Address:          …………………………………

**EXECUTED** and **DELIVERED**                                    )
as a **DEED** by LB I GROUP INC                                    )
acting by Jack McCarthy, authorised signatory in the presence    ).
of :                                                              )


Witness-                        Signature:        …………………………………

                                Name:             …………………………………

                                Address:          …………………………………

Accepted and agreed as of the date first above written:

| | | |
|---|---|---|
| **EXECUTED** and **DELIVERED** | ) | |
| as a **DEED** by Delta Topco Limited | ) | |
| acting by a director in the presence | ) | ……………………………… |
| of : | ) | Director |

Witness-            Signature:        ………………………………

Name:            ………………………………

Address:        ………………………………

| | | |
|---|---|---|
| **EXECUTED** and **DELIVERED** | ) | |
| as a **DEED** by Delta Prefco Limited | ) | |
| acting by a director in the presence | ) | ……………………………… |
| of : | ) | Director |

Witness-            Signature:        ………………………………

Name:            ………………………………

Address:        ………………………………

**Schedule A**

Jack McCarthy, Jr.
Andrew Grapkowski
Sumit Bhandari
Jason Cohen

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                    :          **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,             :          **08-13555 (JMP)**
                                                         :
                                    **Debtors.**         :          **(Jointly Administered)**
-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014 APPROVING THE SALE OF ORDINARY SHARES AND NOTES ISSUED BY DELTA TOPCO LIMITED AND ORDINARY SHARES ISSUED BY DELTA PREFCO LIMITED AND RELATED RELIEF

Upon the motion, dated June 23, 2009 (the "Motion"),[1] of Lehman Commercial

Paper Inc. ("LCPI"), as debtor in possession (collectively with Lehman Brothers Holdings Inc. and

its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors"), pursuant to sections

105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014 for entry of an order

approving the sale (the "Proposed Sale") of ordinary shares and notes issued by Delta Topco

Limited and ordinary shares issued by Delta Prefco Limited pursuant to the Purchase Agreement

with LB I Group Inc. (the "Purchaser") and related relief, as more fully described in the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy

Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July

10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the order entered February 13, 2009

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

governing case management and administrative procedures [Docket No. 2837]; and a reasonable opportunity to object or be heard regarding the Motion and Proposed Sale having been afforded to all such parties; and it appearing that no other or further notice need be provided; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

FURTHER FOUND AND DETERMINED THAT:

1.    The entry into the Letter Agreement, the Sale Agreement and the Consulting Agreement would be an exercise of LCPI's reasonable business judgment. LCPI has shown good and sufficient business justification under sections 105(a), 363(b) and (l) of the Bankruptcy Code for the Proposed Sale outside a plan of reorganization.

2.    The relief sought in the Motion is in the best interests of LCPI, its estate and creditors, and all parties in interest.

3.    The ultimate consideration to be paid by the Purchaser (i) is fair and reasonable; (ii) provides for a recovery for the LCPI's creditors equal to or greater than would be provided by the available alternative; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and non-bankruptcy law.

4.    Neither LCPI nor the Purchaser have engaged in conduct that would prevent the application of section 363(m) of the Bankruptcy Code or permit the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code. Consequently, the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby.

NOW, THEREFORE, IT IS HEREBY:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, the Proposed Sale is approved and LCPI is authorized to consummate all of the transactions contemplated thereby, including, but not limited to, entering into a Letter Agreement, substantially in the form attached to the Motion as Exhibit C, and a Sale Agreement substantially in the form attached to the Motion as Exhibit A; and it is further

ORDERED that LCPI is authorized to enter into a Consulting Agreement substantially in the form attached to the Motion as Exhibit B and pay the fees and provide the indemnity, in each case as set forth in the Consulting Agreement, in exchange for services performed thereunder, and such fees and indemnification obligations shall be entitled to administrative priority in LCPI's chapter 11 case; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, LCPI's right, title, and interest in and to the Formula One Investment shall be sold to Purchaser free and clear of any and all liens, claims, and encumbrances; provided, however, that the foregoing shall not apply to any security interest provided to LCPI in connection with the consideration for the Proposed Sale; and it is further

ORDERED that the Purchaser is a good faith purchaser and is granted the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code and consummation of the Sale Agreement shall not be affected by reversal or modification on any appeal of this Order; and it is further

ORDERED that LCPI is authorized to perform all obligations under the Letter Agreement, the Sale Agreement and the Consulting Agreement and to execute such other documents and take such other actions as may be necessary or appropriate to effectuate the Letter Agreement, the Sale Agreement and the Consulting Agreement and the provisions of this Order; and it is further

ORDERED that nothing in this Order or in the Sale Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statues or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order, or (ii) should be construed to give the Purchaser any more protection against any government unit than it is otherwise entitled to under 11 U.S.C. § 363(f)(1), (3), (4), or (5).  Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law; and it is further

ORDERED that each and every federal, state, and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order; and it is further

ORDERED that any stay imposed by Bankruptcy Rule 6004(h) is hereby waived and this Order shall be immediately effective and enforceable; and it is further

ORDERED that that this Court shall retain jurisdiction to interpret and enforce this Order.

Dated: July __, 2009
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE