Hearing Date and Time: June 29, 2009 at 2:00 p.m. (Prevailing Eastern Time)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Sean A. O'Neal

*Attorneys for Banco Bilbao Vizcaya Argentaria, S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                              :
**In re**                                     :   **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :   **08-13555 (JMP)**
                                              :
       **Debtors.**                           :    **(Jointly Administered)**
                                              :
                                              :
------------------------------------------------------------------x

**SUPPLEMENT TO THE OBJECTION OF BANCO BILBAO VIZCAYA ARGENTARIA, S.A. TO THE DEBTORS' BAR DATE MOTION RELATING TO THE PUBLICATION OF THE MASTER LIST OF SECURITIES ON JUNE 25, 2009**

Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA"), by and through its undersigned counsel, hereby submits this supplement to its previously filed objection (the "Supplemental Objection") to the Motion Of The Debtors, Pursuant To Section 502(B)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(C)(3), For Establishment Of The Deadline For Filing Proofs Of Claim, Approval Of The Form And Manner Of Notice Thereof And Approval Of The Proof Of Claim Form (the "Bar Date Motion"), dated June 11, 2009 [D.I. 3654]. In support of this Supplemental Objection,[1] BBVA respectfully states as follows:

---

[1] Counsel to BBVA has been in discussions with various parties in interest, including counsel to the Creditors Committee, concerning the issues raised in this Supplemental Objection and is hopeful that a consensual resolution will be reached. This Supplemental Objection has been filed to preserve BBVA's rights in the event a resolution is not reached.

## SUMMARY OF REQUEST FOR RELIEF

1. The Bar Date Motion, filed on May 26, 2009, led bondholders around the world to believe that they would not have to file proofs of claims, because their bonds would be listed on a Master List of Securities (which they could ask the Debtors to correct in case of errors). However, on June 25, 2009, the Debtors released the Master List of Securities for the first time, which indicated that thousands of bondholders inside and outside of the United States might need to file proofs of claim in these bankruptcy proceedings.

2. The June 25 list posted by the Debtors on their website omitted billions of dollars of bonds that were issued under fiscal agency agreements, rather than indentures. This last minute change by the Debtors is no minor administrative matter. When bonds are issued under an indenture, the indenture trustee can file a proof of claim on behalf of all holders. When bonds are issued under fiscal agency agreements, there is no trustee to represent holders' interests. This means that thousands of bondholders around the world need to file proofs of claim. Many small bondholders, especially those outside the United States will not know how to do this (or even that they need to do this) and will not file claims at all.

3. These bonds are held through a multi-layer system of banks, brokers and other intermediaries, governed by the laws of multiple jurisdictions. Determining who is authorized to file proofs of claim is no simple task. Given the uncertainty, it is likely that multiple parties will file duplicative claims in respect of the same bonds. In addition, Sorting out duplicate claims will take many months or more, and will use resources that should be devoted to the orderly resolution of this bankruptcy proceeding.

4. There is a simple solution. The Debtors should be required to prepare a reasonably inclusive Master List of Securities (as their affiliates around the world have done).

They can do so without "allowing" the underlying claims or otherwise prejudicing their right to raise substantive defenses and objections to such claims. What is essential at this stage is to avoid spending months and valuable resources in a complex identification process that can easily be avoided and provides no benefit to the estates.

## BACKGROUND

5.  Debtors' Bar Date Motion listed among the persons or entities that are **not** required to file a Proof of Claim on or before the Bar Date "any holder of a security listed on the Master List of Securities available on the Debtors' website http://www.lehman-docket.com (the "Master List of Securities")" (see Paragraph 14(h) of the Bar Date Motion). The Bar Date Motion also outlined a process by which holders of any security not listed on the Master List of Securities could request the inclusion of such security on the Master List of Securities (see Paragraph 15 of the Bar Date Motion). As a result, BBVA reasonably believed that holders of debt securities issued or guaranteed by the Debtors would not have to file proofs of claim or complete the guarantee questionnaire proposed in the Bar Date Motion (the "Guarantee Questionnaire").

6.  Nearly identical language was contained in the proposed bar date order (the "Bar Date Order") attached to the May 26 Bar Date Motion, at page 4 subparagraph (k). The same language appeared in the draft proof of claim form (the "Proof of Claim Form") included with the May 26 Bar Date Motion (see subparagraph (8) under the heading "Who Need Not File A Proof of Claim"). Debtors' Omnibus Response filed on June 23 included a revised Bar Date Order and Proof of Claim Form, neither of which changed the substance of these provisions (although the Debtors for the first time stated that the Master List of Securities was intended to cover only securities where holders are represented by indenture trustees).

7. The Master List of Securities was published on the Debtors' website on June 25, 2009. This Master List of Securities includes securities issued under a single program in respect of which Wilmington Trust Company acts as indenture trustee, as well as a very small number of bonds in respect of which US Bancorp acts as indenture trustee. The list omits literally hundreds of billions of dollars of securities (collectively, the "Omitted Securities").

