WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                                :
In re                                           :   Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :   08-13555 (JMP)
                                                :
                    Debtors.                    :   (Jointly Administered)
                                                :
                                                :
-------------------------------------------------------------------x
```

## DEBTORS' REPLY TO OBJECTIONS FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS OF CLAIM IN CONNECTION WITH THE EMTN PROGRAM

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectively submit this response to objections filed in connection with the Euro Medium Term Note Program (the "EMTN Program").

### Background

1.    The EMTN Program was a financing program arranged by Lehman Brothers International (Europe) ("LBIE") under which Lehman Brothers Treasury Co B.V.

("LBT"), Lehman Brothers Bankhaus AG ("LBB") and LBHI (together with LBT and LBB, the "Issuers") issued structured notes (the "Structured Notes") to individuals and financial institutions with a variety of characteristics. Some Structured Notes were relatively simple fixed or floating rate securities, others were highly complex and uniquely tailored to the interests of specific investors. In the case of many of the Structured Notes, the principal amount as well as the amount and payment of interest is linked to some underlying security, foreign exchange rate, commodity price, index or basket of securities or indices.

2. LBIE, with the assistance of Lehman Brothers Limited ("LBL"), acted as the arranger, dealer, and calculation agent with respect to the EMTN Program. Both LBIE and LBL are incorporated under the laws of England and Wales, and are currently in Administration, with certain partners from PricewaterhouseCooopers as their appointed Joint Administrators.

3. The Structured Notes were issued in series, with each series consisting of one or more tranches of Structured Notes. More than 4,000 series of Structured Notes (the "Series") were outstanding as of the Commencement Date. Each Series is usually issued in bearer form as a "Global Note," held by the Common Depositary, which in the case of the EMTN Program was Bank of New York Mellon acting through its London Branch ("BNY"). BNY also acted in most instances as (i) the Fiscal Agent, which as the agent of the relevant Issuer kept records of payments and executed certain administrative functions; and as (ii) the Principal Paying Agent, was responsible for collecting funds from the relevant Issuer and making payments of principal and interest on behalf of the relevant Issuer.

4. Generally, Structured Notes under the EMTN Program were issued pursuant to (i) a base prospectus (the "Base Prospectus"), which provides general information about the EMTN Program, (ii) the terms and conditions that accompany the Base Prospectus (the

"Terms and Conditions") and (iii) the final terms and conditions (the "Final Terms") that accompanied each individual Series, along with, in some cases, (iv) a pricing supplement (the "Pricing Supplement").

        5.      Each Series whose Structured Notes are represented by a Global Note are traded through the electronic clearing and settlement services offered by Euroclear SA and Clearstream Banking S.A. (the "Clearing Agencies"). The Clearing Agencies execute trades on behalf of financial institutions which are approved and regulated participants with the Clearing Systems (the "Accountholders"). The Accountholders (who are defined elsewhere as the "Holders") are generally the legal owners of the Structured Notes and may or may not be the beneficial owner of the Structured Notes. The Accountholders will frequently be holding accounts of the Structured Notes on behalf of their customers, who in some instances are smaller financial institutions who hold a beneficial interest in the Note on behalf of their customers (the "Intermediary Parties"). Ultimately, either the Accountholders or, through various intermediary stages, the Intermediary Parties, hold the beneficial interests in the Structured Notes on behalf of the parties who ultimately benefit from the income and certain voting rights under the EMTN Program (the "Ultimate Beneficial Owners"). The Accountholders generally enter into agreements with the parties to whom they sell the beneficial interests in their Structured Notes (either the Intermediary Parties or the Ultimate Beneficial Owners), pursuant to which such parties instruct the Accountholders on the trading instructions to be given to the Clearing Agencies.

**LBHI Cannot Identify and Has No Direct Legal
Relationship to the Parties under the EMTN Program**

6. With the exception of approximately 70 Series of notes that were issued by LBHI under the EMTN Program, LBHI's sole involvement in the EMTN Program was through the issuance of a guarantee (the "Guarantee") that purportedly runs in favor of the Holders and Accounterholders, although none of the Holders or Accountholders are parties to the Guarantee (the Guarantee is signed only by LBHI). LBHI is not the Issuer of Structured Notes under the EMTN Program and has no privity with the Common Depository, the Fiscal Agent, Principal Paying Agent, Clearing Agencies, Accountholders, Holders, Intermediaries, or Ultimate Beneficial Owners under the EMTN Program. As such, LBHI has never known the identity of the Account Holders, let alone the Ultimate Beneficial Holders.

