**Hearing Date: July 15, 2009 at 10:00 a.m.**
**Objection Deadline: July 10, 2009 at 4:00 p.m.**

McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York 10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
David J. Adler (DA-0048)
Eduardo J. Glas (EG7027)
dadler@mccarter.com
*Attorneys for Occidental Energy Marketing, Inc.
and Occidental Power Services, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | Chapter 11 |
| In re: | Case Nos. 08-13555(JMP) |
| LEHMAN BROTHERS HOLDINGS INC., et. al., | (Jointly Administered) |
| Debtor. | |

**MOTION OF OCCIDENTAL POWER SERVICES, INC. AND OCCIDENTAL ENERGY MARKETING, INC. TO EFFECTUATE SETOFF AND SETTLE OUTSTANDING DERIVATIVE CONTRACTS AND FOR RELATED RELIEF**

Occidental Power Services, Inc. ("OPSI") and Occidental Energy Marketing, Inc. ("OEMI" and and jointly with OPSI, "Occidental"), by and through their undersigned counsel, hereby move to effectuate setoff and settle outstanding derivative contracts and for related relief (the "Motion"). In support of the Motion, Occidental respectfully states as follows:

### BACKGROUND

**A.    The Initiation of the Bankruptcy Proceedings**

1.    On September 15, 2008, (the "Petition Date"), Lehman Brothers Holdings Inc. (the "Debtor" or "LBHI") and one or more of its affiliates filed for bankruptcy protection with

2. the United States Bankruptcy Court for the Southern District of New York pursuant to Chapter 11 of Title 11 of the United States Code.

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to debtor Lehman Brothers Inc. ("LBI"). A trustee was appointed to administer LBI's estate.

4. On October 3, 2008, Lehman Brothers Commodity Services, Inc. ("LBCS") filed for bankruptcy protection with the United States Bankruptcy Court for the Southern District of New York pursuant to Chapter 11 of Title 11 of the United States Code.

5. The cases of LBHI, LBI, LBCS and several of their affiliates (collectively, "Debtors") are jointly administered for procedural purposes only under Case No. 08-13555 (JMP).

6. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. **The Contractual Relationship Between Debtors and Occidental**

7. OPSI and LBCS entered into a certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement dated as of August 28, 2006 (the "OPSI Swap"), a copy of which is attached hereto as Exhibit A. LBHI was the Credit Support Provider for LBCS under the OPSI Swap. The transactions executed under the OPSI Swap were financial transactions. On September 17, 2008, OPSI cancelled and terminated all outstanding Transactions between OPSI and LBCS under the ISDA with an effective date of September 17, 2008.[1] By an email

---

[1] The OPSI Swap provides that the filing of a bankruptcy petition by a counterparty or a credit support provider constitutes an Event of Default giving rise to the non-defaulting party's right to terminate. *See* Exhibit A, pgs. 5-8. As the Credit Support Provider for LBCS, LBHI's filing for bankruptcy protection constituted an Event of Default permitting OPSI to terminate the outstanding transactions.

ME1 8746862v.1

dated January 26, 2009, counsel for Debtors acknowledged the valid termination of the OPSI Swap, a copy of which is attached hereto as Exhibit B.

8. OEMI and LBCS entered into a certain ISDA Master Agreement dated as of September 21, 2006, which was amended pursuant to an Amendment Agreement dated May 21, 2007 (the "OEMI Swap"), a copy of which is attached hereto as Exhibit C. LBHI was the Credit Support Provider for LBCS under the OEMI Swap. The transactions executed under the OEMI Swap were financial transactions.[2] On October 10, 2008, OEMI cancelled and terminated all outstanding Transactions between OEMI and LBCS under the ISDA with an effective date of October 13, 2008. By an email dated January 26, 2009, counsel for Debtors acknowledged the valid termination of the OEMI Swap, a copy of which is attached hereto as Exhibit B.

9. On September 17, 2008, OEMI assigned any amounts payable under the OEMI Swap to OPSI pursuant to Section 7 of the OEMI Swap.

10. Occidental and Debtors have both acknowledged the valid termination of the OPSI Swap and OEMI Swap (jointly, the "Swaps") on September 17, 2008 and October 13, 2008, respectively. As a result of the terminations, OPSI owed LBCS $2,700,581 upon the termination of the OPSI Swap, and LBCS owed OEMI $1,802,435 upon the termination of the OEMI Swap.

