Hearing Date and Time: July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE**
**AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY**
**LIENS IN COLLATERAL POSTED IN CONNECTION**
**WITH CERTAIN HEDGING TRANSACTIONS**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for authorization, pursuant to sections 105(a) and 364 of title 11 of the United States Code (the "Bankruptcy Code") to grant first priority liens in collateral posted in connection with hedging transactions, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

US_ACTIVE:\43089563\01\43089563_1.DOC\58399.0003

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received by no later than **July 10, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Objection Deadline</u>").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 30, 2009
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO
SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE
AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY LIENS
IN COLLATERAL POSTED IN CONNECTION
WITH CERTAIN HEDGING TRANSACTIONS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

**Background**

    1.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

US_ACTIVE:\43089563\01\43089563_1.DOC\58399.0003

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Preliminary Statement**

8.      In connection with the development of a residential condominium project commonly known as Canyon Ranch Living Miami Beach Condominiums, located in Miami Beach, Florida ("Canyon Ranch Miami"), the Debtors developed a mortgage financing program with Americor Mortgage Inc. ("Americor"). Under this program, Americor agreed to provide residential condominium mortgage loans ("Americor Residential Loans") to all individuals desiring to purchase condominium units located at Canyon Ranch Miami (the "Condominium Units"), and LBHI agreed to purchase such Americor Residential Loans from Americor.[1]

9.      Prior to the Commencement Date, the Debtors typically entered into various forms of hedging transactions in order to protect themselves against a variety of risks. As to residential loans held for investment, the Debtors sought to protect against the risk of rising interest rates. As with the residential mortgage market generally, the Americor Residential Loans include historically low interest rates. The risk faced by the Debtors, therefore, is that if interest rates rise, the value of the loans they own will be diminished. Accordingly, the Debtors seek authorization to enter into certain hedging transactions which will allow them to protect

---

[1] The Americor residential loan program was memorialized in the Mortgage Loan Purchase Agreement, which LBHI received authority to enter in an Order dated June 5, 2009 [Docket No. 3777] (the "Americor Purchase Agreement Order"). LBHI may desire to purchase other residential condominium mortgage loans secured by the Condominium Units, which may be originated in the future by LBHI's affiliates or other third parties (the "Other Residential Loans," (together with the Americor Residential Loans, the "Residential Loans")). Consistent with the Americor Purchase Agreement Order, in the event the face amount of the Americor Residential Loans and the Other Residential Loans exceeds $200 million in the aggregate, the Debtors shall seek additional authority to purchase additional Residential Loans.

themselves against rising interest rates and a concurrent deterioration in the value of the Residential Loans.

10. The proposed hedging transactions will include but are not limited to (i) futures transactions, which are typically contracts obligating the holder of the contract to either make or take delivery of a financial instrument at a predetermined future date and price, (ii) over the counter transactions such as swap agreements and forward (i.e. to be settled at a specified point of time in the future) rate agreements and (iii) Mortgage TBAs (To Be Announced), which are forward mortgage-backed securities trades using pass-through securities issued by Freddie Mac, Fannie Mae and Ginnie Mae (the "Residential Hedging Transactions").

11. In order to implement this hedging strategy, the Debtors will be required and, therefore, are seeking authorization to grant first priority liens to one or more broker dealers to be selected by the Debtors in their reasonable business judgment (the "Broker Dealers") in cash, securities, or other collateral (the "Collateral") that will be posted in connection with Institutional Futures Account Agreements, Prime Brokerage Account Agreements, and other related agreements (together, the "Agreements") that the Debtors may enter into with such Broker Dealers to open futures, prime brokerage, and over the counter transaction related accounts (together, the "Accounts"). The Debtors cannot engage in the proposed Residential Hedging Transactions without granting first priority liens on Collateral because the Broker Dealers will not enter into and will not accept the risk associated with the proposed Residential Hedging Transactions on an unsecured basis. Furthermore, the relevant exchanges will require the Broker Dealers that execute these proposed Residential Hedging Transactions for the Debtors to post an acceptable amount of Collateral.

12.     On March 11, 2009, this Court entered the Order Pursuant to Sections 105 and 364 of the Bankruptcy Code Authorizing the Debtors to Grant First Priority Liens in Cash Collateral Posted in Connection with the Hedging Transactions the Debtors Enter Into Through Certain Futures and Prime Brokerage Accounts [Docket No. 3047] (the "First Hedging Order"). This motion seeks approval of procedures substantially similar to those approved in the First Hedging Order, which included a detailed set of negotiated hedging protocols, which define the Creditors' Committee's participation in the approval process of the proposed Residential Hedging Transactions.

13.     The Debtors believe that entering into the proposed Residential Hedging Transactions is a prudent course for preserving value in the Residential Loans while minimizing risk.

