**Hearing Date and Time:  July 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  July 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

-and-

David S. Cohen (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------- x
                                            :

In re:                                                     :          Chapter 11 Case
                                            :

LEHMAN BROTHERS HOLDINGS INC., et al., :          No. 08-13555 (JMP)
                                            :

                     Debtors.              :          (Jointly Administered)
                                            :

----------------------------------------------------------- x

**NOTICE OF HEARING ON MOTION OF OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS TO DIRECT THE EXAMINER TO COMPLY WITH**
**THE COURT'S ORDER DIRECTING APPOINTMENT OF AN EXAMINER**

                   PLEASE TAKE NOTICE that a hearing on the Motion of the Official

Committee of Unsecured Creditors to Direct the Examiner to Comply with the Court's

Order Directing Appointment of an Examiner Pursuant to Section 1104(c)(2) of

Bankruptcy Code (the "Motion") will be held before the Honorable James M. Peck,

United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York

10004 (the "Bankruptcy Court") on **July 15, 2009 at 10:00 a.m.** (Prevailing Eastern

Time) or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the

Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern

District of New York, shall set forth the name of the objecting party, the basis for the

objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system

and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with

two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York

10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York,

New York 10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman,

Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall

Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul

Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis,

Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New

York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis C. O'Donnell, Esq., and

Evan R. Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors

appointed in these cases; (v) Jenner & Block LLP, 919 Third Avenue, 37th Floor, New

York, NY 10022, Attn:  Patrick Trostle, Esq., attorneys for the Examiner; and (vi) any

person or entity with a particularized interest in the Motion, so as to be so filed and

received by no later than **July 10, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the

"Objection Deadline").

           PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is

not received by the Objection Deadline, the relief requested shall be deemed unopposed,

and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

Dated:   New York, New York
        July 1, 2009

                         **MILBANK, TWEED, HADLEY & MᶜCLOY LLP**

                         By:  /s/ Dennis F. Dunne
                         Dennis F. Dunne
                         Dennis C. O'Donnell
                         Evan R. Fleck
                         1 Chase Manhattan Plaza
                         New York, New York 10005
                         Telephone:  (212) 530-5000

                         -and-

                         David S. Cohen (admitted *pro hac vice*)
                         1850 K Street, NW, Suite 1100
                         Washington, D.C. 20006
                         Telephone:  (202) 835-7500

                         Counsel for Official Committee of Unsecured
                         Creditors of Lehman Brothers Holdings Inc., et al.

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

-and-

David S. Cohen (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                          :

In re:                             :          Chapter 11 Case
                          :

LEHMAN BROTHERS HOLDINGS INC., et al.,   :          No. 08-13555 (JMP)
                          :

            Debtors.          :          (Jointly Administered)
                          :

------------------------------------------------------------------ x

## MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DIRECT THE EXAMINER TO COMPLY WITH COURT'S ORDER DIRECTING APPOINTMENT OF AN EXAMINER

The Official Committee of Unsecured Creditors (the "Committee") appointed in

the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in

possession (collectively, the "Debtors") files this motion for an order directing the Examiner to

comply with this Court's Order Appointing an Examiner Pursuant to Section 1104(c)(2) of

title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"),

dated January 16, 2009 (Docket No. 2569, the "Examiner Order"), and respectfully states as

follows:

## PRELIMINARY STATEMENT

1.          The Court appointed Anton R. Valukas as examiner (the "Examiner") in

these chapter 11 cases.  In connection with the Examiner's appointment, many interested

parties, including the Debtors and the Committee, negotiated, and the Court carefully crafted,

the scope of the Examiner Order to minimize duplication of investigative efforts already being

undertaken by the Debtors, the Committee and the trustee administering the estate of Lehman

Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970 (the "SIPA

Trustee").  Carefully delineating the scope of the Examiner's investigation was particularly

important with respect to potential claims flowing from the sale of the North American broker-

dealer assets of LBHI, LBI and certain of their affiliates to Barclays Capital Inc. ("Barclays") in

a transaction that closed shortly after LBHI's petition date (the "Sale Transaction"), as this is an

area in which multiple parties, including the Committee,[1] were already conducting their own

comprehensive investigations.[2]

2.          During the June 24, 2009 omnibus hearing before the Court, the Examiner

indicated that he is engaged in a comprehensive investigation with respect to all aspects of the

Sale Transaction, without regard to whether such aspects were expressly excluded from his

mandate.  Tr., Hearing, June 24, 2009, at 61:1-11 ( "each of the areas discussed that people

---

[1]          The Committee's Special Litigation Counsel, Quinn, Emanuel Urquhart Oliver & Hedges, LLP, is
representing the Committee in connection with the investigation of all aspects of the Sale Transaction.

[2]          Indeed, the Committee's investigation commenced shortly after the Sale Transaction closed, as disclosed in
the Committee's response to a settlement motion filed by the SIPA Trustee on December 22, 2008 (the
"December Settlement Motion").  See Limited Objection of Official Committee of Unsecured Creditors of
Lehman Brothers Holdings Inc., et al., to SIPA Trustee's Motion Under 11 U.S.C. §§ 105 and 363 and Fed.
R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, dated December 19, 2008
(Docket No. 453 in Case No. 08-1420 (JMP), the "Limited Objection").

2

want to take discovery on are things we are looking into.  We are looking into every one of those factual issues . . . .").[3]  The Examiner has not been charged with investigating <u>all</u> <u>aspects</u> of the Sale Transaction.  Instead, the Examiner was charged with investigating the <u>narrow</u> <u>issue</u> of potential claims against Barclays relating to the assets of LBHI-related entities and affiliates, <u>but</u> <u>not</u> <u>those</u> <u>of</u> <u>LBHI</u> <u>or</u> <u>LBI</u>.  This clause was included in the Examiner Order in response to the allegation of The Walt Disney Companies ("<u>TWDC</u>"), the movant with respect to the Examiner Motion, that certain assets of Lehman entities that had not filed chapter 11 petitions as of the time of the Sale Transaction may have been improperly included in the transfer of assets to Barclays.

        3.       By contrast to the Examiner, the Committee and the Debtors are investigating all aspects of the Sale Transaction, including the transfer of assets of LBHI and LBI, the assumption of liabilities by Barclays, and whether the transaction as ultimately consummated comports with the transaction that was represented to the Court (and the Committee).  In addition, the SIPA Trustee advised the Court that he would be investigating the propriety of various aspects of the Sale Transaction.[4]  For all of these reasons, the Examiner Order was carefully crafted to (i) provide TWDC with their requested relief; (ii) avoid having both the Examiner and the SIPA Trustee report on the same aspects of the Sale Transaction; and (iii) attempt to contain some of the costs associated with these activities and avoid duplication.

        4.       Maintaining a clear distinction between the simultaneous investigations is extremely important for many reasons, including the need to proceed with these investigations as quickly and efficiently as possible, with minimal duplication of effort.  By all accounts, the

---

[3]      A copy of the relevant portions of this hearing transcript is attached hereto as <u>Exhibit A</u>.

[4]      <u>See</u> Trustee's Objection to (I) Motion of Walt Disney Company for the Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code and (II) Joinder of Bank of America, N.A. in Motion [Docket No. 1320].

Examiner is diligently working to complete the areas of investigation delineated in the

Examiner Order.  Even as to those topics, the Examiner recently indicated that his investigation

will take longer and cost more than originally anticipated.  As such, the Committee, whose

constituents will be paying for any inefficiency and overlap in the investigation process,

respectfully asks the Court to direct that the Examiner comply with the Examiner Order and

confirm what it already expressly says.  Specifically, with respect to the Sale Transaction, the

Examiner should investigate only:

> Whether assets of any **LBHI Affiliates (other than Lehman Brothers, Inc.)** were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate.

Examiner Order, at 4 (emphasis added).  The Committee, the Debtors and the SIPA Trustee

should continue investigating all aspects of the Sale Transaction, including whether LBHI, LBI

or the Committee have colorable causes of action arising from the Sale Transaction.[5]  Three

parties investigating these subjects is more than sufficient.

## BACKGROUND

5.    On September 15, 2008 and periodically thereafter, the Debtors

commenced these chapter 11 cases.  The Debtors have been authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a)

---

[5]    The Committee was granted specific rights under the Sale Order and has noted previously that certain representations were made to it concerning the Sale Transaction prior to closing.  See Limited Objection; Response of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. to Debtors' Motion for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing Discovery from Barclays Capital Inc. (Docket No. 3778, the "Rule 2004 Response").

4

and 1108 of the Bankruptcy Code.  On September 17, 2008, the United States Trustee for the Southern District of New York appointed the Committee.

6.      On September 16, 2008, immediately following the commencement of LBHI's chapter 11 case, LBHI, LB 745 LLC and Barclays entered into an Asset Purchase Agreement for the purchase and sale of certain North American broker-dealer assets and three real properties, including Lehman's headquarters and two data centers.  The Debtors acted with all deliberate speed to close the transaction due to perceived risk of market dislocations relating to the collapse of the Debtors and LBI.  Accordingly, on September 20, 2008, within five (5) days of the filing of LBHI's petition, the Court entered an order (Docket No. 258) approving the Sale Transaction.  The LBI Sale closed on September 22, 2008.

### Examiner Order

7.      On October 20, 2008, TWDC filed its Motion for Appointment of Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code (Docket No. 1143, the "Examiner Motion"), which requested entry of an order appointing one or more examiners to conduct an investigation of LBHI and Lehman Brothers Commercial Corp. ("LBCC"), their direct and indirect subsidiaries, and their respective directors and senior officers.  The Examiner Motion specifically requested that the Examiner be permitted to investigate, inter alia, whether Barclays was benefiting from the business of LBCC.  On January 5, 2009, in the Debtors' Response in Opposition to the Motion of the New York State Comptroller For the Appointment of a Trustee or, In the Alternative, an Examiner with Expanded Powers, the Debtors proposed that the Examiner be charged to investigate, inter alia, "[w]hether assets of LBCC or other direct and indirect subsidiaries of LBHI were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court dated September 20, 2008, and whether consequences to LBCC of the consummation of the

transaction created more than colorable causes of action that inure to the benefit of its

creditors." Docket No. 2427.  On January 9, 2009, the Committee filed its response to the

Examiner Motion,[6] seeking to, inter alia, define the scope of the order appointing the examiner

so as to prevent duplication of investigative efforts.

        8.      On January 16, 2009, the Court entered the Examiner Order.  The final

form of the order was carefully crafted and negotiated to reflect the parties' respective concerns

and the rulings of the Court during oral argument to ensure that the investigation would proceed

through extensive coordination among the Debtors, the Committee, the SIPA Trustee and the

Examiner.  At various times throughout the process, the Court reiterated its view that such

coordination was necessary "to minimize duplication of effort and to avoid having the

[E]xaminer step on the toes of others or to have others step on the toe of the [E]xaminer."  See

Tr., Hearing, February 11, 2009, at 25:8-10; see also Tr., Hearing, January 14, 2009 (afternoon),

at 89:12-14 (stating that "multiple examinations of the same subject matter represent[] a

remarkably inefficient, cumbersome and potentially destructive use of attorney time").[7]

        9.      As a result of the foregoing concerns, many parties in interest collaborated

to ensure that the language of the Examiner Order was precisely drawn, specifically limiting the

matters as to which the Examiner should investigate and report.  With respect to the Sale

Transaction, the Examiner Order provided that the Examiner is to conduct an investigation as

to:

> Whether assets of any **LBHI Affiliates (other than Lehman
> Brothers, Inc.)** were transferred to Barclays Capital Inc. as a result

---

[6]    See Response of Official Committee of Unsecured Creditors to Motion of the Walt Disney Company for
Appointment of an Examiner Pursuant to Section 1104(c)(2) of Bankruptcy Code and Joinders Thereto
[Docket No. 2477].

[7]    Copies of the relevant portions of these transcript are attached hereto as Exhibit B and Exhibit C,
respectively.

of the sale to Barclays Capital Inc. that was approved by order of
the Bankruptcy Court entered September 20, 2008, and whether
consequences to any LBHI Affiliate as a result of the
consummation of the transaction created colorable causes of action
that inure to the benefit of the creditors of such LBHI subsidiary or
affiliate.

Examiner Order, at 4 (emphasis added).  The Examiner Order defined "LBHI Affiliate(s)" as

"LBCC or any other entity that currently is an LBHI chapter 11 debtor subsidiary or affiliate."

(Id., at 3.)  Clearly, the Examiner Order did not authorize the Examiner to investigate potential

claims against Barclays relating to the transfer of <u>LBHI</u> or <u>LBI</u> assets or liabilities assumed.

### Examiner's Progress

10.    By all accounts, the Examiner has been diligently investigating the events

leading up to the commencement of these chapter 11 cases to compile the vast amounts of

information that will comprise his final report.  With respect to issues concerning the Sale

Transaction, however, the Examiner's investigation appears to be in a nascent stage.

Specifically, according to the First Interim Fee Application of the Examiner and Jenner & Block

LLP (Docket No. 3319, "<u>First Fee Application</u>"), filed on April 10, 2009, the Examiner had

only spent 41.8 hours investigating the Sale Transaction.  <u>See</u> First Fee Application, ¶¶ 43-44.

11.    On the other hand, the Examiner and his counsel have expended

significant hours and resources investigating a multitude of other events leading to the Debtors'

bankruptcy filings.  Indeed, the Examiner's task has been so significant that, since his

appointment, he has filed three motions to hire additional attorneys to perform document review

tasks.  <u>See</u> Docket Nos. 3457, 3582, 4239.

12.    Additionally, the Examiner has informed the Court that, given the

magnitude of his assignment, he is currently over-budget and will likely not meet his forecasted

7

date of November 2009 to issue a report.[8]  See Tr., Hearing, June 3, 2009, at 18:1-6 (stating that

initial budget was "too optimistic" and that Examiner "may be as much as twenty-five to thirty

percent off of [the] initial budget");[9] Tr., Hearing, June 24, 2009, at 62:2-12 (stating that he

suspects the final report will be delivered after the target date of November 2009).  In light of

these facts, the Examiner's mandate should not be expanded, as the Examiner's statements to

the Court seem to request.

## **Committee's Investigation**

13.    The speed with which the Sale Transaction closed prevented the

Committee from completing the necessary due diligence.  It therefore initiated an investigation

into the transaction shortly after it closed.  The Committee first apprised the Court of its

investigation in December 2008 in connection with the December Settlement Motion.  While

the Court did not sustain the Committee's Limited Objection, it directed that the Committee

pursue additional information from Barclays in furtherance of its investigation on a consensual

basis.[10]

14.    The Committee promptly began negotiations with Barclays regarding the

consensual production of documents relevant to the Sale Transaction, sending document

requests to Barclays four days following the hearing on the December Settlement Motion,

meeting and conferring with Barclays on January 13, 2009 and February 3, 2009, and

---

[8]    Originally, the Examiner estimated that the investigation would require nine (9) months, and that the fees of the Examiner and its counsel for the investigation would total approximately $23 million.  See Preliminary Work Plan of Anton R. Valukas, Examiner, dated February 6, 2009.

[9]    A copy of the relevant portions of this hearing transcript is attached hereto as Exhibit D.

[10]    See Tr., Hearing, Dec. 22, 2008 at 50: 25, 51: 1-6 ("I think it is important that there be reasonably prompt resolution of outstanding questions that the Committee may have on the subject.  I would hope that it's not necessary for the Committee to have to file 2004 requests in order to get the information that it seeks which seems to be reasonable and consistent with its mandate.").  A copy of the relevant portion of the transcript is attached hereto as Exhibit E.

submitting modified document requests on February 10, 2009. Ultimately, between March and May 2009, Barclays produced documents in response to the Committees' requests. Also during this period, in connection with its investigation into the Sale Transaction, the Committee served document request on the Depository Trust Corporation (the "DTC") and interviewed a DTC principal on May 12, 2009. The Committee's investigation of the Sale Transaction is ongoing.

## Retention of Jones Day and the 2004 Discovery Motion

15.     On February 25, 2009, the Court granted the Debtors' Application Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtors, *Nunc Pro Tunc* to the Engagement Dates. (Docket No. 2925.) By that Order, Jones Day was charged with representing the Debtors with respect to certain specified matters and issues (the "Representative Matters").

16.     Subsequent to the retention of Jones Day, the Debtors requested that the Court to expand the scope of the Representative Matters to include, inter alia, representation of the Debtors in connection with "the examination of the negotiation and conclusion of that certain Asset Purchase Agreement dated September 16, 2008, and certain related or potentially related transactions and events involving the Debtors and Barclays Capital Inc. that occurred in and after September of 2008." See Supplement to the Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure for Authorization to Expand the Scope of Jones Day's Retention as Special Counsel, *Nunc Pro Tunc* to the Engagement Dates (Docket No. 3525), ¶ 9. On May 21, 2009, this request was granted by the Court without objection. Since that time, Jones Day has been pursuing this mandate and investigating potential claims in connection with the Sale Transaction on behalf of the Debtors in close consultation with the Committee.

17.     In connection with their investigation, on May 18, 2009, the Debtors filed a Motion for an Order, Pursuant to Federal Rule of Bankruptcy Procedure 2004, Authorizing Discovery from Barclays Capital, Inc. (Docket No. 3596, the "2004 Motion"). The purpose of the 2004 Motion was to obtain information relating to the Sale Transaction "specifically focused on whether the estate received appropriate value." 2004 Motion, ¶ 1. In light of its own investigation, the Committee filed a joinder in the 2004 Motion. Notwithstanding Barclays' objection, the Court granted the 2004 Motion on June 24, 2009 (Docket No. 4164, the "2004 Order"). The 2004 Order calls for broad disclosure by Barclays of documents and other information that may assist the estates and the Committee in their investigations into potential claims.

### The Examiner's Recent Statements

18.     During the hearing on the 2004 Motion, the Examiner's counsel stated that the Examiner was engaged in a detailed investigation into all of the topics covered by the 2004 Motion. Specifically, the Examiner's counsel stated:

> [We] want to make sure that the Court is aware, as I'm sure you had anticipated, that each of the areas that had been discussed that people want to take discovery on are things that we are looking into. We are looking into every one of those factual issues . . . .

See Tr., Hearing, June 24, 2009 at 61:1-9. As the Committee thereafter indicated (see id. at 62:15-23), the description by the Examiner's counsel of the Examiner's current activities exceeds the scope of the mandate in the Examiner Order. By this motion, the Committee is accepting the Court's suggestion that this issue be resolved without delay.

### ARGUMENT

19.     It is axiomatic that a bankruptcy courts have the power interpret and enforce their own orders. See, e.g., Global Crossing Estate Representative v. Alta Partners

10

Holdings LDC, 385 B.R. 52, 84 (Bankr. S.D.N.Y. 2008) ("[t]he Court can construe its own

orders, with the benefit of its knowledge of its intent in ordering as it did."); Casse v. Key Bank

Nat'l Ass'n, 198 F. 3d 327, 333 ("[t]he bankruptcy court was in the best position to interpret its

own order") (2d. Cir. 1999)  (quoting Colonial Auto Ctr. v. Tomlin, 105 F.3d 922, 940 (4th Cir.

1997).

20.     It is well-settled that bankruptcy courts have the power to limit the scope

of the investigation of an examiner appointed pursuant to section 1104 of the Bankruptcy Code.

See Loral Stockholders Protective Comm. v. Loral Space & Commc'ns., Ltd. (In re Loral Space

& Commc'ns., Ltd.), No. 04 Civ. 8645 (RPP), 2004 WL 2979785, *5 (S.D.N.Y. Dec. 23, 2004)

("[I]t is [the] court's duty to fashion the role of an examiner to avoid substantial interference

with the ongoing bankruptcy proceedings.  To that end, the Bankruptcy Court may exercise its

discretion to limit the scope of the examiner's investigation and the compensation and expenses

available to the examiner."); In re UAL Corp., 307 B.R. 80, 86 (Bankr. N.D. Ill. 2004) ("[T]he

court presiding over a large bankruptcy should have the authority to limit examiner

investigations to 'appropriate' subjects, methods, and duration . . .").

21.     Here, the Committee asks the Court to direct the Examiner to comply with

the Examiner Order to ensure that the Examiner does not duplicate (and potentially stall) the

ongoing investigations by the Committee, the Debtors and the SIPA Trustee into potential

claims of the estates arising from the Sale Transaction and whether the estates received

appropriate value.  The Committee believes that the Court appropriately defined the scope of

the Examiner's investigation as it relates to the Sale Transaction.  Accordingly, the Committee

submits the Court should direct the Examiner to comply with the Examiner Order and,

therefore, with respect to the Sale Transaction, investigate only claims relating to the sale to

Barclays of assets of entities other than LBHI and LBI.

### A.    Examiner Order Is Unambiguous

22.    The language of the Examiner Order makes clear that the Examiner has not been tasked with investigating the potential claims of LBHI or LBI against Barclays in connection with the Sale Transaction.  Specifically, with respect to the Sale Transaction, the Examiner Order provides only that the Examiner is to investigate "whether assets of any LBHI Affiliates (other than Lehman Brothers Inc.) were transferred to Barclays Capital Inc. . . . and whether consequences to any LBHI Affiliate . . . created colorable causes of action to inure to the benefit of such LBHI subsidiary or affiliate."  Examiner Order, at 4.  Significantly, the Examiner Order <u>does</u> <u>not</u> give the Examiner authority to investigate the sale of the assets of or the potential claims belonging to <u>LBHI</u> <u>or</u> <u>LBI</u>.  Thus, the Examiner Order has expressly reserved investigation into potential unauthorized transfer or other claims of LBHI or LBI relating to the Sale Transaction outside the Examiner's purview.

### B.    The Requested Relief Is In The Best Interests Of The Estates

23.    In addition to upholding the express limitations of the Examiner Order, restricting the Examiner from expanding the scope of his mandate with respect to the Sale Transaction is in the best interests of the estates.  As the Court has emphasized several times during discussions concerning the role of the Examiner, there is a need to ensure close collaboration among the Debtors, the Committee, the SIPA Trustee and the Examiner to minimize the duplication of efforts.  <u>See</u> Tr., Hearing, February 11, 2009, at 25:8-10; <u>see</u> <u>also</u> Tr., Hearing, January 14, 2009 (afternoon), at 89:12-14.  By ensuring that the Examiner is not investigating the identical aspects of the Sale Transaction as the Debtors, the Committee, and potentially the SIPA Trustee, the estates will avoid a substantial and unnecessary expenditure of funds that, ultimately, will inure to the benefit of unsecured creditors.

12

24.     The significant resources needed to conduct investigations in this case of unprecedented size and complexity is exhibited by the Examiner's own work to date.  There is no question that the Examiner has been working diligently.  The reality, however, is that he cannot possibly investigate all issues and all potential claims at a reasonable cost and within a reasonable amount of time, nor should he be expected to do so.  Indeed, the Examiner has already hired multiple additional professionals, is operating 25-30 percent over budget, and has made clear that he likely to miss the target deadline for his report.  Having spent only approximately forty (40) hours thus far investigating the Sales Transaction, there is no reason to add additional items related to the Sales Transaction to the Examiner's mandate.  The Debtors and the Committee have been and will continue to diligently pursue the investigation of the Sale Transaction as it relates to potential claims of the Debtors.  At bottom, from cost-control and timeliness perspectives, it is much more practical and efficient for the Debtors and the Committee to handle the detailed investigation into potential estate claims arising from the Sale Transaction.

25.     Additionally, the Debtors and the Committee are in the best position to conduct the investigation due to their extensive head start and the interests of their constituencies.  The Debtors are currently pursuing formal discovery regarding the Sale Transaction from Barclays pursuant to the 2004 Order.  The Committee has been investigating the Sale Transaction since shortly after it closed and has been engaged in informal discovery with Barclays since December 2008.  Moreover, the Committee, as the representative of all unsecured creditors, is particularly well-suited to investigate potential claims relating to the Sale Transaction.

26.     Finally, it is important to the integrity of the dispute-resolution process that the Debtors and the Committee complete their investigations and resolve any potential

13

estate claims related to the Sale Transaction free from the possibility that a pending examiner

report will delay the resolution.  The Debtors and the Committee, therefore, in addition to

uncovering potential claims in their investigations, must be able to actively pursue those claims

as they as they are identified.  The ability to do this may be significantly compromised,

however, if the Examiner's investigation remains ongoing and, thus, its conclusions remain

unknown at the time that the Debtors and/or the Committee wish to bring or resolve potential

claims.  Accordingly, the Court should confirm that the Examiner's investigation does not

include matters related to the Sale Transaction beyond those set forth in the Examiner Order.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter an order

directing the Examiner to comply with the language of the Examiner Order, particularly with

respect to the Sale Transaction.


Dated:    New York, New York
          July 1, 2009

                          **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY** LLP

                          By:  /s/ Dennis F. Dunne
                              Dennis F. Dunne
                              Dennis C. O'Donnell
                              Evan R. Fleck
                              1 Chase Manhattan Plaza
                              New York, New York 10005
                              Telephone:  (212) 530-5000

                              -and-

                              David S. Cohen (admitted *pro hac vice*)
                              1850 K Street, NW, Suite 1100
                              Washington, D.C. 20006
                              Telephone:  (202) 835-7500

                          Counsel for Official Committee of Unsecured
                          Creditors of Lehman Brothers Holdings Inc., et al.

14

## Exhibit A

**Excerpts from June 24, 2009 Hearing Transcript**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.



          Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.



          Debtor.

- - - - - - - - - - - - - - - - - - - -x

          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          June 24, 2009

          10:15 AM

B E F O R E :

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

60

1    have said from the outset, to be a transparent process but it

2    is also to be an orderly and efficient one.  And there's no

3    efficiency associated with having particular parties jump on

4    the bandwagon of discovery.  That bandwagon has been moved to

5    the side and will remain as a side issue until such time as the

6    examiner finishes his investigation and produces a report and

7    the committee finishes its investigation.

8            To the extent that you have questions that the

9    committee can answer, I'm sure the committee will be

10   cooperative in responding to any reasonable request that you

11   have.  To the extent that after this process has run its

12   course, there is still unanswered questions.  No parties in

13   interest, including those of your client, will be adversely

14   affected.  You'll have an opportunity to pursue your separate

15   interests either in separate litigation or in separate

16   permitted discovery.  But nothing's happening today.

17           MR. DUNN:  Okay, Your Honor.  Thank you.

18           MR. BYMAN:  Your Honor, may I approach on behalf of

19   the examiner?

20           THE COURT:  Yes, please.  I'd like to hear what the

21   examiner's position is.

22       (Pause)

23           MR. BYMAN:  Good morning, Your Honor.  Robert Byman

24   on behalf of the examiner.  We actually did not file anything

25   and don't take a position on this motion because we don't think

61

1    it's appropriate for us to have one.  But want to make sure

2    that the Court is aware, as I'm sure you had anticipated, that

3    each of the areas that had been discussed that people want to

4    take discovery on are things that we are looking into.  We are

5    looking into every one of those factual issues, whether or not

6    we report on them is something that I'm not in a position to

7    say yet because we are still agnostics -- we are still the

8    perfect jury that hasn't tried to form a conclusion.  But we

9    are looking into each of those issues.  We have already

10   interviewed a number of former LBHI people who are now at

11   Barclays.

12        I would like to simply state for the record that

13   while the course of production of witness interviews and

14   documentation from Barclays hasn't been as fast as I would have

15   liked it.  I'm also not as tall as I would have liked to have

16   become.  We have gotten cooperation from Barclays.  We've

17   gotten everything we've asked for.  We've never gotten a no.

18   So we expect to be able to comment on all of these issues.

19        By the same token, we haven't taken a position on

20   this because, as Jones Day points out to you, they have a

21   deadline that doesn't apply to us.  If they're looking at one-

22   year deadline under Rule 60, we can't assure them that we'll be

23   able to answer their questions by then.  So I think that's

24   something that they have to take up with you but I don't want

25   anybody in this room to think that we're not looking into all

62

1     of these issues.

2           THE COURT:  And indeed from what I read in the Ernst

3     & Young papers, November 2009 continues to be the target date

4     for your report or do you wish to revise that date?

5           MR. BYMAN:  It is our target.  But I will tell you

6     that we expect to talk to you sometime in August when we have a

7     better understanding of what our target is.  It's becoming less

8     and less likely that that's possible because of unanticipated

9     delays in production of documents, being able to interview

10    witnesses as quickly as we thought.

11          THE COURT:  So you're telling me it's not going to be

12    November, it'll be some time later than that.

13          MR. BYMAN:  I suspect it will, Your Honor.

14          THE COURT:  All right.

15          MR. DUNN:  Your Honor, just a follow up to this, and

16    today is not the day for this but I suspect we're going to be

17    back in front of you on the scope issue.  As Your Honor knows

18    we spent hours and hours carefully calibrating the scope to

19    avoid duplication of efforts and the cost that would go into

20    duplicating those efforts.  And what I just heard is that

21    they're exceeding the scope as the order is currently drafted

22    and I suspect that we'll be back in front of Your Honor on an

23    appropriate motion.

24          THE COURT:  I think that's probably a good idea that

25    it be brought sooner rather than later.

63

1          MR. DUNN:  I agree, Your Honor.

2          MR. KOBAK:  Good morning, Your Honor.  James Kobak on

3    behalf of the SIPA trustee.  Your Honor, I'll be very brief.

4    My purpose for rising now is because we submitted a statement.

5    We think the issues that are being pursued here are relevant to

6    things that we need to look into for various purposes,

7    including disputes we have with Barclays and the report that we

8    need to prepare.  And I think, consistent with the way we've

9    been dealing with some of the other parties in their

10   investigations, all that we would ask is whatever Your Honor

11   order we be permitted to attend depositions, to receive copies

12   of documents and so forth.  I think in the long run that will

13   avoid a lot of duplication of effort by us and I would think by

14   Barclays.  I don't know if Barclays is willing to agree to that

15   voluntarily or not.  But if they're not and if Your Honor does

16   order some production and some discovery, we would hope that we

17   would be permitted to participate in that way rather than

18   having to reduplicate the effort ourselves.

19          THE COURT:  Understood.

20          MR. KOBAK:  Thank you.

21          MS. SCHINDLER-WILLIAMS:  Good morning, Your Honor.

22   Sara Schindler-Williams of Kramer Levin on behalf of the Bank

23   of New York Mellon as indentured trustee for the Main Street

24   bonds.  I would just like to highlight a few points, although

25   I'm not -- I understand Your Honor's concerns about the

**<u>Exhibit B</u>**

**Excerpts from February 11, 2009 Hearing Transcript**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555 (JMP)

         08-01420 (JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.

      Debtors.

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

      Debtor.

- - - - - - - - - - - - - - - - - - - - -x

        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        February 11, 2009

        10:01 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

24

1    heard at this time?  Happily, apparently, no one else does.

2    But Mr. Miller --

3             MR. MILLER:  May I just say something, Your Honor?

4             THE COURT:  -- is coming in for last licks.

5             MR. MILLER:  Your Honor, I would just note that Your

6    Honor has already authorized the creditors' committee to

7    conduct Rule 2004 examinations with respect to JPMorgan Chase.

8             THE COURT:  Correct.

9             MR. MILLER:  There are other applications for Rule

10   2004 examinations which are not going to be determined today.

11   But there are ongoing other investigations and other activities

12   besides the examiner besides which, Your Honor, this is a

13   somewhat unique examiner in the context that most examiners are

14   appointed and engaged to look at activities that occurred pre-

15   Chapter 11.  That's the function of an examiner under the

16   Bankruptcy Code.  This examiner has a further responsibility,

17   to look into the Barclays transaction and transactions that may

18   have occurred between the 15th and the 22nd or the filing dates

19   of certain of the subsidiaries.  That's a different thing.

20           Now, those areas, Your Honor, to the extent the

21   examiner may want to investigate those, they can be fenced off

22   or re-fenced or whatever the appropriate word is.  That should

23   not limit the debtors-in-possession and it's appropriate maybe

24   for the creditors' committee to have access to other documents.

25   We're not asking to participate in all the interviews and all

25

1    the depositions.  But there are going to be depositions and

2    interviews on general subjects.  And that's what we're asking

3    for, Your Honor.  Thank you.

4          THE COURT:  Okay.  In connection with my

5    consideration of the application for the appointment of the

6    examiner, one of my principal concerns, and I think I was

7    fairly clear on expressing this during the hearing, was to make

8    this as efficient as possible, to minimize duplication of

9    effort and to avoid having the examiner step on the toes of

10   others or to have others step on the toe of the examiner.

11          I am impressed with the letter that I received from

12   Mr. Byman of Jenner & Block dated February 6th along with the

13   preliminary work plan proposed by the examiner.  I am mindful

14   of Mr. Miller's concerns.  This is an unusual circumstance in

15   that Mr. Marsal was appointed to be, in effect, the CRO,

16   responsible officer independent fiduciary in his own right.  We

17   have the committee also with fiduciary duties owed to creditors

18   involved in an examination and an investigation.  We have the

19   SIPA trustee with a statutory obligation to conduct an

20   examination.  And we have the examiner recently appointed with

21   a specified charge which is quite broad.  Additionally, there

22   are still pending within the case a number of adjourned motions

23   for 2004 discovery requested by various individual creditors.

24          I am satisfied, based upon my review of the

25   submissions on behalf of Mr. Valukas as examiner, that the

26

1    proposed preliminary work plan represents a reasonable basis

2    for the examiner to begin and conduct his work.  But I am also

3    satisfied, based upon Mr. Valukas' remarks made this morning in

4    open court and his demeanor in making those remarks, that this

5    is a process that is somewhat fluid.  It is extremely difficult

6    as a conceptual matter to predetermine in advance how parties

7    are going to act with each other in matters of this

8    significance and complexity.  I'm satisfied that Mr. Valukas,

9    as examiner, will exercise reasonable and informed discretion

10   in deciding whether and when to share information with the

11   debtor-in-possession.

12          I hear him loud and clear, however, in saying that he

13   believes it is inappropriate at the outset to have the subject

14   of the examination directly involved in the examination.  For

15   that reason, even though I understand that Mr. Miller, on

16   behalf of his client, is making a reasoned argument that a

17   debtor-in-possession is not to be distinguished from a SIPA

18   trustee in terms of the fiduciary duties owed to creditors and

19   the obligations undertaken.  I nonetheless believe that for

20   purposes of getting this process started that the largely

21   consensual preliminary work plan that has been proposed

22   represents a reasonable and appropriate blueprint for the

23   conduct of this investigation.

24          For that reason, to the extent that Mr. Miller's

25   remarks and the quoted objection, which is really an informal

27

1    one, which appears in the letter that I have reviewed,

2    constitute objections to the preliminary work plan, those

3    objections are overruled.  Nonetheless, I believe that the

4    spirit of cooperation, which has produced this extremely

5    flexible document, is one that I believe should continue and

6    that it makes good sense for this to be a work in progress that

7    is modified as appropriate and that, like many blueprints,

8    involve some field work to make the project appropriately

9    complete.

10            For that reason, I'm going to approach this

11   empirically and assume that the examiner and the other parties

12   in interest who have participated in good faith to generate

13   this plan will continue to talk to each other, will approach

14   issues with an open mind and will, as appropriate, make

15   adjustments.

16            I'm prepared to approve the preliminary work plan in

17   the form that it has been submitted and incorporate for

18   purposes of my approval the general remarks that I've made here

19   this morning.

20            MR. MILLER:  I believe, Your Honor, there is an

21   order --

22            MR. VALUKAS:  There are two orders, Your Honor, I

23   have in connection with the appointment of Jenner & Block and

24   the Rule 2004 motion which I have.  We'll have to modify the

25   order which we have drafted to incorporate the last reference,

**<u>Exhibit C</u>**

**Excerpts from January 14, 2009 Afternoon Session Hearing Transcript**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555 (JMP)

        08-01420 (JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.

     Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

     Debtor.

- - - - - - - - - - - - - - - - - - - -x

       United States Bankruptcy Court

       One Bowling Green

       New York, New York


       January 14, 2009

       2:32 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

87

1    explain why it would be unduly burdensome to provide us with

2    the information relating to these issues at the same time that

3    its provided to either the committee and/or the examiner.

4            And, finally, Your Honor, I did not get up in

5    connection with the examiner motion.  First of all, I probably

6    didn't have standing to.

7            THE COURT:  You're right, you didn't have standing

8    to.

9            MR. HOROWITZ:  What's that?

10           THE COURT:  You're right; you did not have standing

11   to.

12           MR. HOROWITZ:  And I'm saying this entirely without

13   prejudice to the position that we very strongly take that we

14   should not be forced to defer to the examiner, but in the event

15   that Your Honor does conclude that we should defer to the

16   examiner, I would point out that then we've sort of unwillingly

17   become a party to the examiner process and we should be

18   included in the meet and confer and be allowed to have some

19   input into the way that that process works.

20           THE COURT:  Okay, I understand your position.

21           MR. HOROWITZ:  Thank you, Your Honor.

22           THE COURT:  We've been dealing with 2004 requests

23   since the second week of the case.  I can remember that on

24   either the Monday or the Tuesday following the week of the

25   teleconference with Mr. Miller and other parties-in-interest,

88

1    including dealing with the Harbinger 2004 requests.  And how to

2    deal with certain case management issues that were manifest

3    even in the second week of the case.

4         We've come a long way, but in certain respects we

5    haven't.  We're still dealing with 2004 requests.  And I think

6    that certain 2004 requests are to be distinguished from others.

7    In the SIPA case I wrote a very brief opinion granting the

8    motion for 2004 discovery brought by the DCP parties seeking

9    the discovery of certain targeted information that was clearly

10   relevant to the representation of that group, at least in my

11   opinion it was.

12        I mention it because I don't think there is one law

13   of the case determination that applies to 2004 discovery.  In

14   some respects it may be permissible based upon the needs of a

15   part for cause shown.  In some respects it's a source of

16   interference, and the proliferation of costs, delay and undue

17   expense.

18        This is a close question in my view.  The fact that

19   the committee has weighed in in opposition to their request,

20   the fact that the debtor has weighed in in opposition to their

21   request, in my view goes much more to orderly case

22   administration than it does to the entitlement to take the

23   discovery in the first instance.

24        When I first reviewed this contested matter, it was

25   my initial inclination to believe that the issues surrounding

89

1    the transfer of the commodities business to Barclays

2    represented a subject matter that might be profitably explored

3    privately, parochially, if you will, by counsel for the

4    indentured trustee.  I understand the reason why the indentured

5    trustee is pressing this; it's consistent certainly with the

6    fiduciary duty of that trustee.  But my thoughts on the matter

7    have changed as a result of today's hearing.

8            The principal reason for my change of perspective is

9    the extensive argument that took place in reference to the

10   motion for appointment of an examiner.  During the course of

11   that argument I made clear and others appeared to concur with

12   my state of mind on this subject, that multiple examinations of

13   the same subject matter represented a remarkably inefficient

14   cumbersome and potentially destructive use of attorney time.

15   We haven't even yet reached the subpoenas to be issued by Mr.

16   Giddens in support of his own independent examination.  And I'm

17   sure we'll address that before too long.

18           So in this setting in which I have been approaching

19   case management issues from the perspective of how can we best

20   deal with the needs of this case, which are in some respects

21   exceptional, I conclude that 2004 discovery of the type sought

22   by the indentured trustee in this instance does not need to be

23   pursued now.  Indeed, in colloquy with Mr. Horowitz, he

24   confirmed that the need for the information was actually in no

25   respect time sensitive.  As a result, what I'm going to do is

1    to deny the 2004 request without prejudice to its being

2    reasserted in the future in the even that the information

3    sought is not otherwise forthcoming by virtue of the work of

4    the creditors' committee or the work of the examiner.

5            Counsel for the committee has stated that the

6    committee is involved as an estate fiduciary in an examination

7    of the facts and circumstances surround the sale of debtors'

8    assets to Barclays.  That investigation would appear to subsume

9    many of the same issues that are the subject matter of the

10    pending 2004 request.

11            Additionally, the argument with respect to

12    appointment of the examiner made clear particularly since the

13    motion was first filed by the Walt Disney Company, that the

14    examiner will be looking into questions of whether or not

15    assets of non-debtor affiliates somehow made their way over to

16    Barclays at the beginning of the case under the authority of

17    the September 20 sale orders.

18            Under the circumstances, it seems to me that we have

19    one examiner and one creditors' committee that will be dealing

20    with the very same subject matter.  Admittedly, they will be

21    dealing with that subject matter not from the perspective of a

22    zealous advocate.  And no doubt Mr. Horowitz would be doing

23    this discovery as a zealous advocate.  But zealous advocacy is

24    not a requirement to obtain information.  I believe under the

25    circumstances that it makes good sense for the case as a whole

91

1    for particularized requests for information to be put to one

2    side and not to become the subject of ongoing contested matters

3    in this Court unless exception circumstances can be shown.  I

4    believe that no exceptional circumstances have been shown here.

5    But that does not mean that the indentured trustee is not

6    entitled to have questions answered in due course.  And I

7    expect that those questions will be answered at some point over

8    the next several months.

9         In the event that those questions remain outstanding,

10   counsel for the indentured trustee should feel completely free

11   in reasserting its 2004 request and nothing that I've said here

12   is intended to deprive the indentured trustee of the ability to

13   later attempt to assert that the circumstances, in fact, are

14   exceptional.  And that such particularized discovery is, as a

15   result, appropriate.

16        That's my ruling.

17        MR. HOROWITZ:  Your Honor, I ask if we could

18   participate in the examiner meet and confer.

19        THE COURT:  Well, see that's a subject which is no

20   longer before me.  My inclination to that is no.  And it's no

21   for several reasons.  First, as you pointed out in your own

22   comments a few minutes ago, you did not have standing to appear

23   and be heard with respect to the examiner motion because you

24   did not intervene in that proceeding.  Secondly, you are not

25   exceptional as it relates to the multitude of individuals who

**<u>Exhibit D</u>**

**Excerpts from June 3, 2009 Hearing Transcript**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555, 08-01420

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS INC., ET AL.,

                    Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

                    Debtor.

- - - - - - - - - - - - - - - - - - - -x


                U.S. Bankruptcy Court

                One Bowling Green

                New York, New York


                June 3, 2009

                10:04 a.m.


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

17

1          THE COURT:  All right.

2          MR. KRASNOW:  Having noted that, Your Honor, if I may

3    turn to the amended agenda.  And with the Court's permission,

4    start with item number 1 under the uncontested matters heading.

5    That is an application filed by the examiner.  And I may turn

6    over the podium to examiner's counsel.

7          MR. BYMAN:  Good morning, Your Honor.  Robert Byman on

8    behalf of the examiner.

9          Your Honor, this is an uncontested motion, but I

10   thought I should use this opportunity to let you know that this

11   is our second application to hire contract attorneys.  There

12   will be a third.

13         We anticipate getting to a group of approximately

14   seventy contract attorneys in order to get through the volume

15   of documents that we have now collected and we anticipate

16   getting.  Without having that corpus of people we would not be

17   able to get through these documents in a reasonable period of

18   time.  And even so, with the seventy contract attorneys it's

19   going to be at least the end of August, we think, before we've

20   completed document review.

21         THE COURT:  It sounds like a dreadful job.

22         MR. BYMAN:  It's a dreadful job for those seventy

23   people, and the people that have to supervise them.  But it's a

24   necessary job.

25         THE COURT:  I understand that.

18

1        MR. BYMAN:  That, also, makes us advise the Court, as

2    we've already advised the U.S. Trustee, that we now project the

3    initial budget estimates that we made were, perhaps, too

4    optimistic.  We think now -- we're projecting that we may be as

5    much as twenty-five to thirty percent off of that initial

6    budget.  We've advised the U.S. Trustee of that, we intend to

7    talk to the fee committee of that and keep them advised.  And

8    if Your Honor wants more detail, we will give that to you, as

9    well, of course.

10        THE COURT:  Well, there will be an appropriate time

11   for that.

12        MR. BYMAN:  But with that, we're still working.  We

13   hope not to expand our budget in terms of time.  We still hope

14   to get you a report this year.

15        THE COURT:  Fine.  Your request to hire additional

16   contract attorneys is approved.

17        MR. BYMAN:  Thank you.  We have the hardcopy order and

18   disk.  Should I give it to Mr. Krasnow?

19        THE COURT:  Mr. Krasnow can be the keeper of orders.

20        MR. KRASNOW:  Thank you, Your Honor.

21        THE COURT:  And he can delegate that task to somebody

22   else on his staff.  No doubt he'll do that.

23        MR. BYMAN:  Thank you, Your Honor.

24        THE COURT:  Okay.

25        MR. KRASNOW:  Your Honor, we now turn to item number 2

19

1    on the agenda, which is the debtors' first omnibus motion for

2    authority to reject certain executory contracts.  That's motion

3    is noted as docket number 3589.

4         Your Honor, the motion as filed covered approximately

5    sixty-six operational-type contracts.  This has nothing to do

6    with the derivatives and the like, that were identified by the

7    debtors as contracts as to which the debtors no longer require

8    the services to be provided by the counterparties.  It is

9    uncontested.  There are no objections.  However, we were

10   contacted by Barclays who informed us that sixteen of the

11   contracts that had been listed in the schedules attached to the

12   motion had, in fact, been assumed and assigned to it.

13        In light of that, Your Honor, we have revised the

14   order that would be submitted to the Court if the Court grants

15   the motion to delete those particular contracts from the scope

16   of the motion.

17        THE COURT:  Just make sure you delete the right ones.

18        MR. KRASNOW:  Your Honor, we will we have.  In light

19   of the non-objection, based on the allegations set forth in the

20   motion, we would respectfully request that the Court grant the

21   motion as modified.

22        THE COURT:  The motion is granted as modified.

23        MR. KRASNOW:  Thank you, Your Honor.  The next item on

24   the calendar is the debtors' motion for an approval of an

25   exchange agreement with State Street Bank Trust Company.

**<u>Exhibit E</u>**

**Excerpts from December 22, 2008 Hearing Transcript**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555 (JMP)

          08-01420 (JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.

          Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

          Debtor.

- - - - - - - - - - - - - - - - - - - -x

                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                December 22, 2008

                10:14 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

49

1    market to market value as of that weekend and the transaction

2    was permitted to close and had to close to save the various

3    jobs that we're very happy that they did save, then that would

4    be fine.  But there are major discrepancies between what we

5    were told that weekend and what's being put forth here today.

6    Now, I understand none of that is part of the factual record

7    which is comforting.  When we filed our objection, that was not

8    the case but I think that's now been made very clear.  And what

9    we have asked is, and we asked them on Friday, could we please

10   get some final reconciliation of the numbers and Houlihan Lokey

11   will work with Deloitte and work with Barclays.  And the

12   problem we face, which, I think, Your Honor has heard in other

13   contexts is the critical people on Lehman Brothers' side don't

14   work at Lehman Brothers anymore.  And so, it's difficult that

15   they were the ones who were assisting in the consummation of

16   the transaction.  They're not there anymore when the questions

17   are to be asked.  And we just want to get the final answer,

18   Your Honor.  That's really all we want.

19          THE COURT:  When you asked the question on Friday

20   about getting together and trying to work cooperatively to get

21   to the bottom of all this, was there a response?

22          MR. KIRPALANI:  Their response was we'll give you the

23   language in the order and that's it.  This morning, the parties

24   did tell me that they would be happy to look at the list, it's

25   five items, look at the list that Houlihan helped me put

50

1    together and we can talk about it sometime in mid-January.  You

2    know, I guess, that's where we are.  They said they don't think

3    it's appropriate for the Court to have to order them to comply

4    and I said you're just causing us to file a motion to do that.

5    It's hard to argue that the information shouldn't be made

6    available.  But, I guess, that's probably where we are.  We'd

7    have to file something if they don't give us the information.

8              THE COURT:  All right.  I'll just make the general

9    comment.  It's not a ruling and I'm not ordering anybody to do

10   anything because there's nothing before me that leads to the

11   entry of an order at least at this point other than an order

12   with respect to the settlement agreement itself.

13             It's obviously in the best interest of orderly case

14   administration that information be shared as promptly as it can

15   be consistent with the other conflicting obligations that the

16   financial advisors and lawyers have in this massive case with

17   enormously complicated issues.

18             Nonetheless, I consider it to be important for us to

19   get to what I'll call closure with respect to the basics of the

20   transaction that was approved by order entered September 20th.

21   And this motion with respect to the settlement agreement is a

22   reasonable platform on which to address some of these issues

23   because while this is not fairly to be characterized as a

24   cleanup item, it's a very significant matter.  It does draw all

25   of our attention back to what happened in September.  And I

51

1    think it important that there be reasonably prompt resolution

2    of outstanding questions that the committee may have on the

3    subject.  I would hope that it's not necessary for the

4    committee to have to file 2004 requests in order to get the

5    information that it seeks which seems to be reasonable and

6    consistent with its mandate.

7         As it relates to the issue of standing that has been

8    alluded to during the course of this hearing and in your own

9    remarks at the outset, by making this comment, I am not making

10   any judgment as to the standing of the creditors' committee

11   appointed in the LBHI case to participate actively and directly

12   in the LBI case.  But it is apparent to me that the transaction

13   that was approved on September 20th was approved by means of

14   two orders, one entered in the LBHI case and one entered in the

15   LBI case.  It is reasonable for the creditors' committee which

16   represents substantial creditor interest in LBHI to have access

17   to information so that it can fulfill its functions in the LBHI

18   case.

19        Additionally, it appears to me reasonable for the

20   LBHI committee not just in the context of what's before me now

21   but in other settings to be a party in interest for purposes of

22   major transactions affecting the LBI case.

23        This does not constitute a ruling with respect to

24   standing.  I do, however, note that these cases operate off the

25   same agenda, very frequently have overlapping agenda items and

52

1    regardless of their actual procedural status as stand alone

2    cases are in many material respects linked.

3              To the extent that there is a reasonable standing

4    objection made at some point in the future by the LBI trustee,

5    I'm prepared to consider it on its merits.  But to the extent

6    that the parties can work cooperatively, I consider that to be

7    desirable and something to be pursued in good faith.

8              MR. KIRPALANI:  Thank you, Your Honor.  I appreciate

9    your remark.

10             THE COURT:  Whatever happened with Royal Bank?  Mr.

11   Ostrow, do you wish to make your way to the front of the room?

12             MR. OSTROW:  Thank you, Your Honor.  Good morning,

13   Your Honor.  Alec Ostrow from Stevens & Lee on behalf of Royal

14   Bank America.

15             THE COURT:  Good morning.

16             MR. OSTROW:  Your Honor, Royal Bank America objected

17   to this settlement on four grounds.  One is that it didn't want

18   to be bound and, in particular, drew attention to particular

19   language in the order that said anyone who objects is deemed to

20   consent.  We objected to that.

21             We were also concerned that our particular property,

22   collateral that was posted with Lehman Brothers Special

23   Financing somehow made its way to Lehman Brothers Inc. and

24   somehow made its way to Barclays might be affected in this

25   particular transaction.  And we didn't know whether it was or

**<u>Proposed Order</u>**

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

-and-

David S. Cohen (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x
                                                            :
In re:                                                      :          Chapter 11 Case
                                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :          No. 08-13555 (JMP)
                                                            :
                            Debtors.                        :          (Jointly Administered)
                                                            :
------------------------------------------------------------ x

### ORDER DIRECTING THE EXAMINER TO COMPLY WITH THE COURT'S ORDER DIRECTING APPOINTMENT OF AN EXAMINER PURSUANT TO SECTION 1104(c)(2) OF BANKRUPTCY CODE

Upon the motion, dated July 1, 2009 (the "Motion"), of the Official

Committee of Unsecured Creditors for an Order Directing the Examiner to Comply with

the Order Directing Appointment of an Examiner Pursuant to Section 1104(c)(2) of

Bankruptcy Code; and the Court having reviewed the Motion and having considered the

statements of counsel before the Court (the "Hearing"); and the Court having found that:

(a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b)

this is a core proceeding pursuant to 28 U.S.C. § 157 (b); and (c) notice of the Motion

and the Hearing was sufficient under the circumstances; and the Court having determined

that the legal and factual bases set forth in the Motion and at the Hearing establish just

cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Examiner's[1] investigation with respect to the Sale Transaction

is limited to whether assets of any affiliates of Lehman Brothers Holding Inc. ("LBHI")

(other than Lehman Brothers Inc.) were transferred to Barclays Capital Inc. ("Barclays")

as a result of the Sale Transaction, and whether consequences to any LBHI affiliate (other

than Lehman Brothers Inc.) as a result of the consummation of the Sale Transaction

created colorable causes of action that inure to the benefit of the creditors of such LBHI

subsidiary or affiliate.

3.      The Examiner's investigation with respect to the Sale Transaction

shall not include whether LBHI or Lehman Brothers Inc. received reasonably equivalent

value for the Sale Transaction or whether the consequences to LBHI or Lehman Brothers

Inc. as a result of the consummation of the Sale Transaction created colorable causes of

action that inure to the benefit of the creditors of LBHI or Lehman Brothers Inc.

4.      The Court shall retain jurisdiction to hear and determine all matters

arising from or related to this implementation of this Order.

Dated: _____, 2009
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.