WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                                                 :
In re                                                            :   Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,                           :   08-13555 (JMP)
                                                                 :
                         Debtors.                                :   (Jointly Administered)
                                                                 :
                                                                 :
-----------------------------------------------------------------x
```

**DEBTORS' OBJECTION TO MOTION OF LEVINE LEICHTMAN CAPITAL
PARTNERS DEEP VALUE FUND, L.P. FOR AN ORDER COMPELLING
DEBTORS' PERFORMANCE UNDER OPEN TRADES ORDER, OR IN THE
<u>ALTERNATIVE COMPELLING PAYMENT OF AN ADMINISTRATIVE EXPENSE</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtor in the above-referenced chapter 11 cases, Lehman Commercial Paper Inc. ("<u>LCPI</u>"), as debtors and debtors in possession (together, the "<u>Debtors</u>"), object to the Motion of Levine Leichtman Capital Partners Deep Value Fund, L.P. for an Order Compelling Debtors' Performance Under Order Dated December 16, 2008 [Docket No. 2258] Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations and Post-Petition Purchase and Sale Agreement, or in the Alternative Compelling Payment of an Administrative Expense [Docket No. 4059] (the "<u>Motion to Compel</u>") and respectfully represent:

US_ACTIVE:\43086260\06\43086260_6.DOC\

**Preliminary Statement**

1.     The Motion to Compel arises out of one of LCPI's assumed open trades. As described in further detail below, LCPI has been unable to date to deliver all of the consideration that they are obligated to deliver to the movant under the applicable trade.

2.     Because LCPI's inability to comply with such obligations arises as a result of the proceeding under the Securities Investment Protection Act of 1970 ("SIPA") commenced with respect to the Debtors' affiliate brokerage firm, Lehman Brothers Inc. ("LBI"), the Debtors request that the Court deny the Motion to Compel without prejudice and provide the Debtors with additional time within which to satisfy their obligations to movants.

**Background**

3.     On September 15, 2008 and October 5, 2008, respectively (as applicable, the "Commencement Date"), LBHI and LCPI each commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.     On September 19, 2008, the SIPA proceeding was commenced with respect to LBI. A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

6. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and, by order dated January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

### The Plastech Open Trade

7. Prior to the Commencement Date, LCPI was active in the secondary loan market. In this capacity, LCPI purchased and sold both par and distressed commercial loans.

8. On occasion, LCPI required the assistance of its affiliate, LBI, to facilitate the settlement of certain loan transactions in instances where the subject loans had been converted to securities in connection with borrowers' in court or out of court restructurings. In such situations, it was customary for LCPI to request that such securities be issued in LBI's name. LCPI then entered into trades to sell such loan positions, along with the associated securities to which holders were entitled, and LBI would deliver the securities to the purchasers under such trades. The purchasers paid the purchase price to LCPI. LBI, a mere conduit for settlement of the transaction, at no time held an independent interest in the securities in its possession.

9. Prior to the Commencement Date, LCPI, as lender, was party to a credit agreement (the "Plastech Credit Agreement") among, *inter alia*, LCPI and the borrower thereunder, Plastech Engineered Products, Inc. ("Plastech"). LCPI, with other lenders, extended credit to Plastech in the form of a term loan secured by a first lien on various assets (the "Plastech Loan"). LBI was not a party to the Plastech Credit Agreement.

10. On July 1, 2008, a portion of the Plastech Loan was converted to equity, and LCPI, in its capacity as lender under the Plastech Credit Agreement, became entitled to receive certain securities in JCIM, LLC (the "JCIM Securities"). During the limited subscription period that followed this conversion, the market continued to trade the Plastech Loan, subject to the

requirement to deliver the JCIM Securities when issued. Subsequent to the expiration of the subscription period, the universe of holders of JCIM Securities was settled and the amount of JCIM Securities held by each was ascertained.

11. As was its custom, LCPI designated LBI as the named owner of the JCIM Securities. LBI, however, paid no consideration to LCPI for the JCIM Securities, and, upon information and belief, did not record its ownership of the JCIM Securities in its books and records.

12. On July 30, 2008, LCPI entered into a trade confirmation (the "Trade Confirmation") with Levine Leichtman Capital Partners Deep Value Fund, L.P. and certain of its affiliates (collectively, the "Fund") in which LCPI agreed to sell to the Fund a specified amount of the Plastech Loan, which included the right to receive the associated JCIM Securities as proceeds of the loan (the "Trade"). A copy of the Trade Confirmation is annexed hereto as Exhibit A. The Trade Confirmation incorporates by reference the Loan Syndications and Trading Association, Inc.'s Standard Terms and Conditions for Distressed Trade Confirmations (the "LSTA Standard Terms").

13. On November 14, 2008, the Debtors filed the Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations [Docket No. 1541] (the "Open Trades Motion"), seeking, *inter alia*, to assume the Trade Confirmation. On December 16, 2008, the Court entered the Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations [Docket No. 2258] (the "December 16 Order"). The December 16 Order approved LCPI's assumption of the Trade Confirmation.

14.     Following its assumption of the Trade Confirmation, LCPI worked diligently to close the Trade.  On February 19, 2009, LCPI entered into a Purchase and Sale Agreement with the Fund (the "Purchase and Sale Agreement"), agreeing therein to use "all reasonable commercial efforts" to deliver the JCIM Securities "which are being assigned by Lehman Brothers Inc." to the Fund "as soon as reasonably practicable and in any event on or before June 15, 2009."  Purchase and Sale Agreement ¶¶ 1(l), 3.3; *see also* Definition of "LBI Assignments" at p.3.  LCPI agreed therein to indemnify the Fund for losses it incurred or suffered as a result of a breach by LCPI.  Purchase and Sale Agreement ¶ 6.1(a).  Furthermore, the Purchase and Sale Agreement provides that "[t]he Parties agree to bear their own respective legal and other costs and expenses for preparing, negotiating, executing and implementing this Agreement and any related documents and consummating the Transaction."  Purchase and Sale Agreement ¶ 7.2.

15.     In furtherance of its obligation under the Purchase and Sale Agreement to transfer the JCIM Securities, counsel for LCPI spent many hours corresponding with the SIPC Trustee regarding the Trade and the JCIM Securities.  Counsel for LCPI explained the above-described practices between LCPI and LBI with regard to LCPI-owned loans that had been converted to securities, as well as the specific the history of the transaction at issue.  LCPI requested that the SIPC Trustee transfer the JCIM Securities to LCPI's name, for ultimate delivery to the Fund.  The SIPC Trustee has not yet agreed to transfer the applicable JCIM Securities to LCPI.  Accordingly, the Debtors have not been able to deliver the JCIM Securities to the Fund.

16.     On May 29, 2009, counsel for LCPI sent an email to the Fund explaining the situation and requesting that the Fund grant LCPI an extension to September 15, 2009 to transfer the JCIM Securities.  A copy of the Email from E. Finn to K. Johnstone dated May 29, 2009, is annexed hereto as Exhibit B.

17.     Nevertheless, on June 19, 2009, the Fund filed the Motion to Compel, seeking entry of an order (i) requiring LCPI to deliver the JCIM Securities to the Fund within 30 days from entry of an order granting the Motion to Compel, and (ii) granting the Fund an administrative expense in an amount equal to the amount the Fund is required to spend on the open market to source the JCIM Securities from a third-party in the event LCPI is unable to deliver the JCIM Securities by such date.  In addition, the Fund seeks an administrative expense for the additional costs and expenses it incurred in attempting to close the Trade and obtain delivery of the JCIM Securities.

## The Relief Requested By the Fund is Premature and Should be Denied

18.     In accordance with its obligations under the Trade Confirmation, LCPI executed the Purchase and Sale Agreement, transferred the debt portion of the Plastech Loan to the Fund, and did and continues to do all that is within its power to effect a transfer of the JCIM Securities from LBI to the Fund.  Because the JCIM Securities were issued in LBI's name, and because of LBI's SIPA proceeding, whether and when the JCIM Securities are delivered is outside LCPI's control.  As discussed further below, LCPI believes that the SIPC Trustee may yet transfer the JCIM Securities to LCPI, which will then deliver the JCIM Securities to the Fund.  Accordingly, LCPI should be permitted additional time to deliver the JCIM Securities to the Fund.

19.     The Fund requests that the Court order that the JCIM Securities be delivered to the Fund by a date certain in the near future, and direct that LCPI's failure to effect delivery of the JCIM Securities by such date should automatically give rise to an administrative expense claim in the amount of the cost incurred by the Fund in purchasing the JCIM Securities from a third party.  Such relief is inappropriate because LCPI cannot control whether the JCIM Securities will be transferred by LBI to LCPI's name for ultimate delivery to the Fund.

Moreover, the alternative relief is unwarranted, and subjects the Debtors' estates to a potentially large administrative expense claim. The Fund did not pay any extra consideration to LCPI in exchange for the JCIM Securities; because the JCIM Securities are very thinly traded, there is not an ascertainable market price for the JCIM Securities. Thus, the Fund could conceivably pay any price to purchase the requisite amount of JCIM Securities, and LCPI would be required to reimburse the Fund in full at such price. *See* Motion to Compel ¶ 17 (stating that the JCIM Securities "are very thinly traded and there is virtually no market for such units").

20. Although it is true that "equitable estoppel principles may be applied by the court to deny the debtor permission to escape its obligation to perform the contract it assumed," *see In re Ionosphere Clubs, Inc.*, 85 F. 3d 992, 1000 (2d Cir. 1996), application of that equitable doctrine is inappropriate at this juncture. LCPI has every intention of delivering the JCIM Securities to the Fund, and thus has neither changed its position nor renounced the Trade. Unless and until it becomes clear that LCPI will be unable to perform its obligations under the Trade Confirmation, any award of an administrative expense claim is premature.

21. The Debtors continue their efforts to persuade the SIPC Trustee to transfer the JCIM Securities to the Fund. The Debtors believe that the JCIM Securities constitute "customer property" under SIPA, such that the SIPC Trustee should be required by SIPA to return the JCIM Securities to LCPI.[1] Accordingly the Debtors believe that resolution of the Motion to Compel is inappropriate until it becomes clear whether LBI will transfer the JCIM Securities to LCPI.

---

[1] Section 78fff-4(c) of SIPA, entitled "Payment to customers" provides that the SIPC Trustee "shall promptly satisfy all obligations of [LBI] to each of its customers relating to . . . securities . . . by delivery of securities . . . to such customer . . .insofar as such obligations are ascertainable from the books and records of the member or are otherwise established to the satisfaction of [the SIPC Trustee]." 15 U.S.C. § 78fff-2(b). SIPA's definition of customer is broad enough to include LCPI on these facts. Section 78lll(2) of SIPA provides that "customer" means "any person . . . who has a claim on account of securities received . . . or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales,

22. Another alternative the Fund has suggested is that LCPI should satisfy its obligation to transfer JCIM Securities to the Fund by purchasing JCIM Securities on the open market to deliver to the Fund, rather than waiting for LBI to release the JCIM Securities. The Debtors submit, however, that this suggestion is impracticable because there is virtually no market for the JCIM Securities. It is unlikely that the Debtors would be able to obtain the JCIM Securities on the open market. The Debtors submit that, even if they were able to obtain replacement JCIM Securities, they might be forced to pay an artificially high price therefor. Because resolution of LBI's customer property claims may eventually effect a release of the JCIM Securities, enabling LCPI to deliver them to the Fund, the Debtors submit that requiring LCPI to purchase replacement securities on the open market at this time, even if possible, constitutes an unnecessary and wasteful expense to LCPI's estate, and thus is not a tenable solution.

23. Furthermore, the Debtors submit that the impracticability of LCPI's performance under the Purchase and Sale Agreement, in light of LBI's unexpected delay in releasing the JCIM Securities, may excuse LCPI's failure to deliver the securities to the Fund in time to meet the deadline set forth in the Purchase and Sale Agreement. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 261 cmt. a ("Even though a party, in assuming a duty, has not qualified the language of his undertaking, a court may relieve him of that duty if performance has unexpectedly become impracticable as a result of a supervening event.").

---

pursuant to purchases, as collateral security, or for purposes of effecting a transfer." 15 U.S.C. § 78lll(2). Here, LBI held the JCIM Securities on LCPI's behalf for safekeeping with a view to sale, and was obligated to transfer the securities at LCPI's direction upon the consummation of any such sale. Accordingly, the Debtors submit that the JCIM Securities are customer property under SIPA, and that SIPA requires the SIPC Trustee to promptly deliver the JCIM Securities to LCPI. LCPI's claim for the JCIM Securities was timely filed against LBI. A copy of customer property claim number 900006444 in the LBI SIPA proceeding, entitled "LCPI Claim for JCIM LLC Units," is annexed hereto as Exhibit A.

24. The Debtors reserve all rights with respect to the merits of the Fund's request for an administrative expense claim arising from LCPI's failure to deliver the JCIM Securities by June 15, 2009. At this juncture in both the LCPI and the LBI cases, the Debtors submit that an order providing that the Fund is automatically entitled to an administrative expense claim if the JCIM Securities are not delivered to the Fund within 30 days would be premature. The Debtors further submit that this Court is authorized to grant LCPI additional time to comply with its obligation to deliver the JCIM Securities to the Fund. Pursuant to the December 16 Order, the Court retained jurisdiction "to hear and determine all matters arising from or related to the implementation" of LCPI's assumption of the Trade Confirmation, including matters related to any subsequent agreements between the parties regarding the Trade or the reasonableness of the parties' efforts to comply with their obligations thereunder. Because "[t]he Bankruptcy Court is a court of equity," it is appropriate that principles of fairness guide the Court's consideration of the relief requested in the Motion. *See, e.g.*, *Nat'l Labor Rels. Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984); *Bank of Marin v. England*, 385 U.S. 99, 103 (1966). Finally, under section 105(a) of the Bankruptcy Code, the Court may issue any order "necessary or appropriate to carry out the provisions of this title," including provisions relating to the priority status of the various claims against the Debtors' estates.

25. LCPI has not rejected or renounced its obligations under the Trade Confirmation or the Purchase and Sale Agreement, but rather has complied in full with such obligations to the extent that it is able and has furthermore done all within its power to deliver the JCIM Securities to the Fund. Nonetheless, the Fund seeks to have this Court grant it an administrative expense claim in the amount equal to the excessive costs of purchasing the JCIM Securities from third party sellers in a restricted market, despite the fact that LCPI believes that it may eventually be

able to settle the Trade by delivering to the Fund the JCIM Securities held in LBI's name. In the unlikely event that it becomes clear that LCPI is not entitled to the JCIM Securities held in LBI's name, then the Court can fashion an appropriate remedy. At this point, the appropriate solution is to permit LCPI additional time to deliver the JCIM Securities to the Fund.

26. Finally, the Debtors briefly address the Fund's request for an award of an administrative expense claim for the additional costs and expenses it incurred in attempting to close the Trade and obtain delivery of the JCIM Securities. The Debtors submit that, even if the Court finds that the Debtors have breached either the Trade Confirmation or the Purchase and Sale Agreement and that the Fund is entitled to damages, the amount of such damages will be determined under the terms of the applicable contract. The LSTA Standard Terms, which are incorporated in the Trade Confirmation, provide that "[e]ach of the Buyer and Seller shall bear its respective costs and expenses in connection with the Transaction." LSTA Standard Terms ¶ 9. The Fund, therefore, certainly is not entitled to costs and expenses under the assumed Trade Confirmation. Nor is the Fund entitled to the full amount of its requested costs and expenses under the Purchase and Sale Agreement, which provides that each party must bear its own legal and other costs and expenses in implementing the Purchase and Sale Agreement and in consummating the Trade, and which would require LCPI to indemnify only the Fund's losses incurred as a result of a breach by LCPI. Whether and to what extent the Fund has suffered

compensable losses is an issue that the Court does not have to determine at this time.

WHEREFORE the Debtors request that the Court deny the Motion to Compel in its entirety, without prejudice, and grant the Debtors additional time to deliver the JCIM Securities and such other and further relief as is just.

Dated: July 9, 2009
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**(LCPI Claim for JCIM LLC Units)**

**LSTA**  DECEMBER 2006

# LEHMAN COMMERCIAL PAPER INC
**LSTA DISTRESSED TRADE CONFIRMATION**

**To:** Levine Leichtman Capital Partners Deep Value Fund, L.P.
**Contact:** John Klinge
**Tel No.:** 310-275-5335
**Fax No.:** 310-275-1305
**Email:** jklinge@llcp.com

**From:** Lehman Commercial Paper Inc.
**Contact:** Elnorma Baptiste-Bain
**Tel No.:** 212-526-1189
**Fax No.:** 646-758-4993
**Email:** ebaptist@lehman.com

**Confirms:** Jenna Yoo
**Tel. No.:** 212-526-2081
**Fax No.:** 646-834-1847
**Email:** jenna.yoo@lehman.com

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Distressed Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc. (the "LSTA") as of December 1, 2006,[1] which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date:** | July 30, 2008 |
| **Seller:** | Lehman Commercial Paper Inc[2] ☒ Principal[3] ☐ Agent |
| **Buyer:** | Levine Leichtman Capital Partners Deep Value Fund, L.P.[4] ☒ Principal[3] ☐ Agent |
| **Credit Agreement:** | The FIRST LIEN TERM LOAN CREDIT AND GUARANTY AGREEMENT, dated as of February 12, 2007, by and among PLASTECH ENGINEERED PRODUCTS, INC., a Michigan corporation ("Borrower"), CERTAIN SUBSIDIARIES OF BORROWER, as Guarantors, the Lenders party thereto, and GOLDMAN SACHS CREDIT PARTNERS L.P. ("GSPC"), as Syndication Agent, as Administrative Agent, and as Collateral Agent. |
| **Borrower:** | Plastech Engineered Products, Inc.[5] |
| **Form of Purchase:** | If no election is made, "Assignment" applies. |

---

[1] The Standard Terms and Conditions are available on the LSTA website at http://www.lsta.org.

[2] Designate specific funds, if any, and allocations within T+1 (this may be done on separate trade confirmations); identify ERISA counterparties.

[3] If Seller or Buyer is acting as a Riskless Principal, specify this in the "Trade Specific Other Terms of Trade" section below. (See Sections 11 and 19 of the Standard Terms and Conditions.) It is not necessary to identify the third party with respect to a Riskless Principal.

[4] Designate specific funds, if any, and allocations within T+1 (this may be done on separate trade confirmations); identify ERISA counterparties.

[5] If multiple borrowers, specify the entity that is named as the first borrower under the Credit Agreement.

**LSTA EFFECTIVE DECEMBER 2006** Copyright © LSTA 2006. All rights reserved.

NYC180612.2

2

☒ Assignment
☐ Participation
☐ Other: _____

**Purchase Amount/ Type of Debt:**

| Purchase Amount[6] | Type of Debt[7] | Facility[8] | CUSIP Number |
|---|---|---|---|
|  | 1st Lien Term Loan | TL | N/A |

**Purchase Rate:**

**Accrued Interest:**
☐ Settled Without Accrued Interest
☒ Trades Flat

**Credit Documentation to be provided by Seller:**
☐ Yes (only applicable if Buyer was not a lender on Trade Date and made its request on or prior to Trade Date)
☒ No

**LSTA Standard Other Terms of Trade:**
☐ This Transaction shall be subject to the successful completion of the purchase by Seller of the Purchase Amount of the Debt to be sold to Buyer hereunder

☐ This Transaction shall be subject to the successful completion of the sale by Buyer of the Purchase Amount of the Debt to be purchased from Seller hereunder

☐ Flip representations shall apply (election is applicable only if Seller is a Riskless Principal (i.e., the first box above has been checked), the settlement of the sale of the Purchase Amount of the Debt to Buyer from Seller occurs no later than one (1) business day after the settlement of the purchase of the Purchase Amount of the Debt by Seller from Seller's immediate prior seller(s) and the other criteria specified in Section 11 of the Standard Terms and Conditions are met)

**Trade Specific Other Terms of Trade:**
☒ Specify Other Terms:

Unless otherwise specified herein, Lehman Commercial Paper Inc. shall not be required to pay (in the aggregate) more than one half of one Agent transfer fee for transactions specified in this or any other confirmation allocated by an investment manager or advisor to multiple funds or accounts [9]

---

[6] Specify amount of Debt to be transferred or, in the case of Debt subject to further funding obligations (as in revolving credit or letter of credit facilities), specify amount of total exposure to be transferred, both funded and unfunded.

[7] Specify whether the type of Debt is term, revolving, letter of credit (if stand-alone), claim amount or other.

[8] Specify Credit Agreement designation of the facility (e.g., tranche). Specify multicurrency component, if any.

[9] Set forth any other terms of this Transaction; Include in this Section a specific reference to each term, if any, in this Confirmation (including the Standard Terms and Conditions) that has been modified in any manner whatsoever from the form of LSTA Distressed Trade Confirmation and/or the LSTA Standard Terms and Conditions for Distressed Trade Confirmations; if more space is needed, attach additional pages.

NYC:180612.2

3

Reference is made to: (i) that certain Asset Purchase Agreement, dated as of June 19, 2008, among JCIM, LLC, as buyer, Plastech Engineered Products, Inc., as Parent, LDM Technologies, Inc., MBS Polymet, Inc., Plastech Exterior Systems, Inc., Plastech Frenchtown, Inc., Plastech Romulus, Inc., LDM Holding Mexico, Inc., Plastech Decorating Systems, Inc. and LDM Holding Canada, Inc., as sellers, and Goldman Sachs Credit Partners, L.P., solely in its capacity as collateral agent for the first lien term party lenders, and (ii) that certain Asset Purchase Agreement, entered into as of June 2008, among Plastech Engineered Products, Inc., as Parent, LDM Technologies, Inc., Plastech Decorating Systems, Inc. and Plastech Exterior Systems, Inc., as sellers, Goldman Sachs Credit Partners, L.P., solely in its capacity as collateral agent for the first lien term party lenders, and Decoma International of America, Inc., as purchaser (the asset purchase agreements identified in clauses (i) and (ii) being collectively referred to herein as the "Asset Purchase Agreements"). Buyer is entitled to receive all proceeds with respect to the Purchase Amount, including without limitation, the Applicable Percentage (as defined below) of all distributions and/or proceeds as contemplated by the JCIM, LLC Limited Liability Company Agreement (together with related documents and agreements, the "JCIM LLC Agreement"), distributions from the estates of any of the Plastech debtors, and the Asset Purchase Agreements (and any other sale agreements entered into between any of the Plastech debtor entities and any third party, the proceeds of which constitute collateral which secures the Purchase Amount) in each instance payable in respect of the Purchase Amount, including, without limitation, any cash (other than cash payment made to Lenders on or about July 1, 2008), notes, limited liability company membership units and earn-out payments. The term "Applicable Percentage" means 3.10584677% (which is calculated as follows: (a) the Purchase Amount divided by (ii) $77,680,000, which is the global amount of all First Lien Term Loans outstanding on July after giving effect to the $184,670,000.00 aggregate permanent principal amount reduction that occurred on July 1, 2008).

**Subject to:**     Negotiation, execution and delivery of reasonably acceptable contracts and instruments of transfer in accordance herewith.

NYC:180612.2

4

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the attention of **Jenna Yoo** at the following fax number(s) or e-mail address(es): Jenna.yoo@lehman.com.

If you have any questions, please contact **Jenna Yoo** at **212-526-2081**.

**LEHMAN COMMERCIAL PAPER INC.**

By: _____
Name: TINA CHEN
~~AUTHORIZED SIGNATORY~~
Date: 2/19/09

**Levine Leichtman Capital Partners Deep Value Fund, L.P.**

By: _____
Name: Stephen Hogan
Date: 2/19/08

By: _____
Name: John E. Klinge
Date: 2/19/08

NYC:180612.2

# EXHIBIT B

**(Email from E. Finn to K. Johnstone dated May 29, 2009)**

US_ACTIVE:\43086260\06\43086260_6.DOC\



"Finn, Erika" &lt;ErikaFinn@andrewskurth.com&gt;

07/09/2009 01:23 PM

To &lt;erica.coleman@weil.com&gt;

cc

bcc

Subject FW: Plastech Lehman to LLCP (CD 2/19/09)

---

**From:** Finn, Erika
**Sent:** Friday, May 29, 2009 11:59 AM
**To:** 'Johnstone, Kathryn I.'
**Cc:** Hoyt, David
**Subject:** Plastech Lehman to LLCP (CD 2/19/09)

Hi Kathy,

Lehman Commercial Paper Inc. ("LCPI") has been using, and will continue to use, reasonable commercial efforts to deliver 32,989 Class B Units to LLCP DV Plastech B, LLC (the "Class B Units") and 40,630 Class C Units to LLCP DV Plastech C, LLC (the "Class C Units" and, together with the Class B Units, the "Units").

The SIPC Trustee's counsel is currently reviewing LCPI's directive to Lehman Brothers Inc. to transfer the Units. LCPI has been actively working with the SIPC Trustee to obtain the necessary consents from the SIPC Trustee for the transfer of the Units. Given the complexity of the bankruptcy case and the SIPC proceeding, it is not reasonably practicable that the SIPC Trustee will be able to consent to the transfer of the Units by June 15, 2009.

LCPI kindly requests that your clients, LLCP DV Plastech B, LLC and LLCP DV Plastech C, LLC, extend the date pursuant to which LCPI shall deliver the Units to your clients to **September 15, 2009**, with the understanding that LCPI will continue to use reasonable commercial efforts to deliver the Units as soon as reasonably practicable.

Do not hesitate to contact me directly with any questions or to discuss further.

Thanks,

---

Erika N. Finn
Andrews Kurth LLP
450 Lexington Avenue
New York, NY 10017
212-850-2865 (office)
212-850-2929 (fax)

Confidentiality Notice: The information contained in this e-mail and any attachments to it may be

legally privileged and include confidential information intended only for the recipient(s) identified above. If you are not one of those intended recipients, you are hereby notified that any dissemination, distribution or copying of this e-mail or its attachments is strictly prohibited. If you have received this e-mail in error, please notify the sender of that fact by return e-mail and permanently delete the e-mail and any attachments to it immediately. Please do not retain, copy or use this e-mail or its attachments for any purpose, nor disclose all or any part of its contents to any other person. Thank you.


Treasury Circular 230 Disclosure - To comply with requirements imposed by the Internal Revenue Service, we inform you that any tax advice contained in this written communication (including any attachment) is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed on the person. If this written communication contains any tax advice that is used or referred to in connection with the promoting, marketing or recommending of any transaction(s) or matter(s), this written communication should be construed as written to support the promoting, marketing or recommending of the transaction(s) or matter(s) addressed by this written communication, and the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor. No limitation has been imposed by Andrews Kurth LLP on disclosure of the tax treatment or tax structure of the transaction(s) or matter(s).