Hearing Date and Time: August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
In re                                                         :    Chapter 11 Case No.
                                                              :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                  :    08-13555 (JMP)
                                                              :
                           Debtors.                           :    (Jointly Administered)
                                                              :
                                                              :
-----------------------------------------------------------------x

### NOTICE OF LBSF'S MOTION PURSUANT TO SECTION 1505 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ACT AS THE FOREIGN REPRESENTATIVE OF ITS ESTATE IN THE UNITED KINGDOM

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Special Financing ("LBSF") and together with Lehman Brothers Holdings Inc and its affiliated debtors in the above referenced chapter 11 cases, the "Debtors") for authorization to act as a foreign representative in the United Kingdom on behalf of its estate, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **July 31, 2009 at 4:00 a.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 9, 2009
      New York, New York

    /s/ Lori R. Fife
    Lori R. Fife
    Robert J. Lemons

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtors
    and Debtors in Possession

Hearing Date and Time: August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                       :
In re                                                  :    Chapter 11 Case No.
                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,           :    08-13555 (JMP)
                                                       :
                    Debtors.                           :    (Jointly Administered)
                                                       :
                                                       :
------------------------------------------------------------------x

**LBSF'S MOTION PURSUANT TO SECTION 1505**
**OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ACT AS**
**THE FOREIGN REPRESENTATIVE OF ITS ESTATE IN THE UNITED KINGDOM**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Special Financing Inc. ("LBSF") as debtor and debtor in possession (together with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), files this Motion and respectfully represents:

**Background**

    1.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

5. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

6. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

2

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## **Preliminary Statement**

8. On June 17, 2009, this Court entered its order approving an unprecedented and ambitious project, the framework of which is set out by that certain Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies (the "Protocol") dated May 12, 2009 [Docket No. 4020]. While the measure of success of the Protocol will be known only in time, the Debtors remain confident that these cases may one day serve as a model for other courts and insolvency professionals who must fashion cooperative approaches in the context of a multinational bankruptcy.

9. As this Court is aware, however, a few dark clouds have formed on the horizon. Certain parties whose interests are at odds with the interests of the Debtors and their creditors have availed themselves of courts in jurisdictions outside of the United States in an attempt to seize upon property of the estate that, while theoretically within the *in rem* jurisdiction of this Court, currently lies outside of this Court's grasp and control. While the Debtors have sought to defend against such actions through consensual negotiation, in certain instances, the Debtors are finding that it will be necessary for them and this Court to obtain the assistance of foreign courts to maintain control of their property. The Debtors hesitate, however, to request blanket authority from this Court to proceed with seeking such assistance in courts all around the world. Accordingly, the Debtors anticipate requesting such authority as and when they find that the assistance of a foreign court is necessary and appropriate for the particular circumstances.

10. Such circumstances have recently arisen in the High Court of Justice Chancery Division, Royal Courts of Justice (the "High Court") in London. LBSF has been forced to defend itself in the High Court against foreclosure on certain trust collateral (the "Collateral") that secures LBSF's interest in a Credit-Default Swap with Saphir Finance Public Limited Company, an Irish corporation that issued various credit-linked synthetic notes pursuant to a multi-issuer secured obligation program known as the Dante Program. On May 13, 2009, in an effort to seize control over the Collateral, Perpetual Trustee Company Limited ("Perpetual") – an Australian noteholder – filed a claim (the "Perpetual Action") in the High Court, seeking a declaratory judgment that the trustee of the Collateral, BNY Corporate Trustee Services Limited ("BNY"), must pay it in accordance with a priority of payment scheme that would have the effect of subordinating LBSF on account of the commencement of LBSF's chapter 11 case. LBSF was joined to the Perpetual Action on May 20, 2009, and on the same day filed in this Court its adversary proceeding against BNY, *Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited* (Case No. 09-01242) (the "BNY Adversary").

11. In the High Court, LBSF has filed an application to stay the Perpetual Action, pending the outcome of the BNY Adversary. The High Court has not yet ruled on LBSF's temporary stay application. In the meantime, however, on June 9, 2009, a second group of noteholders, Belmont Park Investments Pty Limited and others (collectively, the "Belmont Claimants") commenced a second action against BNY (the "Belmont Action") – substantially similar to the Perpetual Action – which LBSF also applied to join. The two cases are now due to be heard together in the High Court. LBSF is concerned, however, that even if it is able to seek a temporary stay in respect of both the Perpetual Action and the Belmont Action, there are likely to be other noteholders actions in the offing. In order to ensure that a permanent stay is in place

4

to shield the estate from further actions that may pour into the High Court, LBSF believes that it is necessary to seek the High Court's assistance through recognition of LBSF's chapter 11 case.

**Relief Requested**

12.     By the Motion, LBSF seeks authorization, pursuant to section 1505 of the Bankruptcy Code, to take the following actions: act as the foreign representative of its estate in the United Kingdom (the "UK"); seek recognition of the above referenced chapter 11 case on behalf of its estate; request that the High Court lend assistance to this Court in protecting the property of LBSF's estate; and seek any other appropriate relief from the High Court that the High Court deems just and proper.

**Basis for the Relief Requested**

13.     Section 1505 of the Bankruptcy Code allows a debtor in possession to obtain court approval to subsequently submit a petition to a foreign court that (i) requests recognition of the debtor's U.S. bankruptcy case, and (ii) recognizes the debtor in possession as the foreign representative of the debtor's estate. Section 1505 of the Bankruptcy Code provides:

> A trustee or another entity (including an examiner) may be authorized by the court to act in a foreign country on behalf of an estate created under section 541. An entity authorized to act under this section may act in any way permitted by the applicable foreign law.

11 U.S.C. § 1505. Section 1505 only applies to cases filed under chapters other than chapter 15 of the Bankruptcy Code because a chapter 15 case does not create an estate under section 541. For chapter 11 cases, authority to act as a foreign representative may be granted to the debtor in possession because a "trustee," as defined by section 1502(6) of the Bankruptcy Code, "includes…a debtor in possession in a case under any chapter of this title." *See* 11 U.S.C. § 1502(6).

5

14. The purpose of section 1505 is not to provide the debtor with authority to conduct business in a foreign country. A debtor in possession does not generally require court approval to take such action on behalf of the bankruptcy estate in the ordinary course of business, at home or abroad. Rather, the authority sought under this section allows a debtor to petition a foreign court for recognition of its U.S. bankruptcy case, and to request that the foreign court cooperate with and lend assistance to the debtor and the bankruptcy court in meeting the objectives of both chapter 15 of the Bankruptcy Code and the UNCITRAL Model Law on Cross-Border Insolvency (the "Model Law" and, with the accompanying Guide to Enactment, the "Guide to Enactment"), on which chapter 15 is based.[1] These objective are stated in section 1501 of the Bankruptcy Code:

> (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
> (1) cooperation between—
>
>> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>>
>> (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade and investment;
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

---

[1] *See* MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO ENACTMENT (UNCITRAL 1999), U.N. Commission on International Trade Law, G.A. Res. 52/158, U.N. GAOR 30th Sess., Supp. No. 17, U.N. Doc. A/52/17 (1997), *available at* http://www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model.html.

6

(4)  protection and maximization of the value of the debtor's assets; and

(5)  facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.[2] Thus, the authority sought by a debtor under section 1505 is specific to seeking recognition of the debtor's U.S. bankruptcy case and fostering cooperation between the bankruptcy court and foreign courts.

15. An explicit grant of this authority is meant to facilitate the process of petitioning for recognition in a foreign court. For this reason, Article 5 of the Model Law provides that the person or body administering a reorganization or liquidation in a country that has enacted the Model Law (an "Enacting State") "is authorized to act in a foreign State on behalf of a proceeding under…the laws of the enacting State relating to insolvency." Model Law Art. 5. The Guide to Enactment explains that

> [t]he lack of such authorization in some States has proved to be an obstacle to effective international cooperation in cross-border cases. An enacting State in which administrators are already equipped to act as foreign representatives may decide to forgo inclusion of article 5, although even such a State might want to keep article 5 in order to provide clear statutory evidence of that authority.

See Guide to Enactment ¶ 84. Clear evidence of a chapter 11 debtor's authority to act in a foreign country is particularly necessary because a chapter 11 case commences immediately

---

[2]   The preamble of the Model Law is virtually identical:

> The purpose of this Law is to provide effective mechanisms for dealing with cases of cross-border insolvency so as to promote the objectives of:
>
> (a)  Cooperation between the courts and other competent authorities of this State and foreign States involved in cases of cross-border insolvency;
>
> (b)  Greater legal certainty for trade and investment;
>
> (c)  Fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested persons, including the debtor;
>
> (d)  Protection and maximization of the value of the debtor's assets; and
>
> (e)  Facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

7

upon the filing of a petition, with no order signed by the court that explicitly appoints the debtor as the trustee of the bankruptcy estate. The fact that a chapter 11 debtor has this authority by virtue of being a debtor in possession may not be persuasive to a foreign court.

        16.      Moreover, absent a court order, a chapter 11 debtor may find it difficult to satisfy the requirements of a petition for recognition. These requirements are substantially similar in most countries that have adopted the Model Law. Article 15 of the Model Law provides that a petition shall be accompanied by

> (a) A certified copy of the decision commencing the foreign proceeding and appointing the foreign representative; or
>
> (b) A certificate from the foreign court affirming the existence of the foreign proceeding and of the appointment of the foreign representative; or
>
> (c) In the absence of evidence referred to in subparagraphs (a) and (b), any other evidence acceptable to the court of the existence of the foreign proceeding and of the appointment of the foreign representative.

Model Law, Art. 15.2.[3] Because of the differences between chapter 11 of the Bankruptcy Code and most other national insolvency laws, a chapter 11 debtor generally does not have the type of evidence specified in Article 15.2(a) of the Model Law. Congress therefore modified the text of Article 5 of the Model Law when incorporating it into chapter 15. The legislative history to section 1505 of the Bankruptcy Code explains the reason for this variance in the text as codified by chapter 15:

> While the Model Law automatically authorizes an administrator to act abroad, this section requires all trustees and debtors to obtain court approval before acting abroad. That requirement is a change from the language of the Model Law, but one that is purely internal to United States law. Its main purpose is to ensure that the court has knowledge and control of possibly expensive activities, but it will have the collateral benefit of providing further assurance to foreign courts that the United States debtor or representative is under judicial authority and supervision.

---

[3]    Article 15.2 of the Model Law is virtually identical to section 1515(b) of the Bankruptcy Code.

8

*See* H.R. Rep. No. 109-31, pt. 1, 108 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 171.

17.     The relief sought by this Motion is therefore the first in a two step process. If granted, LBSF expects in due course to submit an application to the High Court that seeks recognition of its chapter 11 case in this Court. Pursuant to Articles 15.1 and 15.2 of the Model Law, LBSF will, as the duly authorized foreign representative of its bankruptcy estate, apply to the High Court for recognition of its chapter 11 case as "…the foreign proceeding in which the foreign representative has been appointed." If the High Court decides to recognize LBSF's chapter 11 case, then pursuant to Article 20 of the Model Law, an automatic stay will apply in respect of all current and new proceedings, as will the right to transfer or otherwise dispose of any of LBSF's assets, providing such a stay is not in conflict with the applicable equivalent protections provided under UK insolvency law. It should be noted that the High Court also has a general discretion pursuant to Article 20.6 to "…modify or terminate such stay and suspension or any part of it, either together or for a limited time, on such terms and conditions as the court thinks fit."

18.     Consistent with one of the key objectives of the Model Law – to provide "[c]ooperation between the courts and other competent authorities…involved in cases of cross-border insolvency" Model Law, preamble – the application for recognition that LBSF will file, if this Motion is granted, will seek to obtain the assistance of the High Court for the benefit of this Court and LBSF's estate and creditors. This will have the aim of protecting LBSF's estate from actions similar to the Perpetual Action and the Belmont Action, as well as granting any appropriate relief that the High Court deems to be necessary upon recognition with respect to the Perpetual Action and the Belmont Action, subject to the current status of these two actions at the time that recognition may be granted. Specifically, LBSF will seek (i) recognition of LBSF's

9

chapter 11 case as a foreign main proceeding pursuant to Articles 15 and 17 of the Model Law; (ii) application of the stay provided by Article 21 of the Model Law to any subsequent actions brought against LBSF in the UK; and (iii) additional assistance in protecting the property of LBSF's estate pursuant to Article 7 of the Model Law, specifically, by granting comity to the full breadth of the automatic stay extant under section 362(a) of the Bankruptcy Code. Without such assistance from the High Court, LBSF is likely to find itself having to file a series of applications in the High Court seeking to stay claims similar to the Perpetual Action and Belmont Action, and defending a multitude of similar actions with none of the benefits and protections to which a debtor and a debtor's estate are normally entitled, merely because certain assets of LBSF's estate reside outside of this Court's control. Based on the foregoing, LBSF submits that there is sufficient statutory basis and ample justification for this Court to grant the relief requested.

## Notice

19. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

20. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 9, 2009
      New York, New York

/s/ Lori R. Fife
Lori R. Fife
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

11

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re                                                    :    Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                                         :
                         Debtors.                :    (Jointly Administered)
                                                         :
                                                         :
------------------------------------------------------------x

### ORDER AUTHORIZING LBSF TO ACT AS THE FOREIGN REPRESENTATIVE OF ITS ESTATE IN THE UNITED KINGDOM

Upon the motion, dated July 9, 2009 (the "Motion"), of Lehman Brothers Special Financing Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to section 1505 of title 11 of the United States Code (the "Bankruptcy Code") for authorization to act as the foreign representative of its estate in the United Kingdom, to seek recognition of its chapter 11 case on behalf of its estate, and to request that the High Court of Justice, England and Wales ("High Court") lend assistance to this Court in protecting the property of LBSF's estate, and to seek any other appropriate relief from the High Court that the High Court deems just and proper, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, in accordance with the purpose of chapter 15 of the Bankruptcy Code and the UNCITRAL Model Law on Cross-Border Insolvency, to provide effective mechanisms for dealing with cases of cross-border insolvency so as to promote the objectives of (a) cooperation between courts involved in cases of cross-border insolvency; (b) greater legal certainty for trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested persons, including LBSF; (d) protection and maximization of the value of the debtor's assets; and (e) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment; LBSF is hereby authorized (a) to act as the foreign representative of its estate in the United Kingdom, (b) to seek recognition of its chapter 11 case on behalf of its estate, (c) to request that the High Court lend assistance to this Court in protecting the property of LBSF's

estate, and (d) to seek any other appropriate relief from the High Court that the High Court deems just and proper in the furtherance of the protection of LBSF's estate; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 9014 are satisfied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2009
      New York, New York

                                                                                              UNITED STATES BANKRUPTCY JUDGE