Hearing Date: July 15, 2009 at 10:00 a.m.
Reply Deadline: July 13, 2009

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333
Martin J. Bienenstock, Esq.
Timothy Karcher, Esq.

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x
: 
**In re** : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.,** : 08-13555 (JMP)
*et al.* : 
      **Debtors.** : (Jointly Administered)
: 
----------------------------------------------------------- x

| | |
|---|---|
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS,** :<br><br>      **Movant,** :<br><br>against<br>:<br>**VALUKAS, AS EXAMINER,**<br><br>      **Respondents.**<br><br>**THE WALT DISNEY COMPANY,**<br><br>      **Party in Interest.** :<br>-----------------------------------------------------------x | |

**OBJECTION OF THE WALT DISNEY COMPANY TO**
**COMMITTEE MOTION DATED JULY 1, 2009**
**<u>FOR ORDER IN RESPECT OF EXAMINER</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Walt Disney Company ("TWDC") hereby objects to the motion dated July 1, 2009 (the "Motion") in which the statutory creditors' committee (the "Committee") requests entry of an order in respect of the examiner's compliance with the order appointing him, and respectfully represents as follows:

## BACKGROUND

1. Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Commercial Corp. ("LBCC") (collectively, the "Debtors") filed for relief under Chapter 11 of the Bankruptcy Code on or about September 15 and October 5, 2008, respectively. Certain other direct or indirect subsidiaries of LBHI also commenced chapter 11 cases in that interval. Their cases are jointly administered under the above-captioned number, but not substantively consolidated.

2. On September 19, 2008, the United States District Court for the Southern District of New York entered an order, at the request of the Securities Investor Protection Corporation ("SIPC"), placing Lehman Brothers Inc. ("LBI"), a subsidiary of LBHI, in liquidation under the Securities Investor Protection Act ("SIPA") and appointed James W. Giddens, Esq. as SIPA trustee (the "SIPA Proceeding"). Thereafter, the district court transferred the SIPA Proceeding to this Court.

3. On September 18, 2008, the United States Trustee appointed a statutory creditors' committee.

4. By motion dated October 20, 2008 (Docket No. 1143), TWDC requested appointment of an examiner. The Committee responded on January 9, 2009 (Docket No. 2477) requesting that the examiner not be allowed to retain a financial advisor and not be allowed to identify causes of action. By order dated January 16, 2009, the Court

2

appointed Anton R. Valukas as examiner (the "Examiner") and did not deprive him of the ability to retain financial advisors or to identify causes of action in his report.

### The Committee Motion

5. By its motion, the Committee requests that the Court order the Examiner to "investigate only claims relating to the sale to Barclays of assets of entities <u>other</u> than <u>LBHI and LBI</u>." (Emphasis in original).

6. The Committee's explanations for its requested relief are that (a) the order appointing the Examiner provides he shall investigate "'[w]hether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital, Inc. as a result of the sale to Barclays Capital, Inc.,'" Motion at ¶ 9, (b) the Examiner is already over budget, Motion at ¶ 12, and "the estates will avoid a substantial and unnecessary expenditure of funds," Motion at ¶ 23, because (i) the Committee "initiated an investigation into the transaction [with Barclays] shortly after it closed" in September 2008, Motion at ¶ 13, and (ii) the Debtors, on May 21, 2009, were authorized to retain Jones Day to investigate the transaction with Barclays, Motion at ¶ 9, and (c) "it is important to the integrity of the dispute-resolution process that the Debtors and the Committee complete their investigations and resolve any potential estate claims related to the Sale Transaction free from the possibility that a pending examiner report will delay the resolution." Motion at ¶ 26.

7. <u>The Committee's Interpretation of the Examiner Order is Impossible</u>. As the Committee knows, the sales contract and the order, dated September 20, 2008, approving the sale to Barclays Capital, Inc. ("Barclays") provide that only assets of LBHI, LBI, and two real estate subsidiaries were being sold. It is axiomatic that when the Examiner undertakes to

3

determine whether, in reality, Barclays obtained assets of other Lehman subsidiaries, such as Lehman Brothers Commercial Corporation, Barclays will attempt to show it only obtained assets of the named sellers. The Examiner will have to determine which entities owned the transferred assets. Therefore, to investigate whether the named sellers owned the assets, or whether other Lehman subsidiaries owned the assets, is to investigate two sides of the same coin. One cannot be done without the other. On this basis alone, the Motion should be denied.

8. <u>The Committee's Mode of Resolution is Ill Conceived</u>. The Committee explains it is acting on the Court's suggestion that the issue of overlapping investigations "be resolved without delay." Motion at ¶ 18. To be sure, hauling off and suing the Examiner is one mode of resolution. There are others, however. Specifically, the Committee could place a phone call to the Examiner and the Debtors and discuss how they can coordinate to avoid duplication. They can share produced documents and they can coordinate depositions to avoid duplication. Clearly, they will each need to review many of the same facts for slightly different purposes. Or, the Committee and Debtors could simply ask for access to the Examiner's work on this subject so they would not duplicate. But, after unsuccessfully attempting to deprive the Examiner of financial advisors and the right to report on causes of action, the Committee is now attempting to curtail his investigation.

9. <u>The Committee's Protests over Expense are Actually Requests to Diminish Transparency</u>. The Committee nowhere mentions that the Examiner files a public report about his investigations, while the Committee and Debtors may disclose neither the investigations they undertake nor the results. Therefore, the Examiner is the only

4

investigating entity that serves the public policy of transparency.  If any investigation should be curtailed, it is not the Examiner's investigation.  Moreover, the Committee's actions and inactions appear inconsistent with its concentration on expense:

1. The Committee is in no position to allege the Examiner is over budget, when the Committee has no budget and has not urged that it or the Debtors provide budgets;

2. To save money, the Committee could have, but did not, object to the Debtors' commencement of an investigation into the Barclays sale.  The Debtors negotiated the sale, drafted the sale documents, and closed the sale, and are therefore, despite the best intentions, the last entities anyone can rely on to tell us objectively what went wrong if they ever provide any report at all;

3. The Committee has engaged in the unprecedented practice of not having its professionals file their time records for all parties in interest to review, notwithstanding that these chapter 11 cases are the most expensive in history and the public filing of time records, by itself, may motivate professionals to be more careful about what they bill.

10. <u>The Committee and Debtors Cannot Dispose of the Subsidiary Debtors' Claims against Barclays</u>.  The Committee's Motion (at ¶ 26, quoted in paragraph 6(c) above) candidly concedes the Committee's intent to wrap up a deal with Barclays.  The Motion likely correctly predicts that a settlement with Barclays will have to encompass all issues and cannot leave the subsidiaries' claims unresolved.  The Committee's contemplated settlement must therefore allocate some money to LBHI, and other monies to the subsidiary debtors.  Both the Committee and the Debtors are on all sides of that allocation.  This is exactly why the court in *Adelphia* ruled the statutory committee and debtors were disqualified from handling the interdebtor issues.  *In re Adelphia Communications Corp.*, 336 B.R. 610 (Bankr. S.D.N.Y. 2006), *aff'd,* 342 B.R. 122 (S.D.N.Y. 2006).  To avoid this problem, many subsidiary creditors including TWDC requested the United States Trustee to appoint a subsidiary creditors' committee, which request was denied subject to being revisited.  It appears the time to revisit has arrived.

5

11. In sum, TWDC is all in favor of avoiding unnecessary administrative expenses. TWDC respectfully submits, however, that curtailing the investigation of the Examiner, who is a renowned attorney of impeccable integrity and stature, and who will file a public report providing transparency on the subjects he investigates, does not save unnecessary administrative expenses; it undermines the fairness, objectivity, and sunshine necessary in these chapter 11 cases.

WHEREFORE TWDC requests that the Motion be denied and TWDC be granted such other and further relief as is just.

Dated: New York, NY
July 10, 2009

DEWEY & LEBOEUF LLP

/s/Martin J. Bienenstock
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333
Attorneys for The Walt Disney Company