Hearing Date:  July 15, 2009 at 10:00 a.m. Eastern Time

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Ralph I. Miller
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                               :    Chapter 11 Case No.
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**  :    08-13555 (JMP)
                                                    :
           Debtors.                                 :    (Jointly Administered)
                                                    :
                                                    :
------------------------------------------------------------------x

### DEBTORS' OBJECTION AND REPLY TO PLAINTIFFS' MOTION
### FOR RELIEF AND OBJECTION TO DERIVATIVES PROCEDURES ORDERS

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("*LBHI*") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "*Debtors*" and, collectively with their non-debtor affiliates, "*Lehman*"), respectively submit this response in opposition to (i) the motion (the "*Plaintiffs' Motion*") of Ka Kin Wong, Siu Lui Ching, Chun ip, Jin Liu, Yin Ying Leung, Lai Mei Chan, and Sing Heung (the "*Plaintiffs*"), filed on May 13, 2009 (Docket No. 3565), for relief from the Derivative Procedures Orders (as defined in the Plaintiffs' Motion), and (ii) the Plaintiffs' Objection to the Debtors' Motion Establishing Procedures for The Settlement and Termination, or Assumption and Assignment of Prepetition

Derivative Contracts, filed on May 13, 2009 (Docket No. 3566) (the "*Plaintiffs' Objection*" and, together with Plaintiffs' Motion, the "*Plaintiffs' Submissions*"):

### Preliminary Statement

1.  By the Plaintiffs' Motion and Plaintiffs' Objection (which are identical in all respects), the Plaintiffs seek relief from the Derivative Procedures Orders pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedures (the "*Bankruptcy Rules*") and Rule 60(b) of the Federal Rules of Civil Procedure (the "*Federal Rules*") on the grounds that they did not receive notice of the Debtors' Motion. The Plaintiffs argue that they were entitled to notice because they are "the ultimate beneficiaries of the Minibond Collateral" (Plaintiffs' Submissions ¶ 15), defined as the collateral supporting their investments in the notes that they call "Minibonds." Because of this, relying solely on three cases in which courts have granted relief to either a *creditor* or *equity holder* of the debtor,[1] the Plaintiffs argue that they should be granted relief from the Derivative Procedures Orders because "[n]umerous bankruptcy courts" in this district have granted similar relief "from orders entered without notice to an interested party." (Plaintiffs' Submissions p. 7.)[2]

2.  The Plaintiffs do not have standing to object to the Derivative Procedures Orders, because any rights that are implicated by these orders are rights of the Debtors' Counterparties and the Debtors' creditors. The Plaintiffs are not, nor do they claim to be,

---

[1] Not one of the three cases cited by the Plaintiffs illustrates circumstances that bear any similarity to the facts in the Plaintiffs' Submissions. Of the three cases cited by the Plaintiffs, two – *In re Enron Creditors' Recovery Corp.*, 2007 WL 2480531 (Bankr. S.D.N.Y. 2007), and *Randbre Corp. v. Ladney (In re Randbre Corp.)*, 66 B.R. 482 (Bankr. S.D.N.Y. 1986.) –involved creditors of the debtor who had not received notice of a bar date for filing proofs of claim. (Plaintiffs' Submissions pp. 8 – 9) The third involves relief from a confirmation order to one of the debtor's equity holders. *In re 401 East 89th Street Owners, Inc.*, 223 B.R. 75 (Bankr. S.D.N.Y. 1998). Not one supports the theory that parties with an indirect investment in property of the estate should have standing to object to a motion for relief under section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

[2] Paragraphs in the Planitiffs' Submissions are numbered until paragraph 25, after which the paragraphs on pages 7 to 11 are not numbered. The Debtors therefore cite to page numbers when using a pin-cite after paragraph 25 of the Plaintiffs' Submissions.

2

creditors of the Debtors. The Plaintiffs are not parties to any of the Debtors' Derivative Contracts, nor do they have any basis or independent standing to challenge an order concerning those contracts. Finally, the Plaintiffs provide no other basis for why they should be able to object to the Derivative Procedures Orders or otherwise act in these chapter 11 cases, other than that they claim to have an indirect interest in the so-called Minibond Collateral.

3.     Despite the Plaintiffs' lack of standing to interpose an objection to the Derivative Procedures Orders, the Debtors have made repeated efforts to consensually resolve the Plaintiffs' Submissions. Specifically, the Debtors have offered to propose a supplemental order that would render the terms of the Derivative Procedures Orders inapplicable to any Derivative Contracts where the collateral related thereto is alleged by Plaintiffs to bear on their interest as noteholders. Although such an order would effectively bring the Plaintiffs the same relief sought by the Plaintiffs' Submissions, the Plaintiffs have preferred instead to waste the resources of the Debtors and this Court by insisting on filing the instant motion and objection. Accordingly, since they have neglected to show that they are a party in interest with standing to object to the Derivative Procedures Orders, the Debtors submit that the Plaintiffs' Motion should be denied, and the Plaintiffs' Objection should be overruled.

**Factual Background**

4.     The Plaintiffs provide virtually no details about themselves in the Plaintiffs' Submissions, other than to reference their participation in an "Adversary Complaint" filed on March 12, 2009. Although they do not identify the complaint by name or case number, the Debtors will assume that reference is made to *Ka Kin Wong et al. v. HSBC USA, Inc. et al.* (Case No. 09-01120) ("*Wong*"). Thus, the Debtors will assume that the Plaintiffs believe themselves to be noteholders in note issuances like those at issue in *Wong*, and will use *Wong* as

3

a backdrop to explain why the Plaintiffs are not the real parties in interest with any rights to object to the Derivative Procedures Orders.

5. In *Wong*, the Plaintiffs allege to have purchased notes (what they call "Minibonds") from a special purpose entity called Pacific International Finance ("*Pacific Finance*"). As described in detail in LBSF's motion to dismiss the complaint in *Wong* (the "*MTD*"),[3] there were a number of different series of notes issued by Pacific Finance. Plaintiffs in *Wong* do not indicate which series they purchased, and instead allege that the contracts at every series were "virtually identical." Thus, in the MTD, LBSF used one transaction, the Minibond Series 10 Transaction to illustrate the transactions at issue in the case and demonstrate why the *Wong* plaintiffs lack standing to assert any claim in that case. Below is a chart illustrating the Minibond Series 10 Transaction:

---

[3] For a complete description, see the MTD filed by LBSF (Docket Number 17) in adversary proceeding No.: 09-01120 (JMP), which is incorporated by reference herein.

4



6.  In the Minibond Series 10 Transaction, Pacific Finance entered into a swap agreement with LBSF (the "*Swap*") and also purchased notes (the Saphir 2004-1 Notes) issued by a separate entity, Saphir Finance plc. These notes served as collateral to secure Pacific Finance's obligations first to LBSF under the swap agreement, and then to its noteholders. As explained in the MTD, the Plaintiffs in *Wong* seek to assert rights to the collateral held by Pacific Finance (the so-called "Minibond Collateral"). The notes, as well as the Swap, are non-recourse as against Pacific Finance: both the noteholders and LBSF can only seek payment from the trustee (in this case, HSBC), and the trustee holds the collateral in trust for both LBSF and the noteholders. While the foregoing may mean that the noteholders have some indirect financial interest in certain collateral, this interest does not grant the noteholders the right to proceed against the collateral: this right belongs solely to the trustee.[4]

### The Plaintiffs Are Not the Debtors' Creditors or Counterparties

7.  While "[t]he term 'party in interest' is not defined in the Code," as the Second Circuit first acknowledged in *In re Comcoach*, "[g]enerally, the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *See in re Comcoach*, 698 F.2d 571, 573 (2d Cir. 1983). Beginning with the general premise that "[b]ankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes," *see id.* at 573, the court concluded that to be a party in interest in a bankruptcy proceeding, a party "must be either a creditor or a debtor," *see id.*, but that a creditor of a creditor of the debtor could not qualify as a "party in interest," *see id.* at 574.

---

[4]  *See* MTD pp. 6-10.

8. If, as the Plaintiffs allege, they are noteholders such as those described above in the Minibond Series 10 Transaction, then they are not creditors of the Debtors. Rather, having purchased notes issued by an entity like Pacific Finance, the Plaintiffs are creditors of one of the Debtors' Counterparties (as defined in the Derivative Procedures Orders). Moreover, because note issuances such as the Minibond Series 10 Transaction are non-recourse against the issuer, with the underlying collateral placed in a trust, the Plaintiffs do not even hold rights that are directly enforceable against the issuer. Only the trustee of the trust holds the right to assert any claim against the issuer or against the collateral that secures the notes.[5] While the Plaintiffs may assert claims against the trustee, their legal rights end at the trustee, and do not extend to the issuer, the collateral, and certainly not to the Debtors, with whom they have no privity at all. Accordingly, they have no right to object or otherwise seek to modify the Derivative Procedures Orders.

### The Plaintiffs Are Not the Real Party in Interest
### To Object to a Compromise or Settlement by the Debtors with Counterparties

9. As mere creditors of a Counterparty of the Debtors, the Plaintiffs also lack standing to object to the Court's approval under Bankruptcy Rule 9019 of any compromise or settlement that the trustee may reach, on behalf of the Counterparty, in terminating a Derivative Contract with the Debtors. The Second Circuit has held that a party who is an investor in a non-debtor defendant in an action where the debtor is the plaintiff has no standing to object to a motion by the debtor for approval of settlement of the action. *See In re Refco Inc.*, 505 F.3d 109 (2d Cir. 2007). In *Refco*, a group of investors (the "*Investors*") who held interests in a Cayman

---

[5] *See, e.g.*, the Declaration of Richard Slack dated May 27, 2009 attached to the MTD as Exhibit 1 (the "*Slack Decl.*"), Exh. A (Pacific Finance Principal Trust Deed) §§ 1.4, 5, 7.2, 19; *id.* Sch. 2 § 3(a); Slack Decl. Exh. B (Pacific Finance Supplemental Trust Deed) § 6; Slack Decl. Exh. C (Saphir Principal Trust Deed) § 5; Slack Decl. Exh. D (Saphir 2004-1 Supplemental Trust Deed) §§ 5, 6. *See also* Declaration of Gerard McCormack dated May 27, 2009 ¶¶ 11-18, attached as Exhibit 2 to the MTD (explaining English trust law).

7

Islands investment company ("*Sphynx*") sought to challenge the settlement that Sphynx had reached with the Official Committee of Unsecured Creditors (the "*Committee*"), following a preference action initiated by the Committee on behalf of the debtors' estates, in which the Committee sought to recover funds that had been transferred by Sphynx out of accounts held by one of the debtors for Sphynx. *See id.* at 112-13. The Investors objected to the settlement, alleging fraud and collusion among Sphynx and the debtors, and arguing that the settlement was not a properly authorized corporate act by Sphynx. *See id.* at 113.

10.     The Second Circuit affirmed the lower courts' overruling of the objection and held that, "[t]o the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else." *See id.* at 117. Since the Investors "cannot claim that they seek to enforce any rights distinct from those of Sphynx as a creditor and defendant in an adversary proceeding," the Second Circuit concluded that the Investors were not a "party in interest" with standing to object to a settlement between the debtors' estate and Sphynx:

> By investing in Sphynx, Investors placed control of their funds entirely within the hands of the Sphynx directors (or managers acting on behalf of the directors). Only Sphynx, not individual Investors, or even Investors as a group, could assert a claim against the Refco estate, and only Sphynx was permitted to negotiate a settlement with the Committee. Investors maintain a financial "interest" in Sphynx, but they are not a "party in interest" within the meaning of the Bankruptcy Code. The party in interest in the bankruptcy sense, representing the Investors' financial interest, is Sphynx.

*Id.* at 117. The Second Circuit rounded out this conclusion by observing that even if the investors have a valid dispute with Sphynx:

> bankruptcy court is not the appropriate forum in which to resolve Investors' disputes with the Sphynx board…. Bankruptcy courts are primarily courts of equity, but they are not empowered to address *any* equitable claim tangentially related to the bankruptcy proceeding.

8

> Bankruptcy court is a forum where creditors and debtors can settle their disputes *with each other*. Any internal dispute between a creditor and that creditors' investors belongs elsewhere.

*Id.* at 118.

11. The Plaintiffs are not creditors of the Debtors; rather, as explained above, in transactions like the Minibond Series 10 Transaction, they would be noteholders of the issuer, who in turn has entered into a Swap with LBSF. Thus, the Plaintiffs would be merely creditors of one of the Debtors' Counterparties. Accordingly, the Plaintiffs lack standing to object to any compromise or settlement that the Debtors might reach under Bankruptcy Rule 9019, and therefore to the Termination and Settlement Procedures established by the Derivative Procedures Orders, because the Plaintiffs do not qualify as a "party in interest" under section 1109(b) of the Bankruptcy Code. If the Plaintiffs were to object to a termination agreement that the Debtors reach with one of their Swap Counterparties, the Plaintiffs would be analogous to the Investors in *Refco*: while they are investors in certain Counterparties' debt, they are not themselves the Counterparties.

### The Plaintiffs Are Not the Real Party In Interest to Object to Relief Under Section 365

12. Since they are neither creditors of the Debtors nor Counterparties, the Plaintiffs also do not possess the legal rights implicated by the assumption or assignment of a Derivative Contract under section 365 of the Bankruptcy Code, and are therefore not the real party in interest with standing to object to the Assumption and Assignment Procedures.

13. In the context of a motion pursuant to section 365 of the Bankruptcy Code to assume, reject, or assign an executory contract or unexpired lease of the debtor, the zone of interests to be protected by the requirements of section 365 primarily comprises the interests of the other party to the contract, *see Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303

9

(5th Cir. 1985) ("…in the typical case under § 365, if anyone objects to the debtor's assumption of the contract it will be the other party to the executory contract, not the debtor's creditors who are strangers to the transaction.), but may also encompass the rights of the debtors' creditors, because of the business judgment standard that courts must employ in determining whether to permit the debtor to assume, reject, or assign the contract. *See In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) (setting forth the business judgment standard). In other words, a counterparty may object on the grounds that the debtor failed to meet the legal requirements for assumption, rejection, or assignment of a contract, while the debtor's creditors may choose to object, as parties in interest within the meaning of section 1109 of the Bankruptcy Code, to the Debtor's business judgment in determining that assumption, rejection, or assignment is best for the estate.

14. The Plaintiffs lack standing to object on either ground because they are neither parties to any of the Debtors' contracts nor creditors of the Debtors. Rather, the Plaintiffs resemble one of the debtor's fellow tenants in *In re Martin Paint Stores*. In that case, the debtor sought to assume its commercial lease on premises that held several other commercial leaseholds. *See In re Martin Paint Stores*, 199 B.R. 258, 260 (Bankr. S.D.N.Y. 1996) (Bernstein, J.).[6] Another of the lessor's tenants objected to the proposed order approving assumption and assignment on the grounds that assignment would violate (i) an exclusivity provision in its own lease with the lessor and (ii) a use provision in the debtor's lease. *See id.* at 261. Both provisions were intended to prevent the lessor from leasing space to competitors. *See id.* The Bankruptcy Court held that the objecting tenant "lacked independent standing to object to the proposed assumption and assignment" because

---

[6] The parties "conceded that the Premises was not a shopping center." *See id.*

> [s]ection 365 aims to ensure that the landlord receives the benefit of his bargain, and looks, therefore, to the prejudice to the landlord. It does not deal with a third party's benefit of its own bargain with the landlord, and [the objecting tenant]'s position is analogous to the creditor of a creditor [of the debtor].

*Id.* at 264. On appeal, the District Court affirmed the Bankruptcy Court. The District Court held that the objecting tenant's rights vis-à-vis the landlord under the exclusivity provision "are not properly brought in proceedings against [the debtor], and at any rate are not 'within the zone of interests protected by the law invoked,' in this case Code section 365." *See In re Martin Paint Stores*, 207 B.R. 57, 62 (S.D.N.Y. 1997). As to any objection based on a use provision in the debtor's lease, the court found that the objecting tenant "cannot establish standing by 'raising another person's legal rights.'" *See id.* Finding that the objecting tenant "is not a party to and has no rights arising under or in connection with the Lease," the District Court held that the objecting tenant "therefore lacks standing to object to the assumption and assignment of the Lease." *See id.* at 62.

        15.    Like the tenant in *In re Martin Paint Stores*, the Plaintiffs are not parties to and have no rights under any of the Debtors' Derivative Contracts. In transactions such as the Minibond Series 10 Transaction, for example, the Debtors' Counterparties generally are note issuers like Pacific Finance.[7] Indeed, as the Plaintiffs' Submissions point out, BNY Corporate Trust Services Limited ("*BNY*") interposed the Objection of The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A. and BNY Corporate Trustee Services Limited

---

[7] *See, e.g.*, Slack Decl., Exhibit B (Pacific Finance Supplemental Trust Deed) § 53(d); Slack Decl. Exh. D (Saphir 2004-1 Supplemental Trust Deed) § 1.3.

11

[Docket No. 1892] (the "*BNY Objection*") *as trustee* of several transactions similar to the Minibond Series 10 transaction.[8]

16. If the Plaintiffs were creditors in these cases, they could object to the Debtors' business judgment in applying the Assumption and Assignment or Settlement and Termination Procedures. The Plaintiffs, however, like the objecting tenant in *In re Martin Paint Stores*, are creditors *of a creditor* (or *debtor*, depending on the swap's value) of the Debtors. Thus, by interposing an objection to the Derivative Procedures Orders, the Plaintiffs are effectively attempting to assert the rights of the Debtors' Counterparties (who did receive notice of the Debtors' motions for approval of the Derivative Procedures Orders). Therefore, despite any interest that they may have in a Counterparty, the Plaintiffs are not the real party in interest to prosecute the issues raised by the Plaintiffs' Submissions.

## Notice of the Debtors' Motions Was Sufficient

17. As the Bankruptcy Court in *In re Martin Paint Stores* noted, "[t]he notice requirements in the [Bankruptcy Rules] provide additional, indirect support" for the conclusions that only creditors or counterparties of the Debtors are real parties in interest. *See In re Martin Paint Stores*, 199 B.R. at 264. Notice of a motion to assume, reject, or assign an executory contract or unexpired lease is governed by Bankruptcy Rule 6006(c), which provides that

> [n]otice … shall be given to the other party to the contract or lease, to other parties in interest as the court may direct, and, except in a chapter 9 municipality case, to the United States trustee.

Fed. R. Bankr. P. 6006(c). The Bankruptcy Court further noted that in the advisory committee notes, "[t]he only example of a 'party in interest' that is provided is the creditor's committee."

---

[8] Although the Plaintiffs were not the noteholders in the transactions to which BNY serves as trustee, to the extent the Plaintiffs claim an interest in such transactions, the BNY Objection remains outstanding, and therefore, the terms of the Derivative Procedures Orders do not apply to any Derivative Contracts for which BNY serves as trustee.

*In re Martin Paint Stores*, 199 B.R. at 264 (citing *Lindsey v. Dep't of Labor (In re Harris Mgmt. Co.)*, 791 F.2d 1412, 1415 (9th Cir. 1986)). Thus, "under the statutory scheme governing the assumption and assignment of" unexpired leases or executory contracts," parties who are neither parties to the contract nor creditors of the debtor are not entitled to notice of a motion to assume or assign a contract.

18. Accordingly, consistent with Bankruptcy Rule 6006(c), the Debtors provided notice of their Motions for approval the Derivative Procedures Orders to the usual parties that receive notice of motions in these chapter 11 cases and "all Counterparties (via mail, fax, or email) in the Debtors' records to the extent that the Counterparties' last known mail address, fax number, or email address is available to the Debtors." (Derivative Procedures Orders, first decretal paragraph.)

19. Similarly, Bankruptcy Rule 9019(a), which governs notice of a motion to provide compromise or settlement, provides that

> [n]otice shall be given to creditors, the United States trustee, the debtor, and indenture trustees…and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The population entitled to notice of a motion under Bankruptcy Rule 9019 is broader than for a motion under section 365 of the Bankruptcy Code; however, as explained above, the Plaintiffs are not any of the types of parties included in Bankruptcy Rule 6006(c) or Bankruptcy Rule 9019(a). They are neither creditors of the Debtors, Counterparties, nor in any other way a "party in interest." Thus, the Debtors were not required to serve notice of the Debtors' Motions on the Plaintiffs, which further underscores the Plaintiffs' lack of standing to object to the Derivative Procedures Orders.

**The Debtors Have Sought
In Good Faith to Resolve the Plaintiffs' Objection**

20.      Notwithstanding the Plaintiffs' lack of standing to object to the Derivative Procedures Orders, the Debtors nevertheless sought to achieve a consensual resolution of the Plaintiffs' Submissions.  Even before the Plaintiffs' Submissions were filed, the Debtors offered to submit to this Court a proposed supplemental order that would render the terms of the Derivative Procedures Orders inapplicable to any Derivative Contracts whose collateral could potentially or indirectly affect the Plaintiffs' interests.  In order to settle such an order, however, the Debtors needed the Plaintiffs to provide some means for the Debtors to identify the relevant Derivative Contracts in a supplemental order.  The Debtors could not possibly have known which Derivative Contracts should be exempted from the Derivative Procedures Orders in order to appease the Plaintiffs, because the Plaintiffs are not parties to any of the Debtors' Derivative Contracts.[9]  The Plaintiffs repeatedly refused to provide any information that would assist the Debtors in identifying the Derivative Contracts that purportedly affect the Plaintiffs' interests, and instead demanded that the Debtors provide information on all of the contracts covered by a series of financing transactions.  Refusing to reach a consensual resolution with the Debtors as to the Derivative Procedures Orders, the Plaintiffs instead opted to serve LBSF in *Wong* with premature and overly broad discovery requests that specifically identify 79 tranches of notes in

---

[9]      On July 9, 2009, the Plaintiffs in *Wong* filed an *Opposition to Defendant Lehman Brothers Special Financing Inc.'s Motion to Stay Discovery Pending Determination of Its Motion to Dismiss the Complaint* [Docket No. 42], in which they misrepresent these negotiations by stating that Debtors' counsel stated "his unawareness that there existed within the Minibonds deal structure the swap transactions between the issuer of the Minibonds and LBSF." As the Debtors explain above, however, the Plaintiffs used vague locutions such as the "Minibonds deal structure" without previously identifying a specific series of notes with which the Debtors could attempt to associate the Plaintiffs.  However, the Plaintiffs have since provided the Debtors a list of 79 tranches of notes that could be used to identify the applicable Derivative Contracts.  The Debtors were and certainly are aware that there are swap agreements in place as part of structures like the so-called "Minibond deal structure."  It was patently unreasonable, however, for the Plaintiffs to have expected the Debtors to draft a stipulation that exempted them from the Derivative Procedures Orders when the Plaintiffs had not provided a scintilla of evidence or guidance with which the Debtors could identify the *particular* swap agreements that relate to the so called "Minibond deal" in which the Plaintiffs claim to have invested.

14

which the Plaintiffs claim an interest. The notes in which the Plaintiffs claim an interest, which are itemized in the discovery requests, could certainly form the basis of reaching a consensual resolution of the present dispute. But the Plaintiffs, so far, have been unwilling to compromise.

21. Given the Debtors' repeated offers to negotiate a supplemental order effectively granting the Plaintiffs the same relief requested by the Plaintiffs' Submissions, the Debtors submit that the Plaintiffs have no basis for contending that they will be harmed by the Derivative Procedures Orders. Indeed, in light of the pending *Wong* adversary proceeding, the objective of the Plaintiffs is unclear, and their conduct suggests that they are using the Plaintiffs' Submissions only to obtain leverage in *Wong*. The Debtors remain amenable to discussing a consensual resolution of the Plaintiffs' Submissions.

22. For all of the foregoing reasons and authorities, as well as those to be advanced at oral argument, the Debtors respectfully submit that the Plaintiffs' Objection should be overruled and the Plaintiffs' Motion should be denied in all respects.

WHEREFORE the Debtors respectfully request that the Court deny the Motion in its entirety and grant the Debtors such other and further relief as may be just.

Dated: July 10, 2009
      New York, New York

/s/ Robert J. Lemons
Lori R. Fife
Ralph I. Miller
Richard W. Slack
Robert J. Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession