WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                        :

**In re**                     :        **Chapter 11 Case No.**
                        :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**
                        :

        **Debtors.**      :      **(Jointly Administered)**
                        :
-------------------------------------------------------------------x

**DEBTORS' REPLY TO BASSO'S OBJECTION TO**
**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 365**
**OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION**
**OF OPEN TRADE CONFIRMATIONS WITH THREE BASSO FUNDS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

           Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), as and for their reply to the Objection Of Basso Capital Management, L.P. To Debtors' Notice Of Motion For An Order Pursuant to Section 365 Of The Bankruptcy Code Approving The Assumption Of The Open Trade Confirmations With Three Basso Funds (the "Objection") [Docket No. 4249], respectfully represent:

## Preliminary Statement

1.      In the Objection filed by Basso Capital Management, L.P. on behalf of the three Basso Funds[1], Basso purports to object to LCPI's assumption of the Basso Trades, but really only argues – and only in general terms – that the assumption should be conditioned on some never specified amount of adequate assurance, something Basso has never raised with LCPI or this Court in the past.

2.      LCPI has no obligation to provide adequate assurance:  (i) adequate assurance is not required absent a default and there has been *no* default by LCPI; and (ii) there will be no substantive obligations owed by LCPI if it assumes the Basso Trades other than delivering the debt upon closing (and any indemnity type obligations will be administrative obligations of LCPI).  Notably, Basso's claims that there was a pre-petition default (Objection at ¶ 3) and that there will be substantial post-closing indemnity, representation and warranty obligations on the part of LCPI (*id.* at ¶ 7) are not supported by any affidavit, certification, or documentation.

3.      LCPI stands ready, willing and able to close the Basso Trades.  In the Objection, Basso neglects to mention that LCPI sent Basso proposed transfer documentation to close the trades on September 30, 2008, and sent Basso revised transfer documentation, on April 14, 2009. *See* Declaration of Russell Chiappetta ("Chiappetta Decl.") at ¶¶ 4-5 and  Exhibits D, E.  LCPI stands prepared to execute promptly the necessary transfer documentation.  *See* Declaration of Amy Lee ("Lee Decl.") at ¶ 4.

4.      Thus, the Motion should be granted in all respects and the Basso Trades ordered assumed without any obligation to provide adequate assurance of future performance.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in Debtors' Motion For An Order Pursuant To Section 365 Of The Bankruptcy Code Approving The Assumption Of Open Trade Confirmation With Three Basso Funds [Docket No. 4249] (the "Motion").

**Background**

5.      On December 16, 2008, the Court entered an Order approving LCPI's assumption

of the Basso Trades pursuant to Section 365 of the Bankruptcy Code [Docket No. 2258] (the

"Open Trades Order").  On May 7, 2009, Basso moved for relief from the Open Trades Order,

(the "Basso Motion for Relief"), arguing that LCPI should be compelled to reject the Basso

Trades.  *See* Basso Motion for Relief [Docket No. 3516] at ¶ 43.  Notably, Basso did *not* claim in

the Basso Motion for Relief that LCPI had defaulted on the Basso Trades.

6.      On June 29, 2009, this Court entered an order vacating the Open Trades Order to

the extent that it approved the assumption of the Basso Trades, but denying Basso's request for

an order compelling LCPI to reject the Basso Trades (the "June 29 Order").  As authorized by

the June 29 Order, the Debtors filed this Motion on June 30, 2009.

7.      Basso filed the Objection on July 10, 2009.  In the Objection, Basso argues that

the Motion should be denied, or that "[a]t minimum," the Court should order LCPI to provide

adequate assurance of future performance in the form of an escrow or other security.  Objection

at ¶ 2.  Basso argues that LCPI is required to demonstrate in the Motion that it had provided

adequate assurance to Basso because it defaulted on the Basso Trades by not providing Basso

with transfer documentation within six business days of the June 3, 2008 Trade Date.  *Id.* at ¶ 3.

8.      As established below, there was no six business day deadline, LCPI has not

defaulted on the Basso Trades, and LCPI thus is not required to provide any assurance of future

performance.

9.      The Debtors note that in the Basso Motion for Relief, Basso claimed that it did

not learn of the Debtors' decision to assume the Basso Trades until mid-April 2009 and that it

was thus harmed because it was thereby deprived of the opportunity back in November 2008 to

mitigate its damages.  *Id.* at ¶ 7.  According to Basso, by the time it filed the Basso Motion For

Relief, the market price of Greektown Debt, which was the subject of the Basso Trades, had

dropped to 17.5-23.5% of face value from 55-60% of face value in November 2008, when the

Open Trades Motion was filed.  *Id.* at ¶ 8.  Basso argued that allowing LCPI to assume the Basso

Trades at that time, given the substantial drop in the market price of Greektown Debt between

November and April, would unfairly prejudice Basso, which "could have taken steps to mitigate

the potential loss" had it learned of the Debtors' decision to assume the trades in November

2008.  *Id.* at ¶¶ 8, 46.

10.    The Objection wholly ignores the fact that the market price of Greektown Debt

has risen significantly since Basso filed the Motion for Relief; as of July 10, 2009, when the

Objection was filed Greektown Debt was trading at approximately the same price it was in early

November 2008.  *See* Lee Decl. at ¶ 6.  Rather than now agree to close the Basso Trades

promptly and mitigate its losses as Basso argued that it could have done in November 2008 (*see*

Basso Motion for Relief at ¶ 8) – when the market price was about the same as it is today –

Basso filed the Objection, arguing, for the first time, that LCPI defaulted on the Basso Trades

pre-petition and that it is entitled to adequate assurance.  As demonstrated below, there has been

no default.

## LCPI Is Not In Default

11.    Basso's contention that LCPI defaulted because it did not provide Basso with the

applicable transfer documentation within six business days (Objection at ¶ 3) is wrong as a

matter of law:  Paragraph 10 of the LSTA Standard Terms (Motion Exh. C), on which Basso

relies, provides that the seller undertake "reasonable efforts" to provide transfer documentation

within six business days; there is, however, no fixed deadline.  Motion Exh. C at 7.  Indeed, all

that the LSTA Standard Terms provide are target dates for completing the various steps of a transaction.  *Id.* at 6-7.

12.    As also established in the Motion (at ¶ 28) (and ignored in the Objection), the LSTA Standard Terms specifically contemplate that a trade may even settle after a fixed deadline stated *in a trade-specific confirmation*.  The LSTA Standard Terms provide that "a valid and binding obligation to settle the trade nevertheless continues to exist" even if the buyer and seller are unable to effect settlement of a trade as specified in the Trade Confirmation -- or within the LSTA's target timeframes.  Motion Exh. C at ¶¶ 1, 6.  And parties in the marketplace understand this:  the LSTA reports that in 2008, *over 35%* of Distressed Trades, such as the Basso Trades, took *over 40 business days* after the trade date to settle.  *See* Theodore Basta & Joe Peng, THE LSTA SETTLEMENT STUDY: 2Q 2008, at 4–7 (2008), available at www.lsta.org.

13.    In fact, the only consequence contemplated by the LSTA for a delay in closing is the inclusion of settlement compensation in the purchase price.  *See* Motion Exh. C at ¶¶ 1, 6.

14.    Here, there was *no* specific deadline for closing the three Basso Trades in the Basso Trade Confirmations (attached to the Motion as Exh. B).  Considering that debt trades frequently take months to settle in the secondary loan market (*see* Lee Decl. at ¶ 7; Chiappetta Decl. at ¶ 3), Basso cannot plausibly argue – and it does not argue – that LCPI providing transfer documentation within six business days was a material term of the Basso Trades.  This explains why Basso has *never* previously alleged that LCPI was in default or even suggested that it expected to receive the transfer documentation within six days.

15.    Thus, Basso's newly minted argument that LCPI defaulted by not meeting the LSTA six business day target date is not supported by the unambiguous terms of the parties' agreement or market practice.

16.    As the Court will note, Basso fails to identify a single piece of contemporaneous correspondence or even an email from Basso suggesting a default by LCPI.  The reality is that the parties handled the Basso Trades consistent with market practice and continued to work towards closing the trades in the ordinary course of business up to the Commencement Date.  *See* Lee Decl. at ¶ 4; Chiappetta Decl. ¶ 4.  That Basso understood this reality is demonstrated by Basso's own actions:  (i) Basso communicated with LCPI concerning the closing of the Basso Trades as early as June 20, 2008 and as late as October 1, 2008, without ever suggesting a default by LCPI, *see* Chiappetta Decl. ¶ 4 and Exhibits A and B; (ii) on June 20, thirteen business days after the Trade Date, Basso requested that the parties delay the closing of the Basso Trades "in part to get a sense of the [sic] where the market is headed" and *see id.* and Exhibit A; and (iii) Basso entered into a revised Open Trade Confirmation for one of the three Basso Trades (the "Revised Confirmation") on *September 10, 2008*, several months after the trade date and the (newly) alleged default – which would have been a waiver of any prior default. *See* Motion Exh. B, Trade Confirmation with Basso Fund Ltd. (a rider with a revised representation and warranty by Basso was added – *see id.* at 4).  In addition, upon Basso's request, LCPI sent Basso proposed transfer documentation on September 30, 2008.  *See* Chiappetta Decl. ¶ 4 and Exhibits C and D.  LCPI again sent Basso transfer documentation, this time in revised form, on April 14, 2009.  Chiappetta Decl. ¶ 5 and Exhibit E.[2]  Not once – at least not until now – did Basso claim that LCPI was in default.

17.    There is also no support for Basso's contention that LCPI caused "unreasonable delay" in closing the trades.  *See* Objection at ¶ 5.  Section 365(d)(2) of the Bankruptcy Code

---

[2] Thus, any default by LCPI because it did not provide Basso with transfer documentation within six business days was cured when LCPI sent transfer documentation to Basso on September 30, 2008.  *See* Chiappetta Decl. at ¶ 4 and Exhibit E.

grants a debtor the right to assume or reject an executory contract at any time prior to

confirmation of the plan absent an earlier deadline set by the Court on motion.  11 U.S.C.

365(d)(2).  Basso never sought the imposition of such a deadline here.

## Adequate Assurance of Future Performance Is Not Required

18.    Basso also argues that it is entitled to adequate assurance of LCPI's future

performance.  Objection at ¶ 9.  No adequate assurance is owed by LCPI, however, because

LCPI has not defaulted on the Basso Trades.  *See* 11 U.S.C. § 365(b)(1) (providing that chapter

11 debtor's obligations upon assumption of an executory contract to cure or provide adequate

assurance are triggered only when there has been a default of that contract).

19.    Furthermore, even if Basso could somehow show a continuing default, LCPI is

prepared to promptly execute the transfer documentation and close the Basso Trades.  In

addition, LCPI has already provided adequate assurance of future performance.  While Basso

argues that LCPI will have representation and warranty and indemnity obligations extending

indefinitely into the future (Objection at ¶ 9), Basso does not identify any representations,

warranties, or indemnities that are likely to be called upon.  LCPI is just a short-term holder of

the Greektown Debt it is selling to Basso and thus it is virtually impossible that Basso will have

any claims against LCPI.  Given (i) the $25 billion in assets shown on LCPI's schedules; (ii) the

cash it has on hand; (iii) the fact that its liquidation is a long-term process; (iv) that any claims by

Basso against LCPI are unlikely; and (v) that any such claim would be administrative, Basso's

claim for adequate assurance is just smoke.  The Debtors are prepared to present testimony in

this regard if the Court deems it necessary and appropriate.

20.    The fact that LCPI has filed for protection under chapter 11 does not alter this

assessment.  As of July 10, 2009, the Debtors have closed nearly <u>640</u> open debt trades since the

Court entered the Open Trades Order on December 16, 2008.  Lee Decl. at ¶ 3.  The Debtors

have fulfilled all of their obligations with respect to each such trade without controversy.  *Id.*

Thus, whether or not LCPI defaulted on the Basso Trades, and it has not, no further assurance is

required.

WHEREFORE the Debtors respectfully request that the Court enter an Order approving

the Motion in its entirety.

Dated: July 14, 2009
        New York, New York

  /s/ Richard L. Levine
Richard L. Levine
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

**Declaration of Amy Lee**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

In re                                       :       Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :       08-13555 (JMP)
                                            :
                          Debtors.          :       (Jointly Administered)
                                            :
                                            :

---------------------------------------------------------------------x

## DECLARATION OF AMY LEE

Amy Lee makes this declaration under 28 U.S.C. § 1746, and states:

1.      I am a consultant with Alvarez & Marsal North America, LLC, a

restructuring advisory services firm with numerous offices throughout the world that

serves as restructuring managers for Lehman Brothers Holdings Inc. ("LBHI") and its

affiliated debtor in the above-referenced chapter 11 cases, Lehman Commercial Paper

Inc. ("LCPI"), as debtors and debtors in possession (together, the "Debtors"). I submit

this Declaration in support of the Debtors' Reply To Basso's Objection To Debtors'

Motion For An Order Pursuant To Section 365 Of The Bankruptcy Code Approving The

Assumption Of Open Trade Confirmations With Three Basso Funds (the "Reply").

2.      I have personal knowledge of LCPI's pending loan trade transactions and

of the Debtors' efforts to close the Open Trade Confirmations[1] that they have assumed

since the Court entered the Open Trades Order on December 16, 2008.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in
Debtors' Motion For An Order Pursuant to Section 365 Of The Bankruptcy Code Approving The
Assumption Of Open Trade Confirmations With Three Basso Funds [Docket No. 4249] (the
"Motion").

3.    After the Court entered the Open Trades Order, the Debtors dutifully proceeded with the time-intensive business of closing the assumed Open Trade Confirmations.  With hundreds of trades to close, the Debtors have averaged a rather intensive pace of approximately twenty-four closings per week.  As of July 10, 2009, the Debtors had closed nearly 640 such trades since the Court entered the Open Trades Order.  The Debtors have fulfilled all of their obligations with respect to each assumed trade without controversy and have had no claims by counterparties based on LCPI's representations and warranties and no claims for indemnification.

4.    LCPI stands ready, willing and able to perform its obligations with respect to the Basso Trades.  Indeed, LCPI delivered to Basso proposed transfer documentation on September 30, 2008, and revised proposed transfer documentation on April 14, 2009, and is prepared to execute the same (with any necessary revisions to bring them up to date) upon confirmation from Basso that Basso is prepared to close on such documentation.

5.    To the extent that Basso has any future claims against LCPI based on LCPI's representations and warranties or otherwise has claims for indemnification – all of which are highly unlikely – LCPI has both the assets and the wherewithal to satisfy any such obligations.  Indeed, as reflected in LCPI's Amended Schedules of Assets and Liabilities [Docket No. 3927], LCPI has over $25 billion in assets.

6.    The current market price of Greektown Debt is approximately the same as it was when the Debtors filed the Open Trades Motion.  On November 14, 2008, the market price of Greektown Debt was approximately 61.0%.  As of July 10, 2008, the market price of Greektown Debt was approximately 62.0%.

7.      In my experience with loan trades on the secondary market, it has been common for trades under the LSTA Standard Terms, particularly distressed trades such as the Basso Trades, to take months to settle.  Trade counterparties often enter into trades with a seller who, as here, must first settle with an upstream party in order to have the inventory to sell to the buyer and the buyer is entitled to receive and review the transfer documentation showing the purchases and sales by all prior owners, which typically is an extended process.  Thus, the target deadlines for delivering transfer documentation set forth in the LSTA Standard Terms are rarely, if ever, met and are not reflective of the commercial reality. It is my opinion that LCPI's continuing efforts to close the Basso Trades were entirely consistent with market practices and that there was no default by LCPI.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated this 14th day of July, 2009

By: _Amy Lee_____
                    Amy Lee

**Declaration of Russell Chiappetta**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                         :

In re                         :        **Chapter 11 Case No.**
                         :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :        **08-13555 (JMP)**
                         :

           Debtors.         :        **(Jointly Administered)**
                         :
                         :
----------------------------------------------------------------x

## <u>DECLARATION OF RUSSELL CHIAPPETTA</u>

Russell Chiappetta makes this declaration under 28 U.S.C. § 1746, and states:

1.     I am an associate with Andrews Kurth LLP, a law firm with numerous offices throughout the world that has long provided legal services, both prepetition and postpetition, to Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtor in the above-referenced chapter 11 cases, Lehman Commercial Paper Inc. ("<u>LCPI</u>," and, together with LBHI, the "<u>Debtors</u>") in connection with the Debtors' loan trading businesses.  My practice focuses on the purchase and sale of bank debt pursuant to the LSTA Standard Terms[1] and I have been practicing law in this area for approximately four years.  I submit this Declaration in support of the Debtors' Reply To Basso's Objection To Debtors' Motion For An Order Pursuant To Section 365 Of The Bankruptcy Code Approving The Assumption Of Open Trade Confirmations With Three Basso Funds (the "<u>Reply</u>").

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in Debtors' Motion For An Order Pursuant To Section 365 Of The Bankruptcy Code Approving The Assumption Of Open Trade Confirmation With Three Basso Funds [Docket No. 4249] (the "<u>Motion</u>").

2.      I have personal knowledge of the Basso Trades.  I first learned of the

Basso Trades in June 2008, and, beginning on September 10, 2008, I became regularly

involved in LCPI's efforts to close the Basso Trades, and I reviewed prior

correspondence between the parties about their efforts to close the Basso trades at that

time and again in connection with my work on this certification.

3.      In my experience with loan trades on the secondary market, it is not out of

the ordinary for trades that incorporate the LSTA Standard Terms, particularly trades of

distressed debt such as the Basso Trades, to take months to settle.  Buyers often enter into

trades with the knowledge that the seller must first settle trades with an upstream party in

order to have the inventory to sell to the buyer, which was the case here.  In my

experience, the target deadlines for delivering transfer documentation set forth in the

LSTA Standard Terms are often times not met.

4.      Through the course of my involvement, LCPI communicated with Basso

concerning the closing of the trades as early as June 20, 2008, s*ee* Exhibit A, and

communicated with Basso through at least October 1, 2008.  *See* Exhibit B.  I am not

aware of any prior indication from Basso that it was contending that LCPI was in default.

Indeed, on June 20, 2008, Basso communicated with LCPI concerning the closing of the

Trades.  *See* Exhibit A.  Moreover, Basso executed a revised confirmation for one of the

Basso Trades on or about September 10, 2008.  On September 30, 2008, LCPI delivered

proposed transfer documentation to Basso, responding to Basso's September 30, 2008

request for the same.  *See* Exhibits C and D.

5.      LCPI continued its efforts to close the Basso Trades postpetition.  For example, LCPI delivered revised transfer documentation to Basso on April 14, 2009.  *See* Exhibit E.

6.      It is not uncommon for other market participants that have settled assumed trades with the Debtors to agree to similar representations and warranties that will be included in the final transfer documentation with Basso.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated this 14th day of July, 2009

By: _____/s/ Russell Chiappetta_____
Russell Chiappetta

**EXHIBIT A**

## Chiappetta, Russell

| | |
|---|---|
| **From:** | Chiappetta, Russell |
| **Sent:** | Monday, June 23, 2008 11:08 AM |
| **To:** | 'Frank Jaklitsch' |
| **Subject:** | RE: Greektown |

Frank, let me know if you've had a chance to review the ancillary agreements/orders and whether you have any additional comments.  Lehman would like to close today, if possible.

-----Original Message-----
From: Frank Jaklitsch [mailto:fjaklitsch@esbinalter.com]
Sent: Friday, June 20, 2008 12:19 PM
To: Chiappetta, Russell
Subject: FW: Greektown

Russell-

        Please see attached.


-----Original Message-----
From: Frank Jaklitsch
Sent: Friday, June 20, 2008 11:13 AM
To: 'McLoughlin, William'
Cc: Jennifer Cronin
Subject: RE: Greektown

Bill-

        Thanks for the development agreement, I'll try to review the same by this afternoon.  Attached please find my initial comments to the upstream - in the event Lehman must close with 5th Third today, I thought that, at a minimum, these comments should be addressed.

        However, if possible, Basso would prefer to delay closing until next week, in part to get a sense of the where the market is headed, from our other recent trades.  I understand that it seems that based on the email from tribal counsel, it should be possible for the loans to be traded in the secondary market.

        In reading the Order, however, I noticed there were several "subject to" conditions therein in order for the order to be effective - at a minimum, we need to determine if the ordinary seller's reps in the LSTA PSA, are sufficient to address any concerns we may have.  Should the seller make an additional rep, that it has acted in accordance with the conditions in the Order, and that the order is effective as of the closing date?  Also, to draw a parallel from claims trading (which obviously is a different realm with different considerations), how do we get any comfort that the "MCBG Order" is final and not subject to change?  I don't mean to overanalyze, but I do want to make sure that Basso is standing on solid ground with respect to its holdings in this credit - obviously, I've informed them of the 10% ceiling, which appears to be the only objective criteria that the gaming board is concerned with.

        Please let me know your thoughts on the above.  I plan to review some of the issues internally today as well, to see if we can get some comfort on our end.

Sincerely,


Frank P. Jaklitsch
Esbin & Alter, LLP
497 South Main Street
New City, New York 10956
Telephone (: (845) 634-7909

1

Facsimile 7: (845) 634-4160
E-Mail *: fjaklitsch@esbinalter.com
Website: www.esbinalter.com

Please access the following location for an important electronic communications
disclaimer: http://www.esbinalter.com/disclosure070306.htm


-----Original Message-----
From: McLoughlin, William [mailto:william.mcloughlin@lehman.com]
Sent: Friday, June 20, 2008 10:55 AM
To: Frank Jaklitsch
Subject: FW: Greektown

 as requested.

-----Original Message-----
From: David Schrodt [mailto:schrodt@chapman.com]
Sent: Friday, June 20, 2008 10:24 AM
To: Russell Chiappetta
Cc: McLoughlin, William
Subject: Fwd: Greektown


Russell,  Attached is the requested agreement.


Begin forwarded message:

> From: "Huls, Judy" <Judy.Huls@53.com>
> Date: June 20, 2008 9:20:21 AM CDT
> To: David Schrodt <schrodt@chapman.com>
> Subject: FW: Greektown
>
>
>
> From: Robert Russell [mailto:russell@rmclegal.com]
> Sent: Friday, June 20, 2008 10:18 AM
> To: Huls, Judy; Thorndike, Hilary (LEMG)
> Cc: Morelli, Michael
> Subject: RE: Greektown
>
> Dear Judy
>
>
>
> Thank you for the email.  I have attached a PDF copy of the Revised
> Development Agreement.
>
>
>
> Robert Russell
>
> Gaming Analyst
>
> Regulatory Management Counselors, P.C.
>
> University Place Center
>
> 333 Albert Avenue, Suite 450
>
> East Lansing, MI 48823
>
> 517-507-3858 Office
>
> 517-908-0235 Fax
>
> 248-703-4308 Cell

```
>
> russell@rmclegal.com
>
> Online at: www.rmclegal.com
>
>
>
> From: Huls, Judy [mailto:Judy.Huls@53.com]
> Sent: Friday, June 20, 2008 9:03 AM
> To: Thorndike, Hilary (LEMG); Robert Russell
> Subject: Greektown
>
>
>
> The name of the document that we are requesting is the Revised
> Development Agreement among the City of Detroit, the Economic
> Development Corporation of the City of Detroit and Greektown Casino,
> L.L.C., dated as of August 2, 2002.  It is referred to in the
> Greektown Credit Agreement as the "Development Agreement."
>
> This e-mail transmission contains information that is confidential and

> may be privileged.It is intended only for the addressee(s) named
> above. If you receive this e-mail in error,please do not read, copy or

> disseminate it in any manner.  If you are not the intended recipient,
> any disclosure, copying, distribution or use of the contents of this
> informationis prohibited. Please reply to the message immediately by
> informing the sender that the message was misdirected. After replying,

> please erase it from your computer system. Your assistance in
> correcting this error is appreciated.
> This e-mail transmission contains information that is confidential and

> may be privileged. It is intended only for the addressee(s) named
> above. If you receive this e-mail in error, please do not read, copy
> or disseminate it in any manner. If you are not the intended
> recipient, any disclosure, copying, distribution or use of the
> contents of this information is prohibited. Please reply to the
> message immediately by informing the sender that the message was
> misdirected. After replying, please erase it from your computer
> system. Your assistance in correcting this error is appreciated.
```

CIRCULAR 230 DISCLOSURE:

ANY STATEMENTS REGARDING TAX MATTERS MADE HEREIN, INCLUDING ANY ATTACHMENTS, CANNOT BE
RELIED UPON BY ANY PERSON TO AVOID TAX PENALTIES AND ARE NOT INTENDED TO BE USED OR
REFERRED TO IN ANY MARKETING OR PROMOTIONAL MATERIALS. TO THE EXTENT THIS COMMUNICATION
CONTAINS A TAX STATEMENT OR TAX ADVICE, CHAPMAN AND CUTLER LLP DOES NOT AND WILL NOT
IMPOSE ANY LIMITATION ON DISCLOSURE OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY
TRANSACTIONS TO WHICH SUCH TAX STATEMENT OR TAX ADVICE RELATES.

Chapman and Cutler LLP is an Illinois limited liability partnership that has elected to be
governed by the Illinois Uniform Partnership Act (1997).

NOTICE OF CONFIDENTIALITY:  The information contained in this email transmission is
confidential information which may contain information that is legally privileged and
exempt from disclosure under applicable law.  The information is intended solely for the
use of the individual or entity named above.  If you are not the intended recipient, you
are hereby notified that any disclosure, copying, distribution or taking of any action in
reliance on the contents of this email transmission is strictly prohibited.  If you have
received this email transmission in error, please notify us immediately by telephone to
arrange for the return of the original transmission to us.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not
be regarded as an offer to sell or as a solicitation of an offer to buy any financial
product, an official confirmation of any transaction, or as an official statement of
Lehman Brothers.  Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate and it should
not be relied upon as such.  All information is subject to change without notice.


--------

IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this
communication (including any attachments) is not intended or written to be used and cannot
be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting,
marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT B**

### Chiappetta, Russell

| | |
|---|---|
| **From:** | Frank Jaklitsch [fjaklitsch@esbinalter.com] |
| **Sent:** | Wednesday, October 01, 2008 1:03 PM |
| **To:** | 'Jeffrey Olinsky' |
| **Cc:** | Lisa Eisenstadt; 'Lisa Murray'; Chiappetta, Russell |
| **Subject:** | Proposed Multilateral Netting        Greektown TLB -        to Lehman to Basso |

Jeffrey-

    As you may know, there are 3 related Basso Funds that are the downstream buyers to a        portion
of        sale of Greektown TLB to Lehman.  As such, Basso has asked me to try to settle this trade directly with
        and to net Lehman out of the middle.  Can you confirm that        can proceed via multilateral netting?  Please
let me know.  Basso and Lehman are amenable.

    Also, I want to emphasize, that Basso wants to close these Greektown trades as soon as possible and
may be contacting        on the business side to help expedite settlement.  To that end, it appears that there are
open upstreams in your chain, with                        Can you give us a brief status of these upstreams,
and when you expect them to close?  If there are any unresolved issues between the upstream parties, please
also advise.
Sincerely,

### REDACTED

Frank P. Jaklitsch
Esbin & Alter, LLP
497 South Main Street
New City, New York 10956
Telephone: (845) 634-7909
Facsimile: (845) 634-4160
E-Mail: fjaklitsch@esbinalter.com
Website: www.esbinalter.com
Please access the following location for an important electronic communications disclaimer: http://www.esbinalter.com/disclosure070306.htm

**EXHIBIT C**

## Chiappetta, Russell

**From:**    Frank Jaklitsch [fjaklitsch@esbinalter.com]
**Sent:**    Tuesday, September 30, 2008 1:16 PM
**To:**    Chiappetta, Russell
**Cc:**    Tomea, David; Lisa Eisenstadt
**Subject:**    FW: 6/3/2008 - Greektown TLB - Lehman to Basso

Rusty-

    Further to my previous email, are your upstreams for Greektown open? If so, please send drafts of the upstreams docs (or at least inform us of the selling entities). Basso may prefer to settle directly with your upstreams. Is this a possibility? Please let us know.
Sincerely,

Frank P. Jaklitsch
Esbin & Alter, LLP
497 South Main Street
New City, New York 10956
Telephone: (845) 634-7909
Facsimile: (845) 634-4160
E-Mail: fjaklitsch@esbinalter.com
Website: www.esbinalter.com
Please access the following location for an important electronic communications disclaimer: http://www.esbinalter.com/disclosure070306.htm

---

**From:** Frank Jaklitsch
**Sent:** Tuesday, September 30, 2008 1:06 PM
**To:** 'Chiappetta, Russell'
**Cc:** Lisa Eisenstadt; Tomea, David
**Subject:** 6/3/2008 - Greektown TLB - Lehman to Basso

Rusty-

    Do you expect to have upstreams and draft docs to us shortly on the above-referenced trades? I will try to mark them up as soon as I receive them. Please let me know.
Sincerely,

Frank P. Jaklitsch
Esbin & Alter, LLP
497 South Main Street
New City, New York 10956
Telephone: (845) 634-7909
Facsimile: (845) 634-4160
E-Mail: fjaklitsch@esbinalter.com
Website: www.esbinalter.com
Please access the following location for an important electronic communications disclaimer: http://www.esbinalter.com/disclosure070306.htm

**EXHIBIT D**

## Chiappetta, Russell

| | |
|---|---|
| **From:** | Chiappetta, Russell |
| **Sent:** | Tuesday, September 30, 2008 2:30 PM |
| **To:** | 'Frank Jaklitsch' |
| **Subject:** | Greektown - Lehman to Basso (td 6-3-08) |
| **Attachments:** | Greektown - Lehman to Basso Credit Opportunities Holding Fund Ltd. (td 6-3-08) -- PPL.DOC; Greektown - Lehman to Basso Fund Ltd. (td 6-3-08) -- PPL.DOC; Greektown - Lehman to Basso Multi-Strategy Holding Fund Ltd. (td 6-3-08) -- PPL.DOC; Greektown - Lehman to Basso Credit Opportunities Holding Fund Ltd. -- PSA.DOC; Greektown - Lehman to Basso Multi-Strategy Holding Fund Ltd. -- PSA.DOC; Greektown - Lehman to Basso Fund Ltd. -- PSA.DOC; Greektown - Lehman to Basso Multi-Strategy Holding Fund Ltd. - AA.DOC; Greektown - Lehman to Basso Credit Opportunities Holding Fund Ltd. - AA.DOC; Greektown - Lehman to Basso Fund Ltd. - AA.DOC |

**REDACTED**

Frank:

Attached are draft documents for the captioned trade. I'm still trying to confirm inventory with        but will hopefully have that information for you soon. In the meantime, let me know if you have any comments to the documents themselves.

Thanks,

Russell A. Chiappetta
Andrews Kurth LLP
450 Lexington Ave. -- 15th Floor
New York, NY 10017
(T): 212.850.2884
(F): 212.850.2929
russellchiappetta@andrewskurth.com

*CONFIDENTIALITY NOTICE: This electronic transmission, and any documents attached hereto, (a) may contain confidential and/or legally privileged information, and (b) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.*

**LEHMAN COMMERCIAL PAPER INC.**
745 Seventh Avenue, 5th Floor
New York, New York 10019

October __, 2008

**VIA ELECTRONIC MAIL**

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902

> *Re*:    *Greektown Holdings, L.L.C.*

Ladies and Gentlemen:

Reference is made to the Purchase and Sale Agreement, dated as of the date hereof (the "Agreement") between LEHMAN COMMERCIAL PAPER INC. (the "Seller") and BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD. (the "Buyer"), pursuant to which the Buyer is purchasing the Transferred Rights from the Seller.  This letter constitutes the Purchase Price Letter referred to in the Agreement.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

Buyer shall pay to Seller the purchase price (the "Purchase Price") by wire transfer of immediately available funds to Seller's account pursuant to the wire instructions set forth in the Agreement.

The Purchase Price is the amount set forth on Schedule A hereto.

[remainder of page is intentionally left blank.]

NYC:182283.1

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____
    Name:
    Title:

Acknowledged and Agreed:

BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD.

By: _____
    Name:
    Title:

NYC:182283.1

# SCHEDULE A

## [SEE ATTACHED SPREADSHEET]

**LEHMAN COMMERCIAL PAPER INC.**
745 Seventh Avenue, 5th Floor
New York, New York 10019

October __, 2008

**VIA ELECTRONIC MAIL**

Basso Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902

     *Re*:    *Greektown Holdings, L.L.C.*

Ladies and Gentlemen:

Reference is made to the Purchase and Sale Agreement, dated as of the date hereof (the "Agreement") between LEHMAN COMMERCIAL PAPER INC. (the "Seller") and BASSO FUND LTD. (the "Buyer"), pursuant to which the Buyer is purchasing the Transferred Rights from the Seller. This letter constitutes the Purchase Price Letter referred to in the Agreement. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

Buyer shall pay to Seller the purchase price (the "Purchase Price") by wire transfer of immediately available funds to Seller's account pursuant to the wire instructions set forth in the Agreement.

The Purchase Price is the amount set forth on Schedule A hereto.

[remainder of page is intentionally left blank.]

NYC:182282.1

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____
    Name:
    Title:

Acknowledged and Agreed:

BASSO FUND LTD.

By: _____
    Name:
    Title:

**SCHEDULE A**

**[SEE ATTACHED SPREADSHEET]**

**LEHMAN COMMERCIAL PAPER INC.**
745 Seventh Avenue, 5th Floor
New York, New York 10019

October __, 2008

**VIA ELECTRONIC MAIL**

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902

     *Re*:   *Greektown Holdings, L.L.C.*

Ladies and Gentlemen:

Reference is made to the Purchase and Sale Agreement, dated as of the date hereof (the "Agreement") between LEHMAN COMMERCIAL PAPER INC. (the "Seller") and BASSO MULTI-STRATEGY HOLDING FUND LTD. (the "Buyer"), pursuant to which the Buyer is purchasing the Transferred Rights from the Seller.  This letter constitutes the Purchase Price Letter referred to in the Agreement.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

Buyer shall pay to Seller the purchase price (the "Purchase Price") by wire transfer of immediately available funds to Seller's account pursuant to the wire instructions set forth in the Agreement.

The Purchase Price is the amount set forth on Schedule A hereto.

[remainder of page is intentionally left blank.]

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____
      Name:
      Title:

Acknowledged and Agreed:

BASSO MULTI-STRATEGY HOLDING FUND LTD.

By: _____
      Name:
      Title:

# SCHEDULE A

## [SEE ATTACHED SPREADSHEET]



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

---

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | June 3, 2008 |
| Agreement Date: | October __, 2008 |
| Seller: | Lehman Commercial Paper Inc. |
| Buyer: | Basso Credit Opportunities Holding Fund Ltd. |
| Credit Agreement: | CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents. |
| Borrowers: | GREEKTOWN HOLDINGS, L.L.C.<br>GREEKTOWN HOLDINGS II, INC. |
| Purchase Amount(s): | REDACTED |
| Tranche(s): | Term B Loan |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment<br>☒ Secondary Assignment. |
| Immediate Prior Seller | Deutsche Bank AG New York Branch |
| Borrowers in Bankruptcy: | Yes ☒    No ☐ |
| Delivery of Credit Documents: | Yes ☐    No ☒ |
| Netting Arrangements: | Yes ☐    No ☒ |
| Flip Representations: | Yes ☐    No ☒ |

**LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.**

| TRANSACTION SUMMARY | | |
|---|---|---|
| Step-Up Provisions: | Yes ☐ | No ☒ |
| | Shift Date: | N/A |
| Transfer Notice: | Yes ☐ | No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.   Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.    Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.   If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
    ☒  means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
    ☒  means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
    ☒  means November 30, 2008.

"Buyer Purchase Price" select one:
    ☒  not applicable.

"Commitments" select one:
    ☒  none.

"Covered Prior Seller" select one:
    ☒  not applicable.

"Filing Date" select one:
    ☒  means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $40,000.00.

"Netting Letter" select one:
    ☒  not applicable.

"Original Buyer" select one:
    ☒  not applicable.

"Penultimate Buyer" select one:
☒ not applicable.

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
☒ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:
☒ not applicable.

## B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.

If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

"(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following:  _____.

Section 4.1(v) (Proof of Claim).
☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
   ☐ the Agent on behalf of the Lenders.
   ☐ Seller or a Prior Seller.
☒ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

## C.   **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**   Section 5.1(n) (Buyer Status).

☐ Buyer is not a Lender.
☒ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**   If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.   **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)   If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)   If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.   **SECTION 7 (COSTS AND EXPENSES)**

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
   ☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to

    ☐ one-half thereof.

    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**   **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**   Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)   If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)   If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**   Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref:  Greektown Holdings, LLC

Buyer's Wire Instructions:

ABA: 021-000-018
Bank Name: Bank of New York
A/C#: 8900327634
A/C Name: Deutsche Bank Securities Inc.
F/F/C: Basso Credit Opportunities Fund
Acct: 106-00946

**G.**   **SECTION 9 (NOTICES)**

Seller's Address for Notices and Delivery:

Loan Administration/Operations Contact (For Notices on Borrowings, Paydowns, Interest & Fees):
Lehman Commercial Paper Inc.
745 7th Avenue, 16th Floor
New York, NY  10019
Attn:  Denise Roselli
Email:  denise.roselli@lehman.com
Phone:  (212) 526-1490
Fax:  (646) 758-4993

Credit Contact (For Credit Documents & Financial Statements):
Lehman Commercial Paper Inc.

745 7th Avenue, 5th Floor
New York, NY 10019
Attn: Randall Braunfeld
Phone: 212-526-3873
Fax: 646-758-4579
Email: randall.braunfeld@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

## H.    SECTION 26 (FURTHER PROVISIONS)

1. Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2. Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

3. Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

NYC:182261.1                                                                                                    6

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**


By:_____
   Name:
   Title:


**BUYER**

**BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD.**


By:_____
Name:
Title:

**ANNEX TO PURCHASE AND SALE AGREEMENT**

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Wachovia Bank, National Association, as seller, and Deutsche Bank AG New York Branch, as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between BlackRock Senior Income Series II, as seller, and Wachovia Bank, National Association, as buyer, related to distressed loans.

Assignment and Assumption, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

N/A

3.    Description of Proof of Claim (if any).

N/A

4.    Description of Adequate Protection Order (if any).

Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.    List any exceptions to Section 4.1(w) (Notice of Impairment).

None.

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | June 3, 2008 |
| Agreement Date: | October __, 2008 |
| Seller: | Lehman Commercial Paper Inc. |
| Buyer: | Basso Multi-Strategy Holding Fund Ltd. |
| Credit Agreement: | CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents. |
| Borrowers: | GREEKTOWN HOLDINGS, L.L.C. GREEKTOWN HOLDINGS II, INC. |
| Purchase Amount(s): | REDACTED |
| Tranche(s): | Term B Loan |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment<br>☒ Secondary Assignment. |
| Immediate Prior Seller | Deutsche Bank AG New York Branch |
| Borrowers in Bankruptcy: | Yes ☒        No ☐ |
| Delivery of Credit Documents: | Yes ☐        No ☒ |
| Netting Arrangements: | Yes ☐        No ☒ |
| Flip Representations: | Yes ☐        No ☒ |

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

| TRANSACTION SUMMARY | | |
|---|---|---|
| Step-Up Provisions: | Yes ☐ | No ☒ |
| | Shift Date: | N/A |
| Transfer Notice: | Yes ☐ | No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.   Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.   If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
  ☒ means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
  ☒ means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
  ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
  ☒ not applicable.

"Commitments" select one:
  ☒ none.

"Covered Prior Seller" select one:
  ☒ not applicable.

"Filing Date" select one:
  ☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $1,840,000.00.

"Netting Letter" select one:
  ☒ not applicable.

"Original Buyer" select one:
  ☒ not applicable.

"Penultimate Buyer" select one:
    ☒ not applicable.

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
    ☒ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:
    ☒ not applicable.

**B.**    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

    "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
    ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
    ☒ None.
    ☐ The following: _____.

Section 4.1(v) (Proof of Claim).
    ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
        ☐ the Agent on behalf of the Lenders.
        ☐ Seller or a Prior Seller.
    ☒ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
    ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.**    **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (Buyer Status).

    ☐ Buyer is not a Lender.
    ☒ Buyer is a Lender.
    ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
    ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.**    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.**    **SECTION 7 (COSTS AND EXPENSES)**

    ☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
        ☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**    **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (<u>Distributions</u>); <u>Step-Up Distributions Covenant</u>.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (<u>Wire Instructions</u>).

<u>Seller's Wire Instructions</u>:

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref: Greektown Holdings, LLC

<u>Buyer's Wire Instructions</u>:

ABA#: 021000021
Bank Name: JPMorgan Chase Bank
City: New York
A/C #: 066642434
Entity Name: Goldman Sachs International
F/C Name: Basso Multi-Strategy Holding Fund Ltd
A/C: 023427883

**G.**    **SECTION 9 (NOTICES)**

<u>Seller's Address for Notices and Delivery</u>:

Loan Administration/Operations Contact (For Notices on Borrowings, Paydowns, Interest & Fees):
Lehman Commercial Paper Inc.
745 7th Avenue, 16th Floor
New York, NY  10019
Attn:  Denise Roselli
Email:  denise.roselli@lehman.com
Phone:  (212) 526-1490
Fax:  (646) 758-4993

Credit Contact (For Credit Documents & Financial Statements):

NYC:182263.1        5

Lehman Commercial Paper Inc.
745 7th Avenue, 5th Floor
New York, NY 10019
Attn: Randall Braunfeld
Phone: 212-526-3873
Fax: 646-758-4579
Email: randall.braunfeld@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

## H.    **SECTION 26 (FURTHER PROVISIONS)**

1. Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2. Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

3.  Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**

By:_____
    Name:
    Title:

**BUYER**

**BASSO MULTI-STRATEGY HOLDING FUND LTD.**

By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.     If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Wachovia Bank, National Association, as seller, and Deutsche Bank AG New York Branch, as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between BlackRock Senior Income Series II, as seller, and Wachovia Bank, National Association, as buyer, related to distressed loans.

Assignment and Assumption, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

2.     List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

N/A

3.     Description of Proof of Claim (if any).

N/A

4.     Description of Adequate Protection Order (if any).

Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.     List any exceptions to Section 4.1(w) (<u>Notice of Impairment</u>).

None.

6.     The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

### TRANSACTION SUMMARY

| | |
|---|---|
| Trade Date: | June 3, 2008 |
| Agreement Date: | October __, 2008 |
| Seller: | Lehman Commercial Paper Inc. |
| Buyer: | Basso Fund Ltd. |
| Credit Agreement: | CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents. |
| Borrowers: | GREEKTOWN HOLDINGS, L.L.C.<br>GREEKTOWN HOLDINGS II, INC. |
| Purchase Amount(s): | REDACTED |
| Tranche(s): | Term B Loan |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment<br>☒ Secondary Assignment. |
| Immediate Prior Seller | Deutsche Bank AG New York Branch |
| Borrowers in Bankruptcy: | Yes ☒      No ☐ |
| Delivery of Credit Documents: | Yes ☐      No ☒ |
| Netting Arrangements: | Yes ☐      No ☒ |
| Flip Representations: | Yes ☐      No ☒ |

NYC:182258.1

| TRANSACTION SUMMARY | | |
|---|---|---|
| **Step-Up Provisions:** | Yes ☐ | No ☒ |
| | **Shift Date:** | N/A |
| **Transfer Notice:** | Yes ☐ | No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

 "Bankruptcy Case" select one:
☒ means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
☒ means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
☒ means November 30, 2008.

"Buyer Purchase Price" select one:
☒ not applicable.

"Commitments" select one:
☒ none.

"Covered Prior Seller" select one:
☒ not applicable.

"Filing Date" select one:
☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $120,000.00.

"Netting Letter" select one:
☒ not applicable.

"Original Buyer" select one:
☒ not applicable.

"Penultimate Buyer" select one:
☒ not applicable.

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
☒ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:
☒ not applicable.

## B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

|  | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
|  | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
> If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

> > "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____.

Section 4.1(v) (Proof of Claim).
☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
 ☐ the Agent on behalf of the Lenders.
 ☐ Seller or a Prior Seller.
☒ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

C.1    Section 5.1(n) (Buyer Status).

 ☐ Buyer is not a Lender.
 ☒ Buyer is a Lender.
 ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
 ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

C.2    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.    SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

 (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

 (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.    SECTION 7 (COSTS AND EXPENSES)**

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
 ☐ one-half thereof.

☐     other relevant fraction or percentage, _____, thereof.

☐   The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to

      ☐   one-half thereof.

      ☐   other relevant fraction or percentage, _____, thereof.

☐   The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒   The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐   There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**      **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**     Section 8.2 (Distributions); Step-Up Distributions Covenant.

      (i)       If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

      (ii)      If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**     Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref:  Greektown Holdings, LLC

Buyer's Wire Instructions:

Bank Name: JPMorgan Chase Bank
City: New York
ABA: 021-000-021
A/C#: 066642434
Entity Name: Goldman Sachs International
F/F/C: Basso Fund Ltd.
A/C: 023427917

**G.**      **SECTION 9 (NOTICES)**

Seller's Address for Notices and Delivery:

Loan Administration/Operations Contact (For Notices on Borrowings, Paydowns, Interest & Fees):
Lehman Commercial Paper Inc.
745 7th Avenue, 16th Floor
New York, NY  10019
ATTN:  Denise Roselli
EMAIL:  denise.roselli@lehman.com
PHONE:  (212) 526-1490
Fax:  (646) 758-4993

Credit Contact (For Credit Documents & Financial Statements):

Lehman Commercial Paper Inc.
745 7th Avenue, 5th Floor
New York, NY  10019
Attn:  Randall Braunfeld
Phone:  212-526-3873
Fax:  646-758-4579
Email: randall.braunfeld@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

H.    **SECTION 26 (FURTHER PROVISIONS)**

1.  Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2.  Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

NYC:182258.1                                          6

3.  Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

4.  Seller and Buyer agree that Section 5.1(j) of the Standard Terms shall be deleted in its entirety and replaced with the following new provision:

Either (i) no interest in the Transferred Rights is being acquired by or on behalf of an Entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the funds being used by Buyer to purchase the Transferred Rights are from a fund managed by Basso Capital Management, L.P., a Qualified Professional Asset Manager (the "Manager"), within the meaning of Part V of PTE 84-14, the Manager made the investment decision on behalf of Buyer to purchase the Transferred Rights from the Seller as contemplated by this Agreement, and the purchase of the Transferred Rights hereunder satisfies the requirements of sub-sections (b) through (g) of Part I of PTE 84-14, and the individual making the investment decision to transfer the Transferred Rights on behalf of the Buyer has no actual knowledge (after reasonable inquiry and investigation) that the requirements of subsection (a) of Part I of PTE 84-14 are not satisfied.  Buyer and Manager each represent and warrant to Seller that Seller has not acted and will not act as a fiduciary, as such term is defined in Section 3(21) of ERISA, with respect to the purchase and holding of the Transferred Rights by the Buyer and the exercise of Seller's or Buyer's rights related thereto.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**


By:_____
   Name:
   Title:


**BUYER**

**BASSO FUND LTD.**


By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Wachovia Bank, National Association, as seller, and Deutsche Bank AG New York Branch, as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between BlackRock Senior Income Series II, as seller, and Wachovia Bank, National Association, as buyer, related to distressed loans.

Assignment and Assumption, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

N/A

3.    Description of Proof of Claim (if any).

N/A

4.    Description of Adequate Protection Order (if any).

Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.    List any exceptions to Section 4.1(w) (<u>Notice of Impairment</u>).

None.

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

_____

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms.  The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties or as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below.  The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction.  With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| | |
|---|---|
| **TRANSACTION SUMMARY** | |
| **Trade Date:** | **June 3, 2008** |
| **Agreement Date:** | **October __, 2008** |
| **Seller:** | **Lehman Commercial Paper Inc.** |
| **Buyer:** | **Basso Fund Ltd.** |
| **Credit Agreement:** | **CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents.** |
| **Borrowers:** | **GREEKTOWN HOLDINGS, L.L.C.** |
| | **GREEKTOWN HOLDINGS II, INC.** |
| **Purchase Amount(s):** | **REDACTED** |
| **Tranche(s):** | **Term B Loan** |
| **CUSIP Number(s), if available:** | **N/A** |
| **Pre-Settlement Date Accruals Treatment:** | ☒ **Settled Without Accrued Interest** <br> ☐ **Trades Flat** |
| **Type of Assignment:** | ☐ **Original Assignment** <br> ☒ **Secondary Assignment.** |
| **Immediate Prior Seller** | **Deutsche Bank AG New York Branch** |
| **Borrowers in Bankruptcy:** | **Yes** ☒      **No** ☐ |
| **Delivery of Credit Documents:** | **Yes** ☐      **No** ☒ |
| **Netting Arrangements:** | **Yes** ☐      **No** ☒ |
| **Flip Representations:** | **Yes** ☐      **No** ☒ |

**LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.**

| TRANSACTION SUMMARY | | |
|---|---|---|
| Step-Up Provisions: | Yes ☐ | No ☒ |
| | Shift Date: | N/A |
| Transfer Notice: | Yes ☐ | No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.   Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
☒ means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
☒ means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
☒ means November 30, 2008.

"Buyer Purchase Price" select one:
☒ not applicable.

"Commitments" select one:
☒ none.

"Covered Prior Seller" select one:
☒ not applicable.

"Filing Date" select one:
☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $120,000.00.

"Netting Letter" select one:
☒ not applicable.

"Original Buyer" select one:
☒ not applicable.

"Penultimate Buyer" select one:
☒ not applicable.

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
☒ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:
☒ not applicable.

## B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (<u>Purchase Price</u>); <u>Netting Arrangements</u>.

    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

    "(k) [intentionally omitted]."

Section 4.1(r) (<u>Predecessor Transfer Agreements</u>).

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.

☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (<u>Other Documents</u>).

☒ None.

☐ The following: _____.

Section 4.1(v) (<u>Proof of Claim</u>).

☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by

    ☐ the Agent on behalf of the Lenders.

    ☐ Seller or a Prior Seller.

☒ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

## C.     SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**C.1**     Section 5.1(n) (<u>Buyer Status</u>).

☐ Buyer is not a Lender.

☒ Buyer is a Lender.

☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**     If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.     SECTION 6 (INDEMNIFICATION)

Section 6.1 (<u>Seller's Indemnities</u>); <u>Step-Up Indemnities</u>.

    (i)     If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)     If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.     SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to

    ☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to

    ☐ one-half thereof.

    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

## F.  SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)

**F.1**  Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)  If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)  If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**  Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref:  Greektown Holdings, LLC

Buyer's Wire Instructions:

Bank Name: JPMorgan Chase Bank
City: New York
ABA: 021-000-021
A/C#: 066642434
Entity Name: Goldman Sachs International
F/F/C: Basso Fund Ltd.
A/C: 023427917

## G.  SECTION 9 (NOTICES)

Seller's Address for Notices and Delivery:

Loan Administration/Operations Contact (For Notices on Borrowings, Paydowns, Interest & Fees):
Lehman Commercial Paper Inc.
745 7th Avenue, 16th Floor
New York, NY  10019
ATTN:  Denise Roselli
EMAIL:  denise.roselli@lehman.com
PHONE:  (212) 526-1490
Fax:  (646) 758-4993

Credit Contact (For Credit Documents & Financial Statements):

Lehman Commercial Paper Inc.
745 7th Avenue, 5th Floor
New York, NY  10019
Attn:  Randall Braunfeld
Phone:  212-526-3873
Fax:  646-758-4579
Email: randall.braunfeld@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

## H.    **SECTION 26 (FURTHER PROVISIONS)**

1. Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2. Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

3.   Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

4.   Seller and Buyer agree that Section 5.1(j) of the Standard Terms shall be deleted in its entirety and replaced with the following new provision:

Either (i) no interest in the Transferred Rights is being acquired by or on behalf of an Entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the funds being used by Buyer to purchase the Transferred Rights are from a fund managed by Basso Capital Management, L.P., a Qualified Professional Asset Manager (the "Manager"), within the meaning of Part V of PTE 84-14, the Manager made the investment decision on behalf of Buyer to purchase the Transferred Rights from the Seller as contemplated by this Agreement, and the purchase of the Transferred Rights hereunder satisfies the requirements of sub-sections (b) through (g) of Part I of PTE 84-14, and the individual making the investment decision to transfer the Transferred Rights on behalf of the Buyer has no actual knowledge (after reasonable inquiry and investigation) that the requirements of subsection (a) of Part I of PTE 84-14 are not satisfied.  Buyer and Manager each represent and warrant to Seller that Seller has not acted and will not act as a fiduciary, as such term is defined in Section 3(21) of ERISA, with respect to the purchase and holding of the Transferred Rights by the Buyer and the exercise of Seller's or Buyer's rights related thereto.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**


By:_____
    Name:
    Title:


**BUYER**

**BASSO FUND LTD.**


By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between Wachovia Bank, National Association, as seller, and Deutsche Bank AG New York Branch, as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October __, 2008, by and between BlackRock Senior Income Series II, as seller, and Wachovia Bank, National Association, as buyer, related to distressed loans.

Assignment and Assumption, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

N/A

3.    Description of Proof of Claim (if any).

N/A

4.    Description of Adequate Protection Order (if any).

Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.    List any exceptions to Section 4.1(w) (Notice of Impairment).

None.

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1.  Assignment and Assumption.

a.       Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**").  Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.       In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.       Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.       Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date.  Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the

Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.        Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided*, *however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.  Certain Representations, Warranties and Agreements.

a.        Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.        Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.        Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.        Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers.  Assignor shall have no duty or

responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

     e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  <u>Miscellaneous</u>.

     a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

     b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

     c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed.  For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with <u>clause (a)</u> of <u>Section 1</u> herein.  In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

     d.      In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

     e.      THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

     f.      This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

g.     This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.     This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

5

## SCHEDULE OF TERMS

<u>Item #</u>

1.    <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.    <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.    <u>Amounts</u>:

Term B Loans

        a.    Aggregate Commitments of all Lenders:

        b.    Aggregate Loans of all Lenders:

        c.    Amount of Assigned Share of Commitments:

        d.    Assigned Share/Pro Rata Share of Commitments:    **REDACTED**

        e.    Amount of Assigned Share of Loans:

        f.    Assigned Share/Pro Rata Share of Loans:

4.    <u>Settlement Date</u>:  October __, 2008

5.    <u>Payment Instructions</u>:

    ASSIGNOR:    :

    CITIBANK NYC
    ABA # 021000089
    A/C # 30434133
    A/C LCPI Bank Loans
    Ref:  Greektown Holdings, LLC

    ASSIGNEE:

    ABA#: 021000021
    Bank Name: JPMorgan Chase Bank
    City: New York

A/C #: 066642434
Entity Name: Goldman Sachs International
F/C Name: Basso Multi-Strategy Holding Fund Ltd
A/C: 023427883

6.    Notice Addresses:

ASSIGNOR:

Loan Administration/Operations Contact (For Notices on Borrowings, Paydowns, Interest &
Fees):
Lehman Commercial Paper Inc.
745 7th Avenue, 16th Floor
New York, NY  10019
ATTN:  DENISE ROSSELLI
EMAIL:  DENISE.ROSSELLI@LEHMAN.COM
PHONE:  (212) 526-1490
Fax:  (646) 758-4993

Credit Contact (For Credit Documents & Financial Statements):
Lehman Commercial Paper Inc.
745 7th Avenue, 5th Floor
New York, NY  10019
Attn:  Randall Braunfeld
Phone:  212-526-3873
Fax:  646-758-4579
Email: randall.braunfeld@lehman.com

ASSIGNEE:

*Primary Contact (for all loan activity, financials, etc):*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com

Attn: Cristin Caufield

*Credit Contact:*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

7.    Signatures:

**LEHMAN COMMERCIAL PAPER INC.**

as Assignor


By:_____
Title:_____


**BASSO MULTI-STRATEGY HOLDING FUND LTD.**

as Assignee



By:_____
Title:_____

Accepted in accordance with Section
10.1l.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent


By: _____
Name:
Title:

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1.  <u>Assignment and Assumption</u>.

a.        Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**").  Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.        In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.        Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.        Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date.  Assignee hereby acknowledges and agrees that the agreement set forth in this <u>clause (d)</u> is expressly made for the benefit of the Borrowers, the

NYC:182270.1

Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.        Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided*, *however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.  Certain Representations, Warranties and Agreements.

a.        Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.        Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.        Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.        Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers.  Assignor shall have no duty or

responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  Miscellaneous.

a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed.  For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein.  In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

d.      In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

e.      THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

f.      This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

g.     This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.     This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

## SCHEDULE OF TERMS

**Item #**

1. <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2. <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3. <u>Amounts</u>:

Term B Loans

    a.   Aggregate Commitments of all Lenders:

    b.   Aggregate Loans of all Lenders:

    c.   Amount of Assigned Share of Commitments:

    d.   Assigned Share/Pro Rata Share of Commitments:    **REDACTED**

    e.   Amount of Assigned Share of Loans:

    f.   Assigned Share/Pro Rata Share of Loans:

4. <u>Settlement Date</u>:  October __, 2008

5. <u>Payment Instructions</u>:

    ASSIGNOR:                  :

    CITIBANK NYC
    ABA # 021000089
    A/C # 30434133
    A/C LCPI Bank Loans
    Ref:  Greektown Holdings, LLC

    ASSIGNEE:

    ABA: 021-000-018
    Bank Name: Bank of New York
    A/C#: 8900327634

A/C Name: Deutsche Bank Securities Inc.
F/F/C: Basso Credit Opportunities Fund
Acct: 106-00946

6.    Notice Addresses:

ASSIGNOR:

Loan Administration/Operations Contact (For Notices on Borrowings, Paydowns, Interest & Fees):
Lehman Commercial Paper Inc.
745 7th Avenue, 16th Floor
New York, NY 10019
ATTN: DENISE ROSSELLI
EMAIL: DENISE.ROSSELLI@LEHMAN.COM
PHONE: (212) 526-1490
Fax: (646) 758-4993

Credit Contact (For Credit Documents & Financial Statements):
Lehman Commercial Paper Inc.
745 7th Avenue, 5th Floor
New York, NY 10019
Attn: Randall Braunfeld
Phone: 212-526-3873
Fax: 646-758-4579
Email: randall.braunfeld@lehman.com

ASSIGNEE:

*Primary Contact (for all loan activity, financials, etc):*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com

Attn: Cristin Caufield

*Credit Contact:*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

7.    <u>Signatures</u>:

**LEHMAN COMMERCIAL PAPER INC.**

as Assignor

By:_____
Title:_____

**BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD.**

as Assignee

By:_____
Title:_____

Accepted in accordance with Section
10.1l.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent


By: _____
    Name:
    Title:

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1.  Assignment and Assumption.

a.      Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**").  Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.      In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.      Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date.  Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the

Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.      Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.   Certain Representations, Warranties and Agreements.

a.      Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.      Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.      Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.      Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers.  Assignor shall have no duty or

responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

      e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  <u>Miscellaneous</u>.

      a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

      b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

      c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with <u>clause (a)</u> of <u>Section 1</u> herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

      d.      In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

      e.      THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

      f.      This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

NYC:182268.1                3

g.    This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.    This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

# SCHEDULE OF TERMS

## Item #

1.    <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.    <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.    <u>Amounts</u>:

|  | | Term B Loans |
|---|---|---|
| a. | Aggregate Commitments of all Lenders: | |
| b. | Aggregate Loans of all Lenders: | |
| c. | Amount of Assigned Share of Commitments: | |
| d. | Assigned Share/Pro Rata Share of Commitments: | **REDACTED** |
| e. | Amount of Assigned Share of Loans: | |
| f. | Assigned Share/Pro Rata Share of Loans: | |

4.    <u>Settlement Date</u>:  October __, 2008

5.    <u>Payment Instructions</u>:

ASSIGNOR:                                                    :

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref:  Greektown Holdings, LLC

ASSIGNEE:

Bank Name: JPMorgan Chase Bank
City: New York
ABA: 021-000-021

A/C#: 066642434
Entity Name: Goldman Sachs International
F/F/C: Basso Fund Ltd.
A/C: 023427917

6.    Notice Addresses:

ASSIGNOR:

Loan Administration/Operations Contact (For Notices on Borrowings, Paydowns, Interest &
Fees):
Lehman Commercial Paper Inc.
745 7th Avenue, 16th Floor
New York, NY  10019
ATTN:  DENISE ROSSELLI
EMAIL:  DENISE.ROSSELLI@LEHMAN.COM
PHONE:  (212) 526-1490
Fax:  (646) 758-4993

Credit Contact (For Credit Documents & Financial Statements):
Lehman Commercial Paper Inc.
745 7th Avenue, 5th Floor
New York, NY  10019
Attn:  Randall Braunfeld
Phone:  212-526-3873
Fax:  646-758-4579
Email: randall.braunfeld@lehman.com

ASSIGNEE:

*Primary Contact (for all loan activity, financials, etc):*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109

(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

7.      <u>Signatures</u>:

**LEHMAN COMMERCIAL PAPER INC.**

as Assignor


By:_____
Title:_____


**BASSO FUND LTD.**

as Assignee



By:_____
Title:_____

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent


By: _____
    Name:
    Title:

**EXHIBIT E**

## Chiappetta, Russell

| | |
|---|---|
| **From:** | Chiappetta, Russell |
| **Sent:** | Tuesday, April 14, 2009 3:12 PM |
| **To:** | Frank Jaklitsch |
| **Cc:** | Tomea, David |
| **Subject:** | Greektown - Lehman to Basso (t/d: 6/3/08) |
| **Attachments:** | Greektown - Lehman to Basso Multi-Strategy Holding Fund Ltd. -- PSA.DOC; Greektown - Lehman to Basso Fund Ltd. -- PSA.DOC; Greektown - Lehman to Basso Credit Opportunities Holding Fund Ltd. -- PSA.DOC; Greektown - Lehman to Basso Multi-Strategy Holding Fund Ltd. - AA.DOC; Greektown - Lehman to Basso Fund Ltd. - AA.DOC; Greektown - Lehman to Basso Credit Opportunities Holding Fund Ltd. - AA.DOC; Greektown - Lehman to Basso Fund Ltd. (td 6-3-08) -- PPL.DOC; Greektown - Lehman to Basso Credit Opportunities Holding Fund Ltd. (td 6-3-08) -- PPL.DOC; Greektown - Lehman to Basso Multi-Strategy Holding Fund Ltd. (td 6-3-08) -- PPL.DOC; Greektown- Wachovia to DBNY- AA- 1-16-09 FX.pdf; Greektown- Wachovia to DBNY- PSA- 1-16-09 FX v3.pdf; psa_bsis_iii.pdf; psa_bsis_ii.pdf; 10.28.08 Greektown - 4 AAs.pdf; psa_magnetite.pdf; psa_bsis_iv.pdf; Greektown- DBNY to Lehman AA v3.DOC; Greektown- DBNY to Lehman PSA v4.doc |

Frank,

In connection with the captioned trade, attached please find revised draft documents along with a new set of upstreams.  Kindly review and let us know if you have any comments at your earliest convenience.

Sincerely,

Russell A. Chiappetta
Andrews Kurth LLP
450 Lexington Avenue - 15th Floor
New York, NY 10017
T: 212-850-2884
F: 212-850-2999
rchiappetta@akllp.com



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

---

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | June 3, 2008 |
| Agreement Date: | April __, 2009 |
| Seller: | Lehman Commercial Paper Inc. |
| Buyer: | Basso Multi-Strategy Holding Fund Ltd. |
| Credit Agreement: | CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents. |
| Borrowers: | GREEKTOWN HOLDINGS, L.L.C. GREEKTOWN HOLDINGS II, INC. |
| Purchase Amount(s): | REDACTED |
| Tranche(s): | Term B Loan |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest ☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment ☒ Secondary Assignment. |
| Immediate Prior Seller | Deutsche Bank AG New York Branch |
| Borrowers in Bankruptcy: | Yes ☒       No ☐ |
| Delivery of Credit Documents: | Yes ☐       No ☒ |
| Netting Arrangements: | Yes ☐       No ☒ |
| Flip Representations: | Yes ☐       No ☒ |

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006. All rights reserved.

| TRANSACTION SUMMARY | | |
|---|---|---|
| Step-Up Provisions: | Yes ☐ | No ☒ |
| | Shift Date: | N/A |
| Transfer Notice: | Yes ☐ | No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
    ☒ means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
    ☒ means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
    ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
    ☒ not applicable.

"Commitments" select one:
    ☒ none.

"Covered Prior Seller" select one:
    ☒ not applicable.

"Filing Date" select one:
    ☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $1,840,000.00.

"Netting Letter" select one:
    ☒ not applicable.

"Original Buyer" select one:
    ☒ not applicable.

"Penultimate Buyer" select one:
    ☒ not applicable.

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
    ☐ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:
    ☒ not applicable.

B.     **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
    ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
    ☒ None.
    ☐ The following: _____.

Section 4.1(v) (Proof of Claim).
    ☒ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
        ☒ the Agent on behalf of the Lenders.
        ☐ Seller or a Prior Seller.
    ☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
    ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.**    **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (Buyer Status).

    ☐ Buyer is not a Lender.
    ☒ Buyer is a Lender.
    ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
    ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.**    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.**    **SECTION 7 (COSTS AND EXPENSES)**

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to

    ☐ one-half thereof.

    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**    **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref:  Greektown Holdings, LLC

Buyer's Wire Instructions:

ABA#: 021000021
Bank Name: JPMorgan Chase Bank
City: New York
A/C #: 066642434
Entity Name: Goldman Sachs International
F/C Name: Basso Multi-Strategy Holding Fund Ltd
A/C: 023427883

**G.**    **SECTION 9 (NOTICES)**

Seller's Address for Notices and Delivery:

**Operations Contact:**
(For Notices on Borrowings, Paydowns, Interest & Fees)

Tina Chen
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone:  646-333-8873
E-Mail Address:  tina.chen@lehman.com

**Credit Contact:**
(For Credit, Legal & Financial Documents):

Randall Braunfeld
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone:  212-526-1456
E-Mail Address:  randall.braunfield@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

## H.    **SECTION 26 (FURTHER PROVISIONS)**

1.  Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2.  Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

3.   Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**

By:_____
    Name:
    Title:

**BUYER**

**BASSO MULTI-STRATEGY HOLDING FUND LTD.**

By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

To the extent of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of April ___, 2009, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption, each dated as of January 16, 2009, between Wachovia Bank, National Association and Deutsche Bank AG New York Branch, as assignee. [distressed]

To the extent of $552,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series II, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

To the extent of $552,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series III PLC, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series III, PLC, as assignee, relating to par/near par loans.

To the extent of $460,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series IV, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series IV, as assignee, relating to par/near par loans.

To the extent of $276,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between Magnetite V CLO, Limited, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and Magnetite V CLO, Limited, as assignee, relating to par/near par loans.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

2.      List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

      N/A

3.      Description of Proof of Claim (if any).

      The proof of claim filed by Merrill Lynch Capital Corporation, on November 28, 2008, as Administrative Agent for the Lenders and any of their respective successors and assignors (collectively, the "Lenders") on behalf of itself and on behalf of the Lenders, in an amount in excess of $314,500,000.00.

4.      Description of Adequate Protection Order (if any).

      Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.      List any exceptions to Section 4.1(w) (Notice of Impairment).

      None.

6.      The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | June 3, 2008 |
| Agreement Date: | April __, 2009 |
| Seller: | Lehman Commercial Paper Inc. |
| Buyer: | Basso Fund Ltd. |
| Credit Agreement: | CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents. |
| Borrowers: | GREEKTOWN HOLDINGS, L.L.C. GREEKTOWN HOLDINGS II, INC. |
| Purchase Amount(s): | REDACTED |
| Tranche(s): | Term B Loan |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest ☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment ☒ Secondary Assignment. |
| Immediate Prior Seller | Deutsche Bank AG New York Branch |
| Borrowers in Bankruptcy: | Yes ☒    No ☐ |
| Delivery of Credit Documents: | Yes ☐    No ☒ |
| Netting Arrangements: | Yes ☐    No ☒ |
| Flip Representations: | Yes ☐    No ☒ |

LSTA EFFECTIVE DECEMBER 2006   Copyright © LSTA 2006. All rights reserved.

| **TRANSACTION SUMMARY** | | | |
|---|---|---|---|
| Step-Up Provisions: | Yes ☐ | No ☒ | |
| | Shift Date: | N/A | |
| Transfer Notice: | Yes ☐ | No ☒ | |

## A.   DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.   Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.   If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
   ☒ means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
   ☒ means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
   ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
   ☒ not applicable.

"Commitments" select one:
   ☒ none.

"Covered Prior Seller" select one:
   ☒ not applicable.

"Filing Date" select one:
   ☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $120,000.00.

"Netting Letter" select one:
   ☒ not applicable.

"Original Buyer" select one:
   ☒ not applicable.

"Penultimate Buyer" select one:

    ☒ not applicable.

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:

    ☒ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:

    ☒ not applicable.

**B.**    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.

    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

    "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.

☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).

☒ None.

☐ The following: _____.

Section 4.1(v) (Proof of Claim).

☒ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by

    ☒ the Agent on behalf of the Lenders.

    ☐ Seller or a Prior Seller.

☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

## C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**C.1**    Section 5.1(n) (Buyer Status).

☐ Buyer is not a Lender.

☒ Buyer is a Lender.

☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.    SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.    SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to

    ☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**     **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**     Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)     If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)     If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**     Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref: Greektown Holdings, LLC

Buyer's Wire Instructions:

Bank Name: JPMorgan Chase Bank
City: New York
ABA: 021-000-021
A/C#: 066642434
Entity Name: Goldman Sachs International
F/F/C: Basso Fund Ltd.
A/C: 023427917

**G.**     **SECTION 9 (NOTICES)**

Seller's Address for Notices and Delivery:

**Operations Contact:**
(For Notices on Borrowings, Paydowns, Interest & Fees)

Tina Chen
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone: 646-333-8873
E-Mail Address: tina.chen@lehman.com

**Credit Contact:**
(For Credit, Legal & Financial Documents):

Randall Braunfeld
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone:  212-526-1456
E-Mail Address:  randall.braunfield@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

## H.    SECTION 26 (FURTHER PROVISIONS)

1. Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2. Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

3.  Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

4.  Seller and Buyer agree that Section 5.1(j) of the Standard Terms shall be deleted in its entirety and replaced with the following new provision:

Either (i) no interest in the Transferred Rights is being acquired by or on behalf of an Entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the funds being used by Buyer to purchase the Transferred Rights are from a fund managed by Basso Capital Management, L.P., a Qualified Professional Asset Manager (the "Manager"), within the meaning of Part V of PTE 84-14, the Manager made the investment decision on behalf of Buyer to purchase the Transferred Rights from the Seller as contemplated by this Agreement, and the purchase of the Transferred Rights hereunder satisfies the requirements of sub-sections (b) through (g) of Part I of PTE 84-14, and the individual making the investment decision to transfer the Transferred Rights on behalf of the Buyer has no actual knowledge (after reasonable inquiry and investigation) that the requirements of subsection (a) of Part I of PTE 84-14 are not satisfied.  Buyer and Manager each represent and warrant to Seller that Seller has not acted and will not act as a fiduciary, as such term is defined in Section 3(21) of ERISA, with respect to the purchase and holding of the Transferred Rights by the Buyer and the exercise of Seller's or Buyer's rights related thereto.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**


By:_____
     Name:
     Title:



**BUYER**

**BASSO FUND LTD.**


By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.      If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

To the extent of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of April ___, 2009, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption, each dated as of January 16, 2009, between Wachovia Bank, National Association and Deutsche Bank AG New York Branch, as assignee. [distressed]

To the extent of $36,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series II, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

To the extent of $36,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series III PLC, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series III, PLC, as assignee, relating to par/near par loans.

To the extent of $30,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series IV, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series IV, as assignee, relating to par/near par loans.

To the extent of $18,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between Magnetite V CLO, Limited, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and Magnetite V CLO, Limited, as assignee, relating to par/near par loans.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

2.      List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

        N/A

3.      Description of Proof of Claim (if any).

        The proof of claim filed by Merrill Lynch Capital Corporation, on November 28, 2008, as Administrative Agent for the Lenders and any of their respective successors and assignors (collectively, the "Lenders") on behalf of itself and on behalf of the Lenders, in an amount in excess of $314,500,000.00.

4.      Description of Adequate Protection Order (if any).

        Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.      List any exceptions to Section 4.1(w) (Notice of Impairment).

        None.

6.      The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**
_____

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms.  The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below.  The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction.  With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| **Trade Date:** | **June 3, 2008** |
| **Agreement Date:** | **April ___, 2009** |
| **Seller:** | **Lehman Commercial Paper Inc.** |
| **Buyer:** | **Basso Credit Opportunities Holding Fund Ltd.** |
| **Credit Agreement:** | **CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents.** |
| **Borrowers:** | **GREEKTOWN HOLDINGS, L.L.C.** <br> **GREEKTOWN HOLDINGS II, INC.** |
| **Purchase Amount(s):** | **REDACTED** |
| **Tranche(s):** | **Term B Loan** |
| **CUSIP Number(s), if available:** | **N/A** |
| **Pre-Settlement Date Accruals Treatment:** | ☒ **Settled Without Accrued Interest** <br> ☐ **Trades Flat** |
| **Type of Assignment:** | ☐ **Original Assignment** <br> ☒ **Secondary Assignment.** |
| **Immediate Prior Seller** | **Deutsche Bank AG New York Branch** |
| **Borrowers in Bankruptcy:** | **Yes** ☒    **No** ☐ |
| **Delivery of Credit Documents:** | **Yes** ☐    **No** ☒ |
| **Netting Arrangements:** | **Yes** ☐    **No** ☒ |
| **Flip Representations:** | **Yes** ☐    **No** ☒ |

**LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.**

| TRANSACTION SUMMARY | | | |
|---|---|---|---|
| Step-Up Provisions: | Yes ☐ | No ☒ | |
| | Shift Date: | N/A | |
| Transfer Notice: | Yes ☐ | No ☒ | |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.    Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.    If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
    ☒ means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
    ☒ means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
    ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
    ☒ not applicable.

"Commitments" select one:
    ☒ none.

"Covered Prior Seller" select one:
    ☒ not applicable.

"Filing Date" select one:
    ☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $40,000.00.

"Netting Letter" select one:
    ☒ not applicable.

"Original Buyer" select one:
    ☒ not applicable.

"<u>Penultimate Buyer</u>" select one:
    ☒ not applicable.

"<u>Required Consents</u>" means the consent of the Agent.

"<u>Seller Purchase Price</u>" select one:
    ☒ not applicable.

"<u>Transfer Fee</u>" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"<u>Unfunded Commitments</u>" select one:
    ☒ not applicable.

B.    <u>**SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**</u>

The following specified terms shall apply to the sections referenced in this Section B:

| | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (<u>Title</u>) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (<u>Proceedings</u>) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (<u>Principal Amount</u>) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (<u>Future Funding</u>) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (<u>Acts and Omissions</u>) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (<u>Performance of Obligations</u>) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (<u>Setoff</u>) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (<u>Consents and Waivers</u>) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (<u>Other Documents</u>) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (<u>Proof of Claim</u>) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (<u>Purchase Price</u>); <u>Netting Arrangements</u>.
If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

"(k) [intentionally omitted]."

Section 4.1(r) (<u>Predecessor Transfer Agreements</u>).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (<u>Other Documents</u>).
☒ None.
☐ The following:  _____.

Section 4.1(v) (<u>Proof of Claim</u>).
☒ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
    ☒ the Agent on behalf of the Lenders.
    ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

## C.    <u>SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)</u>

**C.1**    Section 5.1(n) (<u>Buyer Status</u>).

☐ Buyer is not a Lender.
☒ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.    <u>SECTION 6 (INDEMNIFICATION)</u>

Section 6.1 (<u>Seller's Indemnities</u>); <u>Step-Up Indemnities</u>.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.    <u>SECTION 7 (COSTS AND EXPENSES)</u>

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**  **<u>SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)</u>**

**F.1**  Section 8.2 (<u>Distributions</u>); <u>Step-Up Distributions Covenant</u>.

   (i)  If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

   (ii)  If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**  Section 8.4 (<u>Wire Instructions</u>).

<u>Seller's Wire Instructions:</u>

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref: Greektown Holdings, LLC

<u>Buyer's Wire Instructions:</u>

ABA: 021-000-018
Bank Name: Bank of New York
A/C#: 8900327634
A/C Name: Deutsche Bank Securities Inc.
F/F/C: Basso Credit Opportunities Fund
Acct: 106-00946

**G.**  **<u>SECTION 9 (NOTICES)</u>**

<u>Seller's Address for Notices and Delivery:</u>

| **Operations Contact:** | **(For Notices on Borrowings, Paydowns, Interest & Fees)** |
|---|---|
| Name: | Tina Chen |
| Company: | Lehman Commercial Paper Inc. |
| Address: | 1271 6th Ave 35th Floor |
| | New York, NY 10019 |
| Telephone: | 646-333-8873 |
| E-Mail Address: | tina.chen@lehman.com |
| | |
| **Credit Contact:** | **(For Credit, Legal & Financial Documents)** |
| Name: | Randall Braunfeld |
| Address: | 1271 6th Ave 35th Floor |

E-Mail Address:     New York, NY 10019
randall.braunfield@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

**H.**    **SECTION 26 (FURTHER PROVISIONS)**

1.  Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2.  Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

3.  Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**


By:_____
　　　Name:
　　　Title:


**BUYER**

**BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD.**


By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1. If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

To the extent of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of April ___, 2009, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption, each dated as of January 16, 2009, between Wachovia Bank, National Association and Deutsche Bank AG New York Branch, as assignee. [distressed]

To the extent of $12,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series II, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

To the extent of $12,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series III PLC, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series III, PLC, as assignee, relating to par/near par loans.

To the extent of $10,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series IV, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series IV, as assignee, relating to par/near par loans.

To the extent of $6,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between Magnetite V CLO, Limited, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and Magnetite V CLO, Limited, as assignee, relating to par/near par loans.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

2.   List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

   N/A

3.   Description of Proof of Claim (if any).

   The proof of claim filed by Merrill Lynch Capital Corporation, on November 28, 2008, as Administrative Agent for the Lenders and any of their respective successors and assignors (collectively, the "Lenders") on behalf of itself and on behalf of the Lenders, in an amount in excess of $314,500,000.00.

4.   Description of Adequate Protection Order (if any).

   Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.   List any exceptions to Section 4.1(w) (Notice of Impairment).

   None.

6.   The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| | TRANSACTION SUMMARY |
|---|---|
| **Trade Date:** | **June 3, 2008** |
| **Agreement Date:** | **April ___, 2009** |
| **Seller:** | **Lehman Commercial Paper Inc.** |
| **Buyer:** | **Basso Credit Opportunities Holding Fund Ltd.** |
| **Credit Agreement:** | **CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents.** |
| **Borrowers:** | **GREEKTOWN HOLDINGS, L.L.C.** <br> **GREEKTOWN HOLDINGS II, INC.** |
| **Purchase Amount(s):** | **REDACTED** |
| **Tranche(s):** | **Term B Loan** |
| **CUSIP Number(s), if available:** | **N/A** |
| **Pre-Settlement Date Accruals Treatment:** | ☒ **Settled Without Accrued Interest** <br> ☐ **Trades Flat** |
| **Type of Assignment:** | ☐ **Original Assignment** <br> ☒ **Secondary Assignment.** |
| **Immediate Prior Seller** | **Deutsche Bank AG New York Branch** |
| **Borrowers in Bankruptcy:** | **Yes** ☒      **No** ☐ |
| **Delivery of Credit Documents:** | **Yes** ☐      **No** ☒ |
| **Netting Arrangements:** | **Yes** ☐      **No** ☒ |
| **Flip Representations:** | **Yes** ☐      **No** ☒ |

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006. All rights reserved.

| TRANSACTION SUMMARY | | | |
|---|---|---|---|
| Step-Up Provisions: | Yes ☐ | No ☒ | |
| | Shift Date: | N/A | |
| Transfer Notice: | Yes ☐ | No ☒ | |

## A.   DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
　　☒ means the cases under the Bankruptcy Code pending before the Bankruptcy Court in which Borrowers are debtors, In re Greektown Holdings, LLC, No. 08-53104 and In re Greektown Holdings II, Inc., No. 08-53108.

"Bankruptcy Court" select one:
　　☒ means the United States Bankruptcy Court for the Eastern District of Michigan.

"Bar Date" select one:
　　☒ means November 30, 2008.

"Buyer Purchase Price" select one:
　　☒ not applicable.

"Commitments" select one:
　　☒ none.

"Covered Prior Seller" select one:
　　☒ not applicable.

"Filing Date" select one:
　　☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $40,000.00.

"Netting Letter" select one:
　　☒ not applicable.

"Original Buyer" select one:
　　☒ not applicable.

"<u>Penultimate Buyer</u>" select one:
☒ not applicable.

"<u>Required Consents</u>" means the consent of the Agent.

"<u>Seller Purchase Price</u>" select one:
☒ not applicable.

"<u>Transfer Fee</u>" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"<u>Unfunded Commitments</u>" select one:
☒ not applicable.

**B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (<u>Title</u>) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (<u>Proceedings</u>) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (<u>Principal Amount</u>) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (<u>Future Funding</u>) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (<u>Acts and Omissions</u>) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (<u>Performance of Obligations</u>) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (<u>Setoff</u>) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (<u>Consents and Waivers</u>) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (<u>Other Documents</u>) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (<u>Proof of Claim</u>) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
        If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
        ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
        ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
        ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
        ☒ None.
        ☐ The following:  _____.

Section 4.1(v) (Proof of Claim).
        ☒ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
                ☒ the Agent on behalf of the Lenders.
                ☐ Seller or a Prior Seller.
        ☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
        ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (Buyer Status).

        ☐ Buyer is not a Lender.
        ☒ Buyer is a Lender.
        ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
        ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.    SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

        (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

        (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.    SECTION 7 (COSTS AND EXPENSES)**

        ☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
                ☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**    **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref: Greektown Holdings, LLC

Buyer's Wire Instructions:

ABA: 021-000-018
Bank Name: Bank of New York
A/C#: 8900327634
A/C Name: Deutsche Bank Securities Inc.
F/F/C: Basso Credit Opportunities Fund
Acct: 106-00946

**G.**    **SECTION 9 (NOTICES)**

Seller's Address for Notices and Delivery:

| **Operations Contact:** | **(For Notices on Borrowings, Paydowns, Interest & Fees)** |
|---|---|
| Name: | Tina Chen |
| Company: | Lehman Commercial Paper Inc. |
| Address: | 1271 6th Ave 35th Floor |
| | New York, NY 10019 |
| Telephone: | 646-333-8873 |
| E-Mail Address: | tina.chen@lehman.com |

| **Credit Contact:** | **(For Credit, Legal & Financial Documents)** |
|---|---|
| Name: | Randall Braunfeld |
| Address: | 1271 6th Ave 35th Floor |

New York, NY 10019
E-Mail Address:      randall.braunfield@lehman.com

Buyer's Address for Notices and Delivery:

*Primary Contact (for all loan activity, financials, etc):*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

**H.      SECTION 26 (FURTHER PROVISIONS)**

1.  Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "provided, however, that Seller makes no representation or warranty as to whether the consent of MGCB is required for this Transaction other than as set forth in Section 4.1(x) below".

2.  Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of MGCB is required for the Transaction."

3.  Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of MGCB is required for the Transaction."

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN COMMERCIAL PAPER INC.**

By:_____
    Name:
    Title:

**BUYER**

**BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD.**

By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

To the extent of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of April ___, 2009, by and between Deutsche Bank AG New York Branch, as seller, and, Lehman Commercial Paper Inc., as buyer, related to distressed loans.

Purchase and Sale Agreement and the related Assignment and Assumption, each dated as of January 16, 2009, between Wachovia Bank, National Association and Deutsche Bank AG New York Branch, as assignee. [distressed]

To the extent of $12,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series II, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

To the extent of $12,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series III PLC, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series III, PLC, as assignee, relating to par/near par loans.

To the extent of $10,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series IV, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series IV, as assignee, relating to par/near par loans.

To the extent of $6,000.00 of the Loans:

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between Magnetite V CLO, Limited, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and Magnetite V CLO, Limited, as assignee, relating to par/near par loans.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

N/A

3.    Description of Proof of Claim (if any).

The proof of claim filed by Merrill Lynch Capital Corporation, on November 28, 2008, as Administrative Agent for the Lenders and any of their respective successors and assignors (collectively, the "Lenders") on behalf of itself and on behalf of the Lenders, in an amount in excess of $314,500,000.00.

4.    Description of Adequate Protection Order (if any).

Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, signed on June 26, 2008.

5.    List any exceptions to Section 4.1(w) (Notice of Impairment).

None.

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. <u>Assignment and Assumption</u>.

a.        Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**"). Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.        In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.        Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.        Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this <u>clause (d)</u> is expressly made for the benefit of the Borrowers, the

Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.      Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by <u>clause (b)</u> of this <u>Section 1</u> occurs on a date other than the Settlement Date.

SECTION 2.   <u>Certain Representations, Warranties and Agreements</u>.

a.      Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.      Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.      Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.      Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers.  Assignor shall have no duty or

responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

      e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3. <u>Miscellaneous</u>.

      a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

      b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

      c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with <u>clause (a)</u> of <u>Section 1</u> herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

      d.      In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

      e.      THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

      f.      This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

NYC:182271.1

g.      This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.      This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

## SCHEDULE OF TERMS

<u>**Item #**</u>

1. <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2. <u>Name and Date of Credit Agreement</u>: Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3. <u>Amounts</u>:

Term B Loans

   a. Aggregate Commitments of all Lenders:

   b. Aggregate Loans of all Lenders:

   c. Amount of Assigned Share of Commitments:

   d. Assigned Share/Pro Rata Share of Commitments:

   e. Amount of Assigned Share of Loans:

   **REDACTED**

   f. Assigned Share/Pro Rata Share of Loans:

4. <u>Settlement Date</u>: April __, 2009

5. <u>Payment Instructions</u>:

   ASSIGNOR:                                   :

   CITIBANK NYC
   ABA # 021000089
   A/C # 30434133
   A/C LCPI Bank Loans
   Ref:  Greektown Holdings, LLC

   ASSIGNEE:

   ABA#: 021000021
   Bank Name: JPMorgan Chase Bank
   City: New York

A/C #: 066642434
Entity Name: Goldman Sachs International
F/C Name: Basso Multi-Strategy Holding Fund Ltd
A/C: 023427883

6.    Notice Addresses:

ASSIGNOR:

**Operations Contact:**
(For Notices on Borrowings, Paydowns, Interest & Fees)

Tina Chen
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone: 646-333-8873
E-Mail Address: tina.chen@lehman.com

**Credit Contact:**
(For Credit, Legal & Financial Documents):

Randall Braunfeld
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone: 212-526-1456
E-Mail Address: randall.braunfeld@lehman.com

ASSIGNEE:

*Primary Contact (for all loan activity, financials, etc):*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109

(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

7.    <u>Signatures</u>:

**LEHMAN COMMERCIAL PAPER INC.**

as Assignor


By:_____
Title:_____


**BASSO MULTI-STRATEGY HOLDING FUND LTD.**

as Assignee



By:_____
Title:_____

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent

By:  _____
       Name:
       Title:

# LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. <u>Assignment and Assumption</u>.

a. Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**"). Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b. In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c. Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d. Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this <u>clause (d)</u> is expressly made for the benefit of the Borrowers, the

NYC:182268.1

Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.        Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided*, *however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by <u>clause (b)</u> of this <u>Section 1</u> occurs on a date other than the Settlement Date.

SECTION 2.    <u>Certain Representations, Warranties and Agreements</u>.

a.        Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.        Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.        Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.        Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers. Assignor shall have no duty or

responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

  e.  Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

  SECTION 3. Miscellaneous.

  a.  Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

  b.  Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

  c.  Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

  d.  In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

  e.  THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

  f.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

     g.     This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

     h.     This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

5

## SCHEDULE OF TERMS

<u>**Item #**</u>

1.  <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.  <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.  <u>Amounts</u>:

Term B Loans

    a.    Aggregate Commitments of all Lenders:

    b.    Aggregate Loans of all Lenders:

    c.    Amount of Assigned Share of Commitments:

    d.    Assigned Share/Pro Rata Share of Commitments:        **REDACTED**

    e.    Amount of Assigned Share of Loans:

    f.    Assigned Share/Pro Rata Share of Loans:

4.  <u>Settlement Date</u>:  April ___, 2009

5.  <u>Payment Instructions</u>:

    ASSIGNOR:

    CITIBANK NYC
    ABA # 021000089
    A/C # 30434133
    A/C LCPI Bank Loans
    Ref:  Greektown Holdings, LLC

    ASSIGNEE:

    Bank Name: JPMorgan Chase Bank
    City: New York
    ABA: 021-000-021

A/C#: 066642434
Entity Name: Goldman Sachs International
F/F/C: Basso Fund Ltd.
A/C: 023427917

6.    Notice Addresses:

ASSIGNOR:

**Operations Contact:**
(For Notices on Borrowings, Paydowns, Interest & Fees)

Tina Chen
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone: 646-333-8873
E-Mail Address: tina.chen@lehman.com

**Credit Contact:**
(For Credit, Legal & Financial Documents):

Randall Braunfeld
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone: 212-526-1456
E-Mail Address: randall.braunfield@lehman.com

ASSIGNEE:

*Primary Contact (for all loan activity, financials, etc):*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902

(P) 203-352-6109
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

7.    <u>Signatures</u>:

**LEHMAN COMMERCIAL PAPER INC.**

as Assignor


By:_____
Title:_____


**BASSO FUND LTD.**

as Assignee


By:_____
Title:_____

Accepted in accordance with Section
10.1l.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent


By: _____
      Name:
      Title:

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1.  <u>Assignment and Assumption</u>.

a.      Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**"). Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.      In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.      Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this <u>clause (d)</u> is expressly made for the benefit of the Borrowers, the

Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.    Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however,* that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by <u>clause (b)</u> of this <u>Section 1</u> occurs on a date other than the Settlement Date.

SECTION 2.  <u>Certain Representations, Warranties and Agreements</u>.

a.    Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.    Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.    Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.    Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers.  Assignor shall have no duty or

responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  <u>Miscellaneous</u>.

a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed.  For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with <u>clause (a)</u> of <u>Section 1</u> herein.  In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

d.      In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

e.      THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

f.      This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

NYC:182270.1                                        3

g.      This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.      This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

## SCHEDULE OF TERMS

**Item #**

1.  <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.  <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.  <u>Amounts</u>:

Term B Loans

    a.   Aggregate Commitments of all Lenders:

    b.   Aggregate Loans of all Lenders:

    c.   Amount of Assigned Share of Commitments:

    d.   Assigned Share/Pro Rata Share of Commitments:

**REDACTED**

    e.   Amount of Assigned Share of Loans:

    f.   Assigned Share/Pro Rata Share of Loans:

4.  <u>Settlement Date</u>:  April __, 2009

5.  <u>Payment Instructions</u>:

ASSIGNOR:                                                    :

CITIBANK NYC
ABA # 021000089
A/C # 30434133
A/C LCPI Bank Loans
Ref:  Greektown Holdings, LLC

ASSIGNEE:

ABA: 021-000-018
Bank Name: Bank of New York
A/C#: 8900327634

A/C Name: Deutsche Bank Securities Inc.
F/F/C: Basso Credit Opportunities Fund
Acct: 106-00946

6.    Notice Addresses:

ASSIGNOR:

**Operations Contact:**
(For Notices on Borrowings, Paydowns, Interest & Fees)

Tina Chen
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone: 646-333-8873
E-Mail Address:  tina.chen@lehman.com

**Credit Contact:**
(For Credit, Legal & Financial Documents):

Randall Braunfeld
Lehman Commercial Paper Inc.
1271 6th Ave 35th Floor
New York, NY 10020
Telephone: 212-526-1456
E-Mail Address:  randall.braunfield@lehman.com

ASSIGNEE:

*Primary Contact (for all loan activity, financials, etc):*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6141
(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Lisa Murray

*Secondary Contact (for all loan activity, financials, etc)*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6109

(F) 203-352-6187
Email: bankdebt@bassocap.com
Attn: Cristin Caufield

*Credit Contact:*

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902
(P) 203-352-6129
(F) 203-352-6193
Email: dyee@bassocap.com
Attn: Dixon Yee

7.    Signatures:

**LEHMAN COMMERCIAL PAPER INC.**

as Assignor


By:_____
Title:_____


**BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD.**

as Assignee


By:_____
Title:_____

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent


By: _____
     Name:
     Title:

**LEHMAN COMMERCIAL PAPER INC.**
1271 6th Ave 35th Floor
New York, NY 10020

April __, 2009

**VIA ELECTRONIC MAIL**

Basso Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902

>  *Re*:    *Greektown Holdings, L.L.C.*

Ladies and Gentlemen:

Reference is made to the Purchase and Sale Agreement, dated as of the date hereof (the "Agreement") between LEHMAN COMMERCIAL PAPER INC. (the "Seller") and BASSO FUND LTD. (the "Buyer"), pursuant to which the Buyer is purchasing the Transferred Rights from the Seller.  This letter constitutes the Purchase Price Letter referred to in the Agreement. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

Buyer shall pay to Seller the purchase price (the "Purchase Price") by wire transfer of immediately available funds to Seller's account pursuant to the wire instructions set forth in the Agreement.

The Purchase Price is the amount set forth on Schedule A hereto.

[remainder of page is intentionally left blank.]

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.


By: _____
      Name:
      Title:




Acknowledged and Agreed:

BASSO FUND LTD.



By: _____
      Name:
      Title:

# SCHEDULE A

## [SEE ATTACHED SPREADSHEET]

NYC:182282.1

**LEHMAN COMMERCIAL PAPER INC.**
1271 6th Ave 35th Floor
New York, NY 10020

April __, 2009

**VIA ELECTRONIC MAIL**

Basso Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902

       *Re*:     *Greektown Holdings, L.L.C.*

Ladies and Gentlemen:

      Reference is made to the Purchase and Sale Agreement, dated as of the date hereof (the "Agreement") between LEHMAN COMMERCIAL PAPER INC. (the "Seller") and BASSO FUND LTD. (the "Buyer"), pursuant to which the Buyer is purchasing the Transferred Rights from the Seller. This letter constitutes the Purchase Price Letter referred to in the Agreement. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

      Buyer shall pay to Seller the purchase price (the "Purchase Price") by wire transfer of immediately available funds to Seller's account pursuant to the wire instructions set forth in the Agreement.

      The Purchase Price is the amount set forth on Schedule A hereto.

      [remainder of page is intentionally left blank.]

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____
     Name:
     Title:

Acknowledged and Agreed:

BASSO FUND LTD.

By: _____
     Name:
     Title:

# SCHEDULE A

## [SEE ATTACHED SPREADSHEET]

**LEHMAN COMMERCIAL PAPER INC.**
1271 6th Ave 35th Floor
New York, NY 10020

April __, 2009

**VIA ELECTRONIC MAIL**

Basso Credit Opportunities Holding Fund Ltd.
c/o Basso Capital Management
1266  East Main Street, 4th Floor
Stamford, CT 06902

   *Re*:  *Greektown Holdings, L.L.C.*

Ladies and Gentlemen:

  Reference is made to the Purchase and Sale Agreement, dated as of the date hereof (the "Agreement") between LEHMAN COMMERCIAL PAPER INC. (the "Seller") and BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD. (the "Buyer"), pursuant to which the Buyer is purchasing the Transferred Rights from the Seller.  This letter constitutes the Purchase Price Letter referred to in the Agreement.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

  Buyer shall pay to Seller the purchase price (the "Purchase Price") by wire transfer of immediately available funds to Seller's account pursuant to the wire instructions set forth in the Agreement.

  The Purchase Price is the amount set forth on Schedule A hereto.

    [remainder of page is intentionally left blank.]

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____
    Name:
    Title:

Acknowledged and Agreed:

BASSO CREDIT OPPORTUNITIES HOLDING FUND LTD.

By: _____
    Name:
    Title:

## SCHEDULE A

## [SEE ATTACHED SPREADSHEET]

**LEHMAN COMMERCIAL PAPER INC.**
1271 6th Ave 35th Floor
New York, NY 10020


April __, 2009


**VIA ELECTRONIC MAIL**

Basso Multi-Strategy Holding Fund Ltd.
c/o Basso Capital Management
1266 East Main Street, 4th Floor
Stamford, CT 06902

     *Re*:    *Greektown Holdings, L.L.C.*

Ladies and Gentlemen:

Reference is made to the Purchase and Sale Agreement, dated as of the date hereof (the "Agreement") between LEHMAN COMMERCIAL PAPER INC. (the "Seller") and BASSO MULTI-STRATEGY HOLDING FUND LTD. (the "Buyer"), pursuant to which the Buyer is purchasing the Transferred Rights from the Seller. This letter constitutes the Purchase Price Letter referred to in the Agreement. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

Buyer shall pay to Seller the purchase price (the "Purchase Price") by wire transfer of immediately available funds to Seller's account pursuant to the wire instructions set forth in the Agreement.

The Purchase Price is the amount set forth on Schedule A hereto.

[remainder of page is intentionally left blank.]

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____
     Name:
     Title:

Acknowledged and Agreed:

BASSO MULTI-STRATEGY HOLDING FUND LTD.

By: _____
     Name:
     Title:

NYC:182281.1

## SCHEDULE A

## [SEE ATTACHED SPREADSHEET]

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1.  Assignment and Assumption.

a.      Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**").  Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.      In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.      Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date.  Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the

Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.        Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however,* that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.   Certain Representations, Warranties and Agreements.

a.        Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.        Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.        Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.        Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers. Assignor shall have no duty or

responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.    Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3. <u>Miscellaneous</u>.

a.    Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.    Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.    Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with <u>clause (a)</u> of <u>Section 1</u> herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

d.    In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

e.    THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

f.    This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

3

g.      This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.      This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

## SCHEDULE OF TERMS

**Item #**

1.    <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.    <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the **"Credit Agreement"**), among Greektown Holdings, L.L.C., a Michigan limited liability company ( **"Greektown Holdings"**), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the **"Borrowers"** and each, a **"Borrower"**), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a **"Lender"**; and collectively, the **"Lenders"**), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.    <u>Amounts</u>:

Term B Loans

      a.    Aggregate Commitments of all Lenders:

      b.    Aggregate Loans of all Lenders:

      c.    Amount of Assigned Share of Commitments:

      d.    Assigned Share/Pro Rata Share of Commitments:        **REDACTED**

      e.    Amount of Assigned Share of Loans:

      f.    Assigned Share/Pro Rata Share of Loans:

4.    <u>Settlement Date</u>:  January 16, 2009

5.    <u>Payment Instructions</u>:
ASSIGNOR:                                                    :

Wachovia Bank, National Association
ABA No.: 053-000-219
Acct.: Capital Markets
Acct. No.: 0465936-0002448
Attn.: Trade Services
Reference:  Greektown Holdings, LLC

ASSIGNEE:

Deutsche Bank Trust Company Americas
ABA# 021-001-033
Commercial Loan Division
Acct# 602 00 119

1

Schedule of Terms (con't)

6.    Notice Addresses:

ASSIGNOR:                          ASSIGNEE:
Par Loan Trading Support           Simi Tanner
1525 West WT Harris Blvd.          c/o DB Services New Jersey, Inc.
Building 3A-2                      100 Plaza One Fl 8
Charlotte, NC 28262               Mail Stop JC Y03-0899
Phone: 704-590-2706               Jersey City, New Jersey 07311
Fax: 704-715-0029                 Phone number:   (201) 593-2221
                                   Fax # for Notices: (732) 380-3359
                                   Fax number:   (201) 593-2317/2316
                                   Email: simi.tanner@db.com

7.    Signatures:

**WACHOVIA BANK, NATIONAL**        **DEUTSCHE BANK AG NEW YORK**
**ASSOCIATION,**                   **BRANCH,**
as Assignor                        as Assignee

                                   By: DB Services New Jersey, Inc.

By: _____        By:_____
    Name: Authorized Signatory         Name:
    Title:                             Title:

                                   By:_____
                                       Name:
                                       Title:

17329565

Schedule of Terms (con't)

6.    Notice Addresses:
      ASSIGNOR:                              ASSIGNEE:
      Par Loan Trading Support               Simi Tanner
      1525 West WT Harris Blvd.              c/o DB Services New Jersey, Inc.
      Building 3A-2                          100 Plaza One Fl 8
      Charlotte, NC 28262                    Mail Stop JC Y03-0899
      Phone: 704-590-2706                    Jersey City, New Jersey 07311
      Fax: 704-715-0029                      Phone number:  (201) 593-2221
                                             **Fax # for Notices:** (732) 380-3359
                                             Fax number:  (201) 593-2317/2316
                                             Email: simi.tanner@db.com

7.    Signatures:

**WACHOVIA BANK, NATIONAL**          **DEUTSCHE BANK AG NEW YORK**
**ASSOCIATION,**                     **BRANCH,**
as Assignor                          as Assignee

                                     By: DB Services New Jersey, Inc.

By:_____               By:_____
   Name:                                Name:  Jonathan Shin
   Title:                               Title: Assistant Vice President


                                     By:_____
                                        Name:  Alice L. Wagner
                                        Title: Vice President


17329565

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent

By:

Name:
Title:      **CLAIRE MONGELARD
VICE PRESIDENT**

3



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | May 30, 2008 |
| Agreement Date: | January 16, 2009 |
| Seller: | WACHOVIA BANK, NATIONAL ASSOCIATION |
| Buyer: | DEUTSCHE BANK AG NEW YORK BRANCH |
| Credit Agreement: | CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents. |
| Borrowers: | GREEKTOWN HOLDINGS, L.L.C. GREEKTOWN HOLDINGS II, INC. |
| Purchase Amount(s): | REDACTED |
| Tranche(s): | Term B Loans |
| CUSIP Number(s), if available: | |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest ☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment ☒ Secondary Assignment |
| Immediate Prior Seller | BLACKROCK SENIOR INCOME SERIES II BLACKROCK SENIOR INCOME SERIES III PLC BLACKROCK SENIOR INCOME SERIES IV MAGNETITE V CLO, LIMITED |
| Borrowers in Bankruptcy: | Yes ☒    No ☐ |
| Delivery of Credit Documents: | Yes ☐    No ☒ |

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006. All rights reserved.
WCSR 3961716v6

| TRANSACTION SUMMARY | | | |
|---|---|---|---|
| Netting Arrangements: | Yes ☐ | No ☒ | |
| Flip Representations: | Yes ☐ | No ☒ | |
| Step-Up Provisions: | Yes ☐ | No ☒ | |
| | Shift Date: | | N/A |
| Transfer Notice: | Yes ☐ | No ☒ | |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
    ☒ means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re Greektown Holdings, L.L.C., et al., No. 08-53104 (Jointly Administered).

"Bankruptcy Court" select one:
    ☒ means the United States Bankruptcy Court for the Eastern District of Michigan (Southern Division) (and, if appropriate, the United States District Court for that District).

"Bar Date" select one:
    ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
    ☒ not applicable.

"Commitments" select one:
    ☒ none.

"Covered Prior Seller" select one:
    ☒ not applicable.

"Filing Date" select one:
    ☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $2,000,000.03.

"Netting Letter" select one:
    ☒ not applicable.

2

"Original Buyer" select one:
☒ not applicable.

"Penultimate Buyer" select one:
☒ not applicable.

"Required Consents" means the consent of the Agent.

 "Seller Purchase Price" select one:
☒ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:
☒ not applicable.

**B.     SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(j) (Setoff) | Section 4.1(j)(i) | Section 4.1(j)(i) | Section 4.1(j)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

3

Section 4.1(k) (Purchase Price); Netting Arrangements.
If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

"(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____.

Section 4.1(v) (Proof of Claim).
☒ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
    ☒ the Agent on behalf of the Lenders.
    ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

## C.  SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**C.1**   Section 5.1(n) (Buyer Status).  [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☒ Buyer is not a Lender.
☐ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**   If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.  SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)   If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)   If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.  SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to

4

    ☐ one-half thereof.

    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to

    ☐ one-half thereof.

    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**    **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

Wachovia Bank, National Association
City/State:  Charlotte, North Carolina
ABA No.: 053-000-219
Acct.: Par Loan Trading In/Out Wire Acct
Acct. No.: 01459670002448
Attn.: Trade Services
Reference:  Greektown Holdings, LLC


Buyer's Wire Instructions:

Deutsche Bank Trust Company Americas
ABA# 021-001-033
Commercial Loan Division
Acct# 602 00 119
Ref: Greektown Holdings, LLC/S.Tanner

G.    **SECTION 9 (NOTICES)**

Seller's Address for Notices and Delivery:

Wachovia Bank, National Association
1525 WT Harris Blvd.-NC0680
Charlotte, NC 28262

Buyer's Address for Notices and Delivery:

Administrative Contact:
Simi Tanner
c/o DB Services New Jersey, Inc.
100 Plaza One Fl 8
Mail Stop JC Y03-0899
Jersey City, New Jersey 07311
Phone number:  (201) 593-2221
Fax # for Notices: (732) 380-3359
Fax number:  (201) 593-2317/2316
Email: simi.tanner@db.com

Credit Contact:
Jay Hopkins
c/o DB Services New Jersey, Inc.
100 Plaza One Fl 8
Mail Stop JC Y00*0899
Jersey City, New Jersey 07311
Phone number:  (201) 593-2188
Fax number:    (201) 593-2315/2316
E-mail: jay.hopkins@db.com

6

**H.**    **SECTION 26 (FURTHER PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

1.    Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added:

> "provided, however, that Seller makes no representation or warranty as to whether the consent of the MGCB or whether any action under the Development Agreement or in respect of the MGCB Approval is required for this Transaction to be completed other than as set forth in Section 4.1(x)."

2.    Section 4.1 of the Standard Terms is hereby amended by adding the following new clause (x) at the end thereof:

> "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed."

3.    Section 5.1 of the Standard Terms is hereby amended by adding the following new clause (o) at the end thereof:

> "(o) Buyer (i) has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed and (ii) does not currently hold, or as a result of its purchase hereunder of the Loans will not own, ten percent (10%) or more of the Loans (as defined in the Credit Agreement), Letters of Credit Outstanding and Commitments (as defined in the Credit Agreement) in violation of Section 10.11.1 of the Credit Agreement."

7

IN WITNESS WHEREOF, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

WACHOVIA BANK, NATIONAL ASSOCIATION

By:_____

    Name:    Authorized Signatory
    Title:

BUYER

DEUTSCHE BANK AG NEW YORK BRANCH

BY: DB SERVICES NEW JERSEY, INC.

By:_____
Name:
Title:

By:_____
Name:
Title:

8

IN WITNESS WHEREOF, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

WACHOVIA BANK, NATIONAL ASSOCIATION

By:_____
    Name:
    Title:

BUYER

DEUTSCHE BANK AG NEW YORK BRANCH

BY: DB SERVICES NEW JERSEY, INC.

By:_____
Name:   Jonathan Shin
Title:   Assistant Vice President

By:_____
Name:   Alice L. Wagner
Title:   Vice President

8

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

To the extent of $600,000.03 of the Loans:

    Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series II, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

        Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

To the extent of $600,000.00 of the Loans:

    Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series III PLC, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

        Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series III, PLC, as assignee, relating to par/near par loans.

To the extent of $500,000.00 of the Loans:

    Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series IV, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

        Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series IV, as assignee, relating to par/near par loans.

To the extent of $300,000.00 of the Loans:

    Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between Magnetite V CLO, Limited, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

        Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and Magnetite V CLO, Limited, as assignee, relating to par/near par loans.

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    N/A

3.    Description of Proof of Claim (if any).

    The proof of claim filed by Merrill Lynch Capital Corporation, on November 28, 2008, as Administrative Agent for the Lenders and any of their respective successors and assignors (collectively, the "**Lenders**") on behalf of itself and on behalf of the Lenders, in an amount in excess of $314,500,000.00.

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

4.    Description of Adequate Protection Order (if any).

Final Order (I) Authorizing Post-Petition Secured and Super-Priority Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, dated June 26, 2008.

5.    List any exceptions to Section 4.1(w) (Notice of Impairment).

NONE

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| **Trade Date:** | With respect to          principal amount of Tranche B Term Loans, May 28, 2008 and, with respect to          principal amount of Tranche B Term Loans, May 29, 2008 |
| **Agreement Date:** | October 28, 2008 |
| **Seller:** | BLACKROCK SENIOR INCOME SERIES III PLC |
| **Buyer:** | WACHOVIA BANK, NATIONAL ASSOCIATION |
| **Credit Agreement:** | Credit Agreement, dated as of December 2, 2005, among Greektown Holdings, L.L.C. and Greektown Holdings II, Inc., as borrowers, the lenders party thereto, Keybank National Association, as issuer of letters of credit, National City Bank of the Midwest, as replacement issuer of letters of credit, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as sole lead arranger, sole book runner and syndication agent, Merrill Lynch Capital Corporation, as administrative agent and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association and Fifth Third Bank as co-documentation agents. |
| **Borrower:** | Greektown Holdings, L.L.C. and Greektown Holdings II, Inc. |
| **Purchase Amount(s):** | **REDACTED** |
| **Tranche(s):** | Term B Loans |
| **CUSIP Number(s), if available:** | Not applicable |
| **Pre-Settlement Date Accruals Treatment:** | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| **Type of Assignment:** | ☐ Original Assignment<br>☒ Secondary Assignment |
| **Immediate Prior Seller (if any):** | Merrill Lynch Capital Corporation |
| **Borrower in Bankruptcy:** | Yes ☒          No ☐ |
| **Delivery of Credit Documents:** | Yes ☐          No ☒ |
| **Netting Arrangements:** | Yes ☐          No ☒ |
| **Flip Representations:** | Yes ☐          No ☒ |
| **Step-Up Provisions:** | Yes ☐          No ☐ |

LSTA EFFECTIVE DECEMBER 2006          Copyright © LSTA 2006. All rights reserved.

dc-539049

| TRANSACTION SUMMARY | | |
|---|---|---|
| | Shift Date: | Not applicable |
| **Transfer Notice:** | Yes ☐ | No ☒ |

## A.   DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as administrative agent under the Credit Agreement.

"Assignment" means a Lender Assignment Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
  ☐ none.
  ☒ means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re Greektown Holdings, L.L.C., et al, Nos. 08-53104 through 08-53112 (Jointly Adminsitered).

"Bankruptcy Court" select one:
  ☐ none.
  ☒ means the United States Bankruptcy Court for the Eastern District of Michigan Southern Division (and, if appropriate, the United States District Court for that District).

"Bar Date" select one:
  ☐ not applicable.
  ☐ none has been set.
  ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
  ☒ not applicable.
  ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
  ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
  ☒ none.
  ☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
  ☒ not applicable.
  ☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the date on which _____ transferred such Loans and Commitments (if any)].

2

"Filing Date" select one:
☐ none.
☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $1,500,000.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means none.

dc-539049

**B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

|  | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
|  | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
      If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

      "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
      ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
      ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
      ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
      ☒ None.
      ☐ The following: _____.

Section 4.1(v) (Proof of Claim).
      ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
            ☐ the Agent on behalf of the Lenders.
            ☐ Seller or a Prior Seller.

4

☒ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (<u>Buyer Status</u>).  [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

    ☐ Buyer is not a Lender.
    ☒ Buyer is a Lender.
    ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
    ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.    SECTION 6 (INDEMNIFICATION)**

Section 6.1 (<u>Seller's Indemnities</u>); <u>Step-Up Indemnities</u>.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.    SECTION 7 (COSTS AND EXPENSES)**

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

dc-539049

**F.**     **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**     Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)     If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)     If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**     Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Wachovia Bank, National Association
ABA No.: 053-000-219
Acct.: Capital Markets
Acct. No.: 0465936-0002448
Attn.: Trade Services
Reference:  Greektown Holdings, LLC

Seller's Wire Instructions:

Name of Bank     Bank of New York;  Houston, Texas
ABA Number     021000018
Account Number GLA 211551
Beneficiary Name       BlackRock Senior Income Series III PLC
Beneficiary A/C# 772733
Reference       Greektown

**G.**     **SECTION 9 (NOTICES)**

Buyer's Address for Notices and Delivery:

Wachovia Bank, National Association
1525 WT Harris Blvd.-NC0680
Charlotte, NC 28262
Attention: Andrea Purcell
Telephone: (704) 590-2796
E-mail: andrea.purcell@wachovia.com

Seller's Address for Notices and Delivery:

OPERATIONS (ADMINISTRATIVE) CONTACTS:

PLEASE SEND ALL NOTICES RE: PAYMENTS, RESETS, SPLITS, ETC. TO THESE PARTIES

| | Primary |
|---|---|
| Name | Custody Operations |
| Firm | BlackRock Financial Management |
| Phone | 302-797-3200 |

6

| Fax | 281-657-9066 |
| E-Mail | 12816579066@ldsprod.com |

CREDIT CONTACTS:

Please do not forward any non-credit notices to the below contacts:

| | Credit | Credit Backup |
|---|---|---|
| Name | Mark J. Williams | Tom Colwell |
| Firm | BlackRock Financial Management, Inc. | BlackRock Financial Management, Inc. |
| Address | 40 East 52nd Street<br>New York, NY 10022 | 33 King William Street<br>London, EC4R 9AS<br>UK |
| Phone | 212-409-3724 | 011-44-20-7743-2143 |
| Fax | 212-754-8756 | 212-754-8756 |
| E-Mail | Mark.williams@blackrock.com | Thomas.colwell@blackrock.com |

Private Side Contact:

| Name | AnnMarie Smith |
|---|---|
| Firm | BlackRock Financial Management, Inc. |
| Address | 800 Scudders Mill Road – Area 1B<br>Plainsboro, NJ 08536 |
| Phone | (609) 282-8925<br>(609) 282-6628 |
| E-Mail | Ann.marie.smith@blackrock.com |

GLOBAL LENDING OFFICE ADDRESS:

BlackRock Financial Management, Inc.
40 East 52nd Street
New York, NY 10022

**H.    SECTION 26 (FURTHER PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

1.    Section 4.1(c)(ii) of the Standard Terms is hereby deleted in its entirety and replaced with the following:

> "(ii) other than the Required Consents, no notice to, registration with, consent or approval of or any other action by any relevant Governmental Authority or other Entity is, will be or was on the Agreement Date required for Seller to execute, deliver, and perform its obligations under, the Transaction Documents (other than, if "Yes" is specified opposite "Transfer Notice" in the Transaction Summary, the Transfer Notice) to which Seller is or will become a party; provided, however, that Seller makes no representation or warranty as to whether the consent of the MGCB or whether any action under the Development Agreement or in respect of the MGCB Approval is required for this Transaction to be completed other than as set forth in Section 4.1(x)."

dc-539049

2.      Section 4.1 of the Standard Terms is hereby amended by adding the following new clause (x) at the end thereof:

> "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed."

3.      Section 5.1 of the Standard Terms is hereby amended by adding the following new clause (o) at the end thereof:

> "(o) Buyer (i) has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed and (ii) does not currently hold, or as a result of its purchase hereunder of the Loans will not own, ten percent (10%) or more of the Loans (as defined in the Credit Agreement), Letters of Credit Outstandings and Commitments (as defined in the Credit Agreement) in violation of Section 10.11.1 of the Credit Agreement."

dc-539049

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BLACKROCK SENIOR INCOME SERIES III PLC**

By: BlackRock Financial Management, Inc.,
    its Collateral Manager

By: _____
    Name:    Philip S. Blake
    Title:     Authorized Signatory


**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**


By: _____
    Name:
    Title:

9

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BLACKROCK SENIOR INCOME SERIES III PLC**

By: BlackRock Financial Management, Inc.,
    its Collateral Manager

By:_____
    Name:
    Title:


**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By:_____
    Name:    Authorized Signatory
    Title:

9

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.      If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

   Lender Assignment Agreement, dated as of December 13, 2005, between Immediate Prior Seller, as assignor, and Seller, as assignee, relating to par/near par loans.

2.      List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

   None

3.      Description of Proof of Claim (if any).

   Not applicable

4.      Description of Adequate Protection Order (if any).

   FINAL ORDER (I) AUTHORIZING POST-PETITION SECURED AND SUPER-PRIORITY FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 503(b) OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) PROVIDING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE; AND (IV) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE

5.      List any exceptions to Section 4.1(w) (Notice of Impairment).

   None

6.      The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

---

[1]  List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

dc-539049



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| **Trade Date:** | With respect to _____ principal amount of Term B Loans, May 28, 2008 and with respect to _____ principal amount of Term B Loans, May 29, 2008 |
| **Agreement Date:** | October 28, 2008 |
| **Seller:** | BLACKROCK SENIOR INCOME SERIES II |
| **Buyer:** | WACHOVIA BANK, NATIONAL ASSOCIATION |
| **Credit Agreement:** | Credit Agreement, dated as of December 2, 2005, among Greektown Holdings, L.L.C. and Greektown Holdings II, Inc., as borrowers, the lenders party thereto, Keybank National Association, as issuer of letters of credit, National City Bank of the Midwest, as replacement issuer of letters of credit, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as sole lead arranger, sole book runner and syndication agent, Merrill Lynch Capital Corporation, as administrative agent and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association and Fifth Third Bank as co-documentation agents. |
| **Borrower:** | Greektown Holdings, L.L.C. and Greektown Holdings II, Inc. |
| **Purchase Amount(s):** | **REDACTED** |
| **Tranche(s):** | Term B Loans |
| **CUSIP Number(s), if available:** | Not applicable |
| **Pre-Settlement Date Accruals Treatment:** | ☒ Settled Without Accrued Interest ☐ Trades Flat |
| **Type of Assignment:** | ☐ Original Assignment ☒ Secondary Assignment |
| **Immediate Prior Seller (if any):** | Merrill Lynch Capital Corporation |
| **Borrower in Bankruptcy:** | Yes ☒ No ☐ |
| **Delivery of Credit Documents:** | Yes ☐ No ☒ |
| **Netting Arrangements:** | Yes ☐ No ☒ |
| **Flip Representations:** | Yes ☐ No ☒ |
| **Step-Up Provisions:** | Yes ☐ No ☐ |

LSTA EFFECTIVE DECEMBER 2006        Copyright © LSTA 2006. All rights reserved.

<table>
<tr><td colspan="3" align="center"><strong>TRANSACTION SUMMARY</strong></td></tr>
<tr><td></td><td>Shift Date:</td><td>Not applicable</td></tr>
<tr><td><strong>Transfer Notice:</strong></td><td>Yes ☐</td><td>No ☒</td></tr>
</table>

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as administrative agent under the Credit Agreement.

"Assignment" means a Lender Assignment Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
  ☐ none.
  ☒ means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re Greektown Holdings, L.L.C., et al, Nos. 08-53104 through 08-53112 (Jointly Administered).

"Bankruptcy Court" select one:
  ☐ none.
  ☒ means the United States Bankruptcy Court for the Eastern District of Michigan Southern Division (and, if appropriate, the United States District Court for that District).

"Bar Date" select one:
  ☐ not applicable.
  ☐ none has been set.
  ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
  ☒ not applicable.
  ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
  ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
  ☒ none.
  ☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
  ☒ not applicable.
  ☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the date on which _____ transferred such Loans and Commitments (if any)].

dc-538635

"Filing Date" select one:
- ☐ none.
- ☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $750,000.

"Netting Letter" select one:
- ☒ not applicable.
- ☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
- ☒ not applicable.
- ☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
- ☒ not applicable.
- ☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
- ☐ means [_____].

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
- ☒ not applicable.
- ☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means none.

3

**B.**    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

|  | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
|  | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
     If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
     ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
     ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
     ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
     ☒ None.
     ☐ The following: _____.

Section 4.1(v) (Proof of Claim).
     ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
        ☐ the Agent on behalf of the Lenders.
        ☐ Seller or a Prior Seller.

dc-538635

&#9746;  The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

&#9744;  No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.**    **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (<u>Buyer Status</u>).   [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

&#9744;  Buyer is not a Lender.
&#9746;  Buyer is a Lender.
&#9744;  Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
&#9744;  Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.**    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (<u>Seller's Indemnities</u>); <u>Step-Up Indemnities</u>.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.**    **SECTION 7 (COSTS AND EXPENSES)**

&#9744;  The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    &#9744;  one-half thereof.
    &#9744;  other relevant fraction or percentage, _____, thereof.
&#9744;  The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    &#9744;  one-half thereof.
    &#9744;  other relevant fraction or percentage, _____, thereof.
&#9744;  The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
&#9746;  The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
&#9744;  There is no Transfer Fee and,  accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

dc-538635

**F.**  **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**  Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i)  If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii)  If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**  Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Wachovia Bank, National Association
ABA No.: 053-000-219
Acct.: Capital Markets
Acct. No.: 0465936-0002448
Attn.: Trade Services
Reference: Greektown Holdings, LLC

Seller's Wire Instructions:

| | |
|---|---|
| Name of Bank | US BANK, NA |
| ABA Number | 091-000-022 |
| Account Number | 10479006281 |
| Account Name | US BANK CORP TRUST/CDO/BSIS II |
| Reference | BSIS II /Greektown |
| Attention | Ryan Whittington |

**G.**  **SECTION 9 (NOTICES)**

Buyer's Address for Notices and Delivery:

Wachovia Bank, National Association
1525 WT Harris Blvd.-NC0680
Charlotte, NC 28262
Attention: Andrea Purcell
Telephone: (704) 590-2796
E-mail: andrea.purcell@wachovia.com

Seller's Address for Notices and Delivery:

PLEASE SEND ALL NOTICES RE: PAYMENTS, RESETS, SPLITS, ETC. TO THESE PARTIES

| | Primary |
|---|---|
| Name | Loan Products |
| Firm | BlackRock Financial Management |
| Phone | 212-810-5655 |
| Fax | 214-261-3149 |
| E-Mail | 12142613149@ docs.ldsprod.com |

6

dc-538635

Please contact the following parties for payment problems and special requests:

|  | Primary Contact | Secondary Contact |
|---|---|---|
| Name | Alternative Products Group | Loan Products Team |
| Firm | BlackRock Financial Management, Inc. | BlackRock Financial Management, Inc. |
| Phone | 212-810-3270 | 212-810-5655 |
| E-Mail | OPSBankLoanResponse@blackrock.com | OPSBankLoanResponse@blackrock.com |

In the event no response is received from either of the above parties, please feel free to contact

| Name | Philip Blake/Colleen Wade |
|---|---|
| Firm | BlackRock Financial Management, Inc. |
| Phone | 212-810-5655 |
| E-Mail | loanproducts@blackrock.com |

LOAN SETTLEMENT CONTACT:

| Name | Gina Forziati | Melissa Abrahams |
|---|---|---|
| Firm | BlackRock Financial Management | BlackRock Financial Management |
| Phone | (609) 282-2090 | (212) 810-5655 |
| Fax | (609) 282-6627 | (212) 810-3257 |
| E-Mail | loanproducts@blackrock.com | loanproducts@blackrock.com |

CREDIT CONTACTS:

Please do not forward any non-credit notices to the below contacts:

|  | **Credit** | **Credit Backup** |
|---|---|---|
| Name | Mark J. Williams | Tom Colwell |
| Firm | BlackRock Financial Management, Inc. | BlackRock Financial Management, Inc. |
| Address | 40 East 52nd Street<br>New York, NY 10022 | 33 King William Street<br>London, EC4R 9AS<br>UK |
| Phone | 212-409-3724 | 011-44-20-7743-2143 |
| Fax | 212-754-8756 | 212-754-8756 |
| E-Mail | Mark.williams@blackrock.com | Thomas.colwell@blackrock.com |

PRIVATE SIDE CONTACT:

| Name | AnnMarie Smith |
|---|---|
| Firm | BlackRock Financial Management, Inc. |
| Address | 800 Scudders Mill Road – Area 1B<br>Plainsboro, NJ 08536 |
| Phone | (609) 282-8925<br>(609) 282-6628 |

7

E-Mail                         Ann.marie.smith@blackrock.com


**H.      SECTION 26 (FURTHER PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

1.       Section 4.1(c)(ii) of the Standard Terms is hereby deleted in its entirety and replaced with the following:

> "(ii) other than the Required Consents, no notice to, registration with, consent or approval of or any other action by any relevant Governmental Authority or other Entity is, will be or was on the Agreement Date required for Seller to execute, deliver, and perform its obligations under, the Transaction Documents (other than, if "Yes" is specified opposite "Transfer Notice" in the Transaction Summary, the Transfer Notice) to which Seller is or will become a party; provided, however, that Seller makes no representation or warranty as to whether the consent of the MGCB or whether any action under the Development Agreement or in respect of the MGCB Approval is required for this Transaction to be completed other than as set forth in Section 4.1(x)."

2.       Section 4.1 of the Standard Terms is hereby amended by adding the following new clause (x) at the end thereof:

> "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed."

3.       Section 5.1 of the Standard Terms is hereby amended by adding the following new clause (o) at the end thereof:

> "(o) Buyer (i) has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed and (ii) does not currently hold, or as a result of its purchase hereunder of the Loans will not own, ten percent (10%) or more of the Loans (as defined in the Credit Agreement), Letters of Credit Outstandings and Commitments (as defined in the Credit Agreement) in violation of Section 10.11.1 of the Credit Agreement."

dc-538635

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BLACKROCK SENIOR INCOME SERIES II**

By: BlackRock Financial Management, Inc.,
     its Collateral Manager

By: _____

Name:
Title:        Philip S. Blake
              Authorized Signatory


**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**


By: _____

Name:
Title:

9

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BLACKROCK SENIOR INCOME SERIES II**

By: BlackRock Financial Management, Inc.,
    its Collateral Manager

By:_____
    Name:
    Title:

**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By:_____
    Name: Authorized Signatory
    Title:

dc-538635

### ANNEX TO PURCHASE AND SALE AGREEMENT

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    Lender Assignment Agreement, dated as of December 13, 2005, between Immediate Prior Seller, as assignor, and Seller, as assignee, relating to par/near par loans.

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None

3.  Description of Proof of Claim (if any).

    Not applicable

4.  Description of Adequate Protection Order (if any).

    FINAL ORDER (I) AUTHORIZING POST-PETITION SECURED AND SUPER-PRIORITY FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 503(b) OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) PROVIDING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE; AND (IV) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE

5.  List any exceptions to Section 4.1(w) (Notice of Impairment).

    None

6.  The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

---

[1] List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

dc-538635

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. Assignment and Assumption.

a.      Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**"). Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.      In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.      Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have

all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.    Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2. Certain Representations, Warranties and Agreements.

a.    Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.    Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.    Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the

meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

        d.      Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers. Assignor shall have no duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

        e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3. <u>Miscellaneous</u>.

        a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

        b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

        c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth

dc-539051

on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

d.    In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

e.    THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

f.    This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

g.    This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.    This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

## SCHEDULE OF TERMS

**Item #**

1.     Borrowers: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.     Name and Date of Credit Agreement:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.     Amounts:

Term B Loan

    a.    Aggregate Commitments of all Lenders:

    b.    Aggregate Loans of all Lenders:

    c.    Amount of Assigned Share of
        Commitments:

    d.    Assigned Share/Pro Rata Share of        **REDACTED**
        Commitments:

    e.    Amount of Assigned Share of Loans:

    f.    Assigned Share/Pro Rata Share of Loans:

4.     Settlement Date: October 28, 2008

dc-539051

Schedule of Terms (con't)

5.   Payment Instructions:

**ASSIGNOR**                                    **ASSIGNEE:**

    On file with Agent              On file with Agent

6.   Notice Addresses:

**ASSIGNOR:**                                   **ASSIGNEE:**

    On file with Agent              On file with Agent

dc-539051

7.    <u>Signatures</u>:

**MAGNETITE V CLO, LIMITED,**
**as Assignor**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager

By: _____
Title: _____
        Philip S. Blake
        Authorized Signatory

**WACHOVIA BANK NATIONAL,**
**ASSOCIATION, as Assignee**

By: _____
Title: _____

dc-539051

7.    Signatures:

**MAGNETITE V CLO, LIMITED,**
**as Assignor**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager


By:_____
Title:_____

**WACHOVIA BANK NATIONAL,**
**ASSOCIATION, as Assignee**


By:___ Authorized Signatory
Title:_____

dc-539051

OCT-27-2008  14:45      ML CAP CORP                                    P.04/04

Schedule of Terms (con't)

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent

By:
    Name: C. MONGELARD
    Title: VICE PRESIDENT

**GREEKTOWN HOLDINGS, L.L.C.**

By: N/A
    Name:
    Title:

dc-539051

TOTAL P.04

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. <u>Assignment and Assumption</u>.

a.      Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**").  Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.      In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.      Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have

dc- 539050

all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.    Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided*, *however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.    Certain Representations, Warranties and Agreements.

a.    Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.    Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.    Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the

meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.    Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers. Assignor shall have no duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.    Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  Miscellaneous.

a.    Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.    Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.    Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth

on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

       d.    In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

       e.    THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

       f.    This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

       g.    This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

       h.    This Agreement shall become effective upon the date (the **"Effective Date"**) upon which all of the following conditions are satisfied: (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

## SCHEDULE OF TERMS

**Item #**

1.   Borrowers: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.   Name and Date of Credit Agreement:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.   Amounts:

Term B Loan

a.   Aggregate Commitments of all Lenders:

b.   Aggregate Loans of all Lenders:

c.   Amount of Assigned Share of
       Commitments:

d.   Assigned Share/Pro Rata Share of        **REDACTED**
       Commitments:

e.   Amount of Assigned Share of Loans:

f.   Assigned Share/Pro Rata Share of Loans:

4.   Settlement Date:  October 28 , 2008

dc- 539050

Schedule of Terms (con't)

5.    Payment Instructions:

**ASSIGNOR**                          **ASSIGNEE**:

   On file with Agent                 On file with Agent

6.    Notice Addresses:

**ASSIGNOR:**                         **ASSIGNEE:**

   On file with Agent                 On file with Agent

Schedule of Terms (con't)

7.      Signatures:

**BLACKROCK SENIOR INCOME**
**SERIES II, as Assignor**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager

By: _____

Title: _____Philip S. Blake_____
            Authorized Signatory

**WACHOVIA BANK NATIONAL,**
**ASSOCIATION, as Assignee**

By: _____

Title: _____

dc- 539050

Schedule of Terms (con't)

7.　　Signatures:

**BLACKROCK SENIOR INCOME
SERIES II, as Assignor**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager


By:_____
Title:_____

**WACHOVIA BANK NATIONAL,
ASSOCIATION, as Assignee**


By:_~Katherine L. Stewart~___
Title:__Authorized Signatory___

dc- 539050

OCT-27-2008  14:45        ML CAP CORP                                        P.03/04

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent

By:
Name: C - MONGELARD
Title: VICE PRESIDENT

**GREEKTOWN HOLDINGS, L.L.C.**

By: N/A
Name:
Title:

dc- 539050

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. Assignment and Assumption.

a.    Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**"). Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.    In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.    Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.    Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have

dc- 539050

all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.     Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however,* that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.  Certain Representations, Warranties and Agreements.

a.     Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.     Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.     Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the

dc- 539050

meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.      Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers. Assignor shall have no duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3. Miscellaneous.

a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth

dc- 539050

on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

d.   In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

e.   THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

f.   This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

g.   This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.   This Agreement shall become effective upon the date (the **"Effective Date"**) upon which all of the following conditions are satisfied: (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

**SCHEDULE OF TERMS**

**Item #**

1. <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2. <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ("**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3. <u>Amounts</u>:

Term B Loan

|  |  | **REDACTED** |
|---|---|---|
| a. | Aggregate Commitments of all Lenders: | |
| b. | Aggregate Loans of all Lenders: | |
| c. | Amount of Assigned Share of Commitments: | |
| d. | Assigned Share/Pro Rata Share of Commitments: | |
| e. | Amount of Assigned Share of Loans: | |
| f. | Assigned Share/Pro Rata Share of Loans: | |

4. <u>Settlement Date</u>:  October 28, 2008

dc- 539050

Schedule of Terms (con't)

5.    Payment Instructions:

**ASSIGNOR**                           **ASSIGNEE:**

On file with Agent                     On file with Agent

6.    Notice Addresses:

**ASSIGNOR:**                          **ASSIGNEE:**

On file with Agent                     On file with Agent

dc- 539050

Schedule of Terms (con't)

7.      Signatures:

**BLACKROCK SENIOR INCOME**
**SERIES II, as Assignor**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager

By: _____
Title: _____Philip S. Blake_____
             Authorized Signatory

**WACHOVIA BANK NATIONAL,**
**ASSOCIATION, as Assignee**

By: _____
Title: _____

dc- 539050

7.    <u>Signatures</u>:

**BLACKROCK SENIOR INCOME**                    **WACHOVIA BANK NATIONAL,**
**SERIES II, as Assignor**                     **ASSOCIATION, as Assignee**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager


By:_____                       By:___*Katherine L. Stewart*___
Title:_____                     Title:__Authorized Signatory__

dc- 539050

Schedule of Terms (con't)

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent

By:

Name: C. MONGELARD

Title: VICE PRESIDENT

**GREEKTOWN HOLDINGS, L.L.C.**

By: N/A

Name:

Title:

dc- 539050

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. Assignment and Assumption.

a.     Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**"). Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.     In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.     Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.     Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have

dc-539052

all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.      Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.  Certain Representations, Warranties and Agreements.

a.      Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.      Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.      Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the

meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.    Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers. Assignor shall have no duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.    Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3. Miscellaneous.

a.    Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.    Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.    Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth

dc-539052

on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein.  In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

   d. In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

   e. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

   f. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

   g. This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

   h. This Agreement shall become effective upon the date (the **"Effective Date"**) upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

dc-539052

## SCHEDULE OF TERMS

<u>Item #</u>

1.  <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.  <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.  <u>Amounts</u>:

|  | | Term B Loan |
|---|---|---|
| a. | Aggregate Commitments of all Lenders: | **REDACTED** |
| b. | Aggregate Loans of all Lenders: | |
| c. | Amount of Assigned Share of Commitments: | |
| d. | Assigned Share/Pro Rata Share of Commitments: | |
| e. | Amount of Assigned Share of Loans: | |
| f. | Assigned Share/Pro Rata Share of Loans: | |

4.  <u>Settlement Date</u>: October 2̶0̶ , 2008

dc-539052

Schedule of Terms (con't)

5.    Payment Instructions:

**ASSIGNOR**                                    **ASSIGNEE**:

    On file with Agent                        On file with Agent

6.    Notice Addresses:

**ASSIGNOR:**                                  **ASSIGNEE:**

    On file with Agent                        On file with Agent

dc-539052

Schedule of Terms (con't)

7.    Signatures:

**BLACKROCK SENIOR INCOME**
**SERIES III PLC, as Assignor**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager

By: _____

Title: _____
        Philip S. Blake
        Authorized Signatory

**WACHOVIA BANK NATIONAL,**
**ASSOCIATION, as Assignee**

By: _____

Title: _____

dc-539052

Schedule of Terms (con't)

7.    Signatures:

**BLACKROCK SENIOR INCOME
SERIES III PLC, as Assignor**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager

By:_____
Title:_____

**WACHOVIA BANK NATIONAL,
ASSOCIATION, as Assignee**


By:_~~Authorized Signatory~~____
Title:_____

dc-539052

OCT-27-2008  14:45        ML CAP CORP                                        P.02/04

Schedule of Terms (con't)

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION, as Administrative Agent**

By:
Name:  C. MONGIARDO
Title:  VICE PRESIDENT

**GREEKTOWN HOLDINGS, L.L.C.**

By: N/A _____
Name:
Title:

dc-539052

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Assignor ("**Assignor**") and Assignee ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. <u>Assignment and Assumption</u>.

a.      Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**"). Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.      In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.      Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have

dc-539053

all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.    Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided, however,* that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.  Certain Representations, Warranties and Agreements.

a.    Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.    Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.    Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the

meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.    Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers. Assignor shall have no duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.    Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  Miscellaneous.

a.    Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.    Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.    Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth

dc-539053

on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

d.      In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

e.      THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

f.      This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

g.      This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.      This Agreement shall become effective upon the date (the **"Effective Date"**) upon which all of the following conditions are satisfied:  (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

**SCHEDULE OF TERMS**

**Item #**

1.  Borrowers: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.  Name and Date of Credit Agreement: Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ("**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.  Amounts:

|  |  | Term B Loan |
|---|---|---|
| a. | Aggregate Commitments of all Lenders: | **REDACTED** |
| b. | Aggregate Loans of all Lenders: | |
| c. | Amount of Assigned Share of Commitments: | |
| d. | Assigned Share/Pro Rata Share of Commitments: | |
| e. | Amount of Assigned Share of Loans: | |
| f. | Assigned Share/Pro Rata Share of Loans: | |

4.  Settlement Date: October 28, 2008

dc-539053

Schedule of Terms (con't)

5.    Payment Instructions:

**ASSIGNOR**                                    **ASSIGNEE**:

   On file with Agent                          On file with Agent

6.    Notice Addresses:

**ASSIGNOR:**                                   **ASSIGNEE:**

   On file with Agent                          On file with Agent

dc-539053

Schedule of Terms (con't)

7.    Signatures:

**BLACKROCK SENIOR INCOME**          **WACHOVIA BANK NATIONAL,**
**SERIES IV, as Assignor**                    **ASSOCIATION, as Assignee**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager

By:_____              By:_____
Title:_____              Title:_____
    Philip S. Blake
    Authorized Signatory

dc-539053

Schedule of Terms (con't)

7.      Signatures:

**BLACKROCK SENIOR INCOME**              **WACHOVIA BANK NATIONAL,**
**SERIES IV, as Assignor**               **ASSOCIATION, as Assignee**
By: BLACKROCK FINANCIAL
MANAGEMENT, INC.,
its Collateral Manager


By:_____              By:_____
Title:_____             Title: Authorized Signatory

dc-539053

Schedule of Terms (con't)

Accepted in accordance with Section
10.1L1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION,** as Administrative Agent

By: _____
    Name: C-MONCELARD
    Title: VICE PRESIDENT

**GREEKTOWN HOLDINGS, L.L.C.**

By: N/A_____
    Name:
    Title:

dc-539053

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Deutsche Bank AG New York Branch ("**Assignor**") and Lehman Commercial Paper Inc. ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1.  Assignment and Assumption.

a.    Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**").  Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.    In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.    Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

17329565

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this clause (d) is expressly made for the benefit of the Borrowers, the Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.      Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided*, *however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by clause (b) of this Section 1 occurs on a date other than the Settlement Date.

SECTION 2.   Certain Representations, Warranties and Agreements.

a.      Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.      Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

17329565                                           2

c.    Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.    Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers.  Assignor shall have no duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.    Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  Miscellaneous.

a.    Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.    Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.    Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been

17329565                                                3

given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with clause (a) of Section 1 herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

d.      In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

e.      THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

f.      This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

g.      This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

h.      This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied: (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

17329565

5

# SCHEDULE OF TERMS

## Item #

1.  <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.  <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.  <u>Amounts</u>:

|  | Term B Loans | Revolving Loans (including Letters of Credit) | Incremental Loans |
|---|---|---|---|
| a. Aggregate Commitments of all Lenders: | | | |
| b. Aggregate Loans of all Lenders: | | | |
| c. Amount of Assigned Share of Commitments: | | | |
| d. Assigned Share/Pro Rata Share of Commitments: | **REDACTED** | | |
| e. Amount of Assigned Share of Loans: | | | |
| f. Assigned Share/Pro Rata Share of Loans: | | | |

4.  <u>Settlement Date</u>:  April ____, 2009

5.  <u>Payment Instructions</u>:

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| Deutsche Bank Trust Company Americas | Citibank NYC |
| ABA# 021-001-033 | ABA# 021000089 |
| Commercial Loan Division | A/C # 30434133 |
| Acct# 602 00 119 | A/C LCPI Bank Loans |
| Ref: Greektown/S.Tanner | Ref: Greektown |

17329565

6.    <u>Notice Addresses:</u>

| ASSIGNOR:<br><br>Simi Tanner<br>c/o DB Services New Jersey, Inc.<br>100 Plaza One Fl 8<br>Mail Stop JC Y03-0899<br>Jersey City, New Jersey 07311<br>Phone number:   (201) 593-2221<br>**Fax # for Notices:** (732) 380-3359<br>Fax number:   (201) 593-2317/2316<br>Email: simi.tanner@db.com | ASSIGNEE:<br>Name:            John O'Shea<br>Company:       Lehman Commercial Paper Inc.<br>Address:         1271 Ave of America<br>                     New York, NY 10020<br><br>Telephone:     646-333-8869<br>Fax:               212-520-0450<br>E-Mail Address:   john.oshea@lehman.com |
| --- | --- |

7.    <u>Signatures:</u>

**DEUTSCHE BANK AG NEW YORK BRANCH,**
as Assignor

By: DB Services New Jersey, Inc.


By:_____
    Name:
    Title:


By:_____
    Name:
    Title:

**LEHMAN COMMERCIAL PAPER INC.,**
as Assignee


By:_____
    Name:
    Title:

17329565

Accepted in accordance with Section
10.11.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent


By:    _____
        Name:
        Title:

17329565

## LENDER ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into by and between the parties designated as Deutsche Bank AG New York Branch ("**Assignor**") and Lehman Commercial Paper Inc. ("**Assignee**") above the signatures of such parties on the Schedule of Terms attached hereto and hereby made an integral part hereof (the "**Schedule of Terms**") and relates to that certain Credit Agreement described in the Schedule of Terms (said Credit Agreement, as amended, supplemented or otherwise modified to the date hereof and as it may hereafter be amended, supplemented or otherwise modified from time to time, being the "**Credit Agreement**", the terms defined therein and not otherwise defined herein, whether in singular or plural form, being used herein as therein defined).

IN CONSIDERATION of the agreements, provisions and covenants herein contained, the parties hereto hereby agree as follows:

SECTION 1. Assignment and Assumption.

a.        Effective upon the Settlement Date specified in Item 4 of the Schedule of Terms (the "**Settlement Date**"), Assignor hereby sells and assigns to Assignee, without recourse, representation or warranty (except as expressly set forth herein), and Assignee hereby purchases and assumes from Assignor, that percentage interest in all of Assignor's rights and obligations as a Lender arising under the Credit Agreement and the other Loan Documents with respect to Assignor's Commitments and outstanding Loans, if any, which represents, as of the Settlement Date, the percentage interest specified in Item 3 of the Schedule of Terms of all rights and obligations of Lenders arising under the Credit Agreement and the other Loan Documents with respect to the Commitments and any outstanding Loans (the "**Assigned Share**").  Without limiting the generality of the foregoing, the parties hereto hereby expressly acknowledge and agree that any assignment of all or any portion of Assignor's rights and obligations relating to Assignor's Revolving Loan Commitment shall include (i) in the event Assignor is an Issuer with respect to any outstanding Letter of Credit (any such Letters of Credit being "**Assignor Letters of Credit**"), the sale to Assignee of a participation in the Assignor Letters of Credit and any drawings thereunder as contemplated by Section 10.11 of the Credit Agreement and (ii) the sale to Assignee of a ratable portion of any participations previously purchased by Assignor pursuant to said Section 10.11 with respect to any Letters of Credit other than the Assignor Letters of Credit.

b.        In consideration of the assignment described above, Assignee hereby agrees to pay to Assignor, on the Settlement Date, the principal amount of any outstanding Loans included within the Assigned Share, such payment to be made by wire transfer of immediately available funds in accordance with the applicable payment instructions set forth in Item 5 of the Schedule of Terms.

c.        Assignor hereby represents and warrants that Item 3 of the Schedule of Terms correctly sets forth the amount of the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share.

17329565

d.      Assignor and Assignee hereby agree that, after giving effect to the assignment and assumption described above, (i) Assignee shall be a party to the Credit Agreement and shall have all of the rights and obligations under the Loan Documents, and shall be deemed to have made all of the covenants and agreements contained in the Loan Documents, arising out of or otherwise related to the Assigned Share from and after the Settlement Date, and (ii) Assignor shall be absolutely released from any of such obligations, covenants and agreements assumed or made by Assignee in respect of the Assigned Share first arising after the Settlement Date. Assignee hereby acknowledges and agrees that the agreement set forth in this underline{clause (d)} is expressly made for the benefit of the Borrowers, the Administrative Agent, Assignor and the other Lenders and their respective successors and permitted assigns.

e.      Assignor and Assignee hereby acknowledge and confirm their understanding and intent that (i) this Agreement shall effect the assignment by Assignor and the assumption by Assignee of Assignor's rights and obligations with respect to the Assigned Share from and after the Settlement Date, (ii) any other assignments by Assignor of a portion of its rights and obligations with respect to the Commitments and any outstanding Loans shall have no effect on the Commitments, the outstanding Loans and the Pro Rata Share corresponding to the Assigned Share as set forth in Item 3 of the Schedule of Terms, and (iii) from and after the Settlement Date, the Administrative Agent shall make all payments under the Credit Agreement in respect of the Assigned Share (including all payments of principal and accrued but unpaid interest, and commitment fees with respect thereto) (A) in the case of any such interest and fees that shall have accrued prior to the Settlement Date, to Assignor, and (B) in all other cases to Assignee; *provided*, *however*, that Assignor and Assignee shall make payments directly to each other to the extent necessary to effect any appropriate adjustments in any amounts distributed to Assignor and/or Assignee by the Administrative Agent under the Loan Documents in respect of the Assigned Share in the event that, for any reason whatsoever, the payment of consideration contemplated by underline{clause (b)} of this underline{Section 1} occurs on a date other than the Settlement Date.

SECTION 2.  underline{Certain Representations, Warranties and Agreements}.

a.      Assignor represents and warrants that immediately prior to this Assignment it is the legal and beneficial owner of the Assigned Share, free and clear of any adverse claim.

b.      Assignor shall not be responsible to Assignee for the execution, effectiveness, genuineness, validity, enforceability, collectibility or sufficiency of any of the Loan Documents or for any representations, warranties, recitals or statements made therein or made in any written or oral statements or in any financial or other statements, instruments, reports or certificates or any other documents furnished or made by Assignor to Assignee or by or on behalf of the Borrowers to Assignor or Assignee in connection with the Loan Documents and the transactions contemplated thereby or for the financial condition or business affairs of the Borrowers or any other Person liable for the payment of any Obligations, nor shall Assignor be required to ascertain or inquire as to the performance or observance of any of the terms, conditions, provisions, covenants or agreements contained in any of the Loan Documents or as to the use of the proceeds of the Loans or as to the existence or possible existence of any Event of Default or potential Event of Default.

c.      Assignee represents and warrants that it has experience and expertise in the making of loans such as the Loans; that it has acquired the Assigned Share for its own account in the ordinary course of its business and without a view to distribution of the Loans within the meaning of the Securities Exchange Act of 1934 or other federal securities laws (it being understood that, subject to the provisions of Section 10.11 of the Credit Agreement, the disposition of the Assigned Share or any interests therein shall at all times remain within its exclusive control); that it has received, reviewed and approved a copy of the Credit Agreement (including all Exhibits and Schedules thereto); and that it shall not assign the Assigned Share to any Person, if, after giving effect to such assignment, such Person would own in the aggregate greater than ten percent (10%) of the Commitments and outstanding Loans.

d.      Assignee represents and warrants that it has received from Assignor such financial information regarding the Borrowers as is available to Assignor and as Assignee has requested, that it has made its own independent investigation of the financial condition and affairs of the Borrowers in connection with the assignment evidenced by this Agreement, and that it has made and shall continue to make its own appraisal of the creditworthiness of the Borrowers.  Assignor shall have no duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of Assignee or to provide Assignee with any other credit or other information with respect thereto, whether coming into its possession before the making of the initial Loans or at any time or times thereafter, and Assignor shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to Assignee.

e.      Each party to this Agreement represents and warrants to the other party hereto that it has full power and authority to enter into this Agreement and to perform its obligations hereunder in accordance with the provisions hereof, that this Agreement has been duly authorized, executed and delivered by such party and that this Agreement constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity.

SECTION 3.  Miscellaneous.

a.      Each of Assignor and Assignee hereby agrees from time to time, upon request of the other such party hereto, to take such additional actions and to execute and deliver such additional documents and instruments as such other party may reasonably request to effect the transactions contemplated by, and to carry out the intent of, this Agreement.

b.      Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party (including, if applicable, any party required to evidence its consent to or acceptance of this Agreement) against whom enforcement of such change, waiver, discharge or termination is sought.

c.      Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telexed or sent by facsimile or United States mail or courier service and shall be deemed to have been

17329565                                    3

given when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed. For the purposes hereof, the notice address of each of Assignor and Assignee shall be as set forth on the Schedule of Terms or, as to either such party, such other address as shall be designated by such party in a written notice delivered to the other such party in accordance with <u>clause (a)</u> of <u>Section 1</u> herein. In addition, the notice address of Assignee set forth on the Schedule of Terms shall serve as the initial notice address of Assignee for purposes of Section 10.2 of the Credit Agreement.

      d.     In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

      e.     THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

      f.     This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

      g.     This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

      h.     This Agreement shall become effective upon the date (the "**Effective Date**") upon which all of the following conditions are satisfied: (i) the execution of a counterpart hereof by each of Assignor and Assignee, (ii) notice of this Agreement, together with (A) payment instructions, (B) the Internal Revenue Service Forms or other statements contemplated or required to be delivered pursuant to Section 4.6 of the Credit Agreement and (C) addresses and related information with respect to such Assignee, shall have been delivered to the Borrowers and the Administrative Agent by such Assignor and such Assignee, (iii) the receipt by the Administrative Agent of the processing and recordation fees referred to in Section 10.11.1 of the Credit Agreement, (iv) in the event Assignee is a Non-US Lender, the delivery by Assignee to the Administrative Agent of such forms, certificates or other evidence with respect to United States federal income tax withholding matters as Assignee may be required to deliver to the Administrative Agent pursuant to said Section 4.6 of the Credit Agreement, (v) the execution of a counterpart hereof by the Administrative Agent as evidence of its acceptance hereof in accordance with Section 10.11.1 of the Credit Agreement, and (vi) the receipt by the Administrative Agent of originals or facsimiles of the counterparts described above and authorization of delivery thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, such execution being made as of the Effective Date in the applicable spaces provided on the Schedule of Terms.

## SCHEDULE OF TERMS

**Item #**

1.  <u>Borrowers</u>: Greektown Holdings, L.L.C. and Greektown Holdings II, Inc.

2.  <u>Name and Date of Credit Agreement</u>:  Credit Agreement, dated as of December 2, 2005 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Credit Agreement**"), among Greektown Holdings, L.L.C., a Michigan limited liability company ( "**Greektown Holdings**"), Greektown Holdings II, Inc., a Michigan corporation ("**Greektown Corporation**"; together with Greektown Holdings, the "**Borrowers**" and each, a "**Borrower**"), the various financial institutions (including the Payee) as are or may from time to time become parties thereto (each, a "**Lender**"; and collectively, the "**Lenders**"), Merrill Lynch Capital Corporation, as the Administrative Agent, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as Sole Lead Arranger, Sole Book Runner and Syndication Agent, and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association, and Fifth Third Bank, collectively, as Co-Documentation Agents.

3.  <u>Amounts</u>:

| | Term B Loans | Revolving Loans (including Letters of Credit) | Incremental Loans |
|---|---|---|---|
| a.  Aggregate Commitments of all Lenders: | | | |
| b.  Aggregate Loans of all Lenders: | | | |
| c.  Amount of Assigned Share of Commitments: | | **REDACTED** | |
| d.  Assigned Share/Pro Rata Share of Commitments: | | | |
| e.  Amount of Assigned Share of Loans: | | | |
| f.  Assigned Share/Pro Rata Share of Loans: | | | |

4.  <u>Settlement Date</u>:  April ____, 2009

5.  <u>Payment Instructions</u>:

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| Deutsche Bank Trust Company Americas | Citibank NYC |
| ABA# 021-001-033 | ABA# 021000089 |
| Commercial Loan Division | A/C # 30434133 |
| Acct# 602 00 119 | A/C LCPI Bank Loans |
| Ref: Greektown/S.Tanner | Ref: Greektown |

17329565

6.    Notice Addresses:

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| Simi Tanner<br>c/o DB Services New Jersey, Inc.<br>100 Plaza One Fl 8<br>Mail Stop JC Y03-0899<br>Jersey City, New Jersey 07311<br>Phone number: (201) 593-2221<br>**Fax # for Notices:** (732) 380-3359<br>Fax number: (201) 593-2317/2316<br>Email: simi.tanner@db.com | Name:          John O'Shea<br>Company:     Lehman Commercial Paper Inc.<br>Address:       1271 Ave of America<br>                    New York, NY 10020<br><br>Telephone:   646-333-8869<br>Fax:             212-520-0450<br>E-Mail Address:   john.oshea@lehman.com |

7.    Signatures:

**DEUTSCHE BANK AG NEW YORK BRANCH**,
as Assignor

By: DB Services New Jersey, Inc.


By:_____
    Name:
    Title:


By:_____
    Name:
    Title:

**LEHMAN COMMERCIAL PAPER INC.**,
as Assignee


By:_____
    Name:
    Title:

17329565

Schedule of Terms (con't)

Accepted in accordance with Section
10.1l.1 of the Credit Agreement

**MERRILL LYNCH CAPITAL
CORPORATION**, as Administrative Agent


By:    _____
         Name:
         Title:

17329565



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

---

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| | |
|---|---|
| **TRANSACTION SUMMARY** | |
| Trade Date: | **June 2, 2008** |
| Agreement Date: | **April __, 2009** |
| Seller: | **DEUTSCHE BANK AG NEW YORK BRANCH** |
| Buyer: | **LEHMAN COMMERCIAL PAPER INC.** |
| Credit Agreement: | **CREDIT AGREEMENT December 2, 2005, among GREEKTOWN HOLDINGS, L.L.C., and GREEKTOWN HOLDINGS II, INC. as the Borrowers, the Lenders party thereto, KEYBANK NATIONAL ASSOCIATION as the Existing Issuer, NATIONAL CITY BANK OF THE MIDWEST as the Replacement Issuer, MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED as the Sole Lead Arranger, Sole Book Runner, and Syndication Agent, the MERRILL LYNCH CAPITAL CORPORATION as the Administrative Agent for the Lenders, and WACHOVIA SECURITIES, NATIONAL CITY BANK OF THE MIDWEST, WELLS FARGO BANK, NATIONAL ASSOCIATION and FIFTH THIRD BANK as the Co-Documentation Agents.** |
| Borrowers: | **GREEKTOWN HOLDINGS, L.L.C.** |
| | **GREEKTOWN HOLDINGS II, INC.** |
| Purchase Amount(s): | **REDACTED** |
| Tranche(s): | **Term B Loans** |
| CUSIP Number(s), if available: | |
| Pre-Settlement Date Accruals Treatment: | ☒ **Settled Without Accrued Interest**<br>☐ **Trades Flat** |
| Type of Assignment: | ☐ **Original Assignment**<br>☒ **Secondary Assignment** |
| Immediate Prior Seller | **WACHOVIA BANK, NATIONAL ASSOCIATION** |
| Borrowers in Bankruptcy: | Yes ☒          No ☐ |
| Delivery of Credit Documents: | Yes ☐          No ☒ |
| Netting Arrangements: | Yes ☐          No ☒ |
| Flip Representations: | Yes ☐          No ☒ |

WCSR  3961716v5

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

<table>
<tr><td colspan="4" align="center"><strong>TRANSACTION SUMMARY</strong></td></tr>
<tr><td><strong>Step-Up Provisions:</strong></td><td>Yes ☐</td><td>No ☒</td><td></td></tr>
<tr><td></td><td><strong>Shift Date:</strong></td><td></td><td><strong>N/A</strong></td></tr>
<tr><td><strong>Transfer Notice:</strong></td><td>Yes ☐</td><td>No ☒</td><td></td></tr>
</table>

## A.   DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
 ☒ means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re Greektown Holdings, L.L.C., et al., No. 08-53104 (Jointly Administered).

"Bankruptcy Court" select one:
 ☒ means the United States Bankruptcy Court for the Eastern District of Michigan (Southern Division) (and, if appropriate, the United States District Court for that District).

"Bar Date" select one:
 ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
 ☒ not applicable.

"Commitments" select one:
 ☒ none.

"Covered Prior Seller" select one:
 ☒ not applicable.

"Filing Date" select one:
 ☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $2,000,000.03.

"Netting Letter" select one:
 ☒ not applicable.

"Original Buyer" select one:
 ☒ not applicable.

"Penultimate Buyer" select one:
☒ not applicable.

"Required Consents" means the prior notice to, and consent of, the Agent.

"Seller Purchase Price" select one:
☒ not applicable.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" select one:
☒ not applicable.


**B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

3

Section 4.1(r) (Predecessor Transfer Agreements).

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.

☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).

☒ None.

☐ The following: _____.

Section 4.1(v) (Proof of Claim).

☒ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by

☒ the Agent on behalf of the Lenders.

☐ Seller or a Prior Seller.

☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

## C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**C.1**    Section 5.1(n) (Buyer Status).    [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☐ Buyer is not a Lender.

☒ Buyer is a Lender.  **[PLEASE CONFIRM]**

☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.    SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.    SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to

☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to

☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.

4

☐    The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒    The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐    There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.    SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

Deutsche Bank Trust Company Americas
ABA# 021-001-033
Commercial Loan Division
Acct# 602 00 119
Ref: Greektown /S.Tanner

Buyer's Wire Instructions:

| | |
|---|---|
| Bank Name: | Citibank NYC |
| ABA #: | 021-000-089 |
| Account Name: | LCPI Bank Loans |
| Account No.: | 30434133 |
| Reference: | Greektown Holdings |

5

G.    **SECTION 9 (NOTICES)**

Seller's Address for Notices and Delivery:

Administrative Contact:
Simi Tanner
c/o DB Services New Jersey, Inc.
100 Plaza One Fl 8
Mail Stop JC Y03-0899
Jersey City, New Jersey 07311
Phone number:  (201) 593-2221
Fax # for Notices: (732) 380-3359
Fax number:  (201) 593-2317/2316
Email: simi.tanner@db.com

Credit Contact:
Jay Hopkins
c/o DB Services New Jersey, Inc.
100 Plaza One Fl 8
Mail Stop JC Y00*0899
Jersey City, New Jersey 07311
Phone number:  (201) 593-2188
Fax number:    (201) 593-2315/2316
E-mail: jay.hopkins@db.com

Buyer's Address for Notices and Delivery:

| Operations Contact: | **(For Notices on Borrowings, Paydowns, Interest & Fees)** | |
|---|---|---|
| | Name: | John O'Shea |
| | Company: | Lehman Commercial Paper Inc. |
| | Address: | 1271 Ave of America |
| | | New York, NY 10020 |
| | Telephone: | 646-333-8869 |
| | Fax: | 212-520-0450 |
| | E-Mail Address: | john.oshea@lehman.com |

| Credit Contact # 1: | **(For Credit, Legal & Financial Documents)** | |
|---|---|---|
| | Name: | Randall Braunfeld |
| | Address: | 1271 Ave of America |
| | | New York, NY 10020 |
| | Telephone: | 646-333-9878 |
| | E-Mail Address: | randall.braunfeld@lehman.com |

**H.**     **SECTION 26 (FURTHER PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

1.     Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added:

> "provided, however, that Seller makes no representation or warranty as to whether the consent of the MGCB or whether any action under the Development Agreement or in respect of the MGCB Approval is required for this Transaction to be completed other than as set forth in Section 4.1(x) below."

2.     Seller and Buyer agree that Section 4.1 of the Standard Terms is hereby amended by adding the following new clause (x) at the end thereof:

> "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction."

3.     Seller and Buyer agree that Section 5.1 of the Standard Terms is hereby amended by adding the following new clause (o) at the end thereof:

> "(o) Buyer (i) has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction and (ii) does not currently hold, or as a result of its purchase hereunder of the Loans will not own, ten percent (10%) or more of the Loans (as defined in the Credit Agreement), Letters of Credit Outstanding and Commitments (as defined in the Credit Agreement) in violation of Section 10.11.1 of the Credit Agreement."

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**DEUTSCHE BANK AG NEW YORK BRANCH**
By: DB Services New Jersey, Inc.


By:_____
Name:
Title:


By:_____
Name:
Title:


**BUYER**

**LEHMAN COMMERCIAL PAPER INC.**


By:_____
Name:
Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

**1.**    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

<u>To the extent of the Loans:</u>

Purchase and Sale Agreement and the related Assignment and Assumption, each dated as of January 16, 2009, between Wachovia Bank, National Association and Deutsche Bank AG New York Branch, as assignee. [distressed]

<u>To the extent of $600,000.03 of the Loans:</u>

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series II, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series II, as assignee, relating to par/near par loans.

<u>To the extent of $600,000.00 of the Loans:</u>

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series III PLC, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series III, PLC, as assignee, relating to par/near par loans.

<u>To the extent of $500,000.00 of the Loans:</u>

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between BlackRock Senior Income Series IV, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and BlackRock Senior Income Series IV, as assignee, relating to par/near par loans.

<u>To the extent of $300,000.00 of the Loans:</u>

Purchase and Sale Agreement and the related Assignment and Assumption dated as of October 28, 2008, by and between Magnetite V CLO, Limited, as assignor, and Wachovia Bank, National Association, as assignee, related to distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Merrill Lynch Capital Corporation, as assignor, and Magnetite V CLO, Limited, as assignee, relating to par/near par loans.

**2.**    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

N/A

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006.  All rights reserved.

3.    Description of Proof of Claim (if any).

The proof of claim filed by Merrill Lynch Capital Corporation, on November 28, 2008, as Administrative Agent for the Lenders and any of their respective successors and assignors (collectively, the "**Lenders**") on behalf of itself and on behalf of the Lenders, in an amount in excess of $314,500,000.00.

4.    Description of Adequate Protection Order (if any).

Final Order (I) Authorizing Post-Petition Secured and Super-Priority Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 503(b) of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code; and (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code, dated June 26, 2008.

5.    List any exceptions to Section 4.1(w) (Notice of Impairment).

NONE

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| **TRANSACTION SUMMARY** | |
|---|---|
| **Trade Date:** | With respect to ___ principal amount of Term B Loans, May 28, 2008 and with respect to ___ principal amount of Term B Loans, May 29, 2008 |
| **Agreement Date:** | October 28, 2008 |
| **Seller:** | MAGNETITE V CLO, LIMITED |
| **Buyer:** | WACHOVIA BANK, NATIONAL ASSOCIATION |
| **Credit Agreement:** | Credit Agreement, dated as of December 2, 2005, among Greektown Holdings, L.L.C. and Greektown Holdings II, Inc., as borrowers, the lenders party thereto, Keybank National Association, as issuer of letters of credit, National City Bank of the Midwest, as replacement issuer of letters of credit, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as sole lead arranger, sole book runner and syndication agent, Merrill Lynch Capital Corporation, as administrative agent and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association and Fifth Third Bank as co-documentation agents. |
| **Borrower:** | Greektown Holdings, L.L.C. and Greektown Holdings II, Inc. |
| **Purchase Amount(s):** | **REDACTED** |
| **Tranche(s):** | Term B Loans |
| **CUSIP Number(s), if available:** | Not applicable |
| **Pre-Settlement Date Accruals Treatment:** | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| **Type of Assignment:** | ☐ Original Assignment<br>☒ Secondary Assignment |
| **Immediate Prior Seller (if any):** | Merrill Lynch Capital Corporation |
| **Borrower in Bankruptcy:** | Yes ☒         No ☐ |
| **Delivery of Credit Documents:** | Yes ☐         No ☒ |
| **Netting Arrangements:** | Yes ☐         No ☒ |
| **Flip Representations:** | Yes ☐         No ☒ |
| **Step-Up Provisions:** | Yes ☐         No ☐ |

| TRANSACTION SUMMARY | | |
|---|---|---|
| | Shift Date: | Not applicable |
| Transfer Notice: | Yes ☐ | No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as administrative agent under the Credit Agreement.

"Assignment" means a Lender Assignment Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
☐ none.
☒ means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re Greektown Holdings, L.L.C., et al, Nos. 08-53104 through 08-53112 (Jointly Administered).

"Bankruptcy Court" select one:
☐ none.
☒ means [the United States Bankruptcy Court for the Eastern District of Michigan Southern Division (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
☐ not applicable.
☐ none has been set.
☒ means November 30, 2008.

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☒ none.
☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
☒ not applicable.
☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the date on which _____ transferred such Loans and Commitments (if any)].

"Filing Date" select one:
☐ none.
☒ means May 29, 2008.

"Loans" means Term B Loans in the outstanding principal amount of $750,000.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means the consent of the Agent.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means none.

dc-539047

**B.**    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

|  | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
|  | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
    ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
    ☒ None.
    ☐ The following: _____.

Section 4.1(v) (Proof of Claim).
    ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
        ☐ the Agent on behalf of the Lenders.
        ☐ Seller or a Prior Seller.

4

☒ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (Buyer Status).  [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☐ Buyer is not a Lender.

☒ Buyer is a Lender.

☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.    SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.    SECTION 7 (COSTS AND EXPENSES)**

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐ There is no Transfer Fee and,  accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**      **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**      Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i)      If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii)      If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**      Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Wachovia Bank, National Association
ABA No.: 053-000-219
Acct.: Capital Markets
Acct. No.: 0465936-0002448
Attn.: Trade Services
Reference:  Greektown Holdings, LLC


Seller's Wire Instructions:


Deutsche Bank (formerly Bankers Trust)
ABA # 021001033
Account Name: LA Asset Backed
A/C # 01419663
Ref: Magnetite V CLO
Ref:  Greektown


**G.**      **SECTION 9 (NOTICES)**

Buyer's Address for Notices and Delivery:

Wachovia Bank, National Association
1525 WT Harris Blvd.-NC0680
Charlotte, NC 28262
Attention: Andrea Purcell
Telephone: (704) 590-2796
E-mail: andrea.purcell@wachovia.com

Seller's Address for Notices and Delivery:


OPERATIONS (ADMINISTRATIVE) CONTACTS

PLEASE SEND COPIES OF ALL NON-CREDIT NOTICES TO:

| Name | Anita Ram | Loan Products Team |
|------|-----------|--------------------|
| Firm | Deutsche Bank | BlackRock Financial Management |
| Phone | (212) 250-1811 | (212) 810-5655 |

6

dc-539047

| Fax | 866-728-4979 | (212) 418-5287 |
| E-Mail | Anita.Ram@db.com | loanproducts@blackrock.com |

DOCUMENTATION CONTACTS:

For Trade Confirms, Assignments, and Funding Memos ONLY:

| Name | Anna Pakman | Laura Lindsay | Gina Forziati |
|------|-------------|---------------|---------------|
| Firm | BlackRock Financial Management | BlackRock Financial Management | BlackRock Financial Management |
| Phone | (212) 810-5655 | (212) 810-5528 | (609) 282-2090 |
| Fax | (212) 810-3257 | (212) 810-3257 | (609) 282-6627 |
| E-Mail | loanproducts@blackrock.com | loanproducts@blackrock.com | loanproducts@blackrock.com |

Copies of all notices to:

CREDIT CONTACTS:

Please do not forward any non-credit notices to the below names.

| | Credit | Credit Backup |
|------|--------|---------------|
| Name | Mark J. Williams | Tom Colwell |
| Firm | BlackRock Financial Management, Inc. | BlackRock Financial Management, Inc. |
| Address | 40 East 52nd Street New York, NY 10022 | 40 East 52nd Street New York, NY 10022 |
| Phone | 212-409-3724 | (212) 810-3663 |
| Fax | 212-754-8756 | (212) 810-8756 |
| E-Mail | mark.williams@blackrock.com | Thomas.Colwell@blackrock.com |

Private Side Contact:

| Name | AnnMarie Smith |
|------|----------------|
| Firm | BlackRock Financial Management, Inc. |
| Address | 800 Scudders Mill Road – Area 1B Plainsboro, NJ 08536 |
| Phone | (609) 282-8925 (609) 282-6628 |
| E-Mail | Ann.marie.smith@blackrock.com |

Full Legal Domestic Lending Office Name and Address:

> Magnetite V CLO
> c/o BlackRock Financial Management
> 40 East 52nd Street
> New York, NY 10022
> Attention: Mark Williams

**H.**    **SECTION 26 (FURTHER PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

1.    Section 4.1(c)(ii) of the Standard Terms is hereby deleted in its entirety and replaced with the following:

7

"(ii) other than the Required Consents, no notice to, registration with, consent or approval of or any other action by any relevant Governmental Authority or other Entity is, will be or was on the Agreement Date required for Seller to execute, deliver, and perform its obligations under, the Transaction Documents (other than, if "Yes" is specified opposite "Transfer Notice" in the Transaction Summary, the Transfer Notice) to which Seller is or will become a party; provided, however, that Seller makes no representation or warranty as to whether the consent of the MGCB or whether any action under the Development Agreement or in respect of the MGCB Approval is required for this Transaction to be completed other than as set forth in Section 4.1(x)."

2.    Section 4.1 of the Standard Terms is hereby amended by adding the following new clause (x) at the end thereof:

"(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed."

3.    Section 5.1 of the Standard Terms is hereby amended by adding the following new clause (o) at the end thereof:

"(o) Buyer (i) has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed and (ii) does not currently hold, or as a result of its purchase hereunder of the Loans will not own, ten percent (10%) or more of the Loans (as defined in the Credit Agreement), Letters of Credit Outstandings and Commitments (as defined in the Credit Agreement) in violation of Section 10.11.1 of the Credit Agreement."

dc-539047

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**MAGNETITE V CLO, LIMITED**

By: BlackRock Financial Management, Inc.,
     its Collateral Manager

By: _____
     Name:      Philip S. Blake
     Title:      Authorized Signatory

**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By: _____
     Name:
     Title:

dc-539047

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**MAGNETITE V CLO, LIMITED**

By: BlackRock Financial Management, Inc.,
    its Collateral Manager

By: _____
    Name:
    Title:

**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By: _____
    Name: Authorized Signatory
    Title:

9

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

Lender Assignment Agreement, dated as of December 13, 2005, between Immediate Prior Seller, as assignor, and Seller, as assignee, relating to par/near par loans.

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

None

3.    Description of Proof of Claim (if any).

Not applicable

4.    Description of Adequate Protection Order (if any).

FINAL ORDER (I) AUTHORIZING POST-PETITION SECURED AND SUPER-PRIORITY FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 503(b) OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) PROVIDING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE; AND (IV) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE

5.    List any exceptions to Section 4.1(w) (Notice of Impairment).

None

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

---

[1]  List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

dc-539047



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| **Trade Date:** | With respect to          principal amount of Tranche B Loans, May 28, 2008 and, with respect to          principal amount of Tranche B Loans, May 29, 2008 |
| **Agreement Date:** | October 28, 2008 |
| **Seller:** | BLACKROCK SENIOR INCOME SERIES IV |
| **Buyer:** | WACHOVIA BANK, NATIONAL ASSOCIATION |
| **Credit Agreement:** | Credit Agreement, dated as of December 2, 2005, among Greektown Holdings, L.L.C. and Greektown Holdings II, Inc., as borrowers, the lenders party thereto, Keybank National Association, as issuer of letters of credit, National City Bank of the Midwest, as replacement issuer of letters of credit, Merrill Lynch, Pierce, Fenner and Smith Incorporated, as sole lead arranger, sole book runner and syndication agent, Merrill Lynch Capital Corporation, as administrative agent and Wachovia Securities, National City Bank of the Midwest, Wells Fargo Bank, National Association and Fifth Third Bank as co-documentation agents. |
| **Borrower:** | Greektown Holdings, L.L.C. and Greektown Holdings II, Inc. |
| **Purchase Amount(s):** | **REDACTED** |
| **Tranche(s):** | Term B Loans |
| **CUSIP Number(s), if available:** | Not applicable |
| **Pre-Settlement Date Accruals Treatment:** | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| **Type of Assignment:** | ☐ Original Assignment<br>☒ Secondary Assignment |
| **Immediate Prior Seller (if any):** | Merrill Lynch Capital Corporation |
| **Borrower in Bankruptcy:** | Yes ☒    No ☐ |
| **Delivery of Credit Documents:** | Yes ☐    No ☒ |
| **Netting Arrangements:** | Yes ☐    No ☒ |
| **Flip Representations:** | Yes ☐    No ☒ |
| **Step-Up Provisions:** | Yes ☐    No ☐ |

LSTA EFFECTIVE DECEMBER 2006        Copyright © LSTA 2006.  All rights reserved.

| TRANSACTION SUMMARY | | |
|---|---|---|
| | Shift Date: | Not applicable |
| **Transfer Notice:** | Yes ☐ | No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Merrill Lynch Capital Corporation, as administrative agent under the Credit Agreement.

"Assignment" means a Lender Assignment Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
 ☐ none.
 ☒ means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re Greektown Holdings, L.L.C., et al, Nos. 08-53104 through 08-53112 (Jointly Administered).

"Bankruptcy Court" select one:
 ☐ none.
 ☒ means [the United States Bankruptcy Court for the Eastern District of Michigan Southern Division (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
 ☐ not applicable.
 ☐ none has been set.
 ☒ means November 30, 2008.

"Buyer Purchase Price" select one:
 ☒ not applicable.
 ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
 ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
 ☒ none.
 ☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
 ☒ not applicable.
 ☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the date on which _____ transferred such Loans and Commitments (if any)].

2

"<u>Filing Date</u>" select one:
- ☐ none.
- ☒ means May 29, 2008.

"<u>Loans</u>" means Term B Loans in the outstanding principal amount of $1,250,000.

"<u>Netting Letter</u>" select one:
- ☒ not applicable.
- ☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"<u>Original Buyer</u>" select one:
- ☒ not applicable.
- ☐ means [specify original buyer in the netting arrangement].

"<u>Penultimate Buyer</u>" select one:
- ☒ not applicable.
- ☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
- ☐ means [_____].

"<u>Required Consents</u>" means the consent of the Agent.

"<u>Seller Purchase Price</u>" select one:
- ☒ not applicable.
- ☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"<u>Transfer Fee</u>" means the $3,500 transfer or other similar fee payable to the Agent in connection with the Assignment.

"<u>Unfunded Commitments</u>" means none.

dc-539048

**B.**    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

|  | **Flat Representation** | **Flip Representation** | **Step-Up Representation** |
|---|---|---|---|
|  | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
        If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
        ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
        ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
        ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
        ☒ None.
        ☐ The following: _____.

Section 4.1(v) (Proof of Claim).
        ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
                ☐ the Agent on behalf of the Lenders.
                ☐ Seller or a Prior Seller.

4

☒ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

## C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**C.1**      Section 5.1(n) (Buyer Status).  [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☐ Buyer is not a Lender.

☒ Buyer is a Lender.

☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**      If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.    SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)      If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)      If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.    SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐ There is no Transfer Fee and,  accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**    **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Wachovia Bank, National Association
ABA No.: 053-000-219
Acct.: Capital Markets
Acct. No.: 0465936-0002448
Attn.: Trade Services
Reference: Greektown Holdings, LLC

Seller's Wire Instructions:

Name of Bank    Deutsche Bank Trust Company Americas
ABA Number    021-001-033
Account Number 014-19-663
BNF Name:    Deutsche Bank
BNFAddress:    New York, New York
Account Name    NYLTD Funds Control – Stars West
For Further Credit    CTOL55270
Reference    BLACKROCK SENIOR INCOME SERIES IV CLO

**G.**    **SECTION 9 (NOTICES)**

Buyer's Address for Notices and Delivery:

Wachovia Bank, National Association
1525 WT Harris Blvd.-NC0680
Charlotte, NC 28262
Attention: Andrea Purcell
Telephone: (704) 590-2796
E-mail: andrea.purcell@wachovia.com

Seller's Address for Notices and Delivery:

OPERATIONS (ADMINISTRATIVE) CONTACTS:
PLEASE SEND ALL NON-CREDIT (PAYMENTS, RESETS, SPLITS) NOTICES TO:

|  | Primary |  |  |  |
|---|---|---|---|---|
| Name | Anita Ram | Ira Lubinsky | Melissa Sadler | Giuseppe Aba |
| Firm | DB | DB | DB | DB |
| Phone | 212-250-1811 | 212-250-1962 | 212-250-1111 | 212-250-1911 |

6

dc-539048

| Fax | 866-719-9301 | | | |
| E-Mail | Anita.Ram@db.com | Ira.lubinsky@db.com | Melissa.sadler@db.com | Giuseppe.abat |

CC (When Available):

| Name | Loan Products Team |
| Firm | BlackRock Financial Management, Inc. |
| Address | 40 East 52nd Street |
| | New York, NY 10022 |
| Phone | 212-810-5655 |
| Fax | 212-418-5287 |
| E-Mail | loanproducts@blackrock.com |

dc-539048

CREDIT CONTACTS:

Please only send these contacts credit related notices.  Do not send them administrative notices.

|  | Credit | Credit Backup |
|---|---|---|
| Name | Mark J. Williams | Tom Colwell |
| Firm | BlackRock Financial Management, Inc. | BlackRock Financial Management, Inc. |
| Address | 40 East 52nd Street New York, NY 10022 | 40 East 52nd Street New York, NY 10022 |
| Phone | (212) 810-3724 | (212) 810-3663 |
| Fax | (212) 810-8756 | (212) 810-8756 |
| E-Mail | mark.williams@blackrock.com | thomas.colwell@blackrock.com |

Private Side Contact:

| Name | AnnMarie Smith |
|---|---|
| Firm | BlackRock Financial Management, Inc. |
| Address | 800 Scudders Mill Road – Area 1B Plainsboro, NJ 08536 |
| Phone | (609) 282-8925 (609) 282-6628 |
| E-Mail | Ann.marie.smith@blackrock.com |

DOCUMENTATION CONTACTS:
For Trade Confirms, Assignments, and Funding Memos ONLY:

| Name | Anna Pakman | Laura Lindsay | Gina Forziati |
|---|---|---|---|
| Firm | BlackRock Financial Management | BlackRock Financial Management | BlackRock Financial Management |
| Phone | (212) 810-5655 | (212) 810-5528 | (609) 282-2090 |
| Fax | (212) 810-3257 | (212) 810-3257 | (609) 282-6627 |
| E-Mail | loanproducts@blackrock.com | loanproducts@blackrock.com | loanproducts@blackrock.com |

**H.**    **SECTION 26 (FURTHER PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

1.    Section 4.1(c)(ii) of the Standard Terms is hereby deleted in its entirety and replaced with the following:

> "(ii) other than the Required Consents, no notice to, registration with, consent or approval of or any other action by any relevant Governmental Authority or other Entity is, will be or was on the Agreement Date required for Seller to execute, deliver, and perform its obligations under, the Transaction Documents (other than, if "Yes" is specified opposite "Transfer Notice" in the Transaction Summary, the Transfer Notice) to which Seller is or will become a party; provided, however, that Seller makes no representation or warranty as to whether the consent of the MGCB or whether any action under the Development Agreement or in respect of the MGCB Approval is required for this Transaction to be completed other than as set forth in Section 4.1(x)."

8

dc-539048

2.    Section 4.1 of the Standard Terms is hereby amended by adding the following new clause (x) at the end thereof:

> "(x) Based upon Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed."

3.    Section 5.1 of the Standard Terms is hereby amended by adding the following new clause (o) at the end thereof:

> "(o) Buyer (i) has no reason to believe that the consent of the MGCB or any action under the Development Agreement or in respect of the MGCB Approval is required for the Transaction to be completed and (ii) does not currently hold, or as a result of its purchase hereunder of the Loans will not own, ten percent (10%) or more of the Loans (as defined in the Credit Agreement), Letters of Credit Outstandings and Commitments (as defined in the Credit Agreement) in violation of Section 10.11.1 of the Credit Agreement."

dc-539048

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BLACKROCK SENIOR INCOME SERIES IV**

By: BlackRock Financial Management, Inc.,
    its Collateral Manager

By: _____

    Name:    Philip S. Blake
    Title:    Authorized Signatory

**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By: _____

    Name:
    Title:

dc-539048

IN WITNESS WHEREOF, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BLACKROCK SENIOR INCOME SERIES IV**

By: BlackRock Financial Management, Inc.,
    its Collateral Manager


By: _____
    Name:
    Title:


**BUYER**

**WACHOVIA BANK, NATIONAL ASSOCIATION**


By: _____*Katherine L. Stewart*_____
    Name:    **Authorized Signatory**
    Title:

10

dc-539048

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    Lender Assignment Agreement, dated as of December 13, 2005, between Immediate Prior Seller, as assignor, and Seller, as assignee, relating to par/near par loans.

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None

3.  Description of Proof of Claim (if any).

    Not applicable

4.  Description of Adequate Protection Order (if any).

    FINAL ORDER (I) AUTHORIZING POST-PETITION SECURED AND SUPER-PRIORITY FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 503(b) OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) PROVIDING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE; AND (IV) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE

5.  List any exceptions to Section 4.1(w) (Notice of Impairment).

    None

6.  The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

---

[1] List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).