Objection Date and Time:  July 31, 2009 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time:  August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | |
|---|---|
| In re | :     **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | :     **08-13555 (JMP)** |
| | : |
| Debtors. | :     **(Jointly Administered)** |

-------------------------------------------------------------------x

### NOTICE OF MOTION OF THE DEBTORS PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) FOR ESTABLISHMENT OF PROCEDURES FOR THE DEBTORS TO COMPROMISE AND SETTLE CLAIMS IN RESPECT OF THE <u>ORIGINATION OR PURCHASE OF RESIDENTIAL MORTGAGE LOANS</u>

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of July 15, 2009 (the "<u>Motion</u>"), of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (together, the "<u>Debtors</u>"), pursuant to section 105(a) of title 11 of the United States Code and section 9019 of the Federal Rules of Bankruptcy Procedure authorizing the establishment of procedures to permit the Debtors to compromise and settle claims with respect to the origination or purchase of residential mortgage loans, as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on **August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "<u>Hearing</u>").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received no later than **July 31, 2009 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.


Dated: July 15, 2009
        New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    08-13555 (JMP)
                                    :
                 Debtors.           :    (Jointly Administered)
                                    :
                                    :
------------------------------------------------------------x
```

**MOTION OF THE DEBTORS PURSUANT TO SECTION 105(a) OF
THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) FOR
ESTABLISHMENT OF PROCEDURES FOR THE DEBTORS TO
COMPROMISE AND SETTLE CLAIMS IN RESPECT OF THE
<u>ORIGINATION OR PURCHASE OF RESIDENTIAL MORTGAGE LOANS</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), respectfully represent:

<u>**Background**</u>

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy

Rules.  The Debtors are authorized to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.     On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

### Jurisdiction

5.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

6.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

7.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## **Preliminary Statement**

8.      Prior to the Commencement Date, the Debtors acquired thousands of

mortgage loans secured by residential real properties ("Residential Mortgage Loans") for the

purpose of selling such loans into special purpose entities that would issue securities secured by

pools of mortgage loans to investors.  The Debtors also held some of the acquired Residential

Mortgage Loans for their own account.  Some of the Residential Mortgage Loans have gone into

default or have otherwise caused the Debtors to incur losses under circumstances that have

implicated the representations, warranties or covenants made in connection with the origination

or sale of such loans.  The Debtors have pursued contract and tort claims against the originator

and/or seller of such mortgage loans on account of such defects in a similar manner as they did

prior to the Commencement Date.  In many cases, the Debtors present the facts to the originators

or sellers and have an opportunity to negotiate a reasonable settlement of the issues without the

need for commencing litigation and pursing it to a final verdict-- to the benefit of these estates

and all parties-in-interest.

9.      Section 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") provides that "the court may approve a compromise or settlement".  The

Debtors seek the establishment of procedures pursuant to Bankruptcy Rule 9019 in this Motion

that would enable them to settle contract or tort claims against the originator or seller of

Residential Mortgage Loans.

## Relief Requested

10.     By this Motion, the Debtors seek authority under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 to establish procedures by which they may compromise and settle claims, in accordance with the procedures set forth herein, against any party involved in the origination of Residential Mortgage Loans owned by the Debtors or the sale of Residential Mortgage Loans to the Debtors (i) based on any fraud or tort claim against any party in connection with such party's role in the origination or sale of such Residential Mortgage Loan or (ii) resulting from the breach of any representation, warranty or covenant made by such party, or any other contractual obligation, in the applicable mortgage loan broker and purchase agreements, indemnity agreements and guaranties for which such party is obligated to either repurchase such Residential Mortgage Loan for an amount outlined in said agreement, pay damages for a failure to repurchase such loan, or indemnify the Debtors for a realized loss suffered due to (x) liquidation of the loan, (y) sale of the loan to a third party for an amount significantly less than what Debtors initially paid for the loan, or (z) for an amount paid by the Debtors to a subsequent purchaser of loan because of a defect therein (each such claim, a "Repurchase or Indemnification Claim").

### Settlement of Debtors' Claims Against Sellers of Residential Mortgage Loans and Parties Involved in the Origination of Residential Mortgage Loans

11.     Prior to the Commencement Date, the Debtors acquired Residential Mortgage Loans in the ordinary course of business from various originators throughout the United States.  The Debtors acquired Residential Mortgage Loans with the intent to either deposit them into special purposes entities established to issue securities secured by pools of mortgage loans, or to hold them for the Debtors' own account.  The Debtors either (i) through a subsidiary, Aurora Loan Services LLC, retained the rights to service such Residential Mortgage

Loans or (ii) entered into agreements and granted various rights with respect to the loans to established third-party companies specializing in servicing large pools of loans, including collecting remittances, communicating with borrowers, preparing reports and providing an assortment of other services related to the servicing of such loans.  As of the Commencement Date, the Debtors owned thousands of Residential Mortgage Loans.

12.     The Debtors' Residential Mortgage Loans were not originated by the Debtors, but rather were indirectly acquired from third parties through the assistance of Lehman Brothers Bank FSB n/k/a Aurora Bank FSB ("LBB").  The Debtors acquired Residential Mortgage Loans from third parties in the following two ways: (i) LBB with the assistance of Aurora Loan Services LLC[1] ("Aurora"), would purchase Residential Mortgage Loans from third party loan originators and then LBB would sell such Residential Mortgage Loans to LBHI; or (ii) LBB and/or Aurora would enter into agreements with mortgage brokers, whereby such brokers would locate potential borrowers, Aurora would underwrite the Residential Mortgage Loans, LBB would fund such Residential Mortgage Loans and then LBB would sell such Residential Mortgage Loans to LBHI.  The sales of the Residential Mortgage Loans from LBB to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.  LBB did however, prior to the Commencement Date, assign to LBHI its rights and remedies under those purchase agreements with third party originators in connection with and in furtherance of LBB's prior sale, transfer and conveyance of the Residential Mortgage Loans to LBHI.

13.     Prior to the Commencement Date, LBB, LBHI, and securitizations of Residential Mortgage Loans, relied exclusively on Aurora for the enforcement of the parties'

---

[1] Aurora Loan Services LLC is a wholly-owned subsidiary of Lehman Brothers Bank FSB (n/k/a Aurora Bank FSB).

respective rights of recourse back to mortgage loan originators and brokers and associated

persons and entities with respect to such Residential Mortgage Loans.  When Residential

Mortgage Loans went into default and/or were determined to contain certain violations of

underwriting standards required by the applicable mortgage loan purchase and broker

agreements entered into by LBB, Aurora would then determine whether the representations,

warranties, covenants made by a mortgage loan broker or seller or other contractual obligations

were breached in connection with the origination and/or sale of such Residential Mortgage Loans

to LBB.

          14.    If a breach was determined to have occurred, Aurora, on behalf of the

owner of the Residential Mortgage Loan, which most often was LBHI[2], would assert the relevant

Repurchase or Indemnification Claim against the relevant party, pursuant to the terms of the

applicable mortgage loan purchase or broker agreement, and request that the loan seller

repurchase the loan at the contractually defined repurchase price or indemnify the owner of the

Residential Mortgage Loan for losses suffered in the liquidation of the loan.  If necessary,

Aurora, on behalf of the owner of the Residential Mortgage Loan, which from time to time was

LBHI, would commence litigation in furtherance of Repurchase or Indemnification Claims

against the relevant loan originators or sellers that breached a representation, warranty or

covenant or failed to honor a contractual obligation.  LBHI granted Aurora the authority to

determine whether to commence litigation and the right to conduct the litigation.  Part and parcel

of all of these rights, Aurora had the authority to settle Repurchase or Indemnification Claims,

and did settle such claims both prior to commencing litigation and after commencing litigation.

---

[2] In addition to loans held by LBHI, Auroroa also continues act as servicer for loans held by securitizations.

15.     The Debtors continue to pursue Repurchase or Indemnification Claims in a similar manner as they did in the ordinary course of their business prior to the Commencement Date.  However, instead of Aurora commencing and conducting litigation on behalf of the Debtors, the Debtors have been and will continue to take a more active role analyzing the Residential Mortgage Loans, and the Debtors will also determine whether to bring litigation and whether to agree to settlements with respect to such Repurchase or Indemnification Claims.  The Debtors estimate that there are approximately 5,200 claims for which they may pursue Repurchase or Indemnification Claims, which, collectively, aggregate to hundreds of millions of dollars.  The Debtors are analyzing, on a case by case basis, the financial viability of such originators or sellers of Residential Mortgage Loans to determine whether the cost of pursuit is warranted.

16.     In a liquid and appreciating residential mortgage market, Aurora and the Debtors were extremely successful in claims management, enforcement and recoveries. However, with the current economic climate, the Debtors do not expect the same returns in recoveries, for some counterparties have closed their operations and/or are in bankruptcy or insolvency proceedings.  Others, however, are solvent and in fact starting to rebound from recent market woes.

17.     The Debtors are confident in the strength of their claims and are intent on aggressively pursuing their claims against sellers of Residential Mortgage Loans and related parties.  Inevitably the pursuit of some of these claims will lead to litigation.  In fact, since the Commencement Date through June 18, 2009, the Debtors have filed forty-two (42) lawsuits against sellers of Residential Mortgage Loans with claims aggregating to nearly $41,000,000. This does not include lawsuits that were active prior to the Commencement Date and filed in the

name of Aurora for the benefit of Debtors and other loss owners of Residential Mortgage Loans.
The Debtors anticipate filing many more actions in pursuit of its losses on Residential Mortgage
Loans.

18.     Without the relief requested in this Motion, the Debtors will incur
litigation expense and spend large amounts of time litigating cases against sellers of Residential
Mortgage Loans or other applicable parties.  They may be required to pursue such litigation even
in the face of reasonable settlement opportunities.  Furthermore, while the Debtors are confident
in the strength of their arguments, litigation always includes a risk that the Debtors may recover
less than expected or even nothing.  Instances will arise where it may be in the best interest of the
Debtors' estates for the Debtors to settle such claims, whether or not a lawsuit has been
commenced, in their business judgment.

19.     This Motion sets forth guidelines and procedures the Debtors propose to
implement with respect to settlements related to Repurchase or Indemnification Claims.  Given
the risk of non-recovery in any litigation and the substantial legal fees they would incur in
litigating such Repurchase or Indemnification Claims, the Debtors seek authorization to settle
such Repurchase or Indemnification Claims, whether or not a lawsuit has been commenced,
under the following terms and conditions:

a.     Without further order of the Court or notice to or approval of any party in
interest, the Debtors may compromise and settle Repurchase or Indemnification
Claims against any single party that (x) in the aggregate, exclusive of any claim
for payment of attorneys' fees, costs and expenses, and after offset of any
counterclaim, do not exceed $3,000,000 or (y) in the aggregate, exclusive of any
claim for payment of attorneys' fees, costs and expenses, and after offset of any
counterclaim, are greater than $3,000,000, but only if the amount that the Debtors
receive in respect of such settlement or compromise is at least 60% of such
aggregate amount of such Repurchase of Indemnification Claim;

b.     For settlements of Repurchase or Indemnification Claims against any
single party which, (x) in the aggregate, exclusive of any claim for payment of
attorneys' fees, costs and expenses, and after offset of any counterclaim, are

greater than $3,000,000 but less than $8,000,000 and (y) the amount that the Debtors receive in respect of such settlement or compromise is less than 60% of such aggregate amount of such Repurchase of Indemnification Claim, the Debtors will submit the proposed settlement to the Creditors' Committee together with (i) the name of the other party to the settlement, (ii) a summary of the claim against the other party, including the settlement amount, (iii) an explanation of why the settlement of such Repurchase or Indemnification Claims is favorable to the Debtors and their estates, and (iv) a copy of any proposed settlement agreement (the "Repurchase or Indemnification Claim Settlement Summary"). The Creditors' Committee will be required to submit any objections to a proposed settlement reflected on a Repurchase or Indemnification Claim Settlement Summary on or before three (3) business days after service of such Repurchase or Indemnification Claim Settlement Summary. In the event that the Creditors' Committee objects to the settlement set forth in the Repurchase or Indemnification Claim Settlement Summary, the Debtors may (i) seek to renegotiate the proposed settlement and may submit a revised Repurchase or Indemnification Claim Settlement Summary in connection therewith or (ii) file a motion with the Court seeking approval of the proposed settlement. If the Creditors' Committee does not timely object to the proposed settlement, then the Debtors will be deemed, without further order of the Court or notice to any party in interest, to be authorized by the Court to enter into an agreement to settle the Repurchase or Indemnification Claims at issue as provided in the Repurchase or Indemnification Claim Settlement Summary previously submitted to the Creditors' Committee; and

c.      For any settlement of a Repurchase or Indemnification Claims against any single party, which, in the aggregate, exclusive of any claim for payment of attorneys' fees, costs and expenses, and after offset of any counterclaim, are greater than $8,000,000, the Debtors will be required to file a motion with the Court requesting approval of the compromise and settlement under Bankruptcy Rule 9019.

## Basis for Relief

20.      Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997);

*In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry,* 390 U.S. at 424 (quoting *Case v. Los Angelas Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

21.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505; see also *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

22.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation.  *Drexel Burnham Lambert Group*, 134 B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact….  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

23.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

24.     Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974). Providing the Debtors with the authority to efficiently and economically monetize their claims against the originators or sellers of Residential Mortgage Loans is clearly beneficial to the Debtors' estates and creditors. Bankruptcy Rule 9019(b) provides that "on motion…and after notice and a hearing, the Court may approve a compromise or settlement".

25.     The Debtors seek the establishment of procedures, which if complied with, render certain future compromises and settlements pre-approved. Other courts have granted authority to settle various types of claims to debtors in possession in other large chapter 11 cases, including *In re Footstar, Inc. et al.*, (Case No. 04-22350) (Bankr. S.D.N.Y.) (approving procedures for the settlement of litigation claims and pre-petition leases and contracts); *In re*

*NRG Energy, Inc., et al.* (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) (approval of procedures for the settlement of terminated derivative contracts); *In re Mirant Corporation, et al.* (Case No. 03-46590) (Bankr. N.D. Tex. 2003) (approval of procedures for the settlement of terminated derivative contracts); *In re Enron Corp., et al.* (Case No. 01-16034) (Bankr. S.D.N.Y. 2001) (approval of procedures for estimation and settlement of unliquidated and contingent claims); *In re Armstrong World Industries, Inc., et al.* (Case No. 00-4471) (Bankr. D. Del. 2000) (approving procedures for the settlement of personal injury claims, employee litigation claims and tax claims against the debtor).

26.    The Debtors have determined that settlements of certain Repurchase and Indemnification Claims are the most efficient method for Debtors to recover amounts owed to them by parties in respect of breach of contract or tort claims related to the purchase or origination of Residential Mortgage Loans.  The Debtors are seeking authorization to pursue and settle Repurchase and Indemnification Claims in a similar manner to which they pursued and settled Repurchase and Indemnification Claims prior to the Commencement Date.  To take full advantage of these processes, the Debtors submit that they require pre-authorization from the Court for procedures authorizing them to settle Repurchase and Indemnification Claims in accordance with the Debtors' reasonable business judgment.

27.    The proposed procedures for compromises and settlements as discussed in this Motion are within the parameters set forth in Bankruptcy Rule 9019, are within the Court's authority under section 105(a) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates, their creditors, and all parties in interest.

**Notice**

28.      No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion in accordance with the procedures set forth in the order entered

on February 13, 2009 governing case management and administrative procedures for these cases

[Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; and (vi) all parties who have requested

notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be

provided.

29.      No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order (i) establishing

and authorizing the compromise and settlement procedures set forth herein and (ii) granting the

Debtors such other and further relief as is just.

DATED:        July 15, 2009
              New York, New York

                                    /s/ Shai Y. Waisman
                                    Shai Y. Waisman

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    (212) 310-8000

                                    ATTORNEYS FOR DEBTORS AND
                                    DEBTORS IN POSSESSION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                    :

In re                  :        Chapter 11 Case No.
                    :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :        08-13555 (JMP)
                    :

          Debtors.        :        (Jointly Administered)
                    :
                    :
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) AUTHORIZING THE ESTABLISHMENT OF PROCEDURES FOR THE DEBTORS TO COMPROMISE AND SETTLE CLAIMS IN RESPECT OF THE <u>ORIGINATION OR PURCHASE OF RESIDENTIAL MORTGAGE LOANS</u>

Upon the motion, dated July 15, 2009 (the "<u>Motion</u>"), of Lehman Brothers

Holdings Inc., and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors-in-possession (collectively, the "<u>Debtors</u>"), pursuant to section 105(a) of the Bankruptcy

Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") for authorization to compromise and settle certain claims with respect to

the origination or purchase of residential mortgage loans, as more fully described in the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the order entered

February 13, 2009 governing case management and administrative procedures for these cases

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; and (vi) all parties who have requested

notice in these chapter 11 cases, and it appearing that no other or further notice need be provided;

and a hearing (the "Hearing") having been held to consider the relief requested in the Motion;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates and creditors, and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that Debtors shall be, and hereby are, authorized to compromise

Repurchase and Indemnification Claims in accordance with the following procedures:

    a.     Without further order of the Court or notice to or approval of any party in interest, the Debtors may compromise and settle Repurchase or Indemnification Claims against any single party that (x) in the aggregate, exclusive of any claim for payment of attorneys' fees, costs and expenses, and after offset of any counterclaim, do not exceed $3,000,000 or (y) in the aggregate, exclusive of any claim for payment of attorneys' fees, costs and expenses, and after offset of any counterclaim, are greater than $3,000,000, but only if the amount that the Debtors receive in respect of such settlement or compromise is at least 60% of such aggregate amount of such Repurchase of Indemnification Claim;

    b.     For settlements of Repurchase or Indemnification Claims against any single party which, (x) in the aggregate, exclusive of any claim for payment of attorneys' fees, costs and expenses, and after offset of any counterclaim, are greater than $3,000,000 but less than $8,000,000 and (y) the amount that the Debtors receive in respect of such settlement or compromise is less than 60% of such aggregate amount of such Repurchase of Indemnification Claim, the Debtors will submit the proposed settlement to the Creditors' Committee together with

(i) the name of the other party to the settlement, (ii) a summary of the claim against the other party, including the settlement amount, (iii) an explanation of why the settlement of such Repurchase or Indemnification Claims is favorable to the Debtors and their estates, and (iv) a copy of any proposed settlement agreement (the "Repurchase or Indemnification Claim Settlement Summary"). The Creditors' Committee will be required to submit any objections to a proposed settlement reflected on a Repurchase or Indemnification Claim Settlement Summary on or before three (3) business days after service of such Repurchase or Indemnification Claim Settlement Summary.  In the event that the Creditors' Committee objects to the settlement set forth in the Repurchase or Indemnification Claim Settlement Summary, the Debtors may (i) seek to renegotiate the proposed settlement and may submit a revised Repurchase or Indemnification Claim Settlement Summary in connection therewith or (ii) file a motion with the Court seeking approval of the proposed settlement.  If the Creditors' Committee does not timely object to the proposed settlement, then the Debtors will be deemed, without further order of the Court or notice to any party in interest, to be authorized by the Court to enter into an agreement to settle the Repurchase or Indemnification Claims at issue as provided in the Repurchase or Indemnification Claim Settlement Summary previously submitted to the Creditors' Committee; and

c.      For any settlement of a Repurchase or Indemnification Claims against any single party, which, in the aggregate, exclusive of any claim for payment of attorneys' fees, costs and expenses, and after offset of any counterclaim, are greater than $8,000,000, the Debtors will be required to file a motion with the Court requesting approval of the compromise and settlement under Bankruptcy Rule 9019;

and it is further

ORDERED that this Order shall not obligate or require Debtors to compromise any Repurchase or Indemnification Claim it may have with respect to a Residential Mortgage Loan, nor shall this Order preclude Debtors from settling or compromising any Repurchase or Indemnification Claim upon further application to the Court; and it is further

ORDERED that, the Debtors are authorized to execute such documents or other instruments as may be necessary to compromise its Repurchase or Indemnification Claim with respect to Residential Mortgage Loans in accordance with this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: August __, 2009
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE