UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
In re                                                          :        Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :        08-13555 (JMP)
                                                               :
            Debtors.                                :        (Jointly Administered)
                                                               :
------------------------------------------------------------------x

ORDER PURSUANT TO SECTIONS
105 AND 364 OF THE BANKRUPTCY CODE AUTHORIZING
THE DEBTORS TO GRANT FIRST PRIORITY LIENS IN COLLATERAL
POSTED IN CONNECTION WITH CERTAIN HEDGING TRANSACTIONS

Upon the motion, dated June 9, 2009 (the "Motion"),[1] of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 364 of the Bankruptcy Code, for authorization to grant first priority liens in cash, securities, and other collateral (the "Collateral") that is posted in connection with hedging transactions (the "Residential Hedging Transactions")[2] the Debtors will enter through certain futures, prime brokerage, and over the counter transaction related accounts (together, the "Accounts") that the Debtors will open pursuant to the terms of those certain Institutional Futures Account Agreements, Prime Brokerage Account Agreements, and other related agreements (together, the "Agreements"), all as more fully described in the Motion; and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[2] The Residential Hedging Transactions will include but are not limited to (i) futures transactions, which are typically contracts obligating the holder of the contract to either make or take delivery of a financial instrument at a predetermined future date and price, (ii) over the counter transactions such as swap agreements and forward (i.e. to be settled at a specified point of time in the future) rate agreements and (iii) Mortgage TBAs (To Be Announced), which are forward mortgage-backed securities trades using pass-through securities issued by Freddie Mac, Fannie Mae and Ginnie Mae.

the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors, subject to the terms of the applicable Agreements and Residential Hedging Transactions, are hereby authorized to post Collateral to the Accounts to be established with the Broker Dealers under the terms and conditions set forth in the Agreements; and it is further

ORDERED that the Debtors are authorized to supplement or remove Collateral from the Accounts, as required by the applicable Agreement, Residential Hedging Transaction, or the related agreement to the Residential Hedging Transaction; and it is further

ORDERED that the Debtors are authorized to grant the Broker Dealers first priority liens in the Collateral; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the Agreements, in the manner set forth herein, including, but not limited to the delivery of the Collateral and granting of first priority liens on the Collateral; and it is further

ORDERED that in the event a Broker Dealer becomes entitled to enforce its rights under the Agreements, the automatic stay under section 362(a) of the Bankruptcy Code in the Debtor's chapter 11 case is hereby modified solely to the extent necessary to permit that Broker Dealer to enforce its rights under the Agreement, provided, however, that the provisions of the section 362(a) of the Bankruptcy Code, including, without limitation, those provisions prohibiting any act to collect, assess, or recover a claim that arose before the commencement of the Debtor's chapter 11 case from the Debtor's estate and/or assets or property of the Debtor (as defined in section 541 of the Bankruptcy Code) shall remain in full force and effect; and it is further

ORDERED that the Debtors' entry into Residential Hedging Transactions shall be subject to the following (the "Residential Hedging Protocol"):

- All proposed Residential Hedging Transactions will be reviewed by an approval committee (the "Residential Hedging Transactions Committee") established by the Debtors. The financial advisors to the Creditors' Committee (the "Advisors") will receive notice of, and may

attend, all meetings of the Hedging Transactions Committee (each a "Residential Hedging Transactions Meeting") and will have access to the personnel of the Debtors involved with the proposed Residential Hedging Transactions;

- With respect to all proposed Residential Hedging Transactions, the Debtors will provide (i) e-mail notification to the Advisors of any Residential Hedging Transactions Meeting regarding the approval of a Residential Hedging Transaction not later than one (1) Business Day[3] prior to such meeting, which e-mail must contain the material terms of the proposed Residential Hedging Transaction and (ii) an information package (the "Information Package") as soon as practicable but not less than three (3) Business Days prior to the Residential Hedging Transaction Meeting that will consist of (a) applicable legal documentation for the Residential Loan, (b) valuation statements, (c) valuation inputs and assumptions used by the Residential Hedging Transactions Committee that relate to and were used to determine the value of the Residential Loan and adjustments thereto, and (d) appropriate and customary risk measurement information calculated using standard market conventions;

- Informal discussions among the Debtors and the Advisors relative to a proposed Residential Hedging Transaction for which the transaction is greater than $25,000,000 will commence no later than five (5) Business Days prior to the relevant Residential Hedging Transaction Meeting;

- The Debtors may enter into a proposed Residential Hedging Transaction for which the transaction is greater than $25,000,000 only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before the Residential Hedging Transaction is scheduled to be executed or two (2) Business Days after a Residential Hedging Transactions Meeting during which such Residential Hedging Transaction was approved or (ii) upon Court approval;

- The Debtors may enter into a proposed Residential Hedging Transaction for which the transaction is $25,000,000 or less only (i) if (a) the Advisors receive e-mail notification of the Residential Hedging Transaction, which will include the material terms of the approved Residential Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the Residential Hedging Transactions Meeting during which the proposed Residential Hedging Transaction was discussed and approved, and (c) the financial advisors to the

---

[3] A "Business Day" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

- Creditors' Committee do not object within six (6) business hours, herein defined as the hours between 9:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) on Business Days, of and after receipt of e-mail notification of the Residential Hedging Transactions Committee's approval of such Residential Hedging Transaction or (ii) upon Court approval;

- After the approval of a proposed Residential Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if the Debtors' original strategy is changed or determined to be inappropriate with respect to a particular Residential Hedging Transaction, the Advisors may commence a review of such Residential Hedging Transaction at the Residential Hedging Transaction Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of Residential Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such Residential Hedging Transactions, and (iii) an estimate of the mark to market value of the receivables from the corresponding open trades at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to the Hedging Protocol and may seek to amend the Hedging Protocol upon Court approval; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Residential Loans; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment consummated in the manner set forth herein.

Dated: New York, New York
July 16, 2009

*s/ James M. Peck*
UNITED STATES BANKRUPTCY JUDGE