Hearing Date and Time:  August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5040
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                   :
**In re**                                                          :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
                                                                   :
                            **Debtors.**              :    **(Jointly Administered)**
                                                                   :
------------------------------------------------------------------x

**NOTICE OF LBHI'S MOTION, PURSUANT TO SECTIONS 105(A)**
**AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 6004, FOR AUTHORIZATION TO ENTER INTO (I) AN**
**AMENDED REPURCHASE AGREEMENT WITH AURORA BANK FSB**
**AND (II) A FINANCING FACILITY WITH AURORA LOAN SERVICES, LLC**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI," together with its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession, the "Debtors" and, collectively with their

non-debtor affiliates, "Lehman") for authorization, but not direction, to enter into (i) an amended

master repurchase agreement with its indirect wholly owned non-debtor subsidiary, Aurora Bank

FSB (the "Bank") and (ii) a secured bridge financing facility with the Bank's wholly owned

subsidiary, Aurora Loan Services, LLC, all as more fully described in the Motion, will be held

before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court"), on **August 5, 2009 at 10:00 a.m.**

**(Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Alfredo R. Perez, Esq. and Robert L. Messineo, Esq., attorneys for the Debtors;

(iii) the Office of the United States Trustee for the Southern District of New York (the "U.S.

Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-

Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy

Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New

York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck,

Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and

(v) any person or entity with a particularized interest in the Motion, so as to be so filed and

received by no later than **July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection

Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 16, 2009
      New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5040
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                        :

**In re**                                    :      **Chapter 11 Case No.**
                                          :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**
                                          :

                      **Debtors.**      :      **(Jointly Administered)**
                                          :
-------------------------------------------------------------------x

**LBHI'S MOTION, PURSUANT TO SECTIONS 105(A)**
**AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 6004, FOR AUTHORIZATION TO ENTER INTO (I) AN**
**AMENDED REPURCHASE AGREEMENT WITH AURORA BANK FSB**
**AND (II) A FINANCING FACILITY WITH AURORA LOAN SERVICES, LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

**Preliminary Statement**

        1.      LBHI seeks authorization to take certain actions to provide its indirect

wholly-owned non-debtor subsidiary Aurora Bank FSB f/k/a Lehman Brothers Bank, FSB (the

"Bank" or "FSB") access to liquidity that may be needed to fund the Bank's brokered certificate

of deposit obligations, a substantial portion of which will mature and become due in mid-August

2009 (the "Deposit Obligations").  Due to the regulatory restrictions on the Bank's operations,

absent a waiver from the Federal Deposit Insurance Corporation (the "FDIC") authorizing the

Bank to issue new brokered certificates of deposit, the Bank may be unable to satisfy all of its

Deposit Obligations.  If the Bank is unable to satisfy all of its Deposit Obligations, LBHI and the

Bank's management believe that the Bank's operations will be subjected to further regulatory

restrictions, including a possible seizure of the Bank and the appointment of a receiver.  To avoid

such possible adverse consequences to its business, the Bank must begin to take precautionary

actions to arrange alternative sources of funding for its Deposit Obligations, which are expected

to aggregate approximately $940 million from July 2009 through December 2009, of which

approximately $550 million will become due and payable in August 2009.

    2.   Accordingly, to assist the Bank with its current liquidity needs, LBHI

seeks authorization to (i) amend the master repurchase agreement with the Bank approved by this

Court on March 13, 2009 [Docket No. 3104] to provide the Bank with up to $450 million in

liquidity and (ii) to enter into a bridge financing facility with the Bank's wholly owned loan

servicing subsidiary, Aurora Loan Services, LLC ("Aurora"), pursuant to which LBHI will

provide Aurora with up to $500 million in short-term secured financing.  The proposed actions

are necessary to provide the Bank access to the liquidity that it needs to satisfy its upcoming

Deposit Obligations so that LBHI can continue to preserve the opportunity to realize the value of

its equity interest and prior investments in the Bank.  As the Court is aware, with LBHI's

assistance, the Bank recently submitted a business plan to the Office of Thrift Supervision (the

"OTS," together with the FDIC, the "Regulators").  Subject to regulatory approval and the

satisfaction of certain capital requirements that may be achieved through subsequent agreements

                    2

currently being considered by LBHI, including a settlement of the Bank's claim in respect of the

Master Forward Agreement between LBHI and the Bank, the business plan contemplates that the

Bank will be able to resume normal business operations through diversified funding sources,

which would include the issuance of brokered certificates of deposit and retail deposits, without

the need for further capital support from LBHI.  If the Bank is unable to satisfy its upcoming

Deposit Obligations, in addition to the further regulatory restrictions that may be imposed on the

Bank's operations, it is likely that a business plan will not be approved and LBHI's ability to

recover over time the value of its equity interest and investments in the Bank as well as in its

affiliate, Woodlands Commercial Bank, will be jeopardized or delayed, if not completely lost.

### **Background**

3.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

4.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

6.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

7.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

8.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

9.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Relief Requested

10.     By this Motion, LBHI seeks authorization, but not direction, pursuant to

sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(h), to (i) enter

into an amended repurchase agreement with the Bank (the "Amended Repurchase Agreement")

under which LBHI will purchase from the Bank a portfolio of residential and, at the option of

LBHI, commercial mortgage loans for up to an aggregate amount of $450 million in exchange

for the Bank's agreement to repurchase those loans on a date certain and for the purchase price

paid by LBHI plus an applicable spread, and (ii) to enter into a bridge financing facility (the

"Financing Facility") with Aurora pursuant to which LBHI will finance certain of Aurora's

advance obligations up to an aggregate amount of $500 million in exchange for interest at market

rate and a first priority security interest in Aurora's advance receivables.[1]  LBHI believes that the

cash that will be made available to the Bank under the Amended Repurchase Agreement and the

Financing Facility will enable the Bank to satisfy its Deposit Obligations, provide a bridge to

diversified sources of funding for the Bank's operations, and allow the Bank to continue to

operate its business without disruption.  Given the exigency of the circumstances and to avoid

irreparable harm to its estate, LBHI further requests that the Court waive the requirements of

Bankruptcy Rule 6004(h) and direct that the order granting the relief requested herein be

effective immediately.  As set forth more fully below, LBHI's decision to enter into the

Amended Repurchase Agreement and the Financing Facility represents a reasonable exercise of

its business judgment and should be approved.

### The Proposed Actions to Support the Bank's Liquidity

The PCA

   11. In response to the diminished capital level reported in the Bank's

December 31, 2008 Thrift Financial Report, on February 4, 2009, the OTS issued a Prompt

Corrective Action directive (the "PCA") requiring the Bank to (i) achieve the "adequate" capital

levels required under the applicable regulations by February 28, 2009 and (ii) to demonstrate

---

[1] The Amended Repurchase Agreement and the Financing Facility remain subject to regulatory approval
by the Office of Thrift Supervision.

how it would thereafter maintain those levels, including by virtue of the support from its holding company, LBHI, which would be available for this purpose.  The PCA directive imposes serious restrictions on the Bank's operations, including, most significantly, prohibiting the Bank from issuing brokered certificates of deposit, which was the primary source of funding for the Bank's operations, as well as restrictions on issuing new loans and conducting new business without the approval of the OTS.  While the Bank's total risk-based capital ratio exceeded 10% (the regulatory definition of "well-capitalized") as of March 31, 2009, the PCA directive remains in effect until it is terminated by the OTS.  The capital maintenance restrictions in the PCA and a separate Consent Order to Cease and Desist, dated January 26, 2009, will cause the Bank to be considered only "adequately capitalized" until they are lifted by the OTS, and, therefore, the Bank continues to be prohibited from issuing brokered certificates of deposit until the PCA is terminated.  Alternatively, the Bank could issue brokered certificates of deposit again with a waiver from the FDIC, which has been requested but has not been acted upon as of the date of this Motion.

<u>The Business Plan</u>

12.    On April 29, 2009, the Bank, with LBHI's support, submitted a business plan (the "<u>Business Plan</u>") to the OTS that is premised on the Bank maintaining a "well-capitalized" status under the applicable regulations and, based on such status, pursuing a strategy under which, among other things, the Bank recommences the issuance of brokered certificates of deposit to fund its operations.  The Business Plan contemplates a long-term business strategy for the Bank through which LBHI will recover the value of its equity interest and prior investments in the Bank.  Because, however, the Bank has not been authorized to issue brokered certificates of deposit, the Business Plan will need to be amended and resubmitted to the OTS for approval

once the Bank has received or believes it likely will be able to receive authorization from its

Regulators to issue brokered certificates of deposit.

The Deposit Obligations

13.     Prior to the issuance of the PCA, the Bank historically funded its

operations through the issuance of brokered certificates of deposit.  In the two years ending on

December 31, 2008, the Bank issued approximately $5 billion of brokered certificates of deposit

and funded maturities of approximately $12 billion during that period.  This has left the Bank

with a balance of approximately $5.1 billion in brokered certificates of deposit as of December

31, 2008.  During August 2009, approximately $550 million of the Bank's repayment obligations

on its brokered certificates of deposit will become due.  Prior to the regulatory restrictions

imposed on the Bank's operations, the Bank would ordinarily "rollover" or issue new certificates

of deposit to finance its Deposit Obligations.  However, because the Bank currently lacks access

to the brokered certificate of deposit market under the restrictions imposed by the PCA, it must

make alternative arrangements for financing in the event that the FDIC does not issue a timely

waiver.

14.     If the Bank is unable to meet all of its Deposit Obligations, LBHI and the

Bank's management believe that the OTS may not approve an amended Business Plan, but

instead, may impose further restrictions on the Bank's operations, including a possible seizure of

the Bank and the appointment of a receiver.  In addition, LBHI and the Bank's management

believe that it is unlikely that the waiver from the FDIC will be granted prior to August 2009,

and if the Bank is unable to satisfy all of its Deposit Obligations, such waiver may never be

forthcoming.  To avoid any risk or delay to LBHI's recovery of the Bank's value, LBHI has

determined to enter into the Amended Repurchase Agreement and the Financing Facility, both of

which are on market terms and adequately protect LBHI's cash investments, to provide the Bank temporary access to the liquidity that the Bank needs to satisfy all of its Deposit Obligations and avoid regulatory sanctions.

The Amended Repurchase Agreement

15.      On March 13, 2009, this Court granted *LBHI's Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, for Authorization to Enter Into Master Repurchase Agreement with Lehman Brothers Bank* [Docket No. 3074] (the "Repurchase Agreement Motion").[2]  As explained in the Repurchase Agreement Motion, the Bank's wholly-owned mortgage servicing subsidiary, Aurora, has heavy cash needs during the middle part of each month on account of its monthly advance obligations.  More specifically, in connection with its mortgage servicing business, Aurora is a party to various mortgage servicing agreements, pursuant to which Aurora has agreed under certain conditions to advance monthly payments of principal and interest due on residential mortgages that Aurora services for the benefit of Aurora's counterparties (the "Advance Obligations").  The advances are typically made prior to Aurora's receipt of monthly mortgage payments from borrowers, thereby creating a receivable for the benefit of Aurora (the "Advance Receivables").  Because the Bank lacked access to the funding sources that it would normally rely upon to finance its mortgage servicing business, there was a concern that Aurora would be in default of its monthly Advance Obligations, and, therefore, was risking precipitous actions by Aurora's counterparties that could threaten the value of the Bank's enterprise and cause the Regulators to impose further restrictions on the Bank's operations.  To avoid such adverse consequences, LBHI determined to enter into

---

[2] The Repurchase Agreement Motion is incorporated by reference herein.

the repurchase agreement with the Bank to provide the Bank the temporary liquidity that the Bank needed to finance Aurora's Advance Obligations.

16.    Generally, the master repurchase agreement provides that, from time to time, LBHI agrees to purchase a portfolio of the Bank's mortgage loans for a purchase price of 50% of the value of the loans determined by LBHI in exchange for the Bank's agreement to repurchase those loans within four business days from LBHI for the purchase price paid by LBHI plus an applicable spread.  At no time may the aggregate outstanding purchase price for all purchased loans exceed $325 million.

17.    Because of the pending maturity of up to $550 million in brokered certificates of deposit in August 2009, the Bank requires access to additional cash.  To minimize the cost associated with protecting the Bank, the Bank and LBHI have agreed to build upon their previously negotiated and Court-approved repurchase agreement with certain modifications to accommodate the Bank's current needs.  Specifically, LBHI will now pay a purchase price equal to 75% of the value of the loans as determined by LBHI -- an increase from the current 50% value applied under the repurchase agreement.  LBHI and the Bank have also agreed to increase the aggregate outstanding purchase price for all purchased loans from up to $325 million to up to $450 million.  Additionally, LBHI and the Bank have agreed to include, at the option of LBHI, commercial real estate loans in the repurchase transactions.  The current repurchase agreement only contemplates the purchase and sale of residential mortgage loans.  Although the funds made available under the Amended Repurchase Agreement will continue to be available to satisfy Aurora's Advance Obligations and the Bank's other ordinary course expenses, it is expected that the funds will primarily be applied to the Deposit Obligations.

18.     The Amended Repurchase Agreement is expected to include the following

salient terms,[3] which are in blackline format to reflect the material changes from the repurchase

agreement that was approved by the Court on March 13, 2009:[4]

- The Transactions.  From time to time, LBHI and the Bank agree that, upon the Bank satisfying certain conditions, the Bank may sell to LBHI certain Eligible Mortgage Loans[5] (the "Transactions") in exchange for an amount paid by LBHI, with a simultaneous agreement by the Bank to re-purchase from LBHI such Eligible Mortgage Loans at a date certain for the purchase price paid by LBHI plus an incremental amount as described below; unless a longer period is agreed to by LBHI, the repurchase is expected to occur within four business days, although the Bank has the option to renew so long as it continues to satisfy the conditions precedent;

- Valuation of Eligible Mortgage Loans.  Before any Transaction is entered into, the Bank must identify to LBHI a portfolio of Eligible Mortgage Loans to be subject to a Transaction; the Purchase Price to be paid by LBHI for a Transaction will be 50%**75%** of the value of the Purchased Loan as determined by LBHI in its discretion;

- Term.  Upon satisfying applicable conditions, the Bank is entitled to enter into Transactions during a period of 180 days following the execution of the Amended Repurchase Agreement and no Repurchase Date shall be later than such 180th day unless otherwise agreed to by the parties;

- Repurchase Price.  Upon a repurchase by the Bank of the particular Purchased Mortgage Loan, LBHI shall receive the Purchase Price that it paid for the Purchased Mortgage Loan plus an amount equivalent to the interest that would accrue at a per annum rate equal to the LIBOR rate plus 6% on a 360-day year basis for the actual number of days during the period commencing on the Purchase Date and ending on the Repurchase Date;

---

[3] The parties are working to finalize the Amended Repurchase Agreement.  The Amended Repurchase Agreement will be filed with the Court prior to the hearing on this Motion.

[4] To the extent there is an inconsistency between the language of this Motion and the Amended Repurchase Agreement, the terms of the Amended Repurchase Agreement (as finalized) shall control.

[5] Capitalized terms not defined herein shall have the meanings ascribed to them in the Amended Repurchase Agreement.

- Maximum Purchase Price.  At no time may the aggregate outstanding Purchase Price for all Mortgage Loans purchased by LBHI exceed $325,000,000 **$450,000,000**;

- Security Interest.  In the event the Transactions are deemed to be loans, the Bank pledges to LBHI, as security for the performance of the Bank's obligations, a fully perfected first priority security interest in the Purchased Mortgaged Loans, all servicing rights related to the Purchased Mortgage Loans and other related assets; prior to any purchase, the original mortgage notes for an Eligible Mortgage Loan must be delivered to a third party custodian for LBHI's benefit;

- Margin Account Maintenance.  LBHI shall determine the Market Value of the Purchased Mortgage Loans at intervals determined in its discretion.  If at any time, the aggregate Asset Value of all Purchased Mortgage Loans is less than 200 **133.33%** of the aggregate outstanding Purchase Price, i.e., if the aggregate value of LBHI's collateral falls below the aggregate Purchase Price of the loans purchased by LBHI, LBHI may require the Bank to transfer cash or additional Eligible Mortgage Loans in its sole discretion to restore the aggregate Asset Value to or above 200 **133.33%** of the aggregate outstanding Purchase Price;

- Remedies.  If an Event of Default occurs, LBHI may exercise certain rights and remedies immediately without notice to the Bank, including obtaining physical possession of all files related to the Purchased Mortgage Loans and liquidating the Purchased Mortgage Loans;

- Indemnification.  The Bank agrees to indemnify LBHI and its affiliates and their respective direct and indirect partners, shareholders, members, officers, directors, employees, agents and advisors for any Costs incurred relating to or arising out of this Agreement, any other Facility Document or any transaction contemplated by the Agreement.

The Bridge Loan Facility

19.    In addition to the Amended Repurchase Agreement, LBHI has determined to enter into the Financing Facility with Aurora.   As explained above, each month Aurora has heavy cash demands to satisfy its Advance Obligations.  Those cash demands are temporary as Aurora is typically reimbursed at the end of each month through the payment of the amounts advanced by the underlying borrowers.

20.     To provide the Bank access to the temporary liquidity that it needs, LBHI and Aurora are currently negotiating an agreement to finance Aurora's Advance Receivables. Generally, pursuant to the Financing Facility as currently contemplated, LBHI will issue a revolving loan facility to Aurora in exchange for interest at LIBOR + 5% and a first priority perfected security interest in the Advance Receivables to be held by LBHI.[6]  The maximum loan balance may not exceed $500 million.  The funds that will be made available to Aurora will be available for the Bank to satisfy the Bank's Deposit Obligations and will allow LBHI to continue to preserve the value of the Bank for the benefit of its creditors.  At the same time, LBHI will realize a reasonable rate of return for its short-term investment.

21.     The Financing Facility, as currently contemplated, includes the following salient terms:[7]

- Structure.  LBHI will issue a revolving loan facility to Aurora up to a maximum amount of $500,000,000 with a floating interest rate of LIBOR + 5% with interest to be payable monthly in arrears.

- Collateral Coverage.  LBHI will hold a first priority perfected lien on the Advance Receivables owned by Aurora.  At the close of business on each Funding Date, the Collateral Value, equal to the product of the outstanding Eligible Advance Receivables and an applicable Discount Factor, shall be greater than or equal to the outstanding loan balance.

---

[6] As the parties continue to negotiate and finalize the terms of the Financing Facility, there is a possibility that the structure of the transaction could be enhanced through the establishment of a special purpose vehicle that would purchase Aurora's Advance Receivables and deposit them into a trust or other entity (the "Issuer").  The Issuer would then issue notes to LBHI in exchange for interest and a first priority security interest in the Advance Receivables.  The economics of the transaction (as described in this Motion), however, will not change.  LBHI will file the Financing Facility prior to the hearing on the Motion.

[7] To the extent there is an inconsistency between the language of this Motion and the Financing Facility, the terms of the Financing Facility (as finalized) shall control.

- Reserve Account.  Aurora will fund at the closing the greater of (i) 2% of the outstanding principal balance of the loan and (ii) 4 month interest coverage into a reserve account.

- Maturity Date.  6 months after the Funding Period has ended with the ability to extend for an additional six months at Aurora's option.

### Sound Business Reasons Support LBHI's
### Decision to Take the Capital Support Actions

22.    LBHI seeks authorization, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to enter into the Amended Repurchase Agreement and the Financing Facility to preserve the value of the Bank for the benefit of LBHI's creditors.   As explained below, not only do the Amended Repurchase Agreement and the Financing Facility continue to preserve the opportunity for LBHI to realize the value of its equity interest and prior investments in the Bank, but both agreements also represent a reasonable short term investment of LBHI's existing cash. Accordingly, the Motion should be granted.

23.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor.  *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

24.      It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

25.      There are ample business justifications to support LBHI's actions to support the Bank's capital. First and foremost, by entering into the Amended Repurchase Agreement and the Financing Facility, the Bank will have access to the liquidity needed to help satisfy its Deposit Obligations and avoid adverse consequences to its business, including possible regulatory action. Without a waiver from the FDIC, the Bank is at risk of defaulting on its Deposit Obligations. Such defaults could result in adverse action by the Bank's Regulators, including the OTS's refusal to approve an amended Business Plan and a possible seizure of the Bank and appointment of a receiver. Thus, unless sufficient cash is made available to the Bank, the Regulators' actions would not only delay, but could destroy the opportunity to recover LBHI's prior investments and equity interest in the Bank, which was recently valued at approximately $600 million. It would be a gross waste of LBHI's prior efforts[8] and

---

[8] As the Court is aware, to preserve the value of the Bank, the Debtors have taken a series of actions in partial satisfaction of the Bank's proof of claim filed on January 5, 2009, including (i) LBHI's entry into two settlement agreements with Aurora that transferred to the Bank and Aurora ownership of approximately $99 million in excess servicing fees; (ii) capital contributions of $9.838 million on

unreasonable as a matter of business judgment to, at this juncture, put at risk approval of an

amended Business Plan from the OTS, a waiver from the FDIC to issue brokered certificates of

deposit or to allow a seizure of the Bank by its Regulators.

          26.      In addition, LBHI's entry into the Amended Repurchase Agreement

represents a reasonable exercise of its business judgment as it is on substantially the same terms

and conditions as the master repurchase agreement approved by this Court on March 13, 2009

[Docket No. 3104].  The Amended Repurchase Agreement represents an arm's-length

transaction, is on market terms, and continues to protect LBHI's cash investment through

LBHI's custody of and interest in a portfolio of residential and, at the option of LBHI,

commercial mortgage loans that will be purchased by LBHI (and repurchased within a few days

by the Bank).  LBHI's investment will be secured by (i) LBHI's custody and ownership of the

underlying loans against which LBHI could exercise remedies in the event of the Bank's default,

and (ii) a security interest in those loans in the event the transaction is deemed to be a loan and

not a purchase.  LBHI is also receiving interest at a market rate for the investment of its cash.

The short term of the Amended Repurchase Agreement reduces risks that may be associated with

the transaction.  Lastly, to the extent that the Bank defaults on the Amended Repurchase

Agreement, LBHI would be permitted to immediately exercise its remedies and minimize its

losses.[9]

---

February 27, 2009, $15 million on March 31, 2009, and $50 million on June 30, 2009; (iii) the transfer of master servicing rights to the Bank and Aurora valued at approximately $226 million; and (iv) the termination of certain loan commitments totaling $1.357 billion.

[9] In exercising its business judgment, LBHI has considered the potential limitations that may be placed on its remedies under the Amended Repurchase Agreement in the event that the Bank's assets are seized by the Regulators and a receiver is appointed.  Even in that instance, LBHI believes that the exercise of its remedies would not be prohibited or otherwise stayed by applicable law.  *See* 12 U.S.C. § 1821(e)(8)(A).

27.     Similarly, LBHI's entry into the Financing Facility represents a sound exercise of its business judgment.  The Financing Facility is being negotiated at arm's-length, is on market terms, and protects LBHI's advances with a first priority perfected lien in the Account Receivables.  In addition, the requirements for appropriate collateral coverage, the establishment of a reserve account, and the short term of the facility further protect LBHI's interest and reduce the risks that may be associated with the transaction.  Lastly, LBHI is receiving a market rate of interest for its investment.

28.     LBHI further submits that the terms and conditions of the Amended Repurchase Agreement and the Financing Facility provide its estate with greater security than that required for a transfer of cash to a non-debtor subsidiary by the existing cash management order.  On November 6, 2008, this Court approved the Debtors' cash management order authorizing the Debtors to transfer cash to non-Debtor subsidiaries, provided that the Debtors exercise commercially reasonable efforts to obtain a note accruing at a market rate of interest and a valid perfected junior lien in exchange for the transfer of cash.  *See In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 6, 2008) [Docket No. 1416].  If the Debtors are unable to obtain a note and junior lien or in the event the transfer exceeds certain minimum amounts, the Debtors must seek the approval of the Creditors' Committee prior to making the transfer.  Under the terms of the Amended Repurchase Agreement, LBHI will receive both custody and ownership of the loans as well as an enforceable right to liquidate the Purchased Mortgage Loans in the event the Bank does not satisfy its obligation to repurchase all of the Purchased Mortgage Loans within the applicable period.  Similarly, under the Financing Agreement, LBHI will receive interest accruing at a market rate and a first priority security

interest in the Advance Receivables.  Accordingly, the minimum terms of the cash management order are satisfied.

29.    For these reasons, LBHI's entry into the Amended Repurchase Agreement and the Financing Facility is in the best interests of its estate and creditors and represents a reasonable exercise of its business judgment.  As such, the relief requested in this Motion should be granted.

### Notice

30.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

31.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  July 16, 2009
        New York, New York


                                    /s/ Alfredo R. Pérez
                                    Alfredo R. Pérez

                                    WEIL, GOTSHAL & MANGES LLP
                                    700 Louisiana, Suite 1600
                                    Houston, Texas 77002
                                    Telephone: (713) 546-5000
                                    Facsimile: (713) 224-9511

                                    Attorneys for Debtors
                                    and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                          :
In re                                                     :          **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,              :          **08-13555 (JMP)**
                                                          :
                         **Debtors.**                     :          **(Jointly Administered)**
                                                          :
----------------------------------------------------------------x

### ORDER GRANTING LBHI'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004, FOR AUTHORIZATION TO ENTER INTO (I) AN AMENDED REPURCHASE AGREEMENT WITH AURORA BANK FSB AND (II) A FINANCING FACILITY WITH AURORA LOAN SERVICES, LLC

Upon the motion, dated July 16, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI"), pursuant to sections 105(a) and 363 of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for authorization to enter into (i) an amended master repurchase agreement

(the "Amended Repurchase Agreement") with its indirect wholly owned non-debtor subsidiary,

Aurora Bank FSB (the "Bank") and (ii) a secured bridge financing facility with the Bank's

wholly owned subsidiary, Aurora Loan Services, LLC (the "Financing Facility"), all as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order

M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

the amended order entered February 13, 2009 governing case management and administrative

procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New

York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for

the Southern District of New York; and (vi) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estate and

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy

Code, LBHI is authorized, but not required, to enter into the Amended Repurchase Agreement

substantially on the terms and conditions identified in the Motion; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy

Code, LBHI is authorized, but not required, to enter into the Financing Facility substantially on

the terms and conditions identified in the Motion; and it is further

ORDERED that LBHI is authorized to take all further actions that may be

necessary or required for LBHI's entry into and performance of the Amended Repurchase

Agreement and the Financing Facility; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and this

Order shall be effective immediately upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated:  August __, 2009
       New York, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE