**Hearing Date and Time: August 5, 2009 at 10:00 a.m.**
**Objection Deadline: July 31, 2009 at 4:00 p.m.**

Paul J. Ricotta, Esq.
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, PC
Chrysler Center
666 Third Avenue
New York, NY 10017
Telephone: (212) 935-3000
Facsimile: (212) 983-3115

Daniel S. Bleck, Esq.
Adrienne K. Walker, Esq.
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, PC
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

*Attorneys for Wells Fargo Bank,*
*National Association, as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|  | x |
|---|---|
| **In re** | : **Chapter 11** |
|  | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : **Case No. 08-13555 (JMP)** |
| Debtors. | : **Jointly Administered** |
|  | x |

---------------------------------------------------------------

### MOTION FOR AN ORDER COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR REJECT AN EXECUTORY CONTRACT PURSUANT TO SECTIONS 105(d)(2)(A) AND 365(d)(2) OF THE BANKRUPTCY CODE

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

　　　　Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank

Indiana, N.A., in its capacity as Indenture Trustee under the Indenture defined below (the

4664120v.3

"Indenture Trustee"), by its undersigned attorneys, submits this motion (the "Motion"), for entry

of an order compelling Lehman Brothers Special Financing Inc. ("LBSF") to assume or reject a

certain Reserve Fund Agreement, dated September 16, 2002 (the "Reserve Fund Agreement"),

by and among the Indenture Trustee, LBSF and The Estelle Peabody Memorial Home of the

Synod of Lincoln Trails of the Presbyterian Church (USA) ("Peabody").[1]  A true and accurate

copy of the Reserve Fund Agreement is attached hereto at **Exhibit A**.  In support of this Motion,

the Indenture Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Prior to the commencement of its bankruptcy case, LBSF entered into a (i)

Reserve Fund Agreement, and (ii) Master Pledge Agreement between the Indenture Trustee and

LBSF, dated September 16, 2002, for the benefit of the Indenture Trustee (the "Master Pledge

Agreement").  By this Motion, the Indenture Trustee requests an order of this Court directing

LBSF to assume or reject the Reserve Fund Agreement within seven (7) days of entry of an order

allowing this Motion.  Absent the relief requested herein, the Indenture Trustee will be in the

untenable position of not being able to access the Reserve Securities to make the required Debt

Service Payments to the holders of the Bonds (defined below).

2.      The Indenture Trustee has taken all reasonable steps to avoid the necessity to file

this Motion.  The Indenture Trustee and LBSF worked cooperatively to resolve this matter,

which would have provided for the consensual termination of the Reserve Fund Agreement.

Peabody, however, would not consent to the termination of the Reserve Fund Agreement on

terms satisfactory to the Debtors and the Indenture Trustee.  Accordingly, the Indenture Trustee

has been left with no alternative but to file this Motion.

---

[1]   Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the
Reserve Fund Agreement.

4664120v.3

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicates for the relief sought herein are sections 105(d)(2)(A) and 365(d)(2) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

5.     Commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries, including LBSF (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. LBSF filed its voluntary chapter 11 petition on October 3, 2008 (the "Petition Date").  The Debtors have continued to manage their properties and operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  By order of the Court, the Debtors' chapter 11 cases are being jointly administered for procedural purposes only.

6.     The Debtors sold their U.S. and Canadian Capital Markets and Investment Banking businesses, including the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and Lehman Brothers Inc.'s business as a futures commission merchant to Barclays Capital Inc. ("Barclays").  The sale to Barclays closed on September 22, 2008.  The Reserve Fund Agreement was not transferred to Barclays and has not otherwise been assumed and assigned to a third party.

3

**Agreements with LBSF**

7.      The Indenture Trustee is a party to that certain Bond Trust Indenture, dated as of August 15, 2002 (the "Indenture"), by and between the Indenture Trustee and the Town of North Manchester, Indiana (the "Issuer").  In connection with the Indenture, the Issuer issued the $46,900,000 Town of North Manchester, Indiana Revenue Bonds (Peabody Retirement Community Project), Series 2002 (the "Bonds").  The proceeds of the Bonds were loaned to Peabody pursuant to a Loan Agreement, dated as of August 15, 2002, between the Issuer and Peabody.  In connection with the issuance of the Bonds, a portion of the proceeds were deposited into a debt service reserve fund (the "DSRF"), as set forth in the Indenture.  The DSRF is available for, among other things, payments owing to the holders of the Bonds.

8.      At the direction of Peabody, the Indenture Trustee entered into the Reserve Fund Agreement.  Pursuant to the Reserve Fund Agreement, the Indenture Trustee purchased Reserve Securities from LBSF, referenced at Schedule 1 of the Reserve Fund Agreement.  The Reserve Fund Agreement provides the terms and conditions by which the Indenture Trustee may sell the Reserve Securities if required to make a Debt Service Payment to holders of the Bonds from the DSRF.  Notably, the Indenture Trustee must liquidate the Reserve Securities through LBSF. Upon receipt of a Sale Notice, LBSF is required to take certain actions to effectuate the sale of Reserve Securities, including, among others, consultation with the Indenture Trustee regarding bids for the Reserve Securities, payment of the Guaranteed Payment to the Indenture Trustee or purchase of the Reserve Securities at the Liquidation Price.   Given the bankruptcy, the Indenture Trustee has not issued a Sale Notice and all of the Reserve Securities remain in the possession and control of the Indenture Trustee. But for LBSF's bankruptcy, the Indenture Trustee would be authorized to issue a Sale Notice and LBSF would be required to liquidate the Reserve Securities for the benefit of the Indenture Trustee

4

9.      In addition, the Reserve Fund Agreement provides the Indenture Trustee with a guaranteed rate of return on the Reserve Securities.  LBSF must pay to the Indenture Trustee the Guaranteed Payment if the bids received by LBSF in connection with any sale of the Reserve Securities are less than the Guaranteed Price.  As of June 30, 2009, however, the value of the total Reserve Securities is less than the Guaranteed Price.

10.     To secure LBSF's obligations under the Reserve Fund Agreement, LBSF entered into that certain Master Pledge Agreement.  Pursuant to the Master Pledge Agreement, LBSF granted the Indenture Trustee a first priority lien on all Collateral (as defined in the Master Pledge Agreement) transferred to the Indenture Trustee.  As provided for in the Reserve Fund Agreement and Master Pledge Agreement,  LBSF acted as both the broker and the guarantor of a minimum return on the Reserve Securities.

11.     In connection with the obligations under the Indenture, Peabody is required to, among other things, make periodic Debt Service Payments of accrued interest and principal to the Indenture Trustee, including a payment that was due and owing on July 1, 2009 (the "July 2009 Obligation").  Prior to the July 2009 Obligation, the Indenture Trustee was informed by Peabody that it would not make the required payment on account of the July 2009 Obligation.  In anticipation of Peabody's payment default, the Indenture Trustee attempted to consensually terminate the Reserve Fund Agreement as authorized by this Court's Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, dated December 16, 2008 [docket no. 2257].

12.     Although progress was made by the parties in negotiating a consensual termination agreement, ultimately Peabody refused to enter into the termination agreement with LBSF and the Indenture Trustee.  Accordingly, the Indenture Trustee is not presently able to

4664120v.3

consensually terminate the Reserve Fund Agreement with LBSF and therefore, the Indenture

Trustee has filed this Motion in order to obtain access to the Reserve Securities.

## RELIEF REQUESTED

13.      The Indenture Trustee respectfully request that the Court enter an order,

substantially in the form attached hereto as **Exhibit B**, compelling LBSF to either assume or

reject the Reserve Fund Agreement within seven (7) days of entry of an order allowing this

Motion and, to the extent LBSF fails to assume the Reserve Fund Agreement by such date,

deeming such Reserve Fund Agreement to be rejected as of such date.

## BASIS FOR THE RELIEF REQUESTED

**The Court Should Compel LBSF to
Assume or Reject the Reserve Fund Agreement**

14.      Under section 365(d)(2) of the Bankruptcy Code, a debtor generally may assume

or reject an executory contract any time before confirmation of a plan of organization.  However,

the time afforded the Debtors to evaluate the benefits for the assumption or rejection of

executory contracts is not without limits.  Section 365(d)(2) itself provides that a court may, on

the request of a party to such contract, shorten the period of time within which the debtor must

make a decision regarding whether to assume or reject such contract.  In this regard, section

365(d)(2) of the Bankruptcy Code provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume
> or reject an executory contract or unexpired lease of residential real
> property or of personal property of the debtor at any time before the
> confirmation of a plan but the court, **on the request of any party to such
> contract or lease, may order the trustee to determine within a
> specified period of time whether to assume or reject such contract or
> lease.**

11 U.S.C. § 365(d)(2) (emphasis added).

15.      Further, pursuant to section 105(d)(2) of the Bankruptcy Code, courts have

authority to enter an order compelling debtors to assume or reject executory contracts by a date

certain. 11 U.S.C. § 105(d)(2)(A) (courts have the authority to issue various kinds of orders, including an order that "sets the date by which the trustee must assume or reject an executory contract or unexpired lease").

16.    Although the general rule is that the debtor is afforded a reasonable time within which to decide whether to assume or reject an executory contract, See In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002), what constitutes reasonable time is left to the bankruptcy court's discretion, to be determined on a case by case basis in light of the broad rehabilitative purpose of chapter 11.  Theatre Holding Corp. v. Mauro, 681 F.2d 102 (2d Cir. 1982); In re Teligent, Inc., 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001).

17.    In determining whether to require a debtor to assume or reject an executory contract, the court must balance the interests of the non-debtor contracting party against the interests of the debtor and the bankruptcy estate.  In re Physician Health Corp., 262 B.R. 290, 292 (Bankr. D. Del. 2001); In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980).

18.    In balancing these interests, Courts in the Second Circuit consider the following non-exhaustive and non-exclusive factors:

> (1) the nature of the interests at stake;
>
> (2) the balance of hurt to the litigants;
>
> (3) the 'good to be achieved';
>
> (4) the safeguards afforded to the litigants;
>
> (5) 'whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary';
>
> (6) the debtor's failure or ability to satisfy post-petition obligations;

(7)  the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

(8)  the importance of the contract to the debtor's business and reorganization;

(9)  whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan;

(10)  whether there is a need for judicial determination as to whether an executory contract exists;

(11)  whether exclusivity has been terminated; and

(12)  'above all,' the purpose of Chapter 11, to permit successful rehabilitation of debtors.

See In re Adelphia Communs. Corp., 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003) (additional cases cited).  See also, In re Dana Corp., 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006) (listing various factors, including the balance of hurt to the litigants, the good to be achieved and the safeguards afforded the litigants); In re Teligent, Inc., 268 B.R. at 738; South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755 (2d Cir. 1996); In re St. Mary Hosp., 89 B.R. 503, 513 (Bankr. E.D. Pa. 1988) (a motion to compel a debtor to assume or reject an executory contract "must be resolved by weighing the nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, and the safeguards afforded those litigants"); N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 551-52 (1984) (in certain circumstances, the rights of the non-debtor party to an executory contract to know its position with respect to the debtor and the contract at issue would outweigh the need of the debtor in possession for unlimited flexibility and breathing space).

4664120v.3

19.    Applying the relevant factors in the above list supports the Indenture Trustee's request to compel LBSF to promptly assume or reject the Reserve Fund Agreement.

A.  *Interests at Stake*

20.    The balance of interests at stake weighs in favor of the Indenture Trustee.  As a result of the automatic stay, the Indenture Trustee is prohibited from terminating the Reserve Fund Agreement and liquidating the Reserve Securities until such time as LBSF chooses to assume or reject the Reserve Fund Agreement.  Further, as a liquidating entity LBSF is unable to perform under the Reserve Fund Agreement and liquidate the Reserve Securities, as required under the Reserve Fund Agreement.  Given this untenable position, the holders of the Bonds have incurred significant harm given the inability to receive payment on the July 2009 Obligations.  As opposed to the Indenture Trustee's interests, LBSF has minimal, if any, interest in the Reserve Fund Agreement.  Under the terms of the Reserve Fund Agreement LBSF would receive no cash consideration even if it was able to liquidate the Reserve Securities.  Indeed, LBSF would be required to make up a shortfall given the present value of the Reserve Securities and the requirements of the Reserve Fund Agreement.  Consequently, there is no benefit in retaining an interest in the Reserve Fund Agreement.[2]

B.  *Balance of Hurt to the Litigants and Good to be Achieved*

21.    The "balance of hurt to the litigants" tips in the Indenture Trustee's favor and the "good to be achieved," favors a prompt determination by LBSF to assume or reject the Reserve Fund Agreement.  Absent the relief requested herein, the Indenture Trustee and by extension the holders of the Bonds would be unable to liquidate the Reserve Securities and use the proceeds of

---

[2]  There may, in fact, be additional liability to LBSF to the extent it continues to fail to perform under the terms of the Reserve Fund Agreement.  The Indenture Trustee expressly reserves all rights and claims against LBSF and any third party, and nothing contained herein, or otherwise, shall be deemed a waiver of such rights and claims.

4664120v.3

the liquidated Reserve Securities to make the required Debt Service Payments on the Bonds, which is the express purpose of the Reserve Securities. This would be wholly inequitable and contrary to the spirit and goals of the Bankruptcy Code. Taunton Municipal Lighting Plant v. Enron Corp. (In re Enron Corp.), 354 B.R. 652, 660 (S.D.N.Y. 2006).

22.    LBSF, correspondingly, receives no benefit if the Reserve Fund Agreement remains in place. As acknowledged by LBSF, it cannot perform under the Reserve Fund Agreement and thus, there is no benefit, to LBSF under the Reserve Fund Agreement. Further, LBSF will suffer limited damages resulting from the rejection of the Reserve Fund Agreement, Specifically, the Indenture Trustee will have a rejection damage claim resulting from the termination of the Reserve Fund Agreement. Requiring LBSF to assume or reject the Reserve Fund Agreement achieves the greatest good by enabling the Indenture Trustee to liquidate the Reserve Securities in its possession for the benefit of the holders of the Bonds and to relieve LBSF of its post-petition obligations to perform under the Reserve Fund Agreement, which it is not in a position to do as a liquidating entity.

23.    If LBSF is not compelled to assume or reject the Reserve Fund Agreement shortly, the Indenture Trustee would be severely prejudiced and the holders of the Bonds will suffer damages, thereby increasing the liability to LBSF and its estate. Therefore, it is imperative that the Indenture Trustee obtain some certainty regarding the intentions of LBSF with respect to the Reserve Fund Agreement. See In re Beker Indus. Corp., 64 B.R. 890, 898 (Bankr. S.D.N.Y. 1986) (particular weight should be given to the non-debtor's request to compel assumption or rejection when the "delay adds uncertainty and threatens the obligee with additional post-petition costs").

4664120v.3

  C.  *LBSF Cannot Satisfy its Post-Petition Obligations and the Reserve Fund*
     *Agreement has no Importance to LBSF's business and reorganization.*

  24.  LBSF began its liquidation nearly 10 months ago in October of 2008. Since that

time, LBSF has failed to perform its obligations under the Reserve Fund Agreement. As a result

of the pending bankruptcy case, it cannot perform under the Reserve Fund Agreement in the

future, including the payment to the Indenture Trustee of the Guaranteed Payment. Accordingly,

LBSF is not able to satisfy its post-petition obligations and further delay in making a

determination to assume or reject will only result in additional harm to the Indenture Trustee.

  25.  In addition, as a liquidating entity, the Reserve Fund Agreement is not necessary

to LBSF's reorganization. To date, LBSF has sold for value a substantial portion of its business

to Barclays and others. The Reserve Fund Agreement was not transferred to any entity, arguably

because it provides no benefit and otherwise has little value to LBSF's estate.

  D.  *LBSF has had Sufficient Time to Determine the Value of the Reserve Fund*
     *Agreement.*

  26.  As a liquidating case, LBSF has also had a reasonable time since the Petition Date

to determine whether to assume or reject the Reserve Fund Agreement. In evaluating the

Indenture Trustee's request to consensually terminate the Reserve Fund Agreement, LBSF has

already determined that the Reserve Fund Agreement does not provide a net benefit to its estate

and that it is in favor of termination upon terms and conditions approved by LBSF. The only

delay in terminating the Reserve Fund Agreement is due to Peabody's refusal to consent to the

Indenture Trustee's waiver of a claim to the Guaranteed Payment.

  E.  *The Balance of Equities Favor Granting Relief Sought by the Indenture Trustee.*

  27.  Delaying LBSF's decision to assume or reject the Reserve Fund Agreement will

cause significant harm to the Indenture Trustee as it will prevent the Indenture Trustee from

accessing the Reserve Securities to make the Debt Service Payments, including the July 2009

4664120v.3

Obligations.  Conversely, LBSF is not able to perform its obligations under the Reserve Fund

Agreement and will receive no monetary benefit by either the preservation or rejection of the

Reserve Fund Agreement.  In fact, LBSF is incurring liability by not performing under the

Reserve Fund Agreement.   Therefore, the balance of the equities favors entry of an order

compelling LBSF to assume or reject the Reserve Fund Agreement.

## CONCLUSION

28.     For all of the reasons set forth above, the Indenture Trustee respectfully request

that this Court compel LBSF to either assume or reject each of the Reserve Fund Agreement

within seven (7) on or before days of the court's allowance of this Motion and, to the extent

LBSF fails to assume any of the Reserve Fund Agreement such date, deem such Reserve Fund

Agreement to be rejected as of such date.

## NOTICE

29.     Notice of this Motion has been provided in accordance with the procedures set

forth in the order entered on September 22, 2008 governing case management and administrative

procedures for the Debtors' cases [docket no. 285]. No other or further notice need be provided.

4664120v.3

30.    No previous request for the relief sought herein has been made by the Indenture

Trustee to this or any other court.


Dated: New York, New York
        July 17, 2009

                                    MINTZ LEVIN COHN FERRIS GLOVSKY
                                    AND POPEO, PC

                                    By:    /s/  Paul J. Ricotta
                                        Paul J. Ricotta
                                        Chrysler Center
                                        666 Third Avenue
                                        New York, NY 10017
                                        Telephone: (212) 935-3000
                                        Facsimile: (212) 983-3115
                                        E-mail:  pjricotta@mintz.com
                                                - and -

                                        Daniel S. Bleck, Esq.
                                        Adrienne K. Walker, Esq.
                                        One Financial Center
                                        Boston, Massachusetts 02111
                                        Telephone: (617) 542-6000
                                        Facsimile: (617) 542-2241
                                        E-mail:   dbleck@mintz.com
                                                  awalker@mintz.com


                                    *Attorneys for Wells Fargo Bank,
                                    National Association, as Indenture Trustee*

13

**Exhibit A**

*Final*

EXECUTION COPY

# RESERVE FUND AGREEMENT

## PUT FACILITY STRUCTURE

This Reserve Fund Agreement (the "Agreement") dated as of September 16, 2002 by and among THE ESTELLE PEABODY MEMORIAL HOME OF THE SYNOD OF LINCOLN TRAILS OF THE PRESBYTERIAN CHURCH (USA), an Indiana nonprofit corporation (the "Corporation"), WELLS FARGO BANK INDIANA, N.A., a national banking association, in its capacity as Trustee under the Indenture defined below (the "Trustee"), and LEHMAN BROTHERS SPECIAL FINANCING INC., a Delaware corporation ("Lehman").

SECTION I.          DEFINITIONS

For purposes of this Agreement, unless the context clearly indicates otherwise, the following words and terms have the respective meanings provided therefor:

"Bonds" means the $46,900,000 Town of North Manchester, Indiana Revenue Bonds (Peabody Retirement Community Project), Series 2002.

"Business Day" means a day on which any of the Corporation, the Trustee or Lehman is not required or authorized by law to close.

"Closing Date" means September 16, 2002.

"Collateral" has the meaning specified in the Master Pledge Agreement.

"Debt Service Payment" means (i) a scheduled payment of principal of and interest on the Bonds, including any such payment in connection with a scheduled mandatory sinking fund redemption of the Bonds from sinking fund installments but excluding any such payment in connection with any other redemption of the Bonds or (ii) a payment of principal of and interest on the Bonds upon an acceleration of the Bonds following an event of default under the Indenture.

"Equivalent Security" means, with respect to any Reserve Security (or portion thereof) which has been sold pursuant to Section 2.2(b) hereof to make a Debt Service Payment, a security which is identical to or "fungible" (as defined in the Uniform Commercial Code of the State of New York) therewith, but only if such security is, by usage of trade, the equivalent of any other like unit of such Reserve Security.

"Financing Document" means, collectively, the Indenture, the Loan Agreement and any other financing documents related to the Bonds.

"Guarantee Payment" has the meaning specified in Section 2.2(b) hereof.

RFA:

1

EXECUTION COPY

"Guaranteed Price" means, with respect to any Reserve Security, the "Total Price" set forth as the price therefor on Schedule 1 (or, in the case of a portion of a Reserve Security, the equivalent portion of such amount).

"Guaranteed Rate" means, with respect to the Reserve Securities delivered and sold to the Trustee hereunder, a rate per annum equal to 5.07% assuming that the interest on the applicable security was compounded semi-annually on the basis of a year of 360 days with twelve thirty day months and as set forth on Schedule 1 hereto.

"Indenture" means the Bond Trust Indenture dated as of August 15, 2002 between the Issuer and the Trustee.

"Issuer" means the Town of North Manchester, Indiana, a municipal corporation organized and existing under the laws of the State of Indiana.

"LBI" means Lehman Brothers Inc.

"LBH" means Lehman Brothers Holdings Inc., which wholly owns and unconditionally guarantees the obligations of Lehman.

"Liquidation Price" has the meaning specified in 2.2(b) hereof.

"Loan Agreement" means the Loan Agreement dated as of August 15, 2002 between the Issuer and the Corporation and all amendments and supplements thereto.

"Master Pledge Agreement" means the Master Pledge Agreement dated as of the Closing Date between Lehman and the Trustee.

"Moody's" means Moody's Investors Service, Inc. and its successors and assigns.

"Qualified Dealer" means LBI or any dealer in Government Securities selected by the Trustee in consultation with Lehman.

"Repurchase Notice" has the meaning specified in Section 2.3(b) hereof.

"Repurchase Price" has the meaning specified in Section 2.3(b) hereof.

"Reserve Fund" means the reserve fund created under the Indenture and designated therein as the Debt Service Reserve Fund.

"Reserve Requirement" means at any time the amount required in the Reserve Fund pursuant to the Indenture to secure the related Bonds. The Reserve Requirement on the Closing Date is $3,808,912.50.

RFA:

EXECUTION COPY

"Reserve Securities" means the securities set forth as such in Schedule 1 and any Equivalent Securities purchased pursuant to Section 2.3 hereof.

"Sale Date" means the Business Day immediately preceding the date on which a Debt Service Payment is due to be paid to the holders of the Bonds.

"Sale Notice" has the meaning specified in Section 2.2(a) hereof.

"Scheduled Termination Date" means July 1, 2033.

"Standard & Poor's" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies Inc. and its successors and assigns.


SECTION II.        ARRANGEMENT

Section 2.1    Purchase of Reserve Securities.   The Trustee has purchased from LBI on the date hereof the Reserve Securities set forth in Schedule 1 for settlement on the date hereof.

Section 2.2    Sale by the Trustee.

(a)    If the Trustee is required under the Indenture to sell all or a portion of the Reserve Securities to make a Debt Service Payment to the holders of the Bonds, the Trustee shall, if so directed by the Corporation, or if otherwise required by the Indenture to make such Debt Service Payment, give Lehman not less than one nor more than seven days oral and written notice thereof (a "Sale Notice"). The Trustee shall in such Sale Notice specify (i) the Sale Date and (ii) the lesser of (A) the amount of funds which the Trustee is required to realize from the sale of the Reserve Securities in order to make such Debt Service Payment and (B) the aggregate Guaranteed Price of the Reserve Securities which are then in the Reserve Fund (such lesser amount, the "Deficiency Amount").

(b)    The Trustee, after delivery of the Sale Notice and prior to the Sale Date, in consultation with Lehman, shall solicit bids for the purchase of the Reserve Securities which must be obtained from at least four Qualified Dealers (one of which shall be LBI). If the price offered by the Qualified Dealer which has offered the highest price for such Reserve Securities (excluding accrued interest, the "Liquidation Price") is less than their Guaranteed Price, the Trustee shall make written demand upon Lehman for the payment of such difference (the "Guarantee Payment").

(c)    If the Trustee has delivered a Sale Notice to Lehman and made demand upon Lehman for payment of the Guarantee Payment as provided above, then, by no later than the later of (A) the first Business Day after Lehman has received such Sale Notice or (B) the Sale Date, Lehman unconditionally agrees to pay the Guarantee Payment to the Trustee in immediately available funds. If the Trustee delivers a Sale Notice to Lehman and makes demand upon Lehman for the Guarantee Payment, prior to selling the Reserve Securities to the

RFA:

EXECUTION COPY

Qualified Dealer who has offered the Liquidation Price, the Trustee shall offer to sell such securities to LBI at the Liquidation Price plus any accrued interest and, if LBI has agreed to pay the Liquidation Price plus any accrued interest on such securities, sell such securities to LBI at the Liquidation Price plus any accrued interest.

(d)     If in connection with any withdrawal of the Reserve Securities to make a Debt Service Payment less than all of the Reserve Securities must be sold and there is more than one Reserve Security then in the Reserve Fund, the Trustee shall select for sale Reserve Securities in amounts as directed by Lehman or, in the absence of such direction, pro rata in the proportion that the Guaranteed Price of each such security bears to the Guaranteed Price of all Reserve Securities then on deposit in the Reserve Fund, provided that the aggregate Guaranteed Price of the Reserve Securities which are so selected at least equals the Deficiency Amount (as defined in Section 2.2(a) hereof).

(e)     The Trustee shall not deliver any Sale Notice to Lehman unless the Trustee has first liquidated all investments (other than the Reserve Securities) in the Reserve Fund and withdrawn (or allocated for withdrawal) all other funds held in such Reserve Fund or otherwise available under the Indenture for the payment of the Debt Service Payment.

(f)     If Lehman receives a Sale Notice or a Repurchase Notice after 11:00 a.m. New York City time on any Business Day, such notice shall be deemed to have been received on the next succeeding Business Day.

(g)     The parties hereto agree that on the Scheduled Termination Date hereof any Reserve Securities or Equivalent Securities which are then held in the Reserve Fund and which mature after such Scheduled Termination Date shall be sold by the Trustee in the same manner as set forth in this Section 2.2 hereof.

Section 2.3     Repurchase by the Trustee.

(a)     The Corporation and the Trustee agree that any amounts which are required pursuant to the terms of the Indenture or any other Financing Document to be deposited into the Reserve Fund following withdrawal of Reserve Securities to make a Debt Service Payment and the payment of a Guarantee Payment by Lehman (including any amounts permitted to be applied to satisfy the Reserve Requirement for the Bonds), if and to the extent deposited in the Reserve Fund in cash, shall be invested in Equivalent Securities as provided herein and the Indenture.

(b)     If, following Lehman's payment of a Guarantee Payment pursuant to Section 2.2(c), within eighteen months of such Guarantee Payment, (i) sufficient funds are deposited in the Reserve Fund to permit the purchase of a Minimum Amount (as defined below) of Equivalent Securities or (ii) the Corporation has notified the Trustee (with a copy to Lehman) that it intends, in compliance with the Indenture, to deposit sufficient funds in the Reserve Fund within eighteen months to permit the purchase of a Minimum Amount of Equivalent Securities, then the Trustee shall, within seven Business Days of such replenishment of the Reserve Fund, give oral and written notice (a "Repurchase Notice") to Lehman stating (A) the amount of funds

RFA:

4

EXECUTION COPY

which have been or are scheduled to be deposited and (B) the date(s) or expected date(s) of such deposit(s). If the Trustee has so delivered a Repurchase Notice to Lehman, then by no later than the second Business Day after delivery thereof in the case of Section 2.3(b)(i) above or the second Business day after each day on which funds have been so deposited in the case of Section 2.3(b)(ii) above, the Trustee, in consultation with Lehman, shall solicit quotations for the Equivalent Securities from at least four Qualified Dealers (one of which shall be LBI). If the price offered by the Qualified Dealer which has offered the lowest price for the sale of such Equivalent Securities to the Trustee (excluding accrued interest, the "Repurchase Price") is less than the Guaranteed Price, the Trustee shall pay to Lehman, solely from funds deposited in the Reserve Fund, the lesser of (i) the amount of such difference and (ii) the Guarantee Payment paid by Lehman plus interest thereon at a per annum rate equal to Three Month LIBOR plus 75 basis points for the period from Lehman's payment thereof to the date payment is made to Lehman pursuant to this Section 2.3(b) hereof. If the Repurchase Price of the Equivalent Securities is greater than the Guaranteed Price, no amount shall be due from or to Lehman. Upon any such purchase of Equivalent Securities by the Trustee such securities shall be covered by the facility provided in Section 2.2 hereof. As used herein "Three Month LIBOR" as of any date of determination means the rate for deposits in US dollars for a period of three months which appears on the Telerate Page 3750 as of 11:00 a.m., London time, on the day that is two Business Days before the day for which such determination is being made. If no such rate appears on the Telerate Page 3750 as of such date, Lehman may select another nationally recognized published source to determine Three Month LIBOR. As used herein "Minimum Amount" means an amount equal to the amount deposited in the Reserve Fund and invested in Equivalent Securities as described in Section 2.3(a) hereof rounded down to the nearest authorized denomination of such Equivalent Securities.

(c)     If the Trustee delivers a Repurchase Notice to Lehman, prior to purchasing the Equivalent Securities from the Qualified Dealer who has offered the Repurchase Price, the Trustee shall offer to purchase such securities from LBI at such Repurchase Price plus any accrued interest and, if LBI agrees to sell such securities to the Trustee at the Repurchase Price plus accrued interest, purchase such securities from LBI at the Repurchase Price plus accrued interest.

(d)     If within eighteen months of Lehman's payment of a Guarantee Payment pursuant to Section 2.2(c) hereof the Trustee has not delivered a Repurchase Notice as required in accordance with Section 2.3(b) hereof, Lehman may (but is not obligated to), at any time thereafter, by written notice to the Trustee (with a copy to the Corporation), terminate the Trustee's right to purchase Equivalent Securities in the manner provided herein and have such Equivalent Securities covered by the facility provided in Section 2.2 hereof. Such termination shall not affect the remaining rights and obligations of the parties hereunder with respect to any Reserve Securities which are then in the Reserve Fund.

Section 2.4     Termination.

RFA:

5

EXECUTION COPY

(a)    Unless sooner terminated as provided in this Section 2.4 or in 2.5(d) hereof, this Agreement shall terminate on the earlier of (i) the Scheduled Termination Date and (ii) subject to Section 2.4(c) hereof, the date on which all of the Bonds are defeased or redeemed.

(b)    Lehman may elect to terminate this Agreement by giving written notice to the Trustee and the Corporation if (i) eighteen months have elapsed since the Trustee's sale of all of the Reserve Securities and Equivalent Securities have not been repurchased by the Trustee pursuant to Section 2.3 hereof or (ii) the Trustee and the Corporation fail, for any reason, to apply moneys in the Reserve Fund, as and when and to the extent available, to purchase Equivalent Securities pursuant to Section 2.3 hereof. If this Agreement is terminated by Lehman pursuant to this Section 2.4(b), the Corporation shall, by no later than the termination date, pay to Lehman, if such termination arises from the Trustee's failure to purchase Equivalent Securities as and when and to the extent required pursuant to Section 2.3, the excess, if any, of the Guaranteed Price of the Equivalent Securities which would have been purchased had the provisions of Section 2.3 hereof been complied with over the market value (excluding accrued interest) of such Equivalent Securities, as reasonably determined by Lehman as of the date this Agreement is so terminated by Lehman.

(c)    If the Issuer redeems or defeases the Bonds and in connection therewith issues new bonds ("Refunding Bonds") and transfers all or a portion of the Reserve Securities from the Reserve Fund to the reserve account for the Refunding Bonds (the "Refunding Bonds Reserve Fund") the Corporation may, by giving Lehman at least 30 days prior written notice, request that this Agreement be amended to include the Refunding Bonds in the definition of Bonds and the Refunding Bonds Reserve Fund in the definition of Reserve Fund. If Lehman receives such a request from the Corporation, it shall agree to such amendment provided that (A) the Refunding Bonds receive an unsecured, unenhanced rating of at least "BBB+" by Standard & Poor's or, in the reasonable judgment of Lehman, the financial exposure to Lehman with respect to such Refunding Bonds is not materially greater than the financial exposure to Lehman with respect to the Bonds as of the date hereof, (B) Lehman receives whatever opinions and other assurances it may reasonably request to assure that the protections afforded Lehman hereunder will continue after such amendment and (C) no further modifications will be required to be made to this Agreement which could impair Lehman's rights or increase or extend its obligations hereunder.

(d)    The Corporation may at any time, by giving Lehman and the Trustee at least five Business Days prior written notice, terminate this Agreement, provided, that, if this Agreement is terminated by the Corporation after Lehman has made a Guarantee Payment and as of the date of termination the Trustee has not purchased Equivalent Securities with a Guaranteed Price equal to the Guaranteed Price of the Reserve Securities sold in connection therewith, the Corporation shall, on the date this Agreement is to be terminated, pay to Lehman the excess, if any, of the Guaranteed Price of Equivalent Securities with a Guaranteed Price equal to the Guaranteed Price of the Reserve Securities so sold over the market value (excluding accrued interest) of such Equivalent Securities, as reasonably determined by Lehman as of the date this Agreement is so terminated by the Corporation.

RFA:

6

EXECUTION COPY

Section 2.5    Delivery of Collateral, Return of Collateral, Downgrade, Assignment, Termination.

(a)    As used herein Minimum Rating with respect to any entity means a long-term unsecured debt rating of at least A2 from Moody's or a long term unsecured debt rating of at least A from Standard & Poor's.

(b)    At any other time that LBH does not have the Minimum Rating Lehman shall, in accordance with the Master Pledge Agreement, collateralize its obligation to make payments hereunder.

(c)    If at any time after the Closing Date (i) the Corporation and the Trustee receives written notice from Lehman (which notice shall be accompanied by written evidence reasonably satisfactory to the Corporation and the Trustee) that LBH has the Minimum Rating or (ii) Lehman shall have satisfied all of its obligations to the Trustee relating to this Agreement, then the Trustee shall pay over and deliver and transfer to Lehman all of the Collateral as provided by Section 12 of the Master Pledge Agreement.

(d)    If at any time LBH does not have a long-term rating of at least BBB- from Standard & Poor's or a long-term rating of at least Baa3 from Moody's (a "Downgrade Event"), Lehman shall promptly notify the Trustee.  Upon receipt of such notice the Trustee may, at the written direction of the Corporation, notify Lehman in writing that the Trustee intends to sell the Reserve Securities pursuant to Section 2.2 hereof unless Lehman, within five days of receipt of such notice from the Trustee, shall have assigned its rights and obligations under this Agreement to an entity which at the time of such assignment has the Minimum Rating or which is otherwise acceptable to the Corporation.

(e)    If, after five days from Lehman's receipt of written notice from the Trustee as provided in Section 2.6(d) hereof, Lehman has not assigned its rights and obligations under this Agreement as provided in such Section 2.6(d) hereof, the Trustee may sell the Reserve Securities in the manner provided in Section 2.2 hereof in connection with a Debt Service Payment.  If the Trustee so sells the securities, upon payment of any amounts due pursuant to Section 2.2(b) hereof by, as applicable, the Trustee or Lehman, this Agreement shall immediately terminate.

Section 2.6    Direction by Corporation to Trustee.  The Corporation hereby irrevocably instructs the Trustee to take the actions and to make any payments to Lehman required hereby and including the Pledge Agreement.  This facility and the investments hereunder, including any Equivalent Securities and Reserve Securities, are authorized/permitted under the Indenture.

Section 2.7    Payment Instructions.  All payments due under this Agreement to the Trustee or to Lehman are to be made in immediately available funds by means of a bank or Federal funds wire, to the account specified by the payee from time to time pursuant to Section 7.1 hereof.

Section 2.8    No Interest in Reserve Securities.

RFA:

EXECUTION COPY

(a)     Lehman acknowledges that upon the sale of any Reserve Securities to the Trustee Lehman shall have no right, title or interest therein or lien thereon.

(b)     Lehman further acknowledges that the Corporation may at any time direct the Trustee, in accordance with the Indenture or any other Financing Document, to sell all or any portion of the Reserve Securities relating to the Corporation in any manner permitted under the Indenture or any other Financing Document provided that (i) Lehman shall have no obligation to make a Guarantee Payment in connection with such sale, (ii) any securities so sold shall, from the date of such sale, no longer constitute Reserve Securities and (iii) if such sale is of less than all of the Reserve Securities then in the Reserve Fund, the Trustee shall select for sale Reserve Securities in amounts as directed by Lehman, or in the absence of such direction, pro rata in the proportion that the Guaranteed Price of each such security bears to the Guaranteed Price of all Reserve Securities then on deposit in the Reserve Fund relating to the Corporation.

SECTION III.        REPRESENTATIONS AND WARRANTIES: ACKNOWLEDGMENTS

Section 3.1    Representations and Warranties.    The Corporation, the Trustee and Lehman each represents and warrants to the other parties hereto that as of the date hereof:

(a)     it is duly organized and validly existing under the laws of the jurisdiction of its incorporation or establishment and has full power and legal right to execute and deliver, and to perform its obligations under this Agreement including, without limitation, in the case of the Corporation, the right to purchase from Lehman the facility provided by Lehman hereunder;

(b)     this Agreement has been duly authorized, executed and delivered by it and, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms hereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity regardless of whether enforcement is sought in a proceeding in equity or at law;

(c)     its execution and delivery of this Agreement and its performance of its obligations hereunder do not and will not constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under, its charter or by-laws (or equivalent constitutional documents), or any other law, ordinance, regulation or contractual restriction or any of its property;

(d)     all consents, authorizations and approvals requisite for its execution, delivery and performance of this Agreement have been obtained and remain in full force and effect and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any governmental authority or regulatory body is required for such execution, delivery or performance;

RFA:

8

EXECUTION COPY

(e)    there is no proceeding pending or threatened against it at law or in equity, or before any governmental instrumentality or in any arbitration, which would materially impair its ability to perform its obligations under this Agreement, and there is no such proceeding pending against it which purports or is likely to affect the legality, validity or enforceability of the Agreement;

(f)    in the case of the Corporation, funds and investments in the Reserve Fund relating to the Corporation are not available to pay any amounts due on any bonds other than the Bonds relating to the Corporation; and

(g)    if it is Lehman, the senior debt obligations of LBH on the date hereof are rated "A" by Standard & Poor's and "A2" by Moody's and is the Minimum Rating contained in Section 2.5 hereof.

Section 3.2    Role of Lehman.

(a)    The Corporation and the Trustee each acknowledge and agree that (i) Lehman has not and is not acting as a fiduciary, agent or other representative for the holders of the Bonds or for any other person in connection with this Agreement, (ii) Lehman has made no investigation with respect to the tax-exempt status of the Bonds, and (iii) neither Lehman nor any of its directors, officers, employees, agents or affiliates shall be liable or responsible for: (A) the payment of any amounts owing on or with respect to the Bonds; (B) the use or application by the Trustee of any moneys payable to the Trustee hereunder; (C) any acts or omissions of the Corporation or the Trustee under the Indenture or any other Financing Document; (D) the validity, tax exemption or enforceability of, the Bonds, the Indenture or any other Financing Document; or (E) the Trustee's performance of its obligations under the Indenture or any other Financing Document or any other agreement or instrument with respect to the Bonds. Without limiting the foregoing, Lehman shall have no duty to ascertain whether the Trustee is in compliance with any applicable statute, regulation or law, the Indenture or any other Financing Document.

(b)    The Corporation acknowledges that the economic terms of this Agreement have been negotiated by it (and not by or in respect of the Trustee) and that, to the extent it has deemed necessary, it has consulted with its own legal, tax and investment advisors regarding its decision to enter into this Agreement.

Section 3.3    Fees and Commissions.  In connection with Lehman's negotiation and issuance of this Agreement, Lehman has agreed to pay B.C. Ziegler $28,400 as a broker's fee.

SECTION IV.    COVENANTS

Section 4.1    Covenants.  Each of Lehman, the Corporation and the Trustee covenants to the other parties to this Agreement that so long as it shall have any obligations under this Agreement it shall:

RFA:

9

EXECUTION COPY

(a)     maintain in full force and effect all authorizations of and exemptions, consents, licenses, actions or approvals by, and all filings with or notices to, any governmental or other authority that are required to be obtained or made by such party with respect to this Agreement and will use all reasonable efforts to obtain or make any that may become necessary in the future;

(b)     comply in all material respects with all applicable laws, rules, regulations and orders to which it may be subject if failure so to comply would materially impair its ability to perform its obligations under this Agreement;

(c)     give the other parties hereto prompt notice of any legal proceedings pending or threatened against such party which, if adversely determined, might (i) impair its ability to perform its obligations under this Agreement or (ii) affect the legality, validity or enforceability of this Agreement;

(d)     not take any action that would cause any of the representations and warranties contained in Section 3.1 hereof to be untrue or incorrect in any material respect;

(e)     if it is the Corporation or the Trustee, not enter into any amendment or modification of the Indenture or any other Financing Document to which it is a party which could materially impair its ability to perform its obligations to Lehman hereunder, provided that nothing herein shall restrict the issuance of additional Bonds under the Indenture;

(f)     if it is the Corporation or the Trustee, take no action, nor permit any action to be taken against it, which shall cause the Reserve Securities to be subject to any lien or encumbrance other than the lien of the Indenture; and

(g)     if it is the Trustee, not use the funds and investments in the Reserve Fund to pay any amounts due on any bonds other than the Bonds.


SECTION V.    THE TRUSTEE

Section 5.1    <u>Acceptance by Trustee</u>.  By execution and delivery of this Agreement, the Trustee accepts its duties and obligations hereunder, consistent with and subject to and in accordance with its duties and obligations as Trustee under the Indenture; provided, however, no implied duties or obligations under the Indenture shall be imposed on the Trustee.  The Trustee is entering into this Agreement solely in its capacity as Trustee under the Indenture and at the direction of the Corporation, and the duties, powers and liabilities of the Trustee in acting hereunder shall be subject to the provisions of the Indenture.

Section 5.2    <u>Liability of the Trustee; Consultation with Legal Counsel</u>.

RFA:

EXECUTION COPY

(a)     The Trustee shall not be liable for any action taken or neglected to be taken in performing or attempting to perform its obligations hereunder or preserving or seeking to preserve the funds it maintains under the Indenture, except for any such actions (or failures to act) arising from its negligence or willful misconduct.

(b)     The Trustee may consult with its counsel or other counsel satisfactory to it with respect to any question relating to its duties or responsibilities hereunder or otherwise in connection herewith and, except as expressly provided herein, the Trustee shall not be liable for any action taken, suffered, or omitted by the Trustee in good faith upon the advice of such counsel. The Trustee may act through its officers, employees, agents and attorneys.

Section 5.3    Payment of Trustee Fees.    The Corporation shall pay reasonable compensation to the Trustee for services rendered by it under this Agreement. Lehman has no liability or responsibility for payment of the Trustee's fees or expenses for its services hereunder, including any such fees or expenses arising out of or in connection with the liquidation of the Reserve Securities as provided herein.

Section 5.4    Trustee Successor.    If the Trustee resigns or is discharged from its duties and obligations under the Indenture, it shall assign all its rights and duties hereunder to such successor trustee as is appointed by the Issuer and shall transfer any Collateral held by the Trustee as custodian under the Master Pledge Agreement to a successor custodian reasonably acceptable to Lehman.

Section 5.5    Payment Obligations of Trustee.    The Trustee's payment obligations hereunder shall be paid solely from funds available in the Reserve Fund under the Indenture.

SECTION VI.    CLOSING CONDITIONS

Section 6.1    Closing Conditions.    On or prior to the Closing Date the following shall occur:

(a)     delivery to the Trustee and the Corporation of an opinion of internal counsel to Lehman, in the form of Exhibit A;

(b)     delivery to Lehman and the Trustee of an opinion of counsel to the Corporation, substantially in the form of Exhibit B;

(c)     delivery to Lehman and the Corporation of an opinion of counsel to the Trustee, in the form of Exhibit C;

(d)     delivery to the Trustee of the executed Master Pledge Agreement; and

(e)     delivery to Lehman of an executed copy of the Indenture and any other Financing Document.

RFA:

11

EXECUTION COPY

# SECTION VII.          MISCELLANEOUS

Section 7.1    Notices.  All notices, demands or other communications hereunder shall
be given or made in writing and shall be delivered personally, or sent by certified or registered
mail, postage prepaid, return receipt requested, or overnight delivery service, telex or telecopy to
the party to whom they are directed at the following addresses, or at such other addresses as may
be designated by notice from such party to all other parties:

To Lehman:

Lehman Brothers Special Financing Inc.
745 Seventh Avenue, 5th Floor
New York, NY 10285
Attention:    Municipal Financial Products – Middle Office
Telephone:    212-526-2249      7000 - operator
Fax:              646-758-2998

To the Trustee:

Wells Fargo Bank Indiana, N.A.
c/o Wells Fargo Bank Iowa, N.A.
666 Walnut Street, N8200-034
Des Moines, IA 50309
Attention:    Corporate Trust Department – Joni K. Devries
Telephone:    515-245-3322
Fax:              515-245-8532

[FOR DELIVERY OF BOOK-ENTRY GOVERNMENT SECURITIES]
NWMPLS/Trust
ABA:  091000019
Account Number:
Account Name:

[DTC ELIGIBLE SECURITIES]
Participant Number:  2027
Agent Bank ID:  94866
Account Number:

To the Corporation:

RFA:

12

EXECUTION COPY

> The Estelle Peabody Memorial Home of the Synod of Lincoln Trails of the
> Presbyterian Church (USA)
>  400 West Seventh Street
> North Manchester, IN 46962
> Attention:    Chief Financial Officer
> Telephone:    219-982-8616
> Fax:             219982-8657
> Corporation Tax ID:

Any notice, demand or other communication given in a manner prescribed in this Section shall be deemed to have been delivered on receipt.

Section 7.2    Binding Effect; Transfer.  This Agreement shall be binding upon the Corporation, the Trustee and Lehman and upon their respective permitted successors and transferees.  Neither the Corporation, Lehman nor the Trustee shall be entitled to transfer this Agreement, or its interests and obligations hereunder, without the written consent of the other parties hereto; provided, that Lehman, without the written consent of the Corporation or the Trustee, may transfer its rights and obligations hereunder to any affiliate of Lehman, provided, that Lehman may not transfer this Agreement if after giving effect to such transfer a Downgrade Event (as defined in Section 2.5(c) hereof) would occur or be continuing.  In connection with any such transfer, there shall be delivered to the Corporation and the Trustee an opinion of counsel to the transferee, in form and substance satisfactory to the Corporation and the Trustee, to the effect that this Agreement is a valid and binding agreement of the transferee, enforceable against the transferee in accordance with its terms, subject only to bankruptcy, insolvency, moratorium, reorganization and other state and federal laws affecting the enforcement of creditors' rights and to general principles of equity.  No consent is required under this Section 7.2 hereof for any successor trustee appointed under the Indenture.

Section 7.3    Limitation.  Nothing expressed or implied herein is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto, any right, remedy or claim by reason of this Agreement or any term hereof, and all terms contained herein shall be for the sole and exclusive benefit of the parties hereto, and their successors and permitted transferees.  The obligation under this Agreement are the unconditional obligations of the parties hereto in accordance with the terms hereof.

Section 7.4    Counterparts.  This Agreement may be executed in one or more counterparts and when each party hereto has executed at least one counterpart, this Agreement shall become binding on all parties and such counterparts shall be deemed to be one and the same document.

Section 7.5    Severability.  If one or more provisions of this Agreement or the applicability of any such provisions to any set of circumstances shall be determined to be invalid or ineffective for any reason, such determination shall not affect the validity and enforceability of the remaining provisions or the applicability of the same provisions or any of the remaining provisions to other circumstances.

RFA:

13

EXECUTION COPY

Section 7.6    <u>Amendments, Changes and Modifications</u>.    This Agreement may be amended or any of its terms modified only by a written document authorized, executed and delivered by each of the parties hereto.

Section 7.7    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

Section 7.9    <u>Set-Off</u>.  Lehman agrees that any payments due by it hereunder shall not be set-off by any amounts otherwise due Lehman.

Section 7.10   <u>Valuation of Agreement</u>.  For purposes of valuing this Agreement under the Indenture, the Trustee shall value this Agreement when combined with the value of the Reserve Securities at the Guaranteed Price for so long as Lehman is not in default under this Agreement.

RFA:

EXECUTION COPY

IN WITNESS WHEREOF, the Trustee, the Corporation and Lehman have caused this Reserve Fund Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

THE ESTELLE PEABODY MEMORIAL HOME OF THE SYNOD OF LINCOLN TRAILS OF THE PRESBYTERIAN CHURCH (USA)

By:_____
Name:
Title:

WELLS FARGO BANK INDIANA, N.A., AS TRUSTEE

By: _Joni DeVries_____
Name:  JONI DEVRIES
Title:  SR TRUST OFFICER

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____
Name:    T. Courtney Jenkins
Title:    Vice President

RFA:

15

Mar-14-03   05:25pm   From-Floor 30 Fax A                    +3172365819              T-341   P.004/011   F-077

EXECUTION COPY

IN WITNESS WHEREOF, the Trustee, the Corporation and Lehman have caused this Reserve Fund Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

THE ESTELLE PEABODY MEMORIAL HOME OF THE SYNOD OF LINCOLN TRAILS OF THE PRESBYTERIAN CHURCH (USA)

By: _____
Name:    James R. Ransomer
Title:      Executive Director


WELLS FARGO BANK INDIANA, N.A., AS TRUSTEE

By: _____
Name:
Title:


LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:    T. Courtney Jenkins
Title:      Vice President

RFA:

15

EXECUTION COPY

IN WITNESS WHEREOF, the Trustee, the Corporation and Lehman have caused this Reserve Fund Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

THE ESTELLE PEABODY MEMORIAL HOME OF THE SYNOD OF LINCOLN TRAILS OF THE PRESBYTERIAN CHURCH (USA)

By:_____
Name:
Title:


WELLS FARGO BANK INDIANA, N.A., AS TRUSTEE

By:_____
Name:
Title:


LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:    T. Courtney Jenkins
Title:    Vice President

RFA:

EXECUTION COPY

SCHEDULE 1

### RESERVE FUND

| | Reserve Security | Reserve Security | Total |
|---|---|---|---|
| Type of Security | MD TRN-TXB-BALTI | HARRISBURG REDV | |
| CUSIP Number | 57429LAM8 | 414763DB5 | |
| Rating: | Aaa / AAA | Aaa / AAA | |
| Principal Amount | $2,980,000 | $485,000 | $3,465,000 |
| Maturity | 7/1/32 | 11/1/32 | |
| Interest Rate | 6.65% | 0.00% | |
| Price, without accrued interest | 122.597 _3653,390.60_ | 22.128 | |
| Accrued interest | $47,891.08 | $0.00 | $47,891.08 |
| Total Price | $3,701,281.68 | $107,320.80 | $3,808,602.48 |
| Settlement Date | 9/16/02 | 9/16/02 | |
| Guaranteed Rate: | | | 5.07% |

**Exhibit B**

Paul J. Ricotta, Esq.
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, PC
Chrysler Center
666 Third Avenue
New York, NY 10017
Telephone: (212) 935-3000
Facsimile: (212) 983-3115

Daniel S. Bleck, Esq.
Adrienne K. Walker, Esq.
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, PC
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

*Attorneys for Wells Fargo Bank,*
*National Association, as Indenture Trustee*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

|  |  |
|---|---|
| **In re** | x<br>: **Chapter 11**<br>: |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,<br>Debtors. | : **Case No. 08-13555 (JMP)**<br>: **Jointly Administered**<br>x |

----------------------------------------------------------------

### ORDER COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR REJECT AN EXECUTORY CONTRACT PURSUANT TO SECTIONS 105(d)(2)(A) AND 365(d)(2) OF THE BANKRUPTCY CODE

Upon the motion of Wells Fargo Bank, National Association, as Indenture Trustee

(the "Indenture Trustee") for an Order Compelling Lehman Brothers Special Financing

Inc. to Assume or Reject Executory Contract Pursuant to Sections 105(d)(2)(A) and

365(d)(2) of the Bankruptcy Code, dated July 17, 2009 (the "Motion"); and the Court

having reviewed the Motion and having considered the statements of counsel before the

Court (the "Hearing"); and the Court having found that: (a) the Court has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding

pursuant to 28 U.S.C. § 157(b), and (c) notice of the Motion and the hearing was

sufficient under the circumstances; and the Court having determined that the legal and

factual bases set forth in the Motion and at the hearing establish just cause for the relief

granted herein:

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    Lehman Brothers Special Financing Inc. ("LBSF") shall either

assume or reject the Reserve Fund Agreement, dated September 16, 2002 by and among

the Indenture Trustee, LBSF and The Estelle Peabody Memorial Home of the Synod of

Lincoln Trails of the Presbyterian Church (USA) within seven (7) days of entry of this

Order.

3.    To the extent that LBSF fails to assume the Reserve Fund

Agreement by such date, the Reserve Fund Agreement shall be deemed to be rejected as

of such date.

4.    The Court shall retain jurisdiction to hear and determine all matters

arising from or related to this implementation of this Order.


Dated: _____, 2009
New York, New York



_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE



4667535v.1