WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |

------------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their

non-debtor affiliates, "Lehman"), pursuant to section 105(a) and General Order M-143 (which

can be found at www.nysb.uscourts.gov), for authorization to implement alternative dispute

resolution procedures (the "Derivatives ADR Procedures") for affirmative claims of the Debtors

regarding derivative contracts (the "Motion"), will be held before the Honorable James M. Peck,

United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton

Customs House, Courtroom 601, One Bowling Green, New York, New York, 10004 (the

"Bankruptcy Court"), on **August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York,

10153, Attn:  Lori R. Fife, Esq., Robert J. Lemons, Esq., and Sunny Singh, Esq., attorneys for

the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York,

33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn:  Andy Velez-Rivera, Esq.,

Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis,

Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New

York, 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.,

attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) all

parties who have requested notice in these chapter 11 cases and (vi) and all parties with a

particularized interest in the Motion, so as to be so filed and received by no later than **July 31,**

**2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  July 20, 2009
   New York, New York

        /s/ Lori R. Fife_____
        Lori R. Fife
        Robert J. Lemons

        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Debtors
        and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
|  | : |  |
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |
|  | : |  |

---------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE**
**BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION**
**TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR**
<u>**AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS**</u>

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and,

collectively with their non-debtor affiliates, "<u>Lehman</u>"), file this Motion and respectfully

represent:

<u>**Background**</u>

1.        Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "<u>Commencement Date</u>"), Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and certain

of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>").  The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  The Debtors

are authorized to operate their businesses and manage their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.        On September 17, 2008, the United States Trustee for the Southern

District of New York (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

3.        On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("<u>SIPA</u>") with respect to Lehman Brothers Inc.

("<u>LBI</u>").  A trustee appointed under SIPA is administering LBI's estate.

4.        On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "<u>Examiner</u>"), and by order dated January

20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the

Examiner.

<b><u>Lehman's Business</u></b>

5.        Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

6.        Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Jurisdiction

7.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

8.      The Debtors request authorization, pursuant to section 105(a) of the

Bankruptcy Code and the Court's General Order M-143 (the "Standing Order"), to implement

alternative dispute resolution procedures with respect to prepetition Derivative Contracts (as

defined below) and the affirmative claims of the Debtors for monetary recovery arising from

their terminated and open prepetition Derivative Contracts, including, but not limited to, swap

agreements and forward contracts (the "Derivative Contracts with Recovery Potential").  The

Debtors are also seeking approval that notice of this Motion by e-mail or facsimile is good and

sufficient notice of the Motion.

## The Debtors' Prepetition Derivative Contracts

9.      As of the Commencement Date, the Debtors were party to more than

900,000 prepetition derivative contracts (the "Derivative Contracts"), many of which are

Derivative Contracts with Recovery Potential.  The value to the Debtors and the contractual

obligations of the counterparties (or an affiliate of such counterparty or a person or entity who

exercised or failed to exercise duties in relation to such Derivative Contract, collectively, the

"Derivative Counterparties") to these Derivative Contracts with Recovery Potential are derived

from, among other things, certain indicators of asset values.  These Derivative Contracts with

Recovery Potential are "in the money" to the Debtors constituting significant assets of their

estates and liabilities of Derivative Counterparties.  For example, the commencement of the

Debtors' chapter 11 cases constituted events of default under many of these contracts which many counterparties purportedly terminated on the basis of such reason. In some cases, the termination resulted in a net claim in favor of a Debtor. Also as another example, counterparties have refrained from giving notice of termination presumably because termination would result in a net payment to a Debtor.

10.    After the Commencement Date, the Debtors have sought from the Court and obtained relief with respect to three motions designed to facilitate the process of settling claims of the Debtors arising from the termination of a Derivative Contract and to streamline the administrative burden of assuming and assigning open Derivative Contracts for the purpose of immediately realizing the value of such contracts for the benefit of the Debtors' estates.

11.    First, the Court authorized the Debtors to, among other things, implement procedures for the settlement of terminated Derivative Contracts and the assumption and assignment of some or all of these "in the money" Derivative Contracts to third parties in exchange for consideration that will provide immediate benefits to the estates.[1]  Second, the Court authorized the Debtors to assume and assign certain Derivative Contracts but with the consent of the applicable counterparty and with respect to certain counterparties in accordance with the terms of the applicable Derivatives Contract.[2]  Third, the Court authorized the Debtors to post collateral in connection with transactions that the Debtors enter into for the purpose of

---

[1] Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257] (the "December 16 Derivative Procedure Order").

[2] Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667] (together with the December 16 Derivative Procedures Order, the "Derivative Procedures Orders").

hedging against the loss of the value embedded in their open Derivative Contracts.[3]  In each case,

the Debtors' goal has been to minimize the expense associated with these activities while at the

same time to maximize and preserve the value of their, "in the money" Derivative Contracts for

the benefit of all economic stakeholders in these chapter 11 cases.

### The Derivative ADR Procedures

12.    Given the complex nature of the Derivative Contracts, the Debtors believe

that the enforcement of their claims under Derivative Contracts with Recovery Potential could

result in litigation ending only after trial and appeal, a process that will be expensive and time

consuming, causing undue delay in the administration of these chapter 11 cases, and risking loss

of the current value embedded in such Derivative Contracts with Recovery Potential.  Many

common issues exist with respect to the Debtors' Derivative Contracts with Recovery Potential

including the appropriateness of setoff, termination, valuation, computation of termination

payments, and notice.  In furtherance of their efforts to capture the value in their Derivative

Contracts with Recovery Potential and streamline these complex chapter 11 cases, the Debtors

propose to implement certain alternative dispute resolution procedures for the purpose of

reducing the cost associated with enforcing the Debtors' affirmative claims under the Derivative

Contract with Recovery Potential, preserving the value available under such contracts, and

promoting judicial efficiency in these complex chapter 11 cases (the "Derivative ADR

Procedures").

13.    The Debtors have a good faith belief that there are approximately two

hundred fifty (250) Derivative Counterparties (which number surely will increase) to Derivative

---

[3] Order dated March 11, 2009, authorizing the Debtors to grant first Priority liens in cash collateral posted
in connection with the hedging transactions the debtors enter into through certain futures and prime
brokerage accounts [Docket No. 3047].

Contracts with Recovery Potential against which the Debtors believe a right to monetary

recovery exists (whether or not an actual lawsuit or adversary proceeding has been commenced).

14.     The Debtors believe that the goal of the Motion is to obtain the same

salutory benefits as contemplated by the Standing Order, which provides for procedures

governing mediation of matters in bankruptcy cases and adversary proceedings.  Hence, the

Debtors request that the Standing Order shall apply to any mediation to be conducted pursuant to

an order approving this Motion.

## Derivative ADR Disputes

15.     The Debtors will designate a dispute (a "Derivatives ADR Dispute") as to

any Derivative Contract with Recovery Potential by serving (i) a copy of an order approving this

Motion on a Derivative Counterparty and (ii) a notice (a "Derivatives ADR Notice") containing

sufficient information regarding the Debtors' affirmative claim and its demand for settlement

(together with Derivative ADR Notice, a "Derivatives ADR Package").  The Debtors' demand in

the Derivatives ADR Package will have been determined with the benefit of consultation

between the Debtors and the Creditors' Committee.  The Debtors propose that the service on or

notice to a Derivatives Counterparty of a Derivatives ADR Package will be deemed adequate if

such service or notice is provided to the Derivatives Counterparty, the Derivatives

Counterparty's counsel, legal guardian, estate representative, or other representative by (i) hand

delivery, (ii) first class mail, or (iii) over night mail.

## Mandatory Participation

16.     The Debtors propose that (a) each Debtor and Derivatives Counterparty

must participate in good faith with the proposed Derivative ADR Procedures and (b) the

applicable Debtor or Debtors and each Derivative Counterparty served with a Derivative ADR

Package will be required to comply with the Derivatives ADR Procedures, unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute.  The Derivative ADR Procedures do not require the applicable Debtor or Debtors and Derivative Counterparties to settle or compromise any dispute but each party will be required to (i) serve and answer in response to the proposed settlement set forth in a Derivative ADR Package, (ii) engage in settlement discussions, (iii) participate in any mediation in good faith, (iv) follow the directions of the mediator, and (v) follow the Derivative ADR Procedures approved by this Court.

### No Substitute for Claims Procedures and Removal of Actions

17.     The Derivatives ADR Procedures are not intended to and will not be utilized (i) as a substitute for chapter 11 claims procedures or (ii) limit the Debtors' rights to, among other things, object to claims arising from the Derivative Contracts on any basis permitted by the Bankruptcy Code.  Nothing contained herein, however, will limit a Derivative Counterparty's right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder.

18.     If a Derivatives Counterparty previously has commenced any action or proceeding in any other court or forum, or any other action or proceeding in any other court or forum following service upon it of a Derivative ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Derivative ADR Procedures.

**Notice/Response Stage**

19.     Upon receipt of the Derivatives ADR Package, the Derivatives Counterparty will have twenty (20) calendar days to respond in writing its position with respect to the Debtors' demand.  The Derivative Counterparty may (i) agree to settle the Derivatives ADR Dispute in accordance with the terms in the Debtors' Derivatives ADR Notice or (ii) decline to settle the Derivatives ADR Dispute in accordance with the terms in the Debtors' Derivatives ADR Notice and provide a brief explanation setting forth the reasons for such denial ((i) and (ii) together, the "Statement of Position").

20.     Upon receipt of a Counterparty's Statement of Position, the Debtors will have fifteen (15) days to serve a reply (the "Reply") on the Counterparty (which Reply shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), which may include (i) a modification of the Debtors' demand in the Derivatives ADR Notice, (ii) a response to a Derivative Counterparty's counteroffer, (iii) provide additional information supporting the demand made in the Derivatives ADR Notice, or (iv) reject any counteroffer in which case the Derivatives ADR Dispute will automatically proceed to the Mediation Stage.  If the Derivative Counterparty fails to respond, the Debtors may elect to file an application for (a) sanctions, (b) entry of a judgment for recovery of the amounts sought in the Derivative ADR Notice, or (c) immediate entry into the mediation stage (collectively, the "Default Remedies").  The Derivatives ADR Package, Statement of Position, the Reply, and the Default Remedies are collectively referred to herein as the "Derivative Notice/Response Stage."

**Settlement Conferences**

21.     At anytime after receipt of a Derivative ADR Package, a Debtor or a Derivatives Counterparty may request an initial telephonic settlement conference (a "Settlement

Conference") (or in person in the parties agree) to be held within five (5) calendar days of the receipt of such request (the "Notice of Settlement Conference").  Upon receipt of the Notice of Settlement Conference, the recipient will be required to respond within two (2) calendar days by either accepting the proposed date and time in the Notice of Settlement Conference or proposing an alternate date and time that is no later than five (5) calendar days from the date and time in the Notice of Settlement Conference.  If the parties are not able to agree on a time and date for the Settlement Conference, the Derivatives ADR Dispute will proceed to the Mediation Stage (as defined below).

22.     The Debtors propose that the parties will allocate approximately one (1) hour for the initial Settlement Conference and that only the Debtor and its representatives and the Derivatives Counterparty and its representatives will participate.  All discussions will be subject to section 408 of the Federal Rules of Evidence and the confidentiality provisions of the Standing Order.

**Mediation Stage**

23.     If the Debtors and the Derivatives Counterparty are not able to resolve the Derivatives ADR Dispute during the Notice/Response Stage such dispute will proceed to mediation (the "Mediation Stage").  The Debtors and the Derivatives Counterparty together will contact the mediator to schedule the initial mediation date.  The Debtors believe that the Court should select one mediator who will hear and preside over all mediations hereunder.

24.     If the initially selected mediator is unwilling or unavailable to serve, then the parties will select an alternate mediator as mutually agreed in writing by all parties subject to the applicable Derivatives ADR Dispute.  If the Debtors and the Derivatives Counterparty cannot

agree upon a mediator within ten (10) calendar days after the Derivative Notice/Response Stage, the Court will appoint one or more mediators.

25.    The mediator will have the broadest possible discretion as provided under the Standing Order including the discretion to certify specific legal issues to the Court for decision.

26.    The mediation proceedings will take place in New York, New York unless agreed to by the parties and the mediator.  The addition or elimination of mediation locations will be within the sole discretion of the Debtors.

27.    Any parties to a particular mediation will have the option of submitting a mediation brief to the mediator, with service upon the other parties to the mediation and the Creditors' Committee; provided, that the mediator may direct the parties to submit and serve mediation briefs on each other, the mediator, and the Creditors' Committee.  In either case, the mediation briefs will be filed at least five (5) days prior to the scheduled mediation proceeding and will not be filed with the Court.

28.    All parties to a Derivative ADR Dispute will appear in person to the mediation proceeding.  The Creditors' Committee may attend and participate in all mediations. Each party must have a business principal in attendance having settlement authority.  In addition, the parties' counsel may attend the mediation proceeding.

### General Mediation Rules

29.    Upon the filing of a notice and a hearing by either the Debtors or a Derivatives Counterparty, the Court may sanction the parties for failing to comply with the Derivatives ADR Procedures.  If the mediator reports to the Court that a party subject to the Derivative ADR Procedures is not cooperating, the Court may, on its own motion, schedule a

hearing to consider sanctions ("<u>Sanctions</u>") against that party for its failure to cooperate in good faith.  Sanctions as they relate to the Debtors may include but are not limited to (i) attorneys' fees; (ii) fees and costs of the mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.  Sanctions as they relate to Derivatives Counterparties may include but are not limited to (a) attorneys' fees, (b) fees and costs of the Mediator, or (c) an award of the Derivatives ADR Dispute up to the amount specified in the Debtor's Derivatives ADR Notice.  Litigation with respect to the issuance of Sanctions will not delay the commencement of the Mediation Stage of these procedures upon the completion of the Notice/Response Stage.

30.    All proposed deadlines may be modified by the mutual consent of the Debtors and the applicable Derivatives Counterparties or by the Court for cause shown.  All parties will be responsible for their counsel fees and other costs of the mediation; provided, however, that the party requesting the mediation will be responsible for the fees and expenses of the mediator.

31.    Except to the extent a Derivatives Counterparty affirmatively chooses the Mediation Stage discussed herein, participation in the Derivative ADR Procedures will not waive any right to a jury trial that might otherwise exist.

## **Confidentiality**

32.    The Debtors propose that the confidentiality provisions of section 5.0 of the Standing Order will be incorporated by reference into an order approving this Motion.  No statements or arguments made or positions taken by the mediator, the applicable Debtors, the Creditors' Committee, and Derivative Counterparties during any part of the alternative dispute

resolution process, including, Settlement Conferences and the Mediation Stage may be disclosed for any purpose by the mediator or any such parties or their attorneys or advisors to the Court or any third party.  Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving is such capacity will remain confidential and will not be provided to the Court, unless they would be otherwise admissible.  In addition, the mediator will not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; provided, however, the mediator may report to the Court the status of the mediation efforts but will not disclose the content thereof.

33.     The Debtors propose that Rule 408 of the Federal Rules of Evidence will apply to all aspects of the Derivative ADR Procedures including the Settlement Conferences and Mediation Stage.

## The Mediation Procedures Should Be Approved

34.     Section 1.1 of the Standing Order permits the Court to assign a matter to mediation upon the motion of a party in interest, the U.S. Trustee, or on its own motion.  Further, section 1.3 of the Standing Order permits the Court to assign an adversary proceeding, contested matter, or other dispute to mediation.  Moreover, section 105(a) of the Bankruptcy Code grants bankruptcy courts the "equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"  *New Eng. Dairies, Inc v. Dairy Mart Conv. Stores, Inc.* (*In re Dairy Mart Conv. Stores, Inc.*), 351 F.3d 86, 91 (2d Cir. 2003) (quoting 11 U.S.C. § 105(a)).

35.     Thus, the Standing Order expressly pronounces the intent of the Court to facilitate the use of mediation in all matters.  Consistent with the intent of the Standing Order, the Debtors are requesting that the Court exercise its authority to implement the Derivatives

ADR Procedures with respect to the Derivative ADR Disputes that Debtors have with the

Derivative Counterparties.  The Derivative Contracts are complex agreements and the claims

thereunder are further complicated by the issues relating to the appropriateness of setoff,

termination, valuation, computation of termination payments, and notice in the chapter 11

context.

36.    The litigation of these issues without at least exploring the possibility of

whether the parties can reach an early resolution does not serve the interest of the Debtors, their

estates, or the economic stakeholders in these cases in light of the potential value of the Debtors'

claims against the Derivative Counterparties.  Prolonged litigation will slow the administration

of these cases and in some cases risk that the value of the open Derivative Contracts could be lost

as a result of market volatility.

37.    Realizing the inherent value of the Debtors' claims arising from their

terminated and open Derivative Contracts and their benefit to these estates, the Debtors believe

that the Derivative ADR Procedures will help develop a productive, consensual resolution

process that will reduce the costs associated with the reconciliation and collection of the Debtors'

affirmative claims under their Derivative Contracts.

38.    The relief requested in the Motion is substantially similar to the relief that

has been granted by this Court in connection with similar motions to implement mediation

procedures.  *See, e.g.*, *In re Enron Corp.*, et al., Case No. 01-16034 (ALG) (Bankr. S.D.N.Y.

March 4, 2003) [Docket No. 9533] and (Bankr. S.D.N.Y. March 20, 2003) [Docket No. 9862]

(ordering mediation procedures with respect to twenty-four adversary proceedings regarding

certain trading disputes); *In re Ames Department Stores, Inc., et al.*, Case No. 01-42217 (REG)

(Bankr. S.D.N.Y. June 25, 2007) [Docket No. 3195] (ordering mandatory mediation procedures

with respect to over 900 adversary proceedings that the debtors commenced against various preference defendants).

39.    The fundamental purpose of mediation is to allow an unbiased third party to assist adversaries in reaching resolution of issues upon which they disagree.  The Debtors submit that the Derivative ADR Procedures will be a worthwhile process that will enable the Debtors to reduce unnecessary administrative expenses, maximize the value of the Debtors' claims under the Derivative Contracts, and promoting judicial efficiency by consensually resolving these claims.  Based upon the foregoing, the Debtors request that the Court approve the Derivative ADR Procedures.

## Notice

40.    No trustee has been appointed in these chapter 11 cases.  The Debtors, in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] (the "Case Management Order"), have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all Derivative Counterparties; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

41.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  July 20, 2009
         New York, New York

/s/ Lori R. Fife
Lori R. Fife
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                  :
In re                                             :    **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :    **08-13555 (JMP)**
                                                  :
                              **Debtors.**        :    **(Jointly Administered)**
                                                  :
                                                  :
-------------------------------------------------------------------x

### ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

The following alternative dispute resolution procedures (the "Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

### FINDINGS

On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including swap agreements and forward contracts (the "Derivatives Contracts with Recovery Potential"), exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties. The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice. The Court further FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation. The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings

and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery

with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective

communication between the affected parties, consultation, negotiation, and, when necessary,

mediation procedures.

1.    Standing Mediation Order.  All provisions of the General Order #M-143,

adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in

Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District

of New York and all existing and further amendments thereto (the "Standing Order") shall apply

to the mediations to be conducted under this order.

2.    Derivatives ADR Counterparties.  To date, the Debtors have identified

approximately two hundred fifty (250) counterparties (which number will surely increase) to

Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors

to believe that disagreement exists over the amounts that may be owed to Debtors under such

contracts (whether or not an actual lawsuit or adversary proceeding has been commenced),

whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of

such counterparty or a person or entity who exercised or failed to exercise duties in relation to

such a contract (collectively, the "Derivative Counterparties").

3. <u>Derivatives ADR Disputes</u>.  Any Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures by serving the following on a Derivative Counterparty:

a.   a copy of this Order; and

b.   a Derivatives ADR Notice (as defined below) (collectively, the "<u>Derivatives ADR Package</u>").

For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives Counterparty shall be deemed adequate if such service or notice is provided to the Derivatives Counterparty, the Derivatives Counterparty's counsel, legal guardian, estate representative, or other representative by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

4. <u>Settlement of Disputes During the Derivatives ADR Procedures</u>.  Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Derivatives ADR Dispute at any time before, during, or following the designation of a Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the parties, provided that such settlement

a.   complies with (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667], or (iii) other orders in these bankruptcy cases permitting such settlement, or

b.   is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors' Committee (the "Creditors' Committee"), the contents of any papers submitted during the mediation stage described below, and all discussions in mediation shall remain confidential and privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

     5.  Participation Mandatory.  Unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty, after service of an ADR Package on a Derivatives Counterparty,

     a.    compliance with the ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for both the applicable Debtor or Debtors and each Derivatives Counterparty; and

     b.    no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but each Debtor serving a Derivatives ADR Package and each Derivatives Counterparty must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the Derivatives ADR Procedures specified below for all Derivatives ADR Disputes covered by such notice.

     6.  No Substitute For Claims Procedures.  The Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures.  Nothing contained herein, however, shall prevent a Derivatives Counterparty from asserting in any respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a

Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder.

7.    <u>Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivative Counterparties</u>.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Derivative ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Derivative ADR Procedures.

## NOTICE/RESPONSE STAGE

8.    <u>Notice/Response</u>.  The initial stage of the Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR Dispute on a consensual basis (the "<u>Notice/Response Stage</u>").  The Notice/Response Stage shall include:

a.    <u>Derivatives ADR Notice</u>.  Debtors shall serve upon a Derivatives Counterparty a notice containing sufficient information regarding the Derivatives ADR Dispute to make the Derivatives Counterparty aware of the nature of Debtor's affirmative claim and of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "<u>Derivatives ADR Notice</u>").

b.    <u>Derivatives Counterparty's Response to Notice</u>.  A Derivatives Counterparty must respond to the Derivatives ADR Notice in writing through a "Statement of Position" within twenty (20) calendar days from the date of the Derivatives Counterparty's receipt of the Notice.  The response options available to a Derivatives Counterparty are as follows (the "<u>Responses</u>"):

i.    <u>Agreeing to Settle the Demand</u>.  If a Derivatives Counterparty agrees to settle the demand in the Derivatives ADR Notice, the Counterparty shall state in writing that the offer of settlement in the Derivatives ADR Notice is accepted.  The parties will then execute a settlement and general release (including a confidentiality provision) and, if the matter is in litigation, the Debtor shall dismiss any applicable claims in a lawsuit or adversary proceeding with prejudice upon execution of the release; or

ii.    <u>Denying the Demand</u>.  A Derivatives Counterparty may decline to settle for the amount stated in the demand in the Derivatives ADR Notice, in which case the Derivatives Counterparty must include a brief explanation in the Response to the Derivatives ADR Notice setting forth the reason(s) for such denial.  In addition, the Derivatives Counterparty may provide a counteroffer to the demand in the Derivatives ADR Notice.

c.    Failure to Respond.  Failure to provide a timely Response to the Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may result, at the option of Debtors, either in an application to the Court for Sanctions (as defined below) as set forth below, including an order or judgment for  recovery of amounts demanded by Debtors in the Derivatives ADR Notice, or immediate entry into the mediation stage.

d.    Reply to Response.  The Debtor shall have fifteen (15) days from the date of the receipt of the Response to serve a reply to the Response to the Derivatives ADR Notice (which Response shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), in which the Debtor may (i) modify its Demand, (ii) respond to any counteroffer, (iii) provide additional information in support of its demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer in which case the Derivatives ADR Dispute will automatically proceed to the Mediation Stage.  If the Debtor fails to respond within this period, the Derivatives ADR Dispute will automatically proceed to the Mediation Stage.

9.    Request for Initial Settlement Conference.  At any time in the Notice/Response Stage, either a Debtor or a Derivatives Counterparty may request an initial telephonic settlement conference by written request, to be held within five (5) calendar days. Within two (2) calendar days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request.  If an

acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage. At least one hour shall be reserved for the initial conference to discuss settlement. No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present. Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.

## MEDIATION STAGE

10. <u>Mediation</u>. Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").

    a.    Debtor and the Derivatives Counterparty together shall contact the mediator to schedule the initial mediation date.

    b.    <u>Powers of Mediator</u>. The mediator shall have the broadest possible discretion consistent with the Standing Order described below, including the discretion to certify specific legal issues to the court for decision.

    c.    <u>Choice of Mediator</u>. **INSERT MEDIATOR NAME(S) is (are) APPOINTED** as the mediator(s) for Derivatives ADR Disputes reaching the Mediation Stage. If **NAME(S)** is (are) not available to serve as mediator, an alternate mediator shall be selected as mutually agreed in writing by all parties to a specific Derivatives ADR Dispute or group of related Derivatives ADR Disputes. Any such alternative shall be deemed to have been appointed upon entry into a written stipulation to that effect

by all Debtors and Derivatives Counterparties participating in the

applicable Derivatives ADR Dispute or Disputes.  If the parties cannot

agree upon a selection of mediator within ten (10) calendar days of the

completion of the Notice/Response Stage, the court shall appoint one or

more mediators

d.      Mediation Sites.  All mediation proceedings will take place in New York,

New York, unless agreed to by the parties and the mediator.  The addition

or elimination of Mediation Sites shall be within the sole discretion of the

Debtors.

e.      Mediation Briefs.  Any party to a Mediation may submit a Mediation

Brief, with service upon the other parties to the Mediation and upon the

Creditors' Committee; provided, however, the Mediator may order that the

parties to serve upon each other, the Mediator, and the Creditors'

Committee a Mediation Brief.  If a party to the Mediation opts to serve a

Mediation Brief upon another party to the Mediation hereunder, such

Mediation Brief shall also be filed with the Mediator and the Creditors'

Committee.  Any such Mediation Brief shall be served and filed no later

than five (5) days prior to the scheduled initial Mediation Date.  No

Mediation Brief shall be filed with the Court.

f.      Appearance at Mediations.  Unless otherwise ordered by the mediator all

participants in the mediation for the applicable Derivatives ADR Dispute,

must appear in person with a business principal who has settlement

authority. The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

## OTHER PROVISIONS

11. <u>Deadlines</u>. Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by: (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12. <u>Sanctions for Parties</u>. Each Debtor and each Derivatives Counterparty must participate in good faith with these Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Derivatives ADR Notice. If, after notice and a hearing, the Court determines that the Debtors or a Derivatives Counterparty have not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors or the Derivatives Counterparty may be subject to such sanctions as the Court deems appropriate (the "<u>Sanctions</u>"). If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the mediation procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions. Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage. Sanctions shall include, but are not limited to:

a.   <u>Against Debtors</u>: (i) attorneys' fees; (ii) fees and costs of the Mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts with Potential Recovery; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.

b.      Against Derivatives Counterparties:  (i) attorneys' fees; (ii) fees and costs

of the Mediator; (iii)  an award of the Derivatives ADR Dispute up to the

amount specified in the Debtor's Notice (as defined below).

13. Confidentiality.  The confidentiality provisions of section 5.0 of the Standing

Order are hereby incorporated by reference into this Order.  No statements or arguments made or

positions taken by the mediator, the applicable Debtors, Derivative Counterparties, or the

Creditors' Committee during any part of the alternative dispute resolution process, including

Settlement Conferences and the Mediation Stage may not be disclosed by the mediator or any

such parties or their attorneys and advisors to the Court or any third party.  Similarly, all briefs,

records, reports, and other documents received or made by the mediator while serving is such

capacity shall remain confidential and not be provided to the Court, unless they would be

otherwise admissible.  In addition, the mediator shall not be compelled to disclose such records,

reports, and other documents in connection with any hearing held by the Court; *provided*,

*however*, the mediator may report to the Court the status of the mediation efforts but shall not

disclose the content thereof.  Rule 408 of the Federal Rules of Evidence shall apply to all aspects

of the Derivative ADR Procedures including Settlement Conferences and Mediation Stage.

14. Jury Trials Unaffected.  Except to the extent a Derivatives Counterparty

affirmatively chooses the mediation option set forth herein, participation in the Derivatives ADR

Procedures shall not waive any right to a jury trial that might otherwise exist.

15. <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation shall

bear its own counsel fees and other costs of the Mediation; provided, however, that the party who

requests the Mediation shall pay the reasonable fees and costs charged by the Mediator.

**SO ORDERED:**

August __, 2009
New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE