WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 COMPELLING DISCOVERY

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for entry of an order compelling certain discovery from Consolidated Container Company LLC, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck,

One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq. and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be received no later than **July 31, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 21, 2009
    New York, New York

/s/ Richard W. Slack
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                              :

**In re**                              :         **Chapter 11 Case No.**
                              :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :        **08-13555 (JMP)**
                              :

                **Debtors.**        :         **(Jointly Administered)**
                              :
                              :
-------------------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO**
**BANKRUPTCY RULE 2004 COMPELLING DISCOVERY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

           Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), hereby move for

entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), compelling certain discovery from Consolidated Container

Company LLC ("Consolidated"), and respectfully represent:

## <u>PRELIMINARY STATEMENT</u>

1.        This motion seeks basic and necessary information from a derivative counterparty to allow Lehman Brothers Special Financing, Inc. ("<u>LBSF</u>") to determine whether the valuation of a terminated derivative contract by Consolidated was proper.  Although LBSF typically seeks this information cooperatively in the first instance (and hundreds of counterparties who have terminated and then provided valuation statements have provided LBSF with similar information voluntarily), the counterparty here, Consolidated, has refused to provide it.

2.        The background of the agreement with Consolidated is straightforward.  In 2007, LBSF entered into two interest rate swap transactions with Consolidated.  On December 4, 2008, following the bankruptcies of LBHI and the affiliated debtors (which includes LBSF), Consolidated terminated the swap transactions (the "<u>Terminated Transactions</u>").

3.        Based on the underlying value of the Terminated Transactions at the time of termination, LBSF was "in-the-money" with respect to the Terminated Transactions.  Thus, upon termination LBSF expected that Consolidated would owe it millions of dollars in unpaid payments in addition to millions of dollars based on the market value of the Terminated Transactions.  The agreement between LBSF and Consolidated provided that Consolidated, as the non-defaulting party, would have the ability to control the valuation process and calculate the amounts due to LBSF under the Terminated Transactions.  Despite the fact that the Terminated Transactions appeared to represent a significant value to LBSF based on their market value at the time of termination, Consolidated determined that it owed LBSF only approximately $2.5

million, which did not represent the market value of the Terminated Transactions, but rather the amount that Consolidated was scheduled to pay to LBSF on or prior to the Termination Date but which it failed to pay plus interest accrued thereon (which amount was further reduced by Consolidated based on other costs and expenses).

4.      Typically, a defaulting party will want to confirm that the non-defaulting party reasonably determined in good faith the amount owed after termination, and understand the non-defaulting party's basis for arriving at this amount.  It is common for a non-defaulting party to share information and confer in good faith with the defaulting party concerning the calculation when asked.  Despite repeated requests, Consolidated has refused to share with LBSF information regarding the steps that Consolidated took to determine the amount it says it owes LBSF.

5.      As an estate in bankruptcy, LBSF has an obligation to its creditors to make sure that derivative counterparties properly value swap agreements.  The information sought from Consolidated is designed to help LBSF meet that duty.  Since Consolidated has refused to provide information to LBSF on a voluntary basis, this Motion is necessary.  The Court should therefore grant the Motion compelling discovery from Consolidated pursuant to Bankruptcy Rule 2004.

## **BACKGROUND**

6.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  LBSF commenced its chapter 11 case on October 3, 2008.  The Debtors' chapter 11 cases have been consolidated for procedural purposes

only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The

Debtors are authorized to operate their businesses and manage their properties as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of

unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors'

Committee").

## JURISDICTION

8.      This Court has subject matter jurisdiction to consider this matter

pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §

157(b).

## RELIEF REQUESTED

9.      By this Motion, the Debtors request entry of an order pursuant to

Bankruptcy Rule 2004:

>  a.      directing Consolidated to produce for examination by the
>  Debtors, by 10:00 a.m. (New York time) on August 25, 2009 at the
>  office of the Debtors' bankruptcy counsel, Weil, Gotshal &
>  Manges LLP, 767 Fifth Avenue, New York, New York 10153
>  (Attention: Lori R. Fife, Richard W. Slack and Robert J. Lemons),
>  the documents described on the attached Exhibit I hereto; and
>
>  b.      directing Consolidated to designate an individual or
>  individuals with knowledge of the matters described below in
>  paragraph 22 and compelling Consolidated to produce that
>  individual(s) to be examined by the Debtors under oath on
>  September 11, 2009, commencing at 10:00 a.m. (New York time)
>  at the office of the Debtors' bankruptcy counsel, Weil, Gotshal &
>  Manges LLP, 767 Fifth Avenue, New York, New York 10153.

## THE TRANSACTIONS

10.     LBSF and Consolidated are parties to a 1992 ISDA Master Agreement, including the schedule thereto (the "Schedule"), dated as of April 26, 2007 (the 1992 ISDA Master Agreement and the Schedule together, the "Master Agreement"). The Master Agreement provides the basic terms of the parties' contractual relationship and contemplates being supplemented by trade confirmations that provide the economic terms of the specific transactions agreed to by the parties.  (A copy of the Master Agreement is annexed as Exhibit A hereto.)

11.     Pursuant to the terms agreed upon in the Master Agreement, LBSF and Consolidated entered into two interest rate swap transactions (the "Transactions"), the terms of each of which were documented by trade confirmations dated April 27, 2007 (as amended and replaced in its entirety by the trade confirmation dated June 25, 2007, the "April Confirmation") and August 30, 2007 (the "August Confirmation," and together with the April Confirmation, the "Confirmations") (the Confirmations together with the Master Agreement, the "Agreement"). (Copies of the April Confirmation, together with the trade confirmation dated June 25, 2007 that amended and replaced the April Confirmation in its entirety, and the August Confirmation are annexed as Exhibits B and C hereto, respectively).  LBHI acts as a credit support provider for the payment obligations of LBSF under the Agreement.

12.     Section 5(a)(vii)(4) of the Master Agreement provides that the commencement of a bankruptcy case by LBSF or LBHI, as LBSF's credit support provider, is an event of default.  On December 4, 2008, Consolidated delivered a letter (the "Termination Notice") to LBSF, stating that an event of default had occurred under Section 5(a)(vii)(4) of the Master Agreement.  (A copy of the Termination Notice is

annexed as Exhibit D hereto.)  The Termination Notice designated December 5, 2008 as

the early termination date (the "Termination Date") for all Transactions.

13.    Pursuant to the Agreement, a termination amount is calculated

whenever transactions under the Agreement are subject to early termination.  The

Agreement specifies that the "Loss" method be used to determine which party owes and

how much it owes.  The Agreement defines Loss in relevant part as

>an amount that [the non-defaulting party] reasonably determines in good
>faith to be its total losses and costs (or gain . . .) in connection with . . .
>[the] [t]erminated [t]ransactions . . . including any loss of bargain, cost of
>funding, or, at the election of such party but without duplication, loss or
>cost incurred as a result of its terminating, liquidating, obtaining, or
>reestablishing any hedge or related trading position (or any gain resulting
>from any of them).  Loss includes losses and costs (or gains) in respect of
>any payment or delivery required to have been made . . . on or before the
>relevant [e]arly [t]ermination [d]ate and not made . . . A party may (but
>need not) determine its Loss by reference to quotations of relevant rates or
>prices from one or more leading dealers in the relevant markets.

See Section 14 of the Agreement.

14.    The Agreement provides that if the termination amount is a

positive number, then the defaulting party will pay it to the non-defaulting party, but if

the termination amount is a negative number, then the non-defaulting party will pay that

amount to the defaulting party.  The Agreement allows the non-defaulting party to

determine the termination amount, regardless of whether it was in-the-money or out-of-

the-money on the Termination Date.

15.    On December 23, 2008, Consolidated delivered to LBSF a three-

page letter (the "Valuation Letter"), pursuant to Section 6(d)(i) of the Agreement

containing Consolidated's determination of the amount (the "Termination Amount")

payable to LBSF, as the party in-the-money on the Termination Date. (A copy of the

Valuation Letter is annexed as Exhibit E hereto.)

16.    The Valuation Letter informed LBSF that based on Consolidated's

calculations, the Termination Amount was $2,535,523.75, payable to LBSF as the party

which was in-the-money on the Termination Date.  Consolidated calculated the

Termination Amount by adding the value of the Terminated Transactions at the time of

termination (by Consolidated's calculation, $0), to amounts that should have been paid by

Consolidated on or prior to termination under the Agreement, but which it did not pay. It

then subtracted certain costs and expenses which it says were appropriate.

17.    Specifically, first, Consolidated said it had sought bids for

replacement swaps to replace the Terminated Transactions.  However, Consolidated

explained in its Valuation Letter that it had not received any bids which it "believed in

good faith were executable or represented realistic replacements for" the Terminated

Transactions.  Because Consolidated did not receive any executable replacement bids for

Terminated Transactions, it stated that it valued those Transactions at zero dollars.

Second, Consolidated added the amounts that became payable to LBSF on or prior to the

Termination Date and which remained unpaid as of such Termination Date (equal to

$2,907,072.22 *plus* default interest that accrued on these unpaid amounts of $11,248.53),

to the value ($0) of the Terminated Transactions.  Thus, the amount of the payment

before alleged deductions was $2,918,320.75.  Third, Consolidated subtracted the cost of

an interest rate cap that it purchased in lieu of a replacement swap of $160,000.00,

expenses supposedly incurred by Consolidated of $72,797.00, and contingent expenses

Consolidated might incur as legal and other expenses if LBSF challenged its calculation

of $150,000.  Consolidated therefore arrived at the Termination Amount of
$2,535,523.75.

18.      Consolidated did not provide Lehman with any details on how it
had calculated the unpaid amounts and the interest on the unpaid amounts, documentation
regarding the interest rate cap, or any documentation to support its claim of
approximately $72,000 in expenses and $150,000 in contingent legal expenses.

19.      On December 30, 2008, within one week of receiving the
Valuation Letter, LBSF sent a letter to Consolidated (the "December 30, 2008 Letter")
informing it that LBSF would "require additional detail" with respect to many aspects of
the valuation provided by Consolidated and raised concerns about the valuation that
LBSF needed to understand and investigate.  (A copy of the December 30, 2008 Letter is
annexed as Exhibit F hereto.)  LBSF noted that "the unavailability of quotations in the
market does not mean that market values in favor of the defaulting party are ignored"
under the Loss methodology.  Although representatives of LBSF and Consolidated
discussed Consolidated's determination of the Termination Amount at various times
between January and April, 2009, Consolidated never delivered the information requested
in the December 30, 2008 Letter.

20.      On April 15, 2009, LBSF again wrote Consolidated (the "April 15,
2009 Letter"), asking it to provide LBSF with information and documents in nine specific
categories relevant to the determination of the Termination Amount.  (A copy of the
April 15, 2009 letter is annexed as Exhibit G hereto.)  These categories were designed to
provide Lehman with the information necessary to verify Consolidated's calculation of
the Termination Amount.  For example, they included documents that would support the

specific fees and expenses that had been deducted from the Termination Amount by Consolidated.  They also included copies of Consolidated's communications with the leading dealers from whom it solicited quotations, so that LBSF could determine whether, as Consolidated maintained, none of the quotations it had received "were executable or represented realistic replacements for" the Terminated Transactions.

21.    On or about April 27, 2009, Consolidated's counsel personally informed LBSF that Consolidated would not produce the documents requested in the April 15, 2009 Letter.  Consolidated delivered a follow-up letter to LBSF dated June 8, 2009 (the "June 8, 2009 Letter"), in which it confirmed that it would not be providing the information requested in the April 15, 2009 Letter.  (A copy of the June 8, 2009 Letter is annexed as Exhibit H hereto.)

## THE SCOPE OF INFORMATION REQUESTED

22.    Exhibit I hereto contains a list of the types of documents that the Debtors require from Consolidated.  The list includes documents and information relating to Consolidated's determination of the Termination Amount.  Without limiting the generality of the foregoing, the list includes documents concerning (as that word is defined in Southern District of New York Local Civil Rule 26.3(c)(7)):

(i) any valuation of the Terminated Transactions;

(ii) the requests by or on behalf of Consolidated for quotations from leading dealers or other persons concerning or related to the Terminated Transactions;

(iii) unpaid amounts included in Consolidated's calculations of any amounts due with respect to the Terminated Transactions;

(iv) transactions executed in order to replace any of the Terminated Transactions;

(v) communications related to quotations, unpaid amounts, and/or replacement transactions in connection with the Terminated Transactions;

(vi) persons involved with respect to valuations and/or replacement transactions;

(vii) fees and expenses allegedly incurred or expected to be incurred by Consolidated;

(viii) financial/accounting entries made on Consolidated's books and records as a result of the termination of each Terminated Transaction;

(ix) market information for each Terminated Transaction; and

(x) documentation of the Terminated Transactions.

23.    The general scope of questions to be asked of the individual(s) designated by Consolidated to be examined under oath will relate to the subjects covered by the requests identified on Exhibit I and the documents which are produced in response thereto.

## ARGUMENT

24.    Bankruptcy Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The examination may be compelled by the issuance of a subpoena, as provided by Bankruptcy Rule 9016.  See Fed. R. Bankr. P. 2004(c).

25.    The scope of an examination sought under Bankruptcy Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of

the debtor, or to any matter which may affect the administration of the debtor's estate, or

to the debtor's right to a discharge."  See Fed. R. Bankr. P. 2004(b).  Thus, a "party in

interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and

to ascertain whether wrongdoing has occurred."  In re Hilsen, 2008 WL 2945996, *4

(Bankr. S.D.N.Y., July 25, 2008) (Peck, J.) (citations omitted); see also In re Recoton

Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004

examination is to assist a party in determining the nature and extent of the bankruptcy

estate, revealing assets, examining transactions, and assessing whether wrongdoing has

occurred."; In re Coffee Cupboard, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The

purpose of a Rule 2004 examination 'is to show the condition of the estate and to enable

the Court to discover its extent and whereabouts, and to come into possession of it, that

the rights of the creditor may be preserved.'") (citing Cameron v. U.S., 231 U.S. 710, 714

(1914).

      26.    The granting of a motion under Bankruptcy Rule 2004 is within

the discretion of the Court.  See In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y.

2002) ("As the permissive language of the rule suggests, the Court has the discretion to

grant a request for a 2004 examination . . .") (citations omitted).  Bankruptcy Rule 2004

is "debtor-centric and allows considerable leeway for all manner of so-called fishing

expeditions provided that there is a reasonable nexus to the debtor and the administration

of the debtor's case".  In re Hilsen, 2008 WL 2945996, at *1.  Bankruptcy Rule 2004

requires a court to "balance the competing interests of the parties, weighing the relevance

of and necessity of the information sought by examination."  In re Drexel Burnham

Lambert Group, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

27.     The identification of any assets that are potentially property of LBSF's estate, and the evaluation of potential claims related to such assets, is important in ensuring that all available sources of value are located and pursued for the benefit of LBSF's creditors.  The amount that LBSF is owed under the Agreement is property of the estate, and thus, it is important that LBSF confirm that the counterparty, here Consolidated, used a proper calculation of the Termination Amount under the Agreement.  The discrete categories of documents and other information sought by LBSF in this Motion are targeted to provide it with information needed to evaluate Consolidated's valuation and determine whether its estate has a claim against Consolidated for additional amounts.

## NO PRIOR REQUEST FOR RELIEF

28.     No prior motion for the relief requested herein has been made to this Court or any other court.

## NOTICE

29.     No trustee has been appointed in these chapter 11 cases.  The Debtors, in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837], have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Consolidated, and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

WHEREFORE, for the reasons stated herein, the Debtors respectfully request that the Court enter an order, pursuant to Bankruptcy Rule 2004, granting the relief requested in this Motion in its entirety and such other and further relief as may be just and proper.

Dated: July 21, 2009
       New York, New York

WEIL, GOTSHAL & MANGES LLP

By:  /s/ Richard W. Slack
     Lori R. Fife
     Richard W. Slack
     Robert J. Lemons

     WEIL, GOTSHAL & MANGES LLP
     767 Fifth Avenue
     New York, New York 10153
     Telephone: (212) 310-8000
     Facsimile: (212) 310-8007

     Attorneys for Debtors
     and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :        **08-13555 (JMP)**
                                                    :
                            **Debtors.**            :        **(Jointly Administered)**
                                                    :
                                                    :
-------------------------------------------------------------------x

## ORDER PURSUANT TO BANKRUPTCY
## RULE 2004 COMPELLING DISCOVERY

Upon the motion, dated July 21, 2009 (the "<u>Motion</u>"), of Lehman Brothers

Holdings, Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor

affiliates, "<u>Lehman</u>"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure,

compelling Consolidated Container Company LLC  ("<u>Consolidated</u>") to produce certain

discovery, as more fully set forth in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing

Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern

District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided, and it appearing that no other or further notice

need be provided; and the Court having reviewed the Motion; and approval of the relief

requested in the Motion being within the sound discretion of the Court; and the Court having

determined that the relief sought in the Motion is in the best interests of the Debtors, their

creditors and all parties in interest; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein, including that the

examination of Consolidated relates to the "property or to the liabilities and financial condition"

of the Debtors and may "affect the administration of the [Debtors'] estate"; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing

therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that Consolidated is directed to produce all responsive documents

described in Exhibit A attached hereto, and that such documents must be produced by 10:00 a.m.

(New York time) on August 25, 2009 at the office of the Debtors' bankruptcy counsel, Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Lori R. Fife,

Richard W. Slack, and Robert J. Lemons); and it is further

ORDERED that Consolidated shall designate an individual or individuals with

knowledge of the matters and documents described in Exhibit A, and produce that individual(s)

to be examined by the Debtors under oath and in accordance with Bankruptcy Rule 2004 and the

examination shall be taken on September 11, 2009, commencing at 10:00 A.M. (New York time)

at the office of the Debtors' bankruptcy counsel, Weil, Gotshal & Manges LLP, 767 Fifth

Avenue, New York, New York 10153 and shall continue day to day until concluded by the

Debtors; and it is further

ORDERED that, to the extent necessary, the Debtors' rights are reserved to

request additional documents and depositions under Bankruptcy Rule 2004 based on any

information that may be revealed as a result of the documents provided pursuant to this Order;

and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.


Dated:  August __, 2009
        New York, New York


_____

HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.　　"Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

2.　　"Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

3.　　The terms "Debtor," "Debtors," "LBHI" or "LBSF" shall mean Lehman Brothers Holdings, Inc. or Lehman Brothers Special Financing, Inc.

4.　　"Consolidated," "You," and "Your" shall mean Consolidated Container Company LLC and any person acting on its behalf or under its control, including any of its agents, subsidiaries, affiliates, predecessors, successors, or representatives.

5.　　The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

6.      The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

7.      The term "Master Agreement" shall mean the 1992 ISDA Master Agreement and the schedule thereto, entered into by Consolidated and LBSF as of April 26, 2007.

8.      The term "Replacement Transactions" shall mean transactions entered into by Consolidated to replace the Terminated Transactions, including an interest rate cap.

9.      The term "Terminated Transactions" means the transactions terminated by Consolidated in its December 4, 2008 letter to LBSF.

10.     The term "Termination Date" means December 5, 2008.

11.     The term "Unpaid Amounts" shall mean the amounts that Consolidated was scheduled to pay to LBSF on or prior to the Termination Date but which it failed to pay.

12.     The term "Valuation Letter" shall mean the letter from Consolidated, dated December 23, 2008.

## GENERAL INSTRUCTIONS

The following General Instructions apply to each request set forth herein.

1.      Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

2.      If any Document requested herein was formerly in Your possession, custody or control (or that of Your Representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document

was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

3.      If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

4.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

5.      All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request.  The method for production of each category is to be identified at the time of production.  Documents are to be produced in full and unexpurgated form.

6.      Each page of each document should be numbered consecutively.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

7.      Documents attached to each other (physically or via electronic mail) should not be separated.

8.      In producing the requested documents, even though the requests are directed to "you," furnish all documents which are available to you, including documents in the possession of any of your officers, directors, employees, agents, attorneys, investigators, accountants or consultants and not merely such documents in your possession.

9.      The requests which follow are to be regarded as continuing, and Consolidated is requested to provide by the way of supplementary compliance herewith, such additional documents as Consolidated may hereafter obtain, which will augment the documents now produced in response to the requests below.  Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after receipt thereof.

10.     The documents are to be produced for examination at the office of the Debtors' bankruptcy counsel, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York  10153 (Attention:  Lori R. Fife, Richard W. Slack and Robert J. Lemons), by 10:00 a.m. (New York time) on August 25, 2009.

11.     At a future date, the Debtors may request the production of additional documents based on information revealed during this document request.

12.     At a future date, the Debtors may request to depose additional individuals based on information revealed during this document request.

## **RELEVANT TIME PERIOD**

Unless otherwise stated, the relevant time period for each of the following requests is from and including the Termination Date through the present.

## **REQUESTS FOR PRODUCTION**

REQUEST NO. 1

All documents concerning any valuation of the Terminated Transactions, including, but not limited to, the valuation contained in the Valuation Letter.

REQUEST NO. 2

All documents containing or reflecting a description, in whole or in part, of the methodology used by Consolidated to determine the value of the Terminated Transactions, including any documents describing how quotations, if any, were utilized, and documents reflecting requests by or on behalf of Consolidated for quotations from leading dealers or any other persons.

REQUEST NO. 3

All documents concerning any Unpaid Amounts, including accrued interest thereon, included in Consolidated's calculations of any amounts due with respect to the Terminated Transactions.

REQUEST NO. 4

All documents concerning any Replacement Transaction, including, but not limited to, documents concerning (i) any consideration paid or received in connection with a Replacement Transaction, (ii) the names of any entity which effectuated a replacement, and (iii) when any such transaction was effected.

REQUEST NO. 5

All documents concerning any communications between and among, or on behalf of, Consolidated and any third party, including Consolidated's representatives, advisors, agents, accountants, and counsel related to quotations from leading dealers, Loss, Unpaid Amounts, and/or Replacement Transactions in connection with the Terminated Transactions.

REQUEST NO. 6

        Documents sufficient to identify all persons who were involved in the valuation of any Terminated Transactions or in the replacement of any Terminated Transactions and their roles in connection therewith.

REQUEST NO. 7

        All documents concerning fees, expenses, or other ancillary items incurred or expected to be incurred by Consolidated with respect to the Terminated Transactions.

REQUEST NO. 8

        All documents sufficient to identify any financial or accounting entries made on Consolidated's books and records as a result of the termination of each Terminated Transaction, and all supporting documents or other information related to the determination of such amounts.

REQUEST NO. 9

        Documents sufficient to identify the historical bid/offer spread and mid-point (or estimate) for each Terminated Transaction as of the close of business for each day from and including September 12, 2008 to and including the Termination Date, and Consolidated's internal valuation models and external sources evidencing these amounts.

REQUEST NO. 10

        Documents sufficient to identify all master agreements, other agreements, confirmations and other documents constituting the Agreement between the parties in connection with the Terminated Transactions.