Hearing date and time: August 26, 2009 at 10:00 a.m. (prevailing Eastern time)
Objection deadline: August 21, 2009 at 4:00 p.m. (prevailing Eastern time)

**K&L GATES LLP**
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

*Attorneys for FirstBank Puerto Rico*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :    Chapter 11
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :    Case No. 08-13555 (JMP)
                                                            :
                   Debtors.                                 :    (Jointly Administered)
                                                            :
------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF**
**FIRSTBANK PUERTO RICO PURSUANT TO FED. R. BANKR. P. 2004(A)**
**FOR LIMITED DISCOVERY FROM DEBTORS LEHMAN BROTHERS**
**SPECIAL FINANCING INC. AND LEHMAN BROTHERS HOLDINGS INC.**

**PLEASE TAKE NOTICE** that, upon the annexed Motion of FirstBank Puerto Rico pursuant to Fed. R. Bankr. P. 2004(a) for Limited Discovery from Debtors Lehman Brothers Special Financing Inc. and Lehman Brothers Holdings Inc. (the "Motion"), the undersigned will move before the Honorable James M. Peck, United States Bankruptcy Judge, on the **26th day of August 2009** in Courtroom 601 at the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, at **10:00 a.m.**, or as soon thereafter as counsel may be heard, for the entry of an Order authorizing and directing document discovery and deposition discovery of Lehman Brothers Special Financing Inc. and Lehman Brothers Holdings Inc. pursuant to Fed. R. Bankr. P. 2004(a).

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be

made in writing and shall set forth the basis of the objection in the form prescribed by the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure and shall be served upon (i) K&L Gates LLP, 599 Lexington Avenue, New York, New York 10022, Attn: Eli R. Mattioli, Esq., counsel for FirstBank Puerto Rico, (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and filed with the Clerk of the Court, with a courtesy copy delivered to the chambers of the Honorable James M. Peck, so as to be received no later than **August 21, 2009 at 4:00 p.m.**

Dated:  New York, New York
         July 24, 2009

                                            K&L GATES LLP

                                            /s/ Eli R. Mattioli
                                            Eli R. Mattioli
                                            Elizabeth M. Harris
                                            599 Lexington Avenue
                                            New York, New York 10022
                                            Telephone:  (212) 536-3900
                                            Facsimile:  (212) 536-3901
                                            eli.mattioli@klgates.com
                                            elizabeth.harris@klgates.com
                                            *Attorneys for FirstBank Puerto Rico*

**Hearing date and time:** August 26, 2009 at 10:00 a.m. (prevailing Eastern time)
**Objection deadline:** August 21, 2009 at 4:00 p.m. (prevailing Eastern time)

**K&L GATES LLP**
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

*Attorneys for FirstBank Puerto Rico*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re                                                                    :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    Case No. 08-13555 (JMP)
:
                                          Debtors.            :    (Jointly Administered)
:
------------------------------------------------------------x

### MOTION OF FIRSTBANK PUERTO RICO
### PURSUANT TO FED. R. BANKR. P. 2004(A) FOR
### LIMITED DISCOVERY FROM DEBTORS LEHMAN BROTHERS
### SPECIAL FINANCING INC. AND LEHMAN BROTHERS HOLDINGS INC.

FirstBank Puerto Rico ("FirstBank"), by and through its undersigned counsel, K&L Gates LLP, hereby moves for the entry of an order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, authorizing and directing: (i) document discovery of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI" and together with LBSF, the "Debtors") regarding the location of specific securities, each identified on Schedule 1, Exhibit "A" hereto, hereto by CUSIP number and September 29, 2008 principal amount (together with all payments of principal and interest made with regard to them, the "Swap Collateral") that had been delivered by First Bank to LBSF as collateral in connection with a Master Agreement dated as of January 16, 1997 between FirstBank and LBSF, as amended on

NY-693297 v1 0815117-00002

June 19, 2008 (together, with all schedules, annexes and confirmations thereto, the "Swap Agreement"); and (ii) deposition discovery of Debtors, or answers by them to written questions in the form attached hereto as Exhibit "A," regarding the extent to which either or both of the Debtors currently have possession, custody or control of the Swap Collateral, and information involving the circumstances regarding any transfer(s), of any or all of the Swap Collateral.

In support of its motion, FirstBank respectfully states as follows:

## PRELIMINARY STATEMENT

1.    FirstBank seeks discovery from the Debtors regarding the location of the Swap Collateral, which consists of 23 specifically identified debt securities issued by Federal National Mortgage Association ("Fannie Mae") and Government National Mortgage Association ("Ginnie Mae") with a total principal amount at September 29, 2008 of $62,518,197.98. Schedule 1 attached hereto includes the CUSIP numbers and the September 29, 2008 principal amounts of those debt securities.

2.    At the instruction of LBSF, FirstBank in 2004 had delivered the Swap Collateral to an account designated by LBSF, which on information and belief was maintained at JPMorgan Chase Bank ("JPMorgan"), to be held as collateral for any obligations FirstBank might have under the Swap Agreement. An account statement issued by LBSF, a copy of which is attached hereto as Exhibit "B", shows that on September 1, 2008 LBSF was holding all of the Swap Collateral.

3.    The Swap Agreement was terminated effective September 29, 2008. LBSF has acknowledged that the Swap Agreement was terminated effective that date. Further, representatives of LBSF and FirstBank have agreed that at September 29, 2008, First Bank owed to LBSF the net amount of $3,318,416.76 under the Swap Agreement, without taking account of

$853,758.97 of payments due from LBSF to FirstBank as a result of swap transactions that should have net settled during September 2008, which LBSF had failed to pay to FirstBank. A copy of an email dated July 8, 2009, from John McCarthy of LBSF to Victor Barrerras, the Treasurer of FirstBank, reflecting that agreement, and containing a schedule containing calculations relevant to what is said in the email, is attached hereto as Exhibit "C". Accordingly, under the Swap Agreement, FirstBank is entitled to the return of the preponderance of the Swap Collateral. When FirstBank asked for the return of the Swap Collateral, LBSF and its attorneys refused to confirm that LBSF was still holding the Swap Collateral or to provide information as to whether, when or where it might have been transferred.

4. FirstBank seeks an order under Rule 2004 enabling FirstBank to depose a knowledgeable representative of LBSF and, if necessary, other knowledgeable persons to determine whether the Swap Collateral is still in the specified JP Morgan account, and if it is not (as FirstBank has been told by JP Morgan is the case with regard to at least most of the Swap Collateral), to determine when the Swap Collateral was transferred, to whom it was transferred and the circumstances under which the Swap Collateral was transferred.

5. In an effort to facilitate production of this basic information and to minimize the burden upon LBSF and/or LBHI of providing the limited information that it seeks, FirstBank is willing to forego actual depositions and document discovery if the Debtors provide, in writing, answers to the questions set forth in Exhibit "A" hereto, which relate to the location(s) and any transfer(s) of the Swap Collateral.

**JURISDICTION & VENUE**

6. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**PROCEDURAL BACKGROUND**

7.  LBSF is a corporation organized and incorporated under the laws of Delaware. It is registered to do business in the state of New York with its principal place of business at 745 Seventh Avenue, New York, New York 10019. Upon information and belief, LBSF dealt in a range of derivative products including interest rate, currency, credit and mortgage derivatives as a wholly-owned subsidiary of LBHI.

8.  On September 15, 2008, LBHI filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq., as amended (the "Bankruptcy Code"). On October 3, 2008, LBSF filed a voluntary Chapter 11 petition.

9.  Since their respective Chapter 11 filings, the Debtors have continued in possession of their assets and managed their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**RELEVANT FACTS**

A.   **The Swap Agreement**

10.  FirstBank is a commercial bank serving depositors and borrowers in the Commonwealth of Puerto Rico, the Virgin Islands and the State of Florida in the United States. FirstBank is chartered and organized under the laws of Puerto Rico with a principal place of business in San Juan, Puerto Rico.

11.  FirstBank and LBSF entered into an International Swap Dealers Association ("ISDA") Master Agreement dated as of January 16, 1997 (the "Master Agreement"), with an attached Schedule (the "Schedule") and Credit Support Annex (the "Credit Support Annex"). Attached hereto as Exhibit "D" are true and correct copies of the Master Agreement, Schedule and Credit Support Annex.

12.     On or about June 26, 2008, LBSF and FirstBank entered into an amendment to the Master Agreement dated as of June 19, 2008 (the "Amendment"), which Amendment modified certain aspects of the Credit Support Annex and the Master Agreement. Attached hereto as <u>Exhibit "E"</u> is a true and correct copy of the Amendment, which together with the Master Agreement, the Schedule and the Credit Support Annex, are collectively referred to as the "Swap Agreement." The Swap Agreement states that it is governed by the laws of the State of New York. (Schedule, Part 4, ¶(h)). LBSF's obligations under the Swap Agreement are guaranteed by LBHI under a guarantee agreement dated as of January 16, 1997 (the "Guarantee Agreement").

13.     LBHI is designated as a Credit Support Provider under the Swap Agreement. (Schedule, part 4, ¶ (g)).

14.     Pursuant to the Swap Agreement, FirstBank provided the Swap Collateral to LBSF to secure its potential obligations to LBSF under the Swap Agreement. In accordance with an instruction from LBSF, FirstBank delivered the securities that comprised the Swap Collateral to LBSF by transferring these securities to a specified account with JPMorgan (the "JPMorgan Account").

### B.     The Debtor's Prepetition Defaults Under the Swap Agreement

15.     Under the Swap Agreement, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default (as such term is defined in the Master Agreement) by the other party. (Master Agreement, § 6(a)).

16.     Under the Swap Agreement, an Event of Default occurs, <u>inter alia</u>, under any of several circumstances, including the following:

> (i) **Failure to Pay or Deliver.** Failure by the party to make, when due, any payment under this Agreement or delivery under

- 5 -

> Section 2(a)(i) or 2(e) required to be made by it if such failure is not remedied on or before the third Local Business Day after notice of such failure is given to the party. (Master Agreement, ¶ 5(a)(i)).

17. On September 15, 2008, LBSF was obligated to make, but had failed to make, payments to FirstBank with regard to five swap transactions under the Swap Agreement.

18. On September 16, 2008, FirstBank advised LBSF that FirstBank had not received the failed swap payments and demanded that LBSF remit the sum due to FirstBank. Attached hereto as <u>Exhibit "F"</u> is a true and correct copy of the communication sent by FirstBank to LBSF on September 16, 2008.

19. LBSF has never made the referenced failed swap payments to FirstBank in accordance with the Swap Agreement.

20. On September 24, 2008, FirstBank sent LBSF a notice terminating the Swap Agreement and demanding payments due from LBSF with regard to the swap transactions that were open when the Swap Agreement terminated, including a net cash settlement, and the return of Swap Collateral in the principal amount of $62,518,197.98. Attached hereto as <u>Exhibit "G"</u> is a true and correct copy of the communication from FirstBank to LBSF dated September 24, 2008.

21. LBSF has acknowledged that the Swap Agreement was terminated by FirstBank, effective September 29, 2008. FirstBank agrees that September 29, 2008 was the termination date.

22. LBSF and FirstBank have also agreed that the sum due from FirstBank to LBSF when the Swap Agreement was terminated (after taking account of payments due as a result of termination of the Swap Agreement) totaled $3,318,416.78, without taking account of $853,758.87 of payments due from LBSF to FirstBank as a result of swap transactions that

should have net settled during September 2008, which LBSF had failed to pay to FirstBank. The only unresolved issues between FirstBank and LBSF regarding the sum due under the Swap Agreement are whether that amount should be reduced by the sum LBSF failed to pay FirstBank during September 2008 (the amount of which has been agreed upon) or by principal and interest payments made after September 29, 2008 with regard to the securities held as Swap Collateral, which could result in LBSF owing a substantial sum to FirstBank, instead of FirstBank's owing $3,318,416.78 to LBSF. The resolution to the latter issue may depend in part on when LBSF had possession of the securities it held as Swap Collateral, and therefore received the payments of principal and interest that were made with regard to those securities. However, it is clear that on September 29, 2008, the value of the Swap Collateral was at least $59.2 million more than the amount that was due on that date from FirstBank to LBSF under the Swap Agreement. The reason the value of the Swap Collateral was so much greater than the obligation it secured is that the Swap Collateral had been posted at a time when there were other swap transactions outstanding under the Swap Agreement, and FirstBank did not request a return of collateral when those transactions terminated, because of the expectation that it would in the future enter into additional swap transactions under the Swap Agreement. Termination of the Swap Agreement has ended the possibility of additional transactions under the Swap Agreement. Therefore, any possible interest of LBSF in the excess collateral terminated on September 29, 2008, and the excess collateral was not part of the estate of LBSF when it commenced these Chapter 11 proceedings on October 3, 2008.

23.    FirstBank has on a number of occasions asked the Debtors' representatives for information about the location of the Swap Collateral, but has not been provided with that information. Even though the Debtors have reviewed the Swap Agreement and determined the

amounts that are or may be due under the Swap Agreement, the representative dealing with FirstBank has asserted that he does not have access to information about the location or status of the Swap Collateral.

24. Attached as Exhibit "B" is a true and correct copy of the last statement received from LBSF, which shows that on September 1, 2008, LBSF was holding all of the Swap Collateral. However, on or about June 19, 2009, FirstBank was told by a representative of JPMorgan that 20 of the 23 securities positions that are included within the Swap Collateral were transferred out of the JP Morgan Account on September 18, 2008. FirstBank cannot determine why that transfer may have occurred or the accuracy of this information without obtaining from LBSF and/or LBHI the information sought by this Motion.

25. FirstBank is entitled to be informed promptly whether the Debtors still are holding the Swap Collateral, or whether some or all of the Swap Collateral has in fact been transferred to someone, and if it has been transferred, when and to whom and under what circumstances it was transferred.

26. While FirstBank is deprived of possession of the Swap Collateral, it is deprived of the principal and interest that is paid by Fannie Mae and Ginnie Mae with regard to the Swap Collateral (which totaled $13,535,489.19 between September 1, 2008 and June 30, 2009), and is unable to use or even sell the Swap Collateral in the event FirstBank were to determine that sale is appropriate based upon prevailing market conditions.

27. FirstBank has made numerous requests of LBSF for information concerning the location of the Swap Collateral, including the identity of the party or parties in possession of the Swap Collateral. LBSF has failed to respond to FirstBank's requests. FirstBank has also sought

information from the SIPC trustee for Lehman Brothers, Inc. about the location of the Swap Collateral, but has received no response.

28.     FirstBank submits that, as the Swap Collateral was delivered to secure its obligations in accordance with the Swap Agreement, at all times FirstBank has been the owner of the Swap Collateral. The Swap Collateral is not, and never has been, an asset of LBSF's Chapter 11 estate, and LBSF is obligated to return the Swap Collateral (including all principal and interest payments LBSF has received with regard to the Swap Collateral and not previously remitted to FirstBank – see Credit Support Annex. Paragraphs 8(b)-(c)) to the extent its value exceeds the net sum, if any, owed by FirstBank to LBSF as a result of termination of the Swap Agreement. LBSF has no right to continue to hold any of the securities or cash constituting Swap Collateral.

29.     FirstBank is not asking the Court to now adjudicate the merits of its claims to the Swap Collateral or to interpret the terms of the Swap Agreement. By this motion, FirstBank is merely trying to determine where the Swap Collateral is, and if it is not in the possession or control of LBSF, how that came to be the case. It is incumbent upon LBSF and/or LBHI immediately and fully to disclose to FirstBank the information regarding the Swap Collateral sought by this Motion.

## BASIS FOR THE RELIEF REQUESTED

30.     Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).

31.     With respect to debtors, Bankruptcy Rule 2004 further provides that "the court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates . . . ." Fed. R. Bankr. P. 2004(c).

32.     The scope of permissible discovery under Bankruptcy Rule 2004 is "very broad, broader even than discovery under the Federal Rules of Civil Procedure," and is designed to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citation omitted); Fed. R. Bankr. P. 2004(b) ("The examination of an entity under this rule . . . may relate only to the acts, conduct, or property or the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . .").

33.     Rule 2004 discovery can be utilized as an investigatory tool undertaken pre-litigation. In re Sympington, 209 B.R. 678, 684 (Bankr. D. Md. 1997). As such, it "need not be tied to specific factual allegations at issue between parties" to a dispute. Id. An advantage of Rule 2004 discovery is that "it can be undertaken more quickly [and efficiently] than regular civil discovery." Id.

34.     Rule 2004 requires the Court to "balance the competing interests of the parties, weighing relevance of and necessity of the information sought by examination." In re Drexel Burnham Lambert Group, 123 B.R. 702, 712 (S.D.N.Y. 1991). In making this determination, courts consider the purpose of the request as well as the degree of intrusiveness. Id. at 711. Good cause may be shown "by a claim that that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause undue hardship or injustice." Id. at 712 (internal citations omitted).

35.     In this case, FirstBank has carefully crafted a pointed inquiry after all other avenues have failed. FirstBank has a compelling need for immediate discovery concerning the Debtors' conduct, solely as it relates to the Swap Collateral, so that FirstBank can: (i) ascertain

whether LBSF currently has possession of the Swap Collateral and, if it does not, the other information about the Swap Collateral specified on Exhibit "A" or otherwise requested by this Motion; (ii) take appropriate steps and seek appropriate relief, preferably consensually but if necessary from this Court, to obtain the return of its Swap Collateral to the extent the value of the Swap Collateral (including principal and interest payments that have been received by the Debtors with regard to the Swap Collateral) exceeds the net amount that FirstBank may owe to LBSF as a result of termination of the Swap Agreement; and (iii) take actions that may be necessary, preferably with the cooperation of the Debtors and without further involvement of this Court, to preserve the remaining value inherent in the Swap Collateral.

36. FirstBank's request for discovery is not burdensome. FirstBank does not seek to conduct an unfettered "fishing expedition", and it neither seeks nor wants endless documents. LBSF has already analyzed in detail the transactions under the Swap Agreement and reached agreement with FirstBank about the maximum net amount due under the Swap Agreement, or as a result of its termination, on September 29, 2008. Therefore, the information sought by FirstBank is ministerial in nature and should impose minimal burdens on the Debtors. Indeed, FirstBank stands ready to tailor its discovery requests in any reasonable way that will make it easy for the Debtors swiftly and efficiently to provide the information that FirstBank seeks. As noted above, FirstBank will forgo deposition and document discovery if the Debtors provide written answers to the questions set forth on Exhibit "A" attached hereto

## WAIVER OF MEMORANDUM OF LAW

37. As there are no novel issues of law in this matter and the Motion contains citations to relevant authority, FirstBank respectfully requests that the Court waive the requirement that FirstBank file a separate memorandum of law in support of this 2004 Motion

pursuant to Local Bankruptcy Rule 9013-1(b).  However, FirstBank reserves the right to file a memorandum in reply to any objection to this Motion.

## NO PREVIOUS MOTION OR APPLICATION

38.    No previous motion or application for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** FirstBank respectfully requests the Court to enter an Order, substantially in the form submitted herewith, authorizing and directing: (i) examination of LBSF and LBHI regarding the location and transfers of the Swap Collateral; (ii) related production of documents by Debtors; and (iii) in lieu of such examination, answers by Debtors to written questions in the form annexed hereto as Exhibit "A", together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        July 24, 2009

　　　　　　　　　　　　　　　　　　　　　K&L GATES LLP

　　　　　　　　　　　　　　　　　　　　　/s/ Eli R. Mattioli
　　　　　　　　　　　　　　　　　　　　　Eli R. Mattioli
　　　　　　　　　　　　　　　　　　　　　Elizabeth M. Harris
　　　　　　　　　　　　　　　　　　　　　599 Lexington Avenue
　　　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　　　Telephone:  (212) 536-3900
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (212) 536-3901
　　　　　　　　　　　　　　　　　　　　　eli.mattioli@klgates.com
　　　　　　　　　　　　　　　　　　　　　elizabeth.harris@klgates.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for FirstBank Puerto Rico*