**Hearing Date and Time:  August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :    08-13555 (JMP)
                                            :
                        Debtors.            :    (Jointly Administered)
                                            :
                                            :
-------------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION**
**PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY**
**CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR**
**APPROVAL OF SETTLEMENT AGREEMENT WITH ORANGE BEACH MEMBER**

            PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases (together, the "Debtors"), pursuant to sections 105 and 363 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for approval of a settlement agreement with Orange Beach

Member, L.L.C. ("Orange Beach Member"), as more fully described in the Motion (the

"Settlement Agreement"), will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Shai Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) Mary Koberstein, Esq., c/o Centrum Properties, Inc., 225 West Hubbard Street, Chicago, Illinois 60610, attorney for Orange Beach Member, so as to be so filed and received by no later than **August 21, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 28, 2009
      New York, New York

                                  /s/ Shai Y. Waisman
                                  Shai Y. Waisman

                                  WEIL, GOTSHAL & MANGES LLP
                                  767 Fifth Avenue
                                  New York, New York 10153
                                  Telephone: (212) 310-8000
                                  Facsimile: (212) 310-8007

                                  Attorneys for Debtors
                                  and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :        08-13555 (JMP)
                                            :
                    Debtors.                :        (Jointly Administered)
                                            :
                                            :
---------------------------------------------------------------x
```

**DEBTORS' MOTION**
**PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY**
**CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR**
**APPROVAL OF SETTLEMENT AGREEMENT WITH ORANGE BEACH MEMBER**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

**Background**

1.        Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

### Preliminary Statement

1.     Orange Beach Member, L.L.C. ("Orange Beach Member") is the parent

company to CRIII, LLC ("CRIII"), which owns certain property in Orange Beach, Alabama, on

which Orange Beach Member and CRIII planned to construct a multifamily residential

condominium.  This Motion relates to a $10.3 million mezzanine loan (the "Mezzanine Loan")

provided by LBHI to Orange Beach Member in connection with the construction and

development of the condominium.  As a result of the economic climate, particularly in the real

estate market, Orange Beach Member defaulted on the Mezzanine Loan and the parties

renegotiated for an extension of the maturity date for the Mezzanine Loan.  On the renegotiated

maturity date, Orange Beach Member once again defaulted on the Mezzanine Loan.  At present,

the Mezzanine Loan remains in default and it is LBHI's view that the property owned by CRIII

is worth no more than $21.8 million, which is $15 million less than the principal owed on a

senior loan to which the Mezzanine Loan is subordinate.  In other words, LBHI's investment is

more than $15 million underwater.

2.     LBHI and Orange Beach Member recently commenced negotiations

regarding a potential consensual resolution of the terms of the Mezzanine Loan that would

maximize the recoveries to the Debtors' estates in a cost efficient manner.  Those negotiations

culminated in a settlement agreement, dated June 24, 2009, by and between LBHI and Orange

Beach Member, a copy of which is attached hereto as Exhibit A (the "Settlement Agreement"),

pursuant to which, among other things:  (i) LBHI consents to the sale of the subject property for

$32.5 million upon the terms and conditions of a purchase agreement between Orange Beach Member's wholly-owned subsidiary and a third-party purchaser; (ii) LBHI releases Orange Beach Member and certain of its affiliates from any further liability under the Mezzanine Loan and a separate Net Profits Agreement; and (iii) Orange Beach Member makes a cash payment of $90,000 to LBHI (the "Release Fee") to offset LBHI's consultant and legal fees.

3.    Given the current state of the real estate market, the structural subordination of the Mezzanine Loan to the senior loan, and the expenses and delays attendant to foreclosure proceedings, the Debtors have, in their reasoned judgment, concluded that the Settlement Agreement provides the best framework to obtain some degree of recovery from the Mezzanine Loan, since LBHI would not otherwise be likely to recover any cash payment or realize any value related to the Mezzanine Loan through foreclosure proceedings, while avoiding further expenditure of any additional resources in respect of collateral that likely is worthless.

## The Loans

4.    Orange Beach Member is an Illinois limited liability company and single purpose entity. Orange Beach Member owns 100% of the membership interests in CRIII, an Illinois limited liability company and single purpose entity. CRIII is the owner of approximately 9.28 acres of beachfront property, consisting of approximately 20 individual parcels of land located at 23118 through 23180 Perdido Beach Blvd., Orange Beach, Alabama (collectively, the "Property"). The Property was previously improved with single and low-density multifamily residences, but those improvements were demolished and the land is currently vacant. CRIII and Orange Beach Member initially planned to construct on the Property a 31-story tower residential condominium of 386 units featuring one, two and three bedroom units, with three pools, a spa, lounging decks, a health club and a clubhouse (the "Project"). Orange Beach Member and CRIII

were formed solely for the purpose of acquiring their direct or indirect interest in the Property and/or the Project.

5.      To finance the purchase of the Property and the cost of the Project, CRIII and Orange Beach Member entered into certain loan agreements.  On or around June 1, 2005, LBHI entered into a mezzanine loan agreement (the "Mezzanine Loan Agreement") with Orange Beach Member for the Mezzanine Loan.  Contemporaneously with the execution of the Mezzanine Loan Agreement, CRIII and LaSalle Bank National Association ("LaSalle") entered into a separate loan agreement in connection with the Project for approximately $35 million (the "Senior Loan"), to which the Mezzanine Loan is subordinate.  The Senior Loan currently is held by Bank of America.

6.      The Senior Loan is secured by, *inter alia*, a first mortgage on the Property, an assignment of leases and rents, a fixture filing, and certain guarantees of payment totaling approximately $17.5 million (the "Guarantees") given by Michael Lerner, Arthur Slaven, Laurence Ashkin, John McLinden, Sol Barket, and Roger Brown (collectively, the "Guarantors") – each of whom hold membership interests in Orange Beach Member affiliates, Centrum Orange Beach #1, LLC and/or Summit Strategic Investments, LLC.

7.      LBHI's Mezzanine Loan is secured by, among other things, certain pledge and security agreements given by certain entities or individuals of their interests in Orange Beach Member, CRIII and/or their affiliates.  In contrast with the Senior Loan, the Mezzanine Loan is not secured by a general guaranty of payment.

8.      Both the Senior Loan and the Mezzanine Loan matured on December 1, 2006, and Orange Beach Member failed to make any payment upon the maturity of such loans.

9.      To avoid foreclosure proceedings and to obtain additional time to market and sell the Project, Orange Beach Member obtained modifications of both the Senior Loan and the Mezzanine Loan.  As a result of the modifications, the maturity date of the Senior Loan and the Mezzanine Loan were extended to April 1, 2008.  LBHI's Mezzanine Loan, however, was further subordinated as part of the Senior Loan modification.  Under the terms of the Senior Loan modification agreement, dated December 1, 2006, LaSalle required Orange Beach Finance, LLC ("Orange Beach Finance"), an Illinois limited liability company and affiliate of Orange Beach Member, to purchase a $5 million participation interest in the Senior Loan.  Upon payment by Orange Beach Finance of the $5 million, the Senior Loan amount was increased to $40 million and the Senior Loan was split into two parts – an A Tranche in the amount of $35 million, owned by LaSalle, and a B Tranche in the amount of $5 million, owned entirely by Orange Beach Finance.  The B Tranche was made senior to LBHI's Mezzanine Loan.

10.      On February 21, 2007, in exchange for agreeing to modify the Mezzanine Loan, including the subordination of the Mezzanine Loan to the additional $5 million provided under the Senior Loan modification, LBHI entered into an agreement with Orange Beach Member and CRIII (the "Net Profits Agreement"), under which LBHI was, among other things, to receive 25% of the net profits from the sale, disposition, or other transaction with respect to the property or the equity or membership interests in Orange Beach Member or CRIII, after payment of, *inter alia*, certain costs, expenses and repayment of the outstanding principal balances and accrued unpaid interest due under the Senior Loan and Mezzanine Loan.

11.      CRIII and Orange Beach Member's efforts to market and sell the Project were unsuccessful and, on or around April 1, 2008, CRIII and Orange Beach Member failed to make payment upon the maturity of the Senior Loan and the Mezzanine Loan.

6

12.     On November 5, 2008, Bank of America issued a Notice of Default and Demand for Payment letter which indicated that as of October 30, 2008, CRIII owed $35 million plus an outstanding interest balance of approximately $1.2 million, excluding default interest and costs for expenses related to the enforcement of the Senior Loan.

13.     On February 21, 2009, CRIII entered into a purchase agreement (the "Purchase Agreement") with Winfield Resort Properties, Inc. ("Winfield"), an Alabama corporation, for the sale of the Property for $32.5 million.  The Purchase Agreement contemplates that the purchase of the Property is to be financed by a loan to Winfield from a third-party lender and through certain bonds issued in connection with the purchase.  Under the terms of the Purchase Agreement, CRIII is to provide a $10 million letter of credit to secure the bonds, which is to be released once the bonds are paid off or if Winfield obtains a substitute letter of credit.

14.     The proceeds from the sale of the Property are to be applied as follows: (i) $22.5 million will be paid to Bank of America to reduce the amount due on the Senior Loan; and (ii) the remaining $10 million will be deposited with Bank of America but not applied to the outstanding balance; instead, CRIII will use that portion of the proceeds to collateralize a Bank of America issued letter of credit that will be pledged to the bond issuer and, if the letter of credit is released, the $10 million will be used to pay down the remaining Senior Loan balance, leaving $2.5 million outstanding on the Senior Loan.

15.     LBHI estimates that the current market value of the Property is approximately $21.8 million, which is $15 million less than the principal owed by CRIII under the Senior Loan (or that at best, the Property is worth no more than the sale price reflected in the

Purchase Agreement, which is still several millions of dollars less than the principal owed under the Senior Loan).

16.     Given the state of the real estate market, the subordination of the Mezzanine Loan to the Senior Loan, and the expenses and delays attendant to foreclosure proceedings, in lieu of immediately exercising all of its remedies under the modified Mezzanine Loan and/or the Net Profits Agreement, LBHI and Orange Beach Member commenced negotiations regarding a potential consensual resolution of the terms of the Mezzanine Loan that would maximize the recoveries to the Debtors' estates in a cost efficient manner. Those negotiations culminated in the Settlement Agreement, pursuant to which, among other things, LBHI consents to the sale of the Property upon the terms and conditions of the Purchase Agreement and releases Orange Beach Member and certain of its affiliates from any further liability under the Mezzanine Loan and the Net Profits Agreement. See Exhibit A. In exchange, Orange Beach Member pay LBHI a $90,000 Release Fee.

**The Settlement Agreement**

17.     The salient terms of the Settlement Agreement are as follows:[1]

| | |
|---|---|
| ***Cash Payment of Release Fee to LBHI*** | Orange Beach Member shall make a cash payment to LBHI of $90,000 as an irrevocable release fee by wire transfer to an account designated by LBHI. The Release Fee will be used by LBHI to pay the fees and expenses of LBHI's counsel and advisor with respect to the Project. |
| ***Releases of Orange Beach Member and certain of its affiliates*** | LBHI agrees to release Orange Beach Member and certain of its affiliates from any future liability under the Mezzanine Loan and the Net Profits Agreement. |

---

[1] This summary of the Settlement Agreement (this "Summary") is qualified in its entirety by the provisions of the Settlement Agreement. This Summary is intended to be used for informational purposes only and shall not, in any way, affect the meaning or interpretation of the Settlement Agreement. Capitalized terms used, but not otherwise defined herein, have the meanings ascribed to such terms in the Settlement Agreement.

| | |
|---|---|
| ***Releases of LBHI*** | Orange Beach Member and Guarantors agree to release LBHI and any co-lenders from any claims relating in any manner to the Mezzanine Loan, the Net Profits Agreement, and any other documents evidencing and securing the Mezzanine Loan. |
| ***Joint and Several Guarantees in Favor of LBHI*** | Orange Beach Member and certain of its affiliates represent and warrant (on a joint and several basis) to LBHI that neither Orange Beach Member nor its affiliates will ever receive (directly or indirectly) any net profits, distributions, or any other form of remuneration from the Property, except that Michael Widdes, an employee of Centrum Properties, Inc, an affiliate of Orange Beach Member, may receive a brokerage fee in connection with the sale of the Property not to exceed $100,000. |

18.     In sum, LBHI will receive a cash payment totaling $90,000 in consideration for releasing Orange Beach Member and certain of its affiliates from any future liability under the Mezzanine Loan – which is subordinate to the $35 million Senior Loan held by Bank of America that has been in default since April 2008 and which is in respect of the Property LBHI currently values at approximately $21.8 million (or no more than the $32.5 sale price reflected in the Purchase Agreement) – and the Net Profits Agreement.

## Relief Requested

19.     By this Motion, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors seek approval of the compromise and settlement of the debts of Orange Beach Member pursuant to the terms set forth in the Settlement Agreement.

## The Settlement Agreement Meets the Legal Standard
## Established Under Rule 9019 and is in the Bests Interests of LBHI's Estate

20.     The Debtors submit that the proposed Settlement Agreement is in the best interests of the Debtors, their estates, and their creditors and that, as a result, the Settlement Agreement should be approved under Rule 9019 of the Bankruptcy Rules.

21.     Courts have long considered compromises to be "a normal part of the process of reorganization."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry,

Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co.,

308 U.S. 106, 130 (1939)).  Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the

[debtor-in-possession] and after notice and a hearing, the court may approve a compromise or

settlement."  Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve

settlements "if they are in the best interests of the estate."  Vaughn v. Drexel Burnham Lambert

Group, Inc. (In re Drexel Burnham Lambert Group, Inc.) 134 B.R. 499, 505 (Bankr. S.D.N.Y.

1991); see also TMT Trailer Ferry, 390 U.S. at 424; Fisher v. Pereira (In re 47-49 Charles St.,

Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426

(S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).

22.    The decision to approve a particular compromise lies within the sound

discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994);

Drexel Burnham Lambert Group, 134 B.R. at 505; see also 9 Collier on Bankruptcy ¶ 9019.02

(15th ed. rev. 2001).  A court may exercise its discretion "in light of the general public policy

favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y.

1998).  However, the analysis must focus on the question of whether a particular compromise is

"fair and equitable, and in the best interest of the estate."  In re Best Products, 165 B.R. 35, 50

(Bankr. S.D.N.Y. 1994) (internal citations omitted).

23.    There is no requirement that "the value of the compromise … be dollar-

for-dollar the equivalent of the claim."  Ionosphere Clubs, Inc., 156 B.R. at 427.  Instead, "there

is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or

even a thousandth part of a single percent of the potential recovery."  Id. at 427-28 (quoting City

of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974).  Indeed, the settlement need not result

in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the

range of reasonableness." Drexel Burnham Lambert Group, 134 B.R. at 505; see also Cosoff v.

Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R.

133, 144 (Bankr. E.D.N.Y. 1997).

24.     Bankruptcy courts have applied the following factors in determining

whether a settlement or compromise should be approved:  (i) the probability of success in

litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and

likely duration of the litigation and any attendant expense, inconvenience, and delay; (iii) the

proportion of creditors who do not object to, or who affirmatively support, the proposed

settlement; and (iv) the extent to which the settlement is truly the product of arm's-length

bargaining and not the product of fraud or collusion.  See Anderson, 390 U.S. at 424 ("There can

be no informed and independent judgment as to whether a proposed compromise is fair and

equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent

and objective opinion of the probabilities of ultimate success should the claim be litigated."); In

re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); In re Best Prods. Co., 168

B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

25.     While a court must "evaluate … all … factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, W.T. Grant Co., 699

F.2d at 608, or conduct a full independent investigation.  Drexel Burnham Lambert Group, 134

B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact….  The court need only canvass the settlement to determine whether it is within the accepted

range of reasonableness." Nellis, 165 B.R. at 123 (internal citations omitted).

26.    The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); accord In re Ashford Hotels Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

27.    The Debtors have concluded that the Settlement Agreement provides the best framework to obtain some degree of recovery from the Mezzanine Loan, which is subordinate to the Senior Loan that is currently in default, and the Net Profits Agreement. The Debtors are sophisticated players in the global financial marketplace with significant experience in real estate valuation and underwriting. The Debtors' reasoned judgments about the value of the Property is supported by prevailing marketplace values and by reasonable perceptions about the potential growth and risks associated with this asset. Specifically, the Debtors' experienced personnel have considered the value of the Property as compared to comparable assets in the market and general market trends, and taken into account the advantages to the Debtors of obtaining equity in the Property, subject to the Senior Loan, via foreclosure of the Mezzanine Loan. The Debtors, in reliance on their careful review and experience, have concluded that protracted foreclosure proceedings for the Mezzanine Loan, as well as the attendant costs, would neither be justified nor fruitful given the current value of the Property and the outstanding balance due under the Senior Loan. Indeed, the Debtors believe that if they were to initiate

foreclosure proceedings for the Mezzanine Loan, they would not be likely to realize any value, or receive from Orange Beach Member any cash payment, related to the Mezzanine Loan.

28.    By entering into the Settlement Agreement, the Debtors will maximize the value of their estates.  In connection with LBHI's release of Orange Beach Member and certain of its affiliates from any future liability under the Mezzanine Loan and the Net Profits Agreement, the Debtors will receive a $90,000 cash payment.  Because the $35 million Senior Loan is in default and the Property is currently valued at only $21.8 million (or no more than the $32.5 million purchase price reflected in the Purchase Agreement), this concession is far outweighed by the benefits of obtaining, on a consensual basis, a cash payment of $90,000.

29.    The Settlement Agreement also eliminates the need for LBHI to expend resources to attempt to collect repayment of Orange Beach Member's indebtedness under the Mezzanine Loan made by LBHI or to foreclose on the pledges securing the Mezzanine Loan. Indeed, foreclosing on the Mezzanine Loan could be protracted and costly, and given the amount owed under the Senior Loan, the current economic environment and the current depressed value of the real estate market, LBHI would be unlikely to realize any value through such a process.

30.    On the other hand, under the Settlement Agreement, LBHI is able to obtain a cash payment of $90,000, which will offset the consultant and legal fees associated with the Project.  In addition, under the Settlement Agreement, LBHI will receive from Orange Beach Member and Guarantors a release of any and all claims relating in any manner to the Mezzanine Loan, the Net Profits Agreement, and any other documents evidencing and securing the Mezzanine Loan.

31.    Furthermore, Orange Beach Member and certain of its affiliates will provide representations and warranties (on a joint and several basis) to LBHI that neither Orange

Beach Member nor its affiliates will ever receive (directly or indirectly) any net profits, distributions, or any other form of remuneration from the Property.

32.    Importantly, the Debtors have negotiated the Settlement Agreement at arm's-length to come to a fair and efficient resolution with respect to the Mezzanine Loan and the Net Profits Agreement.

33.    Accordingly, in light of its benefits, the Settlement Agreement falls within the range of reasonableness and is in the best interests of the Debtors, their estates, and creditors.

**The Settlement Agreement is an Appropriate
Exercise of the Business Judgment of LBHI**

34.    Ample authority exists for approval of the proposed Settlement Agreement.  Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition or other use of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor.  See In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

35.    For the reasons set forth above, i.e., a cash payment of $90,000, in consideration for LBHI's agreement to release Orange Beach Member and certain of its affiliates from any future liability under the subordinate Mezzanine Loan on the encumbered Property,

14

entry into the Settlement Agreement represents an exercise of the Debtors' sound business

judgment and is in the best interests of the Debtors' estates.

**<u>Notice</u>**

36.     No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion in accordance with the procedures set forth in the amended

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; (vi) counsel to Orange

Beach Member; and (vii) all parties who have requested notice in these chapter 11 cases.  The

Debtors submit that no other or further notice need be provided.

37.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: July 28, 2009
        New York, New York


                                        /s/ Shai Y. Waisman
                                        Shai Y. Waisman

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                              :
**In re**                                     :     **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :     **08-13555 (JMP)**
                                              :
                              **Debtors.**    :     **(Jointly Administered)**
                                              :
                                              :
-------------------------------------------------------------------x

## ORDER GRANTING MOTION FOR APPROVAL OF
## SETTLEMENT AGREEMENT WITH ORANGE BEACH MEMBER

Upon the motion, dated July 28, 2009 (the "Motion"),[1] of Lehman

Brothers Holdings Inc. ("LBHI"), and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors" and,

together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 363 of

title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of the Settlement

Agreement, dated June 24, 2009 (the "Settlement Agreement") between LBHI and

Orange Beach Member, LLC ("Orange Beach Member") annexed to the Motion as

Exhibit A, as more particularly described in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in
the Motion.

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the

amended order entered February 13, 2009 governing case management and

administrative procedures [Docket No. 2837] to (i) the United States Trustee for the

Southern District of New York; (ii) the attorneys for the Official Committee of

Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal

Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) counsel to Orange Beach Member; and (vii) all parties who have requested notice in

these chapter 11 cases, and it appearing that no other or further notice need be provided;

and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Debtors, their estates and creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105 and 363(b) of the Bankruptcy

Code and Bankruptcy Rule 9019, LBHI is duly authorized to enter into the Settlement

Agreement and to consummate all of the transactions contemplated thereby, it being

understood that any actions described in this paragraph taken by the Debtors or their

affiliates may be taken without the necessity of (x) any further court proceedings or

approval or (y) any consent of any third party, and shall be conclusive and binding in all

respects on all parties in interest in these cases; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed pursuant to Bankruptcy Rule 6004; and it is further

ORDERED, FOUND AND DETERMINED that the Debtors are receiving fair consideration and reasonably equivalent value in exchange for the transfers made by them under the Settlement Agreement; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: August __, 2009
        New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE