## **Exhibit A**

Settlement Agreement, dated June 24, 2009

# LEHMAN BROTHERS HOLDINGS INC.
1271 Avenue of the Americas
New York, New York 10020

June 24, 2009

Orange Beach Member, L.L.C.
c/o Centrum Properties, Inc.
225 West Hubbard Street, Suite 400
Chicago, Illinois 60610

> Re: Property located at 23118-23180 Perdido Beach Blvd., Orange Beach, Alabama ("**Property**")

Ladies and Gentlemen:

Reference is made to (i) the Mezzanine Loan Agreement dated as of June 1, 2005, between Lehman Brothers Holdings Inc. ("**Lender**") and Orange Beach Member, L.L.C. ("**Borrower**"), as amended by the Omnibus Loan Modification Agreement dated as of February 21, 2007 (as so amended, the "**Loan Agreement**") and (ii) the Net Profits Agreement dated February 21, 2007 between Lender and Borrower ("**Net Profits Agreement**"). All initially capitalized terms which are not specifically defined herein shall have the meanings set forth in the Loan Documents (as hereinafter defined). The Loan Agreement sets forth the terms and conditions of a $10,300,000 loan ("**Mezzanine Loan**") made by Lender to Borrower. The Loan Agreement, the other documents evidencing and securing the Mezzanine Loan, and the Net Profits Agreement are sometimes collectively referred to herein as the "**Loan Documents**". Borrower is the sole member of CRIII, LLC, an Illinois limited liability company ("**Project Owner**").

Borrower has informed Lender that Project Owner, as Seller, has executed the Real Estate Sales Purchase Agreement dated as of February 21, 2009 ("**Purchase Agreement**") with Winfield Resort Properties, Inc. ("**Purchaser**") pursuant to which Seller has agreed to sell to Purchaser the Property.

This will confirm that Lender consents to the sale of the Property ("**Sale**") in accordance with the Purchase Agreement and shall release the Borrower and Guarantors from any further liability under the Mezzanine Loan and Loan Documents upon and subject to the following terms and conditions:

1. <u>Confirmation by Lender</u>. Lender confirms the following: (i) Borrower has complied with the terms of Article XV of the Loan Agreement with respect to the Sale; (ii) Lender waives its right to purchase the Project upon the terms set forth in the Purchase Agreement, (iii) Lender consents to the sale of the Property upon the terms and conditions of the Purchase Agreement, and (iv) the 180-day period to consummate the sale as set forth in Section 15.2.5 of the Loan Agreement is waived with respect to the Sale.

2. <u>Releases</u>. Simultaneously with the consummation of the Sale ("**Closing**"), Lender, Borrower and Guarantors shall exchange releases with Lender which releases will provide, among other things, (1) for the release of Borrower and Guarantors from any future liability under the Mezzanine Loan and the Loan Documents, and (2) representations, warranties, and indemnities from Borrower and Guarantors (upon a joint and severed basis) in favor of Lender prohibiting the Borrower, Guarantors, and any of their Affiliates from ever receiving (directly and indirectly) any Net Profits, distributions, or any other form of remuneration from the Property, provided however, Michael Widdes, an employee of Centrum Properties, Inc. may receive a brokerage fee in connection with the Sale which brokerage fee shall not exceed $100,000 in the aggregate. Lender further agrees that in the event of a default under the "**Seller Financing Documents**" (as defined in the Purchase Agreement), if Project Owner exercises its remedies under the Seller Financing Documents, the value of the collateral or any proceeds therefrom shall not be deemed to be Capital Proceeds. The releases shall be in form and content satisfactory to Lender.

3. <u>Release Fee</u>. Borrower shall pay to Lender on the first to occur of (i) October 1, 2009, or (ii) the Closing (time being deemed of the essence) an irrevocable release fee of $90,000 ("**Release Fee**") by wire transfer of good Federal funds to an account designated by Lender. The Release Fee shall be utilized by Lender to pay the fees and expenses of Lender's counsel and its advisor, TriMont Real Estate Advisors, Inc. Any excess funds after the payment of the foregoing shall be retained by Lender in consideration for Lender releasing the Borrower and Guarantors from any obligations under the Loan Documents.

4. <u>Consent by Senior Lender</u>. Bank of America (formerly, LaSalle Bank National Association) shall consent to the Sale upon terms and conditions reasonably satisfactory to Lender.

5. <u>Closing Date</u>. The Closing must occur no earlier than August 31, 2009 or later than December 31, 2009 ("**Outside Closing Date**").

6. <u>Not A Course of Dealing</u>. Lender's agreement to release the Borrower and Guarantors in accordance with the foregoing shall not be deemed to constitute a course of dealing or a waiver of Lender's rights except as specifically provided herein.

7. <u>Representations</u>. Borrower and Guarantors represent, warrant and covenant to Lender that (i) Lender has received from Borrower a true and complete copy of the Purchase Agreement, (ii) there are no side or other agreements that could affect or impact the terms of the Purchase Agreement, (iii) the Purchase Agreement has not been amended or otherwise modified; and (iv) the Purchase Agreement shall not be amended, modified or otherwise changed without the prior written consent of Lender which consent shall not be unreasonably withheld so long as any amendment or modification does not affect or change the economic terms of the transactions contemplated by the Purchase Agreement. Notwithstanding the foregoing, Project Owner may without Lender's consent agree to extend the "**Purchaser Contingency Date**" (as defined in the Purchase Agreement) to no later than October 1, 2009 provided Borrower shall promptly notify Lender of any such extension and any such extension of the Purchaser Contingency Date shall not extend the closing date beyond the Outside Closing Date.

8. <u>Miscellaneous</u>.

(a) Borrower and Guarantors hereby release Lender and any co-lender, and their officers, directors, shareholders, employees, affiliated entities, attorneys and agents of each of the foregoing, and their respective successors and assigns (the "**Lender Released Parties**") from any claims, counterclaims, demands, actions, causes of actions, suits, debts, costs, dues, sums of money, accounts, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, expenses and liabilities whatsoever, known or unknown, at law or in equity, irrespective of whether such claims arise out of contract, tort, violation of laws or regulations or otherwise, which the Borrower or Guarantors, ever had, now has or hereafter can, shall or may have against the Lender Released Parties or any of them for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to and including the date of this agreement solely in connection with the Mezzanine Loan and the other Loan Documents or relating in any manner whatsoever to the Mezzanine Loan.

(b) Borrower acknowledges that this agreement and the Loan Documents contain the entire agreement of the parties hereto with respect to the subject matter hereof. Any and all discussions, arrangements, representations, statements, understandings or agreements concerning the subject matter of this agreement not specifically set forth in this agreement, whether oral or written, including, without limitation, any term sheets, commitment letters, discussion outlines, memorandums, letters or proposed loan modification documents, are superseded by the terms of this agreement.

(c) This agreement may not be changed, terminated or modified orally or in other manner amended except by a writing executed by all of the parties hereto. This agreement shall be binding upon and will inure to the benefit of and will jointly and severally bind the respective parties, their heirs, personal representatives, and all persons claiming by, through or under any of them. All persons executing this agreement in a representative capacity acknowledge, warrant and represent that he or she is an official representative of the firm or corporation in whose name he or she is executing this agreement and that he or she possesses full and complete authority to bind said firm or corporation to the full and faithful performance of all conditions, terms, provisions, covenants, warranties and representations as contained in this agreement.

(d) This agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which shall constitute one agreement. It shall not be necessary for the same counterpart to be signed by all of the parties in order for this instrument to be fully binding upon any party signing at least one counterpart. Delivery of an executed counterpart of to this agreement by facsimile or electronic transmission shall be effective as delivery of a manually executed counterpart of this agreement.

(e) This agreement shall be governed, construed, applied and enforced in accordance with the laws of the State of New York.

(f) Notwithstanding anything to the contrary herein contained, the effectiveness of this Agreement and the transactions contemplated hereby are subject to (i)

"Bankruptcy Court Approval" (as hereinafter defined) and (ii) payment to Lender of the Release Fee within the time period provided herein. For the purposes hereof, Bankruptcy Court Approval shall mean the final and unappealable approval by the United States Bankruptcy Court under Case No. 08-13555 of the release of the Mezzanine Loan, the Net Profits Agreement and the other Loan Documents pursuant to this agreement in form and substance satisfactory to Lender and which approval as of the Closing has not been vacated, stayed or amended without the consent of all of the parties hereto. Lender agrees to use reasonable diligence to secure Bankruptcy Court Approval after this agreement has been fully executed.

Kindly confirm your agreement to the foregoing by signing below at the places indicated.

**[SIGNATURES APPEAR ON THE FOLLOWING PAGES]**

Very truly yours,

**LEHMAN BROTHERS HOLDINGS INC.**
as Debtor and Debtor in Possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: _____Jeffrey Fitts_____
Title: _____Authorized Signatory_____

**ACCEPTED AND AGREED TO:**

**ORANGE BEACH MEMBER, L.L.C.**

By: _____
Name: _____
Title: _____

**CRIII, LLC,**

By: Orange Beach Member, L.L.C,
    an Illinois limited liability company
Its: Manager

    By: _____
    Name: _____
    Title: Manager

    By: _____
    Name: _____
    Title: Manager

_____
**ARTHUR SLAVEN**

_____
**JOHN MCLINDEN**

SIGNATURE PAGE (17207337)

Very truly yours,

**LEHMAN BROTHERS HOLDINGS INC.**
as Debtor and Debtor in Possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: _____
Title: _____


**ACCEPTED AND AGREED TO:**

**ORANGE BEACH MEMBER, L.L.C.**

By: _/s/ John McLinden_
Name: JOHN MCLINDEN
Title: A MANAGER

**CRIII, LLC,**

By: Orange Beach Member, L.L.C,
    an Illinois limited liability company
Its: Manager

    By: _/s/ John McLinden_
    Name: JOHN MCLINDEN
    Title: Manager

    By: _____
    Name: _____
    Title: Manager

_/s/ Arthur Slaven_
**ARTHUR SLAVEN**

_/s/ John McLinden_
**JOHN MCLINDEN**

SIGNATURE PAGE (17207337)

_____
MICHAEL LERNER


_____
LAURENCE ASHKIN


_____
SOL BARKET


_____
ROGER BROWN

_____
MICHAEL LERNER

_____
LAURENCE ASHKIN

_____
SOL BARKET

_____
ROGER BROWN

SIGNATURE PAGE (17207337)

_____
MICHAEL LERNER


_____
LAURENCE ASHKIN


_____
SOL BARKET


_____*[signature]*_____
ROGER BROWN


SIGNATURE PAGE (17207337)