**Hearing Date and Time: August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Martin J. Bienenstock, Esq.
Philip M. Abelson, Esq.

*Attorneys for Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited Partnership, Springfield Associates LLC and Kensington International Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | |
| Movants, | |
| - against - | |
| ELLIOTT MANAGEMENT CORPORATION, | |
| Respondent. | |

**LIMITED OBJECTION OF ELLIOTT MANAGEMENT CORPORATION TO LBHI'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004, FOR AUTHORIZATION TO ENTER INTO (I) AN AMENDED REPURCHASE AGREEMENT WITH AURORA BANK FSB AND (II) A <u>FINANCING FACILITY WITH AURORA LOAN SERVICES, LLC</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited Partnership, Springfield Associates LLC and Kensington International Limited (collectively, "Elliott") submits this limited objection to LBHI's Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, for Authorization to Enter Into (I) an Amended Repurchase Agreement with Aurora Bank FSB and (II) a Financing Facility with Aurora Loan Services, LLC (the "Motion") and respectfully represents:

## BACKGROUND

1. On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its direct and indirect subsidiaries including Lehman Commercial Paper Inc. ("LCPI"), Lehman Brothers Commodity Services Inc. ("LBCS") and Lehman Brothers Special Financing Inc. ("LBSF") (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' cases are jointly administered but not substantively consolidated.

2. Elliott holds public debt of LBHI, open trade positions with LCPI, is party to derivative contracts with LBCS and LBSF, and as a result, is a substantial creditor of such Debtors.

3. On February 11, 2009, LBHI moved the Court for authority to increase capital levels of its wholly owned non-debtor subsidiary, Aurora Bank FSB f/k/a Lehman Brothers Banks, FSB (the "Bank"), through (a) LBHI's relinquishing of its disputed ownership interest in the valuable Residential Funding Company servicing rights and the assignment of that interest to the Bank, a transaction that LBHI asserted would deliver an estimated benefit to the Bank of $189 million, and (b) a direct capital contribution of up to $15 million. [Docket No. 2800.]

1

4. On March 12, 2009, LBHI filed an application for authorization to enter into a Master Repurchase Agreement with the Bank, to extend up to $325 million in financing to assist the Bank and its mortgage loan servicing subsidiary, Aurora Loan Services LLC ("Aurora"), in meeting its liquidity needs. [Docket No. 3074.]

5. On March 23, 2009, LBHI and LCPI sought authorization from the Court to (a) enter into certain assignment agreements with the Bank to transfer all or part of a portfolio of unencumbered mortgaging servicing rights, valued by a third party as of February 28, 2009 at approximately $140 million, (b) enter into a settlement agreement with the Bank and Aurora whereby LBHI conveyed to Aurora ownership of approximately $6-7 million in disputed funds and (c) invest up to $15 million in additional capital contributions. [Docket No. 3193.]

6. On June 16, 2009, LBHI requested authority to infuse up to $25 million cash into the Bank in order to maintain its capital ratios. [Docket No. 3962.] One week later, having determined that $25 million may be insufficient to achieve "well-capitalized" status, LBHI amended its request for authority to make a capital contribution to the Bank, increasing it to $50 million. [Docket No. 4145.]

7. LBHI now seeks an order authorizing it to enter into an Amended Repurchase Agreement with the Bank extending up to $450 million, representing an increase of $125 million to the financing approved in March, in financing and a new revolving loan facility with Aurora of up to $500 million.

**OBJECTION**

8. <u>LBHI's cash is a precious and valuable asset, not to be risked absent a compelling showing that cause exists to grant the extraordinary relief requested.</u> Without providing an outline of either its capital strategy for the bank or its exit strategy LBHI asks this

2

Court and parties in interest to accept on faith that its proposal to amend the current Master Repurchase Agreement to allow LBHI to increase the amount it can loan to the Bank from $325 million to $450 million on terms less favorable and less secure than those currently in place and to enter into a new $500 million revolving loan facility with Aurora will preserve LBHI's equity interest in the Bank and is therefore in the best interest of the estate and creditors. After five prior requests for authority to invest capital into the Bank, over $270 million in cash invested[1] and $325 million in additional credit provided through the current Master Repurchasing Agreement, LBHI now seeks authority to provide a further $625 million in financing to enhance the Bank's liquidity. This Court is not a rubber stamp for a debtor's assertion that using estate funds falls within its sound business judgment. Sections 345(b) and 363(b) of the Bankruptcy Code require a debtor to prove that cause exists to grant the requested relief.[2] *Official Comm. of Unsecured Creditors of Enron Corp. v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 28 (S.D.N.Y. 2005) ("For a court to approve an application under § 363(b), it must 'expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application.' In doing so, the court must 'consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders.'" (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). The instant Motion falls far short of making the requisite showing of cause.

---

[1] As of June 23, 2009, LBHI estimated the value of the contributions it has made to the Bank with the Court's approval at over $220 million. [Docket No. 4145 at ¶ 4.] Since then, the Court authorized LBHI to infuse an additional $50 million into the Bank. [Docket No. 4235.]

[2] Section 345(b) of the Bankruptcy Code provides that money of the estate may only be invested or deposited if insured or guaranteed by the United States or backed by the full faith and credit of the United States or if the entity with which the money is invested or deposited provides a bond or other eligible security obligation, "unless the court *for cause* orders otherwise." (Emphasis added.) Pursuant to section 363(b) of the Bankruptcy Code, a debtor may use property of the estate outside of the ordinary course of business after notice and a hearing.

3

9.  <u>LBHI's Motion fails to supply critical evidence demonstrating its business judgment is sound.</u>  LBHI's Motion fails to address such critical and material issues as:

- What is the schedule of the Bank's deposit obligations beyond the $940 million that comes due between July and December?  The Bank's March 2009 call report listed $4.65 billion of deposits liabilities. What is the average maturity of these obligations? What additional future capital investments may be required?

- How acute is the risk the Bank will be seized regardless of the new investment?  Like the five applications that came before it, LBHI's instant Motion states that, absent the Court's approval of the relief sought, the Bank might be unable to satisfy all of its Deposit and Advance Obligations, risking further regulatory restrictions on the Bank, "including a possible seizure of the Bank and the appointment of a receiver."  Motion ¶ 1.  The instant Motion gives no assurance that the FDIC will find the proposed new financing sufficient to ward off the risk of future adverse consequences to the Bank.

- Why did LBHI's prior motions for authority to risk funds to preserve the Bank not highlight the potential need for material additional contributions of the kind sought in the instant Motion?

- Why must LBHI risk its funds if funds can be borrowed by the Bank on market terms?  The Motion states that the proposed Amended Repurchase Agreement and new revolving loan facility will be entered into at arm's-length and on prevailing market terms.  Motion ¶¶ 26-27.  If that is the case, why must LBHI provide such financing, as opposed to a third party? LBHI fails to explain what, if any, efforts it or the Bank has made to obtain third-party financing and with what results and whether or not it will look to syndicate these financings to reduce the risk to the LBHI estate.

- Why is LBHI requesting authority to loan the Bank new money on less secure terms than it loaned previous money?  The terms of the Amended Repurchase Agreement are more favorable to the Bank (and thus, more risky to LBHI) than the Repurchase Agreement approved by this Court.  Motion ¶ 18.  Yet, LBHI fails to explain its rationale for exacting less favorable terms, without any greater protections or apparent additional consideration.[3]  LBHI lists in its Motion (¶ 25 n.8) the actions it has taken

---

3    We note that LBHI states in its Motion that it will be paid a market rate under the Amended Repurchase Agreement.  Motion ¶¶ 26-27. However the LIBOR plus 6% rate on the expanded facility is identical to the rate it

*continued on the following page ...*

4

        in an effort to shore up the Bank's liquidity and now proposes to provide an additional $625 million in financing without noting any concessions or compromises the Bank is providing to LBHI in exchange.

- What will be the enforceability of LBHI's security interests if the Bank is seized? LBHI fails to explain the basis for its belief that the proposed Amended Repurchase Agreement would be enforceable should the Bank be placed in receivership. LBHI devotes one footnote (¶ 26 n.9) to this issue stating that it "believes" the Bank's seizure would not compromise its ability to enforce its remedies under the Agreement. LBHI fails to discuss the potential financial repercussions the Bank's seizure would have on Aurora and its ability to pay back the up to $500 million owed to LBHI under the proposed revolving loan facility.

- What are the minimum credit quality criteria, if any, for the eligible collateral under the Amended Repurchase Agreement? Will there be lower advance rates for lower-quality collateral?

- What is the risk of repayment associated with the Advance Receivables? What is the 'cash conversion cycle' for assets of this type?

- What is the perceived likelihood that the Bank will be allowed to issue brokered certificates of deposit if LBHI risks more money? LBHI states that the Bank is now "well-capitalized" with a risk-based capital ratio exceeding 10% as of March 31, 2009. Motion ¶ 11. The OTS, however, has not terminated the PCA directive prohibiting the Bank from issuing brokered certificates of deposits and issuing new loans and conducting new business without the OTS's approval. The Motion does not address whether the proposed measures will cause the OTS to ease its restrictions and allow the Bank to operate under its own power or what alternative courses of action are available should those restrictions remain in place.

- What benefits will LBHI receive if the FDIC allows the Bank to issue brokered certificates? The Motion cites the Bank's inability to issue brokered certificates of deposit as the reason it requires additional capital and that it may be able to do so with a waiver from the FDIC, a request for which remains pending with the FDIC. Motion ¶ 11. The Motion fails to describe any contingency should the FDIC agree to a waiver. For

---

*continued from preceding page …*

has received to date under the Master Repurchase Agreement presently in place, with its significantly lower advance rates.

5

> example, would LBHI be able to rescind the deal or force the Bank to issue brokered CDs to pay back LBHI under the proposed agreements?
>
> - What is LBHI's exit strategy and how will it use its power to extend the Bank's time to repurchase securities? The proposed Amended Repurchase Agreement would allow LBHI to renew Transactions and extend Repurchase Dates indefinitely. Motion ¶ 18. LBHI fails to describe its exit strategy, if any, or explain how long it expects to have to continue to fund the Bank's capital requirements under the proposed new structure or any future applications.

10. <u>LBHI does not supply creditors or this Court with any facts on the financial condition of the Bank from which the soundness of LBHI's proposed course can be independently judged.</u> Neither the instant Motion, the section 341 presentations nor the monthly operating reports provide detailed separate disclosure concerning the Bank's operations. Without financial disclosure on the Bank's operations beyond the basic data provided in the thrift call reports and absent any articulation of a coherent capital strategy for the management of the Bank, it is very difficult if not impossible, for creditors to evaluate the merits of putting the estate's cash at risk in the manner proposed in the instant Motion.

## CONCLUSION

WHEREFORE Elliott respectfully requests that the Court deny the Motion unless and until LBHI provides all creditors and the Court with full disclosure and responsive answers to all the questions raised herein such that there is a compelling rationale for LBHI to risk further estate cash and to do so on more lenient terms than previously provided notwithstanding increased risk. Furthermore, should the Court grant LBHI's requested relief, Elliot requests that the Court, at a minimum, limit the term of both the Amended Repurchase Agreement and the revolving loan facility to no more than 180 days so as to provide the Court and parties in interest with greater oversight over LBHI's use of estate cash and grant Elliott such other and further relief as is just.

6

| | |
|---|---|
| Dated: New York, New York<br>July 29, 2009 | DEWEY & LEBOEUF LLP<br>/s/ Martin J. Bienenstock<br>Martin J. Bienenstock, Esq.<br>Philip M. Abelson, Esq.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 259-8000<br>Facsimile: (212) 259-6333<br><br>*Attorneys for Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited Partnership, Springfield Associates LLC and Kensington International Limited* |