**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
900 Third Avenue
16th Floor
New York, New York 10022
(212) 752-8000
Laurence May (LM-9714)
Nolan E. Shanahan (NS-4598)
Attorneys for Federal Home Loan Bank of
Pittsburgh, Plaintiff

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.<br><br>    Debtors. | Case No. 08-13555 (JMP)<br><br>Chapter 11<br><br>Jointly Administered |
| In re:<br><br>LEHMAN BROTHERS INC.,<br><br>    Debtor. | Case No. 08-01420 (JMP) SIPA |
| FEDERAL HOME LOAN BANK OF<br>PITTSBURGH,<br><br>    Plaintiff,<br><br> -against-<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br>LEHMAN BROTHERS INC., LEHMAN<br>BROTHERS COMMERCIAL CORPORATION,<br>WOODLANDS COMMERCIAL BANK f/k/a<br>LEHMAN BROTHERS COMMERCIAL<br>BANK, and AURORA BANK FSB f/k/a<br>LEHMAN BROTHERS BANK FSB,<br><br>    Defendants. | Adv. Pro. No. 09-_____ (JMP) |

46320/0001-5742022v6

## COMPLAINT

Plaintiff Federal Home Loan Bank of Pittsburgh ("FHLB"), by and through its counsel

Cole, Schotz, Meisel, Forman & Leonard, P.A., as and for its complaint against defendants

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Inc. ("LBI"), Lehman Brothers

Commercial Corporation ("LBCC"), Woodlands Commercial Bank, formerly known as Lehman

Brothers Commercial Bank ("Woodlands"), and Aurora Bank FSB, formerly known as Lehman

Brothers Bank, FSB ("Aurora")(collectively, the "Lehman Entities" or "Defendants") in this

adversary proceeding, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action to recover in excess of $41,500,000 in cash belonging to FHLB

that was deposited with Lehman Brothers Special Financing, Inc. ("LBSF"), a non-party and a

subsidiary of LBHI, as collateral for certain derivative transactions between FHLB and LBSF.

Pursuant to the agreements between FHLB and LBSF governing this relationship, LBSF was

required to hold FHLB's collateral in a segregated account and was prohibited from pledging,

hypothecating, or in any way using the collateral.

2.      Rather than fulfilling its contractual obligations to FHLB, LBSF kept FHLB's

collateral in a non-segregated operating account and, at or around the time FHLB deposited

collateral with it, LBSF transferred the collateral to bank accounts belonging to each of the

Defendants. Because the Defendants had no right to receive and/or hold FHLB's collateral and

were unjustly enriched by the same, this Court should, among other requested relief, construe a

trust against the Defendants in favor of FHLB.

## PARTIES

3.      FHLB is one of a group of federal home loan banks created by the United States

Congress to provide low-cost funding and opportunities for affordable housing and community

2

46320/0001-5742022v6

development. FHLB serves three hundred thirty-three (333) member financial institutions in Delaware, Pennsylvania, and West Virginia, ensuring the availability of funds for housing. FHLB fills a critical role in providing liquidity for small businesses, community development, rural and agricultural loans, as well as home mortgage financing.

4.      LBHI is a corporation organized and incorporated under the laws of the State of Delaware that is registered to do business in the State of New York and has its principal executive office at 745 7th Avenue, New York, New York 10019. LBHI is a debtor in possession before this Court, having filed a Chapter 11 petition for reorganization on September 15, 2008.

5.      LBI is a corporation organized and incorporated under the laws of the State of Delaware that is registered to do business in the State of New York and has its principal executive office at 745 7th Avenue, New York, New York 10019. LBI is a subsidiary of LBHI.

6.      LBCC is a corporation organized and incorporated under the laws of the State of Delaware that is registered to do business in the State of New York and has its principal executive office at 745 7th Avenue, New York, New York 10019. LBCC is a subsidiary of LBHI. LBCC is a debtor in possession before this Court, having filed a Chapter 11 petition for reorganization on October 5, 2008.

7.      Woodlands is an industrial bank chartered under the laws of the State of Utah with its principal executive office at 745 7th Avenue, New York, New York 10019. Woodlands is an indirect subsidiary of LBHI.

8.      Aurora is a thrift institution chartered under Federal law with its principal executive office at 1000 West Street, Suite 200, Wilmington, Delaware 19801. Aurora is an indirect subsidiary of LBHI.

46320/0001-5742022v6

## JURISDICTION AND VENUE

9.      This action is a civil proceeding arising in a case under the United States

Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"), within the meaning of 28 U.S.C. §

1334(b).  It is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(2).

10.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157

and 1334.

11.      This is a core proceeding as it relates to LBHI, LBI and LBCC, and a related-to

proceeding as it relates to Woodlands and Aurora, pursuant to 28 U.S.C. § 157(b)(2)(A), (O) and

(b)(3).

12.      Venue of this adversary proceeding is proper in this District under 28 U.S.C. §

1409(a) because the bankruptcy cases of LBHI, LBI and LBCC are pending in this judicial

district.

13.      The statutory and rule bases for the relief requested in this Complaint on behalf of

FHLB include 11 U.S.C. §§ 362 and 541 and Bankruptcy Rule 3007.

## BACKGROUND FACTS

14.      On or about June 26, 1997, LBSF and FHLB entered into an International Swap

Dealers Association ("ISDA") Master Agreement as well as an ISDA Credit Support Annex

governing derivative transactions (collectively the "Agreement").  In addition, LBHI executed a

guarantee of the obligations of its subsidiary LBSF to FHLB under the Agreement (the

"Guarantee").  On or about April 21, 2003, FHLB and LBSF entered into an amendment to the

Agreement. Hereafter, the Agreement, the Guarantee, and the Amendment will be referred to

collectively as the "Master Agreement."  A true and accurate copy of the Master Agreement is

annexed hereto as Exhibit "A."

46320/0001-5742022v6

15.    The Master Agreement is based upon the 1992 edition of the ISDA Master Agreement and the 1994 ISDA Credit Support Annex forms which are the industry standards for such agreements. Accordingly, the terms of the Master Agreement are well known within the financial industry and widely used in the industry.

16.    Starting in 1997, LBSF and FHLB engaged in a series of derivative transactions ("the Transactions") under the terms of the Master Agreement.

17.    Under and pursuant to the Master Agreement, both FHLB and LBSF had obligations to provide collateral securing their respective obligations to each other. Hereafter, the transfers made by FHLB to LBSF to secure obligations arising under the Transactions will be referred to as the "FHLB Posted Collateral."

18.    While the general terms of the Master Agreement are well-known industry standards, the relationship between FHLB and LBSF was different and unique in one crucial respect. Generally, parties to swap agreements using the ISDA form are permitted to "sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of" posted collateral. See Exhibit A, Credit Support Annex at ¶ 6(c). Essentially, a party holding collateral under the ISDA Master Agreement is generally permitted to use such collateral as if it were its own.

19.    However, in its negotiations with LBSF prior to entering the Master Agreement, FHLB negotiated the right to opt out of the provisions of paragraph 6(c) of the Credit Support Annex regarding the use of its posted collateral. As such, LBSF was not permitted, without the prior written consent of FHLB, "to sell, assign, transfer, exchange or otherwise dispose of, grant any option with respect to the collateral." See Exhibit A, Credit Support Annex at ¶ 13(g)(ii).

20.    In addition, LBSF was further required to keep FHLB Posted Collateral "in a segregated account, apart from any account which holds [LBSF's] own cash or securities." Id. at

5

¶ 13(m)(iii). This segregated account was to at all times indicate that the property in the account was FHLB's property.

21.    Upon information and belief, FHLB's rights with respect to the safeguarding and segregation of its collateral were unique among LBSF's counterparties to ISDA Master Agreements. FHLB is unaware of any other LBSF derivatives swap counterparty who had negotiated a segregated collateral provision in its agreements with LBSF.

22.    At all times relevant to this Adversary Proceeding, whenever required to do so under the terms of the Master Agreement and at the instruction of LBSF, FHLB transmitted all FHLB Posted Collateral by wire transfer to an account identified as an LBSF account at JPMorganChase Bank, N.A., bearing Account No. 066143543 (the "Collateral Account").

23.    From the inception of the relationship in 1997 until January 2, 2008, the nature of the trades was such that LBSF was required to post collateral with FHLB. As a result of market fluctuation in late November 2007, FHLB briefly posted collateral with LBSF, followed shortly thereafter by LBSF returning all collateral. Beginning in January 2, 2008, the nature of the market was such that FHLB continually posted collateral with LBSF until shortly before the termination of the Master Agreement. The Credit Support Annex required LBSF, annually after the first delivery of collateral, to "prepared and deliver to [FHLB] an audit confirmation showing that all Posted Collateral is being held in a segregated account." See Exhibit A, Credit Support Annex at ¶ 13(m)(iii). LBSF filed its bankruptcy petition and the Master Agreement was terminated prior to the anniversary of the first date that FHLB posted collateral with LBSF, so LBSF never delivered an annual audit confirmation.

24.    During the period from January 2, 2008 through September 11, 2008, FHLB made approximately sixty-two (62) payments of FHLB Posted Collateral into the Collateral

6

Account via wire transfer. FHLB made its last transfer of FHLB Posted Collateral to the

Collateral Account on September 11, 2008 and as of that date, LBSF held in excess of

$316,000,000 in FHLB Posted Collateral.

25.    Under the Master Agreement, an Event of Default occurs, <u>inter alia</u>, when:

    (A)    one of the parties or any "Credit Support Provider" of a party "becomes insolvent or is unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due"; or

    (B)    a party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law."

26.    LBHI was designated as a Credit Support Provider of LBSF under the Master

Agreement.

27.    Because LBHI was a Credit Support Provider under the Master Agreement, the

filing of its petition was an Event of Default under the Master Agreement.

28.    In accordance with the Master Agreement, and due to the occurrence of the Event

of Default, by letter dated and delivered on September 19, 2008, FHLB, as the non-defaulting

party, designated September 19, 2008 as the Early Termination Date with respect to all

outstanding Transactions under the Master Agreement.

29.    The Master Agreement provided that in the event FHLB designated an Early

Termination Date, all FHLB Posted Collateral plus interest calculated in accordance with the

Master Agreement, net of transfers to cover outstanding obligations, was to be transferred

immediately to FHLB.

30.    On October 2, 2008, FHLB sent a final settlement notice to LBSF pursuant to the

Master Agreement netting FHLB obligations to LBSF against the FHLB Posted Collateral.

Pursuant to the final settlement notice, FHLB authorized the transfer of approximately

$275,000,000 to LBSF from the FHLB Posted Collateral, and demanded return of the balance of

7

the FHLB Posted Collateral, approximately $41,500,000 plus default interest (the "FHLB Collateral Balance").

31.    Under the terms of the Master Agreement, LBSF was required immediately to return to FHLB the FHLB Collateral Balance.  However, despite demands duly made, LBSF failed and refused to return all or any part of the FHLB Collateral Balance.

32.    In response to inquires by FHLB regarding the return of the FHLB Collateral Balance, LBSF, through counsel, advised FHLB's counsel that the FHLB Collateral Balance was no longer in LBSF's possession or control.

33.    LBSF went on to advise FHLB that the FHLB Collateral Balance was likely removed from the Collateral Account by JPMorganChase Bank, N.A. ("JPMCB") on or about October 3, 2008.  On that date, upon information and belief, JPMCB withdrew approximately $416,000,000 from the Collateral Account to offset debts owed to JPMCB by LBSF and/or other of the Lehman Entities.

34.    FHLB then commenced an adversary proceeding in this Court under Adversary Proceeding Number 08-01610 and named LBSF and JPMCB as defendants (the "LBSF Adversary Proceeding").

35.    Through the course of discovery in the LBSF Adversary Proceeding, FHLB learned that LBSF had breached its obligations under the Master Agreement by: (a) failing to keep FHLB Posted Collateral in a segregated account in violation of paragraph 13(m)(iii) of the Credit Support Annex and (b) using the FHLB Posted Collateral as if the same were the property of LBSF in violation of paragraph 13(g) of the Credit Support Annex.

36.    In fact, FHLB learned that the Collateral Account, far from being a segregated account for holding collateral, was apparently a general operating account of LBSF.

37.    Furthermore, FHLB learned that on each of the sixty-two (62) dates that it transferred collateral to LBSF, LBSF transferred funds out of the Collateral Account to various other entities, including, among others, the Lehman Entities.[1]

38.    FHLB also learned that, despite the volume of transactions in the Collateral Account each day, the ending daily balance was usually nominal or even in several instances reflected an overdraft.

39.    As the Lehman Entities were recipients of funds from the Collateral Account acknowledged by LBSF to be FHLB property, each recipient was unjustly enriched through the receipt of FHLB's property from its subsidiary or affiliate (i.e. LBSF) as to which LBSF had no interest or right.

40.    LBHI, in other filings in this Court in connection with its bankruptcy proceeding, has acknowledged the practice of sweeping cash from its subsidiaries and affiliates, including LBSF, into LBHI accounts on a daily basis.

41.    The Lehman Entities had and have no right to receive, use, or possess FHLB's property, so the Posted Collateral is not property of their respective bankruptcy estates, nor is it the property of non-debtors Woodlands and Aurora.

42.    Because, among other things, the Lehman Entities have been unjustly enriched and are holding property which is not theirs, FHLB is entitled to the imposition of a constructive trust in its favor of the FHLB Collateral Balance.

43.    After uncovering the extent of LBSF's wrongdoing and analyzing the daily activity in the Collateral Account, FHLB agreed to discontinue the LBSF Adversary Proceeding

---

[1] As the records reviewed did not indicate the time of day that the transfers out of the Collateral Account to the various Lehman Entities were made, the transactions for each business day immediately following a collateral payment by FHLB were also reviewed and revealed similar activity in the Collateral Account.

9

as against JPMCB. A Stipulation and Order to that effect was entered by the Court on June 26, 2009.

44.    FHLB is prepared to discontinue the LBSF Adversary Proceeding as against LBSF, through the execution of a stipulation of discontinuance which does not prejudice its rights to file a proof of claim in LBSF's bankruptcy case or prejudice its rights to pursue claims against the other Lehman Entities.

45.    Because FHLB did not have any contractual relationships with the Lehman Entities[2], the recipients of its property, FHLB now brings the instant adversary proceeding seeking various forms of relief, including, but not limited to, the imposition of a constructive trust in FHLB's favor.

## FIRST CLAIM FOR RELIEF AS AGAINST ALL DEFENDANTS
### (Constructive Trust)

46.    Plaintiff repeats and realleges all of the allegations contained in the paragraphs "1" through "45" of the Complaint as if same were fully set forth at length herein.

47.    The FHLB Collateral Balance is the property of FHLB and not the property of any bankruptcy estate or any of the Lehman Entities.

48.    By virtue of transfers made by LBSF, the Lehman Entities are improperly in possession of the FHLB Collateral Balance as well as accrued interest payable to FHLB.

49.    A confidential and/or fiduciary relationship exists between FHLB and LBSF under the Master Agreement.

---

[2] As a "credit support provider" LBHI did guarantee LBSF's obligations to LBHI but that guaranty is not relevant to this adversary proceeding.

46320/0001-5742022v6

50.     By virtue of the affiliation between the Lehman Entities and LBSF, the confidential and/or fiduciary relationship between LBSF and FHLB also extends to the Lehman Entities.

51.     FHLB transferred the FHLB Posted Collateral to LBSF pursuant to the terms of an agreement which established a confidential and/or fiduciary relationship between the parties and which permitted LBSF to hold FHLB's property as collateral only.

52.     Upon information and belief, LBSF transferred FHLB's property to, among others, the Lehman Entities without FHLB's knowledge or consent.

53.     The Lehman Entities were not entitled to receive, use, or dispose of FHLB's property and have been unjustly enriched by the receipt of the same.

54.     FHLB is entitled to the imposition of a constructive trust as to the FHLB Collateral Balance transferred to the Lehman Entities.

## SECOND CLAIM FOR RELIEF AS AGAINST ALL DEFENDANTS
### (Unjust Enrichment)

55.     Plaintiff repeats and realleges all of the allegations contained in the paragraphs "1" through "54" of the Complaint as if same were fully set forth at length herein.

56.     Upon information and belief, the Lehman Entities received the FHLB Collateral Balance from LBSF without FHLB's knowledge or consent.

57.     The Lehman Entities were not entitled to receive, use or dispose of FHLB's property and have been unjustly enriched by the receipt of the same.

58.     FHLB is entitled to judgment against the Lehman Entities in the full amount of the FHLB Collateral Balance, plus applicable interest.

11

## <u>THIRD CLAIM FOR RELIEF AS AGAINST ALL DEFENDANTS</u>
### (Conversion)

59.     Plaintiff repeats and realleges all of the allegations contained in the paragraphs

"1" through "58" of the Complaint as if same were fully set forth at length herein.

60.     To the extent that LBSF transferred the FHLB Collateral Balance to the Lehman

Entities, the Lehman Entities have wrongfully exercised control over FHLB's property without

its consent.

61.     The Lehman Entities' control over FHLB's property has damaged FHLB.

62.     FHLB is entitled to judgment against the Lehman Entities in the full amount of

the FHLB Collateral Balance, plus applicable interest.

12

WHEREFORE, plaintiff Federal Home Loan Bank of Pittsburgh respectfully requests that this Court enter judgment as follows:

(A)   on the first claim for relief, imposing a constructive trust in favor of FHLB against the Lehman Entities in the amount of the FHLB Collateral Balance;

(B)   on the second claim for relief, entering a judgment against the Lehman Entities in the full amount of the FHLB Collateral Balance, plus applicable interest;

(C)   on the third claim for relief, entering a judgment against the Lehman Entities in the full amount of the FHLB Collateral Balance, plus applicable interest; and

(D)   granting such other and further relief as the Court deems just, necessary, and proper.

DATED:      New York, New York
            July 29, 2009


                          COLE, SCHOTZ, MEISEL,
                          FORMAN & LEONARD, P.A.
                          A Professional Corporation


                          By:   /s/ Laurence May
                                Laurence May (LM-9714)
                                Nolan E. Shanahan (NS-4598)
                                Attorneys for Plaintiff
                                Federal Home Loan Bank of Pittsburgh
                                900 Third Avenue
                                16th Floor
                                New York, New York 10022
                                (212) 752-8000

13