Hearing Date and Time: **August 5, 2009 at 10:00 a.m.**
Objection Date and Time: **July 31, 2009 at 4:00 p.m.**

ANDREWS KURTH LLP
450 Lexington Ave., 15th Floor
New York, NY  10017
Telephone:  (212) 850-2800
Facsimile:  (212) 850-2929
Peter Goodman, Esq.

Attorney for EPCO Holdings, Inc.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.* | 08-13555 (JMP) |
| Debtors. | |

**RESPONSE OF EPCO HOLDINGS, INC. TO DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS**

EPCO Holdings, Inc. ("EPCO Holdings") hereby files this its Response ("Response") to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts (the "Motion").  In support of its Response, EPCO Holdings respectfully represents as follows.

**BACKGROUND**

1.      EPCO Holdings previously entered into an ISDA Master Agreement with Lehman Brothers Special Financing Inc. ("LBSF") dated as of September 6, 2007 (the "Holdings ISDA"). In connection with the Holdings ISDA, Lehman Brothers Holdings Inc. ("LBHI") agreed to guarantee the obligations of LBSF under the Holdings ISDA.

-1-

2.  On September 15, 2008, LBHI filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court.

3.  On October 3, 2008, LBSF filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court.

4.  To date, EPCO Holdings has not accelerated the event of default that occurred under the Holdings ISDA when LBHI and LBSF each filed respectively for bankruptcy with this Court and EPCO Holdings has not set an early termination date with respect to the Holdings ISDA. EPCO Holdings reserves all rights to set an early termination date from and after the date hereof with respect to the Holdings ISDA.

5.  As of the date hereof, there exists three underlying derivative transactions entered into in connection with the Holdings ISDA by and between EPCO Holdings and LBSF, each dated as of September 7, 2006. Each of these derivative transactions are interest rate swap agreements (together, the "Interest Swap Agreements") that were entered into by EPCO Holdings and LBSF in connection with that certain Credit Agreement, originally dated as of August 18, 2005, by and among EPCO Holdings, as borrower, the lenders party thereto, Citicorp North America, Inc., as bank agent and Lehman Commercial Paper Inc., as institutional agent, as amended and restated by that certain Second Amended and Restated Credit Agreement, dated as of August 24, 2007, by and among, EPCO Holdings, as borrower, the lenders a party thereto, and Citicorp North America, Inc., as administrative agent (the "Credit Agreement").

**Summary of Response**

6.  EPCO Holdings does not object to mediation of its disputes with the Debtors. To the contrary, since the filing of the Debtors Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and

Assignment of Prepetition Derivative Contracts (the "Assignment Motion"), EPCO Holdings has been trying to resolve its outstanding issues with the Debtors without success.[1]  In this regard, EPCO Holdings has had direct discussion with the Debtors to resolve its objection.

7.      EPCO Holdings submits that the procedures proposed by the Debtors for mediation are overly burdensome, unnecessarily complicated and will not facilitate mediation.  The Debtors propose a maze of complex procedures as a condition precedent to mediation.  The Bankruptcy Court for the Southern District of New York has adopted local rules concerning mediation.  None of the procedures outlined by the Debtors in the Motion are found in the local rules, nor would they be.  Mediation is meant to be a flexible process where the parties to the mediation working together with the mediator design a process that makes sense for the parties and their particular case.  Rather then allowing for flexibility the ADR procedures proposed in the Motion are one sided and punitive in nature.  Accordingly, EPCO Holdings requests that the Motion be denied in part with respect the proposed mediation procedures and that the parties instead rely on the provisions of General Order M143.

**Examples of Burdensome Procedures**

8.      In its Motion, the Debtors provide that they will supply the Counterparties[2] with a Derivative ADR notice setting forth "sufficient information" regarding the dispute, any affirmative claim as well as a settlement offer.  Parties have 20 days to respond by: (1) agreeing or (2) or denying the demand through a "statement of position."  Failure to respond in this fashion result in sanctions.  The Debtors procedures here are inflexible.  For example, what if the response by the Counterparty is a request for clarification or for more information?  Is that a

---

[1]    While EPCO Holdings has objected to the Assignment Motion, the Debtors have adjourned the motion on several occasions and it is next set to be heard on September 16, 2009. Counsel for EPCO Holdings did not agree to the current adjourned hearing date and has a conflict on that date.

-3-

sanctionable offense? What if the counterparty believes that the Debtors' the statement of position is insufficient and requests a more definitive statement, is that a sanctionable offense?

9. Next, the Debtors are to provide a reply to the response. But if the Debtors fails to reply, the Debtors do not face sanctions; rather the Debtors propose that failure to respond in 15 days results in automatic mediation. Furthermore, at any time during this stage the Debtors may request an initial telephonic settlement conference to be held in 5 calendar days. Within 2 days the parties must respond and accept one of the proposed dates and times for a conference. Failure to do so will result in automatic mediation irrespective of a parties availability during that 5 day period. Such a short timeframe does not bode well for settlement and given the strictures of this part of the process calls into question its effectiveness.

10. Upon failure of the settlement conference, the parties go to mediation. Apparently, the mediators are to be picked by the Debtors and if one or all are not acceptable to a counterparty it is that Counterparty's tough luck. This is in direct contrast General Order M143 which permits that parties to initially choose a mediator. The process also does not take into account issues of conflict or other incapacity which normally occurs in the selection process.

11. All mediations are to take place in New York, New York. What if a Counterparty's business people are not located in New York? Why should the Counterparties be restricted to one location? General Order M143 3.1 provides that the Mediator shall fix a reasonable time and place for the mediation.

12. Another example of a departure from General Order M143 is the authority given to the Mediator to certify issue of law to the Court. Under the Debtors' proposed procedures, the Mediator is given discretion to certify specific legal issues to the Court for decision. This

---

[2] Unless otherwise indicated, capitalized terms used herein have the meaning ascribed to them in the Motion.

-4-

discretion runs in complete contravention to the requirements that mediations are settlement conferences protected under FRE 408. Furthermore, such issue of law are better left to FRCP 56 or trial.

13.    General Order M143 provides only that the Mediator shall have the discretion to require that the party representative or non-attorney principal of the party with settlement authority be present at any conference. The Debtors' proposal provides that a business principal having authority to attend must be present at the mediation. While in most mediations principals attend, it is not out of the ordinary for such business principals to consult over the phone with their colleagues in order to confirm their authority, or for the principal to confirm a settlement at a later date. The Debtors' procedures concerning the attendance of principals do not provide for such flexibility.

14.    In General Order M143 mediation briefs are left to the discretion of the mediator, including whether the parties should exchange briefs. Normally parties to the mediation agree to a briefing plan with the mediator. In most instances mediation statements are not exchanged. The Debtors' mediation procedures provide that the parties will exchange mediation statements within 5 days of the mediation. There is no need to vary from regular mediation practice.

15.    Finally, while the local rules permit the Mediator to report willful failure to attend or to participate in good faith, the Debtors propose a litany of sanctions and remedies at each step of their elaborate procedures. Determination of such issue should be left to the aegis of the Court.

## **CONCLUSION**

WHEREFORE, EPCO Holdings requests that the Court deny the Motion in part as described above and grant it all further relief to which it is justly entitled.

NYC:194903.2

Dated: July 30, 2008
      New York, New York

                    /s/ Peter Goodman
                    Peter Goodman, Esq.
                    ANDREWS KURTH LLP
                    450 Lexington Ave., 15th Floor
                    New York, NY  10017
                    Telephone:  (212) 850-2800
                    Facsimile:  (212) 850-2929

                    Attorney for EPCO Holdings, Inc.