Hearing Date and Time: August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
Rick B. Antonoff
David A. Crichlow

Attorneys for Embarcadero Aircraft
Securitization Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC. *et al.*,                        :    08-13555 (JMP)
                                                               :
                       Debtors.                                :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

### LIMITED OBJECTION OF EMBARCADERO AIRCRAFT SECURITIZATION TRUST WITH RESPECT TO DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF <u>DEBTORS UNDER DERIVATIVE CONTRACTS</u>

Embarcadero Aircraft Securitization Trust ("EAST"), by and through its undersigned counsel, Pillsbury Winthrop Shaw Pittman LLP, hereby submits this limited objection to the Debtors' Motion Pursuant to Section 105(A) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors under Derivative Contracts, filed on July 20, 2009 (the "Motion"), and respectfully states as follows:[1]

---

[1] Capitalized terms used herein and not defined herein have the meanings ascribed to such terms in the Motion.

## Background

1.      EAST is a party to that certain ISDA Master Agreement, dated as of August 25, 2000 (the "ISDA Master," and together with the Schedule and confirmations thereto, collectively, the "ISDA Agreement") with Lehman Brothers Special Financing Inc. ("LBSF" and together with Lehman Brothers Holdings Inc., "Lehman").[2] Prior to (a) September 15, 2008, the date that Lehman Brothers Holdings Inc. ("Holdings") filed its voluntary chapter 11 petition and (b) October 3, 2008, the date that LBSF filed its voluntary chapter 11 petition, there were six open transactions (each evidenced by a separate confirmation) under the ISDA Agreement.

2.      Pursuant to Section 5(a) of the ISDA Master, the commencement by Holdings of its chapter 11 case and the commencement by LBSF of its chapter 11 case each constitutes an Event of Default (as defined in the ISDA Master) giving EAST the right to terminate the ISDA Agreement.[3] On December 9, 2008, EAST notified Lehman that it would be terminating the transactions under the ISDA Agreement effective as of December 16, 2008. On December 19, 2008, EAST sent Lehman its Statement of Calculations of Settlement Amounts.

## Limited Objection

3.      EAST does not object to the Debtors' request that this Court approve alternative dispute resolution procedures to streamline the resolution of Derivative Contracts with Recovery Potential. However, certain of the Debtors' proposed procedures as set forth in the Motion are

---

[2] The ISDA Agreement was originally entered into by EAST and Lehman Brothers Financial Products Inc. ("LBFP") and was subsequently deemed to be assigned by LBFP to LBSF in accordance with the terms of the ISDA Agreement. LBSF is the Debtor in Case No. 08-13888 which is being jointly administered in these chapter 11 cases.

[3] Under the ISDA Agreement, EAST and LBSF elected not to treat the commencement of a bankruptcy case as an Automatic Early Termination, thereby permitting the non-bankrupt party to elect whether or not to terminate pursuant to (a) the ISDA Agreement and (b) the relevant provisions of the Bankruptcy Code permitting, among other things, the exercise of a contractual right to terminate a swap agreement notwithstanding the automatic stay and other debtor protections.

2

objectionable. EAST respectfully submits that the Debtors can address all of these objections through minor modifications to the proposed order approving the Motion (the "Proposed Order"). Unless the Proposed Order is amended to incorporate the objections set forth below, EAST requests that the Court deny the Motion.

4. First, the Proposed Order provides the mediator with discretion to certify specific legal issues to the Court for decision. *See* Proposed Order at ¶10(b); Motion at ¶25. Granting the mediator this exclusive right without consent of the parties and without the ability of parties to appear and be heard, submit legal briefs and otherwise apprise the Court of their position on the issue is inconsistent with due process and the goals of the mediation process. Since the Court's decision of those legal issues will be final and binding, EAST respectfully requests that the Proposed Order be modified such that, in the event the mediator does determine to submit a legal issue to the Court for decision, all parties to the mediation (including the respective Derivative Counterparty) be given prior notice, an opportunity to participate in how the mediator frames the issue for the Court, and be entitled to submit briefs and legal memoranda (and, if necessary, participate in oral argument) on that particular legal issue.

5. Second, the Motion and Proposed Order provide that the Creditors' Committee -- non-parties to the derivative contracts in question -- may attend and participate in all mediations. *See* Motion at ¶ 28; Proposed Order at ¶10(e). EAST respectfully submits that it would be inappropriate, unfair, unduly burdensome and prejudicial to the Derivative Counterparties to permit the Creditors' Committee to participate in the mediation. The Derivatives ADR Procedures are being implemented to resolve *bilateral* disputes among the Debtors and the respective Derivative Counterparties in the most cost-efficient manner. Thus, although EAST does not object to the attendance of the Creditors' Committee to observe the mediation sessions,

any order entered with respect to the Debtors' Motion should expressly provide that the Creditors' Committee will not be entitled to submit briefs or mediation statements, address the mediator, or otherwise actively participate in mediation sessions.

6. Third, the Motion provides that the party requesting mediation will be responsible for the fees and expenses of the mediator. *See* Motion at ¶30. However, the Debtors' proposed procedures do not contemplate that parties will "request" mediation. Rather, the Derivatives ADR Dispute proceeds to the Mediation Stage if the Derivative Counterparty fails to respond to the Derivatives ADR Notice and the Debtors so elect, or once the Notice/Response period passes without a settlement. *See* Motion at ¶¶20, 23; Proposed Order at ¶¶8(c)(d), 10. Additionally, the Standing Order already provides for procedures related to the compensation of mediators. Specifically, the Standing Order requires that a mediator's compensation be reasonably satisfactory to the mediator and the parties. To the extent the parties and the mediator cannot agree on such compensation terms, the Court shall fix such terms that are reasonable and just. *See* Standing Order at ¶4. EAST respectfully requests that this procedure be incorporated into the Proposed Order.

7. Fourth, the Proposed Order provides that to the extent a Derivatives Counterparty affirmatively chooses mediation, it waives a right to a jury trial that may otherwise exist. *See* Proposed Order at ¶14. As noted above, parties do not "choose" mediation – mediation is automatic upon the occurrence of certain events. Such a structure should not result in the waiver of a Derivative Counterparty's fundamental right.

8. Fifth, the Debtors request that the Court select only one mediator to hear and preside over all mediations. *See* Motion at ¶23. EAST respectfully submits that the selection of one mediator to preside over potentially hundreds of mediations will cause undue prejudice to

4

the Derivative Counterparties' rights and positions.  Without limitation, to the extent only one mediator is appointed, that mediator could become deeply entrenched in the Debtors' arguments and legal positions to the detriment of individual Derivative Counterparties' claims and defenses.  Thus, the Debtors' request that only one mediator be appointed should be denied.

9.  Finally, the Motion provides that the Derivatives ADR Notice delivered by the Debtors will contain "sufficient information" regarding the Debtors' affirmative claims and their demand for settlement.  *See* Motion at ¶15.  EAST respectfully requests that a proposed form Derivatives ADR Notice be provided before entering of a final order approving the Motion so that Derivative Counterparties can assess the types of information the Debtors propose to rely upon in preparing their demand.  This will also provide the Derivative Counterparties with the opportunity to review their books and records in advance to formulate a complete and accurate Statement of Position, thereby serving the purpose of the proposed procedures to reduce cost and increase efficiency.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**Conclusion**

For the foregoing reasons, EAST respectfully requests that this Court (i) deny the Motion unless the Proposed Order is revised as set forth herein and (ii) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
July 31, 2009

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:  /s/ Rick B. Antonoff
Rick B. Antonoff
David A. Crichlow
1540 Broadway
New York, NY 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

Attorneys for Embarcadero Aircraft Securitization Trust