**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)
*Counsel to Reliant Energy Power Supply, LLC*

**IN THE UNITED STATES BANKRUPTCY**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (JMP) Jointly Administered |
| Debtor. | |

**RELIANT ENERGY POWER SUPPLY, LLC'S OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER <u>DERIVATIVE CONTRACTS</u>**

Reliant Energy Power Supply, LLC ("<u>Reliant</u>"), by and through its undersigned counsel, submits this objection to the motion of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") for an order pursuant to 11 U.S.C. § 105(a) and General Order M-143 authorizing certain alternative dispute resolution procedures for affirmative claims of the Debtors under derivative contracts (Docket No. 4453) (the "<u>Motion</u>"). In support of this objection, Reliant respectfully states:

<u>**RELEVANT BACKGROUND**</u>

**A.    Relevant Procedural Background.**

1.    On September 15, 2008 (the "<u>Petition Date</u>"), Lehman Brothers Holdings,

Inc. ("LBHI") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On and after the Petition Date, the other Debtors in these cases filed voluntary petitions for relief. The Debtors' chapter 11 cases are being jointly administered in this Court.

2. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to section 1107 and 1108(a) of the Bankruptcy Code.

3. On September 17, 2008, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

**B.   Reliant's Relationship With The Debtors.**

4. Reliant and Lehman Brothers Commodity Services Inc. ("LBCS") were parties to that certain 2002 International Swap Dealers Association, Inc. ("ISDA") Master Agreement and Credit Support Annex both dated as of August 24, 2006 (collectively the "ISDA Agreement"). In addition, Reliant and Eagle Energy Partners I, L.P. ("Eagle") were parties to that certain Master Power Purchase and Sale Agreement and Collateral Annex both dated as of June 4, 2007 (the "EEI Agreement" and, together with the ISDA Agreement, each a "Master Agreement," and collectively, the "Master Agreements").

5. By letter dated September 18, 2008, Reliant, as the non-defaulting party under the ISDA Agreement, informed LBCS that an Event of Default had occurred under the ISDA Agreement and that as a result, Reliant was designating an Early Termination Date in respect of all outstanding Transactions under the ISDA Agreement. By a separate letter dated September 18, 2008, Reliant, as the non-defaulting party under the EEI Agreement, informed Eagle that an Event of Default had occurred under the EEI Agreement and that as a result, Reliant was designating an Early Termination Date in respect of all outstanding Transactions under the EEI Agreement.

**C.   The Motion.**

6. Through the Motion, the Debtors seek to establish procedures for

resolving potential disputes in connection with the termination of derivatives contracts.  The proposed procedures are intentionally designed to provide maximum flexibility and leverage to the Debtors without regard to the rights of counterparties under the derivatives contracts.  In particular, the proposed procedures contemplate that the Debtors will designate a dispute under a derivatives contract by serving on the counterparty a copy of the Court's order approving the Motion and a notice containing "sufficient information regarding the Debtors' affirmative claim and its demand for settlement… ."  Motion at ¶ 15.  Upon receipt of such a notice, a counterparty would be required to serve an answer within 20 days after receipt of the notice, engage in settlement discussions with the Debtors, participate in any ensuing mediation in good faith, follow the directions of the mediator, and follow the procedures as approved by the Court.  *Id*. at ¶¶ 16, 19.  The procedures are unnecessarily onerous, complicated and costly and ignore the rights of counterparties under similar Master Agreements.

## **OBJECTION**

7. The Debtors do not provide the Court with any meaningful justification for their request to ignore the termination procedures set forth in the Master Agreements in favor of entirely new and vague procedures for resolving potential disputes under derivatives contracts.  The plain fact is that the Master Agreements contain specific provisions for calculating termination damages, exchanging information and resolving any resulting disputes, and these procedures should not be cast aside merely for the convenience of the Debtors.  While Reliant does not object to *reasonable* procedures for the efficient resolution of disputes under derivatives contracts, the procedures proposed by the Debtors violate the express terms of the Master Agreement and deprive Reliant of its legal and contractual rights.  These rights include, but are not limited to, the exchange of information and the methodology to be used in calculating termination damages.  The proposed procedures must be simplified and revised to comply with the Master Agreements or the Motion must be denied.

8. In particular, Reliant is primarily concerned with six elements of the

proposed procedures, each of which is inconsistent with specific provisions in the Master Agreements or is otherwise duplicative and unnecessary.

9.  <u>First</u>, the occurrence of an Event of Default and declaration of the Early Termination Date results in the termination of all outstanding transactions under the applicable Master Agreement, not a termination of the Master Agreement itself. The termination procedures set forth in the Master Agreements are unaffected by the filing of a bankruptcy petition and the parties remain bound by such terms. *See*, *e.g.*, 11 U.S.C. § 556. Moreover, the termination procedures survive the termination of any transactions under the Master Agreements. *See* ISDA Agreement at ¶ 9(c); EEI Agreement at ¶ 10.1. By establishing dispute resolution procedures that are at odds with the procedures contained in the Master Agreements, the Debtors imply that the Master Agreements have no force or effect following an Event of Default and designation of an Early Termination Date. That is simply not the case pursuant to the terms of the Master Agreements and applicable provisions of the Bankruptcy Code. If accepted by the Court, the Debtors' proposal will result in Reliant being deprived of its legal and contractual rights under the Master Agreements following a termination.

10. <u>Second</u>, upon the declaration of an Early Termination Date, each Master Agreement requires the parties to exchange information setting forth their respective calculations of all amounts due as a result of the termination of transactions under such Master Agreement. *See* ISDA Agreement at ¶ 6(d)(i); EEI Agreement at ¶¶ 5.3, 5.4. Until the parties exchange this information, there is no dispute and the magnitude of any disagreement is unknown.[1] Nevertheless, the Debtors suggest that they alone should be given the authority to decide when and if a dispute exists. *See* Motion at ¶ 15.

---

[1] Indeed, Reliant has already entered into a non-disclosure agreement (the "<u>NDA</u>") with LBCS and Lehman Brothers Holdings, Inc. in connection with the exchange of information relating to the calculation of the Early Termination Amount under the ISDA Agreement and there seems to be no reason to disturb or alter the process by which the parties are attempting to resolve any issues regarding the Early Termination Amount to the extent there are any issues.

-4-

11.     Moreover, in contrast to the express requirements of the Master Agreements that specific and detailed information be exchanged, the Debtors propose to provide counterparties with only "sufficient information regarding the Debtors' affirmative claims…" after they have unilaterally determined that a dispute exists. *Id*. Among other things, the Motion does not specify what information the Debtors must provide to counterparties to satisfy the "sufficient information" requirement or how the Debtors will calculate their termination damages (thus, their "affirmative claims" if any).[2] Reliant submits that the quantum of information set forth in each Master Agreement should be the minimum amount of information provided and should be specifically referenced in the procedures proposed in the Motion. Simply stated, the Debtors should be required to comply with their obligations under the relevant paragraphs of the applicable Master Agreement and provide Reliant with at least the information specified therein.

12.     Third, the Motion does not specify the methodology that the Debtors will use to calculate their "affirmative claims," leaving that critical decision entirely up to the Debtors regardless of the requirements of the Master Agrements. However, each Master Agreement sets forth an agreed-upon methodology for calculating each party's termination damages. *See* ISDA Agreement at ¶ 6(e)(i); EEI Agreement at ¶ 5.3. Because the parties already have agreed on a means of calculating amounts due under each Master Agreement, it would be inappropriate to discard that agreement in favor of an unspecified procedure entirely within the Debtors' discretion. Rather, the procedures proposed in the Motion should expressly incorporate the requirements of the Master Agreements.

13.     Fourth, the parties irrevocably agreed that any dispute arising under the Master Agreements will be brought in the United States District Court for the Southern District of New York, and irrevocably waived any objection to such venue on grounds of *forum non conveniens* or jurisdiction. *See* ISDA Agreement at ¶ 13; EEI Agreement at ¶ 10.12. The

---

[2]     The Debtors do not even offer to provide counterparties with the same quantum of information that counterparties are required to provide under the Court's July 2, 2009 order establishing bar dates in these cases.

-5-

Southern District of New York has well-defined alternate dispute resolution procedures. *See*, *e.g.*, S.D.N.Y. L. Civ. R. 83.12. Under the Local Civil Rules, "[a]ll civil cases other than social security, tax, prisoner civil rights and *pro se* matters are eligible for mediation, whether assigned to Foley Square or White Plains." L. Civ. R. 82.12(e). Moreover, as the Debtors recognize in the Motion, General Order M-143 in effect in this Court governs the mediation of disputes and establishes appropriate mediation procedures. To the extent a dispute arises between a counterparty and the Debtors under a derivatives contract, that dispute will necessarily be brought in this Court by way of adversary proceeding and the Court may refer the matter to mediation under General Order M-143.

14. Accordingly, the procedures proposed in the Motion are not only burdensome and duplicative, but entirely unnecessary and inappropriate in light of the provisions of the Master Agreements and the alternative dispute resolution procedures in effect in the Southern District of New York and this Court. The Court should not countenance the Debtors' attempt to simply cast off their obligations under the Master Agreements, especially where, as here, that would deprive counterparties of their legal and contractual rights, simply because they feel that the proposed procedures are more favorable for them in the context of these cases.

15. <u>Fifth</u>, the Motion provides that the cost of mediation will be borne by the party requesting it. However, under the Master Agreements, the defaulting party (*i.e.*, the Debtors) are required to indemnify and hold harmless the non-defaulting party (*i.e.*, Reliant) for all out of pocket expenses incurred "by reason of the enforcement and protection of its rights under [the Master Agreement] or any Credit Support Document to which the Defaulting Party is a party or by reason of the early termination of any Transaction… ." *See* ISDA Agreement at ¶ 11; EEI Agreement at ¶ 10.4. The Debtors are therefore inappropriately trying to shift the entire cost of a mediation process, which they have dictated and would control, onto a non-defaulting counterparty.

16. <u>Sixth</u>, despite seeking procedures to resolve any disputes relating to termination damages under derivatives contracts in which the Debtors believe they have an

-6-

affirmative claim against the counterparty, the Motion unfairly reserves the Debtors' rights to "object to claims arising from Derivatives Contracts on any basis permitted by the Bankruptcy Code." Motion at ¶ 17. To the extent the Court approves the Motion and the Debtors and any counterparty agree, as a result of mediation, on the claims of the respective parties arising from the derivatives contracts, that agreement should be final (upon approval by the Court). The Debtors should not later be allowed to object to such claims, essentially upsetting the very efficiency they tout the proposed procedures will create.

17. Finally, the Motion is at odds with the Court's December 16, 2008 order establishing procedures for, *inter alia*, the termination and settlement of claims of terminated derivatives contracts. *See* Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (Docket No. 2257) (the "December 16 Order"). At the request of several parties-in-interest, including Reliant, for the inclusion of language in the December 16 Order protecting the legal and contractual rights of counterparties notwithstanding the procedures established therein, the Court ruled that:

> Nothing in these Termination and Settlement Procedures shall supersede, suspend, or otherwise modify (i) the legal and contractual rights of any Counterparties to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code or other applicable law; and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract including, without limitation, any such adversary proceeding commenced or pending in this Court. In addition, nothing in these Termination and Settlement Procedures shall require a Counterparty to enter into any termination agreement.

December 16 Order at 8-9.

18. Despite the protections afforded counterparties in the December 16 Order, the Debtors now seek to materially limit Reliant's legal and contractual rights by doing away with the termination provisions set forth in the Master Agreements.

19. To the extent the Court is inclined to approve the Motion, Reliant submits that any order should be limited to referring any dispute over termination damages to mediation. All other provisions of the Master Agreements specifically related to termination, the calculation of termination damages and providing information as well as the terms of the NDA should not be disturbed.

20. Reliant reserves all of its rights under the Master Agreements and any other derivative contract with the Debtors to which it is a counterparty as well as the NDA and nothing contained herein is an admission or a wavier of any rights or claims that Reliant may be entitled to assert in these cases.

**WHEREFORE**, the Reliant respectfully requests that the Court deny the Motion.

Dated: July 31, 2009
    New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ *Michael S. Etkin*
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel to Reliant Energy Power Supply, LLC*