**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel to First Choice Power, L.P.*

**IN THE UNITED STATES BANKRUPTCY
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>Debtor. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br>Jointly Administered |

**FIRST CHOICE POWER, L.P.'S OBJECTION TO DEBTORS' MOTION PURSUANT
TO SECTION 105(a) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143
FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION
PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE
CONTRACTS**

First Choice Power, L.P. ("FCP"), by and through its undersigned counsel, submits this objection to the motion of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for an order pursuant to 11 U.S.C. § 105(a) and General Order M-143 authorizing certain alternative dispute resolution procedures for affirmative claims of the Debtors under derivative contracts (Docket No. 4453) (the "Motion"). In support of this objection, FCP respectfully states:

**RELEVANT BACKGROUND**

**A.    Relevant Procedural Background.**

1.    On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings,

Inc. ("LBHI") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On and after the Petition Date, the other Debtors in these cases filed voluntary petitions for relief. The Debtors' chapter 11 cases are being jointly administered in this Court.

2. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to section 1107 and 1108(a) of the Bankruptcy Code.

3. On September 17, 2008, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

**B.    FCP's Relationship With The Debtors.**

4. FCP and Lehman Brothers Commodity Services Inc. ("LBCS") were parties to that certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement dated as of July 26, 2007 (the "Master Agreement" and together with the attached Schedule (the "Schedule") and Credit Support Annex (the "Credit Support Annex") both dated as of July 26, 2007 (collectively, the "ISDA Agreement").

5. By letter dated September 23, 2008, FCP, as the non-defaulting party under the ISDA Agreement, informed LBCS that an Event of Default had occurred under the Master Agreement and that as a result, FCP was designating September 24, 2008 as the Early Termination Date in respect of all outstanding Transactions (as defined in the Master Agreement).

**C.    The Motion.**

6. Through the Motion, the Debtors seek to establish procedures for resolving potential disputes in connection with the termination of derivatives contracts. The proposed procedures are intentionally designed to provide maximum flexibility and leverage to the Debtors without regard to the rights of counterparties under the derivatives contracts. In particular, the proposed procedures contemplate that the Debtors will designate a dispute under a derivatives contract by serving on the counterparty a copy of the Court's order approving the

-2-

Motion and a notice containing "sufficient information regarding the Debtors' affirmative claim and its demand for settlement… ." Motion at ¶ 15. Upon receipt of such a notice, a counterparty would be required to serve an answer within 20 days after receipt of the notice, engage in settlement discussions with the Debtors, participate in any ensuing mediation in good faith, follow the directions of the mediator, and follow the procedures as approved by the Court. *Id*. at ¶¶ 16, 19. The procedures are unnecessarily onerous, complicated and costly and ignore the rights of counterparties under similar ISDA agreements.

## **OBJECTION**

7. The Debtors do not provide the Court with any meaningful justification for their request to ignore the termination procedures set forth in the ISDA Agreement in favor of entirely new and vague procedures for resolving potential disputes under derivatives contracts. The plain fact is that the ISDA Agreement contains specific provisions for calculating termination damages, exchanging information and resolving any resulting disputes, and these procedures should not be cast aside merely for the convenience of the Debtors. While FCP does not object to *reasonable* procedures for the efficient resolution of disputes under derivatives contracts, the procedures proposed by the Debtors violate the express terms of the ISDA Agreement and deprive FCP of its legal and contractual rights. As discussed below, these rights include, but are not limited to, the exchange of information and the methodology to be used in calculating termination damages. The proposed procedures must be revised to comply with the ISDA Agreement or the Motion must be denied.

8. In particular, FCP is primarily concerned with six elements of the proposed procedures, each of which is inconsistent with specific provisions in the ISDA Agreement or is otherwise duplicative and unnecessary.

9. First, the occurrence of an Event of Default and declaration of the Early Termination Date results in the termination of all open transactions under the ISDA Agreement, not a termination of the ISDA Agreement itself. The termination procedures set forth in the

ISDA Agreement are unaffected by the filing of a bankruptcy petition and the parties remain bound by such terms. *See*, *e.g.*, 11 U.S.C. § 556. Moreover, the termination procedures survive the termination of any transaction under the ISDA Agreement. *See* ISDA Master Agreement at ¶ 9(c). By establishing dispute resolution procedures that are at odds with the procedures contained in the ISDA Agreement, the Debtors imply that the ISDA Agreement has no force or effect following an Event of Default and designation of an Early Termination Date. That is simply not the case pursuant to the terms of the ISDA Agreement and applicable provisions of the Bankruptcy Code. If accepted by the Court, the Debtors' proposal will result in FCP being deprived of its legal and contractual rights.

10. <u>Second</u>, under the standard form of ISDA master agreement, such as the Master Agreement here, upon the declaration of an Early Termination Date, the parties are required to exchange information setting forth their respective calculations of all amounts due as a result of the termination of transactions under the relevant master agreement. In particular, the ISDA master agreement provides:

> On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculations on its part, if any, contemplated by Section 6(e) and will provide to the other party a statement (1) showing, in reasonable detail, such calculations (including all relevant quotations and specifying any amount payable under Section 6(e)) and (2) giving details of the relevant account to which any amount payable to it is to be paid. In the absence of written confirmation from the source of a quotation obtained in determining a Market Quotation, the records of the party obtaining such quotation will be conclusive evidence of the existence and accuracy of such quotation.

*See* ISDA Master Agreement at ¶ 6(d)(i).

11. Thus, there is no dispute and the magnitude of any disagreement, under the Master Agreement is unknown until LBCS and each counterparty provides the statement required under paragraph 6 of the ISDA Agreement. FCP has already provided such a statement to the Debtors. Nevertheless, the Debtors suggest that they alone should be given the authority

to decide when and if a dispute exists. *See* Motion at ¶ 15. Moreover, in contrast to the express requirements of paragraph 6 of the Master Agreement that specific and detailed information be exchanged, the Debtors propose to provide counterparties with only "sufficient information regarding the Debtors' affirmative claims…" after they have unilaterally determined that a dispute exists. *Id.* Among other things, the Motion does not specify what information the Debtors must provide to counterparties to satisfy the "sufficient information" requirement or how the Debtors will calculate their termination damages (thus, their "affirmative claims" if any).[1] FCP submits that the quantum of information set forth in paragraph 6 of the ISDA Agreement (and other relevant paragraphs, such as paragraph 4) should be the minimum amount of information provided and should be specifically referenced in the procedures proposed in the Motion. Simply stated, the Debtors should be required to comply with their obligations under the relevant paragraphs of the ISDA Agreement and provide FCP with at least the information specified therein.

12. <u>Third</u>, the Motion does not specify the methodology that the Debtors will use to calculate their "affirmative claims," leaving that critical decision entirely up to the Debtors regardless of the ISDA contractual requirements. However, the parties to a standard form ISDA master agreement have already agreed on the methodology. The standard ISDA master agreement provides:

> (i) **Events of Default**. If the Early Termination Date results from an Event of Default: -
>
> (1) **First Method and Market Quotation**. If the First Method and Market Quotation apply, the Defaulting Party will pay to the Non-defaulting Party the excess, if a positive number, of (A) the sum of the Settlement Amount (determined by the Non-defaulting Party) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-

---

[1] The Debtors do not even offer to provide counterparties with the same quantum of information that counterparties are required to provide under the Court's July 2, 2009 order establishing bar dates in these cases.

>   defaulting Party over (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party.
>
>   (2) **First Method and Loss**. If the First Method and Loss apply, the Defaulting Party will pay to the Non-defaulting Party, if a positive number, the Non-defaulting Party's Loss in respect of this Agreement.
>
>   (3) **Second Method and Market Quotation**. If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount (determined by the Non-defaulting Party) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.
>
>   (4) **Second Method and Loss**. If the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

ISDA Master Agreement at ¶ 6(e)(i).

13.     Because the parties already have agreed on the method of calculating amounts due under the Master Agreement, it would be inappropriate to discard those agreements in favor of an unspecified methodology entirely within the Debtors' discretion. Rather, the procedures proposed in the Motion should expressly incorporate the requirements of paragraph 6(e)(i) (and other relevant paragraphs) of the ISDA Agreement.

14.     <u>Fourth</u>, the parties irrevocably agreed that any dispute arising under the ISDA Agreement will be brought in the United States District Court for the Southern District of New York, and irrevocably waived any objection to such venue on grounds of *forum non conveniens* or jurisdiction. *See* Master Agreement, at ¶ 13. The Southern District of New York has well-defined alternate dispute resolution procedures. *See*, *e.g.*, S.D.N.Y. L. Civ. R. 83.12.

Under the Local Civil Rules, "[a]ll civil cases other than social security, tax, prisoner civil rights and *pro se* matters are eligible for mediation, whether assigned to Foley Square or White Plains." L. Civ. R. 82.12(e). Moreover, as the Debtors recognize in the Motion, General Order M-143 in effect in this Court governs the mediation of disputes and establishes appropriate mediation procedures. To the extent a dispute arises between a counterparty and the Debtors under a derivatives contract, that dispute will necessarily be brought in this Court by way of adversary proceeding and the Court may refer the matter to mediation under General Order M-143.

15. Accordingly, the procedures proposed in the Motion are not only duplicative and burdensome, but entirely unnecessary and inappropriate in light of the provisions of the ISDA Agreement and the alternative dispute resolution procedures in effect in the Southern District of New York and this Court. The Court should not countenance the Debtors' attempt to simply cast off their obligations under the ISDA Agreement, especially where, as here, that would deprive counterparties of their legal and contractual rights, simply because they feel that the proposed procedures are more favorable for them in the context of these cases.

16. <u>Fifth</u>, the Motion provides that the cost of mediation will be borne by the party requesting it. Under paragraph 11 of the Master Agreement, the defaulting party (*i.e.*, LBCS) are required to indemnify and hold harmless the non-defaulting party (*i.e.*, FCP) for all out of pocket expenses incurred "by reason of the enforcement and protection of its rights under [the Master Agreement] or any Credit Support Document to which the Defaulting Party is a party or by reason of the early termination of any Transaction… ." The Debtors are therefore inappropriately trying to shift the entire cost of a mediation process, which they have dictated and would control, onto a non-defaulting counterparty.

17. <u>Sixth</u>, despite seeking procedures to resolve any disputes relating to termination damages under derivatives contracts in which the Debtors believe they have an affirmative claim against the counterparty, the Motion unfairly reserves the Debtors' rights to "object to claims arising from Derivatives Contracts on any basis permitted by the Bankruptcy Code." Motion at ¶ 17. To the extent the Court approves the Motion and the Debtors and any

counterparty agree, as a result of mediation, on the claims of the respective parties arising from the derivatives contracts, that agreement should be final (upon approval by this Court). The Debtors should not later be allowed to object to such claims, essentially upsetting the very efficiency they tout the proposed procedures will create.

        18.     Finally, the Motion is at odds with the Court's December 16, 2008 order establishing procedures for, *inter alia*, the termination and settlement of claims of terminated derivatives contracts. *See* Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (Docket No. 2257) (the "December 16 Order"). At the request of several parties-in-interest, including FCP, for the inclusion of language in the December 16 Order protecting the legal and contractual rights of counterparties notwithstanding the procedures established therein, the Court ruled that:

> Nothing in these Termination and Settlement Procedures shall supersede, suspend, or otherwise modify (i) the legal and contractual rights of any Counterparties to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code or other applicable law; and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract including, without limitation, any such adversary proceeding commenced or pending in this Court. In addition, nothing in these Termination and Settlement Procedures shall require a Counterparty to enter into any termination agreement.

December 16 Order at 8-9.

        19.     Despite the protections afforded counterparties in the December 16 Order, the Debtors now seek to materially limit the legal and contractual rights of FCP by doing away with the termination provisions set forth in the ISDA Agreement.

        20.     To the extent the Court is inclined to approve the Motion, FCP submits that any order should be limited to referring any dispute over termination damages to mediation. The provisions of the ISDA Agreement relating to the calculation of termination damages set

forth in paragraph 6 of the Master Agreement and provisions relating to providing information should not be disturbed.

21. FCP reserves all of its rights under any derivative contract with the Debtors to which it is a counterparty and nothing contained herein is an admission or a wavier of any rights or claims that FCP may be entitled to assert in these cases.

**WHEREFORE**, FCP respectfully requests that the Court deny the Motion.

Dated: July 31, 2009
      New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ *Michael S. Etkin*
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel to First Choice Power, L.P.*