**Objection Deadline: July 31, 2009 at 4:00 p.m. (prevailing Eastern Time)**
**Hearing Date and Time: August 5, 2009 at 10:00 a.m. (prevailing Eastern Time)**

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212-259-8000
Facsimile: 212-259-6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for The Royal Bank of Scotland plc and Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
In re                                                         :    Chapter 11
                                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**              :    Case No. 08-13555 (JMP)
                                                              :
                            Debtors.                          :    (Jointly Administered)
                                                              :
------------------------------------------------------------- x

**OBJECTION OF THE ROYAL BANK OF SCOTLAND PLC AND
AFFILIATES TO DEBTORS' MOTION FOR AUTHORIZATION TO IMPLEMENT
ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE
CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Royal Bank of Scotland plc, on behalf of itself and affiliates, including ABN Amro Bank N.V., ABN Amro Incorporated, Sempra Energy Trading LLC, Sempra Energy Solutions LLC and Sempra Oil Trading Sarl (together, "RBS"), as party to numerous Derivatives Contracts with the Debtors (each as defined below), objects to the motion of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned chapter 11 cases (together, the "Debtors") for authorization to implement alternative dispute resolution procedures (the "Derivative ADR

Procedures") for affirmative claims of Debtors under Derivative Contracts [Docket No. 4453] (the "ADR Motion"),[1] and respectfully represents:

**Background**

1.  On September 15, 2008, and on various dates thereafter, Lehman Brothers Holdings Inc. and its affiliated debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.  On May 26, 2009, the Court entered an order establishing the deadline for filing proofs of claim, approving the form and manner of notice thereof, and approving the Debtors' proposed proof of claim form [Docket No. 4271] (the "Bar Date Order").  Among other things, the Bar Date Order requires parties with claims based upon Derivative Contracts to complete an online questionnaire (the "Derivatives Questionnaire") and furnish the Debtors with (i) transaction documents, (ii) termination notices, (iii) valuation statements, (iv) individual trade level details, (v) additional information depending upon the applicable trade valuation methodology used to support the claim, (vi) the CUSIP/ISIN of any collateral, and (vii) schedules of additional costs or interest charges.[2]

3.  On July 20, 2009, the Debtors filed the ADR Motion pursuant to which they request the Court to enter an order (the "Proposed Order") requiring parties to derivative contracts in which the Debtors assert there is Recovery Potential to participate in a two-stage resolution procedure:  first, the Debtors and Derivatives Counterparties attempt to resolve Derivatives ADR Disputes on a consensual basis without assistance from the Court or a mediator

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the ADR Motion.

[2] Parties asserting claims based upon guarantees are required to complete a separate guarantee questionnaire pursuant to the Bar Date Order.

2

(the "<u>Notice/Response Stage</u>,"); and <u>second</u>, Derivatives ADR Disputes not resolved through the Notice/Response Stage must proceed to mediation (the "<u>Mediation Stage</u>").  Specifically, the Proposed Order, if entered would:

a. Compel mandatory compliance with the Derivative ADR Procedures by each Derivatives Counterparty regardless of whether the dispute is core or non-core (Proposed Order ¶ 5.a);

b. Grant the Debtors unlimited time to serve the Derivatives ADR Package but require Derivatives Counterparties to respond within twenty (20) calendar days following service of the Derivatives ADR Package or face, at the option of the Debtors, a request for imposition of sanctions or mandatory mediation (Proposed Order ¶ 8.b, 8.c);

c. Grant the mediator discretion far in excess of that contemplated by General Order M143 (Proposed Order ¶ 10.b);

d. Require all mediation proceedings to take place in New York, New York and mandatory attendance by a business principal of a Derivative Counterparty, regardless of where the Derivative Counterparty is located (Proposed Order ¶ 10.d); and

e. Full participation in the mediation process by the Creditors' Committee, regardless of the concerns of the Derivative Counterparty concerning dissemination of propriety confidential information (Proposed Order ¶ 10.e and 10.f).

## **Objection**

4. An alternative dispute resolution process must be fair to all parties involved and promote the interests of justice.  The Derivatives ADR Procedures proposed by the Debtors are one-sided and confusing, particularly when viewed in the context of the requirements imposed by the Debtors on creditors under the Bar Date Order.  The Derivatives ADR Procedures, if approved, would allow the Debtors to commence the dispute procedures by serving "a notice containing sufficient information regarding the Derivatives ADR Dispute to make the Derivatives Counterparty aware of the nature of Debtor's affirmative claim and of its demand for settlement" ("<u>Derivatives ADR Notice</u>") (Proposed Order ¶ 8.a).  Failure to timely respond

3

would subject the Derivatives Counterparty to sanctions. In contrast, pursuant to the Bar Date Order, creditors under Derivatives Contract have to not only file a proof of claim (presumably containing as much, if not more, information as the Derivatives ADR Notice), but must also fill out a questionnaire and provide significant documentary evidence in excess of that required by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. The Debtors, thus, seek approval of procedures which do not require the Debtors to provide its purported debtors with the same information the Debtors claimed their creditors must provide in order for the Debtors to analyze the creditors' claims. In addition, the Derivatives ADR Procedures accord the Debtors and the mediators selected by the Debtors (or appointed by the Court, in either case, without input by the Derivatives Counterparties) significant discretion far in excess of that contemplated by General Order M143. Accordingly, unless the procedures are modified in accordance with below, this Court should deny the ADR Motion.

## I.     The Proposed Order Impairs Litigants' Article III Protections

5.     Because some Derivative Counterparties have not and may not file proofs of claims, the Debtors' claims against them may be noncore proceedings. The Derivative ADR Proceedings must be modified to ensure protection of the rights of Derivative Counterparties to have their matters heard by an Article III court, including their right to assert defenses to the Debtors' request for sanctions under the Derivative ADR Proceedings.

6.     In this regard, the Proposed Order purports to preserve a Derivatives Counterparty's jury trial rights so long as such Counterparty does not "affirmatively" choose the mediation process. But, the Proposed Order, as written, makes participation in the Mediation Stage mandatory. Accordingly, the preservation of rights under the Proposed Order is illusory. Finally, there is no reason why participation in mediation procedures should eliminate a

Derivatives Counterparty's right to a jury trial (or an Article III court) should such mediation be unsuccessful. Accordingly, any order approving ADR Procedures should explicitly preserve the rights, if any, of a Derivatives Counterparty to a jury trial and an Article III court.

### II.     Certain Provisions of the Proposed Order are Unfair, Confusing, and/or Unclear

7. Certain provisions of the Proposed Order are unfair, particularly in light of the requirements imposed on creditors pursuant to the Bar Date Order. Those same and other provisions are also confusing and unclear. In particular, RBS objects to the following:

   a. **The Debtors Should be Required to Furnish the Information Sought from Derivatives Counterparties under the Bar Date Order's Derivatives Questionnaire.** As described above, the Derivatives Questionnaire requires that creditors answer certain questions and furnish substantial documentation in order to assist the Debtors in evaluating the validity of claims based upon Derivative Contracts. If that information is required by the Debtors in connection with their review of claims under Derivative Contracts, presumably it is pertinent to the Derivative Counterparties' defense to the Debtors' claims and should be provided to the Derivative Counterparties to ensure fairness in the process. All parties should be on an even playing field. Attached hereto as Exhibit A is a proposed questionnaire to be completed by the Debtors and served, as part of the Derivatives ADR Package, upon Derivatives Counterparties. Unless the Court requires the Debtors to provide the same amount and type of information required of Derivative Counterparties who file claims against the Debtors, the process will be impermissibly skewed in favor of the Debtors.

   b. **Not Enough Time for Derivatives Counterparties to Respond to Derivatives ADR Package.** Under the Proposed Order, a Debtor may commence the Derivative ADR Procedures with respect to any Derivatives Counterparty at any time by serving a Derivatives ADR Package upon such party, regardless of whether there is pending litigation between the Debtor and the Derivatives Counterparty. In both *Enron* and *Ames*, which the Debtors rely upon, mediation procedures were only ordered with respect to parties to existing adversary proceedings with the debtors. *Enron*, Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. March 4, 2003) [Docket No. 9533] and (Bankr. S.D.N.Y. March 20, 2003) [Docket No. 9862] and *Ames*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007) [Docket No. 3195]. Furthermore, as the Debtors may commence the Derivative ADR Procedures at any time and without prior notice, the affected Derivatives Counterparties should be given, at the very least, 60 days to respond to any Derivatives ADR Package, and in no event should be required to respond prior to October 22, 2009, the date that the Derivatives Questionnaire must be filed.

5

c.  <u>Sanctions Should Not Arise From Failure to Reply to the Derivatives ADR Package</u>. The Proposed Order permits the court to impose sanctions upon Derivatives Counterparties, after notice and a hearing, for failing to comply with the Derivative ADR Procedures in good faith (Proposed Order ¶ 12). Failure to respond to the Derivatives ADR Package should not result in sanctions, particularly in the Debtors' scenario where the Debtors provide bare information (as opposed to the detailed information required of creditors under the Bar Date Order). Moreover, the Debtors are not subject to sanctions if they fail to respond to the Derivatives Counterparty's response to the Derivatives ADR Notice.

d.  <u>Mediation Should Not be Required to Occur in New York, New York, and the Venue of the Mediation Should Not Impact any Choice of Law Rules</u>. Paragraph 10.d of the Proposed Order requires that mediation proceedings occur in New York, New York "unless agreed to by the parties and the mediator." The next sentence of the Proposed Order provides, "The addition or elimination of Mediation Sites shall be within the *sole discretion* of the Debtors, (emphasis supplied)," which completely negates the ability of the mediator and/or the Derivatives Counterparty to choose an alternative venue, even if all interested parties, other than the Debtors, are located outside of New York. That is patently unfair. The Debtors are *sui silencio* precluding venue motions! Finally, the Proposed Order should include a provision stating that the venue of the mediation, including New York, New York, shall not impact any choice of law rules on substantive issues.

e.  <u>The Mediators Should be Acceptable to the Debtors and the Derivatives Counterparty</u>. General Order M143 specifically contemplates that any mediators will be subject to the approval of both parties to the dispute. *See* General Order M143 2.2(A). Here, the Debtors seek the Court to appoint one or more mediators even before they serve the Derivatives ADR Notice; the Proposed Order does not even contemplate Derivatives Counterparties' input. Unless the Derivatives Counterparties' have input into the choice of mediators, the process will not appear fair which will not bode well for settlement.

f.  <u>The Proposed Order Should Not Require that a Business Principal With Settlement Authority Appear at Mediations</u>. The Proposed Order states that unless otherwise ordered by the mediator, all participants in the mediation must appear "with a business principal who has settlement authority" (Proposed Order ¶ 10.f). This provision is unnecessarily burdensome on parties located outside of New York, particularly on parties located outside of the United States. To be fair, the Proposed Order should provide that a party can attend in person or through counsel, provided that, if it is contemplated that the subject of the mediation session will be settlement (and not to resolve briefing and other procedural matters) the attorney attending has the requisite authority and ability to make a decision and/or reach a business principal having settlement authority.

g.  <u>At the Option of the Derivatives Counterparty, the Creditors' Committee Should be Excluded from Participating in Mediation</u>. The Proposed Order provides that

6

any briefs served during the course of the Mediation Stage, whether voluntary or by order of the Mediator, must also be provided to the Creditors' Committee (Proposed Order ¶ 10.e) and "the Creditors' Committee may attend and participate in all mediations hereunder" (Proposed Order ¶ 10.f). Although discussions and papers submitted in a mediation are privileged and confidential (Proposed Order ¶ 4), Derivatives Counterparties should be permitted to exclude the Creditors' Committee from participating in a mediation to restrict the number of parties with access to information provided by the Derivative Counterparties.

h. The Derivative ADR Procedures Should Not Be Mandatory Prior to the Resolution of Certain Key Issues Relating to Derivative Contracts and the Mediator Should Not Have Unlimited Discretion. The Debtors have stated that "many common issues exist with respect to the Debtors' Derivative Contracts with Recovery Potential including the appropriateness of setoff, termination, valuation, computation of termination payments, and notice" (ADR Motion ¶ 12). In fact, the Debtors have commenced adversary cases in respect of certain such issues. Before a mediator can realistically help Derivative Counterparties and the Debtors reach a consensual settlement regarding their respective claims, the Court should first resolve these and related issues and provide all parties the opportunity to participate. The Debtors seek to put the cart before the horse: the Proposed Order would allow the mediator to certify issues for the Court to resolve (Proposed Order ¶ 10.b). That is not a mediator's role. Either the parties reach agreement or they do not. The parties to the dispute should be the ones requesting Court intervention and framing the issues, not a mediator.

i. Nothing in the Derivative ADR Procedures Should Prejudice any Derivatives Counterparty's Rights To Request Abstention or Reference Withdrawal at Any Time. Although the Debtors seek to preserve their rights to remove lawsuits and proceedings in other venues to the Bankruptcy Court and then to cause such actions to be submitted to mediation pursuant to the Derivative ADR Procedures, the Debtors also seek to eliminate any right of the Derivatives Counterparties to abstain from such process and have their claims adjudicated by the Bankruptcy or District Court. In *Enron*, Judge Gonzalez specified that the Proposed Order in question did not affect the right of any party to file a motion to withdraw the reference of its case to the bankruptcy court. Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. March 20, 2003) [Docket No. 9862]. By providing such procedural safeguards, the court in *Enron* avoided unfairness to counterparties to trading contracts.

j. The Provision Regarding Participation in Derivative ADR Procedures Not Constituting a Waiver of Existing Rights to a Jury Trial Is Confusing, Given the Mandatory Nature of the Derivative ADR Procedures. Because the Derivative ADR Procedures are mandatory and Derivatives Counterparties with claims giving rise to a right to a jury trial are compelled to participate in the procedures pursuant to the Proposed Order, paragraph 14 of the Proposed Order raises questions regarding whether, in fact, such right to a jury trial may be asserted. Further, this provision raises questions as to why affirmative participation in

7

mediation procedures should eliminate Derivatives Counterparties' rights to a jury trial should such mediation be unsuccessful.

Unless this Court modifies the propose Derivative ADR Procedures as set forth above to ensure a fair and constitutional process, the ADR Motion must be denied.

WHEREFORE RBS requests that this Court deny the ADR Motion and grant RBS such other and further relief as is just and proper.

| | |
|---|---|
| Dated: New York, New York<br>July 31, 2009 | DEWEY & LEBOEUF LLP<br><br>/s/ Martin J. Bienenstock<br>Martin J. Bienenstock, Esq.<br>Irena Goldstein, Esq.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>Telephone: 212-259-8000<br>Facsimile: 212-259-6333<br><br>Attorneys for The Royal Bank of Scotland plc and its Affiliates |

# **EXHIBIT A**

**(Derivatives Questionnaire)**

**Derivative Questionnaire**

Name of Debtor:

Name of Creditor:

Debtor contact person and phone number:

1. **Have the derivatives which are subject to the ADR Package matured or been terminated?**

If Yes--Enter the derivative claim amount and each line item included in the calculation thereof on the provided table and provide the information in 2 below.

If No, set forth the theory as to why the Non-debtor party to the derivatives subject to the ADR Package are liable to the Debtors.

**2.** a. Documentation of Transactions.  Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim.

b. Termination Notice.  Please provide a copy of the termination notice, including evidence supporting delivery date of the termination notice.

c. Valuation Statement.  Please provide a copy of the valuation statement.  Please identify any collateral that has been posted by any party in connection with the transactions and any claims of set-off against other transactions reflected in the claim.

d. Individual Trade Level Detail.  Please provide with respect to each transaction (i) the valuation date (to the extent not included in your valuation statement) and value and (ii) details for the purpose of identifying and reconciling each transaction (e.g. including, as applicable, trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, factor and original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call or put, cap or floor, effective date, and maturity date. (For the avoidance of doubt, you are not required to submit each and every one of the foregoing)).  Please provide this information in Microsoft Excel format.

e. Trade Valuation Methodology and Quotations.  Please check the box next to each valuation methodology used to support the claim (if multiple methodologies were used, please check multiple boxes and identify the trade population listed in clause d. above to which each valuation method applies):

____ ISDA Master Agreements Specifying Market Quotation Methodology:  If not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (*i.e.*, name of institution) concerning the transactions.

____ ISDA Master Agreements Specifying Loss Methodology.  To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (*i.e.*, name of institution) concerning the transactions.

____ ISDA Master Agreements Specifying Close-Out Amount Methodology.  To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (*i.e.*, name of institution) concerning the transactions.

____ ISDA Master Agreements Specifying Any Other Methodology.  To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (*i.e.*, name of institution) concerning the transactions.

____ Non-ISDA Master Agreements.  To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (*i.e.*, name of institution) concerning the transactions.

____ Replacement Transactions:  If you replaced a terminated transaction with a transaction with the same economic terms as the terminated transaction, provide documentation evidencing such replacement transaction and the quotation(s) used, including specifying any cash (or other consideration) paid or received by or to any person to replace the transactions, the name of each entity that effectuated a replacement and when any such transactions were effected.

f. <u>Unpaid Amounts</u>.  Please specify any unpaid amounts and interest accrued thereon included in calculation of any amounts due with respect to the transactions.

g. <u>Collateral</u>.  Please provide CUSIP/ISIN for collateral listed, if applicable, or other information that reasonably identifies collateral reflected in the claim calculation and the valuation of such collateral.  Please provide this information in Microsoft Excel format.

h. <u>Other costs</u>.

    i. If claim includes other costs, please include a schedule that lists each such cost by vendor and indicates the service provided and amount paid.

    ii. If claim includes interest charges, please provide calculation in Microsoft Excel format of interest including principal amount, interest rate, term and assumptions.

2

NYA 605560.8