Hearing Date: August 5, 2009 at 10:00 a.m. (e.s.t.)
Objection Date: July 31, 2009 at 4:00 p.m (e.s.t.)

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
Ken Coleman
John Kibler

Attorneys for Public Bank Berhad

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                      :
In re                                                 :    Chapter 11 Case No.
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,          :    08-13555 (JMP)
                                                      :
           Debtors.                                   :    (Jointly Administered)
                                                      :
                                                      :
------------------------------------------------------------------------x

**OBJECTION OF PUBLIC BANK BERHAD TO DEBTORS' MOTION
FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE
DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE
CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Public Bank Berhad ("Public Bank"), by and through their undersigned counsel, hereby files this objection (the "Objection") to the Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-captioned chapter 11 cases (together with LBHI, the "Debtors"), pursuant to section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims

of Debtors Under Derivatives Contracts, dated July 20, 2009 (Docket No. 4453) (the "Motion").[1]

Public Bank is a party to approximately twenty-three trades with Lehman Brothers Special Financing Inc. ("LBSF") and guaranteed by LBHI, pursuant to an ISDA Master Agreement dated as of September 14, 2004, which is governed under the laws of England and Wales, and provides that England is the exclusive forum to arbitrate or litigate any disputes arising under the ISDA Master Agreement. All of these trades were terminated, and Public Bank has paid LBSF amounts owed under each of the swap transactions. LBSF has disputed the amounts paid by Public Bank, for among other reasons, the timing of certain market quotations used to calculate termination damages thereunder.

## OBJECTION

1. In the Motion, the Debtors seek to adopt certain alternative dispute resolution mechanisms that are purportedly contemplated and authorized by General Order M-143, which provides for "any adversary proceeding, contested matter or other dispute" to be referred to mediation. The salutary goal of this order is to reduce litigation expenses by providing a mechanism to promote the consensual resolution of matters before the court. However, in these cases, the Debtors are seeking to impose unduly burdensome mediation procedures upon parties who have no litigation pending before the court, and indeed, are not subject to the personal jurisdiction of this Court. Failure to comply with these procedures could lead to an order approving whatever amount the Debtors purportedly claim is due and owing to them under so-called "in the money" claims, without ever having litigated or arbitrated such

---

[1] Terms not otherwise defined in this Objection shall have the meanings set forth in the Motion.

amounts as required under their respective agreements. For these reasons, and as set forth below, the Motion should be denied.[2]

## I.   Lack of Jurisdiction

2. The Motion seeks to impose a mandatory dispute resolution upon parties over whom the court itself may not have personal jurisdiction, and over whom there is currently no active case, proceeding or contested matter. Under General Order M-143, the types of matters subject to mediation are "any adversary proceeding, contested matter or other dispute." Although the "other dispute" language could be interpreted broadly to encompass matters that are not yet the subject of litigation, it should not be interpreted so broadly as to impose requirements on parties that are not before the court and for whom there may be no jurisdictional basis to do so.

3. The ISDA Agreement between LBSF and Public Bank is governed by English law, and provides that the sole forum to adjudicate disputes between the parties is England. Public Bank is a Malaysian entity that lacks minimum contacts with the United States, has filed no proof of claim(s) in these cases, and has not consented to or availed itself of the

---

[2] On July 30, 2009 and again on July 31, 2009, counsel for the Debtors provided Public Bank with a blackline of the proposed order (the "Revised Proposed Order") incorporating various changes that addressed many of the concerns that Public Bank had with the order as originally drafted. In reliance that the changes in the Revised Proposed Order will not be modified, Public Bank at this time is not objecting to certain relief sought by the Motion. If the order as presented to the court provides otherwise, Public Bank reserves the right to object to these provisions. Among other things, the Revised Proposed Order:

   (i)   removed a provision authorizing the mediator, in his or her discretion, to certify specific legal issues to the court for decision;
   (ii)  clarified and expanded on a Derivative Counterparty's rights to a jury trial, arbitration or exclusive foreign selection clause;
   (iii) clarified that all rights, remedies, claims and defenses of a Derivatives Counterparty shall not be impaired, waived or comprised by participation in the proposed Derivatives ADR Procedures;
   (iv)  clarified that the fees of the mediator will be paid by the Debtors, unless otherwise ordered by the court; and
   (v)   provided that the mediation shall end upon request of a party and concurrence by the mediator.

court or this forum in any fashion. Were LBSF to commence litigation against Public Bank in the United States, Public Bank clearly could and would raise the lack of *in personam* jurisdiction as a defense. However, the order as proposed purportedly applies to all Derivatives Counterparties, regardless of jurisdictional impediments. The failure to comply with these procedures could result in LBSF being awarded "Sanctions" in "the amount specified in the Derivatives ADR Notice." Proposed Order at 12(b). In other words, the Debtors would obtain what is effectively a default judgment from a forum in which they are contractually unable to litigate. The Debtors should not be authorized to receive a judgment from this court in the guise of "sanctions" that they otherwise could only obtain through appropriate litigation or arbitration in England.

## II.    Procedures Are Improper

4.      Beyond the jurisdictional impediment to granting the order, the procedures sought to be implemented are improper, unduly favorable to the Debtors, and impose draconian sanctions for non-compliance. Rather than being designed to facilitate the consensual settlement of contested issues, the procedures seem designed as a trap for the unwary.

### Unrealistic Timeframe

5.      The proposed procedures impose an unrealistically tight timeframe in which parties are expected to act. For example, under the proposed procedures, a Debtor can request an initial settlement conference to be held within five (5) calendar days of such request, to which a Derivatives Counterparty must reply within two (2) calendar days.[3] It is unclear from the order what penalties would be imposed on a party that cannot meet this deadline. The failure to meet other deadlines proscribed in the proposed order can mean entry of a judgment in favor

---

[3] The Revised Proposed Order provides for a reply within two (2) business days, whereas the order as originally submitted had provided for two (2) calendar days.

of the Debtors for the full amount of their purported claim. These timeframes are especially onerous for parties such as Public Bank, which operate in jurisdictions half-way around the world from New York.

### Selection of Mediator

6. The Debtors seek to have the court appoint one mediator who will hear and preside over all mediations. Motion at ¶ 23. Derivatives Counterparties must accept this choice of mediator unless the initially selected mediator is unwilling or unavailable to serve. <u>Id.</u> at ¶ 24, Proposed Order at 10(c). Public Bank objects to this for two reasons. First, having one mediator preside over all mediations may be prejudicial to individual Derivatives Counterparties, as positions taken in one mediation may prejudice the mediator's decisions in another, unrelated mediation. Second, General Order M-143 clearly provides that both parties should be able to determine whether a mediator is acceptable:

> [P]arties will ordinarily choose a mediator from the Register for appointment by the Court. If the parties cannot agree upon a mediator within seven (7) days of assignment to mediation, the court shall appoint a mediator and alternate mediator.

General Order M-143 at § 2.2(A). Here, by attempting to limit the Derivative Counterparty's rights to a single mediator (or a pre-determined reduced list of mediators), without any input from the Derivatives Counterparty, the Debtors are eviscerating the protections embodied by General Order M-143.

### Location of Mediation

7. The Debtors seek to have all mediation proceedings take place in New York, unless otherwise agreed to by both the Debtors and the mediator. For parties such as Public Bank, which is located in Malaysia, this imposes a significant burden that is not contemplated by General Order M-143, which provides that the mediator shall consult with all

attorneys and "shall fix a reasonable time and place of the initial mediation conference of the parties with the mediator. General Order M-143 at § 3.1.[4] Rather than fixing a time and place reasonable to all parties, the Debtors seek to unilaterally impose a location convenient only to the Debtors.

### Finding of Common Issues

8. Finally, the proposed order contains a finding that "certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice." This finding is based solely on the Debtors' allegations in the motion, and there is no record for such a finding. Public Bank is concerned that the Debtors may attempt to consolidate multiple disparate disputes based solely upon an unsubstantiated finding of so-called common "interests". Thus any such finding is inappropriate and should be stricken.

---

[4] The Revised Proposed Order ameliorates this problem to a certain extent, by authorizing the "business principal with settlement authority" to attend by video conference "at the sole expense of the Derivative Counterparty," and only to the extent "acceptable to the mediator." While this language is helpful, it still removes the reasonableness component to the mediator's decision, applies only to one individual appearing on behalf of the Derivatives Counterparty, and shifts the costs unfairly to the Derivatives Counterparty.

6

41483-00232 NY:8750610.1

## CONCLUSION

For all of the foregoing reasons, Public Bank respectfully objects to the relief sought in the Motion.

Dated: New York, New York
    July 31, 2009

                ALLEN & OVERY LLP

                By: /s John Kibler
                Ken Coleman
                John Kibler
                1221 Avenue of the Americas
                New York, New York 10020

                Attorneys for Public Bank Berhad

41483-00232 NY:8750610.1