Hearing Date and Time:  August 5, 2009 at 10:00 a.m.
Objection Date and Time:  July 31, 2009 at 4:00 p.m.

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
Facsimile:  (312) 701-2361
James E. Spiotto (admitted pro hac vice)
Ann E. Acker (admitted pro hac vice)
Franklin H. Top, III (admitted pro hac vice)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE<br><br>LEHMAN BROTHERS HOLDINGS INC., ET AL.,<br><br>                              Debtors. | CHAPTER 11 CASE NO. 08-13555 (JMP)<br><br><br>(Jointly Administered) |

**OBJECTION OF NATIONAL AUSTRALIA BANK LIMITED TO THE DEBTORS'
MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND
GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE
DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS
UNDER DERIVATIVE CONTRACTS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES National Australia Bank Limited (*"NAB"*), individually as a Derivative

Counterparty, by and through its counsel, Chapman and Cutler LLP, to object to the Debtors'

Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for

Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts (the "*Motion*" and NAB's objection thereto, the "*Objection*").  In support of its Objection, NAB states as follows:

## SUMMARY OF OBJECTIONS

1.    NAB is a Derivative Counterparty[1] for a number of transactions involving one or more of the Debtors.  NAB has a number of objections to the Motion which include:

A.    *Identification of "In the Money Swaps"*.  The Debtors first should be required to identify all of the derivative transactions they currently believe are 'In the Money" and therefore subject to these procedures so that Counterparties may reach out to the Debtors to attempt the settlement in advance of any ADR proceedings and to put Counterparties on Notice that their transaction might be subject to these ADR procedures.  This list also could serve as the initiation of a "dispute" as appears to be required to invoke the provisions of the General Order.

B.    *Optional Participation*.  Participation in the ADR proceedings should be optional not mandatory.

C.    *Actual Notice of the Derivatives ADR Package Must Be Provided*.  The procedures must be clarified so that the deadlines are not triggered until actual notice is received by the Derivatives Counterparty.

D.    *Derivatives ADR Notice*.  The Counterparty to the relevant derivatives contract should likewise have the ability to initiate whatever alternative dispute resolution process ultimately is ordered by this Court  by submitting a Derivatives ADR Notice of its own.

---

[1]    Capitalized terms not otherwise defined shall have the meaning attached to each term in the Motion unless a different meaning is apparent from the context.

E.    *Timing of Statement of Position and Settlement Conference*.  The timing of a Statement of Position  and Settlement Conference following actual notice must provide sufficient time to enable a Counterparty to determine its respective position on settlement and respond in a meaningful way.

F.    *Limitation of Number of Mediations with a Given Counterparty*.  Given the significant number of derivative contracts to which an entity may be a Counterparty, any mediation process should be coordinated to provide an efficient process from both the Debtors' and Counterparties' perspective to the degree possible scheduling a Counterparty to avoid duplication, etc.

G.    *Reply to the Response to the Derivatives ADR Notice*.  While requiring a Response from the Counterparty with the potential imposition of harsh penalties if a Response is not timely provided, there is no requirement that the Debtors submit a Reply to the Response of a Counterparty.

H.    *Assignment of the Mediator*.  The parties to the Derivative Contract ought to be able to select a mutually agreeable mediator;  in the event of a failure to agree, a mediator from a pool of mediators selected by their Court should be selected.

2.    NAB would be willing to work with the Debtors to resolve issues related to certain transactions between NAB and the Debtors involving Derivative Contracts.  If NAB and the Debtors were unable to resolve issues relating to a particular Derivative Contract, that matter would be brought to the attention of this Court.  As such, NAB does not believe any mediation process is necessary with respect to Derivative Contracts in transactions involving the Debtors.

## BACKGROUND

3.      National Australia Bank is Counterparty to a number of transactions involving the Debtors in these proceedings.  These transactions are generally sophisticated transactions involving derivative contracts.

### THE DEBTORS SHOULD DISCLOSE A LIST OF DERIVATIVE CONTRACTS THEY BELIEVE ARE IN THE MONEY

4.      NAB believes it would be helpful if the Debtors filed a nonbinding list of derivative contracts they believe are in the money.  First, the filing of the "list" could serve as the initiation of the "dispute" which appears to be required to invoke the provisions of the General Order.[2]  Providing a list would be fair to the counterparties by providing them notice that their contract is the subject of the mediation procedures, and may facilitate a resolution prior to initiating any of the proposed procedures, thereby conserving resources.  The procedures appear to permit only the Debtors to initiate the mediation process, under relatively short notice.  A list of derivative contracts which the Debtors believe are "in the money" would eliminate any surprise on the parts of Counterparties with respect the receipt of a Derivatives ADR Notice, and would enable Counterparties to examine the documentation relevant to a swap with knowledge of the Debtors' position.

### THE PROCEDURE SHOULD BE VOLUNTARY NOT MANDATORY AND ALL PARTIES SHOULD HAVE THE RIGHT TO INITIATE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

5.      Except in situations where the court specifically orders mediation in a particular case, the Standing Order anticipates voluntary participation in mediation.  The aspect of the ADR

---

[2]      Paragraph 1.3 of the General Order provides "unless otherwise ordered by the presiding judge, any adversary proceeding, contested matter or other dispute may be referred by the court to mediation".

Procedures rendering participation mandatory for Counterparties deemed to be in the money, setting tight deadlines and providing for sanctions in the event of failure to participate goes far beyond the terms of the Standing Order and ought not to be imposed on the Derivatives Counterparty.  Ironically, while it is not clear in either the Motion or the proposed Order, it appears that only the Debtors may initiate the process of invoking the ADR procedures by sending a Derivatives ADR Notice.  Section 8a. on page 5 of the proposed Order provides:

> Derivatives ADR Notice.  Debtors shall serve upon a Derivatives Counterparty a notice containing sufficient information regarding the Derivatives ADR Dispute to make the Derivatives Counterparty aware of the nature of Debtor's affirmative claim and of its demand for settlement . . .

This process should be open to all parties under terms of equally applicable terms and conditions. There is no good or just reason for the Debtors to obtain any leverage in connection with these disputes by virtue of their being the sole party to initiate the ADR procedures.

### ACTUAL NOTICE TO THE DERIVATIVES COUNTERPARTIES SHOULD BE REQUIRED AND THE TIMEFRAMES FOR ACTIONS REQUIRED BY DERIVATIVES COUNTERPARTIES SHOULD BE ADJUSTED TO ALLOW THE PARTIES TIME TO DETERMINE THEIR RESPECTIVE POSITIONS

6.      Actual notice to the Derivatives Counterparty must be provided.  Sending a notice to a vast financial institution without a requirement of actual delivery to a responsible party with knowledge of the transaction should not be permitted to trigger the deadlines required by the procedures or lead to the imposition of sanctions.  Further, the timing for the filing of the Statement of Position and Notice of Settlement Conference are far too aggressive.  The timing of these and various events provided for in the Order are not sufficient for Counterparties to determine their respective positions on settlement in these complex transactions and to

participate in a productive way.  A Counterparty needs sufficient time to gather the information needed for a meaningful exchange with Debtors.

7.      In order for the mediation process to be meaningful, NAB submits it would need more than 20 calendar days' notice to prepare a meaningful response to a Derivative ADR Notice and suggests that 45 calendar days' notice be substituted.  Likewise it needs more than 5 calendar days' notice to prepare for a settlement conference and submits 30 days' notice is appropriate.

## THE MEDIATION ORDER SHOULD LIMIT THE NUMBER OF MEDIATIONS A GIVEN COUNTERPARTY IS SUBJECT TO OR OTHERWISE PROVIDE SAFEGUARDS FOR MAKING THE PROCESS AS EFFICIENT AS POSSIBLE

8.      The purpose of the Motion is purportedly to provide an efficient approach to the resolution of issues relating to certain derivative contracts in which a Debtor is "in the money". The need for the procedures is purportedly based on the large number of derivative contracts at issue.  The procedures, however, provide no mechanism for insuring that the procedures are efficient from the perspective of Counterparties.  There are no limits on the ability of Debtors to issue Derivative ADR Notices to initiate these processes; the Debtors could theoretically burden those entities that are Counterparties on multiple swaps with seriatim Derivative ADR Notices, making the Counterparties subject to multiple notices with differing time frames.  The procedures ought to be as efficient as possible for the Counterparties as well, and limits ought to be placed on the number of any such notices that are outstanding at any given time, or some alternative method put into place to make the process as efficient as possible from the perspective of the Counterparties.  The procedures ought to require the Debtors and Counterparties to coordinate to avoid the duplication of effort.

## THE DEBTORS SHOULD BE REQUIRED TO PROVIDE A REPLY TO ANY RESPONSE TO A DERIVATIVE ADR NOTICE

9.    While the procedures require the recipient of a Derivatives ADR Notice to prepare a Response within a set period or suffer certain potentially severe penalties, there is no requirement that the Debtors prepare and serve a Reply.  The Debtors ought to be required to provide a Reply subject to the same penalties as a counterparty.

## THE PARTIES OUGHT TO BE ABLE TO SELECT A MEDIATOR; BARRING AN AGREEMENT ON THE IDENTITY OF THE MEDIATOR, A MEDIATOR OUGHT TO BE ASSIGNED RANDOMLY FROM A POOL

10.    Parties are required to participate in the mediation in good faith and may be subject to "instructions or directions" from the mediator.  As such the Derivative Counterparties ought to be able to seek the agreement with the Debtors on a mutually acceptable mediator, and barring that, a mediator be assigned randomly from a pool.  The current procedures mandate that there be one mediator assigned for all of the disputes which are the subject of these procedures.  Given the sheer numbers of disputes that might be the subject of these procedures, it is likely that one mediator will not be sufficient for this task.  Further the Debtors will gain an unfair advantage over other Counterparties if for no other reason but by knowing the methods of the mediator.  Further, to be effective, the procedures ought to be designed to assure the assignment of an impartial neutral - ideally one selected by the parties to the mediation, but if not, at least one selected at random from a pool of mediators selected by the Court.

## RESERVATION

11.    NAB reserves its rights to adopt and incorporate by reference objections raised by other Counterparties.

- 7 -

WHEREFORE National Australia Bank respectfully requests that this Court deny the relief requested in the Motion, or, alternatively, modify terms of the Order in accordance with this Objection.

Respectfully submitted,

NATIONAL AUSTRALIA BANK LIMITED,
   individually

/s/ Ann Acker

By: _____
One of Its Attorneys

James E. Spiotto
Ann Acker
Franklin H. Top, III
Chapman and Cutler LLP
111 West Monroe Street
Chicago, Illinois  60603
(312) 845-3000

- 8 -