ALSTON & BIRD LLP
Martin G. Bunin, Esq.
90 Park Avenue
New York, N.Y. 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

and

James C. Grant, Esq.
William S. Sugden, Esq.
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Fax: (404) 881-7777

*Counsel to Consolidated Container Company LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re:                                                       :  **Chapter 11**
                                                             :
**LEHMAN BROTHERS HOLDINGS, INC.,**                          :  **Case No. 08-13555 (JMP)**
*et al.*                                                     :
                                                             :  **(Jointly Administered)**
         Debtors.                                            :
------------------------------------------------------------x

**OBJECTION OF CONSOLIDATED CONTAINER COMPANY LLC
TO THE DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTIONS 105(A) OF THE BANKRUPTCY CODE AND GENERAL
ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT
ALTERNATIVE RESOLUTION PROCEDURES FOR AFFIRMATIVE
<u>CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

      Consolidated Container Company LLC ("<u>CCC</u>") hereby files this objection (the

"<u>Objection</u>") to the above-captioned debtors' (the "<u>Debtors</u>") "Motion Pursuant to

Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to

Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts" (Docket No. 4453) (the "Motion").[1]

## PRELIMINARY STATEMENT

CCC supports establishing a meaningful, fair and constitutional dispute resolution process with respect to the derivatives contracts to which the Debtors are counterparties. The Motion, however, attempts to establish inappropriate procedures that are unclear, inconsistent with this Court's General Order M-143 (the "General Order"), and inappropriately seek to alter the contractual rights to which the Debtors and their counterparties agreed.[2]

The relief the Debtors seek is without precedent. The Debtors suggest that the mediation orders in *Ames* and *Enron* are similar to the relief requested in the Motion. This is incorrect. The *Enron* order applied only to pending adversary proceedings. The *Ames* order also only dealt with pending adversary proceedings and was limited to mediation over relatively straightforward bankruptcy avoidance actions. Copies of the *Ames* and *Enron* orders are attached hereto as Exhibits A and B, respectively. The Debtors request *carte blanche* authority to refer to mandatory mediation any "Derivatives Contract" (a term which is undefined other than a contract the Debtors include in that category, and which in many instances may involve counterparties who have not been sued, may not have received notice of the Motion, and may not be subject to the jurisdiction of this Court). The Motion also seeks to permit the Debtors and the mediator to request (without the consent of the counterparty) that this Court involve itself in the

---

[1] CCC files this limited response solely to protect its legal rights and interests. CCC does not, by the filing of this limited response, consent to the jurisdiction of this Court, nor does it consent to the entry by this Court of a final order in any non-core matter. CCC reserves its rights in all respects.

[2] Any capitalized term not defined herein shall have the meaning ascribed to it in the Motion.

- 2 -

mediation through elaborate sanctions procedures and the ability to determine self-defined "legal issues." In these respects, among others, the relief requested is without precedent and is a significant departure from what the Court ordered in *Enron* and *Ames*.

CCC supports alternative dispute resolution and supports entry of an Order approving the Motion, subject to the objections set forth below. The Order should modify the relief requested in the Motion to give both the Debtors and their counterparties a fair and level playing field on which to attempt to resolve disputes that may exist between them. CCC submits that approval of the Motion, as presented, would present a situation that inhibits rather than fosters good faith dispute resolution.

## OBJECTION

A.  **The definition of "Derivative Contracts" that are subject to the Motion is vague and ambiguous and should be modified.**

The Motion by its terms applies to "Derivatives Contracts" which are defined as the "more than 900,000 prepetition derivatives contracts" to which the Debtors assert they were parties. *See* Motion ¶ 9. The definition includes, but is not limited to, "swap agreements and forward contracts." *Id.* ¶ 8. This definition is unilaterally determined – the Debtors are able to force into alternative dispute resolution any person whom they deem to be a "Derivatives Contract" counterparty.

The broad definition of "Derivatives Contract" may cause mischief. Even adopting a narrow definition of what may constitute a "Derivatives Contract," the definition would almost certainly include contracts to which none of the Debtors were a party and the only connection to the Debtors is a guarantee issued by Lehman Brothers Holdings, Inc. ("LBHI"). This is so because, among other reasons, the definition of a "swap agreement" under the Bankruptcy Code includes a guarantee. *See* 11 U.S.C.

- 3 -

§ 101(53B)(A)(vi). Thus, for example, the Debtors could force into their dispute resolution procedures a dispute between a foreign non-debtor affiliate and a counterparty where the counterparty's only connection to the Debtors is a guarantee by LBHI. By including such transactions in the sweeping definition of "Derivatives Contracts," the Debtors secure the ability unilaterally to force the counterparties into a mediation in the hope of extracting recoveries on intercompany claims against such foreign affiliates or otherwise to increase their distribution of equity. CCC submits that there is no basis to include such transactions within the scope of any Order.

The definition of Derivatives Contract should, therefore, be narrower and better defined. The Debtors and numerous other interested parties have already negotiated a definition of the term in the context of the order setting the claims bar date. *See* Docket No. 4271. The definition in the bar date order should be used rather than the one used in the Motion. The Debtors' current definition is inappropriately vague and will invite disputes, rather than resolve them.

### B. The definition of a "Derivative Counterparty" should be clarified.

The Debtors define a "Derivative Counterparty" to "include an affiliate of such counterparty or person or entity who exercised or failed to exercise duties in relation to such Derivative Contract." *See* Motion ¶ 9. CCC is unclear what the quoted language means and the categories of people and entities the Debtors intend to subsume within the definition of a "Derivative Counterparty." This definition should be modified to define more precisely who is a "Derivative Counterparty" or the Debtors should clarify who they intend to incorporate within this definition. CCC reserves its rights to supplement this objection based upon any further clarification.

      **C.    The provisions related to sanctions and other Default Remedies are inappropriate and should be stricken.**

The Debtors propose a series of sanctions and other remedies for their self-defined defaults. These include, among other things, a remedy that amounts to a default judgment in the Debtors' favor. *See* Motion ¶ 29. It is unnecessary in the Motion to address the scope of remedies the Court may choose to impose at a later point in time for a default that has not yet occurred.

The Order should recognize that, in some instances, the Court will not have jurisdiction to impose sanctions on a counterparty because, under the Debtors' proposal, no adversary proceeding will have been commenced prior to the Debtors invoking the alternative dispute resolution procedures. Regardless of whether an adversary proceeding has been commenced and the Court is apprised of the nature of the dispute, the remedy of a default judgment because a mediator believes a party is "not cooperating" (*see* Motion ¶ 29), is too draconian and poses significant due process concerns.

It is clear under the General Order that the Court has the authority to compel mediation and to issue a sanction in certain instances. Any Order authorizing the Motion should be limited to the remedies already set forth in the General Order.

      **D.    The Court should not issue advisory opinions on "legal issues."**

The Debtors propose that the mediator "have … the ability to certify specific legal issues to the Court." *See* Motion ¶ 25. This is inconsistent with past practice before this Court and with the General Order. The General Order, for instance, does not address certification of legal questions to the Court. And, in the *Enron* order, legal questions could only be certified with the consent of the parties to the mediation.

In the circumstances presented by these cases, there should be no certification of

any "legal" or other question to the Court. As an initial matter, it is not clear that the Court has authority to issue such opinions where a counterparty has not been brought before the Court in the context of an adversary proceeding. Even where the Court has such authority, the proposed certification procedure inappropriately involves the Court in alternative dispute resolution, jeopardizing the consensual nature of the process and potentially influencing later proceedings in the event mediation does not yield a settlement.

Moreover, an advisory legal opinion procedure would give the Debtors a unique and unfair advantage in the context of these cases involving hundreds of counterparties. The Debtors assert that there are certain common sets of disputed facts and issues across the disputes the Debtors have with their counterparties. *See* Motion ¶ 2. These disputes are at various stages of resolution – some have not yet been asserted, others have but no adversary proceeding has been commenced, still others have adversary proceedings in a nascent stage, and others are at an advanced stage of briefing. If the Court issues an advisory opinion on one of these common issues of law, it may have a cascading impact on other disputes involving counterparties who have not had any opportunity to argue their position to the Court. Even if the Court were to qualify that any such advisory opinion was to have no precedential effect, the Debtors would have knowledge of all prior advisory opinions, placing them at an unfair advantage in later mediations.

The unique circumstances presented by these cases make the Court issuing advisory opinions uniquely problematic. This is particularly so because many of the disputes the Debtors are likely to designate for dispute resolution involve complicated structures and controlling documents, where there is no applicable or binding precedent.

If a dispute over legal principles presents an insurmountable obstacle to settlement, the most appropriate approach is *not* to have this Court issuing advisory opinions, but rather to require the parties to litigate their dispute in an adversary proceeding.

### E. The right to invoke alternative dispute resolution procedures should be bilateral.

The Debtors proposed procedures permit only the Debtors to initiate alternative resolution procedures. This is unnecessarily limiting. In certain instances, it may be appropriate for a counterparty to initiate alternative dispute resolution procedures. While alternative dispute resolution should not supplant the ordinary bankruptcy claims resolution process, in certain instances it will be appropriate to permit a counterparty to initiate the alternative dispute resolution procedures that are authorized and this should be recognized in any Order granting the Motion.

### F. The response time for a counterparty's Statement of Position should be the later of the deadline for uploading derivatives questionnaires or 20 calendar days from receipt of the Derivatives ADR Package.

The Debtors propose that counterparties submit a "Statement of Position" within 20 calendar days from receipt of the Derivatives ADR Package. *See* Motion ¶ 15. In most instances, this will require a counterparty to calculate and confirm its termination values, tasks that counterparties are already undertaking in the context of preparing and filing proofs of claim and uploading questionnaires. If an Order is entered before October 2, 2009, the Debtors will be in a position to force matters into alternative dispute resolution and require counterparties to respond prior to the October 22, 2009 deadline for uploading questionnaires. Counterparties should be provided a full opportunity through the deadline for uploading questionnaires to calculate and analyze their termination values. The alternative dispute resolution process should therefore not begin

- 7 -

until the later of: (i) the October 22, 2009 questionnaire deadline, and (ii) 20 days after receipt of a Derivatives ADR Package.

> **G.    Any Order granting the Motion should specify more precisely the information the Debtors must provide to a counterparty in a Derivatives ADR Notice.**

In a Derivatives ADR Notice, the Debtors propose to provide a counterparty only with "sufficient information of the Debtors' affirmative claim and its demand for settlement." *See* Motion ¶ 15.  The Debtors do not define "sufficient information."  This will inhibit, not promote, dispute resolution.  The Debtors should be required, at a minimum, to provide: (i) the amount of the Debtors' demand; (ii) the method of calculating the demand; (iii) the underlying data supporting the calculation and the calculation method, including the sources of the information; (iv) any other material provision of any settlement proposed by the Debtors; and (v) in instances where the Debtors assert that a counterparty's methodology or results are not in accordance with the agreement between the parties, an explanation of the basis for this assertion.  Ultimately, the information the Debtors should have to provide in a Derivatives ADR Notice should substantially mirror the information the Debtors are requiring counterparties to provide in a proof of claim and accompanying questionnaires.

> **H.    The Debtors should be required to serve a Derivatives ADR Notice on the notice parties specified in the applicable Derivatives Contract and any counsel that has appeared for the counterparty in these cases.**

The Debtors propose that service of a Derivatives ADR Package be deemed sufficient if it "is provided to the Derivatives Counterparty, the Derivatives Counterparty's counsel, legal guardian, estate representative, or other representative by (i) hand delivery, (ii) first class mail, or (iii) over night mail." *See* Motion ¶ 15.  In most instances, the Derivatives Contracts will specify agreed upon notice addressees.  The

Order should, at a minimum, require that the Debtors give notice to such persons. Additionally, where counsel to a particular counterparty is known to the Debtors, the Debtors should also be required to deliver notice to such counsel.

### I.  The Motion should not limit a counterparty's affirmative rights with respect to claims the counterparty has against the Debtors.

Paragraph 17 of the Motion states, in part, as follows: "Nothing contained herein, however, will limit a Derivative Counterparty's right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder." This is unnecessarily narrow. In certain instances, a counterparty may have affirmative claims against the Debtors in excess of any asserted claims of the Debtors against the counterparty. Counterparties should not be limited in the assertion of these claims in alternative dispute resolution (or any other proceeding). The quoted language should be broadened to incorporate affirmative claims.

### J.  Counterparties' right to a Settlement Conference should not be limited by the Debtors' rejection of a counteroffer.

Paragraph 20 of the Motion proposes that the Debtors submit a reply (the "<u>Reply</u>") to a counterparty after receipt of a Statement of Position. If the Statement of Position includes a counteroffer, the Reply may accept or reject the counteroffer. However, once a counteroffer is rejected, the Motion proposes that the parties immediately proceed to mediation.  *Id.*  This inappropriately limits a counterparty's ability to request a Settlement Conference, which is unavailable once mediation is initiated.

### K.  The Motion is unclear as to the allocation of the costs of a mediator.

Paragraph 30 of the Motion proposes that the party "requesting" mediation be

responsible for the mediator's costs. It is unclear what is meant by "requesting" mediation in the context of the procedures proposed by Debtors. Because their proposed Order contemplates that only the Debtors can initiate the alternative dispute procedures, presumably the Debtors will always be the "requesting" party. Accordingly, the proposed Order should explicitly provide that the mediator's fees and expenses will be borne solely by the Debtors, unless the Order is modified to permit counterparties to initiate the alternative dispute resolution process.

**L.    The Order should not alter a contractual allocation of the cost of fees and other costs.**

Paragraph 30 of the Motion proposes that each party be responsible for its own counsel fees. In most instances, the Derivatives Contract will allocate the counsel and other fees (generally imposing those fees and costs upon the defaulting party, which will almost invariably be the Debtors). Where the parties have allocated fees and costs in an applicable Derivatives Contract, the Order should not alter that allocation.

**M.    The deadlines set for the Settlement Conference procedure are inappropriately tight and should be modified.**

The Debtors propose a series of two- and five- day deadlines for the scheduling of a Settlement Conference. *See* Motion ¶ 21. These deadlines are unnecessary and inappropriately tight. The parties are under an obligation to deal with one another in good faith and should be required to expeditiously schedule and hold a Settlement Conference once one has been requested. Individual circumstances may warrant different time periods. The Order should maintain flexibility on the timing of Settlement Conferences. If the Debtors believe that a counterparty is not dealing in good faith, they may return to the Court to seek relief at that time and in that circumstance.

### N. The parties should be able to reasonably designate who may attend a settlement conference, mediation, or other dispute resolution effort.

Paragraphs 22 and 28 seek to limit who may attend a Settlement Conference and mediation. This is unnecessary. Both the Debtors and the counterparties should be able to designate who may attend either the Settlement Conference or mediation. For instance, if a counterparty has employed advisors (other than counsel) to assist in the resolution of a dispute with the Debtors, the counterparty should be entitled to designate the advisor as an attending party.

Additionally, in some instances, a counterparty may be a trust or other special purpose vehicle in a structured transaction involving the issuance of securities to investors. In such instances, the counterparty may have engaged an asset manager or other party to assist in managing its assets and derivative contracts. In addition, a trustee will have been appointed to exercise certain rights of the counterparty on behalf of the related investors. That trustee may in turn take directions from a designated party, including in some cases a controlling group of investors. In such a case, none of these parties, including the investors (who will bear the economic risk of any settlement and who may ultimately need to approve a settlement), should be foreclosed from attending a Settlement Conference or mediation (together with advisors).

The Debtors and the counterparties should thus have a reasonable opportunity to designate attendees. If either party believes the other party is not acting in good faith in designating attendees, the Court should be available to resolve any such disputes.

### O. A mediator should be required to disclose all connections to parties.

Any mediator or mediators appointed to assist in resolving disputes should be required to disclose the mediator's connections to the Debtors and the counterparty in

accordance with Rule 2014 of the Federal Rules of Bankruptcy Procedure. This disclosure need not be filed on the docket in these cases, but should be sworn under penalty of perjury. Such a requirement is consistent with and will help effectuate the General Order. *See* General Order § 2.3 (stating that a mediator may be disqualified for bias or prejudice and for failing to meet the "disinterested" standard under Section 101 of the Bankruptcy Code). Disclosure of connections at the outset of a mediation is a reasonable and appropriate requirement and should be welcomed by both the Debtors and the counterparty.

### P. More than one mediator is necessary.

The Debtors propose that only one mediator be appointed. *See* Motion ¶ 23. Given the scope and complexity of issues that may be addressed at a mediation (as well as the number of mediations that may be held), one mediator will be insufficient. Additionally, in certain mediations, the mediator may have disqualifying connections to the counterparties. The Court should therefore appoint several mediators, or the General Order should govern the procedure for selecting the mediator.

### Q. The Order need not address the location of mediations.

Paragraph 26 of the Motion proposes that all mediation proceedings shall be held in New York, New York. It is inappropriate for the Debtors to require that participants appear in-person and to set a default location. Section 3.1 of the General Order states that the mediator will decide the location for mediation after consultation with all attorneys. Consistent with that provision, the mediator should be empowered to determine the location for in-person mediation and consider requests that in-person participation not be required.

**R.      A default briefing schedule should be imposed.**

The Debtors propose that parties have the option of briefing issues for submission to the mediator unless required by the mediator. *See* Motion ¶ 27. This is inappropriate here; a default briefing schedule should be imposed. The amounts at issue here are likely in all cases to be quite significant. Additionally, the paper record available to the mediator other than mediation briefing will be scarce (perhaps no more than an offer and counteroffer with short explanatory statements). Furthermore, the nature of the issues to be decided will, in almost all cases, likely be quite novel.

A mandatory default briefing schedule should be imposed in connection with mediation. The party seeking mediation should file an opening brief with an opportunity for a response and reply as well. This will better prepare the mediator and, in the aggregate, lead to more successful mediations. Additionally, when a mediation fails, disputes will end up in Court. The mediation briefing will, in those instances, assist in framing the pleadings that may be filed in litigation if mediation is unsuccessful.

**S.      The Motion should not suggest that a counterparty's "affirmative choice" to seek mediation will waive a right to a jury trial.**

Paragraph 31 is ambiguous and suggests that, if a counterparty affirmatively chooses mediation, that party may waive a valid jury trial right. The Debtors cite no case law supporting such a waiver theory. The Order should be clarified so that the exercise of alternative dispute resolution procedures has no impact on a counterparty's right to a trial by jury.

**T.      The Proposed Order contains unnecessary "Findings" that should be eliminated.**

Page 1 of the proposed Order contains numerous factual findings by the Court. The factual findings influence the overall tenor of a settlement effort in an unhelpful

manner.  For example, it will be significant to counterparties if the Court finds that "substantial value may be recovered for the estates of Debtors."  The findings are also unnecessary to grant the relief requested in the Motion.  Finally, and significantly, the Debtors have put forward no evidence upon which the Court can find that which the Debtors are asking it to find.  Because these findings are unnecessary, unhelpful, and lack a proper evidentiary basis, the Findings section of the proposed Order should be struck.

## CONCLUSION

The Motion should therefore be qualified, limited, or modified as set forth above to protect the interests of counterparties.

Dated: July 31, 2009                              /s/ Martin G. Bunin
                                                  ALSTON & BIRD LLP
                                                  Martin G. Bunin, Esq.
                                                  90 Park Avenue
                                                  New York, N.Y. 10016
                                                  Telephone: (212) 210-9400
                                                  Facsimile: (212) 210-9444

                                                  and

                                                  James C. Grant, Esq.
                                                  William S. Sugden, Esq.
                                                  1201 West Peachtree Street
                                                  Atlanta, Georgia 30309
                                                  Telephone: (404) 881-7000
                                                  Fax: (404) 881-7777

                                                  *Counsel to Consolidated Container Company LLC*