MORITT HOCK HAMROFF &
HOROWITZ LLP
400 Garden City Plaza
Garden City, NY  11530
(516) 873-2000
Leslie Ann Berkoff
lberkoff@moritthock.com
Theresa A. Driscoll
tdriscoll@moritthock.com

Co-Counsel to The Hotchkiss School

WIGGIN AND DANA LLP
185 Asylum Street
Hartford, CT 06103-3402
(860) 297-3715
Sharyn B. Zuch
szuch@wiggin.com
(*Admitted Pro Hac Vice*)

Co-Counsel to The Hotchkiss School

Hearing Date: August 5, 2009 at 10:00 a.m.
Obj. Deadline: July 31, 2009 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                                :
In re:                                                          :    Chapter 11
                                                                :
LEHMAN BROTHERS HOLDINGS, et al.,   :    Case No. 08-13555 (JPM)
                                                                :
                            Debtors.                        :    (Jointly Administered)
---------------------------------------------------------------x

**OBJECTION OF THE HOTCHKISS SCHOOL TO DEBTORS'
MOTION PURSUANT TO SECTION 105(A) OF THE
BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR
AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE
RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF
<u>DEBTORS UNDER DERIVATIVE CONTRACTS</u>**

The Hotchkiss School ("<u>Hotchkiss</u>"), by and through its undersigned counsel, hereby

submits this objection (the "<u>Objection</u>") to the Debtors' Motion Pursuant to Section 105(a) of the

Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute

Resolution Procedures ("ADR") for Affirmative Claims of the Debtors Under Derivative Contracts [Docket No. 4453] (the "Motion").[1] In support of its Objection, Hotchkiss respectfully states as follows:

## PRELIMINARY STATEMENT

1. Hotchkiss does not know whether or not the Debtors contend that it was a party to a Derivative Contract with Recovery Potential, but it files this Objection in an abundance of caution in the event that the Debtors will contend that the terminated Derivative Contract to which Hotchkiss was a counterparty should be subject to the onerous ADR procedures which the Debtor seeks the Court's approval to implement. The Motion, if approved, would unfairly deprive counterparties to the Derivatives Contracts with Recovery Potential of the benefit of their bargains that they otherwise are entitled to based on the terms of the Derivatives Contracts and the Bankruptcy Code. These contract rights are expressly preserved in the "safe harbor" provisions of the Bankruptcy Code which Congress enacted for the stated purpose of protecting counterparties such as Hotchkiss.[2] Accordingly, and as more fully set for the below, the Motion should be denied.

## RELEVANT BACKGROUND

2. Hotchkiss is an independent boarding school located in Lakeville, Connecticut.

3. Hotchkiss and Lehman Brothers Financial Products Inc. ("Lehman Financial"), a debtor in these jointly administered chapter 11 cases, were parties to that an International Swaps and Derivatives Association ("ISDA") Master Agreement dated as of December 14, 2001 and related Schedule, Confirmation, Exhibits and Annexes (collectively, the "Hotchkiss Swap").

---

[1] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Motion.

[2] The "safe harbor" provisions can be found in Sections 362(b)(6), (7), (17) and 555, 556, 559, 560 and 561 of the Bankruptcy Code (collectively, the "Safe Harbor Provisions").

2

4.    Lehman Financial filed a voluntary petition under chapter 11 on October 5, 2008 (the "Lehman Financial Bankruptcy").  The Lehman Financial Bankruptcy constituted an Event of Default which entitled Hotchkiss to declare a default under the terms of the Hotchkiss Swap and to liquidate, terminate or accelerate in accordance with the terms of the Hotchkiss Swap and pursuant to Section 560 of the Bankruptcy Code, and to exercise its rights to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with the Hotchkiss Swap, pursuant to Section 362 (b)(17) of the Bankruptcy Code.

5.    On December 8, 2008, Hotchkiss delivered a Notice of Termination of ISDA Swap to Lehman Financial in which it designated December 8, 2008 as the Early Termination Date for all Transactions under the Hotchkiss Swap.

6.    On December 15, 2008, Lehman Financial's counsel acknowledged the "valid termination" of the Hotchkiss Swap in an email to Hotchkiss' counsel.[3]

7.    On December 18, 2008, Hotchkiss delivered a Statement of Amount Payable Upon Early Termination Under ISDA Master Agreement dated as of December 14, 2001 to Lehman Financial, and wired a payment of the termination amount of $5,367,616.23, due under the terms of the Hotchkiss Swap, to Lehman Financial on that date.

**OBJECTION**

**A.    The Motion Seeks to Rewrite the Hotchkiss Swap in Violation of the Safe Harbor Provisions Contained in the Bankruptcy Code and Hotchkiss' Due Process Rights.**

---

[3]    Hotchkiss previously objected to the Debtors' Motion for Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts [Docket No. 1498] (the "Derivatives Procedures Motion").  Between the time of the filing of this objection and just prior to the hearing on the Debtors' motion, Hotchkiss properly terminated the Hotchkiss Swap and, based on the Debtors' representations to Hotchkiss that the Hotchkiss Swap was properly terminated, Hotchkiss withdrew its objection to the Derivatives Procedures Motion.

8. The procedures proposed by the Motion seek to give the Debtors enormously unfair and one-sided ADR remedies with respect to the Derivatives Contracts to which their counterparties never agreed. There are no ADR procedures in the Hotchkiss Swap. Giving the Debtors the unilateral right to initiate mandatory ADR for a dispute under the Hotchkiss Swap, in the <u>absence</u> of an adversary proceeding which would be subject to the protections afforded by the Federal Rules of Bankruptcy Procedure (including Rule 9011), is nothing less than a deprivation of Hotchkiss' most fundamental due process rights. *See*, *e.g.*, *Mullane v. Central Hanover Bank & Trust Co.*, *et al.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (internal citations omitted).

9. Indeed, the Debtors' stated intention is to "streamline" their asset recovery efforts with respect to the Derivatives Contracts with Recovery Potential, so that they can avoid litigation altogether and "capture the value" of these contracts by coercing counterparties to settle. *See* Motion, ¶ 12. The proposed ADR Procedures would entirely replace the termination provisions of the Hotchkiss Swap, which give Hotchkiss, as the non-defaulting party, the exclusive right to establish the amount payable to the defaulting party upon termination. Instead, in contravention of the terms of the Hotchkiss Swap, which does not provide for any form of mediation regarding a dispute over the calculation and payment of a termination payment, Hotchkiss is now faced with the possibility of a burdensome, costly and time-consuming ADR protocol, which requires out-of-state travel and has no opt-out provision.

10. Additionally, the Debtors seek an arsenal of Draconian sanctions, which, in the complete absence of any adversary proceeding, could result in a forfeiture of the entire amount in

4

controversy, attorneys' fees and mediation costs through the entry of a sanctions award if it is determined that a counterparty "is not cooperating" with the mandatory ADR process. *See* Motion, ¶ 29.

11. The Debtors also seek to give the mediator "the discretion to certify specific legal issues to the Court for decision". *See* Motion, ¶ 25. This power would further erode Hotchkiss' due process rights, as it would allow legal issues to be determined against it in a Star Chamber type proceeding, without ever giving Hotchkiss the benefit of having those legal issues appropriately framed in pleadings which it could challenge in court. This authority to certify legal questions would conflict with the confidentiality requirements of paragraph 5.0 of the Court's General Order #M-143 and is inconsistent with the Debtors' statement that the proposed procedures would preserve confidentiality throughout the ADR process. *See* Motion, ¶¶ 32 and 33. The proposed ADR procedures, if approved, should not permit the mediator to certify legal issues to the Court.

12. The Hotchkiss Swap is a "swap agreement" as that term is defined in Section 101(53B) of the Bankruptcy Code. Hotchkiss is a "swap participant" as that term is defined in Section 101(53C) of the Bankruptcy Code. Section 362(b)(17) of the Bankruptcy Code provides that "the exercise by a swap participant . . . of any contractual right . . . under any security agreement or arrangement or other credit enhancement forming part of or related to any swap agreement, or of any contractual right . . . to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements" shall not be stayed by the commencement of a chapter 11 case. 11 U.S.C. § 362(b)(17).

13.  Further, Section 560 of the Bankruptcy Code provides that "[t]he exercise of any contractual right of any swap participant or financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) of this title . . . . .shall not be stayed, avoided or otherwise limited by operation of any provision of this title or by order of a court . . . in any proceeding under this title." 11 U.S.C. § 560.

14.  The express language of section 560 gives a non-debtor counterparty an unfettered right to terminate a swap agreement upon the bankruptcy filing of its counterparty. Congress did not impose any timeframe or other limitations (such as mandatory ADR requirements) on non-debtor counterparties to exercise their termination rights under derivatives contracts. Indeed, no such limitations exist. *See*, *e.g.*, *In re Mirant Corp.*, 314 B.R. B.R. 347, 352 (Bankr. N.D. Tex. 2004) ("Congress, in enacting Section 560 and related provisions, did not intend that its will would be frustrated by the courts creating barriers to the exercise by a debtor's contract parties of the rights so given to them."). Indeed, the Safe Harbor Provisions and the enactment of Section 560 of the Bankruptcy Code reflect a Congressional determination that swap agreement termination rights should be respected in order to "ensure that the swap and forward contract financial markets are not destabilized by uncertainties regarding the treatment of their financial instruments under the Bankruptcy Code." H.R. Rep. 101-484, at 1 (1990), reprinted in 1990 U.S.C.C.A.N. 223.

15.  Through the Motion, the Debtors seek to impermissibly and inequitably impose costs, burdens and restrictions upon Derivatives Counterparties' contractual and Code-created rights. This result would turn the Safe Harbor Provisions on their head and should not be countenanced.

6

**B.    The Procedures Proposed in the Motion Are Burdensome, Unfair and Unprecedented**

16.    The ADR procedures set forth in the Motion, if approved, would enable the Debtors to force Hotchkiss to participate in a mandatory one-hour Settlement Conference on five (5) calendar days notice. *See* Motion, ¶ 21. Since Debtors could request such a conference "[a]t anytime after receipt of a Derivatives ADR Package," Hotchkiss could be forced into a mediation session well before it had the twenty (20) calendar days proposed in the Motion for it to analyze the package and prepare its Statement of Position. Derivatives Counterparties should be given at least thirty (30) days to respond to the Derivatives ADR Packages, and they should not be subject to any requests for Settlement Conferences until after they have submitted their Statements of Position.

17.    The proposed ADR procedures also contain unreasonably short response timeframes with respect to scheduling. For instance, the procedures would require Hotchkiss to respond to a Notice of Settlement Conference on two (2) calendar days notice. *See* Motion, ¶ 21. On the Friday before Labor Day, the Debtors could serve Hotchkiss with a Derivatives ADR Package, immediately followed by a Notice of Settlement Conference. In the Notice of Settlement Conference, the Debtors could propose that the Settlement Conference be scheduled on the Tuesday after Labor Day, which is within five (5) days of the notice, and permissible under the proposed procedures. *Id*. Hotchkiss would have to respond to the Notice of Settlement Conference over the holiday weekend, or risk the imposition of sanctions for failure to cooperate, and the latest date it could seek to have the Settlement Conference scheduled would be on the following Sunday, which is five (5) calendar days from the date originally proposed by the Debtors. *Id*. These timeframes are too short and unfair because they do not allow the counterparties a sufficient amount of time to make reasonable arrangements and consult with

7

counsel before responding. Each deadline should be substantially lengthened, to at a minimum, fifteen (15) business days, if the proposed ADR procedures are to be approved.

18.     Since the proposed ADR procedures provide insufficient time for counterparties such as Hotchkiss to reasonably respond to requests for Settlement Conferences, Hotchkiss would find itself automatically forced into the costly, time-consuming Mediation Stage if it could not comply with the incredibly fast pace of the Derivative Notice/Response Stage. This would require a Hotchkiss "business principal" (a term not defined in the Motion) to travel 2 ½ hours in each direction to attend an in person mediation session in New York, New York, effectively consuming at least an entire business day. *See* Motion, ¶¶ 26 and 28. The proposed ADR procedures, if approved, should allow for telephonic participation by a "business principal" during the Mediation Stage for counterparties such as Hotchkiss, for whom travel to New York City would be burdensome and disruptive.

19.     The Motion is not clear about who will pay the mediator's fee in instances where no sanctions are imposed. In paragraph 30, the Debtors state that "the party requesting mediation will be responsible for the fees and expenses of the mediator." However, in paragraph 23, they indicate that if the dispute is not resolved through the Settlement Conference then "such dispute will proceed" to mediation automatically, without any party requesting it. If the proposed ADR procedures are approved, the Order should make it clear that the Debtors pay the mediator's fees for all mediations.

20.     Notably, neither of the mediation orders cited by the Debtors in support of the Motion (*i.e.* in the *Enron* and *Ames* cases) addressed or approved the adoption of mediation procedures regarding disputes over derivatives contracts which were not the subject of adversary proceedings already before this Court. In *Ames*, the Bankruptcy Court approved mediation

procedures solely with respect to "pending" preference actions. *See In re Ames Department Stores, Inc.*, *et al.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007), Order Establishing Mediation Procedures Governing Certain Adversary Proceedings Brought Pursuant to 11 U.S.C. § 547 [Docket No. 3195]. In *Enron*, the Bankruptcy Court approved mediation procedures for pending adversary proceedings as well as for <u>future adversary proceedings</u>. *See In re Enron Corp.*, et al., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. March 4, 2003), Order Governing Mediation in Trading Cases [Docket No. 9533] (ordering that "future Trading Cases may be commenced by filing adversary complaints by or against the Debtors" and "each such Trading Case shall be deemed referred to Judge Gropper for mediation as provided for in this Order"). Neither of these mediation procedures orders compelled "potential" defendants to mediation. Rather, in each case, there was formal litigation commenced in the first instance (in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules of Bankruptcy Procedure) that was then the subject of the Court-ordered mediation procedures.

21. Importantly, the Debtors have not cited to a single instance where this Court has initiated mandatory ADR against nonparties to any pending litigation. Thus, by the Motion, the Debtors are not only seeking an Order in contravention of the express language of the Bankruptcy Code Safe Harbor Provisions, but they are also seeking relief that appears to be unprecedented.

## **RESERVATION OF RIGHTS**

22. Hotchkiss reserves the right (a) to amend, supplement, or otherwise modify this Objection as necessary or proper; (b) to call all necessary or proper witnesses to testify in support of this Objection; and (c) to raise such other and further objections to any proposed ADR procedures involving Hotchkiss and the termination of the Hotchkiss Swap.

## **CONCLUSION**

WHEREFORE, Hotchkiss respectfully requests that the Court enter an Order denying the relief sought in the Motion and granting such other and further relief as may be appropriate and just.

Dated: July 31, 2009

Respectfully submitted,

MORITT HOCK HAMROFF & HOROWITZ LLP

By: __/s/ Leslie A. Berkoff
      Leslie A. Berkoff

400 Garden City Plaza
Garden City, New York  11530
(516) 873-2000
lberkoff@moritthock.com

Co-Counsel to The Hotchkiss School

-and-

WIGGIN AND DANA LLP
185 Asylum Street
Hartford, CT 06103-3402
(860) 297-3715
Sharyn B. Zuch
szuch@wiggin.com

Co-Counsel to The Hotchkiss School

(*Admitted Pro Hac Vice*)

F:\Hotchkiss School\Lehman Bros\Docs\Objection to ADR Procedures Motionv4.doc