**Objection Deadline: July 31, 2009 at 4:00 p.m. (prevailing Eastern Time)**
**Hearing Date and Time: August 5, 2009 at 10:00 a.m. (prevailing Eastern Time)**

LOVELLS LLP
Matthew P. Morris
Robin E. Keller
590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

*Attorneys for Carlton Communications Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re:

LEHMAN BROTHERS HOLDING INC., et. al.,

                      Debtors.

------------------------------------------------------------------------X

Chapter 11

Case No. 08-13555 (jmp)

(Jointly Administered)

# LIMITED OBJECTION OF CARLTON COMMUNICATIONS LIMITED TO DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS

Carlton Communications Limited (formerly, Carlton Communications plc) ("Carlton"), by and through its undersigned counsel, hereby submits this limited objection to the Debtors'[1] Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts (the "Motion"), and respectfully states as follows:[2]

---

[1] Unless otherwise noted, all capitalized terms have the meaning ascribed in the Motion.

[2] Carlton is a company organized under the laws of England and Wales. Carlton has entered its limited appearance in the Debtors' chapter 11 cases (collectively, the "Cases") solely for the purpose of making a prior limited objection to the Procedures Order (defined below) and now this limited objection. By making its limited appearance in the Cases and filing this limited objection, Carlton does not submit itself or otherwise consent or acquiesce, and shall not be

**Preliminary Statement**

1. By the Motion, the Debtors request entry of an order (the "Order") pursuant to section 105(a) of the Bankruptcy Code and the Court's General Order M-143 (the "Standing Order"), authorizing the Debtors to, among other things, implement certain alternative dispute resolution procedures (the "ADR Procedures") with respect to prepetition Derivative Contracts and the affirmative claims of the Debtors for monetary recovery arising from their terminated and open prepetition Derivative Contracts, including, but not limited to, swap agreements and forward contracts ("Derivative Contracts with Recovery Potential").

2. Prior to the commencement date of the Cases, Carlton entered into a Master Agreement dated as of July 8, 2003 (as amended, the "Master Agreement"), with Lehman Brothers Special Financing Inc. ("LBSF"). Pursuant to Part 4(h) of the Schedule to the Master Agreement, the Master Agreement and the transactions entered into thereunder between LBSF and Carlton, including the Swaps (as defined below), are governed by the laws of England and Wales. Lehman Brothers Holdings Inc. ("LBHI") unconditionally guaranteed the obligations of LBSF under the Master Agreement pursuant to a Guarantee of Lehman Brothers Holdings Inc. dated as of July 8, 2003 (the "Guarantee"). LBSF and LBHI are Debtors in the Cases. There exist under the Master Agreement two terminated swap transactions, each of which was entered into on December 14, 2004, and terminated on March 2, 2009 (collectively, the "Swaps").

---

deemed to have submitted itself, consented or acquiesced, to the jurisdiction of this Court, or any other court of the United States, for any purpose other than with respect to this limited objection. Carlton does not waive any, and hereby reserves all, of its rights to object on jurisdictional grounds to the application of the ADR Procedures to it, if ordered by this Court, or any other order of this Court, or any other court resident in the United States.

3.      As a Counterparty to two Derivative Contracts, in respect of which the scheduled termination dates have occurred and which may be classified by the Debtors as Derivative Contracts with Recovery Potential[3] and thus made subject to the ADR Procedures (as may be modified and ordered by this Court), Carlton has the following objections to the relief sought in the Motion as set out below.

**Limited Objection**

A.      The Laws of England and Wales Govern

4.      By their Motion, the Debtors propose, among other things, to establish the ADR Procedures pursuant to section 105(a) of the Bankruptcy Code and the Standing Order. As noted, the Master Agreement, related credit support annex (the "Credit Support Annex") and Swaps are governed by and are to be construed in accordance with the laws of England and Wales.[4] Section 105(a) of the Bankruptcy Code does not override the provisions of the Master Agreement and Credit Support Annex, which do not require mandatory mediation on the terms set forth in the Motion, but rather provide for remedies, including dispute resolution on terms set forth in Paragraph 4 (Dispute Resolution) of the Credit Support Annex in relation to certain valuation issues. The laws of England and Wales do not have any laws or court rules or orders comparable or analogous to section 105(a) of the Bankruptcy Code or the Standing Order which would permit a debtor, over the objection of a counterparty, to ignore the bargained-for remedies and dispute resolution provisions set forth in a contract and replace them with mandatory mediation

---

[3] By filing this limited objection, Carlton does not acknowledge or concede that the Swaps are Derivative Contracts with Recovery Potential.

[4] Pursuant to Federal Rule of Civil Procedure 44.1, Carlton hereby gives notice that it is raising issues of foreign law in connection with this limited objection and requests that the Court take judicial notice of the laws of England and Wales as they relate to the matters set forth herein. Carlton will, upon the request of the Court, submit to the Court an affidavit of foreign law, or such other relevant materials or sources as may be requested or required by the Court, in order to determine the applicability of the laws of England and Wales hereto. *See Winn v. Schafer*, 499 F. Supp. 2d 390 (S.D.N.Y. 2007) (finding that court could consider opinion of English law expert to determine applicability of English law to facts of case); *Wheelings v. Seatrade Groningen, BV*, 516 F. Supp. 2d. 488 (E.D.Pa. 2007) (determining that affidavit of foreign attorney interpreting applicability of foreign law to a contract was sufficient for court to take judicial notice of foreign law).

procedures as ordered by a court of law. *See generally* Insolvency Act, 1986 (Eng.). Bankruptcy and insolvency matters are governed in England pursuant to the Insolvency Act 1986. *See id*. "International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction" which would lead to differing outcomes in the two jurisdictions. *Id*. at 1050 (citing *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 799 (1993) (upholding the principles of comity and choice-of-law analysis in connection with bankruptcy cases); *Société Nationale Industrielle Aérospatiale v. District Court,* 482 U.S. 522 (1987)).[5]

5. In light of the foregoing, the ADR Procedures must be modified to protect and preserve the rights of Derivative Counterparties whose Derivative Contracts are governed by foreign law, including the laws of England and Wales, to ensure that the ADR Procedures are not applicable to such foreign law governed contracts and related transactions.

6. To the extent the Court holds that the Master Agreement, Credit Support Annex and Swaps are not governed by and should not be construed in accordance with the laws of England and Wales, Carlton has the following objections set forth below.

    B.    <u>Standing Order is Not Applicable to Derivative Contracts not Subject to Previously Commenced Proceedings; Inconsistencies</u>

7. The Debtors' reliance on the Standing Order as authority for the creation of the ADR Procedures is misplaced. Pursuant Paragraphs 1.1 and 1.3 of the Standing Order, a bankruptcy court may only order mediation with respect to an adversary proceeding, contested matter or other dispute that has already been brought before the bankruptcy court for

---

[5] It is important to note that, even if the Court enters the proposed Order establishing the ADR Procedures, if the Debtors attempt to enforce compliance with the ADR Procedures or otherwise against a Derivative Counterparty in England, the English courts are not likely to recognize such an action. The Cross Border Insolvency Regulations 2006 do not include a power to impose foreign law, in this case section 105(a) of the Bankruptcy Code and the Standing Order, on English-law governed contracts. In addition, English courts have been reluctant to apply provisions of foreign insolvency laws in England where English law does have an analogous counterpart. *See, e.g.*, *Cambridge Gas Transportation Corpn v Official Committee of Unsecured Creditors of Navigator Holdings plc* [2006] UKPC 26 (noting that it was "doubtful whether assistance [under the common law jurisdiction of the English courts] could take the form of applying provisions of [a] foreign insolvency law which form no part of the domestic system").

adjudication. For example, Paragraph 1.1 of the Standing Order provides that a motion seeking an order assigning a matter to mediation must be filed "after filing the initial document in the matter" related to the adversary proceeding, contested matter or dispute and that such proceeding shall still be "set for the next appropriate hearing on the court docket in the normal course of setting required for such a matter." As a further indication that the Standing Order only applies with respect to matters already commenced before the bankruptcy court, Paragraph 3.4 thereof states that the mediator must file a final report regarding the mediation prior to the date fixed for hearing referred to in Paragraph 1.1 of the Standing Order and that in the event a mediation ends in an impasse, "the matter will be heard or tried <u>as scheduled</u>."

8. The Motion, however, does not seek to compel mediation only on Derivative Counterparties that have commenced, or are parties to, previously filed matters, but rather on all Derivative Counterparties. Accordingly, the ADR Procedures should be modified to exclude those Derivative Counterparties that have not commenced, or which are not parties to, previously filed adversary proceedings, contested matters or other disputes regarding their respective Derivative Contracts.

9. To the extent the Court determines that the Standing Order, and ultimately the ADR Procedures, are applicable to Derivative Counterparties that are not parties to previously filed adversary proceedings, contested matters or other disputes relating to their respective Derivative Contracts, the ADR Procedures must be modified to include provisions similar to those set forth in Paragraph 3.4 and 3.5 of the Standing Order regarding the timing of the filing of final reports, limits on the duration of the mediation and other matters.

C. <u>Party Responsible for Fees and Expenses of Mediator Must be Clarified</u>

10. The Motion provides that the party requesting mediation will be responsible for the fees and expenses of the mediator. *See* Motion at 11, Paragraph 30. However, there are numerous instances in the Motion where it is unclear which party would be considered the party

"requesting mediation" and thus responsible for paying the mediator's fees and expenses, including: (i) Paragraph 20, which provides that if the Debtors reject a counteroffer in a Derivative Counterparty's Statement of Position, the Derivatives ADR Dispute will automatically proceed to the Mediation Stage (*see* Motion at 8, Paragraph 20); (ii) Paragraph 21, which provides that if the parties are not able to agree on a date and time for a Settlement Conference, the Derivatives ADR Dispute will automatically proceed to the Mediation Stage (*see* Motion at 8, Paragraph 21); and (iii) Paragraph 23, which provides that if the parties are not able to resolve the Derivatives ADR Dispute during the Notice/Response Stage, such dispute will automatically proceed to the Mediation Stage and the parties "together will contact the mediator" to schedule the initial mediation date (*see* Motion at 9, Paragraph 23).

11.     In light of the fact that the Debtors have sole discretion to commence the mediation process by serving a Derivative Counterparty with a Derivatives ADR Package and that the mediation procedures proposed by the Debtors entail automatic mediation not contingent on a party's "request," the ADR Procedures should be modified to require the Debtors to be solely responsible for paying the fees and expenses of the mediator in each of the instances described above.

### D.     Notice of Settlement Conference and Response Must be in Writing

12.     The Motion does not expressly require that a Notice of Settlement Conference, or the required response thereto, be in writing. The ADR Procedures should be modified to require that each Notice of Settlement Conference and the required response thereto be in writing and delivered to the notice addresses set forth in the relevant Derivative Contract, or as otherwise agreed by the parties.

E.     Mediators Must be Qualified and Registered

13.     The Motion provides that "the Debtors believe that the Court should select one mediator who will hear and preside over all mediations hereunder" (*see* Motion at 9, Paragraph 23) and that if the selected mediator is unwilling or unavailable to serve, the parties will select an alternate, provided that if the parties cannot agree within a certain period of time, the Court will appoint one or more mediators (*see* Motion at 9-10, Paragraph 24).

14.     In light of the fact that the ADR Procedures will be subject to the provisions of the Standing Order, the ADR Procedures should be modified to require that any mediator chosen pursuant thereto must be qualified and registered as a mediator under Paragraph 2.0 of the Standing Order.

F.     Mediators Should Not Have Authority to Certify Legal Issues to the Court Without Consent of Parties or to Issue Binding Decisions

15.     The Motion provides that the mediator will have the "broadest possible discretion as provided under the Standing Order *including the discretion to certify legal issues to the Court for decision*." *See* Motion at 10, Paragraph 25 (emphasis added). As noted, the Motion provides that any mediations held pursuant to the Order will be subject to the Standing Order. However, the Standing Order does not give mediators the right to certify legal issues to the court for decision. To the contrary, the Standing Order contemplates a self-contained mediation process with a resort to the courts only when (i) the parties are prepared to seek court approval of their settlement (*see* Standing Order at 6, Paragraph 3.4); (ii) there is an impasse (*see* Standing Order at 6, Paragraph 3.4); or (iii) to the extent that the mediator is compelled to report non-compliance by one or both parties with the mediation (*see* Standing Order at 6, Paragraph 3.2). Moreover, the mediation order entered in In re Ames Department Stores, Inc., et al. (the "Ames Order"), on which the Debtors rely as precedent for the authority to subject Derivative Counterparties to mandatory mediation, did not give the mediators in that case the right to certify legal issues to the

- 7 -

08-13555-mg    Doc 4563    Filed 07/31/09    Entered 07/31/09 14:52:21    Main Document
Pg 8 of 12

court for decision; the mediation order entered in <u>In re Enron Corp., et al</u>. (the "<u>Enron Order</u>"), also relied on by the Debtors as precedent, only allowed the mediator to certify issues to the court with the consent of the affected parties.

16. Furthermore, what does it mean for the mediators to be able to <u>certify</u> questions to the Court <u>for decision</u>? To the extent the Motion seeks to empower the mediator to elect what issues or questions must be decided to resolve a Derivative Contract dispute, it must be flatly rejected. Such authority would extend far beyond the mediator's role in assisting the parties to reach a consensual resolution, placing the mediator in the role of a pseudo-judge with the power to determine which issues should be placed before the Court.

17. In light of the foregoing, the ADR Procedures should be modified to eliminate the right of the mediator to certify legal issues to the Court for decision unless the relevant Derivative Counterparty and the Debtors give the mediator their prior consent and the mediator takes appropriate steps to preserve confidentiality in accordance with the Standing Order and the direction of the parties.

18. In similar fashion, to the extent the Motion implies that the mediator has the authority to issue any binding decision or order, it must be denied. Mediation can only be a process whereby the parties attempt to resolve a Derivative Contract dispute and the mediator cannot have authority to issue any decision or ruling binding in any way upon a Derivative Counterparty. That power resides solely with courts of competent jurisdiction.

    G. <u>Debtors Should Not Have Sole Discretion to Add or Eliminate Mediation Locations</u>

19. The Motion provides that (i) mediation proceedings will take place in New York, New York unless otherwise agreed by the parties and the mediator and (ii) the Debtors will have sole discretion to add or eliminate locations where mediation proceedings can take place. *See* Motion at 10, Paragraph 26. In order to ensure a fair, just and predictable process, the ADR

Procedures should be modified to provide that (i) mediations must be held in the jurisdictions set forth in the governing documentation between the relevant Derivative Counterparty and the Debtors and (ii) after entry of the Order the Debtors can add, and later eliminate such additional locations, in their sole discretion, provided that the Debtors cannot eliminate New York, New York as the default mediation location without first obtaining an order of the Court and New York, New York and any such additional locations shall not override any contractually agreed upon mediation jurisdictions set forth in the governing documentation between the relevant Derivative Counterparty and the Debtors.

### H. The Creditors' Committee Has No Absolute Right to Attend and Participate in Mediations and Should be Excluded

20. The Motion seeks to grant the Creditors' Committee the right to "attend and participate in all mediations." *See* Motion at 10, Paragraph 28. However, the Creditors' Committee has no statutory or judicially-recognized right to attend and participate in mediations held pursuant to the Order. First, section 1109(b) of the Bankruptcy Code limits the participation of parties in interest, including a creditors' committee, to raising and being heard "on any issue in a case." A confidential mediation between a Derivative Counterparty and the Debtors, which is a form of moderated or facilitated negotiation, is not an "issue in a case." Further, the Standing Order does not require or provide for a creditors' committee to attend or participate in mediations held pursuant thereto. Similarly, the Ames Order, cited as precedent by the Debtors in the Motion, did not give the creditors' committee in that case the right to attend and participate in mediations. And the Enron Order, also cited as precedent by the Debtors in the Motion, only

permitted the creditors' committee in that case to participate in mediations with the consent of the mediator and those mediations were all ordered to resolve adversary proceedings commenced in the Enron case -- proceedings in which the Enron creditors' committee already had the right to appear and be heard under section 1109(b) of the Bankruptcy Code.

21.    The Creditors' Committee does not need to attend and participate in mediations conducted pursuant to the Order in order to be heard.  In accordance with section 1109(b) of the Bankruptcy Code, after a proposed settlement is reached between the Derivative Counterparty and the Debtors, the Creditors' Committee can appear and be heard at any hearing before this Court to consider approval of such settlement; such a hearing is required pursuant to Paragraph 3.4 of the Standing Order.  As such, excluding the Creditors' Committee from the mediation process contemplated by the Motion will not prejudice its rights and is consistent with applicable provisions of the Bankruptcy Code and with the Standing Order.

22.    Moreover, including the Creditors' Committee in all such mediations will add delay and expense, adversely affect the confidential nature of the mediations, frustrate the Debtors' intended purpose for seeking to implement the ADR Procedures (*i.e.*, to "reduce unnecessary administrative expenses, maximize the value of the Debtors' claims under the Derivative Contracts, and promot[e] judicial efficiency by consensually resolving these claims") and reduce the likelihood of the parties reaching a timely and successful conclusion with the assistance of the mediator.  Therefore, the ADR Procedures should be modified to eliminate the right of the Creditors' Committee to attend and participate in mediations conducted pursuant to the Order, subject to agreement by the relevant Derivative Counterparty, the Debtors and the mediator to permit the Creditors' Committee to attend and participate.

### I. Mediation Order Must Respect Existing Objections to Previously Entered Procedures Orders

23. The Order provides that the parties may, at any time during the mediation process, settle a Derivatives ADR Dispute provided that any such settlement (i) complies with the order entered by the Court on December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket No. 2667] (the "Procedures Order"), or (ii) complies with certain other orders entered in the Cases or (iii) such settlement is approved by specific order of the Court.

24. This requirement, however, fails to recognize that Carlton and a number of other parties have standing objections to the Procedures Order, the hearing on which is currently not scheduled until September 16, 2009 (which hearing has already been adjourned by the Debtors multiple times and may be adjourned again). The ADR Procedures should not be used, even if unintentionally, as a way to override the standing objections of Carlton and other parties to the Procedures Order. Accordingly, the ADR Procedures should be revised to clarify that any party which has a standing objection to the Procedures Order is not required to have a settlement it has reached with the Debtors comply with the Procedures Order, but is only required to seek approval with the Debtors of a specific order of the Court approving such settlement.

### Reservation of Rights

Carlton reserves any and all applicable rights at law and/or equity, including the right to amend or supplement this limited objection and to join in the objection of any other Derivative Counterparty or other party to the Motion.

**Relief Requested**

Carlton respectfully requests that the Court (i) deny approval of the ADR Procedures with respect to Derivative Contracts governed by the laws of England and Wales, unless the consent of the Derivative Counterparty is obtained, (ii) require the Debtors to modify the ADR Procedures to address the above objections and to otherwise clarify the proposed ADR Procedures as set forth herein and (iii) grant such other and further relief as may be just and proper.

July 31, 2009
New York, New York

Lovells LLP
By: /s/ *Matthew P. Morris*

Matthew P. Morris
Robin E. Keller
590 Madison Avenue
New York, NY 10022
Telephone: 212-909-0600
Facsimile: 212-909-0660

*Attorneys for Carlton Communications Limited*