08-13555-mg    Doc 4566    Filed 07/31/09    Entered 07/31/09 14:59:47    Main Document
Pg 1 of 9

William J.F. Roll, III
Fredric Sosnick
Daniel H.R. Laguardia
Ned S. Schodek
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Attorneys for Bank of America, N.A.,
Merrill Lynch & Co., Inc. and Their
Respective Affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
:
In re:                                              :    Chapter 11
:
**LEHMAN BROTHERS HOLDINGS INC., et al.,**          :    Case No. 08 – 13555 (JMP)
:
Debtors.                       :    (Jointly Administered)
:
:
---------------------------------------------------------------x

**LIMITED OBJECTION OF BANK OF AMERICA, N.A., MERRILL
LYNCH & CO., INC. AND THEIR RESPECTIVE AFFILIATES TO THE
DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR
AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE
RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF
<u>DEBTORS UNDER DERIVATIVE CONTRACTS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Bank of America, N.A., Merrill Lynch & Co., Inc. and their respective affiliates

(collectively, "<u>Bank of America</u>") hereby submit this limited objection (this "<u>Limited

Objection</u>") to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and

General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures

for Affirmative Claims of Debtors under Derivative Contracts (Docket No. 4453) (the "ADR Motion"),[1] and in support thereof state as follows:

## Preliminary Statement

1. By the ADR Motion, Lehman Brothers Holdings, Inc. and its affiliated debtors in the above-captioned cases (together, the "Debtors") seek, among other things, authority to implement alternative dispute resolution procedures for affirmative claims of the Debtors arising under derivative contracts (the "Derivatives ADR Procedures"). As a general matter, Bank of America does not object to the establishment of alternative dispute resolution procedures to resolve claims based on derivatives contracts in a cost-effective manner. Bank of America does object, however, to the Derivatives ADR Procedures, as proposed, because they give the Debtors an inequitable advantage in the resolution, settlement, and mediation of claims and are unclear, ambiguous, and overbroad. Accordingly, Bank of America respectfully submits that the ADR Motion should be denied or, in the alternative, that the proposed Derivatives ADR Procedures should be modified to address the concerns raised in this Limited Objection.

## Background

2. Beginning on September 15, 2008 and periodically thereafter, the Debtors commenced before this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the proposed form of order granting the ADR Motion (the "ADR Order").

2

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 (as amended, "SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4. On July 20, 2009, the Debtors filed the ADR Motion, seeking to establish the Derivatives ADR Procedures. Bank of America is a creditor of the Debtors and, among other things, has claims against the Debtors arising out of derivative contracts with the Debtors.

## Argument

### I. The ADR Motion Should be Denied Because the Proposed Derivatives ADR Procedures are Inequitable

5. The proposed Derivatives ADR Procedures create informational and other imbalances that would give the Debtors an inequitable advantage in the litigation, settlement, and mediation of claims. For example:

- The Entire Derivatives Trade Book Should be Subject to the Derivatives ADR Procedures: The proposed Derivatives ADR Procedures appear to allow the Debtors to force mediation of certain of the claims they press against a Derivative Counterparty in a vacuum and without consideration of the other derivative claims or other claims that may exist between the parties. The agreements governing derivative transactions and the resulting claims often provide for netting and setoff, and the Bankruptcy Code makes special allowance for this. Furthermore, many Derivative Counterparties may understandably only be willing to enter into a global claims settlement. Consequently, in order for the Derivatives ADR Procedures to have meaningful potential to settle claims in a cost effective manner, and thus promote judicial efficiency, the entire derivatives trade book between the applicable Debtor and the applicable Derivative Counterparty should be subject to the Derivatives ADR Procedures.

- The Ability to Initiate the Derivatives ADR Procedures Should be Bilateral: The proposed Derivatives ADR Procedures grant only the Debtors the right to initiate mediation and determine which Derivative Contracts would be subject to the Derivatives ADR Procedures. See ADR Order at p. 5. The ability to initiate the Derivatives ADR Procedures should be bilateral, allowing a Derivative Counterparty the same ability as the Debtors to invoke the Derivatives ADR Procedures and initiate mediation of its claims.

- <u>The Debtors Should be Required to Submit the Same Information to Derivative Counterparties that They Have Required Creditors to Provide in Connection with the Bar Date</u>: To prevent inequitable informational imbalances and create a meaningful framework for global settlement negotiations and mediation, Bank of America submits that the Debtors should be required to include, as part of the Derivatives ADR Package, the same information required by the Debtors' Derivative Questionnaire (as defined in the Order Pursuant to Sections 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Docket No. 4271) (the "<u>Bar Date Order</u>")). The Debtors have stated that this information is necessary to properly reconcile and value derivatives claims and that "[i]f requested, we would be able to pull this information for a defaulting party in a matter of hours." Declaration of Gary H. Mandelblatt in Support of Debtors' Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form (Docket No. 4113) at p. 12. This information is equally essential for Derivative Counterparties and, apparently, not burdensome to the Debtors. As a result, the Debtors should provide this information to the Derivative Counterparties.

- <u>The Derivatives ADR Procedures Should Not Be Used to Circumvent the Timelines Established by the Bar Date Order</u>: The Bar Date Order was heavily negotiated among parties in interest and the Debtors and, among other things, establishes September 22, 2009 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for all creditors to file proofs of claims against the Debtors and October 22, 2009 at 5:00 p.m. (prevailing Eastern Time) for creditors to complete Derivative Questionnaires. Bar Date Order at p. 7. The proposed Derivatives ADR Procedures, however, could inequitably force Derivative Counterparties to engage in settlement and mediation processes before the bar date and deadline to submit a Derivative Questionnaire. For example, if the ADR Motion were granted on August 5, 2009 (the date set for the hearing on the ADR Motion) and Derivatives ADR Packages were mailed on that date, the affected Derivative Counterparties would only have until August 25, 2009, in which to respond. Bank of America submits that this is an unfair abrogation of the negotiated schedule, and any Derivatives ADR Procedures should not take effect until October 23, 2009.

- <u>Request for Initial Settlement Conference</u>: The proposed Derivatives ADR Procedures state that "a Debtor or Derivative Counterparty may request an initial telephonic settlement conference by written request, to be held within five (5) calendar days. Within two (2) calendar days of receipt of such a request, the other parties must respond." ADR Order at p. 7. Bank of America submits that these timeframes should be enlarged. It is inequitable and unrealistic, for example, to require a party who receives a request for a settlement conference on Friday to have to reply to that request by Sunday.

4

- Mediators Should be Selected Pursuant to the Terms of the Standing Order: The Debtors submit that they "believe that the Court should select one mediator who will hear and preside over all mediations hereunder." ADR Motion at ¶ 23. Bank of America respectfully submits that mediators should be selected pursuant to the terms of the General Order M-143 (the "Standing Order"). Having one mediator could prejudice the Derivative Counterparties in that the Debtors would gain a level of familiarity with that mediator which the Derivative Counterparties would not have. In any event, the use of a single mediator is impractical and would delay the process. The Debtors state that they believe they are party to over 900,000 Derivative Contracts and there are 250 Derivative Counterparties – "which number will surely increase" – that would be subject to the proposed Derivatives ADR Procedures. Id. at ¶¶ 9, 13. It could take years for a single mediator to mediate all such claims.

- Derivatives ADR Procedures Should not Waive any Parties' Substantive Rights: It is inequitable that participation in the Derivatives ADR Procedures would cause a party to waive any substantive right they may otherwise be entitled to under bankruptcy and non-bankruptcy law. Bank of America objects to the proposed order to the extent that any such waiver is implied (for example, through "certification" procedures, timing issues or the right to a jury trial, if any).

II. **The Mediator Should Not Have the Ability to Certify Specific Legal Issues to this Court for Decision**

6. The proposed Derivatives ADR Procedures provide that "[t]he mediator shall have the broadest possible discretion consistent with the Standing Order . . . including the discretion to certify specific legal issues to the court for decision." ADR Order at p. 8. Nothing in the Standing Order, however, authorizes a mediator "to certify specific legal issues to the court for decision."

7. In fact, inclusion of such a provision in the Derivatives ADR Procedures would be antithetical to the Standing Order and inconsistent with the nonbinding and confidential nature of mediation. The Standing Order states that "no party shall be bound by any statement made or action taken during the mediation." Standing Order at ¶ 3.4; see also In re Interstate Cigar Co., Inc., 240 B.R. 816 (Bankr. E.D.N.Y. 1999) (stating "mediation . . . is not binding on the parties or on this Court"). By allowing the mediator the "broadest possible

5

discretion" to certify legal issues to this Court, the proposed Derivatives ADR Procedures would vest the mediator with an improper ability to bind the parties and potentially other parties in interest by court order.

8.    In addition, the Standing Order states that "[a]ny statements made by the mediator, by the parties or by others during the mediation process shall not be divulged by any of the participants in the mediation (or their agents) or by the mediator to the court or to any third party." Standing Order at ¶ 5.1. It is unclear how a mediator could certify legal issues to this Court consistent with that requirement. Further, without the expectation of confidentiality, settlement and mediation negotiations are unlikely to be productive. For the foregoing reasons, the provision that "[t]he mediator shall have the broadest possible discretion consistent with the Standing Order . . . including the discretion to certify specific legal issues to the court for decision" should be stricken from the Derivatives ADR Procedures.

### III. The ADR Motion Should be Denied Because the Proposed Derivatives ADR Procedures are Unclear, Ambiguous, and Overbroad

9.    In order for any alternative dispute resolution procedures to actually reduce costs and promote judicial efficiency, they need to be clear and unambiguous. Otherwise, they can have just the opposite effect – giving rise to new litigable issues that require the attention of this Court and the Debtors' countless professionals. Unfortunately, as drafted, the proposed Derivatives ADR Procedures are far from clear and are fraught with ambiguity. For example:

- Derivative Contracts with Recovery Potential: The definition of "Derivative Contracts with Recovery Potential," to which the proposed Derivatives ADR Procedures would apply, is unclear, ambiguous and overbroad. The ADR Order defines "Derivative Contracts with Recovery Potential" simply as "the numerous open and terminated derivatives contracts, including swap agreements and forward contracts . . . [that] exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related

6

parties." ADR Order at p. 1. "Derivative Contract" is not a defined term,[2] and Derivative Contracts with Recovery Potential is defined according to the Debtors' assertion. As a result, the scope of the proposed Derivatives ADR Procedures is overly expansive and ill-defined to the inequitable advantage of the Debtors who have the unilateral ability under the proposed Derivatives ADR Procedures to subject counterparties to the procedures through the service of a Derivatives ADR Package.[3] See id. at p. 3. "Derivative Contract" should be defined as in the Bar Date Order previously negotiated.

- Derivative Counterparties: The definition of the term "Derivative Counterparties," to which the proposed Derivatives ADR Procedures would apply, is similarly unclear, ambiguous and overbroad. The ADR Order defines "Derivative Counterparties" as counterparties to "Derivative Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivative Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract." Id. at p. 2. The Debtors have articulated no basis on which an affiliate or other person or entity that is not party to a Derivative Contract with Recovery Potential could have a duty in relation to a Derivative Contract with Recovery Potential and consequently should be forced to participate in the Derivatives ADR Procedures. Further, the Debtors have again tailored the scope of the proposed Derivatives ADR Procedures in an overly expansive and ill-defined way to their advantage given that they have the unilateral ability under the proposed Derivatives ADR Procedures to subject counterparties to the procedures through the service of a Derivatives ADR Package. See id. at p. 3. "Derivative Counterparties" should be defined as parties to Derivative Contracts.

- Notice Parties: The proposed Derivatives ADR Procedures contemplate that service or notice by the Debtors under the procedures is deemed adequate if sent to "the Derivatives Counterparty's counsel, legal guardian, estate representative, *or* other representative." Id. at p. 3 (emphasis added). It is unclear whether the Debtors intend to provide service or notice to one or more of these persons or entities in lieu of providing it to any notice parties specifically identified in the Derivative Contract with Recovery Potential or any counsel who filed a notice of

---

[2] Paragraph 9 of the ADR Motion, defines "Derivative Contracts." ADR Motion at ¶ 9. The ADR Order does not, however, incorporate defined terms from the ADR Motion. More importantly, the description in the ADR Motion of "Derivatives Contracts" as the "more than 900,000 prepetition derivative contracts [that the Debtors are party to]," id. at ¶ 9 is vague and imprecise.

[3] In this regard, Bank of America notes that the definition of the term "Derivative Contracts" was a heavily negotiated aspect of the Bar Date Order and is much more precisely defined in that order. See Bar Date Order at p. 6. The definition of Derivatives Contracts with Recovery Potential should be no less clear in the context of the Derivatives ADR Procedures, which potentially affect hundreds of derivative counterparties with billions of dollars at stake.

7

appearance on behalf of the Derivative Counterparty in these cases. Bank of America respectfully submits that any notice or service by the Debtors under the Derivatives ADR Procedures should be provided to both of the foregoing.

- <u>Debtors' Rights as to Proceedings Previously or Hereafter Commenced by Derivative Counterparties</u>: Although the proposed Derivatives ADR Procedures provide that the Debtors reserve the right to remove actions commenced in another forum to this Court, they are silent as to the effect of the Derivatives ADR Procedures on adversary proceedings pending before this Court. <u>Id</u>. at p. 11. Bank of America respectfully submits that the Derivatives ADR Procedures should clarify that claims that are the subject of a pending adversary proceedings will not be subject to the procedures.

- <u>Fees and Expenses</u>: The proposed Derivatives ADR Procedures do not clearly identify the party responsible for paying the mediator's fees and are likewise unclear as to whether the fee and expense provisions contained in the procedures are meant to override any express contractual provisions in the applicable Derivative Contract with Recovery Potential. The ADR Order states that "each party to the Mediation shall bear its own counsel fees and other costs of the Mediation; provided, however, that the party who requests the Meditation shall pay reasonable fees and costs charged by the Mediator." <u>Id</u>. at p. 12. The proposed Derivatives ADR Procedures appear to be mandatory so it is unclear which party is the "party requesting the mediation." Bank of America submits that the Debtors should bear the costs of mediation given that they are imposing it on parties in interest in these cases. Further, it should be clarified that this provision of the Derivatives ADR Procedures does not override any express contractual provisions in any affected Derivative Contract.[4]

Unless and until the proposed Derivatives ADR Procedures are substantially revised so that all parties in interest can clearly understand their terms, scope and applicability, the ADR Motion should be denied.

---

[4] For example, pursuant to Section 11 of the 1992 International Swaps and Derivatives Association form agreement (the "<u>ISDA Master Agreement</u>"), under which Bank of America is a counterparty to certain derivative contracts with the Debtors, a defaulting party to the agreement "will, on demand, indemnify and hold harmless the other party for and against all reasonable out-of-pocket expenses, including legal fees . . . incurred by such other party by reason of the enforcement and protection of its rights under" the agreement. ISDA Master Agreement at ¶ 11. Commencing an insolvency proceeding is an event of default under the ISDA Master Agreement. ISDA Master Agreement at ¶ 5. Therefore, pursuant to the plain language of the ISDA Master Agreement, non-defaulting counterparties are entitled to reasonable out-of-pocket expenses from the Debtors in protecting their rights under the ISDA Master Agreement.

Bank of America thus respectfully requests that the ADR Motion be denied, or, in the alternative, that the proposed Derivatives ADR Procedures be modified consistent with this Limited Objection.

Dated: New York, New York
      July 31, 2009

SHEARMAN & STERLING LLP

By: _____
William J.F. Roll, III
Fredric Sosnick
Daniel H.R. Laguardia
Ned S. Schodek
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Attorneys for Bank of America, N.A., Merrill Lynch & Co., Inc., and their respective affiliates

NYDOCS03/890138