**Objection Date and Time: July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

Thomas J. Moloney
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for D. E. Shaw Composite Portfolios, L.L.C., D. E.*
*Shaw Oculus Portfolios, L.L.C., and their affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Lehman Brothers Holdings Inc., <u>et al.</u> | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION TO DEBTORS' MOTION PURSUANT**
**TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL**
**ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE**
**DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE**
**CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS**

D. E. Shaw Composite Portfolios, L.L.C., D. E. Shaw Oculus Portfolios, L.L.C., and their

affiliates (together, the "Objectors"), by their undersigned attorneys, object on a limited basis to

Debtors' Motion Pursuant to Section 105(A) of the Bankruptcy Code and General Order M-143

for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative

Claims of Debtors Under Derivative Contracts (the "ADR Motion") because of the inappropriate

inclusion in Paragraph 12 of the Alternative Dispute Resolution Procedures Order for

Affirmative Claims of Debtors Under Derivative Contracts ("Proposed ADR Order") of an

elaborate sanctions provision apparently allowing either party to seek sanctions if they claim that

the other party has failed to participate in the mediation proceedings in "good faith."  As set forth

herein, such a provision is an unnecessary, counterproductive and unjustified departure from the normal mediation rules that apply in this Court. The Objectors aver as follows:

1.    The Objectors are counterparties to derivative contracts entered into with Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers International (Europe) ("LBIE"), and guaranteed by Lehman Brothers Holdings Inc. ("LBHI").

2.    Due to the termination of these derivative contracts, the Objectors are creditors of LBSF and LBIE, and LBHI as guarantor. However, LBSF purports to have an affirmative claim against the Objectors pursuant to one derivative contract.

3.    The Objectors have no objection to the establishment of mediation procedures in these Chapter 11 cases. However, the procedures proposed in the ADR Motion depart from the sound, confidential and cooperative mediation process prescribed in General Order M-143 (the "Mediation Order") by apparently allowing either party to seek sanctions, including an award of judgment, if they believe the other party is not mediating in good faith. See Proposed ADR Order ¶ 12.[1]

4.    Paragraph 12 of the Proposed ADR Order, which provides for the elaborate sanctions procedure, should be removed from any mediation procedures adopted by this Court. Not only does this provision contradict the confidentiality requirements of the Mediation Order, but it is not supported by precedent in this Circuit, and if adopted, it will undermine the very raison d'être of the ADR process – the more efficient resolution of disputes between the parties.

---

[1]    Paragraph 12 of the Proposed ADR Order states, "If, after notice and a hearing, the Court determines that the Debtors or a Derivatives Counterparty have not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors or the Derivatives Counterparty may be subject to such sanctions as the Court deems Appropriate (the "Sanctions") . . . Sanctions shall include . . . an award of the Derivatives ADR Dispute up to the amount specified in the Debtor's Notice  . . . ." As it is now worded, the Proposed ADR Order implies that such a proceeding can be initiated at the discretion of any of the Debtors, the counterparty or the mediator.

5.      First, the punitive sanctions proposed in Paragraph 12 are an unnecessary

departure from the Mediation Order, which already deals with the perceived problem the Debtors

purport to address by providing that "[t]he mediator shall report any willful failure to attend or

participate in good faith" to the Court, which may "result in the imposition of sanctions by the

court." Mediation Order § 3.2. The Proposed ADR Order, on the other hand, appears to provide

that if any of the parties participating in the mediation believes the other party is not cooperating

in the mediation in "good faith" such party may seek sanctions, including a grant of judgment.[2]

Granting judgment to a party is a "harsh remedy to be utilized only in extreme situations," Cody

v. Mello, 59 F.3d 13, 15 (2d Cir. 1995), and is an improper sanction for failure to mediate in

good faith. See Negron v. Woodhull Hosp., 173 F. App'x 77, 79 (2d Cir. 2006). Moreover,

there is no way for a party to the mediation to seek sanctions without disclosing the conduct of

the counterparty during the mediation. Accordingly, the proposed procedures contradict the

strong confidentiality protections provided for in the Mediation Order which state that "[a]ny

statements made by . . . the parties . . . during the mediation process shall not be divulged by any

of the participants in the mediation . . . or by the mediator to the court." Mediation Order § 5.1;

see also id. §5.2 ("no person may rely on or introduce as evidence in connection with any

arbitral, judicial or other proceeding, including any hearing held by this court in connection with

the referred matter, any aspect of the mediation effort"). While the Mediation Order permits the

mediator to inform the Court of a party's failure to attend or participate in good faith, it does not

permit the parties themselves to do so, id. § 3.2, as apparently proposed in the ADR Motion.

6.      Second, precedent in this Circuit does not support this drastic departure from the

consensual nature of the Mediation Order. Debtors identify two cases which they allege

"granted" similar relief. ADR Motion ¶ 38 (citing In re Enron Corp., et al., Case No. 01-16034

---

[2]      The Proposed ADR Order does not appear to give the mediator the ability to suggest an appropriate sanction.

3

(AJG), [Dkt. 9533] (Bankr. S.D.N.Y. Mar. 4, 2003) and [Dkt. No. 9862] (Bankr. S.D.N.Y. March 20, 2003) and In re Ames Dep't Stores, Inc., et. al., Case No. 01-42217 (REG) [Dkt. No. 3195] (Bankr. S.D.N.Y. June 25, 2007)).  Neither contained a similar "sanctions" provision.  In neither the Enron nor Ames cases did the Court permit the parties to seek sanctions if they felt the counterparty was not participating in good faith or suggest that the draconian relief of judgment was an appropriate remedy in this context.  Nor do the Debtors offer any reason whatever why such radical departure is now warranted.

   7. Finally, including the proposed sanctions provision would undermine the Debtors' goals of promoting efficiency and reducing unnecessary litigation expenses.  ADR Motion ¶ 39. As this Court has already noted: permitting a party to seek relief, including sanctions, on the basis of the other party's good faith compliance with an Order is just "an open ended invitation to endless litigation" over whether "there is or is not" good faith participation.  Oral Arg. Tr. [Dkt. No. 4183], dated June 24, 2009, at 97:21-23.

   WHEREFORE, the Objectors respectfully request that this Court (i) modify the Proposed ADR Order by removing Paragraph 12, (ii) enter a mediation order substantially in the form attached hereto as Exhibit A (clean) and Exhibit B (blackline) and (iii) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
July 31, 2009

Respectfully submitted,

  /s/ Thomas J. Moloney

Thomas J. Moloney, Esq.
tmoloney@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for D. E. Shaw Composite Portfolios,*
*L.L.C., D. E. Shaw Oculus Portfolios, L.L.C., and*
*their affiliates*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------- x

| | : | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | |

----------------------------------------------------------------------- x

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR**
**AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS**

The following alternative dispute resolution procedures (the "Derivatives ADR

Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc.

and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various

chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

**FINDINGS**

On motion of Debtors, the Court FINDS that numerous open and terminated

derivatives contracts, including swap agreements and forward contracts (the "Derivatives

Contracts with Recovery Potential"), exist as to which one or more Debtors assert that monetary

recovery is due to a Debtor from a counterparty, its affiliates, or related parties.  The Court

further FINDS that certain common issues exist regarding these contracts, including questions

involving appropriateness of setoff, termination, valuation and computation of termination

payments, and notice.  The Court further FINDS that substantial value may be recovered for the

estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes

and recoveries under such contracts can be achieved without the need for trial of adversary

proceedings or other litigation.  The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.     <u>Standing Mediation Order</u>.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "<u>Standing Order</u>") shall apply to the mediations to be conducted under this order.

2.     <u>Derivatives ADR Counterparties</u>.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "<u>Derivative Counterparties</u>").

3.     <u>Derivatives ADR Disputes</u>.  Any Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures by serving the following on a Derivative Counterparty:

a.     a copy of this Order; and

      b.      a Derivatives ADR Notice (as defined below) (collectively, the

"<u>Derivatives ADR Package</u>").

For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives

Counterparty shall be deemed adequate if such service or notice is provided to the Derivatives

Counterparty, the Derivatives Counterparty's counsel, legal guardian, estate representative, or

other representative by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

      4.     <u>Settlement of Disputes During the Derivatives ADR Procedures</u>.  Nothing

contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a

Derivatives ADR Dispute at any time before, during, or following the designation of a

Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the

parties, provided that such settlement

      a.      complies with (i) the Order, dated December 16, 2008, authorizing the

Debtors to establish procedures for the settlement or assumption and

assignment of prepetition derivative contracts [Docket 2257]; (ii) the

Order, dated January 29, 2009, authorizing the consensual assumption and

assignment of prepetition derivative contracts [Docket No. 2667], or (iii)

other orders in these bankruptcy cases permitting such settlement, or

      b.      is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors'

Committee (the "<u>Creditors' Committee</u>"), the contents of any papers submitted during the

mediation stage described below, and all discussions in mediation shall remain confidential and

privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of

the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

5.      <u>Participation Mandatory</u>.  Unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty, after service of an ADR Package on a Derivatives Counterparty,

a.      compliance with the ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for both the applicable Debtor or Debtors and each Derivatives Counterparty; and

b.      no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but each Debtor serving a Derivatives ADR Package and each Derivatives Counterparty must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the Derivatives ADR Procedures specified below for all Derivatives ADR Disputes covered by such notice.

6.      <u>No Substitute For Claims Procedures</u>.  The Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures. Nothing contained herein, however, shall prevent a Derivatives Counterparty from asserting in any respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder.

7.      <u>Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivative Counterparties</u>.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court

4

or forum following service upon it of a Derivative ADR Package, the Debtors reserve their right,

pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any

such lawsuit, proceeding, or claim and to defend or take action in any such other court or

proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed

under the Derivative ADR Procedures.

### NOTICE/RESPONSE STAGE

8.      Notice/Response.  The initial stage of the Derivatives ADR Procedures

will be a notice/response stage, providing the parties with an opportunity to exchange settlement

offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives

ADR Dispute on a consensual basis (the "Notice/Response Stage").  The Notice/Response Stage

shall include:

a.      Derivatives ADR Notice.  Debtors shall serve upon a Derivatives

Counterparty a notice containing sufficient information regarding the

Derivatives ADR Dispute to make the Derivatives Counterparty aware of

the nature of Debtor's affirmative claim and of its demand for settlement

(which demand shall have been determined with the benefit of

consultation between Debtors and the Creditors' Committee), including an

amount of monetary recovery Debtor(s) would accept in full settlement

and compromise (a "Derivatives ADR Notice").

b.      Derivatives Counterparty's Response to Notice.  A Derivatives

Counterparty must respond to the Derivatives ADR Notice in writing

through a "Statement of Position" within twenty (20) calendar days from

the date of the Derivatives Counterparty's receipt of the Notice.  The

5

response options available to a Derivatives Counterparty are as follows

(the "<u>Responses</u>"):

    i.    <u>Agreeing to Settle the Demand</u>.  If a Derivatives

Counterparty agrees to settle the demand in the Derivatives

ADR Notice, the Counterparty shall state in writing that the

offer of settlement in the Derivatives ADR Notice is

accepted.  The parties will then execute a settlement and

general release (including a confidentiality provision) and,

if the matter is in litigation, the Debtor shall dismiss any

applicable claims in a lawsuit or adversary proceeding with

prejudice upon execution of the release; or

    ii.    <u>Denying the Demand</u>.  A Derivatives Counterparty may

decline to settle for the amount stated in the demand in the

Derivatives ADR Notice, in which case the Derivatives

Counterparty must include a brief explanation in the

Response to the Derivatives ADR Notice setting forth the

reason(s) for such denial.  In addition, the Derivatives

Counterparty may provide a counteroffer to the demand in

the Derivatives ADR Notice.

c.    <u>Failure to Respond</u>.  Failure to provide a timely Response to the

Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

result, at the option of Debtors, either in an application to the Court for

Sanctions (as defined below) as set forth below, including an order or

6

judgment for recovery of amounts demanded by Debtors in the Derivatives ADR Notice, or immediate entry into the mediation stage.

d. <u>Reply to Response</u>. The Debtor shall have fifteen (15) days from the date of the receipt of the Response to serve a reply to the Response to the Derivatives ADR Notice (which Response shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), in which the Debtor may (i) modify its Demand, (ii) respond to any counteroffer, (iii) provide additional information in support of its demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer in which case the Derivatives ADR Dispute will automatically proceed to the Mediation Stage. If the Debtor fails to respond within this period, the Derivatives ADR Dispute will automatically proceed to the Mediation Stage.

9. <u>Request for Initial Settlement Conference</u>. At any time in the Notice/Response Stage, either a Debtor or a Derivatives Counterparty may request an initial telephonic settlement conference by written request, to be held within five (5) calendar days. Within two (2) calendar days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request. If an acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage. At least one hour shall be reserved for the initial conference to discuss settlement. No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled

settlement calls or meetings arising from that initial settlement conference, will be covered by

Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the

confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator

were present.  Settlement conferences during the Notice/Response Stage may be held in person if

both parties agree in writing.

## **MEDIATION STAGE**

10.    <u>Mediation</u>.  Derivatives ADR Disputes that are not resolved through the

Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").

a.    Debtor and the Derivatives Counterparty together shall contact the

mediator to schedule the initial mediation date.

b.    <u>Powers of Mediator</u>.  The mediator shall have the broadest possible

discretion consistent with the Standing Order described below, including

the discretion to certify specific legal issues to the court for decision.

c.    <u>Choice of Mediator</u>.  **INSERT MEDIATOR NAME(S) is (are)**

APPOINTED as the mediator(s) for Derivatives ADR Disputes reaching

the Mediation Stage.  If **NAME(S)** is (are) not available to serve as

mediator, an alternate mediator shall be selected as mutually agreed in

writing by all parties to a specific Derivatives ADR Dispute or group of

related Derivatives ADR Disputes.  Any such alternative shall be deemed

to have been appointed upon entry into a written stipulation to that effect

by all Debtors and Derivatives Counterparties participating in the

applicable Derivatives ADR Dispute or Disputes.  If the parties cannot

agree upon a selection of mediator within ten (10) calendar days of the

completion of the Notice/Response Stage, the court shall appoint one or more mediators.

d.    <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.  The addition or elimination of Mediation Sites shall be within the sole discretion of the Debtors.

e.    <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, with service upon the other parties to the Mediation and upon the Creditors' Committee; provided, however, the Mediator may order that the parties to serve upon each other, the Mediator, and the Creditors' Committee a Mediation Brief.  If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee.  Any such Mediation Brief shall be served and filed no later than five (5) days prior to the scheduled initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.    <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all participants in the mediation for the applicable Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority.  The Creditors' Committee may attend and participate in all mediations hereunder.  Counsel may also be present and participate.

## OTHER PROVISIONS

11.    <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12.    <u>Confidentiality</u>.  The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.  No statements or arguments made or positions taken by the mediator, the applicable Debtors, Derivative Counterparties, or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage may not be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party. Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving is such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible.  In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; *provided*, *however*, the mediator may report to the Court the status of the mediation efforts but shall not disclose the content thereof.  Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the Derivative ADR Procedures including Settlement Conferences and Mediation Stage.

13.    <u>Jury Trials Unaffected</u>.  Except to the extent a Derivatives Counterparty affirmatively chooses the mediation option set forth herein, participation in the Derivatives ADR Procedures shall not waive any right to a jury trial that might otherwise exist.

14.    <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation shall bear its own counsel fees and other costs of the Mediation; provided, however, that the

party who requests the Mediation shall pay the reasonable fees and costs charged by the

Mediator.

**SO ORDERED:**

August __, 2009
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------- x
                                                    :
In re                                               :          **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :          **08-13555 (JMP)**
                                                    :
                    Debtors.                        :          **(Jointly Administered)**
                                                    :
                                                    :
--------------------------------------------------------------------- x

### ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR
### AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

         The following alternative dispute resolution procedures (the "Derivatives ADR

Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc.

and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various

chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

### FINDINGS

         On motion of Debtors, the Court FINDS that numerous open and terminated

derivatives contracts, including swap agreements and forward contracts (the "Derivatives

Contracts with Recovery Potential"), exist as to which one or more Debtors assert that monetary

recovery is due to a Debtor from a counterparty, its affiliates, or related parties.  The Court

further FINDS that certain common issues exist regarding these contracts, including questions

involving appropriateness of setoff, termination, valuation and computation of termination

payments, and notice.  The Court further FINDS that substantial value may be recovered for the

estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes

and recoveries under such contracts can be achieved without the need for trial of adversary

proceedings or other litigation.  The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.    <u>Standing Mediation Order</u>.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "<u>Standing Order</u>") shall apply to the mediations to be conducted under this order.

2.    <u>Derivatives ADR Counterparties</u>.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "<u>Derivative Counterparties</u>").

3.    <u>Derivatives ADR Disputes</u>.  Any Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures by serving the following on a Derivative Counterparty:

a.    a copy of this Order; and

b.      a Derivatives ADR Notice (as defined below) (collectively, the

"Derivatives ADR Package").

For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives

Counterparty shall be deemed adequate if such service or notice is provided to the Derivatives

Counterparty, the Derivatives Counterparty's counsel, legal guardian, estate representative, or

other representative by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

4.      <u>Settlement of Disputes During the Derivatives ADR Procedures</u>.  Nothing

contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a

Derivatives ADR Dispute at any time before, during, or following the designation of a

Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the

parties, provided that such settlement

a.      complies with (i) the Order, dated December 16, 2008, authorizing the

Debtors to establish procedures for the settlement or assumption and

assignment of prepetition derivative contracts [Docket 2257]; (ii) the

Order, dated January 29, 2009, authorizing the consensual assumption and

assignment of prepetition derivative contracts [Docket No. 2667], or (iii)

other orders in these bankruptcy cases permitting such settlement, or

b.      is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors'

Committee (the "Creditors' Committee"), the contents of any papers submitted during the

mediation stage described below, and all discussions in mediation shall remain confidential and

privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of

the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

3

5.      <u>Participation Mandatory</u>.  Unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty, after service of an ADR Package on a Derivatives Counterparty,

a.      compliance with the ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for both the applicable Debtor or Debtors and each Derivatives Counterparty; and

b.      no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but each Debtor serving a Derivatives ADR Package and each Derivatives Counterparty must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the Derivatives ADR Procedures specified below for all Derivatives ADR Disputes covered by such notice.

6.      <u>No Substitute For Claims Procedures</u>.  The Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures. Nothing contained herein, however, shall prevent a Derivatives Counterparty from asserting in any respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder.

7.      <u>Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivative Counterparties</u>.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court

4

or forum following service upon it of a Derivative ADR Package, the Debtors reserve their right,

pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any

such lawsuit, proceeding, or claim and to defend or take action in any such other court or

proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed

under the Derivative ADR Procedures.

## NOTICE/RESPONSE STAGE

8.    Notice/Response.  The initial stage of the Derivatives ADR Procedures

will be a notice/response stage, providing the parties with an opportunity to exchange settlement

offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives

ADR Dispute on a consensual basis (the "Notice/Response Stage").  The Notice/Response Stage

shall include:

a.    Derivatives ADR Notice.  Debtors shall serve upon a Derivatives
Counterparty a notice containing sufficient information regarding the
Derivatives ADR Dispute to make the Derivatives Counterparty aware of
the nature of Debtor's affirmative claim and of its demand for settlement
(which demand shall have been determined with the benefit of
consultation between Debtors and the Creditors' Committee), including an
amount of monetary recovery Debtor(s) would accept in full settlement
and compromise (a "Derivatives ADR Notice").

b.    Derivatives Counterparty's Response to Notice.  A Derivatives
Counterparty must respond to the Derivatives ADR Notice in writing
through a "Statement of Position" within twenty (20) calendar days from
the date of the Derivatives Counterparty's receipt of the Notice.  The

5

response options available to a Derivatives Counterparty are as follows
(the "<u>Responses</u>"):

    i.    <u>Agreeing to Settle the Demand</u>.  If a Derivatives
Counterparty agrees to settle the demand in the Derivatives
ADR Notice, the Counterparty shall state in writing that the
offer of settlement in the Derivatives ADR Notice is
accepted.  The parties will then execute a settlement and
general release (including a confidentiality provision) and,
if the matter is in litigation, the Debtor shall dismiss any
applicable claims in a lawsuit or adversary proceeding with
prejudice upon execution of the release; or

    ii.    <u>Denying the Demand</u>.  A Derivatives Counterparty may
decline to settle for the amount stated in the demand in the
Derivatives ADR Notice, in which case the Derivatives
Counterparty must include a brief explanation in the
Response to the Derivatives ADR Notice setting forth the
reason(s) for such denial.  In addition, the Derivatives
Counterparty may provide a counteroffer to the demand in
the Derivatives ADR Notice.

c.    <u>Failure to Respond</u>.  Failure to provide a timely Response to the
Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may
result, at the option of Debtors, either in an application to the Court for
Sanctions (as defined below) as set forth below, including an order or

6

judgment for recovery of amounts demanded by Debtors in the

Derivatives ADR Notice, or immediate entry into the mediation stage.

    d.    <u>Reply to Response</u>.  The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a reply to the Response to the

Derivatives ADR Notice (which Response shall have been determined

with the benefit of consultation between Debtors and the Creditors'

Committee), in which the Debtor may (i) modify its Demand, (ii) respond

to any counteroffer, (iii) provide additional information in support of its

demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer

in which case the Derivatives ADR Dispute will automatically proceed to

the Mediation Stage.  If the Debtor fails to respond within this period, the

Derivatives ADR Dispute will automatically proceed to the Mediation

Stage.

    9.    <u>Request for Initial Settlement Conference</u>.  At any time in the

Notice/Response Stage, either a Debtor or a Derivatives Counterparty may request an initial

telephonic settlement conference by written request, to be held within five (5) calendar days.

Within two (2) calendar days of a receipt of such a request, the other parties must respond by

acceptance of one of the proposed dates and times or by a proposal for an initial settlement call

no later than five (5) calendar days from the earliest date set forth in the written request.  If an

acceptable date cannot be achieved through this process, the parties shall immediately proceed to

the Mediation Stage.  At least one hour shall be reserved for the initial conference to discuss

settlement.  No mediator or representative of the Court will participate in this discussion, but the

initial conference call specified in this paragraph, together with any continuations or rescheduled

settlement calls or meetings arising from that initial settlement conference, will be covered by

Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the

confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator

were present.  Settlement conferences during the Notice/Response Stage may be held in person if

both parties agree in writing.

## **MEDIATION STAGE**

10.    <u>Mediation</u>.  Derivatives ADR Disputes that are not resolved through the

Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").

     a.    Debtor and the Derivatives Counterparty together shall contact the

mediator to schedule the initial mediation date.

     b.    <u>Powers of Mediator</u>.  The mediator shall have the broadest possible

discretion consistent with the Standing Order described below, including

the discretion to certify specific legal issues to the court for decision.

     c.    <u>Choice of Mediator</u>.  **INSERT MEDIATOR NAME(S)** is (are)

APPOINTED as the mediator(s) for Derivatives ADR Disputes reaching

the Mediation Stage.  If **NAME(S)** is (are) not available to serve as

mediator, an alternate mediator shall be selected as mutually agreed in

writing by all parties to a specific Derivatives ADR Dispute or group of

related Derivatives ADR Disputes.  Any such alternative shall be deemed

to have been appointed upon entry into a written stipulation to that effect

by all Debtors and Derivatives Counterparties participating in the

applicable Derivatives ADR Dispute or Disputes.  If the parties cannot

agree upon a selection of mediator within ten (10) calendar days of the

8

completion of the Notice/Response Stage, the court shall appoint one or more mediators.

d.      <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.  The addition or elimination of Mediation Sites shall be within the sole discretion of the Debtors.

e.      <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, with service upon the other parties to the Mediation and upon the Creditors' Committee; provided, however, the Mediator may order that the parties to serve upon each other, the Mediator, and the Creditors' Committee a Mediation Brief.  If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee.  Any such Mediation Brief shall be served and filed no later than five (5) days prior to the scheduled initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.      <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all participants in the mediation for the applicable Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority.  The Creditors' Committee may attend and participate in all mediations hereunder.  Counsel may also be present and participate.

## OTHER PROVISIONS

11.    Deadlines.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12.    Sanctions for Parties.  Each Debtor and each Derivatives Counterparty must participate in good faith with these Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that the Debtors or a Derivatives Counterparty have not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors or the Derivatives Counterparty may be subject to such sanctions as the Court deems appropriate (the "Sanctions").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the mediation procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions.  Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions shall include, but are not limited to:

a.    Against Debtors:  (i) attorneys' fees; (ii) fees and costs of the Mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts with Potential Recovery; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.

b.    Against Derivatives Counterparties:  (i) attorneys' fees; (ii) fees and costs of the Mediator; (iii) an award of the Derivatives ADR Dispute up to the amount specified in the Debtor's Notice (as defined below).

10

**12.**    ~~13.~~ Confidentiality.  The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.  No statements or arguments made or positions taken by the mediator, the applicable Debtors, Derivative Counterparties, or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage may not be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party. Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving is such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible.  In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; *provided*, *however*, the mediator may report to the Court the status of the mediation efforts but shall not disclose the content thereof.  Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the Derivative ADR Procedures including Settlement Conferences and Mediation Stage.

**13.**    ~~14.~~ Jury Trials Unaffected.  Except to the extent a Derivatives Counterparty affirmatively chooses the mediation option set forth herein, participation in the Derivatives ADR Procedures shall not waive any right to a jury trial that might otherwise exist.

11

**14.**   ~~15.~~ Fees.  Except as otherwise provided herein, each party to the

Mediation shall bear its own counsel fees and other costs of the Mediation; provided, however,

that the party who requests the Mediation shall pay the reasonable fees and costs charged by the

Mediator.

**SO ORDERED:**

August __, 2009
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE