KLESTADT & WINTERS, LLP
Tracy L. Klestadt
John E. Jureller, Jr.
292 Madison Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

Attorneys for *European Credit Management Limited, Relative European Value, S.A., European Credit (Luxembourg) S.A., Leveraged Loans Europe plc,* and *Term Loans Europe plc*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
In re LEHMAN BROTHERS HOLDINGS,                              :    Case No. 08-13555 (JMP)
INC., *et al.*                                               :    (Jointly Administered)
                                                             :
                                                             :
              Debtors.                                       :
                                                             :
------------------------------------------------------------x

**LIMITED OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER <u>DERIVATIVE CONTRACTS</u>**

TO: THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

European Credit Management Limited, Relative European Value, S.A., European Credit (Luxembourg) S.A., Leveraged Loans Europe plc, and Term Loans Europe plc (the "<u>Objectors</u>") by their attorneys, Klestadt & Winters, LLP, as and for their limited objection to Lehman Brothers Holdings Inc.'s ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>") motion, pursuant to section 105(a) and General Order M-143,

for authorization to implement alternative dispute resolution procedures (the "ADR Procedures") for affirmative claims of the Debtors regarding derivative contracts (the "Motion"), respectfully represent as follows:

1. The Objectors are parties to certain LMA Funded Participation Agreement (an "LMA Agreement") with Lehman Commercial Paper, Inc. ("LCPI"), whereby LCPI sold certain participations and/or certain participations in these participations, or sub-participations, in certain syndicated loans to Objectors.

2. On September 15, 2008, LBHI filed a petition seeking relief under chapter 11 of the United States Bankruptcy Code. That same day, the Objectors sent LCPI notice that each of the respective Plaintiffs had elected to elevate their funded participations or sub-participations to a Lender[1] under the LMA Agreements pursuant to the Terms and Conditions (collectively as "Elevation Notices"). To date, LCPI has failed to use commercially reasonable efforts to execute the certificates and/or assignments and acceptance agreements with respect to the Objectors' Elevation Notices and elevate the Objectors to Lenders.

3. On June 3, 2009, the Objectors filed an adversary complaint ("Adversary Complaint") against LCPI for its failure to elevate the Objectors' participations or sub-participations in the Loans, seeking an order of this Court (i) compelling LCPI's specific performance due under those certain Credit Agreements; (ii) entering a declaratory judgment that Objectors' funded participations and sub-participations are effective, that they are the owners of the Credit Agreement Interests (defined later herein), and that such Credit Agreement Interests are not property of LCPI's bankruptcy estate; (iii) compelling similar

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or Adversary Complaint (defined later herein) as appropriate.

2

treatment to Objectors with respect to LCPI's similarly situated trading counterparties relative to elevation of their interests; (iv) determining that Objectors' rights to elevate under the Loan Market Association ("LMA") Agreements and Terms and Conditions fall within the Safe Harbor Provisions of the Bankruptcy Code and are not subject to the automatic stay, (v) compelling LCPI to turn over, or take such actions necessary to turn over, the Credit Agreements Interests of Objectors; (vi) enjoining LCPI from selling, converting, altering or transferring certain property of the Objectors; and (vii) compelling LCPI to provide an accounting to Objectors.  The adversary proceeding has been assigned adversary proceeding number 09-01262.  LCPI's time to answer or otherwise appear has been extended until July 31, 2009.

4. Although it is uncertain as to whether the Objectors will be identified by the Debtors as proposed parties to such a mediation and thus subject to the proposed ADR Procedures, the Objectors file this limited objection to protect their rights and interests in this matter.  Further, without agreeing to such procedures or waiving any rights thereto, the Objectors recognize that alternative dispute resolution, in some form, may provide an efficient and desirable means to resolve certain outstanding issues between the Debtors and the Objectors. With this in mind, the Objectors object to certain aspects of the Motion but would entertain an alternative dispute resolution proposal on appropriate and balanced terms.

I. **THE ADR PROCEDURES ARE UNDULY BURDENSOME TO THE OBJECTORS**

5. Certain provisions set forth in the Motion and the proposed ADR Procedures place undue burden on the Objectors with no corresponding benefit to the estates of the Debtors or perceptible increase in judicial efficiency.

3

6.  First, the proposed timeframes in the ADR Procedures are unreasonable and lack necessary flexibility. For example, the Motion provides: "Upon receipt of the Derivatives ADR Package, the Derivatives Counterparty will have twenty (20) calendar days to respond in writing its position with respect to the Debtors' demand." Motion at ¶ 19. This timeframe is particularly unreasonable "[g]iven the complex nature of the Derivative Contracts." Motion at ¶ 12. The ADR Procedures should provide for deadlines that reflect the nature of the issues at hand and recognize that in order to provide any meaningful response to a demand based on one or more extremely complex financial transactions, involving notional amounts of tens of millions of dollars, the Objectors must be afforded substantially more than twenty calendar days in which to respond.

7.  Second, the ADR Procedures would require that a business principal of the Objectors, having settlement authority, attend any mediation proceedings *in person,* in New York, New York. Considering the nature of the Objectors' business, the location of their businesses, and their limited personnel resources, such a requirement would entail a substantial hardship on the Objectors. On the other hand, the Debtors, formerly a leader in the *global* financial markets (Motion at ¶ 5), which have hired an army of professionals working in every corner of the Earth, could, with minimal expense, attend mediation proceedings in a location more convenient to the Objectors. Pursuant to the General Order M143, the Mediator should fix a reasonable place and time for the mediation, and this procedure should be put into effect in this matter as well.

8.  Further, to the extent an adversary proceeding has been commenced by the Objectors, such proceeding should be stayed pending the duration of the mediation process.

**II.    THE ADR PROCEDURES UNNECESSARILY FAVOR THE DEBTORS**

9. The proposed ADR Procedures are biased in favor of the Debtors such that the entire process is unlikely to resolve any outstanding issues between the Debtors and the Objectors.

10. Most notably, the Debtors have retained for themselves the sole ability to select the mediator. In order for a mediation proceeding to resolve any contentious issues, the mediator of such proceedings must be fair and unbiased. The ADR Procedures provide no assurance that such a mediator will be selected. Further, the requirement of having a single mediator for all of these potential matters can only benefit the Debtors based upon continued association throughout this process.

11. Also, the proposed ADR Procedures seem to allow the Debtors to cherrypick particular transactions and issues within transactions that are most favorable to them. This is so because pursuant to the ADR Procedures only the Debtors are able to commence mediation. In order for a mediation process to be effective, both parties must be given some latitude to raise and frame issues for resolution.

### III. THE ADR PROCEDURES ARE AMBIGUOUS AND INCONSISTENT

12. Certain of the proposed ADR Procedures are ambiguous and inconsistent on their face. For example, paragraph 10.a. of the proposed order accompanying the Motion (the "Proposed Order") provides that the Debtors and the counterparty "together shall contact the mediator to schedule the initial mediation date." In contrast, paragraph 15 of the Proposed Order states that "the party who requests the Mediation shall pay the reasonable fees and costs charged by the Mediator." The Proposed Order is thus ambiguous regarding the party responsible for paying the mediator, as it requires the Debtors and the counterparty to jointly approach the mediator. If the Debtors request mandatory mediation via the Motion

5

or otherwise, the Debtors should be responsible for payment of all fees and costs charged by the mediator. Objectors have not requested mediation and thus object to bearing any expense for the process.

13. Paragraph 10.b. of the Proposed Order gives the mediator the broadest possible discretion, "including the discretion to certify specific legal issues to the Court for decision." This authority is in conflict, or at least inconsistent, with the confidentiality provisions in paragraph 13 of the Proposed Order and paragraph 5.0 of the Court's General Order #M-143. It fails to provide the parties a right to brief such legal issues prior to any determination. Further, it conflicts with Rule 408 of the Federal Rules of Evidence.

14. Paragraph 14 of the Proposed Order states "Except to the extent a Derivatives Counterparty affirmatively chooses the mediation option set forth herein, participation in the Derivatives ADR Procedures shall not waive any right to a jury trial that might otherwise exist." Paragraph 14 is ambiguous in that if the Court grants the Motion and the Debtors send the counterparty a Derivatives ADR Package, the counterparty is obligated to participate in the Derivatives ADR Procedures. Thus, it is not clear as to what constitutes "affirmatively choosing" mediation such that a party has waived its right to a jury trial.

15. In the Motion, the Debtors provide that they will supply the Counterparties with a Derivative ADR Notice setting forth "sufficient information" regarding the dispute, any affirmative claim as well as a settlement offer. Parties have 20 days to respond by: (1) agreeing or (2) or denying the demand through a "statement of position." Failure to respond in this fashion may result in sanctions. The ADR Procedures do not provide flexibility if there is a need or request for clarification and further information, as the Objectors have no knowledge at this point of the extent of such "sufficient information" to be provided by the

6

Debtors. Further, the proposed ADR Procedures seem heavy handed with respect to such proposed penalties and sanctions.

## **CONCLUSION**

16. Objectors respectfully request the Court to deny the Motion or alternatively, modify any ADR Procedures to provide for a more reasonable and level mediation process, together with such other, further, or different relief as may be just and proper.

Dated: New York, New York
       July 31, 2009

                                              KLESTADT & WINTERS, LLP

                                              By: */s/ John E. Jureller, Jr.*
                                                     Tracy L. Klestadt
                                                     John E. Jureller, Jr.
                                                     292 Madison Avenue, 17th Floor
                                                     New York, New York 10017
                                                     Telephone (212) 972-3000