FAEGRE & BENSON LLP
Stephen M. Mertz
Michael M. Krauss (MK-9699)
Michael F. Doty
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

ATTORNEYS FOR WELLS FARGO
BANK, NATIONAL ASSOCIATION,
IN ITS CAPACITY AS TRUSTEE
PURSUANT TO VARIOUS TRUST
AGREEMENTS

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :    08-13555 (JMP)
                                    :
         Debtors.                   :    (Jointly Administered)
                                    :
                                    :
------------------------------------------------------------------x

**OBJECTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION, IN ITS
CAPACITY AS TRUSTEE PURSUANT TO VARIOUS TRUST AGREEMENTS, TO
THE MOTION OF THE DEBTORS PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION
TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR
<u>AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS</u>**

Wells Fargo Bank, National Association, in its capacity as trustee pursuant to various

trust agreements, ("<u>Wells Fargo</u>") by and through its undersigned attorneys, hereby submits

this objection to the Motion Of The Debtors, Pursuant To Section 105(a) Of The Bankruptcy

Code And General Order M-143 For Authorization To Implement Alternative Dispute

Resolution Procedures For Affirmative Claims Of Debtors Under Derivative Contracts (the "Motion"). Wells Fargo objects to the Motion to the extent that the debtors in the above-captioned bankruptcy case (each a "Debtor" and collectively, the "Debtors") seek to compel Wells Fargo's participation in any alternative dispute resolution ("ADR") proceeding without the Debtors having first filed an adversary proceeding against Wells Fargo. Wells Fargo also objects to the Motion because the Debtors' proposed ADR procedures deprive Wells Fargo of significant procedural rights that it would otherwise have in an adversary proceeding, the Debtors' proposed ADR procedures are unduly burdensome, and the relief the Debtors seek in the Motion is ambiguous. Wells Fargo further objects to the Motion to the extent that the Motion seeks relief that is not authorized by chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Finally, Wells Fargo objects to the Motion's proposed notice procedures. In support of its objection, Wells Fargo respectfully states and represents as follows:

**Background**

1. Wells Fargo acts as trustee for various securitization trusts, collateralized debt obligations, and other structured products (each a "Trust" and collectively, the "Trusts"). Certain of the Trusts are parties to prepetition derivative contracts with one or more Debtor entities (each such contract, a "Derivative Contract" and collectively, the "Derivative Contracts").

2. The Derivative Contracts between the Debtors and the Trusts include, but are not limited to, various interest rate swaps agreements, interest rate cap agreements, and credit default swaps.

2

**Objection**

**I.  General Order M-143 does not authorize the court to refer matters to mediation where there is no adversary proceeding or contested matter.**

3.  Debtors seek to compel Wells Fargo's participation in ADR procedures based on General Order M-143 (the "General Order").  However, the General Order plainly contemplates the existence of an adversary proceeding or contested matter prior to any assignment of a matter to mediation.  In fact, the General Order specifically states that the court may order assignment of a matter to mediation "upon a motion by any party in interest" and that "[t]he motion by a party in interest must be filed promptly *after filing the initial document in the matter.*"  (General Order, ¶ 1.1) (emphasis added).  In the absence of an open adversary proceeding or contested matter, the General Order simply does not contemplate the ADR procedures or the abbreviated ADR timeline that the Debtors request in the Motion.

4.  Debtors have not commenced an adversary proceeding or contested matter. Wells Fargo has not agreed to the Debtors' proposed ADR procedures.  Nothing in the Derivative Contracts authorizes or requires the parties to submit to the Debtors' proposed ADR procedures.  Finally, the General Order itself does not authorize the ADR procedures the Debtor seeks to impose upon Wells Fargo.  The General Order contemplates the existence of a "matter" before the Court prior to assignment of that matter to mediation.  In the ordinary course, if the Debtors sought to resolve a dispute with Wells Fargo under one of the Derivative Contracts, the Debtors would commence an adversary proceeding by filing a complaint.  Wells Fargo would have an opportunity to respond to the complaint, and both sides would have access to the full range of pleading and discovery options that the Federal

3

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provide. Only after the parties had adequately framed their dispute and, at the very least, had an opportunity to test the strength of the Debtors' complaint with a motion to dismiss, and engage in limited discovery, would an order compelling mediation be appropriate.

5.  The Motion cites two previous cases in which this Court has implemented mediation procedures. (Motion, ¶ 38) (citing *In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. March 4, 2003) [Docket No. 9533] and (Bankr. S.D.N.Y. March 20, 2003) [Docket No. 9862] (the "First Amended Enron Order"); and *In re Ames Dept. Stores, Inc., et al.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007) [Docket No. 3195]. However, as the Debtors note in the Motion, each of these orders merely referred existing adversary proceedings to mediation. (Motion, ¶ 38). The First Amended Enron Order also directed future *adversary proceedings* to mediation as well. (Amended Enron Order, p. 1). This language clearly does not contemplate the commencement of future disputes by service of an ADR notice. Rather, this language expressly contemplates referral of future *adversary proceedings* to mediation. In *In re Ames Dept. Stores, Inc., et al.*, the Debtor only sought an order establishing mediation procedures for existing preference actions. *In re Ames Dept. Stores, Inc., et al.*, [Docket No. 3125, at ¶¶ 1-4]. The Debtors' contention that the Motion seeks relief that is "substantially similar" to the relief that this Court has granted in previous cases is simply incorrect. In each of the cases the Debtors cite, this Court merely directed existing or future adversary proceedings to mediation. The necessary implication of the General Order, as well as the language in the orders that the Debtors rely on, is that the Debtors must bring an adversary proceeding against Wells Fargo before seeking to refer the case to ADR.

4

6.      The Bankruptcy Rules provide methods for parties to put their disputes before the Court.  The Bankruptcy Rules also provide procedural safeguards against vexatious litigation.  The General Order permits the Court to refer existing disputes before the Court to mediation.  However, the Debtor seeks to circumvent the Bankruptcy Rules and deny Wells Fargo the protections that it would have in an adversary proceeding by seeking to resolve disputes in an ADR context in the first instance, rather than commencing an adversary proceeding.

**II.     The Motion deprives Wells Fargo of significant procedural rights that it would otherwise have in an adversary or contested proceeding, the Debtors's proposed ADR procedures are unduly burdensome and unfair, and the relief the Debtors seek is ambiguous.**

7.      The Debtors' proposed ADR procedures would significantly impair rights that Wells Fargo would otherwise have in an adversary proceeding.  The Debtors seek to commence ADR procedures by serving a copy of their demands along with a copy of the order granting the Motion (an "<u>ADR Dispute Package</u>") (Motion ¶ 15).  Wells Fargo would then have twenty days to respond to the ADR Dispute Package. (*Id*. at ¶ 19).  By contrast, in an adversary proceeding, Wells Fargo would have thirty days to answer the complaint.  Fed. R. Bankr. P. 7012(a).  In addition, the Motion would require Wells Fargo to present information in its response to the ADR Dispute Package that is far in excess of that which would be required in an ordinary answer to a complaint.  Instead of requiring the simple admissions, denials, or statements that Wells Fargo lacks sufficient information to respond that would appear in an answer, the Debtor would require Wells Fargo to respond by acquiescing to the Debtors' demands, or producing a statement describing its reasons for failing to do so – all within twenty days of receiving the ADR Dispute Package.

5

8. If Wells Fargo refuses to submit to the Debtors' demand, Wells Fargo will have no opportunity to seek dismissal of any adversary complaint, or engage in any discovery before the Debtors would subject it to onerous and expensive mediation procedures.

9. Wells Fargo has not consented to any of the proposed ADR procedures, and the proposed ADR procedures are unduly burdensome. For example, paragraphs 26, 28, and 29 of the Motion provide that mediation of the Derivative Contracts will take place in New York, New York unless otherwise agreed to by the parties and the mediator, that attendance in-person is required, and that failure to participate could result in sanctions. These provisions are unduly burdensome because in-person attendance is expensive and unnecessary. In addition, because the Trusts are parties to multiple Derivative Contracts, the Debtors' proposed procedures would allow the Debtors to initiate multiple ADR proceedings against Wells Fargo, and compel Wells Fargo to send a representative to attend numerous mediation sessions in New York City. If the Court grants the Motion and the Debtors compel Wells Fargo to submit to mediation, the ADR procedures should require the resolution of all Derivative Contract disputes between all of the Trusts and the Debtors in a single mediation proceeding, and the procedures should permit a Wells Fargo representative to participate in mediation telephonically.

10. Paragraph 23 of the Motion provides that the Debtors believe that the Court should select one mediator who will hear and preside over all mediations. Having only one mediator to preside over hundreds of mediations is unduly prejudicial to Wells Fargo, as the chosen mediator may, after repeatedly hearing the Debtors' positions in various mediations, become so associated with the Debtors' positions that the mediator is unable to treat the

Debtors' counterparties impartially. In addition, the General Order specifically contemplates that any mediators will be subject to the approval of both parties to the dispute. (General Order, ¶ 2.2(A)). Here, the Debtors seek to have the Court appoint one or more mediators before the Debtors serve any ADR Dispute Packages. The Proposed Order does not contemplate Wells Fargo's input in selecting a mediator. Unless Wells Fargo has input into the choice of mediators, the process will appear unfair from the outset, which does not bode well for settlement.

11.  Paragraph 10.a. of the proposed order accompanying the Motion (the "Proposed Order") provides that the Debtors and the counterparty "together shall contact the mediator to schedule the initial mediation date." On the other hand, paragraph 15 of the Proposed Order states that "the party who requests the Mediation shall pay the reasonable fees and costs charged by the Mediator." The Proposed Order is thus ambiguous regarding what party is responsible for paying the mediator, as it requires the Debtors and Wells Fargo to contact the mediator jointly, yet it also requires the party who requests the mediation to pay for the mediator's services. If the Debtors commence ADR proceedings against Wells Fargo, Wells Fargo should not be responsible for paying any of the mediator's fees or costs.

12.  Paragraph 10.b. of the Proposed Order gives the mediator the broadest possible discretion, "including the discretion to certify specific legal issues to the Court for decision." Such authority is in conflict, or at least inconsistent with, the confidentiality provisions in paragraph 13 of the Proposed Order and paragraph 5.0 of the General Order. In addition, the Proposed Order does not provide any procedures for certification of issues to the Court. As written, the Proposed Order would permit the Debtors to serve Wells Fargo with an ADR Dispute Package, force Wells Fargo into mediation, and permit the mediator to

7

"certify" a discrete issue for resolution before the Court. In such a case the Court would have no context, as the parties would not be party to an adversary proceeding or contested matter before the Court, and the Proposed Order does not include procedures for briefing the issue prior to decision. In addition, it is unclear what effect, if any, the Court's response to a certified issue will have. If the Proposed Order permits the Court to issue a binding decision on the certified issue, Wells Fargo objects to the extent that the Proposed Order deprives Wells Fargo of its right to fully contest the issue before the Court. If the Proposed Order merely permits the Court to issue a non-binding opinion to the mediator, Wells Fargo objects to the extent that such a decision would constitute an advisory opinion.

13. Paragraph 14 of the Proposed Order states that, "[e]xcept to the extent a Derivatives Counterparty affirmatively chooses the mediation option set forth herein, participation in the Derivatives ADR Procedures shall not waive any right to a jury trial that might otherwise exist." Paragraph 14 is ambiguous. If the Court grants the Motion and the Debtors send Wells Fargo an ADR Dispute Package, Wells Fargo would be obligated to participate in ADR proceedings with the Debtors. Thus, it is not clear what sort of "affirmative choice" to engage in mediation could cause Wells Fargo to waive its right to a jury trial. If the Court requires Wells Fargo's participation in ADR proceedings, such participation should not constitute a waiver of any of Wells Fargo's rights.

14. Paragraph 12 of the Proposed Order permits the Court to impose sanctions on Wells Fargo, after notice and a hearing, for failure to comply with ADR procedures in good faith. Failure to respond to an ADR Dispute Package should not give rise to sanctions, particularly where the proposed procedures permit the Debtor to provide scant information, while requiring Wells Fargo to respond with what is effectively a statement of its case.

15. Pursuant to the order establishing the deadline for filing proofs of claim, approving the form and manner of notice thereof, and approving the Debtors' proposed proof of claim form [Docket No. 4271] (the "Bar Date Order"), parties with claims based on Derivative Contracts must complete an online questionnaire (the "Derivatives Questionnaire") and furnish the Debtors with (i) transaction documents, (ii) termination notices, (iii) valuation statements, (iv) individual trade level details, (v) additional information depending upon the applicable trade valuation methodology used to support the claim, (vi) the CUSIP/ISIN of any collateral, and (vii) schedules of additional costs or interest charges. If the Debtors require this information from their counterparties in connection with their review of claims based on Derivative Contracts, presumably it is pertinent to Wells Fargo's review of the Debtors' claims based on Derivative Contracts, and the Debtors should provide the same information. Thus, if the Court grants the Motion and Wells Fargo is compelled to participate in ADR proceedings, the Court should require the ADR Dispute Package to provide the same amount and type of information that Wells Fargo would have to provide to the Debtors if it were to file a proof of claim based on a Derivative Contract.

### III. The Bankruptcy Code does not authorize the relief sought by the Motion.

16. The Debtors seek relief under the General Order, and Section 105(a) of the Bankruptcy Code. However, the General Order contemplates the existence of a dispute before the Court refers the dispute to mediation (General Order ¶¶ 1.1, 1.3), and Section 105(a) of the Bankruptcy code "limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'" *New Eng. Dairies, Inc. v. Dairy Mart Conv. Stores, Inc., (In re Dairy Mart Conv. Stores, Inc.)*, 351 F.3d 86, 92

9

(2d Cir. 2003) (quoting *FDIC Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992)). The Motion does not identify any provision of the Bankruptcy Code that would justify the relief it seeks. Rather, the Debtor cites the ability to "maximize the value of the Debtors' claims under Derivative Contracts" and the promotion of "judicial efficiency" as justifications for the relief sought. (Motion ¶ 39). However, Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Dairy Mart Conv. Stores* 351 F.3d at 92 (citing *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). The Debtors have no right outside of bankruptcy to impose their proposed ADR procedures. The Bankruptcy Code does not give the Debtors any right to impose their proposed ADR procedures, nor does the General Order authorize the ADR procedures that the Debtors seek. Accordingly, the Court should deny the Motion.

### IV.     The Motion's proposed notice procedures are inadequate.

17.     Wells Fargo also objects to the Motion's proposed notice provisions. The Debtors seek permission to commence ADR proceedings by sending an ADR Dispute Package to Wells Fargo by hand delivery, first class mail, or overnight mail. (Motion ¶ 15). Wells Fargo objects to the extent that the Motion does not specify the address to which the Debtors must deliver the ADR Dispute Package, and Wells Fargo objects to any attempt by the Debtors to establish procedures that would permit the Debtors to commence ADR proceedings without sending an ADR Dispute Package to the following addresses:

> Michael F. Doty
> Faegre & Benson LLP
> 2200 Wells Fargo Center
> 90 South 7th Street
> Minneapolis, MN 55402

       Mary L. Sohlberg
       Wells Fargo Bank, National Association
       MAC N9311-161
       625 Marquette Avenue
       Minneapolis, MN 55479

### **Conclusion**

WHEREFORE, for the reasons set forth herein, Wells Fargo respectfully requests that this Court: (A) deny Debtors' Motion; and (B) grant such other and further relief as the Court shall deem just.

| | |
|---|---|
| July 31, 2009 | /s/ Michael M. Krauss |
| | Stephen M. Mertz |
| | Michael M. Krauss (MK-9699) |
| | Michael F. Doty |
| | Faegre & Benson LLP |
| | 2200 Wells Fargo Center |
| | 90 South Seventh Street |
| | Minneapolis, MN  55402-3901 |
| | Telephone: (612) 766-7000 |
| | Facsimile: (612) 766-1600 |
| | |
| | ATTORNEYS FOR WELLS FARGO BANK, NATIONAL ASSOCIATION, IN ITS CAPACITY AS TRUSTEE PURSUANT TO VARIOUS TRUST AGREEMENTS |

fb.us.4275430.05