Hearing Date and Time: August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)

MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Alan E. Gamza (AG-2014)
Christopher J. Caruso (CC-8005)
Tel: (212) 554-7800

-and-

MULLEN HOLLAND & COOPER P.A.
301 South York Street
Gastonia, North Carolina  28052
Mark Heavner
Tel: (704) 864-6751

*Co-counsel to Gaston Christian School, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al., ) | Case No. 08-13555 (JMP) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

**OBJECTION OF GASTON CHRISTIAN SCHOOL, INC. TO DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS AND JOINDER IN THE OBJECTIONS OF THE HOTCHKISS SCHOOL AND WELLMONT HEALTH SYSTEM THERETO**

Gaston Christian School, Inc. ("GCS"), a counterparty to an interest rate swap with Lehman Brothers Special Financing Inc. ("LBSF"), by and through its undersigned counsel, hereby files this Objection to the above-captioned debtors' (collectively, the "Debtors") Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts (the "Motion") and joins in the objections of The Hotchkiss School

("Hotchkiss") and Wellmont Health System ("Wellmont") thereto. In support thereof, GCS respectfully represents as follows:

## BACKGROUND

1. GCS is a not-for-profit North Carolina corporation that operates a non-denominational Christian school that provides education for children from pre-school up to and through high school.

2. On or about October 24, 2007, GCS and LBSF, one of the Debtors, entered into a 1992 ISDA Master Agreement (Local Currency-Single Jurisdiction) as supplemented by the Schedule (the "Schedule") and Credit Support Annex ("Annex", and together with the Master Agreement and the Schedule, the "Swap Agreement"). In addition, the obligations of LBSF under the Swap Agreement are unconditionally guaranteed by the lead Debtor, Lehman Brothers Holdings Inc. ("LBHI").

3. On or about September 15, 2008, and October 3, 2008, respectively, LBHI and LBSF filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4. On or about July 20, 2009, the Debtors filed the Motion.

5. GCS does not know whether or not the Debtors contend it is a counterparty to a Derivative Contract with Recovery Potential.[1] GCS files this Objection out of an abundance of caution and reserves its rights to further supplement this Objection.

---

[1] Defined terms not otherwise defined herein shall have the same meaning ascribed to them as set forth in the Motion.

772042     2

**OBJECTION**

6. CGS objects to the Motion on the grounds set forth below and joins in the arguments contained in the objections of Hotchkiss and Wellmont, which are incorporated herein by reference.

7. In considering the Derivative ADR Procedures and the concerns raised by GCS thereto, this Court should take into account that the Swap Agreement does not provide for any such procedures and that the Debtors are seeking to modify GCS' contractually agreed upon rights.

8. The Debtors' request to grant the mediator the broad and unprecedented power to "certify specific legal issues to the Court for decision" (Motion at ¶ 25) is beyond the powers granted to a mediator under General Order M-143 and is inconsistent with the concept of non-binding mediation. The Debtors' admit, "[t]he fundamental purpose of mediation is to allow an unbiased third party to assist adversaries in reaching resolution of issues upon which they agree." Motion at ¶ 39. Authorizing the mediator to certify legal issues for the Court to decide is inconsistent with that purpose.

9. The Derivative ADR Procedures, if adopted, would also unnecessarily burden non-debtor counterparties by requiring that the party representative or non-attorney principal with settlement authority be present at any mediation conference, which are to be held in New York. Motion at ¶ 28; Proposed Order at ¶ 10(f). The purpose of mediation is to be a flexible and economic process to resolve disputes. Requiring physical attendance for counterparties such as GCS in New York does not serve that purpose. There is no reason why physical attendance should be required when participation telephonically would suffice. To require GCS' (a not-for-profit school) representative or non-attorney principal with settlement authority to travel from

North Carolina (or face severe sanctions) to attend any conference in New York would be burdensome and would cause it to incur needless expenses.

10.     The Derivative ADR Procedures, if approved, would permit the Debtors, upon application to this Court, to move for sanctions (in the full amount it claims to be owed) against a non-debtor counterparty that allegedly fails to participate in the Derivative ADR Procedures in good faith.  No provision of General Order M-143 permits a party to a mediation apply to the Court for sanctions.  Rather, General Order M-143 provides that the mediator is to report the non-cooperation of party during mediation, which "may result in the imposition of sanctions by the court."  General Order M-143 at ¶ 3.2.  Moreover, the proposed sanctions are draconian and are not contemplated by General Order M-143.  To the extent the Debtors are permitted to move for sanctions, it should be made clear that they must abide by the confidentiality provisions of General Order M-143.

11.     To the extent that a party is permitted to move for sanctions, there should be a level playing field.  As drafted, the Derivative ADR Procedures do not make available the same sanctions to the Debtors and non-debtor counterparties.  During the Notice/Response Stage, the Debtors' may move for sanctions if the non-debtor counterparty fails to timely respond to the Debtors' Derivatives ADR Notice, but no similar ability is granted to the non-debtor counterparty if the Debtors fail to timely reply to such response.  Motion at ¶ 20; Proposed Order at ¶ 8(d).  Instead, if the Debtors fail to reply, the dispute merely proceeds to the Mediation State.  *Id*.  Similarly, the Debtors' may seek an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice, but if a non-debtor counterparty asserts a counterclaim for damages under the applicable derivative contract, the procedures do not provide the non-debtor counterparty with the right to be awarded such damages.  *Compare* Proposed Order at ¶

772042                                                     4

12(a) *with* Proposed Order at ¶ 12(b).  The Court should not approve separate and distinct sanctions for the Debtors and non-debtor counterparties.  Both parties should be able to seek an award of the same sanctions.

12. Finally, GCS seeks confirmation that GCS would not be liable for the fees and costs of the mediator.

13. The procedures provide that "the party who requests the Mediation shall pay the reasonable fees and costs charged by the Mediator", Motion at ¶ 30.  However, under the Derivative ADR Procedures, the Debtors have the sole discretion to designate a Derivatives ADR Dispute be subject to such procedures.  Motion at ¶ 15; Proposed Order at ¶ 3.  It should be clear that if the Debtors' designate a Derivatives ADR Dispute be subject to the Derivative ADR Procedures this constitutes a "request" for mediation and the Debtors' estates should be responsible to pay for the fees and costs of the mediator.

14. It would be inherently unfair for a non-debtor counterparty to be required to pay the fees and costs of the mediator where the decision to subject a Derivatives ADR Dispute to the Derivative ADR Procedures lies solely with the Debtors and the non-debtor counterparty is mandated to participate in such procedures.[2]

---

[2] In addition, the Derivative ADR Procedures seek to have GCS pay its owns counsel fees and other costs of mediations, which is inconsistent with the expense provision of the Swap Agreement.  Motion at ¶ 9.  Under the Swap Agreement, the Debtors, as the defaulting party required to indemnify and hold GCS harmless for any expenses incurred in connection with the enforcement and protection of GCS' rights under the Swap Agreement. Swap Agreement at ¶ 9.

772042                                                          5

## **CONCLUSION**

GCS respectfully requests that the Court deny the Motion or, in the alternative, modify the requested procedures as set forth in this Objection and that it provide GCS with such other and further relief as it deems just and proper.

Dated: July 31, 2009
New York, New York

    MOSES & SINGER, LLP

    By:   /s/ Alan E. Gamza
         Alan E. Gamza (AG-2014)
         Christopher J. Caruso (CC-8005)
         The Chrysler Building
         405 Lexington Avenue
         New York, NY 10174
         (212) 554-7800

    -and-

    MULLEN HOLLAND & COOPER P.A.
    Mark Heavner
    301 South York Street
    Gastonia, North Carolina  28052
    (704) 864-6751

    Co-counsel to Gaston Christian School, Inc.

772042                    6