Hearing Date and Time: August 5, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 31, 2009 at 4:00 p.m. (Prevailing Eastern Time)

**EDWARDS ANGELL PALMER & DODGE LLP**
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411
Fax: (212) 308-4844
Larry D. Henin
Paul J. Labov

And

**EDWARDS ANGELL PALMER & DODGE LLP**
111 Huntington Avenue
Boston, MA 02199-7613
Telephone: (617) 239-0100
Facsimile: (617) 227-4420
Richard Hiersteiner
John L. Whitlock

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS, INC., | : | 08-13555 (JMP) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

**OBJECTION AND RESERVATION OF RIGHTS OF
MASSDEVELOPMENT/SALTONSTALL BUILDING REDEVELOPMENT
CORPORATION TO DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE
BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION TO
IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR
AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS**

MassDevelopment/Saltonstall Building Redevelopment Corporation (the "**Corporation**"), by and through its undersigned attorneys, hereby files this objection to the motion of Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors in the above-referenced chapter 11

BOS 732891.5                                  1

cases, including Lehman Brothers Special Financing Inc. ("**LBSF**," and together with LBHI and other affiliated debtors the "**Debtors**") for Authorization to Implementing Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivative Contracts (the "**ADR Procedures Motion**"). In support of this objection, the Corporation respectfully states as follows:

## PRELIMINARY STATEMENT

The Corporation and LBSF are parties to a certain International Swap Dealers Association, Inc. Master Agreement, which includes a Schedule and a Credit Support Annex (collectively, the "**Swap Agreement**"), and a certain swap transaction entered into thereunder (the "**Swap Transaction**"). An Event of Default, as defined in the Swap Agreement, has occurred and is continuing by reason of the filing of bankruptcy petition by LBSF and LBHI, its credit support provider under the Swap Agreement. The Corporation has the exclusive right under the Swap Agreement to terminate on account of these events of default. Unless and until it does (or the Debtor rejects the Swap Agreement under 11 U.S.C. §365), the Swap Agreement is "open", continues to operate in accordance with its terms, and neither party can assert a claim that it is ripe for mediation. Additionally, there is no right under the Swap Agreement to engage in mediation. Granting the Debtors a right to mediate a claim they have no present right to assert would be profoundly unfair to the counter party to "open" contracts, and it is unnecessary. The Debtors have already obtained authority for assignment and assumption of "open" contracts and can utilize the procedures they designed to capture and realize upon Derivative Contracts with Recovery Potential.[1] See Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contract [Docket No. 2257].

Moreover, the specific procedures proposed by the Debtors are unbalanced and weigh

heavily in favor of the Debtors. Special care must be exerted to insure that mediation procedures don't themselves prejudice the substantive rights of the parties.

Here, unfortunately, the mediation procedures do prejudice the Corporation by requiring:

a. Single mediator chosen by court and not the parties.

b. Abbreviated time frame.

c. *In terrorem* sanctions for failure to participate in "good faith" in "non binding" mediation.

## BACKGROUND

1. The Corporation and LBSF are parties to the Swap Agreement and the Swap Transaction.

2. Under the Swap Agreement, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default. See, Swap Agreement, Section 6.

3. Among other events, an Event of Default occurs under the Swap Agreement if a party or any "Credit Support Provider" of such party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law." See, Swap Agreement, Section 5(a)(vii)(4).

4. LBHI is designated as a Credit Support Provider in the Schedule in the Swap Agreement.

5. On September 15, 2008, LBHI filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code.

---

[1] Terms not defined herein are used as defined in the ADR Procedures Motion.
BOS 732891.5                                    3

6. On October 3, 2008, LBSF filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code.

7. The filing of the LBHI petition and the LBSF petition each caused a separate "Event of Default" to occur under the Swap Agreement.

8. Pursuant to Section 6(a) of the Swap Agreement, upon the occurrence of the Events of Default, the Corporation could exercise its rights to declare an early termination by notice specifying the relevant Event of Default and designating a day not earlier than the day such notice was effective as an Early Termination Date in respect of all outstanding transactions. The Corporation has not yet elected to do so.

9. Accordingly, the Swap Agreement remains in effect and the Swap Transaction is not terminated.

## ADR PROCEDURES MOTION

10. The Swap Agreement with the Corporation constitutes an open, pre-petition derivative contract. Whether it is a Derivative Contract with Recovery Potential is not clear and is not conceded.

11. According to the Debtors' Motion, there are approximately two-hundred fifty (250) Derivative Counterparties to Derivative Contracts with Recovery Potential. See, ADR Procedures Motion at ¶ 13.

12. The Debtors describe the Motion as an efficient, cost-effective alternative to the enforcement, through litigation or a claims process, of the Debtors' claims, if any, under the Derivative Contracts with Recovery Potential. See, ADR Procedures Motion at ¶ 15-33. However, for counterparties to open contracts, the effect is not merely procedural efficiency; it is

in effect the grant of a right to terminate derivative contracts to which the Debtors are not entitled.

## OBJECTION

### I. Right to Mediation Does Not Exist

#### A. Debtors Do Not Have the Right to Invoke ADR Procedures

13. On its face, the ADR Procedures Motion requires each Derivative Counterparty to participate in the Derivative ADR Procedures required by the Debtors in their sole discretion, even for those agreements that have not been terminated and for which the Debtors do not have the right to terminate. See, ADR Procedures Motion at ¶ 16.

14. Pursuant to the express terms of the Swap Agreement, under the circumstances only the Corporation may terminate the Derivative Contract with the Debtors. The Debtors have no such rights to terminate under the Swap Agreement (presumably, if they could have terminated, they would have), no claim under an "open" agreement, and no contractual recourse to mediation in any event.

15. This court should not allow the Debtors to manufacture a "virtual" substantive claim in the guise of procedural efficiency. See In re PSA, Inc., 335 B.R. 580, 588 (Bankr. D. Del. 2005) ("the filing of a bankruptcy petition does not permit a debtor in possession to enjoy greater contract or property rights than it possessed outside of bankruptcy case."); see also In re Gull Air, Inc., 890 F.2d 1255, 1261 (1st Cir. 1989) ("The Bankruptcy Code does not create or enhance property rights of a debtor."); Valley Forge Plaza Assocs. v. Schwartz, 114 B.R. 60, 62 (E.D. Pa. 1990) ("A debtor in bankruptcy has no greater rights or powers under a contract than the debtor would have outside of bankruptcy"); In re Island Helicopters, Inc., 211 B.R. 453, 464 (Bankr. E.D.N.Y. 1997) ("The filing of a bankruptcy petition does not expand the debtor's rights against others more than they exist at the commencement of the case"). This is especially true

because the Debtors have rights to reject or to assume and assign derivative contracts without impermissibly trampling the rights of the counterparties.

### B. The Swap Agreement is not Subject to Mediation under the General Order

16. Under the United States Bankruptcy Court of the Southern District of New York's General Administrative Order M-143 ("General Order M-143") only an "adversary proceeding, contested matter or other dispute" is the type of matter that is subject to mediation.

17. The Debtors purport to base the Motion on General Order M-143, (See, ADR Procedures Motion at ¶ 8) but in fact expand it significantly to justify mediation even though no dispute, controversy or adversary proceeding currently exists, or could presently exist, either in or outside of bankruptcy.

18. Debtors' reliance on the Southern District of New York cases is misplaced because mediation proceedings in those cases were compelled by the bankruptcy court over adversary proceedings or actual controversies that had already existed or could have existed at the time the orders compelling mediation were issued. See ADR Procedures Motion at ¶ 38 (citing In re Enron et al., Case No. 01-16034 (ALG) and In re Ames Department Stores, Inc., et al. Case No. 01-42217).

19. This court cannot find a basis for mediation where no basis exists under this Court's General Order M-143 and must deny the ADR Procedures Motion.

## II. The Actual Procedures Sought are Prejudicial to Counterparties

### A. The Counterparty Must Have the Ability to Participate in the Choice of Mediator

20. Under the ADR Procedures Motion, the Debtors request that the Court to choose a mediator. This procedure deprives the Derivative Counterparties of any right in the selection process contrary to section 2.2(A) of General Order M-143 which states:

The parties will ordinarily choose a mediator from the Register for appointment by

BOS 732891.5                                6

the Court. If the parties cannot agree upon a mediator within seven (7) days of assignment to mediation, the court shall appoint a mediator and alternate mediator.

General Order M-143, § 2.2(A).

21. Under the ADR Procedures Motion, only in the event that the Court's selected mediator is unwilling or unable to serve, do the Derivative Counterparties have any choice in the selection of the mediator. The Debtors' procedure not only turns this Court's General Order M-143 on its head but it also unjustly deprives the Derivative Counterparties of a choice in the mediator.

### B. Sanctions are Punitive in Nature and Intended to Force Counterparties to Settle

22. Neither the contractual agreements between the Derivative Counterparties and Debtor nor bankruptcy law can justify the draconian sanctions that the Debtors seek to impose for the failure to follow the Debtors' proposed procedures in the ADR Procedures Motion. Failure to abide by the arbitrary and arduous procedures set forth by the Debtors can result in sanctions that may include "an award of the Derivatives ADR Dispute up to the amount specified in the Debtor's Derivatives ADR Notice." See, ADR Procedures Motion at ¶ 29. The Debtor's proposed sanctions have the effect of converting the Debtors' entire demand amounts into sanction amounts and consequently have the practical effect of transforming the monetary sanctions into a satisfaction of the Debtor's demand, akin to an order granting dismissal or summary judgment upon the merits. See e.g. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) ("[d]ismissal of a party's complaint or answer, or striking its defenses, as a sanction ... is a heavy punishment," appropriate "only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders") citing In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1305-06 (11th Cir. 2006).

23. Sanctions are meant to be a deterrent for bad actions, not a substitute for a judicial determination on the merits. See Insurance Corp. of Ireland, 456 U.S. 694 (1982) (Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.); see also Hammond Packing Co. v. Arkansas, 212 U.S. 322, 350-51 (1909). Such a harsh penalty for failure of "good faith" to abide by the Debtors' procedures without basis in contract or in bankruptcy law is unwarranted, unjustifiable, and must not be permitted by this Court. Societe Internationale v. Rogers, 357 U.S. 197, 209-10 (1958), citing Hammond Packing Co., 212 U.S. at 350-51 ("[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.").

### C. The Timelines Provided Under the ADR Procedures are Inconsistent and Inadequate

24. Even if the Debtors did have a right to mediate a current dispute over a Swap Agreement and thus compel alternative dispute resolution procedures, they seek a pace not justifiable for the complicated, derivative contracts at issue and seek procedures that are inconsistent.

25. The ADR Procedures requested by the Debtors are broken down into the Notice/Response Stage and the Mediation Stage.

26. The initial step is the Notice Response Stage. According to the ADR Procedures, once the Debtors unilaterally determine that the ADR Procedures will apply to a particular Derivative Counterparty by sending the ADR Derivative Package, the Derivative Counterparty is given only twenty (20) calendar days to respond at which point, the Debtors will have fifteen (15) days to reply. See, ADR Procedures Motion at ¶¶ 19-20. Such a short response time is

unreasonably prejudicial to the Derivative Counterparty given the "complex nature of the Derivative Contracts." See, ADR Procedures Motion at ¶ 12.

27.    To the extent the parties are not able to come to a resolution, the Mediation Stage will automatically ensue. See, ADR Procedures Motion at 20.

28.    In an effort to abbreviate an already abbreviated schedule, the Debtors have reserved their rights to immediately request a settlement conference (a "Notice of Settlement Conference") to be held **within five (5) days** of receipt of the Notice of Settlement Conference, See, ADR Procedures Motion at ¶ 21 (emphasis added).    Within two (2) days of the Notice of Settlement Conference, the counterparty must either accept the proposed date and time or propose an alternate date and time that is no later than five (5) days from the original request. From the outset, then, the Debtors' timeframe contradicts itself.  Should the Debtors request a hearing on the first or second day after a Derivative Counterparty's receipt of the Notice of Settlement Conference, the Derivative Counterparty may find itself in violation the paragraph 21 of the ADR Procedures Motion and exposed to sanctions, even when it responds with an alternate date within two days of receipt as required by the same section of ADR Procedures Motion. The following is an illustration of the inherent contradiction in the ADR Procedures Motion.

>Day 1: Counterparty Receives Derivative ADR Package.

>Day 2: Debtor requests Settlement Conference to be held on Day 3 (must be held within five (5) days of receipt of such request).

>Day 3: Settlement Conference held, Counterparty does not respond. Debtor may move for sanctions.

>Day 4: Counterparty given right under ADR Procedures Motion to request additional date.

34. Moreover, while some organizations and companies may have an ability to abide by such compressed deadlines, the Corporation, which is a single purpose entity, has significant logistical issues in obtaining consents to its actions and cannot be expected to respond under the deadlines that the Debtors have proposed.

### D. Loss of Jury Right Unfair

35. The ADR Procedures Motion provides that to the extent a Derivatives Counterparty affirmatively chooses mediation, it waives a right to a jury trial that may otherwise exist. See ADR Procedures Motion at ¶31. However, the Debtors' proposed procedures do not contemplate that parties "choose" mediation. Instead, the ADR Procedures Motion provides that the Debtors and the Derivative Counterparty "together will contact the mediator" if the Notice/Response period passes without a settlement. See ADR Procedures Motion at ¶20. Such a structure should not result in the waiver of a Derivative Counterparty's fundamental right.

## MEMORANDUM OF LAW

Because the legal points and authorities upon which this Objection relies are incorporated herein, the Corporation requests that the requirement of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the southern District of New York be deemed satisfied or waived.

## RESERVATION OF RIGHTS

The Corporation reserves its rights to join in any other objections or responses which may be filed in connection with this matter. The Corporation reserves all other rights and nothing contained herein shall be construed as an admission or waiver of any rights or claims that the Corporation may be entitled to assert.

## CONCLUSION

**WHEREFORE**, the Corporation respectfully requests that, unless the parties reach an agreement with the Debtors with respect to the ADR Procedures Motion, this Court (i) enter an order denying the ADR Procedures Motion and (ii) grant the Corporation such other and further relief as this Court deems just and proper.

Dated: July 31, 2009

    New York, New York

By: /s/ Paul J. Labov
EDWARDS ANGELL PALMER
& DODGE LLP
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411
Fax: (212) 308-4844
Larry D. Henin
Paul J. Labov

and

EDWARDS ANGELL PALMER
& DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
Telephone: (617) 239-0100
Facsimile: (617) 227-4420
Richard Hiersteiner
John L. Whitlock
*Counsel for MassDevelopment/Saltonstall Building Redevelopment Corporation*