DRINKER BIDDLE & REATH LLP
140 Broadway, 39th Floor
New York, New York 10005-1116
Stephanie Wickouski
Telephone:    (212) 248-3170

—and—

DRINKER BIDDLE & REATH LLP
1500 K. St., NW - Suite 1100
Washington, DC 20005-1209
Kristin K. Going
Telephone: (202) 230-5177

Attorneys for Parsec Trading Corp.

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :
                                              : Chapter 11
LEHMAN BROTHERS HOLDINGS, INC., et al.,       : Case No. 08-13555-JMP
                                              :
                                              : Jointly Administered
            Debtors.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LIMITED OBJECTION OF PARSEC TRADING CORPORATION TO DEBTORS'
MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND
GENERAL ORDER M-143 FOR AUTHORIZATION TO IMPLEMENT ALTERNATIVE
DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF
<u>DEBTORS UNDER THE DERIVATIVE CONTRACTS</u>**

Parsec Trading Corp. ("Parsec") by and through its undersigned counsel, respectfully submits this limited objection (the "Objection") to the Debtors' Motion for an order, pursuant to section 105(A) and General Order M-143 For Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under the Derivative Contracts (the "Motion").  In support of the Objection, Parsec respectfully states as follows:

DC01/ 2257271.1

**Factual Background**

1.      Parsec and Lehman Brothers Special Financing, Inc. ("LBSF") entered into an ISDA Master Agreement dated April 21, 1997 (the "Swap Agreement"), pursuant to which Parsec agreed to pledge certain collateral to LBSF to secure Parsec's obligations under the Swap Agreement.

2.      Parsec and LBSF also entered into a Swap Collateral Agreement (the "Collateral Agreement") with The Chase Manhattan Bank ("Chase") dated as of August 25, 1999, whereby Chase held Parsec's pledged excess collateral, as defined in the Collateral Agreement (the "Collateral").  The intent and purpose of the Collateral was to protect LBSF in the event that Parsec defaulted under the Swap Agreement or did not have sufficient funds to pay LBSF at the termination of the Swap Agreement.  Clearly that is not what happened in this instance, and the Collateral must be returned to Parsec.

3.      Commencing on September 15, 2008, Lehman Brothers Holdings, Inc. and certain of its subsidiaries, including LBSF (the "Debtors") filed voluntary chapter 11 petitions under title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      LBSF's bankruptcy filing constituted an event of default under the Swap Agreement, and pursuant to section 6(a) of the Swap Agreement, Parsec terminated the Swap Agreement by notice dated September 15, 2008.  Parsec also provided LBSF with a statement of

calculations following early termination, dated September 25, 2008. On September 26, 2008, Parsec provided Chase written notice of termination and requested return of the Collateral.

5.  LBSF is currently holding $ 49,487,274.05 plus interest from Parsec. Based upon the termination notice of calculations that Parsec sent to LBSF, the value of the portfolio was $ 46,737,917.55. Therefore, LBSF is not owed any additional amounts, but instead owes a return of margin, plus interest and expenses to Parsec. However, in addition to the above, Chase was holding $ 13,000,000.00 in notional value of treasury notes, which constituted the Collateral. Thus, Parsec is entitled to the return of the entire amount of the Collateral.

6.  On December 10, 2008, Parsec filed a motion (the "Automatic Stay Motion") seeking either (i) a determination that the automatic stay provisions did not apply to the Swap Collateral Agreement or (ii) relief from the automatic stay so that Parsec could terminate the Swap Collateral Agreement and obtain the return of the Collateral held by Chase.

7.  LBSF, the Committee and Parsec continued the Automatic Stay Motion numerous times and negotiated over the computation and valuation of the trades resulting from the termination of the Swap Agreement.

8.  LBSF and Parsec reached an agreement as to the valuation of the portfolios, concluding that Parsec was entitled to the full amount of the Collateral. After initially agreeing with LBSF and Parsec's resolution of the Automatic Stay Motion, the Committee then changed its mind and indicated that it needed further time to complete its analysis. Thus, Parsec, LBSF and the Committee entered into a Stipulation and Order entered March 11, 2009, a copy of which is attached hereto as Exhibit A, whereby LBSF and the Committee agreed to allow the release of $ 9,000,000 of the Collateral held by Chase, with the understanding that the Committee would

complete its review and analysis of the trades and determine its position as to whether Parsec was entitled to the remaining $ 4,000,0000 of the Collateral still being held by Chase.

9.  Parsec has attempted to negotiate in good faith with the Committee since March regarding the Committee's review of these trades. To date, the Committee has refused to complete its analysis of the trades and valuations, despite the fact that LBSF concluded in March that it agreed with Parsec's valuation.

10. Parsec has already spent an inordinate amount of time and legal fees attempting to recover its Collateral, it should not be subject to an entirely new process, which will only serve to continue to delay the return of the Collateral, and impose additional costs on Parsec.

11. Specifically, as set forth in the Motion, only the Debtors can initiate a Derivatives ADR Dispute, and there is no timetable in which the Debtors must do so. The Motion seeks to make the participation in such procedures mandatory for each Derivative Counterparty, thereby depriving Parsec from its right to seek Court authority for the return of its remaining Collateral. Furthermore, the Motion may even allow LBSF to renegotiate the Parsec valuations it has already agreed to.

12. The proposed alternative dispute resolution procedures should not be made applicable to Parsec, in light of the prior agreements, proceedings and negotiations between the parties and Parsec's ongoing efforts to resolve the remaining valuation concerns of the Committee. To subject Parsec to a new and lengthy process would be inequitable. If Parsec needs to file yet another motion to resolve the remaining valuation issues with the Committee, it should not be prevented from doing so.

13. Thus, any order approving the procedures set forth in the Motion should exempt Parsec and should provide that Parsec is permitted to pursue any and all remedies with regard to the remaining Collateral, based upon the fact that it has been attempting to resolve the valuation issues with LBSF and the Committee since it filed the Automatic Stay Motion in December 2008.

Dated: July 31, 2009

By: */s/ Stephanie Wickouski*
Stephanie Wickouski
DRINKER BIDDLE & REATH LLP
140 Broadway, 39th Floor
New York, New York 10005-1116
Telephone: (212) 248-3170
Facsimile: (212) 348-3141

—and—

Kristin K. Going
DRINKER BIDDLE & REATH LLP
1500 K. St., NW - Suite 1100
Washington, DC 20005-1209
Telephone: (202) 230-5177
Facsimile: (202) 842-8465

Attorneys for Parsec Trading Corp.