Brian Trust (BT-0347)
Jeffrey G. Tougas (JT-5533)
Amit Trehan (AT-4677)
**MAYER BROWN LLP**
1675 Broadway
New York, New York 10019
Tel. 212.506.2500
Fax 212.262.1910

*Counsel to Société Générale and*
*Canadian Imperial Bank Commerce*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                                               :
In re:                                                         :   Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                       :   Case No. 08-13555 (JMP)
                                                               :
                 Debtors.                                      :   (Jointly Administered)
                                                               :
-------------------------------------------------------------- x

**LIMITED OBJECTION TO DEBTORS' MOTION
PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY
CODE AND GENERAL ORDER M-143 FOR THE AUTHORIZATION
TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES
FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS**

TO:    THE HONORABLE JUDGE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE

Société Générale and certain of its affiliates (collectively, "**SG**") and Canadian Imperial Bank of Commerce and certain of its affiliates (collectively, "**CIBC**", and together with SG, the "**Objecting Counterparties**"), by and through their undersigned counsel, hereby file this limited objection (this "**Limited Objection**") to the Motion of Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors in the above-referenced Chapter 11 cases (together with LBHI, the "**Debtors**") Pursuant To Section 105(A) Of The Bankruptcy Code And General Order M-143 For The Authorization To Implement Alternative Dispute Resolution Procedures For

17579423

Affirmative Claims Of Debtors Under Derivative Contracts (Docket No. 4453) (the "**Motion**").[1] In support thereof, the Objecting Counterparties respectfully represent as follows:

## BACKGROUND FACTS

1. SG is party to various derivative agreements between SG and certain of the Debtors (collectively, the "**SG Derivative Agreements**"). In addition, SG holds claims against LBHI and such other applicable Debtors under various guarantees issued by LBHI and such other applicable Debtors in connection with the SG Derivative Agreements.[2]

2. In particular, and as further detailed in *Libra CDO Limited et al v. Lehman Brothers Special Financing Inc.*, Case no. 09-01178 (JMP), SG is party to certain transactions with Libra CDO Limited ("**Libra**"). Libra is party to certain transactions with Lehman Brothers Special Financing Inc. ("**LBSF**"), which transactions include Derivative Contracts. SG also is party to certain transactions with MKP Vela CBO Limited ("**Vela**"). Vela is party to certain transactions with LBSF, which transactions include Derivative Contracts.

3. CIBC is party to various derivative agreements between CIBC and certain of the Debtors (collectively, the "**CIBC Derivative Agreements**"). In addition, CIBC holds claims against LBHI and certain other Debtors under various guarantees issued by LBHI and such other Debtors in connection with the CIBC Derivative Agreements.

4. In addition, CIBC is the holder of a Class A-1 Note issued by Pyxis ABS CDO

---

[1] Terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2] SG entities are parties to derivative and other financial agreements with other Lehman affiliates including but not limited to Lehman Brothers, Inc. and Lehman Brothers International (Europe). The failure to address such agreements in the context of this objection intends no waiver of any right of SG under or in connection with such agreements. To the extent the motion intends to affect rights of SG under or in connection these additional agreements, SG objects to it on the bases set forth herein and reserves its right to object on further and different grounds, including the jurisdiction of the Court. Additionally, SG specifically reserves all rights in any pending case or administration respecting such affiliates as well as to the assertion of such rights in any case, proceeding or controversy that might arise in the future.

17579423                                     2

2007-1 ("**Pyxis**").[3] Pyxis is a party to various derivative agreements with certain of the Debtors, which transactions include Derivative Contracts.

5.   On September 15, 2008 (the "**LBHI Petition Date**"), LBHI filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). LBHI was the ultimate parent company (either directly or indirectly) of each of the Lehman counterparties. LBHI also served as a credit support provider to certain Lehman counterparties under such Derivative Contracts. In such capacity, LBHI guaranteed the due and punctual payment of all amounts payable by such Lehman counterparties under their Derivative Contracts. On the LBHI Petition Date, LBHI's bankruptcy filing constituted an "Event of Default" under such Derivative Contracts, which entitled the Objecting Counterparties to terminate such Derivative Contracts.

6.   On October 3, 2008 and October 5, 2008, several LBHI subsidiaries filed voluntary petitions for relief under the Bankruptcy Code. In several of the Objecting Counterparties' Derivative Contract transactions, the commencement of bankruptcy cases by such LBHI subsidiaries entitled the Objecting Counterparties to terminate such Derivative Contracts. Additionally, LBIE and certain of its affiliates commenced administrations on September 15, 2008 under applicable law in the United Kingdom. Other LBHI affiliates similarly have commenced insolvency proceedings in foreign jurisdictions (collectively with

---

[3]   CIBC affiliates are parties to derivative and other financial agreements with other Lehman affiliates including but not limited to Lehman Brothers, Inc. and Lehman Brothers International (Europe). The failure to address such agreements in the context of this objection intends no waiver of any right of CIBC under or in connection with such agreements. To the extent the motion intends to affect rights of CIBC under or in connection these additional agreements, CIBC objects to it on the bases set forth herein and reserves its right to object on further and different grounds, including the jurisdiction of the Court. Additionally, CIBC specifically reserves all rights in any pending case or administration respecting such affiliates as well as to the assertion of such rights in any case, proceeding or controversy that might arise in the future.

17579423                                3

LBIE, the "**Foreign Debtors**").  The commencement of these proceedings also afforded a contractual right for the Objecting Counterparties to terminate affected Derivative Contracts.

7. On July 20, 2009, the Debtors filed the Motion.

## OBJECTION

8. By its Motion, Debtors' seek to approve Derivatives ADR Procedures with respect to Derivative Contracts with Recovery Potential.  The Objecting Counterparties do not object, as a general matter to the concept of subjecting certain appropriate Derivative Contracts to a mediation process.  However, for the reasons set forth below, the Objecting Counterparties do object to the Derivatives ADR Procedures that the Debtors propose to govern such mediation, as they give the Debtors an unfair advantage.  Moreover, the Objecting Counterparties object to the proposed Derivatives ADR Procedures because they contain numerous ambiguities, and are otherwise inconsistent with General Order M-143 (as amended by General Order M-211, "**M-143**"), the standing order governing ADR procedures in the Bankruptcy Court.  Accordingly, the Motion should be denied in its current form, and/or the proposed Derivatives ADR Procedures should be modified in order to correct the issues raised by this Limited Objection.

    **A.**    **The Debtors' Unilateral Right to Force Mediation In Any Dispute Involving Derivative Contracts Is Inconsistent With M-143**

9. Under Section 1.1 of M-143, a court may order assignment of a matter to mediation (i) upon its own motion, or (ii) upon a motion of any party in interest or the U.S. Trustee.  Furthermore, "**[t]he motion by a party in interest must be filed promptly after filing the initial document in the matter**."  M-143, Section 1.1 (emphasis added).  Section 9.1 of M-143 also speaks to assignment of matters to mediation and states that "[t]he court may refer a dispute *pending before it* to mediation…" Id. at Section 9.1 (emphasis added).

17579423                                              4

10. Thus, M-143 always contemplated that (i) only disputes currently pending before the court could be subjected to mediation, and (ii) the court would determine whether a particular matter was appropriate for mediation, having seen at least initial documents relating to the dispute. However, under Debtors' proposed Order, "[a]ny Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures." Order, ¶3. Contrary to M-143, under the proposed Order, a dispute need not be pending before the Court before it is assigned to mediation. Even though the Debtors are already aware of at least 250 Derivative Contracts with Recovery Potential they would subject to the Derivatives ADR Procedures, no pleadings shall have been filed regarding such disputes, and the Court will have no prior knowledge of the disputes prior to its assignment to mediation. Perhaps most importantly, it will have been the Debtors' unilateral decision, rather than a decision of the Court or mutual agreement of the parties, that sends a particular dispute to mediation.

11. Even in the cases Debtors cite to their cause, the disputes were already before the court through adversary proceeding filings prior to their assignment to mediation (*In re Enron Corp., et al.*, Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. March 4, 2003) (Docket No. 9533) and (Bankr. S.D.N.Y. March 20, 2003) (Docket No. 9862) (Court designated 25 existing adversary proceedings and future filed adversary proceedings for mediation); *In re Ames Department Stores, Inc.*, et al., Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007) (Docket No. 3195) (upon motion by the Debtors, Court designated approximately 900 existing adversary proceedings for mediation). At the least, Debtors should be required to post to the docket its initial list of Derivative Contracts with Recovery Potential, and update such list on a regular (perhaps monthly) basis. This would provide parties in interest notice and an opportunity to be heard on a particular dispute.

12. These provisions, inconsistent with M-143, are made all the worse because only the Debtors have the right to subject a Derivatives Contract dispute to the Derivatives ADR Procedures. The Objecting Counterparties submit that all parties in interest should be able to submit Derivatives Contracts to the Derivatives ADR Procedures. This is necessary for two reasons: first, a Derivative Counterparty should be able to subject an individual Derivative Contract dispute for mediation, just as the Debtors can under the proposed Order; second, a Derivative Counterparty should be able to prevent the Debtor from "cherry picking" individual Derivative Contracts that are part of a larger transaction for mediation. Similar to the maxim that if an executory contract is assumed, it must be assumed in its entirety, so too should multiple Derivative Contracts which are part of a larger transaction not be excluded from mediation by virtue of Debtors' unilateral right of selection. *See e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *In re PCH Assoc.*, 804 F.2d 193, 199 (2d Cir. 1992).

### B. The Proposed Mediator Selection Process Is Inconsistent With M-143

13. Under the proposed Order, contrary to the substance and spirit of M-143, the initial mediator shall have been selected without any consultation from Derivative Counterparties. Appointment of a mediator should be by mutual agreement of the parties, consistent with Section 2.2 of M-143. Moreover, Debtors have provided absolutely no explanation as to why the Derivative Counterparties should be denied the right to be involved in the selection process.

14. Derivative Counterparties, including the Objecting Counterparties, should know the criteria upon which the initial mediator was selected, and that such mediator's qualifications are well suited to the mediation of disputes involving highly complex derivative transactions. Moreover, any order approving any of the relief requested in the Motion should require that the initial mediator and all other mediators meet all of the other requirements of Section 2 of M-143.

15. Given the fact that, by the Debtors' own estimate, Debtors are party to more than 900,000 Derivative Contracts, have already identified 250 Derivative Contracts subject to dispute, and have guaranteed there will be additional Derivative Contracts they would subject to the Derivative ADR Procedures, it is unrealistic to assume that a single mediator can handle the numerous disputes.  In the likely event that, similar to *Ames*, a pool of mediators is appointed to deal with Derivative Contracts with Recovery Potential, such pool should be selected upon consultation with all parties in interest, and selection of a mediator from such pool for a particular Derivatives ADR Dispute should be made by mutual agreement of the parties, and by the Court, if the parties cannot agree, consistent with M-143.

16. The Motion provides that mediation proceedings will take place in New York, New York unless agreed upon the parties and the mediator.  Motion, ¶26.  The addition or elimination of mediation locations will be within the sole discretion of the Debtors.  Motion, ¶26.  Once again, the Debtors' proposed procedure is in conflict with M-143.  Section 3.1 of M-143 provides that "upon consultation with all attorneys and *pro se* parties subject to the mediation, the mediator shall fix a reasonable time and place of the initial mediation conference of the parties with the mediator . . . ."  The mediation location should be set only upon mutual agreement of the parties, consistent with M-143.

### C.  The Derivatives ADR Procedures Must Not Upend Existing Adversary Or Other Proceedings Or Actions

17. The Debtors should not be able to use the Derivatives ADR Procedures as a tool to disrupt existing litigation and negotiations.  Allowing the Debtors to do so may impair due process, and is a waste of judicial resources and the time and effort already expended by all parties in furtherance of such litigation and negotiation.  Accordingly, the Derivative Contracts

already subject, prior to the date of entry of such order, to proceedings or actions before this Court or in another forum, should not be subjected to the Derivatives ADR Procedures.

    **D.**    **Mediation Should Be Non-Binding**

18.     The essence of mediation is its non-binding nature. *See*, *e.g.*, *In re Interstate Cigar Co., Inc.*, 240 B.R. 816, 825 (Bankr. E.D.N.Y. 1999) ("as is true of all mediation, it is not binding on the parties or this Court"). Accordingly, the non-binding nature of any mediation conducted pursuant to the proposed Derivatives ADR Procedures should be made explicit in any order this Court ultimately approves.

    **E.**    **The Notice Provisions Are Insufficient**

19.     The Motion proposes that the Debtors will "designate a dispute as to any Derivative Contract with Recovery Potential" by serving a copy of an order approving the Motion and a Derivatives ADR Package on the Derivative Counterparty, the Derivatives' Counterparty's counsel, legal guardian, estate representative, or other representative. Motion, ¶15. This proposed notice provision is inconsistent with, and seeks to upend, the notice provisions which have been carefully negotiated between the Debtors and the Derivative Counterparties, including the Objecting Counterparties, in each respective Derivative Contract. The Derivatives ADR Procedures should not rewrite the notice provisions that have been previously agreed upon by the Debtors and the Derivative Counterparties; such preexisting provisions should continue to govern the responsibilities of the Debtors and the Derivative Counterparties.

20.     Failure to provide notice in accordance with the negotiated provisions of the Derivative Contract can result in prejudice to parties in interest with respect to such Derivative Contract. For example, Libra, Vela, and Pyxis are entities that were created by the Debtors. Such entities entered into direct swap agreements with the Debtors, while SG and CIBC served

as unfunded liquidity providers to the Debtor-created entities, effectively providing liquidity for Debtor-created entities in the respective transactions with the Debtors. Although it is the Debtor-created entities that are in direct contract with the Debtors, there is no dispute that SG and CIBC are parties in interest with respect to the disposition of the swaps between the Debtors and the Debtor-created entities. However, due to the ambiguities in the proposed notice provisions of the Motion and Order, SG and CIBC may not be noticed with respect to a related Derivatives ADR Dispute. The foregoing possibility is a perfect example why the Debtors should be required to comply with the preexisting notice provisions contained in the applicable Derivative Contract.

### F.     The Scope Is Unclear.

21.     As defined by the Debtors, the term "Derivative Contracts With Recovery Potential" is ambiguous and overbroad, if not an outright misnomer. The Motion defines the term as "terminated and open prepetition Derivative Contracts, including, but not limited to, swap agreements and forward contracts." Motion, ¶8. The Order defines the term as "numerous open and terminated derivatives contracts, including swap agreements and forward contracts." Order, Findings, p1. The Debtors allude to the fact that Derivative Contracts With Recovery Potential are, in the Debtors' opinion, "in the money to the Debtors." However, under the overbroad definitions in the Motion and Order, Debtors' opinion, even if mistaken, does not prohibit Debtors' from unilateral application of the Derivatives ADR Procedures to any given Derivative Contract. Thus, the term is inclusive of:

(a)     All Derivative Contracts (whether open or terminated) that Debtors *correctly* believe is "in the money";

(b)     All Derivative Contracts (whether open or terminated) that Debtors *mistakenly* believe is "in the money"; **and**

(c)     All Derivative Contracts (whether open or terminated) *that are not* "in the money" to Debtors.

17579423                                                    9

A more accurate statement would be that ***Debtors seek authority to unilaterally apply the Derivatives ADR Procedures to ANY Derivative Contract***, whether open or terminated, "in the money" or otherwise.  In utilizing the term "Derivative Contracts with Recovery Potential," Debtors have masked the true scope of the Order.

### G.    Debtors Have An Unfair Informational Advantage

22.    The Motion provides that the Debtors will serve the Derivative Counterparty "a notice containing *sufficient information* regarding the Debtors' affirmative claim and its demand for settlement."  (emphasis added).  Motion, ¶15.  In the Debtors' Omnibus Reply to Objections to Motion of Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), For Establishment of the Deadline For Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form (Docket No. 4113) ("**Omnibus Reply**"), the Debtors went to great lengths to explain the the necessity for certain information to justify the need for the Derivative Questionnaire.  Omnibus Reply, ¶¶8-22.  The Debtors warned the Court that the lack of information could significantly create an unfair advantage.

> Many of the Debtors' Derivatives Contracts counterparties have already denied the Debtors' requests for information and are, instead, seeking to use the information inequality to their advantage.  The current objections and refusal to provide the requested information are further attempts by certain counterparties to conceal the true value of the Derivative Contracts and avoid a thorough vetting of their claims amounts, or at least significantly delay such process and force the Debtors to expend extraordinary sums in the hopes that such leverage will compel the Debtors to ignore significant discrepancies.

Omnibus Reply, ¶16.  Thus, based on the Debtors' own reasoning, the "sufficient information" in the Derivative ADR Package must include the same information required under the Derivative Questionnaire in order to initiate a "good faith" mediation.

17579423                                                                 10

H. **The Objecting Counterparties Are Carved Out Of Previous Derivatives Orders**

23. Paragraph 4 of the proposed Order requires that any settlement of a Derivatives ADR Dispute must comply with the previously entered Derivatives Procedures Orders. However, Libra, Vela and Pyxis were carved out of these orders. Derivative Procedure Orders (Docket No. 2257), pp 14-15; (Docket No. 2667), p10. Requiring settlements to comply with these orders retrades upon the arrangement which the Objecting Counterparties previously reached with the Debtors. Accordingly, the proposed Order should provide that parties already exempt from the Derivatives Procedures Orders should not be required to comply with such orders as part of any settlement.

I. **Derivative Counterparties Who Have Not Submitted To This Court's Jurisdiction Should Not Be Required To Participate In Mediation**

24. Derivative Counterparties which have not submitted to the jurisdiction of this Court should not be required to participate in the Court-approved mediation process or be subject to mediation by the Court-appointed mediator. Accordingly, the Objecting Counterparties object to the Motion, to the extent it purports to encompass within this Court's jurisdiction, Derivative Counterparties or Derivative Contracts which are not subject to the jurisdiction of this Court.

J. **Certain Other Objections**

To the extent the Debtors persist in seeking the relief identified in the following paragraphs, the Objecting Counterparties make the following additional objections:

25. The Debtors seek the additional authority for the mediator to certify any legal issue to the Court. Order, ¶10. Given the non-binding and confidential nature of the proposed mediations, specific legal issues should not be certified to the Court without the express consent of the parties to the dispute. This was understood by the court in *Enron*, which added language to Debtors proposed order to require that affected parties must agree prior to certification of

17579423                                                    11

specific legal issues to the court. *Enron*, Docket No. 9533, p1, Docket No. 9862, p1. Moreover, as a practical matter, it would be difficult, if not impossible, to certify legal issues without breaching the confidentiality required under M-143 and the Derivatives Contract. Accordingly, this request should be stricken from the proposed Order or modified to require the consent of all parties to the dispute.

26. Paragraph 14 of the Order states that:

> Except to the extent a Derivatives Counterparty affirmatively chooses the mediation option set forth herein, participation in the Derivatives ADR Procedures shall not waive any right to a jury trial that might otherwise exist.

Order, ¶14. However, under the Order, the Mediation Stage is not optional. All Derivatives ADR disputes that are not resolved through the Notice/Response Stage automatically proceed to mediation. Order, ¶¶10, 20, 21. Therefore, it is unclear which party is "choosing" mediation. This ambiguity creates the potential that a counterparty can potentially lose the right to a jury trial they are otherwise entitled to under such counterparty's Derivative Contract(s). Any order approving any of the relief sought in the Motion should state, without qualification, that such order does not abrogate any party's existing right to a jury trial.

## JOINDER

27. The Objecting Counterparties also join in the objections filed by other parties in interest to the extent applicable to and consistent with the contents of this Limited Objection. They reserve their rights to make further and different objections at any hearing on the Motion.

## RESERVATION OF RIGHTS

28. Nothing in this Limited Objection shall constitute a waiver of, and the Objecting Counterparties reserve in all respects, their rights under their respective agreements, the Bankruptcy Code, and applicable State, Federal and foreign law, including (but not limited to)

the rights (i) to dispute that such agreements do not constitute executory contracts, (ii) to assert that that such agreements (1) constitute financial accommodations, (2) are subject to the "safe harbor provisions" of the Bankruptcy Code and (3) were validly terminated, and (iii) to institute an adversary proceeding to assert any of the issues presented herein.

## CONCLUSION

WHEREFORE, the Objecting Counterparties request that this Court deny the Motion and presently constituted, grant the relief requested herein and grant such other and further relief as this Court deems appropriate under the circumstances.

Dated: New York, New York
July 31, 2009

Respectfully Submitted,

By: /s/ Brian Trust_____

Brian Trust (BT-0347)
Jeffrey G. Tougas (JT-5533)
Amit Trehan (AT-4677)
**MAYER BROWN LLP**
1675 Broadway
New York, New York 10019
Tel. 212.506.2500
Fax  212.262.1910

*Counsel to Société Générale and Canadian Imperial Bank Commerce*

17579423                                       14