**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

Original

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

-6(NY) (0005).04       Page 11 of 17                            Initials:_____       Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Initials: _____

-6(NY) (0005).04        Page 12 of 17        Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time



-6(NY) (0005).04                    Page 13 of 17                    Initials:_____                    Form 3033 1/01

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to



the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

    (1) The promise or agreement that I failed to keep or the default that has occurred;

    (2) The action that I must take to correct that default;

    (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

    (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

    (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.



BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____    _____[signature]_____(Seal)
                                  RACHEL  L  HAMM              -Borrower

_____    _____(Seal)
                                                                -Borrower

_____(Seal)    _____(Seal)
                      -Borrower                                 -Borrower

_____(Seal)    _____(Seal)
                      -Borrower                                 -Borrower

_____(Seal)    _____(Seal)
                      -Borrower                                 -Borrower

STATE OF NEW YORK, ERIE                                                County ss:

    On the 08th    day of January, 2004    before me, the undersigned, a notary public in and for said state, personally appeared , RACHEL L HAMM

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

                                                                         Notary Public

Tax Map Information:

                                                        PATRICIA M. O'BRIEN
                                          Notary Public, State of New York
                                             Qualified in Erie County
                                     My Commission Expires Jun. 3, 20 __07__

# ADJUSTABLE RATE RIDER
(1 Year Treasury Index - Rate Caps)

Loan #: 0026279299

THIS ADJUSTABLE RATE RIDER is made this 08th day of January, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Cendant Mortgage Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
372 WOODLAND ~~KENMORE,~~ Drive Tonawanda NY 14223
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 4.375%. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of February, 2007, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER - ARM 5-2 - Single Family - Fannie Mae/Freddie Mac

Page 1 of 4        Initials: _____

D822R (111203).1

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seventy-Five / Hundredths percentage points (2.7500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 6.375% or less than 2.750%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.375%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Page 2 of 4              Initials: _____

D822R (111203).2

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** During the initial fixed rate period: If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

After the first interest rate change date: If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Page 3 of 4    Initials: _____

D822R (111203).3

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
RACHEL L HAMM                - Borrower                                 - Borrower

_____ (Seal)    _____ (Seal)
                             - Borrower                                 - Borrower

_____ (Seal)    _____ (Seal)
                             - Borrower                                 - Borrower

_____ (Seal)    _____ (Seal)
                             - Borrower                                 - Borrower

Page 4 of 4          Initials: _____

D822R (111203).4

TICOR TITLE INSURANCE COMPANY

Commitment Number: OKAY2003-0195

## SCHEDULE C
## PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

PARCEL A

All that tract or parcel of land, situate in the Town of Tonawanda, County of Erie, State of New York, being part of Lot No. 28, Township 12, Range 8 of the Holland Land Company's Survey and according to map filed in the Erie County Clerk's Office under Cover No. 1331 is known as the easterly 20 feet of Subdivision Lot No. 137 and the westerly 30 feet of Subdivision Lot No. 138.

PARCEL B

All that tract or parcel of land, situate in the Town of Tonawanda, County of Erie and State of New York, being part of Lot No. 29, Township 12, Range 8 of the Holland Land Company's Survey and according to map filed in the Erie County Clerk's Office under Cover No. 1374 is known as the southerly 40 feet of the easterly 12.24 feet of Subdivision Lot No. 7 and southerly 40 feet of the westerly 37.76 feet of Subdivision Lot No. 6.