# Exhibit A

Loan No.: HUN012691

# NEW YORK BALLOON NOTE
(Fixed Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

March 26, 2007            Irvine            California
[Date]                    [City]            [State]

167-02 111TH AVE, JAMAICA, NY 11433

[Property Address]

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $237,312.00         (this amount is called "Principal"), plus interest, to the order of Lender. Lender is BNC MORTGAGE, INC., A DELAWARE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       9.100 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st    day of each month beginning on May 1, 2007   .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 1, 2037         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at Chase Home Finance LLC, Attn: Financial Processing, Dept. 360, P.O. Box 24784 Columbus, OH 43224
or at a different place if required by the Note Holder

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $1,848.83

R1
NEW YORK BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT            Form 3260.33 1/01 (rev. 5/02)
Page 1 of 3
-870N(NY) (0205)            VMP MORTGAGE FORMS - (800)521-7291            Initials: D.S.

HUN012691

4. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

R1

HUN012691
Form 3260.33 1/01 (rev. 5/02)

-870N(NY) (0205)    Page 2 of 3    Initials: D·S

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DHANKUMARI SINGH        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                              -Borrower

*[Sign Original Only]*

-870N(NY) (0205)                          R1                          HUN012691
                                       Page 3 of 3                    Form 3250.33 1/01 (rev. 5/02)

Prepared by: **HIMA H. KOTGWAL**
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: 561-682-8835

## ALLONGE

BORROWERS: **DHANKUMARI SINGH**

PRESENTOWNER AND HOLDER: **BNC MORTGAGE, INC. AS SUCCESSOR BY MERGER TO FINANCE AMERICA, LLC.**

NOTE EXECUTION DATE: **MARCH 26, 2007**

NOTE AMOUNT: **$237,312.00**

      This allonge shall be annexed to the original Note (or to a copy of the Note with a Lost Note Affidavit if the original cannot be located), referenced above for purposes of transferring same from the present Owner and Holder of the Note, **BNC MORTGAGE, INC. AS SUCCESSOR BY MERGER TO FINANCE AMERICA, LLC.** ("Transferor") as of the date set forth below. As a result of said transfer, **BNC MORTGAGE, INC. AS SUCCESSOR BY MERGER TO FINANCE AMERICA, LLC.** has no further interest in the Note.

Date: _6/16/08_

      Pay to the order of

**WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OSI,**
without recourse, representation or warranty express or implied this ___16___ day of ___June___, 2008.

**BNC MORTGAGE, INC. AS SUCCESSOR BY MERGER TO FINANCE AMERICA, LLC.
BY ITS ATTORNEY-IN-FACT
OCWEN LOAN SERVICING, LLC**

By: _____
Name: Denise A. Marvel
Title: Manager of Document Control and Contract Management

OFB Loan Number: **40906240**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2007050200562004001E3A40 |

**RECORDING AND ENDORSEMENT COVER PAGE**  PAGE 1 OF 21

Document ID: 2007050200562004  Document Date: 03-26-2007  Preparation Date: 05-02-2007
Document Type: MORTGAGE
Document Page Count: 20

| PRESENTER: | RETURN TO: |
|---|---|
| RELS TITLE 657045-07 AS AGENT FOR FIRST AMERICAN TITLE INS. CO. 310 OLD COUNTRY ROAD STE 202 GARDEN CITY, NY 11530 516-746-6500 | BNC MORTGAGE, INC. 1901 MAIN ST IRVINE, NY 92614 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 10205 | 26 | Entire Lot | 167-02 111TH AVENUE |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year____ Reel __ Page ____ or File Number_____

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| DHANKUMARI SINGH 140 BROADWAY JERSEY CITY, NJ 07306 | "MERS" MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., P.O. BOX 2026 FLINT, MI 48501 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 237,312.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 237,312.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,186.50 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 2,373.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | $ | 593.25 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 681.90 | CITY OF NEW YORK | | |
| NYCTA: | $ | 0.00 | Recorded/Filed    05-14-2007 13:34 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 4,834.65 | 2007000249847 | | |
| Recording Fee: | $ | 137.00 | | | |
| Affidavit Fee: | $ | 0.00 | *Annette M Hill* | | |
| | | | *City Register Official Signature* | | |

Return To: BNC MORTGAGE,
INC.
1901 MAIN ST
IRVINE, CA 92614

Prepared By:

---------[Space Above This Line For Recording Data]---------
65-7045-02

# MORTGAGE MIN1001222000003107338

Loan No.: HUN012691

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated March 26, 2007
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." DHANKUMARI SINGH

whose address is 140 BROADWAY, JERSEY CITY, NJ 07306

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." BNC MORTGAGE, INC., A DELAWARE CORPORATION

will be called "Lender." Lender is a corporation or association which exists under the laws of
Delaware                                . Lender's address is 1901 MAIN ST, IRVINE, CA
92614

|  | R1 | HUN012691 |
|---|---|---|

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3033 1/01

-6A(NY) (0005).06
Page 1 of 17          Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

(E) "Note." The note signed by Borrower and dated March 26, 2007, will be called the "Note." The Note shows that I owe Lender two hundred thirty-seven thousand three hundred twelve and 00/100 Dollars (U.S. $237,312.00) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by April 1, 2037.

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [X] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] 1-4 Family Rider
- [ ] VA Rider
- [ ] Biweekly Payment Rider
- [X] Other(s) [specify]  legal

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

R1                        Initials: D-S                        HUN012691

-6A(NY) (00051.00)            Page 2 of 17                     Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 167-02  111TH AVE
[Street]
JAMAICA                    [City, Town or Village], New York 11433       [Zip Code].
This Property is in QUEENS                           County. It has the following legal description: LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

R1                         Initials: D.S        HUN012691

-6A(NY) (0005).06          Page 3 of 17                Form 3033 1/01

**Rels** Rels Title Agency
310 Old Country Road, Suite 202, Garden City, NY 11530
(516)746-6500 · Fax (866)611-3361

Title No. 1191-857045-07

## SCHEDULE "A"

All that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of 167th Street, also known as Woodland Avenue and the southerly side of 111th Avenue, also known as Remsen Street, as said street and avenue are laid out on a certain map entitled, "Map of Jamaica Terrace, Section No. 2, property of Benjamin N. Sweet, situated in the 4th Ward, Borough of Queens, City of New York, July 16, 1906, S. H. McLoughlin, C.E. and S", and filed in the Queens County Clerk's (now Register's) Office on August 25, 1906;

RUNNING THENCE Southerly, along the said easterly side of 167th Street, 100 feet;

THENCE Easterly at right angles to said easterly side of 167th Street, 25 feet;

THENCE Northerly and parallel with said easterly side of 167th Street, 100 feet to the said southerly side of 111th Avenue;

THENCE Westerly, along the southerly side of 111th Avenue, 25 feet to the point or place of BEGINNING.

FOR CONVEYANCING ONLY: TOGETHER with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.

PREMISES HEREIN ARE
IMPROVED OR WILL BE
IMPROVED BY A ONE TO
TWO FAMILY DWELLING

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

R1    Initials: DS    HUN012691

-6A(NY) (0005).04    Page 4 of 17    Form 3033 1/01