# EASDAQ

## UNOFFICIAL TRANSLATION

Clerck of the US Bankruptcy Court
SDNY (Lehman Brothers Holdings
Plc)
Vitto Genna

Clerck of the US Bankruptcy Court
SDNY (Lehman Brothers Holdings
Plc)
New Tork, New York 10004
USA

<u>By registered mail</u>

20 July 2009,

Dear Shareholder and/or Warrantholder,

<u>Re</u>:    <u>Easdaq NV – Extraordinary Meeting of Shareholders of August 7, 2009</u>

An Extraordinary Meeting of Shareholders of Easdaq NV (the "Company") will take place on **August 7 at 10 a.m**. at the offices of our notary in **1000 Brussels, Lloyd Georgelaan 11.**

In this respect, please find enclosed the notice for this meeting and the annexes in Dutch and in English (convenience translation).

If, as a shareholder, you cannot attend the meeting, you may give a power of attorney by letter, facsimile or any other written instrument. The proxyholder does not have to be a shareholder. A proxy form to be executed by you if you chose to be represented at the meeting is attached to the notice. Please ensure that a duly signed proxy is returned by <u>August 5, 2009</u> to my attention.

Please do not hesitate to contact us (tel: +49(0)30 31109137, fax: +49(0)30 31109178; email:  <u>investor-relations@equiduct-systems.com)</u>,  should  you  require  any  further information.

Sincerely yours,

Artur Fischer
Chief Executive Officer

# EASDAQ NV

Lei 19 Bus 11, B-3000 Leuven, België

RPR Leuven 0455.240.893

## Agenda buitengewone algemene vergadering 7 augustus 2009

*Agenda:*

1. Beslissing dat de beslissingen van de algemene vergadering onder agendapunten (3), (6), (7), (8), (9) en (10) interconditioneel zijn (de "**Opschortende Voorwaarde**")

2. Kennisname en bespreking van het bijzonder verslag van de raad van bestuur overeenkomstig artikel 560 van het Wetboek van vennootschappen met betrekking tot, onder meer, (i) de afschaffing van alle bestaande soorten van aandelen en gelijkschakeling van alle rechten verbonden aan de bestaande aandelen, (ii) de creatie van een nieuwe soort aandelen "klasse A" waaraan bijzondere rechten zijn verbonden ("**Klasse A**") en de creatie van een nieuwe soort aandelen "klasse B" waaraan geen bijzondere rechten zijn verbonden ("**Klasse B**"), (iii) de indeling van alle bestaande aandelen in Klasse B, (iv) de bevestiging dat de bestaande warrants uitgegeven door de vennootschap voortaan bij uitoefening recht geven op aandelen Klasse B, en (v) de wijziging van de statuten tot vaststelling van de rechten verbonden aan de te creëren soorten aandelen Klasse A en Klasse B

3. Beslissing tot (i) afschaffing van alle bestaande soorten van aandelen en tot gelijkschakeling van alle rechten verbonden aan de bestaande aandelen, (ii) creatie van een nieuwe soort aandelen Klasse A en creatie van een nieuwe soort aandelen Klasse B, (iii) indeling van alle bestaande aandelen in Klasse B, en (iv) wijziging van de statuten van de vennootschap substantieel in de vorm zoals hieraan gehecht als bijlage (b); bevestiging dat de bestaande warrants uitgegeven door de vennootschap voortaan bij uitoefening recht geven op aandelen Klasse B;

4. Kennisname en bespreking van het bijzonder verslag van de raad van bestuur (i) overeenkomstig de artikelen 582, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van aandelen Klasse A en Klasse B beneden de fractiewaarde van de bestaande aandelen met opheffing van het voorkeurrecht ten gunste van CITADEL Tactical Investments LLC ("**Citadel**") en (ii) overeenkomstig artikelen 582, 583, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van warrants tegen een uitoefenprijs (per aandeel) die lager is dan de huidige fractiewaarde van de aandelen (de "**Warrants**") met opheffing van het voorkeurrecht ten gunste van Börse Berlin AG en de heer Jos B. Peeters (de "**Begunstigden**")

5. Kennisname en bespreking van het bijzonder verslag van de commissaris (i) overeenkomstig de artikelen 582, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van aandelen Klasse A en Klasse B beneden de fractiewaarde van de bestaande aandelen met opheffing van het voorkeurrecht ten gunste van Citadel en (ii) overeenkomstig artikelen 582, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van de Warrants met opheffing van het voorkeurrecht ten gunste van de Begunstigden

6. Beslissing tot verhoging van het kapitaal van de vennootschap met een bedrag van EUR 15.000.000 door de uitgifte van (i) 2.500.000 aandelen Klasse A (EUR 0,375 per aandeel Klasse A, waarvan EUR 0,125 per aandeel Klasse A onmiddellijk zal worden volgestort) en (ii) 37.500.000 aandelen Klasse B (EUR 0,375 per aandeel Klasse B, waarvan EUR 0,125 per aandeel Klasse B onmiddellijk zal worden volgestort

7. Vaststelling van de verwezenlijking van de kapitaalverhoging en uitgifte van de aandelen "klasse A" en aandelen "klasse B" en gelijktrekking van de fractiewaarden

8. Beslissing tot uitgifte van 1.310.356 Warrants met de uitgifte- en uitoefenvoorwaarden zoals uiteengezet in het bijzonder verslag van de raad van bestuur waarnaar wordt verwezen in agendapunt 4, waarvan 1.100.356 Warrants ten gunste van de heer Jos B. Peeters en 210.000 Warrants ten gunste van Börse Berlin AG

9. Beslissing tot verhoging van het kapitaal van de vennootschap onder opschortende voorwaarde van de uitoefening van de Warrants

10. Benoeming en ontslag van bestuurders - kwijting

11. Vaststelling van de realisatie van de Opschortende Voorwaarde

12. Wijziging van artikel 5 van de statuten van de vennootschap als gevolg van de kapitaalverhoging

13. Volmacht aan eender welke twee bestuurders van de vennootschap, samen handelend, met macht van indeplaatstelling, voor de uitvoering van de beslissingen die worden genomen met betrekking tot de voorgaande agendapunten, met inbegrip van de bevoegdheid om de formaliteiten van artikel 591 van het Wetboek van vennootschappen te vervullen, in het bijzonder de authentieke vaststelling van de kapitaalverhoging en van het aantal aandelen uitgegeven bij de kapitaalverhoging, ingeval van uitoefening van de Warrants en de wijziging van de statuten om deze in overeenstemming te brengen met het nieuwe bedrag van het kapitaal en het nieuwe aantal aandelen

14. Volmacht aan mevrouw Diane Bils om de nodige formaliteiten te vervullen in verband met de "Kruispuntbank voor Ondernemingen", het "Ondernemingsloket" en de BTW, indien nodig

15. Machtiging aan mevrouw Sara Berquin, met mogelijkheid tot indeplaatsstelling, om een gecoördineerde tekst van de statuten op te stellen, te ondertekenen en neer te leggen op de griffie van de bevoegde rechtbank van koophandel

*Bijlagen:*

a. bijzonder verslag van de raad van bestuur overeenkomstig artikel 560 van het Wetboek van vennootschappen

b. voorstel tot aanpassing van de statuten

c. bijzonder verslag van de raad van bestuur (i) overeenkomstig de artikelen 582, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van nieuwe aandelen Klasse A en Klasse B en (ii) overeenkomstig artikelen 582, 583, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van de Warrants

d. bijzonder verslag van de commissaris overeenkomstig (i) de artikelen 582, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van nieuwe aandelen Klasse A en Klasse B en (ii) artikelen 582, 596 en 598 van het Wetboek van vennootschappen met betrekking tot de uitgifte van de Warrants

e. volmacht aandeelhouder

# EASDAQ NV

Lei 19 Bus 11, B-3000 Leuven, België

RPR Leuven 0455.240.893

(de "**Vennootschap**")

## BIJZONDER VERSLAG VAN DE RAAD VAN BESTUUR OVEREENKOMSTIG ARTIKEL 560 VAN HET WETBOEK VAN VENNOOTSCHAPPEN ("W.VENN.") MET BETREKKING TOT, ONDER MEER, EEN HERINDELING VAN AANDELEN EN WIJZIGINGEN AAN DE STATUTEN DAARAAN VERBONDEN

### 1. AARD VAN DE VOORGESTELDE WIJZIGINGEN AAN DE KLASSEN VAN AANDELEN

De raad van bestuur (de "**Raad**") legt hierbij zijn bijzonder verslag voor aan de buitengewone algemene vergadering van aandeelhouders van de Vennootschap in overeenstemming met artikel 560 W.Venn. met betrekking tot, onder meer, (i) de afschaffing van alle bestaande soorten van aandelen en de gelijkschakeling van alle rechten verbonden aan de bestaande aandelen, (ii) de creatie van een nieuwe soort aandelen "klasse A" waaraan bijzondere rechten zijn verbonden ("**Klasse A**") en de creatie van een nieuwe soort aandelen "klasse B" waaraan geen bijzondere rechten zijn verbonden ("**Klasse B**"), (iii) de indeling van alle bestaande aandelen in Klasse B, (iv) de bevestiging dat de bestaande warrants uitgegeven door de Vennootschap voortaan bij uitoefening recht geven op aandelen Klasse B, en (v) de wijziging van de statuten tot vaststelling van de rechten verbonden aan de te creëren soorten aandelen Klasse A en Klasse B.

Om de hieronder uiteengezette redenen stelt de Raad aan de algemene vergadering van aandeelhouders voor om, onder meer, de volgende artikelen van de statuten[1] te wijzigen om de wijzigingen aangebracht aan de bestaande klassen van aandelen en aan de rechten verbonden aan die klassen te weerspiegelen (zie ook het document dat aan de aandeelhouders is verstuurd samen met dit bijzondere verslag van de Raad en waarin het geconsolideerde voorstel van de nieuwe gecoördineerde statuten is opgenomen):

- Artikel 5 (Kapitaal)
- Artikel 7 (Opvraging van storting)
- Artikel 11 (Overdracht van aandelen) (te schrappen)
- Artikel 14 (Samenstelling van de raad van bestuur)
- Artikel 15 (Voortijdige vacature)
- Artikel 16 (Voorzitterschap)

---

[1] De wijzigingen verwijzen naar de nummering van de bestaande statuten.

- Artikel 17 (Vergaderingen van de raad van bestuur)
- Artikel 18 (Beraadslaging)
- Artikel 23 (Dagelijks bestuur)
- Artikel 33 (Beraadslaging)
- Artikel 37 (Uitkering)
- Artikel 42 (Verdeling)

## 2. BESCHRIJVING VAN DE VOORGESTELDE WIJZIGINGEN

Om historische redenen wordt het aandelenkapitaal van de Vennootschap momenteel vertegenwoordigd door 9.077.487 aandelen verdeeld in drie aparte klassen (klasse A (500.000 aandelen), klasse B (4.245.804 aandelen) en klasse C (4.331.683 aandelen)), waarbij bijzondere rechten zijn verbonden aan de klasse A en klasse C aandelen, maar niet aan de klasse B aandelen (zijnde de klasse van gewone aandelen). Alle A aandelen worden gehouden door dhr. Jos. B. Peeters ("**JBP**"), die de controlerende aandeelhouder van de Vennootschap was van december 2003 tot september 2007. Alle C aandelen worden gehouden door Börse Berlin AG ("**BSX**"), die de controlerende aandeelhouder van de Vennootschap is sinds september 2007.

De creatie van de klasse A en klasse C aandelen was bedoeld om bepaalde overeenkomsten met betrekking tot de beheersstructuur van de Vennootschap en de rechten met betrekking tot de overdracht van aandelen in de Vennootschap te weerspiegelen op het ogenblik dat die klassen werden gecreëerd. Als gevolg van een investeringsovereenkomst afgesloten op 20 juli 2009 tussen de Vennootschap, JBP, BSX en Citadel Tactical Investments Ltd. ("**Citadel**") (de "**Investeringsovereenkomst**"), zijn de partijen bij de Investeringsovereenkomst echter overeengekomen om een nieuwe, eenvoudigere beheersstructuur te implementeren, waarbij er niet langer behoefte is aan bijzondere rechten verbonden aan de huidige klasse A en klasse C aandelen.

Daarom werd beslist om de bestaande aandelenklassen af te schaffen en om alle rechten verbonden aan alle bestaande, door de Vennootschap uitgegeven aandelen gelijk te schakelen. Aangezien er momenteel geen bijzondere rechten zijn verbonden aan de klasse B aandelen, hebben deze afschaffing en gelijkschakeling enkel gevolgen voor de houders van de klasse A en klasse C aandelen, die hun bijzondere rechten zullen verliezen. Deze nieuw gelijkgeschakelde aandelenklasse (gewone aandelen) zal met aandelen "Klasse B" worden aangeduid.

Als gevolg van de gelijkschakeling van alle bestaande aandelen in aandelen Klasse B stelt de Raad aan de aandeelhouders voor om toestemming te geven voor een verhoging van het kapitaal van de Vennootschap via de uitgifte van 40 miljoen nieuwe aandelen (zie het bijzonder verslag van de Raad overeenkomstig de artikelen 582, 596 en 598 W.Venn., met zelfde datum als dit verslag en er

samen mee dient te worden gelezen) met opheffing van het voorkeurrecht ten gunste van Citadel. Verder wordt er voorgesteld om bepaalde bijzondere beheersrechten te verbinden aan 2,5 miljoen van deze 40 miljoen nieuwe aandelen, die zullen worden aangeduid met aandelen "Klasse A" en waaraan, onder meer, de volgende rechten zullen worden verbonden:

- Tot vijf bestuurders zullen worden verkozen op voordracht van de houders van de meerderheid van de aandelen Klasse A zolang Citadel meer dan 20% van alle uitstaande aandelen van de Vennootschap bezit. Tot drie bestuurders zullen worden verkozen op voordracht van de houders van de meerderheid van de aandelen Klasse A zolang Citadel meer dan 10% van alle uitstaande aandelen van de Vennootschap bezit. Tot twee bestuurders zullen worden verkozen op voordracht van de houders van de meerderheid van de aandelen Klasse A zolang Citadel meer dan 8% van alle uitstaande aandelen van de Vennootschap bezit. Eén bestuurder zal worden verkozen op voordracht van de houders van de meerderheid van de aandelen Klasse A zolang Citadel meer dan 3.5% van alle uitstaande aandelen van de Vennootschap bezit. Naar de bestuurders verkozen op voordracht van de houders van de meerderheid van de aandelen Klasse A zal worden verwezen als "Bestuurders Klasse A".
- De voorzitter van de Raad zal een bestuurder zijn die wordt voorgedragen door de Bestuurders Klasse A. Als de voorzitter eveneens een Bestuurder Klasse A is, zal hij een doorslaggevende stem hebben in geval van staking van stemmen.
- Bij afwezigheid van de voorzitter zal de vergadering worden voorgezeten door een bestuurder gekozen uit de Bestuurders Klasse A (of, als er geen aanwezig zijn, door een van de andere bestuurders).
- De Raad kan enkel geldig beraadslagen als, bovenop de toepasselijke regels van het Belgisch vennootschapsrecht, ten minste één Bestuurder Klasse A aanwezig of vertegenwoordigd is.
- Beslissingen worden genomen bij eenvoudige meerderheid. Een omvangrijke reeks van belangrijke beslissingen of voorstellen vereisen echter een gekwalificeerde meerderheid van de leden van de Raad, namelijk een eenvoudige meerderheid met inbegrip evenwel van de goedkeuring van ten minste één Bestuurder Klasse A (zie de voorgestelde tekst van de gewijzigde statuten voor een overzicht van deze beslissingen).
- De Raad kan het dagelijks bestuur van de Vennootschap opdragen aan één of meerdere personen, die geen bestuurder hoeven te zijn. Dergelijke persoon of personen zal of zullen worden aangeduid op voordracht van de Bestuurders Klasse A.
- Elk bijzonder comité dat binnen de Raad wordt opgericht, moet ten minste één Bestuurder Klasse A tellen. Opdat het quorum voor een vergadering van een comité bereikt zou zijn, moeten ten minste twee



Bestuurders, onder wie ten minste één Bestuurder Klasse A, aanwezig of vertegenwoordigd zijn. Het comité zal handelen bij beslissing van een meerderheid van de aanwezige of vertegenwoordigde Bestuurders, waarbij evenwel geen enkele beslissing genomen door het comité geldig zal zijn als niet één of meer Bestuurders Klasse A voor de bedoelde beslissing hebben gestemd.

- Bepaalde belangrijke beslissingen van de aandeelhouders zullen, bovenop de toepasselijke regels van het Belgisch vennootschapsrecht, de toestemming vereisen van ten minste de houders van de meerderheid van de Aandelen Klasse A (zie de voorgestelde tekst van de gewijzigde statuten voor een overzicht van deze beslissingen).

De hierboven opgesomde bijzondere rechten (behalve die onder het eerste punt van bovenstaande lijst) vervallen wanneer Citadel niet langer 20% van alle uitstaande aandelen van de Vennootschap in haar bezit heeft; deze bijzondere rechten zullen opnieuw van toepassing zijn wanneer Citadel opnieuw ten minste 20% van alle uitstaande aandelen van de Vennootschap in haar bezit heeft.

In ruil voor de afstand van de bijzondere rechten verbonden aan de huidige aandelen klasse A en klasse C, en met het oog op het verzekeren van hun steun voor de investering door Citadel, wordt er voorgesteld om op volgende wijze aan BSX en JBP een recht te verlenen om bestuurders voor te dragen:

- tot twee bestuurders zullen worden verkozen op voordracht van BSX zolang BSX een BSX Relevante Deelneming (*BSX Relevant Shareholding*, zoals gedefinieerd) heeft van meer dan 8%; één bestuurder zal worden verkozen op voordracht van BSX zolang BSX een BSX Relevante Deelneming heeft van meer dan 3.5%; en
- één bestuurder zal worden verkozen op voordracht van JBP zolang JBP een JBP Relevante Deelneming (*Dr. Peeters Relevant Shareholding*, zoals gedefinieerd) heeft van meer dan 3.5%.

Als gevolg van de hierboven voorgestelde wijzigingen zal het kapitaal van de Vennootschap voortaan worden vertegenwoordigd door 49.077.487 aandelen, verdeeld in 2.500.000 aandelen Klasse A (met de hierboven vermelde bijzondere beheersrechten) en 46.577.487 aandelen Klasse B (waaraan geen bijzondere rechten zijn verbonden). Bovendien zullen BSX en JBP over het recht tot voordracht van bestuurders beschikken zoals hierboven beschreven.

In geval van overdracht van aandelen Klasse A aan een andere partij zullen dergelijke aandelen automatisch (zonder (nieuwe) toepassing van artikel 560 W.Venn.) worden omgezet in aandelen Klasse B (waaraan geen bijzondere rechten zijn verbonden).

Er dient eveneens te worden opgemerkt dat, volgend op de kapitaalverhoging en de uitgifte van de aandelen Klasse A en van de nieuwe aandelen Klasse B, de bestaande warrants uitgegeven door de Vennootschap voortaan, bij uitoefening, de houder ervan recht zullen geven op aandelen Klasse B.

### 3. DOEL EN VERANTWOORDING VAN DE WIJZIGINGEN

Als gevolg van de kapitaalverhoging die aan de aandeelhoudersvergadering van 7 augustus 2009 wordt voorgelegd, zijn BSX en JBP niet langer meerderheids- of referentieaandeelhouders van de Vennootschap. Bovendien zullen BSX en JBP, overeenkomstig de voorwaarden van de investering door Citadel, niet langer beschikken over bijzondere beheersrechten (behalve het recht om bestuurders voor te dragen zoals hierboven uiteengezet). Bijgevolg is er geen reden om de huidige klassen van A en C aandelen te handhaven en is de daaruit voortvloeiende afschaffing van deze klassen en de gelijkschakeling van alle aandelen een kwestie van vereenvoudiging van de aandelenvertegenwoordiging van het kapitaal. Houders van klasse B aandelen worden niet geraakt door deze herindeling.

De creatie van een nieuwe klasse van aandelen Klasse A is noodzakelijk om de Investeringsovereenkomst uit te voeren. De voorgestelde kapitaalverhoging, die het hoofddoel van de Investeringsovereenkomst vormt, is vereist om de Vennootschap toe te laten om haar activiteiten op een *going concern*-basis verder te zetten en om haar missie te blijven uitvoeren die erin bestaat om haar geavanceerde handelsplatform aan te wenden om *best execution services* aan te bieden aan Europese investeerders (zie ook het bijzonder verslag van de Raad overeenkomstig de artikelen 582, 583, 596 en 598 W.Venn.). De kapitaalverhoging en de bijzondere beheersrechten verbonden aan de aandelen Klasse A die de door Citadel zullen worden gehouden, zijn, volgens de Raad, evenredig met de omvang van Citadels investering, haar aandeelhouderschap in de Vennootschap na de investering, haar cruciale rol in de bevordering van de activiteiten van de Vennootschap en haar strategische positie tegenover het *Equiduct Trading*-initiatief, en worden daarom geacht in het belang van de Vennootschap en van haar bestaande aandeelhouders te zijn.

20 juli 2009

Voor de raad van bestuur,

Artur Fischer
*Bestuurder*

1

**Berquin Notarissen**
burgerlijke cvba
Lloyd Georgelaan, 11
1000  Brussel
RPR Brussel 0474.073.840
Tel. +32(2)645.19.45  Fax : +32(2)645.19.46



# Gecoördineerde tekst van de statuten van
# NV "EASDAQ"

met zetel te 3000 Leuven, Lei 19 – bus 11,
ondernemingsnummer 0455.240.893 - RPR Leuven.

# na de statutenwijziging d.d.
# ~~26 juni 2008~~
# [7] augustus 2009

2

## HISTORIEK
### (in toepassing van art. 75, eerste lid, 2° Wetboek van Vennootschappen)

OPRICHTINGSAKTE :

De vennootschap werd opgericht krachtens akte verleden voor Meester Hans Berquin, Notaris te Brussel, op elf mei negentienhonderd vijfennegentig, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van zeven juni negentienhonderd vijfennegentig, onder nummer 950607-49.

WIJZIGINGEN AAN DE STATUTEN :

De statuten werden gewijzigd bij :

- proces-verbaal opgesteld door Meester Denis Deckers, Notaris te Brussel, op achttien december tweeduizend en drie, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van vijf maart tweeduizend en vier, onder nummer 20040305-37833

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op zeventien december tweeduizend en vier, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van veertien januari tweeduizend en vijf onder nummer 20050114-9594.

- proces-verbaal opgesteld door Meester Dirk Michiels, Notaris te Aarschot, vervangende zijn ambtgenoot Meester Eric Spruyt, Notaris te Brussel, op drie en twintig juni tweeduizend en vijf, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van negenentwintig september daarna, onder nummer 135749;

- proces-verbaal opgesteld door Meester Meester Luc Hertecant, Notaris te Neerijse, vervangende zijn ambtgenoot Meester Peter Van Melkebeke, Notaris te Brussel, op twee en twintig juni tweeduizend en zes, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van éénentwintig augustus tweeduizend en zes daarna, onder nummer 132534;

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op twaalf januari tweeduizend en zeven, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van zestien februari tweeduizend en zeven daarna, onder nummer 27929,

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op vijfentwintig september tweeduizend en zeven, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van zeventien oktober tweeduizend en zeven daarna, onder nummer 151689.

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op achtentwintig januari tweeduizend en acht, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van drie april tweeduizend en acht daarna, onder nummer 49948.

- en voor het laatst bij akte verleden voor Meester Eric Spruyt, Notaris te Brussel, op zesentwintig juni tweeduizend en acht, neergelegd ter bekendmaking in de bijlage tot het Belgisch Staatsblad.

----------

3

---

**GECOORDINEERDE**
**S T A T U T E N   OP   ~~26 juni 2008~~7 augustus 2009**

---

### TITEL I. Benaming – zetel – voorwerp – duur

#### Artikel 1 – Vorm en benaming

De vennootschap neemt de vorm aan van een naamloze vennootschap en heeft als benaming "EASDAQ".

Deze benaming zal steeds worden voorafgegaan of gevolgd door de woorden "naamloze vennootschap", of de afkorting "NV".

#### Artikel 2 – Zetel

De maatschappelijke zetel is gevestigd te 3000 Leuven, Lei 19 bus 11.

De raad van bestuur kan zonder statutenwijziging de maatschappelijke zetel overbrengen naar eender welke andere plaats in België mits de geldende wetgeving inzake het gebruik van de talen wordt gerespecteerd. Iedere wijziging van de maatschappelijke zetel wordt gepubliceerd in de bijlagen bij het Belgisch Staatsblad door toedoen van de raad van bestuur.

De raad van bestuur is bovendien gemachtigd om administratieve zetels, exploitatiezetels, bijkantoren en filialen op te richten zowel in België als in het buitenland.

#### Artikel 3 – Voorwerp

De vennootschap heeft als doel, zowel in België als in het buitenland, in eigen naam of in naam van derden, voor eigen rekening of voor rekening van anderen, de organisatie, het beheer, de controle en het toezicht van een pan-Europese gereglementeerde markt van financiële instrumenten, alsook de operationele, organisatorische en commerciële aspecten betreffende de ontwikkeling, de marketing en de werking van deze markt en, voor wat betreft de leden, de opneming van de financiële instrumenten om te de verhandelen op de markt, de werking van het technisch platform waarover de vennootschap beschikt, zonder dat de vennootschap zelf transacties doet met de financiële instrumenten die op de markt worden verhandeld.

De vennootschap kan, zowel in België als in het buitenland, alle industriële, commerciële, financiële, roerende en onroerende handelingen stellen die van aard zijn om haar activiteiten rechtstreeks of onrechtstreeks uit te breiden of te bevorderen. Zij kan alle roerende en onroerende goederen verkrijgen, zelfs wanneer deze geen enkel rechtstreeks of onrechtstreeks verband hebben met het doel van de vennootschap.

Zij kan op om het even welke manier belangen nemen in, samenwerken of fusioneren met alle verenigingen, zaken, ondernemingen of vennootschappen die een zelfde, een gelijkaardig of een verwant maatschappelijk doel hebben of die haar activiteiten kunnen bevorderen of de verkoop van haar producten of diensten kunnen vergemakkelijken.

#### Artikel 4 – Duur

De vennootschap is opgericht voor onbepaalde duur.

### TITEL II.    Kapitaal

#### Artikel 5 – Onderschreven kapitaal

Het maatschappelijk kapitaal is vastgesteld op honderd ~~dertien~~achtentwintig miljoen vijfhonderd zesentwintigduizend achthonderd achtenveertig euro negentig cent (€ ~~113~~128.526.848,90).

Het onderschreven maatschappelijk kapitaal wordt vertegenwoordigd door ~~negen~~negenenveertig miljoen ~~zevenenzeventig~~zevenenzeventig duizend vierhonderd zevenentachtig (~~4~~9.077.487) aandelen zonder nominale waarde die elk één/~~negen~~negenenveertig miljoen ~~zevenenzeventig~~zevenenzeventig duizend vierhonderd zevenentachtigste (1/~~4~~9.077.487ste) -van het kapitaal vertegenwoordigen.

De aandelen worden verdeeld in ~~drie~~twee Categorieën, ~~A, B~~ en ~~C~~B. Het kapitaal wordt momenteel vertegenwoordigd door twee miljoen (2.500.000) aandelen van Categorie A en ~~vier miljoen tweehonderd vijfenveertigduizend achthonderd en vier (4.245.804~~zevenenveertig miljoen vijfhonderd zevenenzeventig duizend vierhonderd zevenentachtig (46.577.487) aandelen van Categorie B ~~en vier miljoen driehonderd eenendertigduizend zeshonderd drieëntachtig (4.331.683) aandelen Categorie C.~~

Bij elke overdracht van aandelen ~~tussen aandeelhouders blijft de~~ van categorie ~~waartoe~~A aan een entiteit die geen verbonden vennootschap is van Citadel Tactical Investments LLC ("Citadel"), zullen deze

4

aandelen van categorie A bij de registratie van deze overdracht in het aandeelhoudersregister van de ~~overgedragen~~vennootschap, worden omgezet in aandelen ~~behoren behouden.~~van categorie B, tenzij Citadel er anders over beslist.

## Artikel 6 – Wijziging van het onderschreven kapitaal

Het onderschreven kapitaal kan worden verhoogd of verminderd door een besluit van de algemene vergadering, die beraadslaagt volgens de bepalingen voorzien voor de wijziging van de statuten.

~~De~~Onverminderd het recht van de algemene vergadering om de voorkeurrechten te beperken of op te heffen overeenkomstig het Wetboek van vennootschappen, moeten de aandelen waarop in geld wordt ingeschreven ~~moeten~~ bij voorrang worden aangeboden aan de aandeelhouders naar evenredigheid van het kapitaal dat door hun aandelen wordt vertegenwoordigd, gedurende een termijn van ten minste vijftien (15) dagen te rekenen vanaf de dag van de opening van de inschrijving. De algemene vergadering bepaalt de prijs van de intekening en de termijn gedurende dewelke het voorkeurrecht kan worden uitgeoefend.

Indien de algemene vergadering beslist om betaling van een uitgiftepremie te vragen, dient deze te worden geboekt op een geblokkeerde reserverekening die maar kan worden verminderd of opgeheven door een beslissing van de algemene vergadering die beraadslaagt volgens de regels voorzien voor de wijziging van de statuten. De uitgiftepremie zal, ten zelfde titel als het kapitaal, de kwalificatie hebben van een gemeenschappelijke waarborg ten gunste van de derden.

De raad van bestuur is bevoegd om het geplaatst maatschappelijk kapitaal in één of meer malen te verhogen met een bedrag van vijftig miljoen euro (€ 50.000.000,00) overeenkomstig door de raad te bepalen modaliteiten.

Deze verhoging kan gebeuren door inbreng in geld in welk geval de raad van bestuur rekening zal dienen te houden met het voorkeurrecht van de bestaande aandeelhouders in welk geval de raad van bestuur rekening zal dienen te houden met het voorkeurrecht van de bestaande aandeelhouders.

De verhoging van het kapitaal kan binnen het kader van het toegestane kapitaal ook gebeuren door inbreng in natura. De raad van bestuur mag evenwel, van het toegestane kapitaal geen gebruik maken om te beslissen tot een kapitaalverhoging die voornamelijk tot stand wordt gebracht door een inbreng in natura die uitsluitend voorbehouden is aan een aandeelhouder die effecten van de vennootschap in zijn bezit houdt waaraan meer dan tien procent van de stemrechten verbonden zijn.

De verhoging van het kapitaal waartoe, krachtens de bij dit artikel toegekende bevoegdheid wordt besloten, kan verder ook geschieden door omzetting van reserves, met of zonder uitgifte van nieuwe aandelen.

Binnen het kader van het toegestaan kapitaal kan de raad van bestuur beslissen tot uitgifte van converteerbare obligaties en warrants.

In geval van kapitaalverhoging door de raad van bestuur, in het kader van het toegestaan kapitaal, zal de raad van bestuur de uitgiftepremies, indien er zijn, moeten toewijzen aan een onbeschikbare rekening "Uitgiftepremies", die, zoals het kapitaal, de waarborg voor derden zal uitmaken en die, behoudens de mogelijkheid tot incorporatie in kapitaal door de raad van bestuur, zoals hiervoor voorzien, slechts zal kunnen verminderd of opgeheven worden krachtens een beslissing van de algemene vergadering beraadslagend onder de voorwaarden gesteld door artikel 612 van het Wetboek van Vennootschappen.

De raad van bestuur kan deze bevoegdheid uitoefenen gedurende vijf jaar te rekenen vanaf de bekendmaking van deze akte in de Bijlagen tot het Belgisch Staatsblad.

Deze bevoegdheid kan worden hernieuwd overeenkomstig de geldende wettelijke bepalingen.

Wanneer de raad van bestuur aan de algemene vergadering voorstelt deze bevoegdheid te hernieuwen, stelt hij een met redenen omkleed verslag op waarin wordt aangegeven in welke bijzondere omstandigheden hij gebruik zal kunnen maken van het toegestane kapitaal en welke doeleinden hij daarbij nastreeft.

De raad van bestuur is bevoegd om het voorkeurrecht van de bestaande aandeelhouders te beperken of op te heffen, in welk geval hij zulks verantwoordt in een omstandig verslag. Er wordt eveneens een verslag opgesteld door de commissaris, ~~of bij diens ontstentenis door een bedrijfsrevisor of een accountant ingeschreven op het tableau van de externe accountants van het Instituut der Accountants & Belastingconsulenten, aangewezen door de raad van bestuur.~~ In geval van beperking of opheffing van het voorkeurrecht kan de raad van bestuur bepalen dat bij de toekenning van nieuwe aandelen voorrang wordt gegeven aan de vroegere aandeelhouders, in welk geval de inschrijvingstermijn tien dagen moet bedragen.

5

De raad van bestuur is bevoegd het voorkeurrecht te beperken of op te heffen ten gunste van één of meer bepaalde personen, ~~anderei~~al dan ~~niet~~ personeelsleden van de vennootschap of van haar dochtervennootschappen. In dat geval dienen de voorwaarden gesteld door het Wetboek van vennootschappen nageleefd te worden.

### Artikel 7 – Opvraging van stortingen

Tot de opvraging van stortingen wordt soeverein beslist door de raad van bestuur.

Indien een aandeelhouder binnen de termijn bepaald door de raad van bestuur niet de gevraagde stortingen op zijn aandelen heeft verricht, wordt de uitoefening van de rechten die aan deze aandelen verbonden zijn van rechtswege geschorst ~~en is de aandeelhouder van rechtswege aan de vennootschap een verwijlintrest verschuldigd gelijk aan de wettelijke intrestvoet verhoogd met twee (2) procentpunten vanaf de datum waarop de door de raad van bestuur voor de storting vastgestelde termijn is verstreken.~~

~~Indien de aandeelhouder nog steeds in gebreke blijft na de verzending door de raad van bestuur van een ingebrekestelling bij aangetekend schrijven tenminste één maand na het verstrijken van de daarin vastgestelde termijn, spreekt de raad van bestuur bij zijn eerstvolgende vergadering het verval van de rechten van de aandeelhouder uit en verkoopt hij deze aandelen op de meest adequate wijze, onverminderd het recht van de vennootschap om van de aandeelhouder het verschuldigde saldo te vorderen, evenals de vergoeding van alle eventuele schade.~~

### Artikel 8 – Aard van de aandelen

De aandelen zijn en blijven op naam.

### Artikel 9 – Uitoefening van de rechten verbonden aan een aandeel

Ten opzichte van de vennootschap zijn de aandelen ondeelbaar. Indien een aandeel toebehoort aan verscheidene personen of indien de rechten die verbonden zijn aan een aandeel in onverdeeldheid zijn tussen verschillende personen, heeft de raad van bestuur het recht om de uitoefening van de daaraan verbonden rechten te schorsen totdat één enkele persoon te zijnen opzichte als aandeelhouder is aangewezen.

### Artikel 10 – De rechtsopvolgers

~~De~~ Tenzij uitdrukkelijk anders bepaald in deze Statuten, volgen de aan de aandelen verbonden rechten en plichten ~~volgen deze~~ de aandelen in de handen van iedere verkrijger.

### Artikel 11 – ~~Overdracht van aandelen~~

#### ~~11.1 – Principe~~

~~Elke verrichting die tot voorwerp of tot gevolg heeft dat, ten bezwarende titel of om niet, een zakelijk recht wordt overgedragen, met inbegrip van inbreng, ruil, de verkoop onder beslag, de vereffening of de toekenning van een optie, een pand of ieder recht ten gunste van derden, hetzij iedere gelijkaardige verrichtingen (hierna genoemd de "Overdracht") met betrekking tot aandelen (met inbegrip van aandelen van Categorie A, Categorie B en Categorie C), opties, warrants of converteerbare obligaties uitgegeven door de Vennootschap (hierna het geheel van de "Aandelen" genoemd) door een houder van Aandelen (hierna de "Overdragende Aandeelhouder" genoemd), is onderworpen aan een voorkooprecht ten gunste van de houders van aandelen Categorie A (hierna de "Aandeelhouders van categorie A" genoemd).~~

#### ~~11.2 – Kennisgeving van de overdracht~~

~~Iedere Overdragende Aandeelhouder die een Overdracht van zijn Aandelen overweegt moet de voorzitter van de raad van bestuur daarvan voorafgaandelijk inlichten met vermelding van de volledige identiteit van de voorgenomen overnemer (hierna de "Overnemer" genoemd), het aantal aandelen (hierna de "Overgedragen Aandelen" genoemd) die hij wenst Over te dragen, de prijs, alsook de andere voorwaarden tegen dewelke de Overdracht zal geschieden (hierna de "Kennisgeving van de Overdracht" genoemd). Ingevolge de Kennisgeving van de Overdracht zal de voorzitter van de raad van bestuur binnen een termijn van vijf werkdagen een kopie van de Kennisgeving van de Overdracht laten geworden aan alle Aandeelhouders van Categorie A.~~

#### ~~11.3 – Uitoefening van het voorkooprecht~~

~~Vanaf de ontvangst van de Kennisgeving van de Overdracht zijn de Aandeelhouders van Categorie A gerechtigd om hun voorkooprecht uit te oefenen gedurende 30 kalenderdagen. Een Aandeelhouder van Categorie A die de intentie heeft om zijn voorkooprecht uit de oefenen, zal de voorzitter van de raad van bestuur en de Overdragende Aandeelhouder daarvan in kennis stellen per aangetekend schrijven.~~

~~Het voorkooprecht wordt uitgeoefend tegen de prijs en de voorwaarden die te goeder trouw door de Overnemer worden geboden. Indien de prijs die door de Overnemer wordt geboden niet in geld geschiedt maar door betaling in natura, kan het voorkooprecht worden uitgeoefend tegen de economische waarde van de betaling in natura zoals overeengekomen tussen de Overdragende Aandeelhouder en de Aandeelhouders van Categorie A die van hun voorkooprecht gebruik maken. Bij gebreke daarvan zal een~~

6

~~deskundige worden aangesteld in gemeen akkoord of, bij gebrek aan dergelijk akkoord, door de voorzitter~~
~~van de rechtbank van koophandel te Brussel. De waardering door de deskundige bindt de partijen.~~

~~**11.4 - Verdeling van de aandelen**~~
~~Indien niet het geheel, maar slechts bepaalde Aandeelhouders van Categorie A gebruikmaken van~~
~~hun voorkooprecht binnen de bovenvermelde termijn van dertig (30) kalenderdagen, zal de raad van~~
~~bestuur gedurende een termijn van veertien (14) kalenderdagen de Overgedragen Aandelen, waarvoor~~
~~het voorkooprecht niet werd uitgeoefend, aanbieden aan de Aandeelhouders van Categorie A die gebruik~~
~~hebben gemaakt van hun voorkooprecht tijdens de eerste termijn van dertig (30 ) kalenderdagen.~~

~~Indien de Aandeelhouders van Categorie A hun voorkooprecht uitoefenen voor een totaal aantal~~
~~aandelen dat hoger is dan het aantal Overgedragen Aandelen, zal de raad van bestuur het aantal~~
~~Overgedragen Aandelen vaststellen dat iedere Aandeelhouder van Categorie A ontvangt, rekening~~
~~houdend met de aandelen van Categorie A die toebehoren aan ieder van hen in verhouding tot het totale~~
~~aantal aandelen van Categorie A die toebehoren aan de Aandeelhouders van Categorie A die hun~~
~~voorkooprecht hebben uitgeoefend.~~

~~Indien en in de mate dat de Aandeelhouders van Categorie A hun voorkooprecht niet uitoefenen~~
~~of niet uitoefenen ten aanzien van alle Overgedragen Aandelen in de bovenvermelde respectieve~~
~~termijnen van dertig (30) en veertien (14) kalenderdagen, heeft de Overdragende Aandeelhouder~~
~~gedurende een termijn van dertig (30) kalenderdagen het recht om de Overgedragen Aandelen over te dragen aan de~~
~~Overnemer tegen de voorwaarden die vermeld zijn in de Kennisgeving van de Overdracht.~~

~~**11.5 - Vrije overdrachten**~~
~~De beperkingen aan de overdracht van aandelen die vermeld zijn in dit artikel, zijn niet van~~
~~toepassing ingeval van Overdrachten van Aandelen tussen verbonden vennootschappen zoals omschreven~~
~~in artikel 11 van het Wetboek van vennootschappen.~~

~~De houder van Aandelen is gehouden om de raad van bestuur van iedere Overdracht van~~
~~Aandelen per brief of op een andere schriftelijke wijze op de hoogte te brengen binnen zeven~~
~~kalenderdagen na dergelijk Overdracht. De raad van bestuur zal de andere aandeelhouders van de~~
~~vennootschap eenmaal per jaar tijdens de jaarlijkse algemene vergadering inlichten over iedere~~
~~Overdracht van Aandelen.~~

~~**11.6 - Sancties**~~
~~Iedere Overdracht van Aandelen die geschiedt met schending van de bepalingen van dit artikel 11~~
~~zal niet rechtsgeldig zijn en niet kunnen tegengeworpen worden aan de vennootschap of aan andere~~
~~houders van Aandelen.~~

~~**Artikel 12**~~ **—Verkrijging door de vennootschap van haar eigen aandelen**
De vennootschap kan haar eigen aandelen verkrijgen overeenkomstig artikel 620 en volgende van
het wetboek van vennootschappen.

**Artikel ~~13~~12 – Obligaties**
De vennootschap mag te allen tijde obligaties uitgeven bij besluit van de raad van bestuur.
Evenwel mag tot de uitgifte van in aandelen converteerbare obligaties of warrants slechts besloten
worden door de algemene vergadering die beraadslaagt met naleving van de voorschriften omtrent
statutenwijziging of door de raad van bestuur binnen het kader van het toegestaan kapitaal.

**TITEL III.    Bestuur en toezicht**

**Artikel ~~14~~13 – Samenstelling van de raad van bestuur**
De vennootschap wordt bestuurd door een raad van bestuur, samengesteld uit ~~niet meer dan zes~~
~~(6)~~ tenminste drie (3) leden, die geen aandeelhouders hoeven te zijn.
~~Drie (3)~~ Tot vijf (5) bestuurders worden ~~door de algemene vergadering van aandeelhouders~~
verkozen ~~uit een lijst van kandidaten die worden voorgedragen door~~ op voordracht van de houders van de
meerderheid van de aandelen van Categorie A ~~(maar enkel indien dergelijke voordrachten effectief werden~~
~~gedaan). De bestuurders die verkozen zijn uit de lijst van kandidaten die worden voorgedragen door de~~
~~houders van de meerderheid van de aandelen van Categorie A worden "Bestuurders van Categorie A"~~
~~genoemd. Ingeval dr. Jos B. Peeters ("JBP") niet langer 15% van~~, zolang Citadel meer dan 20% van alle
uitstaande aandelen van de Vennootschap ~~in haar bezit, komt dit recht automatisch te vervallen.~~
~~Drie (3) bestuurders worden door de algemene vergadering van aandeelhouders~~ heeft. Tot drie
(3) bestuurders worden verkozen op voordracht van de houders van de meerderheid van de aandelen van
Categorie A, zolang Citadel meer dan 10% van alle uitstaande aandelen van de Vennootschap in haar
bezit heeft. Tot twee (2) bestuurders worden verkozen ~~uit een lijst~~ op voordracht van ~~kandidaten die~~
~~worden voorgedragen door de houders van de meerderheid van de aandelen van Categorie C (maar enkel~~

7

~~indien dergelijke voordrachten effectief werden gedaan). De bestuurders die verkozen zijn uit de lijst van~~
~~kandidaten die wordt voorgedragen door~~ de houders van de meerderheid van aandelen van Categorie C
~~worden "Bestuurders van Categorie C" genoemd. Ingeval Börse Berlin ("BSX"), samen met de met haar~~
~~verbonden vennootschappen zoals bedoeld in paragraaf 15 van het Duitse Wetboek op publieke naamloze~~
~~vennootschappen (§15 "Aktiengesetz") of een vennootschap waarin BSX minstens 25% van de~~
~~stemrechten houdt, niet langer 15% van de~~ A, zolang Citadel meer dan 8% van alle uitstaande aandelen
van de Vennootschap ~~bezit, komt dit recht automatisch te vervallen~~in haar bezit heeft. Eén (1) bestuurder
wordt benoemd op voordracht van de houders van de meerderheid van de aandelen van Categorie A,
zolang Citadel meer dan 3,5% van alle uitstaande aandelen van de Vennootschap in haar bezit heeft. De
bestuurders die worden verkozen op voordracht van de houders van de meerderheid van de aandelen van
Categorie A worden "Bestuurders van Categorie A" genoemd. Indien het aandeelhouderschap (i.e. het
percentage aandelen dat door een aandeelhouder wordt gehouden, waarbij er hier van wordt uitgegaan
dat alle aandelen van de Vennootschap tot dezelfde soort behoren) van Citadel daalt tot beneden de
voornoemde percentagedrempels en daarna opnieuw stijgt tot boven deze drempels, worden de rechten
verbonden aan deze drempels opnieuw van toepassing. De houder van de meerderheid van de aandelen
van Categorie A heeft het recht om te beslissen dat één of meer Bestuurders van Categorie A, benoemd
volgens deze clausule, niet de bijzondere rechten hebben die bij toepassing van deze Statuten aan de
Bestuurders van Categorie A worden toegekend.

~~Eén van de Bestuurders van Categorie A en één van de Bestuurders van Categorie C zal~~
~~gedelegeerd bestuurder zijn en de andere Bestuurders van Categorie A en en Bestuurders van Categorie~~
~~C zullen niet-uitvoerende bestuurders zijn.~~

Tot twee (2) bestuurders worden verkozen op voordracht van Börse Berlin AG ("BSX"), zolang BSX
een relevant BSX Aandeelhouderschap (zoals hierna gedefinieerd) heeft van méér dan 8%. Eén (1)
bestuurder wordt verkozen op voordracht van BSX, zolang BSX een Relevant BSX Aandeelhouderschap
heeft van méér dan 3,5%. Indien het Relevant BSX Aandeelhouderschap daalt tot beneden de
voornoemde drempels en daarna opnieuw stijgt tot boven deze drempels, worden de rechten verbonden
aan deze drempels opnieuw van toepassing.

Eén (1) bestuurder wordt verkozen op voordracht van Jos B. Peeters ("Dr. Peeters"), zolang Dr.
Peeters een Relevant Dr. Peeters Aandeelhouderschap (zoals hierna gedefinieerd) heeft van meer dan
3,5%. Indien het Relevant Dr. Peeters Aandeelhouderschap daalt tot onder 3,5% en daarna opnieuw stijgt
tot boven 3,5%, dan worden de rechten verbonden aan deze drempel opnieuw van toepassing.

Voor de toepassing van artikel 13:
- Betekent "Relevant BSX Aandeelhouderschap" het aandeelhouderschap (i.e. het percentage
  aandelen dat door een aandeelhouder wordt gehouden, waarbij er hier van wordt uitgegaan
  dat alle aandelen van de Vennootschap tot dezelfde soort behoren) van BSX en haar
  verbonden vennootschappen zoals berekend volgens de volgende formule: A / (B+C+D)
  - Waarbij A het aantal aandelen is dat door BSX of haar verbonden vennootschappen
    van tijd tot tijd wordt gehouden;
  - B het totaal aantal aandelen is dat door de Vennootschap werd uitgegeven vóór of op
    [7 augustus 2009], na de vergadering van aandeelhouders van dezelfde dag;
  - C het aantal aandelen is dat door de Vennootschap werd uitgegeven bij de
    uitoefening van warrants, converteerbare effecten of inschrijvingsrechten, die voor
    ieder van de gevallen bij uitoefening werden gehouden door BSX of haar verbonden
    vennootschappen; en
  - D het aantal aandelen (maar voor alle duidelijkheid niet warrants, converteerbare
    effecten of rechten om in te schrijven op aandelen) uitgegeven door de Vennootschap
    onder een Toegankelijke Uitgifte (zoals hierna gedefinieerd), of bij de uitoefening van
    of de omzetting van warrants, converteerbare effecten, of rechten om in te schrijven
    op aandelen (in geval van warrants, converteerbare effecten of rechten om in te
    schrijven op aandelen die werden uitgegeven vóór [DATUM] juli 2012, enkel indien
    BSX en haar verbonden vennootschappen de mogelijkheid hadden om in te schrijven
    op deze uitgifte);
- Betekent "Relevant Dr. Peeters Aandeelhouderschap" het aandeelhouderschap (i.e. het
  percentage aandelen dat door een aandeelhouder wordt gehouden, waarbij er hier van wordt
  uitgegaan dat alle aandelen van de Vennootschap tot dezelfde soort behoren) van Dr. Peeters
  zoals berekend volgens de volgende formule: A / (B+C+D)
  - Waarbij A het aantal aandelen is dat door Dr. Peeters of zijn verbonden
    vennootschappen of rechtsopvolgers van tijd tot tijd wordt gehouden;

8

- B het totaal aantal aandelen is dat door de Vennootschap werd uitgegeven vóór of op [7 augustus 2009], na de vergadering van aandeelhouders van diezelfde dag;
- C het aantal aandelen is dat door de Vennootschap werd uitgegeven bij de uitoefening van warrants, converteerbare effecten of inschrijvingsrechten, die voor ieder van de gevallen bij uitoefening werden gehouden door Dr. Peeters of zijn verbonden vennootschappen of rechtsopvolgers; en
- D het aantal aandelen (maar voor alle duidelijkheid niet de warrants, converteerbare effecten of rechten om in te schrijven op aandelen) uitgegeven door de Vennootschap onder een Toegankelijke Uitgifte, of bij de uitoefening van of de omzetting van warrants, converteerbare effecten, of rechten om in te schrijven op aandelen (in geval van warrants, converteerbare effecten of rechten om in te schrijven op aandelen uitgegeven vóór [DATUM] juli 2012, enkel indien Dr. Peeters en zijn verbonden vennootschappen en rechtsopvolgers de mogelijkheid hadden om in te schrijven op deze uitgifte);

– Toegankelijk Uitgifte betekent een uitgifte van aandelen of effecten converteerbaar in aandelen (of warranten of rechten om in te schrijven op aandelen) door de Vennootschap waarbij BSX en haar verbonden vennootschappen (voor het bepalen van het Relevant BSX Aandeelhouderschap) en Dr. Peeters of zijn verbonden vennootschappen of rechtsopvolgers (voor het bepalen van het Relevant Dr. Peeters Aandeelhouderschap) overeenkomstig de voorwaarden van deze uitgifte waren toegelaten om eraan deel te nemen, en alle andere uitgiftes van aandelen of effecten converteerbaar in aandelen (of warranten of rechten om in te schrijven op aandelen) (zonder dubbele telling) die plaatsvinden na [DATUM] juli 2012, ongeacht of BSX of Dr. Peeters of hun respectieve verbonden vennootschappen of voor wat Dr. Peeters betreft zijn rechtsopvolgers, naargelang het geval, overeenkomstig de voorwaarden van deze uitgifte waren toegelaten om eraan deel te nemen.

De duur van het mandaat mag niet langer zijn dan zes (6) jaar. De bestuurders van wie de termijn van het mandaat is verstreken, blijven in functie zolang de algemene vergadering, niet in hun vervanging heeft voorzien.

De uittredende bestuurders zijn herbenoembaar.

**Artikel ~~15~~14 – Vacature voor einde mandaat**

Enige vacature die wordt veroorzaakt door overlijden, ontslag of beëindiging van het mandaat van een lid van de raad van bestuur die werd verkozen op voordracht van ~~respectievelijk de houders van de meerderheid van de aandelen van Categorie A of de houders van de aandelen van Categorie C~~een aandeelhouder overeenkomstig artikel 13 (de "Betrokken Aandeelhouder"), zal worden opgevuld door de verkiezing van een nieuwe bestuurder op voordracht van ~~respectievelijk de houders van de meerderheid van de aandelen van Categorie A of de houders van de aandelen van Categorie C~~ (de Betrokken Aandeelhouder (voor zover deze aandeelhouder op ~~voorwaarde~~ dat de ~~betreffende aandeelhouders zulke rechten~~ ogenblik nog ~~steeds hebben)~~ op wiens voordracht de betrokken ~~bestuurder die is overleden, ontslag~~ dat recht heeft ~~genomen of wiens mandaat werd beëindigd~~ oorspronkelijk was ~~benoemd.~~).

Indien de ~~houders van de meerderheid van de aandelen van Categorie A of de houders van de aandelen van Categorie C~~ melden dat zijBetrokken Aandeelhouder meldt dat hij geen kandidaten of geen voldoende aantal kandidaten ~~wensen~~wenst voor te dragen of indien ~~zij~~hij onvoldoende kandidaten ~~voordragen~~voordraagt, dan zullen de betreffende mandaten vacant blijven en zullen zij -pas worden opgevuld indien kandidaten voor verkiezing worden voorgedragen door de ~~betrokken aandeelhouders~~Betrokken Aandeelhouder.

~~Indien niet of niet voldoende kandidaten voor benoeming als bestuurder worden voorgedragen door ofwel de houders van de meerderheid van aandelen van Categorie A ofwel de houders van de meerderheid van aandelen van Categorie C, 10 werkdagen na een verzoek daartoe door de raad van bestuur, dan zullen de bijzondere meerderheden binnen de raad van bestuur zoals voorzien in artikel 18, proportioneel verminderd worden (zonder evenwel afbreuk te doen aan de bevoegdheden van de bestuurders benoemd op voordracht van de andere aandeelhouders), totdat dergelijke voordracht is geschied.~~

Voor alle duidelijkheid weze hierbij verduidelijkt dat het gebrek aan voordracht van kandidaten voor benoeming overeenkomstig de bovenstaande paragrafen geen afstand inhoudt van het recht om kandidaten voor benoeming voor te dragen, en de ~~betrokken aandeelhouders zullen~~ Betrokken Aandeelhouder zal het recht hebben om te vragen dat een nieuwe vergadering van aandeelhouders van

9

de Vennootschap wordt samengeroepen om de kandidaten te verkiezen die aldus zullen worden voorgedragen voor benoeming door de ~~betrokken aandeelhouders . In dat geval zal de vermindering van de bijzondere meerderheden zoals vermeld in de voorgaande paragraaf niet langer gelden. Betrokken Aandeelhouder.~~ Indien een Betrokken Aandeelhouder ervoor opteert om geen kandidaten voor benoeming voor te dragen, zijn de bijzondere rechten die aan deze kandidaten worden toegekend niet van toepassing, totdat er opnieuw kandidaten worden voorgedragen.

### Artikel ~~16~~15 – Voorzitterschap

De ~~leden~~voorzitter van de raad van bestuur ~~duidenis~~ een ~~voorzitter aan onder bestuurder~~ die wordt voorgedragen door de Bestuurders van Categorie ~~C, dewelke~~A. Indien de voorzitter ook een staking van ~~de stemmen. Ingeval BSX samen met de met~~ heeft over de doorslaggevende stem ~~zal hebben in~~in geval van ~~in paragraaf 15 van het Duitse Wetboek op publieke naamloze vennootschappen (§15 "Aktiengesetz") of een vennootschap waarin BSX minstens 25% van de stemrechten houdt, niet langer 40% van de aandelen van de Vennootschap bezit, komt dit recht automatisch te vervallen~~Indien het aandeelhouderschap van Citadel daalt tot onder 20%, hebben de Bestuurders van Categorie A niet langer de rechten beschreven van dit artikel 15. Indien het aandeelhouderschap van Citadel daarna opnieuw stijgt tot 20% of meer, zullen de Bestuurders van Categorie A opnieuw de rechten hebben beschreven in dit artikel 15.

### Artikel ~~17~~16 – Vergaderingen van de raad van bestuur

De raad van bestuur wordt samengeroepen door zijn voorzitter of door twee bestuurders telkens als het belang van de vennootschap het vereist.

De oproepingen vermelden plaats, dag, uur en agenda van de vergadering en worden ten minste ~~twee (2) volle~~drie (3) werkdagen voor de vergadering verzonden per brief, ~~telegram, telex of~~fax, e-mail, hetzij op een andere schriftelijke wijze. In dringende gevallen mag de raad van bestuur op kortere termijn worden bijeengeroepen, voor zover de bestuurders daarvan redelijkerwijze op voorhand op de hoogte worden gesteld.

Indien de voorzitter verhinderd is, wordt de vergadering voorgezeten door een bestuurder die wordt verkozen onder de Bestuurders van Categorie ~~C~~A (of, indien er geen enkele Bestuurder van Categorie A aanwezig is, door één van de andere bestuurders).

Zodra alle bestuurders aanwezig zijn of rechtsgeldig vertegenwoordigd zijn, kan de regelmatigheid van de oproepingen niet worden betwist.

### Artikel ~~18~~17 – Beraadslaging

~~De raad van bestuur kan maar rechtsgeldig beraadslagen en beslissen indien ten minste twee Bestuurders van Categorie A en twee Bestuurders van Categorie C aanwezig of vertegenwoordigd zijn. Indien dat quorum niet is bereikt, kan de voorzitter een nieuwe vergadering samenroepen met dezelfde agenda als de oorspronkelijke vergadering binnen een periode van niet minder dan 14 dagen en niet meer dan 28 dagen na de vergadering waarop het quorum niet werd bereikt. In dat geval zal een oproepingsperiode van tenminste zeven dagen in acht genomen worden. Op de nieuwe vergadering zullen minstens drie (3) bestuurders, aanwezig of vertegenwoordigd, een quorum vormen voor alle aangelegenheden en de bevoegdheid hebben te beraadslagen en beslissen over alle onderwerpen die op de eerste vergadering rechtmatig hadden kunnen behandeld worden, indien aan de quorumvereiste was voldaan, met dien verstande dat deze nieuwe vergadering van de raad van bestuur in geen geval op een geldige manier een beslissing kan nemen die niet is goedgekeurd met de vereiste bijzondere meerderheid voorzien in dit artikel 18.~~

Opdat een vergadering van de raad van bestuur rechtsgeldig kan beraadslagen en beslissen moet, bovenop de vereisten van het Belgische vennootschapsrecht, minstens één Bestuurder van Categorie A aanwezig zijn in persoon, per telefoon of bij wijze van volmacht. Indien het aandeelhouderschap van Citadel echter daalt tot onder 20% kan de raad van bestuur geldig beraadslagen (indien voldaan is aan de voorwaarden van het Belgische vennootschapsrecht) zelfs indien geen enkele Bestuurder van Categorie A aanwezig is. De aanwezigheid van één Bestuurder van Categorie A zal opnieuw vereist zijn indien het aandeelhouderschap van Citadel daarna opnieuw stijgt tot 20% of meer.

In uitzonderlijke gevallen die behoorlijk worden verantwoord door dringende noodzakelijkheid en het belang van de vennootschap, kunnen de beslissingen van de raad van bestuur bij eenparig schriftelijk besluit worden genomen. Van deze procedure kan echter geen gebruik worden gemaakt voor de vaststelling van de jaarrekening of voor een besluit tot kapitaalverhoging in het kader van het toegestaan kapitaal.

10

De raad van bestuur kan maar rechtsgeldig beraadslagen over punten die niet vermeld zijn op de agenda wanneer alle bestuurders aanwezig of rechtsgeldig vertegenwoordigd zijn en unaniem beslissen om over deze punten te beraadslagen.

Iedere bestuurder kan per brief, ~~telegram, telex,~~ fax, e-mail of op een andere schriftelijke manier volmacht geven aan een andere bestuurder om hem te vertegenwoordigen op een vergadering van de raad van bestuur. Een bestuurder kan bij volmacht verscheidene van zijn collega's vertegenwoordigen.

De bestuurders dienen zich te onderwerpen aan de bepalingen betreffende de belangenconflicten in het Wetboek van vennootschappen.

Beslissingen worden genomen met een gewone meerderheid van stemmen. ~~De hiernavolgende beslissingen behoeven echter de goedkeuring door een gekwalificeerde meerderheid van de leden van de raad van bestuur, met name door een gewone meerderheid die in ieder geval eveneens de goedkeuring inhoudt van tenminste twee Bestuurders van Categorie A en twee Bestuurders van Categorie C:~~Echter, de handelingen opgenomen in onderstaande lijst kunnen slechts door de raad van bestuur worden gesteld en voorstellen daartoe kunnen enkel worden gedaan aan de aandeelhouders, mits de voorafgaande toestemming van minstens één Bestuurder van Categorie A, zodat de beslissingen met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien de beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring van minstens één Bestuurder van Categorie A (en onderstaande zaken kunnen door de raad van bestuur niet aan anderen worden gedelegeerd). De houders van de meerderheid van de aandelen van Categorie A hebben het recht om één (of meerdere) Bestuurder(s) van Categorie A aan te duiden om dit goedkeuringsrecht uit te oefenen. In dat geval komt dit recht enkel toe aan de aangeduide Bestuurder(s) van Categorie A.

- ~~de verkoop van, of het geven van, een licentie of andere rechten betreffende de intellectuele eigendomsrechten van de Vennootschap met betrekking tot haar verhandelingsplatform ETS, inzoverre dit gebeurt na 25 september 2007;~~
- ~~iedere beslissing tot oprichting, creatie, aankoop en/of overdracht van dochterondernemingen, bijkantoren of joint ventures waaraan een aanzienlijk deel van de activiteiten van de Vennootschap wordt overgedragen op het moment van of na dergelijke oprichting, creatie, aankoop of overdracht of het verwerven van activa waar na de verwerving een aanzienlijk deel van de activiteiten van de vennootschap zal op berusten (na overdracht of verwerving);~~
- ~~iedere beslissing tot uitkering van interimdividenden;~~
- ~~iedere verhoging of voorstel tot vermindering van het maatschappelijk kapitaal waartoe op het niveau van de raad van bestuur wordt beslist, met of zonder opheffing, beperking of afstand van het voorkeurrecht in dat verband;~~
- ~~iedere beslissing om een bestaande of toekomstige verbonden persoon, in de betekenis van artikel 11 van het Wetboek van vennootschappen, ertoe aan te zetten of toe te laten enige verrichting uit te voeren bedoeld in dit artikel 18 of in artikel 33 (en, te dien einde, zal elke referentie naar "de Vennootschap" in dit artikel 18 of in artikel 33 geïnterpreteerd worden als een referentie naar dergelijke verbonden persoon);~~
- ~~de vervreemding van het geheel of van een aanzienlijk deel van de activiteit van de Vennootschap;~~
- ~~een wijziging in het adres van de maatschappelijke zetel van de Vennootschap waarvoor de raad van bestuur ingevolge artikel 2 bevoegd is;~~
- ~~de aanduiding van personen belast met het dagelijks bestuur, zij het als gedelegeerd bestuurder of anderszins; en~~
- ~~de benoeming van de mandaten van bestuurders in Equiduct Ltd.~~
- <u>Het opvragen van niet-volgestort kapitaal van de aandelen van de Vennootschap of het uitoefenen van enige rechten met betrekking tot dit niet-volgestort kapitaal;</u>
- <u>Het voorstel tot wijziging van de statuten van de Vennootschap of van een van haar dochtervennootschappen, in de zin van artikel 6 van het Wetboek van vennootschappen (de Vennootschap samen met deze dochtervennootschappen worden hierna de "Easdaq Group" genoemd);</u>
- <u>De uitgifte of de toekenning van aandelen of andere effecten door een lid van de Easdaq Group of de creatie, toekenning of uitgifte van een optie, warrant of het recht om in te schrijven op aandelen van een lid van de Easdaq Group of het recht om deze te verwerven of</u>

11

het recht om effecten om te zetten in aandelen van een lid van de Easdaq Group, of een voorstel om het bovenstaande te doen;
– Een beslissing of voorstel tot vaststelling of betaling van een dividend of de vaststelling of het doen van enige andere uitkering door een lid van de Easdaq Group;
– Een belangrijke wijziging in de aard of de omvang van de activiteiten van de Vennootschap;
– Het aangaan van schulden door de Vennootschap voor meer dan 25.000 euro (voor de duidelijkheid, de intra-groep schulden tussen de leden van de Easdaq Group niet inbegrepen) of het oplopen van handelskrediet boven 100.000 euro per krediet;
– Het oprichten of verwerven van een verbonden vennootschap door de Vennootschap;
– Het toekennen of de toestemming tot het creëren van een zekerheid of een ander recht op een deel van de onderneming, de roerende of onroerende goederen van de Vennootschap, met een marktwaarde van meer dan 10.000 euro;
– De beslissing of een voorstel tot ontbinding van een lid van de Easdaq Group of een verzoek tot aanstelling van een beheerder of een curator van de goederen van de Vennootschap;
– Het toekennen van een waarborg of een schadevergoeding door de Vennootschap die kan leiden tot een aansprakelijkheid voor een bedrag van meer dan 10.000 euro (uitgezonderd met betrekking tot de aansprakelijkheid van een lid van de Easdaq Group);
– Het aanspannen van een gerechtelijke of arbitrale procedure of het aangaan van een dading in een dergelijke procedure voor een bedrag van meer dan 10.000 euro (andere dan de gewone inning van schuldvorderingen);
– Het aangaan van overeenkomsten die buiten de normale grenzen vallen van de activiteiten of die over de gehele duur van de overeenkomst voor de Vennootschap een uitgave zou meebrengen van meer dan 25.000 euro of die in enig ander opzicht als belangrijk kunnen worden beschouwd voor de activiteiten van de Vennootschap;
– Het aangaan van een lening of het toekennen van een krediet door de Vennootschap buiten de normale grenzen van haar activiteit (en uitgezonderd met betrekking tot de aansprakelijkheid van een lid van de Easdaq Group);
– Het voorstel tot kapitaalvermindering of tot wijziging van de rechten verbonden aan om het even welke soor van aandelen van een lid van de Easdaq Group, of het inkopen, kopen of anderszins verwerven door een lid van de Easdaq Group van aandelen of effecten van dat lid van de Easdaq Group (ongeacht of hiervoor kapitaal wordt gebruikt);
– Het voorstel om het kapitaal van een lid van de Easdaq Group verder onder te verdelen, samen te voegen of te herbenoemen, en alle beslissingen of voorstellen om leden van de Easdaq Group te fuseren in of met andere entiteiten, een volledige of partiële splitsing door te voeren van een lid van de Easdaq Group, of een gelijkaardige transactie in de zin van artikel 676 van het Wetboek van vennootschappen;
– Een naamsverandering van een lid van de Easdaq Group, of een voorstel in die zin;
– De verplaatsing van de maatschappelijke- of andere zetel van een lid van de Easdaq Group;
– De transfer buiten de Easdaq Group van cash of cash equivalenten of een ander goed voor een bedrag van meer dan 25.000 euro per transfer (waarbij verbonden transfers worden samengevoegd), behalve indien daartoe reeds een bijzondere goedkeuring werd gegeven in toepassing van een sub paragraaf van dit artikel 17;
– De goedkeuring van het jaarlijkse budget of business plan van de Easdaq Group;
– De terugkoop of overdracht van een belang in aandelen of schuldinstrumenten of een voorstel in dit verband;
– Het verlenen van financieel bijstand (zoals deze uitdrukking is gedefinieerd in artikel 629 van het Wetboek van vennootschappen) door de Vennootschap voor de verwerving van aandelen van de Vennootschap;
– De benoeming, het vaststellen van de voorwaarden van tewerkstelling (of een wijziging daarvan) of de overdracht of het ontslag van een senior medewerker van de Vennootschap wiens basissalaris (commissies en bonussen niet inbegrepen) meer bedraagt dan 50.000 euro per jaar;
– Het aangaan, wijzigen of ontbinden van een overeenkomst of akkoord tussen enerzijds de Vennootschap en anderzijds Citadel, BSX, Dr. Peeters (of een verbonden vennootschap of een rechtsopvolger van Citadel, BSX of Dr. Peeters) en/of een andere directe of indirecte aandeelhouder van de Vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de Vennootschap;

12

- Enige andere transactie of regeling door de Vennootschap in het voordeel van Citadel, BSX, Dr. Peeters (of een verbonden vennootschap of een rechtsopvolger van Citadel, BSX of Dr. Peeters) en/of een andere directe of indirecte aandeelhouder van de Vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de Vennootschap;
- De koop of verkoop van goederen door de Vennootschap met een waarde van meer dan 25.000 euro per goed of de overdracht van een deel van het belang van de Vennootschap in Equiduct Systems Limited ("Equiduct");
- De registratie van intellectuele eigendom of het aanvragen van een licentie voor deze intellectuele eigendom door de Vennootschap, buiten de normale grenzen van haar activiteiten;
- Het overeenkomen van prijzen en andere voorwaarden met deelnemers (i.e. ofwel (i) aan persoon toegelaten tot Börse Berlin, indien deze persoon een deelnemersovereenkomst heeft afgesloten met BSX (of, naargelang het geval, een andere partij) teneinde gebruik te maken van een beurs die wordt ondersteund door de Easdaq Group, of (ii) een deelnemer aan één of meer beurzen of trading platforms waaraan de Vennootschap diensten verstrekt) en klanten;
- Het overeenkomen van verbintenissen of voorwaarden met enige publieke overheid;
- De benoeming en het ontslag van de bestuurders van Equiduct of andere leden van de Easdaq Group;
- Het vaststellen of wijzigen van de boekhoudkundige richtlijnen voor de Vennootschap; en
- Het uitoefenen van aandeelhoudersrechten door een lid van de Easdaq Group met betrekking tot een ander lid van de Easdaq Group.

Indien het aandeelhouderschap van Citadel daalt tot onder 20%, kunnen alle voormelde beslissingen en voorstellen worden aangenomen met een gewone meerderheid van stemmen. Indien het aandeelhouderschap van Citadel daarna opnieuw stijgt tot 20% of meer, komt de uitoefening van de rechten beschreven in dit artikel 17 opnieuw toe aan de Bestuurders van Categorie A.

**Artikel ~~19~~ 18 – Notulen**

Van de beraadslagingen van de raad van bestuur worden notulen bijgehouden die worden ondertekend door de voorzitter of de secretaris en de raad van bestuur en door de bestuurders die daarom verzoeken. Deze notulen worden bewaard in een speciaal daartoe bestemd register. De volmachten worden aan de notulen gehecht.

De afschriften of uittreksels die in rechte of anderszins moeten worden aangewend, worden ondertekend door twee (2) bestuurders of door een persoon die belast is met het dagelijks bestuur. Deze bevoegdheid kan worden gedelegeerd aan een gevolmachtigde.

**Artikel ~~20~~ 19 – Bevoegdheid van de raad van bestuur**

De raad van bestuur wordt bekleed met de meest uitgebreide bevoegdheden om alle daden te stellen die nuttig of noodzakelijk zijn voor de verwezenlijking van het maatschappelijk doel, ~~met inbegrip van deze die hem worden opgelegd door het koninklijk besluit van tien juni negentienhonderd zesennegentig betreffende de oprichting en de organisatie van EASDAQ [momenteel NASDAQ EUROPE] of door de daarop volgende koninklijke besluiten met een gelijkaardig voorwerp.~~

De raad van bestuur heeft niet de bevoegdheid om handelingen te stellen die door de wet of de statuten uitdrukkelijk voorbehouden zijn aan de algemene vergadering.

**Artikel ~~21~~ 20 – Bezoldiging**

Het mandaat van de bestuurder is onbezoldigd behoudens een andersluidende beslissing van de algemene vergadering.

**Artikel ~~22~~ 21 – Vertegenwoordiging**

De vennootschap wordt rechtsgeldig vertegenwoordigd voor alle handelingen, met inbegrip van de vertegenwoordiging in rechte, door twee (2) bestuurders die gezamenlijk -handelen.

De vennootschap wordt bij alle daden van dagelijks bestuur, inbegrepen de vertegenwoordiging in rechte, rechtsgeldig vertegenwoordigd door de persoon die belast is met het dagelijks bestuur, tenzij de raad van bestuur meer dan één persoon heeft belast met het dagelijks bestuur, in welk geval de vennootschap in alle handelingen, met inbegrip van deze in verband met gerechtelijke procedures, rechtsgeldig zal vertegenwoordigd worden door telkens twee van deze personen belast met het dagelijks bestuur, samenhandelend. Deze personen zullen ten aanzien van derden zich niet dienen te verantwoorden middels een voorafgaande beslissing van de raad van bestuur.

De vennootschap is eveneens geldig verbonden door bijzondere gevolmachtigden binnen de perken van hun mandaat.

**Artikel ~~23~~ 22 – Dagelijks bestuur en bijzonder comités**

13

§ 1. Dagelijks bestuur

De raad van bestuur kan het dagelijks bestuur van de vennootschap toevertrouwen aan één of meer personen, die geen bestuurders hoeven te zijn. Deze perso(on)(nen) worden benoemd op voordracht van de Bestuurders van Categorie A.

Indien het aandeelhouderschap van Citadel daalt tot onder 20%, is het voordrachtrecht van de Bestuurders van Categorie A, zoals beschreven in dit artikel 22, §1, niet van toepassing. Indien het aandeelhouderschap van Citadel daarna opnieuw stijgt tot 20% of meer, komt dit voordrachtrecht opnieuw toe aan de Bestuurders van Categorie A.

Indien de persoon die met het dagelijks bestuur is belast tevens een bestuurder is, zal deze de titel van gedelegeerd bestuurder dragen.

Ingeval van delegatie van het dagelijks bestuur bepaalt de raad van bestuur de bezoldiging voor deze functie.

~~De vennootschap wordt bij alle daden van dagelijks bestuur, inbegrepen de vertegenwoordiging in rechte, rechtsgeldig vertegenwoordigd door de persoon die belast is met het dagelijks bestuur, tenzij de raad van bestuur meer dan één persoon heeft belast met het dagelijks bestuur, in welk geval de vennootschap in alle handelingen, met inbegrip van deze in verband met gerechtelijke procedures, rechtsgeldig zal vertegenwoordigd worden door telkens twee van dergelijke personen belast met het dagelijks bestuur, samenhandelend. Deze personen zullen ten aanzien van derden zich niet dienen te verantwoorden middels een voorafgaande beslissing van de raad van bestuur.~~

Iedere persoon die belast is met het dagelijks bestuur kan voor bijzondere en welbepaalde aangelegenheden een deel van zijn bevoegdheden delegeren aan een volmachthouder, die geen aandeelhouder of bestuurder hoeft te zijn.

§ 2. Directiecomité

Overeenkomstig artikel 524bis van het Wetboek van vennootschappen kan de raad van bestuur zijn bestuursbevoegdheden overdragen aan een directiecomité, zonder dat deze overdracht evenwel betrekking kan hebben op het algemeen beleid van de vennootschap of op alle handelingen die op grond van andere bepalingen van de wet aan de raad van bestuur zijn voorbehouden.

De voorwaarden voor de aanstelling van de leden van het directiecomité, hun ontslag, hun bezoldiging, de duur van hun opdracht en de werkwijze van het directiecomité worden bepaald door de raad van bestuur.

Een lid van het directiecomité dat, rechtstreeks of onrechtstreeks, een belang van vermogensrechtelijke aard heeft dat strijdig is met een beslissing of een verrichting die tot de bevoegdheid van het comité behoort, stelt de andere leden hiervan in kennis voordat het comité beraadslaagt. Voorts moeten de voorschriften van ~~artikel 524~~artikelen 524bis en ter van het Wetboek van vennootschappen in acht worden genomen.

§ 3. Bijzondere comités

Zonder afbreuk te doen aan artikel 17, mag de raad van bestuur een uitvoerend-, benoemings-, remuneratie- en autitcomité oprichten, of elk ander comité dat hij bepaalt en waarvan hij de bevoegdheden bepaalt. Elk comité telt minstens één Bestuurder van Categorie A. Een vergadering van een comité kan pas geldig beraadslagen indien minstens twee bestuurders aanwezig of vertegenwoordigd zijn en waarvan er minstens één een Bestuurder van Categorie A is. Het comité beslist bij gewone meerderheid van de aanwezige of vertegenwoordigde bestuurders, met dien verstande dat een beslissing pas geldig genomen is wanneer één of meer Bestuurders van Categorie A voor deze beslissing hebben gestemd. Indien het aandeelhouderschap van Citadel echter daalt tot onder 20%, moet een comité niet minstens één Bestuurder van Categorie A tellen, kan het comité geldig beraadslagen zelfs indien geen Bestuurders van Categorie A aanwezig of vertegenwoordigd zijn en geen enkele beslissing van een dergelijk comité zal onderworpen zijn aan het vetorecht van een Bestuurder van Categorie A (wanneer een dergelijke bestuurder lid is van het comité). Indien het aandeelhouderschap van Citadel daarna opnieuw stijgt tot 20% of meer, komen deze rechten opnieuw toe aan de Bestuurders van Categorie A.

**Artikel ~~24~~23 – Controle**

De controle van de financiële positie, de jaarrekening en de regelmatigheid in het licht van het wetboek van vennootschappen en de statuten en de in de jaarrekening vast te stellen verrichtingen, wordt toevertrouwd aan één of meer commissarissen die door de algemene vergadering wordt/worden benoemd onder de erkende leden van het Instituut der Bedrijfsrevisoren.

De algemene vergadering bepaalt het aantal commissarissen en stelt hun vergoedingen vast.

De commissarissen worden benoemd voor een hernieuwbare termijn van drie jaar. Op straffe van schadevergoeding kunnen zij tijdens hun opdracht alleen worden ontslagen door de algemene vergadering

14

om wettige redenen en met eerbiediging van de procedure ingesteld door de artikels 135 en 136 van het wetboek van vennootschappen.

Bij gebrek aan commissarissen of wanneer alle commissarissen zich in de onmogelijkheid bevinden om hun functies uit te oefenen, roept de raad van bestuur onmiddellijk de algemene vergadering samen teneinde te kunnen overgaan tot hun benoeming of hun vervanging.

### Artikel 25~~24~~ – Taak van de Commissarissen

De commissarissen hebben gezamenlijk of individueel een onbeperkt recht van toezicht en controle op alle verrichtingen van de vennootschap. Zij kunnen ter plaatse kennis nemen van de boeken, de briefwisseling, de notulen en in het algemeen alle geschriften van de vennootschap. Ieder semester wordt hen door de raad van bestuur een samenvattende staat van activa en passiva van de vennootschap overgemaakt.

De commissarissen kunnen zich bij de uitoefening van hun functies op hun kosten laten bijstaan door aangestelden of andere personen voor wie zij aansprakelijk zijn.

### TITEL IV.   Algemene vergadering

### Artikel 26~~25~~ – Samenstelling en bevoegdheid

De regelmatig samengestelde algemene vergadering vertegenwoordigt alle aandeelhouders. De beslissingen die door de algemene vergadering worden opgenomen, zijn bindend voor alle aandeelhouders, ook voor de afwezigen of voor diegenen die een afwijkend standpunt innemen.

### Artikel 27~~26~~ – Vergaderingen

De jaarlijkse algemene vergadering wordt gehouden op de vierde donderdag van de maand juni om tien (10) uur. Indien deze dag een wettelijke feestdag is, wordt de vergadering gehouden op de daaropvolgende werkdag.

Een buitengewone algemene vergadering kan worden bijeengeroepen telkens als het belang van de vennootschap het vereist en zij moet worden bijeengeroepen telkens als de aandeelhouders die een vijfde van het onderschreven kapitaal vertegenwoordigen daarom verzoeken.

De algemene vergaderingen wordt gehouden op de maatschappelijke zetel van de vennootschap of op eender welke andere plaats aangewezen in de oproeping.

### Artikel 28~~27~~ – Bijeenroeping

De algemene vergadering komt bijeen na oproeping door de raad van bestuur, de voorzitter van de raad van bestuur of de commissaris(sen).

Deze oproeping vermeldt plaats, datum, uur en agenda van de algemene vergadering en dient te geschieden overeenkomstig de vormen en termijnen voorgeschreven door artikel 533 van het wetboek van vennootschappen.

Elk jaar wordt ten minste één algemene vergadering gehouden waarvan de agenda onder andere vermeldt: de bespreking van het jaarverslag (en, indien nodig, het verslag van de commissaris(sen)), de bespreking en goedkeuring van de jaarrekeningen, de verdeling van de winst, de ontlasting van de bestuurders en de commissaris(sen) en, in voorkomend geval, de benoeming van bestuurders en commissaris(sen).

De rechtsgeldigheid van de bijeenroeping kan niet worden betwist wanneer alle aandeelhouders aanwezig of geldig vertegenwoordigd zijn.

### Artikel 29~~28~~ – Toelating

Voorzover de raad van bestuur het in de oproeping vermeldt, dient iedere eigenaar van aandelen op naam, om te worden toegelaten tot de algemene vergadering, zijn intentie om aan de algemene vergadering deel te nemen, kenbaar te maken aan de raad van bestuur ten minste vier (4) volle dagen voor de datum van deze vergadering.

De houders van obligaties kunnen aan de algemene vergadering deelnemen voorzover zij hun titels neerleggen binnen de termijn en op de plaats die door de raad van bestuur in de oproeping is aangeduid. Deze termijn kan evenwel niet langer zijn dan vier (4) volle dagen.

### Artikel 30~~29~~ – Vertegenwoordiging

Iedere aandeelhouder kan per brief, ~~telegram, telex,~~ fax, e-mail of op iedere andere schriftelijke wijze volmacht geven om hem te vertegenwoordigen op de algemene vergadering. De volmachthouder hoeft geen aandeelhouder te zijn.

15

De raad van bestuur kan de vorm van de volmachten vaststellen in de oproeping en eisen dat deze ten minste vier (4) volle dagen vóór de algemene vergadering worden neergelegd op de plaats die is aangewezen in de oproeping.

### Artikel 3130 – Voorzitterschap van de algemene vergadering

Iedere algemene vergadering wordt voorgezeten door de voorzitter van de raad van bestuur of, in diens afwezigheid, door een gedelegeerd bestuurder of, in diens afwezigheid, door de bestuurder met de grootste anciënniteit.

### Artikel 3231 – Aantal stemmen– Uitoefening van het stemrecht

Ieder aandeel geeft recht op één stem.

De houders van obligaties mogen deelnemen aan de algemene vergadering, doch uitsluitend met raadgevende stem.

### Artikel 3332 – Beraadslaging

Vóór de opening van de zitting wordt een aanwezigheidslijst met de namen van de aandeelhouders en het aantal aandelen dat zij bezitten door elk van de hen of door hun gevolmachtigde ondertekend.

De algemene vergadering kan niet beraadslagen over punten die niet vermeld zijn op de agenda behalve wanneer alle aandeelhouders persoonlijk op de algemene vergadering aanwezig zijn en unaniem beslissen om over deze punten te beraadslagen.

De bestuurders beantwoorden de vragen die hen worden gesteld door de aandeelhouders met betrekking tot hun jaarverslag of de punten vermeld op de agenda. De commissaris(sen) beantwoordt(en) de vragen die hem (hun) worden gesteld door de aandeelhouders met betrekking tot zijn (hun) verslag.

Behoudens een andersluidende wettelijke of statutaire bepaling, wordt iedere beslissing door de algemene vergadering genomen bij gewone meerderheid van stemmen, ongeacht het aantal aandelen dat er is vertegenwoordigd. De blanco of ongeldige stemmen kunnen niet worden toegevoegd aan de uitgebrachte stemmen.

Niettegenstaande de voorgaande paragraaf en zonder afbreuk te doen aan de bepalingen van artikel 1817 hierboven en ~~enige wettelijke bepalingen die in voorkomend geval~~ aan quorumvereisten en/of strengere meerderheidsvereisten ~~opleggen~~die in voorkomend geval door wettelijke bepalingen worden opgelegd, zullen de hierna volgende beslissingen de instemming vereisen van minstens de houders van de meerderheid van de aandelen van de Categorie A:

- ~~iedere verhoging of vermindering van het maatschappelijk kapitaal van de Vennootschap waartoe door de~~, wanneer ~~de~~ zij worden voorgelegd aan de vergadering van de aandeelhouders (voor alle duidelijkheid wordt ~~beslist, met of zonder opheffing, beperking of verzaking van~~gespecificeerd dat het niet de bedoeling is dat dit artikel 32 aan de vergadering van aandeelhouders bevoegdheden toekent die zij niet heeft onder het ~~voorkeurrecht in dat verband;~~gemeen vennootschapsrecht):
- ~~iedere~~Iedere wijziging aan de statuten van de Vennootschap;
- ~~iedere beslissing tot ontbinding, vereffening, fusie, splitsing of beëindiging van de Vennootschap op welke wijze dan ook;~~
- ~~iedere beslissing tot inkoop van eigen aandelen en tot wedervervreemding van de ingekochte aandelen;~~
- ~~de benoeming en de beëindiging van het mandaat van de commissaris;~~
- ~~de goedkeuring van de jaarrekening; en~~
- ~~iedere beslissing om het toegestaan kapitaal te vernieuwen.~~
- De uitgifte of de toekenning van aandelen of andere effecten door de Vennootschap of de creatie, toekenning of uitgifte van een optie, warrant of het recht om in te schrijven op aandelen van de Vennootschap of het recht om deze te verwerven of het recht om effecten om te zetten in aandelen;
- De vaststelling of uibetaling van een dividend of de vaststelling of het doen van enige andere uitkering door de Vennootschap;
- De ontbinding van de Vennootschap;
- De vermindering van het kapitaal of een wijziging aan de rechten verbonden aan om het even welke soort van aandelen van de Vennootschap of het inkopen, kopen of anderszins verwerven van aandelen of effecten door de Vennootschap;
- Het verder onderverdelen, samenvoegen of herbenoemen van het kapitaal van de Vennootschap, of een fusie in of met andere entiteiten, een volledige of partiële splitsing van de Vennootschap, of een gelijkaardige transactie in de zin van artikel 676 van het Wetboek van vennootschappen;
- De verandering van de naam van de Vennootschap;

16

- De verplaatsing van de zetel van de Vennootschap;
- Het verlenen van financiële bijstand (zoals deze uitdrukking is gedefinieerd in artikel 629 van het Wetboek van vennootschappen) door de Vennootschap voor de verwerving van aandelen van de Vennootschap;
- Het aangaan van schulden door de Vennootschap voor meer dan 25.000 euro.

Met betrekking tot de benoeming van bestuurders en/of de commissaris, wordt, indien bij een stemming over de benoeming van een bestuurder (of een commissaris) geen enkele kandidaat de absolute meerderheid van de stemmen behaalt, overgegaan tot een nieuwe stemming over de twee kandidaten die het hoogste aantal stemmen hebben behaald.

Er wordt gestemd bij handopsteken of bij naamafroeping, tenzij de algemene vergadering er met eenvoudige meerderheid van de uitgebrachte stemmen anders over beslist. Elke bestuurder mag vragen dat er gestemd wordt bij naamafroeping. Het voorgaande doet geen afbreuk aan het recht van iedere aandeelhouder om per brief te stemmen door middel van een formulier dat minstens de volgende vermeldingen bevat: (i) identificatie van de aandeelhouder; (ii) aantal stemmen dat hij kan uitbrengen; (iii) voor iedere beslissing die volgens de agenda door de algemene vergadering moet worden genomen: "ja", "neen" of "onthouding".

**Artikel ~~34~~33 – Notulen**

De notulen van de algemene vergadering worden ondertekend door het bureau, zoals omschreven in artikel 546 van het wetboek van vennootschappen, en door de aandeelhouders die daarom verzoeken. De afschriften die in rechte of anderszins moeten worden aangewend, worden ondertekend door twee bestuurders.

### TITEL V.  Jaarrekening – Verdeling van de winst

**Artikel ~~35~~34 – Jaarrekening**

Het boekjaar begint op 1 januari en eindigt op 31 december van ieder jaar.

Op het einde van iedere boekjaar worden door de raad van bestuur de inventaris en de jaarrekening opgemaakt. De bestuurders stellen tevens een jaarverslag op waarin zij rekenschap afleggen over hun bestuur. Dit verslag bevat een commentaar op de jaarrekening teneinde een getrouw overzicht te geven van de gang van zaken en van de positie van de vennootschap, alsook van de andere elementen opgesomd in artikel 96 van het wetboek van vennootschappen.

**Artikel ~~36~~35 – Goedkeuring van de jaarrekening**

De jaarlijkse algemene vergadering aanhoort het jaarverslag verslag en, in voorkomend geval, het verslag van de commissaris(sen) en beraadslaagt over de goedkeuring van de jaarrekening.

Na de goedkeuring van de jaarrekening, spreekt de algemene vergadering zich in een bijzondere stemming uit over de kwijting van de bestuurders en, in voorkomend geval, van de commissaris(sen). Deze kwijting is maar geldig indien de balans geen vergetelheid, noch valse vermelding bevat die de werkelijke toestand van de vennootschap verhult, en, voor wat betreft de handelingen die in afwijking van de statuten werden gesteld of die ingaan tegen het Wetboek van vennootschappen, indien zij uitdrukkelijk zijn vermeld in de oproeping.

Binnen de 30 dagen na hun goedkeuring door de vergadering wordt de jaarrekening en het jaarverslag, alsook de andere documenten vermeld in de artikels 98 en 100 van het wetboek van vennootschappen door toedoen van de raad van bestuur neergelegd bij de Nationale Bank van België.

**Artikel ~~37~~36 – Uitkering**

Van de nettowinst vermeld in de jaarrekening wordt jaarlijks een bedrag van vijf (5 %) ingehouden voor de vorming van het wettelijk reservefonds, waarbij deze inhouding niet meer noodzakelijk is zodra het reservefonds tien procent (10 %) van het onderschreven kapitaal vertegenwoordigt.

Op voorstel van de raad van bestuur wordt het saldo jaarlijks ter beschikking gesteld van de algemene vergadering die er soeverein, ~~met eenvoudige meerderheid van de uitgebrachte stemmen en met de meerderheid van de stemmen verbonden aan de aandelen van Categorie A,~~ de bestemming van bepaalt, binnen de beperkingen opgelegd door artikel 617 van het wetboek van vennootschappen.

**Artikel ~~38~~37 – Betaling van dividenden**

De dividenden worden betaald op het tijdstip en de plaats die wordt aangeduid door de raad van bestuur.

17

Ingeval de dividenden die worden uitgekeerd aan aandelen op naam niet worden opgevorderd, is de betaling van deze dividenden verjaard ten gunste van de vennootschap na het verstrijken van een termijn van vijf jaar vanaf de betaalbaarstelling.

**Artikel ~~39~~38 – Interimdividenden**

De raad van bestuur heeft de bevoegdheid om ~~in de vorm van~~ een interimdividend ~~een voorschot op het resultaat van het lopende boekjaar~~ uit te betalen, binnen de beperkingen van artikel 618 van het wetboek van vennootschappen.

### TITEL VI.    Ontbinding – Vereffening

**Artikel ~~40~~39 – Voortijdige ontbinding**

Indien tengevolge van geleden verlies het netto actief gedaald is tot minder dan de helft van het maatschappelijk kapitaal, moeten de bestuurders de vraag over de ontbinding van de vennootschap en eventuele andere maatregelen voorleggen aan de algemene vergadering, die dient te beraadslagen overeenkomstig artikel 633 van het wetboek van vennootschappen.

Indien tengevolge van geleden verlies het netto actief gedaald is tot minder dan een vierde van het onderschreven kapitaal, kan de ontbinding worden uitgesproken door een vierde van de uitgebrachte stemmen op de vergadering.

Indien het netto actief is gedaald tot minder dan het wettelijk minimum, kan iedere belanghebbende van de rechtbank de ontbinding van de vennootschap vorderen. De rechtbank kan, in voorkomend geval, aan de vennootschap een termijn toestaan om haar toestand te regulariseren.

**Artikel ~~41~~40 – Vereffening**

Ingeval van ontbinding en vereffening van de vennootschap, om welke reden of op welk ogenblik ook, dient de vereffening te geschieden door tussenkomst van vereffenaars, die worden benoemd door de algemene vergadering en, bij gebrek aan dergelijke benoeming, door tussenkomst van de raad van bestuur die handelt als vereffeningscomité. Behoudens andersluidende beslissing treden de vereffenaars gezamenlijk op. Daartoe beschikking de vereffenaars over de meest uitgebreide bevoegdheden overeenkomstig artikel 186 en volgende van het wetboek van vennootschappen, behoudens de beperkingen opgelegd door de algemene vergadering. De algemene vergadering bepaalt de vergoedingen van de vereffenaars.

**Artikel ~~42~~41 – Uitkering**

~~§ 1. Ingeval van vereffening van de vennootschap binnen de achttien maand na datum van de statutenwijziging de dato 25 september 2007 zal na betaling van alle schulden en kosten opgelopen in verband met de vereffening of de consignatie de nodige gelden om deze schulden en kosten te voldoen, het netto actief in liquide middelen, aandelen of andere activa (de "Vereffeningsopbrengsten") als volgt en in de volgende volgorde verdeeld worden:~~

~~(i)    eerst zal ieder van de Aandelen van Categorie C Vereffeningsopbrengsten ontvangen waarvan de waarde gelijk is aan het respectieve volstorte gedeelte van die aandelen (indien de Vereffeningsopbrengsten onvoldoende zouden zijn, dan worden de Vereffeningsopbrengsten die de Aandelen van Categorie C ontvangen proportioneel aangepast; en~~

~~(ii)    vervolgens zal het restant van de Vereffeningsopbrengsten gelijk verdeeld worden over alle aandelen (i.e., een gelijk bedrag zal uitgekeerd worden aan elk aandeel ("de Resterende Betaling")),met dien verstande echter dat de respectieve Aandelen van Categorie C een bedrag per aandeel zullen uitgekeerd krijgen dat gelijk is aan de Resterende Betaling verminderd met het bedrag dat reeds is uitgekeerd aan dergelijk Aandeel van Categorie C ingevolge artikel 42 (i).~~

§2. Na ~~afloop van de termijn als bedoeld in § 1 zal na~~ aanzuivering van alle schulden, lasten en kosten van de vereffening, of het aanleggen van de nodige reserves ter betaling van deze schulden, lasten en kosten, zal het netto-actief aangewend worden voor de terugbetaling, in geld of in natura, van het volstortte en nog niet terugbetaalde bedrag van de aandelen. Het eventuele positieve saldo wordt in gelijke delen verdeeld onder de aandelen.

### TITEL VII.    Algemene bepalingen

**Artikel ~~43~~42 – Keuze van woonplaats**

Iedere bestuurder, directeur en vereffenaars die gedomicilieerd is in het buitenland doet keuze van woonplaats voor de duur van de uitoefening van zijn opdracht op de maatschappelijke zetel, waar alle betekeningen en een kennisgevingen betreffende de zaken van de vennootschap en de aansprakelijkheid

18

voor zijn bestuur hem rechtsgeldig op zijn naam kunnen worden gedaan, behoudens de kennisgevingen die overeenkomstig deze statuten geschieden.

De houders van aandelen op naam zijn gehouden om aan de vennootschap iedere wijziging van woonplaats mee te delen. Bij gebreke daarvan worden zij geachte keuze van woonplaats te hebben gedaan op hun voorgaande domicilie.

**Artikel 44~~43~~ – Wettelijke bepalingen vermeld in deze statuten**

De statutaire bepalingen die beperkt zijn tot een letterlijke herhaling van de wettelijke bepalingen van het wetboek van vennootschappen worden in de statuten ten informatieve titel vermeld ~~en verkrijgen door het loutere feit van hun herhaling in de statuten niet het karakter van een statutaire bepalingen in de zin en met het oog op de toepassing van artikel 554 van het wetboek van vennootschappen~~.

**Artikel 45~~44~~ – Aandeelhoudersovereenkomsten**

Alle of sommige van de aandeelhouders van de vennootschap mogen overeenkomsten sluiten in verband met hun aandeelhouderschap.

**VOOR GELIJKVORMIGE COÖRDINATIE**

**Sara BERQUIN**
**Krachtens volmacht**
**Notarieel medewerkster "Berquin Notarissen"**

D. 208-1598 / R. 38.721 / ES 26.06.2008 / SB / vv

# EASDAQ NV

Lei 19, bus 11, 3000 Leuven, België
RPR Leuven 0455.240.893

(de "**Vennootschap**")

**GECOMBINEERD BIJZONDER VERSLAG VAN DE RAAD VAN BESTUUR OVEREENKOMSTIG (I) DE ARTIKELEN 582, 596 EN 598 VAN HET WETBOEK VAN VENOOTSCHAPPEN MET BETREKKING TOT DE UITGIFTE VAN (BEVOORRECHTE) NIEUWE AANDELEN KLASSE A EN (GEWONE) AANDELEN KLASSE B BENEDEN DE FRACTIEWAARDE VAN DE BESTAANDE AANDELEN EN MET OPHEFFING VAN HET VOORKEURRECHT TEN GUNSTE VAN CITADEL TACTICAL INVESTMENTS LLC EN (II) DE ARTIKELEN 582, 583, 596 EN 598 VAN HET WETBOEK VAN VENNOOTSCHAPPEN MET BETREKKING TOT DE UITGIFTE VAN WARRANTS TEGEN EEN UITGIFTEPRIJS DIE LAGER IS DAN DE FRACTIEWAARDE VAN DE BESTAANDE AANDELEN EN MET OPHEFFING VAN HET VOORKEURRECHT TEN GUNSTE VAN BEPAALDE PERSONEN**

De Raad van Bestuur (de "**Raad**") legt hierbij aan de buitengewone algemene vergadering van aandeelhouders van de Vennootschap zijn bijzonder verslag voor overeenkomstig (i) de artikelen 582, 596 en 598 van het Wetboek van vennootschappen ("**W.Venn.**") met betrekking tot de uitgifte van nieuwe aandelen Klasse A en Klasse B beneden de fractiewaarde van de bestaande aandelen en met opheffing van het voorkeurrecht ten gunste van Citadel Tactical Investments LLC; en (ii) de artikelen 582, 583, 596 en 598 W.Venn. met betrekking tot de uitgifte van warrants tegen een uitgifteprijs die lager is dan de fractiewaarde van de bestaande aandelen en met opheffing van het voorkeurrecht ten gunste van Börse Berlin AG en Dr. Jos. B. Peeters (de "**Begunstigden**").

Overeenkomstig de artikelen 582, 583, 596 en 598 W.Venn. beschrijft de Raad in dit verslag het doel van en de rechtvaardiging voor de uitgifte van (gewone en bevoorrechte) aandelen en warrants en de opheffing van het voorkeurrecht ten gunste van bepaalde begunstigden (zoals deze in dit verslag worden geïdentificeerd), de uitgifteprijs en de (financiële) gevolgen van deze verrichtingen voor de bestaande aandeelhouders en warranthouders (ook in verhouding tot hun deelname in het maatschappelijk kapitaal en de winst van de Vennootschap). De uitgifte van aandelen en warrants volgt op de consolidatie van de aandelen van de Vennootschap en de creatie van een nieuwe klasse aandelen Klasse A waaraan bijzondere rechten zijn verbonden, wat in een afzonderlijk bijzonder verslag van de Raad van dezelfde datum als onderhavig bijzonder verslag wordt gerechtvaardigd en dat samen moet worden gelezen met dit verslag.



## I.    UITGIFTE VAN AANDELEN

### 1.1.    DOEL EN RECHTVAARDIGING VAN DE KAPITAALVERHOGING

Er wordt verwezen naar het gecombineerd verslag (jaarverslag en bijzonder verslag overeenkomstig artikel 633 W.Venn.) dat op de jaarvergadering van 25 juni 2009 werd voorgelegd en waarin werd verduidelijkt dat de Vennootschap naar alternatieve financieringsbronnen of mogelijke vormen van samenwerking met derde partijen zocht, gelet op (i) de toestand van de activiteiten, (ii) de sedert oktober 2008 geldende marktomstandigheden en (iii) de voor de Vennootschap beschikbare middelen.

De Vennootschap heeft in de Citadel Groep een strategische partner gevonden die haar in staat te stellen om verder te gaan met de implementering van haar visie als een Pan-Europees verhandelingsplatform gericht op het aanbieden van diensten in verband met de beste uitvoering ("best execution) op een order- per-order basis.. Als onderdeel van deze strategische samenwerking zal Citadel Tactical Investments LLC ("Citadel") inschrijven op een kapitaalverhoging van de Vennootschap ten belope van EUR 15 miljoen. Naar verwachting zal deze inbreng in kapitaal de Vennootschap de nodige tijd geven om haar huidige activiteiten verder te laten groeien en om haar productaanbod uit te breiden opdat de Vennootschap zo spoedig als mogelijk operationeel break-even zou draaien.

De uitgifteprijs bedraagt EUR 0,375 per aandeel. De Raad is ervan overtuigd dat deze uitgifteprijs minstens gelijk is aan de intrinsieke waarde (en de netto-actiefwaarde) van de Vennootschap op het einde van het laatste boekjaar en op datum van dit verslag. Gelet op het bedrag van deze investering zal Citadel op het ogenblik dat deze verrichting wordt voltooid, de meerderheidsaandeelhouder van de Vennootschap worden. De voltooiing van de verrichting ("closing") zal normaliter plaatsvinden op dezelfde datum als de buitengewone algemene vergadering.

### 1.2.    UITGIFTE VAN AANDELEN EN DE AARD VAN DE UITGEGEVEN AANDELEN

In het licht van deze verrichting zal de Vennootschap 37.500.000 Aandelen Klasse B uitgeven (wat de klasse van aandelen is waaraan geen bijzondere rechten zijn verbonden, gewone aandelen) en 2.500.000 Aandelen Klasse A (wat bevoorrechte aandelen zijn) (samen, de **"Aandelen"**). Voor meer informatie betreffende de consolidatie van de klassen van aandelen, de creatie van een nieuwe bevoorrechte Klasse A en een beschrijving van de respectievelijke rechten die aan deze aandelen zijn verbonden, wordt verwezen naar het bijzonder verslag van de Raad overeenkomstig artikel 560 W.Venn. van dezelfde datum als dit verslag. Één derde (1/3) van de uitgifteprijs van de Aandelen zal volledig worden volgestort bij de kapitaalverhoging. Het resterende gedeelte van de inbreng in kapitaal dat niet onmiddellijk is volgestort, zal in elk geval betaalbaar zijn op de vijfde verjaardag van de kapitaalverhoging. De Raad kan, rekening houdend met bepaalde beperkingen en naargelang de noden van de activiteiten van de Vennootschap, dit resterende gedeelte echter vroeger opvragen.

### 1.3. Uitgifte van aandelen aan een uitgifteprijs die minstens gelijk is aan de intrinsieke waarde maar lager dan de fractiewaarde van de bestaande aandelen (Artikelen 582, 596 en 598 W.Venn.) *

Het geplaatst kapitaal van de Vennootschap bedraagt momenteel EUR 113.526.848,9, vertegenwoordigd door 9.077.487 aandelen, wat resulteert in een fractiewaarde van ongeveer EUR 12,5 per aandeel.

De voorgestelde uitgifteprijs van EUR 0,375 is daarom lager dan de huidige fractiewaarde van de aandelen.

De uitgifteprijs is echter minstens gelijk aan de intrinsieke waarde van de bestaande aandelen, ook wanneer de intrinsieke waarde wordt berekend op basis van de meest recent goedgekeurde jaarrekening. Het eigen vermogen (of de netto-actiefwaarde) van de Vennootschap, zoals uiteengezet in de geauditeerde jaarrekening van 31 december 2008, bedraagt EUR 2.896.626,61. Indien de intrinsieke waarde wordt berekend als een netto-actiefwaarde, dan is deze gelijk aan 2.896.626,61/9.077.487 of ongeveer EUR 0,32 per aandeel. Daarenboven heeft de Vennootschap sedert de afsluiting van het laatste boekjaar verliezen blijven oplopen, waardoor de netto-actiefwaarde sedert die datum verder is gedaald. De Raad is er in zijn zoektocht naar alternatieve financieringsbronnen of mogelijke vormen van samenwerking met derde partijen dan ook niet in geslaagd mogelijke inschrijvers te vinden die bereid zouden zijn geweest deel te nemen aan een kapitaalverhoging tegen betere voorwaarden.

Daarom is de Raad van mening dat de uitgifteprijs van EUR 0,375 minstens gelijk is aan de huidige intrinsieke waarde van de aandelen van de Vennootschap.

De kapitaalverhoging zal een weerslag hebben op de vermogensrechten (met name, onder andere, dividendrechten en rechten op liquidatieopbrengsten) en lidmaatschapsrechten (met name, onder andere, stem- en voorkeurrechten) die aan de bestaande aandelen zijn verbonden.

Dit vloeit voort uit het feit dat (i) de kapitaalvertegenwoordigende waarde van alle (bestaande en nieuwe) aandelen na de kapitaalverhoging zou worden gelijkgeschakeld; en (ii) sommige van de uitgegeven aandelen (met name, de Aandelen Klasse A) bijzondere rechten zullen hebben in vergelijking met de rechten verbonden aan de Aandelen Klasse B (wat de klasse van gewone aandelen is waarin naar verwachting alle bestaande aandelen van de Vennootschap na de buitengewone algemene vergadering zullen worden geconsolideerd).

Zoals hierboven reeds werd uiteengezet, heeft de Vennootschap behoefte aan significante bijkomende middelen teneinde haar activiteiten als verhandelingsplatform te kunnen voortzetten en om haar huidige bedrijfskosten te kunnen financieren. De voorgestelde investering, aan de voorgestelde uitgifteprijs, is daarom in het belang van de Vennootschap.

### 1.4. Opheffing van het voorkeurrecht met betrekking tot de uitgifte van nieuwe aandelen Klasse A en Klasse B ten gunste van Citadel (Artikelen 596 en 598 W. Venn.)

Met betrekking tot de voorgestelde uitgifte van aandelen stelt de Raad voor om het voorkeurrecht van de huidige aandeelhouders op te heffen.



De begunstigde van de opheffing van het voorkeurrecht is Citadel, een dochtervennootschap van de Citadel Groep, een toonaangevende financiële instelling actief in beheer van activa en kapitaaltransacties (*"asset and capital management"*). Er wordt voorgesteld om 40.000.000 nieuwe aandelen (2.500.000 Aandelen Klasse A en 37.500.000 Aandelen Klasse B) uit te geven, waardoor het totale aantal aandelen van 9.077.487 tot 49.077.487 zou stijgen. Na de kapitaalverhoging zullen de huidige aandeelhouders nog 18,5% van de totale aandelen bezitten. Deze verrichting veroorzaakt voor de huidige aandeelhouders bijgevolg een verwaterend effect van 81,5%.

Wat de uitgifteprijs, de rechtvaardiging ervan en de financiële gevolgen van de verrichting voor de huidige aandeelhouders betreft, wordt verwezen naar het bovenstaande deel 1.3.

## II.   UITGIFTE VAN WARRANTS

### 2.1.   DOEL VAN EN RECHTVAARDIGING VOOR DE UITGIFTE VAN WARRANTS

Zoals in meer detail wordt uiteengezet in bijzonder verslag van de Raad overeenkomstig artikel 560 W.Venn., wordt verwacht dat de Vennootschap, voorafgaandelijk aan de uitgifte van aandelen zoals omschreven in deel I van dit verslag en de uitgifte van warrants zoals omschreven in deel II van dit verslag, alle bestaande klassen van aandelen zal consolideren in een nieuwe Klasse B waaraan geen bijzondere rechten zullen zijn verbonden. Dit betekent dat de houders van de huidige aandelen klasse A en klasse C door deze verrichting, naast de verwatering die zij ondergaan in dezelfde mate als alle andere aandeelhouders, eveneens alle uitgebreide bijzondere rechten verliezen die aan de huidige aandelen klasse A en klasse C zijn verbonden.

Alle huidige bestaande A aandelen worden gehouden door de heer Jos. B. Peeters (**"JBP"**). Alle huidige bestaande C aandelen worden gehouden door Börse Berlin AG (**"BSX"**). Teneinde JBP te compenseren voor het verlies van de bijzondere rechten die aan zijn A aandelen zijn verbonden en teneinde zich te verzekeren van de noodzakelijke steun van JBP voor de verrichting, heeft de Vennootschap beslist om JBP 1.100.356 warrants toe te kennen om in te schrijven op nieuwe Aandelen Klasse B. Teneinde BSX te compenseren voor het verlies van de bijzondere rechten die aan haar C aandelen zijn verbonden en teneinde zich te verzekeren van de noodzakelijke steun van BSX voor de verrichting, heeft de Vennootschap beslist om BSX 210.000 warrants toe te kennen om in te schrijven op nieuwe Aandelen Klasse B.

De uitgifte van de warrants is een essentieel element van de verrichting, gericht op de herkapitalisering van de Vennootschap en op het veiligstellen van haar leefbaarheid op lange termijn (zoals hierboven uiteengezet in deel 1.1) en is daarom in het belang van de Vennootschap.

### 2.2   UITGIFTE VAN WARRANTS EN AARD VAN DE UITGEGEVEN WARRANTS

De Vennootschap stelt voor om 1.100.356 warrants aan JBP en twee schijven van elk 105.000 warrants aan BSX toe te kennen, kosteloos, met volgende uitoefeningsvoorwaarden:



- JBP zal zijn gerechtigd zijn warrants op één of meerdere tijdstippen uit te oefenen gedurende de uitoefeningsperiode en om in geld in te schrijven op 1.100.356 nieuwe aandelen Klasse B. Indien de warrants worden uitgegeven op 7 augustus 2009, start de uitoefeningsperiode op 7 februari 2010 en eindigt ze op 7 augustus 2012;
- BSX zal zijn gerechtigd om gedurende dezelfde uitoefeningsperiode zijn warrants uit te oefenen en in geld in te schrijven op het aantal nieuwe aandelen Klasse B zoals hierna uiteengezet, op voorwaarde dat BSX zijn warrants slechts kan uitoefenen en op de nieuwe aandelen Klasse B kan inschrijven indien één van de volgende gebeurtenissen plaatsvindt:
    o wat de eerste schijf van 105.000 warrants betreft: bij de uitoefening (op ieder ogenblik) door JBP van diens recht om in te schrijven op nieuwe aandelen Klasse B overeenkomstig de voorwaarden van de aan hem toegekende warrants; of
    o wat de tweede schijf van 105.000 warrants betreft: bij de uitoefening door JBP van diens recht om bepaalde aandelen van de Vennootschap te verwerven van BSX overeenkomstig de voorwaarden van een bestaande call optie overeenkomst.

De warrants zijn eveneens uitoefenbaar en JBP en BSX zullen het recht hebben in te schrijven op het overeenstemmende aantal nieuwe aandelen Klasse B onmiddellijk voorafgaand aan een wijziging van de controle van de Vennootschap, een inkoop van eigen aandelen door de Vennootschap of de ontbinding en vereffening van de Vennootschap. De huidige warrants mogen worden vervangen door nieuwe warrants (die, met uitzondering van de uitoefeningsprijs, substantieel dezelfde voorwaarden zullen hebben) in het geval van een uitgifte door de Vennootschap van nieuwe aandelen Klasse B (of van effecten die converteerbaar zijn in nieuwe aandelen Klasse B of die het recht geven om in te schrijven op nieuwe aandelen Klasse B) tegen een uitgifteprijs of uitoefeningsprijs lager dan EUR 0,375 (zie hieronder deel 2.3).

<u>2.3. Uitgifte van warrants aan een uitoefeningsprijs die lager is dan de fractiewaarde van de bestaande aandelen (artikelen 582, 583, 596 en 598 W.Venn.)</u>

De uitoefeningsprijs van de warrants bedraagt EUR 0,375 wat identiek is aan de uitgifteprijs die in de kapitaalverhoging wordt gebruikt. Wat de rechtvaardiging van deze prijs betreft, wordt verwezen naar deel 1.3.

<u>2.4. Opheffing van het voorkeurrecht met betrekking tot de uitgifte van nieuwe warrants ten gunste van JBP en BSX (artikelen 596 en 598 W.Venn.)</u>

De uitgifte van warrants is voorbehouden aan de huidige houders van aandelen klasse A en klasse C, namelijk JBP en BSX, vermits deze warrants voormelde aandeelhouders moeten compenseren voor het verlies van de bijzondere rechten verbonden aan deze aandelen als gevolg van de consolidatie van de bestaande klassen van aandelen, wat op zich een voorwaarde is voor de inschrijving door Citadel (zie deel 2.1 hierboven).



Door de uitgifte van warrants kan, bij de uitoefening van deze warrants, een maximum van 1.310.356 nieuwe aandelen Klasse B worden uitgegeven, waardoor het totale aantal aandelen zou stijgen van 49.077.487 (na de in deel I uiteengezette kapitaalverhoging) tot 50.387.843. De aandelen die onmiddellijk na de in deel I uiteengezette kapitaalverhoging zullen bestaan, zullen 97,4% van het totale aantal aandelen vertegenwoordigen. Uitgaande van de uitoefening van de warrants, bedraagt het verwaterende effect van de transactie voor de aandeelhouders (in hun samenstelling onmiddellijk na de kapitaalsverhoging) 2,6%.

20 juli 2009

Namens de Raad van Bestuur,

Artur Fischer
*Bestuurder*

**≡ℐ ERNST & YOUNG**

Ernst & Young
Réviseurs d'Entreprises
Bedrijfsrevisoren
De Kleetlaan 2
B - 1831 Diegem

Tel: +32 (0)2 774 91 11
Fax: +32 (0)2 774 90 90
www.ey.com/be

## Verslag van de commissaris betreffende de uitgifte van aandelen en warrants beneden fractiewaarde en de opheffing van het voorkeurrecht ter gelegenheid van de voorgestelde kapitaalverhoging van Easdaq nv

### Opdracht

Overeenkomstig de artikelen 582, 596 en 598 van het Wetboek van Vennootschappen, brengen wij, in onze hoedanigheid van commissaris, verslag uit over de financiële en boekhoudkundige gegevens opgenomen in het bijzonder verslag van de raad van bestuur van 20 juli 2009 betreffende de uitgifte van aandelen en warrants beneden fractiewaarde en de opheffing van het voorkeurrecht, en stellen wij de intrinsieke waarde van het aandeel Easdaq nv (de "Vennootschap") vast.

### Voorgenomen verrichtingen

Er wordt voorgesteld het kapitaal van de Vennootschap te verhogen met een bedrag van € 15.000.000. De kapitaalverhoging zal volledig worden onderschreven door Citadel Tactical Investments llc en zal gepaard gaan met de uitgifte van (i) 2.500.000 aandelen Klasse A (€ 0,375 per aandeel, waarvan € 0,125 onmiddellijk zal worden volgestort) en (ii) 37.500.000 aandelen Klasse B (€ 0,375 per aandeel, waarvan € 0,125 onmiddellijk zal worden volgestort). De kapitaalverhoging zal plaats vinden onder de opschortende voorwaarde van een voorafgaande beslissing tot (i) afschaffing van alle bestaande soorten van aandelen en gelijkschakeling van alle rechten verbonden aan de bestaande aandelen, (ii) creatie van een nieuw soort aandelen Klasse A waaraan bijzondere rechten zijn verbonden en creatie van een nieuw soort aandelen B waaraan geen bijzondere rechten zijn verbonden, (iii) indeling van alle bestaande aandelen in Klasse B, (iv) bevestiging dat de bestaande warrants uitgegeven door de Vennootschap voortaan bij uitoefening recht geven op aandelen Klasse B, en (v) wijziging van de statuten tot vaststelling van de rechten verbonden aan de te creëren soorten aandelen Klasse A en Klasse B.

Er wordt verder voorgesteld 1.310.356 warrants uit te geven (1.100.356 warrants ten gunste van de heer Jos B. Peeters en 210.000 warrants ten gunste van Börse Berlin ag), waarvan de uitgifte- en uitoefenvoorwaarden in detail zijn uiteengezet in het bijzonder verslag van de raad van bestuur van 20 juli 2009.

De voorgenomen verrichtingen, en in het bijzonder de uitgifteprijs en de financiële gevolgen voor de aandeelhouders, worden omstandig verantwoord in het bijzonder verslag van de raad van bestuur van 20 juli 2009.



Société civile ayant emprunté la forme d'une société coopérative
à responsabilité limitée
Burgerlijke vennootschap die de rechtsvorm van een coöperatieve

**ᴤ ERNST & YOUNG**

## Intrinsieke waarde van de bestaande aandelen

In de huidige situatie van de Vennootschap, is het boekhoudkundig eigen vermogen een betrouwbare benadering van de intrinsieke waarde.

Het boekhoudkundig eigen vermogen van de Vennootschap, zoals dit blijkt uit de geauditeerde jaarrekening per 31 december 2008, bedraagt € 2.896.626,61, zodat de intrinsieke waarde van het aandeel 2.896.626,61/9.077.487 = € 0,32 bedraagt.

De uitgifteprijs ad € 0,375 ligt bijgevolg hoger dan de intrinsieke waarde.

### Controle

Wij hebben de financiële en boekhoudkundige gegevens opgenomen in het bijzonder verslag van de raad van bestuur van 20 juli 2009 gecontroleerd overeenkomstig de algemene controlenormen van het Instituut van de Bedrijfsrevisoren.

De jaarrekening per 31 december 2008 werd door ons onderworpen aan een volkomen controle overeenkomstig de normen van het Instituut van de Bedrijfsrevisoren. Deze controle heeft geleid tot een verklaring zonder voorbehoud, met een toelichtende paragraaf. De toelichtende paragraaf heeft betrekking op de continuïteit.

### Besluit

Als besluit van de door ons uitgevoerde werkzaamheden, verricht overeenkomstig de normen van het Instituut van de Bedrijfsrevisoren, kunnen wij verklaren dat de in het bijzonder verslag van de Raad van Bestuur van 20 juli 2009 vermelde financiële en boekhoudkundige gegevens getrouw zijn en voldoende om de algemene vergadering van aandeelhouders voor te lichten die moet stemmen over de uitgifte van aandelen en warrants beneden fractiewaarde en de opheffing van het voorkeurrecht.

De voorgestelde uitgifteprijs van de aandelen en warrants bedraagt € 0,375 en ligt hoger dan de intrinsieke waarde van € 0,32 per aandeel.

Brussel, 20 juli 2009

Ernst & Young Bedrijfsrevisoren bcvba
Commissaris
vertegenwoordigd door

Marc Van Steenvoort
Vennoot

10MVS0004

2

BUITENGEWONE ALGEMENE VERGADERING VAN EASDAQ NV

## Volmacht

**Gelieve deze volmacht waar nodig in te vullen en te ondertekenen indien u wenst te worden vertegenwoordigd op de buitengewone algemene vergadering van Easdaq NV, die zal worden gehouden op 7 augustus 2009. Gelieve deze volmacht onmiddellijk na ontvangst, correct ingevuld en ondertekend, via koerier of per fax (+49(0)30 31109178) te bezorgen aan EASDAQ NV, 3000 Leuven, Lei 19 bus 11, ter attentie van de heer Artur Fischer.**

Ondergetekende:

**Naam:**                                    _____

**Adres/Zetel:**                             _____

                                             _____

**Houder van aantal aandelen:**             _____

                                             **Klasse B**

**Stelt als bijzondere lasthebber aan,** individueel en met de macht om in de plaats te stellen:

Timothy Verhoest, Chemin de Pomone 13, 1228 Genève, Zwitserland, of
Artur Fischer, Jänickestrasse 121, 14167 Berlin, Steglitz-Zehlendorf, Duitsland,

aan wie ondergetekende volmacht verleent om hem/haar te vertegenwoordigen op de buitengewone algemene vergadering van de vennootschap Easdaq NV, met zetel te Lei 19 bus 11, B-3000 Leuven (België) (ondernemingsnummer 0455.240.893 – RPR Leuven), die zal worden gehouden op de kantoren van notaris Eric Spruyt, Lloyd Georgelaan 11 te 1000 Brussel, op 7 augustus 2009 om 10.00 uur, en die zal beraadslagen omtrent de agenda vermeld als bijlage bij de oproepingsbrief.

De lasthebber mag ondermeer, zonder hiertoe beperkt te zijn:

- Deelnemen aan elke vergadering met dezelfde agenda voor het geval de eerste vergadering niet geldig zou kunnen beraadslagen of niet zou worden (kunnen) gehouden op de hierboven vermelde datum en uur.

- Deelnemen aan alle beraadslagingen en in naam van ondergetekende alle voorstellen die betrekking hebben op de agenda goedkeuren.

BUITENGEWONE ALGEMENE VERGADERING VAN EASDAQ NV

- Verklaren dat ondergetekende zichzelf als regelmatig opgeroepen beschouwt, dat hij/zij de bepalingen kent van de artikelen 64 1°, 178, 533 en 535 van het Wetboek van vennootschappen, en dat hij/zij verzaakt aan de oproepingsformaliteiten en -termijn en aan het instellen van een eventuele nietigheidsvordering wegens een onregelmatigheid naar de vorm.

- Verklaren dat ondergetekende de verslagen vermeld op de agenda vooraf heeft ontvangen, dat hij/zij over voldoende tijd beschikte om deze verslagen grondig te bestuderen en dat hij/zij geen vragen of opmerkingen heeft betreffende deze verslagen.

- Verklaren dat ondergetekende een integrale kopie heeft ontvangen van het ontwerp van de statuten waarnaar wordt verwezen in de agenda van de buitengewone algemene vergadering.

- Beslissen tot (i) afschaffing van alle bestaande soorten van aandelen en tot gelijkschakeling van alle rechten verbonden aan de bestaande aandelen, (ii) creatie van een nieuwe soort aandelen Klasse A en creatie van een nieuwe soort aandelen Klasse B, (iii) indeling van alle bestaande aandelen in Klasse B, en (iv) wijziging van de statuten van de vennootschap in lijn met het ontwerp van de statuten waarnaar wordt verwezen in de agenda van de buitengewone algemene vergadering; bevestiging dat de bestaande warrants uitgegeven door de vennootschap voortaan bij uitoefening recht geven op aandelen Klasse B

- De inbreng in geld goedkeuren die op de agenda van de buitengewone algemene vergadering wordt vermeld.

- De uitgifte van warrants goedkeuren die op de agenda van de buitengewone algemene vergadering wordt vermeld.

- In het algemeen, stemmen voor alle voorstellen betreffende de agendapunten.

- In het algemeen, alle processen-verbaal, aanwezigheidslijsten, overeenkomsten, bevestigingen, kennisgevingen en ieder ander document tekenen, in de plaats stellen en, in het algemeen, alles doen dat nuttig of noodzakelijk is voor de uitvoering van deze volmacht, voor zover nodig met belofte van bekrachtiging.

Instructies aan de lasthebber

Ondergetekende geeft hierbij uitdrukkelijk opdracht aan de lasthebber om deel te nemen aan de buitengewone algemene vergaderingen, zelfs indien het bewijs niet voorligt dat de aandeelhouders, de bestuurders, de commissaris en/of de andere relevante houders van effecten geldig zijn opgeroepen tot de buitengewone algemene vergaderingen en, voor zover toepasselijk, indien de betrokkenen niet allen hebben verzaakt aan (i) de termijnen en de vormvereisten voor oproeping tot de buitengewone algemene vergaderingen en (ii) het recht om bepaalde verslagen en andere documenten te ontvangen, zoals voorgeschreven door de relevante artikelen van het Wetboek van vennootschappen.

Buitengewone Algemene Vergadering van Easdaq NV

Schadeloosstelling van de lasthebbers

Ondergetekende verbindt er zich hierbij toe om de lasthebber schadeloos te stellen voor elke schade die hij/zij zou kunnen oplopen ten gevolge van enige handeling gesteld ter uitvoering van deze volmacht, op voorwaarde evenwel dat hij/zij de grenzen van zijn/haar bevoegdheden heeft nageleefd. Verder verbindt ondergetekende zich ertoe niet de nietigheid van enig besluit goedgekeurd door de lasthebber te vorderen en geen enkele schadevergoeding van hem/haar te vorderen, op voorwaarde evenwel dat laatstgenoemde de grenzen van zijn/haar bevoegdheden heeft nageleefd.

**Gedaan te:** _____(plaats/place),

**Op:** _____(datum/date).


_____
(handtekening/signature)

_____
(handtekening/signature)


_____
(naam/name)

_____
(naam/name)


_____
(functie/function)

_____
(functie/function)

# EASDAQ NV

Lei 19 Box 11, B-3000 Leuven, Belgium
RPR Leuven 0455.240.893

## Agenda extraordinary general shareholders meeting 7 August 2009

*Agenda:*

1. Resolution that the resolutions of the shareholders meeting under agenda items (3), (6), (7), (8), (9) and (10) are inter-conditional upon each other (the "**Condition Precedent**")

2. Acknowledgement of and deliberation on the special report of the board of directors in accordance with section 560 of the Belgian Companies Code regarding, amongst other things, (i) the cancellation of all existing classes of shares and the equalization of all rights attaching to the existing shares, (ii) the creation of a new class of "class A" shares with special rights attaching thereto ("**Class A**") and the creation of a new class of "class B" shares without special rights attaching thereto ("**Class B**"), (iii) the allocation of all existing shares to Class B shares, (iv) the confirmation that, henceforth, the existing warrants issued by the company will entitle the holder thereof to Class B shares upon exercise, and (v) the amendments to the articles of association to determine the rights that will attach to the new classes of Class A shares and Class B shares

3. Resolution to (i) cancel all existing classes of shares and to equalize all rights attaching to the existing shares, (ii) create a new class of Class A shares and a new class of Class B shares, (iii) allocate all existing shares to Class B shares, and (iv) amend the articles of association of the company substantially in the form as attached hereto as appendix (b); confirmation that, henceforth, the existing warrants issued by the company will entitle the holder thereof to Class B shares upon exercise

4. Acknowledgement of and deliberation on the special report of the board of directors in accordance with (i) sections 582, 596 and 598 of the Belgian Companies Code regarding the issuance of Class A shares and Class B shares below fractional value of the existing shares, with cancellation of the preferential subscription rights for the benefit of CITADEL Tactical Investments LLC ("**Citadel**") and (ii) sections 582, 583, 596 and 598 of the Belgian Companies Code regarding the issuance of warrants at an exercise price (per share) which is lower than the current fractional value of the shares (the "**Warrants**"), with cancellation of the preferential subscription rights for the benefit of Börse Berlin AG and Mr. Jos B. Peeters (the "**Beneficiaries**")

5. Acknowledgement of and deliberation on the special report of the statutory auditor (i) in accordance with sections 582, 596 and 598 of the Belgian Companies Code regarding the issuance of Class A shares and Class B shares below fractional value of the existing shares, with cancellation of the preferential subscription rights for the benefit of Citadel and (ii) in accordance with sections 582, 596 and 598 of the Belgian Companies Cody regarding the issuance of the Warrants with cancellation of the preferential subscription rights for the benefit of the Beneficiaries

6. Resolution to increase the company's share capital with an amount of EUR 15,000,000 by issuance of (i) 2,500,000 Class A shares (EUR 0.375 per Class A share, of which 0.125

per Class A share will be immediately paid-up) and (ii) 37,500,000 Class B shares (EUR 0.375 per Class B share, of which 0.125 per Class B share will be immediately paid-up)

7. Acknowledgement of the realization of the capital increase and of the issuance of the Class A shares and Class B shares and equalization of the fractional value of all shares

8. Resolution to issue 1,310,356 Warrants with the issue and exercise conditions as set out in the special report of the board of directors referred to under agenda item 4, of which 1,100,356 Warrants are for the benefit of Mr. Jos B. Peeters and 210,000 Warrants are for the benefit of Börse Berlin AG

9. Resolution to increase the company's share capital subject to the condition precedent of the exercise of the Warrants by the Beneficiaries

10. Nomination and resignation of directors – discharge

11. Confirmation of the realization of the Condition Precedent

12. Resolution to amend article 5 of the company's articles of association as a result of the capital increase

13. Power of attorney to any two directors, acting jointly, with full power of substitution, for the implementation of the resolutions taken in accordance with the preceding agenda items, including the authorization to satisfy the formalities set out in section 591 of the Belgian Companies Code, in particular, the notarial recordation of the capital increase and the number of shares issued at the occasion of such capital increase upon exercise of Warrants and the amendment of the articles of association to reflect the new amount of the Company's share capital and the new number of shares

14. Power of attorney to Mrs. Diane Bils, to satisfy the required formalities in connection with the "Crossroad Bank for Enterprises", the "Business One-Stop Shops" and the value added tax, if necessary

15. Power of attorney to Mrs. Sara Berquin, with full power of substitution, to draw up a restated version of the articles of association, execute such restated articles of association, and file such restated articles of association with the clerk's office of the competent commercial court

*Appendices:*

a. special report of the board of directors in accordance with section 560 of the Belgian Companies Code

b. proposal to amend the articles of association

c. special report of the board of directors in accordance with (i) section 582, 596 and 598 of the Belgian Companies Code regarding the issuance of new Class A shares and Class B shares and (ii) sections 582, 583, 596 and 598 of the Belgian Companies Cody regarding the issuance of the Warrants

d. special report of the statutory auditor in accordance with (i) sections 582, 596 and 598 of the Belgian Companies Code regarding the issuance of new Class A shares and Class B shares and (ii) sections 582, 596 and 598 of the Belgian Companies Code regarding the issue of warrants

e. proxy for shareholder

# EASDAQ NV

Lei 19 Box 11, B-3000 Leuven, Belgium
RPR Leuven 0455.240.893

(the "**Company**")

*FREE TRANSLATION – FOR INFORMATION PURPOSES ONLY*

## SPECIAL REPORT OF THE BOARD OF DIRECTORS PURSUANT TO SECTION 560 OF THE BELGIAN COMPANY CODE ("BCC") RELATING, AMONGST OTHER THINGS, TO A RE-CLASSIFICATION OF SHARES AND AMENDMENTS TO THE ARTICLES OF ASSOCIATION IN RELATION THERETO

## 1. NATURE OF THE PROPOSED CHANGES TO THE CLASSES OF SHARES

The Board of Directors (the "**Board**") hereby presents to the extraordinary general meeting of shareholders of the Company its special report pursuant to Article 560 BCC regarding, amongst other things, (i) the cancellation of all existing classes of shares and the equalization of all rights attaching to the existing shares, (ii) the creation of a new class of "class A" shares with special rights attaching thereto ("**Class A**") and the creation of a new class of "class B" shares without special rights attaching thereto ("**Class B**"), (iii) the allocation of all existing shares to Class B shares, (iv) the confirmation that, henceforth, the existing warrants issued by the Company will entitle the holder thereof to Class B shares upon exercise, and (v) the amendments to the articles of association to determine the rights that will attach to the new classes of Class A shares and Class B shares.

For the reasons mentioned below, the Board proposes to the shareholders meeting to amend, amongst other things, the following provisions of the articles of association[1] to reflect the changes to the classes of shares in existence and to the rights attached to these classes (reference is also made to the document sent to the shareholders together with this special Board report containing the proposal for the consolidated version of the new restated articles of association):

- Article 5 (Capital)
- Article 7 (Calls on Shares)
- Article 11 (Transfer of Shares) (to be deleted)

---

[1] The references are to the numbering of the current articles of association.

- Article 14 (Composition of the Board of Directors)
- Article 15 (Vacancy before term)
- Article 16 (Chairmanship)
- Article 17 (Meetings of the Boards of Directors)
- Article 18 (Proceedings)
- Article 23 (Daily Management)
- Article 33 (Proceedings)
- Article 37 (Distributions)
- Article 42 (Distribution)

## 2. DESCRIPTION OF THE PROPOSED CHANGES

For historical reasons, the share capital of the Company is currently represented by 9,077,487 shares divided into three separate classes (A (500,000 shares), B (4,245,804 shares) and C (4,331,683 shares)), whereby special rights are attached to the A and C shares, but not to the B Shares (which is the class of common stock). All of the A shares are held by Dr. Jos. B. Peeters ("**JBP**") who was the controlling shareholder of the Company between December 2003 and September 2007. All of the C shares are held by Börse Berlin AG ("**BSX**") who has been the controlling shareholder of the Company since September 2007.

The creation of the A and C classes of shares were justified to reflect certain agreements regarding the governance structure of the Company and the rights in relation to the transfer of shares in the Company at the time these classes were created. However, as a result of an investment agreement entered into on 20 July 2009 between the Company, JBP, BSX and Citadel Tactical Investments Ltd. ("**Citadel**") (the "**Investment Agreement**"), the parties to the Investment Agreement have agreed to implement a new and more simple governance structure, whereby there is no longer a need for special rights attached to the current A shares and C shares.

It has therefore been decided to cancel the existing classes of shares and to equalize any and all rights attaching to all existing shares issued by the Company. Since currently no special rights attach to the B shares, this cancellation and equalization only affects the holders of A shares and C shares who will lose their special rights. This newly equalised class of shares (common stock) will be labelled "Class B Shares".

Following the equalization of all existing shares into Class B Shares, the Board proposes to the shareholders to authorize an increase in the Company's capital through the issuance of 40 million new shares (reference is made to the Special Board Report pursuant to sections 582, 596 and 598 BCC of even date herewith, with which this special report should be read together) with cancellation of the preferential subscription rights for the benefit of Citadel. It is further proposed that certain special governance rights will be attached to 2.5 million of these 40

million new shares, which would be labelled "Class A Shares" and to which, amongst other things, the following rights would be attached:

- Up to five directors will be elected upon nomination by the holders of the majority of Class A Shares as long as Citadel holds more than 20% of all outstanding shares of the Company. Up to three directors will be elected upon nomination by the holders of the majority of Class A Shares as long as Citadel holds more than 10% of all outstanding shares of the Company. Up to two directors will be elected upon nomination by the holders of the majority of Class A Shares as long as Citadel holds more than 8% of all outstanding shares of the Company. One director will be elected upon nomination by the holders of the majority of Class A Shares as long as Citadel holds more than 3.5% of all outstanding shares of the Company. The directors elected upon nomination by the holders of the majority of Class A Shares shall be referred to as "Class A Directors".

- The chairman of the Board shall be a director nominated by the Class A Directors. If the chairman is also a Class A Director, he shall have a casting vote in the event of a tied vote.

- In the absence of the chairman, a director chosen among the Class A Directors (or, if there be none present, one of the other directors) shall chair the meeting.

- The Board may validly deliberate only if, in addition to any quorum requirements of Belgian company law, at least one Class A Director is present or represented.

- Decisions are taken at a simple majority of the votes. However, a wide range of material decisions or proposals require a qualified majority of the members of the Board, namely a simple majority which includes at least the approval of one Class A Director (for an overview of these decisions, reference is made to the proposed text of the restated articles of association).

- The Board may delegate the daily management of the Company to one or several persons, who need not be directors. Such person(s) shall be appointed upon nomination by the Class A Directors.

- Any special Board committee that is created shall comprise at least one Class A Director. For a committee meeting to be quorate at least two Directors, of which at least one is a Class A Director, must be present or represented. The committee shall act by decision of a majority of the Directors present or represented provided that no decision by the committee shall be valid unless one or more Class A Directors shall have voted in favour of such decision.

- Certain material decisions of the shareholders shall, in addition to the applicable rules of Belgian company law, require the consent of at least the holders of the majority of Class A Shares (for an overview of these

decisions, reference is made to the proposed text of the restated articles of association).

The special rights listed above (except under the first indent of the list) lapse in case Citadel no longer holds 20% of all outstanding shares of the Company; these special rights will apply again if Citadel would again hold at least 20% of all outstanding shares of the Company.

In exchange for giving up the preferred rights attached to the current class A shares and class C shares, and with a view to securing their support for the investment by Citadel, a right to nominate directors is proposed to be granted to BSX and JBP, as follows:

- up to two directors will be elected upon nomination by BSX whilst BSX has a BSX Relevant Shareholding (as defined) of higher than 8%; one director will be elected upon nomination by BSX whilst BSX has a BSX Relevant Shareholding of higher than 3.5%; and
- one director will be elected upon nomination by JBP whilst JBP has a JBP Relevant Shareholding (as defined) of higher than 3.5%.

As a result of the above proposed changes, the Company's capital will henceforth be represented by 49,077,487 shares, divided into 2,500,000 Class A Shares (with the special governance rights mentioned above) and 46,577,487 Class B Shares (to which no special rights are attached). In addition, BSX and JBP will have the rights to nominate directors as described above.

In case of transfers of Class A Shares to another party, such shares will be automatically (without (new) application of section 560 BCC), converted into Class B Shares (to which no special rights are attached).

It should also be noted that following the capital increase and the issuance of the Class A Shares and new Class B Shares, the existing warrants issued by the Company to date will entitle the holder thereof, upon exercise, to Class B shares.

### 3. PURPOSE AND JUSTIFICATION FOR THE CHANGES

As a result of the capital increase that is being proposed to the shareholders meeting of 7 August 2009, BSX and JBP are no longer majority shareholders or shareholders of reference of the Company.  Also, under the terms of the investment by Citadel, BSX and JBP will no longer enjoy special governance rights (except the right to nominate directors as set out above).  As a result, there is no need to maintain the current classes of A shares and C shares and the resulting cancellation of these classes and the equalization of all shares, is a matter of simplification of the share representation of the capital.  Holders of B shares are not affected by this re-classification.

The creation of a new class of Class A Shares is necessary to give effect to the Investment Agreement. The proposed capital increase, which is the main object of the Investment Agreement, is required to allow the Company to continue its business activities as a going concern and to continue to execute its mission of using its state-of-the-art trading platform to offer best execution services to European investors (see also the Special Board Report pursuant to sections 582, 583, 596 and 598 BCC). The capital increase and the special governance rights attached to the Class A Shares that will be held by Citadel are, in the opinion of the Board, reasonably commensurate with the size of its investment, its post-investment shareholding in the Company, its crucial role in furthering the business of the Company and its strategic position vis-à-vis the Equiduct Trading initiative, and, as such, are believed to be in the best interests of the Company and its existing shareholders.

"EASDAQ"

**Limited Liability Company**

**("naamloze vennootschap")**

At 3000 Leuven, Lei 19 box 11

(BTW BE) 0455.240.893 Company Register (Leuven)

----------

## COORDINATED TEXT OF THE ARTICLES OF ASSOCIATION

following the amendment of the articles of ~~26 June 2008~~[7] August 2009

*- Convenience translation of official Dutch text -*

# TITLE I.  NAME - REGISTERED OFFICE - PURPOSE - DURATION

### Article 1    Corporate Form and Name

The Company is incorporated as a " naamloze vennootschap " under the name of "EASDAQ".

This name shall always be preceded or followed by the Dutch words "naamloze vennootschap" or the abbreviation "NV".

### Article 2    Registered Office

The registered office of the Company is located in 3000 Leuven, Lei 19 box 11. The Board of Directors may move the registered office of the Company elsewhere in Belgium if the applicable legislation on the use of languages is respected. Such decisions shall not require any amendment to the Articles of Association.

1

The Board of Directors shall publish any transfer of the registered office in the Annexes to the Belgian Official Gazette.

The Board of Directors shall also be authorised to set up administrative offices, places of business, branches and subsidiaries both in Belgium and abroad.

## Article 3    Purpose

The purpose of the Company shall be, both in Belgium and abroad, in its own name or in the name of third parties, for its own account or for the account of third parties, to organise, manage, control and supervise a pan-European regulated stock market, as well as all operational, organisational and commercial aspects relating to the development, marketing and operating of this market and, with respect to the members, the admission of financial instruments to trading on the market, the operating of a technical platform made available to the Company, without the Company itself engaging in transactions on financial instruments admitted to trading on the market.

The Company may carry out all industrial, commercial, and financial transactions as well as transactions involving real and personal property, both in Belgium and abroad, which directly or indirectly extend or promote the business of the Company. The Company may acquire any real and personal property, irrespective of whether it is directly or indirectly connected with the purpose of the Company.

The Company may, in any manner whatsoever, take an interest in, co-operate or merge with any association, business, enterprise or Company having an identical, similar or related purpose or which are susceptible to benefit the business of the Company or facilitate the sale of its products or services.

## Article 4    Duration

The Company shall be incorporated for an unlimited duration.

# TITLE II. CAPITAL

## Article 5    Subscribed Capital

The subscribed capital shall amountamounts to 113EUR 128,526,848.90 EURO.

2

It is represented by 9.49,077,487 shares, without par value, each share representing 1/49.077.487th of the share capital.

The shares are divided into three two classes, A, B and C B. The capital is currently represented by 2,500,000 Class A Shares, 4,245,804 and 46,577,487 Class B Shares and 4,331,683 Class C Shares.

In case of transfer of shares between shareholders, the class of shares will be preserved Unless Citadel Tactical Investments LLC ("Citadel") agrees otherwise, on any transfer of title of Class A Shares held by it to an entity which is not an affiliate of Citadel, such Class A Shares will, on the registration of such transfer in the register of shareholders of the Company, become Class B Shares.

## Article 6    Change of the Subscribed Capital

The Shareholders, acting in accordance with the provisions applicable to the amendment to the Articles of Association, may decide to increase or lower the subscribed capital.

Shares Without prejudice to the shareholders meeting's right to limit or cancel the pre-emption right in accordance with the Company Code, shares subscribed for in cash must first be offered to the existing shareholders in proportion to the amount of the capital represented by their shares during a period of at least fifteen (15) days from the opening day of the subscription period. The shareholders' meeting shall fix the subscription price and the time limit for exercising this preferential subscription right (right of first refusal).

If the Shareholders Meeting decides to request payment of an issue premium, the issue premium shall be booked as an inalienable reserve fund which may only be decreased or removed upon a decision of the Shareholders taken in accordance with the provisions applicable to the amendment of the Articles of Association. The issue premium, like the capital, shall constitute a guarantee for third parties.

The Board of Directors shall be authorised to increase the subscribed capital once or several times by an amount not exceeding fifty million euros (50,000,000 EURO), in accordance with the conditions set by the Board. In case the increase is done through a contribution of cash, the Board will have to take into account the preferential subscription rights of the existing shareholders.

The capital increase through the use of the authorised capital may also be done

3

through a contribution in kind. The Board of Directors may however not use the authorised capital for a capital increase through contribution in kind which is reserved for a shareholder which holds securities that represent more than 10% of the voting rights.

The increase of capital through the use of the authorised capital may also be done through the incorporation of reserves, with or without the issuance of new shares.

The authorised capital can also be used by the Board of Directors, within the aforementioned limits, to issue warrants or convertible bonds.

In case the Board of Directors decides to increase the capital through the use of the authorised capital, the issue premiums, if any, shall be attributed to an inalienable reserve fund "Issue Premiums". This reserve fund will, like the subscribed capital, constitute a guarantee for third parties. Apart from the possibility of incorporation of reserves by the Board of Directors as provided above, this reserve fund may only be decreased or removed upon a decision of the Shareholders taken in accordance with article 612 of the Belgian Company Code.

The Board of Directors may exercise the powers resulting from the authorised capital during a period of five years following the publication of the authorisation in the annexes to the Belgian Official Gazette.

This authorisation granted to the Board of Directors may be renewed in accordance with the applicable legal provisions. When the Board of Directors proposes a renewal of this authorisation, it will draft a motivated report indicating under which circumstances it intends to make use of this authorisation capital and which objectives it thereby seeks to fulfil.

The Board of Directors shall be authorised to ~~remove~~cancel or restrict the preferential subscription rights of ~~first~~
~~refusal~~the existing shareholders, in which case it will provide for a justification in a detailed report. A report will also be drafted by the statutory auditor ("commissaris")~~, or if no statutory auditor was appointed, an auditor or accountant registered with the Institute of Accountants and Tax Consultants and selected by the Board.~~"). In case of cancellation of or restriction ~~or lifting of~~to the preferential subscription rights, the Board may decide that, for the attribution of the new shares, preference will be given to the existing shareholders, in which case the subscription period will be 10 days.

4

The Board of Directors shall be authorised to ~~remove~~cancel or restrict the <u>preferential</u>
<u>subscription</u> rights ~~of first~~

~~refusal~~, for the benefit of one or more defined persons~~, other than~~ <u>whether or not</u>
employees of

the Company or one of its subsidiaries. In that case, the conditions set forth in the

Belgian ~~Companies~~<u>Company</u> Code must be respected.

**Article 7        Calls on Shares**

Calls on shares shall be decided by the Board of Directors at its discretion.

If a shareholder fails to effect payments requested on its shares within the time limit prescribed by the Board of Directors, the exercise of the rights attached to the shares shall be automatically suspended ~~and the shareholder shall be liable immediately and without notice to the Company for late payment interest at a rate equal to the legal rate of interest plus two (2) percentage points from the date on which the time limit for payment set by the Board of Directors has passed.~~

~~If, after receipt from the Board of Directors of a formal notice by registered mail, the shareholder still fails to pay the amount during a period of at least one month after the expiration of the period mentioned in the notice, then the Board of Directors, at its next meeting, shall declare such shareholder ineligible to exercise the rights of a shareholder and shall sell the shares of such shareholder in the most appropriate manner without prejudice to the rights of the Company to recover any balance outstanding, together with any damages, from the shareholder.~~

**Article 8        Form of Shares**

The shares shall be and shall remain in registered form.

**Article 9        Exercise of the Rights Attached to the Shares**

The shares are indivisible for the purposes of the Company. If a share is owned by several persons, or if the rights attached to a share are divided among several persons, the Board of Directors shall have the right to suspend the exercise of the rights attached thereto until one person has been designated as the owner of the share for the purposes of the Company.

**Article 10        Successors**

~~The~~ Unless explicitly set out otherwise in these Articles of Association, the rights and obligations attached to the shares shall remain with the transferee of the share upon each transfer.

## Article 11    ~~Transfer of Shares~~

### ~~11.1    Principle~~

~~Any operation relating to the transfer, whether for free or for a consideration, or the vesting of any rights in rem, including but not limited to a contribution to a Company, a swap, a transfer as part of a merger or split-up, forced sale, liquidation, as well as the granting of any option, pledge or other third party right, or any similar operation (a "Transfer") in relation to shares (including Class A Shares, Class B Shares and Class C Shares), options, warrants or convertible bonds issued by the Company (collectively the "Shares") by a shareholder (the "Transferring Shareholder") is subject to a pre-emption right of the Class A shareholders (the "Class A Shareholders").~~

### ~~11.2    Transfer Notice~~

~~A Transferring Shareholder considering  to transfer his shares must give notice of such intent to the chairman of the Board of Directors indicating the full identity of the proposed transferee (the "Transferee"), the number of Shares (the "Transfer Shares") which he proposes to transfer and the price and other conditions at which the transfer would take place (the "Transfer Notice"). Upon receipt of the Transfer Notice, the chairman of the Board of Directors shall within a period of five working days send a copy of the Transfer Notice to the Class A Shareholders.~~

### ~~11.3    Exercise of Pre-emption Right~~

~~Upon receipt of the Transfer Notice, the Class A Shareholders shall be entitled for a period of thirty calendar days to exercise their pre-emption rights. A Class A Shareholder wishing to exercise his pre-emption right shall inform by registered mail the Chairman of the Board of Directors and the Transferring Shareholder thereof.~~

~~The pre-emption right is exercised at the price and the conditions offered by the Transferee in good faith. If the consideration offered by the Transferee is not a payment in cash but a payment in kind, the pre-emption right can be exercised at the economic value of the payment in kind as agreed by the Transferring Shareholder and the Class A shareholders which exercised their pre-emption right, failing which an expert shall be appointed in common agreement or, failing such agreement, by the president of the commercial court of Brussels in case of disagreement. Parties will be bound by the expert's valuation.~~

### 11.4 ~~Distribution of Shares~~

~~If not all, but only some of the Class A Shareholders make use of their pre-emption rights within the aforementioned period of thirty calendar days, the Board of Directors shall, during a period of fourteen calendar days, offer the Transfer Shares for which the pre-emption rights were not exercised to the Class A Shareholders which made use of their pre-emption right in the first period of thirty calendar days.~~

~~If the Class A Shareholders exercise their pre-emption right on more shares than the Transfer Shares, the Board of Directors shall determine the number of Transfer Shares to which each of the Class A Shareholders is entitled in relation to the number of Class A shares held by each of them vis-à-vis the total number of Class A shares held by the Class A Shareholders which exercised their pre-emption right.~~

~~If and to the extent that the Class A Shareholders do not exercise their pre-emption right in the above mentioned periods of thirty and fourteen days respectively for all the Transfer Shares, the Transferor shall have the right to transfer the Transfer Shares within a period of thirty calendar days to the Transferee and at the conditions mentioned in the Transfer Notice.~~

### 11.5 ~~Free Transfers~~

~~Transfers of Shares between affiliated companies as defined in Article 11.1 of the Company Code shall not be subject to the transfer restrictions set out in this Article.~~

~~The shareholder must inform the Board of Directors by letter or any other written means of any Transfer of Shares within seven calendar days of such Transfer. Once a year, at the Annual Shareholders Meeting, the Board of Directors will inform the other shareholders of the Company of any Transfer of Shares.~~

### 11.6 ~~Sanctions~~

~~A Transfer of Shares in breach of the provisions of this Article 11 shall not be valid and cannot be invoked against the Company or the other shareholders.~~

### ~~Article 12~~   Acquisition by the Company of its own Shares

The Company may acquire its own shares in accordance with Article 620 and following of the Company Code.

### Article ~~13~~12   Bonds

8

The Company may at all times, upon decision of the Board of Directors, issue bonds.

However, the issue of convertible bonds or warrants, is subject to a decision of the shareholders' meeting deliberating in accordance with the provisions for an amendment of the articles of association, or by the Board of Directors within the limits of the authorised capital.

## TITLE III.  MANAGEMENT AND SUPERVISION

### Article ~~14~~13   Composition of the Board of Directors

The Company is managed by a Board of Directors, which shall be composed of ~~no more than six~~at least three members who need not be shareholders.

~~Three~~Up to five directors will be elected ~~from~~upon nomination by the holders of the majority of Class A Shares ~~(but only if such presentations are actually made). The directors elected from the list of candidates presented by the~~ as long as Citadel holds more than 20% of all outstanding shares of the Company. Up to three directors will be elected upon nomination by the holders of the majority of Class A Shares as long as Citadel holds more than 10% of all outstanding shares of the Company. Up to two directors will be elected upon nomination by the holders of the majority of Class A Shares as long as Citadel holds more than 8% of all outstanding shares of the Company. One director will be elected upon nomination by the holders of the majority of Class A Shares as long as Citadel holds more than 3.5% of all outstanding shares of the Company. The directors elected upon nomination by the holders of the majority of Class A Shares shall be referred to as "Class A Directors". ~~If Dr. Jos B. Peeters (JBP) no longer holds 15 % of the shares of the Company, this right automatically lapses~~ If the shareholding (i.e., the percentage holding of shares of a shareholder, treating all shares of the Company as if they were a single class for this purpose) of Citadel falls below any of the above percentage thresholds and subsequently exceeds such threshold again, then the rights attached to such threshold shall apply again. The holder of the majority of Class A Shares shall be entitled to designate that one or more of the Class A Directors nominated under this clause shall not have any of the special rights enjoyed by a Class A Director under the articles of association.

~~Three directors shall be elected by the Shareholders Meeting from a list of candidates presented by the holders of the majority of Class C Shares (but only if such presentations are actually made). The directors elected from the list of candidates presented by the holders of the majority of Class C Shares shall be referred to as~~

9

~~"Class C Directors". If Börse Berlin ("BSX"), together with its affiliated companies as defined in paragraph 15 of the German Code on public limited companies (§ 15 "Aktiengesetz") or a company in which BSX holds at least 25 % of the voting rights, no longer holds 15 % of the shares of the Company, this right automatically lapses~~Up to two directors will be elected upon nomination by Börse Berlin AG ("BSX") whilst BSX has a BSX Relevant Shareholding (as defined below) of higher than 8%. One director will be elected upon nomination by BSX whilst BSX has a BSX Relevant Shareholding of higher than 3.5%. If the BSX Relevant Shareholding falls below any of the above percentage thresholds and subsequently exceeds such threshold again, then the rights attached to such threshold shall apply again.

~~One of the Class A Directors and one of the Class C Directors shall be managing director and all other Class A Directors and Class C Directors shall be non-executive directors~~One director will be elected upon nomination by Dr. Jos B. Peeters ("Dr. Peeters") whilst Dr. Peeters has a Dr. Peeters Relevant Shareholding (as defined below) of higher than 3.5%. If the Dr. Peeters Relevant Shareholding falls below 3.5% and subsequently exceeds 3.5% again, then he shall again have the relevant rights.

For the purposes of this article 13:

- "BSX Relevant Shareholding" means the shareholding (i.e., the percentage holding of shares of a shareholder, treating all shares of the Company as if they were a single class for this purpose) of BSX and itsaffiliates as calculated following application of the formula:     $A / (B+C+D)$;

    o where A is the number of shares held by BSX or its affiliates from time to time;

    o B is the number of shares in issue on [7 August 2009] after the shareholders meeting of that day;

    o C is the number of shares issued by the Company on the exercise of any warrants to subscribe or securities convertible into, or rights to subscribe, which in each case were on exercise held by BSX or its affiliates; and

    o D is the number of shares (but not, for the avoidance of doubt, warrants to subscribe, securities convertible into, or rights to subscribe shares) issued by the Company under an Eligible Issue (as defined below), or upon exercise or conversion of warrants to subscribe, securities convertible into, or rights to subscribe shares (in the case of warrants to subscribe, securities convertible into, or rights to subscribe shares issued prior to [DATE] July 2012, only if BSX and its affiliates were eligible to participate in such issue under its terms);

- "Dr. Peeters Relevant Shareholding" means the shareholding (i.e., the percentage holding of shares of a shareholder, treating all shares of the Company as if they were a single class for this purpose) of Dr. Peeters as calculated following application of the formula: $A / (B+C+D)$:

  o where A is the number of shares held by Dr. Peeters and his affiliates and heirs from time to time;

  o B is the number of shares in issue on [7 August 2009] after the shareholders meeting of that day;

  o C is the number of shares issued by the Company on the exercise of any warrants to subscribe or securities convertible into, or rights to subscribe, which in each case were on exercise held by Dr. Peeters or his affiliates or heirs; and

  o D is the number of shares (but not, for the avoidance of doubt, warrants to subscribe, securities convertible into, or rights to subscribe shares) issued by the Company under an Eligible Issue, or upon exercise or conversion of warrants to subscribe, securities convertible into, or rights to subscribe Shares (in the case of warrants to subscribe, securities convertible into, or rights to subscribe shares issued prior to [DATE] July 2012, only if Dr. Peeters and his affiliates and heirs were eligible to participate in such issue under its terms); and

- Eligible Issue means any issue of shares or securities convertible into shares (or warrants or rights to subscribe for shares) by the Company in which BSX or its affiliates (for the purposes of the definition of BSX Relevant Shareholding) and Dr. Peeters or his affiliates or heirs (for the purposes of the definition of Dr. Peeters Relevant Shareholding) were eligible to participate under the terms of the issue, and any other issue of shares or securities convertible into shares (or warrants or rights to subscribe for shares) (without double counting) which occurs after [DATE] July 2012 whether or not BSX or Dr. Peeters or their respective affiliates or, in the case of Dr. Peeters, heirs, as the case may be, were eligible to participate in that issue under its terms.

The duration of the Directors' mandate cannot exceed six (6) years. However, a director whose mandate has expired will remain in function as long as the Shareholders Meeting has not decided on the appointment of a successor.

The outgoing directors shall be eligible for re-election.

## Article ~~15~~14  Vacancy Before Term

Each vacancy caused by death, resignation or termination of the mandate of ~~a~~a member of the Board of Directors appointed upon ~~presentation of respectively nomination by a shareholder in accordance with Article 13 (the holders of the majority of the Class A Shares or the holders of the majority of the Class C Shares~~"Relevant Shareholder") shall be filled by the election of a new director upon ~~presentation of respectively the holders of the majority of the Class A Shares or the holders of the majority of Class C Shares~~nomination by the Relevant Shareholder (provided ~~that the relevant shareholders still have this~~ such shareholder continues to enjoy such right~~) who held the presentation right for the deceased, resignating or terminated director~~ at such time).

If the ~~holders of the majority of the Class A Shares or the holders of the majority of the Class C Shares indicate that they do not~~ Relevant Shareholder indicates that it does not wish to ~~present~~nominate a candidate or a sufficient number of candidates, the mandates will remain vacant and will be filled only if candidates for the appointment are ~~presented by the relevant shareholders~~nominated by the Relevant Shareholder.

~~If no candidates or insufficient candidates for directorship are presented by either the holders of the majority of Class A Shares or the holders of the majority of Class C Shares 10 business days after the corresponding request has been made by the Board of Directors, the special majorities within the Board of Directors as referred to in article 18 will be reduced proportionally (without prejudice to the entitlements of the directors appointed upon presentation of the other shareholders) until such presentation is made.~~

For the avoidance of doubt, it is hereby clarified that the absence of ~~presentation~~nomination of a candidate in accordance with the preceding paragraphs does not imply a waiver of the right to ~~propose~~nominate candidates for an appointment, and the ~~relevant shareholders~~Relevant Shareholder will have the right to request that a new meeting of shareholders of the Company is convened to elect candidates ~~presented~~nominated for appointment by ~~the relevant shareholders. In this case the reduction of the special majorities mentioned in the preceding paragraph will no longer apply.~~it.

If a Relevant Shareholder elects not to nominate candidates for appointment, the special rights exercised by such nominees will not apply until such nomination is again made.

12

## Article ~~16~~15   Chairmanship

The ~~members~~ chairman of the Board of Directors shall ~~appoint~~be a ~~chairman from among~~director nominated by the Class ~~C~~A Directors~~, and who~~. If the chairman is also a Class A Director he shall have a casting vote in the event of a tied vote. ~~If BSX, together with its affiliated companies as defined in paragraph 15 of the German Code on public limited companies (§ 15 "Aktiengesetz") or a company in which BSX holds at least 25 % of the voting rights, no longer holds 40 % of the shares of the company, this right automatically lapses~~In the event of the shareholding of Citadel falling below 20%, the Class A Directors will no longer be entitled to the rights set out in this Article 15. The Class A Directors will again be entitled to such rights set out in this Article 15 when Citadel's shareholding subsequently increases to 20% or above.

## Article ~~17~~16   Meetings of the Board of Directors

Board meetings shall be convened by the chairman or any two directors whenever it is required by the interests of the Company.

Notices of the meeting shall set out the place, date, time and agenda of the meeting. They shall be sent by letter, ~~telegram, telex,~~ facsimile, e-mail or any other written form at least ~~two (2) full~~ three business days prior to the meeting. A meeting may be called by shorter notice in the case of an urgent matter, provided reasonable advance notice is given to the directors.

In the absence of the chairman, a director chosen among the Class ~~C~~A Directors (or, if there be none present, one of the other directors) shall chair the meeting.

The validity of the notices of the meeting may not be challenged if all directors are present or validly represented.

## Article ~~18~~17   Proceedings

~~The Board of Directors may validly deliberate only if at least two Class A Directors and two Class C Directors are present or represented. If this quorum is not obtained, the chairman may convene a new Board meeting by the Chairman to deliberate and decide on matters appearing on the agenda of the preceding Board meeting, during a period of not less than 14 days and not more than 28 days after the meeting where the quorum was not reached. In this case the notice period shall be at least seven days.~~

~~Three members of the Board must at least be present or represented at the new meeting to form the quorum for all matters and to validly deliberate and decide on all matters which could have been handled at the first meeting if the required quorum had been met, provided however that this new meeting of the Board of Directors may not validly decide if the decision is not approved by the special majority indicated in this article 18.~~ For a meeting of the Board of Directors to be quorate, in addition to the requirements of Belgian company law, a minimum of one Class A Director must be present, in person, by telephone or by proxy. However, in the event of the shareholding of Citadel falling below 20%, a meeting of the Board of Directors can be quorate (subject to the requirements of Belgian company law) even if no Class A Director is not so present. The presence of a minimum of one Class A Director will be required again if Citadel's shareholding subsequently increases to 20% or above.

In exceptional cases duly justified by emergency and corporate interest, the decisions of the Board of Directors may be taken by written and unanimous consent of all directors. This procedure may however not be used to prepare the annual accounts or decide to increase the capital within the limits of the authorised capital.

The Board of Directors may only deliberate on items not listed in the agenda if all the directors are present or validly represented at the meeting and unanimously decide to deliberate on these items.

Any director may authorise another director by letter, ~~telegram, telex,~~ facsimile, e-mail or any other written means to represent him at a Board meeting. A director may represent more than one of his colleagues.

The directors shall comply with the provisions relating to conflicts of interests referred to in the Company Code.

Decisions are taken at ~~an ordinary~~ a simple majority of the votes. However, ~~the following decisions require a qualified majority of the members of the~~ none of the actions listed below shall be taken by the Board of Directors~~, namely an ordinary majority which includes at least the approval of the two Class A Directors and two Class C Directors :~~

~~- the sale of, or granting of a licence or other rights on, the intellectual property rights of the Company relating to the ETS trading platform, provided this occurs after 25 September 2007;~~
~~- any decision to set up, create, acquire and/or sell any subsidiary, branch or joint venture to which a substantial part of the activities of the Company is~~

~~transferred at the time or after~~ no resolution in respect of any such ~~setting up, creation, acquisition or sale or the purchase of assets on which an important part of the activities of the Company shall depend (after transfer or acquisition);~~

~~-any decision to distribute interim dividends;~~

~~-any increase or proposal of decrease of the statutory capital on which~~ actions shall be proposed to the shareholders, without the prior consent of at least one Class A Director, meaning that decisions in respect of the below matters (if capable of being taken by ~~the~~ the Board of Directors ~~has to decide, with or without lifting, restriction or waiver of preferential subscription rights in relation thereto;~~

~~-any decision to solicit or permit a present or future affiliate of the Company, in the meaning of article 11 of the Companies Code, to carry out a transaction as referred to in this article 18 or~~ ), respectively proposals in respect of the below matters (if decisions in ~~article 33 (and, for this purpose, any reference to the "Company" in this article 18 or in article 33 shall be interpreted to include any such affiliate);~~

~~-the disposal of all or a substantial part of the activities of the Company;~~

~~a modification of the address of the registered office of the Company for which~~ matters are not capable of being taken by the Board of Directors) must be approved by a simple majority of the Directors, including at least one Class A Director (and the below matters will not be capable of further delegation by ~~the~~ the Board of Directors ~~is competent pursuant to article 2;).~~ The holders of the majority of Class A Shares may nominate one (or more) Class A Director(s) to exercise such consent right, in which case only the nominated Class A Director(s) may exercise such right.

~~-the appointment of the persons in charge of the day-to-day management, whether as managing director or otherwise, and~~

~~-the nomination of directors in Equiduct Ltd.~~

### ~~Article 19~~

- the calling of any unpaid capital on the shares of the Company or exercising any rights in respect of such uncalled amount for such shares;

- the proposal to amend the articles of association of the Company or of any of its subsidiaries, within the meaning of Article 6 of the Company Code (the Company and any such subsidiary being hereinafter referred to as the "Easdaq Group");

- the issue or allotment of any share capital or any other security by any member of the Easdaq Group or the creation, grant or issue of any option, warrant or

right to subscribe or acquire, or convert any security into, any share capital of any member of the Easdaq Group, or any proposal to do any of the above;

- any decision or proposal to declare or pay any dividend or to declare or make any other distribution by any member of the Easdaq Group;

- any material change in the nature or scope of the business of the Company;

- the raising of any indebtedness by the Company in excess of €25,000 (for the avoidance of doubt, excluding inter-company indebtedness between members of the Easdaq Group) or incurring trade credit in excess of €100,000 per occurrence;

- the establishment or acquisition of any affiliate by the Company;

- the granting, or permitting the creation, of any security or other encumbrance over any part of the undertaking, property or assets of, the Company with a fair market value exceeding €10,000;

- the passing of any resolution or proposal for the winding-up of any member of the Easdaq Group or any application for the appointment of a receiver or an administrator over the assets of the Company;

- the giving of any guarantee or indemnity by the Company which may lead to a liability of more than €10,000 (except in respect of a liability of a member of the Easdaq Group);

- the commencement or settlement of any legal or arbitration proceedings involving an amount exceeding €10,000 (other than routine debt collection);

- the entering into of any contract or commitment which is outside the ordinary course of business or would involve a total outlay by the Company over the term of the contract in excess of €25,000 or which is otherwise material to the business of the Company;

- the making of any loan or the granting of any credit by the Company other than in the ordinary course of business (and except in respect of a liability of a member of the Easdaq Group);

- the proposal to reduce the share capital or to vary the rights attaching to any class of shares of any member of the Easdaq Group or any redemption, purchase or other acquisition by any member of the Easdaq Group of any shares or securities of that member of the Easdaq Group (whether out of capital or otherwise);

- the proposal to sub-divide, consolidate or re-denominate the share capital of any member of the Easdaq Group and all decisions or proposals to merge any member of the Easdaq Group into or with other entities, effect a full or partial split of any member of the Easdaq Group or any assimilated transactions within the meaning of Article 676 of the Company Code;

- any change in the name of any member of the Easdaq Group, or any proposal to that effect;

- any change to the registered office or other offices of any member of the Easdaq Group;

- the transfer outside of the Easdaq Group of cash or cash equivalent or any other form of asset exceeding €25,000 per transfer (and aggregating connected transfers), except if already specifically approved under any sub-paragraph of this Article 17;

- agreeing the annual budget or business plan of the Easdaq Group;

- the repurchase or transfer of any interest in equity or debt or any proposal to that effect;

- the giving of financial assistance (as that expression is defined in article 629 of the Company Code) by the Company for the acquisition of any shares of the Company;

- the appointment, the setting of the terms and conditions of employment (or any change thereto) or the transfer or discharge of any senior employee of the Company whose base salary (excluding any commissions or bonuses) exceeds €50,000 per annum;

- the entering into, alteration or cancellation of any agreement or arrangement between the Company on the one side and Citadel, BSX, Dr. Peeters (or an affiliate or heirs of Citadel, BSX or Dr. Peeters) and/or any other direct or

17

indirect shareholder of the Company holding an interest in 1% or more of the issued shares of the Company as a whole on the other;

- any other transaction or arrangement by the Company for the benefit of Citadel, BSX, Dr. Peeters (or an affiliate or heir of Citadel, BSX or Dr. Peeters) and/or any other direct or indirect shareholder of the Company holding an interest in 1% or more of the issued shares of the Company as a whole on the other;

- the sale or acquisition of assets by the Company with a value greater than €25,000 per asset or the transfer of any part of the Company's interest in Equiduct Systems Limited ("Equiduct");

- the registration of any intellectual property and the licensing of such intellectual property by the Company outside the ordinary course of Business;

- agreeing pricing and other terms with participants (i.e., either (i) a person admitted to Börse Berlin, if that person has entered into a participant agreement with BSX (or, as the case may be, another party) to use an exchange which is supported by the Easdaq Group or (ii) a participant on one or more of the stock exchanges or on any trading platforms to which the Company provides services) and customers;

- agreeing any undertakings or terms with any relevant regulatory authority;

- the appointment and removal of any directors of Equiduct or other members of the Easdaq Group;

- setting or amending the accounting policies of the Company; and

- the exercise of shareholder rights by a member of the Easdaq Group in respect of any other member of the Easdaq Group.

In the event of the shareholding of Citadel falling below 20%, any and all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Class A Directors will again be entitled to such rights as set out in this Article 17 if Citadel's shareholding subsequently increases to 20% or above.

## Article 18   Minutes

The decisions of the Board of Directors are recorded in minutes signed by the chairman and/or the secretary of the Board, as well as by those directors who wish to do so. Minutes are kept in a special register. Proxies are attached to the minutes.

Copies or extracts of said minutes required for judicial or other purposes shall be signed by two directors or by a person entrusted with daily management powers. This power may be delegated to a designated person.

## Article 2019   Powers of the Board of Directors

The Board of Directors shall have the broadest powers to do whatever is necessary or useful to achieve the corporate purpose, including what is required under the Royal Decree of June, 10 1996 on the creation and organisation of EASDAQ [currently NASDAQ EUROPE] and any subsequent Royal Decrees relating thereto.

The Board shall not have the power to do what is expressly reserved to the Shareholders Meeting, by law or by the Articles of Association.

## Article 2120   Remuneration

The office of director shall be non-remunerative, unless the Shareholders Meeting decides otherwise.

## Article 2221   Representation

The Company shall be represented with respect to all acts, including court proceedings, by two directors acting jointly.

Within the limits of the daily management, the Company shall be validly represented with respect to all acts, including those with respect to court proceedings, by the person(s) entrusted with the daily management, except if the Board of Directors has appointed more than one person with the daily management, in which case the Company shall be validly represented with respect to all acts, including those with respect to court proceedings, by two such persons in charge of the daily management acting each time jointly. These persons shall not be obliged to offer proof to third parties of the existence of a prior decision of the Board of Directors.

The Company is also validly represented by special ~~proxy~~proxy holders within the limits of their powers.

## Article ~~23~~22   Daily Management <u>and Board Committees</u>

### § 1.   Daily Management

The Board of Directors may delegate the daily management of the Company to one or several persons, who need not be directors. <u>Such person(s) shall be appointed upon nomination by the Class A Directors.</u>

<u>In the event of the shareholding of Citadel falling below 20%, such right of nomination under this Article 22, § 1 of the Class A Directors shall not apply. The Class A Directors will again be entitled to such right of nomination if Citadel's shareholding subsequently increases to 20% or above.</u>

If the person in charge of the daily management of the Company is at the same time a director of the Company, he/she will have the title of managing director.

In case of delegation of the daily management, the Board of Directors determines the remuneration attached to this position.

~~Within the limits of the daily management, the Company shall be validly represented with respect to all acts, including those with respect to court proceedings, by the person(s) entrusted with the daily management, except if the Board of Directors has appointed more than one person with the daily management, in which case the Company shall be validly represented with respect to all acts, including those with respect to court proceedings, by two such persons in charge of the daily management acting each time jointly. These persons shall not be obliged to offer proof to third parties of the existence of a prior decision of the Board of Directors.~~

Any person entrusted with the daily management may delegate his powers for particular or specified purposes to a person, who does not need to be a shareholder or director.

### § 2.   Executive Committee

In accordance with Article 524bis of the Company Code, the Board of Directors can delegate its powers to an Executive Committee. Such delegation of powers is not permitted for defining and setting out the Company's strategy, or any other power that is, in accordance with the Company Code, solely reserved to the Board of Directors.

20

The terms and conditions for the appointment of the members of the Executive Committee, their resignation, their remuneration, the term of their appointment and the working procedures of the Executive Committee are decided by the Board of Directors.

A member of the Executive Committee who, directly or indirectly, has a conflict of interest with a decision or action that falls within the powers of the Executive Committee has to notify the other members of the Committee before the Committee takes such decision or action.

Additionally, the procedures of the Executive Committee must comply with the regulations of ~~Article 524~~Articles 524bis and ter of the Company Code.

### § 3.    Special Board Committees

Subject to Article 17, the Board may establish executive, nomination, remuneration, audit and such other committees as it may determine with such terms of reference as it may determine. Each committee shall comprise at least one Class A Director. For a committee meeting to be quorate at least two Directors, of which at least one is a Class A Director, must be present or represented. The committee shall act by decision of a majority of the directors present or represented provided that no decision by the committee shall be valid unless one or more Class A Directors shall have voted in favour of such decision. However, in the event of the shareholding of Citadel falling below 20%, a committee must not comprise at least one Class A Director, can be quorate even if no Class A Director is present or represented and no decisions of any such committee will be subject to a veto right by any Class A Director (if a member to such committee). The Class Directors will again be entitled to such rights if Citadel's shareholding subsequently increases to 20% or above.

### Article ~~24~~23   Audit

The supervision of the financial situation and annual accounts, and the verification that the transactions set out in the annual accounts comply with the Company Code and the Articles of Association, shall be entrusted to one or several statutory auditors ("commissarissen") appointed by the Shareholders' Meeting from among the members of the Institute of Auditors ("~~Institut des Réviseurs d'Entreprises~~Instituut van Bedrijfsrevisoren").

The Shareholders' Meeting shall fix the number of statutory auditors and their remuneration.

The statutory auditors shall be appointed for a period of three years, subject to renewal. A statutory auditor may only be dismissed during his term of office by the Shareholders' Meeting for a valid reason and in accordance with the procedure set forth in article 135 and 136 of the Company Code; dismissal under any other circumstances shall entitle him to damages.

In the absence of the appointment of statutory auditors, or in the event that all statutory auditors are prevented from carrying out their duties, the Board of Directors shall immediately convene a Shareholders' Meeting for the purpose of appointing or replacing such auditors.

## Article 25~~25~~24   Duties of the Statutory Auditors

The statutory auditors, jointly or severally, shall have an unlimited right to inspect and audit all transactions of the Company. They may inspect the books, correspondence, minutes, and in general, all other documents and papers of the Company at the Company's premises.

Every six months, the Board of Directors shall deliver a report summarising the assets and liabilities of the Company to the statutory auditors.

In carrying out their duties, the statutory auditors may, at their own expense, use the assistance of their employees or other persons for whom they are responsible.

# TITLE IV - SHAREHOLDERS MEETING

## Article 26~~25~~25   Composition and Powers

The Shareholders' Meeting, duly constituted, shall represent all ~~Shareholders.~~ shareholders. The resolutions adopted at the Shareholders' Meeting shall be binding on all shareholders, including those absent or dissenting.

## Article 27~~27~~26   Meetings

The Annual Shareholders' Meeting (AGM) shall be held on the fourth Thursday of June at 10.00 CET. If such date is a legal holiday, the meeting shall be held on the next business day.

An Extraordinary Shareholders' Meeting (EGM) may be convened whenever the interests of the Company so require and must be convened if the shareholders representing one-fifth of the subscribed capital so request.

The Shareholders' Meetings shall be held at the registered office of the Company unless the notice of the meeting provides otherwise.

## Article 2827  Notice of Meetings

The Shareholders' Meeting shall be convened by the Board of Directors, by the chairman of the Board of Directors or by the statutory auditor(s).

The notice shall state the place, date, time and agenda of the meeting and shall comply with the form and the notice period prescribed by article 533 of the Company Code.

Each year, a Shareholders' Meeting must be held with an agenda which includes at least: the discussion of the management report and, if necessary, the report of the statutory auditor(s), the discussion and adoption of the annual accounts and the allocation of the net profits, the discharge from liability of the director(s) and statutory auditor(s) and, if necessary, the appointment of director(s) and statutory auditors.

The validity of the notice of a meeting cannot be challenged if all shareholders are present or represented at the meeting.

## Article 2928  Conditions for Admission

In order to be admitted to the Shareholders' Meeting, and provided the Board of Directors requests it in the notice, all owners of registered shares must notify

the Board of Directors of their intention to attend the Shareholders' Meeting at least four (4) full days in advance.

Bond holders may attend the Shareholders' Meeting if they deposit their bonds within the period and at the place specified by the Board of Directors in the notice. Such period may not exceed four (4) full days prior to the meeting.

## Article 3029  Representation

Any shareholder may designate a proxy holder, who need not be a shareholder, by letter, ~~telegram, telex,~~ facsimile, e-mail or any other written instrument to represent him at the Shareholders' Meeting.

In the notice, the Board of Directors may specify the form of such proxies and require their deposit at least four (4) full days prior to the meeting at the location specified in the notice.

## Article ~~34~~30    Chairmanship of the Shareholders' Meeting

All Shareholders' Meetings shall be chaired by the chairman of the Board of Directors, or in his absence, by a Managing Director, or failing same, the longest serving director.

## Article ~~32~~31    Number of Votes - Exercise of Voting Rights

Each share shall carry the right to one vote. Bond holders may attend the Shareholders' Meeting in an advisory capacity only.

## Article ~~33~~32    Proceedings

An attendance list, indicating the shareholders' names and the number of shares held by each ~~shareholders~~ shareholder shall be signed by each shareholder or his proxy holder prior to the meeting.

The Shareholders may only discuss matters set out in the agenda, unless all shareholders are present and decide unanimously to discuss other matters.

The directors shall ~~reply to~~ answer the ~~Shareholders'~~ shareholders' questions on the management report or on any other item on the agenda. The statutory auditor(s) shall ~~reply to~~ answer the ~~Shareholders'~~ shareholders' questions on his/their report.

Except as provided by law or by these Articles of Association, all resolutions shall be adopted by the ~~Shareholders~~ shareholders by a simple majority of the votes cast, irrespective of the number of shares represented at the meeting. Blank and invalid votes shall not be counted in the votes cast.

Notwithstanding the preceding paragraph and without prejudice to the provisions of article ~~18~~17 above or, as the case may be, to quorum requirements and/or more stringent majority requirements laid down by law, the following decisions, when submitted to the shareholders meeting (for the avoidance of doubt, it is specified that

24

this Article 32 does not intend to attribute powers to the shareholders meeting that it
does not have under common company law), shall require the consent of at least the
holders of the majority of Class A Shares :

~~any increase or reduction of the statutory capital of the Company decided by the~~
~~shareholders, with or without removal, limitation or waiver of~~
-~~the preferential subscription rights relating thereto;~~

- any ~~modification~~amendment of the articles of ~~associations~~association of the
  Company;

-~~any decision to wind-up, liquidate, merge, split or terminate the Company in any~~
~~way whatsoever;~~

-~~any decision to purchase own shares or to re-sell purchased shares;~~

-~~the appointment and termination of the mandate of the auditor;~~

-~~any decision to renew the authorized capital.~~

- the issue or allotment of any share capital or any other security by the Company
  or the creation, grant or issue of any option, warrant or right to subscribe or
  acquire, or convert any security into, any share capital of the Company;

- the declaration or payment of any dividend or the declaration or making of any
  other distribution by the Company;

- the winding-up of the Company;

- the reduction of the share capital or variation of the rights attaching to any class
  of shares of the Company or any redemption, purchase or other acquisition of
  any shares or securities of the Company;

- the sub-division, consolidation or redenomination of the share capital of the
  Company or any merger into or with other entities, full or partial split of the
  Company or assimilated transactions within the meaning of Article 676 of the
  Company Code;

- any change in the name of the Company;

- any change to the registered office of the Company;

- the giving of financial assistance (as that expression is defined in article 629 of
  the Company Code) by the Company for the acquisition of any shares of the
  Company;

- the raising of any indebtedness by the Company in excess of €25,000.

In the case of an appointment of directors and/or auditor, if at the vote no candidate obtains the absolute majority, a new vote shall be organized between the two candidates having obtained the highest number of votes.

Voting shall be by a show of hands or by roll call, unless the Shareholders decide otherwise by a simple majority of the votes cast. Any director may call for the vote to be conducted by roll call. The foregoing does not affect the right of each shareholder to vote by letter, by means of a form containing the following points: (i) identification of the shareholder; (ii) number of votes that he/she can exercise; (ii) for each decision that, pursuant to the agenda, must be taken by the Shareholders: "yes", "no" or "abstention".

## Article ~~34~~33   Minutes

The minutes of the Shareholders' Meeting shall be signed by the members of the Committee, as defined in article 546 of the Company Code, and by any shareholder wishing to do so.

Copies to be produced for legal or other purposes shall be signed by two directors.

# TITLE V - ANNUAL ACCOUNTS - ALLOCATION OF PROFITS

## Article ~~35~~34   Annual Accounts

The financial year shall begin on January 1 and shall end on December 31 of each year.

The Board of Directors shall prepare an inventory and the annual accounts at the end of each financial year. The Board of Directors shall also issue a report justifying its management of the Company. This management report shall include comments on the annual accounts for the purpose of accurately presenting the evolution of the business and the Company's position, as well as all matters listed in article 96 of the Company Code.

## Article ~~36~~35   Approval of the Annual Accounts

The management report and, if applicable, the report of the statutory auditor(s)

shall be presented at the annual Shareholders' Meeting at which the Shareholders shall decide upon the approval of the annual accounts.

After approval of the annual accounts at the Annual Shareholders' Meeting, the Shareholders shall take a special vote on the discharge from liability of the directors and, if any, the statutory auditor(s). Such discharge shall be valid only if the balance sheet contains no omissions or false information distorting the real situation of the Company, and, if there are no ultra vires acts, unless or acts that conflict with the Company Code, provided such acts are specifically mentioned in the notice of the meeting.

Within thirty days of the approval of the annual accounts by the Shareholders' Meeting, the Board of Directors shall deposit the annual accounts, the management report as well as the other documents listed in article 98 and 100 of the Company Code, with the "Nationale Bank van België".

## Article 37 36   Distributions

Five per cent (5%) of the annual net profits shown in the annual accounts shall be transferred to a reserve account required by law. This retention shall be compulsory until the reserve reaches ten per cent (10%) of the subscribed capital of the Company.

Upon proposal of the Board of Directors, the Shareholders shall take, by a simple majority of the votes cast and with a majority of the votes attached to the Class A Shares, a decision concerning decide on the allocation of the balance remaining of the
net profits in accordance with the limits imposed by article 617 of the Company Code.

**Article 38<u>37</u>   Payment of Dividends**

Dividends shall be paid at the time and place determined by the Board of Directors.

The holders of registered shares shall be barred from claiming dividends which have not been claimed for <u>during a period of </u>five years from the due date of payment.

**Article 39<u>38</u>   Interim Dividends**

The Board of Directors shall be authorised to pay ~~an advance on the results of the~~ ~~financial year in the form of an~~ interim ~~dividend~~<u>dividends</u> within the limits of article 618 of the Company Code.

## TITLE VI.  DISSOLUTION - LIQUIDATION

**Article 40<u>39</u>   Voluntary Liquidation**

If, as a result of losses, the net assets of the Company have been reduced to less than half of its subscribed capital, the Board of Directors must submit the question of the liquidation of the Company and any other possible measures to the Shareholders' Meeting which shall discuss such matters in accordance with article 633 of the Company Code.

If, as a result of losses, the net assets of the Company are less than one quarter of the subscribed capital, the liquidation of the Company may be decided by twenty-five per cent (25%) of the votes cast at the meeting.

If the net assets of the Company are less than the statutory minimum, each interested party may request the court to dissolve the Company. The court may grant the Company time to regularise its situation.

**Article 41<u>40</u>   Liquidation**

In the event of the dissolution <u>and liquidation </u>of the Company, whenever and for whatever reason, the liquidation of the Company shall be carried out by liquidators appointed by the Shareholders' Meeting, or, failing such appointment, by the Board of Directors acting as a liquidation committee. The liquidators shall act jointly unless otherwise decided. In this respect, the liquidators shall have the broadest powers

28

granted by article 186 and following of the Company Code, except as restricted by the Shareholders' Meeting.

The Shareholders Meeting shall determine the remuneration of the liquidators.

## Article 42~~41~~   Distribution

§ 1. In the case of a liquidation of the Company within a period of eighteen months after the date of the modification of the Articles of Association of 25 September 2007, the net asset balance remaining after payment of all debts and liquidation costs, or reservation of the necessary amounts to cover these debts and costs, whether such balance is in cash, shares or other assets (the "Liquidation Surplus") shall be apportioned as follows and in the following order :

(i) the Class C Shares shall each first receive the Liquidation Surplus up to the respective value of the paid-in part of the initial subscription price of such Class C Shares; if the Liquidation Surplus is insufficient, the Liquidation Surplus shall be proportionally divided among the Class C Shares;

(ii) the balance of the Liquidation Surplus shall be shared among all shares (i.e. an equal amount shall be distributed to each Share ("the Balance Payment")), it being understood that the Class C Shares will receive an amount per share which is equal to the Balance Payment reduced by the amount already distributed to such Class C Shares pursuant to article 42 (i).

~~§ 2. After expiry of the period provided in § 1., the~~ The net asset balance remaining after payment of all debts, liabilities and liquidation costs, or reservation of the necessary amounts to cover these debts, liabilities and costs, shall first be used to reimburse in cash or in kind the paid-in capital not yet reimbursed to the shareholders. The balance remaining, if any, shall be divided equally ~~on a pro rata basis~~ among all ~~shareholders~~shares.

## TITLE VII. GENERAL PROVISIONS

## Article 43~~42~~   Election of Residence

All directors, managers and liquidators residing abroad shall for the duration of their term of office elect residence at the registered office of the Company, where all summons and notices with respect to corporate matters and the liability of the said persons for their management may be validly served on them, with the exception of notices of meetings in compliance with these Articles of Association.

The holders of registered shares must notify the Company of any change of residence. Failing such notice, they shall be deemed to have elected domicile at their prior residence.

## Article 44~~43~~   Legal Provisions Reproduced in the Articles

The provisions hereof which are literal reproductions of legal provisions of the Company Code, are set out herein for information purposes only ~~and, for the purpose of article 554 of the Company Code, shall not acquire the status of statutory provisions~~.

## Article 45~~44~~   Shareholders' agreement

All or some of the shareholders of the Company may enter into shareholders' agreements relating to their participation in the Company.

# EASDAQ NV

Lei 19 Box 11, B-3000 Leuven, Belgium
RPR Leuven 0455.240.893

(the "**Company**")

## *FREE TRANSLATION – FOR INFORMATION PURPOSES ONLY*

**COMBINED SPECIAL REPORT OF THE BOARD OF DIRECTORS IN ACCORDANCE WITH (I) SECTIONS 582, 596 AND 598 OF THE BELGIAN COMPANIES CODE REGARDING THE ISSUANCE OF (PREFERRED) NEW CLASS A SHARES AND (COMMON) CLASS B SHARES BELOW THE FRACTIONAL VALUE OF THE EXISTING SHARES, WITH CANCELLATION OF THE PREFERENTIAL SUBSCRIPTION RIGHTS FOR THE BENEFIT OF CITADEL TACTICAL INVESTMENTS LLC; AND (II) SECTIONS 582, 583, 596 AND 598 OF THE BELGIAN COMPANIES CODE REGARDING THE ISSUANCE OF WARRANTS WITH AN EXERCISE PRICE BELOW THE FRACTIONAL VALUE OF THE EXISTING SHARES AND WITH CANCELLATION OF THE PREFERENTIAL SUBSCRIPTION RIGHTS IN CONNECTION THEREWITH FOR THE BENEFIT OF CERTAIN PERSONS**

The Board of Directors (the "**Board**") hereby presents to the extraordinary general meeting of shareholders of the Company its special report pursuant to (i) sections 582, 596 and 598 of the Belgian Companies Code ("**BCC**") regarding the issuance of new Class A shares and Class B shares below the fractional value of the existing shares, with cancellation of the preferential subscription rights for the benefit of Citadel Tactical Investments LLC and (ii) sections 582, 583, 596 and 598 BCC regarding the issuance of warrants, with an exercise price below the fractional value of the existing shares and with cancellation of the preferential subscription rights in connection therewith for the benefit of Börse Berlin AG and Dr. Jos B. Peeters (the "**Beneficiaries**").

In accordance with sections 582, 583, 596 and 598 BCC, the Board describes in this report the purpose and justification for the issuance of (common and preferred) shares and warrants and the cancellation of the preferential subscription rights in connection therewith for the benefit of certain beneficiaries (as identified in this report), the issue price and the (financial) consequences of these transactions for the existing shareholders and warrantholders (including in respect of their participation in the profits and the Company's equity). The issue of shares and warrants follows the consolidation of the Company's shares, and the creation of a new Class A with certain preferential rights, which is justified in a separate Special Report of the Board of even date herewith, with which this report should be read together.

## I.   ISSUE OF SHARES

### 1.1.   PURPOSE AND JUSTIFICATION FOR THE CAPITAL INCREASE

Reference is made to the Combined Report (Annual Report and Special Report pursuant to section 633 BCC) presented at the annual shareholders' meeting of 25 June 2009 in which it was stated that the Company was seeking alternative sources of funding or potential forms of co-operation with third parties, in view of (i) the status of the business, (ii) the market circumstances prevailing since October 2008 and (iii) the funds available to the Company.

The Company has found in the Citadel Group a strategic partner that will enable the Company to continue to implement its vision of a Pan-European trading platform targeted at offering order-by-order best execution services.  As part of this strategic partnership, Citadel Tactical Investments LLC ("**Citadel**") will subscribe to a capital increase of EUR 15 million in the Company.  This capital contribution is expected to allow the Company the time to grow its current business and expand its product offering, with an aim of achieving operational break-even as fast as possible.

The issue price is set at EUR 0.375 per share, which the Board believes is at least equal to the intrinsic value (and net asset value) of the Company at the end of the last accounting period and at the date of this report.  In view of the amount of the investment, Citadel will become the majority shareholder of the Company at the closing of this transaction (which is scheduled to occur on the same date as the extraordinary shareholders' meeting).

### 1.2.   ISSUE OF SHARES AND NATURE OF SHARES ISSUED

In relation to this transaction, the Company will issue 37,500,000 Class B shares (which is the class of common stock) and 2,500,000 Class A Shares which are preferred shares) (together, the "**Shares**").  For more information on the consolidation of classes of shares, the creation of a new preferred Class A and a description of the respective rights attached to the shares, reference is made to the Special Report of the Board pursuant to section 560 BCC of even date herewith., One third (1/3) of the issue price of the Shares will be paid up at the time of the capital increase.  The remainder of the capital contribution that is not immediately paid up, will in any event be payable upon expiry of the fifth anniversary of the capital increase, and may be called earlier by the Board of Directors, subject to certain restrictions, in line with the needs of the Company's business.

### 1.3.   ISSUE OF SHARES AT A SUBSCRIPTION PRICE WHICH IS AT LEAST AS HIGH AS THE INTRINSIC VALUE BUT LOWER THAN THE FRACTIONAL VALUE OF THE CURRENT SHARES (SECTIONS 582, 596 AND 598 BCC)

Currently, the subscribed capital of the Company amounts to EUR 113,526,848.9, represented by 9,077,487 shares, resulting in a fractional value of approximately EUR 12.5 per share.

The proposed issue price of EUR 0.375 is therefore lower than the current fractional value of the shares.

The issue price is however at least as high as the intrinsic value of the existing shares, including when calculated by reference to the most recent approved

annual accounts. The equity (or net asset value) of the Company, as set out in the audited annual accounts per 31 December 2008, amounted to EUR 2,896,626.61. The intrinsic value, when calculated as a net asset value, is therefore equal to 2,896,626.61/9,077,487 or approximately EUR 0.32 per share. Moreover, the Company has continued to incur losses since the last accounts date, meaning that the net asset value has continued to decline since that date. Also, the Board, in its search for alternative sources of funding or potential forms of co-operation with third parties, has not been able to identify potential subscribers that would have been prepared to participate in a capital increase on better terms.

The Board therefore believes that the issue price of EUR 0.375 is at least equal to the current intrinsic value of the Company's shares.

The capital increase will have an impact on the financial rights (i.e., amongst other things, dividend rights and rights to liquidation proceeds) and membership rights (i.e., amongst other things, voting rights and preferential subscription rights) that are attached to the existing shares.

This results from the fact that (i) the capital representative value of all shares (existing and new) would be equalized after the capital increase; and (ii) that some of the shares issued (i.e., the Class A Shares) will have special rights compared to those attached to the Class B Shares (which is the class of common stock into which all of the Company's existing shares are expected to be consolidated at the EGM).

As stated before, the Company needs significant additional funds in order to be able to continue its activities as a trading platform and to finance its current operational costs. The proposed investment at the proposed issue price is therefore in the best interests of the Company.

### 1.4.   CANCELLATION OF THE PREFERENTIAL SUBSCRIPTION RIGHTS IN CONNECTION WITH THE ISSUANCE OF NEW CLASS A AND CLASS B SHARES FOR THE BENEFIT OF CITADEL (SECTIONS 596 AND 598 BCC)

In connection with the proposed issue of shares, the Board proposes to cancel the preferential subscription rights of the current shareholders.

The beneficiary of the cancellation of the preferential subscription rights is Citadel, an affiliate of the Citadel Group, a leading international financial institution active in asset management and capital management. It is proposed to issue 40,000,000 new shares (2,500,000 Class A shares and 37,500,000 Class B shares), as a result of which the total number of shares would increase from 9,077,487 to 49,077,487 shares. After the capital increase, the existing shareholders will hold 18.5% of the total number of shares and the dilutive effect of the transaction for the existing shareholders is therefore equal to 81.5%.

Reference is made to chapter 1.3 above regarding the subscription price, its justification and the financial impact of the transaction on existing shareholders.

## II.    ISSUE OF WARRANTS

### 2.1.    PURPOSE OF AND JUSTIFICATION FOR THE WARRANT ISSUE

As explained in more detail in the Special Report of the Board pursuant to section
560 BCC, prior to the issue of shares contemplated under part I of this report and
the issue of warrants contemplated under this part II, the Company is expected to
consolidate all existing classes of shares into a new Class B to which no special
rights will be attached.  This means that holders of the current A and C shares,
apart from being diluted through these transactions in the same manner as all
other shareholders, also lose all of the extensive special rights that were attached
to these current A and C shares.

All currently existing A shares are held by Dr. Jos. B. Peeters ("**JBP**").   All
currently existing C Shares are held by Börse Berlin AG ("**BSX**").  To compensate
JBP for the loss of special rights attached to his A shares, thereby securing his
necessary support for the transaction, the Company has decided to award JBP
1,100,356 warrants to subscribe to new Class B Shares.  To compensate BSX for
the loss of special rights attached to its C shares, thereby securing its necessary
support for the transaction, the Company has decided to award it 210,000
warrants to subscribe to new Class B Shares.

The issuance of the warrants is an essential element of the transaction aimed at
re-capitalising the Company and at securing its longer term viability (as set forth
under part 1.1 above) and is therefore in the interests of the Company.

### 2.2    ISSUE OF WARRANTS AND NATURE OF WARRANTS ISSUED

The Company proposes to issue 1,100,356 warrants to JBP and two tranches of
105,000 warrants to BSX, free of charge, with the following exercise conditions:
- JBP shall be entitled to exercise his Warrants, on one or more occasions,
  and to subscribe in cash at any time during the exercise period which
  (assuming issue on 7 August 2009) begins on 7 February 2010 and ends
  on 7 August 2012 for 1,100,356 new Class B shares.
- BSX shall be entitled to exercise its warrants and to subscribe in cash
  during the same exercise period for the number of new Class B shares set
  out below provided that BSX may not exercise its warrants and subscribe
  for any new Class B shares unless one of the following events has
  occurred:
    - as to 105,000 warrants, on the exercise (on each occasion) by JBP
      of his right to subscribe for new Class B shares pursuant to the
      terms and conditions of the warrants issued to him; or
    - as to an additional 105,000 warrants, on the exercise by JBPof his
      right to acquire certain shares of the Company from BSX under a
      call option agreement.

The warrants shall also be exercisable and JBP and BSX will have the right to
subscribe for the corresponding number of new Class B shares immediately prior
to a change of control, a redemption of own shares by the Company or the
dissolution and liquidation of the Company. The current warrants may be replaced
by new warrants (substantially having the same conditions, except for the
exercise price) in the case of an issuance by the Company of new Class B shares
(or securities convertible into new Class B shares or which give the right to
subscribe for new Class B shares) at an issue price or exercise price lower than
EUR 0.375 (see also part 2.3 below).

2.3.   ISSUE OF WARRANTS AT AN EXERCISE PRICE WHICH IS LOWER THAN THE FRACTIONAL VALUE OF THE CURRENT SHARES (SECTIONS 582, 583, 596 AND 598 BCC)

The exercise price of the warrants is EUR 0.375, which is identical to the issue price used in the capital increase.  Reference is made to part 1.3 above for the justification of that price.

2.4.   CANCELLATION OF THE PREFERENTIAL SUBSCRIPTION RIGHTS IN CONNECTION WITH THE ISSUANCE OF NEW WARRANTS FOR THE BENEFIT OF JBP AND BSX (SECTIONS 596 AND 598 BCC)

The warrant issue is reserved to the current holders of A and C shares, namely JBP and BSX, respectively, because these warrants are meant to compensate these shareholders for the loss of the special rights attached to these shares as a result of the consolidation of the existing classes of shares, which is a condition to the subscription by Citadel (see part 2.1 above).

Under the warrant issuance, a maximum of 1,310,356 new Class B shares can be issued upon exercise of the warrants, as a result of which the total number of shares would increase from 49,077,487 (following the capital increase contemplated under part I above) to 50,387,843 shares.  The shares in existence immediately following the capital increase contemplated under part I above will represent 97.4% of the total number of shares and the dilutive effect of the transaction for existing shareholders (immediately following the capital increase), assuming exercise of the warrants, is therefore equal to 2.6%.

FREE TRANSLATION FROM THE DUTCH ORIGINAL

**Report of the statutory auditor regarding the issuance of shares and warrants below fractional value and with cancellation of the preferential subscription rights at the occasion of the anticipated capital increase of Easdaq nv**

### Assignment

In accordance with articles 582, 596 and 598 of the Belgian Company Code, we report, in our capacity of statutory auditor, on the financial and accounting information included in the special report of the board of directors of 20 July 2009 in connection with the issuance of shares and warrants below fractional value and with cancellation of the preferential subscription rights, and we indicate the intrinsic value of the shares of Easdaq nv (the "Company").

### Proposed Transactions

It is proposed to increase the capital of the Company by € 15.000.000. The proposed capital increase will be entirely subscribed by Citadel Tactical Investments llc and will be accompanied by the issuance of (i) 2,500,000 Class A shares (€ 0.375 per share, of which € 0.125 will be immediately paid-up) and (ii) 37,500,000 Class B shares (€ 0.375 per share, of which € 0.125 will be immediately paid-up). The capital increase will take place under the condition precedent of a preceding resolution to (i) cancel all existing classes of shares and equalize all rights attaching to the existing shares, (ii) create a new class of Class A shares with special rights attaching thereto and a new class of Class B shares without special rights attaching thereto, (iii) allocate all existing shares to Class B shares, (iv) confirm that the existing warrants issued by the Company will entitle the holder thereof to Class B shares upon exercise, and (v) amend the articles of association to determine the rights that will attach to the new classes of Class A shares and Class B shares.

It is further proposed to issue 1,310,356 warrants (1,100,356 for the benefit of Mr. Jos B. Peeters and 210,000 warrants for the benefit of Börse Berlin ag), the issue and exercise conditions of which are set out in detail in the special report of the board of directors of 20 July 2009.

The proposed transactions, in particular the issue price and the financial consequences for the shareholders, are extensively justified in the special report of the board of directors of 20 July 2009.

<u>Intrinsic value of the existing shares</u>

Under the current condition of the Company, the net asset value is seen as a reliable approximation of the intrinsic value.

The net asset value of the Company based on the audited annual accounts at 31 December 2008 is € 2,896,626.61, which results in an intrinsic value per share of 2,896,626.61/9,077,487 = € 0.32.

The subscription price of € 0.375 is therefore higher than the intrinsic value.

<u>Control</u>

We have examined the financial and accounting information included in the special report of the board of directors of 20 July 2009 in accordance with the applicable standards of the Belgian *Instituut van de Bedrijfsrevisoren*.

The Company's annual accounts as of 31 December 2008 have been subject to a full scope audit in accordance with the standards of the Belgian *Instituut van de Bedrijfsrevisoren*. We have issued an unqualified opinion with emphasis of matter paragraph. The emphasis of matter paragraph relates to the going concern.

<u>Conclusion</u>

In conclusion of our examinations carried out in accordance with the applicable standards of the Belgian *Instituut van de Bedrijfsrevisoren* we certify that the financial and accounting information included in the special report of the board of directors of 20 July 2009 is true and fair, and adequate to inform the extraordinary meeting of shareholders that has to decide on the issuance of shares and warrants below fractional value and the cancellation of the preferential subscription rights.

The proposed issue price of the new shares of € 0.375 is higher than the intrinsic value of € 0.32 per share.

Brussels, 20 July 2009

Ernst & Young Bedrijfsrevisoren bcvba
Statutory Auditor
represented by


Marc Van Steenvoort
Partner

10MVS0004

*Extraordinary shareholders meeting Easdaq NV*

*Unofficial English translation*

## Power of attorney

**Please fill out and sign this proxy in the appropriate spaces if you wish to be represented at the extraordinary shareholders meeting of EASDAQ NV, to be held on 7 August 2009. Please send this proxy, duly completed and signed, immediately upon receipt by express courier or telefax (+49(0)30 31109178) to EASDAQ NV, 3000 Leuven, Lei 19, Box 11, for the attention of Mr. Artur Fischer.**

### PLEASE ALSO FILL OUT AND SIGN THE DUTCH PROXY FORM ACCORDINGLY

The undersigned:

**Name:** _____

**Address/registered office:** _____

_____

**Holder of number of shares:** _____

**Class B**

**Appoints as its special proxyholder**, individually and with full power of substitution:

Timothy Verhoest, Chemin de Pomone 13, 1228 Genève, Switzerland, or
Artur Fischer, Jänickestrasse 121, 14167 Berlin, Steglitz-Zehlendorf, Germany,

to whom the undersigned gives power of attorney to represent it for the purposes of the extraordinary general meeting of the company Easdaq NV, having its registered offices at Lei 19 box 11, B-3000 Leuven (Belgium) (number 0455.240.893 – RPR Leuven) that will be held at the offices of notary Eric Spruyt, Lloyd Georgelaan 11 B-1000 Brussels, on 7 August 2009 at 10.00 am; and that shall resolve on the agenda attached to the notice.

The proxyholder may, amongst other things, without limitation:

- Participate in any meeting with the same agenda in case the first meeting could not validly deliberate or could not be held on the date mentioned above.

- Participate in all deliberations and in the name and on behalf of the undersigned resolve to approve all proposals in relation to the agenda.

- Declare that the undersigned considers itself as having been validly convened, that it it is aware of the provisions of sections 64 1°, 178, 533 and 535 of the Belgian Companies Code, and that it renounces to the notice terms and formalities and to the right to initiate a possible claim to obtain the nullity of any decision taken on the basis of a formal irregularity.

- Declare that the undersigned has received in advance all reports mentioned on the agenda, that it had sufficient time to review them and that it has no questions regarding or remarks in relation to these reports.

- Declare that the undersigned has received an integral copy of the draft of the articles of association to which reference is made in the agenda of the extraordinary general meeting.

- Resolve to (i) cancel all existing classes of shares and to equalize all rights attaching to the existing shares, (ii) create a new class of Class A shares and a new class of Class B shares, (iii) allocate all existing shares to Class B shares, and (iv) amend the articles of association of the company substantially in the form as attached to the agenda of the extraordinary general meeting; confirm that, henceforth, the existing warrants issued by the company will entitle the holder thereof to Class B shares upon exercise.

- Resolve to approve the capital increase to which reference is made in the agenda of the extraordinary general meeting.

- Resolve to approve the issuance of warrants to which reference is made in the agenda of the extraordinary general meeting.

- In general, vote in favour of all proposals contained in the agenda.

- In general, to execute all minutes, attendance lists, agreements, confirmations, notifications and any other document, to substitute and, in general, to do all what is useful or necessary for the performance of this power of attorney, with a promise of ratification, to the extent necessary.

Instructions to the proxyholder

The undersigned hereby explicitly authorizes and instructs the proxyholder to take part in the extraordinary general meeting, even if no proof is presented that the shareholders, the directors, the statutory auditor and/or the other relevant holders of securities have been validly convened for the extraordinary general meeting and, to the extent applicable, if not all relevant parties have renounced to the (i) notice terms and formalities for the extraordinary

general meeting and (ii) the right to receive specific reports and other documents, as provided by the relevant sections of the Belgian Companies Code.

<u>Indemnification of the proxyholder</u>

The undersigned undertakes to indemnify the proxyholder for any damage he/she could sustain as a result of any action undertaken by the proxyholder in performing this power of attorney, to the extent that he/she has respected the limits of his/her powers. In addition, the undersigned undertakes not to claim the nullity of any resolution approved by the proxyholder and not to claim any damages from him/her, to the extent the proxyholder has observed the limits to his/her powers.

**Done at:**    _____(plaats/place),

**On:**    _____(datum/date).


_____    _____
(handtekening/signature)    (handtekening/signature)


_____    _____
(naam/name)    (naam/name)


_____    _____
(functie/function)    (functie/function)