**Hearing Date and Time: August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :   08-13555 (JMP)
                                        :
                        Debtors.        :   (Jointly Administered)
                                        :
------------------------------------------------------------------x
```

### NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL OF SETTLEMENT WITH LEHMAN RE LTD.

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI" and

together with LBHI and their affiliated debtors in the above-referenced chapter 11 cases, the

"Debtors"), pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

for authorization and approval of a settlement among LBHI, LCPI, Lehman ALI, Inc. ("LALI")

and Lehman Re Ltd. ("Lehman Re"), as more fully described in the Motion, will be held before

the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

US_ACTIVE:\43097888\08\43097888_8.DOC\58399.0003

New York 10004 (the "Bankruptcy Court"), on **August 26, 2009 at 10:00 a.m. (Prevailing**

**Eastern Time)** (the "Hearing").

           PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Shai Waisman, Esq., attorneys for the Debtors and LALI; (iii) the Office of the

United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall

Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul

Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq.,

(iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York

10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys

for the official committee of unsecured creditors appointed in these cases (v) Kirkland & Ellis

LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn:  David R. Seligman, Esq.,

attorneys for Lehman Re and (vi), Cadwalader, Wickersham & Taft LLP, One World Financial

Center, New York, New York 10281, Attn:  Ingrid Bagby, attorneys for Lehman Re; so as to be

so filed and received by no later than **August 21, 2009 at 4:00 p.m. (prevailing Eastern Time)**

(the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 5, 2009
     New York, New York

/S/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                                    :
**In re**                                           :      **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :      **08-13555 (JMP)**
                                                    :
                          **Debtors.**              :      **(Jointly Administered)**
                                                    :
---------------------------------------------------------------------x


**MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN**
**COMMERCIAL PAPER INC. PURSUANT TO SECTION 105 OF THE BANKRUPTCY**
**CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR**
**AUTHORIZATION AND APPROVAL OF SETTLEMENT WITH LEHMAN RE LTD.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

              Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc.

("LCPI" and, together with LBHI and their affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession, the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman"), file this Motion and respectfully represent:

**Preliminary Statement**

              1.      LBHI and LCPI seek authorization and approval of a settlement with

Lehman ALI Inc., a wholly-owned subsidiary of LBHI ("LALI" and, together with LBHI and

LCPI, the "Lehman U.S. Entities") and Lehman Re Ltd., a wholly-owned, indirect subsidiary of

LBHI in  a Bermudan insolvency proceeding ("Lehman Re"), pursuant to the terms of an

agreement substantially consistent with the form agreement attached hereto as Exhibit A (the

"Settlement Agreement").[1]

2.        Beginning in 1997, LBHI and LALI sold certain residential and

commercial mortgage and mezzanine loans to LCPI and/or Lehman Brothers Inc. ("LBI")

pursuant to a repurchase transaction.  LCPI and/or LBI subsequently committed to sell to

Lehman Re these and other residential and commercial mortgage and mezzanine loans, which

are collectively listed on Exhibit A to the Settlement Agreement (the "Mortgage Loans").

3.        LBHI and LALI dispute whether LCPI or LBI had the right to sell certain

of the Mortgage Loans to Lehman Re.  Lehman Re and the Lehman U.S. Entities are also

currently engaged in certain disputes regarding which parties are liable for the funding

obligations thereunder.  To resolve these disputes, solely as between the Lehman U.S. Entities

and Lehman Re, and to avoid protracted, costly and uncertain litigation, LBHI and LCPI seek

authorization to enter into the Settlement Agreement.

4.        The Settlement Agreement provides, among other things, that the

Lehman U.S. Entities will execute and deliver to Lehman Re certain assignment documents

with respect to each Mortgage Loan and confirm that Lehman Re is, and has been, the sole

owner of the Mortgage Loans since September 17, 2008.  In exchange for the foregoing,

Lehman Re will assume the Lehman U.S. Entities' future funding obligations under the

---

[1] The description and characterization in this Motion of (a) the events, facts, and circumstances giving rise to the claims and disputes (and the settlement of certain of those claims and disputes) referenced herein and (b) the claims and disputes themselves, are for information purposes only, are subject to Federal Rule of Evidence 408, and are without prejudice to the rights and Claims (as defined herein) of the Lehman U.S. Entities, the JPLs, and Lehman Re, which shall be governed solely by the terms of the Settlement Agreement.

Mortgage Loans from and after September 17, 2008, pay the Lehman U.S. Entities the aggregate amount of $1 million, and grant the Lehman U.S. Entities a right of first offer to purchase certain of the Mortgage Loans. The Lehman U.S. Entities will release Lehman Re, and Lehman Re will release each of the Lehman U.S. Entities, for any claims arising after September 17, 2008, to the extent specified in the Settlement Agreement. The agreement is fair and reasonable and in the best interests of LBHI and LCPI, their estates, and creditors. Accordingly, the Settlement Agreement should be approved.

## **Background**

5.     Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On October 5, 2008, LCPI commenced its voluntary case under the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

7.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI. A trustee appointed under SIPA is administering LBI's estate.

## Lehman's Business

8.       Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9.       Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Jurisdiction

10.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Prepetition Transactions

11.       On December 4, 1997, LBHI, LBI and LCPI entered into that certain Master Repurchase Agreement (as amended, the "Initial MRA"), a copy of which is attached hereto as Exhibit B.  Pursuant to the Initial MRA, prior to the Commencement Date, LBHI and LALI sold to LCPI and/or LBI certain residential and commercial mortgage and mezzanine loans (the "Initial MRA Loans").[2]  As a result, as of the Commencement Date in LBHI's case, LBHI was no longer an owner of any of the Initial MRA Loans, and the Initial MRA Loans are

---

[2] While LALI was not party to the Initial MRA, the terms of the Initial MRA permitted LBHI to sell loans on behalf of LALI as LALI's agent.

not and were not property of LBHI's estate.  Under the terms of the Initial MRA, LBHI and

LALI are entitled to receive an amount equal to all income generated under the Initial MRA

Loans and retained the right and obligation to repurchase the Initial MRA Loans at a future

date.

        12.     On July 9, 1999, LCPI, LBI and Lehman Re entered into that certain

Master Repurchase Agreement (the "MRA"), a copy of which is attached hereto as Exhibit C.[3]

Pursuant to the MRA, LCPI sold to Lehman Re the Mortgage Loans, which are listed on

Exhibit A to the Settlement Agreement and consist of certain of the Initial MRA Loans.  The

Mortgage Loans include certain residential loans listed on Exhibit B to the Settlement

Agreement (the "Residential Loans").  Under the terms of the MRA, LCPI was entitled to

receive an amount equal to all income generated under the Mortgage Loans and retained the

right and obligation to repurchase the Mortgage Loans at a future date.  Pursuant to the MRA,

Lehman Re transferred cash to LCPI in exchange for the purchase of certain assets, including,

the Mortgage Loans.  LCPI subsequently transferred this cash to LBHI and LALI in exchange

for the purchase of the Initial MRA Loans.

        13.     LBHI, LALI and LCPI currently dispute whether LCPI or Lehman Re

has the obligation to make future fundings under the Mortgage Loans.  The Lehman U.S.

Entities estimate that the total future funding obligations under the Mortgage Loans are over

$85 million.

---

[3] While LBI is party to the Initial MRA and the MRA, but not party to the Settlement Agreement, nothing in the Settlement Agreement is intended to prejudice or waive any claims, counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or tort, unsecured, secured priority administrative or otherwise ("Claims") of LBI with respect to the Initial MRA or the MRA or any Claims of the Lehman U.S. Entities against LBI with respect to the Initial MRA or the MRA.

14.     LBHI, LALI and LCPI currently dispute whether LCPI had the right to sell the Initial MRA Loans to Lehman Re under the MRA.  In addition, certain of the Mortgage Loans were subject to intercreditor agreements and may or may not have been sold in violation of such intercreditor agreements (the "Intercreditor Agreements").  To the extent that any Mortgage Loans were transferred in violation of the Intercreditor Agreements, the Lehman U.S. Entities believe that any such violations do not affect the ownership status of the Mortgage Loans as between Lehman Re and the Lehman U.S. Entities.[4]

15.     Pursuant to a Tri-Party Custody Agreement (the "Custody Agreement"), dated as of May 5, 2008, by and among Lehman Re, LCPI and The Bank of New York, as Master Custodian ("BNY"), BNY was to hold the files (collectively, the "Collateral Files") relating to the Mortgage Loans for the benefit of Lehman Re and LCPI.  BNY arranged for several sub-custodians to take custody of the Collateral Files.

16.     On September 17, 2008 (the "Default Date"), Lehman Re declared an Event of Default (as defined in the MRA) and notified LCPI in writing that it was in default under the MRA.  On the same day, Lehman Re advised BNY that there had been an Event of Default and, in accordance with the Custody Agreement, Lehman Re directed BNY to transfer the Collateral Files into the name of Lehman Re.  In accordance with this instruction, BNY issued written notices to the sub-custodians, instructing them to follow the instructions of Lehman Re concerning the Mortgage Loans and Collateral Files.

---

[4] LBHI and LCPI will serve notice of this Motion on each counterparty to the Intercreditor Agreements (the "Intercreditor Counterparties").  Except as specifically provided therein, nothing in the Settlement Agreement is intended to prejudice or waive any Claims of the Lehman U.S. Entities, the Intercreditor Counterparties, the JPLs or Lehman Re with respect to the Intercreditor Agreements or the Mortgage Loans.

17.     On September 23, 2008, a winding-up proceeding was commenced on behalf of Lehman Re in the Supreme Court of Bermuda (the "Bermuda Court").  By order of the Bermuda Court dated September 23, 2008, Peter C.B. Mitchell and D. Geoffrey Hunter were appointed as the joint provisional liquidators (the "JPLs") for Lehman Re.

18.     As a result of the Event of the Default, the JPLs, on behalf of Lehman Re, took possession of the Mortgage Loans prior to the commencement of LCPI's case.  Pursuant to the MRA, Lehman Re became entitled to LCPI's ownership interest in the Mortgage Loans.  Accordingly, as of the commencement of LCPI's case LCPI was no longer an owner of the Mortgage Loans, and the Mortgage Loans are not and were not property of LCPI's estate.  Under the terms of the Custody Agreement, LCPI was required to provide BNY with certain assignment documents evidencing the ownership of the Mortgage Loans along with the Collateral Files.  However, when the JPLs took possession of the Mortgage Loans, certain of the documents evidencing the assignment of the Mortgage Loans were not present with the Collateral Files.  As a result, Lehman Re has been unable to efficiently evidence its ownership of all of the Mortgage Loans.

19.     The borrowers under the Mortgage Loans send payments to Aurora Loan Services LLC, a non-debtor, indirect subsidiary of LBHI, and/or its sub-servers or sub-custodians (collectively, "Aurora"), which, in turn, remits payments to LCPI.  Lehman Re has asserted that, pursuant to the terms of the MRA, Lehman Re is entitled to receive any payments made by borrowers under the Mortgage Loans that are received by Aurora after the Default Date.  Aurora currently holds approximately $16 million representing net cash payments made by borrowers on account of the Residential Loans that Aurora received after the Default Date.  Aurora also holds an additional amount of approximately the approximately $4.7 million in net

cash payments on account of the Residential Loans that the Lehman U.S. Entities contend were paid by the borrowers before the Default Date, but were not received by Aurora until after the Default Date. The Lehman U.S. Entities assert that they are entitled to retain these $4.7 million in payments.

20.     Lehman RE and the Lehman U.S. Entities have had, and continue to have, disputes regarding which parties are entitled to the benefits of and liable for the obligations under the Mortgage Loans. While Lehman Re has asserted that LCPI is contractually obligated under the Custody Agreement to provide Lehman Re with the documents relating to the title, ownership and enforcement of the Mortgage Loans, the Lehman U.S. Entities have refrained from providing such documents while they have investigated potential claims against Lehman Re.

### The Settlement Agreement

21.     To resolve many of the disputes concerning the Mortgage Loans, and to avoid protracted, costly and uncertain litigation, LBHI and LCPI believe it is in best interests of their estates to enter into the Settlement Agreement. The salient terms of the Settlement Agreement are set forth below:[5]

| **Confirmation of Lehman Re's Ownership of the Mortgage Loans** | The Lehman U.S. Entities will execute and deliver to Lehman Re certain assignment documents with respect to each Mortgage Loan. |
| | The Lehman U.S. Entities will provide the JPLs certain records in the Lehman U.S. Entities' possession in their New York City offices relating to the title, ownership or enforcement of the Mortgage Loans, at the sole expense of Lehman Re. |

---

[5] This summary (the "Summary") of the Settlement Agreement is qualified in its entirety by the terms and conditions of the Settlement Agreement. The Summary contained in this Motion is intended to be used for information purposes only and shall not in any way affect the meaning or interpretation of the Settlement Agreement.

The parties to the Settlement Agreement will confirm agree that Lehman Re (i) is, and as of the Default Date has been, the sole owner of the Mortgage Loans since the Default Date, (ii) has all of the Lehman U.S. Entities' right, title and interest as lender under the Mortgage Loans as of the Default Date and (iii) shall have all of the Lehman U.S. Entities obligations as lender under the Mortgage Loans as of the Default Date.

**Payments Under the Mortgage Loans After the Default Date**

Any payments made by the borrowers under the Mortgage Loans, excluding the Residential Loans, since the Default Date shall belong to and are property of Lehman Re.

The parties agree that an additional $16,049,382.78 currently held by Aurora representing net cash payments on account of the Residential Loans for September 2008 through May 2009, plus any other such net cash payments made by the borrowers under any of the Residential Loans since the Default Date, belong to and are the property of Lehman Re; provided, however, that the Parties reserve their rights with respect to $4,772,448.27 net cash payments on account of the Residential Loans, which shall be held by the Lehman U.S. Entities or Aurora, as applicable, pending further order of the Bankruptcy Court.

**Settlement Payment**

Lehman Re will pay: (i) LBHI the sum of $427,676; (ii) LCPI the sum of $500,000 and (iii) LALI the sum of $72,324.

**Right of First Offer**

Lehman Re will grant the Lehman U.S. Entities a right of first offer to purchase certain Mortgage Loans.

**18th Street Senior Mezzanine Loan**

Lehman Re and the JPLs confirm that LBHI is the sole owner of the that certain senior mezzanine loan made by LBHI to LeMadre Mezz LLC (the "18th Street Senior Mezz Loan").[6]

**Releases**

Subject to certain exceptions as further specified in the Settlement Agreement, the parties to the Settlement Agreement will provide mutual releases for any claims arising after the Default Date with respect to (i) the 18th Street Senior Mezz Loan, (ii) any delay in the execution and delivery of allonges and other assignment and

---

[6] As further described in the Debtor's Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authorization and Approval of Loan Pay-Off Agreements, dated May 14, 2009 [Docket No 3571] , Lehman Re and LBHI entered into certain loan pay-off transactions (the "Loan Pay-Offs") to resolve a dispute regarding the ownership of the 18th Street Senior Mezz Loan. As part of the Loan Pay-Offs, Lehman Re agreed to deliver certain documents related to the 18th Street Senior Mezz Loan to LBHI. The Loan Pay-Offs were approved by the Court on June 8, 2009 [Docket No 3787].

assumption documents; and (iii) omissions occurring on or after the Default Date.

As further specified in the Settlement Agreement, the parties further provide mutual releases for affirmative acts taken with respect to the Mortgage Loans only to the extent that (a) the party providing the release has received written notice of a claim, prior to the date of the Settlement Agreement, from a borrower asserting that such acts breached an obligation of the recipient of the release under the Mortgage Loans, and (b) the recipient of the release has not received written notice of a claim, prior to the date of the Settlement Agreement, from a borrower asserting such claim.

As further specified in the Settlement Agreement, to the extent that a borrower under the Mortgage Loans asserts a claim based on an affirmative act or omission against either party in its capacity as lender, as agent or in any other capacity under any of the Mortgage Loans, the parties shall cooperate with one another (at no cost or liability to the cooperating party unless reimbursed by the party requesting such cooperation) in the defense of such claim.

None of the Lehman U.S. Entities releases any claims it may have against any other Lehman U.S. Entity.

**Court Approval**     The Settlement Agreement is effective only upon entry of a final order, no longer subject to any appeal, (a) by the Bankruptcy Court finding (i) that the Mortgage Loans are not and were not property of LBHI's estate or LCPI's estate and (ii) that neither LBHI nor LCPI have assumed or assumed and assigned nor will assume or assume and assign the MRA pursuant to the Bankruptcy Code, including section 365 thereof, in connection with the Settlement Agreement or any of the transactions contemplated thereby, and (b) by each of the Bankruptcy Court and the Bermuda Court approving the Settlement Agreement.[7]

---

[7] Lehman Re has informed the Lehman U.S. Entities that contemporaneously with the filing of this Motion, Lehman Re has requested authority from the the Bermuda Court to enter into the Settlement Agreement, and that Lehman Re anticipates receiving approval from the Bermuda Court prior to the date of a hearing on this Motion.

### Relief Requested

22.    By this Motion, LBHI and LCPI seek entry of an order pursuant to

section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 authorizing and approving their

entry into an agreement substantially similar to the Settlement Agreement.

### The Settlement Agreement Meets the Legal Standard Established Under Rule 9019 and is in the Best Interests of LBHI and LCPI's Estates

23.    The proposed Settlement is in the best interests of LBHI's and LCPI's

estates and should be approved under Bankruptcy Rule 9019, which provides, in part, that "[o]n

motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a

compromise or settlement." FED. R. BANKR. P. 9019(a).  This rule empowers bankruptcy courts

to approve settlements "if they are in the best interests of the estate." Vaughn v. Drexel

Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.) 134 B.R. 499, 505

(Bankr. S.D.N.Y. 1991); see also Protective Comm. for Indep. Stockholders of TMT Trailer

Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re 47-49 Charles St.,

Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426

(S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).  A decision to accept or reject a

compromise or settlement is within the sound discretion of the Court.  Drexel Burnham Lambert

Group, 134 B.R. at 505; see also 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001).  The

settlement need not result in the best possible outcome for the debtor, but must not "fall beneath

the lowest point in the range of reasonableness." Drexel Burnham Lambert Group, 134 B.R. at

505.  See also Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re

Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Indeed, courts have long considered

compromises to be "a normal part of the process of reorganization." TMT Trailer Ferry, 390

U.S. at 424 (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).

24.    The decision to approve a particular compromise lies within the sound

discretion of the bankruptcy court. Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

However, the analysis must focus on the question of whether a particular compromise is "fair

and equitable, and in the best interest of the estate." In re Best Products, 165 B.R. 35, 50

(Bankr. S.D.N.Y. 1994) (internal citations omitted).

25.    While a court must "evaluate … all … factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, W.T. Grant Co., 699

F.2d at 608, or conduct a full independent investigation. Drexel Burnham Lambert Group, 134

B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law

and fact…. The court need only canvass the settlement to determine whether it is within the

accepted range of reasonableness." Nellis, 165 B.R. at 123 (internal citations omitted).

26.    The court may give weight to the "informed judgments of the … debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise." Drexel Burnham

Lambert Group, 134 B.R. at 505 (internal citations omitted); see also In re Purofied Down

Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); accord In re Ashford Hotels Ltd., 226 B.R.

797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute

my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the

Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

27.    LBHI and LCPI have determined that the Settlement Agreement provides the best framework for resolving their disputes with Lehman Re over the documentation of the ownership status of the Mortgage Loans and which parties are entitled to the benefits of and liable for the obligations under the Mortgage Loans.  As discussed, the Lehman U.S. Entities were investigating potential claims against Lehman Re and, consequently, have not provided Lehman Re with the documents relating to the title, ownership and enforcement of the Mortgage Loans.  The Lehman U.S. Entities have determined that the prospects for recovery with respect to such claims is, at best, uncertain.  As a result, pursuant to the Settlement Agreement the Lehman U.S. Entities will provide Lehman Re with the documents relating to the title, ownership and enforcement of the Mortgage Loans, confirm Lehman Re's ownership of the Mortgage Loans as of the Default Date, and waive certain claims they have against Lehman Re regarding the Mortgage Loans.  The Lehman U.S. Entities will also cause Aurora to remit to Lehman Re the approximately $16 million in net cash payments on account of the Residential Loans, plus any other such net cash payments made by the borrowers under any of the Residential Loans after the Default Date, provided that Aurora will retain, and the parties reserve their rights with respect to, an additional amount of approximately $4.7 million in net cash payments on account of the Residential Loans that the Lehman U.S. Entities contend were paid by borrowers before the Default Date, but not received by Aurora until after the Default Date.

28.    In exchange, Lehman Re will assume all of the Lehman U.S. Entities' outstanding obligations under the Mortgage Loans from and after the Default Date, which

include, among other things, future funding obligations under the Mortgage Loans estimated by the Lehman U.S. Entities to be over $85 million. Lehman Re will also waive certain claims they have against the Lehman U.S. Entities related to the Mortgage Loans, allowing LBHI and LCPI to avoid potentially costly claims against their estates. LBHI and LCPI will also be obtaining from Lehman Re cash in the amounts of $427,676 and $500,000, respectively. Additionally, LBHI and LCPI and their estates will benefit from LBHI and LCPI's right to purchase certain of the Mortgage Loans under the ROFO, but will not have the obligation to repurchase such loans as was required of LCPI under the MRA. In short, the Settlement Agreement will allow LBHI and LCPI to avoid protracted, expensive and uncertain litigation regarding the Mortgage Loans and will cause Lehman Re to assume the Lehman U.S. Entities' future funding obligations under the Mortgage Loans.

29.     Pursuant to the terms of the Initial MRA, LBHI sold to LCPI the Initial MRA Loans prior to the Commencement Date. As a result, LBHI was no longer an owner of the Mortgage Loans as of the Commencement Date. Additionally, after the Default Date and pursuant to the terms of the MRA, the JPLs, on behalf of Lehman Re, took possession of the Mortgage Loans before the commencement of LCPI's case, and Lehman Re became entitled to own the Mortgage Loans. Consequently, as of the commencement of LCPI's case, LCPI was no longer an owner of the Mortgage Loans. As evidenced by the terms of the Initial MRA and the MRA, the Mortgage Loans are not and were not property of LBHI's estate or LCPI's estate.

30.     Additionally, LCPI is evaluating the burdens and benefits of the MRA in the context of their numerous other executory contracts and have not yet made a determination of whether to assume or reject the MRA. Any actions taken by LBHI or LCPI with respect to the

Mortgage Loans or in connection with their entry into the Settlement Agreement do not constitute an assumption of the MRA under the Bankruptcy Code.

31.    Accordingly, the Court may find that the Mortgage Loans are not and were not property of LBHI's estate or LCPI's estate, and neither LBHI nor LCPI have assumed or assumed and assigned nor will assume or assume and assign the MRA pursuant to the Bankruptcy Code, including section 365 thereof, in connection with the Settlement Agreement or any of the transactions contemplated thereby.

32.    Based on the foregoing, the Settlement Agreement is reasonable and in the best interests of LBHI and LCPI and their estates and creditors, and, as a result, the Court should approve LBHI and LCPI's entry into an agreement substantially consistent with the Settlement Agreement.

### Notice

33.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to Lehman Re; and (viii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

34.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: August 5, 2009
      New York, New York


                                        /S/ Shai Y. Waisman
                                        Shai Y. Waisman

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                        :

In re                            :        Chapter 11 Case No.
                                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :        08-13555 (JMP)
                                          :

                        Debtors.      :        (Jointly Administered)
                                          :

------------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE  AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING AND APPROVING SETTLEMENT WITH LEHMAN RE LTD.

Upon the motion, dated August 5, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI" and, together with LBHI

and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-

possession, the "Debtors"), pursuant to section 105 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for authorization to enter into and approval of a settlement pursuant to an

agreement substantially consistent with the form agreement annexed to the Motion as Exhibit A

(the "Settlement Agreement"); and the Court having jurisdiction to consider the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order

M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

the amended order entered February 13, 2009 governing case management and administrative

procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New

York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for

the Southern District of New York; (vi) counsel to Lehman Re and (vii) all parties who have

requested notice in these chapter 11 cases, and it appearing that no other or further notice need be

provided; and the Court having found and determined that the relief sought in the Motion is in

the best interests of the Debtors, their estates and creditors, and all parties in interest and that the

legal and factual bases set forth in the Motion and on the record establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

FOUND AND DETERMINED that, based on factual and legal bases set forth in

the Motion, the Mortgage Loans (as defined in the Settlement Agreement) are not and were not

property of LBHI's estate or LCPI's estate; and it is further

FOUND AND DETERMINED that, based on factual and legal bases set forth in

the Motion, neither LBHI nor LCPI have assumed or assumed and assigned nor will assume or

assume and assign that certain Master Repurchase Agreement, dated as of July 9, 1999, by and

among LCPI, Lehman Brothers Inc. and Lehman Re Ltd. ("Lehman Re") pursuant to the

Bankruptcy Code, including section 365 thereof, in connection herewith or with the Settlement

Agreement or any of the transactions contemplated thereby; and it is further

ORDERED that, pursuant to sections 105 and Bankruptcy Rule 9019, the

Settlement Agreement is approved, and LCPI and LBHI are duly authorized to (i) enter into an

agreement substantially consistent with the Settlement Agreement and to consummate all of the

transactions contemplated thereby and (ii) execute and deliver such assignments, allonges, conveyances, and other documents, and instruments of transfer and to take such other actions as may be reasonably necessary to consummate the Settlement Agreement, it being understood that any actions described in this paragraph taken by the Debtors or their affiliates may be taken without the necessity of any further Court proceedings or approval and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that the Settlement Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates; and it is further

ORDERED that, pursuant to and to the extent provided by the terms of the Settlement Agreement, Lehman Re shall assume all of the obligations of LBHI, LCPI and Lehman ALI Inc. as lender arising from the documents evidencing the Mortgage Loans as of September 17, 2008, and thereafter; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.


Dated: August __, 2009
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE