## **Exhibit A**

Settlement Agreement

See attached.

**Proposed Settlement**
**Subject to Fed. R. Evid. 408**

## SETTLEMENT AGREEMENT

This settlement agreement ("Agreement") is entered into on this [_] day of

July, 2009, among Lehman Re Ltd. ("Lehman Re"), Lehman ALI Inc. ("LALI"), Lehman

Commercial Paper Inc. ("LCPI"), and Lehman Brothers Holdings Inc. ("LBHI") (collectively,

the "Parties").

## RECITALS

A.    On September 15, 2008 (the "Petition Date"), LBHI commenced a

voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),

in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court").

B.    On September 19, 2008, a proceeding was commenced in the Bankruptcy

Court pursuant to the Securities Investor Protection Act of 1970 ("SIPA") with respect to

Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

C.    On September 23, 2008, a winding-up proceeding was commenced on

behalf of Lehman Re in the Supreme Court of Bermuda (the "Bermuda Court").  By order of the

Bermuda Court dated September 23, 2008, Peter C.B. Mitchell and D. Geoffrey Hunter were

appointed as the joint provisional liquidators (the "JPLs") for Lehman Re.

D.    On October 5, 2008, LCPI commenced a voluntary case under chapter 11

of the Bankruptcy Code in the Bankruptcy Court (the "LCPI Petition Date").

E.    LALI, a non-debtor, is a wholly-owned subsidiary of LBHI.

F.    LCPI, LBI and Lehman Re are parties to that certain Master Repurchase

Agreement dated as of July 9, 1999 (the "MRA").  Pursuant to the MRA, LCPI committed to sell

to Lehman Re, upon the terms as set forth in the MRA, certain residential and commercial

mortgage and mezzanine loans, which are listed on the attached Exhibit A (collectively, the

"Mortgage Loans"). Pursuant to a Tri-Party Custody Agreement (the "Custody Agreement"),

dated as of May 5, 2008, by and among Lehman Re, LCPI and The Bank of New York, as

Master Custodian ("BNY"), BNY was to hold the files (collectively, the "Collateral Files")

relating to the Mortgage Loans for the benefit of Lehman Re and LCPI. BNY arranged for

several sub-custodians to take custody of the Collateral Files.

G.    Pursuant to the MRA, Lehman Re transferred cash to LCPI in exchange

for the purchase of certain assets, including, without limitation, the Mortgage Loans.

H.    On September 17, 2008 (the "Default Date"), Lehman Re declared an

Event of Default (as defined in the MRA) and notified LCPI in writing that it was in default

under the MRA. On the same day, Lehman Re advised BNY, as the Master Custodian, that there

had been an Event of Default and, in accordance with the Custody Agreement, Lehman Re

directed BNY to transfer the Collateral Files into the name of Lehman Re. In accordance with

this instruction, BNY issued written notices to the sub-custodians, instructing them, *inter alia*, to

follow the instructions of Lehman Re concerning the Mortgage Loans and Collateral Files.

Since that time, the JPLs, on behalf of Lehman Re, have taken possession of the Mortgage

Loans.

I.    As of the Petition Date, LBHI was no longer an owner of the Mortgage

Loans, and, as of the LCPI Petition Date, LCPI was no longer an owner of the Mortgage Loans.

As a result, the Mortgage Loans were not property of LBHI's estate or LCPI's estate.

J.    Lehman RE, LBHI, LALI and LCPI have had and continue to have certain

disputes regarding the current ownership status of the Mortgage Loans.

K.      To resolve any disputes concerning the Mortgage Loans, and to avoid protracted, costly and uncertain litigation, the Parties agree that it is in their best interests to enter into this Agreement upon the terms and conditions herein.

Now, therefore, upon the foregoing recitals, which are incorporated as though fully set forth herein, it is hereby agreed, by and between LBHI, LCPI, and LALI (collectively referred to herein as the "Lehman U.S. Entities"), on the one hand, and Lehman Re, by its JPLs, on the other hand:

## OWNERSHIP OF THE MORTGAGE LOANS

1.      Simultaneous with payment of the settlement amount specified in paragraph 9 hereof, the Lehman U.S. Entities and Lehman Re shall execute and deliver an assignment and assumption agreement and allonge, as applicable, with respect to each Mortgage Loan substantially in the forms attached hereto as Composite Exhibit E (collectively, the "Assignment and Assumption Documents").  Upon the execution and delivery of Assignment and Assumption Documents with respect to each of the Mortgage Loans, the Parties hereto agree that (i) Lehman Re is, and has been, the sole owner of such Mortgage Loans since the Default Date, (ii) Lehman Re shall have all of the Lehman U.S. Entities' right, title and interest as lender under such Mortgage Loans as of the Default Date, and (iii) Lehman Re shall have assumed all of the Lehman U.S. Entities' obligations as lender arising from the documents evidencing the Mortgage Loans as of the Default Date and thereafter.

2.      Simultaneous with payment of the settlement amount specified in paragraph 9 hereof, the Lehman U.S. Entities shall execute and deliver to Lehman Re (at no cost or increased liability (beyond the obligations set forth herein) to the Lehman U.S. Entities other than de minimis costs to be incurred by the Lehman U.S. Entities in connection therewith, and which are customary in the ordinary course of the Lehman U.S. Entities' business) any and all

3

assignment and transfer instruments (the form of which shall be reasonably acceptable to both

Parties, and which shall include, without limitation, and to the extent applicable, allonges and

assignments of mortgages, or any other documents or instruments that may be required in

applicable local jurisdictions) further evidencing the transfer of the Mortgage Loans as provided

herein.  Further, from and after the payment of the settlement amount specified in paragraph 9

hereof, the Lehman U.S. Entities shall take any and all actions that Lehman Re shall reasonably

request (at Lehman Re's sole cost and expense other than de minimis costs to be incurred by the

Lehman U.S. Entities in connection therewith, and which are customary in the ordinary course of

the Lehman U.S. Entities' business) to further evidence or confirm Lehman Re's ownership

interest in the Mortgage Loans, including, without limitation, notifying each obligor on any

Mortgage Loan to make all payments thereon as directed by Lehman Re, confirming to any

lending agent, servicer (whether master or special) and any other similar agent with respect to

any Mortgage Loan that Lehman Re is the owner of the Mortgage Loan, and delivering,

assigning or otherwise transferring to Lehman Re any collateral held by the Lehman U.S.

Entities (or any of its agents) securing the obligations of the obligors on the Mortgage Loans.

The Lehman U.S. Entities hereby authorize Lehman Re to execute and file any assignments of

existing Uniform Commercial Code financing statements naming Lehman Re as a secured party,

as may be necessary under applicable law to transfer the respective security interests held by

Lehman U.S. Entities with respect to such Mortgage Loans to Lehman Re.

        3.      The Parties acknowledge and agree that any and all payments (whether

any such payment was in respect of principal and interest, additional collateral, reserves or

otherwise) made by the borrowers under any of the Mortgage Loans that are not Residential

Loans (as defined below) since the Default Date shall belong to and be the property of Lehman

Re and shall not, under any circumstances, constitute property of the Lehman U.S. Entities.  The

Parties acknowledge and agree that the sum of $16,049,382.78, currently held by Aurora (as

defined herein) and representing net cash payments (i.e., net of any loan servicing fees and any

payment or advance made pursuant to the Residential Loans) on account of the Residential

Loans referenced as the "Net Cash" amount for September, 2008 through May, 2009 on the chart

attached hereto as Exhibit F (the "Resi Cash Flow Chart"), plus any other such net cash

payments made by the borrowers under any of the Residential Loans since the Default Date,

belong to and are the property of Lehman Re; provided, however, that both Parties specifically

reserve their rights with respect to the $4,772,448.27 net cash payments on account of the

Residential Loans referenced as the "Net Cash" amount for August, 2008 on the Resi Cash Flow

Chart, which shall be held by the Lehman U.S. Entities or Aurora, as applicable, pending further

order of the Bankruptcy Court.

> 4.    Further, with respect to those Mortgage Loans identified on Exhibit B

attached hereto (collectively, the "Residential Loans"), upon the execution and delivery of

Assignment and Assumption Documents with respect to each of the Residential Loans, the

applicable Lehman U.S. Parties shall take, at Lehman Re's sole cost and expense other than de

minimis costs to be incurred by the Lehman U.S. Entities in connection therewith, and which are

customary in the ordinary course of the Lehman U.S. Entities' business, all commercially

reasonable action to direct Aurora Loan Services LLC and any sub-servicers and sub-custodians

thereof (collectively, "Aurora"), as the servicers of the Residential Loans, to do the following:

(i) confirm that Lehman Re is the owner of the Residential Loans; (ii) allow the JPLs access to

all servicing records relating to the Residential Loans, including, without limitation, all

agreements pursuant to which Aurora was engaged as the master servicer of the Residential

Loans and all agreements between Aurora and any sub-servicers and sub-custodians, (iii) in

accordance with the joint written instructions of Lehman Re and LBHI, immediately deliver and

transfer to Lehman Re, funds held by Aurora in respect of the Residential Loans in accordance

with Paragraph 3 above, (iv) if with respect to any Residential Loan (a) any such servicing

agreements are not terminable at will by Lehman Re, and (b) the Lehman U.S. Entities hold the

mortgage servicing rights with respect to such Residential Loan, then the Lehman U.S. Entities

shall, at no cost or liability to Lehman U.S. Entities other than de minimis costs to be incurred by

the Lehman U.S. Entities in connection therewith, and which are customary in the ordinary

course of the Lehman U.S. Entities' business, provide such terminations with Aurora as may be

reasonably requested by Lehman Re for Lehman Re to enter into a new servicing agreement with

respect to the Residential Loans; provided, however, that Lehman Re acknowledges that in

connection with any such termination, Lehman Re shall be responsible for the reimbursement of

advances actually made by the relevant primary servicer and paid to the then owner of the related

Residential Loan, to the extent required under the related servicing agreements.

## RIGHTS AS TO FUTURE SALE OF THE MORTGAGE LOANS

5.      With the exception of those Mortgage Loans listed on Exhibit C attached

hereto (collectively, the "Excluded Mortgage Loans"), Lehman Re hereby grants to the Lehman

U.S. Entities an exclusive right of first offer to purchase from Lehman Re, pursuant to, in

accordance with, the procedures set forth on Exhibit D attached hereto, any Mortgage Loan (i.e.,

other than any Excluded Mortgage Loan) that Lehman Re proposes to sell from and after the date

hereof.

## 18TH STREET SENIOR MEZZANINE LOAN

6.      Lehman Re and the JPLs hereby confirm, acknowledge and agree that

LBHI is the sole owner of that certain senior mezzanine loan in the original principal amount of

$7,270,000 made by LBHI to LeMadre Mezz LLC (the "18th Street Senior Mezz Loan") and has all right, title and interest in and to 18th Street Senior Mezz Loan, and has all of the rights of the lender thereunder.  Lehman Re and the JPLs also confirm, acknowledge and agree that the 18th Street Senior Mezz Loan is not a Mortgage Loan, and has never been and is not now, the property of Lehman Re or its estate.  Upon the Effective Date, Lehman Re and JPLs shall immediately transfer to LBHI all documents relating to the 18th Street Senior Mezz Loan. Lehman Re and the JPLs shall take all steps necessary to acknowledge that LBHI owns the 18th Street Senior Mezz Loan, and that LBHI has all right, title and interest in and to all of the 18th Street Senior Mezz Loan and has all of the rights of the lender thereunder in accordance with the terms hereof.

## BOOKS AND RECORDS FOR THE MORTGAGE LOANS

7.     Upon the execution and delivery of Assignment and Assumption Documents with respect to each Mortgage Loan, the Lehman U.S. Entities shall provide the JPLs with copies of (and shall direct any of the servicers, agents and similar representatives with respect to the Mortgage Loans to immediately provide JPLs with copies of) any and all records in the actual possession of the Lehman U.S. Entities in their offices located in the City of New York, New York, relating to the title, ownership, administration, or enforcement of the Mortgage Loans (as well as all records with respect to the assets securing the Mortgage Loans, such as environmental and  engineering reports), including without limitation, to the extent in the actual possession of the Lehman U.S. Entities in their offices located in the City of New York, New York,  promissory notes, guarantees, mortgages, intercreditor agreements, and deeds of trust securing the obligations of the obligors under the Mortgage Loans, and such other mortgage loan documents that may be reasonably requested by Lehman Re on or prior to the date that the payment of settlement amount specified in paragraph 9 is made (the "Settlement Date"), but

7

excluding any appraisals, valuations, and analyses work product, attorney work product and all

other documents, materials or information created by or on behalf of any of the Lehman U.S.

Entities or their employees, agents, representatives or counsel with respect thereto (collectively,

"Mortgage Loan Related Documents").  All such copies shall be provided at Lehman Re's sole,

but reasonable, cost and expense.  From time to time after the Settlement Date, in the event that

Lehman Re makes reasonable requests for additional Mortgage Loan Related Documents

specifically identifying particular Mortgage Loan Related Documents which Lehman Re has

reason to believe are in the possession of the Lehman U.S. Entities in their offices located in the

City of New York, New York, then, provided that the search for such specified additional

Mortgage Loan Related Documents does not place an undue burden on the Lehman U.S.

Entities, the Lehman U.S. entities will make a good faith search of its New York City offices for

such documents, and shall provide the JPLs with copies of any such additional Mortgage Loan

Documents discovered as a result of such search.  All such copies shall be provided at Lehman

Re's sole, but reasonable, cost and expense.

        8.     The Parties' agreement in this respect shall not be construed as

supplanting or otherwise limiting any Party's rights and remedies under the Bankruptcy Code,

including but not limited to the Parties' rights and defenses in relation to discovery.

## SETTLEMENT PAYMENT

        9.     As an integral part of the settlements contemplated herein, within 5

business days of the Effective Date of this Agreement, Lehman Re by its JPLs shall pay the total

sum of One Million U.S. Dollars ($1,000,000) as follows: (i) to LBHI the sum of Four Hundred

Twenty-Seven Thousand, Six Hundred Seventy-Six U.S. Dollars ($427,676); (ii) to LCPI the

sum of Five Hundred Thousand U.S. Dollars ($500,000) and (iii) to LALI the sum of Seventy-

Two Thousand, Three Hundred Twenty-Four U.S. Dollars ($72,324).

## <u>RELEASES</u>

10.    Except as to the acknowledgements, agreements and performance of the
obligations set forth in this Agreement and the documents, instruments and agreements executed
in connection herewith, Lehman Re and the JPLs, on behalf of themselves and the estate of
Lehman Re, hereby expressly release and waive, unconditionally and irrevocably, any claims,
counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes
of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or
tort, unsecured, secured, priority, administrative or otherwise (together "<u>Claims</u>"), that they may
have against any of the Lehman U.S. Entities and/or any of the employees, agents, servants,
counsel, representatives, participants, successors or assigns of any and all of the foregoing,
arising from, in connection with, or relating to (i) 18th Street Senior Mezz Loan; (ii) any delay in
the execution and delivery of the allonges and other Assignment and Assumption Documents;
(iii) omissions of any kind occurring on or after the Default Date by the Lehman U.S. Entities in
the capacity as lender, or as agent, administrative agent, collateral agent, servicer, trustee, or in
any other capacity on behalf or at the direction of the lenders under any of the Mortgage Loans,
or in connection with the ownership, administration or servicing thereof (but not, for the sake of
clarity and by way of illustration, if any such Claim arises from the Lehman U.S. Entities'
capacity as equity holder, as a borrower, or as a lender under a loan that is not a Mortgage Loan,
in which instances the Lehman U.S. Entities are not released); and (iv) affirmative acts occurring
on or after the Default Date taken by the Lehman U.S. Entities in the capacity as lender, or as
agent or in any other capacity under any of the Mortgage Loans or in connection with the
ownership, administration or servicing thereof (but not, for the sake of clarity and by way of
illustration, if any such Claim arises from the Lehman U.S. Entities' capacity as equity holder, as
a borrower, or as a lender under a loan that is not a Mortgage Loan, in which instances the

9

Lehman U.S. Entities are not released), provided, however, that with respect to such affirmative acts, this release and waiver shall only apply to the extent that (a) Lehman Re or the JPLs received written notice from, or on behalf of, the applicable borrower (or other party to the Mortgage Loan asserting a Claim) prior to the date hereof asserting such Claim that any such acts breached an obligation of the Lehman U.S. Entities under the applicable Mortgage Loan, and (b) none of the Lehman U.S. Entities have received written notice from, or on behalf of, the applicable borrower (or other party to the Mortgage Loan asserting a Claim) prior to the date hereof asserting such Claim.  The foregoing release shall not waive, diminish or in any way prejudice any rights of the JPLs or Lehman Re, if any, with respect to any claims, rights, causes of action or defenses relating to or against any of the Lehman U.S. Entities and/or any of their respective agents, representatives, affiliates, parents, subsidiaries, shareholders not specifically released under this Agreement, including but not limited to any claims that Lehman Re may have under the MRA and the defense of the release given by the Lehman U.S. Entities under this Agreement.  Any Claims by Lehman Re against the Lehman U.S. Entities for affirmative acts occurring after the Default Date by the Lehman U.S. Entities in the capacity as lender, or as agent or in any other capacity under any of the Mortgage Loans or in connection with the ownership, administration or servicing thereof that are not released in this Paragraph shall only be asserted to the extent that such Claims are asserted by the applicable borrower (or other party to the Mortgage Loan asserting a Claim) against Lehman Re without the cooperation or agreement of Lehman Re.

11.    Except as to the acknowledgements, agreements and performance of the obligations set forth in this Agreement and the documents, instruments and agreements executed in connection herewith, each of the Lehman U.S. Entities, for itself, its estate and its affiliated

debtors and debtors in possession and their estates, and their successors and assigns, hereby

expressly waive and release, unconditionally and irrevocably, any claims, counterclaims,

defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action of

whatever nature, whether asserted or unasserted, known or unknown, in contract or tort,

unsecured, secured, priority, administrative or otherwise, that the Lehman U.S. Entities (or any

of their affiliates) may have against Lehman Re, the JPLs and/or any of their respective direct or

indirect parents, subsidiaries and affiliates, or the respective officers, directors, shareholders,

partners, members, employees, agents, servants, counsel, representatives, participants, successors

or assigns of any and all of the foregoing, arising from, in connection with, or relating to (i) 18th

Street Senior Mezz Loan, (ii) any delay in the execution and delivery of the allonges and other

Assignment and Assumption Documents, (iii) omissions of any kind occurring on or after the

Default Date by Lehman Re in the capacity as lender, or as agent or in any other capacity under

any of the Mortgage Loans or in connection with the ownership, administration or servicing

thereof (but not, for the sake of clarity and by way of illustration, if any such Claim arises from

Lehman Re's capacity as equity holder, as a borrower, or as a lender under a loan that is not a

Mortgage Loan, in which instances neither Lehman Re nor the JPLs are released); and (iv)

affirmative acts occurring on or after the Default Date taken by Lehman Re in the capacity as

lender, or as agent or in any other capacity under any of the Mortgage Loans or in connection

with the ownership, administration or servicing thereof (but not, for the sake of clarity and by

way of illustration, if any such Claim arises from Lehman Re's capacity as equity holder, as a

borrower, or as a lender under a loan that is not a Mortgage Loan, in which instances neither

Lehman Re, nor the JPLs are released), provided, however, that with respect to such affirmative

acts, this release and waiver shall only apply to the extent that (a) the Lehman U.S. Entities

received written notice from, or on behalf of, the applicable borrower (or other party to the

Mortgage Loan asserting a Claim) prior to the date hereof asserting a Claim that any such acts

breached an obligation of the Lehman Re under the applicable Mortgage Loan, and (b) neither

Lehman Re nor any of the JPLs have received written notice from, or on behalf of, the applicable

borrower (or other party to the Mortgage Loan asserting a Claim) prior to the date hereof

asserting such Claim.  The foregoing release shall not waive, diminish or in any way prejudice

any rights of any of the Lehman U.S. Entities, if any, with respect to any claims, rights, causes of

action or defenses relating to or against Lehman Re not specifically released under this

Agreement, including but not limited to any claims that the Lehman U.S. Entities may have

under the MRA and the defense of the release given by the Lehman U.S. Entities under this

Agreement.  Any Claims by the Lehman U.S. Entities against Lehman Re for affirmative acts

occurring after the Default Date by Lehman Re in its capacity as lender, or as agent or in any

other capacity under any of the Mortgage Loans or in connection with the ownership,

administration or servicing thereof that are not released in this Paragraph shall only be asserted

to the extent that Claims are asserted by the applicable borrower (or other party to the Mortgage

Loan asserting a Claim) against any of the Lehman U.S. Entities.

        12.      To the extent that a borrower (or other party to the Mortgage Loan

asserting a Claim) under the Mortgage Loans asserts a Claim based on an affirmative act or

omission against either party in its capacity as lender, or as agent or in any other capacity under

any of the Mortgage Loans, the parties shall cooperate with one another (at no cost or liability to

the cooperating party unless reimbursed by the party requesting such cooperation) in the defense

of such Claim to the extent practical and consistent with applicable fiduciary duties and rules of

privilege.

13.     Nothing in this Agreement is or shall be construed to be an assumption or
an assumption and assignment of the MRA by LBHI or LCPI pursuant to the Bankruptcy Code,
including under section 365 thereof, or as modifying the level or priority of Claims under
applicable bankruptcy and insolvency law, including, without limitation, the Bankruptcy Code,
that either party may have against the other as such Claims (and their corresponding level and
priority under such applicable law) existed immediately prior to the execution of this Agreement.

14.     Notwithstanding anything to the contrary contained herein, the release set
forth in Paragraph 11 shall not waive, diminish, release in any way, or prejudice, any defenses or
affirmative defenses (but not counterclaims) that Lehman Re or the JPLs may have with respect
to any claims, suits or causes of action brought by, through or on behalf of any of the Lehman
U.S. Entities or any of their respective affiliates, or any of their respective successors or assigns.

15.     Notwithstanding anything to the contrary contained herein, the release set
forth in Paragraph 12 shall not waive, diminish, release in any way, or prejudice, any defenses or
affirmative defenses (but not counterclaims) that any of the Lehman U.S. Entities may have with
respect to any claims, suits or causes of action brought by, through or on behalf of Lehman Re,
the JPLs, or any of their respective affiliates, or any of their respective successors or assigns.

16.     Nothing in this Agreement shall constitute a release or waiver of any
claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs
and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in
contract or tort, unsecured, secured, priority, administrative or otherwise, that any Lehman U.S.
Entity (or any of its affiliates) may have against any other Lehman U.S. Entity.

**EFFECTIVE DATE**

17.     This Agreement shall become effective (the "Effective Date") only upon
entry of a final order no longer subject to any appeal, (a) by the Bankruptcy Court finding (i) that

13

the Mortgage Loans are not and were not property of LBHI's estate or LCPI's estate and (ii) that

neither LBHI nor LCPI have assumed or assumed and assigned nor will assume or assume and

assign the MRA pursuant to the Bankruptcy Code, including section 365 thereof, in connection

herewith or any of the transactions contemplated hereby, and (b) by each of the Bankruptcy

Court and the Bermuda Court approving this Agreement (each, a "<u>Final Order</u>").  The Lehman

U.S. Entities covenant that they will seek in good faith to promptly procure a Final Order in the

Bankruptcy Court, and the JPLs covenant that they will seek in good faith to promptly procure a

Final Order from the Bermuda Court.  The parties hereto acknowledge their common interest in

procuring the Final Order and, subject to and consistent with that common interest, will provide

each other with an advance copy of any motion seeking approval of this Agreement prior to its

submission to the Bankruptcy Court or the Bermuda Court, and further agree not to file any such

motion unless its contents shall be reasonably satisfactory to the other parties hereto.  The

Lehman U.S. Entities and the JPLs further covenant that they will oppose in good faith any

objection made to any motion seeking approval of this Agreement, and that they will provide

notice to the other parties hereto of any such objection sufficiently in advance of the response

deadline to permit the other parties hereto to seek to be heard by either the Bankruptcy Court or

the Bermuda Court in connection with such objection.

## <u>MISCELLANEOUS PROVISIONS</u>

18.    Nothing contained herein is intended or should be construed as an

admission as to the validity of any claim of or against any party, or as a waiver of the rights of

any party to dispute any claim except as expressly waived herein.

19.    Each party hereto represents that it is duly authorized to execute this

Agreement.  Each party hereto agrees to take all actions, provide all consents, and execute all

documents as are reasonably necessary to effectuate this Agreement.  Entry of Final Orders by

the Bankruptcy Court and the Bermuda Court as set forth in Paragraph 14 hereof are conditions

precedent to the effectiveness of this Agreement.

20.    This Agreement may be executed in multiple counterparts, each of which

shall be deemed an original but all of which together shall constitute one and the same

instrument.

21.    The Bankruptcy Court and the Bermuda Court shall have concurrent

jurisdiction over this Agreement including, without limitation, the power to enforce the terms of

this Agreement and enter such further orders as may be necessary and appropriate to carry out its

terms.

22.    This Agreement shall be governed by and construed in accordance with

the laws of the State of New York.

23.    Any waiver, alteration, amendment or modification of this Agreement

shall be valid only if made in writing and signed by the parties to this Agreement that are

affected by such waiver, alteration, amendment or modification.

24.    All communications under this Agreement shall be in writing and shall be

delivered by hand or facsimile or mailed by overnight courier or by registered or certified mail,

postage prepaid, to the appropriate party at the address or facsimile number listed below (or at

such other address or facsimile number as party may have been furnished to the other parties in

writing).  Any notice so addressed shall be deemed to be given:  if delivered by hand or

facsimile, on the date of such delivery, if a business day and delivered during regular business

hours, otherwise the first business day thereafter; if mailed by courier, on the first business day

following the date of such mailing; and if mailed by registered or certified mail, on the third

business day after the date of such mailing:

15

If to LCPI, LBHI, LALI:

      c/o Lehman Brothers Holdings Inc.
      1271 Avenue of the Americas
      New York, New York  10020
      Facsimile:  (646) 758-3071
      Attn:  Albert Picallo
      Facsimile:  (646) 758-0541

with copies to:

      Lehman Brothers Holdings Inc.
      1271 Avenue of the Americas
      New York, New York 10020
      Attention:  Joelle Halperin
      Facsimile:  (646) 834-0874

and:

      Weil, Gotshal & Manges LLP
      1395 Brickell Avenue, Suite 1200
      Miami, Florida 33131
      Attention:  Richard A. Morrison
      Facsimile:  (305) 374-7159

If to the JPLs or Lehman Re:

      Lehman Re Ltd.
      c/o Peter C.B. Mitchell
      D. Geoffrey Hunter
      PricewaterhouseCoopers Advisory Limited
      Dorchester House
      7 Church Street
      Hamilton, Bermuda HM11
      Facsimile:  441-295-1242

with a copy to:

      Cadwalader, Wickersham & Taft LLP
      One World Financial Center
      New York, New York 10281
      Attention: Gregory Petrick, Esq.
      Facsimile:  (212) 504-6666

      And to:

      Kirkland & Ellis LLP

300 North LaSalle
Chicago, IL  60654
Attention:  James Sprayregen, Esq.
Facsimile: (312) 862-2200

IN WITNESS WHEREOF, this Settlement Agreement has been executed by the

parties thereto as of the date first written above.

LEHMAN COMMERCIAL PAPER INC., a
New York corporation,  as debtor and debtor
in possession in its chapter 11 case in the
United States Bankruptcy Court for the
Southern District of New York

By:_____
Name:
Title:

LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation, as debtor and
debtor in possession in its chapter 11 case in
the United States Bankruptcy Court for the
Southern District of New York

By:_____
Name:
Title:

LEHMAN ALI INC.

By:_____
Name:
Title:

LEHMAN RE LTD., by its Joint Provisional
Liquidators

By:_____
Name:  Peter C.B. Mitchell
Title:  Joint Provisional Liquidator

By:_____

Name:  D. Geoffrey Hunter

Title:  Joint Provisional Liquidator

## EXHIBIT A

**[Insert list and/or description of Mortgage Loans - Need to confirm 18th St Jr. Mezz is on this list when attached]**

# EXHIBIT B

**[Insert list and/or description of Residential Loans]**

# EXHIBIT C

**[Insert list and/or description of Certain Excluded Mortgage Loans]**

**EXHIBIT D**

**Right of First Offer Procedures**

      A.      During the ROFO Period (as defined below) applicable to a Mortgage

Loan (other than any Excluded Mortgage Loan), Lehman Re shall provide not less than fifteen

(15) days' prior written notice (the "ROFO Notice") to the Lehman U.S. Entities prior to selling

all or any portion of such Mortgage Loan (other than any Excluded Mortgage Loan) or any direct

or indirect interest therein to a third party not affiliated with or related to the applicable original

or current mortgage or mezzanine loan borrower thereunder, as the case may be, and provided

that Lehman Re has not taken title to the collateral for such Mortgage Loan (whether by

foreclosure, power of sale, delivery of a deed or assignment in lieu of foreclosure or otherwise).

The ROFO Notice shall set forth all of the material terms of the proposed Mortgage Loan sale

(including the identification of the Mortgage Loan (or portion thereof or direct or indirect interest

therein) to be sold (the "Offered Loan") and the price payable in cash at which Lehman Re

would be willing to sell the Offered Loan, the "ROFO Price").  Upon receipt of a ROFO Notice,

the Lehman U.S. Entities shall have the right to purchase such Offered Loan on the terms set

forth in the such ROFO Notice, which right may only be exercised with respect to the entire

Offered Loan being offered pursuant to the ROFO Notice, exercisable by the Lehman U.S.

Entities by:  (i) delivering written notice thereof to Lehman Re (the "Election Notice") within

fifteen (15) days after receipt of the applicable ROFO Notice and (ii) closing the purchase within

thirty (30) days after delivery of the related Election Notice.  If the Lehman U.S. Entities fail to

timely deliver an Election Notice, the Lehman U.S. Entities shall be deemed to have waived their

rights of first offer to purchase the applicable Offered Loan, subject to the reinstatement of such

right of first offer in accordance with the terms hereof.  If the Lehman U.S. Entities timely elect

to purchase a Mortgage Loan pursuant to an Election Notice, the Lehman U.S. Entities shall,

simultaneously with the delivery of such Election Notice, wire to the JPLs in immediately

available funds a non-refundable deposit in an amount equal to five percent (5%) of the ROFO

Price (the "Deposit").

        B.      If the Lehman U.S. Entities validly and timely deliver an Election Notice,

the closing of the purchase shall be on a date (the "ROFO Closing Date") designated by the

Lehman U.S. Entities which is not more than thirty (30) days after the delivery of the Election

Notice and at a place designated in the ROFO Notice (or if the ROFO Notice does not designate

a closing place, at such place as may be mutually agreed upon between Lehman Re and the

Lehman U.S. Entities, and otherwise such closing shall be in escrow).

        C.      At the closing of each purchase:

        (i)      the Lehman U.S. Entities and Lehman Re shall enter into an assignment

and assumption agreement, in form and substance reasonably acceptable to each of the Lehman

U.S. Entities and Lehman Re, with respect to the Offered Loan pursuant to which Lehman Re

shall transfer and assign the Offered Loan to the applicable Lehman U.S. Entity; provided,

however, such transfer and assignment by Lehman Re shall be without recourse, representation

or warranty whether expressed or implied by Lehman Re other than representations to the effect

that Lehman Re has the authority and power to effect the transfer and assignment and that the

Offered Loan being transferred and assigned is free from any liens;

        (ii)      Lehman Re shall deliver to the applicable Lehman U.S. Entity, at such

Lehman U.S. Entity's sole, but reasonable, cost and expense, all of the applicable documents

relating to the Offered Loan obtained from the applicable Lehman U.S. Entity pursuant to the

MRA, the Custody Agreement, or this Agreement, and copies of all other books and records

related to the Offered Loan within Lehman Re's possession or control; and

(iii)    the Lehman U.S. Entities shall pay or cause to be paid the ROFO Price to

Lehman Re in immediately available funds.

D.    A Deposit shall only be returned by the JPLs to the Lehman U.S. Entities

in the event (i) the Lehman U.S. Entities deliver to Lehman Re, prior to the date that is thirty (30)

days after delivery of the related Election Notice, written notice that the Lehman U.S. Entities

have determined during the course of their due diligence that a Material Change (as defined

below) has occurred after the Effective Date with respect to the related Mortgage Loan, or (ii)

Lehman Re defaults on its obligation to sell the Offered Loan to the Lehman U.S. Entities as

provided herein.

E.    In the event that the Lehman U.S. Entities purchase any Offered Loan,

Lehman Re shall take any and all actions that the Lehman U.S. Entities shall reasonably request

to further evidence or confirm the Lehman U.S. Entities' ownership interest in the Offered Loan,

including, without limitation, notifying each obligor on such Offered Loan to make all payments

thereon as directed by the Lehman U.S. Entities, confirming to any lending agent, servicer

(whether master or special) and any other similar agent with respect to such Offered Loan that

the Lehman U.S. Entities are the owners of such Offered Loan, and delivering, assigning or

otherwise transferring to the Lehman U.S. Entities any collateral held by Lehman Re (or any of

its agents) securing the obligations of the obligors on such Offered Loan.  Lehman Re hereby

authorizes the Lehman U.S. Entities to execute and file any assignments of Uniform Commercial

Code financing statements, or any other documents or instruments that may be required in the

applicable local jurisdiction, naming the Lehman U.S. Entities as a secured party, or otherwise

confirming and acknowledging that the Lehman U.S. Entities are the owners of such Offered

Loan, and covering all collateral for such Offered Loan.

D-3

F.      If the Lehman U.S. Entities waive (or are deemed to have waived) their right to acquire the Offered Loan in a given ROFO Notice, the Offered Loan may be sold by Lehman Re at any time thereafter, not subject to the provisions of this Exhibit D, provided such Offered Loan is sold either (i) for not less than eighty-five percent (85%) of the ROFO Price offered to the Lehman U.S. Entities set forth in the related ROFO Notice, or (ii) such lower price in the event the cash difference between such sale price and the ROFO Price is not more than One Million and No/100 Dollars ($1,000,000.00).

G.      For purposes of this Exhibit D, the term (i) "ROFO Period" means, with respect to each Mortgage Loan (other than any Excluded Mortgage Loan), the period commencing on the ROFO Period Commencement Date (as defined below) and expiring on the date that is (a) with respect to each Mortgage Loan set forth on Exhibit D-1 attached hereto, eighteen (18) calendar months from the ROFO Period Commencement Date, (b) with respect to each Mortgage Loan set forth on Exhibit D-2 attached hereto, twelve (12) calendar months from the ROFO Period Commencement Date, and (c) with respect to each Mortgage Loan set forth on Exhibit D-3 hereto, six (6) calendar months from the ROFO Period Commencement Date; (ii) "Material Change" means a change that has a material adverse effect on the use, value and/or condition of the real property directly or indirectly securing the applicable Mortgage Loan, and (iii) "ROFO Period Commencement Date" means the earlier to occur of (a) the Effective Date, and (b) the date occurring thirty (30) days after the date of this Agreement.

H.      Any and all rights granted to the Lehman U.S. Entities in this Exhibit D are solely for the benefit of the Lehman U.S. Entities and are not transferable by the Lehman U.S. Entities and may not be assigned by the Lehman U.S. Entities, by operation of law, or otherwise.

D-4

I.        For the avoidance of doubt, any and all rights granted to the Lehman U.S.

Entities and any and all obligations on the part of the JPLs and Lehman Re set forth in this

Exhibit D shall not apply, and shall otherwise be inoperable with respect, to (i) the sale of all or

any portion of any Mortgage Loan or any direct or indirect interest therein to a third party

affiliated with or related to the applicable original or current mortgage or mezzanine loan

borrower thereunder, as the case may be, and/or (ii) with respect to any Mortgage Loan where

Lehman Re has taken title to the collateral for the Mortgage Loan (whether by foreclosure,

power of sale, delivery of a deed or assignment in lieu of foreclosure or otherwise).

## **EXHIBIT D-1**

|    | **Mortgage Loan** |
|----|-------------------|
| 1. | Ballpark 2        |
| 2. | Monument View     |
| 3. | Pacific Point     |
| 4. | Golden Sands      |

## **EXHIBIT D-2**

|    | **Mortgage Loan** |
|----|-------------------|
| 1. | Ritz Philadelphia |
| 2. | Ritz Kapalua |
| 3. | Pasadena/St. Luke's |

**EXHIBIT D-3**

|     | **Mortgage Loan** |
| --- | --- |
| 1. | Arundel Mills |
| 2. | Molasses Reef (Turks & Caicos) |
| 3. | Rose Island |
| 4. | 250 East 49th Street |
| 5. | Laurel Cove |
| 6. | Legends |
| 7. | Clemson |
| 8. | Cherry Lawn |
| 9. | 237 Park Avenue |
| 10. | VCC Centennial Hills |
| 11. | Otay Mesa |
| 12. | WSG Indrio |
| 13. | Brevard Crossing |
| 14. | Hudson Yards |

**COMPOSITE EXHIBIT E**

Forms of Assignment and Assumption Documents

See attached.

**FORM OF OMNIBUS ASSIGNMENT AND ASSUMPTION**

**OMNIBUS ASSIGNMENT AND ASSUMPTION**
**([NAME OF LOAN])**

[NAME OF LENDER], a [_____] corporation ("Assignor"), having an address at 1271 Avenue of the Americas, New York, New York 10020, hereby confirms that it has sold, transferred, assigned, delivered, set-over and conveyed to LEHMAN RE LTD. ("Assignee"), having an address at c/o Peter C.B. Mitchell and D. Geoffrey Hunter, PricewaterhouseCoopers Advisory Limited, Dorchester House, 7 Church Street, Hamilton, Bermuda HM11, and Assignee hereby confirms that it has purchased from Assignor, all of Assignor's rights, title and interest with respect to the loan identified on Exhibit A attached hereto and made a part hereof (the "Loan") including, without limitation, all of Assignor's rights arising under the documents and/or instruments set forth on Exhibit B attached hereto and made a part hereof (collectively, the "Loan Documents"). For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns to Assignee, effective as of September 17, 2008, and, subject to the terms and conditions set forth in that certain Settlement Agreement, dated as of [_____], 2009, among Assignee, Assignor, [Lehman ALI Inc.][Lehman Brothers Holdings Inc.] and Lehman Commercial Paper Inc., Assignee hereby assumes from Assignor, effective as of September 17, 2008, all of Assignor's obligations as lender or otherwise arising under or in connection with the Loan Documents. Any capitalized terms not otherwise defined in this Assignment (as hereinafter defined) shall have the meanings ascribed to such terms in the Loan Documents.

This Omnibus Assignment and Assumption (this "Assignment") is being made by Assignor without recourse to Assignor, and without any representations, warranties or covenants, express or implied, by Assignor of any kind whatsoever. Accordingly, without limiting the foregoing, Assignor (i) makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with any of the Loan Documents, or the execution, legality, validity, enforceability, genuineness, sufficiency or value of any of the Loan Documents, or any other instrument or document furnished pursuant thereto; and (ii) makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Borrower or any of its affiliates or the performance or observance by the Borrower of any of its obligations under the Loan Documents, or any other instrument or document furnished pursuant thereto.

Assignor hereby represents and warrants to Assignee that the signatory of this Assignment is duly authorized to execute and deliver this Assignment on behalf of Assignor.

Assignor hereby agrees to execute and deliver to Assignee (at Assignee's sole cost and expense) such further and additional documents or instruments as may be reasonably necessary or appropriate to effectively transfer, convey and perfect to Assignee all of the rights and privileges contemplated hereby under and pursuant to the applicable laws of each jurisdiction having an interest in or authority over or with respect to any and all collateral for the Loan, including, without limitation, an allonge, assignment of mortgage, assignment of assignment of leases and rents, assignment of beneficiary rights under any trust or similar document, assignment of rights under any collateral agreement and UCC financing statement

E-2

assignment (in each instance conformed to local law and the requirements of the local jurisdiction where the collateral or the debtor is located) as well as such other instructions, notifications, authorizations, allonges, assignments, instruments and other documents as Assignee may reasonably request in confirmation of, and/or in furtherance of, the absolute assignment to Assignee made hereunder.

This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without regard to the principles of conflicts of laws.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

       IN WITNESS WHEREOF, the parties hereto have executed and delivered this Assignment as of the ___ day of _____, 2009.

ASSIGNOR:

[NAME OF LENDER]

By:_____
Name:
Title:

ASSIGNEE:
LEHMAN RE LTD.

By:_____
Name:
Title:

# EXHIBIT A

## DESCRIPTION OF THE LOAN

# EXHIBIT B

## LOAN DOCUMENTS

### (attached hereto)

## FORM OF ALLONGE

### ALLONGE
### ([NAME OF LENDER/LOAN])

FOR VALUE RECEIVED, the undersigned, as the holder of that certain [Promissory Note], dated as of [_____], made payable by [NAME OF BORROWER], a [_____], to the undersigned, in the stated principal amount of $[_____], and to which this Allonge is affixed (as thereafter amended and/or restated, the "<u>Note</u>") hereby assigns, transfers, endorses, negotiates and sets over to and makes payable to the order of LEHMAN RE LTD., effective as of September 17, 2008, without recourse, representation or warranty of any kind or nature whatsoever, the Note and all interest, principal and all other sums due or to become due under the Note.

Dated as of _____, 2009

                                                  [NAME OF LENDER], a [_____] corporation

                                                  By:_____
                                                  Name:
                                                  Title:

EXHIBIT F

Resi Cash Flow Chart

See attached.