**Hearing Date and Time: August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                        :    Chapter 11 Case No.
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    08-13555 (JMP)
                                                             :
                Debtors.                                 :    (Jointly Administered)
                                                             :
------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ENGAGE CITADEL SOLUTIONS LLC ON AN INTERIM BASIS

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, for authorization to engage Citadel Solutions LLC as a data processing and workflow automation consultant, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York, 10004 (the "Bankruptcy Court"), on **August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P. Krasnow and Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Citadel Solutions LLC, 131 South Dearborn Street, Chicago, IL 60603, Attn: Michael R. Weiner, Esq., General Counsel, and Kirkland & Ellis, L.L.P., 300 North LaSalle Street, Chicago, Illinois 60654 Attn: David R. Seligman, P.C., so as to be so filed and received by no later than **August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 5, 2009
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Hearing Date and Time:  August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard P. Krasnow
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
:
:
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND
363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION
TO ENGAGE CITADEL SOLUTIONS LLC ON AN INTERIM BASIS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together with LBHI, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

**Preliminary Statement**

1. Prior to the Commencement Date, Lehman operated its businesses under a unified information technology infrastructure that made available equipment, software, and data to perform multiple front-office tasks, such as valuations and investment management decisions

for various asset classes, including loans, derivatives and commodities, as well as middle- and back-office tasks, such as maintaining records of asset-based transactions and providing office management support. The infrastructure was utilized by Lehman personnel with expertise and intimate familiarity with the relevant technology and software to provide internal support to Lehman's businesses and to manage asset portfolios of, and provide related services to, Lehman's clients, including institutional portfolios, mutual funds, alternative investments and private accounts.

2. On September 20, 2008, the Court entered an order approving an asset purchase agreement dated September 16, 2008 (the "Purchase Agreement"), as amended and clarified from time to time, between certain of the Debtors, Lehman Brothers Inc. and Barclays Capital Inc. ("BarCap") and the various transactions contemplated therein [Docket No. 258]. In connection with the Purchase Agreement, Lehman's information technology infrastructure was sold to BarCap, and the key Lehman personnel dedicated to the maintenance and administration of Lehman's information technology infrastructure transferred to BarCap. The Debtors, however, continue to require access to the infrastructure to administer their estates and manage and service the assets of their businesses. As a result, the Debtors currently depend on BarCap's obligations under a Transition Services Agreement, dated September 22, 2008 (the "TSA"), between BarCap and the Debtors for such services. With certain exceptions, the TSA expires on March 22, 2010.

3. To minimize the cost of administration of their estates, the Debtors have determined to engage, on an interim basis, Citadel Solutions LLC ("Citadel") as a data processing and workflow automation consultant to replace certain of the infrastructure and services currently provided by BarCap through the TSA. In addition to the direct cost savings

that will be realized by engaging Citadel, the Debtors believe that they will be able to avoid the administrative burdens associated with continuing to receive services from Barclays through the TSA and minimize the any delays or disruptions associated with transitioning to Citadel (as explained below) on a long-term basis.

4.  The Debtors will require access to data processing and workflow automation support services beyond the expiration of the TSA, and believe that it would be cost-effective and less time consuming to outsource their requirements to a third-party service provider. By outsourcing their requirements to a third party such as Citadel, the Debtors believe they can save approximately $10,000,000 annually and have access to more efficient platform than currently available to the Debtors under the TSA. Accordingly, the Debtors are actively seeking a replacement for BarCap to provide these data processing and workflow automation support services on a long-term basis. Although Citadel is the leading candidate to replace BarCap and provide the technology, software and personnel necessary to allow the Debtors to administer their estates and Lehman's client portfolio, the Debtors have not yet reached a long-term agreement with Citadel. If the Debtors determine to enter into a long-term agreement with Citadel, the Debtors will seek Court approval of such agreement.

**Background**

5.  Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

### Lehman's Business

7. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

8. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Jurisdiction

9. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Relief Requested

10. The Debtors request authorization to engage Citadel as a data processing and workflow automation consultant, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(h), on the terms and conditions of an interim consulting agreement (the "Interim Agreement") annexed hereto as Exhibit A, *nunc pro tunc* to June 1, 2009, the date Citadel began performing services for the Debtors. Although the Debtors

believe that their engagement of Citadel is ordinary course under section 363(c)(1) of the Bankruptcy Code, out of an abundance of caution, they are seeking the relief requested. The Debtors further request that, pursuant to Bankruptcy Rule 6004(h), the Court direct that the order granting the requested relief be effective immediately upon entry. The parties anticipate that the Interim Agreement will be replaced and superseded in its entirety upon the execution of a master services agreement (the "MSA") between Citadel and the Debtors, the principal terms of which are being negotiated by the parties. The Debtors will seek Court approval of the MSA if and when it is finalized.

### The Debtors' Data Processing and Workflow Automation Requirements

11. As indicated above, the Debtors currently require, and will continue to require, access to the data processing and workflow automation services to administer their estates, in particular, their loan, derivative, real estate, principal investments and commodities books. Subsequent to the transfer of the information technology and expert Lehman personnel to Barcap, the Debtors considered operating their businesses independent of the BarCap-controlled Lehman legacy infrastructure, but determined that it would be more costly and time consuming to recreate the infrastructure and retain personnel with expertise in providing such services. As a result, the Debtors have relied on BarCap's obligations under the TSA to provide the technology and personnel necessary to operate their businesses.

12. The Debtors and their restructuring advisors, Alvarez and Marsal North America, LLC ("A&M"), have determined that outsourcing their data processing and workflow automation needs would reduce the costs of administering their estates. Accordingly, the Debtors undertook an extensive analysis to identify the optimal company to provide the requisite support services. Together with their relevant business teams, they defined applicable

requirements and identified a set of ten (10) third-party providers of data processing and workflow automation services for further consideration. Upon consideration of information submitted by each provider, the Debtors narrowed the field to four parties. The Debtors engaged in information-sharing sessions, observed solution demonstrations, and conducted multiple site visits with each of the four providers. The Debtors and their business teams evaluated the reliability, scalability, extensibility and financial charges of each administrator's services and offerings as well as the financial stability of the administrators.

13. Citadel is currently the Debtors' leading candidate to replace BarCap as a long-term provider of data processing and workflow automation support. Its platform is well adapted to be readily deployed for the administration of all classes of assets held by Lehman; it was in a position to immediately offer certain functionalities, such as the support and pricing of commodity assets that other providers would have had to develop over time; and it had demonstrated experience in transitioning third-party asset portfolios onto its platform. The Debtors and Citadel are negotiating a definitive long-term agreement that is anticipated to include Citadel's agreement to provide technology to support, among other things, trade capture, affirmation, confirmation, settlement and reconciliation, tracking of corporate actions, over-the-counter derivative processing, fund accounting and reporting. In connection therewith, Citadel would host a database to act as the definitive reference for information regarding certain classes of assets held in the Debtors' estates. While the Debtors currently believe Citadel is the most appropriate third-party provider, they have not reached a definitive and detailed agreement with Citadel regarding the terms of the MSA for Citadel's engagement. Agreement on the terms of the MSA could require months of extended negotiation over detailed contractual arrangements and statements of work.

14. During their negotiations, the Debtors have identified a set of preliminary services, primarily requirements discovery, workflow mapping and the interim conversion of a limited quantity of Debtors' data, that are capable of being implemented immediately and will reduce the cost of administration to the Debtors' estates even if the Debtors do not reach final agreement with Citadel on the MSA. The Debtors' entry into the Interim Agreement and immediate engagement of Citadel will also ensure a faster and smoother transition to the Citadel platform in the likely event the MSA is finalized and executed. Understandably, however, Citadel has advised the Debtors it is not willing to provide services, including preliminary requirements discovery, workflow mapping services and interim data conversion, until Debtors have agreed to pay Citadel for such services.

15. Therefore, to immediately obtain these valuable services and capture the cost-savings and benefits associated with engaging Citadel, the Debtors have entered into the Interim Agreement to engage Citadel for preliminary services pending negotiation and agreement on the terms under which Citadel would perform data processing, workflow automation support and interim data conversion on a long-term basis. The Interim Agreement provides that Citadel will perform the following services (collectively, the "<u>Services</u>"):[1]

- Gather and review relevant documentation and background information to prepare for data processing and workflow automation, including the current state of services, portfolio and accounting information.
- Establish account structure and applicable service levels for the Services.
- Configure Debtors' technology platform to facilitate interaction with and for counterparties and providers.
- Convert certain live portfolio data.
- Train LBHI staff to prepare for live data processing.

---

[1] The following is only a summary of the Services. The actual terms of the Agreement shall govern the scope of Services to be provided to the Debtors by Citadel.

16. The Interim Agreement provides that the engagement of Citadel will be governed by an hourly fee structure. Citadel's hourly rate will be benchmarked against the average cost for the type of services provided by other administrators and service providers in this industry and range from $225 an hour for staff members to $750 for managing directors. In addition, Citadel and its employees and agents will be reimbursed for all reasonable out-of-pocket travel, meal and lodging expenses that comply with A&M's policies relating to such expenses. The Debtors believe that the engagement of Citadel pursuant to the Interim Agreement is appropriate and necessary to enable the Debtors to operate their businesses, minimize the costs of administration of their estates, and execute faithfully their duties as debtors and debtors in possession. Citadel is well qualified and able to provide the requested services.

**Basis for Relief Requested**

17. The Debtors seek authorization to engage and compensate Citadel pursuant to section 363(b) of the Bankruptcy Code, which provides in relevant part that "[t]he trustee, after notice and a hearing, may use…, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

18. Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, the court defers to the trustee's

judgment so long as there is a "legitimate business justification"); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

19. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

20. Sound business reasons support the Debtors' engagement of Citadel. As set forth above, the Debtors currently rely on the TSA with BarCap for day-to-day operational and business continuity infrastructure, which is necessary to administer their estates and Lehman's remaining client portfolios, at a greater cost than that which is available through Citadel. Accordingly, to minimize the cost of administration of their estates, the Debtors' interim engagement of Citadel is appropriate. In addition, the TSA is set to expire in approximately eight (8) months and will not meet the Debtors' long-term demands. Given the progress of their negotiations with Citadel on a long-term arrangement, the Debtors believe that they will be able to effectuate a more efficient and smoother transition to Citadel's platform if Citadel is brought in now on an interim basis. The Debtors have determined that outsourcing

data processing and workflow automation support to a third party such as Citadel could result in annual savings to the Debtors in excess of $10,000,000 and be more efficient on a going-forward basis. Accordingly, not only do the Debtors obtain immediate cost-savings by engaging Citadel now, but they are likely to generate substantial cost-savings and minimize delays or disruptions associated with a transition to Citadel's products and services in the likely event that it is engaged on a long-term basis.

21.    A debtor is required to obtain bankruptcy court approval before it is permitted to hire professionals and compensate them with funds from property of the estate. However, as explained below, Citadel is not a "professional" as that term is used in the Bankruptcy Code. Thus, Citadel should not be held to the requirements under section 327(a) of the Bankruptcy Code, and Citadel should not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

22.    Section 327(a) of the Bankruptcy Code provides, in relevant part, that a debtor

> … with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under [the Bankruptcy Code].

11 U.S.C. § 327(a). The United States Bankruptcy Court for the Southern District of New York has previously held that the term "professional" as it used under section 327(a) is a term of art reserved for those who play a "an intimate role in the reorganization of the debtor's estate." *John-Manville*, 60 B.R. at 619-20. While consultants are members of a profession, they are not subject to section 327(a) if their work is not connected to the administration of the debtor's bankruptcy proceeding. *In re Seatrains Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) (holding maritime engineers sought to be retained as consultants to the debtor were not

"professional persons" for purposes of section 327(a) because they were merely involved in the mechanics of the debtor's business operations and did not affect the administration of the debtor's reorganization); *see also In re Lexington Precision, et al.*, Case No. 08-11153 (MG) (Bankr. S.D.N.Y. July 14, 2008) [Docket No. 249] (authorizing employment of consultant advising on management and production efficiencies for debtors' business operations).

23.  In these chapter 11 cases, this Court has previously approved the retention of Natixis Capital Markets Inc. as strategic advisor to the Debtors and Kelly Wright as art consultant, which the Debtors also sought out of an abundance of caution pursuant to sections 105(a) and 363 of the Bankruptcy Code. *See* Docket No. 2308 and 2678. Similarly, bankruptcy courts in this District have authorized a debtor's engagement of a broad range of specialists pursuant to section 363 including lobbyists, executive search consultants, crisis managers, and attorneys. *See, e.g., In re Johns-Manville Corp.*, 60 B.R. 612, 621 (Bankr. S.D.N.Y. 1986) (holding that lobbyists performing functions external to the reorganization as they had pre-petition for the debtor were not "professional persons"); *In re PRC, LLC,* Case No. 08-10239 (MG) (Bankr. S.D.N.Y. May 28, 2008) [Docket No. 434] (authorizing retention of executive search consultants pursuant to section 363 of the Bankruptcy Code); *In re Bally Total Fitness of Greater N.Y., Inc*., Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007) [Docket No. 283] (authorizing retention of crisis managers pursuant to section 363 of the Bankruptcy Code); *In re Enron Corp.*, 335 B.R. 22 (Bankr. S.D.N.Y. 2005) (finding employment of law firm to represent employees in relation to a governmental investigation appropriate under Bankruptcy Code section 363).

24.  While the Services to be provided by Citadel might aid in the facilitation of the administration of the Debtors' chapter 11 cases, they are substantially the same services

the Debtors used prior to the Commencement Date and the same services they would have required in the ordinary course of their businesses outside the chapter 11 context. Citadel will play no role in formulating or negotiating the Debtors' proposed chapter 11 plans. Moreover, Citadel will not control or manage the day-to-day business decisions of Debtors' estates, nor will it have any authority to execute trades, determine how transactions should be structured, move cash or otherwise control the Debtors' assets. Rather, Citadel's engagement will be limited to requirements discovery, workflow mapping and interim data conversion as an initial matter, and data processing and workflow automation support if Citadel is engaged, subject to further Court-approval, on a long-term basis. Accordingly, Citadel is not a "professional person" of the kind contemplated by section 327(a) of the Bankruptcy Code.

### Notice

25.     No trustee has been appointed in these chapter 11 cases. The Debtors, in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837], have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Citadel; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper..

Dated: August 5, 2009
     New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------------x

**ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTIONS
105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION
TO ENGAGE CITADEL SOLUTIONS LLC ON AN INTERIM BASIS**

Upon the motion, dated August 5, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to engage Citadel Solutions LLC ("Citadel") on an interim basis, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United

States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to engage Citadel as a data processing and workflow automation consultant on the terms and conditions set forth in the Interim Agreement annexed to the Motion as Exhibit A (the "Interim Agreement"); and it is further

ORDERED that the Debtors are authorized to take all further actions that may be necessary or required for the Debtors' entry into and performance of the Interim Agreement; and it is further

ORDERED that the Debtors are authorized to pay the fees and reimburse the expenses of Citadel in accordance with the terms of the Interim Agreement and Citadel shall not be required to file fee applications with the Court; and it is further

ORDERED that pursuant to Bankruptcy Rule 6004(h), this Order shall be effective immediately upon entry; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: August __, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE