Hearing Date and Time: August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                      :
**In re**                                             :        **Chapter 11 Case No.**
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,          :        **08-13555 (JMP)**
                                                      :
                                  **Debtors.**        :        **(Jointly Administered)**
                                                      :
                                                      :
-------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION PURSUANT TO SECTION 1505 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ACT AS THE FOREIGN REPRESENTATIVES OF THEIR ESTATES IN THE UNITED KINGDOM

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, other than Lehman Brothers Special Financing Inc. (collectively, the "Debtors") for

authorization to act as a foreign representatives in the United Kingdom on behalf of their estates,

all as more fully described in the Motion, will be held before the Honorable James M. Peck,

United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton

Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the

"Bankruptcy Court"), on **August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **August 21, 2009 at 4:00 a.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  August 5, 2009
        New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :      Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :      08-13555 (JMP)
                                        :
                             Debtors.   :      (Jointly Administered)
                                        :
                                        :
-------------------------------------------------------------------x
```

## DEBTORS' MOTION PURSUANT TO SECTION 1505 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ACT AS THE FOREIGN REPRESENTATIVES OF THEIR ESTATES IN THE UNITED KINGDOM

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, other than Lehman Brothers Special Financing Inc. ("LBSF"), as

debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor

affiliates and LBSF, "Lehman"), file this Motion and respectfully represent:

### Background

1.       Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.     On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.     On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

5.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

6.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States. For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

7.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

2

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

**Preliminary Statement**

8.      On and after the Commencement Date, certain of Lehman's foreign direct

and indirect subsidiaries (the "Foreign Debtors") commenced, or in some cases, had initiated

against them a variety of insolvency, administration, liquidation, rehabilitation, receivership or

like proceedings, as well as ancillary proceedings (the "Foreign Proceedings," and collectively,

with the Debtors' and LBSF's chapter 11 cases, the "Proceedings") across various foreign

jurisdictions and before different courts and governmental, regulatory, or administrative bodies

(collectively with the Court, the "Tribunals").  In certain Foreign Proceedings, committees of

creditors have been formed (the "Foreign Creditors' Committees"), and liquidators,

administrators, trustees, or curators (the "Foreign Administrators") have been appointed to

manage the Foreign Debtors' affairs and represent their estates.

9.      Given the global nature of Lehman's businesses, many of the Debtors',

LBSF's, and Foreign Debtors' assets and activities are deeply integrated with each other and

spread across different jurisdictions.  Within a few months after the Commencement Date, the

Debtors, LBSF, and certain of the Foreign Administrators recognized that the efficient

administration of each of the individual Proceedings would benefit from cooperation among the

Debtors, LBSF, and Foreign Administrators on issues and matters that were common to many of

the Proceedings.  After lengthy negotiations, the Debtors, LBSF, and certain Foreign

Administrators (along with those Foreign Administrators who periodically may be added as

parties, the "Protocol Signatories") executed a certain Cross-Border Insolvency Protocol for the

3

Lehman Brothers Group of Companies dated May 12, 2009 (the "Protocol"). On May 26, 2009, the Debtors and LBSF filed a motion pursuant to sections 105 and 363 of the Bankruptcy Code for approval of the Protocol (the "Protocol Motion") [Docket No. 3647], which was granted by an order entered by the Court on June 17, 2009 [Docket No. 4020].

10.    In the Protocol Motion, the Debtors and LBSF noted that once the Protocol Signatories secured approval of the Protocol from their respective Tribunals or Foreign Creditors' Committees, a series of meetings and teleconferences would follow, leading to an initial conference of the Protocol Signatories and certain non-signatory Official Representatives[1] in mid July (the "First Protocol Meeting") to discuss, among other things, the key procedural and substantive differences among the various Proceedings, and a thorough analysis of the intercompany financial matrix. (Protocol Motion ¶ 19.)

11.    On July 7, 2009, prior to the First Protocol Meeting and in order to defend itself in the United Kingdom (the "UK") against a flurry of potential litigation relating to a discrete set of issues, LBSF filed a motion with this Court seeking authorization to act as the foreign representative of its estate in the UK pursuant to section 1505 of the Bankruptcy Code [Docket No. 4308]. At the time that LBSF sought this relief, the Debtors hesitated to request the same relief for themselves under section 1505 because they were not certain of their need to seek recognition in the High Court of Justice Chancery Division, Royal Courts of Justice (the "High Court") in London. The Debtors anticipated, therefore, that they would request such authority as and when they found that the assistance of a foreign court would be necessary and appropriate

---

[1]    While it is anticipated that certain of the non-signatories will fully participate within the general framework of the Protocol, they attended the First Protocol Meeting only as observers because they have not yet signed the Protocol.

4

for the particular circumstances.  On August 5, 2009, the Court entered an order granting LBSF's

motion [Docket No. 4712].

12.     On July 17, 2009, the Protocol Signatories convened the First Protocol

Meeting in London.  At the First Protocol Meeting, the Protocol Signatories made substantial

progress in developing a coordinated approach to the administration of their various estates that

included, *inter alia*, a discussion of how they might arrive at a settlement of intercompany claims

through a streamlined, multilaterally consistent and transparent process that significantly reduces

administrative expenses and avoids years of potential litigation in multiple jurisdictions.

13.     In furtherance of this effort to arrive at a consensual resolution of

intercompany claims, and to assist each other effectively and cooperate further in other aspects

of the Proceedings in which they share mutual interests, certain of the Protocol Signatories

indicated at the First Protocol Meeting that that they may need to seek the assistance of the High

Court as foreign debtors subject to foreign main proceedings, pursuant to the Cross-Border

Insolvency Regulations 2006 (the "CBIR"), which enacts into English law the UNCITRAL

Model Law on Cross-Border Insolvency (the "Model Law" and, with the accompanying Guide to

Enactment, the "Guide to Enactment").[2]

### Relief Requested

14.     The Debtors have now determined that it would be in the best interests of

their estates if they, and not just LBSF, had the authority to petition the High Court for

recognition of their chapter 11 cases.  Accordingly, by the Motion, the Debtors seek

authorization, pursuant to section 1505 of the Bankruptcy Code, to take the following actions:

---

[2]      *See* MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO ENACTMENT (UNCITRAL 1999), U.N.
Commission on International Trade Law, G.A. Res. 52/158, U.N. GAOR 30th Sess., Supp. No. 17, U.N. Doc.
A/52/17 (1997), *available at* http://www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model.html.

act as the foreign representatives of their estates in the UK; seek recognition of the above

referenced chapter 11 cases on behalf of their estates; request that the High Court lend assistance

to this Court in protecting the property of the Debtors' estates; and seek any other appropriate

relief from the High Court that the High Court deems just and proper.

**Basis for the Relief Requested**

15.    Section 1505 of the Bankruptcy Code allows a debtor in possession to

obtain court approval to subsequently submit a petition to a foreign court that (i) requests

recognition of the debtor's chapter 11 case, and (ii) recognizes the debtor in possession as the

foreign representative of the debtor's estate.  Section 1505 of the Bankruptcy Code provides:

> A trustee or another entity (including an examiner) may be authorized by
> the court to act in a foreign country on behalf of an estate created under
> section 541. An entity authorized to act under this section may act in any
> way permitted by the applicable foreign law.

11 U.S.C. § 1505.  Section 1505 only applies to cases filed under chapters other than chapter 15

of the Bankruptcy Code because a chapter 15 case does not create an estate under section 541.

For chapter 11 cases, authority to act as a foreign representative may be granted to the debtor in

possession because a "trustee," as defined by section 1502(6) of the Bankruptcy Code,

"includes…a debtor in possession in a case under any chapter of this title." *See* 11 U.S.C. §

1502(6).

16.    The purpose of section 1505 is not to provide the debtor with authority to

conduct business in a foreign country.  A debtor in possession does not generally require court

approval to take such action on behalf of the bankruptcy estate in the ordinary course of

business, at home or abroad.  Rather, the authority sought under this section allows a debtor to

petition a foreign court for recognition of its chapter 11 case, and to request that the foreign court

cooperate with and lend assistance to the debtor and the bankruptcy court in meeting the

objectives of both chapter 15 of the Bankruptcy Code and the Model Law, on which chapter 15

is based.  These objective are stated in section 1501 of the Bankruptcy Code:

> (a)  The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>> (1)  cooperation between—
>>> (A)  courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>>> (B)  the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>> (2)  greater legal certainty for trade and investment;
>> (3)  fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>> (4)  protection and maximization of the value of the debtor's assets; and
>> (5)  facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.[3]  Thus, the authority sought by a debtor under section 1505 is specific to

seeking recognition of the debtor's chapter 11 case and fostering cooperation between the

bankruptcy court and foreign courts.

17.    An explicit grant of this authority is meant to facilitate the process of

petitioning for recognition in a foreign court.  For this reason, Article 5 of the Model Law

---

[3]    The preamble of the Model Law is virtually identical:

> The purpose of this Law is to provide effective mechanisms for dealing with cases of cross-border insolvency so as to promote the objectives of:
>
> (a) Cooperation between the courts and other competent authorities of this State and foreign States involved in cases of cross-border insolvency;
>
> (b) Greater legal certainty for trade and investment;
>
> (c) Fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested persons, including the debtor;
>
> (d) Protection and maximization of the value of the debtor's assets; and
>
> (e) Facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

7

provides that the person or body administering a reorganization or liquidation in a country that

has enacted the Model Law (an "<u>Enacting State</u>") "is authorized to act in a foreign State on

behalf of a proceeding under…the laws of the enacting State relating to insolvency."  Model Law

Art. 5.  The Guide to Enactment explains that

> [t]he lack of such authorization in some States has proved to be an
> obstacle to effective international cooperation in cross-border cases. An
> [E]nacting State in which administrators are already equipped to act as
> foreign representatives may decide to forgo inclusion of article 5, although
> even such a[n Enacting] State might want to keep article 5 in order to
> provide clear statutory evidence of that authority.

*See* Guide to Enactment ¶ 84.  Clear evidence of a chapter 11 debtor's authority to act in a

foreign country is particularly necessary because a chapter 11 case commences immediately

upon the filing of a petition, with no order signed by the court that explicitly appoints the debtor

as the fiduciary or trustee of the debtor's estate.  The fact that a chapter 11 debtor has this

authority by virtue of being a debtor in possession may not be persuasive to a foreign court.

18.     Moreover, absent a court order, a chapter 11 debtor may find it difficult to

satisfy the requirements of a petition for recognition.  These requirements are substantially

similar in most countries that have adopted the Model Law.  Article 15 of the Model Law

provides that a petition shall be accompanied by

> (a) A certified copy of the decision commencing the foreign proceeding
> and appointing the foreign representative; or
>
> (b) A certificate from the foreign court affirming the existence of the
> foreign proceeding and of the appointment of the foreign representative; or
>
> (c) In the absence of evidence referred to in subparagraphs (a) and (b), any
> other evidence acceptable to the court of the existence of the foreign
> proceeding and of the appointment of the foreign representative.

Model Law, Art. 15.2. [4]  Because of the differences between chapter 11 of the Bankruptcy Code

and most other national insolvency laws, a chapter 11 debtor generally does not have the type of

evidence specified in Article 15.2(a) of the Model Law.  Congress therefore modified the text of

Article 5 of the Model Law when incorporating it into chapter 15.  The legislative history to

section 1505 of the Bankruptcy Code explains the reason for this variance in the text as codified

by chapter 15:

> While the Model Law automatically authorizes an administrator to act
> abroad, this section requires all trustees and debtors to obtain court
> approval before acting abroad. That requirement is a change from the
> language of the Model Law, but one that is purely internal to United States
> law. Its main purpose is to ensure that the court has knowledge and control
> of possibly expensive activities, but it will have the collateral benefit of
> providing further assurance to foreign courts that the United States debtor
> or representative is under judicial authority and supervision.

*See* H.R. Rep. No. 109-31, pt. 1, 108 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 171.

19.    The relief sought by this Motion is, therefore, the first in a two step

process.  If granted, the Debtors expect in due course to submit an application to the High Court

that seeks recognition of their chapter 11 cases in this Court.  Pursuant to Articles 15.1 and 15.2

of the CBIR, the Debtors will, as the duly authorized foreign representatives of their bankruptcy

estates, apply to the High Court for recognition of their chapter 11 cases each as foreign main

proceedings "in which the foreign representative has been appointed."  *See* CBIR 15.1.

20.    Consistent with one of the key objectives of the Model Law – to provide

"[c]ooperation between the courts and other competent authorities…involved in cases of cross-

border insolvency" (Model Law, preamble) – the application for recognition that the Debtors will

file, if this Motion is granted, will seek to obtain the assistance of the High Court for the benefit

of this Court and the Debtors' estates and creditors.  If the High Court decides to recognize the

---

[4]    Article 15.2 of the Model Law is virtually identical to section 1515(b) of the Bankruptcy Code.

Debtors' chapter 11 cases as foreign main proceedings, the Debtors will benefit from the

protection of an automatic stay against commencement or continuation of actions or proceedings

concerning the chapter 11 Debtors' assets, rights, obligations and liabilities.  In addition, the

foreign representatives can seek a wide range of relief from the High Court where it is necessary

to protect the assets of the Debtors' estates or the interests of their creditors.  As foreign

representatives of their estates, the Debtors will essentially be treated the same as and will have

the same rights and powers that English insolvency practitioners (such as administrators or

liquidators) have under English insolvency law.

21.    Based on the foregoing, the Debtors submit that there is sufficient

statutory basis and ample justification for this Court to grant the relief requested.

## Notice

22.    No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion in accordance with the procedures set forth in the amended

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; and (vi) all parties who

have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

23.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  August 5, 2009
        New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

11

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                                   :
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,             :    08-13555 (JMP)
                                                   :
                 Debtors.                          :    (Jointly Administered)
                                                   :
                                                   :
----------------------------------------------------------------x
```

## ORDER AUTHORIZING THE DEBTORS TO ACT AS THE FOREIGN REPRESENTATIVE OF THEIR ESTATES IN THE UNITED KINGDOM

Upon the motion, dated August 5, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, other

than Lehman Brothers Special Financing Inc. ("LBSF"), as debtors and debtors-in-possession

(collectively, the "Debtors"), pursuant to section 1505 of title 11 of the United States Code (the

"Bankruptcy Code") for authorization to act as the foreign representatives of their estates in the

United Kingdom, to seek recognition of their chapter 11 cases on behalf of their estates, and to

request that the High Court of Justice, England and Wales ("High Court") lend assistance to this

Court in protecting the property of the Debtors' estates, and to seek any other appropriate relief

from the High Court that the High Court deems just and proper, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended

order entered February 13, 2009 governing case management and administrative procedures

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; and (vi) all parties who have requested notice in these chapter 11 cases,

and it appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, in accordance with the purpose of chapter 15 of the Bankruptcy

Code and the UNCITRAL Model Law on Cross-Border Insolvency, to provide effective

mechanisms for dealing with cases of cross-border insolvency so as to promote the objectives of

(a) cooperation between courts involved in cases of cross-border insolvency; (b) greater legal

certainty for trade and investment; (c) fair and efficient administration of cross-border

insolvencies that protects the interests of all creditors and other interested persons, including the

Debtors; (d) protection and maximization of the value of the debtor's assets; and (e) facilitation

of the rescue of financially troubled businesses, thereby protecting investment and preserving

employment; the Debtors are hereby authorized (a) to act as the foreign representatives of their

estates in the United Kingdom, (b) to seek recognition of their chapter 11 cases on behalf of their

estates, (c) to request that the High Court lend assistance to this Court in protecting the property

2

of their estates, and (d) to seek any other appropriate relief from the High Court that the High

Court deems just and proper in the furtherance of the protection of the Debtors' estates; and it is

further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion and the requirements of Bankruptcy Rule 9014 are satisfied;

and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2009
       New York, New York


                                     _____
                                     UNITED STATES BANKRUPTCY JUDGE