# EXHIBIT 3

   

## Credit                                                                    Back to Dashboard

| Search | Reports | Download | Web User Guide | Contact Us | © 2005 DTCC DerivSERV LLC a subsidiary of DTCC |

Spreadsheets
Search Results

**Current State Contract**          **Production-Trade Warehouse**      06/17/2009 03:02 PM

< Back

| Trade Warehouse Summary | | | 3,000,000.00 USD | Uncertain |
|---|---|---|---|---|
| Warehouse Status: | Uncertain | Status Reason (for uncertain): | Unconfirm Event Exists | |
| DTCC TRI: | 20070430.0001233657 | Warehouse Push Type: | Automatic | |
| Current State Notional: | 3,000,000.00  USD | Notional As Of Date: | 04/28/2007 | |
| Calc Flag | Y-Auto | | | |

**Credit Default Swap - Single Reference Entity -**

| | | | |
|---|---|---|---|
| **Trade Status:** | Current-State | **Trade Submission Date and Time:** | 12/08/2008 09:34:57 |
| **Trade Confirmation Date:** | | | |
| **Reference Number:** | 3027121 | | |
| **Counterparty Reference Number:** | SPS503FH | | |
| **Participant ID:** | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | **Counterparty ID:** | 00006P49 AIG CDS INC |
| Master Document Date | 01/01/2001 | Master Document Transaction Type | ISDA2003CreditNorthAmerican |
| Master Agreement Date: | | Master Agreement Type: | |
| **Annex Date:** | | Documentation Type | |
| **Trade Date:** | 04/27/2007 | **Effective Date:** | 04/28/2007 |
| Calculation Agent | | Calculation Agent City: | |
| **Scheduled Termination Date:** | 06/20/2009 | | |
| **Floating Rate Payer (Seller) ID:** | 00006P49 AIG CDS INC | **Fixed Rate Payer (Buyer) ID:** | 00006171 LEHMAN BROS SPECIAL FINANCING INC. |
| Underlying: | Number: 3A7486AD0 Name: GENERAL MOTORS CORPORATION | | |
| **Reference Obligation Number:** | US370442BS34 | **First Fixed Rate Payer Payment Date:** | 06/20/2007 |
| **Payment Frequency:** | 3  Month(s) | **Fixed Rate:** | 2.80000000 % |
| **Single Payment Amount:** | | **Single Payment Date:** | |
| Single Payment Payer: | | First Payment Period Accrual Start Date | |
| **Floating Rate Payer Calculation Amount:** | 3,000,000.00  USD | | |
| Independent Amount Payer: | | Independent Amount: | % |
| Restructuring Credit Event: | Y | Addnl Provision Monoline | |

| Excluded Deliverable Obligations: | |
|---|---|
| Additional Terms: | N |

< Back

Appendix B-1

## MASTER CREDIT DERIVATIVES
## CONFIRMATION AGREEMENT (EUROPEAN AND NORTH AMERICAN)

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to a Credit Derivative Transaction (a "Transaction") entered into between the parties, the parties will be deemed to have agreed as follows:

1. <u>Credit Derivatives Definitions</u>.    This Master Confirmation Agreement hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions"). Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

2. <u>Confirmation Process</u>.  The parties intend to enter into separate Credit Derivative Transactions with respect to each Reference Entity set out in a Transaction Supplement substantially in the form of the Transaction Record Data Elements set forth in Appendix B to the Operating Procedures (a "Transaction Supplement"). The confirmation applicable to each Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the ISDA Master Agreement most recently entered into between the parties as of the Trade Date of such Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement including the form of General Terms Confirmation attached as Exhibit A to this Appendix B-1 (the "General Terms Confirmation"), as supplemented by the trade details applicable to such Transaction as set forth in the Transaction Supplement.

   In the event of any inconsistency between (i) this Master Confirmation Agreement, including the form of General Terms Confirmation and a Transaction Supplement and/or (ii) the Credit Derivatives Definitions and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Transaction. The Transaction Supplement shall set forth, at a minimum, all of the information set out in the applicable form of Transaction Supplement set forth in Appendix B to the Operating Procedures.

3. <u>Non-Exclusive</u>. The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Transactions in accordance with this Master Confirmation Agreement.

4. <u>Additional Credit Terms</u>. Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

5. <u>Miscellaneous</u>.

(a) <u>Entire Agreement</u>.  This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

(b) <u>Amendments</u>.  An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

(c) <u>Counterparts</u>.  This Master Confirmation Agreement and each Transaction Supplement documented hereunder may be executed in counterparts, each of which will be deemed an original.

(d) <u>Headings</u>.  The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

(e) <u>Governing Law</u>.  This Master Confirmation Agreement and each Transaction confirmed by a Confirmation documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

Re:                          **General Terms Confirmation**

Dear Sir or Madam,

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to confirm certain general terms and conditions of Credit Derivative Transactions entered into between us under the Master Credit Derivatives Confirmation Agreement (European and North American) deemed entered into between us ("Master Confirmation Agreement").

This General Terms Confirmation hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions"). In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern each Confirmation (each as defined in the Master Confirmation Agreement) except as expressly modified below.

The general terms of each Transaction to which this General Terms Confirmation relates are as follows, as supplemented by the Transaction Supplement related to such Transaction:

1.   *General Terms:*

| | |
|---|---|
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Transaction Type: | As shown in the Transaction Supplement, as either European or North American |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |
| Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer") |
| Calculation Agent: | The party that is a Dealer as defined in the Operating Procedures; provided that if both parties are Dealers, Seller. |
| Calculation Agent City: | If the Transaction Type indicated in the Transaction Supplement is: European: London North American: New York |
| Business Day: | If the Floating Rate Payer Calculation Amount indicated in the Transaction Supplement is denominated in: |

> EUR: If the Transaction Type indicated in the Transaction Supplement is (i) European: London and TARGET Settlement Day or (ii) North American: London, New York and TARGET Settlement Day
> USD: London and New York
> GBP: London
> JPY: London and Tokyo
> CHF: London and Zurich

A-1

| | |
|---|---|
| Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day) |
| Reference Entity: | As shown in the Transaction Supplement |
| Reference Obligation(s): | As shown in the Transaction Supplement |
| Reference Price: | 100% |
| All Guarantees: | If the Transaction Type indicated in the Transaction Supplement is: European:  Applicable North American:  Not Applicable |

**2.     Fixed Payments:**

| | |
|---|---|
| Fixed Rate Payer Calculation Amount: | The Floating Rate Payer Calculation Amount |
| Fixed Rate Payer Payment Dates: | As shown in the Transaction Supplement |
| Fixed Rate: | As shown in the Transaction Supplement |
| Fixed Rate Day Count Fraction: | Actual/360 |

**3.     Floating Payment:**

| | |
|---|---|
| Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Conditions to Settlement: | • Credit Event Notice |

Notifying Parties:     Buyer or Seller

• Notice of Physical Settlement

• Notice of Publicly Available Information:     Applicable

Credit Event:     The following Credit Events shall apply to this Transaction:

Bankruptcy

Failure to Pay

Grace Period Extension:     Not Applicable

Payment Requirement:     USD 1,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay

Restructuring: If indicated as applicable in the Transaction Supplement, the following terms shall apply:

Restructuring Maturity     If the Transaction Type

A-2

| | |
|---|---|
| Limitation and Fully Transferable Obligation: | indicated in the Transaction Supplement is:<br>European: Not Applicable<br>North American: Applicable |
| Modified Restructuring Maturity Limitation and Conditionally Transferable Obligation: | If the Transaction Type indicated in the Transaction Supplement is:<br>European: Applicable<br>North American: Not Applicable |
| Default Requirement: | USD 10,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event |

Obligation(s):

For the purposes of the table below:
**"Yes"** shall mean that the relevant selection is applicable; and
**"No"** shall mean that the relevant selection is not applicable.

| Obligation Categories: (Select only one) | | Obligation Characteristics: (Select all that apply) | |
|---|---|---|---|
| No | Payment | No | Not Subordinated |
| Yes | Borrowed Money | No | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| No | Bond or Loan | No | Listed |
| | | No | Not Domestic Issuance |

**4.    Settlement Terms:**

Settlement Method:

Physical Settlement

Settlement Currency:

The currency of denomination of the Floating Rate Payer Calculation Amount

Terms Relating to Physical Settlement:

Physical Settlement Period:

If the Transaction Type indicated in the Transaction Supplement is:
European:  thirty (30) Business Days
North American:  as defined in Section 8.6 of the Credit

| | | Derivatives Definitions, but in no event longer than thirty (30) Business Days |
|---|---|---|
| Deliverable Obligations: | | Exclude Accrued Interest |
| Deliverable Obligation Category and Characteristics: | | For the purposes of the table below: **"Yes"** shall mean that the relevant selection is applicable; and **"No"** shall mean that the relevant selection is not applicable. |

| Deliverable Obligation Categories: *(Select only one)* | | Deliverable Obligation Characteristics: *(Select all that apply)* | |
|---|---|---|---|
| No | Payment | Yes | Not Subordinated |
| No | Borrowed Money | Yes | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| Yes | Bond or Loan | No | Listed |
| | | Yes | Not Contingent |
| | | No | Not Domestic Issuance |
| | | Yes | Assignable Loan |
| | | Yes | Consent Required Loan |
| | | No | Direct Loan Participation |
| | | Yes | Transferable |
| | | Yes - 30 years | Maximum Maturity |
| | | No | Accelerated or Matured |
| | | Yes | Not Bearer |

| | | |
|---|---|---|
| Partial Cash Settlement of Consent Required Loans: | | Not Applicable |
| Partial Cash Settlement of Assignable Loans: | | Not Applicable |
| Partial Cash Settlement of Participations: | | Not Applicable |
| Escrow: | | Applicable |

A-4

**5.**        *Additional Provisions:*

(a) If the Transaction Type indicated in the Transaction Supplement is European, notwithstanding Section 1.7 or any provisions of Section 9.9 or Section 9.10 to the contrary, but without prejudice to Section 9.3 and (where applicable) Sections 9.4, 9.5 and 9.6, if the Termination Date has not occurred on or prior to the date that is 60 Business Days following the Physical Settlement Date, such 60th Business Day shall be deemed to be the Termination Date with respect to this Transaction except in relation to any portion of the Transaction (an "Affected Portion") in respect of which:

(1) a valid notice of Buy-in Price has been delivered that is effective fewer than three Business Days prior to such 60th Business Day, in which case the Termination Date for that Affected Portion shall be the third Business Day following the date on which such notice is effective; or

(2) Buyer has purchased but not Delivered Deliverable Obligations validly specified by Seller pursuant to Section 9.10(b), in which case the Termination Date for that Affected Portion shall be the tenth Business Day following the date on which Seller validly specified such Deliverable Obligations to Buyer.

DerivSERV Portal                                                                    Page 1 of 2

 **DTCC Deriv/SERV**         Admin |  Logout      **DTCC**

---

⊟ **Credit**

| Search | Transaction Forms | Reports | Uploads | Download | Web User Guide | Contact Us | © 2005 DTCC Der |

## View Assignment                                              ### Production-Trade Warehouse

| ⊞ Trade Warehouse Summary | | 5,000,000.00 |
|---|---|---|
| ⊞ New Trade Warehouse Summary | | |

**Assignment Information - RP**

| Novation Status: | Confirmed | Novation Submission Date and Time: | 02/04/2008 11:40 |
|---|---|---|---|
| Novation Date: | 01/12/2008 | Novation Confirmation Date: | 02/04/2008 |
| Transferor: | 00006P49 AIG CDS INC | | |
| Transferor Reference Number: | SPG4049T | Transferor Reference Number Supplement: | ASG2ML |
| Transferee: | 00006221 MERRILL LYNCH INTERNATIONAL | Transferee Reference Number: | 08ML06742A |
| Remaining Party: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Remaining Party Two: | |
| Remaining Party Old Reference Number: | 2906649 | Remaining Party Old Reference Number Supplement: | 3 |
| Remaining Party New Reference Number: | 3577045 | | |
| Novated Amount: | 4,000,000.00  USD | Full First Calculation Period: | Applicable |

| ⊞ Workflow Fields |
|---|
| ⊞ Counterparty Workflow Fields |
| ⊞ Cashflow Schedule |
| ⊞ New Transaction Workflow Fields |
| ⊞ New Transaction Counterparty Workflow Fields |
| ⊞ New Transaction Cashflow Schedule |

**Old Transaction  Credit Default Swap - Single Reference Entity -**

| Reference Number: | 2906649 | | |
|---|---|---|---|
| Counterparty Reference Number: | SPG4049T | | |
| Participant ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Counterparty ID: | 00006P49 AIG CDS INC |
| Master Document Date | 01/01/2001 | Master Document Transaction Type | ISDA2003CreditN |
| Master Agreement Date: | | Master Agreement Type: | |
| Annex Date: | | Documentation Type | |
| Trade Date: | 02/27/2007 | Effective Date: | 02/28/2007 |
| Calculation Agent | | Calculation Agent City: | |
| Scheduled Termination Date: | 03/20/2012 | | |
| Floating Rate Payer (Seller) ID: | 00006P49 | Fixed Rate Payer (Buyer) ID: | 00006171 LEHMAN BROS SP |

|  | AIG CDS INC | INC. |
|---|---|---|
| Underlying: | Number: 9CCC54AD4<br>**Name:** WASHINGTON MUTUAL, INC. | |
| **Reference Obligation Number:** | US939322AV52 | **First Fixed Rate Payer Payment Date:** | 06/20/2007 |
| **Payment Frequency:** | 3  Month(s) | **Fixed Rate:** | 0.34000000 % |
| **Single Payment Amount:** | | **Single Payment Date:** | |
| Single Payment Payer: | | First Payment Period Accrual Start Date | |
| **Floating Rate Payer Calculation Amount:** | 9,000,000.00  USD | | |
| Independent Amount Payer: | | Independent Amount: | % |
| Restructuring Credit Event: | Y | Addnl Provision Monoline | |
| Excluded Deliverable Obligations: | | | |
| Additional Terms: | N | | |

Select Action For Old Trans

### New Transaction  Credit Default Swap - Single Reference Entity -

| **Reference Number:** | 3577045 | | |
|---|---|---|---|
| **Counterparty Reference Number:** | 08ML06742A | | |
| **Participant ID:** | 00006171<br>LEHMAN BROS SPECIAL FINANCING INC. | **Counterparty ID:** | 00006221<br>MERRILL LYNCH INT |
| Master Document Date | | Master Document Transaction Type | NorthAmericanCorp |
| Master Agreement Date: | 06/21/2001 | Master Agreement Type: | ISDA |
| **Annex Date:** | | Documentation Type | CreditDerivativesPh |
| **Original Trade Date:** | 02/27/2007 | **Original Effective Date:** | 02/28/2007 |
| **Novation Trade Date:** | 01/11/2008 | **Novation Date:** | 01/12/2008 |
| Calculation Agent | 00006221<br>MERRILL LYNCH INTERNATIONAL | Calculation Agent City: | New York |
| **Scheduled Termination Date:** | 03/20/2012 | | |
| **Floating Rate Payer (Seller) ID:** | 00006221<br>MERRILL LYNCH INTERNATIONAL | **Fixed Rate Payer (Buyer) ID:** | 00006171<br>LEHMAN BROS SPE |
| Underlying: | Number: 9CCC54AD4<br>**Name:** WASHINGTON MUTUAL, INC. | | |
| **Reference Obligation Number:** | US939322AV52 | **First Fixed Rate Payer Payment Date:** | |
| **Payment Frequency:** | 3  Month(s) | **Fixed Rate:** | 0.34000000 % |
| **Single Payment Amount:** | | **Single Payment Date:** | |
| Single Payment Payer: | | First Payment Period Accrual Start Date | |
| **Floating Rate Payer Calculation Amount:** | 4,000,000.00  USD | | |
| Independent Amount Payer: | | Independent Amount: | % |
| Restructuring Credit Event: | Y | Addnl Provision Monoline | |
| Excluded Deliverable Obligations: | | | |
| Additional Terms: | | | |

Select Action For New Trans



Appendix B-1

## MASTER CREDIT DERIVATIVES
## CONFIRMATION AGREEMENT (EUROPEAN AND NORTH AMERICAN)

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to a Credit Derivative Transaction (a "Transaction") entered into between the parties, the parties will be deemed to have agreed as follows:

1. <u>Credit Derivatives Definitions</u>.    This Master Confirmation Agreement hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions"). Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

2. <u>Confirmation Process</u>. The parties intend to enter into separate Credit Derivative Transactions with respect to each Reference Entity set out in a Transaction Supplement substantially in the form of the Transaction Record Data Elements set forth in Appendix B to the Operating Procedures (a "Transaction Supplement"). The confirmation applicable to each Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the ISDA Master Agreement most recently entered into between the parties as of the Trade Date of such Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement including the form of General Terms Confirmation attached as Exhibit A to this Appendix B-1 (the "General Terms Confirmation"), as supplemented by the trade details applicable to such Transaction as set forth in the Transaction Supplement.

In the event of any inconsistency between (i) this Master Confirmation Agreement, including the form of General Terms Confirmation and a Transaction Supplement and/or (ii) the Credit Derivatives Definitions and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Transaction. The Transaction Supplement shall set forth, at a minimum, all of the information set out in the applicable form of Transaction Supplement set forth in Appendix B to the Operating Procedures.

3. <u>Non-Exclusive</u>. The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Transactions in accordance with this Master Confirmation Agreement.

4. <u>Additional Credit Terms</u>. Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

5. <u>Miscellaneous</u>.

(a) <u>Entire Agreement</u>.  This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

(b) <u>Amendments</u>.  An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

(c) <u>Counterparts</u>.  This Master Confirmation Agreement and each Transaction Supplement documented hereunder may be executed in counterparts, each of which will be deemed an original.

(d) <u>Headings</u>.  The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

(e) <u>Governing Law</u>.  This Master Confirmation Agreement and each Transaction confirmed by a Confirmation documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

**Re:**                    **General Terms Confirmation**

Dear Sir or Madam,

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to confirm certain general terms and conditions of Credit Derivative Transactions entered into between us under the Master Credit Derivatives Confirmation Agreement (European and North American) deemed entered into between us ("Master Confirmation Agreement").

This General Terms Confirmation hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions"). In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern each Confirmation (each as defined in the Master Confirmation Agreement) except as expressly modified below.

The general terms of each Transaction to which this General Terms Confirmation relates are as follows, as supplemented by the Transaction Supplement related to such Transaction:

**1.    *General Terms:***

| | |
|---|---|
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Transaction Type: | As shown in the Transaction Supplement, as either European or North American |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |
| Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer") |
| Calculation Agent: | The party that is a Dealer as defined in the Operating Procedures; provided that if both parties are Dealers, Seller. |
| Calculation Agent City: | If the Transaction Type indicated in the Transaction Supplement is: European: London North American: New York |
| Business Day: | If the Floating Rate Payer Calculation Amount indicated in the Transaction Supplement is denominated in: |

> EUR: If the Transaction Type indicated in the Transaction Supplement is (i) European: London and TARGET Settlement Day or (ii) North American: London, New York and TARGET Settlement Day
> USD: London and New York
> GBP: London
> JPY: London and Tokyo
> CHF: London and Zurich

A-1

| | |
|---|---|
| Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day) |
| Reference Entity: | As shown in the Transaction Supplement |
| Reference Obligation(s): | As shown in the Transaction Supplement |
| Reference Price: | 100% |
| All Guarantees: | If the Transaction Type indicated in the Transaction Supplement is: European:  Applicable North American:  Not Applicable |

**2.    *Fixed Payments:***

| | |
|---|---|
| Fixed Rate Payer Calculation Amount: | The Floating Rate Payer Calculation Amount |
| Fixed Rate Payer Payment Dates: | As shown in the Transaction Supplement |
| Fixed Rate: | As shown in the Transaction Supplement |
| Fixed Rate Day Count Fraction: | Actual/360 |

**3.    *Floating Payment:***

| | |
|---|---|
| Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Conditions to Settlement: | • Credit Event Notice |
| | Notifying Parties:    Buyer or Seller |
| | • Notice of Physical Settlement |
| | • Notice of Publicly Available Information:    Applicable |
| Credit Event: | The following Credit Events shall apply to this Transaction: |
| | Bankruptcy |
| | Failure to Pay |
| | Grace Period Extension:    Not Applicable |
| | Payment Requirement:    USD 1,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay |
| | Restructuring: If indicated as applicable in the Transaction Supplement, the following terms shall apply: |
| | Restructuring Maturity    If the Transaction Type |

A-2

<table>
<tr><td>Limitation and Fully Transferable Obligation:</td><td>indicated in the Transaction Supplement is:<br>European:  Not Applicable<br>North American:  Applicable</td></tr>
<tr><td>Modified Restructuring Maturity Limitation and Conditionally Transferable Obligation:</td><td>If the Transaction Type indicated in the Transaction Supplement is:<br>European: Applicable<br>North American: Not Applicable</td></tr>
<tr><td>Default Requirement:</td><td>USD 10,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event</td></tr>
</table>

Obligation(s):

For the purposes of the table below:
**"Yes"** shall mean that the relevant selection is applicable; and
**"No"** shall mean that the relevant selection is not applicable.

| Obligation Categories: (Select only one) | | Obligation Characteristics: (Select all that apply) | |
|---|---|---|---|
| No | Payment | No | Not Subordinated |
| Yes | Borrowed Money | No | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| No | Bond or Loan | No | Listed |
| | | No | Not Domestic Issuance |

## 4. Settlement Terms:

Settlement Method:    Physical Settlement

Settlement Currency:    The currency of denomination of the Floating Rate Payer Calculation Amount

Terms Relating to Physical Settlement:

Physical Settlement Period:    If the Transaction Type indicated in the Transaction Supplement is:
European:  thirty (30) Business Days
North American:  as defined in Section 8.6 of the Credit

A-3

|  | | Derivatives Definitions, but in no event longer than thirty (30) Business Days |
|---|---|---|
| Deliverable Obligations: | | Exclude Accrued Interest |
| Deliverable Obligation Category and Characteristics: | | For the purposes of the table below:<br>**"Yes"** shall mean that the relevant selection is applicable; and<br>**"No"** shall mean that the relevant selection is not applicable. |

| Deliverable Obligation Categories: *(Select only one)* | | Deliverable Obligation Characteristics: *(Select all that apply)* | |
|---|---|---|---|
| No | Payment | Yes | Not Subordinated |
| No | Borrowed Money | Yes | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| Yes | Bond or Loan | No | Listed |
| | | Yes | Not Contingent |
| | | No | Not Domestic Issuance |
| | | Yes | Assignable Loan |
| | | Yes | Consent Required Loan |
| | | No | Direct Loan Participation |
| | | Yes | Transferable |
| | | Yes - 30 years | Maximum Maturity |
| | | No | Accelerated or Matured |
| | | Yes | Not Bearer |

| Partial Cash Settlement of Consent Required Loans: | | Not Applicable |
|---|---|---|
| Partial Cash Settlement of Assignable Loans: | | Not Applicable |
| Partial Cash Settlement of Participations: | | Not Applicable |
| Escrow: | | Applicable |

**5.**      *Additional Provisions:*

(a) If the Transaction Type indicated in the Transaction Supplement is European, notwithstanding Section 1.7 or any provisions of Section 9.9 or Section 9.10 to the contrary, but without prejudice to Section 9.3 and (where applicable) Sections 9.4, 9.5 and 9.6, if the Termination Date has not occurred on or prior to the date that is 60 Business Days following the Physical Settlement Date, such 60th Business Day shall be deemed to be the Termination Date with respect to this Transaction except in relation to any portion of the Transaction (an "Affected Portion") in respect of which:

(1) a valid notice of Buy-in Price has been delivered that is effective fewer than three Business Days prior to such 60th Business Day, in which case the Termination Date for that Affected Portion shall be the third Business Day following the date on which such notice is effective; or

(2) Buyer has purchased but not Delivered Deliverable Obligations validly specified by Seller pursuant to Section 9.10(b), in which case the Termination Date for that Affected Portion shall be the tenth Business Day following the date on which Seller validly specified such Deliverable Obligations to Buyer.

DerivSERV Portal                                                                    Page 1 of 3



| Participant ID: | LEHMAN BROS SPECIAL FINANCING INC. | Counterparty ID: | 00006P49 AIG CDS INC |
|---|---|---|---|
| Master Document Date | 01/01/2001 | Master Document Transaction Type | ISDA2003CreditNorthAmerican |
| Master Agreement Date: | | Master Agreement Type: | |
| Annex Date: | | Documentation Type | |
| Trade Date: | 01/05/2006 | Effective Date: | 01/06/2006 |
| Calculation Agent | | Calculation Agent City: | |
| Scheduled Termination Date: | 03/20/2011 | | |
| Floating Rate Payer (Seller) ID: | 00006P49 AIG CDS INC | Fixed Rate Payer (Buyer) ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. |
| Underlying: | Number: 003CB6 Name: ABITIBI-CONSOLIDATED INC. | | |
| Reference Obligation Number: | US003924AG25 | First Fixed Rate Payer Payment Date: | 03/20/2006 |
| Payment Frequency: | 3 Month(s) | Fixed Rate: | 4.50000000 % |
| Single Payment Amount: | | Single Payment Date: | |
| Single Payment Payer: | | First Payment Period Accrual Start Date | |
| Floating Rate Payer Calculation Amount: | 5,000,000.00 USD | | |
| Independent Amount Payer: | | Independent Amount: | % |
| Restructuring Credit Event: | Y | Addnl Provision Monoline | |
| Excluded Deliverable Obligations: | | | |
| Additional Terms: | N | | |

| **New Transaction - Credit Default Swap - Single Reference Entity -** | | | |
|---|---|---|---|
| Reference Number: | 2855893 | | |
| Counterparty Reference Number: | CA0907282 | | |
| Participant ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Counterparty ID: | 00006131 CITIBANK N.A., NEW YORK |
| Master Document Date | | Master Document Transaction Type | NorthAmericanCorporate |
| Master Agreement Date: | 05/14/1992 | Master Agreement Type: | ISDA |
| Annex Date: | | Documentation Type | CreditDerivativesPhysicalSettlementMatrix |
| Original Trade Date: | 01/05/2006 | Original Effective Date: | 01/06/2006 |
| Novation Trade Date: | 01/30/2007 | Novation Date: | 01/31/2007 |
| Calculation Agent | 00006131 CITIBANK N.A., NEW YORK | Calculation Agent City: | New York |
| Scheduled Termination Date: | 03/20/2011 | | |
| Floating Rate Payer (Seller) ID: | 00006131 CITIBANK N.A., NEW YORK | Fixed Rate Payer (Buyer) ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. |
| Underlying: | Number: 003CB6 Name: ABITIBI-CONSOLIDATED INC. | | |
| Reference Obligation Number: | US003924AG25 | First Fixed Rate Payer Payment Date: | |

DerivSERV Portal                                                                Page 3 of 3

| Payment Frequency: | 3 Month(s) | Fixed Rate: | 4.50000000 % |
|---|---|---|---|
| Single Payment Amount: | | Single Payment Date: | |
| Single Payment Payer: | | First Payment Period Accrual Start Date | |
| Floating Rate Payer Calculation Amount: | 3,500,000.00 USD | | |
| Independent Amount Payer: | | Independent Amount: | % |
| Restructuring Credit Event: | Y | Addnl Provision Monoline | |
| Excluded Deliverable Obligations: | | | |
| Additional Terms: | | | |

<u>< Back</u>

Appendix B-1

## MASTER CREDIT DERIVATIVES
## CONFIRMATION AGREEMENT (EUROPEAN AND NORTH AMERICAN)

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to a Credit Derivative Transaction (a "Transaction") entered into between the parties, the parties will be deemed to have agreed as follows:

1. <u>Credit Derivatives Definitions</u>.    This Master Confirmation Agreement hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions"). Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

2. <u>Confirmation Process</u>.    The parties intend to enter into separate Credit Derivative Transactions with respect to each Reference Entity set out in a Transaction Supplement substantially in the form of the Transaction Record Data Elements set forth in Appendix B to the Operating Procedures (a "Transaction Supplement"). The confirmation applicable to each Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the ISDA Master Agreement most recently entered into between the parties as of the Trade Date of such Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement including the form of General Terms Confirmation attached as Exhibit A to this Appendix B-1 (the "General Terms Confirmation"), as supplemented by the trade details applicable to such Transaction as set forth in the Transaction Supplement.

   In the event of any inconsistency between (i) this Master Confirmation Agreement, including the form of General Terms Confirmation and a Transaction Supplement and/or (ii) the Credit Derivatives Definitions and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Transaction. The Transaction Supplement shall set forth, at a minimum, all of the information set out in the applicable form of Transaction Supplement set forth in Appendix B to the Operating Procedures.

3. <u>Non-Exclusive</u>. The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Transactions in accordance with this Master Confirmation Agreement.

4. <u>Additional Credit Terms</u>. Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

5. <u>Miscellaneous</u>.

(a) <u>Entire Agreement</u>.  This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

(b) <u>Amendments</u>.  An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

(c) <u>Counterparts</u>.  This Master Confirmation Agreement and each Transaction Supplement documented hereunder may be executed in counterparts, each of which will be deemed an original.

(d) <u>Headings</u>.  The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

(e) <u>Governing Law</u>.  This Master Confirmation Agreement and each Transaction confirmed by a Confirmation documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

**Re:**                                **General Terms Confirmation**

Dear Sir or Madam,

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to confirm certain general terms and conditions of Credit Derivative Transactions entered into between us under the Master Credit Derivatives Confirmation Agreement (European and North American) deemed entered into between us ("Master Confirmation Agreement").

This General Terms Confirmation hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions"). In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern each Confirmation (each as defined in the Master Confirmation Agreement) except as expressly modified below.

The general terms of each Transaction to which this General Terms Confirmation relates are as follows, as supplemented by the Transaction Supplement related to such Transaction:

**I.**  *General Terms:*

| | |
|---|---|
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Transaction Type: | As shown in the Transaction Supplement, as either European or North American |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |
| Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer") |
| Calculation Agent: | The party that is a Dealer as defined in the Operating Procedures; provided that if both parties are Dealers, Seller. |
| Calculation Agent City: | If the Transaction Type indicated in the Transaction Supplement is: European: London North American: New York |
| Business Day: | If the Floating Rate Payer Calculation Amount indicated in the Transaction Supplement is denominated in: |

> EUR: If the Transaction Type indicated in the Transaction Supplement is (i) European: London and TARGET Settlement Day or (ii) North American: London, New York and TARGET Settlement Day
> USD: London and New York
> GBP: London
> JPY: London and Tokyo
> CHF: London and Zurich

A-1

| | |
|---|---|
| Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day) |
| Reference Entity: | As shown in the Transaction Supplement |
| Reference Obligation(s): | As shown in the Transaction Supplement |
| Reference Price: | 100% |
| All Guarantees: | If the Transaction Type indicated in the Transaction Supplement is: European:  Applicable North American:  Not Applicable |

**2.    *Fixed Payments:***

| | |
|---|---|
| Fixed Rate Payer Calculation Amount: | The Floating Rate Payer Calculation Amount |
| Fixed Rate Payer Payment Dates: | As shown in the Transaction Supplement |
| Fixed Rate: | As shown in the Transaction Supplement |
| Fixed Rate Day Count Fraction: | Actual/360 |

**3.    *Floating Payment:***

| | |
|---|---|
| Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Conditions to Settlement: | • Credit Event Notice |

|  |  |  |
|---|---|---|
| | Notifying Parties: | Buyer or Seller |

- Notice of Physical Settlement

| | |
|---|---|
| • Notice of Publicly Available Information: | Applicable |

| | |
|---|---|
| Credit Event: | The following Credit Events shall apply to this Transaction: |
| | Bankruptcy |
| | Failure to Pay |

| | |
|---|---|
| Grace Period Extension: | Not Applicable |
| Payment Requirement: | USD 1,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay |

Restructuring: If indicated as applicable in the Transaction Supplement, the following terms shall apply:

| | |
|---|---|
| Restructuring Maturity | If the Transaction Type |

A-2

| | |
|---|---|
| Limitation and Fully Transferable Obligation: | indicated in the Transaction Supplement is: European:  Not Applicable North American:  Applicable |
| Modified Restructuring Maturity Limitation and Conditionally Transferable Obligation: | If the Transaction Type indicated in the Transaction Supplement is: European: Applicable North American: Not Applicable |
| Default Requirement: | USD 10,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event |

Obligation(s):

For the purposes of the table below:
**"Yes"** shall mean that the relevant selection is applicable; and
**"No"** shall mean that the relevant selection is not applicable.

| Obligation Categories: (Select only one) | | Obligation Characteristics: (Select all that apply) | |
|---|---|---|---|
| No | Payment | No | Not Subordinated |
| Yes | Borrowed Money | No | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| No | Bond or Loan | No | Listed |
| | | No | Not Domestic Issuance |

## 4.    *Settlement Terms:*

Settlement Method:

Physical Settlement

Settlement Currency:

The currency of denomination of the Floating Rate Payer Calculation Amount

Terms Relating to Physical Settlement:

Physical Settlement Period:

If the Transaction Type indicated in the Transaction Supplement is:
European:  thirty (30) Business Days
North American:  as defined in Section 8.6 of the Credit

|                                                        |                                                                                                                                                                                     |
| ------------------------------------------------------ | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                                                        | Derivatives Definitions, but in no event longer than thirty (30) Business Days                                                                                                       |
| Deliverable Obligations:                               | Exclude Accrued Interest                                                                                                                                                             |
| Deliverable Obligation Category and Characteristics:   | For the purposes of the table below: **"Yes"** shall mean that the relevant selection is applicable; and **"No"** shall mean that the relevant selection is not applicable.          |

| Deliverable Obligation Categories: *(Select only one)* | | Deliverable Obligation Characteristics: *(Select all that apply)* | |
| --- | --- | --- | --- |
| No | Payment | Yes | Not Subordinated |
| No | Borrowed Money | Yes | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| Yes | Bond or Loan | No | Listed |
|  |  | Yes | Not Contingent |
|  |  | No | Not Domestic Issuance |
|  |  | Yes | Assignable Loan |
|  |  | Yes | Consent Required Loan |
|  |  | No | Direct Loan Participation |
|  |  | Yes | Transferable |
|  |  | Yes - 30 years | Maximum Maturity |
|  |  | No | Accelerated or Matured |
|  |  | Yes | Not Bearer |

| | |
| --- | --- |
| Partial Cash Settlement of Consent Required Loans: | Not Applicable |
| Partial Cash Settlement of Assignable Loans: | Not Applicable |
| Partial Cash Settlement of Participations: | Not Applicable |
| Escrow: | Applicable |

A-4

**5.**      *Additional Provisions:*

(a) If the Transaction Type indicated in the Transaction Supplement is European, notwithstanding Section 1.7 or any provisions of Section 9.9 or Section 9.10 to the contrary, but without prejudice to Section 9.3 and (where applicable) Sections 9.4, 9.5 and 9.6, if the Termination Date has not occurred on or prior to the date that is 60 Business Days following the Physical Settlement Date, such 60th Business Day shall be deemed to be the Termination Date with respect to this Transaction except in relation to any portion of the Transaction (an "Affected Portion") in respect of which:

(1) a valid notice of Buy-in Price has been delivered that is effective fewer than three Business Days prior to such 60th Business Day, in which case the Termination Date for that Affected Portion shall be the third Business Day following the date on which such notice is effective; or

(2) Buyer has purchased but not Delivered Deliverable Obligations validly specified by Seller pursuant to Section 9.10(b), in which case the Termination Date for that Affected Portion shall be the tenth Business Day following the date on which Seller validly specified such Deliverable Obligations to Buyer.




Admin


Logout



| Credit | Back to Dashboard |
|---|---|

| Search | Reports | Download | Web User Guide | Contact Us | © 2005 DTCC DerivSERV LLC a subsidiary of DTCC |

## Current State Contract          Production-Trade Warehouse     06/17/2009 03:06 PM

< Back

| Trade Warehouse Summary | | | 3,000,000.00 USD | Uncertain |
|---|---|---|---|---|
| Warehouse Status: | Uncertain | Status Reason (for uncertain): | Unconfirm Event Exists | |
| DTCC TRI: | 20070518.0001356452 | Warehouse Push Type: | Automatic | |
| Current State Notional: | 3,000,000.00 USD | Notional As Of Date: | 05/18/2007 | |
| Calc Flag | Y-Auto | | | |

**Credit Default Swap - Single Reference Entity -**

| | | | |
|---|---|---|---|
| **Trade Status:** | Current-State | **Trade Submission Date and Time:** | 12/08/2008 09:35:11 |
| **Trade Confirmation Date:** | | | |
| **Reference Number:** | 3060219 | | |
| **Counterparty Reference Number:** | SPS103YT | | |
| **Participant ID:** | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | **Counterparty ID:** | 00006P49 AIG CDS INC |
| Master Document Date | 01/01/2001 | Master Document Transaction Type | ISDA2003CreditNorthAmerican |
| Master Agreement Date: | | Master Agreement Type: | |
| **Annex Date:** | | Documentation Type | |
| **Trade Date:** | 05/17/2007 | **Effective Date:** | 05/18/2007 |
| Calculation Agent | | Calculation Agent City: | |
| **Scheduled Termination Date:** | 06/20/2012 | | |
| **Floating Rate Payer (Seller) ID:** | 00006P49 AIG CDS INC | **Fixed Rate Payer (Buyer) ID:** | 00006171 LEHMAN BROS SPECIAL FINANCING INC. |
| Underlying: | Number: Name: STATION CASINOS INC | | |
| **Reference Obligation Number:** | US857689AR42 | **First Fixed Rate Payer Payment Date:** | 06/20/2007 |
| **Payment Frequency:** | 3 Month(s) | **Fixed Rate:** | 2.15000000 % |
| **Single Payment Amount:** | | **Single Payment Date:** | |
| Single Payment Payer: | | First Payment Period Accrual Start Date | |
| **Floating Rate Payer Calculation Amount:** | 3,000,000.00 USD | | |
| Independent Amount Payer: | | Independent Amount: | % |
| Restructuring Credit Event: | N | Addnl Provision Monoline | |

| Excluded Deliverable Obligations: | |
|---|---|
| Additional Terms: | N |

< **Back**

Appendix B-1

MASTER CREDIT DERIVATIVES
CONFIRMATION AGREEMENT (EUROPEAN AND NORTH AMERICAN)

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to a Credit Derivative Transaction (a "Transaction") entered into between the parties, the parties will be deemed to have agreed as follows:

1. <u>Credit Derivatives Definitions</u>.    This Master Confirmation Agreement hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions").  Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

2. <u>Confirmation Process</u>.  The parties intend to enter into separate Credit Derivative Transactions with respect to each Reference Entity set out in a Transaction Supplement substantially in the form of the Transaction Record Data Elements set forth in Appendix B to the Operating Procedures (a "Transaction Supplement"). The confirmation applicable to each Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the ISDA Master Agreement most recently entered into between the parties as of the Trade Date of such Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement including the form of General Terms Confirmation attached as Exhibit A to this Appendix B-1 (the "General Terms Confirmation"), as supplemented by the trade details applicable to such Transaction as set forth in the Transaction Supplement.

In the event of any inconsistency between (i) this Master Confirmation Agreement, including the form of General Terms Confirmation and a Transaction Supplement and/or (ii) the Credit Derivatives Definitions and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Transaction. The Transaction Supplement shall set forth, at a minimum, all of the information set out in the applicable form of Transaction Supplement set forth in Appendix B to the Operating Procedures.

3. <u>Non-Exclusive</u>. The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Transactions in accordance with this Master Confirmation Agreement.

4. <u>Additional Credit Terms</u>. Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

5. <u>Miscellaneous</u>.

(a) <u>Entire Agreement</u>.  This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

(b) <u>Amendments</u>.  An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

(c) <u>Counterparts</u>.  This Master Confirmation Agreement and each Transaction Supplement documented hereunder may be executed in counterparts, each of which will be deemed an original.

(d) <u>Headings</u>.  The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

(e) <u>Governing Law</u>.  This Master Confirmation Agreement and each Transaction confirmed by a Confirmation documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

**Re:**                            **General Terms Confirmation**

Dear Sir or Madam,

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to confirm certain general terms and conditions of Credit Derivative Transactions entered into between us under the Master Credit Derivatives Confirmation Agreement (European and North American) deemed entered into between us ("Master Confirmation Agreement").

This General Terms Confirmation hereby incorporates by reference the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions (together, the "Credit Derivatives Definitions"). In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern each Confirmation (each as defined in the Master Confirmation Agreement) except as expressly modified below.

The general terms of each Transaction to which this General Terms Confirmation relates are as follows, as supplemented by the Transaction Supplement related to such Transaction:

**1.    *General Terms:***

| | |
|---|---|
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Transaction Type: | As shown in the Transaction Supplement, as either European or North American |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |
| Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer") |
| Calculation Agent: | The party that is a Dealer as defined in the Operating Procedures; provided that if both parties are Dealers, Seller. |
| Calculation Agent City: | If the Transaction Type indicated in the Transaction Supplement is: European: London North American: New York |
| Business Day: | If the Floating Rate Payer Calculation Amount indicated in the Transaction Supplement is denominated in: |

> EUR: If the Transaction Type indicated in the Transaction Supplement is (i) European: London and TARGET Settlement Day or (ii) North American: London, New York and TARGET Settlement Day
> USD: London and New York
> GBP: London
> JPY: London and Tokyo
> CHF: London and Zurich

A-1

| | |
|---|---|
| Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day) |
| Reference Entity: | As shown in the Transaction Supplement |
| Reference Obligation(s): | As shown in the Transaction Supplement |
| Reference Price: | 100% |
| All Guarantees: | If the Transaction Type indicated in the Transaction Supplement is: European: Applicable North American: Not Applicable |

**2.    *Fixed Payments:***

| | |
|---|---|
| Fixed Rate Payer Calculation Amount: | The Floating Rate Payer Calculation Amount |
| Fixed Rate Payer Payment Dates: | As shown in the Transaction Supplement |
| Fixed Rate: | As shown in the Transaction Supplement |
| Fixed Rate Day Count Fraction: | Actual/360 |

**3.    *Floating Payment:***

| | |
|---|---|
| Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Conditions to Settlement: | • Credit Event Notice |

|  |  |  |
|---|---|---|
| | Notifying Parties: | Buyer or Seller |

• Notice of Physical Settlement

|  |  |  |
|---|---|---|
| | • Notice of Publicly Available Information: | Applicable |

| | |
|---|---|
| Credit Event: | The following Credit Events shall apply to this Transaction: |
| | Bankruptcy |
| | Failure to Pay |

|  |  |  |
|---|---|---|
| | Grace Period Extension: | Not Applicable |
| | Payment Requirement: | USD 1,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay |

Restructuring: If indicated as applicable in the Transaction Supplement, the following terms shall apply:

|  |  |
|---|---|
| Restructuring Maturity | If the Transaction Type |

A-2

| | |
|---|---|
| Limitation and Fully Transferable Obligation: | indicated in the Transaction Supplement is:<br>European:  Not Applicable<br>North American:  Applicable |
| Modified Restructuring Maturity Limitation and Conditionally Transferable Obligation: | If the Transaction Type indicated in the Transaction Supplement is:<br>European: Applicable<br>North American: Not Applicable |
| Default Requirement: | USD 10,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event |

Obligation(s):

For the purposes of the table below:
**"Yes"** shall mean that the relevant selection is applicable; and
**"No"** shall mean that the relevant selection is not applicable.

| Obligation Categories: (Select only one) | | Obligation Characteristics: (Select all that apply) | |
|---|---|---|---|
| No | Payment | No | Not Subordinated |
| Yes | Borrowed Money | No | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| No | Bond or Loan | No | Listed |
| | | No | Not Domestic Issuance |

4.    *Settlement Terms:*

Settlement Method:

Physical Settlement

Settlement Currency:

The currency of denomination of the Floating Rate Payer Calculation Amount

Terms Relating to Physical Settlement:

Physical Settlement Period:

If the Transaction Type indicated in the Transaction Supplement is:
European:  thirty (30) Business Days
North American:  as defined in Section 8.6 of the Credit

|                                          |                                                                                                                                                       |
|------------------------------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------|
|                                          | Derivatives Definitions, but in no event longer than thirty (30) Business Days                                                                         |
| Deliverable Obligations:                 | Exclude Accrued Interest                                                                                                                               |
| Deliverable Obligation Category and Characteristics: | For the purposes of the table below:<br>**"Yes"** shall mean that the relevant selection is applicable; and<br>**"No"** shall mean that the relevant selection is not applicable. |

| Deliverable Obligation Categories: *(Select only one)* | | Deliverable Obligation Characteristics: *(Select all that apply)* | |
|------------|------------------------|---------------|----------------------------------------------------|
| No | Payment | Yes | Not Subordinated |
| No | Borrowed Money | Yes | Specified Currency – Standard Specified Currencies |
| No | Reference Obligation(s) Only | No | Not Sovereign Lender |
| No | Bond | No | Not Domestic Currency |
| No | Loan | No | Not Domestic Law |
| Yes | Bond or Loan | No | Listed |
| | | Yes | Not Contingent |
| | | No | Not Domestic Issuance |
| | | Yes | Assignable Loan |
| | | Yes | Consent Required Loan |
| | | No | Direct Loan Participation |
| | | Yes | Transferable |
| | | Yes - 30 years | Maximum Maturity |
| | | No | Accelerated or Matured |
| | | Yes | Not Bearer |

|                                                  |                |
|--------------------------------------------------|----------------|
| Partial Cash Settlement of Consent Required Loans: | Not Applicable |
| Partial Cash Settlement of Assignable Loans:       | Not Applicable |
| Partial Cash Settlement of Participations:          | Not Applicable |
| Escrow:                                           | Applicable     |

A-4

5.    *Additional Provisions:*

(a) If the Transaction Type indicated in the Transaction Supplement is European, notwithstanding Section 1.7 or any provisions of Section 9.9 or Section 9.10 to the contrary, but without prejudice to Section 9.3 and (where applicable) Sections 9.4, 9.5 and 9.6, if the Termination Date has not occurred on or prior to the date that is 60 Business Days following the Physical Settlement Date, such 60th Business Day shall be deemed to be the Termination Date with respect to this Transaction except in relation to any portion of the Transaction (an "Affected Portion") in respect of which:

(1) a valid notice of Buy-in Price has been delivered that is effective fewer than three Business Days prior to such 60th Business Day, in which case the Termination Date for that Affected Portion shall be the third Business Day following the date on which such notice is effective; or

(2) Buyer has purchased but not Delivered Deliverable Obligations validly specified by Seller pursuant to Section 9.10(b), in which case the Termination Date for that Affected Portion shall be the tenth Business Day following the date on which Seller validly specified such Deliverable Obligations to Buyer.

DerivSERV Portal

Page 1 of 1

 **DTCC Deriv/SERV**

 Admin |  Logout     **DTCC**

## Credit

| Search | Transaction Forms | Reports | Uploads | Download | Web User Guide | Contact Us | © 2005 DTCC Der |

### View

### Production-Trade Warehouse

| Trade Warehouse Summary | | | 10,000,000.0 |
|---|---|---|---|
| **Credit Default Swap - Indices** | | | |
| Trade Status: | Confirmed | Trade Submission Date and Time: | 10/04/2007 12:4! |
| Trade Confirmation Date: | 10/04/2007 | | |
| Reference Number: | 3368013 | | |
| Counterparty Reference Number: | SPT1044A | | |
| Participant ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Counterparty ID: | 00006P49 AIG CDS INC |
| **Documentation Type** | | | |
| Annex Date: | | | |
| Master Documentation Date: | 01/01/2001 | Master Documentation Transaction Type: | 2003CreditIndex |
| Master Agreement Type: | | Master Agreement Date: | |
| Trade Date: | 09/20/2007 | Effective Date: | 03/21/2007 |
| Calculation Agent | | Calculation Agent City: | |
| Scheduled Termination Date: | 06/20/2012 | | |
| Floating Rate Payer (Seller) ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Fixed Rate Payer (Buyer) ID: | 00006P49 AIG CDS INC |
| Index Name: | Number: 2I65BYAM7 **Name:** CDX.NA.IG.8 | | |
| Fixed Rate: | 0.35000000 % | Notional Amount: | 10,000,000.00 U |
| Independent Amount Payer: | | Independent Amount: | % |
| Initial Payment Payer: | 00006P49 AIG CDS INC | Initial Payment Amount: | 217,710.42 USD |
| Additional Terms: | N | | |
| **Workflow Fields** | | | |
| **Counterparty Workflow Fields** | | | |
| **Cashflow Schedule** | | | |

Select Action For This Reference N

→ Contact Us    ⬆ Importa

Appendix C-1

CDX MASTER CREDIT DERIVATIVES
CONFIRMATION AGREEMENT

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to Credit Derivative Transactions relating to CDX indices (each, a "Master Transaction"), the parties will be deemed to have agreed as follows:

1.    **CREDIT DERIVATIVE DEFINITIONS**

This Master Confirmation Agreement hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions"). Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

2.    **CONFIRMATION PROCESS**

The parties intend to enter into one or more separate Master Transactions relating to a CDX index, as specified in the relevant Transaction Supplement (a "Transaction Supplement") substantially in the form of the Transaction Record Data Elements set forth in Appendix C of the Operating Procedures. The parties agree that, each time they enter into a Master Transaction under this Master Confirmation Agreement, they enter into a separate and independent Credit Derivative Transaction (a "Component Transaction") in respect of each Reference Entity listed in the Relevant Annex (as defined in the General Terms Confirmation defined below). Each Component Transaction shall have the terms specified in the General Terms Confirmation attached as Exhibit A to this Appendix C-1 (the "General Terms Confirmation"). The confirmation applicable to each Master Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the applicable ISDA Master Agreement and Schedule thereto most recently entered into between the parties as of the Trade Date for the Master Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement, including the General Terms Confirmation, as supplemented by the trade details applicable to such Master Transaction as set forth in the relevant Transaction Supplement.

In the event of any inconsistency between the Credit Derivatives Definitions and this Master Confirmation Agreement (including the General Terms Confirmation and the relevant Transaction Supplement), this Master Confirmation Agreement shall govern for the purpose of the relevant Master Transaction.

In the event of any inconsistency between this Master Confirmation Agreement (including the General Terms Confirmation) and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Master Transaction. The Transaction Supplement shall set forth, at a minimum, all of the relevant information set out in the form of Transaction Supplement set forth in Appendix C to the Operating Procedures.

3. **RELATIONSHIP OF TRANSACTIONS**

Subject to Paragraph 6.5 of the General Terms Confirmation, each Component Transaction (a) constitutes a separate and independent Credit Derivative Transaction between the parties with respect to one of the Reference Entities listed in the Relevant Annex, (b) shall not be affected by any other Credit Derivative Transaction between the parties and (c) shall operate independently of each other Component Transaction in all respects.

4. **NON-EXCLUSIVE**

The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Credit Derivative Transactions in accordance with this Master Confirmation Agreement.

5. **ADDITIONAL CREDIT TERMS**

Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

6. **MISCELLANEOUS**

6.1 **Entire Agreement**

This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

6.2 **Amendments**

An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

6.3 **Counterparts**

This Master Confirmation Agreement, each Transaction Supplement documented hereunder and any amendment thereto may be executed in counterparts, each of which will be deemed an original.

6.4 **Headings**

The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

6.5 **Governing Law**

This Master Confirmation Agreement and each Master Transaction documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

## GENERAL TERMS CONFIRMATION

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to set forth the general terms and conditions of the Credit Derivative Transaction (a "Component Transaction") entered into between Buyer and Seller (each as defined below). This General Terms Confirmation, together with the CDX Master Credit Derivatives Confirmation Agreement (the "Master Confirmation Agreement") deemed entered into between Buyer and Seller and the relevant Transaction Supplement, constitutes a "Confirmation" as referred to in the Master Agreement (as defined in the Master Confirmation Agreement). A General Terms Confirmation in the form of this General Terms Confirmation shall be deemed to be entered into in respect of each Component Transaction in respect of each of the Reference Entities listed in the Relevant Annex (as defined below), provided that if, in respect of a Reference Entity, a Succession Event occurs or has occurred on or following the earlier of the Effective Date and the Trade Date, the provisions of Section 2.2 of the Credit Derivatives Definitions shall apply in respect of such Reference Entity.

This General Terms Confirmation hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions"). In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern the Component Transaction to which this General Terms Confirmation relates, except as expressly modified below.

The terms of the Component Transaction to which this General Terms Confirmation relates, as supplemented by the related Transaction Supplement, are as follows:

## 1.    GENERAL TERMS

| | |
|---|---|
| Index: | The Index Name, as shown in the Transaction Supplement |
| Index Sponsor: | CDS IndexCo LLC |
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Aggregate Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |

Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer")

Reference Entity: | Subject to Paragraph 6.4 below, the applicable Reference Entity contained in the Index and listed in the Relevant Annex, and any Successor.

Excluded Reference Entities: | None

Reference Obligation(s): | The Reference Obligation (if any) specified in the Index and set out opposite the Reference Entity in the Relevant Annex, subject to Paragraph 6.4 below, Sections 2.2(d) and 2.30 of the Credit Derivatives Definitions and the following paragraph:

If the Index Sponsor publishes a replacement Reference Obligation for a Reference Entity or one or more Reference Obligations for a Reference Entity in connection with a Succession Event, the Calculation Agent shall select such Reference Obligation(s) as the Reference Obligation(s) hereunder for such Reference Entity in lieu of applying the provisions of Sections 2.2(d) or 2.30 of the Credit Derivatives Definitions.

Calculation Agent: | The party that is a Dealer (as defined in the Operating Procedures); provided that if both parties are Dealers, Seller.

Calculation Agent City: | New York

Business Days: | If the Aggregate Floating Rate Payer Calculation Amount is denominated in:

USD: New York and London

EUR: London and TARGET Settlement Day

Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day)

Relevant Annex: | In the Transaction Supplement, the parties shall identify the "Index Name" and the "Annex Date".

A-2

The Relevant Annex shall be the list for the relevant Index with the relevant Annex Date, as published by the Index Publisher (which can be accessed currently at http://www.markit.com). "Index Publisher" means Markit Group Limited or any replacement therefor appointed by the Index Sponsor for purposes of officially publishing the relevant Index.

All Guarantees:                    Not Applicable

Reference Price:                   100%

## 2.    INITIAL PAYMENT

Initial Payment:                   With respect to the Master Transaction to which the Component Transaction relates, on the date that is three Business Days following the Trade Date, the Initial Payment Payer shall pay to the other party an aggregate amount equal to the Initial Payment Amount.

Initial Payment Payer:             As shown in the Transaction Supplement

Initial Payment Amount:            As shown in the Transaction Supplement

## 3.    FIXED PAYMENTS

Fixed Rate Payer Calculation Amount:    The Floating Rate Payer Calculation Amount

Fixed Rate Payer Payment Dates:    Each March 20, June 20, September 20 and December 20 in each year

Fixed Rate Payer Calculation Period:    Each period from, and including, one Fixed Rate Payer Payment Date to, but excluding, the next following Fixed Rate Payer Payment Date, except that (a) the initial Fixed Rate Payer Calculation Period will commence on, and include, the later of the Effective Date and the Fixed Rate Payer Payment Date falling on or immediately prior to the calendar day immediately following the Trade Date and (b) the final Fixed Rate Payer Calculation Period will end on, and include, the earlier to occur of the Scheduled Termination Date and the Event Determination Date.

Fixed Rate:                        As shown in the Transaction Supplement

A-3

Fixed Rate Day Count Fraction:    Actual/360

4.    **FLOATING PAYMENT**

Floating Rate Payer Calculation
Amount:    An amount equal to (a) the Reference Entity Weighting <u>multiplied</u> <u>by</u> (b) the Aggregate Floating Rate Payer Calculation Amount

Reference Entity Weighting:    The percentage set out opposite the Reference Entity in the Relevant Annex, <u>provided</u> that the Reference Entity Weighting in respect of an Excluded Reference Entity shall be deemed to be zero

Excluded Reference Entity:    As shown in the Transaction Supplement

Conditions to Settlement:    Credit Event Notice

    Notifying Party:  Buyer or Seller

Notice of Physical Settlement

Notice of Publicly Available Information: Applicable

Credit Events:    The following Credit Event(s) shall apply:

Bankruptcy

Failure to Pay

    Grace Period Extension: Not Applicable

    Payment Requirement: USD 1,000,000 (or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay)

Obligation(s):

| Obligation Category | Obligation Characteristics |
| --- | --- |
| Borrowed Money | None |

Excluded Obligations:    None

A-4

5.    **SETTLEMENT TERMS**

| | |
|---|---|
| Settlement Method: | Physical Settlement |
| Settlement Currency: | The currency of denomination of the Floating Rate Payer Calculation Amount |

*Terms Relating to Physical Settlement:*

| | |
|---|---|
| Physical Settlement Period: | As defined in Section 8.6 of the Credit Derivatives Definitions, <u>provided</u> that such period shall not exceed 30 Business Days |
| Deliverable Obligations: | Exclude Accrued Interest |

Deliverable Obligation(s):

| *Deliverable Obligation Category* | *Deliverable Obligation Characteristics* |
|---|---|
| Bond or Loan | Not Subordinated<br><br>Specified Currency:<br><br>      Standard Specified Currencies<br><br>Not Contingent<br><br>Assignable Loan<br><br>Consent Required Loan<br><br>Transferable<br><br>Maximum Maturity:  30 years<br><br>Not Bearer |

| | |
|---|---|
| Excluded Deliverable Obligations: | None |
| Partial Cash Settlement of Consent Required Loans: | Not Applicable |
| Partial Cash Settlement of Assignable Loans: | Not Applicable |
| Partial Cash Settlement of Participations: | Not Applicable |
| Escrow: | Applicable |

6.      **ADDITIONAL PROVISIONS**

6.1    **Disclaimers**

(a)     CDX™ is a service mark of the Index Sponsor and has been licensed for use in connection with the Master Transaction. Dow Jones® is a service mark of Dow Jones & Company, Inc. ("Dow Jones") and, with respect to a Master Transaction relating to an Index with an Effective Date prior to March 20, 2007 (a "Prior Index Master Transaction"), has been licensed for use in connection with the Master Transaction.

(b)     The Index referenced herein is the property of the Index Sponsor and has been licensed for use in connection with the transaction hereunder. Each party acknowledges and agrees that the transaction hereunder is not sponsored, endorsed or promoted by Dow Jones, the Index Sponsor or any members of the Index Sponsor (the Index Sponsor, together with its members and, with respect to any Prior Index Master Transaction only, Dow Jones, the "Index Parties"). The Index Parties make no representation whatsoever, whether express or implied, and hereby expressly disclaim all warranties (including, without limitation, those of merchantability or fitness for a particular purpose or use), with respect to the Index or any data included therein or relating thereto, and in particular disclaim any warranty either as to the quality, accuracy and/or completeness of the Index or any data included therein, the results obtained from the use of the Index, the composition of the Index at any particular time on any particular date or otherwise, and/or the creditworthiness of, or likelihood of the occurrence of a Credit Event with respect to, any entity in the Index at any particular time on any particular date or otherwise. The Index Parties shall not be liable (whether in negligence or otherwise) to the parties or any other person for any error in the Index, and the Index Parties are under no obligation to advise the parties or any person of any error therein. The Index Parties make no representation whatsoever, whether express or implied, as to the advisability of entering into the transaction hereunder, the ability of the Index to track relevant markets' performances, or otherwise relating to the Index or any transaction or product with respect thereto, or of assuming any risks in connection therewith. The Index Parties have no obligation to take the needs of any party into consideration in determining, composing or calculating the Index. Neither party to this transaction, nor any Index Party, shall have any liability to any party for any act or failure to act by the Index Parties in connection with the determination, adjustment, calculation or maintenance of the Index. Although the Calculation Agent will obtain information concerning the Index from sources it believes reliable, it will not independently verify this information. Accordingly, no representation, warranty or undertaking (express or implied) is made, and no responsibility is accepted by either party, its Affiliates or the Calculation Agent, as to the accuracy, completeness or timeliness of information concerning the Index. Each party acknowledges that the other party or one of its Affiliates may be, or may be affiliated with, an Index Party and, as such, may be able to affect or influence the determination, adjustment or maintenance of the Index. For purposes of Sections 9.1(b)(iii) and (iv) of the Credit Derivatives Definitions, references to "each party" therein shall be deemed to include each Index Party.

**6.2    Monoline Insurer as Reference Entity**

The "Additional Provisions for Physically Settled Default Swaps – Monoline Insurer as Reference Entity", published on January 21, 2005, are incorporated by reference herein and shall be applicable to each Reference Entity that is identified as a "monoline" in the Index and for which the monoline provisions are specified as "Applicable" in the Relevant Annex.

**6.3    Merger of Reference Entity and Seller**

Section 2.31 of the Credit Derivatives Definitions is deleted in its entirety for the purposes of the Component Transaction to which this General Terms Confirmation relates.

**6.4    Inconsistency between Relevant Annex and Index**

In the event of any inconsistency between the Relevant Annex and the corresponding Index published by the Index Sponsor, the Relevant Annex shall govern.

**6.5    Transfer and Termination of Component Transactions**

(a)    Without prejudice to the generality of Section 7 of the Master Agreement and subject to paragraph (b) below, the Component Transaction (or any part thereof) to which this General Terms Confirmation relates may only be transferred (by way of assignment, novation or otherwise) or terminated prior to the Scheduled Termination Date together with an equal part of each other Component Transaction forming part of the Master Transaction of which it forms a part.

(b)    Upon the occurrence of an Event Determination Date in respect of the Component Transaction (the "Isolated Transaction") to which this General Terms Confirmation relates, the Isolated Transaction shall cease to constitute a Component Transaction for the purposes of (a) above and upon satisfaction of the Conditions to Settlement in respect of the Isolated Transaction, the Isolated Transaction will be settled in accordance with its terms.  Unless the parties expressly agree otherwise, a transfer (by way of assignment, novation or otherwise) or termination (other than, where applicable, pursuant to the designation of an Early Termination Date) of the Master Transaction shall not include the Isolated Transaction.

DerivSERV Portal                                                                 Page 1 of 1

 **DTCC Deriv/SERV**

 Admin |  Logout        DTCC

## Credit

| Search | Transaction Forms | Reports | Uploads | Download | Web User Guide | Contact Us | © 2005 DTCC Der |

**View**                                          **Production-Trade Warehouse**

| Trade Warehouse Summary | | 8,000,000.0 |
|---|---|---|

**Credit Default Swap - Indices**

| Trade Status: | Confirmed | Trade Submission Date and Time: | 03/06/2008 08:3( |
|---|---|---|---|
| Trade Confirmation Date: | 03/06/2008 | | |
| Reference Number: | 3693922 | | |
| Counterparty Reference Number: | F1ZO4-SN-PQK | | |
| Participant ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Counterparty ID: | 00006P49 AIG CDS INC |
| Documentation Type | | | |
| Annex Date: | 09/20/2007 | | |
| Master Documentation Date: | 01/01/2001 | Master Documentation Transaction Type: | 2003CreditIndex |
| Master Agreement Type: | | Master Agreement Date: | |
| Trade Date: | 03/05/2008 | Effective Date: | 09/21/2007 |
| Calculation Agent | | Calculation Agent City: | |
| Scheduled Termination Date: | 12/20/2012 | | |
| Floating Rate Payer (Seller) ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Fixed Rate Payer (Buyer) ID: | 00006P49 AIG CDS INC |
| Index Name: | Number: 2I65BYAN5 **Name:** CDX.NA.IG.9 | | |
| Fixed Rate: | 0.60000000 % | Notional Amount: | 8,000,000.00 US |
| Independent Amount Payer: | | Independent Amount: | % |
| Initial Payment Payer: | 00006P49 AIG CDS INC | Initial Payment Amount: | 347,830.00 USD |
| Additional Terms: | N | | |

| Workflow Fields |
|---|
| Counterparty Workflow Fields |
| Cashflow Schedule |
| Event Summary |

Select Action For This Reference N

 →Contact Us   ◆Importa

## CDX MASTER CREDIT DERIVATIVES
## CONFIRMATION AGREEMENT

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to Credit Derivative Transactions relating to CDX indices (each, a "Master Transaction"), the parties will be deemed to have agreed as follows:

**1.    CREDIT DERIVATIVE DEFINITIONS**

This Master Confirmation Agreement hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions"). Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

**2.    CONFIRMATION PROCESS**

The parties intend to enter into one or more separate Master Transactions relating to a CDX index, as specified in the relevant Transaction Supplement (a "Transaction Supplement") substantially in the form of the Transaction Record Data Elements set forth in Appendix C of the Operating Procedures. The parties agree that, each time they enter into a Master Transaction under this Master Confirmation Agreement, they enter into a separate and independent Credit Derivative Transaction (a "Component Transaction") in respect of each Reference Entity listed in the Relevant Annex (as defined in the General Terms Confirmation defined below). Each Component Transaction shall have the terms specified in the General Terms Confirmation attached as Exhibit A to this Appendix C-1 (the "General Terms Confirmation"). The confirmation applicable to each Master Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the applicable ISDA Master Agreement and Schedule thereto most recently entered into between the parties as of the Trade Date for the Master Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement, including the General Terms Confirmation, as supplemented by the trade details applicable to such Master Transaction as set forth in the relevant Transaction Supplement.

In the event of any inconsistency between the Credit Derivatives Definitions and this Master Confirmation Agreement (including the General Terms Confirmation and the relevant Transaction Supplement), this Master Confirmation Agreement shall govern for the purpose of the relevant Master Transaction.

In the event of any inconsistency between this Master Confirmation Agreement (including the General Terms Confirmation) and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Master Transaction. The Transaction Supplement shall set forth, at a minimum, all of the relevant information set out in the form of Transaction Supplement set forth in Appendix C to the Operating Procedures.

3.    **RELATIONSHIP OF TRANSACTIONS**

Subject to Paragraph 6.5 of the General Terms Confirmation, each Component Transaction (a) constitutes a separate and independent Credit Derivative Transaction between the parties with respect to one of the Reference Entities listed in the Relevant Annex, (b) shall not be affected by any other Credit Derivative Transaction between the parties and (c) shall operate independently of each other Component Transaction in all respects.

4.    **NON-EXCLUSIVE**

The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Credit Derivative Transactions in accordance with this Master Confirmation Agreement.

5.    **ADDITIONAL CREDIT TERMS**

Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

6.    **MISCELLANEOUS**

6.1    **Entire Agreement**

This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

6.2    **Amendments**

An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

6.3    **Counterparts**

This Master Confirmation Agreement, each Transaction Supplement documented hereunder and any amendment thereto may be executed in counterparts, each of which will be deemed an original.

6.4    **Headings**

The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

6.5    **Governing Law**

This Master Confirmation Agreement and each Master Transaction documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

## GENERAL TERMS CONFIRMATION

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to set forth the general terms and conditions of the Credit Derivative Transaction (a "Component Transaction") entered into between Buyer and Seller (each as defined below).  This General Terms Confirmation, together with the CDX Master Credit Derivatives Confirmation Agreement (the "Master Confirmation Agreement") deemed entered into between Buyer and Seller and the relevant Transaction Supplement, constitutes a "Confirmation" as referred to in the Master Agreement (as defined in the Master Confirmation Agreement).  A General Terms Confirmation in the form of this General Terms Confirmation shall be deemed to be entered into in respect of each Component Transaction in respect of each of the Reference Entities listed in the Relevant Annex (as defined below), provided that if, in respect of a Reference Entity, a Succession Event occurs or has occurred on or following the earlier of the Effective Date and the Trade Date, the provisions of Section 2.2 of the Credit Derivatives Definitions shall apply in respect of such Reference Entity.

This General Terms Confirmation hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions").  In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern the Component Transaction to which this General Terms Confirmation relates, except as expressly modified below.

The terms of the Component Transaction to which this General Terms Confirmation relates, as supplemented by the related Transaction Supplement, are as follows:

1.    **GENERAL TERMS**

| | |
|---|---|
| Index: | The Index Name, as shown in the Transaction Supplement |
| Index Sponsor: | CDS IndexCo LLC |
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Aggregate Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |

A-1

| | |
|---|---|
| Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer") |
| Reference Entity: | Subject to Paragraph 6.4 below, the applicable Reference Entity contained in the Index and listed in the Relevant Annex, and any Successor. |
| Excluded Reference Entities: | None |
| Reference Obligation(s): | The Reference Obligation (if any) specified in the Index and set out opposite the Reference Entity in the Relevant Annex, subject to Paragraph 6.4 below, Sections 2.2(d) and 2.30 of the Credit Derivatives Definitions and the following paragraph: |
| | If the Index Sponsor publishes a replacement Reference Obligation for a Reference Entity or one or more Reference Obligations for a Reference Entity in connection with a Succession Event, the Calculation Agent shall select such Reference Obligation(s) as the Reference Obligation(s) hereunder for such Reference Entity in lieu of applying the provisions of Sections 2.2(d) or 2.30 of the Credit Derivatives Definitions. |
| Calculation Agent: | The party that is a Dealer (as defined in the Operating Procedures); provided that if both parties are Dealers, Seller. |
| Calculation Agent City: | New York |
| Business Days: | If the Aggregate Floating Rate Payer Calculation Amount is denominated in: |
| | USD: New York and London |
| | EUR: London and TARGET Settlement Day |
| Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day) |
| Relevant Annex: | In the Transaction Supplement, the parties shall identify the "Index Name" and the "Annex Date". |

A-2

The Relevant Annex shall be the list for the relevant Index with the relevant Annex Date, as published by the Index Publisher (which can be accessed currently at http://www.markit.com). "Index Publisher" means Markit Group Limited or any replacement therefor appointed by the Index Sponsor for purposes of officially publishing the relevant Index.

All Guarantees:                                   Not Applicable

Reference Price:                                  100%

2.    **INITIAL PAYMENT**

Initial Payment:                                  With respect to the Master Transaction to which the Component Transaction relates, on the date that is three Business Days following the Trade Date, the Initial Payment Payer shall pay to the other party an aggregate amount equal to the Initial Payment Amount.

Initial Payment Payer:                            As shown in the Transaction Supplement

Initial Payment Amount:                           As shown in the Transaction Supplement

3.    **FIXED PAYMENTS**

Fixed Rate Payer Calculation Amount:             The Floating Rate Payer Calculation Amount

Fixed Rate Payer Payment Dates:                   Each March 20, June 20, September 20 and December 20 in each year

Fixed Rate Payer Calculation Period:             Each period from, and including, one Fixed Rate Payer Payment Date to, but excluding, the next following Fixed Rate Payer Payment Date, except that (a) the initial Fixed Rate Payer Calculation Period will commence on, and include, the later of the Effective Date and the Fixed Rate Payer Payment Date falling on or immediately prior to the calendar day immediately following the Trade Date and (b) the final Fixed Rate Payer Calculation Period will end on, and include, the earlier to occur of the Scheduled Termination Date and the Event Determination Date.

Fixed Rate:                                       As shown in the Transaction Supplement

A-3

| | |
|---|---|
| Fixed Rate Day Count Fraction: | Actual/360 |

**4.    FLOATING PAYMENT**

| | |
|---|---|
| Floating Rate Payer Calculation Amount: | An amount equal to (a) the Reference Entity Weighting _multiplied_ _by_ (b) the Aggregate Floating Rate Payer Calculation Amount |
| Reference Entity Weighting: | The percentage set out opposite the Reference Entity in the Relevant Annex, _provided_ that the Reference Entity Weighting in respect of an Excluded Reference Entity shall be deemed to be zero |
| Excluded Reference Entity: | As shown in the Transaction Supplement |
| Conditions to Settlement: | Credit Event Notice |
| | Notifying Party:  Buyer or Seller |
| | Notice of Physical Settlement |
| | Notice of Publicly Available Information: Applicable |
| Credit Events: | The following Credit Event(s) shall apply: |
| | Bankruptcy |
| | Failure to Pay |
| | Grace Period Extension: Not Applicable |
| | Payment Requirement: USD 1,000,000 (or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay) |

Obligation(s):

| Obligation Category | Obligation Characteristics |
|---|---|
| Borrowed Money | None |

| | |
|---|---|
| Excluded Obligations: | None |

A-4

## 5. SETTLEMENT TERMS

| | |
|---|---|
| Settlement Method: | Physical Settlement |
| Settlement Currency: | The currency of denomination of the Floating Rate Payer Calculation Amount |

*Terms Relating to Physical Settlement:*

| | |
|---|---|
| Physical Settlement Period: | As defined in Section 8.6 of the Credit Derivatives Definitions, provided that such period shall not exceed 30 Business Days |
| Deliverable Obligations: | Exclude Accrued Interest |

Deliverable Obligation(s):

| *Deliverable Obligation Category* | *Deliverable Obligation Characteristics* |
|---|---|
| Bond or Loan | Not Subordinated |
| | Specified Currency: |
| |     Standard Specified Currencies |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity:  30 years |
| | Not Bearer |

| | |
|---|---|
| Excluded Deliverable Obligations: | None |
| Partial Cash Settlement of Consent Required Loans: | Not Applicable |
| Partial Cash Settlement of Assignable Loans: | Not Applicable |
| Partial Cash Settlement of Participations: | Not Applicable |
| Escrow: | Applicable |

A-5

**6.    ADDITIONAL PROVISIONS**

**6.1    Disclaimers**

(a)    CDX™ is a service mark of the Index Sponsor and has been licensed for use in connection with the Master Transaction. Dow Jones® is a service mark of Dow Jones & Company, Inc. ("Dow Jones") and, with respect to a Master Transaction relating to an Index with an Effective Date prior to March 20, 2007 (a "Prior Index Master Transaction"), has been licensed for use in connection with the Master Transaction.

(b)    The Index referenced herein is the property of the Index Sponsor and has been licensed for use in connection with the transaction hereunder. Each party acknowledges and agrees that the transaction hereunder is not sponsored, endorsed or promoted by Dow Jones, the Index Sponsor or any members of the Index Sponsor (the Index Sponsor, together with its members and, with respect to any Prior Index Master Transaction only, Dow Jones, the "Index Parties"). The Index Parties make no representation whatsoever, whether express or implied, and hereby expressly disclaim all warranties (including, without limitation, those of merchantability or fitness for a particular purpose or use), with respect to the Index or any data included therein or relating thereto, and in particular disclaim any warranty either as to the quality, accuracy and/or completeness of the Index or any data included therein, the results obtained from the use of the Index, the composition of the Index at any particular time on any particular date or otherwise, and/or the creditworthiness of, or likelihood of the occurrence of a Credit Event with respect to, any entity in the Index at any particular time on any particular date or otherwise. The Index Parties shall not be liable (whether in negligence or otherwise) to the parties or any other person for any error in the Index, and the Index Parties are under no obligation to advise the parties or any person of any error therein. The Index Parties make no representation whatsoever, whether express or implied, as to the advisability of entering into the transaction hereunder, the ability of the Index to track relevant markets' performances, or otherwise relating to the Index or any transaction or product with respect thereto, or of assuming any risks in connection therewith. The Index Parties have no obligation to take the needs of any party into consideration in determining, composing or calculating the Index. Neither party to this transaction, nor any Index Party, shall have any liability to any party for any act or failure to act by the Index Parties in connection with the determination, adjustment, calculation or maintenance of the Index. Although the Calculation Agent will obtain information concerning the Index from sources it believes reliable, it will not independently verify this information. Accordingly, no representation, warranty or undertaking (express or implied) is made, and no responsibility is accepted by either party, its Affiliates or the Calculation Agent, as to the accuracy, completeness or timeliness of information concerning the Index. Each party acknowledges that the other party or one of its Affiliates may be, or may be affiliated with, an Index Party and, as such, may be able to affect or influence the determination, adjustment or maintenance of the Index. For purposes of Sections 9.1(b)(iii) and (iv) of the Credit Derivatives Definitions, references to "each party" therein shall be deemed to include each Index Party.

**6.2**    **Monoline Insurer as Reference Entity**

The "Additional Provisions for Physically Settled Default Swaps – Monoline Insurer as Reference Entity", published on January 21, 2005, are incorporated by reference herein and shall be applicable to each Reference Entity that is identified as a "monoline" in the Index and for which the monoline provisions are specified as "Applicable" in the Relevant Annex.

**6.3**    **Merger of Reference Entity and Seller**

Section 2.31 of the Credit Derivatives Definitions is deleted in its entirety for the purposes of the Component Transaction to which this General Terms Confirmation relates.

**6.4**    **Inconsistency between Relevant Annex and Index**

In the event of any inconsistency between the Relevant Annex and the corresponding Index published by the Index Sponsor, the Relevant Annex shall govern.

**6.5**    **Transfer and Termination of Component Transactions**

(a)    Without prejudice to the generality of Section 7 of the Master Agreement and subject to paragraph (b) below, the Component Transaction (or any part thereof) to which this General Terms Confirmation relates may only be transferred (by way of assignment, novation or otherwise) or terminated prior to the Scheduled Termination Date together with an equal part of each other Component Transaction forming part of the Master Transaction of which it forms a part.

(b)    Upon the occurrence of an Event Determination Date in respect of the Component Transaction (the "Isolated Transaction") to which this General Terms Confirmation relates, the Isolated Transaction shall cease to constitute a Component Transaction for the purposes of (a) above and upon satisfaction of the Conditions to Settlement in respect of the Isolated Transaction, the Isolated Transaction will be settled in accordance with its terms. Unless the parties expressly agree otherwise, a transfer (by way of assignment, novation or otherwise) or termination (other than, where applicable, pursuant to the designation of an Early Termination Date) of the Master Transaction shall not include the Isolated Transaction.

DerivSERV Portal                                                                                    Page 1 of 1

 **DTCC Deriv/SERV**     Admin |  Logout     **DTCC**

## 🔲 Credit

| Search | Transaction Forms | Reports | Uploads | Download | Web User Guide | Contact Us | © 2005 DTCC Der |

### View                                                    **Production-Trade Warehouse**

| ⊞ Trade Warehouse Summary | | | 5,000,000.0 |
|---|---|---|---|
| **Credit Default Swap - Indices** | | | |
| **Trade Status:** | Confirmed | **Trade Submission Date and Time:** | 03/27/2008 15:5 |
| **Trade Confirmation Date:** | 03/27/2008 | | |
| **Reference Number:** | 20175617 | | |
| **Counterparty Reference Number:** | F21E7-SN-RDZ | | |
| **Participant ID:** | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | **Counterparty ID:** | 00006P49 AIG CDS INC |
| **Documentation Type** | | | |
| **Annex Date:** | 03/25/2008 | | |
| **Master Documentation Date:** | 01/01/2001 | **Master Documentation Transaction Type:** | 2003CreditIndex |
| Master Agreement Type: | | Master Agreement Date: | |
| **Trade Date:** | 03/26/2008 | **Effective Date:** | 03/21/2008 |
| **Calculation Agent** | | **Calculation Agent City:** | |
| **Scheduled Termination Date:** | 06/20/2013 | | |
| **Floating Rate Payer (Seller) ID:** | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | **Fixed Rate Payer (Buyer) ID:** | 00006P49 AIG CDS INC |
| Index Name: | Number: 2I65BYAO3 **Name:** CDX.NA.IG.10 | | |
| **Fixed Rate:** | 1.55000000 % | **Notional Amount:** | 5,000,000.00 US |
| Independent Amount Payer: | | Independent Amount: | % |
| Initial Payment Payer: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Initial Payment Amount: | 53,229.00 USD |
| Additional Terms: | N | | |
| ⊞ **Workflow Fields** | | | |
| ⊞ **Counterparty Workflow Fields** | | | |
| ⊞ **Cashflow Schedule** | | | |
| ⊞ **Event Summary** | | | |

Select Action For This Reference N

→ Contact Us     Imprint

Appendix C-1

CDX MASTER CREDIT DERIVATIVES
CONFIRMATION AGREEMENT

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to Credit Derivative Transactions relating to CDX indices (each, a "Master Transaction"), the parties will be deemed to have agreed as follows:

**1.    CREDIT DERIVATIVE DEFINITIONS**

This Master Confirmation Agreement hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions"). Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

**2.    CONFIRMATION PROCESS**

The parties intend to enter into one or more separate Master Transactions relating to a CDX index, as specified in the relevant Transaction Supplement (a "Transaction Supplement") substantially in the form of the Transaction Record Data Elements set forth in Appendix C of the Operating Procedures. The parties agree that, each time they enter into a Master Transaction under this Master Confirmation Agreement, they enter into a separate and independent Credit Derivative Transaction (a "Component Transaction") in respect of each Reference Entity listed in the Relevant Annex (as defined in the General Terms Confirmation defined below). Each Component Transaction shall have the terms specified in the General Terms Confirmation attached as Exhibit A to this Appendix C-1 (the "General Terms Confirmation"). The confirmation applicable to each Master Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the applicable ISDA Master Agreement and Schedule thereto most recently entered into between the parties as of the Trade Date for the Master Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement, including the General Terms Confirmation, as supplemented by the trade details applicable to such Master Transaction as set forth in the relevant Transaction Supplement.

In the event of any inconsistency between the Credit Derivatives Definitions and this Master Confirmation Agreement (including the General Terms Confirmation and the relevant Transaction Supplement), this Master Confirmation Agreement shall govern for the purpose of the relevant Master Transaction.

In the event of any inconsistency between this Master Confirmation Agreement (including the General Terms Confirmation) and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Master Transaction. The Transaction Supplement shall set forth, at a minimum, all of the relevant information set out in the form of Transaction Supplement set forth in Appendix C to the Operating Procedures.

3.    **RELATIONSHIP OF TRANSACTIONS**

Subject to Paragraph 6.5 of the General Terms Confirmation, each Component Transaction (a) constitutes a separate and independent Credit Derivative Transaction between the parties with respect to one of the Reference Entities listed in the Relevant Annex, (b) shall not be affected by any other Credit Derivative Transaction between the parties and (c) shall operate independently of each other Component Transaction in all respects.

4.    **NON-EXCLUSIVE**

The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Credit Derivative Transactions in accordance with this Master Confirmation Agreement.

5.    **ADDITIONAL CREDIT TERMS**

Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

6.    **MISCELLANEOUS**

6.1    **Entire Agreement**

This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

6.2    **Amendments**

An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

6.3    **Counterparts**

This Master Confirmation Agreement, each Transaction Supplement documented hereunder and any amendment thereto may be executed in counterparts, each of which will be deemed an original.

6.4    **Headings**

The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

6.5    **Governing Law**

This Master Confirmation Agreement and each Master Transaction documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

## GENERAL TERMS CONFIRMATION

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to set forth the general terms and conditions of the Credit Derivative Transaction (a "Component Transaction") entered into between Buyer and Seller (each as defined below). This General Terms Confirmation, together with the CDX Master Credit Derivatives Confirmation Agreement (the "Master Confirmation Agreement") deemed entered into between Buyer and Seller and the relevant Transaction Supplement, constitutes a "Confirmation" as referred to in the Master Agreement (as defined in the Master Confirmation Agreement). A General Terms Confirmation in the form of this General Terms Confirmation shall be deemed to be entered into in respect of each Component Transaction in respect of each of the Reference Entities listed in the Relevant Annex (as defined below), provided that if, in respect of a Reference Entity, a Succession Event occurs or has occurred on or following the earlier of the Effective Date and the Trade Date, the provisions of Section 2.2 of the Credit Derivatives Definitions shall apply in respect of such Reference Entity.

This General Terms Confirmation hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions"). In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern the Component Transaction to which this General Terms Confirmation relates, except as expressly modified below.

The terms of the Component Transaction to which this General Terms Confirmation relates, as supplemented by the related Transaction Supplement, are as follows:

1.    **GENERAL TERMS**

| | |
|---|---|
| Index: | The Index Name, as shown in the Transaction Supplement |
| Index Sponsor: | CDS IndexCo LLC |
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Aggregate Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |

A-1

| | |
|---|---|
| Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer") |
| Reference Entity: | Subject to Paragraph 6.4 below, the applicable Reference Entity contained in the Index and listed in the Relevant Annex, and any Successor. |
| Excluded Reference Entities: | None |
| Reference Obligation(s): | The Reference Obligation (if any) specified in the Index and set out opposite the Reference Entity in the Relevant Annex, subject to Paragraph 6.4 below, Sections 2.2(d) and 2.30 of the Credit Derivatives Definitions and the following paragraph: |
| | If the Index Sponsor publishes a replacement Reference Obligation for a Reference Entity or one or more Reference Obligations for a Reference Entity in connection with a Succession Event, the Calculation Agent shall select such Reference Obligation(s) as the Reference Obligation(s) hereunder for such Reference Entity in lieu of applying the provisions of Sections 2.2(d) or 2.30 of the Credit Derivatives Definitions. |
| Calculation Agent: | The party that is a Dealer (as defined in the Operating Procedures); provided that if both parties are Dealers, Seller. |
| Calculation Agent City: | New York |
| Business Days: | If the Aggregate Floating Rate Payer Calculation Amount is denominated in: |
| | USD: New York and London |
| | EUR: London and TARGET Settlement Day |
| Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day) |
| Relevant Annex: | In the Transaction Supplement, the parties shall identify the "Index Name" and the "Annex Date". |

A-2

|  | The Relevant Annex shall be the list for the relevant Index with the relevant Annex Date, as published by the Index Publisher (which can be accessed currently at http://www.markit.com). "Index Publisher" means Markit Group Limited or any replacement therefor appointed by the Index Sponsor for purposes of officially publishing the relevant Index. |
|---|---|
| All Guarantees: | Not Applicable |
| Reference Price: | 100% |

**2.    INITIAL PAYMENT**

| Initial Payment: | With respect to the Master Transaction to which the Component Transaction relates, on the date that is three Business Days following the Trade Date, the Initial Payment Payer shall pay to the other party an aggregate amount equal to the Initial Payment Amount. |
|---|---|
| Initial Payment Payer: | As shown in the Transaction Supplement |
| Initial Payment Amount: | As shown in the Transaction Supplement |

**3.    FIXED PAYMENTS**

| Fixed Rate Payer Calculation Amount: | The Floating Rate Payer Calculation Amount |
|---|---|
| Fixed Rate Payer Payment Dates: | Each March 20, June 20, September 20 and December 20 in each year |
| Fixed Rate Payer Calculation Period: | Each period from, and including, one Fixed Rate Payer Payment Date to, but excluding, the next following Fixed Rate Payer Payment Date, except that (a) the initial Fixed Rate Payer Calculation Period will commence on, and include, the later of the Effective Date and the Fixed Rate Payer Payment Date falling on or immediately prior to the calendar day immediately following the Trade Date and (b) the final Fixed Rate Payer Calculation Period will end on, and include, the earlier to occur of the Scheduled Termination Date and the Event Determination Date. |
| Fixed Rate: | As shown in the Transaction Supplement |

Fixed Rate Day Count Fraction:    Actual/360

**4.    FLOATING PAYMENT**

Floating Rate Payer Calculation
Amount:    An amount equal to (a) the Reference Entity Weighting _multiplied_ _by_ (b) the Aggregate Floating Rate Payer Calculation Amount

Reference Entity Weighting:    The percentage set out opposite the Reference Entity in the Relevant Annex, _provided_ that the Reference Entity Weighting in respect of an Excluded Reference Entity shall be deemed to be zero

Excluded Reference Entity:    As shown in the Transaction Supplement

Conditions to Settlement:    Credit Event Notice

    Notifying Party:  Buyer or Seller

Notice of Physical Settlement

Notice of Publicly Available Information: Applicable

Credit Events:    The following Credit Event(s) shall apply:

Bankruptcy

Failure to Pay

    Grace Period Extension: Not Applicable

    Payment Requirement: USD 1,000,000 (or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay)

Obligation(s):

| Obligation Category | Obligation Characteristics |
|---|---|
| Borrowed Money | None |

Excluded Obligations:    None

A-4

5.      **SETTLEMENT TERMS**

Settlement Method:                    Physical Settlement

Settlement Currency:                  The currency of denomination of the Floating
                                      Rate Payer Calculation Amount

*Terms Relating to Physical
Settlement:*

Physical Settlement Period:           As defined in Section 8.6 of the Credit
                                      Derivatives Definitions, <u>provided</u> that such period
                                      shall not exceed 30 Business Days

Deliverable Obligations:              Exclude Accrued Interest

Deliverable Obligation(s):

| *Deliverable Obligation Category* | *Deliverable Obligation Characteristics* |
|---|---|
| Bond or Loan | Not Subordinated |
| | Specified Currency: |
| |      Standard Specified Currencies |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity:  30 years |
| | Not Bearer |

Excluded Deliverable Obligations:     None

Partial Cash Settlement of Consent
Required Loans:                       Not Applicable

Partial Cash Settlement of
Assignable Loans:                     Not Applicable

Partial Cash Settlement of
Participations:                       Not Applicable

Escrow:                               Applicable

## 6.    ADDITIONAL PROVISIONS

### 6.1    Disclaimers

(a)    CDX™ is a service mark of the Index Sponsor and has been licensed for use in connection with the Master Transaction.  Dow Jones® is a service mark of Dow Jones & Company, Inc. ("Dow Jones") and, with respect to a Master Transaction relating to an Index with an Effective Date prior to March 20, 2007 (a "Prior Index Master Transaction"), has been licensed for use in connection with the Master Transaction.

(b)    The Index referenced herein is the property of the Index Sponsor and has been licensed for use in connection with the transaction hereunder.  Each party acknowledges and agrees that the transaction hereunder is not sponsored, endorsed or promoted by Dow Jones, the Index Sponsor or any members of the Index Sponsor (the Index Sponsor, together with its members and, with respect to any Prior Index Master Transaction only, Dow Jones, the "Index Parties").  The Index Parties make no representation whatsoever, whether express or implied, and hereby expressly disclaim all warranties (including, without limitation, those of merchantability or fitness for a particular purpose or use), with respect to the Index or any data included therein or relating thereto, and in particular disclaim any warranty either as to the quality, accuracy and/or completeness of the Index or any data included therein, the results obtained from the use of the Index, the composition of the Index at any particular time on any particular date or otherwise, and/or the creditworthiness of, or likelihood of the occurrence of a Credit Event with respect to, any entity in the Index at any particular time on any particular date or otherwise.  The Index Parties shall not be liable (whether in negligence or otherwise) to the parties or any other person for any error in the Index, and the Index Parties are under no obligation to advise the parties or any person of any error therein.   The Index Parties make no representation whatsoever, whether express or implied, as to the advisability of entering into the transaction hereunder, the ability of the Index to track relevant markets' performances, or otherwise relating to the Index or any transaction or product with respect thereto, or of assuming any risks in connection therewith. The Index Parties have no obligation to take the needs of any party into consideration in determining, composing or calculating the Index.   Neither party to this transaction, nor any Index Party, shall have any liability to any party for any act or failure to act by the Index Parties in connection with the determination, adjustment, calculation or maintenance of the Index. Although the Calculation Agent will obtain information concerning the Index from sources it believes reliable, it will not independently verify this information.   Accordingly, no representation, warranty or undertaking (express or implied) is made, and no responsibility is accepted by either party, its Affiliates or the Calculation Agent, as to the accuracy, completeness or timeliness of information concerning the Index. Each party acknowledges that the other party or one of its Affiliates may be, or may be affiliated with, an Index Party and, as such, may be able to affect or influence the determination, adjustment or maintenance of the Index.   For purposes of Sections 9.1(b)(iii) and (iv) of the Credit Derivatives Definitions, references to "each party" therein shall be deemed to include each Index Party.

**6.2**    **Monoline Insurer as Reference Entity**

The "Additional Provisions for Physically Settled Default Swaps – Monoline Insurer as Reference Entity", published on January 21, 2005, are incorporated by reference herein and shall be applicable to each Reference Entity that is identified as a "monoline" in the Index and for which the monoline provisions are specified as "Applicable" in the Relevant Annex.

**6.3**    **Merger of Reference Entity and Seller**

Section 2.31 of the Credit Derivatives Definitions is deleted in its entirety for the purposes of the Component Transaction to which this General Terms Confirmation relates.

**6.4**    **Inconsistency between Relevant Annex and Index**

In the event of any inconsistency between the Relevant Annex and the corresponding Index published by the Index Sponsor, the Relevant Annex shall govern.

**6.5**    **Transfer and Termination of Component Transactions**

(a)    Without prejudice to the generality of Section 7 of the Master Agreement and subject to paragraph (b) below, the Component Transaction (or any part thereof) to which this General Terms Confirmation relates may only be transferred (by way of assignment, novation or otherwise) or terminated prior to the Scheduled Termination Date together with an equal part of each other Component Transaction forming part of the Master Transaction of which it forms a part.

(b)    Upon the occurrence of an Event Determination Date in respect of the Component Transaction (the "Isolated Transaction") to which this General Terms Confirmation relates, the Isolated Transaction shall cease to constitute a Component Transaction for the purposes of (a) above and upon satisfaction of the Conditions to Settlement in respect of the Isolated Transaction, the Isolated Transaction will be settled in accordance with its terms. Unless the parties expressly agree otherwise, a transfer (by way of assignment, novation or otherwise) or termination (other than, where applicable, pursuant to the designation of an Early Termination Date) of the Master Transaction shall not include the Isolated Transaction.

 **DTCC Deriv/SERV**  Admin |  Logout  **DTCC**

## ⚏ Credit

| Search | Transaction Forms | Reports | Uploads | Download | Web User Guide | Contact Us | © 2005 DTCC Der |

### View

### Production-Trade Warehouse

| ⊞ Trade Warehouse Summary | | | 4,000,000.0 |
|---|---|---|---|

**Credit Default Swap - Indices**

| Trade Status: | Confirmed | Trade Submission Date and Time: | 04/10/2008 17:1! |
|---|---|---|---|
| Trade Confirmation Date: | 04/10/2008 | | |
| Reference Number: | 3767821 | | |
| Counterparty Reference Number: | F22FZ-SN-SGD | | |
| Participant ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Counterparty ID: | 00006P49 AIG CDS INC |
| Documentation Type | | | |
| Annex Date: | 03/25/2008 | | |
| Master Documentation Date: | 01/01/2001 | Master Documentation Transaction Type: | 2003CreditIndex |
| Master Agreement Type: | | Master Agreement Date: | |
| Trade Date: | 04/10/2008 | Effective Date: | 03/21/2008 |
| Calculation Agent | | Calculation Agent City: | |
| Scheduled Termination Date: | 06/20/2013 | | |
| Floating Rate Payer (Seller) ID: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Fixed Rate Payer (Buyer) ID: | 00006P49 AIG CDS INC |
| Index Name: | Number: 2I65BYAO3 Name: CDX.NA.IG.10 | | |
| Fixed Rate: | 1.55000000 % | Notional Amount: | 4,000,000.00 US |
| Independent Amount Payer: | | Independent Amount: | % |
| Initial Payment Payer: | 00006171 LEHMAN BROS SPECIAL FINANCING INC. | Initial Payment Amount: | 62,617.00 USD |
| Additional Terms: | N | | |

| ⊞ Workflow Fields | |
|---|---|
| ⊞ Counterparty Workflow Fields | |
| ⊞ Cashflow Schedule | |
| ⊞ Event Summary | |

Select Action For This Reference N

Contact Us     Importa

Appendix C-1

## CDX MASTER CREDIT DERIVATIVES
## CONFIRMATION AGREEMENT

If the parties have indicated pursuant to the Transaction Supplement (as defined below) and the Operating Procedures that this master confirmation agreement (the "Master Confirmation Agreement") is to apply to Credit Derivative Transactions relating to CDX indices (each, a "Master Transaction"), the parties will be deemed to have agreed as follows:

1. **CREDIT DERIVATIVE DEFINITIONS**

This Master Confirmation Agreement hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions"). Any capitalized term not otherwise defined herein shall have the meaning assigned to such term in the Credit Derivatives Definitions.

2. **CONFIRMATION PROCESS**

The parties intend to enter into one or more separate Master Transactions relating to a CDX index, as specified in the relevant Transaction Supplement (a "Transaction Supplement") substantially in the form of the Transaction Record Data Elements set forth in Appendix C of the Operating Procedures. The parties agree that, each time they enter into a Master Transaction under this Master Confirmation Agreement, they enter into a separate and independent Credit Derivative Transaction (a "Component Transaction") in respect of each Reference Entity listed in the Relevant Annex (as defined in the General Terms Confirmation defined below). Each Component Transaction shall have the terms specified in the General Terms Confirmation attached as Exhibit A to this Appendix C-1 (the "General Terms Confirmation"). The confirmation applicable to each Master Transaction, which shall constitute a "Confirmation" for the purposes of, and will supplement, form a part of, and be subject to, the applicable ISDA Master Agreement and Schedule thereto most recently entered into between the parties as of the Trade Date for the Master Transaction, as amended and supplemented from time to time (the "Master Agreement"), shall consist of this Master Confirmation Agreement, including the General Terms Confirmation, as supplemented by the trade details applicable to such Master Transaction as set forth in the relevant Transaction Supplement.

In the event of any inconsistency between the Credit Derivatives Definitions and this Master Confirmation Agreement (including the General Terms Confirmation and the relevant Transaction Supplement), this Master Confirmation Agreement shall govern for the purpose of the relevant Master Transaction.

In the event of any inconsistency between this Master Confirmation Agreement (including the General Terms Confirmation) and a Transaction Supplement, the Transaction Supplement shall govern for the purpose of the relevant Master Transaction. The Transaction Supplement shall set forth, at a minimum, all of the relevant information set out in the form of Transaction Supplement set forth in Appendix C to the Operating Procedures.

3.    **RELATIONSHIP OF TRANSACTIONS**

Subject to Paragraph 6.5 of the General Terms Confirmation, each Component Transaction (a) constitutes a separate and independent Credit Derivative Transaction between the parties with respect to one of the Reference Entities listed in the Relevant Annex, (b) shall not be affected by any other Credit Derivative Transaction between the parties and (c) shall operate independently of each other Component Transaction in all respects.

4.    **NON-EXCLUSIVE**

The parties acknowledge and agree that the use of or deemed entry into this Master Confirmation Agreement does not require them to document Credit Derivative Transactions in accordance with this Master Confirmation Agreement.

5.    **ADDITIONAL CREDIT TERMS**

Notwithstanding anything to the contrary herein, transactions entered into under this Master Confirmation Agreement shall be subject to any otherwise applicable credit or collateral terms agreed to between the parties.

6.    **MISCELLANEOUS**

6.1    **Entire Agreement**

This Master Confirmation Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect specifically thereto.

6.2    **Amendments**

An amendment, modification or waiver in respect of this Master Confirmation Agreement will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system.

6.3    **Counterparts**

This Master Confirmation Agreement, each Transaction Supplement documented hereunder and any amendment thereto may be executed in counterparts, each of which will be deemed an original.

6.4    **Headings**

The headings used in this Master Confirmation Agreement are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this Master Confirmation Agreement.

6.5    **Governing Law**

2

This Master Confirmation Agreement and each Master Transaction documented hereunder will be governed by and construed in accordance with the law specified in the Master Agreement.

Exhibit A

## GENERAL TERMS CONFIRMATION

The purpose of this General Terms Confirmation (the "General Terms Confirmation") is to set forth the general terms and conditions of the Credit Derivative Transaction (a "Component Transaction") entered into between Buyer and Seller (each as defined below). This General Terms Confirmation, together with the CDX Master Credit Derivatives Confirmation Agreement (the "Master Confirmation Agreement") deemed entered into between Buyer and Seller and the relevant Transaction Supplement, constitutes a "Confirmation" as referred to in the Master Agreement (as defined in the Master Confirmation Agreement). A General Terms Confirmation in the form of this General Terms Confirmation shall be deemed to be entered into in respect of each Component Transaction in respect of each of the Reference Entities listed in the Relevant Annex (as defined below), provided that if, in respect of a Reference Entity, a Succession Event occurs or has occurred on or following the earlier of the Effective Date and the Trade Date, the provisions of Section 2.2 of the Credit Derivatives Definitions shall apply in respect of such Reference Entity.

This General Terms Confirmation hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the "Credit Derivatives Definitions"). In the event of any inconsistency between the Credit Derivatives Definitions and this General Terms Confirmation, this General Terms Confirmation will govern.

All provisions contained in the Master Agreement govern the Component Transaction to which this General Terms Confirmation relates, except as expressly modified below.

The terms of the Component Transaction to which this General Terms Confirmation relates, as supplemented by the related Transaction Supplement, are as follows:

1.    **GENERAL TERMS**

| | |
|---|---|
| Index: | The Index Name, as shown in the Transaction Supplement |
| Index Sponsor: | CDS IndexCo LLC |
| Trade Date: | As shown in the Transaction Supplement |
| Effective Date: | As shown in the Transaction Supplement |
| Scheduled Termination Date: | As shown in the Transaction Supplement |
| Aggregate Floating Rate Payer Calculation Amount: | As shown in the Transaction Supplement |
| Floating Rate Payer: | As shown in the Transaction Supplement (the "Seller") |

A-1

| | |
|---|---|
| Fixed Rate Payer: | As shown in the Transaction Supplement (the "Buyer") |
| Reference Entity: | Subject to Paragraph 6.4 below, the applicable Reference Entity contained in the Index and listed in the Relevant Annex, and any Successor. |
| Excluded Reference Entities: | None |
| Reference Obligation(s): | The Reference Obligation (if any) specified in the Index and set out opposite the Reference Entity in the Relevant Annex, subject to Paragraph 6.4 below, Sections 2.2(d) and 2.30 of the Credit Derivatives Definitions and the following paragraph: |
| | If the Index Sponsor publishes a replacement Reference Obligation for a Reference Entity or one or more Reference Obligations for a Reference Entity in connection with a Succession Event, the Calculation Agent shall select such Reference Obligation(s) as the Reference Obligation(s) hereunder for such Reference Entity in lieu of applying the provisions of Sections 2.2(d) or 2.30 of the Credit Derivatives Definitions. |
| Calculation Agent: | The party that is a Dealer (as defined in the Operating Procedures); provided that if both parties are Dealers, Seller. |
| Calculation Agent City: | New York |
| Business Days: | If the Aggregate Floating Rate Payer Calculation Amount is denominated in: |
| | USD: New York and London |
| | EUR: London and TARGET Settlement Day |
| Business Day Convention: | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this General Terms Confirmation or in the related Transaction Supplement that falls on a day that is not a Business Day) |
| Relevant Annex: | In the Transaction Supplement, the parties shall identify the "Index Name" and the "Annex Date". |

A-2

The Relevant Annex shall be the list for the relevant Index with the relevant Annex Date, as published by the Index Publisher (which can be accessed currently at http://www.markit.com). "Index Publisher" means Markit Group Limited or any replacement therefor appointed by the Index Sponsor for purposes of officially publishing the relevant Index.

|  |  |
|---|---|
| All Guarantees: | Not Applicable |
| Reference Price: | 100% |

## 2.    INITIAL PAYMENT

Initial Payment:

With respect to the Master Transaction to which the Component Transaction relates, on the date that is three Business Days following the Trade Date, the Initial Payment Payer shall pay to the other party an aggregate amount equal to the Initial Payment Amount.

Initial Payment Payer:

As shown in the Transaction Supplement

Initial Payment Amount:

As shown in the Transaction Supplement

## 3.    FIXED PAYMENTS

Fixed Rate Payer Calculation Amount:

The Floating Rate Payer Calculation Amount

Fixed Rate Payer Payment Dates:

Each March 20, June 20, September 20 and December 20 in each year

Fixed Rate Payer Calculation Period:

Each period from, and including, one Fixed Rate Payer Payment Date to, but excluding, the next following Fixed Rate Payer Payment Date, except that (a) the initial Fixed Rate Payer Calculation Period will commence on, and include, the later of the Effective Date and the Fixed Rate Payer Payment Date falling on or immediately prior to the calendar day immediately following the Trade Date and (b) the final Fixed Rate Payer Calculation Period will end on, and include, the earlier to occur of the Scheduled Termination Date and the Event Determination Date.

Fixed Rate:

As shown in the Transaction Supplement

A-3

| | |
|---|---|
| Fixed Rate Day Count Fraction: | Actual/360 |

**4.    FLOATING PAYMENT**

| | |
|---|---|
| Floating Rate Payer Calculation Amount: | An amount equal to (a) the Reference Entity Weighting _multiplied_ _by_ (b) the Aggregate Floating Rate Payer Calculation Amount |
| Reference Entity Weighting: | The percentage set out opposite the Reference Entity in the Relevant Annex, _provided_ that the Reference Entity Weighting in respect of an Excluded Reference Entity shall be deemed to be zero |
| Excluded Reference Entity: | As shown in the Transaction Supplement |
| Conditions to Settlement: | Credit Event Notice |
| |     Notifying Party:  Buyer or Seller |
| | Notice of Physical Settlement |
| | Notice of Publicly Available Information: Applicable |
| Credit Events: | The following Credit Event(s) shall apply: |
| | Bankruptcy |
| | Failure to Pay |
| |     Grace Period Extension: Not Applicable |
| |     Payment Requirement: USD 1,000,000 (or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay) |

Obligation(s):

| Obligation Category | Obligation Characteristics |
|---|---|
| Borrowed Money | None |

| | |
|---|---|
| Excluded Obligations: | None |

5.    **SETTLEMENT TERMS**

Settlement Method:                    Physical Settlement

Settlement Currency:                  The currency of denomination of the Floating
                                      Rate Payer Calculation Amount

*Terms Relating to Physical
Settlement:*

Physical Settlement Period:           As defined in Section 8.6 of the Credit
                                      Derivatives Definitions, <u>provided</u> that such period
                                      shall not exceed 30 Business Days

Deliverable Obligations:              Exclude Accrued Interest

Deliverable Obligation(s):

| Deliverable Obligation Category | Deliverable Obligation Characteristics |
|---|---|
| Bond or Loan | Not Subordinated<br><br>Specified Currency:<br><br>     Standard Specified Currencies<br><br>Not Contingent<br><br>Assignable Loan<br><br>Consent Required Loan<br><br>Transferable<br><br>Maximum Maturity:  30 years<br><br>Not Bearer |

Excluded Deliverable Obligations:     None

Partial Cash Settlement of Consent
Required Loans:                       Not Applicable

Partial Cash Settlement of
Assignable Loans:                     Not Applicable

Partial Cash Settlement of
Participations:                       Not Applicable

Escrow:                               Applicable

A-5

6.    **ADDITIONAL PROVISIONS**

6.1    **Disclaimers**

(a)    CDX™ is a service mark of the Index Sponsor and has been licensed for use in connection with the Master Transaction.  Dow Jones® is a service mark of Dow Jones & Company, Inc. ("<u>Dow Jones</u>") and, with respect to a Master Transaction relating to an Index with an Effective Date prior to March 20, 2007 (a "<u>Prior Index Master Transaction</u>"), has been licensed for use in connection with the Master Transaction.

(b)    The Index referenced herein is the property of the Index Sponsor and has been licensed for use in connection with the transaction hereunder.  Each party acknowledges and agrees that the transaction hereunder is not sponsored, endorsed or promoted by Dow Jones, the Index Sponsor or any members of the Index Sponsor (the Index Sponsor, together with its members and, with respect to any Prior Index Master Transaction only, Dow Jones, the "<u>Index Parties</u>").  The Index Parties make no representation whatsoever, whether express or implied, and hereby expressly disclaim all warranties (including, without limitation, those of merchantability or fitness for a particular purpose or use), with respect to the Index or any data included therein or relating thereto, and in particular disclaim any warranty either as to the quality, accuracy and/or completeness of the Index or any data included therein, the results obtained from the use of the Index, the composition of the Index at any particular time on any particular date or otherwise, and/or the creditworthiness of, or likelihood of the occurrence of a Credit Event with respect to, any entity in the Index at any particular time on any particular date or otherwise.  The Index Parties shall not be liable (whether in negligence or otherwise) to the parties or any other person for any error in the Index, and the Index Parties are under no obligation to advise the parties or any person of any error therein.    The Index Parties make no representation whatsoever, whether express or implied, as to the advisability of entering into the transaction hereunder, the ability of the Index to track relevant markets' performances, or otherwise relating to the Index or any transaction or product with respect thereto, or of assuming any risks in connection therewith. The Index Parties have no obligation to take the needs of any party into consideration in determining, composing or calculating the Index.    Neither party to this transaction, nor any Index Party, shall have any liability to any party for any act or failure to act by the Index Parties in connection with the determination, adjustment, calculation or maintenance of the Index.  Although the Calculation Agent will obtain information concerning the Index from sources it believes reliable, it will not independently verify this information.    Accordingly, no representation, warranty or undertaking (express or implied) is made, and no responsibility is accepted by either party, its Affiliates or the Calculation Agent, as to the accuracy, completeness or timeliness of information concerning the Index. Each party acknowledges that the other party or one of its Affiliates may be, or may be affiliated with, an Index Party and, as such, may be able to affect or influence the determination, adjustment or maintenance of the Index.    For purposes of Sections 9.1(b)(iii) and (iv) of the Credit Derivatives Definitions, references to "each party" therein shall be deemed to include each Index Party.

A-6

**6.2**    **Monoline Insurer as Reference Entity**

The "Additional Provisions for Physically Settled Default Swaps – Monoline Insurer as Reference Entity", published on January 21, 2005, are incorporated by reference herein and shall be applicable to each Reference Entity that is identified as a "monoline" in the Index and for which the monoline provisions are specified as "Applicable" in the Relevant Annex.

**6.3**    **Merger of Reference Entity and Seller**

Section 2.31 of the Credit Derivatives Definitions is deleted in its entirety for the purposes of the Component Transaction to which this General Terms Confirmation relates.

**6.4**    **Inconsistency between Relevant Annex and Index**

In the event of any inconsistency between the Relevant Annex and the corresponding Index published by the Index Sponsor, the Relevant Annex shall govern.

**6.5**    **Transfer and Termination of Component Transactions**

(a)    Without prejudice to the generality of Section 7 of the Master Agreement and subject to paragraph (b) below, the Component Transaction (or any part thereof) to which this General Terms Confirmation relates may only be transferred (by way of assignment, novation or otherwise) or terminated prior to the Scheduled Termination Date together with an equal part of each other Component Transaction forming part of the Master Transaction of which it forms a part.

(b)    Upon the occurrence of an Event Determination Date in respect of the Component Transaction (the "Isolated Transaction") to which this General Terms Confirmation relates, the Isolated Transaction shall cease to constitute a Component Transaction for the purposes of (a) above and upon satisfaction of the Conditions to Settlement in respect of the Isolated Transaction, the Isolated Transaction will be settled in accordance with its terms.  Unless the parties expressly agree otherwise, a transfer (by way of assignment, novation or otherwise) or termination (other than, where applicable, pursuant to the designation of an Early Termination Date) of the Master Transaction shall not include the Isolated Transaction.

# EXHIBIT 4

# 2003 ISDA

# Credit Derivatives

# Definitions



**INTERNATIONAL SWAPS AND DERIVATIVES ASSOCIATION, INC.**

Copyright © 2003 by

**INTERNATIONAL SWAPS AND DERIVATIVES ASSOCIATION, INC.**
**360 Madison Avenue, 16th Floor**
**New York, N.Y. 10017**

**Section 2.1.  Reference Entity.**  "Reference Entity" means the entity or entities specified as such in the related Confirmation.   Any Successor to a Reference Entity identified pursuant to Section 2.2 shall be the Reference Entity for the Credit Derivative Transaction or a New Credit Derivative Transaction as determined pursuant to such Section 2.2.

**Section 4.1.   Credit Event.**   "Credit Event" means, with respect to a Credit Derivative Transaction, one or more of Bankruptcy, Failure to Pay, Obligation Acceleration, Obligation Default, Repudiation/Moratorium or Restructuring, as specified in the related Confirmation.   If an occurrence would otherwise constitute a Credit Event, such occurrence will constitute a Credit Event whether or not such occurrence arises directly or indirectly from, or is subject to a defense based upon: (a) any lack or alleged lack of authority or capacity of a Reference Entity to enter into any Obligation or, as applicable, an Underlying Obligor to enter into any Underlying Obligation, (b) any actual or alleged unenforceability, illegality, impossibility or invalidity with respect to any Obligation or, as applicable, any Underlying Obligation, however described, (c) any applicable law, order, regulation, decree or notice, however described, or the promulgation of, or any change in, the interpretation by any court, tribunal, regulatory authority or similar administrative or judicial body with competent or apparent jurisdiction of any applicable law, order, regulation, decree or notice, however described, or (d) the imposition of, or any change in, any exchange controls, capital restrictions or any other similar restrictions imposed by any monetary or other authority, however described.

# EXHIBIT 5

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*                     :    Case No. 08-13555 (JMP)
                                                             :
                              Debtors.                       :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

### [PROPOSED] ORDER PURSUANT TO SECTIONS 105(a), 362 AND 365 OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE BY AIG CDS, INC. OF ITS OBLIGATIONS UNDER AN EXECUTORY CONTRACT AND TO ENFORCE THE AUTOMATIC STAY

Upon the motion, dated August 7, 2009 of Debtor and Debtor In Possession Lehman Brothers Special Financing Inc., (together, with Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors") pursuant to sections 105(a), 362 and 365 of the Bankruptcy Code to Compel Performance of AIG CDS, Inc.'s Obligations Under an Executory Contract and to Enforce the Automatic Stay (the "Motion"), all as more fully set forth in the Motion; and the Court having reviewed the Motion and having considered the statements of counsel before the Court (the "Hearing"); and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) due and proper notice of the Motion was provided to the Notice Parties and to AIG CDS, Inc. and that no other or further notice need be provided; and the Court having determined that  the relief sought in the Motion is in the best interest of the Debtors, its creditors

and all parties in interest and that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED in its entirety;

2.    AIG CDS, Inc. shall perform its obligations under the Swap Agreement[1],

including but not limited to promptly paying LBSF $9,130,706.00, the settlement amounts due in

connection with the settlement of credit events under certain Credit Derivative Transactions, and

including accrued default interest.


Dated: New York, New York
         [_____], 2009



_____
UNITED STATES BANKRUPTCY JUDGE

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.