

# ISDA®

International Swap Dealers Association, Inc.

# MASTER AGREEMENT

### dated as of March 11, 1997

**LEHMAN BROTHERS FINANCE S.A.**                    **PRUDENTIAL GLOBAL FUNDING, INC.**

...................................................................and..................................................................................

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1.      **Interpretation**

(a)      *Definitions.*  The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b)      *Inconsistency.*  In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail.  In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purposes of the relevant Transaction.

(c)      *Single Agreement.*  All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2.      **Obligations**

(a)      *General Conditions.*

(i)      Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

(ii)      Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency.  Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

(iii)      Each obligation of each party under Section 2(a)(i) is subject to  (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

value of that which was (or would have been) required to be delivered as of the originally scheduled date for delivery, in each case together with (to the extent permitted under applicable law) interest, in the currency of such amounts, from (and including) the date such amounts or obligations were or would have been required to have been paid or performed to (but excluding) such Early Termination Date, at the Applicable Rate. Such amounts of interest will be calculated on the basis of daily compounding and the actual number of days elapsed. The fair market value of any obligation referred to in clause (b) above shall be reasonably determined by the party obliged to make the determination under Section 6(e) or, if each party is so obliged, it shall be the average of the Termination Currency Equivalents of the fair market values reasonably determined by both parties.

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

**LEHMAN BROTHERS FINANCE S.A.**

.................................................................

By: ...........................................................
Name:    JIM STARICCO
Title:    General Manager
Date:

By: ...........................................................
Name:
Title:    Cheryl Chickowski
Date:

**PRUDENTIAL GLOBAL FUNDING, INC.**

.................................................................

By: ...........................................................
Name:
Title:    GARY NEUBECK
Date:    PRESIDENT

ISDA® 1992

**Non-Multibranch Cross
Border Schedule**

**SCHEDULE
to the
Master Agreement**

dated as of March 11, 1997

between **LEHMAN BROTHERS FINANCE S.A.,** a Swiss corporation ("Party A")
and **PRUDENTIAL GLOBAL FUNDING, INC.,** a Delaware corporation ("Party B").

**Part 1**

**Termination Provisions**

In this Agreement:-

(a)      **Specified Entity** means in relation to Party A for the purpose of:-

      Section 5(a)(v),          Not applicable.

      Section 5(a)(vi),         Not applicable.

      Section 5(a)(vii),        Not applicable.

      Section 5(b)(iv),         Not applicable.

                  in relation to Party B for the purpose of:-

      Section 5(a)(v),          Not applicable.

      Section 5(a)(vi),         Not applicable.

      Section 5(a)(vii),        Not applicable.

      Section 5(b)(iv),         Not applicable.

(b)      **Specified Transaction**  will have the meaning specified in Section 14 of this Agreement.

(c)      The **Cross Default** provisions of Section 5(a)(vi) will apply to Party A and Party B.

The following provisions apply:-

**Specified Indebtedness** will have the meaning specified in Section 14.

**Threshold Amount** means USD40,000,000.

(d)    The **Credit Event Upon Merger** provisions of Section 5(b)(iv) will apply to Party A and Party B.

(e)    The **Automatic Early Termination** provision of Section 6(a) will <u>not</u> apply to either Party A or Party B, provided that where there is an Event of Default under Section 5(a)(vii)(1), (3), (4), (5), (6) or, to the extent analogous thereto, (8), and the Defaulting Party is governed by a system of law that does not permit termination to take place after the occurrence of such Event of Default, then the Automatic Early Termination provisions of Section 6(a) will apply.

(f)    **Payments on Early Termination.**  For the purpose of Section 6(e) of this Agreement, Market Quotation and the Second Method will apply.

(g)    **Termination Currency** means United States Dollars ("USD").

**Part 2**

**Tax Representations**

**Payer Representations.**  For the purpose of Section 3(e) of this Agreement, Party A will make the following representation and Party B will make the following representation:-

It is not required by any applicable law, as modified by the practice of any relevant governmental revenue authority, of any Relevant Jurisdiction to make any deduction or withholding for or on account of any Tax from any payment (other than interest under Section 2(e), 6(d)(ii) or 6(e) of this Agreement) to be made by it to the other party under this Agreement.  In making this representation, it may rely on:-

(i)    the accuracy of any representation made by the other party pursuant to Section 3(f) of this Agreement;

(ii)    the satisfaction of the agreement contained in Section 4(a)(i) or 4(a)(iii) of this Agreement and the accuracy and effectiveness of any document provided by the other party pursuant to Section 4(a)(i) or 4(a)(iii) of this Agreement; and

(iii)    the satisfaction of the agreement of the other party contained in Section 4(d) of this Agreement,

provided that it shall not be a breach of this representation where reliance is placed on clause (ii) and the other party does not deliver a form or document under Section 4(a)(iii) of this Agreement by reason of material prejudice to its legal or commercial position.

## Part 3

### Documents to be delivered

For the purpose of <u>Section 4(a)</u>:-

(a)    Tax forms, documents or certificates to be delivered are:-

| **Party required to deliver document** | **Form/Document/Certificate** | **Date by which to be delivered** |
|---|---|---|
| Party A | Tax Forms | Promptly upon the earlier of (i) reasonable demand by Party B or (ii) learning that the form or document is required. |
| Party B | Tax Forms | Promptly upon the earlier of (i) reasonable demand by Party A or (ii) learning that the form or document is required. |

(b) Other documents to be delivered are:-

| Party required to deliver document | Form/Document/Certificate | Date by which to be delivered | Covered by Section 3(d) Representation |
|---|---|---|---|
| Party A | The Credit Support Documents listed in Part 4, Section (f). | Upon execution of this Agreement | No |
| Party B | The Credit Support Documents listed in Part 4, Section (f). | Upon execution of this Agreement | No |
| Party A | An incumbency certificate with respect to each of the signatories of this Agreement and of any Credit Support Documents. | Upon execution of this Agreement | Yes |
| Party B | An incumbency certificate with respect to each of the signatories of this Agreement and of any Creidt Support Documents. | Upon execution of this Agreement | Yes |
| Party A | A copy of Party B's extract in the Swiss Commercial Registry. | Prior to or upon execution of this Agreement. | Yes |
| Party B | A certified copy of the resolution or resolutions (the "Authorizing Resolution") of the board of directors or loan committee of Party B, certified by a secretary or an assistant secretary of Party B, pursuant to which Party B is authorized to enter into this Agreement and each Transaction entered into under this Agreement. | Upon execution of this Agreement. | Yes |
| Party A | Unaudited quarterly financial statements of Party A's Credit Support Provider. | Upon request of Party B. | Yes |

| Party A | Audited annual financial statements of Party A's Credit Support Provider. | Upon request of Party B. | Yes |
| Party B | Unaudited quarterly financial statements of Party B's Credit Support Provider. | Within 45 days after each fiscal quarter end of Party B (or Party B's Credit Support Provider, if any) | Yes |
| Party B | Audited annual financial statements of Party B's Credit Support Provider. | Within 60 days after each fiscal year end of Party B (or Party B's Credit Support Provider, if any) | Yes |

## Part 4

### Miscellaneous

(a)   **Addresses for Notices.**  For the purpose of <u>Section 12(a)</u> of this Agreement:

Address for notices or communications to Party A:-

Address:  Genferstrasse 24, P.O. Box 311, CH-8002 Zurich, Switzerland

Attention:  Financial Controller

Telex No: 812 906            Answerback: LBFS CH

Facsimile No.:   411-287-8825     Telephone No.:  411-287-8842

(For all purposes)

Address for notices or communications to Party B:-

Address:  Two Gateway Center, 5th Floor, Newark, New Jersey 07102

Attention: Comptroller

Telex No.:                            Answerback:

Facsimile No.: 201-802-8957 Telephone No.:

(For all purposes)

with a copy to:

Address:  Two Gateway Center, 5th Floor, Newark, New Jersey 07102

Attention: Comptroller

Telex No.:_____    Answerback:_____

Facsimile No.: 201-802-8957 _____    Telephone No.:_____


and for notices or communications to Prudential Funding Corporation:

Address:  Two Gateway Center, 5th Floor, Newark, New Jersey 07102

Attention: Treasurer

Telex No.:_____    Answerback:_____

Facsimile No.:201-802-3338 _____    Telephone No.:_____


(b)  **Process Agent.**  For the purpose of Section 13(c):-

      Party A appoints as its Process Agent -     Lehman Brothers Inc.
                                                       3 World Financial Center
                                                       New York, NY 10285

      Party B appoints as its Process Agent -     Not applicable.

(c)  **Offices.**  The provisions of Section 10(a) will apply to this Agreement.

(d)  **Multibranch Party.**  For the purpose of Section 10(c):

      Party A is not a Multibranch Party.

      Party B is not a Multibranch Party.

(e)  **Calculation Agent.**  The Calculation Agent is Party A, unless otherwise specified in a Confirmation in relation to the relevant Transaction.

(f)  **Credit Support Document.**  Details of any Credit Support Document:-

In the case of Party A, a guarantee of Party A's obligations hereunder in the form annexed hereto as Exhibit A to Schedule.

In the case of Party B, a guarantee of Party B's obligations hereunder in the form annexed hereto as Exhibit B to Schedule.

In the case of Party A and Party B, a Credit Support Annex in the form annexed hereto.

(g)   **Credit Support Provider.**

Credit Support Provider means in relation to Party A:  Holdings.

Credit Support Provider means in relation to Party B:  Prudential Funding Corporation.

(h)   **Governing Law.**  This Agreement will be governed by and construed in accordance with New York law.

(i)   **Netting of Payments.**  Subparagraph (ii) of Section 2(c) of this Agreement will not apply to any Transactions (in each case starting from the date of this Agreement).

(j)   **Affiliate** will have the meaning specified in Section 14 of this Agreement.

(k)   **Transactions** shall be defined to include, without limitation, all equity-related transactions between the parties.

## Part 5

## Other Provisions

(a)   **Tax Forms** means any form or document that may be required or reasonably requested in order to allow the other party to make a payment under the Transaction without any deduction or withholding for or on account of any Tax or with such deduction or withholding at a reduced rate.

(b)   **Record Keeping.**  Each party represents and warrants to the other that it shall maintain this Agreement, this Schedule and all Confirmations issued pursuant hereto with its records of binding business transactions.

(c)   **Confirmations.**  Party A shall send to Party B its standard form of Confirmation for each Transaction entered into hereunder, the terms of which shall be deemed to be agreed to by Party B unless, within three (3) Local Business Days of Party B's receipt thereof, Party B notifies Party A of any disagreement thereto.

(d)   **Transfer.**  For the purposes of Section 7, the following phrase "which consent shall not be unreasonably withheld" shall be inserted on the third line thereof, after the word "party," and before the word "except".  In addition, it is agreed that (i) Party B may assign a Transaction to The Prudential Insurance Company of America ("PIC"); and (ii) either party may assign a Transaction to an affiliated entity of such party whose obligations in respect of such assignment are guaranteed by the transferor party, or, if the transferor's obligations under the Transaction are guaranteed, by the guarantor of such transferor party's obligations.  Notwithstanding the foregoing, any assignment hereunder shall not be permitted if, as a result thereof, a payment becomes subject to any deduction or withholding for or on account of any tax which would not have arisen had such assignment not been effected.

(e)     **Notices.** For the purposes of subsections (iii) and (v) of Section 12(a), the date of receipt shall be presumed to be the date sent if sent on a Local Business Day or, if not sent on a Local Business Day, the date of receipt shall be presumed to be the first Local Business Day following the date sent.

(f)     **Service of Process.** The penultimate sentence of Section 13(c) shall be amended by adding the following language at the end thereof: "if permitted in the jurisdiction where the proceedings are initiated and in the jurisdiction where service is to be made."

(g)     **Set-off.**

   (1)     In addition to any rights of set-off a party may have as a matter of law or otherwise, upon the occurrence of an Event of Default or an Additional Termination Event with respect to a party ("X"), the other party ("Y") will have the right (but not be obliged) without prior notice to X or any other person to set-off or apply any obligation of X owed to Y (and to any Affiliate of Y) (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation) against any obligation of Y (and to any Affiliate of Y) owed to X (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation.)

   (2)     For the purpose of cross-currency set-off, Y may convert either obligation at the applicable market exchange rate selected by Y on the relevant date.

   (3)     If the amount of an obligation is unascertained, Y may in good faith estimate that amount and set-off in respect of the estimate, subject to the relevant party accounting to the other when the amount of the obligation is ascertained.

   (4)     This clause (g) shall not constitute a mortgage, charge, lien or other security interest upon any of the property or assets of either party to this Agreement.

(h)     **Additional Representations.** Section 3 is hereby amended by adding the following additional subsections:

   (g)     **No Agency.** It is entering into this Agreement and each Transaction as principal (and not as agent or in any other capacity, fiduciary or otherwise).

   (h)     **Eligible Swap Participant.** It is an "eligible swap participant" as defined in the Part 35 Regulations of the U.S. Commodity Futures Trading Commission.

   (i)     **Line of Business.** It has entered into this Agreement (including each Transaction evidenced hereby) in conjunction with its line of business (including financial intermediation services) or the financing of its business. It represents and warrants that all transactions effected under this Agreement (i) will be appropriate in the conduct and management of its business, (ii) will be entered into for non-speculative purposes, and (iii) constitute transactions entered into for purposes of hedging or managing risks related to

its assets or liabilities as currently owned or incurred, or likely to be owned or incurred in the conduct of its business.

(j)   **No Reliance.**  In connection with the negotiation of, the entering into, and the confirming of the execution of, this Agreement, any Credit Support Document to which it is a party, and each Transaction: (i) the other party is not acting as a fiduciary or financial or investment advisor for it; (ii) it is not relying upon any representations (whether written or oral) of the other party other than the representations expressly set forth in this Agreement and in such Credit Support Document; and (iii) it has consulted with its own legal, regulatory, tax, business, investment, financial, and accounting advisors to the extent it has deemed necessary, and it has made its own investment, hedging, and trading decisions based upon its own judgment and upon any advice from such advisors as it has deemed necessary and not upon any view expressed by the other party.

(i)   **Additional Representations.**  Each of Party A and Party B represents to each other (at all times until termination of this Agreement) that:

(i)   It understands that the Transactions contemplated hereunder are subject to complex risks which may arise without warning, may at times be volatile, and that losses may occur quickly and in unanticipated magnitude.

(ii)   It is a sophisticated investor able to evaluate the risks of the Transactions contemplated hereunder.

(iii)   It is prepared to bear, and is capable of bearing (financially and otherwise), all risks associated with the Transactions contemplated hereunder.

(iv)   This Agreement and each Transaction have been, and will be, entered into not for the purpose of speculation but solely in connection with the portfolio management, asset, risk, and liability management and hedging activities of Party B.

(j)   **Transactions.**  With respect to each Option Transaction, each of Party A and Party B represents to each other (at all times until termination of this Agreement) that it:

(i)   understands that the Option Transactions have not been registered under the Securities Act of 1933 as amended (the "Securities Act") and are being offered and sold in reliance on the exemption to the registration requirements of the Securities Act provided under Section 4(2) thereof;

(ii)   understands and acknowledges that Party A has no obligation to register the Option Transactions under the Securities Act or any other United States federal or state securities law, and that the Option Transactions must be held indefinitely by the purchaser thereof unless subsequently registered under such securities laws or an exemption from such registration is available;

(iii)    agrees that in the event that at some future time he wishes to dispose of the Option Transactions in whole or in part (such disposition currently not being foreseen or contemplated), he will not transfer the same except in a transaction exempt from or not subject to the registration requirements of the Securities Act; and

(iv)    understands that each Confirmation may bear a legend to substantially the following effect:

**THE SECURITIES REPRESENTED BY THE CONFIRMATION HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933 OR ANY OTHER UNITED STATES FEDERAL OR STATE SECURITIES LAWS; AND SUCH SECURITIES MAY NOT BE SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF APPROPRIATE REGISTRATION UNDER SUCH SECURITIES LAWS OR EXCEPT IN A TRANSACTION EXEMPT FROM OR NOT SUBJECT TO THE REGISTRATION REQUIREMENTS OF SUCH SECURITIES LAWS**

(k)     **Trial By Jury**.  Each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Agreement or any Transaction.

(l)      **Accuracy of Specified Information.**  Section 3(d) is hereby amended by adding in the third line thereof after the word "respect" and before the period the words "or, in the case of audited or unaudited financial statements or balance sheets, a fair presentation of the financial condition of the relevant person".

(m)   **Definitions.** This Agreement, each Confirmation, and each Transaction are subject to the 1991 ISDA Definitions and the 1994 ISDA Equity Option Definitions, each as published by the International Swaps and Derivatives Association, as amended, supplemented, updated, restated and superseded from time to time (collectively, the "Definitions"), and will be governed in all respects by the Definitions (except that references to "Swap Transactions" in the Definitions will be deemed to be references to "Transactions"). The Definitions as so modified, are incorporated by reference in, and made part of, this Agreement and each Confirmation as if set forth in full in this Agreement and such Confirmations. Subject to Section 1(b), in the event of any inconsistency between the provisions of this Agreement and the Definitions, this Agreement will prevail. Also, subject to Section 1(b), in the event of any inconsistency between the provisions of any Confirmation and this Agreement, or the Definitions, such Confirmation will prevail for the purpose of the relevant Transaction.

The parties executing this Schedule have executed the Agreement and have agreed as to the contents of this Schedule.

**LEHMAN BROTHERS FINANCE S.A.**          **PRUDENTIAL GLOBAL FUNDING, INC.**

By:_____              By:_____
        JIM STARICCO                              GARY NEUBECK
Title:_____             Title:_____
        General Manager                           PRESIDENT

Date:_____              Date:_____


By:_____
        Cheryl Chickowski

Title:_____

Date:_____

**EXHIBIT A to Schedule**

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

LEHMAN BROTHERS FINANCE S.A. ("Party A") and _____ ("Party B") have entered into a Master Agreement dated as of _____, 19_, pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a) Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b) Guarantor hereby agrees that its obligations under the Guarantee constitute a guarantee of payment when due and not of collection.

(c) Guarantor hereby agrees that its obligations under the Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor; provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d) Guarantor shall be subrogated to all rights of Party B against Party A in respect of any amounts paid by Guarantor pursuant to the provisions of this Guarantee; provided, however, that Guarantor shall not be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by Party A under the Agreement, shall have been paid in full.

(e) Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Agreement affecting Party A or Guarantor.

(f) Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other

person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

In the event that Guarantor is required by any applicable law, rule or regulation to make any deduction or withholding for or on account of any Tax (as defined in Section 14 of the Agreement, except that the reference therein to the "Agreement" shall be deemed to mean the "Guarantee" for purposes of this Guarantee) from any payment to be made under this Guarantee, Guarantor shall be subject to the provisions of Section 2(d) of the Agreement to the same extent as "X" (as defined therein); provided, however, that Guarantor shall be required to treat as an "Indemnifiable Tax" (as defined under Section 14 of the Agreement, except that the reference therein to the "Agreement" shall be deemed to mean the "Guarantee" for purposes of this Guarantee) for such purpose any Tax that is not an "Indemnifiable Tax" if such Tax would have constituted an "Indemnifiable Tax" had the payment in respect of which the Tax is imposed been made by Party A rather than Guarantor.

Guarantor makes the same representations to and agreements with Party B as those made by Party A pursuant to Sections 3 and 4 of the Agreement, at the times set forth therein, except that references therein to "the party" will be deemed to be references to "the Guarantor" and references therein to "the Agreement" will be deemed to be references to "the Guarantee."

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee are defined in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein. All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Treasurer, at 200 Vesey Street, 28th Floor, New York, New York 10285 (Telex No: 175636 Answerback: SLB) with a copy to Lehman Brothers Finance S.A., Attention: Financial Controller at at Genferstrasse 24, P.O. Box 311, CH-8002 Zurich, Switzerland (Telex No: 812 096 Answerback: LBFS CH, Facsimile No. 411-287-8825).

**IN WITNESS WHEREOF**, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

## LEHMAN BROTHERS HOLDINGS INC.

By: _____

    Name:

    Title:

# LEHMAN BROTHERS

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

**LEHMAN BROTHERS FINANCE S.A.** ("Party A") and **PRUDENTIAL GLOBAL FUNDING, INC.** ("Party B") have entered into a Master Agreement dated as of March 11, 1997, pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, **LEHMAN BROTHERS HOLDINGS INC.**, a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a) Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b) Guarantor hereby agrees that its obligations under the Guarantee constitute a guarantee of payment when due and not of collection.

(c) Guarantor hereby agrees that its obligations under the Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor; provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d) Guarantor shall be subrogated to all rights of Party B against Party A in respect of any amounts paid by Guarantor pursuant to the provisions of this Guarantee; provided, however, that Guarantor shall not be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by Party A under the Agreement, shall have been paid in full.

(e) Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Agreement affecting Party A or Guarantor.

(f) Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

In the event that Guarantor is required by any applicable law, rule or regulation to make any deduction or withholding for or on account of any Tax (as defined in Section 14 of the Agreement, except that the reference therein to the "Agreement" shall be deemed to mean the "Guarantee" for purposes of this Guarantee) from any payment to be made under this Guarantee, Guarantor shall be subject to the provisions of Section 2(d) of the Agreement to the same extent as "X" (as defined therein); provided, however, that Guarantor shall be required to treat as an "Indemnifiable Tax" (as defined under Section 14 of the Agreement, except that the reference therein to the "Agreement" shall be deemed to mean the "Guarantee" for purposes of this Guarantee) for such purpose any Tax that is not an "Indemnifiable Tax" if such Tax would have constituted an "Indemnifiable Tax" had the payment in respect of which the Tax is imposed been made by Party A rather than Guarantor.

Guarantor makes the same representations to and agreements with Party B as those made by Party A pursuant to Sections 3 and 4 of the Agreement, at the times set forth therein, except that references therein to "the party" will be deemed to be references to "the Guarantor" and references therein to "the Agreement" will be deemed to be references to "the Guarantee."

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee are defined in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein. All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Treasurer, at 200 Vesey Street, 28th Floor, New York, New York 10285 (Telex No: 175636 Answerback: SLB) with a copy to Lehman Brothers Finance S.A., Attention: Financial Controller at at Genferstrasse 24, P.O. Box 311, CH-8002 Zurich, Switzerland (Telex No: 812 096 Answerback: LBFS CH, Facsimile No. 411-287-8825).

**IN WITNESS WHEREOF**, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

**LEHMAN BROTHERS HOLDINGS INC.**

By: _Rhonda Teadore_

Name:

Title: _AVP_

**EXHIBIT B**

**March 14, 1997**

1.    **Guaranty.**  PRUDENTIAL FUNDING CORPORATION, a corporation organized and existing under the laws of the State of New Jersey (herein referred to as "PFC"), hereby unconditionally guarantees to LEHMAN BROTHERS FINANCE S.A. ("Party A") the payment of all amounts payable by PRUDENTIAL GLOBAL FUNDING, INC. ("Party B"), or by any assignee of Party B which is a direct or indirect subsidiary of The Prudential Insurance Company of America (other than PFC), under the ISDA Master Agreement dated as of March 11, 1997 between Party A and Party B (the "Agreement") in accordance with the terms of the Agreement. In case of the failure of Party B punctually to pay any such amounts, PFC hereby agrees upon written demand by Party A to cause any such payment to be made promptly in accordance with the Agreement, including any interest thereon at the Default Rate (as defined in the Agreement) from the date such payment was due from Party B.

PFC hereby agrees that its obligations under this Guaranty shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement with respect to Party B, the absence of any action to enforce Party B's obligations under the Agreement, any waiver or consent by Party A with respect to any provisions thereof or any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a guarantor.  This Guaranty is intended to be a guaranty of payment and not a guaranty of collection.

PFC shall be subrogated to all rights of Party A against Party B in respect of any amounts paid by PFC pursuant to the provisions of this Guaranty; provided, however, that PFC shall not be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all amounts due and payable by Party B under the Agreement shall have been paid in full.

This Guaranty shall remain in full force and effect until Party A shall have been indefeasibly paid in full all amounts due it under the Agreement and until such amounts are not subject to rescission or repayment upon the bankruptcy, insolvency, reorganization, moratorium, receivership or similar proceeding affecting Party B.

PFC hereby waives (i) promptness, diligence, presentment, demand of payment (except as specified herein and in the Agreement), protest and order and (ii) any requirement that Party A exhaust any right to take any action against Party B (except as specified herein and in the Agreement) or any other person or entity before proceeding to exercise any right or remedy against PFC.

1

2.    **Representations.**  PFC represents to Party A (which representations will be deemed to be repeated by PFC on each date on which a Transaction (as defined in the Agreement) is entered into) that:

    (a)    **Basic Representations.**

        (i)    **Status.**  It is duly organized and validly existing and in good standing under the laws of the State of New Jersey;

        (ii)    **Powers.** It has the power to execute and deliver this Guaranty and any other documentation relating to this Guaranty and to perform its obligations under this Guaranty and has taken all necessary action to authorize such execution, delivery and performance;

        (iii)    **No Violation or Conflict.**  Such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets;

        (iv)    **Consents.**  All governmental and other consents that are required to have been obtained by it with respect to this Guaranty have been obtained and are in full force and effect and all conditions of any such consents have been complied with; and

        (v)    **Obligations Binding.** Its obligations under this Guaranty constitute its legal, valid and binding obligations, enforceable in accordance with the terms hereof (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

    (b)    **Absence of Certain Events.**  No Event of Default or Potential Event of Default or, to its knowledge, Termination Event (each as defined in the Agreement) with respect to it has occurred and is continuing and no such event or circumstances would occur as a result of its entering into or performing its obligations under this Guaranty.

    (c)    **Absence of Litigation.**  There is not pending or, to its knowledge, threatened

against it or any of its Affiliates (as defined in the Agreement) any action, suit or proceeding at law or in equity or before any court, tribunal, governmental body, agency or official or any arbitrator that purports to draw into question, or is likely to affect, the legality, validity or enforceability against it of this Guaranty or its ability to perform its obligations under this Guaranty.

(d)    **Accuracy of Specified Information.**  All applicable information that is furnished in writing by or on behalf of it to Party A and is identified for the purpose of this Section 2(d) in Part 3 of the Schedule to the Agreement is, as of the date of the information, true, accurate and complete in every material respect.

3.    **Agreements.**  PFC agrees with Party A that, so long as it has or may have obligations under this Guaranty:

(a)    **Furnish Specified Information.**  It will deliver to Party A any documents specified in Part 3 of the Schedule to the Agreement, by the date specified in Part 3 of such Schedule or, if none is specified, as soon as practicable.

(b)    **Maintain Authorizations.**  It will use all reasonable efforts to maintain in full force and effect all consents of any governmental or other authority that are required to be obtained by it with respect to this Guaranty and will use all reasonable efforts to obtain any that may become necessary in the future.

(c)    **Comply with Laws.**  It will comply in all material respects with all applicable laws and orders to which it may be subject if failure so to comply would materially impair its ability to perform its obligations under this Guaranty.

(d)    **Stamp Tax.**  It agrees to pay any stamp, registration, documentation or similar tax ("Stamp Tax") levied or imposed upon it or in respect of its execution or performance of this Guaranty by a jurisdiction in which it is incorporated, organized, managed and controlled, or considered to have its seat, or in which a branch or office through which it is acting for the purpose of this Guaranty is located ("Stamp Tax Jurisdiction") and will indemnify Party A against any Stamp Tax levied or imposed upon Party B or in respect of Party A's execution or performance of the Agreement by any such Stamp Tax Jurisdiction which is not also a Stamp Tax Jurisdiction with respect to Party A.

4.    **Tax Gross-Up.**  All payments under this Guaranty shall be made subject to Section 2(d) of the Agreement and such Section is hereby incorporated by reference herein.

5.    **Termination.**  This Guaranty may be canceled by PFC upon written notice to Party A provided that this Guaranty shall, notwithstanding such notice, remain applicable to any Transactions then outstanding.

3

6.    **Assignment.** Neither PFC nor Party A may assign its rights or obligations hereunder to any other person without the prior written consent of PFC or Party A, as the case may be; provided, however, that (a) Party A may assign its rights and obligations hereunder to an assignee to which it has transferred its rights and obligations under and in accordance with the Agreement and (b) PFC may assign its obligations hereunder to The Prudential Insurance Company of America.

7.    **Governing Law.**  The Guaranty shall be governed by and construed in accordance with the laws of the State of New York without reference to choice of law.

**PRUDENTIAL FUNDING CORPORATION**

**By:**_____

**Name:**_____

**Title:**_____

4

CLSNYC57362800002076:1-ALL

# ISDA®

*International Swaps and Derivatives Association, Inc.*

# CREDIT SUPPORT ANNEX

*to the Schedule to the*

**Master Agreement**

*dated as of March 11, 1997*

*between*

**Lehman Brothers Finance S.A.**          **Prudential Global Funding, Inc.**

*("Party A")*                                    *("Party B")*

This Annex supplements, forms part of, and is subject to, the above-referenced Agreement, is part of its Schedule and is a Credit Support Document under this Agreement with respect to each party.

Accordingly, the parties agree as follows:

### Paragraph 1. Interpretation

(a)     ***Definitions and Inconsistency.***  Capitalized terms not otherwise defined herein or elsewhere in this Agreement have the meanings specified pursuant to Paragraph 12, and all references in this Annex to Paragraphs are to Paragraphs of this Annex.  In the event of any inconsistency between this Annex and the other provisions of this Schedule, this Annex will prevail and in the event of any inconsistency between Paragraph 13 and the other provisions of this Annex, Paragraph 13 will prevail.

(b)     ***Secured Party and Pledgor.***  All references in this Annex to the "Secured Party" will be to either party when acting in that capacity and all corresponding references to the "Pledgor" will be to the other party when acting in that capacity; *provided, however,* that if Other Posted Support is held by a party to this Annex, all references herein to that party as the Secured Party with respect to that Other Posted Support will be to that party as the beneficiary thereof and will not subject that support or that party as the beneficiary thereof to provisions of law generally relating to security interests and secured parties.

### Paragraph 2. Security Interest

Each party, as the Pledgor, hereby pledges to the other party, as the Secured Party, as security for its Obligations, and grants to the Secured Party a first priority continuing security interest in, lien on and right of Set-off against all Posted Collateral Transferred to or received by the Secured Party hereunder.  Upon the Transfer by the Secured Party to the Pledgor of Posted Collateral, the security interest and lien granted hereunder on that Posted Collateral will be released immediately and, to the extent possible, without further action by either party.

Copyright © 1994 by International Swaps and Derivatives Association, Inc.

**CREDIT SUPPORT ANNEX**
Elections and Variables
Dated as of March 11, 1997
between **Lehman Brothers Finance S.A.** ("Party A")
and **Prudential Global Funding, Inc.** ("Party B")

**Paragraph 13.  Elections and Variables**

(a)      **Security Interest for "Obligations".**  The term **"Obligations"** as used in this Annex includes the following additional obligations:

　　　　With respect to Party A:  None

　　　　With respect to Party B:  None

(b)      **Credit Support Obligations.**

　　　　(i) **Delivery Amount, Return Amount and Credit Support Amount.**

　　　　　　(A) **"Delivery Amount"** has the meaning specified in Paragraph 3(a).

　　　　　　(b) **"Return Amount"** has the meaning specified in Paragraph 3(b).

　　　　　　(C) **"Credit Support Amount"** has the meaning specified in Paragraph 3.

　　　　(ii) **Eligible Collateral.**  The following items will qualify as **"Eligible Collateral"** for the party specified:

| | | Party A | Party B | Valuation Percentage |
|---|---|---|---|---|
| (A) | Cash | [X] | [X] | 100% |
| (B) | negotiable debt obligations issued by the U.S. Treasury Department having an original maturity at issuance of not more than one year. ("Treasury Bills") | [X] | [X] | 100% |
| (C) | negotiable debt obligations issued by the U.S. Treasury Department having an original maturity at issuance of more than one year but not more than ten years ("Treasury Notes") | [X] | [X] | 100% |
| (D) | negotiable debt obligations issued by the U.S. Treasury Department having an original maturity at issuance of more than ten years. ("Treasury Bonds") | [X] | [X] | 100% |
| (E) | Other:   negotiable debentures or other similar current coupon unsecured notes which are issued and fully guaranteed as to both principal and interest by the Federal National Mortgage Association. the Government National Mortgage Corporation. or the Federal Home Loan Mortgage Corporation ("Agency Securities"). | [X] | [X] | 100% |

(F)    Other securities acceptable to the secured party:    [X]    [X]    To Be
Determined

_____

_____

All government obligations (i.e., Treasury Bills, Treasury Notes, Treasury Bonds and Agency
Securities) are or shall be collateral of a type customarily sold on a recognized market within the
meaning of Section 9-504(3) of the Uniform Commercial Code, and an over-the-counter market
shall consitute such a recognized market.

(iii) **Other Eligible Support**.  The following items will qualify as **"Other Eligible Support"**
for the party specified:  Not Applicable.

(iv) **Thresholds**.

(A)    "Independent Amount" shall not be applicable with respect to Party A.

"Independent Amount" shall not be applicable with respect to Party B.

(B)    "Rated Debt" means the long term unsecured debt of Lehman Brothers Holdings
Inc. in the case of Party A, and the long term unsecured debt of Party B's Credit Support
Provider in the case of Party B, which is rated by both Moody's Investor Services Inc.
("Moody's") and Standard & Poors Corporation ("S&P").

(C)    "Threshold" means, with respect to Pledgor, the excess of (x) the amount in U.S.
Dollars corresponding to the lowest rating of the Rated Debt of (i) Lehman Brothers
Holdings Inc. when Party A is the Pledgor hereunder and (ii) Party B's Credit Support
Provider when Party B is the Pledgor hereunder, as set forth in the table below, over (y)
the Exposure under that certain Credit Support Annex between Lehman Brothers
Special Financing Inc. ("LBSF") and Party B, dated as of March 11, 1997 (i) with
respect to LBSF when Party A is Pledgor hereunder and (ii) with respect to Party B
when Party B is Pledgor hereunder; provided, however, that if Moody's and S&P have
assigned ratings at different levels for any issue of Rated Debt, the lower of such ratings
shall be used for the purposes hereof:

| Moody's Rating | S&P Rating | Limit |
|---|---|---|
| Aaa | AAA | USD75,000,000 |
| Aa1 | AA+ | USD50,000000 |
| Aa2 | AA | USD35,000,000 |
| Aa3 | AA- | USD25,000,000 |
| A1 | A+ | USD20,000,000 |
| A2 | A | USD15,000,000 |
| A3 | A- | USD10,000,000 |

| Baa1 | BBB+ | USD5,000,000 |
| Baa2 | BBB | USD2,500,000 |
| Baa3 and below | BBB- and below | USD--0-- |

If at any time the Rated Debt relevant to the party that is Pledgor is no longer rated by either Moody's or S&P, then the Threshold Amount with respect to Pledgor shall be USD--0--; provided, however, that notwithstanding anything herein to the contrary, the Threshold Amount with respect to Pledgor shall be USD--0--so long as an Event of Default has occurred and is continuing with respect to that party.

(D) **"Minimum Transfer Amount"** means, with respect to a party, $250,000; provided, that if an Event of Default has occurred and is continuing, the minimum Transfer Amount with respect to such party shall be zero.

(E) **"Rounding"**. The Delivery Amount and the Return Amount will be rounded up and down respectively to the nearest integral multiple of $1,000.

## (c) Valuation and Timing.

(i) **"Valuation Agent"** means, for purposes of Paragraphs 3 and 5, the party making the demand under Paragraph 3, and for purposes of Paragraph 6(d), the Secured Party receiving or deemed to receive the Distributions or the Interest Amounts, as applicable.

(ii) **"Valuation Date"** means the first and fifteenth calendar day of each calendar month or, if such day does not fall on a Local Business Day, then the next following day that is a Local Business Day (additionally, each party has the option of selecting two (2) additional Local Business Days during each month as Valuation Dates) and Valuation Date shall also mean such other date on which Exposure Amount may be calculated.

(iii) **"Valuation Time"** means 4:00 p.m., New York time (or earlier in the day if the markets relevant to such determination end business earlier on such day); provided that the calculations of Value and Exposure will be made as of approximately the same time on the same date.

(iv) **"Notification Time"** means by 3:00 p.m., New York time, on a Local Business Day.

## (d) Conditions Precedent and Secured Party's Rights and Remedies.

The following Termination Event(s) will be a "Specified Condition" for the party specified (that party being the Affected party if the Termination Event occurs with respect to that party):

|  | Party A | Party B |
|---|---|---|
| Illegality | [ ] | [ ] |
| Tax Event | [ ] | [ ] |
| Tax Event Upon Merger | [ ] | [ ] |
| Credit Event Upon Merger | [X] | [X] |
| Additional Termination Event(s): | [X] | [X] |

(e) **Substitution**

    (i) **"Substitution Date"** has the meaning specified in Paragraph 4(d)(ii), unless otherwise specified here: Not later than two (2) Local Business Days following the Secured Party's receipt of Substitute Credit Support.

    (ii) **"Consent."** The Pledgor need not obtain the Secured Party's consent for any substitution pursuant to Paragraph 4(d).

(f) **Dispute Resolution**

    (i) **"Resolution Time"** means 1:00 p.m., on the Local Business Day following the date on which notice is given that gives rise to a dispute.

    (ii) **"Value."** For the purpose of Paragraph 5(i)(c) and 5(ii), the Value of Posted Credit Support other than Cash will be calculated as follows:

        With respect to any Treasury Bills, Treasury Notes or Treasury Bonds (referred to herein as "Government Obligations") the sum of (I) (x) the mean of the high bid and low asked prices quoted on such date by any principal market maker for such Government Obligations chosen by the Disputing Party, or (y) if no quotations are available from a principal market maker for such date, the mean of such high bid and low asked prices as of the day, next preceding such date, on which such quotations were available, plus (II) the accrued interest on such Government Obligations (except to the extent Transferred to a party pursuant to any applicable of this Agreement or included in the applicable price referred to in (I) of this Clause) as of such date.

    (iii) **"Alternative."** The provision of Paragraph 5 will apply.

(g) **Holding and Using Posted Collateral.**

    (i) **"Eligibility to Hold Posted Collateral; Custodians."**

        **Party A** and its Custodian will be entitled to hold Posted Collateral pursuant to Paragraph 6(b), <u>provided</u> that the following conditions applicable to it are satisfied:

        (1) Party A: Party A is not a Defaulting Party.
        (2) The Custodian, if any, is a wholly owned, direct or indirect, subsidiary of Lehman Brothers Holdings Inc.
        (3) Posted Collateral consisting of certificated securities must be held in New York, New York.

        Initially, the **Custodian** for Party A is: Not Applicable, unless otherwise specified here:
        (a) with respect to Posted Collateral in the form of Cash: Lehman Brothers Inc.
        (b) with respect to other Posted Collateral: Not Applicable.

        **Party B** and its Custodian will be entitled to hold Posted Collateral pursuant to Paragraph 6(b), <u>provided</u> that the following conditions applicable to it are satisfied:

        (1) Party B: Party B is not a Defaulting Party.
        (2) Initially, the **Custodian**, if any, is a wholly owned, direct or indirect, subsidiary of Party B.
        (3) Posted Collateral consisting of certificated securities must be held in New York, New York.

Initially. Custodian for Party B is : Not Applicable.

(ii) "Use of Posted Collateral" The provisions of Paragraph 6(c) will apply to Party A and Party B.

**(h) Distributions and Interest Amount.**

(i) "**Interest Rate.**" Except as set forth in subparagraph (iii) below, the Interest Rate will be the rate per annum equal to the overnight open repo rate as found on Bloomberg page "RPGT01D Index" for each day Cash is held by the Secured Party.

(ii) "**Transfer of Interest Amount.**" Except as set forth in subparagraph (iii) below, the Transfer of the Interest Amount will be made on the first Local Business Day of each calendar month and on any Local Business Day that Posted Collateral in the form of Cash is Transferred to the Pledgor pursuant to Paragraph 3(b).

(iii) "**Alternative to Interest Amount.**" The provisions of Paragraph 6(d)(ii) will apply, except as set forth below:

With respect to Posted Collateral in the form of Cash when Party A shall be the Secured Party and Party B shall be the Pledgor, Pledgor hereby instructs Secured Party to deposit such Cash with the Treasury Instruments Money Market Fund II offered by Lehman Brothers Institutional Funds Group Trust (the "Fund") in Secured Party's own name but for the account and at the risk of Pledgor. Except as provided in Paragraph 4(a), the Secured Party shall instruct the Fund to remit to Plegor any interest or dividends earned on the Posted Collateral in the form of Cash so invested.

**(i) Additional Representation(s).** Not Applicable.

**(j) "Other Eligible Support and Other Posted Support."**

(i) "**Value**" with respect to Other Eligible Support and Other Posted Support means: Not Applicable.

(ii) "**Transfer**" with respect to Other Eligible Support and Other Posted Support means: Not Applicable.

**(k) Demands and Notices.** All demands, specifications and notices made by a party to this Annex will be made pursuant to the Notices Section of this Agreement.

**(l) Addresses for Transfers.**

Party A:

(i) in the case of cash with respect to a Delivery Amount , by wire transfer in immediately available funds for credit to: Boston Safe Deposit and Trust Company, Boston, Massachusetts, ABA #011001234, FBO Lehman Deposit AC-160148, FFC Lehman Brothers Finance S.A. as Secured Party for Pledgor or otherwise in accordance with any insturctions provided by Party A; and in the case of cash with respect to a Return Amount, for credit to a bank account of Party A to be designated in Party A's demand for the Return Amount, as applicable.

(ii) in the case of securities or obligations that cannot be paid or delivered by book-entry, deliver to Party A or (as instructed by Party A in writing) either Lehman Brothers Inc. or Lehman Government Securities Inc. as agent for Party A, definitive certificates for such Posted Collateral

in suitable form for transfer or accompanied by duly executed instruments of transfer or appropriate updated powers of assignment duly executed in blank. All deliveries of certificated securities shall be made at the Cage, One Battery Park Plaza, 2nd Floor, New York, New York 10004, or such other account as is specified in a written notice furnished by Party A to Party B (which may be a Confirmation).

(iii) In the case of securities or obligations that can be paid or delivered by book-entry (on the records of U.S. Federal Reserve Banks:

(A) securities or obligations issued or guaranteed by the government of the United States of America or any of its agencies or instrumentalities, credit Chemical NYC/Lehman, ABA #021000128, Attn: Heike Ruelle;

(B) mortgage-backed securities paid or delivered through a U.S. Federal Reserve Bank, credit Chemical NYC/LMBS, ABA #021000128, Attn: Heike Ruelle;

Party B: information to be provided from time to time by Party B.

(m) **Other Provisions.**

(i) **No Disposition.** Without the prior written consent of Secured Party, Pledgor agrees that it will not sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, Posted Collateral, nor will it create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any of the Posted Collateral, or any interest therein, or any proceeds thereof, except for the lien and security interest provided for by this Annex.

(ii) **Secured Party's Rights and Remedies.** In the case of Posted Collateral pledged by Party B consisting of securities, Party B shall irrevocably instruct, and hereby irrevocably instructs, Party A to transfer such Posted Collateral to Lehman Brothers Inc. and shall irrevocably instruct and hereby irrevocably instructs, Lehman Brothers Inc. to liquidate the same, in the manner specified in Paragraph 8(a) and to pay to Party A the proceeds of such liquidation to be applied in accordance with Paragraph 8(a) and 8(b) hereof, all in accordance with the letter agreement the form of which is attached hereto as Exhibit 1.


LEHMAN BROTHERS FINANCE S.A.                    PRUDENTIAL GLOBAL
                                                FUNDING, INC.

By: _____                    By: _____
Title: ~~JIM STARICCO~~                          Title: ~~GARY NEUBECK~~
        ~~General Manager~~                               ~~PRESIDENT~~

By: _____
Title: _____
        Cheryl Chickowski

**EXHIBIT 1**

### PRUDENTIAL GLOBAL FUNDING, INC.

Lehman Brothers Inc.
3 World Financial Center
New York, New York 10285-1200

Lehman Brothers Finance S.A.
Genferstrasse 24
P.O. Box 311
CH-8002 Zurich
Switzerland

Gentlemen:

Reference is made to that certain Master Agreement between Lehman Brothers Finance S.A. ("LBF") and the undersigned dated as of March 11, 1997.

If there occurs an event specified in Paragraph 7 of the Credit Support Annex, then the undersigned hereby irrevocably instructs LBF to transfer to Lehman Brothers Inc. ("LBI"), as agent for LBF all Posted Collateral pledged by the undersigned, and LBI to liquidate such Posted Collateral in the form of securities, and to pay to LBF the proceeds of such liquidation to be held or applied in accordance with the Credit Support Annex. By causing its authorized signatories to sign in the space provided below, LBF hereby agrees to deliver the Posted Collateral to LBI for the purpose of such liquidation and to release its pledge thereof upon payment to it by LBI of the liquidation proceeds.

Very truly yours,

Agreed to and accepted
this ___ day of _____, 199_

**PRUDENTIAL GLOBAL
FUNDING, INC.**

**LEHMAN BROTHERS FINANCE S.A.**

By:_____
Title:_____
Date:_____

By:_____
Title:_____

By:_____
Title:_____

## PRUDENTIAL GLOBAL FUNDING, INC.

Lehman Brothers Inc.
3 World Financial Center
New York, New York 10285-1200

Lehman Brothers Finance S.A.
Genferstrasse 24
P.O. Box 311
CH-8002 Zurich
Switzerland

Gentlemen:

Reference is made to that certain Master Agreement between Lehman Brothers Finance S.A. ("LBF") and the undersigned dated as of March 11, 1997.

If there occurs an event specified in Paragraph 7 of the Credit Support Annex, then the undersigned hereby irrevocably instructs LBF to transfer to Lehman Brothers Inc. ("LBI"), as agent for LBF all Posted Collateral pledged by the undersigned, and LBI to liquidate such Posted Collateral in the form of securities, and to pay to LBF the proceeds of such liquidation to be held or applied in accordance with the Credit Support Annex. By causing its authorized signatories to sign in the space provided below, LBF hereby agrees to deliver the Posted Collateral to LBI for the purpose of such liquidation and to release its pledge thereof upon payment to it by LBI of the liquidation proceeds.

Very truly yours,

**PRUDENTIAL GLOBAL
FUNDING, INC.**

By: _S. Wenlos_
Title: GARY _____
Date: ___ PRESIDENT

Agreed to and accepted
this ___ day of _____, 199_

**LEHMAN BROTHERS FINANCE S.A.**

By: _____
Title: JIM SZARICCO
       General Manager

By: _____
Title: _____
       Cheryl Chickowski