**Hearing Date and Time:  August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Richard L. Levine
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                         :
In re                                    :   Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :   08-13555 (JMP)
                                         :
              Debtors.                   :   (Jointly Administered)
                                         :
                                         :
-------------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE**
**FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING**
**<u>SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY</u>**

PLEASE TAKE NOTICE that a hearing on the annexed Debtors' Motion

Pursuant To Sections 105(a) and 362 Of The Bankruptcy Code For An Order Enforcing The

Automatic Stay And Holding Shinsei Bank In Contempt For Violating The Automatic Stay (the

"Motion") filed by Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the

above-referenced chapter 11 cases (together, the "<u>Debtors</u>") for an order enforcing the automatic

stay and holding Shinsei Bank in contempt for violating the automatic stay, all as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

        PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Richard P. Krasnow, Esq., Richard L. Levine, Esq. and Shai Y. Waisman, Esq.,

attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of

New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004,

Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin,

Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured

Creditors appointed in these cases; and (v) any person or entity with a particularized interest in

the Motion, so as to be so filed and received by no later than **August 21, 2009 at 4:00 p.m.**

**(prevailing Eastern Time)** (the "Objection Deadline").

2

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 11, 2009
     New York, New York

                    /s/ Richard L. Levine
                    Richard P. Krasnow
                    Richard L. Levine
                    Shai Y. Waisman

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for the Debtors
                    and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Richard L. Levine
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | |

---------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE**
**FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING**
**SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and

respectfully represent:

**Preliminary Statement**

   1.  This Motion seeks to preserve a nearly half billion dollar asset of the

estate:  intercompany claims held by LBHI and its Hong Kong affiliate, Lehman Brothers Asia

Holdings Limited ("LB Asia") – whose claim will largely pass through to LBHI – in the

Japanese insolvency proceedings of their affiliate, Sunrise Finance Co., Ltd. ("Sunrise"). Shinsei Bank, one of LBHI's largest unsecured creditors and a co-chair of the Asia sub-committee within the Creditors' Committee, recently has proposed an alternative plan of liquidation in the Sunrise insolvency proceeding designed to preclude entirely LBHI's and LB Asia's recoveries from Sunrise, so that Shinsei Bank may recover virtually 100% of its Sunrise claims.

2.      Shinsei Bank's actions in Japan constitute a willful and knowing violation of the automatic stay. Shinsei Bank not only is aware of the automatic stay provided for in section 362(a) of the Bankruptcy Code, but also, being an active participant in these cases and on the Asia sub-committee within the Creditors' Committee, is acutely aware of the devastating impact that its actions in Sunrise's insolvency proceeding could have on the Debtors' estates. Accordingly, the Debtors request that Shinsei Bank be directed to comply with the automatic stay and cease any further attempts to block LBHI's and LB Asia's recoveries from Sunrise. Furthermore, the Debtors request that Shinsei Bank be held in contempt of this Court for willfully and knowingly violating the automatic stay.

## Background

3.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

6.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and, by order dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

7.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8.      Shinsei Bank is subject to the personal jurisdiction of the Court.  Shinsei Bank filed a Notice of Appearance and Request for Notices and Service of Papers on September 25, 2008 [Docket No. 354] and was appointed by the U.S. Trustee to, and remains a member of, the Creditors' Committee.

## Lehman's Business

9.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.

10.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

### Lehman's Global Business Has Resulted In Insolvency Proceedings In Multiple Countries Around The World And Significant Intercompany Clams

11.     As the Court is aware, these chapter 11 cases are among many

interdependent and increasingly coordinated insolvency, administration, liquidation,

rehabilitation, receivership or like proceedings (the "Foreign Insolvency Proceedings" and,

collectively with the Debtors' chapter 11 cases, the "Insolvency Proceedings") currently pending

around the world involving Lehman affiliates (the "Foreign Debtors").  *See*, *e.g.*, Debtors'

Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code For Approval of a Cross-

Border Insolvency Protocol [Docket No. 3647], ¶ 8.  In certain of these Foreign Insolvency

Proceedings, the Foreign Debtors remain authorized to operate their businesses and manage their

properties as debtors in possession while, in others, liquidators, administrators, trustees,

custodians, supervisors or curators have been appointed to manage the Foreign Debtors' affairs

and represent their insolvent estates (collectively, with the Debtors, the "Official

Representatives").

12.     The Debtors and the Foreign Debtors operated pre-petition as a cohesive

global organization, woven together through, among other things, LBHI's senior level

management and a centralized cash management system that collected and transferred funds

generated by Lehman's global operations, and that also disbursed those funds to local Lehman

businesses to satisfy their respective obligations.  But for the commencement of the Insolvency

Proceedings that have raised jurisdictional walls between them, the Debtors and the Foreign

Debtors would continue to share in the same coordinated operations, strategies, and cash

management that once made Lehman a unified global enterprise.

13.    Today, although divided by their separate Insolvency Proceedings, certain of the Official Representatives are attempting unprecedented coordination across numerous jurisdictions in order to preserve and maximize the value of Lehman's worldwide assets and businesses for the benefit of all of Lehman's creditors.  By an order entered June 17, 2009 [Docket No. 4020], this Court approved a Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies (the "Protocol") entered into by some of these Official Representatives that provides a framework for the Official Representatives who are parties thereto to coordinate the administration of their cases.

14.    One of the Protocol's express aims is to foster cooperation and coordination among the Official Representatives in order "to identify, preserve, and maximize the value of the Debtors' worldwide assets for the collective benefit of all creditors and other interested parties."  (Protocol § 1.4.4 (emphasis supplied)).  Many of Lehman's assets sprawl across jurisdictional borders, such that the preservation and maximization of their value and the fair allocation of the value to all creditors depends on the coordination of the various Insolvency Proceedings in which those assets are being administered.  Creditors whose recoveries will be impacted by the realization of these assets are dependent on such coordination so that their recoveries are fairly determined and they do not suffer from the fragmented nature of Lehman's global bankruptcy.  The Protocol encourages the Official Representatives to coordinate the administration of their estates so that, to whatever extent permitted by local laws, Lehman's global assets are preserved whole rather than splintered by the various Foreign Insolvency Proceedings, thereby maximizing recoveries for all of Lehman's creditors worldwide.

**Intercompany Claims**

15.    Intercompany claims are the quintessential cross-border asset.  Moreover, in the Insolvency Proceedings, and for certain of the Foreign Debtors in particular, the largest

and, in some cases, sole assets may consist of one or more claims against another Debtor or Foreign Debtor.  One of the most challenging aspects of the Official Representatives' effort to administer a global bankruptcy estate is the disentanglement of the financial relationships amongst nearly 80 separate legal entities that are financially intertwined by a complex web of intercompany financial balances.

16.    Indeed, prior to the Commencement Date, Lehman's ability to move funds upstream and downstream through its centralized cash management system was crucial to its ability to operate on a global scale.  Today, the ability to design a claims administration process that is not only orderly, but also fair to all of Lehman's creditors – wherever they may be located along the cash management stream – depends on the Official Representatives' ability to carefully unwind their intercompany relationships at every step along Lehman's many subsidiary levels. The recoveries on intercompany claims that some Official Representatives realize in another Insolvency Proceeding will have a direct impact on their own creditors' recoveries; some of these creditors, in turn, will inevitably be other Official Representatives themselves.  As recoveries in each Insolvency Proceeding stream cash back along the paths of Lehman's former cash management system, the compound effect on creditor recoveries worldwide – and ultimately, in these chapter 11 cases – may be profound.

## The Hong Kong and Japanese Insolvency Proceedings

17.    On September 19, 2008, the Tokyo District Court commenced civil rehabilitation proceedings for Sunrise under Japan's Civil Rehabilitation Act, a corporate reorganization law that leaves the debtor "in possession" and provides for reorganization pursuant to a creditor and court-approved plan (the "Sunrise Insolvency Proceeding").  Sunrise is a wholly owned subsidiary of Lehman Brothers Japan ("LBJ"), itself a wholly owned subsidiary of Lehman Brothers Holdings Japan ("LBHJ" and, collectively with LBJ and Sunrise, the

"Japanese Debtors"). LBHJ is an indirect subsidiary of LBHI. Both LBJ and LBHJ commenced

their own civil rehabilitation proceedings in Tokyo District Court on the same date as Sunrise.

18.    The deadline for filing proofs of claim in each of the Japanese Debtors'

civil rehabilitation proceedings was October 21, 2008. LBHI timely filed proofs of claim against

Sunrise aggregating to 1.4 billion Japanese Yen ("JPY") – roughly $15,000,000. The largest

creditor in the Sunrise Insolvency Proceeding, however, is LB Asia, a Hong Kong affiliate of

LBHI. LB Asia's claim in the Sunrise Insolvency Proceeding is approximately 229 billion JPY –

roughly $2.44 billion.

19.    LB Asia is also a Foreign Debtor. On September 19, 2008, the High Court

of Hong Kong appointed Joint and Several Provisional Liquidators for LB Asia. On November

19, 2008, the High Court of Hong Kong issued a winding up order appointing the same

individuals as Joint and Several Liquidators ("JSLs") and placing LB Asia in Liquidation.

20.    The JSLs of LB Asia are signatories to the Protocol; the Japanese Debtors

are not. Nevertheless, the Japanese Debtors have indicated a willingness to participate in the

general framework of the Protocol to the extent that it allows for the consensual and efficient

resolution of intercompany claims.

### The Sunrise Rehabilitation Plans

21.    Sunrise submitted its proposed rehabilitation plan to the Tokyo District

Court and to Makoto Tahira, Esq., the court-appointed supervisor of the Sunrise Insolvency

Proceeding (the "Supervisor") on May 15, 2009 (the "Sunrise Plan") (The Sunrise Plan (in the

original Japanese) is attached as Exh. 1 to the accompanying Declaration of Junya Naito (the

"Naito Decl."); a certified English translation is attached as Exh. A to the accompanying

Declaration of Richard L. Levine (the "Levine Decl.")).[1]  Sunrise expects to have at least 70

---

[1] Sunrise is expected to file a slightly modified plan in the forthcoming period. Naito Decl. ¶ 3.

billion JPY available for distribution to its creditors, whose claims amount to approximately 351

billion JPY.  Under the Sunrise Plan, all creditors of Sunrise are expected to recover 20% of their

claims on a pro rata basis.  Sunrise's main creditors are LB Asia and LBHI – who collectively

hold 72% of the claims against Sunrise – and a group of banks that include Shinsei Bank.  Under

the Sunrise Plan, LBHI would recover 2.8 million JPY – roughly $30,000 today – and LB Asia

would recover approximately 46 billion JPY – roughly $490 million today.

22.    Shinsei Bank has asserted a claim against Sunrise for approximately 25

billion JPY – roughly $266 million today.  Under the Sunrise Plan, Shinsei would recover 5

billion JPY – roughly $52 million.

23.    In order to maximize its recovery from Sunrise <u>at the expense of the
claims of LBHI and LB Asia</u>, even though Shinsei Bank is a member of the Creditors'

Committee and the co-chair of the Asian sub-committee thereof in these chapter 11 cases,

<u>Shinsei Bank has submitted its own competing rehabilitation plan</u> (the "<u>Shinsei Plan</u>") to the

Tokyo District Court and to the Supervisor (The Shinsei Plan (in the original Japanese) is

attached as Naito Decl. Exh. 2; a certified English translation is attached as Levine Decl. Exh.

B).  Shinsei Bank's proposed plan asks the Tokyo District Court to treat the clams of LBHI and

LB Asia <u>as subordinated to all other creditor claims</u>.  As a result, under Shinsei Bank's plan,

LBHI and LB Asia would recover nothing, while Shinsei Bank would recover 100% of its 25

billion JPY claim.

24.    Most of LB Asia's recovery from Sunrise is expected <u>to flow directly to
LBHI</u> as a result of LBHI's claims in LB Asia's liquidation.  LBHI's ability to maximize its

recoveries out of the Sunrise Insolvency Proceeding, in other words, will depend almost entirely

on LB Asia's ability to recover on its own claims against Sunrise – since LB Asia is by far

Sunrise's largest creditor.

**Relief Requested**

25.     The Debtors seek the entry of an Order (i) enforcing the automatic stay against Shinsei Bank's efforts to subordinate the claims of LBHI and LB Asia in the Sunrise Insolvency Proceeding, (ii) holding Shinsei Bank in civil contempt for its willful violation of the automatic stay in seeking to block all recoveries that would ultimately flow to LBHI's estate for *pro rata* distribution to LBHI's creditors -- notwithstanding its role on the Creditors' Committee; and (iii) holding Shinsei Bank liable for damages, attorneys' fees, and costs incurred by the Debtors in pursuing this Motion.

**LBHI's Direct And Indirect Claims In Foreign Proceedings
Are Property Of The Estate Subject To This Court's Jurisdiction**

26.     "Bankruptcy jurisdiction," the Supreme Court recently has observed, "at its core, is *in rem*." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006).  This jurisdiction takes hold upon the filing of a petition with the Bankruptcy Court that creates an estate comprising, with certain exceptions, all of the debtor's legal and equitable interests in property "wherever located and by whomever held."  11 U.S.C. § 541(a).  And such jurisdiction is exclusive:  The court "in which the bankruptcy case is commenced obtains exclusive *in rem* jurisdiction over all the property of the estate." *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999); *see* 28 U.S.C. § 1334(e)(1).  All property of the estate is, in effect, a legal res that is in *custodia legis* and, therefore, subject to the Bankruptcy Court's jurisdiction; the Bankruptcy Court is charged with the protection of this *res*, wherever in the world it may be located, for the benefit and fair administration of the bankruptcy estate.  *See In re Simon*, 153 F.3d at 998.

27.     The scope of what is "property of the estate" under the Bankruptcy Code is broad, and includes "tangible and intangible property," including property in which the debtor may not have a possessory interest at the time that the case is commenced.  *See United States  v.*

*Whiting Pools, Inc.*, 462 U.S. 198, 204-205 (1983).  Thus, for example, within the Bankruptcy

Code's "definition of a debtor's property fall the debtor's rights of action to collect accounts

receivable."  *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.* (*In re Crysen/Mentenay*

*Energy Co.*), 902 F.2d 1098, 1101 (2d Cir. 1990).  Thus, the Debtors' intercompany claims

against Foreign Debtors are property of the Debtors' estates and are, therefore, subject to this

Court's jurisdiction and protective charge.

### Any Attempts By Shinsei Bank To Block The Recoveries Of LBHI And LB Asia In The Sunrise Insolvency Proceeding Are Violations Of The Automatic Stay

28.    A bankruptcy court is able to protect a debtor's property principally

through enforcement of the automatic stay.  Section 362(a) of the Bankruptcy Code provides, in

pertinent part, that the filing of a petition under chapter 11 operates as an automatic stay,

applicable to all entities, of "any act to obtain possession of property of the estate or of property

from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  In

enacting section 362, Congress made clear that

> [t]he automatic stay is one of the fundamental debtor protections
> provided by the bankruptcy laws.  It gives the debtor a breathing
> spell from his creditors. It stops all collection efforts, all
> harassment, and all foreclosure actions.  It permits the debtor to
> attempt a repayment or reorganization plan, or simply to be
> relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97; S. Rep.

No. 95-989, at 54-55 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41; *see also*

*Midlantic Nat'l Bank v. N J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986) ("The automatic

stay provision . . . [is] 'one of the fundamental protections by the bankruptcy laws'") (Citation

omitted).

29.    Because LBHI's claims against Sunrise and against LB Asia are property

of the estate, *see In re Crysen/Mentenay Energy Co.*, 902 F.2d at 1101 (right to collect monies

owed is property of the estate), any attempt to interfere with or limit LBHI's recovery on its claims is necessarily a violation of the automatic stay. *See*, *e.g.*, *In re Chateaugay Corp.*, 78 B.R. 713, 725 (Bankr. S.D.N.Y. 1987) (carrier's attempt to collect freight charges directly from debtor's consignees violated the automatic stay).  And it is no answer that neither Sunrise nor LB Asia is a Debtor:  the Second Circuit has held that "[i]f action taken against the nonbankrupt party," i.e., a non-debtor party, "would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay." *See 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987) (landlord's attempt to terminate a prime lease violated the automatic stay where termination would have resulted in the destruction of the debtor's subtenancy).  Accordingly, since the greater part of LB Asia's recoveries on its claims against Sunrise would ultimately be paid to LBHI in the liquidation proceedings of LB Asia, any interference with LB Asia's ability or LBHI's ability to recover against Sunrise is a violation of the automatic stay.

30.     Indeed, one of the primary purposes of the automatic stay is to prevent individual creditors from seizing a debtor's assets and dismembering the debtor before the debtor has had the opportunity to design and obtain court approval of a plan to distribute to creditors their pro rata share of the debtor's value, and if possible, reorganize.  As the Bankruptcy Code's legislative history explains, the automatic stay prevents a race among creditors to dismember a debtor's assets in a manner that dissipates or destroys value because in the absence of a stay:

> certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.  Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.  A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6297.

31.    Therefore, a court's ability to enforce the automatic stay over <u>all</u> property of the bankruptcy estate, even if outside this country, is crucial to the success of a bankruptcy case, and thus the automatic stay has an extra-territorial reach:  "The efficacy of the bankruptcy proceeding depends on the [bankruptcy] court's ability to control and marshal the assets of the debtor wherever located . . . ."  *Underwood v. Hilliard (In re Rimsat, Ltd.)*, 98 F.3d 956, 961 (7th Cir. 1996) (bankruptcy court's *in rem* jurisdiction over property of the estate permits injunctions against foreign proceedings pursuant to the automatic stay).  As one court observed – finding that a German corporation had wilfully violated the automatic stay by causing the post-petition arrest in Belgium, by a Belgian court, of a ship belonging to the debtor in order to enforce certain prepetition debts – the purpose of the Bankruptcy Code would be undermined if creditors could avail themselves of courts in jurisdictions outside the territorial jurisdiction of the debtor's main case in order to "increase their individual benefit in preference over and to the specific detriment of all other creditors in th[e] case," and act "in disregard of the rights of all the thousands of other creditors in th[e] case around the globe."  *See Lykes Bros. S.S. Co. v. Hanseatic Marine Serv. GmBH (In re Lykes Bros. S.S. Co.)*, 207 B.R. 282, 288 (Bankr. M.D. Fla. 1997).

32.    Here, the Debtors have hundreds of thousands of unsecured creditors around the world.  These creditors are depending on this Court's enforcement of the automatic stay to preserve the value of the Debtors' worldwide assets and to ensure all creditors are treated fairly and pursuant to law.  The Debtors' intercompany claims are among the assets on which all these creditors depend for their ultimate pro rata recoveries in these chapter 11 cases.

33.    Since the Commencement Date, most of these hundreds of thousands of unsecured creditors have respected the jurisdiction of this Court and the sanctity of the automatic stay, seeking relief from, or modification of, the automatic stay before taking any action that may

implicate this court's *in rem* jurisdiction over property of the estate.  Shinsei Bank, on the other

hand, notwithstanding its active role in this case, neither sought nor obtained such relief.

34.    Even if Shinsei Bank had sought relief from the automatic stay with

regards to the Sunrise Insolvency Proceeding, such relief likely would not have been granted

given the burden Shinsei Bank would have faced on such a motion as an unsecured creditor:

"The general rule is that claims that are not viewed as secured in the context of § 362(d)(1)

should not be granted relief from the stay unless extraordinary circumstances are established to

justify such relief."  *Sonnax Industr., Inc. v. Tri Component Prods. Corp.*, 99 B.R. 591, 595

(Bankr. D. Vt. 1989), *aff'd*, 907 F.2d 1280 (2d. Cir. 1990).  Unsecured creditors bear this heavy

burden when seeking relief from the automatic stay because of the general principle that to grant

such relief "would result in a violation of one of the fundamental concepts of bankruptcy law;

that there should be an equality of distribution among creditors."  *In re Leibowitz*, 147 B.R. 341,

345 (Bankr. S.D.N.Y. 1992).  If Shinsei Bank were granted relief from stay to seek the

subordination of LBHI and LB Asia's intercompany claims in the Sunrise Insolvency

Proceeding, LBHI's estate stands to lose an amount approaching $500 million (LBHI's 2.8

million JPY distribution under the Sunrise Plan combined with LBHI's claim against LB Asia's

46 billion JPY distribution under the Sunrise Plan).  Shinsei Bank simply should not be allowed

to recover from Sunrise in preference to, and to the detriment of, LBHI's other unsecured

creditors.

35.    Moreover, if one creditor is able to clear a path in circumvention of this

Court's authority – particularly a member of the Creditors' Committee – the impact on the

Debtors' estates may not be limited to this one instance.  Other creditors will almost certainly try

to follow suit.  Many of the Debtors' unsecured creditors hold claims against multiple Foreign

Debtors.  If these creditors see that another creditor is able to subordinate the Debtors' recoveries

in a Foreign Proceeding without facing any consequences before this Court, these creditors may launch similar attacks.  The Debtors' overall recoveries in the Foreign Proceedings could well be severely impacted.

36.    The precedent that would be established if Shinsei Bank is able to violate the automatic stay in a foreign court is even more powerful because Shinsei Bank is not only subject to the personal jurisdiction of this Court, but also is an active participant in these cases. If the Court has not restrained certain creditors from interfering with the Debtors' property outside of the United States, this may be explained in most instances by the Court's lack of personal jurisdiction over them.  *See Fotochrome, Inc. v. Copal Co.,* 517 F.2d 512, 516 (2d Cir. 1975) (automatic stay "cannot be effective ... without *in personam* jurisdiction over the creditor who has begun an action in a foreign tribunal that is not within the jurisdiction of the United States").  But Shinsei Bank has not only participated regularly in these cases as one of the Debtors' 20 largest unsecured creditors, it is also an active member of the Creditors' Committee and the co-chair of the Creditors' Committee's Asia Sub-Committee.  If the Court does not enforce the automatic stay in this instance, and does not sanction Shinsei Bank for its willful violation of the automatic stay, other creditors worldwide may take note and follow suit.  The potential chain reaction could devastate the Debtors' intercompany recoveries.

**Shinsei Bank's Willful Violation Of The Automatic Stay Must Be Sanctioned**

37.    As an active participant in these chapter 11 cases, and as a member of the Creditors' Committee, Shinsei Bank has had <u>actual</u> <u>notice</u> of these cases and of the automatic stay since the Commencement Date.  Moreover, through its membership on the Creditors' Committee, and, in particular, as co-chair of the Creditors' Committee's Asia Sub-Committee, Shinsei Bank must be aware of the interdependencies among the Debtors' cases and the Foreign

Proceedings and the impact that its actions *vis à vis* Sunrise could have both on LB Asia's recoveries and on the recoveries of all unsecured creditors of LBHI.

38.    Further, as a member of the Creditors' Committee, Shinsei Bank knows that the representations it has made to the Tokyo District Court about the Protocol negotiations, and the decision of certain parties not to sign the Protocol, have no foundation in fact. Specifically, Shinsei Bank has contended that the court-appointed administrators for certain Foreign Debtors – in particular, those in the United Kingdom (the "UK Joint Administrators") – have declined to sign the Protocol primarily because they wish to protect "outside" creditors, i.e. creditors who are not Debtors or Foreign Debtors. Relying only on a Wall Street Journal article from May 26, 2009, Shinsei Bank has falsely stated to the Tokyo District Court, in a memorandum (referred to as an "Opinion") dated June 26, 2009 (original Japanese attached as Naito Decl. Exh. 3;  a certified English translation will be supplementally filed), that the UK Joint Administrators' unwillingness to sign the Protocol reflects a commonly held view among the court appointed administrators of Foreign Debtors that "outside" creditors such as Shinsei should be protected, impliedly at the expense of intercompany claims.

39.    As this Court is aware, however, this is not the reason why the UK Joint Administrators have decided not to sign the Protocol. Quite to the contrary, in a letter to this Court dated May 13, 2009 (the "JA's Letter") (attached as Levine Decl. Exh. C), the UK Joint Administrators stated that "It is important… that where an Insolvent Lehman Affiliate is a creditor of [Lehman Brothers International (Europe) or Lehman Brothers Limited], it is not treated in a manner that is materially different from that accorded to other creditors…." (JA's Letter ¶ 7.)  The UK Joint Administrators have decided not to sign the Protocol because while "[t]he Administrators share the view that co-operation with other insolvency office holders appointed to insolvent Lehman Affiliates is desirable," the Protocol might "plac[e] additional

burdens and expectations" on the UK Joint Adminstrators that are "not contemplated by national laws on the office holders." *Id.*

40.    Thus, Shinsei Bank has engaged in a blatant violation of the automatic stay and made misleading statements concerning the reasons why certain parties have not signed onto the Protocol in an attempt to choke-off the estate's recovery at what is a key source in the web of interdependent Foreign Proceedings.  Put another way, Shinsei Bank has sought to capitalize on the jurisdictionally fragmented nature of Lehman's worldwide bankruptcy in order to mislead the Tokyo District Court about the near unanimous effort that the Official Representatives have made to administer a fair, efficient, and transparent cross-border bankruptcy case.

41.    Shinsei Bank's violation of the automatic stay should not be condoned. The Second Circuit has held that "[f]or [entity] debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *Maritime Asbestosis Legal Clinic v. LTV Steel Co., (In re Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2d Cir. 1990) (*citing Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay)*, 902 F.2d 1098, 1104 (2d Cir. 1990)).  *Accord Fid. Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir. 1976) (affirming imposition of costs, including reasonable attorney's fees, under civil contempt powers for acts which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[]" disregard of bankruptcy rules regarding requirements for relief).

42.    A finding of civil contempt is appropriate where the stay is knowingly violated.  *Id.* at 57 (finding that although plaintiffs "may have a valid substantive position under [state] law," this does not "mitigate, excuse or justify their willful procedural violation of the federal bankruptcy rules" on account of which they were "in contempt of the New York

bankruptcy court"); *Bartel v. Eastern Airlines*, 133 F.3d 906, 1998 WL 2405, at *2 (2d Cir. 1998) ("Bankruptcy courts have the power to impose civil contempt sanctions"). Indeed, to be held in civil contempt for violation of the automatic stay, one need only have "actual notice of the automatic stay." *Bartel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 171 B.R. 18, 21 (Bankr. S.D.N.Y. 1994). The Supreme Court has held that sanctions in civil contempt proceedings may be employed for either or both of two purposes: "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Bartel*, 1998 WL 2405 at *2.

43.     The Debtors have devoted considerable time and resources to establishing a workable framework under the Protocol for international cooperation and to seeking coordination with Foreign Debtors' estates outside of the Protocol, all to maximize the assets of the estate and to try to effect a fair distribution to worldwide creditors. While Sunrise is not yet a signatory to the Protocol, representatives from Sunrise and its affiliated Japanese debtors have indicated their willingness to participate with LB Asia and LBHI in the framework contemplated by the Protocol to the extent that it would allow for the efficient resolution of intercompany claims. However, any consensual settlement among the Debtors and the Foreign Debtors within or outside the framework of the Protocol would ultimately need to be approved by this Court and, where required, the appropriate foreign court. If the Debtors and the Foreign Debtors are able to consensually reconcile their intercompany balances, recoveries to the creditors of the Debtors' estate should be substantially maximized. If, however, the Debtors' creditors are able to play the Debtors and various Foreign Debtors against each other, capitalizing on the jurisdictionally fragmented nature of Lehman's global bankruptcy, they may be able to reap substantial preferences to the detriment of similarly situated creditors, and create a precedent that

may substantially cloud the ability of bankruptcy courts to effectively administer future cross-border bankruptcies.

44.    Based on the foregoing, the Debtors respectfully submit that the Court should hold Shinsei Bank in contempt of court for its willful violation of the automatic stay, hold Shinei Bank liable for damages and attorneys' fees and costs in an amount to be established by the Debtors in further proceedings related to the Debtors' costs incurred as a result of Shinsei Bank's violation of the automatic stay both in connection with the Sunrise Insolvency Proceeding and in preparing and prosecuting this Motion, and direct Shinsei Bank to comply immediately with the automatic stay by withdrawing its filings seeking to subordinate intercompany claims in the Sunrise Insolvency Proceeding.

## **Notice**

45.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009, governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel for Shinsei Bank; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors

submit that no other or further notice need be provided.

46.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: August 11, 2009
         New York, New York


/s/ Richard L. Levine
Richard P. Krasnow
Richard L. Levine
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                         :

In re                                :           Chapter 11 Case No.
                                           :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :           08-13555 (JMP)
                                         :

                  Debtors.         :           (Jointly Administered)
                                         :
                                         :
----------------------------------------------------------------x

### ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY

Upon the motion, dated August 11, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), for an order enforcing the automatic stay provided for in section 362(a) of the Bankruptcy Code[1] and holding Shinsei Bank in contempt for violating the automatic stay, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee

---

[1]      All capitalized terms herein not defined here shall have the meaning ascribed to them in the Motion.

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; (vi) counsel for Shinsei Bank;

and (vii) all parties who have requested notice in these chapter 11 cases, and it appearing that no

other or further notice need be provided; and a hearing (the "Hearing") having been held to

consider the arguments made in the Motion and the Objection filed by Shinsei Bank with respect

thereto and all related filings, including the Debtors' Reply; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED, found and determined that Shinsei Bank knowingly and willfully

violated the automatic stay by interfering with LBHI's recovery on intercompany claims, having

requested that the Tokyo District Court subordinate the claims of LBHI and Lehman Brothers

Asia Holdings Limited ("LB Asia") in the civil rehabilitation proceeding of Sunrise Finance Co.,

Ltd. (the "Sunrise Insolvency Proeeding"), and that, therefore, Shinsei Bank is found to be in

contempt of court, and all actions taken by Shinsei Bank in violation of the automatic stay are

deemed null and void; and it is further

ORDERED that Shinsei Bank is directed to comply with the automatic stay and to

cease all efforts to have the intercompany claims of the LBHI and the LB Asia subordinated in

the Sunrise Insolvency Proceeding and to withdraw immediately all plans, motions or filings

intended to achieve that end in the Sunrise Insolvency Proceeding; and it is further

ORDERED that Shinsei Bank shall be liable for damages, attorneys' fees and

costs incurred by the Debtors in pursuing the Motion and in resisting Shinsei Bank's efforts in

the Sunrise Insolvency Proceeding in an amount to be established upon further proceedings; and

it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2009
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE