**Hearing Date and Time: August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: August 21, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for entry of an order compelling certain discovery from Pinnacle Foods Finance LLC, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 26, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck,

One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq. and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be received no later than **August 21, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

       PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

       PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 11, 2009
     New York, New York

                            /s/ Richard W. Slack
                            Lori R. Fife
                            Richard W. Slack
                            Robert J. Lemons

                            WEIL, GOTSHAL & MANGES LLP
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone: (212) 310-8000
                            Facsimile: (212) 310-8007

                            Attorneys for Debtors
                            and Debtors in Possession

2

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
|  | : |  |
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |
|  | : |  |

-------------------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO**
**BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), hereby move for

entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), authorizing certain discovery from Pinnacle Foods Finance

LLC ("Pinnacle"), and respectfully represent:

## PRELIMINARY STATEMENT

1.  This motion seeks basic and necessary information from a derivative counterparty to allow Lehman Brothers Special Financing, Inc. ("LBSF") to determine whether the valuation of a terminated derivative contract by Pinnacle was proper. Although the Debtors typically seek this information cooperatively in the first instance (and hundreds of counterparties who have terminated and then provided valuation statements have provided the Debtors with similar information voluntarily), the counterparty here, Pinnacle, has refused to provide it.

2.  The background of the agreement with Pinnacle is straightforward. At various dates in 2007 and 2008, LBSF entered into twelve different swap transactions with Pinnacle. On October 23, 2008, following the bankruptcies of LBHI and the affiliated debtors (which includes LBSF), Pinnacle terminated the swap transactions (the "Terminated Transactions").

3.  Based on the underlying value of the Terminated Transactions at the time of termination, LBSF was "in-the-money" with respect to the Terminated Transactions. Thus, upon termination LBSF expected that Pinnacle would owe it millions of dollars in unpaid payments in addition to millions of dollars based on the market value of the Terminated Transactions. The agreement between LBSF and Pinnacle provided that Pinnacle, as the non-defaulting party, would have the ability to control the valuation process and calculate the amounts due to LBSF under the Terminated Transactions. Pinnacle determined that it owed LBSF approximately $17.5 million, which was far less than the amount that LBSF believes it is entitled to receive with respect to the Terminated Transactions.

2

4.      Typically, a defaulting party will want to confirm that the non-defaulting party reasonably determined in good faith the amount owed after termination, and understand the non-defaulting party's basis for arriving at this amount.  It is common for a non-defaulting party to share information and confer in good faith with the defaulting party concerning the calculation when requested.  Although Pinnacle has provided LBSF with some limited information regarding its calculation of the Termination Amount, the materials it provided were neither complete nor sufficient for LBSF to understand and verify Pinnacle's calculation of the Termination Amount.  Despite requests, Pinnacle has refused to share with LBSF complete and sufficient information regarding the steps that Pinnacle took to determine the amount it says it owes LBSF.

5.      Debtors have an obligation to creditors to make sure that derivative counterparties properly value swap agreements.  The information sought from Pinnacle is designed to help LBSF meet that duty.  Since Pinnacle has refused to provide information to LBSF on a voluntary basis, this Motion is necessary.  The Court should therefore grant the Motion authorizing discovery from Pinnacle pursuant to Bankruptcy Rule 2004.

## BACKGROUND

6.      Beginning on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  LBSF commenced its chapter 11 case on October 3, 2008.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The

3

Debtors are authorized to operate their businesses and manage their properties as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of

unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors'

Committee").

## JURISDICTION

8.    This Court has subject matter jurisdiction to consider this matter

pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §

157(b).

## RELIEF REQUESTED

9.    By this Motion, the Debtors request entry of an order pursuant to

Bankruptcy Rule 2004:

>    a.    directing Pinnacle to produce responsive, non-privileged
>    documents requested on the attached Exhibit G hereto for
>    examination by the Debtors; and
>
>    b.    directing Pinnacle to designate an individual or individuals
>    with knowledge of the matters described below in paragraph 21
>    and to produce that individual(s) to be examined by the Debtors
>    under oath on such date and time and such location as may be
>    designated in writing by the Debtor on not less than 14 days notice.

## THE TRANSACTIONS

10.    LBSF and Pinnacle are parties to a 1992 ISDA Master

Agreement, including the schedule thereto (the "Schedule"), dated as of May 31, 2007

(the 1992 ISDA Master Agreement and the Schedule together, the "Master Agreement").

The Master Agreement provides the basic terms of the parties' contractual relationship

4

and contemplates being supplemented by trade confirmations that provide the economic

terms of the specific transactions agreed to by the parties.  (A copy of the Master

Agreement is annexed as Exhibit A hereto.)

        11.        Pursuant to the terms agreed upon in the Master Agreement,

LBSF and Pinnacle entered into twelve transactions (the "Transactions"),[1] the terms of

each of which were documented by twelve separate trade confirmations (the

"Confirmations," and together with the Master Agreement, the "Agreement").  (Copies of

the Confirmations are annexed as Exhibit B hereto.)  The twelve transactions are

comprised of the following:  (i)  an interest rate swap, as documented in a confirmation

dated April 25, 2007 (the "Interest Rate Swap"); (ii) an interest rate collar, as documented

in a confirmation dated April 25, 2007 (the "Interest Rate Collar"); (iii) three USD/CAD

call options, as documented in three separate confirmations, each dated April 30, 2007

(the "Call Options") (iv) three USD/CAD put options, as documented in three separate

confirmations, each dated April 30, 2007 (the "Put Options" and together with the Call

Options, the "CAD FX Collars"); and (v) four natural gas swaps, as documented in four

separate confirmations, dated July 10, 18, 22, and September 4, 2008, respectively (the

"Natural Gas Swaps").  LBHI acts as a credit support provider for the payment

obligations of LBSF under the Agreement.

        12.        Section 5(a)(vii)(4) of the Master Agreement provides that the

commencement of a bankruptcy case by LBSF or LBHI, as LBSF's credit support

provider, is an event of default.  Pinnacle delivered a letter dated October 23, 2008 (the

---

[1] Pinnacle and LBSF also entered into two additional transactions which expired by their
terms on September 30, 2008.

"Termination Notice") to LBSF, stating that an event of default had occurred under Section 5(a)(vii)(4) of the Master Agreement.  (A copy of the Termination Notice is annexed as Exhibit C hereto.)  The Termination Notice designated October 24, 2008 as the early termination date (the "Termination Date") for all Transactions.

13.     Pursuant to the Agreement, a termination amount is calculated whenever transactions under the Agreement are subject to early termination.  The Agreement specifies that "Second Method" and "Market Quotation" be used to determine which party owes and how much it owes.  The Agreement provides in relevant part that if the Second Method and Market Quotation apply,

> an amount will be payable equal to (A) the sum of the [s]ettlement [a]mount (determined by the [non-defaulting party]) in respect of the Terminated Transactions and the [t]ermination [c]urrency [e]quivalent of the Unpaid Amounts owing to the [non-defaulting party] less (B) the [t]ermination [c]urrency [e]quivalent of the Unpaid Amounts owing to the [defaulting party].  If that amount is a positive number, the [defaulting party] will pay it to the [non-defaulting party]; if it is a negative number, the [non-defaulting party] will pay the absolute value of that amount to the [defaulting party].

See Section 6(e)(i)(3) of the Agreement.  The Agreement defines the Unpaid Amounts owing to any party as

> the aggregate of … in respect of all Terminated Transactions, the amounts that became payable … to such party … on or prior to such [e]arly [t]ermination [d]ate and which remain unpaid as at such [e]arly [t]ermination [d]ate … together with … interest … from (and including) the date such amounts or obligations were or would have been required to have been paid or performed to (but excluding) such [e]arly [t]ermination [d]ate, at the [a]pplicable [r]ate ….

See Section 14 of the Agreement.   The Agreement further provides in relevant part that the settlement amount means the sum of the Market Quotations for each Terminated Transaction.  "Market Quotation" is defined in the Agreement as

> an amount determined on the basis of quotations from Reference Market-makers.  Each quotation will be for an amount, if any, that would be paid to [the party making the determination] (expressed as a negative number) or by such party (expressed as a positive number) in consideration of an agreement between such party … and the quoting Reference Market-maker to enter into a transaction (the "<u>Replacement Transaction</u>") that would have the effect of preserving for such party the economic equivalent of any payment or delivery … that would, but for the occurrence of the relevant [e]arly [t]ermination [d]ate, have been required after that date ….

<u>See</u> Section 14 of the Agreement.  The Agreement defines Reference Market-makers as

> four leading dealers in the relevant market selected by the party determining a Market Quotation in good faith (a) from among dealers of the highest credit standing which satisfy all the criteria that such party applies generally at the time in deciding whether to offer or to make an extension of credit and (b) to the extent practicable, from among such dealers having an office in the same city.

<u>See</u> Section 14 of the Agreement.

14.     On October 30, 2008, Pinnacle delivered to LBSF a three-page letter (the "<u>Valuation Letter</u>") pursuant to Section 6(d)(i) of the Agreement containing Pinnacle's determination of the amount (the "<u>Termination Amount</u>") payable to LBSF, as the party in-the-money on the Termination Date.  (A copy of the Valuation Letter is annexed as Exhibit D hereto.)

15.     The Valuation Letter informed LBSF that based on Pinnacle's calculations, the Termination Amount was $17,516,276.84.  Pinnacle calculated the Termination Amount by calculating the value of the Terminated Transactions at the time of termination (by Pinnacle's calculation, $17,715,339.84), and subtracting therefrom

7

certain costs and expenses, which it says were appropriate.  The Valuation Letter did not include any calculation of the Unpaid Amounts owing to LBSF.[2]

16.        Specifically, Pinnacle said that it "solicited quotations . . . from ten leading dealers in the interest rate swap market," of which only three Reference Market-makers were "responsive and evaluated the terms of the" Interest Rate Swap and Interest Rate Collar.  Pinnacle listed the three quotations it received for the Interest Rate Swap and the Interest Rate Collar.  Pinnacle did not state whether it solicited quotations from the same Reference Market-makers or a different set of Reference Market-makers in relation to the CAD FX Collars and the Natural Gas Swaps.  However, the Valuation Letter proceeded to list quotations with respect to the CAD FX Collars and the Natural Gas Swap from the same three Reference Market-makers who provided quotations on the Interest Rate Swap and the Interest Rate Collar, as well as from a fourth Reference Market-maker with respect to the Natural Gas Swaps.  Pursuant to the definition of Market Quotation, Pinnacle disregarded the highest and lowest quotations it received from the three Reference Market-makers on the Interest Rate Swap, the Interest Rate Collar, and the CAD FX Collars, and took the remaining quotation as the Market Quotations from those transactions.  With respect to the four quotations Pinnacle received for the Natural Gas Swaps, Pinnacle, in accordance with the definition of Market Quotation, disregarded the highest and lowest quotations and averaged the remaining two

---

[2] One day prior to receiving the Valuation Letter, LBSF received a wire transfer in the amount of $4,830,105.07 from Pinnacle, which payment may have been intended to satisfy Pinnacle's obligation to pay Unpaid Amounts owed to LBSF.  LBSF still requires additional information from Pinnacle concerning how it may have calculated the Unpaid Amounts owed to LBSF, including interest accrued thereon.

quotations to obtain the Market Quotation.  Pinnacle calculated the aggregate sum of the

Market Quotations for the Interest Rate Swap, the Interest Rate Collar, the CAS FX

Collars, and the Natural Gas Swaps to be $17,715,339.84.  Pinnacle then subtracted the

legal fees and other expenses supposedly incurred by Pinnacle of $199,060.  Pinnacle

therefore arrived at the Termination Amount of $17,516,276.84.

17.    Pinnacle did not provide LBSF with any details on how it had

calculated the Unpaid Amounts and the interest on the Unpaid Amounts, or any

documentation to support its claim of $40,000 in legal fees and $159,060 in expenses

related to its financial advisor.

18.    In response to an oral request from LBSF, on or about February

13, 2009, Pinnacle sent LBSF copies of certain emails and attachments which showed

when and from whom Pinnacle obtained the various quotations used in determining the

Termination Amount.  LBSF followed up with a request for additional information

needed to verify the Termination Amount, and in March, 2009, contacted Pinnacle again

regarding its information request.  Pinnacle responded, however, that it would not

provide any additional documents, and suggested that all future requests for

documentation be made in writing.

19.    On April 17, 2009, LBSF wrote Pinnacle (the "April 17, 2009

Letter"), asking it to provide LBSF with information and documents in nine specific

categories relevant to the determination of the Termination Amount. (A copy of the April

17, 2009 letter is annexed as Exhibit E hereto.)  These categories were designed to

provide LBSF with the information necessary to verify Pinnacle's calculation of the

Termination Amount.  For example, they included documents that would support the

specific fees and expenses that had been deducted from the Termination Amount by Pinnacle.

20.        Pinnacle responded to LBSF in a letter dated May 1, 2009 (the "May 1, 2009 Letter"), informing LBSF that Pinnacle would not provide the information requested in the April 17, 2009 Letter.  (A copy of the May 1, 2009 Letter is annexed as Exhibit F hereto.)

## THE SCOPE OF INFORMATION REQUESTED

21.        Exhibit G hereto contains a list of the types of documents that the Debtors require from Pinnacle.  The list includes documents and information relating to Pinnacle's determination of the Termination Amount.  The list includes documents concerning (as that word is defined in Southern District of New York Local Civil Rule 26.3(c)(7)):

(i) any valuation of the Terminated Transactions;

(ii) the requests by or on behalf of Pinnacle for quotations from Reference Market-makers or other persons concerning or related to the Terminated Transactions;

(iii) unpaid amounts with respect to the Terminated Transactions;

(iv) transactions executed in order to replace any of the Terminated Transactions;

(v) communications related to quotations, unpaid amounts, and/or replacement transactions in connection with the Terminated Transactions;

(vi) persons involved with respect to valuations and/or replacement transactions;

(vii) fees and expenses allegedly incurred by Pinnacle;

(viii) financial/accounting entries made on Pinnacle's books and records as a result of the termination of each Terminated Transaction;

(ix) market information for each Terminated Transaction; and

(x) documentation of the Terminated Transactions.

22.     The general scope of questions to be asked of the individual(s) designated by Pinnacle to be examined under oath will relate to the subjects covered by the requests identified on Exhibit G and the documents which are produced in response thereto.

### **ARGUMENT**

23.     Bankruptcy Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).

24.     The scope of an examination sought under Bankruptcy Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." See Fed. R. Bankr. P. 2004(b).  Thus, a "party in interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred."  In re Hilsen, 2008 WL 2945996, *4 (Bankr. S.D.N.Y., July 25, 2008) (Peck, J.) (citations omitted); see also In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions, and assessing whether wrongdoing has occurred."; In re Coffee Cupboard, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The

purpose of a Rule 2004 examination 'is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (<u>citing</u> <u>Cameron v. U.S.</u>, 231 U.S. 710, 714 (1914).

25.      The granting of a motion under Bankruptcy Rule 2004 is within the discretion of the Court.  <u>See</u> <u>In re Enron Corp.</u>, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination . . .") (citations omitted).  Bankruptcy Rule 2004 is "debtor-centric and allows considerable leeway for all manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's case".  <u>In re Hilsen</u>, 2008 WL 2945996, at *1.  Bankruptcy Rule 2004 requires a court to "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination."  <u>In re Drexel Burnham Lambert Group</u>, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

26.      The identification of any assets that are potentially property of LBSF's estate, and the evaluation of potential claims related to such assets, is important in ensuring that all available sources of value are located and pursued for the benefit of LBSF's creditors.  The amount that LBSF is owed under the Agreement is property of the estate, and thus, it is important that LBSF confirm that the counterparty, here Pinnacle, properly valued the Termination Amount under the Agreement.  The discrete categories of documents and other information sought by LBSF in this Motion are targeted to provide it with information needed to evaluate Pinnacle's valuation and determine whether its estate has a claim against Pinnacle for additional amounts.

## NO PRIOR REQUEST FOR RELIEF

27.     No prior motion for the relief requested herein has been made to this Court or any other court.

## NOTICE

28.     No trustee has been appointed in these chapter 11 cases.  The Debtors, in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837], have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Pinnacle, and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

13

WHEREFORE, for the reasons stated herein, the Debtors respectfully request that the Court enter an order, pursuant to Bankruptcy Rule 2004, granting the relief requested in this Motion in its entirety and such other and further relief as may be just and proper.

Dated:  August 11, 2009
        New York, New York

                              WEIL, GOTSHAL & MANGES LLP

                              By:  /s/ Richard W. Slack
                                   Lori R. Fife
                                   Richard W. Slack
                                   Robert J. Lemons

                                   WEIL, GOTSHAL & MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   Telephone: (212) 310-8000
                                   Facsimile: (212) 310-8007

                                   Attorneys for Debtors
                                   and Debtors in Possession

14