# Exhibit K



December 18, 2008

VIA HAND DELIVERY & OVERNIGHT FED EX

Lehman Brothers Special Financing Inc.
1271 Sixth Avenue, 43rd Floor
New York, NY 10020
Attn: Allison Carine

*RECEIVED DEC 2 2 2008*

~~031500 CHFA~~ 040307COLO

**chfa**

*financing the places where
people live and work*

1981 Blake Street

Denver, Colorado 80202

**Re:   Statement Of Amount Payable With Respect To Designated Early
Termination Date Of Transactions Under ISDA Master Agreement; Summit
ID/Reference Number For Each Respective Terminated Transaction Set
Forth on Exhibit A Hereto**

Ladies and Gentlemen:

Reference is made to the ISDA Master Agreement, including the Schedule thereto, dated as of June 19, 2003, entered into between Lehman Brothers Derivative Products Inc. ("LBDP") and Colorado Housing and Finance Authority ("CHFA"), and the Assignment and Amendment Agreement related thereto dated September 16, 2008 by and between LBDP, Lehman Brothers Special Financing Inc. ("LBSF") and CHFA, (together, the "Master Agreement"), the related transactions (the "Terminated Transactions") identified in Exhibit A hereto, and the Notice of Event of Default and Designation of Early Termination Date Under ISDA Master Agreement (the "Default Notice") delivered to LBSF on December 3, 2008 and designating December 3, 2008 as the Early Termination Date with respect to the Terminated Transactions. Terms used but not defined herein are used as defined in the Master Agreement.

## STATEMENT OF SETTLEMENT AMOUNT CALCULATION

Pursuant to Section 6(d) of the Master Agreement, CHFA hereby notifies LBSF that the amount payable by CHFA to LBSF under Section 6(e) of the Master Agreement in connection with the Early Termination Date is $60,763,665.90 calculated as follows:

| | |
|---|---|
| Settlement Amount for Terminated Transactions utilizing Loss payment measure | $61,125,819.89 |
| Plus interest due from termination date to settlement date (Exhibit B) | 77,846.01 |
| Less termination related expenses of CHFA | ($440,000.00) |
| Total | $60,763,665.90 |

## SETTLEMENT AMOUNT DETERMINATION

**I.   GOOD FAITH EFFORTS TOWARD SUCCESSFUL MARKET QUOTATION PROCESS:** Following the occurrence of an Event of Default with respect to LBSF as a result of its bankruptcy filing, CHFA retained the services of (i) its bond counsel, Sherman & Howard, LLC ("Sherman"), a law firm with extensive experience in matters related to tax-exempt financing and related interest rate derivatives, and (iii) Bond Logistix LLC ("BLX"), an industry-leading financial and derivative products advisor to governmental and not-for-profit entities to advise and otherwise assist CHFA in all matters related to CHFA's rights and interests under the Master Agreement.

303.297.chfa (2432)

800.877.chfa (2432)
toll free

303.297.7305
tdd

colorado housing and finance authority



**chfa**

*financing the places where
people live and work*

1981 Blake Street

Denver, Colorado 80202

303.297.chfa (2432)

800.877.chfa (2432)
toll free

303.297.7305
tdd

Colorado housing and finance authority

www.chfainfo.com

December 18, 2008
Page 2 of 7

After determining to designate an Early Termination Date with respect to the Terminated Transactions, CHFA directed BLX to use all available efforts to implement the Market Quotation payment measure to (a) establish a Settlement Amount for all Terminated Transactions under the Master Agreement and (b) provide a funding source for any payment due to LBSF. BLX identified thirty two (32) financial institutions as prospective Reference Market-makers (each, a "Prospect"), eliminated five (5) immediately as not meeting minimum CHFA/Rating Agency criteria, and solicited from the remaining twenty-seven (27) Prospects indications of interest in providing offers to enter into Replacement Transactions. The results of those solicitations can be summarized as follows:

1.  twenty-two (22) Prospects indicated no interest in participating. Of those that provided reasons for declining to participate, the most common reasons cited were (a) little or no chance of obtaining necessary credit, funding, and legal documentation approval and (b) insufficient expectation of reasonable return on investment of significant time and resources necessary to submit an offer even if necessary approvals could be obtained.

2.  four (4) Prospects indicated some willingness to consider providing an Offer, but all subject to CHFA modifying LBSF provisions, particularly those related to the absence of a Credit Support Annex and the Ratings-based ATE referencing the Class I Bonds rating rather than CHFA's Issuer Credit Rating. Goldman Sachs & Co. withdrew shortly thereafter, citing little or no prospect of submitting a successful Offer given its higher funding costs relative to other Prospects. Over the course of the following several days, the three remaining Prospects, the Royal Bank of Canada ("RBC"), Deutsche Bank AG, and BNY Mellon Bank, each withdrew. RBC was unwilling to enter into transactions with (i) no CSA or (ii) options or so-called "Trigger" provisions. Additionally, RBC had not recently been successful in similar competitive situations and, therefore, saw a poor return on any investment made in attempting to participate. BNY Mellon Bank withdrew because of an upper management moratorium on participating in processes such as CHFA's. Finally, Deutsche Bank was unable to obtain credit approval due to the absence of a CSA and because the Ratings-based ATE references the Class I Bonds ratings rather than CHFA's Issuer Credit Rating ("ICR").

Throughout these several days, BLX actively and persistently contacted Prospects to maximize the time and focus they allocated to considering submitting an offer and to ensure that any failure to gain credit approval was not due to a lack of understanding of the relevant legal or financial circumstances. As detailed above, however, ultimately, none of the Prospects obtained the necessary credit, funding, and legal documentation approvals required to submit offers without one or more material changes to the credit terms of the Terminated Transactions. Such required changes would have included at least one of:

a.  modifying the existing ratings-based Additional Termination Event provision reference from the current Class I Bonds rating to CHFA's ICR, a modification that would have very substantially increased the potential for the Additional Termination Event against CHFA to have been triggered; and



**chfa**

financing the places where
people live and work

December 18, 2008
Page 3 of 7

   b.   CHFA collateralizing its obligations under the Master Agreement by entering into a Credit Support Annex and/or CHFA agreeing to other exposure-limiting provisions.

3.    two Prospects, Barclays Bank PLC ("Barclays") and RBC, declined to provide a Replacement Transaction offer in response to CHFA's request, but indicated a willingness to enter into new transactions on a negotiated basis pursuant to documentation with certain material modifications relative to the Master Agreement.

CHFA's strong preference was to determine the Settlement Amount using the Market Quotation payment measure, and the quotation solicitation process it employed in support of that objective was exhaustive, conducted in good faith, and otherwise within the form, substance and intent of the procedures prescribed in the Master Agreement. However, after (1) having been informed by Barclays and RBC that neither would respond to a request for offers and (2) fulfilling its specific Market Quotation process requirements by formally soliciting offers from Deutsche Bank, BNY Mellon, Goldman Sachs, and Wells Fargo as Reference Market-makers, CHFA was not provided with a single offer. As a result of not receiving at least three offers in response to its solicitation, CHFA was unable to determine the Settlement Amount in respect of the Terminated Transactions using the Market Quotation payment measure.

In accordance with the terms of the Master Agreement, CHFA therefore determined the Settlement Amount in respect of the Terminated Transactions pursuant to the Loss payment measure. CHFA's use of the Loss payment measure was employed only as a result of its inability to obtain quotations for Replacement Transactions in connection with the Market Quotation payment measure and was conducted in good faith and otherwise in a manner consistent with the best interests of both CHFA and LBSF.

**II. SETTLEMENT AMOUNT BASIS:** Having failed to receive a single offer to enter into replacement transactions on substantially the same terms as those embodied in the Terminated Transactions, consistent with its rights and obligations under the Master Agreement, CHFA has determined, in good faith, that, except as described below in connection with the Un-Replaced Terminated Transactions, its total loss in connection with the Terminated Transactions is equal to the amount CHFA was paid to re-establish its hedging positions with new transactions (the "Replacement Transactions") entered into on a negotiated basis with Barclays and RBC that contained substantially less favorable credit/documentation terms than did the Terminated Transactions, less a value adjustment for any differences between each such new Replacement Transaction and the corresponding Terminated Transaction. More specifically, CHFA has determined that its total Loss in connection with the Terminated Transactions is equal to:

1.    with respect to the group of Terminated Transactions for which CHFA re-established its respective hedging positions by entering into Replacement Transactions the cash flows related to which are substantially similar to those of the related Terminated Transactions (the "Similar Cash Flow Transactions" – see Exhibit A), the amount actually paid to CHFA by Barclays and RBC in respect of the Similar Cash Flow Transactions, adjusted for the value of the changes in credit and documentation terms under the new ISDAs relative to the Master Agreement;

2.    with respect to the group of Terminated Transactions for which CHFA re-established its respective hedging positions by entering into Replacement Transactions the cash flows related to which are substantially similar to those of the

1981 Blake Street

Denver, Colorado 80202

303.297.chfa (2432)

800.877.chfa (2432)
toll free

303.297.7305
tdd

colorado housing and finance authority

www.chfainfo.com



**chfa**

*financing the places where
people live and work*

1981 Blake Street

Denver, Colorado 80202

303.297.chfa (2432)

800.877.chfa (2432)
toll free

303.297.7305
tdd

www.chfainfo.com

*colorado housing and finance authority*

December 18, 2008
Page 4 of 7

related Terminated Transactions other than a change in the Effective Date (the "Altered Effective Date Transactions" – see Exhibit A), the amount actually paid to CHFA by Barclays and RBC in respect of the Altered Effective Date Transactions, adjusted for (a) the value of the changes in credit and documentation terms under the new ISDAs relative to the Master Agreement and (b) the altered Effective Dates; and

3. with respect to the group of Terminated Transactions for which CHFA did not enter into a Replacement Transaction (the "Un-Replaced Terminated Transactions" – see Exhibit A), the amount was determined by applying the same criteria for (1) swap spread and (2) implicit discount (i.e., "lending") rate to the off-market cash flow as is reflected in the Replacement Transactions.

**III. PRICING IMPLICIT IN THE AMOUNTS PAID TO CHFA IN CONNECTION WITH THE SIMILAR CASH FLOW TRANSACTIONS:** As described above, CHFA's methodology for determining Loss with respect to each of the Terminated Transactions was based primarily on passing through to LBSF the payment that CHFA actually realized in connection with the corresponding Similar Cash Flow Transaction, adjusted for the value of any changes in credit and documentation terms under the new ISDAs. CHFA and its consultants independently concluded that the transaction pricing implicit in the Similar Cash Flow Transactions was extremely aggressive, particularly taking into account (a) that no other financial institutions were willing to provide offers for the Terminated Transactions without material modification to the credit terms offered by CHFA and (b) that no firms other than Barclays and RBC were willing to enter into transactions without additional changes to the ISDA documentation applicable to the Replacement Transactions. In particular, the Replacement Transactions ISDAs continue to include ratings-based ATE and/or collateral posting threshold triggers that refer to the Class I Bonds rather than CHFA's ICR despite the fact that swap payments other than scheduled payments and collateral posting obligations are payable as general obligations of CHFA, not from the bond trust estate.

Specifically, the amount paid to CHFA in connection with the Replacement Transactions (the "Payment") was a function of (1) the then-current mid-market rate for each corresponding Terminated Transaction, (2) spreads to the mid-market rates, and (3) the discount rate (i.e., implicit lending rate) applied to the off-market cash flow to determine a present value, upfront cash payment. The mid-market rate was objectively determined by BLX at the time the Replacement Transactions were entered into. Utilizing a swap spread no higher than that paid to Lehman Brothers entities with respect to its most recent CHFA transactions, CHFA concluded that the discount rate implicit in the Payment is (a) no higher than, and arguably lower than, Barclays's and RBC's own long-term borrowing costs and (b) lower than the rate at which CHFA could procure a taxable loan the ultimate security for which would be identical to that of the Terminated Transactions.

Accordingly, CHFA is confident that, had Barclays, RBC, and other firms ultimately been willing to respond to CHFA's request for Replacement Transaction offers, offers by Barclays and RBC with pricing similar to that implicit in the Payment likely would have been the highest offers provided and therefore would have been equal to or exceeded the amount required to be paid under Market Quotation.

**WIRING INFORMATION**

On the date hereof, CHFA will wire $60,763,665.90 to LBSF pursuant to the following wire instructions:



**chfa**

*financing the places where
people live and work*

1981 Blake Street

Denver, Colorado 80202

303.297.chfa (2432)

800.877.chfa (2432)
toll free

303.297.7305
tdd

www.chfainfo.com

December 18, 2008
Page 5 of 7

Citibank USD Bank Accounts
ABA #021-000-089
SWIFT Code: CITIUS33
Account No. 3078-4731
Account Name: Lehman Brothers Special Financing Inc. - DIP
Ref: Colorado Housing and Finance Authority MF/LBSF

Nothing in this letter shall be construed as a waiver of any rights CHFA may have with respect to the Master Agreement. Without limiting the generality of the foregoing, CHFA hereby reserves, all other rights and remedies it may have at law or in equity under the Master Agreement or the Transactions, including rights of setoff and recoupment, the right to file a proof of claim with the appropriate court at the appropriate time in connection with additional out-of-pocket expenses incurred by CHFA and any rights or remedies that may arise as a result of any intervening event.

This notice shall be governed by and construed in accordance with the applicable law governing the Master Agreement.

Very truly yours,

COLORADO HOUSING AND
FINANCE AUTHORITY

By: _____
Title: Chief Financial Officer

Attachments
Exhibit A – Terminated Transactions
Exhibit B – Early Termination Amount Interest Calculation Detail



December 18, 2008
Page 6 of 7

## Exhibit A – Terminated Transactions

### Terminated Transactions Related To The Similar Cash Flow Transactions

| No | Series | LBSF ID | Fixed Leg | Outstanding Notional | Scheduled Termination Date |
|----|--------|---------|-----------|----------------------|-----------------------------|
| 1 | 2006A-3(A) | 2676648 | 4.5040% | 2,490,000 | 10/01/36 |
| 2 | 2006A-3(B) | 2676710 | 3.9950% | 875,000 | 04/01/27 |
| 3 | 2007B-3(A) | 2782660 | 4.3044% | 2,635,000 | 10/01/37 |
| 4 | 2007B-3(B) | 3017616 | 4.0967% | 4,920,000 | 10/01/19 |
| 5 | 2007B-3(C) | 3270908 | 4.8805% | 2,315,000 | 04/01/38 |
| 6 | 2006A-2(A) | 2676631 | 4.3410% | 4,950,000 | 04/01/28 |
| 7 | 2006A-2(B) | 2596099 | 4.9990% | 9,575,000 | 10/01/41 |
| 8 | 2006A-2(C) | 2676618 | 4.6260% | 12,470,000 | 04/01/39 |
| 9 | 2006A-2(D) | 2596212 | 4.7400% | 3,100,000 | 04/01/26 |
| 10 | 2007B-2(A) | 2782706 | 4.2922% | 2,885,000 | 10/01/36 |
| 11 | 2007B-2(B) | 2845818 | 4.5437% | 2,140,000 | 04/01/38 |
| 12 | 2007B-2(C) | 2985244 | 4.4695% | 4,910,000 | 04/01/38 |
| 13 | 2007B-2(D) | 2430259 | 4.6510% | 4,900,000 | 04/01/28 |
| 14 | 2008A-2 | 3552965 | 4.4540% | 8,030,000 | 04/01/43 |
| 15 | 2003A | 395781/568301D | 4.5550% | 21,800,000 | 04/01/26 |
| 16 | 2006A-1(A) | 2430334 | 5.7150% | 5,120,000 | 04/01/27 |
| 17 | 2006A-1(B) | 2430356 | 5.4000% | 1,955,000 | 04/01/23 |
| 18 | 2006A-1(C) | 2596406 | 6.0024% | 7,975,000 | 04/01/27 |
| 19 | 2006A-1(D) | 2625767 | 5.7275% | 4,715,000 | 04/01/27 |
| 20 | 2006A-1(E) | 2497612 | 6.0200% | 7,255,000 | 04/01/27 |
| 21 | 2006A-1(G) | 2985224 | 5.1730% | 9,725,000 | 10/01/17 |
| 22 | 2007B-1(A) | 2782696 | 5.0931% | 8,060,000 | 04/01/37 |
| 23 | 2007B-1(B) | 2845718 | 5.4875% | 10,925,000 | 04/01/28 |
| 24 | 2007B-1(C) | 2845806 | 5.7630% | 7,910,000 | 04/01/28 |
| 25 | 2007B-1(D) | 2595997 | 6.1330% | 2,560,000 | 04/01/28 |
| 26 | 2007B-1(E) | 2596235 | 6.3600% | 1,230,000 | 04/01/38 |
| 27 | 2007B-1(F) | 3271182 | 5.8870% | 4,190,000 | 04/01/38 |
| 28 | 2007B-1(H) | 2497686 | 6.0350% | 3,970,000 | 10/01/27 |
| 29 | 2008A-1(A) | 3620879 | 4.6870% | 4,910,000 | 04/01/28 |
| 30 | 2008A-1(B) | 3552929 | 5.2950% | 11,675,000 | 04/01/29 |
| 31 | 2008B(A) | 2755754/2755762 | 5.1722% | 118,600,000 | 10/01/44 |
| 32 | 2008B(B) | 2928242/2928283 | 5.2071% | 46,915,000 | 03/01/47 |

### Terminated Transactions Related To The Altered Effective Date Transactions

| No | Series | LBSF ID | Fixed Leg | Outstanding Notional | Scheduled Termination Date |
|----|--------|---------|-----------|----------------------|-----------------------------|
| 33 | 2008C-3 | 3552985 | 4.3400% | 8,045,000 | 10/01/38 |
| 34 | 2008C-1(B) | 2928278 | 4.9640% | 10,000,000 | 05/01/13 |

### The Un-Replaced Terminated Transactions

| No | Series | LBSF ID | Fixed Leg | Outstanding Notional | Scheduled Termination Date |
|----|--------|---------|-----------|----------------------|-----------------------------|
| 35 | 2008C-1(A) | 3087157 | 5.8550% | 3,000,000 | 10/01/28 |
| 36 | 2008C-1(C) | 3707735 | 4.9050% | 10,000,000 | 10/01/28 |

financing the places where
people live and work

1981 Blake Street

Denver, Colorado 80202

303.297.chfa (2432)

800.877.chfa (2432)
toll free

303.297.7305
tdd

colorado housing and finance authority

www.chfainfo.com



**EXHIBIT B**

**Colorado Housing & Finance Authority**
**Multi-Family Housing Projects Bond Program**
  Interest Rate Swaps - Lehman Brothers Special Financing, Inc.

**Termination Amount if Paid on December 18, 2008**

| | |
|---|---|
| (A) Termination Amount: | 61,125,819.89 |
| (B) Interest at Non-Default Rate | 77,846.01 |
| (C) Total of (A) + (B) | 61,203,665.90 |
| (D) Less:Expenses | (440,000.00) |
| (E) Amount to be Remitted to LBSF | 60,763,665.90 |

_financing the places where_
_people live and work_

1981 Blake Street

Denver, Colorado 80202

**INTEREST AT APPLICABLE RATE**

| Start Date | End Date | 6M Libor Rate as of 12/18 | 6M Libor Rate * 100 bp | Balance | Interest |
|---|---|---|---|---|---|
| 12/02/08 | 12/03/08 | 1.86375% | 2.86375% | 61,125,819.89 | 4,862.47 |
| 12/03/08 | 12/04/08 | 1.86375% | 2.86375% | 61,130,682.36 | 4,862.86 |
| 12/04/08 | 12/05/08 | 1.86375% | 2.86375% | 61,135,545.22 | 4,863.25 |
| 12/05/08 | 12/06/08 | 1.86375% | 2.86375% | 61,140,408.47 | 4,863.63 |
| 12/06/08 | 12/07/08 | 1.86375% | 2.86375% | 61,145,272.10 | 4,864.02 |
| 12/07/08 | 12/08/08 | 1.86375% | 2.86375% | 61,150,136.12 | 4,864.41 |
| 12/08/08 | 12/09/08 | 1.86375% | 2.86375% | 61,155,000.53 | 4,864.80 |
| 12/09/08 | 12/10/08 | 1.86375% | 2.86375% | 61,159,865.33 | 4,865.18 |
| 12/10/08 | 12/11/08 | 1.86375% | 2.86375% | 61,164,730.51 | 4,865.57 |
| 12/11/08 | 12/12/08 | 1.86375% | 2.86375% | 61,169,596.08 | 4,865.96 |
| 12/12/08 | 12/13/08 | 1.86375% | 2.86375% | 61,174,462.04 | 4,866.34 |
| 12/13/08 | 12/14/08 | 1.86375% | 2.86375% | 61,179,328.38 | 4,866.73 |
| 12/14/08 | 12/15/08 | 1.86375% | 2.86375% | 61,184,195.11 | 4,867.12 |
| 12/15/08 | 12/16/08 | 1.86375% | 2.86375% | 61,189,062.23 | 4,867.50 |
| 12/16/08 | 12/17/08 | 1.86375% | 2.86375% | 61,193,929.73 | 4,867.89 |
| 12/17/08 | 12/18/08 | 1.86375% | 2.86375% | 61,198,797.62 | 4,868.28 |
| 12/18/08 | | | | 61,203,665.90 | |
| | | | | Total: | 77,846.01 |

303.297.chfa (2432)

800.877.chfa (2432)
toll free

303.297.7305
tdd

colorado housing and finance authority

www.chfainfo.com

# Exhibit L

| | |
|---|---|
| **From:** | John Dolton [jdolton@chfainfo.com] |
| **Sent:** | Wednesday, June 17, 2009 9:54 AM |
| **To:** | Hopson, Adam D |
| **Cc:** | jswendse@sah.com; Charles L. Borgman; Tom Hemmings |
| **Subject:** | CHFA - Lehman Request for Additional Information - Swaps |
| **Attachments:** | CHFA Additional Info Request.xls |

Hello Adam - attached is the information you requested

The attached was prepared using your spreadsheet as a template. We noted several inconsistencies between the spreadsheet you furnished and CHFA's records, which are generally noted in the attached. Also note that the LBFP trades are incorrectly labeled as having a LBSF IDs, and the LBFP trades do have associated CHFA related bond series, which are not listed. Also, the amounts listed as "Check" under "Total Per Calculation Statement" in the attached are the sum of the accrued amounts for the particular Master Agreement, from the next column (Labeled "CHFA Calc PV of Accrued Interest").

The attached is provided for your information only, as requested by you. It is not a Settlement Statement or demand for payment. Nothing in this e-mail message or its attachments shall be construed as a waiver of any rights CHFA may have with respect to the Master Agreements to which the attachment pertains. Without limiting the generality of the foregoing, CHFA hereby reserves all rights and remedies it may have at law or in equity under the Master Agreements or the Transactions thereunder, including rights of setoff and recoupment, the right to file a proof of claim with the appropriate court at the appropriate time in connection with the above amounts and any additional out-of-pocket expenses incurred by CHFA and any rights or remedies that may arise as a result of any intervening event.

-John-

John Dolton, CFA
*Director, Corporate Debt and Investment Management*

**Colorado Housing and Finance Authority**

| | | |
|---|---|---|
| 1981 Blake Street | 303.297.7328 direct | 303.294.9773 fax |
| Denver, CO 80202 | 303.297.2432 main | |
| www.chfainfo.com | 800.877.2432 toll free | |

*financing the places where people live and work*

-----Original Message-----
From: Hopson, Adam D [mailto:hopsonad@lehman.com]
Sent: Monday, June 01, 2009 2:30 PM
To: John Dolton
Subject: RE: CHFA - Lehman Request for Additional Information

John,

My apologies -- there was an error on the spreadsheet I sent to you last week. Please refer to the attached, corrected spreadsheet.

Thanks,

Adam Hopson
Lehman Brothers Holdings, Inc.
1271 Sixth Ave, New York, NY 10019
Tel: (646) 333-9249

Email: hopsonad@lehman.com

<<CHFA Additional Info Request.xls>>

> _____
> From:        Hopson, Adam D
> Sent:        Tuesday, May 26, 2009 6:06 PM
> To: 'John Dolton'
> Cc:  Roy, Rishin; Joshi, Tejal; Koyama, Satoko S; Kozlov, Anatoly;
> Arefiev, Sergey
> Subject:      CHFA - Lehman Request for Additional Information
>
> John,
>
> In order to clarify our previous conversations, attached is a
> spreadsheet that outlines our request for additional information. In
> order to fully reconcile our valuations to the calculation statements
> that CHFA sent on 12/18/08, 12/18/08, and 3/5/09, respectively
> (collectively, the "Calculation Statements"), and to identify where
> discrepancies exist, we need to understand CHFA's view of the
> calculations on a trade-by-trade basis as an initial step. The
> attached spreadsheet lists and identifies each trade listed on the
> Calculation Statements. Please simply fill in the gray cells in the
> column "MTM of Original Trades." We have filled in the total
> termination amounts as set forth in the Calculation Statements.
>
> We look forward to receipt of the information requested herein as soon
> as possible. Please note, however, that there may be additional
> questions and/or requests for further detail regarding the Calculation
> Statements. Please further note that this email message in no way
> constitutes an admission or acknowledgement by Lehman that the amounts
> set forth in the Calculation Statements have been accurately
> calculated. This email message is being sent without prejudice to
> Lehman's rights and defenses under and in respect of the Master
> Agreements referenced in the Calculation Statements, all of which are
> expressly reserved.
>
> Warm regards,
>
> Adam Hopson
> Lehman Brothers Holdings, Inc.
> 1271 Sixth Ave, New York, NY 10019
> Tel: (646) 333-9249
> Email: hopsonad@lehman.com
>
> << File: CHFA Additional Info Request.xls >>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated recipient(s) named above.  If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.  This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers.  Email transmission cannot be guaranteed to be secure or error-free.  Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such.  All information is subject to change without notice.

--------

IRS Circular 230 Disclosure:

Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*Please consider the environment before printing this email.*

*Notice: This message (including any attachments) is intended only for the use of the addressees, and it may contain confidential information and/or information protected from disclosure. If you have received this communication in error, please notify the sender immediately, do not forward it, delete it from your system, and destroy any copies.*

**Colorado Housing and Finance Association**
*Calculation Statement Dated 12/18/2008*

| ISDA Date | Lehman Entity | CHFA Calculation Statement Date | Classification Per CHFA Calculation Statements | Early Termination Date | LBSF ID | CHFA Related Series | Initial Notional | CHFA's Confirm shows Initial Notional | Fixed Leg | CHFA's Confirm shows Fixed Leg | Trade Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2676648 | 2006A-3(A) | 2,550,000 | | 4.5040% | | 9/25/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2676710 | 2006A-3(B) | 935,000 | | 3.9950% | | 9/25/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2782660 | 2007B-3(A) | 2,635,000 | 2,675,000 | 4.3044% | | 12/8/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 3017616 | 2007B-3(B) | 4,920,000 | 5,000,000 | 4.0967% | | 4/24/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 3270908 | 2007B-3(C) | 2,315,000 | 2,320,000 | 4.8805% | | 8/9/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2676631 | 2006A-2(A) | 5,195,000 | | 4.3410% | | 9/25/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2596099 | 2006A-2(B) | 9,750,000 | | 4.9990% | | 7/18/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2676618 | 2006A-2(C) | 12,725,000 | | 4.6260% | | 9/25/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2596212 | 2006A-2(D) | 3,100,000 | | 4.7400% | | 7/18/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2782706 | 2007B-2(A) | 2,885,000 | 2,995,000 | 4.2922% | | 12/8/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2845818 | 2007B-2(B) | 2,140,000 | 2,150,000 | 4.5437% | | 1/24/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2985244 | 2007B-2(C) | 4,910,000 | 4,970,000 | 4.4695% | | 4/5/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2430259 | 2007B-2(D) | 4,925,000 | | 4.6510% | | 3/8/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 3552965 | 2008A-2 | 8,030,000 | 8,055,000 | 4.4540% | | 12/28/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 395781/568301D | 2003A | 28,270,000 | | 4.5550% | | 9/23/2003 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2430334 | 2006A-1(A) | 5,350,000 | | 5.7150% | | 3/8/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2430356 | 2006A-1(B) | 2,000,000 | | 5.4000% | | 3/8/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2596406 | 2006A-1(C) | 7,975,000 | 8,360,000 | 6.0024% | | 7/18/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2625767 | 2006A-1(D) | 4,715,000 | 4,950,000 | 5.7275% | | 8/11/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2497612 | 2006A-1(E) | 7,635,000 | | 6.0200% | | 5/3/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2985224 | 2006A-1(G) | 9,725,000 | | 5.1730% | | 4/5/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2782696 | 2007B-1(A) | 8,060,000 | 8,305,000 | 5.0931% | | 12/8/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2845718 | 2007B-1(B) | 10,925,000 | 11,095,000 | 4.4988% | 5.4875% | 1/24/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2845806 | 2007B-1(C) | 7,910,000 | 8,080,000 | 5.7630% | | 1/24/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2595997 | 2007B-1(D) | 2,590,000 | | 6.1330% | | 7/18/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2596235 | 2007B-1(E) | 1,230,000 | | 6.3600% | | 8/9/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 3271182 | 2007B-1(F) | 4,190,000 | | 5.8870% | | 5/3/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2497686 | 2007B-1(H) | 4,020,000 | | 6.0350% | | 5/3/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 3620879 | 2008A-1(A) | 4,910,000 | 5,000,000 | 4.6870% | | 1/31/2008 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 3552929 | 2008A-1(B) | 11,675,000 | | 5.2950% | | 12/28/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2755754/2755762 | 2008B(A) | 118,600,000 | | 5.1722% | | 11/20/2006 |
| 6/19/2003 | LBSF | 11/13/08 | Similar Cash Flow | 12/03/08 | 2928242/2928283 | 2008B(B) | 46,915,000 | 47,015,000 | 5.2071% | | 3/9/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Altered Effective Date | 12/03/08 | 3552985 | 2008C-3 | 8,045,000 | | 4.3400% | | 12/28/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Altered Effective Date | 12/03/08 | 2928278 | 2008C-1(B) | 10,000,000 | | 4.9640% | | 3/9/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Un-Replaced Terminated | 12/03/08 | 3087157 | 2008C-1(A) | 3,000,000 | | 5.8550% | | 6/1/2007 |
| 6/19/2003 | LBSF | 11/13/08 | Un-Replaced Terminated | 12/03/08 | 3707735 | 2008C-1(C) | 10,000,000 | | 4.9050% | | 3/11/2008 |

## Calculation Statement Dated 12/18/2008

| ISDA Date | Lehman Entity | CHFA Calculation Statement Date | Classification Per CHFA Calculation Statements | Early Termination Date | LBSF ID | CHFA Related Series | Initial Notional | CHFA's Confirm shows Initial Notional | Fixed Leg | CHFA's Confirm shows Fixed Leg | Trade Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/4/2002 | LBSF | 12/18/08 | Similar Cash Flow | | 3337358 | 2007B | 50,000,000 | | 4.4050% | | 9/7/2007 |
| 12/4/2002 | LBSF | 12/18/08 | Similar Cash Flow | | 356698 | 2003B | 40,000,000 | | 4.8510% | | 7/11/2003 |
| 12/4/2002 | LBSF | 12/18/08 | Modified | 12/02/08 | 4029556 | 2001AA | 15,340,000 | | 5.5260% | | 9/2/2008 |
| 12/4/2002 | LBSF | 12/18/08 | Modified | 12/02/08 | 322834 | 2003A | 20,000,000 | | 4.1600% | | 2/26/2003 |
| 12/4/2002 | LBSF | 12/18/08 | Modified | 12/02/08 | 356674 | 2003B | 60,000,000 | | 4.3840% | | 6/11/2003 |
| 12/4/2002 | LBSF | 12/18/08 | Modified | 12/02/08 | 414617 | 2003C | 40,000,000 | | 4.5950% | | 11/5/2003 |
| 12/4/2002 | LBSF | 12/18/08 | Altered Effective Date | 12/02/08 | 3860638 | 2008B | 30,000,000 | | 4.3350% | | 5/29/2008 |
| 12/4/2002 | LBSF | 12/18/08 | Un-Replaced Terminated | 12/02/08 | 322843 | 2003A | 20,000,000 | | 4.0080% | 4.0075% | 2/26/2003 |
| 12/4/2002 | LBSF | 12/18/08 | Un-Replaced Terminated | 12/02/08 | 4046525 | 2003A | 12,000,000 | | 3.3900% | | 9/16/2008 |
| 12/4/2002 | LBSF | 12/18/08 | Un-Replaced Terminated | 12/02/08 | 356688 | 2003B | 60,000,000 | | 3.6650% | | 6/11/2003 |

## Calculation Statement Dated 3/5/2009

| ISDA Date | Lehman Entity | CHFA Calculation Statement Date | Classification Per CHFA Calculation Statements | Early Termination Date | LBSF ID | CHFA Related Series | Initial Notional | CHFA's Confirm shows Initial Notional | Fixed Leg | Trade Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/2/2000 | LBFP | 03/05/09 | N/A | 11/21/08 | 102175/205969P | N/A | 12,750,000 | | 5.2350% | 3/15/2000 |
| 3/2/2000 | LBFP | 03/05/09 | N/A | 11/21/08 | 102178/205971P | N/A | 11,545,000 | | 5.8000% | 3/15/2000 |
| 3/2/2000 | LBFP | 03/05/09 | N/A | 11/21/08 | 236504/347419P | N/A | 9,410,000 | | 5.1000% | 4/11/2002 |
| 3/2/2000 | LBFP | 03/05/09 | N/A | 11/21/08 | 102182/205973P | N/A | 35,000,000 | | 6.0680% | 3/15/2000 |
| 3/2/2000 | LBFP | 03/05/09 | N/A | 11/21/08 | 287267/412455P | N/A | 10,092,000 | | 6.1290% | 10/22/2002 |
| 3/2/2000 | LBFP | 03/05/09 | N/A | 11/21/08 | 287271/412473P | N/A | 70,715,000 | 10,920,000 | 5.1240% | 10/22/2002 |
| 3/2/2000 | LBFP | 03/05/09 | N/A | 11/21/08 | 287273/412481P | N/A | 31,960,000 | | 5.0440% | 10/22/2002 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 193495/297795P | N/A | 50,000,000 | | 5.2900% | 9/13/2001 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 193494/297487P | N/A | 46,840,000 | | 4.6000% | 9/13/2001 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 239298/350949P | N/A | 41,000,000 | | 5.4990% | 4/24/2002 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 239706/351341P | N/A | 19,090,000 | | 4.7490% | 4/25/2002 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 343056/490317P | N/A | 15,000,000 | | 5.2990% | 4/30/2003 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 249078/372045P | N/A | 50,000,000 | | 5.2850% | 7/17/2002 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 249068/363185P | N/A | 40,000,000 | | 4.5060% | 6/6/2002 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 277287/400577P | N/A | 30,000,000 | | 5.3500% | 9/19/2002 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 277707/413077P | N/A | 60,000,000 | | 4.3620% | 10/23/2002 |
| 9/13/2001 | LBFP | 03/05/09 | N/A | 12/04/08 | 287705/413087P | N/A | 40,000,000 | | 4.4220% | 10/23/2002 |

| CHFA's Confirm shows Trade Date | Effective Date | CHFA's Confirm shows Effective Date | Termination Date | CHFA Calc Of Termination Payment | CHFA Calc PV of Accrued Interest | Unpaid Amounts Plus Interest | Termination to Settlement Interest | Termination-Related Expenses |
|---|---|---|---|---|---|---|---|---|
| | 11/1/2006 | | 10/1/2036 | $68,869.40 | $7,777.85 | N/A | N/A | N/A |
| | 11/1/2006 | | 4/1/2027 | $23,594.33 | $1,971.38 | N/A | N/A | N/A |
| | 8/29/2007 | | 10/1/2037 | $76,436.33 | $7,331.18 | N/A | N/A | N/A |
| | 8/29/2007 | | 10/1/2019 | $147,431.93 | $11,940.68 | N/A | N/A | N/A |
| | 12/1/2007 | | 4/1/2038 | $106,689.77 | $8,722.04 | N/A | N/A | N/A |
| | 11/1/2006 | | 4/1/2028 | $196,171.83 | $13,235.69 | N/A | N/A | N/A |
| | 12/1/2006 | | 10/1/2041 | $978,287.62 | $36,378.80 | N/A | N/A | N/A |
| | 11/1/2006 | | 4/1/2039 | $311,870.46 | $39,422.09 | N/A | N/A | N/A |
| | 12/1/2006 | | 4/1/2028 | $395,838.77 | $10,404.66 | N/A | N/A | N/A |
| | 8/29/2007 | | 10/1/2036 | $103,409.52 | $7,473.32 | N/A | N/A | N/A |
| | 8/29/2007 | | 4/1/2038 | $60,581.32 | $6,464.05 | N/A | N/A | N/A |
| | 8/29/2007 | | 4/1/2038 | $174,397.06 | $14,207.92 | N/A | N/A | N/A |
| | 12/1/2007 | | 4/1/2028 | $475,707.05 | $15,700.17 | N/A | N/A | N/A |
| | 4/23/2008 | | 4/1/2043 | $148,275.25 | $23,023.27 | N/A | N/A | N/A |
| 6/19/2003 | 10/1/2003 | | 4/1/2026 | ($68,379.81) | $63,393.74 | N/A | N/A | N/A |
| | 12/1/2006 | | 4/1/2027 | $713,980.38 | $24,630.82 | N/A | N/A | N/A |
| | 2/1/2007 | | 4/1/2023 | $383,979.68 | $8,510.70 | N/A | N/A | N/A |
| | 1/1/2007 | | 4/1/2027 | $1,329,478.70 | $42,934.80 | N/A | N/A | N/A |
| | 1/1/2007 | | 4/1/2027 | $701,422.41 | $23,167.02 | N/A | N/A | N/A |
| | 12/1/2006 | | 4/1/2027 | $1,152,888.59 | $39,276.96 | N/A | N/A | N/A |
| | 10/1/2017 | | 10/1/2017 | $1,268,793.24 | $38,859.89 | N/A | N/A | N/A |
| | 8/29/2007 | | 4/1/2037 | $1,411,858.14 | $30,856.60 | N/A | N/A | N/A |
| | 8/29/2007 | | 4/1/2028 | $1,451,315.30 | $49,194.88 | N/A | N/A | N/A |
| | 10/1/2007 | | 4/1/2028 | $632,229.67 | $39,345.86 | N/A | N/A | N/A |
| | 10/1/2007 | | 4/1/2038 | $446,354.98 | $14,354.07 | N/A | N/A | N/A |
| | 10/1/2007 | | 4/1/2038 | $268,480.53 | $7,374.25 | N/A | N/A | N/A |
| | 11/1/2007 | | 4/1/2027 | $705,384.10 | $21,730.55 | N/A | N/A | N/A |
| | 12/1/2007 | | 10/1/2027 | $913,767.59 | $21,594.56 | N/A | N/A | N/A |
| | 5/1/2008 | | 4/1/2028 | $389,672.43 | $15,386.70 | N/A | N/A | N/A |
| | 11/1/2008 | | 4/1/2029 | $1,540,642.48 | $36,346.48 | N/A | N/A | N/A |
| | 11/29/2006 | | 10/1/2044 | $27,995,807.39 | $480,217.43 | N/A | N/A | N/A |
| | 5/1/2007 | | 3/1/2047 | $12,536,480.20 | $192,765.82 | N/A | N/A | N/A |
| | | | Total | $59,671,223.03 | | | | |
| | 10/8/2008 | | 10/1/2038 | $264,543.72 | $25,462.92 | N/A | N/A | N/A |
| | 11/1/2008 | 10/1/2008 | 5/1/2013 | $836,449.74 | $36,930.21 | N/A | N/A | N/A |
| | | | Total Per Calculation Statement | $61,125,819.89 | | | | |
| | 11/1/2008 | | 10/1/2028 | $504,896.69 | $10,822.43 | N/A | N/A | N/A |
| | 11/1/2008 | | 10/1/2028 | $1,023,616.27 | $27,688.06 | N/A | N/A | N/A |
| | | | Check | $1,454,596.86 | | | | |

| | Termination Payment | Accrued Interest | Unpaid Amounts Plus Interest | Termination to Settlement Interest | Termination-Related Expenses |
|---|---|---|---|---|---|
| Total | $59,671,223.03 | $1,454,596.86 | $0.00 | $77,846.01 | ($440,000.00) |
| Total Per Calculation Statement | $61,125,819.89 | | $0.00 | N/A | N/A |
| Check | $1,454,596.86 | | $0.00 | N/A | N/A |

### Table 1

| Effective Date | CHFA's Confirm shows Effective Date | Termination Date | CHFA Calc Of Termination Payment | CHFA Calc PV of Accrued Interest | Unpaid Amounts Plus Interest | Termination to Settlement Interest | Termination-Related Expenses |
|---|---|---|---|---|---|---|---|
| 10/18/2007 | | 5/1/2038 | $2,680,987.79 | $128,953.62 | N/A | N/A | N/A |
| 8/1/2003 | | 11/1/2026 | $2,700,203.53 | $94,533.80 | N/A | N/A | N/A |
| 9/2/2008 | | 5/1/2018 | $2,433,253.99 | $55,533.54 | N/A | N/A | N/A |
| 2/26/2003 | | 11/1/2021 | $1,328,533.89 | $49,077.40 | N/A | N/A | N/A |
| 7/9/2003 | | 11/1/2026 | $3,337,716.48 | $153,668.56 | N/A | N/A | N/A |
| 11/13/2003 | | 11/1/2026 | $2,732,951.91 | $109,651.88 | N/A | N/A | N/A |
| 9/11/2008 | | 11/1/2038 | $2,122,543.63 | $68,055.37 | N/A | N/A | N/A |
| 2/26/2003 | | 11/1/2011 | $162,910.52 | $12,239.81 | N/A | N/A | N/A |
| 9/16/2008 | 8/1/2003 | 5/1/2011 | $62,491.17 | $6,348.77 | N/A | N/A | N/A |
| 8/1/2003 | | 5/1/2012 | $574,817.06 | $38,882.99 | N/A | N/A | N/A |
| **Total** | | | $18,136,409.97 | $715,945.73 | $0.00 | $24,009.18 | ($190,000.00) |
| **Total Per Calculation Statement** | | | $18,852,355.70 | | $0.00 | N/A | N/A |
| **Check** | | | $715,945.73 | | $0.00 | N/A | N/A |

### Table 2

| CHFA's Confirm shows Trade Date | Effective Date | Termination Date | CHFA Calc Of Termination Payment | CHFA Calc PV of Accrued Interest | Unpaid Amounts Plus Interest | Termination to Settlement Interest | Termination-Related Expenses |
|---|---|---|---|---|---|---|---|
| 3/2/2000 | 3/21/2000 | 10/1/2000 | $942,416.50 | $38,842.21 | $192,263.29 | N/A | N/A |
| 3/2/2000 | 3/21/2000 | 4/1/2015 | $168,888.00 | $42,260.24 | N/A | N/A | N/A |
| 3/2/2000 | 1/29/2003 | 10/1/2022 | ($76,201.00) | $24,827.64 | N/A | N/A | N/A |
| | 7/3/2002 | 10/1/2023 | $2,767,071.00 | $124,000.79 | N/A | N/A | N/A |
| | 4/1/2003 | 10/1/2032 | ($785,426.00) | $2,562.88 | N/A | N/A | N/A |
| | 10/1/2003 | 10/1/2032 | ($6,372,338.00) | $188,913.68 | N/A | N/A | N/A |
| | 10/1/2003 | 10/1/2032 | ($2,013,410.50) | $88,958.74 | N/A | N/A | N/A |
| **Total** | | | ($5,369,000.00) | $510,366.18 | $192,263.29 | ($51,948.78) | ($165,000.00) |
| **Total Per Calculation Statement** | | | ($4,858,633.82) | | $192,263.29 | N/A | N/A |
| **Check** | | | $510,366.18 | | $0.00 | N/A | N/A |

### Table 3

| Effective Date | | Termination Date | CHFA Calc Of Termination Payment | CHFA Calc PV of Accrued Interest | Unpaid Amounts Plus Interest | Termination to Settlement Interest | Termination-Related Expenses |
|---|---|---|---|---|---|---|---|
| 10/4/2001 | | 11/1/2013 | $451,190.50 | ($2,378.70) | N/A | N/A | N/A |
| 10/4/2001 | | 5/1/2031 | ($1,153,593.50) | $128,023.38 | N/A | N/A | N/A |
| 4/25/2002 | | 11/1/2013 | $464,751.50 | $7,230.70 | N/A | N/A | N/A |
| 4/25/2002 | | 11/1/2021 | $422,800.50 | $62,789.41 | N/A | N/A | N/A |
| 10/24/2002 | | 5/1/2020 | $387,523.50 | $5,756.67 | N/A | N/A | N/A |
| 7/18/2002 | | 11/1/2013 | $388,017.50 | $4,793.14 | N/A | N/A | N/A |
| 7/18/2002 | | 11/1/2032 | ($45,627.00) | $122,742.74 | N/A | N/A | N/A |
| 10/24/2002 | | 10/1/2032 | ($3,658,385.00) | $9,738.57 | N/A | N/A | N/A |
| 10/24/2002 | | 11/1/2011 | $47,298.50 | ($11,393.74) | N/A | N/A | N/A |
| 10/24/2002 | | 5/1/2022 | ($1,400,204.50) | $110,332.58 | N/A | N/A | N/A |
| **Total** | | | ($4,096,227.50) | $437,634.76 | $0.00 | ($35,613.71) | ($190,000.00) |
| **Total Per Calculation Statement** | | | ($3,658,592.74) | | $0.00 | N/A | N/A |
| **Check** | | | $437,634.76 | | $0.00 | N/A | N/A |

# Exhibit M

# LEHMAN BROTHERS

July 9, 2009

BY COURIER

Colorado Housing and Finance Authority
1981 Blake Street
Denver, Colorado 80202
Attn: Director of Finance

Dear Sir or Madam:

      I am a member of the Derivatives Legal team for Lehman Brothers Holdings Inc. ("Holdings") and its affiliated debtors, including Lehman Brothers Financial Products Inc. ("LBFP" and, together with its affiliated debtors, the "Debtors"). On September 15, 2008 and periodically thereafter, Holdings and certain of its subsidiaries commenced with the United States Bankruptcy Court for the Southern District of New York voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LBFP commenced its voluntary chapter 11 case on October 5, 2008.

      Reference is hereby made to (i) the 1992 ISDA Master Agreement (Local Currency – Single Jurisdiction), dated as of March 2, 2000 (as amended, supplemented or modified, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to Transactions entered into in connection therewith, the "2000 LBFP Master Agreement"), between LBFP and Colorado Housing and Finance Authority ("Counterparty"), (ii) the 1992 ISDA Master Agreement (Local Currency – Single Jurisdiction), dated as of September 13, 2001 (as amended, supplemented or modified, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to Transactions entered into in connection therewith, the "2001 LBFP Master Agreement" and, together with the 2000 LBFP Master Agreement, the "Master Agreements"), between LBFP and Counterparty, (iii) the Notice of Designation of Early Termination Date, dated November 21, 2008, from Counterparty to LBFP with respect to the 2000 LBFP Master Agreement (the "2000 LBFP Early Termination Notice"), (iv) the Notice of Designation of Early Termination Date, dated December 4, 2008, from Counterparty to LBFP with respect to the 2001 LBFP Master Agreement (the "2001 LBFP Early Termination Notice" and, together with the 2000 LBFP Early Termination Notice, the "Early Termination Notices"), (v) the letter, dated March 5, 2009, from Counterparty to LBFP containing a calculation statement for payment on early termination of the 2000 LBFP Master Agreement and the 2001 LBFP Master Agreement (the "2000/2001 LBFP Calculation Statement") and (vi) the email, dated April 6, 2009, from John Dolton, Director of Counterparty to Adam Hopson, with various attachments with respect to the bid forms used for the 2000/2001 LBFP Calculation Statement ("LBFP Bid Forms").

      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Master Agreements, the 2000/2001 LBFP Calculation Statement or, if not defined in

Colorado Housing and Finance Authority
Page 2

any of the foregoing documents, in the 1992 ISDA Master Agreement (Local Currency – Single Jurisdiction) published by the International Swaps and Derivatives Association, Inc.

LBFP is in the process of reviewing the Early Termination Notices and the 2000/2001 LBFP Calculation Statement and wishes to consolidate its requests for information relative to those communications by means of this letter. LBFP is seeking the information listed below. Please indicate if a request is not applicable or duplicative and provide an explanation. We reserve the right to revise and /or expand our request at a later date.

1.    2000 LBFP Master Agreement.  Please address the questions and provide the information indicated in bold below in connection with the 2000/2001 LBFP Calculation Statement.  For your convenience, we have attached hereto a copy of the 2000/2001 LBFP Calculation Statement as Annex A which has been annotated in the margin to correspond to the points below.

(a) You are seeking (i) reimbursement of $165,000 of "termination related expenses" and (ii) reimbursement of interest amounts.  **Please provide us with a detailed breakout of expenses and any supporting documentation. Why are you requesting interest? Pursuant to the Bankruptcy Code, the Debtors are not required to pay interest on unsecured claims.**

(b) You indicated that 12 firms were solicited to provide quotations.  **Please provide any evidence of such solicitation, including any documentation or emails.**

(c) You indicated that Wells Fargo calculated a portfolio value of $15,762,000 payable to LBFP.  **Please provide any details related to such calculation, including emails or responses to bid forms.**

(d) You indicated that Barclays calculated a portfolio value of $26,500,000 payable to CHFA.  **Please provide any details related to such calculation, including methodology, emails or responses to bid forms.  Did they value the same portfolio? Who were the Barclays traders who provided the valuation?**

(e) You indicated that CHFA believes Wells Fargo and Barclays are knowledgeable about swaps of this nature and satisfy the ISDA definition of "leading dealers in the relevant market".  **Please provide names of personnel at both firms that provided the quotes.**

(f) You indicated that you calculated Loss to be $5,369,000 less the present value of the amount of current period accrued ($510,366.18) for a total value of $4,858,633.82 payable to CHFA.  **Please provide the calculation of the present value of the current period accrual.**

(g) **Did you replace the trades? If yes, at what price?**

Colorado Housing and Finance Authority
Page 3

    2.    <u>2001 LBFP Master Agreement</u>.  Please address the questions and provide the information indicated in bold below in connection with the 2000/2001 LBFP Calculation Statement.  For your convenience, we have attached hereto a copy of the 2000/2001 LBFP Calculation Statement as <u>Annex A</u> which has been annotated in the margin to correspond to the points below.

(a) You requested reimbursement of (i) termination related expenses in the amount of $190,000 and (ii) reimbursement of interest amounts.  **Please provide us with a detailed breakout of termination related expenses and any supporting documentation.   Why are you requesting interest? Pursuant to the Bankruptcy Code, the Debtors are not required to pay interest on unsecured claims.**

(b) You indicated that eight firms were solicited.  **Please provide any evidence of such solicitation, including any documentation or emails.**

(c) You indicated that no firm was willing to provide quotes to enter into replacement transactions.  **Please summarize any reasons given regarding why Barclays and Wells Fargo were not able to provide indicative bids for these transactions.  Please provide copies of any documentation on this point.**

(d) You indicated that one valuation approach approximated the floating rate on the swaps by analyzing the spread between SIFMA and LIBOR and the remarketing history of the bonds. **Please provide detailed calculations using this methodology for each Transaction.**

(e) You indicated that another approach approximated the floating rate by first looking at spreads between market swap rates and rates on tax-exempt or taxable fixed rate bond structures and the resulting spread was added to SIFMA or LIBOR.  **Please provide detailed calculations using this methodology for each Transaction.**

(f) You indicated that CHFA averaged the results from the two methods, resulting in $4,096,227.50 payable to CHFA less present value of current period accrual of $437,634.76, resulting in a net payable of $3,658,592.74 to CHFA.  **Please provide the calculation of the present value of the current period accrual.**

(g) The 2000/2001 LBFP Calculation Statement was received by LBFP 104 days after the Early Termination Date of the 2000 LBFP Master Agreement and 91 days after the Early Termination Date of the 2001 LBFP Master Agreement, respectively.  **Please explain the reasons for the delay.**

Colorado Housing and Finance Authority
Page 4

(h) CHFA used BLX as the advisor for the LBSF ISDAs and used Swap Financial for the LBFP ISDAs. **Please explain why CHFA chose to use two different advisors?**

3.    Valuation Methodology and Quotations with respect to Terminated Transactions.

(a) Please provide a narrative description of the methodology used to determine the valuations of Terminated Transactions, including how quotations, if any, were utilized and all other inputs, assumptions, values and applicable parameters.

(b) Please provide documentation to support any and all requests by or on behalf of Counterparty for quotations from Reference Market-makers or other persons concerning or otherwise related to the Terminated Transactions (including specifying to whom and when such requests were made, the form of request that was made, in what manner the Reference Market-makers responded and the nature of any follow-up requests).

4.    Unpaid Amounts.    Please specify any Unpaid Amounts included in Counterparty's calculations of any amounts due with respect to Terminated Transactions.

5.    Replacement Transactions.    Please provide documentation evidencing any transactions executed in order to replace any Terminated Transactions, including specifying any cash (or other consideration) paid or received by or to any person to replace the Terminated Transactions, the name of each entity that effectuated a replacement and when any such transactions were effected.

6.    Communications related to Market Quotations, Unpaid Amounts and/or Replacement Transactions.    Please provide all internal and external communications (including all transaction confirmations, other documents, e-mails, text messages, screen-shots, voice recordings, Bloomberg or other electronic texts, tapes, quotations requested and/or received or any other writings or information) evidencing or concerning the requests, responses, follow-up requests, determinations (including methodology used in such determinations), Unpaid Amounts and replacement transactions referred to in items 3, 4 and 5 above.

7.    Persons involved with respect to valuations and/or replacement transactions.    Please provide the names, contact information (including telephone numbers, facsimile numbers and e-mail addresses) and description of the roles of each person (whether such person is inside or outside your organization, including any financial advisors, companies, entities or other persons consulted in connection with any Terminated Transactions) who was involved in the valuation of any Terminated Transactions or in the replacement of any Terminated Transactions.

Colorado Housing and Finance Authority
Page 5

8.    Fees and expenses.  Please provide supporting documents and/or other information related to all fees, expenses or other ancillary items incurred by Counterparty with respect to Terminated Transactions.

9.    Financial/Accounting Entries.  Please provide any profit, loss, valuation or other financial or accounting entries made on Counterparty's books and records as a result of the termination of each Terminated Transaction, and all supporting documents or other information related to the determination of such amounts.

10.    Market information.  Please provide the historical bid/offer spread and midpoint (or estimate) for each Terminated Transaction as of the close of business for each day from and including September 12, 2008 to and including the Early Termination Date designated by Counterparty for each Terminated Transaction.  Please provide Counterparty's internal valuation models and external sources (e.g. screen shots from Bloomberg or other financial services) evidencing these amounts.

11.    Documentation of Terminated Transactions.  Please provide copies of all master agreements, other agreements, confirmations and other documents related to Terminated Transactions, including with respect to rebooking of Terminated Transactions.

Please forward the information requested herein as soon as possible, and in any case no later than July 27, 2009.  Please note that if you do not provide the requested information described above, LBFP may pursue legal avenues to obtain such information from you.  This letter in no way constitutes an admission or acknowledgment by LBFP that the Terminated Transactions were actually terminated or were terminated properly, that the amount set forth in the 2000/2001 LBFP Calculation Statement has been accurately calculated or is due or owing by LBFP, or that such amount accrues interest.

The foregoing information requests are without waiver of or prejudice to any and all of the rights and remedies of LBFP in connection with the above transactions, including under each applicable ISDA Master Agreement and with respect to your purported termination and valuation calculation and under any applicable law.

Please contact me with any questions related to the foregoing at (646) 333-9836 or david.downie@lehman.com.

Yours truly,

David C. Downie

# Exhibit N

# LEHMAN BROTHERS

July 9, 2009

BY COURIER

Colorado Housing and Finance Authority
1981 Blake Street
Denver, Colorado 80202
Attn: Director of Finance

Dear Sir or Madam:

      I am a member of the Derivatives Legal team for Lehman Brothers Holdings Inc. ("Holdings") and its affiliated debtors, including Lehman Brothers Special Financing Inc. ("LBSF" and, together with its affiliated debtors, the "Debtors"). On September 15, 2008 and periodically thereafter, Holdings and certain of its subsidiaries commenced with the United States Bankruptcy Court for the Southern District of New York voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LBSF commenced its voluntary chapter 11 case on October 3, 2008.

      Reference is hereby made to (i) the 1992 ISDA Master Agreement (Local Currency – Single Jurisdiction), dated as of June 19, 2003 (as amended, supplemented or modified, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to Transactions entered into in connection therewith, the "2003 LBSF Master Agreement"), originally between Lehman Brothers Derivative Products Inc. ("LBDP") and Colorado Housing and Finance Authority ("Counterparty") and subsequently novated from LBDP to LBSF on September 16, 2008, (ii) the 1992 ISDA Master Agreement (Local Currency – Single Jurisdiction), dated as of December 4, 2002 (as amended, supplemented or modified, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to Transactions entered into in connection therewith, the "2002 LBSF Master Agreement" and, together with the 2003 LBSF Master Agreement, the "Master Agreements"), originally between LBDP and Counterparty and subsequently novated from LBDP to LBSF on September 16, 2008, (iii) the Notice of Designation of Early Termination Date, dated December 3, 2008, from Counterparty to LBSF with respect to the 2003 LBSF Master Agreement (the "2003 LBSF Early Termination Notice"), (iv) the Notice of Designation of Early Termination Date, dated December 2, 2008, from Counterparty to LBSF with respect to the 2002 LBSF Master Agreement (the "2002 LBSF Early Termination Notice" and, together with the 2003 LBSF Early Termination Notice, the "Early Termination Notices"), (v) the letter, dated December 18, 2008, from Counterparty to LBSF containing a calculation statement for payment on early termination of the 2003 LBSF Master Agreement (the "2003 LBSF Calculation Statement"), (vi) the letter, dated December 18, 2008, from Counterparty to LBSF containing a calculation statement for payment on early termination of the 2002 LBSF Master Agreement (the "2002 LBSF Calculation Statement" and, together with the 2003 LBSF Calculation Statement, the "Calculation Statements") and (vii) the email, dated April 6, 2009, from John Dolton,

Colorado Housing and Finance Authority
Page 2

Director of Counterparty to Adam Hopson, with various attachments with respect to the bid forms used for the Calculation Statements ("LBSF Bid Forms"), including the Request for Offers – Interest Rate Exchange Agreements, dated December 1, 2008 (the "LBSF Request for Offers").

Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Master Agreements, the Calculation Statements or, if not defined in any of the foregoing documents, in the 1992 ISDA Master Agreement (Local Currency – Single Jurisdiction) published by the International Swaps and Derivatives Association, Inc.

LBSF is in the process of reviewing the Early Termination Notices and the Calculation Statements and wishes to consolidate its requests for information relative to those communications by means of this letter. LBSF is seeking the information listed below. Please indicate if a request is not applicable or duplicative and provide an explanation. We reserve the right to revise and /or expand our request at a later date.

1.    2003 LBSF Calculation Statement.   Please address the questions and provide the information indicated in bold below in connection with the 2003 LBSF Calculation Statement. For your convenience, we have attached hereto a copy of the 2003 LBSF Calculation Statement as Annex A which has been annotated in the margin to correspond to the points below.

(a) You list interest due of $77,846.01. **Why was the rate of 6M LIBOR + 100bps used to calculate interest? Pursuant to the Master Agreements, we are entitled to Default Interest on amounts payable pursuant to Section 6(e) thereof.**

(b) You list "termination related expenses" of $440,000. **Please provide a detailed breakout of expenses and any supporting documentation.**

(c) You indicated that BLX identified 32 financial institutions as prospective Reference Market Makers. **Please identify them. Why did you and BLX approach so many financial institutions?**

(d) You indicated that BLX eliminated five Reference Market Makers because they did not meet "minimum CHFA/Rating Agency criteria." **Please identify the eliminated financial institutions. Please describe the CHFA/Rating Agency criteria and provide any supporting documentation.**

(e) You indicated that BLX solicited "indications of interest in providing offers to enter into Replacement Transactions" which is a request for firm bids as opposed to non-actionable, market quotations. **Why did BLX solicit firm bids as opposed to market quotations? How many of the 32 financial institutions whose quotations were solicited indicated a willingness to offer a market quotation as opposed to a firm bid?**

Colorado Housing and Finance Authority
Page 3

(f) You indicated that 22 prospects indicated no interest in participating. **Please provide evidence of their responses.**

(g) You indicated that four prospects "indicated some willingness to consider" providing offers subject to the Counterparty modifying provisions related to absence of a Credit Support Annex and a ratings-based Additional Termination Event referencing the Counterparty's Issuer Credit Rating. **Please provide any available documentation (including emails) evidencing the requested modifications. This relates solely to third-party assessments of your credit profile and, as such, is not relevant to the valuation process.**

(h) You indicated that four prospects decided not to provide an offer, i.e., Goldman, Deutsche Bank, BNY Mellon and the Royal Bank of Canada ("RBC"). **Please provide any communications evidencing their decision.**

(i) You indicated that your total loss is equal to the amount incurred by CHFA to reestablish hedging positions with Barclays and RBC with "substantially less favorable credit/documentation terms than ... the Terminated Transactions, less a value adjustment for any differences between each such new Replacement Transaction and the corresponding Terminated Transaction." **Please specify the "substantially less favorable credit/documentation terms." Please specify the "value adjustment" and quantify? Please explain why these factors are relevant in calculating your total loss given that it is due to CHFA's credit profile and unrelated to LBSF or Holdings?**

(j) You indicated that two transactions were replaced with cash flows "substantially similar to those of the related Terminated Transactions" as adjusted for the value of changes in credit and documentation terms. **Please explain the meaning of "substantially similar" in the context of the two replaced transactions. Please provide trade details and terms as necessary to illustrate. Please quantify the adjustment value per trade for changes in credit and documentation terms.**

(k) You indicated that one transaction was replaced with cash flows "substantially similar to those of related Terminated Transactions" but with an altered effective date. **Why was the effective date altered? What were the precise alterations? If effective dates were moved forward to the present time, was interest that accrued before such date excluded from the valuation?**

(l) You indicated that two transactions were not replaced but the loss was determined by applying the same criteria for swap spread and implicit discount ("lending") rate to the off-market cash flow as is reflected in the Replacement Transactions. **What is meant by "swap spread and ...**

Colorado Housing and Finance Authority
Page 4

implicit discount (i.e., "lending") rate to the off-market cash flow"? Please quantify what impact this had on value?

(m) You indicated that the methodology for determining Loss was primarily based on "passing through to LBSF the payment that CHFA actually realized …, adjusted for the value in any changes in credit and documentation terms under the new ISDAs." **Was the amount CHFA received from Barclays and RBC adjusted prior to making payment to LBSF? If so, please provide the exact adjustment amount.**

(n) You indicated that (i) the amount paid to CHFA in connection with the Replacement Transactions was a function (among other things of) "spreads to the mid-market rates" and (ii) the discount rate was determined using a "swap spread no higher than that paid to Lehman Brothers entities with respect to its most recent CHFA transactions." **What was the swap spread applied? What specific transactions with Lehman Brothers entities is CHFA referring to?**

(o) You indicated that the discount rate was applied to the off-market cash flow to determine a present value, upfront cash payment. You concluded that the implicit discount rate implicit in the payment is (a) no higher than, and arguably lower than, Barclay's and RBC's own long-term borrowing cost and (b) lower than the rate at which CHFA could procure a taxable loan the ultimate security for which would be identical to that of the Terminated Transactions. **What exactly was the discount rate applied? Why is CHFA using long-term borrowing costs and a taxable loan rate as benchmarks?**

(p) You state that you are confident that if offers had been received from firms for Market Quotation, the payment amount calculated through Loss would have been equal to or exceeded the amount required to be paid under Market Quotation. **On what basis does Counterparty make this statement? Did Counterparty receive market quotes on any of the trades in their portfolio?**

2.    2002 LBSF Calculation Statement. Please address the questions and provide the information indicated in bold below in connection with the 2002 LBSF Calculation Statement and the LBSF Bid Solicitation Form. For your convenience, we have attached hereto a copy of the 2002 LBSF Calculation Statement as Annex B and the LBSF Request for Offers as Annex C, both of which have been annotated in the margin to correspond to the points below.

(a) You list interest due of $24,009.18. **Why was the rate of 6M LIBOR + 100bps used in calculating interest? Pursuant to the Master Agreements, we are entitled to Default Interest on amounts payable pursuant to Section 6(e) thereof.**

Colorado Housing and Finance Authority
Page 5

(b) You list "termination related expenses" of $190,000.  **Please provide us a detailed breakout of expenses and any supporting documentation.**

(c) You indicated that BLX identified 32 financial institutions as prospective Reference Market Makers.  **Please identify them.  Why did you and BLX approach so many financial institutions?**

(d) You indicated that BLX eliminated five Reference Market Makers not meeting minimum CHFA/Rating Agency criteria.  **Please identify them.  Please describe the CHFA/Rating Agency criteria and provide any supporting documentation.**

(e) You indicated that BLX solicited "indications of interest in providing offers to enter into Replacement Transactions" which is a request for firm bids as opposed to non-actionable, market quotations. **Why did BLX solicit firm bids as opposed to market quotations?  How many of the 32 financial institutions whose quotations were solicited indicated a willingness to offer a market quotation as opposed to a firm bid?**

(f) You indicated that 22 prospects indicated no interest in participating.  **Please provide evidence of their responses.**

(g) You indicated that four prospects "indicated some willingness to consider" providing offers subject to the Counterparty modifying provisions related to absence of a Credit Support Annex and a ratings-based Additional Termination Event referencing the Counterparty's Issuer Credit Rating. **Please provide any available documentation (including emails) evidencing the requested modifications.  Please confirm this is not relevant to your valuation as it relates solely to third-party assessments of your credit profile as opposed to LBSF or Holdings?**

(h) You indicated that four prospects decided not to provide an offer, i.e., Goldman, Deutsche Bank, BNY Mellon and RBC.  **Please provide any communications evidencing their decision.**

(i) You indicated that your total loss is equal to the amount incurred by CHFA to reestablish hedging positions with Barclays and RBC with "substantially less favorable credit/documentation terms than … the Terminated Transactions, less a value adjustment for any differences between each such new Replacement Transaction and the corresponding Terminated Transaction." **Please specify the "substantially less favorable credit/documentation terms."  Please specify the "value adjustment" and quantify?  Please explain why these factors are relevant in calculating your total loss given that it is due to CHFA's credit profile and unrelated to LBSF or Holdings?**

Colorado Housing and Finance Authority
Page 6

(j) You indicated that two transactions were replaced with cash flows "substantially similar to those of the related Terminated Transactions" as adjusted for the value of changes in credit and documentation terms. **Please explain the meaning of "substantially similar" in the context of the two replaced transactions. Please provide trade details and terms as necessary to illustrate. Please quantify the adjustment value per trade for changes in credit and documentation terms.**

(k) You indicated that four transactions were replaced with cash flows substantially similar to those of related Terminated Transactions, but were modified to change Floating Rate Option from (a) USD-SIFMA Municipal Swap Index to (b) (i) 1M LIBOR X 0.68 when the weighted average of the LIBOR Index during the Calculation Period is equal to or greater than 3.5% and (ii) the SIFMA Index when the LIBOR Index is less than 3.5%. **What was the rationale for the modification?**

(l) You indicated that one transaction was replaced with cash flows substantially similar to those of related Terminated Transactions, but with an altered effective date. **Why was the effective date altered? What were the precise alterations? If effective dates were moved forward to the present time, was interest that accrued before such date excluded from the valuation?**

(m) You indicated that the methodology for determining Loss was primarily based on "passing through to LBSF the payment that CHFA actually realized ..., adjusted for the value in any changes in credit and documentation terms under the new ISDAs." **Was the amount CHFA received from Barclays and RBC adjusted prior to making payment to LBSF? If so, please provide the exact adjustment amount.**

(n) You indicated that CHFA and its consultants independently concluded that the transaction pricing implicit in the Similar Cash Flow Transactions was extremely aggressive. **What is the basis for this conclusion? Please clarify what you mean by "aggressive."**

(o) You indicated that (i) the amount paid to CHFA in connection with the Replacement Transactions was a function (among other things of) "spreads to the mid-market rates" and (ii) the discount rate was determined using a "swap spread no higher than that paid to Lehman Brothers entities with respect to its most recent CHFA transactions." **What was the swap spread applied? What specific transactions with Lehman Brothers entities are you referring to?**

(p) You indicated that the discount rate was applied to the off-market cash flow to determine a present value, upfront cash payment. You concluded that the discount rate implicit in the payment is (a) no higher than, and arguably lower than, Barclay's own long-term borrowing cost and (b) lower than the rate at which CHFA could procure a taxable loan the ultimate security for which would be identical to that of the Terminated Transactions. **What exactly was the discount rate applied? Why is CHFA using long-term borrowing costs and a taxable loan rate as benchmarks?**

(q) You state that you are confident that if offers had been received from firms for Market Quotation, the payment amount calculated through Loss would have been equal to or exceeded the amount required to be paid under Market Quotation. **On what basis does CHFA make this statement? Did CHFA receive quotes on any of the trades in their portfolio?**

(r) On the LBSF Request for Offers, you indicated that offers were solicited having substantially similar economic terms (including, but not limited to, notional, effective date, termination date, fixed rate, and floating rate option). **Why did BLX amend trade terms prior to requesting quotes? Please provide evidence that BLX attempted to solicit quotes for the original trade terms.**

(s) On the LBSF Request for Offers, you indicated that Dealers received a schedule governing Modified Swaps referred to as "Modified Documentation" and received a "Credit Package". **Please provide a copy of these packages.**

3. <u>Valuation Methodology and Quotations with respect to Terminated Transactions.</u>

(a) Please provide a narrative description of the methodology used to determine the valuations of Terminated Transactions, including how quotations, if any, were utilized and all other inputs, assumptions, values and applicable parameters.

(b) Please provide documentation to support any and all requests by or on behalf of Counterparty for quotations from Reference Market-makers or other persons concerning or otherwise related to the Terminated Transactions (including specifying to whom and when such requests were made, the form of request that was made, in what manner the Reference Market-makers responded and the nature of any follow-up requests).

4. <u>Unpaid Amounts.</u> Please specify any Unpaid Amounts included in Counterparty's calculations of any amounts due with respect to Terminated Transactions.

5. <u>Replacement Transactions.</u> Please provide documentation evidencing any transactions executed in order to replace any Terminated Transactions, including

Colorado Housing and Finance Authority
Page 8

specifying any cash (or other consideration) paid or received by or to any person to replace the Terminated Transactions, the name of each entity that effectuated a replacement and when any such transactions were effected.

6.    Communications related to Market Quotations, Unpaid Amounts and/or Replacement Transactions. Please provide all internal and external communications (including all transaction confirmations, other documents, e-mails, text messages, screenshots, voice recordings, Bloomberg or other electronic texts, tapes, quotations requested and/or received or any other writings or information) evidencing or concerning the requests, responses, follow-up requests, determinations (including methodology used in such determinations), Unpaid Amounts and replacement transactions referred to in items 3, 4 and 5 above.

7.    Persons involved with respect to valuations and/or replacement transactions. Please provide the names, contact information (including telephone numbers, facsimile numbers and e-mail addresses) and description of the roles of each person (whether such person is inside or outside your organization, including any financial advisors, companies, entities or other persons consulted in connection with any Terminated Transactions) who was involved in the valuation of any Terminated Transactions or in the replacement of any Terminated Transactions.

8.    Fees and expenses. Please provide supporting documents and/or other information related to all fees, expenses or other ancillary items incurred by Counterparty with respect to Terminated Transactions.

9.    Financial/Accounting Entries. Please provide any profit, loss, valuation or other financial or accounting entries made on Counterparty's books and records as a result of the termination of each Terminated Transaction, and all supporting documents or other information related to the determination of such amounts.

10.    Market information. Please provide the historical bid/offer spread and midpoint (or estimate) for each Terminated Transaction as of the close of business for each day from and including September 12, 2008 to and including the Early Termination Date designated by Counterparty for each Terminated Transaction. Please provide Counterparty's internal valuation models and external sources (e.g. screen shots from Bloomberg or other financial services) evidencing these amounts.

11.    Documentation of Terminated Transactions. Please provide copies of all master agreements, other agreements, confirmations and other documents related to Terminated Transactions, including with respect to rebooking of Terminated Transactions.

Please forward the information requested herein as soon as possible, and in any case no later than July 27, 2009. Please note that if you do not provide the requested information described above, LBSF may pursue legal avenues to obtain such information from you. This letter in no way constitutes an admission or acknowledgment by LBSF that the Terminated

Colorado Housing and Finance Authority
Page 9

Transactions were actually terminated or were terminated properly, that the amount set forth in
the Calculation Statement has been accurately calculated or is due or owing by LBSF, or that
such amount accrues interest.

The foregoing information requests are without waiver of or prejudice to any and
all of the rights and remedies of LBSF in connection with the above transactions, including under
each applicable ISDA Master Agreement and with respect to your purported termination and
valuation calculation and under any applicable law.

Please contact me with any questions related to the foregoing at (646) 333-9836
or david.downie@lehman.com.

Yours truly,

David C. Downie

# Exhibit O

**Sherman & Howard** L.L.C.

ATTORNEYS & COUNSELORS AT LAW
633 SEVENTEENTH STREET, SUITE 3000
DENVER, COLORADO 80202
TELEPHONE: (303)297-2900
FAX: (303)298-0940
OFFICES IN: COLORADO SPRINGS · STEAMBOAT SPRINGS · VAIL
PHOENIX · RENO · LAS VEGAS · ST. LOUIS

031500 CHFA

RECEIVED AUG 0 3 2009
Hand

July 31, 2009

E-Mail: jswendse@shermanhoward.com

**VIA FEDERAL EXPRESS**

David C. Downie
Lehman Brothers Holdings, Inc.
1271 Sixth Avenue
New York, New York 10020

Dear Mr. Downie:

      Our firm represents the Colorado Housing and Finance Authority ("CHFA"). It is the purpose of this letter to respond to the letter which you forwarded to CHFA, dated July 9, 2009, which relates to certain interest rate swap agreements (the "LBFP Transactions") between the CHFA and Lehman Brothers Financial Products Inc. ("LBFP") identified in your letter of July 9, 2009.

      Your letter deals with CHFA's calculation of the amount due from LBFP to CHFA on the early termination of all transactions under two Master Agreements (and related schedules) between CHFA and LBFP identified in your letter (collectively, the "LBFP Master Agreements and Schedules"). Your letter asks for a very substantial amount of information in a very short time. A response from CHFA to this detailed information request is not possible in the time frame described in your letter, except as set forth in this letter.

      We believe CHFA has already provided LBFP with the information that is called for in the LBFP Master Agreements and Schedules with respect to the LBFP transactions. The information CHFA has provided LBFP in its Early Termination Notices and its Valuation Statement dated March 5, 2009 and the subsequent information CHFA provided LBFP on April 6, 2009 and June 17, 2009 is sufficient to provide all of the information LBFP needs to satisfy itself that CHFA has complied with the provisions of the LBFP Master Agreements and Schedules in calculating the amounts due on Early Termination as provided in the LBFP Master Agreements and Schedules. We also note that LBFP has not provided CHFA with any information or calculations indicating that the information CHFA provided is inaccurate in any respect. Please provide us within thirty days of the date of this letter with detailed statements, calculations, and complete backup information supporting any position or belief LBFP has that is inconsistent with the information CHFA provided, or that suggests that CHFA's termination or calculation of the amount due on early termination was improper in any way or has given rise to any rights or claims of LBFP against CHFA, in any way.

      Please carefully review the information that CHFA previously provided to LBFP and carefully review the LBFP Master Agreements and Schedules and the confirmations for the LBFP

PUBFIN\1019014.1

# Sherman & Howard L.L.C.

July 31, 2009
Page 2

transactions trades. We believe that many of the answers to the questions in your July 9, 2009 letter will be answered by this review, as CHFA's calculations followed what the documentation required.

In addition, we note that CHFA will be filing a proof of claim in the bankruptcy action for LBFP with respect to amounts LBFP owes CHFA under the LBFP transactions. CHFA will provide the information that the bankruptcy court has required to be provided with the proof of claim and thereafter at the time provided by the bankruptcy court, which will give CHFA adequate time to compile the information requested to be filed by the bankruptcy court. CHFA would be happy to provide you with a copy of that information when it is filed as provided in the bankruptcy court's July 2, 2009 order.

Nothing in this letter shall be construed as a waiver of any rights or privilege CHFA may have with respect to the LBFP Master Agreements and Schedules to which this letter pertains. Without limiting the generality of the foregoing, CHFA hereby reserves all rights and remedies it may have at law or in equity under the LBFP Master Agreements and Schedules or the LBFP Transactions thereunder, including rights of setoff and recoupment, the right to file a proof of claim with the appropriate court at the appropriate time in connection with the above amounts and any additional out-of-pocket expenses incurred by CHFA and any rights or remedies that may arise as a result of any intervening event.

Sincerely,

John O. Swendseid

JOS/sw

cc:    Charles Borgman, Esq.
       Thomas Hemmings
       John Dolton
       Mark Fulford, Esq.
       Stan Raine, Esq.

PUBFIN\1019014.1

# Exhibit P

**Sherman & Howard** L.L.C.

ATTORNEYS & COUNSELORS AT LAW
633 SEVENTEENTH STREET, SUITE 3000
DENVER, COLORADO 80202
TELEPHONE: (303)297-2900
FAX: (303)298-0940

OFFICES IN: COLORADO SPRINGS · STEAMBOAT SPRINGS · VAIL
PHOENIX · RENO · LAS VEGAS · ST. LOUIS

031500CHFA

RECEIVED AUG 0 3 2009
Hand

July 31, 2009

E-Mail: jswendse@shermanhoward.com

**VIA FEDERAL EXPRESS**

David C. Downie
Lehman Brothers Holdings, Inc.
1271 Sixth Avenue
New York, New York 10020

Dear Mr. Downie:

Our firm represents the Colorado Housing and Finance Authority ("CHFA"). It is the purpose of this letter to respond to the letter which you forwarded to CHFA, dated July 9, 2009, which relates to certain interest rate swap agreements (the "LBSF Transactions") between the CHFA and Lehman Brothers Financial Products ("LBSF") identified in your letter of July 9, 2009.

Your letter deals with CHFA's calculation of the amount paid to LBSF by CHFA on the early termination of all transactions under two Master Agreements (and related schedules) between CHFA and LBSF identified in your letter (collectively, the "LBSF Master Agreements and Schedules"). Your letter asks for a very substantial amount of information in a very short time. A response from CHFA to this detailed information request is not possible in the time frame described in your letter, except as set forth in this letter.

We believe CHFA has already provided LBSF with the information that is called for in the LBSF Master Agreements and Schedules with respect to the LBSF transactions. The information CHFA has provided LBSF in its Early Termination Notices and its two Valuation Statements dated December 18, 2008 and the subsequent information CHFA provided LBSF on April 6, 2009 and June 17, 2009 is sufficient to provide all of the information LBSF needs to satisfy itself that CHFA has complied with the provisions of the LBSF Master Agreements and Schedules in calculating the amounts due on Early Termination as provided in the LBSF Master Agreements and Schedules. We also note that LBSF has not provided CHFA with any information or calculations indicating that the information CHFA provided is inaccurate in any respect. Please provide us within thirty days of the date of this letter with detailed statements, calculations, and complete backup information supporting any position or belief LBSF has that is inconsistent with the information CHFA provided, or that suggests that CHFA's termination or calculaton of the amount due on early termination was improper in any way or has given rise to any rights or claims of LBSF against CHFA, in any way.

Please carefully review the information that CHFA previously provided to LBSF and carefully review the LBSF Master Agreements and Schedules and the confirmations for the LBSF

PUBFIN\1019015.1

# Sherman & Howard L.L.C.

July 31 2009
Page 2

transactions trades. We believe that many of the answers to the questions in your July 9, 2009 letter will be answered by this review, as CHFA's calculations followed what the documentation required.

Nothing in this letter shall be construed as a waiver of any rights or privilege CHFA may have with respect to the LBSF Master Agreements and Schedules to which this letter pertains. Without limiting the generality of the foregoing, CHFA hereby reserves all rights and remedies it may have at law or in equity under the LBSF Master Agreements and Schedules or the LBSF Transactions thereunder, including rights of setoff and recoupment, the right to file a proof of claim with the appropriate court at the appropriate time in connection with the above amounts and any additional out-of-pocket expenses incurred by CHFA and any rights or remedies that may arise as a result of any intervening event.

Sincerely,

John O. Swendseid

JOS/sw

cc:    Charles Borgman, Esq.
       Thomas Hemmings
       John Dolton
       Mark Fulford, Esq.
       Stan Raine, Esq.

PUBFIN\1019015.1

Page 1 of 1

From:   Origin ID: RNOA   (775) 323-1980
Kathie Hass
Swendseid & Stern
50 W. Liberty
Suite 1000
RENO, NV 89501

**FedEx** Express

**E**

Ship Date: 31JUL09
ActWgt: 1.0 LB
CAD: 1901846/INET9060
Account#: S ********

Delivery Address Bar Code



SHIP TO:   (775) 323-1980          BILL SENDER

**David C. Downie**
**Lehman Brothers Holdings, Inc.**
**1271 AVENUE OF THE AMERICAS**

**NEW YORK, NY 10020**

Ref #   001324.000 0084
Invoice #
PO #
Dept #

TRK#
[0201]   **7968 2598 1113**

**MON - 03AUG      A1**
**PRIORITY OVERNIGHT**

**SB QNYA**

**10020**
**NY-US**
**EWR**

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en//PrintIFrame.html

7/31/2009

# Exhibit Q

# EXHIBIT Q

## SCHEDULE OF DOCUMENTS TO BE PRODUCED

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

2.      "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

3.      The term "Debtors" shall mean Lehman Brothers Holdings Inc. together with its affiliated debtors, Lehman Brothers Financial Products Inc. ("LBFP"), Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Derivative Products Inc. ("LBDP"), as debtors and debtors in possession.

4.      "Colorado Housing," "You," and "Your" shall mean Colorado Housing Housing and Finance Authority and any person acting on its behalf or under its

control, including any of its agents, subsidiaries, affiliates, predecessors, successors, or representatives.

5.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

6.    The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

7.    The term "Agreement" shall mean any of the following: (i) the 1992 ISDA Master Agreement, including the schedule thereto, dated as of March 2, 2000, entered into between LBFP and Colorado Housing; (ii) the 1992 ISDA Master Agreement, including the schedule thereto, dated as of and September 13, 2001, entered into between LBFP and Colorado Housing; (iii) the 1992 ISDA Master Agreement, including the schedule thereto, dated as of December 4, 2002, entered into between LBDP and Colorado Housing (which was subsequently assigned to LBSF on September 16, 2008); and (iv) the 1992 ISDA Master Agreement, including the schedule thereto, dated as of June 19, 2003, entered into between LBDP and Colorado Housing (which was subsequently assigned to LBSF on September 16, 2008).

8.    The term "Market Quotation" shall have the meaning ascribed to it in Section 12 of each Agreement.

9.    The term "Reference Market-makers" shall have the meaning ascribed to it in Section 12 of each Agreement.

10.    The term "Replacement Transaction" shall mean any transaction entered into by Colorado Housing to replace any Terminated Transaction.

11.    The term "Terminated Transaction" means any of the Transactions terminated by Colorado Housing in its letters to LBFP dated November 21, 2008 and December 4, 2008, and to LBSF dated December 2, 2008 and December 3, 2008.

12.    The term "Termination Date" shall mean any of the following: November 21, 2008, December 2, 2008, December 3, 2008, and December 4, 2008.

13.    The term "Unpaid Amounts" shall have the meaning ascribed to it in Section 12 of each Agreement.

14.    The term "Valuation Letters" shall mean any of the letters from Colorado Housing dated December 18, 2008 and March 5, 2009.

## GENERAL INSTRUCTIONS

The following General Instructions apply to each request set forth herein.

1.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

2.    If any Document requested herein was formerly in Your possession, custody or control (or that of Your Representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which

the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

3.      If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

4.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

5.      All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request.  The method for production of each category is to be identified at the time of production.  Documents are to be produced in full and unexpurgated form.

6.      Each page of each document should be numbered consecutively. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

7.      Documents attached to each other (physically or via electronic mail) should not be separated.

8.      In producing the requested documents, even though the requests are directed to "you," furnish all documents which are available to you, including documents in the possession of any of your officers, directors, employees, agents, attorneys, investigators, accountants or consultants and not merely such documents in your possession.

9.      The requests which follow are to be regarded as continuing, and Colorado Housing is requested to provide by the way of supplementary compliance herewith, such additional documents as Colorado Housing may hereafter obtain, which will augment the documents now produced in response to the requests below.  Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after receipt thereof.

10.     At a future date, the Debtors may request the production of additional documents based on information revealed during this document request.

11.     At a future date, the Debtors may request to depose additional individuals based on information revealed during this document request.

## <u>RELEVANT TIME PERIOD</u>

Unless otherwise stated, the relevant time period for each of the following requests is from and including the Termination Date through the present.

## <u>REQUESTS FOR PRODUCTION</u>

<u>REQUEST NO. 1</u>

All documents concerning any valuation of the Terminated Transaction, including, but not limited to, the valuation contained in the Valuation Letters.

REQUEST NO. 2

All documents containing or reflecting a description, in whole or in part, of the methodology used by Colorado Housing to determine the value of the Terminated Transaction, including any documents describing how quotations, if any, were utilized

REQUEST NO. 3

All documents reflecting requests by or on behalf of Colorado Housing for quotations from Reference Market-makers or any other persons, and all responses from Reference Market-makers and any other persons thereto.

REQUEST NO. 4

All documents concerning any Unpaid Amounts, including accrued interest thereon, due with respect to the Terminated Transaction.

REQUEST NO. 5

All documents concerning any Replacement Transaction, including, but not limited to, documents concerning (i) any consideration paid or received in connection with a Replacement Transaction, (ii) the names of any entity which effectuated a Replacement Transaction, and (iii) when any such transaction was effected.

REQUEST NO. 6

All documents concerning any communications between and among, or on behalf of, Colorado Housing and any third party, including Colorado Housing's representatives, advisors, agents, accountants, and counsel related to Market Quotations

from Reference Market-makers, Unpaid Amounts, and/or Replacement Transactions in connection with the Terminated Transaction.

REQUEST NO. 7

Documents sufficient to identify all persons who were involved in the valuation of any Terminated Transaction or in the replacement of any Terminated Transaction and their roles in connection therewith.

REQUEST NO. 8

All documents concerning fees, expenses, interest, or other ancillary items incurred by Colorado Housing with respect to the Terminated Transaction.

REQUEST NO. 9

All documents sufficient to identify any financial or accounting entries made on Colorado Housing's books and records as a result of the termination of the Terminated Transaction, and all supporting documents or other information related to the determination of such amounts.

REQUEST NO. 10

Documents sufficient to identify the historical bid/offer spread and mid-point (or estimate) for the Terminated Transaction as of the close of business for each day from and including September 12, 2008 to and including the Termination Date, and Colorado Housing's internal valuation models and external sources evidencing these amounts.

REQUEST NO. 11

Documents sufficient to identify all master agreements, other agreements, confirmations and other documents constituting the Agreement between the parties in connection with the Terminated Transaction.

REQUEST NO. 12

All documents concerning any replacement of the Remarketing Agent (as such term is defined in the applicable Agreement) and any evidence of consents from LBFP or LBSF, as required under such applicable Agreement.