平成２０年（再）第２０８号　再生手続開始申立事件

再生債務者　サンライズファイナンス株式会社

# 意 見 書

平成２１年６月２６日

東京地方裁判所民事２０部　御中

監督委員　弁護士　多比羅　誠　先生

再生債権者　　株式会社新生銀行

同代理人弁護士　奥　野　善　彦

同　　　　　　　鈴　木　五十三

同　　　　　　　荒　井　俊　行

同　　　　　　　山　本　晋　平

同　　　　　　　尾　野　恭　史

同　　　　　　　櫻　庭　広　樹

同　　　　　　　小　池　良　輔

同　　　　　　　古　島　守

- 1 -

# 目　　次

第1　意見の趣旨 ............................................................................................... 5

第2　はじめに ................................................................................................... 6

　1　本件事案の概要 ........................................................................................ 6

　2　ＬＢグループ再生債権者の債権の劣後的取扱いの必要性 ........................... 7

　3　信義則に基づく劣後化に関する判例法理の存在 ......................................... 8

　4　民事再生法１５５条１項ただし書の明文規定ないし信義則から債権の劣後

　　化が要請されること ................................................................................... 9

　5　小括 ........................................................................................................ 10

第3　ＬＢグループによる再生債務者の不当経営支配 ...................................... 10

　1　再生債務者が２つの顔を有していたこと ................................................. 10

　(1)　再生債務者はＬＢグループ内金融取引に全く関与していないこと ........ 11

　　ア　再生債務者はＬＢＨＩの子会社であること ........................................ 11

　　イ　再生債務者には独自の融資決定権限がなかったこと ........................... 12

　　ウ　再生債務者はＬＢグループからの借入手続に関与していないこと ...... 12

　　エ　小括 ..................................................................................................... 15

　　オ　再生債務者はＬＢグループへの貸付手続に関与していないこと ......... 16

　(2)　再生債務者は不良債権ビジネスについては実態があったこと ............... 18

　2　ＬＢグループによる再生債務者支配が、不当かつ強大であり、かつ、外部債

　　権者の利益が一切考慮されていないこと ................................................. 18

　(1)　再生債務者が獲得した利益の９割を移転する内容の匿名組合契約の締結

　　　........................................................................................................... 19

　(2)　ＬＢＡＨからの借入利息についてなされた税務上の自己否認 ............... 19

　　ア　ＬＢＡＨからの借入利息についての税務上の自己否認処理 ................. 20

　　イ　税務上の借入利息自己否認の持つ意味 ................................................. 20

　3　小括 ........................................................................................................ 21

第4　ＬＢグループによる再生債務者からの不当搾取 ........................................ 23

  1　再生債務者における資金の流れと利益獲得構造 ................................. 23

    (1)　再生債務者の貸借対照表から外部債権者からの借入れは不良債権ビジネ
スに充てられていたといえること ................................................... 23

    (2)　再生債務者が生み出す利益の源泉は不良債権ビジネスであること ......24

  2　ＬＢグループによる不当な利益の移転（吸い上げ） .............................. 24

    (1)　本件匿名組合契約に基づくＬＢグループへの利益移転 ......................... 24

    (2)　配当によるＬＢグループへの利益移転 .............................................. 25

    (3)　人件費及び業務委託費によるＬＢグループへの利益移転 .................... 26

    (4)　ＬＢグループ営業貸付先からの直接の利益移転 ................................. 26

    (5)　利益移転の合計額が４３０億円にのぼること .................................... 27

  3　ＬＢグループの利益保持のための再生債務者の損失引受強制 ............. 27

    (1)　再生債務者がＬＢグループの利益保持のために利用され、これにより再生
債務者の外部債権者の利益が害されたこと ................................... 27

    (2)　ＬＢＦＪを通じたグループ会社の費用の立替払い ............................. 28

    (3)　ＬＢＣＭの利益保持のための貸付け及び債務付け替え ..................... 29

      ア　債権の回収可能性を無視した債務付け替え ............................ 29

      イ　再生債務者の貸付金がＬＢＣＭへの弁済に充てられていること .........30

      ウ　虎ノ門キャピタルに対する貸付け及び債務付け替えの実態 ................. 30

    (4)　ＬＢＣＭの債権回収のための担保提供 ............................................. 30

    (5)　ＬＢＣＭの債権保全のための損害担保契約の締結 ......................... 31

    (6)　格付けの低い有価証券の取得 ......................................................... 32

    (7)　回収不能の営業貸付けの実行 ......................................................... 33

  4　小括 ............................................................................................... 34

第5　過少資本 ............................................................................................... 34

  1　過少資本に基づく劣後化について ...................................................... 34

2　本件における過少資本の事実.......................................35

3　過少資本税制に伴う損金不算入の自己否認の事実.......................36

(1)　過少資本税制について .......................................36

(2)　再生債務者による損金不算入の自己否認.......................36

4　小括 .......................................37

第6　ＬＢグループに属する会社の再生債権者の再生債権の取扱い .......................37

1　ＬＢＨＩ、ＬＢＡＨ及びＬＢＪの再生債権の取扱い.......................37

2　ＳＰＣ10社及びＪＩＰの再生債権の取扱い.......................38

(1)　ＳＰＣ10社及びＪＩＰがＬＢＨＩに強く支配されていること .......38

(2)　ＳＰＣ10社及びＪＩＰの再生債権が劣後化されるべきこと.......41

3　他のＬＢグループに属する債権者の再生債権の取扱い .......................41

第7　ＬＢＨＩ及びＬＢＡＨの主張に対する反論.......................42

1　ＬＢＡＨ及びＬＢＨＩの主張.......................42

2　「ＬＢＨＩの保証を得ている」との主張について.......................42

3　「リスク分析を十分に行ったうえで融資を行っているはずである」との主張
について.......................43

(1)　外部債権者のリスク分析と信義則に基づく劣後化法理とは無関係である
こと.......................43

(2)　外部債権者に対して再生債務者の業務の実態が開示されていなかったこ
と .......................44

4　「全世界の債権者が平等に扱われるべき」との主張について .......................46

(1)　リーマン・ブラザーズＵＫの適切な対応.......................46

(2)　支配会社が倒産していることの意味.......................48

第8　結び.......................48

序

　　再生債権者新生銀行（以下「新生銀行」という。）は、これまでリーマン・ブラザーズ・グループ（以下「ＬＢグループ」という。）に属する会社の再生債権は、民事再生法における公正・衡平の理念に照らし、信義則上、他の再生債権よりも劣後的に取り扱われなければならない旨繰り返し主張してきたが、平成２１年５月８日の管理命令申立て後に再生債務者が漸く行った情報開示により、この主張を強固に裏付け、再生債務者の驚くべき実態を示す多くの重大な事実関係が明らかになったため、現時点で判明した事実を踏まえつつ、これまでの主張を総括すべく、本意見書を提出するものである。

第１　意見の趣旨

１　再生債務者サンライズファイナンス株式会社（以下「再生債務者」という。）の再生計画案において、ＬＢグループに属するリーマン・ブラザーズ・ホールディングス・インク（以下「ＬＢＨＩ」という。）、リーマン・ブラザーズ・アジア・ホールディングス・リミテッド（以下「ＬＢＡＨ」という。）、リーマン・ブラザーズ証券株式会社（以下「ＬＢＪ」という。）、有限会社プルート不動産、有限会社ガーデニア、有限会社タービン・インターナショナル、有限会社マーリン・インターナショナル、有限会社パイク・インターナショナル、有限会社ジニア、有限会社ピラニア・インターナショナル、有限会社飛泉ビルディング、有限会社ダックホーン、有限会社イエローテイル・インターナショナル、ジャパン・インベストメント・パートナーシップ・インク（以下「ＪＩＰ」という。）、及びリーマン・ブラザーズ・リアル・エステート株式会社（これらを総称して、以下「ＬＢグループ再生債権者１５社」という。）の再生債務者に対する再生債権は、他の再生債権に比して劣後的に取り扱われるべきであり、本件における債権者集会において、ＬＢグループ再生債権者１５社の議決権行使が認められてはならない。

・5

2　ＬＢグループ再生債権者１５社の再生債権の劣後化を認めた新生銀行提出
に係る再生計画案が付議されるべきである。そして、当該再生計画案の決議に
係る債権者集会においては、ＬＢグループ再生債権者１５社の議決権行使を認
めてはならない。

3　再生債務者の再生計画案は、本件の具体的事情を何ら考慮することなく、Ｌ
Ｂグループ再生債権者１５社の再生債権と他の再生債権者の再生債権とを形
式的に平等に扱うものであり、劣後化を認めない再生債務者の再生計画案は
「法律の規定に違反」（民事再生法１７４条２項１号）し、また、「再生計画の
決議が再生債権者の一般の利益に反するとき」（同条項４号）に当たるから、
債権者集会に付議されるべきでない（民事再生法１６９条１項３号）。また、
仮に再生債務者の再生計画案が付議され、かつ、債権者集会における決議にお
いて可決されたとしても、当該再生計画案には再生計画不認可の事由があるか
ら認可されるべきではなく、仮に再生計画認可の決定がされた場合には、その
決定に対する即時抗告理由となる。


第２　はじめに

1　本件事案の概要

　本件は、ＬＢグループに属する再生債務者に対し、支配企業であるＬＢＨＩ
が、その指図に基づき又は直接的な支配力の行使の下に、①再生債務者の業務
執行を含む経営全般を不当に支配し、これにより、②再生債務者の取締役会決
議を経ることなく巨額の借入れを行わせて、再生債務者を過少資本の状況に陥
れ、③ＬＢＨＩ及びその支配下にあるＬＢＡＨ等のグループ会社から、他のＬ
Ｂグループに属する会社（例えば、リーマン・ブラザーズ・ファイナンス・ジ
ャパン・インク（以下「ＬＢＦＪ」という。））に対して、直接、貸付けを行う
のではなく、再生債務者を通じて間接的に、いわば再生債務者をグループ内金
融子会社として、ＬＢグループに属する会社に対する融資を行うことで、再生

6

債務者及びその貸付先であるＬＢグループに属する会社の破綻リスク・損失を外部債権者に転嫁する一方、④不良債権ビジネス（不良債権買取ビジネス及び一部不動産ファイナンスを含む。以下同じ。）により得られた利益については、そのほとんどすべてを、再生債務者に対する匿名組合契約による利益分配、配当、人件費及び業務委託費等の名目で、再生債務者からＬＢグループに移転させ、⑤また、特に再生債務者が破綻する直前期にＬＢグループ内の会社の損失の引受等を再生債務者に強制することにより、再生債務者を不当に搾取していたところ、⑥グループの支配企業であるＬＢＨＩの破綻により、再生債務者も破綻した結果、グループ外債権者の責任財産としての再生債務者の資産を不当に毀損させたという事案である。

再生債務者においては、設立当初から破綻に至る直前まで、再生債務者の取締役会決議を経ることなく、このような再生債務者の過少資本状態の作出、ＬＢグループ内金融取引、不当経営支配及び不当搾取等がＬＢグループの意のままに行われていたが、新生銀行が平成２１年５月８日に管理命令申立てを行った後に詳細な情報開示がなされたことからも明らかなように、新生銀行を始めとする外部債権者には、このような再生債務者の構造的リスクを十分認識し防御する機会は与えられなかったものである。

## 2　ＬＢグループ再生債権者の債権の劣後的取扱いの必要性

このように、再生債務者の破綻の原因を作出したＬＢグループが、再生債務者を過少資本のまま不当に経営支配し、かつ、不当に搾取しておきながら、また、すべての再生債権について弁済を満足させることができないのに、本件再生手続において、形式的な平等を主張して、新生銀行を始めとする外部債権者と同等の配当を受けることは、実質的な不衡平をきたすものであるから、民事再生法における公正・衡平の理念に照らし、民事再生法１５５条１項ただし書ないし信義則（民法１条２項）に反し、決して許されない。

加えて、本件において、再生債務者は、ＬＢグループ内からの巨額の借入れ

については、ＬＢＪ財務部ないしＬＢＨＩの指示に基づいて決せられており、再生債務者の自立的判断はなされておらず、取締役会決議も欠いている。本来であれば、再生債務者は、とりわけ再生手続に入った後には公平誠実義務（民事再生法３８条２項）が課されているのであるから、ＬＢグループ内からの借入れについて認めない旨の認否をする義務があったにもかかわらず、漫然とＬＢグループ会社による届出債権を認めてしまっている。平成２１年５月８日の管理命令申立て以降に漸く情報開示がなされたことからも明らかなように、外部債権者の再三にわたる情報開示の要求にもかかわらず、再生債務者が内部資料を全く開示していなかった本件において、再生債権者による異議を期待することはできなかったのであるから、このような義務違反に対する事後的救済としても、信義則上、再生計画において、ＬＢグループ再生債権者１５社の再生債権は、他の債権に対し劣後的に取扱われなければならない。

３　信義則に基づく劣後化に関する判例法理の存在

　　信義則は、その性質上いかなる分野においても適用されるべきものであり、倒産債権の劣後化についても、これまで種々の裁判例においても明らかにされているところである（広島地福山支判平成１０年３月６日（判例時報１６６０号１１２頁、福岡高決昭和５６年１２月２１日（判例時報１０４６号１２７頁）、京京高決昭和４０年２月１１日（下級裁判所民事裁判例集１６巻２号２４０頁）等）。

　　とりわけ、広島地福山支判平成１０年３月６日（判例時報１６６０号１１２頁）は、『『公平（衡平）の原理』は我が国の破産手続においても妥当するものであって、形式的には一般破産債権者とされる者であっても、破産者との関係、破産者の事業経営に対する関与の仕方・程度等によっては、破産手続上他の一般破産債権者と平等の立場で破産財団から配当を受けるべく債権を行使することが信義則に反し許されない場合もある」として、形式的には一般破産債権者とされる者であっても、①破産者との関係、及び、②破産者の事業経営に対す

8

る関与の仕方・程度等によっては、破産手続において、信義則上劣後化させる
べき義務があることを法理として明確に示している。上記裁判例は、破産手続
について判示したものであるが、その趣旨は、再生計画における債権者間の実
質的平等が明文に規定され（民事再生法１５５条１項ただし書参照）、衡平（公
平）の原理が働く民事再生手続においては、より一層妥当するものである。

4　民事再生法１５５条１項ただし書の明文規定ないし信義則から債権の劣後化
　　が要請されること

　　　上記のとおり、親会社等の内部者の債権の劣後化については、明文の規定が
　ない破産法においても、個別的事情に基づき、衡平（公平）の観点から、信義
　則等を根拠として判例法理として認められているものであり、また、法制審議
　会倒産法部会破産法分科会における審議過程においてもこのような法理の存
　在は広く合意されていた。破産法における明文化が見送られたのは、立法技術
　的に、信義則違反を根拠づける個別的な事情を要件化することが困難であった
　ため、裁判例による解釈、運用に委ねられたからにすぎない（甲２の１及び甲
　２の２）。

　　　この点、上記審議過程の委員等の発言によれば、明文の規定のない破産法に
　おいても、親会社等の内部者の債権の劣後化については、立法論で対応するも
　のではなく、民事再生法１５５条１項ただし書の法意や信義則等の一般条項に
　基づき、裁判所の積極的な解釈、運用による解決が図られるべきであるとの意
　見が大勢を占めていた（甲２の１及び甲２の２）。

　　　そして、民事再生法においては、民事再生法１５５条１項ただし書の明文規
　定が存在し、親子会社間の債権、支配株主の債権、旧経営者または現経営者の
　債権を劣後的に取り扱うことも衡平に反しないばかりか、これらを（他の再生
　債権者の債権と）同等に取り扱うことは、かえって衡平に反する場合もあると
　されている（園尾隆二、小林秀之編『条解　民事再生法』７３８頁以下〔松嶋
　英機〕（弘文堂、第２版、平成１９年）　甲３）。

9

　　したがって、法適用機関たる裁判所が、民事再生手続において、民事再生法
　１５５条１項ただし書ないし信義則（民法１条２項）等に基づき、内部者の債
　権の劣後化を行うことは可能であり、むしろ、個別具体的な事情の下では、劣
　後化しなければならない場合もあるのであって、民事再生法において明文の規
　定がないとしてこれを否定することは、民事再生法１５５条１項ただし書を無
　視するものであり、また、民事再生法における衡平（公平）の理念にも反する
　ものである。

５　小括

　　以下では、ＬＢグループの債権を劣後化すべき民事再生法１５５条１項ただ
　し書ないし信義則違反を根拠付ける事情、具体的には、上記裁判例が掲げる、
　一般破産債権者とされる者（本件の場合ＬＢグループに属する会社）と、①破
　産者（本件の場合は再生債務者）との関係、及び、②破産者（本件の場合は再
　生債務者）の事業経営に対する関与の仕方・程度等について、学説においては、
　不当経営支配、不当搾取及び過少資本として整理されているので、これらに関
　する事情を中心に、本件において、ＬＢグループの債権を他の外部債権者の債
　権と形式的に平等に扱うことが、かえって実質的不衡平をきたし、民事再生法
　１５５条１項ただし書ないし信義則に反することを詳述し、予想しうるＬＢグ
　ループからの反論について再反論を加える。


第３　ＬＢグループによる再生債務者の不当経営支配

　　まず、ＬＢグループとりわけＬＢＨＩが再生債務者を不当に支配していたこ
　とについて述べる。

１　再生債務者が２つの顔を有していたこと

　　再生債務者は、ＬＢグループのグループ内金融会社、及び、不良債権ビジネ
　スを遂行する事業会社という２つの顔を有していた。

　　すなわち、再生債務者は、一方では、ＬＢグループのグループ内金融会社と

しての顔を有しているが、この側面については、ＬＢグループの頂点に立つＬ
ＢＨＩに支配され、借入れなどの資金調達及び貸付け・投資などの資金運用の
決定・実行に関して、意思決定権限などの自立的権能及び内部統制機能といっ
た本来会社が有すべき機能を全く有していなかった。

　他方、再生債務者には、再生債務者の本業である不良債権ビジネスの遂行と
いう事業会社としての顔があり、これに関しては、不良債権の購入・管理・回
収にわたってすべてを自らが行っていた実態があった。

　この２つの側面のうち、再生債務者が破綻に陥った原因は、ＬＢＨＩのチャ
プターイレブンの適用申請にあり、再生債務者のグループ内金融子会社として
の側面に起因するものであり、外部債権者が信用力の対象としていた不良債権
ビジネスという事業に起因するものではないのである。

　したがって、再生債務者が破綻に陥った責任は、再生債務者を金融子会社と
して意のままに支配していたＬＢグループ内部の債権者にあるのであって、再
生債務者の破綻に伴う損失が外部債権者に転嫁されるべきではないのである。

(1)　再生債務者はＬＢグループ内金融取引に全く関与していないこと

　ア　再生債務者はＬＢＨＩの子会社であること

　　　再生債務者は、平成１０（１９９８）年１月５日に、ＬＢグループに属
　　すケイマン法人の子会社として設立されたが、同１９（２００７）年８月
　　３１日付のＬＢグループ内再編により、日本法人であるリーマン・ブラザ
　　ーズ証券株式会社（以下「ＬＢＪ」という。）の全額出資会社となった。再
　　生債務者は、ＬＢグループの頂点に立つＬＢＨＩの間接子会社である（甲
　　４の１ないし甲４の４）。

　　　また、再生債務者の最大債権者であるＬＢＡＨも、ＬＢＨＩの間接子会
　　社であり、何らかの事業を営む会社ではなく、再生債務者の親会社である
　　ＬＢＪないしＬＢグループの財務部が、ＬＢグループのファイナンス機能
　　だけを担うＳＰＣとして、利用していた（甲５の１〔５、６頁〕）。

11

イ　再生債務者には独自の融資決定権限がなかったこと

　　LBグループは、全世界的にグループ内金融取引を行っており、その拠点は、ニューヨーク、ロンドンそして東京に存在した。東京における拠点として機能していたのは、LBJの財務部（Ｔｒｅａｓｕｒｙ　Ｄｅｐａｒｔｍｅｎｔ）であり、ここが再生債務者及びLBAHを含むLBグループのアジア地域全体における資金管理を担っていた（甲1〔2頁〕，甲5の1〔5頁〕）。

　　もっとも、LBJの財務部が、LBグループのアジア地域の資金調達・管理等についてすべての権限を有しているはずもなく、LBグループにおいては、LBHIにコミットメント・コミッティーがあり、再生債務者を含む同グループに属する会社が行う金融取引については、同コミッティーにおいて、取引金額に応じて、決定・承認がなされていた（甲5の1〔27頁〕及び甲6）。

ウ　再生債務者はLBグループからの借入手続に関与していないこと

　　本件再生手続においては、LBグループに属する会社が再生債務者に対し再生債権届出を行っているが、上述したように、グループ内金融取引について、再生債務者は一切関与しておらず、巨額の借入れを行うにあたり、再生債務者の取締役会承認決議もなされていない（甲1〔4頁〕、甲7及び甲8）。

(ｱ)　LBHIからの借入れに再生債務者が関与していないこと

　　LBHIは、再生債務者に対し、13億7685万円の「他運転資金としての貸付金その他の債権」を有するとして債権届出をしている。

　　この発生原因は、借入限度額を2500億円として、再生債務者とLBHIとの間で締結された、平成16（2004）年1月30日付Ｆａｃｉｌｉｔｙ　Ａｇｒｅｅｍｅｎｔとされている（甲9　なお、この契約は、締結日の3年半も前の平成12（2000）年6月5日に遡って

効力が発生することとされている。すなわち、平成１６（２００４）年
１月３０日以前は、契約が締結されないまま、貸付けがなされていた。）。

　　再生債務者にとっては、このような巨額の借入れであるにもかかわら
ず、このＦａｃｉｌｉｔｙ　Ａｇｒｅｅｍｅｎｔを締結すること及びこ
の契約に基づく個別の借入れについては、ＬＢＪないしＬＢグループの
財務部の指示に基づいてなされたものであり、再生債務者の取締役会承
認決議はなされていない（甲１〔４頁〕、甲７及び甲８）。

　　そして、契約書についても、ＬＢＪ財務部が作成し、再生債務者代表
者である米倉氏は、その内容を吟味検討することなく、それに署名した
だけというのである（甲５の１〔５、６頁〕）。

(ｲ)　ＬＢＡＨからの借入れに再生債務者が関与していないこと

　ａ　ＬＢＡＨは、再生債務者に対し、２２９４億６０３３万円の貸付金
　　を有するとして債権届出をしている。

　ｂ　この発生原因は、借入限度額を当初３０００億円として（後述する
　　ように、その後、８０００億円まで増額されている。）として、再生債
　　務者とＬＢＡＨとの間で締結された平成１７（２００５）年２月２４
　　日付けＦａｃｉｌｉｔｙ　Ａｇｒｅｅｍｅｎｔである（甲１０　なお、
　　この契約は、締結日の２年半も前の平成１４（２００２）年１１月１
　　日に遡って効力が発生することとされているが、平成１７（２００５）
　　年１２月１日から平成１８（２００６）年１１月３０日までの間にお
　　いて、再生債務者のＬＢＡＨに対する借入残高が、平成１７（２００
　　５）年２月２４日付け　Ｆａｃｉｌｉｔｙ　Ａｇｒｅｅｍｅｎｔの３０
　　００億円の借入限度額を超えている期間がある。甲１１及び甲１２）。

　　再生債務者にとっては、このような巨額の借入れであるにもかかわ
　らず、このＦａｃｉｌｉｔｙ　Ａｇｒｅｅｍｅｎｔを締結すること及
　びこの契約に基づく個別の借入れについては、ＬＢＪないしＬＢグル

　ープの財務部の指示に基づいてなされたものであり、再生債務者の取

　締役会承認決議はなされていないのである（甲１〔４頁〕、甲７及び甲

　８）。

　　そして、契約書についても、ＬＢＪ財務部が作成し、再生債務者代

　表者である米倉氏は、その内容を吟味検討することなく、それに署名

　しただけというのである（甲５の１〔７頁〕）。

ｃ　このＦａｃｉｌｉｔｙ　Ａｇｒｅｅｍｅｎｔについては、平成１８

　（２００６）年１１月３０日付けで、借入限度額が５０００億円に増

　額修正されている（甲１０　この修正契約も、締結日の１年前である

　平成１７（２００５）年１２月１日に遡って効力が発生するものとさ

　れているが、平成１７（２００５）年１２月１日から平成１８（２０

　０６）年１１月３０日までの間において、再生債務者のＬＢＡＨに対

　する借入残高が、平成１７（２００５）年２月２４日付けＦａｃｉｌ

　ｉｔｙ　Ａｇｒｅｅｍｅｎｔの３０００億円の借入限度額を超えてい

　る期間がある。甲１１及び甲１２）。

　　この修正契約を締結すること及びこの修正契約に基づく個別の借入

　れについても、ＬＢＪないしＬＢグループの財務部の指示に基づくも

　のであり、再生債務者においては取締役会承認決議もなされていない

　（甲１〔４頁〕、甲５の１〔８、９頁〕）。

ｄ　その後、平成１８（２００６）年１１月３０日付け修正契約は、平

　成２０（２００８）年２月１日付けで、借入限度額が８０００億円に

　まで増額修正されている（甲１０　この修正契約も、締結日の１０か

　月前である平成１９（２００７）年４月１日に遡って効力が発生する

　こととされているが、平成１９（２００７）年４月１日から平成２０

　（２００８）年２月１日までの間において、再生債務者のＬＢＡＨに

　対する借入残高が、平成１８（２００６）年１１月３０日付け修正契

約の５０００億円の借入限度額を超えている期間がある。甲１１及び

甲１２）。

　この修正契約を締結することについては、債務者において、平成１９

（２００７）年１１月２０日付けでの取締役会承認決議があるものの、

この修正契約に基づく個別の借入れについては、取締役会承認決議はな

されていない（甲１〔４頁〕、甲７及び甲８）。

(ｳ)　再生債務者における独自の会計システムは存在していなかったこと

　再生債務者には独自の会計システムはなく、ＬＢＪないしＬＢグルー

プの財務部によって、グローバルなネットワークで管理されており、

再生債務者が、グローバルな会計システムへアクセスすることは不可能

であった（甲５の１〔１２、１３頁〕）。

(ｴ)　再生債務者はＬＢグループ内借入れにおいて自立性が欠如している

こと

　このように、再生債務者においては、ＬＢグループから巨額の借入れ

を行うに当たり、借入条件の検討、契約書記載事項の検討、及び取締役

会の承認決議という本来の会社であれば行うべき会社法で求められる手

続（会社法３６２条４項）も履践されていなかった。また、再生債務者

における独自の会計システムも存在しておらず、再生債務者は、ＬＢグ

ループ内の会計システムにアクセスすらできなかった。

　このように、再生債務者は、大会社に求められる内部統制組織の整備

義務（会社法３４８条３項４号、４項、３６２条４項６号、５項）にも

明確に違反しており、再生債務者の借入行為について再生債務者の自立

性は、全く有していなかったものである。

エ　小括

　このように、再生債務者においては、ＬＢグループからの巨額の借入れ

に関する取締役会決議すら存在しないことは驚くべき事実であり、再生債

務者はLBグループとりわけLBHIに強く支配されていたことは極めて
明らかである。

　加えて、取締役会決議を経ない巨額の借入れの事実は、再生債務者自身
が把握し、LBHI、LBJ及びそのSPCであるLBAH等においても、
当然に認識し又は認識し得た事項であるから、再生手続において公平誠実
義務を負う再生債務者としては、少なくとも、このことを認識し得たLB
グループの届出債権については、債権認否手続において、認めないとの認
否をするべきであった。しかしながら、再生債務者は、これを安易に認め、
確定させてしまっているのである。

オ　再生債務者はLBグループへの貸付手続に関与していないこと

　再生債務者は、LBグループに属する会社に対し、再生手続開始決定時
点で１２３４億４２８５万円にのぼる営業貸付金を有しているが（財産価
額評定書）、再生債務者からLBグループに属する会社に対する貸付け（一
部不良債権ビジネスに属するものを除く。以下同じ。）についても、同様に、
LBグループないしLBJの財務部が決定しており、再生債務者の取締役
会承認決議もなされておらず、かつ、当該営業貸付金は再生債務者が所有
する資産であるにもかかわらず、再生債務者が管理・回収も行っていない
のである（甲１〔４頁〕、甲５の１〔１０、１１頁〕）。

(7)　営業貸付先はLBグループに属するSPCであること

　再生債務者は、LBグループに属するSPCに対し、貸付け（営業貸
付け）を行っているが、その相手先内訳は、LBFJ（本件再生手続開
始決定時４７４億２２８２万円）、リベルタス住宅ローン株式会社（本件
再生手続開始決定時３６９億４８０６万円）、エル・ビー・シー有限会社
（本件再生手続開始決定時１７０億５４３９万円）、有限会社ヨセミテ
（以下「ヨセミテ」という。本件再生手続開始時５０億５８９５万円）
等であり、LBグループに属する会社に対するものである（財産価額評

16

定書)。

(イ)　営業貸付金の貸出しに再生債務者が関与していないこと

　　　再生債務者は、ＬＢグループに属する会社（ＳＰＣ）に対して貸付け

　　（営業貸付金）を行うにあたり、営業貸付先である各ＳＰＣとの間でＦ

　　ａｃｉｌｉｔｙ　Ａｇｒｅｅｍｅｎｔを締結している（甲１５及び甲１

　　６）。

　　　この契約は、各ＳＰＣにつき、多くは貸付限度額が１０００億円から

　　３０００億円にものぼる巨額のものであるにもかかわらず、契約の締結

　　及び契約に基づく個別の貸付けについて、これもＬＢＪないしＬＢグル

　　ープの財務部の指示に基づいてなされたもので、再生債務者の取締役会

　　で承認がなされていないのである（甲１〔４頁〕、甲７及び甲８）。

　　　再生債務者代表者であった米倉氏は、営業貸付けに係る契約締結及び

　　その個別貸付けについて、一切関与しておらず、報告も受けていないの

　　である（甲５の１〔１０、１１頁〕）。

(ウ)　再生債務者が営業貸付金の管理・回収を行っていないこと

　　　当然のことながら営業貸付金は再生債務者が所有する資産である。し

　　かし、当該営業貸付金の管理・回収については、再生債務者は関与して

　　おらず、すべてＬＢＪないしＬＢグループの財務部が行っていたのであ

　　る（甲５の１〔２５頁〕）。

(エ)　再生債務者はＬＢグループ内貸付けにおいても自立性が欠如してい

　　ること

　　　以上のとおり、再生債務者においては、ＬＢグループに属するＳＰＣ

　　に対して巨額の貸付けを行うに当たり、貸付条件の検討、契約書記載事

　　項の検討、及び取締役会の承認決議といった、本来の会社であれば行う

　　べき会社法で求められる手続（会社法３６２条４項）も履践されていな

　　かった。また、大会社に求められる内部統制組織の整備義務（会社法３

４８条3項4号、4項、３６２条4項6号、5項）にも明確に違反して
いた。

　このように、再生債務者は、ＬＢグループないしＬＢＪによる不当支
配により、他のＬＢグループ会社の破綻リスクを背負わされており、自
立性は全く有していなかった。

(2)　再生債務者は不良債権ビジネスについては実態があったこと

　他方、再生債務者の代表者であった米倉氏は、不良債権ビジネスについて
担保不動産の査定、不良債権の購入、管理及び回収も含め、米倉氏を含め当
初１６名ぐらいが実際に行い、その後、再生債務者における不良債権ビジネ
スはどんどん大きくなっていったと述べている（甲5の1〔１３頁〕）。

　また、新生銀行が再生債務者に対して融資を開始する時点でも、新生銀行
は、再生債務者から、同社は不良債権及び不動産ファイナンスを行う会社で
ある旨の説明を受けているのである（甲１３）。

　このように、再生債務者の本業である不良債権ビジネスの側面においては、
実態があった。

　なお、再生債務者がＬＢグループに属する会社であることから、不良債権
ビジネスにおいても、一定額以上の不良債権購入等については、ＬＢＨＩの
承認が必要とされているが（甲6）、これも、ＬＢＨＩが再生債務者の経営
に深く関与していたことを伺わせる一事情ということができるのである。

2　ＬＢグループによる再生債務者支配が、不当かつ強大であり、かつ、外部債
権者の利益が一切考慮されていないこと

　このように、再生債務者は、一方では、ＬＢグループからの巨額の借入れ及
び同グループに属する会社への巨額の貸付けというグループ内金融取引のため
の会社として機能し、それについて再生債務者に判断・決定権限が全くないま
まにＬＢグループに支配されていたという側面と、自らの判断の下に不良債権
ビジネスを遂行していた側面の２つの側面があることは明らかである。

これに加えて、再生債務者がLBグループに不当かつ強大に支配されており、しかも、それが外部債権者の利益を一切考慮しない形で行われていたことを示す顕著な事実について述べる。

(1)　再生債務者が獲得した利益の9割を移転する内容の匿名組合契約の締結

　　　再生債務者は、平成10（1998）年11月20日付でLBグループに属するジャパン・インベストメント・パートナーシップ・インク（以下「JIP」という。）との間で、再生債務者を営業者、JIPを匿名組合員として、匿名組合契約（以下「本件匿名組合契約」という。）を締結した（甲17）。

　　　本件匿名組合契約は、平成10（1998）年11月20日付で締結されたにもかかわらず、再生債務者が設立された同年1月5日の直後である同年3月1日に遡って効力が発生し、同15（2003）年11月28日に同じくLBグループに属するLBJ（正確にいうと、当時、同社は株式会社化されておらず、リーマン・ブラザーズ・ジャパン東京支店であった。）に匿名組合員たる地位が譲渡されている（甲17）。

　　　本件匿名組合契約は、わずか9000万円の匿名組合出資金に対し、再生債務者の全事業から生まれる税引前当期利益の9割を匿名組合員であるLBグループに移転するという不当な内容の契約であった。後述するように、実際、再生債務者からLBグループに対し、本件匿名組合契約に基づいて、再生債務者が本業である不良債権ビジネスから獲得した利益のうち合計280億4325万円もの利益分配が行われているのである（甲14の1ないし5）。

　　　このように、再生債務者は、LBグループに、不当かつ強大に支配され、これにより外部債権者の責任財産を構成する債務者所有資産が毀損しているのである。外部債権者の利益については何ら顧みられていないこともまた明らかである。

(2)　LBAHからの借入利息についてなされた税務上の自己否認

ア　ＬＢＡＨからの借入利息についての税務上の自己否認処理

　　再生債務者は、平成１６年１１月期以降、ＬＢＡＨからの借入利息のう
ち合計４４億２５４３万円を、租税特別措置法６６条の５に定める「国外
支配株主等に係る負債利子等の課税の特例」（いわゆる過少資本税制）に基
づいて、税務上自己否認している（甲１４の５ないし１０　平成１６（２
００４）年１１月期に２３５万円、同１７（２００５）年１１月期に２６
４６万円、同１８（２００６）年１１月期に４億１０５６万円、同１９（２
００７）年６月期に１２億３９９５万円、同年１１月期に１５億３０５１
万円、同２０（２００８）年１１月期に１２億１５６０万円）。

　　とりわけ、平成１９（２００７）年６月期、同年１１月期及び同２０（２
００８）年１１月期までの３期分の税務申告においては、ＬＢＡＨからの
短期借入金残高のうち、９０％以上を借入金ではなく自ら資本であるとみ
なし、同借入れに対応する利息について、損金不算入との処理を行ってい
るのである（甲１４の５ないし１０）。

イ　税務上の借入利息自己否認の持つ意味

　　この事実は、後述するように、再生債務者が自ら、ＬＢＡＨの債権の９
０パーセント以上を借入金ではなく資本とみなしていたことを顕著に表し
ているが、それだけではなく、再生債務者がＬＢグループに強く支配され
ていたことをも示している。

　　すなわち、再生債務者がＬＢＡＨからの借入利息を損金不算入としたよ
うに、財務会計上の処理と税務上の処理との間に食い違いが生じる項目の
種類としては、①期間を追うことによってこれらの処理がいずれ一致する
期間差異項目、例えば、減価償却費や貸倒引当金繰入額の限度超過額のよ
うに、当面は税務上損金算入が容認される限度を超える部分を損金不算入
とすることによって一時的に課税所得が増加するが、いずれは課税所得を
減算することにより財務会計上の費用計上処理と税務上の損金算入とが同

20

額になるように調整される項目と、②財務会計上の処理と税務上の処理とが将来にわたって永久に一致することのない永久差異項目、例えば、交際費・寄付金の限度超過額のように、ある期に損金不算入とされた場合、翌期以降も課税所得を減算するなどの調整がなされることのない項目、の2つが存するところ、いわゆる過少資本税制に基づく借入利息の損金不算入は後者の永久差異項目に該当する。

つまり、再生債務者がＬＢＡＨからの借入利息を損金不算入にするということは、翌期以降の将来にわたって、課税所得が減算されるなどの調整されることがなく、損金不算入とした部分についての納税負担・資金の外部流出が確定するということである。したがって、合理的な会社運営を行うためには、永久差異項目の発生を極力抑えることが必要であり、通常の会社ではそのような納税負担の検討が行われている。

しかし、本件において、再生債務者は、過少資本税制に基づいてＬＢＡＨからの借入利息のうち平成１６年１１月期から同２０年１１月期までの間、合計４４億２５４３万円もの金額を損金不算入としている。再生債務者においては、その分課税所得が増加し、過大な納税負担・資金の外部流出が生じているにもかかわらず、敢えてＬＢＡＨから流入した資金を資本ではなく借入金として取扱い、かつ、ＬＢＡＨに利息を支払っているのである。

このことは、再生債務者は、ＬＢグループへの利益移転を目的として運営がなされるなど、ＬＢグループに不当かつ強く支配されていること、及び本来であれば支払わなくて済むはずの納税負担により外部債権者の責任財産である債務者所有財産を毀損するなど、新生銀行を始めとする外部債権者の利益は何ら考慮されていないことを如実に表しているのである（須田公認会計士意見書）。

3  小括

　以上から、再生債務者は、ＬＢグループからの巨額の借入れ及び同グループ
に属する会社への巨額の貸付けというグループ内金融取引のための会社として
機能し、それについて再生債務者に判断・決定権限が全くないままにＬＢグル
ープに支配されていたという側面と、自らの判断の下に不良債権ビジネスを遂
行していた側面（後述するように、再生債務者の売上高の９割以上を不良債権
ビジネスが占めていた。）の２つの側面を有していること、本件匿名組合契約の
締結・履行及びＬＢＡＨからの借入利息の損金不算入処理を行うなどＬＢグル
ープに不当かつ強く支配されていたこと、そして、外部債権者の責任財産は毀
損され、その利益は一切考慮されずに運営がなされていたことは極めて明らか
である。

　そもそも、グループ内金融子会社については、グループ内のある企業が倒産
すると他のグループ会社に信用リスク等が伝播し、次々とグループ企業が破綻
する負のドミノ効果がある（神作教授意見書）。

　本件においては、再生債務者を過少資本の状態に陥らせ、再生債務者から他
のＬＢグループ会社に対する貸付けを行うことにより、他のＬＢグループの破
綻の危険性を、再生債務者を通じて外部債権者に負担させることになり、さら
に、後述するとおり、再生債務者からＬＢグループへ、匿名組合利益分配や人
件費等の名目で、多額の利益移転を行うことによっても、再生債務者の責任財
産を毀損させる危険性をより一層高め、実際に毀損させたものである。

　このように、再生債務者においては、再生債務者及びＬＢグループに属する
会社の破綻リスク及びこれに伴う損失を、外部債権者にも負担させるという、
いわば損失分担スキームが採られていたのである。このような事情は、たとえ
ば再生債務者と同時に再生手続申立てが行われたリーマン・ブラザーズ・コマ
ーシャル・モーゲージ株式会社（以下「ＬＢＣＭ」という。）には見られず（Ｌ
ＢＣＭはグループ外からの金融機関借入れがなく、ＬＢグループ内の破綻リス
ク・損失は外部債権者に負担させられていない。）、再生債務者における特徴的

な事実関係である。

　　したがって、再生債務者を金融子会社として不当に経営支配し、不当に搾取

し、再生債務者の破綻に責任を負うべきLBグループに属する会社については、

信義則上、その再生債権を劣後化しなければならないことは明らかである。


第4　LBグループによる再生債務者からの不当搾取

　　再生債務者は、それが獲得した多額の利益をLBグループに不当に移転させ

られることにより、また、LBグループに属する他の会社の利益を保持するた

め再生債務者が多大な損失引受を強制されることにより、不当に搾取されてい

た。以下、かかる不当搾取により、外部債権者の責任財産を構成すべき債務者

所有資産が毀損されたことについて述べる。

1　再生債務者における資金の流れと利益獲得構造

(1)　再生債務者の貸借対照表から外部債権者からの借入れは不良債権ビジネ

　　スに充てられていたといえること

　　　再生債務者の貸借対照表において、短期借入金は、その大部分がLBAH

　　からの借入金であり、長期借入金は、新生銀行をはじめとするLBグループ

　　以外からの外部債権者からの借入金であるが、再生債務者の貸借対照表から

　　すれば、再生債務者においては、LBグループから借り入れた資金が、おお

　　むねLBHIらが支配したSPCに対する貸付けに充てられており（勘定科

　　目としては営業貸付金）、新生銀行をはじめとする外部債権者からの借入金

　　については、おおむね不良債権ビジネス（勘定科目としては購入貸付債権）

　　に充てられていたといえる（別紙1）。

　　　すなわち、平成18（2006）年11月30日と平成19（2007）

　　年6月30日の貸借対照表では、購入貸付債権の金額（それぞれ836億円

　　及び1399億円）と外部借入れである長期借入金（それぞれ1065億円

　　及び865億円）の金額が近似しており、営業貸付金（それぞれ2650億

円及び４１６２億円）とＬＢＡＨからの借入れである短期借入金（それぞれ

２４９２億円及び４７８８億円）の金額が近似していること、また、同じく

平成１８（２００６）年１１月３０日と同１９（２００７）年６月３０日の

貸借対照表を比べると、営業貸付金が２６５０億円から４１６２億円へと１

５１２億円増加したのに伴い、短期借入金が２４９２億円から４７８８億円

へと２２９５億円増加し（これはすべてＬＢＡＨからの借入金の増加であ

る。）、平成１９（２００７）年６月３０日と同２０（２００８）年５月３１

日の貸借対照表を比べると、営業貸付金が４１６２億円から１３９７億円へ

と２７６４億円減少し（ＬＢＣＭに対する平成１９（２００７）年６月３０

日時点での貸付金２５６２億円が、同２０（２００８）年５月３１日時点に

は０となっている。）、短期借入金が４７８８億円から２５４２億円へと２２

４６億円減少している（同期間におけるＬＢＡＨからの借入金の減少額は２

４８６億円となっている。甲１４の７及び８）。

(2) 再生債務者が生み出す利益の源泉は不良債権ビジネスであること

　　　再生債務者においては、売上高の約９割以上を購入貸付債権回収額が占め

ており、ＬＢグループに属するＳＰＣである営業貸付先から得られる営業貸

付金利息は売上高の１．６％～７．９％の水準、匿名組合出資契約に基づく

損益分配額（営業外収益）も、売上高対比では６．１％～１０．６％の水準

にとどまっている（甲１４の７及び８）。

　　　よって、再生債務者においては、その利益の源泉が、再生債務者が自ら行

っている不良債権ビジネスにあるということができる。

2　ＬＢグループによる不当な利益の移転（吸い上げ）

(1) 本件匿名組合契約に基づくＬＢグループへの利益移転

　　　前記のとおり、ＬＢグループは、再生債務者に対し、ＬＢグループに属す

るＪＩＰとの間で本件匿名組合契約を締結させることにより（その後、ＪＩ

Ｐの契約上の地位をＬＢＪに移転させている。）、再生債務者が不良債権ビジ

ネスから獲得した利益の９割を再生債務者から流出させた。

　すなわち、ＬＢグループは、再生債務者が本業である不良債権ビジネスを営んで得た利益について、平成１１年１１月期までに２３億７１３２万円、同１２年１１月期に３１億６５７１万円、同１３年１１月期に５２億０６５９万円、同１４年１１月期に３億９８１７万円、同１５年１１月期に４９億７７９６万円、同１６年１１月期に１１９億２３５０万円の合計２８０億４３２５万円もの金額の利益移転を行い、外部債権者に対して同額の責任財産を毀損しているのである（甲１４の１ないし５）。

　その後、平成１７（２００５）年１１月以降は、本件匿名組合契約に基づくこのような利益の吸い上げを止めたが、それは、匿名組合員であるＬＢＪは何らリスクをとっていないにもかかわらず、同社に対して巨額の利益分配がなされるのは説明がつかないとの理由から、監査法人がストップをかけたからである（甲５の１〔１７、１８頁〕）。

　本件匿名組合契約が、ＬＢグループがわずか９０００万円ばかりの匿名組合出資を行うことにより、再生債務者の事業上のリスクを何らとることなく、再生債務者の全事業から発生する税引前当期利益の９割をＬＢグループに移転させるという内容の契約であること、再生債務者においては、外部債権者からの借入金が概ね不良債権ビジネスに充てられていたこと、及び再生債務者が獲得する利益のほとんどが不良債権ビジネスによるものであったことを併せ考慮すれば、再生債務者においては、設立当初から外部債権者からの借入金の弁済原資が残らない仕組みが採られていた。再生債務者自身も監査法人からの指摘によって認識するとおり、本件匿名組合契約の締結及び履行が外部債権者の責任財産を毀損する極めて不当な搾取であることは明らかである。

(2)　配当によるＬＢグループへの利益移転

　ＬＢグループは、再生債務者から、少なくとも第７期（平成１５（２００

３）年１２月１日～同１６（２００４）年１１月３０日までの事業年度）の中間配当として１０億７５００万円、期末配当として１０億９６００万円、第８期（平成１６（２００４）年１２月１日～同１７（２００５）年１１月３０日までの事業年度）の期末の利益配当として３１億２１００万円の合計５２億９２００万円の配当金をそれぞれ受領した（甲１４の５及び６）。

　このうち、第８期（平成１６（２００４）年１２月１日～同１７（２００５）年１１月３０日までの事業年度）の期末利益配当としてＬＢグループが受領した３１億２１００万円は、上述したように本件匿名組合契約に基づく利益分配について監査法人からストップをかけられた後に行われたものであるが、配当として、当期未処分利益の９割を配当したことにより、当該利益処分後の再生債務者の未処分利益は、わずか３億４７１９万円しか残されていないのである（甲１４の６）。

(3) 人件費及び業務委託費によるＬＢグループへの利益移転

　　ＬＢグループは、再生債務者から、少なくとも人件費及び業務委託費として、第７期（平成１５（２００３）年１２月１日～同１６（２００４）年１１月３０日までの事業年度）に１４億２０００万円、第８期（平成１６（２００４）年１２月１日～同１７（２００５）年１１月３０日までの事業年度）に１４億７３００万円、第９期（平成１７（２００５）年１２月１日～同１８（２００６）年１１月３０日までの事業年度）に２３億５９００万円、第１０期（平成１８（２００６）年１２月１日～同１９（２００７）年６月３０日までの事業年度　７か月間）に１５億１０００万円、及び第１１期（平成１９（２００７）年７月１日から同１９（２００７）年１１月３０日の事業年度　５か月間）に１６億０７００万円の合計８３億６９００万円を受領している（甲１４の５ないし９）。

(4) ＬＢグループ営業貸付先からの直接の利益移転

　　ＬＢグループは、再生債務者のやはりＬＢグループに属する営業貸付先か

ら、業務委託費として、平成１８（２００６）年１１月期以降だけでも、少

なくとも、１３億３４００万円（内訳：エル・ビー・シー有限会社８億０２

００万円、リベルタス住宅ローン株式会社５億３２００万円）を受領した（甲

１８の１、２及び甲１９の１、２）。

(5)　利益移転の合計額が４３０億円にのぼること

　　　以上からすると、ＬＢグループは、再生債務者から、匿名組合契約に基づ

く利益分配金として２８０億４３２５万円、配当として５２億９２００万円、

並びに人件費及び業務委託費として８３億６９００万円の合計利益移転を

受けており、少なくとも４１７億０４２５万円の利益移転を受けている。

　　　加えて、ＬＢグループが、再生債務者のＬＢグループに属する営業貸付先

から、直接、少なくとも、１３億３４００万円の利益移転を受けていること

を合わせると、少なくとも４３０億３８２５万円にのぼる利益を享受してい

るのである（別紙２）。

３　ＬＢグループの利益保持のための再生債務者の損失引受強制

(1)　再生債務者がＬＢグループの利益保持のために利用され、これにより再生

債務者の外部債権者の利益が害されたこと

　　　再生債務者には、外部債権者がいたにもかかわらず、他のＬＢグループに

属する会社の利益を保持するため、以下に詳述するとおり、他のＬＢグルー

プに属する会社のリスク及び損失を不当に負担させられ、結局、再生債務者

の外部債権者が、これらの破綻リスク及び損失を転嫁されることとされた。

　　　特に、再生債務者と同時に民事再生手続が申し立てられたＬＢＣＭについ

ては、外部金融機関からの借入れがなく、ＬＢグループに属する会社のみが

債権者であるが、ＬＢＣＭの利益保持のため、以下のとおり、再生債務者に

対し、不当に、債務の付け替え、損害の担保、不良有価証券の取得をさせる

ことにより、そのリスク及び損失を負担させていたものである。

　　　このように、ＬＢグループは、自らの利益を保持するために、再生債務者

を通じて、不当に、外部債権者に対し、破綻リスク及び損失を転嫁しながら、

自らの財産については、累が及ばないような措置を講じたものである。

(2)　ＬＢＦＪを通じたグループ会社の費用の立替払い

　　ＬＢＦＪは、ＬＢグループに属する会社が負担する費用を立替払する役割

を担っていた会社であるところ（甲２６）、ＬＢＦＪの借入金（平成２０（２

００８）年１１月末日時点で５３１億８７００万円）の大半は、再生債務者

からのもの（４７４億７１００万円）である（甲２０の３）。

　　そして、ＬＢＦＪの借入金にほぼ見合う金額（同時点で５２２億円）が、

ＬＢグループに属する会社が本来支払うべき賃料、税金等の費用の立替払金

としてＬＢグループの外部支払に充当されているが、当該立替払金は、適宜

精算されることなくその金額が増加している（別紙３　甲２０の１ないし

３）。

　　しかるに、現時点において、ＬＢＦＪに対する貸付金の回収見込みは、わ

ずか１２３億８０００万円であるとされている（甲２６）。

　　これは、ＬＢグループに属する会社が本来支払うべき費用を支払うことな

く、再生債務者にその損失負担を強制していることの表れであり、まさに不

当搾取がなされていることを意味する。

　　なお、ＬＢＦＪが費用立替払いを行っている相手方として、有限会社ダッ

クホーンが存在する。同社は、再生債務者に対し、１０億３１３８万円の債

権届出を行っているが、ＬＢＦＪは同社に対し、再生債務者の破綻直前の平

成２０（２００８）年１１月期、７億９３００万円の納税資金の立替払いを

行い、これについては再生債務者のＬＢＦＪに対する営業貸付金によって賄

われているのである（甲２０の３及び甲２８の３）。このように、有限会社

ダックホーンの再生債務者に対する再生債権は、実質的には再生債務者のＬ

ＢＦＪに対する営業貸付金と相殺されるべきであるという観点からも、後述

するように、劣後化されるべきである。

(3)　ＬＢＣＭの利益保持のための貸付け及び債務付け替え

　　ア　債権の回収可能性を無視した債務付け替え

　　　平成２０（２００８）年１０月２１日付同意申請書（１４）によれば、再生債務者は、株式会社虎ノ門キャピタル（以下「虎ノ門キャピタル」という。）に対し、同１９（２００７）年１１月３０日付金銭消費貸借契約に基づく貸金債権１８億４０００万円を有していた（なお、同残高は、開始決定日においても存在していたが、財産評定において開示されなかった疑いが払拭できない）。そして、再生債務者は、上記同意に基づき、虎ノ門キャピタルから同額の弁済を受けると共に、合同会社クレアスアセット（以下「クレアスアセット」という。）に対し１６億４０００万円を貸し付けた。

　　　ところで、同意申請書（１４）によれば、再生債務者が、債務者を虎ノ門キャピタルからクレアスアセットに付け替える処理を行う理由として、「クレアス（クレアスアセット：引用者注）には買い戻しを行うだけの手元資金がないため、クレアスをして買い戻しを実行させるためには、その資金を再生債務者が融資するほかない。」（同意申請書（１４）４頁）、「本件処理を行わない結果、・・・再生債務者の間接的な投資先であるクレアスが資金繰りに行き詰って破綻する恐れがある。・・・そうなった場合、再生債務者のグループ企業であるリーマン・ブラザーズ・コマーシャル・モーゲージ株式会社のクレアス向け債権の回収額が大幅に減額することが想定される」（同書５頁）と、ＬＢＣＭの債権回収のためであると説明している。

　　　しかしながら、再生債務者は、クレアスアセットに対する１６億４０００万円の貸金債権の担保となっている不動産の現在の価格は、５億円から１０億円に過ぎないと回答しており（甲１〔６頁〕）、約６億４０００万円から１１億４０００万円にのぼる非保全債権部分が残ることになる。そして、同意申請書（１４）によれば、虎ノ門キャピタルもクレアスアセットも「相応の支払能力を有するかに見える。」（同意申請書（１４）５頁）な

どとして、非保全債権部分の回収可能性について十分な検討がなされてい

ないのである。

イ　再生債務者の貸付金がＬＢＣＭへの弁済に充てられていること

　　加えて、本同意申請書添付の物件目録２及び同３記載の建物２棟につい

ては、虎ノ門キャピタルが、再生債務者から融資を受けて、クレアスアセ

ットから当該建物を取得する約２週間前の平成１９（２００７）年１１月

１５日、債務者をクレアスアセット、抵当権者をＬＢＣＭ、債権額を３９

０億円とする抵当権が設定され、虎ノ門キャピタルが所有権を取得した同

月３０日にその抵当権が抹消されている（ＬＢＣＭによる抵当権設定当時

は無担保であった。同意申請書（１４）添付資料３）。

　　これは、再生債務者が虎ノ門キャピタルに対して１８億４０００万円を

貸付け、虎ノ門キャピタルがクレアスアセットに対して建物購入代金とし

て支払った資金の全部又は一部が、ＬＢＣＭの債権回収のための資金とし

て流れていることを意味するのである。

ウ　虎ノ門キャピタルに対する貸付け及び債務付け替えの実態

　　このように、再生債務者の虎ノ門キャピタルに対する貸付けをクレアス

アセットに付け替えることは、再生債務者の回収可能性を低下させる危険

性が極めて高いものである。のみならず、再生債務者の虎ノ門キャピタル

に対する貸付自体についても、ＬＢＣＭの債権回収の一環としてなされた

疑いが極めて高い。

　　したがって、これらの取引は、外部債権者の責任財産を毀損する不当搾

取である。

(4)　ＬＢＣＭの債権回収のための担保提供

　　再生債務者及び虎ノ門キャピタルは、平成１９（２００７）年２月、旧菱

和ライフクリエイト株式会社（以下「旧菱和ライフクリエイト」という。）

の株式公開買付を行った。旧菱和ライフクリエイトは、その後、同社を分割

会社、株式会社クレアスライフ（以下「クレアスライフ」という。）を新設
会社とする会社分割を行い、さらに、旧菱和ライフクリエイトは株式会社ク
レアスアセット（その後、組織変更により合同会社クレアスアセット）に商
号変更した（同意申請書（14）2頁）。

　再生債務者は、営業貸付先のSPCであるヨセミテに対し、平成19（2
007）年11月期に50億5800万円を貸付け（甲21の2）、ヨセミ
テは、この資金を利用して、株式会社クロック（以下「クロック」という。）
に対し、49億円の貸付け及び1億0450万円相当のクロック株式を取得
し（甲21の2）、クロックは、この資金を原資として、クレアスライフの
株式70パーセントを取得した（同意申請書（14）添付資料10）。

　他方、LBCMは、クレアスライフに対し、約53億円の貸付債権を有し
ており、ヨセミテが保有するクロック株式が、当該貸付債権の担保として差
し入れられている。この担保提供の理由について、再生債務者は、「LBC
Mとしては、ノンリコースローンではない為、株を担保にとってコーポレー
トリスク部分をヘッジしたいという発想」（甲1〔11頁〕）にある、とLB
CMの債権回収のためである旨説明している。

　しかし、再生債務者は、ヨセミテに対して、50億円5800万円の債権
を有しているのであるから、本来であればヨセミテが保有する株式は、再生
債務者が有する当該債権の担保とすべきであるところ、LBCMのリスクヘ
ッジのために担保提供されているのである。

　これは、まさにLBグループに属するLBCMの利益のために再生債務者
に損失引受を強制していることの顕著な表れである。

(5)　LBCMの債権保全のための損害担保契約の締結

　再生債務者は、LBCM及び有限会社トレンチ（以下「トレンチ」という。）
との間で、平成19（2007）年8月31日及び同年11月30日、LB
CMのトレンチに対する貸付債権が毀損した場合、再生債務者が、LBCM

が被った損害を填補する旨の損害担保契約を締結している（甲8の47及び
52）。

　これも、ＬＢグループに属するＬＢＣＭの債権保全のために再生債務者に
損失引受を強制していることの表れである。

(6)　格付けの低い有価証券の取得

　再生債務者は、本件再生手続が開始される半年前の平成20（2008）
年3月、ＬＢＣＭから、ＬＪＡＣ債（ＬＪＡＣ債とは、ＬＢＣＭが保有する
不動産担保貸付債権を証券化したものであり、格付け機関大手のムーディー
ズ・インベスターズ・サービスによって、安全性に応じて、「Ｂａａ以上」
が「投資適格」、「Ｂａ以下」が「投資不適格」とされている。）を、額面金
額で、総額323億円分購入した。うち、投資適格が222億3000万円
（総額対比68．8パーセント）、投資不適格が100億7000万円（総
額対比31．2パーセント）であった（甲8の57及び甲38）。

　再生債務者は、平成20（2008）年4月以降、このうち一部である1
23億1000万円分（うち投資適格89億5000万円分、投資不適格3
3億6000万円分）をＬＢＣＭに対して売却した（甲8の56、58、5
9、61ないし65及び甲38）。

　この結果、再生債務者に残されたＬＪＡＣ債が、総額199億9000万
円分であり、うち投資適格が132億8000万円、投資不適格が67億1
000万円となっている。これは、ＬＢＣＭが当初発行したＬＪＡＣ債の額
面総額577億3000万円のうち投資不適格に格付けされたもの115億
6000万円のうち、58．0パーセントに該当し、投資不適格の過半数を
再生債務者が引き続き引き受けていることになる（甲38）。

　そして、再生債務者が保有するＬＪＡＣ債は、本件再生手続開始決定日に
おいて帳簿価額が191億3947万円あり、その財産評定価額は8億43
40万円と帳簿価額のわずか4．4パーセントに過ぎず（財産価額評定書）、

　　再生手続開始日の半年前に１８２億９６０７万円の損失を計上すべき取引を

行っているのである。

　　これも、ＬＢＣＭの利益のために再生債務者に引受を強制している損失で

ある。

(7)　回収不能の営業貸付けの実行

　　再生債務者は、次のとおり、再生手続開始日に近接する時期にＬＢグルー

プに属する営業貸付先であるＳＰＣに対して合計１１０億４６００万円に

のぼる貸付けを行ったが（甲２１の２、甲２２の２、甲２３の２、甲２４の

３及び甲２５の３）、その回収見込み額はわずか１８億８４００万円と極め

て少額にとどまり（財産価額評定書）、再生手続開始直前に９１億６２００

万円もの損失を計上すべき取引を行っている。

（単位：万円）

| 営業貸付先 | 貸付時期 | 貸付金額(A) | 回収見込額(B) | 差引(A)－(B) |
|---|---|---|---|---|
| ヨセミテ | 平 19（2007）年 11 月期 | 50 億 | 400 | 49 億 9600 |
| 有限会社スノーバード | 平 19（2007）年 11 月期 | 14 億 9600 | 4 億 | 10 億 9600 |
| 有限会社アルゴ | 平 19（2007）年 11 月期 | 10 億 6400 | 2 億 3000 | 8 億 3400 |
| 有限会社ペルセウス | 平 20（2008）年 11 月期 | 17 億 9400 | 6 億 4000 | 11 億 5400 |
| 有限会社バーゴ | 平 20（2008）年 11 月期 | 16 億 9200 | 6 億 1000 | 10 億 8200 |
| 合計 | | 110 億 4600 | 18 億 8400 | 91 億 6200 |

4　小括

　　以上のように、再生債務者においては、設立から破綻に至るまでの間、外部
債権者の利益は一切考慮されることなく、再生債務者自らが獲得した多額の利
益をＬＢグループに不当に移転させられ、また、ＬＢグループに属する他の会
社の利益を保持するため再生債務者に多大な損失を引受させることにより、不
当に搾取されていたのである。

　　このように、ＬＢグループは、再生債務者を犠牲にして利益移転・損失の引
受強制をすることにより利益を享受し、外部債権者の責任財産を毀損させてお
きながら、専らＬＢグループ内リスクの発現に起因して倒産に至るや、外部債
権者にも、債権残高比率に応じた負担を求めようとしているのである。

　　このようなことは、衡平・公正の観点から、信義則に反するものといえ、決
して許されてはならず、ＬＢグループに属する会社の再生債務者に対する再生
債権が劣後化されなければならないことは明らかである。


第5　過少資本

1　過少資本に基づく劣後化について

　　株式会社においては、構成員が、事業についてリスクに応じた合理的な出資
を引き受け、それを維持することが、構成員の「有限」責任を正当化する。す
なわち、支配株主が、従属会社の事業のリスクを合理的な範囲で引き受けてい
ないにもかかわらず、逆に言えば、リスクを外部に移転させているにもかかわ
らず、好況の際は、支配株主として従属会社の利益を独占しながら、窮境又は
破綻に際しては、株主としての責任を極めて限定された小さな範囲のみでしか
負担せずに、破綻によるリスクを免れて、他方で、一債権者として外部債権者
と同様の扱いを要求することは、衡平の理念に反し、有限責任制度の濫用とし
て、信義則に違反するものである。

34

　この点、どれだけの資本を有するかは、資本効率の問題に過ぎないとの反論
が考えられようが、会社法は、柔軟・中立的な制度を目指しているものの、決
して外部債権者の保護を軽視しているものではない。むしろ、より自由な設計
が認められるようになった以上、事後規制、事後的な保護の要請は高まってい
るのである。そして、企業が破綻した場面において、破綻企業に対して支配力
を行使して破綻を免れさせることができた内部者さらには不当支配・不当搾取
により破綻原因を創出した内部債権者よりも、外部債権者の保護の要請は、よ
り高いものといえる。すなわち、過少資本状態の従属会社の外部債権者のリス
クは、従属会社の倒産の局面において顕在化するのであるから、まさに、この
局面において、従属会社の外部債権者に対する法的保護が重要となる。

　そこで、倒産手続上、支配会社の、過少資本にある従属会社に対する債権を、
株式に基づく残余財産分配請求権と同視して、外部債権者の債権に劣後するも
のとして扱うことが、信義則上求められるのである（以上、松下教授意見書）。

2　本件における過少資本の事実

　再生債務者の資本金は、平成１８年１１月３０日時点から同２０年８月３１
日までの間、１０００万円〜５億円の範囲であり、３０００億円を超える総資
産額との比率では、０．００２７％から多いときでも０．１５２％であり、１％
にも満たない極めて低い水準であった。また、払込資本以外の利益剰余金を加
えた純資産も、同期中は、１３億円から４０億円の範囲で推移しているため、
総資産額との比率では、０．３００５％から１．２２７１％という極めて低い
水準である（甲１４の７ないし９）。

　他方で、再生債務者の借入金の大半は、再生債務者の支配会社であるＬＢグ
ループから借入れの形式で調達されており、ＬＢグループは、再生債務者に対
して、前記のとおり、意のままに、不当に経営支配、不当搾取を行っていた。

　以上からすれば、再生債務者が著しい過少資本状態に陥っていたことは明ら
かであり、また、前記のとおり、本件は、ＬＢＨＩの破綻を直接の契機として、

再生債務者が破綻したものであって、外部債権者が、返済原資として期待していた不良債権ビジネスが原因ではないのであるから、再生債務者の収益を長年にわたり搾取してきた支配会社であるＬＢＨＩ、ＬＢＡＨ、ＬＢＪをはじめとするＬＢグループ会社が責任を負担すべきことは当然であり、ＬＢグループの再生債務者に対する債権は、再生債務者の外部債権者の債権に対して劣後して扱うことが必要であることが、信義則上、要請される。

3　過少資本税制に伴う損金不算入の自己否認の事実

(1)　過少資本税制について

　租税特別措置法第６６条の５に定める「国外支配株主等に係る負債利子等の課税の特例」（いわゆる過少資本税制）は、海外の関連企業から過大な貸付けを受け入れることによる企業の租税回避を防止するため、出資と貸付けの比率が一定割合を超える部分の支払利子に損金算入を認めないこととしている。

　すなわち、国外支配株主等からの資金調達の形態が、形式上は借入金（その調達コストは、債務者の事業活動の成否にかかわらず、時の経過とともに発生する費用たる支払利息）であっても、実質的には出資金（その調達コストは、事業活動成果としての税引き後利益による配当金）とみなすべきものである場合には、当該借入金に対する支払利息の損金算入は否認される。

　具体的には、国外支配株主等が有する債務者企業の自己資本持分額の３倍に相当する金額、もしくは、類似法人（同業他社）の総利付負債・純資産倍率を債務者企業に適用した場合の有利子負債金額を超える部分を、出資とみなして、それに対応する支払利息を損金不算入とする（須田公認会計士意見書）。

(2)　再生債務者による損金不算入の自己否認

　再生債務者の税務申告書によれば、再生債務者は、平成１６年１１月期から平成２０年１１月期までの６期にわたり、過少資本税制に伴い、ＬＢＡ

　　　Ｈ・ＬＢＨＩからの借入れに係る支払利息を自ら損金不算入としており、特

に直近３期（平成１９年６月期、同年１１月期、平成２０年１１月期）にお

いては、類似法人に比してその総利付負債・純資産比率は、１６．６倍から

４２．９倍もの極端な過剰負債状態（過少資本状態）にあり、支払利息のう

ち９割以上を自ら損金不算入としていた（甲１４の８ないし１０）。

　　　このことは、まさに、上記のとおり再生債務者が過少資本状態に陥ってい

たことを税務上の見地から裏付ける事実にほかならない。

４　小括

　　　グループ内部での借入れ・融資と外部からの借入れとが重なると、グループ

内の融資先会社の無資力リスクを外部の債権者に負担させることになり、過少

資本の問題がより深刻に現れることになる。

　　　本件において、再生債務者は、借入金の大半をＬＢグループから借入れ、そ

の借入金の大半が、ＬＢグループに属する会社への貸付けに用いられていた。

仮にＬＢグループが、再生債務者を経由せず、グループ内会社に直接融資して

いれば、グループ内会社の無資力リスクはＬＢグループが負うことになり、外

部債権者がこれを負担することはない。しかし、再生債務者がグループ内会社

に融資する金員をＬＢグループが再生債務者に対する融資の形態で拠出する

と、グループ内の会社として運命を共にする再生債務者及びグループ内会社の

無資力リスク・損失を外部債権者にも負担させることになる。

　　　このように、再生債務者以外のグループ内会社の無資力リスクまで外部債権

者に負担させるという事情がある本件事実関係においては、信義則上、再生債

務者の再生計画においてＬＢグループの再生債権の劣後化がより強く必要と

なるのである（以上、松下教授意見書）。


第６　ＬＢグループに属する会社の再生債権者の再生債権の取扱い

１　ＬＢＨＩ、ＬＢＡＨ及びＬＢＪの再生債権の取扱い

　ＬＢＨＩは、上述したように、ＬＢグループ全体を支配する会社であり、不当経営支配及び不当搾取の責任をとるべき立場にあり、また、再生債務者が、外部債権者に融資を求めるに際して、ＬＢＨＩは、ＬＢＨＩによる保証を積極的に提案し、再生債務者の債務を保証し、再生債務者の無資力リスクを包括的に引き受ける旨の意思表示していたものである。したがって、支配会社であるＬＢＨＩの債権の劣後化を否定しようとすることは、民事再生法１５５条１項ただし書及び信義則に反し、許されないというべきであり、同社の再生債権は、ＬＢグループ外の債権に劣後すべきである。

　そして、本件においては、再生債務者が再生手続開始の時においてその財産をもってＬＢグループ１５社を除く再生債権者の債権に係る債務を完済することはできない状態にあることは明らかである。

　そうであれば、本件における債権者集会において、劣後債権者であるＬＢＨＩの議決権行使は認められてはならない。

　また、ＬＢＡＨも、ＬＢＨＩの支配下にあり、ＬＢＨＩないし再生債務者の親会社であるＬＢＪが、アジア地域のＬＢグループ内金融取引に利用していたＳＰＣであって、ＬＢＨＩないしＬＢＪが、グループ内金融取引のためのビークルとして使っているに過ぎないから、ＬＢＡＨの再生債権も、ＬＢグループ外の債権者の債権に劣後すべきであり、また、本件における債権者集会において、議決権行使が認められてはならない。

　加えて、ＬＢＪも、再生債務者の親会社として、直接的に、不当に再生債務者の経営を支配し、再生債務者から多額の利益移転を受けて、不当搾取にしてきたものである上、ＬＢＨＩとともにアジア地域における資金調達を行っていたのであるから、その再生債権もＬＢグループ外の債権に劣後すべきであり、また、本件における債権者集会において、議決権行使が認められてはならない。

２　ＳＰＣ１０社及びＪＩＰの再生債権の取扱い

(1)　ＳＰＣ１０社及びＪＩＰがＬＢＨＩに強く支配されていること

　再生債権である、有限会社プルート不動産、有限会社ガーデニア、有限会

社ターピン・インターナショナル、有限会社マーリン・インターナショナル、

有限会社パイク・インターナショナル、有限会社ジニア、有限会社ピラニア・

インターナショナル、有限会社飛泉ビルディング、有限会社ダックホーン、

有限会社イエローテイル・インターナショナル（以下、併せて「ＳＰＣ１０

社」という。）は、いずれも直接又は間接的に、ＬＢグループに属する米国

法人であるプリンシパル・トランザクション・インクを株主（１００％親会

社）とするＳＰＣである（甲２７ないし甲３６）。また、プリンシパル・ト

ランザクション・インクも、ＳＰＣであり、その支配株主は、ＬＢＨＩであ

る（甲４の３及び甲４の４）。

　加えて、これらＳＰＣ１０社の取締役が、平成２１年１月１３日、ＬＢＨ

Ｉの指示により、すべてＬＢＨＩの関係者に変更されている（甲２７）。

　以上のとおり、これらＳＰＣ１０社は、ＬＢＨＩの強力な支配下にある。

　その後、これらＳＰＣ１０社の取引は、終了しており、債権者に対する債

務の弁済が終了した後に資金が残存したため、本来であれば、株主であるプ

リンシパル・トランザクション・インク（ひいては、ＬＢＨＩ）に配当すべ

きところ、税務上の観点から、再生債務者に資金を集中させるというキャッ

シュ・スウィープ取引により、債権者となった（甲５の１〔１５頁〕）。つま

り、これらＳＰＣ１０社が再生債務者に有するとされている債権は、実態と

しては、ＬＢＨＩが、再生債務者に対して有するものである。

　また、プリンシパル・トランザクション・インクは、再生債務者が営業貸

付金を有するＳＰＣ（有限会社ヨセミテ（簿価５０億円）、有限会社カシオ

ペア（簿価４７億円）、有限会社オルカ・インターナショナル（簿価２５億

円）、有限会社ペルセウス（簿価１８億円）、有限会社バーゴ（簿価１７億円）、

有限会社アルゴ（簿価１０億円）、有限会社スノーバード（簿価１０億円）、

有限会社バラクーダ・インターナショナル（簿価６億４千万円）、慶安有限

会社（簿価３億７千万円）、有限会社ジャスミン（簿価５８３６万円）、有限
会社ボニータ・インターナショナル（簿価４８７０万円）、有限会社オスプ
レイ・インターナショナル（簿価１７６４万円）、有限会社ダリア（簿価６
７２万円）の株主（１００％親会社）でもある（甲４の３及び財産価額評定
書）。

　したがって、これらＳＰＣ１０社の再生債務者に対する債権と再生債務者
が営業貸付金を有するＳＰＣの再生債務者に対する債務は、親会社であるプ
リンシパル・トランザクション・インクにおいて、実質的に混同しており、
信義則上、この観点からも劣後化されるべきである。

　また、これらＳＰＣ１０社は、いずれも、少なくとも、平成２０年１１月
期において、営業収益はなく、事業実態はなかった（有限会社プルート不動
産、有限会社ガーデニア、有限会社タービン、有限会社マーリン・インター
ナショナル、有限会社バイク・インターナショナル、有限会社ジニア、有限
会社ピラニア・インターナショナル、有限会社飛泉ビルディングにおいては、
平成１９（２００７）年１１月期及び同２０（２００８）年１１月期の２期
にわたって、有限会社ダックホーンは、同１８（２００６）年１１月期から
同２０（２００８）年１１月期までの３期にわたって、営業収益はない。甲
２８ないし甲３７）。

　そして、これらＳＰＣ１０社の債権届出書（甲４０の１ないし１０）は、
有限会社ダックホーンを除き、いずれも代表者である下野賢也氏の代表印が
押印されているが、下野氏自身は、この再生債権届出書押印の事実を知らな
い（甲５の２〔９頁〕）。

　また、ＪＩＰは、本件匿名組合契約における当初の匿名組合員であり、Ｊ
ＩＰの債権届出における代表者名義は、ＬＢＨＩの債権届出における代表者
名義と同一であり（甲３９及び甲４１）、ＪＩＰもＬＢグループに属するも
のであり、ＬＢＨＩの支配を受けている（甲４の４）。また、ＪＩＰは、あ

　　　る案件に匿名組合出資をするためのビークルに過ぎず、当該案件は既に何年

　　　も前に終了していた（甲7）。

(2)　ＳＰＣ10社及びＪＩＰの再生債権が劣後化されるべきこと

　　　このように、ＳＰＣ10社の再生債権は、ＬＢＨＩが、ＳＰＣ10社の名

　　義を使って、再生債務者の勘定に残していたものに過ぎない。また、これら

　　はＬＢＨＩに強く支配されている会社であり、事業実態すらなかったもので

　　あることを併せ考えると、ＬＢＨＩと別異に取り扱われるべき必要性はない。

　　　また、ＪＩＰについても、既に何年も前に取引が終了していたビークルで

　　あり、ＬＢＨＩの代表者と同一名義で債権届出をしていることからすると、

　　ＬＢＨＩに強く支配されており、ＬＢＨＩと別異に取り扱われるべき必要性

　　はない。

　　　そもそも、民事再生法上、再生計画案可決の要件の一つである頭数要件（民

　　事再生法172条の3第1項1号）を設けた趣旨は、「少額債権者保護」に

　　あり、債権者に再生債務者あるいは利害関係の異なる他の再生債権者との交

　　渉力を与える趣旨である。しかしながら、上記のとおり、ＳＰＣ10社及び

　　ＪＩＰは、再生債務者と同じグループ内の会社であって、ＬＢＨＩの方針に

　　従って議決権を行使するのみであって、個々の再生債権者として尊重される

　　べき固有の判断をする主体とは言い難い。ＳＰＣ10社及びＪＩＰには、本

　　件再生手続において外部債権者と同列に扱うだけの要保護性はなく、ＬＢＨ

　　Ｉと実質的には同一の存在として、これらの再生債権は劣後化されなければ

　　ならず、議決権行使が認められてはならない（松下教授意見書）。

3　他のＬＢグループに属する債権者の再生債権の取扱い

　　　リーマン・ブラザーズ・リアル・エステート株式会社も再生債務者に対して

　　再生債権38億円を有していることとされているが、間接的にはＬＢＨＩを親

　　会社とし、ＬＢＨＩに支配された会社であるから、これについても、劣後化さ

　　れるべきであり、議決権行使を認めてはならない。

第7　ＬＢＨＩ及びＬＢＡＨの主張に対する反論

1　ＬＢＡＨ及びＬＢＨＩの主張

　　ＬＢＨＩ及びＬＢＡＨは、平成２１年５月２２日付け「上申書」において、再生債権者新生銀行が提出した再生計画案は付議されるべきでないと主張し、その根拠として、①新生銀行は、再生債務者に対する債権についてＬＢＨＩの「保証」を得ていること、②新生銀行は、金融庁の監督の下に銀行業を営んでいる金融取引のプロであって、再生債務者に対する融資に当たっては、リスク分析を十分に行ったうえで融資を行っているはずであること、③ＬＢＨＩ及びＬＢＡＨのみならず世界各国のＬＢグループ会社のほとんどについてそれぞれの管轄裁判所において法的倒産処理手続が採られており、全世界の債権者が平等に扱われるべき事案であることを挙げている。

　　上記上申書においては、上記①から③の点に係るＬＢＨＩ及びＬＢＡＨの主張の具体的な内容は示されていないが、これらの点について、再生債権者として、現段階で可能な限りにおいて以下反論する。

2　「ＬＢＨＩの保証を得ている」との主張について

　　債権者が、倒産の局面において、主債務者からの債権回収を第一義とすること自体、倒産法も予定するところである（民事再生法８６条２項、破産法１０４条）。

　　加えて、再生債務者は、再生債権者新生銀行に対する借入れの申込みに際して、ＬＢＨＩが保証する旨を自発的に申し出て融資を求めてきたのであり、このような事情からすれば、むしろ、ＬＢＨＩは、再生債務者の債務を全額保証することで、再生債務者の無資力リスクを包括的に引き受ける旨を黙示に表示していたのである。したがって、ＬＢＨＩによる保証の事実は、ＬＢＨＩの債権の劣後化を基礎づける事実になりこそすれ、それを妨げる事情にはなりえない。融資を求めるに際して、支配会社による保証を積極的に提案しておきなが

ら、倒産の局面において保証人たる支配会社の債権の劣後化を否定しようとす
ることは、信義則上許されないというべきである。

　また、劣後化の理論は、支配会社等による従属会社の不当支配、不当搾取や
従属会社の過少資本状態等の客観的事情に基づき、いわば、支配会社等による
従属会社への貸付けを出資とみなして、外部債権者の債権よりも劣後化させる
というものであるから、外部債権者が、当該債権について、保証を得ていたと
か、物的担保を有していたかどうかは、支配会社等の債権を劣後化すべきこと
を妨げる事情とはならない。このことは、再生債務者の保証人となっていたか
らといって、ＬＢＨＩが、再生債務者を不当に経営支配・搾取し、また、過少
資本状態に陥らせ、外部債権者に再生債務者及びＬＢグループ会社の破綻リス
クを転嫁させることが正当化されるはずがないことからも当然である。

3　「リスク分析を十分に行ったうえで融資を行っているはずである」との主張
について

(1)　外部債権者のリスク分析と信義則に基づく劣後化法理とは無関係である
こと

　　ＬＢＨＩ及びＬＢＡＨは、新生銀行が再生債務者に対して貸付けを行うに
当たって、新生銀行は十分なリスク分析を行ったはずであると主張する。

　　しかしながら、新生銀行によるリスク分析行為と、本件の劣後化の根拠と
なる信義則違反を基礎付ける不当経営支配・不当搾取・過少資本とは、何の
関係もない。

　　すなわち、信義則に基づく劣後化の法理は、支配会社と従属会社との間に
過少資本、不当経営・搾取といった客観的事情があることをもって、従属会
社の倒産の局面において、従属会社の外部債権者の保護のために、内部者で
ある支配会社の債権を劣後的に扱うべきとする理論である。したがって、外
部債権者が従属会社への貸付けにあたって如何なるリスク分析を行って如
何なる事実を知り、又は知り得たかという主観的な事情は、劣後化の要否と

全く関係がない。内部者である「支配会社」と「従属会社の外部債権者」と
の間には、従属会社に対する支配力や従属会社のリスク分析のための情報量
等の点において圧倒的な差異があり、そのような構造的な不衡平こそが支配
会社の債権の劣後化の必要性を基礎づける本質的な要素なのであって、上記
のような外部債権者の主観的事情は、このような構造的な不衡平に影響を与
え得る要素ではないからである。

　過少資本の点に着目してさらに敷衍すれば、支配会社の債権の劣後化とは、
いわば、内部者である支配会社等による従属会社への貸付けを出資とみなし
て、外部債権者の債権よりも劣後化させるというものである。換言すれば、
「支配会社」と「従属会社の外部債権者」の関係を、「株主」と「債権者」
の関係とみなすべきという理論である。「株主」と「債権者」の関係におい
て、「債権者」が債権の発生に当たって如何なるリスク分析を行って如何な
る事実を知り、又は知り得たかということが「倒産の局面において『株主』
は『債権者』に劣後する」という法理と無関係であることはいうまでもない。

　仮に、ＬＢＨＩ及びＬＢＡＨの主張が、過失相殺を求める趣旨の主張であ
るとしても、このような主張は当を得ないものといわざるを得ない。すなわ
ち、支配会社による外部債権者の債権侵害という不法行為の問題であれば、
被侵害者である外部債権者に要求される注意義務の程度は、過失相殺という
形で問題になろうが、内部者債権の劣後化の法理は、不法行為に基づく損害
賠償請求権の存否とは別に、信義則上、衡平の理念に基づき、内部者である
ＬＢグループ会社と外部債権者の利益調整を問題としているのであって、外
部債権者の認識や金融債権者であるという属性を問題にすることは、誤って
いる。

(2)　外部債権者に対して再生債務者の業務の実態が開示されていなかったこ
　　と

　　更に、本件において特筆すべき事情は、これら決算書等及び債務者からの

説明では債権者において捕捉できないような仕方で、LBグループによるSFの不当支配、不当搾取、過少資本化が、継続的かつ組織的に行われていたということである。

新生銀行から再生債務者への貸付けに際しても、リスク分析に必要な情報が十分に提供されたとは到底いえない状況にあった。すなわち、再生債務者からは、平成12（2000）年11月期から同14（2002）年11月期までの3期分の決算書（営業報告書、貸借対照表、損益計算書、利益処分案、附属明細書をいう。以下同じ。甲13）が開示されたのみで、貸付金、大口貸付金明細、貸付金の状況等について開示を求めたにもかかわらず、開示をされなかった（甲44）。

新生銀行は、貸付けに当たって受けていた説明内容から、貸借対照表の「営業貸付金」とは、不動産ファイナンス業に関するものと理解しており、再生債務者が、不動産ファイナンス等の本業による貸付け以外にも、LBFJ等のLBグループ関連会社に対し、グループ内金融取引としての貸付債権を有していること、しかもそれが多額に上ることは、勘定科目明細を入手できていなかったことから当然認識できなかった。なお、当該借主であるLBグループ関連SPCの多くにおいては、貸借対照表上「関係会社借入金」と表示しており（甲18、甲20、甲21ないし甲23など）、LBグループからの借入れであることが明示されているのである。

また、当然のことながら、LBグループ金融子会社としての借入れ・貸付け行為に関しては、再生債務者による自立的な判断権は一切存在せず、取締役会における承認さえ無く、全てLBJないしLBグループの財務部（Treasury Department）が判断していたこと、すなわち、再生債務者はガバナンス不在であったことが、米倉氏の事情聴取により明らかになったものの、かかる事実についても、認識し得なかった。

本来、負債基準に基づき、会社法上の大会社に相当する再生債務者は、内

部統制体制構築義務として、「当該株式会社並びにその親会社及び子会社か
ら成る企業集団における業務の適正を確保するための体制」を整備しなけれ
ばならない。当初貸付け時において、新生銀行が再生債務者から取得した決
算書（平成１５（２００３）年１１月３０日期）上、負債総額は１４００億
円超であり（甲１３の３）、会社法上の大会社にあたることは明らかである
から、新生銀行としては、当然に上記内部統制が構築されている会社に対し
て融資すると考えるのが自然であり、もしこれと異なる事情がある場合には、
借主となろうとする再生債務者側には、内部統制不在を告知しなければなら
ないはずである。

　　このように再生債務者は、新生銀行が捕捉できないところで、ＬＢグルー
プ関連ＳＰＣへの金融取引としての貸付けが行われていたのであるが、当該
貸付けは、多額であるのみならず、清算残高が著しく低額である。例えば、
ＬＢＦＪについては、本件再生手続開始決定時帳簿残高が４７４億２２８２
万円であるのに対し、清算残高は６５億９６９４万円、リベルタス住宅ロー
ン株式会社については、本件再生手続開始決定時帳簿残高が３６９億４８０
６万円であるのに対し清算残高は１４７億１６４９万円、エル・ビー・シー
有限会社については、本件再生手続開始決定時帳簿残高が１７０億５４３９
万円であるのに対し清算残高は１１億６８２２万円、ヨセミテについては、
本件再生手続開始時帳簿残高が５０億５８９５万円であるのに対し清算残
高は１億０１５９万円等に過ぎないのである（財産価額評定書）。

4　「全世界の債権者が平等に扱われるべき」との主張について

　　ＬＢＨＩ及びＬＢＡＨは、自らも破綻しており、ＬＢＨＩ及びＬＢＡＨの背
後には多数の債権者がいるから、本件においては、世界各国のＬＢグループ会
社のほとんどについてそれぞれの管轄裁判所において法的倒産処理手続が採
られており、全世界の債権者が平等に扱われるべきであると主張する。

(1)　リーマン・ブラザーズＵＫの適切な対応

　ＬＢＨＩ及びＬＢＡＨのいう「全世界の債権者が平等に扱われるべき」との主張の趣旨が明らかでないが、全世界の債権者は、それぞれＬＢグループ各社を主債務者として債権を有している以上、主債務者の倒産処理の局面における債権者相互間の利害調整は、まず、主債務者の属する国の倒産手続に則り、各債権者の有する債権の属性に応じて細やかに図られるべきである。

　すなわち、ＬＢＨＩは、周知のとおり、昨年９月１５日以降、米国のニューヨーク南地区連邦破産裁判所において倒産手続（チャプター・イレブン）に入っているが、平成２１（２００９）年年５月２６日、ＬＢＨＩは、同破産裁判所に対して、越境倒産処理にかかる協定（Ｃｒｏｓｓ　Ｂｏｒｄｅｒ　Ｉｎｓｏｌｖｅｎｃｙ　Ｐｒｏｔｏｃｏｌ．以下「本件協定」という。甲４２別紙Ｂ）の承認を求める申立てを行った。本件協定は、法的拘束力はなく、これに従う法的義務は無いとされているものの、関係会社間の債権債務処理について、会計記録を遡って検討することに費用・時間を費やすべきではないので、関係会社間で共通の財務会計記録セットに合意し、一定の場合を除いて、これに疎明力を認めることなどを内容とするものであって（申立書１１頁、本件協定８頁）、このようなＬＢＨＩ主導による国際的なＬＢグループの統一的倒産処理の仕組みは、結局のところ、ＬＢグループ内の債権債務関係については的確な証拠がないにもかかわらず、ＬＢＨＩの利益を確保するために、ＬＢＨＩが、自己に有利なように他のＬＢグループ関係会社に対して支配力を行使し、適正な調査なくその債権債務関係を認めさせようとするものである。

　そして、これに対して、リーマン・ブラザーズＵＫ（英国）の清算人は、「（欧州・英国の倒産手続は）各国の現地ルールと各法人のそれぞれの債権者の利益に従って規律される」と述べて、本件協定への拒絶の姿勢を示したと報じられている（リーマン・ブラザーズＵＫの欧州財団は、概ね６３００億ドルとされるＬＢＨＩ財団中、約３分の１を占めるとされている。甲４３）。

　　これは、新生銀行がこれまで繰り返し主張している外部債権者保護の必要性を、グループ外債権者を有する他のＬＢグループの清算人等も共有していることを端的に示すものである。

(2)　支配会社が倒産していることの意味

　　支配会社の債権の劣後化とは、前記のとおり、支配会社の従属会社に対する債権を、株式に基づく残余財産分配請求権と同様の弁済順位として扱うことが求められるという理論であり、権利の客観的な属性に由来する理論である。したがって、仮に、支配会社も倒産している場合には倒産債権の劣後化は適用されないとすると、従属会社の債権者は、支配会社の倒産という当該債権者とは無関係の事情により、劣後化による保護が受けられなくなるという不合理な事態が生ずる。また、支配会社の債権者は、従属会社に対する債権が従属会社の倒産時には劣後化される債権であることを前提に、そのような支配会社財産を責任財産として引き当てているのであるから、倒産債権の劣後化を通じて支配会社の債権者が不測の不利益を受けるということもない。

　　以上から、支配会社も倒産しているという事情は、当該支配会社の倒産債権の劣後化を妨げることはないのである（松下教授意見書）。


第8　結び

　　以上のとおり、本件において、ＬＢグループは、再生債務者を過少資本状態に陥らせたまま、前記のとおり、再生債務者を不当に経営支配し、多額の利益移転を行うと共に損失の引受強制をさせることにより不当に搾取し、これにより外部債権者の責任財産を毀損していた。

　　そして、ＬＢＨＩによるチャプターイレブン適用申請により、グループ内の損失分担のリスクが、現実のものとなってしまったものであるが、かかる再生債務者の破綻の原因は、決して、実態があり、かつ、外部債権者が信用力の前

提としていた、再生債務者の本業である不良債権ビジネスが原因ではなく、Ｌ
Ｂグループ内の金融子会社という側面に基づくものである。

　支配会社であるＬＢＨＩが、従属会社である再生債務者の事業のリスクを合
理的な範囲で引き受けていないにもかかわらず、逆に言えば、リスクを外部債
権者に移転させているにもかかわらず、好況の際は、支配会社として再生債務
者の利益を独占しながら、窮境又は破綻に際しては、支配会社としての責任を
極めて限定された範囲でしか負担せずに、破綻によるリスク及びこれによる損
害の負担を免れて、一債権者として外部債権者と同様の取扱いを求めることは、
民事再生法における公正・衡平の理念に照らし、信義則に違反するものである
ことは明らかである。

　また、本件において、再生債務者は、ＬＢグループ内からの巨額の借入れに
ついては、ＬＢＪ財務部ないしＬＢＨＩの指示に基づいて決せられており、再
生債務者の自立的判断はなされておらず、取締役会決議も欠いているのである
から、再生債務者は、公平誠実義務に基づいて、認めない旨の認否をする義務
があったにもかかわらず、漫然とＬＢグループ会社による届出債権を認めてお
り、外部債権者保護の観点から、このような違法な認否を事後的に救済する必
要がある。

　したがって、再生債務者を、グループ内金融子会社として意のままに扱って
いた、再生債務者の破綻に責任を負うべき、ＬＢグループに属する会社につい
ては、民事再生法１５５条１項ただし書ないし信義則に基づき、これらの再生
債権を劣後化しなければならないことは明らかであり、ＬＢグループに属する
会社の債権をすべて劣後化させなければ、民事再生法１６９条１項３号、１７
４条２項１号及び４号に反し、付議されるべきではなく、また、再生計画案の
不認可事由となるというべきである。

以　上

（別紙）

1　借入金と貸付債権等の連動関係

2　サンライズファイナンスの資金流出の内訳

3　営業貸付先（ＬＢＦＪ）財務分析

4　サンライズファイナンス財務分析表



【別紙　1】

【別紙　2】



サンライズファイナンスの資金流出の内訳（LBグループvs外部債権者）

凡例：
- 外部借入金利息
- 匿名組合利益分配
- 利益配当＋中間配当
- 人件費＋業務委託費＋支払報酬
- LBグループ借入金利息

1. 上表のうち、外部借入金利息以外の部分は、すべてLBグループに対する資金流出である。

2. 2006、11期までは、利益配当等（利益配当・中間配当・匿名配当・匿名組合利益分配）が支払われていたが、2006年11期後は利益配当等は支払われていない。

3. 2003、11期および2004.11期の資金流出の中には、（匿名組合契約に基づく）利益分配金が、各々、50億、119億円含まれている。かかる損益分配金は、営業外損益項目の下に表示されており、その内容および分配金が不明であることから、利益配当・中間配当と同様、リーマン・グループに対して流出したものと仮定して、同カテゴリーに含めて表示した。

4. 借入金利息のうち、LBグループ借入金利息については、期首と期末の平均借入金残高に対して、1週間LIBORの加重平均の金利を乗じることにより、借入金利息の概算値を算出した。なお、民事再生申立審査資料（甲8号証）を参照して、LBグループ借入金の金利にはスプレッド（金利差）を上乗せしていない。

5. 借入金利息のうち、外部借入金利息については、PLLの支払利息から上記のLBグループ借入金利息を控除することにより算出した。

営業貸付先（LBFJ）財務分析 ＜LBFJを巡る債権・債務相反状況＞
（単位：億円）
関係会社未収入金

LBFI -関係会社借入金

LBFI- 関係会社未収入金

【別紙　4】

# サンライズファイナンス 財務分析表

(単位：億円)

| | | 第6期 H15.11.30 | 第7期 H16.11.30 | 第8期 H17.11.30 | 第9期 H18.11.30 | 第10期 H19.6.30 | 第11期 H19.11.30 | 第12期中 H20.5.31 |
|---|---|---|---|---|---|---|---|---|
| 現金預金 | | 43 | 10 | 8 | 9 | 12 | 9 | 71 |
| 有価証券 | | 0 | 0 | 8 | 0 | 0 | 0 | 240 |
| 購入貸付債権 | | 926 | 414 | 474 | 806 | 1,099 | 1,567 | 1,576 |
| 営業貸付金 | | | | | | | | |
| 貸倒引当金 | | -4 | -5 | -5 | -15 | -36 | -25 | -28 |
| 匿名組合出資金 | | | | | | | | |
| その他資産 | | | 13 | 10 | 14 | 29 | 22 | 31 |
| | 資産合計 | 1,417 | 1,714 | 2,565 | 3,685 | 5,778 | 3,379 | 3,671 |
| LBグループ内借入金 | | 543 | 446 | 1,418 | 2,492 | 4,788 | 2,283 | 2,712 |
| 　LBAH | | 0 | 0 | 996 | 2,492 | 4,788 | 2,283 | 2,712 |
| 　LBHI | | 544 | 446 | 422 | 0 | | | |
| 外部借入金 | | 700 | 1,039 | 1,013 | 1,065 | 666 | 900 | 840 |
| 　新生銀行 | | 0 | 100 | 175 | 175 | 175 | 300 | 250 |
| 　三菱東京UFJ | | 100 | 150 | 200 | 200 | 200 | 200 | 200 |
| 　みずほコーポレート | | 0 | 0 | 50 | 100 | 100 | 100 | 100 |
| 　日本生命 | | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| 　りそな | | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| 　インテーザ・サンパオロ | | 0 | 0 | 40 | 40 | 40 | 40 | 40 |
| 　三井住友 | | 50 | 50 | 100 | 100 | 100 | 100 | 0 |
| 　三菱UFJ信託 | | 0 | 200 | 200 | 200 | 0 | 0 | 0 |
| 　住友信託 | | 300 | 300 | 0 | 0 | 0 | 0 | 0 |
| 　その他 | | 0 | 19 | 0 | 0 | 0 | 0 | 0 |
| その他負債 | | 161 | 187 | 97 | 114 | 107 | 82 | 87 |
| | 負債合計 | 1,404 | 1,702 | 2,530 | 3,671 | 5,760 | 3,355 | 3,639 |
| 資本金 | | 0.1 | 0.1 | 0.1 | 0.1 | 5 | 5 | 5 |
| 利益剰余金 | | 13 | 12 | 34 | 13 | 12 | 18 | 27 |
| | 資本合計 | 13 | 12 | 34 | 13 | 17 | 23 | 32 |

| | H14.12.1 H15.11.30 (12ヶ月) | H15.12.1 H16.11.30 (12ヶ月) | H16.12.1 H17.11.30 (12ヶ月) | H17.12.1 H18.11.30 (12ヶ月) | H18.12.1 H19.6.30 (7ヶ月) | H19.7.1 H19.11.30 (5ヶ月) | H19.12.1 H20.5.31 (6ヶ月) |
|---|---|---|---|---|---|---|---|
| 購入貸付債権投資損益(*1) | 53 | 108 | 46 | 49 | 27 | 13 | 2 |
| 営業貸付金利息 | 19 | 19 | 14 | 8 | 16 | 18 | 14 |
| 匿名組合出資契約に基づく損益分配 | 3 | 25 | 22 | 32 | 22 | 21 | 34 |
| 支払利息 | 3 | 4 | 5 | 9 | 18 | 22 | 20 |
| 　LBグループ借入金利息 | 0 | | | 3 | 12 | 9 | 8 |
| 　外部借入金利息 | | | | | | | |
| 　1週間LIBOR加重平均(LBグループ) | | | 0.0383007 | 0.1810242 | 0.55532 | 0.6390349 | 0.62480 |
| 販売費一般管理費 | | | | | | | |
| 　人件費 | | | | 18 | 12 | 4 | |
| 　業務委託費 | | 14 | | 2 | | 15 | |
| 　支払報酬 | | | 4 | | | | |
| 匿名組合契約に基づく利益分配 | 50 | 119 | | | | | |
| 利益配当 | | | | | | | |
| 中間配当 | | | | | | | |

(*1)購入貸付債権回収高－購入貸付債権回収原価－購入貸付債権関連費用