JONES DAY
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

JONES DAY
Simon D. Powell
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
```
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

```
------------------------------------------------------------------x
```

**SECOND INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | Lehman Brothers Holdings Inc. and its affiliated debtors |
| Date of Retention Order: | February 25, 2009 (effective *nunc pro tunc* to the Engagement Dates, as defined in the Retention Application (as such term is defined below)) |

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Date of First Supplemental Retention Order: | May 21, 2009 (effective *nunc pro tunc* to the Engagement Dates, as defined in the First Supplemental Retention Application (as such term is defined below)) |
| Date of Second Supplemental Retention Order: | July 23, 2009 (effective *nunc pro tunc* to the Engagement Dates, as defined in the Second Supplemental Retention Application (as such term is defined below)) |
| Period for Which Compensation and Reimbursement are Sought | From February 1, 2009 to May 31, 2009 |
| Amount of Professional Fees Sought as Actual, Reasonable, and Necessary: | $4,119,794.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $130,667.42 |
| Total Amount Sought: | $4,250,461.42 |

This is an/a:      X Interim _____ Final Application.

| | |
|---|---|
| Total Amount Received for this Application: | $3,063,818.07 |
| Total Amount Received for All Prior Applications: | $782,820.48 |
| Aggregate Amount Paid to Date: | $3,846,638.55 |

**Total Compensation and Expenses**
**Previously Requested and Awarded:**

| Dated | Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees[1] | Approved Expenses |
|---|---|---|---|---|---|---|
| 04/09/09 | 04/09/09 | 09/18/08 – 01/31/09 | $1,258,056.00 | $10,425.76 | $1,132,250.40 | $10,425.76 |

---

[1] Ten percent (10%) of such fee amount ($125,805.60), although approved by the Court, continues to be held by the Debtors, pending the entry of an order of the Court authorizing the release of such holdback pursuant to the recommendation of the Fee Committee (as defined below).

## COMPENSATION PERIOD

## FEBRUARY 1, 2009 THROUGH MAY 31, 2009

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|
| **Partners** | | | | |
| A S WARTER SISITSKY | 1997 | 600 | 19.50 | 11,700.00 |
| B MOK | 1983 | 800 | 0.50 | 400.00 |
| C KIM | 1989 | 850 | 157.20 | 133,620.00 |
| C J AHERN | 1992 | 625 | 282.20 | 176,375.00 |
| C P LIU | 1996 | 425 | 80.60 | 34,255.00 |
| D L CARDEN | 1976 | 900 | 173.30 | 155,970.00 |
| D NEUVILLE | 1986 | 800 | 13.10 | 10,480.00 |
| E J O'CONNELL | 1986 | 775 | 5.30 | 4,107.50 |
| E W SEDLAK | 1984 | 640 | 270.40 | 173,056.00 |
| G S ARDEN | 1986 | 775 | 68.20 | 52,855.00 |
| J MADDOX | 1991 | 800 | 0.60 | 480.00 |
| J RUE WITTSTEIN | 1985 | 725 | 1.00 | 725.00 |
| J W TAMBE | 1992 | 775 | 102.00 | 79,050.00 |
| K U | 1991 | 700 | 2.50 | 1,750.00 |
| M K SISITSKY | 1971 | 800 | 43.10 | 34,480.00 |
| M. BOERSCH | 1986 | 725 | 0.40 | 290.00 |
| P J BENVENUTTI | 1974 | 775 | 379.50 | 294,112.50 |
| R GROSS | 1989 | 775 | 1.20 | 930.00 |
| R SATO | 1992 | 590 | 94.10 | 55,519.00 |
| R W GAFFEY | 1982 | 800 | 291.20 | 232,960.00 |
| S D POWELL | 1989 | 800 | 270.90 | 216,720.00 |
| S SOZIO | 1983 | 675 | 1.00 | 675.00 |
| W E BRYSON | 1984 | 575 | 86.10 | 49,507.50 |
| W J HINE | 1996 | 675 | 156.70 | 105,772.50 |
| Y MORI | 1993 | 590 | 14.80 | 8,732.00 |
| **Partners Total:** | | | | **1,834,522.00** |
| | | | | |
| **Counsel** | | | | |
| P.J. CROSBY IV | 1984 | 565 | 401.60 | 226,904.00 |
| S FRIEDMAN | 1998 | 600 | 0.30 | 180.00 |
| **Counsel Total:** | | | | **227,084.00** |
| | | | | |
| **Of Counsel** | | | | |
| M J LAUB | 1991 | 625 | 2.80 | 1,750.00 |
| M S BERGMAN | 1989 | 575 | 22.20 | 12,765.00 |
| M TAKAHASHI | 1989 | 580 | 4.20 | 2,436.00 |
| S C LAM | 1994 | 550 | 62.20 | 34,210.00 |
| S W FLEMING | 1994 | 550 | 148.60 | 81,730.00 |
| W POPO | 1999 | 500 | 9.50 | 4,750.00 |

HKI-226084v1

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|
| **Of Counsel Total:** | | | | 137,641.00 |
| | | | | |
| **Associates** | | | | |
| A BLOOM | 2009 | 315 | 10.70 | 3,370.50 |
| A CHIU | 2002 | 400 | 7.20 | 2,880.00 |
| A K MISHRA | 2005 | 250 | 29.00 | 7,250.00 |
| A.M. JUREWICZ | 2007 | 250 | 6.30 | 1,575.00 |
| B BURNELL | 2002 | 450 | 107.80 | 48,510.00 |
| B CRAWFORD | 2009 | 315 | 155.30 | 48,919.50 |
| B ROSENBLUM | 2006 | 450 | 173.10 | 77,895.00 |
| C.C EGAN | 2008 | 325 | 89.40 | 29,055.00 |
| C CHEUNG | 2003 | 450 | 7.50 | 3,375.00 |
| C SEETOO | 2007 | 200 | 32.90 | 6,580.00 |
| C MOK | 2007 | 325 | 3.20 | 1,040.00 |
| C WILLMOTT | 2005 | 375 | 0.50 | 187.50 |
| D ASHOK | 2000 | 300 | 5.60 | 1,680.00 |
| D DOBRYGOWSKI | 2007 | 350 | 73.20 | 25,620.00 |
| D E SCANLON | 2002 | 525 | 13.80 | 7,245.00 |
| E J MARSHBAUM | 2008 | 225 | 7.30 | 1,642.50 |
| G E SPENCER | 2008 | 350 | 254.60 | 89,110.00 |
| H E MILLS | 2009 | 225 | 20.20 | 4,545.00 |
| H YOSHIOKA | 2007 | 280 | 14.60 | 4,088.00 |
| J BLOOMENTHAL | 2004 | 410 | 21.40 | 8,774.00 |
| J L DEL MEDICO | 2007 | 425 | 248.40 | 105,570.00 |
| J LIN | 1999 | 450 | 43.50 | 19,575.00 |
| J O'NEIL | 2007 | 400 | 0.50 | 200.00 |
| K A CARRERO | 2004 | 475 | 256.30 | 121,742.50 |
| K PHANG | 2006 | 325 | 2.20 | 715.00 |
| L CHEN | 2005 | 250 | 1.00 | 250.00 |
| L Y LIU | 2000 | 375 | 3.00 | 1,125.00 |
| M ITO | 2006 | 300 | 313.00 | 93,900.00 |
| M M BECK | 2008 | 400 | 13.60 | 5,440.00 |
| M M POULOS | 2006 | 375 | 44.80 | 16,800.00 |
| M NISHI | 1997 | 530 | 180.30 | 95,559.00 |
| M ONOGI | 2001 | 390 | 73.50 | 28,665.00 |
| M W LO | 1997 | 350 | 183.60 | 64,260.00 |
| M ZHU | 2005 | 200 | 0.50 | 100.00 |
| N ROTH | 2004 | 450 | 1.00 | 450.00 |
| O W THOMAS | 2009 | 225 | 171.60 | 38,610.00 |
| P B GREEN | 2009 | 315 | 110.00 | 34,650.00 |
| P T BRABANT | 2004 | 325 | 157.50 | 51,187.50 |
| P WILKINSON | 2007 | 430 | 109.70 | 47,171.00 |
| R LEUNG | 1995 | 475 | 192.40 | 91,390.00 |
| R S BARR | 2004 | 525 | 25.10 | 13,177.50 |
| S DUTTA | 2006 | 200 | 28.20 | 5,640.00 |

HKI-226084v1

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|------|------|------|---------------------------|--------------------------|
| S E LIEBER | 2003 | 475 | 145.50 | 69,112.50 |
| S S GOKHALE | 2008 | 175 | 15.70 | 2,747.50 |
| S Y LAM | 1998 | 500 | 12.20 | 6,100.00 |
| T FUNO | 2008 | 270 | 326.60 | 88,182.00 |
| T V SCHAFFER | 2001 | 550 | 68.20 | 37,510.00 |
| Y TAKATAMA | 2007 | 280 | 321.00 | 89,880.00 |
| Y Y HUANG | 2000 | 225 | 74.60 | 16,785.00 |
| **Associates Total:** | | | | **1,519,836.50** |
| | | | | |
| **Senior Staff Attorneys** | | | | |
| J LEE | 1985 | 550 | 42.00 | 23,100.00 |
| **Senior Staff Attorneys Total:** | | | | **23,100.00** |
| | | | | |
| **Staff Attorneys** | | | | |
| C CHIU | 2006 | 200 | 2.80 | 560.00 |
| E KAO | 2007 | 190 | 2.00 | 380.00 |
| L C FISCHER | 1996 | 225 | 2.20 | 495.00 |
| **Staff Attorneys Total:** | | | | **1,435.00** |
| | | | | |
| **Paraprofessionals[2]** | | | | |
| A A DEBRAH-DWAMENA | N/A | 175 | 13.50 | 2,362.50 |
| A YANG | N/A | 151.5[3] | 230.75 | 34,967.50 |
| B STONE | N/A | 275 | 147.90 | 40,672.50 |
| C P MA | N/A | 250 | 8.00 | 2,000.00 |
| C T RATHBONE | N/A | 240 | 51.50 | 12,360.00 |
| D K KAN | N/A | 275 | 408.90 | 112,447.50 |
| D L LEVINE | N/A | 175 | 3.40 | 595.00 |
| D M CHERENCE | N/A | 250 | 4.50 | 1,125.00 |
| D M HIRTZEL | N/A | 275 | 4.80 | 1,320.00 |
| E D MASUHR | N/A | 250 | 114.00 | 28,500.00 |
| E LAM | N/A | 225 | 1.80 | 405.00 |
| E SHELSTON | N/A | 110 | 2.50 | 275.00 |
| H NAKAO | N/A | 230 | 3.60 | 828.00 |
| I LAI | N/A | 250 | 0.50 | 125.00 |
| J CHU | N/A | 320 | 47.30 | 15,136.00 |
| J L JACKSON | N/A | 250 | 11.80 | 2,950.00 |
| J L PHILLIPS | N/A | 250 | 4.90 | 1,225.00 |
| L BURNS | N/A | 275 | 88.30 | 24,282.50 |

---

[2] "Paraprofessionals" include paralegals, trainee solicitors, translators and judicial scriveners.

[3] $151.5 is the weighted average rate of A Yang for the Compensation Period – A Yang's rate was $120 for February 2009 and $170 from March to May 2009.

HKI-226084v1

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|
| O LIN | N/A | 200 | 1.50 | 300.00 |
| R LOK | N/A | 170 | 50.90 | 8,653.00 |
| R KIMURA | N/A | 230 | 180.50 | 41,515.00 |
| R SHINOZAKI | N/A | 210 | 23.00 | 4,830.00 |
| S ISHIWATA | N/A | 110 | 11.90 | 1,309.00 |
| S WONG | N/A | 250 | 6.20 | 1,550.00 |
| T E HALSCH | N/A | 175 | 6.80 | 1,190.00 |
| T NODA | N/A | 230 | 0.50 | 115.00 |
| V JI | N/A | 275 | 2.00 | 550.00 |
| Y ISHIHARA | N/A | 210 | 164.70 | 34,587.00 |
| **Paraprofessionals Total:** | | | | **376,175.50** |
| **GRAND TOTAL** | | | | **4,119,794.00** |

JONES DAY
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

JONES DAY
Simon D. Powell
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
**In re**                          :         **Chapter 11 Case No.**
                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (JMP)**
                               :
                **Debtors.**         :        **(Jointly Administered)**
                               :
-------------------------------------------------------------------x

**SECOND INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Jones Day, special counsel for Lehman Brothers Holdings Inc. and its

affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"),

submits this second interim application (the "Application") seeking (a) allowance of

compensation for professional services rendered by Jones Day to the Debtors in the amount

of $4,119,794.00, and (b) reimbursement of actual and necessary charges and disbursements

incurred by Jones Day in the rendition of required professional services on behalf of the

- 7 -

Debtors in the amount of $130,667.42, in each case for the period from February 1, 2009

through May 31, 2009 (the "Compensation Period") pursuant to section 330(a) of title 11 of

the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), General Order M-151,

Amended Guidelines for Fees and Disbursements for Professionals in Southern District of

New York Bankruptcy Cases (the "Local Guidelines"), and the Third Amended Order

Pursuant to sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(b)

Establishing Procedures for Interim Monthly Compensation of Professionals, entered in these

cases on June 25, 2009 (the "Interim Compensation Order" and, collectively with the UST

Guidelines and the Local Guidelines, the "Guidelines"). In support of this Application, Jones

Day respectfully represents as follows.

### Background

1.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and the

other Debtors commenced with this Court voluntary cases under chapter 11 of the

Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

- 8 -

3.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate. On January 19, 2009, the U.S. Trustee appointed an examiner (the "Examiner") and on January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

4.     On May 26, 2009, the Court appointed a fee committee (the "Fee Committee") and approved a protocol to govern the review and payment of fees and reimbursement of expenses of professionals retained by the Debtors' estates (the "Fee Protocol"). The Fee Committee was authorized to perform duties described in the Fee Protocol, including, among others, implementing procedures to effectively monitor the fees of the Retained Professionals (as defined in the Fee Protocol) and reducing inefficiency by establishing measures to avoid duplication of effort, overstaffing, the rendering of unnecessary services, and the incurrence of excessive or inappropriate expenses by Retained Professionals.

5.     On May 26, 2009, the U.S. Trustee filed the Fee Committee Report Pertaining to the First Interim Fee Applications of All Retained Professionals (Docket No. 4655) (the "Fee Committee Report") on behalf of the Fee Committee. The Fee Committee Report included, among other things, the Fee Committee's recommendation that the 20% fee holdback implemented pursuant to the Interim Compensation Order be reduced to 10% with respect to interim fee applications of all Retained Professionals (generally, the "Prior Holdbacks" and, as to Jones Day, the "Prior Holdback") (a) pending resolution of the fee issues raised by the Fee Committee in the "Individual Summary Sheets" and (b) "due to the early stages of these proceedings and is designed to protect against unanticipated future events." Further, the Fee Committee Report disclosed that during the following 120 days, the Fee Committee would meet with the Retained Professionals in order to resolve the issues

- 9 -

raised in the "Individual Summary Sheets" and, to the extent that such issues were resolved, the Fee Committee would recommend the release of the Prior Holdbacks in its report with respect to the second interim fee applications.

### Jurisdiction and Venue

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C.  § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §  § 1408 and 1409.

### Relief Requested

7.      Pursuant to this Application, Jones Day hereby seeks allowance of the following: (a) compensation for professional services rendered during the Compensation Period in the aggregate amount of $4,119,794.00; and (b) reimbursement of expenses incurred in connection with such services in the aggregate amount of $130,667.42.  Further, Jones Day requests authority to omit any information or description contained in Exhibit "B" and Exhibit "D" (as described in paragraph 10 below) hereto, to the extent that any such information or description is confidential or privileged.

8.      During the Compensation Period, Jones Day attorneys and paraprofessionals expended a total of 8,968.85 hours for which compensation is requested.

9.      Prefixed to this Application is the cover sheet required by the UST Guidelines, which includes a schedule setting forth the names of all Jones Day professionals and paraprofessionals who have performed services for which compensation is sought, the person's position in the firm, and the year in which each attorney was first admitted to practice law.  In addition, the schedule sets forth for each person (a) the hourly rate(s) during the Compensation Period, (b) the total hours billed for which compensation is sought, and (c) the total compensation for such hours.

HKI-226084v1

10.     Annexed hereto as Exhibit "A" is a summary of the services rendered by Jones Day for which compensation is sought by project category. Annexed hereto as Exhibit "B" is a listing of the detailed time entries of Jones Day professionals and paraprofessionals, by project category, with respect to the compensation requested. Annexed hereto as Exhibit "C" is a summary of the types of expenses for which reimbursement is sought. Annexed hereto as Exhibit "D" is a detailed itemization of such expenses. Annexed hereto as Exhibit "E" is a proposed form of order granting the Application. Annexed hereto as Exhibit "F" is the certification of Simon D. Powell with respect to the Application pursuant to the Local Guidelines.

### Jones Day's Retention and Payments Received in Accordance with the Interim Compensation Order

11.     On February 4, 2009, the Debtors filed their Application Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtor, *nunc pro tunc* to the Engagement Dates (Docket No. 2725) (the "Retention Application").

12.     On February 25, 2009, the Court entered the Amended Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 2925) (the "Retention Order").

13.     On May 8, 2009, the Debtors filed their Supplement to the Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Expand the Scope of Jones Day's Retention as Special Counsel, *nunc pro tunc* to the Engagement Dates (Docket No. 3525) (the "First Supplemental Retention Application").

14.    On May 21, 2009, the Court entered the Order Granting Application of the Debtors, Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, to Expand the Scope of Jones Day's Retention as Special Counsel, *nunc pro tunc* to the Engagement Dates (Docket No. 3630) (the "First Supplemental Retention Order"). Under the first Supplemental Retention Order, Jones Day's scope of retention was expanded to include representation of the Debtors in connection with (a) the examination of the negotiation and conclusion of that certain Asset Purchase Agreement, dated September 16, 2008, and certain related or potentially related transactions and events involving the Debtors and Barclays Capital Inc. ("Barclays") that occurred in and after September 2008, and (b) the examination of issues relating to derivatives trades between Debtor Lehman Brothers Special Financing Inc. and certain of the other Debtors, on the one hand, and the counterparty to such trades, AIG CDS, Inc. and/or its affiliates, on the other (collectively, the "First Additional Matters").

15.    On July 9, 2009, the Debtors filed their Second Supplemental Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 4299) (the "Second Supplemental Retention Application").

16.    On July 23, 2009, the Court entered the Order Granting Second Supplemental Application of the Debtors, Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules, to Expand the Scope of Jones Day's Retention as Special Counsel, *nunc pro tunc* to the Engagement Dates (Docket No. 4476) (the "Second Supplemental Retention Order"). Under the Second Supplemental Retention Order, Jones Day's scope of retention was expanded to include representation of the Debtors in connection with various derivatives trades between the Debtors and other

- 12 -

entities, which the Debtors' primary restructuring counsel is unable to assist with due to conflict or other reasons (collectively, the "Second Additional Matters").

17.    On June 25, 2009, the Court entered the Interim Compensation Order, which superseded the amended order dated March 13, 2009 in its entirety. Pursuant to the Interim Compensation Order, the Court established procedures for the Debtors' payment of interim compensation and reimbursement of expenses of professionals retained in these chapter 11 cases.

18.    During the Compensation Period, Jones Day has filed and served a Notice of Monthly Fee and Expense Invoice for each monthly period from February 1, 2009 through May 31, 2009 (collectively, the "Monthly Statements"). Because no objections were filed to any of the Monthly Statements, the Debtors made the following payments to Jones Day in respect of certain of the Monthly Statements, pursuant to the Interim Compensation Order:

| Periods | Fees Requested | Expenses Requested | Payment Dates | Payment Amount[4] |
|---------|----------------|--------------------|---------------|--------------------|
| February 2009[5] | $651,322.00 | $5,514.04 | May 4, 2009 | $526,571.64 |
|  | $224,127.50 | $1,534.76 | June 3, 2009 | $180,836.76 |
| March 2009[6] | $417,474.00 | $4,904.11 | June 3, 2009 | $338,883.31 |
|  | $108,510.00 | $56,850.62 | N/A | Unpaid |
|  | $341,859.50 | $4,163.80 | June 24, 2009 | $277,651.40 |
| April 2009[7] | $993,671.50 | $17,533.20 | June 24, 2009 | $812,470.40 |
|  | $94,800.00 | $3,216.57 | N/A | Unpaid |

---

[4] Payments were made on account of 80% fees requested and 100% of expenses.

[5] Two Monthly Statements for fees and expenses rendered by Jones Day in February 2009 were filed and served on two different dates, and, accordingly, two separate payments were received.

[6] Three Monthly Statements for fees and expenses rendered by Jones Day in March 2009 were filed and served on three different dates. While two of the sums invoiced were paid on June 3, 2009 and June 24, 2009, respectively, in accordance with the Interim Compensation Order, the sum of $165,360.62 ($108,510 on account of fees plus $56,850.62 on account of expenses) remains outstanding to date. Please also see paragraph 19 below for details of the fee and expense breakdown.

[7] Please see paragraph 20 below for details of the fee and expense breakdown.

| May 2009[7] | $1,124,949.50 | $27,444.96 | July 23, 2009 | 927,404.56 |
| | $163,080.00 | $9,505.36 | N/A | Unpaid |

19.     Of the fees and expenses requested for March 2009, $341,859.50 and $4,163.80 were, respectively, the fees and expenses attributed to the First Additional Matters. Because the First Supplemental Application was approved on May 21, 2009, Jones Day was not able to include such sums for services rendered for the First Additional Matters until it served the Monthly Statement on May 27, 2009.

20.     Of the fees requested for April and May 2009, $94,800.00 and $163,080.00 were, respectively, attributed to the Second Additional Matters, and of the expenses requested for April and May 2009, $3,216.57 and $9,505.36 were, respectively, attributed to the Second Additional Matters. Because the Second Supplemental Application was approved on July 23, 2009, Jones Day was not able to include such sums for services rendered for the Additional Matters until it served the Monthly Statement on 28 July 2009. As such, Jones Day has not yet received the payment as permitted by the Interim Compensation Order in respect of such sums.

### Summary of Services Rendered by Jones Day

21.     Below is a summary of the major activities performed during the Compensation Period by Jones Day professionals and paraprofessionals in assisting the Debtors with their chapter 11 cases and other restructuring-related activities, categorized by region. More detailed descriptions of the services rendered by Jones Day are included in the Monthly Statements. In accordance with the UST Guidelines, a summary of the hours and amounts billed during the Compensation Period by each timekeeper, as well as each timekeeper's position, hourly rate and, if applicable, the year in which each timekeeper was

- 14 -

first licensed to practice law, and their areas of expertise, is set out in the cover sheet prefixed to this Application.

22.    During the Compensation Period, Jones Day professionals and paraprofessionals assisted LBHI in relation to issues arising principally in the Asia Pacific region, Australia, Hong Kong, India, Japan, Singapore, Taiwan and the United States as a consequence of the Debtors' chapter 11 cases in the United States, including anticipated litigation, securities, insolvency, commercial, real estate and any and all other related issues as more specifically set out below. In addition, Jones Day professionals represented LBHI in litigation to recover money damages which has been pending in the U.S. Bankruptcy Court in San Francisco since 2003, involving Chapter 11 debtors Central European Industrial Development Company ("CEIDCO") and The Kontrabecki Group LP ("TKG"), and their former principal, John Kontrabecki (the "San Francisco - Kontrabecki Matter"). Jones Day professionals also represented the Debtors in connection with issues arising out of various derivatives trades between the Debtors and other entities, as well as the First Additional Matters in New York.

*Asia Pacific – 344.10 hours – US$139,968.00*

23.    During the Compensation Period, Jones Day professionals and paraprofessionals attended to numerous case administration tasks and commercial issues arising from the restructuring of various LBHI entities across the Asia Pacific region. Such tasks include compiling Monthly Statements filed with the Notice Parties (as defined in the Interim Compensation Order) and the First Interim Fee Application filed with the Court, and dealing with conflict and similar issues arising from time to time.

*Hong Kong – 553.70 hours – US$281,712.50*

24.    During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Hong Kong were primarily attributed to LBHI, LBQ

- 15 -

Hong Kong Services Limited ("LBQ"), and Lehman Real Estate Private Equity.  In February

2009, Jones Day compiled and filed with the provisional liquidators proof of debt forms and

related documents for various Lehman entities, and attended meetings of creditors and

contributories.    In addition, Jones Day's services rendered in Hong Kong during the

Compensation Period included reviewing non-disclosure agreements, advising on real estate

issues, company secretarial issues, employment and immigration issues, conducting relevant

legal research in respect of issues arising in relation to the local Hong Kong-based Lehman

entities, arranging for employment visa applications and renewals for expatriate employees

working with LBQ, translating various documents from English into Chinese and providing

*ad hoc* advice to LBHI in relation to insolvency issues arising in Hong Kong from time to

time.

*New Delhi – 80.50 hours – US$18,917.50*

        25.    During the Compensation Period, the services rendered by Jones Day

professionals in New Delhi include advising REPE Investment India Private Limited on

employment and related issues arising from the restructuring of various entities under LBHI.

*New York – 2,542.80 hours – US$1,350,056.00*

        26.    Jones Day was retained in late March 2009 as Special Counsel to

investigate whether potential claims or other remedies may exist and should be asserted,

arising from the Asset Purchase Agreement between Lehman and Barclays executed

September 16, 2008 and approved by the Court by order entered September 20, 2008.

        27.    During April and May 2009, Jones Day examined documents,

interviewed witnesses, coordinated with attorneys for the Creditors' Committee, the

Examiner and the SIPA trustee, communicated with Barclays' counsel to request pertinent

information, requested certain specific categories of documents from Barclays, conducted

legal research regarding potential claims and remedies and related issues, and began

HKI-226084v1

preparation of motion papers to seek orders from the Court requiring Barclays to produce information.

28.    Further, Jones Day was retained in April 2009 as Special Counsel to advise the Debtors concerning certain credit derivatives transactions with AIG CDS, Inc. with a significant mark-to-market value to the Debtors.  During April and May 2009, Jones Day analyzed the relevant AIG CDS Inc. transaction documents and correspondence, provided oral and written advice to the Debtors concerning interpretation of the relevant contracts and the applicability of certain safe harbors under the Bankruptcy Code and developed a strategy for the Debtors to pursue to maximize the value of those credit derivatives transactions for the benefit of the Debtors' estates.  Jones Day also briefed counsel for the Creditors' Committee on those efforts.

29.    Jones Day was retained in May 2009 as Special Counsel to advise the Debtors concerning certain derivatives and foreign exchange transactions with Prudential Global, Inc. ("Prudential Global") with a significant value to the Debtors.  During May 2009, Jones Day analyzed the Prudential Global transaction documents, provided oral and written advice to the Debtors concerning the interpretation of those contract, including specifically a cross margining and netting agreement, and developed a strategy for the Debtors to pursue to eliminate Prudential Global's purported claim against the Debtors and to seek recovery of certain property of the Debtors against which Prudential Global has asserted a right of set-off.

*People's Republic of China – 111.00 hours – US$70,663.00*

30.    During the Compensation Period, the services rendered by Jones Day professionals in China focused primarily on the disposal of LBHI's interests in the Fuhai Commercial Centre in Shanghai to LBHI's joint-venture partner on the project.  In addition to providing strategic advice on the disposition, Jones Day assisted with negotiating a sale and

- 17 -

purchase agreement and all related documentation with LBHI's joint-venture partner as well as dealing with all closing matters.

*San Francisco – 1,179.60 hours – US$640,586.50*

31.     This litigation began in 2003 as an action to recover control of two Polish entities which owned commercial property in Poland and which comprised the primary security for repayment of loans made by LBHI to CEIDCO and TKG in the late 1990's. CEIDCO and TKG filed chapter 11 cases in San Francisco in 2002 to prevent LBHI from enforcing its security rights on the loans, which were about to go into default. At that time, TKG owned 100% of both Polish entities. Mr. Kontrabecki, while acting as the manager of CEIDCO and TKG as debtors in possession, surreptitiously caused the Polish entities to issue new shares to his Polish confederate, thereby transferring control of the Polish entities beyond the reach of the U.S. bankruptcy court, and diluting TKG's ownership to a minority position. After several years of litigation invoking the contempt powers of the bankruptcy court and the imposition of coercive sanctions, Mr. Kontrabecki caused his confederate to return control of the Polish entities to an entity controlled by LBHI, and they were sold in 2006 and 2007, producing a total return to LBHI in excess of $30 million. Since 2007, LBHI has pursued the litigation to recover compensatory damages from Mr. Kontrabecki for the economic losses LBHI incurred as a result of his misconduct and the delay and additional costs it caused.

32.     Until October 2008, LBHI was represented in this litigation by Heller Ehrman LLP (and by co-counsel McKenna Long & Aldridge of Atlanta, which continues to represent LBHI). Following the dissolution of Heller Ehrman in the fall of 2008, the Heller Ehrman attorneys who had been representing LBHI joined Jones Day, and LBHI's representation in the engagement has continued at Jones Day since October 2008.

HKI-226084v1

33.     During the Compensation Period, Jones Day professionals engaged in discovery, motion practice and trial preparation in this very hotly contested matter. The discovery cut-off date was July 2, 2009. There is a tentative trial date set in late October, 2009. The start of trial could be deferred, depending on the disposition of various motions that are under submission, pending and currently set for hearing, or anticipated to be filed in the near future.

*Singapore – 17.50 hours – US$10,217.50*

34.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals include advising on issues relating to employment and corporate structures in Singapore.

*Sydney – 807.80 hours – US$365,622.50*

35.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Sydney include assisting and advising LBHI with respect to the insolvency proceedings of Lehman Brothers group companies in Australia, including Lehman Brothers Australia Limited ("LBA") and Lehman Brothers Australia Holdings Pty Limited (non-debtor subsidiaries of LBHI). Such services involved drafting and submitting proofs of debt, preparing for and attending meetings of creditors, reviewing claim documents, attending to matters relating to the Deed of Company Arrangement for LBA, conducting relevant research on debt subordination and preparing for anticipated litigation relating to an application to have the Deed of Company Arrangement set aside.

*Taiwan – 802.15 hours – US$237,739.00*

36.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Taiwan are attributed to TL I Asset Management Company Limited, TL II Asset Management Company Limited and TL III Asset Management Company Limited. Such services include advising Lehman entities with respect

- 19 -

to the disposal of assets and repayment of debts, drafting letters to banks, companies, and governmental authorities, attending to matters relating to mortgage auction ruling, loan and trust agreements, real estate sales and purchase agreement, and litigation, and translating various documents from English into Chinese and vice versa, as well as representing Lehman entities for negotiation with various third parties and changes to the corporate registrations as required.

*Thailand – 452.60 hours – US$254,326.50*

37.     The services rendered by Jones Day professionals in Thailand have been for LBHI and its subsidiaries, assisting them in dealing with LBHI real estate assets there. This has involved advising LBHI and its subsidiaries on investment and disposal strategies as well as financing issues.

38.     Jones Day has researched the financing structures for a number of LBHI's assets in Thailand, in particular reviewing the extent to which security has been granted over LBHI assets as a result of its debt obligations.

39.     In addition, Jones Day has liaised with local counsel on Thai legal issues affecting the LBHI asset portfolio in Thailand with current issues including litigation proceedings being made against LBHI subsidiaries by one of its joint-venture partners and complying with Thai laws on financing and resulting security issues as well as general bankruptcy and insolvency advice.

*Tokyo – 2077.10 hours – US$749,985.00*

40.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Tokyo were attributed to LBHI, L.B.C., which represents entities named L.B.A. Y.K., L.B.B. Y.K. and L.B.C. Y.K. and other special purpose companies, many of them dormant, and Lehman Brothers Real Estate Private Equity Group. Such services include conducting legal research on civil rehabilitation law, drafting

- 20 -

memoranda in relation to re-organization matters, preparing and filing various documents with the local court, translating various documents from Japanese into English and vice-versa, assisting LBHI and other United States-based Lehman entities in Japan in asserting claims in the Japanese Civil Rehabilitation proceedings of Lehman Brothers Japan KK, Lehman Brothers Commercial Mortgage KK and Sunrise Finance KK, advising LBHI in connection with claims which may be asserted against it relating to Lehman Brothers Japan Holdings KK, advising LBHI and REPE on labor and employment issues, organizing the corporate housekeeping of various LBHI-owned special purpose companies, and advising LBHI on operational matters associated with the winding down of operations in Japan.

## Expenses Incurred by Jones Day

41.    Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed under section 327 of the Bankruptcy Code. Accordingly, Jones Day seeks reimbursement for expenses incurred in rendering services to the Debtors during the Compensation Period. The total amount of the expenses is $130,667.42 for the Compensation Period, as detailed in the attached Exhibit "C".

42.    In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, and the Fee Protocol, Jones Day maintains the following policies with respect to expenses for which reimbursement is sought herein:

(a)    No amortization of the cost of any investment, equipment, or capital outlay is included in the expenses. In addition, for those items or services that Jones Day purchased or contracted from a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

(b)    Photocopying by Jones Day was charged at 20 cents per page. To the extent practicable, Jones Day utilized less expensive outside copying services.

- 21 -

(c)    Telecopying by Jones Day was charged to its clients at the cost of the long distance call required to send the facsimile. The firm did not impose any charge to its clients for local facsimiles, inbound facsimiles, interoffice facsimiles or facsimiles costing less than $1.00.

(d)    Meals charged to the Debtors for Jones Day personnel were associated with out of town travel, meetings with the Debtors or other parties in these chapter 11 cases, or dinner for Jones Day professionals working past 8:00 p.m.

(e)    The time pressures associated with the services rendered by Jones Day frequently required Jones Day's professionals and paraprofessionals to devote substantial amounts of time during the evenings and on weekends. Jones Day has charged the Debtors for secretarial and other staff overtime expense that is directly associated with such after-hours work and is absolutely necessary. Jones Day does not consider these to be part of its ongoing overhead expenses because they are special incremental expenses arising from the specific services being provided to the Debtors.

## The Requested Compensation Should Be Allowed

43.    Section 330 of the Bankruptcy Code provides that the Court may award a professional person employed under section 327 or 1103 of the Bankruptcy Code:

(A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Section 330(a)(3)(A) further provides the following standards for the Court's review of a fee application:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all

- 22 -

relevant factors, including--

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or
        beneficial at the time the service was rendered toward the completion
        of, a case under this title;

(D)     whether the services were performed within a reasonable amount of
        time commensurate with the complexity, importance, and nature of the
        problem, issue, or task addressed; and

(E)     whether the compensation is reasonable, based on the customary
        compensation charged by comparably skilled practitioners in cases
        other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

        44.     Jones Day respectfully submits that it has satisfied the requirements for
the allowance of the compensation and reimbursement of expenses sought herein.   The
services described above, at the time they were provided, were necessary and beneficial to the
administration of the Debtors' chapter 11 cases.   Jones Day's services were consistently
performed in a timely manner, commensurate with the complexity of the issues facing the
Debtors and the nature and importance of the problems, issues, and tasks.   Furthermore, the
compensation sought by Jones Day is reasonable because it is based on the customary
compensation charged by comparably skilled practitioners outside of bankruptcy.
Accordingly, approval of the compensation sought herein is warranted.

## Statements of Jones Day Pursuant to Bankruptcy Rule 2016(a)

        45.     Pursuant to the Interim Compensation Order and the Fee Protocol,
Jones Day has submitted the Monthly Statements to (a) the Debtors, (b) counsel to the
Debtors, Weil, Gotshal & Manges, LLP, (c) counsel to Creditors' Committee, Milbank,
Tweed, Hadley & McCloy LLP, (d) the U.S. Trustee, and (e) the Fee Committee, during the
Compensation Period with respect to the Debtors' chapter 11 cases, as follows: (a) from

- 23 -

February 1, 2009 through February 28, 2009 – fees of $875,449.50 and expenses of $7,048.80; (b) from March 1, 2009 through March 31, 2008 – fees of $867,843.50 and expenses of $65,918.53; (c) from April 1, 2009 through April 30, 2009 – fees of $1,088,471.50 and expenses of $20,749.77; and (d) from May 1, 2009 through May 31, 2009 – fees of $1,288,029.50 and expenses of $36,950.32.

46.    In total, therefore, Jones Day has submitted Monthly Statements for fees of $4,119,794.00 and expenses of $130,667.42 arising from the Compensation Period.

47.    Jones Day has received such payment from the Debtors relating to fees and expenses in the Monthly Statements on account of services provided during the Compensation Period as described in paragraph 18 above.

48.    No agreement or understanding exists between Jones Day and any third person for the sharing of compensation, except as allowed by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation between and among partners of Jones Day. All of the services for which compensation is sought in this Application were rendered at the request of, and solely on behalf of, the Debtors, and not at the request of, or on behalf of, any other person or entity.

49.    Prior to the filing of this Application, Jones Day had received no objections to any of the Monthly Statements or its monthly budgets provided under the Fee Protocol from the Debtors, the Fee Committee or any one else under the Interim Compensation Order.

### Waiver of Memorandum of Law

50.    This Application does not raise any novel issues of law. Accordingly, Jones Day respectfully requests that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted.

HKI-226084v1

### Notice

51.     Notice of this Application and its exhibits will be given to (a) the Debtors; (b) counsel to the Debtors; (c) the U.S. Trustee; (d) counsel to the Committee; and (e) the Fee Committee.  Jones Day respectfully submits that no other or further notice is required.

WHEREFORE, Jones Day respectfully requests that the Court (a) enter an order allowing interim compensation of $4,119,794.00 to Jones Day for professional services rendered as special counsel for the Debtor during the Compensation Period, plus reimbursement of actual and necessary charges and disbursements incurred in the sum of $130,667.42 in connection with Jones Day's services during the Compensation Period; (b) authorize and direct the Debtors to pay to Jones Day any and all unpaid, invoiced amounts for the Compensation Period; (c) authorize and direct the Debtors to release to Jones Day the Prior Holdback with respect to the First Interim Fee Application; and (d) grant to Jones Day such other and further relief as the Court may deem proper.

HKI-226084v1

Dated:  August 14, 2009
         New York, New York

_____/s/ Ross S. Barr_____

Ross S. Barr
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Telephone:  (222) 326 3939
Facsimile:  (212) 755 7306

Simon D. Powell
JONES DAY
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526 6895
Facsimile: (852) 2868 5871

SPECIAL COUNSEL TO THE DEBTORS
IN POSSESSION

HKI-226084v1