**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                       :          **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* :          **08-13555 (JMP)**
:
Debtors.                          :          **(Jointly Administered)**
:
---------------------------------------------------------------x

## SUMMARY STATEMENT FOR SECOND INTERIM FEE APPLICATION OF BINGHAM McCUTCHEN LLP, AS SUCCESSOR IN INTEREST TO McKEE NELSON LLP, SPECIAL COUNSEL FOR THE DEBTORS, FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

| | |
|---|---|
| **Name of Applicant:** | Bingham McCutchen LLP (as Successor in Interest to McKee Nelson LLP) |
| **Time Periods:** | February 1, 2009 through May 31, 2009 (Tax Controversy Matters)<br><br>September 15, 2008 through May 31, 2009 (Securitization and Capital Markets Matters) |
| **Role in the Case:** | McKee Nelson LLP is Retained as Special Counsel to the Debtors Under Section 327(e) of the Bankruptcy Code |
| **Current Application:** | Total Fees Requested:  $2,967,972.25<br>Total Expenses Requested:  $171,034.92 |
| **Prior Application:** | First Interim Fee Application Dated April 9, 2009 |
| **This Application is:** | __X__ Interim _____ Final |

## Professional Hours Billed During Interim Fee Period

| Professional (Partner) | Admission Date | Hours Billed | Total Compensation |
|---|---|---|---|
| Arnholz, John | 1986 | 5.00 | $4,930.00 |
| Bowers, Christopher P. | 1999 | 372.90 | $333,745.50 |
| Brockway, David H. | 1972 | 25.00 | $24,875.00 |
| Buch, Ronald L. | 1993 | 61.50 | $47,970.00 |
| Cejudo, William P. | 1989 | 0.20 | $163.00 |
| Davis, Richard L. | 2000 | 4.70 | $2,961.00 |
| Desmond, Michael | 1994 | 18.40 | $17,480.00 |
| Dillon, Sheri A. | 1999 | 295.20 | $240,588.00 |
| Eckas, Scott E. | 1990 | 3.40 | $2,720.00 |
| Gainor, Edward E. | 1992 | 2.75 | $2,433.75 |
| Gouwar, James A. | 1988 | 0.70 | $679.00 |
| Howard, Jasper A. | 1989 | 0.60 | $582.00 |
| Huffman, Gary R. | 1988 | 0.80 | $776.00 |
| Johnson, Jeffrey R. | 1993 | 101.10 | $71,868.00 |
| Katcher, Robert A. | 1978 | 0.30 | $291.00 |
| Kingsley, Darius | 1995 | 2.50 | $1,762.50 |
| Klippert, Barbara D. | 1976 | 0.80 | $692.00 |
| Leyva, Natan J. | 1991 | 240.10 | $182,476.00 |
| Madan, Rajiv | 1993 | 415.30 | $371,693.50 |
| Magee, John B. | 1972 | 14.60 | $14,527.00 |
| Morreale, Peter C. | 1994 | 1.00 | $760.00 |
| **Total:** | | **1,566.85** | **$1,323,973.25** |

| Professional (Of Counsel and Counsel) | Admission Date | Hours Billed | Total Compensation |
|---|---|---|---|
| Goldman, Gerald | 1968 | 2.60 | $2,587.00 |
| Greer, Stefanie | 2002 | 60.30 | $38,290.50 |
| Gross, Robert J. | 1998 | 21.40 | $13,943.00 |
| Sadler, Tim P. | 1975 | 28.50 | $18,382.50 |
| **Total:** | | **112.80** | **$73,203.00** |

| Professional (Associate and Staff Attorney) | Admission Date | Hours Billed | Total Compensation |
|---|---|---|---|
| Abroms, Michelle A. | 2005 | 6.70 | $3,752.00 |
| Amanti, Lena M. | 2004 | 1.10 | $682.00 |
| Bahar, Ardrelle | 2001 | 120.30 | $42,706.50 |
| Chen-Young, Claudine | 2003 | 71.60 | $42,981.50 |
| Hagan, Robert P. | 2007 | 20.80 | $8,651.00 |
| Herald, Asa J. | 2002 | 4.40 | $2,926.00 |
| Hintmann, Brooke E. | 2002 | 51.10 | $33,981.50 |
| Laughlin, Anne M. | 2008 | 196.00 | $86,240.00 |
| Leonard, Bob | 2007 | 134.70 | $59,268.00 |
| Margulies, Oren P. | 2006 | 207.10 | $105,621.00 |
| Martin, Elizabeth L. | 2004 | 2.20 | $1,364.00 |
| Mears, Veronica | 2008 | 68.10 | $29,964.00 |
| Mohan, Anand | 2008 | 44.40 | $17,770.50 |
| Muaddi, Jawad | 2008 | 17.70 | $6,372.00 |
| Murphy, Christopher | 2007 | 31.20 | $15,912.00 |
| Otero, Kevin | 2005 | 127.30 | $75,107.00 |
| Pai, Sarah | 2007 | 84.50 | $37,180.00 |
| Peppelman, David J. | 2008 | 9.10 | $4,004.00 |
| Rankin, Kiara L. | 2007 | 293.40 | $129,096.00 |
| Stults, Kevin R. | 2005 | 522.30 | $292,488.00 |
| Tatarowicz, Chris | 2009 | 53.20 | $17,556.00 |
| Tidwell, Royce | 2007 | 93.80 | $41,272.00 |
| Walsh, Suzanne M. | 2005 | 11.30 | $6,667.00 |
| Wilson, Justin T. | 2007 | 233.00 | $102,520.00 |
| Zawitz, David | 2008 | 14.50 | $5,772.50 |
| **Total:** | | **2,419.80** | **$1,169,854.50** |

| Professional (Law Clerk)[1] | Admission Date | Hours Billed | Total Compensation |
|---|---|---|---|
| Banvard, Honor | 2008 | 67.80 | $28,476.00 |
| Carroll, Tom | 2009 | 18.60 | $6,138.00 |

[1] Each individual classified in this Application as a law clerk is a legal professional who either (i) is not yet admitted to practice law in any jurisdiction, or (ii) is not yet admitted to practice law in the jurisdiction in which he or she is employed, but is admitted to practice law in one or more other jurisdictions.

| Professional (Law Clerk)[1] | Admission Date | Hours Billed | Total Compensation |
|---|---|---|---|
| Davis-Diehl, Joseph | 2008 | 12.10 | $4,560.00 |
| Janiga, Matthew | 2009 | 14.70 | $5,535.00 |
| Jaramillo, Victor | 2008 | 131.80 | $55,356.00 |
| Leyland, Jessica | 2007 | 2.80 | $1,190.50 |
| Phelan, Todd | 2008 | 6.90 | $2,725.50 |
| Speaker, Michael P. | 2003 | 1.30 | $721.50 |
| **Total:** | | **256.00** | **$104,702.50** |

| Paraprofessional (Paralegal) | Admission Date | Hours Billed | Total Compensation |
|---|---|---|---|
| Abdel-Nour, Francesca | N/A | 34.30 | $ 7,889.00 |
| Bohls, Dawn | N/A | 4.60 | $ 1,495.00 |
| Brooks Jr., Gary | N/A | 2.00 | $430.00 |
| Capato, Gina M. | N/A | 4.00 | $ 1,280.00 |
| Gilroy, Joyce | N/A | 2.00 | $470.00 |
| Harris, Susan | N/A | 67.00 | $10,050.00 |
| Hensel, Jeannie H. | N/A | 113.80 | $36,985.00 |
| Morrow, Trina | N/A | 2.00 | $650.00 |
| Owens, Angela M. | N/A | 341.40 | $87,057.00 |
| Rodriguez, Michelle | N/A | 12.60 | $3,780.00 |
| Ross, Mark | N/A | 10.80 | $3,024.00 |
| Sakason, Alexandra B. | N/A | 5.30 | $1,219.00 |
| Trevicano, Luisa | N/A | 2.50 | $637.50 |
| Whorton, Tanya | N/A | 2.00 | $650.00 |
| Zeller, Donald | N/A | 48.60 | $11,812.50 |
| **Total:** | | **652.90** | **$167,429.00** |

| Paraprofessional (Litigation Support) | Admission Date | Hours Billed | Total Compensation |
|---|---|---|---|
| Campbell, Chad W. | N/A | 239.50 | $67,060.00 |
| Currin, Alan | N/A | 198.60 | $64,545.00 |
| **Total:** | | **438.10** | **$131,605.00** |

| Professional Title | Blended Rate | Hours Billed | Total Compensation |
|---|---|---|---|
| Partner | $844.99 | 1,566.85 | $1,323,973.25 |
| Of Counsel/Counsel | $648.96 | 112.80 | $73,203.00 |
| Associate/Staff Attorney | $481.72 | 2,419.80 | $1,169,854.50 |
| Law Clerk | $405.03 | 256.00 | $104,702.50 |
| Paraprofessional - Paralegal | $256.44 | 652.90 | $167,429.00 |
| Paraprofessional - Litigation Support | $300.40 | 438.10 | $131,605.00 |

## Professional Services Rendered by Category During Interim Fee Period

| Matter Number | Description | Hours Billed | Amount |
|---|---|---|---|
| 11014-00001 | Matter 001 | 110.00 | $63,450.00 |
| 11014-00015 | Various Shelf Matters | 429.55 | $227,282.25 |
| 11014-00382 | Matter 382 | 329.30 | $149,589.00 |
| 11014-00395 | Matter 395 | 21.10 | $13,931.00 |
| 11014-00397 | Matter 397 | 114.80 | $62,828.50 |
| 11014-00402 | Matter 402 | 129.30 | $74,608.00 |
| 11014-00474 | Matter 474 | 572.90 | $352,902.50 |
| 11014-00485 | Matter 485 | 38.50 | $25,800.50 |
| 11014-00489 | Matter 489 | 472.20 | $308,058.00 |
| 11014-00502 | Matter 502 | 81.80 | $46,640.50 |
| 11014-00561 | Matter 561 | 578.90 | $287,748.50 |
| 11014-00617 | Matter 617 | 36.20 | $13,597.50 |
| 11014-00664 | Matter 664 | 7.80 | $2,305.50 |
| 11014-00665 | Matter 665 | 101.00 | $52,016.50 |
| 11014-00667 | Matter 667 | 34.10 | $16,703.00 |
| 11014-00701 | Matter 701 | 184.50 | $113,125.00 |
| 11014-00750 | Matter 750 | 278.70 | $147,841.50 |
| 11014-00798 | Matter 798 | 80.70 | $31,180.00 |
| 11014-00799 | Matter 799 | 57.50 | $28,153.00 |
| 11014-00800 | Matter 800 | 20.70 | $8,716.00 |
| 11014-00801 | Matter 801 | 37.50 | $15,928.50 |
| 11014-00810 | Matter 810 | 10.60 | $3,867.00 |
| 11014-00811 | Matter 811 | 31.20 | $12,133.00 |

| Matter Number | Description | Hours Billed | Amount |
|---|---|---|---|
| 11014-00849 | Matter 849 | 160.00 | $80,636.00 |
| 11014-00900 | Matter 900 | 14.10 | $11,474.50 |
| 11014-00901 | Matter 901 | 13.60 | $4,661.50 |
| 11014-00902 | Fee Application Preparation | 208.70 | $91,681.00 |
| 11014-00903 | Retention Application | 128.30 | $54,683.50 |
| 11014-00904 | Matter 904 | 0.60 | $336.00 |
| 11014-00905 | Matter 905 | 87.60 | $36,813.00 |
| 11014-00906 | Matter 906 | 172.40 | $79,302.50 |
| 11014-00907 | Matter 907 | 213.60 | $90,991.50 |
| 11014-00908 | Matter 908 | 0.70 | $380.00 |
| 11014-00909 | Matter 909 | 85.50 | $64,798.50 |
| 11014-00910 | Matter 910 | 12.40 | $6,469.50 |
| 11014-00911 | Matter 911 | 50.30 | $39,325.00 |
| 11014-00912 | Matter 912 | 537.60 | $349,614.50 |
| 11014-00913 | Matter 913 | 2.20 | $1,195.00 |
| **Total:** | | **5,446.45** | **$2,970,767.25** |

### Expenses Incurred During Interim Fee Period

| Expense Category | Amount |
|---|---|
| CD/DVD Preparation | $1,200.00 |
| Closing CD | $4,058.06 |
| Consulting | $77,123.06 |
| Filing Fee | $8,505.10 |
| Meeting Meals | $301.26 |
| Meeting Space | $1,333.18 |
| Messenger/Courier | $1,546.33 |
| Offsite Printing/Duplicating | $6,248.39 |
| Online Legal Research | $6,079.42 |
| Other Legal Research | $826.93 |
| Overtime Meals | $27.48 |
| Photocopies | $4,708.60 |
| Photocopies: Color | $112.50 |
| Scanned Images | $1,052.55 |
| Travel: Air Transportation | $39,333.08 |

| Expense Category | Amount |
|---|---|
| Travel: Ground Transportation | $8,402.56 |
| Travel: Lodging | $9,633.99 |
| Travel: Meals | $2,004.35 |
| Travel: Parking Expenses | $76.00 |
| Travel: Rail Transportation | $1,912.00 |
| Travel: Telephone | $694.63 |
| | **$175,179.47** |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                        :

In re                               :         Chapter 11 Case No.
                                       :

LEHMAN BROTHERS HOLDINGS INC., *et al.* :     08-13555 (JMP)
                                       :

        Debtors.                    :         (Jointly Administered)
                                       :
------------------------------------------------------------------X

## SECOND INTERIM FEE APPLICATION OF BINGHAM McCUTCHEN LLP, AS SUCCESSOR IN INTEREST TO McKEE NELSON LLP, SPECIAL COUNSEL FOR THE DEBTORS, FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Bingham McCutchen LLP ("<u>Bingham</u>"), as successor in interest to McKee

Nelson LLP ("<u>McKee</u>"), special counsel for Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its

affiliated debtors in the above-referenced chapter 11 cases (collectively, the "<u>Debtors</u>"), in

support of the second interim fee application (the "<u>Application</u>") seeking compensation for

professional services rendered and reimbursement of actual and necessary expenses incurred in

connection with McKee's representation of the Debtors in (i) tax controversy matters from

February 1, 2009 through May 31, 2009 and (ii) securitization and capital markets matters from

September 15, 2008 through May 31, 2009 (both time periods collectively referred to herein as

the "<u>Interim Fee Period</u>"),[1] pursuant to sections 330 and 331 of title 11 of the United States Code

---

[1]     McKee's retention by the Debtors for the securitization and capital markets matters was approved
shortly before McKee filed its first interim fee application. Consequently, McKee was not able to include
the fees and expenses for the securitization and capital markets matters in such application. All of the
fees and expenses incurred by McKee in connection with the securitization and capital markets matters
from September 15, 2008 through May 31, 2009 are thus included in this Application.

(the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully represents:

## Background

### A.    The Chapter 11 Cases

1.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and, by order dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.

2

5.    On May 26, 2009, the Court appointed a fee committee in the above-captioned chapter 11 cases (the "<u>Fee Committee</u>") and approved a fee protocol (the "<u>Fee Protocol</u>") [Docket No. 3651].

**B.    The Debtors' Businesses**

6.    Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Jurisdiction**

8.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

9.    The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "<u>Local Rules</u>"). By this Application, Bingham respectfully seeks Court approval and allowance for compensation for professional services rendered to the Debtors during the Interim Fee Period in the aggregate amount of $2,967,972.25 and for reimbursement of actual and necessary

expenses incurred in connection with the rendition of such services in the aggregate amount of $171,034.92.

10.     As set forth more fully herein, the requested amounts are $6,939.55 less than the amounts requested in the monthly fee statements previously submitted by McKee for the Interim Fee Period, as a result of certain voluntary reductions described herein.

<b><u>Basis for Relief</u></b>

**A.     <u>The Retention of McKee by the Debtors</u>**

11.     By application dated October 14, 2008, the Debtors sought entry of an order authorizing the retention of McKee as special tax counsel to the Debtors, *nunc pro tunc* to the Commencement Date (the "<u>Retention Application</u>") [Docket No. 916]. By order dated November 5, 2008, this Court approved the Retention Application [Docket No. 1387]. A copy of this order is attached hereto as <u>Exhibit A</u>.

12.     On March 10, 2009, the Debtors filed a motion seeking entry of an order authorizing the Debtors to expand McKee's retention to include certain limited securitization and capital markets matters, *nunc pro tunc* to the Commencement Date [Docket No. 3040]. The motion was approved by order dated March 24, 2009 [Docket No. 3206] (together with the order dated November 5, 2008 approving the Retention Application, the "<u>Retention Order</u>"). A copy of this order is attached hereto as <u>Exhibit A1</u>.

13.     On April 9, 2009, McKee filed its first interim fee application seeking compensation for professional services rendered and reimbursement of actual and necessary expenses incurred from September 15, 2008 through January 31, 2009 (the "<u>First Interim Fee Application</u>") [Docket No. 3318], seeking Court approval and allowance for compensation for professional services rendered to the Debtors in the aggregate of $2,727,562.00 and for

4

reimbursement of actual and necessary expenses incurred in connection with the rendition of such services in the aggregate of $105,916.85.    The Court granted the First Interim Fee Application, awarding $2,454,805.80 in fees and $105,916.85 in expenses,  by order dated August 13, 2009 [Docket No. 4795].

**B.     The Combination of Bingham and McKee**

14.    McKee combined with Bingham effective as of August 1, 2009.  As a result of the combination, all of the McKee attorneys who have represented the Debtors in their chapter 11 cases are now attorneys at Bingham.

15.    The Debtors have asked Bingham to continue McKee's work on behalf of the Debtors.  In this regard, on August 1, 2009, Bingham filed the Supplemental Declaration of Rajiv Madan on Behalf of Bingham McCutchen Pursuant to Sections 327, 328(a), 329 and 504 of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Bankruptcy Rules [Docket No. 4636].

16.    The Debtors also intend to file an Application Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code for Authorization to Employ Bingham McCutchen LLP, *nunc pro tunc* to August 1, 2009.

**C.     Applicable Authority**

17.    This Application has been prepared in accordance with: (a) the Administrative Order Re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, approved by the Board of Judges on April 19, 1995 (the "Local Guidelines"); (b) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, issued January 30, 1996 (the "UST Guidelines"); and (c) the Third Amended Order Pursuant to

5

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, dated June 25, 2009 [Docket No. 4165] (the "Interim Fee Order," and collectively with the Local Guidelines and the UST Guidelines, the "Guidelines").    Pursuant to the Guidelines, a certification regarding compliance with the same is attached hereto as Exhibit B.

18.    In preparing this Application, Bingham has also reviewed and considered the Fee Committee Report Pertaining to the First Interim Fee Applications of All Retained Professionals (the "Committee Report").

### Fees and Expenses

19.    During the Interim Fee Period, McKee provided professional services in the aggregate of $2,970,767.25 and incurred expenses in the aggregate of $175,179.47.  McKee professionals and paraprofessionals expended a total of 5,446.45 hours for which compensation is requested.  McKee's requests for compensation in the monthly fee statements are broken down as follows:

| Period Covered | Hours | Requested | | Received | | Outstanding | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| 02/01/2009 to 02/28/2009 | 1,666.00 | $903,151.50 | $58,983.23 | $722,521.20 | $58,983.23 | $180,630.30 | $0 |
| 03/01/2009 to 03/31/2009 | 1,972.45 | $1,010,114.75 | $57,098.29 | $808,091.80 | $57,098.29 | $202,022.95 | $0 |
| 04/01/2009 to 04/30/2009 | 982.50 | $543,587.50 | $35,088.31 | $434,870.00 | $35,088.31 | $108,717.50 | $0 |
| 05/01/2009 to 05/31/2009 | 825.50 | $513,913.50 | $24,009.64 | $411,130.80 | $24,009.64 | $102,782.70 | $0 |
| **Totals:** | **5,446.45** | **$2,970,767.25** | **$175,179.47** | **$2,376,613.80** | **$175,179.47** | **$594,153.45** | **$0** |

20.    During the Interim Fee Period, other than pursuant to the Interim Fee Order, neither McKee nor Bingham has received payment or promises of payment from any

source for services rendered or to be rendered in these chapter 11 cases. There is no agreement or understanding between Bingham and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these chapter 11 cases. Neither McKee nor Bingham received a security retainer or advance payment for fees and expenses incurred in connection with its representation of the Debtors in these chapter 11 cases.

21.     McKee charged its fees in these chapter 11 cases in accordance with billing rates and procedures in effect during the Interim Fee Period and as set forth in the Retention Application. The rates charged by McKee for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are similar to the rates charged by McKee for professional services rendered in comparable non-bankruptcy related matters.

22.     Pursuant to the Guidelines, attached hereto as Exhibit C is a schedule setting forth all McKee professionals and paraprofessionals who performed services during the Interim Fee Period, the position of each professional at McKee during the Interim Fee Period, the date of bar admission for each professional, the hours worked by each professional and paraprofessional, and the hourly rate of each professional and paraprofessional. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases. As of January 1, 2009, the billing rates of certain McKee professionals and paraprofessionals increased in the normal course of McKee's business. Because the Interim Fee Period includes time billed prior to January 2009 (see note 1 *supra*), Exhibit C sets forth as separate line items both the 2008 and 2009 hourly rates where relevant.

23.     Pursuant to the Guidelines, attached hereto as Exhibit D is a summary of McKee's time records billed during the Interim Fee Period, utilizing the project categories as described below. Detailed records of the hours expended and associated fees by professionals

7

and paraprofessionals during the Interim Fee Period are attached hereto as <u>Exhibits D1-D4</u>. To protect confidentiality and maintain attorney-client privilege and work product protection over the advice McKee has provided to the Debtors, McKee has redacted its time entry and expense descriptions. Similarly, McKee has used matter numbers in lieu of substantive matter names and replaced references to underlying substantive issues with these matter numbers in its time entry descriptions.

24.     Pursuant to the Guidelines, attached hereto as <u>Exhibit E</u> is a categorical summary of the expenses billed during the Interim Fee Period. Detailed records of the expenses billed during the Interim Fee Period are attached hereto as <u>Exhibit E1</u>.

25.     To the extent that time or expense charges for services rendered or expenses incurred relate to the Interim Fee Period, but were not processed prior to the preparation of the Application, Bingham reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

**Corrections, Supplements and Voluntary**
**<u>Reductions based on the Fee Committee Reports</u>**

26.     Bingham has closely reviewed the guidelines established by and the comments made by the Fee Committee in the Committee Report and has carefully considered the potential concerns raised by the Fee Committee in the report related to McKee's First Interim Fee Application (together with the Committee Report, the "<u>Reports</u>"). In an effort to address the concerns set forth in the Reports, in connection with preparing this Application, Bingham again reviewed the monthly fee statements for this Interim Fee Period. As a consequence of this review, Bingham has determined to voluntarily reduce the fees and expenses it is requesting from the Debtors by $6,939.55. These reductions are detailed in the attached <u>Exhibits D6 and E3</u>

8

and include various reductions for time and expenses related to travel, meals, photocopies, and research.

27.    In addition, Bingham understands the Fee Committee's concern that certain time entries may not contain sufficient information to identify the particular tasks worked on by professionals or paraprofessionals. It should be noted that McKee has historically redacted certain time entries to ensure that confidential information in connection with important tax controversy matters, including the Debtors' litigation strategy, was not disclosed. Nonetheless, upon Bingham's secondary review of the relevant time records, Bingham has identified certain entries for which additional detail or explanation can be provided. This detail is set forth in the attached Exhibit D5. Bingham has also identified certain expenses for which, based on the Reports, Bingham believes it likely that the Fee Committee may seek additional detail or explanation. This detail is provided in the attached Exhibit E2.

28.    Finally, Bingham understands that the Fee Committee may seek further information regarding variations in billing rates during the Interim Fee Period. The changes in rates reflect McKee's established billing practices and procedures in which rates were generally adjusted in January of each year. This practice was disclosed in the declarations filed in connection with the Retention Application. As indicated above, Exhibit C sets forth as separate line items both the 2008 and 2009 hourly rates where applicable.

### Summary of Services

29.    In accordance with the Retention Order, McKee provided such services as were necessary and appropriate in order to advise the Debtors regarding tax controversy and certain securitization and capital markets matters in the course of these chapter 11 cases. The full scope and breadth of the services rendered is reflected in the monthly statements, which have

been provided to the Notice Parties (as defined in the Interim Fee Order) and incorporated herein as Exhibits D1-D4.

30.    During the Interim Fee Period, McKee rendered a substantial amount of professional services for the Debtors. The following is a summary by category of the significant professional services rendered by McKee during the Interim Fee Period:

a.    1997-2000 Refund Claims

McKee professionals and paraprofessionals rendered services in connection with pursuing an administrative resolution of Debtors' claims for refund from the Internal Revenue Service (the "IRS") of taxes, penalties, and interest paid for the 1997-2000 tax years (the "1997-2000 Refund Claims"). These services are noted in Exhibits D1-D4 under Matter Codes 382, 395, 474, 489, 701, 909, 910, 912, and 913. In total, McKee, on behalf of LBHI, pursued eight different issues involving administrative claims for refund for one or more of the 1997-2000 tax years. Specifically, McKee professionals coordinated with the IRS and the Department of Justice (the "DOJ") to consider and develop a process for attempting to administratively resolve the issues, further developed the defense of the tax positions taken for each unresolved issue from the 1997-2000 tax years, prepared supplemental legal briefs detailing Debtors' facts and legal grounds for recovery for three major issues, participated in numerous meetings and teleconferences with the IRS regarding the 1997-2000 Refund Claims, drafted memoranda with respect to the issues raised, and prepared additional document productions to the DOJ and the IRS. This process entailed coordination with the Creditors' Committee and the SIPC Trustee administering LBI's estate. In addition, McKee professionals conducted other tasks and projects not specifically enumerated in order to preserve confidentiality and protect privileged information.

10

b.    2001-2005 Audit

McKee professionals and paraprofessionals helped manage the IRS audit of Debtors' 2001-2005 tax years (the "2001-2005 Audit"), which implicates at least 23 significant issues, some of which are carryover issues from those included in the 1997-2000 Refund Claims. These services are noted in Exhibits D1-D4 under Matter Codes 382, 395, 397, 402, 474, 485, 489, 502, 617, 664, 665, 667, 798, 799, 800, 801, 810, 811, 909, and 910. Specifically, McKee professionals produced documents in response to IRS Information Document Requests ("IDRs"), drafted narrative answers to interrogatory questions, conducted legal and factual research and analysis with respect to various issues, and assessed and asserted privilege claims on behalf of the Debtors (collectively, "Audit Management"). In addition, McKee professionals coordinated with the DOJ and the IRS to consider and develop a process for attempting to administratively resolve the issues, further developed the facts and the legal grounds for recovery relating to each unresolved issue from the 2001-2005 tax years, participated in numerous meetings and teleconferences with the IRS regarding the 2001-2005 Audit, and drafted legal memoranda with respect to the issues raised. This process entailed coordination with the Creditors' Committee. McKee professionals also conducted other tasks and projects not specifically enumerated in order to preserve confidentiality and protect privileged information.

c.    Transaction Audits

McKee professionals and paraprofessionals advised on and helped manage two other of Debtors' ongoing IRS audits, which are in the final stages of discovery, involving specific aspects of Debtors' business activities (the "Transaction Audits"). These services are noted in Exhibits D1-D4 under Matter Codes 561 and 750. In addition to Audit Management, McKee professionals researched and analyzed transaction data, drafted legal memoranda with

11

respect to the issues raised, prepared document productions and responses to IRS summonses, and participated in numerous meetings and teleconferences with the IRS regarding the Transaction Audits. This process entailed coordination with the SIPC Trustee administering LBI's estate. McKee professionals also conducted other tasks and projects not specifically enumerated in order to preserve confidentiality and protect privileged information.

> d.     2006-2007 Audit

McKee professionals and paraprofessionals helped manage the postpetition IRS audit of Debtors' 2006-2007 tax years (the "2006-2007 Audit"), which implicates several issues, some of which carryover from those included in the 1997-2000 Refund Claims and the 2001-2005 Audit. These services are noted in Exhibits D1-D4 under Matter Codes 382, 402, 489, 502, 617, 665, 667, 799, 800, 801, 810, 811, 905, 906, 907, and 908. In addition to Audit Management, McKee professionals coordinated with the DOJ and the IRS to consider and develop a process for attempting to administratively resolve the issues, further developed the facts and legal grounds for recovery relating to each unresolved issue, participated in numerous meetings and teleconferences with the IRS regarding the 2006-2007 Audit, and drafted legal memoranda with respect to the issues raised. This process entailed coordination with the Creditors' Committee. McKee professionals also conducted other tasks and projects not specifically enumerated in order to preserve confidentiality and protect privileged information.

> e.     Advice on Tax Issues Specific to Bankruptcy

McKee professionals and paraprofessionals advised Debtors on a variety of tax issues specific to bankruptcy. These services are noted in Exhibits D1-D4 under Matter Codes 001, 900, 904, and 911. Specifically, McKee professionals analyzed and prepared various tax calculations, participated in meetings and teleconferences regarding tax liability issues, researched specific tax liability issues, and responded to inquiries from the Debtors' tax

12

department. McKee professionals also conducted other tasks and projects not specifically enumerated in order to preserve confidentiality and protect privileged information.

        f.      <u>Case Administration</u>

This category pertains to coordination activities among McKee professionals and paraprofessionals rendering tax controversy advice in these proceedings. These services are noted in <u>Exhibits D1-D4</u> under Matter Codes 402, 701, 849, and 912. McKee professionals coordinated with the DOJ and the IRS to consider and develop a process for attempting to administratively resolve the issues, discussed strategy with the Debtors' tax department to position the various matters for litigation or resolution in appeals, performed ongoing management of the issues related to the audits, including coordination with the Debtors, McKee staffing teams, and the IRS, assisted Debtors with and reviewed non-transaction specific responses to IDRs, and developed and analyzed the global strategy for resolution of the various issues subject to the audits. This process entailed coordination with the Creditors' Committee and the SIPC Trustee administering LBI's estate. McKee professionals also conducted other tasks and projects not specifically enumerated in order to preserve confidentiality and protect privileged information.

        g.      <u>Securitization and Capital Markets Matters</u>

McKee professionals and paraprofessionals rendered services in connection with certain securitization and capital markets matters. These services are noted in <u>Exhibits D1-D4</u> under the category of Various Shelf Matters. Specifically, McKee professionals and paraprofessionals drafted compliance opinions required under certain securitization documents, tracked and filed UCC continuation statements, renewed service of process agents, handled a variety of deal document issues, including waterfalls, derivative issues, and filing requirements,

and handled various filing requirements and associated issues under related securities laws and regulations. In addition, McKee professionals and paraprofessionals conducted any other securitization or capital markets matters requested by the Debtors in relation to the foregoing.

> h.    Retention Application Preparation

Certain McKee professionals managed retention issues and drafted a motion expanding McKee's retention to include certain securitization and capital markets matters. Additionally, certain McKee professionals and paraprofessionals conducted extensive conflicts checks in order to comply with applicable bankruptcy law. Specifically, McKee professionals and paraprofessionals conducted conflicts searches in response to updates to the master conflicts list, reviewed search results, and prepared supplemental disclosures, where necessary. These services are noted in Exhibits D1-D4 under Matter Code 903.

> i.    Fee Application Preparation

The billing procedures required by the Guidelines differ from McKee's billing procedures in place during the Interim Fee Period, and have required significant effort on the part of certain professionals and paraprofessionals to ensure compliance with the same. Specifically, McKee professionals and paraprofessionals have researched the Guidelines and informed the timekeepers of their responsibilities, compiled and reviewed the detailed time entries for privilege and confidentiality, prepared detailed and summary schedules of fees and expenses incurred, and drafted the narratives and schedules included in McKee's monthly statements. During the Interim Fee Period, McKee professionals and paraprofessionals also prepared the First Interim Fee Application and supporting exhibits. McKee professionals and paraprofessionals also reviewed the Fee Protocol and responded to various requests made by the Fee Committee. These services are noted in Exhibits D1-D4 under Matter Codes 901 and 902.

14

31.     The foregoing professional services performed by McKee were necessary and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by McKee were in the best interest of the Debtors, their estates, and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. The professional services were performed expediently and in an efficient manner.

32.     The professional services performed by McKee on behalf of the Debtors during the Interim Fee Period required an aggregate expenditure of 5,446.45 recorded hours by McKee professionals and paraprofessionals. Of the aggregate time expended, 1,679.65 recorded hours were expended by partners, of counsel and counsel, 2,675.80 recorded hours were expended by associates, law clerks and staff attorneys, and 1,091.00 recorded hours were expended by paraprofessionals and litigation technology support analysts of McKee. During the Interim Fee Period, McKee billed the Debtors for time expended by professionals and paraprofessionals based on McKee's regular hourly rates.

**Actual and Necessary Expenses**

33.     As set forth in Exhibit E, McKee incurred $175,179.47 in expenses in providing professional services during the Interim Fee Period. The actual expenses incurred in providing professional services were necessary, reasonable and justified to serve the needs of the Debtors, their estates, and creditors, and McKee made every effort to minimize its expenses in these cases. As more fully described in Exhibit E1, Bingham seeks reimbursement for various categories of expenses, including:    (a) Air Transportation, (b) Consulting, (c) Ground Transportation, (d) Lodging, (e) Messenger/Courier, (f) Online Legal Research, (g) Other Legal

15

Research, (h) Overtime Meals, (i) Parking, (j) Photocopies, (k) Rail Transportation, and (l) Travel Meals. All entries in Exhibit E1 are in accordance with the Guidelines.

34.    McKee's disbursement policies passed through all out of pocket expenses (the "Out-of-Pocket Expenses"), such as travel expenses and consulting fees, at actual cost. For all other expenses, McKee typically charged clients an amount equal to two percent of the firm's fees (the "Percentage Charge"). In these chapter 11 cases, however, McKee tracked, to the extent possible, the expenses that would typically be included in the Percentage Charge (the "Tracked Expenses"). Where McKee was unable to determine the actual cost of Tracked Expenses, it charged an estimated cost. Given that for each month during the Interim Fee Period, the amount of the Tracked Expenses was less than the Percentage Charge, McKee requested payment only for the amount of the Tracked Expenses. Both the Out-of-Pocket Expenses and the Tracked Expenses are included in Exhibit E1.

## The Requested Compensation Should Be Allowed

35.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)    the time spent on such services;

16

> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

36.    The services for which Bingham seeks compensation and the expenditures for which Bingham seeks reimbursement in this Application were necessary for and beneficial to the orderly administration of the Debtors' estates and their rehabilitation and reorganization effort. The Debtors retained McKee as special counsel to provide them with a variety of necessary services during the course of their complex tax controversy matters and certain securitization and capital markets matters.

37.    All of McKee's professionals who rendered services in these proceedings made a deliberate effort to avoid unnecessary duplication of work and time expended. In certain instances, however, conferences and/or collaboration were necessary among McKee's professionals.

17

38.    Whenever possible, McKee sought to minimize the costs of its services to the Debtors by utilizing talented junior professionals, without sacrifice to the quality of the services rendered.

39.    Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

40.    In sum, the services rendered by McKee were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved, and approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

### Notice

41.    Notice of this Application will be served in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. Notice will also be given to each of the retained professionals in these chapter 11 cases. Bingham submits that no other or further notice need be provided.

18

## Conclusion

WHEREFORE Bingham respectfully requests that the Court enter an order (i) awarding Bingham interim compensation from the Debtors for actual and necessary professional services rendered during the Interim Fee Period in the aggregate amount of $2,967,972.25, (ii) allowing Bingham interim reimbursement for actual and necessary expenses incurred during the Interim Fee Period in the aggregate amount of $171,034.92, (iii) holding that the allowance of such interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Bingham's right to seek additional compensation for services performed and expenses incurred during the Interim Fee Period which were not processed at the time of this Application; and (iv) granting Bingham such other and further relief as it deems just and proper.

Dated: August 14, 2009
      Washington, D.C.

Rajiv Madan, Esq.
BINGHAM McCUTCHEN LLP
1919 M Street, N.W.
Suite 200
Washington, D.C. 20036
Telephone: (202) 775-1880
Facsimile: (202) 775-8586

Special Counsel for the Debtors
and Debtors in Possession