Hearing Date:  TBD9 (Prevailing Eastern Time)
Objection Deadline:  TBD (Prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**COVER SHEET FOR THE SECOND INTERIM APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC., INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM FEBRUARY 1, 2009 THROUGH MAY 31, 2009**

**NAME OF APPLICANT:**          Houlihan Lokey Howard & Zukin Capital, Inc.

**TIME PERIOD:**          February 1, 2009 through May 31, 2009

**DATE OF FINAL RETENTION:**          December 17, 2008 (*nunc pro tunc* to September 17, 2008)

**ROLE IN THE CASE:**          Investment Banker to the Official Committee of Unsecured Creditors

**CURRENT APPLICATION:**

    Fees Incurred (Including 20% Holdback):          $1,753,333.33

    Expenses Incurred:          $99,265.60[1]

**PRIOR APPLICATIONS:**

    Fees Previously Requested:          $2,233,333.33
    Fees Previously Awarded:          $2,010,000.00
    Expenses Previously Requested:          $159,070.80
    Expenses Previously Awarded:          $159,070.80

---

[1] The expenses sought by this Application reflects a reduction from Houlihan Lokey's actual expenses by approximately $3,833 in accordance with the guidelines supplied in the Fee Committee Report.  However, Houlihan Lokey reserves the right to seek allowance of all or a portion of such expenses at a future date

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**SECOND INTERIM APPLICATION OF HOULIHAN LOKEY**
**HOWARD & ZUKIN CAPITAL, INC., INVESTMENT BANKER TO THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**FROM FEBRUARY 1, 2009 THROUGH MAY 31, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), as investment banker to the Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings, Inc., ("LBHI") et al., the debtors and debtors-in-possession in the above captioned chapter 11 cases (collectively, the "Debtors"), and together with their non-debtor affiliates ("Lehman"), hereby submits this second application (the "Application"), pursuant to sections 328, 330 and 331 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (together, the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee

Guidelines"), and the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation And Reimbursement Of Expenses of Professionals, dated June 25, 2009 (the "Interim Compensation Order"), for the allowance of interim compensation for professional services rendered from February 1, 2009 through and including May 31, 2009 (the "Second Interim Compensation Period"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## BACKGROUND

1.   Bankruptcy Filing.  On September 15, 2008 (the "Petition Date"), and periodically thereafter, the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2.   Creditors' Committee.  On September 17, 2008, the United States Trustee appointed the Committee in the Chapter 11 Cases.

3.   SIPA Trustee.  On September 19, 2008, a proceeding ("SIPA Proceeding") was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"), a wholly owned subsidiary of LBHI and a registered broker dealer.  James W. Giddens, Esq. is the trustee appointed under SIPA (the "SIPA Trustee") and is administering LBI's estate.

4.   Examiner.  The United States Bankruptcy Court for the Southern District of New York approved the appointment of Anton R. Valukas as examiner (the "Examiner") in

the Chapter 11 Cases in the Order Approving the Appointment of Examiner dated January 20, 2009.

5.      Fee Committee.  The United States Bankruptcy Court for the Southern District of New York appointed a fee committee (the "Fee Committee") and approved a fee protocol in the Chapter 11 Cases on May 26, 2009 (Docket No. 3651).

6.      Jurisdiction.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 328, 330 and 331 of the Bankruptcy Code.

**RETENTION OF HOULIHAN LOKEY
AND SUMMARY OF PROFESSIONAL COMPENSATION
AND REIMBURSEMENT OF EXPENSES REQUESTED**

7.      On December 17, 2008, pursuant to the Final Order Under 11 U.S.C. §§ 328(a) and 1103 And Fed. R. Bankr. P. 2014 And S.D.N.Y. LBR 2014-1 Authorizing The Retention And Employment Of Houlihan, Lokey, Howard, & Zukin Capital, Inc., As Investment Banker For The Official Committee Of Unsecured Creditors Effective As Of September 17, 2008, and as amended on July 2, 2009 (Docket No. 4265), (the "Retention Order"), the Court authorized Houlihan Lokey's retention as an investment banker for the Committee in these cases. The Retention Order authorized Houlihan Lokey to receive compensation pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Guidelines, the U.S. Trustee Guidelines, and the local rules and orders of this Court.

8.      Houlihan Lokey prepared this application in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the

3

United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), and the Third Amended Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated June 25, 2009, (Docket No. 4165) (the "Interim Compensation Order", and collectively with the Local Guidelines and UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as Exhibit "A".

9.      Houlihan Lokey seeks allowance of the interim compensation for professional services rendered to the Committee in the aggregate amount of $1,753,333.33, of which $350,666.67 remains unpaid, and for reimbursement of expenses incurred in connection with the rendition of such services in the aggregate amount of $99,265.60[2] during the Second Interim Compensation Period, which is the adjusted amount of fees based on the guidelines provided by the Fee Committee on August 3, 2009.  With the adjustment to expenses, in total $346,833.17 remains unpaid.

(a)      In accordance with the Interim Compensation Order, Houlihan Lokey submitted monthly fee statements to the Debtors seeking interim compensation and reimbursement of expenses.  During the Second Interim Compensation Period, Houlihan Lokey submitted the following fee statements:

(i)      On March 20, 2009, pursuant to the Interim Compensation Order, Houlihan served its fifth fee statement for the period from February 1, 2009 through and including February 28, 2009 (the "Fifth Fee Statement").  The Fifth Fee Statement

---

[2]  Houlihan Lokey has included all actual (adjusted post-billing for the guidelines provided by the Fee Committee) and necessary expenses processed by its accounting department for the Second Interim Compensation Period. However, some vendors do not send regular invoices.  As a result, it is possible that some expenses for the Second Interim Compensation Period will be processed in subsequent periods and that some expenses for prior periods will be included in this Second Interim Compensation Period.  Accordingly, Houlihan Lokey reserves the right to seek reimbursement of additional expenses that may have been incurred during the Second Interim Compensation Period, but which have not been accounted for in Houlihan Lokey's billing system as of the close of the Second Interim Compensation Period, and the right to seek allowance of all or a portion of the reductions taken from the application of the Fee Committee's guidelines.

4

sought (i) an allowance of $500,000.00 as compensation for services rendered and (ii) the reimbursement of $14,465.04 (unadjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $414,465.04, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(ii)  On April 30, 2009, pursuant to the Interim Compensation Order, Houlihan served its sixth fee statement for the period from March 1, 2009 through and including March 31, 2009 (the "Sixth Fee Statement"). The Sixth Fee Statement sought (i) an allowance of $453,333.33 as compensation for services rendered and (ii) the reimbursement of $52,726.14 (unadjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $415,392.81, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(iii)  On May 29, 2009, pursuant to the Interim Compensation Order, Houlihan served its seventh fee statement for the period from April 1, 2009 through and including April 30, 2009 (the "Seventh Fee Statement"). The Seventh Fee Statement sought (i) an allowance of $400,000.00 as compensation for services rendered and (ii) the reimbursement of $19,925.96 (unadjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $339,924.96, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(iv)  On June 26, 2009, pursuant to the Interim Compensation Order, Houlihan served its eighth fee statement for the period from May 1, 2009 through and including May 31, 2009 (the "Eighth Fee Statement"). The Eighth Fee Statement sought (i) an allowance of $400,000.00 as compensation for services rendered and (ii) the reimbursement of $15,982.97 (unadjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $335,982.97, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

10.     Pursuant to Bankruptcy Rule 2016(a), there is no agreement or understanding between Houlihan Lokey and any other person for the sharing of compensation to be received for services rendered in these cases.

11.     Houlihan Lokey respectfully submits that (a) the services provided by Houlihan Lokey were necessary for, and beneficial to, the Committee, (b) Houlihan Lokey has satisfied the requirements of Sections 328(a) of the Bankruptcy Code as set forth in this Court's Order dated December 17, 2008 (Docket No. 2279), as amended on July 2, 2009 (Docket No. 4265), authorizing the retention and employment of Houlihan Lokey by the Committee *nunc pro tunc* to September 17, 2008 (the "Retention Order"), and (c) the requested compensation is appropriate based on the complexity, importance and nature of the services provided.

12.     Pursuant to the UST Guidelines and the Retention Order, Houlihan Lokey has maintained a schedule setting forth all Houlihan Lokey professionals who have performed services in these Chapter 11 Cases during the Second Interim Compensation Period, the capacities in which each such individual is employed by Houlihan Lokey and the aggregate number of hours expended by U.S. restructuring professionals in this matter, which totaled approximately 3,300 hours for the period from February 1, 2009 through and including May 31, 2009, pursuant to the Retention Order.

13.     Houlihan Lokey does not maintain, in the normal course of providing financial advisory and investment banking services to its clients, detailed written time records, and does not bill its clients based on the number of hours expended by its professionals. However, Houlihan Lokey has maintained written records in hour increments of the time expended by its U.S. restructuring professionals in the rendition of professional services to the Committee in the Second Interim Compensation Period in accordance with the terms of the

6

Guidelines.  Such time records were made in connection with the rendition of services by the person rendering such services.  Non-U.S. restructuring professionals and all non-restructuring professionals have maintained weekly task summaries during the Second Interim Compensation Period.  A schedule setting forth the number of hours expended by each of the U.S. restructuring professionals and the weekly tasks of the other professionals who rendered services to the Committee during the Second Interim Compensation Period is annexed hereto as Exhibit "B".[3]

14.    Annexed hereto as Exhibit "C" [3] is a schedule specifying the categories of expenses for which Houlihan Lokey is seeking reimbursement, the total amount and adjustments for each such expense category and detail of expenses by employee and category.

15.    Houlihan Lokey has not received any payments from the Debtors other than those sought by this Application and those set forth in Houlihan Lokey's retention application.

## SUMMARY OF SERVICES RENDERED

16.    Houlihan Lokey has been retained as investment banker to the Committee in respect of all of the Debtors in these unprecedented and complex cases because of Houlihan Lokey's extensive knowledge and reputation in financial restructuring, its familiarity with the issues involved in these cases and the Committee's belief that Houlihan Lokey possesses the requisite resources and is well qualified to represent the Committee in these cases. During the Second Interim Compensation Period, Houlihan Lokey rendered a broad range of professional services to the Committee in various areas, addressing critical issues faced by the Committee during these Chapter 11 Cases. The services that Houlihan Lokey has been required to perform and has performed have been substantial and necessary in the Chapter 11 Cases. Houlihan Lokey

---

[3] Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; (iv) counsel for the Debtors; and (v) the Fee Committee.

has worked extensively with other professionals retained by the Committee, the Debtors, and the Debtors professionals (including but not limited to Alvarez & Marsal ("A&M") as advisor, Lazard Freres & Co. LLC ("Lazard") as investment banker, and Weil Gothsal & Manges LLC ("Weil") as counsel), while at the same time Houlihan Lokey has attempted to perform its services with the minimum amount of duplication with the Committee's and other advisors.

17.     The following summarizes the significant professional services rendered by Houlihan Lokey during the Second Interim Compensation Period.

**Business Due Diligence & Analysis**

18.     Houlihan Lokey has conducted business due diligence and analysis on, and/or had meetings or discussions with, the following key areas and/or individuals in these Chapter 11 Cases, including, among others:

(a)     Investment Banking Division ("IBD") Sale Transaction

(b)     LBI/SIPA/Examiner

(c)     Investment Management Division ("IMD") Spin-Out Transaction

(d)     Private Equity

(e)     Real Estate

(f)     Loan Book

(g)     Derivatives

(h)     International Operations and Other Foreign Assets

(i)     Lehman Banks (Bankhaus, LBCB, LBB, et al.)

(j)     Capital Structure/Cash Reports/Monthly Operating Report

19.     Houlihan Lokey's primary role has been to advise and represent the Committee in connection with the Debtors' vast, varied and complicated assets and operations. To do so, it is necessary for Houlihan to investigate and analyze the activities and assets of the

Debtors and to report significant events and decisions to the Committee and its various subcommittees. In order to complete thorough due diligence processes and enable the Committee to be fully informed, along with the Committee's other professionals (including, but not limited to, FTI Consulting, Inc. ("FTI") as financial advisor and Milbank, Tweed, Hadley & McCloy, LLP ("Milbank") as counsel) and Quinn Emanuel ("Quinn") as conflicts counsel, when necessary, Houlihan Lokey attended numerous in-person meetings and participated in conference calls with the Debtors and the Debtors' professionals across the areas listed above and met with governmental regulators when necessary. These meetings allowed Houlihan Lokey to become more familiar with the relevant issues concerning the Debtors and their assets and monitor and participate in the processes of the Debtors and the Debtors' professionals, including sale processes (e.g. IMD, private equity platforms, loan trading book transactions and derivative settlements). In conjunction with keeping the Committee informed, Houlihan Lokey prepared materials for distribution for weekly Committee and Committee co-chair calls, for regularly scheduled private equity, real estate, derivatives, loan book, and international subcommittee calls, and for monthly in-person Committee meetings. Houlihan Lokey researched underlying issues, compiled and analyzed data provided by the Debtors and the Debtors' professionals, and synthesized this information for the Committee and subcommittees. Based on all of the meetings, data analysis, and Houlihan Lokey's experience, Houlihan Lokey, along with the Committee's other advisors, continued to develop a preliminary overall plan strategy for the cases as well as specific strategies for each of the asset classes.

IBD Sale Transaction

20.     During the Second Interim Compensation Period, Houlihan Lokey along with the Committee's other professionals monitored certain IBD sale transaction related

settlements between the SIPA Trustee, Barclays, LBI and the Depository Trust & Clearing Corporation (the "DTCC") (the "Barclays Settlement"), and continued to analyze the effectuation, terms and outcome of the IBD Transaction itself.

LBI/SIPA/Examiner

21.    Since the SIPA Trustee's retention on September 19, 2008, the Debtors' and Committee's professionals have had limited visibility into the LBI proceeding but had occasion to meet with the SIPA Trustee and his advisors once during the Second Interim Compensation Period for a preliminary discussion.  Houlihan Lokey coordinated with the Committee's other professionals to provide appropriate updates to the Committee regarding the meeting and thereafter with the limited information available.

22.    On January 26, 2009, Houlihan Lokey attended a meeting with Milbank, FTI, Quinn, and the Examiner to understand the Examiner's role and scope of his assignment in an effort to avoid duplication of efforts.  All parties agreed to coordinate to avoid duplication of efforts.  Houlihan Lokey has participated on multiple calls since the initial meeting to assist in providing information and relevant perspective to the Examiner's professionals and allow them to ramp-up more quickly in their examination.

IMD Spin-Out

23.    During the Second Interim Compensation Period, Houlihan Lokey reviewed documents pertaining to the IMD transaction (including the ancillary transactions related to the European and Asian businesses), participated in meetings and calls regarding the closing of the transaction and monitored the business by receiving periodic updates on the business operations.

Private Equity

24.     During the Second Interim Compensation Period, Houlihan Lokey devoted substantial time to the private equity work stream. Houlihan Lokey's activities included analyzing and re-"marking" underlying investments in the merchant banking funds and certain principal investments and evaluating potential dispositions and funding requests of assets and investment platforms.   Houlihan Lokey also helped Lehman and their professionals proactively manage and reduce the outstanding unfunded commitments held by Lehman. To provide the Committee with the most up-to-date view on the underlying portfolio assets of the merchant banking funds, Houlihan Lokey analyzed trading and transaction comparables when available from Lehman and otherwise applied industry trends to approximate an updated value. These re-"marks" enabled Houlihan Lokey and the Committee to better evaluate the bids received during the sale process for the platform.   Furthermore, Houlihan Lokey aided A&M in evaluating the bids in terms of price, deal structure, and the probability of a successful sale.   Houlihan Lokey evaluated the option to retain or sell Lehman's interests in the secondary market, which included analyzing the secondary market pricing trends over the last few years.

25.     Houlihan Lokey also monitored the real estate private equity platform sale process that began during the First Interim Compensation Period.   Among other things, Houlihan Lokey's role included analysis and review of underlying asset values and certain interim funding decisions.

26.     Outside of the private equity funds, Lehman has a significant number of principal investments and investments in third-party hedge and private equity funds.   Houlihan Lokey has been actively involved in Lehman's decision to provide on-going funding to some of these investments and to sell certain hedge fund positions.   With respect to the hedge fund

positions, Houlihan Lokey provided integral support in negotiations and provided the Committee with pertinent information to approve these transactions.

Real Estate

27.     During the Second Interim Compensation Period, the Debtors and the Debtors' professionals focused on the US commercial real estate asset portfolio as this area had immediate and substantial funding requests.  More detailed information regarding the US residential assets and the Asian and European assets was obtained, and Houlihan Lokey, along with the Committee's other advisors, began analyzing these assets on a preliminary basis. Houlihan Lokey attended the weekly real estate meeting with the Debtors, the Debtors' professionals and FTI.  In these meetings, the group discussed weekly fundings, key issues, the process for evaluating property disposition and long term funding decisions, and third-party motions filed against the Debtors and their related action plans.

28.     While individual assets were sold post-petition, Houlihan Lokey's main focus has continued to be on monitoring and analyzing investments that require significant funding during the Second Interim Compensation Period and those that are being restructured. Houlihan Lokey, coordinating with FTI, reviewed deal memos and the underlying cash flows and met with the specific asset managers at the Debtors.  Houlihan Lokey presented fulsome analyses, summaries and recommendations to the real estate subcommittee for its approval for the Debtors to fund and/or restructure these investments.

29.     During the discussions on the US commercial real estate portfolio as a whole, Houlihan Lokey developed, along with FTI and the Debtors and the Debtors' advisors, the protocol for "bucketing" the US commercial assets into disposition strategies to facilitate the conversations regarding funding and overall portfolio strategy during the First Interim

Compensation Period. The Debtors completed their re-underwriting process to provide "marks" as of December 31, 2008, and the bucketing process at the end of January 2009. Houlihan Lokey reviewed the updated asset descriptions and cash flows for the calendar year ending December 31, 2008, and through projected exit. Houlihan Lokey analyzed, reconciled and presented a summary to the Real Estate subcommittee of these December 31, 2008, "marks" during the Second Interim Compensation Period.

Loan Book

30.     During the Second Interim Compensation Period, Houlihan Lokey continued to monitor Lehman's loan book positions, both un-pledged and pledged, including those in special purpose vehicles. Houlihan Lokey continued its review and analysis of all major loan positions under the Debtors' management and, with the Debtors' advisors, updated internal loan facility ratings and marks. Houlihan Lokey utilized internal valuation resources to examine the risk and recovery potential by borrower exposure.

31.     Houlihan Lokey continued to monitor and update positions included in the loan book "watch list", which was initially prepared in the First Interim Compensation Period to track higher-risk loans. As market conditions evolved, certain positions on the "watch list" were reviewed for sale. In cases were borrowers had defaulted or proposed restructurings or amendments, Houlihan Lokey was intimately involved in each situation – providing the Debtors' professionals with the Loan Book subcommittee's perspective regarding each transaction. In each case, Houlihan Lokey prepared updates, analysis, and recommendations for the Loan Book subcommittee.

32.     Houlihan Lokey and the Debtors' professionals continued to track open trades and unfunded commitments. For open trades, Houlihan Lokey conducted economic

analysis by counterparty and has been involved throughout the entire trade negotiation process, frequently providing feedback and perspective to the Debtors' professionals regarding transaction strategies and outcomes, reviewing final settlements, and elevating issues to the Loan Book subcommittee. Houlihan Lokey worked with the Debtors' professionals and Milbank to analyze and resolve open trade items that resulted in conflicts and court motions.

33.     During the Period, Houlihan Lokey continued to monitor the process of eliminating unfunded loan commitments, which has reduced risk, claims, and has improved equity for the non-Debtor regulated banks.

Derivatives

34.     During the Second Interim Compensation Period, Houlihan Lokey focused on asset recovery and value maximization of un-terminated "in-the-money" derivative positions. This effort included either the assignment, mutual negotiated termination, and hedging of receivables, depending on each situation.    Important milestones in the Second Interim Compensation Period included the acceptance of the "hedging order" by the bankruptcy court, the successful negotiation of a futures trading account, execution of three phases of interest rate hedges, and the collection of substantial cash payments.

35.     Houlihan Lokey negotiated with the Debtors' advisors a set of protocols for hedging open derivatives receivables to prevent deterioration of value.  The hedging protocol provided a framework for the derivatives settlement protocol that Houlihan Lokey and the Debtors' advisors worked to finalize during the Second Interim Compensation Period.

36.    Houlihan Lokey participated in the daily valuation and settlement discussions of derivative positions with Debtor and other Committee professionals.  Given the volume of transactions, the evaluation of proposed settlement terms has been divided between Houlihan Lokey and FTI and subsequently presented to the Derivatives subcommittee or the Committee for approval, as appropriate.  Houlihan Lokey has focused on the largest, open receivable positions and complex SPV related positions to-date and has produced analyses, including calculation of settlement values, which supported counterparty negotiations.  The pace of derivative settlements steadily increased since the First Interim Compensation Period and settlements have resulted in significant cash collections to the Debtors.

37.    In particular, Houlihan Lokey provided invaluable support to the Debtors when reviewing derivatives that are facing SPVs (such as credit default swaps of asset back securities or collateralized loan obligations issuers, mortgage trusts, etc).  Houlihan Lokey was involved in developing and executing the appropriate strategy through each stage of the process, which included either a negotiated settlement or a novation, and in some cases litigation.  In each instance, Houlihan Lokey played an integral role in negotiating settlements and novation agreements and determining the value of trades.

38.    Houlihan Lokey analyzed operational requirements and staffing for the derivatives wind-down.  During the Second Interim Compensation Period, Houlihan Lokey examined the number of personnel dedicated to the Derivatives asset class.  The personnel included Debtor employees, employees under the Barclays TSA arrangement, Numerix, as financial advisor, and eClerx, as reconciliation support.  Houlihan Lokey was involved, with the Debtor's advisors, in negotiating employee and consultant compensation arrangements.

Houlihan Lokey briefed the Derivatives subcommittee and the Committee at various critical junctures.

<u>International Operations and Other Foreign Assets</u>

39.     During the Second Interim Compensation Period, Houlihan Lokey continued to coordinate with A&M on foreign proceedings and several foreign sales that occurred and provided updates to the Committee, as appropriate. Regarding the Lehman Brothers International (Europe) ("LBIE") proceedings, Houlihan Lokey participates in periodic calls with A&M to discuss overall coordination between LBHI and LBIE, progress on derivative settlements, client restitution, inter-company accounts and parent guarantees.

40.     For the Asian proceedings, Houlihan Lokey met with A&M and KPMG LLP ("KPMG"), the provisional liquidators (appointed as liquidators in February 2009) for eight Hong Kong entities and certain of the Singaporean entities to discuss the operations, assets and the overall strategy to liquidate and/or sell the assets and settle inter-company accounts. A large focus has been on developing a strategy to maximize the value of the Japanese assets given the material amounts of inter-company receivables owed to the Hong Kong and Singapore entities by Lehman's Japanese entities.   In March 2009, Houlihan Lokey participated in meetings in Tokyo, Japan with KPMG and A&M to discuss the Japanese proceedings, real estate assets, the sale process and the Rehabilitation Plan. Houlihan Lokey participated in the evaluation of the bids of the Japanese real estate assets, which led up to Lehman Brothers Asia Holdings ("LBAH") ultimately purchasing three pools of real estate assets.   During the Second Interim Compensation Period, Houlihan Lokey also reviewed the sale of Libertus Jataku Loan K.K., which held a portfolio of Japanese residential mortgage loans, and summarized the sale process and the selected bid for the Committee's approval.

16

Lehman Banks

41.     For the US banks, Lehman Brothers Commercial Bank ("LBCB") and Lehman Brothers Bank ("LBB"), Houlihan Lokey continued its integral role in evaluating liquidity and bank viability for the Committee.  Houlihan Lokey monitored each bank's capital ratio and financial health and provided numerous written and verbal updates to the Committee and bank regulatory subcommittee.

42.     During the Second Interim Compensation Period, Houlihan Lokey continued to assist the Debtors' professionals and bank management in developing strategies to deal with government regulators from the Office of Thrift Supervision (the "OTS") and the Federal Deposit Insurance Corporation (the "FDIC").  Houlihan Lokey met with these regulators, along with Milbank, A&M and Weil, to discuss the capital position and related capital ratios of both banks.

43.     In March, 2009, it became evident that a capital infusion would be necessary to maintain "adequate" capital levels at Lehman Brothers Bank ("LBB").  Houlihan Lokey analyzed the proposed infusions and provided a presentation to the bank subcommittee and Committee.   In April, 2009, Houlihan Lokey conducted on-site meetings to discuss management's revised operating and liquidity plans at the bank's headquarters in Aurora, CO. Subsequent thereto, Houlihan Lokey presented its findings, accompanied by extensive financial analysis, to the Committee.

Liquidity/Capital Structure/Monthly Operating Reports

44.     During the Second Interim Compensation Period, Houlihan Lokey analyzed cash distributions and receipts pertaining to each of the major asset work streams.

Houlihan Lokey also reviewed and commented on the monthly operating report and the 13-week cash flow forecast provided by the Debtors and their advisors and responded to numerous inquiries from public bondholders regarding operating reports filed by the Debtor with the Court. Houlihan Lokey also participated in meetings with the Committee's other professionals, the Debtors and their professionals to discuss the reconciliation of the outstanding debt securities of LBHI and its subsidiaries.

**Plan Development**

45.    During the Second Interim Compensation Period, Houlihan Lokey coordinated with the Committee's other professionals to continue developing a preliminary list of issues associated with developing the Debtors' plan of reorganization, including evaluating the Debtors' "LAMCO" concept and considering other alternative plan concepts, considering inter-company and inter-estate issues with Lehman estates foreign jurisdictions, among other complicating factors.   Houlihan Lokey also drafted an initial asset summary and resolution strategy document in January 2009 and subsequently updated the document in February 2009.

**Committee and Advisor Interaction**

46.    In connection with weekly Committee, subcommittee, and co-chair calls during the Second Interim Compensation Period, Houlihan Lokey drafted multiple presentations with analyses and summaries of the work streams described above in order to keep the Committee and subcommittees well-informed and apprised of situations. Houlihan Lokey coordinated with the Committee's other advisors via calls and meetings. In addition to the full Committee calls, each of the subcommittees continued to have weekly conference calls to discuss asset specific issues and decision points.

**Case Administration**

47.    Houlihan Lokey spent significant time developing its second interim fee application and supplemental affidavits and preparing the monthly reimbursement statements. While Houlihan Lokey does not generally keep time records, Houlihan Lokey's retention order stipulated, after the order date of December 17, 2008, that all US restructuring personnel keep hourly time and task records.  The tracking and compilation of hours occurs monthly.  For all other Houlihan Lokey employees associated with this case, weekly task summaries are required on an individual basis, after the order date of December 17, 2008.

* * *

48.    The professional services performed by Houlihan Lokey were necessary and appropriate to the administration of the Chapter 11 Cases and were in the best interests of the Committee and other parties in interest.  Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

## ACTUAL AND NECESSARY DISBURSEMENTS OF HOULIHAN LOKEY

49.    Houlihan Lokey has disbursed $99,265.60 as expenses incurred in providing professional services during the Second Interim Compensation Period, which has been adjusted per the Fee Committee guidelines[4].  It is Houlihan Lokey's policy to charge its clients for all actual and necessary expenses incurred in connection with the engagement.  The expenses charged to clients include, among other things, telephone and telecopier charges, regular mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," and computerized research.  In

---

[4] The expenses sought by this Application reflects a reduction from Houlihan Lokey's actual expenses of approximately $3,833.51 in accordance with the guidelines supplied in the Fee Committee's report dated August 3, 2009.  However, Houlihan Lokey reserves the right to seek allowance of all or a portion of such expenses at a future date.

accordance with the applicable factors enumerated in the Bankruptcy Code, it is respectfully submitted that the amount requested by Houlihan Lokey is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.

50. Per Houlihan Lokey's retention application (Docket No. 1168) and Retention Order, Houlihan Lokey shall be reimbursed by the Debtors for reasonable fees and expenses of Houlihan Lokey's legal counsel in connection with retention matters and payment of all fees and expenses due to Houlihan Lokey. Houlihan Lokey utilized outside legal counsel on the preparation of its first interim fee application and several supplemental affidavits to inform the Court of its retentions in other cases that could be a conflict to this case during the Second Interim Compensation Period.

51. In addition, because the location of the Debtors' businesses in relation to Houlihan Lokey's offices, long distance telephone calls were often required. In some instances, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Houlihan Lokey's overhead. Houlihan Lokey has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Committee.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

52. Houlihan Lokey respectfully submits that the services for which it seeks compensation in the Application were necessary for, and beneficial to, the Committee and that Houlihan Lokey has satisfied the requirements of sections 328(a), 330(a), and 331 of the Bankruptcy Code as set forth in the Retention Order. Houlihan Lokey's requested compensation

is appropriate based on the complexity, importance and nature of the services provided, and is consistent with the customary compensation charged by comparable professionals both in and out of the bankruptcy context.  Houlihan Lokey therefore respectfully requests that the Court grant the relief requested in this Application.

## NO DUPLICATION OF SERVICE

53.    Houlihan Lokey has developed a cooperative working relationship on behalf of the Committee with Milbank as the Committee's counsel and the Committee's financial advisor, FTI.  Because each firm has been aware of the others' role and services to the Committee, Houlihan Lokey believes that no unnecessary duplication of services has occurred.

## NO PRIOR REQUEST

54.    No previous motion for the relief sought herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, Houlihan Lokey respectfully requests the Court enter an order conforming to the amounts set forth in Fee Schedule A(1) attached hereto as Exhibit "D" (a) allowing Houlihan Lokey (i) an interim allowance of compensation for professional services rendered during the Second Interim Compensation Period in the amount of $1,753,333.33, of which $350,666.67 is unpaid, and reimbursement for adjusted actual and necessary expenses Houlihan Lokey incurred during the Second Interim Compensation Period in the amount of $99,265.60, for a total award of $1,852,598.93; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice of Houlihan Lokey's right to seek additional compensation for expenses incurred during the Second Interim Compensation Period which were not processed at the time of this Application and for those expenses reduced due to the Fee Committee guidelines; and (iii) such other and further relief as is just and proper, and (b) authorizing and directing the Debtors to pay Houlihan Lokey $346,833.17, the difference between (i) the $1,852,598.93 and (ii) $1,505,765.78, which is the total amount the Debtors have previously paid Houlihan Lokey pursuant to the Interim Compensation Order for services rendered and expenses incurred.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

Dated: New York, New York
       August 14, 2009

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
Investment Banker to the Official Committee of Unsecured
Creditors


By: _____

    P. Eric Siegert
    Managing Director

245 Park Avenue, 20th Floor
New York, New York  10167
Telephone:      (212) 497-4100
Facsimile:      (212) 661-1070

**EXHIBIT A**

**SIEGERT CERTIFICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**CERTIFICATION UNDER GUIDELINES FOR FEES AND**
**DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF**
**SECOND APPLICATION OF**
**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.,**
**FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, P. Eric Siegert, hereby certify that:

1.      I am a senior managing director with the applicant firm, Houlihan Lokey Howard & Zukin Capital, Inc., ("Houlihan Lokey"), as investment banker for the Official Committee of Unsecured Creditors (the "Committee") for the jointly administered chapter 11 cases of Lehman Brothers Holdings Inc., et. al. (together, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted January 30, 1996 (the "UST Guidelines") and the third amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (Docket No. 4165) (the "Interim Compensation Order," and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines").

2.    This certification is made in respect of Houlihan Lokey's application, dated August 14, 2009, (the "Application"), for interim compensation and reimbursement of expenses for the period commencing February 1, 2009, through and including May 31, 2009, (the "Second Interim Compensation Period") in accordance with the Guidelines.

3.    In respect of section B.1 of the Local Guidelines, I certify that:

(a)    I have read the application;

(b)    To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

(c)    The Application respectfully requests that this Court enter an Order awarding Houlihan Lokey $1,753,333.33 as compensation for services rendered during the Second Interim Compensation Period and $99,265.60[5] as reimbursement of reasonable actual and necessary expenses incurred in connection with such services;

(d)    The fees and disbursement requested in the Application are billed in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients; and

(e)    In providing a reimbursable service, Houlihan Lokey does not make a profit on that service, whether the service is performed by Houlihan Lokey in-house or through a third party.

4.    In respect of section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Houlihan Lokey has provided, on a monthly basis, statements of Houlihan Lokey's fees and disbursements accrued during the previous month, in accordance with the Interim Compensation Order (as defined in the Application), to the Debtors, the Debtors' counsel, the Committee's counsel, the Office of the United States Trustee for the Southern District of New York, and the Fee Committee (as defined in the Application).

---

[5] The expenses sought by the Application reflects a reduction from Houlihan Lokey's actual expenses by approximately $3,833.51 in accordance with the guidelines supplied in the Fee Committee Report. However, Houlihan Lokey reserves the right to seek allowance of all or a portion of such expenses at a future date

5.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the Debtors' counsel, the United States Trustee for the Southern District of New York and the Committee are each being provided a copy of the Application.

Dated: New York, New York
       August 14, 2009

Respectfully submitted,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
Investment Banker to the Official Committee of Unsecured Creditors

By: _____
    P. Eric Siegert
    Senior Managing Director

245 Park Avenue, 20th Floor
New York, New York  10167
Telephone:    (212) 497-4100
Facsimile:    (212) 661-1070

**EXHIBIT B**

Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; and (iv) counsel for the Debtors.

**EXHIBIT C**

Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; and (iv) counsel for the Debtors.

**EXHIBIT D**

SCHEDULE A(1)

CASE NO.:  08-13555 (JMP) (Jointly Administered)

CASE NAME:  IN RE LEHMAN BROTHERS HOLDINGS INC., et al.

| SECOND INTERIM FEE PERIOD FEBRUARY 1, 2009 – MAY 31, 2009 | | | | | | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | DATE/DOCKET NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED (INCLUDING FEES HELD BACK) | FEES HELD BACK | FEES PAYABLE BY DEBTOR | EXPENSES REQUESTED | EXPENSES ALLOWED AND PAYABLE BY DEBTOR |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 8/14/2009 [X] | $1,753,333.33 | $1,753,333.33 | $350,666.67 [20% of $1,753,333.33] | $346,833.17[1] | $99,265.60[2] | $99,265.60 |

| FIRST INTERIM FEE PERIOD SEPTEMBER 17, 2008 – JANUARY 31, 2009 | | | | | | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | DATE/DOCKET NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED (INCLUDING FEES HELD BACK) | FEES HELD BACK | FEES PAYABLE BY DEBTOR | EXPENSES REQUESTED | EXPENSES ALLOWED AND PAYABLE BY DEBTOR |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 4/10/2009 Docket No. 3339 | $2,233,333.33 | $2,010,000.00 | $223,333.33 [10% of $2,233,333.33] | $223,333.33 [10% of $2,233,333.33] | $159,070.80 | $159,070.80 |

---

[1] This figure is the outstanding fees unpaid less the expense adjustments of $3,833.51 per the guidelines of the Fee Committee.
[2] This figure is the adjusted amount of expenses billed and paid of $103,099.11 less the less the expense adjustments of $3,833.51 per the guidelines of the Fee Committee.

1

SO ORDERED: _____