Hearing Date:  To Be Determined
Objection Deadline:  To Be Determined

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                             :      **Chapter 11**
**In re:**                                   :
                                             :      **Case No. 08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :
                                             :      **(Jointly Administered)**
                    **Debtors.**             :
                                             :
------------------------------------------------------------------------x

**SECOND INTERIM APPLICATION OF CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED
<u>FOR THE PERIOD FEBRUARY 1, 2009 THROUGH MAY 31, 2009</u>**

**SUMMARY OF CURRENT FEE APPLICATION**

| | |
|---|---|
| Name of Applicant: | Curtis, Mallet-Prevost, Colt & Mosle LLP |
| Authorized to Provide Professional Services To: | Debtors and Debtors In Possession |
| Retention Date: | November 21, 2008 *nunc pro tunc* to September 26, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | February 1, 2009 through May 31, 2009 |
| Amount of Compensation Requested: | $4,230,132.50 |

6270143

| | |
|---|---|
| Amount of Expense Reimbursement Requested: | $164,681.90 |
| Total Compensation and Expense Reimbursement Requested: | $4,394,814.40 |
| Blended Rate: | $510.31 |

## PRIOR FEE APPLICATION(S)

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| 09/15/08 – 01/31/09 | $4,661,589.50 | $151,402.02 | $4,150,430.55 | $151,402.02 |

### Exhibits to Current Fee Application

The following exhibits are attached hereto and incorporated herein by reference:

Exhibit "A"    Certification Under Guidelines for Fees and Disbursements for Professionals in Respect of Second Interim Application of Curtis, Mallet-Prevost, Colt & Mosle LLP for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses

Exhibit "B"    By-Timekeeper Summary of Hours Devoted and Compensation Sought (includes billing rate and year of admission to practice) for Second Interim Compensation Period

Exhibit "C"    Summary of Expenses for Second Interim Compensation Period

Exhibit "D"    Summary of Hours Devoted and Compensation Sought by Work Task Code for Second Interim Compensation Period

6270143

Hearing Date:  To Be Determined
Objection Deadline:  To Be Determined

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                          :     **Chapter 11**
**In re:**                                                 :
                                                          :     **Case No. 08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*               :
                                                          :     **(Jointly Administered)**
                           **Debtors.**                    :
                                                          :
-------------------------------------------------------------------x

**SECOND INTERIM APPLICATION OF CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED
<u>FOR THE PERIOD FEBRUARY 1, 2009 THROUGH MAY 31, 2009</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Curtis, Mallet-Prevost, Colt & Mosle LLP ("<u>Curtis</u>"), as conflicts counsel for

Lehman Brothers Holdings Inc., and its direct and indirect subsidiaries, as debtors and debtors in

possession (collectively, the "<u>Debtors</u>"), respectfully submits this application (the "<u>Application</u>")

for allowance of interim compensation for professional services rendered for the period February

1, 2009 through and including May 31, 2009 (the "<u>Compensation Period</u>"), and for

6270143

reimbursement of its actual and necessary expenses incurred in connection with such services.
In support of this Application, Curtis respectfully represents as follows:

**SUMMARY OF PROFESSIONAL COMPENSATION AND
REIMBURSEMENT OF EXPENSES REQUESTED**

1.      This Application has been prepared in accordance with the Amended
Guidelines for Fees and Disbursements for Professionals in Southern District of New York
Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United
States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of
Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and
the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code
Establishing Procedures for Interim Compensation and Reimbursement of Expenses of
Professionals entered by the Court on June 25, 2009 (the "Administrative Order," collectively
with the Local Guidelines and UST Guidelines, the "Guidelines").  Pursuant to the Local
Guidelines, a certification regarding compliance with the same is attached hereto as "**Exhibit
A**."[1]

2.      Curtis attorneys and paraprofessionals expended a total of 8,892 hours
representing the Debtors during the Compensation Period for which the firm requests
compensation.  Curtis seeks allowance of interim compensation for services rendered to the
Debtors in the amount of $4,230,132.50, representing 100% of fees incurred during the
Compensation Period, and for reimbursement of $164,681.90, representing 100% of the actual
and necessary expenses incurred during the Compensation Period.[2]

---

[1] As to contested matters, existing litigation, or possible additional litigation to be brought by, or against, the
Debtors, adversary proceedings, and other actions or threatened actions, this Fee Application shall not constitute or
be construed as an admission of any fact or any issue of liability, nor shall it constitute a stipulation, or a waiver, but
rather as statements made without prejudice to the Debtors' rights and interests in these chapter 11 cases.
[2] Curtis has voluntarily reduced the amount of expenses charged during the Compensation Period.  *See infra*, Exhibit
C.

6270143

3.        During the Compensation Period, other than pursuant to the

Administrative Order, Curtis has received no payment and no promises of payment from any

source for services rendered or to be rendered in any capacity whatsoever in connection with the

matters covered in this Application.  There is no agreement or understanding between Curtis and

any other person, other than members of the firm, for the sharing of compensation to be received

for services rendered in these cases.

4.        In accordance with the Administrative Order, Curtis has received

payments totaling $3,549,367.17 for the Compensation Period, which consists of $3,384,106

representing 80% of the fees incurred from February 1, 2009 through May 31, 2009, and

$164,681.90 representing 100% of the expenses incurred during such period.[3]

5.        The fees charged by Curtis in these cases are billed in accordance with

Curtis' existing billing rates and procedures in effect during the Compensation Period.[4]  The

rates Curtis charges for the services rendered by its professionals and paraprofessionals in these

chapter 11 cases are the same rates Curtis charges for professional and paraprofessional services

rendered in non-bankruptcy-related matters.[5]  Such fees are reasonable based on the customary

compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases

in a competitive national legal market.

6.        Pursuant to the UST Guidelines, annexed hereto as "**Exhibit B**" is a

schedule setting forth all Curtis professionals and paraprofessionals who have performed

services in these chapter 11 cases during the Compensation Period, the capacity in which each

such individual is employed by Curtis, the hourly billing rate charged by Curtis for services

---

[3] The original amount of expenses requested by Curtis was $165,261.17.  However, Curtis has voluntarily reduced the amount of expenses charged during the Compensation Period.  *See infra*, Exhibit C.  Thus, Curtis will credit the Debtors for the difference from the holdback on fees.
[4] Daniel R. Lenihan's hourly rate was increased from $675 to $730 on April 1, 2009.
[5] In instances where professionals spent less than one hour working on the Debtors' cases during a month, Curtis has written off the time as a courtesy to the Debtors.

6270143

performed by such individual, the aggregate number of hours expended in these proceedings and fees billed therefor, and, if applicable, the year in which each professional was first licensed to practice law.

7.     Annexed hereto as "**Exhibit C**" is a schedule specifying the categories of expenses for which Curtis is seeking reimbursement, and the total amount for each such expense category.

8.     Pursuant to Section II.D of the UST Guidelines, annexed hereto as "**Exhibit D**" is a summary of Curtis' time records billed during the Compensation Period by project categories.

9.     Curtis maintains computerized records of the time spent by all Curtis attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Subject to redaction for the attorney-client privilege where necessary to protect the Debtors' estates, copies of these computerized records have been furnished to the Court, the attorneys for the official committee of unsecured creditors (the "Creditors' Committee"), the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and the Committee appointed pursuant to the Order Appointing Fee Committee and Approving Fee Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee Committee"), in the format specified by the UST Guidelines.

10.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Curtis reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

11.     Curtis has provided the Debtors, the U.S. Trustee, lead counsel to the Debtors, the Creditors' Committee and the Fee Committee with monthly fee statements for

-4-

professional services rendered and expenses incurred on behalf of the Debtors, along with

detailed reports of time entries and expenses.  Pursuant to such statements, and in accordance

with the Administrative Order, Curtis has requested that the Debtors pay Curtis 80% of its fees

for professional services and 100% of the expenses.  By this Application, Curtis requests the

release of the 20% "holdback" of fees for professional services rendered during the

Compensation Period.[6]

## **BACKGROUND**

12.    Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), the Debtors and certain of its direct and indirect

subsidiaries commenced with this Court voluntary cases for relief under chapter 11 of title 11 of

the United States Code, as amended (the "Bankruptcy Code").  The Debtors are continuing to

operate their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

13.    On September 17, 2008, pursuant to section 1102 of the Bankruptcy Code,

the U.S. Trustee appointed the Creditors' Committee.

14.    On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

15.    On May 27, 2009, the Court entered an order approving the appointment

of the Fee Committee.

---

[6]  The requested release of the holdback for the Compensation Period will not affect the holdback for any subsequent periods.

6270143

## RETENTION OF CURTIS

16.     Curtis was retained by the Debtors as of September 26, 2008 to serve as conflicts counsel for the Debtors.  Among other matters, Curtis is responsible for handling all bankruptcy-, corporate- and litigation-related matters where lead counsel for the Debtors, Weil, Gotshal & Manges LLP ("WGM"), or other counsel for the Debtors has an actual or perceived conflict of interest, and to perform discrete duties as assigned by WGM and other Debtors' counsel that could be handled more efficiently by Curtis.

17.     Pursuant to the Order of the Court, dated November 21, 2008, the Debtors were authorized to retain Curtis as their conflicts counsel to render legal services in the prosecution of their chapter 11 cases.

18.     Since its retention, Curtis has coordinated its efforts with WGM so that their work is complementary and not duplicative.

19.     WGM and Curtis have experience working as debtors' general bankruptcy counsel and conflicts counsel, respectively, for large bankruptcy cases pending before this Court. *See In re Silicon Graphics, Inc., et al.*, Case No. 06-10977 (ALG) (Bankr. S.D.N.Y. 2006) and *In re Parmalat Finanziaria S.p.A., et al.,* Case No. 04-14268 (RDD) (Bankr. S.D.N.Y. 2004).  As a result of these experiences and the continued efforts of WGM and Curtis, the assignment of tasks is being maintained efficiently and with a clear delineation of duties.  In addition, Curtis is presently acting as conflicts counsel in *In re Lear Corporation*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. 2009), *In re Charter Communications, Inc., et al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009), *In re Star Tribune Holdings Corporation*, Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. 2009) and *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 08-14818 (BRL) (Bankr. S.D.N.Y. 2008).

6270143

20.     The work encompassed by this Application for which Curtis seeks
compensation was performed efficiently and at a reasonable cost to the estates.  All of the work
summarized in this Application was performed in a manner to ensure minimal duplication of
services and an effort to keep the administration expenses to a minimum.

## SUMMARY OF SERVICES RENDERED BY
## CURTIS DURING THE COMPENSATION PERIOD

21.     During the Compensation Period, Curtis performed substantial services for
the Debtors.  These services were necessary to effectively administer the chapter 11 cases.

22.     In accordance with the Guidelines and Curtis' internal billing procedures,
Curtis has established separate matter numbers and matter names for distinct project categories
in these chapter 11 cases.  Listed below is a summary, by matter name, of services provided by
Curtis during the Compensation Period:

23.     **Case Administration.**  A total of 321.90 hours of services was performed
and Curtis is seeking allowance of $102,612.50 in fees.  This matter covers a variety of different
services undertaken by Curtis attorneys and paraprofessionals in the general administration of the
Debtors' chapter 11 cases.  Given the scale and complexity of the matters on which Curtis
advises the Debtors, Curtis attorneys and paraprofessionals spent time on case administration in
order to keep informed with respect to the matters on which Curtis is representing the Debtors, as
well as communicate with the conflict-related parties and other stakeholders of the Debtors with
respect to ongoing matters in the Debtors' cases.  To the extent possible, Curtis attorneys and
paraprofessionals billed administrative matters under the appropriate matter, and the amount of
time billed to case administration was necessary to Curtis' smooth and effective administration
of the matters assigned to it in these chapter 11 cases.  Services rendered by Curtis in connection
with this matter included the monitoring of the case docket for pleadings with potential conflict

implications, reviewing and maintaining a case docket of significant pleadings filed with the

Court and keeping a calendar of critical dates in these chapter 11 cases.

24.     **General Corporate Issues.**  A total of 250.90 hours of services was

performed and Curtis is seeking allowance of $121,166 in fees.  This matter corresponds to

general issues handled by Curtis' Corporate department, especially advising the Debtors with

regard to Riopelle Broadway L.P. ("Riopelle").  Riopelle was formed by Lehman in association

with Caisse de dépôt et placement du Québec ("Caisse") and its wholly owned subsidiary CDP

Investissements (together with Caisse, the "Quebec Partners") to acquire from Lehman

Commercial Paper Inc. ("LCPI") approximately $750 million principal amount of certain funded

(approximately $550 million) and unfunded (approximately $200 million) loans of Texas

Competitive Electric Holdings Company LLC.  To finance the purchase and funding of the

underlying loans, Riopelle issued a Senior Variable Funding Note due 2012 in a principal

amount of up to $517 million to LCPI, and Junior Profit-Participating Note due 2012 to the

Quebec Partners, with LCPI holding a nominal (0.1%) junior ownership percentage, and with

U.S. Bank National Association ("U.S. Bank") serving as indenture trustee, and LBI originally

serving as market agent, for the structure.  During the Compensation Period, Curtis has advised

and assisted the Debtors in their negotiations with the Quebec Partners, with the goal being for

LCPI to monetize its position and ultimately recover its investment.  Curtis also assisted WGM

in its negotiations with Counsel to the SIPA Trustee and counsel to U.S. Bank in connection with

LBI's assumption and assignment to LCPI of the market agent agreement with Riopelle and

advised the Debtors regarding certain issues relating to the transfer of a senior note to Caisse in

September 2008.  Curtis advised the Debtors in negotiations which led to the Quebec Partners

posting a cash margin payment that has restored the structure to the required level of

collateralization.

6270143

25.    **Curtis Retention, Fee Applications and Monthly Fee Statements.**  A

total of 292.80 hours of services was performed and Curtis is seeking allowance of $77,468.50 in

fees.  In connection with this matter, Curtis prepared and served its Monthly Fee Statements all

in accordance with the Guidelines.  Tasks included reviewing all expenses, timekeeper entries,

and Fee Statement schedules and tables for accuracy and compliance with the Guidelines.

26.    **Swap Transactions/Terminations/Analysis.**  A total of 20.70 hours of

services was performed and Curtis is seeking allowance of $10,539 in fees.  This matter covers a

multitude of services related to the analysis and resolution of the complex financial instruments

affected by the Debtors' cases, including the review and analysis of ISDA agreements and

synthetic CDO structures.

27.    **Pebble Creek CDO Citibank Matter.**  A total of 149.10 hours of

services was performed and Curtis is seeking allowance of $52,227.50 in fees.  This matter

involves a structured CDO transaction - Pebble Creek LCDO 2007-2, Ltd. ("Pebble Creek") -

concerning Lehman Brothers Special Financing Inc. ("LBSF"), as credit default swap

counterparty, and Citibank, N.A., as indenture trustee.  The issuer in the Pebble Creek

transaction sold tranches of notes to investors and a credit default swap to LBSF, which swap

position was in the money to LBSF.  The swap was purportedly terminated on September 19,

2008.  Citibank therafter redeemed the collateral, consisting of shares in Lehman Brothers ABS

Enhanced LIBOR Fund, liquidating the transaction and distributing the proceeds on or around

October 15, 2008.  Curtis has continued to perform tasks relating to LBSF's position that the

termination of the swap and the liquidation of collateral and distribution of proceeds violated the

terms of the indenture and the credit default swap.  In particular, Citibank failed to seek LBSF's

consent to the liquidation, as expressly required by the indenture, and the distribution resulted in

a $68 million deficiency with respect to LBSF's termination payment under the swap as

6270143

described in a valuation statement voluntarily provided by Citibank. Curtis has prepared a draft position letter in response to a letter from Citibank's counsel, and is drafting court papers in the event they become necessary. The Pebble Creek transaction is part of the same series as 15 other structured CDO transactions being handled by WGM for which U.S. Bank is the indenture trustee and LBSF is the credit default swap counterparty. Accordingly, Curtis professionals have continued to closely coordinate their efforts in the Pebble Creek matter with WGM and Lehman who are involved in ongoing negotiations with the indenture trustee and the noteholders in the U.S. Bank CDO transactions. In the Pebble Creek transaction, Curtis has also analyzed the implications of the fact that LBSF owns the controlling classes of notes in Pebble Creek, which are unfunded.

28. **JPMorgan Chase Matters.** A total of 5,290.80 hours of services was performed and Curtis is seeking allowance of $2,587,795 in fees. During the Compensation Period, Curtis worked on matters related to the various relationships between JPMorgan Chase ("JPMC") and the Debtors, including the analysis of pledges that Lehman provided which collateralize the JPMC entities' claims. To this end, Curtis continued to conduct interviews with a number of the Debtors' current and former employees; continued to review documents provided by JPMC; and drafted a detailed memorandum addressing the Debtors' relationship with JPMC and related matters and coordinated its efforts regarding this matter with other parties in interest, including the Creditors' Committee. Curtis also reviewed and analyzed the transaction documents for the Kingfisher CDO transaction to respond to questions from the Debtors regarding the structure.

29. Additionally, Curtis assisted the Debtors in connection with the potential restructuring of loan facilities for iStar Financial Inc. ("iStar"), in which LCPI is a lender. Curtis reviewed loan documents, as well as the term sheet and other documents outlining the terms of

6270143

the proposed restructuring transaction, engaged in discussions with counsel to the borrower and

the lead arrangers and commenced an adversary proceeding against iStar seeking, *inter alia*, a

declaratory judgment that the proposed restructuring violated the automatic stay.  At a hearing

held on March 5, 2009, the Court determined that the proposed restructuring was not a violation

of the automatic stay.  Thereafter, Curtis advised the Debtors in connection with their decision

not to participate in the restructuring.

30.     **CIFG Matters.**  A total of 35.90 hours of services was performed and

Curtis is seeking an allowance of $13,584.50 in fees.  Curtis attended to matters related to certain

credit default swap transactions between LBSF and affiliates of bond insurer CIFG Guaranty,

including analysis of CIFG-initiated swap terminations to determine the validity of such

terminations, and analysis of a CIFG restructuring and swap commutation transaction.

31.     **Syncora Matters.**  A total of 868 hours of services was performed and

Curtis is seeking an allowance of $486,254 in fees.  This matter designation covers all tasks

related to a proposed restructuring of bond insurer Syncora Holdings, Ltd. ("Syncora") and a

related credit default swap commutation transaction, including working with common counsel to

Syncora credit default swap counterparties with respect to the restructuring and commutation

transaction, and conducting diligence concerning the credit default swap transactions between

LBSF and Syncora affiliates.

32.     **Fenway Matters.**  A total of 6.80 hours of services was performed and

Curtis is seeking an allowance of $3,630.50 in fees.  Curtis performed a preliminary analysis of

the legal documentation constituting the Fenway structured finance transaction, including the

securities issued by the issuer Fenway Capital LLC.

33.     **Racers Matters.**  A total of 20.60 hours of services was performed and

Curtis is seeking an allowance of $6,844.50 in fees.  Curtis performed an analysis of the legal

documentation constituting the Restructured Asset Securities with Enhanced Returns

("RACERS") Series 2007 structured finance transaction, including a review of the securities

issued by the RACERS Series 2007-MM Trust.  Curtis also advised the Debtors on issues

relating to real estate interests included in the collateral pool held by the RACERS Series 2007-A

Trust.

34.    **Pyxis Matters.**  A total of 364.80 hours of services was performed and

Curtis is seeking an allowance of $189,161 in fees.  For this project category, Curtis has

provided services related to PYXIS ABS CDO 2007-1 LTD ("Pyxis"), a CDO transaction.  In

the Pyxis transaction, LBSF is the credit default swap counterparty, and Bank of America, N.A.,

as successor to LaSalle Bank, is indenture trustee.  On October 6, 2008, the indenture trustee,

after having previously declared (i) an event of default under the indenture, (ii) an acceleration of

the maturity of the notes, and (iii) an early termination date under the credit default swap,

distributed approximately $386 million from the Reserve Account to the noteholders, and

cancelled the remaining unfunded commitment of the holder of the Class A-1 Notes, Canadian

Imperial Bank of Commerce ("CIBC").  Curtis has continued to perform tasks relating to

LBSF's position that the indenture trustee's termination of the credit default swap and any

liquidation of collateral or  distribution of proceeds by the indenture trustee are in violation of the

terms of the indenture and the swap, the automatic stay and the prohibition on *ipso facto* clauses

under the Bankruptcy Code.  Curtis has continued to work closely with WGM and Lehman to

coordinate negotiation and litigation strategies in the Pyxis transaction with those in the other

CDO transactions being handled for the Debtors by WGM.

35.    **Pine, Spruce and Verano Matters.**  A total of 9.30 hours of services was

performed and Curtis is seeking an allowance of $4,643.50 in fees.  Curtis performed

preliminary analysis of the legal documentation constituting the Pine, Spruce and Verano

6270143

structured finance transactions, including securities issued by issuers Pine CCS, Ltd., Spruce CCS, Ltd. and Verano CCS, Ltd.

36.    **CEAGO Matters.**  A total of 104.60 hours of services was performed and Curtis is seeking an allowance of $57,061.50 in fees.  Curtis performed a variety of tasks related to CEAGO ABS CDO 2007-1, Ltd., in which LBSF is a counterparty to a credit default swap and a total return swap with the CDO, and for which Bank of America, N.A., as successor to LaSalle Bank, is indenture trustee.  The tasks performed by Curtis included advising LBSF with respect to certain segregated collateral held by the CDO to which LBSF is entitled, and analyzing LBSF's rights in the event of a liquidation.

37.    **Bankruptcy Litigation.**  A total of 1,125.30 hours of services was performed and Curtis is seeking an allowance of $501,326.50 in fees.  During the Compensation Period, Curtis provided services primarily with respect to disputes involving GE Corporate Financial Services, Inc. ("GECFS").  In connection with this matter, Curtis advised the Debtors in disputes under loan purchase agreements between LCPI and Fusion Funding Limited ("Fusion") and Fusion Funding Luxembourg S.A.R.L. ("Fusion Luxembourg" and, together with Fusion, the "Fusion Entities"), and a loan participation agreement between Lehman Brothers Bankhaus AG and Fusion Luxembourg.  The Fusion Entities are special-purpose vehicles whose purchases were financed almost exclusively from a secured credit facility provided by General Electric Capital Corporation ("GE Capital" and, together with GECFS, the "GE Entities"), with GECFS acting as the loan servicer for the Fusion Entities.  The Debtors and the GE Entities filed various motions and objections in Bankruptcy Court relating to the disputes.  Curtis has advised the Debtors in negotiations with the GE Entities, developing positions in response and opposition to the GE Entities' contentions.  At the same time, Curtis has negotiated with counsel for the GE Entities to reach agreement on a series of adjournments of the hearing date for the parties'

-13-

respective motions and objections. Curtis has coordinated its efforts with respect to these matters with the legal and financial advisors to the Creditors' Committee, including their review and evaluation of the current settlement proposal.

38.    **Non-Bankruptcy Litigation.**  A total of .50 hours of services was performed and Curtis is seeking an allowance of $95 in fees.  Early in the chapter 11 cases, Curtis attended state court hearings on an emergency basis and filed Notices of Bankruptcy Filing in response to the numerous lawsuits brought for the purpose of attaching one or more bank accounts of Lehman entities or otherwise enjoining various Lehman entities from disposing of deposit accounts.  During this Compensation Period, Curtis attended to ministerial acts related to these lawsuits.

39.    **Hearings and Court Matters.**  A total of 30 hours of services was performed and Curtis is seeking an allowance of $15,723 in fees.  This matter encompasses all hearings and court appearances other than those specific to any of the aforementioned project categories.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

40.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  *See* 11 U.S.C. § 331.  The awarding of interim compensation should be based on the circumstances of the particular case.  *In re Nana Daly's Pub., Ltd.*, 67 B.R. 782, 787 (Bankr. E.D.N.Y. 1986).

41.    Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  The Court has broad discretion in determining whether to allow

-14-

6270143

compensation and determining the amount of compensation. *In re Nine Assocs., Inc.*, 76 B.R.

943, 944 (Bankr. S.D.N.Y. 1987).

        42.      Section 330 of the Bankruptcy Code also sets forth the criteria for the

award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration
> of, or beneficial at the time at which the service was
> rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
>
> (E)    whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

        43.      Courts within the Second Circuit have employed the "lodestar approach"

for calculating judicial awards of compensation to attorneys. The lodestar approach was

articulated by the Second Circuit in *New York State Ass'n for Retarded Children, Inc. v. Carey*,

711 F.2d 1136 (2d Cir. 1983). The lodestar method of determining reasonable compensation

involves multiplying the hours spent on a case, based on attorney time records, by a reasonable

hourly rate of compensation for each attorney based on prevailing market rates for private law

firms performing services for non-governmental clients. *In re McLean Industries, Inc.*, 88 B.R.

36, 39 (Bankr. S.D.N.Y. 1988). Once calculated, this lodestar figure may be adjusted upward or

downward to take into account the facts of the particular case. *In re Baldwin United Corp.*, 79 B.R. 321, 347 (Bankr. S.D. Ohio 1987). Factors regarding the difficulty, complexity and contingent nature of the case may thereafter be employed to arrive at a reasonable and just compensation in excess of the lodestar figure. *In re Stable Mews Assocs.*, 49 B.R. 395, 398 (Bankr. S.D.N.Y. 1985); *In re Chriss*, 38 B.R. 655, 657 (Bankr. S.D.N.Y. 1984).

44.    In the instant case, Curtis respectfully submits that the services for which it seeks compensation in this Application meet or exceed the standards set forth in section 330 of the Bankruptcy Code and applied by bankruptcy courts in this Circuit to determine the reasonableness of professional fees sought from a debtor's estate. Curtis also respectfully submits that the services provided to the Debtors during the Compensation Period were necessary and beneficial to the Debtors' efforts to maximize the value of their estates. The professional services that Curtis rendered were focused on pursuing an efficient reorganization and/or liquidation of the Debtors' businesses that maximizes the value of the estates and recovery to creditors. Except as otherwise set forth herein, Curtis' rates charged to the Debtors are identical to the rates charged by Curtis for comparable services in a non-chapter 11 context. Such services were not only necessary to benefit the Debtors' estates, but also to enhance potential recovery to creditors. Accordingly, Curtis further submits that the compensation requested herein is reasonable and warranted in light of the nature, extent and value of such services to the Debtors, their estates and all parties in interest.

**FEES AND ACTUAL AND NECESSARY DISBURSEMENTS OF CURTIS**

45.    Curtis devoted 8,892 hours of actual recorded time during the Compensation Period resulting in time charges of $4,230,132.50. The amount of $709,873.43[7] remains unpaid as of the date of this Application. By this Application, Curtis also requests

---

[7] This amount reflects the 20% holdback from February 2009, March 2009, April 2009 and May 2009.

release of the remaining 10% holdback from the First Interim Compensation Period, subject to reduction in accordance with the recommendation of the Fee Committee.

46.     Throughout the Compensation Period, Curtis sought to assign projects in this case to partners, associates and paraprofessionals who could most efficiently and expeditiously handle the tasks at hand.  Curtis respectfully submits that the legal services reflected in this Application are fair and reasonable and are commensurate with the quality of services provided herein.  The blended rate for services performed by Curtis during the Compensation Period is $510.31.

47.     In addition to the fees sought for legal services, Curtis has incurred $164,681.90 in out-of-pocket expenses and disbursements during the Compensation Period directly attributable to the representation of the Debtors.

48.     No part of the compensation to be received pursuant to this Application will be shared with any other person or firm, and no other agreements, either express or implied, to share any compensation received as attorneys for the Debtors has been, or will be, made by Curtis.

## NOTICE

49.     A copy of this Application has been presented to:  (i) the Debtors; (ii) lead bankruptcy counsel for the Debtors; (iii) counsel for the Creditors' Committee; (iv) the U.S. Trustee; and (v) the Fee Committee.

6270143

## CONCLUSION

**WHEREFORE**, Curtis respectfully requests that this Application be granted and

that it be awarded an allowance of $4,230,132.50 for legal services rendered to the Debtors

during the Compensation Period, and $164,681.90 for reimbursement of expenses, and that the

Debtors be allowed to pay such amounts to the extent not previously paid, together with such

other and further relief be granted as may be just and proper.

Dated:     August 14, 2009                    Respectfully submitted,
           New York, New York

                                              **CURTIS, MALLET-PREVOST,**
                                              **COLT & MOSLE LLP**

                                              By:  /s/ *Steven J. Reisman*
                                                   Steven J. Reisman
                                                   L. P. Harrison 3rd
                                                   Cindi M. Eilbott
                                              101 Park Avenue
                                              New York, NY  10178-0061
                                              Telephone:  (212) 696-6000
                                              Facsimile:  (212) 697-1559

                                              *Conflicts Counsel for the Debtors and*
                                               *Debtors in Possession*

6270143

**EXHIBIT A**

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  212) 696-6000
Facsimile  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott

*Conflicts Counsel for the Debtors*
  *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | |

-----------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF SECOND INTERIM APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

I, L. P. Harrison 3rd, hereby certify that:

1.       I am a partner with the applicant firm, Curtis, Mallet-Prevost, Colt &

Mosle LLP ("Curtis"), with primary responsibility for the chapter 11 cases of Lehman Brothers

Holdings Inc., and its direct and indirect subsidiaries, as debtors and debtors in possession

(collectively, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees

and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee

6270143

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Third

Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the

"Administrative Order," collectively with the Local Guidelines and UST Guidelines, the

"Guidelines").

        2.      This certification is made in respect of Curtis' application, dated August

14, 2009 (the "Application"), for interim compensation and reimbursement of expenses for the

period commencing February 1, 2009, through and including May 31, 2009 (the "Compensation

Period") in accordance with the Guidelines.

        3.      In respect of section B.1 of the Local Guidelines, I certify that:

- I have read the Application;

- to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

- the fees and disbursements sought are billed at rates in accordance with practices customarily employed by Curtis and generally accepted by Curtis' clients; and

- in providing a reimbursable service, Curtis does not make a profit on that service, whether the service is performed by Curtis in house or through a third party.

        4.      In respect of section B.2 of the Local Guidelines, I certify that Curtis has

complied with these provisions requiring it to provide the Debtors, counsel for the statutory

committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), the

United States Trustee for the Southern District of New York (the "U.S. Trustee") and the

Committee appointed pursuant to the Order Appointing Fee Committee and Approving Fee

6270143

Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee Committee") with, on a monthly

basis, a statement of Curtis' fees and disbursements accrued during the previous month.

     5.     In respect of section B.3 of the Local Guidelines, I certify that the Debtors,

counsel for the Creditors' Committee, lead bankruptcy counsel for the Debtors and the U.S.

Trustee are each being provided with a copy of the Application.

Dated:    New York, New York
          August 14, 2009

                             /s/ *L. P. Harrison 3rd*
                               L. P. Harrison 3rd

6270143

**EXHIBIT B**

**SUMMARY OF SECOND INTERIM FEE APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR SERVICES RENDERED FOR THE PERIOD FEBRUARY 1, 2009 TO MAY 31, 2009[1]**

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED[2] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | | | |
| **PARTNERS** | | | | |
| Joseph D. Pizzurro | L – 1977 | $785 | 79.20 | $62,172.00 |
| Steven J. Reisman | RIG – 1991 | $785 | 33.30 | $26,140.50 |
| David Bayrock | C – 1995 | $730 | 407.00 | $297,110.00 |
| Eduardo A. Cukier | T – 1990 | $730 | 2.20 | $1,606.00 |
| L. P. Harrison 3rd | RIG – 1984 | $730 | 630.00 | $459,900.00 |
| Michael J. Moscato | L – 1982 | $730 | 240.50 | $175,565.00 |
| Turner P. Smith | L – 1980 | $730 | 208.80 | $152,424.00 |
| Nancy E. Delaney | L - 1989 | $675 | 355.60 | $240,030.00 |
| Daniel R. Lenihan | C - 1982 | $675[3] | 145.50 | $101,947.00 |
| Thomas Mackay | London Office | $675 | 129.00 | $87,075.00 |
| Andrew H. Seiden | C - 1993 | $675 | 388.10 | $261,967.50 |
| Marc Kramer | Frankfurt Office | $595 | 5.40 | $3,213.00 |
| **TOTAL PARTNERS** | | | **2,624.60** | **$1,869,150.00** |
| | | | | |
| **COUNSEL** | | | | |
| Myles K. Bartley | L - 1999 | $595 | 109.40 | $65,093.00 |
| Jerrold Bregman | RIG - 2003 | $595 | 82.90 | $49,325.50 |
| Susan F. Pollack | C - 1967 | $595 | 273.70 | $162,851.50 |
| Marjena Fidalgo-Sokalski | London Office | $595 | 248.40 | $147,798.00 |
| **TOTAL COUNSEL** | | | **714.40** | **$425,068.00** |
| | | | | |
| **ASSOCIATES** | | | | |
| James V. Drew | RIG - 2002 | $575 | 49.40 | $28,405.00 |
| Timothy McCabe | L - 2002 | $575 | 5.30 | $3,047.50 |
| Shannon McNulty | L - 2003 | $575 | 7.70 | $4,427.50 |
| Susana M. Namnun | C - 1996 | $575 | 366.80 | $210,910.00 |
| Peter von zur Gathen | C - 1996 | $575 | 170.00 | $97,750.00 |
| Loytavian Harrell | C - 2007 | $495 | 6.10 | $3,019.50 |
| Peter J. Behmke | L - 2005 | $455 | 208.60 | $94,913.00 |
| Karen Brice | C - 2005 | $455 | 22.30 | $10,146.50 |
| Benjamin Lowin | C - 2006 | $455 | 198.50 | $90,317.50 |
| Andrew Zinman | L - 1996 | $455 | 33.90 | $15,424.50 |
| Danny Phillips | C - 2006 | $415 | 8.50 | $3,527.50 |
| Priya Swaminathan | L - 2007 | $415 | 417.30 | $173,179.50 |
| John Balzano | L - 2006 | $375 | 8.80 | $3,300.00 |

---

[1] In instances where professionals spent less than one hour working on the Debtors' cases during a month, Curtis has written off the time as a courtesy to the Debtors.

[2] C – Corporate; L – Litigation; RE – Real Estate; RIG – Restructuring and Insolvency Group; T – Tax; *- Not yet admitted to the Bar.

[3] Daniel R. Lenihan's hourly rate was increased from $675 to $730 on April 1, 2009.

6270143

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Mark Bernstein | RIG - 2000 | $375 | 1.90 | $712.50 |
| Cindi M. Eilbott | RIG - 2007 | $375 | 590.80 | $221,550.00 |
| Thea Handelman | T - 2008 | $375 | 1.70 | $637.50 |
| Veronique Hodeau | RIG - 2007 | $375 | 68.50 | $25,687.50 |
| Katherine M. Smith | L - 2007 | $375 | 63.90 | $23,962.50 |
| Tobias Roettger | Frankfurt Office | $365 | 5.60 | $2,044.00 |
| Julie W. Arkush | L - 2008 | $335 | 476.50 | $159,627.50 |
| Louisa Fennell | L - 2008 | $335 | 13.50 | $4,522.50 |
| Nicholas James | RIG - 2008 | $335 | 8.00 | $2,680.00 |
| Benjamin Johnson | C - 2008 | $335 | 112.80 | $37,788.00 |
| Christina Manthei | RIG - 2008 | $335 | 160.20 | $53,667.00 |
| Stefano de Stefano | C - 2008 | $335 | 267.80 | $89,713.00 |
| Catinca Tabacaru | L - 2008 | $335 | 32.90 | $11,021.50 |
| H. Michael Zografakis | C - 2008 | $335 | 31.80 | $10,653.00 |
| Chrysoula Kounoupa | London Office | $320 | 84.00 | $26,880.00 |
| Dienna Ching | RIG - 2009 | $290 | 276.80 | $80,272.00 |
| Steven Gibbs | L - * | $290 | 16.70 | $4,843.00 |
| Chelsea McLean | L - * | $290 | 11.20 | $3,136.00 |
| Shafiq Perry | C - 2009 | $290 | 541.10 | $156,919.00 |
| Naomi Reinharz | L - 2009 | $290 | 55.20 | $16,008.00 |
| Brian White | L - 2009 | $290 | 23.10 | $6,699.00 |
| Derek Tokaz | C - * | $280 | 82.80 | $23,184.00 |
| Christina Tretter-Herriger | C - * | $280 | 47.60 | $13,328.00 |
| Alia Dajani | London Office | $250 | 13.00 | $3,250.00 |
| Yulia Egorova | London Office | $250 | 44.50 | $11,125.00 |
| Adam Hendry | London Office | $250 | 16.30 | $4,075.00 |
| **TOTAL ASSOCIATES** | | | **4,551.40** | **$1,732,353.50** |
| | | | | |
| **CLERKS/PARAPROFESSIONALS** | | | | |
| Neal Goodman | L | $250 | 108.30 | $27,075.00 |
| Sarah Regh | C | $250 | 145.20 | $36,300.00 |
| Susan Kindya-Culley | L | $200 | 1.60 | $320.00 |
| Samuel Coe | RIG | $190 | 15.40 | $2,926.00 |
| Jed Cohen | RIG | $190 | 228.20 | $43,358.00 |
| Ramon Miyar | RIG | $190 | 329.60 | $62,624.00 |
| Laura Raposo | RIG | $190 | 5.70 | $1,083.00 |
| Jerome Tufte | RIG | $190 | 4.70 | $893.00 |
| Julio Velazquez | L | $190 | 64.90 | $12,331.00 |
| Olivia Dana | L | $180 | 31.40 | $5,652.00 |
| Roman Vengerovskiy | C | $170 | 2.00 | $340.00 |
| Michael Malavarca | L | $165 | 64.60 | $10,659.00 |
| **TOTAL CLERKS/PARAPROFESSIONALS** | | | **1,001.60** | **$203,561.00** |

6270143

| TOTALS | | | |
|---|---|---|---|
| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
| Partners | $712 | 2,624.60 | $1,869,150.00 |
| Counsel | $595 | 714.40 | $425,068.00 |
| Associates | $381 | 4,551.40 | $1,732,353.50 |
| Clerks/Paraprofessionals | $203 | 1,001.60 | $203,561.00 |
| **TOTAL FEES INCURRED** | | **8,892.00** | **$4,230,132.50** |
| | | | |
| **TOTAL FEES REQUESTED** | | **8,892.00** | **$4,230,132.50** |

6270143

## EXHIBIT C

## EXPENSE SUMMARY FOR CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
## FOR THE SECOND INTERIM COMPENSATION PERIOD FROM
## FEBRUARY 1, 2009 THROUGH MAY 31, 2009[1]

| DESCRIPTION | AMOUNT |
|---|---|
| Corporate Search Fees | $       49.10 |
| Courier | 709.44 |
| Deposition Reporting/Transcripts | 748.05 |
| Duplicating | 11,468.30 |
| Filing Fees | 523.00 |
| Lexis/Westlaw | 101,280.06 |
| Litigation Printing | 4,776.25 |
| Long Distance Telephone | 1,354.86 |
| Meals Expense | 3,434.44[2] |
| Overtime | 188.13 |
| Pacer – ECF | 1,231.12 |
| Postage | 5.74 |
| Telefax Expense | 5.72 |
| Telephone Audio Conference | 2,922.65 |
| Transportation Expense | 2,949.24[3] |
| Travel | 517.22 |
| Word Processing | 32,518.58 |
| **TOTAL:** | **$  164,681.90** |

---

[1] All disbursements are billed in accordance with the Guidelines.
[2] Curtis has voluntarily discounted Meals Expenses by $461.22 in accordance with the Guidelines.
[3] Curtis has voluntarily discounted Transportation Expenses by $118.05 in accordance with the Guidelines.

## EXHIBIT D

### COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR THE SECOND INTERIM COMPENSATION PERIOD FEBRUARY 1, 2009 THROUGH MAY 31, 2009

| WORK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| Matter No. 100 | Case Administration | 321.90 | $  102,612.50 |
| Matter No. 200 | General Corporate Matters | 250.90 | 121,166.00 |
| Matter No. 300 | Curtis Retention/Billing/Fee Application | 292.80 | 77,468.50 |
| Matter No. 400 | Swap Transactions/Terminations/Analysis/ | 20.70 | 10,539.00 |
| Matter No. 410 | U.S. Bank Matters | 149.10 | 52,227.50 |
| Matter No. 420 | JPMorgan Chase Matters | 5,290.80 | 2,587,795.00 |
| Matter No. 430 | CIFG Matters | 35.90 | 13,584.50 |
| Matter No. 440 | Syncora Matters | 868.00 | 486,254.00 |
| Matter No. 450 | Fenway Matters | 6.80 | 3,630.50 |
| Matter No. 460 | Racers Matters | 20.60 | 6,844.50 |
| Matter No. 480 | Pyxis Matters | 364.80 | 189,161.00 |
| Matter No. 490 | Pine, Spruce and Verano Matters | 9.30 | 4,643.50 |
| Matter No. 510 | CEAGO Matters | 104.60 | 57,061.50 |
| Matter No. 700 | Bankruptcy Litigation | 1,125.30 | 501,326.50 |
| Matter No. 800 | Non-Bankruptcy Litigation | 0.50 | 95.00 |
| Matter No. 1200 | Hearings and Court Matters | 30.00 | 15,723.00 |
| **TOTAL** | | **8,892.00** | **$4,230,132.50** |