WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                          :
**In re**                                 :        **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :    **08-13555 (JMP)**
                                          :
                        **Debtors.**      :        **(Jointly Administered)**
                                          :
-----------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**SECOND INTERIM FEE APPLICATION**

Name of Applicant:        **Weil, Gotshal & Manges LLP**

Time Period:              February 1, 2009 through and including May 31, 2009

Role in the Case:         Attorneys for the Debtors and Debtors in Possession

Current Application:      Total Fees Requested:  $45,227,832.25
                          Total Expenses Requested:  $1,234,783.60

Prior Applications:       First Interim Fee Application, filed April 13, 2009  [Docket No. 3343]
                          First Interim Compensation Period: September 15, 2008 through and
                          including January 31, 2009

                          Total Fees Allowed:  $49,626,712.13
                          Total Expenses Allowed:  $1,336,880.60
                          Hold Back: $5,514,079.12

## SUMMARY SHEET FOR THE SECOND INTERIM FEE
## APPLICATION OF WEIL, GOTSHAL & MANGES LLP (continued)

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| E. Norman Veasey | C | 1958 | $950.00 | 8.60 | $8,170.00 |
| Harvey R. Miller | BFR | 1959 | $950.00 | 235.90 | $224,105.00 |
| Peter Gruenberger | L | 1961 | $950.00 | 175.40 | $166,630.00 |
| Peter Gruenberger | L | 1961 | $850.00 | 3.30 | $2,805.00 |
| Barry Frank | C | 1967 | $810.00 | 52.80 | $42,768.00 |
| Gilbert Friedlander | C | 1968 | $875.00 | 52.40 | $45,850.00 |
| Richard J. Davis | L | 1970 | $900.00 | 89.50 | $80,550.00 |
| Richard P. Krasnow | BFR | 1972 | $950.00 | 590.20 | $560,690.00 |
| Ralph I. Miller | L | 1972 | $900.00 | 410.80 | $363,105.00 |
| Joseph H. Newberg | T | 1972 | $900.00 | 67.10 | $60,390.00 |
| Thomas A. Roberts | C | 1973 | $950.00 | 71.90 | $68,305.00 |
| Ray Guy | L | 1976 | $850.00 | 37.00 | $30,812.50 |
| Howard B. Comet | L | 1976 | $825.00 | 75.40 | $62,205.00 |
| Glenn D. West | C | 1978 | $950.00 | 23.00 | $21,850.00 |
| Richard A. Rothman | L | 1978 | $925.00 | 254.00 | $234,950.00 |
| Rupert J. Jones | C | 1978 | $885.00 | 5.90 | $5,221.50 |
| Edward Soto | L | 1978 | $875.00 | 414.60 | $362,775.00 |
| Marsha E. Simms | C | 1978 | $860.00 | 24.30 | $20,898.00 |
| Elaine Stangland | C | 1978 | $860.00 | 11.00 | $9,460.00 |
| Robert L. Messineo | C | 1979 | $925.00 | 469.00 | $433,131.25 |
| Peter D. Isakoff | L | 1979 | $860.00 | 155.30 | $133,558.00 |
| David I. Bower | T | 1979 | $790.00 | 13.20 | $10,428.00 |
| W. Michael Bond | C | 1980 | $925.00 | 656.20 | $606,985.00 |
| Alfredo R. Perez | BFR | 1980 | $900.00 | 133.80 | $120,420.00 |
| Michael Francies | C | 1981 | $1,005.00 | 173.20 | $174,066.00 |
| Catherine T. Dixon | C | 1982 | $950.00 | 7.10 | $6,745.00 |
| Michael A. Saslaw | C | 1983 | $850.00 | 9.80 | $8,330.00 |
| Jacqueline Marcus | BFR | 1983 | $810.00 | 365.50 | $296,055.00 |
| Donald R. Whittaker | C | 1983 | $670.00 | 18.20 | $12,194.00 |
| Lori R. Fife | BFR | 1984 | $925.00 | 597.00 | $552,225.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Stuart J. Goldring | T | 1984 | $900.00 | 106.40 | $95,760.00 |
| Richard A. Morrison | C | 1984 | $850.00 | 889.10 | $755,735.00 |
| Richard L. Levine | L | 1984 | $850.00 | 82.40 | $70,040.00 |
| Daniel J. Mette | C | 1984 | $825.00 | 372.50 | $307,312.50 |
| Lawrence J. Baer | L | 1984 | $700.00 | 20.50 | $14,350.00 |
| Jonathan D. Polkes | L | 1985 | $950.00 | 361.40 | $343,330.00 |
| Conrad G. Bahlke | C | 1985 | $790.00 | 275.00 | $217,250.00 |
| Walter E. Zalenski | L | 1985 | $790.00 | 81.60 | $64,464.00 |
| Andrew N. Norwood | C | 1986 | $1,005.00 | 291.10 | $292,555.50 |
| Andrew L. Gaines | T | 1987 | $900.00 | 110.60 | $99,540.00 |
| Michael K. Kam | T | 1987 | $875.00 | 155.80 | $136,325.00 |
| Richard W. Slack | L | 1987 | $850.00 | 199.30 | $169,405.00 |
| Bruce S. Meyer | L | 1987 | $850.00 | 35.50 | $30,175.00 |
| Holly J. Gregory | C | 1987 | $810.00 | 13.10 | $10,611.00 |
| Kenneth E. Schiff | C | 1988 | $970.00 | 382.20 | $370,734.00 |
| Larry J. Gelbfish | T | 1988 | $850.00 | 44.30 | $37,655.00 |
| Paul T. Cohn | C | 1988 | $825.00 | 398.90 | $329,092.50 |
| Jeffrey B. Hitt | C | 1988 | $810.00 | 98.30 | $79,623.00 |
| Samuel M. Zylberberg | C | 1988 | $790.00 | 10.00 | $7,900.00 |
| Annemargaret Connolly | C | 1988 | $790.00 | 7.10 | $5,609.00 |
| David S. Dederick | C | 1988 | $515.00 | 5.50 | $2,832.50 |
| Frank P. Nocco | C | 1989 | $875.00 | 371.90 | $325,412.50 |
| Eric J. Peterman | C | 1989 | $850.00 | 356.80 | $302,812.50 |
| John J. Dedyo | C | 1989 | $850.00 | 35.40 | $30,090.00 |
| Miranda S. Schiller | L | 1989 | $825.00 | 51.20 | $42,240.00 |
| Nellie P. Camerik | C | 1989 | $790.00 | 532.90 | $416,053.50 |
| Nicholas J. Pappas | L | 1989 | $790.00 | 8.50 | $6,715.00 |
| Vernon S. Broderick | L | 1989 | $740.00 | 138.60 | $102,564.00 |
| Paul A. Ferrillo | L | 1989 | $700.00 | 45.70 | $30,660.00 |
| Barry Fishley | C | 1990 | $930.00 | 240.80 | $223,944.00 |
| Joanne Etherton | T | 1990 | $930.00 | 15.50 | $14,415.00 |
| Howard B. Dicker | C | 1990 | $850.00 | 19.30 | $16,405.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Douglas R. Urquhart | C | 1990 | $825.00 | 5.30 | $4,372.50 |
| Andrew J. Colao | C | 1990 | $790.00 | 47.90 | $37,841.00 |
| Anthony Horspool | BFR | 1991 | $1,005.00 | 185.00 | $185,925.00 |
| Jacky Kelly | C | 1991 | $1,005.00 | 64.80 | $65,124.00 |
| Steven K. Ong | C | 1991 | $930.00 | 317.70 | $295,461.00 |
| Robert N. Chiperfield | C | 1991 | $850.00 | 454.70 | $386,495.00 |
| Michael E. Lubowitz | C | 1991 | $850.00 | 375.70 | $319,345.00 |
| Craig W. Adas | C | 1991 | $825.00 | 6.70 | $5,527.50 |
| Elizabeth H. Evans | C | 1991 | $810.00 | 302.00 | $244,620.00 |
| Christopher R. Pace | L | 1991 | $800.00 | 158.60 | $126,880.00 |
| Jürgen Börst | T | 1991 | $745.00 | 54.60 | $40,677.00 |
| Diane Harvey | L | 1992 | $790.00 | 396.40 | $313,156.00 |
| Michele J. Meises | BFR | 1992 | $650.00 | 18.90 | $12,285.00 |
| Rodney D. Miller | C | 1993 | $810.00 | 99.40 | $80,514.00 |
| Sarah Priestley | T | 1994 | $1,005.00 | 14.20 | $14,271.00 |
| Stephane Chaouat | T | 1994 | $845.00 | 7.00 | $5,915.00 |
| Beatriz Azcuy-Diaz | C | 1994 | $725.00 | 213.10 | $154,497.50 |
| Pierre Agyeman | C | 1995 | $930.00 | 154.20 | $143,406.00 |
| Peter Van Keulen | L | 1995 | $885.00 | 185.40 | $162,618.75 |
| Michael J. Aiello | C | 1995 | $850.00 | 7.10 | $6,035.00 |
| Y. S. Grossman | C | 1995 | $790.00 | 376.80 | $297,672.00 |
| Uwe Hartmann | C | 1995 | $745.00 | 126.60 | $94,317.00 |
| Philippe Druon | BFR | 1996 | $845.00 | 8.10 | $6,844.50 |
| Emmanuel Ringeval | C | 1996 | $845.00 | 6.00 | $5,070.00 |
| Jeffrey D. Osterman | C | 1996 | $790.00 | 140.80 | $111,232.00 |
| David Meredith | C | 1996 | $750.00 | 56.60 | $42,450.00 |
| Matthew Shankland | L | 1997 | $1,005.00 | 162.40 | $163,212.00 |
| Jane E. McDonald | C | 1997 | $900.00 | 318.90 | $287,010.00 |
| Shai Y. Waisman | BFR | 1997 | $775.00 | 630.80 | $488,870.00 |
| Anthony J. Albanese | L | 1997 | $760.00 | 172.40 | $131,024.00 |
| John A. Neuwirth | L | 1997 | $760.00 | 21.60 | $16,416.00 |
| Robert Frastai | T | 1997 | $740.00 | 421.70 | $312,058.00 |

_____
* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jean Beauchataud | C | 1998 | $845.00 | 6.00 | $5,070.00 |
| Jason A. Smith | C | 1998 | $760.00 | 27.50 | $20,900.00 |
| Britta Grauke | L | 1998 | $745.00 | 48.80 | $36,356.00 |
| David R. Fertig | L | 1998 | $725.00 | 579.50 | $420,137.50 |
| Scott M. Sontag | T | 1998 | $725.00 | 42.00 | $30,450.00 |
| Benjamin E. Marks | L | 1998 | $725.00 | 11.90 | $8,627.50 |
| Heather L. Emmel | C | 1998 | $650.00 | 8.50 | $5,525.00 |
| Arnold Buessemaker | C | 1999 | $815.00 | 520.60 | $407,581.50 |
| Randi W. Singer | L | 1999 | $725.00 | 23.00 | $16,675.00 |
| Nancy E. Lynch | C | 1999 | $650.00 | 387.50 | $251,875.00 |
| David P. Murgio | C | 2000 | $650.00 | 652.60 | $424,190.00 |
| Caitlin J. Halligan | L | 2001 | $800.00 | 6.80 | $5,440.00 |
| Robert J. Lemons | BFR | 2001 | $725.00 | 364.90 | $264,552.50 |
| William A. Burck | L | 2001 | $700.00 | 32.00 | $22,400.00 |
| Stanley Ramsay | T | 2001 | $700.00 | 15.70 | $10,990.00 |
| **Total Partners** | | | | **19,197.30** | **$16,169,199.50** |

---

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christine Howard | L | 1975 | $560.00 | 53.30 | $29,848.00 |
| Carole K. Ganguzza | C | 1982 | $640.00 | 120.10 | $76,864.00 |
| Richard I. Ellenbogen | C | 1985 | $590.00 | 30.30 | $17,877.00 |
| Alan R. Kusinitz | L | 1986 | $640.00 | 228.60 | $146,304.00 |
| Sally Willcock | L | 1989 | $775.00 | 14.50 | $11,237.50 |
| Roshelle A. Nagar | C | 1989 | $640.00 | 19.60 | $12,544.00 |
| John Butenas | C | 1991 | $600.00 | 157.40 | $94,440.00 |
| Ariel Kronman | C | 1993 | $540.00 | 730.00 | $393,903.00 |
| Helen Jiang | C | 1994 | $500.00 | 6.80 | $3,400.00 |
| Leslie S. Smith | C | 1995 | $640.00 | 106.90 | $68,416.00 |
| Meredith Parenti | L | 1996 | $640.00 | 119.50 | $76,480.00 |
| Elizabeth A. Martialay | C | 1996 | $580.00 | 160.00 | $92,481.00 |
| Laura S. Mello | L | 1996 | $250.00 | 81.00 | $20,250.00 |
| Scarlett E. Collings | L | 1997 | $640.00 | 633.90 | $400,736.00 |
| Melanie P. Sarwal | L | 1998 | $640.00 | 136.40 | $87,296.00 |
| Stella V. Belvisi | C | 1998 | $640.00 | 104.30 | $66,752.00 |
| Konstantin Hoppe | C | 1998 | $620.00 | 83.90 | $52,018.00 |
| JoLee Adamich | C | 1998 | $580.00 | 32.30 | $18,734.00 |
| Olaf Benning | C | 1998 | $545.00 | 31.80 | $17,331.00 |
| Melissa Meyrowitz | C | 1999 | $640.00 | 7.10 | $4,544.00 |
| Eugene J. Ng | C | 1999 | $580.00 | 164.20 | $95,236.00 |
| Christy K. Farr | BFR | 2000 | $815.00 | 382.80 | $311,982.00 |
| Geoffery J. O'Dea | BFR | 2000 | $815.00 | 12.10 | $9,861.50 |
| Thomas Zimmermann | C | 2000 | $660.00 | 12.70 | $8,382.00 |
| Deepak Reddy | C | 2000 | $640.00 | 284.50 | $182,080.00 |
| Elisa R. Lemmer | BFR | 2000 | $640.00 | 275.80 | $176,512.00 |
| James T. Grogan | BFR | 2000 | $640.00 | 28.80 | $18,432.00 |
| Gregory S. Silbert | L | 2000 | $640.00 | 24.40 | $15,616.00 |
| Kian Tauser | T | 2000 | $585.00 | 44.80 | $26,208.00 |
| Konrad V. Buchwaldt | C | 2000 | $485.00 | 27.40 | $13,289.00 |
| Peng Yu | C | 2000 | $425.00 | 5.40 | $2,295.00 |
| Kristen D. Perrault | L | 2000 | $225.00 | 31.20 | $7,020.00 |

---

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  \* – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jean-Christophe David | C | 2001 | $650.00 | 278.80 | $181,220.00 |
| David Herman | C | 2001 | $640.00 | 211.40 | $135,296.00 |
| Elliot Ganchrow | C | 2001 | $640.00 | 93.10 | $59,584.00 |
| Matthew L. Mustokoff | L | 2001 | $640.00 | 84.50 | $54,080.00 |
| Stuart Morrissy | C | 2001 | $640.00 | 24.10 | $15,424.00 |
| Deborah A. Maher | L | 2001 | $630.00 | 145.70 | $91,791.00 |
| Randell J. Gartin | T | 2001 | $580.00 | 227.00 | $131,660.00 |
| Ron Ben-Menachem | C | 2001 | $540.00 | 273.50 | $147,690.00 |
| Sibylle Schumacher | L | 2001 | $520.00 | 10.80 | $5,616.00 |
| Madelene Cook | C | 2002 | $775.00 | 303.00 | $234,825.00 |
| Lianne Craig | L | 2002 | $775.00 | 110.80 | $85,676.25 |
| Eleanor H. Gilbane | L | 2002 | $630.00 | 224.70 | $141,561.00 |
| Paullette C. Deruelle | L | 2002 | $630.00 | 75.10 | $47,313.00 |
| Ronit J. Berkovich | BFR | 2002 | $630.00 | 9.00 | $5,670.00 |
| Ashish D. Gandhi | L | 2002 | $630.00 | 6.30 | $3,969.00 |
| James E. Sanborn | L | 2002 | $610.00 | 428.10 | $255,041.00 |
| Keith L. Cooper | T | 2002 | $610.00 | 382.80 | $233,508.00 |
| Brandye L. Brown | C | 2002 | $610.00 | 374.60 | $228,506.00 |
| Matthew M. Newby | C | 2002 | $610.00 | 94.50 | $57,645.00 |
| Tracy L. McCreight | L | 2002 | $610.00 | 48.10 | $29,341.00 |
| Yehudah L. Buchweitz | L | 2002 | $610.00 | 11.60 | $7,076.00 |
| Ryan P. Gallagher | C | 2002 | $610.00 | 9.20 | $5,612.00 |
| Michael Kohl | C | 2002 | $585.00 | 22.90 | $13,396.50 |
| Arman Kuyumjian | C | 2002 | $580.00 | 560.60 | $325,148.00 |
| Nathanael J. Christensen | C | 2002 | $580.00 | 79.70 | $46,226.00 |
| Deirdre Nhan | C | 2002 | $540.00 | 69.20 | $37,368.00 |
| Rebecca Grapsas | C | 2002 | $540.00 | 13.00 | $7,020.00 |
| Airi Hammalov | C | 2002 | $500.00 | 325.50 | $162,750.00 |
| Jay H. Park Jr. | C | 2002 | $500.00 | 120.30 | $59,875.00 |
| Philipp Gantenberg | C | 2002 | $425.00 | 105.00 | $44,625.00 |
| Haohao Zheng | C | 2002 | $360.00 | 49.40 | $17,784.00 |
| Michael Arnott | BFR | 2003 | $775.00 | 30.80 | $23,870.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Daniel B. Martin | BFR | 2003 | $775.00 | 14.70 | $11,392.50 |
| Rupert A. Wall | C | 2003 | $720.00 | 17.70 | $12,744.00 |
| Edward N. Jackson | C | 2003 | $720.00 | 12.70 | $9,144.00 |
| Pia A. Deshpande | C | 2003 | $675.00 | 168.00 | $113,400.00 |
| Franco Destro | C | 2003 | $630.00 | 8.00 | $5,040.00 |
| Lei Yu | C | 2003 | $620.00 | 258.30 | $160,146.00 |
| Denise Alvarez | L | 2003 | $610.00 | 668.10 | $407,541.00 |
| Marisa L. Ferraro | C | 2003 | $610.00 | 213.80 | $130,418.00 |
| Rima J. Oken | L | 2003 | $610.00 | 125.40 | $76,494.00 |
| Virginia H. Johnson | L | 2003 | $610.00 | 62.80 | $38,308.00 |
| Lori M. Schiffer | C | 2003 | $610.00 | 59.70 | $36,417.00 |
| Julia S. Williams | C | 2003 | $580.00 | 282.70 | $163,966.00 |
| Edward McCarthy | L | 2003 | $580.00 | 216.20 | $125,396.00 |
| Kwang-chien B. Ger | C | 2003 | $580.00 | 42.30 | $24,534.00 |
| Simon Lopez | C | 2003 | $580.00 | 5.10 | $2,958.00 |
| Venera Ziegler | C | 2003 | $540.00 | 221.60 | $119,664.00 |
| Julie T. Friedman | BFR | 2003 | $500.00 | 136.70 | $68,350.00 |
| Christian Eggert | C | 2003 | $390.00 | 16.60 | $6,474.00 |
| Mirella B. Gadd | C | 2004 | $720.00 | 343.70 | $246,528.00 |
| Susan A. Turner | C | 2004 | $675.00 | 22.60 | $15,255.00 |
| Oliver D. Walker | T | 2004 | $675.00 | 16.50 | $11,137.50 |
| Hannah L. Field | L | 2004 | $675.00 | 12.80 | $8,640.00 |
| Garrett Fail | BFR | 2004 | $580.00 | 926.00 | $535,920.00 |
| Robert C. Shmalo | C | 2004 | $580.00 | 254.40 | $147,552.00 |
| Heather R. Solow | L | 2004 | $580.00 | 114.70 | $66,526.00 |
| Michelle F. Herman | C | 2004 | $580.00 | 109.30 | $63,394.00 |
| Michael Firestone | L | 2004 | $580.00 | 96.20 | $55,796.00 |
| Jordan K. Kolar | T | 2004 | $580.00 | 91.90 | $53,302.00 |
| Marshall T. Bell | L | 2004 | $580.00 | 13.10 | $7,598.00 |
| Natalie C. Maksin | T | 2004 | $580.00 | 8.30 | $4,814.00 |
| Chrystal L. Dyer-Laroche | C | 2004 | $580.00 | 5.40 | $3,132.00 |
| Maya M. Grant | C | 2004 | $565.00 | 283.80 | $160,347.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Allen S. Blaustein | L | 2004 | $540.00 | 803.80 | $430,677.00 |
| Leah W. Turner | L | 2004 | $540.00 | 470.50 | $254,070.00 |
| Robert S. Velevis | L | 2004 | $540.00 | 440.20 | $237,222.00 |
| Miles J. Wright | L | 2004 | $540.00 | 100.90 | $54,486.00 |
| Michael E. Mittelman | L | 2004 | $540.00 | 70.20 | $37,908.00 |
| Jennifer M. Wolff | T | 2004 | $540.00 | 27.00 | $14,580.00 |
| Allison M. Warner | L | 2004 | $540.00 | 14.90 | $8,046.00 |
| Laurinda H. Martins | C | 2004 | $540.00 | 6.80 | $3,672.00 |
| Caroline Hickey Zalka | L | 2004 | $500.00 | 509.90 | $254,950.00 |
| Daniel Mencaroni | C | 2004 | $500.00 | 49.00 | $24,500.00 |
| Hendrik Boss | C | 2004 | $465.00 | 508.90 | $236,638.50 |
| Russell J. Stein | T | 2004 | $465.00 | 14.80 | $6,882.00 |
| Kristina L. Coffee | T | 2004 | $465.00 | 7.50 | $3,487.50 |
| Christian Timm Neugebauer | L | 2004 | $390.00 | 70.20 | $27,378.00 |
| Friederike Schroeder | C | 2004 | $355.00 | 47.70 | $16,933.50 |
| J. Friedrich Isenbart | C | 2004 | $355.00 | 5.50 | $1,952.50 |
| Alcira Moncada | L | 2004 | $250.00 | 265.00 | $66,250.00 |
| Blandine Davies | BFR | 2005 | $675.00 | 554.20 | $373,072.50 |
| Thomas S. Hetherington | C | 2005 | $675.00 | 543.20 | $366,660.00 |
| Gemma Bullmore | L | 2005 | $620.00 | 218.80 | $135,315.00 |
| Katy Byatt | C | 2005 | $620.00 | 70.50 | $43,710.00 |
| Sean White | C | 2005 | $620.00 | 50.90 | $31,558.00 |
| Ilomai Kurrik | C | 2005 | $610.00 | 188.30 | $114,863.00 |
| Patricia Saiz | L | 2005 | $610.00 | 3.50 | $2,135.00 |
| Patricia Saiz | L | 2005 | $500.00 | 1.50 | $750.00 |
| Pejman Razavilar | C | 2005 | $580.00 | 520.70 | $302,006.00 |
| Elodie Fabre | BFR | 2005 | $550.00 | 48.20 | $26,510.00 |
| Robert T. Polemeni | L | 2005 | $540.00 | 592.50 | $319,734.00 |
| Samuel J. Comer | C | 2005 | $540.00 | 579.70 | $313,038.00 |
| Kirsten A. Noethen | C | 2005 | $540.00 | 449.80 | $242,892.00 |
| Hyun K. Kim | C | 2005 | $540.00 | 244.60 | $132,084.00 |
| Mark I. Bernstein | BFR | 2005 | $540.00 | 189.60 | $102,384.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Poornima Sampath | C | 2005 | $540.00 | 153.90 | $83,106.00 |
| Jason Lichter | L | 2005 | $540.00 | 41.90 | $22,626.00 |
| Kevin F. Meade | L | 2005 | $540.00 | 39.30 | $21,222.00 |
| John W. Blevin | C | 2005 | $540.00 | 29.80 | $16,092.00 |
| Daniel J. Venditti | L | 2005 | $540.00 | 29.40 | $15,876.00 |
| Jeff M. Morneau | C | 2005 | $540.00 | 5.40 | $2,916.00 |
| John W. Lucas | BFR | 2005 | $500.00 | 742.70 | $370,850.00 |
| Amber D. Taylor | L | 2005 | $500.00 | 471.60 | $235,800.00 |
| Brittany R. Perez | C | 2005 | $500.00 | 227.50 | $113,750.00 |
| Robert C. Roesch | L | 2005 | $500.00 | 51.60 | $25,800.00 |
| Julie A. Markum | C | 2005 | $500.00 | 40.20 | $20,100.00 |
| Eric A. Schecter | T | 2005 | $500.00 | 29.10 | $14,550.00 |
| Jeffrey C. Angerman | C | 2005 | $500.00 | 21.70 | $10,850.00 |
| Monty A. Ward | C | 2005 | $500.00 | 13.60 | $6,800.00 |
| Bronwen R. Pyle | C | 2005 | $465.00 | 210.80 | $98,022.00 |
| Peter Godhard | C | 2005 | $465.00 | 17.30 | $8,044.50 |
| Rastko Vrbaski | T | 2005 | $390.00 | 12.80 | $4,992.00 |
| Kamran A. Khan | L | 2005 | $250.00 | 74.20 | $18,550.00 |
| Savitri A. Deopersaud | L | 2005 | $250.00 | 63.10 | $15,775.00 |
| Benay H. Lizarazu | C | 2006 | $640.00 | 95.60 | $61,184.00 |
| Naomi Munz | C | 2006 | $630.00 | 606.10 | $381,843.00 |
| Kimberly A. Erlanson | C | 2006 | $630.00 | 8.60 | $5,418.00 |
| Christine T. DiGuglielmo | L | 2006 | $580.00 | 8.00 | $4,640.00 |
| Brian P. Maher | C | 2006 | $560.00 | 382.80 | $214,368.00 |
| Zhiqing Hu | L | 2006 | $560.00 | 182.10 | $101,976.00 |
| Jae Fassam | T | 2006 | $560.00 | 79.60 | $44,576.00 |
| Danitra T. Spencer | L | 2006 | $540.00 | 302.20 | $163,188.00 |
| Caitlyn M. Campbell | L | 2006 | $540.00 | 180.60 | $97,524.00 |
| Su-Yeon Cho | C | 2006 | $540.00 | 105.70 | $57,078.00 |
| Mark Schwed | T | 2006 | $540.00 | 5.50 | $2,970.00 |
| Christopher R. Machera | C | 2006 | $500.00 | 471.70 | $235,850.00 |
| Bryant S. York | L | 2006 | $500.00 | 165.70 | $82,850.00 |

* BFR – Business Finance & Restructuring, C – Corporate, L – Litigation, T – Tax, MC – Managing Clerk, LSS – Litigation Support Services, X – Library, * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jaime S. Kaplan | L | 2006 | $500.00 | 145.50 | $72,750.00 |
| Emily L. Gold | C | 2006 | $500.00 | 63.20 | $31,600.00 |
| David Yolkut | L | 2006 | $500.00 | 23.50 | $11,750.00 |
| Faiza N. Rahman | C | 2006 | $500.00 | 13.70 | $6,850.00 |
| Damon P. Meyer | BFR | 2006 | $500.00 | 7.20 | $3,600.00 |
| Anne-Sophie Noury | BFR | 2006 | $485.00 | 9.30 | $4,510.50 |
| Edward K. Gray | C | 2006 | $465.00 | 225.30 | $104,764.50 |
| Steven Seltzer | C | 2006 | $465.00 | 162.70 | $75,655.50 |
| Omeed Malik | C | 2006 | $465.00 | 138.70 | $64,495.50 |
| Ofer Eldar | C | 2006 | $465.00 | 111.10 | $51,661.50 |
| Lauren Hoelzer | L | 2006 | $465.00 | 107.80 | $50,127.00 |
| Brett S. Thorstad | C | 2006 | $465.00 | 42.20 | $19,623.00 |
| Daniel Koob | C | 2006 | $465.00 | 40.50 | $18,832.50 |
| Brian Compagna | L | 2006 | $465.00 | 10.20 | $4,743.00 |
| Roger C. Pao | C | 2006 | $415.00 | 72.30 | $30,004.50 |
| Tomasz Kulawik | C | 2006 | $355.00 | 166.00 | $58,930.00 |
| Christina Maurer | C | 2006 | $325.00 | 18.30 | $5,947.50 |
| Jackson P. Wagener | L | 2007 | $500.00 | 124.60 | $62,300.00 |
| Rachel Xuereb | C | 2007 | $495.00 | 202.80 | $100,386.00 |
| Alicia L. Speake | C | 2007 | $495.00 | 95.10 | $47,074.50 |
| Andrew R. Fox | L | 2007 | $495.00 | 31.70 | $15,691.50 |
| Penelope Hewitt | C | 2007 | $495.00 | 19.60 | $9,702.00 |
| Christopher Smith | C | 2007 | $495.00 | 11.40 | $5,643.00 |
| Sunny Singh | BFR | 2007 | $465.00 | 988.40 | $458,908.50 |
| Aabha Sharma | C | 2007 | $465.00 | 700.50 | $325,732.50 |
| Amanjit Arora | BFR | 2007 | $465.00 | 478.00 | $222,270.00 |
| Marc B. Rosen | C | 2007 | $465.00 | 334.50 | $155,542.50 |
| Elisa Jaclyn | L | 2007 | $465.00 | 319.00 | $148,335.00 |
| Jie Yuan | C | 2007 | $465.00 | 278.00 | $129,270.00 |
| Justin Wagner | L | 2007 | $465.00 | 271.70 | $126,201.00 |
| Oliver DeGeest | C | 2007 | $465.00 | 226.30 | $105,229.50 |
| Manesh J. Shah | BFR | 2007 | $465.00 | 213.20 | $99,138.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Paul Bravo | L | 2007 | $465.00 | 164.00 | $76,260.00 |
| Diana H. Widjaya | L | 2007 | $465.00 | 143.20 | $66,588.00 |
| Richard O'Donoghue | L | 2007 | $465.00 | 113.50 | $49,848.00 |
| Timothy J. Nestler | C | 2007 | $465.00 | 92.80 | $43,152.00 |
| Teresa Chin | L | 2007 | $465.00 | 45.90 | $21,343.50 |
| Startlett A. Carter | C | 2007 | $465.00 | 39.40 | $18,321.00 |
| Monica J. Jeong | C | 2007 | $465.00 | 29.50 | $13,717.50 |
| Jennifer L. Wine | L | 2007 | $465.00 | 28.50 | $13,252.50 |
| Kristopher Villarreal | C | 2007 | $465.00 | 21.10 | $9,811.50 |
| Jessica Ryan | C | 2007 | $465.00 | 19.50 | $9,067.50 |
| Michael Winn | L | 2007 | $465.00 | 16.50 | $7,672.50 |
| Ramy E. Hanna | L | 2007 | $465.00 | 12.10 | $5,626.50 |
| Olanrewaju A. Williams | C | 2007 | $465.00 | 10.40 | $4,836.00 |
| Sue T. Chen-Holmes | C | 2007 | $465.00 | 8.60 | $3,999.00 |
| John R. Gerba | L | 2007 | $465.00 | 6.30 | $2,929.50 |
| Cassie Waduge | C | 2007 | $415.00 | 742.70 | $308,220.50 |
| Evert J. Christensen | L | 2007 | $415.00 | 331.20 | $137,448.00 |
| Christine Doktor | L | 2007 | $415.00 | 210.70 | $87,440.50 |
| Alexandra Lehson | C | 2007 | $415.00 | 190.50 | $78,352.00 |
| Emmanuel U. Obi | C | 2007 | $415.00 | 75.90 | $31,498.50 |
| Marc Weinroth | L | 2007 | $415.00 | 57.80 | $23,987.00 |
| Mark B. Rosen | L | 2007 | $415.00 | 52.40 | $21,746.00 |
| John T. O'Connor | L | 2007 | $415.00 | 49.90 | $20,708.50 |
| Rose Constance | C | 2007 | $415.00 | 43.00 | $17,845.00 |
| Jason Pruzansky | L | 2007 | $415.00 | 16.60 | $6,889.00 |
| Lisa S. Ward | C | 2007 | $415.00 | 8.70 | $3,610.50 |
| Eberhard Koch | L | 2007 | $325.00 | 137.60 | $44,720.00 |
| Mareike Pfeiffer | L | 2007 | $325.00 | 20.30 | $6,597.50 |
| Marek Kanczew | T | 2007 | $260.00 | 14.00 | $3,640.00 |
| John A. Goldfinch | C | 2008 | $560.00 | 237.90 | $133,224.00 |
| Tlalit Packer | T | 2008 | $465.00 | 343.90 | $159,913.50 |
| Sujan H. Trivedi | L | 2008 | $465.00 | 336.00 | $156,240.00 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  \* – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jennifer Sloan | C | 2008 | $465.00 | 266.20 | $123,783.00 |
| Kathryn M. Zunno | L | 2008 | $465.00 | 190.80 | $88,512.75 |
| Qiong Sun | C | 2008 | $465.00 | 169.30 | $78,724.50 |
| Alexander J. Swartz | C | 2008 | $465.00 | 145.10 | $67,471.50 |
| Brandon E. Cherry | C | 2008 | $465.00 | 10.60 | $4,929.00 |
| Germaine N. Gurr | C | 2008 | $465.00 | 5.50 | $2,557.50 |
| Kimberleigh Scott | C | 2008 | $440.00 | 109.60 | $48,224.00 |
| Mavnick B. Nerwal | T | 2008 | $440.00 | 94.90 | $41,756.00 |
| Elizabeth R. Todd | C | 2008 | $440.00 | 31.00 | $13,640.00 |
| Jeremy Smith | C | 2008 | $440.00 | 7.40 | $3,256.00 |
| Maurice Horwitz | BFR | 2008 | $415.00 | 852.20 | $352,895.25 |
| Brennan Hackett | BFR | 2008 | $415.00 | 766.80 | $318,118.25 |
| Joseph Abadi | C | 2008 | $415.00 | 743.30 | $308,469.50 |
| Richard A. DeCicca | L | 2008 | $415.00 | 325.40 | $135,041.00 |
| Lorri Anne Carrozza | C | 2008 | $415.00 | 259.60 | $107,734.00 |
| Vigdis Bronder | C | 2008 | $415.00 | 192.00 | $79,680.00 |
| Joshua E. Peck | C | 2008 | $415.00 | 184.00 | $76,360.00 |
| Jakub Biernacki | C | 2008 | $415.00 | 154.00 | $63,910.00 |
| Philip Ratner | C | 2008 | $415.00 | 142.30 | $59,054.50 |
| Susan Fiore | C | 2008 | $415.00 | 124.60 | $51,709.00 |
| Jamie W. Lurie | C | 2008 | $415.00 | 79.80 | $33,117.00 |
| Robert Levine | L | 2008 | $415.00 | 77.50 | $32,162.50 |
| Georgia P. Quinn | C | 2008 | $415.00 | 63.30 | $26,269.50 |
| Lisa N. Cloutier | L | 2008 | $415.00 | 60.70 | $25,190.50 |
| Irini Kalamakis | C | 2008 | $415.00 | 59.70 | $24,775.50 |
| Sinan Kalayoglu | C | 2008 | $415.00 | 59.40 | $24,651.00 |
| Charles Herschel | C | 2008 | $415.00 | 45.70 | $18,965.50 |
| June K. Lee | L | 2008 | $415.00 | 34.50 | $14,317.50 |
| Audrey K. Susanin | C | 2008 | $415.00 | 32.80 | $13,612.00 |
| Jessica Cunningham | C | 2008 | $415.00 | 32.30 | $13,404.50 |
| Zillah Whittaker | C | 2008 | $415.00 | 31.10 | $12,906.50 |
| Jessica S. Ross | C | 2008 | $415.00 | 26.10 | $10,831.50 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Thomas Thorndike | C | 2008 | $415.00 | 13.30 | $5,519.50 |
| Nichole Hines | L | 2008 | $415.00 | 10.90 | $4,523.50 |
| David Duffo Weinstock | C | 2008 | $415.00 | 10.90 | $4,523.50 |
| Giriraj Pathmanaban | L | 2008 | $415.00 | 7.60 | $3,154.00 |
| Farbod Solaimani | T | 2008 | $415.00 | 7.40 | $3,071.00 |
| Frank Martire | C | 2008 | $415.00 | 5.00 | $2,075.00 |
| Jennifer D. Larson | L | 2008 | $355.00 | 958.00 | $340,001.25 |
| Lauren L. Zerbinopoulos | L | 2008 | $355.00 | 287.10 | $101,920.50 |
| Sunny J. Thompson | L | 2008 | $355.00 | 228.90 | $81,259.50 |
| Elisheva M. Hirshman | L | 2008 | $355.00 | 166.50 | $59,107.50 |
| Kristen L. Depowski | C | 2008 | $355.00 | 129.30 | $45,901.50 |
| Xiaofeng S. Da | C | 2008 | $355.00 | 109.60 | $38,908.00 |
| Meghan A. McCaffrey | L | 2008 | $355.00 | 90.40 | $32,092.00 |
| Jessica F. Townsend | L | 2008 | $355.00 | 46.70 | $16,578.50 |
| Ray C. Lyman | C | 2008 | $355.00 | 36.20 | $12,851.00 |
| Aubree L. Corallo | C | 2008 | $355.00 | 31.60 | $11,218.00 |
| David B. Gail | C | 2008 | $355.00 | 26.20 | $9,301.00 |
| Adam Mendelowitz | T | 2008 | $355.00 | 5.70 | $2,023.50 |
| Kate McGovern | L | 2008 | $250.00 | 396.40 | $99,100.00 |
| U-Hyeon Kwon | C | 2009 | $465.00 | 917.00 | $426,405.00 |
| Andrew C. Bailey | C | 2009 | $465.00 | 6.20 | $2,883.00 |
| Jeffrey R. Friedman | C | 2009 | $415.00 | 503.90 | $209,118.50 |
| Dev A. Ghose | C | 2009 | $415.00 | 123.90 | $51,418.50 |
| Michael Bell | L | 2009 | $415.00 | 80.60 | $33,449.00 |
| Christopher M. Neely | L | 2009 | $415.00 | 31.10 | $12,906.50 |
| Jannelle M. Seales | C | 2009 | $415.00 | 27.30 | $11,329.50 |
| Amanda M. Hendy | BFR | 2009 | $355.00 | 898.80 | $318,896.50 |
| Zaw Win | BFR | 2009 | $355.00 | 814.10 | $289,005.50 |
| Cassie Kimmelman | C | 2009 | $355.00 | 415.50 | $147,502.50 |
| Samuel J. Spector | C | 2009 | $355.00 | 354.30 | $125,776.50 |
| Tracy K. Bookspan | C | 2009 | $355.00 | 335.90 | $119,244.50 |
| Christopher T. Luise | L | 2009 | $355.00 | 274.80 | $97,554.00 |

_____

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Bin Wang | L | 2009 | $355.00 | 257.00 | $91,235.00 |
| Matthew Baudler | L | 2009 | $355.00 | 243.50 | $86,442.50 |
| Patricia Astorga | L | 2009 | $355.00 | 195.10 | $69,260.50 |
| Melanie Conroy | L | 2009 | $355.00 | 186.30 | $66,136.50 |
| Christopher R. Gruszczynski | C | 2009 | $355.00 | 171.60 | $60,918.00 |
| Jenna E. Schaeffer | C | 2009 | $355.00 | 159.50 | $56,622.50 |
| Erin K. Yates | L | 2009 | $355.00 | 151.80 | $53,889.00 |
| Allison J. Becker | L | 2009 | $355.00 | 134.70 | $47,818.50 |
| Caroline K. Simons | L | 2009 | $355.00 | 99.70 | $35,393.50 |
| Erin Craddock | L | 2009 | $355.00 | 99.20 | $35,216.00 |
| Zohar R. Levy | L | 2009 | $355.00 | 87.90 | $31,204.50 |
| Mark Glover | C | 2009 | $355.00 | 80.90 | $28,719.50 |
| Jared Foley | L | 2009 | $355.00 | 78.60 | $27,903.00 |
| Cynthia A. Marian | T | 2009 | $355.00 | 78.20 | $27,761.00 |
| David P. Byeff | L | 2009 | $355.00 | 76.60 | $27,193.00 |
| Courtney P. Fain | L | 2009 | $355.00 | 75.00 | $26,625.00 |
| Daniel Bagliebter | C | 2009 | $355.00 | 70.50 | $25,027.50 |
| Evgeny Zborovsky | C | 2009 | $355.00 | 69.60 | $24,708.00 |
| Eileen Hren | L | 2009 | $355.00 | 57.90 | $20,554.50 |
| Eileen Hren | L | 2009 | $225.00 | 39.20 | $8,820.00 |
| Jordan R. Fasbender | C | 2009 | $355.00 | 55.50 | $19,702.50 |
| Stacey Lutzker | L | 2009 | $355.00 | 40.50 | $14,377.50 |
| Andrew Brown | L | 2009 | $355.00 | 34.60 | $12,283.00 |
| Ausra O. Pumputis | L | 2009 | $355.00 | 31.30 | $11,111.50 |
| Rahul K. Sharma | BFR | 2009 | $355.00 | 30.80 | $10,934.00 |
| Gabriel Reyes | T | 2009 | $355.00 | 30.70 | $10,898.50 |
| Matthew M. Spritz | L | 2009 | $355.00 | 29.30 | $10,401.50 |
| R. Todd Hatcher | T | 2009 | $355.00 | 23.40 | $8,307.00 |
| Lisa Bourque | L | 2009 | $355.00 | 22.30 | $7,916.50 |
| Jonathan L. Sagot | C | 2009 | $355.00 | 21.60 | $7,668.00 |
| Andrew Arons | C | 2009 | $355.00 | 19.20 | $6,816.00 |
| Robert Watkins | L | 2009 | $355.00 | 17.40 | $6,177.00 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  \* – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Maria N. Hroncich | C | 2009 | $355.00 | 16.40 | $5,822.00 |
| Alanna Frisby | L | 2009 | $355.00 | 15.70 | $5,573.50 |
| Adam J. Feit | C | 2009 | $355.00 | 14.60 | $5,183.00 |
| Maria G. Carminati | L | 2009 | $355.00 | 11.70 | $4,153.50 |
| Matthew M. Speiser | C | 2009 | $355.00 | 10.10 | $3,585.50 |
| Tashanna B. Pearson | L | 2009 | $355.00 | 9.00 | $3,195.00 |
| Cheri Veit | L | 2009 | $355.00 | 8.10 | $2,875.50 |
| Magdalena Pyzik | C | 2009 | $310.00 | 21.00 | $6,510.00 |
| Judith Agus | T | 2009 | $290.00 | 7.50 | $2,175.00 |
| Alexandra Elser | C | * | $540.00 | 11.90 | $6,426.00 |
| Allen T. Yancy | L | * | $465.00 | 32.60 | $15,159.00 |
| Justin MacMahon | C | * | $465.00 | 22.60 | $10,509.00 |
| Stephanie L. Weitzner | L | * | $415.00 | 214.30 | $88,934.50 |
| Benjamin H. Yunis | L | * | $415.00 | 211.60 | $87,814.00 |
| Jennifer Cheng | C | * | $415.00 | 22.10 | $9,171.50 |
| Faraz Rana | C | * | $415.00 | 11.40 | $4,731.00 |
| Peter J. McRae | C | * | $355.00 | 477.00 | $169,335.00 |
| Megan Pendleton | C | * | $355.00 | 446.50 | $158,507.50 |
| Brett A. Bush | C | * | $355.00 | 388.30 | $137,846.50 |
| Jennifer Sapp | BFR | * | $355.00 | 311.30 | $110,511.50 |
| Ajit Gokhale | T | * | $355.00 | 168.40 | $59,782.00 |
| Erica Coleman | BFR | * | $355.00 | 138.70 | $49,238.50 |
| Chhunny Chhean | L | * | $355.00 | 132.20 | $46,931.00 |
| Matthew W. Swinehart | L | * | $355.00 | 114.30 | $40,576.50 |
| Damien Wint | L | * | $355.00 | 100.40 | $35,642.00 |
| Matthew D. Bergman | C | * | $355.00 | 96.90 | $34,399.50 |
| Thomas M. Kretchmar | C | * | $355.00 | 88.10 | $31,275.50 |
| Young Lee | C | * | $355.00 | 86.40 | $30,672.00 |
| Joshua Senavoe | C | * | $355.00 | 44.80 | $15,904.00 |
| Kristen M. Echemendia | L | * | $355.00 | 27.70 | $9,833.50 |
| Kim P. Turner | L | * | $355.00 | 24.50 | $8,697.50 |
| Jennifer N. Ganesh | BFR | * | $355.00 | 23.40 | $8,307.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| David C. Brown | L | * | $355.00 | 21.30 | $7,561.50 |
| Consuelo A. Kendall | L | * | $355.00 | 21.00 | $7,455.00 |
| David A. Cohen | C | * | $355.00 | 8.00 | $2,840.00 |
| **Total Associates:** | | | | **54,453.40** | **$26,507,991.75** |

---

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Daniel L. Chin | T | $325.00 | 26.40 | $8,580.00 |
| Iden Rahmanzadeh-Asl | C | $280.00 | 8.00 | $2,240.00 |
| Jodie A. Turner | L | $280.00 | 5.30 | $1,484.00 |
| Timothy Vogel | BFR | $280.00 | 267.60 | $74,928.00 |
| Peter J. Ibrahim | C | $280.00 | 113.30 | $31,724.00 |
| Stuart Donnelly | L | $280.00 | 109.30 | $30,604.00 |
| Abeer Garousha | BFR | $265.00 | 307.20 | $81,408.00 |
| Jorge Martorell | LSS | $260.00 | 10.50 | $2,730.00 |
| Joyce Du | C | $250.00 | 75.00 | $18,750.00 |
| Jiaan Yin | C | $250.00 | 186.70 | $46,675.00 |
| Emilie Niu | C | $250.00 | 117.40 | $29,350.00 |
| Kathleen Lee | BFR | $245.00 | 9.40 | $2,303.00 |
| Christopher A. Stauble | BFR | $245.00 | 561.80 | $137,641.00 |
| Christine Petropoulos | L | $245.00 | 54.30 | $13,303.50 |
| Suzanne Inglis | L | $245.00 | 349.00 | $85,505.00 |
| Joanne Kirson | T | $245.00 | 27.20 | $6,664.00 |
| Christine Shrestha | C | $245.00 | 186.00 | $45,570.00 |
| Matthew Viola | C | $245.00 | 119.10 | $29,179.50 |
| David Brangam | C | $240.00 | 83.20 | $19,968.00 |
| Julian Chatterton | C | $240.00 | 52.70 | $12,516.00 |
| Nathan Lorenzo-George | C | $240.00 | 44.50 | $10,680.00 |
| David Elphinstone | C | $240.00 | 281.60 | $67,344.00 |
| Catherine Wylie | C | $240.00 | 14.50 | $3,480.00 |
| Catherine Gurney | C | $240.00 | 137.40 | $32,976.00 |
| Emily Wapples | BFR | $240.00 | 13.10 | $3,144.00 |
| Akshay Kundaiker | C | $240.00 | 12.40 | $2,976.00 |
| Lara Pender | L | $240.00 | 10.90 | $2,616.00 |
| Mili Sam | LSS | $235.00 | 63.30 | $14,875.50 |
| Laura Jewett | LSS | $235.00 | 6.40 | $1,504.00 |
| Cheryl Eng-Bendel | LSS | $235.00 | 25.70 | $6,039.50 |
| John A. Ellsworth | C | $230.00 | 735.30 | $168,889.00 |
| Colin O'Connor | C | $230.00 | 7.70 | $1,771.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Leason Hoilett | L | $230.00 | 65.90 | $15,157.00 |
| Peggy Jones | C | $230.00 | 26.80 | $6,164.00 |
| Yvonne Washington | L | $230.00 | 257.90 | $59,317.00 |
| Gayle E. Mitchel | BFR | $230.00 | 17.30 | $3,979.00 |
| Jeffrie Hausman | L | $230.00 | 162.60 | $37,398.00 |
| Lance Y. Shiroma | C | $230.00 | 155.30 | $35,719.00 |
| David Litvack | BFR | $225.00 | 6.40 | $1,440.00 |
| Chelsea Rosen | BFR | $225.00 | 33.60 | $7,560.00 |
| Peter Nudelman | LSS | $215.00 | 34.80 | $7,482.00 |
| Artur Robin | LSS | $215.00 | 30.90 | $6,643.50 |
| Michael Quarry | LSS | $215.00 | 28.00 | $6,020.00 |
| MaryAnne Bollen | LSS | $215.00 | 20.50 | $4,407.50 |
| Scott Larangeira | LSS | $215.00 | 20.50 | $4,407.50 |
| Jesell Castillo | LSS | $215.00 | 15.50 | $3,332.50 |
| George Scopas | LSS | $215.00 | 14.60 | $3,139.00 |
| Barbara Frayle | C | $210.00 | 86.90 | $18,249.00 |
| Karen A. Joffrion | C | $210.00 | 83.60 | $17,556.00 |
| Crystal McCray | L | $210.00 | 8.00 | $1,680.00 |
| Dániel Dózsa | C | $210.00 | 8.00 | $1,680.00 |
| Beth Akers | L | $210.00 | 71.30 | $14,973.00 |
| Nancy P. Cade | L | $210.00 | 22.60 | $4,746.00 |
| Lesley Phillips | L | $210.00 | 142.10 | $29,841.00 |
| Camille A. George | BFR | $210.00 | 131.90 | $27,699.00 |
| Peter A. Siebel | BFR | $210.00 | 119.20 | $25,032.00 |
| Peter Schell | C | $205.00 | 93.00 | $19,065.00 |
| Lori A. Seavey | BFR | $205.00 | 205.10 | $42,045.50 |
| Odalys C. Smith | L | $205.00 | 196.80 | $40,344.00 |
| Michael Jackson | L | $200.00 | 490.00 | $98,000.00 |
| Mel C. Maravilla | C | $200.00 | 46.00 | $9,200.00 |
| Francheska Marquez | C | $200.00 | 147.20 | $29,440.00 |
| Edith Hwang | X | $195.00 | 9.70 | $1,891.50 |
| Merill Losick | X | $195.00 | 8.40 | $1,638.00 |

---

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk, LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Noemi Diaz | T | $195.00 | 71.10 | $13,864.50 |
| Herbert Chan | L | $195.00 | 70.40 | $13,728.00 |
| William H. Gordon | L | $195.00 | 67.30 | $13,123.50 |
| Philip Barahona | X | $195.00 | 5.50 | $1,072.50 |
| Linda E. Calles | L | $195.00 | 40.20 | $7,839.00 |
| Caterina Gallina | C | $195.00 | 34.80 | $6,786.00 |
| Daniel F. McLaughlin | X | $195.00 | 23.00 | $4,485.00 |
| Victoria A. Bennett | L | $195.00 | 21.30 | $4,153.50 |
| Tashan Q. Reid | C | $195.00 | 175.40 | $34,203.00 |
| Elizabeth E. Melson | L | $195.00 | 10.60 | $2,067.00 |
| Yovanka Malkovich | L | $190.00 | 8.50 | $1,615.00 |
| Justin Benjamin | LSS | $190.00 | 67.80 | $12,882.00 |
| Michael Brien | T | $190.00 | 6.70 | $1,273.00 |
| Monika Kordt | C | $190.00 | 5.80 | $1,102.00 |
| Ilusion Rodriguez | BFR | $180.00 | 9.50 | $1,710.00 |
| Amorita Gaucin | LSS | $180.00 | 8.50 | $1,530.00 |
| Rene A Olvera | BFR | $180.00 | 62.50 | $11,250.00 |
| Kaitlin C. Prindle | BFR | $180.00 | 60.30 | $10,782.00 |
| Yashomati B. Koul | BFR | $180.00 | 555.80 | $100,044.00 |
| Bill K. Chan | C | $180.00 | 45.00 | $8,100.00 |
| Ngan L. Chan | C | $180.00 | 40.30 | $7,254.00 |
| Julie B. Mukendi | L | $180.00 | 234.20 | $42,156.00 |
| David C. Stone | L | $180.00 | 21.70 | $3,906.00 |
| Inna Rudman | C | $170.00 | 34.60 | $5,882.00 |
| Walden Maurissaint | L | $170.00 | 30.90 | $5,253.00 |
| Francene S. Castillero | L | $170.00 | 264.20 | $44,701.50 |
| Kathleen T. Mendoza | L | $170.00 | 26.90 | $4,573.00 |
| Christine Joseph | L | $170.00 | 202.20 | $34,374.00 |
| Andrea N. Moffitt | C | $170.00 | 20.90 | $3,553.00 |
| Gareth M. Mandel | L | $170.00 | 154.60 | $26,282.00 |
| Harish Perkari | C | $170.00 | 136.50 | $23,205.00 |
| Alexander Sheppard | L | $170.00 | 12.00 | $2,040.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Jennifer Einersen | L | $170.00 | 116.00 | $19,720.00 |
| Andrea Wilmer | BFR | $160.00 | 9.80 | $1,568.00 |
| Andrew Kim | L | $160.00 | 9.70 | $1,552.00 |
| Katharine L. Steigerwald | C | $160.00 | 89.30 | $14,288.00 |
| Jonathan H. Adler | C | $160.00 | 87.30 | $13,968.00 |
| Jessica Choi | L | $160.00 | 83.20 | $13,312.00 |
| Jacques-Albert Weil | BFR | $160.00 | 8.50 | $1,360.00 |
| Michael T. Tily | C | $160.00 | 76.20 | $12,192.00 |
| Michael R. Lynch | C | $160.00 | 7.00 | $1,120.00 |
| Michael Mitrayon | L | $160.00 | 63.80 | $10,208.00 |
| Halley C. Morrissey | L | $160.00 | 502.00 | $80,320.00 |
| Nicole Swaney | L | $160.00 | 45.10 | $7,216.00 |
| Alissa G. Friedman | L | $160.00 | 44.50 | $7,120.00 |
| Mona V. Mehta | L | $160.00 | 430.50 | $68,880.00 |
| Gillad Matiteyahu | BFR | $160.00 | 401.50 | $64,240.00 |
| Genna D. Grossman | C | $160.00 | 360.70 | $57,712.00 |
| Donald Etienne | BFR | $160.00 | 32.30 | $5,056.00 |
| Candace Chung | C | $160.00 | 288.30 | $46,128.00 |
| Hillary A. Axon | L | $160.00 | 285.30 | $45,648.00 |
| Amanda B. Collier | C | $160.00 | 24.90 | $3,984.00 |
| Allison L. Van Kampen | L | $160.00 | 23.80 | $3,808.00 |
| Nakyung C. Ryu | C | $160.00 | 23.50 | $3,760.00 |
| Richard H. Topaz | L | $160.00 | 19.80 | $3,168.00 |
| Jiwon Park | L | $160.00 | 19.20 | $3,072.00 |
| Joshua A. Materese | L | $160.00 | 10.70 | $1,712.00 |
| Aaron M. Schleicher | L | $160.00 | 10.00 | $1,600.00 |
| Ellen Bauche | X | $155.00 | 9.80 | $1,519.00 |
| Marie J. Carmant | X | $145.00 | 7.50 | $1,087.50 |
| Sherri Wright | L | $140.00 | 37.70 | $5,278.00 |
| Luis L. Pasion | MC | $140.00 | 20.50 | $2,765.00 |
| Deidra M. Mulligan | X | $140.00 | 11.00 | $1,540.00 |
| Luis Cruz | X | $135.00 | 13.30 | $1,795.50 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk, LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Laura Sauceda | L | $130.00 | 33.20 | $4,316.00 |
| Elio Bettini | X | $125.00 | 7.60 | $950.00 |
| Maximiliano Greco | X | $85.00 | 7.40 | $629.00 |
| Yesenia Santiago | X | $85.00 | 6.90 | $586.50 |
| **Total Paraprofessional:** | | | **12,539.40** | **$2,550,632.00** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $842.26 | 19,197.30 | $16,169,199.50 |
| Associates | $486.80 | 54,453.40 | $26,507,991.75 |
| Paraprofessionals | $203.41 | 12,539.40 | $2,550,632.00 |
| **Blended Attorney Rate** | **$579.45** | | |
| **Total Fees Incurred** | | **86,190.10** | **$45,227,823.25** |

---

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk, LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                    Debtors.              :    (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

**SECOND APPLICATION OF WEIL, GOTSHAL & MANGES LLP,**
**AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM FEBRUARY 1, 2009 THROUGH MAY 31, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("WGM"), attorneys for Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors in possession (together with LBHI, the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman"), for its second application (the "Application"), pursuant to sections 330(a)

and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the interim allowance of

compensation for professional services performed by WGM for the period commencing

February 1, 2009, through and including May 31, 2009 (the "Second Compensation Period"),

and for reimbursement of its actual and necessary expenses incurred during the Second

Compensation Period, respectfully represents:

**PRELIMINARY STATEMENT**

1.       Despite a continuation of the hectic, emergency-driven administration of

the Debtors' cases that carried over to 2009, the Second Compensation Period was marked by

substantial achievements by the Debtors.  The Debtors consummated the sale of Lehman's

investment management division (the "IMD Sale"), preserving and generating an estimated $875

million in value.  They negotiated an unprecedented international protocol with administrators

representing 49 of the Debtors' foreign affiliates that will assist the Debtors in the coordination

of their cases and a variety of other important issues.  They filed their respective schedules of

assets and liabilities and recovered a substantial amount of data necessary for the effective

administration of these cases.  They reached a global settlement resolving litigation commenced

against them by the Pension Benefit Guaranty Corporation (the "PBGC").  They implemented

strategies to maximize the value of their real estate, loan, derivative and bank assets.  They

recovered approximately $3 billion in cash, increasing the total amount of cash presently on hand

to over $13 billion.  In the context of the size and complexity of these cases, the Debtors'

achievements during the four months of the Second Compensation Period are significant.

2.       WGM played a leading and instrumental role in each of the Debtors'

accomplishments during the Second Compensation Period.  WGM devoted a core team of

attorneys to negotiate and facilitate the IMD Sale.  WGM was at the forefront of the Debtors'

negotiations with foreign administrators regarding the historic international protocol.  WGM

coordinated with Alvarez & Marsal North America LLC ("A&M") and rigorously assisted in the

preparation of the Debtors' schedules and statements of financial affairs to ensure that they

contained the requisite disclosures and were as accurate and complete as possible under the

unique circumstances of these cases.  WGM called upon its diverse experience and leadership to

tackle never-before-seen problems that are presented by these cases on a daily basis, including,

in particular, those in connection with the unprecedented number of derivatives contracts (the

"Derivative Contracts") in these chapter 11 cases, the complexities of which are well-recognized

and will have enormous consequences to the Debtors.  WGM committed hours to formulate,

research, and implement strategies that would best maximize the values of the Debtors' estates

on all of those issues as well as hundreds of others.

3.      The transition from the chaotic initial stage of these cases to a controlled

and measured approach to maximize value for the benefit of the creditors was not simple and

was evolutionary during the Second Compensation Period.  The Debtors' accomplishments

demanded a collective effort from the members, counsel, associates, and paraprofessionals of

WGM.  WGM devoted more than 86,000 hours to the Debtors' needs in the Second

Compensation Period.  The diversity of the issues presented by the Debtors' prepetition

businesses and chapter 11 cases commanded the expertise and collaboration of the members of

WGM's business finance and restructuring, real estate, private equity, mergers and acquisitions,

banking and finance, corporate governance, litigation, structured finance and derivatives,

technology and IP transactions, and tax groups in 20 of WGM's offices around the globe.  The

diversity of WGM's expertise, both domestic and foreign, enabled the Debtors to deal efficiently

with their diverse assets and progress towards completion of these chapter 11 cases with

deliberate speed.

4.      Although the Debtors successfully transitioned into the Second

Compensation Period, the effects of the sudden circumstances under which the Debtors

commenced their chapter 11 cases still linger and issues requiring immediate action continue to

arise unpredictably.  For example, during the Second Compensation Period, WGM expended

tremendous effort under extremely time-pressured circumstances to analyze the legal

implications to LBHI's estate from a potential failure of Woodlands Commercial Bank f/k/a/

Lehman Brothers Commercial Bank ("Woodlands") and Aurora Bank FSB f/k/a Lehman

Brothers Bank, FSB ("FSB" and, together with Woodlands, the "Banks"), including the assertion

by a receiver of a claim under section 365(o) of the Bankruptcy Code (an issue on which there is

limited authority, but which could have an enormous impact on the Debtors).  WGM prepared

and obtained Court approval of four motions during the Second Compensation Period to enable

LBHI to take actions to preserve the combined value of the Banks, which was most recently

reported at approximately $1.2 billion, for the benefit of the estates' creditors.

    5.  During the Second Compensation Period, WGM was required to prepare,

review, or respond to the more than 1,030 motions, notices, applications, objections, briefs,

orders, and other pleadings filed in the Debtors' chapter 11 cases.  In addition, 8 new adversary

proceedings were commenced by third parties against the Debtors, increasing to 19 the total

number of pending adversary proceedings seeking a wide range of relief from the Debtors.

Seven motions for relief from the automatic stay, including motions seeking to exercise asserted

rights of setoff, were filed.  Six objections to the Debtors' motion to enter into hedging

transactions to protect the value of their Derivative Contracts were asserted.  And, another appeal

from a decision of this Court was taken (for a total of 4 appeals to date).  Each of these filings

require careful consideration to ensure that the Debtors' interests were adequately represented.

As the Court has acknowledged, the filed pleadings are only a reflection on the surface of

WGM's underlying responsibilities on a daily basis.  For example, WGM assisted the Debtors

respond to requests from the examiner appointed in these cases (the "Examiner") reviewing and producing approximately 3 million documents.

6.     WGM has worked tirelessly to protect the Debtors' assets and to take all actions necessary to preserve and maximize the value of the Debtors' estates.  Throughout these cases, WGM has coordinated its efforts with the professionals of the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the SIPA Trustee (defined below), the Examiner, the foreign administrators appointed to administer the Debtors' foreign affiliates, and a variety of other constituents to ensure that the interests of the Debtors were adequately represented.

7.     WGM's efforts to advise and represent the Debtors in all facets of these cases and the affairs of the Lehman enterprise during the Second Compensation Period were actual and necessary and of substantial benefit to the estates and their creditors.  In the perspective of the complexity and scale of these cases, WGM's charges for professional services performed and expenses incurred are reasonable under the applicable standards.  WGM respectfully asks that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

## BACKGROUND

8.     Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses

and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.        On October 8, 2008, the Debtors filed an application to employ WGM as their attorneys.  No objections were filed to WGM's retention and, pursuant to an order, dated November 21, 2008, the Debtors were authorized to retain WGM as their attorneys to render legal services in the prosecution of their chapter 11 cases.

10.      On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

11.      On September 19, 2008, a proceeding was commenced under Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  James Giddens, Esq. is the trustee (the "SIPA Trustee") appointed to administer LBI's estate under the SIPA (the "SIPA Proceeding").

12.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as Examiner and by order, dated January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

13.      On April 13, 2009, WGM submitted its First Application for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From September 15, 2008 Through January 31, 2009 (the "First WGM Application").

14.      On May 26, 2009, the Court entered an order appointing a fee committee (the "Fee Committee") and approving a fee protocol (the "Fee Protocol").  After a hearing on August 5, 2009, and upon the recommendation of the Fee Committee, on August 13, 2009, the Court entered an order approving the First WGM Application (the "First Interim Order").

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

15.    WGM seeks allowance of interim compensation for professional services performed during the Second Compensation Period in the amount of $45,227,823.25 and for reimbursement of expenses incurred in connection with the performance of such services in the amount of $1,234,783.60.  During the Second Compensation Period, WGM attorneys and paraprofessionals expended a total of 86,190 hours in connection with the necessary services performed.  Of the aggregate time expended, 19,197 recorded hours were expended by partners and counsel of WGM, 54,453 recorded hours were expended by associates, and 12,539 recorded hours were expended by paraprofessionals of WGM.  To the extent that time or disbursement charges for services performed or disbursements incurred relate to the Second Compensation Period, but were not processed prior to the preparation of this Application, WGM reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

16.    This Application has been prepared in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (together the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 3102] (the "Administrative Order," and together with the Local

Guidelines and the UST Guidelines, the "Guidelines").  WGM attempted with the time provided

to comply with the comments and directions of the Fee Committee made in connection with the

First WGM Application.  To the extent necessary, WGM will supplement this Application prior

to the hearing to assure compliance with the directions of the Fee Committee.  Pursuant to the

UST Guidelines, the Debtors have reviewed this Application and approved and support interim

allowance of the amounts requested by WGM for professional services performed and expenses

incurred during the Second Compensation Period.  Pursuant to the Fee Protocol, the Debtors

have provided a copy of this Application to the Fee Committee.

17.    The fees charged by WGM in these cases are billed in accordance with

WGM's existing billing rates and procedures in effect during the Second Compensation Period.

The rates WGM charges for the services rendered by its professionals and paraprofessionals in

these chapter 11 cases are the same rates WGM charges for professional and paraprofessional

services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are

reasonable based on the customary compensation charged by comparably skilled practitioners in

comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

During the Second Compensation Period, WGM billed the Debtors for time expended by

attorneys based on hourly rates ranging from $355 to $950 per hour for domestic attorneys and

$260 to $1,005 for foreign attorneys.  Allowance of compensation in the amount requested

would result in a blended hourly billing rate of approximately $579.45 (based on 73,650.7

recorded hours for attorneys at WGM's regular billing rates in effect at the time of the

performance of services).

18.    WGM consistently monitors its charges and expenses before and after the

submission of monthly fee statements for potential errors or charges that might be inappropriate

or otherwise should be reduced.  As a result, prior and subsequent to the submission of monthly

fee statements for the Second Compensation Period, WGM reduced its charges by $231,197.75

and its expenses by $110,112.99, for a total of $341,310.74 in voluntary reductions, and credited

the Debtors' account for an additional $956.31 mistakenly charged to the Debtors during the

Second Compensation Period.  WGM will continue to diligently monitor its charges and

expenses and, where appropriate, make appropriate reductions.

19.    In accordance with the Administrative Order, to date, WGM received

payments totaling $28,671,892.57 for the Second Compensation Period, consisting of

$27,768,874.00, representing 80% of the fees, and $903,018.57, representing 100% of the

expenses, invoiced for February, March, and April 2009.  WGM has not yet received payment

for either the fees and expenses invoiced for May 2009 or the holdback of fees related to the First

WGM Application allowed pursuant to the First Interim Order.

20.    There is no agreement or understanding between WGM and any other

person, other than members of the firm, for the sharing of compensation to be received for

services rendered in these cases.  Except as explained immediately below, during the Second

Compensation Period, other than pursuant to the Administrative Order, WGM received no

payment and no promises of payment from any source for services rendered or to be rendered in

any capacity whatsoever in connection with the matters covered by this Application.

21.    As described in the First WGM Application, in certain instances, the

Debtors and Lehman may be entitled to reimbursement from third parties, or third parties may be

obligated to pay the Debtors' and Lehman's professionals directly, for legal services provided

and expenses incurred in connection therewith.  For example, in many instances, borrowers may

be responsible for payment of Lehman's costs and expenses in connection with Lehman's role as

a lender or agent.  After consultation and upon agreement with the U.S. Trustee, WGM

endeavored to segregate legal fees and expenses that may be subject to payment by third parties,

and such fees and expenses are not contained within this Application.  Based upon the agreement

with the U.S. Trustee, for each matter in which the Debtors and/or Lehman may be entitled to

reimbursement from third parties, WGM has opened, or will open, a new billing account.  WGM

has sought and will seek payment from third parties for all applicable fees and expenses charged

to these accounts, which will not be subject to any holdback.  WGM has not, and will not, submit

monthly fee statements to the Debtors or Lehman for such matters unless and until such third-

party fails to pay the amount due but will reflect amounts charged and payments received on

account of such matters, in summary fashion, in interim fee applications.

22.    Between the Commencement Date and the date hereof, WGM has

received payment in the aggregate of $8,181,191.77 from third parties related to representations

of the following entities:

| Lehman Party | Last Payment Date | Amount Paid |
|---|---|---|
| LB I Group Inc. | 7/7/09 | $208,318.49 |
| Lehman Brothers Holdings Inc. and Property Asset Management Inc. | 3/26/09 | $825,000.00 |
| Lehman Brothers Holdings Inc. | 4/17/09 | $17,500.00 |
| Lehman Brothers Holdings Inc. | 7/6/09 | $1,126,759.58 |
| Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc., and Property Asset Management Inc. | 5/8/09 | $1,541,297.70 |
| Lehman Brothers Real Estate Mezzanine Partners, L.P. | 10/10/08 | $26,000.00 |
| Lehman Brothers Real Estate Mezzanine Partners, L.P. | 6/12/09 | $1,782.00 |
| Lehman Brothers Real Estate Partners | 3/3/09 | $125,000.00 |
| Lehman Brothers Real Estate Partners | 6/2/09 | $57,113.84 |
| Lehman Commercial Paper Inc. | 1/29/09 | $25,887.97 |
| Lehman Commercial Paper Inc. | 3/19/09 | $3,511.50 |
| Lehman Commercial Paper Inc. | 3/31/09 | $46,216.85 |
| Lehman Commercial Paper Inc. | 4/8/09 | $75,000.00 |
| Lehman Commercial Paper Inc. | 5/18/09 | $12,119.00 |
| Lehman Commercial Paper Inc. | 5/20/09 | $20,309.70 |
| Lehman Commercial Paper Inc. | 6/5/09 | $8,979.50 |
| Lehman Commercial Paper Inc. | 6/23/09 | $12,986.00 |
| Lehman Commercial Paper Inc. | 6/24/09 | $13,030.20 |
| Lehman Commercial Paper Inc. | 6/26/09 | $1,691,966.58 |
| Lehman Commercial Paper Inc. | 6/30/09 | $11,432.00 |
| Lehman Commercial Paper Inc. | 7/7/09 | $243,617.13 |

| Lehman Party | Last Payment Date | Amount Paid |
|---|---|---|
| Lehman Commercial Paper Inc. | 7/14/09 | $56,176.91 |
| Lehman Commercial Paper Inc. | 7/24/09 | $26,760.80 |
| Lehman Commercial Paper Inc. | 7/30/09 | $13,992.50 |
| Lehman Commercial Paper Inc. | 8/4/09 | $3,949.50 |
| Lehman Commercial Paper Inc. | 8/7/09 | $79,875.59 |
| Lehman Commercial Paper Inc. | 8/10/09 | $7,599.00 |
| Lehman Commercial Paper Inc. | 8/13/09 | $1,899,009.43 |

In addition, WGM incurred, but has not yet receive payment from third parties for additional fees and expenses in connection with these and other matters.  WGM expects to receive all such payments from such third parties.  To the extent any third party fails to reimburse WGM for such fees or expenses, however, WGM is authorized to seek reimbursement from the Debtors or Lehman in accordance with the Administrative Order.[1]

23.     As of the date hereof, WGM has a remaining credit balance in favor of the Debtors for future professional services to be performed, and expenses to be incurred, in the amount of $4,422,608.80.  WGM will file further disclosures to the extent reconciliation of time and expenses incurred prior to the Commencement Date results in further charges.

24.     Annexed hereto as Exhibit A is a certification regarding compliance with the Guidelines.

25.     Pursuant to the UST Guidelines, the Summary Sheet filed in connection with this Application includes a schedule of WGM professionals and paraprofessionals who have performed services for the Debtors during the Second Compensation Period, the capacities in which each such individual is employed by WGM, the department in which each individual practices, the hourly billing rate charged by WGM for services performed by such individuals, the year in which each professional was first licensed to practice law and the aggregate number of hours expended in this matter and fees billed therefor.

---

[1] Based upon an agreement with the U.S. Trustee, WGM is not required to maintain or provide detailed task codes or billing increments for such requests.

26.     Annexed hereto as <u>Exhibit B</u> is a schedule specifying the categories of expenses for which WGM is seeking reimbursement and the total amount for each such expense category.  An itemized schedule of all such expenses has been provided to the Debtors, the Court, the attorneys for the Creditors' Committee, and the U.S. Trustee

27.     Annexed hereto as <u>Exhibit C</u>, pursuant to the UST Guidelines, is a summary of WGM's time records billed during the Second Compensation Period using project categories hereinafter described.  WGM maintains computerized records of the time spent by all WGM attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Copies of these computerized records have been furnished to the Debtors and, subject to redaction or modification for the attorney-client privilege where necessary to protect the Debtors' estates, the Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee in the format specified by the UST Guidelines.

**SUMMARY OF SERVICES PERFORMED BY
<u>WGM DURING THE SECOND COMPENSATION PERIOD</u>**

28.     Descriptions of some of the more significant tasks performed by WGM during the Second Compensation Period are set forth below.

29.     <u>Derivatives</u>.  As of the Commencement Date, Lehman was party to or guarantor of over 10,000 Derivative Contracts with an excess of 1,000,000 transactions.  The size and complexity of the Debtors' Derivative Contracts are unprecedented for a chapter 11 case.  WGM devoted substantial resources to assess, often without the benefit of direct precedent, the rights and strategic options available to the Debtors as they seek to maximize the value of their Derivative Contracts in light of the unique treatment accorded to these contracts under the Bankruptcy Code's "safe harbor" provisions (the "<u>Safe Harbor Provisions</u>").  Throughout the Second Compensation Period, WGM assessed the Debtors' rights with respect to

issues such as the validity of terminations, counterparty non-performance, and assertions of rights of setoff, which were raised both informally in direct negotiations and formally through the commencement of adversary proceedings, such as *Wong v. HSBC USA, Inc., et. al.* (Adv. Pro. No. 09-1120 (JMP)) and *Lehman Brothers Special Financing Inc. v. BNY Corp. Trustee Serv. Ltd.* (Adv. Pro. No. 09-1242 (JMP)), or motions filed against the Debtors, such as a motion by individual municipal bond claimants for relief from the derivative procedures order authorizing the Debtors to settle or assume and assign their prepetition Derivative Contracts.

30.     After careful planning, WGM put the Debtors' affirmative strategies into action through the commencement and prosecution of adversary proceedings, such as Ballyrock ABS CDO 2007-1 Limited, Metropolitan West Asset Management LLC and Libra CDO Limited.  WGM also prepared and filed a motion to compel performance of a Derivative Contract against Metavante Corporation.  These proceedings raise significant legal issues and will have far-reaching ramifications on recoveries to creditors as they are representative of thousands of similar derivative and financial transactions to which the Debtors are parties. Given the substantial risks and enormity of the potential impact on the Debtors' stakeholders, WGM has taken a deliberate and measured approach with the Debtors' derivative assets to carefully craft global strategies for the Debtors.

31.     WGM has been available to respond to inquiries on a daily basis from the over 300 full-time members of the Debtors' derivative teams charged with winding down the Derivative Contracts and collecting termination payments.  WGM assisted the Debtors in reconciling their agreements with hundreds of counterparties and ensuring that resolutions comply with applicable law.  With WGM's guidance, the Debtors recovered approximately $2.4

billion during the Second Compensation Period for the benefit of creditors in connection with the settlement of their Derivative Contracts.

32.    <u>Bank Issues</u>.  As referenced above, at numerous points during the Second Compensation Period, the Banks faced a risk of seizure by their respective regulators.  WGM took immediate action to evaluate the consequences associated with any seizure and the benefits associated with the Banks' preservation.  WGM coordinated with the Creditors' Committee on the Debtors' strategy regarding the Banks and with the support of the Creditors' Committee, prepared two motions in February 2009 to obtain authorization for LBHI to make capital contributions to restore the capital levels of the Banks.  In March 2009, WGM negotiated and drafted a master repurchase agreement with FSB and assisted the Debtors in undertaking other actions to further support the capital level of FSB.  WGM prepared and obtained Court approval of two additional motions to allow the Debtors to consummate the master repurchase agreement and to take the capital support actions.

33.    <u>Real Estate</u>.  As of the Commencement Date, the Debtors and their affiliates had tens of billions of dollars invested in both the debt and equity of various commercial and residential real estate projects the world over.  WGM dedicated a significant amount of time to review extensive documentation and to familiarize itself and the Creditors' Committee with Lehman's prepetition transactions and counterparties to implement the best available course of action for the Debtors' real estate assets.

34.    During the Second Compensation Period, WGM devoted time to drafting motions for authorization to provide liquidity to projects that the Debtors determined, in their business judgment, are likely to benefit their creditors.  For example, to preserve the value of a real estate construction loan in excess of $522 million, LBHI obtained authorization to enter into

a mortgage loan purchase agreement and make residential loan financing available to purchasers

of certain residential condominiums, so as to increase the likelihood that LBHI's construction

loan can be paid in full.  WGM also negotiated the restructuring of a $459 million loan made by

LBHI in connection with the acquisition of various office properties throughout the United States

to avoid diminished recoveries that would otherwise result from foreclosure sales under currently

depressed market conditions.  More generally, WGM drafted documentation for sale

transactions, prepared motions to obtain Court approval of real estate sales and restructurings,

and negotiated with the Creditors' Committee and transaction counterparties in connection with

numerous other real estate matters.  All of these actions have contributed to maximizing

recoveries for creditors.

　　　　　35.　　　WGM also expended considerable effort to defend the Debtors against

motions brought by borrowers to compel the Debtors to immediately assume or reject loan

agreements under which a Debtor acted as lender or to lift the automatic stay to prime the

Debtors' liens.  WGM's extensive experience enabled the Debtors to expeditiously resolve

formal and informal demands of their counterparties and to take necessary actions that will

preserve the value of Lehman's real estate portfolio.  Additionally, WGM's professionals

dedicated significant resources to propose and research the viability of strategies to foreclose

upon the properties of borrowers who have defaulted under their loan agreements.

　　　　　36.　　　Adversary Proceedings.  WGM continued to defend against adversary

proceedings filed against the Debtors in these chapter 11 cases, as well as in the commencement

of adversary proceedings against third parties to recover funds or property belonging to the

Debtors.  In total, there were 28 adversary proceedings (the "Adversary Proceedings") pending

during the Second Compensation Period.  The Adversary Proceedings involve extraordinarily

complex financial securities, the scope of the Safe Harbor Provisions, the rights of parties with respect to certain posted collateral, claims filed by former employees, claims relating to certain funding commitments and various other causes of action.  During the Second Compensation Period, WGM actively engaged in developing strategies and litigating to protect the rights and interests of the Debtors in these Adversary Proceedings.  Importantly, WGM played a leading role in the Debtors' evaluation and commencement of 5 Derivative Contract-related affirmative Adversary Proceedings, which could yield, directly or indirectly, billions of dollars for the Debtors' estates and creditors.

      37.     WGM's professional services in connection with the 28 Adversary Proceedings included: thoroughly investigating and evaluating all claims asserted by and against the Debtors; drafting appropriate answers, counterclaims, motions to dismiss, and motions for summary judgment; conducting legal research; negotiating appropriate dismissals and settlements; attending pretrial conferences and discovery conferences; negotiating appropriate discovery schedules; drafting discovery requests, including interrogatories, requests for production of documents, and requests for admissions; responding to discovery requests, including asserting appropriate objections to such requests; reviewing documents to produce to and documents produced by opposing litigants; taking and defending depositions; and various other tasks.

      38.     More specifically, during the Second Compensation Period, WGM drafted and filed 4 motions to dismiss or joinders thereto, a motion for summary judgment, and 7 complaints.  WGM also prepared and filed a response to a motion to dismiss, a response to a motion for summary judgment, and answers to 4 complaints filed against the Debtors during the Second Compensation Period.  WGM's efforts resulted in a dismissal and/or settlement of 3

Adversary Proceedings against the Debtors during the Second Compensation Period.  WGM continues to devote considerable time to these matters as these chapter 11 cases progress.

39.    <u>Asset Sales</u>.  During the Second Compensation Period, WGM represented the Debtors in connection with the closing of the IMD Sale on May 4, 2009, as well as out-of-court sales of Lehman's Merchant Banking funds, Venture Capital funds and the Satori funds.  In addition, throughout the Second Compensation Period and beyond, WGM has worked with the Debtors in connection with thirteen additional asset divestiture transactions in various stages of the sale process.  WGM advised the Debtors in negotiating and consummating other sale transactions pursuant to section 363 of the Bankruptcy Code, such as the sale of the Debtors' interest in LBT Varlik Yonetim Anonim Sirketi, an indirect subsidiary of LBHI that was formerly Lehman's principal asset in Turkey, the sale by GT Investment Company I, LLC, one of LBHI's wholly owned subsidiaries, and the sales of the Debtors' Gulfstream GIV-SP jet aircraft and Sikorsky S-76C helicopter.

40.    In connection with each of these transactions, WGM conducted extensive diligence, managed data rooms, negotiated confidentiality agreements with bidders, reviewed and advised on marketing materials, diligenced the transactions and their investments, developed and counseled on proposed structures for potential transactions, counseled and advised on potential litigation and negotiated and drafted transaction documents, such as purchase agreements, stockholders agreements, consents, transition services agreements, notes, collateral agreements, partnership agreements, and debt resale agreements.  WGM also reviewed the Debtors' corporate structure, assets and liabilities, regulatory requirements, and issues of foreign law, including tax, employee and transfer considerations.  As a result of WGM's efforts, the Debtors have generated and preserved substantial value for their creditors.

41.     <u>Loan Portfolio</u>.    Prior the Commencement Date, the Debtors were among
the nation's leading lenders, with over $46 billion of loan commitments outstanding to borrowers
from a multitude of industries for use in their general business operations.  During the Second
Compensation Period, WGM continued to assist the Debtors in assessing and reviewing their
loan portfolio to enable the Debtors to make informed business decisions that are most likely to
maximize value for creditors.  Among other things, WGM continued to negotiate, draft and
prepare all documents needed for the Debtors to take actions as lender, agent and loan participant
for over 700 corporate loans and to terminate over $12 billion of unfunded loans and loan
commitments.  During the Second Compensation Period, WGM also continued to provide legal
services to the Debtors in connection with resignation from administrative agency positions,
elevation of participations, and the transfer of agency positions to and from other financial
institutions.

42.     Additionally, as of the Commencement Date, certain of the Debtors were
party to hundreds of pending transactions for the purchase or sale of commercial debt.  Early in
these chapter 11 cases, WGM prepared and filed two motions seeking to assume or reject open
trade confirmations and the Debtors' efforts to close and settle assumed open trade confirmations
continue to demand the attention of WGM, requiring, for example, counseling regarding open
trades, the filing of multiple responsive pleadings and the negotiation and preparation of
stipulations resolving multiple objections to the Debtors' motions to assume open trade
confirmations.

43.     <u>International Matters</u>.  As described above, during the Second
Compensation Period, WGM drafted an ambitious multilateral cross-border insolvency protocol
– the first such protocol to be truly multilateral and global in nature – and assisted the Debtors in

negotiations over a period of three months among scores of administrators, liquidators, and trustees of certain foreign affiliates of the Debtors who are subject to a variety of insolvency, administration, liquidation, rehabilitation, receivership or like proceedings.  With WGM's assistance, the Debtors reached an unprecedented agreement with many of the foreign administrators.

44.    WGM advised the Debtors and dealt directly with the foreign administrators' attorneys, ultimately persuading many of the foreign administrators that were initially skeptical of the need for, and the net benefit that would be gained from, establishing a framework within which they might efficiently coordinate their various insolvency proceedings worldwide.  The signatories to the protocol hope to achieve, through its framework, agreement on common issues that will expedite the resolution of, among other things, intercompany claims and avoid the need for wide-scale, costly and wasteful litigation.

45.    In addition, WGM continued to devote significant time and resources to preserving the Debtors' foreign interests.  In most of the foreign insolvency proceedings, LBHI is the largest creditor of and is a member of the creditors' committees in many of these foreign cases.  As a result, WGM was in constant contact with foreign administrators, prepared and filed proofs of claim, and appeared in such insolvency proceedings, as appropriate.  In particular, WGM played an active role in the protection of the Debtors' interests in the administration proceedings of Lehman Brothers International (Europe) ("LBIE"), the Debtors' primary foreign subsidiary under the insolvency laws of the United Kingdom.  WGM also prepared legal memoranda and advice for Lehman's foreign counsel on various aspects of U.S. law where relevant to the Debtors' operations overseas.  WGM generally assisted foreign counsel in representing the Debtors in both transactional matters and litigation in foreign courts.

46.    <u>Executory Contracts</u>.  Prior to the Commencement Date, the Debtors and LBI were parties to hundreds of thousands of executory contracts that were necessary for the operation of Lehman's prepetition businesses.  During the Second Compensation Period, WGM continued to assist the Debtors in evaluating their rights and obligations associated with executory contracts.  Evaluation of the executory contracts has been complicated by the prepetition global nature of Lehman's interconnected businesses.  The sale of the North American capital markets and investment banking business to Barclays Capital Inc. ("<u>Barclays</u>") and the commencement of the SIPA Proceeding with respect to LBI have further complicated the Debtors' assessment of their executory contracts.  The Debtors and WGM must contact and often consult with multiple parties before a determination can be made regarding a particular executory contract.

47.    <u>Transparency</u>.  Disclosure to the Court, the U.S. Trustee, the Creditors' Committee and their professionals and all creditors has been a fundamental theme of these cases. WGM has taken the lead in assisting the Debtors in the disclosure process and in providing information to the Debtors' stakeholders.  Most importantly during the Second Compensation Period, in March 2009, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities, Schedules of Current Income and Expenditure, and Schedules of Executory Contracts and Unexpired Leases (collectively, the "<u>Schedules and Statements</u>"), consisting of over 4,500 pages, the preparation of which was a monumental undertaking.  WGM attorneys spent substantial time consulting with the Debtors and their advisors regarding a wide array of complex and unique issues the Debtors confronted during this process and, subsequently, reviewing thousands of pages of Schedules and Statements and coordinating with A&M regarding amendments thereto.

48.    WGM continued to interface with third-parties regarding the Debtors' chapter 11 cases.  As the Court is aware, WGM established a "Lehman Team Hotline" through which any party in interest can email WGM attorneys or call to speak with WGM attorneys regarding developments in these cases.  WGM attorneys spend hours each day responding to emails and calls on a continuous basis to ensure that individual stakeholders have access to accurate information and a platform to raise inquiries.  During the Second Compensation Period, WGM responded to hundreds, if not thousands, of informal inquiries related to the status of these cases, prepetition activities of the Debtors, and specific contract counterparty demands.

49.    Additional professional services rendered by WGM during the Second Compensation Period, organized in accordance with WGM's work codes, are described below.

a.    Case Administration

(i)    Entity Filings

- prepared and filed chapter 11 petitions and related documents, including corporate ownership statements and board resolutions, for three Debtors; and
- conducted internal team meetings, conferences, and teleconferences with the Debtors, their professionals, the Creditors' Committee, and other parties in interest regarding preparation for and filing of same.

(ii)    General Pleading Preparation

- drafted, revised, and filed various motions, notices, applications, objections, and orders; and
- researched various legal issues and prepared memoranda regarding same.

(iii)    Case Administration

- reviewed and distributed filings in the main chapter 11 cases, adversary proceedings, appeals and non-Bankruptcy Court litigations to appropriate Lehman, A&M, and WGM teams;
- maintained and regularly filed updated master service lists for parties in interest; and
- prepared and updated multiple corporate organizational and structure charts of Lehman's global affiliates and investments for use by Lehman, A&M, and WGM teams.

(iv)  Document Management

- conducted document review for factual investigation, privilege and attorney work product and document production in response to numerous discovery requests and subpoenas in connection with various governmental investigations, Examiner investigations and ongoing and potential litigations; and
- managed and maintained various data rooms and databases in connection with, among other things, asset sales and corporate governance.

b.    Unsecured Creditors Issues/Meeting/Communications/Creditors' Committee

- prepared for and participated in meetings and teleconferences with the Creditors' Committee and its professionals regarding the status of the cases, settlement of estate causes of actions, document demands, asset sales, derivative transactions, inter-company, international and various other issues;
- responded to numerous telephone and email inquiries from foreign and domestic creditors regarding chapter 11 cases; and
- conducted research regarding and drafted letter to the U.S. Trustee in response to request for the appointment of additional official committees of unsecured creditors.

c.    Secured Creditors Issues/Meetings/Communications

- conducted legal research and responded to assertions of setoff rights, requests for adequate protection, and other claims by multiple counterparties; and
- reviewed documents regarding, responded to motions and drafted stipulations in response to requests to segregate cash collateral.

d.    Equity Holder/Motions/Hearings/Communications

- responded to inquiries from shareholders regarding chapter 11 process and treatment of preferred and common stock and securities issued by various Lehman entities.

e.    Case Strategy

(i)  Strategy Meetings

- conducted internal meetings and conferences, and teleconferences with the Debtors, the Creditors' Committee, the Examiner, their respective professionals and other parties in interest regarding new case filings, case strategy, business issues, preparation of and responses to various motions and applications, numerous sale transactions of the Debtors and their non-

Debtor affiliates, transition services agreements, general litigation strategy, governmental and other investigations, corporate governance, inter-company issues, international issues, and Court agenda and hearing matters.

   (ii)   Project Monitoring/Court Calendar

- monitored Court dockets for Debtors' main cases, adversary proceedings and various state and federal court dockets for Lehman-related litigations;
- prepared summaries of Court hearings and pleadings and objections, work-in-progress reports, and case calendar for distribution to the Debtors and internal teams; and
- reviewed and responded to requests from Debtors, its professionals, and third parties regarding pending Court matters.

f.     Hearing and Court Matters

   (i)   Debtors

- participated in Court hearings, including omnibus hearings on February 11 and 25,  March 11 and 25, April 7 and 22, May 13 and 28, and other hearings on February 17 and 26, March 5, 13, and 31, April 30, and May 1, 22, and 28, and in telephonic and in-person conferences in the Court's chambers;
- prepared for hearings, including preparation of proffers, witness questions and other supporting documentation;
- obtained orders to show cause to shorten notice for emergency relief;
- coordinated regularly with the Court and parties in interest regarding hearings and agenda items; and
- drafted and obtained approval of revisions to case management order for notice and other hearing procedures.

   (ii)   Court Communications

- responded to inquires made by the Court regarding pleadings and case administration; and
- prepared for and participated in Chambers status conference with the Court regarding fee applications and the appointment of the Fee Committee.

g.     WGM Retention/Billing/Fee Applications

- prepared monthly fee statements in compliance with the Guidelines and redacted materials distributed to notice parties for privilege and confidential information; and
- prepared and filed the First WGM Application and began preparation of this Application.

h.    Retention/Fee Applications: Ordinary Course Professionals

- regularly conferred with Lehman and its approximately 100 ordinary course professionals regarding retention procedures and conflicts issues;
- conferred with US Trustee regarding ordinary course professional issues and ensured compliance with UST Guidelines;
- assisted the Debtors in negotiating engagement letters with ordinary course professionals and certain parties for whom Court approval was not required; and
- reviewed and revised various affidavits and disclosure statements of ordinary course professionals and prepared and filed supplemental lists of ordinary course professionals in accordance with the Court-approved retention procedures.

i.    Retention/Fee Applications: Other Professionals

- conferred with the Court and the U.S. Trustee regarding appointment of the Fee Committee and protocol for review of professionals' fee applications;
- drafted Debtors' applications to retain Huron Consulting Group and drafted supplemental applications for the Debtors' retention of Jones Day, McKee Nelson LLP and Simpson Thacher and Bartlett, LLP;
- conferred with various applicants regarding scope of retention, terms of compensation and related issues;
- reviewed monthly fee statements of various professionals for compliance with the Guidelines; and
- conferred with U.S. Trustee regarding various retention issues.

j.    Schedules/Statements of Financial Affairs

- conducted internal team meetings, conferences, and teleconferences with A&M regarding preparation of Schedules and Statements;
- reviewed and revised drafts of Schedules and Statements; and
- conducted legal research regarding various issues related to same.

k.    U.S. Trustee Related Issues

- conferred and corresponded with U.S. Trustee regarding case matters, including Schedules and Statements, cash management, bank accounts, investments, retention and compensation of professionals, the appointment of additional committees, extensions of filing deadlines, and ordinary course issues;
- monitored compliance with the Guidelines; and
- assisted Debtors in preparation and filing of monthly operating reports.

l.        General Business Operations

    (i)    Party in Interest Communications

- responded to general inquiries regarding bankruptcy process from third parties, including customers, vendors, shareholders, secured and unsecured creditors, and potential purchasers of assets; and
- conferred with Lehman, A&M and Creditors' Committee regarding general operations in the ordinary course of business.

    (ii)   Cash Management

- participated in conferences and teleconferences with Lehman, A&M, the Creditors' Committee, the U.S. Trustee, the SIPC Trustee and various parties-in-interest including regarding Lehman's cash management systems, misdirected wire transfers; various banking institutions, prepetition bank accounts, postpetition administrative freezes, threatened and potential setoffs, and postpetition account administration;
- researched, drafted memoranda regarding and addressed numerous issues, both foreign and domestic, relating to inter-company liquidity issues;
- drafted agreements with banking institutions to prevent setoffs of postpetition deposits for debtor-in-possession accounts;
- resolved various issues surrounding postpetition misdirected wire transfers and prepared stipulations regarding same;
- prepared motion and obtained authority for the Debtors to maintain, close and open bank accounts and implement investment guidelines; and
- reviewed and drafted numerous loan and security documents and related corporate board resolutions, for the Debtors and their affiliates.

    (iii)  A&M Issue Coordination

- coordinated with A&M teams on all issues and conducted meetings and teleconferences regarding, among other things, case strategy and administration, creditor claims, inter-company issues and communications with Creditors' Committee and parties in interest.

    (iv)   Other

- negotiated, drafted, reviewed, and revised various documents and researched, prepared memoranda and provided advice regarding numerous Lehman-related transactions, including loan agreements, participation agreements, forbearance agreements, coordinated servicing arrangements, agency resignation and transfer documents, commitment terminations, and limited liability company agreements; and
- prepared and filed various corporate documents, including annual reports for various entities.

(v)   Loans/Investments – General

- obtained authority, over numerous objections, for the Debtors to grant first priority liens in collateral posted in connection with certain hedging transactions, and negotiated and drafted hedging protocol and related motion and reply to objections in connection with same; and
- reviewed and advised Lehman regarding its rights pursuant to numerous corporate documents including loan agreements, participation agreements, and servicing agreements.

m.   Corporate Governance

- performed diligence regarding and prepared, updated and maintained organizational charts of the Lehman entities, their authorized signatories, and directors and officers in connection with individual transactions and general corporate use;
- attended meetings of LBHI's board of directors, drafted resolutions and minutes, and advised the Debtors' directors and officers on issues arising in the Debtors' chapter 11 cases;
- prepared for and attended meetings with the Debtors and A&M regarding reporting, compliance, organizational and related matters;
- drafted numerous organizational documents and consents for various issues and prepared and filed Form 8-Ks and other documents with the United States Securities and Exchange Commission (the "SEC"); and
- performed and coordinated document review, collection and production in response to various governmental and regulatory requests.

n.   Insurance Issues

- prepared motion and proposed order and obtained authority for the Debtors to modify the automatic stay to allow for advancements of insurance proceeds under the Debtors' directors and officers and fiduciary liability insurance policies;
- reviewed, performed research and advised regarding the Debtors' insurance policies and coverage; and
- corresponded and participated in meetings and teleconferences with the Debtors, A&M and the Creditors' Committee's professionals regarding same.

o.   Employee/ERISA/Benefits Issues

- advised LBHI's board of directors regarding and negotiated, drafted and obtained Bankruptcy Court and District Court approval of settlement with PBGC; and
- drafted, reviewed and revised employment, separation and retirement agreements and plans for various Lehman employees, and advised the Debtors and A&M regarding employee benefits, severance, continuation

of employment agreements and other issues, including those in connection
with UK pension liabilities and various asset sales, including the sale of
Lehman's IMD.

p.    Asset Disposition/363 Issues

(i)    Barclays Sale

- reviewed corporate records, negotiated with Barclays, addressed issues
  and, in certain instances, drafted clarification and other stipulations in
  connection with the Barclays Sale;
- negotiated and drafted amendments to transition services agreement
  between the Debtors and Barclays; and
- analyzed and conducted research regarding potential claims and causes of
  action in connection with the sale transaction.

(ii)    IMD Sale

- conducted factual due diligence and legal research regarding Lehman's
  Investment Management Division, including corporate structure, assets
  and liabilities, regulatory and other consents required for transfers, and
  foreign issues relating to sale, including tax, employee and transfer
  considerations in both Asia and Europe;
- negotiated, drafted and reviewed numerous complex transaction
  documents, including stockholders agreements, advisory agreements,
  consents, transition services agreements, LLC agreements, excluded asset
  service agreements, operating agreements, step plans, schedules,
  contribution agreements, real property leases, amendments and
  assignments, unit purchase agreement and various amendments;
- organized and participated in regular meetings and teleconferences with
  teams in Asia and Europe, including Lehman, A&M, Lazard, the Debtors'
  regulatory counsel and tax professionals, and the purchaser and its
  attorneys and professionals;
- coordinated all aspects of closing of the transaction, including regulatory
  compliance domestically and in Canada, Europe and Asia, the formation
  of numerous entities, and pre-closing contributions and post-closing
  structure for the businesses within Lehman's Investment Management
  Division; and
- negotiated with LBI, drafted motion and proposed order and obtained
  approval for the assumption and assignment of certain executory contracts
  by LBI to the purchaser.

(iii)    Real Estate Sales

- negotiated, drafted and reviewed numerous complex transaction
  documents related to the sale of various real estate assets;

- conducted factual due diligence and legal research regarding the Debtors' real estate funds, including corporate structure, assets and liabilities, regulatory and other consents required for transfers, and other issues relating to sales of such funds, including tax, employee and transfer considerations both domestically and abroad;
- researched and reviewed potential bankruptcy implications on certain credit agreements and other documents related to real estate assets;
- organized and participated in regular meetings and teleconferences with Lehman, A&M and various other professionals, reviewed partnership documents, liaised with domestic and international local counsel to coordinate real estate asset disposal strategy;
- conducted sale process related to Lehman Brothers Real Estate Private Equity Funds, Lehman Brothers Real Estate Partners Funds and Lehman Brothers Real Estate Mezzanine Partners Funds;
- drafted and reviewed documents related to various transactions, facilities and properties, including the Brookdale Facility, Entegra Synthetic Facility, Tronox Mortgage Assignments, LB Skypower LLC, Palatine Condominiums, Lincoln Crossing, Sunstone Salt Lake City Hotel, and Bressi Ranch; and
- coordinated overall status and structure of sale transactions, including regulatory compliance domestically and in Europe and the formation of numerous entities, pre-closing contributions and post-closing structure for the sale of various real estate funds.

(iv) Sales of Miscellaneous Assets

- conducted factual due diligence, preformed legal research regarding, negotiated and drafted documentation for the sale of, among other things, various aircraft, helicopter and flight simulators and drafted pleadings for Court approval of same;
- coordinated with the Creditors' Committee and drafted, revised and filed pleadings for authorization to sell or abandon *de minimus* assets and responded to objections in connection with same;
- negotiated the terms of and prepared documentation regarding the sale of collateralized debt obligations; and
- organized and participated in regular meetings and teleconferences with A&M and other professionals, with respect to same.

(v) Other

- attended to matters related to the transfer of various other significant assets, such as the completion of diligence and negotiation and drafting of documentation for various transactions involving Venture Capital Funds, Executive Monetary Management Inc., the Debtors' interest in LBT Varlik Yonetim Anonim Sirketi, Lehman Brothers Merchant Banking, Libertyview Capital Management Inc., GTH LLC, Lehman's Brazilian

operations, LB I Group Inc., and Lehman Brothers Asset Management
Europe; and

- drafted motions and proposed orders and/or attended hearings to obtain
Court authorization in connection with transactions involving Sixth Gear
Inc., Nomura, Formula I, Lehman Brothers Commercial Bank; and the
Debtors' interest in LBT Varlik Yonetim Anonim Sirketi.

(vi)    Domestic Banks & Aurora

- met and conferred with regulators, including the Office of Thrift
Supervision, the Federal Deposit Insurance Company, and the Department
of Financial Institutions for the State of Utah regarding the Banks;
- prepared four motions, orders to show cause, and supporting declarations
for authority to fund a capital contribution to Woodlands, increase the
capital level of FSB, enter into a master repurchase agreement with FSB
and take certain actions to support the capital level of FSB; and
- researched various regulatory and banking law issues and participated in
conferences with Lehman and A&M regarding same.

q.    Executory Contracts/365 Issues

(i)    Executory Contracts/365 Issues

- participated in numerous conferences with Debtors, A&M and objecting
parties regarding motion for approval of the assumption or rejection of
open trade confirmations, responded to objections to the motion, and
negotiated and drafted stipulations and settlement letters regarding same;
- drafted and filed motion for authorization to reject certain executory
contracts and leases and subleases of non-residential real property;
- participated in conferences regarding and reviewed and revised lists
regarding same;
- reviewed and prepared summaries of loan transactions, and resolved issues
related to collateral and elevation requests, enforcement of liens, and
defaults under transaction documents.

(ii)    Derivatives/SWAP Agreement Issues

- drafted and filed adversary complaints against (i) Ballyrock ABS CDO
2007-1 Limited and Wells Fargo Bank, N.A., (ii) Metropolitan West Asset
Management, LLC et al., and (iii) Libra CDO Ltd., et al. in connection
with derivative contracts;
- participated in office and telephone conferences with the Debtors, A&M,
Natixis North America Inc., and Creditors' Committee to develop
litigation strategies and discuss various derivative transactions;
- conducted due diligence of derivative transactions including collateralized
debt obligations and swap novations;

- reviewed, summarized, and catalogued numerous derivative instruments including certain ISDA agreements requiring special attention to set-off and guarantee provisions;
- prepared and filed motion to enforce the automatic stay against and compel performance of Metavante Corp. under a derivative contract;
- conducted research and drafted memoranda regarding (i) jurisdictional issues related to foreign swaps, (ii) subordination agreements, (iii) termination payments and the reasonableness standard in ISDA termination calculations; (iv) conflicts of law, safe harbor and set-off issues, (v) non-performing counterparties;
- negotiated, drafted and reviewed confidentiality agreements re: settlement negotiations;
- drafted and reviewed numerous termination notices and stay letters to derivative counterparties; and
- reviewed, assessed and proposed use of alternate dispute resolution options for all derivatives disputes.

r.    Real Property/365 Issues

- drafted pleadings and attended hearings to defend the Debtors against motions brought by borrowers to compel the immediate assumption or rejection of loan agreements under which a Debtor acted as lender or to lift the automatic stay to prime the Debtors' liens securing such loan agreements with new financing from third party lenders;
- drafted pleadings to settle the claims of borrowers arising from the numerous loan agreements under which the Debtors may have lending obligations and proposed and researched the viability of strategies to foreclose upon the properties of borrowers who have defaulted under same;
- drafted motions seeking the Court's approval to infuse additional cash into various projects, including through a mortgage loan purchase agreement to provide financing for the Canyon Ranch Living Miami Beach Condominiums;
- addressed various issues regarding Debtors' interests in various other hotel/condominium projects, including the drafting of agreements and review of related documents;
- prepared pleadings seeking Court approval of a loan foreclosure procedures motion and protocol pursuant to which the Debtors will be able to efficiently effectuate discounted pay-off transactions;
- negotiated, drafted and reviewed numerous real property leases and complex real estate loan restructuring documents, including the restructuring of a $459 million loan to Broadway Partners Fund Manager LLC, and drafting of pleadings to obtain Court approval of same;
- attended to numerous issues related to the SunCal's chapter 11 cases, including proof of claims issues, drafting of a lift stay motion, preparation for various hearings, and drafting memorandum of law regarding equitable subordination and setoff;

- drafted and filed the briefs in support of motion to dismiss SunCal's complaint against Lehman affiliates in SunCal's chapter 11 case and response to Ninth Circuit Bankruptcy Appellate Panel order granting leave to file second amended complaint in SunCal litigation, and participated in related hearings;
- conducted factual due diligence and legal research regarding various properties and commercial and residential real estate loans;
- attended to numerous issues with remaining leases for non-residential real property, including the assumption, rejection or modification of various leases at 1271 Avenue of the Americas, entry into a settlement with LBI, and the drafting of pleadings and negotiation of stipulations to extend the time to assume or reject other existing leases throughout the United States;
- attended to various issues regarding LB 2080 Kalakaua Owners LLC including the negotiation and drafting of a purchase agreement for the sale of its property and pleadings for approval of same, participation in client meetings, internal strategy sessions and attendance at court hearings to preserve the Debtors' interests in real property leases;
- reviewed and negotiated a settlement proposal with respect to various issues related to LB Rose Ranch LLC; and
- attended to numerous issues regarding the servicing of real estate loans by Aurora Loan Servicing LLC.

s.    Adversary Proceedings

- participated in internal team meetings, conferences, and teleconferences with Debtors regarding pending and prospective litigations, legal issues, and related strategy;
- researched, interviewed and retained expert witnesses;
- reviewed, coordinated, and responded to various formal and informal discovery requests related to adversary proceedings;
- drafted and filed numerous adversary complaints;
- prepared and filed answers, affirmative defenses, and responded to motions; drafted confidentiality agreements, settlements, and stipulations; and  participated in pretrial conferences regarding certain adversary proceeding filed against the Debtors; and

t.    Bar Date Motion and Claims Reconciliation Issues

- conducted numerous meetings and teleconferences with the Debtors, A&M, the Creditors' Committee and its professionals regarding and drafted and filed a motion to establish deadlines for filing proofs of claim, to approve the form and manner of notice thereof, and approve the proof of claim forms; and
- responded to numerous inquiries from potential creditors and contract counterparties regarding the filing of proofs of claim and the scheduling of a bar date.

u.    Automatic Stay/Safe Harbor

- reviewed, analyzed and responded to numerous motions for relief from automatic stay, including those filed by 1407 Broadway Real Estate LLC, WWK Hawaii-Waikapuna, LLC, and MidCountry Bank in the Debtors' chapter 11 cases and the one filed by Markit Group Limited in LBI's SIPA proceeding;
- drafted correspondence to third parties regarding violations of the automatic stay by, for example, the commencement of state court actions against Debtors; and
- conducted factual and legal research, prepared legal memoranda, coordinated with Lehman and A&M and negotiated stipulations and settlement agreements with movants and third parties regarding the foregoing.

v.    Exclusivity

- drafted motion to obtain second extension of the Debtors' exclusive period to file chapter 11 plans and solicit acceptances thereof.

w.    Plan of Reorganization/Plan Confirmation

- analyzed various issues in connection with potential chapter 11 plans and strategies for the Debtors.

x.    Tax Issues

- advised Lehman and A&M in connection with tax efficient structures in connection with various asset sales; and
- conducted research and regular conferences and teleconferences with Lehman, A&M, the Creditors' Committee, the SIPA Trustee and various professionals regarding various tax matters, including those relating to certain payments, net operating losses, the dissolution of certain non-Debtor entities, partnership issues, exemptions, and inter-company issues.

y.    Communications

(i)    Website

- reviewed and provided updated content, including information regarding the Debtors, their professionals and management, meetings of creditors, and relevant Court filings and management presentations, for websites maintained by Lehman and the Debtors' Court-approved claims and noticing agent to facilitate transparency and ensure the availability of real-time information to creditors; and
- corresponded with the Creditors' Committee's professionals regarding the website maintained and inquiries received by the Creditors' Committee.

(ii)   Lehman Team Hotline/Emails

- responded to hundreds of telephone and email inquiries from creditors and other parties in interest regarding Debtors' chapter 11 cases

z.    Corporate/Securities

- prepared corporate resolutions and consents required for various transactions, including multiple asset sales and the appointment and election of officers and directors for the Debtors' foreign and domestic entities;
- prepared and filed various SEC reporting forms, including Form 8-K, Form 12-B-25, Form 10-K, Form 10-D, and Form 13-F for filing with the SEC;
- researched and responded to various issues regarding the New York Stock Exchange and the SEC;
- evaluated numerous documents for privilege and responsiveness in response to subpoenas from various governmental agencies;
- reviewed documents and conducted diligence related to many of Lehman's transactions, businesses, investments, inter-company relationships and provided related advice; and
- drafted and reviewed loan and other documents in connection with, among other things, agency resignations.

aa.    Non-Bankruptcy Litigation

- reviewed, researched, and analyzed non-bankruptcy complaints, claims and pleadings in multiple foreign and domestic litigations commenced by and against Lehman entities;
- participated in meetings and telephonic conferences with Lehman, A&M and negotiated settlements with third parties regarding same; and
- conducted voluminous document review for privilege and responsiveness and negotiated confidentiality agreements in connection with same.

bb.    Merchant Banking Fund

- researched, assessed and advised merits of claims asserted in complaint against Merchant Banking Partners IV LP, drafted memo regarding same;
- prepared petition for writ of mandamus and drafted motions and proposed orders regarding stay of discovery and dismissal of complaint; and
- participated in hearings and general correspondence re same.

cc.    Intellectual Property

- collected, reviewed, summarized and analyzed Lehman's intellectual property and information technology contracts and agreements in

connection with various sale transactions and the Debtors' determinations to assume or reject same;

- negotiated, drafted, and revised multiple transition services agreements for continued use and service of intellectual property and information technology held and/or maintained by either affiliates in foreign insolvency proceedings or purchasers of Lehman's assets; and
- reviewed requirements to record the assignment of intellectual property in various domestic and international jurisdictions, prepared documents for various jurisdictions in connection with same, and drafted documents for the assignment and transfer of certain intellectual property.

dd.    International Matters/Foreign Proceedings

(i)    U.K. / LBIE

- monitored LBIE's insolvency proceeding and PricewaterhouseCoopers LLP's ("PWC") role as administrator and their respective effects on the Debtors' chapter 11 cases, assisted the Debtors with their role on the official committee of unsecured creditors in the LBIE case, and reviewed and assessed PWC's plan for a proposed scheme of arrangement;
- conferred and teleconferenced with administrators and professionals of LBIE regarding access to funds and securities in blocked accounts and procedures with respect to LBIE trust assets;
- participated in formulation of global claims strategy for Lehman entities in the LBIE case, including preparing and reviewing inter-company claims filed against LBIE;
- drafted and amended TSAs, negotiated indemnities, resolved data protection issues between LBIE and LBHI;
- developed global strategy for removing LBIE from its various agency positions in relation to facility agreements or derivative trades;
- prepared and updated status reports in connection with the European entities' directors, board composition and secretary appointments;
- researched and drafted memoranda regarding the treatment of novation agreements, SWAP agreements, and  confidentiality agreements under English law and banking codes as compared to U.S. law;
- analyzed and addressed issues relating to LBIE's dispute regarding ownership of artwork; and
- attended LBIE's creditors' committee meetings.

(ii)    Asia

- reviewed, researched, and coordinated with foreign counsel regarding proceedings and related issues in Japan, Hong Kong, Singapore and the Philippines, Korea, Thailand and Australia;
- coordinated the closing of certain debtor and non-debtor assets sales, including negotiation and preparation of TSAs, confidentiality and non-disclosure agreements, and regulatory approvals;

- coordinated and facilitated the list of authorized signatories, directors and officers and the replacement of directors for various Asian entities;
- researched and drafted memorandum in connection with corporate governance, equity issues, and claims filings in Asia including research regarding consequences of insolvency proceedings and international jurisdiction for such claims;
- conducted research, prepared, and reviewed proxies and proofs of claims with respect to various Asian entities; and
- addressed issues relating to petition for foreign recognition in Japan, researched protocols for court-to-court communications between a U.S. bankruptcy court and a Japanese district court, as well as the status of secured creditors under Japanese civil rehabilitation law.

(iii)  Germany

- researched, prepared and filed claims in the insolvency proceeding of Lehman Brothers Bankhaus AG ("Bankhaus");
- participated in numerous meetings with the Bankhaus insolvency administrator, and prepared for and attend Bankhaus creditors' meetings;
- prepared for and attended Bankhaus chapter 15 hearing and addressed various issues related to same;
- reviewed master agreements, security and collateral agreements, guarantees, and derivatives contracts between U.S. Lehman entities and Bankhaus;
- analyzed, drafted, and revised various participation, subparticipation, and repurchase agreements, tax letters, shareholders resolutions and notification letters regarding several German entities;
- researched and analyzed issues related to the rights of third parties to setoff against Bankhaus, including research related to the enforceability of U.S. Bankruptcy Court decisions, safe harbor provisions, and repurchase agreements under German law; and
- analyzed, drafted, and reviewed cross boarder protocols with attention to Bankhaus insolvency proceeding issues.

(iv)  France

- monitored French proceeding regarding Coeur Defense, a commercial real estate investment that was Europe's largest direct single commercial property transaction;
- researched and analyzed various documents regarding the debt structure, equity ownership, securitization documents and joint venture agreements regarding same; and
- participated in hearing regarding Lehman Brothers Asset Management France.

(v) Switzerland

- monitored insolvency proceedings of Lehman Brothers Finance S.A. ("LBF") in Switzerland; and
- collaborated with LBF's administrators to draft and participate in hearing on petition, pursuant to chapter 15 of the Bankruptcy Code, for recognition of foreign main proceeding and concurrent motion to dismiss LBF's chapter 11 case.

(vi) Israel

- participated in calls, monitored, conducted research and drafted correspondence in connection with Bank Leumi litigation.

(vii) South America

- conducted research, reviewed and engaged in correspondence regarding Lehman's Latin American affiliates and participations in certain South American loans.

(viii) Other/General

- drafted cross-border insolvency protocol and researched, prepared presentations for Lehman, A&M and the Court, and drafted and filed motion for Court approval of same;
- conducted meetings with numerous entities regarding same and related inter-company derivative claims protocols;
- communicated with Lehman, A&M and third parties regarding international insolvency proceedings and regulatory matters;
- collected and catalogued information regarding status of the Debtors' foreign subsidiaries and investments;
- monitored respective bar dates, coordinated the retention of foreign counsel, and prepared and filed proofs of claim on behalf of the Debtors and Lehman in numerous foreign insolvency proceedings;
- researched numerous issues, including procedures for foreign proceedings and asset sales involving foreign holdings; and
- analyzed and reviewed numerous inter-company documents.

ee.     Appeals:

- reviewed and analyzed notices of appeal, drafted counter-designations of the records and issues on appeal, and researched and drafted appellate briefs in opposition to the appeals by Bay Harbour Management L.C. *et al.*;
- drafted notice of appeal and response regarding United States Bankruptcy Court for the Central District of California's order granting SunCal Plaintiff's motion for leave to file second amended complaint; and

▪ researched issues and drafted opening brief in appeal of order denying motion for relief from the automatic stay in the SunCal chapter 11 case.

ff.    LBI Issues

(i)    LBI

▪ analyzed issues relating to inter-company claims and relationships between the Debtors and Lehman with LBI;
▪ conducted meetings and teleconferences with the Debtors, A&M, and the SIPC Trustee's professionals to address same, including filing and reconciling customer claims and non-customer claims of Lehman's foreign and domestic affiliates and identification of collateral held by LBI;
▪ negotiated TSA and data sharing confidentiality agreements between the Debtors and LBI;
▪ negotiated and drafted stipulations with LBI, including those regarding LBI's role as market agent and those in connection with the delivery of customer name securities to certain Lehman affiliates;
▪ monitored the docket for LBI's SIPA proceeding and reviewed and coordinated with Lehman and A&M regarding filings that implicate the Debtors or Lehman;
▪ developed strategies for collection of information from LBI in connection with certain disputed issues; and
▪ attended to issues relating to LBI/Depository Trust Company, including conducting diligence and drafting/filing limited objection and retention of rights documents; researched and drafted memo regarding "customer" status under the Securities Investor Protection Act relating to customer claims.

(ii)    SIPC Coordination

▪ attended numerous meetings with SIPC Trustee and its professionals; and
▪ researched various issues in connection with claims in SIPA Proceeding.

gg.    2004 Issues

▪ reviewed, conducted research regarding, and responded to motions to compel discovery pursuant to Bankruptcy Rule 2004 filed by Freddie Mac and 25 Broad Street, LLC.

hh.    Examiner Issues

▪ negotiated confidentiality and related agreements with the Examiner;
▪ conducted meetings and teleconferences with the Examiner, his professionals, the Debtors and A&M regarding various issues and coordination of workstreams and investigations;

- provided Examiner with informal discovery and developed and implemented procedure for responding to information requests from the Examiner; and
- conducted diligence, coordinated and prepared (e.g., redacted and review for confidential information) materials for production to and review by Examiner and supervised document review by Examiner in connection with same.

ii.    Other Bankruptcy Matters

(i)    9019 Motions

- consulted and coordinated with Lehman and A&M and negotiated and drafted motions, stipulations, settlement agreements and other documents and responded to objections in connection with (i) a settlement between PAMI Statler Arms LLC and First Midwest Properties, LLC resolving a state court action, (ii) settlements between Lehman Commercial Paper Inc. and Metropolitan Life Insurance Company, Pyrrhuloxia LP, and Sixth Gear Inc. resolving certain disputes, (iii) a settlement with the PBGC regarding the termination of LBHI's pension plan, (iv) a motion requesting authorization to enter into certain discounted payoffs with respect to certain loans, (v) a motion seeking authorization for the establishment of procedures allowing the Debtors to terminate unfunded commitments and restructure corporate loan agreements, and (vi) a motion seeking approval of an exchange agreement with State Street Bank and Trust Company ("State Street") partially resolving the issues being contested in State Street's adversary proceeding.

(ii)    Other Bankruptcy Motions

- prepared and filed additional motions and stipulations in the Bankruptcy Court, including the motions to dismiss the chapter 11 cases of Fundo de Investimento Multimercado Credido Privado Navigator Investimento No Exterior and PAMI Statler Arms LLC and a stipulation to resolve certain issues regarding a misdirected wire and setoff with HSBC.

(iii)    Other Bankruptcy Litigation

- analyzed and addressed claims against and issues relating to Lehman affiliates, including Aurora Loan Services, LLC;
- researched and reviewed documents in connection with inter-company issues and affirmative claims and potential causes of action of the Debtors, including, but not limited to, preferences fraudulent transfer litigation;
- reviewed issues and drafted memos regarding mutuality, set-off requirements, choice of law and executory contract modification.

50.     The professional services performed by WGM were actual, necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and their stakeholders.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

51.     The professional services performed by members and associates of WGM were rendered by the Business Finance & Restructuring, Corporate, Litigation, and Tax Departments in numerous offices across three continents.  WGM has a preeminent Business Finance & Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of troubled entities, with approximately 90 attorneys that specialize in this area of law.

## ACTUAL AND NECESSARY DISBURSEMENTS OF WGM

52.     As set forth in Exhibit B hereto, WGM has disbursed $1,234,783.60 as expenses incurred in providing professional services during the Second Compensation Period.  These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.  For example, the novel legal issues invoked by the global scope of the Debtors' businesses and the complex nature of the many financial arrangements they are party to require WGM attorneys to work long hours, engage in numerous long distance and international communications, and perform considerable computerized research in order to effectively prosecute the Debtors' chapter 11 cases.

53.     The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required WGM's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors.  Such services were essential to meet deadlines, timely respond to motions and

objections, and to satisfy the extraordinary demands of the Debtors' businesses and the administration of these complex chapter 11 cases.

54.    While WGM has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of WGM who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.  WGM's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.  The reimbursement amounts do not exceed those set forth in the U.S. Trustee Guidelines.

55.    With respect to photocopying expenses, WGM charges all of its clients $.10 per page.  With respect to facsimile expenses, in compliance with the U.S. Trustee Guidelines, WGM does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the U.S. Trustee Guidelines.  Each of these categories of expenses does not exceed the maximum rate set by the U.S. Trustee Guidelines.  These charges are intended to cover WGM's direct operating costs, which costs are not incorporated into the WGM hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit B are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow WGM to cover the related expenses of its photocopying service.  A determination of

the actual expenses per page for photocopying, however, is dependent on both the volume of

copies and the total expenses attributable to photocopying on an annual basis.

56.    In addition, because of the location of the global scope of the Debtors'

businesses, frequent long distance and international telephone calls were required.  On many

occasions, overnight delivery of documents and other materials was required as a result of

circumstances necessitating the use of such express services.  These disbursements are not

included in WGM's overhead for the purpose of setting billing rates.  WGM has made every

effort to minimize its disbursements in these cases.  The actual expenses incurred in providing

professional services were absolutely necessary, reasonable, and justified under the

circumstances to serve the needs of the Debtors, their estates, and creditors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

57.    Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  Id.

§ 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and

reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court
> should consider the nature, the extent, and the value of such services, taking into
> account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial
> at the time at which the service was rendered toward the completion of, a
> case under [the Bankruptcy Code];

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

Id. § 330(a)(3).

58.     In the instant case, WGM respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the Debtors' preservation and orderly administration of their estates and prosecution of their chapter 11 cases.  WGM worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 process.  The professional services were performed expediently and efficiently.  Whenever possible, WGM sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration.  Groups of the same WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-WGM communication and education about the Debtors' circumstances.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved.  Furthermore, WGM voluntarily reduced its requests for fees and expenses incurred during the Second Compensation Period in the aggregate amount of $341,310.74.  Approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## CONCLUSION

59.     WGM respectfully requests the court allow interim compensation for professional services rendered during the Second Compensation Period in the amount of $46,462,606.85, consisting of $45,227,823.25, representing 100% of fees incurred during the Second Compensation Period, and reimbursement of $1,234,783.60, representing 100% of actual and necessary expenses incurred during the Second Compensation Period, without prejudice to WGM's right to seek additional compensation for services performed and expenses incurred during the Second Compensation Period, which were not processed at the time of this Application, and (ii) direct payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested and such other and further relief as is just.

Dated:  August 14, 2009
        New York, New York

                              /s/ Shai Y. Waisman
                              Harvey R. Miller
                              Shai Y. Wasiman
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

# EXHIBIT A

**(Certification)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Shai Y. Waisman

Attorneys for Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                     :

**In re**                              :      **Chapter 11 Case No.**
                                     :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**
                                     :

                **Debtors.**      :      **(Jointly Administered)**
                                     :
--------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES**
**AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT**
**OF SECOND APPLICATION OF WEIL, GOTSHAL & MANGES LLP**
**FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

      I, Harvey R. Miller, hereby certify that:

      1.      I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("WGM"), with responsibility for the chapter 11 cases of Lehman Brothers Holdings Inc. and

certain of its affiliates, as debtors in possession in the above-captioned cases (collectively, the

"Debtors"), in respect of compliance with the Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June

20, 1991 (the "Fee and Disbursement Guidelines") and the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by

the Court on April 19, 1995 (together with the Fee and Disbursement Guidelines, the "Local

Guidelines"), the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996 (the "U.S. Trustee Guidelines") and the Second Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals

[Docket No. 3102] (the "Administrative Order," and together with the Local Guidelines and the

U.S. Trustee Guidelines, the "Guidelines").

2.　　　This certification is made in respect of WGM's application, dated August

14, 2009 (the "Application"), for interim compensation and reimbursement of expenses for the

period commencing February 1, 2009 through and including May 31, 2009 (the "Second

Compensation Period") in accordance with the Guidelines.

3.　　　In respect of section 2 of the Fee and Disbursement Guidelines, I certify

that WGM reviewed the fee application and has approved it.

4.　　　In respect of section B.1 of the Local Guidelines, I certify that:

　　　a.　　　I have read the Application;

　　　b.　　　to the best of my knowledge, information, and belief formed after
　　　　　　reasonable inquiry, the fees and disbursements sought fall within
　　　　　　the Local Guidelines;

　　　c.　　　the fees and disbursements sought are billed at rates in accordance
　　　　　　with those customarily charged by WGM and generally accepted
　　　　　　by WGM's clients; and

　　　d.　　　in providing a reimbursable service, WGM does not make a profit
　　　　　　on that service, whether the service is performed by WGM in-
　　　　　　house or through a third party.

5.　　　In respect of section B.2 of the Local Guidelines and as required by the

Administrative Order, I certify that WGM has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"Committee") and the Debtors, with a statement of WGM's fees and disbursements accrued

during the previous month, although, due to administrative limitations, such statements were not

always provided within the timetables set forth in the Local Guidelines and the Administrative

Order.

6.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors,

attorneys for the Committee, and the United States Trustee for the Southern District of New

York are each being provided with a copy of the Application.

Dated: August 14, 2009
       New York, New York


                                         /s/ Harvey R. Miller
                                        Harvey R. Miller
                                        Shai Y. Waisman
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors in Possession

**<u>EXHIBIT B</u>**

**EXPENSE SUMMARY BY WEIL, GOTSHAL & MANGES LLP FOR THE
<u>SECOND INTERIM PERIOD OF FEBRUARY 1, 2009 THROUGH MAY 31, 2009</u>**

| EXPENSES | AMOUNTS |
|---|---|
| 341 Creditors Meeting Expenses | $7,000.00 |
| Business Meals | $67,282.38 |
| Computerized Research / Other Research | $692,724.91 |
| Consultant and Witness Fees | $31,781.34 |
| Corporation Service | $40,254.88 |
| Court Reporting | $13,612.87 |
| Court/Filing/Regulatory Fees | $15,208.26 |
| Duplicating | $224,517.82 |
| Facsimile | $253.00 |
| Messenger Service | $8,018.77 |
| Outside Temps – Paralegal/Other | $10,282.28 |
| Periodicals / Online News Monitoring | $340.00 |
| Postage and Express Mail | $15,190.14 |
| Real Estate Title Updates | $1,515.00 |
| Telephone | $5,599.79 |
| Translation Fees | $1,879.40 |
| Travel and Transportation | $99,322.76 |
| **Total Expenses Requested:** | **$1,234,783.60** |

## EXHIBIT C

### COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY WEIL, GOTSHAL & MANGES LLP FOR SECOND INTERIM PERIOD OF FEBRUARY 1, 2009 THROUGH MAY 31, 2009

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1001** | **Case Administration** | | |
| 0100 | Entity Filings | 67.80 | $29,181.00 |
| 0101 | General Pleading Preparation | 154.70 | $72,782.50 |
| 0102 | Case Administration | 1,041.20 | $322,216.00 |
| 0103 | Document Management | 705.00 | $170,696.50 |
| **1002** | **Unsecured Creditors Issues/Meetings/Communications/ Creditors' Committee** | | |
| 0200 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 244.80 | $132,209.50 |
| **1003** | **Secured Creditors Issues/Meetings/ Communications** | | |
| 0300 | Secured Creditors Issues/Meetings/Communications | 123.00 | $92,018.0 |
| **1005** | **Case Strategy** | | |
| 0500 | Strategy Meetings | 4,156.80 | $1,740,962.00 |
| 0501 | Project Monitoring/Court Calendar | 673.60 | $286,397.50 |
| **1006** | **Hearing and Court Matters** | | |
| 0600 | Debtors | 374.70 | $134,383.50 |
| 0601 | SIPC | 2.10 | $1,287.00 |
| 0602 | Court Communications | 23.40 | $8,640.00 |
| **1007** | **WG&M Retention/Billing/Fee Applications** | | |
| 0700 | WG&M Retention/Billing/Fee Applications | 3,096.30 | $799,981.50 |
| **1008** | **Retention/Fee Applications: Ordinary Course Professionals** | | |
| 0800 | Retention/Fee Applications: Ordinary Course Professionals | 333.80 | $135,525.00 |
| **1009** | **Retention/Fee Applications: Other Professionals** | | |
| 0900 | Retention/Fee Applications: Other Professionals | 243.10 | $95,998.50 |
| **1010** | **Schedules/Statement of Financial Affairs** | | |
| 1000 | Schedules/Statement of Financial Affairs | 356.50 | $165,172.00 |
| **1011** | **US Trustee Related Issues** | | |
| 1100 | US Trustee Related Issues | 60.60 | $43,828.00 |
| **1012** | **General Business Operations** | | |
| 1200 | Party In Interest Communications | 231.50 | $193,118.50 |
| 1201 | Cash Management | 394.20 | $188,262.50 |
| 1202 | A&M Issue Coordination | 30.00 | $22,415.50 |
| 1203 | General Third Party Business Inquiries | 28.20 | $15,630.00 |
| 1204 | Other | 1,356.80 | $785,481.00 |
| 1205 | Loans/Investments-General | 369.30 | $200,088.50 |
| **1013** | **Corporate Governance** | | |
| 1300 | Corporate Governance | 3,281.50 | $1,396,318.50 |

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1016** | **Insurance Issues** | | |
| 1600 | Insurance Issues | 127.40 | $89,203.00 |
| **1017** | **Employee/ERISA/Benefit Issues** | | |
| 1700 | Employee/ERISA/Benefit Issues | 1,170.30 | $702,787.50 |
| **1018** | **Asset Disposition/363 Issues** | | |
| 1800 | Barclays Sale | 441.60 | $258,901.50 |
| 1801 | IMD Sale | 8,278.10 | $4,195,892.00 |
| 1802 | Real Estate Sales | 1,722.40 | $765,818.50 |
| 1803 | Sales of Miscellaneous Assets | 4,693.40 | $2,738,132.50 |
| 1804 | Other | 6,741.90 | $3,216,131.00 |
| 1805 | Domestic Banks & Aurora | 615.50 | $425,334.50 |
| **1019** | **Executory Contracts/365 Issues** | | |
| 1900 | Executory Contracts/365 Issues | 2,988.90 | $1,453,614.00 |
| 1901 | Derivatives/SWAP Agreement Issues | 9,070.10 | $5,624,234.50 |
| **1020** | **Real Property/365 Issues** | | |
| 2000 | Real Property/365 Issues | 8,140.20 | $5,114,611.00 |
| **1021** | **Adversary Proceedings** | | |
| 2100 | Adversary Proceedings | 8,157.50 | $4,307,030.50 |
| **1022** | **Claims Objections Litigation** | | |
| 2200 | Claims Objections Litigation | 146.90 | $105,285.00 |
| **1023** | **Bar Date Motion and Claims Reconciliation Issues** | | |
| 2300 | Bar Date Motion and Claims Reconciliation Issues | 120.10 | $72,264.00 |
| **1024** | **Automatic Stay/Safe Harbor** | | |
| 2400 | Automatic Stay/Safe Harbor | 1,132.10 | $614,589.00 |
| **1026** | **Exclusivity** | | |
| 2600 | Exclusivity | 27.70 | $12,192.00 |
| **1027** | **Plan of Reorganization/Plan Confirmation** | | |
| 2700 | Plan of Reorganization/Plan Confirmation | 3.30 | $2,575.00 |
| **1029** | **Tax Issues** | | |
| 2900 | Tax Issues | 1,052.90 | $620,103.00 |
| **1030** | **Communications** | | |
| 3000 | Website | 16.10 | $7,459.00 |
| 3001 | Lehman Team Hotline/Emails | 134.10 | $56,660.50 |
| **1031** | **Customer/Vendor Issues** | | |
| 3100 | Clearing Bank Issues (JPM, BofA, Etc.) | 2.00 | $1,870.00 |
| 3101 | Trades | 9.60 | $7,267.00 |
| 3102 | Other | 158.50 | $97,573.00 |
| **1032** | **Utility Issues** | | |
| 3200 | Utility Issues | 5.40 | $2,670.00 |
| **1033** | **Reclamation** | | |
| 3300 | Reclamation | 12.40 | $8,418.00 |
| **1034** | **Corporate/Securities** | | |
| 3400 | Corporate/Securities | 981.70 | $461,581.00 |
| **1035** | **Non-Bankruptcy Litigation** | | |
| 3500 | Non-Bankruptcy Litigation | 598.70 | $275,404.50 |
| 3501 | Merchant Banking Fund | 553.00 | $237,594.50 |
| **1036** | **Non-Working Travel** | | |
| 3600 | Non-Working Travel | 184.00 | $59,942.75 |

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1037** | **Intellectual Property** | | |
| 3700 | Intellectual Property | 310.80 | $124,025.00 |
| **1038** | **International Matters/Foreign Proceedings** | | |
| 3800 | U.K. (Including LBIE) | 4,572.10 | $3,023,501.50 |
| 3801 | Asia | 721.70 | $328,394.00 |
| 3802 | Germany | 1,844.90 | $1,070,184.00 |
| 3803 | France | 364.50 | $237,669.00 |
| 3804 | Switzerland | 92.70 | $62,264.00 |
| 3805 | Israel | 58.90 | $31,481.50 |
| 3806 | South America | 7.80 | $6,386.00 |
| 3807 | Other/General | 492.40 | $302,041.50 |
| **1039** | **Appeals** | | |
| 3900 | Appeals | 103.60 | $55,042.00 |
| **1040** | **LBI Issues** | | |
| 4000 | LBI | 375.00 | $238,734.00 |
| 4001 | SIPC Coordination | 23.10 | $9,861.50 |
| **1041** | **2004 Issues** | | |
| 4100 | 2004 Issues | 20.60 | $13,006.50 |
| **1042** | **Examiner Issues** | | |
| 4200 | Examiner Issues | 1,784.30 | $770,461.00 |
| **1043** | **Other Bankruptcy Matters** | | |
| 4300 | 9019 Motions | 95.40 | $42,499.00 |
| 4301 | Other Bankruptcy Motions | 91.80 | $43,593.00 |
| 4302 | Other Bankruptcy Litigation | 595.80 | $300,948.00 |
| **Total Fees Requested:** | | **86,190.10** | **$45,227,823.25** |