QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official
Committee Of Unsecured Creditors of
Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                        :    Chapter 11 Case
                                              :
LEHMAN BROTHERS HOLDINGS INC.,                :    No. 08-13555 (JMP)
et al.                                        :
                                              :    Jointly Administered
                               Debtors.       :
-------------------------------------------------------- x

### SUMMARY SHEET

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart Oliver & Hedges, LLP |
| **Authorized to Provide Professional Services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. |
| **Date of Retention** | October 21, 2008, (*Nunc pro tunc* to September 15, 2008) |
| **Compensation Period** | February 1, 2009 through May 31, 2009 |
| **Fees Incurred for Counsel** | $820,579.50 |
| **Expenses Incurred** | $28,104.76 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $391.95 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $568.48 |

**Prior Interim Applications Filed:**

| Date Filed/ Docket No. | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| April 10, 2009 / Docket No. 3340 | September 15, 2008 – January 31, 2009 | $2,129,413.50 | $41,113.30 | $1,916472.15[1] | $41,113.30 |

---

[1]    As per the Court's August 13, 2009 Order Granting Application for the Allowance of Interim Compensation for the Period of September 15, 2008 Through January 31, 2009 for Professional Services Performed and Reimbursements of actual and necessary Expenses Incurred, the Fees Awarded reflect 90% of Fees Requested. The remaining 10% of Fees Requested remains subject to "holdback" and further award by the Court.

## Schedule 1

## Rates, Hours and Fees for Services Rendered during the Second Interim Fee Period

| Attorneys/ Paraprofessionals | Title | Year of Bar Admission | Current Hourly Rate | Hours | Total Fee Charged |
|---|---|---|---|---|---|
| Faith Gay | Partner | 1987 | $950.00 | 11.30 | $10,735.00 |
| Susheel Kirpalani | Partner | 1995 | $820.00 | 18.90 | $15,498.00 |
| Erica Taggart | Partner | 2001 | $660.00 | 18.10 | $11,946.00 |
| James C. Tecce | Partner as of January 1, 2009 | 1995 | $775.00[1] | 266.40 | $206,460.00 |
| James C. Tecce (prior billing rate) | Partner | 1995 | $650.00 | 72.50 | $47,125.00 |
| Scott C. Shelley | Counsel | 1993 | $650.00 | 0.50 | $325.00 |
| Eric M. Kay | Counsel | 1995 | $650.00 | 178.40 | $115,960.00 |
| Robert K. Dakis | Associate | 2004 | $410.00 | 341.70 | $140,097.00 |
| Rebekah Parker | Associate | 2005 | $400.00 | 23.20 | $9,280.00 |
| Deborah Shin | Associate | 2005 | $400.00 | 0.30 | $120.00 |
| Tyler G. Whitmer | Associate | 2006 | $390.00 | 43.70 | $17,043.00 |
| Olga M. Urbieta | Associate | 2008 | $370.00 | 131.10 | $48,507.00 |
| Lance Yang | Associate | 2008 | $370.00 | 112.60 | $41,662.00 |
| **TOTALS** | | | | **1,218.70** | **$664,758.00** |

| Attorneys/ Paraprofessionals | Title | Year of Bar Admission | Current Hourly Rate | Hours | Total Fee Charged |
|---|---|---|---|---|---|
| John Volpe | Staff Attorney | 1988 | $320.00 | 216.20 | $69,184.00 |
| Christopher Clark | Attorney | 2007 | $320.00 | 234.70 | $75,104.00 |
| Katherine A. Silva | Law Clerk | n/a | $295.00 | 0.30 | $88.50 |
| Mario Gutierrez | Paralegal | n/a | $250.00 | 2.60 | $650.00 |
| James Bandes | Paralegal | n/a | $250.00 | 2.70 | $675.00 |
| Ian Livengood | Paralegal | n/a | $250.00 | 1.30 | $325.00 |
| Jet Ma | Lit. Support Tech. | n/a | $150.00 | 10.90 | $1,635.00 |
| Michael Lee | Lit. Support Tech. | n/a | $150.00 | 0.80 | $120.00 |
| Shane Rocke | Lit. Support Tech. | n/a | $150.00 | 0.50 | $75.00 |
| David Stanford | Lit. Support Tech. | n/a | $150.00 | 4.60 | $690.00 |
| Matt Hester | Lit. Support Tech. | n/a | $150.00 | 1.10 | $165.00 |
| Joe Liao | Lit. Support Tech. | n/a | $150.00 | 47.40 | $7,110.00 |
| **TOTALS** | | | | **523.10** | **$155,821.50** |

---

[1]    As of February 12, 2009, James C. Tecce's rate changed to reflect his new status as a partner.

3

**Schedule 2**

**Hours and Fees for the Second Interim Compensation Period As Rendered By Category**

| Task Codes | Total Hours | Total Fees Charged |
|---|---|---|
| LEH01 Case Management/Calendar Maintenance | 86.90 | $27,733.50 |
| LEH02 Cash Collateral and DIP Financing | 3.60 | $2,790.00 |
| LEH03 Claims Analysis/Objections | 113.70 | $65,243.00 |
| LEH05 Court Hearings | 36.10 | $14,679.00 |
| LEH06 Creditor Communications | 2.80 | $1,695.50 |
| LEH07 Creditors' Committee Meetings | 144.60 | $85,544.50 |
| LEH09 Lender and Counterparty Claim | 71.90 | $36,474.50 |
| LEH11 Litigation/Potential Litigation | 631.20 | $284,891.00 |
| LEH12 Nonworking Travel | 14.90 | $9,486.50 |
| LEH13 Other Conflict Roles | 77.10 | $52,874.00 |
| LEH16 Quinn Emanuel Fee Applications | 172.90 | $67,369.50 |
| LEH17 Retention of Professionals | 32.50 | $11,905.00 |
| LEH18 Rule 2004 Investigations | 353.60 | $159,893.50 |
| **TOTALS** | 1,741.80 | $820,579.50 |

**Schedule 3**

**Summary Of Expenses**

| DESCRIPTION | TOTAL |
|---|---|
| Postage | $32.88 |
| Telephone | $392.27 |
| Express Mail | $1,362.17 |
| Local Travel | $229.48 |
| Taxi | $75.40 |
| Client Meals | $221.80 |
| Document Review Meal | $18.94 |
| Lexis/Westlaw | $4,180.63 |
| Messenger | $269.50 |
| Professional Services | $1,543.23 |
| Photocopying | $7,442.40 |
| Outside Photocopy | $203.48 |
| Printing | $2,574.80 |
| Color Copying | $121.36 |
| Digital Prints | $276.10 |
| Scanning | $1,175.30 |
| Media Creation/Duplications | $2,192.59 |
| Hosting | $125.00 |
| Litigation Support Services | $5,667.43 |
| Total | $28,104.76 |

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------  x
In re:                                                     :    Chapter 11 Case
                                                           :
LEHMAN BROTHERS HOLDINGS INC.,                             :    No. 08-13555 (JMP)
<u>et al.</u>                                              :
                                                           :    Jointly Administered
                                         Debtors.          :
---------------------------------------------------------  x

**SECOND INTERIM APPLICATION OF QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING
THE PERIOD FEBRUARY 1, 2009 THROUGH MAY 31, 2009**

Quinn Emanuel Urquhart Oliver & Hedges, LLP ("<u>Quinn Emanuel</u>"), Special

Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et</u>

<u>al.</u> (the "<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court,

pursuant to sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the

"<u>Bankruptcy Code</u>"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), and the Third Amended Order, pursuant to sections 105(a) and 331 of the

Bankruptcy Code establishing procedures for interim compensation and reimbursement of

expenses of professionals, dated June 25, 2009, (as amended, the "<u>Compensation Order</u>"), for

allowance of interim compensation for professional services rendered in the amount of

$820,579.50 and reimbursement of actual, reasonable and necessary out-of-pocket expenses incurred in the amount of $28,104.76, during the period beginning February 1, 2009 through and including May 31, 2009 (the "Fee Period"), and, in support thereof, respectfully represents as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction to hear and determine the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

## II.    GENERAL BACKGROUND

2.    On September 15, 2008, and periodically thereafter (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI"), and certain of its subsidiaries and affiliated entities (collectively the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

3.    On September 17, 2008, the Untied States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

4.      On January 16, 2009, the Court entered an Order directing the

appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2) to investigate, *inter

alia*, various transfers and transactions involving the Debtors and their affiliates as well as the

events immediately preceding the commencement of the Chapter 11 Cases.

### III.    <u>RETENTION OF QUINN EMANUEL</u>

5.      On October 21, 2008, the Committee filed its Application Under 11

U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention

and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, <u>Nunc

Pro Tunc</u> to September 15, 2008 (the "<u>Retention Application</u>").

6.      On November 21, 2008, this Court entered the Final Order Authorizing

Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special

Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. <u>et

al.</u>, <u>Nunc Pro Tunc</u> to September 15, 2008 (the "<u>Retention Order</u>").  A true and correct copy of

the Retention Order is attached hereto as Exhibit B.

7.      As set forth in the Retention Application, the Committee retained Quinn

Emanuel to:

- •      assist the Committee on matters involving entities as to which the Committee's primary counsel, Milbank, Tweed, Hadley & McCloy LLP ("<u>Milbank</u>"), has an actual or potential conflict of interest;

- •      assist the Committee's investigation of the acts, conduct, assets, liabilities, intercompany relationships and claims and financial condition of the Debtors and their non-debtor subsidiaries, the existence of estate causes of action and the operation of their businesses to the extent that Milbank is conflicted from conducting those investigations; and

- •      perform such other legal services as requested by the Committee to the extent not duplicative of Milbank's services.

8.      To that end, Quinn Emanuel has served as special counsel to the Committee and has rendered legal services for the benefit of the Committee in respect of all matters relating to the Debtors' bankruptcy cases where Milbank has a conflict and where the Committee has otherwise directed Quinn Emanuel to advise the Committee.

9.      On October 11, 2008, the Debtors filed a Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "Compensation Motion").  The Compensation Motion was granted pursuant to the Compensation Order.

10.      The Compensation Order established a procedure for, inter alia, the payment of interim fees and expenses to professionals employed by the Committee on a monthly basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is attached as Exhibit C.

### IV.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

11.      For the period from February 1, 2009 through and including May 31, 2009, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements"). Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in the amount of $656,463.60 (representing 80% of the fees billed by Quinn Emanuel from February 1, 2009 through May 31, 2009) and expenses incurred in the total amount of

---

[1]      Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

4

$28,104.76 (100% of the expenses billed by Quinn Emanuel from February 1, 2009 through May 31, 2009).

12.    This Application is Quinn Emanuel's second quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from February 1, 2009 through May 31, 2009.

13.    Quinn Emanuel prepared and submitted its first quarterly fee application on April 10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing September 15, 2008 through January 31, 2009.

14.    This Application requests that the Court (a) approve interim fees in the total amount of $820,579.50 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $28,104.76 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

15.    The fees and expenses requested are reasonable, and all amounts requested were for actual and necessary services rendered on behalf of the Committee.

16.    Quinn Emanuel has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.  No promises have been received by Quinn Emanuel or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## V.        SUMMARY OF PROFESSIONAL SERVICES RENDERED

17.        Pursuant to the guidelines promulgated by the United States Trustee,

Quinn Emanuel classified all services performed for which compensation is sought into separate

categories.  Quinn Emanuel attempted to place the services performed in the category that best

relates to the services provided.  However, because certain services may relate to one or more

categories, services pertaining to one category may be included in another category.  Schedule 1,

attached hereto, lists each timekeeper, his or her respective billing rate, professional information,

and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes

the professional and paraprofessional time expended by project category.  Timekeeping entries

and Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of

these categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths

of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed

description of services performed by each attorney and paraprofessional on behalf of the

Committee.[2]

18.        The following summary is intended only to highlight key services

rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has

expended a considerable number of hours on behalf of the Committee, and is not meant to be a

detailed description of all of the work performed.

---

[2]        Due to the volume of the time records and the detailed expense descriptions at issue, these
materials are not being filed with the Court, but copies thereof have been delivered to (i) the
Court; (ii) the United States Trustee; and (iii) counsel for the Debtors.

A.    <u>Case Management/Calendar Maintenance  (Hours: 86.90, Fees: $27,733.50)</u>

19.    Time billed under this category relates to a variety of tasks that were

necessary to ensure competent representation of the Committee, including:

- Daily monitoring of dockets in the Chapter 11 Cases, SIPA proceeding and certain of the adversary proceedings when Quinn Emanuel has taken the lead role with respect to the Committee;

- Circulating relevant documents filed to the appropriate team attorneys; and

- Creating and updating reports tracking the status of various matters in the cases and certain of the adversary proceedings.

B.    <u>Claims Analysis/Objections  (Hours: 113.70, Fees: $65,243.00)</u>

20.    Since the inception of the Chapter 11 Cases, Quinn Emanuel attorneys and

the Committee's retained professionals continually engaged in the task of reviewing and

analyzing a wide variety of claims asserted against the Debtors' estates.

21.    <u>Barclays-DTC Settlement.</u>  In connection with Barclays' purchase of the

Debtors' U.S. and Canadian broker-dealer businesses and certain other assets (the "<u>Sale</u>

<u>Transaction</u>"), certain securities intended to be transferred to Barclays were not transferred at

closing.  On January 22, 2008, the SIPA Trustee filed a motion (the "<u>Barclays-DTC Motion</u>") to

approve a settlement between LBI, Barclays, and the Depository Trust & Clearing Corporation

(together with its affiliates, the "<u>DTC</u>") resolving a dispute over such, <u>i.e.</u>, securities that were

intended to be transferred by the DTC to Barclays as part of the Sale Transaction (but were, in

fact, not transferred to Barclays).  Quinn Emanuel attorneys analyzed the Barclays-DTC Motion

to determine its effect on the Committee's investigation into the Sale Transaction and the estates

generally.  Quinn Emanuel attorneys also spent time reviewing the relief requested in the

Barclays-DTC Motion with counsel to the SIPA Trustee and the Debtors to ascertain its benefits

and ensure it did not have any negative implications for the Committee or the estates.  Following

these discussions, Quinn Emanuel prepared and filed, on the Committee's behalf, a limited

objection to the Barclays-DTC Motion, which was resolved at the hearing on the Barclays-DTC

Motion on February 11, 2009.

22.     Citibank Stipulations  On April 6, 2009 the Debtors filed two Notices of

Presentment of Stipulation and Order Authorizing (1) Turnover of Postpetition Deposits with

Citibank, and (2) Indemnification of Citibank in Respect of Any Third Party Claims Arising

from the Turnover of Postpetition Deposits (the "Citibank Stipulations").  Pursuant to the

Citibank Stipulations, Citibank agreed to cooperate with the Debtor to turn over certain

postpetition deposits.  Both parties reserved their rights with respect to Citibank's assertion of its

setoff rights and adequate protection or administrative priority claims with respect to the

amounts turned over to the Debtors; the Debtors retained the right to dispute or object to

Citibank's claims.   Quinn Emanuel attorneys reviewed and analyzed the Citibank Stipulations to

ascertain their benefits and ensure they did not have any negative implications for the Committee

or the estates.  On April 15, 2009, Judge Peck entered an order authorizing the Citibank

Stipulations.

23.     Derivatives Investigation.  During the Fee Period, the Debtors commenced

litigation challenging the actions of certain counterparties in complex credit default swap

transactions.  In particular, the Debtors have challenged whether counterparties had the right to

unilaterally terminate the transaction as a result of the Debtors' chapter 11 filings.  Given the

sheer volume of the Debtors' trading activity, the number of similar transactions, and the value of

these credit default swap transactions, this litigation is certain to affect these Chapter 11 cases as

a whole.  Quinn Emanuel attorneys assisted the Committee in examining the issues involved in

certain of these litigations and transactions involving certain counter parties.

**C.    Court Hearings  (Hours: 36.10, Fees: $14,679.00)**

24.    Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of
the Committee, have prepared for and attended regularly scheduled omnibus hearings and special
scheduled hearings with respect to matters for which they are responsible.  To prepare for these
hearings, Quinn Emanuel attorneys often expended considerable time reviewing and analyzing
documents, including correspondence and pleadings, and conducting independent legal and
factual research.  In addition, on February 11, 2009, Quinn Emanuel attorneys were called upon
to present oral argument with respect to the Barclays-DTC Motion and the Committee's response
to that settlement.

**D.    Creditors' Committee Meetings  (Hours: 144.60, Fees: $85,544.50)**

25.    Numerous issues arose during the Fee Period requiring meetings of the
Committee ("Committee Meetings").  Committee Meetings generally occur weekly, either via
teleconference or in person.  The meetings generally address the significant issues in the cases at
that time, e.g., the Debtors' pending motions, asset sales, settlements, the status of various
investigations, the status of litigations, Committee operational issues and various other matters
related to the Debtors' cases.  Quinn Emanuel attorneys were often called upon to present the
results of its legal and factual research to the Committee.  Due to the enormity of the cases and
the complexity of issues, considerable time is often spent preparing for the Committee Meetings,
including preparing or reviewing memoranda examining issues selected for presentment and
consideration at such meetings.

E.    **Lender And Counterparty Claims  (Hours: 71.90, Fees: $36,474.50)**

26.    <u>Investigation of Lenders and Counterparties.</u>  From the outset of the
Chapter 11 Cases, the Debtors have faced myriad issues relating to the interaction between the
Debtors and their lenders and counterparties under different financial arrangements.  During the
Fee Period, Quinn Emanuel continued to devote resources into the review and analysis of these
relationships.  Time billed in this category relates primarily to legal and factual research
regarding claims that the Debtors' lenders and counterparties under various types of financing
arrangements have asserted against the Debtors, as well as, potential estate claims that the
Debtors may assert against these lenders and counterparties.  These investigations remain
ongoing.

F.    **Litigation/Potential Litigation  (Hours: 631.20, Fees: $284,891.00)**

27.    Time billed to this category generally relates to litigation that Quinn
Emanuel, as special counsel to the Committee, may pursue against certain entities in furtherance
of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors or in which the
Committee has intervened.

28.    <u>BofA Litigation.</u>  On November 26, 2008, Bank of America ("<u>BofA</u>")
commenced an adversary proceeding seeking a declaratory judgment ratifying a post-petition
offset of approximately $509 million deposited by Lehman Brothers Special Financing Inc. and
LBHI in various BofA accounts against amounts allegedly owed to it under certain derivatives
contracts.  On January 2, 2009, the Debtors answered BofA's complaint and filed a counter-suit
against BofA seeking (a) damages of $501.8 million from BofA and its Cayman Islands
affiliates; (b) a declaratory judgment that BofA is legally obligated to return the overdraft deposit
account funds to LBHI; (c) the imposition of a constructive trust respecting the overdraft deposit

10

account funds; (d) a ruling that BofA and BofA Cayman violated the automatic stay; and (e) an

order that BofA turnover and remit to the Debtors $501.8 million.

29.    The pending litigation with BofA concerns complex and novel issues

regarding setoff of funds in a special purpose account.  Given the importance of the issues raised

in the BofA proceeding and the size of the estate funds at issue, the Committee intervened and

since has been involved in all aspects of the pending proceeding.  During the Fee Period, Quinn

Emanuel attorneys participated in an extensive and protracted discovery process.  Quinn

Emanuel attorneys reviewed the document productions from each of BofA and the Debtors,

analyzed the potential claims and defenses based on the review of the documents produced, and

attended the depositions scheduled by both parties.  Quinn Emanuel continues to participate in

this litigation on behalf of the Committee.

30.    <u>Investigation of Certain Key Parties and Transactions.</u>  These cases

commenced under exigent circumstances starting on September 15, 2008.  In the weeks building

up to that date, the Debtors were involved in myriad negotiations and transactions concerning

possible sales of their assets, financial assistance and other rescue options.  Since the bankruptcy

filings, the estates have been parties to other significant transactions, <u>e.g.</u>, the Sale Transaction.

Quinn Emanuel has been tasked with examining, on the Committee's behalf, certain of these

events and transactions.  Thus, Quinn Emanuel attorneys devoted and directed resources into the

review and analysis of the Debtors' relationships with these parties and the facts and

circumstances surrounding the transactions in which they were involved.  Quinn Emanuel

attorneys have prepared and presented to the Committee numerous detailed research memoranda

reviewing these investigations and prepared pleadings and appeared in court with respect to

them.  The investigations remain ongoing.

11

31.    <u>Barclays Sale Investigation.</u>  Quinn Emanuel attorneys continued to devote significant time during this Fee Period to the Committee's investigation of the Sale Transaction.  In particular, Quinn Emanuel attorneys spent time (a) propounding document requests on Barclays, (b) meeting with Barclays, and (c) analyzing documents produced by Barclays regarding the Sale Transaction.  Also, during the Fee Period, Quinn Emanuel attorneys negotiated the DTC's agreement to voluntarily engage in discovery with respect to its role in the Sale Transaction.  This agreement resulted in Quinn Emanuel attorneys reviewing documents produced by the DTC and interviewing DTC principals regarding the Sale Transaction.

32.    In April 2009, the Debtors engaged Jones Day to initiate their own Rule 2004 investigation into the Sale Transaction.  Quinn Emanuel dedicated time during this period to facilitating Jones Day's transition into the investigation and otherwise coordinating efforts with respect to the Sale Transaction investigation to avoid duplication of efforts.  During the Fee Period, Quinn Emanuel attorneys, together with the Committee's financial advisors, continued to work to ensure that the consideration received by the estate and the assets transferred to Barclays were consistent with the explanations of the Sale Transaction provided to the Court and the Committee.  That investigation remains ongoing.

33.    <u>SIPA Issues.</u>  During the Fee Period, Quinn Emanuel attorneys dedicated time to reviewing certain activity in the SIPA case that may affect the Debtors' cases and certain initiatives involving the Committee.  These include, without limitation, settlements negotiated and consummated by the SIPA Trustee involving significant financial institutions that, themselves, have extensive relationships with the Debtors' estates.

**G.**    **Nonworking Travel  (Hours: 14.90, Fees: $9,486.50)**

34.    Time billed under this category was for the necessary time that Quinn Emanuel attorneys spent traveling on behalf of the Committee to Committee meetings, court hearings, debtor-in-possession meetings and depositions.

**H.**    **Other Conflict Roles  (Hours: 77.10, Fees: $52,874.00)**

35.    Time billed to this category relates to Quinn Emanuel's role as conflict counsel to the Committee on certain discrete issues, including interaction with the Examiner and his counsel concerning the matters that are the subject of the Committee's investigations.

**I.**    **Quinn Emanuel Fee Applications (Hours: 172.90, Fees: $67,369.00)**

36.    Pursuant to the Bankruptcy Code, Local Rules, and the Compensation Order, Quinn Emanuel prepared and served four monthly fee statements (the "Fee Statements") for approval and allowance of compensation for actual, reasonable and necessary professional services rendered, and reimbursement of expenses for actual reasonable and necessary expenses incurred during those fee periods.  Each Fee Statement contained extensive records of the work performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared and served the First Interim Fee Application during this Fee Period.  Preparing the First Interim Fee Application involved consolidating Quinn Emanuel's fees and expenses for five monthly fee statements. Extensive time was spent organizing the time entries and preparing the charts and the summary descriptions of the work done throughout the First Interim Fee Application.

**J.    Retention of Professionals (Hours: 32.50, Fees: $11,905.00)**

37.    Time billed to this category relates to the drafting and filing of Quinn Emanuel's retention application as well as any subsequent review of documents or information necessary to ensure appropriate and effective disclosure in connection with Quinn Emanuel's continued retention.

**K.    Rule 2004 Investigations  (Hours: 353.60, Fees: $159,893.50)**

38.    In connection with certain of the Committee's investigations of certain events that transpired prior to the commencement of the Chapter 11 Cases, certain post-petition transactions (e.g., the Sale Transaction), and the relationships between the Debtors and their lenders and counterparties, Quinn Emanuel attorneys attempted to obtain consensual discovery from various parties.  Consistent with these efforts, attorneys from Quinn Emanuel often prepared and, when necessary, filed various motions pursuant to Bankruptcy Rule 2004.

39.    JPMC 2004    In October 2008, Quinn Emanuel filed a motion (the "JPMC Motion") on the Committee's behalf seeking leave under Bankruptcy Rule 2004 to conduct discovery against JPMC, i.e., documents regarding (i) the numerous contractual relationships between JPMC and the Debtors, (ii) JPMC's claims against the Debtors, and (iii) certain events leading to the filing of the Chapter 11 Cases.  Negotiations with counsel to JPMC seeking a consensual resolution of the JPMC Motion and their objection resulted in the November 5, 2008 Stipulation And Consent Order (I) Governing Interim Production of Documents and (II) Adjourning Remainder of Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings**, Inc., et al.** For Leave to Conduct Discovery of JPMorgan Chase Bank**, N.A. Pursuant to 11 U.S.C. §§ 105(A) and 1103(C) And Federal Rule Of

14

Bankruptcy Procedure Rule 2004 (the "<u>2004 Stipulation</u>") and the various confidentiality

agreements (the "<u>JPMC Production</u>").

40.    Pursuant to the 2004 Stipulation, JPMC began producing documents

during the Fee Period.  Quinn Emanuel attorneys spent considerable time and effort reviewing

these documents in an attempt to ascertain the contours of the relationship (<u>e.g.</u>, the legal rights

and entitlements as well as the business dealings) between the Debtors and JPMC.  During this

period, Quinn Emanuel also engaged in negotiations with JPMC's counsel regarding the

remaining production not addressed by the 2004 Stipulation.  JPMC also produced documents

pursuant to those agreements during the Fee Period, which were reviewed by Quinn Emanuel

attorneys.

41.    As with any document production, it was necessary for Quinn Emanuel's

professionals to install storage and categorization methods to allow Quinn Emanuel attorneys to

better access the material produced.  Quinn Emanuel attorneys also coordinated with the

Committee's financial professionals in their review of the JPMC documents.

## VI.    <u>ALLOWANCE OF COMPENSATION</u>

42.    The factors to be considered in awarding attorneys fees as enumerated in

<u>In re First Colonial Corp. of America</u>, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts, including the Bankruptcy Court for the Southern District of New York.

<u>See, e.g.</u>, <u>In re Drexel Burnham Lambert Group, Inc.</u>, 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y.

1991).  Indeed, a majority of the <u>First Colonial</u> factors are now codified in section 330(a)(3).  <u>See,

e.g.</u>, 3 L. King, <u>et al.</u>, Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

43.     Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

44.     The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.").  Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

### A.      The Time and Labor Required

45.      The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.  During the Compensation Period, approximately 1,741.8 recorded hours were expended by Quinn Emanuel's partners, associates, and legal assistants in providing the requested professional services.  Quinn Emanuel's hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly charges its hourly clients.

### B.      The Necessity of The Services and Benefit to the Estate

46.      These Chapter 11 Cases are generally regarded as among the most complex and active bankruptcy cases ever filed.  Indeed, many of the complex issues regarding the Debtors' financial contracts are issues of first impression, with far reaching ramifications.  As detailed above, the services Quinn Emanuel provided to the Committee were necessary to preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the Debtors' unsecured creditors.  Quinn Emanuel's services have furthered and will continue to further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will continue to maximize estate value.

### C.      The Novelty and Difficulty of Issues Presented in the Cases

47.      Novel and complex issues have arisen in the course of the Chapter 11 Cases, and it can be anticipated that other such issues will be encountered. In these cases, as in many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative

17

approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

###    D.    The Experience, Reputation and Ability of the Attorneys

48.    Quinn Emanuel has extensive experience in the areas of insolvency, workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee have been rendered in a highly efficient manner by attorneys who have achieved a high degree of expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have represented the Committee have ensured that these cases have been administered in the most efficient and expeditious manner.

## VII.    DISBURSEMENTS

49.    Quinn Emanuel has incurred a total of $28,104.76 in expenses in connection with representing the Committee during the Fee Period.  Quinn Emanuel records all expenses incurred in connection with the performance of professional services.  A summary of these expenses and detailed descriptions of these expenses, is annexed hereto as Exhibit E.

50.    In connection with the reimbursement of expenses, Quinn Emanuel's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients.  The expenses charged to Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

51.     Quinn Emanuel charges the Committee for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients. Quinn Emanuel seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten cents ($0.10) per page for photocopying; (b) no charge for incoming facsimiles; and (c) toll charges only for outgoing facsimiles.  In accordance with section 330 of the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.

52.     In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

53.     Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this Application and will not seek reimbursement from the Debtors of such expenses in future applications. Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

54.     Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals. The Application does not seek reimbursement of air travel expenses in excess of coach fares. Throughout the Fee Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII.    <u>NOTICE</u>

55.    Notice of this Application, as set forth in the Interim Compensation Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors and (e) the chairperson of the fee committee.

## IX.    CONCLUSION

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Second Interim Compensation Period in the amount of $820,579.50 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $28,104.76 for a total award of $848,684.26; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Second Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  August 14, 2009
         New York, New York

**QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP**

By:  /s/ James C. Tecce
        James C. Tecce

Susheel Kirpalani
James C. Tecce
Robert K. Dakis

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone No.:  (212) 849-7000
Facsimile No.:  (212) 849-7100

*Special Counsel to Official Committee Of
Unsecured Creditors Of Lehman Brothers
Holdings Inc., et al.*