Hearing Date: September 16, 2009 at 10:00 a.m. (E.D.T.)
Objection Date: September 11, 2009 at 4:00 p.m. (E.D.T.)

GREENBERG FREEMAN LLP
Michael A. Freeman (MAF-9600)
110 East 59th Street, 29th Floor
New York, New York 10022
(212) 838-3121
Attorneys for Marie Hunter

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In the Matter of: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC. et al., | Case No. 08-13555 (JMP) |
| | Jointly Administered |
| Debtors, | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**NOTICE OF HEARING FOR MOTION OF MARIE HUNTER FOR
THE ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE
EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b) FOR
<u>A SEPARATION PAYMENT INCIDENT TO TERMINATION</u>**

PLEASE TAKE NOTICE that Marie Hunter has filed a Motion for the allowance and payment of an administrative expense claim pursuant to 11 U.S.C. § 503(b) for payment of a separation payment incident to termination. (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing will be held in connection with the Motion (the "Hearing") on September 15, 2009 at 10:00 a.m. (prevailing Eastern time) before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, Room 601.

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard Krasnow, Esq., Lori R. Fife, Esq.. Shai Waisman, Esq. Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) all parties who have requested notice in these chapter 11 cases (vi) all parties with a particularized interest in the Motion, and (vii) counsel to Ms. Hunter, Greenberg Freeman LLP, 110 E. 59th Street, 29th Floor, New York, NY 10022 (Attn: Michael A. Freeman) so as to be

2

filed and received by no later than so as to be received on or before **4:00 p.m. (prevailing Eastern time) on September 11, 2009**, or such shorter time as the Bankruptcy Court may hereafter order and of which you may receive subsequent notice (the "Objection Deadline"). Only objections that are timely filed and served by the Objection Deadline in accordance with the procedures herein may be considered by the Court at the Hearing.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
       August 17, 2009

> Respectfully submitted,
>
> GREENBERG FREEMAN LLP
>
> By:  /s/ *Michael A. Freeman*
>      Michael A. Freeman (MAF-9600)
>      110 East 59th Street, 29th Floor
>      New York, New York  10022
>      (212) 838-3121
>      Attorneys for Marie Hunter

3

Hearing Date: September 16, 2009 at 10:00 a.m. (E.D.T.)
Objection Date: September 11, 2009 at 4:00 p.m. (E.D.T.)

GREENBERG FREEMAN LLP
Michael A. Freeman (MAF-9600)
110 East 59th Street, 29th Floor
New York, New York 10022
(212) 838-3121
Attorneys for Marie Hunter

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In the Matter of: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC. et al., | Case No. 08-13555 (JMP) |
| | Jointly Administered |
| Debtors, | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MOTION OF MARIE HUNTER FOR THE ALLOWANCE
AND PAYMENT OF AN ADMINISTRATIVE EXPENSE
CLAIM PURSUANT TO 11 U.S.C. § 503(b) FOR A
<u>SEPARATION PAYMENT INCIDENT TO TERMINATION</u>

To:   THE HONORABLE JAMES M. PECK
      United States Bankruptcy Judge

Marie Hunter ("Hunter") by and through her undersigned attorneys, files this motion seeking entry of an Order substantially in the form attached hereto as Exhibit A and, in support thereof, respectfully represents as follows:

**INTRODUCTION**

1.     Hunter was employed by Lehman Brothers Holdings, Inc. ("Lehman") for 24 years, and held the title of Managing Director since 2005.

2. On Monday, September 8, 2008, Lehman informed Hunter that she was being terminated, and offered to provide her with a severance package that included, among other things, "a special separation payment in the amount of $160,000."

3. On September 12, 2008, Hunter accepted Lehman's severance package by executing a severance agreement prepared by Lehman. The severance agreement stated that Hunter would remain an active employee until September 26, 2008.

4. On September 15, 2008, Lehman filed for bankruptcy.

5. From the commencement of the bankruptcy proceedings through September 26, 2008, Hunter remained an active employee of Lehman by continuing to render services and otherwise fulfilling her obligations under the severance agreement.

6. Since Hunter's employment was terminated as an incident of the administration of Lehman's estate, Hunter's separation payment under the Agreement is payable as an administrative expense pursuant to 11 U.S.C. § 503(b).

## JURISDICTION AND VENUE

7. This Court has jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### The Debtor's Chapter 11 Proceedings

9. On September 15, 2008, Lehman and various affiliated entities (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

2

10. This Court has ordered joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

11. Upon information and belief, the Debtors continue operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### Hunter's Employment

12. Hunter is 49 years old.

13. Hunter was first employed by Lehman in 1984.

14. Hunter began her career as an administrative assistant, and worked her way up the corporate ladder until she eventually achieved the title of Managing Director for Lehman's Corporate Services Division in 2005.

15. During her last full year of employment, Hunter earned a salary of $200,000 together with a bonus of $800,000, plus benefits.

### Lehman's Termination of Hunter

16. On or about September 8, 2008, Hunter was informed that her employment with Lehman was being terminated without cause.

17. Following oral notice of her termination, Lehman provided Hunter with a five-page document identified as an "agreement and release" (the "Agreement"), dated September 8, 2008 and revised on September 10, 2008. The Agreement set forth Lehman's proposal to provide Hunter with certain remuneration and benefits in return for Hunter continuing to provide services to the firm and agreeing to waive all claims against Debtors' arising from the termination of her employment. (A copy of the Agreement is attached as Exhibit B.)

3

18. As relevant to this motion, the Agreement provides as follows:

Dear Marie:

This is an agreement and release concerning your separation from employment by Lehman Brothers. If you sign and comply with this agreement, you will receive payments and benefits discussed below.

**Effective Dates, Payments and Benefits**

1. September 26, 2006 [sic] will be the last day you are expected to report to work.

2. Provided you sign and comply with this agreement, you are eligible to receive your current base salary and benefits coverage through the earlier of November 21, 2009 or the date on which you become actively employed with another firm (the "separation date"), as follows:

    a. You will continue to remain an active employee through September 26, 2008 (the "working notice period"), provided you adhere to all policies, procedures and other requirements applicable to your employment, including meeting performance, attendance, and compliance standards as evaluated by Firm management. Although you do not need to report to the office every day during the working notice period, you must remain available to Lehman for consultation concerning your areas of responsibility and must also remain "on call" to report to Lehman's offices during regular business hours, as requested. For your employment during this working notice period, you will continue to receive your current base salary and benefits coverage.

    b. Immediately after you complete the working notice period, you will no longer be required to report to work but will be eligible to receive your current base salary and benefits continuation through November 8, 2008 (the "notice period").

    \* \* \*

4

> 3. In addition, you will receive a special separation payment in the amount of $160,000, less withholding, payroll taxes and any other applicable deductions, payable within four weeks of your separation date.
>
> * * *
>
> 7. Should you become employed by another firm as an employee, consultant or independent contractor at any time while you are on salary continuation, you are obligated to inform the first so that you can be terminated from the Firm's payroll at that time. This date will be your separation date for purposes of this agreement. . . .

(Exhibit B at pp. 1-2.)

19. In return for receiving the payments and benefits described in the Agreement, Hunter further agreed "to forever release" Debtors from any claims she may have had against Lehman arising from her employment. (Id. at 2.)

20. On September 12, 2008, Hunter signed and returned the Agreement to Lehman. (Id. at 5.)

Lehman's Bankruptcy and Hunter's Continued Services

21. As stated above, the Debtors filed for bankruptcy on September 15, 2008, but continued operating their businesses and managing their properties as debtors-in-possession.

22. Pursuant to paragraph 2 of the Agreement, Hunter remained an active employee of Lehman through September 26, 2008. (Id. at ¶ 2.a.)

23. From the date she signed the Agreement through September 26, 2008 (the "working notice period"), Hunter fulfilled her obligations under the Agreement by adhering to all of Debtors' policies, procedures and other requirements applicable to

5

her employment, remained available to Lehman for consultation concerning her areas of responsibility, and remained "on call" to report to Lehman's offices as requested.

24. During the working notice period, including the period after commencement of the bankruptcy proceedings, Hunter spoke with one or more employees of Lehman on several occasions to assist in transitioning her responsibilities to other employees.

25. By letter dated September 30, 2008, Lehman informed Hunter that due to the bankruptcy, it would not be honoring the terms of the Agreement, and that any claims arising under the Agreement should be pursued in the bankruptcy proceeding. (A copy of this September 30 letter is attached as Exhibit C.)

26. Since her active employment with Lehman ended on September 26, 2008, Hunter has not been employed in any capacity by another firm.

**ARGUMENT AND RELIEF REQUESTED**

HUNTER IS ENTITLED TO THE ALLOWANCE AND
PAYMENT OF HER SEPARATION PAYMENT UNDER THE
AGREEMENT AS AN ADMINISTRATIVE EXPENSE CLAIM
PURSUANT TO SECTION 503(b) OF THE BANKRUPTCY CODE

27. Section 503(b) of the Bankruptcy Code, which governs the allowance of administrative expense claims and provides as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate including –
>
> (i) wages, salaries, and commissions for services rendered after the commencement of the case; . . . .

6

11 U.S.C. § 503(b)(1)(A)(i).

28.   It has long been the law in the Second Circuit that severance payments are properly characterized as administrative expenses and entitled to priority under 11 U.S.C. § 503(b). In re W.T. Grant Co., 620 F.2d 319, 320-21 (2d Cir. 1980), cert. denied, 446 U.S. 983, (1980); Straus-Duparquet, Inc. v. Local Union No. 3 Intern. Broth. of Elec. Workers, A F of L, CIO, 386 F.2d 649, 651 (2d Cir. 1967).

29.   The reasoning behind this rule is both logical and consistent with the policies underlying the Bankruptcy Code:

> Severance pay is not earned from day to day and does not "accrue" so that a proportionate part is payable under any circumstances. After the period of eligibility is served, the full severance pay is due whenever termination of employment occurs. . . .
>
> Since severance pay is compensation for termination of employment . . . [where] employment . . . was terminated as an incident of the administration of the bankrupt's estate, severance pay [is] an expense of administration and is entitled to priority as such an expense.

Straus-Duparquet, 386 F.2d at 651. See also In re Bethlehem Steel Corp., 479 F.3d 167 (2d Cir. 2007) (payment to terminated employee, no matter how denominated, is entitled to priority as an administrative in case where the right to payment "did not accrue day to day over the course of employment, but rather was triggered by termination, and as such it represented a new benefit payable because of termination," citing Straus-Duparquet); Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc., 789 F.2d 98 (2d Cir. 1986) (payments made to compensate terminated employees for the hardship they suffer when terminated are "earned" when the employees are dismissed, and granted a first priority as a cost of doing business during the bankruptcy proceeding).

7

30. The circumstances surrounding Hunter's claim here are virtually the same as those cases where payments have been treated as administrative expenses.

31. Although notified of her termination on September 9, 2008, Hunter remained an active employee of Lehman until September 26, 2008, and provided services to the Debtors to enable them to continue operation of their business. At no time prior to September 26, the end of her active employment with Lehman, was Hunter notified that Debtors had rejected her Agreement, by which point her obligations had been fully performed.

32. The $160,000 "special separation payment" that Hunter is entitled to receive under the Agreement was only a small fraction (approximately 16%) of her then-current compensation. Not only was that payment intended to compensate her for the hardship associated with her termination from a company for whom she had worked for 24 years, Hunter also agreed, in accepting that payment, to waive any and all claims she may have had arising out of her employment with Lehman. As such, the purpose, nature, and magnitude of the payment to Hunter is substantively identical to the "severance" payments approved for priority payment in Straus-Duparquet and W.T. Grant, and should be allowed as an administrative expense by this Court.[1]

---

[1] Hunter anticipates that potential objectants to her claim may seek to rely on decisions that seek to distinguish the severance payments approved for priority payment in Straus-Duparquet and W.T. Grant from so-called "golden parachute" payments claimed by highly compensated executives. See, e.g., In re AppliedTheory Corp., 312 B.R. 225 (Bankr. S.D.N.Y. 2004). All those decisions are readily distinguishable from the facts here because, among other things, Hunter's requested payment is not a multiple of her annual compensation, but only a small fraction thereof. To the extent necessary, those cases will be addressed at oral argument.

## **CONCLUSION**

33. For all of the foregoing reasons and authorities, as well as those to be advanced at oral argument, Hunter respectfully requests that the Court grant the Motion by entering an order substantially in the form attached as Exhibit A and such other relief as the Court deems just and proper.

Dated: New York, New York
August 17, 2009

                        Respectfully submitted,

                        GREENBERG FREEMAN LLP

                        By: /s/ *Michael A. Freeman*
                            Michael A. Freeman (MAF-9600)
                            110 East 59th Street, 29th Floor
                            New York, New York  10022
                            (212) 838-3121
                            Attorneys for Marie Hunter