VINSON & ELKINS, LLP
666 Fifth Avenue
New York, NY 10103
J. Ronald Trost (JT 4745)
Denis F. Cronin (DC 1958)
Dov Kleiner (BK 4600)
Ari M. Berman (AB 4928)
Telephone:     (212) 237-0000
Facsimile:     (212) 237-0100
Attorneys to Shinsei Bank, Limited

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE AND OBJECTION OF SHINSEI BANK, LIMITED TO DEBTORS'
MOTION FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND
HOLDING SHINSEI BANK IN CONTEMPT, AS SUPPLEMENTED**

The answer to one question is dispositive of the Debtors' motion to hold Shinsei Bank, Limited ("Shinsei") in contempt for violating the automatic stay: Which court, a Japanese bankruptcy court or Lehman's U.S. bankruptcy court, should decide the amount and priority of claims against a Japanese bankruptcy estate? Because Shinsei believes the answer is obviously the Japanese court, Lehman's Motion should be denied.

**Summary of Argument**

1.      The Debtors' motion [Docket No. 4764], as supplemented by the Debtors' supplement to Debtors' motion [Docket No. 4836]¹ (the "Debtors' Motion"), is an outrageous attempt to have this Court assert control over the insolvency proceeding for Sunrise Finance Co., Ltd. ("Sunrise"), an independent Japanese proceeding in which Lehman Brothers Holdings, Inc. ("Lehman") and Shinsei have been contesting the relative priority of their claims. While Sunrise proposed a rehabilitation plan that treats Lehman-affiliate claims on a parity with third-party creditor claims (the "Sunrise Plan"), Shinsei proposed an alternative plan of rehabilitation (the "Shinsei Plan") that contemplates the subordination of Lehman-affiliate intercompany claims. Prior to the filing of the Debtors' Motion, both Lehman (and its affiliates) and Shinsei filed pleadings asserting their respective positions. Although Lehman has been and continues to be an active participant in the Sunrise proceeding in Japan, it now attempts to invoke this Court's authority and the automatic stay to prevent Shinsei from taking a position contrary to Lehman. But Shinsei's actions do not violate the automatic stay because they merely seek to determine the priority of the Lehman-affiliate claims under Japanese

---

1      Lehman has retracted intimations in its original motion that Shinsei's role on the Committee (or an Asia Subcommittee of the Committee) somehow prevents Shinsei from acting as a creditor in the Sunrise Proceeding or that Shinsei used its position on the Committee improperly. Supplement to Debtors' Motion, filed on August 17, 2009 [Docket No. 4836] (the "Supplement"). In the Supplement, Lehman acknowledged that it did not intend to **"**assert that Shinsei Bank misused its position on the Creditors' Committee or the Subcommittee, or inappropriately used confidential information concerning the Debtors or these cases obtained as a member of the Creditors' Committee or the Subcommittee, in connection with the [Sunrise Proceeding]. It was not the Debtors' intention to suggest or imply, when noting that Shinsei Bank is a member of the Creditors' Committee and the Subcommittee, that it has improperly used confidential information obtained through its membership on the Creditors' Committee or the Subcommittee, or in any other way misused its position or breached its fiduciary duties as a member of those committees."

insolvency law in the very forum where Lehman and its affiliates assert them. The automatic stay is not a tool for Lehman to wrest administration of a Japanese insolvency proceeding from the Japanese courts by preventing the participation of parties who take positions in that proceeding contrary to Lehman's interests. Otherwise, Lehman and its affiliates would be free to press for equal treatment of their $2.4 billion intercompany claims while Shinsei, and we presume all other creditors, would be enjoined from appearing in opposition – a preposterous result!

### Background

**a.     The Parties**

2.     Lehman and certain of its subsidiaries (collectively, the "<u>Debtors</u>") commenced these proceedings (the "<u>U.S. Cases</u>") on or about September 15, 2008.

3.     Shinsei is chartered as an "ordinary bank" under the banking law of Japan, and is a member of the Lehman estate's Official Committee of Unsecured Creditors (the "<u>Committee</u>").

4.     Sunrise is a Japanese company that is in a Japanese insolvency proceeding. Shinsei believes Sunrise to be indirectly 100% beneficially owned by Lehman through a series of foreign holding companies, each in their own foreign insolvency proceedings. Lehman Brothers Holdings Japan Inc., an indirect subsidiary of Lehman, is itself in a Japanese insolvency proceeding, as is its direct subsidiary, the immediate parent of Sunrise, Lehman Brothers Japan Inc. Lehman Brothers Asia Holdings ("<u>LB Asia</u>") is an indirect subsidiary of Lehman and is in an insolvency proceeding in Hong Kong.

3

**b.     The Sunrise Proceeding**

5.     In September 2008, Sunrise commenced a bankruptcy proceeding (the "Sunrise Proceeding") in the 20th Civil Division, Tokyo District Court (the "Sunrise Court") under Japan's Civil Rehabilitation Act, a corporate reorganization law that provides for reorganization pursuant to a creditor- and court-approved plan.  The Sunrise Proceeding is not in any way part of the U.S. Cases and the court-appointed Supervisor in the Sunrise Proceeding, Makoto Tahira, Esq. (the "Sunrise Supervisor"), is not under the supervision of this Court.

6.     At issue in the Sunrise Proceeding is the relative priority of intercompany and third-party claims.  Japanese insolvency law, like United States insolvency law, permits the subordination or recharacterization of affiliate claims if justified by the facts and circumstances.  In the Sunrise Proceeding, third-party creditors have challenged the priority of Lehman's affiliate claims and assert that they should be subordinated, and the affiliate creditors (including Lehman) take the opposite position.  Lehman and its affiliates are asserting that their intercompany claims of $2.4 billion should participate *pari passu* with third-party creditors, while third-party creditors assert that those intercompany claims should be subordinated or treated as equity contributions under Japanese insolvency law.  Shinsei and Sunrise have proposed competing plans of rehabilitation that raise the relative priority issue and Shinsei and Lehman have also filed legal petitions and briefs in support of their respective positions.

7.     Lehman's interests in the Sunrise Proceeding are:

- A direct claim against Sunrise for approximately 1.4 billion JPY (roughly, $15 million); and

- LB Asia's claim against Sunrise for approximately 229 billion JPY (roughly, $2.4 billion), of which Lehman claims to be the indirect beneficiary through an intercompany claim Lehman asserted in LB Asia's Hong Kong insolvency proceeding and also through its indirect ownership of LB Asia.

8. Shinsei is an undisputed creditor of Sunrise for approximately 25 billion JPY (roughly, $262 million).[2]

9. On May 15, 2009, as contemplated by Japanese Law, Shinsei and Sunrise filed competing rehabilitation plans in the Sunrise Proceeding. The Shinsei Plan provided for the subordination of the claims against Sunrise of Lehman affiliates (including the claims of Lehman and LB Asia) (the "Parent Claims"), on the grounds that, under Japanese insolvency law applicable to the Sunrise Proceeding, the Parent Claims should be subordinated or treated as equity contributions rather than as debt obligations.[3] The Sunrise Plan provided that its parent and affiliate claims would share *pari passu* with third-party creditors.[4]

---

[2] Though not relevant here, Shinsei's loan to Sunrise was guaranteed by Lehman, making Shinsei also a creditor of Lehman.

[3] On June 26, 2009, Shinsei filed its Application for Approval to Revise Rehabilitation Plan, which, among other things, expanded the list of intercompany claims it proposed be subordinated. This application, though not the Sunrise Plan and not yet determined by the Sunrise Court, is what was attached as Naito Decl. Exh. 3. Because Shinsei's application has not been ruled on and the Debtors' Motion only asserts an interest in the claims of Lehman and LB Asia, only those two intercompany claims are addressed herein.

[4] Lehman estimates that under the Sunrise Plan, it would ultimately receive $3,000,000 on its direct claim against Sunrise (erroneously computed as $30,000 in Debtors' Motion) and approximately $490,000,000 through its indirect interest in the LB Asia recovery. Debtors' Motion ¶21.

### c. Lehman's participation in the Sunrise proceeding

10. While not mentioned in the Debtors' Motion, Lehman has been an active participant in the Sunrise Proceeding:

- On December 12, 2008, Lehman, together with LB Asia, filed a Petition for Adjournment of Deadline for the Submission of Rehabilitation Plan, asking the Sunrise Court to extend the deadline by which parties could submit a rehabilitation plan to the Sunrise Court and including provisions about the role of Lehman and its affiliates relating to the disposition of certain of Sunrise's assets (the "Lehman Extension Request") (a true and complete copy of the certified English translation of the Lehman Extension Request is attached as Exh. A to the accompanying Declaration of Dov Kleiner (the "Kleiner Decl."); a true and complete copy of the Japanese original is attached as Kleiner Decl., Exh. B.)

- On May 22, 2009, Lehman, together with LB Asia, filed a Petition, objecting to the subordination of the Parent Claims as provided in the Shinsei Plan that had been filed a week before (the "Lehman Petition") (a true and complete copy of the certified English translation of the Lehman Petition is attached as Kleiner Decl., Exh. C; a true and complete copy of the Japanese original is attached as Kleiner Decl., Exh. D); and

- On July 17, 2009, Lehman, together with LB Asia, filed an Opinion Brief Regarding Rehabilitation Plan, supporting the

Sunrise Plan and objecting to the Shinsei Plan (the "Lehman Brief") (a true and complete copy of the certified English translation of the Lehman Brief is attached as Kleiner Decl., Exh. E; a true and complete copy of the Japanese original is attached as Kleiner Decl., Exh. F).

11. Moreover, settlement discussions, though so far unproductive, have been introduced:

- on July 17, 2009 Shinsei submitted its Proposal, proposing mediation between the parties on whether or how the competing plans may be consolidated; and

- on July 29, 2009, Lehman, together with LB Asia, responded, declining to mediate and requesting that the Sunrise Proceeding continue quickly with respect to the competing plans.

12. The question of whether $2.4 billion in parent and affiliate claims should be, under Japanese bankruptcy law, subordinated to the claims of third-party creditors is now, and has been for months, before the Sunrise Court and is being actively litigated by the parties. <u>At no time during the period from December 12, 2008 through August 10, 2009, did Lehman contend, in this Court or in the Sunrise Court, that the automatic stay in these Chapter 11 Cases applied to actions taken in the Sunrise Proceeding.</u>

**d.   The Debtors' Motion**

13. On August 11, 2009, nearly three months after the subordination issues were first put before the Sunrise Court, and 12 days after Lehman requested that the Sunrise Proceeding move ahead quickly on the issue of competing plans, Lehman filed

the Debtors' Motion to enjoin Shinsei from proceeding in the Sunrise Court and to sanction Shinsei for having done so. In the Debtors' Motion, Lehman complains that if the Sunrise Court were permitted to determine the priority of the Parent Claims under Japanese law in accordance with the Shinsei Plan, the effect would be to reduce the Sunrise distributions that would ultimately make their way to Lehman. Lehman therefore asserts that the automatic stay under Section 362 of the Bankruptcy Code applies to prevent Shinsei from exercising its rights as a creditor in the Sunrise Proceeding and seeks to hold Shinsei in contempt for filing a rehabilitation plan that proposes that the Parent Claims should be subordinated or treated as equity contributions under Japanese law.

## Argument

14. Shinsei has done nothing wrong. Its assertion of a legal position in the Sunrise Proceeding does not violate the automatic stay. The issue of the priority of claims against Sunrise is a matter for Sunrise's Japanese bankruptcy court. Even Lehman acknowledges this, having filed the Lehman Petition and the Lehman Brief, asserting that the Parent Claims should not be subordinated.

15. How can United States bankruptcy law deprive Shinsei of the right to oppose the position Lehman has taken and the claims it (and LB Asia) have filed in the Japanese bankruptcy court? It cannot. If Lehman's novel interpretation of the automatic stay were accepted, the consequences would be staggering – any action in any proceeding, foreign or otherwise, Lehman affiliate or not, that might have an impact on the amount Lehman ultimately recovers, directly or indirectly, would be a violation of the stay. This would include not only acts by creditors such as filing proofs of claim,

asserting a security interest or claiming a right of setoff, but even actions taken by the official representative of the estate in the foreign proceedings – any party, including the debtor or administrator in the foreign proceeding, would violate the stay by so much as disputing the amount of any claims through which Lehman hoped to recover. The intended, though absurd, result would be that Lehman's asserted positions would simply be immune from challenge by virtue of the automatic stay. Likewise, the application of Lehman's logic is not limited to protecting Lehman; it would invite all U.S. debtors to use the automatic stay to insulate their assertions and claims from determination in proceedings around the world. It would also invite intrusion in U.S. proceedings from insolvency courts in other jurisdictions. For all those reasons, the Court must reject such an alarmingly expansive reading of the stay.

16. Not surprisingly, there is no basis for Lehman's position. The automatic stay simply does not apply to the litigation in another proceeding of the relative priority of claims asserted in that proceeding simply because Lehman has an interest in the proceeds of those claims. Similarly, neither principles of comity nor the Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies [Docket No. 3647 Exh. B] (the "Protocol") approved by this Court contemplate that Lehman could use the automatic stay and this Court to interfere with the Sunrise Court's ability to determine issues of Japanese insolvency law or to prevent creditors from appearing in the Sunrise Proceeding and exercising their rights as creditors under Japanese law.

**a. Shinsei has neither attempted to control nor possess property of Lehman's estate**

17. Shinsei's position that the Parent Claims should be subordinated is not an attempt to obtain possession or control of the property of the Lehman estate. Section 362

of Title 11 of the United States Code stays "any act to <u>obtain possession of</u> property of the estate or of <u>property from</u> the estate or to <u>exercise control over</u> property of the estate." 11 U.S.C. § 362(a)(3) (emphasis supplied). Shinsei is neither seeking to <u>obtain possession of</u> nor <u>take property from</u> nor <u>exercise control over</u> any of Lehman's property. Rather, Shinsei is merely attempting to have the Sunrise Court determine – pursuant to Japanese law – the relative priority of claims of Sunrise's creditors, including LB Asia, Lehman and Shinsei (and other unaffiliated creditors). Determining the amount or priority of claims is not an exercise of control over "property of the estate," even if it may have an adverse impact on what the debtor eventually recovers. Similarly, responding to claims asserted by a debtor (or claims in which a debtor holds an interest) does not violate the stay.[5]

18. Whether or not the Parent Claims should be subordinated is an issue that is being thoroughly litigated in Japan. Under Japanese law, the Sunrise Court will decide whether to submit both plans for voting and approval by the creditors, to submit only one plan or to submit neither plan. And it is the Sunrise Court that will decide whether the plan that is submitted to creditors for voting provides for the subordination of the Parent Claims or does not. Lehman has already actively argued before the Sunrise Court that the

---

5 *See, e.g., Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) (automatic stay not violated when appealing dismissal because "the suit was filed by rather than against the debtor"); *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989) (stay not violated by defendant's move to dismiss a suit in which debtor was the plaintiff; "[T]he bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it," the automatic stay does not apply.); *In re Merrick*, 175 B.R. 333, 338 (B.A.P. 9th Cir. 1994) (filing a motion to dismiss in a proceeding brought by the debtor is not a stay violation because "[t]he automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate. . . . While it is true that a successful defense to a lawsuit eliminates its alleged value, this results in no loss to the estate, . . . . There can be no loss of what does not exist.").

10

Parent Claims should not be subordinated; but it now asks this Court to prevent Shinsei from arguing that Lehman's intercompany claims should be subordinated.

19. The automatic stay is not intended to tie the hands of non-debtor creditors, such as Shinsei, while a debtor creditor is given free rein to pursue its rights in the Sunrise Proceeding. Yet that is exactly what Lehman hopes to accomplish by its motion. Lehman seeks to use the automatic stay in its U.S. proceeding to prevent any action to determine the priority of the Parent Claims in the Japanese proceeding and to penalize Shinsei for opposing Lehman there (and, presumably, to intimidate others in both the Sunrise Proceeding and in other foreign proceedings).

20. Lehman's interpretation of the automatic stay is not just overbroad; it also is not the law. When a debtor acts as a creditor in an unrelated bankruptcy proceeding, the debtor is not entitled to rights greater than those afforded to any other creditor in that proceeding. *See Justus v. Fin. News Network Inc. (In re Fin. News Network)*, 158 B.R. 570, 571 (S.D.N.Y.1993); *In re Metiom, Inc.,* 301 B.R. 634 (Bankr. S.D.N.Y. 2003). For example, seeking to subordinate (as Shinsei has done), or even to disallow (a more aggressive action than Shinsei's), the claim of a bankrupt debtor in an unrelated bankruptcy is not a violation of the automatic stay. In *In re Metiom, Inc.*, a case involving two debtor entities, the trustee of bankrupt Metiom Inc. (the "Metiom Trustee") objected to a claim filed by Intira Corporation ("Intira") – a debtor in another proceeding – on the grounds that the claim was an avoidable preference, should be disallowed, and should be equitably subordinated. *Id.* at 636-38. The *Metiom* Bankruptcy court held that the Metiom Trustee's objection did not violate the automatic stay because it was not an

attempt to exercise control over Intira's property. *Id.*[6] And, in *Justus v. Fin. News Network Inc.*, Kaypro, Inc. ("Kaypro"), a debtor in an unrelated proceeding, filed a proof of claim in the bankruptcy case of Financial News Network Inc. ("FNN"). After FNN filed an objection to Kaypro's proof of claim and the proof of claim was disallowed, Kaypro asserted that FNN had violated the automatic stay because it attempted to "exercise control over Kaypro's estate." *Justus*, 158 B.R. at 572. The Southern District Court of New York disagreed and ruled that the automatic stay "does not prevent entities against whom the debtor proceeds in an offensive posture – for example, by initiating a judicial or adversarial proceeding – from protecting their legal rights." *Id.* at 573 (internal citation and quote marks omitted). Because FNN "asserted no claim against Kaypro which could be construed as an active attempt to recover property against Kaypro," there was no violation of the automatic stay. *Id.*

**b.     Lehman's legal authorities do not support the relief it seeks**

21.     Lehman argues that any action which may have the effect of reducing Lehman's ultimate recovery is necessarily a violation of the automatic stay. This is patently absurd. Following Lehman's logic, Sunrise or the Sunrise Supervisor must simply accept the Parent Claims as filed and may not challenge them or dispute the amounts, because to do so would adversely affect Lehman's ultimate recovery. In Lehman's view, no creditor may participate in any of the foreign proceedings from which

---

[6] *See also Hi-Tech Commc'ns Corp. v. Poughkeepsie Bus. Park, LLC (In re Wheatfield Bus. Park, LLC)*, 308 B.R. 463, 465-66 (B.A.P. 9th Cir. 2004) ("[The creditor] contends that the Debtor was required to obtain relief from the automatic stay in [creditor's] bankruptcy case before objecting to the claim. We disagree. The bankruptcy court correctly decided that Debtor did not violate the automatic stay in [the creditor's] Chapter 11 by objecting to the claim filed in Debtor's case. [The creditor] was the claimant, and the automatic stay does not apply under such circumstances.") (internal citation omitted).

12

Lehman hopes to receive a recovery if their participation would negatively impact Lehman's recovery and no debtor in a foreign proceeding may challenge or dispute any claim from which Lehman hopes to benefit.

22. It is no surprise that the cases to which Lehman cites do not support such a novel and overreaching interpretation of the automatic stay. Rather, they stand for the uncontroversial proposition that it is a violation of the automatic stay to attempt to seize property of the estate, something Shinsei has not done. For example, in *In re Chateaugay Corp.*, 78 B.R. 713 (Bankr. S.D.N.Y. 1987), the creditor attempted to control property of the estate by seeking unpaid freight charges directly from the debtor's consignees outside of the Bankruptcy Court process. *Id.* at 725. The Bankruptcy Court held that the consignees' debts were property of the debtor and, therefore, the accounts receivable were property of the estate and the creditor's pursuit of consignees violated the automatic stay. *Id.* And, in *Lykes Bros. S.S. Co. v. Hanseatic Marine Serv. GmBH (In re Lykes Bros. S.S. Co.)*, 207 B.R. 282 (Bankr. M.D. Fla. 1997), a creditor violated the automatic stay by initiating the arrest of the debtor's ship (i.e., property of the debtor's estate) in Belgium to enforce the creditor's pre-petition rights. Unlike defendants in those cases, Shinsei is not improperly attempting to levy on Lehman's interest in Sunrise; Shinsei is merely exercising its creditor rights within the context of the Sunrise Proceeding, as any creditor may, by proposing an alternative plan of rehabilitation.

23. Similarly, *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.*, 835 F.2d 427 (2d Cir. 1987), on which Lehman also relies, is inapposite because it involves an action to extinguish a property interest. There, prior to filing for bankruptcy, the debtor assigned its lease to a non-debtor entity with the proviso that the lease would eventually

be reassigned to the debtor; the non-debtor party had a prime lease and the debtor had a sublease. *Id.* at 428-29. The landlord attempted to foreclose on the prime lease, but the Second Circuit found that because the non-debtor's property interest was "intertwined" with that of the bankrupt debtor, the landlord's attempt to terminate the non-debtor's prime lease would have destroyed the debtor's subtenancy – and for that reason, the landlord's purported termination violated the automatic stay. *Id.* at 431.

**c. Lehman's attempted use of the automatic stay violates the Protocol and the interests of the foreign proceedings**

24. On June 17, 2009, on the Debtors' motion, this Court approved the Protocol, which serves as a guide for the coordination of the many Lehman-related cases filed around the word. The Protocol provides:

- "Each Tribunal should administer the assets subject to its jurisdiction"

- "Each Tribunal is an independent, sovereign Tribunal, entitled to preserve its independent jurisdiction and authority with respect to matters before it"

- "<u>Each Tribunal shall have sole jurisdiction and power over the conduct of the Proceeding in that forum</u>" and

- "<u>Nothing in this Protocol is intended to interfere with the exercise of jurisdiction by each of the Tribunals in the Proceedings</u>."

Protocol 7.1., 11.1, 11.2, 11.3 (emphasis supplied). The Protocol is a non-binding "framework for cooperation" that respects international sovereignty and principles of comity by contemplating that respective Lehman-related insolvency proceedings preserve their independent power to administer assets subject to their jurisdiction and without interference from other Lehman administrators or courts.

14

25. Moreover, the Debtors themselves have continued to recognize the significance of maintaining the distinctness and independent jurisdiction of each Lehman-related insolvency proceeding. At the July 8, 2009 Section 341 Meeting of Creditors, Lehman's CEO noted that, "the issues that we have are really <u>you have got rules in each country. Obviously the rules in that country will govern</u>." *See* Transcript of Section 341 Meeting of Creditors Held on July 8, 2009 at 19 (emphasis added) (An excerpt containing the relevant portions of the transcript is attached as Kleiner Decl., Exh. G). Later, responding to a question regarding substantive consolidation, he added "[o]ur approach is to keep each subsidiary, <u>to respect the integrity of the legal entity structure</u>." *See id.* at 44 (emphasis added).[7]

26. Although the Protocol is not binding on even the signatory parties (and the Sunrise Supervisor is not a signatory), if it were binding, it would compel a result opposite from what Lehman seeks in its motion. Having made so much in the Protocol of

---

7   Concern for the Protocol's respect of corporate form also was expressed by the administrators in certain United Kingdom Lehman-related insolvency proceedings (the "<u>UK Administrators</u>") in their May 13, 2009 letter to this Court, who made clear that they must treat each Lehman-related entity as distinct and avoid creating a "global estate":

> The Administrators are <u>bound to treat each insolvent entity as a separate legal entity</u> and any framework that seeks to achieve a different outcome by creating or seeking to create a global estate comprising many Insolvent Lehman Affiliates in different jurisdictions would not be permitted [under English insolvency law].

UK Administrators' May 13, 2009 letter at ¶ 7 (Decl. of Richard Levine, Exh. C [Docket No. 4766]))(emphasis added). Obviously, Lehman's claim that Shinsei's representations to the Sunrise Court that some of the foreign administrators had reservations about the Protocol "have no foundation in fact," Debtors' Motion at ¶ 38, is simply false. While Shinsei's representation to the Sunrise Court accurately called attention to a May 26, 2009 Wall Street Journal article (attached as Kleiner Decl., Exh. H), which reported that the UK Administrators were "balking" at the Protocol because "they are governed by local rules and the interests of their own creditors," the UK Administrators' letter makes the point for itself.

15

the independence of the foreign tribunals and the need to maintain their integrity and authority over their own proceedings, Lehman disingenuously seeks to strip that away by preventing the Sunrise Court from determining issues of priority under Japanese law and from hearing from Shinsei, a significant creditor. The only reason Lehman offers is that it wants to protect the priority of the Parent Claims asserted in the Sunrise Proceeding from being challenged in the Sunrise Proceeding. Hogwash!

27. Similarly, Lehman's attempted use of the automatic stay should be denied as an affront to the principles of comity and to the independence of the Sunrise Court's authority over its own proceedings. Lehman seeks to prevent Shinsei from exercising its right as a creditor to propose a rehabilitation plan in the Sunrise Proceeding and to ask for a determination under Japanese law of the relative priority of the Parent Claims. If successful, Lehman would use this Court to deprive the Sunrise Court of its prime function, the considered determination of claims and the distribution of assets with respect to the Japanese debtor before it.

28. But U.S. courts have long recognized the need to apply principles of comity – i.e., respecting the sovereignty of proceedings in sister nations – to foreign bankruptcy proceedings and to interfere with foreign proceedings only when necessary to protect U.S. jurisdiction or an important public policy. *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir.1987) ("Under general principles of comity . . . federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat claims of local creditors."); *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1357 (6th Cir. 1992) ("[O]nly evasion of the most compelling public policies of the forum will support the issuance of an anti-suit

injunction").[8] Lehman offers no reason why this is the rare circumstance when the Court should decline to extend comity and refuse to respect the Sunrise Court's sovereignty. Its request should therefore be rebuffed.

**d. Since Shinsei has not violated the automatic stay, it cannot be held in contempt, and if the automatic stay were to apply, it should be annulled**

29. Shinsei has clearly demonstrated that, by opposing the treatment of the Parent Claims asserted in the Sunrise Proceeding, it has not violated the automatic stay. Shinsei therefore cannot be held in contempt. Moreover, even if the Court were to disagree with Shinsei, there is no basis for a contempt order. *Maritime Asbestosis Legal Clinic v. LTV Steel Co.*, 920 F.2d 183, 186 (2d Cir. 1990) (contempt requires evidence that a party acted with "maliciousness" or a lack of "good faith").

30. If, for some reason, the Court were to conclude that the automatic stay could be applied to these circumstances as a technical matter of law, it should be annulled to permit Shinsei to defend the priority of its claims under Japanese law in the Sunrise Proceeding where Lehman and its affiliates have asserted their claims.

---

8  *J.P. Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) (The Second Circuit "[has] repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy"); *Finanz AG Zurich*, 192 F.3d 240, 246 (2d Cir. 1999) (U.S. courts generally extend comity to foreign bankruptcy proceedings so long as "the foreign court ha[s] proper jurisdiction and [the deference] does not prejudice the rights of United States citizens or violate domestic public policy."); *Ecoban Fin. Ltd. v. Grupo Acerero del Norte, S.A. de C.V.*, 108 F. Supp. 2d 349, 351-52 (S.D.N.Y. 2000) (Comity is "particularly appropriate and important with respect to foreign bankruptcy proceedings, where equitable principles demand that all claims against a debtor's limited assets be addressed in a single proceeding.").

## **Conclusion**

WHEREFORE, for the foregoing reasons, Shinsei respectfully requests this Court deny the relief requested in the Debtors' Motion and grant Shinsei such other relief that the Court deems proper.

Dated: August 21, 2009
New York, New York

/s/ J. Ronald Trost
VINSON & ELKINS, LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
J. Ronald Trost
Denis F. Cronin
Dov Kleiner
Ari M. Berman

Attorneys for Shinsei Bank, Limited