1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP) and 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.,

           Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

           Debtor.

- - - - - - - - - - - - - - - - - - - -x

                U.S. Bankruptcy Court

                One Bowling Green

                New York, New York


                August 5, 2009

                10:01 a.m.


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE


OMNIBUS HEARING

2

1    I. UNCONTESTED MATTERS:

2    HEARING re Motion of Wells Fargo Bank, National Association to

3    Compel Lehman Brothers Special Financing Inc. to Assume or

4    Reject an Executor Contract

5

6    II. CONTESTED MATTERS:

7    HEARING re Debtors' Motion to Assume the Open Trade

8    Confirmations with Three Basso Funds

9

10   HEARING re Motion of the Debtors for Establishment of

11   Procedures for the Debtors to Compromise and Settle Claims in

12   Respect of the Origination or Purchase of Residential Mortgage

13   Loans

14

15   HEARING re Debtors' Motion for Entry of an Order Pursuant to

16   Bankruptcy Rule 2004  Compelling Discovery against Consolidated

17   Container Company LLC

18

19

20

21

22

23

24

25

3

1    HEARING re Interim Applications for Allowance of Compensation

2    for Professional Services Rendered and for Reimbursement of

3    Actual and Necessary Expenses:

4         A. Bortstein Legal LLC

5         B. Bracewell & Giuliani LLP

6         C. Jones Day

7         D. McKee Nelson LLP

8         E. Jenner & Block LLP

9         F. Ernst & Young LLP

10        G. McKenna Long & Aldridge LLP

11        H. Lazard Freres & Co. LLC

12        I. Curtis, Mallet-Prevost, Colt & Mosle LLP

13        J. Reilly Pozner LLP

14        K. Milbank, Tweed, Hadley & McCloy LLP

15        L. FTI Consulting, Inc.

16        M. Houlihan Lokey Howard & Zukin Capital, Inc.

17        N. Quinn Emanuel Urquhart Oliver & Hedges, LLP

18        O. Simpson Thacher & Bartlett LLP

19        P. Weil, Gotshal & Manges LLP

20        Q. Windels Marx Lane & Mittendorf, LLP

21

22   HEARING re LBHI's Motion for Authorization to Enter into (i) an

23   Amended Repurchase Agreement with Aurora Bank FSB and (ii) a

24   Financing Facility with Aurora Loan Services, LLC

25

4

1    SECURITIES INVESTOR PROTECTION CORPORATION PROCEEDINGS:

2    III. UNCONTESTED MATTERS

3    HEARING re Trustee's Motion for Entry of Order Pursuant to

4    Section 365 of the Bankruptcy Code and Federal Rules of

5    Bankruptcy Procedure 6006 and 9014 Authorizing the

6    Trustee to Assume and Assign an Executory Contract to Lehman

7    Brothers Holdings Inc. and Related Relief

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sharona Shapiro

5

1

2   A P P E A R A N C E S :

3   WEIL GOTSHAL & MANGES, LLP

4        Attorneys for Debtors

5        767 Fifth Avenue

6        New York, New York 10153

7

8   BY:  HARVEY R. MILLER, ESQ.

9        GARRETT A. FAIL, ESQ.

10       SUNNY SINGH, ESQ.

11

12  ALSTON & BIRD LLP

13       Attorneys for Bank of America

14       1201 West Peachtree Street

15       Atlanta, GA 30309

16

17  BY:  WILLIAM S. SUGDEN, ESQ.

18       (TELEPHONICALLY)

19

20  ALVAREZ & MARSAL

21       600 Lexington Avenue

22       6th Floor

23       New York, NY 10022

24

25  BY:  DOUGLAS LAMBERT

6

```
 1
 2    BERNSTEIN, SHUR, SAWYER & NELSON
 3         100 Middle Street
 4         PO Box 9729
 5         Portland, ME 04104
 6
 7    BY:  MICHAEL A. FAGONE, ESQ.
 8         (TELEPHONICALLY)
 9
10    BRACEWELL & GIULIANI LLP
11         Attorneys for Lehman Brothers Holdings
12         711 Louisiana Street, Suite 2300
13         Houston, TX
14
15    BY:  MARCY E. KURTZ, ESQ.
16         (TELEPHONICALLY)
17
18    CHAPMAN & CUTLER LLP
19         Attorneys for U.S. Bank National Association
20         111 West Monroe Street
21         Chicago, IL 60603
22
23    BY:  FRANKLIN H. TOP, III, ESQ.
24         JAMES HEISER, ESQ.
25         (TELEPHONICALLY)
```

7

1

2    HUGHES HUBBARD & REED, LLP

3        Attorneys for the SIPA Trustee

4        One Battery Park Plaza

5        New York, NY 10004

6

7    BY:   JEFFREY S. MARGOLIN, ESQ.

8          SARAH LOOMIS CAVE, ESQ.

9

10   JENNER & BLOCK

11       Attorneys for Examiner

12       919 Third Avenue

13       New York, NY 10022

14

15   BY:   PATRICK J. TROSTLE, ESQ.

16

17   JOHNSON, KILLEN & SEILER, P.A.

18       800 Wells Fargo Center

19       230 W. Superior Street

20       Duluth, MN 55802

21

22   BY:   JOSEPH V. FERGUSON, ESQ.

23       (TELEPHONICALLY)

24

25

8

1

2    MILBANK TWEED HADLEY & MCCLOY, LLP

3          Attorneys for Official Committee of Unsecured Creditors

4          One Chase Manhattan Plaza

5          New York, New York 10005

6

7    BY:   DENNIS F. DUNNE, ESQ.

8          EVAN R. FLECK, ESQ.

9

10   QUINN EMANUEL

11         Attorneys for Official Committee of Unsecured Creditors

12         51 Madison Avenue

13         New York, NY  10010

14

15   BY:   JAMES C. TECCE, ESQ.

16

17   STROOCK & STOOCK & LAVAN, LLP

18         Attorneys for Basso Capital Management L.P.

19         180 Maiden Lane

20         New York, New York 10038

21

22   BY:   HAROLD A. OLSEN, ESQ.

23

24

25

9

1

2   STUTMAN TREISTER & GLATT, PC

3        1901 Avenue of the Stars

4        Twelfth Floor

5        Los Angeles, CA 90067

6

7   BY:   JEFFREY H. DAVIDSON, ESQ.

8        (TELEPHONICALLY)

9

10  UNITED STATES DEPARTMENT OF JUSTICE

11       Office of the United States Trustee

12       33 Whitehall Street

13       Suite 2100

14       New York, NY 10004

15

16  BY:   ANDREW D. VELEZ-RIVERA, ESQ.

17

18  WINDELS MARX LANE & MITTENDORF, LLP

19       156 West 56th Street

20       New York, NY 10019

21

22  BY:   HOWARD L. SIMON, ESQ.

23

24

25

10

1          THE COURT:  Good morning and be seated, please.

2          Mr. Miller, how are you?

3          MR. MILLER:  Good morning, Your Honor.  This is an

4    omnibus hearing in the Lehman cases.  I'm sort of overwhelmed,

5    Your Honor, by all the electrical equipment.  I'm afraid

6    it's --

7      THE COURT:  Believe me, I'm overwhelmed by it too.  I've

8    been dealing with it since July 20th and I'll be dealing with

9    it through the end of the month and into September on another

10   case, so don't be intimidated by it but also don't touch it.

11         MR. MILLER:  Your Honor, I think we have a rather

12   short agenda for this morning.  There's one uncontested matter.

13   There were originally five contested matters, Your Honor.

14   Essentially they're all consensually resolved.

15         THE COURT:  Good.

16         MR. MILLER:  And you have two pretrial conferences in

17   adversary proceedings at 2 o'clock this afternoon --

18         THE COURT:  Good.

19         MR. MILLER:  -- and a number of adjourned matters.

20   With Your Honor's permission, I would like to go to number 5,

21   the fee applications, because I think most of the people here

22   are probably involved in that.  And we can resolve it.

23         THE COURT:  That's fine.

24         MR. MILLER:  As Your Honor may recall, the

25   consideration -- the hearing on the applications for allowances

11

1    of compensation was originally scheduled to be heard on May 13,

2    2009.  In the period between the time of the filing of the

3    applications and that hearing date, at Your Honor's suggestion

4    there was an agreement reached as to the appointment of a fee

5    committee.

6         And on May 13, Your Honor approved the appointment of

7    the fee committee which consists of four members.  The

8    committee is chaired by Mr. Kenneth Feinberg who is the

9    disinterested independent chairperson of the committee.  And

10   there are representatives on the committee of the U.S.

11   Trustee's Office, the Lehman estates, and the official

12   creditors' committee.  And since the organization of the

13   committee it has worked, I believe, Your Honor, assiduously to

14   deal with the fifteen applications that are pending before the

15   Court.

16        And on Monday, August 3, Your Honor, the fee

17   committee filed its report.  There are fifteen applications,

18   Your Honor, in round figures, applying for a total of 96

19   million dollars plus a reimbursement of expenses totaling

20   approximately 2.7 million dollars.  The fee committee report,

21   Your Honor, which consists of six pages, is just a surface of

22   the committee's work.

23        As to each fee applicant, the fee committee has

24   directed a schedule of items which it has either comments or

25   questions or suggestions as to each fee application, and those

12

1    are quite extensive, Your Honor.  I know from reviewing the one

2    that was submitted in connection with my firm, there are like

3    486 items that have to be resolved on that schedule.  And I

4    haven't seen the others, Your Honor, but I assume they are just

5    about as voluminous.

6         As I read the fee committee report, Your Honor,

7    basically what the fee committee is suggesting, Your Honor may

8    recall, is a twenty percent holdback in respect of all of the

9    fees which have been asked for.  In the fee committee report it

10   recommends that the twenty percent holdback be reduced to ten

11   percent for the first interim fee applications pending the

12   resolution of the outstanding issues note by the fee committee

13   and the individual summary sheets that have been sent to each

14   of the retained professionals.

15        In addition, the fee committee emphasizes that its

16   recommendation regarding the remaining ten percent is due to

17   the early stage of these proceedings and is designed to protect

18   against unanticipated future events.  Over the next 120 days

19   there will be, I take it, Your Honor, discussions with the fee

20   committee as to each of the items which has been highlighted by

21   the fee committee for either comment or resolution.

22        I would note, Your Honor, that in the fee committee

23   report, as to the total amount of disbursements which have been

24   requested, which is $2,766,000 in round figures, the

25   inappropriate expenses which the committee suggests will be

13

1  disallowed, total $75,114.17, or an amount that is less than

2  .01 percent.  So I think that's a fairly good record, Your

3  Honor.  As to the fee applications themselves, of the

4  $96,181,531 of requests for compensation, the fee committee

5  recommends that there are inappropriate fees that should be

6  disallowed totaling $223,262.01.  That Your Honor, is less

7  than .002 percent.

8          So on the overall basis, Your Honor, I think the fee

9  applications were pretty complete.  And over the next 120 days

10  the balance of those comments will be resolved.  So the

11  recommendation is -- and the debtors, Your Honor, join the

12  recommendation -- that the holdback be reduced at this time so

13  that the holdback is equal to ten percent and that that will be

14  dealt with over the next 120 days, and that Your Honor would

15  enter an order approving the fee applications and releasing the

16  holdback to the extent of fifty percent of the original twenty

17  percent.

18          THE COURT:  Thank you, Mr. Miller.  I'd like to ask

19  the representative for the U.S. Trustee, Mr. Andrew Velez-

20  Rivera, who if I recall correctly, is a member of the

21  committee, if he has any comments.  I read the report and I was

22  impressed with its thoroughness and the approach that's

23  reflected here which appears to be cooperative and

24  constructive.  But I'd be interested in hearing, if you're

25  prepared to comment, as to any aspect of the report or any

14

1    aspect of the fee approval process.

2              MR. VELEZ-RIVERA:  I'd be glad to, Your Honor.

3    Andrew Velez-Rivera for the United States Trustee.  I'll let

4    the report speak for itself because the fee committee itself

5    hasn't deputized me to speak on its behalf.  But I will tell

6    the Court, and I feel free to do so, that the fee committee

7    functions very well.  There are different points of view held

8    by each of the individual members on the committee.  It

9    functions as a committee should.  There is an emphasis on the

10   committee for achieving, if not unanimity, certainly a friendly

11   and amiable consensus.  And as a modus operandi, that seems to

12   be working for us very well.  It's been a lot of work.  Mr.

13   Miller referenced the paper that was sent over to Weil,

14   Gotshal.  He can rest assured that he can multiply that by

15   about three.

16             And that is the sum and substance of the work of the

17   fee committee.  We will be working with the professionals

18   hopefully sooner than the next 120 days so that at least all of

19   the outstanding comments will be resolved by the next round of

20   fee applications which I think should be in the early fall.  We

21   do expect most of the comments that are outstanding at this

22   point to be resolved, or at least resolved to nobody's

23   satisfaction, so that the fees may be allowed, disallowed,

24   allowed to a lower extent, and we'll march forward.

25             I think the fee committee knows it has a lot of work

15

1    before it from now until confirmation, but everybody seems to

2    be prepared for the exercise.

3              THE COURT:  Good.  I appreciate that.  And please

4    pass along to your other committee members my views that the

5    report was extremely helpful and gives me confidence that

6    appointing the committee was the right decision in a case of

7    this sort.  And I found it to be comforting that, as Mr. Miller

8    pointed out, although I did not do the math, the areas of

9    dispute seem to be relatively limited in terms of the

10   percentage that's being sought, which suggests that the fee

11   application process is working.

12             MR. VELEZ-RIVERA:  I think it is.  I think it is.

13   Thanks, Judge.

14             THE COURT:  Thank you.

15             MR. MILLER:  Your Honor, I should have added that the

16   fee committee has -- perhaps the right word is directed

17   henceforth all of the professionals, the retained professionals

18   other than the OCP, ordinary course professionals, will be

19   required to submit budgets on a monthly basis --

20             THE COURT:  I noticed that.

21             MR. MILLER:  -- by the fifteenth day of the prior

22   month for the following month.  And all the retained

23   professionals will be following that schedule.

24             THE COURT:  I think that's a very good discipline.  I

25   recognize that the fees in this case are, in relative terms,

16

1    extraordinary, perhaps the most significant accumulated fees

2    for retained professionals in any bankruptcy case that I'm

3    aware of.  96,181,000 dollars and change is a significant

4    amount of money and, candidly, would be significant if it were

5    the total amount involved in a Chapter 11 case.  It reflects

6    the extraordinary effort of the retained professionals in this

7    case to date.

8              And the fact that the fee committee has recommended

9    that the fees be approved, subject to a ten percent holdback,

10   which itself can be reduced after further compliance with the

11   committee's requests, demonstrates that not only have the

12   professionals done what the Court views to be an outstanding

13   job to date.  But they've also done an outstanding job in

14   reporting their performance in accordance with the requirements

15   of the Bankruptcy Code.

16             I'm pleased to approve the interim fees, and will

17   look forward --

18             MS. KURTZ:  Your Honor?

19             THE COURT:  Yes?

20             MS. KURTZ:  This is Marcy Kurtz from Bracewell &

21   Giuliani.  Before you have passed from this matter to the next

22   one, I wondered if I might make a brief comment about

23   Bracewell & Giuliani's fee application.  I'm embarrassed to

24   have to do this with all these lawyers on the phone because I

25   need to point out to the Court that we have made a mistake in

17

1    our application and filed an amendment to correct that late on

2    Monday when we realized over the weekend, getting ready for the

3    hearing, that there had been a mistake.

4           THE COURT:  Was the mistake --

5           MS. KURTZ:  Would now be a good time to address that?

6           THE COURT:  Why don't you make the embarrassing

7    revelation now?

8           MS. KURTZ:  Okay.  Well, we --

9           THE COURT:  What's the mistake?

10          MS. KURTZ:  Bracewell & Giuliani was retained by the

11   debtor as an ordinary course professional which, the Court may

12   remember, allowed those firms to bill in the ordinary course up

13   to 150,000 dollars a month for a total cap of a million

14   dollars.

15          In the first month that the firm was retained, the

16   bill exceeded that cap by approximately 5,000 dollars, so we

17   followed the instruction and filed a fee application to cover

18   the entire amount because we had exceeded the cap.  And instead

19   of asking for payment of the full one hundred percent of the

20   fees, we only asked for the Court to authorize eighty percent,

21   and I don't think that that is governing guideline for the

22   ordinary course professionals, which Bracewell is.

23          So on Monday we asked if the Court might consider

24   allowing the full amount instead of just the eighty percent.

25   And so the eighty percent, as we note, would have been 155,496,

18

1    which is what we asked for.  On Monday we asked the Court to

2    please consider allowing the debtor to pay the full one hundred

3    percent which is 194,370 dollars.  And while we are also not

4    supposed to be, I don't believe, subject to the fee committee's

5    review, they did in fact review our fee application and, to my

6    knowledge, did not have any comments.

7            So I'd ask the Court, if you could, in approving

8    Bracewell & Giuliani's fee, that you approve the amended

9    application for payment of a hundred percent rather than the

10   original application for simply payment of eighty percent.

11           THE COURT:  Well, I heard everything you said, but

12   I'm a little bit confused.  Are you, at this point, a retained

13   professional that should be governed by the procedures

14   applicable to all retained professionals, or are you an

15   ordinary-course professional that simply tripped up on a cap

16   and as a result had to file an application?  So what are you

17   doing now?  Are you proceeding as a retained --

18           MS. KURTZ:  The latter, Your Honor.

19           THE COURT:  Excuse me?

20           MS. KURTZ:  We're the latter -- not the former, we're

21   the latter.  We are an ordinary-course professional that

22   tripped up on the cap and filed an application.

23           THE COURT:  Well, I think on the basis of the

24   representations that you've made that you should be treated as

25   an ordinary-course professional that also went through the

19

1   drill of having a fee application process that others didn't

2   have to go through.  And maybe next time you'll do less work so

3   you don't trip up on that cap.

4           MS. KURTZ:  We've been doing less work.

5           THE COURT:  Excuse me?

6           MS. KURTZ:  That's it, we've been doing less work.

7   They've all fallen under the cap except this one.

8           THE COURT:  Okay.  I don't have a problem with a

9   hundred percent payment of the amount which is the subject of

10  your fee application with the understanding that you fall

11  within the basket of ordinary-course professionals and will

12  always fall in that basket except by chance that you should

13  exceed the cap another time.

14          MS. KURTZ:  That's correct, Your Honor.  Thank you.

15          THE COURT:  Okay.

16          MR. MILLER:  There is one other ordinary-course

17  professional, Your Honor, who exceeded the cap, Windels Marx

18  Lane & Mittendorf.  And that application is also noticed for

19  today, Your Honor.  And I don't know whether the fee committee

20  looked at that at all.

21          MR. SIMON:  Your Honor, Howard Simon for Windels.

22  That is correct.  Windels has submitted five traditional fee

23  applications under Section 330 because we slightly tipped over

24  the 150,000 dollar monthly amount in each of the five months.

25          THE COURT:  Well, I don't see any reason why your

20

1   firm should be in a different position from Bracewell &

2   Giuliani.  The same rule should apply.  Are you making the

3   request?  If you don't make the request I won't grant you the

4   relief.

5            MR. SIMON:  I am certainly making that request, Your

6   Honor.

7            THE COURT:  All right, then the relief you request is

8   granted and you get a hundred percent.

9            MR. SIMON:  Thank you.

10           MR. MILLER:  Your Honor, we will submit an

11  appropriate order.

12           THE COURT:  Fine.  Thank you.

13           MR. MILLER:  If Your Honor please, could we please

14  now -- it's going slightly out of order, going to number 6 on

15  the agenda, Your Honor, which is the debtors' motion for

16  authority to enter into an amended repurchase agreement with

17  the Aurora Bank FSB and provide a financing facility with

18  Aurora Loan Services, LLC.

19           This matter, Your Honor, was originally on the

20  calendar as a contested matter.  A limited objection was filed,

21  I believe on behalf of Elliot Management, although there's some

22  confusion in the papers.  It says an objection of Elliot

23  Management, but the attorney's represent a different Elliot in

24  this.  But I take it it's all one objection.  There was a reply

25  filed to that limited objection, and last night we received a

21

1    notice of withdrawal of the limited objection from the Dewey &

2    LeBoeuf firm.  So there is no objection to that.

3            This is a similar motion to motions which Your Honor

4    has already in connection with the protection of the equity

5    interest in the Aurora Bank, the Federal Savings Bank, as well

6    as in the Woodlands Bank, which is the other bank in which we

7    have an equity interest.

8            There are no objections.  Your Honor has gone through

9    this, I think, now six times as we have continued to support

10   the capital of these banks very successfully, Your Honor.  The

11   capital is in good standing.  There is a proposed business plan

12   with the OTS, and we are hopeful that the FSB, the thrift bank,

13   will be back in business doing its ordinary course of business

14   shortly.

15           THE COURT:  I appreciate what you said.  I am,

16   frankly, very sensitive to a remark that appeared in the papers

17   filed in opposition to this motion which indicated that the

18   Court should not be a, quote, "rubber stamp" with respect to

19   matters of this sort.  Candidly, I viewed it as a somewhat

20   extreme statement, considering what I consider to have been the

21   rather careful and thoughtful attention paid to each of the

22   prior applications.  And I don't assume that the assertion was

23   made to suggest that I have in the past been a rubber stamp,

24   but rather that I should not in the future simply accept at

25   face value, without further diligence, the assertions made in

22

1    the debtors' papers.

2            I would be interested, as a result, in hearing from

3    the creditors' committee with respect to the committee's

4    independent assessment of this transaction, and also hearing

5    from any other party-in-interest who wishes to be heard in

6    connection with this.  I noted that the objection -- I guess

7    I'll call it a limited objection -- that was filed consisted

8    more of questions than of legal argument, questions going to

9    the reasonableness and soundness of the business judgment of

10   the Lehman estate in continuing to support the capital

11   requirements of Aurora, in particular.

12           And I'm looking for some assurances that is in fact a

13   sound exercise of business judgment.  Based upon my review of

14   the papers I have little doubt this is true, but I think in

15   light of the objection, notwithstanding the fact that it has

16   been withdrawn, that we should treat this with a little more

17   time in terms of understanding why the repurchase agreement is

18   being modified in the manner proposed, the nature of possible

19   future capital requirements, if any, and the overall business

20   judgment associated with this latest round of support for the

21   institution.

22           MR. MILLER:  Let me just add, if I might, Your Honor,

23   before Mr. Dunne takes the lectern.  What the debtors have done

24   in connection with these two banks, Your Honor, is done totally

25   in accordance with full disclosure to the creditors' committee,

23

1   very active involvement by the creditors' committee which has a

2   bank subcommittee which is intimately involved in this.

3           Mr. Doug Lambert, Your Honor, who is with Alvarez &

4   Marsal, and runs the bank book, is here in court.  And his

5   declaration was filed in response to the limited objection.

6   Also in connection with the limited objection, Your Honor, each

7   of the issues or questions that were raised by Elliot were

8   responded to at length in the reply.

9           THE COURT:  I take it that's the principal reason

10  that the objection was withdrawn?

11          MR. MILLER:  I believe so, Your Honor.

12          THE COURT:  Is there any --

13          MR. MILLER:  Now, it could have been resolved, Your

14  Honor, if a representative of Elliot might have called and made

15  an inquiry instead of these voluminous papers.  But I think

16  overall, looking back in hindsight, this was a good thing that

17  these papers were filed.  They tie in with the prior

18  applications which were made.  And as I understand it, Your

19  Honor, this is almost like a revolving credit.  Advances are

20  made, they're paid back, advances are made.  And as of today,

21  there is no really outstanding balance in connection with these

22  two banks.

23          THE COURT:  It's a liquidity facility.

24          MR. MILLER:  Exactly, Your Honor.  And the problem

25  with these two banks, Your Honor, is the fair-value accounting

24

1    method.  Because it was associated with Lehman Brothers broker

2    dealer enterprise and so on, it elected to do mark-to-market

3    accounting.  And because of the state of the financial markets,

4    the assets have to be marked to the market, assuming you could

5    sell these assets.  And a lot of these assets, Your Honor,

6    relate to the real estate market.  And the real estate market,

7    as we all know, is substantially depressed. And it's the mark-

8    to-market that is drawing down the risk based capital ratio.

9    If you took what we think is the real value of these assets,

10    there would not be a capital problem.  And hopefully as the

11    capital markets recover, and everybody talks about the issues,

12    this problem will go away.

13         In addition, there is a request of the OTS to approve

14    a business plan which will allow FSB to go back to its business

15    of issuing certificates of deposit.  That would alleviate the

16    financing because they would be rolling over.  The problem

17    today is in the middle of this month, probably next week, a

18    whole slew of CDs come due that have to be redeemed.

19         THE COURT:  I understand the business justification

20    for it as represented.  I am interested in hearing from the

21    committee.

22         MR. MILLER:  Yes.  And if Your Honor has any

23    questions, Mr. Lambert, he's here for that purpose.

24         THE COURT:  Thank you.

25         MR. DUNNE:  Good morning, Your Honor, Dennis Dunne

25

1    from Milbank, Tweed, Hadley & McCloy LLP on behalf of the

2    official creditors' committee.  At the outset, I echo

3    Mr. Miller's comments.  They were accurate in their description

4    of the committee's involvement.

5          The committee has worked extensively with the

6    debtors, not just on this applications, but with respect to the

7    banks generally, how the banks fit in with the Lehman family

8    generally, and how the value that is within those banks might

9    be preserved through these investments and result in additional

10   distributions to unsecured creditors.  We had also formed, at

11   the official committee level, a bank subcommittee to deal

12   precisely with these issues.  And the three members of that

13   committee spent a lot of time with the committee advisors and

14   the debtor advisors.

15         In short, each of the questions outlined in Elliot's

16   limited objection have been considered, raised by the

17   subcommittee and adequately addressed in dialogue with the

18   debtors as well as the applicable government regulators.  We've

19   advised Elliot of that as well, and I do believe that that

20   contributed to their withdrawal of the motion.

21         We think that, on balance, this is the right thing to

22   do.  There is, of course, no such thing as a sure thing or a

23   risk-less transaction, but we think that, given the amount of

24   value that should be preserved as a result of this, that it is

25   a sound exercise of the debtors' business judgment.

26

1          THE COURT:  Thank you for that comment.

2          Is there anyone else who wishes to be heard on this?

3   And is anyone here on behalf of Elliot, the objector -- the

4   former objector?  Apparently they not only withdrew the

5   objection but decided not to come to court.

6          I'm simply going to ask Mr. Lambert if he has

7   anything that he would like to state in connection with the

8   pending application, the need for the revised repurchase

9   arrangement, and any comments that he may have as to the

10  sufficiency of this facility to deal with Aurora's foreseeable

11  needs.

12         MR. LAMBERT:  Good morning, Your Honor.  Doug

13  Lambert, representing the estate with Alvarez & Marsal.  I

14  think that the documents as well as my declaration do speak for

15  the thoroughness of the process involved here.  I think all

16  parties agree on the sound business judgment that's been set

17  forth in the papers.  Again, this remains a very fluid

18  situation.  However, we believe that we've demonstrated,

19  hopefully by this motion being approved, that the bank will

20  have sufficient liquidity during the pendency of our

21  discussions and negotiations with the regulators to allow

22  deposits to be reaccessed by the institution.

23         THE COURT:  Fine.  I'm satisfied with that

24  representation and with your declaration.  And I believe that

25  ample cause has been demonstrated for approval of the motion

27

1    and I hereby approve it.

2              MR. LAMBERT:  Thank you, Your Honor.

3              MR. MILLER:  Thank you, Your Honor.  We have a

4    revised order which we will submit, Your Honor.

5              THE COURT:  Fine.  Thank you.

6              MR. MILLER:  Just one comment, Your Honor, without

7    being disparaging.  Reading the withdrawal of the objection,

8    there appears to be an implication in that withdrawal document

9    that Mr. Bienenstock believes that he was appointed as the

10   guardian of these estates.  And he attaches a piece of the

11   transcript from the September 15th hearing on the extension of

12   exclusivity just to establish that.  And I don't believe Your

13   Honor did that.  I just wanted the record clear.

14             THE COURT:  Well, that record will speak for itself

15   and I'm not going to embellish it now --

16             MR. MILLER:  Thank you, Your Honor.

17             THE COURT:  -- especially without Mr. Bienenstock

18   being here to comment further on the subject.  So let's just

19   table that for another day.

20             MR. MILLER:  He was certainly invited.  Your Honor,

21   Mr. Fail will take over from here.

22             MR. FAIL:  Good morning, Your Honor.  Garrett Fail,

23   Weil, Gotshal & Manges for the debtors.

24             THE COURT:  Good morning.

25             MR. FAIL:  There are four remaining items on the

28

1   agenda that have been marginally resolved.  The first motion

2   that was marked as uncontested, Your Honor, was the motion of

3   Wells Fargo Bank to compel Lehman Brothers Special Financing,

4   Inc. to assume or reject a reserved fund agreement among LBSF,

5   Wells Fargo and a third party.

6          By way of background, Your Honor, pursuant to this

7   reserve fund agreement, Wells Fargo had purchased certain

8   securities from LBSF.  If Wells Fargo subsequently sold the

9   securities for a price less than a guaranteed price as defined

10  under that agreement, LBSF would be obligated to pay Wells

11  Fargo.  If, alternatively, Wells Fargo sold the securities at

12  an increased price, Wells Fargo was entitled to keep the excess

13  amount.

14         LBSF did not oppose the relief requested in this

15  motion and determined, in fact, to reject the reserve fund

16  agreement.  LBSF and Wells Fargo have agreed upon a form of

17  order that we could submit to reject the agreement and we ask

18  the Court to authorize that rejection.

19         THE COURT:  I'll authorize the rejection.

20         MR. FAIL:  Thank you, Your Honor.

21         The next item on the agenda was a motion to assume

22  open trade confirmations with three Basso funds.  On June 30,

23  2009 the debtors moved to authorize LCPI, Lehman Commercial

24  Paper, Inc., to assume three loan trades with funds that are

25  affiliates of Basso Capital Management, LP.  Basso filed an

29

1   objection to the motion and the debtors responded.  Your Honor

2   may recall this item was on the agenda for the July 15th

3   hearing but was adjourned to allow the parties to try to reach

4   an amicable resolution and in that time they have, Your Honor.

5         The parties entered into a letter agreement dated

6   July 30th, pursuant to which Basso agreed to withdraw its

7   objection and the parties agreed upon a proposed form of order

8   to reflect a settlement.  Prior to the hearing and last week,

9   the debtors provided the attorneys for the creditors' committee

10  with a copy of both the letter agreement and the proposed order

11  for their review.  For your information, Your Honor, this

12  resolution and the proposed order that we intend to submit is

13  very similar to the open trades orders that this Court has

14  entered in December, on December 16th and 23rd, January,

15  February and March of this year in connection with other open

16  trades.

17        THE COURT:  As I recall, Basso was asserting an

18  entitlement to some form of adequate protection, if I recall

19  correctly.  Has that gone away?

20        MR. FAIL:  I believe it has, Your Honor.  I don't

21  think it's an issue any longer.  I believe they're going to be

22  closing the trades and someone representing Basso is here.

23  Perhaps he can answer the question.

24        THE COURT:  I'd just like to understand what the

25  resolution consists of.

30

1        MR. OLSEN:  I'm sorry, Your Honor, the fan was

2   blowing and I didn't hear your question.  Harold Olsen from

3   Stroock.

4        THE COURT:  I just want to know what the agreement is

5   that you've reached.  In papers that I recall seeing a while

6   ago on this matter, Basso, if I recall correctly, was seeking,

7   in effect, adequate protection or additional assurances in

8   connection with the open trade.  Has that gone away as an

9   issue?

10       MR. OLSEN:  That has gone away, Your Honor, subject

11  to the terms of the letter agreement and entry of the order in

12  the form attached thereto we withdraw our objection.

13       THE COURT:  Fine.  Great.

14       MR. OLSEN:  Thank you.

15       THE COURT:  Thank you for that.

16       MR. FAIL:  Thank you, Your Honor.  The next item on

17  the agenda is the debtors' motion to establish procedures to

18  compromise and settle claims in respect of obligations -- in

19  respect of origination or purchase of residential mortgage

20  loans.

21       The claims that the debtors seek authorization to

22  settle or contract in tort claims that the debtors have against

23  originators or sellers of residential mortgage loans based on

24  breaches of representations, warranties and covenants in the

25  mortgage loan purchase agreements, the debtors sought omnibus

31

1    authority to compromise and settle such claims against third

2    parties up to specified thresholds upon notice to the

3    creditors' committee or with authority from the Court.  The

4    creditors' committee and Wells Fargo Bank both filed objections

5    to the motion.  Citibank filed a joinder to Wells Fargo's

6    motion.  And U.S. Bank filed a reservation of rights.  Your

7    Honor, the creditors' committee requested that it receive

8    notice of all compromises and settlements even for those that

9    fall below the threshold for creditors' committee approval.

10         The committee also requested that the debtors file

11   quarterly reports with the names and dates of all settlements

12   that were entered in with that period.  The amount of such

13   claimant's settlement need not be included in the reports.  The

14   debtors have agreed to the changes proposed by the committee.

15         Wells Fargo, Citibank and U.S. Bank act as trustees

16   for various trusts that purchase certain residential mortgage

17   loans from the debtors, Your Honor.  In connection with these

18   acquisitions, the trustees acquired certain rights to pursue

19   repurchase and indemnity claims with respect to the mortgage

20   loans that they purchased.  The trustees requested the addition

21   of language in the proposed order to clarify that the debtors

22   are not seeking to compromise claims that were transferred to

23   third parties.  And the debtors have agreed to add that

24   language to the proposed order as well.

25         The debtors believe that the proposed order resolves

32

1   any objections that may be outstanding and ask for the Court's

2   authority for the relief requested.

3           THE COURT:  Motion granted.

4           MR. FAIL:  Thank you, Your Honor.

5           The last item on the agenda is -- this morning for

6   the debtors and then there's a SIPA matter to be heard this

7   morning as well -- is the debtors' motion for entry of an order

8   pursuant to bankruptcy Rule 2004 compelling discovery.

9           Lehman Brothers Special Financing, Inc. is seeking

10  basic and necessary information from Consolidated Container

11  Company to determine whether the valuation of terminated

12  derivative contracts by Consolidated were proper.

13          The debtors had requested an order compelling

14  Consolidated to produce certain documents as well as

15  designating and producing individual for examination.

16  Consolidated did not object to the relief requested provided

17  that the order that we submit to Your Honor complies with

18  Bankruptcy Rule 2004(c), which will require the debtors to

19  proceed in accordance with Bankruptcy Rule 9016 such that, if

20  necessary, Consolidated can invoke the protections of Rule 45

21  of the Federal Rules of Civil Procedure.

22          The debtors and Consolidated have agreed upon a

23  proposed form of order which authorizes the debtor to issue

24  discovery requests and subpoenas as may be necessary to

25  accomplish discovery that would be authorized by the order,

33

1    Your Honor.  And it would also -- I think it removes the

2    deadline that had been in the proposed order for the production

3    of documents and provides flexibility with the scheduling of

4    the examination of Consolidated's designee.

5         Given this consensual nature of the relief requested,

6    the debtors request that the Court grant the motion and enter

7    the proposed order as amended.

8         THE COURT:  I'll grant the motion but simply ask if

9    there's anyone here from Consolidated Container Company who

10   wishes to be heard?  Apparently not, so the relief is granted

11   without any comment from them.

12        MR. FAIL:  Thank you very much, Your Honor.

13        MR. MILLER:  Your Honor, that concludes the calendar

14   insofar as LBHI and the other debtors are concerned.  There is

15   one uncontested SIPA matter on the calendar.  I don't know

16   if --

17        MR. MARGOLIN:  Good morning, Your Honor.  Jeffrey

18   Margolin, Hughes Hubbard & Reed representing James W. Giddens

19   as trustee for the SIPA liquidation of Lehman Brothers, Inc.

20   We have a very short calendar this morning, Your Honor.  All

21   matters were adjourned except for one uncontested matter.

22        The matter going forward is the trustee's motion for

23   entry of an order pursuant to Section 365 of the bankruptcy

24   code and Federal Rules of Bankruptcy Procedures 6006 and 9014

25   authorizing the trustee to assume and assign an executory

34

1    contract to LBHI and establishing procedures at future

2    assumptions, assignments of Chapter 11 debtors and their

3    nondebtor affiliates.

4              THE COURT:  I have one question about this.

5              MR. MARGOLIN:  Yes.

6              THE COURT:  What contract is this?  I saw it

7    identified on the schedule but it -- I couldn't tell what it

8    was, why it was being assumed and assigned.  I saw it had a

9    zero cure amount and apparently it's going to LBHI.  I don't

10   understand the transaction.

11             MR. MARGOLIN:  The transaction, Your Honor, is a

12   contract with Gallery Systems.  This is a service that provides

13   certain technology for tracking artwork.  It was shared by the

14   Chapter 11 debtors, LBHI and LBI.  To a certain extent, we've

15   determined that we do not need the contract any further to

16   effectuate the SIPA liquidation, but it is necessary for

17   potential art -- for tracking of potential artwork that remains

18   with the Chapter 11 debtors.  And we've decided in the

19   trustee's business judgment to assume and assign it over to the

20   Chapter 11 debtors.

21             THE COURT:  All right.  Now, I understand it.

22             MR. MARGOLIN:  Your Honor, similar relief was

23   approved by the Court back in May to allow the trustee to

24   assume and assign future contracts without further Court Order

25   to the purchaser of Neuberger Berman.  No objections were filed

35

1    to the motion; however, we did receive an inquiry from Barclays

2    Capital, Inc. regarding the form of order.  In response to the

3    inquiry, the proposed order has been revised to reflect that

4    Barclays Capital will receive notice of all future contracts --

5    contracts designated for assumption.  Clean and red-line

6    versions of the revised proposed order were docketed late last

7    week.  Unless the Court has any additional questions, we

8    respectfully request that the Court grant the motion.

9            THE COURT:  Motion is granted.

10           MR. MARGOLIN:  Thank you, Your Honor.

11           THE COURT:  Thank you and we're adjourned till 2

12   o'clock to deal with the adversary proceeding docket and then I

13   believe we have hearings scheduled again on August 11 and

14   August 26th.  We're adjourned.

15       (Proceedings concluded at 10:38 a.m.)

16

17

18

19

20

21

22

23

24

25

36

1

2                                    I N D E X

3

4                                    RULINGS

5                                                          Page      Line

6    Interim fees approved                                 17        16

7

8    LBHI's motion approved for authorization to           27        24

9    enter into an amended repurchase agreement

10   with Aurora Bank FSB and a financing facility

11   with Aurora Loan Services, LLC

12

13   Motion to reject LBHF reserve                         28        19

14   fund agreement granted

15

16   Motion to establish procedures regarding              32        3

17   settlement of residential mortgages approved

18

19   Motion to compel discovery against                    33        8

20   Consolidated Container Company granted

21

22   Trustee's motion to authorize and assign              35        9

23   executory contract to LBHI and

24   related relief granted

25

37

1

2                        C E R T I F I C A T I O N

3

4        I, Sharona Shapiro, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        Sharona Shapiro

9        AAERT Certified Electronic Transcriber (CET**D-492)

10

11       Veritext LLC

12       200 Old Country Road

13       Suite 580

14       Mineola, NY 11501

15

16       Date:  August 6, 2009

17

18

19

20

21

22

23

24

25