Martin Flics (#MF 9718)
Mary K. Warren (#MW 5215)
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
(+1) 212 903 9000 (Tel)
(+1) 212 903 9100 (Fax)

Attorneys for the Joint Administrators of the
Lehman European Group Administration Companies

Hearing Date: August 26, 2009 at 10:00 a.m.
Objection Deadline: August 21, 2009 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re

LEHMAN BROTHERS HOLDING INC., *et al.*,

                Debtors.

Chapter 11

08-13555 (JMP)

(Jointly Administered)

------------------------------------------------------------x

## OBJECTION OF THE JOINT ADMINISTRATORS OF THE LEHMAN EUROPEAN GROUP ADMINISTRATION COMPANIES TO THE DEBTORS' MOTION PURSUANT TO SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY

The Joint Administrators of the Lehman European Group Administration Companies[1] (the "Joint Administrators") hereby object to the Debtors' Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Enforcing the Automatic Stay and

---

[1] The Lehman European Group Administration Companies include Lehman Brothers International (Europe) ("LBIE"), Lehman Brothers Holding plc, Lehman Brothers Limited, LB UK RE Holdings Limited, Storm Funding Limited, Mable Commercial Funding Limited, Lehman Brothers Europe Limited and the other Lehman group companies in insolvency processes in the UK over which partners in PricewaterhouseCoopers LLP are appointed.

Holding Shinsei Bank in Contempt for Violating the Automatic Stay (the "Motion"), and in support thereof state as follows: [2]

## BACKGROUND

1. On September 15, 2008, the English High Court of Justice made four orders (the "Administration Orders") providing for the appointment of the Administrators to take over the management and control of LBIE and certain of its affiliates organized in the UK. To date, the Joint Administrators oversee 19 related debtors.

2. While the Lehman European Group Administration Companies are not parties to the Motion and are not directly affected by it, the Motion raises serious concerns regarding the effective conduct of the Lehman foreign affiliate insolvency proceedings pending throughout the world.

3. The Joint Administrators are charged with conducting the English administration proceedings of many Lehman affiliates, in many of which proceedings LBHI and other Debtors are expected in due course to assert rights as creditors (and, in fact, LBHI serves on the LBIE Creditors Committee). In addition, in the course of their duties the Joint Administrators have or will be asserting rights as a creditor in the estates of other Lehman entities in numerous countries where it is reasonable to expect LBHI and other Debtors also to assert rights as a creditor. LBHI has also sought authorization to act as the Foreign Representative of its estate in the UK in order to seek recognition of its Chapter 11 cases before the High Court of Justice in London. Accordingly, the Joint Administrators believe it is necessary and appropriate to address briefly the potential implications of the relief requested in the Motion.

---

[2] Capitalized terms used but not defined herein shall have the meaning given to such terms in the Motion.

4. In short, the Motion seeks drastic and likely unprecedented relief. The determination of the nature and extent of the property interest held by LBHI (whether by defense, limitation, subordination, offset or other lawful means) in accordance with the procedures and laws of a foreign insolvency proceeding where LBHI has voluntarily submitted itself by filing claims or otherwise actively participating, does not violate the automatic stay. LBHI does not have the right to play "offense" by filing claims and participating in foreign proceedings, but avoid the need to play "defense' when the nature of and extent of its rights is lawfully in issue.

5. A ruling granting the Motion would raise grave uncertainties about the ability of parties in foreign insolvency proceedings to exercise a range of rights. It is contrary to the often expressed desire by LBHI and others (including the Joint Administrators) to coordinate and respect the integrity of foreign proceedings. It invites the Court to allow LBHI to participate in foreign proceedings on a different set of rules and to exercise control over the actions and determinations under foreign insolvency procedures of LBHI's rights.

6. The Joint Administrators' concerns about the Motion have been compounded by a discussion their counsel had with Debtors' counsel in an attempt to avoid the need to file this Objection. Despite the far reaching concerns created by the Motion, the Debtors refused a request to provide comfort with respect to even the most extreme possibilities. In discussions on August 17, 2009, Debtors' counsel affirmatively suggested that any resolution of the Motion may become the "law of the case." This representation only amplifies the concerns presented by the Motion and emphasizes the need for its rejection.

## ARGUMENTS

**A.    If the Motion is granted, the relief requested would create uncertainty as to the ability of *any* LBHI creditor to assert its interests in a foreign proceeding where LBHI also has a claim.**

7.  The Motion seeks to interfere with the internal proceedings of a sovereign foreign insolvency proceeding, preventing a creditor (in this case, Shinsei Bank) from proposing a competing rehabilitation plan as permitted under Japanese law.  In effect, the Motion proposes that its creditors worldwide should be stripped of their legal rights under applicable foreign law when the assertion of these rights would challenge the Debtors' claimed distribution in foreign insolvency proceedings to which the Debtors have submitted themselves to jurisdiction.  Taken to its logical conclusion, the Debtors' position brings into question a creditor's ability to file a proof of claim or take other normal actions as part of an insolvency proceeding in any estate where a Debtor has, or indeed may, assert or file a claim or otherwise seek to obtain a distribution.  As the Debtors concede, even with a massive team of lawyers and accountants, "the disentanglement of the financial relationships amongst nearly 80 separate legal entities that are financially intertwined by a complex web of intercompany financial balances" is "most challenging."  (Motion at 6.)  If this Court were to agree that creditors are subject to the Debtors' proposed worldwide "noncompete" regime, that decision could effectively shut down all foreign proceedings until LBHI has realized its claims and wound down its estate.

**B.     The automatic stay does not prohibit a party from taking defensive actions and otherwise preserving their rights.**

8.  The automatic stay does not prevent entities from "protecting their legal rights" when a debtor initiates proceedings.  In re Fin. News Network Inc., 158 B.R. 570, 573 (S.D.N.Y. 1993).  Courts have continually distinguished between the "offensive" and "defensive" actions of a party when determining the propriety of applying the automatic stay.  A party objecting to a debtor's proof of claim is acting in a defensive manner to protect its own legal interests and estate, and therefore does not violate the automatic stay.  Id.; Martin-Trigona v. Champion Federal Savings and Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989); In re Berry Estates, Inc., 812

F.2d 67, 71 (2d Cir. N.Y. 1987). To deny a creditor, such as Shinsei Bank, the ability to protect its legal rights by submitting an alternative plan of rehabilitation would allow the Debtors to utilize the stay far beyond its scope, impermissibly as both a sword and a shield. See Bernstein v. IDT Corp., 76 B.R. 275, 281 (S.D.N.Y. 1987).

9. Although the term "property of the estate," as defined by 11 U.S.C. § 541, is unquestionably broad, it is not without limits. The Debtors suggest: "Because LBHI's claims against Sunrise and against LB Asia are property of the estate, [citations omitted] any attempt to interfere with or limit LBHI's *recovery on its claims* is necessarily a violation of the automatic stay." (Motion at 10-11) (emphasis added). These statements conflate two distinct concepts: the Debtors' right to its legal claims, and the Debtors' right to recovery based upon its legal claims. While the Debtors' legal claims may constitute property of the estate, their entitlement to recovery on those claims is afforded no similar protections. "Despite its broad definition of those interests of the debtor that become property of the estate . . . neither § 541(a), nor any other Bankruptcy Code provision, answers the threshold questions of whether a debtor has an interest in a particular item of property and, if so, what the nature of that interest is." Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.), 853 F.2d 1149, 1153 (4th Cir. 1988); see also, Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93 (2d Cir. 1989) ("The existence and nature of a debtor's interest, and correspondingly the estate's interest, in property is determined by state law.") Whether or not the Debtors are legally entitled to the distribution contemplated under the Sunrise Plan, or instead entitled to the distribution contemplated under the Shinsei Plan, is the threshold question that Shinsei Bank's competing rehabilitation plan submits to the Tokyo District Court. The Debtors' determination

5

that "property of the estate" includes a legal claim does not compel the Tokyo District Court, or any other court, to find in favor of the Debtor with respect to that same legal claim.[3]

10. Additionally, LBHI cannot use the automatic stay to avoid the local law governing foreign insolvency proceedings. This policy is evident in 28 U.S.C. § 959(a) and (b), which require a debtor to conform with applicable local law in conducting its business, and gives parties aggrieved by a debtor's actions in violation of such laws the right to enforce that law in any other court, free from the impact of the automatic stay.[4] The Supreme Court has explicitly addressed the concern that a party may use bankruptcy as an excuse to avoid complying with laws outside of the Bankruptcy Code. See Midlantic National Bank v. New Jersey Dept. of Environmental Protection, 106 S. Ct. 755, 760 (1986) (where trustee could not ignore environmental laws in order to more fully repay its debts), NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984) (where debtor could not avoid provisions of the National Labor Relations Act by filing a petition for bankruptcy). Here, it appears that the Japanese local law applicable to Sunrise's insolvency proceeding, provides a right to a holder of a filed rehabilitation claim to submit a rehabilitation plan.[5] The Debtors are attempting to use the stay as both a vehicle and an excuse for avoiding the terms of this statute. The Court should reject this attempt.[6]

---

[3] To be clear, the Joint Administrators take no position regarding the relative merits of the plans submitted in the Japanese proceedings.

[4] 28 U.S.C. § 959(b) provides that except as provided in section 1166 of title 1, a trustee, receiver or manager appointed in any case pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager *according to the requirements of the valid laws of the State in which such property is situated*, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. (Emphasis added.)

[5] See Article 163, ¶ 2 of the Civil Rehabilitation Act.

[6] The Debtors prominently cite to Underwood v. Hilliard (In re Rimsat, Ltd.), 98 F.3d 956 (7th Cir. 1996) and Lykes Bros. S.S. Co. v. Hanseatic Marine Serv. GmBH (In re Lykes Bros. S.S. Co.), 207 B.R. 282 (Bankr. M.D. Fla. 1997) to support their argument for enforcement of the automatic stay in the Tokyo District Court. But neither one of these decisions, nor any either case cited by the Debtors, purports to interfere in a foreign *insolvency* proceeding. For that matter, In re Lukes Bros. S.S. Co. concerns a creditor that clandestinely assigned its claim to an entity it had yet to create, which upon creation seized property of the debtor in Belgium, a location where no insolvency proceeding existed; this is hardly comparable to

**C.      LBHI falsely equates protecting its own interests with the "interests of worldwide creditors".**

11. The Debtors allege that they are seeking to work for the benefit of all "to try to effect a fair distribution to worldwide creditors." (Motion at 17.) But a "fair distribution" is fair only if achieved through the operation of fairly and evenly applied legal rules and procedures. The Debtors caution that "if one creditor is able to clear a path in circumvention" of the Court, "[o]ther creditors will almost certainly try to follow suit." (Motion at 13.) But the real concern is that if this intrusion into a foreign proceeding is looked favorably upon by this Court, the Debtors will attempt to duplicate the result in other foreign proceedings, for the specific benefit of the Debtors at the expense of the valid rights of others. That is not a "fair distribution".

12. While the Debtors are correct to point out that the Debtors and Foreign Debtors once acted as a global organization, the fact remains that all Debtors and Foreign Debtors were created as separate legal entities, existed as separate legal entities, and remain distinct legal entities subject to all applicable laws, including applicable insolvency laws. The potential inconvenience to LBHI caused by the numerous insolvency proceedings this operating structure created does not provide legal justification for subscribing to an aggressive, overly-broad application of the automatic stay.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Joint Administrators respectfully request that the Court deny the Debtors' Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt for Violating the Automatic Stay. In the event the Court determines to grant the

---

Shinsei Bank exercising its legal rights under Japanese insolvency law in a Japanese insolvency proceeding in which LBHI has asserted claims.

7

Motion in whole or in part, the Joint Administrators respectfully request that the Court expressly limit such decision to Shinsei Bank and to the particular Shinsei Distribution Plan filed in the Japanese proceeding before the Tokyo District Court as referenced in the Motion without any express or implied application to any other circumstances.

Dated: August 21, 2009
     New York, New York

Respectfully submitted,

/s/ Martin Flics
Martin Flics (# MF 9718)
Mary K. Warren (#MW 5215)
Linklaters, LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000 – Telephone
(212) 903-9100 – Fascimile
Martin.Flics@linklaters.com

Attorneys for the Joint Administrators of the Lehman European Group Administration Companies