**Morningside | Translations**

450 7th Ave | 6th Floor | New York, NY 10123 | Tel 212.643.8800 | Fax 212.643.0005 | www.mside.com

County of New York
State of New York

August 21, 2009

To whom it may concern:

This is to certify that the attached translation from Japanese into English is an accurate representation of the documents received by this office. These documents are designated as:

Title of Document in English:

*Petition Concerning Adjournment to Extend Deadline for Submission of Civil Restructuring Plan*

Marcus Plieninger, Project Manager in this company, certifies that Evan Geisinger, who translated these documents, is fluent in Japanese and standard North American English and qualified to translate. He attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of Marcus Plieninger

Sworn to before me this
August 21, 2009

Notary Public

TSOMYK SNIZHANA
Notary Public State of New York
No. 01TS6202101
Qualified in Kings County
Commission Expires 03/09/20 13



Innovative Language Solutions Worldwide

| | |
|---|---|
| Tokyo District Court 2008 Item ("Re-") 207: Petition for Initiation of Rehabilitation Proceedings - Application<br>Rehabilitation Debtor: Lehman Brothers Commercial Mortgage[[s]], Inc.<br>Tokyo District Court 2008 Item ("Re-") 208: Petition for Initiation of Rehabilitation Proceedings – Application<br>Rehabilitation Debtor: Sunrise Finance, Inc. | Tokyo District Court<br>Civil Dept. 20<br>"Filed" stamp<br> 12 Dec. 2008<br><br>Other (individual reviewer?) stamps illegible |

To:                                                                                            12 Dec. 2008
Tokyo District Court    Civil Dept. 20, Conference Clerk
Inspecting Commissioner  [[[Makoto Tahira]]]

**Petition Concerning Adjournment to Extend Deadline for Submission of Civil Restructuring Plan**

| | | | |
|---|---|---|---|
| Lehman Brothers Asia Holdings Limited | Represented by and by | [[[Jun-ichi Tobimatsu]]]<br>[[[Manabe Kana]]] | [[Signature Stamp]] |
| | | | [[Signature Stamp]] |
| Lehman Brothers Holdings Inc. | Represented by and by | [[[Shige-aki Momou]]]<br>[[[Jun-ya Naitou]]] | [[Signature Stamp]] |

## 1. Situation of the Petitioners

Lehman Brothers Asia Holdings, Ltd. ("LBAH" below), a Hong Kong corporation, and United States Delaware corporation Lehman Brothers Holdings, Inc. ("LBHI" below; both parties together to be referred to as the "Petition Creditors") are directly and indirectly the largest creditors of Lehman Brothers Commercial Mortgage[s], Inc. ("LBCM" below) and of Sunrise Financial, Inc. ("SF" below; both parties together to be referred to as the "Petition Debtors"), the Civil Rehabilitation Debtors in a Civil Rehabilitation matter now pending before you (the 2008 matters docket-numbered ("Re-") 207 and 208). Further, LBHI indirectly holds 100% of the stock in the Petition Debtors. We have included a diagram of the corporations' relationship for your reference.

Not only LBHI but also LBAH is currently proceeding with legal bankruptcy filings, under the supervision of the courts of jurisdiction in the United States and Hong Kong, respectively. LBHI has a large number of creditors, in Japan, and elsewhere globally, with a debt totaling over 60 trillion yen. As a result, the amounts that LBHI and LBAH are able to distribute to their own creditors will exert a major influence on the amounts of the settlement(s) that LBHI and LBAH may receive from

[[lit. "based on"]] LBCM's and SF's assets. Given this, it goes without saying that the Petition Creditors have a fiduciary duty to the various stakeholders. The Petition Creditors are not merely [["merely" added]] general creditors, but are are creditors subject to a "public duty": the Petition Creditors have a duty to the public to maximize collection of the debt they hold with respect to the Petition Debtors.

**2. Disposition of Petition Debtors' Assets** [[carriage returns added for ease of reading; new paragraph in original shown by empty/skipped line]]

      Learning that Petition Debtors planned to dispose of almost all of the assets ("Petition Assets" below) that they held by selling same at competitive bid, Petition Creditors immediately made demand of Petition Debtors that they delay this. Our reasons were:
 (1) Prudently analyzing the Petition Assets and processing them after classifying them as either
assets for which the highest value will be realized if they are disposed of by selling them immediately ("Commence Bidding" assets), or
assets for which *not* selling them immediately may/will [[ambiguous in original]] result in asset valuations rising ("Delay Bidding" assets),
is more likely to permit the maximization of the value of Petition Assets as a whole; and
(2) The "economy" reason: there is a need to prevent the drop in asset values that might result from this unprecedentedly large amount of assets being put on the market all at once.
Consequently, it seems that Petition Creditors have obtained an understanding of our concerns, both by Petition Debtors and by the Inspection Commissioner(s). At the same time, we understand the concern of the Inspection Commissioner(s) and Petition Debtors that in order for Petition Creditors,  Inspection Commissioner(s), and Petition Debtors to sell Petition Assets at competitive bid – irrespective of whether that sale be of some of them or of all –  the preparations for said bidding will have to be completed by 31 March 2009, the termination date of the employees in charge of the management of these assets. Keeping the concerns of both groups foremost in mind, the Inspection Commissioner(s), Petition Debtors, and Petition Creditors persisted in discussing what an administratively practicable way of proceeding might be, well into the nights of 4 and 5  December 2008.

As a result of these serious discussions by both groups, and giving maximum consideration to the time-constraint concern of the Petition Creditors,  Inspection Commissioner(s), and Petition Debtors, we have made a difficult decision: we have agreed that we will begin the procedures for a preliminary/preparatory\* sale-at-bid on 15 December 2008,

and that in the 10 day period beginning on the date these preliminary/preparatory* bid-sale procedures end – 20 January 2009 (Tues.) – Petition Creditors and Petition Debtors will together deliberate and select which assets shall be deemed "Commence Bidding" assets and which shall be "Delay Bidding" assets, [[* Japanese is ambiguous-- also admits interpretation " preliminary/preparatory *procedures* for sale-at-bid"]]

and with respect to the "Commence Bidding" assets only, will initiate procedures for final/definitive* sale-at-bid. [[Technically also admits interpretation "final/definitive *procedures* for sale-at-bid"]] In the course of the described discussions and agreements, the Inspection Commissioner(s), Petition Debtors, and Petition Creditors have arrived at mutual understandings on the following points:

(**1**) Petition Debtors will

[1] provide Petition Creditors with information and materials for the analysis of Petition Assets, to the extent administratively practicable, and will initiate discussions for that purpose at once (including asset classification for preliminary/preparatory* bid-sale procedures, establishment/calculation of liquidation values by certified public accountancy, and team discussions with above-mentioned[sic] employees); and

[2] provide Petition Creditors with the results of the preliminary/preparatory* sale-at-bid procedures, and with the opinion(s) of the Financial Advisor(s), without delay, when these are completed.

(**2**) Petition Debtors will inform respondents to their preliminary/preparatory* sale-at-bid procedures, in advance, of the fact that certain of the Petition Assets may be excluded from the final/definitive* sale-at-bid proceedings for any reason or none.

[End of page 2 of original]

**(3)** Petition Creditors will

[1] upon receipt of previously mentioned results of the preliminary/preparatory* sale-at-bid procedures and opinion(s), deliver to Petition Debtors, without delay, the list of "Delay Bidding" assets and the reason(s) for the delay(s) RE same, and

[2] Propose a management system and concrete management and disposition procedures for the "Delay Bidding" assets, including human resources staffing for after 1 April 2009.

**(4)** Petition Debtors and Petition Creditors will, during the 10 day period beginning [[immediately]] after preliminary/preparatory* sale-at-bid procedures end, discuss and together finalize the contents of the list of "Delay Bidding" assets that has been submitted by Petition Creditors in accordance with the item above. Petition Debtors shall in this process pay utmost respect to the preferences of Petition Creditors.

**(5)** Petition Debtors will commence procedures for the final/definitive* sale-at-bid of the "Commence Bidding" assets during the first 10 days of February 2009, and shall terminate the final/definitive* sale-at-bid procedures [[though somewhat ambiguous, this probably means completion the sale itself]] and execute final contracts by the last day of March of the same year.

**(6)** Petition Debtors and Petition Creditors are to exercise ample collaborativity in their discussions concerning the preparation of the Civil Rehabilitation Plan, and Petition Debtors shall pay utmost respect to the preferences of Petition Creditors, within the bounds of applicable law.

With these particulars, we hereby proffer our request for an adjournment postponing the deadline for the submission of the Civil Rehabilitation Plan for as long a period as may be realistically possible (for example, until the end of April 2009).

---

Attachments

1. Corporate Relationships Diagram



[Please see following page for call-outs]

Call-outs for boxed letters on Adjournment Petition corporate-relationships diagram

[[These are all pretty telegraphic. I'm going to assume that [Recognize/admitted] is actually "authorized" voting shares in all of these, from context]]

---

A:

Value of [authorized] voting shares: approx. 178,600,000,000 yen
(Approx. 52% of value of all authorized voting shares)

B:

Value of [authorized] voting shares: approx. 22,300,000,000 yen
(Approx. 27% of value of all [authorized] voting shares)

C:

Value of [authorized] voting shares: approx. 229,400,000,000 yen
(Approx. 73% of value of all [authorized] voting shares)

D:

Value of [authorized] voting shares: approx. 295,700,000,000 yen
(Approx. 98% of value of all [authorized] voting shares)

E:

Value of [authorized] voting shares: approx. 20,000,000 yen