**Morningside | Translations**

450 7th Ave | 6th Floor | New York, NY 10123 | Tel 212.643.8800 | Fax 212.643.0005 | www.mside.com

County of New York
State of New York

August 21, 2009

To whom it may concern:

This is to certify that the attached translation from Japanese into English is an accurate representation of the documents received by this office. These documents are designated as:

Title of Document in English:

("Re-") Application for Initiation of Civil Rehabilitation Proceedings

Marcus Plieninger, Project Manager in this company, certifies that Evan Geisinger, who translated these documents, is fluent in Japanese and standard North American English and qualified to translate. He attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_Marcus Plieninger_
Signature of Marcus Plieninger

Sworn to before me this
August 21, 2009

_Notary Public_

TSOMYK SNIZHANA
Notary Public State of New York
No. 01TS6202101
Qualified In Kings County
Commission Expires 03/09/20 13



Innovative Language Solutions Worldwide

[[note: I've used "<u>to the extent</u> administratively practicable" as the translation of a term that could, if stretched, technically be construed to mean "*if*, as, and to the extent that they are administratively practicable"]]

[11:10PM]] Tokyo District Court    2008 No. 208 ("Re-") Application for Initiation of Civil Rehabilitation Proceedings

Rehabilitation Creditor:    Sunrise Finance, Inc.

7 May 2009

Inspecting Commissioner  [[[Makoto  Tahira]]], Esq.

# Application

### Lehman Brothers Asia Holdings Limited

|  |  |  |
|---|---|---|
| Represented by | [[[Jun-ichi Tobimatsu]]] | [[Signature Stamp]] |
| and by | [[[Manabe Kana]]] | [[Signature Stamp]] |

With respect to the 2008 item docket-numbered 208 ("Re-") Application for Initiation of Civil Rehabilitation Proceedings, submitted by Rehabilitation Creditor Saisei Bank, Ltd. (KK) (below "Saisei Bank"), in form of a Civil Rehabilitation Plan dated 15 May 2009 and Revised Civil Rehabilitation Plan of the Application to Revise Civil Rehabilitation Plan dated 19 May 2009 (referred to below together  under the general term "Shinsei Rehabilitation Plan"), Rehabilitation Creditors Lehman Brothers Asia Holdings Limited ("LBAH" below) and Lehman Brothers Holdings, Inc. ("LBHI" below), declare as follows:

1

Shinsei Bank claims that the Civil Rehabilitation Debtors were "in the state of having extremely little remaining capital," that Lehman Brothers Group had come to engage in "improper financial exploitation* and business operations"  [[*term includes various acts of of financial "squeezing" exploitation, including e.g. requiring kickbacks]], and that Lehman Bothers Group simply received revenues, with a scheme having been adopted wherein Shinsei Bank and the other non-Lehman-Brothers-Group creditors bearing the bankruptcy and insolvency risk. Based on these claims,  Shinsei Bank has submitted a Civil Rehabilitation Plan the contents of which amount to a subordination of LBAH's and LBAI's rehabilitation-creditor claims.

However, in the  submitted Shinsei Rehabilitation Plan and associated exhibits and attachments appended thereto, we find numerous errors of fact and incorrect legal interpretations. As a result, the Shinsei Bank claim requiring LBAH and LBAI Rehabilitation Creditor claims to be subordinated is entirely lacking in legal support.

The LBAH and LBH1 standpoint is that this Rehabilitation Plan, based on these errors of fact and legal interpretation is in clear violation of Civil Rehabilitation Code §155.1, inasmuch as the modifications to the rights of the Civil Rehabilitation Debtors are unfair. Further, the uncalled for delays in the Civil Rehabilitation Proceedings run counter to the interests of the Civil Rehabilitation Creditors in general (*including* LBAH and LBHI), and we are of the opinion, with respect to said Rehabilitation Plan, that the Court should perhaps consider entering an order referring decisions to a Meeting of Creditors (Civil Rehabilitation Code §§169.1.3 and 174.2.1). Still, if by some chance the Civil Rehabilitation Plan *were* referred for decision,

there still would be no likelihood of approval of this Proposal, because we (LBAH) – debtor liable for over half of the total Civil Rehabilitation Debt – do not accept it.

LBAH has already made an outline of our objections in our Statement dated 7 May 2009, submitted and addressed to the Inspection Commissioner (see Annex: Reference Materials) – at the stage when Saisei Bank hinted at petitioning for an Administrative Control Order with respect to a portion of the claims we made above. Nonetheless, LBAH and LBHI intend to take the recent submission of the Civil Rehabilitation Plan as an opportunity to submit to the Court and our Inspection Commissioner an additional report, after receiving disclosure of the necessary information from the Civil Rehabilitation Debtors, in order to render the factual material and legal-interpretation errors on which the Plan depends clearer, in a more detailed and specific manner.

While we plan to discuss this at length in our additional report, we would like to mention here that the current matter is a special situation with respect to the following points as well:

(1) Saisei Bank has received LBHI's "guarantee" with respect to the debt for which the Civil Rehabilitation Debtors are liable
(2) Saisei Bank is a bank, conducting the business of banking under the supervision of the Financial Services Agency, and is a professional in the field transacting finance; it is probable that in providing financing to the Civil Rehabilitation Debtors, they would do so only after ample analysis of the risks.
(3) Far from the situation being limited to LBH1 or LBAH, most Lehman Brothers Group companies in countries throughout the world are undergoing their own legal bankruptcy proceedings in courts serving their respective jurisdictions, and this is thus an circumstance in which all creditors worldwide ought to be treated evenhandedly.

With a prayer for the Court to consider the circumstances described, and further to consider the the separate report which LBAH and LBHI plan to submit in the near future, we respectfully submit this statement in anticipation of your fair and impartial judgement.

(Annex: Reference Materials)

Report of 7 May 2009 (LBAH)

2008  Matter ("Re-")  No. 208        Petition for Initiation of Civil Rehabilitation Procedings – Application Made

Civil Rehabilitation Debtor: Sunrise Finance, Inc.

7 May 2009

Inspection Commissioner [[[Tahira Makoto]]], Esq.

# Report

Lehman Brothers Asia Holdings, Ltd.

Represented by [[[Junichi  Tobimatsu]]]     [[signature stamp]]

and     [[[Manabe Kana]]]     [[signature stamp]]

Civil Rehabilitation Creditor Lehman Brothers Asia Holdings Limited ("LBAH") reports as follows with respect to the report submitted by Civil Rehabilitation Creditor Shinsei Bank, Inc. ("Shinsei Bank") dated 24 April 2009 (the "Shinsei Report"),  concerning 2008 matter of docket number ("Re-") 208 – Application made RE Petition for Civil Rehabilitation (the instant "Rehabilitation Proceedings"):

**1. Introduction**

To put things plainly, the Shinsei Bank claim that the instant Civil Rehabilitation Proceedings are "an abuse of the Civil Restructuring Act" is based on errors in factual matter and on a theory of legal interpretation unique to that party, and has no legitimate basis on which to stand. Further, Shinsei has been making hints concerning issuance of an Administrative Management Order for which not only is there absolutely no need, but which also would lead to delay in the asset disposition process through which we have proceeded so far, and which would necessarily result in things falling apart disastrously. This result is clearly contrary to the interests of all of the creditors.

For these reasons, LBAH, the Civil Rehabilitation Creditor with the largest claim, is completely opposed to the issuance of an Administrative Management Order – of the sort that would have results injurious to the interests of all Creditors, and desires that speedy continued progress be made on the instant Civil Rehabilitation Proceedings by the Civil Rehabilitation Debtors, under the guidance of the Investigating Commissioner.

We can expect concrete and convincing rebuttals by the various Civil Rehabilitation Debtors themselves concerning the lack of any reason for Saisei Bank's claims, but in consideration of our own standing as the greatest Civil Rehabilitation Debtor, we will take the opportunity to elaborate a bit further, below.

**2. There is no Impropriety in the Civil Rehabilitation Debtors' Capital Structure that Should Invite Complaint**

Taking up the point that the proportion of *total* capital that the paid-in capital of the Civil Rehabilitation Debtors represents is a low one, Shinsei Bank claims that "Among the Civil Rehabilitation Debtors, the lion's share of the proceeds will be absorbed by the Lehman Brothers Group, while with respect to the risk of [[financial]] failure, a business scheme has been adopted in which blame will improperly be imputed to the other financing Creditors." (Shinsei Report, Page 2)

However: for corporations, the setting of ratios of paid-in capital to loan amounts is simply a matter of said corporations' capital strategies; there is no reason immediately to condemn something as a "warped structure" simply because the scale of the paid-in capital is low in proportion

7

to the total capital.

Of course, the standard consideration is that if the amount of paid-in capital is low, the amount of assets to serve as security for any creditors will be correspondingly low, with the presumed result that it will be difficult to garner the trust of financial institutions or of those with whom the company transacts business— which represents a disadvantage on a practical level. In Shinsei Bank's case, however, since it seems that it was *while* that bank possessed an ample understanding of the present sort of capital structure among the Civil Rehabilitation Debtors that they, as a city bank and according to their own credit-worthiness [[or "credit-limit"]] decisions, executed their loan[s] (while the form in which the Shinsei Bank loan to the Civil Rehabilitation Debtors was executed is not the business of LBAH, it seems certain that, as a city bank, it was executed based on some sort of creditworthiness decision). Consequently, it would seem to be completely misguided, at the point where a borrower eventually finds itself at the point of bankruptcy, to make claims e.g. that the capital structure was "warped." In a case where Saisei Bank thought that the paid-in capital of a given corporation was insufficient given the scale of the business, it would suffice for them not to execute a loan to that company (or to require some security, or to take other appropriate measures for the preservation of their claims for repayment). It is erroneous to make post-hoc interpretations, after a corporation had *ended up* in legal bankruptcy proceedings, of there having been problems – e.g. in which Debtor capital structures are somehow seen as "warped" or "improper." In addition, in the instant Civil Rehabilitation Proceedings, it would be impossible to know what level of capitalization of the Civil Rehabilitation Debtors would *not* have been "warped" or "improper."

Further, LBAH, in its character as the greatest creditor of the Civil Rehabilitation Debtors, has become subject through the instant Civil Rehabilitation Proceedings to restrictions on its rights, as per the Civil Rehabilitation Act. Any opinion that there is a "shifting of blame" RE the risk of [[financial]] failure, be it to Shinsei Bank or to any of the other financing creditors, is objectively contrary to fact. If, hypothetically, there had been a history in which Lehman Brothers Group was receiving Civil Rehabilitation-Debtor business revenues (Note: LBAH does not hold stock in the Civil Rehabilitation Debtors), then as long as that had been in conformance with the Corporations Code, those revenues would be returns corresponding to stockholder-risk (i.e. "if the Civil Rehabilitation Debtors' business fails, the assets you invested may end up 'zero'"), and no reason for any sort of complaint.

**3. Instant Civil Rehabilitation Proceedings Should be Viewed as One Part of the International Bankruptcy Proceedings of the Lehman Brothers Group**

A claim has somehow been brought as to whether of not a large part of the Civil Rehabilitation Debtors' proceeds would be improperly usurped by Lehman Brothers Group overseas, with the financing creditors in Japan as sacrifice. The fundamental failure of this sort of Saisei claim lies in the [[corrected]] viewpoint that the instant Civil Rehabilitation Proceedings are one part of Lehman Brothers Group's international bankruptcy proceedings. The "Lehman Bothers Group" in Saisei's claims is undergoing individual insolvency proceedings under the various countries' legal systems for the disposition of bankruptcies. LBAH itself has entered into legal insolvency/wrap-up proceedings under the First Superior Court of the Hong Kong Special Administrative District, and a number of KPMG liquidation adjusters have been selected by our creditors and by the court, and claims are now being established and assets disposed of for the benefit of all creditors. For Lehman Brothers Holdings, Inc. ("LBHI" below), as well – the US corporation that Saisei Bank has characterized as the "apex/summit of the Lehman Brothers Group" – a petition has been submitted in NY State for the application of what is known as "Chapter 11": [[there are, as well, ]] insolvency/wrap-up proceedings for the interests of all Creditors now underway. The financing institutions in the various [[other]] countries (of course) and those in Japan also have huge claims on these international Lehman Brother Group companies, and the most important task currently faced is to make appropriate and equitable adjustments in the interests of *all* creditors of these multiple worldwide Lehman Brothers Group Companies. In this meaning, the "Lehman Brothers Group" repeatedly adduced by Shinsei Bank has already been dissolved, and the management of asset disposition and other issues is proceeding apace under the supervision of the individual courts [[having jurisdiction]]. With respect to the current Civil Rehabilitation management team as well, LBAH, which has already entered under the control of court-selected liquidation adjusters, is benefiting from no special or improper incentives whatsoever.

In this way, what Shinsei Bank is referring to as "Lehman Brothers Group" has changed in character in a major way as a result of the group's [[financial]] failure, irrespective of whether one is considering things viz. before or after the September 2008 Lehman Brothers [[financial]] failure, and Shinsei's persistence in proceeding with its arguments while ignoring this point is entirely at odds with the current state of affairs. In the even that the Japan Civil Rehabilitation Proceedings should be prevented or delayed based on Shinsei claims [[inviting]] confusion and the confounding of creditor rights with shareholder rights, it is clear that the trust that overseas courts and institutions hold in Japan's systems of bankruptcy law and corporation law would be greatly damaged, and such a situation is to be avoided.

## 4. Proceedings are for a Liquidation/Wrap-up type Bankruptcy, so there will be No Need to Select a Receiver

Shinsei Bank states that in liquidation-type bankruptcy proceedings, "essentially, it is not appropriate [[or, technically, "improper"]] to entrust the processing of assets to the debtor itself" and has said that therefore, in the instant Civil Rehabilitation Proceedings as well, the management and disposition of Civil Rehabilitation-Debtor assets ought to be effected under the control of a receiver/administrator (Shinsei Report, Pg. 3).

Since these are liquidation/wrap-up type bankruptcy proceedings, it is not the case that a receiver needs to be selected. In actuality, in Special Liquidations (which are liquidation/wrap-up type bankruptcy proceedings), management and disposition are to be effected by a receiver appointed at a general meeting of the stockholders, and it is clear that the decision as to whether or not a receiver should be selected should be made on a case-by-case basis in accordance with the situations concerning individual items [[or matters]]. Even in liquidation/wrap-up type Civil Rehabilitation Proceedings Administrator-management orders are not issued due to the proceedings being of this type, and there is no need further to point out here that standard working practice for liquidation/wrap-up type Civil Rehabilitation Proceedings has become to execute them as-is, in so-called "DIP form."

Also, according to explanations received from Civil Rehabilitation Debtors by LBAH, for the purpose of preventing the deterioration of Civil Rehabilitation-Debtor assets, the cooperation of those employees and executives [[contract-execution privileges not implied: alternately "senior managers"]] within the Civil Rehabilitation Debtor who were

10

originally involved in the management of said assets is indispensable. We understand that we are currently at a very important juncture, with a bidding process for the sale of Civil Rehabilitation-Debtor assets having been instituted, and where individual contracts for asset disposition are being executed with the individual highest-bidders. If an administrative management order were to be issued at the current stage, and a situation were to result in which current management staff and current petitioner-agents [["petitioner representatives"?]] were unable to participate in the management or disposition of Civil-Rehabilitation-Debtor assets, unpredictable adverse effects would be inflicted on the values of assets for which winning bidders have already been established. There would also be cause for concern regarding the execution of the contracts with said highest bidders, and a worry that the situation might prove a hinderance to "closing". If this came to pass, extremely serious disadvantages would arise for the Creditors.

Thus, the Shinsei Bank claim that the fact of the instant proceedings being in form of a liquidation/wrap-up type bankruptcy makes it appropriate to select a receiver does not merely stand on weak ground, but also bears with it the possibility that the above-described major risk might manifest, and therefor, as the greatest creditor of the Civil Rehabilitation Debtors, there is no way that we would be able to accept it.

**5. To the Knowledge of LBAH, There Have Been No Points of Unfair Practice in the Procedures for Sale-at-Bid**

Shinsei Bank has lodged complaint to the effect that the disposition and management of the assets in the possession of the Civil Rehabilitation Debtors (more specifically, the above-described bidding process implemented by the Civil Rehabilitation Debtors staring in December 2008) has "improperly favored Lehman Brothers Group [including LBAH] in accordance with [[their]] intentions" and is "strikingly dishonest and unbalanced" (Shinsei Report, Pg. 5). This claim as well is entirely based on errors of fact

Basically, the bidding process described was selected independently, on the judgment of the [[or, eliminate this definite article to leave the meaning of "some" or "one or more"-- an ambiguity present in numerous contexts within these documents]] Civil Rehabilitation Debtors to the effect that this speedy disposition of assets was the best option for the maximization of the interests of Civil Rehabilitation Creditors. The plans were made entirely without LBAH or LBHI opinions being either invited or heard. It was only immediately before the bidding process was begun (in November 2008), when LBAH and LBHI had finally gotten a grasp on the situation in Japan, that we offered our input-- by raising the following issues: whether or not it would be beneficial to all Creditors under then-current real-estate market conditions and finance environment to institute the bidding process immediately (in

11

other words, whether or not it would be possible, in that market and environment, to dispose of the assets at appropriate prices); and whether it wouldn't be best to implement, at least as the sellers, procedures for the evaluation of the assets (due diligence), and, should there be cases in which the bid price(s) was/were determined to be objectively too low, to reserve the option of temporarily continuing to retain possession of them.

Subsequently, as a result of discussions that also included the Investigation Commissioner, and in consideration of facts such as the status of the Civil Rehabilitation Proceedings being one in which the Civil Rehabilitation Plan could not be approved absent the understanding of LBAH, LBAH obtained disclosures of reasonable scope concerning the assets at bid, and, *rather than LBAH being given the opportunity to state its views concerning the bidding process, the bidding process was conducted for exactly those assets that had been in the Civil Rehabilitation Debtors initial plan.*

Next, with the results of the second sale-at-bid, it was found upon comparing the highest-bid prices versus the objective values of the assets, that the former were sufficiently reasonable, and a decision was made to aim at selling through the bidding process *all* of the assets that had initially been set for sale-at-bid. No change was made to the scope of assets placed at bid due to the involvement of LBAH or LBHI. Shinsei Bank has made a claim concerning this point to the effect that, as a result of the involvement of LBAH and/or LBHI, "principal assets were classified into 'for bid' and 'delay bidding' categories" and "assets designated as 'delay bidding' assets [were] excluded from the bidding procedures" (Shinsei Report, Pg.4). This claim is contrary to objective fact.

Neither LBAH's above-described raising of issues nor the subsequent conduct of the bid process provides any reason at all to think there was any[[thing]] that would impede fairness; it is clear on the contrary that the [[process]] was one that matched with the common interests of all Creditors.

The matter of the requests by Mitsubishi Tokyo UFJ Bank and others-- including ones asking for the disclosure of information – are not of concern to LBAH. However, it is not a matter of these banks having formed a Creditors' Committee under the Civil Rehabilitation Act, and the common opinion – in favor of restricting disclosure of detailed information concerning assets in question in consideration of the bidding process then being underway – seems to go without saying. We would think that there is no reason to judge the response of the CD Debtors to have been in bad faith simply because these requests

were not acceded to.

Were we to venture comment in this connection, we would say that when in December 2008 LBAH noted a report of the bidding process being implemented, we made suggestions to Shinsei Bank (including [one for] the organization of a Creditors' Committee) RE the seeking of appropriate disclosures of information from [[or "for" !]] the Civil Rehabilitation Debtors, a number of senior Shinsei staff voiced the opinion that "as for Shinsei, we desire that the current bidding process be respected and for the sale of Civil Rehabilitation Debtors' assets to move forward as speedily as possible." In contrast with the LBAH's opinion voicing doubts about a hasty sale of assets, they made plain their posture in support of the Civil Rehabilitation Debtor orientation toward making an early "batch" sale via the bidding process. Shinsei Bank's new attitude seeking now to destroy the fruits of the bidding process is completely lacking in consistency, and runs patently counter to the best interests of all Creditors as a group. LBAH cannot help but wonder [[what this might mean]].

**6. Asset Management System of the Civil Rehabilitation Debtors, etc.**
Since as a Civil Rehabilitation Creditor LBAH is in no special position to voice its opinion concerning Shinsei Banks claims RE Civil Rehabilitation Debtors' system of asset management, we will withhold from making detailed objections.

However, if we are to make one comment on this, it is that operations for the management of Civil Rehabilitation Debtor assets is largely outsourced to contractors, and our understanding is that basically this work is not of a sort that requires a roster of numerous employees. Also, if it were a simple matter of increased staffing leading to management and disposition of assets proceeding [[more]] smoothly, then the Civil Rehabilitation Debtors would surely have adopted this sort of tactic.

Whatever the case, it is obvious that staffing and systems issues are clearly not problems of a sort that could be solved though the issuance of the Administrative Management Order at which Shinsei has been hinting, and in the eventuality in which such an order produced a state of affairs in which the current management team were separated from the Civil Rehabilitation Debtors, that would merely invite further scattering of staff, which we feel certain would be harmful to the interests of

the creditors as a group.

## 7. Conclusion

As we have explained, nowhere during the process whereby the Civil Rehabilitation Debtors have moved forward in the instant Civil Rehabilitation Proceedings has there been any occurrence whatever of any situation in which Lehman Brothers Group (including LBAH) has benefited from an improper advantage or exerted improper influence. Further, in the bidding process implemented by the Civil Rehabilitation Debtors, there have been no instances of any points of injustice of which LBAH is aware. The results, as well, are that those asset items which the Civil Rehabilitation Debtors had planned to sell at bid were all bid out at appropriate prices, and there has been no point which had run counter to the interests of the creditors as a group.

In the event that, at the stage where the Civil Rehabilitation Plan is almost ready to submit, Saisei Bank were to make its application for an Administrative Management Order, it is clear that the result would be to uselessly complicate the proceedings, impose delay, and destroy the fruits of the bidding proces garnered though the efforts of all parties concerned. Therefore, LBAH, as the party with the greatest stake in the instant Civil Rehabilitation Proceedings stands in complete and total opposition to the claims of Shinsei Bank and to any application for order of Administrative Management.
 -End-