平成２０年（再）第２０８号　再生手続開始申立事件

再生債務者　サンライズファイナンス株式会社



平成２１年７月１７日

東京地方裁判所　民事第２０部合議係　御中

監督委員　弁護士　多比羅　誠　先生

# 再生計画案に関する意見書

再生債権者　　　リーマン・ブラザーズ・アジア・ホ
　　　　　　　　ールディングス・リミテッド

承認管財人　パトリック・カウリー

代理人弁護士　飛　松　純　一

同　　　　　眞　鍋　佳　奈

同　　　　　弘　世　和　久

再生債権者　　　リーマン・ブラザーズ・ホールディ
　　　　　　　　ングス・インク

代理人弁護士　桃　尾　重　明

同　　　　　内　藤　順　也



1

目次

第１　ＬＢＡＨ及びＬＢＨＩの意見 ...................................................7

第２　新生銀行の主張と本意見書の構成 ...............................8

　１　新生銀行の主張とその誤り ...........................................8

　２　本意見書の構成 ............................................................10

第３　新生銀行の主張は実質的には立法論であって現行法の解釈

　　とはなっていないこと ....................................................11

　１　信義則に基づく劣後化の主張について ...........................12

　２　過少資本税制に関する主張について ...............................15

第４　再生計画において一部の再生債権を劣後化することは、明白

　　な信義則違反が認められる事例においてしか許容されないこと ......16

　１　清算価値保障原則について ...........................................17

　２　清算価値保障原則の例外があるとすれば信義則に求めるほ

　　かなく、極めて限定的な場合しか認められない ...........................18

　３　劣後化が肯定された最近の裁判例は、明白な信義則違反が認

　　められる事例についての判断である ...............................19

　４　新生計画案は、清算価値保障原則を無視するものとして違法

　　である ........................................................................20

第５　本件において、ＬＢＨＩ及びＬＢＡＨが劣後的に取り扱われ

　　るべき事情は一切存在しない .......................................22

　１　再生債務者をめぐる事実経過の概要 ...............................22

　（１）リーマン・ブラザーズ・グループについて ...........................22

　（２）再生債務者について .....................................................22

　（３）再生債務者によるグループ間貸付の集約機能及びその変遷

　　........................................................................................24

　　ア　再生債務者が日本のリーマン・ブラザーズ・グループにお

　　　けるグループ内融資を集約することとなった経過 .................. 24

　　イ　再生債務者が外部金融機関からの貸付を受けるに至った

　　　経過 ............................................................ 25

　　ウ　グループ内融資のＬＢＨＪへの移管 ........................ 26

（４）新生銀行による融資について ................................ 29

　　ア　融資に至る経緯 ............................................ 29

　　イ　本件新生ローン契約及びそれに基づく融資の概要 .............. 30

　　　（ア）平成１５年１２月２５日付融資枠設定合意書

　　　　（「Uncommitted Revolving Credit Facility Agreement」）

　　　　及びそれに基づく１００億円の融資 .................................. 31

　　　（イ）平成１７年１１月１６日付第一次変更契約及びそれ

　　　　に基づく追加の７５億円の融資 ................................ 33

　　　（ウ）ＬＢＨＪへの借換えの打診 ............................ 33

　　　（エ）平成１９年７月以降の経緯 ............................ 34

　　ウ　ＬＢＨＩの信用の下に融資がなされたこと .......................... 35

　　エ　再生債務者による情報開示 ................................ 38

　　　（ア）当初融資前の情報開示 ................................ 38

　　　（イ）当初融資実行後の情報開示 ............................ 39

（５）再生債務者の民事再生手続開始申立て ................................ 42

２　新生銀行の主張に対する反論 .................................... 43

（１）再生債務者の倒産原因が「再生債務者のグループ内金融子

　　会社としての側面」に起因するという新生銀行の主張は、全く

　　誤っている ...................................................... 44

（２）ＬＢＨＩによって再生債務者の「不当経営支配」がなされ

　　た事実はない ...................................................... 45

3

　　ア　ＬＢＨＩが究極的な持株会社として再生債務者の経営に

　　　影響力を及ぼしていたことに何らの不当性はない ................... 46

　　イ　再生債務者がＬＢＨＩ及びＬＢＡＨからの融資を受けて

　　　いたことについては、いかなる不当性も認められない ........... 47

　　ウ　再生債務者がリーマン・ブラザーズ・グループ関連会社に

　　　対してグループ内融資を実行していたことについては、いか

　　　なる不当性も認められない ................................................. 50

　　エ　不良債権ビジネスについてのみ再生債務者の実態があっ

　　　たとする新生銀行の主張は、単なる詭弁にすぎない ............... 52

３　ＬＢＨＩによって再生債務者の「不当搾取」がなされた事実

　はない ............................................................................. 53

（１）外部債権者からの借入れが不良債権ビジネスに充てられて

　いたとする主張は、事実に反するばかりでなく、劣後化の根拠

　ともならない ................................................................... 54

（２）平成１９年７月以降のＬＢＡＨからの短期借入金の減少は、

　　ＬＢＡＨへの返済に基づくものではない ..................................... 56

（３）再生債務者の利益の源泉が専ら不良債権ビジネスであると

　いう新生銀行の主張は、客観的に誤っている ............................. 57

（４）匿名組合契約に基づく利益分配については金融機関に開示

　されており、何らの不当性もない ............................................. 59

（５）配当による利益分配及び人件費・業務委託費の分担につい

　ても、金融機関は全て認識しており、実質的にも不当性はない

　.......................................................................................... 61

（６）再生債務者に対して「損失引受強制」がなされた事実はな

　い ....................................................................................... 62

　　ア　ＬＢＦＪを通じたグループ会社の費用の立替払い ............... 63

イ　ＬＢＣＭの利益保持のための損失強制との主張について .....64

（ア）債務の付け替えについて ..............................................66

（イ）損害の担保について ....................................................67

（ウ）不良有価証券の取得について ..............................68

ウ　回収不能の営業貸付の実行.......................................69

（7）小括 .......................................................................................69

4　再生債務者の資本金額が負債総額に比して小さいことは再
　生債権の劣後化を何ら基礎付けない ...............................70

（1）再生債務者が有限責任制度を濫用したとの新生銀行の主張
　　は、会社法の原則を無視したものである ......................70

（2）過少資本税制の適用により借入金の一部が資本とみなされ
　　るものとする新生銀行の主張は明らかな誤導である ...................72

（3）再生債務者が自ら過少資本税制の適用を受けることを選択
　　したかのような新生銀行の主張は極めて恣意的な誘導である ......74

（4）再生債務者による過少資本税制に基づく自己否認が過大な
　　税負担を生じたとする新生銀行の主張は明らかに誤っている ......74

（5）小括 .......................................................................................76

5　新生銀行をはじめとする外部債権者は、再生債務者の状況を
　十分に認識した上で、高度な与信判断の結果、ＬＢＨＩの信用
　を基にして融資を行っているのであり、この点からも信義則に
　基づく劣後化が認められる余地はない ...............................77

6　「ＬＢグループ再生債権者15社」の債権をひとくくりにし
　て劣後化すべきとの主張は失当である ...............................79

（1）ＬＢＨＩによる保証が、ＬＢＨＩの債権の劣後化を根拠づ
　　けるとの主張は誤っている........................................................80

（2）ＬＢＨＩ以外の「ＬＢグループ再生債権者15社」がＬＢ

ＨＩのコントロール下にあること等を根拠として劣後化を肯
定することはできない ...................................................................80

7　ＬＢＡＨ及びＬＢＨＩが法的倒産手続に入っていることは、
信義則に基づく再生債権の劣後化を否定する事情である .............81

第6　確定済みの再生債権について、債権者集会における議決権を
否定することはできない ..............................................................84

第7　まとめ ...........................................................................................86

　　再生債権者リーマン・ブラザーズ・アジア・ホールディングス・リミテッド承認管財人（以下、清算手続開始の前後を問わず「ＬＢＡＨ」という。）及び同リーマン・ブラザーズ・ホールディングス・インク（以下「ＬＢＨＩ」という。）は、株式会社新生銀行（以下「新生銀行」という。）が提出した平成２１年５月１５日付再生計画案、同年６月２６日付「再生計画案修正許可申請書」（以下、新生銀行提出にかかる修正後の再生計画案を「新生計画案」という。）及び同日付意見書（以下「新生意見書」という。）に対し、以下の通り意見を述べる。

## 第１　　ＬＢＡＨ及びＬＢＨＩの意見

1　　「ＬＢグループ再生債権者１５社」[1]の有する再生債権が他の再生債権に比して劣後的に取り扱われるべきであるとする新生意見書の主張は、誤った法解釈及び誤った事実関係の認識・評価に基づくものであって、合理的理由を欠くものである。

2　　「ＬＢグループ再生債権者１５社」の債権者集会における議決権を認めるべきではないとする新生意見書の主張は、法律上の根拠を欠き、認められる余地はない。

3　　新生計画案は、債権者間の平等（民事再生法１５５条１項）に違反する点で「法律の規定に違反」するとともに（同法１７４条２項１号）、再生債権者の一般の利益（いわゆる清算価値保障原則）にも反するも

---

[1]　新生意見書において、ＬＢＡＨ及びＬＢＨＩのほか、リーマン・ブラザーズ証券株式会社、有限会社プルート不動産、有限会社ガーデニア、有限会社タービン・インターナショナル、有限会社マーリン・インターナショナル、有限会社パイク・インターナショナル、有限会社ジニア、有限会社ピラニア・インターナショナル、有限会社飛泉ビルディング、有限会社ダックホーン、有限会社イエローテイル・インターナショナル、ジャパン・インベストメント・パートナーシップ・インク、及びリーマン・ブラザーズ・リアル・エステート株式会社を含むと定義されている。

のであって（同項４号）、御庁として、債権者集会における付議に付する旨の決定をなしえないものである（民事再生法１６９条１項３号）。

4　裁判所におかれては、再生債務者が提出した再生計画案について、速やかに債権者集会の決議に付する旨の決定を下されるべきある。


第２　新生銀行の主張と本意見書の構成


1　新生銀行の主張とその誤り


新生銀行は、ＬＢＨＩ及びＬＢＡＨをはじめとしたリーマン・ブラザーズ・グループが、

① 再生債務者の経営全般を「不当に」支配し、

② 再生債務者を「過少資本」の状況に陥らせ、

③ ＬＢＡＨらからリーマン・ブラザーズ・グループ関連会社に対する融資を行う際に再生債務者を経由することによって融資先の破綻リスク・損失を「外部債権者に転嫁」し、

④ 再生債務者の不良債権ビジネスにより得られた利益を他のリーマン・ブラザーズ・グループ関連会社に移転させ、かつ、これら関連会社の損失の引受等を再生債務者に「強制」して「不当に搾取」し、

こうした行為の結果として、ＬＢＨＩの破綻により再生債務者も破綻した結果、外部債権者のための再生債務者の責任財産を「不当に」毀損させた、と主張している（新生意見書６頁～７頁等）。また、新生銀行は、上記①～④の事実について外部債権者には認識の機会が与えられておらず、「ＬＢグループ再生債権者１５社」の届出債権に対して異議を述べることが期待できなかったとも主張している。そして、これらの主張に基づき、確定再生債権額に応じた配当を実施することを内容とする再

生債務者の提出にかかる再生計画案は「実質的な不衡平」をきたすと断じ、当該債権については他の再生債権に比して劣後的に取り扱うことを内容とする新生計画案を裁判所に提出している。新生銀行によれば、このような劣後化が正当化される法律上の根拠は、「民事再生法１５５条１項ただし書ないし信義則」であるという。

　加えて、新生意見書は、新生計画案が付議される債権者集会において、「ＬＢグループ再生債権者１５社」の議決権行使を認めてはならないとも主張するが、その法律上の根拠は明確に示されていない。ただし、新生意見書と同日付で裁判所に提出された松下淳一教授の意見書（以下「松下意見書」という。）１０頁においては、「ＬＢグループ再生債権者１５社」の有する再生債権が劣後化されることを前提としつつ、「再生計画にしたがって得られる弁済の額と・・・発言権の量とは比例すべきである、という考え方」に議決権行使を否定する根拠が求められているようである。

　しかし、まず、新生銀行の主張は、そもそも現行法の解釈の限界を逸脱し、裁判所に対して実質的な立法を求めるに等しいうえ、仮に現行法の解釈として成り立ちうるとしても、「衡平・公正の理念」といった不明確な概念で信義則の適用範囲を無限定に拡大するなど、法解釈としてもやはり不当である。また、上記のような新生銀行による事実関係の認識・評価は明らかに実態と乖離するものであって、全くの誤りである。したがって、「ＬＢグループ再生債権者１５社」の再生債権を劣後化すべき合理性も必要性も本件では全く認められず、これら再生債権者の議決権行使を否定する根拠も一切存在しない。

　新生銀行は、自ら与信判断を行って融資を実行したリーマン・ブラザーズ・グループが破綻したことによって生じる自行の損失を少しでも回避するため、誤った法解釈の下に、リーマン・ブラザーズ・グループを

9

めぐる事実関係の認識・評価をことさらに歪曲・脚色したストーリーを作出し、「ＬＢグループ再生債権者１５社」の有する正当な法律上の権利を侵害しようとしている。このような新生銀行の行為によって再生債務者の民事再生手続がいたずらに遅延する事態となっているのは、最大の再生債権者であるＬＢＡＨ及びＬＢＨＩとして、極めて遺憾である。


2　本意見書の構成


本意見書では、まず、新生銀行の主張が実質的には立法論であって、現行法の解釈としては成り立っていないことを述べた後、議論の前提として、本件民事再生手続において再生債権が他の債権よりも劣後化される場合があるとすれば、それは、明白に信義則に違反する事情が認められるような著しく限定的な場面においてのみであることを概説する。

その上で、新生銀行の主張の前提となる上記①ないし④の事実関係の認識・評価が全く失当であることを主張し、本件において、ＬＢＨＩをはじめとした「ＬＢグループ再生債権者１５社」に「民事再生法における公正・衡平の理念」ないし信義則に抵触するような行為は一切存在しないことを説明する。

また、特に新生銀行をはじめとした金融債権者に関する事実関係として、再生債権者に対する融資の実行に際して金融債権者がＬＢＨＩの債務保証を徴求し、再生債務者の事業内容や経営の実情についても十分に理解しつつ融資を継続していた事実についても述べる。この点は、ＬＢＡＨらの債権を劣後化することによってこれらの再生債権者を特に保護すべき合理性・必要性がないことを示すものである。

そして、結論として、「ＬＢグループ再生債権者１５社」に対して一切の配当を行わないことを内容とする新生計画案が、「法律の規定に違

反」するとともに（民事再生法１５５条１項、１７４条２項１号）、再
生債権者の一般の利益（いわゆる清算価値保障原則）にも反するもので
あることを（同項４号）論証する。その当然の帰結として、「ＬＢグル
ープ再生債権者１５社」の債権者集会における議決権の行使を認めない
ことも法的に許されないことになる。

第３　新生銀行の主張は実質的には立法論であって現行法の解釈とは
　　なっていないこと

　新生銀行は、「民事再生法１５５条１項ただし書ないし信義則」に基
づく劣後化の法理は、「学説において不当経営支配、不当搾取及び過少
資本として整理されている（１０頁）」と主張する。しかしながら、後記
第４にて述べるするとおり、民事再生法１５５条１項ただし書は清算価
値保障原則に反する劣後化を認めるものではないので、本件では同条項
は劣後化の根拠たり得ない。信義則に基づく劣後化については、たしか
に、学界において上記のような場合に親会社の子会社に対する債権を何
らかの形で劣後させるべきではないかという議論や子会社の債権者の
保護制度の議論があり、倒産法改正の過程、並びに商法及び会社法の改
正の過程で立法化が試みられたことはあるが、いずれの場合にも立法化
ができなかったことは周知のところである。その背景には、単に立法技
術上の問題以上に、他の実定法との関係で条件設定が困難であることや
産業界、金融業界（企業結合法制の場合[2]）の政策的反対があったことに
よる。このように、この問題は未だ産業界、金融界等重大な利害関係を
有する関係者のコンセンサスを得ていないものである。新生銀行の主張

---

[2] 別冊商事法務 No211「親子会社法制等に関する各界意見の分析」（添付資料１）
245 頁参照。

は、かかる立法化できなかった事柄を裁判所に行えというのに等しいものである。

## 1　信義則に基づく劣後化の主張について

　新生銀行は、「不当経営支配」「不当搾取」「過少資本」といった客観的事情がある場合には「信義則」に基づく劣後化が認められるとし、劣後化の理論は「支配会社」と「従属会社の外部債権者」との関係を「株主」と「債権者」の関係とみなすべきという理論であるから、「株主」と「債権者」との関係において、「債権者」がいかなるリスク分析を行っていかなる事実を知りまたは知り得たかということは劣後化の法理とは無関係であると主張する（新生意見書４３、４４頁）。

　しかし、仮に、「不当経営支配」「不当搾取」または「過少資本」が認められる場合に裁判所が支配会社の債権を劣後化させるとすれば、その基準は全ての倒産手続にあてはまるようなものでなければならず、特に破産手続においては破産管財人の準則として機能するものでなければならない。そのようなことが新生銀行の主張する「不当経営支配」「不当搾取」または「過少資本」といった抽象的な概念のみでは不可能であることは、倒産法の改正や企業結合法制の立法化検討の過程で断念されたことからして明らかである。このような不可能なことを裁判所に求めているのが、新生銀行の議論である。例えば、「過少資本」の「過少」とは何か。「資本」とは「資本金」なのか「株主資本」なのか、「不当経営支配」「不当搾取」の「不当」とは何か。「不当搾取」の「搾取」とは何か。会社法の認める剰余金の配当の枠内の配当でも「不当搾取」があり得るのか、「劣後」とは何か、どの程度劣後化すべきか、その他諸々の解決すべき問題がある。これらを立法手続を経ずして、裁判所が独自

に行うべきであるといえるであろうか。

　このように、新生銀行の主張は、「不当経営支配」「不当搾取」または「過少資本」の場合に、支配債権者の債権を劣後させるべきではないかという立法政策の議論を現行法の解釈を装って議論するものであり、立法論と解釈論を混同した主張である。

　そもそも、信義則とは、当該具体的事情の下において相手方が正当に抱くであろう期待を裏切ることのないように誠意を持って行動すべきとの原則である（新版注釈民法（１）７４頁）から、当事者間、本件で言えばＬＢＨＩ、ＬＢＡＨといった債権者、再生債務者及び新生銀行のような金融機関の相互間における正当な期待を保護する準則であり、利害が対立する者の「関係」を規律するものである。したがって、劣後化によって利益を受ける者が一般投資家である場合と、グループ内の関係会社や金融機関のように再生債務者の内部事情を知っているか、または知り得べき者である場合とでは、信義則による規律は異なるはずである。極端な場合、再生債務者の行っている事柄を全て知りつつなおリスクを取って融資を行う者と、全く知らずに与信取引をする者とで、信義則による規律が同じであるという新生銀行の主張は、おおよそ「信義則」の理論の本質を無視した議論であり、現行法の解釈としては成り立ち得ない。

　信義則は具体的な当事者間の関係において機能するものであるところ、確かに、当事者の一方が相手方に関する一定の事情を知らなかったために相手方はある一定の行動をとらないはずであると期待していたのに相手方が当該行動をとったような場合には、相手方が当事者の一方の信頼を裏切ることとなる場合がある。しかし、当事者の一方において相手方が当該行動をとることを知りまたは知り得る立場にあった場合や、そもそも相手方に対する信頼を基礎とした関係にない場合（たとえば、相

手方の親会社等に対する信頼を基礎とした関係である場合）には、相手方は当事者の一方の信頼を裏切ったことにはならないはずであり、当事者が相手方の行動につき知っていたか、または知り得べき立場にあったかは信義則による規律上重要な点である。日本の銀行は、金融庁の「主要行等向けの総合的な監督指針」（以下「監督指針」という。）に基づき、金融庁の厳格な監督を受けており、とりわけ「信用リスク管理」については、貸出先の財務内容、経営状況の把握及び、日常的なモニタリングが義務づけられている（監督指針Ⅲ－２－３－２）。その故に、日本の銀行が貸出をする場合のローン契約その他の契約においても、債務者の正確な財務情報の提供が債務者に義務づけられており、本件においても例外でない。このように、再生債務者の財務内容及び経営内容を知りまたは知り得べき立場にある金融機関が、再生債務者や親会社またはグループ内の債権者（仮にＬＢＨＩ及びＬＢＡＨがそうだとして）との関係で、新生銀行が主張するような再生債務者の財務内容や経営状況をとらえて、「信義則違反」であると主張すること自体許されざることである。もしそのようなことが許されるとなれば、自己責任の原則は否定され、銀行の信用リスク管理の要請は没却され、銀行のモラルハザードをもたらし、結果的に国民経済全体にとって大きな損失をもたらすであろう。

　また、このように、信義則が具体的な当事者間の関係において機能する準則である一方で、倒産手続においては画一的・集団的処理が要請されることから、信義則に基づく劣後化が認められるためには、劣後化される債権を有する債権者による信義則違反は、債務者あるいは他の全ての（少なくとも大多数の）債権者との関係で認められることが必要である[3]。その意味で、劣後化の場面において要求される信義則違反は、いわ

---

[3] たとえ個別の債権者との関係で何らかの信義則違反行為があっても、それは別途損害賠償請求等で解決されるべき問題であって、倒産手続における一般的な劣

ば「明白な」信義則違反である必要がある[4]。

　そして、再生債務者の債権者は、「ＬＢグループ再生債権者１５社」を除けばほぼ全てが新生銀行を含めた金融機関なのであって、これら金融機関との関係で信義則違反と認められるような事情はおよそ存在しない以上、再生計画において「ＬＢグループ再生債権者１５社」の債権が一律に劣後化される合理性など全く認めがたいのである。

2　過少資本税制に関する主張について

　新生銀行は、国際間の課税にかかわる「過少資本税制」について議論している。この点、後記第５の４（２）のとおり、過少資本税制は「貸付金」を「資本」とみなすなどとはどこにも規定しておらず、単なる損金算入の額についての規制にすぎない。しかし、仮に、過少資本税制の理解について新生銀行の主張を前提にしたとしても、結局、同税制は、「貸付金」を「資本」的なものとして扱うためには「法律」が必要であることを如実に示していることになる。

　すなわち、過少資本税制は、租税特別措置法によって制定されているのであって、通達や解釈あるいは判例によって実現されているのではない。もし、過少資本の場合に支配会社の債権を資本的なものとして取り扱うことが立法措置を経ずして適用され得る一般的な準則であるならば、同じことが内国法人間にもあてはまるはずである。しかしそうはなっていない。つまり、仮に、過少資本の場合には、一定の場面において支配会社の貸付金を資本と同視すべきだという要請があったとしても、それを実現するためには立法によるべきであり、かつ立法においては明

---

後化で解決すべき問題ではない。
[4] この点について、山本教授は「破産手続に携わる実務家であれば、ほぼ異論なく信義則違反が認められる場合」と表現されている（山本意見書９頁）。

確な基準を設定しなければならない。実際、日本の過少資本税制においては、法令によって明確な基準が制定されているのである。

　何故明確な基準が必要かといえば、経済法規は、経済活動の「予測可能性」を担保するものだからである。具体的かつ明確な基準がなければ経済活動の予測可能性は実現できない。新生銀行の主張する議論は、明確にすべき基準があまりにも多すぎるものであり、裁判所がこれをなしうるとはとうてい思えない。裁判所が新生銀行の安易な抽象的な一般論に基づいて、新生銀行の議論を採用すれば、破産手続の大混乱だけでなく、日本の金融業界、産業界からの大きな批難をもたらし、経済活動に大混乱を招くであろうことは、容易に想定できる。

第4　再生計画において一部の再生債権を劣後化することは、明白な信
　　義則違反が認められる事例においてしか許容されないこと

　新生意見書は、本件においてＬＢＡＨ及びＬＢＨＩの債権が劣後的に取り扱われるという結論を導くための法律上の根拠は、「民事再生法１５５条１項ただし書ないし信義則」であると主張している。この点、民事再生法１５５条１項ただし書は、「衡平を害しない場合」であれば権利変更に差を設けることを許容している[5]。しかし、同条項に基づく差別的取扱いが認められるのは、全ての再生債権者に清算価値が保障される

---

[5] なお、平成２１年３月５日付新生銀行意見書は、米国のディープロックの法理を引用し、同法理に基づき衡平に基づく劣後化が認められるべきと主張し（同意見書２頁）、松下意見書２頁目脚注１及び同別紙２においても、ディープロック判決が紹介されている。本件は、日本の民事再生手続における再生債権の平等取扱いが争われている事案であって、そもそも米国の議論は基本的に無関係と考えられるが（山本意見書４頁脚注１１参照）、念のため付言すれば、米国においても同判決以後約７０年間の判例の集積により、劣後化がなされる射程範囲はより限定・具体化されており、同判決に示された抽象的基準から本件における債権者間の衡平性を論じる姿勢は妥当性を欠く。

場合のみであり、清算価値の保障を行わずに劣後化できるのは、明白に
信義則に違反するような事情が当該債権者について認められるような、
著しく限定的な場合のみである。

　そして、本件再生手続は清算型手続であって、再生計画を通じて債権
者に分配される弁済原資は再生債務者の清算価値そのものである。とす
れば、本件再生手続において、一部の再生債権を他の債権よりも不利に
取り扱うこと自体、明白な信義則違反が認められる場合のみということ
であって、このような議論の前提は、十分に留意されるべきである。

　この前提認識については、山本和彦教授の意見書（添付資料２。以下
「山本意見書」という。）において詳細かつ具体的に論じられていると
ころであるが、以下、若干敷衍する。


　1　　清算価値保障原則について


　民事再生手続における清算価値保障原則とは、再生計画において、少
なくとも予想破産配当額が各債権者に保障される必要があるとの原則
であり（１７４条２項４号。なお、２３６条も参照）、破産手続におい
て破産債権者の権利に差を設けることが明文上認められていないこと
を背景とする原則である。多数説は、このような清算価値保障原則は、
個々の債権者ごとに満足される必要があるとしているから、全体として
は清算価値を上回る弁済が債権者になされるとしても、特定の債権者に
対して清算価値を下回るような弁済しかなされないとすれば、それは清
算価値保障原則違反となるばかりか、財産権の侵害として憲法違反の問
題すら生じることになる（個別弁済基準説）。

　したがって、民事再生法１５５条１項ただし書が「衡平を害しない場
合」において再生債権者間の権利の変更に差を設けることを許容してい

るとしても、それは清算価値保障原則の例外を認める趣旨ではなく、各
再生債権者に対して清算価値を保障する範囲内においてのみ、一定の差
を設けることを許容しているに過ぎない。

2    清算価値保障原則の例外があるとすれば信義則に求めるほかなく、
　　極めて限定的な場合しか認められない

　このような清算価値保障原則について例外が認められるとすれば、そ
れは、破産手続が開始された場合であっても債権者間の差別的な取扱い
が認められるような極めて限定的な場合のみである。なぜなら、破産手
続において債権者に対する配当の引き当てとなる破産財団は、まさに債
務者企業の清算価値そのものであって、その配当について差別的な取り
扱いをするとすれば、まさに一部の破産債権者について清算価値を保障
しないことと同義となるからである。そして、破産法にはこのような差
別的取扱いを許容する規定は存在しないから、結局、破産手続で差別的
取扱いができる根拠は、信義則に求めるしかない。
　この点、最高裁平成７年１２月２１日判決（平成６年（オ）第６８３
号松下意見書２頁、山本意見書７頁参照）において、１００％親会社の
保証債務履行に基づく求償債権の破産債権の劣後的取扱いが否定され
ているとおり、最高裁は、このような法律上定めのない取扱いは認めら
れないとの姿勢を鮮明にしている。
　また、名古屋高裁（金沢支部）昭和５９年９月１日決定（松下意見書
４頁参照。添付資料３）も、代表取締役の更生会社に対する債権につい
て、単に経営上の責任があるというだけでは更生計画上の劣後的取扱い
を認めることはできないと判示している。これは、要するに、代表取締
役等の経営責任は別途損害賠償責任を追及することで解決すべき問題

18

であり、更生計画における劣後的取扱いで処理することは不適当である
との裁判所の姿勢を端的に示している。学説上も、信義則違反による差
別的取扱いは、倒産会社から支配会社に対して損害賠償請求権が認めら
れるような極限的な場合に限られると一般的に考えられている（添付資
料４・１２６頁以下・田原発言及び花村発言参照）。

　この論点をめぐる裁判所の考え方は山本意見書６頁以下において明
快に整理されているとおりであり、松下教授の過去の論文（添付資料
５・３２２～３２３頁）においてすら、同様の考え方が示されていると
ころである。


３　劣後化が肯定された最近の裁判例は、明白な信義則違反が認めら
　れる事例についての判断である


　一方、松下意見書において指摘されているとおり、過去、下級審レベ
ルでは、一部の債権者の倒産債権について不利な取り扱いをすることが
認められた事例がいくつか存在する。しかし、もっとも新しい広島地裁
福山支部平成１０年３月６日判決（松下意見書３頁、添付資料６）の事
案では、劣後的取扱いに服することと判断された届出債権者は、破産会
社の倒産が不可避であることを認識しつつ自社の都合から破産会社の
延命を図り、その間、外注先に対して破産会社振出の約束手形を受け取
らせて損害を与えたという事情が認められ、当該届出債権者が他の債権
者を害する故意を有するに等しい事案であって、他の債権者に対して不
法行為責任を負う可能性があるような、まさに信義則違反に該当する悪
質な行為が認められるケースであった。

　以上から、最高裁判所は、清算価値保障原則の例外については認めな
い立場をとっており、信義則違反を理由に例外を認めた最高裁判例はな

く、下級審において、清算価値を下回る弁済・配当が許された例においては、著しく限定的な立場が採用されているものといえる。

　したがって、本件を議論するにあたっては、まず、清算価値保障原則の例外を認めることができるような極限的な事案なのかどうか、という点が明確に意識されるべきである。しかも、以下4において述べるとおり、同原則に関する正しい理解に基づけば、本件の具体的な事実関係をいちいち検討するまでもなく、新生計画案が違法であることは一見して明らかなのである。


４　新生計画案は、清算価値保障原則を無視するものとして違法である


　再生債務者は、再生債務者によっていわゆる清算型再生計画案が提出されており、これによれば、再生債務者の資産の換価の結果、各再生債権者に対する弁済原資は８３０億円前後になるという。この数値は、まさに再生債務者の現実の清算価値そのものであり、清算価値保障原則の帰結として、「ＬＢグループ再生債権者１５社」に対しては、再生債務者の清算に伴って形成される８３０億円前後の弁済原資から、債権額に応じた配当を受ける権利が最低限保障される必要がある。このことは、民事再生法１５５条１項ただし書きの存在によって影響を受けるものではなく、仮に、清算価値保障原則に例外が認められることがあるとすれば、それは、「ＬＢグループ再生債権者１５社」に明白な信義則違反が認められる場合のみである。

　新生意見書はもとより、松下意見書及び神作裕之教授の意見書（以下「神作意見書」という。）においても、このような清算価値保障原則についての観点・検討が全く欠落しており、「衡平」「公正」といったキー

ワードが多用され、「ＬＢグループ再生債権者１５社」に対して一切の
配当を行わない内容の新生計画案を適法であると安易に結論づけてい
る。このような一般的・抽象的な観点から、新たな法律の条文を創設す
るような法解釈を安易に行うことは、厳に慎まれるべきである[6]。新生計
画案が適法となる余地があるとすれば、「ＬＢグループ再生債権者１５
社」のそれぞれについて、全債権者（あるいは大多数の債権者）との関
係で明白な信義則違反が確認できるような、極めて限定的な場合のみで
ある。本件では、新生銀行はそのような事実を主張できておらず、立証
もできていない。

　以上のとおり、本件において新生計画案を付議するか否かを裁判所が
判断されるにあたっては、清算価値保障原則に対する裁判所及び学説の
立場を踏まえつつ、正当なご判断を下されるべきと考える。


　そして、以下第４において具体的に説明するとおり、本件の事実関係
においては、「ＬＢグループ再生債権者１５社」の再生債権を不利に取
り扱うべき事情は、そもそも一切認められない。また、仮に新生銀行の
主張の一部が事実であると仮定しても、そこには、信義則に違反するよ
うな「ＬＢグループ再生債権者１５社」の行為はもとより、再生債権者
間の衡平性に影響するような事情すら、いささかも看取し得ない。した
がって、清算価値保障原則に違反するような劣後化はもとより、「ＬＢ
グループ再生債権者１５社」の有する再生債権について、民事再生法１
５５条１項ただし書に基づく差別的取扱いすら認められる余地はない
のである。

---

[6] この点、最高裁平成７年１２月２１日判決の原審（東京高判平成５年１１月３
０日・平成３年（ネ）第４５９６号破産債権確定控訴事件・判例集未登載）にお
いても、「平等原則、衡平、正義の一般原則及び条理のような一般的抽象的な原則
をもってしても、新たな法律の条文を創設するに等しい法解釈をすることはでき
ない」と判示しているとおりである。

第5　本件において、ＬＢＨＩ及びＬＢＡＨが劣後的に取り扱われるべき事情は一切存在しない

1　再生債務者をめぐる事実経過の概要

（1）リーマン・ブラザーズ・グループについて

　再生債務者が属するリーマン・ブラザーズ・グループは、世界的な投資銀行グループとして、世界各地の顧客の金融ニーズに応じてビジネスを展開してきた。その提供するサービスは、投資銀行サービス、資産運用サービス、不動産投資、株式や債券のセールス・トレーディングなどあらゆる分野にわたり、北米、欧州、南米、中東、アジア太平洋の各地域において事業を営んできたものである。

　日本においては、昭和６１年にリーマン・ブラザーズ証券会社東京支店を開設し（平成１８年に株式会社化）、同支店を中心として、幅広い金融サービスを提供してきた。

（2）再生債務者について

　再生債務者は、平成１０年１月５日に設立され、主に不良債権ビジネス及び不動産ファイナンス業務を営んできた株式会社である。不良債権ビジネスは、不良債権の買取及び売却、不動産ファイナンス業務は、主にリーマン・ブラザーズ・グループ各社が行う不動産投資やファイナンス関連業務に必要とされる資金を融資する業務である。なお、再生債務者の定款上の業務内容は、貸金業を筆頭に、債権の買取業務、有価証券

の保有、運用、投資、金融業務等とされている（添付資料７）。

　日本のリーマン・ブラザーズ・グループにおいては、主に不動産投資を取り扱う部門として、不動産投資部（ＧＲＥＧ）が存在し、同部では、大別すると①不良債権ビジネス、②ノンリコースローンビジネス、③企業買収や株式投資などを行っていた。そして、①不良債権ビジネスに関しては、主に再生債務者が担い、②ノンリコースローンビジネスに関しては、主にリーマン・ブラザーズ・コマーシャル・モーゲージ株式会社（以下「ＬＢＣＭ」という。）が担ってきた。

　再生債務者及びＬＢＣＭのいずれにも専属の従業員はおらず、不動産投資部に所属する従業員は、グループ会社であるリーマン・ブラザーズ・リアル・エステート株式会社に所属し、それぞれ担当業務に応じて、再生債務者やＬＢＣＭに出向する形で、再生債務者及びＬＢＣＭの業務を行ってきた。多くの従業員は、その割合は人により異なるものの、再生債務者及びＬＢＣＭの双方の業務を行っており、双方に部分出向という形式を取っていた。また、取締役についても、ヨン・ケイ・チョー、トーマス・ピアソン、坂野博之、エリック・アディントンなど、多くが再生債務者及びＬＢＣＭの双方において取締役を兼務していた。これら出向者の給与・報酬は、出向元から支払われ、再生債務者やＬＢＣＭは、出向元に対して人件費を支払うことになっていた。また、総務や経理などの間接部門等の業務は、必要に応じて他のグループ会社に委託されており、これらの外部に委託された業務についても、業務に応じた費用を再生債務者から他のグループ会社に支払っていた。

　再生債務者の株主は、もともとは Revival Holdings Limited というケイマン法人であったが、平成１９年８月３１日付のリーマン・ブラザーズ・グループ内の再編により、日本法人であるリーマン・ブラザーズ証券株式会社（以下「ＬＢＪ」という。）の１００％子会社となった。

つまり、再生債務者は、間接的にはＬＢＨＩに株式を保有されている関
係にはあるが、ＬＢＡＨとは、同一グループには属していたものの、直
接の資本関係を有していたことはなかった。

（３）再生債務者によるグループ間貸付の集約機能及びその変遷

　　ア　再生債務者が日本のリーマン・ブラザーズ・グループにおけ
　　るグループ内融資を集約することとなった経過

　もともと、リーマン・ブラザーズ・グループにおいては、世界各国に
展開しているそれぞれのグループ会社が必要とする資金は、各会社の個
別の信用力を背景として調達するのではなく、グループ全体の究極的な
持株会社であるＬＢＨＩの信用力を背景に一元的に調達されていた。こ
のため、ＬＢＨＩが米国の金融機関を中心に資金を調達し、それを各国
のグループ会社に対して貸し付けるという資金調達形態が取られてい
た。
　しかし、海外と日本の間の送金は、手続的に煩雑であるばかりか、外
国為替及び外国貿易法（外為法）に基づく規制に服する等の問題があっ
たため、資金調達コストも無視できないものがあった。そこで、日本に
ついては、各グループ会社がＬＢＨＩから個別に融資を受けるのではな
く、特定の日本法人にＬＢＨＩから送られた資金を集約し、日本のグル
ープ会社のいずれかがＬＢＨＩの資金を利用する場合は、いったん当該
日本法人を経由して各グループ会社に融資することとなった。その際、
このようなグループ内融資であっても貸金業法における規制が適用さ
れ、資金を経由させる日本法人は貸金業の登録を有しておくべきと考え
られた。そこで、日本におけるリーマン・ブラザーズ・グループの中で、

当時唯一貸金業の登録を有していた再生債務者が、グループ間貸付を集約させる法人として選定され、再生債務者がＬＢＨＩから融資を受け、それを日本の各グループ会社に融資することが行われるようになった。

　一方、ＬＢＨＩによる融資は、ロンドンに所在するＬＢＨＩのファンディング・デスクが担当していたため、アジア地域のグループ会社への融資に１日の遅れが出てしまい、やがてその不都合性が指摘されるようになった。この不都合性を解消するため、アジア地域においては、徐々にＬＢＨＩに代わってＬＢＡＨがグループ内融資の集約機能を果たすようになり、これに伴い、再生債務者に対する融資もＬＢＡＨから行われるようになった。こうして、日本におけるリーマン・ブラザーズ・グループに対するグループ内融資については、ＬＢＨＩ→ＬＢＡＨ→再生債務者、という資金の経路をたどることとなった。

　なお、当然のことながら、再生債務者に対してグループ内融資機能の集約が行われた当時、よもや再生債務者を含めたリーマン・ブラザーズ・グループが数年後に破綻するなどという事態は、ＬＢＨＩ及びＬＢＡＨも含めて夢想だにしない事態であって、こうした集約化が再生債務者の外部債権者を「害する」ことなど全く意図しておらず、むしろ、純粋にグループ内における資金管理の効率性の観点から実施されたものであったことは当時の状況からも明らかであった。

　　　イ　再生債務者が外部金融機関からの貸付を受けるに至った経過

　上記のようなグループ内融資体制の整備と並行して、リーマン・ブラザーズ・グループとしてのリスク管理の観点から、多様な金融機関から事業の遂行に必要となる多様な通貨での資金調達を行っておくことの重要性も意識されるようになった。このため、ＬＢＨＩが米国の金融機

関を中心に一括してドル建てで資金を調達するのではなく、できるだけ、各国のグループ会社が現地の金融機関から現地通貨で資金を調達すべきとの方針が徐々に強調されるようになった。

　そこで、日本におけるリーマン・ブラザーズ・グループ各社も、事業遂行に際しては円貨が主に必要となることから、ＬＢＨＩの信用力を背景としつつ、日本国内の金融機関から円建ての資金調達を行うことを目指すようになった。特に、日本では、ＬＢＪと日本の金融機関との関係を深め、ビジネス・チャンスを拡大するという観点からも、いわば「お付き合い」として日本の金融機関から融資を受けるという政策的な意向も存在した。

　このような背景の下、再生債務者は、平成１２年には、富士銀行（当時）から融資を受け、その後も日本の金融機関からの借入を徐々に増やしてゆき、新生銀行が最初に融資を行った平成１６年時点では、新生銀行を含め７つの金融機関から融資を受けるに至った。

　　　ウ　グループ内融資のＬＢＨＪへの移管

　このように、再生債務者は、設立以来、日本におけるリーマン・ブラザーズ・グループのグループ内融資の集約機能を営んできたが、その後、平成１８年後半以降における日本のリーマン・ブラザーズ・グループ会社の組織再編に伴い、持株会社としてのリーマン・ブラザーズ・ホールディングス株式会社（以下「ＬＢＨＪ」という。）が設立されたことから、ＬＢＨＪに、グループ間貸付の集約機能を移管する方針が決定された。

　そして、この方針に従い、平成１９年半ば以降、日本のリーマン・ブラザーズ・グループが新規に外部金融機関から融資を受ける場合には、

まずＬＢＨＪが一括して借入れを実行し、そうして調達した資金をＬＢ
ＨＪから各グループ会社に貸し付けるようになった。

　当時再生債務者のグループ会社に対する融資のかなりの部分はＬＢ
ＣＭに対する営業貸付金であったが（平成１９年６月期末で約２５６０
億円（甲１４の８・１５枚目。当時の名称から「I/C NEW CENTURY FINANCE
LTD」と記載されている。））、これもＬＢＨＪに移管されたことから、Ｌ
ＢＡＨの再生債務者に対する短期貸付金も、ほぼ同額がＬＢＨＪに対し
て移管されたため、それまでほぼ一貫して増加していたＬＢＡＨから再
生債務者に対する短期貸付金の額が一時的に減少する結果となった（再
生債務者の短期借入金が、平成１９年６月期末の約４７８８億円から同
年１１月期末には約２４８３億円へと減少している（甲１４の８・１１
枚目、１４の９・９枚目））。その反面として、ＬＢＨＪからＬＢＣＭに
対する短期貸付金が発生している（平成１８年１１月期にはほとんど存
在しなかった短期貸付金が、平成１９年１１月期末に約４７０９億円計
上された（添付資料８の１及び２）。新生銀行は、平成２１年３月５日
付意見書等において、平成１９年７月以降にＬＢＡＨから再生債務者に
対する営業貸付金の額が減少した点について、いかにも詐害的な回収が
行われたかのように主張するが、実際には単に営業貸付金がＬＢＨＪに
移管されただけであって、新生銀行の主張は全く事実に基づかないこと
がわかる。

　このようにして、グループ会社に対する貸付はＬＢＨＪが行うように
体制が変更されつつあったが、ＬＢＨＪは貸金業登録を有しなかったた
め、当面は、ＬＢＨＪの子会社及び孫会社に対する貸付のみがＬＢＨＪ
に対して移管され、それに該当しないグループ会社に対する貸付が、結
果として再生債務者に残ることとなった。具体的には、再生手続開始決
定当時における再生債務者の営業貸付先である１９社（再生債務者の平

成２１年２月２５日付財産目録（資産）営業貸付金項目記載の１９社）
のうち、Lehman Brothers Finance (Japan) Inc,東京支店（以下「ＬＢ
ＦＪ」という。）、リベルタス住宅ローン株式会社、エル・ビー・シー有
限会社の３社がＬＢＨＪの子会社・孫会社に該当しなかったため、再生
債務者に営業貸付金として残された。

　なお、上記３社以外の１６社に対する再生債務者の営業貸付金は、再
生債務者の不動産ファイナンスビジネスに関連するものであり（例えば、
有限会社ヨセミテ（以下「ヨセミテ」という。）に対する営業貸付金は、
後記３（６）イ（イ）でも述べるとおり、不動産ファイナンスビジネス
に関連した営業貸付金である。）、これらをまとめて再生債務者のグルー
プ内融資機能に基づく貸付であるかのような新生銀行の主張は、事実に
反するものである。

　再生債務者のグループ内融資機能に基づく貸付の一部が再生手続開
始決定時に残っていたのは、かかる事実経過に基づくものであり、そこ
には再生債務者の外部債権者に破綻リスクを転嫁する意図など全くな
かった。

　一方、借入についても、再生債務者は、再生債務者の営んでいたグルー
プ内融資機能をＬＢＨＪに移管させるために、すでに再生債務者に対
して融資を行っていた既存の金融機関（新生銀行を含む。）に対し、借
主を再生債務者からＬＢＨＪに変更したい旨を申し入れた。ところが、
新生銀行を含む大多数の金融機関は、中小企業向け融資を増やすという
金融庁の指導に応じるために、資本規模の大きいＬＢＨＪを新たに主債
務者とすることに難色を示し、あえて資本規模の小さい再生債務者に対
する融資を継続したいとの意向であった（甲４４・別紙１０頁）。また、
メガバンクのように、中小企業向け融資の残高維持を意識していなかっ
た金融機関も存在したが、金融機関側の手続上の煩雑さ等もあって、Ｌ-

ＢＨＪへの移管はなかなか進まなかった。

　そして、最終的に、このような機能移管の途上であった平成２０年９月、米国においてＬＢＨＩ等が破綻し、再生債務者も民事再生手続を申し立てる結果となったのである。


　（４）新生銀行による融資について


　　ア　融資に至る経緯


　日本のリーマン・ブラザーズ・グループと新生銀行との最初の接触は、平成１５年初頭であり、当初は、再生債務者ではない別のグループ会社が新生銀行から融資を受ける話が協議されていた。その後、この融資は、借入側の資金調達ニーズがなくなったため立ち消えとなったが、特に中小企業向け融資残高を増やしたい意向を持っていた新生銀行の側から、別の融資をすることが出来ないかという話が持ち込まれ、再生債務者に対する融資が検討されることとなった。

　なお、新生銀行も認めているとおり（甲４４・別紙１頁）、本件新生ローン契約の交渉窓口はリーマン・ブラザーズ・グループの財務部であり、再生債務者に属する従業員ではなかった。このように、新生銀行は、当初から、再生債務者を含むリーマン・ブラザーズ・グループの資金調達等についてはグループの財務部がグループ全体の利益を考慮して行っていたことを十分に理解していた。

　また、この当時、新生銀行において執行役員を務めていたブライアン・プリンス氏（現あおぞら銀行取締役社長）は、平成５年５月より米国ニューヨークにおいてリーマン・ブラザーズ証券でシニアヴァイスプレジデントを務め、その後平成９年９月から平成１２年までの間、リー

マン・ブラザーズ証券東京支店にてアジア部門長を務め、かつ、グルー
プの不動産投資部の長であった人物である（添付資料９の１。なお、「プ
リンシパルトランザクショングループ」は、不動産投資部の当時の呼称
である。）。また、やはりかつて不動産投資部の幹部であったキース・藤
井氏も、当時は新生銀行に在籍していた。そして、ブライアン・プリン
ス氏も、キース・藤井氏も、平成１１年又は１２年当時、再生債務者の
取締役まで務めていたのである（添付資料９の２）。こうした人的なつ
ながりが存在していたことも相まって、新生銀行は、再生債務者のグル
ープ内での位置づけ・機能について、十分に理解していた。

　最終的に、日本におけるリーマン・ブラザーズ・グループのうちで再
生債務者を借入人として新生銀行から融資を受けることとなったのは、
再生債務者が中小企業としての基準を満たす点で新生銀行の上記ニー
ズに合致していたこと、また、再生債務者の立場からは、再生債務者が
グループ内融資機能を有していたことからも適当と考えられたことな
どの理由によるものであった。


　　イ　本件新生ローン契約及びそれに基づく融資の概要


　再生債務者は、新生銀行との間で、平成１５年１２月２５日、融資枠
設定合意書（「Uncommitted Revolving Credit Facility Agreement」）（以
下、その後の変更契約も含め「本件新生ローン契約」と総称する。）を
締結し、平成１６年１月８日、１００億円を借り入れた。
　本件新生ローン契約は、当初、新生銀行から雛形を示され、それを基
に新生銀行と再生債務者の協議の上、締結されたものであった。本件新
生ローン契約の概要及びそれに基づく新生銀行からの融資の概要は以
下のとおりである。

（ア）平成１５年１２月２５日付融資枠設定合意書（「Uncommitted
Revolving Credit Facility Agreement」）及びそれに基づく
１００億円の融資


　再生債務者と新生銀行との間の平成１５年１２月２５日付融資枠設
定合意書の概要は以下のとおりであり（添付資料１０）、本約定書に基
づき、再生債務者は同日付で１００億円の融資枠（ファシリティ）の設
定を受け、平成１６年１月８日、新生銀行から１００億円の融資を受け
た。なお、前述のとおり、この再生債務者に対する１００億円の融資の
提案は新生銀行側から持ち込まれ、リーマン・ブラザーズ・グループと
しても、新生銀行とのビジネス上の付き合いを開始するという目的が主
眼におかれており、再生債務者の具体的な資金需要に基づくものではな
かった。このため、再生債務者は、新生銀行からの融資を受けた直後に、
この１００億円をＬＢＨＩに対する借入金の返済に回している。


- 融資限度額　　　　　　　１００億円
- 資金使途　　　　　　　　借主の一般的な資金需要を満たすため
- 利率　　　　　　　　　　ロンドン銀行間取引金利に０．３５％を加
　　　　　　　　　　　　　えた利率
- 期間　　　　　　　　　　弁済期日は、個別融資実行時に以下のとお
　　　　　　　　　　　　　り定められる：(a)個別の融資時から２４ヶ月以内の期間を、借
　　　　　　　　　　　　　主及び新生銀行が合意により定める、(b)「ロールオーバーオプ
　　　　　　　　　　　　　ション」個別の融資時から３ヶ月ごとに、書面によって期間を伸
　　　　　　　　　　　　　張しない旨の通知がなされない限り、３ヶ月間、期間が伸張され
　　　　　　　　　　　　　る。かかる通知がなされた場合には、弁済期日は前回の伸張によ

る３ヶ月間の最後の銀行取引日となる、(c)期限の利益喪失事由
に該当する事実が生じた場合、即時に弁済期日が到来する。

- 新たな個別融資　　　　融資枠のうち、個別融資により使われてい
ない部分の更新については、新生銀行の全くの裁量により行われ、
新生銀行が必要と考える時に、必要と考える条件（利率、マージ
ン、費用、それらを請求するタイミングを含む。）につき、定期
的見直しが行われる。また、銀行は、借主に対して何ら理由を告
げることなく、個別融資により使われていない融資枠の全部また
は一部を解約ないし停止することができる。

- 担保　　　　　　　　本約定書の締結と同時に、ＬＢＨＩは、本
約定書に基づく借主の支払義務につき、絶対かつ無条件の保証を
行い、新生銀行が満足する書式で保証書を差し入れる。

- 情報提供に関する権利　　　借主は、新生銀行に対し、(i)ＬＢＨ
Ｉ及びその子会社の年次及び四半期毎の連結貸借対照表、事業報
告書及びキャッシュフローに関する報告書、(ii)借主の年次貸借
対照表及び事業報告書、(iii)新生銀行が随時要求する借主のビ
ジネス、オペレーション、資産、負債、事業結果及び見込みに関
する情報、を提供する。

- 必要資料　　　　　　　　融資枠は、新生銀行が借主から以下
の資料を受領した時に利用可能となる。

    - (i)保証書

    - (ii)本約定書の写し

    - (iii)借主の会社設立に関する書類、変更があればそれに
関する書類、及び定款

    - (iv)銀行が合理的にリクエストするその他の書類

　（イ）平成１７年１１月１６日付第一次変更契約及びそれに基づ
　　く追加の７５億円の融資

　再生債務者と新生銀行は、平成１７年１１月１６日付第一次変更契約
に基づき、融資枠の金額を１７５億円、利率をロンドン銀行間取引金利
に０．２０％を加えた利率に変更し（添付資料１１）、これに基づき、
再生債務者は同年１１月２１日、追加で７５億円の融資を受けた。

　なお、この第一次変更契約及び追加の７５億円の融資は、再生債務者
が利率を下げて欲しいと依頼したところ、新生銀行の側から、利率を下
げるのであれば、新生銀行の得る利息収入の総額が減らないよう、融資
金額を増やして欲しいと要請されたことによるのであり、当初の貸付と
同様、再生債務者の具体的な資金需要に基づくものではなかった。

　（ウ）ＬＢＨＪへの借換えの打診

　平成１９年５月以降、同年１０月２４日付第二次変更契約の前までに
は、再生債務者は、新生銀行に対し、再生債務者のグループ内融資機能
をＬＢＨＪに移管することになったため、再生債務者の借入についても
ＬＢＨＪに移管したいという申し入れを行った。これに対して、新生銀
行は、中小企業である再生債務者が借入を受けていることが新生銀行に
とってメリットであり、ＬＢＨＪへの借換えはしたくないという意向で
あった（この点は、新生銀行も「ＳＦとの取引が中小企業取引であると
の認定を受けているのに対し、ＬＢＨＪは中小企業の対象から外れるこ
と」を借換えをしなかった理由としてあげており（甲４４・１０頁）、
認めるところである。）。この点は、新生銀行が、あえて資本金の小さい
再生債務者に対して貸付を維持したいという積極的な意向を有してい

たことを示している。

　また、平成１９年半ばの時点で、再生債務者が、グループ内融資機能
をＬＢＨＪに移管することを新生銀行等に説明し、ＬＢＨＪへの貸付に
切り替えることを申し入れていることは、再生債務者が、自らのグルー
プ内融資機能について金融機関に対して何ら秘匿していなかったこと、
また、新生銀行等が、遅くとも平成１９年までの時点には、再生債務者
がグループ間貸付集約機能を果たしていたことを当然に認識していた
にもかかわらず、特段の異議を述べていなかったことを示す、重要な事
実である。


　　　（エ）平成１９年７月以降の経緯


　再生債務者と新生銀行は、平成１９年１０月２４日付第二次変更契約
に基づき、ファシリティ金額を３００億円、利率をロンドン銀行間取引
金利に０．６０％を加えた利率に変更し（添付資料１２）、これに基づ
き、再生債務者は同日、追加で１２５億円の融資を受けた。また、リー
マン・ブラザーズ・グループが破綻するわずか４ヶ月前の平成２０年５
月２２日には、第三次変更契約に基づき、ファシリティ金額を２５０億
円、利率をロンドン銀行間取引金利に１．４％を加えた利率に変更し（添
付資料１３）、これに基づき、再生債務者は同年５月２８日、新生銀行
に対し、５０億円を返済した。

　その後、再生債務者と新生銀行は、平成２０年８月２６日付第四次変
更契約に基づき、利率をロンドン銀行間取引金利に３．０％を加えた利
率に変更した（添付資料１４）。

　このように、リーマン・ブラザーズ・グループの破綻の直前に至るま
で、新生銀行は、格付けを有していたＬＢＨＩのクレジット・リスクに

着目しつつ、金利や残高を自らの判断で管理していた。


　　ウ　ＬＢＨＩの信用の下に融資がなされたこと


　この新生銀行からの融資に関し、特に注目すべき点として、新生銀行が、再生債務者ではなく、保証人であったＬＢＨＩの信用の下に融資を行ったという点がある。

　すなわち、本件新生ローン契約締結前に、本件新生ローン契約の条件につき協議を行った際、再生債務者と新生銀行は不良債権ビジネスに関して競業関係にあることから（新生銀行自身も、甲４４・別紙１頁①において、同行が当時から不良債権ビジネスの積極的なプレーヤーであり、再生債務者について「相応の情報」を有していたことを認めている）、再生債務者の事業内容は詳しく開示することはできないが、それでも再生債務者に対する融資は可能かとリーマン・ブラザーズ・グループの財務部の担当者が尋ねたのに対し、新生銀行は、「ＬＢＨＩの信用力を見ているので大丈夫」という回答を行っていた。事実、当初の貸付に際し、再生債務者の財務内容に関して新生銀行から最終的に開示を求められたのは、平成１２年１１月期から同１４年１１月期までの３期分の決算書のみであった。新生銀行は、貸付金、大口貸付金明細、貸付金の状況等については再生債務者に開示を求めたにもかかわらず開示されなかったと主張しているが（新生意見書４５頁）、少なくとも、当初貸付実行時にはそのような要請はされていないというのが事実である。また、貸付実行後について、新生銀行からの情報開示の要請に対して限定的な開示しか行えなかったケースは存在したようであるが、それは、上記のような事情に基づくものであり、新生銀行も、このような再生債務者の情報開示方針について十分に認識し、了解した上で、融資を行ったもの

である。新生銀行は、貸付に際し、リスク分析に必要な情報が十分に提供されたとはいえない状況にあったと主張するが（同４５頁）、そうであるならば、融資を行わなければ良いだけのことであり、新生銀行自ら、再生債務者に関しては不十分な情報しか開示されなかったとしているにもかかわらず、融資を実行したことは、再生債務者ではなく、ＬＢＨＩの信用の下で融資が行われたことを裏付けるものである。本件新生ローン契約によれば、新生銀行は個別融資の実行に際して実行するか否かの裁量を有していたのであり、再生債務者に対する貸付を停止するチャンスはいくらでも存在したが、実際には、新生銀行は情報開示について全く問題視することなく融資を継続していた。

　実際にも、ＬＢＨＩによる保証が重要視されていたことは、本件新生ローン契約上、再生債務者に対する１００億円という巨額の融資の担保として要求されているのはＬＢＨＩの保証だけであること、情報開示としても、ＬＢＨＩについては四半期毎の様々な書類の開示が要求されているのに対し、再生債務者については年次の貸借対照表及び事業報告書のみの開示で足りるとされていること、融資の実行条件としてＬＢＨＩによる保証書の差し入れが必要とされていること、などからも客観的に明らかである。

　このように、再生債務者に対する貸付金に関して、ＬＢＨＩの保証が担保となっているのは、新生銀行に限られたことではなく、およそ再生債務者に対して融資を行っていた全ての外部金融機関が、リーマン・ブラザーズ・グループの究極的な持株会社であるＬＢＨＩの保証を取り付けていた。また、こうした外部金融機関にとって、ＬＢＨＩの保証が、貸付金の唯一の担保であった（新生銀行も、物的担保を全く要求しなかったことを認めている（甲４４・６頁））。

　このような新生銀行等の金融機関の態度は、再生債務者は非公開企業

であり、詳細な開示も要求されていないのに対して、ＬＢＨＩは、世界
的な投資銀行グループの持株会社として、格付機関による格付けも取得
した上場企業であり、詳細な開示が要求され、実際に行われてきたこと
を背景としている。そもそも、通常の与信判断として、非公開企業でし
かも不動産業またはノンバンク業に属する再生債務者の信用で、物的担
保も要求することなく、何百億という巨額の資金をわずか０．３５％の
極めて低いスプレッドで融資することはあり得ない。かかる点からして
も、新生銀行（及び他の外部金融機関）による貸付が、ＬＢＨＩの保証
というＬＢＨＩの信用の下になされたものであったことは明らかであ
る。

　ところで、ＬＢＨＩの信用の下に融資が行われたということは、法律
上は、第一には、新生銀行らの金融機関は、ＬＢＨＩの資産が責任財産
として十分であるという認識の下に融資をしたことを意味し、ＬＢＨＩ
の資産の中には、ＬＢＨＩが直接再生債務者に貸し付けた貸付金債権の
みならず、間接的な債権、典型的にはＬＢＡＨの再生債務者に対する貸
付金債権も責任財産としていたことを意味する。すなわち、ＬＢＨＩや
ＬＢＡＨの再生債務者に対する債権が劣後化されるべきであるという
認識は皆無であったことを意味する。また、ＬＢＨＩの信用の下に融資
が行われたことは、第二には、新生銀行らの金融機関は、信義則による
劣後化を通じた要保護性に欠ける再生債権者であることを意味する。前
記第３のとおり、信義則は、具体的な当事者間の関係において成り立つ
規律であるが、新生銀行らの金融機関はもともと再生債務者の資産より
はＬＢＡＨの資産を含むＬＢＨＩの資産を引当財産としていた再生債
権者であるから、ＬＢＨＩやＬＢＡＨの再生債務者に対する債権の劣後
化を期待すべきでない当事者であって、劣後化がされなくても信頼を裏
切られたことにはならず、正当な期待を保護する準則である信義則違反

を主張できる立場にないことを意味する。

　　　エ　再生債務者による情報開示


　　（ア）当初融資前の情報開示


　　新生銀行も認めるとおり、当初の融資前に、新生銀行は、再生債務者
の平成１２年１１月期から同１４年１１月期までの３期分の決算書を
受領している。

　　当然のごとく、これらの書類によって、新生銀行は、再生債務者の資
本金の額（当時１０００万円）、関係会社からの借入金や関係会社に対
する貸付金の存在及びその金額、匿名組合契約に基づく利益分配の実施、
人件費の規模などについて十分に認識していたものである。例えば、平
成１３年１１月期（第４期）の営業報告書では、第１期から第４期まで
の「購入貸付債権投資損益」の金額のみならず、「関係会社営業貸付金
利息」の項目があり、関係会社に対する貸付金につき、例えば第３期で
は約１６億６７４万円、第４期では１８億１６６４万円の利息収入を得
たことが明記されており、このような記載からも、再生債務者がグルー
プ会社に対して貸付を行っていることが判明する。同様に、主要な借入
先として、ＬＢＨＩから約２５８億円の借入を行っていることも記載さ
れている（甲１３の２）。

　　また、これらの営業報告書には、従業員の状況として「当社は、グル
ープ会社からの人的資源の支援のもと派遣された従業員により営業を
行っております。グループ会社からの請求に基づき人件費の計上を行っ
ております」との説明がなされており、再生債務者が、グループ会社か
らの出向社員により営業を行い、グループ会社に対してその人件費の支

払いを行っていることが明らかである。

　匿名組合契約に基づく利益分配に関しても、損益計算書に、「匿名組合契約に基づく損益分配前の税引前当期利益」として５９億７６８７万円余が、「利益分配額」として５２億０６５９万円余が計上されているのであり、およそ９割の利益が匿名組合契約により分配されていることが一見して明白である。なお、この匿名組合契約に基づく利益分配については、新生銀行自身、「負債項目に計上されている未払匿名組合分配金の内容についても、匿名組合契約に基づく未払いの利益分配金」との説明が再生債務者からなされていたとしており（甲４４・３頁）、新生銀行が当時からこれを認識していたことについては争いがない。この匿名組合契約に基づく利益分配は、平成１６年１１月期を最後に実施されなくなっているが（そういう意味では、新生銀行が融資を実行してから行われた利益分配は１度きりであり、新生銀行のその後の融資の更新、新規融資の際には、匿名組合による利益分配は行われていない。）、いずれの年度の利益分配についても損益計算書上明確に記載されており、新生銀行は当時から存在を認識していたにもかかわらず、これまで全く問題視したことがなかったのである。

　こうした経過に鑑みれば、新生銀行との関係で、ＬＢＡＨやＬＢＨＩについて信義則に違反するような事情が認められないことは明らかである。


　　（イ）当初融資実行後の情報開示


　このような融資前の情報開示に加え、再生債務者は、本件新生ローン契約に基づき、①ＬＢＨＩの年次及び四半期毎の貸借対照表及び事業報告などのＬＢＨＩが米国証券取引委員会に対して提出した報告書類を

３ヶ月に１度、新生銀行に送付し（ただし、ＬＢＨＩの財務情報はインターネット等において誰でも入手可能であったことから、特に新生銀行から要求されなかった場合には送付していない。）、②再生債務者の事業年度毎の貸借対照表及び事業報告を１年に１度送付し、さらに、③こうした開示を新生銀行に行うタイミングで新生銀行から寄せられる質問に対しても、事業上の重要な秘密にわたらないものである限り、適宜回答を行っていた。

　こうした再生債務者からの情報開示を通じて、新生銀行は、再生債務者の財務状況等を認識していたものである。

　特に、ＬＢＨＩ及びＬＢＡＨからの貸付に関しては、再生債務者は、平成１７年度の決算書を新生銀行に送付した後、再生債務者に対するグループ内貸付が、それまでＬＢＨＩのみによるものであったのが、ＬＢＡＨによる貸付も行われた理由につき質問を受けている。これに対し、再生債務者から、融資の際の時間的なロスを避けるため、ＬＢＨＩ→ＬＢＡＨ→再生債務者という資金の流れとすることとなったという前記１（３）の背景を説明したところ、新生銀行からそれ以上の質問はなされなかった（この点については、新生銀行も、ＬＢＨＩからＬＢＡＨに借入先が変更した理由を確認し、アジア通貨の調達についてはＬＢＡＨを中心とすることとなったためとの説明を受けたとしており（甲４４・４頁）、認めている。）。

　また、遅くとも平成１８年頃からは、再生債務者は、金融機関からの要請に応えて、口頭で、融資先の上位１０社及び個別の融資額等の概要を開示しており、新生銀行は、再生債務者のグループ会社に対する融資を含む融資先の情報を一定程度認識していた。しかし、これについても、新生銀行から一切問題視されたことはなかった。

　加えて、再生債務者は未払費用につき、新生銀行からその詳細を尋ね

られたことがあるが、人件費及び業務委託費であると説明したところ、
新生銀行は納得し、やはりそれを問題視することはなかった。再生債務
者に所属する従業員が存在せず、再生債務者の業務は別のグループ会社
に所属する従業員及び業務委託によって成り立っていることは、融資を
実行していた金融機関に広く知られた事実であって、新生銀行としても、
この支払いにつき異議を唱えたことはなく、新生銀行も、この点につき、
「ＳＦがリーマングループからの出向者を中心として事業を行ってい
ることは、決算書の記載や、実態面での観察からも承知できた」として
いる（甲４４・５頁）。

　さらに、前記のとおり、再生債務者の貸借対照表や損益計算書の記載
から明らかな匿名組合契約に基づく利益分配についても、新生銀行から
問題視されたことは一度もなく、これは、再生債務者のグループ会社に
対する貸付についても同様であった。新生銀行は、貸借対照表の「営業
貸付金」は、不動産ファイナンス業に関するものと理解していたと主張
している（新生意見書４５頁）。この「営業貸付金」項目には、再生債
務者の不動産ファイナンス業務に伴う貸付金に加え、再生債務者が、グ
ループ内融資機能を有していたことに伴い、不動産事業に直接関連しな
いグループ会社に対する貸付金も含まれていた。しかし、前記のとおり、
再生債務者が新生銀行に対し、ＬＢＨＪへの借換えを打診した時には、
再生債務者は、このグループ内融資機能をＬＢＨＪに移管させることと
なったという理由を説明して借換えを打診しているのであり、遅くとも
平成１９年半ばには、新生銀行は再生債務者がグループ内融資機能を営
んでおり、グループ会社に対する債権を有していることを認識していた
ことは明らかであるが、新生銀行からそれを問題視されたことはなかっ
た。

　以上のように、新生銀行は、こうした再生債務者からの情報開示を通

じて、再生債務者の資本額、ＬＢＨＩ及びＬＢＡＨからの再生債務者に対する貸付金（及びその増減）や、再生債務者のグループ会社に対する融資を含む融資先の情報、匿名組合契約に基づく利益分配、人件費や業務委託費の支払いを認識していた。そして、新生銀行は、当該認識を前提に、平成１９年１０月２９日に至るまで継続的に運転資金の融資を追加実行したばかりか、その後も、本件の民事再生手続の申立てに至るまでこれらを問題としたことは、一度たりともなかったのである。こうした事実は、今般の新生銀行による劣後化の主張が、自らの与信判断の結果として発生した再生債務者及びＬＢＨＩの貸倒れ損失を不当に回避しようとするものであることを、端的に示している。


（５）再生債務者の民事再生手続開始申立て


　平成１９年以降に明らかとなった米国におけるサブプライムローン問題、それに端を発する世界的な株安の影響を受け、ＬＢＨＩは、平成２０年３月〜５月期決算で、平成４年の上場以来、初めて純利益が赤字になり、同年６月〜８月期決算でも赤字になる見通しとなった。この結果、資金調達に困難を来すようになったＬＢＨＩは、先進国の主要金融機関や投資家との増資交渉を行ったものの、実現するに至らず、同年９月１２日には公的支援を要請したものの、その協議も難航し、結局、同１５日、米国ニューヨーク州南部破産裁判所にチャプターイレブンの申請を行うに至った。

　ＬＢＨＩのチャプターイレブンの適用申請に伴い、再生債務者の本件新生ローン契約に基づく借入債務その他ほとんどの取引契約上の債務は期限の利益を喪失し、あるいは契約終了原因を有することとなったため、再生債務者は、事業の継続に著しい支障をきたすことなく債務の履

行を継続していくことができない状況に陥り、平成２０年９月１６日、東京地方裁判所に対して民事再生手続開始の申立てを行った。

　すでに様々な報道において明らかにされているとおり、ＬＢＨＩのチャプターイレブン適用申請は、米国における高度に政治的な駆け引きの結果として直前に決定されたものであり、再生債務者を含むリーマン・ブラザーズ・グループにとっても、寸前まで全く予想していなかった事態であった。一般的にも、リーマン・ブラザーズよりも規模の小さかったベア・スターンズが救済された以上、リーマン・ブラザーズもよもや倒産に至ることはないであろうと思われていた。


２　新生銀行の主張に対する反論


　以上が、本件に関する客観的な事実経過であって、そこには、信義則に違反するような行為はもとより、民事再生手続における債権者間の衡平性に何らかの影響を及ぼすような事情は、微塵も認められない。新生意見書は、本件の客観的な事実経過を歪曲し、自らの主張に都合のよい事実のみを恣意的に取捨選択し、「不当」「搾取」「強制」といった言葉を根拠もなく多用してストーリーを組み立てることによって、あたかも「ＬＢグループ再生債権者１５社」に衡平・公正を欠く行為があったかのように見せかけ、自行に都合のよい再生計画案を債権者集会に付議しようとするものであって、著しく妥当性を欠く内容である。松下意見書及び神作意見書は、こうした新生銀行の主張する事実関係を前提に「ＬＢグループ再生債権者１５社」の有する再生債権が劣後化されるべきである旨を述べているが、前提とされた事実が客観的な事実とは異なった恣意的な脚色や取捨選択を経ている以上、その結論が誤ったものとなることは当然である。事実、実際の事実関係を前提に作成された山本意見

書においては、本件において「ＬＢグループ再生債権者１５社」の再生
債権を劣後化することは違法であると、全く反対の結論が述べられてい
る。そして、本件の事実関係を冷静かつ客観的に観察したとき、山本意
見書の結論が正当であることは明らかである。

　以下、新生意見書の主張内容並びにそれを補強するとされる松下意見
書及び神作意見書の内容の誤りについて、論点ごとに具体的に取り上げ、
個別に反論する。


（１）再生債務者の倒産原因が「再生債務者のグループ内金融子会社
　　　としての側面」に起因するという新生銀行の主張は、全く誤って
　　　いる


　まず、新生銀行は、再生債務者が「ＬＢグループのグループ内金融子
会社」と「不良債権ビジネスを遂行する事業会社」としての「２つの顔」
を有していたとし、このうち前者の顔についてはＬＢＨＩが「支配」し
ていたが、後者の顔については再生債務者自身が全てを自ら行っていた
と主張している（新生意見書１０～１１頁）。そして、再生債務者が破
綻に陥った原因は、「ＬＢグループのグループ内金融子会社としての側
面」に起因するものであり、不良債権ビジネスという事業に起因するも
のではないと総括する。

　しかし、再生債務者が民事再生手続を申し立てるに至った原因は、Ｌ
ＢＨＩのチャプターイレブン適用申請に伴い、申立人の外部債権者に対
する借入債務等について期限の利益を喪失し、あるいは契約終了原因を
有するに至ったためであって、再生債務者がグループ内金融に関与して
いたか否かとは一切無関係である（添付資料１５）。

　そもそも、ＬＢＪ及びＬＢＣＭは、グループ内金融へは直接の関与を

行っていないにもかかわらず民事再生手続の申立に至っているし、他の
日本におけるリーマン・ブラザーズ・グループ関連法人についても、い
ずれも事実上の倒産状態にあるのであって、このような事実関係からみ
ても、再生債務者の倒産原因とグループ内金融機能とは全く関連性が認
められないことは明白である。

　しかも、本件新生ローン契約においても、Guarantor（ＬＢＨＩ）等
について法的倒産手続が開始した場合には、再生債務者の新生銀行に対
する借入債務について当然に期限の利益が喪失されることが明確に規
定されているのであって（添付資料１０）、再生債務者がグループ内金
融機能を有していたことがあたかも倒産の原因であったかのような新
生銀行の主張は、自行に都合のよいストーリーの創作にすぎない。


（２）ＬＢＨＩによって再生債務者の「不当経営支配」がなされた事
　　実はない


　新生銀行は、リーマン・ブラザーズ・グループにおけるグループ内金
融取引を行うに際しては、グループの財務部やＬＢＨＩにおける決定・
承認が必要であったことを取り上げて、「グループ内金融取引について、
再生債務者は一切関与して」おらず、再生債務者には独自の融資決定権
限がなかったと決めつけている（新生意見書１２頁）。

　また、ＬＢＨＩやＬＢＡＨからのグループ内融資に関しては、当該貸
付に関する Facility Agreement について遡求効があることが定められ
ていたことや、借入限度額を超えた借入れがなされた時期があること、
ＬＢＨＩからの借入に関しては取締役会議事録が残っていないこと、さ
らには再生債務者がリーマン・ブラザーズ・グループ全体の会計システ
ムを利用しており、独自のシステムを保有していなかったこと等を指摘

し、「再生債務者の借入行為について再生債務者の自立性は、全く有し
ていなかった」と結論づけている。

　さらに、新生銀行は、再生債務者が行っていたリーマン・ブラザーズ・
グループ関連会社に対するグループ内融資についても、再生債務者の取
締役会が開催されていないこと、平成１８年まで再生債務者の代表取締
役を務めていた者が融資について具体的な報告を受けていなかったこ
と等を取り上げ、これらを根拠に「再生債務者は、ＬＢグループないし
ＬＢＪによる不当支配により、他のＬＢグループ会社の破綻リスクを背
負わされており、自立性は全く有していなかった」と決めつけている。

　しかし、以下に主張するとおり、新生銀行のこうした主張はいずれも
全く失当であるし、そもそも、何故にこうした事実が「ＬＢグループ再
生債権者１５社」の再生債権を劣後化させる事情として斟酌されること
になるというのか、理解に苦しむものである。以下、具体的に論じる。


　　　ア　　ＬＢＨＩが究極的な持株会社として再生債務者の経営に影響
　　　　力を及ぼしていたことに何らの不当性はない


　まず、ＬＢＨＩが再生債務者の株式を間接的に１００％保有していた
ことは紛れもない事実であるし、再生債務者を含めた日本のリーマン・
ブラザーズ・グループ関連会社が、究極的には米国の持株会社であるＬ
ＢＨＩのコントロールのもとで事業を展開していたことも事実である
から、その意味で再生債務者がＬＢＨＩによって「支配」されていたと
いうのは誤りではない。

　しかし、同一の企業グループが、持株会社の意思のもとに統一的に管
理され、一体的な事業展開を行うこと自体が外部債権者との関係で何ら
かの違法性や不当性を基礎づけるという新生銀行の主張には、いささか

の合理性も認められない。持株会社が子会社全体の運営を総合的に考慮
しつつグループ内融資の実行についてコントロールすることが何らか
の違法性・不当性を有するなどという主張は、およそ持株会社を通じた
一体的な事業経営を否定する立場であって、法律的にも、実務的にも到
底受け入れがたい独自の見解である。再生債務者に少数株主が存在した
というのであればいざ知らず、ＬＢＨＩは再生債務者の株式を間接的に
１００％保有しているのであり、新生銀行の主張は、持株会社を通じた
グループの一体運営そのものを否定することにつながるものであって、
失当である。

　なお、ＬＢＡＨは再生債務者の兄弟会社であって再生債務者と間接的
にも親子会社の関係にはないし、他の「ＬＢグループ再生債権者１５社」
についても再生債務者の直接・間接の親会社に該当しないものが多数存
在する。にもかかわらず、いかなる点を根拠にこうした法人までもがＬ
ＢＨＩと同様に再生債務者を「支配」していたといえるのかが明らかで
なく、新生銀行の主張には著しい論理の飛躍がある。


　　　　イ　再生債務者がＬＢＨＩ及びＬＢＡＨからの融資を受けていた
　　　　　ことについては、いかなる不当性も認められない


　新生銀行は、ＬＢＨＩやＬＢＡＨから再生債務者がグループ内融資を
受けていたことに関し、以下の各事実を根拠として、「再生債務者はＬ
ＢグループとりわけＬＢＨＩに強く支配されていたことは極めて明ら
か」であると結論づけている。


①　当初、グループ内融資が契約書を作成しないままに実行されていた
　　が、その後、Facility Agreement について遡求効を定めることによ

って、契約上の手当がなされるに至ったこと

② 契約書が作成された後も、融資限度額を超えた融資がなされた時期
があること

③ ＬＢＨＩからの借入を承認する旨の取締役会議事録が残っておら
ず、取締役会決議がなされなかったと推測されること

④ 再生債務者がリーマン・ブラザーズ・グループ全体の会計システム
を利用しており、独自のシステムを保有していなかったこと


しかし、再生債務者の不良債権ビジネスにしても、ＬＢＡＨらが資金
を投入しなければ実行不可能な事業であり、再生債務者に対してＬＢＡ
Ｈらが融資を実行していたこと自体、何ら不当な側面は認められない。
仮に、こうした融資について会社法上の手続に形式的な瑕疵が認められ
たとしても、再生債務者について倒産原因の発生のおそれがない状況下
においては、直接・間接の株主であるリーマン・ブラザーズ・グループ
関連会社がその点について一切問題視することがない以上、実質的な不
都合があったとは評価できない。仮に、再生債務者がＬＢＡＨらからの
融資について会社法上の手続を履践しようとすれば容易に実行可能で
あったことは明らかであって、いまさら形式的な手続上の瑕疵を問題に
しようとする新生銀行の主張は、いかにも合理性に乏しいものと言わざ
るを得ない。実際、ＬＢＡＨからの借入に関しては、再生債務者は、
Facility Agreement の変更契約について承認決議をとった事実も存在し
ており（甲８の５１・３枚目）、取締役会がＬＢＡＨからの借入を受け
ることについて承認していたことは客観的にも明確である。

また、再生債務者が独自の会計システムを有さず、リーマン・ブラザ
ーズ・グループ前回の会計システムを利用していたことは、国際的な企
業グループの効率的な経営からは当然のことであって、このことが何ら

かの違法性・不当性を基礎づけるような事情となることは常識的に考えられない。新生銀行自身が再生債務者に対する融資実行時から認識していたとおり（甲４４・別紙１～２頁）、再生債務者の財務面・会計面の実務は全てリーマン・ブラザーズ・グループとして一体的に管理されていたのであって、会計システムがグループ一体として管理されていることも当然の前提であり、今回の劣後化の主張を行うまで新生銀行も一切問題視していなかったものである。

　以上に加え、新生銀行は、再生債務者が取締役会決議を経ずにＬＢＡＨらからの借入れを行っていることに関連し、再生債務者は、「このこと（引用者注：取締役会決議を経ていないこと）を認識し得たＬＢグループの届出債権については、債権認否手続において、認めないとの認否をするべきであった」とまで主張している。

　しかし、再生債権の発生原因について再生債務者の社内手続に瑕疵があった場合に、当該再生債権について認めない旨の認否をすべきという主張は、明らかに誤っている。グループ内融資に関する契約書の作成や再生債務者における取締役会決議の形式的決議が欠けていた時期・場合があったとしても、当該融資を受けることについて取締役会において否決される可能性が事実上存在せず、再生債務者自身も当該融資を受けるについて何らの異論がなく、前記のとおり、その修正契約については取締役会における承認決議を得ているような場合に（甲８の５１・３枚目）、当該瑕疵を理由に再生債権の存在が否定されることはあり得ない。そもそも、会社法が一定の業務の決定について取締役会決議を要求している趣旨は、株主価値を最大化するためのコーポレート・ガバナンスの観点にあるのであって、会社債権者の保護とは直接的な関係はないのである。

　実質的に考えても、再生債務者は、ＬＢＡＨからの融資を受けることによって（負債の増加と同時に）貸借対照表上の資産をも増加させてい

るのであり、（不合理な利率で利息が徴収されているようなケースでない限り）グループ内融資を受けること自体が再生債務者の資産内容を悪化させることはない。したがって、内部手続に何らかの瑕疵があることによって生じうる抽象的な危険は、本件のようなグループ内融資を受ける場合には一切現実化しないのである。

　以上のとおり、内部手続の当該融資に関する再生債権を認めないなどという取扱いが再生債務者に義務づけられるという主張が法的にも実質的にも全く合理性を欠く立論であることには、多言を要しない。


　　　ウ　再生債務者がリーマン・ブラザーズ・グループ関連会社に対
　　　　してグループ内融資を実行していたことについては、いかなる
　　　　不当性も認められない


　新生銀行は、再生債務者がリーマン・ブラザーズ・グループに属するＳＰＣに対してグループ内融資を実行していたことに関しても、以下の各事実を根拠として、「再生債務者はＬＢグループとりわけＬＢＨＩに強く支配されていたことは極めて明らか」であって、「他のＬＢグループ会社の破綻リスクを背負わされて」いたと結論づけている。


①　ＳＰＣに対する貸付の実行に関する取締役会議事録が残っておらず、取締役会決議がなされなかったと推測されるなど、内部統制組織の整備義務に違反していたこと
②　平成１８年まで再生債務者の代表取締役を務めていた者が、ＳＰＣに対するグループ内融資が実行される際、具体的な報告を受けていなかったこと
③　グループ内融資については、再生債務者ではなく、他のリーマン・

ブラザーズ・グループ関連会社が事実上の管理・回収を行っていた
こと

　しかし、こうした新生銀行の主張は、再生債務者がＳＰＣに対するグ
ループ内融資を実行するようになった実際の理由や経過を一切無視す
るものであるとともに、そもそも外部債権者の保護とは無関係な会社法
上の内部手続の瑕疵について過大に評価している点で、到底認めがたい
ものである。

　まず、前記１（３）アのとおり、再生債務者が日本におけるリーマン・
ブラザーズ・グループ関連会社において、グループ内融資を管理する役
割を与えられた理由は、何ら再生債務者の外部債権者を害する意図に出
たものではなく、単に、再生債務者が日本において貸金業登録を有して
おり、グループ内融資を管理する役割を与えたとしても規制法上の問題
が生じないと考えられたからである。したがって、あたかもＬＢＡＨ等
が再生債務者の外部債権者を害する意図で再生債務者にグループ内金
融子会社としての性格を与えたかのような新生銀行の主張は、そもそも
実態に反する憶測にすぎない。

　また、前記イのとおり、取締役会決議の欠如などといった内部統制上
の問題については、そもそも内部統制に関する会社法の規制は株主保護
に出たものであって、会社債権者保護は直接の保護法益ではない点から
いって、本件において新生銀行が主張する再生債権の劣後化とは全く無
関係な事情である。実際問題としても、再生債務者の取締役は、再生債
務者がこうしたグループ内融資に関する役割を与えられていることは
当時から十分に知悉していたのであり（例えば、マーク・エヌ・ガベイ、
トーマス・ピアソン、坂野博之らの再生債務者の取締役は、再生債務者
がグループ内融資を行っていたリベルタス住宅ローン株式会社の取締

役も兼任していたのであり（添付資料１６）融資の受け手の立場からも、再生債務者の役割を知っていた。）、仮にこうしたＳＰＣに対するグループ内融資について再生債務者の取締役会に諮られていたとすれば、全て承認されたことが明白である。したがって、仮に内部手続に瑕疵が認められたとしても、グループ内融資がそのような瑕疵に起因して実行されるに至ったわけではないことは明らかであって、新生銀行の主張は全く当を得ないものである。

　さらに、新生銀行は、グループ内融資についての管理・回収を再生債務者自身が実施していないことについても問題視しているが、新生銀行自身が再生債務者に対して融資を実行する時点から知悉していたとおり、再生債務者の財務・経理については経営効率性の観点からすべてリーマン・ブラザーズ・グループ関連会社に外部委託されていたのであって、その点に何らの問題もないことは、新生銀行自身が本件の劣後化の主張に至るまでこれを一切問題視していなかったことからも明白である。

　　　　エ　不良債権ビジネスについてのみ再生債務者の実態があったと
　　　　　する新生銀行の主張は、単なる詭弁にすぎない

　新生銀行は、再生債務者が、グループ内融資については完全にリーマン・ブラザーズ・グループ関連会社にコントロールされていたとしつつ、再生債務者の不良債権ビジネスについては、担保不動産の査定、不良債権の購入、管理及び回収も含めて「実態があった」と主張する。

　このような新生銀行の主張が、再生債権の劣後化との関連でどのような意味を持つのか不明であるが、当然のことながら、不良債権ビジネスについても、リーマン・ブラザーズ・グループとしての一体経営の観点

から、一定の管理監督がＬＢＨＩをはじめとしたグループ関連会社から
加えられていたことは言うまでもない。新生銀行は、ＬＢＨＩのコミット
メント・コミッティーが再生債務者を含むグループ会社が行う金融取
引に関し、取引金額に応じて決定・承認をなしていたことを再生債務者
がグループ内融資につき決定権限がなかったことの根拠として主張し
ているが（新生意見書１２頁）、再生債務者の不良債権ビジネスについ
ても、同じようにＬＢＨＩのコミットメント・コミッティーによる承認
が必要とされているのであり（甲６）、新生銀行の主張は余りにも事実
を無視したご都合主義的なものと言わざるを得ない。また、取締役会の
開催の要否等については、不良債権ビジネスに関する事項であるかグル
ープ内融資に関する事項であるかを問わず、再生債務者から外部委託さ
れたリーマン・ブラザーズ・グループの管理部門が管掌していたし、不
良債権の管理・回収にしても、再生債務者自身が行っていたわけではな
く、効率性の観点から、ほとんどが外部に委託されていた。新生銀行と
しては、再生債務者のグループ内融資に関する活動と、不良債権ビジネ
スに関する活動との相違点を際立たせるために不良債権ビジネスにつ
いてのみ「実態があった」と主張していると思われるが、上記のような
再生債務者の運営体制については、新生銀行をはじめとした金融債権者
も十分に認識していた点である（新生銀行の具体的認識内容については、
後記５にて主張する。）。グループ内融資についても、不良債権ビジネス
についても、再生債務者は、グループとしての一体的な経営管理体制の
もとで「実態のある」活動を行っていたのであって、このことが何ら信
義則に反するとは思われず、金融機関も一切問題視していなかった。


３　ＬＢＨＩによって再生債務者の「不当搾取」がなされた事実はな
い

（１）外部債権者からの借入れが不良債権ビジネスに充てられていた
　　　とする主張は、事実に反するばかりでなく、劣後化の根拠ともな
　　　らない

　新生銀行は、ＬＢＡＨ等からの短期借入金の金額（a）と再生債務者
の営業貸付金の金額（b）は、その増減の傾向が連動しており、ＬＢＡ
Ｈ等からの短期借入金が他のグループ会社への営業貸付金及び匿名組
合出資金として流出していたことが推認できるとしている。また、（c）
外部借入である長期借入金と（d）購入貸付債権の金額が近似している
として、外部金融機関からの借入は不良債権ビジネスに充てられていた
と主張している（新生意見書２３頁）。

　この点、そもそも、上記連動及び近似の存在に関する新生銀行の主張
は、著しく恣意的である。

　すなわち、短期借入金の金額（a）と営業貸付金の金額（b）は、平成
１８年１１月３０日及び平成１９年６月３０日の貸借対照表に限って
は偶然に近似しているものの、それ以外の期末における貸借対照表につ
いては、近似とはほど遠いのが実際である。以下は、各期の貸借対照表
から（a）及び（b）の金額を抜粋してまとめたものである。

| 期 | 期末日 | 関係会社借入金：（a） | 営業貸付金：（b） |
|---|---|---|---|
| 第３期 | 2000.11.30 | 25,306 | 28,196 |
| 第４期 | 2001.11.30 | 23,019 | 33,931 |
| 第５期 | 2002.11.30 | 4,570 | 47,059 |
| 第６期 | 2003.11.30 | 64,390 | 99,907 |

| 第 7 期 | 2004.11.30 | 46,561 | 117,707 |
| 第 8 期 | 2005.11.30 | 141,825 | 166,464 |
| 第 9 期 | 2006.11.30 | 249,248 | 265,002 |
| 第 10 期 | 2007.6.30 | 478,821 | 416,222 |
| 第 11 期 | 2007.11.30 | 256,587 | 155,005 |
| 第 12 期 | 2008.11.31 | 229,519 | 121,339 |

　これによると、たとえば、平成１５年１１月３０日の貸借対照表では、（ａ）は約９９９億円であるのに対し、（ｂ）は約６４４億円である。平成１６年１１月３０日の貸借対照表では、（ａ）が約１１７７億円と前年比で増加しているのに対し、（ｂ）は約４６６億円と減少しており、数字自体も、その変動についても、全く連動していない（その後の変動についても、客観的な連動関係は全く見いだせない。）。新生銀行の主張は、偶然数値が近似していた２年度のみをとらえて恣意的な主張をしていることが明らかであり、全く根拠がない。

　さらに、長期借入金（ｃ）と購入貸付債権（ｄ）の金額の近似については、新生銀行が主張している数字を見ても、平成１８年１１月３０日の貸借対照表では、（ｃ）が約１０６５億円であるのに対し、（ｄ）は約８３６億円、平成１９年６月３０日の貸借対照表では（ｃ）が約８６５億円であるのに対し、（ｄ）が約１３９９億円と、それぞれ約２２９億円、約５６３億円の相違があり、到底近似しているなどと評価できるものではない（その他、一例を挙げるだけでも、平成１６年１１月３０日の貸借対照表においては、（ｃ）は約１０５０億円、（ｄ）は約４１４億円、平成１７年１１月３０日の貸借対照表においては、（ｃ）は約１０１５億円、（ｄ）は約５４２億円と、いずれも（ｃ）が（ｄ）の２倍前後である。）。

　以上のように、数字上の対応関係がないことは明らかであって、新生

55

銀行の主張は明白なこじつけといえる。

　また、仮に金額の連動関係が客観的に認められたからといって、その
ことがＬＢＡＨ及びＬＢＨＩの再生債権を劣後化すべきことにつなが
るという新生銀行の理屈自体が不可解である。すなわち、ＬＢＡＨ及び
ＬＢＨＩからの借入れは、科目上「短期借入金」として分類されている
ものの、実態としては、借入れは長期にわたって継続していたものであ
るから、実質的には「長期借入金」と違いはない。新生銀行は、自らの
融資が再生債務者の不良債権ビジネスに使われると認識していたと繰
り返し主張しているが、本件新生ローン契約においては、資金使途は「借
主の一般的な資金需要を満たすため」と規定されており、不良債権ビジ
ネスに限るといった限定も存在しないのであるから（これは再生債務者
の他の金融機関からの借入についても同様である。）、そもそも再生債務
者として、外部金融機関からの融資をどのように使おうと全く自由であ
った。当然ながら、再生債務者としても、資金の調達先がグループ内融
資であるか外部借入であるかによって使途を区別していたような事実
も意識も全くない。

　いずれにせよ、新生銀行の主張自体が事実に反するばかりか、特定の
借入れが特定の用途に充てられていたとする理屈自体が同行の主張と
の関係で無意味であり、何らの違法性、不当性に結びつくものではない
ことは明らかである。


　（２）平成１９年７月以降のＬＢＡＨからの短期借入金の減少は、Ｌ
　　　　ＢＡＨへの返済に基づくものではない


　また、新生銀行は、平成１９年７月以降に、ＬＢＡＨの短期借入金が
約２０００億円減少していることの不当性も主張している（平成２１年

３月５日付意見書参照。ただし、新生意見書に至ると、この主張は明確にはなされていない。）。しかし、平成１９年７月以降に再生債務者のＬＢＡＨからの短期借入金残高が減少しているのは、前記１（３）ウのとおり、再生債務者からＬＢＨＪにグループ間貸付の集約機能を移管した結果であり（特に、この時の約２０００億円の減少は、ＬＢＣＭに対するほぼ同額の貸付金がＬＢＨＪに移管されたことによるものである。）、ＬＢＡＨが再生債務者から実際に資金を回収できたわけではなく、引き続きＬＢＨＪに対して継続的に貸し付けられていたというのが真実である。新生銀行の示唆するように、景気の悪化に伴うＬＢＡＨのリスク負担軽減という目的の下に行われたものではない。したがって、新生銀行のこの点に関する主張も、事実に反する憶測に基づくものに過ぎない。


（３）再生債務者の利益の源泉が専ら不良債権ビジネスであるという
　　　新生銀行の主張は、客観的に誤っている


　新生意見書２４頁において、再生債務者の売上高の約９割以上を購入貸付債権が占めており、グループ内会社への融資から得られる営業貸付金利息は売上高の１．６～７．９％の水準、匿名組合出資契約に基づく損益分配額（営業外収益）も、売上高対比では６．１％～１０．６％の水準にとどまっているとして、再生債務者においては、その利益の源泉が、再生債務者が自ら行っている不良債権ビジネスにあると結論づけている。
　しかし、そもそも、不良債権を金融機関から仕入れる必要があり、一定の管理・回収コストがかかる不良債権ビジネスと、特段の仕入を要しない貸付や出資とを「売上高」対比で比較して収益性の高低を議論する新生銀行の主張はナンセンスであり、収益性を比較するのであれば、利

益ベースで比較すべきである。

　以下は、再生債務者の損益計算書記載の(i)購入貸付債権回収高から回収原価や費用等を控除した購入貸付債権に係る利益、(ii)営業貸付金利息及び匿名組合出資分配金の金額をまとめたものである。

（単位：百万円）



これらの数字から明らかなように、再生債務者の不良債権ビジネスによる利益は変動が大きく、第５期では不良債権ビジネス単体では損失を計上している。これは、不良債権ビジネスが、購入後にキャッシュフローが実現するために一定程度の期間、それも、債権の性質、経済情勢等に応じてかなり幅のある期間を必要とする類型のビジネスであることに起因する（甲１４の３「営業報告書」）。

　他方、グループ会社への融資及び匿名組合出資から得られる利益は、一旦貸付が行われれば、返済されない限り一定期間毎に利息又は利益分配が得られるという性質上、不良債権ビジネスに比べればはるかに安定

した収益を維持している。両者を比較すると、第５期、第１０期、第１１期及び第１２期では、不良債権ビジネスによる利益を上回っている（なお、上記(i)購入貸付債権にかかる利益の算出に当たっては、販売費及び一般管理費は控除していないが、(ii)営業貸付金及び匿名組合出資分配金に関して支出される販管費はほぼ存在しないであろうことからすると、実際のところ、(i)の金額は、販管費が控除された、より少ない数字になるはずである。）。

なお、新生銀行が開示を受けたとする第３期から第５期までの３期分の決算書に限ってみても、当該期間における(i)の合計額は約７４億円、(ii)の合計額は５４億円であり、「再生債務者の利益の源泉が不良債権ビジネスである」とは到底言えない状況であった。

新生銀行が当初の貸付を行って以降の第７期から第１２期までを通算した場合でも、(i)の合計額は約２８１億円、(ii)の合計額は２６８億円であり、再生債務者の２つの事業はほぼ同額の利益を上げていた。

このように再生債務者は、変動幅の大きい不良債権ビジネスを行う一方で、グループ内会社への融資及び匿名組合出資により、安定して高収益を上げていたというのが客観的な事実である。再生債務者の利益の源泉が、再生債務者が自ら行っている不良債権ビジネスにあるとの新生銀行の主張は、仕入原価や費用を考慮しないというおよそ意味のない数字の操作に基づくものであり、著しく不当な誤導である[7]。

（４）匿名組合契約に基づく利益分配については金融機関に開示されており、何らの不当性もない

---

[7] なお、新生意見書１９頁において、匿名組合契約に基づく利益配分に関して「再生債務者が本業である不良債権ビジネスから獲得した利益のうち合計２８０億４３２５万円もの利益分配が行われている」との記載があるが、匿名組合契約に基づく利益分配が行われていた期間の不良債権ビジネスによる利益額は上記金額よりも少なく、新生銀行の主張は客観的に誤っている。

　新生銀行は、再生債務者とジャパン・インベストメント・パートナーシップとの間で締結されていた匿名組合契約（後に、ジャパン・インベストメント・パートナーシップからＬＢＪに契約上の地位が譲渡されている。）に基づく利益分配についても、これが外部債権者のための責任財産を毀損したと主張する（新生意見書２５頁）。しかし、かかる利益分配は、適法な匿名組合契約に基づき、第３期から第７期までのいずれの期においても、再生債務者の当期の経常利益の範囲内でなされているのであって、それを不当と評価する根拠は不明である（監査法人も、この点を踏まえて監査意見を出している。）。また、第３期から第５期の利益分配に関しては、新生銀行が再生債務者に貸付を行う前に行われており、損益計算書にも記載されていたのであるから、少なくとも新生銀行による貸付け実行との関係でこれらが不当視される理由は全くない。

　そもそも、この匿名組合契約に基づきＬＢＪが利益分配を受けることとなったのは、新生銀行提出にかかる平成２１年６月１０日付「６月５日実施の関係者事情聴取結果についての報告書」においても記載されている通り、当時、再生債務者の代表取締役であった米倉氏が、再生債務者が多額の収益を上げていることがビジネス上のマイナスになると考え、「再生債務者において過大な利益が発生しない形にしてほしいと要請」したことに基づくものであるとされている。このように、ＬＢＪに対する利益分配は、再生債務者側の実務的なビジネス上の要請に基づくものであり、かかる事実から、再生債務者がＬＢＨＩ及びＬＢＡＨに「搾取」されていたとの決めつけには無理がある。

　また、新生銀行は、９０００万円の匿名組合出資金に対し、分配されている利益の金額が大きいことをもって「不当搾取」であると主張するもののようであるが、仮に、匿名組合契約が存在しない場合であっても、

会社財産が分配可能額（配当可能利益）の範囲内で株主であるリーマン・ブラザーズ・グループに配当されることは会社法（旧商法）上自由である。そして、匿名組合契約に基づく利益分配が配当可能利益の範囲内で行われている以上、結局、匿名組合契約に関する新生銀行の主張は、単に出資に対する配当が過大という、いわば「過少資本」という主張を別の形で言うものに過ぎない。そして、「過少資本」であることが、ＬＢＡＨ及びＬＢＨＩの再生債権を劣後させるべき根拠となり得ないことは、以下４において述べるとおりである。

　　（５）配当による利益分配及び人件費・業務委託費の分担についても、
　　　　　金融機関は全て認識しており、実質的にも不当性はない

　さらに、新生意見書２５～２６頁において言及されている、配当や人件費・業務委託費の分担についても、分配可能額（配当可能利益）の範囲内で行う剰余金の配当（利益配当）や、正当な計算根拠に基づく人件費・業務委託費の分担は何ら違法・不当なものではなく、そのことをもって「搾取」と評価される性質のものではない（なお、第８期以降には配当は実施されていない。）。また、前記１（２）のとおり、人件費・業務委託費は、再生債務者の不良債権ビジネス及び不動産ファイナンス業務に関して必要であった費用の正当な支払いであって、これを「搾取」であると評価する根拠も一切ない。

　そして、これらのいずれの支払いについても、再生債務者は、会計監査においても、特段の指摘を受けたこともなく、税務当局からも問題とされたことがない。

　なお、新生銀行は、リーマン・ブラザーズ・グループが、再生債務者の貸付先であるエル・ビー・シー有限会社及びリベルタス住宅ローン株

式会社から、業務委託費として、それぞれ８億０２００万円及び５億３
２００万円を受領したことについても指摘している（新生意見書２６～
２７頁）。しかし、上記同様、正当な業務委託費の支払いが「搾取」に
該当することはあり得ない。

（６）再生債務者に対して「損失引受強制」がなされた事実はない

　新生銀行は、リーマン・ブラザーズ・グループは、自らの利益を保持
するために、再生債務者を通じて、不当に、外部債権者に対し、破綻リ
スク及び損失を転嫁しながら、自らの財産については累が及ばないよう
な措置を講じていると主張し、ＬＢＦＪを通じたグループ会社の費用の
立替払い、ＬＢＣＭの利益保持のための貸付及び債務付け替え、ＬＢ
ＣＭの債権回収のための担保提供やＬＢＣＭの債権保全のための損害担
保契約締結、格付けの低い有価証券の取得、回収不能の営業貸付の実行
などにつき、縷々主張している（新生意見書２７頁以下）。
　個別の主張に対する反論は以下に述べるとおりであるが、仮に再生債
務者が、個別の取引について、他のグループ会社のためにリスクを負っ
ていたとしても、グループ会社同士で、グループとしての利益向上のた
めにお互いにリスクを負担しあうこと自体に何ら不当性は認められな
い。新生銀行は、一見すると、再生債務者が他のグループ会社のために
一方的にリスクを負担しているように見える個別の取引のみを恣意的
に取り上げ、さも再生債務者が常にグループ会社のリスクを負担してい
たかのような主張をしているが、それ自体、何ら証拠に基づかない憶測
に過ぎない。また、百歩譲って仮に再生債務者が他のグループ会社のた
めにリスクを負担することが多かったとしても、それにより再生債務者
の財務状態が悪化すれば、ＬＢＡＨやＬＢＨＩなどのグループ会社から

必要な融資を受けることが当然の前提とされていたのであり、少なくと
もかかるリスク負担が外部の債権者にリスクを転嫁する目的で行われ
たことはあり得ない。新生銀行は、再生債務者の再生手続申立直前に、
再生債務者がグループ会社の損失を引き受け、リーマン・ブラザーズ・
グループが「不当な搾取」を行ったような主張をしているが、そもそも、
再生債務者を含めたリーマン・ブラザーズ・グループが破綻するなどと
いうことは、その数日前までリーマン・ブラザーズ・グループ自身を含
めて誰も予想だにしていなかったのであり、この点からも、「不当な搾
取」などなかったことが明らかである。

　　　ア　ＬＢＦＪを通じたグループ会社の費用の立替払い

　新生銀行は、リーマン・ブラザーズ・グループがＬＢＦＪを通じてグ
ループ会社の費用の立替払いを行い、再生債務者がＬＢＦＪに融資して
いたことをもって、「不当搾取」であると主張する（新生意見書２８頁）。
　ＬＢＦＪを通じたグループ会社の費用の立替払いという点に関して
は、ＬＢＦＪが、日本におけるリーマン・ブラザーズ・グループ各社の
取引業者の契約当事者となり、各種経費につきまとめて支払ったり、グ
ループ各社のオフィスや社員の住宅のリースなどの支払いを行ってい
たことは事実である。これは、多数のグループ会社が個別に各種経費の
契約及び支払いを行うよりもそれを１社にまとめた方が効率的である
という合理的な理由に基づくものである。そして、その資金につき、グ
ループ内融資機能を有していた再生債務者が融資を行うことも自然な
流れである（グループ内貸付機能をＬＢＨＪに移管した後も、ＬＢＨＪ
からのグループ会社に対する貸付けは、貸金業法を遵守する観点から、
ＬＢＨＪの子会社及び孫会社に限られていたため、デラウェア法人であ

ったＬＢＦＪに対する貸付は再生債務者に残ることになったと推測される。）。

　また、第１１期（平成２０年１１月期）におけるＬＢＦＪの関係会社未収入金は、ＬＢＪに対して約２８３億６１２９万円、ＬＢＡＨに対して７６億７４６４万円（甲２０の３）と、その大部分が貸し倒れの懸念がないと考えられていたリーマン・ブラザーズ・グループの中核となっている大規模な会社に対するものであり、従って、ＬＢＦＪとしては、かかる貸付が回収できない事態などおよそ想定していなかったのだから、再生債務者のＬＢＦＪへの融資が「不当搾取」などと言われる筋合いはない。

　そもそも、新生銀行は、再生債務者がグループ内融資機能を有していることを認識していながら、これに対して何ら異議を述べていなかったことは前記のとおりであり、この点からしても、再生債務者のＬＢＦＪに対する融資が「不当搾取」として、ＬＢＨＩ及びＬＢＡＨによる信義則違反を根拠付けるとは考えられない。

　なお、新生銀行は、ＬＢＦＪが有限会社ダックホーンに対して納税資金の立替払いを行っていることを根拠に、有限会社ダックホーンが再生債務者に対する再生債権は、実質的には再生債務者のＬＢＦＪに対する営業貸付金と相殺されるべきであり、その観点からも劣後化されるべきと主張しているが、このような議論は法人格否認の法理の適用でもない限り不可能であることは、改めて指摘するまでもない。


　　イ　ＬＢＣＭの利益保持のための損失強制との主張について


　加えて新生銀行は、ＬＢＣＭの利益保持のために、再生債務者に対し、①債務の付け替え、②損害の担保、③不良有価証券の取得をさせること

により、そのリスク及び損失を負担させていたと主張する（新生意見書
２７頁以下）。これら個別の取引に対する反論は、以下に述べるとおり
であるが、そもそも、前述のとおり、リーマン・ブラザーズ・グループ
における不動産投資業務は、不動産投資部が担当しており、その事業を
具体的に運営するための法人格として、再生債務者及びＬＢＣＭが存在
していた。したがって、再生債務者及びＬＢＣＭは、不動産投資部の管
轄下で、総合的に利益を最大化することを目的として運営されてきた。
このような事業運営は、グループ会社の運営としては、極めて合理的な
ものであり、それ自体、何ら不当性を帯びるものではない。このような
背景から、リーマン・ブラザーズ・グループの不動産投資部が取り扱っ
た多くの取引において、再生債務者とＬＢＣＭの両方が関与しているの
であって、再生債務者がＬＢＣＭに対して便宜を供与した格好となって
いる特定の取引だけを取り上げ、一方的に再生債務者だけが損失を引き
受けさせられていたかのような新生銀行の主張は当を得ないものであ
る。また、このように、再生債務者及びＬＢＣＭが、リーマン・ブラザ
ーズ・グループの不動産投資部により一体的に運営されていることは、
公知の事実であり、新生銀行を含む不動産投資業務に関わるプレーヤー
は、このようなリーマン・ブラザーズ・グループの事業運営スタイルに
ついても、十分に認識していたものである（当初、新生銀行に対する融
資が協議されていた際、以前リーマン・ブラザーズ・グループの不動産
投資部の長であったブライアン・プリンス氏が新生銀行の執行役員であ
ったことは前記１（４）アのとおりである）。

　従って、仮に、個々のプロジェクト毎に見た場合に、再生債務者がＬ
ＢＣＭのリスク及び損失を負担している場合があったとしても、再生債
務者の事業運営について熟知していた新生銀行が、今に至ってそれが不
当であるとか、再生債務者が搾取されていたなどと後付けの理屈を主張

することは許されず、少なくとも、信義則違反を根拠付けることはない。

　　　（ア）債務の付け替えについて

　新生銀行は、再生債務者による虎ノ門キャピタルに対する貸付及び債務付け替えにつき、貸付自体、ＬＢＣＭの債権回収の一環としてなされた疑いが極めて高いとし、債務付け替えは、再生債務者の回収可能性を低下させる危険性が極めて高いもので、これらの取引は外部債権者の責任財産を毀損する不当搾取であると主張している（新生意見書２９～３０頁）。

　しかし、そもそも新生銀行が、再生債務者の虎ノ門キャピタルに対する貸付がＬＢＣＭの債権回収の一環としてなされた疑いが高いとする根拠は、虎ノ門キャピタルが問題となっている不動産の所有権を取得した日に、同不動産に対するＬＢＣＭの抵当権が抹消されているということだけであり、憶測の域を出ない主張である。

　また、虎ノ門キャピタルからクレアスアセットに対する債務付け替えについては、これを行うことで、①虎ノ門キャピタルから２億円の弁済を受けることに成功していること、②同じ不動産に抵当権を設定していること、③これにより、抵当不動産の一括売却が図られ、回収の極大化につながること、などから、監督委員の同意を得た上でこれを行っているものであり、債権の回収可能性を無視しているどころか、債権の回収を極大化するために行った合理的な取引であることが明らかである。新生銀行は、再生債務者が記載した付加的な理由と思われるＬＢＣＭの保有する債権の回収可能性という１点を取り上げ、かかる取引はあたかもＬＢＣＭのために行われたかのような主張をしているが、全く事実に反するものである。

　（イ）損害の担保について

　新生銀行は、再生債務者及びＬＢＣＭ間で、損害担保契約を締結して
いることをもって、ＬＢＣＭの債権保全のために再生債務者に損失引受け
を強制していることの表れであると主張する。どのような経緯でかかる
損害担保契約が締結されたのかについては、現時点で明らかではないが、
そもそも、同契約に基づき実際に再生債務者が損失を被ったとの主張は
行われておらず、これを根拠に再生債務者に損失引受けが強制されてい
るとするのは失当である。

　また、新生銀行は、（i）再生債務者はヨセミテに対して５０億５８０
０万円を貸し付け、（ii）ヨセミテはこの資金を利用して株式会社クロッ
ク（以下「クロック」という。）に対し、４９億円の貸付及び１億４５
０万円相当のクロック株式を取得し、（iii）クロックはこの資金を原資
として、クレアスライフの株式７０パーセントを取得し、他方、（iv）Ｌ
ＢＣＭがクレアスライフに対して有する約５３億円の貸付債権の担保
として、ヨセミテが保有するクロック株式が差し入れられているとし、
ヨセミテに対して債権を有する再生債務者がヨセミテの保有するクロ
ック株式を担保に取っていないことは、再生債務者がＬＢＣＭの利益の
ために損失引受けを強制されていることの表れと主張する（なお、スト
ラクチャー図（添付資料１７）によれば、ＬＢＣＭが担保に取っている
のは、ヨセミテの有するクロック株式ではなく、クロックの有するクレ
アスライフの株式である。）。

　本取引は、ストラクチャー図に記載されているように、非常に複雑な
取引のほんの一部分であり、その全体像が明らかでないため、実際の再
生債務者及びＬＢＣＭのそれぞれのリスク状況は不明である（ストラク

67

チャー図には、そもそも再生債務者のヨセミテに対する貸付も記載され
ていない。）。従って、新生銀行の提出した証拠をもって、上記(i)ない
し(iv)が立証されているとはいえず、新生銀行の主張は証拠に基づかな
いものである。

　また、仮に上記(i)ないし(iv)が立証されたとしても、前述のとおり、
リーマン・ブラザーズ・グループの不動産投資部において、様々な利益
を考慮した上で、かかるストラクチャーを採用したものと思われ、グル
ープ会社で、グループ会社としての利益の極大化を図ることはむしろ合
理的であり、この１つの取引のみをもって再生債務者がＬＢＣＭのため
に損失を引き受けているとすることには無理がある。


　　　（ウ）不良有価証券の取得について


　　新生銀行は、再生債務者が、平成２０年３月、ＬＢＣＭからＬＪＡＣ
債を総額３２３億円分購入し、その後、１２３億１千万円分をＬＢＣＭ
に対して売却したことをもって、ＬＢＣＭの利益のために再生債務者が
損失の引受を強制された例と主張する。

　　しかし、もともと、ＬＢＣＭから再生債務者がＬＪＡＣ債を購入した
経緯は、ＬＢＣＭが投資家に販売しようとしていたＬＪＡＣ債について
法律事務所からいわゆる真正売買意見書を取得するために、一時的に再
生債務者がこれを引き取ったものであって、速やかに投資家に対して販
売することが予定されていたものである。また、その後、一部をＬＢ
ＣＭに対して売り戻しているのは、表明保証等の関係から、オリジネー
ターであるＬＢＣＭから直接購入したいとの投資家の要望に応じ、あらた
めてＬＢＣＭに対して売却したという経緯である。したがって、残りの
ＬＪＡＣ債も、継続して再生債務者において保有し続ける予定ではなく、

「損失引受強制」などと評価される理由は全くないものである。

　　ウ　回収不能の営業貸付の実行

　加えて、新生銀行は、ヨセミテ、有限会社スノーバード、有限会社アルゴ、有限会社ペルセウス、有限会社バーゴに対する営業貸付につき、再生手続開始日に近接する時期になされているとして、あたかも再生債務者が、自らの資金を不当にグループ会社に倒産直前に流したかのような主張を行っている（新生意見書３３頁）。

　しかし、これらの各社に対する貸付は、再生債務者の不動産ファイナンス業務の一環として実行されたものであり（例えば、ヨセミテに対する５０億円の貸付は、前記のストラクチャーにおいて再生債務者が貸し付けたものである）、再生債務者のグループ内融資機能とは無関係である。また、貸付時期も、いずれも平成１９年１１月末までに行われており、再生債務者は、平成２０年９月の再生手続開始申立直前まで、リーマン・ブラザーズ・グループが倒産しようとは想像すらしていなかったことに鑑みれば、損失を引き受けようなどという意図がなかったことは明白であり、新生銀行の主張は全く事実に反する。

　（７）小括

　新生銀行は、新生意見書において、利益移転の合計額が４３０億円にのぼることを主張する。しかし、個別の資金の流れ毎にその適法性、相当性を検討せずに、この金額自体を議論することには何らの意味はなく、上記のように個別に検討すれば、いずれも「搾取」の根拠となるような違法、不当なものではないことは明らかである。

　また、新生銀行の主張する「損失引受強制」なるものも、グループ企業の合理的な運営に伴う正当な行為であって「強制」などという評価はあたらないし、その多くは新生銀行を含めた金融機関にとって予測可能なものであり、やはり違法・不当の問題を生じるような性質の行為ではない。

　以上のとおり、総合的に見て、ＬＢＡＨないしＬＢＨＩによって再生債務者が搾取されていたという事実は一切ないし、仮に、新生意見書において新生銀行が主張する利益移転や損失の引受が全て真実だったとしても、そこから直ちに不当経営であるとか搾取であるとかいった評価を下すことには、およそ無理がある。

4　再生債務者の資本金額が負債総額に比して小さいことは再生債権の劣後化を何ら基礎付けない

（１）再生債務者が有限責任制度を濫用したとの新生銀行の主張は、会社法の原則を無視したものである

　新生銀行は、「支配株主が、従属会社の事業のリスクを合理的な範囲で引き受けていないにもかかわらず、・・・破綻に際しては、株主としての責任を極めて限定された小さな範囲のみでしか負担せずに、・・・他方で、一債権者として外部債権者と同様の扱いを要求することは、衡平の理念に反し、有限責任制度の濫用として、信義則に違反するものである」と主張する（新生意見書３４頁）。

　しかし、親会社等が子会社の事業リスクを出資の形で引き受けるべきであるとする論拠が不明であるばかりか、引き受けるべき「合理的な範囲」が全く明らかにされておらず、その主張は著しく不明確である。

　新生銀行は、有限責任制度の濫用であるという主張の前提として、平成17年に立法された会社法において最低資本金規制が撤廃されたことを捉え、資本政策について「より自由な設計が認められるようになった以上、事後規制、事後的な保護の要請は高まっている」と主張し、さらに、「過少資本状態の従属会社の外部債権者のリスクは、従属会社の倒産の局面において顕在化するのであるから、まさに、この局面において、従属会社の外部債権者に対する法的保護が重要となる」と主張する（新生意見書35頁）。

　しかし、会社法のもとで最低資本金規制が撤廃されたことは、端的に、有限責任の根拠を資本の原則に求めていた従来の考え方を、債務者の資産内容の開示とこれに基づく債務者の自己責任に求める旨改めるという制度変更が行われたことを意味するものと考えるべきである。すなわち、会社法制定時の立法担当者は、旧法の「『資本』は会社財産の維持機能を有しておらず、したがって『資本』の会社財産の維持機能を前提としなければ債権者保護との関係を導き得ない資本の各原則（資本確定、資本維持・充実、資本不変）を強調せず、これらが債権者保護との関係で役割を果たしているとは考えない」として、「現実の債権回収の担保は、債権者による監視または特別の契約等に委ねているわが国の会社法制において、債権者保護は、開示の充実による債権者の自己防衛に期待せざるを得ない。したがって、このような観点からの開示制度の充実を図る」ものと述べている（添付資料18・42頁下段〜43頁中段）つまり、会社法のもとにおいては、債権者保護は、債務者による開示の充実によって可能となる債権者の自助努力によって実現されるべきものであって、資本政策の自由化は事後規制、事後的な保護の必要性を基礎付けないのである。仮に何らかの保護が必要だとしても、それは立法に

よって行うべきであるが、前述したように、企業結合法制の見直しについても、産業界、金融界の同意が得られないこともあって立法化が断念されている。

　よって、これと整合しない新生銀行の主張は、有限責任制度に関する重要な制度変更を無視した議論であり、立法によって解決すべき問題を裁判所が立法化しろというに等しく、再生債務者の行為が有限責任制度の濫用であるという主張には何ら理由がない。


（２）過少資本税制の適用により借入金の一部が資本とみなされるものとする新生銀行の主張は明らかな誤導である


　新生銀行は、過少資本税制とは「国外支配株主等からの資金調達の形態が、形式的には借入金・・・であっても、実質的には<u>出資金・・・とみなす</u>べきものである場合には、当該借入金に対する支払利息の損金算入は否認される」制度であるとの理解を前提として（新生意見書３６頁）、再生債務者が、平成１６年１１月期から６期にわたり、過少資本税制によりＬＢＡＨ及びＬＢＨＩに対する利息金の支払いを自己否認している点を捉え、「再生債務者が過少資本に陥っていることを税務上の見地から裏付ける事実」であると主張する（同頁）。

　しかし、このような主張は、過少資本税制に関する正確な理解に基づかないものである。すなわち、過少資本税制の根拠条文である租税特別措置法同法６６条の５第１項は、「内国法人が、・・・各事業年度において、当該内国法人に係る国外支配株主等又は資金供与者等に負債の利子等を支払う場合において、当該事業年度の当該内国法人に係る国外支配株主等及び資金供与者等に対する負債に係る平均負債残高が当該事業年度の当該内国法人に係る国外支配株主等の資本持分の三倍に相当す

る金額を超えるときは、当該内国法人が当該事業年度において当該国外
支配株主等及び資金供与者等に支払う負債の利子等の額のうち、その超
える部分に対応するものとして政令で定めるところにより計算した金
額は、当該内国法人の当該事業年度の所得の金額・・・の計算上、損金
の額に算入しない。」と定めており、同条項の文言によれば、当該制度
は、課税所得の計算に必要な限りで、一定の利息金支払いを税引前利益
に繰り入れることを求めるにとどまる。この点は、新生銀行も、同制度
が「海外の関連企業から過大な貸付けを受け入れることによる企業の租
税回避を防止するため、出資と貸付けの比率が一定割合を超える部分の
支払利子に損金算入を認めない」（新生意見書３６頁）制度である旨を
述べ、認めるところである。

　これに対し、損金不算入とした利息金の割合に対応する貸付金を資本
とみなす旨の規定はどこにも見当たらないし、課税所得の計算をするに
あたって、その必要性が全くないことも明白である。この点は、損金算
入されなかった利息金を受け取った者の当該収入に対する課税の税率
が、配当収入としての税率ではなく、あくまで利息金収入としての税率
であることとも符合している。また、同法の他の条文や法人税法等の他
の法令を見ても、過少資本税制の適用を受ける利息金に対応する借入金
を資本とみなす旨の規定は、どこにも存在しないのである。さらに、も
し新生銀行の主張が普遍的に成り立つならば支配会社が内国法人の場
合にも過少資本税制が適用されるべきところ、そうはなっていない。

　よって、過少資本税制上の措置をもって借入金を資本金とみなすべき
との新生銀行の主張は、全く論拠を欠いたものである。同主張は、過少
資本税制に対する明らかな誤解に基づくものであるか、さもなくば、資
本とみなされる再生債権は劣後化されるべきであるという自己に有利
な結論を強引に導き出すための我田引水的なものである。まして、本件

において再生債務者が単に課税上の都合から利息金の一部を損金算入しなかったという事実が、ＬＢＡＨ及びＬＢＨＩの再生債務者に対する再生債権が劣後化される根拠となることはありえない。

　また、前記第３で述べたとおり、過少資本税制は「法律」によって定められているものであり、このことは「法律」によらなければ、貸付金を資本「的」に取り扱うことが許されないことを示しているのである。


　（３）再生債務者が自ら過少資本税制の適用を受けることを選択した
　　　かのような新生銀行の主張は極めて恣意的な誘導である


　新生銀行は、再生債務者が過少資本税制に従いＬＢＡＨへの利息金の損金算入を「自己否認」したことについて、「再生債務者が自ら、ＬＢＡＨの債権の９０パーセント以上を借入金ではなく資本とみなしていた」などと表現し（新生意見書２０頁）、あたかも再生債務者が自発的に資本金が過少であることを認めていたかのような主張を展開する。

　しかし、再生債務者による自己否認の措置は、租税特別措置法が定める納税義務に従ったに過ぎないものである。すなわち、仮に再生債務者が損金計上できない範囲の利息金まで損金に算入して税務申告を行ったならば、当該損金算入は過少資本税制の制度に基づき税務当局によって当然に否認されるのであるから、結局再生債務者には、損金不算入の措置をとることにつき、なんら選択の自由がなかったのである。

　よって、再生債務者による自己否認をあたかも自発的な措置であるかのように述べる新生意見書の主張は、極めて恣意的な誘導というべきものである。


　（４）再生債務者による過少資本税制に基づく自己否認が過大な税負

74

担を生じたとする新生銀行の主張は明らかに誤っている

　新生銀行は、財務会計上の処理と税務上の処理との間に食い違いが生じる項目の分類として「永久差異項目」と「期間差異項目」とを対置させた上で、「合理的な会社運営を行うためには、永久差異項目の発生を極力抑えることが必要であ」るにも関わらず、再生債務者が過少資本税制に基づき借入利息金を損金不算入としたことにより、永久差異項目を生じさせたことをもって、再生債務者に「過大な納税負担・・・が生じているにもかかわらず、敢えてＬＢＡＨから流入した資金を資本ではなく借入金として取扱」ったと主張する（新生意見書２０～２１頁）。

　しかし、仮に（新生銀行の要求するとおりに）ＬＢＡＨの再生債務者に対する貸付金の全額をＬＢＡＨが出資していたと仮定して考えた場合、再生債務者はＬＢＡＨに対して利息金の支払いをしないのであるから、当該利息金額だけ再生債務者の課税所得は増加することになり、結局、再生債務者の税負担はかえって大きくなる。そして、その金額が過少資本税制に基づく税負担増よりも大きいものであることは明らかである。

　よって、再生債務者がＬＢＡＨから借入を行ったことによって再生債務者に「過大な納税負担」を生じさせたかのような新生銀行の主張は、明らかに誤っている。まして、「本来であれば支払わなくて済むはずの納税負担により外部債権者の責任財産である債務者所有財産を毀損」した（新生意見書２１頁）などと評価ができるはずもなく、新生の主張は過少資本税制に対する無理解に基づく、明らかに誤ったものであるというほかない。

　いずれにせよ、新生銀行は、再生債務者の資本金の額についても、ＬＢＡＨないしＬＢＨＩからの借入金の額についても、当初から完全に把

握し、その上で貸付を継続的に実行してきたのであるから、こうした主
張がご都合主義に基づくものであることは一目瞭然である。


（５）小括


　以上で述べたとおり、再生債務者の資本金が負債（または借入金）総
額に比して小さいという事実は、再生債務者が有限責任制度を濫用した
という事実を何ら基礎付けるものではないし、再生債務者が過少資本税
制に基づいて借入利息金の一部について損金不算入の措置を取ったこ
とは、単に課税金額の計算上の必要性に基づくものであって、何ら再生
債務者に損害を生じるものでないのであるから、これらの事実はＬＢＨ
ＩやＬＢＡＨをはじめとする「ＬＢグループ再生債権者１５社」の信義
則違反を全く基礎付けず、およそ再生債権の劣後化の根拠となりえない
ことは明白である。そして、これに反する新生銀行の主張は、明らかな
誤解に基づくものであるか、極めて恣意的な誘導にすぎないものである。
　なお、新生銀行は、過少資本に関する主張の小括において、仮にリー
マン・ブラザーズ・グループが、再生債務者を経由せずにグループ内会
社に直接融資していれば、グループ内各社の無資力リスクはリーマン・
ブラザーズ・グループが負うことになり、外部債権者がこれを負担する
ことはなかった旨主張しているため（新生意見書３７頁）、念のため付
言するが、再生債務者は、貸金業登録の関係から日本においてグループ
内融資機能を与えられていたにすぎないのであって、その点に外部債権
者に対する加害の意図がないことは明白であって、新生銀行の主張が当
を得ないものである。この点は前記１（３）アで述べたとおりであり、
改めて多言を要しないと考える。

5　新生銀行をはじめとする外部債権者は、再生債務者の状況を十分
　に認識した上で、高度な与信判断の結果、ＬＢＨＩの信用を基にし
　て融資を行っているのであり、この点からも信義則に基づく劣後化
　が認められる余地はない

　このように、新生銀行が主張する「不当経営支配」「不当搾取」「過少
資本」などの事実は認められず、本件でＬＢＨＩらに信義則に抵触する
ような行為が一切存在しないことは、前述のとおりである。

　これに加え、新生銀行を始めとする外部債権者は、再生債務者の状況
を十分認識し、金融機関としての高度な与信判断に基づき、ＬＢＨＩの
信用を基にして融資を行っているのであって、かかる点からしても、信
義則違反が認められる余地はない。

　すなわち、前記１（４）エ（ア）で述べたとおり、新生銀行は、当初
の融資を受ける前に、再生債務者の過去３期分の決算書を受領しており、
再生債務者の資本金額はもとより、関係会社からの借入金や関係会社に
対する貸付金の存在及びその金額、匿名組合契約に基づく利益分配、人
件費などにつき、十分に認識していたものである。新生銀行は、新生銀
行が捕捉できないところで、再生債務者がＬＢグループ関連ＳＰＣへの
金融取引としての貸付を行っていたと主張しているが（新生意見書４６
頁）、前述のとおり、再生債務者がグループ内融資機能を営んでいたこ
とは、新生銀行が当初の融資前に受領した第４期の営業報告書の「関係
会社営業貸付金利息」との記載によっても客観的に明らかであり、リー
マン・ブラザーズ・グループとしてこの点を秘匿していた事実はないし、
また、遅くとも平成１９年１０月までには、かかる機能のＬＢＨＪへの
移管に伴い、融資をＬＢＨＪに切り替えて欲しいという打診の際、説明
しており、これを知らなかったとする新生銀行の主張はおよそ事実に基

づかないものである。

　また、再生債務者が、専属の従業員のいない会社であり、グループ会社の一つとして統一的に運営されていたことは、貸付を実行していた各金融機関に周知の事実であり、特に新生銀行のように不良債権ビジネスの分野で再生債務者と競合関係に立っていたプレーヤーにとっては当然のこととして受け止められていた（そもそも、本件新生ローン契約の担当者は、ずっと、再生債務者ではなく、リーマン・ブラザーズ・グループの財務部所属の従業員が担当していた（甲４４）。）。

　これに対し、新生銀行は、再生債務者に対する貸付に際しても、リスク分析に必要な情報が十分に提供されたことはないと主張している（新生意見書４５頁）。しかし、リスク分析に必要な情報が十分に提供されていないと、真実、新生銀行が判断したのであれば、金融機関として１００億円という巨額の融資（しかも、その後継続的に増額を繰り返している。）を行うことなどあり得ない。このような新生銀行の主張は、実際のところは、再生債務者の信用ではなく、保証人であったＬＢＨＩの信用の下に貸し付けたという与信判断を後付けの理由で捻じ曲げようとした結果としか考えられないものである。仮に、新生銀行がＬＢＨＩの信用力を考慮せずに、再生債務者の事業内容のみに着目して無担保で数百億円もの貸付を実行していたとすれば、それこそ銀行の与信判断として大きな問題があったと評価せざるを得ない。

　また、新生銀行は、信義則に基づく劣後化は、支配会社と従属会社との間の客観的事情により決せられるものであり、外部債権者のリスク分析に伴う主観的事情は、劣後化の要否と無関係であると主張する（新生意見書４３頁）。しかし、そもそも信義則違反の判断は、具体的な事実関係の下で、全ての事情を総合的に考慮してなされるものであり、その事情の一つとして、劣後化により有利な取扱いを受けることになる外部

債権者のリスク分析が考慮されるべきことは当然である。この点に関連して、新生銀行は、劣後化の理論は「支配会社」と「従属会社の外部債権者」との関係を、「株主」と「債権者」の関係とみなすべき理論であり、「株主」と「債権者」との関係において、「債権者」がいかなるリスク分析を行っていたかということは無関係と主張する（新生意見書４４頁）。しかし、ここで問題としているのは、支配会社の「債権」と外部債権者の「債権」の関係を、「株式」と「債権」の関係とみなすことが許されるのかという問題であり、かかる問いの検討の際、外部債権者が債務者の実態や支配会社と債務者の関係、支配会社の債権の内容等についてどのような情報を得ていたかということが総合的に考慮されることになるのは当然である。新生銀行の主張は単なる論理のすり替えであり、まったく失当である。

　以上のとおり、新生銀行は、今になって「不当経営支配」「不当搾取」「過少資本」などと主張する事実につき、十分に検討し、その上で融資を行い、その後も何度にも亘る融資金額の増額を行ったり、金利を変更することで、その時々のリスク判断に基づいた利息収入を得てきた。本件新生ローン契約は、当初定めた弁済期後は、３ヶ月ごとに終了させることが可能だったのであり、新生銀行は、再生債務者の状況や情報開示に不満であれば、いつでも終了させることができたのである。にもかかわらず、新生銀行は、その時々の与信判断に基づき、自ら再生債務者に対する融資を継続してきたのであって、この期に及んで、当時から十分に認識していた事情に基づき、劣後化を主張して有利な弁済を受けようともくろんでいるのであって、金融機関の態度として極めて不当である。


６　「ＬＢグループ再生債権者１５社」の債権をひとくくりにして劣
　　後化すべきとの主張は失当である

（1）ＬＢＨＩによる保証が、ＬＢＨＩの債権の劣後化を根拠づける
　　との主張は誤っている

　新生銀行は、ＬＢＨＩの債権について、ＬＢＨＩが再生債務者の新生
銀行に対する借入について保証していたことを理由に、「再生債務者の
無資力リスクを包括的に引き受ける旨の意思表示をしていた」とし、こ
れを根拠に、ＬＢＨＩが別途有する再生債務者に対する債権も劣後化す
べきであると主張する（新生意見書３８頁）。しかし、保証人が主債務
者の債務について保証しているとき、当該保証人が別途有する主債務者
に対する債権まで劣後化すべきとの理屈は、保証人の合理的意思を明白
に逸脱した主張であるし、これまで裁判上も学説上も問題とされたこと
すらない、常軌を逸した見解である。仮に、このような主張が認められ
たとすれば、およそ銀行に対して債務保証に応じる者など一切登場しな
いことになろう。

（2）ＬＢＨＩ以外の「ＬＢグループ再生債権者１５社」がＬＢＨＩ
　　のコントロール下にあること等を根拠として劣後化を肯定するこ
　　とはできない

　ＬＢＨＩが再生債務者に対して有する再生債権が劣後化される理由
がないことは既に述べたとおりであるが、ＬＢＨＩが直接・間接的な持
ち株関係を通じてコントロールしていることを根拠として、ＬＢＨＩ以
外の「ＬＢグループ再生債権者１５社」が有する再生債権についても劣
後化すべきであるとの新生銀行の主張（新生意見書３８頁以下）も、法
律的な根拠が不明である。特に、新生銀行は、「ＬＢグループ再生債権

者１５社」のうち、「ＳＰＣ１０社」の再生債務者に対する再生債権に
ついては、いわゆるキャッシュ・スウィープ取引に基づくものであるこ
とを根拠に、劣後化すべきであるとしているが、この主張も趣旨が不明
であるといわざるを得ない。

　そもそも、キャッシュ・スウィープが行われた金額は、本来、「ＳＰＣ
１０社」から直接ＬＢＨＩが配当や残余財産として受領すべきものであ
り、資金の有効活用の観点から（グループ内金融機能を有していた）再
生債務者が一時的に受領していたにすぎない。その意味で、本来、再生
債務者は、受領する理由のない金銭を上記機能に基づいて預かっていた
だけであって、再生債務者がこれを利得すべき理由など本来全くないの
である。このような事実に鑑みれば、再生債務者が「ＳＰＣ１０社」に
対する再生債務の負担を免れるべき実質的な理由は全くないのであっ
て、新生銀行の主張は、理解に苦しむものである。新生銀行は、「ＳＰ
Ｃ１０社」が平成２０年１１月期においてほとんど営業収益がなかった
こと等を指摘して、これらの法人が「ＬＢＨＩと別異に取り扱われるべ
き必要性はない」というが、そもそも、独立した法人格を否定する議論
をする新生銀行の側で、（信義則に基づいて）法人格を否定すべき強度
の必要性を論証すべきなのであって、「別異に取り扱われるべき必要性
はない」などという主張は、まさに本末転倒の議論である。


　７　ＬＢＡＨ及びＬＢＨＩが法的倒産手続に入っていることは、信義
　　　則に基づく再生債権の劣後化を否定する事情である


　松下意見書８頁は、支配会社であるＬＢＨＩ及びＬＢＡＨが倒産して
いるという事情は、当該支配会社の倒産債権の劣後化を妨げることはな
いとしている。

　しかしながら、本件において、新生計画案におけるような（清算価値保障原則を無視するような）再生債権の劣後化があり得るとすれば、その法的根拠は信義則違反に基づくとしか考えられない。だとすれば、ＬＢＨＩ及びＬＢＡＨが倒産しているという事情は、信義則の適用の可否を決定するに際して、極めて重要なファクターとなることは明らかである。なぜなら、信義則は、具体的な事実関係の下で、ある当事者の権利行使が許されるかという判断であるから、当事者であるＬＢＡＨ及びＬＢＨＩの事情が個別具体的に斟酌されるべきであることは当然である。そして、本件においては、ＬＢＡＨ及びＬＢＨＩも、それぞれ香港及び米国の裁判所の管轄下で倒産手続に入っており、すでに「不当搾取」「不当経営支配」を行っていたと新生銀行が主張するこれらの法人の株主権及びそれに基づく影響力は実質的に消滅しており、ＬＢＡＨ及びＬＢＨＩの債権者のために資産の換価処分手続が行われている状況にある。従って、ＬＢＡＨ及びＬＢＨＩの再生債権の劣後化を認めることは、「不当搾取」「不当経営支配」を行っていたと主張される再生債務者の株主や経営陣、すなわちＬＢＡＨらに対して正当な負担を要求することにはならず、ＬＢＡＨ及びＬＢＨＩの外部債権者を不当に害することにつながるのである。

　前述のように、新生銀行等の金融機関が、ＬＢＨＩの信用の下に再生債務者に融資したということは、ＬＢＨＩの資産であるＬＢＡＨの再生債務者に対する貸付金債権を責任財産としたことを意味しているのであるから、そのような者との関係で、信義則を適用して責任財産を減少させることこそ、信義則に反するというべきである。

　しかも、ＬＢＡＨ、ＬＢＨＩのみならず、リーマン・ブラザーズ・グループの倒産手続は現在、全世界的に進められているが、日本における新生銀行等の主張を除いては、リーマン・ブラザーズ・グループの他の

４大拠点であった米国、英国、シンガポール及び香港のいずれの国にお
いても、グループ間債権が劣後化されるべきであるという議論はなされ
ていない。そのような中、日本においてＬＢＡＨ及びＬＢＨＩの再生債
権の劣後化を行うことは、ＬＢＡＨ及びＬＢＨＩの債権者の犠牲の下、
再生債務者の他の債権者が利益を得るという不合理かつ不平等な結果
を招来するものであるばかりか、日本の倒産手続に対する国際的な信頼
すら害するものであって妥当ではない。

　さらに言えば、仮に、再生債務者に対する「ＬＢグループ再生債権者
１５社」の再生債権が劣後化されるべきだというのであれば、再生債務
者が他のリーマン・ブラザーズ・グループに対して有する債権について
も劣後化されるべき場合があるはずである。しかし、新生銀行は、再生
債務者が他のリーマン・ブラザーズ・グループに対して有する債権が劣
後化されることは全く想定していないと思われ、極めてご都合主義的な
主張と言わざるを得ない。

　また、仮に再生債務者においてこのような劣後化が肯定されるとすれ
ば、ＬＢＨＪ、ＬＢＪあるいはＬＢＣＭといった他の民事再生手続に入
っている法人についても、同様の債権債務の劣後化が行われるべきこと
になる。しかし、他の民事再生手続中の法人に関して新生銀行と同様の
主張が行われているという話は、現時点までＬＢＡＨ及びＬＢＨＩは把
握していないし、仮に再生債務者についてだけ劣後化が認められれば、
日本のリーマン・ブラザーズ・グループに限っても、法人間で著しくバ
ランスを欠いた結論が生じることになる。こうした点について、新生意
見書においては何ら回答が与えられていない。


　なお、新生意見書においては、ＬＢＨＩから海外のリーマン・ブラザ
ーズ・グループ関連会社（の管財人）に対して提案された Cross Border

Insolvency Protocol への調印に英国のリーマン・ブラザーズ関連法人
の清算人が応じなかった事実について、同清算人が「外部債権者保護の
必要性を・・・共有していることを端的に示す」などと主張しているが、
全くの事実誤認である。英国のリーマン・ブラザーズ関連法人の清算人
は、多国間でのプロトコルの調印ではなく、状況に応じて二国間でのプ
ロトコルを合意する方が柔軟かつ妥当であると主張しているにすぎな
い（添付資料１９）。そもそも、新生銀行が提出した記事（甲４３）を
読んでも、新生銀行の主張するような内容は全く読み取れず、この点に
関する新生銀行の主張は、事実を都合よく曲解した創作にすぎない。

　以上のとおり、ＬＢＨＩ及びＬＢＡＨが倒産に至っているという事情
は、本件において、信義則を理由としてこれらの再生債権者の権利の変
更に差を設けることを否定する方向に斟酌されるべき具体的事情であ
り、新生銀行のこの点に関する主張は不合理である。


第６　確定済みの再生債権について、債権者集会における議決権を否定
　　することはできない


　また、新生銀行は、新たに、「ＬＢグループ再生債権者１５社」の債
権者集会における議決権を認めるべきではないとの主張も展開してい
る。新生意見書においては、この点を具体的に論証するような主張は見
られないが、松下意見書１０頁において、再生債権が劣後化されるべき
場合には、当該再生債権の実体的な利益が否定されている以上、議決権
も行使することは認められるべきではないとの主張がなされている。

　この点、以上に見たとおり、本件の事実関係において、そもそも「Ｌ
Ｂグループ再生債権者１５社」の再生債権を劣後的に取り扱うべき合理
性も必要性も全く認められないから、その意味で、これら再生債権者の

議決権が否定されるべき理由はない。

　また、そもそも、債権者集会における議決権行使額は、確定した議決権を有する届出債権者については「確定した額」であると明確に規定されている（民事再生法１７０条２項１号）。すなわち、仮に、民事再生法１５５条１項ただし書に基づいて権利の変更に差を設ける場合ですら、債権者集会における議決権行使は確定額をもって認められるというのが民事再生法の立場である。松下意見書においては、議決権行使を否定する理由として、「再生計画にしたがって得られる弁済の額と・・・発言権の量とは比例すべきである」との価値観が指摘されているが、その根拠は不明確といわざるを得ない。たとえば、実務上、再生計画において、一定額以上の再生債権を有する債権者に対しては弁済率を減少させるケースもあるが、その際に当該債権者の議決権が比例して減少されるという取扱いは存在しない。


　そもそも、新生銀行は、再生債務者に対する民事再生手続のうち、債権確定手続においてＬＢＡＨ及びＬＢＨＩの債権に異議を述べることが可能であった（民事再生法第１０２条１項）にもかかわらず、特段異議は述べていない。仮に新生銀行の主張するように「ＬＢグループ再生債権者１５社」において何らかの信義則違反行為が存在したとすれば、新生銀行としては、これらの再生債権者が再生債務者に対して有する債権はそもそも有効な再生債権として認められないとして、債権確定手続において異議を述べ、その効力を争うことが最も直截であった。松下教授自身も、かつて発表された論文において、不当経営に基づいて劣後的取扱いがなされる場合には、債権確定訴訟の手続を通じてなされるべきであると主張されている（添付資料５・３２６頁以下参照）。

　また、債権確定手続によった場合、不服があれば査定の手続を経て最

終的には異議の訴え（民事再生法１０６条１項）を提起することができ
るため、裁判手続に委ねられる点で当事者の手続保障にも資する。これ
に対して、再生計画案において劣後化を認める場合、不服があれば再生
計画認可の決定に対して即時抗告をし（民事再生法１７５条１項）、再
生計画自体の効力を争うこととなる。となると、異議の訴えと異なって
決定手続で争われることとなり、当事者の手続保障の観点からも妥当で
ないばかりか、特定の債権者の債権が劣後化されるべきかどうかという
問題が、他の債権者及び再生手続全体にまで影響を与え、救済方法とし
て望ましくないことは明らかである。

　以上、本件において新生銀行が主張するような問題については、本来、
再生計画案においてではなく、債権確定手続において争われるべきなの
であり、この面からも、新生銀行の主張は認められるべきではない。

第７　まとめ

　以上のとおり、本件においては、「ＬＢグループ再生債権者１５社」
の再生債権の行使を制限すべき合理性も必要性も、一切存在しない。し
たがって、「ＬＢグループ再生債権者１５社」の債権について事実上一
切弁済しないという新生計画案が、債権者間の平等（民事再生法１５５
条１項）に違反する点で「法律の規定に違反」するとともに（同法１７
４条２項１号）、再生債権者の一般の利益（いわゆる清算価値保障原則）
にも反するものであって（同項４号）、御庁として、債権者集会におけ
る付議に付する旨の決定をなしえないものであることは明白である（民
事再生法１６９条１項３号）。
　新生銀行は、再生債務者の状況について十分な情報を得て、ＬＢＨＩ

の信用で融資を実行したにもかかわらず、いざLBHIが倒産するや、劣後化の名を借りて不当に多額の回収を得ようとして、銀行として当然に取るべきリスクを回避しようとしている。これは、公的な役割を担う大銀行としてあるまじき、不当な態度である。

　したがって、LBAH及びLBHIとしては、御庁に対し、新生計画案を債権者集会には付議されることなく、速やかに債務者提出に係る再生計画案について付議決定を下されるよう、ここに上申する次第である。

以　　上

添　付　資　料

別紙添付資料一覧のとおり

添付資料一覧

| 番号 | 資料名称 |
|---|---|
| 1 | 「親子会社法制等に関する各界意見の分析」別冊商事法務Ｎｏ２１１ |
| 2 | 山本和彦教授作成に係る平成 21 年 7 月 16 日付法律意見書 |
| 3 | 名古屋高裁金沢支部昭和 59 年 9 月 1 日決定・判例時報 1142 号 141 頁 |
| 4 | 沖野眞已ほか「新破産法の基本構造と実務 第 14 回 各種債権の優先順位（つづき）」ジュリスト 1312 号 100 頁 |
| 5 | 松下淳一「結合企業の倒産法的規律（三）」法協 110 巻 3 号 295 頁 |
| 6 | 広島地裁福山支部平成 10 年 3 月 6 日判決・判例時報 1660 号 112 頁 |
| 7 | 再生債務者 定款 |
| 8の1 | LBHJ 平成 18 年 11 月期貸借対照表 |
| 2 | LBHJ 平成 19 年 11 月期貸借対照表 |
| 9の1 | あおぞら銀行ニュースリリース（ブライアン・プリンス氏の経歴書） |
| 9の2 | 再生債務者閉鎖事項全部証明書 |
| 10の1 | 新生銀行・再生債務者間の平成 15 年 12 月 25 日付 Uncommitted Revolving Credit Facility Agreement |
| 2 | 上記訳文（後日追完予定） |
| 11の1 | 新生銀行・再生債務者間の平成 17 年 11 月 16 日付 First Amendment To The Uncommitted Revolving Credit Facility Agreement |
| 2 | 上記訳文（後日追完予定） |
| 12の1 | 新生銀行・再生債務者間の平成 19 年 10 月 24 日付 Second Amendment To The Uncommitted Revolving Credit Facility Agreement |
| 2 | 上記訳文（後日追完予定） |
| 13の1 | 新生銀行・再生債務者間の平成 20 年 5 月 22 日付 Agreement on Repayment and Third Amendment To The Uncommitted Revolving Credit Facility Agreement |
| 2 | 上記訳文（後日追完予定） |
| 14の1 | 新生銀行・再生債務者間の平成 20 年 8 月 26 日付 Fourth Amendment To The Uncommitted Revolving Credit Facility Agreement |
| 2 | 上記訳文（後日追完予定） |
| 15 | 平成 20 年 9 月 16 日付「再生手続開始申立書」 |
| 16の1 | リベルタス住宅ローン株式会社 平成 18 年 12 月 20 日閉鎖登記簿記載事項 |
| 2 | リベルタス住宅ローン株式会社 平成 20 年 9 月 17 日閉鎖登記簿記載事項 |
| 17 | ストラクチャー図 "Clover Structure"（再生債務者平成２０年１０月２１日付同意申請書（14）添付資料 10） |

| １８ | 郡谷大輔＝岩崎友彦「会社法における債権者保護〔上〕」商事法務 1746 号 42 頁 |
| １９の１ | 英国のリーマン・ブラザーズ関連法人(Lehman Brothers International (Europe))による米国ニューヨーク州南部地区破産裁判所宛て書簡 |
| １９の２ | 上記訳文（後日追完予定） |