WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger
Ralph I. Miller
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | |
|---|---|
| In re | :     **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | :     **08-13555 (JMP)** |
| | : |
| Debtors. | :     **(Jointly Administered)** |

------------------------------------------------------------------x

<div align="center">

**DEBTORS' OMNIBUS RESPONSES TO OBJECTIONS TO**
**MOTION OF THE DEBTORS PURSUANT TO SECTION 105(A) OF THE**
**BANKRUPTCY CODE AND GENERAL ORDER M-143 FOR AUTHORIZATION**
**TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**
<u>**FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS**</u>

</div>

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned

chapter 11 cases, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), file this

omnibus response (the "<u>Response</u>") to the objections interposed to their motion, dated July 20,

2009, for an order approving alternative dispute resolution procedures for affirmative claims of

Debtors under derivatives contracts (the "<u>Motion</u>")[1] and respectfully represent:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

# I.
## Preliminary Statement

1.      The proposed Derivatives ADR Procedures are intended to and will expedite the Debtors' ability to realize the value of their Derivatives Contracts with Recovery Potential for the benefit of all creditors and minimize the cost to their estates and Derivatives Counterparties.  The Court has the power, pursuant to section 105(a) of the Bankruptcy Code and Amended General Order M-143 (the "Standing Order"), to order implementation of the Derivatives ADR Procedures and should exercise its discretion to do so in these cases.  The Derivatives ADR Procedures are fully supported by the Creditors' Committee, have been modified by the Debtors to accommodate reasonable and legitimate concerns of Derivatives Counterparties, and represent a balanced approach to efficiently resolve disputes without costly litigation and unnecessary expenditure of judicial and estate resources.  Moreover, there is no prejudice to Derivatives Counterparties who participate in good-faith mediation with the Debtors, but do not reach settlement.

2.      The number and complexity of the Debtors' Derivatives Contracts are unprecedented for a chapter 11 case.  As of the Commencement Date, the Debtors were party to over 6,000 derivatives contracts (the "Derivatives Contracts") relating to more than 900,000 transactions.  The Debtors heretofore have made substantial effort to develop and implement strategies to expeditiously reconcile and maximize the value of their derivatives assets.  For example, the Debtors obtained authority for the assumption and assignment of their Derivatives Contracts to third parties as well as procedures for the termination of their Derivatives Contracts and the collection of termination payments.  The Debtors have also been authorized to enter into hedging transactions to preserve the value of their Derivatives Contracts.  Further, the Debtors moved to fix a bar date at the earliest possible opportunity and implemented special procedures

through the "Derivative Questionnaire" that will avoid substantial delay in reconciling claims of

counterparties against the Debtors' estates. The Derivatives ADR Procedures represent the next

critical step in the Debtors' global strategy to capture and maximize the value of Derivatives

Contracts with Recovery Potential by expediting in the least expensive manner the resolution of

disputes involving Derivatives Contracts.  Absent these measures taken by the Debtors, including

the instant Motion and proposed order, the completion of these chapter 11 cases would be delayed

for years.  The impact on the Court's resources would be devastating were commencement of

adversary proceedings or contested matters with respect to every, or even a majority of,

Derivatives Contract with Recovery Potential required.  Such artificial requirements (and others

that underlie many of the filed objections to the proposed Derivatives ADR Procedures) serve no

useful purpose and would do nothing but increase costs for all involved.  Those objections and a

synopsis of the Debtors' responses are outlined in the table attached hereto as <u>Exhibit A</u>.[2]

       3.      Consistent with the Debtors' approach on every issue of import in these

cases, the Debtors have sought out, collected and carefully considered the views of parties in

interest.[3]  In that vein, Debtors prepared the Derivatives ADR Procedures in close consultation

with, and submitted with the full support of, the Creditors' Committee.  Almost immediately after

filing the Motion and initial proposed order, the Debtors had communications with counsel for

many Derivatives Counterparties who raised questions, made comments and sought proposed

---

[2] The attached table addresses each of the arguments that were raised in the objections.  Failure of the Debtors to address in the attached table or this Response arguments made in the objections shall not constitute a waiver of the Debtors' rights to object to such arguments at the hearing to consider the Motion or at a later date.  The Debtors deny many of the factual and legal assertions and characterizations contained in the objections.  Nothing contained herein shall be deemed an admission or acceptance of any statement contained in the objections.

[3] See the accompanying Declaration of Peter Gruenberger, attested to on August 24, 2009, for details of the efforts made by the Debtors in respect of the Derivatives ADR Procedures.

changes to the Derivatives ADR Procedures.  Over the next ten days, Debtors' counsel held

numerous calls and exchanged communications with counsel for various Derivatives

Counterparties in efforts to arrive at reasonable and legitimate modifications to the initial proposed

order submitted with the Motion (the "Proposed Order").  Debtors circulated two interim versions

of the Proposed Order to all counsel who contacted Debtors, obviating the need for many

objections.  Debtors filed a cumulative version of the Proposed Order with all modifications made

through July 31, 2009 (the "Third Cumulative Interim Order") as an attachment to the Debtors'

Notice of Adjournment of the Motion, dated July 31, 2009, and thus made available to all

Derivatives Counterparties.  *See* Docket No. 4634.

       4.     Between July 31, 2009 and today, the Debtors made further modifications

to the Third Cumulative Interim Order to incorporate legitimate points raised by some of the

objections.  A revised proposed order (the "Revised Proposed Order") authorizing the Derivatives

ADR Procedures is attached hereto at Exhibit B.  A redline of the Revised Proposed Order

reflecting all of the cumulative changes made to the Proposed Order submitted with the Motion on

July 20, 2009 is attached hereto at Exhibit C.  A redline of the Revised Proposed Order reflecting

the changes made by the Debtors to the Third Cumulative Interim Order filed on July 31, 2009 is

attached hereto at Exhibit D.  As indicated in the table of objections and responses (Exhibit A), the

Revised Proposed Order has addressed and cured many of the points raised in the objections.

Accordingly, the Debtors do not address those finalized issues in the body of this Response.[4]

       5.     Notwithstanding the abundant authority that exists for mediation in the

Southern District of New York and the Debtors' attempts to be as accommodating as possible

---

[4] These modifications to the Proposed Order are highlighted in paragraph 6 of the Gruenberger Declaration;
the full text of the changes are reflected in the successive blacklined interim versions of the order annexed
thereto as Exhibits A, B, and C.

through modifications made in the Revised Proposed Order, some 56 objections to the Derivatives

ADR Procedures still remain (the "Objections").  At bottom, those Objections stem from two

overarching incorrect presumptions: (a) this Court lacks power to order the Derivatives ADR

Procedures; and (b) the Debtors and the Creditors' Committee will act irrationally, and in ways

not designed to foster the best interests of the estates.  Even apart from such empty presumptions,

the Objections are devoid of merit and, for the most part, represent attempts by these objecting

counterparties to delay these cases and avoid resolution of their obligations to the Debtors.  For the

reasons set forth in the Motion, this omnibus Response, including the table attached hereto as

Exhibit A, and the accompanying Declaration of Peter Gruenberger, the Court should overrule

each of the Objections and authorize the Derivatives ADR Procedures.

## II.
### The Debtors are One of the Largest
### Derivatives Contracts Counterparties in the World

6.    As noted, the Debtors estimate that as of the Commencement Date they

were party to approximately 6,000 Derivatives Contracts and more than 900,000 underlying

transactions.  The Debtors' Derivatives Contracts include those covering interest rate swaps, FX

transactions, credit swaps, exotics (highly structured), commodity swaps and forwards, equity

swaps, and other products.  No prior chapter 11 debtors, including those in *Enron*, has had as

many or as complex derivatives contracts as are involved in these cases.

7.    As a result, the Debtors (and their Derivatives Counterparties) with respect

to Debtors' "in the money" Derivatives Contracts face a choice:  Debtors either commence and

prosecute hundreds, if not thousands, of adversary proceedings or contested matters, which will

take years to complete; or the parties can attempt to resolve many of their disputes through the

Derivatives ADR Procedures.  Such adversary proceedings and contested matters would

monopolize the Court's resources, and force all parties to expend significant costs and resources in litigation. The Derivatives ADR Procedures impose none of those burdens while preserving the substantive rights of all parties, if a consensual resolution is not reached. Clearly, the better alternative is the Derivatives ADR Procedures, including mediation, as has been recognized by the Debtors, the Creditors' Committee, and the more than 99% of Derivatives Counterparties that received notice of the Motion and Proposed Order but did not object.

### III.
### The Derivatives ADR Procedures
### Are Authorized and Well-Supported

8.      There can be no legitimate dispute that the Court has the power to implement the Derivatives ADR Procedures, even in the absence of adversary proceedings. Specifically, the Derivatives ADR Procedures are authorized by:

- the Court's inherent power under section 105(a) of the Bankruptcy Code to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a)[5];

- the Standing Order,[6] which expressly provides:
  - "In re: Court Annexed Mediation Program: Adoption of Procedures Governing Mediation of *Matters in Bankruptcy Cases and* Adversary Proceedings," *see* Title (emphasis added);
  - "The court may order assignment of a matter to mediation *upon its own motion*, or upon a motion by a party in interest or the U.S. Trustee," *see* § 1.1 (emphasis added); and
  - "Unless otherwise ordered by the presiding judge, any adversary proceeding, contested matter *or other dispute* may be referred by the court

---

[5] Section 105(a) of the Bankruptcy Code provides the Court broad authority to fashion appropriate relief. *See Adelphia Commc'ns Corp. v. America Channel, LLC (In re Adelphia Commc'ns. Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("[s]ection 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987), *aff'd*, 88 B.R. 30 (S.D.N.Y. 1988) ("the basic purpose of [section 105(a)] is to enable the court to do whatever is necessary to aid its jurisdiction, *i.e.*, anything arising in or relating to a bankruptcy case.").

[6] Since at least 1995, this District has encouraged mediation by means of the Standing Order.

to mediation," *see* § 1.3 (emphasis added); and

- controlling precedent in this District. *See In re Enron Corp.*, Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. Mar. 4, 2003 and Mar. 20, 2003) [Docket Nos. 9533 and 9862]; *In re Ames Dep't Stores, Inc.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. 2007) [Docket No. 3195].

9.     Mediation is a powerful tool that fosters settlement when parties are required to do no more than negotiate in good-faith.  In *Enron*, for example, 77 different counterparties mediated with the *Enron* debtors, leading to settlement in 100% of such matters, resulting in recovery by the *Enron* debtors' estates of over $600 million in new money and extinguishment of over $2.5 billion in claims filed against the estates.

10.     The Derivatives ADR Procedure in this case are consistent with, and supported by, each of the above sources of authority.  Significantly, section 105(a) of the Bankruptcy Code has been specifically relied upon by courts to fashion similar relief.  In *In re Ephedra Prods. Liab. Litig.*, the district court authorized and approved a claims resolution procedure in a foreign insolvency proceeding that included mandatory mediation designed to speedily assess and value claims against a foreign debtor.  *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 335 (S.D.N.Y. 2006).  The court specifically relied upon its powers under, among other provisions, section 105(a) of the Bankruptcy Code.  *Id.*  Accordingly, the Court can and should direct disputes related to the Debtors' Derivatives Contracts with Recovery Potential to mediation.

## IV.
## The Objections Lack Merit and Should be Overruled

11.     The Objections are devoid of merit and exaggerate the "burdens" that are imposed by the Derivatives ADR Procedures.  Contrary to the assertions in the Objections, the Derivatives ADR Procedures encourage good-faith negotiation and mediation with the Debtors. They are (i) balanced and fair; (ii) do not modify the substantive rights of any Derivatives

Counterparty, see Revised Proposed Order ¶ 5; (iii) allow for global settlement of disputes related to multiple contracts, including the assertion of rights of setoff or other valid defenses by Derivatives Counterparties, see Revised Proposed Order ¶ 6; and (iv) preserve confidentiality to foster open communication, see Revised Proposed Order ¶ 13. The Debtors have made every effort to invite Derivatives Counterparties to engage in settlement negotiations on equal footing and resolve disputes with the Debtors at a minimal cost.

12.     Nevertheless, the objecting counterparties have insisted on expending time and energy to debate and litigate both the essence and technical minutia of the Derivatives ADR Procedures. As set forth more fully below, the Objections generally suffer from five fatal fallacies: (i) the objecting counterparties wrongly assume that their interpretations of law and contract are indisputably correct; (ii) the objecting counterparties presume without support that the Debtors will apply the Derivatives ADR Procedures in bad faith; (iii) some objectors, overlooking the Debtors' fiduciary obligations to realize maximum value on their Derivatives Contracts, seem to be arguing that absent the ADR/Mediation process, Debtors simply would forgo pursuit of these assets – that is not going to occur; the ADR process merely provides an alternative method of realizing on such assets; (iv) the objecting counterparties conjure hobgoblins of the night, ignoring that the Derivatives ADR Procedures are non-binding, *i.e.*, no party is compelled to settle and no substantive rights of Derivatives Counterparties are or can be affected by good-faith participation in mediation; and (v) the Objections fail to recognize that negotiation and mediation is a far better more effective and less costly alternative than litigation. The Debtors' specific responses to each of the arguments raised in the Objections (including those Objections that have been resolved by the modifications to the Revised Proposed Order) are outlined in the attached chart at Exhibit A.

13.     For ease of use by the Court, Debtors set forth below the Objections grouped in categories, together with Debtors' responses thereto.

### A.      The Court Assertedly Lacks Power to Order ADR/Mediation

Objection:     Derivatives ADR Procedures
Should Only Apply to Adversary Proceedings

14.     Response:  Some Derivatives Counterparties assert that the Court has the power to order mediation only with respect to disputes that are the subject of adversary proceedings.  In support of this argument, these counterparties cite to the *Enron* and *Ames* mediation orders, which related only to pending adversary proceedings.

15.     The Objections ignore the contrary authority granted this Court by section 105(a) of the Bankruptcy Code and the Standing Order.  They also fail to consider the distinguishing circumstances of these cases from *Enron* and *Ames*.  First, the title of the Standing Order itself defeats these Objections by providing "In re: Court Annexed Mediation Program: Adoption of Procedures Governing Mediation of Matters in ***Bankruptcy Cases and*** Adversary Proceedings."  (emphasis added).  Additionally, section 1.3 of the Standing Order provides that "unless otherwise ordered by the presiding judge, any adversary proceeding, ***contested matter or other dispute*** may be referred by the Court to mediation."  Standing Order ¶1.3 (emphasis added). Accordingly, the Standing Order clearly contemplates that the Court may order matters to mediation that are not the subject of adversary proceedings.  Essentially, the Objections invite the Court to sustain form over substance and demand that the Debtors be forced to expend the cost of initiating hundreds of adversary proceedings before they may initiate mediation.  Not only would such an exercise achieve nothing, but it would be contrary to the purpose of mediation – to foster settlement and avoid litigation and its related costs.  The Court should not countenance such irrational contentions.

16.     Although the alternative dispute resolution procedures in *Ames* and *Enron*

applied only to adversary proceedings, critical differences distinguish these Lehman cases.  The

*Ames* and *Enron* debtors were much deeper into their cases than here, and, thus those debtors had

the ability to evaluate and assess the pool of disputes that would be appropriate for mediation.  For

example, mediation in *Enron* was not ordered until almost a year and a half after commencement

of those cases and *Enron* had significantly fewer disputes that would become the subject of

mediation.  On the contrary, the Debtors here at a much earlier stage are still analyzing their

massive pool of 6,000 Derivatives Contracts to determine which contracts are "in the money" for

Debtors.  In cases of this size and complexity, that process cannot reasonably be expected to be

completed with certainty to require that the Debtors commence adversary proceedings before

initiating mediation.

<div style="text-align:center">

Objection:     Section 105(a) Does Not Authorize the
Court to Modify Substantive Rights to
Direct Mediation; Court Should Decide all Disputes

</div>

17.     Response:  Some Objections assert that the Court lacks the power to assign

disputes to mandatory meditation because their Derivatives Contracts do not provide for

mediation.  This red-herring should be overruled.  The Debtors are not seeking to invoke

contractual rights to support mediation.  Rather, the Debtors are requesting that the Court exercise

its inherent power under section 105(a) of the Bankruptcy Code and the Standing Order to manage

its docket and facilitate the administration of these cases.  Moreover, contrary to the Objections,

participation in non-binding mediation does not alter or impact a single substantive right of the

parties.  The Revised Proposed Order makes absolutely clear that the substantive rights of parties

are fully preserved.  *See* Revised Proposed Order ¶ 5.

18.     Additionally, the Objections are misguided in their contention that as only

the Court may decide disputes, mediations are beyond the power of the Court to order.  The Court

<div style="text-align:center">10</div>

will decide all disputes if necessary and when called upon to do so.  Mediation does not decide

disputes, facts or issues of law.  The mediator does not have the power to render a decision or

compel a party to agree to a settlement.  The Derivatives ADR Procedures simply create an

opportunity for the settlement of disputes quickly and economically without the need for Court

intervention.

> <u>Objection</u>:    Debtors' Claims may be Non-core Proceedings;
> Derivatives Counterparties are Entitled to Have Matters
> <u>Heard Before an Article III Court</u>

19.    <u>Response</u>:  The Royal Bank of Scotland PLC and its affiliates (collectively,

"<u>RBS</u>") assert that "because some Derivatives Counterparties have not and may not file proofs of

claims, the Debtors' claims against them may be non-core proceedings" and that "the Derivatives

ADR Proceedings must be modified to ensure protection of the rights of Derivatives

Counterparties to have their matters heard by an Article III court, including their right to assert

defenses to the Debtors' request for sanctions set forth in the Derivatives ADR Proceedings."  *See*

RBS Objection ¶ 5 [Docket No. 4544].  RBS does not cite any authority in support of its positions.

20.    It should be noted that lead counsel for RBS took full advantage of

mediation as lead counsel to the debtors in *Enron* where mediation was ordered by an Article I

court.  Neither can RBS deny that the Standing Order was issued by an Article I court.  In

addition, RBS neglects to inform the Court that RBS already has filed two proofs of claim in these

cases.  Copies of the RBS proofs of claim are attached hereto at <u>Exhibit E</u>.  Thus, RBS has no

standing to assert this objection as it has already subjected itself to the Court's equitable

jurisdiction.  *See Langenkamp v. Culp*, 498 U.S. 42, 45 (1990); *Granfinanciera v. Nordberg*, 492

U.S. 33, 58 (1989); *In re Delta Air Lines Inc.*, Case No. 07-1561 (ASH), 2007 U.S. Dist. LEXIS

81216, at *8-9 (S.D.N.Y. Oct. 30, 2007).

21.     Apart from RBS's filed proofs of claim, the Second Circuit has held that

contract disputes that are bound to have a significant impact on the administration of the debtor's

estate indeed are core proceedings.  *See U.S. Lines, Inc. and U.S. Lines (S.A.) Inc., Reorganization*

*Trust  v. Am. Steamship Owners Mut. Prot. and Indem. Ass'n Inc. (In re U.S. Lines, Inc.)*, 197 F.3d

631 (2d Cir. 1999).  Here, the Debtors are party to over 6,000 Derivatives Contracts with over

900,000 derivatives transactions valued in the billions of dollars.  If ever a case existed where a

category of contract disputes would have a significant impact on the administration of a

bankruptcy case, it is these cases with relation to these Derivatives Contracts.  Accordingly,

disputes related to Derivatives Contracts with Recovery Potential are core proceedings.

22.     Moreover, RBS's assertion that this Court lacks the power to issue

sanctions is incorrect as a matter of law.  Section 105(a) of the Bankruptcy Code grants the Court

the power to issue sanctions.  *See Caldwell v. Unified Capital Corp. (In re Rainbow Magazine,*

*Inc.)*, 77 F.3d 278, 283-84 (9th Cir. 1995) (holding that bankruptcy courts have the power under

section 105(a) to issue sanctions and rejecting the argument that bankruptcy courts lack such

authority because they are Article I courts); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669

(4th Cir. 1989) (same); *In re French Bourekas, Inc.*, 175 B.R. 517, 525 (holding that bankruptcy

court can impose sanctions under section 105(a) of the Bankruptcy Code and its inherent power);

*In re Grand Street Realty, LLC*, Case No. 04-CV-4738, 2005 U.S. Dist. LEXIS 45314, at *15-17

(E.D.N.Y. Sept. 30, 2005) (collecting cases and holding that bankruptcy court had authority under

section 105(a) to impose sanctions against landlord and its counsel).

23.     The Objection is also premised on an incorrect reading of the Revised

Proposed Order.  Nothing in the Revised Proposed Order precludes the filing of a motion to

withdraw the reference.  To the contrary, the Revised Proposed Order expressly preserves *all*

rights, remedies, claims and defenses of a Derivatives Counterparty and the Debtors in good faith

compliance.  *See* Revised Proposed Order ¶ 5.

<div style="text-align:center">

Objection:    Court does not have Personal Jurisdiction Over
<u>Derivatives Counterparties to Direct Them to Mediation</u>

</div>

24.    <u>Response</u>:  Some Derivatives Counterparties assert that the Court does not

have personal jurisdiction and the power to order mediation over parties located outside of the

United States that do not file a proof of claim.  These issues are not ripe for determination at this

time and cannot be adjudicated prematurely in advance by the Court in the absence of an adequate

record.  In addition, nothing in the Revised Proposed Order prohibits these counterparties from at

the appropriate time filing a motion that the Court lacks personal jurisdiction.  Alternatively, these

Derivatives Counterparties can simply choose to ignore the Derivatives ADR Notice and run the

risks associated with ignoring Court orders.  The Debtors note again, however, that the Derivatives

ADR Procedures are non-binding, and expressly preserve all substantive rights of the parties, even

if they do not reach settlement.

<div style="text-align:center">

Objection:    Derivatives ADR Procedures
<u>Should Not Apply to Governmental Units</u>

</div>

25.    <u>Response</u>:  The Nebraska Investment Finance Authority ("<u>NIFA</u>") asserts

that it should not be subject to the Derivatives ADR Procedures because it is a governmental unit.

Although the Standing Order excludes actual "governmental units" from mediation, the Court has

the power, pursuant to section 105(a) of the Bankruptcy Code, to craft relief beyond the Standing

Order to accommodate the unique and unprecedented circumstances of the Debtors.  The Court in

*Enron* invoked its powers under section 105 of the Bankruptcy Code and assigned many disputes

with governmental units (counties, public utility districts, cities and other municipalities) to

mediation.

26.     The Debtors are party to Derivatives Contracts with Recovery Potential with *several hundred* municipalities. The Debtors have already identified over 30 municipalities that are involved with disputes having an aggregate value in dispute of approximately $400 million. It is also telling that no other governmental entity has objected to the Derivatives ADR Procedures. Notably, even though this issue has been raised by only one asserted governmental entity, this issue is of great importance to the Debtors. If the objection is sustained, the Court ultimately will have to separately adjudicate each of these disputes through litigation. On the contrary, the requirement that municipalities engaged in financial transactions with the Debtors participate in non-binding mediation does not impose a burden on governmental units and does not interfere with their ability to provide public services.

27.     Further, NIFA is not a traditional governmental unit involved in servicing the public welfare that should be able to benefit by the exclusion of governmental units under the Standing Order. NIFA is a profit-making proprietary arm of the state of Nebraska that engaged in complex derivatives transactions with the Debtors.[7] An illustrative analogy exists in the exception from the automatic stay for governmental units exercising their police of regulatory power. *See* 11 U.S.C. § 362(b)(4). While the automatic stay does not prevent a governmental unit from commencing or continuing a proceeding to enforce such governmental unit's police or regulatory power, the stay does apply to governmental units acting in their proprietary capacity. *See U.S. v. Seitles*, 106 B.R. 36 (S.D.N.Y. 1989) *vacated on other grounds*, 742 F. Supp. 1275 (S.D.N.Y. 1990) (holding that governmental unit's action was subject to automatic stay because it related to

---

[7] NIFA's own website describes NIFA's purpose as "NIFA is an **independent quasi-governmental instrumentality** that encourages the investment of private capital in Nebraska to stimulate economic growth, thereby creating jobs and building the tax base for communities in the state." Furthermore NIFA's Financial Statements and Supplemental Data, dated June 30, 2008 and 2007, describe "[NIFA's use of] Derivatives financial instruments to… lower the overall cost of financing." Finally, the financial statements provide that "NIFA is a self-supporting entity." *See* http://www.nifa.org.

pecuniary interest); *Enron Corp. v. California ex. rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524

(Bankr. S.D.N.Y. 2004) (same); *In re Fuzagy Express, Inc.*, 114 B.R. 865, 873 (Bankr. S.D.N.Y.

1990) (citing to legislative history of section 362(b)(4), which states, "This section is intended to

be given a narrow construction in order to permit governmental units to protect the public health

and safety and ***not to apply to actions by a governmental unit to protect a proprietary interest***")

(emphasis added).  If governmental units were required to mediate disputes related to their

enforcement of police or regulatory powers, that would be inconsistent with section 362(b)(4) of

the Bankruptcy Code and would intrude into the jurisdiction of municipalities to perform their

public functions.  That is not the case with NIFA, who was acting as a private player in the

market, and its dispute is unrelated to Nebraska's police or regulatory power.  Thus, NIFA should

be bound by the Derivatives ADR Procedures.

### B.    Who May Initiate Derivatives ADR Procedures and When

Objection:    Counterparties Should be Permitted to Initiate Mediation

28.    Response:  The Revised Proposed Order provides that the Derivatives ADR

Procedures shall not be utilized as a substitute for chapter 11 claims procedures.  Some

Counterparties nonetheless seek to hijack the Derivatives ADR Procedures and supplant the

claims process by asserting that Derivatives Counterparties should be permitted to initiate

mediation for all of their Derivative Contracts.  But the Derivatives Counterparties do not owe

fiduciary duties to other creditors, have no interest in minimizing costs, and already have access to

the claims procedures to assert their affirmative claims against the Debtors.  Permitting thousands

of Derivatives Counterparties to initiate the Derivatives ADR Procedures so as to overlap the

claims process would result in chaotic and unmanageable procedures for the Debtors and the

Court.  The Debtors and the Creditors' Committee proposed the Derivatives ADR Procedures to

provide a workable process to settle Derivatives Contracts that have recovery potential to the

Debtors without intruding on the normal claims procedures.

> Objection:    Definitions of "Derivatives Contract"
> and "Derivatives Counterparty" are Broad or Unclear

29.    Response:  Some Derivatives Counterparties object that the definition of

"Derivatives Contract with Recovery Potential" in the Revised Proposed Order is overbroad.

Some Objections contend that the definition of should be changed to the narrower definition of

"Derivatives Contract" included in the bar date order [Docket No. 4271] (the "Bar Date Order").

These Objections should be overruled because the Bar Date Order and its treatment of agreements

as "Derivatives Contracts" served a different purpose and had legal ramifications that are not

presented by this Motion and the Revised Proposed Order.

30.    As many of the objections to the Bar Date Order noted, the designation of

an agreement as a "Derivatives Contract" in the Bar Date Order imposed obligations on a party to

complete the "Derivative Questionnaire" or risk having their claim expunged without it being

clear that their contract would be treated as a "Derivatives Contract."  Here, no corresponding

burdens are imposed on any Derivatives Counterparty.  Here, a Derivatives Counterparty will be

notified that its contract is being treated as a "Derivatives Contract" by receipt of a Derivatives

ADR Notice.  Derivatives Counterparties are not bound by the amount demanded by Debtors in

the Derivatives ADR Notice.  The demand amount is a starting point for negotiations and is not

required to be accepted by the Derivatives Counterparties.  Because there are no legal

ramifications associated with the Debtors' demand amounts, a different definition of "Derivatives

Contract with Recovery Potential" is unnecessary.  The Debtors need flexibility to resolve as

many disputes as possible.

31.     Several Objections complain that the inclusion of "a person or entity who exercised or failed to exercise duties in relation to such contract" should not be included in the definition of "Derivatives Counterparty."  Typically, mediations relate to the settlement of a contract dispute include the parties to the contract.  However, in the complex world of derivatives and structured financial instruments, the party to a Derivatives Contract is sometimes a special purpose entity created solely to hold assets, enter into Derivatives Contracts and issue securities.  These entities often are shells without any employees and act through a trustee, collateral agent or security holders.  Thus, the participation of trustees, collateral agents, securities holders or other parties that act on behalf of special purpose entities are necessary and appropriate for meaningful mediation.  Moreover, section 3.6 of the Standing Order contemplates that in a specific case for cause shown a party may seek to withdraw from mediation.

<u>Objection</u>:        <u>There are Informational Imbalances in Favor of Debtors</u>

32.     <u>Response</u>:  Other Objections assert that the Derivatives ADR Procedures create information imbalances favoring the Debtors in two ways.  The first way states that because the Debtors will be involved in prior mediations regarding similar issues and a counterparty is not, the Debtors will have an advantage.  The second way states that the Debtors have information gained in the claims procedures.  Any perceived informational advantage is inherent in the bankruptcy process.  But these irrational fears are not based upon any prejudice that can befall to Derivatives Counterparties.  There is no decision maker in mediation.  Parties are not required to reach a settlement.

### C.    There is Allegedly Nothing to Mediate

<u>Objection</u>:    There is No Dispute Because
<u>Counterparties Have Not Terminated</u>

33.    <u>Response</u>:  Some Derivatives Counterparties argue that "there is no dispute to mediate, thus the Derivatives ADR Procedures should not apply to me."  These Derivatives Counterparties argue that because provisions in their contracts with the Debtors may give them the exclusive right, as the non-defaulting counterparty, to terminate their Derivatives Contracts, they believe that they also have the unilateral right *not to* terminate until it suits them.  Thus, such Derivatives Counterparties assert that because no termination payment can be due until there is a termination of the Derivatives Contract by the Derivatives Counterparties, there is no dispute to negotiate or mediate.

34.    Obviously, this is not the appropriate time for the Court to decide safe harbor or *ipso facto* issues.  However, merely by way of noting that a dispute may well exist, the Debtors believe these Objections are meritless as a matter of law.  These objecting counterparties presume that their interpretations of the safe harbor provisions of the Bankruptcy Code (the "<u>Safe Harbor Provisions</u>")[8] and the impact thereof on their Derivatives Contracts with the Debtors are absolute and correct.  But the Safe Harbor Provisions do not authorize Derivatives Counterparties to refrain from terminating their contracts with the Debtors until a "cherry picked" termination date is chosen by them.  The Safe Harbor Provisions were instituted to permit timely termination of safe harbored contracts to limit a non-defaulting party's exposure to market movements.  Applicable case law makes clear that the Safe Harbor Provisions should be construed narrowly to permit only liquidation, termination or acceleration of a safe-harbored contract and offset or net out of termination values or payment amounts because of a condition specified in section

---

[8] These provisions are contained in sections 362(b)(6), (7) and (17); 546(e), (f) and (g); 555; 556; 560; and 561 of the Bankruptcy Code.

365(e)(1).  *See In re Enron Corp.*, 306 B.R. 465, 471 (Bankr. S.D.N.Y. 2004) (applying narrow construction of Safe Harbor Provisions based upon plain meaning of statute and legislative history); *In re Calpine Corp.*, Case No. 05-60200 (BRL), Adv. Pro. 08-1251 (BRL), 2009 WL 1578282, at *1 (Bankr. S.D.N.Y. May 7, 2009) ("by its terms, section 556 of the Code is limited to only those terms that trigger the termination upon the occurrence of one of the specified conditions listed in section 365(e)(1)…contractual rights that are merely ancillary or incidental to an ipso facto clause are not enforceable under section 556 of the Code.").

35.    Moreover, the Safe Harbor Provisions do not authorize eligible counterparties to withhold performance of their Derivatives Contracts.  Derivatives Contracts that have not been terminated are executory contracts subject to assumption or rejection by the Debtors pursuant to section 365 of the Bankruptcy Code.  Pending the Debtors' decision to assume or reject, Derivatives Contracts remain enforceable against Derivatives Counterparties, but are unenforceable against the Debtors.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *In re McLean Indus., Inc.*, 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989); *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1078-79 (3d Cir. 1992); *In re Cont'l Energy Assocs Ltd. P'ship*, 178 B.R. 405 (Bankr. M.D. Pa. 1995).  Accordingly, the Debtors can demand that Derivatives Counterparties be compelled to perform their obligations and the Safe Harbor Provisions do not authorize Derivatives Counterparties to withhold performance in reliance upon unenforceable *ipso facto* provisions of their agreements, such as section 2(a)(iii) of the standard 1992 ISDA Master Agreement.  This precise issue was recently before the Court through the Debtors' Motion to Compel Performance of Metavante Corporation's Obligations Under an Executory Contract and to Enforce the Automatic Stay.  *See* Docket No. 3691.  There, the Court observed that counterparties should have to "pay to play."  *See* Tr. of July 14, 2009 Hr'g, at 56:4 – 7 [Docket No. 4433].

<div align="center">Objection:     There is Nothing to Mediate Because
Counterparties Have Terminated and Paid the Debtors</div>

36.    Response:  Some Counterparties argue that there is no dispute to mediate because they have terminated their Derivatives Contracts and paid the required amounts to the Debtors.  Again, these counterparties assume that they are infallible in their calculations or are otherwise immune from challenge by the Debtors.  Contrary to the Objections, valuation disputes are precisely one of the types of matters that can and should be addressed through mediation.  As the Court will recall from the bar date motion, valuation of Derivatives Contracts is extraordinarily complicated.  As the Debtors review information concerning termination values and the methodologies applied by Derivatives Counterparties, they have identified numerous improprieties.  Indeed, the Debtors have already identified numerous termination payments that they believe to be insufficient.  Accordingly, there is no basis for a blanket exemption of Derivatives Counterparties that have submitted termination payments to the Debtors purportedly in settlement of the Debtors' claims.

**D.    Objections Related to Sanctions**

<div align="center">Objection:     Sanctions Should be Eliminated
From the Derivatives ADR Procedures</div>

37.    Response:  As noted supra in paragraph 22, there is substantial precedent for exercise of the Court's power to order sanctions.  Without citation to authority, some Objections assert nonetheless that the sanctions provisions of the Derivatives ADR Procedures should be eliminated.  Some Objections also contend that the sanctions provided for in the Derivatives ADR Procedures are excessive, inflexible and mandatory.

38.    These Objections are based on misreadings of the express provisions of the Revised Proposed Order.  Nothing in the Revised Proposed Order contemplates automatic sanctions imposed at the whim of the Debtors.  The appropriateness and level of sanctions will be

determined solely by the Court.  The Revised Proposed Order clearly states "If, **_after notice and a_**

**_hearing_**, the **_Court determines_** that the Debtors or a Derivatives Counterparty have not complied

with the Derivatives ADR Procedures in good faith…the Debtors or the Derivatives Counterparty

may be subject to such sanctions **_as the Court deems appropriate_**."  *See* Revised Proposed Order ¶

12 (emphasis added).  Accordingly, under no circumstances can a technical default result in

automatic sanctions imposed by the Debtors.

39.     Moreover, to further clarify that the scope of sanctions are within the

exclusive purview of the Court, which has always been the case, the Debtors have modified the

Revised Proposed Order to provide that "Sanctions ~~shall~~ **may** include, but are not limited to…"

*See* Revised Proposed Order ¶ 12 (emphasis added).  Accordingly, it is absolutely clear that the

Court has the exclusive authority to determine the scope and imposition of sanctions.

Identification of possible sanctions in the order is necessary, however, to put Derivatives

Counterparties on notice of possible repercussions of ignoring the Derivatives ADR Procedures

and to ensure that Derivatives Counterparties make good-faith attempts to try to reach a

settlement.

40.     Additionally, despite the fears of, and allegations made by, the objecting

counterparties, the Debtors do not intend to apply the Derivatives ADR Procedures as means to

seek sanctions for technical failures to comply with the Revised Proposed Order.  The Debtors

have a vested interest in consensually resolving as many disputes as possible through mediation.

They do not intend to apply their scarce resources and incur costs in bringing applications for

sanctions to the Court unless actually warranted.  It also cannot be forgotten that the sanctions

provisions apply equally against the Debtors if they are found to have acted in bad-faith.  Thus,

there is nothing to the Objections that are premised on the assumption that the Debtors are trying

to obtain leverage over their Derivatives Counterparties through sanctions.

        **E.**        **Objections to Selection of Mediators and Mediation Logistics**

                Objection:        Process for Selection of Mediators is Unfair

        41.      Response:  Some Derivatives Counterparties assert that the procedures for

selecting the mediator favor the Debtors and suggest that the parties should together select the

mediator for each particular dispute.  These objectors fail to recognize that the mediators will be

appointed by the Court not by Debtors, and continue to display their unfounded fears that the

Debtors are acting in bad-faith.  The Debtors have no advantage whatsoever because mediations

are non-binding.  Simply stated, the mediator is not a decision-maker!  Counterparties can decline

to settle if good-faith efforts fail.

        42.      In addition, due to the sheer number of mediations that the Debtors expect

to initiate, it is impractical to require the Debtors and counterparties to mutually select an

independent mediator for each dispute, and then have to request the Court to appoint a mediator

each time the parties cannot agree.  That process alone could take years.  In *Ames*, where the Court

ordered mediation of 900 disputes, Judge Gerber appointed four mediators and assigned each

dispute to one of the four appointed mediators.

                Objection:        Mediations Should Not be in New York, New York

        43.      Response:  Some Derivatives Counterparties complain that parties should

agree on the location of mediation rather than requiring mediation to take place in New York.  The

Debtors have further clarified the Revised Proposed Order to make clear that parties and the

mediator can concur on an alternate location by making the following revision:  "All mediation

proceedings will take place in New York, New York, ***unless agreed to by the parties and the***

*mediator*.  ~~The addition or elimination of Mediation Sites shall be within the sole discretion of the Debtors.~~").  *See* Revised Proposed Order ¶ 10(d) (emphasis added).  This provision is consistent with the Standing Order, which provides that "Upon consultation with all attorneys…the mediator shall fix a reasonable time and place for the initial mediation conference."  Standing Order ¶ 3.1. Moreover, to minimize the cost of attendance by a person with settlement authority at the mediation, the Debtors made modifications to the Revised Proposed Order to provide that such parties may appear by video conference subject to the consent of the mediator and at such Derivatives Counterparty's cost.  *See* Revised Proposed Order ¶ 10(f).

44.    The Objections also ignore that the Derivatives ADR Procedures are consistent with the principle of centralizing bankruptcy disputes to one forum.  The burdens imposed on the Debtors to mediate hundreds of Derivatives Contracts with Recovery Potential all over the world far outweigh the minimal burden on Derivatives Counterparties from mediating their limited number of disputes in New York, New York, especially in light of the accommodations made for Derivatives Counterparties in the Revised Proposed Order.  The Objections also ignore the alternative: the Debtors could commence an adversary proceeding in this Court.

## F.    Objections Related to Creditors' Committee Participation

Objection:    Creditors Committee's Participation in Derivatives
ADR Procedures Should be Limited or Prohibited.

45.    Response:  Some counterparties blindly object to the Creditors' Committee's involvement in the mediation process.  The Debtors believe that the Creditors' Committee serves an important function in these cases, in particular, with respect to the resolution of the Debtors' Derivatives Contracts.  The amounts recovered from the Derivatives Contracts with Recovery Potential will have a significant impact on recoveries to creditors.  Accordingly, the

Debtors believe it is important that the Creditors' Committee – the appointed fiduciary of all unsecured creditors in these cases – be involved as outlined in the Derivatives ADR Procedures.

46.     The Debtors worked closely with the Creditors' Committee to craft the Derivatives ADR Procedures and believe that the balance reflected in the Revised Proposed Order is sufficient to allow the Creditors' Committee to carry out its oversight role while also allowing the Debtors to deal one on one with their Derivatives Counterparties to achieve settlement.  The Creditors' Committee has a statutory right pursuant to section 1109(b) of the Bankruptcy Code to appear and be heard in a bankruptcy case.  Moreover, the Creditors' Committee is bound by the confidentiality provisions of the Derivatives ADR Procedures.  Thus, information shared during the mediations will not be disseminated into the public.  Moreover, when settlements are achieved, they must be consummated either in compliance with prior orders of this Court related to the assumption and assignment of pre-petition Derivatives Contracts, under which the Creditors' Committee has a right of consent, or pursuant to an order of the Court approving the settlement, which would have to be on notice to the Creditors' Committee.  *See* Revised Proposed Order ¶ 4.  Thus, allowing the Creditors' Committee to participate in the process will reduce the time associated with the Creditors' Committee's review and diligence of each settlement.

**V.**

**<u>Conclusion</u>**

WHEREFORE, for the reasons set forth above and in <u>Exhibit A</u> hereto, the Debtors

respectfully request that the Court (i) overrule the Objections to the Motion; (ii) approve the

Revised Proposed Order and authorize the Derivatives ADR Procedures; and (iii) grant such other

and further relief as the Court may deem just and appropriate.

Dated: August 24, 2009
      New York, New York

<div style="margin-left:40%">

/s/ Peter Gruenberger             
Peter Gruenberger
Ralph I. Miller
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for the Debtors and Debtors in
Possession

</div>

**<u>Exhibit A</u>**

**(Grounds of Objections and Debtors' Responses)**

# Exhibit A: Grounds of Objections and Debtors' Responses

| Objection | Response |
|---|---|
| **A.  The Court Assertedly Lacks Power to Order ADR/Mediation** | |
| 1.   Derivatives ADR Procedures allegedly should apply <u>only</u> to adversary proceedings.  In *Enron* and *Ames* the mediation procedures only applied to adversary proceedings. | o  These objections assert form over substance and would require wide-scale litigation in order to invoke the Derivatives ADR Procedures.  Essentially, these Derivatives Counterparties would require the Debtors to commence over 250 adversary proceedings and only then be able to initiate mediation as to any one matter.  No benefit will be gained from going through the exercise of commencing an additional 250 (at least) adversary proceedings.  Judicial resources would be wasted and the benefits of ADR/mediation for the parties, i.e., minimizing costs, delay and waste of limited resources, would be lost.  This Court has previously noted that its calendar is already overburdened. <br><br> o  The Title to M-143 itself provides "Adoption of Procedures Governing Mediation of Matters in ***Bankruptcy Cases and*** Adversary Proceedings." <br><br> o  Hence, section 1.3 of M-143 applies to "any adversary proceeding, contested matter or ***other dispute***."  A formal adversary proceeding is not required to commence mediation. <br><br> o  Also, although *Enron* ordered only adversary proceedings to mediation, at the time of the entry of the ADR order, that case then involved fewer than 30 adversary proceedings and *Enron* was over 1.5 years into the case at the time mediation was ordered.  These *Lehman* cases are early in their administration and will involve at least 250 disputes. <br><br> o  Also, the *Enron* mediation order immediately stayed all adversary proceedings except for pending dispositive motions therein. |
| 2.   Derivatives Contracts do not include mediation provisions.  Mandatory Derivatives ADR Procedures violates the terms of the Derivatives Contracts. Section 105 of the Bankruptcy Code does not give the Court the right to modify the substantive rights of parties.  Derivatives Counterparties should not be required to participate in mandatory mediation; mediation is burdensome and expensive. | o  The Debtors are not invoking rights under the Derivatives Contracts to mediate disputes.  Rather, the Debtors are seeking to settle contractual disputes through the provisions of the General Order M-143 ("The Court may order assignment of a matter to mediation upon its own motion or the motion by any party in interest") and the inherent power of the Court under section 105(a) of the Bankruptcy Code to manage its docket. <br><br> o  While bankruptcy courts frequently modify contractual rights, the Revised Proposed Order does not modify or affect any substantive rights of Derivatives Counterparties.  Mediation is non-binding and an attempt to consensually resolve disputes. <br><br> o  The alternative to mediation would be litigation, which is more costly, time consuming and burdensome for all concerned. |

| | |
|---|---|
| 3.  The Court should decide disputes between Debtors and creditors. Mediation is inconsistent with a centralized decision-making process the bankruptcy usually entails. | ○ There are no decisions rendered in ADR/mediation, which is merely an undertaking seeking to reach a consensual resolution.  Derivatives Counterparties are not required to settle but only to negotiate and mediate in good faith, and the mediator has no power to decide contractual disputes. |
| | ○ Section 1.1 of M-143: "The Court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee."  Parties do not have to consent to mediation. |
| 4.  Since some Derivatives Counterparties may not file claims, the Debtors' claims may be non-core proceedings. Derivatives Counterparties are entitled to have their matters heard before an Article III court, including the right to assert defenses to the Debtors' request for sanctions in the procedures. | ○ RBS, which filed this objection, has already filed two proofs of claim against LBHI. |
| | ○ Martin J. Bienenstock, Esq., lead counsel for RBS, took full advantage of mediation as lead counsel for debtors in *Enron*, where mediation was ordered by an Article I judge. |
| | ○ General Order M-143 was issued by an Article I judge. |
| | ○ Because the Debtors' disputes over Derivatives Contracts will have a significant impact on the administration of the estate,  the Debtors' affirmative claims against Derivatives Counterparties may be core whether or not proofs of claim are filed.  *See In re U.S. Lines, Inc.*, 197 F.3d 631, 638 (2d Cir. 1999)  (holding that adversary proceedings related to indemnity insurance contracts were core where such contracts "may well be… 'the most important asset of [the debtor's] estate."). |
| | ○ The Revised Proposed Order provides that all rights of Derivatives Counterparties are reserved, including the right to assert a motion to withdraw the reference. *See* Revised Proposed Order ¶ 5. |
| | ○ The Court's section 105(a) power includes power to order sanctions.  The objection ignores the existence of M-143. |
| | ○ Even assuming the Court could not issue sanctions, it could propose findings to the District Court and recommend that the District Court impose such sanctions. |
| 5.  The Court does not have personal jurisdiction over Derivatives Counterparties located outsider the United States that have not filed a proof of claim and therefore the mandatory Derivatives ADR Procedures should not apply to such Derivatives Counterparties. | ○ This is not the proper time or place for the Court to make a determination with respect to personal jurisdiction over particular Derivatives Counterparties.  Such assertions should be brought before the Court on a case-by-case basis in a proper and orderly fashion. |
| | ○ Nothing prevents the settlement of disputes while preserving personal jurisdiction defenses.  They are not mutually exclusive. |
| | ○ Derivatives Counterparties that take this position run the risk that the Court could grant |

| | sanctions or a default judgment against them. If those parties are correct, the defense of lack of personal jurisdiction is preserved. |
|---|---|
| 6.   Derivatives Contracts governed by foreign law should not be subject to these proceedings. | o  No basis is offered or exists for the proposition that contracts governed by foreign law should be excluded from the jurisdiction of the Bankruptcy Court to order mediation, whose power as a matter of law extends to all of the Debtors' property wherever located, and often deals with matters governed by foreign law. |
| | o  The Court has the inherent power to manage its docket and case load. |
| | o  Substantive rights are not being altered and each Derivatives Counterparty has the right to assert the application of foreign law in mediation and thereafter, if and when an adversary or other proceeding is commenced against such Derivatives Counterparty. |
| | o  Mediators are competent to mediate disputes under foreign law. |
| 7.   Derivatives ADR Procedures should expressly not apply to governmental units since M-143 does not apply to governmental units. | o  Many governmental units were required to and did mediate in *Enron*. The authority to require a governmental unit to mediate comes from section 105(a) of the Bankruptcy Code and the Court can craft relief beyond the general order to accommodate the circumstances of the Debtors. |
| | o  Moreover, as in *Enron*, this objecting party is not a traditional governmental unit acting in the public welfare sense. Requiring this Derivatives Counterparty to mediate would not infringe on its enforcement of a police or regulatory power. This is a profit making proprietary arm of the government that was engaged in complex derivatives trading to make a profit. |
| | o  The Debtors are parties to Derivatives Contracts with several hundred municipalities. Currently, the Debtors are aware of at least 30 municipal counterparties that have approximately $800 million in known disputes. If the objection is sustained, all of these disputes would have to be adjudicated by formal adversary proceedings that will clog the Court's docket and otherwise burden the Court and the Debtors. |
| | o  Of the many municipalities that are parties to Derivative Contracts, only this one quasi-governmental unit objected. |

3

| **B.  Objections that have been Addressed and Satisfied by Changes Already in the Revised Proposed Order** | |
|---|---|
| 8.   Participation in mediation should not result in a Derivatives Counterparty waiving its right to a jury trial.  The motion is not clear whether a party "affirmatively chooses" mediation. | o  The Revised Proposed Order addresses and cures this objection preserving existing jury trial rights.  *See* Revised Proposed Order ¶ 14. |
| 9.   The order should include a provision reserving all substantive rights of Derivatives Counterparties. | o  The Revised Proposed Order addresses and cures this objection.  *See* Revised Proposed Order ¶ 5. |
| 10. The mediator should not be able to certify questions to the Court. | o  The Revised Proposed Order addresses and cures this objection by removing this provision.  *See* Revised Proposed Order ¶ 10(b). |
| 11. The Debtors should face sanctions for failure to reply to the Derivatives Counterparties response, instead of automatically going to mediation.   The Debtors should be obligated to respond to a counteroffer. | o  The Revised Proposed Order addresses and cures this objection by providing that the Debtors will reply to the Derivatives Counterparty's response and the Debtors do face sanctions in equal measure with Derivatives Counterparties.  *See* Revised Proposed Order ¶ 8(d). |
| 12. Debtors should pay the fees and expenses of the mediator. | o   The Revised Proposed Order addresses and cures this objection.  *See* Revised Proposed Order ¶ 15.  The Debtors will pay for the expenses of the mediator except in the case of sanctions ordered by the Court after notice and a hearing or expenses related to video conferencing costs. |
| 13. It is burdensome to require a principal with settlement authority to attend mediations in person.  Appearances by local counsel and/or telephonic or video conferencing appearances should be sufficient. | o  The Revised Proposed Order addresses and cures this objection by making accommodation that principals can appear by video conference to the extent acceptable to the mediator and at such principal's expense.  *See* Revised Proposed Order ¶ 10(f).<br><br>o  Moreover, section 3.2 of M-143 provides "A representative of each party shall attend the mediation conference, and must have complete authority to negotiate all disputed amounts and issues." |
| 14. Applicable Trustees should receive all notices and communications for securitizations or trusts that entered into Derivatives Contracts with the Debtors. | o  The Revised Proposed Order addresses and cures this objection.  *See* Revised Proposed Order ¶ 8(a). |

| 15. Timeframes set forth are not sufficient for the trustees to provide adequate notice to noteholders of securitizations or for trustees to get the proper directions from noteholders. | o The Court has held (in denying BNY's motion to dismiss in the Perpetual matters that noteholders are not indispensable parties.<br><br>o The Revised Proposed Order adds extra time for trustees during the Notice/Response stage of ADR. *See* Revised Proposed Order ¶¶ 8 and 9.<br><br>o Trustee's are required to maintain a register and should be able to identify and take direction from noteholders. |
|---|---|
| 16. The ADR Notice should be served at least on the addresses included in the Derivatives Contract and any counsel that has appeared for such party in the chapter 11 cases. | o The Revised Proposed Order addresses and cures this objection. *See* Revised Proposed Order ¶ 8(a). |
| 17. The order should provide that the Derivatives ADR Procedures do not affect the choice of law rules on substantive issues. | o The Revised Proposed Order makes clear that substantive rights of parties are not affected by participating in non-binding mediation. *See* Revised Proposed Order ¶ 5.<br><br>o   Mediation does not decide any substantive issue of law. |
| 18. Confidentiality provisions should be modified so that trustees can share the settlement/mediation information with the noteholders and advisors. | o The Revised Order addresses and cures this objection.  See Revised Proposed Order ¶13. |
| **C.  Who May Initiate Derivatives ADR Procedures and When** | |
| 19. Derivatives Counterparties should be able to initiate Derivatives ADR Procedures for all of their Derivatives Contracts. | o Derivatives Counterparties should not be able to use mediation to supplant, interfere with or overlap the claims process.<br><br>o If Derivatives Counterparties commenced Derivatives ADR Procedures there would be chaos and the Debtors would not be able to manage either the claims process or any ADR process.<br><br>o To sustain this objection would result in wholsale waste of the Debtors' assets. |
| 20. The definition of "Derivatives Counterparty" should not include "a person or entity who exercised or failed to exercise duties in relation to such contract".  The definition should include only actual parties to Derivatives Contracts, not those | o Some Derivatives Counterparties are shell special purpose entities with no employees. The objected to language is necessary to permit and require trustees or other agents or noteholders with respect to such entities that have the authority to act on behalf of special purpose entities to participate in mediations. |

| | |
|---|---|
| that may have duties under the contract or affiliates. | o The Derivatives ADR Procedures do not place an undue burden on such parties. See Revised Proposed Order ¶10(f). |
| 21. The definition of "Derivatives Contract" is unclear and overly broad. The definition could be interested to include a contract to which the Debtors are not parties and guarantees. Some Derivatives Counterparties suggest using Bar Date Order definition. | o Mediation is non-binding. Parties are merely being encouraged to enter into settlement discussions and mediation. The Derivatives ADR Procedures have a different purpose than Bar Date order, which imposed obligations on Derivatives Counterparties. If Derivatives Counterparties fail to comply with the procedures in the Bar Date Order, they lose their claim. In the context of the Derivatives ADR Procedures, whether or not parties reach an agreement, there is no burden on Derivatives Counterparties, all rights are reserved, and there may well be a settlement. |
| 22. Derivatives ADR Procedures should provide that any Derivatives Contracts subject to an adversary proceeding will <u>not</u> be subject to the Derivatives ADR Procedures. | o The Revised Proposed Order does not provide that adversary proceedings are stayed. This question will be determined on a case by case basis where the Court can determine if staying an adversary proceeding is appropriate.<br><br>o M-134 contemplates that mediation and adversary proceedings can proceed on dual tracks. *See* M-143 § 1.1. |
| 23. Derivatives Counterparties should not be required to respond to an ADR Notice prior to October 22, 2009 (the deadline for submission of Derivative Questionnaire in connection with the bar date). | o *See* Response to #21 above.<br><br>o Bar Date is unrelated to settling a claim pursuant to mediation. There are many Derivatives Counterparties that will be able to move forward with mediations prior to October 22, 2009. The entire ADR process should not be put on hold out of the concerns raised by just a few Derivatives Counterparties, especially as October 22, 2009 is less than 60 days away. |
| 24. Derivatives ADR Procedures provide an informational imbalance as Debtors are aware of prior mediations and results, while Derivatives Counterparties are not. | o This is the reality of bankruptcy. The Debtors have a fiduciary obligation to deal with each and every one of their Derivatives Contracts. Whether Debtors were negotiating settlements or pursuing adversary proceedings, Debtors will always have more "information" than a Derivatives Counterparty.<br><br>o There is no winner or loser in mediation. The parties will try to reach a resolution in ADR, but settlement is not mandatory. As such, the Debtors' experience in similar mediations is not prejudicial to the process and is often beneficial.<br><br>o Were this irrational fear to prevail there would be no mediations at all after the first one. |

| | |
|---|---|
| 25. Derivatives ADR Procedures provide an informational imbalance as Debtors have received information from Derivatives Counterparties in claims process. | o *See* Response to #24 above.<br><br>o There is no informational imbalance because Derivatives ADR Procedures do not relate to Derivatives Contracts for which Derivatives Counterparties are owed money and as to which claims are filed.  These are affirmative claims of the Debtors.<br><br>o In any event, Debtors have incentive to share as much information as appropriate to achieve settlement. |
| **D.  There is Allegedly Nothing to Mediate** | |
| 26. There is "no dispute" between the parties.  The Derivatives Contracts give the Derivatives Counterparty the exclusive  right to terminate under these circumstances.  Until the Derivatives Counterparty terminates and calculates the termination amount in accordance with the Derivatives Contract, there is no dispute as to the amounts owed.  No amounts are currently due to the Debtors and amounts that are owed will not come due for some time.  As such, there is nothing to mediate. | o These Derivatives Counterparties assume, without support, no dispute exists.  The Debtors disagree that under the Bankruptcy Code, including the Safe Harbor provisions, Derivatives Counterparties enjoy an unlimited right to defer for an unreasonable amount of time the decision whether to terminate or not terminate a Derivatives Contracts after a Debtor's default.  There are limits on how long a Derivatives Counterparty can wait to exercise its rights under the Safe Harbor provisions and whether a Derivatives Counterparty can "cherry-pick" an advantageous termination date.<br><br>o As in *Metavante,* those parties that have current payment obligations to Debtors and are not performing, the Debtors have a right to move to compel performance and failure to perform gives the Debtors the right to terminate the contract.  As the Court has observed, such parties should have to "pay to play".<br><br>o  Thus, rather than commencing litigation against these Derivatives Counterparties, the Debtors are seeking to reach consensual resolutions.  These disputes over such legal issues can be discussed in the mediation process, which is non-binding.  If Derivatives Counterparties continue to believe that they do not need to do anything regarding termination, there is no prejudice to them from participating in non-binding mediation. |
| 27. Certain Derivatives Counterparties have validly terminated their Derivatives Contracts and paid the Debtors what they believe to be the required amount.  The Derivatives ADR Procedures should not apply to such Derivatives Counterparties. | o Derivatives Counterparties have no right to unilaterally determine that their valuation of termination payments is correct, final and not subject to challenge.  They could be wrong.<br><br>o Derivatives Counterparties cannot presume that their interpretations of the Bankruptcy Code are correct.  They cannot supplant the role of the Court.  Nor are they the Debtors, who have a fiduciary duty to confirm the accuracy of termination payments. |

| **E.  Mediator Related Objections** | |
|---|---|
| 28. There should be more than one mediator appointed pursuant to the Derivatives ADR Procedures.  Using only one mediator gives the Debtors an unfair advantage as they will become familiar with strategies and tactics that persuade the mediator and the mediator can become familiar and supportive of the Debtors' positions.  Also the burden will be too large for one mediator.   The procedures do not take into account possible conflicts or incapacity issues of the one mediator. | o  The Revised Proposed Order (as all interim versions thereof did) contemplates more than one mediator.  The Debtors currently believe, in consultation with the Creditors' Committee, that 3-4 mediators should be appointed by the Court. <br><br> o  There are no unfair advantages to Debtors because mediation is non-binding, apart from negotiating in good faith, the Derivatives ADR Procedures do not impose on Derivatives Counterparties any burden.  Nothing can force on Derivatives Counterparties any requirement that they agree to settle. |
| 29. The parties should agree on the mediator, and the Court should appoint the mediator from a pool only if the parties cannot agree, in accordance with M-143. | o  It is impractical to expect the Debtors to reach agreement with all Derivatives Counterparties on a mediator for hundreds of disputes or to request the Court to appoint a new mediator for every dispute.  This objection, if sustained, would require all parties to expend their time, money and effort over the selection of a mediator rather than trying to reach a resolution of disputes. |
| 30. Derivatives ADR Procedures should require that the mediator be qualified and registered as a mediator | o  There no evidence that the Court would do otherwise.  These objections are an intrusion on the Court's prerogative to appoint a mediator. |
| 31. The mediator should be obligated to disclose all relevant relationships and conflicts to the parties. | o  The mediator will review every matter proposed for mediation for potential conflicts of interest. <br><br> o  Section 2.3 of M-143 already provides that mediators will be disqualified in any matter where a judge would be disqualified. |
| **F.  Sanctions** | |
| 32. The paragraph in the Order that sets forth the sanctions should be deleted.  As M-143 provides, the Court should determine the appropriate sanctions and circumstances to impose them.  Such matters should not be set forth in the Order. | o  The Revised Proposed Order is consistent with M-143, as the Revised Proposed Order provides only the possible sanctions that might be imposed by the Court and only after notice and a hearing.  The appropriateness and level of sanctions remain within the purview of the Court.  See Revised Proposed Order ¶12. <br><br> o  Moreover, sanctions are not one-sided for the benefit of the Debtors.  Both parties may move for sanctions where appropriate. <br><br> o  Section 105(a) of the Bankruptcy Code permits the Court to impose sanctions. |

| | |
|---|---|
| 33. The sanctions included in the Order are draconian. The sanction of the full amount of the affirmative claim of the Debtors is not fair and gives Debtors incentive to assert that a Derivatives Counterparty did not participate in good faith in the Derivatives ADR Procedures. | o This objection presumes incorrectly and without support that the Debtors will act in bad faith. <br><br> o Again, sanctions may be ordered by the Court only after notice and a hearing. <br><br> o See Response to #32 above. |
| 34. The Derivatives ADR Procedures are inflexible. What if a Derivatives Counterparty needs more information or requests a clarification of the ADR Notice? The procedures do not give additional time, instead result in sanctions for non-compliance. | o See Response to #32 above. <br><br> o Sanctions are not automatic. The Debtors and Derivatives Counterparties both may request the imposition of sanctions by the Court, after notice and a hearing. *See* Revised Proposed Order ¶ 12. <br><br> o If, after being served with an ADR Notice, a Derivatives Counterparty requires more time or additional information it can decline to accept the Debtors' demand, and can specify which type of information it lacks to support a substantive response. |
| 35. Trustees should not be subject to sanctions for failure to participate in ADR/mediation since they have no economic interest in the settlement. | o The Court has held in the BNY/Perpetual matter that noteholders are not indispensable parties, and trustees have fiduciary duties to uphold. <br><br> o Trustees file claims and take actions all the time on behalf of noteholders. Trustees counsel have frequently participated in this case and filed objections and should be subject to sanctions. |
| **G. Limitations on Scope of Derivatives ADR Procedures** | |
| 36. Derivatives ADR Procedures are costly and should not apply to Derivatives Contracts if there is less than $150,000 in dispute. | o The Debtors are responsible for paying the cost of a mediator and will naturally consider a cost-benefit analysis of which disputes are appropriate for mediation. There is no reason, therefore, for a blanket exclusion in advance of certain contracts or Derivatives Counterparties. <br><br> o Also, the objection fails to consider that the dispute may be resolved without the need for a mediator, but during the notice/response stage. |
| 37. Derivatives ADR Procedures should provide a means for Derivatives Counterparty to contest whether the Derivatives ADR Procedures apply to them. Derivatives Counterparties should be able to make a showing to the Court why they | o Including an automatic opt-out provision would undermine the entire Derivatives ADR Procedures. Some Derivatives Counterparties would likely file such motions and distract from the mediation process. <br><br> o Nothing in the Revised Proposed Order prevents Derivatives Counterparties from filing a |

| | |
|---|---|
| should be able to opt-out of the Derivatives ADR Procedures. | request with the Court for exclusion for good cause shown.<br><br>o Moreover, Derivatives Counterparties already have the right pursuant to Section 3.6 of M-143 to file a motion with the court to withdraw a matter from mediation for good cause shown. |
| 38. Debtors should publish a list of Derivatives Contracts they believe are subject to these Derivatives ADR Procedures. | o The Debtors were parties to over 900,000 derivative transactions. Accordingly, it is unreasonable to expect that they have, or are even close to having, completed their review of every agreement to be in a position to publish a list. |
| 39. Certain adversary proceedings that relate to broad issues, should be resolved before mediation commences. | o This objection is so vague, it is meaningless.<br><br>o Mediation is non-binding. Just as they are now, parties are free to make their own judgments about the likelihood of outcomes in litigations and decide to settle or not.<br><br>o There were no such bars to entry into mediation in *Enron*. |
| 40. There should be a limit on the number of ADR Notices and mediations that any Derivatives Counterparty is obligated to respond to or participate in at any one time. That is, a Derivatives Counterparty could be party to a number of Derivatives Contracts with the Debtors and be inundated with multiple ADR Notices issued by the Debtors. | o The objection assumes that the Debtors will apply the Derivatives ADR Procedures irrationally, in bad faith and without common sense. The Debtors intend to apply the Derivatives ADR Procedures in a manner that accomplishes global resolutions with minimal expense. The Revised Proposed Order permits flexibility and allows the Debtors and Derivatives Counterparties to agree on accommodations to make sure that should be involved are included. |
| 41. Derivatives ADR Procedures should provide a means for Derivatives Counterparties to consolidate mediations. | o See Response to # 40 above. |
| **H. Mediation Logistics and Briefing** | |
| 42. Pursuant to M-143, Parties should agree on the location of the mediation, rather than requiring mediation to take place in New York. | o Paragraph 10(d) of the Revised Proposed Order already provides that the parties and the mediator can agree to a location other than New York to hold the mediation.<br><br>o Requiring the mediations to take place in New York, New York is consistent with the purpose of having a centralized forum for disputes. The harm and burden of debtors of mediating around the world for hundreds of disputes far outweighs any potential burden to Derivatives Counterparties in coming to New York.<br><br>o Debtors could initiate adversary proceedings in the Bankruptcy Court and require parties to |

| | |
|---|---|
| | travel to New York. |
| | o  *Enron* required mediations to take place in New York, New York |
| | o  Derivatives Counterparties are sophisticated institutions dealing in complex transactions. They have counsel and should be able to travel to New York. |
| 43. It is unclear what amounts to "sufficient information" that will be included in the ADR Notice.  Proposals: (i) a form of such notice should be attached to the Order, (ii) information should be at least what is required by Derivatives Contracts and (iii) information should be at least what is required by Derivative Questionnaire. | o  Paragraph 8 of the Revised Proposed Order provides that ADR Notice will include "a brief explanation setting forth the basis for the demand and the amount." <br><br> o  This is the same type of information a Derivatives Counterparty must provide in a response to an ADR Notice.  See Proposed Revised Order ¶8(b). <br><br> o  With respect to the Derivative Questionnaire in the bar date motion, Debtors are obligated to pay claim amounts asserted in validly filed proofs of claim, unless the Debtors object to such claim and overcome the prima facie presumption that such claim is valid.  Therefore, the Debtors needed certain information from the Derivatives Counterparties to evaluate such claims.  Such consequences do not exist in this case.  See also Response #21 above. <br><br> o  The affirmative claim that the Debtors assert in the Derivatives ADR Notice is a starting point for settlement negotiations.  During settlement negotiations or mediation, the parties would be expected to exchange further information about the calculations of the affirmative claim amount.  However, a Derivatives Counterparty is not required to agree to a settlement prior to or after mediation. |
| 44. The ADR Procedure should include a termination date for mediation so parties do not remain in limbo and incur great expense.  Suggest 60- 180 days from the commencement of mediation. | o  The revised Proposed Order addresses and cures this objection by providing that the mediation ends upon the request of any party and concurrence by the mediator.  *See* Revised Proposed Order ¶10(g). |
| 45. Debtors already heave means to monetize Derivatives Contracts via the Order entered by this Court on December 16, 2008 authorizing settlements and assumption and assignment.  Also, any settlements must comply with the December 16 order, to which several parties still have outstanding objections. | o  The December 16th order is unrelated to ADR.  The Derivatives ADR Procedures are another mechanism to foster settlements. <br><br> o  Paragraph 4 of Revised Proposed Order provides that these procedures are additional options for the Debtors and all settlements must comply either with the December 16 order or Bankruptcy Rule 9019. |
| 46. Derivatives ADR Procedures should permit Derivatives Counterparties to assert counterclaims against the Debtors. | o  The assertion of setoff rights during mediation are expressly preserved by the Revised |

| | |
|---|---|
| Also, since Derivatives Contracts provide for netting and setoff, Derivatives ADR Procedures should apply to all Derivatives Contracts between parties. | Proposed Order. *See* Revised Proposed Order ¶6.<br><br>o Unrelated Derivatives Contracts are governed by the bar date process. The Derivatives ADR Procedures are not a substitute for the claims process or the Bar Date Order. |
| 47. Derivatives ADR Procedures should clarify whether a Derivatives Counterparty is required to serve any further pleadings after their response. | o The procedures are very clear when Derivatives Counterparties have to serve responses. After serving a reply, Derivatives Counterparties are not required to serve any further pleadings prior to the commencement of mediation. |
| 48. Parties should be obligated to exchange briefs prior to mediation. | o Section 3.1 of M-143 provides that "the mediator shall have the duty and authority to establish…the submission of relevant documents". A requirement to exchange briefs prior to the commencement of mediation would delay the process. |
| 49. Derivatives Counterparties should have the option of submitting a brief to the mediator without serving it on the other party. | o Ex parte communication by either side does nothing to foster settlement, but rather is a distraction. |
| 50. Parties should not be obligated to exchange briefs. Requirement is inconsistent with M-143. | o See response in #48 above.<br><br>o Derivatives ADR Procedures do not require parties to exchange briefs unless the mediator requires briefs, which is consistent with M-143.<br><br>o *Enron* required brief summaries of the matter to familiarize mediator with dispute. |
| **I.  Attendees at Mediation and Settlement Conference** | |
| 51. Derivatives ADR Procedures should clarify that counsel to a Derivatives Counterparty may participate in settlement conferences. | o The Revised Proposed Order already provides that counsel may be present at mediations and may participate. *See* Revised Proposed Order ¶ 10(f). |
| 52. Parties should have a reasonable opportunity to designate attendees of each mediation. | o Nothing in the Revised Proposed Order prohibits the attendance by additional attendees.<br><br>o The requirement for one person with settlement authority is a floor for, not a ceiling of, attendees. |
| **J.  Objections Relating to UCC** | |
| 53. The Creditors' Committee should not be able to submit | o The Creditors' Committee has a statutory right pursuant to section 1109(b) of the |

| | |
|---|---|
| briefs in the mediation, but may monitor the proceedings. | Bankruptcy Code to "appear and be heard on any issue" in a bankruptcy case, which, here, includes the right to file briefs in the mediation. |
| 54. Derivatives Counterparties should have the right to exclude the Creditors' Committee from the mediation. | o The Creditors' Committee has right to review and opine on the settlement agreements in accordance with derivative sub-committee protocol.<br><br>o The Creditors' Committee was not excluded in *Enron*. |
| 55. The Creditors' Committee should not be permitted to attend or participate in mediations. | o The Creditors' Committee has right to review and opine on the settlement agreements in accordance with derivative sub-committee protocol. |
| **K.  Trustee's Special Needs** | |
| 56. Trustees may not be able to obtain settlement authority. They may need to participate in ADR without such authority or include majority of noteholders in the mediation.  Other procedures may need to be modified in the case of securitizations or trusts. | o Trustees have fiduciary obligations and should be able to make good faith efforts to get closure, including obtaining settlement authority. |
| **L.  Miscellaneous** | |
| 57. Debtors should pay travel and mediation costs of Derivatives Counterparties.  Costs are penalty for failure to settle prior to mediation. | o Objectors are sophisticated Derivatives Counterparties dealing in derivatives and should pay their own costs to travel to New York.  Parties may appear by video conference as provided in the Revised Proposed Order ¶10(f).<br><br>o This objection focuses on form over substance.  The Debtors can commence an adversary proceeding and require the Derivatives Counterparty to come to New York at its expense. |
| 58. The finding in the order that "certain common issues exist" should be deleted since it is a conclusory statement with no support. | o Response unnecessary. |
| 59. The Findings in the Order should be eliminated as unsupported. | o Response unnecessary. |
| 60. Debtors should be obligated to calculate their affirmative claim amount in accordance with the terms of the applicable | o Debtors intend to comply with enforceable contracts and applicable law. |

| | |
|---|---|
| Derivatives Contract. | o  Nothing in the Revised Proposed Order states or implies otherwise. |
| 61. Derivatives Counterparties have entered into back-to-back Derivatives Contracts, so terminating one contract early could harm a Derivatives Counterparties hedging strategies. | o  Mediation is non-binding and results in no decisions.  All rights are preserved for Derivatives Counterparties, who can enter into a new hedge if they so choose. |
| 62. The adversary proceeding commenced by Wong Minibond Noteholders should not be stayed by Derivatives ADR Procedures [Adversary Proceeding No. 09-01120]. | o  The Revised Proposed Order does not provide that adversary proceedings are stayed.  This question will be determined on a case-by-case basis at a time when the Court is able determine if staying an adversary proceeding is appropriate.<br><br>o  M-143 contemplates that mediation and adversary proceedings can proceed on dual tracks.  *See* M-143 § 1.1. |
| 63. Barclays PLC Bank and Long Island International Limited contend that Debtors should not be allowed to initiate mediation at a time when it is likely to cause delay in, or distraction from, a pending adversary proceeding or contested matter.  Debtors should be required to institute mediation before the parties have devoted substantial time and expense to the dispute, as provided in M-143 | o  *See* Response to #62 above.<br><br>o  M-143 provides that an adversary proceeding may be assigned to mediation at any time.<br><br>o  Mediation and adversary proceedings are not mutually exclusive so there is no reason to restrict the ability of parties to participate in both proceedings on a dual track. |
| **M.  ADR/Mediation Time Periods** | |
| 64. 20 days is insufficient time for parties to respond to the ADR Notice.  Derivatives Counterparties suggest 45- 60 days. | o  Derivatives Counterparties exaggerate the burden of submitting an adequate informal response in 20 days by demanding a response time of 45-60 days.  If the Debtors were to file an adversary complaint, Derivatives Counterparties would have 30 days to file formal answers.  Here, the response is confidential, non-binding, is not complex and is not required to be as inclusive as a pleading filed with the Court. |
| 65. 5 days is insufficient time for Derivatives Counterparties to prepare for a telephonic settlement conference.  Derivatives Counterparties suggest 30 days. | o  All that is required of Derivatives Counterparties during this stage is to start a dialogue.  Pursuant to the order, parties can agree to extend the time to commence mediation pending further discussions.  There is no requirement that a settlement be reached in 5 days. |
| 66. 2 business days is insufficient time for Derivatives Counterparties to respond to a request for a telephonic | o  Two business days is ample time for Derivatives Counterparties merely to schedule a conference with the Debtors.  No substantive information need be exchanged within these |

| | |
|---|---|
| settlement conference. | two business days.  It is merely a matter of scheduling and making a phone call. |
| 67. The timeframes and noticing provisions of the Derivatives ADR Procedures violate Due Process. | o  Mediation is non-binding, parties can decide not to agree to any settlement.  No procedural or substantive right of any Derivatives Counterparty is adversely affected. |
| 68. The timeframe (5 days to request a conference and 2 days to respond) are unreasonable and settlement is unlikely in such timeframes.  Parties will automatically have to go to mediation stage. | o  Commencement of the mediation stage is not automatic.  Paragraph 9 of the Revised Proposed Order contemplates "continuations or rescheduled settlement calls or meetings arising from [an] initial settlement conference."  Moreover, paragraph 10(a) states that "Debtor and the Derivatives Counterparty together shall contact the mediator to schedule the initial mediation."  Accordingly, if parties are talking and trying to consensually resolve their disputes, they can agree to extend the "Notice/Response" period. |

**Exhibit B**

**(Revised Proposed Order – Clean)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                         :

In re                                  :       Chapter 11 Case No.

                                    :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      **08-13555 (JMP)**

                                    :

              Debtors.       :       **(Jointly Administered)**

                                    :

                                    :
-------------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

          The following alternative dispute resolution procedures (the "Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

## FINDINGS

          On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including swap agreements and forward contracts (the "Derivatives Contracts with Recovery Potential"), exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties.  The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice.  The Court further FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation.  The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.  Standing Mediation Order.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "Standing Order") shall apply to the mediations to be conducted under this Order.

2.  Derivatives ADR Counterparties.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "Derivative Counterparties").

3.  Derivatives ADR Disputes.  Any Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures by serving the following on a Derivative Counterparty:

a.      a copy of this Order; and

      b.      a Derivatives ADR Notice (as defined below) (collectively, the

"<u>Derivatives ADR Package</u>").

For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives

Counterparty shall be deemed adequate if such service or notice is provided to the Derivatives

Counterparty, the Derivatives Counterparty's counsel, legal guardian, estate representative, or

other representative by (i) email and (ii) at the option of the Debtors either (x) hand delivery, or

(y) first class mail, or (z) overnight mail.

      4.    <u>Settlement of Disputes During the Derivatives ADR Procedures</u>.  Nothing

contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a

Derivatives ADR Dispute at any time before, during, or following the designation of a

Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the

parties, provided that such settlement

      a.      complies with (i) the Order, dated December 16, 2008, authorizing the

Debtors to establish procedures for the settlement or assumption and

assignment of prepetition derivative contracts [Docket 2257]; (ii) the

Order, dated January 29, 2009, authorizing the consensual assumption and

assignment of prepetition derivative contracts [Docket No. 2667], or

(iii) other orders in these bankruptcy cases permitting such settlement, or

      b.      is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors'

Committee (the "<u>Creditors' Committee</u>"), the contents of any papers submitted during the

mediation stage described below, and all discussions in mediation shall remain confidential and

privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of

the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

5. <u>Participation Mandatory</u>.  Unless otherwise provided in a specific order

applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty,

after service of an ADR Package on a Derivatives Counterparty,

a.    compliance with the Derivatives ADR Procedures in this Order is

mandatory in the specified Derivatives ADR Disputes for both the

applicable Debtor or Debtors and each Derivatives Counterparty; and

b.    no party is required to settle or compromise any dispute or enter into a

particular settlement or compromise, but each Debtor serving a

Derivatives ADR Package and each Derivatives Counterparty must serve

the required responses, engage in the specified communications to discuss

settlement, participate in any mediation in good faith, follow directions of

the mediator, and otherwise comply with the Derivatives ADR Procedures

specified below for all Derivatives ADR Disputes covered by such notice.

All rights, remedies, claims and defenses of a Derivatives Counterparty and a Debtor in good

faith compliance with the Derivatives ADR Procedures shall not be impaired, waived or

compromised in any further proceedings in these cases should no settlement or compromise

result from participation in these Derivatives ADR Procedures.

6. <u>No Substitute For Claims Procedures</u>.  The Derivatives ADR Procedures are

not intended and shall not be utilized as a substitute for chapter 11 claims procedures.  Nothing

contained herein, however, shall prevent a Derivatives Counterparty from asserting in any

respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR

Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder.

7.   Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivative Counterparties.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Derivative ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Derivative ADR Procedures.

**NOTICE/RESPONSE STAGE**

8.   Notice/Response.  The initial stage of the Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR Dispute on a consensual basis (the "Notice/Response Stage").  The Notice/Response Stage shall include:

a.   Derivatives ADR Notice.  Debtors shall serve upon a Derivatives Counterparty (and its attorneys who have appeared in these cases) a notice containing sufficient information regarding the Derivatives ADR Dispute to make the Derivatives Counterparty aware of the nature of Debtor's affirmative claim, a brief explanation setting forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between

Debtors and the Creditors' Committee), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "Derivatives ADR Notice").  In addition, the Debtors shall serve an ADR Notice upon any trustee or other party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such fiduciaries collectively referred to as "Indenture Trustees," and each singly as an "Indenture Trustee").

b.    Derivatives Counterparty's Response to Notice.  A Derivatives Counterparty must respond to the Derivatives ADR Notice in writing through a "Statement of Position" within twenty (20) calendar days from the date of the Derivatives Counterparty's receipt of the Notice.  An Indenture Trustee must respond to the Derivatives ADR Notice in writing through a "Statement of Position" within thirty (30) calendar days from the date of such Indenture Trustee's receipt of the ADR Notice.  The response options available to a Derivatives Counterparty or an Indenture Trustee are as follows (the "Responses"):

i.    Agreeing to Settle the Demand.  If a Derivatives Counterparty agrees to settle the demand in the Derivatives ADR Notice, the Counterparty shall state in writing that the offer of settlement in the Derivatives ADR Notice is accepted.  The parties will then execute a settlement and general release (including a confidentiality provision) and,

if the matter is in litigation, the Debtor shall dismiss any

applicable claims in a lawsuit or adversary proceeding with

prejudice upon execution of the release; or

    ii.    <u>Denying the Demand</u>.  A Derivatives Counterparty may

decline to settle for the amount stated in the demand in the

Derivatives ADR Notice, in which case the Derivatives

Counterparty must include a brief explanation in the

Response to the Derivatives ADR Notice setting forth the

reason(s) for such denial.  In addition, the Derivatives

Counterparty may provide a counteroffer to the demand in

the Derivatives ADR Notice.

    c.    <u>Failure to Respond</u>.  Failure to provide a timely Response to the

Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

result, at the option of Debtors, either in an application to the Court (with

notice to any applicable Indenture Trustee) for Sanctions (as defined

below) as set forth below, including an order or judgment for  recovery of

amounts demanded by Debtors in the Derivatives ADR Notice, or

immediate entry into the mediation stage.

    d.    <u>Reply to Response</u>.  The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a reply to the Response to the

Derivatives ADR Notice (which Response shall have been determined

with the benefit of consultation between Debtors and the Creditors'

Committee), in which the Debtor shall (i) modify its Demand, (ii) respond

to any counteroffer, (iii) provide additional information in support of its demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer in which case the Derivatives ADR Dispute will automatically proceed to the Mediation Stage.

9.   Request for Initial Settlement Conference.  At any time in the Notice/Response Stage, either a Debtor or a Derivatives Counterparty may request an initial telephonic settlement conference by written request, to be held within five (5) calendar days, and, in the case of Indenture Trustees, to be held within ten (10) business days.  Within two (2) business days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request.  In the case of Indenture Trustees, within seven (7) business days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than ten (10) business days from the earliest date set forth in the written request.  If an acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage.  At least one hour shall be reserved for the initial conference to discuss settlement.  No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.

## MEDIATION STAGE

10. <u>Mediation</u>.  Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").

a.      Debtor and the Derivatives Counterparty together shall contact the mediator to schedule the initial mediation date.

b.      <u>Powers of Mediator</u>.  The mediator shall have the broadest possible discretion consistent with the Standing Order.

c.      <u>Choice of Mediator</u>.  **INSERT MEDIATOR NAME(S) is (are) APPOINTED** as the mediator(s) for Derivatives ADR Disputes reaching the Mediation Stage.  If **NAME(S)** is (are) not available to serve as mediator, an alternate mediator shall be selected as mutually agreed in writing by all parties to a specific Derivatives ADR Dispute or group of related Derivatives ADR Disputes.  Any such alternative shall be deemed to have been appointed upon entry into a written stipulation to that effect by all Debtors and Derivatives Counterparties participating in the applicable Derivatives ADR Dispute or Disputes.  If the parties cannot agree upon a selection of mediator within ten (10) calendar days of the completion of the Notice/Response Stage, the court shall appoint one or more mediators

d.      <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.

e.      <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, with service upon the other parties to the Mediation and upon the Creditors' Committee; provided, however, the Mediator may order that the

parties to serve upon each other, the Mediator, and the Creditors' Committee a Mediation Brief.  If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee.  Any such Mediation Brief shall be served and filed so as to be received no later than five (5) calendar days prior to the scheduled initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.    <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all participants in the mediation for the applicable Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority; *provided, however*, that, to the extent acceptable to the mediator, the business principal with settlement authority on behalf of a Derivative Counterparty may attend the mediation by video conference at the sole expense of the Derivative Counterparty.  The Creditors' Committee may attend and participate in all mediations hereunder.  Counsel may also be present and participate.

g.    <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

## **OTHER PROVISIONS**

11. <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12. <u>Sanctions for Parties</u>.  Each Debtor and each Derivatives Counterparty must participate in good faith with these Derivatives ADR Procedures with regard to the ADR

Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that the Debtors or a Derivatives Counterparty have not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors or the Derivatives Counterparty may be subject to such sanctions as the Court deems appropriate (the "Sanctions").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions. Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions may include, but are not limited to:

     a.    <u>Against Debtors</u>:  (i) attorneys' fees incurred by a Derivatives Counterparty (including an Indenture Trustee) with respect to the Derivatives ADR Procedures after the receipt of an ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts with Potential Recovery; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.

     b.    <u>Against Derivatives Counterparties (including Indenture Trustees)</u>: (i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; (iii)  an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice.

13. <u>Confidentiality</u>.  The confidentiality provisions of section 5.0 of the Standing

Order are hereby incorporated by reference into this Order.  No statements or arguments made or

positions taken by the mediator, the applicable Debtors, Derivative Counterparties, or the

Creditors' Committee during any part of the alternative dispute resolution process, including

Settlement Conferences and the Mediation Stage may be disclosed by the mediator or any such

parties or their attorneys and advisors to the Court or any third party; *provided, however*, that

Indenture Trustees may disclose such statements, arguments and positions as may become

necessary with their respective noteholders and advisors subject to these same confidentiality

provisions.  Similarly, all briefs, records, reports, and other documents received or made by the

mediator while serving is such capacity shall remain confidential and not be provided to the

Court, unless they would be otherwise admissible.  In addition, the mediator shall not be

compelled to disclose such records, reports, and other documents in connection with any hearing

held by the Court; *provided*, *however*, the mediator shall on a monthly basis beginning 60 days

following entry of this Order report to the Court the status of the mediation efforts but shall not

disclose the content thereof, which report shall include the number of ADR Notices served on

Derivatives Counterparties, the number of settlements reached after mediation, the number of

mediations still pending, the number of mediations that have terminated without settlement, and

the cumulative dollar amount of settlements reached with Derivatives Counterparties following

service of ADR Notices.  Rule 408 of the Federal Rules of Evidence shall apply to all aspects of

the Derivative ADR Procedures including Settlement Conferences and Mediation Stage.

14. <u>Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights</u>

<u>Unaffected</u>.  Unless a Derivatives Counterparty or a Debtor affirmatively waives its right to a

jury trial, arbitration or exclusive foreign forum selection that otherwise may exist, participation

in the Derivatives ADR Procedures shall not waive or otherwise modify such rights.  The

Derivatives Counterparty's or a Debtor's rights and defenses to contest the assertion of a jury

trial or arbitration or exclusive foreign forum selection right by a Derivatives Counterparty are

fully preserved.

15. <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation shall

bear its own counsel fees and other costs of the Derivatives ADR Procedures, including

Mediation; *provided, however*, that the Debtors shall pay the reasonable fees and costs charged

by the Mediator unless otherwise ordered by the Court pursuant to the terms of this Order.

**SO ORDERED:**

August __, 2009
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

**(Redline – Revised Proposed Order v. Proposed Order (July 20, 2009))**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                              :

In re                                 :        Chapter 11 Case No.

                              :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :        **08-13555 (JMP)**

                              :

              Debtors.        :        **(Jointly Administered)**

                              :

                              :

-------------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

        The following alternative dispute resolution procedures (the "Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

## FINDINGS

        On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including swap agreements and forward contracts (the "Derivatives Contracts with Recovery Potential"), exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties.  The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice.  The Court further FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation.  The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.    <u>Standing Mediation Order</u>.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "<u>Standing Order</u>") shall apply to the mediations to be conducted under this ~~order~~<u>Order</u>.

2.    <u>Derivatives ADR Counterparties</u>.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "<u>Derivative Counterparties</u>").

3.      <u>Derivatives ADR Disputes</u>.  Any Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures by serving the following on a Derivative Counterparty:

a.      a copy of this Order; and

b.      a Derivatives ADR Notice (as defined below) (collectively, the "<u>Derivatives ADR Package</u>").

For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives Counterparty shall be deemed adequate if such service or notice is provided to the Derivatives Counterparty, the Derivatives Counterparty's counsel, legal guardian, estate representative, or other representative by (i) <u>email and (ii) at the option of the Debtors either (x)</u> hand delivery, <u>or</u> (~~ii~~<u>y</u>) first class mail, or (~~iii~~<u>z</u>) overnight mail.

4.      <u>Settlement of Disputes During the Derivatives ADR Procedures</u>.  Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Derivatives ADR Dispute at any time before, during, or following the designation of a Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the parties, provided that such settlement

a.      complies with (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667], or (iii) other orders in these bankruptcy cases permitting such settlement, or

b.      is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors'
Committee (the "Creditors' Committee"), the contents of any papers submitted during the
mediation stage described below, and all discussions in mediation shall remain confidential and
privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of
the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

     5.     <u>Participation Mandatory</u>.  Unless otherwise provided in a specific order
applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty,
after service of an ADR Package on a Derivatives Counterparty,

     a.     compliance with the Derivatives ADR Procedures in this Order is
mandatory in the specified Derivatives ADR Disputes for both the
applicable Debtor or Debtors and each Derivatives Counterparty; and

     b.     no party is required to settle or compromise any dispute or enter into a
particular settlement or compromise, but each Debtor serving a
Derivatives ADR Package and each Derivatives Counterparty must serve
the required responses, engage in the specified communications to discuss
settlement, participate in any mediation in good faith, follow directions of
the mediator, and otherwise comply with the Derivatives ADR Procedures
specified below for all Derivatives ADR Disputes covered by such notice.

All rights, remedies, claims and defenses of a Derivatives Counterparty and a Debtor in good
faith compliance with the Derivatives ADR Procedures shall not be impaired, waived or
compromised in any further proceedings in these cases should no settlement or compromise
result from participation in these Derivatives ADR Procedures.

6.        No Substitute For Claims Procedures.  The Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures. Nothing contained herein, however, shall prevent a Derivatives Counterparty from asserting in any respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder.

7.        Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivative Counterparties.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Derivative ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Derivative ADR Procedures.

**NOTICE/RESPONSE STAGE**

8.        Notice/Response.  The initial stage of the Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR Dispute on a consensual basis (the "Notice/Response Stage").  The Notice/Response Stage shall include:

a.        Derivatives ADR Notice.  Debtors shall serve upon a Derivatives Counterparty (and its attorneys who have appeared in these cases) a notice containing sufficient information regarding the Derivatives ADR Dispute

to make the Derivatives Counterparty aware of the nature of Debtor's
affirmative claim, a brief explanation setting forth the basis for the
demand and the amount, and of its demand for settlement (which demand
shall have been determined with the benefit of consultation between
Debtors and the Creditors' Committee), including an amount of monetary
recovery Debtor(s) would accept in full settlement and compromise (a
"Derivatives ADR Notice").  In addition, the Debtors shall serve an ADR
Notice upon any trustee or other party acting in a fiduciary capacity in
connection with a trust or other financing arrangement that relates to the
applicable Derivatives Contract with any of the Debtors (such fiduciaries
collectively referred to as "Indenture Trustees," and each singly as an
"Indenture Trustee").

b.    Derivatives Counterparty's Response to Notice.  A Derivatives
Counterparty must respond to the Derivatives ADR Notice in writing
through a "Statement of Position" within twenty (20) calendar days from
the date of the Derivatives Counterparty's receipt of the Notice.  An
Indenture Trustee must respond to the Derivatives ADR Notice in writing
through a "Statement of Position" within thirty (30) calendar days from
the date of such Indenture Trustee's receipt of the ADR Notice.  The
response options available to a Derivatives Counterparty or an Indenture
Trustee are as follows (the "Responses"):

i.    Agreeing to Settle the Demand.  If a Derivatives
Counterparty agrees to settle the demand in the Derivatives

ADR Notice, the Counterparty shall state in writing that the offer of settlement in the Derivatives ADR Notice is accepted.  The parties will then execute a settlement and general release (including a confidentiality provision) and, if the matter is in litigation, the Debtor shall dismiss any applicable claims in a lawsuit or adversary proceeding with prejudice upon execution of the release; or

ii.    <u>Denying the Demand</u>.  A Derivatives Counterparty may decline to settle for the amount stated in the demand in the Derivatives ADR Notice, in which case the Derivatives Counterparty must include a brief explanation in the Response to the Derivatives ADR Notice setting forth the reason(s) for such denial.  In addition, the Derivatives Counterparty may provide a counteroffer to the demand in the Derivatives ADR Notice.

c.    <u>Failure to Respond</u>.  Failure to provide a timely Response to the Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may result, at the option of Debtors, either in an application to the Court <u>(with notice to any applicable Indenture Trustee)</u> for Sanctions (as defined below) as set forth below, including an order or judgment for  recovery of amounts demanded by Debtors in the Derivatives ADR Notice, or immediate entry into the mediation stage.

d.      <u>Reply to Response</u>.  The Debtor shall have fifteen (15) days from the date
of the receipt of the Response to serve a reply to the Response to the
Derivatives ADR Notice (which Response shall have been determined
with the benefit of consultation between Debtors and the Creditors'
Committee), in which the Debtor ~~may~~<u>shall</u> (i) modify its Demand, (ii)
respond to any counteroffer, (iii) provide additional information in support
of its demands in the Derivatives ADR Dispute, or (iv) reject any
counteroffer in which case ~~the Derivatives ADR Dispute will~~
~~automatically proceed to the Mediation Stage.  If the Debtor fails to~~
~~respond within this period,~~ the Derivatives ADR Dispute will
automatically proceed to the Mediation Stage.

9.      <u>Request for Initial Settlement Conference</u>.  At any time in the
Notice/Response Stage, either a Debtor or a Derivatives Counterparty may request an initial
telephonic settlement conference by written request, to be held within five (5) calendar days<u>,
and, in the case of Indenture Trustees, to be held within ten (10) business days</u>.  Within two (2)
~~calendar~~<u>business</u> days of a receipt of such a request, the other parties must respond by
acceptance of one of the proposed dates and times or by a proposal for an initial settlement call
no later than five (5) calendar days from the earliest date set forth in the written request.  <u>In the
case of Indenture Trustees, within seven (7) business days of a receipt of such a request, the
other parties must respond by acceptance of one of the proposed dates and times or by a proposal
for an initial settlement call no later than ten (10) business days from the earliest date set forth in
the written request.</u>  If an acceptable date cannot be achieved through this process, the parties
shall immediately proceed to the Mediation Stage.  At least one hour shall be reserved for the

initial conference to discuss settlement.  No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.

## <u>MEDIATION STAGE</u>

10.    <u>Mediation</u>.  Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").

a.    Debtor and the Derivatives Counterparty together shall contact the mediator to schedule the initial mediation date.

b.    <u>Powers of Mediator</u>.  The mediator shall have the broadest possible discretion consistent with the Standing Order ~~described below, including the discretion to certify specific legal issues to the court for decision~~.

c.    <u>Choice of Mediator</u>.  **INSERT MEDIATOR NAME(S) is (are) APPOINTED** as the mediator(s) for Derivatives ADR Disputes reaching the Mediation Stage.  If **NAME(S)** is (are) not available to serve as mediator, an alternate mediator shall be selected as mutually agreed in writing by all parties to a specific Derivatives ADR Dispute or group of related Derivatives ADR Disputes.  Any such alternative shall be deemed to have been appointed upon entry into a written stipulation to that effect by all Debtors and Derivatives Counterparties participating in the applicable Derivatives ADR Dispute or Disputes.  If the parties cannot

agree upon a selection of mediator within ten (10) calendar days of the

completion of the Notice/Response Stage, the court shall appoint one or

more mediators

d.    <u>Mediation Sites</u>.  All mediation proceedings will take place in New York,

New York, unless agreed to by the parties and the mediator.  ~~The addition~~

~~or elimination of Mediation Sites shall be within the sole discretion of the~~

~~Debtors.~~

e.    <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation

Brief, with service upon the other parties to the Mediation and upon the

Creditors' Committee; provided, however, the Mediator may order that the

parties to serve upon each other, the Mediator, and the Creditors'

Committee a Mediation Brief.  If a party to the Mediation opts to serve a

Mediation Brief upon another party to the Mediation hereunder, such

Mediation Brief shall also be filed with the Mediator and the Creditors'

Committee.  Any such Mediation Brief shall be served and filed <u>so as to</u>

<u>be received</u> no later than five (5) <u>calendar</u> days prior to the scheduled

initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.    <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all

participants in the mediation for the applicable Derivatives ADR Dispute,

must appear in person with a business principal who has settlement

authority<u>; *provided, however*, that, to the extent acceptable to the</u>

<u>mediator, the business principal with settlement authority on behalf of a</u>

<u>Derivative Counterparty may attend the mediation by video conference at</u>

the sole expense of the Derivative Counterparty.  The Creditors'
Committee may attend and participate in all mediations hereunder.
Counsel may also be present and participate.

g.      End of Mediation.  The mediation shall end upon request of a party and
         concurrence by the mediator.

**OTHER PROVISIONS**

11.      Deadlines.  Notwithstanding any of the provisions set forth above, any of
the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and
the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12.      Sanctions for Parties.  Each Debtor and each Derivatives Counterparty
must participate in good faith with these Derivatives ADR Procedures with regard to the ADR
Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a hearing, the
Court determines that the Debtors or a Derivatives Counterparty have not complied with the
Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the
Debtors or the Derivatives Counterparty may be subject to such sanctions as the Court deems
appropriate (the "Sanctions").  If a mediator reports to the Court that any party subject to this
Order is not cooperating in good faith with the mediation proceduresDerivatives ADR
Procedures, the Court may, without the need for further motion by any party, schedule a hearing
and order Sanctions.  Litigation with respect to the issuance of Sanctions shall not delay the
commencement of the Mediation Stage of these procedures upon completion of the
Notice/Response Stage.  Sanctions shallmay include, but are not limited to:

a.      Against Debtors:  (i) attorneys' fees incurred by a Derivatives
         Counterparty (including an Indenture Trustee) with respect to the
         Derivatives ADR Procedures after the receipt of an ADR Package; (ii)

fees and costs of the Mediator; (iii) termination of the Derivatives ADR

Procedures as to one or more Derivatives Contracts with Potential

Recovery; and/or (iii) rejection of some or all claims asserted by Debtors

in the applicable Derivatives ADR Dispute.

b.    <u>Against Derivatives Counterparties <span style="color:blue">(including Indenture Trustees)</span></u>:  (i)

attorneys' fees <span style="color:blue">incurred by the Debtors with respect to the Derivatives</span>

<span style="color:blue">ADR Procedures after the sending of an ADR Package</span>; (ii) fees and costs

of the Mediator; (iii)  an award of the Derivatives ADR Dispute up to the

amount specified in the ~~Debtor's~~<span style="color:blue">Derivatives ADR</span> Notice ~~(as defined~~

~~below)~~.

13.    <u>Confidentiality</u>.  The confidentiality provisions of section 5.0 of the

Standing Order are hereby incorporated by reference into this Order.  No statements or

arguments made or positions taken by the mediator, the applicable Debtors, Derivative

Counterparties, or the Creditors' Committee during any part of the alternative dispute resolution

process, including Settlement Conferences and the Mediation Stage may ~~not~~ be disclosed by the

mediator or any such parties or their attorneys and advisors to the Court or any third party<span style="color:blue">;</span>

<span style="color:blue">*provided, however,* that Indenture Trustees may disclose such statements, arguments and</span>

<span style="color:blue">positions as may become necessary with their respective noteholders and advisors subject to</span>

<span style="color:blue">these same confidentiality provisions</span>.  Similarly, all briefs, records, reports, and other documents

received or made by the mediator while serving is such capacity shall remain confidential and

not be provided to the Court, unless they would be otherwise admissible.  In addition, the

mediator shall not be compelled to disclose such records, reports, and other documents in

connection with any hearing held by the Court; *provided*, *however*, the mediator ~~may~~<span style="color:blue">shall on a</span>

monthly basis beginning 60 days following entry of this Order report to the Court the status of

the mediation efforts but shall not disclose the content thereof, which report shall include the

number of ADR Notices served on Derivatives Counterparties, the number of settlements

reached after mediation, the number of mediations still pending, the number of mediations that

have terminated without settlement, and the cumulative dollar amount of settlements reached

with Derivatives Counterparties following service of ADR Notices.  Rule 408 of the Federal

Rules of Evidence shall apply to all aspects of the Derivative ADR Procedures including

Settlement Conferences and Mediation Stage.

          14.       Jury ~~Trials~~Trial, Arbitration and Exclusive Foreign Forum Selection

Rights Unaffected.  ~~Except to the extent~~Unless a Derivatives Counterparty ~~affirmatively chooses~~

~~the mediation option set forth herein~~or a Debtor affirmatively waives its right to a jury trial,

arbitration or exclusive foreign forum selection that otherwise may exist, participation in the

Derivatives ADR Procedures shall not waive ~~any right to a jury trial that might otherwise exist.~~

or otherwise modify such rights.  The Derivatives Counterparty's or a Debtor's rights and

defenses to contest the assertion of a jury trial or arbitration or exclusive foreign forum selection

right by a Derivatives Counterparty are fully preserved.

15.    <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation shall bear its own counsel fees and other costs of the Derivatives ADR Procedures, including Mediation; *provided, however*, that the party who requests the Mediation Debtors shall pay the reasonable fees and costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this Order.

**SO ORDERED:**

August __, 2009
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit D**

**(Redline – Revised Proposed Order v. Interim Order filed July 31, 2009)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                              :
In re                                         :      Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :      08-13555 (JMP)
                                              :
                    Debtors.                  :      (Jointly Administered)
                                              :
                                              :
----------------------------------------------------------------x

### ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS

The following alternative dispute resolution procedures (the "Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

### FINDINGS

On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including swap agreements and forward contracts (the "Derivatives Contracts with Recovery Potential"), exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties. The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice. The Court further FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation. The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.    Standing Mediation Order.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "Standing Order") shall apply to the mediations to be conducted under this Order.

2.    Derivatives ADR Counterparties.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "Derivative Counterparties").

3.    Derivatives ADR Disputes.  Any Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures by serving the following on a Derivative Counterparty:

a.    a copy of this Order; and

b.       a Derivatives ADR Notice (as defined below) (collectively, the

"Derivatives ADR Package").

For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives

Counterparty shall be deemed adequate if such service or notice is provided to the Derivatives

Counterparty, the Derivatives Counterparty's counsel, legal guardian, estate representative, or

other representative by (i) email and (ii) at the option of the Debtors either (x) hand delivery, or

(y) first class mail, or (z) overnight mail.

4.       Settlement of Disputes During the Derivatives ADR Procedures.  Nothing

contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a

Derivatives ADR Dispute at any time before, during, or following the designation of a

Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the

parties, provided that such settlement

a.       complies with (i) the Order, dated December 16, 2008, authorizing the

Debtors to establish procedures for the settlement or assumption and

assignment of prepetition derivative contracts [Docket 2257]; (ii) the

Order, dated January 29, 2009, authorizing the consensual assumption and

assignment of prepetition derivative contracts [Docket No. 2667], or (iii)

other orders in these bankruptcy cases permitting such settlement, or

b.       is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors'

Committee (the "Creditors' Committee"), the contents of any papers submitted during the

mediation stage described below, and all discussions in mediation shall remain confidential and

privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of

the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

      5.    <u>Participation Mandatory</u>.  Unless otherwise provided in a specific order

applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty,

after service of an ADR Package on a Derivatives Counterparty,

      a.    compliance with the Derivatives ADR Procedures in this Order is

mandatory in the specified Derivatives ADR Disputes for both the

applicable Debtor or Debtors and each Derivatives Counterparty; and

      b.    no party is required to settle or compromise any dispute or enter into a

particular settlement or compromise, but each Debtor serving a

Derivatives ADR Package and each Derivatives Counterparty must serve

the required responses, engage in the specified communications to discuss

settlement, participate in any mediation in good faith, follow directions of

the mediator, and otherwise comply with the Derivatives ADR Procedures

specified below for all Derivatives ADR Disputes covered by such notice.

All rights, remedies, claims and defenses of a Derivatives Counterparty and a Debtor in good

faith compliance with the Derivatives ADR Procedures shall not be impaired, waived or

compromised in any further proceedings in these cases should no settlement or compromise

result from participation in these Derivatives ADR Procedures.

      6.    <u>No Substitute For Claims Procedures</u>.  The Derivatives ADR Procedures

are not intended and shall not be utilized as a substitute for chapter 11 claims procedures.

Nothing contained herein, however, shall prevent a Derivatives Counterparty from asserting in

any respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR

Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Derivative Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder.

7.       Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivative Counterparties.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Derivative ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Derivative ADR Procedures.

## NOTICE/RESPONSE STAGE

8.       Notice/Response.  The initial stage of the Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR Dispute on a consensual basis (the "Notice/Response Stage").  The Notice/Response Stage shall include:

a.       Derivatives ADR Notice.  Debtors shall serve upon a Derivatives Counterparty (and its attorneys who have appeared in these cases) a notice containing sufficient information regarding the Derivatives ADR Dispute to make the Derivatives Counterparty aware of the nature of Debtor's affirmative claim, a brief explanation setting forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between

Debtors and the Creditors' Committee), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "Derivatives ADR Notice"). In addition, the Debtors shall serve an ADR Notice upon any trustee or other party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such fiduciaries collectively referred to as "Indenture Trustees," and each singly as an "Indenture Trustee").

b.  Derivatives Counterparty's Response to Notice. A Derivatives Counterparty must respond to the Derivatives ADR Notice in writing through a "Statement of Position" within twenty (20) calendar days from the date of the Derivatives Counterparty's receipt of the Notice. An Indenture Trustee must respond to the Derivatives ADR Notice in writing through a "Statement of Position" within thirty (30) calendar days from the date of such Indenture Trustee's receipt of the ADR Notice. The response options available to a Derivatives Counterparty or an Indenture Trustee are as follows (the "Responses"):

i.  Agreeing to Settle the Demand. If a Derivatives Counterparty agrees to settle the demand in the Derivatives ADR Notice, the Counterparty shall state in writing that the offer of settlement in the Derivatives ADR Notice is accepted. The parties will then execute a settlement and general release (including a confidentiality provision) and,

if the matter is in litigation, the Debtor shall dismiss any

applicable claims in a lawsuit or adversary proceeding with

prejudice upon execution of the release; or

ii.    <u>Denying the Demand</u>.  A Derivatives Counterparty may

decline to settle for the amount stated in the demand in the

Derivatives ADR Notice, in which case the Derivatives

Counterparty must include a brief explanation in the

Response to the Derivatives ADR Notice setting forth the

reason(s) for such denial.  In addition, the Derivatives

Counterparty may provide a counteroffer to the demand in

the Derivatives ADR Notice.

c.    <u>Failure to Respond</u>.  Failure to provide a timely Response to the

Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

result, at the option of Debtors, either in an application to the Court (with

notice to any applicable Indenture Trustee) for Sanctions (as defined

below) as set forth below, including an order or judgment for  recovery of

amounts demanded by Debtors in the Derivatives ADR Notice, or

immediate entry into the mediation stage.

d.    <u>Reply to Response</u>.  The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a reply to the Response to the

Derivatives ADR Notice (which Response shall have been determined

with the benefit of consultation between Debtors and the Creditors'

Committee), in which the Debtor shall (i) modify its Demand, (ii) respond

to any counteroffer, (iii) provide additional information in support of its demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer in which case the Derivatives ADR Dispute will automatically proceed to the Mediation Stage.

9.    <u>Request for Initial Settlement Conferenc</u>e.  At any time in the Notice/Response Stage, either a Debtor or a Derivatives Counterparty may request an initial telephonic settlement conference by written request, to be held within five (5) calendar days, and, in the case of Indenture Trustees, to be held within ten (10) business days.  Within two (2) business days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request.  In the case of Indenture Trustees, within seven (7) business days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than ten (10) business days from the earliest date set forth in the written request.  If an acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage.  At least one hour shall be reserved for the initial conference to discuss settlement.  No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.

## MEDIATION STAGE

10.    <u>Mediation</u>.  Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").

   a.    Debtor and the Derivatives Counterparty together shall contact the mediator to schedule the initial mediation date.

   b.    <u>Powers of Mediator</u>.  The mediator shall have the broadest possible discretion consistent with the Standing Order.

   c.    <u>Choice of Mediator</u>.  **INSERT MEDIATOR NAME(S) is (are) APPOINTED** as the mediator(s) for Derivatives ADR Disputes reaching the Mediation Stage.  If **NAME(S)** is (are) not available to serve as mediator, an alternate mediator shall be selected as mutually agreed in writing by all parties to a specific Derivatives ADR Dispute or group of related Derivatives ADR Disputes.  Any such alternative shall be deemed to have been appointed upon entry into a written stipulation to that effect by all Debtors and Derivatives Counterparties participating in the applicable Derivatives ADR Dispute or Disputes.  If the parties cannot agree upon a selection of mediator within ten (10) calendar days of the completion of the Notice/Response Stage, the court shall appoint one or more mediators

   d.    <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.  ~~The addition or elimination of Mediation Sites shall be within the sole discretion of the Debtors.~~

e.     <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, with service upon the other parties to the Mediation and upon the Creditors' Committee; provided, however, the Mediator may order that the parties to serve upon each other, the Mediator, and the Creditors' Committee a Mediation Brief.  If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee.  Any such Mediation Brief shall be served and filed so as to be received no later than five (5) calendar days prior to the scheduled initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.     <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all participants in the mediation for the applicable Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority; *provided, however*, that, to the extent acceptable to the mediator, the business principal with settlement authority on behalf of a Derivative Counterparty may attend the mediation by video conference at the sole expense of the Derivative Counterparty.  The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

g.     <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

## <u>OTHER PROVISIONS</u>

11.    <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12.    <u>Sanctions for Parties</u>.  Each Debtor and each Derivatives Counterparty must participate in good faith with these Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that the Debtors or a Derivatives Counterparty have not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors or the Derivatives Counterparty may be subject to such sanctions as the Court deems appropriate (the "<u>Sanctions</u>").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions. Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions ~~shall~~may include, but are not limited to:

a.    <u>Against Debtors</u>:  (i) attorneys' fees incurred by a Derivatives Counterparty (including an Indenture Trustee) with respect to the Derivatives ADR Procedures after the receipt of an ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts with Potential Recovery; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.

      b.      <u>Against Derivatives Counterparties (including Indenture Trustees)</u>:  (i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; (iii)  an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice.

      13.    <u>Confidentiality</u>.  The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.  No statements or arguments made or positions taken by the mediator, the applicable Debtors, Derivative Counterparties, or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage may be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party<u>; *provided, however,* that Indenture Trustees may disclose such statements, arguments and positions as may become necessary with their respective noteholders and advisors subject to these same confidentiality provisions</u>.  Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving is such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible.  In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; *provided*, *however*, the mediator shall on a monthly basis beginning 60 days following entry of this Order report to the Court the status of the mediation efforts but shall not disclose the content thereof, which report shall include the number of ADR Notices served on Derivatives Counterparties, the number of settlements reached after mediation, the number of mediations still pending, the number of mediations that have terminated without settlement, and the cumulative dollar amount of settlements reached

with Derivatives Counterparties following service of ADR Notices.  Rule 408 of the Federal

Rules of Evidence shall apply to all aspects of the Derivative ADR Procedures including

Settlement Conferences and Mediation Stage.

14. <u>Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights</u>

<u>Unaffected</u>.  Unless a Derivatives Counterparty or a Debtor affirmatively waives its right to a

jury trial, arbitration or exclusive foreign forum selection that otherwise may exist, participation

in the Derivatives ADR Procedures shall not waive or otherwise modify such rights.  The

Derivatives Counterparty's or a Debtor's rights and defenses to contest the assertion of a jury

trial or arbitration or exclusive foreign forum selection right by a Derivatives Counterparty are

fully preserved.

15. <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation

shall bear its own counsel fees and other costs of the Derivatives ADR Procedures, including

Mediation; *provided, however*, that the Debtors shall pay the reasonable fees and costs charged

by the Mediator unless otherwise ordered by the Court pursuant to the terms of this Order.

**SO ORDERED:**

August __, 2009
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit E

**Royal Bank of Scotland PLC Proofs of Claim**

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>LEHMAN BROTHERS HOLDINGS | Case Number: |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**THE ROYAL BANK OF SCOTLAND PLC**

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:

THE ROYAL BANK OF SCOTLAND PLC, 7TH FLOOR, 1 HARDMAN BOULEVARD
MANCHESTER M3 3AQ    TELEPHONE NUMBER 0044 161 755 6591

Telephone number: *OUR REF CIU 0835-26SEP08*

**Court Claim Number:**_____
*(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ *HKD 192000*
*(HONG KONG DOLLARS)*

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**2. Basis for Claim:** _____
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

Value of Property:$_____  Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____  Basis for perfection: _____

Amount of Secured Claim: $_____  Amount Unsecured: $_____

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Atta[ch such as promissory notes, purchase] orders, invoices, item[...]rtgages, and security agreements.
You may also attach [...]vidence of perfection of a security interest. Y[...on reverse side.)]

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)     0000003297

DO NOT SEND ORI[...]
SCANNING.

[...] BE DESTROYED AFTER

If the documents are not available, please explain:

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

Date: *5/13/09*

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*E Szubert.*  *ELAINE SZUBERT RECOVERIES & CONCERNS*

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

MAR 11 2009

B 10 (Official Form 10) (12/07) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien

documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and applicable orders of the bankruptcy court.

DATED 5TH MARCH 2009
CLAIM FROM:
THE ROYAL BANK OF SCOTLAND PLC
7TH FLOOR, RECOVERIES AND CONCERNS
1 HARDMAN BOULEVARD
MANCHESTER
ENGLAND
M3 3AQ

We require to make a claim against Lehman Brothers Holdings for HKD 192000.

This is in respect of the following

We received a payment from SLHIGB2H   (Lehman Brothers London) for an amount
of HKD 192000 under their reference D00005336399 to credit the account of our
customer AXA INVESTMENT MANAGERS GS LTD.   The funds were credited to
our customer's account but unfortunately due to an error by ourselves the funds were
returned to Lehman Brothers via Standard Chartered Bank in Hongkong.

We tried to recall the funds from Standard Chartered Bank in Hongkong  but were
advised that they had already been returned to Lehman Brothers (SLHIGB2H) on
08SEP08 under their  REF TT LBQHD00005336399 for an amount of
HKD 191,550.00.

We have been trying to contact Lehman Brothers both by SWIFT and telephone and
eventually found out that we needed to contact Price Waterhouse Coopers who were
the Administrators.   We received holding messages from PCW when we sent them
emails.   I have recently received a message Alvarez & Marsal Dispute Analysis &
Forensics, LLC and have been advised to complete the attached "Proof of Claim"
form and forward to yourselves.

I would be grateful if you could consider this claim and advise the action taken.



ROYAL MAIL
POSTAGE PAID GB
HQ 8351

AIR MAIL

RECEIVED
MAR 11 2009
BY:

MAN BROTHERS HOLDINGS
CLAIMS PROCESSING
SOLUTIONS LLC

CPIO BANKRUPTCY

STATION, PO BOX 5076

YORK
0150- 5076

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |

UNIQUE IDENTIFICATION NUMBER: 1000157408

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)   0000006312

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000157408******
RBS COMMERCIAL SERVICES
SMITH HOUSE PO BOX NO 50
ELMWOOD AVENUE
FELTHAM TW13 7QD
UNITED KINGDOM

Telephone number:                    Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:                    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.   Amount of Claim as of Date Case Filed:** $ _____

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐   Check this box if all or part of your claim is based on a Derivative Contract.*
☐   Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐   Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** _____
(See instruction #2 on reverse side.)

**3.   Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4.   Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other

Describe: _____

Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

**Amount of Secured Claim: $_____ Amount Unsecured: $_____**

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
(See instruction #6 on reverse side.)

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

**FOR COURT USE ONLY**

**FILED / RECEIVED**

JUL 2 7 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



**RBS**
*The Royal Bank of Scotland*

**Invoice Finance**

EPIQ BANKRUPTCY SOLUTIONS LLC
FDR STATION
PO BOX 5076
NEW YORK
NY
10105-5076

24TH JULY 2009

Dear Sirs,

| | | |
|---|---|---|
| Debtor: - | 5358AAG5 | LEHMAN BROTHERS INC |
| Supplier: | 68428 | ACF CONSULTANTS LTD |
| Debt: | $21,608.55 | |

All debts arising under contracts made between the above named debtor and supplier have been assigned by the supplier to RBS Invoice Finance Limited.  This letter serves to give notice of the assignment.

We enclose a proof of debt form and would be grateful to receive confirmation from you that the debt is not disputed and that RBS Invoice Finance Limited has been recorded as a creditor of the debtor for the full amount of the debt.

Please will you send all future correspondence to us at the above address quoting the name and number of the supplier.

We also look forward to receiving a statement of affairs and an indication of the prospects of the payment of a dividend to unsecured creditors.

Yours faithfully

Michelle Barnden
Manager of Bad Debts
Customer Risk
RBS Invoice Finance Ltd

RBS Invoice Finance Limited
Registered number 662221
Registered Office: Smith House, Elmwood Avenue,
Feltham, Middlesex, TW13 7QD

68428 5358AAG5

| Proof of Debt General Form | |
|---|---|
| Name of Creditor | **The RBS Invoice Finance Limited.**<br>**Assignees:**<br>        **ACF CONSULTANTS LTD** |
| Address of Creditor | **Smith House PO Box 50**<br>**Elmwood Ave, Feltham**<br>**Middlesex  TW13 7QD.**<br>**Tel 0870 6000520** |
| Total amount of Debt | **$21,608.55** |
| Particulars of how debt arose and date incurred | **Debts factored.**<br>**Statement/ledger attached.** |
| Particulars of any security held | |
| Value of security | **£** |

PLEASE ATTACH ANY DOCUMENTARY EVIDENCE FOR DEBT
NB Bills or other negotiable securities must be produced before proof can be admitted

Signature of creditor or
person signing on his behalf                                    Name in BLOCK LETTERS


.........................................              M BARNDEN...............................
Position with or relationship
to creditor                                                    **DULY AUTHORISED UNDER THE**
                                                               **COMMON SEAL OF THE COMPANY**
**MANAGER BAD DEBT**

Admitted non-preferentially for  £

Date



.......................................... Liquidator

RBS Invoice Finance Limited
Registered number 662221
Registered Office: Smith House, Elmwood Avenue,
Feltham, Middlesex, TW13 7QD

# ❊❊ RBS
The Royal Bank of Scotland

Lehman Brothers Inc
Expense Control Dept
28th Floor
101 Hudson Street
JERSEY CITY
NJ-07302
U.S.A.

## Customer Statement
## Notice of assignment

**Page 1**
**Statement date** 24 October 08
**Your contact** Norbert Wattler
**+44(0)2088957502**

**Your customer no** 68428 / 5358AAG5
**Your supplier** ACF Consultants Limited
Expense Control Dept
28th Floor
**Invoice address** 101 Hudson Street
JERSEY CITY
NJ-07302
U.S.A.

**Assignment** The amounts due in this statement have been assigned to and are payable only to RBS Invoice Finance
Limited. Your in debtedness can only be discharged by payment to RBS Invoice Finance,Smith
House,Elmwood Avenue, Feltham, TW13 7QD and not any other party. Please see overleaf for payment
details.

### ent details

USD

| Due date | Ref no | Description/order no | Net amount | VAT/non-discountable | Total |
|---|---|---|---|---|---|
| 5 Sep 08 | 18061 | Invoice IBD Trng | 3,577.77 | .00 | 3,577.77 |
| 11 Oct 08 | 18080 | Invoice IBD Trng | 18,030.78 | .00 | 18,030.78 |
| **21,608.55** | Current: | .00 | Credits: | (.00) | **Total due:** **21,608.55** |

Items paid within the last few days may still appear on this statement.

## Return slip

**Page 1**
**Instructions** X your payments and send return slips
to RBS Invoice Finance Limited.

**Please also send your Remittance Advice by one of the following methods:**
By post to our address shown overleaf
Fax to 0044 2088957896
By email to 'remittance.advices@rbsif.co.uk'

**Statement date** 24 October 08
**Name** Lehman Brothers Inc
**Customer no** 68428 / 5358AAG5
**Supplier** ACF Consultants Limited

USD

| ✓ | Total | Ref no | Ref date |
|---|---|---|---|
| ☐ | 3,577.77 | 18061 | 6 Aug 08 |
| ☐ | 18,030.78 | 18080 | 11 Sep 08 |
| | **21,608.55** | **Total due:** | |





BY AIR MAIL
*par avion*

Royal Mail

ROYAL MAIL

POSTAGE PAID GB
HOUNSLOW 3

RECEIVED

JUL 27 2009