Dennis F. Dunne
Wilbur F. Foster, Jr.
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

and

David S. Cohen (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* : | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtors. : | |

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN SUPPORT OF THE DEBTORS' ALTERNATIVE
DISPUTE RESOLUTION MOTION AND REVISED PROPOSED ORDER**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors-in-possession in the above-referenced

chapter 11 cases (collectively, the "Debtors") files this statement in support (the "Statement in

Support") of the Debtors' Motion Pursuant to Section 105(A) of the Bankruptcy Code and

General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures

for Affirmative Claims of Debtors Under Derivatives Contracts (the "ADR Motion") and the revised proposed Alternative Dispute Resolution Procedures Order For Affirmative Claims of Debtors Under Derivative Contracts (as revised, the "Revised Proposed ADR Order"). In support thereof, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtors are party to hundreds—possibly thousands—of open and terminated Derivatives Contracts with Recovery Potential,[1] many of which are either currently or expected to be the subject of disputes between the Debtors and the Derivatives Counterparties. To avoid litigation over these myriad Derivatives Contracts, the Debtors filed the ADR Motion seeking to establish alternative dispute resolution procedures (the "Derivatives ADR Procedures") that would facilitate the expedient and efficient resolution of these disputes. Although numerous parties (the "ADR Objectors") filed objections to the Derivatives ADR Procedures, most of the ADR Objectors recognize the need for alternative dispute resolution with respect to these transactions.[2]

2. In consultation with the Committee, the Debtors have conferred with many of the ADR Objectors and have further revised the original, proposed ADR Order in an effort to consensually resolve numerous objections. Despite the Debtors' good faith efforts, however, a number of unfounded objections remain. Of particular significance to the Committee are (1) the contentions by several ADR Objectors that the Debtors should be required to provide the Derivatives Counterparties with the same information required of Derivatives Counterparties

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning set forth in the ADR Motion.

[2] See, e.g., Objection of Gaselys [Docket No. 4550] at 2 ("Gaselys has no objection to the Debtor's efforts to establish an alternative dispute resolution process in connection with the prepetition derivatives contracts . . . ."); Objection of Consolidated Container Company LLC [Docket No. 4458] at 2 ("CCC supports establishing a meaningful, fair and constitutional dispute resolution process . . . .").

in the Derivatives Questionnaire[3] and (2) the objections that seek to exclude the Committee from participating in the mediations, including, for example, the objections of Carlton Communications Limited ("Carlton") and Instituto de Credito Oficial ("ICO").

3. Objections as to both of these points should be overruled. The Debtors should not be required to provide the same amount of information as the Derivatives Counterparties are required to submit pursuant to the Bar Date Order because the burden placed on the Debtors (which are, by definition, counter-parties to every Derivatives Contract with Recovery Potential) would be exponentially greater than that placed on the Derivatives Counterparties. In addition, excluding the Committee from the mediation process — the very purpose of which is to foster and facilitate consensual resolution of valuable claims held by the Debtors' estates — cannot be reconciled with either (1) the Court's prior orders in these cases and (2) the Committee's statutory rights and obligations under sections 1103(c) and 1109(b) of the Bankruptcy Code.

## BACKGROUND

4. Commencing on September 15, 2008 and periodically thereafter, the Debtors commenced these chapter 11 cases by filing with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On September 17, 2008, the United States Trustee for the Southern District of New York appointed the Committee.

---

[3] The Derivative Questionnaire is defined in the Order Pursuant to Sections 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order"). Under the Bar Date Order, proofs of claim are due on or before September 22, 2009 at 5:00 p.m., and where applicable, Derivatives Questionnaires are due on or before October 22, 2009 at 5:00 p.m.

### A. ADR Motion, Objections, and Revised Proposed ADR Order

5. On July 20, 2009, after extensive consultation with the Committee, the Debtors filed the ADR Motion to establish the Derivatives ADR Procedures "for the purpose of reducing the cost associated with enforcing the Debtors' affirmative claims under the Derivatives Contracts with Recovery Potential, preserving the value available under such contracts, and promoting judicial efficiency in these complex chapter 11 cases." (ADR Motion ¶ 12.) On July 30 and 31, 2009, the ADR Objectors filed their objections.

6. After conferring with many of the ADR Objectors, and in consultation with the Committee, the Debtors submitted the Revised Proposed ADR Order, which, *inter alia*: (1) explicitly contemplates that business principals may attend mediations by video conference; (2) provides that the Debtors must reply to a Derivatives Counterparty's response and counteroffer of settlement, if any; (3) clarifies that the Debtors will pay the reasonable fees charged by the mediator; (4) preserves a Derivatives Counterparty's right, if any, to a jury trial, to arbitration, or under an exclusive foreign forum selection agreement, absent the Derivatives Counterparty affirmatively waiving those rights; (5) permits a pool of mediators to be appointed by the Court; (6) eliminates a mediator's ability to certify legal questions to the Court; (7) distinguishes Indenture Trustees from Derivatives Counterparties; (8) increases the time periods for Indenture Trustees to take required actions; and (9) contains a clear means for any party to end mediation upon agreement of the mediator.[4]

7. Moreover, the Debtors have revised the Derivative ADR Procedures to require the mediator(s) to make monthly status reports to the Court beginning sixty (60) days

---

[4] Attached as an exhibit to the Debtors' Omnibus Reply to Objections to Motion of the Debtors Pursuant to Section 105(A) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivatives Contracts [Docket No. 5903] ("Omnibus Reply") is a "red-line" that clearly identifies the changes made between the originally proposed ADR Order and the Revised Proposed ADR Order.

after entry of the Revised Proposed ADR Order. Each status report will disclose to the Court the number of ADR Notices served, the number of mediations pending, the aggregate dollar amount of settlements reached and the number of mediations terminated without settlement. Providing the Court with these publicly available status reports will improve transparency in these cases while preserving the confidentiality of the mediation process.

8. Despite these revisions to the Derivatives ADR Procedures and reaching agreement with certain ADR Objectors, a number of objections remain outstanding. The Committee responds specifically to: (1) the objections that contend that the Debtors must provide the information to the Derivatives Counterparties as the Derivatives Counterparties are required to provide to the Debtors in the Derivatives Questionnaire; and (2) those objections that seek to exclude the Committee from the Derivatives ADR Procedures.

**ARGUMENT**

**A.     Derivatives ADR Procedures Are Necessary and Efficient**

9. The Committee fully supports the proposed Derivatives ADR Procedures as they are carefully tailored to avoid unnecessary litigation, reduce the burden on the Court and preserve the Debtors' assets. The Debtors are party to hundreds—possibly thousands—of open and terminated Derivatives Contracts with Recovery Potential. Given the complex nature of the transactions and the significant sums involved, the Debtors, the Committee and the affected Derivatives Counterparties could be mired in expensive, burdensome and time-consuming litigation concerning the issues raised by Derivatives Contracts with Recovery Potential. The Derivatives ADR Procedures will minimize the expense of resolving these disputes through a structured process designed to foster consensual resolution.

10. Specifically, the Notice/Response Stage affords the parties a cost effective and confidential method of communicating their respective evaluation of the relevant dispute and

5

settlement positions. The Mediation Stage provides the parties with a cost effective opportunity to engage in meaningful face-to-face settlement negotiations between business principals with settlement authority, assisted by an experienced, neutral mediator. Thus, the Derivatives ADR Procedures create an expedient, efficient process in which the Debtors can engage the Derivatives Counterparties in good faith settlement negotiations.[5] The Committee believes the Derivatives ADR Procedures are necessary to facilitate these beneficial goals.

B. **The Debtors Should Not be Required to Submit the Equivalent of Derivatives Questionnaires to Derivatives Counterparties**

11. Certain ADR Objectors urge this Court to require the Debtors to provide to Derivatives Counterparties the same type of information that each Derivatives Counterparty is already required to provide to the Debtors in the Derivatives Questionnaire. See, e.g., Objection of Consolidated Container Company LLC [Docket No. 4458] at 8. Placing such a burden on the Debtors conflicts with the principal goal of the Derivatives ADR Procedures – establishing a simple, cost effective and accelerated method of beginning settlement negotiations.

12. The Derivatives ADR Procedures require the Debtors "to make the Derivatives Counterparty aware of the nature of Debtor's affirmative claim and of its demand for settlement." Revised Proposed ADR Order ¶ 8(a). In contrast, the information required of the Derivatives Counterparties under the Bar Date Order is intended to facilitate the Debtors' and Committee's monumental task of reviewing and evaluating thousands of proofs of claim relating to Derivatives Contracts. The Debtors ought not be unnecessarily burdened with providing information beyond that required to accomplish the specific settlement goals of the ADR Motion.

---

[5] Although the Revised Proposed ADR Order permits only Debtors to initiate the Derivatives ADR Procedures, it does not alter or limit the right of Derivatives Counterparties to seek to initiate an alternative dispute resolution process with Debtors under the Bankruptcy Court's General Order M-143 (which can be found at http://www.nysb.uscourts.gov/orders/m143.pdf).

## C. The Committee Should Have a Role in the Derivatives ADR Procedures

13. As noted above, several ADR Objectors contend that the Committee should not participate in the Notice/Response Stage or the Mediation Stage. These objections are entirely without merit, as this Court's prior orders support the Committee's participation and sections 1103(c) and 1109(b) authorize inclusion of the Committee in all aspects of the Derivatives ADR Procedures.

### 1. The Court's Prior Orders Support Inclusion of the Committee

14. First and foremost, the Court's prior orders require the Committee's participation. The Court's Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of the Prepetition Derivatives Contracts (dated December 16, 2008) [Docket No. 2257] (the "Derivatives Settlement Order") and the Order Approving Consensual Assumption and Assignment of Prepetition Derivatives Contracts (dated January 28, 2009) [Docket No. 2667] (the "Derivatives Assumption Order") specifically contemplate the Committee's involvement in settling disputes under Derivatives Contracts. Significantly, the Derivatives Settlement Order and Derivatives Assumption Order both require the Debtors to provide the Committee with all material information regarding proposed settlements or assumptions and assignment of Derivatives Contracts. The Derivatives Settlement Order further provides that "the Debtors *may not consummate a transaction* pursuant to the Assumption and Assignment Procedures or Termination and Settlement Procedures unless either (i) the Committee (including through its advisors) consents . . . or (ii) the Court authorizes consummation of the transaction." Derivatives Settlement Order at 13-14 (emphasis added). As such, the objections that contend that the Committee should not participate in the Derivatives ADR Procedures are unfounded and should be overruled.

## 2. Sections 1103(c) and 1109(b) *Authorize* Inclusion of the Committee and the Committee's Statutory Duties *Require* its Participation

15. In addition, the Bankruptcy Code specifically contemplates the Committee's participation in the Derivatives ADR Procedures. Section 1103(c) of the Bankruptcy Code empowers the Committee to, *inter alia*, (1) "consult with the trustee or the debtor in possession concerning the administration of the case"; (2) "investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and desirability of the continuation of such business, and any other matter relevant to the case or to the formulation of a plan"; and (3) "perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(c) (1), (2) and (5). Without the right to participate in the Derivatives ADR Procedures as contemplated in the Revised Proposed ADR Order, the Committee will be unable to effectively satisfy its mandate under section 1103 to: (1) consult with the Debtors; (2) investigate the material disclosed in the mediations, which unquestionably involve the "acts, conduct, assets, liabilities . . . [or] other matter relevant to the case" (section 1103(c)(2)); and (3) perform other services that would be in the interest of creditors.[6]

16. Further, section 1109(b) of the Bankruptcy Code "plainly grants [a creditors' committee] a right to raise, appear and be heard on *any issue*" in a bankruptcy case. Term Loan Holder Comm. v. Ozer Group L.L.C. (In re Caldor Corp.), 303 F.3d 161, 169 (2d Cir. 2002) (emphasis supplied). The Second Circuit has unambiguously interpreted the word "issue" expansively to mean "a point in dispute between two or more parties." Id. at 168. The

---

[6] "When a power granted under section 1103 is needed for the committee to fulfill its overriding duty of protecting the creditors' interest, *the committee is obliged to employ the power*." Advisory Comm. of Major Funding Corp. v. Sommers (In re Advisory Comm. of Major Funding Corp.), 109 F.3d 219, 224 (5th Cir. 1997) (emphasis supplied).

8

Committee's absolute right to be heard includes "the right to file their own papers [and] to argue and respond to arguments in court . . ." as part of adversary proceedings and contested matters. Adelphia Communs. Corp. v. Rigas (In re Adelphia Communs. Corp), 285 B.R. 848, 856 (Bankr. S.D.N.Y. 2002). In any circumstance where the Derivatives Contracts with Recovery Potential were the subject of an adversary proceeding or contested matter, the Committee would have an absolute right to participate actively in the resolution of that dispute. Id. The Committee's involvement in the Derivatives ADR Procedures would bring the same benefits, and vindicate the same rights and duties, as its involvement in litigation or contested matters. Precluding the Committee's involvement would obviate the purpose of section 1109(b). See In re Caldor Corp., 303 F.3d at 169.

17.     Moreover, the Committee has a statutory obligation to represent the interests of the Debtors' unsecured creditors. See In re SPM Mfg. Corp., 984 F.2d 1305, 1316 (1st Cir. 1993) ("[T]he committee is a fiduciary to for those whom it represents . . .") (collecting sources). Given that the Derivatives Contracts with Recovery Potential concern hundreds of millions of dollars of the Debtors' property and, correspondingly, an enormous potential recovery to the Debtors' unsecured creditors, the Committee's need to participate in the Derivatives ADR Procedures to fulfill its statutory duties is manifest.[7]

**D.     Objections to the Committee's Participation Lack Merit**

18.     Despite this clear authority—and without citing any legal authority to the contrary—several ADR Objectors contend that the Derivatives Counterparties should be able to

---

[7] Indeed, courts have repeatedly observed that the active participation of official creditors' committees is vital to the effective administration of chapter 11 cases. See, e.g., In re Refco, Inc., 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) ("'An official committee of creditors plays a pivotal role in the bankruptcy process. The function of an official creditors committee is to aid, assist and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected.'") (quoting Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 514 (S.D.N.Y. 1994)).

unilaterally exclude the Committee from the Derivatives ADR Procedures. <u>See</u> Objection of Carlton [Docket No. 4563] ¶ 22; Objection of ICO [Docket No. 4569] ¶ 19. These contentions are without merit.

19. First, under the Derivatives Settlement Order, the Committee must approve any settlement of Derivatives Contracts. <u>See</u> Derivatives Settlement Order at 13-14. If the Committee were excluded from the Derivatives ADR Procedures, the Committee would be forced to evaluate any proposed settlement after the fact and without the benefit of the information revealed therein. By necessity, this would involve, among other things, consultation with the Debtors' and the Committee's financial advisors and legal counsel, and potential discovery from each Derivatives Counterparty. These steps run contrary to the streamlined process proposed by the Derivatives ADR Procedures as they would impose unnecessary duplication, which can be avoided by the Committee's participation at the outset.

20. Moreover, if the Committee objects to a proposed settlement, the Debtors and the Derivatives Counterparties would face the undesirable choice of engaging in another round of mediation, filing a motion with the Court to approve a settlement over the Committee's objection or commencing litigation. By comparison, including the Committee in the process allows for the possibility that a settlement reached pursuant to the Derivatives ADR Procedures can be quickly approved under the Derivatives Settlement Order, without requiring further involvement of the Court.

21. Second, the bald assertion that the Committee's involvement in the mediation will "frustrate the Debtors' intended purpose . . . to maximize the value of Debtors' claims under the Derivatives Contracts," is entirely unfounded. Objection of Carlton [Docket No. 4563] ¶ 22; <u>see also</u> Objection of ICO [Docket No. 4569] ¶ 19 (same). The Committee's

statutory duty and sole interest is to maximize the value of the estates for the benefit of the Debtors' unsecured creditors. The Committee and its advisors are well-equipped to evaluate the Derivatives Contracts and proposed settlements, and to assist the Debtors in realizing the appropriate value from each transaction. Indeed, this is precisely the process, as contemplated by the Derivatives Settlement Order and Derivatives Assignment Order, in which the Debtors and Committee are engaged on a daily basis as they work assiduously to wind-down the Debtors' portfolio of Derivatives Contracts. Accordingly, the Committee's participation will promote the maximization of value for the benefit of unsecured creditors.

22. Finally, the Committee's involvement will not "adversely affect the confidential nature of the mediations." See Objection of Carlton [Docket No. 4563] ¶ 22; Objection of ICO [Docket No. 4569] ¶ 19. That purported concern is nothing more than a red-herring as the Committee is bound by the same confidentiality provisions as the other parties, as well as its independent confidentiality duties under the Committee's by-laws. Moreover, pursuant to sections 1103(c) and 1109(b) of the Bankruptcy Code, the Committee has a right to receive any materials that would be exchanged under the Derivatives ADR Procedures consistent with its absolute, statutory right to assist, investigate, and participate in "any issue" in the Debtors' bankruptcy case. 11 U.S.C. §§ 1103(c) and 1109(b). Indeed, it comes as no surprise that the Enron Order cited by Carlton and ICO clearly authorized the creditors' committee in that case to receive information provided in mediations. See In re Enron Corp., No. 01-16034 (ALG) (Bankr. S.D.N.Y March 20, 2003) [Docket No 9862] ("[T]he Official Committee of Unsecured Creditors may receive reports on the mediation from Debtors and Debtors may consult with the Committee in order to discharge the Committee's duties . . . . The Committee must maintain the confidentiality of information it receives."). Thus, no basis exists for excluding the Committee.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Committee hereby joins in the Debtors' ADR Motion and respectfully requests that the Court issue the Revised Proposed ADR Order and grant other such relief as the Court finds appropriate.

Dated: New York, New York
August 24, 2009

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: */s/ Dennis F. Dunne*
Dennis F. Dunne
Wilbur F. Foster, Jr.
Evan R. Fleck
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

David S. Cohen (admitted *pro hac vice*)
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.