UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

In re

Lehman Brothers Holdings Inc., et al.,

Debtors.

---------------------------------------------------------------

Chapter 11 Case No.

08-13555 (JMP)

(Jointly Administered)

**OBJECTIONS OF TISHMAN SPEYER REAL ESTATE VENTURE VII, L.P.
TO LBHI EXAMINER'S SUBPOENA FOR RULE 2004 EXAMINATION**

The Court-appointed Examiner for Lehman Brothers Holdings Inc. (the "Examiner"), by counsel, has served the annexed Subpoena for Rule 2004 Examination dated August 13, 2009 (the "Subpoena," a copy of which is annexed hereto as Exhibit A). Although the Subpoena is directed at "Tishman Speyer," there is no such entity bearing that name. These Objections are being filed on behalf of Tishman Speyer Real Estate Venture VII, L.P. (hereafter, "Tishman Speyer"), which is the corporate entity that was most directly involved in the Archstone-Smith Real Estate Investment Trust transaction that is the subject of the Subpoena.[1]

Pursuant to Rules 26, 34 and 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), Rules 2004, 7026, 7034, 9014 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States Bankruptcy Court for the Southern District of New York, Tishman Speyer formally objects to the Subpoena on the following grounds:

---

[1] To the extent the Subpoena may be deemed to be issued to any other Tishman Speyer related entity, these Objections are likewise asserted on behalf of any such entity.

**GENERAL OBJECTION**

1. The Order granting Rule 2004 subpoena power to the Examiner and authorizing the Examiner to seek documents from witnesses was signed on February 11, 2009. Between February and the end of July 2009, however, the Examiner made no request to Tishman Speyer to produce any documents or information, whether formally or informally. On July 28, 2009, counsel to the Examiner wrote a letter to Tishman Speyer (the "July 28 Letter," a copy of which is annexed as Exhibit B) informally requesting that Tishman Speyer and all of its "affiliates, parents, subsidiaries, officers, directors, employees and agents" produce all documents, including all emails and other "electronically stored information," responsive to eight extremely broad categories of requests (the "Requests") within ten (10) days.

2. As drafted, the Requests could never have been complied with literally, and certainly not within the ten days provided for a response. Several of the Requests span a period of nearly two years, from January 1, 2006, to October 1, 2008. During a portion of that time, beginning in April 2007, Tishman Speyer and Lehman Brothers Holdings Inc. ("LBHI") jointly conducted and later completed the massive property-level and entity-level due diligence necessary to evaluate and consummate the Archstone going-private transaction. In addition, after the October 2007 closing of the Archstone transaction, an entity jointly owned by affiliates of Tishman Speyer and LBHI exercised many of the day-to-day supervisory roles as the managing general partner of the investment partnership that acquired Archstone, a multi-billion dollar REIT owning in excess of 190 residential apartment complexes located throughout the United States, as well as over 40 development projects and a controlling interest in an investment fund owning more than 120 residential apartment complexes in Germany.

3. As written, the Requests called for documents in eight overly broad categories, which are without any practical limitations or qualifications whatsoever -- whether by geography, specific offices, management/operational levels, headquarter/property levels, specific custodians, or otherwise. The Requests quite literally asked for each and every document, correspondence and email relating to, *inter alia*: (i) any "risk analysis and valuation of [Archstone] and/or assets owned or controlled by it, including, but not limited to valuations, analyses, business plans, forecasts, and projections which were performed by you or any third-party" (Request No. 1); (ii) any "formulas, processes, methodologies, and procedures that you or any third-party used in valuing [Archstone] and/or assets owned or controlled by it" (Request No. 2); (iii) any "agreements," "term sheets, letters of intent, commitment letters, and contracts" concerning Archstone (Request Nos. 3, 4); (iv) any "risk analysis, liquidity analysis, and valuation of Archstone and/or assets owned or controlled by it" (Request No. 4); (v) any communications both within Tishman Speyer, or between Tishman Speyer (and any of its "agents, affiliates, or subsidiaries") and LBHI (and any of its "agents, affiliates, or subsidiaries"), concerning any alteration or termination of the terms of the Archstone transaction (Request Nos. 5, 6); (vi) discussions of unspecified "potential transactions" between Tishman Speyer and LBHI (Request No. 7); and (vii) "negotiation with LBHI . . . to purchase or acquire an interest in [Archstone] and/or assets owned or controlled by it" (Request No. 8).

4. Read literally, the Requests would thus have called for production by Tishman Speyer of a volume of documents in the millions of pages. Responsive documents would be found in the files and on the computers of more than 50 individual custodians within the Tishman Speyer corporate organization. In particular, the Requests that are directed to any "assets owned or controlled by" Archstone would require a micro-level production that would include

irrelevant property-level and entity-level documents concerning the hundreds of individual properties and assets of Archstone.  Numerous Tishman Speyer field offices conducted due diligence on, and later monitored and contributed to the management of, Archstone's sprawling business and real estate operations.  Absent realistic parameters to circumscribe the Requests and limit the documents actually sought by the Examiner, the Requests would simply be impossible for Tishman Speyer to comply with on any reasonable timetable that would accommodate the Examiner's needs.  Moreover, because LBHI and Archstone have entered into broad indemnities and releases with Tishman Speyer in connection with the Court-approved restructuring of LBHI's interests in Archstone, were Tishman Speyer to incur substantial costs in responding to the Requests, the ultimate result would be a significant incremental fee and expense burden to LBHI's estate and creditors.  That burden would only be amplified by the substantial costs that would be incurred by the Examiner's own professionals in dealing with the enormous volume of largely irrelevant documents that would result from literal compliance with the Subpoena as written.

5. Upon receiving the July 28 Letter, counsel to Tishman Speyer promptly contacted the Examiner's counsel to discuss the Requests.  Tishman Speyer made the Examiner aware of the significant, unreasonable and unnecessary burdens that the Requests on their face would impose upon Tishman Speyer, and on the LBHI estate and its creditors, as recited above.  During those discussions, which are ongoing, the Examiner's counsel acknowledged that the Examiner is not looking for production of a massive volume of field-office, property-level, due-diligence, asset-level, and other irrelevant documents, and also acknowledged that such production would be vastly more expensive and take much more time than is prudent or available, without substantially advancing the Examiner's actual needs or goals.

6. Despite ongoing discussions between Tishman Speyer's and the Examiner's counsel regarding limiting the scope of the Requests, the Subpoena's Document Rider nevertheless commands Tishman Speyer to produce documents responsive to the same eight overly broad Requests contained in the July 28 Letter, again within ten (10) days.

7. Tishman Speyer intends to continue to cooperate with the Examiner and his counsel to try to agree on reasonable parameters for the document production to be made pursuant to the Subpoena. Tishman Speyer has asked the Examiner to identify with greater specificity both (i) what documents the Examiner actually needs and wants (*i.e.*, can the document requests be narrowed, for example, geographically, by headquarters versus field office, by management or operational level, by area or function, by individual custodians, or by narrowing the topics and timeframe?), and (ii) why the Examiner is requesting the documents sought (*i.e.*, to what potential claims, issues and defenses that the Examiner is investigating and pursuing are the documents actually relevant and necessary?). Furthermore, Tishman Speyer, at the Examiner's counsel's request, is already in the process of collecting an initial production of documents that Tishman Speyer believes the Examiner will find useful and manageable. The Examiner and Tishman Speyer plan to conduct additional negotiations and discussions to try to reach agreement on the scope and limits on production in response to the Subpoena.

8. Nevertheless, the facts remain that (i) the Subpoena has now been served and objections thereto are due under the Court's Rule 2004 Order, and (ii) literal compliance with the Subpoena as written would constitute a massively wasteful, unduly expensive, and time-consuming exercise, which if required and undertaken would not achieve the Examiner's stated goals in seeking documentary discovery from Tishman Speyer. Accordingly, Tishman Speyer respectfully files this formal Objection to the Subpoena.

## ADDITIONAL GENERAL OBJECTIONS

In addition to Tishman Speyer's primary General Objection to the Subpoena, which is set forth in paragraphs 1 through 8 above, Tishman Speyer further objects to the Subpoena, and each and every Request therein, on the following grounds:

9. Tishman Speyer objects to the Subpoena to the extent that it seeks to impose obligations different from or in addition to those imposed or authorized by the requirements of the Federal Rules, the Bankruptcy Rules, and any other applicable rules, laws, or orders.

10. Tishman Speyer objects to the Subpoena to the extent that it seeks the production of any documents or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, protection, or exemption. Such documents will not be produced. Production of documents in response to the Subpoena will be without waiver of any privilege, exemption, or protection. Inadvertent production of privileged, exempted, or otherwise protected documents will not constitute a waiver of any such privilege, exemption, or protection, and Tishman Speyer reserves all rights to demand that the Examiner return any such privileged, exempted, or otherwise protected documents and all copies thereof.

11. Tishman Speyer objects to the Subpoena to the extent that it calls for the production of documents that are publicly available, that have already been, or should be, sought from LBHI or its affiliates, or are otherwise already in the possession, custody, or control of, or are otherwise more conveniently and less burdensomely available to, the Examiner.

12. Tishman Speyer objects to the Subpoena on the ground that it is vague, overly broad, and unduly burdensome, and fails to specify the documents sought with reasonable particularity.

13. Tishman Speyer objects to the Subpoena on the ground that it seeks documents that are not relevant, material, or necessary to the Examiner's investigation of dealings between Tishman Speyer and LBHI.

14. Tishman Speyer objects to the Subpoena as overly broad and unduly burdensome to the extent that it seeks "all documents" or "all communications" relating to a particular subject matter. If the Examiner agrees to narrow and limit the Subpoena to reflect a reasonable and mutually acceptable set of document requests that are necessary for his investigation, Tishman Speyer will undertake to make a good faith search of its files for documents within the scope of such agreed requests and will produce such documents and/or provide such information located in connection therewith at a time and place to be agreed upon with the Examiner. If any non-privileged documents or information within the scope of what Tishman Speyer undertakes to locate and produce are inadvertently overlooked in the course of such search, such documents or information will be produced if and when subsequently located, subject to the Federal Rules, the Bankruptcy Rules and the Objections set forth herein.

15. Tishman Speyer objects to the Subpoena to the extent that it seeks documents or information not in the possession, custody or control of Tishman Speyer (including documents in the possession of its agents, representatives or other persons acting, or purporting to act, on its behalf).

16. Tishman Speyer objects to the Subpoena as overly broad, unduly burdensome, and seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it seeks documents or information authored, generated or pertaining to any period before March 1, 2007.

17. Tishman Speyer objects to the Subpoena to the extent that it calls for production of documents or information that Tishman Speyer is required to maintain in confidence pursuant to any confidentiality understanding or agreement that is binding upon it and that prohibits their production pursuant to the Subpoena.

18. Tishman Speyer objects to the Subpoena as unduly burdensome to the extent that it purports to require responsive documents to be produced on or before August 24, 2009, in that such ten-day deadline fails to allow a reasonable time to comply and subjects Tishman Speyer to undue burden.

19. Tishman Speyer objects to the Subpoena to the extent that it calls for production of documents and information that are not within the scope of Bankruptcy Rule 2004.

20. Tishman Speyer objects to the Subpoena to the extent that it seeks production of documents that would need to be restored from backup tapes or archived data sources.

21. Tishman Speyer objects to the Subpoena as overly broad and unduly burdensome to the extent that it purports to impose any continuing obligation to update or supplement Tishman Speyer's response.

22. Tishman Speyer reserves the right to supplement, revise, correct, add to, or clarify the Objections set forth herein. In addition, if the Examiner narrows the Subpoena to reflect a reasonable set of documents that are necessary for its investigation, Tishman Speyer reserves the right to assert additional responses and objections at that time.

23. Tishman Speyer is providing these Objections without waiver of or prejudice to its right at any later time to object to: (a) the competence, relevance, materiality, privilege, or admissibility of (i) the Subpoena or any part thereof, (ii) statements made in these or any future

objections to the Subpoena or any part thereof, or (iii) any documents or other information produced by Tishman Speyer; or (b) any other demand for discovery involving or relating to the matters raised in the Subpoena or any documents or information produced by Tishman Speyer.

24. If Tishman Speyer undertakes to produce certain documents in the future, the production of those documents will be without waiver of or prejudice to its right at any later time to object to: (a) the competence, relevance, materiality, privilege, or admissibility of (i) the Requests or any part thereof, (ii) statements made in these or any future responses and objections to the Subpoena or any part thereof, or (iii) any document produced by Tishman Speyer; or (b) any other demand for discovery involving or relating to the matters raised in the Subpoena or any documents or information produced by Tishman Speyer.

25. If Tishman Speyer undertakes to produce certain documents in the future, its assertion that it will produce documents or provide information in response to a particular request is not to be construed as an admission that any document or information exists within any requested category or categories, but rather solely as an assertion that Tishman Speyer will produce (consistent with the objections raised herein or hereafter) any responsive documents or information within its possession, custody or control should any such documents or information be found.

26. If Tishman Speyer undertakes to produce certain documents in the future, it reserves the right to object to the admissibility at trial of any document produced, or any objection, answer, or response made herein, and the documents produced, objections, answers, and responses are not and shall not be deemed an admission or concession of the relevance of any request, or an admission as to the admissibility of any document produced, objection, answer or response.

Dated: New York, New York
August 24, 2009

                            WACHTELL, LIPTON, ROSEN & KATZ

                By: /s/ David C. Bryan
                    David C. Bryan (DB-3379)
               51 West 52nd Street
               New York, NY 10019
               Telephone: (212) 403-1000
               Facsimile: (212) 403-2000

               Attorneys for Tishman Speyer
               Real Estate Venture VII, L.P.