Hearing Date and Time: August 26, 2009 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Richard L. Levine
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
**In re**                              :    **Chapter 11 Case No.**
                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, :    **08-13555 (JMP)**
                                       :
                  Debtors.             :    (Jointly Administered)
                                       :
                                       :
------------------------------------------------------------------x

**DEBTORS' REPLY TO OBJECTIONS
TO THE DEBTORS' MOTION, AS SUPPLEMENTED, FOR
AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING
SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors" and, collectively with their non-Debtor affiliates, "Lehman"), as and for their reply to the objections (the "Objections") to the Debtors' motion (the "Motion") for an order enforcing the automatic stay and holding Shinsei Bank in contempt for violating the automatic stay [Docket No. 4764], respectfully represent:

**Preliminary Statement**

1.  The Motion seeks relief against Shinsei Bank[1] for its offensive effort in the Sunrise Insolvency Proceeding to exercise control over property of LBHI's estate by diverting to Shinsei Bank allowed distributions that LBHI would otherwise receive in that proceeding. Six objections to the Motion have been filed: one by Shinsei Bank (the "Shinsei Objection") [Docket No. 4876], and five others by strangers to this Motion: (i) AB Svensk Exportkredit [Docket No. 4883], (ii) PB Capital Corporation [Docket No. 4884], (iii) Banco Bilbao Vizcaya Argentaria, S.A. [Docket No. 4885] ((i) – (iii) are identical to each other), (iv) Barclays Bank PLC and Barclays Capital Inc. (the "Barclays Objection") [Docket No. 4886], and (v) the Joint Administrators of the Lehman European Group Administration Companies [Docket No. 4880] ((i) – (v), collectively, the "Non-Party Objectants" and their objections, collectively, the "Non-Party Objections").

2.  None of the Non-Party Objectants are named in the Motion, nor are they creditors or participants in the Sunrise Insolvency Proceeding. Accordingly, they have no direct pecuniary or financial interest in and thus, are not parties in interest in connection with, the Sunrise Insolvency Proceeding or this Motion. Thus, they have *no standing*. *See Horne v. Flores*, 129 S.Ct. 2579, 2592 (2009) ("Here, as in all standing inquiries, the critical question is whether at least one petitioner has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction") (citations omitted). Moreover, rather than addressing the specific facts and circumstances upon which the Motion is based, the Non-Party Objectants essentially invite this Court to issue an impermissible advisory opinion, predicated upon hypothetical facts, conjecture and speculation, as to what they and

---

[1]  Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Motion.

2

foreign administrators can or cannot do in connection with other foreign insolvency proceedings in which a Debtor is a claimant. This Court should not accept that invitation. *See U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of America, Inc.*, 508 U.S. 439, 446 (1993) ("a federal court [lacks] the power to render advisory opinions") (citations omitted); *Princeton Univ v. Schmid*, 455 U.S. 100, 102 (1982) ("We do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us"); *In re Outboard Marine Corp.*, 304 B.R. 844, 859 (Bankr. N.D. Ill. 2004) ("An advisory opinion results if the court resolves a question of law that is not presented by the facts of the case"). The Non-Party Objections, interposed by strangers to this proceeding, should be overruled.

        3.      The Shinsei Objection also should be overruled. Indeed, it too is premised, in part, on a hypothetical. That is, it is based on a supposed motion by the Debtors seeking to deny to parties in interest in the Sunrise Insolvency Proceeding their ability to challenge the validity of claims and to the Tokyo District Court its ability to exercise jurisdiction that it otherwise has to determine either the validity of claims or their priority. (Shinsei Obj. ¶¶ 17 – 19, 26.) Based on this hypothetical motion that they erroneously contend is before this Court, Shinsei Bank, as well as certain of the Non-Party Objectants, raise the hue and cry that such a "motion" undermines fundamental concepts of comity and the objectives that were sought to be achieved when this Court approved the Protocol. (*See*, *e.g.*, Shinsei Obj. ¶¶ 24-28; Barclays Obj. ¶ 8.)

        4.      The actual Motion, however – not the hypothetical motion conjectured by Shinsei Bank and the Non-Party Objectants – is what is before this Court. And in the Motion, the Debtors have neither challenged the Tokyo District Court's jurisdiction to determine the validity or priority of claims asserted in the Sunrise Insolvency Proceeding, nor in any way

3

suggested that this Court should determine those issues.[2] Moreover, the Debtors have not contended that the automatic stay insulates them from *defenses* asserted against offensive actions that they take in any other forum, foreign or domestic. Shinsei Bank had every right to file a timely objection to the proofs of claim filed by LBHI and LB Asia in the Sunrise Insolvency Proceeding and, had it done so, the Debtors would not have filed the Motion. But, as demonstrated in the Reply Declaration of Junya Naito ("Naito Reply Declaration") [Docket No. 4919], there was a bar date in the Sunrise Insolvency Proceeding, and only Sunrise raised a timely objection to LBHI's claim, which objection was resolved by LBHI reducing the amount of its claim as requested by Sunrise. *See* Naito Reply Declaration at ¶ 3. Neither Shinsei Bank nor anyone else objected and, therefore, the claims of LBHI and LB Asia were allowed.[3] *See id.* at ¶ 4.

     5.     In sum, the question raised by the Motion is neither whether the claims filed by LBHI in the Sunrise Insolvency Proceeding should be subordinated or allowed, nor whether Sunrise or its creditors should be permitted to defend against these claims without seeking relief from the automatic stay from this Court. The question actually is more nuanced and less obvious, but of critical consequence: Now that the Lehman claims in the Sunrise Insolvency Proceeding have been *allowed*, has Shinsei Bank taken an *offensive* action against LBHI by requesting that the Tokyo District Court adopt an alternative plan of reorganization,

---

[2]    Indeed, the Debtors believe this Court should make clear in its resolution of the Motion that it is *not* addressing any issue of Japanese law or suggesting how the Tokyo District Court should rule on any issue before it.

[3]    The Barclays Objection raises another false issue: whether the stay applies to a non-debtor, LB Asia. Remarkably, Barclays does not consider that Shinsei Bank's actions – which by its admission would deprive LBHI's estate of nearly half a billion dollars – "threaten[ ] to adversely affect the debtor's reorganization efforts." (Barclays Obj. ¶ 4, citing *Gucci, Amer., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004)). The Debtors cannot agree that Shinsei Bank's actions would not materially harm the Debtors' reorganization efforts. Nevertheless, the Court need not reach this issue, because LBHI *itself* filed a claim in the Sunrise Insolvency Proceeding.

proposed by Shinsei Bank, that would subordinate LBHI's allowed claims? The Debtors believe it has and that consequently, Shinsei Bank – not the Tokyo District Court, and not the Supervisor – has taken an action that violates the automatic stay. The Debtors submit that a chapter 11 debtor that asserts a right to payment in a forum – *any* forum, foreign *or* domestic – by lodging a proof of claim with that forum, has not waived the protections of the automatic stay *in toto* as to the panoply of other actions that could be brought by third parties in that forum.

### **Allowed Claims In The Sunrise Insolvency Proceeding Are Property of The Estate**

6.  It is undisputed that LBHI and LB Asia hold *allowed* claims in the Sunrise Insolvency Proceedings. *See* Naito Reply Declaration at ¶ 5. The bar date for Sunrise either to approve or object to claims was November 18, 2008. *See id.* at ¶ 3. Sunrise approved LB Asia's claim, but objected to LBHI's claim. *See id.* After LBHI amended the amount of its claim as requested by Sunrise, Sunrise approved LBHI's claim on December 26, 2008. *See id.* Subsequently, pursuant to Japanese law, creditors of Sunrise who had filed a proof of claim had the opportunity to object to other creditors' claims from November 25, 2008, until December 2, 2008. *See id.* at ¶ 4. No objections were filed by any of Sunrise's creditors, including Shinsei Bank. *See id.* Pursuant to Japanese law, the claims are now "fixed and determined," i.e., *allowed* claims. *See id.* at ¶ 5.

7.  Shinsei Bank's contention that LBHI's claim and its distribution entitlements are not property of the estate protected by the automatic stay is devoid of merit. Given the allowance of LBHI's claim, it has a valid account receivable as to which LBHI is entitled, under the Sunrise Plan, to collect approximately $3,000,000. (Shinsei Obj. ¶ 9 n.4.) That claim is, without question, therefore, property of LBHI's estate. *See*, *e.g.*, *In re Straightline Invs., Inc.*, 525 F.3d 870, 877 (9th Cir. 2008) (debtor "had a legal interest in its accounts

5

receivable in the form of a right to collect" and therefore, the accounts receivable are property of the estate under § 549); *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994) (right to collect from general partners based on their promise to provide money to the debtor partnership was "property of the estate); *Chateaugay Corp. v. David Grahm Co. (In re Chateaugay Corp.)*, 78 B.R. 713, 725 (Bankr. S.D.N.Y. 1987) ("The definition of 'property of the estate' includes the Debtors' *right to collect* accounts receivable.") (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985)).

8. Shinsei Bank's attempt to distinguish between the *Chateautgay* creditors' "seizure" or "levy" on unpaid freight charges of the debtor, and its own efforts to equitably subordinate LBHI's claims, is a distinction without a difference: Shinsei Bank fundamentally *is* seeking to levy upon the distributions that should go to LBHI and LB Asia. According to Shinsei Bank, under the Sunrise Plan, LBHI would receive a distribution of close to half a billion dollars, of which not less than $3,000,000 would be a distribution to LBHI. (Shinsei Bank Obj. ¶ 9 n.4.) Shinsei Bank requested that the Tokyo District Court approve a plan that would subordinate these claims to all others, with the result that these funds will be made available to Shinsei Bank.

9. Moreover, even if Shinsei Bank disputes that it is "seizing" upon the funds themselves, it cannot dispute that, by means of the subordination it has proposed in its plan, it has requested that the Tokyo District Court allow it to exercise control over LBHI's *right to collect* – which itself is "property of the estate" – by diverting LBHI's distribution entitlement to Shinsei Bank. S*ee In re Straightline Inv., Inc.*, 525 F.3d at 877 (noting the "difference between the accounts receivable themselves and the funds paid by the account debtors" and that the "right to collect" is "property of the estate); *Nat'l Tax Credit Partners, L.P.*, 20 F.3d at 707 (where

6

investors sought an injunction compelling general partners to pay money to the debtor partnership based on the general partners' prepetition promise to pay said money to the debtor, the injunction exercised control of this property (i.e. the right to obtain money from the general partners), and thus investors' demand was blocked by the automatic stay). That is the very act proscribed by section 362(a)(3) of the Bankruptcy Code.[4]

### The Debtors Do Not Dispute That The Automatic Stay Is Inapplicable To Defenses Against Actions Initiated By the Debtor

10. The Debtors have not argued that Sunrise's creditors are required to seek relief from stay from this Court in order to defend against claims asserted by the Debtors. As both the Shinsei Objection and the Non-Party Objections correctly observe, it is well settled law that notwithstanding the automatic stay, where a debtor in a bankruptcy case (the "First Debtor") files a proof of claim against a debtor in a separate bankruptcy (the "Second Debtor"), the Second Debtor is not required to obtain relief from the automatic stay in the First Debtor's case before filing an *objection* to the claim. *See*, *e.g., Justus v. Financial News Network Inc. (in re Financial News Network, Inc.)*, 157 B.R. 570 (S.D.N.Y. 1993) (automatic stay in First Debtor's case did not preclude Second Debtor's objection to First Debtor's proof of claim); *see also, e.g., High-Tech Communications Corp. v. Poughkeepsie Bus. Park, LLC (In re Wheatfield Bus. Park, LLC)*, 308 B.R. 463, 465-66 (BAP 9th Cir. 2004) (Second Debtor "did not violate the automatic stay in [the First Debtor's] Chapter 11 by *objecting* to the claim filed in [Second Debtor's] case") (emphasis added). Similarly, where the First Debtor files a lawsuit against the Second Debtor, the automatic stay does not prohibit the Second Debtor from defending itself in that action. *See, e.g., Olick v. Parker & Parsley Petrolium Co.*, 145 F. 3d 513, 516 (2d Cir. 1998) (district court

---

[4] Section 362(a)(3) provides, in pertinent part, that the filing of a petition under chapter 11 operates as an automatic stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

7

did not err in denying request of the First Debtor – a member of a plaintiff's class – to stay proceedings) (per curiam); *Gordon v. Whitmore (In re Merrick)*, 175 B.R. 333, 338 (BAP 9th Cir. 1994) (as a matter of "fairness," a Second Debtor must "be allowed to defend himself" in an action filed by a First Debtor). This established law is not put in issue by the Motion – because, as demonstrated below, the challenged conduct was not a defense to actions taken by the Debtors.

### Equitable Subordination Is An Offensive, Not Defensive, Action That Will Deprive LBHI of Its Allowed Claims In Violation of § 362(a)

11.     The Debtors are aware of only one case in which a court directly addresses and *analyzes* the qualitative difference between an objection to a claim and an action to equitably subordinate a claim in the context of the application of the automatic stay: *In re Enron Corp.* No. 01-16034 (AJG), 2003 Bankr. LEXIS 2261 (Bankr. S.D.N.Y. Jan. 13, 2003). In *Enron*, the court was faced with a motion for relief from stay brought by the Official Committee of Unsecured Creditors (the "HSI Committee") of Heartland Steel, Inc., ("HSI"), a chapter 11 debtor in a case pending in the United States Bankruptcy Court for the Southern District of Indiana. Enron had filed a proof of claim in HSI's chapter 11 case. *Id.* at *4. After Enron's claim had been *allowed* and HSI's chapter 11 plan had been confirmed, the HSI Committee filed an adversary complaint seeking, *inter alia*, equitable subordination of Enron's claim. *Id.* at *5-6. The HSI Committee subsequently sought a determination from the *Enron* court that the automatic stay in Enron's case "did not enjoin the commencement and does not enjoin the continued prosecution" of the HSI Committee's equitable subordination action. *See id.* at *3.

12.     The *Enron* court directly addressed the distinction between an objection to a claim and equitable subordination. It first observed that "equitable subordination…is not a defense to a debtor's liability on a proof of claim," *id*. at *26 (citations omitted), but rather, that

8

"equitable subordination…is qualitatively different than an objection to a proof of claim…." *Id.* at *28. The fundamental difference between the two is that "[w]hereas equitable subordination concerns the distribution and classification of an allowed claim based upon equitable principles, an objection to claim…concerns the allowance of such claim." *Id.* at * 26-27 (citations omitted). In other words, "the inquiry as to whether equitable subordination applies does not focus upon the validity of the underlying debt at all" because "this fact is presumed, or otherwise admitted." *Id.* at *27-28 (citations omitted). In other words, "[e]quitable subordination can only be used to reorder priorities, not to disallow claims." *Id.* at *26-27 (citations omitted). Thus, "equitable subordination is a legally distinct proceeding which seeks to re-prioritize the order of allowed claims based on the equities of a case, rather than to allow or disallow the claim in the first instance." *Id.* at *27 (citations omitted).

13. The *Enron* court held that, consequently, equitable subordination is not exempt from the automatic stay; on the contrary, the court concluded that the attempt to obtain the equitable remedy of subordination by the HSI Committee "was intended as an offensive use of federally-created rights to alter the priority of [the debtor's] proof of claim only," and that therefore, the automatic stay prohibited the effort. *Id.* at *30. The court also noted that the HSI Committee has filed its equitable subordination action "months after Enron's bankruptcy petition" and that "at the very least," their complaint "should have identified [itself as] an objection to Enron's proof of claim and that the relief requested was defensive." *Id.* *25-6. The fact that the HSI Committee's action did not even claim to be an objection or defense to Enron's proof of claim justified the court's finding that it was "merely an attempt by the HSI Committee to circumvent the automatic stay in Enron's bankruptcy case," and that "[f]rom a policy perspective, there is no reason…to conclude that by prosecuting the [equitable subordination

9

action] that the HSI Committee is not attempting to procure a benefit not otherwise available to Debtors' [sic] other creditors in violation of the automatic stay." *Id.* at * 26.

14. Only two other decisions have been identified in the Objections that touched upon the application of the automatic stay to equitable subordination. One of these, *In re Palmdale Hills Property LLC*, 08-17206 (EAS) (Bankr. C.D. Cal. Mar. 10, 2009), cited only by the Barclays Objection, provides *no written analysis* for its ruling and, as Barclays correctly points out, is "currently subject of appeals to the 9th Circuit Bankruptcy Appellate Panel," which appeals have yet to be determined. (Barclays Obj. ¶ 6 n.5.).[5] The other decision, *In re Metiom, Inc.*, 301 B.R. 634 (Bankr. S.D. N.Y. 2003), cited by both the Shinsei Objection (Shinsei Obj. ¶ 20) and the Barclays Objection (Barclays Obj. ¶ 6), is easily distinguishable. It involved a Second Debtor's objection to a proof of claim asserting that the claim should be disallowed or, *in the alternative*, equitably subordinated under section 510(c). *See In re Metiom, Inc.*, 301 B.R. at 638. While the *Metiom* court held, consistent with the case law discussed above, that the Second Debtor's objection was not subject to the First Debtor's automatic stay, it did not – and did not need to – address the qualitative difference between an objection seeking disallowance of a claim and an effort to obtain equitable subordination of the claim. *See id.* at 638 ("the provision of section 362(a)(3) does not apply…because the Trustee merely is proceeding defensively – not asserting a counterclaim – in objecting to the Claim").

15. In this case, however, the claims of LBHI and LB Asia are *allowed* claims. The question is whether seeking to equitable subordinate an already *allowed* claim is qualitatively different than an objection or defense to a claim. *Enron*, therefore, presents the

---

[5] Furthermore, as this Court has stated, this decision is only "the law of the case until reversed, although it's not the law of *this* case, it's law of [the SunCal] case." *In re Lehman Re. Ltd.*, Case No. 09-14884 (Bankr. S.D.N.Y. 2009) (JMP), Hr'g Tr. 67:1-3.

more persuasive analysis for this Court to consider, because it focuses on the difference between equitable subordination of allowed claims, and objections or defenses that seek to disallow claims in the first instance. Rather than seek to *disallow* the claims of LBHI and LB Asia, Shinsei Bank concedes that it "is exercising its creditor rights within the context of the Sunrise Insolvency Proceeding" (Shinsei Obj. ¶ 22) to subordinate LBHI's claim and that, if successful, Shinsei Bank will deprive LBHI's estate of *at least* $3,000,000. (Shinsei Obj. ¶ 9 n.4.) Rather than object to their right to a distribution, Shinsei Bank is now, by its own admission, seeking the affirmative deprivation of these allowed distributions from LBHI's estate by persuading the Tokyo District Court that the claims of LBHI and its affiliates "should be subordinated or treated as equity contributions under Japanese insolvency law." (Shinsei Obj. ¶ 6.) By doing so, Shinsei Bank is effectively circumventing the automatic stay in LBHI's chapter 11 case and intercepting these distributions that are property of LBHI's estate to the detriment of LBHI's other unsecured creditors.

## The Decisions Relied Upon By Shinsei Bank And The Non-Party Objectants Do Not Apply To The Facts Of This Case

16. The other cases cited by Shinsei Bank and the Non-Party Objectants do not apply to facts before this Court.[6] Under these rulings, any of Sunrise's creditors could have objected to LBHI's and LB Asia's claims without seeking relief from the automatic stay. They did not do so. The Debtors have never intimated that such defensive acts would be a violation of

---

[6] *In re Wheatfield* (cited at Shinsei Obj. ¶ 20 n.6) holds only that a Second Debtor could object to the First Debtor's proof of claim without seeking relief from the First Debtor's automatic stay, 308 B.R. 463, 465-66 (BAP 9th Cir. 2004), while *In re Merrick* (cited at Shinsei Obj. ¶ 17 n.5) ruled that when the First Debtor files a civil action against another, the automatic stay does not prohibit the defendant from defending the action. 175 B.R. 333, 338 (BAP 9th Cir. 1994) (defendant's postpetition pursuit of dismissal of state court action and costs held not to be a violation of the automatic stay); *see also Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) ("appeal from the dismissal of the plaintiff's suit is not subject to the automatic stay, because the suit was filed by rather than against the debtor); *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) (motion to dismiss plaintiff debtor's state court action not a violation of the automatic stay).

the automatic stay. These decisions do not, however, permit Shinsei Bank to move to affirmatively deprive LBHI's estate of claims that have been allowed and that entitle LBHI to a distribution in the Sunrise Insolvency Proceeding without having first obtained relief from the automatic stay.

### Belated Relief From The Automatic Stay Should Not Be Granted

17. Almost as an afterthought, Shinsei Bank states in the short, penultimate paragraph of the Shinsei Objection that, if this Court finds that the automatic stay does apply to the facts in this case, the Court should "annul" the automatic stay to permit Shinsei Bank to continue its equitable subordination efforts. (Shinsei Obj. ¶ 30.) The Shinsei Objection asserts no legal argument, however, in support of such relief, nor does it in any way address the factors that courts consider when granting relief from the automatic stay. Moreover, Shinsei Bank has neither moved nor cross-moved for such relief, as required by the Federal Rules of Bankruptcy Procedure. Accordingly, the Court should not consider the Shinsei Bank's request for such relief from or annulment of the stay, to the extent that it is incorporated in the Shinsei Objection, absent the filing of a proper motion.

### Conclusion

18. The Debtors have asserted claims in nearly 80 Foreign Insolvency Proceedings, as well as in unrelated insolvency proceedings and bankruptcy cases within the United States and in foreign jurisdictions. The arguments advanced by Shinsei Bank and the Non-Party Objectants lead to the Debtors, by asserting these claims, subjecting themselves to whatever offensive actions, including adversary proceedings (not necessarily limited to equitable subordination claims) that might be brought against them by any party in interest in the various

proceedings. This result would render the protection of the automatic stay meaningless, and would effectively undermine the control that this Court has over these chapter 11 cases.

19. Where a creditor takes an offensive action against property of the estate in another court, that creditor has violated the automatic stay – irrespective of where that court sits. Thus, based on the facts and circumstances in this matter, not any hypothetical matters conjured by the Non-Party Objectants, the automatic stay applies to the offensive actions taken in the Tokyo District Court by Shinsei Bank and Shinsei Bank violated the automatic stay by taking these offensive actions without first seeking a modification of the automatic stay from this Court.

WHEREFORE the Debtors respectfully request that the Court (i) overrule the Shinsei Objection and Non-Party Objections; (ii) find and determine that Shinsei Bank violated the automatic stay by its filing and prosecution of the Shinsei Plan; (iii) direct Shinsei Bank to purge itself of such contumacious conduct by promptly withdrawing said plan, and (iv) grant the Debtors such other and further relief as it deems just and proper.

Dated: August 25, 2009
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Richard L. Levine
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession