1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555, 08-01420 (SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS INC., ET AL.,

        Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

        Debtor.

- - - - - - - - - - - - - - - - - - - -x

        U.S. Bankruptcy Court

        One Bowling Green

        New York, New York


        August 11, 2009

        10:02 a.m.


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

```
                                                                   2
 1   MOTION of Bank of New York to Dismiss Complaint in Case No. 09-
 2   01242
 3
 4   SCHEDULING Conference on Defendant's Motion for Summary
 5   Judgment and Debtors' Cross-Motion for Summary Judgment
 6
 7   MOTION of Trustee to Dismiss Complaint in Case No. 09-01160
 8
 9   MOTION of Unclaimed Property Recovery Service's Motion for
10   Orders (A) Compelling Payment of Unclaimed Funds by the New
11   York State Comptroller, (B) Lifting the Automatic Stay, or,
12   Alternatively, Providing Relief From the Automatic Stay, (C)
13   Allowing Payment for Services Provided Post-Petition and (D)
14   Other Relief
15
16
17
18
19
20
21
22
23
24   Transcribed By:   Esther Accardi
25
```

```
                                                                    3
 1    A P P E A R A N C E S :
 2    WEIL GOTSHAL & MANGES, LLP
 3         Attorneys for Debtors
 4         767 Fifth Avenue
 5         New York, New York 10153
 6
 7    BY:  HARVEY R. MILLER, ESQ.
 8         PETER GRUENBERGER, ESQ.
 9
10
11    WEIL GOTSHAL & MANGES, LLP
12         Attorneys for Debtors
13         1300 Eye Street, N.W.
14         Washington, D.C. 20005
15
16
17    BY:  RALPH I. MILLER, ESQ.
18
19
20    WEIL GOTSHAL & MANGES, LLP
21         Attorneys for Debtors
22         8911 Capital of Texas Highway
23         Austin, Texas 78759
24
25    BY:  MEREDITH B. PARENTI, ESQ.
```

```
                                                                    4
 1   A P P E A R A N C E S :  (continued)
 2   HUGHES HUBBARD & REED, LLP
 3         Attorneys for SIPA Trustee
 4         One Battery Park Plaza
 5         New York, New York 10004
 6
 7   BY:   JEFFREY S. MARGOLIN, ESQ.
 8         DANIEL S. LUBELL, ESQ.
 9
10
11   REED SMITH, LLP
12         Attorneys for Bank of New York
13         599 Lexington Avenue
14         New York, New York 10022
15
16   BY:   ERIC A. SCHAFFER, ESQ.
17
18
19   FRIED FRANK HARRIS SHRIVER & JACOBSON, LLP
20         Attorneys for HWA 555 Owners LLC
21         One New York Plaza
22         New York, New York 10004
23
24   BY:   STEPHANIE J. GOLDSTEIN, ESQ.
25         BRIAN D. PFEIFFER, ESQ.
```

```
                                                              5

 1   A P P E A R A N C E S : (continued)

 2   MILBANK TWEED HADLEY & MCCLOY, LLP

 3        Attorneys for Creditors' Committee

 4        1850 K Street, NW

 5        Washington, D.C. 20006

 6

 7   BY:  DAVID S. COHEN, ESQ.

 8

 9

10   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

11        Attorneys for American Family Life Assurance

12        One Rodney Square

13        Wilmington, Delaware 19899

14

15   BY:  ROBERT A. WEBER, ESQ.

16

17

18   SULLIVAN & CROMWELL, LLP

19        Attorneys for Barclays

20        125 Broad Street

21        New York, New York 10004

22

23   BY:  PENNY SHANE, ESQ.

24

25
```

```
                                                                    6
 1   A P P E A R A N C E S : (continued)
 2   APPEARING TELEPHONICALLY:
 3   JEFFREY H. DAVIDSON, ESQ., STUTMAN TREISTER & GLATT
 4   MARINA FINEMAN, ESQ., STUTMAN TREISTER & GLATT
 5   WHITMAN L. HOLT, ESQ., STUTMAN TREISTER & GLATT
 6   NATALIE FOY, BANK OF AMERICA
 7   STEPHEN GRISANTI, TRICADIA CAPITAL
 8   SCOTT HARTMAN, PRO SE
 9   JAMES HEISER, CHAPMAN & CUTLER
10   FRANKLIN TOP, CHAPMAN & CUTLER
11   GERARD UZZI, ESQ., WHITE & CASE
12   STEPHANIE TUDWAY, ESQ., MILBANK TWEED HADLEY & MCCLOY
13
14
15
16
17
18
19
20
21
22
23
24
25
```

67

1  effect, BNY's problem. What's a fiduciary to do when presented
2  with conflicting legal authority, that is, by definition,
3  irreconcilable?
4       The narrow question presented, however, is whether
5  dismissal of this action is required under the strict
6  application of Rule 19 principles involving allegedly necessary
7  or allegedly indispensable parties. In this case that party is
8  Perpetual. I understand Perpetual to be a large and
9  sophisticated financial institution based in Australia with
10 billions of Australian dollars under management. I have no
11 knowledge one way or the other as to whether Perpetual does
12 business in the United States and is subject to the
13 jurisdiction of the U.S. Courts. But by virtue of the fact
14 that they're not here and no effort has been made by either
15 LBSF or BNY to join Perpetual, I'm going to assume for purposes
16 of what I'm about to say that Perpetual either could not be
17 joined, or if joined, that there would be some kind of
18 jurisdictional argument made by Perpetual in which Perpetual
19 would seek to extricate itself from the litigation and argue
20 that there are insufficient contacts to permit the exercise of
21 jurisdiction over them.
22      I further assume that what's going on here involves
23 some measure of game theory on both sides of the Atlantic. I
24 assume that Perpetual has brought the litigation that it has
25 brought in the High Court because it perceives tactical

68

1    advantages and substantive advantages in having its claims
2    against BNY heard there. I further assume that LBSF has made
3    the judgment that this bankruptcy court is probably the best
4    forum in which to litigate issues that relate to the proper
5    interpretation of certain provisions of the United States
6    Bankruptcy Code, and that it makes sense for that litigation to
7    be pursued, regardless of whether Perpetual is a party or can
8    be named as a party.
9    　　　　This gets us to the crux of the matter. To what
10   extent is BNY a fair representative of Perpetual for purposes
11   of adjudicating this dispute? BNY is, after all, a corporate
12   trustee. I made some reference to the highlighted quote from
13   the FDIC v. Bank of New York case from the district court in
14   the District of Columbia. And the highlighted portion, which
15   appears to be black-letter law, it's just a question of how
16   it's to be applied, states that, "It is well settled that
17   adjudicating an absent person's claim cannot 'impair or impede
18   the person's ability to protect his interest' if he is
19   adequately represented by one of the existing parties."
20   　　　　BNY asserts that it cannot be such an existing party
21   that can adequately represent the interests of Perpetual in
22   this litigation, because they're actually adverse in litigation
23   in the High Court, and that antagonism represents an effective
24   bar to BNY's standing here in a representative capacity. I'm
25   not convinced of that. I believe that the litigation in the

08-13555-mg    Doc 4941-1    Filed 08/25/09    Entered 08/25/09 18:29:29    Exhibit
Exhibit A    Pg 9 of 12

69

1   High Court -- and I have only a limited understanding of that
2   litigation, and so I comment on it at my peril -- is
3   fundamentally not about the issues that are presented to me in
4   this litigation.
5       In a sense, both litigations touch on BNY's duties as
6   a fiduciary. And their rights and entitlements to indemnity
7   are certainly center stage in the U.K. litigation. But this is
8   really forum selection that goes to the heart of substantive
9   rights. The substantive issues are not before me at the
10  moment. But at some point, I will be asked to consider whether
11  noteholder priorities, as those terms are defined in the
12  documents, or swap counterparty priorities, are applicable in
13  light of bankruptcy provisions.
14      I'm sensitive to the issues of comity and cooperation
15  and coordination that have been discussed throughout the
16  argument. But I also recognize that the only rational outcome
17  here that makes good sense in a cross-border setting, is for
18  the United States Bankruptcy Court to be the principal if not
19  exclusive decider of issues relating to U.S. bankruptcy law.
20  And similarly, it makes sense for the High Court in London to
21  be the principal if not exclusive decider of issues of English
22  law. I think it's very difficult for rational and fair-minded
23  people to disagree with that proposition.
24      The question becomes whether BNY, feeling some self-
25  described insecurity with respect to its own status, is, at

VERITEXT REPORTING COMPANY
212-267-6868                                              516-608-2400

```
                                                                    70
 1    this juncture, a person that can fairly represent the interests
 2    of Perpetual in this litigation?  And I answer that, yes, it
 3    is.  It is, in part, because it will be doing exactly that if
 4    it simply sits on its hands in this litigation and actively
 5    prosecutes its position in the AFLAC case.
 6            As noted during argument, Mr. Schaffer, on behalf of
 7    his client, acknowledged this point.  It's inconceivable that
 8    BNY will be taking a position in the AFLAC case that isn't
 9    exactly congruent with the position that it would be taking
10    here, in the Perpetual case.  Presumably, and I don't know what
11    it will be saying in substance, BNY will be rooting for its
12    beneficiary, AFLAC, that I gather will be arguing in favor of
13    noteholder priority.
14            While the facts may be subtly different, the legal
15    issues are exactly the same, as I'm understanding the situation
16    presented here.  And so, if BNY does nothing other than
17    ardently present the legal argument that it will be advancing
18    in the AFLAC case, it will coincidentally also be ardently
19    advocating the very same points in the Perpetual case.
20    Accordingly, it seems to me clear that BNY will at least
21    indirectly be adequately representing the interests of
22    Perpetual.
23            What we end up with, as a result, is a fairly subtle
24    issue that seems to be more about the interests of the
25    corporate trustee than it is about strict application of
```

08-13555-mg    Doc 4941-1    Filed 08/25/09    Entered 08/25/09 18:29:29    Exhibit
        Exhibit A    Pg 11 of 12

71

1    pleading principles.  BNY has quite appropriately sought to
2    extricate itself from a difficult situation here so as not to
3    be at the wrong end of conflicting directions from two courts.
4    I believe that coordination is the most appropriate answer to
5    this problem.  Both counsel for BNY and counsel for LBSF have
6    spoken to the issue of coordination during argument today.
7    It's not clear to me that they are on exactly the same page as
8    it relates to the nature of this coordination.  Mr. Miller has
9    been very precise in talking about scheduling coordination;
10   whereas Mr. Schaffer has been broader in his approach, and has
11   acknowledged the wisdom of a more comprehensive form of
12   allocation of responsibility.  I'm not sure if that's something
13   that he actually believes or if he was simply agreeing with
14   something that I had said.  But either way, that's the message
15   that I took from him.
16          Accordingly, I have some uncertainty as I make these
17   comments from the bench as to whether the parties are in a
18   position to stipulate as to the nature of the coordination that
19   should take place here.  But I did hear Mr. Miller volunteer to
20   be the drafter of a letter that presumably would be shared with
21   counsel for BNY, and that presumably I might send, with
22   everybody's consent, to my counterparty in London, to initiate
23   court-to-court communication, and at least to get into the
24   question of scheduling as an initial matter.
25          Whether the coordination is simply scheduling

VERITEXT REPORTING COMPANY
212-267-6868                                                516-608-2400

72

1  coordination or broader coordination that deals with abstention
2  and deferring to other courts for purposes of avoiding
3  conflicting adjudications, I believe that some level of
4  coordination is mandated here.  And my reading of the High
5  Court's decision is more consistent with LBSF's reading than it
6  is BNY's reading.  I do not know what the Chancellor was
7  meaning to say, nor do I interpret his words.  I do know what I
8  understood them to be telling me.  He was giving me space and
9  time.  Space and time to do what, is what's in dispute.
10            I believe that the decision does not represent an
11 express deferral in favor of the U.S. Bankruptcy Court as it
12 relates to U.S. bankruptcy law issues.  But I do believe that
13 the decision can be understood to be allowing time for the U.S.
14 Bankruptcy Court to hear, consider and determine issues that
15 are unique to U.S. bankruptcy practice.
16            Given that, and given what I believe to be BNY's real
17 purpose here, which is to avoid being torn apart by conflicting
18 decisions, the best means to achieve that is through
19 coordination.  That doesn't mean that that will be the outcome.
20 That just means that it's a means to avoid bad adverse result,
21 without guarantees that it will be avoided.
22            I believe, as a matter of law, that Perpetual is not
23 an indispensable party.  Perpetual may or may not be a
24 necessary party, but I don't need to decide that question.
25 Without doubt, Perpetual is a directly interested and affected