**Objection Date and Time: September 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: September 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman
Jacqueline  Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                           :   Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :   08-13555 (JMP)
                                                :
                        Debtors.                :   (Jointly Administered)
-------------------------------------------------------------------x
```

**NOTICE OF MOTION OF THE DEBTORS PURSUANT TO**
**SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019(b) FOR ESTABLISHMENT OF**
**PROCEDURES FOR THE DEBTORS TO COMPROMISE AND SETTLE**
**CLAIMS OF THE DEBTORS IN RESPECT OF REAL ESTATE LOANS**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of

August 25, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. and its affiliated debtors in

the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections 105(a) and

363(b) of title 11 of the United States Code authorizing the establishment of procedures to permit

the Debtors to compromise certain of their claims with respect to mortgage loans and other loans,

sell mortgage loans or other loans and modify the terms of mortgage loans or other loans, as

more fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **September 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received no later than **September 10, 2009 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.


Dated: August 25, 2009
     New York, New York

/s/ Jacqueline Marcus
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Objection Date and Time: September 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time:  September 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :          **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*                        :          **08-13555 (JMP)**
                                                                    :
                                             **Debtors.**           :          **(Jointly Administered)**
                                                                    :
                                                                    :
-------------------------------------------------------------------x

### MOTION OF THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) FOR ESTABLISHMENT OF PROCEDURES FOR THE DEBTORS TO COMPROMISE CLAIMS OF THE DEBTORS IN RESPECT OF REAL ESTATE LOANS

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), respectfully represent:

### Background

1.       Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

8.      By this Motion, the Debtors seek authority under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 to establish procedures by which they may (A) with respect to Real Estate Loans (as hereinafter defined), either (i) compromise and settle claims against borrowers and release such borrowers from all obligations with respect to outstanding prepetition loans held by third party borrowers or (ii) sell and assign such prepetition loans to the borrower or a designee of the borrower and release such borrowers from all obligations with respect to such loans, in each case, for (x) an amount that is less than the outstanding aggregate amount of such loans, including principal, interest and fees and (y) a release from the borrower of the applicable Debtor and its affiliates from all obligations in respect of such Real Estate Loans (a "Discounted Payoff") and (B) solely with respect to Residential Real Estate Loans (as hereinafter defined), modify the terms of the loans (including, but not limited to, reducing the outstanding principal balance, decreasing the interest rate and changing the amortization schedule), in their reasonable business judgment ("Loan Modifications").

**The Debtors' Real Estate Loans**

9.      Prior to the Commencement Date, certain of the Debtors were in the business of originating or acquiring loans secured directly or indirectly by commercial real estate or interests in entities that own commercial real estate, including, but not limited to, office properties, retail properties and apartment complexes, and mezzanine loans and other loans ultimately secured, directly or indirectly, by real property or ownership interests therein

(collectively, "Commercial Real Estate Loans").  As of the Commencement Date, the Debtors were party to over 1,000 Commercial Real Estate Loans.

10.     The Debtors also originated or acquired many loans secured directly or indirectly by residential properties ("Residential Real Estate Loans", and together with Commercial Real Estate Loans, the "Real Estate Loans").  With respect to Residential Real Estate Loans, the Debtors either (i) through certain subsidiaries, retained the rights to service or act as administrative agent with respect to certain Real Estate Loans or (ii) entered into agreements and granted various rights with respect to the loans to established third-party companies specializing in administering large pools of loans, including collecting remittances, communicating with borrowers, preparing reports and providing an assortment of other services related to the administration of such loans.  As of the Commencement Date, the Debtors were party to thousands of Residential Real Estate Loans.

11.     For the purposes of this Motion, the reference to any Commercial Real Estate Loan or Residential Real Estate Loan includes all loans held by the Debtors that are secured, directly or indirectly, by the same property or ownership interest (e.g. a mortgage and mezzanine loan both ultimately secured by the same piece of real estate).

## Compromises of Claims Related to Real Estate Loans

12.     Prior to the Commencement Date, in the ordinary course of their businesses and as is common in their industry, the Debtors or servicers, as agents of the Debtors would receive requests for Discounted Payoffs and Loan Modifications.  The Debtors or their servicers (in accordance with guidelines set forth in prepetition contracts between the Debtors and servicers) would analyze the Real Estate Loans, the financial condition of the borrower, the status of the collateral and determine the appropriate discount or modification, if any.  Once the

analysis was complete, the Debtors would determine whether to reject the Discounted Payoff and demand full payment, negotiate a higher Discounted Payoff or accept the Discounted Payoff or whether to agree to the proposed Loan Modification.  Upon payment of the amount agreed as a Discounted Payoff and in exchange therefor, or upon a Loan Modification reducing the outstanding principal balance, the Debtors would generally release the borrowers and other obligated parties from any future obligations with respect to such Real Estate Loan, or the applicable portion thereof.

13.    During the eleven months since the Commencement Date, and particularly as the real estate market has continued to decline, the Debtors have had, and continue to have numerous opportunities to monetize or modify Real Estate Loans, including by way of Discounted Payoffs and Loan Modifications.  Since the Commencement Date, the Debtors have been engaged in the process of evaluating their Real Estate Loan portfolio, responding to various funding requests from borrowers and, on occasion, responding to adversary proceedings and contested matters commenced by borrowers.  During such time, (i) with respect to 353 Residential Real Estate Loans, the Debtors have modified the terms of the loans to decrease the outstanding principal amount of loans in the aggregate amount of $3.88 million, and made modifications to the terms of other loans and (ii) with respect to 35 Residential Real Estate Loans, the Debtors have accepted Discounted Payoffs with an aggregate discount amount of approximately $5.8 million.  Since entering into such transactions was commonplace in the Debtors' businesses prior to the Commencement Date and is customary in the industry, the Debtors entered into such transactions with a reasonable belief that such transactions were in the ordinary course of business.  While the Debtors believe that agreeing to Discounted Payoffs and Loan Modifications constitute transactions in the ordinary course of the Debtors' businesses not

requiring notice or a hearing under section 363(b) of the Bankruptcy Code or Rule 9019 of the

Bankruptcy Rules, it is out of an abundance of caution and for the purpose of providing full

disclosure to the estates' creditors of compromises with respect to Real Estate Loans that the

Debtors filed this motion to establish procedures acceptable to the Creditors' Committee and the

Court for agreement to Discounted Payoffs and Loan Modifications.

14.    Absent the relief requested in this Motion, the Debtors would be required

to seek specific Court approval prior to each individual Discounted Payoff or Loan Modification.

Given the thousands of Real Estate Loans that the Debtors own, preparing, filing and serving

individual pleadings with respect to each such settlement of a Real Estate Loan, and holding

individual hearings on each motion would be expensive, cumbersome and highly inefficient.

Accordingly, the Debtors propose that they should be permitted to agree to, in their sole

discretion, (or permit the servicers to agree to) Discounted Payoffs and Loan Modifications in a

manner substantially consistent with their prepetition practices and without the need for

obtaining Court approval of Discounted Payoffs and Loan Modifications for each individual Real

Estate Loan.

15.    The Debtors believe that granting the authority requested herein would

enable them to efficiently and economically monetize the Real Estate Loans and maximize their

recovery.  By agreeing to Discounted Payoffs, the Debtors believe that they will significantly

reduce the postpetition costs incurred in monitoring and servicing the related Real Estate Loans.

In addition, by agreeing to Loan Modifications, the Debtors believe that they will decrease the

likelihood of having to foreclose on loans and incur the decreased recovery and expense of

foreclosure proceedings, and increase the likelihood of repayment of the loans in full, on the

modified terms.  Furthermore, the market value of Real Estate Loans has been extremely volatile

over the past two years as the global economy has slowed, the value of real estate across the

United States and internationally has declined and the risk of non-payment by the borrowers of

mortgage loans has increased.  Since the near-term future of the market value of Real Estate

Loans, the likelihood of borrowers' ultimate repayment of the Real Estate Loans in full at

maturity and the real estate market and the economy as a whole are uncertain, agreeing to a

Discounted Payoffs and Loan Modifications as compromises or sales in many cases will increase

the recovery by the Debtors with respect to certain Real Estate Loans and thus increase the

recoveries of all creditors.

    16.  Furthermore, as has been the case with real estate investments the world

over, the Debtors have written down the value of many of the Real Estate Loans (or pools of

Real Estate Loans) on their balance sheet, and thus they have already taken into account the

reduced value of the Real Estate Loans and the decreased likelihood of a recovery of the full

outstanding principal balance of such Real Estate Loans.  As a result, Discounted Payoffs and

Loan Modifications should already be contemplated by creditors and included in their

calculations of expected recoveries.

    17.  Accordingly, this Motion sets forth the guidelines and procedures the

Debtors propose to implement with respect Discounted Payoffs and Loan Modifications.  The

Debtors believe that it would be far more efficient and cost effective for their estates and

creditors if they were authorized to accept, in their sole discretion, Discounted Payoffs and Loan

Modifications under the terms and conditions outlined in this Motion.

    18.  Based upon the Debtors' historical experience in negotiating Discounted

Payoffs and Loan Modifications, the Debtors seek authorization to agree to Discounted Payoffs

and Loan Modifications under the following terms and conditions:

a.      Without further order of the Court or approval of any party, but with notice to the Creditors' Committee following any such transaction, the applicable Debtor may agree to Discounted Payoffs in its business judgment with respect to any Commercial Real Estate Loan with a Mark-to-Market Carrying Value[1] of less than $10 million; provided that, with respect to any Discounted Payoff (w) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than one borrower) for which the Debtors have entered into a Discounted Payoff in the six months immediately preceding such proposed transaction with respect to Commercial Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which is equal to or exceeds $10 million, (x) entered into by the Debtors with a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted Payoff transaction, (y) entered into by the Debtors with an entity against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (z) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Commercial Real Estate Loan, the provisions of clause (c) below shall apply.

b.      Without further order of the Court or approval of any party, but with notice to the Creditors' Committee following any such transaction, the applicable Debtor may agree to Discounted Payoffs and/or Loan Modifications in its business judgment with respect to any Residential Real Estate Loans with a Mark-to-Market Carrying Value of less than $5 million; provided that, with respect to any Discounted Payoff (w) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than one borrower) for which the Debtors have entered into a Discounted Payoff or Loan Modification in the six months immediately preceding such proposed transaction with respect to Residential Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which equals to or exceeds $5 million, (x) entered into by the Debtors with person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted Payoff transaction, (y) entered into by the Debtors with an entity

---

[1] "Mark-to-Market Carrying Value" as used herein shall mean the mark-to-market carrying value on the Debtors' records of any Real Estate Loan as of December 31, 2008, or as otherwise agreed to by the Creditors' Committee; provided however, if (i) the mark-to-market carrying value of any Real Estate Loan on the Debtors' records as of December 31, 2008 is less than or equal to 50% of mark-to-market carrying value of such Real Estate Loan on the Debtors' records as of September 17, 2008, and (ii) the mark-to-market carrying value of any Real Estate Loan is not otherwise agreed to by the Creditors' Committee, the Mark-to-Market Carrying Value for the purposes of this Motion shall be the mark-to-market carrying value of such Real Estate Loan on the Debtors' records as of September 17, 2008.

against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (z) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Residential Real Estate Loan, the provisions of clause (d) below shall apply.

c.      With respect to Discounted Payoffs of any Commercial Real Estate Loans (1) with a Mark-to-Market Carrying Value equal to or greater than $10 million and less than $25 million, (2) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than one borrower) for which the Debtors have entered into a Discounted Payoff in the six months immediately preceding such proposed transaction with respect to Commercial Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which is equal to or exceeds $10 million but is less than $25 million, (3) entered into by the Debtors with a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted Payoff transaction, (4) entered into by the Debtors with an entity against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (5) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Commercial Real Estate Loan, the Debtors will submit to the Creditors' Committee (i) the identity of the borrower of such Commercial Real Estate Loan; (ii) the outstanding principal balance of such Commercial Real Estate Loan, (iii) the proposed amount of the discount, (iv) an explanation of why the Debtor believes the discount is appropriate and (v) the criteria above that triggered the requirement to seek the consent of the Creditors' Committee (the "Commercial Real Estate Loan Transaction Summary").  The Creditors' Committee will be required to submit any objections to the acceptance of a Discounted Payoff reflected on a Commercial Real Estate Loan Transaction Summary on or before ten (10) business days after service of such Commercial Real Estate Loan Transaction Summary.  In the event that the Creditors' Committee objects to the acceptance of a Discounted Payoff set forth in the Commercial Real Estate Loan Transaction Summary, the Debtors may (i) seek to renegotiate the terms of the Discounted Payoff and submit a revised Commercial Real Estate Loan Transaction Summary in connection therewith or (ii) file a motion with the Court seeking approval of the acceptance of a Discounted Payoff.  If the Creditors' Committee does not timely object to the acceptance of a Discounted Payoff, then the Debtors will be deemed, without further order of the Court, to be authorized by the Court to accept the Discounted Payoff at issue as provided in the Commercial Real Estate Loan Transaction Summary previously submitted to the Creditors' Committee.

d.      With respect to Discounted Payoffs and Loan Modifications of any Residential Real Estate Loans (1) with a Mark-to-Market Carrying Value equal to or greater than $5 million and less than $10 million, (2) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than

one borrower) for which the Debtors have entered into a Discounted Payoff or Loan Modifications in the six months immediately preceding such proposed transaction with respect to Residential Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which is equal to or exceeds $5 million but is less than $10 million, (3) entered into by the Debtors with a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted Payoff transaction, (4) entered into by the Debtors with an entity against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (5) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Residential Real Estate Loan, the Debtors will submit to the Creditors' Committee (i) the identity of the borrower of such Residential Real Estate Loan; (ii) the outstanding principal balance of such Residential Real Estate Loan, (iii) the proposed amount of the discount or description of the modification, as applicable, (iv) an explanation of why the Debtor believes the discount or modification is appropriate and (v) the criteria above that triggered the requirement to seek the consent of the Creditors' Committee (the "Residential Real Estate Loan Transaction Summary").  The Creditors' Committee will be required to submit any objections to the acceptance of a Discounted Payoff or Loan Modification reflected on a Residential Real Estate Loan Transaction Summary on or before ten (10) business days after service of such Residential Real Estate Loan Transaction Summary.  In the event that the Creditors' Committee objects to the acceptance of a Discounted Payoff or Loan Modification set forth in the Residential Real Estate Loan Transaction Summary, the Debtors may (i) seek to renegotiate the terms of the Discounted Payoff or Loan Modification and submit a revised Residential Real Estate Loan Transaction Summary in connection therewith or (ii) file a motion with the Court seeking approval of the acceptance of a Discounted Payoff or Loan Modification.  If the Creditors' Committee does not timely object to the acceptance of a Discounted Payoff or Loan Modification, then the Debtors will be deemed, without further order of the Court, to be authorized by the Court to accept the Discounted Payoff or Loan Modification at issue as provided in the Residential Real Estate Loan Transaction Summary previously submitted to the Creditors' Committee.

e.      For any Discounted Payoffs with respect to Commercial Real Estate Loan with a Mark-to-Market Carrying Value equal to or greater than $25 million, the Debtors will be required to file a motion with the Court requesting approval of a Discounted Payoff as a compromise and settlement under Bankruptcy Rule 9019 or a sale pursuant to Section 363 of the Bankruptcy Code.

f.      For any Discounted Payoffs and Loan Modifications with respect to Residential Real Estate Loans with a Mark-to-Market Carrying Value equal to or greater than $10 million, the Debtors will be required to file a motion with the Court requesting approval of a Discounted Payoff or Loan Modification as a

compromise and settlement under Bankruptcy Rule 9019 or a sale pursuant to Section 363 of the Bankruptcy Code.

g.      With respect to any Discounted Payoffs and/or Loan Modifications of any Real Estate Loans completed by the Debtors in accordance with the procedures set forth herein, the Debtors may, without further order of the Court or approval of or notice to any party, grant releases to the borrowers, indemnitors, and guarantors (to the extent the Debtors deem necessary) under such loans of all or any part of obligations with respect to such loans.

### **Basis for Relief**

19.      Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry,* 390 U.S. at 424 (quoting *Case v. Los Angelas Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

20.      The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505; see also *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown &*

*Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the

question of whether a particular compromise is "fair and equitable, and in the best interest of the

estate."  *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations

omitted).

       21.     While a court must "evaluate … all … factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation.  *Drexel Burnham Lambert Group*, 134

B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact….  The court need only canvass the settlement to determine whether it is within the accepted

range of reasonableness."  *Nellis*, 165 B.R. at 123 (internal citations omitted).

       22.     The court may give weight to the "informed judgments of the … debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise."  *Drexel Burnham Lambert

Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness….  If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have

selected the other.").

       23.     Significantly, there is no requirement that "the value of the compromise …

be dollar-for-dollar the equivalent of the claim."  *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to

a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974).

24.    This Court has the authority to grant the relief requested in this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(b). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 363(b)(1) of the Bankruptcy Code, which authorizes a debtor to use or sell assets of the estate other than in the ordinary course of business, free and clear of liens, claims and encumbrances, provides, in relevant part "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate"  See 11 U.S.C. § 363(b)(1); see Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction").  The decision to sell assets outside the ordinary course of business is based upon the sound business judgment of the debtor.  *See, e.g., In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 772 F.2d 1063, 1071 (2d Cir. 1983); *In re Adelphia Communications Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002).  *See also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993), quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy).  Providing the Debtors with the authority to efficiently and economically monetize many of their Real Estate Loans is clearly beneficial to the Debtors'

estates and creditors.  Bankruptcy Rule 9019(b) provides that "on motion…and after notice and a hearing, the Court may approve a compromise or settlement".

25.    The Debtors seek the establishment of procedures, which if complied with, render certain future compromises and settlements pre-approved.  Other courts have granted authority to settle various types of claims to debtors in possession in other large chapter 11 cases, including *In re Footstar, Inc. et al.*, (Case No. 04-22350) (Bankr. S.D.N.Y.) (approving procedures for the settlement of litigation claims and pre-petition leases and contracts); *In re NRG Energy, Inc., et al.* (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) (approval of procedures for the settlement of terminated derivative contracts); *In re Mirant Corporation, et al.* (Case No. 03-46590) (Bankr. N.D. Tex. 2003) (approval of procedures for the settlement of terminated derivative contracts); *In re Enron Corp., et al.* (Case No. 01-16034) (Bankr. S.D.N.Y. 2001) (approval of procedures for estimation and settlement of unliquidated and contingent claims); *In re Armstrong World Industries, Inc., et al.* (Case No. 00-4471) (Bankr. D. Del. 2000) (approving procedures for the settlement of personal injury claims, employee litigation claims and tax claims against the debtor).

26.    For the reasons discussed above, the Debtors have determined that a compromise of claims with respect to Real Estate Loans, the sale of Real Estate Loans to the borrowers (or designee thereof) and the modification of the terms of Residential Real Estate Loans represent their best method to realize value and minimize the risk of future losses with respect to Real Estate Loans.  The Debtors are seeking authorization to effect Discounted Payoffs and Loan Modifications in a similar manner to which they accepted Discounted Payoffs and Loan Modifications in the ordinary course of their business prior to the Commencement Date.  Discounted Payoffs and Loan Modifications are a common tool used in the mortgage

lending business to maximize the value of real estate loans.  To take full advantage of these processes, the Debtors submit that they require pre-authorization from the Court for procedures authorizing them to agree to Discounted Payoffs and Loan Modifications in accordance with the Debtors' reasonable business judgment.

27.    The proposed procedures for compromises and settlements as discussed in this Motion are within the parameters set forth in Bankruptcy Rule 9019, are within the Court's authority under sections 105(a) and 363(b) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates, their creditors, and all parties in interest.

### **Notice**

28.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

29.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order (i) establishing

and authorizing the compromise and settlement procedures set forth herein and (ii) granting the

Debtors such other and further relief as is just.


DATED:    August 25, 2009
          New York, New York

                              /s/ Jacqueline Marcus
                              Shai Y. Waisman
                              Jacqueline Marcus

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              (212) 310-8000

                              ATTORNEYS FOR DEBTORS AND
                              DEBTORS IN POSSESSION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                           :

In re                               :         **Chapter 11 Case No.**
                                           :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                         :

                  **Debtors.**          :         **(Jointly Administered)**
                                         :
                                         :
-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) AUTHORIZING THE ESTABLISHMENT OF PROCEDURES FOR THE DEBTORS TO COMPROMISE CLAIMS OF THE DEBTORS IN RESPECT OF REAL ESTATE LOANS

                Upon the motion, dated August 25, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI"), and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to sections 105(a) and 363(b) of the Bankruptcy Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for entry of an order establishing procedures authorizing the Debtors to

compromise certain of their claims with respect to mortgage loans and other loans, sell mortgage

loans or other loans and modify the terms of mortgage loans or other loans, as more fully

described in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the order entered

February 13, 2009 governing case management and administrative procedures for these cases

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York (the "U.S. Trustee"); and (vi) all parties

who have requested notice in these chapter 11 cases, and it appearing that no other or further

notice need be provided; and a hearing (the "Hearing") having been held to consider the relief

requested in the Motion; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that Debtors shall be, and hereby are, authorized to compromise

claims that they have with respect to certain Real Estate Loans[1], sell and assign certain Real

Estate Loans and modify the terms of Residential Real Estate Loans, in each case, by agreeing to

Discounted Payoffs or Loan Modifications in accordance with the following procedures:

    a.      Without further order of the Court or approval of any party, but with notice to the Creditors' Committee following any such transaction, the applicable Debtor may agree to Discounted Payoffs in its business judgment with respect to any Commercial Real Estate Loan with a Mark-to-Market Carrying Value[2] of less

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[2] "Mark-to-Market Carrying Value" as used herein shall mean the mark-to-market carrying value on the Debtors' records of any Real Estate Loan as of December 31, 2008, or as otherwise agreed to by the Creditors' Committee; provided however, if (i) the mark-to-market carrying value of any Real Estate Loan on the Debtors' records as of December 31, 2008 is less than or

than $10 million; provided that, with respect to any Discounted Payoff (w) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than one borrower) for which the Debtors have entered into a Discounted Payoff in the six months immediately preceding such proposed transaction with respect to Commercial Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which is equal to or exceeds $10 million, (x) entered into by the Debtors with a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted Payoff transaction, (y) entered into by the Debtors with an entity against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (z) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Commercial Real Estate Loan, the provisions of clause (c) below shall apply.

b.      Without further order of the Court or approval of any party, but with notice to the Creditors' Committee following any such transaction, the applicable Debtor may agree to Discounted Payoffs and/or Loan Modifications in its business judgment with respect to any Residential Real Estate Loans with a Mark-to-Market Carrying Value of less than $5 million; provided that, with respect to any Discounted Payoff (w) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than one borrower) for which the Debtors have entered into a Discounted Payoff or Loan Modification in the six months immediately preceding such proposed transaction with respect to Residential Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which equals to or exceeds $5 million, (x) entered into by the Debtors with person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted Payoff transaction, (y) entered into by the Debtors with an entity against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (z) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Residential Real Estate Loan, the provisions of clause (d) below shall apply.

c.      With respect to Discounted Payoffs of any Commercial Real Estate Loans (1) with a Mark-to-Market Carrying Value equal to or greater than $10 million

---

equal to 50% of mark-to-market carrying value of such Real Estate Loan on the Debtors' records as of September 17, 2008, and (ii) the mark-to-market carrying value of any Real Estate Loan is not otherwise agreed to by the Creditors' Committee, the Mark-to-Market Carrying Value for the purposes of this Order shall be the mark-to-market carrying value of such Real Estate Loan on the Debtors' records as of September 17, 2008.

and less than $25 million, (2) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than one borrower) for which the Debtors have entered into a Discounted Payoff in the six months immediately preceding such proposed transaction with respect to Commercial Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which is equal to or exceeds $10 million but is less than $25 million, (3) entered into by the Debtors with a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted Payoff transaction, (4) entered into by the Debtors with an entity against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (5) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Commercial Real Estate Loan, the Debtors will submit to the Creditors' Committee (i) the identity of the borrower of such Commercial Real Estate Loan; (ii) the outstanding principal balance of such Commercial Real Estate Loan, (iii) the proposed amount of the discount, (iv) an explanation of why the Debtor believes the discount is appropriate and (v) the criteria above that triggered the requirement to seek the consent of the Creditors' Committee (the "Commercial Real Estate Loan Transaction Summary").  The Creditors' Committee will be required to submit any objections to the acceptance of a Discounted Payoff reflected on a Commercial Real Estate Loan Transaction Summary on or before ten (10) business days after service of such Commercial Real Estate Loan Transaction Summary.  In the event that the Creditors' Committee objects to the acceptance of a Discounted Payoff set forth in the Commercial Real Estate Loan Transaction Summary, the Debtors may (i) seek to renegotiate the terms of the Discounted Payoff and submit a revised Commercial Real Estate Loan Transaction Summary in connection therewith or (ii) file a motion with the Court seeking approval of the acceptance of a Discounted Payoff.  If the Creditors' Committee does not timely object to the acceptance of a Discounted Payoff, then the Debtors will be deemed, without further order of the Court, to be authorized by the Court to accept the Discounted Payoff at issue as provided in the Commercial Real Estate Loan Transaction Summary previously submitted to the Creditors' Committee.

d.    With respect to Discounted Payoffs and Loan Modifications of any Residential Real Estate Loans (1) with a Mark-to-Market Carrying Value equal to or greater than $5 million and less than $10 million, (2) entered into by the Debtors with an entity (including a borrower or sponsor that may own more than one borrower) for which the Debtors have entered into a Discounted Payoff or Loan Modifications in the six months immediately preceding such proposed transaction with respect to Residential Real Estate Loans, the aggregate Mark-to-Market Carrying Value of which is equal to or exceeds $5 million but is less than $10 million, (3) entered into by the Debtors with a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Discounted

Payoff transaction, (4) entered into by the Debtors with an entity against which the Debtors, in their commercially reasonable judgment, believe they have an outstanding claim pursuant to Sections 547 or 548 of the Bankruptcy Code, or (5) in which the discount is greater than 50% of the Mark-to-Market Carrying Value of such Residential Real Estate Loan, the Debtors will submit to the Creditors' Committee (i) the identity of the borrower of such Residential Real Estate Loan; (ii) the outstanding principal balance of such Residential Real Estate Loan, (iii) the proposed amount of the discount or description of the modification, as applicable, (iv) an explanation of why the Debtor believes the discount or modification is appropriate and (v) the criteria above that triggered the requirement to seek the consent of the Creditors' Committee (the "Residential Real Estate Loan Transaction Summary").  The Creditors' Committee will be required to submit any objections to the acceptance of a Discounted Payoff or Loan Modification reflected on a Residential Real Estate Loan Transaction Summary on or before ten (10) business days after service of such Residential Real Estate Loan Transaction Summary.  In the event that the Creditors' Committee objects to the acceptance of a Discounted Payoff or Loan Modification set forth in the Residential Real Estate Loan Transaction Summary, the Debtors may (i) seek to renegotiate the terms of the Discounted Payoff or Loan Modification and submit a revised Residential Real Estate Loan Transaction Summary in connection therewith or (ii) file a motion with the Court seeking approval of the acceptance of a Discounted Payoff or Loan Modification.  If the Creditors' Committee does not timely object to the acceptance of a Discounted Payoff or Loan Modification, then the Debtors will be deemed, without further order of the Court, to be authorized by the Court to accept the Discounted Payoff or Loan Modification at issue as provided in the Residential Real Estate Loan Transaction Summary previously submitted to the Creditors' Committee.

e.      For any Discounted Payoffs with respect to Commercial Real Estate Loan with a Mark-to-Market Carrying Value equal to or greater than $25 million, the Debtors will be required to file a motion with the Court requesting approval of a Discounted Payoff as a compromise and settlement under Bankruptcy Rule 9019 or a sale pursuant to Section 363 of the Bankruptcy Code.

f.      For any Discounted Payoffs and Loan Modifications with respect to Residential Real Estate Loans with a Mark-to-Market Carrying Value equal to or greater than $10 million, the Debtors will be required to file a motion with the Court requesting approval of a Discounted Payoff or Loan Modification as a compromise and settlement under Bankruptcy Rule 9019 or a sale pursuant to Section 363 of the Bankruptcy Code.

g.      With respect to any Discounted Payoffs and/or Loan Modifications of any Real Estate Loans completed by the Debtors in accordance with the procedures set forth herein, the Debtors may, without further order of the Court or approval of or notice to any party, grant releases to the borrowers, indemnitors, and guarantors (to the extent the Debtors deem necessary) under such loans of all or any part of obligations with respect to such loans;

and it is further

ORDERED that this Order shall not obligate or require any Debtor to compromise any claim it may have with respect to a Real Estate Loan, sell or assign a Real Estate Loan or modify the terms of a Residential Real Estate Loan, nor shall this Order preclude Debtors from settling or compromising any claim upon further application to the Court; and it is further

ORDERED that, the Debtors are authorized to execute such documents or other instruments as may be necessary to compromise their claims with respect to Real Estate Loans, sell Real Estate Loans and modify the terms of Residential Real Estate Loans in accordance with this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: September __, 2009
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE