**FRIED, FRANK, HARRIS, SHRIVER**
   **& JACOBSON LLP**
One New York Plaza
New York, NY 10004
212-859-8000
Gregg L. Weiner
*Counsel for A/P Hotel, LLC*

Hearing Date and Time: September 15, 2009 @ 10:00 a.m.
Objection Deadline: September 10, 2009

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al. | : | Case No. 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

**MOTION OF A/P HOTEL, LLC FOR (I) A DETERMINATION THAT THE
AUTOMATIC STAY DOES NOT APPLY TO A NON-JUDICIAL FORECLOSURE
PROCESS BEING PURSUED BY THE DEBTORS, OR ALTERNATIVELY, (II) RELIEF
FROM THE AUTOMATIC STAY IN CONNECTION THEREWITH**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

A/P Hotel, LLC ("AP", "Movant" or "Borrower"), by and through its undersigned

counsel, makes this motion (the "Motion") pursuant to Sections 105 and 362(d) of Title 11 of the

United States Code (the "Bankruptcy Code") for (i) a determination that the automatic stay does

not prevent AP from contesting a non-judicial foreclosure process Lehman Brothers Holdings

Inc. ("Lehman" or "Debtor") has recently instituted in Nevada, or, alternatively, (ii) relief from

the automatic stay to permit AP to challenge that foreclosure process. In support of this Motion,

Movant is filing the Declaration of Kwan Young Kim ("Kim Decl."), attaching the documents

discussed therein.

## PRELIMINARY STATEMENT

1.    Pursuant to a Loan Agreement dated September 5, 2007 (the "Loan Agreement"),

between Lehman and AP, Lehman committed to lend $66,000,000 for the acquisition and

renovation of The Atrium Suites Las Vegas Hotel (to be known as the Paradise Boutique Hotel)

located at 4255 South Paradise Road, Las Vegas, Nevada 89169 (the "Project"). After Lehman

filed for bankruptcy on September 15, 2008, it failed to meet its funding requirements under the

Loan Agreement as sole lender on the Project. Lehman's failure to fund shut down the Project,

causing AP significant harm and allowed AP, as a matter of law, to suspend its performance

under the Loan Agreement until such time as Lehman cured its material breach. Nonetheless,

Lehman has wrongfully declared AP in default under the Loan Agreement and has initiated a

non-judicial foreclosure proceeding in Nevada. Under that process in Nevada, Lehman can

initiate a trustee sale of the property as early as October 12, 2009. AP does not believe that the

automatic stay applies to defense of the foreclosure currently being pursued by Lehman in

Nevada. However, Lehman has expressed a contrary view and, therefore, in an abundance of

caution, AP is filing this Motion requesting (i) a determination that the automatic stay does not

apply to the actions sought to be taken by AP or, alternatively, (ii) relief from the automatic stay

to enable it to contest and defend against the foreclosure, including by bringing an action to

enjoin the foreclosure process initiated by Lehman post-petition.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief sought herein are Sections 362 and 105 of the

Bankruptcy Code, as supplemented by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### The Project and Loan

4.     AP is a Delaware limited liability company with its principal place of business at 345 South Figueroa Street, Suite 100, Los Angeles, California 90071. AP sought to acquire and renovate the Project. The hotel was originally built in 1989, located on 3.75 acres; the hotel offers 202 guestrooms, approximately 7,400 square feet of meeting space, three food and beverage outlets, an outdoor heated swimming pool, and an exercise facility. The hotel also offers 196 surface parking spaces surrounding the structure. AP sought to acquire and commence a complete renovation of the existing hotel to create an upscale boutique hotel, fit to service the needs and demands of the Las Vegas consumer. The renovations were anticipated to take approximately twelve months.

5.     On September 5, 2007, AP, as borrower, and Lehman, as lender, entered into the Loan Agreement in the principal amount of $66,000,000. *See* Kim Decl. ¶ 4.

6.     Under the Loan Agreement, AP was able to borrow against the $66,000,000 by issuing a written request to Lehman for the disbursement of funds ("Request for Disbursement"). After receiving such request, Lehman was required to advance the requested funds so long as AP certified that certain conditions were met. As specified in Section 2.7(a) of the Loan Agreement, Lehman is required to advance the requested funds ten days following the submission of the Request for Disbursement by AP. Future funding advances, disbursed by Lehman were added to the outstanding loan balance. AP was required to pay interest on the total loan balance each month ("Debt Service").

3

**Lehman's Default**[1]

7.  From the time of the Loan Agreement through September 15, 2008, the date Lehman filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code (the "Petition"), renovations at the project were ongoing and proceeding in accordance with the anticipated schedule. *See* Kim Decl. ¶ 6. AP made eight Requests for Disbursement before the Petition, all of which Lehman funded. The last such request, Request for Disbursement #8, dated August 21, 2008, was for $1,308,379, and was funded by Lehman in accordance with the terms of the Loan Agreement. *Id.*

8.  In the wake of Lehman's filing for bankruptcy, however, the Project contractor, Kraus-Anderson Construction Company ("Kraus"), requested assurances that AP would be able to continue to fund the Project, in the absence of which, Kraus stated that it would cease performing. *See* Kim Decl. ¶ 7. AP promptly sent a letter to Lehman, dated September 19, 2008, requesting written assurances from Lehman that it would continue to fund under the Loan Agreement. *Id.* In that letter, AP notified Lehman that if they failed to fund, AP would not be able to continue the renovation work and would incur sizeable losses and damages. *Id.* Lehman did not respond to AP's letter.

9.  On September 29, 2008, AP submitted Request for Disbursement #9 in the amount of $1,321,100. *See* Kim Decl. ¶ 8. The Request for Disbursement complied with the requirements under the Loan Agreement. *Id.*

10. Under the Loan Agreement, Lehman was required to fund a Request for Disbursement within ten days. Nevertheless, Lehman failed to fund Request for Disbursement #9 within this ten day period. Accordingly, by letter dated October 14, 2008, AP notified Lehman that as a

---

[1]    AP is providing these facts for background purposes. The merits of the claims and defenses of the parties in connection with the foreclosure are not being contested in this Motion and are not material to the Court's determination given the nature of the relief being sought.

result of Lehman's failure to fund Request for Disbursement #9 and advance the $1,321,100,

Lehman had materially breached the Loan Agreement. *See* Kim Decl. ¶ 9.

11. Lehman did not respond to AP's letters. Given Lehman's silence and its failure to fund in

accordance with the Loan Agreement, AP justifiably took action to protect itself and withheld its

Debt Service payments.[2]  *See* Kim Decl. ¶ 10.

12. By letter dated November 12, 2008, Lehman responded to AP by attempting to

manufacture a default by AP, claiming that AP defaulted for not causing the Substantial

Completion of the Renovation Work to occur before the Completion Date, or May 31, 2008, and

claiming that AP was in default for failing to make its Debt Service payments since November 9,

2008. *See* Kim Decl. ¶ 11.

13. By letter dated November 21, 2008, AP responded that Lehman's allegations were

completely without merit as the parties had agreed that the May 31, 2008 date was a scrivener's

error (the correct date being May 31, 2009) and AP's performance, including its Debt Service

payments, was excused as a result of Lehman's material breach of the Loan Agreement. *See*

Kim Decl. ¶ 12.  Lehman later acknowledged that the May 31, 2008 date was a scrivener's error

(the correct date being May 31, 2009 as AP contended) and therefore not a basis for Lehman's

failure to fund.  Lehman has never provided any reason – let alone a valid reason – for its failure

to fund.

**Lehman Initiates Non-Judicial Foreclosure Process in Nevada**

14. By notice dated, June 23, 2009 ("Notice of Default"), Lehman notified AP that it had

---

[2]    *See In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) (finding that a material breach relieves the non-
breaching party of an obligation to further perform); *see also Municipal Capital Appreciation Partners, I,
L.P. v. Page*, 181 F. Supp. 2d 379, 395 (S.D.N.Y. 2002) (finding that failure to tender payment pursuant to
the terms of a contract is considered a material breach and discharges the non-breaching party from further
performance); *see also Jafari v. Wally Findlay Galleries*, 741 F. Supp 64, 67 (S.D.N.Y. 1990) (holding that
"failure to tender payment is a material breach of a contract" and excuses the other party from performing).

elected to conduct a non-judicial foreclosure of the mortgaged property (the "Property") on the alleged ground that AP was in default under the Loan Agreement for failing to make its Debt Service payments and failing to comply with the Renovation Schedule. *See* Kim Decl. ¶ 13. Under Nevada law, in order to commence a non-judicial foreclosure process, the lender must record and serve the Notice of Default, identifying the basis for the foreclosure process. Nev. Rev. Stat. Ann. § 107.080. For a period of thirty-five days after recordation of the Notice of Default, the borrower has the right to cure the alleged default. Once ninety days have elapsed since the Notice of Default was recorded and the loan has not been reinstated, the lender may elect to conduct a trustee's sale. To conduct a trustee sale, the lender must provide a Notice of Sale to borrower, at which point the trustee can proceed with an auction of the property at a specifically designated public location. Here, under this process, Lehman can begin such trustee sale as early as October 12, 2009.

## RELIEF REQUESTED

15.    By this Motion, the Movant seeks (i) a determination that the automatic stay does not apply, or alternatively, if the Court determines that the automatic stay does apply, (ii) relief from the stay pursuant to Sections 105 and 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001, to permit AP to contest the non-judicial foreclosure process Lehman has initiated in Nevada.

## BASIS FOR RELIEF

### The Automatic Stay Does Not Apply

16. The automatic stay does not apply to the Nevada foreclosure process being pursued by Lehman because the matter was initiated by Lehman post-Petition based on an alleged post-Petition default by AP under the Loan Agreement. *See In re Chateaugay Corp.*, 86 B.R. 33, 37-38 (Bankr. S.D.N.Y. 1987); *see also Bennett v. United States Lines, Inc.*, 92 Civ. 0035, 1994

6

U.S. Dist. LEXIS 14106 , at *11 (S.D.N.Y. Oct. 4, 1994) ("the automatic stay is only applicable to claims that arose pre-petition, and since plaintiff's cause of action arose on July 4, 1987, after the petition had been filed, the Automatic stay does not apply to plaintiff's cause of action"). Post-petition conduct is not subject to the automatic stay. *Id.* Therefore, the automatic stay does not prohibit AP from bringing an action in Nevada to contest the foreclosure.

17. The conclusion that the automatic stay does not apply here is evident from the fact that had the Project been located in a state requiring judicial foreclosure, as the vast majority of states do, AP would not have needed relief from the stay to defend the foreclosure proceeding.

18.    Additionally, Lehman is in no position to object to allowing AP the ability to defend itself against a proceeding *voluntarily initiated by the Debtor*. As in any litigation, a party has a right to defend itself and not allowing a party to do so would violate basic due process principles and should not be permitted by this Court. *See Tarantino v. City of Hornell*, 615 F. Supp. 2d 102, 120 (W.D.N.Y. 2009) ("In the context of due process...a plaintiff [must] receive notice and an opportunity to be heard before being deprived of a protected liberty or property interest.").

### The Automatic Stay Should Be Lifted

19.    If the Court determines that the automatic stay does in fact apply, AP requests that the Court grant it relief from the automatic stay for the limited purpose of contesting the non-judicial foreclosure process in Nevada.

20.    Section 362(d) of the Bankruptcy Code provides that a party in interest may be granted relief from the automatic stay as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditions such stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

21.    The party seeking relief from the stay is required to make an initial showing of cause, and if cause is shown, the burden is shifted to the debtor to disprove the existence of cause under Section 362(g)(2) of the Bankruptcy Code. *In re Deep*, 279 B.R. 653, 657 (Bankr. N.D.N.Y. 2002).

22.    This Court has broad discretion to grant relief from the automatic stay. *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992); *see also In re Newman*, 196 B.R. 700, 703 (Bankr. S.D.N.Y. 1996).

23.    In the exercise of their discretion under Section 362(d)(1) to permit litigation against debtors in a non-bankruptcy forum, Courts in this Circuit consider the following twelve factors: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceedings; and (12) impact of the stay on the parties and the balance of harms. *In re Deep*, 279 B.R. at 657 (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)). These factors need not apply to every case, and need not be weighed equally. *In re Anton*, 145 B.R. at 770. A court can apply only

those factors that are appropriate. *In re New York Medical Group, P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

24.    The applicable factors weigh heavily in favor of granting AP relief from the automatic stay. First, courts routinely grant non-debtors, such as AP, relief from the automatic stay to defend or bring actions outside of bankruptcy court based on post-petition debtor conduct. *See Griggs v. 25 Realty Assocs., L.L.C.*, 02 Civ. 619, 2002 U.S. Dist. LEXIS 5977, at *2 (S.D.N.Y. April 4, 2002) (noting that court lifted the stay to allow non-debtor to bring an action to pursue all of its rights and remedies for debtor's failure to pay post-petition rent). More specifically, this Court has granted similar relief to other creditors. *See* Order Vacating Automatic Stay, *In re Lucciaio Partners LLC*, No. 02-43260 (Bankr. S.D.N.Y. December 5, 2002) (order granting movant relief from the automatic stay to pursue state court proceeding against the debtor); *see also* Order Pursuant to Sections 362 and 365 of the Bankruptcy Code Granting Kalaimoku-Kuhio Development Corp. Relief from the Automatic Stay, *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. July 23, 2009) (order granting creditor relief from the stay to enable creditor to "exercise its right and remedies" relating to debtor's post-petition conduct).

25. Second, the harm to AP is imminent, grave and irreparable. *See Carada, Ltd. v. McAuliffe*, 92 Civ. 0465, 1993 U.S. Dist. LEXIS 5057, at *9 (W.D.N.Y. April 5, 1993) (finding that because the plaintiff spent time, money and resources developing the project foreclosure created irreparable harm); *see also Oneida Indian Nation v. Madison County*, 401 F. Supp. 2d 219, 231 (N.D.N.Y. 2005) (holding that because the threatened foreclosure would result in a change of title, plaintiff would suffer irreparable harm and the requested injunction was granted). If AP is not granted relief from the stay, Lehman will foreclose on the Property and AP will lose its unique property interest in the Project, which cannot be remedied by money damages.

26. Third, granting AP relief from the automatic stay will not interfere with the bankruptcy case. Because AP is simply seeking this Court's permission to defend against the foreclosure process Lehman has initiated in Nevada, with respect to the Project, relief from the stay would not prejudice the interests of any other creditors.

27.    Fourth, a Nevada court is clearly better positioned to address, and in effect is a specialized tribunal with expertise concerning, foreclosure of a property located in Nevada under Nevada law. It is well-settled that state courts are in a better position to interpret issues of state law than federal courts. *See Corcoran v. Ardra Insurance Co., Ltd.*, 657 F. Supp. 1223, 1235 (S.D.N.Y. 1987); *In re Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund, Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986); *see also In re OptInRealBig.com, LLC*, 345 B.R. 277, 286 (Bankr. D. Colo. 2006).

28. Additionally, under Section 362(d) of the Bankruptcy Code, cause includes "the lack of adequate protection of an interest in property of such party in interest." Clearly, AP has an interest in the Property and non-judicial foreclosure threatens to divest AP of its property interest. Unless AP is permitted to enjoin, contest, and defend the foreclosure, its property interest will be lost and, therefore, adequate cause exists to grant relief from the stay. Given AP's valid defenses and counterclaims on the merits of the foreclosure, not allowing AP to contest the foreclosure and raise those defenses and counterclaims would, in essence, be a deprivation of its property right without due process. *See Tarantino,* 615 F. Supp. 2d at 120.

29.    AP respectfully submits that with respect to all of the relief requested, the harm to AP significantly outweighs any conceivable harm to Lehman or its estate and thus establishes the requisite cause for relief from the stay under Section 362(d)(1) of the Bankruptcy Code.

## NOTICE

30.   Notice of this Motion shall be provided to (i) counsel to the Debtors; (ii) counsel to the

Official Committee of Unsecured Creditors; (iii) the office of the United States Trustee; and (iv)

all other parties requesting notice under Bankruptcy Rule 2002 in advance of the date of this

Motion.  Movant respectfully represents that no other or further notice is warranted and that the

notice provided is sufficient.

## WAIVER OF MEMORANDUM OF LAW

31.   Because the Motion sets forth the applicable legal authority and does not raise any

novel issues of law, Movant respectfully requests that the requirement for a separate

memorandum of law contained in Local Rule 9013-1(b) be waived.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, AP respectfully requests that an

order, substantially in the form attached hereto as Exhibit 1, be entered for (i) a determination

that the automatic stay does not prevent AP from contesting the non-judicial foreclosure process

Lehman has recently instituted in Nevada, or, alternatively, (ii) relief from the automatic stay to

permit AP to challenge that foreclosure process and (iii) granting AP such other and further relief

as is just and proper.


Dated:    New York, New York
          August 26, 2009

                                        Respectfully submitted,

                                        /s/Gregg L. Weiner
                                        FRIED, FRANK, HARRIS, SHRIVER
                                           & JACOBSON LLP
                                        Gregg L. Weiner
                                        One New York Plaza
                                        New York, New York 10004

212-859-8000 – Telephone
212-859-4000 – Facsimile

*Counsel for A/P Hotel, LLC*

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al. | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

### ORDER ON A/P HOTEL, LLC'S MOTION FOR (I) A DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO A NON-JUDICIAL FORECLOSURE PROCESS BEING PURSUED BY THE DEBTORS, OR ALTERNATIVELY, (II) RELIEF FROM THE AUTOMATIC STAY IN CONNECTION THEREWITH

Upon the motion (the "Motion") of A/P Hotel, LLP ("AP" or the "Movant"), pursuant to Sections 105 and 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") for entry of an order (i) determining that the automatic stay does not prevent AP from contesting a non-judicial foreclosure process Lehman Brothers Holdings Inc. ("Lehman" or "Debtor") has recently instituted in Nevada, or, alternatively, (ii) relief from the automatic stay to permit AP to challenge that foreclosure process; and good and sufficient notice of the Motion having been given; and due deliberation having been had; and upon the Motion and the exhibits thereto, the hearing before this Court, and the full record in these cases; and good and sufficient cause appearing for the relief requested in the Motion; it is

**ORDERED**, that the Motion is hereby granted; and it is further

**ORDERED**, the automatic stay does not prevent AP from contesting the non-judicial foreclosure process; and it is further

**ORDERED**, that to the extent the automatic stay does apply, AP is granted relief from the automatic stay to contest and defend the non-judicial foreclosure proceeding and other applicable remedies.

Dated: New York, New York
  September __, 2009

               _____

               Hon. James M. Peck
               United States Bankruptcy Judge