UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., et al. | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

### DECLARATION OF KWAN YOUNG KIM IN SUPPORT MOTION OF A/P HOTEL, LLC FOR (I) A DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO A NON-JUDICIAL FORECLOSURE PROCESS BEING PURSUED BY THE DEBTORS, OR ALTERNATIVELY, (II) RELIEF FROM THE AUTOMATIC STAY IN CONNECTION THEREWITH

I, Kwan Young Kim, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1.    I am submitting this declaration in support of the Motion[1] of A/P Hotel, LLC ("AP") for (i) a determination that the automatic stay does not prevent AP from contesting a non-judicial foreclosure process Lehman Brothers Holdings Inc. ("Lehman" or "Debtor") has recently instituted in Nevada, or, alternatively, (ii) relief from the automatic stay to permit AP to challenge that foreclosure process (the "Motion").

2.    I am a director at AP.  AP is a party to a Loan Agreement with Lehman that is the subject of the Motion. I am authorized by AP to submit this declaration on its behalf.

### Financing of the Project

3.    AP is a Delaware limited liability company with its principal place of business at 345 South Figueroa Street, Suite 100, Los Angeles, California 90071. AP sought to acquire and renovate The Atrium Suites Las Vegas Hotel (to be known as the Paradise Boutique Hotel) located at 4255 South Paradise Road, Las Vegas, Nevada 89169 (the "Project"). The hotel was

---

[1]        Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

originally built in 1989, located on 3.75 acres; the hotel offers 202 guestrooms, approximately 7,400 square feet of meeting space, three food and beverage outlets, an outdoor heated swimming pool, and an exercise facility. The hotel also offers 196 surface parking spaces surrounding the structure. AP sought to acquire the existing hotel and commence a complete renovation of the existing hotel to create an upscale boutique hotel, fit to service the needs and demands of the Las Vegas consumer. The renovations were anticipated to take approximately twelve months.

4.    In connection with the acquisition and renovation of the Project, on September 5, 2007, AP and Lehman entered into the Loan Agreement in the principal amount of $66,000,000 (the "Loan Agreement"). A copy of the Loan Agreement is attached as Exhibit A.

5.    The Loan Agreement is the sole source of funding for the Project. Pursuant to the Loan Agreement, Lehman committed to lend $66 million for the Project. Of that amount, approximately $39,800,000 was funded at closing for the acquisition of the hotel, $11,800,000 was funded at closing and placed in various escrow accounts (interest reserve, taxes, insurance, etc) with Trimont Real Estate Advisors, Inc. ("Trimont") and the balance of $14,400,000 was outstanding for the renovation of the Project. AP has to date borrowed approximately $55,200,000.

## Lehman's Failure to Fund

6.    From the time of the Loan Agreement through September 15, 2008, renovations at the Project were ongoing and proceeding in accordance with the anticipated schedule. AP had made eight Requests for Disbursement. In each instance and in accordance with the Loan Agreement, AP submitted a written request for funding, accompanied by a borrowing affidavit and any other

documents and budgets called for under the Loan Agreement. Lehman funded all eight requests in accordance with the terms of the Loan Agreement.

7.   As of September 15, 2008, the date Lehman filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, the Project contractor, Kraus-Anderson Construction Company ("Kraus"), requested assurances that AP would be able to continue to fund the Project, in the absence of which, Kraus would cease performing. AP promptly sent a letter to Lehman, dated September 19, 2008, requesting written assurances from Lehman that it would continue to fund under the Loan Agreement. A copy of this letter is attached as Exhibit B. In that letter, AP notified Lehman that if they failed to fund, AP would not be able to continue the renovation work and would incur sizable losses and damages. Lehman did not respond to this letter.

8.   On September 29, 2008, AP submitted Request for Disbursement #9 in the amount of $1,321,100. A copy of that request is attached as Exhibit C. The Request for Disbursement complied with the requirements under the Loan Agreement and was well within the borrowing limits.

9.   Under the Loan Agreement, Lehman was required to fund a Request for Disbursement within ten days. Lehman failed to fund Request for Disbursement #9 within this ten day period. By letter dated October 14, 2008, AP notified Lehman that as a result of Lehman's failure to fund Request for Disbursement #9 and advance the $1,321,100, Lehman materially breached the Loan Agreement. A copy of this letter is attached as Exhibit D.

10. By letter dated October 29, 2008, AP notified Trimont, the loan servicer, that Lehman materially breached the Loan Agreement by failing to fund Request for Disbursement #9. As a result of Lehman's breach, AP instructed Trimont to discontinue any future Debt Service payments to Lehman. A copy of that letter is attached as Exhibit E.

3

11. By letter dated November 12, 2008, Lehman responded to AP by ignoring its material breach of the Loan Agreement. Instead, Lehman attempted to manufacture a default by AP, claiming that AP was in default for not causing the Substantial Completion of the Renovation Work to occur before the Completion Date, or May 31, 2008, and for failing to make its Debt Service payments since November 9, 2008. A copy of that letter is attached as Exhibit F.

12. By letter dated November 21, 2008, AP responded that Lehman's allegations were completely without merit as the parties had agreed that the May 31, 2008 date was a scrivener's error (the correct date being May 31, 2009) and AP's performance, including its Debt Service payments, was excused as a result of Lehman's material breach of the Loan Agreement. AP again requested that Lehman perform its obligations under the Loan Agreement and promptly fund Request for Disbursement #9. A copy of this letter is attached as Exhibit G. Lehman later acknowledged that the May 31, 2008 date was a scrivener's error and therefore not a basis for Lehman's failure to fund. Lehman has not, to this day, funded Request for Disbursement #9 or provided any reason for its failure to do so.

13. By notice dated, June 23, 2009, Lehman notified AP that it had elected to conduct a non-judicial foreclosure of the mortgaged property. A copy of this notice is attached as Exhibit H. The notice alleges that AP was in default under the Loan Agreement for failing to make its Debt Service payments and failing to comply with the Renovation Schedule. I understand that under Nevada law, once ninety days have elapsed since the Notice of Default was recorded and the loan has not been reinstated, Lehman may elect to conduct a trustee's sale. Therefore, absent relief from this Court, Lehman may be able to begin such trustee sale as early as October 12, 2009.

4

## Conclusion

14. Lehman's failure to fund in accordance with the Loan Agreement has shut down the Project. If Lehman were to be able to foreclose on the property without AP being able to defend itself and challenge the foreclosure process – which in light of Lehman's prior material breaches AP has strong grounds to do – AP would be irreparably harmed. AP and its investors would lose the entire value of their investment and control of a unique and valuable site in Las Vegas. Accordingly, I respectfully urge the Court to grant AP's Motion.

Executed on: August 26, 2009

_____
Kwan Young Kim