**EXHIBIT G**

◄ COX CASTLE NICHOLSON ►

Cox, Castle & Nicholson LLP
2049 Century Park East, 28th Floor
Los Angeles, California 90067-3284
P 310.277.4222   F 310.277.7889

Gregory J. Karns
310.284.2204
gkarns@coxcastle.com

November 21, 2008

File No. 54741

**VIA FEDERAL EXPRESS**

Ballard Spahr Andrews & Ingersoll, LLP
100 City Parkway, Suite 1750
Las Vegas, Nevada 89106-4614
Attention: David A. Barksdale, Esq.

Re: $66 Million Loan (the "Loan") from Lehman Brothers Holdings Inc. ("Lender") to A/P Hotel, LLC ("Borrower")

Dear Mr. Barksdale:

Thank you for your November 12 letter. I assume it must be quite difficult, even hectic, to try and keep up with the goings on surrounding your client's bankruptcy, which I think explains the allegation in your letter that Borrower has failed to cause the Substantial Completion of the Renovation Work before the Completion Date (described as May 31, 2008 in Section 1.1 of the Loan Agreement) (all initially capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Loan Agreement).

For your information, Borrower has not breached the Loan Agreement and no Event of Default has occurred. The Completion Date described in the Loan Agreement reflects a scrivener's error. The correct Completion Date is May 31, 2009. This issue was discussed on several occasions after we received the executed Loan Documents from Lender's counsel (with the slipped pages that had been agreed to telephonically during the hours preceding the Closing Date), and raised in correspondence dating back as early as February, 2008. Additionally, Schedule 4.1.45(p) attached to the Loan Agreement includes the approved Renovation Schedule, which reflects completion of the Renovation Work would not occur, at the earliest, for months after May 31, 2008. Furthermore, the amount of the Interest Reserve Fund was (in the days leading up to the Closing) calculated to cover Debt Service Payments through the actual (May 31, 2009) Completion Date. And of course, there is the fact that, for the four months following May 31, 2008 until Lender's bankruptcy filing on September 15, 2008, Lender continued to administer the Loan and fund Subsequent Advances in accordance with the Loan Agreement without once notifying Borrower that such an Event of Default had occurred. Of course, there is

Ballard Spahr Andrews & Ingersoll, LLP
November 21, 2008
Page 2

ample additional evidence and support for this in many of the drafts, correspondence and other items changing hands between and among the parties. In any event, I trust this clears up any confusion on this issue, but feel free to contact me if you would like to discuss it further.

This letter again constitutes notice that Lender has been and remains in material breach of the Loan Agreement (including Sections 2.1.1, 2.6 and 2.7(a)) by failing to fund the Subsequent Advance in the total amount of $1,321,100 requested in such Request for Disbursement #9. Borrower submitted Request for Disbursement #9 and all other documents and items required pursuant to the Advance Conditions set forth in Section 2.6 of the Loan Agreement to Lender on September 29, 2008. Lender has failed to fund the corresponding Subsequent Advance, and did not respond to Borrower until your November 12, 2008 letter, an unreasonable delay by any measure. In the meantime, Borrower repeatedly tried to contact Lender regarding this matter, sending several letters to Lender and/or Trimont Real Estate Advisors, Inc. ("Servicer") explaining the dire situation and urging Lender to perform. As a result of Lender's material breach, the Renovation Work has stopped, and in fact the Contractor and other subcontractors have now ceased all operations at and recorded liens against the Property. Borrower had previously committed its own funds in an attempt to keep the Project going, but no longer has the necessary resources to continue. Demand is therefore again made for Lender to perform its obligations under the Loan Documents and promptly fund the Subsequent Advance (in the total amount of $1,321,100) as requested in Request for Disbursement #9 and to provide written assurances that Lender will be able to fund the Loan to Completion, in accordance with the Loan Agreement.

Nothing contained in this letter, or in any discussions either before or after the date of this letter, is intended to limit or affect, nor shall it be deemed to limit or affect, any rights or remedies available to Borrower under the Loan Documents, at law, in equity or otherwise with respect to the matters described in this letter or any other past, present, or future default. In addition, nothing contained in this letter, or in any discussions either before or after the date of this letter, is intended to constitute, nor shall it be deemed to constitute, an agreement by Borrower to forbear from exercising any of its rights or remedies under the Loan Documents, at law, in equity or otherwise.

Ballard Spahr Andrews & Ingersoll, LLP
November 21, 2008
Page 3

      To this end, Borrower reserves all rights and remedies available to it under the Loan Documents or otherwise. Time is strictly of the essence of this letter and the Loan Documents. If you have any questions or would like to discuss this matter further, please feel free to contact me.

Sincerely,

Gregory J. Karns

GJK:mak
54741\1371893v1

cc w/email:    Mr. Richard Alter
                Mr. Eddy Chao
                Mr. Mitch Kang
                Kevin Kinigstein, Esq.
                Michael Pak, Esq.