Hearing Date: September 15, 2009 at 10:00 a.m.  (Prevailing Eastern Time)

Objection Deadline: September 12, 2009 at 4:00 p.m.  (Prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS, INC.,** et al.,<br><br>Debtors. | Case No. 08-13555 (JMP)<br>Chapter 11<br><br>(Jointly Administered) |

**MOTION OF THE CALIFORNIA PUBLIC EMPLOYEES'
RETIREMENT SYSTEM FOR AN ORDER PURSUANT
TO 11 U.S.C. §§ 362 AND 553 FOR RELIEF FROM
THE AUTOMATIC STAY TO EFFECT SETOFF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The California Public Employees' Retirement System ("CalPERS"), a creditor in the above-captioned case, by its undersigned counsel, Felderstein Fitzgerald Willoughby & Pascuzzi LLP, moves the Court for an order pursuant to Sections 362 and 553 of Title 11 of the United States Code (the "Bankruptcy Code") for relief from the automatic stay to effect setoff. In support of this motion (the "Motion"), CalPERS respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. As of the commencement of the above-titled jointly administered chapter 11 cases of Lehman Brothers Holdings, Inc. ("LBHI") et al., CalPERS held a pre-petition claim against LBHI in the amount of approximately $433 million based upon certain bonds issued by LBHI to CalPERS (the "CalPERS Claim").

2. As of the commencement of the Lehman Brothers Special Financing, Inc. ("LBSF") case, debtor LBSF held a pre-petition claim against CalPERS in the amount of $17,173,892.83 based upon the termination of a certain ISDA Master Agreement dated as of June 5, 2006 between CalPERS and LBSF, to which LBHI was a credit support provider and guarantor (the "CalPERS Debt").

-1-

3. To the extent that the Safe Harbor Provisions of the Bankruptcy Code[1] do not apply to the setoff requested herein, CalPERS seeks relief from stay and believes there is a sufficient basis under the ISDA Master Agreement, in the Bankruptcy Code, in equity and in Second Circuit case law to allow the setoff of the CalPERS Debt to partially satisfy its CalPERS Claim.

## JURSIDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B) & (O).

## BACKGROUND

A. <u>The LBHI, LBSF and LBI Bankruptcy Cases</u>

5. On September 15, 2008, LBHI filed for bankruptcy protection with the United States Bankruptcy Court for the Southern District of New York pursuant to Chapter 11 of Title 11 of the United States Code, Case No. 08-13555.

6. Soon thereafter, several LBHI affiliates filed for bankruptcy protection, including LBSF on October 3, 2008, Case No. 08-13888.

7. The cases of LBHI and its debtor affiliates are jointly administered for procedural purposes only under Case No. 08-13555.

B. <u>The CalPERS Claim</u>

8. Prior to the commencement of the LBHI bankruptcy case, LBHI issued to CalPERS numerous bonds, with varying interest rates and maturity dates (the "Bonds"). The total par value of the Bonds is $433,090,000. A list of CalPERS' Bond holdings with the par value of each is attached hereto as Exhibit A.

C. <u>The CalPERS Debt</u>

9. CalPERS and LBSF entered into a certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement dated as of June 5, 2006 ("Master Agreement"), as amended by the December 18, 2007 Amendment to Master Agreement, and including the Schedule to the Master Agreement, copies of which are attached hereto as Exhibit B. LBHI was the credit support provider and guarantor for LBSF under the Master Agreement.

10. On or around September 19, 2008, CalPERS sent Notices of Early Termination

---

[1] Safe Harbor Provisions including but not limited to 11 U.S.C. §§ 362(b)(17) & (27), 546(g), 560 and 561.

Dates and terminated all outstanding transactions between CalPERS and LBSF under the Master Agreement with an effective date of September 19, 2008. Copies of the termination notices are attached hereto as Exhibit C. CalPERS' terminations were based upon the filing of the above-titled bankruptcy case by LBHI and the downgrades in LBHI's credit ratings. Pursuant to the Master Agreement, the filing of a bankruptcy petition by a party or a credit support provider constituted an Event of Default giving rise to the non-defaulting party's right to terminate. See Exhibit B, pp. 6-8.

11. By a letter dated February 3, 2009, LBSF acknowledged the termination of the Master Agreement. The letter also requested that a valuation statement of amounts owed to LBSF be provided and that any amounts owed to LBSF be paid. A copy of the letter is attached hereto as Exhibit D.

12. As a result of the termination, CalPERS had calculated that it owed $17,173,892.83 to LBSF under the Master Agreement. CalPERS already had provided a copy of its calculations (the "Valuation Statement") to LBSF on December 29, 2008. A copy of the Valuation Statement is attached hereto as Exhibit E.

13. In a letter to Locke R. McMurray dated May 14, 2009, CalPERS again provided LBSF with its December 2008 Valuation Statement and informed LBSF, *inter alia*, that it believed that it had a valid right of setoff with respect to the $17.1 million owed to LBSF based upon the certain provisions in the Master Agreement, as well as provisions in the Bankruptcy Code, equitable principles and Second Circuit case law. A copy of the letter with the valuation statement is attached hereto as Exhibit F.

14. In a letter dated July 2, 2009, counsel for LBHI and LBSF denied that CalPERS held any right to setoff the $17.1 million and demanded immediate payment of that amount plus applicable interest. A copy of the letter is attached hereto as Exhibit G.

15. Interest on the $17.1 million amount also may be owing pursuant to certain provisions of the Master Agreement, although CalPERS and LBSF disagree as to the date of accrual and thus as to the amount of such interest.

D.   <u>Setoff Provisions in the Master Agreement</u>

16. Section 6(e) of the Master Agreement, regarding payments on Early Termination, provides that any amount payable under Section 6 will be subject to setoff. "Set-off" is defined in the Master Agreement as the "set-off, offset, combination of accounts, right of retention or withholding or similar right or requirement to which the payer of an amount under

Section 6 is entitled or subject (whether arising under this Agreement, another contract, applicable law or otherwise) that is exercised by, or imposed on, such payer." See Exhibit B, p.9.

17. Subclause 6(f), as set forth on page five of the Schedule to the Master Agreement (the "Schedule") also provides that any amount payable under Section 6(e) may be reduced by setoff, and that if an obligation is unascertained, the party may in good faith estimate the obligation and setoff in respect of the estimate. That subclause also provides that "This Section 6(f) shall be without prejudice and in addition to any right of set-off otherwise available to a party (whether by operation of law, contract, or otherwise)."

18. In addition to these setoff provisions in the Master Agreement and Schedule, pursuant to provision "b." on page eight of this Court's "Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts" dated December 16, 2008, "A termination agreement may resolve and fix amounts owing between the Debtors and Counterparty (including by allowing claims against the applicable Debtors), and such amounts may incorporate setoff or recoupment solely to the extent that such setoff or recoupment is legally valid." A copy of the order is attached hereto as Exhibit H.

19. CalPERS now moves the court for relief from stay to effect the setoff of the CalPERS Debt of approximately $17.1 million (plus accrued interest, if any) in partial satisfaction of the CalPERS Claim of approximately $433 million.

E.     Attorneys' Fees Provision in the Master Agreement

20. Section 11 of the Master Agreement provides: "A Defaulting Party will, on demand, indemnify and hold harmless the other party for and against all reasonable out-of-pocket expenses, including legal fees and Stamp Tax, incurred by such other party by reason of the enforcement and protection of its rights under this Agreement or any Credit Support Document to which the Defaulting Party is a party or by reason of the early termination of any Transaction, including, but not limited to, costs of collection."

**RELIEF REQUESTED**

21. By this Motion, CalPERS seeks an order:

(a) Granting relief from the automatic stay to allow CalPERS to effect setoff of the CalPERS Debt of approximately $17.1 million (plus accrued interest, if any) in partial satisfaction of the CalPERS Claim of approximately $433 million;

(b)    Awarding any attorneys' fees to which CalPERS may be entitled under the Master Agreement, according to proof; and

(c)    For such other and further relief as the Court deems just and proper.

## GROUNDS FOR RELIEF REQUESTED

A.    The Bankruptcy Code Preserves a Creditor's Right to Setoff.

22.    Section 553(a) of the Bankruptcy Code incorporates and preserves in bankruptcy law the right of setoff available at common law. Pursuant to that section, "[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." See also *Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F3d. 772, 777 (2d Cir. 1996) (Section 553(a) "preserves setoff rights that exist outside the bankruptcy context."); *In re Delta Airlines, Inc.*, 341 B.R. 439, 443-444 (Bankr. S.D.N.Y. 2006) (Section 553(a) "is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of non-bankruptcy law.").

23.    The equitable right of setoff has long been recognized in bankruptcy. *Libby v. Hopkins,* 104 U.S. 303, 308-309 (1881). Setoff allows parties that owe mutual debts to state the accounts between them, subtract one from the other and pay only the balance. The rule is grounded on the absurdity of "making A pay B when B owes A." *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528 (1913); see also *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). The right of setoff is a "common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *Aetna*, 94 F3d. at 780 (citing *Gratiot v. United States*, 40 U.S. 336, 370 (1841).

B.    Setoff of the Debts and Claims of CalPERS is Proper.

24.    Setoff of the CalPERS Debt against the CalPERS Claim is proper because such a setoff meets the requirements set forth in Section 553 of the Bankruptcy Code. In determining whether the right to setoff should be preserved in bankruptcy under § 553, the party asserting setoff must demonstrate the following: (1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual. *Westamerica Bank v. United States*, 178 B.R. 493, 495 (Bankr. N.D. Cal. 1995)(citing *Braniff Airways, Inc. v. Exxon Co., USA*, 814 F.2d 1030, 1034 (5th Cir. 1987)); 5 Collier on Bankruptcy ¶ 553.01 (15th rev. ed. 1998). The contracts and transactions which are the basis of the Debt and the Claim

were entered into pre-petition, and neither LBHI nor LBSF has disputed the validity of such Debt or Claim.

25. As to mutuality, CalPERS believes that this element is satisfied as well, because the same party (LBHI) both owed a debt to CalPERS and owned a claim against CalPERS, as discussed below.

26. "Mutuality" is not defined in the Bankruptcy Code. Nevertheless, courts have determined that mutuality requires that the claims and debts to be set off be between the same parties in the same right or capacity. *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 109 B.R. 605, 608 (Dist. Ct. S.D.N.Y. 1989).

27. The "same capacity" prong refers to the relationship of the parties to each other. As a general rule, the concept of capacity requires that parties owe the other something in his or her own name, and not as a fiduciary. 5 Collier on Bankruptcy ¶ 553.03[3][c] (15th rev. ed. 1998); see also Libby *v. Hopkins*, 104 U.S. (14 Otto) 303 (1881). The CalPERS Claim and CalPERS Debt are held in the same "capacity" because they are between parties with claims and debts in their own names, and not as fiduciaries.

28. Although courts differ in their interpretation of the "same right" requirement, and in some courts "right" in this context is used synonymously with "capacity," in general this requirement "simply enforces the rule that joint obligations are not subject to setoff against separate debts in bankruptcy." 5 Collier on Bankruptcy ¶ 553.03[3][d] (15th rev. ed. 1998). The CalPERS Claim and the CalPERS Debt are held in the same "right" because they do not involve the setting off of a joint obligation against a separate debt.

29. As to the "same parties" requirement, the CalPERS Claim is owed to CalPERS by LBHI. Although the CalPERS Debt technically is owed by CalPERS to LBSF, that debt is based upon a contract in which LBHI was the credit support provider and guarantor. Because LBHI was the guarantor, it had the right to assert any claim that LBSF held against CalPERS for amounts owed under the Master Agreement, as discussed below.

30. As the court in *Bloor v. Shapiro* explained, "A guarantor may assert the claims of the principal with the principal's consent." 32 B.R. 993, 1001 (Distr. Ct. S.D.N.Y. 1983). In addition, "Where the guarantor controls the principal, consent will be presumed." *Id*. It is CalPERS' understanding that LBSF is a wholly-owned subsidiary of LBI, which is a wholly-owned subsidiary of LBHI. Therefore, essentially LBHI controlled LBSF and it can be presumed that LBSF would consent to LBHI's assertion of LBSF's claims under the Master

-6-

Agreement.

31.     In *Shapiro*, the guarantors asserted setoff claims related to the breach of certain contracts that they had personally guaranteed. The opposing party argued that the guarantors did not have standing to assert the claims of setoff because they were not parties to the contracts, and specifically asserted that setoff could not occur because of lack of mutuality. The court, however, disagreed, holding that the guarantors could assert the setoff claims because of their status as guarantors to the contracts. 32 B.R. at 1001-1002.

32.     Thus, under the reasoning of *Shapiro*, CalPERS asserts that its Claims and Debts are mutual, because the same party (LBHI) both owed a debt to CalPERS and owned a claim against CalPERS.

33.     Nevertheless, even if the mutuality requirement is found not to be strictly satisfied under this analysis, "[F]ederal and New York State courts have held that the mutuality rule is relaxed when necessary to prevent injustice." *Modern Settings*, 109 B.R. at 607 (citing *Gray v. Rollo*, 85 U.S. (18 Wall.) 629, 633 (1873)( "a court of equity will deviate from the strict rule of mutuality, allowing a set-off [where] the justice of the particular case requires it, and . . . . injustice would result from refusing it . . . .") and *Beecher v. Vogt Manufacturing Co.*, 227 N.Y. 468, 473 (1920) (lack of mutuality may be excused to prevent injustice)); see also *In re Sherman Plastering Corp.*, 346 F.2d 492, 494 (2nd Cir. 1965)(allowing setoff despite absence of mutuality).

34.     CalPERS asserts that, if the Court is unsatisfied that the Claims and Debts are mutual under the Shapiro analysis, equity and Second Circuit case law permits the Court to relax the mutuality requirement to allow CalPERS to exercise its right to setoff.

35.     CalPERS is owed approximately $433 million by LBHI and seeks to partially satisfy this Claim by offsetting the $17.1 million (plus accrued interest, if any) that it owes to a wholly-owned subsidiary of LBHI in these jointly administered cases. Such a setoff represents only a 3.9% offset of its total claim amount. It would be unjust to require CalPERS to pay over to LBHI's wholly-owned subsidiary $17.1 million (plus interest) when it is owed more than 25 times that amount by LBHI.

36.     Wherefore, CalPERS asserts that the Court can and should relax the mutuality requirement to either (1) find that mutuality is established under the *Shapiro* analysis or (2) allow setoff in this situation to prevent injustice.

///

C.     The Court Should Grant Relief from Stay to Allow CalPERS to Exercise its Rights to Setoff.

37.     Because the automatic stay in bankruptcy applies to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor," a creditor must seek relief from the stay in order to exercise its rights to setoff. 11 U.S.C. § 362(a)(7). On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay, such as by terminating, annulling, modifying, or conditioning such stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

38.     Courts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of "cause" for relief from the automatic stay under § 362(d)(1). *U.S. v. Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008); *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Penn. 2000); *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991).

39.     In addition, pursuant to Bankruptcy Code Section 506(a), "An allowed claim of a creditor…that is subject to setoff under section 553 of this title, is a secured claim…to the extent of the amount subject to setoff…and is an unsecured claim to the extent that…the amount so subject to setoff is less than the amount of such allowed claim." 11 U.S.C. § 506(a). With respect to the secured claim of the creditor holding a right of set off, the creditor is entitled to all of the protections afforded secured creditors under the Bankruptcy Code, including adequate protection. 5 Collier on Bankruptcy ¶ 553.06[4-5] (15th rev. ed. 1998).

40.     In the absence of adequate protection, the creditor is entitled to relief from the automatic stay to exercise its set off rights. *Id*. at ¶ 553.06[5]; *In re Blanton*, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989); 11 U.S.C. § 362(d)(1). Here, CalPERS has received nothing in the way of adequate protection with respect to its set off claim, either in the form of cash payments, a replacement lien, or other "indubitable equivalent."

41.     In addition, if CalPERS were to turn over the $17.1 million owed in response to the July 2, 2009 demand letter from LBSF, it will likely lose its claim of setoff altogether under the theory of "waiver." *In re Litchfield Construction Management, Inc.*, 137 B.R. 98, 99 (Bankr. D. Conn. 1992)(bank not entitled to assert setoff six months after transferring debtor's bank balance to trustee); *In re Mauch Chunk Brewing Co.*, 131 F.2d 48, 49 (3rd Cir. 1942)(when trustee withdrew funds from account with bank's knowledge of bankruptcy filing, bank's

acquiescence was "tantamount to renunciation of its privilege of setoff.").

42. Wherefore, based upon the foregoing, CalPERS asserts that sufficient cause exists to warrant relief from stay to allow CalPERS to exercise its right of setoff, and moves the Court to grant such relief.

D.  An Award of Attorneys' Fees is Warranted and Proper

43. As discussed above, the Master Agreement provides that a non-defaulting party may recover from the defaulting party reasonable expenses, including legal fees, incurred in connection with the protection of its rights under the agreement or by reason of the early termination of any transaction. The United States Supreme Court, as well as courts in this Circuit, recognize that "Federal bankruptcy law does not disallow contract-based claims for attorney's fees based solely on the fact that the fees were incurred litigating bankruptcy law issues," and that, "A contract allocating attorney's fees that is enforceable under substantive, nonbankruptcy law is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Travelers Casualty & Surety Company of America v. Pacific Gas and Electric Company*, 549 U.S. 443, 444 (2007); *Ogle v. Fidelity & Deposit Company of Maryland*, 2009 U.S. Dist. LEXIS 1595 at *7 (U.S. Dist. N.D.N.Y.). Here, due to the default of LBSF and LBHI and the resulting early termination of the Master Agreement, CalPERS has incurred legal fees connected with the protection of its rights under the Master Agreement and the filing of this Motion for relief from stay to effect set off. These fees should be reimbursed to CalPERS.

## CONCLUSION

WHEREFORE, based upon all of the foregoing, CalPERS moves the Court for an order:

(1) Granting relief from the automatic stay to allow CalPERS to effect setoff of the CalPERS Debt of approximately $17.1 million (plus accrued interest, if any) in partial satisfaction of the CalPERS Claim of approximately $433 million;

(2) Awarding any attorneys' fees to which CalPERS may be entitled under the

///
///
///
///
///
///

Master Agreement, according to proof; and

       (3)    For such other and further relief as the Court deems just and proper.

Dated:  August 26, 2009

         */s/ Steven H. Felderstein*
Steven H. Felderstein
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814-4434
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
E-mail: sfelderstein@ffwplaw.com
Attorneys for Creditor California Public
Employees' Retirement System