# EXHIBIT G

# WEIL, GOTSHAL & MANGES LLP

700 LOUISIANA #1600 • HOUSTON, TEXAS 77002

(713) 546-5000

FAX: (713) 224-9511

BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

Eleanor Gilbane
(713) 546-5047
eleanor.gilbane@weil.com

July 2, 2009

**VIA E-MAIL AND U.S.MAIL**

California Public Employees' Retirement System
CalPERS – Investment Office
Lincoln Plaza East
400 Q Street, Suite E4800
Sacramento, CA 95814
Attention: Lillian Winrow and Lee Ann Nation

Felderstein Fitzgerald Willoughby & Pascuzzi LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814-4434
Attention: Holly A. Estioko
Email: hestioko@ffwplaw.com

Ladies and Gentlemen:

We represent Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF") and their affiliates in connection with their chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of New York.

Reference is made to: (i) the ISDA Master Agreement dated as of June 5, 2006 (as amended, supplemented or modified, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to Transactions entered into in connection therewith, the "Master Agreement") between LBSF and California Public Employees' Retirement System ("CalPERS"), (ii) the Notice of Event of Default; Designation of Early Termination Date, dated September 19, 2008, from CalPERS to LBSF (the "LBSF Early Termination Notice"), (iii) the calculation statement, dated December 29, 2008, from CalPERS to LBSF, for payment on early termination of the Master Agreement (the "Calculation Statement"), and (iv) the letter dated May 14, 2009, from CalPERS's counsel, Felderstein Fitzgerald Willoughby & Pascuzzi LLP, to LBSF (the "Set-off Letter"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Master Agreement.

WEIL, GOTSHAL & MANGES LLP

July 2, 2009
Page 2

Pursuant to the Calculation Statement, CalPERS has determined that it owes LBSF the amount of $17,173,892.83 (the "LBSF Receivables") under the Master Agreement. CalPERS has alleged a right to set off the LBSF Receivables against certain amounts allegedly owed to CalPERS by affiliates of LBSF in relation to (i) approximately $450,000,000 par amount of bonds issued by LBHI and (ii) approximately $2,500,000 of failed international equity trades between Lehman Brothers Inc. ("LBI") and CalPERS (collectively, the "Alleged Affiliate Payables"). As described in more detail below, this purported setoff is impermissible and in violation of both the Bankruptcy Code and the terms of the Master Agreement.

First, there is no basis, contractual or otherwise, for the alleged right of setoff. The Master Agreement does not permit the setoff of obligations allegedly owed to a Non-defaulting Party by a Defaulting Party against obligations allegedly owed to *an affiliate of* such Defaulting Party.

Second, even were such a right provided for by an applicable contract, the setoff of the LBSF Receivables against the Alleged Affiliate Payables would be impermissible under section 553(a) of the Bankruptcy Code because of a lack of mutuality between the claims. Section 553(a) of the Bankruptcy Code preserves a creditor's right of setoff against a debtor with respect to only mutual and prepetition debts and claims. 11 U.S.C. § 553(a); *see, e.g., Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995). "Mutuality" requires that the debts and credits be held in the same right, between the same parties, standing in the same capacity. *See, e.g., Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002). As such, triangular setoffs, or setoffs between and among affiliates and/or subsidiaries, are impermissible. *See, e.g., In re Semcrude, L.P.*, 399 B.R. 388, 396-97 (Bankr. D. Del. 2009). Mutuality does not exist here because CalPERS' alleged claim with respect to Alleged Affiliate Payables is against LBHI or LBI, as applicable, but neither LBI nor LBHI owns the right to collect the LBSF Receivables against CalPERS. *Id.* at 398-99.

Third, the LBSF Receivable is not imputed to LBHI, as guarantor to LBSF, as a means to reduce LBHI's debt. At most, a guarantor may *elect* to assert the claims of its principal against a counterparty when, among other things, the guarantee has been triggered on account of the default of the principal's underlying contract. *Bloor v. Shapiro*, 32 B.R. 993, 1001 (S.D.N.Y. 1983); *Continental Group, Inc. v. Justice*, 536 F. Supp. 658, 661 (D. Del. 1982). In such case, if certain other prerequisites are met, equity may permit the guarantor, by virtue of subrogation, to assert the claims of its principal. *Continental Group, Inc.* 536 F. Supp. at 661. Here, by CalPERS' own calculations, its owes LBSF more than $17 million under the Master Agreement. Thus, LBHI's obligations as guarantor are irrelevant because there is no LBSF liability under the Master Agreement. Accordingly, there is no basis for CalPERS to cancel its obligation to LBSF by virtue of bond debt held with LBHI.

Where a creditor does not have a valid existing setoff right, any withholding of funds, even a temporary freeze, is impermissible and in violation of section 362(a)(6) of the Bankruptcy Code. *See, e.g., In re Radcliffe*, 372 B.R. 401, 417-18 (Bankr. N.D. Ind. 2007). Indeed, even to the extent that a mutual setoff right *might* exist by virtue of the Alleged Affiliate Payables, CalPERS may not withhold funds from LBSF unless it promptly moves for relief from

**WEIL, GOTSHAL & MANGES LLP**

July 2, 2009
Page 3

the stay. *Citizens Bank v. Strumpf*, 516 U.S. 16, 19 (1995); *LCN Invs. v. First Fid. Bank, N.A.*, No. 92-civ-7584, 2000 WL 1072460, at *6 (S.D.N.Y. Aug. 3, 2000). CalPERS may not unilaterally determine it has a right to setoff against any funds owed to LBSF. *See, e.g., Eastern Airlines, Inc. v. Chem. Bank, Inc. (In re Ionosphere Clubs, Inc.)*, 177 B.R. 198, 205, 208-09 (Bankr. S.D.N.Y. 1995). Further, pursuant to established case law, CalPERS may be held in contempt of court for violating the automatic stay. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976); *Colon v. Hart (In re Colon)*, 114 B.R. 890, 896 (Bankr. E.D. Pa. 1990) ("Many courts have held . . . that a willful violation of the statutory stay provision constitutes civil contempt and may be addressed as such.").

**In view of the foregoing controlling authority, LBSF demands immediate turnover of the payment of the LBSF Receivables** (plus applicable interest as determined in accordance with the documentation supporting the Transactions) as it is property of the LBSF estate under section 541 of the Bankruptcy Code. 11 U.S.C. §§ 541, 542. Please see <u>Annex A</u> hereto for account information and wiring instructions. Any such payment shall moreover be without prejudice to LBSF's right to verify or dispute the accuracy of the LBSF Receivables and related interest.

Furthermore, the CalPERS's assertion that "no interest can be accruing at this point" on the LBSF Receivables is unfounded. CalPERS's obligation under Section 6(d)(ii) is not contingent upon LBSF's delivery of its own calculation statement nor LBSF's confirmation that it agrees with the calculations provided by CalPERS. In fact, LBSF has no obligation to take either of these actions. Section 6(d)(i) of the Master Agreement provides that "On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculations on its part, *if any*, contemplated by Section 6(e) and will provide to the other party a statement (1) showing, in reasonable detail, such calculations..." (italics added). The relevant provisions of Section 6(e) state that "If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount (*determined by the Non-defaulting Party*) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party..." (emphasis added). Section 6(e) does not contemplate any obligation of the Defaulting Party to provide its own calculations or to verify those of the Non-defaulting Party. Any contention to the contrary contradicts the express provisions of the Master Agreement.

If CalPERS does not immediately make payment of all amounts due, LBSF reserves the right to take any appropriate legal action it chooses. In accordance with the documentation supporting the Transactions, interest will continue to accrue on the amount due and owing to LBSF at the rate determined by the contract until the LBSF Receivables and all applicable interest thereon have been paid.

This letter is without prejudice or waiver of any rights, claims and remedies of LBSF or its affiliates, all of which are expressly reserved. Nothing herein shall be construed as an admission of any fact or the establishment of any position by or on behalf of LBSF or its affiliates.

WEIL, GOTSHAL & MANGES LLP

July 2, 2009
Page 4

Sincerely,

*Eleanor Gilbane*

Eleanor Gilbane

cc:   Locke R. McMurray
      Lawrence S. Brandman