**Hearing Date and Time: September 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: September 10, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                    Debtors.              :    (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE**
**9019 FOR AUTHORIZATION AND APPROVAL OF SETTLEMENT WITH VCC**

          PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI" and, together with its affiliated debtors in the above-

referenced chapter 11 cases, the "Debtors"), pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure for approval of a settlement with Robert J. Eves and entities owned or

controlled, directly or indirectly, by Robert J. Eves (collectively, "VCC"), among other parties,

as more fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **September 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Shai Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st

Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq.,

Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; (v) Berliner Cohen, 10 Almaden

Boulevard, 11th Floor, San Jose, California 95113, Attn:  Samuel L. Farb, attorneys for VCC and

(vi), Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York

10281, Attn:  Ingrid Bagby, attorneys for Lehman Re Ltd., so as to be so filed and received by no

later than **September 10, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection

Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 26, 2009
     New York, New York

               /s/ Jacqueline Marcus
               Shai Y. Waisman
               Jacqueline Marcus

               WEIL, GOTSHAL & MANGES LLP
               767 Fifth Avenue
               New York, New York 10153
               Telephone: (212) 310-8000
               Facsimile: (212) 310-8007

               Attorneys for Debtors
               and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                         :
In re                                                    :          Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :          08-13555 (JMP)
                                                         :
                                Debtors.                 :          (Jointly Administered)
                                                         :
-----------------------------------------------------------------x

### MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL OF SETTLEMENT WITH VCC

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession, the "Debtors" and collectively with their non-debtor affiliates, "Lehman"), files this Motion and respectfully represents:

### Preliminary Statement

1.     Beginning in 2005, certain non-debtor affiliates of LBHI (the "Lehman SPEs") formed twenty-one joint venture companies (the "Joint Ventures") with various entities (the "VCC Affiliates") owned or controlled, directly or indirectly, by Robert J. Eves ("Eves"),

founder and president of Venture Corporation, a California-based real estate development corporation. Each Lehman SPE holds approximately 85% to 90% of the equity interests in a Joint Venture, and a VCC Affiliate holds the remaining equity in the Joint Venture. Notwithstanding the split of the equity interests, the Lehman SPEs and VCC Affiliates have equal voting rights with respect to certain key decisions for the management, operation and business of the Joint Ventures.

2.      Both LBHI and Lehman ALI Inc. ("<u>LALI</u>"), a non-debtor subsidiary of LBHI, made senior secured loans to each of the Joint Ventures. As part of a restructuring of the Joint Ventures and the loans made by LBHI and LALI thereto, the Joint Ventures, LBHI and LALI determined to enter into a global settlement (the "<u>Settlement</u>"), the material terms of which are set forth in the term sheet attached hereto as <u>Exhibit A</u> (the "<u>Term Sheet</u>").[1]

3.      As described below, most of the terms of the Settlement apply to non-debtors and, as a result, do not require the Court's approval. However, in connection with the Settlement, LBHI (as well as LALI) will be required to provide a covenant not to sue Eves and other entities owned or controlled, directly or indirectly, by Eves with respect to guaranties executed in connection with the loans to the Joint Ventures, but only with respect to events occurring from and after the closing of the transactions contemplated by the Settlement. Accordingly, LBHI requests authorization pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") to enter into the Settlement.

## **Background**

4.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and the other Debtors commenced with this

---

[1] Upon Court approval of the Settlement, the parties intend to enter into a settlement agreement substantially consistent with the Term Sheet.

Court voluntary cases under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

6.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

7.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("<u>SIPA</u>") with respect to Lehman Brothers Inc. ("<u>LBI</u>"). A trustee appointed under SIPA is administering LBI's estate.

8.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "<u>Examiner</u>") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

<u>**Jurisdiction**</u>

9.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

<u>**Lehman's Business**</u>

10.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

11.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## The Joint Ventures and the Loans

12.     The twenty-one Joint Ventures were formed prior to the Commencement Date to develop a variety of real estate projects located throughout the United States.  As described above, a Lehman SPE holds approximately 85% to 90% of the equity in each of the Joint Ventures, and a VCC Affiliate holds the remaining equity interests.  Nonetheless, a Lehman SPE and VCC Affiliate share equal voting rights with respect to certain key decisions for the management, operation and business of each Joint Venture, and, historically, the VCC Affiliates exercised control over the management of the Joint Ventures and day-to-day operations and construction of their real estate projects.

13.     LBHI has provided senior secured financing (the "LBHI Loans") to five of the Joint Ventures (collectively, the "LBHI Borrowers").  The names of the LBHI Borrowers and the principal amount outstanding on each LBHI Loan is set forth on Exhibit B annexed hereto. LALI provided senior secured financing (the "LALI Loans" and together with the LBHI Loans, the "Loans") to eleven other Joint Ventures (the "LALI Borrowers").  The names of the LALI Borrowers and the principal amount outstanding on each LBHI Loan is set forth on Exhibit C annexed hereto.  Neither LBHI nor LALI hold an ownership interest in the loans made to two of

4

the Joint Ventures (the "Third Party Borrowers") because such loans were sold to Lehman Re

Ltd ("Lehman Re").[2]  Three of the Joint Ventures (the "Unencumbered Joint Ventures") have

completely paid off their loans.  The names of the Third Party Borrowers and the Unencumbered

Joint Ventures are set forth on Exhibit D annexed hereto.

14.    Each of the Loans is secured by, among other things, a first lien mortgage

interest in the property held by the applicable LBHI Borrower or LALI Borrower (the

"Property").  Three of the LBHI Loans are secured by Property consisting of condominium

projects with condominium units for sale.  Each of the remaining two LBHI Loans is secured by

Property consisting of vacant land.

15.    In connection with each of the Loans, Eves and other entities owned or

controlled, directly or indirectly, by him (the "VCC Guarantors") executed certain completion

guaranties, payment guaranties, carveout payment guaranties and environmental indemnity

agreements (the "Guaranties").

16.     Finally, LALI provided a senior secured personal loan to Eves (the "Eves

Loan").  The Eves Loan has an outstanding principal amount of $1,363,649.

17.    Beginning in or around 2008, the LBHI Borrowers and LALI Borrowers

failed to make interest payments when due under each of the Loans and/or failed to make

payments due upon the maturity of each of the Loans.  Such failures constitute events of default

---

[2] As further described in the Motion of LBHI and Lehman Commercial Paper Inc. ("LCPI") Pursuant to Section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 For Authorization and Approval of Settlement with Lehman Re Ltd. [Docket No. 4716] (the "Lehman Re Settlement Motion"), LBHI and LALI sold certain residential and commercial mortgage and mezzanine loans to LCPI and/or Lehman Brothers Inc. ("LBI") pursuant to a repurchase transaction.  LCPI and/or LBI subsequently committed to sell to Lehman Re Ltd., a wholly-owned, indirect subsidiary of LBHI currently in a Bermudan insolvency proceedings ("Lehman Re"), these and other residential and commercial mortgage and mezzanine loans (the "Mortgage Loans"), including the loans made by LBHI and [LALI] to the Third Party Borrowers.  On September 17, 2009 Lehman Re became the owner of the Mortgage Loans.  LBHI, LCPI, LALI and Lehman Re are currently involved in certain disputes regarding which parties are liable for the funding obligations under the Mortgage Loans.  In the Lehman Re Settlement Motion, which is currently pending, LBHI and LCPI seek approval to enter into a settlement agreement with Lehman Re and LALI to settle certain of such disputes.

under the relevant Loan documents.  The LBHI Borrowers and LALI Borrowers lack liquidity and are unable to repay the Loans.  Commencing sixteen foreclosure proceedings in various jurisdictions to foreclose on each of the Properties would entail significant cost and delay, and, if successful, foreclosure proceedings would result in the destruction of the value of the Lehman SPEs, which are assets of LBHI's estate.  As noted above, LBHI and LALI believe their ability to collect payment on account of the Guaranties from the VCC Guarantors is uncertain, and attempts at collection would also be difficult, time-consuming, and costly.

### The Settlement

18.    In light of the foregoing, LBHI and LALI commenced negotiations regarding potential consensual resolutions of the terms of the Loans and ownership of the Joint Ventures that would maximize recoveries to LBHI's estate and LALI.  As a result of these negotiations, LBHI, LALI, the Lehman SPEs, the Joint Ventures, the VCC Affiliates and the VCC Guarantors have agreed to the terms of the Settlement.  The salient terms of the Settlement are as follows:[3]

- Five VCC Affiliates will assign their interests in the LBHI Borrowers to LBHI or one of its respective designees.

- Eleven VCC Affiliates will assign their interests in the LALI Borrowers to LALI or one of its respective designees.

- Three VCC Affiliates will assign their interests in the Unencumbered Joint Ventures to a Lehman SPE, or one of its designees.  One Unencumbered Joint Venture, LBB/VCC Dublin LLC, shall convey title to one condominium unit owned by such entity to a designee of the VCC Affiliates.

- The Lehman SPEs will assign their interests in the two Third Party Borrowers to designees of the VCC Affiliates.

---

[3] This summary of the Settlement (this "Summary") is qualified in its entirety by the terms set forth in the Term Sheet.  This Summary is intended to be used for information purposes only and shall not, in any way, affect the meaning or interpretation of the Term Sheet.

- LBHI and LALI will provide a covenant not to sue the VCC Guarantors with respect to their obligations under the Guaranties, but only with respect to events occurring from and after the closing of the transactions contemplated by the Settlement, and further subject to the VCC Guarantors' satisfaction of certain conditions subsequent.

- LALI will provide a covenant not to sue Eves with respect to the documents executed in connection with the Eves Loan, subject to Eves's satisfaction of certain conditions subsequent.

- The VCC Affiliates will release LBHI, LALI, the Lehman SPEs and their affiliates from any claims related to the Joint Ventures, the Loans or the Properties.

- The LBHI Borrowers, the LALI Borrowers and the Unencumbered Joint Ventures will enter into a management agreement (the "Management Agreement") with an entity controlled by Eves (the "Manager"), pursuant to which the Manager will manage the Properties owned by the LBHI Borrowers, the LALI Borrowers and the Unencumbered Joint Ventures. The Management Agreement has a four-month term and will be terminable by each of the LBHI Borrowers, the LALI Borrowers and the Unencumbered Joint Ventures, as applicable, (i) for cause upon 10 days' notice, or (ii) without cause upon 30 days' notice; however in the latter case the Manager is still entitled to any unpaid monthly management fees, as set forth above, for the remainder of the four-month term of the Management Agreement.

### Relief Requested

19.     By this Motion, LBHI seeks authorization to enter into and consummate the Settlement. Specifically, in connection with its entry into the Settlement, LBHI requests authorization pursuant to Bankruptcy Rule 9019 to execute a covenant not to sue the VCC Guarantors with respect to their obligations under the Guaranties, but only with respect to events occurring from and after the closing of the transactions contemplated by the Settlement. Court approval is not required for LBHI's non-debtor affiliates to enter into and consummate the Settlement.

### The Settlement Meets the Legal Standard
### Established Under Rule 9019 and is in the Bests Interests of LBHI's Estate

20.     The Settlement, including the proposed covenant not to sue the VCC Guarantors with respect to the Guaranties is in the Debtors' best interests and should be

approved under Bankruptcy Rule 9019.  Bankruptcy Rule 9019(a) provides that, "[o]n motion by
the [debtor in possession] and after notice and a hearing, the court may approve a compromise or
settlement."  FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court
must find that the proposed settlement is fair and equitable and is in the best interests of the
estate.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390
U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620
(S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17
F.3d 600 (2d Cir. 1994).

21.    The decision to approve a particular settlement lies within the sound
discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is
the responsibility of a court to examine a settlement and determine whether it "falls below the
lowest point in the range of reasonableness."  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d
599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).
Additionally, a court may exercise its discretion "in light of the general public policy favoring
settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

22.    While a court must "evaluate … all … factors relevant to a fair and full
assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court
need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699
F.2d at 608, or conduct a full independent investigation.  *In re Drexel Burnham Lambert Group,
Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).  "[T]he bankruptcy judge does not have to
decide the numerous questions of law and fact….  The court need only canvass the settlement to
determine whether it is within the accepted range of reasonableness."  *Nellis*, 165 B.R. at 123
(internal citations omitted).

23.    The Court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

24.    LBHI has concluded that the Settlement, including the covenant not to sue the VCC Guarantors with respect to the Guaranties, provides the best framework to obtain a recovery from the LBHI Loans.  In exchange for LBHI's execution of the covenant not to sue the VCC Guarantors with respect to the Guaranties, the VCC Affiliates will transfer all of their voting and equity interests in the LBHI Borrowers to LBHI or its designee.  The Lehman SPEs will maintain their voting and equity interests in the LBHI Borrowers.  Thus, the Settlement will allow LBHI to obtain full, albeit indirect, control over each of the LBHI Borrowers and each of the Properties securing the LBHI Loans, without the time, expense and uncertainty of multiple foreclosure proceedings.

25.    LBHI believes full control of the LBHI Borrowers can increase the likelihood of recovery with respect to the LBHI Loans.  The VCC Affiliates currently have the right to participate in the management of the LBHI Borrowers, as well as authority over the day-to-day operations at each Property.  With the VCC Affiliates no longer having the right to make key decisions regarding the management of the LBHI Borrowers, LBHI will have unfettered ability to direct the operation of the LBHI Borrowers.  Moreover, under the Settlement, LBHI retains all of its rights as lender to foreclose on the Properties.

26.    The so-called "cost" of the covenant not to sue the VCC Guarantors, from which the prospect of recovery is uncertain, is outweighed by the benefits of obtaining, on a consensual basis, control over the LBHI Borrowers, and by extension, the Properties.  As a result, the Settlement benefits LBHI, its estate, and its creditors.

27.    Additionally, under the Management Agreement each of the LBHI Borrowers, the LALI Borrowers and the Unencumbered Joint Ventures will delegate the day-to-day operation of its Property and sales of its condominium units to the Manager, which is in the best position to manage the Properties.  The four-month term of the Management Agreement provides a transition period during which the Lehman SPEs, which ultimately are under the direction of LBHI, may find an alternative property manager or determine to take other action with respect to the Properties.

28.    The obligations of LBHI's non-debtor affiliates under the Settlement are also outweighed by the benefits such entities will obtain as a result thereof.  LBHI and LALI have no ownership interest in the loans made to the Third Party Borrowers.  The Third Party Borrowers, LB/VPC NEV-Centennial Hills, LLC and LB/VCC Otay Mesa, LLC, owe Lehman Re approximately $32 million and $16.5 million, respectively, in outstanding principal under their loans.  LBHI and LALI estimate that there is, therefore, little to no value in the equity interests in the Third Party Borrowers held by the Lehman SPEs.  Additionally, while LALI will be required to release Eves from his obligations under the Eves Loan, such a concession is outweighed by the transfer to LBHI, LALI or their respective designees of the VCC Affiliates' interests in the three Unencumbered Joint Ventures, which hold unencumbered title to Properties.

**Notice**

29.    No trustee has been appointed in these chapter 11 cases.  LBHI has served

notice of this Motion in accordance with the procedures set forth in the amended order entered

on February 13, 2009 governing case management and administrative procedures for these cases

[Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) counsel to the VCC Affiliates; (vii)

counsel to the VCC guarantors; (viii) counsel to the Lehman SPEs; (ix) counsel to Lehman Re;

and (x) all parties who have requested notice in these chapter 11 cases.  LBHI submits that no

other or further notice need be provided.

30.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE LBHI respectfully requests that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: August 26, 2009
       New York, New York

/s/Jacqueline Marcus
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

11

## **Exhibit A**

See Attached Term Sheet

**DRAFT 08/26/09**

# LEHMAN BROTHERS

## TERM SHEET

This Term Sheet ("**Term Sheet**") is for discussion purposes only and is not intended to be an offer, commitment or agreement of any kind on the part of Lehman and should not be relied upon as such. Any offer, commitment, obligation or agreement of Lehman (if any) will only arise upon the signing of formal facility documents signed by an authorized signatory of Lehman. The information contained herein is strictly confidential and is intended for review by the parties, their advisors and legal counsel only and may not be disclosed to any other person or entity, except as required by law or otherwise consented to by Lehman.

### Restructuring of VCC Loans and Lehman/VCC Joint Ventures
### August 26, 2009

The following terms shall have the meanings ascribed below. Initially capitalized terms used by not otherwise defined herein shall have the meanings ascribed such terms in the Loan Documents (as defined below) and/or the LLC Agreements (as defined below), as the context may require:

| | |
|---|---|
| **Borrowers:** | All of the entities listed on Schedule I attached hereto. |
| **Encumbered Properties:** | The Properties with respect to which a Loan is outstanding and which are currently encumbered by the Loan Documents, which Properties are respectively owned by one of the Borrowers. |
| **Eves:** | Robert Eves, a natural person, a direct owner in VCC and an indirect owner of a portion of the interests in the Properties. |
| **Eves Loan:** | The loan listed on Schedule IV.A attached hereto. |
| **Guarantor:** | Guarantor under the Loan Documents. |
| **Lehman:** | Lehman Lender and/or Lehman Equity, individually or collectively, as the context may require |
| **Lehman Equity:** | Lehman Equity Transferees and Lehman Equity Transferors, collectively. |
| **Lehman Equity Transferees:** | All of the entities listed on Schedule II.A attached hereto |
| **Lehman Equity Transferors:** | All of the entities listed on Schedule II.B attached hereto |
| **Lehman Equity Transferred Interests:** | One hundred percent (100%) of the limited liability company interests owned by the Lehman Equity Transferors in the Lehman Transferred Property Owners. |
| **Lehman Lender:** | Lehman Brothers Holdings Inc. and/or Lehman ALI Inc., as |

|  | applicable, and/or their designees, as the context may require |
|---|---|
| **Lehman Transferred Property Owners:** | All of the entities listed on Schedule III attached hereto. |
| **Loan Documents:** | The documents evidencing, guaranteeing and/or securing the Loans, or applicable portion thereto |
| **Loans:** | The Loans listed on Schedule IV.B attached hereto. |
| **LLC Agreements:** | The limited liability company agreements listed on Schedule V attached hereto |
| **Properties:** | Collectively, each "Property" as defined in the LLC Agreements |
| **Unencumbered Properties:** | The Properties with respect to which a Loan is <u>not</u> outstanding. |
| **VCC:** | All of the entities listed on Schedule VI.A attached hereto |
| **VCC Designee:** | A newly formed entity to be directly owned by the VCC Transferors. |
| **VCC Entity:** | A newly formed entity to be directly or indirectly 100% owned and controlled by Eves. |
| **VCC Parties:** | VCC, VCC Designee, VCC Entity, Guarantor, Eves and their affiliates, collectively. |
| **VCC Transferred Property Owners:** | All of the entities listed on Schedule VII attached hereto. |
| **VCC Transferors:** | All of the entities listed on Schedule VI.B attached hereto. |
| **VCC Transferred Interests:** | One hundred percent (100%) of the limited liability company interests owned by the VCC Transferors in the VCC Transferred Property Owners. |

Lehman Lender previously extended the Loans to Borrower.  Furthermore, Lehman Equity and VCC entered into the LLC Agreements pursuant to which Lehman Equity invested certain amounts in Borrower.  In connection with one or more Events of Default and/or anticipated Events of Default (as defined in the Loan Documents and/or the LLC Agreements, as applicable) under the Loans and/or the LLC Agreements, VCC requests that (i) Lehman Lender (or its designee) take assignment of the VCC Transferred Interests from VCC Transferors, and (ii) Lehman Equity Transferors assign the Lehman Equity Transferred Interests to VCC Designee, and (iii) Lehman Lender and Lehman Equity Transferees, on the one hand, and VCC Entity, on the other, enter into a going-forward management agreement for the Properties, subject to agreement on documentation of such management arrangement on the principal terms set forth on Schedule VIII attached hereto, all as more particularly described below ((i) – (iii) together, the "**Transaction**"):

| **Terms of Transaction:** | (1) (i) Lehman Lender's designee and each VCC Transferor owing limited liability company interests in any Borrower shall enter into an assignment and assumption agreement whereby each |
|---|---|

such VCC Transferor will assign one hundred percent (100%) of its limited liability company interests in such Borrower to Lehman Lender (or its designee), and Lehman Lender (or its designee) will take such assignment from each VCC Transferor, (the "**Encumbered Properties Assignment**"), which Encumbered Properties Assignment documents shall contain representations and warranties, covenants and indemnities from the VCC Transferor and Guarantor satisfactory to Lehman Lender; and

(ii) Lehman Equity Transferees (or their designees) and each VCC Transferor owning limited liability company interests in any VCC Transferred Property Owner which is <u>not</u> a Borrower shall enter into an assignment and assumption agreement whereby each such VCC Transferor will assign one hundred percent (100%) of its limited liability company interests in such VCC Transferred Property Owner to Lehman Equity Transferees (or their designees), and Lehman Equity Transferees (or their designees) will take such assignment from each such VCC Transferor (the "**Unencumbered Property Assignment**"), which Unencumbered Property Assignment documents shall contain representations and warranties, covenants and indemnities from the VCC Transferor and Guarantor satisfactory to Lehman Equity Transferees;  and

(iii) Lehman Equity Transferors and VCC Designee shall enter into an assignment and assumption agreement whereby the Lehman Equity Transferors will assign the Lehman Equity Transferred Interests to VCC Designee, and VCC Designee will take such assignment from each Lehman Equity Transferors.

(2) Simultaneously with the closing of the Transaction,

(i) Lehman Lender shall covenant and agree not to exercise any remedies available to Lehman Lender against Guarantor under (A) the Completion Guaranties and the Payment Guaranties executed in connection with the Loans, and (B) the Carveout Payment Guaranties and the Environmental Indemnity Agreements  executed in connection with the Loans but only to the extent that any such remedy is triggered by any act, omission, event or occurrence first arising from and after the closing of the Transaction; and

(ii) Lehman ALI, Inc. shall covenant and agree not to exercise any remedies available to it against Eves under the Documents executed in connection with the Eves Loan, subject in each case to the satisfaction of certain conditions subsequent; and

(iii) LB/VCC Dublin, LLC shall convey title to one (1)

condominium unit (to be selected by VCC Designee and reasonably approved by LB/VCC Dublin, LLC) to VCC Designee.

(iv) VCC Parties shall execute and deliver a release to and for the benefit of Lehman and its affiliates with respect to any and all claims, present, past or future, whether known or unknown arising from or under and/or related to the Loan Documents, the LLC Agreements, the Properties and/or the ownership, use and operation thereof.

(3) Lehman Lender and Lehman Equity Transferees, on the one hand, and VCC Entity, VCC and Eves, on the other will work in good faith to negotiate a management agreement (the "**Management Agreement**") for the Properties to be entered into by the VCC Entity, on the one hand and Borrower and VCC Transferred Property Owners (who are not Borrowers) as the property owners, on the other hand, in connection with the day-to-day management and sale of Properties owned by such entities or portions thereof, based on the principal terms and fees set forth on Schedule VIII hereto. Such Management Agreement shall provide, among other things, that VCC Entity's default of its obligations with respect to any Property shall be a default with respect to all of the Properties.

**Conditions Precedent to Closing:**   (1) Closing of the Transaction is subject to the satisfaction of the following conditions precedent for the benefit of Lehman:

(a) VCC obtaining written consents to the Transaction as required by any existing agreement or document, and/or an assignment of rights thereunder.

(b) VCC, on behalf of itself, the VCC Transferors, Borrowers and the affiliates of any of them (other than Lehman), providing timely and proper notice of the Transactions to all parties requiring such notice, if any.

(2) Closing of all or any part of the Transaction is subject to the condition that Eves, Guarantors, VCC and Borrowers (other than Lehman Equity) shall not have taken any action at any time prior to the closing which would reasonably be expected to have an adverse effect on the value of the Properties or the Borrower's interests therein.

(3) Lehman shall obtain any and all required approval of the Transactions from the Bankruptcy Court that is responsible for Lehman's Chapter 11 proceeding, which approval shall be in writing.

**Closing Costs:**    In connection with the closing of the Transaction, Lehman shall pay all closing costs, including, without limitation, any and all escrow fees, documentary transfer taxes, conveyance fees, title insurance premiums and recording charges.  Each party shall pay its own attorneys' fees in connection with the preparation and negotiation of the Transaction documents (and, for the avoidance of doubt, fees for attorneys separately engaged by Lehman Equity on behalf of Borrower, if any, shall be borne solely by Lehman Equity, and, in the event the parties are unable to reach definitive agreement on the Transaction documents to consummate the Transaction, any and all costs not related to this Term Sheet or the negotiation of the Pre-Negotiation Agreement executed by Lehman, Borrower, Eves and Guarantor or the Negotiations and Communications (as defined in such Pre-Negotiation Agreement) shall be the responsibilities of the parties as defined in the Loan Documents.

**Opinion Letter:**    On or before the closing of the Transaction, Borrower's and Guarantor's counsel shall provide to Lehman one or more opinion letters acceptable to Lehman covering the following:  (i) due execution and proper authority to enter into the Transaction, (ii) no violation of agreements and except as noted therein, no unobtained consents with respect to the Transaction, (iii) enforceability of the Transaction documents, including, without limitation, an opinion with respect to the adequacy of the consideration supporting the Transaction, and no fraudulent transfer, and (iv) such other matters as Lehman shall reasonably request.

**Confidentiality:**    This Term Sheet is being furnished to Eves, VCC and Borrower with the understanding that any negotiations and discussions with respect to the subject matter hereof may not be disclosed to third parties other than their attorneys, investors, accountants and other consultants and advisors without Lehman's prior written consent

**Governing Law:**    This Term Sheet and any Transaction documents shall be governed by the laws of the State of New York.

**No Commitment:**    This Term Sheet does not constitute a contract or a commitment or agreement by Lehman to enter into the Transaction.  Further, this Term Sheet is not intended to describe all of the terms and conditions of the proposed transaction described herein.  It is intended only to be indicative of certain terms and conditions around which the Transaction documents will be structured, and not to preclude negotiations within the general scope of these terms and conditions.

By execution of this letter in the space provided below, each of Borrower, Guarantor, VCC and Eves hereby agrees to the foregoing terms of this letter.

This Term Sheet is a letter of interest only and shall be nonbinding on Lehman, and nothing in this Term Sheet should be construed as a binding offer or other obligation on Lehman's part or create any

rights in favor of Borrower, Guarantor, VCC, VCC Transferors, VCC Designee, VCC Entity, Eves or any third party.  Except as set forth under the "**Confidentiality**" heading hereinabove, this Term Sheet shall not be binding on Borrower, Guarantor, VCC, VCC Transferors, VCC Designee, VCC Entity, or Eves. Unless and until modified or affected by the Transaction documents, each of the parties hereto hereby reserves any and all of its rights under (i) the Loan Documents and LLC Agreements, as applicable, and (ii) any other documents, agreements or instruments with respect to the Properties to which it is a party (together the "**Other Transaction Documents**"), including, without limitation, Lehman Lender's right to exercise any remedies under any of the Loan Documents or Lehman Equity's rights to exercise any remedies under the LLC Agreements or any related documents.  Nothing contained in this letter shall be deemed to be a waiver of any of Lehman's rights under the Loan Documents, the LLC Agreements or the Other Transaction Documents.  In addition, each of Borrower, Guarantor, VCC, VCC Transferors, VCC Designee, VCC Entity, and Eves acknowledges that Lehman has filed a petition under Chapter 11 of the US Bankruptcy Code.

The provisions of the immediately foregoing paragraph shall survive the termination of this Term Sheet for any reason.

[REMAINDER OF THE PAGE INTENTIONALLY BLANK]

**LEHMAN BROTHERS HOLDINGS INC.,**
**a Delaware corporation**


By:  _____
Name:
Title:   Authorized Signatory

**LEHMAN ALI INC., a Delaware corporation**


By:  _____
Name:
Title:   Authorized Signatory


**LEHMAN EQUITY:**


Each of the entities listed on Schedule II attached hereto:


By:  _____
Name:
Title:   Authorized Signatory of each such entity

**Agreed and Accepted:**

**BORROWER:**

Each of the entities listed on Schedule I attached hereto:

By: _____
Name:    Robert J. Eves
Its:       Vice President

**VCC:**

Each of the entities listed on Schedule V attached hereto:

By: _____
Name:    Robert J. Eves
Its:       Vice President

**GUARANTOR:**

ROBERT J. EVES,
a natural person
_____

MORGAN HILL DEVELOPMENT PARTNERS, L.P.
a California limited partnership

By:      MORGAN HILL FINANCIAL CORPORATION,
            a California corporation,
            General Partner

By: _____
      Robert J. Eves
      President

MORGAN HILL FINANCIAL CORPORATION,
a California corporation

By: _____
      Robert J. Eves
      President

VENTURE DEVELOPMENT CORPORATION,
a California corporation

By: _____
      Robert J. Eves
      President

**Schedule I**

**Borrowers**

1.  LB/VCC Milpitas, LLC
2.  LB/VCC Palm Desert, LLC
3.  LB/VCC Oceanside, LLC
4.  LB/VCC Rocklin, LLC
5.  LB/VCC Palmdale, LLC
6.  LB/VCC Palmdale Properties, LLC
7.  LB/VCC Snoqualmie, LLC
8.  LB/VCC Las Vegas, LLC
9.  LB/VCC NEV-Spanish Springs, LLC
10. LB/VCC El Dorado, LLC
11. LB/VCC Eagle Ranch, LLC
12. LB/VCC OR-Hillsboro, LLC
13. LB/VCC Hillcrest, LLC
14. LB/VCC Elk Grove, LLC
15. LB/VCC Vacaville, LLC
16. LB/VCC WA-Mill Creek, LLC

**Schedule II.A**

**Lehman Equity Transferees**

1. LB Milpitas, LLC

2. LB Palm Desert

3. LB Oceanside, LLC

4. LB Rocklin, LLC

5. LB Palmdale Commerce Avenue, LLC

6. LB Palmdale Properties, LLC

7. LB Snoqualmie LLC

8. LB Las Vegas LLC

9. LB NEV-Spanish Springs LLC

10. LB El Dorado, LLC

11. LB Eagle Ranch, LLC

12. LB OR-Hillsboro LLC

13. LB Hillcrest, LLC

14. LB Elk Grove LLC

15. LB Vacaville LLC

16. LB WA Mill Creek LLC

17. LB Dublin LLC

18. LB Lancaster LLC

19. LB Antioch, LLC

**Schedule II.B**

**Lehman Equity Transferors**

1.  LB-NEV Centennial Hills LLC

2.  LB Otay Mesa LLC

**Schedule III**

**Lehman Transferred Property Owners**

1. LB/VPC NEV-Centennial Hills, LLC

2. LB/VCC Otay Mesa, LLC

**Schedule IV.A**

**Eves Loan**

1.         Amended and Restated Promissory Note, dated as of January 30, 2007, from Robert J. Eves to Lehman ALI, Inc., in the original face principal amount of $3,500,000.00, as modified by Modification Agreement effective as of January 15, 2008; Amended and Restated Security Agreement (Partnership Interests), dated January 30, 2007, between Robert J. Eves and Lehman ALI, Inc.

## Schedule IV.B

## Loans

1. Second Amended and Restated Secured Promissory Note, dated as of March, 2007, from LB/VCC Milpitas, LLC to Lehman ALI, Inc., in the original face principal amount of $27,837,209.00; Building Loan Agreement dated as of April 29, 2005, between LB/VCC Milpitas, LLC and Lehman ALI, Inc., as last modified by Loan Modification Agreement dated as of June, 2006; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of April 29, 2005, from LB/VCC Milpitas, LLC to Chicago Title Company as Trustee for Lehman ALI, Inc.; Payment Guaranty dated April 29, 2005, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

2. Amended and Restated Secured Promissory Note, dated as of March 30, 2007, from LB/VCC Palm Desert, LLC to Lehman ALI, Inc., in the original face principal amount of $11,832,179.00; Building Loan Agreement dated as of March 28, 2005, between LB/VCC Palm Desert, LLC and Lehman ALI, Inc., as last modified by Second Amendment to Loan Agreement dated as of March 30, 2007; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of March 28, 2005, from LB/VCC Palm Desert, LLC to Chicago Title Company as Trustee for Lehman ALI, Inc.; Payment Guaranty dated March 28, 2005, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

3. Amended and Restated Secured Promissory Note, dated as of March 30, 2007, from LB/VCC Oceanside, LLC to Lehman ALI, Inc., in the original face principal amount of $18,217,181.00; Building Loan Agreement dated as of May 3, 2005, between LB/VCC Oceanside, LLC and Lehman ALI, Inc., as last modified by First Amendment to Loan Agreement dated as of March 30, 2007; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of May 3, 2005, from LB/VCC Oceanside, LLC to Chicago Title Company as Trustee for Lehman ALI, Inc.; Payment Guaranty dated May 3, 2005, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

4. Amended and Restated Secured Promissory Note, dated as of March 30, 2007, from LB/VCC Rocklin, LLC to Lehman ALI, Inc., in the original face principal amount of $22,374,341.00; Building Loan Agreement dated as of June 30, 2005, between LB/VCC Rocklin, LLC and Lehman ALI, Inc.;  Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of June 30, 2005, from LB/VCC Rocklin, LLC to Chicago Title Company as Trustee for Lehman ALI, Inc.; Payment Guaranty dated June 30, 2005, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

5.  Secured Promissory Note, dated as of February 16, 2006, from LB/VCC Palmdale, LLC to Lehman ALI, Inc., in the original face principal amount of $11,235,921.00; Building Loan Agreement dated as of February 16, 2006, between LB/VCC Palmdale, LLC and Lehman ALI, Inc., as last modified by Amendment to Building Loan Agreement dated as of October, 2007; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of February 16, 2006, from LB/VCC Palmdale, LLC to Chicago Title Company as Trustee for Lehman ALI, Inc.; Carveout Payment Guaranty dated February 16, 2006, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

6.  Secured Promissory Note, dated as of March 31, 2006, from LB/VCC Palmdale Properties, LLC to Lehman ALI, Inc., in the original face principal amount of $7,130,649; Building Loan Agreement dated as of March 31, 2006, between LB/VCC Palmdale Properties, LLC and Lehman ALI, Inc., as last modified by Amendment to Loan Agreement dated as of October 2007; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of March 31, 2006, from LB/VCC Palmdale Properties, LLC to Chicago Title Company as Trustee for Lehman ALI, Inc.; Carveout Payment Guaranty dated March 31, 2006, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

7.  Secured Promissory Note, dated as of March 22, 2006, from LB/VCC Snoqualmie, LLC to Lehman Brothers Holdings Inc., in the original face principal amount of $12,428,532.00; Building Loan Agreement dated as of March, 2006, between LB/VCC Snoqualmie, LLC and Lehman Brothers Holdings, Inc; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of March 22, 2006, from LB/VCC Snoqualmie, LLC to First American Title Insurance Company as Trustee for Lehman Brothers Holdings, Inc.; Carveout Payment Guaranty dated March 22, 2006, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman Brothers Holdings, Inc.

8.  Amended and Restated Secured Promissory Note, dated as of January 30, 2006, from LB/VCC Las Vegas, LLC to Lehman ALI, Inc., in the original face principal amount of $14,819,088.00; Building Loan Agreement dated as of August 9, 2005, between LB/VCC Las Vegas, LLC and Lehman ALI, Inc., as last modified by Amendment to Building Loan Agreement dated as of October, 2007; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of August 9, 2005, from LB/VCC Las Vegas, LLC to First American Title Company as Trustee for Lehman ALI, Inc., last modified by First Amendment to Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated January 30, 2006; Payment Guaranty dated August 9, 2005, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

9. Secured Promissory Note, dated as of May 1, 2006, from LB/VCC NEV-Spanish Springs, LLC to Lehman Brothers Holdings Inc., in the original face principal amount of $13,345,395.00; Building Loan Agreement dated as of May 1, 2006, between LB/VCC NEV-Spanish Springs, LLC and Lehman Brothers Holdings Inc; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of May 1, 2006, from LB/VCC NEV-Spanish Springs, LLC to First American Title Insurance as Trustee for Lehman Brothers Holdings Inc.; Carveout Payment Guaranty dated May 1, 2006, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman Brothers Holdings Inc.

10. Secured Promissory Note, dated as of August 25, 2005, from LB/VCC El Dorado, LLC to Lehman ALI, Inc., in the original face principal amount of $13,946,009.00; Building Loan Agreement dated as of August 25, 2005, between LB/VCC El Dorado, LLC and Lehman ALI, Inc., as last modified by Omnibus Amendment to Loan Documents dated as of March 3, 2006; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of August 25,, from LB/VCC Milpitas, LLC to Placer Title Company as Trustee for Lehman ALI, Inc., last modified by First Amendment to Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of March 3, 2006 ; Payment Guaranty dated August 25, 2005, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

11. Secured Promissory Note, dated as of September 3, 2006, from LB/VCC Eagle Ranch, LLC to Lehman Brothers Holdings Inc., in the original face principal amount of $12,032,921.00; Building Loan Agreement dated as of September 3, 2006, between LB/VCC Eagle Ranch, LLC and Lehman Brothers Holdings Inc; Mortgage and Security Agreement, dated as of September 3, 2006, from LB/VCC Eagle Ranch, LLC to Lehman Brothers Holdings Inc.; Carveout Payment Guaranty dated September 3, 2006, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman Brothers Holdings Inc.

12. Secured Promissory Note, dated as of January 17, 2007, from LB/VCC OR-Hillsboro, LLC to Lehman Brothers Holdings Inc., in the original face principal amount of $14,770,371.00; Building Loan Agreement dated as of January 17, 2007, between LB/VCC OR-Hillsboro, LLC and Lehman Brothers Holdings Inc; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of January 17, 2007, from LB/VCC OR-Hillsboro, LLC to First American Title Insurance Company as Trustee for Lehman Brothers Holdings Inc.; Carveout Payment Guaranty dated January 17, 2007, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman Brothers Holdings Inc.

13. Secured Promissory Note, dated as of May, 2007, from LB/VCC Hillcrest, LLC to Lehman ALI, Inc., in the original face principal amount of $27,546,784.00; Building Loan Agreement dated as of May, 2007, between LB/VCC Hillcrest, LLC and Lehman ALI, Inc.; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of May, 2007, from LB/VCC Hillcrest, LLC to First American Title Insurance as Trustee for Lehman ALI, Inc.; Carveout Payment Guaranty dated May, 2007, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

14. Secured Promissory Note, dated as of August 31, 2005, from LB/VCC Elk Grove, LLC to Lehman ALI, Inc., in the original face principal amount of $14,138,148.00; Building Loan Agreement dated as of August 31, 2005, between LB/VCC Elk Grove, LLC and Lehman ALI, Inc.; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of August 31, 2005, from LB/VCC Elk Grove, LLC to Placer Title Company as Trustee for Lehman ALI, Inc.; Carveout Payment Guaranty dated April August 31, 2005, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

15. Secured Promissory Note, dated as of January 26, 2007, from LB/VCC Vacaville, LLC to Lehman ALI, Inc., in the original face principal amount of $10,178,250.00; Building Loan Agreement dated as of January 26, 2007, between LB/VCC Vacaville, LLC and Lehman ALI, Inc.; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of January 26, 2007, from LB/VCC Vacaville, LLC to First American Title Insurance Company as Trustee for Lehman ALI, Inc.; Carveout Payment Guaranty dated January 26, 2007, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman ALI, Inc.

16. Secured Promissory Note, dated as of October 2, 2006, from LB/VCC WA-Mill Creek, LLC to Lehman Brothers Holdings Inc., in the original face principal amount of $10,469,634.00; Building Loan Agreement dated as of October 2, 2006, between LB/VCC WA-Mill Creek, LLC and Lehman Brothers Holdings Inc.; Construction Deed of Trust and Fixture Filing; Assignment of Leases and Rents and Security Agreement, dated as of October 2, 2006, from LB/VCC WA-Mill Creek, LLC to First American Title Insurance as Trustee for Lehman Brothers Holdings Inc.; Carveout Payment Guaranty dated October 2, 2006, from Robert J. Eves, Morgan Hill Development Partners, L.P., Morgan Hill Financial Corporation, and Venture Development Corporation to Lehman Brothers Holdings Inc.

**Schedule V**

**LLC Agreements**

1.  Limited Liability Company Agreement of LB/VCC Milpitas, LLC, between VCC-Milpitas Limited Partnership and LB Milpitas, LLC, dated as of April 27, 2005

2.  Limited Liability Company Agreement of LB/VCC Palm Desert, LLC, between VCC-Palm Desert Limited Partnership and LB Palm Desert, LLC, dated as of March 28, 2005

3.  Limited Liability Company Agreement of LB/VCC Oceanside, LLC, between VCC-Oceanside Limited Partnership and LB Oceanside, LLC, dated as of May 3, 2005

4.  Limited Liability Company Agreement of LB/VCC Rocklin, LLC, between VCC-Rocklin Limited Partnership and LB Rocklin, LLC, dated as of January 18, 2005

5.  Limited Liability Company Agreement of LB/VCC Palmdale, LLC, between VCC-Palmdale Limited Partnership and LB Palmdale Commerce Avenue, LLC, dated as of February 16, 2006

6.  Limited Liability Company Agreement of LB/VCC Palmdale Properties, LLC, between VCC- Palmdale Properties Limited Partnership and LB Palmdale Properties, LLC, dated as of March 31, 2006

7.  Limited Liability Company Agreement of LB/VCC Snoqualmie, LLC, between VCC-Snoqualmie Limited Partnership and LB Snoqualmie LLC, dated as of March __, 2006

8.  Limited Liability Company Agreement of LB/VCC Las Vegas, LLC, between VCC- Las Vegas Limited Partnership and LB Las Vegas LLC, dated as of August 9, 2005

9.  Limited Liability Company Agreement of LB/VCC NEV-Spanish Springs, LLC, between VCC NEV-Spanish Springs Limited Partnership and LB NEV-Spanish Springs LLC, dated as of May 1, 2006

10. Limited Liability Company Agreement of LB/VCC El Dorado, LLC, between VCC-El Dorado Limited Partnership and LB El Dorado, LLC, dated as of August 25, 2005

11. Limited Liability Company Agreement of LB/VCC Eagle Ranch, LLC, between VCC-Eagle Ranch Limited Partnership and LB Eagle Ranch, LLC, dated as of September 13, 2006

12. Limited Liability Company Agreement of LB/VCC OR-Hillsboro, LLC, between VCC-OR Hillsboro Limited Partnership and LB OR-Hillsboro LLC, dated as of January 17, 2007

13. Limited Liability Company Agreement of LB/VCC Hillcrest, LLC, between VCC-Antioch II Limited Partnership and LB Hillcrest, LLC, dated as of May 2, 2007

14. Limited Liability Company Agreement of LB/VCC Elk Grove, LLC, between VCC- Elk Grove Limited Partnership and LB Elk Grove LLC, dated as of August 31, 2005

15. Limited Liability Company Agreement of LB/VCC Vacaville, LLC, between VCC-Vacaville Limited Partnership and LB Vacaville LLC, dated as of January 26, 2005

16. Limited Liability Company Agreement of LB/VCC WA-Mill Creek, LLC, between VCC-WA Mill Creek Limited Partnership and LB WA Mill Creek LLC, dated as of October 2, 2006

17. Limited Liability Company Agreement of LB/VCC Dublin, LLC, between VCC- Dublin Limited Partnership and LB Dublin LLC, dated as of January 30, 2006

18. Limited Liability Company Agreement of LB/VCC Lancaster, LLC, between VCC-Lancaster Limited Partnership and LB Lancaster LLC, dated as of November 14, 2005

19. Limited Liability Company Agreement of LB/VCC Antioch, LLC, between VCC-Antioch Limited Partnership and LB Antioch, LLC, dated as of January 10, 2005

**Schedule VI.A**

**VCC Entities**

1.  VCC - Milpitas Limited Partnership

2.  VCC - Palm Desert Limited Partnership

3.  VCC - Oceanside Limited Partnership

4.  VCC - Rocklin Limited Partnership

5.  VCC - Palmdale Limited Partnership

6.  VCC - Palmdale Properties Limited Partnership

7.  VCC - Snoqualmie Limited Partnership

8.  VCC - Las Vegas Limited Partnership

9.  VCC - NEV - Spanish Springs Limited Partnership

10. VCC - El Dorado Limited Partnership

11. VCC - Eagle Ranch Limited Partnership

12. VCC - OR Hillsboro Limited Partnership

13. VCC - Hillcrest Limited Partnership

14. VCC - Elk Grove Limited Partnership

15. VCC - Vacaville Limited Partnership

16. VCC - WA Mill Creek Limited Partnership

17. VCC - Lancaster Limited Partnership

18. VCC - Dublin Limited Partnership

19. VCC - Antioch Limited Partnership

20. VPC-NEV Centennial Hills, LLC

21. VCC-Otay Mesa Limited Partnership

**Schedule VI.B**

**VCC Transferors**

1.  VCC - Milpitas Limited Partnership
2.  VCC - Palm Desert Limited Partnership
3.  VCC - Oceanside Limited Partnership
4.  VCC - Rocklin Limited Partnership
5.  VCC - Palmdale Limited Partnership
6.  VCC - Palmdale Properties Limited Partnership
7.  VCC - Snoqualmie Limited Partnership
8.  VCC - Las Vegas Limited Partnership
9.  VCC - NEV - Spanish Springs Limited Partnership
10. VCC - El Dorado Limited Partnership
11. VCC - Eagle Ranch Limited Partnership
12. VCC - OR Hillsboro Limited Partnership
13. VCC - Hillcrest Limited Partnership
14. VCC - Elk Grove Limited Partnership
15. VCC - Vacaville Limited Partnership
16. VCC - WA Mill Creek Limited Partnership
17. VCC - Lancaster Limited Partnership
18. VCC - Dublin Limited Partnership
19. VCC - Antioch Limited Partnership

**Schedule VII**

**VCC Transferred Property Owners**

1. LB/VCC Milpitas, LLC

2. LB/VCC Palm Desert, LLC

3. LB/VCC Oceanside, LLC

4. LB/VCC Rocklin, LLC

5. LB/VCC Palmdale, LLC

6. LB/VCC Palmdale Properties, LLC

7. LB/VCC Snoqualmie, LLC

8. LB/VCC Las Vegas, LLC

9. LB/VCC NEV-Spanish Springs, LLC

10. LB/VCC El Dorado, LLC

11. LB/VCC Eagle Ranch, LLC

12. LB/VCC OR-Hillsboro, LLC

13. LB/VCC Hillcrest, LLC

14. LB/VCC Elk Grove, LLC

15. LB/VCC Vacaville, LLC

16. LB/VCC WA-Mill Creek, LLC

17. LB/VCC Dublin, LLC

18. LB/VCC Lancaster, LLC

19. LB/VCC Antioch, LLC

**Schedule VIII**

**Key Management Agreement Terms (for discussion purposes only)**

A.    <u>Properties</u>.  VCC Entity shall manage the projects currently owned by the entities listed below:

1.  LB/VCC Milpitas, LLC

2.  LB/VCC Palm Desert, LLC

3.  LB/VCC Oceanside, LLC

4.  LB/VCC Rocklin, LLC

5.  LB/VCC Palmdale, LLC

6.  LB/VCC Palmdale Properties, LLC

7.  LB/VCC Snoqualmie, LLC

8.  LB/VCC Las Vegas, LLC

9.  LB/VCC Eagle Ranch, LLC

10. LB/VCC OR-Hillsboro, LLC

11. LB/VCC Antioch, LLC

12. LB/VCC Dublin, LLC

13. LB/VCC El Dorado, LLC

14. LB/VCC Elk Grove, LLC

15. LB/VCC Lancaster, LLC

16. LB/VCC Mill Creek, LLC

17. LB/VCC Spanish Springs, LLC

18. LB/VCC Vacaville, LLC

19. LB/VCC Hillcrest, LLC

The projects owned by the entities listed in 1. through 12. above are referred to as the "<u>Developed Projects</u>", and those owned by the entities listed in 13. through 19. above are referred to as the "<u>Land Projects</u>"

B.    Term.  The management agreement shall be for term of four (4) months, and may be terminated (1) in its entirety by Lehman Lender and/or Lehman Equity or their respective designees upon 30 days' written notice without cause, (2) by Lehman Lender and/or Lehman Equity or their respective designees, upon ten days' written notice "for cause" (as provided in definitive documentation), (3) by Lehman Lender and/or Lehman Equity with respect to any one or more of the projects, without cause, upon 30 days'

written notice to VCC Entity (in which event the management agreement shall terminate only with respect to those projects, but shall continue to remain in full force and effect with respect to the remaining projects), and/or (4) by VCC Entity, upon ten days' written notice, with respect to any project for which Lehman Lender and/or Lehman Equity, as applicable, fails to pay VCC Entity the fees due VCC Entity as provided hereinbelow (in which event the management agreement shall terminate only with respect to those projects, but shall continue to remain in full force and effect with respect to the remaining projects); provided, however, that if the management agreement is terminated pursuant to clause (1) and/or (3) above, and so long as VCC Entity reasonably cooperates with Lehman Lender and/or Lehman Equity in transitioning the duties performed by VCC Entity to such party(ies) designated by Lehman Lender and/or Lehman Equity (together with such documents, information and other necessary data), then VCC Entity shall be entitled, and shall be paid on the effective date of such termination or promptly thereafter, the monthly management fee set forth below for the balance of the term of the management agreement.

C.      Fees.  VCC Entity shall receive a monthly management fee equal to (1) $6,700 for each Developed Project, plus (2) $600 for each Land Project, subject in each case to the termination rights set forth in B.(3) above, plus (3) an incentive fee equal to 1.5% of the gross sales price (as approved by Lehman Lender and/or Lehman Equity, as applicable) of each unit payable upon the close of escrow of each unit.

D.      Duties.  VCC Entity's management duties shall include the following (subject to definitive documentation):

Asset Management
        Monthly Reporting
        Accounting & Payables
        Budget projections

Property Management
        Identify and supervise property manager
        Handle property inquiries and issues with owners
        Maintain vacant properties
        Process warranty claims
        Determine project/association operating budget
        Address completion bonds not yet released by municipalities

Owners' Association
        Attend Board of Directors meetings
        Review association financial statements
        Handle Declarant (developer) responsibilities
        Implement capital improvements as needed

Marketing
        Maintain website
        Manage outreach campaigns to 220,000 real estate agents

       Brochures
       Emails
       Advertising
       Public relations
       Events (open houses, brokers' opens, buyers presentations)
Develop and implement promotions & pricing strategy
Track competition
Maintain on-site business offices and signage

Sales
       Identify and supervise brokerage team
       Negotiate terms of purchase offers
       Assist in financing and handle lender requirements
       Manage contract requirements
            Use permits
            Improvements
            Other special requirements
       Document contracts & amendments
       Manage contracts to close

Leasing
       Identify and supervise brokerage team
       Negotiate terms of LOI's/leases
       Manage lease agreement requirements
            Use permits
            Improvements
            Other special requirements
       Document leases & amendments

**Exhibit B**

| **LBHI Borrower** | **Principal Amount Outstanding Under Loan to LBHI Borrower** |
| --- | --- |
| LB/VCC Snoqualmie, LLC | $3,222,761 |
| LB/VCC NEV-Spanish Springs, LLC | $621,001 |
| LB/VCC Eagle Ranch, LLC | $9,900,570 |
| LB/VCC OR-Hillsboro, LLC | $11,051,872 |
| LB/VCC WA-Mill Creek, LLC | $1,150,293 |

**Exhibit C**

| LALI Borrower | Principal Amount Outstanding Under Loan to LALI Borrower |
|---|---|
| LB/VCC Milpitas, LLC | $7,282,808 |
| LB/VCC Palm Desert, LLC | $1,961,423 |
| LB/VCC Oceanside, LLC | $9,878,600 |
| LB/VCC Rocklin, LLC | $5,765,038 |
| LB/VCC Palmdale, LLC | $5,469,762 |
| LB/VCC Palmdale Properties, LLC | $7,135,529 |
| LB/VCC Las Vegas, LLC | $660,448 |
| LB/VCC El Dorado, LLC | $1,349,096 |
| LB/VCC Hillcrest, LLC | $2,265,384 |
| LB/VCC Elk Grove, LLC | $2,698,985 |
| LB/VCC Vacaville, LLC | $1,134,243 |

## Exhibit D

### Third Party Borrowers

LB/VPC NEV-Centennial Hills, LLC

LB/VCC Otay Mesa, LLC


### Unencumbered Joint Ventures

LB/VCC Dublin, LLC

LB/VCC Lancaster, LLC

LB/VCC Antioch, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :          **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :          **08-13555 (JMP)**
                                                    :
                                **Debtors.**        :          **(Jointly Administered)**
                                                    :
                                                    :
-------------------------------------------------------------------x

**ORDER PURSUANT TO FEDERAL RULE**
**OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING AND APPROVING**
**LEHMAN BROTHERS HOLDINGS INC.'S ENTRY INTO SETTLEMENT WITH VCC**

Upon the motion, dated August 26, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI," together with its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession, the "Debtors," and, together with their non-debtor

affiliates, "Lehman"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for authorization for LBHI to enter into a settlement (the "Settlement")

with certain entities owned or controlled, directly or indirectly, by Robert J. Eves substantially

consistent with the term sheet attached to the Motion as Exhibit A (the "Term Sheet"), all as

more particularly described in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

management and administrative procedures [Docket No. 2837] to (i) the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; (vi) counsel to the VCC

Guarantors;[1] (vii) counsel to the VCC Affiliates; (viii) counsel to the Lehman SPEs; (ix) counsel

to Lehman Re Ltd.; and (x) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estate and

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement is hereby

approved and LBHI is duly authorized to (i) consummate all of the transactions contemplated

thereby, including the execution of a settlement agreement substantially consistent with the Term

Sheet; (ii) execute and deliver such assignments, conveyances, and other documents, and

instruments of transfer and to take such other actions as may be reasonably necessary to

consummate the Settlement, and (iii) consent to any amendment, restatement, waiver,

supplement or other modification of any of the documents contemplated under the Settlement, it

being understood that any actions described in this paragraph taken by LBHI or its affiliates may

be taken without the necessity of (x) any further court proceedings or approval or (y) any consent

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that the Settlement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, *provided* that any such modification, amendment or supplement does not have a material adverse effect on LBHI's estate; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: September __, 2009
       New York, New York

_____
       UNITED STATES BANKRUPTCY JUDGE