**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile:   (949) 720-4111
Paul J. Couchot – admitted *pro hac vice*
Sean O'Keefe – *pro hac vice* pending

**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:   (212) 309-6001
Andrew D. Gottfried
Menachem O. Zelmanovitz

*Co-Counsel for SunCal Debtors*

Hearing Date & Time:
September 15, 2009 at 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Petition Peter C.B. Mitchell and D. | : | Chapter 15 Case No. 09-14884 (JMP) |
| Geoffrey Hunter, as Joint Provisional | : | |
| Liquidators of LEHMAN RE LTD., | : | |
| | : | |
| Debtor in a Foreign Proceeding | : | |

**SUNCAL DEBTORS' OBJECTION TO DEBTOR IN FOREIGN PROCEEDING'S
PETITION FOR (1) INJUNCTIVE RELIEF AND (2) RECOGNITION UNDER
<u>CHAPTER 15 OF THE BANKRUPTCY CODE</u>**

Palmdale Hills LLC, SunCal Communities I, SunCal Communities III LLC, SCC

Palmdale LLC, Acton Estates LLC, SunCal Beaumont LLC, SunCal Emerald Meadows LLC,

SunCal Johansson Ranch LLC, SunCal Bickford Ranch LLC, SunCal Summit Valley LLC,

Seven Brothers LLC, Kirby Estates LLC, SJD Partners, Ltd., a California limited partnership

("SJD Partners"), SJD Development Corp., SCC Communities LLC, North Orange Del Rio Land LLC, and Tesoro SF LLC (collectively the "SunCal Debtors") hereby submit this *Objection* to the Petitioners' *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Application for Order to Show Cause with Temporary Restraining Order, and Preliminary Injunction* ("Verified Petition") filed by Peter C.B. Mitchell and D. Geoffrey Hunter (the "Petitioners") appointed by the Supreme Court of Bermuda as the Joint Provisional Liquidators of Lehman Re Ltd. ("Lehman Re").

# I

## PRELIMINARY STATEMENT

The Verified Petition presents two issues for this Court: (1) whether the Bermuda liquidation of Lehman Re (the "Bermuda Proceeding") is entitled to recognition as a "foreign main proceeding" or a "foreign nonmain proceeding" under Chapter 15, and even assuming *arguendo* that it is, (2) whether grounds exist for the issuance of a permanent injunction staying certain litigation pending against Lehman Re in other jurisdictions.

No grounds exist for this Court to grant the Petitioners' requested relief on either issue. The Petitioners are not entitled to an injunction in the case of the litigation involving the SunCal Debtors pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("California Bankruptcy Court"), Adversary No. 8:09-ap-01005-ES (the "SunCal Adversary"). In addition to Petitioners' inability to establish an appropriate legal basis for the extraordinary remedy of a permanent injunction, the Petitioners also cannot establish status for the Bermuda Proceeding as either a "foreign main proceeding" or a "foreign nonmain proceeding;" a status required under Chapter 15 to provide this Court with an appropriate legal basis from which it could grant injunctive relief.

Permanent injunctive relief under Chapter 15 requires the Petitioners to establish the same general elements required for a injunctive relief under common law: (1) whether they will be successful on the merits; (2) whether there will be irreparable harm to the estate in the absence of an injunction; (3) whether there is no adequate remedy at law; (4) whether the balance

of harms tips in favor of the moving party; and (5) whether the public interest weighs in favor of an injunction.  If Petitioners fail to establish *any* of these elements, their motion must be denied.  Here, they have failed to establish *any* of them.

A.    <u>Success on the Merits</u>.  To obtain injunctive relief, Petitioners must be successful in the Bermuda Proceeding and in its petition for recognition.  In fact, as set forth below, a permanent injunction *will prevent the successful completion* of the Bermuda Proceeding.  Moreover, the Chapter 15 petition fails for several additional reasons.

First, no basis exists for Chapter 15 relief.  A review of the facts alleged in the declarations filed by Lehman Re confirms that Lehman Re has always been a mere shell company in Bermuda, whose real principal place of business has been, and remains, in New York.  Thus, ultimately, recognition of the foreign proceeding here must be denied.  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd,* 389 B.R. 325 (S.D.N.Y 2008)("*Bear Stearns*").  All of the facts that Lehman Re cites to distinguish the *Bear Stearns* case *are in the past tense*.  The case law is clear: it is the state of affairs that exists today that is determinative.  *Lavie v. Ran*, 477 B.R. 277, 284-85 (S.D.Tex. 2009) (analysis focuses on present state of business, not the past).  The evidence submitted by Lehman Re – no non-U.S. employees, no non-U.S. assets, no non-U.S. books and records of any significance – contradicts the merits of its own claim for recognition.

Second, this Court should not allow Chapter 15 to be used as a forum shopping device.  The bankruptcy courts have refused to grant recognition to a foreign proceeding where, as in this case, the objective is to achieve an end-run around a preexisting ruling.  Here, Lehman Re is well aware that the relief it is seeking – the stay of the equitable subordination claim in the SunCal Adversary – has been affirmatively denied by the California Bankruptcy Court.  Seeking a second bite-of-the-apple through a Chapter 15 filing in this Court should not be allowed.

B.    <u>No Showing of Irreparable Harm Has Been Made</u>.  As Petitioner Hunter conceded in testimony at the August 12, 2009 preliminary injunction hearing held in this Court (the

"Hearing")[1], Petitioners must resolve the dispute which is the subject of the SunCal Adversary in order to liquidate their estate in Bermuda.  Enjoining those proceedings would prevent the orderly administration of not only the SunCal Debtors' estates, but that of Lehman Re in the Bermuda Proceeding as well.  The only appropriate venue for the resolution of that dispute is the California Bankruptcy Court.  The real property that is the subject of the dispute is located in California as are the key witnesses and documentary evidence.  Despite these plain facts, Petitioners, nevertheless, forward the notion that the costs associated with handling the litigation would impose irreparable harm on their estate.  However, the mere expenses normally associated with litigation that arises in the ordinary course of business do not provide an adequate ground from which this Court can find irreparable harm.

C.    Adequate Remedy at Law.  Petitioners utterly fail to establish the lack of an adequate remedy at law to justify the grant of equitable relief.  Indeed, the proof of claim filed on behalf of Lehman Re includes a claim for fees and expenses, including attorneys' fees, the only alleged damages identified by Petitioners here.  Thus, injunctive relief is unnecessary.

D.    Balance of harms.  Even a cursory review of the facts that bear on the "balancing of the harms" test establishes that the scale tips sharply in favor of the SunCal Debtors. Obtaining a determination with respect to the equitable subordination claims raised in the SunCal Adversary is an important step in the SunCal Debtors' reorganization effort. Deferring a ruling in that case will delay the progress of the SunCal Debtors' reorganization, but it will not expedite or facilitate the Bermuda Proceeding.  *The status of Lehman Re's claims and liens must be determined _before_ the underlying property can be disposed*.  Further, as the Court noted at the Hearing, given the active participation of the Lehman entities in the SunCal Adversary, no extraordinary effort is necessary for the Petitioners to participate fully in that litigation.

Accordingly, the balance of harms clearly favors the SunCal Debtors.  Lehman Re will not suffer harm because the status of its claims and liens must be determined before the underlying property can be disposed.  On the other hand, the SunCal Debtors will definitely

---

[1]  A copy of the transcript ("Tr.") of the Hearing is annexed hereto as Exhibit A.

suffer prejudice if this Court were to grant permanent injunctive relief. The administration of the SunCal Debtors' reorganization proceedings will be delayed to the prejudice of their creditors, and the SunCal Debtors could be required to litigate the identical issues twice – once in the SunCal Adversary against the other Lehman entities and a second time before this Court against Lehman Re. In sum, delay benefits neither party. It simply impairs the SunCal Debtors' rights to a greater degree than Lehman Re.

        E.        <u>Public Interest Weighs in Favor of the Reorganization of the SunCal Debtors, and Against Petitioners' Collateral Attack on the Rulings of the California Bankruptcy Court</u>.

Evaluation of the public interest factor under the injunction analysis "requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests." Here, it is SJD Partners and the other SunCal Debtors that are seeking to reorganize, not Lehman Re. There is simply no public policy interest in enjoining the California Bankruptcy Court from performing its administration of the SJD Partners' estate, including the adjudication of the priority of Lehman Re's claim against the estate.

Moreover, the Petitioners' proposed injunction potentially violates the *Collateral Order Doctrine*. The Petitioners are well aware of the fact that the California Bankruptcy Court has already ruled, in response to a motion filed by Lehman Re's agent, Lehman ALI, Inc. ("Lehman ALI")[2], that an action to equitably subordinate liens and claims of a creditor asserted against a Chapter 11 debtor's estate is not subject to the automatic stay of the lienholder/claimant's own chapter 11 case. This ruling is currently on appeal.

Rather than directly attack this ruling by participating in the appeal, as it is required to do, Lehman Re is attempting a circuitous "collateral attack." This course of action is prohibited; a direct attack in California is Lehman Re's only option. *Celotex Corp. v. Edwards*, 514 U.S. 300, 305-07, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).

---

[2]        Lehman Re filed a proof of claim against SJD Partners through its agent, Lehman ALI. The California Bankruptcy Court ruling was made in response to a motion for relief from stay filed by, among others, Lehman ALI.

Petitioners' requested relief may result in inconsistent rulings between the courts, and raises the specter of forum shopping. Accordingly, public interest weighs heavily against both the proposed injunction and recognition under Chapter 15. As set forth herein, Petitioners are not entitled to injunctive relief or recognition as a "foreign main proceeding" or a "foreign nonmain proceeding" under Chapter 15.

## II.

## FACTUAL BACKGROUND

In November 2008, the SunCal Debtors, seventeen related entities, filed voluntary Chapter 11 petitions in the California Bankruptcy Court. The SunCal Debtors are part of an integrated network of companies that operate under the common name of "the SunCal Companies" or "SunCal." The SunCal Debtors include SJD Partners.

### A.    Pacific Point Project.

SJD Partners formerly owned the "Pacific Point Project," a 200 plus acre development in a premium location overlooking the Pacific Ocean in San Juan Capistrano. The Pacific Point Project was formerly subject to two deeds of trust securing loan agreements in favor of Lehman ALI.

Pursuant to a certain Restructuring Agreement, SunCal agreed not to interfere with Lehman ALI's foreclosure on the Pacific Point Project, and LV Pacific Point, LLC ("LV Pacific Point") would acquire the property, in consideration for, among other things, LV Pacific Point's agreement, backed by Lehman ALI, to assume millions of dollars in outstanding accounts payable to Pacific Point third-party vendors.

On or about June 18, 2008, Lehman ALI assigned the loan agreement secured by a second priority deed of trust (the "Second Deed") against the Pacific Point Project to LV Pacific Point. LV Pacific Point then non-judicially foreclosed the Second Deed on the Pacific Point Project on August 28, 2008. The foreclosure was subject to the first-priority deed of trust held by Lehman ALI. Apparently, all or a portion of the first priority deed of trust was assigned to

Lehman Re.  Lehman Re now alleges itself to be the holder of the first priority deed of trust.[3]

Although LV Pacific Point, backed by Lehman ALI, agreed to assume the rights and obligations under the development agreement by the virtue of the "consensual" foreclosure sale, they have reneged to the detriment of the creditors of SJD Partners' estate.

On or about July 10, 2009, the SunCal Debtors and the SunCal Trustee[4] filed a Third Amended Complaint seeking, *inter alia*, to equitably subordinate the claim filed by Lehman ALI on behalf of Lehman Re, based on the first deed of trust.  Lehman Re's answer was originally due on August 12, 2009, but has been extended to September 30, 2009.

    B.      **<u>Lehman Re's Proof of Claim.</u>**

On March 23, 2009, Lehman ALI filed a proof of claim with the California Bankruptcy Court against the estate of SJD Partners.  A copy of the proof of claim is annexed hereto as Exhibit B.  Lehman ALI filed the proof of claim as the purported agent of Lehman Re.  Accordingly, by the filing of the proof of claim, Lehman Re has appeared before and consented to the jurisdiction of the California Bankruptcy Court.  In his testimony, Petitioner Hunter, one of the Petitioners, stated that Lehman ALI was not authorized to file a claim on behalf of Lehman Re.  Tr. at 77.  If that is the case, then Lehman Re has waived any claim that it might have had since the bar date in the SunCal Debtors' bankruptcy cases, March 31, 2009, has long since passed.

---

[3]  Paragraph 29 of Verified Petition asserts:

> The Company holds a first priority mortgage on the property known as "Pacific Point," located in San Luis Obispo, California, which currently is owned by an entity called LV Pacific Point, LLC, a non-debtor and an affiliate of LBHI.

[4]  A Chapter 11 trustee was appointed for certain of the SunCal Companies whose cases have been administratively consolidated with those of the SunCal Debtors.

C.  **California Bankruptcy Court's Ruling on the Applicability of the Automatic Stay with Respect to the Equitable Subordination Action.**

On January 23, 2009, Lehman ALI and Lehman Commercial Paper Inc. ("LCPI") filed eight motions for relief from stay against certain SunCal Debtors ("Motions for Relief") to foreclose on various of the SunCal Debtors' properties. In the Motions for Relief, the Lehman entities contended that the automatic stay in LCPI's case barred the SunCal Debtors from equitably subordinating LCPI's claims, and thus the SunCal Debtors allegedly could not reorganize within a reasonable time. In response to this contention, the SunCal Debtors cited authority clearly establishing that (i) the California Bankruptcy Court had concurrent jurisdiction to determine whether the automatic stay in LCPI's case applied to a claim objection or equitable subordination proceeding initiated by the SunCal Debtors,[5] and (ii) that LCPI's automatic stay did not, in fact, apply as alleged.[6]

On March 10, 2009, the California Bankruptcy Court entered eight substantially similar orders denying LCPI's and Lehman ALI' Motions for Relief (the "Orders"). The Orders specifically provided that LCPI's automatic stay does not apply to any objection to a claim, any proceeding to subordinate a claim pursuant to 11 U.S.C. § 510(c)(1), and/or the transfer of a lien securing a subordinated claim pursuant to 11 U.S.C. § 510(c)(2). On March 20, 2009, LCPI filed notices of appeal to the Ninth Circuit Bankruptcy Appellate Panel with respect to the California Bankruptcy Court's ruling on the applicability of its automatic stay. All briefs have been

---

[5]  *See In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. 1985) ("Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending, and the bankruptcy court supervising the reorganization") (citations omitted); *N.L.R.B. v. Edward Cooper Painting*, 804 F.2d 934, 939 (6th Cir. 1986) (citing *Baldwin* - "The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.").

[6]  *See e.g., In re Merrick*, 175 B.R. 333 (9th Cir. 1994); *In re Wheatfield Bus. Park, LLC*, 308 B.R. 463 (9th Cir. BAP 2004); *In re Financial News Network*, 158 B.R. 570 (S.D.N.Y. 1993); *In re Bousa*, No. 93 Civ. 4492, 2005 WL 1176108, at *4 (S.D.N.Y. May 17, 2005); *In re Metiom, Inc.*, 301 B.R. 634, 638-39 (Bankr. S.D.N.Y. 2003).

submitted and oral argument before the Bankruptcy Appellate Panel has been set for September 25, 2009.

D.    **Petitioners' Application for a Preliminary Injunction Was Denied By This Court.**

On August 6, 2009, nearly a full year after the commencement of the Bermuda Proceeding, Petitioners filed the Verified Petition. Prior to the recognition hearing on the Verified Petition, Petitioners also sought preliminary injunctive relief to temporarily stay the SunCal Adversary, among other pending litigations.

Also, on August 6, 2009, Petitioners sought an *ex parte* temporary restraining order, which application was denied by the Court. Thereafter, on August 12, 2009, this Court heard argument and held an evidentiary hearing on Petitioners' application for a preliminary injunction, and denied that application as well, entering an Order to that effect on August 13, 2009. A copy of the August 13, 2009 Order is annexed hereto as Exhibit C.

Clearly, Lehman Re and Petitioners had notice of the SunCal Adversary for many months.[7] Yet, rather than address the merits of that action, Petitioners filed the Verified Petition. As the Court noted, the Petitioners' actions could be construed as an attempt to "gam[e] the system…[by] filing a Chapter 15 as a last resort as opposed to a first initiative." Tr. at. 17. Indeed, as the Court further noted, although Petitioners urge that the costs from legal efforts associated with the SunCal Adversary constitute a form of irreparable harm, the equal if not greater costs associated with the Verified Petition and its related litigation did not deter Petitioners from aggressively pursuing this belated course of legal action. Tr. at 30. As the Court commented, Petitioners have a heavy burden to demonstrate "why…this Court should be involved in yet another collateral attack on matters being litigated, apparently quite actively, in California." Tr. at 21-22.

---

[7] During the Hearing, the Court further noted that "there was actual notice this was going on months ago." Tr. at 25.

Even though Petitioners seek to stay the SunCal Adversary, Petitioner Hunter admitted in his testimony at the Hearing that in order to wind up the Lehman Re estate, Petitioners must resolve that litigation in order to extract any value from the real property that is at the heart of the dispute.  Tr. at 79-80.  Further, Petitioner Hunter also conceded that he and his counsel periodically communicate with the other Lehman entities and their counsel concerning the litigation that would potentially be subject to the injunction.  Tr. at 82.  Thus, as the Court noted, the Petitioners can easily answer the complaint in the SunCal Adversary as "a 'me, too' party defendant."  Tr. at 30.

Although acknowledging that some questions have been raised as to the propriety of recognizing the Bermuda Proceeding as either a "foreign main proceeding" or a "foreign nonmain proceeding," the Court denied the request for a preliminary injunction, for failure to establish a likelihood of irreparable harm, without ruling on the issue of Lehman Re's potential success on the merits of its petition for recognition.  Tr. at 87-88.

## IV.

## THE BERMUDA LIQUIDATION OF LEHMAN RE IS NOT ENTITLED TO RECOGNITION AS A FOREIGN MAIN OR A FOREIGN NON-MAIN PROCEEDING

The Bermuda Proceeding should not be recognized as either a "foreign main proceeding" or a "foreign nonmain proceeding."[8]

---

[8] The conditions for recognition of a foreign proceeding are set forth in Bankruptcy Code Section 1517, which provides as follows:

> Order granting recognition
> (a) Subject to [the public policy exception in] section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if-
>> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502;
>> (2) the foreign representative applying for recognition is a person or body; and
>> (3) the petition meets the requirements of section 1515.
> (b) Such foreign proceeding shall be recognized
>> (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or
>> (2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

11 U.S.C. § 1517.

Under Chapter 15, "'recognition' means the entry of an order granting recognition of a foreign main proceeding or a foreign nonmain proceeding under this chapter." 11 U.S.C. § 1502(7). A "foreign main proceeding" is "a foreign proceeding pending in the country where the debtor has the center of its main interests ("COMI")." 11 U.S.C. § 1502(4). A "foreign nonmain proceeding" is a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). Pursuant to section 1502(2), an "establishment" is "any place of operations where the debtor carries out a nontransitory economic activity."

When determining whether a petition satisfies the definitions of a "foreign main proceeding" or a "foreign nonmain proceeding," courts look to the *present state* of affairs, not what has occurred in the past. The District Court in *Lavie v. Ran* squarely addressed this issue:

> However, the statute speaks in the present tense, noting that a foreign nonmain proceeding can exist where a debtor *"has* an establishment." 11 U.S.C. § 1502(5) (emphasis added). Likewise, Section 1502(2) refers to an establishment as "any place of operations where the debtor *carries* out a nontransitory economic activity." 11 U.S.C. § 1502(2) (emphasis added). **The use of the present tense implies that the court's establishment analysis should focus on whether the debtor has an establishment in the foreign country when the foreign representative files for recognition under Chapter 15.**

406 B.R. 384-85 (emphasis added). The Court confirmed this standard at the Hearing, noting that "the question that we're dealing with [is] the facts as they exist today." Tr. at 15-16.

The determination of whether a foreign liquidation proceeding is entitled to recognition under Chapter 15 of the Bankruptcy Code is governed by Judge Lifland's decision in *Bear Stearns*. The Court clearly announced that that decision represented "the applicable authority that I'm guided by, and I will be guided by Judge Lifland's decision in *Bear Stearns*, which is also, as I understand it, viewed by the authors of Chapter 15 as being right on the money in terms of the analysis…[i]t's a case that properly interprets Chapter 15 as it relates to main and nonmain proceedings." Tr. at 17.

*Bear Stearns* highlighted certain factors in evaluating whether a Cayman Islands liquidation proceeding was entitled to recognition under Chapter 15. First, to determine whether

the foreign proceeding qualified for recognition as a foreign main proceeding, the court evaluated certain factors to determine where the debtor's COMI was located.[9] *Bear Stearns,* 374 B.R. at 129-30. Section 1516(c) provides a presumption that a foreign debtor's country of registration is their COMI; however, this is merely a rebuttable presumption, which holds true only "[i]n the absence of evidence to the contrary." *Id.* at 128; 11 U.S.C. § 1516(c).

In determining what "evidence to the contrary" was required to rebut a finding that a foreign debtor's COMI was located in its country of registration, the court set forth a basic set of criteria. *Bear Stearns*, 374 B.R. at 130. In particular, the court looked to the location of company personnel, including those who worked for, and actually managed, the company, employees, advisors, and administrators. *Id.* Next, the court considered the location of the company's assets and the location at which the company maintained its books and records. *Id.* Further, the court looked at the transactions of the company and weighed the location of counterparties to its transactions. *Id.*

Here, the facts that bear upon the recognition petition are the following:

1. Lehman Re is wholly owned by Lehman Brothers Holdings Inc. (together with certain of its subsidiaries, "Lehman") (Declaration of Petitioner Mitchell dated August 6, 2009, ("Mitchell Decl.") ¶ 6; Verified Petition, ¶ 9);

2. Lehman Re's operations were run by Lehman out of New York (Mitchell Decl. ¶ 6);

3. Lehman Re's operating books and records were maintained and retained by Lehman in New York (Verified Petition ¶ 25, 34);

4. Lehman Re's business effectively ceased as soon as Lehman stopped funding it, (Verified Petition ¶14, 18);

5. Lehman Re has no employees in Bermuda, (Verified Petition ¶ 10);

---

[9] "As Judge Lifland noted, the "center of main interests" concept derives from the European Union Convention on Insolvency Proceedings ("EU Convention"), already in the process of adoption when the Model Law was drafted." 374 B.R. at 129. As District Judge Sweet added, "[t]he regulation adopting the EU Convention explains that "center of main interests" means "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." Council Reg. (EC) No. 1346/2000 ¶ 13." *Bear Stearns,* 389 B.R. at 336.

6. The properties subject to Lehman Re's liens and the securities subject to a repo with LCPI are all located within the United States (Mitchell Decl. ¶ 12; Verified Petition ¶ 24); and

7. Petitioners have not identified a single asset that Lehman Re owns that is not located in the United States, other than a single bank account. (Verified Petition ¶ 21). It is not clear why these funds are located in Bermuda or when they arrived there.

In addition, attached as Exhibit D is a table comparing the relevant facts in Bear Stearns to those here.

Applying the relevant facts present here to the analysis set forth in *Bear Stearns* precludes this Court from a finding that Lehman Re's COMI was in Bermuda, its country of registration. As in *Bear Stearns*, the presumption here has been rebutted by clear and strong evidence to the contrary. Clearly, Lehman Re's COMI is in the United States.

In recognition of the fact that it presently has no employees or business in Bermuda, Petitioners attempt to distinguish the denial of recognition in *Bear Stearns* by erroneously referring to how and where Lehman Re purportedly conducted business *in the past*. As discussed above, only the present matters, and at the filing of the Verified Petition, no business was conducted in Bermuda. Indeed, the Court so noted during the Hearing, commenting that "it doesn't appear that there's any substantial presence in Bermuda other than winding up." Tr. at 16.

The Bermuda Proceeding is also not entitled to recognition as a foreign nonmain proceeding. As noted by the District Court, "[t]he existence of an "establishment" is essentially a factual question, with no presumption in its favor." *Bear Stearns*, 389 B.R. at 338. To establish status as a foreign nonmain proceeding, Petitioners would need to set forth facts that establish that it "had a 'place of operations'" in Bermuda that "carried out 'nontransitory economic activity.'" *Id*. at 338-39; *see also* 11 U.S.C. § 1502(2). Lehman Re has failed to do so. Presently, it has no operations, and its prior operations were solely in the United States.

Indeed, there is no evidence that Lehman Re ever conducted "nontransitory economic

activity" in Bermuda.  To the contrary, the evidence suggests that a mere skeleton crew was maintained in Bermuda, even at the height of its business.  Substantially all of its real operations and assets remained in New York.  Today, it conducts no business at all in Bermuda.  On these facts, recognition must be denied, and no injunctive relief may be granted.

Moreover, even if this Court were inclined to grant recognition to the Bermuda Proceeding as a foreign nonmain proceeding, pursuant to Section 1521(c), no relief may be granted, by injunction or otherwise,  relating to any of the assets located in California and involved in the SunCal Adversary.  As the District Court in *Bear Stearns* correctly articulated, "section 1521(c) of the Bankruptcy Code limits the scope of relief available in a nonmain proceeding to relief related to *assets located in the nonmain jurisdiction* or closely connected thereto, while a plenary bankruptcy proceeding where the Funds are located would control the Funds' principal assets."  *Bear Stearns*, 389 B.R. at 339 (emphasis added).  Here, the asset at issue is not located in Bermuda; it is located in California and must remain subject to the SunCal Adversary, a plenary bankruptcy proceeding where that asset is located.

The picture presented by these facts is indisputable: Lehman Re presently has no business or employees and the only "asset" located in Bermuda is one bank account. Bermuda is neither the "center of its main interests," since no business is being conducted there, nor a place where the "debtor has an establishment within the meaning of section 1502." 11 U.S.C. § 1517.

Therefore, the Bermuda Proceeding is not entitled to recognition under Chapter 15.


### III.

### THERE IS NO BASIS FOR INJUNCTIVE RELIEF UNDER 11 U.S.C. §1521(A)

This petition seeks permanent injunctive relief pursuant to 11 U.S.C. §1521(a). Section 1521(a) states in relevant part:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and *to protect the assets of the debtor or the interests of the creditors*, the court may, at the request of the foreign representative, grant any appropriate relief, including--

> (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a) ….

11 U.S.C. § 1521(a). (emphasis added).  Thus, the threshold requirements for injunctive relief are the recognition of a foreign proceeding and a determination that such relief is necessary "to protect the assets of the debtor or the interests of the creditors."  As set forth above, recognition should not be granted here, and, as Petitioner Hunter already testified, the administration of the Lehman Re estate and the protection of the interests of its creditors require the resolution of the SunCal Adversary, and not a permanent stay of that proceeding.  Further, Petitioners cannot establish any of the additional elements necessary for injunctive relief.

Therefore, Petitioners' request for injunctive relief is fatally flawed and must be denied.

A.  **This Court Should Not Grant the Permanent Injunction Because Relief is Not Needed to Protect the Assets of the Debtor or the Interests of the Creditors.**

To warrant the grant of injunctive relief, such relief must be necessary to protect the assets of the debtor or the interests of creditors.  11 U.S.C. § 1521(a).  However, injunctive relief here would have the precise opposite effect.

At the Hearing, Petitioner Hunter conceded in his testimony that resolution of the SunCal Adversary was necessary for the administration of the Bermuda Proceeding:

**Q. You talked about being concerned about engaging counsel and being involved in these various litigations. Let's take the Pacific Point or a SunCal litigation as an example. To ultimately determine what assets you had to be able to distribute them to creditors, don't you have to resolve that litigation?**

**A. We have to understand what the circumstances are. I don't have the knowledge of the litigation. We have very little knowledge about the circumstances of that**

**Q. Let me ask the question again. Do you understand there is a dispute?**

**A. Yes.**

**Q. And don't you have to resolve that dispute before you can effectively take the property and sell it and be able to distribute the proceeds?**

**MS. BAGBY: Objection, Your Honor. That calls for a legal conclusion.**

**THE COURT: Well, here's -- I'm going to overrule that objection. The question's really a basic one, which is, you have an asset which is tied up in litigation somewhere; don't you have to resolve that litigation in order to extract whatever value there is to extract? And that's really the question.**

**MR. ZELMANOVITZ: Thank you, Your Honor.**

**A. I think that's a fair comment, yes.**

Tr. at 79-80.

Further, litigating the SunCal Adversary in the Bankruptcy Court in New York is not appropriate. Well settled law dictates that actions affecting real property must be brought in the jurisdiction where the subject property is located. *See Casey v. Adams*, 102 U.S. 66, 67-68, 26 L. Ed. 52 (1880) (Suits over real property "are in the nature of suits *in rem*, and are to be prosecuted where the thing on which they are founded is situated."); *see also* Moore's Federal Practice § 110.20 (2009) (Suits over real property "must be brought in the district in which the real property is located that is the subject of the suit."). Beyond the location of the property, which itself is decisive, basic principles of law governing venue also provide that the appropriate forum for the SunCal Adversary is California. Generally, to determine the proper venue for an action, courts "must consider: (1) where all material events took place; (2) where records and witnesses pertinent to the petitioner's claim are likely to be found; and (3) the relative convenience of the forum for the parties." *Henderson v. INS*, 157 F.3d 106, 128 n.25 (2d Cir. 1998).

Here, the property at the center of the SunCal Adversary is located in California. Key witnesses and evidence are also located in California. That forum is also convenient for all parties; Lehman Re has already submitted to the California Bankruptcy Court's jurisdiction.

This Court should not allow Petitioners to circumvent these well-settled rules. Petitioners should resolve this matter in California, not New York. Thus, the assets of Lehman Re and the interests of its creditors require that injunctive relief be denied.

B. **Lehman Re has Not Established the Elements Necessary for a Permanent Injunction.**

Relief under §1521(a) is subject to the "standards, procedures, and limitations applicable to injunctive relief." 11 U.S.C. § 1521(e). Accordingly, Petitioners must also establish the standard elements necessary for a permanent injunction. See *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 859 (Bankr. C.D.Cal. 2008). Here, Petitioners have failed to do so.

The standard to determine whether a permanent injunction should issue is the same standard required to obtain a preliminary injunction, with the notable exception that the plaintiff must establish actual success on the merits, rather than a mere likelihood. *See, e.g., Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007) ("'The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.'") (*quoting Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)). The Supreme Court recently set forth the four-factor test that a petitioner must satisfy in order to be entitled to the extraordinary remedy of permanent injunctive relief:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2007).

Here, Petitioners cannot establish any of the standards for a permanent injunction.

1.      **There is No Evidence of Irreparable Harm to the Estate in the Absence of an Injunction.**

Petitioners cannot satisfy their burden of proving that they will suffer irreparable harm if this Court does not enjoin the SunCal Adversary.  Petitioner Hunter conceded in his testimony that to complete the Bermuda Proceeding, Petitioners must resolve the dispute that is subject to that litigation.  Tr. at 79-80.  As set forth above, Lehman Re's purported agent, Lehman ALI, has appeared and actively litigated in the SunCal Adversary. Moreover, Petitioners clearly have able counsel in the United States.  Accordingly, the Petitioners cannot establish imminent and irreparable harm.  Indeed, permanently staying the SunCal Adversary will cause the irreparable harm that Petitioners purportedly seek to avoid.

Further, to the extent that Petitioners advance the argument that the costs associated with that litigation are a form of irreparable harm, that argument must fail.

The general costs associated with litigation in the ordinary operation of a business do not provide adequate grounds to find the irreparable harm needed for a court to issue an injunction. *In re Chateugay Corp.,* 76 B.R. 945 (S.D.N.Y. 1987) (finding that "Congress has implicitly recognized, however, that litigation expenses alone do not justify a stay of a proceeding."); *see also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S. Ct. 1028, 1040, 39 L. Ed. 2d 123 (1974) (holding that in the administrative context, that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

Petitioners have shown no harm that would result if this Court did not enjoin the SunCal Adversary beyond the costs generally associated with ordinary course litigation.  Indeed, as the Court noted, those expenses are quite likely less costly than those being incurred by Petitioners in this Chapter 15 proceeding.  Tr. at 30 ("[T]he legal effort associated with this Chapter 15 Proceeding, I would wager, is a multiple of the effort that would be associated with answering that complaint as a 'me, too' party defendant.").

As evidenced by the legal efforts displayed in this matter and their associated costs, Petitioners are clearly not averse to spending money on litigation expense. Further, as Petitioner Hunter acknowledged in his testimony at the Hearing, the SunCal Adversary must be resolved in order for Lehman Re to complete the Bermuda Proceeding and that, of course, entails the occurrence of associated expense. Such normal costs associated with winding up the affairs of Lehman Re's business do not constitute irreparable injury sufficient to satisfy the necessary element of a permanent injunction.

2.      **<u>Petitioners Have an Adequate Remedy at Law.</u>**

Petitioners have set forth no evidence to demonstrate that no adequate remedy at law exists. To the contrary, if Petitioners resolve the SunCal Adversary, they will be able to administer the Lehman Re estate and resolve the Bermuda Proceeding. Thus, the expense of the litigation appears to be both necessary and vital to the liquidation of its estate. Further, if Petitioners suffer damages as a result of incurring expenses related to the SunCal Adversary, the amount of damages related to these expenses will be readily ascertainable and easy to calculate. *See e.g. Conn. Res. Recovery Auth. v. Occidental Petroleum Corp.*, 705 F.2d 31, 37 (2d. Cir 1983) (upholding denial of injunctive relief because expenses and payments made to operate business were readily ascertainable, and, therefore, money damages (an adequate remedy at law) would adequately compensate for any loss.).

In fact, the proof of secured claim filed on behalf of Lehman Re in the SunCal Debtors' cases tacitly acknowledged that Petitioners have an adequate remedy at law. The proof of claim includes a claim for fees and expenses and expressly reserves the right "to amend, modify and/or supplant" the claim with additional claims for "fees and related expenses (including attorneys' fees)." *See* Exhibit B, at pp. 4-5. Thus, Petitioners clearly have an adequate remedy at law for the only alleged damages that they have identified -- additional expenses and attorneys' fees.

3. **There is No Evidence that the Balance of Harms Tips in Favor of the Moving Party or that the Public Interest Weighs in Favor of an Injunction.**

In this case, the balance of harms favors SJD Partners and the SunCal Debtors. As a pragmatic matter, the SJD Partners estate must be administered before any claimants, including Lehman Re, can obtain a recovery therefrom. Enjoining the equitable subordination action as against Lehman Re will frustrate efforts to complete the administration of the SJD Partners' estate, and effectively thwart the ability to provide any recovery to creditors therefrom.

Further, the SunCal Debtors already have spent significant time and money litigating with LCPI and Lehman ALI (Lehman Re's agent) with respect to the applicability of the automatic stay to the equitable subordination action. They are being harmed and will continue to be harmed if they have to relitigate that issue here. Enjoining the SunCal Adversary will not expedite or facilitate the Bermuda Proceeding. *The status of Lehman Re's claims and liens must be determined __before__ the underlying property can be disposed*. Thus, staying the SunCal Adversary benefits neither party. It simply impairs the SunCal Debtors' rights to a greater degree than Lehman Re.

Evaluation of the public interest factor of the analysis "requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests." *Calpine,* 365 B.R. at 413. Here, it is SJD Partners and the SunCal Debtors that are seeking to reorganize, not Lehman Re. Lehman Re is liquidating its assets. The California Bankruptcy Court is attempting to administer the SJD Partners' estate, including Lehman Re's interest in property of the estate. There is simply no public policy interest in enjoining the California Bankruptcy Court from performing its administration of the estate. The interests of SJD Partners' estate and creditors simply outweigh Lehman Re's self-serving desire for delay.

Moreover, the Petitioners' proposed injunction potentially violates the Collateral Order Doctrine. As set forth above, the California Bankruptcy Court has already ruled that an action to

equitably subordinate liens and claims of a creditor asserted against a Chapter 11 debtor's estate is not subject to the automatic stay of the lienholder/claimant's own Chapter 11 case.

Public policy does not favor forum shopping. Relief under Chapter 15 will not be granted where, the party seeking the relief is engaged in forum shopping. *In re SPhinX, Ltd.*, 371 B.R. 10, 18 (S.D.N.Y. 2007). Circumstances such as those present here support denial of recognition on the ground that the recognition is being sought for an improper purpose. *See, e.g., Baker v. Latham Sparrowbush Assocs.*, 931 F.2d 222, 228 (2d Cir. 1991) (finding that an entity may not file a Chapter 11 petition "which is solely designed to attack a judgment collaterally"); *In re Rimsat, Ltd.*, 98 F.3d 956, 962 (7th Cir. 1996) (declining to defer to a foreign proceeding as "instituted in an effort to defeat" a U.S. bankruptcy proceeding and "strategic conduct that is not be encouraged").

Rather than directly attack the California Bankruptcy Court's ruling by participating in the appeal as they are required to do, Petitioners are attempting a circuitous "collateral attack." This course of action is prohibited. *Celotex Corp. v. Edwards*, 514 U.S. 300, 305-07, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). This rule has been applied to bankruptcy orders for more than 60 years. *See Celotex*, 514 U.S. at 305-07, 115 S.Ct. at 1498; *Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929) (holding that a bankruptcy turnover order could not be collaterally attacked in a later contempt proceeding brought to enforce it).

Clearly, the Petitioners' requested relief could result in inconsistent rulings between the courts, and raises the specter of forum shopping. Accordingly, the public interest weighs heavily against the proposed injunction.

4.      **Petitioners Cannot Succeed on the Merits - - Injunctive Relief Would Prevent the Successful Administration of the Lehman Re Estate.**

Injunctive relief cannot be granted because it would stymie the very success on the merits that is a prerequisite for such relief. That success – the completion of the administration of the Lehman Re estate in the Bermuda proceeding – requires that the dispute that is the subject of the

SunCal Adversary be resolved. This was conceded by Petitioner Hunter at the Hearing. *See* pp. 15-16, *supra*.

As set forth above, the California Bankruptcy Court is the proper and only practical venue for the resolution of that dispute. Enjoining the SunCal Adversary would effectively prevent the Petitioners from completing successfully the administration of the Lehman Re estate. Accordingly, Petitioner cannot satisfy the "success on the merits" requirement for injunctive relief.

C. **This Court Should Not Grant the Permanent Injunction Because It is an Improper Collateral Attack.**

The California Bankruptcy Court has already held that a creditor's automatic stay does not apply with respect to defensive acts in the form of either a claim objection or equitable subordination proceeding. Lehman Re is in *exactly the same position* as LCPI with regard to the relief it now seeks via an injunction. It has sought affirmative relief from the SunCal Debtors by filing a proof of claim based on its interest in the Pacific Point Project. As such, the SunCal Debtors have named Lehman Re as a defendant on the equitable subordination claim only. No other relief is sought against Lehman Re.

The Petitioners' attempt to have this Court issue an injunction, staying the equitable subordination action from proceeding against Lehman Re, is a blatant collateral attack on the California Bankruptcy Court's ruling that a debtor can defend against a creditor's claim via equitable subordination without violating the creditor's own stay.[10]

Lehman Re's proposed injunction is also an attempt to circumvent the Ninth Circuit Bankruptcy Appellate Panel from ruling on this issue. This is forum shopping of the worst kind: Lehman Re knew it had filed a claim against a debtor in the California Bankruptcy Court, and

---

[10] As set forth above, case law in this Circuit clearly recognizes that an equitable subordination action is defensive in nature and does not violate the policy or purpose of the automatic stay. It is well established in both the Second Circuit and the Ninth Circuit, that the automatic stay is not applicable where the debtor is acting in the capacity of a plaintiff or creditor. *See* cases cited in footnote 6, *supra*. Accordingly, a party may defend against the claims of a debtor, whether by a claim objection or a subordination proceeding, without violating the automatic stay.

knew it had already involved itself in those proceedings. But rather than submit itself to the jurisdiction of the California Bankruptcy Court, which had already issued an adverse ruling, Lehman Re improperly sought to take a second bite-of-the-apple by seeking an injunction here in New York. *See Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1392-1393 (9th Cir. 1987) ("To allow a district court to grant injunctive relief against a bankruptcy court or the district court in the underlying bankruptcy case would be to permit, in effect, a 'horizontal appeal' from one district court to another or even a 'reverse review' of a ruling of the court of appeals by a district court. Such collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper.")

If the injunction sought by Petitioners is obtained, there is a very real possibility of inconsistent rulings regarding similarly situated parties. The Ninth Circuit Bankruptcy Appellate Panel may well affirm the California Bankruptcy Court's ruling. In that case, the equitable subordination action could proceed against LCPI, but not Lehman Re, solely because Lehman Re managed to have a different judge decide the issue.

The better course of action is to deny the proposed injunction or, alternatively, to tailor any injunctive relief narrowly, so that it does *not* extend to the SunCal Adversary.

D.      **This Court Should Not Grant the Permanent Injunction Because Injunctive Relief Should Not Lie Against SunCal's Defensive Action.**

It is well established that defensive acts do not violate the policy or purpose of the automatic stay. In the case of *In re Metiom,* 301 B.R. 634, 638-39 (Bankr. S.D.N.Y. 2003), the Court held that the automatic stay did not apply to a claim objection or a proceeding to *equitably subordinate* a claim filed by another bankruptcy estate (Intira/Divine). In *Metiom*, the Trustee objected to a claim based upon §502(d) and sought in the alternative to subordinate the claim under Section 510(c), but otherwise waived affirmative relief against the other bankruptcy estate. In rejecting Intira/Devine's contention that the stay applied, the court held:

By waiving affirmative relief, the Trustee has expressly not attempted "to recover a claim against the debtor," 11 U.S.C. § 362(a)(1), or "to obtain possession of property of the estate or of property from the estate" of Divine. 11 U.S.C. § 362(a)(3). Accordingly, the only provision of section 362(a) of the Bankruptcy Code arguably implicated by the Claim Objection is section 362(a)(3)'s stay of "any act to ... to exercise control over property of the estate."

However, this provision of section 362(a)(3) does not apply, either, because the Trustee merely is proceeding defensively--not asserting a counterclaim--in objecting to the Claim. The Trustee is not exercising control over Divine's property but, rather, simply is responding to a proof of claim filed in Metiom's chapter 11 case. Neither the language nor the policy of section 362(a)(3) apply in that context ….

*Metiom*, 301 B.R. at 638-39; s*ee also In re Financial News Network*, 158 B.R. 570 (S.D.N.Y. 1993) ("In sum, both the language and purpose of section 362 indicate that the automatic stay in effect in the Bankruptcy Court for the Southern District of California did not preclude the New York Bankruptcy Court from sustaining FNN's objection to Kaypro's proof of claim filed in New York Bankruptcy Court."); *In re Bousa*, No. 93 Civ. 4492, 2005 WL 1176108, at *4 (S.D.N.Y. May 17, 2005) ("[§ 362(a)] only applies to claims 'against the debtor,' that is, claims where the debtor is in a defensive posture. To the extent that the debtor has itself brought the claim, the automatic stay provision does not preclude adjudication.").

For the same policy reasons, the Court should not enjoin SJD Partners' equitable subordination proceeding against Lehman Re.  SJD Partners is acting merely in a defensive capacity with respect to the administration of Lehman Re's claim – now the Petitioners' claim - asserted against the SJD Partners estate.  The California Bankruptcy Court must prioritize claims against the SJD Partners estate; an injunction by this Court would improperly undermine the California Bankruptcy Court's ability to do so and its administration of the estate.

E.  **This Court Should Not Grant the Permanent Injunction Because Petitioners Failed to Commence an Adversary Proceeding.**

Injunctive relief requires the commencement of an adversary proceeding under Bankruptcy Rule 7001.  This is equally applicable to injunctive relief under Section 1521.

11 U.S.C. § 1521(e) ("The standards, procedures, and limitations applicable to an injunction shall apply to relief under this section.").

Case law recognizes that an injunction under Section 1521 requires the commencement of an adversary proceeding. *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 860-61 (Bankr. C.D.Cal. 2008)(joint administrators' request for a stay of execution required an adversary proceeding.); *In re Loy,* No. 07-51040-SCS, 2008 WL 906503, at *7 (Bankr. E.D.Va. Apr. 3, 2008) (foreign representative's request for declaratory relief required initiation of an adversary proceeding).[11] Although based on Section 1519, the holdings from these cases apply with equal force here because an injunction under Section 1521(a) is modified by the standard contained in Section 1521(e), which mirrors the standard set forth in Section 1519(e). Therefore, this procedural requirement precludes the grant of injunctive relief here.

---

[11] *See also* COLLIER ON ANCILLARY AND OTHER CROSS-BORDER INSOLVENCY CASES UNDER CHAPTER 15, Section 6 (2009), which states:

> The legislative history notes that the standards to be applied to such a request are those set out in Rule 7065, which itself is located within the adversary rules. Moreover, Interim Rule 1010 (enacted as a local rule in most jurisdictions) calls for the issuance of a summons if the proceeding is a nonmain proceeding. These rules suggest that the format of the pleading will resemble a lawsuit, in which potentially affected parties are named as 'defendants' or 'respondents.' Finally, Rule 7001 states that the adversary rules apply to an action in which injunctive relief is sought …. It is nonetheless arguable that an adversary proceeding, including its requirement for service of process pursuant to Rule 4 of the Federal Rules of Civil Procedure, is in fact required, because of the explicit statement in section 1519(e) that the procedures applicable to an injunction apply to relief under section 1519.

## **CONCLUSION**

As set forth above, the Petitioners have failed to establish their entitlement to permanent injunctive relief and have not met the applicable standards required for recognition under Chapter 15.  Therefore, their petition must be denied, and in any event, their application for permanent injunctive relief under Section 1521(a) must be rejected.


Dated: New York, New York
      September 1, 2009

Respectfully submitted,


/s/ Andrew D. Gottfried
Andrew D. Gottfried
Menachem O. Zelmanovitz
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:   (212) 309-6001

Paul J. Couchot
Sean O'Keefe
WINTHROP COUCHOT
PROFESSIONAL CORPORATION
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone:  (949) 720-4100
Facsimile: (949) 720-4111

*Co-Counsel for the SunCal Debtors*