**Hearing Date and Time: September 15, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
-------------------------------------------------------------------x

## DEBTORS' OBJECTION TO MOTION OF LANDWIRTSCHAFTLICHE RENTENBANK FOR ORDER PROVIDING FOR EXAMINATION AND PRODUCTION OF DOCUMENTS BY DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing

Inc. ("LBSF") and their affiliated debtors in the above-referenced chapter 11 cases (collectively,

the "Debtors"), for their objection to the motion of Landwirtschaftliche Rentenbank

("Rentenbank"), dated August 14, 2009 (the "Motion"), for an order providing for examination

and production of documents by LBHI and LBSF pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully represent:

## I.
## Preliminary Statement

1.       The Motion represents an abuse of Bankruptcy Rule 2004.  It is simply
Rentenbank's desperate attempt to delay entry and enforcement of a judgment in the United
Kingdom for payment of approximately $40 million Rentenbank concedes it owes to LBSF
under a swap master agreement (the "Master Agreement").  Rentenbank itself, as early as
September 16, 2008 (following early termination of the Master Agreement as described more
fully below), calculated the amount due and *conceded that it owes LBSF* $39,032,728 as an early
termination payment (the "Termination Payment") for transactions terminated under the Master
Agreement.  Yet nearly a year has passed, and Rentenbank has refused to make the conceded
Termination Payment to LBSF.

2.       On June 23, 2009, LBSF commenced an action against Rentenbank (the
"Turnover Action") in the High Court of Justice, Queen's Bench Division, Commercial Court
(the "English Court") for, among other things, turnover of the Termination Payment and
applicable interest.  Rentenbank answered the complaint, conceding that the Termination
Payment is due to LBSF.

3.       Notwithstanding that it does not dispute the Termination Payment owing
to LBSF, Rentenbank has requested the English Court stay the enforcement of a judgment in the
Turnover Action because, as Rentenbank contended to the English Court, Rentenbank "may"
have a possible defense to LBSF's demand on account of a guarantee claim Rentenbank
allegedly holds against a different Debtor, LBHI, based upon a €30,000,000 credit facility that
Rentenbank extended to Lehman Brothers Bankhaus AG ("LBB"), an LBHI subsidiary in
liquidation in Germany, whose obligations were purportedly guaranteed by LBHI.  Rentenbank
believes – mistakenly – that it "may" establish mutuality, for the purpose of creating an

impermissible triangular setoff, of its guarantee claim against LBHI against its obligations to make the Termination Payment to LBSF.

4.    The Motion should be denied on numerous separate grounds as a clear misapplication of Bankruptcy Rule 2004 and a meritless attempt to bless Rentenbank's failure to make payment in clear violation of the automatic stay.  First, Rentenbank seeks impermissibly to use Bankruptcy Rule 2004 to conjure a contingent defense to the Turnover Action, rather than to assert its rights as a party in interest in these cases.  Second, Rentenbank is not entitled to discovery in the English Court on its hypothetical and contingent setoff defense.  Hence, seeking Bankruptcy Rule 2004 discovery by way of the Motion is an end-run around an existing prohibition on discovery in the Turnover Action, which if permitted, would create benefits for Rentenbank in the Turnover Action that it could not otherwise obtain under English law.

5.    Third, Rentenbank's strategy is inherently flawed.  The law is clear: to create a valid setoff right under section 553(a) of the Bankruptcy Code, the claims and debts must be mutual, prepetition and enforceable obligations.  11 U.S.C. § 553(a).  Rentenbank does not, and cannot, hold a claim against LBSF that it may setoff against the Termination Payment.  At best, Rentenbank asserts that it may be able to utilize its contingent guarantee claim against LBHI as a setoff against the amount it owes LBSF if, and only if, either LBSF and LBHI are determined to be alter egos by veil piercing or if LBHI and LBSF's estates are substantively consolidated.  As a matter of law, however, Rentenbank lacks standing to assert a claim for alter ego or piercing of LBSF and LBHI's corporate veils.  Under well-settled precedent in this and other circuits, only a debtor on possession may prosecute a cause of action for alter ego or corporate veil piercing.  *See* ¶ 29 *et. seq.*  Any attempt by Rentenbank to assert a claim belonging to the Debtors would constitute a further violation of the automatic stay.  Rentenbank is not

entitled to Bankruptcy Rule 2004 discovery in the attempt to develop a defense to the Turnover

Action.

6.       Similarly, Rentenbank's assertion that the Debtors' estates may at some

time in the future be substantively consolidated is not a defense to the Turnover Action and could

not, in any event, create mutuality for purposes of setoff.  At this juncture in the administration

of the chapter 11 cases, any issues as to substantive consolidation should be reserved for the

consideration of the Debtors, the official Creditors' Committee and the development of potential

plans of reorganization, and should not be used by Rentenbank to circumvent its conceded debt

of approximately $40 million to LBSF.

7.       For the reasons set forth more fully below and the Declaration of Matthew

Shankland (the "Declaration") filed concurrently in support of this objection, the 2004 Motion

should be denied.

## II.
## Background

8.       On January 9, 1996, LBSF and Rentenbank entered into (i) the Master

Agreement based on the 1992 multicurrency cross-border master agreement general terms

promulgated by the International Swaps and Derivatives Association, Inc., and (ii) a schedule

thereto that sets out the specific terms agreed to between the parties (the "Schedule").  A credit

support annex to the Schedule was entered into by the parties on the same day (the "Credit

Support Annex"), pursuant to which LBSF posted collateral in respect of its obligations under

the Master Agreement and the Schedule.  Pursuant to paragraph 4(g) of the Schedule, LBHI is a

credit support provider for purposes of the Master Agreement.

9.       On July 28 and August 25, 2003, LBSF and Rentenbank entered into

transactional confirmations (the "Confirmations," collectively with the Master Agreement, the

Schedule and the Credit Support Annex, the "Agreement") that set out the terms upon which the specific swap transactions were to be carried out.  The Agreement was amended on July 28, 2004 and February 26, 2007.  A copy of the Agreement, as amended, is attached to the Declaration as Exhibit A.  Pursuant to the second amendment, the Agreement is governed by English law.

10.    On September 15, 2008, LBHI commenced with this Court a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On October 3, 2008, LBSF commenced with this Court a case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.    Pursuant to section 5(a)(vii) of the Master Agreement, the chapter 11 filings of LBHI and LBSF constituted Events of Default[1] under the Master Agreement, which permitted Rentenbank to declare an Early Termination Date and to calculate a termination payment.  *See* Master Agreement §§ 6(d)(i) and 6(e).

12.    By letter, dated September 15, 2008, Rentenbank gave notice and declared the occurrence of an Early Termination Date.  A copy of the termination letter is attached to the Declaration as Exhibit B.  On September 16, 2008, Rentenbank provided a statement (the "Calculation Statement") to LBSF calculating the early termination amount in respect of the Agreement.  A copy of the Calculation Statement is attached to the Declaration as Exhibit C.  Pursuant to Rentenbank's own calculation, it owes LBSF at least $39,032,728, representing excess collateral posted by LBSF under the Agreement.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Master Agreement.

13.     LBSF has made repeated demands to Rentenbank for the Termination Payment plus applicable interest.  Nearly a year has passed since Rentenbank calculated and acknowledged the Termination Payment, but Rentenbank has not yet made payment to LBSF.

14.     LBSF commenced the Turnover Action in the English Court, on June 23, 2009, demanding, among other things, payment of $39,032,728 in principal payment due, $4,433,132.98 in interest from September 16, 2008 through June 23, 2009, plus applicable default interest.  A copy of LBSF's particulars of claim (the "Particulars of Claim"), the equivalent of a complaint, is attached to the Declaration as Exhibit D.

15.     On August 17, 2009, Rentenbank entered a defence (the "Defence"), the equivalent of an answer, to LBSF's Particulars of Claim, fully conceding that it prepared and sent the Calculation Statement to LBSF.  *See* Defence, attached to the Declaration as Exhibit E, ¶ 10.  In connection with its Defence, on August 17, 2009, Rentenbank also filed a request with the English Court for a stay of the Turnover Action or any judgment entered therein.  *See* Witness Statement of Rodney Russell Baker ¶¶ 17-19, attached to the Declaration as Exhibit F.

16.     Rentenbank continues to withhold the Termination Payment to LBSF contending that it "may" have a setoff defense of its purported claim against LBHI – not LBSF – of €30,000,000 in respect of LBHI's guarantee of LBB's obligations under a prepetition credit facility extended to LBB by Rentenbank.  *See* Defence ¶ 10, 14; Motion ¶¶ 6-7.

17.     On September 2, 2009, LBSF filed a motion for summary judgment in the Turnover Action (the "Summary Judgment Motion").  A copy of the Summary Judgment Motion is attached to the Declaration as Exhibit G.  In support of its Summary Judgment Motion, LBSF filed a Witness Statement of Matthew Shankland demonstrating that no dispute of fact exists and that trial is unnecessary.  The Witness Statement is attached to the Declaration as Exhibit H.

18.    Because Rentenbank does not contest the validity, enforceability or amount of LBSF's demand for the Termination Payment, LBSF believes that the English Court should and will summarily grant the Summary Judgment Motion.  *See* Defence ¶ 10 (conceding that Rentenbank provided the Calculation Statement and stating, as the *only* potential defense, "depending on the outcome of certain proceedings in the United States…Rentenbank *may* have a substantive defence to LBSF's allegation that the sums claimed by LBSF are due and owing….") (emphasis added).

19.    In the current procedural posture of the Turnover Action, Rentenbank is not entitled to discovery under English law.  *See* Declaration ¶¶ 16-22.  There are no issues for trial and no discovery is likely to be permitted by the English Court.  *See generally* Declaration ¶¶ 13-29 (explanation of discovery rules under English law).

### III.
### The Motion Seeks Discovery for Improper Purposes for Rentenbank to Pursue Defenses to the Turnover Action that Must Fail as a Matter of Law

20.    Having never asserted a right of setoff or sought permission to withhold property of the estate from LBSF in this Court,[2] and notwithstanding the prohibitions on discovery in the Turnover Action under English law, Rentenbank now seeks relief from this Court under Bankruptcy Rule 2004 in a bold attempt to gain leverage in the Turnover Action and further delay payment of amounts admittedly owed to LBSF.

21.    Rentenbank acknowledges, as it must, that it lacks a right of setoff because the debt Rentenbank owes to LBSF and the claim Rentenbank asserts against LBHI are not "mutual" under section 553(a) of the Bankruptcy Code.  *See* Motion ¶¶ 20-21.  That is,

---

[2] The Debtors reserve the right to seek to hold Rentenbank in violation of the automatic stay for failure to turnover undisputed property of the estate or to move promptly for relief from the automatic stay to effect a setoff.  *See* 11 U.S.C. § 362(a)(3) and (7).

Rentenbank seeks to setoff the Termination Payment due to LBSF against a guarantee claim it asserts against LBHI – a classic, unenforceable triangular setoff. *See, e.g., In re Semcrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009) (citing *Sherman v. First City Bank of Dallas (In re United Sciences of America, Inc.)*, 893 F.2d 720, 723 (5th Cir. 1990) ("The mutuality requirement is designed to protect against 'triangular' set-off…where the creditor attempts to set off its debt to the debtor with the latter's debt to a third party.")); *Elcona Home Corp. v. Green Tree Acceptance, Inc. (In re Elcona Homes Corp.)*, 863 F.2d 483, 486 (7th Cir. 1988) ("the statute itself speaks of 'a mutual debt' . . . and therefore precludes 'triangular' set offs")).

22.     Recognizing that it lacks mutuality to effect such a setoff, Rentenbank seeks to conduct a fishing expedition under Bankruptcy Rule 2004 in an attempt to create a basis of avoiding judgment in the English Court through either a piercing of the corporate veil or substantive consolidation of the Debtors so that it may claim the requisite mutuality.  Bankruptcy Rule 2004 is not for the purpose of assisting a litigant in an existing plenary action to establish a specific possible defense.

## IV.
## Rentenbank Should Not be Permitted to Use Bankruptcy
## Rule 2004 to Delay Entry and Enforcement of a Judgment in the Turnover Action

23.     "However vigorous and broad discovery may be under a Rule 2004 examination, there are well-established limits even to this free-and-easy practice.  The case law is replete with holdings that resort to Rule 2004 cannot include discovery conducted in bad faith or for improper purposes."  *In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) (denying request for discovery under Bankruptcy Rule 2004 where litigation was pending in district court and discovery in bankruptcy court would infringe on preliminary injunction issued by district court).   In such circumstances, courts may exercise their discretion to deny

requests for Bankruptcy Rule 2004 examinations.  The instant request falls squarely in the improper purpose category and should be denied.

24.  Rentenbank seeks to misuse Bankruptcy Rule 2004 to request information to create a defense to the Turnover Action, which information it could not seek in the English Court in the Turnover Action.  *See* Defence ¶ 18 (representing to the English Court that "If, in due course, Rentenbank's [2004 Motion] is successful…Rentenbank may have grounds to present a defence in *these proceedings*… .") (emphasis added); Baker Witness Statement ¶ 18 ("in order to allow Rentenbank to establish its rights in relation to the allegations made against it in *these proceedings*, Rentenbank…requests that the [English Court grant] an order that these proceedings are stayed pending the conclusion of (and, if successful, compliance with) Rentenbank's [2004 Motion]… .").

25.  Under well-settled law, however, discovery under Bankruptcy Rule 2004 is unavailable if an adversary proceeding, contested matter or other plenary litigation is pending and the Bankruptcy Rule 2004 application is an attempt to avoid the restrictions contained in the rules governing the alternate proceeding.  *See, e.g., In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (holding that discovery under Bankruptcy Rule 2004 was inappropriate "where the party requesting the Rule 2004 examination could benefit their pending litigation outside of bankruptcy court against the proposed Rule 2004 examinee."); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (N.D.N.Y. 1996) (holding Bankruptcy Rule 2004 to be unavailable where discovery related to subject matter of adversary proceeding); *Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) (holding that motion for Bankruptcy Rule 2004 discovery to further movant's case in state court action constituted abuse of Bankruptcy Rule 2004), *aff'd sub. nom. In re Snyder*, 52 F. 3d 1067 (5th Cir. 1995).

26.    The decision in the *Enron* Bankruptcy Rule 2004 case is dispositive of the Motion.  In *Enron*, lead plaintiffs in a securities class action lawsuit pending in the Southern District of Texas (the "Newby Action") sought discovery under Bankruptcy Rule 2004 in this Court.  281 B.R. at 837.  Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), however, all discovery was stayed in the Newby Action pending a judicial determination on motions to dismiss that had been filed in that case by defendants.  *Id.*  Although the Texas court could have lifted the PSLRA stay, it had not done so at the time the Bankruptcy Rule 2004 motion was brought in the bankruptcy court.  *Id.*  Objections were filed to the relief sought on the basis that Bankruptcy Rule 2004 examinations were inappropriate because of the pending litigation and the motivation of the lead plaintiffs to bypass the restrictions of the PSLRA stay and obtain discovery that could be used in the Newby Action.  *Id.* at 840. Recognizing the limitations on Bankruptcy Rule 2004 examinations, the *Enron* court denied the request for discovery.  Specifically, Judge Gonzalez held:

> [T]he [lead plaintiffs] -- despite their statements to the contrary -- are seeking to use Rule 2004 for discovery in the Newby Action.  The [lead plaintiffs'] motions are devoid of any invocation of what matters it seeks under Rule 2004(b) and the nexus of those materials to the [lead plaintiffs] as a party in interest in this bankruptcy case.  Instead, the [lead plaintiffs'] motions rely entirely on the purported propriety of the information it seeks from the Objectants as it relates to [a] scheduling order in the Newby Action.  Hence, the Court finds that the [lead plaintiffs'] requests in the instant motions do not fall within the confines of Rule 2004(b) and that the instant motions are not otherwise connected to the [lead plaintiffs] as a party in interest in this case.

*Id.* at 842 (emphasis added).

27.    The purpose for which Rentenbank seeks Bankruptcy Rule 2004 discovery is to use its broad scope in the hope that Rentenbank may uncover information that it may use against LBSF in the Turnover Action, information which it is barred from seeking in the English Court because there are no factual issues in dispute.  *See* Declaration ¶¶ 21-22.  Accordingly, just

like the lead plaintiffs in the *Enron* Bankruptcy Rule 2004 case, Rentenbank is not exercising its rights as a party in interest in these cases, but rather is seeking to use the fishing expedition aspect of Bankruptcy Rule 2004 to further its own specific agenda and not the general interests of the chapter 11 cases.  Moreover, Rentenbank is prohibited from seeking discovery in the English Court by English law, *see generally* Declaration ¶¶ 16-22, just as the lead plaintiffs in *Enron* were prohibited from taking discovery by the PSLRA stay.  The Motion is a patent attempt to bypass the prohibition of discovery in the English Court that should be rejected.

28.     An applicant's contention that it will not use Bankruptcy Rule 2004 discovery in the pending adversary proceeding or other litigation is insufficient where there is a likelihood of overlap between the discovery sought through Bankruptcy Rule 2004 and the subject matter of the other pending proceeding.  *See Bennett Funding Group*, 203 B.R. at 29 (denying request for Bankruptcy Rule 2004 discovery despite movant's assertion that it would not examine matters related to the pending adversary proceeding because it "ignore[d] the likelihood that information elicited will relate directly to issues and parties already named in the adversary proceeding.").  Assuming, *arguendo*, that Rentenbank had not conceded that it intends to use information learned through Bankruptcy Rule 2004 in the Turnover Action, the Motion must nevertheless be denied because Rentenbank's Bankruptcy Rule 2004 discovery will necessarily overlap with and relate to the subject matter of the Turnover Action before the English Court.

**V.**
**Rentenbank Lacks Standing to Assert Corporate Veil Piercing or Alter Ego Claims**

29.     Although the Motion fails to present any evidence in support of the corporate veil piercing claim raised by Rentenbank in its Defence to the English Court, it essentially seeks to combine LBHI and LBSF for purposes of setoff and suggests that the

separate corporate identities of the Debtors can be ignored.[3]  The law is clear, however, that no

creditor, such as Rentenbank, has standing to bring an action to pierce the Debtors' corporate

veil.  A cause of action for corporate veil piercing or alter ego under controlling Delaware law

lies *exclusively* with the Debtors.  *See Kalb, Voorhis & Co. v. In re Am. Fin. Corp.*, 8 F.3d 130,

132 (2d Cir. 1993) (where the debtor has the right to assert alter ego claim to pierce its own

corporate veil under applicable state law, that claim is property of the debtor's estate and the

claim may only be asserted by the trustee or debtor-in-possession); *St. Paul Fire & Marine Ins.*

*Co. v. Pepsico, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) (holding that where a claim may be

brought by any creditor because there is no particularized injury stemming from the claim, the

trustee or debtor-in-possession is the appropriate party to assert the claim and creditors are

subject to the outcome of the action brought by the trustee or debtor-in-possession); *S.I.*

*Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142,

1153 (5th Cir. 1987) (holding that state law alter ego claim belongs to trustee or debtor-in-

possession because the allegations, if proved, will result in more assets available to the debtor to

satisfy creditor claims); *Duke Energy Trading & Mktg., LLC v. Enron Corp. (In re Enron Corp.)*,

Case No. 01 B 16034 (ALG), Adv. Pro. No. 02-3609 A, 2003 Bankr. LEXIS 330, at *3-4

(Bankr. S.D.N.Y. Apr. 17, 2003) (hereinafter *Duke v. Enron*) (discussed below).

       30.    In *Duke v. Enron*, plaintiffs argued that the *Enron* debtors conducted their

prepetition businesses as a single enterprise without regard to corporate form, and therefore were

---

[3] Perhaps recognizing that any attempt to prosecute a corporate veil piercing cause of action would violate the automatic stay, Rentenbank does not assert, in its Motion, that it seeks discovery under Bankruptcy Rule 2004 for purposes of establishing and asserting such a cause of action.  Rentenbank certainly has, however, submitted to the English Court that it may be able to establish a defense to the Turnover Action if LBSF and LBHI are held to be alter egos of one other.  *See* Defence ¶ 17(i); Baker Witness Statement ¶ 12.  The Debtors reserve their rights to seek to hold Rentenbank in violation of the automatic stay for actions it has already taken before the English Court.

      12

alter egos of one another.  Like Rentenbank here, the Duke plaintiffs acknowledged that amounts

were due to various debtors, but alleged that they had a right to setoff claims among the various

debtors without regard to corporate separateness of the *Enron* entities because the *Enron* debtors

should be considered a single enterprise.  *Id.* at *5.  Thus, the Duke plaintiffs sought to pierce the

corporate veil to establish mutuality for purposes of setoff under section 553 of the Bankruptcy

Code.  *Id.* at *13.

31.    Applying Delaware state law, Judge Gonzalez held that the Duke plaintiffs

lacked standing to assert a corporate veil piercing claim where the claim was general, with no

particularized injury to any single creditor.  *Id.* at *14.  The Court noted:

> [a]lowing a creditor to assert a veil-piercing claim against a group of entities
> where the conduct at issue is general to all creditors of those entities, solely based
> upon the happenstance that the creditor owes a debt to one of the entities in the
> group, would enable a creditor to effectively control a claim that belongs to each
> of the estates without a corresponding fiduciary obligation to represent the
> interests of each of those estates.

Id. at *19.  Judge Gonzalez held as a matter of law the Debtors, as fiduciaries for all creditors,

had standing to assert a cause of action for veil piercing, but the Duke plaintiffs did not.

32.    Rentenbank concedes that Delaware law, which was applied by Judge

Gonzalez in *Enron*, is applicable to this dispute.  *See* Defence ¶ 17; Baker Witness Statement

¶ 11.  Thus, it is perfectly clear that Rentenbank lacks standing to assert an alter ego claim

against the Debtors.  Rentenbank is not entitled to discovery under Bankruptcy Rule 2004 for a

cause of action it has no standing to assert.  Indeed, any attempt by Rentenbank to assert or

prosecute a corporate veil piercing claim would constitute a violation of the automatic stay.  *See*

11 U.S.C. § 362(a)(3); *Goldin v. Primavera Familienstiftung, Tag Assoc., Ltd. (In re Granite*

*Partners, L.P.)*, 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996) ("Where the trustee has standing to

sue, the automatic stay prevents creditors from asserting the claim notwithstanding that outside of bankruptcy, they have the right to do so.").

## VI.
## The Specter of Substantively Consolidated Chapter 11 Plans Does Not Justify Setoff

33.    Independent of the foregoing deficiencies of Rentenbank's Motion, granting Rentenbank's request for discovery under Bankruptcy Rule 2004 would serve no purpose and, therefore, should be denied.  Assuming, *arguendo*, that the chapter 11 estates of LBSF and LBHI were to be substantively consolidated at some future date, Rentenbank still would not be able to establish the requisite mutuality to setoff the debt it owes to LBSF against a claim purportedly held by it against LBHI.  Courts have held that substantive consolidation alone does not necessarily establish mutuality for purposes of setoff under section 553 of the Bankruptcy Code.  *See In re Wade Cook Fin. Corp.*, 375 B.R. 580 (B.A.P. 9th Cir. 2007); *In re Garden Ridge Corp.*, 338 B.R. 627 (Bankr. D. Del. 2006).

34.    In *Wade Cook Fin. Corp.*, the Bankruptcy Appellate Panel for the Ninth Circuit rejected the IRS's attempt to setoff a parent debtor's prepetition tax liabilities against a prepetition tax refund due to a debtor subsidiary.  *See Wade Cook Fin. Corp.*, 375 B.R. at 585. The IRS argued that the substantive consolidation of the debtors' estates established that the subsidiary corporation was the alter ego of the parent, and, therefore, a triangular setoff was permitted because the offset was of mutual claims.  *Id.* at 587.  Rejecting the IRS's argument, the Ninth Circuit B.A.P. held that "substantive consolidation alone does not establish that [the subsidiary] was and is the alter ego of [the parent]."  *Id.* at 598.  Rather, "[s]ubstantive consolidation is a mechanism whereby the assets and liabilities of two or more related entities are pooled to create a single fund from which creditors of the combined estate may receive distributions." *Id.*  While, "substantive consolidation ignores the corporate form. . . of entities

whose business and/or finances are so intertwined that it makes no sense to disentangle them," it does not collapse legal entities and hold one entity responsible for the debts of another. *Id.*

35.     Similarly, in *In re Garden Ridge Corp.*, the Delaware bankruptcy court held that notwithstanding the substantive consolidation of related debtors, a creditor could not exercise a triangular setoff against the debtors' estates. *In re Garden Ridge Corp.*, 338 B.R. at 641. Specifically, the court noted that:

> The substantive consolidation of several estates means one thing and one thing only – that all assets of several entities are pooled and all creditors of the several entities are entitled to share in the pooled assets in accord with their respective rights. It would certainly be a violation of due process if the order of substantive consolidation would operate to destroy defenses and rights which existed prior to the entry of the order of substantive consolidation.

*Id.* (citing cases). Substantive consolidation is "intended for ease of administration" and "for prospective purposes related to the Plan." *Id.* (*citing Nickless v. Avnet, Inc. (In re Century Elecs. Mfg.)*, 310 B.R. 485, 493 (Bankr. D. Mass. 2004)). "One of those purposes was not to create mutuality so that [the creditor] could enjoy the benefits of setoff." *Id.* at 641.

WHEREFORE Rentenbank's Motion should be denied and the Debtors granted such other and further relief as is just.

Dated: September 11, 2009
       New York, New York

                                        /s/ Harvey R. Miller
                                        Harvey R. Miller
                                        Robert J. Lemons

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession