WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

------------------------------------------------------------------x

**DECLARATION OF MATTHEW SHANKLAND IN SUPPORT OF DEBTORS'
OBJECTION TO MOTION OF LANDWIRTSCHAFTLICHE RENTENBANK
FOR ORDER PROVIDING FOR EXAMINATION AND PRODUCTION OF
DOCUMENTS BY DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT
TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Pursuant to 28 U.S.C. § 1746, I, Matthew Shankland, declare:

1.       I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2.       I am partner in the law firm of Weil, Gotshal & Manges, LLP practicing in London, England. I received my LLB from Oxford Brookes University in 1996, qualified as a barrister in October 1997 and was admitted to the roll of solicitors in England & Wales in 2005. For 12 years, I have practiced regularly in matters conducted in the Chancery and Commercial Divisions of the High Court of Justice in England. I am generally familiar with the procedures and practice of English law.

3. I make this Declaration in support of the objection of Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF") and their affiliated chapter 11 debtors' (collectively, the "Debtors") to the motion of Landwirtschaftliche Rentenbank ("Rentenbank"), dated August 14, 2009 (the "Motion"), for an order providing for examination and production of documents by LBHI and LBSF pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. I am lead counsel to LBSF in its attempt to recover $43,465,860.98 plus additional interest from Rentenbank (the "Termination Payment") related to Rentenbank's termination of a master swap agreement between Rentenbank and LBSF on or about September 15, 2009. I have represented LBSF and the Debtors in connection with this dispute with Rentenbank since approximately April of this year. In that capacity, I am primarily responsible for a lawsuit commenced by LBSF against Rentenbank on June 23, 2009 (the "Turnover Action") in the High Court of Justice, Queen's Bench Division, Commercial Court (the "English Court") for, among other things, payment of the Termination Payment and applicable interest to LBSF.

The Master Swap Agreement

5. On January 9, 1996, LBSF and Rentenbank entered into (i) a swap master agreement (the "Master Agreement") based on the 1992 multicurrency cross-border master agreement general terms promulgated by the International Swaps and Derivatives Association, Inc., and (ii) a schedule thereto that sets out the specific terms agreed to between the parties (the "Schedule"). A credit support annex to the Schedule was entered into by the parties on the same day (the "Credit Support Annex"), pursuant to which €68,060,894 in collateral wasposted by LBSF in respect of its obligations under the Master Agreement and the Schedule. Pursuant to

paragraph 4(g) of the Schedule, LBHI is a credit support provider for purposes of the Master Agreement.

6. On July 28 and August 25, 2003, LBSF and Rentenbank entered into transactional confirmations (the "Confirmations," collectively with the Master Agreement, the Schedule and the Credit Support Annex, the "Agreement") that set out the terms upon which the specific swap transactions were to be carried out. The Agreement was amended on July 28, 2004 and February 26, 2007. A copy of the Master Agreement, as amended, is attached hereto as Exhibit A. Pursuant to the second amendment, the Master Agreement is governed by English law.

7. Pursuant to section 5(a)(vii) of the Master Agreement, the chapter 11 filings of LBHI and LBSF on September 15, 2008 and October 3, 2008, respectively, constituted Events of Default[1] under the Agreement and permitted Rentenbank to declare an Early Termination Date and to calculate a termination payment. *See* Agreement §§ 6(d)(i) and 6(e).

8. By letter, dated September 15, 2008, Rentenbank gave notice of and declared the occurrence of an Early Termination Date. A copy of the termination letter is attached hereto as Exhibit B. On September 16, 2008, Rentenbank provided a statement (the "Calculation Statement") to LBSF calculating the early termination amount in respect of the Agreement. A copy of the Calculation Statement is attached hereto as Exhibit C. Pursuant to Rentenbank's Calculation Statement, LBSF is owed approximately €27,358,780 ($39,032,728), calculated by deducting LBSF's outstanding obligations under the Agreement from the collateral posted by LBSF under the Credit Support Annex.

---

[1] Capitalized Terms not defined herein shall have the meanings ascribed to them in the Master Agreement.

The Turnover Action

9. On June 23, 2009, LBSF commenced the Turnover Action in the English Court demanding, among other things, payment of $39,032,728 in principal payment due, $4,433,132.98 in interest from September 16, 2008 through June 23, 2009, plus applicable default interest. A copy of LBSF's particulars of claim (the "Particulars of Claim") is attached hereto as Exhibit D.

10. On August 17, 2009, Rentenbank entered a defence (the "Defence") to LBSF's Particulars of Claim. A copy of the Defence is attached hereto as Exhibit E. In connection with its Defence, on August 17, 2009, Rentenbank also filed a witness statement of Rodney Russell Bakes in which it requests a stay of the Turnover Proceeding or any judgment entered therein by the English Court. A copy of the Witness Statement of Rodney Russell Baker is attached hereto as Exhibit F.

11. On September 2, 2009, LBSF filed a motion for summary judgment in the Turnover Action (the "Summary Judgment Motion"). A copy of the Summary Judgment Motion is attached hereto as Exhibit G. In support of LBSF's Summary Judgment Motion, I filed a Witness Statement, a copy of the which is attached to the Declaration as Exhibit H.

12. As stated in my witness statement, I believe that Rentenbank has no defense to the claim for the Termination Payment and interest and that the English Court should and will grant the Summary Judgment Motion in LBSF's favor.

Rentenbank is Not Entitled to Discovery

13. As explained below, applying the relevant rules of English substantive and procedural law, the type of discovery that Rentenbank seeks from this Court would not be available to Rentenbank in England:

        a. under the applicable procedural rules given the stage which proceedings have reached in England (absent some extraordinary application and order there); or

        b. at all, as the application would offend the basic legal principals of the jurisdiction.

14. Current civil court procedure in England and Wales is set out in, and governed by, the Civil Procedure Rules 1998 (as amended) which are universally referred to as the "**CPR**." The CPR is promulgated under the Civil Procedure Act 1997 and is updated and amended on a regular basis by statutory instruments issued under that Act and others.

15. In broad terms, the initial procedure for the conduct of claims of the type in issue in this case is set out in CPR Part 7 ("How to Start Proceedings") and in CPR Parts 9, 10 and 15 ("Responding to Particulars of Claim", "Acknowledgement of Service" and "Defence and Reply," respectively). As the matter is proceeding in the Commercial Court CPR r.58 and its practice direction apply as does the Admiralty and Commercial Court Guide (the "**Guide**"). Together, these provisions set out the procedures specific to the specialist Commercial Court.

16. To summarize the effect of these parts, as applied in this case, the procedure which has been followed is:

        a. a Claim Form and Particulars of Claim were filed and served by LBSF on July 3, 2009. These set out the claim and the relief sought by LBSF;

        b. an Acknowledgement of Service was filed by Rentenbank on July 20, 2009. This document states whether a defendant intends to defend a claim (Rentenbank stated that it did) and/or whether or

not it disputes the jurisdiction.  Although Rentenbank stated that it did dispute the jurisdiction it did not issue the relevant application at the required time and cannot now do so; and

c. a Defence was served by Rentenbank on August 17, 2009.  In its Defence, Rentenbank admits the claim but seeks a stay whilst it attempts to equip itself with a right of setoff.

17. As LBSF does not intend to serve a Reply, the exchange of pleadings in this matter is complete.

18. At this point in English proceedings the case moves to the Preliminary Case Management Stage.  Under the Guide this would normally mean that LBSF would arrange with the Court a date for a case management conference ("**CMC**").  Prior to this hearing the parties would suggest directions for the future conduct of the matter including the terms of the order for disclosure (if any).  Under the CPR there is no right to disclosure absent an order of the Court (CPR r.31.5 and note 31.5.1).  At the CMC the Court may (after hearing the parties or by consent) order that the parties provide disclosure and set the timetable for that process and the exchange of evidence.

19. However, as LBSF has made an application for summary judgment under CPR r.24, the matter will not now progress through to a CMC because the interim application will be dealt with first.  In this context I refer to the Guide at D3.7 which states that:

> *"D3.7 If before the date on which the case management conference would be held in accordance with section D3 there is a hearing in the case at which the parties are represented, the business of the case management conference will normally be transacted at that hearing and there will be no separate case management conference."*

20. The grounds for summary judgment are as follows:

> *"24.2 The court may give summary judgment against a claimant or defendant on the whole of a claim or on a particular issue if*

>  *(a)     it considers that:*
>
>>  *(i)     that claimant has no real prospect of succeeding on the claim or issue; or*
>>
>>  *(ii)    that defendant has no real prospect of successfully defending the claim or issue; and*
>
>  *(b)     there is no compelling reason why the case or issue should be disposed of at trial.*

21.     It is important to understand that summary judgment under CPR Part 24 is not a mechanism for the resolution of detailed disputes of fact and, accordingly, in the normal case disclosure is simply not required.  It follows that, as a matter of procedure, there will be no disclosure available to Rentenbank in this jurisdiction, if at all necessary, until <u>after</u> LBSF's summary judgment motion is determined.

22.     It is also to be noted that Rentenbank has not suggested that it should or could as an exception to general practice get disclosure (for example under CPR r.31.12.2, Specific Disclosure) in England at this stage and has made no such application.  It is not suggested that there is any relevant material in the possession of LBSF which Rentenbank requires at this stage in England in order to deal with the summary judgement application.  On that basis any special disclosure application would fail.  The note to CPR r.31.12 at 31.12.2 states:

>  *"The power to order disclosure for the purpose of interlocutory proceedings should be exercised sparingly and then only for such documents as can be shown to be necessary for the just disposal of the application, Harris v The Society of Lloyd's [2008] EWHC 1433 (Comm);July 1 2008 unrep. para 10 applying to the CPR rule, the former RSC approach propounded in Rome v Punjab National Bank [1989] 2 All ER 136."*

Accordingly, disclosure is not in play in the proceedings in England at all at this time.

23.     In the interests of completeness I should explain how, were the English Court to consider that there might be an arguable setoff, it might deal with a case such as the instant one (where summary judgment is sought on an effectively admitted claim, but a right of setoff is

asserted). In this context I set out below the note to CPR 24.4 at para 24.2.6 which explains how the court would approach the issue:

> *"The question which arises here is whether a defendant can rely upon a set off or counterclaim as a "reason why the claim should be dealt with at trial" and thereby defeat a claim for summary judgment. The case law under the previous rules on this point was not coherent. Often the court refused to give summary judgment in such case or granted summary judgment subject to a stay on enforcement pending trial of a counterclaim [See Morgan & Son Ltd v S Martin Johnson & Co [1949] K.B. 107 CA; Hanak v Green [1958] 2 QB 9; United Overseas Ltd v Peter Robinson Ltd, March 26, 1991, CA Transcript no.91/0297). In some exceptional cases the claimant obtained summary judgment which was enforceable immediately even though the defendant intended to raise a counterclaim (see "No set off in action on dishonoured bill or cheque" below).*
>
> *It is possible that, under the new rules, the court may grant summary judgment more frequently than hitherto and may impose a delay on enforcement more frequently than hitherto."*

24. Even if Rentenbank could be said to have a reasonable case to argue on setoff, it will not be prejudiced by LBSF prosecuting its summary judgment motion, which Rentenbank can defend under English law and seek a stay of enforcement from the English Court if LBSF should prevail. Obviously, if the matter did then proceed to a trial of Rentenbank's case on setoff directions for disclosure in the normal way and at the normal time would follow – it is therefore not the case that anything being done by LBSF in England will prejudice Rentenbank from defending against the claim before the English Court if discovery under Bankruptcy Rule 2004 is denied. LBSF is simply insisting that Rentenbank should follow the procedures of the English Court.

25. The foregoing are the procedural reasons why, under English law, there is no basis on which Rentenbank would obtain disclosure in England at this stage. I should also make it clear that, on the basis of English substantive and procedural law, the <u>type</u> of disclosure which Rentenbank seeks in the Motion would not be ordered here in any event.

26. Under CPR r.31.6 the scope of standard disclosure is as follows:

> *"31.6 Standard disclosure requires a party to disclose only –*
>
> *(a)    the documents on which he relies; and*
>
> *(b)    the documents which –*
>
> > *(i)    adversely affect his own case;*
> >
> > *(ii)   adversely affect another party's case; or*
> >
> > *(iii)  support another party's case; and*
>
> *(c)    the documents which he is required to disclose by a relevant practice direction."*

27.     It can be seen therefore that in England the disclosure is designed to support or undermine a stated case; it is <u>not</u> designed to allow a party to investigate whether or not it has a case at all. This is the central concept of the English law on disclosure.

28.     I have read Rentenbank's motion for discovery under Bankruptcy Rule 2004. I note that at paragraphs 21 and 27 of the motion, Rentenbank makes clear that its application is to:

> "*determine whether sufficient facts exist to warrant the substantive consolidation...*"

and necessary for

> "*Rentenbank's investigation of the business and financial affairs of LBHI and LBSF*"

29.     This form of investigatory disclosure is alien to English law and would not be permitted here. The closest equivalent form of relief available here is pre action disclosure under CPR 31.16(3) (i.e. disclosure prior to the formal pleading out of the case). Even under this rule, however, the applicant will not be granted relief if it cannot demonstrate that it already has a recognized cause of action which requires perfecting and that such cause of action as it can articulate is not obviously bound to fail. In this connection CPR r.31.16(3) at note 31.16.5 states:

> *"In Rose v Lynx Express Ltd [2004] EWCA Civ 477 [2004] BC.I.C. 455, the Court of Appeal held:*
>
> > *"Courts should be hesitant, in the context of an application for pre-action disclosure, about embarking upon any determination of substantive issues in the*

> *case. In our view it will normally be sufficient to found an application under CPR r.31.16(3) for the substantive claim pursued in the proceedings to be properly arguable and to have a real prospect of success, and it will normally be appropriate to approach the conditions in CPR r.31.16(3) on that bases."*

*The Applicant must show at least a prima facie case of entitlement to substantive relief: Mars UK Ltd v Waitrose [2004] EWHC 2264 (Ch); [2004] All ER (D) 136 (Jul), Ch at [5] and [10] (there the court refused to make an order as a prima facie case had not been shown."*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 11 day of September 2009.

        /s/ Matthew Shankland
        Matthew Shankland