Claim No: 2009 Folio 838

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

BETWEEN:

### LEHMAN BROTHERS SPECIAL FINANCING INC

Claimant

and

### LANDWIRTSCHAFTLICHE RENTENBANK

Defendant

---

### DEFENCE

---

1.  References in this document to numbered paragraphs are to the paragraphs of the Particulars of Claim, save where otherwise appears.

2.  Unless otherwise stated, defined terms in this Defence have the meaning given to them in the Particulars of Claim.

3.  Paragraph 1 is admitted.  In addition, Rentenbank avers that LBHI, as well as LBSF, is organised and incorporated under the laws of Delaware.

4.  Paragraph 2 is admitted, save for the description of Rentenbank as a depository institution. Rentenbank is an institution established under German federal public law to function as a central refinancing agency for the agriculture, forestry, fishing and food industries in Germany.

1

WLO - 075434/000460 - 759214 v3

5.      Paragraph 3 is admitted. LBSF and Rentenbank also entered into Confirmations under the Swap Master Agreement and the Schedule in addition to those entered into on 28 July and 25 August 2003.

6.      Paragraphs 4 to 12 (inclusive) are admitted. In addition to the contractual arrangements between the parties explained therein, Rentenbank entered into a Loan Agreement with a subsidiary of LBHI called Lehman Brothers Bankhaus A.G. ("Bankhaus") on 26 September 2003, pursuant to which Rentenbank provided Bankhaus with a Euro30 million credit facility (the "Bankhaus Loan") (Attachment A hereto). Also, on 19 September 2003, LBHI and Rentenbank entered into a Guarantee, pursuant to which LBHI unconditionally guaranteed, as primary obligor, the repayment of any and all sums due and owing by Bankhaus to Rentenbank under the Bankhaus Loan (the "Bankhaus Guarantee") (Attachment B hereto). As of the date of the termination of the Bankhaus Loan, Bankhaus' and LBHI's indebtedness to Rentenbank, under the Bankhaus Loan and the Bankhaus Guarantee respectively, was Euro 30,245,373 with interest accruing thereafter.

7.      Paragraphs 13 to 17 (inclusive) are admitted.

8.      Paragraph 18 is admitted, save for the third and fourth sentences relating to the cost to LBSF of funding the principal amount claimed, the basis for the certification thereof and LBSF's claim for interest, which are not admitted. Rentenbank avers that it is not sufficient, for the purposes of substantiating its claim to interest, for LBHI to "self-certify" the amount of interest alleged to be owing and the basis for calculation thereof, and puts LBSF to objective proof of the cost of funding and the calculation of such interest, on the basis that such proof is necessary to justify LBSF's claim.

9.      Paragraph 19 is admitted.

10.     The first sentence of paragraph 20 is admitted. The second sentence, and in particular the allegation that "the sum of Euro27,358,780... is due and owing from Rentenbank to LBSF" is not admitted: for the reasons explained in paragraphs 14 to 19 below, it is Rentenbank's

WLO - 075434/000460 - 759214 v3

position that, depending on the outcome of certain proceedings in the United States referred to in paragraph 18 below, Rentenbank may have a substantive defence to LBSF's allegation that the sums claimed by LBSF are due and owing, based on a right of set-off under Delaware law. For the reasons given in paragraphs 14 to 19 below, it is Rentenbank's position that these proceedings should therefore be stayed pending the outcome of proceedings which have been commenced by Rentenbank in the United States which, if successful, may give Rentenbank a substantive defence to LBSF's claim.

11. As to paragraph 21, Rentenbank repeats the second and third sentences of its response at paragraph 10 above. Further and/or in the alternative, the claim for interest is denied for the reasons given in paragraph 8 above.

12. Paragraphs 22 and 24 (and in so far as paragraph 24 solely relates to the exchange rate applicable to the calculation of LBSF's claim) are admitted.

13. As to paragraphs 23 and 25 to 29 (inclusive), and as to LBSF's claim in general, Rentenbank repeats the second and third sentences of paragraph 10 above. Further and/or in the alternative, the claim for interest is denied for the reasons given in paragraph 8 above.

**Rentenbank's Right of Set-off Under Delaware Law**

14. Rentenbank avers that since LBSF and LBHI are both companies organised and incorporated under the laws of Delaware, the relationships between LBSF, LBHI and Rentenbank, including, in particular, any right held by Rentenbank to set-off amounts owed by LBHI to Rentenbank under the Bankhaus Loan and Guarantee against any amounts owing by Rentenbank to LBSF under the Swap Master Agreement (the "Right of Set-off"), are governed by the laws of Delaware.

15. Given that, at the date of termination of the Swap Master Agreement and the Bankhaus Loan, the amount owing to Rentenbank by LBHI under the Bankhaus Loan and Guarantee was

3

greater than the amount owing to LBSF under the Swap Master Agreement, such a Right of Set-off would constitute a complete defence to LBSF's claims.

16.    Generally, section 553 of the United States Bankruptcy Code preserves the right of a creditor to offset a mutual debt owing by such creditor to the debtor. 11 U.S.C. §553. Debts are typically considered "mutual" for the purposes of setoff when they are due to and from the same parties in the same capacity.

17.    However, as a matter of Delaware law, the requisite mutuality giving rise to the Right of Set-off may exist if:

  (i)    the corporate veil between LBSF and LBHI is pierced and/or LBSF is found to be the *alter ego* of LBHI, and/or

  (ii)   the US Bankruptcy Court issues an order substantively consolidating the bankruptcy estates of LBHI and LBSF, thereby pooling the assets and liabilities of LBHI with the assets and liabilities of LBSF (a "Consolidation Order").

18.    In order to determine whether the substantive consolidation of the estates of LBSF and LBHI may be appropriate or there is a basis to support a finding of alter ego and/or veil piercing, Rentenbank has made an application in the US Bankruptcy Court for entry of an order providing for an examination of and the production of documents by LBHI and LBSF pursuant to Federal Rule of Bankruptcy Procedure 2004, requesting discovery relating to the acts, conduct, liabilities of and financial condition of LBHI and LBSF and to matters which may affect the administration of their estates (the "Discovery Application"). More specifically, the Discovery Application requests documentation and examinations relating to, among other things, (a) the corporate structure and organization of LBSF and LBHI, (b) the observance of corporate formalities by LBHI and LBSF; (c) the bank statements, banking records, financial statements, financial reports and tax returns of LBSF and LBHI; (d) the record keeping protocols and board meetings of LBHI and LBSF; and (e) the relationship, communications and flow of funds between LBHI and LBSF. If, in due course, Rentenbank's

4

Discovery Application is successful and provides evidence supporting a finding of substantive consolidation, veil piercing or alter ego, Rentenbank may have grounds to present a defence in these proceedings based on its Right of Set-off under Delaware law.

19.  Rentenbank reserves its right to make an application for, among other things, a Consolidation Order, depending on the outcome of the Discovery Application. It is also possible that other LBHI or LBSF creditors will apply for a Consolidation Order independently which, if granted, may also give Rentenbank grounds to present a defence in these proceedings based on the Right of Set-off under Delaware law.

**Request for a stay of these proceedings**

20.  In light of paragraphs 14 to 19 (inclusive) above, Rentenbank has filed with this Defence an Application for a stay of these proceedings pursuant to Part 3.1(2)(f) of the Civil Procedure Rules, pending the conclusion of the proceedings in the United States referred to above. This stay is necessary because the availability of Rentenbank's defence based on a Right of Set-off under Delaware law can only be ascertained after the Discovery Application has been resolved by the Bankruptcy Court and discovery has been conducted. Accordingly, and in order to enable Rentenbank to take all reasonable steps to ascertain its rights in relation to LBSF's claim in these proceedings, the proceedings should be stayed pending the outcome of the United States proceedings.

**Statement of Truth**

The Defendant believes that the facts stated in this Defence are true and I am duly authorised by the Defendant to sign this statement.

............................................

Rod Baker
Partner
Hogan & Hartson

Served this 17th day of August 2009 by Hogan & Hartson, Solicitors for the Defendant, Juxon House, 100 St Paul's Churchyard, London EC4M 8BU Ref: RB/JH

\\LO - 075434/000460 - 759214 v3

## ATTACHMENT A

**Bankhaus Loan**

LEHMAN BROTHERS

*i.O. März*

# LEHMAN BROTHERS BANKHAUS AG

## SCHULDSCHEIN

### 004403

Lehman Brothers Bankhaus AG
Rathenauplatz 1
60313 Frankfurt am Main
(*"Darlehensnehmerin"*)

erklärt hiermit, von

Landwirtschaftliche Rentenbank
Hochstraße 2
60313 Frankfurt am Main
(*"Darlehensgeberin"*)

ein Darlehen in Höhe von

### EUR 30.000.000,--
(in Worten: Euro dreißig Millionen)

(*"Nominalbetrag"*) zu den folgenden Bedingungen erhalten zu haben:

(1)     Die Auszahlung des Darlehens erfolgt am 26. September 2003 (*"Anfangs-zation"*) auf das Konto der Lehman Brothers Bankhaus AG bei der Deutschen Bundesbank, Filiale Frankfurt am Main.
Konto-Nr.:     500.093.05
BLZ:             500.000.00

(2)  (a)  Das Darlehen ist mit Ausnahme der ersten und der letzten Zinsperiode (siehe Abs. (2) (c) und (d)) bis zum Tag der Fälligkeit des Kapitals, dem 27. September 2010 (*"Fälligkeitstag"*) (ausschließlich), wie folgt zu verzinsen: 3-Monats-EURIBOR + 0,30 %. Die Zinsfestsetzung erfolgt jeweils am zweiten TARGET-Bankarbeitstag vor dem ersten Tag der jeweiligen Zinsperiode. Die Bestimmung des EURIBOR-Satzes geschieht gemäß Reuters Seite EURIBOR01 für den Zeitpunkt 11:00 Uhr (Brüsseler Zeit) am zweiten TARGET-Bankarbeitstag vor Beginn der jeweiligen Zinsperiode.

      (b)  Falls auf der Reuters Seite keine Quotierungen mehr erfolgen oder eine andere Quotierung sich als Marktstandard durchgesetzt hat, werden die Darlehens-nehmerin und die Darlehensgeberin einvernehmlich eine andere vergleichbare Quelle für die Quotierung des EURIBOR-Zinssatzes nehmen. Ebenso werden die Darlehensnehmerin und die Darlehensgeberin einvernehmlich einen anderen Basiszinssatz wählen, falls der Zinssatz EURIBOR nicht oder nicht mehr festgestellt wird. Dabei werden sich die Parteien an den Marktstandards orientieren und insbesondere die Umstellungspraxis der Börsen



LEHMAN BROTHERS

berücksichtigen, an denen vergleichbare Produkte gehandelt werden. Falls sich die Parteien nicht einigen können, werden die Parteien andere Marktteilnehmer um eine Quotierung bitten. Diese Marktteilnehmer sollten eine führende Rolle in dem Markt für die Quotierung von Zinssätzen haben.

(c) Die Zinsen sind jeweils nachträglich am 21.01., 21.04., 21.07. und 21.10. eines jeden Jahres (jeweils ein "*Zinstermin*"), erstmals am 21.10.2003, fällig. Eine Zinsperiode beginnt jeweils mit dem Zinstermin und endet mit dem Tag vor dem nächsten Zinstermin. Die Zinsen werden auf der Grundlage act/360 berechnet.

(d) Für die erste Zinsperiode vom Anfangsdatum (einschließlich) bis zum 21.10.2003 (ausschließlich) wird der variable Satz durch (Europäische) Interpolation zwischen dem 1-Wochen- und dem 1-Monats EURIBOR errechnet. Für die letzte Zinsperiode vom 21.07.2010 (einschließlich) bis zum Fälligkeitstag (ausschließlich) wird der variable Satz durch (Europäische) Interpolation zwischen dem 2- und dem 3-Monats EURIBOR errechnet.

(3) (a) TARGET-Bankarbeitstag ist für Zahlungen jeder Tag, an dem das „Trans-European Automated Real-Time Gross Settlement Express Transfer" (TARGET) System für Zahlungen geöffnet ist, für sonstige Zwecke jeder Tag, an dem das TARGET System geöffnet ist.

(b) Ist ein Fälligkeitstag kein TARGET-Bankarbeitstag, so verlängert sich die jeweilige Zinsperiode bis auf den nächstfolgenden TARGET-Bankarbeitstag. Fällt dieser jedoch in einen neuen Kalendermonat, so fällt der entsprechende Fälligkeitstag auf den unmittelbar vorangehenden TARGET-Bankarbeitstag.

(c) Das Darlehen ist am Fälligkeitstag zum Nominalbetrag zurückzuzahlen.

(4) Zins- und Tilgungszahlungen erfolgen kostenfrei für die Darlehensgeberin durch Überweisung auf das Konto Nr. 217 485 der Darlehensgeberin bei Landwirtschaftliche Rentenbank, Frankfurt (BLZ 500 205 00), *Ref. 4234*.

(5) Das Darlehen ist, abgesehen von den in Ziffer (6) genannten Fällen, beiderseits nicht vorzeitig kündbar.

(6) Die Darlehensgeberin ist berechtigt, das Darlehen durch Kündigung ohne Einhaltung einer Frist durch eingeschriebenen Brief vorzeitig fällig zu stellen und Rückzahlung zum Nennbetrag einschließlich aufgelaufener Zinsen bis zum Tag der Rückzahlung (ausschließlich) zu verlangen, wenn eines der folgenden Ereignisse eintritt:

(a) Die Darlehensnehmerin ist trotz einer schriftlichen Mahnung mit einer Zahlung länger als sieben Bankarbeitstage seit Erhalt der Mahnung im Rückstand. Die Mahnung ist an die Rechtsabteilung der Darlehensnehmerin (Lehman Brothers Bankhaus AG, Rechtsabteilung, Rathenauplatz 1, 60313 Frankfurt am Main) zu richten.

(b) Die Darlehensnehmerin tritt in Liquidation, es sei denn, dies geschieht im Zusammenhang mit einer Verschmelzung, Konsolidierung oder einer anderen Form des Zusammenschlusses mit einer anderen Gesellschaft, so-

LEHMAN·BROTHERS

fern diese Gesellschaft alle Verpflichtungen übernimmt, die die Darlehensnehmerin im Zusammenhang mit diesem Schuldschein eingegangen ist.

(c) Die Darlehensnehmerin scheidet, aus welchem Grund auch immer, aus dem Einlagensicherungsfond des Bundesverbandes deutscher Banken e.V., Berlin, aus und ist nicht Mitglied einer vergleichbaren Einlagensicherungseinrichtung.

(d) Über das Vermögen der Darlehensnehmerin wird die Eröffnung des Insolvenzverfahrens oder eines ähnlichen Verfahrens durch eine dafür berechtigte Stelle beantragt.

(e) Die Darlehensnehmerin ihre Zahlungen anderen Gläubigern gegenüber - sei es auch nur teilweise - einstellt, zwangsgesetzliche Forderungen bzw. die Fälligkeit der Forderungen wird von der Darlehensnehmerin nicht bestritten.

(7) Die Abtretung der Darlehensforderung bedarf nicht der Zustimmung der Darlehensnehmerin. Jede Abtretung in Ganzen oder in Teilbeträgen von mindestens Euro 1,0 Mio. ist grundsätzlich uneingeschränkt zulässig und gegenüber der Darlehensnehmerin unverzüglich anzuzeigen. Weiterhin verpflichtet sich die Darlehensgeberin, alle notwendigen Maßnahmen zur Verhinderung der Geldwäsche vorzunehmen, insbesondere wird die Darlehensgeberin alle neuen Gläubiger entsprechend den gesetzlichen Vorschriften identifizieren und die entsprechenden Unterlagen auf Verlangen der Darlehensnehmerin zur Verfügung stellen. Die Darlehensnehmerin ist nur verpflichtet, auf ein Konto in der Bundesrepublik Deutschland zu zahlen.

Geht der Darlehensnehmerin die Abtretungsanzeige später als einen Monat vor einer Zins- oder Kapitalfälligkeit zu, muss der neue Gläubiger eine Zahlung an den bisherigen Darlehensgläubiger mit schuldbefreiender Wirkung gegen sich gelten lassen.

(8) Die Darlehensnehmerin verzichtet hinsichtlich der Darlehensforderung auf Aufrechnungs- und Zurückbehaltungsrechte, solange und soweit das Darlehen zum gebundenen Vermögen i.S. v. § 54 VAG in Verbindung mit § 1 AntV oder zu einer aufgrund inländischer gesetzlicher Vorschriften gebildeten Deckungsmasse für Schuldverschreibungen gehört; dies gilt auch im Falle eines Insolvenzverfahrens.

(9) Die Verpflichtungen aufgrund des Schuldscheinsdarlehens stellen unmittelbare, unbedingte und nicht dinglich besicherte Verpflichtungen der Darlehensnehmerin dar und stehen, sofern nicht gesetzlich bestimmt, im gleichen Rang mit allen anderen nicht dinglich besicherten und nicht nachrangigen Verpflichtungen der Darlehensnehmerin.

(10) Die Darlehensgeberin hat bei Auszahlung des Darlehens eine Ausfertigung dieses Schuldscheins erhalten. Die Ausfertigung ist nach Rückzahlung des Darlehens und Zahlung aller Zinsen an die Darlehensnehmerin zurückzugeben.

LEHMAN BROTHERS

(11)   Änderungen dieses Schuldscheins bedürfen der Schriftform, dies gilt auch für die Änderung dieser Klausel.

(12)   Dieses Darlehen und die damit in Verbindung stehenden Rechte und Verpflichtungen der Parteien unterliegen dem Recht der Bundesrepublik Deutschland. Erfüllungsort und ausschließlicher Gerichtsstand ist Frankfurt am Main.

(13)   Sollte eine der Bestimmungen dieses Darlehens unwirksam sein oder werden, so bleibt die Wirksamkeit der übrigen Bestimmungen hiervon unberührt. Anstelle der unwirksamen Bestimmung soll eine dem wirtschaftlichen Zweck der unwirksamen Bestimmung soweit wie rechtlich möglich entsprechende Regelung gelten.

Frankfurt am Main, den 26. September 2003

LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT

Frank Oliver Zeitz                    Dr. Markus Bornmann

004101

ABGESANI
1 8. SEP. 200

Finanzierung durch Termingeld                          Kopien an Akte, rot, Abt. 26
Effektivzins:          3-M-Euribor + 0,30 %
Courtage:              0,0083 %
Nominalmarge:          0,3000 %
durchschn. Laufzeit:   7,033

Sicherheit / KWG;      4 / 01                           389 879 /1 / 4234
Aktionsnummer:         0

Lehman Brothers                                         Ihre Ansprechpartnerin:
Bankhaus AG                                             Birgit Mutter
Rathenauplatz 1                                         Banken Inland

60313 Frankfurt                                         Telefon (069) 2107-272
                                                        Telefax (069) 2107-459
                                                        E-Mail : mutter@rentenbank.de

                                                        15.09.2003

Geschäftsbestätigung:       Ankauf eines Schuldscheindarlehens
Geschäftsnummer:            389 879 / 1
Geschäftspartnernummer:     4234

Sehr geehrte Damen und Herren,

auf Vermittlung der Firma Eurobond Sales GmbH, Düsseldorf übernehmen wir einen
Schuldschein Ihres Hauses in Höhe von

                           EUR 30.000.000,00

zu folgenden Konditionen:

Laufzeit                    rd. 7 Jahre

Fälligkeit                  in einer Summe am 27.09.2010

Verzinsung                  0,300 % über EURIBOR für 3-Monatsgelder – act / 360 in Ver-
                            tragswährung gemäß Reuters Frankfurt Seite EURIBOR01,
                            erstmals für die Zinsperiode vom 21.10.2003 – 21.01.2004.
                            Der Zinssatz für die erste und letzte Zinsperiode wird
                            interpoliert.

Verzinsung erste Periode    26.09.2003 – 21.10.2003
                            0,300 % über EURIBOR
                            lineare Interpolation zwischen EURIBOR 3-Wochengeld und
                            1-Monatsgeld – act / 360 in Vertragswährung gemäß Reuters
                            Frankfurt Seite EURIBOR01 v. 24.09.2003

Verzinsung letzte Periode   21.07.2010 – 27.09.2010
                            0,300 % über EURIBOR
                            lineare Interpolation zwischen EURIBOR 2- und 3-Monats-
                            gelder – act / 360 in Vertragswährung gemäß Reuters Frankfurt
                            Seite EURIBOR01 v. 19.07.2010

Zinszahlung                 vierteljährlich nachträglich, jeweils am 21.01., 21.04., 21.07.
                            und 21.10. eines jeden Jahres, erstmals am 21.10.2003,
                            letztmals am 27.09.2010

Seite 2 zu dem Schreiben vom 15.09.2003 an Lehman Brothers Bankhaus AG, Frankfurt

| | |
|---|---|
| Zinsberechnung | Die Zinsberechnung beginnt jeweils mit dem ersten Tag der Zinsperiode und endet einen Tag vor dem Ende der Zins- periode. Zahlungstermin ist der letzte Tag der jeweiligen Zins- periode. Ist der Zahlungstermin kein TARGET Bankarbeitstag, so verlängert sich die jeweilige Zinsperiode bis auf den nächst- folgenden TARGET Bankarbeitstag. |
| Zinsfeststellung | Zwei TARGET-Bankarbeitstage vor Beginn der jeweiligen Zinsperiode. TARGET-Bankarbeitstage sind Tage, an denen Zahlungen über das Trans-European Automated Real-time Gross Settlement Express Transfer System abgewickelt werden können. |
| außerplanmäßige Kündigung | ausgeschlossen |
| Auszahlungskurs | 100 % |
| Auszahlung | 26.09.2003 |
| Besicherung | durch Garantie der Lehman Brothers Holdings Inc., NY |

Den Gegenwert überweisen wir valutagerecht auf Ihr Konto bei der Bundesbank:

| | |
|---|---|
| Kontonummer | 500 093 03 |
| Endbegünstigter | SLBSDEFXXXX Lehman Brothers Bankhaus AG, Frankfurt a.M. |

Die Darlehenszusage erfolgt vorbehaltlich einer uns zufriedenstellenden Dokumentation.

Die uns in ausgefertigten Urkunde und die Garantieerklärung bitten wir uns zuzusenden.

Die jeweils fälligen Leistungen erbitten wir auf unsere Kontoverbindung:

| | |
|---|---|
| Kontonummer | 217485 |
| Endbegünstigter | LAREDEFFXXXX Landwirtschaftliche Rentenbank |
| Verwendungszweck | 4234 |

Mit freundlichen Grüßen

Landwirtschaftliche Rentenbank

AktivAbschluß

| | | |
|---|---|---|
| Abschlußdatum | 15.09.2003 | Lfd. Nr. / Datum / Uhrzeit  1 0 1 7 6   15.SEP 03  10 |
| GP/Verkäufer | 4234 | Lehman Brothers Bankhaus AG, Ffm. |
| GP/Vermittler | 1945 | Eurobond Sales Deff. - Frau Shrunk |
| Courtage | 2.500,00 | EURO |
| GP/Emittent | 4234 | Lehman Brothers Bankhaus AG, Ffm. |
| Betrag in Mio. | EURO | 30.00000000 |
| Betrag in | EURO | 30.000.000,00 |

Titel/Kreditart        SSD

Fälligkeit        27.09.2010                    Ursprungsvaluta

Besonderheiten (z.B. "ZAP" od. Floater-Bedingungen)        1. und letzter Kupon kurz, interpoliert
                                                            Geschäftstage Target    BK 3+ gegen MTN 569

Zinssatz        act/360        3-Monats-Eur. + 30 bp        %

Zinszahlung        21.01. /21.04. /21.07. /21.10.

Kurs        100.000        %        subject to documentation, Einzelgarantie der Mutter
                                    wird mitgeliefert, TG aufgenommen

Rendite        %

Bank-Marge (incl. Courtage)   0,1700        %        Falls (synthetisch) PRN-IST-Marge AKTIV
                                                      0,30000        %

Valuta        26.09.03

Zahlung        LZB        Swappartner:

Linie abgestimmt mit:        Frau Mutter

Handzeichen

**ATTACHMENT B**

**Bankhaus Guarantee**

# GUARANTEE

**THIS GUARANTEE** is dated as of September 19, 2003 and is by Lehman Brothers Holdings Inc., a Delaware corporation (the "**Guarantor**") in favor of Landwirtschaftliche Rentenbank (the "**Counterparty**" which expression shall include its successors and assigns).

The Guarantor desires to unconditionally guarantee the obligations of Lehman Brothers Bankhaus A.G., a company incorporated under the laws of the Federal Republic of Germany ("**LBB**" which expression shall include its successors and assigns), to the Counterparty (the "**Obligations**") as set forth in this Guarantee.

Accordingly, in consideration of the benefits accruing to the Guarantor from LBB's becoming obligated to the Counterparty, the mutual promises contained in this Guarantee and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor and LBB hereby agree as follows:

1.  **Definitions.**

    The following term shall have the following meaning:

    "**Person**" means any individual, partnership, limited liability company, corporation, trust, joint stock company, unincorporated organization, joint venture, association, company, business trust or other entity or any government or agency, instrumentality or political subdivision of a government.

2.  **Representation and Warranties.**

    The Guarantor represents and warrants that this Guarantee has been duly authorized, executed and delivered by the Guarantor and that this Guarantee constitutes a valid and legally binding obligation of the Guarantor enforceable in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights affecting the Guarantor and to general equity principles.

3.  **Payment Obligations.**

    If LBB fails to make any payment to the Counterparty, the Guarantor will following the request of the Counterparty promptly pay directly to the Counterparty the amount of funds that LBB was required to pay and did not pay the Counterparty under the Obligation. Any payment by the Guarantor to the Counterparty shall discharge and satisfy, by a like amount, any obligation of LBB to the Counterparty. Each of the Guarantor and LBB acknowledges and agrees that the Counterparty is an express third party beneficiary of this Guarantee. No

other persons or entities, other than the parties hereto and the Counterparty, shall have any rights, directly or indirectly, under or pursuant to this Guarantee.

4.    **Waiver of Subrogation.**

The Guarantor waives any and all rights that the Guarantee may have with respect to LBB as a result of making any payment under this Guarantee, including, without limitation, any right of subrogation, set off or counterclaim. The Guarantor understands and agrees that LBB shall have no obligations to it as a result of any payment made under this Guarantee.

5.    **Nature of Obligations; Non Performance; Waivers.**

The obligations of the Guarantor under Section 3 of this Guarantee are continuing and irrevocable and the Guarantor waives all other defenses to payment hereunder. Without limiting the foregoing, the failure by LBB to perform its obligations under any agreement or instrument under which it is a party or by which it is bound or the bankruptcy of LBB shall not affect the Guarantor's obligations under this Guarantee. The Guarantor waives any failure or delay on the part of the Counterparty in asserting or enforcing any of its rights or making any claims or demands under this Guarantee. The Guarantor acknowledges and agrees that this Guarantee is one of payment and not of collection.

6.    **Rank of Obligations.**

The Guarantor warrants and agrees that the payment obligations of the Guarantor that may arise under Sections 3 of this Guarantor constitute irrevocable, unconditional, unsecured and unsubordinated obligations of the Guarantor and rank pari passu with all other unsecured and unsubordinated obligations of the Guarantor.

7.    **Reinstatement.**

If any payment by LBB that would be an Obligation of the Guarantor if not for such payment by LBB is voided (an "Avoidance Event") under any bankruptcy or other insolvency related law of any jurisdiction to which LBB may be or become subject, and, as a result of such Avoidance Event, the Counterparty (or any assignee(s) or successor(s) in interest thereof) is required to return such voided payment, or any portion of such voided payment (an "Avoided Payment"), the Guarantor will pay the amount of the Avoided Payment out of funds of the Guarantor within three business days of receipt by the Guarantor of a certified copy of a final non-appealable order of a court or other governmental body having jurisdiction, or such other written evidence as shall be reasonably acceptable to the Guarantor, with respect to such Avoided Payment (specifying the amount and required manner of repayment thereof), either (i) directly to such court or other governmental body having jurisdiction or (ii) upon presentation of evidence

reasonably satisfactory to the Guarantor that the Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof) has repaid such amount in satisfaction of the legal requirements relating thereto, to the Counterparty (or, if applicable, any assignee(s) or successor(s) in interest thereof). This Guarantee, and the obligations of the Guarantor hereunder, shall be deemed reinstated if and to the extent required to give effect to the obligation of the Guarantor to pay any Avoided Payment in accordance with the preceding sentence.

8.  **Termination; Amendment.**

This Guarantee may be amended or terminated at any time by written amendment or agreement signed by all parties executing this Guarantee provided, however, that no such amendment may adversely affect the rights, whether absolute or contingent, of the Counterparty that shall have accrued or which may accrue under any agreement or instrument, other than any rights with respect to any Obligation agreed to after the date that the Counterparty has received notice of such amendment; and provided further that no such termination shall be effective with respect to any agreement or instrument agreed to prior to the Counterparty's receipt of notice of such termination until such time as all such Obligations theretofore agreed to or incurred by LBB shall either no longer be outstanding or be satisfied in full.

9.  **Notices.**

All notices or demands on the Guarantor shall be deemed effective when received, shall be in writing and shall be delivered by hand or by registered mail, or by facsimile transmission promptly confirmed by registered mail, addressed to the Guarantor at:

If to the Guarantor:  Lehman Brothers Holdings Inc.
                     Attention: Corporate Counsel
                     399 Park Avenue
                     New York, NY 10022
                     Attention:    Corporate Counsel
                     Telephone:    (212) 526-0778
                     Facsimile:    (212) 526-0339

If to LBB:  Lehman Brothers Bankhaus A.G.
            Rathenauplatz 1
            D-60313, Frankfurt Am Main, Germany
            Attention:    Legal Counsel
            Telephone:    +49-69-15307-0
            Facsimile:    +49-69-15307-6499

Any such notice or demand shall be deemed to have been received:

(a)     if sent by telefax, with a confirmed receipt of transmission from the receiving machine, on the day on which transmitted; and

(b)     in the case of a written notice given by hand or by courier, on the day of actual delivery.

10.     Assignment; Successors.

Neither this Guarantor nor any rights or obligations hereunder may be assigned, transferred or delegated to any other Person or entity, and any such assignment, transfer or delegation shall be null and void, provided however that the Counterparty may assign their rights and interest and obligations hereunder to an assignee or transferee to which they have transferred their interest and obligations under any agreement or instrument in which the Counterparty and Guarantor are parties pursuant to the provisions thereof. This Guarantee shall be binding upon the Guarantor and upon its successors.

11.     Withholding Taxes.

Any payments to the Counterparty under this Guarantee shall be free of all withholding, stamp and other taxes and other governmental charges of any nature whatsoever. If any withholding is required, the Guarantor will pay the same to the appropriate governmental body and pay such additional amount to the Counterparty which, after deduction of any withholding, stamp or other taxes or other governmental charge of any nature whatsoever imposed with respect to the payment of such additional amount, shall result in the Counterparty receiving an amount equal to the amount that otherwise would have been payable had there been no such withholding.

12.     Governing Law.

(a)     This Guarantee shall be governed and construed in accordance with the substantive law of the State of New York, without regard to conflicts of law principles.

(b)     The Guarantor irrevocably submits to the non-exclusive jurisdiction of the courts of New York City.

(c)     LBB irrevocably appoints LBHI in relation to proceedings in State of New York as its agent to receive service of any legal processes on its behalf in connection with this Guarantee without excluding any other means of service permitted by the law of the relevant jurisdiction.

IN WITNESS WHEREOF, this Guarantee has been duly executed as of the date
first above written.


LEHMAN BROTHERS HOLDINGS INC.

By:
Name:                    Oliver Budde
Title:                   Vice President


LEHMAN BROTHERS BANKHAUS A.G.

By:
Name: Helmut Olivier
Title:  Member of the Managing Board           Frank Oliver Zeitz    Markus Botmann
                                               Prokurist


                                        Unterschrift geprüft   29.05.03

Claim No. 2009 Folio 838

THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

B E T W E E N:

LEHMAN BROTHERS SPECIAL FINANCING INC
Claimant

- and -

LANDWIRTSCHAFTLICHE RENTENBANK
Defendant

---

**DEFENCE**

---

Hogan & Hartson
Juxon House
100 St Paul's Churchyard
London EC4M 8BU
Ref: RB/JH

Tel:    020 7367 0200
Fax:    020 7367 0220

