Claimant<br>
First<br>
M Shankland<br>
2 September 2009<br>
"MS1"

| | |
|---|---|
| IN THE HIGH COURT OF JUSTICE | 2009 FOLIO NO. 838 |

**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**

**BETWEEN:**

**LEHMAN BROTHERS SPECIAL FINANCING INC.**

**Claimant**

-and-

**LANDWIRTSCHAFTLICHE RENTENBANK**

**Defendant**

**WITNESS STATEMENT
OF MATTHEW SHANKLAND**

I, MATTHEW SHANKLAND, of Weil, Gotshal and Manges, One South Place, London EC2M 2WG, STATE AS FOLLOWS:

**Introduction**

1  I am a partner in the law firm of Weil, Gotshal & Manges ("**WGM**"), solicitors for the Claimant in this matter, Lehman Brothers Special Financing Inc. ("**LBSF**"). I am authorised to make this statement on behalf of LBSF.

2  Except where otherwise stated, the facts and statements contained in this witness statement are based on facts and matters within my knowledge and acquired by me in the course of acting as the Claimant's solicitor. I believe such facts and statements contained in this witness statement to be true and correct. Where any facts or statements are not

within my own knowledge they are true to the best of my knowledge and belief and, where appropriate, I indicate the source of that knowledge and belief. Any references to page numbers herein are to documents exhibited at "MS1".

3    I make this statement in support of LBSF's application for summary judgment in these proceedings (the "**Claim**"), and in response to the Defendant's application to stay the Claim (the "**Stay Application**"). It is my belief that the Defendant does not have any reasonable prospect of defending the Claim, that there is no other compelling reason for disposing of the Claim at trial and, accordingly, that an order for summary judgment should be entered against the Defendant. The Defendant admits the Claim in its Defence but attempts to raise a raft of issues related to the laws of Delaware and the USA which, the Defendant contends, may enable it to raise a right of set-off. These issues are irrelevant and the Defendant's request for a stay on account of them is misconceived.

**The Claim and Procedural History**

4    The Claim is for, *inter alia*, an amount of money in the sum of US$43,465,860.98 (together with contractual interest as specified at paragraph 26 of the Particulars of Claim and/or statutory interest thereon) which the Defendant owes the Claimant under a swap master agreement entered into between the parties dated 9 January 1996 (the "**Swap Master Agreement**") (MS1 pp 1-18), a schedule to the Swap Master Agreement (the "**Schedule**") (MS1 pp 19-36) and two specific transaction confirmations dated 28 July and 25 August 2003 (the "**Confirmations**") (MS1 pp 37-40 and 41-44). The Swap Master Agreement was amended on each of 28 July 2004 (the "**First Amendment**") (MS1 pp 45-48) and 26 February 2007 (the "**Second Amendment**") (MS1 pp 49-50). The nature and an explanation of the sums owing to the Claimant under the Swap Master Agreement (as amended), the Schedule and the Confirmations are more fully described in the Particulars of Claim.

5    The Claim was issued on 23 June 2009 and served upon the Defendant by courier on 2 July 2009. The Claimant lodged a Certificate of Service on 3 July 2009 which is exhibited at p 51 of MS1. Under CPR 6.10, deemed service of the Claim therefore took

place on 6 July 2009, being two business days after delivery of the claim form by courier (not 3 July 2009 as erroneously stated in the Certificate of Service).

6  The Defendant lodged an Acknowledgment of Service on 20 July 2009 (MS1, p 52) in which it stated it intended to dispute the jurisdiction of this court. Thereafter, the Claimant acceded to the Defendant's request for an extension to the deadline for service of the Defence up until 17 August 2009 (correspondence in respect of which appears at MS1, pp 53-54). The Defendant lodged its Defence and served the same upon the Claimant on 17 August 2009, together with its Stay Application. Contrary to earlier indications in the Acknowledgment of Service, the Defendant has not sought to contest the jurisdiction of this Court to hear the current proceedings. This has various consequences for the Defendant's Stay Application further discussed below.

7  The Defence and the Stay Application also refer to a motion filed by the Defendant against the Claimant and Lehman Brothers Holdings Inc ("**LBHI**") in LBHI's Chapter 11 bankruptcy proceedings before the US Bankruptcy Court on 14 August 2009 (the "**Discovery Motion**"). On or about the same date as the Swap Master Agreement, LBHI and the Defendant entered into a guarantee which appears at Exhibit B to the Schedule to the Swap Master Agreement (the "**Swap Guarantee**") (MS1, pp 31-32). Pursuant to the Swap Guarantee, LBHI acts as the guarantor of LBSF's obligations under the Swap Master Agreement and Confirmations. By the Discovery Motion the Defendant seeks examination and production of documents by LBHI and the Claimant in an attempt to establish a right of set-off against LBHI under Delaware law which (for the reasons outlined below) does not exist currently and, the Claimant asserts, does not and will not exist at all.

8  The Claimant and LBHI have until 11 September 2009 to lodge objections with the US Bankruptcy Court in response to the Discovery Motion, the hearing of which is due to take place on 16 September 2009. The Stay Application requests a stay of the Claim in England pending resolution of the Discovery Motion and compliance therewith in the event that the Motion succeeds. For the reasons outlined below, it is clear that both the Discovery Motion and the Stay Application are diversionary and delaying tactics

employed by the Defendant to mask the fact that it has no reasonable prospect of defending the Claim.

**Summary Judgment**

9   In the Defence the Defendant admits all material factual allegations of the Claim. The only issue which the Defendant has taken in the Defence relates to a supposed right of set-off which *might* arise under Delaware law, in favour of the Defendant and against sums allegedly owed to the Defendant *by LBHI*. LBHI is not a party to these proceedings, nor has the Defendant sought to join LBHI as such. Further, by the Defendant's own admission, the matters referred to therein only *may* give rise to such a right of set-off (somehow incorporating the LBHI debts) and the Defendant does not, and indeed cannot, plead or assert that any right of set-off exists now under English law or the terms of the relevant contracts which can defeat the Claim. Instead, the Defence (such as it is) relies upon two vague assertions as follows:

9.1   that the "*corporate veil*" between LBSF and LBHI might theoretically be "*pierced*" under Delaware law, with the effect that LBSF is found to be the "*alter ego*" of LBHI; and

9.2   that the US Bankruptcy Court might issue an order (at some unspecified point in the future) substantively consolidating the bankruptcy estates of LBSF and LBHI, resulting in a pooling of the assets and liabilities of the two entities (a "**Consolidation Order**"). It is notable that no application has been made for a Consolidation Order. Indeed no such application could be made until the conclusion of the Discovery Motion Process. Even then, there is nothing to suggest that even if the Discovery Motion succeeds the Defendant will actually have the grounds to make an application for a Consolidation Order or, if the Defendant does get into a position to make the consolidation application, that it would succeed.

10   At the outset, and again by the Defendant's own admission, none of the circumstances which the Defendant contends may give rise to a right of set-off currently exist or can be

proved to exist. Further, the Defendant has not produced any evidence either with its Defence or in support of its Stay Application in support of the likelihood of a Consolidation Order or that any "*corporate veil*" between LBSF and LBHI can be "*pierced*" under Delaware law. As a matter of fact, the Defendant simply has no current right of set-off under Delaware law or any other law and has not pleaded as such.

11    I am advised (by my colleague Robert Lemons, a partner in the New York office of Weil, Gotshal & Manges) and believe that there is an extremely low probability that a US court might make a finding sufficient to "pierce the corporate veil" between LBSF and LBHI, or that the US Bankruptcy Court would make a Consolidation Order in respect of the LBSF and LBHI bankruptcy estates. In any event, both of these issues are entirely irrelevant to the prior question of the Defendant's current (and in effect admitted) liability in respect of the Claim.

12    Further, the limits of the Defendant's contractual right of set-off under the Swap Master Agreement are quite clear from its terms. The Second Amendment added a new provision 5(l) to the Schedule, which in turn added a new Section 6(f) to the Swap Master Agreement (MS1 p 49). In broad terms, Section 6(f) provides that the parties to the Swap Master Agreement may set-off amounts owed under any other agreement *as between themselves*. There is no mention of any right of set-off against sums payable to or from any other third parties or, more particularly, any other Lehman Brothers entities, subsidiaries or affiliates. The Defendant does not mention this clause in its statements of case in this proceeding.

13    There being (i) no right of set-off against LBHI under Delaware law or any other law currently; (ii) no likelihood of any such right arising (either as a result of the vague and unparticularised "*alter ego*" argument or under any potential Consolidation Order); and (iii) clearly defined contractual limits to the Defendant's right of set-off as provided for by the Second Amendment, the Defendant accordingly has no reasonable prospect of defending the Claim.

14    Further, the Defence raises no other issues which require determination at trial.

15    LBSF reserves its right to adduce expert evidence as to the laws of the state of Delaware and of the USA in the event that the Court considers it necessary or appropriate – at the current time LBSF maintains that the laws of the state of Delaware and of the USA are irrelevant in this case.

**Conclusion**

16    Accordingly, the Claimant applies for summary judgment on its claim in the sum of US$43,465,860.98 (together with contractual and/or statutory interest as specified at paragraphs 26 and 27 of the Particulars of Claim).

17    The Claimant also applies for summary judgment of its claim at paragraph 4 of the Prayer for Relief for an inquiry as to all sums owing by Rentenbank under the Swap Master Agreement and for subsequent order for any and all sums found to be due over and above the sums already claimed. The amount of the Claim is based on information given to LBSF by the Defendant, and LBSF has not had the opportunity to confirm this information.

18    The Claimant also applies for summary judgment of an award of its costs in the Claim.

19    If successful in its application for summary judgment the Claimant intends to seek the Court's permission for a disposal hearing for the determination of the inquiry and any award of costs referred to above.

I believe that the facts stated in this witness statement are true.

Signed: ..................................................
**Matthew Shankland**

Date:    2 September 2009

Claimant
First
M Shankland
2 September 2009
"MS1"

2009 FOLIO NO. 838

**IN THE HIGH COURT OF JUSTICE**

**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**

**BETWEEN:**

**LEHMAN BROTHERS
SPECIAL FINANCING INC.**

<u>Claimant</u>

-and-

**LANDWIRTSCHAFTLICHE
RENTENBANK**

<u>Defendant</u>

---

**WITNESS STATEMENT
OF MATTHEW SHANKLAND**

---

Weil, Gotshal & Manges
One South Place
London EC2M 2WG

Tel: 020 7903 1000
Ref: MS/LC/AF/58399.0003

<u>Solicitors for the Claimant</u>

US_ACTIVE:\43140243\01\43140243_1.DOC\58399.0003