| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| **A. The Court Assertedly Lacks Power to Order ADR/Mediation** | | | |
| 1.  Derivatives ADR Procedures allegedly should apply <u>only</u> to adversary proceedings.  In *Enron* and *Ames* the mediation procedures only applied to adversary proceedings. | o These objections assert form over substance and would require wide-scale litigation in order to invoke the Derivatives ADR Procedures. Essentially, these Derivatives Counterparties would require the Debtors to commence over 250 adversary proceedings and only then be able to initiate mediation as to any one matter.  No benefit will be gained from going through the exercise of commencing an additional 250 (at least) adversary proceedings.  Judicial resources would be wasted and the benefits of ADR/mediation for the parties, i.e., minimizing costs, delay and waste of limited resources, would be lost.  This Court has previously noted that its calendar is already overburdened.<br><br>o The Title to M-143 itself provides "Adoption of Procedures Governing Mediation of Matters in ***Bankruptcy Cases and*** Adversary Proceedings."<br><br>o Hence, section 1.3 of M-143 applies to "any adversary proceeding, contested matter or ***other dispute***."  A formal adversary proceeding is not required to commence mediation.<br><br>o Also, although *Enron* ordered only adversary proceedings to mediation, at the time of the entry of the ADR order, that case then involved fewer than 30 adversary proceedings and *Enron* was over 1.5 years into the case at the time mediation was ordered.  These *Lehman* cases are early in their administration and will involve at least 250 disputes.<br><br>o Also, the *Enron* mediation order immediately stayed all adversary proceedings except for pending dispositive motions therein. | 8 | 1 |
| 2.  Derivatives Contracts do not include mediation provisions. Mandatory Derivatives ADR Procedures violates the | o The Debtors are not invoking rights under the Derivatives Contracts to mediate disputes.  Rather, the Debtors are seeking to settle contractual disputes through the provisions of the General Order M-143 ("The Court | 8 | 5 |

1

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| terms of the Derivatives Contracts. Section 105 of the Bankruptcy Code does not give the Court the right to modify the substantive rights of parties. Derivatives Counterparties should not be required to participate in mandatory mediation; mediation is burdensome and expensive. | may order assignment of a matter to mediation upon its own motion or the motion by any party in interest") and the inherent power of the Court under section 105(a) of the Bankruptcy Code to manage its docket.<br><br>o While bankruptcy courts frequently modify contractual rights, the Revised Proposed Order does not modify or affect any substantive rights of Derivatives Counterparties. Mediation is non-binding and an attempt to consensually resolve disputes.<br><br>o The alternative to mediation would be litigation, which is more costly, time consuming and burdensome for all concerned. | | |
| 3.  The Court should decide disputes between Debtors and creditors. Mediation is inconsistent with a centralized decision-making process the bankruptcy usually entails. | o There are no decisions rendered in ADR/mediation, which is merely an undertaking seeking to reach a consensual resolution. Derivatives Counterparties are not required to settle but only to negotiate and mediate in good faith, and the mediator has no power to decide contractual disputes.<br><br>o Section 1.1 of M-143: "The Court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee." Parties do not have to consent to mediation. | 1 | 1 |
| 4.  Since some Derivatives Counterparties may not file claims, the Debtors' claims may be non-core proceedings. Derivatives Counterparties are entitled to have their matters heard before an Article III court, including the right to assert defenses to the Debtors' request for sanctions in the procedures. | o RBS, which filed this objection, has already filed two proofs of claim against LBHI.<br><br>o Martin J. Bienenstock, Esq., lead counsel for RBS, took full advantage of mediation as lead counsel for debtors in *Enron*, where mediation was ordered by an Article I judge.<br><br>o General Order M-143 was issued by an Article I judge.<br><br>o Because the Debtors' disputes over Derivatives Contracts will have a significant impact on the administration of the estate,  the Debtors' affirmative claims against Derivatives Counterparties may be core whether or not proofs of claim are filed. *See In re U.S. Lines, Inc.*, 197 | 4 | 2 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| | F.3d 631, 638 (2d Cir. 1999) (holding that adversary proceedings related to indemnity insurance contracts were core where such contracts "may well be… 'the most important asset of [the debtor's] estate.").<br><br>o The Revised Proposed Order provides that all rights of Derivatives Counterparties are reserved, including the right to assert a motion to withdraw the reference. *See* Revised Proposed Order ¶ 5.<br><br>o The Court's section 105(a) power includes power to order sanctions. The objection ignores the existence of M-143.<br><br>o Even assuming the Court could not issue sanctions, it could propose findings to the District Court and recommend that the District Court impose such sanctions. | | |
| 5. The Court does not have personal jurisdiction over Derivatives Counterparties located outsider the United States that have not filed a proof of claim and therefore the mandatory Derivatives ADR Procedures should not apply to such Derivatives Counterparties. | o This is not the proper time or place for the Court to make a determination with respect to personal jurisdiction over particular Derivatives Counterparties. Such assertions should be brought before the Court on a case-by-case basis in a proper and orderly fashion.<br><br>o Nothing prevents the settlement of disputes while preserving personal jurisdiction defenses. They are not mutually exclusive.<br><br>o Derivatives Counterparties that take this position run the risk that the Court could grant sanctions or a default judgment against them. If those parties are correct, the defense of lack of personal jurisdiction is preserved. | 6 | 2 |
| 6. Derivatives Contracts governed by foreign law should not be subject to these proceedings. | o No basis is offered or exists for the proposition that contracts governed by foreign law should be excluded from the jurisdiction of the Bankruptcy Court to order mediation, whose power as a matter of law extends to all of the Debtors' property wherever located, and often deals with matters governed by foreign law. | 1 | 0 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
|  | o The Court has the inherent power to manage its docket and case load.<br><br>o Substantive rights are not being altered and each Derivatives Counterparty has the right to assert the application of foreign law in mediation and thereafter, if and when an adversary or other proceeding is commenced against such Derivatives Counterparty.<br><br>o Mediators are competent to mediate disputes under foreign law. |  |  |
| 7. Derivatives ADR Procedures should expressly not apply to governmental units since M-143 does not apply to governmental units. | o Many governmental units were required to and did mediate in *Enron*. The authority to require a governmental unit to mediate comes from section 105(a) of the Bankruptcy Code and the Court can craft relief beyond the general order to accommodate the circumstances of the Debtors.<br><br>o Moreover, as in *Enron*, this objecting party is not a traditional governmental unit acting in the public welfare sense. Requiring this Derivatives Counterparty to mediate would not infringe on its enforcement of a police or regulatory power. This is a profit making proprietary arm of the government that was engaged in complex derivatives trading to make a profit.<br><br>o The Debtors are parties to Derivatives Contracts with several hundred municipalities. Currently, the Debtors are aware of at least 30 municipal counterparties that have approximately $800 million in known disputes. If the objection is sustained, all of these disputes would have to be adjudicated by formal adversary proceedings that will clog the Court's docket and otherwise burden the Court and the Debtors.<br><br>o Of the many municipalities that are parties to Derivative Contracts, only this one quasi-governmental unit objected. | 1 | 0 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| **B. Objections that have been Addressed and Satisfied by Changes Already in the Revised Proposed Order** | | | |
| 8. Participation in mediation should not result in a Derivatives Counterparty waiving its right to a jury trial. The motion is not clear whether a party "affirmatively chooses" mediation. | o The Revised Proposed Order addresses and cures this objection preserving existing jury trial rights. *See* Revised Proposed Order ¶ 14. | 25 | 11 |
| 9. The order should include a provision reserving all substantive rights of Derivatives Counterparties. | o The Revised Proposed Order addresses and cures this objection. *See* Revised Proposed Order ¶ 5. | 5 | 4 |
| 10. The mediator should not be able to certify questions to the Court. | o The Revised Proposed Order addresses and cures this objection by removing this provision. *See* Revised Proposed Order ¶ 10(b). | 35 | 12 |
| 11. The Debtors should face sanctions for failure to reply to the Derivatives Counterparties response, instead of automatically going to mediation. The Debtors should be obligated to respond to a counteroffer. | o The Revised Proposed Order addresses and cures this objection by providing that the Debtors will reply to the Derivatives Counterparty's response and the Debtors do face sanctions in equal measure with Derivatives Counterparties. *See* Revised Proposed Order ¶ 8(d). | 16 | 4 |
| 12. Debtors should pay the fees and expenses of the mediator. | o The Revised Proposed Order addresses and cures this objection. *See* Revised Proposed Order ¶ 15. The Debtors will pay for the expenses of the mediator except in the case of sanctions ordered by the Court after notice and a hearing or expenses related to video conferencing costs. | 33 | 10 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| 13. It is burdensome to require a principal with settlement authority to attend mediations in person. Appearances by local counsel and/or telephonic or video conferencing appearances should be sufficient. | o The Revised Proposed Order addresses and cures this objection by making accommodation that principals can appear by video conference to the extent acceptable to the mediator and at such principal's expense. *See* Revised Proposed Order ¶ 10(f).<br>o Moreover, section 3.2 of M-143 provides "A representative of each party shall attend the mediation conference, and must have complete authority to negotiate all disputed amounts and issues." | 19 | 7 |
| 14. Applicable Trustees should receive all notices and communications for securitizations or trusts that entered into Derivatives Contracts with the Debtors. | o The Revised Proposed Order addresses and cures this objection. *See* Revised Proposed Order ¶ 8(a). | 4 | 2 |
| 15. Timeframes set forth are not sufficient for the trustees to provide adequate notice to noteholders of securitizations or for trustees to get the proper directions from noteholders. | o The Court has held (in denying BNY's motion to dismiss in the Perpetual matters that noteholders are not indispensable parties.<br>o The Revised Proposed Order adds extra time for trustees during the Notice/Response stage of ADR. *See* Revised Proposed Order ¶¶ 8 and 9.<br>o Trustee's are required to maintain a register and should be able to identify and take direction from noteholders. | 2 | 0 |
| 16. The ADR Notice should be served at least on the addresses included in the Derivatives Contract and any counsel that has appeared for such party in the chapter 11 cases. | o The Revised Proposed Order addresses and cures this objection. *See* Revised Proposed Order ¶ 8(a). | 13 | 4 |
| 17. The order should provide that the Derivatives ADR Procedures do not affect | o The Revised Proposed Order makes clear that substantive rights of parties are not affected by participating in non-binding mediation. *See* Revised | 4 | 2 |

6

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| the choice of law rules on substantive issues. | Proposed Order ¶ 5.<br>o  Mediation does not decide any substantive issue of law. | | |
| 18. Confidentiality provisions should be modified so that trustees can share the settlement/mediation information with the noteholders and advisors. | o  The Revised Order addresses and cures this objection. See Revised Proposed Order ¶13. | 5 | 3 |
| **C.  Who May Initiate Derivatives ADR Procedures and When** | | | |
| 19. Derivatives Counterparties should be able to initiate Derivatives ADR Procedures for all of their Derivatives Contracts. | o  Derivatives Counterparties should not be able to use mediation to supplant, interfere with or overlap the claims process.<br>o  If Derivatives Counterparties commenced Derivatives ADR Procedures there would be chaos and the Debtors would not be able to manage either the claims process or any ADR process.<br>o  To sustain this objection would result in wholsale waste of the Debtors' assets. | 15 | 5 |
| 20. The definition of "Derivatives Counterparty" should not include "a person or entity who exercised or failed to exercise duties in relation to such contract". The definition should include only actual parties to Derivatives Contracts, not those that may have duties under the contract or affiliates. | o  Some Derivatives Counterparties are shell special purpose entities with no employees. The objected to language is necessary to permit and require trustees or other agents or noteholders with respect to such entities that have the authority to act on behalf of special purpose entities to participate in mediations.<br>o  The Derivatives ADR Procedures do not place an undue burden on such parties. See Revised Proposed Order ¶10(f). | 10 | 3 |
| 21. The definition of "Derivatives Contract" is unclear and overly broad. | o  Mediation is non-binding. Parties are merely being encouraged to enter into settlement discussions and mediation. The Derivatives ADR | 10 | 3 |

7

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| The definition could be interested to include a contract to which the Debtors are not parties and guarantees. Some Derivatives Counterparties suggest using Bar Date Order definition. | Procedures have a different purpose than Bar Date order, which imposed obligations on Derivatives Counterparties. If Derivatives Counterparties fail to comply with the procedures in the Bar Date Order, they lose their claim. In the context of the Derivatives ADR Procedures, whether or not parties reach an agreement, there is no burden on Derivatives Counterparties, all rights are reserved, and there may well be a settlement. | | |
| 22. Derivatives ADR Procedures should provide that any Derivatives Contracts subject to an adversary proceeding will <u>not</u> be subject to the Derivatives ADR Procedures. | o The Revised Proposed Order does not provide that adversary proceedings are stayed. This question will be determined on a case by case basis where the Court can determine if staying an adversary proceeding is appropriate.<br>o M-134 contemplates that mediation and adversary proceedings can proceed on dual tracks. *See* M-143 § 1.1. | 3 | 2 |
| 23. Derivatives Counterparties should not be required to respond to an ADR Notice prior to October 22, 2009 (the deadline for submission of Derivative Questionnaire in connection with the bar date). | o *See* Response to #21 above.<br>o Bar Date is unrelated to settling a claim pursuant to mediation. There are many Derivatives Counterparties that will be able to move forward with mediations prior to October 22, 2009. The entire ADR process should not be put on hold out of the concerns raised by just a few Derivatives Counterparties, especially as October 22, 2009 is less than 60 days away. | 13 | 4 |
| 24. Derivatives ADR Procedures provide an informational imbalance as Debtors are aware of prior mediations and results, while Derivatives Counterparties are not. | o This is the reality of bankruptcy. The Debtors have a fiduciary obligation to deal with each and every one of their Derivatives Contracts. Whether Debtors were negotiating settlements or pursuing adversary proceedings, Debtors will always have more "information" than a Derivatives Counterparty.<br>o There is no winner or loser in mediation. The parties will try to reach a resolution in ADR, but settlement is not mandatory. As such, the | 2 | 0 |

8

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
|  | Debtors' experience in similar mediations is not prejudicial to the process and is often beneficial.<br><br>o Were this irrational fear to prevail there would be no mediations at all after the first one. |  |  |
| 25. Derivatives ADR Procedures provide an informational imbalance as Debtors have received information from Derivatives Counterparties in claims process. | o *See* Response to #24 above.<br><br>o There is no informational imbalance because Derivatives ADR Procedures do not relate to Derivatives Contracts for which Derivatives Counterparties are owed money and as to which claims are filed.  These are affirmative claims of the Debtors.<br><br>o In any event, Debtors have incentive to share as much information as appropriate to achieve settlement. | 2 | 2 |
| **D.  There is Allegedly Nothing to Mediate** |  |  |  |
| 26. There is "no dispute" between the parties.  The Derivatives Contracts give the Derivatives Counterparty the exclusive  right to terminate under these circumstances.  Until the Derivatives Counterparty terminates and calculates the termination amount in accordance with the Derivatives Contract, there is no dispute as to the amounts owed.  No amounts are currently due to the Debtors and amounts that are owed will not come due for some time.  As such, there is nothing to mediate. | o These Derivatives Counterparties assume, without support, no dispute exists.  The Debtors disagree that under the Bankruptcy Code, including the Safe Harbor provisions, Derivatives Counterparties enjoy an unlimited right to defer for an unreasonable amount of time the decision whether to terminate or not terminate a Derivatives Contracts after a Debtor's default.  There are limits on how long a Derivatives Counterparty can wait to exercise its rights under the Safe Harbor provisions and whether a Derivatives Counterparty can "cherry-pick" an advantageous termination date.<br><br>o As in *Metavante,* those parties that have current payment obligations to Debtors and are not performing, the Debtors have a right to move to compel performance and failure to perform gives the Debtors the right to terminate the contract.  As the Court has observed, such parties should | 14 | 3 |

9

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| | have to "pay to play". <br><br> o  Thus, rather than commencing litigation against these Derivatives Counterparties, the Debtors are seeking to reach consensual resolutions. These disputes over such legal issues can be discussed in the mediation process, which is non-binding.  If Derivatives Counterparties continue to believe that they do not need to do anything regarding termination, there is no prejudice to them from participating in non-binding mediation. | | |
| 27. Certain Derivatives Counterparties have validly terminated their Derivatives Contracts and paid the Debtors what they believe to be the required amount.  The Derivatives ADR Procedures should not apply to such Derivatives Counterparties. | o  Derivatives Counterparties have no right to unilaterally determine that their valuation of termination payments is correct, final and not subject to challenge.  They could be wrong. <br><br> o  Derivatives Counterparties cannot presume that their interpretations of the Bankruptcy Code are correct.  They cannot supplant the role of the Court.  Nor are they the Debtors, who have a fiduciary duty to confirm the accuracy of termination payments. | 5 | 0 |
| **E.  Mediator Related Objections** | | | |
| 28. There should be more than one mediator appointed pursuant to the Derivatives ADR Procedures.  Using only one mediator gives the Debtors an unfair advantage as they will become familiar with strategies and tactics that persuade the mediator and the mediator can become familiar and supportive of the Debtors' positions.  Also the burden will be too large for one mediator.  The procedures do not take into account possible conflicts or incapacity issues of the one mediator. | o  The Revised Proposed Order (as all interim versions thereof did) contemplates more than one mediator.  The Debtors currently believe, in consultation with the Creditors' Committee, that 3-4 mediators should be appointed by the Court. <br><br> o  There are no unfair advantages to Debtors because mediation is non-binding, apart from negotiating in good faith, the Derivatives ADR Procedures do not impose on Derivatives Counterparties any burden. Nothing can force on Derivatives Counterparties any requirement that they agree to settle. | 22 | 7 |

10

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| 29. The parties should agree on the mediator, and the Court should appoint the mediator from a pool only if the parties cannot agree, in accordance with M-143. | o It is impractical to expect the Debtors to reach agreement with all Derivatives Counterparties on a mediator for hundreds of disputes or to request the Court to appoint a new mediator for every dispute. This objection, if sustained, would require all parties to expend their time, money and effort over the selection of a mediator rather than trying to reach a resolution of disputes. | 19 | 7 |
| 30. Derivatives ADR Procedures should require that the mediator be qualified and registered as a mediator | o There no evidence that the Court would do otherwise. These objections are an intrusion on the Court's prerogative to appoint a mediator. | 2 | 0 |
| 31. The mediator should be obligated to disclose all relevant relationships and conflicts to the parties. | o The mediator will review every matter proposed for mediation for potential conflicts of interest.<br>o Section 2.3 of M-143 already provides that mediators will be disqualified in any matter where a judge would be disqualified. | 3 | 1 |
| **F. Sanctions** | | | |
| 32. The paragraph in the Order that sets forth the sanctions should be deleted. As M-143 provides, the Court should determine the appropriate sanctions and circumstances to impose them. Such matters should not be set forth in the Order. | o The Revised Proposed Order is consistent with M-143, as the Revised Proposed Order provides only the possible sanctions that might be imposed by the Court and only after notice and a hearing. The appropriateness and level of sanctions remain within the purview of the Court. See Revised Proposed Order ¶12.<br>o Moreover, sanctions are not one-sided for the benefit of the Debtors. Both parties may move for sanctions where appropriate.<br>o Section 105(a) of the Bankruptcy Code permits the Court to impose sanctions. | 18 | 6 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| 33. The sanctions included in the Order are draconian. The sanction of the full amount of the affirmative claim of the Debtors is not fair and gives Debtors incentive to assert that a Derivatives Counterparty did not participate in good faith in the Derivatives ADR Procedures. | o This objection presumes incorrectly and without support that the Debtors will act in bad faith.<br><br>o Again, sanctions may be ordered by the Court only after notice and a hearing.<br><br>o See Response to #32 above. | 4 | 1 |
| 34. The Derivatives ADR Procedures are inflexible. What if a Derivatives Counterparty needs more information or requests a clarification of the ADR Notice? The procedures do not give additional time, instead result in sanctions for non-compliance. | o See Response to #32 above.<br><br>o Sanctions are not automatic. The Debtors and Derivatives Counterparties both may request the imposition of sanctions by the Court, after notice and a hearing. *See* Revised Proposed Order ¶ 12.<br><br>o If, after being served with an ADR Notice, a Derivatives Counterparty requires more time or additional information it can decline to accept the Debtors' demand, and can specify which type of information it lacks to support a substantive response. | 10 | 2 |
| 35. Trustees should not be subject to sanctions for failure to participate in ADR/mediation since they have no economic interest in the settlement. | o The Court has held in the BNY/Perpetual matter that noteholders are not indispensable parties, and trustees have fiduciary duties to uphold.<br><br>o Trustees file claims and take actions all the time on behalf of noteholders. Trustees counsel have frequently participated in this case and filed objections and should be subject to sanctions. | 1 | 0 |
| **G. Limitations on Scope of Derivatives ADR Procedures** | | | |
| 36. Derivatives ADR Procedures are costly and should not apply to Derivatives Contracts if there is less than $150,000 in | o The Debtors are responsible for paying the cost of a mediator and will naturally consider a cost-benefit analysis of which disputes are appropriate for mediation. There is no reason, therefore, for a blanket | 1 | 1 |

12

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| dispute. | exclusion in advance of certain contracts or Derivatives Counterparties.<br><br>o  Also, the objection fails to consider that the dispute may be resolved without the need for a mediator, but during the notice/response stage. | | |
| 37. Derivatives ADR Procedures should provide a means for Derivatives Counterparty to contest whether the Derivatives ADR Procedures apply to them.  Derivatives Counterparties should be able to make a showing to the Court why they should be able to opt-out of the Derivatives ADR Procedures. | o  Including an automatic opt-out provision would undermine the entire Derivatives ADR Procedures.  Some Derivatives Counterparties would likely file such motions and distract from the mediation process.<br><br>o  Nothing in the Revised Proposed Order prevents Derivatives Counterparties from filing a request with the Court for exclusion for good cause shown.<br><br>o  Moreover, Derivatives Counterparties already have the right pursuant to Section 3.6 of M-143 to file a motion with the court to withdraw a matter from mediation for good cause shown. | 3 | 2 |
| 38. Debtors should publish a list of Derivatives Contracts they believe are subject to these Derivatives ADR Procedures. | o  The Debtors were parties to over 900,000 derivative transactions.  Accordingly, it is unreasonable to expect that they have, or are even close to having, completed their review of every agreement to be in a position to publish a list. | 5 | 2 |
| 39. Certain adversary proceedings that relate to broad issues, should be resolved before mediation commences. | o  This objection is so vague, it is meaningless.<br><br>o  Mediation is non-binding.  Just as they are now, parties are free to make their own judgments about the likelihood of outcomes in litigations and decide to settle or not.<br><br>o  There were no such bars to entry into mediation in *Enron*. | 4 | 2 |
| 40. There should be a limit on the number of ADR Notices and mediations that any Derivatives Counterparty is obligated to respond to or participate in at any one | o  The objection assumes that the Debtors will apply the Derivatives ADR Procedures irrationally, in bad faith and without common sense.  The Debtors intend to apply the Derivatives ADR Procedures in a manner that accomplishes global resolutions with minimal expense.  The Revised | 3 | 0 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| time. That is, a Derivatives Counterparty could be party to a number of Derivatives Contracts with the Debtors and be inundated with multiple ADR Notices issued by the Debtors. | Proposed Order permits flexibility and allows the Debtors and Derivatives Counterparties to agree on accommodations to make sure that should be involved are included. | | |
| 41. Derivatives ADR Procedures should provide a means for Derivatives Counterparties to consolidate mediations. | o   See Response to # 40 above. | 6 | 4 |
| **H. Mediation Logistics and Briefing** | | | |
| 42. Pursuant to M-143, Parties should agree on the location of the mediation, rather than requiring mediation to take place in New York. | o   Paragraph 10(d) of the Revised Proposed Order already provides that the parties and the mediator can agree to a location other than New York to hold the mediation.<br><br>o   Requiring the mediations to take place in New York, New York is consistent with the purpose of having a centralized forum for disputes. The harm and burden of debtors of mediating around the world for hundreds of disputes far outweighs any potential burden to Derivatives Counterparties in coming to New York.<br><br>o   Debtors could initiate adversary proceedings in the Bankruptcy Court and require parties to travel to New York.<br><br>o   *Enron* required mediations to take place in New York, New York<br><br>o   Derivatives Counterparties are sophisticated institutions dealing in complex transactions. They have counsel and should be able to travel to New York. | 35 | 9 |
| 43. It is unclear what amounts to "sufficient information" that will be | o   Paragraph 8 of the Revised Proposed Order provides that ADR Notice will include "a brief explanation setting forth the basis for the demand | 22 | 9 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| included in the ADR Notice. Proposals: (i) a form of such notice should be attached to the Order, (ii) information should be at least what is required by Derivatives Contracts and (iii) information should be at least what is required by Derivative Questionnaire. | and the amount." <br><br> o This is the same type of information a Derivatives Counterparty must provide in a response to an ADR Notice. See Proposed Revised Order ¶8(b). <br><br> o With respect to the Derivative Questionnaire in the bar date motion, Debtors are obligated to pay claim amounts asserted in validly filed proofs of claim, unless the Debtors object to such claim and overcome the prima facie presumption that such claim is valid. Therefore, the Debtors needed certain information from the Derivatives Counterparties to evaluate such claims. Such consequences do not exist in this case. See also Response #21 above. <br><br> o The affirmative claim that the Debtors assert in the Derivatives ADR Notice is a starting point for settlement negotiations. During settlement negotiations or mediation, the parties would be expected to exchange further information about the calculations of the affirmative claim amount. However, a Derivatives Counterparty is not required to agree to a settlement prior to or after mediation. | | |
| 44. The ADR Procedure should include a termination date for mediation so parties do not remain in limbo and incur great expense. Suggest 60- 180 days from the commencement of mediation. | o The revised Proposed Order addresses and cures this objection by providing that the mediation ends upon the request of any party and concurrence by the mediator. *See* Revised Proposed Order ¶10(g). | 4 | 2 |
| 45. Debtors already heave means to monetize Derivatives Contracts via the Order entered by this Court on December 16, 2008 authorizing settlements and assumption and assignment. Also, any settlements must comply with the | o The December 16th order is unrelated to ADR. The Derivatives ADR Procedures are another mechanism to foster settlements. <br><br> o Paragraph 4 of Revised Proposed Order provides that these procedures are additional options for the Debtors and all settlements must comply either with the December 16 order or Bankruptcy Rule 9019. | 5 | 2 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| December 16 order, to which several parties still have outstanding objections. | | | |
| 46. Derivatives ADR Procedures should permit Derivatives Counterparties to assert counterclaims against the Debtors. Also, since Derivatives Contracts provide for netting and setoff, Derivatives ADR Procedures should apply to all Derivatives Contracts between parties. | o The assertion of setoff rights during mediation are expressly preserved by the Revised Proposed Order. *See* Revised Proposed Order ¶6.<br><br>o Unrelated Derivatives Contracts are governed by the bar date process. The Derivatives ADR Procedures are not a substitute for the claims process or the Bar Date Order. | 10 | 3 |
| 47. Derivatives ADR Procedures should clarify whether a Derivatives Counterparty is required to serve any further pleadings after their response. | o The procedures are very clear when Derivatives Counterparties have to serve responses. After serving an reply, Derivatives Counterparties are not required to serve any further pleadings prior to the commencement of mediation. | 2 | 2 |
| 48. Parties should be obligated to exchange briefs prior to mediation. | o Section 3.1 of M-143 provides that "the mediator shall have the duty and authority to establish…the submission of relevant documents". A requirement to exchange briefs prior to the commencement of mediation would delay the process. | 6 | 0 |
| 49. Derivatives Counterparties should have the option of submitting a brief to the mediator without serving it on the other party. | o Ex parte communication by either side does nothing to foster settlement, but rather is a distraction. | 1 | 0 |
| 50. Parties should not be obligated to exchange briefs. Requirement is inconsistent with M-143. | o See response in #48 above.<br><br>o Derivatives ADR Procedures do not require parties to exchange briefs unless the mediator requires briefs, which is consistent with M-143.<br><br>o *Enron* required brief summaries of the matter to familiarize mediator with | 2 | 2 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| | dispute. | | |
| **I. Attendees at Mediation and Settlement Conference** | | | |
| 51. Derivatives ADR Procedures should clarify that counsel to a Derivatives Counterparty may participate in settlement conferences. | o The Revised Proposed Order already provides that counsel may be present at mediations and may participate. *See* Revised Proposed Order ¶ 10(f). | 2 | 2 |
| 52. Parties should have a reasonable opportunity to designate attendees of each mediation. | o Nothing in the Revised Proposed Order prohibits the attendance by additional attendees.<br><br>o The requirement for one person with settlement authority is a floor for, not a ceiling of, attendees. | 6 | 0 |
| **J. Objections Relating to UCC** | | | |
| 53. The Creditors' Committee should not be able to submit briefs in the mediation, but may monitor the proceedings. | o The Creditors' Committee has a statutory right pursuant to section 1109(b) of the Bankruptcy Code to "appear and be heard on any issue" in a bankruptcy case, which, here, includes the right to file briefs in the mediation. | 1 | 1 |
| 54. Derivatives Counterparties should have the right to exclude the Creditors' Committee from the mediation. | o The Creditors' Committee has right to review and opine on the settlement agreements in accordance with derivative sub-committee protocol.<br><br>o The Creditors' Committee was not excluded in *Enron.* | 2 | 1 |
| 55. The Creditors' Committee should not be permitted to attend or participate in mediations. | o The Creditors' Committee has right to review and opine on the settlement agreements in accordance with derivative sub-committee protocol. | 2 | 0 |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| **K. Trustee's Special Needs** | | | |
| 56. Trustees may not be able to obtain settlement authority. They may need to participate in ADR without such authority or include majority of noteholders in the mediation. Other procedures may need to be modified in the case of securitizations or trusts. | o Trustees have fiduciary obligations and should be able to make good faith efforts to get closure, including obtaining settlement authority. | 1 | 0 |
| **L. Miscellaneous** | | | |
| 57. Debtors should pay travel and mediation costs of Derivatives Counterparties. Costs are penalty for failure to settle prior to mediation. | o Objectors are sophisticated Derivatives Counterparties dealing in derivatives and should pay their own costs to travel to New York. Parties may appear by video conference as provided in the Revised Proposed Order ¶10(f).<br><br>o This objection focuses on form over substance. The Debtors can commence an adversary proceeding and require the Derivatives Counterparty to come to New York at its expense. | 1 | 0 |
| 58. The finding in the order that "certain common issues exist" should be deleted since it is a conclusory statement with no support. | o Response unnecessary. | 1 | 0 |
| 59. The Findings in the Order should be eliminated as unsupported. | o Response unnecessary. | 6 | 0 |
| 60. Debtors should be obligated to calculate their affirmative claim amount | o Debtors intend to comply with enforceable contracts and applicable law. | 2 | 0 |

18

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| in accordance with the terms of the applicable Derivatives Contract. | o  Nothing in the Revised Proposed Order states or implies otherwise. | | |
| 61. Derivatives Counterparties have entered into back-to-back Derivatives Contracts, so terminating one contract early could harm a Derivatives Counterparties hedging strategies. | o  Mediation is non-binding and results in no decisions.  All rights are preserved for Derivatives Counterparties, who can enter into a new hedge if they so choose. | 1 | 1 |
| 62. The adversary proceeding commenced by Wong Minibond Noteholders should not be stayed by Derivatives ADR Procedures [Adversary Proceeding No. 09-01120]. | o  The Revised Proposed Order does not provide that adversary proceedings are stayed.  This question will be determined on a case-by-case basis at a time when the Court is able determine if staying an adversary proceeding is appropriate.<br><br>o  M-143 contemplates that mediation and adversary proceedings can proceed on dual tracks.  *See* M-143 § 1.1. | 1 | 1 |
| 63. Barclays PLC Bank and Long Island International Limited contend that Debtors should not be allowed to initiate mediation at a time when it is likely to cause delay in, or distraction from, a pending adversary proceeding or contested matter.  Debtors should be required to institute mediation before the parties have devoted substantial time and expense to the dispute, as provided in M-143 | o  *See* Response to #62 above.<br><br>o  M-143 provides that an adversary proceeding may be assigned to mediation at any time.<br><br>o  Mediation and adversary proceedings are not mutually exclusive so there is no reason to restrict the ability of parties to participate in both proceedings on a dual track. | 1 | 1 |
| **M. ADR/Mediation Time Periods** | | | |

| Objection | Response | Number of Objections on These Grounds on 8/26/2009 | Number of Objections on These Grounds Remaining |
|---|---|---|---|
| 64. 20 days is insufficient time for parties to respond to the ADR Notice. Derivatives Counterparties suggest 45- 60 days. | o Derivatives Counterparties exaggerate the burden of submitting an adequate informal response in 20 days by demanding a response time of 45-60 days. If the Debtors were to file an adversary complaint, Derivatives Counterparties would have 30 days to file formal answers. Here, the response is confidential, non-binding, is not complex and is not required to be as inclusive as a pleading filed with the Court. | 23 | 5 |
| 65. 5 days is insufficient time for Derivatives Counterparties to prepare for a telephonic settlement conference. Derivatives Counterparties suggest 30 days. | o All that is required of Derivatives Counterparties during this stage is to start a dialogue. Pursuant to the order, parties can agree to extend the time to commence mediation pending further discussions. There is no requirement that a settlement be reached in 5 days. | 18 | 7 |
| 66. 2 business days is insufficient time for Derivatives Counterparties to respond to a request for a telephonic settlement conference. | o Two business days is ample time for Derivatives Counterparties merely to schedule a conference with the Debtors. No substantive information need be exchanged within these two business days. It is merely a matter of scheduling and making a phone call. | 15 | 4 |
| 67. The timeframes and noticing provisions of the Derivatives ADR Procedures violate Due Process. | o Mediation is non-binding, parties can decide not to agree to any settlement. No procedural or substantive right of any Derivatives Counterparty is adversely affected. | 2 | 0 |
| 68. The timeframe (5 days to request a conference and 2 days to respond) are unreasonable and settlement is unlikely in such timeframes. Parties will automatically have to go to mediation stage. | o Commencement of the mediation stage is not automatic. Paragraph 9 of the Revised Proposed Order contemplates "continuations or rescheduled settlement calls or meetings arising from [an] initial settlement conference." Moreover, paragraph 10(a) states that "Debtor and the Derivatives Counterparty together shall contact the mediator to schedule the initial mediation." Accordingly, if parties are talking and trying to consensually resolve their disputes, they can agree to extend the "Notice/Response" period. | 2 | 2 |

20