Presentment Date and Time:  September 25, 2009 at 12:00 p.m (Prevailing Eastern Time)
Objection Deadline:  September 25, 2009 at 11:30 a.m (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): October 14, 2009 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                           :
**In re**                                  :    **Chapter 11 Case No.**
                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **08-13555 (JMP)**
                                           :
                      **Debtors.**         :    **(Jointly Administered)**
                                           :
-------------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF APPLICATION**
**OF THE DEBTORS PURSUANT TO SECTIONS 327(e)**
**AND 328(a) OF THE BANKRUPTCY CODE AND RULE 2014**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORIZATION TO EMPLOY DISCOVERREADY LLC AS PROVIDER OF**
**CONTRACT ATTORNEYS,** *NUNC PRO TUNC* **TO THE ENGAGEMENT DATE**

**PLEASE TAKE NOTICE** that the undersigned will present the annexed

Application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated

debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections

327(e) and 328(a) of the Bankruptcy Code, for authorization to employ DiscoverReady LLC

("DR") as provider of contract attorneys special counsel, *nunc pro tunc* to the Engagement Date,

all as more fully described in the Application, to the Honorable James M. Peck, United States

Bankruptcy Judge, for approval and signature on **September 25, 2009 at 12:00 p.m. noon**

**(prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections to the Application, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P. Krasnow, Esq.; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) DiscoverReady LLC, 55 Broadway, 21st Floor, New York, New York, 10006, Attn: Steven Harber; and (vi) any person or entity with a particularized interest in the Application, **so as to be so filed and received by no later than September 25, 2009 at 11:30 a.m. (prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **October 14, 2009, at 10:00 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York 10004-1408.  If an objection is filed the moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  September 14, 2009
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

Presentment Date and Time: September 25, 2009 at 12:00 p.m (Prevailing Eastern Time)
Objection Deadline: September 25, 2009 at 11:30 a.m (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): October 14, 2009 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                          :
In re                                     :    **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :    **08-13555 (JMP)**
                                          :
                        **Debtors.**          :    **(Jointly Administered)**
                                          :
                                          :
------------------------------------------------------------------x

**APPLICATION OF THE DEBTORS PURSUANT TO**
**SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE AND**
**RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**FOR AUTHORIZATION TO EMPLOY DISCOVERREADY LLC AS PROVIDER OF**
**CONTRACT ATTORNEYS, *NUNC PRO TUNC* TO THE ENGAGEMENT DATE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Application to employ

DiscoverReady LLC ("DR") as provider of contract attorneys and respectfully represents:

**Preliminary Statement**

1.      Since November 2005, DR has provided LBHI eDiscovery services

including data processing (email processing and other electronic conversion services), hosting,

consulting and related project management and training (the "eDiscovery Services").  In addition

to the eDiscovery Services, DR has provided Lehman with attorneys and other legal

professionals on a temporary basis (the "Contract Attorneys").  The Contract Attorneys

customarily work under the day-to-day direction, management and supervision of LBHI's in-

house counsel to perform certain documents review tasks and other related services (the

"Document Review Services"). [1] While the Debtors believe that their engagement of DR with

respect to the eDiscovery Services does not require court approval, that is not the case with

respect to DR's provision of Contract Attorneys.  Accordingly, as explained more fully below,

the Debtors request approval of DR's engagement with respect to the Contract Attorneys

pursuant to sections 327(e) and 328(a) of the Bankruptcy Code.

### Background

2.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

3.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

---

[1] The following is only a summary of the services set forth in the Agreement and should not be construed to modify or amend such Agreement.  The actual terms of the Agreement governs the scope of services to be provided to the Debtors by DR.

4.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

5.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

6.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

7.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

8.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Relief Requested

9.      Pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, Rule

2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Rules"), the Debtors request entry of an order

authorizing the engagement of DR as provider of Contract Attorneys, *nunc pro tunc* to October

15, 2008 (the "<u>Engagement Date</u>"), in accordance with the fee structure described below and pursuant to the terms and conditions of an agreement between DR and LBHI, dated July 22, 2009, a copy of which is attached hereto as <u>Exhibit A</u> (the "<u>Agreement</u>").

10.      Pursuant to the proposed engagement, DR will provide the Debtors with Contract Attorneys on a temporary basis to perform the Document Review Services.  Although employed by DR, such Contract Attorneys will work under the day-to-day direction, management and supervision of LBHI's in-house counsel.  In addition, DR will also be providing the Debtors with the eDiscovery Services.

11.      The Debtors request that DR's retention be made effective *nunc pro tunc* to the Engagement Date to allow DR to be compensated for work performed on behalf of the Debtors on or after October 15, 2008, but prior to the submission of this Application.[2]  DR was retained by the Debtors to assist with the production of documents in response to information requests by the Examiner pursuant to the Examiner's investigation as well as investigations launched by the Securities and Exchange Commission.  Further, DR has provided eDiscovery and Document Review support with respect to the numerous adversary proceedings and contested matters filed against the Debtors including, but not limited to, State Street Bank and Trust Company, Field Point IV S.a.r.l., Blue Mountain Credit Alternatives Master Fund L.P., and Yarpa Investimenti S.G.R. S.p.A – RP3 Fund.  Given the need to expedite these investigations and respond to discovery requests, DR was under time pressure to render services prior to receiving authorization from the Court.  Therefore, the Debtors submit that the highly complex and extraordinary circumstances of these chapter 11 cases warrant retroactive approval,

---

[2] Because in many respects the Contract Attorneys, while independent contractors, are like inside counsel, the Debtors inadvertently have made payments to DR with respect to the work performed by the Contract Attorneys prior to the date hereof.  The aggregate amount of such payments totals $1,738,916.15.  All payments to DR with respect to Contract Attorneys have been suspended pending consideration of this Application.

particularly since DR provided necessary services to the Debtors and such services are of value to the estate and all parties in interest.  *See In re Hasset, Ltd.*, 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002) (approving *nun pro tunc* retention application and recognizing that "*nunc pro tunc* applications are disfavored in this Circuit, *see In re Hazen Agricultural Products Service, Inc.*, 109 B.R. 602 (Bankr. W.D.N.Y. 1990), but have been permitted when the attorney performs services of 'value' to the estate"); *see also In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) (finding that a bankruptcy court may grant *post facto* application if employment meets statutory requirements and delay results from extraordinary circumstances); *In re Arkansas Co. Inc.*, 798 F.2d 645 (3d Cir. 1986) (opining that bankruptcy courts have discretion in extraordinary circumstances to retroactively approve a professional's employment); *In re Triangle Chems. Inc.*, 697 F.2d 1280 (5th Cir. 1983) (holding that a bankruptcy court has discretion, as a court of equity, to consider whether such approval of employment should be granted *nunc pro tunc*).

## Basis for Relief

12.    The retention of DR under the terms described herein is appropriate under Bankruptcy Code sections 327(e), 328(a) and 1107(b).  Although DR is not a law firm, the Contract Attorneys employed by DR will be providing legal services to the Debtors.  Therefore, out of the abundance of caution, the Debtors seek approval of DR's engagement pursuant to section 327(e) of the Bankruptcy Code.  Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).  Moreover, section 1107(b) provides that "a person is not disqualified

for employment under section 327 of this title by a debtor in possession solely because of such

person's employment by or representation of the debtor before the commencement of the case."

11 U.S.C. § 1107(b).

13.     Accordingly, section 327(e) of the Bankruptcy Code authorizes the

retention of attorneys who previously represented a debtor prepetition provided that:  (a) the

appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest

adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the

specified special purpose for which counsel is being retained does not rise to the level of

conducting the bankruptcy case for the debtor in possession.  *See In re DeVlieg, Inc.*, 174 B.R.

497 (N.D. Ill. 1994).  *See In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999) (noting that

"where the interest of the special counsel and the interest of the estate are identical *with respect

to the matter for which special counsel is retained*, there is no conflict and the representation can

stand") (emphasis in original).

14.     As described above, DR's engagement also includes eDiscovery Services

whereby DR will assist the Debtors with data processing, hosting, consulting and related project

management and training.  The Debtors believe that, since these services are technological in

nature, they do not fall within the scope of services that are typically provided by "professionals"

within the meaning of the Bankruptcy Code.  Further, the Debtors believe that the eDiscovery

Services are ordinary course such that payments to DR for these services do not require Court

approval pursuant to 363(c) of the Bankruptcy Code.  Accordingly, by this Application, the

Debtors seek approval solely for the Document Review Services pursuant to section 327(e) of

the Bankruptcy Code, *nunc pro tunc* to the Engagement Date.

**The Employment and Retention of DR is in the Best Interests of the Estates**

15.     DR has been providing *Fortune 500* companies fixed fee document review services and integrated discovery solutions which has enabled its clients to drastically reduce their costs with respect to these services.  DR also has extensive experience with bankruptcy litigation, having been involved with many of the largest bankruptcy cases including *In re Enron Corp.*, [Case No. 01-16034], *In re Charter Communications, Inc.,* [Case No. 09-11435], *In re Tribune Company and Tribune Media Services, Inc.,* [Case No. 08-13141], and *In re Drexel Burnham Lambert Group Inc.,* [Case No. 90-B-10421].  The Contract Attorneys provided by DR are experienced and undergo a extensive vetting process to ensure that each Contract Attorney is suitable for the tasks that he or she will be asked to perform on the Debtors' behalf.

16.     The Debtors believe that DR is both well-qualified and uniquely able to perform the services for which it is being retained by the Debtors in an efficient and timely manner.  In order to respond to document subpoenas and requests for production of documents, the Debtors' in-house counsel must review tens of thousands, if not millions, of pages of documents and mark them as responsive to a particular request, or protected as attorney work product or attorney-client privilege.  To date, DR has assisted the Debtors with processing approximately 1.5 terabytes of data and the review of more than 1.9 million documents.  The Debtors believe that employment of the Contract Attorneys through DR represents a cost-effective means for responding to those challenges and will enable the Debtors to avoid the unnecessary expense of hiring an outside law firm or additional in-house attorneys to provide the Document Review Services described above.  In fact, DR believes that its services have resulted in as much as 60 percent savings to the Debtors in certain areas.

17.     Furthermore, over the course of its engagement with the Debtors, DR has become familiar with the Debtors' business operations, as well as the preferences and needs of the Debtors' in-house counsel.  Since November 2005, DR has provided services to Lehman on more than 300 matters.  The core DR team that has serviced Lehman since the outset of its enagement remains in tact and is supporting the continuing needs of the Detbors' estates post-petition.  DR has indicated a desire and willingness to act in the Debtors' chapter 11 cases and render the necessary Document Review Services and eDiscovery Services, and to subject itself to the jurisdiction of the Court.  Therefore, the Debtors submit that the retention of DR on the terms and conditions set forth herein and in the Agreement are necessary and appropriate, are in the best interests of the Debtors, their estates and their creditors, and should be granted in all respects.

### DR's Contract Attorneys Hold No Interest
### Adverse to the Debtors or the Debtors' Estates

18.     Pursuant to the Agreement, DR will monitor the list of interested parties maintained by the Debtors' counsel to ensure that no Contract Attorneys assigned to work for the Debtors have a conflict with respect to the Document Review Services that they will be providing.  Furthermore, in accordance with the Agreement, the Contract Attorneys who will be providing the Document Review Services must individually complete and execute an Affidavit and Disclosure Statement (the "Affidavit"), substantially in the form of Exhibit B annexed hereto, certifying that they do not represent or hold any interest adverse to the Debtors or their estates.

19.     The Debtors shall then file the Affidavits with the Court and serve a copy thereof upon (i) the U.S. Trustee; and (ii) attorneys for the Creditors' Committee (together with the Debtors, the "Reviewing Parties").  The Debtors request that the retention, employment, and

compensation of the Contract Attorneys shall be deemed approved as of the date of the filing of the Affidavits without the need for a hearing and without further order from the Court, *provided, however,* no objection is filed by the Reviewing Parties within ten days of the filing of the Affidavits. If the Contract Attorneys discover additional information that requires disclosure, they will complete a supplemental Affidavit that will be filed with the Court.

### Contract Attorneys will not Conduct the Debtors' Bankruptcy Case

20.     By separate applications, the Debtors have sought the Court's approval to retain and employ Weil, Gotshal & Manges LLP as the Debtors' general bankruptcy counsel, and Curtis, Mallet-Prevost, Colt & Mosle LLP as conflicts counsel. The Contract Attorneys, by contrast, will be assisting the Debtors' in-house counsel with numerous document and discovery requests. As such, the services that the Contract Attorneys will be performing do not involve the conduct of the bankruptcy cases themselves. In fact, pursuant to section 327(b) of the Bankruptcy Code, the Debtors could have employed additional in-house attorneys to assist with the document review without the need of court approval; however, as will be described in greater detail below, the Debtors believe that hiring the Contract Attorneys is much more economical and efficient. Therefore, the Debtors submit that the Contract Attorneys have not rendered "services . . . in contemplation of, or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code. Accordingly, the services rendered and functions to be performed by the Contract Attorneys will not be duplicative of any bankruptcy-related work performed by other law firms retained by the Debtors.

### Professional Compensation

21.     Pursuant to the Agreement, the Debtors have agreed to pay DR at the rate(s) set forth in Exhibit 2 to the Agreement (the "Proposed Compensation"). Pursuant to the

Proposed Compensation, rather than paying DR an hourly rate for the Document Review

Services, the Debtors have negotiated a fixed fee amount per document that is reviewed.

Considering that most law firms in this jurisdiction charge in excess of $300 per hour for even

their most junior associates, the Debtors expect to realize significant cost savings by using the

Contract Attorneys to provide a necessary service that would otherwise have to be performed by

the Debtors' in-house or outside counsel at great expense.  Furthermore, the Proposed

Compensation allows the Debtors to lock in the cost of the Document Review Services and

provides the Debtors with a predictable model for analyzing document review expenditures.

The Debtors agree to reimburse DR for all pre-approved travel and other reasonable out of

pocket costs and expenses incurred by DR in connection with rendering the Document Review

Services and eDiscovery Services.

**Approval of Proposed Compensation
<u>Pursuant to Section 328(a) of the Bankruptcy Code</u>**

22.    Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain

DR on reasonable terms and conditions.  Section 328 of the Bankruptcy Code provides, in

relevant part, that a debtor "with the court's approval, may employ or authorize the employment

of a professional person under section 327. . . on any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on

a contingent fee basis."  11 U.S.C. § 328(a).

23.    As recognized by numerous courts, Congress intended in section 328(a) to

enable debtors to retain professionals pursuant to specific fee arrangements to be determined at

the time of the court's approval of the retention, subject to reversal only if the terms are found to

be improvident in light of "developments not capable of being anticipated at the time of the

fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette*

*Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

24.    Accordingly, section 328 permits the compensation of professionals on terms that reflect the nature of their services and market conditions.  The terms of the Agreement and the Proposed Compensation reflect (i) the nature of the services provided by DR and (ii) the fee structure provisions typically utilized by DR and other staffing agencies.  The Proposed Compensation is also consistent with DR's normal and customary billing practices.  Considering the Document Review Services that DR will provide and the market prices for DR's services, the Debtors submit that the Proposed Compensation is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code and fulfill the requirements of Rule 2014-1 of the Local Rules.  Thus, Debtors request approval of the Agreement, including the Proposed Compensation, pursuant to section 328(a) of the Bankruptcy Code.

## Fee Applications

25.    In light of DR's Proposed Compensation, the Debtors respectfully request that the Court approve the Proposed Compensation as detailed herein, without requiring DR to file fee applications or fee statements with the Court pursuant to sections 330 and 331 of the Bankruptcy Code.  Since DR is not itself a professional or a law firm, but, rather a staffing agency that provides Contract Attorneys solely from the perspective of payment procedures, this situation is, in some respects, analogous to the Debtors employing the Contract Attorneys directly.  Just as in that circumstance, the Debtors would not be required to file fee applications in order to pay the Contract Attorneys; so too, DR should not be required to file periodic fee applications in order to ensure that it can provide the Contract Attorneys.

26.    The Debtors have heavily negotiated the terms of the Agreement to provide themselves with a cost-effective service at a discounted price.  Not only will the relief requested herein result in favorable pricing to the Debtors, it will save the estates the substantial expense that would be associated with the preparation and prosecution of DR's interim fee applications.  Further, it will avoid the administrative burden on the Court and the fee committee[3] of having to review DR's fee applications.

27.    Additionally, on November 5, 2008, the Court entered the order authorizing the Debtors to employ professionals utilized in the ordinary course of business [Docket No. 1394] (the "<u>OCP Order</u>").  In accordance with the procedures set forth in the OCP Order, the Debtors are permitted to pay each ordinary course professional the full amount of its fees and expenses without the need for the professional to submit a fee application to the Court. The Debtors believe that the Document Review Services being provided by DR are ordinary course, but out of the abundance of caution seek approval of their employment pursuant to 327(e) of the Bankruptcy Code.  Because the Debtors expect that DR's fees will exceed the monthly and aggregate caps contemplated by the OCP Order, DR would be required to file a retention application with the Court pursuant to 327(e) of the Bankruptcy.   Nevertheless, the Debtors request that notwithstanding the fee caps in the OCP Order, that they be permitted to pay DR 100 percent of the fees and disbursements incurred without the need for DR to file fee applications upon the Debtors' approval of invoices submitted by DR and setting forth in reasonable detail the nature of the services rendered and disbursements incurred.

28.    Similar relief as that requested herein in regard to both the waiver of the fee caps required by the OCP Order and the filing of fee applications or fee statements has been

---

[3]  On May 26, 2009, the Court entered an order appointing a fee committee and approving a fee application protocol [Docket No. 3651].

granted by the Court with respect to Hudson Global Resources Management, Inc. which, like DR, provides contract attorney services to the Debtors.  [Docket No. 5037]

### The Relief Requested is Appropriate

29.    Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

### Notice

30.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Application in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditor's Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

31.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  September 14, 2009
       New York, New York


              /s/ Richard P. Krasnow         
              Richard P. Krasnow

              WEIL, GOTSHAL & MANGES LLP
              767 Fifth Avenue
              New York, New York 10153
              Telephone: (212) 310-8000
              Facsimile: (212) 310-8007

              Attorneys for Debtors
              and Debtors in Possession

## Exhibit A

**Agreement**

## MASTER SERVICES AGREEMENT

This Master Services Agreement (this "Agreement") is entered into as of July 22, 2009, (the "Effective Date"), by and between Lehman Brothers Holdings, Inc. ("LBHI") with offices located at 1271 Avenue of the Americas, New York, New York, 10020 and (ii) DiscoverReady LLC ("DR"), a Delaware limited liability company, with offices located at 55 Broadway, 21st floor, New York, New York 10006.  LBHI and DR shall each be referred to as a "party" and collectively as the "parties."  DR understands that LBHI currently is a debtor in a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court.").

NOW, THEREFORE, in consideration of the covenants and premises hereinafter set forth and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Description of services and fees; Statements of Work.  During the Term (as defined in Section 12), DR shall provide the deliverables (the "Deliverables") and perform the services (collectively with the Deliverables, the "Services") described in one or more written statement(s) of work (each, a "SOW") that the parties may enter into from time to time and to be mutually agreed to by the parties setting forth the scope of services to be provided by DR to LBHI. Each such SOW will be substantially in the form of the attached Exhibit 1  may include, as applicable, a description of the scope of services to be performed by DR, the data and work product to be delivered by DR in connection with the Services , the applicable fees , the schedule for the performance of the Services, any material assumptions (the "Assumptions") known to the parties at the time of commencement of the project, any service level agreements to apply to the Services, any work forecasts reasonably requested by DR and other term that the parties may mutually agree upon.  The terms of this Agreement shall be deemed to apply to all Services.  In the event of a conflict or ambiguity between any term of this Agreement and a SOW, the terms of the SOW shall prevail with respect to that SOW only.  Unless otherwise agreed to in an SOW, rates and prices for services are set forth in Exhibit 2 hereto.

2.  Terms of payment; Audit.

2.1    Unless another payment schedule is specified in the applicable SOW, DR  will invoice LBHI (a) after LBHI's acceptance of the Deliverables (or other agreed payment milestones), or (b) monthly in arrears for all other charges, including charges for Services priced on a variable unit rate or time and materials basis, and for out-of-pocket costs and expenses. For Services performed on a time and materials basis, DR will also submit time reports to LBHI showing the hours worked during the billing period by each DR personnel, or such other reasonable documentation to support such reports.  LBHI shall pay (or cause to be paid)

those fees and charges set forth in the SOW. DR shall submit to LBHI monthly invoices in form reasonably acceptable to LBHI, together with documentation of all charges, fees and (in accordance with Section 2.2) expenses reflected thereon. Where any sales, use or comparable taxes are due, payment shall be the responsibility of LBHI provided that such taxes are reflected on the invoice for the Services, Deliverables or amounts to which they apply so long as such taxes are exclusive of corporate business and franchise taxes, taxes based on DR's income or gross receipts, withholding taxes and personnel-related taxes.

2.2    LBHI shall reimburse DR for all pre-approved and travel and other reasonable out of pocket costs and expenses incurred by DR in connection with rendering the Services. Courier, transmission and media charges shall be priced at cost and may be invoiced separately. In each case, expenses and charges must be documented to LBHI's reasonable satisfaction and, to the extent the parties agree in writing advance, such expenses and charges may be charged to LBHI.

2.3    Notwithstanding anything contained herein to the contrary, so long as LBHI is a debtor in the Chapter 11 Case, DR shall submit all invoices or other payment requests in accordance with the requirements of the Bankruptcy Code and any relevant orders entered by the Bankruptcy Court in the Chapter 11 Case. LBHI's payment obligations shall be in accordance with such requirements and orders.

2.4    Except for amounts reasonably disputed by LBHI, validly rendered DR invoices will be payable within sixty (60) days after LBHI is authorized to make payment either (1) when it is authorized to do so consistent with the provisions of the Bankruptcy Code or orders entered in the Chapter 11 Case if it is a debtor in the Chapter 11 Case or (2) if it is no longer a debtor, after receipt of the invoice.

2.4    <u>Audit</u>.

2.4(a)    <u>Record Retention and Inspection</u>. During the term of each SOW and for a period of at least three (3) years after the date of the final payment under such SOW, DR will maintain complete and accurate accounting records in connection with Deliverables provided and Services performed under such SOW, in accordance with generally accepted accounting principles applied on a consistent basis, to substantiate its charges thereunder. Such records will include, without limitation, payroll records, attendance cards, time tracking sheets and job summaries. DR will provide LBHI or its designee's access to such records for audit purposes during the term of each SOW and for three (3) years after the date of the final payment under such SOW.

2.4(b)    <u>Overcharges</u>. If any audit reveals that LBHI has overpaid any amounts, DR will remit to LBHI such amounts due within thirty (30) days after receiving from LBHI an invoice therefor. If any audit reveals that LBHI has overpaid amounts

2

under a particular SOW (exclusive of reimbursable expenses and taxes) during the audited period by a minimum of $10,000 and at least ten percent (10%) or more of the total charges payable under such SOW during such period, DR will, within thirty (30) days after receiving an invoice therefor, reimburse LBHI for all reasonable fees and expenses incurred to conduct the audit and otherwise detect and rectify such overpayment.

2.4(c) Inspections. DR will provide to LBHI, LBHI's auditors (including internal audit staff and external auditors) and regulators or other law enforcement agents access at reasonable times, after providing DR with at least ten (10) days advance notice (except in the event of audits or investigations by regulators or other law enforcement agents, or investigations of reasonable suspicion of misappropriation, fraud or business irregularities of a potentially criminal nature, or relating to LBHI data protection requirements), to any facility or part of a facility at which either DR or any of DR's Personnel are providing the Services and to data and records relating to the Services.

3. Change Request Order and Variations to Scope of Services; Status Reports.

(a)  The parties may agree to enter into one or more change orders to change the scope of Services to be performed or Deliverables to be delivered under any SOW. If, based upon materially inaccurate Assumptions, or based upon a LBHI request, the scope of Services to be performed or Deliverables to be delivered agreed by the parties under a SOW are materially exceeded, and if the parties do not agree to a Change Request Order, DR shall not charge LBHI for any such Services or Deliverables until the issues are resolved. If the issue is not resolved promptly, LBHI may terminate the entire SOW, or any portion thereof, in question, provided that LBHI will have no liability except to pay applicable fees for Services provided due through the date of such termination.

(b) On a monthly basis (or as otherwise specified in the applicable SOW), DR will submit written status reports describing its activities including: (a) the current status of activities (with explanatory narrative when appropriate); (b) for time and materials engagements, resources used since the last report, and for fixed price engagements percentage completion of project, and a cumulative total, including in each case where applicable fees, time and materials expended against budget since the effective date of the SOW;  and (c) identification of any problems and all actions taken to resolve them, and the current status of any such problems.  Upon request, DR will meet with LBHI's personnel at no additional charge to review the status of DR's activities.

4. Non-solicitation.

Without the prior written consent of the other party,  (a)  LBHI employees with whom DR employees interact in the course of DR providing the Services hereunder will not solicit or seek to procure the employment of, directly or indirectly (other than by

3

general advertising),DR's employees engaged in the provision of the Services, during the period such DR employees are so engaged and for six (6) months thereafter; and (b) DR will not solicit or seek to procure the employment of, directly or indirectly (other than by general advertising), LBHI's employees with whom DR's personnel interact in the course of providing the Services, during the term of the applicable SOW and for six (6) months thereafter; provided however, the parties will not be precluded from hiring any employee of the other who has been terminated by the party prior to the commencement of employment discussions.

5.  Personnel Policies

5.1 Except as may be otherwise provided in this Agreement or expressly agreed by the parties in writing, DR will supply, at its own expense, all personnel, facilities and resources necessary to render the Services under this Agreement.

5.2 Whenever present on LBHI's premises or whenever accessing LBHI data and/or systems, DR employees and representatives will comply with all applicable on-site and/or data and/or system access policies and procedures and all reasonable instructions and directions issued by LBHI, including any background screening requirements.

6.  Proprietary Rights; Restrictions and Conditions.

6.1 Reservation of Rights.  Nothing in this Agreement shall restrict, impair, encumber, alter, deprive or adversely affect any of DR's rights or interests in and to its proprietary technology, processes and solutions which were independently developed by DR outside the scope of this Agreement and without reference to any property, goods, services, materials or information owned or controlled by LBHI ("Technologies and Processes").  Except for the access and use expressly granted herein, DR grants no license or other rights, and no rights shall be deemed granted hereby by implication, estoppel, or otherwise, in and to the Technologies and Processes.

6.2 No Reverse Engineering.  LBHI expressly agrees not to disassemble, decompile or reverse engineer or modify the Technologies and Processes, or authorize any third party to do any of the foregoing.

6.3 Proprietary Notices.  LBHI expressly agrees not to remove or alter any copyright notice, trademark or other proprietary notice displayed by DR in connection with the Technologies and Processes or appearing on the media containing the Technologies and Processes or related documentation.

6.4 Use Only in connection with the Services.  LBHI expressly agrees that it will only use the Technologies and Processes in connection with the Services.  LBHI will make commercially reasonable efforts not to (a) rent, lease, sell, sublicense, assign or otherwise transfer or provide any third party (other than third parties providing services to LBHI who do not offer services competitive to DR) access to the

4

Technologies and Processes, (b) process any third party data using the Technologies and Processes, or (c) collect fees for any data analysis conducted with the Technologies and Processes.

6.5 <u>LBHI Data</u>. Nothing in this Agreement shall be construed to restrict, impair, encumber, alter, deprive or adversely affect LBHI's rights or interests in and to any and all data and LBHI information provided to or accessed by DR in connection with its provision of the Services, or materials, information and/or Deliverables prepared or developed as a result of the Services. DR acknowledges that LBHI will have exclusive, unlimited ownership rights to (a) source data (defined as data originally supplied to DR by LBHI or its representatives) and derivatives thereof inclusive of marks, tags and other derivative work product, and (b) all materials, information and/or Deliverables prepared or developed specifically for LBHI as a result of the Services, including any ideas, concepts, or enhancements that are developed by LBHI. DR shall maintain all data and information it currently holds or in the future obtains relating to LBHI in a confidential and secure manner consistent with industry standards, accessible only to its authorized personnel as necessary to provide the Services or as otherwise expressly permitted herein, until the completion of the Term and any transition period thereafter, unless (a) DR and LBHI first agree in writing that DR may cease maintaining such data and (b) DR cooperates with LBHI, on a reasonable time and materials basis for material labor costs to the extent DR can demonstrate in writing that such costs are material, reasonable and above and beyond the scope of the individual's normal job responsibilities (referred to hereafter as the "Data Report Cost"), in transferring such data to LBHI or a third-party designated by LBHI. In computing the Data Report Cost, in no event will the hourly rate for staff level employees exceed $100 per hour, charged on a non-machine time basis, and in no event will the hourly rate for managerial level employees exceed $200 per hour. Absent a formal request for non-basic formatting or other complexities associated with the transferring of data, in no event will the aggregate Data Report Cost exceed $30,000. To the extent that DR believes the requests to transfer data shall generate a fee in excess of $30,000 for the aggregate Data Report Cost, DR shall demonstrate in writing that such costs are material, reasonable and necessary for generating such cost and LBHI shall approve such cost in advance of commencing activities associated with the transferring of data. For the avoidance of doubt, absent formatting or other complexities cited above, at the request of LBHI, DR shall promptly make available to LBHI and its representatives, at the Data Report Cost all LBHI data, including source data, processed work product, and all iterations of the reviewed and tagged data sets, including all access control lists, necessary documentation, and related structures. Said data will be provided in the most technologically expedient and auditable manner. Said data will be reconciled for completeness by LBHI for acceptance, and will utilize chain-of-custody documentation throughout the process.

7. <u>Representations and Warranties</u>

7.1    DR hereby represents and warrants to LBHI that:

5

7.1.1 DR will perform the Services in a professional and competent manner in material compliance with all specifications, standards and descriptions contained in this Agreement or otherwise mutually agreed upon in writing. Any personnel, including any subcontractor, providing legal review Services shall be an attorney licensed in the United States and shall work in a location located in the United States unless otherwise agreed to in writing by LBHI.

7.1.2 The Services, Deliverables, Technologies and Processes, and any and all other information, content, products, services and materials provided by or on behalf of DR (excluding any data provided to DR by LBHI or LBHI in connection with its provision of the Services contained therein) will (a) comply with all applicable federal, state and local laws, rules and regulations and (b) conform to, and perform in accordance with, the criteria and specifications set forth on any applicable SOW in all material respects.

7.1.3 The Materials and Services and LBHI's access to and use thereof do not and will not violate or in any way infringe any interest or right (contractual, intellectual property, proprietary or other) of any third party.

7.1.4 DR has obtained, or will timely obtain, any and all permits, licenses and third party consents or approvals necessary in order to conduct the Services as contemplated herein, free from liens, claims and/or restrictions of any nature.

7.1.5 DR is duly authorized and empowered to enter into this Agreement.

8. <u>Confidential information</u>.

8.1 The term "Confidential Information" shall mean the terms of this Agreement and all data, trade secrets, business information and other information of any kind whatsoever that a party ("Discloser") discloses, in writing, orally, visually or in any other medium, to the other party ("Recipient") or to which Recipient obtains access and that relates to Discloser or its customers, employees, third-party vendors or licensors. Confidential Information includes "Client Information" which shall be defined to mean any record containing information about LBHI, whether in paper, electronic, or other form that is maintained by or on behalf of LBHI.

8.2 Each of the parties, as Recipient, hereby agrees that it will not, and will cause its employees, representatives, consultants, affiliates and independent contractors not to disclose Confidential Information of the other party, including Client Information, during or after the Term of this Agreement, other than on a "need to know" basis and then only to: (a) Recipient's employees, officers or, in the case of LBHI, other personnel of LBHI; (b) affiliates of Recipient, its independent contractors, agents and consulting firms, provided that, if DR is the Recipient, all such persons described in (a) and (b) of this paragraph must be subject to a

6

written confidentiality agreement that shall be no less restrictive than the provisions of this Section; (c) as required by law or as otherwise expressly permitted by this Agreement. Recipient shall not use or disclose Confidential Information of the other party for any purpose other than to carry out this Agreement. Recipient shall treat Confidential Information of the other party with no less care than it employs for its own Confidential Information of a similar nature that it does not wish to disclose, publish or disseminate, but not less than a reasonable level of care. Upon expiration or termination of this Agreement for any reason or at the written request of Discloser, Recipient shall promptly return (in a format requested by LBHI) to Discloser or destroy, at Discloser direction and at no additional cost to LBHI, all Confidential Information in the possession of Recipient or Recipient's subcontractors.

8.3    To the extent legally permitted, Recipient shall notify Discloser of any actual or threatened requirement of law to disclose Confidential Information promptly upon receiving actual knowledge thereof and shall cooperate with Discloser's reasonable, lawful efforts to resist, limit or delay disclosure.

8.4    Unless otherwise contemplated in a SOW, DR shall not remove from LBHI's premises, the original or any reproduction of any notes, memoranda, files, records, or other documents, whether on tangible or electronic media, containing LBHI's Confidential Information or any document prepared by or on behalf of DR that contains or is based on LBHI's Confidential Information, without the prior written consent of an authorized representative of LBHI. Any document or media provided by an authorized LBHI representative or notes taken to document discussions with LBHI representatives concerning contract performance will be deemed to fall outside this consent requirement unless otherwise stated by LBHI representative.

8.5    With the exception of Client Information, the obligations of confidentiality in this Section shall not apply to any information that (i) Recipient rightfully has in its possession when disclosed to it, free of obligation to Discloser or any predecessor or affiliate to maintain its confidentiality; (ii) Recipient independently develops without access to Discloser's Confidential Information; (iii) is or becomes known to the public other than by breach of this Section or other obligation of confidentiality or (iv) is rightfully received by Recipient from a third party without the obligation of confidentiality. Any combination of Confidential Information disclosed with information not so classified shall not be deemed to be within one of the foregoing exclusions merely because individual portions of such combination are free of any confidentiality obligation or are separately known in the public domain.

8.6    Neither party shall issue any media releases, public announcements and public disclosures, relating to this Agreement or use the name or logo of the other party, including, without limitation, in promotional or marketing material or on a list of customers, without the express written consent of the other party, provided that

7

nothing in this paragraph shall restrict any disclosure required by legal, accounting or regulatory requirements beyond the reasonable control of the releasing party.

8.7    DR may disclose to contractors such products and Services as are required for the purpose of further handling, processing, modifying and adapting them for the exclusive use of LBHI, provided that such contractors have agreed to observe in substance the obligations of DR set forth in this Section.

8.8    All Confidential Information of a party and any results of processing Confidential Information or derived in any way there from shall at all times remain the property of the Discloser. Recipient shall have responsibility for and bear all risk of loss or damage to Confidential Information and damages resulting from improper or inaccurate processing of such data arising from the negligence or willful misconduct of Recipient, its Representatives or subcontractors.

8.9    DR hereby acknowledges and agrees that DR has no legal right to access, receive, accept, transmit, store or otherwise impact Confidential Information under any circumstance whatsoever unless and until LBHI has granted such rights to DR after the opportunity to determine the level of DR's compliance with such terms or conditions as LBHI may require. After granting such rights to DR, LBHI may suspend, revoke or terminate such rights in its sole discretion upon written notice to DR and with no liability to LBHI. Upon receipt of that notice, DR shall (i) promptly stop accessing and/or accepting Confidential Information and (ii) as promptly as practicable but no later than thirty (30) calendar days after receipt of such notice return to LBHI all Confidential Information of LBHI in its possession on a medium acceptable to LBHI.

8.10    DR Personnel Non-Disclosure Agreement. DR shall require all DR Personnel to individually sign the Non-Disclosure Agreement attached hereto as Exhibit 4. Such confidentiality obligations shall be in addition to such ethical obligations that such DR Personnel may have as an attorney at law with respect to such Confidential Information, Client Information and any other information or documents, in whatever format, that may be subject to any privilege.

8.11    Conflicting Projects. DR acknowledges that the Services performed for LBHI may relate to information and matters which are confidential and/or may conflict with interests of third parties. To further ensure the protection of LBHI's interests in this regard, DR agrees that during the period that DR legal review personnel perform Services for LBHI, DR will not assign or utilize any DR legal review personnel assigned to perform Services for LBHI, to perform services for or in support of any Conflicting Project. Further, DR will monitor the Master Conflicts List and will not assign any DR Personnel or Subcontractors who have a professional conflict with LBHI or its affiliated debtors in the Chapter 11 case. For the avoidance of doubt, if at any time any DR non-legal review personnel who perform Services for LBHI are assigned to perform services for or in support of a Conflicting Project, such DR non-legal review personnel must do so subject to the confidentiality

8

obligations set forth in Section 8.1 through 8.9.  For purposes of this section, **"Conflicting Project"** is defined as any task or work effort for any person, firm or enterprise which may conflict with the interests of LBHI. If there is any doubt whether any task or work effort for any person, firm or enterprise is a "Conflicting Project," DR will obtain LBHI's advance written approval, which decision will be deemed final and controlling for all purposes hereunder.

8.12    Affidavit and Disclosure Statement. DR shall require that all of its Personnel and Subcontractors who will be providing services to LBHI as attorneys to complete and execute an Affidavit and Disclosure Statement (the "Affidavit"), substantially in the form of Exhibit 5 annexed hereto, certifying that it does not represent or hold any interest adverse to LBHI and its affiliated debtors.  Counsel to LBHI will file the Affidavit with the Court. If DR, its Personnel or Subcontractors discover additional information that requires disclosure, DR Personnel or Subcontractor shall complete a supplemental Affidavit that will be filed with the Court.

8.13    Title. The parties acknowledge and agree that any disclosure of Confidential Information will in no way be construed to be an assignment, transfer, or conveyance of title to or ownership rights in such Confidential Information.

9.    Consent to access and process and retain data.  DR is not a law firm and does not follow any ethical or regulatory guideline as an official record keeper related to its client's data or records.  It is LBHI's obligation to keep "official records" related to any SOW and any exceptions to this policy must be specifically stated in writing in an applicable SOW.

10. Acceptance. All such Services and Deliverables shall be deemed accepted by LBHI unless rejected by LBHI in writing within ninety (90) days of delivery to LBHI.

11. No Practice of Law.  Neither DR nor its professionals are practicing law hereunder. Although DR utilizes attorneys and other legal professional to provide certain support services to LBHI and LBHI's attorneys, LBHI acknowledges that all of the Services provided hereunder are provided at the direction of LBHI in house counsel or external counsel.  Because DR is not permitted by any regulatory or professional body to practice law, LBHI agrees that if the Services are in the future construed as the practice of law in any relevant jurisdiction, DR will propose to LBHI changes to the Services such that DR will perform them in a manner that would not constitute the practice of law.  If the parties are unable to agree on appropriate changes, either party may terminate any applicable Services without penalty.  For the avoidance of doubt, notwithstanding this paragraph, all Services hereunder shall be protected by, covered by and subject to privileged and confidential work product and / or privileged attorney-client communication protections.

12. Term. The initial term of this Agreement shall commence on the Effective Date and shall continue for two (2) years (the "Initial Term"), unless earlier terminated pursuant to the terms of this Agreement.  Unless earlier terminated, the Initial Term may be

extended for successive one-year terms upon the mutual written agreement of the parties (each such extended term, a "Renewal Term"). The Initial Term and any Renewal Term is referred to herein collectively as the "Term".

13. <u>Termination</u>.

13.1 <u>Termination by LBHI</u>.

13.1(a) <u>For Convenience</u>.
(i) If, at any time, there are no outstanding SOWs in effect, LBHI may terminate this Agreement upon written notice to DR without liability for any charges of any kind.

(ii) LBHI may terminate any SOW, any part thereof, or any engagement at all, for convenience by giving DR at least thirty (30) days' prior written notice specifying the termination date. In such event, LBHI will be obliged to pay DR at the agreed upon rates for all Deliverables delivered and Services performed up to the effective date of termination, subject to a refund of any unearned, prepaid fees, but will not be liable for any other termination-related charges (other than the Data Report Cost).

13.1(b) <u>For Cause</u>. In the event of any material breach of the Agreement or a SOW by DR, LBHI may (reserving cumulatively all other remedies and rights under the Master Agreement, at law and in equity) terminate the SOW(s) involved or affected by such breach, in whole or in part, by giving DR thirty (30) days' prior written notice of termination thereof; *provided, however,* that such termination will not be effective if DR has cured the breach of which it has been notified prior to the expiration of such thirty (30) day notice period.

13.2 <u>Termination by DR</u>. In the event LBHI (a) breaches in a material respect its obligation to pay any undisputed fees under a particular SOW, or (b) fails to meet its confidentiality obligations under the Agreement with respect to a particular SOW such that LBHI materially breaches the Master Agreement or the applicable SOW, then DR may (reserving cumulatively all other remedies and rights under the Agreement, at law and in equity) terminate the SOW(s) involved by giving LBHI sixty (60) days' prior written notice thereof; *provided, however,* that any such termination will not be effective if LBHI has cured such material breach prior to the expiration of such sixty (60) day period. In such event, LBHI will be obliged to pay DR at the contracted rates for all Deliverables accepted and Services performed up to the effective date of termination, subject to a refund of any unearned, prepaid fees, but will not be liable for any other termination-related charges (other than the Data Report Cost).

13.3 In connection with any termination, LBHI shall pay to DR (i) any amounts outstanding as of such termination date; (ii) any amounts agreed in a SOW to be paid to DR for providing transitional services or otherwise, if any; (iii) any monthly recurring hosting charges that have been pre-approved by LBHI associated with DR's ongoing hosting of LBHI's data following the termination date; (iv) reasonable, documented out of pocket costs incurred prior to the date of termination; and (v) any Data Report Cost in connection with the transfer or disposition of LBHI's data solely at the direction of LBHI, except to the extent termination is pursuant to Section 13.1 (b) hereto, in which case LBHI shall be obligated to pay Data Report Cost fees at 50% of regular bill rates provided to LBH [e.g. $62.5 / $112.5 / hr] in connection with the transfer or disposition of LBHI's data, subject to 50% of the maximum aggregate Data Report Cost, absent formatting and other complexities, as set forth in Section 6.5 above.

14. Transition assistance.  In the event of expiration or termination of this Agreement or a SOW, or any part thereof, under this Agreement, DR shall, upon the request of LBHI, continue uninterrupted operations and conclude and cooperate with LBHI and its representatives in the transition of the work at LBHI's direction in a manner that causes no material disruption to LBHI business and operations.  The fees payable to DR for such transition services shall be at the fees set forth in Exhibit 2. In no event shall the period of transition services be more than three hundred sixty-five (365) calendar days from the date of  such termination or expiration unless the parties otherwise agree in writing.  Reimbursement of all extraordinary costs and expenses incurred outside of the Agreement terms and conditions will be agreed upon by LBHI in writing prior to their incurrence.

15. Remedies for non-payment or non-compliant Services or Deliverables.  If LBHI is in default of payment of any undisputed sum due under this Agreement, then in addition to any other remedies DR may have available, DR may, upon thirty (30) days prior written notice, refuse to continue to perform the Services or any other services under this Agreement.  LBHI will promptly inspect DR's work product upon delivery and if LBHI timely notifies DR that the Services or any Deliverables fail to comply with the agreed criteria in any material respects, or if there is no such criteria, fails to meet LBHI's reasonable satisfaction, then the parties shall confer to assess the non-compliance.  In the event of such non-compliance and LHBI's prompt inspection and timely notice, DR shall provide a re-work of any such Services or Deliverables that do not comply with the agreed criteria or fails to meet LBHI's reasonable satisfaction, at no additional charge.  For the avoidance of doubt, to the extent that any Services or Deliverables provided to LBHI are deficient in LBHI's reasonable discretion (in accordance with applicable review guidelines), DR will remedy any such defect, at any time, at DR's cost and no charge to LBHI.  If DR is unable to provide a re-work within the reasonable time requirements of LBHI, DR shall refund any amounts paid by LBHI for or with respect to such non-conforming Services or Deliverables. LBHI's remedies set forth in this paragraph shall be in addition to other remedies it may have.

11

16. Indemnity.

16.1 DR shall indemnify, defend and hold harmless LBHI and its representatives, counsel, advisors, employees, personnel, members, officers, directors, agents, successors, and permitted assigns from and against any and all claims made or threatened by any third party and all related losses, expenses, damages, costs and liabilities, including reasonable attorneys' fees and expenses incurred in investigation or defense ("Damages"), to the extent such Damages arise out of or relate to the following: (a) any negligent act or omission or willful misconduct by DR, its representatives or any subcontractor engaged by DR in the performance of DR's obligations under this Agreement; (b) any breach of a representation or warrant of DR contained in Section 7 of this Agreement; or (c) any services performed by DR pursuant to this Agreement and the Materials, but specifically excluding any such Damages to the extent caused or based upon LBHI's use of the Materials in a manner not permitted under this Agreement, or any unauthorized act or omission of LBHI, his contractors, representatives or agents.

16.2 LBHI shall indemnify, defend and hold harmless DR and its representatives, employees, members, officers, directors, agents, successors, and permitted assigns from and against any and all claims made or threatened by any third party and all related losses, expenses, damages, costs and liabilities, including reasonable attorneys' fees and expenses incurred in investigation or defense , to the extent such arise out of or relate to any negligent act or omission or willful misconduct by LBHI, its representatives or any subcontractor engaged by LBHI in the performance of LBHI's obligations under this Agreement; provided such duty of indemnification shall not extend to Damages caused by an act for which DR owes LBHI a duty of indemnity hereunder to the extent of such duty of indemnity.

16.3 The party claiming the right of indemnity shall give the indemnifying party prompt notice of the claim for which indemnity is sought; provided that the failure to give such prompt notice shall not prevent any party from being indemnified hereunder, except to the extent that the failure to so promptly notify the indemnifying party materially prejudices the indemnifying party's ability to defend against such claim.  The indemnifying party shall have the right to control the defense of the claim through counsel of its choice that is reasonably acceptable to the indemnified party; provided, that the indemnifying party shall obtain the prior written consent of the indemnified party, which shall not be unreasonably withheld, before entering into any settlement of such claim or ceasing to defend against such claim if (i) as a result of such settlement or ceasing to defend, injunctive relief would be imposed against the indemnified party or (ii) in the case of settlement, the indemnified party would not receive an unconditional release from the claimant from all further liability in respect of such claim or be required to pay any money.  The parties shall cooperate in the defense of any such claim, suit or proceeding, including appeals, negotiations, and any

12

settlement or compromise thereof, subject at all times to the conditions set forth in this Section 16.3.

17. Limitation of liability. In no event shall the liability of either party to the other for monetary damages include any indirect, punitive, special, exemplary, incidental, consequential or lost profits or lost revenue arising out of, or in any way connected with, this Agreement, even if the party from which damages are being sought has been previously advised of the possibility of such damages. Unless otherwise specified in a specific SOW, in no event shall the aggregate liability of either party to the other for any claim for monetary damages under this Agreement exceed the greater of (i) the fees paid or payable by LBHI to DR pursuant to the SOW in connection with which the claim arose or (ii) $5,000,000.00. NOTWITHSTANDING THE LIMITATION OF LIABILITY SET FORTH IN THE PRECEDING TWO SENTENCES, SUCH LIMITATION OF LIABILITY WILL NOT APPLY TO ANY OF THE FOLLOWING: (A) EITHER PARTY'S 3rd-PARTY INDEMNIFICATION OBLIGATIONS UNDER THE AGREEMENT OR ANY SOW; (B) A PARTY'S BREACH OF ITS CONFIDENTIALITY OR DATA PROTECTION OBLIGATIONS UNDER THE AGREEMENT OR ANY SOW OR (C) ANY FRAUD OR WILLFUL MISCONDUCT BY A PARTY.

18. Disclaimer of warranties. Other than the representations and warranties expressly set forth above, all conditions, representations and warranties, whether express, implied, statutory or otherwise, including, without limitation, any implied warranty of merchantability, fitness for a particular purpose, or non-infringement of third party rights, relating to the Services or Technologies and Processes, are hereby disclaimed by DR to the maximum extent permitted by applicable law. DR shall perform its obligations and shall implement the procedures and methodologies set forth in any applicable SOW, if any, which have been designed to minimize inconsistencies and risks associated with DR's performance of the Services. DR does not warrant that the Services will be error free. The Services and access to the Technologies and Processes may be subject to limitations, delays and other problems inherent in the use of the internet and electronic communications that are not under DR's, its representatives' or its third-party contractors' control. DR shall not be responsible for any delays, delivery failures, or other damage resulting from such problems that are not under DR's, its representatives' or its third-party contractors' reasonable control, provided, that notwithstanding anything to the contrary in this Agreement, DR shall be solely responsible for the performance of its subcontractors who are employed directly by DR.

19. Insurance. DR will, at its own expense, obtain and maintain throughout the term of this Agreement insurance with a reputable insurers having a rating of at least an "A-" in the most currently available Best's Insurance Reports and providing protection in the form and amounts described on Exhibit 3 hereto against any claims, suits, losses or damages based upon any actual or alleged act or failure to act of DR in connection with this Agreement or the Services. DR will furnish LBHI with certificates of insurance in satisfactory form, evidencing its compliance with these provisions.

13

20. Relationship of the Parties.  DR agrees and represents and warrants that:  (a) it is an independent contractor, (b) DR personnel are the responsibility of DR and solely employees or independent contractors of DR (or its subcontractor), (c) no DR personnel are LBHI's agents or employees for federal, state, or local tax purposes or any other purposes whatsoever, (d) no DR personnel are entitled to any compensation from LBHI or to any LBHI employee benefits, (e)  DR will (or, in the case of its subcontractors, will be responsible for causing the applicable subcontractor to) withhold and pay all applicable taxes, benefits and insurance with respect to such personnel, and (f) DR will verify and secure the work eligibility of each DR personnel.  All DR personnel or subcontractors who are providing services to LBHI as attorneys shall work under the day-to-day direction, management and supervision of LBHI's in-house and outside counsel.  DR and its employees, agents and subcontractors have no authority to make commitments or enter into contracts on behalf of, bind or otherwise obligate LBHI in any manner whatsoever.  DR is responsible for ensuring that DR personnel assigned to perform Services have the legal right to work in each country in which they are assigned to work for the duration of their assignments.

21. DR Personnel/Project Management

(a) Project Managers/Key Personnel. For each SOW, DR will designate a project manager ("**Project Manager**") to serve as the primary contact with LBHI for the Services.  DR may also designate in a SOW any DR personnel that have been identified as having key positions for a particular SOW ("**Key Personnel**").  DR will ensure the continuity of any individual (whether a DR employee or subcontractor) performing Services hereunder. DR will obtain LBHI's prior approval before any reassignment of any DR Project Manager or Key Personnel to another DR client (unless such reassignment is requested by the DR personnel as a result of personal or family reasons).

(b) Removal and Replacement of DR Personnel.  If LBHI reasonably believes that any DR personnel or their performance to be unsatisfactory and so notifies DR, DR and LBHI will promptly meet in an effort to address LBHI's concern on a mutually satisfactory basis.  If LBHI's concerns have not been addressed to LBHI's reasonable satisfaction within thirty (30) days after LBHI's initial notice to DR, LBHI may require DR to replace the individual in question, at no charge to LBHI, with another individual having suitable qualifications for the assignment. This provision does not in any way require, endorse or approve (expressly or impliedly) the termination of employment by DR of any person replaced under the terms of this paragraph.

22. Time of Performance.  DR will complete the Services diligently and in accordance with any time frames set forth in the applicable SOW.  DR will promptly notify LBHI upon becoming aware of any circumstances that may reasonably be expected to jeopardize the timely and successful performance and completion of any Deliverable

14

or Service.  DR agrees to use Commercially Reasonable Efforts to deliver to Customer, on or before the applicable delivery date(s) set forth in the applicable SOW, each Deliverable having a delivery date assigned to it; provided that, if DR becomes aware of any circumstances that may reasonably be expected to jeopardize the timely and successful performance and completion of any Deliverable having a delivery date assigned to it, DR will promptly notify LBHI in accordance with the foregoing sentence.

23. Submission to Jurisdiction. Any claim or action brought by one of the parties connection with the Agreement or an SOW will be brought in the Bankruptcy Court except if the Bankruptcy Court does not have or abstains from exercising its jurisdiction, in which event, the parties consent to the jurisdiction of and venue in the Federal, State, and municipal courts of New York, New York, and the Parties irrevocably consent to the exclusive jurisdiction of such court.

EACH PARTY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

24. Miscellaneous.

(a) Force Majeure.  DR shall not be held responsible for any delay in performance hereunder caused by fires, strikes, embargoes, government requirements, civil or military authorities, acts of God, or other causes beyond DR's, its representatives' or its third-party contractors' reasonable control.  If such contingency occurs, LBHI may, upon written notice, suspend the Services under the applicable SOW, in whole or in part, for the duration of the delaying cause and obtain the Services elsewhere until the contingency ceases, LBHI may terminate this Agreement or the applicable SOW or cease paying for the applicable Service.

(b) Assignment and subcontracting.  Neither party may assign this Agreement without the express written consent of the other which consent shall not be unreasonably withheld or delayed.  No consent shall be necessary if such assignment is made by (i) to an entity controlling, controlled by or under common control with the assigning party, (ii) in the case of LBHI, in connection with Chapter 11 or (iii) in the case of LBHI, in connection with any merger or sale of its stock or assets, to the successor in a merger of LBHI or to any entity that acquires all or substantially all of its stock or assets,. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, successors and assigns.  In providing the Services, DR agrees to utilize only Subcontractors who have agreed to be bound by the terms and conditions set forth in the Non-Disclosure Agreement and Affidavit.

(c) <u>Amendments, modifications and supplements</u>.  Any amendment, modification or supplement to this Agreement must be in writing, state that it is amending, modifying or supplementing this Agreement, and signed by both parties.

(d) <u>Severability</u>.  In the event that any one or more of the provisions contained herein shall for any reason be held to be unenforceable in any respect under the law of any state in which it is sought to be enforced, such unenforceable provision shall be deemed severable and shall not affect the validity of any other provision of this Agreement.

(f) <u>Titles and headings</u>.  Titles and headings to paragraphs in this Agreement are for the purposes of reference only and shall in no way limit, define or otherwise affect its provisions.

(g) <u>Notices</u>.  Any invoice or notice to be given to LBHI or DR under the terms of this Agreement shall be addressed to LBHI or DR at their offices as listed above or at such other address as either party may hereafter designate in writing to the other. Any such invoice or notice shall be deemed to have been duly given and shall be effective upon (i) the date such notice is delivered personally if delivered during normal business hours (or if delivered after normal business hours, on the next Business Day), (ii) when enclosed in a properly sealed and addressed envelope, five Business Days after the date mailed by registered or certified (postage and registry or certification prepaid), or (iii) the next Business Day if sent via a nationally recognized overnight express delivery service.  "Business Day" means any day other than Saturday, Sunday or any other date which commercial banks in New York, New York are authorized or required by law to close.

(h) <u>Waiver</u>.  Either party's failure to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions or prevent that party thereafter from enforcing each and every other provision of this Agreement.  The rights and remedies provided in this Agreement shall be cumulative and not exclusive of any rights or remedies provided by law.

(i) <u>Entire agreement</u>.  This Agreement together with all SOWs issued hereunder and any exhibits attached hereto and any non-disclosure agreement entered into between the parties shall constitute the entire agreement between the parties with respect to the subject matter hereof and thereof.

(j) <u>Third Party Beneficiaries</u>.  Except for indemnified persons pursuant to Sections 16.1 and 16.2, this Agreement is for the sole benefit of the parties and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

16

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the Effective Date.

**DiscoverReady LLC**

By: _____

Name: _____Steven Harber_____

Title: _____President_____

**Lehman Brothers Holdings, Inc.**

By : _____

Name: _____William Gordon_____

Title: _____SVP_____

### EXHIBIT 1: FORM OF SOW

### [SAMPLE TEMPLATE ONLY]

**SOW Effective Date:**

This statement of work ("**SOW**"), made effective as of the SOW Effective Date above, is issued pursuant to the Master Services Agreement (the "Agreement"), dated _____2009 by and between Lehman Brothers Holdings, Inc. ("LBHI") and (ii) DiscoverReady LLC ("DR").   This SOW identifies, among other things, the deliverables and/or services being provided by DR.

This SOW, when executed by both undersigned parties, together with the above-referenced Agreement and other documents attached hereto (each of which are incorporated by reference into this SOW), constitutes the complete contractual agreement between the undersigned parties with respect to the deliverables and/or services described herein.

Capitalized terms used but not defined in this SOW have the meanings given in the Consulting Agreement referenced above.

**Status Reports:** [Insert Applicable Frequency]

**Pricing:**

> Unless otherwise agreed in this SOW, Fees (as defined in the Agreement) are as set forth as Exhibit 2 to the Agreement.

> The parties may agree to a fixed fee for a project. If so, the Fixed Fee is:_____

**Description of Services and Deliverables:**

**Milestone/Implementation Schedule (if applicable):**

**Schedule of Payments (if applicable):**

**Delivery Criteria**

**Project Manager/Key Personnel**

The undersigned parties have caused this SOW to be executed by their respective duly authorized representatives

| Lehman Brothers Holdings, Inc. | DiscoverReady LLC |
|---|---|
| By: _____ | By: _____ |
| Name: William Gordon | Name: _____ |
| (Type, Print or Stamp) | (Type, Print or Stamp) |
| Title: S V P | Title: _____ |

# Exhibit 2: Pricing for Services


DiscoverReady™

| Billing Rates | | Published 2009 | | | | | LBHI | |
|---|---|---|---|---|---|---|---|---|

| Hourly Services | Unit | Rate | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Discovery Strategy | Hourly | $ | 395 | | | | $ | 250 |
| Project Manager | Hourly | $ | 235 | | | | $ | 225 |
| Team Lead | Hourly | $ | 195 | | | | $ | 175 |
| Technology Manager | Hourly | $ | 235 | | | | $ | 225 |
| Senior Technology Associate | Hourly | $ | 195 | | | | $ | 175 |
| Technology Associate | Hourly | $ | 175 | | | | $ | 125 |

| Attenex Per Document Review Cost* | Unit | | Pricing Range - Charlotte | | | | Pricing Range - NY Area | |
|---|---|---|---|---|---|---|---|---|
| | | | Low | | High | | Low | High |
| BizBlast (non-substantive review) | per document | $ | 0.75 | $ | 0.55 | $ | 0.60 | $ | 0.60 | $ | 0.70 |
| Potential Privilege Review (false positive confirmation) | per document | $ | 1.25 | $ | 0.75 | $ | 0.90 | $ | 0.90 | $ | 1.05 |
| Non-Privilege Review - Produce All (8 marks / 6 tags) | per document | $ | 1.50 | $ | 0.95 | $ | 1.05 | $ | 1.05 | $ | 1.20 |
| Non-Privilege Review - Relevancy (8 marks / 6 tags) | per document | $ | 1.50 | $ | 1.05 | $ | 1.15 | $ | 1.15 | $ | 1.25 |
| Internal Investigation | Hourly | | | $ | 75 | $ | 250 | $ | 95 | $ | 250 |

\* Pricing assumes document reviews are conducted in Attenex platform using standard review criteria consistent with historical Lehman / LHBI practices.  Pricing will vary within the published range depending upon project size and deadlines, overall volume, and consistency of data availability. Specific review project-related oversight shall be limited to a maximum of 10% of total per document review fees (excluding any technology fees or case administration).

| Stratify Per Document Review Cost** | Unit | | Pricing Range - Charlotte | | | | Pricing Range - NY Area | |
|---|---|---|---|---|---|---|---|---|
| | | | Low | | High | | Low | High |
| BizBlast (non-substantive review) | per document | $ | 0.85 | $ | 0.95 | $ | 0.95 | $ | 1.05 |
| Potential Privilege Review | per document | $ | 1.10 | $ | 1.25 | $ | 1.25 | $ | 1.40 |
| Non-Privilege Review - Produce All | per document | $ | 1.40 | $ | 1.60 | $ | 1.60 | $ | 1.80 |
| Non-Privilege Review - Relevancy | per document | $ | 1.55 | $ | 1.70 | $ | 1.70 | $ | 1.90 |
| Internal Investigation | Hourly | | | $ | 75 | $ | 250 | > | 95 | $ | 250 |

\*\* Pricing assumes document reviews are conducted in Stratify platform.  Potential Privilege Review pricing is based upon DiscoverReady's experience with Lehman / LHBI review guidelines on Stratify reviews performed to date.  Pricing will vary within the published range depending upon project size and deadlines, overall volume, and consistency of data availability.  Specific review project-related oversight shall be limited to a maximum of 10% of total per document review fees (excluding any technology fees, assignment creation, and case administration).

| Processing | | | | | |
|---|---|---|---|---|---|
| Workbench | GB | $ | 500 | $ | 250 |

| Document Mapper | | | |
|---|---|---|---|
| 0-250 | GB | $ | 1,650 |
| 250-500 | GB | $ | 1,550 |
| 500-1TB | GB | $ | 1,450 |
| 1TB + | GB | $ | 1,400 |

| Attenex Hosting Services*** | | | | | |
|---|---|---|---|---|---|
| User Fees (does not apply to DR reviewers) | User / Month | $ | 125 | $ | 100 |

| Attenex Hosting (Live Data) | | | |
|---|---|---|---|
| 0-2 TB | GB / Month | $ | 20.00 |
| 2-4 TB | GB / Month | $ | 17.50 |
| 4-6 TB | GB / Month | $ | 15.00 |

**Exhibit 3: Insurance Requirements**

| Form of Insurance | Minimum Limits of Insurance |
|---|---|
| (a) (1) Workers Compensation and (2) Employers Liability | As required by law $1,000,000 per occurrence (BI/disease) |
| (b) Professional Liability (aka Errors & Omissions Liability). Such insurance should be endorsed to cover services provided by subcontractors if any. | $5,000,000 per occurrence and aggregate |
| (c) Commercial General Liability on an occurrence basis, including premises operations, products and completed operations, contractual liability, and personal and advertising injury coverages. DR will name LBHI and its subsidiaries and affiliates as an additional insured by certificate of insurance. | $1,000,000 per occurrence and aggregate |
| (d) Commercial Automobile Liability covering all leased, owned and non-owned vehicles and naming LBHI as an additional insured by certificate of insurance. | $1,000,000 per occurrence combined single limit for bodily injury and property damage liability |
| (e) Umbrella Liability on a follow form basis | $4,000,000 per occurrence and aggregate excess of the Commercial General Liability and Commercial Automobile Liability Insurance |
| (f) Fidelity Bond (aka Crime Insurance), including third party liability or client coverage and naming LBHI, and its subsidiaries and affiliates as a loss payee by certificate of insurance. | $5,000,000 per occurrence and aggregate |

# EXHIBIT 4
## DR PERSONNEL NON-DISCLOSURE AGREEMENT

I, the undersigned, acknowledge and agree that I may have access to Confidential Information (as defined below) and/or Lehman Sensitive Data (as defined below) of Lehman Brothers Holdings Inc. or any of its affiliates ("Lehman") and agree as follows:

1.    **Confidential Information.**

a) **"Confidential Information"** means any information obtained from or on behalf of Lehman that relates to the past, present or future business activities of Lehman or its subsidiaries or affiliates, or their respective employees, customers or third party suppliers or contractors, including the terms and conditions of this agreement and any information relating to Lehman's plans, pricing, methods, methodologies, processes, financial data, lists, intellectual property rights, customer information, apparatus, statistics, programs, research, development, and/or information technology.

b) Confidential Information does not include any particular information that can be demonstrated by the undersigned as (a) currently in the public domain and/or previously known to me, and in either case free from any obligation to keep it confidential, (b) publicly disclosed by Lehman either prior to or subsequent to receipt by the undersigned of such information, (c) independently developed by the undersigned without any access to or use of the Confidential Information, or (d) rightfully obtained by the undersigned from a third party lawfully in possession of the Confidential Information who is not bound by confidentiality obligations to Lehman.

c) I agree to hold all Confidential Information in trust and confidence for Lehman and, except as otherwise may be authorized by Lehman in writing, I will not disclose to any person, firm or enterprise, or use for my benefit or for the benefit of any others, any Confidential Information.   I may disclose Confidential Information if required to do so under applicable law, rule or order provided that I, where reasonably practicable and to the extent legally permissible, provide Lehman with prior notice of the required disclosure so that Lehman may seek a protective order or other appropriate remedy, and provided further that I disclose no more Confidential Information than is reasonably necessary in order to respond to the required disclosure.

2.    **Lehman Sensitive Data.**  I hereby acknowledge that Lehman is subject to certain privacy and information security laws and regulations, pursuant to which Lehman is required to ensure that I appropriately safeguard personal or financial information regarding Lehman's former, current or prospective clients or employees ("**Lehman Sensitive Data**").  Notwithstanding anything to the contrary contained in this agreement, I agree that I will (a) not use any Lehman Sensitive Data except to the extent necessary to carry out the obligations for which I have been engaged by Lehman and for no other purpose, (b) not disclose Lehman Sensitive Data to any third party without the prior written consent of Lehman and subject to the further requirements of this Section, (c) as applicable, employ administrative, technical and physical safeguards to prevent unauthorized use or disclosure of Lehman Sensitive Data, (d) promptly provide information as Lehman may request relating to Lehman's due diligence and oversight obligations under applicable laws and regulations, (e) in the event of any actual or apparent theft, unauthorized use or disclosure of any Lehman Sensitive Data, immediately commence all reasonable efforts to investigate and correct the causes and remediate the results thereof, and (f) as soon as practicable following discovery of any event described in clause (e) hereof, provide Lehman notice thereof, and such further information and assistance as may be reasonably requested.

3.    **Return of Confidential Information and Lehman Sensitive Data.**  At any time, at the request and option of Lehman, or in the event of termination or expiration of my engagement with Lehman, I agree to promptly (a) return to Lehman, as directed by Lehman, the Confidential Information, Lehman Sensitive Data and/or other information and materials in my possession or (b) destroy or permanently erase on all forms of recordation the Confidential Information, Lehman Sensitive Data and/or other information and

materials in my possession, and if requested by Lehman, acknowledge in writing that all such Confidential Information, Lehman Sensitive Data and/or other information and materials has been destroyed or permanently erased.

4.     **Title.**   I acknowledge and agree that as between Lehman and me, all of the Confidential Information, Lehman Sensitive Data and work product developed as a result of my engagement by Lehman, including, in each case, any derivative works thereof, is, and will remain, the property of Lehman. Any work product, materials or deliverables developed as a result of my engagement by Lehman shall be considered "works made for hire," and to the extent that exclusive title and ownership rights may not originally vest in Lehman, as contemplated hereunder, I hereby irrevocably assign, transfer and convey to Lehman all right, title and interest therein.

5.     **Obligations.**   In consideration of my future or continued obligations to Lehman, I hereby acknowledge, represent and confirm to Lehman as follows: (a) I have read and understand the provisions of this agreement, and know of no agreements, obligations or restrictions which prevent or prohibit me from complying with them; (b) I will receive and maintain all Lehman information, perform services and conduct myself, in all respects, in a manner consistent with these obligations and Lehman policies; (c) this agreement is enforceable against me by Lehman; and (d) I agree not to, directly or indirectly, engage in or assist others to engage in, any activity or conduct which violates the provisions of this agreement. I understand that if I threaten to or actually breach or fail to observe any of the obligations set forth in this agreement, Lehman may have no adequate remedy in money or damages and, accordingly, may seek an injunction against such breach; *provided, however,* that no specification herein of any particular legal or equitable remedy will be construed as a waiver, prohibition or limitation of any legal or equitable remedies. I further agree that this agreement will be governed by the laws of the State of New York, and I irrevocably agree to submit to the jurisdiction of the appropriate Federal or State court located in the County of New York.

**Agreed and Acknowledged:**

William Gordon
Print or Type Full Legal Name

_____
Signature

07/28/09
Date

**EXHIBIT 5**
**Affidavit and Disclosure Statement**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                       :

In re                               :    Chapter 11 Case No.
                                         :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                         :

                    Debtors.       :    (Jointly Administered)
                                         :
------------------------------------------------------------x

AFFIDAVIT AND DISCLOSURE STATEMENT OF _____

STATE OF _____     )
                         ) ss:
COUNTY OF _____    )

_____, being duly sworn, upon his oath, deposes and says:

            1.      I am a lawyer admitted to practice in the State of _____. I am not affiliated with any law firm. I am employed by _____, a staffing agency.

            2.      I am not an insider of the debtors in the above-captioned bankruptcy cases (the "Debtors"). I do not hold any claim, debt or equity security of the Debtors.

            3.      I am not, and have not been within two years before September 15, 2008, a director, officer, or employee of any of the Debtors.

            4.      I am not, and have not been within three years before September 15, 2008, an investment banker for any outstanding security of any of the Debtors.

            5.      I am not, and have not been within two years before September 15, 2008, an investment banker for a security of any of the Debtors, or an attorney for any such investment banker in connection with the offer, sale, or issuance of a security for any of the Debtors.

6.    I do not have any connections with (a) any Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, (b) the United States Trustee (Region 2), or (c) any person employed by the United States Trustee (Region 2).

7.    I have reviewed the list of identified parties set forth in the Master Conflicts List. Based upon my review of that list, I hereby disclose the following connections to parties set forth on that list: [i.e. "I worked as a contract attorney for _____ on matters unrelated to Lehman Brothers" or I have nothing relevant to disclose."]

8.    If I should discover any facts bearing on the matters described herein, I will supplement the information contained in this Affidavit.

By: _____

Subscribed and sworn to before me
this ___ day of _____, 2009


_____
     Notary Public

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                :
In re                                           :        Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :        08-13555 (JMP)
                                                :
                                Debtors.        :        (Jointly Administered)
                                                :
------------------------------------------------------------------x

### AFFIDAVIT AND DISCLOSURE STATEMENT OF _____


STATE OF _____        )
                                ) ss:
COUNTY OF _____            )

_____, being duly sworn, upon his oath, deposes and says:

    1.    I am a lawyer admitted to practice in the State of _____. I am not
affiliated with any law firm. I am employed by _____, a staffing agency.

    2.    I am not an insider of the debtors in the above-captioned bankruptcy cases
(the "Debtors"). I do not hold any claim, debt or equity security of the Debtors.

    3.    I am not, and have not been within two years before September 15, 2008,
a director, officer, or employee of any of the Debtors.

    4.    I am not, and have not been within three years before September 15, 2008,
an investment banker for any outstanding security of any of the Debtors.

    5.    I am not, and have not been within two years before September 15, 2008,
an investment banker for a security of any of the Debtors, or an attorney for any such
investment banker in connection with the offer, sale, or issuance of a security for any of the
Debtors.

6.      I do not have any connections with (a) any Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, (b) the United States Trustee (Region 2), or (c) any person employed by the United States Trustee (Region 2).

7.      I have reviewed the list of identified parties set forth in the Master Conflicts List. Based upon my review of that list, I hereby disclose the following connections to parties set forth on that list: [i.e. "I worked as a contract attorney for _____ on matters unrelated to Lehman Brothers" or I have nothing relevant to disclose."]

8.      If I should discover any facts bearing on the matters described herein, I will supplement the information contained in this Affidavit.

By: _____

Subscribed and sworn to before me
this ____ day of _____, 2009

_____
        Notary Public

## Exhibit B

**Affidavit and Disclosure Statement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                            :

In re                                 :      **Chapter 11 Case No.**
                                            :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :      **08-13555 (JMP)**
                                            :

                               **Debtors.**       :      **(Jointly Administered)**
                                            :

---------------------------------------------------------------------x

**AFFIDAVIT AND DISCLOSURE STATEMENT OF** _____

STATE OF _____         )
                                   ) ss:
COUNTY OF _____        )

_____, being duly sworn, upon his oath, deposes and says:

        1.      I am a lawyer admitted to practice in the State of _____.  I am not affiliated with any law firm.  I am employed by _____, a staffing agency.

        2.      I am not an insider of the debtors in the above-captioned bankruptcy cases (the "Debtors").  I do not hold any claim, debt or equity security of the Debtors.

        3.      I am not, and have not been within two years before September 15, 2008, a director, officer, or employee of any of the Debtors.

        4.      I am not, and have not been within three years before September 15, 2008, an investment banker for any outstanding security of any of the Debtors.

        5.      I am not, and have not been within two years before September 15, 2008, an investment banker for a security of any of the Debtors, or an attorney for any such investment banker in connection with the offer, sale, or issuance of a security for any of the Debtors.

6.     I do not have any connections with (a) any Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, (b) the United States Trustee (Region 2), or (c) any person employed by the United States Trustee (Region 2).

7.     I have reviewed the list of identified parties set forth in the Master Conflicts List.  Based upon my review of that list, I hereby disclose the following connections to parties set forth on that list: [i.e. "I worked as a contract attorney for _____ on matters unrelated to Lehman Brothers" or I have nothing relevant to disclose."]

8.     If I should discover any facts bearing on the matters described herein, I will supplement the information contained in this Affidavit.

By: _____

Subscribed and sworn to before me
this ____ day of _____, 2009

_____
      Notary Public

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                        :
In re                                   :         **Chapter 11 Case No.**
                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :         **08-13555 (JMP)**
                                        :
                        Debtors.        :         **(Jointly Administered)**
                                        :
                                        :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 327(e)**
**AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF DISCOVERREADY LLC AS PROVIDER**
**OF CONTRACT ATTORNEYS,** *NUNC PRO TUNC* **TO THE ENGAGEMENT DATE**

Upon consideration of the application, dated September 14, 2009 (the "Application"),[1] of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to

sections 327(e) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for

authorization to employ and retain DiscoverReady LLC ("DR") as provider of contract attorneys

to the Debtors *nunc pro tunc* to the Engagement Date; and the Court being satisfied, based on the

representations made in the Application, that DR and the Contract Attorneys represent no interest

adverse to the Debtors or the Debtors' estates with respect to the matters upon which it is to be

engaged, under section 327 of the Bankruptcy Code as modified by section 1107(b); and the

Court having jurisdiction to consider the Application and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

---

[1]    Capitalized terms that are used but not defined in this order have the meanings ascribed to them in the
       Application.

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended

order entered February 13, 2009 governing case management and administrative procedures

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York (the

"U.S. Trustee"); (ii) the attorneys for the Official Committee of Unsecured Creditors (the

"Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal

Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi)

all parties who have requested notice in these chapter 11 cases, and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief

sought in the Application is in the best interests of the Debtors, their estates and creditors, and all

parties in interest and that the legal and factual bases set forth in the Application establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

       ORDERED that the Application is approved; and it is further

       ORDERED that pursuant to sections 327(e) and 328(a) of the Bankruptcy Code,

the Debtors are hereby authorized to employ and retain DR as provider of contract attorneys to

the Debtors under the terms of the Agreement annexed as Exhibit A to the Application, effective

*nunc pro tunc* to Engagement Date; and it is further

       ORDERED that the terms of the Agreement, including without limitation,

the fee provisions, are reasonable terms and conditions and are approved; and it is further

ORDERED that DR will not be required to file interim fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, and that the Debtors are authorized to pay DR in such amounts and at such times as is provided in the Agreement without further order of this Court; and it is further

ORDERED that the Contract Attorneys who will be providing legal services to the Debtors must individually complete and execute an Affidavit and Disclosure Statement (the "Affidavit"), substantially in the form annexed to the Application as Exhibit B, certifying that they do not represent or hold any interest adverse to the Debtors or their estates; and it is further

ORDERED that the Debtors' attorneys shall file the Affidavit with the Court and serve a copy thereof upon the (i) U.S. Trustee, and (ii) Creditors' Committee (together with the Debtors, the "Reviewing Parties"); and it is further

ORDERED that the retention, employment, and compensation of the Contract Attorneys shall be deemed approved as of the date of the filing of the Affidavits without the need for a hearing and without further order from the Court, *provided*, *however,* no objection is filed by the Reviewing Parties within ten days of the filing of the Affidavits; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: September __, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE