# A. 1

1              R. AZERAD

2         UNITED STATES BANKRUPTCY COURT

3         SOUTHERN DISTRICT OF NEW YORK

4    ----------------------x

5    In Re:

6                           Chapter 11

7    LEHMAN BROTHERS          Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al.,    (Jointly Administered)

9

             Debtors.

10

     ----------------------x

11                   *REVISED*

12

13      DEPOSITION OF ROBERT AZERAD

14         New York, New York

15         August 17, 2009

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 24041

1           R. AZERAD

2        August 17, 2009

3          9:29 a.m.

4

5


6     Deposition of ROBERT AZERAD, held at Jones Day

7     LLP, 222 East 41st Street, LLP, New

8     York, New York, before Kathy S.

9     Klepfer, a Registered Professional

10    Reporter, Registered Merit Reporter,

11    Certified Realtime Reporter, Certified

12    Livenote Reporter, and Notary Public

13    of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1                         R. AZERAD

2

3              A P P E A R A N C E S:

4    JONES DAY, LLP

5    Attorneys for Lehman Brothers, Inc.

6         222 East 41st Street

7         New York, New York  10017-6702

8    BY:  JAYANT W. TAMBE, ESQ.

9         KELLY A. CARRERO, ESQ.

10

11   BOIES, SCHILLER & FLEXNER, LLP

12   Attorneys for Barclays and the Witness

13        575 Lexington Avenue - 7th Floor

14        New York, New York  10022

15   BY:  JACK G. STERN, ESQ.

16

17   QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

18   Attorneys for the Creditors Committee

19        51 Madison Avenue

20        22nd Floor

21        New York, New York  10010

22   BY:  JAMES C. TECCE, ESQ.

23

24

25

Page 4

1                        R. AZERAD

2         A P P E A R A N C E S:   (Cont'd.)

3

4    JENNER & BLOCK, LLP

5    Attorneys for the Examiner

6         330 N. Wabash Avenue

7         Chicago, Illinois  60611-7603

8    BY:  DAVID C. LAYDEN, ESQ.

9

10   HUGHES, HUBBARD & REED, LLP

11   Attorneys for the SIPA Trustee

12        One Battery Park Plaza

13        New York, New York  10004-1482

14   BY:  NEIL J. OXFORD, ESQ.

15        SETH D. ROTHMAN, ESQ.

16        AMINA HASSAN, ESQ.

17

18

19   Also Present:

20        RAJESH ANKALKOTI, Alvarez & Marsal

21

22

23

24

25

Page 5

1                           R. AZERAD

2    ROBERT AZERAD, called as a

3         witness, having been duly sworn by a Notary

4         Public, was examined and testified as

5         follows:

6    EXAMINATION BY

7    MR. TAMBE:

8         Q.    Good morning, Mr. Azerad.  My name is

9    Jay Tambe.  I'm with Jones Day and we are

10   special counsel to Lehman Brothers Holding, Inc.

11   With me is my colleague Kelly Carrero.

12              I will let the other lawyers around

13   the table introduce themselves and what parties

14   they represent and then we can get started.

15        A.    Okay.

16              MR. ROTHMAN:  I'm Seth Rothman.  I

17        represent the Trustee under the SIPA

18        statute.

19              MR. OXFORD:  Neil Oxford with Hughes,

20        Hubbard & Reed, a colleague with Seth

21        Rothman.

22              MR. TECCE:  Good morning.  James Tecce

23        of Quinn Emanuel, Committee counsel.

24              MS. HASSAN:  Amina Hassan from Hughes,

25        Hubbard & Reed.

```
 1                    R. AZERAD

 2          MR. LAYDEN:  David Layden with Jenner

 3      & Block for the Examiner.

 4   BY MR. TAMBE:

 5   (The following portions have been removed due to their

 6   Confidentiality designations:

 7   Page 6, Line 5 through Page 13, Line 15 (Highly Confidential);

 8   Page 13, Line 16 through Page 24, Line 10 (Confidential);

 9   Page 24, Line 11 through Page 28, Line 17 (Highly Confidential);

10   Page 28, Line 18 through Page 34, Line 14 (Confidential);

11   Page 34, Line 15 through Page 137, Line 3 (Highly Confidential);

12   Page 137, Line 4 through Page 144, Line 6 (Confidential);

13   Page 144, Line 7 through Page 226, Line 23 (Highly Confidential);

14   Page 226, Line 24 through Page 231, Line 13 (Confidential).

15

16

17

18   (Transcript is continued on Pg. 231, Line 14)

19

20

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14          (Time Noted:  5:29 P.M.)

15                    oOo

16

17                    _____

                      ROBERT AZERAD

18

19      Subscribed and sworn to

        before me this    day

20      of          2009.

21

        _____

22

23

24

25

Page 232

1                    R. AZERAD

2                    CERTIFICATE

3        STATE OF NEW YORK )

                             :  ss

4        COUNTY OF NEW YORK)

5            I, Kathy S. Klepfer, a Registered

6        Merit Reporter and Notary Public within and

7        for the State of New York, do hereby

8        certify:

9            That ROBERT AZERAD, the witness whose

10       deposition is herein before set forth, was

11       duly sworn by me and that such deposition is

12       a true record of the testimony given by such

13       witness.

14           I further certify that I am not

15       related to any of the parties to this action

16       by blood or marriage and that I am in no way

17       interested in the outcome of this matter.

18           I further certify that neither the

19       deponent nor a party requested a review of

20       the transcript pursuant to Federal Rule of

21       Civil Procedure 30(e) before the deposition

22       was completed.

23           In witness whereof, I have hereunto

24       set my hand this 17th day of August, 2009.

25                    --------------------------------------

Page 233

R. AZERAD

INDEX

| WITNESS: | EXAMINATION BY | PAGE |
|---|---|---|
| R. AZERAD | Mr. Tambe | 5 |
| | Mr. Rothman | 170 |

| EXHIBITS: | | PAGE |
|---|---|---|

Exhibit 174, an e-mail from R. Azerad          10

dated 9/22/08

Exhibit 175, a document bearing Bates          76

Nos. BCI-EX-00054633 through 55046

Exhibit 176, a document bearing Bates          84

Nos. 10331692

Exhibit 177, a document bearing Bates          106

Nos. 303398 with attachment

Exhibit 178, an e-mail from M. Kelly to          111

R. Azerad dated September  20, 2008, with

attachment

Exhibit 179, an e-mail chain, the earliest          115

in time from G. Reilly to K. Wong, dated

September 22, 2008, with attachment

Exhibit 180, an e-mail chain, the first          120

in time from M. Kelly to R. Azerad, dated

September 21, 2008

Exhibit 181, a document bearing Bates          155

Nos. BCI-EX-00115093 through 115098

1          R. AZERAD

2          INDEX (Cont'd.)

3    EXHIBITS:                                    PAGE

4    Exhibit 182, an e-mail chain, the earliest    170

5    in time from P. Tonucci to R. Azerad and

6    others, dated September 20, 2008

7    Exhibit 183, an e-mail string, the first      175

8    in time from A. Blackwell to I. Lowitt,

9    dated September 20, 2008

10   Exhibit 184, an e-mail string from R.          177

11   Azerad to I. Lowitt and P. Tonucci dated

12   September 20, 2008

13   Exhibit 185, an e-mail from R. Azerad to       183

14   M. Kelly dated September 21, 2008, with

15   attachment

16   Exhibit 186, an e-mail from R. Azerad to       191

17   M. Kelly dated September 21, 2008, with

18   attachment

19   Exhibit 187, an e-mail string, the first       197

20   in time from J. Potenciano to W. Burke

21   and others, dated September 17, 2008, with

22   attachment

23   Exhibit 188, an e-mail string, the earliest    199

24   in time from M. Kelly to G. Romain and others,

25   dated September 21, 2008, with attachment

Page 235

1                          R. AZERAD

2                       INDEX (Cont'd.)

3     EXHIBITS:                                PAGE

4     Exhibit 189, an e-mail string, the earliest    202

5     in time from J. Potenciano to W. Burke and

6     others, dated September 21, 2008, with

7     attached e-mail string

8     Exhibit 190, an e-mail chain, the earliest    208

9     in time from R. Azerad to P. Tonucci and

10    others dated September 21, 2008

11    Exhibit 191, an e-mail chain, the earliest    209

12    in time from J. Potenciano to W. Burke and

13    others, dated September 21, 2008, with

14    attachment

15    Exhibit 192, an e-mail from R. Azerad to    209

16    P. Tonucci dated September 22, 2008

17

18    REQUEST FOR PRODUCTION:

19    Page 11, Line 2

20

21

22

23

24

25

1          R. AZERAD

2          INDEX (Cont'd.)

3     DIRECTIONS NOT TO ANSWER:

4     Page 40, Line 12

5     Page 56, Line 17

6     Page 104, Line 18

7     Page 124, Line 15

8     Page 124, Line 5

9     Page 124, Line 10

10    Page 159, Line 2

11    Page 227, Line 19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 237

1                        R. AZERAD
2      NAME OF CASE:  In re Lehman Brothers
3      DATE OF DEPOSITION:  August 17, 2009
4      NAME OF WITNESS:  Robert Azerad
5      Reason Codes:
6           1.  To clarify the record.
            2.  To conform to the facts.
7           3.  To correct transcription errors.
8      Page _____ Line _____ Reason _____
       From _____ to _____
9
       Page _____ Line _____ Reason _____
10     From _____ to _____
11     Page _____ Line _____ Reason _____
       From _____ to _____
12
       Page _____ Line _____ Reason _____
13     From _____ to _____
14     Page _____ Line _____ Reason _____
       From _____ to _____
15
       Page _____ Line _____ Reason _____
16     From _____ to _____
17     Page _____ Line _____ Reason _____
       From _____ to _____
18
       Page _____ Line _____ Reason _____
19     From _____ to _____
20     Page _____ Line _____ Reason _____
       From _____ to _____
21
       Page _____ Line _____ Reason _____
22     From _____ to _____
23     Page _____ Line _____ Reason _____
       From _____ to _____
24

                           _____
25                         ROBERT AZERAD

# A. 2

1          S. BERKENFELD

2      UNITED STATES BANKRUPTCY COURT

3      SOUTHERN DISTRICT OF NEW YORK

4   ----------------------x

5   In Re:

6                        Chapter 11

7   LEHMAN BROTHERS        Case No. 08-13555(JMP)

8   HOLDINGS, INC., et al.,   (Jointly Administered)

9

            Debtors.

10

    ----------------------x

11

12

13      DEPOSITION OF STEVEN BERKENFELD

14         New York, New York

15         August 6, 2009

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 24035

1              S. BERKENFELD

2              August 6, 2009

3                9:30 a.m.

4

5


6       Deposition of STEVEN BERKENFELD, held at

7       Jones Day, LLP, 222 East 41st Street, LLP,

8       New York, New York, before Kathy S.

9       Klepfer, a Registered Professional

10      Reporter, Registered Merit Reporter,

11      Certified Realtime Reporter, Certified

12      Livenote Reporter, and Notary Public

13      of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1                    S. BERKENFELD

2

3              A P P E A R A N C E S:

4

5     JONES DAY, LLP

6     Attorneys for Lehman Brothers, Inc.

7          222 East 41st Street

8          New York, New York  10017-6702

9     BY:  ROBERT W. GAFFEY, ESQ.

10         BRIDGET CRAWFORD, ESQ.

11

12    BOIES, SCHILLER & FLEXNER, LLP

13    Attorneys for Barclays Capital

14    and the Witness

15         575 Lexington Avenue - 7th Floor

16         New York, New York  10022

17    BY:  JACK G. STERN, ESQ.

18

19

20

21

22

23

24

25

1                    S. BERKENFELD

2          A P P E A R A N C E S:  (Cont'd.)

3    QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

4    Attorneys for the Creditors Committee

5         865 S. Figueroa Street, 10th Floor

6         Los Angeles, California  90017

7    BY:  ERICA P. TAGGART, ESQ.

8

9    JENNER & BLOCK, LLC

10   Attorneys for the Examiner

11        330 N. Wabash Avenue

12        Chicago, Illinois  60611-7603

13   BY:  ROBERT L. BYMAN, ESQ.

14

15   HUGHES, HUBBARD & REED, LLP

16   Attorneys for the SIPA Trustee

17        One Battery Park Plaza

18        New York, New York  10004-1482

19   BY:  NEIL J. OXFORD, ESQ.

20        AMINA HASSAN, ESQ.

21        JOHN F. WOOD, ESQ.

22

23   Also Present:

24        THOMAS E. HOMMEL, Lehman Brothers

25        PHILIP E. KRUSE, Alvarez & Marsal

Page 5

1                    S. BERKENFELD

2           (Witness sworn.)

3           MR. STERN:  I should just state on the

4      record before we start that, in terms of

5      confidentiality, we on behalf of Barclays

6      will designate this transcript as highly

7      confidential for today, and then within

8      seven days of receipt of the transcript we

9      will designate appropriate sections as

10     either highly confidential, confidential, or

11     not confidential.

12          MR. GAFFEY:  I think, you know, we

13     can -- that's the agreement from Felder.

14     Let's do that for all of these.

15          MR. STERN:  Agreed.

16          MR. GAFFEY:  Everybody agree to that?

17  STEVEN BERKENFELD, called as a

18       witness, having been duly sworn by a Notary

19       Public, was examined and testified as

20       follows:

21  EXAMINATION BY

22  MR. GAFFEY:

23     Q.    Good morning, Mr. Berkenfeld.

24     A.    Good morning.

25     Q.    We met briefly before.  My name is Bob

1        S. BERKENFELD

2    Gaffey.  I'm with Jones Day.  We're special

3    counsel to the estate of Lehman Brothers

4    Holdings, Inc.

5             As you know, the topics that we're

6    going to address today will revolve around the

7    transaction that took place in September of 2008

8    in which Barclays purchased certain assets of

9    Lehman Brothers Holdings, Inc. and LBI.

10             Let me get some background information

11   on you first, sir.  You're qualified as a

12   lawyer; is that correct?

13       A.    Yes.

14       Q.    Columbia Law School?

15       A.    Yes.

16       Q.    Is your license up to date?  Do you

17   maintain an active registration?

18       A.    Yes, I believe my registration is up

19   to date.

20       Q.    There was a time when you worked for

21   Lehman.  Can you give me a brief resumé of your

22   Lehman career?  When you started, when you left,

23   and what titles you held?

24       A.    I started in January of 1987 and was

25   there through the transaction.  I had many

1                       S. BERKENFELD

2    titles, but at the time of the transaction, I

3    was a managing director.

4         Q.    And what was your area of

5    responsibility when you were a managing

6    director?

7         A.    There were, over the years, there were

8    a number of different areas of responsibility.

9         Q.    Okay.  Give me, if you would, the last

10   category before you left Lehman.  I'm obviously

11   particularly interested in September of 2008,

12   but that segment.

13        A.    I was chairman of the, what we

14   referred to as the Transaction Approval

15   Committees, I was Chief Investment Officer for

16   the Private Equity Division, and I was head of

17   the Legal, Compliance and Audit Division.

18        Q.    And were you head of the Legal,

19   Compliance and Audit Division in September of

20   2008?

21        A.    Yes.

22        Q.    And just for completeness, before

23   Lehman, you were an associate at Fried Frank,

24   correct?

25        A.    Yes.

1                    S. BERKENFELD

2        Q.    And were essentially involved in

3   mergers and acquisitions?

4        A.    Yes.

5        Q.    Now, you said that you held these

6   positions at Lehman through the transaction.

7   When exactly did you leave the employ of --

8   actually, withdrawn.

9             Were you employed by Lehman Brothers

10  Holdings, Lehman Brothers, Inc., some

11  combination of both?  What was the entity that

12  employed you?

13       A.    I don't know.

14       Q.    Okay.  And when exactly did you leave

15  the employ of Lehman?

16       A.    That's actually a good question,

17  because it's not really precise.  I don't know

18  that I could give you a specific date on that.

19            MR. STERN:  You can describe why it's

20       not precise.

21       A.    There was everything from -- there was

22  sort of a transitional period where many people

23  were performing services for both Lehman and

24  starting to perform services for Barclays, too.

25       Q.    Okay.  That would be --

Page 9

1                    S. BERKENFELD

2      A.    So it was kind of a transitional

3  period.

4      Q.    As opposed, sir, to the -- I

5  understand that after the transaction closed,

6  there would be transitional work where you had

7  your old Lehman hat on in terms items of

8  knowledge or necessities.

9            My question, though, is who employed

10  you and when?  Who was your employer on

11  September 22, 2008?

12      A.    September 22, 2008.  I don't recall.

13  I'd have to take a look at where the paychecks

14  came from.

15      Q.    And the reason I picked September 22,

16  2008, that's the date the transaction closed,

17  correct?

18      A.    Yes.

19       (The following portions have been removed dur to their

20  Confidentiality designations:

21  Page 9, Line 19 through Page 26, Line 23 (Highly Confidential);

22  Page 26, Line 24 through Page 32, Line 3 (Confidential);

23  Page 32, Line 4 through Page 35, Line 19 (Highly Confidential);

24  Page 35, Line 20 through Page 53, Line 22 (Confidential);

25  Page 53, Line 23 through Page 159, Line 13 (Highly Confidential);

Page 10

1    Page 159, Line 14 through Page 167, Line 8 (Confidential);

2    Page 167, Line 9 through Page 181, Line 22 (Highly Confidential);

3    Page 181, Line 23 through Page 205, Line 19 (Confidential);

4    Page 205, Line 20 through Page 242, Line 21 (Highly Confidential);

5    Page 242, Line 22 through Page 252, Line 5 (Confidential);

6    Page 252, Line 6 through Page 273, Line 18 (Highly Confidential);

7    Page 273, Line 19 through Page 278, Line 4 (Confidential); and

8    Page 278, Line 5 through Page 303, Line 4 (Highly Confidential).

9

10        (The Transcript is continued on Page 303, Line 5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 301

1

2

3

4

5        (Time Noted:  4:57 P.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19                          _____

         STEVEN BERKENFELD

20

21    Subscribed and sworn to

      before me this    day

22    of         2009.

23

      _____

24

25

Page 302

1                    S. BERKENFELD

2                    CERTIFICATE

3        STATE OF NEW YORK )

                             :  ss

4        COUNTY OF NEW YORK)

5            I, Kathy S. Klepfer, a Registered

6        Merit Reporter and Notary Public within and

7        for the State of New York, do hereby

8        certify:

9            That STEVEN BERKENFELD, the witness

10       whose deposition is herein before set forth,

11       was duly sworn by me and that such

12       deposition is a true record of the testimony

13       given by such witness.

14           I further certify that I am not

15       related to any of the parties to this action

16       by blood or marriage and that I am in no way

17       interested in the outcome of this matter.

18           I further certify that neither the

19       deponent nor a party requested a review of

20       the transcript pursuant to Federal Rule of

21       Civil Procedure 30(e) before the deposition

22       was completed.

23           In witness whereof, I have hereunto

24       set my hand this 6th day of August, 2009.

25                    -------------------------------

1                        S. BERKENFELD

2                            INDEX

3    WITNESS:                  EXAMINATION BY        PAGE

4    S. BERKENFELD        Mr. Gaffey            5, 298

5                         Mr. Oxford              240

6                         Ms. Taggart             278

7                         Mr. Stern               299

8    EXHIBITS:                                  PAGE

9    Exhibit 17, a document bearing Bates        20

10   Nos. BCI-EX-00077288 through 77290

11   Exhibit 18, a document bearing Bates Nos.   43

12   BCI-CG00033789

13   Exhibit 19, one-page document, showing      43

14   columns of assets and liabilities, dated

15   9/16/2008 at 11:18 A.M.

16   Exhibit 20, a document bearing Bates        67

17   Nos. 132841

18   Exhibit 21, a document bearing Bates        73

19   Nos. 10309627

20   Exhibit 22, Barclays PLC Results           125

21   Announcement, Figures 2008

22   Exhibit 23, a document bearing Bates       129

23   Nos. 70283

24   Exhibit 24, First Amendment to the Asset   135

25   Purchase Agreement

Page 304

1          S. BERKENFELD

2            INDEX (Cont'd.)

3   EXHIBITS:                          PAGE

4   Exhibit 25, a letter dated September     135

5   20, 2008

6   Exhibit 26, Notice of Filing of          159

7   Purchase Agreement

8   Exhibit 28, a document bearing Bates      183

9   Nos.  BCI-CG00011047 through 11050

10  Exhibit 29, a document bearing Bates      183

11  Nos. 10284821 through 10279830

12  Exhibit 30, an e-mail string, the first   183

13  of which from P. Dowd to A. Keller, et al.

14  Exhibit 31, a document bearing Bates      183

15  Nos. 10279029 through 10279862

16  Exhibit 32, a document bearing Bates      183

17  Nos. BCI-EX-00059913 through 59929

18  Exhibit 33, a document bearing Bates      183

19  Nos. 10284801 through 10286514

20  Exhibit 34, a document bearing Bates      183

21  Nos. 10279028 through 10279851

22  Exhibit 35, a document bearing Bates      184

23  Nos. 10284822 and 10279863 through

24  10279864

25

Page 305

1                    S. BERKENFELD

2                    INDEX (Cont'd.)

3    EXHIBITS:                                    PAGE

4    Exhibit 36, a document bearing Bates         184

5    Nos. BCI-CG00024252 through 24271

6    Exhibit 37, a document bearing Bates         184

7    Nos. BCI-CG00024954 through 24973

8    Exhibit 38, a document bearing Bates         184

9    Nos. 10283756 with attachments

10   Exhibit 39, e-mail from S. Berkenfeld        200

11   to Beth Rudofker dated Saturday, September

12   20, at 1:07 P.M.

13   Exhibit 40, a document bearing Bates         204

14   Nos. STB-LEH0000272 through 277

15   Exhibit 41, a document bearing Bates         208

16   Nos. 10266839 with attachment

17   Exhibit 42, a document bearing Bates         221

18   Nos. 10283125 with attachment

19   Exhibit 43, a document bearing Bates         224

20   Nos. 10270558

21   Exhibit 44, a document bearing Bates         227

22   Nos. 459686

23

24

25

Page 306

1                       S. BERKENFELD

2                       INDEX (Cont'd.)

3    EXHIBITS:                                    PAGE

4    Exhibit 45, a one-page e-mail from Ian       229

5    Lowitt to Steven Berkenfeld, Bart McDade,

6    Alex Kirk, Paolo Tonucci, CC to James

7    Seery, dated 9/22/08 at 7:23 A.M. entitled

8    "Looks Like We're All Set"

9    Exhibit 46, a document bearing Bates         233

10   Nos. BCI-CG00034704 through 34707

11   Exhibit 47, a document bearing Bates         235

12   Nos. BCI-CG00035134 through 35955

13   Exhibit 48, an e-mail from Monty Forrest     251

14   to Alastair Blackwell and others

15   Exhibit 49, a document bearing Bates Nos.    258

16   BCI-CG00024954 through 24972

17   Exhibit 50, a document bearing Bates Nos.    260

18   BCI-CG00027138 through 27148

19   Exhibit 51, Transfer and Assumption Agrmt.   266

20   Exhibit 52, a letter dated September 22,     268

21   2008, from DTC

22   Exhibit 53, a document bearing Bates Nos.    269

23   BCI-EX-(S)-00007181

24   Exhibit 54, a document bearing Bates Nos.    273

25   BCI-EX-(S)-00007197 through 7201

# A. 3

Page 1

1

2           UNITED STATES BANKRUPTCY COURT

3           SOUTHERN DISTRICT OF NEW YORK

4

5    In re:                    )

                               ) Chapter 11

6    LEHMAN BROTHERS           ) Case No. 08-13555(JMP)

                               )

7    HOLDINGS, INC., et al.,   )

                               )

8            Debtors.          )

     -------------------------)

9

10

11

12

13

14              DEPOSITION OF

15           ALASTAIR BLACKWELL

16           New York, New York

17          Friday, August 7, 2009

18

19

20

21

22

23   Reported by:

24   KRISTIN KOCH, RPR, RMR, CRR, CLR

25   JOB NO. 24037

1

2

3

4                          August 7, 2009

5                           9:21 a.m.

6

7

8           Deposition of ALASTAIR BLACKWELL,

9      held at the offices of JONES DAY, LLP, 222

10     East 41st Street, New York, New York,

11     before Kristin Koch, a Registered

12     Professional Reporter, Registered Merit

13     Reporter, Certified Realtime Reporter,

14     Certified Livenote Reporter and Notary

15     Public of the State of New York.

16

17

18

19

20

21

22

23

24

25

Page 3

1

2    A P P E A R A N C E S:

3

4

5        JONES DAY, LLP

6        Attorneys for Lehman Brothers, Inc.

7            222 East 41st Street

8            New York, New York 10017-6702

9        BY:   WILLIAM J. HINE, ESQ.

10           GEORGE E. SPENCER, ESQ.

11

12

13       BOIES, SCHILLER & FLEXNER, LLP

14       Attorneys for Barclays and Alastair

15       Blackwell

16           5301 Wisconsin Avenue, N.W.

17           Washington, D.C. 20015

18       BY:   JONATHAN M. SHAW, ESQ.

19

20

21       QUINN EMANUEL URQUHART OLIVER & HEDGES LLP

22       Attorneys for Creditors Committee

23           51 Madison Avenue

24           New York, New York 10010

25       BY:   ROBERT K. DAKIS, ESQ.

Page 4

1

2    A P P E A R A N C E S:   (Continued)

3

4

5        JENNER & BLOCK LLP

6        Attorneys for Examiner

7             330 North Wabash Avenue

8             Chicago, Illinois 60611-7603

9        BY:   ROBERT L. BYMAN, ESQ.

10

11

12       HUGHES HUBBARD & REED LLP

13       Attorneys for SIPA Trustee

14            One Battery Park Plaza

15            New York, New York 10004-1482

16       BY:   SETH D. ROTHMAN, ESQ.

17             NEIL J. OXFORD, ESQ.

18             AMINA HASSAN, ESQ.

19

20

21   ALSO PRESENT:

22

23       RAJESH ANKALKOTI, Alvarez & Marsal

24

25

Page 5

1

2          IT IS HEREBY STIPULATED AND AGREED

3     by and between the attorneys for the

4     respective parties herein, that filing and

5     sealing be and the same are hereby waived.

6          IT IS FURTHER STIPULATED AND AGREED

7     that all objections, except as to the form

8     of the question, shall be reserved to the

9     time of the trial.

10         IT IS FURTHER STIPULATED AND AGREED

11    that the within deposition may be sworn to

12    and signed before any officer authorized

13    to administer an oath, with the same

14    force and effect as if signed and sworn

15    to before the Court.

16

17

18

19

20               - oOo -

21

22

23

24

25

Page 6

1

2    A L A S T A I R   B L A C K W E L L,

3         called as a witness, having been duly sworn

4         by a Notary Public, was examined and

5         testified as follows:

6    EXAMINATION BY

7    MR. HINE:

8         Q.    Good morning, Mr. Blackwell.

9         A.    Good morning.

10        Q.    How are you?

11        A.    Very good, thanks.

12        Q.    I am sure your counsel has told you

13   what's going on here today, but we are here

14   taking a deposition involving the Lehman

15   bankruptcy proceedings.

16             My name is Bill Hine and I am from

17   Jones Day, which is the firm that's special

18   counsel to LBHI.  Several of the other counsel

19   along the table will introduce themselves

20   later, but they represent various entities that

21   are involved in this proceeding.

22             So the way this is going to work is

23   I am going to ask you a bunch of questions

24   first and they will all take turns with you

25   later as we progress.

Blackwell

1

2      A.      Understood.

3      Q.      As we go, I am going to be asking

4  you a series of questions.  You are under oath,

5  so you will answer the questions.  At some

6  points in time you will hear your counsel state

7  an objection.  That doesn't mean you don't have

8  to answer the question.  That just means he is

9  either preserving the record or he wants to ask

10  me to clarify the question.  If he instructs

11  you not to answer, that's up to you as well,

12  but the mere fact that he makes an objection

13  doesn't mean you don't have to answer the

14  question.

15          In that vein, I'd like to ask you

16  just please ask me to clarify any question

17  where I might misuse an acronym or a word.  I

18  feel like I am learning a new language here

19  reading all you folks' e-mail, so I know there

20  is technical financial words that you guys use

21  and you understand readily, but if you need me

22  to clarify one, I want to have a clear question

23  so you can answer it.

24          I think your counsel has probably

25  told you, but you have been designated as a

Page 8

1                        Blackwell

2    30(b)(6) witness for a select set of issues in

3    this case and those issues relate to Schedules

4    A and B of the Clarification Letter.  We will

5    get to that later, but I just want to let you

6    know that, and that I will alert you to that

7    fact when we get to that portion of the

8    deposition, so in that portion you will be

9    speaking on behalf of Barclays.

10            So I am ready to proceed if you are.

11   Are we ready to do this?

12       A.    Absolutely, yes.  Thank you.

13       Q.    Can we start off with a little

14   background information about you.

15            You are currently employed by

16   Barclays Capital; correct?

17       A.    I am, yes.

18       Q.    And what is your present position?

19       A.    I am responsible for the Americas

20   operations department for capital markets.

21       Q.    Okay.  And do you have a title?

22       A.    I am a managing director.

23   (The following portions have been removed due to their

24   Confidentiality designations:

25   Page 8, Line 23 through Page 9, Line 15 (Highly Confidential);

Page 9

1    Page 9, Line 16 through Page 17, Line 13 (Confidential);

2    Page 17, Line 14 through Page 35, Line 2 (Highly Confidential);

3    Page 35, Line 3 through Page 38, Line 6 (Confidential);

4    Page 38, Line 7 through Page 49, Line 20 (Highly Confidential);

5    Page 49, Line 21 through Page 51, Line 16 (Confidential);

6    Page 51, Line 17 through Page 95, Line 24 (Highly Confidential);

7    Page 95, Line 25 through Page 97, Line 7 (Confidential);

8    Page 97, Line 8 through Page 103, Line 12 (Highly Confidential);

9    Page 103, Line 13 through Page 114, Line 11 (Confidential);

10    Page 114, Line 12 through Page 156, Line 24 (Highly Confidential);

11    Page 156, Line 25 through Page 159, Line 5 (Confidential);

12    Page 159, Line 6 through Page 187, Line 25 (Highly Confidential).

13    Page 188, Line 1 through Page 191, Line 8 (Confidential);

14    Page 191, Line 9 through Page 243, Line 12 (Highly Confidential);

15    Page 243, Line 13 through Page 247, Line 6 (Confidential);

16    Page 247, Line 7 through Page 255, Line 2 (Highly Confidential);

17    Page 255, Line 3 through Page 258, Line 22 (Confidential); and

18    Page 258, Line 23 through Page 267, Line 10 (Highly Confidential).

19

20

21

22

23         (Transcript is continued on Pg. 267, Line 11)

24

25

Page 267

1

2

3

4

5

6

7

8

9

10

11                    (Time noted:  4:27 p.m.)

12

13

14                        ----------------------

15                        ALASTAIR BLACKWELL

16

17     Subscribed and sworn to before me

18     this        day of                2009.

19

20     -----------------------------------------

21

22

23

24

25

Page 268

1

2                    C E R T I F I C A T E

3

4      STATE OF NEW YORK    )

5                           ) ss.:

6      COUNTY OF NASSAU      )

7

8            I, KRISTIN KOCH, a Notary Public

9      within and for the State of New York, do

10     hereby certify:

11           That ALASTAIR BLACKWELL, the witness

12     whose deposition is hereinbefore set

13     forth, was duly sworn by me and that such

14     deposition is a true record of the

15     testimony given by such witness.

16           I further certify that I am not

17     related to any of the parties to this

18     action by blood or marriage; and that I am

19     in no way interested in the outcome of

20     this matter.

21           IN WITNESS WHEREOF, I have hereunto

22     set my hand this 7th day August, 2009.

23                  -------------------------

24                  KRISTIN KOCH, RPR, RMR, CRR, CLR

25

1

2          --------------------I N D E X------------------

3

           WITNESS                  EXAMINATION BY        PAGE

4

5          ALASTAIR BLACKWELL    MR. HINE              6

6                                MR. OXFORD           190

7                                MR. DAKIS            255

8

           -------------------EXHIBITS-------------------

9

10         NUMBER                              PAGE LINE

11

           Exhibit 55 B

12         Letter dated October 2, 2008, Bates
           stamped BCI-EX-00077291 through

13         BCI-EX-00077293...................... 22   19

14         Exhibit 56 B
           E-mail dated May 29, 2009, Bates

15         stamped 10295594, with attached
           fax, Bates stamped 10300652.......... 46   16

16

           Exhibit 57 B

17         Amendment Agreement.................. 50   10

18         Exhibit 58 B
           E-mail dated September 17, 2008,

19         Bates stamped 77752.................. 64   11

20         Exhibit 59 B
           E-mail dated 9-17-2008............... 64   14

21

           Exhibit 60 B

22         E-mail dated 9-18-2008.............. 71   20

23         Exhibit 61 B
           E-mail dated 9-17-2008.............. 77   15

24

           Exhibit 62 B

25         E-mail dated September 17, 2008,

Page 270

1

2         --------------------EXHIBITS--------------------

3

          NUMBER                              PAGE LINE

4

5         Exhibit 63 B
          E-mail dated September 19, 2008,
6         Bates stamped 10294630............... 97   10

7         Exhibit 64 B
          E-mail dated 9-18-2008............... 103  14

8

          Exhibit 65 B
9         E-mail dated September 19, 2008,
          Bates stamped 10298087............... 105  16

10

          Exhibit 66 B
11        E-mail dated September 19, 2008,
          Bates stamped 10298186............... 112  13

12

          Exhibit 67 B
13        E-mail dated 9-18-2008............... 115  19

14        Exhibit 68 B
          E-mail dated 9-20-2008............... 118  8

15

          Exhibit 69 B
16        E-mail dated September 19, 2008,
          Bates stamped 93219.................. 124  9

17

          Exhibit 70 B
18        E-mail dated May 29, 2009, Bates
          stamped 10296524.................... 127  4

19

          Exhibit 71 B
20        E-mail dated September 19, 2008,
          Bates stamped 138587................ 128  13

21

          Exhibit 72 B
22        E-mail dated 9-20-2008............... 132  22

23        Exhibit 73 B
          E-mail dated September 20, 2008,
24        Bates stamped 10222586............... 136  8

25        Exhibit 74 B

1

2        --------------------EXHIBITS--------------------

3

         NUMBER                              PAGE LINE

4

5        Exhibit 75 B
         E-mail dated 9-20-2008.............. 149  13

6

         Exhibit 76 B
7        E-mail dated September 21, 2008,
         Bates stamped 138124................ 154  14

8

         Exhibit 77 B
9        E-mail dated September 21, 2008,
         Bates stamped 459680................ 156  25

10

         Exhibit 78 B
11       E-mail dated September 21, 2008,
         Bates stamped 10252597.............. 159  6

12

         Exhibit 79 B
13       E-mail dated 9-21-2008.............. 160  15

14       Exhibit 80 B
         E-mail dated September 22, 2008,
15       Bates stamped 464767................ 163  10

16       Exhibit 81 B
         Debtors' Second Rule 30(b)(6)
17       Deposition Notice to Barclays on
         Issues Relating to the Transfer of
18       Assets.............................. 167  4

19       Exhibit 82 B
         E-mail dated September 20, 2008,
20       Bates stamped BCI-CG 00035134....... 170  6

21       Exhibit 83 B
         E-mail dated September 21, 2008,
22       Bates stamped BCI 006647 through
         BCI 006653.......................... 173  18

23

         Exhibit 84 B
24       E-mail dated September 22, 2008,
         Bates stamped BCI 008149 through
25       BCI 008670.......................... 175  16

1

2       --------------------EXHIBITS--------------------

3

        NUMBER                                    PAGE LINE

4

5       Exhibit 85 B
        E-mail dated September 30, 2008,
6       Bates stamped BCI-EX-(S)-00004396
        through BCI-EX-(S)-00004675.......... 177  15
7

        Exhibit 86 B
8       Chart, Bates stamped
        BCI-EX-00099519 through
9       BCI-EX-00099521...................... 185  17
10      Exhibit 87 B
        JPM Chase assets, Bates stamped
11      BCI-EX-00108700...................... 188  2
12      Exhibit 88 B
        Chart, Bates stamped
13      BCI-EX-00109154 through
        BCI-EX-00109161...................... 188  24
14

        Exhibit 89 B
15      E-mail dated 9-19-2008............... 222  25
16      Exhibit 90 B
        E-mail dated 9-19-2008............... 225  3
17

        Exhibit 91 B
18      E-mail dated 9-21-2008............... 226  7
19      Exhibit 92 B
        E-mail dated 9-20-2008............... 228  18
20

        Exhibit 93 B
21      Management of the Unencumbered
        Asset Gap............................ 235  2
22

        Exhibit 94 B
23      E-mail dated 9-22-2008............... 241  21
24      Exhibit 95
        E-mail dated 9-21-2008............... 243  13
25

1

2      --------------------EXHIBITS--------------------

3

       NUMBER                                PAGE LINE

4

5      Exhibit 96 B

       E-mail dated September 18, 2008,

6      Bates stamped 77882.................. 258  11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 274

1

2           ERRATA SHEET FOR THE TRANSCRIPT OF:

3      Case Name:          In re:  Lehman Brothers

       Dep. Date:          August 7, 2009

4      Deponent:           Alastair Blackwell

5                    CORRECTIONS:

6      Pg. Ln.  Now Reads          Should Read          Reason

7      ___ ___  _____      _____      _____

8      ___ ___  _____      _____      _____

9      ___ ___  _____      _____      _____

10     ___ ___  _____      _____      _____

11     ___ ___  _____      _____      _____

12     ___ ___  _____      _____      _____

13     ___ ___  _____      _____      _____

14     ___ ___  _____      _____      _____

15     ___ ___  _____      _____      _____

16     ___ ___  _____      _____      _____

17     ___ ___  _____      _____      _____

18

19                            _____

20                            Signature of Deponent

21     SUBSCRIBED AND SWORN BEFORE ME

22     THIS_____DAY OF_____, 2009.

23

24     _____

25     (Notary Public)  MY COMMISSION EXPIRES:_____

# A. 4

Page 1

1            HIGHLY CONFIDENTIAL - PATRICK CLACKSON

2                 UNITED STATES BANKRUPTCY COURT

3                 SOUTHERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - - - - -

5    In Re:

                                        Chapter 11

6

7    LEHMAN BROTHERS   Case No. 08-13555(JMP)

     HOLDINGS, INC. et al., (Jointly Administered)

8

9                      Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - -

11                 HIGHLY CONFIDENTIAL

12            DEPOSITION OF PATRICK CLACKSON

13            Friday, September 4, 2009

14                At:  9:00 am

15                 Taken at:

16                  Barclays

                 1 Churchill Place

17                   London

                 United Kingdom

18

19   Reported by: AILSA WILLIAMS

     Certified LiveNote Reporter

20

21

22

23

24

25

1          HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2                    A P P E A R A N C E S
3          JONES DAY, LLP
           Attorneys for Lehman Brothers, Inc.
4          222 East 41st Street
           New York, NY 10017-6702
5          BY:  JAYANT W. TAMBE, ESQ
           BRIDGET CRAWFORD, ESQ
6

           BOIES, SCHILLER & FLEXNER, LLP
7          Attorneys for Barclays Capital and the
           Witness
8          5301 Wisconsin Avenue N.W
           Washington D.C 20015
9          BY: HAMISH HUME
10         QUINN, EMANUEL, URQUHART, OLIVER & HEDGES,
           LLP
11         Attorneys for the Creditors Committee
           16 Old Bailey
12         London, United Kingdom EC4M 7EG
           BY: MATTHEW BUNTING, ESQ.
13

           HUGHES, HUBBARD & REED, LLP
14         Attorneys for the SIPA Trustee
           1775 I Street, N.W
15         Washington D.C. 20006-2401
           BY: JOHN F. WOOD
16  Also Present:
17         PHILIP E. KRUSE: Alvarez & Marsal
18
19
20
21
22
23
24
25

1        HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2

3                        I N D E X

4   PATRICK CLACKSON .. ... .. .. .. ... .. .. ... ..5
5   DIRECT EXAMINATION BY MR. TAMBE: .. ... .. .. ... ..5
6   CROSS-EXAMINATION BY MR. WOOD: .. ... .. .. ... 149
7   CROSS-EXAMINATION BY MR. BUNTING: . ... .. .. ... 163
8   FURTHER CROSS-EXAMINATION BY MR. .. ... .. .. ... 170
            WOOD:

9

10                   INDEX OF EXHIBITS

11  Exhibit 349A (Privileged, not . ... .. .. .. ... .27
            attached)
12

    Exhibit 350A (Privileged) . ... .. .. .. .. ... .30
13

    Exhibit 351A E-mail, Sept 15, 08 .. ... .. .. ... .31
14

    Exhibit 352A E-mail, Sept 16, 08 .. ... .. .. ... .36
15

    Exhibit 353A E-mail, Sept 24, 08 .. ... .. .. ... .41
16

    Exhibit 354A E-mail, Sept 16, 08 .. ... .. .. ... .42
17

    Exhibit 355A E-mail, Sept 16, 08 .. ... .. .. ... .59
18

    Exhibit 356A E-mail, Sept 17, 08 .. ... .. .. ... .71
19

    Exhibit 357A E-mail, Sept 17, 08 .. ... .. .. ... .73
20

    Exhibit 358A E-mail, Sept 18, 08 .. ... .. .. ... .85
21

    Exhibit 359A E-mail, Sept 20, 08 .. ... .. .. ... .87
22

    Exhibit 360A E-mail, Sept 20, 08 .. ... .. .. ... .88
23

    Exhibit 361A E-mail, Sept 22, 08 .. ... .. .. ... .88
24

    Exhibit 362A E-mail, Sept 19, 08 .. ... .. .. ... .98
25  Exhibit 363A E-mail, Sept 23, 08 .. ... .. .. ... 101

1

HIGHLY CONFIDENTIAL - PATRICK CLACKSON

2

Exhibit 364A E-mail, Sept 23, 08 .. ... ... ... ... 104

3

Exhibit 365A E-mail, Sept 24, 08 .. ... ... ... ... 105

4

Exhibit 366A E-mail, Sept 21, 08 .. ... ... ... ... 112

5

Exhibit 367A E-mail, Sept 21, 08 .. ... ... ... ... 113

6

Exhibit 368A E-mail, Sept 23, 08 .. ... ... ... ... 118

7

Exhibit 369A E-mail, Sept 24, 08 .. ... ... ... ... 123

8

Exhibit 370A E-mail, Sept 23, 08 .. ... ... ... ... 124

9

Exhibit 371A Barclays Results . ... ... ... ... ... 146

10

Exhibit 372A E-mail, Sept 17, 08 .. ... ... ... ... 150

11

Exhibit 373A E-mail, Sept 22, 08 .. ... ... ... ... 158

12

Exhibit 374A E-mail, Sept 23, 08 .. ... ... ... ... 160

13

Exhibit 375A E-mail, Sept 29, 08 .. ... ... ... ... 161

14

Exhibit 376A E-mail, Sept 17, 08 .. ... ... ... ... 169

15

Exhibit 377A BCI-EX-00115843-46 ... ... ... ... ... 178

16

17

18

19

20

21

22

23

24

25

Page 5

1          HIGHLY CONFIDENTIAL - PATRICK CLACKSON

2                    PATRICK CLACKSON

3                  Having been duly sworn,

4                  Testified as follows:

5            DIRECT EXAMINATION BY MR. TAMBE:

6          MR. TAMBE:  Morning, Mr. Clackson.  My

7    name is Jay Tambe with the law firm Jones Day,

8    special counsel to Lehman Brothers Holdings Inc.

9    With me is my colleague, Bridget Crawford.

10          I will have the lawyers in the room

11   introduce themselves and we will get started.

12          MR. BUNTING:  Morning, I am Matthew

13   Bunting from Quinn, Emanuel, Urquhart, Oliver &

14   Hedges representing Creditors Committee.

15          MR. KRUSE:  Phillip Kruse with Alvarez &

16   Marsal on behalf of the LBHI estate.

17          MR. WOOD:  John Wood from Hughes,

18   Hubbard & Reed.  We represent the SIPA Trustee.

19          MR. HUME:  Hamish Hume, Boies, Schiller

20   & Flexner, representing Barclays and the witness.

21   (The following portions have been removed due to

22    their Confidentiality designation:

23   Page 5, Line 21 through Page 38, Line 17 (Confidential);

24   Page 38, Line 18 through Page 61, Line 14 (Highly Confidential);

25   Page 61, Line 15 through Page 71, Line 23 (Confidential);

1          HIGHLY CONFIDENTIAL - PATRICK CLACKSON

2     Page 71, Line 24 through Page 163, Line 17 (Highly Confidential); and

3     Page 163, Line 18 through Page 183, Line 12 (Confidential)

4

5     the transcript is continued on Page 183, Line 13.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 183

1            HIGHLY CONFIDENTIAL - PATRICK CLACKSON

2

3

4

5

6

7

8

9

10

11

12

13                    (Deposition concluded)

14

15

16            _____

17            Patrick Clackson

18

19

20

21

22

23

24

25

Page 184

HIGHLY CONFIDENTIAL - PATRICK CLACKSON

1

2

3                    CERTIFICATE OF DEPONENT

4

5    I, Patrick Clackson, hereby certify that I have
     read the foregoing pages, numbered 1 through 186,
6    of my deposition of testimony taken in these
     proceedings on Friday, 4 September, 2009, and,
7    with the exception of the changes listed on the
     next page and/or corrections, if any, find them to
8    be a true and accurate transcription thereof.

9

10

11

12

13   Signed:   ........................

14   Name:    Patrick Clackson

15   Date:    ........................

16

17

18

19

20

21

22

23

24

25

Page 185

1            HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2                  CERTIFICATE OF COURT REPORTER
3

4    I, AILSA WILLIAMS, an Accredited LiveNote Reporter
     with European Deposition Services, London,
5    England, hereby certify that the testimony of the
     witness Patrick Clackson in the foregoing
6    transcript, numbered pages 1 through 186, taken on
     Friday, 4 September, 2009 was recorded by me in
7    machine shorthand and was thereafter transcribed
     by me; and that the foregoing transcript is a true
8    and accurate verbatim record of the said
     testimony.
9

10   I further certify that I am not a relative,
     employee, counsel or financially involved with any
11   of the parties to the within cause, nor am I an
     employee or relative of any counsel for the
12   parties, nor am I in any way interested in the
     outcome of the within cause.
13

14

15

16

17   Signed:  ........................
18   AILSA WILLIAMS
19   Dated: 9/4/2009
20

21

22

23

24

25

Page 186

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON

2

3                    E R R A T A

4            Deposition of Patrick Clackson

5    Page/Line No.        Description        Reason for

6    change

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    Signed:   ...................

24    Name:   Patrick Clackson

25    Date:   ...................

# A. 5

Page 1

1                    J. COGHLAN

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4      ----------------------x

5    In Re:

6                              Chapter 11

7    LEHMAN BROTHERS          Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al.,    (Jointly Administered)

9

                Debtors.

10

       ----------------------x

11

12          * * *HIGHLY CONFIDENTIAL* * *

13          DEPOSITION OF JOHN COGHLAN

14             New York, New York

15             August 13, 2009

16

17

18

19

20

21

22

23    Reported by:

24    KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25    JOB NO. 24122

Page 2

1                   J. COGHLAN

2                August 13, 2009

3                  9:30 a.m.

4

5


6       Deposition of JOHN COGHLAN, held at Jones Day

7       LLP, 222 East 41st Street, LLP, New

8       York, New York, before Kathy S.

9       Klepfer, a Registered Professional

10      Reporter, Registered Merit Reporter,

11      Certified Realtime Reporter, Certified

12      Livenote Reporter, and Notary Public

13      of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1              J. COGHLAN

2

3          A P P E A R A N C E S:

4

5   JONES DAY, LLP

6   Attorneys for Lehman Brothers, Inc.

7        222 East 41st Street

8        New York, New York  10017-6702

9   BY:  WILLIAM J. HINE, ESQ.

10        GEORGE E. SPENCER, ESQ.

11

12   BOIES, SCHILLER & FLEXNER, LLP

13   Attorneys for Barclays

14        575 Lexington Avenue - 7th Floor

15        New York, New York  10022

16   BY:  JACK G. STERN, ESQ.

17

18   SCARING & BRISSENDEN, PLLC

19   Attorneys for the Witness

20        666 Old County Road

21        Ste. 501

22        Garden City, New York  11530-2004

23   BY:  STEPHEN P. SCARING, ESQ.

24

25

Page 4

1                         J. COGHLAN

2

3            A P P E A R A N C E S:   (Cont'd.)

4

5    QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

6    Attorneys for the Creditors Committee

7         51 Madison Avenue

8         22nd Floor

9         New York, New York  10010

10   BY:  ERIC M. KAY, ESQ.

11

12   JENNER & BLOCK, LLP

13   Attorneys for the Examiner

14        330 N. Wabash Avenue

15        Chicago, Illinois  60611-7603

16   BY:  DAVID C. LAYDEN, ESQ.

17

18   HUGHES, HUBBARD & REED, LLP

19   Attorneys for the SIPA Trustee

20        One Battery Park Plaza

21        New York, New York  10004-1482

22   BY:  NEIL J. OXFORD, ESQ.

23

24   Also Present:

25        RAJESH ANKALKOTI, Alvarez & Marsal

Page 5

1                    J. COGHLAN

2   JOHN COGHLAN, called as a

3        witness, having been duly sworn by a Notary

4        Public, was examined and testified as

5        follows:

6   EXAMINATION BY

7   MR. HINE:

8        Q.    Good morning, Mr. Coghlan.

9        A.    Good morning.

10        Q.    We met briefly off the record just

11   before this, but my name is Bill Hine.  I'm from

12   the firm of Jones Day and we are special counsel

13   to the Lehman Brothers Holdings, Inc. in

14   connection with the pending bankruptcy

15   proceedings.  This deposition is to take some

16   discovery in connection with that effort.

17             Have you ever been deposed before?

18        A.    I have.

19        Q.    You have not?

20        A.    I have.

21        Q.    You have, okay.  So you know the

22   drill, generally.  I'm going to ask you some

23   questions.

24        A.    Uh-huh.

25        Q.    You're going to give me answers.  On

Page 6

1                   J. COGHLAN

2   occasion, your counsel might state objections

3   for the record or to instruct me that he thinks

4   my questions are unclear or something wrong with

5   my question.  That doesn't relieve you of the

6   obligation to answer the question.

7       A.    Uh-huh.

8       Q.    It just gives me a chance to correct

9   it.

10           In that vein, throughout the course of

11  the day, undoubtedly I will misuse a word or

12  some technical term or some acronym that you

13  folks use every day in your business, so I would

14  ask you to just correct me or ask me to

15  clarify --

16      A.    Uh-huh.

17      Q.    -- any questions you think I might not

18  be getting the concept or might be asking an

19  unclear question.  I think it's in everyone's

20  interests to have clear questions so you can

21  answer them.

22           MR. STERN:  Let me just point out the

23      reporter is noting your "uh-hum" comments.

24      So going forward, "yes" or "no."

25      Q.    Okay.  The reporter takes down -- can

1                     J. COGHLAN

2   only take down verbal answers, so when you nod

3   your head, she can't note that.

4           Can we start off briefly with your

5   previous employment at Lehman Brothers?  Were

6   you an employee of LBI?

7       A.    I was.

8       Q.    Okay.  And could you tell me what your

9   last position you held at LBI was.

10      A.    I worked in the prime broker.  I was a

11  managing director and I was responsible for the

12  secured financing of the firm.

13      Q.    When you say "prime broker," is

14  that -- I see references in some of the

15  documents to Prime Services?

16      A.    Prime Services, yes.

17      Q.    Can you just explain to me what that

18  is?

19      A.    Prime Services has several businesses

20  within it.  From a -- the primary businesses or

21  the major businesses are financing businesses,

22  both in fixed income and equities.  There is a

23  futures business resides in prime broker, where

24  there are fees for execution and settlement.

25  There is other execution and settlement activity

Page 8

J. COGHLAN

1

2   that goes on in prime brokerage relative to

3   equity executions as well.  So the piece I was

4   responsible for was the financing piece within

5   the prime brokerage.

6       Q.    Could you explain to me what that

7   means?

8       A.    Yes.  The firm basically has two types

9   of assets that it needs to finance on a daily

10  basis.  It has assets that it owns as principal

11  that we have bought and put into our position.

12      Q.    Okay.

13      A.    Those trading decisions and those

14  positions are managed outside of the prime

15  brokerage business.  And within the prime

16  brokerage business there is a financing business

17  which basically does lending and borrowing of

18  money, collateralized normally by securities,

19  with the objective of making a spread in between

20  the borrowing and the lending on the money.  So

21  that's the activity that I manage.

22      Q.    Okay.  And you have a team of folks

23  that work for you in that activity, I take it?

24      A.    Yes, I do.

25      Q.    And does that activity entail use of

1                        J. COGHLAN

2    repo transactions or repurchase transactions?

3        A.    It does.

4        Q.    So if we use the term "repo," you will

5    understand what that means throughout this

6    deposition?

7        A.    Yes.

8        Q.    And can you explain to me generally

9    what a repo transaction is?

10       A.    Repo transaction is when I either --

11   well, when I lend money to a third party, I

12   normally do that by lending the money and they

13   will give me some sort of collateral to secure

14   that loan.

15       Q.    Right.

16       A.    Normally, the collateral that they

17   would post are relatively liquid marketable

18   securities.  Normally, I'm taking more

19   collateral than I'm lending money so I have some

20   sort of over collateralization protection, and

21   so that would be one leg of the transaction.

22           Once I lend that money, I have to take

23   those securities and repledge them to someone

24   else who will give me money.  And so that is the

25   basic dynamic of a repo transaction.

Page 10

1                    J. COGHLAN

2       Q.    And Lehman makes money by the

3  difference in --

4       A.    Where I borrow the money and when I

5  loan the money.

6             MR. STERN:  Wait.  He has to finish

7       the question.  Let's let him finish the

8       question.

9       Q.    I just want to understand.  The goal

10 of your department is to make money on these

11 seemingly opposite transactions, right?

12      A.    That's one of the objectives of the

13 department, yes.

14      Q.    So you say you were managing director

15 of this department?

16      A.    Yes.

17      Q.    Okay.  And how long have you held that

18 position?

19      A.    In that department, I believe it was

20 four years.

21      Q.    So roughly since 2004?

22      A.    I believe that's the date, yes.

23      Q.    And what was your position before

24 that?

25      A.    My position immediately before that is

Page 11

1                         J. COGHLAN

2    I had a similar position running just the fixed

3    income piece of repo.

4         Q.    And how long --

5         A.    Whereas this position included both

6    fixed income, financing and equity financing.

7         Q.    I gotcha.  And how long were you in

8    charge of the fixed income piece of repo?

9         A.    Probably since 1998, I believe.

10        Q.    Prior to that?

11        A.    What was I doing before that?

12        Q.    Yes.

13        A.    Before that, I was running the

14   Investment Grade and High Grade Division for

15   Lehman.

16        Q.    Did that involve repo transactions as

17   well?

18        A.    It did not.

19        Q.    How long have you worked for Lehman?

20        A.    I was there 27 years.

21        Q.    Okay, you started -- do you recall

22   what year you started?

23        A.    1981.

24        Q.    Okay.  The two positions that you just

25   discussed with me, are those the only positions

Page 12

1                    J. COGHLAN

2   you held that involved repo transactions?

3       A.    Yes.

4       Q.    Is it fair to say --

5       A.    Well, let me clarify.  I did have

6   supervisory responsibility for a year of repo,

7   but I can't recall the date.

8       Q.    Okay.

9       A.    It was in the mid '90s.  So I

10  supervised it for a period of time, moved on to

11  a different position, and then came back in

12  1998.

13      Q.    Fair to say you're very familiar with

14  repo transactions?

15      A.    Yes.

16      Q.    Among the senior management team at

17  Lehman, are you the guy they would usually go to

18  with a question about repo transactions if

19  something came up?

20      A.    I wouldn't be the only person because

21  there are other people that are familiar with

22  the repo business and there are other senior

23  people within it, but, you know, they would

24  obviously ask me questions at times.  But not

25  exclusively.

1                        J. COGHLAN

2        Q.    Okay.  Now I just want to talk about

3    the last position you held, which is the

4    managing director position that you described.

5    Who did you report to in that position?

6        A.    I reported to John Wickham.

7        Q.    Anyone else?

8        A.    No.

9        Q.    And who reported directly to you?

10       A.    Who reported directly?  In that

11   position, David Lohuis, John Nicholson, John

12   Feraca, Janet Hurley, Ian Maynard.

13       Q.    Are these folks traders?

14       A.    Yes.

15       Q.    So your department handles the trades

16   that are involved in effecting a repo

17   transaction, is that fair to say?

18       A.    Yes.

19       Q.    Can you explain to me the

20   difference --

21       A.    Well, repo and stock loan.  So the

22   normal phrase for fixed income financing

23   transactions is repo.  The normal phrase for

24   equity financing transactions is stock loan.

25       Q.    Okay.

Page 14

1                    J. COGHLAN

2       A.    They both are financing transactions

3   where we are lending money versus collateral and

4   then relending the collateral to get the money.

5       Q.    Okay.  Again, I'm not trying to

6   mischaracterize.  Is it fair to say it's

7   generally the same mechanics of the transaction,

8   you just call it two different things for those

9   two different types of securities?

10      A.    Yes.

11      Q.    Can you explain to me the difference

12  between what your department does and what Mr.

13  Blackwell's department does as they relate to

14  repo transactions?

15      A.    Well, I can describe what I do.  What

16  I do is, as I said, I manage all the collateral

17  that needs to be financed both for the firm and

18  for the financing business --

19      Q.    Okay.

20      A.    -- in a way I just described, by

21  buying and borrowing and lending money.  And,

22  you know, the kind of the settlement of those

23  transactions are handled by, you know, the

24  treasury.  And Alastair Blackwell has a group of

25  operations people that work with Treasury to

Page 15

1                           J. COGHLAN

2    settle trades.

3        Q.    When you say "settle trades," what

4    does that mean?

5        A.    To make sure that the securities go to

6    where they're supposed to go and the cash goes

7    to where it's supposed to go to, make sure all

8    the securities and cash move to their proper

9    locations.

10       Q.    I've heard the phrase "back office."

11   Is that what you would consider what you just

12   described?

13       A.    That's the phrase, yes, that would

14   describe it, yes.

15       Q.    Does your organization that you

16   head -- and again, I'm talking about your time

17   at Lehman.

18       A.    Uh-huh.

19   (The following portions have been removed due to their

20   Confidentiality designations:

21   Page 15, Line 19 through Page 18, Line 5 (Highly Confidential);

22   Page 18, Line 6 through Page 21, Line 19 (Confidential);

23   Page 21, Line 20 through Page 67, Line 15 (Highly Confidential);

24   Page 67, Line 16 through Page 72, Line 2 (Confidential);

25   Page 72, Line 3 through Page 105, Line 17 (Highly Confidential);

Page 16

1    Page 105, Line 18 through Page 111, Line 8 (Confidential);

2    Page 111, Line 9 through Page 154, Line 7 (Highly Confidential);

3    Page 154, Line 8 through Page 164, Line 20 (Confidential);

4    Page 164, Line 21 through Page 228, Line 13 (Highly Confidential).

5    Page 228, Line 14 through Page 234, Line 13 (Confidential);

6    Page 234, Line 14 through Page 236, Line 7 (Highly Confidential);

7    Page 236, Line 8 through Page 238, Line 16 (Confidential).

8

9

10

11

12

13

14

15    (Transcript continued on Pg. 238, Line 17)

16

17

18

19

20

21

22

23

24

25

Page 238

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17          (Time Noted:  3:11 P.M.)

18                    oOo

19

20                    _____

                      JOHN COGHLAN

21

22      Subscribed and sworn to

        before me this    day

23      of          2009.

24

        _____

25

Page 239

1                    J. COGHLAN

2                    CERTIFICATE

3       STATE OF NEW YORK )

                              :  ss

4       COUNTY OF NEW YORK)

5            I, Kathy S. Klepfer, a Registered

6       Merit Reporter and Notary Public within and

7       for the State of New York, do hereby

8       certify:

9            That JOHN COGHLAN, the witness whose

10      deposition is herein before set forth, was

11      duly sworn by me and that such deposition is

12      a true record of the testimony given by such

13      witness.

14           I further certify that I am not

15      related to any of the parties to this action

16      by blood or marriage and that I am in no way

17      interested in the outcome of this matter.

18           I further certify that neither the

19      deponent nor a party requested a review of

20      the transcript pursuant to Federal Rule of

21      Civil Procedure 30(e) before the deposition

22      was completed.

23           In witness whereof, I have hereunto

24      set my hand this 13th day of August, 2009.

25                    -------------------------------

1                         J. COGHLAN

2                         INDEX

3    TESTIMONY OF J. COGHLAN:                    PAGE

4    Examination by Mr. Hine   ..................    5

5    Examination by Mr. Stern ..................   236

6

7    EXHIBITS:                                    PAGE

8    Exhibit 115, a document bearing Bates ......   22

9    Nos. BCI-EX-00077294 through 77295

10   Exhibit 116, a document bearing Bates ......   72

11   Nos. 10303063

12   Exhibit 117, Master Purchase Agreement .....   77

13   Exhibit 118, a document bearing Bates ......   99

14   Nos. 10297296 and 10300641

15   Exhibit 119, a document bearing Bates ......  102

16   Nos. 10302495

17   Exhibit 120, an e-mail string, the first ...  110

18   one in time dated September 17, 2008, at

19   6:31 P.M.

20   Exhibit 121, an e-mail string, the first ...  124

21   one in time dated September 17, 2008, at

22   6:25 P.M.

23   Exhibit 122, an e-mail string, the first ...  126

24   one in time dated September 17, 2008 at

25   6:39 P.M.

Page 241

1                     J. COGHLAN

2                   INDEX (Cont'd.)

3    EXHIBITS:                                  PAGE

4    Exhibit 123, a document bearing Bates  .....    128

5    Nos. 68985

6    Exhibit 124, a document bearing Bates  .....    132

7    Nos. 10303258

8    Exhibit 125, covering e-mail with chart ....    138

9    with the heading "Booking Amounts"

10   Exhibit 126, an e-mail stream, the first ...    178

11   one in time dated September 18, 2008,

12   at 6:18 A.M.

13   Exhibit 127, an e-mail stream, the first ...    190

14   one in time dated September 18, 2008,

15   at 6:04 A.M.

16   Exhibit 128, an e-mail stream, the first ...    199

17   in time dated September 19, 2008, at

18   2:44 P.M.

19   Exhibit 129, an e-mail stream, the first ...    207

20   one in time dated September 19, 2008, at

21   2:26 P.M.

22   Exhibit 130, an e-mail dated September 19,      211

23   2008, at 3:22 P.M.

24

25

Page 242

1                       J. COGHLAN

2                     INDEX (Cont'd.)

3    EXHIBITS:                               PAGE

4    Exhibit 131, an e-mail stream, the first  ...   214

5    one in time dated September 19, 2008, at

6    11:03 A.M.

7    Exhibit 132, an e-mail stream, the first  ...   216

8    one in time dated September 20, 2008,

9    at 5:43

10   Exhibit 133, a document bearing Bates .......   224

11   Nos. BCI-EX-00079850 and 79849

12   Exhibit 134, MTS Blotter ...................   229

13   Exhibit 135, screen shot from the MTS system   233

14

15

16

17

18

19

20

21

22

23

24

25

1                        J. COGHLAN
2      NAME OF CASE:  In re Lehman Brothers
3      DATE OF DEPOSITION:  August 13, 2009
4      NAME OF WITNESS:  John Coghlan
5      Reason Codes:
6              1.  To clarify the record.
               2.  To conform to the facts.
7              3.  To correct transcription errors.
8      Page _____ Line _____ Reason _____
       From _____ to _____
9
       Page _____ Line _____ Reason _____
10     From _____ to _____
11     Page _____ Line _____ Reason _____
       From _____ to _____
12
       Page _____ Line _____ Reason _____
13     From _____ to _____
14     Page _____ Line _____ Reason _____
       From _____ to _____
15
       Page _____ Line _____ Reason _____
16     From _____ to _____
17     Page _____ Line _____ Reason _____
       From _____ to _____
18
       Page _____ Line _____ Reason _____
19     From _____ to _____
20     Page _____ Line _____ Reason _____
       From _____ to _____
21
       Page _____ Line _____ Reason _____
22     From _____ to _____
23     Page _____ Line _____ Reason _____
       From _____ to _____
24
25                          _____

# A. 6

1                          A. COX

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4    ----------------------x

5    In Re:

6                              Chapter 11

7    LEHMAN BROTHERS            Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al.,    (Jointly Administered)

9

            Debtors.

10

    ----------------------x

11

12

13          DEPOSITION OF ARCHIBALD COX

14             New York, New York

15             September 11, 2009

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 24300

Page 2

1                           A. COX

2                    September 11, 2009

3                       10:19 a.m.

4

5

6          DEPOSITION of ARCHIBALD COX, held at

7          the law offices of Jones Day, LLP,

8          222 E. 41st Street, New York, New York,

9          before Kathy S. Klepfer, a Registered

10         Professional Reporter, Registered Merit

11         Reporter, Certified Realtime Reporter,

12         Certified Livenote Reporter, and Notary

13         Public of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1                          A. COX

2

3              A P P E A R A N C E S:

4    JONES DAY, LLP

5    Attorneys for Lehman Brothers, Inc.

6         222 East 41st Street

7         New York, New York  10017-6702

8    BY:  JAYANT W. TAMBE, ESQ.

9         BART GREEN, ESQ.

10

11   BOIES, SCHILLER & FLEXNER, LLP

12   Attorneys for Barclays and the Witness

13        575 Lexington Avenue - 7th Floor

14        New York, New York  10022

15   BY:  JACK G. STERN, ESQ.

16

17

18

19

20

21

22

23

24

25

Page 4

1                        A. COX

2        A P P E A R A N C E S:  (Cont'd.)

3    JENNER & BLOCK, LLP

4    Attorneys for the Examiner

5        330 N. Wabash Avenue

6        Chicago, Illinois  60611-7603

7    BY:  VINCENT LAZAR, ESQ.

8

9    QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

10   Attorneys for the Creditors Committee

11       51 Madison Avenue

12       22nd Floor

13       New York, New York  10010

14   BY:  JAMES C. TECCE, ESQ.

15

16   HUGHES, HUBBARD & REED, LLP

17   Attorneys for the SIPA Trustee

18       1775 I Street, N.W.

19       Washington, D.C.  20006-2401

20   BY:  JOHN WOOD, ESQ.

21       FARA TABATABAI, ESQ. (Afternoon Session)

22

23   Also Present:

24       PHILIP E. KRUSE, Alvarez & Marsal

25

Page 5

1                          A. COX

2              (the entire transcript has been removed

3      due to its Highly Confidential designation:

4      Page 5 Line 2 through Page 103 Line 9)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 103

1                          A. COX

2

3

4

5

6

7

8

9

10           (Time Noted:  1:34 P.M.)

11

12

13

14

15

16

17

18                    _____

                      ARCHIBALD COX

19

20     Subscribed and sworn to

       before me this     day

21     of          2009.

22

       _____

23

24

25

Page 104

1                    A. COX

2                CERTIFICATE

3    STATE OF NEW YORK )

                          :  ss

4    COUNTY OF NEW YORK)

5         I, Kathy S. Klepfer, a Registered

6    Merit Reporter and Notary Public within and

7    for the State of New York, do hereby

8    certify:

9         That ARCHIBALD COX, the witness whose

10   deposition is herein before set forth, was

11   duly sworn by me and that such deposition is

12   a true record of the testimony given by such

13   witness.

14        I further certify that I am not

15   related to any of the parties to this action

16   by blood or marriage and that I am in no way

17   interested in the outcome of this matter.

18        I further certify that neither the

19   deponent nor a party requested a review of

20   the transcript pursuant to Federal Rule of

21   Civil Procedure 30(e) before the deposition

22   was completed.

23        In witness whereof, I have hereunto

     set my hand this 11th day of September,

24   2009.

25                  -------------------------------

Page 105

1                          A. COX

2                          INDEX

3     WITNESS:                EXAMINATION BY              PAGE

4     A. COX                  Mr. Tambe                      5

5                             Mr. Wood                      83

6                             Mr. Tecce                     97

7     EXHIBITS:                                           PAGE

8     Exhibit 413B, a document bearing Bates Nos.    29

9     BCI-EX-(S)-26269

10    Exhibit 414B, a document bearing Bates Nos.    31

11    BCI-EX-115878 115879

12    Exhibit 415B, a document bearing Bates Nos.    36

13    BCI-EX-115964 through 115972

14    Exhibit 416B, a document bearing Bates Nos.    49

15    BCI-EX-116023 through 116030

16    Exhibit 417B, a document bearing Bates Nos.    50

17    BCI-EX-115898 through 115900

18    Exhibit 418B, a document bearing Bates Nos.    62

19    BCI-EX-79546

20    Exhibit 419B, a document bearing Bates Nos.    66

21    BCI-EX-79067

22    Exhibit 420B, a document bearing Bates Nos.    79

23    BCI-EX-80849

24    Exhibit 421B, a document bearing Bates Nos.    90

25    BCI-EX-81179

1                         A. COX

2                    INDEX (Cont'd.)

3      EXHIBITS:                              PAGE

4      Exhibit 422B, a document bearing Bates Nos.    92

5      BCI-EX-81116

6      Exhibit 423B, a transcript from the United    94

7      States Bankruptcy Court on September 19, 2008

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       A. COX
2   NAME OF CASE:  In re Lehman Brothers Holdings, Inc.
3   DATE OF DEPOSITION:  September 11, 2009
4   NAME OF WITNESS:  Archibald Cox
5   Reason Codes:
6           1.  To clarify the record.
            2.  To conform to the facts.
7           3.  To correct transcription errors.
8   Page _____ Line _____ Reason _____
    From _____ to _____
9
    Page _____ Line _____ Reason _____
10  From _____ to _____
11  Page _____ Line _____ Reason _____
    From _____ to _____
12
    Page _____ Line _____ Reason _____
13  From _____ to _____
14  Page _____ Line _____ Reason _____
    From _____ to _____
15
    Page _____ Line _____ Reason _____
16  From _____ to _____
17  Page _____ Line _____ Reason _____
    From _____ to _____
18
    Page _____ Line _____ Reason _____
19  From _____ to _____
20  Page _____ Line _____ Reason _____
    From _____ to _____
21
    Page _____ Line _____ Reason _____
22  From _____ to _____
23  Page _____ Line _____ Reason _____
    From _____ to _____
24
25                       _____

# A. 7

Page 1

1

2          UNITED STATES BANKRUPTCY COURT

3            SOUTHERN DISTRICT OF NEW YORK

4    ------------------------x

5    In Re:

6                          Chapter 11

7    LEHMAN BROTHERS          Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al,    (Jointly Administered)

9              Debtors.

10   ------------------------x

11

12

13         DEPOSITION OF NANCY DENIG

14            New York, New York

15            August 21, 2009

16

17   Reported by:

18   MARY F. BOWMAN, RPR, CRR

19   JOB NO. 24044

20

21

22

23

24

25

Page 2

1

2

3

4

5                                    August 21, 2009

6                                    9:35 a.m.

7

8

9            Deposition of NANCY DENIG, held at

10   the offices of Jones Day, LLP, 222 East 41st

11   Street, New York, New York, before Mary F.

12   Bowman, a Registered Professional Reporter,

13   Certified Realtime Reporter, and Notary Public

14   of the State of New York.

15

16

17

18

19

20

21

22

23

24

25

Page 3

1

2                     APPEARANCES:

3    JONES DAY, LLP

4    Attorneys for Lehman Brothers, Inc.

5         222 East 41st Street

6         New York, New York   10017-6702

7    BY:  WILLIAM J. HINE, ESQ.

8         GEORGE E. SPENCER, ESQ.

9

10   BOIES, SCHILLER & FLEXNER, LLP

11   Attorneys for Barclays and The Witness

12        5301 Wisconsin Ave. NW

13        Washington, DC 20015

14   BY:  JONATHAN M. SHAW, ESQ.

15

16   QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

17   Attorneys for the Creditors Committee

18        51 Madison Avenue

19        New York, New York   10010

20   BY:  ROBERT K. DAKIS, ESQ.

21

22

23

24

25

Page 4

1

2

3      JENNER & BLOCK, LLC

4      Attorneys for the Examiner

5           330 N. Wabash Avenue

6           Chicago, Illinois   60611-7603

7      BY:  DAVID C. LAYDEN, ESQ.

8

9      HUGHES, HUBBARD & REED, LLP

10     Attorneys for the SIPA Trustee

11          One Battery Park Plaza

12          New York, New York   10004-1482

13     BY:  NEIL J. OXFORD, ESQ.

14          FARA TABATABAI, ESQ.

15

16     Also Present:

17          RAJESH ANKALKOTI, Alvarez & Marsal

18

19

20

21

22

23

24

25

Page 5

1

2

3

4

5          IT IS HEREBY STIPULATED AND AGREED, by

6      and between the attorneys for the respective

7      parties herein, that filing and sealing be

8      and the same are hereby waived.

9          IT IS FURTHER STIPULATED AND AGREED

10     that all objections, except as to the form

11     of the question, shall be reserved to the

12     time of the trial.

13

14

15         IT IS FURTHER STIPULATED AND AGREED

16     that the within deposition may be sworn to

17     and signed before any officer authorized to

18     administer an oath, with the same force and

19     effect as if signed and sworn to before the

20     Court.

21

22

23

24

25

1                    DENIG

2    NANCY DENIG,

3          called as a witness by the parties,

4          having been duly sworn, testified as

5          follows:

6    EXAMINATION BY

7    MR. HINE:

8          Q.    Good morning, Ms. Denig.  How are you?

9          A.    Good.

10         Q.    I introduced myself before, but my

11   name is Bill Hine.  I am from the firm of Jones

12   Day, which is special counsel to Lehman Brothers

13   Holdings, Inc. in connection with all the

14   bankruptcy proceedings that are going on.

15         So your deposition today is in

16   connection with those proceedings and some

17   discovery that we are taking in those proceedings.

18   Have you ever been deposed before?

19         A.    I have not.

20         Q.    Very simple.  I am going to ask you a

21   bunch of questions.  You are under oath, you are

22   going to give me truthful answers.

23         On occasion your counsel will raise an

24   objection or interpose an objection.  He is either

25   doing that for any number of reasons, but I just

Page 7

1                          DENIG

2    wanted to let you know that it doesn't relieve you

3    of the obligation to answer the question.  You

4    still have to answer the question, unless of

5    course your counsel instructs you not to answer

6    the question, which he may do on occasion as well.

7              I think all the other counsel around

8    the table will introduce themselves as they get up

9    to ask you questions, if they have any, but if you

10   have any questions -- unless you have any

11   questions, we can get started.

12             One point of clarification before we

13   get started.  I see e-mails addressed to N. Bayne.

14   Is that you?

15        A.    That is my maiden name.

16        Q.    So if I see --

17        A.    Unfortunately when you were at Lehman,

18   when I got married -- my user profile before I got

19   married was N. Bayne, which was my maiden name.

20   When I got married, in order for them to change

21   the user name, they would have had to delete me

22   from the system altogether and I would have to

23   reapply for all my applications, which I didn't

24   want to do because I was already four years into

25   the company, so I left my user name as N. Bayne.

Page 8

1                        DENIG

2          Q.    If I see an e-mail addressed to

3     N. Bayne at Lehman --

4          A.    That's me.

5          Q.    Could you tell me how long you worked

6     for Lehman?

7          A.    15 years.

8          Q.    So that's starting in --

9          A.    1994, January 20.

10         Q.    OK.  And could you kind of briefly

11    walk me through the progressions of positions you

12    held up until the end?

13         A.    I started as an analyst in customer

14    service, which dealt with like trade discrepancies

15    for fixed income products.

16              Moved to P&L in the finance division,

17    where I supported the repo desk for central

18    funding for all types of fixed income assets.

19              I then took on various different

20    groups throughout the life, sales support, trade

21    support, P&L, structured repo, EMG, trade and

22    sales support, and probably that was pretty much

23    it.  So I pretty much stayed on the fixed income

24    side pretty much all my career.

25         Q.    What was the last position you held?

Page 9

1                         DENIG

2        A.     Last position, regional head for fixed

3   income repo, middle office, so that was trade

4   support, so we supported the traders in the daily

5   transactions that they executed.

6               We did sales support, which also

7   supported any trade confirmations, sales

8   confirmations, trade discrepancies with regards to

9   the salespeople.

10              We did -- we reported the P&L to the

11  business lines, and, you know, some various little

12  odds and ends, but nothing that needs to be

13  clarified.

14       Q.     Who did you report to in that

15  position?

16       A.     Jim Hraska.

17       Q.     Any other people that you reported to

18  directly?

19       A.     No.

20       Q.     How long have you held this position?

21       A.     Three years of all that.  I just kept

22  getting more stuff added to me as my career

23  progressed.  So I started with one group and got

24  another one, another, another, another.  But

25  basically all in the same business line.

1                    DENIG

2        Q.    So the description you just gave me of

3   your job --

4        A.    With everything was about three years

5   that I had that.

6        Q.    For about three years?

7        A.    Yeah.

8        Q.    And who reported directly to you in

9   the last three-year period?

10        A.    Carroll Schirmacher, Anthony

11   D'Agostino, Anthony Rivera, who was -- job

12   elimination at some point during the layoffs at

13   Lehman Brothers, Tom Rogers and Dave Regan.  And

14   that was pretty much it.

15        Q.    I believe you said, you mentioned the

16   phrase "repo" in your description of your job.

17   Could you just -- did you focus primarily on

18   repurchase transactions?

19        A.    Yes.  As it related -- well, I

20   wouldn't say repo transactions.  The desk was

21   defined that we supported as the repo desk, but

22   they had different facets of the business.  They

23   had a business -- they did plain vanilla swaps.

24   They did outright trades.  They did other

25   disciplines.

1                        DENIG

2            But for the most part, the name of the

3   department was the financing desk that dealt with

4   repos.

5        (The following portions have been removed due to their

6   Confidentiality designations:

7   Page 11, Line 5 through Page 20, Line 14 (Highly Confidential);

8   Page 20, Line 15 through Page 30, Line 4 (Confidential);

9   Page 30, Line 5 through Page 154, Line 20 (Highly Confidential);

10  Page 154, Line 21 through Page 156, Line 15 (Confidential);

11  Page 156, Line 16 through Page 181, Line 21 (Highly Confidential);

12  Page 181, Line 22 through Page 184, Line 16 (Confidential); and

13  Page 184, Line 17 through Page 264, Line 4 (Highly Confidential).

14

15

16

17       (The Transcript is continued on Pg. 265, Line 5)

18

19

20

21

22

23

24

25

Page 264

1                          DENIG

2

3

4

5              (Time noted:   3:55 p.m.)

6

                    _____

7                      NANCY DENIG

8

9       Subscribed and sworn to

10      before me this     day

11      of     , 2009.

12

13      _____

14

15

16

17

18

19

20

21

22

23

24

25

Page 265

1                    DENIG - CONFIDENTIAL

2

3                        CERTIFICATE

4        STATE OF NEW YORK )

5                         )ss:

6        COUNTY OF NEW YORK)

7            I, MARY F. BOWMAN, a Registered

8        Professional Reporter, Certified Realtime

9        Reporter, and Notary Public within and for

10       the State of New York, do hereby certify:

11           That NANCY DENIG, the witness whose

12       deposition is hereinbefore set forth, was

13       duly sworn by me and that such deposition is

14       a true record of the testimony given by such

15       witness.

16           I further certify that I am not

17       related to any of the parties to this action

18       by blood or marriage and that I am in no way

19       interested in the outcome of this matter.

20           In witness whereof, I have hereunto

21       set my hand this 21st day of August, 2009.

22

23       _____

              MARY F. BOWMAN, RPR, CRR

24

25

Page 266

1                    DENIG - CONFIDENTIAL
2
3                         INDEX:
4    WITNESS            EXAM BY:              PAGE:
5    N. Denig           Mr. Hine            6, 250
6                       Mr. Oxford            189
7                       Mr. Dakis             244
8
9                        EXHIBITS
10   Exhibit No.                           Marked
11   Exhibit 232 document Bates stamped        44
                 10303555, two pages,
12   Exhibit 233 screen shot                   84
     Exhibit 234 document Bates stamped        93
13               10331692 with attachment
     Exhibit 235 document Bates stamped        96
14               10253250 with attachment
     Exhibit 236 document Bates stamped       103
15               10328102 with attachment
     Exhibit 237 document Bates stamped       108
16               10252914 with attachment
     Exhibit 238 document Bates stamped       115
17               BCI-EX4324 with attachment
     Exhibit 239 document Bates stamped       118
18               BCI-EX13384 through 86
     Exhibit 240 document Bates stamped       124
19               BCI-EX18553 with attachment
     Exhibit 241 document Bates stamped       125
20               BCI-EX17607 and 08 with
                 attachment
21   Exhibit 242 document Bates stamped       129
                 BCI-EX17576
22   Exhibit 243 e-mail dated September 19,   137
                 2008 at 1:43 a.m.
23   Exhibit 244 document Bates stamped       147
                 BCI-EX18095
24   Exhibit 245 document Bates stamped       159
                 BCI-EX99802 through 807 and
25               862 through 865

1                    DENIG - CONFIDENTIAL
2                         EXHIBITS
3    Exhibit No.                                    Marked
4    Exhibit 246 document Bates stamped               165
                 BCI-EX108184 through 189
5    Exhibit 247 document Bates stamped               166
                 BCI-EX108708
6    Exhibit 248 document Bates stamped               171
                 BCI-EX00107848 through 939
7    Exhibit 249 document Bates stamped               174
                 BCI-EX99522 through 532
8    Exhibit 250 document Bates stamped               180
                 10328232
9    Exhibit 251 document Bates stamped               181
                 102378755 (7 pages)
10   Exhibit 252 document Bates stamped               186
                 10302702
11   Exhibit 253 document Bates stamped               198
                 BCI-EX-S-00018190 through 191
12   Exhibit 254 document Bates stamped               201
                 BCI-EX-S-18206 with attachment
13   Exhibit 255 document Bates stamped               205
                 BCI-EX-S 18278 through 79 with
14               attachment
     Exhibit 256 document Bates stamped               210
15               BCI-EX-S-18241
     Exhibit 257 document Bates stamped               218
16               BCI-EX-S-18293 through 294,
                 with attachment,
17   Exhibit 258 document Bates stamped               227
                 BCI-EX-S 16935, with
18               attachment,
     Exhibit 259 document Bates stamped               228
19               BCI-EX-S18485 through 486
     Exhibit 260 document Bates stamped               231
20               BCI-EX-S-18577 through 78
     Exhibit 261 document Bates stamped               233
21               BCI-EX-S-18505 and 06 with
                 attachment
22   Exhibit 262 document Bates stamped               251
                 74-636.XLS
23   Exhibit 263 e-mail dated September 19,           256
                 2008 at 4:26 p.m.
24

25

Page 268

1   NAME OF CASE:

2   DATE OF DEPOSITION:

3   NAME OF WITNESS:

4   Reason Codes:

5        1.  To clarify the record.

6        2.  To conform to the facts.

7        3.  To correct transcription errors.

8   Page _____ Line _____ Reason _____

9   From _____ to _____

10  Page _____ Line _____ Reason _____

11  From _____ to _____

12  Page _____ Line _____ Reason _____

13  From _____ to _____

14  Page _____ Line _____ Reason _____

15  From _____ to _____

16  Page _____ Line _____ Reason _____

17  From _____ to _____

18  Page _____ Line _____ Reason _____

19  From _____ to _____

20  Page _____ Line _____ Reason _____

21  From _____ to _____

22  Page _____ Line _____ Reason _____

23  From _____ to _____

24                           _____

25

# A. 8

Page 1

1

2              UNITED STATES BANKRUPTCY COURT

3               SOUTHERN DISTRICT OF NEW YORK

4       ------------------------x

5       In Re:

6                              Chapter 11

7       LEHMAN BROTHERS          Case No. 08-13555(JMP)

8       HOLDINGS, INC., et al,    (Jointly Administered)

9                 Debtors.

10      ------------------------x

11

12

13          DEPOSITION OF ROBERT EDWARD DIAMOND, JR.

14                  New York, New York

15                  September 11, 2009

16

17      Reported by:

18      MARY F. BOWMAN, RPR, CRR

19      JOB NO. 24378

20

21

22

23

24

25

1

2

3

4

5                          September 11, 2009

6                          10:35 a.m.

7

8

9            Deposition of ROBERT DIAMOND, held

10   at the offices of Jones Day, LLP, 222 East 41st

11   Street, New York, New York, before Mary F.

12   Bowman, a Registered Professional Reporter,

13   Certified Realtime Reporter, and Notary Public

14   of the State of New York.

15

16

17

18

19

20

21

22

23

24

25

Page 3

1

2                          APPEARANCES:

3     JONES DAY, LLP

4     Attorneys for Lehman Brothers, Inc.

5          222 East 41st Street

6          New York, New York    10017-6702

7     BY:  ROBERT GAFFEY, ESQ.

8          BRIDGET CRAWFORD, ESQ.

9

10    BOIES, SCHILLER & FLEXNER, LLP

11    Attorneys for Barclays and The Witness

12         5301 Wisconsin Avenue, NW

13         Washington, DC    20015

14    BY:  HAMISH HUME, ESQ.

15         JONATHAN SCHILLER, ESQ.

16

17    QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

18    Attorneys for the Creditors Committee

19         51 Madison Avenue

20         New York, New York    10010

21    BY:  ROBERT DAKIS, ESQ.

22

23

24

25

Page 4

1

2                    APPEARANCES:

3    JENNER & BLOCK, LLC

4    Attorneys for the Examiner

5         330 N. Wabash Avenue

6         Chicago, Illinois   60611-7603

7    BY:  DAVID C. LAYDEN, ESQ.

8

9    HUGHES, HUBBARD & REED, LLP

10   Attorneys for the SIPA Trustee

11        One Battery Park Plaza

12        New York, New York   10004-1482

13   BY:  WILLIAM MAGUIRE, ESQ.

14        FARA TABATABAI, ESQ

15

16   Also Present:

17        THOMAS E. HOMMEL, ESQ.

18             Lehman Brothers Holdings

19

20

21

22

23

24

25

Page 5

1

2

3

4

5              IT IS HEREBY STIPULATED AND AGREED, by

6      and between the attorneys for the respective

7      parties herein, that filing and sealing be

8      and the same are hereby waived.

9              IT IS FURTHER STIPULATED AND AGREED

10     that all objections, except as to the form

11     of the question, shall be reserved to the

12     time of the trial.

13

14

15             IT IS FURTHER STIPULATED AND AGREED

16     that the within deposition may be sworn to

17     and signed before any officer authorized to

18     administer an oath, with the same force and

19     effect as if signed and sworn to before the

20     Court.

21

22

23

24

25

1                    DIAMOND

2        (The entire transcript has been removed due

3    to its Highly Confidential designation: Page 6

4    Line 2 through Page 238, Line 9)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 238

1                          DIAMOND

2

3

4

5

6

7

8

9

10              (Time noted:   4:18 p.m.)

11

12                    _____

13                    ROBERT EDWARD DIAMOND, JR.

14     Subscribed and sworn to

15     before me this      day

16     of September, 2009.

17

18     _____

19

20

21

22

23

24

25

Page 239

1                        DIAMOND

2                        INDEX:

3    WITNESS              EXAM BY:              PAGE:

4    R. Diamond          Mr. Gaffey              6

5                        Mr. Maguire            185

6                        Mr. Dakis              233

7

8                        EXHIBITS

9    Exhibit No.                    Marked

10   Exhibit 412-A Document Bates stamped        153

11              BCI-EX-S 25413

12   Exhibit 413-A Document Bates stamped        164

13              BCI-EX-S 79546

14

15

16

17

18

19

20

21

22

23

24

25

Page 240

1                           DIAMOND

2

3                        CERTIFICATE

4       STATE OF NEW YORK )

5                          )ss:

6       COUNTY OF NEW YORK)

7            I, MARY F. BOWMAN, a Registered

8       Professional Reporter, Certified Realtime

9       Reporter, and Notary Public within and for

10      the State of New York, do hereby certify:

11           That ROBERT EDWARD DIAMOND, JR., the

12      witness whose deposition is hereinbefore set

13      forth, was duly sworn by me and that such

14      deposition is a true record of the testimony

15      given by such witness.

16           I further certify that I am not

17      related to any of the parties to this action

18      by blood or marriage and that I am in no way

19      interested in the outcome of this matter.

20           In witness whereof, I have hereunto

21      set my hand this 11th day of September,

22      2009.

23

24           _____

            MARY F. BOWMAN, RPR, CRR

25

1                          DIAMOND

2                    * * *ERRATA SHEET* * *

3    NAME OF CASE:  In Re: Lehman

4    DATE OF DEPOSITION:  9/11/09

5    NAME OF WITNESS:  ROBERT EDWARD DIAMOND, JR.

6    Reason codes:

7          1. To clarify the record.
           2. To conform to the facts.
8          3. To correct transcription errors.

9

10   Page _____ Line _____ Reason_____
     From _____ to_____
11

12   Page _____ Line _____ Reason_____
     From _____ to_____
13

14   Page _____ Line _____ Reason_____
     From _____ to_____
15

16   Page _____ Line _____ Reason_____
     From _____ to_____
17

18   Page _____ Line _____ Reason_____
     From _____ to_____
19

20   Page _____ Line _____ Reason_____
     From _____ to_____
21

22   Page _____ Line _____ Reason_____
     From _____ to_____
23

24                     _____

                       ROBERT EDWARD DIAMOND, JR.
25

# A. 9

Page 1

1

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4     -------------------------------x

      In Re:                      Chapter 11

5     LEHMAN BROTHERS              Case No. 08-13555 (JMP)

      HOLDINGS, INC., et al.,     (Jointly Administered)

6     -------------------------------)

7

8

9          DEPOSITION OF PAUL EXALL

10            New York, New York

11         Thursday, August 27, 2009

12

13

14

15

16

17

18

19

20    Reported by:

      FRANCIS X. FREDERICK, CSR, RPR, RMR

21    JOB NO. 24380

22

23

24

25

Page 2

1

2

3

4

5          August 27, 2009

6          9:30 a.m.

7

8

9

10     Deposition of PAUL EXALL, held at the offices

11     of Jones Day, 222 East 41st Street, New York, New

12     York, pursuant to Notice, before Francis

13     X. Frederick, a Certified Shorthand

14     Reporter, Registered Merit Reporter and

15     Notary Public of the States of New York

16     and New Jersey.

17

18

19

20

21

22

23

24

25

Page 3

1

2    A P P E A R A N C E S:

3

4         JONES DAY, LLP

5         Attorneys for Lehman Brothers, Inc.

6              222 East 41st Street

7              New York, New York  10017-6702

8         BY:   WILLIAM J. HINE, ESQ.

9              GEORGE E. SPENCER, ESQ.

10

11        BOIES SCHILLER & FLEXNER, LLP

12        Attorneys for Barclays Capital

13             333 Main Street

14             Armonk, New York  10504

15        BY:   CHRISTOPHER M. GREEN, ESQ.

16

17        HUGHES, HUBBARD & REED, LLP

18        Attorneys for the SIPA Trustee

19             1175 I Street, N.W.

20             Washington, D.C.  20006-2401

21        BY:   JOHN F. WOOD, ESQ.

22

23

24

25

Page 4

1

2   A P P E A R A N C E S:  (Cont'd.)

3        JENNER & BLOCK, LLC

4        Attorneys for the Examiner

5             330 N. Wabash Avenue

6             Chicago, Illinois  60611-7603

7        BY:   VINCENT LAZAR, ESQ.

8

9

10  ALSO PRESENT:

11        INGRID M. CHRISTIAN, Alvarez & Marsal

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The entire transcript has been removed due

2      to its Highly Confidential designation: Page 5,

3      Line 1 through Page 257, Line 9)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 257

1

2

3

4

5

6

7

8

9

10

11                     (Time Noted:        2:40 p.m.)

12

13

14

15

16

17

18

19                          _____

20                          PAUL EXALL

21

22       Subscribed and sworn to before me

23       this ____ day of _____, 2009.

24

25       _____

Page 258

1

2          C E R T I F I C A T E

3    STATE OF NEW YORK      )

4                              : ss.

5    COUNTY OF NEW YORK    )

6              I, FRANCIS X. FREDERICK, a Notary

7        Public within and for the State of New

8        York, do hereby certify:

9              That PAUL EXALL, the witness whose

10       deposition is hereinbefore set forth,

11       was duly sworn by me and that such

12       deposition is a true record of the

13       testimony given by the witness.

14             I further certify that I am not

15       related to any of the parties to this

16       action by blood or marriage, and that I

17       am in no way interested in the outcome

18       of this matter.

19             IN WITNESS WHEREOF, I have

20       hereunto set my hand this 27th day of

21       August, 2009.

22

23                    _____

24                    FRANCIS X. FREDERICK

25

Page 259

1

2      ----------------- I N D E X ------------------

3      WITNESS                EXAMINATION BY        PAGE

4      PAUL EXALL             MR. HINE              5

5

6

7

8

9      ----------- INFORMATION REQUESTS -------------

10     DIRECTIONS:  NONE

11     RULINGS:  NONE

12     TO BE FURNISHED:  NONE

13     REQUESTS:  71, 188, 228

14     MOTIONS:  NONE

15

16

17

18

19

20

21

22

23

24

25

1

2      ----------------- EXHIBITS ------------------

3      EXHIBIT                              FOR ID.

4      Exhibit 279B

5      Debtors' First Rule 30(b)(6)

6      Deposition Notice to Barclays

7      on Issues Pertaining to Accrued

8      08 FY Liability Under the

9      Asset Purchase Agreement................ 5

10     Exhibit 280B

11     document bearing production

12     number BCI-EX-00077287................. 61

13     Exhibit 281B

14     document bearing production

15     number BCI-EX-00115843................. 61

16     Exhibit 282B

17     document bearing production

18     numbers BCI-EX-00113161

19     through BCI-EX-00113163............... 160

20     Exhibit 283B

21     document bearing production

22     number BCI-EX-00113194................. 170

23

24

25

1

2  ------------------ EXHIBITS ------------------

3  EXHIBIT                              FOR ID.

4  Exhibit 284B

5  document bearing production

6  numbers BCI-EX-(S)00027190

7  through BCI-EX-(S)00027197............. 172

8  Exhibit 285B

9  document bearing production

10  number BCI-EX-00077651................. 199

11  Exhibit 286B

12  document bearing production

13  number BCI-EX-00077621................. 199

14  Exhibit 287B

15  document bearing production

16  number BCI-EX-00077466................. 199

17  Exhibit 288B

18  document bearing production

19  numbers BCI-EX-(S)-00027258

20  through BCI-EX-(S)-00027265........... 239

21  Exhibit 289B

22  document bearing production

23  number BCI-EX-00077557................. 242

24

25

1

2      ------------------ EXHIBITS ------------------

3      EXHIBIT                                  FOR ID.

4      Exhibit 290B

5      document bearing production

6      numbers BCI-EX-00077542

7      through BCI-EX-00077543............... 243

8      Exhibit 291B

9      document bearing production

10     numbers BCI-EX-00078069

11     through BCI-EX-00078071............... 246

12     Exhibit 292B

13     document bearing production

14     numbers 10267306

15     and 10238222.......................... 249

16     Exhibit 293B

17     Barclays PLC Results

18     Announcement 31st December 2008....... 253

19

20

21

22

23

24

25

Page 263

1

2        NAME OF CASE:  IN RE:  LEHMAN BROTHERS

3        DATE OF DEPOSITION:  AUGUST 27, 2009

4        NAME OF WITNESS:  PAUL EXALL

5        Reason codes:
              1.   To clarify the record.
6             2.   To conform to the facts.
              3.   To correct transcription errors.

7        Page _____ Line _____ Reason _____
         From _____ to _____
8
         Page _____ Line _____ Reason _____
9        From _____ to _____
10       Page _____ Line _____ Reason _____
         From _____ to _____
11
         Page _____ Line _____ Reason _____
12       From _____ to _____
13       Page _____ Line _____ Reason _____
         From _____ to _____
14
         Page _____ Line _____ Reason _____
15       From _____ to _____
16       Page _____ Line _____ Reason _____
         From _____ to _____
17
         Page _____ Line _____ Reason _____
18       From _____ to _____
19       Page _____ Line _____ Reason _____
         From _____ to _____
20
         Page _____ Line _____ Reason _____
21       From _____ to _____
22       Page _____ Line _____ Reason _____
         From _____ to _____
23

              _____
24

                   PAUL EXALL
25

# A. 10

1

2            UNITED STATES BANKRUPTCY COURT

3            SOUTHERN DISTRICT OF NEW YORK

4    ------------------------x

5    In Re:

6                         Chapter 11

7    LEHMAN BROTHERS         Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al,   (Jointly Administered)

9            Debtors.

10   ------------------------x

11

12

13      DEPOSITION OF ERIC JONATHAN FELDER

14            New York, New York

15             July 31, 2009

16

17   Reported by:

18   MARY F. BOWMAN, RPR, CRR

19   JOB NO. 24018

20

21

22

23

24

25

Page 2

1

2

3

4

5                                July 31, 2009

6                                9:35 a.m.

7

8

9          Deposition of ERIC JONATHAN FELDER,

10   held at the offices of Jones Day, LLP, 222 East

11   41st Street, New York, New York, before Mary F.

12   Bowman, a Registered Professional Reporter,

13   Certified Realtime Reporter, and Notary Public

14   of the State of New York.

15

16

17

18

19

20

21

22

23

24

25

Page 3

1

2                        APPEARANCES:

3    JONES DAY, LLP

4    Attorneys for Lehman Brothers, Inc.

5         222 East 41st Street

6         New York, New York   10017-6702

7    BY:  DAVID L. CARDEN, ESQ.

8         KELLY CARRERO, ESQ.

9         JENNIFER DEL MEDICO, ESQ.

10

11   BOIES, SCHILLER & FLEXNER, LLP

12   Attorneys for Barclays and The Witness

13        575 Lexington Avenue - 7th Floor

14        New York, New York   10022

15   BY:  JACK G. STERN, ESQ.

16

17   DEBEVOISE & PLIMPTON, LLP

18   Attorneys for The Witness

19        919 Third Avenue

20        New York, New York   10022

21   BY:  ANDREW J. CERESNEY, ESQ.

22        JULIE SUH, ESQ.

23

24

25

Page 4

1

2                     APPEARANCES:

3

4    QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

5    Attorneys for the Creditors Committee

6         865 Figueroa Street, 10th Floor

7         Los Angeles, California   90017

8    BY:  ERICA P. TAGGART, ESQ.

9

10   JENNER & BLOCK, LLC

11   Attorneys for the Examiner

12        330 N. Wabash Avenue

13        Chicago, Illinois   60611-7603

14   BY:  ROBERT L. BYMAN, ESQ.

15

16   HUGHES, HUBBARD & REED, LLP

17   Attorneys for the SIPA Trustee

18        One Battery Park Plaza

19        New York, New York   10004-1482

20   BY:  WILLIAM R. MAGUIRE, ESQ.

21        NEIL J. OXFORD, ESQ.

22

23   Also Present:

24        Rajesh Ankalkoti, Alvarez & Marsal

25

Page 5

1

2

3

4

5          IT IS HEREBY STIPULATED AND AGREED, by

6     and between the attorneys for the respective

7     parties herein, that filing and sealing be

8     and the same are hereby waived.

9          IT IS FURTHER STIPULATED AND AGREED

10    that all objections, except as to the form

11    of the question, shall be reserved to the

12    time of the trial.

13         IT IS FURTHER STIPULATED AND AGREED

14    that the within deposition may be sworn to

15    and signed before any officer authorized to

16    administer an oath, with the same force and

17    effect as if signed and sworn to before the

18    Court.

19

20

21

22

23

24

25

1                          FELDER

2    ERIC JONATHAN FELDER,

3           called as a witness by the parties,

4           having been duly sworn, testified as

5           follows:

6           MR. CARDEN:  Good morning, Mr. Felder.

7    My name is David Carden.  I represent the

8    estate of Lehman Brothers, and I think what

9    we ought to do is go around the table and

10   have everybody identify who they are before

11   we begin, and then, Jack, you have a

12   statement, right?

13          MR. STERN:  Yes.

14          MR. CARDEN:  I already introduced

15   myself.  My colleague, Kelly Carrero and

16   Jennifer Del Medico.

17          MR. ANKALKOTI:  My name is Rajesh

18   Ankalkoti.  I am with Alvarez & Marsal.

19          MS. TAGGART:  I'm Erica Taggart with

20   Quinn, Emanuel, Urquhart, Oliver & Hedges,

21   LLP, for the creditors committee.

22          MR. MAGUIRE:  Bill Maguire and Neil

23   Oxford from Hughes, Hubbard & Reed for the

24   trustee.

25          MR. BYMAN:  Robert Byman, Jenner &

1              FELDER

2     Block, on behalf of the examiner.

3          MS. SUH:  Julie Suh with Debevoise &

4     Plimpton on behalf of the witness.

5          MR. CERESNY:  Andrew Ceresney from

6     Debevoise representing Mr. Felder

7     personally.

8          MR. STERN:  Jack Stern, Boies,

9     Schiller & Flexner on behalf of Barclays

10    Capital and Mr. Felder.

11         Before we begin the questioning, I

12    just want to state on the record, to avoid

13    time-consuming discussions of

14    confidentiality, we have a confidentiality

15    order in place.  What I would like to do is

16    make a general designation of, anything in

17    the record that should be treated as highly

18    confidential or confidential under the terms

19    of the confidentiality order will be so

20    designated automatically, and more

21    specifically, to the extent that there are

22    questions concerning Mr. Felder's personal

23    compensation, those are deemed highly

24    confidential under the confidentiality

25    order.

1                        FELDER

2          MR. CARDEN:  I don't think I have a

3     problem with that.  I am wondering what you

4     think the mechanism ought to be for those

5     aspects which are not highly confidential

6     and confidential, sort of getting out from

7     underneath that designation?

8          MR. STERN:  I think the best way for

9     us to deal with that is to address that

10    after the deposition off the record.

11         MR. CARDEN:  Anybody have any issues

12    with that?

13         MR. MAGUIRE:  Everything is considered

14    highly confidential until anybody sees the

15    need --

16         MR. CARDEN:  I think Jack is concerned

17    that we don't slow things down.  So long as

18    we have a mechanism that, and we can contest

19    the highly confidential designations in any

20    event, so long as we have a designation to

21    get out from underneath that rubric that is

22    not cumbersome, and so long as I have your

23    representation that all this is doing is to

24    sort of accommodate the speed of the

25    deposition and we will deal with this in

Page 9

FELDER

1

2  good faith thereafter, I don't have a

3  serious problem with it.

4       Does anyone else?

5       MS. TAGGART:  I don't have an

6  objection, although it would be helpful if

7  you would, right after the deposition, say

8  the parts you thought were confidential and

9  highly confidential, then we can deal with

10  it elsewhere.  It might be good to have that

11  specific.

12       MR. STERN:  Understood.

13       MR. CARDEN:  Maybe just to give it a

14  little rigor, unless there is some

15  particular cause for doing it otherwise,

16  shall we say sometime within a week you will

17  have written, having the page numbers of the

18  depositions and the exhibits and the like,

19  and designate what you think ought to be

20  highly confidential and confidential.

21  Therefore, we have a kind of a program, if

22  you will.

23       MR. STERN:  I think that is fair, and

24  I think what Bill said makes sense as a

25  practical matter; designate the entire

Page 10

1                              FELDER

2            transcript as highly confidential, and

3            within a week, we will dedesignate as

4            appropriate under the order.

5    EXAMINATION BY

6    MR. CARDEN:

7            Q.    Good morning, Mr. Felder.

8            A.    Good morning.

9            Q.    You are currently employed by

10   Barclays, correct?

11           A.    Correct.

12           Q.    What is your current position, sir?

13           A.    I'm the head of global credit trading.

14           Q.    And how long have you held that

15   position?

16           A.    Since September '08.

17           Q.    And as head of global trading, just

18   generally speaking, what are your

19   responsibilities?

20           A.    Responsible for secondary trading of

21   cash corporate bonds, credit default swaps, loans,

22   and the municipal securities business rolls into

23   credit.

24           Q.    Prior to being employed by Barclays,

25   you were cohead of fixed income at Lehman

1                         FELDER

2    Brothers, correct?

3         A.    Correct.

4         Q.    Starting on September 9 or thereabouts

5    of 2008?

6         A.    I believe it was September 8.

7         Q.    I am sorry, I meant that -- that's

8    exactly what I meant to say actually.

9               Prior to that, what was your -- what

10   was your previous title and job?

11        A.    I was global head of global credit

12   products, since June of '08.

13        Q.    And in that position, what were your

14   responsibilities?

15        A.    The businesses that rolled up into

16   global credit products were high-grade, high-yield

17   CDOs, municipals, and the credit portion of

18   emerging markets, the corporate credit portion of

19   emerging markets.

20        Q.    In connection with your

21   responsibilities as global head of credit

22   products, did you have any responsibilities of any

23   kind with regard to repos?

24        A.    No.

25        Q.    And when you took over as head of

1                          FELDER

2    fixed income on September 8, 2008, what were your

3    responsibilities?

4         A.    They were never specifically told to

5    me.

6         Q.    Did you have an understanding as to

7    what they were to be?

8         A.    We had -- I had a brief conversation

9    with Mike Gelband, with Hyung Lee, who is my

10   cohead, about how the portfolio would be split up

11   between the two of us in a normal business

12   environment, and I was going to be responsible

13   for -- or focus on the credit portion and the

14   mortgage portion, and then Hyung would focus on FX

15   and commodities and more focus outside of the U.S.

16   with my focus in the U.S., because he came from

17   Asia.

18        Q.    I would like you to tell me what you

19   consider to have been in the fixed income area at

20   Lehman Brothers as of the time that you had that

21   conversation.

22        A.    In fixed income, you would have had

23   rates, commodities, foreign exchange, credit,

24   mortgages, emerging markets, and financing would

25   have been part of fixed income, or it might have

Page 13

1                          FELDER

2    been a JV with equity.  I don't know exactly how

3    it was set up because you obviously finance more

4    than just fixed-income product.  And commercial

5    real estate.

6         Q.    I'm just going to read you a list of

7    asset classes and if you tell me whether you

8    consider them to have been in the fixed income

9    area at Lehman as of September 2008.  All right?

10   And I'm just reading now what legends I have been

11   given, so these might not be completely fulsome.

12            CDs and other money market

13   instruments?

14        A.    Yes.

15        Q.    Total -- corporate obligations and

16   spot?

17        A.    I don't know what that means.

18        Q.    OK.  Corporate stocks and options?

19        A.    No.

20        Q.    Derivatives and other -- and it is cut

21   off so I can't -- it would have been some

22   derivative products.

23        A.    There would have been some, yeah.

24        Q.    Some.  OK.

25            Governments and agencies would have

Page 14

1                           FELDER

2    been a fixed income, correct?

3         A.    Correct.

4         Q.    Mortgages and -- any mortgage-backed

5    securities would have been as well, correct?

6         A.    Correct.

7         Q.    Now, when you had the conversation

8    concerning how to divide the fixed income

9    portfolio, was it -- it was divided along product

10   lines or asset classes as well as geography?

11        A.    That was the initial intention.  It

12   was -- nothing was ever put into --

13        Q.    It never functioned?

14        A.    Because, you know, that week was

15   the -- when the firm ultimately went under.

16        Q.    Let's talk about that week.  We are

17   now talking about the week of -- I brought a

18   calendar so we have a, as I said before, a prop.

19   Why don't you avail yourself of it as you wish.  I

20   don't see any need to mark it.  The dates are what

21   they are from time immemorial to the end of time.

22             You were made the head of fixed income

23   on Monday, the 8th of September, correct?

24        A.    Correct.

25   (The Following portions have been removed due to their

Page 15

1    Confidentiality designations:

2    Page 14, Line 25 through Page 38, Line 14 (Confidential);

3    Page 38, Line 15 through Page 74, Line 10 (Highly Confidential);

4    Page 74, Line 11 through Page 76, Line 19 (Confidential);

5    Page 76, Line 20 through Page 79, Line 5 (Highly Confidential);

6    Page 79, Line 8 through Page 81, Line 23 (Confidential);

7    Page 81, Line 24 through Page 103, Line 20 (Highly Confidential);

8    Page 104, Line 3 through Page 108, Line 22 (Confidential);

9    Page 108, Line 23 through Page 117, Line 13 (Highly Confidential);

10   Page 118, Line 15 through Page 132, Line 23 (Highly Confidential).

11

12

13

14

15

16

17        (The transcript resumes on Pg. 103, line 21)

18

19

20

21

22

23

24

25

Page 103

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21          MR. CARDEN:  I'm done.

22                       _ _ _ _

23

24

25

1                         FELDER

2       EXAMINATION BY

3       MS. TAGGART:

4         (The Following portions have been removed due to their

5          Confidentiality designations

6        Page 104, Line 4 through Page 108, Line 22 (Confidential);

7       Page 108, Line 23 through Page 117, Line 13 (Highly Confidential);

8

9

10

11

12

13

14

15

16

17

18

19

20          (Transcript is continued on Pg. 117, Line 14)

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14        MS. TAGGART:  I don't have any more

15   questions.

16        MR. MAGUIRE:  Mr. Felder, I don't have

17   any questions for you.  I would make a

18   request of your Barclays counsel that with

19   respect to Exhibit 11, which I believe you

20   were provided with, that makes a reference

21   to a Barclays lawyer coming in and making an

22   explanation.  I believe that's in the

23   context of the hearing, the proceedings

24   associated with the bankruptcy court hearing

25   on September 19.  I would ask that Barclays

Page 118

1                          FELDER

2          provide us with the record of that

3          explanation.

4                MR. STERN:  Are you suggesting there

5          is something other than the transcript of

6          the hearing?

7                MR. MAGUIRE:  If there is nothing

8          other than the transcript, if you could

9          confirm that, that would be fine.  If there

10         is anything other than the transcript, if

11         you could provide us with the record.

12               MR. STERN:  Sure, we will definitely

13         look into that.

14               MR. MAGUIRE:  Thank you.

15    (The Following portions has been removed due to it's

16     Highly Confidential Designation)

17     Page 118, Line 15 through Page 132, Line 23 (Highly Confidential)

18

19

20

21      (The Transcript is continued on Pg. 132, Line 24)

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24          Q.    OK, thank you, sir.

25

Page 133

1                          FELDER

2    EXAMINATION BY

3    MS. TAGGART:

4         Q.    I will ask a couple of follow-up

5    questions to this.

6              When you talk about the traders are

7    the ones who put together marks, do they do that

8    on a routine basis?

9         A.    They mark their books every day.

10        Q.    And what's involved in marking the

11   books every day?

12        A.    For what type of a trader?

13        Q.    It varies from trade to trade?  Let me

14   ask this:  Where do they put the information on a

15   daily basis, or did they at this time?

16        A.    Whatever the front office system of

17   that asset class is would be where the marks would

18   be put in.

19        Q.    When you say a front office system,

20   are you talking about a computerized database?

21        A.    An application.  There were different

22   applications for different products, that would

23   all feed into the middle office or the back office

24   of the firm.  So depending on what the product

25   was, whatever system that was used would be the --

1                         FELDER

2      would be -- that is where they would put the

3      prices into.

4          Q.    When you talk about a system, a

5      computerized system?

6          A.    Computerized system.

7          Q.    So every day traders would be entering

8      marks for the securities that they were involved

9      in on some sort of computer system; is that

10     correct?

11         A.    To my knowledge, that -- a computer

12     system was used in the products I knew.

13         Q.    Did you ever personally access on a

14     computer system daily marks?

15         A.    In risk systems, you can see -- you

16     can see the marks of securities.

17         Q.    How do you see them?

18         A.    On the computer screen.

19         Q.    Did the computer screen -- is there a

20     database that you remember, a name of a database

21     where you personally could go and access daily

22     marks?

23         A.    In -- within credit, our main risk

24     system was called ICE, I-C-E.  And that

25     consolidated the derivative systems and the cash

Page 135

1                         FELDER

2    systems.

3         Q.    Did marks ever change from the close

4    of the market on Friday to the opening of the

5    market on Mondays?

6         A.    From the close on a Friday to the open

7    on a Monday?

8         Q.    Yes.

9         A.    I don't think you could do -- I don't

10   think the system would let you -- you can get an

11   end-of-day mark, and then I don't think you could

12   go in and change -- as far as I know, you couldn't

13   go in and change a mark once it was committed for

14   that day until the mark for the next day.

15        Q.    In particular on the weekend of

16   September 19 -- from the close of the market on

17   September 19 to the opening of the market on

18   September 22, would there be any reason for any of

19   the marks from the credit business to change over

20   that weekend?

21        A.    Not that I would be aware of.

22        Q.    OK, that is all.

23                         — — — —

24

25

1                           FELDER

2     EXAMINATION BY

3     MR. BYMAN:

4          Q.    I apologize.  Every time somebody asks

5     a question, somebody else thinks of another

6     question.

7                When the traders do their marks, and I

8     understand, I think, that process, is there any

9     other group such as the product control group that

10    does an independent analysis of where they think

11    certain assets should be valued?

12         A.    That would be done monthly, and there

13    would be variance reports.  I only know this

14    specifically within credit because I hadn't gone

15    through that process in the other asset classes.

16    So within credit, we had a monthly variance

17    meeting with product control to go through any

18    positions that they felt -- they got external data

19    from third parties and they compared the marks to

20    that external data, and then the desk heads would

21    sit down with product control, and then ultimately

22    I would sit down to make sure that the business

23    was properly marked from the product control --

24    from a -- essentially a third party's perspective.

25         Q.    So I want to make sure that I

Page 137

1                    FELDER

2    understand the process then.  So on a daily basis,

3    the traders would mark the assets that they were

4    responsible for.  On a monthly basis, product

5    control would do its own evaluation.  To the

6    extent there was a variance, it would escalate to

7    you, and you would decide who was right or whether

8    it was someplace in the middle?

9         A.    No.  The product controllers

10   ultimately had the -- you couldn't overrule a

11   product controller because they had the

12   third-party data.  So if they said this, this is

13   off, then the book just got marked down by where

14   it was.

15              If there was a situation where -- if

16   there was a situation where there was other data

17   in the market that the product controllers didn't

18   have, for example, then --

19        Q.    You would reason with them, but you

20   couldn't overrule them?

21        A.    Right.  That was my experience within

22   credit.

23        Q.    And so far as you know, is that the

24   same system that other businesses use within

25   Lehman?

Page 138

1                          FELDER

2        A.    I don't know.

3        Q.    How close to this monthly review by

4   the product controllers would you do your sit down

5   to look at the variance reports?  Would that be

6   done within a day or two?

7        A.    It would usually take them a week or

8   two to put it all together.

9             MR. BYMAN:  OK, thanks.

10            MS. TAGGART:  I do have another.

11  EXAMINATION BY

12  MS. TAGGART:

13       Q.    Just who are the product controllers

14  that were at Lehman doing this process, the

15  monthly evaluation, prior to the sale?  That you

16  know of.

17       A.    I just know Gilles within credit.

18  There is a whole product control function, and

19  they were set up by asset class, so I would assume

20  that there are product controllers for each asset

21  class.

22       Q.    OK.

23            MR. CARDEN:  We have given you the

24            gift of time, Mr. Felder.

25            THE WITNESS:  I sincerely appreciate

Page 139

1                          FELDER

2        it.

3              (Time Noted: 1:05 p.m.)

4

5                   _____

                    ERIC JONATHAN FELDER

6

7        Subscribed and sworn to

8        before me this     day

9        of July, 2009.

10

11       _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 140

1                          FELDER
2                          INDEX:
3    WITNESS                EXAM BY:                PAGE:
4    E. Felder             Mr. Carden            10, 123
5                          Ms. Taggart     104, 133, 138
6                          Mr. Byman           118, 136
7                          EXHIBITS
8    Exhibit No.                          Marked
9    Exhibit 1    asset purchase agreement dated        47
                  September 16, 2008
10   Exhibit 2    e-mail with attachment dated          53
                  September 18, 2008
11   Exhibit 3    document Bates stamped 1029780        57
     Exhibit 4    e-mail dated September 19,            75
12                2008 at 1:30 p.m.
     Exhibit 5    e-mail dated September 19,            75
13                2008 at 10:34 a.m.
     Exhibit 6    document Bates stamped                76
14                10242982
     Exhibit 7    document Bates stamped                81
15                BCI-EX70957
     Exhibit 8    e-mail September 19, 2008 at          82
16                10:51 a.m. with attachment
     Exhibit 9    e-mail dated September 19,            83
17                2008 at 2:06 p.m. with
                  attachment
18   Exhibit 10   e-mail dated September 17,            91
                  2008 at 12:34 p.m.
19   Exhibit 11   document Bates stamped                97
                  10284073
20   Exhibit 12   three-page letter dated              98
                  September 18, 2008
21   Exhibit 13   Letter dated September 21,            99
                  2008
22   Exhibit 14   document Bates stamped               101
                  10292661
23   Exhibit 15   document Bates stamped               109
                  BCI-EX30865 with attachment
24   Exhibit 16   e-mail dated September 18,           111
                  2008 at 12:23 p.m.
25

Page 141

1                         FELDER

2

3                         CERTIFICATE

4        STATE OF NEW YORK )

5                              )ss:

6        COUNTY OF NEW YORK)

7             I, MARY F. BOWMAN, a Registered

8        Professional Reporter, Certified Realtime

9        Reporter, and Notary Public within and for

10       the State of New York, do hereby certify:

11            That ERIC JONATHAN FELDER, the witness

12       whose deposition is hereinbefore set forth,

13       was duly sworn by me and that such

14       deposition is a true record of the testimony

15       given by such witness.

16            I further certify that I am not

17       related to any of the parties to this action

18       by blood or marriage and that I am in no way

19       interested in the outcome of this matter.

20            In witness whereof, I have hereunto

21       set my hand this 31st day of July, 2009.

22

23       _____

                 MARY F. BOWMAN, RPR, CRR

24

25

Page 142

1                           FELDER
2                   * * *ERRATA SHEET* * *
3    NAME OF CASE:  In Re:  Lehman Brothers
4    DATE OF DEPOSITION:  7/31/09
5    NAME OF WITNESS:  ERIC JONATHAN FELDER
6    Reason codes:
7          1. To clarify the record.
           2. To conform to the facts.
8          3. To correct transcription errors.
9

10   Page _____ Line _____ Reason_____
     From _____ to_____
11

12   Page _____ Line _____ Reason_____
     From _____ to_____
13

14   Page _____ Line _____ Reason_____
     From _____ to_____
15

16   Page _____ Line _____ Reason_____
     From _____ to_____
17

18   Page _____ Line _____ Reason_____
     From _____ to_____
19

20   Page _____ Line _____ Reason_____
     From _____ to_____
21

22   Page _____ Line _____ Reason_____
     From _____ to_____
23

24                    _____
                      ERIC JONATHAN FELDER
25

# A. 11

Page 1

1

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4

5    In re:                    )

                               ) Chapter 11

6    LEHMAN BROTHERS           ) Case No. 08-13555(JMP)

                               )

7    HOLDINGS, INC., et al.,   )

                               )

8              Debtors.        )

     -------------------------)

9

10

11

12

13

14

15              DEPOSITION OF

16         DANIEL JOSEPH FLEMING

17           New York, New York

18         Friday, August 28, 2009

19

20

21

22

23   Reported by:

24   KRISTIN KOCH, RPR, RMR, CRR, CLR

25   JOB NO. 24123

Page 2

1

2

3

4                          August 28, 2009

5                          9:28 a.m.

6

7

8

9        Deposition of DANIEL JOSEPH FLEMING, held at the offices

10       of JONES DAY, LLP, 222 East 41st Street,

11       New York, New York, before Kristin Koch, a

12       Registered Professional Reporter,

13       Registered Merit Reporter, Certified

14       Realtime Reporter, Certified Livenote

15       Reporter and Notary Public of the State of

16       New York.

17

18

19

20

21

22

23

24

25

Page 3

1

2    A P P E A R A N C E S:

3

4

5        JONES DAY, LLP

6        Attorneys for Lehman Brothers, Inc.

7            222 East 41st Street

8            New York, New York 10017-6702

9        BY:   BART GREEN, ESQ.

10           KELLY A. CARRERO, ESQ.

11

12

13       BOIES, SCHILLER & FLEXNER, LLP

14       Attorneys for Barclays and Daniel Joseph

15       Fleming

16           333 Main Street

17           Armonk, New York 10504

18       BY:   CHRISTOPHER M. GREEN, ESQ.

19

20

21       QUINN EMANUEL URQUHART OLIVER & HEDGES LLP

22       Attorneys for Creditors Committee

23           865 South Figueroa Street - 10th floor

24           Los Angeles, California 90017

25       BY:   TYLER WHITMER, ESQ. (Via telephone)

Page 4

1

2    A P P E A R A N C E S:  (Continued)

3

4

5        JENNER & BLOCK LLP

6        Attorneys for Examiner

7            330 North Wabash Avenue

8            Chicago, Illinois 60611-7603

9        BY:   VINCENT LAZAR, ESQ.

10

11

12        HUGHES HUBBARD & REED LLP

13        Attorneys for SIPA Trustee

14            One Battery Park Plaza

15            New York, New York 10004-1482

16        BY:   SETH D. ROTHMAN, ESQ.

17            AMINA HASSAN, ESQ.

18

19

20    ALSO PRESENT:

21

22        PHIL KRUSE, Alvarez & Marsal

23

24

25

Page 5

1

2          IT IS HEREBY STIPULATED AND AGREED

3      by and between the attorneys for the

4      respective parties herein, that filing and

5      sealing be and the same are hereby waived.

6          IT IS FURTHER STIPULATED AND AGREED

7      that all objections, except as to the form

8      of the question, shall be reserved to the

9      time of the trial.

10          IT IS FURTHER STIPULATED AND AGREED

11     that the within deposition may be sworn to

12     and signed before any officer authorized

13     to administer an oath, with the same

14     force and effect as if signed and sworn

15     to before the Court.

16

17

18

19

20                    - oOo -

21

22

23

24

25

Page 6

1

2  D A N I E L   J O S E P H   F L E M I N G,

3       called as a witness, having been duly sworn

4       by a Notary Public, was examined and

5       testified as follows:

6  EXAMINATION BY

7  MS. CARRERO:

8       Q.    Good morning, Mr. Fleming.  My name

9  is Kelly Carrero.  I am with Jones Day.  We are

10 special counsel to the estate of Lehman

11 Brothers Holding, Inc.  With me is my

12 colleague, Bart Green, and I will have everyone

13 else in the room introduce themselves on the

14 record.

15       MR. ROTHMAN:  Seth Rothman, Hughes

16       Hubbard & Reed.  We represent the SIPA

17       trustee.

18       MS. HASSAN:  Amina Hassan, Hughes,

19       Hubbard & Reed.

20       MR. LAZAR:  Vince Lazar from

21       Jenner & Block.  We represent the Examiner

22       appointed in the Lehman Brothers case.

23       MR. KRUSE:  Phil Kruse with

24       Alvarez & Marsal on behalf of LBHI.

25       MR. C. GREEN:  Christopher Green

1                           Fleming

2          with Boies, Schiller & Flexner on behalf of

3          Barclays Capital and the witness.

4     BY MS. CARRERO:

5          Q.    Mr. Fleming, have you been deposed

6     before?

7          A.    No.

8          Q.    Then I will go over some background

9     rules, housekeeping.  It will go easier and

10    smoother if when I ask a question you let me

11    finish the question before you start your

12    response and if you will give verbal answers

13    rather than any nods of the head so that the

14    court reporter can take down every word that

15    you say.

16               If you need to take a break, if you

17    can wait until we find a reasonable place to

18    stop, just let me know, let your counsel know

19    and we will work with each other.

20         A.    Okay.

21         Q.    So if we could start with some

22    background information in terms of education,

23    work experience.  Let's start with your

24    educational experience.

25         A.    Education, I attended the University

Page 8

Fleming

1   of Hartford and St. John's University for

2   approximately two and a half years.  Did not

3   graduate.  In terms of work experience, would

4   you like me to start backwards?

5   Q.    Start with your earliest work

6   experience after you finished at University of

7   Hartford and St. John's.

8   A.    First employment was with EF Hutton

9   working in the mortgage-backed security

10  accounting group.

11          I subsequently was hired by Shearson

12  Lehman Hutton, moved into their regulatory

13  group for a short period.

14          I subsequently left and joined, I

15  believe, what was Chemical Bank, again, working

16  in mortgage-backed security accounting.

17          Subsequent to that I left the

18  industry and worked out of industry as a

19  controller for a wholesale distributor out on

20  Long Island.

21          Then I came back into the industry.

22  I worked for a firm named East Bridge Capital

23  and East Bridge Asset Management, which was --

24  East Bridge Capital was a primary dealer owned

Page 9

1                         Fleming

2    by Nippon Credit Bank.  In that space I worked

3    in accounting for both the broker/dealer and

4    for the asset management business.

5              Subsequent to that I worked at DE

6    Shaw for a short while in their operations

7    accounting group.

8              And then I moved over to Lehman

9    Brothers in and around 1998 where I joined the

10   cash and collateral management team in New York

11   reporting in to at the time the U.S. head of

12   cash and collateral management.

13             I subsequently took over the role of

14   U.S. head of cash and collateral management.

15             Subsequent to that I was --

16       Q.    I'm sorry, if I could stop you

17   there.  What year are we talking that you

18   became U.S. head of cash and collateral

19   management?

20       A.    2001, 2002, thereabouts.

21   (The following portions have been removed due to their

22   Confidentiality designations:

23   Page 9, Line 21 through Page 34, Line 16 (Confidential);

24   Page 34, Line 17 through Page 78, Line 9 (Highly Confidential);

25   Page 78, Line 10 through Page 80, Line 10 (Confidential);

1    Page 80, Line 11 through Page 156, Line 13 (Highly Confidential);

2    Page 156, Line 14 through Page 163, Line 7 (Confidential); and

3    Page 163, Line 8 through Page 209, Line 12 (Highly Confidential).

4

5

6

7

8

9

10

11

12

13

14    (Transcript continued on Pg. 209, Line 13)

15

16

17

18

19

20

21

22

23

24

25

Page 209

1

2

3

4

5

6

7

8

9

10

11

12

13         (Time noted:  5:57 p.m.)

14

15

16                    ----------------------

17                    DANIEL JOSEPH FLEMING

18

19    Subscribed and sworn to before me

20    this        day of                  2009.

21

22    ----------------------------------------

23

24

25

Page 210

1

2                       C E R T I F I C A T E

3

4     STATE OF NEW YORK     )

5                           ) ss.:

6     COUNTY OF NASSAU       )

7

8              I, KRISTIN KOCH, a Notary Public

9         within and for the State of New York, do

10        hereby certify:

11             That DANIEL JOSEPH FLEMING, the

12        witness whose deposition is hereinbefore

13        set forth, was duly sworn by me and that

14        such deposition is a true record of the

15        testimony given by such witness.

16             I further certify that I am not

17        related to any of the parties to this

18        action by blood or marriage; and that I am

19        in no way interested in the outcome of

20        this matter.

21             IN WITNESS WHEREOF, I have hereunto

22        set my hand this 28th day of August, 2009.

23             -------------------------

24             KRISTIN KOCH, RPR, RMR, CRR, CLR

25

1
2        --------------------I N D E X-------------------
3
         WITNESS                    EXAMINATION BY        PAGE
4
         DANIEL JOSEPH FLEMING      MS. CARRERO            6
5
                                    MR. ROTHMAN          156
6
                                    MR. C. GREEN         208
7
         --------------------EXHIBITS-------------------
8
9        NUMBER                              PAGE LINE
10

11       Exhibit 294B
         E-mail dated September 15, 2008,
         Bates stamped 10302690, and Chase
12       Tri-Party Haircut Summary Bates
         stamped 10308382..................... 40   21
13
         Exhibit 295B
14       E-mail dated 9-18-2008............... 64   3
15       Exhibit 296B
         E-mail dated September 18, 2008,
16       Bates stamped 10303223............... 69   7
17       Exhibit 297B
         E-mail dated 9-18-2008............... 72   18
18
         Exhibit 298B
19       E-mail dated 9-21-2008............... 74   6
20       Exhibit 299B
         E-mail dated 9-19-2008............... 89   19
21
         Exhibit 300B
22       E-mail dated September 23, 2008,
         Bates stamped BCI-EX-(S)-00019269
23       and BCI-EX-(S)-00019270.............. 111  25
24       Exhibit 301B
         E-mail dated September 21, 2008,
25       Bates stamped 10307085............... 123  19

1

2     --------------------EXHIBITS-------------------

3

NUMBER                                        PAGE LINE

4

5     Exhibit 302B
      E-mail dated September 22, 2008,
6     Bates stamped BCI-EX-(S)-00018817.... 127  9
7     Exhibit 303B
      E-mail dated September 19, 2008,
8     Bates stamped 465433................. 129  6
9     Exhibit 304B
      E-mail dated September 17, 2008,
10    Bates stamped 10306758, with
      attached spread sheet, Bates
11    stamped 10306405.................... 132  8
12    Exhibit 305B
      E-mail dated September 23, 2008,
13    Bates stamped BCI-EX-(S)-000191987
      through BCI-EX-(S)-000191194......... 139  10
14
      Exhibit 306B
15    E-mail dated September 22, 2008,
      Bates stamped 10295071.............. 142  12
16
      Exhibit 307B
17    Letter dated September 22, 2008,
      Bates stamped BCI-EX-00077308
18    through BCI-EX-00077310............. 142  15
19    Exhibit 308B
      E-mail dated September 25, 2008,
20    Bates stamped BCI-EX-(S)-00011649
      through BCI-EX-(S)-00011651......... 147  21
21
      Exhibit 309B
22    E-mail dated 9-20-2008.............. 163  10
23    Exhibit 310B
      E-mail dated September 23, 2008,
24    Bates stamped BCI-EX-(S)-00019297
      and BCI-EX-(S)-00019298............. 168  24
25

1

2      --------------------EXHIBITS--------------------

3

       NUMBER                                PAGE LINE

4

5      Exhibit 311B
       E-mail dated September 23, 2008,
6      Bates stamped BCI-EX-(S)-00004061
       and BCI-EX-(S)-00004062, with
7      attached Lehman Brothers, Inc.
       Customer/PAIB Reserve Analysis....... 171  20

8

       Exhibit 312B
9      E-mail dated September 27, 2008,
       Bates stamped BCI-EX-(S)-00021746,
10     with attached OCC summary............ 186  15

11     Exhibit 313B
       E-mail dated October 1, 2008, Bates
12     stamped BCI-EX-(S)-00004784.......... 192  9

13     Exhibit 314B
       E-mail dated 9-21-08................. 194  11

14

       Exhibit 315B
15     E-mail dated 9-21-2008............... 202  12

16

17

18

19

20

21

22

23

24

25

Page 214

1

2                ERRATA SHEET FOR THE TRANSCRIPT OF:

3      Case Name:        In re:  Lehman Brothers

       Dep. Date:        August 28, 2009

4      Deponent:         Daniel Joseph Fleming

5                        CORRECTIONS:

6      Pg. Ln.   Now Reads          Should Read        Reason

7      ___ ___  _____   _____   _____

8      ___ ___  _____   _____   _____

9      ___ ___  _____   _____   _____

10     ___ ___  _____   _____   _____

11     ___ ___  _____   _____   _____

12     ___ ___  _____   _____   _____

13     ___ ___  _____   _____   _____

14     ___ ___  _____   _____   _____

15     ___ ___  _____   _____   _____

16     ___ ___  _____   _____   _____

17     ___ ___  _____   _____   _____

18

19                              _____

20                              Signature of Deponent

21     SUBSCRIBED AND SWORN BEFORE ME

22     THIS_____DAY OF_____, 2009.

23

24     _____

25     (Notary Public)  MY COMMISSION EXPIRES:_____

# A. 12

1             J. HRASKA

2         UNITED STATES BANKRUPTCY COURT

3         SOUTHERN DISTRICT OF NEW YORK

4     ----------------------x

5     In Re:

6                           Chapter 11

7     LEHMAN BROTHERS           Case No. 08-13555(JMP)

8     HOLDINGS, INC., et al.,    (Jointly Administered)

9

              Debtors.

10

      ----------------------x

11

12

13         DEPOSITION OF JAMES HRASKA

14         New York, New York

15         August 14, 2009

16

17

18

19

20

21

22

23    Reported by:

24    KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25    JOB NO. 24039

Page 2

1                    J. HRASKA

2                 August 14, 2009

3                    9:25 a.m.

4

5

6        Deposition of JAMES HRASKA, held at

7        Jones Day LLP, 222 East 41st Street,

8        New York, New York, before Kathy S.

9        Klepfer, a Registered Professional

10       Reporter, Registered Merit Reporter,

11       Certified Realtime Reporter, Certified

12       Livenote Reporter, and Notary Public

13       of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1                    J. HRASKA

2

3              A P P E A R A N C E S:

4

5    JONES DAY, LLP

6    Attorneys for Lehman Brothers, Inc.

7         222 East 41st Street

8         New York, New York  10017-6702

9    BY:  WILLIAM J. HINE, ESQ.

10        GEORGE E. SPENCER, ESQ.

11

12   BOIES, SCHILLER & FLEXNER, LLP

13   Attorneys for Barclays and the Witness

14        5301 Wisconsin Avenue, N.W.

15        Washington, D.C.  20015

16   BY:  JONATHAN M. SHAW, ESQ.

17

18   QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

19   Attorneys for the Creditors Committee

20        51 Madison Avenue

21        22nd Floor

22        New York, New York  10010

23   BY:  ERIC M. KAY, ESQ.

24

25

Page 4

1                        J. HRASKA

2

3           A P P E A R A N C E S:   (Cont'd.)

4

5     JENNER & BLOCK, LLP

6     Attorneys for the Examiner

7           330 N. Wabash Avenue

8           Chicago, Illinois  60611-7603

9     BY:  DAVID C. LAYDEN, ESQ.

10

11    HUGHES, HUBBARD & REED, LLP

12    Attorneys for the SIPA Trustee

13          One Battery Park Plaza

14          New York, New York  10004

15    BY:  NEIL J. OXFORD, ESQ.

16          AMINA HASSAN, ESQ.

17

18

19    Also Present:

20          RAJESH ANKALKOTI, Alvarez & Marsal

21

22

23

24

25

1                    J. HRASKA

2    JAMES HRASKA, called as a

3         witness, having been duly sworn by a Notary

4         Public, was examined and testified as

5         follows:

6    EXAMINATION BY

7    MR. HINE:

8         Q.    Good morning, Mr. Hraska.

9         A.    Good morning.

10        Q.    We met just briefly before the

11   deposition.  My name is Bill Hine.  I'm from the

12   firm of Jones Day and we are special counsel to

13   Lehman Brothers Holdings, Inc., in connection

14   with the pending bankruptcy proceeding.  And so

15   your deposition is being taken today pursuant to

16   that discovery that we're taking in that case.

17             There's several other counsel around

18   the table who will introduce themselves as they

19   get up to take turns questioning.

20             Have you ever had a deposition taken

21   before?

22        A.    I have not.

23        Q.    So, just by way of a little ground

24   rules, I'm going to ask you a bunch of

25   questions.  You're under oath.  You're going to

Page 6

                            J. HRASKA

1  answer the questions.

2          On occasion, your counsel will state

3  an objection or, you know, make some kind of

4  objection for the record.  That doesn't relieve

5  you of the obligation to answer the question.

6  It's just him trying to either correct a portion

7  of my question or preserve an objection.

8          In that regard, throughout the day, I

9  am undoubtedly going to a misuse a word or some

10  kind of acronym or some technical term that you

11  folks use every day in your line of business

12  which I'm not as familiar with as you are,

13  obviously, so please correct me if I misuse a

14  word or I ask a question that's misleading in

15  any way or you just don't understand the

16  question because I would like to ask a clear

17  question so you can answer it.

18          Is that okay?

19  A.     That's fine.  Thank you.

20          MR. SHAW:  Just before we begin,

21      again, I want to put on the record our

22      understanding that we will designate the

23      entire transcript highly confidential and

24      then we'll go back and redesignate.

1                              J. HRASKA

2              MR. HINE:  Yes.  That's true.  That's

3        fine.

4        Q.    One other thing before we get started,

5   Mr. Hraska.  I imagine you're aware that you've

6   been designated as what's called a 30(b)(6)

7   witness by your employer, by Barclays, as to

8   particular topics, and they relate to Schedules

9   A and B which we'll discuss later.  So when we

10  get to that portion of the deposition, I'll let

11  you know and we'll treat that portion as a

12  30(b)(6) deposition, but I'll let you know as we

13  get there.

14             MR. SHAW:  Just so we're, again,

15        clear, Bill, as I think you know, he is one

16        of several witnesses who's been designated

17        as partially responsive to those particular

18        topics.

19             MR. HINE:  I understand.

20        Q.    So, unless you have any questions, we

21  can get started.

22        A.    No, I'm fine.

23        Q.    Okay.  Can we just review briefly your

24  employment history with Lehman?  What was the

25  last position you held at Lehman?  I'm talking

1                          J. HRASKA

2    about in the period of September 2008.

3        A.    I was senior vice president from a

4    corporate title perspective and I managed the

5    Secured Financing Operations Group.

6        Q.    And can you just describe for me what

7    that means?  What were your responsibilities and

8    duties in that position?

9        A.    The Financing Operations, also known

10   as a financing middle office, is a group that

11   sits between a bunch of groups, but primarily

12   trading and sales individuals and clearance and

13   settlements folks, and we do tasks such as, you

14   know, monitoring positions, reconciling

15   differences, dealing with, you know, customer,

16   you know, concerns, bringing the attention of

17   customers' concerns to either sales staff or

18   trading staff.

19            We also deal with legal and compliance

20   and regulatory on certain matters.  If there

21   are, you know, questions or queries as to the

22   nature of the transactions, if somebody needs

23   some technical expertise on, we usually provide

24   that expertise as to the structure of the

25   transactions and things like that.

Page 9

J. HRASKA

1

2    Q.    And who did you report to in that

3 position?

4    A.    At Lehman Brothers at the time, I was

5 reporting to Monty Forrest.

6    Q.    Did you report directly to anyone

7 else?

8    A.    No, under that structure I was a

9 direct report of Monty Forrest.

10   Q.    And who were your direct reports?

11   A.    My direct reports now or at the time?

12   Q.    At the time in September of 2008.

13   A.    Okay, my direct reports in the U.S.

14 were Nancy Denig, D-E-N-I-G, and Paul Lindner.

15   Q.    Prior to this position -- or, let me

16 ask you another question.  How long were you in

17 this senior vice president position?

18   A.    Approximately five to six years.  I

19 don't remember the exact date, actually.  I

20 don't remember the exact date when I got my

21 senior vice presidentship.

22   Q.    Okay.  How long had you been in the

23 position of managing the secured financing?

24   A.    It began in 2001, but it began in a

25 much smaller scale.  I only managed a portion of

Page 10

J. HRASKA

1

2    it and over time it grew into a larger and

3    larger responsibility.  At the point of

4    September, I was managing both equity and fixed

5    income.  I was managing that globally as well.

6        Q.    Okay.  When did you join Lehman?

7        A.    August of '93.

8        Q.    So you held this management position

9    since 2001, you said?

10        A.    That particular one related to

11    Financing Operations since 2001, yes.

12        Q.    What did you do before that at Lehman?

13        A.    I did a host of different roles, all

14    in derivatives-based.  I worked in Derivative

15    Settlements, I worked in Derivatives Middle

16    Office, and I also worked in a Structured

17    Products and Reinsurance Middle Office as well.

18        Q.    Okay:

19        A.    And over the period of time I also

20    held management positions in those roles as

21    well.

22        Q.    When you say middle office, could you

23    just tell me what that means?

24        A.    Middle office is similar to the way I

25    described it before for financing, only it was

Page 11

1                    J. HRASKA

2    for derivative-related products.  So same types

3    of trader inquiries, sales inquiries, customer

4    resolutions to problems, things like that.

5       (The following portions have been removed due to their

6    Confidentiality designations:

7    Page 11, Line 5 through Page 21, Line 19 (Highly Confidential);

8    Page 21, Line 20 through Page 32, Line 4 (Confidential);

9    Page 32, Line 5 through Page 88, Line 14 (Highly Confidential);

10   Page 88, Line 15 through Page 91, Line 15 (Confidential);

11   Page 91, Line 16 through Page 148, Line 4 (Highly Confidential);

12   Page 148, Line 5 through Page 156, Line 15 (Confidential); and

13   Page 156, Line 16 through Page 321, Line 15 (Highly Confidential).

14

15      The Transcript is continued on Page 321, Line 16)

16

17

18

19

20

21

22

23

24

25

Page 321

1              J. HRASKA

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16          (Time Noted:  5:53 P.M.)

17

18

19          _____

20              JAMES HRASKA

21

22     Subscribed and sworn to

       before me this      day

23     of           2009.

24

       _____

25

Page 322

1

2                    J. HRASKA

3                    CERTIFICATE

4        STATE OF NEW YORK )

                        :  ss

5        COUNTY OF NEW YORK)

6            I, Kathy S. Klepfer, a Registered

7        Merit Reporter and Notary Public within and

8        for the State of New York, do hereby

9        certify:

10           That JAMES HRASKA, the witness whose

11       deposition is herein before set forth, was

12       duly sworn by me and that such deposition is

13       a true record of the testimony given by such

14       witness.

15           I further certify that I am not

16       related to any of the parties to this action

17       by blood or marriage and that I am in no way

18       interested in the outcome of this matter.

19           I further certify that neither the

20       deponent nor a party requested a review of

21       the transcript pursuant to Federal Rule of

22       Civil Procedure 30(e) before the deposition

23       was completed.

24           In witness whereof, I have hereunto

25       set my hand this 14th day of August, 2009.

Page 323

1                ---------------------------------

2                KATHY S. KLEPFER, RPR, RMR, CRR, CLR

3                   J. HRASKA

4                     INDEX

5    WITNESS:              EXAMINATION BY              PAGE

6    J. HRASKA            Mr. Hine                    5

7                         Mr. Oxford                 239

8    EXHIBITS:                                        PAGE

9    Exhibit 136B, a document bearing Bates          16

10   Nos. BCI-EX-00077317 through 77319

11   Exhibit 137B, a document bearing Bates          90

12   Nos. 10294679 with attached spreadsheets

13   Exhibit 138B, an e-mail chain, the first        92

14   one in time bearing a date of September 18,

15   2008, at 5:40 P.M.

16   Exhibit 139B, Printout of Schedules             112

17   Exhibit 140B, a document bearing Bates Nos.     131

18   BCI-CG00052538 through 53173

19   Exhibit 141B, a document bearing Bates Nos.     134

20   BCI-CG00055192 through 55629

21   Exhibit 142B, a document bearing Bates Nos.     178

22   465401 and 466143

23   Exhibit 143B, an e-mail chain, the first        190

24   in time dated September 17, 2008, at 2:42,

25   with attachment

Page 324

1    Exhibit 144B, a document bearing Bates       195

2    Nos. 10297377 through 10300510

3                        J. HRASKA

4                         INDEX

5    EXHIBITS:                                    PAGE

6    Exhibit 145B, a document bearing Bates       211

7    Nos. 10328099 through 10319396

8    Exhibit 146B, a document bearing Bates       230

9    Nos. BCI-EX-(S)-00014389 through 14393

10   with attachment

11   Exhibit 147B, an e-mail sent from Mr. Hraska  254

12   to Paolo Tonucci, copying others, on Friday,

13   the 19th of September, 2008

14   Exhibit 148B, an e-mail chain, the first       256

15   in time dated September 19, 2008, at 3:43 P.M.

16   Exhibit 149B, an e-mail from Gene Lempert,     259

17   to Mr. Hraska, Sunday, September 21, at 3:38

18   A.M. GMT, or 11:38 P.M. EST

19   Exhibit 150B, Mr. Lempert to J. Hraska         265

20   and others, Sunday, 9/21, at 1:34 A.M. GMT

21   Exhibit 151B, an e-mail from Monty Forrest     267

22   to Mr. Lowitt, Mr. Blackwell, Mr. Ullman

23   and J. Hraska, copying Mr. Tonucci and

24   others, sent on Sunday, 9/21, at 9:16

25   A.M. GMT

Page 325

1

2

3                         J. HRASKA

4                          INDEX

5       EXHIBITS:                              PAGE

6       Exhibit 152B, an e-mail from Alastair      274

7       Blackwell to Monty Forrest and to J.

8       Hraska, copying Mr. Tonucci dated Monday,

9       22nd of September, 10:35 A.M. GMT

10      Exhibit 153B, a document bearing Bates      276

11      Nos. BCI-EX-00003796

12      Exhibit 154B, a document bearing Bates      279

13      Nos. BCI-EX-00007930 through 7931

14      Exhibit 155B, a document bearing Bates      293

15      Nos. BCI-EX-S-00017385 and 7386

16      Exhibit 156B, a letter from Cleary          308

17      Gottlieb Stein & Hamilton is James Kobak

18      at Hughes Hubbard dated October 6, 2009

19

20

21

22

23

24

25

Page 326

1                          J. HRASKA

2       NAME OF CASE:  In re Lehman Brothers

3       DATE OF DEPOSITION:  August 14, 2009

4       NAME OF WITNESS:  James Hraska

5       Reason Codes:

6            1.   To clarify the record.

7            2.   To conform to the facts.

8            3.   To correct transcription errors.

9       Page _____ Line _____ Reason _____

10      From _____ to _____

11      Page _____ Line _____ Reason _____

12      From _____ to _____

13      Page _____ Line _____ Reason _____

14      From _____ to _____

15      Page _____ Line _____ Reason _____

16      From _____ to _____

17      Page _____ Line _____ Reason _____

        From _____ to _____

18      Page _____ Line _____ Reason _____

19      From _____ to _____

20      Page _____ Line _____ Reason _____

        From _____ to _____

21      Page _____ Line _____ Reason _____

22      From _____ to _____

23

24                          _____

25                          JAMES HRASKA

# A. 13

Page 1

1

2         UNITED STATES BANKRUPTCY COURT

3         SOUTHERN DISTRICT OF NEW YORK

4    ------------------------------x

     In Re:                      Chapter 11

5    LEHMAN BROTHERS              Case No. 08-13555 (JMP)

     HOLDINGS, INC., et al.,      (Jointly Administered)

6    ------------------------------)

7

8

9           DEPOSITION OF MIKE KEEGAN

10              New York, New York

11           Friday, August 28, 2009

12

13

14

15

16

17

18

19

20   Reported by:

     FRANCIS X. FREDERICK, CSR, RPR, RMR

21   JOB NO. 24379

22

23

24

25

Page 2

1

2

3

4

5          August 28, 2009

6          8:46 a.m.

7

8

9

10    Deposition of MIKE KEEGAN, held at the offices of

11    Jones Day, 222 East 41st Street, New

12    York, New York, pursuant to Notice,

13    before Francis X. Frederick, a Certified

14    Shorthand Reporter, Registered Merit

15    Reporter and Notary Public of the States

16    of New York and New Jersey.

17

18

19

20

21

22

23

24

25

Page 3

1

2    A P P E A R A N C E S:

3

4         JONES DAY, LLP

5         Attorneys for Lehman Brothers, Inc.

6              222 East 41st Street

7              New York, New York  10017-6702

8         BY:   JAYANT W. TAMBE, ESQ.

9              TERRY McMAHON, ESQ.

10

11        BOIES SCHILLER & FLEXNER, LLP

12        Attorneys for Barclays Capital

13             575 Lexington Avenue - 7th Floor

14             New York, New York  10022

15        BY:   JACK G. STERN, ESQ.

16

17        HUGHES, HUBBARD & REED, LLP

18        Attorneys for the SIPA Trustee

19             1175 I Street, N.W.

20             Washington, D.C.  20006-2401

21        BY:   JOHN F. WOOD, ESQ.

22             FARA TABATABAI, ESQ.

23

24

25

Page 4

1

2    A P P E A R A N C E S:  (Cont'd.)

3          JENNER & BLOCK, LLC

4          Attorneys for the Examiner

5                330 N. Wabash Avenue

6                Chicago, Illinois  60611-7603

7          BY:   DAVID C. LAYDEN, ESQ.

8

9          QUINN, EMANUEL, URQUHART, OLIVER &

10         HEDGES, LLP

11         Attorneys for the Creditors Committee

12               51 Madison Avenue - 22nd Floor

13               New York, New York  10010

14         BY:   ROBERT K. DAKIS, ESQ.

15

16

17    ALSO PRESENT:

18         RAJESH ANKALKOTI, Alvarez & Marsal

19

20

21

22

23

24

25

1                     M. KEEGAN

2     M I K E   K E E G A N,   called as a witness,

3           having been duly sworn by a Notary

4           Public, was examined and testified as

5           follows:

6     EXAMINATION BY

7     MR. TAMBE:

8           Q.   Good morning, Mr. Keegan.  We've

9     met a few minutes ago.  My name is Jay Tambe

10    and I'm one of the lawyers at Jones Day.  We

11    are counsel -- special counsel to the Lehman

12    Brothers Holdings estate.  With me is my

13    colleague, Terry McMahon.  I'll have the other

14    lawyers who are sitting at the table introduce

15    themselves.

16          MR. WOOD:  I'm John Wood from

17          Hughes Hubbard & Reed and we represent

18          the SIPA Trustee.

19          MS. TABATABAI:  Fara Tabatabai

20          also with Hughes Hubbard & Reed.

21          THE WITNESS:  Excuse me.  I didn't

22          hear that.

23          MS. TABATABAI:  Fara Tabatabai

24          from Hughes Hubbard & Reed.

25          MR. DAKIS:  Robert Dakis from

Page 6

1                    M. KEEGAN

2          Quinn, Emanuel, Urquhart, Oliver &

3          Hedges for the Official Committee of

4          Unsecured Committee.

5               MR. LAYDEN:  Good morning.  David

6          Layden from Jenner & Block for the

7          Examiner.

8    BY MR. TAMBE:

9    (The following portions have been removed due to their

10   Confidentiality designations:

11   Page 6, Line 9 through Page 15, Line 13 (Confidential);

12   Page 15, Line 14 through Page 18, Line 4 (Highly Confidential);

13   Page 18, Line 5 through Page 28, Line 10 (Confidential);

14   Page 28, Line 11 through Page 84, Line 6 (Highly Confidential);

15   Page 84, Line 7 through Page 86, Line 19 (Confidential); and

16   Page 86, Line 20 through Page 148, Line 8 (Highly Confidential).

17

18

19

20

21

22          (Transcript continued on Pg. 148, Line 9)

23

24

25

1

2

3

4

5

6

7

8

9              Off the record.

10             (Time Noted:      12:39 p.m.)

11

12

13

14

15

16

17

18

19                    _____

20                MIKE KEEGAN

21

22    Subscribed and sworn to before me

23    this ___ day of _____, 2009.

24

25    _____

1

2        C E R T I F I C A T E

3   STATE OF NEW YORK     )

4                          : ss.

5   COUNTY OF NEW YORK    )

6           I, FRANCIS X. FREDERICK, a Notary

7      Public within and for the State of New

8      York, do hereby certify:

9           That MIKE KEEGAN, the witness

10     whose deposition is hereinbefore set

11     forth, was duly sworn by me and that

12     such deposition is a true record of the

13     testimony given by the witness.

14          I further certify that I am not

15     related to any of the parties to this

16     action by blood or marriage, and that I

17     am in no way interested in the outcome

18     of this matter.

19          IN WITNESS WHEREOF, I have

20     hereunto set my hand this 28th day of

21     August, 2009.

22

23                    _____

24                    FRANCIS X. FREDERICK

25

Page 150

1

2     ----------------- I N D E X ------------------

3     WITNESS                 EXAMINATION BY       PAGE

4     MIKE KEEGAN             MR. TAMBE            5, 146

5                             MR. WOOD            119

6                             MR. DAKIS          135

7                             MR. STERN          141

8

9

10

11    ----------- INFORMATION REQUESTS -------------

12    DIRECTIONS:  146, 147, 147

13    RULINGS:  NONE

14    TO BE FURNISHED:  NONE

15    REQUESTS:  NONE

16    MOTIONS:  NONE

17

18

19

20

21

22

23

24

25

1

2      ------------------ EXHIBITS ------------------

3      EXHIBIT                                    FOR ID.

4      Exhibit 294A

5      document bearing production

6      number BCI-EX-(S)-00035155.............. 47

7      Exhibit 295A

8      document bearing production

9      number BCI-EX-(S)-00035143.............. 49

10     Exhibit 296A

11     document bearing production

12     number BCI-EX-(S)-00035440............. 52

13     Exhibit 297A

14     document bearing production

15     numbers BCI-EX-(S)-00035441

16     through BCI-EX-(S)-00035442.............. 55

17     EXHIBIT 298A

18     Document bearing production

19     number BCI-EX-(S)-00035491................56

20     Exhibit 299A

21     document bearing production

22     numbers BCI-EX-(S)-00035619

23     through BCI-EX-(S)-00035620.............. 63

24     Exhibit 300A

       document bearing production

25     number BCI-EX-(S)-00036005.............. 68

1

2    ------------------ EXHIBITS ------------------

3    EXHIBIT                                    FOR ID.

4    Exhibit 301A

5    document bearing production

6    numbers BCI-EX-(S)-00082251.............. 76

7    Exhibit 302A

8    document bearing production

9    number BCI-EX-00054270.................. 79

10   Exhibit 303A

11   document bearing production

12   number BCI-EX-00077814.................. 102

13   Exhibit 304A

14   document bearing production

15   number BCI-EX-00080560.................. 104

16   Exhibit 305A

17   document bearing production

18   number BCI-EX-(S)-00036496.............. 109

19   Exhibit 306A

20   e-mail dated Sunday,

21   9/21/2008 9:15:16 p.m................... 119

22   Exhibit 307A

23   document bearing production

24   numbers BCI-EX-00053873

25   through BCI-EX-00054261................. 122

1

2      ------------------ EXHIBITS ------------------

3      EXHIBIT                                    FOR ID.

4      Exhibit 308A

5      document bearing production

6      numbers BCI-EX-(S)-00036396............. 129

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 154

1

2       NAME OF CASE:  IN RE:  LEHMAN BROTHERS

3       DATE OF DEPOSITION:  AUGUST 28, 2009

4       NAME OF WITNESS:  MIKE KEEGAN

5       Reason codes:
             1.   To clarify the record.

6            2.   To conform to the facts.
             3.   To correct transcription errors.

7       Page _____ Line _____ Reason _____
        From _____ to _____

8

        Page _____ Line _____ Reason _____

9       From _____ to _____

10      Page _____ Line _____ Reason _____
        From _____ to _____

11

        Page _____ Line _____ Reason _____

12      From _____ to _____

13      Page _____ Line _____ Reason _____
        From _____ to _____

14

        Page _____ Line _____ Reason _____

15      From _____ to _____

16      Page _____ Line _____ Reason _____
        From _____ to _____

17

        Page _____ Line _____ Reason _____

18      From _____ to _____

19      Page _____ Line _____ Reason _____
        From _____ to _____

20

        Page _____ Line _____ Reason _____

21      From _____ to _____

22      Page _____ Line _____ Reason _____
        From _____ to _____

23

                    _____

24

                    MIKE KEEGAN

25

# A. 14

Page 1

1                        M. KELLY

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4    ----------------------x

5    In Re:

6                              Chapter 11

7    LEHMAN BROTHERS          Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al.,    (Jointly Administered)

9

              Debtors.

10

     ----------------------x

11

12

13          DEPOSITION OF MARTIN KELLY

14             New York, New York

15             August 18, 2009

16

17

18

19

20

21

22

23    Reported by:

24    KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25    JOB NO. 24042

1              M. KELLY

2          August 19, 2009

3             9:30 a.m.

4

5

6     Deposition of MARTIN KELLY, held at

7     Jones Day, LLP, 222 East 41st Street,

8     New York, New York, before Kathy S.

9     Klepfer, a Registered Professional

10    Reporter, Registered Merit Reporter,

11    Certified Realtime Reporter, Certified

12    Livenote Reporter, and Notary Public

13    of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

1                          M. KELLY

2

3                   A P P E A R A N C E S:

4     JONES DAY, LLP

5     Attorneys for Lehman Brothers, Inc.

6          222 East 41st Street

7          New York, New York  10017-6702

8     BY:  ROBERT W. GAFFEY, ESQ.

9          DAVID L. CARDEN, ESQ.

10         BRIDGET CRAWFORD, ESQ.

11

12    WILLKIE, FARR & GALLAGHER, LLP

13    Attorneys for the Witness

14         1875 K Street, NW

15         Washington, D.C.  20006-1238

16    BY:  RICHARD D. BERNSTEIN, ESQ.

17         - AND -

18    WILLKIE, FARR & GALLAGHER, LLP

19         787 Seventh Avenue

20         New York, New York  10019-6099

21    BY:  KELLY M. HNATT, ESQ.

22

23

24

25

Page 4

1                        M. KELLY

2          A P P E A R A N C E S:  (Cont'd.)

3    BOIES, SCHILLER & FLEXNER, LLP

4    Attorneys for Barclays Capital

5          5301 Wisconsin Avenue, NW

6          Suite 800

7          Washington, D.C.  20015

8    BY:  HAMISH HUME, ESQ.

9

10   QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

11   Attorneys for the Creditors Committee

12          865 S. Figueroa Street, 10th Floor

13          Los Angeles, California  90017

14   BY:  ERICA P. TAGGART, ESQ.

15

16   JENNER & BLOCK, LLP

17   Attorneys for the Examiner

18          330 N. Wabash Avenue

19          Chicago, Illinois  60611-7603

20   BY:  DAVID C. LAYDEN, ESQ.

21

22

23

24

25

Page 5

1                        M. KELLY

2            A P P E A R A N C E S:  (Cont'd.)

3

4    HUGHES, HUBBARD & REED, LLP

5    Attorneys for the SIPA Trustee

6            One Battery Park Plaza

7            New York, New York  10004-1482

8    BY:  NEIL J. OXFORD, ESQ.

9            FARA TABATABAI, ESQ.

10

11   Also Present:

12           RAJESH ANKALKOTI, Alvarez & Marsal

13           THOMAS E. HOMMEL, Lehman Brothers

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

                         M. KELLY

1    MARTIN KELLY, called as a

2         witness, having been duly sworn by a Notary

3         Public, was examined and testified as

4         follows:

5    EXAMINATION BY

6    MR. GAFFEY:

7        Q.    Mr. Kelly, good morning.   My name is

8    Bob Gaffey.   We met briefly before.   I'm with

9    Jones Day and we are special counsel to the

10   estate of Lehman Brothers Holdings, Inc., and as

11   you may know, probably know, we're looking into

12   certain matters concerning the transaction that

13   took place between Lehman and Barclays in

14   September of 2008.

15          Let me just start by getting a brief

16   description of your background, sir.   Could you

17   tell me what your education is since high

18   school, after high school?

19       A.    Sure.   I have a undergraduate degree

20   in commerce with a major in accounting and

21   finance from the University of New South Wales

22   in Sidney, Australia.   I have -- I'm an

23   associate of the Securities Institute of

24   Australia.   I qualified as a chartered

M. KELLY

1  accountant in Australia, and I became a

2  certified practicing accountant in the United

3  States.

4       Q.    When did you take your degree, your

5  first degree?

6       A.    '88 would have been -- yeah, I

7  completed in '88.

8       Q.    And other than as a chartered

9  accountant in Australia and a CPA in the United

10  States, have you taken any other professional

11  licenses?

12       A.    Yes, I have.  I've taken licenses

13  under the FINRA regulations, so Series 7, Series

14  24, Series 27, and I believe Series 63.

15       Q.    And do you keep your license current

16  as a CPA?

17       A.    No.

18       Q.    And --

19       A.    My licenses -- I keep my FINRA

20  licenses current.

21       Q.    Your FINRA licenses are current, your

22  CPA is dormant, and what about the Australia

23  license; is that dormant or current?

24       A.    I'm not sure, actually.

Page 8

1                        M. KELLY

2        (The following portions have been removed due to

3         their Confidentiality designations:

4    Page 8, Line 2 through Page 13, Line 13 (Confidential);

5    Page 13, Line 14 through Page 120, Line 20 (Highly Confidential);

6    Page 120, Line 21 through Page 125, Line 9 (Confidential);

7    Page 125, Line 10 through Page 251, Line 24 (Highly Confidential); and

8    Page 251, Line 25 through Page 254, Line 8 (Confidential)

9

10        The transcript is continued on Page 254, Line 9.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 254

1                        M. KELLY

2

3

4

5

6

7

8

9            (Discussion off the record.)

10           (Time Noted:  5:49 P.M.)

11                      oOo

12

13

14

15

16

17

18                    _____

                      MARTIN KELLY

19

20      Subscribed and sworn to

        before me this    day

21      of          2009.

22

        _____

23

24

25

Page 255

M. KELLY

CERTIFICATE

STATE OF NEW YORK )

: ss

COUNTY OF NEW YORK)

1    I, Kathy S. Klepfer, a Registered

Merit Reporter and Notary Public within and

for the State of New York, do hereby

certify:

That MARTIN KELLY, the witness whose

deposition is herein before set forth, was

duly sworn by me and that such deposition is

a true record of the testimony given by such

witness.

I further certify that I am not

related to any of the parties to this action

by blood or marriage and that I am in no way

interested in the outcome of this matter.

I further certify that neither the

deponent nor a party requested a review of

the transcript pursuant to Federal Rule of

Civil Procedure 30(e) before the deposition

was completed.

In witness whereof, I have hereunto

set my hand this 18th day of August, 2009.

--------------------------------------

Page 256

1                          M. KELLY

2                            INDEX

3    WITNESS:                EXAMINATION BY          PAGE

4    M. KELLY               Mr. Gaffey               5

5    EXHIBITS:                                       PAGE

6    Exhibit 193, a document bearing Bates Nos.    21

7    BCI-EX-00077323 through 77325

8    Exhibit 194, a document bearing Bates Nos.    23

9    BCI-EX-00077326 through 77327

10   Exhibit 195, a document bearing Bates Nos.    84

11   10252949

12   Exhibit 196, a document bearing Bates Nos.    91

13   464234 and 466133

14   Exhibit 197, a document bearing Bates Nos.   161

15   10292661

16   Exhibit 198, a document bearing Bates Nos.   207

17   BCI-EX-00115167 through 5173

18   Exhibit 199, an e-mail and attached          242

19   balance sheet

20   Exhibit 200, a document bearing Bates Nos.   245

21   BCI-EX-00115141

22   Exhibit 201, an e-mail with attached         247

23   financial schedule

24

25

Page 257

1                          M. KELLY
2      NAME OF CASE:  In re Lehman Brothers
3      DATE OF DEPOSITION:  August 18, 2009
4      NAME OF WITNESS:  Martin Kelly
5      Reason Codes:
6            1.  To clarify the record.
             2.  To conform to the facts.
7            3.  To correct transcription errors.
8      Page _____ Line _____ Reason _____
       From _____ to _____
9
       Page _____ Line _____ Reason _____
10     From _____ to _____
11     Page _____ Line _____ Reason _____
       From _____ to _____
12
       Page _____ Line _____ Reason _____
13     From _____ to _____
14     Page _____ Line _____ Reason _____
       From _____ to _____
15
       Page _____ Line _____ Reason _____
16     From _____ to _____
17     Page _____ Line _____ Reason _____
       From _____ to _____
18
       Page _____ Line _____ Reason _____
19     From _____ to _____
20     Page _____ Line _____ Reason _____
       From _____ to _____
21
       Page _____ Line _____ Reason _____
22     From _____ to _____
23     Page _____ Line _____ Reason _____
       From _____ to _____
24

                                 _____
25                               MARTIN KELLY

# A. 15

1

2               UNITED STATES BANKRUPTCY COURT

3               SOUTHERN DISTRICT OF NEW YORK

4       ------------------------x

5    In Re:

6                              Chapter 11

7    LEHMAN BROTHERS          Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al,    (Jointly Administered)

9                 Debtors.

10       ------------------------x

11

12

13            DEPOSITION OF STEPHEN KING

14                New York, New York

15                September 10, 2009

16

17   Reported by:

18   MARY F. BOWMAN, RPR, CRR

19   JOB NO. 24299

20

21

22

23

24

25

Page 2

1

2

3

4

5                          September 10, 2009

6                          9:35 a.m.

7

8

9           Deposition of STEPHEN KING held at

10   the offices of Jones Day, LLP, 222 East 41st

11   Street, New York, New York, before Mary F.

12   Bowman, a Registered Professional Reporter,

13   Certified Realtime Reporter, and Notary Public

14   of the State of New York.

15

16

17

18

19

20

21

22

23

24

25

Page 3

1

2                         APPEARANCES:

3    JONES DAY, LLP

4    Attorneys for Lehman Brothers, Inc.

5          222 East 41st Street

6          New York, New York    10017-6702

7    BY:   WILLIAM HINE, ESQ.

8          GEORGE E. SPENCER, ESQ.

9

10   BOIES, SCHILLER & FLEXNER, LLP

11   Attorneys for Barclays and The Witness

12         575 Lexington Avenue

13         New York, New York    10022

14   BY:   JACK STERN, ESQ.

15

16   QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP

17   Attorneys for the Creditors Committee

18         51 Madison Avenue

19         New York, New York    10010

20   BY:   ROBERT K. DAKIS, ESQ.

21

22

23

24

25

Page 4

1

2                       APPEARANCES:

3

4    JENNER & BLOCK, LLC

5    Attorneys for the Examiner

6         330 N. Wabash Avenue

7         Chicago, Illinois   60611-7603

8    BY:  DAVID C. LAYDEN, ESQ.

9

10   HUGHES, HUBBARD & REED, LLP

11   Attorneys for the SIPA Trustee

12        One Battery Park Plaza

13        New York, New York   10004-1482

14   BY:  NEIL J. OXFORD, ESQ.

15        FARA TABATABAI, ESQ.

16

17   Also Present:

18        INGRID M. CHRISTIAN, Alvarez & Marsal

19

20

21

22

23

24

25

Page 5

1

2

3

4

5        IT IS HEREBY STIPULATED AND AGREED, by

6    and between the attorneys for the respective

7    parties herein, that filing and sealing be

8    and the same are hereby waived.

9        IT IS FURTHER STIPULATED AND AGREED

10   that all objections, except as to the form

11   of the question, shall be reserved to the

12   time of the trial.

13

14

15        IT IS FURTHER STIPULATED AND AGREED

16   that the within deposition may be sworn to

17   and signed before any officer authorized to

18   administer an oath, with the same force and

19   effect as if signed and sworn to before the

20   Court.

21

22

23

24

25

1                           KING

2        (The entire transcript has been removed due to

3        it's Highly Confidential designation: Page 6, Line 2

4        through Page 288, Line 3)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    (Time noted:  5:52 p.m.)

5

6

7                              _____

                                  STEPHEN KING

8

9        Subscribed and sworn to

10       before me this    day

11       of September, 2009.

12

13       _____

14

15

16

17

18

19

20

21

22

23

24

25

1                         KING

2                       INDEX:

3    WITNESS              EXAM BY:              PAGE:

4    S. King             Mr. Hine                6

5                        Mr. Oxford            204

6                        Mr. Dakis             283

7                        Mr. Layden            285

8

9                       EXHIBITS

10   Exhibit No.                        Marked

11   Exhibit 388-B Document Bates stamped         34

12              BCI-EX-S 74256 through 257

13   Exhibit 389-B Document Bates stamped        105

14              BCI-EX-S 75200 through 201

15   Exhibit 390-B Document Bates stamped        141

16              BCI-EX-S 52667 through 68 with

17              attachment

18   Exhibit 391-B Document Bates stamped        181

19              BCI-EX-S 136198

20   Exhibit 392-B E-mail dated Wednesday,       225

21              September 17, 2008 at 19:14:24

22   Exhibit 393-B E-mail dated Friday, 19       235

23              September 2008 at 00:57:45

24   Exhibit 394-B E-mail dated 9/19/2008 at     239

25              9:41 p.m. with attachment

Page 290

1                        KING

2                      EXHIBITS

3      Exhibit No.                        Marked

4      Exhibit 395-B Document Bates stamped        255

5                   BCI-EX-S 57416 through 417

6      Exhibit 396-B Document Bates stamped        260

7                   BCI-EX-S S8711 through 114

8      Exhibit 397-B Document Bates stamped BCI    278

9                   EX-81185

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         KING

2

3

4                      CERTIFICATE

5     STATE OF NEW YORK )

6                       )ss:

7     COUNTY OF NEW YORK)

8          I, MARY F. BOWMAN, a Registered

9     Professional Reporter, Certified Realtime

10    Reporter, and Notary Public within and for

11    the State of New York, do hereby certify:

12         That STEPHEN KING, the witness whose

13    deposition is hereinbefore set forth, was

14    duly sworn by me and that such deposition is

15    a true record of the testimony given by such

16    witness.

17         I further certify that I am not

18    related to any of the parties to this action

19    by blood or marriage and that I am in no way

20    interested in the outcome of this matter.

21         In witness whereof, I have hereunto

22    set my hand this 10th day of September,

23    2009.

24

25                    _____

```
 1                         KING
 2                * * *ERRATA SHEET* * *
 3     NAME OF CASE:  In Re: Lehman
 4     DATE OF DEPOSITION:  September 10, 2009
 5     NAME OF WITNESS:  STEPHEN KING
 6     Reason codes:
 7          1. To clarify the record.
            2. To conform to the facts.
 8          3. To correct transcription errors.
 9
10     Page _____ Line _____ Reason_____
       From _____ to_____
11
12     Page _____ Line _____ Reason_____
       From _____ to_____
13
14     Page _____ Line _____ Reason_____
       From _____ to_____
15
16     Page _____ Line _____ Reason_____
       From _____ to_____
17
18     Page _____ Line _____ Reason_____
       From _____ to_____
19
20     Page _____ Line _____ Reason_____
       From _____ to_____
21
22     Page _____ Line _____ Reason_____
       From _____ to_____
23
24                    _____
                         STEPHEN KING
25
```