# A. 149

# Excerpt of 9/17/08 Hearing Transcript

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                September 17, 2008

                4:28 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1    HEARING re Debtor's Motion Pursuant to Section 1015(b) of the

2    Federal Rules of Bankruptcy Procedure Requesting Joint

3    Administration of Chapter 11 Cases

4

5    HEARING re Motion for an Order Pursuant to Section 105(a) of

6    the Bankruptcy Code Directing that Certain Orders in the

7    Chapter 11 Case of Lehman Brothers Holdings Inc. be Made

8    Applicable to LB 745 LLC

9

10   HEARING re Debtor's Motion Pursuant to Section 105(a) of the

11   Bankruptcy Code and Bankruptcy Rule 1015(c) and 9007 Seeking

12   Authority to Implement Certain Notice and Case Management

13   Procedures

14

15   HEARING re Debtor's Motion to (a) Schedule a Sale Hearing; (b)

16   Establish Sales Procedures; (c) Approve a Breakup Fee; and (d)

17   Approve the Sale of the Purchased Assets and the Assumption and

18   Assignment of Contracts Relating to the Purchased Assets

19

20   HEARING re Motion for Order (i) Authorizing Debtor to Obtain

21   Post-Petition Financing Pursuant to Sections 363 and 364 of

22   Bankruptcy Code; (ii) Granting Liens and Superpriority Claims

23   to Post-Petition Lenders Pursuant to Section 364 of Bankruptcy

24   Code; and (iii) Scheduling Final Hearing

25   Transcribed by:   Lisa Bar-Leib

22

1    hearing on this?  That's why, Your Honor, we have come forward

2    today.  We want to go forward.  And I would point out, Your

3    Honor, we are not asking for any real substantive relief today

4    with respect to the sale motion.  We are asking Your Honor to

5    set a hearing for Friday afternoon.  And the only sensitive --

6    I'll call it somewhat sensitive issue is the approval of the

7    breakup fee.

8            Now, Your Honor, we are talking about a transaction

9    that has, as I said, many, many parts.  But looking at it from

10   the net of this transaction, there will be approximately

11   1,700,000,000 dollars yielded out of this transaction.

12           UNIDENTIFIED SPEAKER:  A billion.

13           MR. MILLER:  I'm sorry?

14           UNIDENTIFIED SPEAKER:  A billion.

15           MR. MILLER:  You know, I always think of Senator

16   Dirksen, Your Honor.  He said a billion here and a billion

17   there.  Pretty soon you're talking about real money.

18           THE COURT:  Well, you're talking about real money

19   here.

20           MR. MILLER:  Absolutely, Your Honor.  And so we have

21   1,700,000,000 dollars.  There has been an enormous effort put

22   into this by the prospective purchaser, Barclays Capital, Your

23   Honor.  And in the negotiations, quite properly, with all of

24   the efforts that they have put into it, there was a request --

25   I should say a request, almost a demand, for a breakup fee.

23

1    And there were negotiations in respect of that amount.  And

2    what it came out to be, Your Honor, was a proposed breakup fee

3    of a hundred million dollars plus reimbursement of expenses of

4    up to twenty-five million dollars.

5            THE COURT:  May I ask you a question --

6            MR. MILLER:  Yes, sir.

7            THE COURT:  -- about how to equate that breakup fee

8    and expense reimbursement with the purchase price?  And I've

9    attempted to assess the notional value of the transaction

10   because in addition to the 1.7 billion dollars, there's a

11   reference to 1.5 billion dollars in cure amounts and possibly

12   as much as 2.5 billion dollars in certain employee related --

13           MR. MILLER:  Yes, sir.

14           THE COURT:  -- severance expenses which may or may

15   not be triggered.  For purposes of my evaluating the fairness

16   of the overall proposed breakup fee and expense reimbursement

17   as a percentage of the transaction, not that I need to do that

18   but frequently Courts are viewed as approving breakup fees

19   within a certain market range.  How should I view the fair

20   value of the overall transaction?

21           MR. MILLER:  I think, Your Honor, if you start with

22   the billion seven hundred million dollars, which is the cash

23   component, as Your Honor obviously read in the papers, there

24   will be an exposure for 2.5 billion dollars in connection with

25   the retention of these 10 to 12,000 employees.

24

1          In addition to that, Your Honor, in connection with

2    the assumption and assignment of contracts, the cure amounts

3    and other payments in connection with the contracts, are

4    estimated to be a billion five hundred million dollars.  So we

5    have four billion dollars right there, Your Honor.

6          In addition, Your Honor, the purchaser is paying 250

7    million dollars for the goodwill of LBI.  So there you have

8    4,250,000,000 dollars in that respect, Your Honor.

9          And then, Your Honor, in the interim, LBI has entered

10   into an arrangement with the prospective purchaser where

11   there's a repo agreement in which they are backing up and

12   allowing these repos to be settled and to be financed.  In

13   addition, if this goes forward, there will be a support

14   agreement for this interim period of two or three days where

15   Barclays Capital will be on premises, will be offering

16   oversight and in the sole discretion, may be willing to advance

17   some monies in the interim period.

18         So the problem we had, Your Honor, there are so many

19   different elements in this transaction that to do the usual

20   calculation of whether it should be two percent, three percent,

21   etcetera, became enormously complex during the course of the

22   proceedings.  As Your Honor knows, as these transactions go up

23   in value, very often the breakup fee goes up in value.  And

24   this -- if Your Honor just took the 1.7, I would say to Your

25   Honor, it's above three percent, clearly above three percent.

25

1          THE COURT:  I know.  I did the calculation.

2          MR. MILLER:  Yes, Your Honor.  But this is -- again,

3    I have to use the expression, this is such a unique

4    transaction.  And there's been so much effort and there is so

5    much exposure.  Senior executives at Barclays likewise, like

6    the rest of us slaves, never went to sleep from Sunday right

7    through last night.

8          So, I think, Your Honor, there's an extra quota of

9    consideration that has to be given in connection with this

10   transaction.  And I would also bear in mind, Your Honor, that

11   what are the prospects of a competitive bid.  This is such a

12   fragile asset.  And it is not an asset that people did not know

13   was for sale.  For months now, Lehman Brothers has been

14   pursuing strategic alternatives.  The market has known that

15   aspects of Lehman, or even all of Lehman, were available for

16   purchase or investment.  So that -- I'm not going to call it

17   shopworn  Your Honor, but that the public, the financial

18   markets knew that these assets were for sale.  And we had a

19   benefit, Your Honor.  We were lucky because Barclays had been

20   negotiating to acquire Lehman.  Unfortunately, that was one of

21   the things that might have been but never turned into fruition.

22   But as the part of that process, at least they had some

23   familiarity.  And that was not a long negotiation either, Your

24   Honor.  It was two days, basically.  Unfortunately, because of

25   various regulations in the UK, that transaction could not have

36

1   But as long as you know, I mean, if you're prepared, that's

2   fine.

3           MR. MILLER:  Yes, Your Honor.  And, Your Honor, if

4   Mr. Despins wants to debate the adjournment, if I may, I would

5   adopt all the reasons in the argument Your Honor is making.

6           THE COURT:  You've always been a wise advocate.

7           MR. DESPINS:  I think I'll pass on that, Your Honor.

8           MR. MILLER:  Your Honor, if I could go back at this

9   point to the breakup fee, I would just note that if you took

10  the cash that's coming out of this transaction and you took the

11  cure amounts, the retention program, it comes up to 5.7 billion

12  dollars.  A hundred million dollars, Your Honor, is

13  approximately two percent of that.  Now, I grant you there's

14  some flex in those other two items.  But given the enormity of

15  this transaction, Your Honor, from the debtors' perspective,

16  and we actively negotiated this, Your Honor, it's not an

17  unreasonable breakup fee.  And if that's what gets the

18  transaction moving forward and as Your Honor pointed out, the

19  markets out there are very, very sensitive to what happens here

20  today.  The employees are waiting.  I mean, one of the things

21  filed -- I will withdraw.  I was going to say something I

22  shouldn't say, Your Honor.  The employees were going to come

23  down here en masse.  It made me think of every time you have an

24  airline case, when the pilots are here.  But we didn't think

25  that was necessary, Your Honor.  There's just a lot of human