8. Like many global financial institutions, BBVA holds millions of dollars of securities issued by the Debtors, for its own account, the account of its affiliates, and the account of hundreds of its customers and those of its affiliates. All or substantially all of the securities of the Debtors held by BBVA and its affiliates were issued under fiscal agency agreements, and therefore there is no indenture trustee to represent the holders of such securities or to file proofs of claim in respect thereof.[2]

## ARGUMENT

9. If the Omitted Securities are not added to the Master List of Securities (and properly identified by ISIN number in the Master List of Securities), BBVA and other financial institutions (and their customers) will face the undue burden of collecting and submitting the documentation required for a proof of claim in this bankruptcy proceeding, which, for the reasons described below, would be substantial.

10. This process will be made vastly complex because it is often unclear who is entitled to file proofs of claims for the Omitted Securities. They are generally held through a chain of domestic and international clearing systems, banks and brokers, nominees, asset managers and other financial intermediaries, with the ultimate owner often found only five, six

---

[2] Many of the securities held by BBVA were issued by Lehman Brothers Holdings Inc. ("LBHI") or its affiliates under their $100 billion dollar European Medium Term Note Program (the "EMTN Program"). The securities issued by affiliates under the EMTN Program were guaranteed by LBHI. None of these securities is listed in the Master List of Securities.

or more steps down the chain. Accordingly, for many holders of Omitted Securities, it is likely that multiple parties in the chain will file proofs of claim (and in most cases each such party will have a strong argument that it is legally authorized to do so – sometimes more than one party will in fact be authorized). The Debtors will be required to spend valuable time and resources sorting through the duplicative claims.

11. Many of the Omitted Securities were issued by affiliates of LBHI, and are guaranteed by LBHI. In those cases, unless the relief requested hereby is granted, holders will have to complete the Guarantee Questionnaire, as well as filing a proof of claim. In addition to the fact that this is likely to overload the Guarantee Questionnaire system, it may cause substantial harm to a large number of holders of guaranteed Omitted Securities, who do not have access to the documents necessary to complete the Guarantee Questionnaire. In most cases, these holders only received an offering prospectus at the time of their investment, but they did not receive a copy of the guarantee itself (consistent with market practice). In theory, a copy is available from the fiscal agent, but in practice it may be very difficult for holders to obtain such a copy. Even if the holders somehow obtain a copy of the guarantees, the result will be that thousands of them will file copies of the same documents.

12. Such burdens and inefficiencies could be easily avoided if the Debtors were to provide a reasonably inclusive Master List of Securities. Unless the Debtors do so: (i) BBVA (and other financial institutions worldwide) will incur significant burdens and expense in reconciling and preparing the information necessary to file proofs of claim, (ii) the Debtors are likely to receive thousands of claims, many duplicative, from investors, asset managers and intermediaries who are all legally authorized to file proofs of claim (creating a burden on the Debtors and possibly prolonging the time necessary to administer the bankruptcy case), and

(iii) many customers of financial institutions worldwide will be effectively deprived of their claims because they may not understand the burdensome process for filing claims.

13.  Preparing a reasonably inclusive Master List of Securities would not impose a significant burden on the Debtors (international affiliates of the Debtors have already done so in connection with foreign insolvency proceedings),[3] particularly when compared to the burden on creditors resulting from the omission of billions of dollars of securities, and the burden that the Debtors will bear in reconciling duplicative claims.  Furthermore, requiring the Debtors to prepare a more inclusive Master List of Securities need not delay the approval of a bar date order.

14.  Listing the Omitted Securities on the Master List of Securities would not have to deprive the Debtors of any substantive rights.  It would simply serve to identify the Omitted Securities in a manner that will be much more efficient than requiring thousands of creditors around the globe to file proofs of claim (and complete the Guarantee Questionnaire). The Debtors could reserve their rights to object to claims of such holders, perhaps using the same notification process they intended to use to notify holders of the bar date or using the process that is commonly used outside bankruptcy to make distributions or circulate notices to beneficial owners.  In fact, given the clearinghouse system, there is no need for the Debtors to know the identity of the bondholders in order to provide bankruptcy-related notices or object to claims relating to the affected bonds.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, BBVA respectfully requests that this Court (i) require LBHI to make a good faith attempt to include all debt securities issued or

---

[3] For example, as demonstrated by the following website link, Lehman Brothers Treasury Co. B.V. ("LBTCBV"), a Netherlands finance subsidiary of LBHI, has taken this approach: http://www.lehmanbrotherstreasury.com/pdf/english/081509%20List%20LBT%20ISIN%20codes.pdf).

guaranteed by any Debtor (particularly securities issued by LBHI's affiliates that were guaranteed by LBHI) on a revised Master List of Securities, regardless of whether the holders are represented by indenture trustees, (ii) exempt any holder of securities (including guaranteed securities) on the revised Master List of Securities from the requirement to file a proof of claim or to complete the Guarantee Questionnaire with respect to such security or Guarantee, (iii) set the Bar Date a sufficient time after the date on which such a revised Master List of Securities is published so that creditors have a reasonable opportunity to review the list, request corrections if necessary and file their proofs of claim and (iv) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
June 27, 2009

    Respectfully submitted,

    CLEARY GOTTLIEB STEEN & HAMILTON LLP

    By:  /s/ Sean A. O'Neal
    Sean A. O'Neal
    One Liberty Plaza
    New York, New York 10006
    Telephone: (212) 225-2000
    Facsimile: (212) 225-3999

    *Attorneys for Banco Bilbao Vizcaya Argentaria, S.A.*