7. Furthermore, because LBHI plays no role in the EMTN Program, LBHI has never had in its possession the vast majority of documents that underlie the EMTN Program. LBHI has only been able to acquire copies of the Base Prospectus, the Terms and Conditions, the Guarantee, and the Final Terms and Pricing Supplements of about 100 Series of Structured Notes out of more than 4,000 Series that were issued. The Debtors are informed that most, if not all of this documentation is in the possession of LBIE, because LBIE was the dealer and arranger under the EMTN Program. Thus, not only is it impossible to determine the identity of the Ultimate Beneficial Owners solely from the documentation of the EMTN Program, but the Debtors are not even in a position to disclose any meaningful information concerning the EMTN Program because their knowledge about the EMTN Program remains extremely limited.

8. The Debtors have relied primarily on their communication and collaboration with the trustee of LBT, Rutger Schimmelpenninck (the "LBT Trustee"), who until recently was also unable to gain access to the vast majority of Final Terms and Pricing

4

Supplements for the total EMTN Program. It is only the last few weeks that the LBT Trustee, upon threatening LBIE with legal action, finally succeeded in persuading LBIE to provide him with a CD that may contain all of the Final Terms and Pricing Supplements under the EMTN Program. The LBT is currently engaged in a preliminary review of the contents of this CD to determine that its contents do not contain confidential information, so that he may share its contents with the Debtors.

9. Even with these documents, however, the Debtors would be unable to identify the Ultimate Beneficial Owners. The Ultimate Beneficial Owners fall at the far end of a long chain of relationships, up through the Intermediary Parties – however many there are – to the Accountholders, who alone have a direct relationship with the Clearing Agencies. The Debtors have no direct legal relationship with the either the Clearing Agencies, the Accountholders, the Intermediaries, or the Ultimate Beneficial Owners.

## The Debtors Should Not Be Required To List Securities That They Did Not Issue On the Master Securities List

10. The Debtors were never obligated to create a Master Securities List. They have elected to publish the Master Securities List in order to facilitate a challenging claims administration process. But the Debtors can only make such determinations about debt instruments that they themselves issued. The Debtors lack documentation on each of the excess of 4,000 Series issued by the Issuers, and have not even confirmed the authenticity or enforceability of the Guarantees. Given this lack of information and documentation, it would be inappropriate and prejudicial to the Debtors, their estates, their creditors, and moreover, to the estates and creditors of the *Issuers*, if the Debtors were required to make disclosures about debt that was issued by non-debtors.

11. Moreover, those securities that the Debtors have agreed to list on the Master Securities List are securities for with there is an identifiable trustee *who has agreed to file an actual proof of claim*. The Debtors are not able to reach a similar agreement with any of the parties to the EMTN Program at this time. The filing of actual proofs of claim is therefore the only proper mechanism for both the claimants under the EMTN Program and the Debtors to preserve their rights. Without actual proofs of claim, the Debtors are incapable of evaluating and objecting to the claims asserted under the EMTN Program. In fact, the Debtors cannot know what claims exist at all, and who holds them.

**In Most Jurisdictions, the Accountholders Have the Obligation
To Communicate with their Customers and File Proofs of Claim**

12. The Debtors believe that in most jurisdictions, it is the responsibility of either BNY or the Accountholders (i.e. large financial institutions) to file a proof of claim on behalf of the Ultimate Beneficial Owners. In others, such as Germany, it may be the responsibility of the Ultimate Beneficial Owners to file a proofs of claim. In either case, sufficient notice will be provided through the Clearing Agencies to all parties who may wish to assert a claim. The Debtors already intend to serve all Ultimate Beneficial Owners through the Clearing Agencies. Even with respect to Ultimate Beneficial Owners who reside in foreign jurisdictions, the Court's bar date of September 22, 2009 will provide more than <u>twice</u> the notice required in cases with foreign creditors pursuant to Bankruptcy Rule 2001(p)(2).[1] No less should be required of these parties than is required of all of the Debtors' creditors.

---

[1] Bankruptcy Rule 2001(p)(2) provides:

> Unless the court for cause orders otherwise, a creditor with a foreign address to which notices under this rule are mailed shall be given at least 30 days' notice of the time fixed for filing a proof of claim under Rule 3002(c) or Rule 3003(c).

Fed. R. Bankr. P. 2001(p)(2).

13. Certain parties have objected to the Debtors' Motion because the Structured Notes were not issued under an indenture. Without an indenture trustee, these objecting parties perceive an uncertainty as to who is authorized to file proofs of claim. They do not wish to bear the burden of this uncertainty. Instead, their proposed solution is to shift the burden of making this legal determination, in the first instance, to the Debtors, by requiring the Debtors to publish a Master List of Securities that include these claims <u>and</u> to waive the requirement that <u>any</u> proof of claim be filed on account of these claims. Forcing the Debtors to publish this list and waive the requirements for filing a proof of claim, however, would be detrimental to the Debtors, their estates, and their creditors, because it places at risk the Debtors' ability to effectively administer their claims. For example, how would the Debtors interpose their objections to such claims if there is no party to whom actual notice of an objection can be provided?

14. The Debtors are not at fault because the Accountholders and their customers bargained for and purchased Structured Notes that do not have an indenture trustee to represent them in the event of a default or a bankruptcy. On the contrary, the Structured Notes could only be issued in jurisdictions outside of the United States because the investors preferred the flexibility that the Structured Notes offered by, among other things, not requiring an indenture. Indeed, the absence of an indenture was often embedded in the pricing of the Structured Notes, so that ultimately those who invested in them made a greater return on their investment because of this feature, at the cost of the Issuers.

15. Now, the parties who formerly bargained for and benefited from these features of the Structured Notes wish to pass along to the Debtors the concomitant burdens that arise in the event that the rights of the Ultimate Beneficial Holders need to be asserted in a

7

bankruptcy. Having reaped benefits of flexibility that were not available to those creditors of the Debtors who invested in more traditional debt instruments, they now would like the process prescribed by the Bankruptcy Code and Bankruptcy Rules to be discarded, placing them on a level above creditors who chose to invest in traditional notes or bonds issued under an indenture.

16. Unless the Debtors agree to treat the parties to the EMTN Program differently from other creditors, these objecting parties complain that they will incur significant burdens and expense in preparing their proofs of claim. At the very least, however, the Accountholders – who are generally large financial institutions – knew, or should have known that the benefits of flexibility without an indenture trustee are counterbalanced by the burdens that may arise in the event of a bankruptcy. At the very lease, the Accountholders should have considered how they would need to respond. If they did not begin thinking about this when they bargained for the terms of the Structured Notes, they should have begun to do so nearly ten months ago, when the Debtors' commenced these chapter 11 cases. The time to begin raising these issues is not on the eve of a hearing on the Debtors' Motion to establish a bar date in these cases.

17. The parties to the EMTN Program should not be permitted to derail the process and extract concessions from the Debtors that would afford special treatment to investors in the Structured Notes. Neither the Debtors nor even the Issuers are responsible for the way in which the Accountholders marketed the economic interest in each Series to their customers, either the Intermediaries or the Ultimate Beneficial Owners. Only the Accountholders, and the parties that follow down this chain of ownership, can take responsibility for organizing themselves in order to assert their claims as required by the Bankruptcy Code and Bankruptcy Rules. These parties should be required to undertake the same obligations as all of the Debtors'

other similarly situated creditors, and should be afforded no better treatment solely because they now wish they had bargained for notes under an indenture rather than a fiscal or paying agent.

18. For all the foregoing reasons, the Debtors respectfully submit that Objections with respect to the EMTN Program should be overruled. The Debtors reserve their right to challenge the validity of any claims asserted in connection with the EMTN Program, including in connection with the Guarantee.

WHEREFORE the Debtors respectfully request (i) that the Objections in connection with the EMTN Program be overruled, (ii) entry of the Order granting the Motion, and (iii) such other or further relief as is just.

Dated:  June 29, 2009
    New York, New York

/s/ Lori R. Fife
Lori R. Fife
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

9