C.  **The Setoff Provisions Contained in the Swaps**

11. Section 6 to the OPSI Swap, as amended by Part 5(b) of the Schedule to the OPSI Swap and made expressly applicable thereto, added subsection (f), which provides in pertinent part as follows:

---

[2] The OEMI Swap contained identical provisions to the OPSI Swap regarding an Event of Default and the right to terminate by virtue of LBHI's filing for bankruptcy protection. *See* Exhibit C, pgs. 5-8. Moreover, LBCS's filing for bankruptcy protection constituted a separate Event of Default and also gave rise to OEMI's right to terminate outstanding transactions.

ME1 8746862v.1

> (f) Set-Off.
>
> (i) In addition to any rights of set-off a party may have as a matter of law or otherwise, upon the occurrence of an Event of Default, Credit Event Upon Merger, or an Additional Termination Event and the designation of an Early Termination Date pursuant to Section 6 of the Agreement with respect to a party ("X"), the other party ("Y") will have the right (but not be obliged) without prior notice to X or any other person to set-off or apply any obligation of X owed to Y (and to any Affiliate of Y) .... against any obligation of Y (and any Affiliate of Y) owed to X[.]"

Exhibit A, pg. 25.

12. The OEMI Swap contains an identical provision concerning set-off. *See* Exhibit C, pg. 25.

13. OPSI and OEMI are "affiliates" as that term is defined in the Swaps, as both are indirectly wholly-owned subsidiaries of Occidental Petroleum Corporation, and in fact, OPSI is directly and wholly owned by OEMI. The Swaps define "affiliate" to include "any entity directly or indirectly under common control" (*see* Exhibit A, pg. 14; Exhibit C, pg. 14). Accordingly, OPSI and OEMI fall within this definition.

**D.   The Interest Provisions Contained in the Swaps**

14. The OPSI Swap and OEMI Swap contain complex interest provisions which are set forth below. The "Termination Rate" means "a rate per annum equal to the arithmetic mean of the cost (without proof or evidence of any actual cost) to each party (as certified by such party) if it were to fund or of funding such amounts." *See* Exhibit A, pg. 17; Exhibit C, pg. 17.

15. Section 14 of both the OPSI Swap and OEMI Swap provides that the "Default Rate" of interest is "a per annum rate equal to the cost (without proof or evidence of any actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1% per annum." *See* Exhibit A, pg. 14-15; Exhibit C, pg. 14-15.

ME1 8746862v.1

16. Per the ISDA Master Agreement for the OPSI Swap and OEMI Swap: "Such interest will be calculated on the basis of daily compounding and the actual number of days elapsed." Exhibit A, pg. 9; Exhibit C, pg. 9.

### E. The Dispute Between Occidental and Debtors

17. Occidental and Debtors agree that OPSI validly terminated the transactions under the OPSI Swap on September 17, 2008. OPSI calculated that it owes LBCS $2,700,581 under the OPSI Swap as of the date of termination, and to date, Debtors have not disputed that amount. Further, Occidental and Debtors agree that OEMI validly terminated the transactions under the OEMI Swap on October 13, 2008. OEMI calculated that LBCS owes OEMI $1,802,435 under the OEMI Swap as of the date of termination, and to date, Debtors have not disputed that amount. *See* Exhibit D (January 27, 2009 email from Occidental to Debtors attaching calculation spreadsheet).

18. Occidental and the Debtors disagree as to Occidental's right to set off, as well as the calculation and amount of interest due and payable from Occidental to LBCS.

19. LBCS purports to have a right of payment under the OPSI Swap as of January 27, 2009; Occidental contends that LBCS has not properly triggered a right to payment under the OPSI Swap because LBCS refuses to recognize Occidental's right to set-off the amount due and owing under the OPSI Swap against the amount payable under the OEMI Swap, and therefore, LBCS has failed to trigger Occidental's payment obligation of the net amount due and owing to LBCS.

### RELIEF REQUESTED

20. By way of this Motion, Occidental respectfully requests that the Court enter an Order which: (1) recognizes Occidental's right to set-off the amount owed under the OPSI Swap

ME1 8746862v.1

against the amount payable under the OEMI Swap pursuant to the express terms of the Swaps and the safe-harbor provisions contained in 11 U.S.C. § 560; (2) allows Occidental to set-off the amount due and owing to LBCS as of October 14, 2008 as calculated by Occidental with application of the interest amount for the period of October 14, 2008 through the "Settlement Date" (defined below) at the Termination Rate; (3) orders Occidental to pay the amount due and owing under the Swaps, plus the applicable interest accrued through the Settlement Date, with the Settlement Date being the date which is five (5) business days from the date of entry an Order granting this Motion; and (4) determines that the net payment and interest thereon at the Termination Rate as calculated by Occidental satisfies any and all obligations of Occidental under the Swaps.

## ARGUMENT

### A. Section 560 of the Bankruptcy Code Allows for Setoff of the Amounts Owed under the Swaps

21. Section 560 of the Bankruptcy Code provides, in relevant part:

The exercise of any contractual right of any swap participant or financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365 (e)(1) of this title *or to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title*…

11 U.S.C. § 560 (emphasis added). With regard to swap agreements, "Congress has provided safe harbors from the destabilizing effects of bankruptcy proceedings for parties to specified commodities and financial contracts in order to protect financial markets."[3]

---

[3] The same is true for "forward contracts" and "master netting agreements" as provided for in 11 U.S.C. §§ 556 and 561.

ME1 8746862v.1

*Natural Gas Distributors LLC v. E.I. Du Pont de Nemours & Co. Inc.*, 556 F.3d 247, 252 (4th Cir. Feb. 11, 2009). This safe harbor for swap agreements is embodied in Section 560 of the Bankruptcy Code.

22. Parties to swap agreements, such as ISDAs, use the swap transactions to "hedge a party's exposure to market volatility." *See* Paul E. Vrana, *et al.*, *How to Use the ISDA Master Agreement*, 28th Annual Ernest E. Smith Oil, Gas, and Mineral Law Institute, pg. 2 (Mar. 22, 2002) (a copy of which is attached hereto as Exhibit E). By its nature, an ISDA is a swap agreement, as it is a method by which counterparties enter into and execute derivative transactions concerning, *inter alia*, commodities such as natural gas and electricity.

23. As noted in Exhibit E,

> An example of a swap would involve Party A, the holder of a fixed-price natural gas position, entering into a swap with Party B, the holder of an index-price natural gas position. Party A, seeking to participate in the natural gas market price volatility, would agree to pay Party B the fixed price of natural gas and in exchange would be paid a market-sensitive index price by Party B, who would enter into the transaction with the goal of reducing its risk exposure to price volatility.

Exhibit E, pg. 2. These are the types of transactions consummated pursuant to the Swaps. *Compare* 11 U.S.C. § 101(53B) (defining "swap agreement") *with* Exhibit A, pg. 17 (defining "Specified Transaction" to include "rate swap transaction, basis swap, forward rate transaction, commodity swap, commodity option…") and Exhibit C, pg. 17 (same).[4]

---

[4] The Debtors themselves acknowledge that other transactions consummated pursuant to an ISDA Master Agreement are Swaps. *See* Debtors Motion, Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code, to Compel Performance of Metavante Corporation's Obligations Under an Executory Contract and to Enforce the Automatic Stay ¶ 12 [D.I. #3691] (*filed on* May 29, 2009) (noting Debtor entered into an "interest rate swap transaction" pursuant to an ISDA Master Agreement).

ME1 8746862v.1

**B.     Occidental is Permitted to Effectuate Set-Off**

24.     This Court has previously recognized a non-debtor's right to net out various transactions in the swap agreement context pursuant to Section 560. *See In re Enron Corp.*, 349 B.R. 96, 104 (Bankr. S.D. N.Y. 2006).

25.     Moreover, Sections 362 and 553, the automatic stay and general set-off provisions, respectively, expressly indicate that the safe harbor provisions, such as Section 560, control over Sections 362 and 553. *See* 11 U.S.C. §§ 362(b)(17) and 553.

26.     As swap agreements entitled to the safe harbor provisions of Section 560, the identical set-off provisions contained in the Swaps remain both intact and operative even after LBCS's bankruptcy filing. Thus, the parties' respective rights with regard to the terminated Swaps are governed by the contractual terms of the Swaps themselves. In this instance the Swaps provide: "upon the occurrence of an Event of Default [*LBHI's bankruptcy filing and LBCS's bankruptcy filing*]…and the designation of an Early Termination Date [*recognized by Debtors as validly exercised*] pursuant to Section 6 of the Agreement with respect to a party ("[LBCS]"), the other party ("[Occidental]") will have the right…to set-off or apply any obligation of [LBCS] owed to [Occidental] (and to any Affiliate of [Occidental]) .... against any obligation of [Occidental] (and any Affiliate of [Occidental]) owed to [LBCS][.]" Given the broad set-off language contained in both the OEMI Swap and OPSI Swap, Occidental is permitted to set-off the OPSI obligation against the OEMI payable.[5]

---

[5] The assignment of the OEMI payable to OPSI does not detrimentally impact Occidental's right to effectuate set-off, because regardless of whether the assignment is valid (and Occidental believes that it is under Section 7 of the OEMI Swap), OEMI and OPSI are Affiliates as defined in the Swaps. Thus, OPSI is either setting-off a payable due to it (by assignment), or a payable due to its Affiliate, both of which are contemplated by the Swaps and permissible under Section 560.

**C.     Occidental Properly Calculated the Net Amount Due to LBCS**

27.     As noted *supra*, the termination of the OPSI Swap is effective as of September 18, 2008, and the termination of the OPSI Swap resulted in a payment obligation from OPSI to Debtors in the amount of $2,700,581.00, the calculation of which has not been disputed by LBCS. The termination of the OEMI Swap is effective as of October 13, 2008, and the termination of the OEMI Swap resulted in payment obligation from LBCS to OEMI in the amount of $1,802,435.00, the calculation of which has not been disputed by LBCS.

28.     Occidental acknowledges that interest at the Termination Rate is due on the full $2,700,581 from September 18, 2008 through October 13, 2008, and then on the net amount due and owing after allowing for set-off (the "Net Payable") from October 14, 2008 through the Settlement Date (as defined above). Occidental has determined the Net Payable to be $911,298 as of October 14, 2008.

29.     As the Termination Rate is "rate per annum equal to the arithmetic mean of the cost (without proof or evidence of any actual cost) to each party (as certified by such party) if it were to fund or of funding such amounts," Occidental has calculated the Termination Rate using Debtors' Debtor-in-Possession financing facility.[6] The Debtors claim a much higher amount "cost to fund" but have not provided an explanation as to how they have calculated such amount. As of June 12, Occidental calculates that it owes Debtors a total of $946,680.00, the Net Payable plus accrued interest, calculated by compounding the Termination Rate daily in accordance with

---

[6] As set forth in Debtors' Motion for Order: (I) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code, (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to Section 364 of the Bankruptcy Code, and (III) Scheduling a Final Hearing [D.I. # 59].

ME1 8746862v.1

the terms of the OPSI Swap.[7]  A spreadsheet showing Occidental's calculations is attached hereto as Exhibit F.

30. As the Debtors have refused to date to definitively acknowledge Occidental's right to effectuate set-off, the appropriate rate of interest from September 18, 2008 through the Settlement Date is the Termination Rate, not the Default Rate.  Put simply, the Debtors cannot refuse to acknowledge Occidental's right of set-off -- thereby refusing to agree definitively upon the Net Payable under the OPSI Swap -- and at the same time, insist upon payment of the Net Payable under the threat of the Default Rate.

31. Accordingly, Occidental respectfully requests that the Court approve the manner in which Occidental has calculated the Termination Rate due and owing on the Net Payable through June 12, 2009, and authorize Occidental to use the same methodology to calculate interest on the Net Payable from June 12, 2009 through the Settlement Date.

## CONCLUSION

31. In conjunction with the requests for relief contained herein, Occidental is ready to tender the Net Payable and interest accrued thereon at the Termination Rate.  To facilitate this payment, Occidental respectfully requests that the Court enter an Order in the form submitted herewith, which approves the setoff and directs payment of the Net Payable plus interest due thereon (calculated by reference to the Termination Rate), and that after Occidental has paid such amount, orders that the Swaps are fully and finally settled.

**WHEREFORE**, for the reasons stated above, Occidental respectfully requests that the Court enter an Order which:  (1) recognizes Occidental's right to set-off the amount owed under

---

[7] As the payable due and owing on the OPSI swap continues to increase daily, Occidental will provide an updated calculation of the amount due and owing as of the hearing date on this Motion.

ME1 8746862v.1

the OPSI Swap against the amount payable under the OEMI Swap pursuant to the express terms of the Swaps and the safe-harbor provisions contained in 11 U.S.C. § 560; (2) finds that after taking into account Occidental's rights of set-off, Occidental properly calculated the amount due and owing to Debtors as of October 14, 2008; (3) finds that the interest amount for the period of October 14, 2008 through the Settlement Date is the Termination Rate; (4) orders Occidental to tender the principal amount due and owing under the Swaps, plus interest accrued thereon as calculated by Occidental through the Settlement Date; and (5) determines that the payment required in the Order granting this Motion satisfies any and all obligations of Occidental under the Swaps, and (6) orders all further relief as necessary and equitable.

/s/ David J. Adler
David J. Adler, Esq. (DA0048)
Eduardo J. Glas, Esq. (EG7027)
McCARTER & ENGLISH, LLP
245 Park Avenue, 27th Floor
New York, New York 10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
dadler@mccarter.com
eglas@mccarter.com
-and-
Katharine L. Mayer, Esq.
Daniel M. Silver, Esq.
McCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19899
(302) 984-6300 - Telephone
(302) 984-6399 - Facsimile
kmayer@mccarter.com

*Attorneys for Occidental Energy Marketing, Inc. and Occidental Power Supply, Inc*

Dated: June 29, 2009
New York, NY

ME1 8746862v.1