## Relief Requested

14.     In this Motion, Debtors are seeking authorization, pursuant to sections 105 and 364(c)(2) of the Bankruptcy Code, to grant first priority liens to the Broker Dealers in the Collateral that will be posted in connection with the Agreements. The Agreements, Accounts and Residential Hedging Transactions proposed to be executed through those Accounts will enable Debtors to reduce the risk associated with interest rate fluctuations that could cause the value in the Residential Loans to deteriorate.

## The Need for Residential Hedging Transactions

15.     All of the Americor Residential Loans feature fixed interest rates for at least the first ten years. Residential loans currently carry historically low interest rates. At the same time, interest rates in general currently are rising. Accordingly, the Debtors believe that there is risk that the Residential Loans will deteriorate in value over time. For example, if a loan

is a made on a Condominium Unit today at an interest rate of 5%, but the typical rate in four years is 8%, the loan owned by Debtors will generate less income and will be less attractive to potential purchasers than other residential loans with higher interest rates.

16. To guard against this risk and preserve the value in the Residential Loans, the Debtors in the ordinary course of their prepetition business would have entered into Residential Hedging Transactions. To implement this strategy during these chapter 11 cases, the Debtors plan to enter into the Agreements with the Broker Dealers to open the Accounts. Through these Accounts, the Debtors intend to enter into the Residential Hedging Transactions that will serve as protection against unfavorable interest rate fluctuation in the residential loan market generally, which may impact the value of the Residential Loans.[2]

### The Proposed Residential Hedging Protocol

17. The Debtors propose a set of procedures with respect to Residential Hedging Transactions that are similar to those that were approved in the First Hedging Order (the "Residential Hedging Protocol"). Specifically, the Debtors propose:

- All proposed Residential Hedging Transactions will be reviewed by an approval committee (the "Residential Hedging Transactions Committee") established by the Debtors. The financial advisors to the Creditors' Committee (the "Advisors") will receive notice of, and may attend, all meetings of the Hedging Transactions Committee (each a "Residential Hedging Transactions Meeting") and will have access to the personnel of the Debtors involved with the proposed Residential Hedging Transactions;

- With respect to all proposed Residential Hedging Transactions, the Debtors will provide (i) e-mail notification to the Advisors of any Residential Hedging Transactions Meeting regarding the approval of a

---

[2] While the Motion seeks authorization for each of the Debtors to enter into the Residential Hedging Transactions, at this time, the Debtors believe that the transactions will be entered into only by LBHI or Lehman Brothers Special Finance, Inc.

Residential Hedging Transaction not later than one (1) Business Day[3] prior to such meeting, which e-mail must contain the material terms of the proposed Residential Hedging Transaction and (ii) an information package (the "Information Package") as soon as practicable but not less than three (3) Business Days prior to the Residential Hedging Transaction Meeting that will consist of (a) applicable legal documentation for the Residential Loan, (b) valuation statements, (c) valuation inputs and assumptions used by the Residential Hedging Transactions Committee that relate to and were used to determine the value of the Residential Loan and adjustments thereto, and (d) appropriate and customary risk measurement information calculated using standard market conventions;

- Informal discussions among the Debtors and the Advisors relative to a proposed Residential Hedging Transaction for which the transaction is greater than $25,000,000 will commence no later than five (5) Business Days prior to the relevant Residential Hedging Transaction Meeting;

- The Debtors may enter into a proposed Residential Hedging Transaction for which the transaction is greater than $25,000,000 only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before the Residential Hedging Transaction is scheduled to be executed or two (2) Business Days after a Residential Hedging Transactions Meeting during which such Residential Hedging Transaction was approved or (ii) upon Court approval;

- The Debtors may enter into a proposed Residential Hedging Transaction for which the transaction is $25,000,000 or less only (i) if (a) the Advisors receive e-mail notification of the Residential Hedging Transaction, which will include the material terms of the approved Residential Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the Residential Hedging Transactions Meeting during which the proposed Residential Hedging Transaction was discussed and approved, and (c) the financial advisors to the Creditors' Committee do not object within six (6) business hours, herein defined as the hours between 9:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) on Business Days, of and after receipt of e-mail notification of the Residential Hedging Transactions Committee's approval of such Residential Hedging Transaction or (ii) upon Court approval;

---

[3] A "Business Day" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

- After the approval of a proposed Residential Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if the Debtors' original strategy is changed or determined to be inappropriate with respect to a particular Residential Hedging Transaction, the Advisors may commence a review of such Residential Hedging Transaction at the Residential Hedging Transaction Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of Residential Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such Residential Hedging Transactions, and (iii) an estimate of the mark to market value of the receivables from the corresponding open trades at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to the Residential Hedging Protocol and may seek to amend the Residential Hedging Protocol upon Court approval.

**Basis for Relief Requested**

18.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to incur debt secured by a lien on property of the estate that is not otherwise subject to a lien. 11 U.S.C. § 364(c)(2).

19.     The Debtors' entry into the proposed Residential Hedging Transactions will provide them with a hedge against their positions under the Residential Loans, but will require the posting of Collateral that is equal to a percentage of the value of the proposed Residential Hedging Transaction. Thus, the Debtors are seeking authorization, pursuant to section 364(c)(2) of the Bankruptcy Code, to grant to any applicable Broker Dealer first priority

liens in the Collateral that will be posted in connection with the Agreements that the Debtors will enter into with such Broker Dealers.

20. Provided that a debtor's business judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in exercising its sound business judgment. See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1089 (4th Cir. 1986); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."). See also In re Funding Sys. Asset Mgmt. Corp., 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985); In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

21. Here, the Debtors have determined that the credit provided by the Residential Hedging Transactions is only available on a secured basis. The Broker Dealer counterparties to these proposed Residential Hedging Transactions will extend credit to the Debtors by making the full value of the proposed Residential Hedging Transactions available to the Debtors while only requiring the posting of Collateral that is less than such transactions' full value. In each case, the Collateral requirements will be determined by the Broker Dealer and will be driven by industry standards that take into consideration the type of transaction and the credit risk associated with the Debtors as counterparties. The Debtors will grant the Broker Dealers a first priority lien in the Collateral to secure their performance obligations under the Agreements. In the event a Debtor defaults under its performance obligations under the

Agreements and a Broker Dealer becomes entitled to enforce its rights under the Agreements, the automatic stay under section 362(a) of the Bankruptcy Code in the Debtor's chapter 11 case is hereby modified solely to the extent necessary to permit that Broker Dealer to enforce its rights under the Agreement. The limited relief will not affect the provisions of the section 362(a) of the Bankruptcy Code, including, without limitation, those provisions prohibiting any act to collect, assess, or recover a claim that arose before the commencement of the Debtor's chapter 11 case from the Debtor's estate and/or assets or property of the Debtor (as defined in section 541 of the Bankruptcy Code) shall remain in full force and effect.

22.     The Accounts and proposed Residential Hedging Transactions will not be utilized as investment vehicles, but only as a means to continue the hedging practices the Debtors engaged in prior to the Commencement Date. Further, the Debtors will not enter into any Agreement and open an Account with a Broker Dealer unless such dealer agrees that the Collateral in the Accounts cannot and will not be used to set-off any other prepetition or postpetition claims that that such Broker Dealer (or its affiliates) may have against the Debtors.

23.     The Debtors cannot engage in the necessary hedging transactions without granting first priority liens on the Collateral because the Broker Dealers will not enter into and will not accept the risk associated with the Residential Hedging Transactions on an unsecured basis. Furthermore, the exchanges will require the Broker Dealer that would execute these Residential Hedging Transactions for the Debtors to post an acceptable amount of Collateral.

The Collateral is not subject to any existing liens and the Debtors believe the terms of the Agreements, which are standard in the industry, to be fair and reasonable.[4]

24. Pursuant to section 364(c)(2) of the Bankruptcy Code, the Debtors submit that entering into the Residential Hedging Transactions is in the best interests of the Debtors, their estates, and the stakeholders in these cases because the hedging practices discussed above permit the Debtors to reduce the risk associated with interest rate fluctuations that could deteriorate the value of the Residential Loans.

### Notice

25. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

26. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

---

[4] Further, this type of hedging motion is not subject to the requirements of Bankruptcy Rule 4001(c). The disclosures prescribed by Bankruptcy Rule 4001(c) are intended to aid the Court and other parties in interest by providing a summary of the material terms of lengthy and complex loan agreements. The Debtors seek to enter into standard futures, prime brokerage and other agreements, not complex loan agreements. The information herein provides the Court and parties in interest with sufficient information regarding the scope of relief requested and the basis to approve the same.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 30, 2009
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                                :
In re                                                           :   Chapter 11 Case No.
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                    :   08-13555 (JMP)
                                                                :
        Debtors.                                   :   (Jointly Administered)
                                                                :
----------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY LIENS IN COLLATERAL POSTED IN CONNECTION WITH CERTAIN HEDGING TRANSACTIONS

Upon the motion, dated June 9, 2009 (the "Motion"),[5] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 364 of the Bankruptcy Code, for authorization to grant first priority liens in cash, securities, and other collateral (the "Collateral") that is posted in connection with hedging transactions (the "Residential Hedging Transactions")[6] the Debtors will enter through certain futures, prime brokerage, and over the counter transaction related accounts (together, the "Accounts") that the Debtors will open pursuant to the terms of those certain Institutional Futures Account Agreements, Prime Brokerage Account Agreements, and other related agreements (together, the "Agreements"), all as more fully described in the

---

[5] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[6] The Residential Hedging Transactions will include but are not limited to (i) futures transactions, which are typically contracts obligating the holder of the contract to either make or take delivery of a financial instrument at a predetermined future date and price, (ii) over the counter transactions such as swap agreements and forward (i.e. to be settled at a specified point of time in the future) rate agreements and (iii) Mortgage TBAs (To Be Announced), which are forward mortgage-backed securities trades using pass-through securities issued by Freddie Mac, Fannie Mae and Ginnie Mae.

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors, subject to the terms of the applicable Agreements and Residential Hedging Transactions, are hereby authorized to post Collateral to the Accounts to be established with the Broker Dealers under the terms and conditions set forth in the Agreements; and it is further

ORDERED that the Debtors are authorized to supplement or remove Collateral from the Accounts, as required by the applicable Agreement, Residential Hedging Transaction, or the related agreement to the Residential Hedging Transaction; and it is further

ORDERED that the Debtors are authorized to grant the Broker Dealers first priority liens in the Collateral; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the Agreements, in the manner set forth herein, including, but not limited to the delivery of the Collateral and granting of first priority liens on the Collateral; and it is further

ORDERED that in the event a Broker Dealer becomes entitled to enforce its rights under the Agreements, the automatic stay under section 362(a) of the Bankruptcy Code in the Debtor's chapter 11 case is hereby modified solely to the extent necessary to permit that Broker Dealer to enforce its rights under the Agreement, provided, however, that the provisions of the section 362(a) of the Bankruptcy Code, including, without limitation, those provisions prohibiting any act to collect, assess, or recover a claim that arose before the commencement of the Debtor's chapter 11 case from the Debtor's estate and/or assets or property of the Debtor (as defined in section 541 of the Bankruptcy Code) shall remain in full force and effect; and it is further

ORDERED that the Debtors' entry into Residential Hedging Transactions shall be subject to the following (the "Residential Hedging Protocol"):

- All proposed Residential Hedging Transactions will be reviewed by an approval committee (the "Residential Hedging Transactions Committee") established by the Debtors. The financial advisors to the Creditors' Committee (the "Advisors") will receive notice of, and may

- attend, all meetings of the Hedging Transactions Committee (each a "Residential Hedging Transactions Meeting") and will have access to the personnel of the Debtors involved with the proposed Residential Hedging Transactions;

- With respect to all proposed Residential Hedging Transactions, the Debtors will provide (i) e-mail notification to the Advisors of any Residential Hedging Transactions Meeting regarding the approval of a Residential Hedging Transaction not later than one (1) Business Day[7] prior to such meeting, which e-mail must contain the material terms of the proposed Residential Hedging Transaction and (ii) an information package (the "Information Package") as soon as practicable but not less than three (3) Business Days prior to the Residential Hedging Transaction Meeting that will consist of (a) applicable legal documentation for the Residential Loan, (b) valuation statements, (c) valuation inputs and assumptions used by the Residential Hedging Transactions Committee that relate to and were used to determine the value of the Residential Loan and adjustments thereto, and (d) appropriate and customary risk measurement information calculated using standard market conventions;

- Informal discussions among the Debtors and the Advisors relative to a proposed Residential Hedging Transaction for which the transaction is greater than $25,000,000 will commence no later than five (5) Business Days prior to the relevant Residential Hedging Transaction Meeting;

- The Debtors may enter into a proposed Residential Hedging Transaction for which the transaction is greater than $25,000,000 only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before the Residential Hedging Transaction is scheduled to be executed or two (2) Business Days after a Residential Hedging Transactions Meeting during which such Residential Hedging Transaction was approved or (ii) upon Court approval;

- The Debtors may enter into a proposed Residential Hedging Transaction for which the transaction is $25,000,000 or less only (i) if (a) the Advisors receive e-mail notification of the Residential Hedging Transaction, which will include the material terms of the approved Residential Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the Residential Hedging Transactions Meeting during which the proposed Residential Hedging Transaction was discussed and approved, and (c) the financial advisors to the

---

[7] A "Business Day" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

- Creditors' Committee do not object within six (6) business hours, herein defined as the hours between 9:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) on Business Days, of and after receipt of e-mail notification of the Residential Hedging Transactions Committee's approval of such Residential Hedging Transaction or (ii) upon Court approval;

- After the approval of a proposed Residential Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if the Debtors' original strategy is changed or determined to be inappropriate with respect to a particular Residential Hedging Transaction, the Advisors may commence a review of such Residential Hedging Transaction at the Residential Hedging Transaction Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of Residential Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such Residential Hedging Transactions, and (iii) an estimate of the mark to market value of the receivables from the corresponding open trades at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to the Hedging Protocol and may seek to amend the Hedging Protocol upon Court approval; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Residential Loans; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment consummated in the manner set forth herein.

Dated:  June __, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE