# A. 152

# Excerpt of 12/22/08 Hearing Transcript (Docket No. 2420)

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555 (JMP)

       08-01420 (JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.

    Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

    Debtor.

- - - - - - - - - - - - - - - - - - - -x

       United States Bankruptcy Court

       One Bowling Green

       New York, New York


       December 22, 2008

       10:14 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

32

1  both JPMorgan Chase, of course, and Barclays will walk away
2  from any of those claims they would have against the estate and
3  that's a significant benefit.
4        THE COURT: Okay. Thank you. Is there anyone else
5  who wishes to speak in support of this proposed settlement?
6        MR. MILLER: If Your Honor please, Harvey Miller, on
7  behalf of the Chapter 11 debtors. I don't rise, Your Honor, in
8  the context of support but rather no objection. This is a
9  compromise and settlement, Your Honor, in which the Chapter 11
10 debtors have a very significant interest. Just to give Your
11 Honor some background, LBI, the SIPC debtor, has substantial
12 collateral which was posted with JPMorgan Chase. In connection
13 with the resolution of claims that JPMorgan Chase may have
14 against the LBI estate, the Chapter 11 debtors and, in
15 particular, Your Honor, LBHI likewise posted a considerable
16 amount of collateral security consisting of cash and
17 securities. As the claim of the bank against LBI is processed
18 and settled, Your Honor, and that collateral is used to settle
19 that claim, if that collateral is insufficient then JPMorgan
20 Chase will look to the collateral that LBHI has posted. So
21 there was a very significant interest in this transaction, Your
22 Honor. And we spent a considerable amount of time with the
23 SIPC trustee, with the staff, with the former Lehman people in
24 going through the facts relating to this transaction. And it's
25 very significant, Your Honor, because in addition to the

33

1    transfer of the securities which are alluded to as having a
2    value, at some point in time, of 5.7 billion dollars in round
3    figures.  The assertion in the declarations is that those
4    securities are now worth substantially less than 5.7 billion
5    dollars.  But to make up what is facially the seven billion
6    dollars, an additional one billion 250 million dollars of cash
7    is going over to Barclays if you approve the settlement.  And
8    that was very significant, Your Honor, to the Chapter 11
9    debtors and Mr. Marsal.  And I can't tell you, Your Honor, how
10   much time we have spent on this with the cooperation of Mr.
11   Giddens as the trustee.
12            There are still facts, Your Honor, that have to be
13   determined.  So when Mr. Kobak refers to the facts stated in
14   declarations as being uncontradicted, we understand the spirit
15   of the settlement, Your Honor.  We understand what was to be
16   contemplated and to be performed under the asset purchase
17   agreement.  And this is within the spirit of that agreement.
18            However, Your Honor, we were very concerned that
19   something would occur in this compromise and settlement which
20   would preclude future discovery, future determination, that
21   perhaps some assets were transferred to Barclays that may not
22   have been transferred to Barclays (sic) and, as Your Honor
23   knows, this is tripartheid settlement and there may be some
24   relationships with JPMorgan Chase in which LBHI and the related
25   Chapter 11 debtors may have some claims, or they may not have

34

1   some claims.  But we were very concerned, Your Honor, in the
2   shortness of time between the filing of this motion and the
3   time to do some discovery and, as I said, Your Honor, a lot of
4   discovery, informal discovery, was done, Your Honor, the
5   considerations were raised with Mr. Giddens as the trustee,
6   raised with Mr. Novikoff as the attorney for JPMorgan Chase.
7   And as I understand it, even though Mr. Kobak refers to the
8   facts alleged in the declarations as being uncontradicted, all
9   rights are reserved by all parties as I understand the order.
10  And there is nothing in this that presents collateral estoppel
11  with a binding effect in any future proceedings.  So when Your
12  Honor mentioned in the future, there is still a great deal of
13  work being done by the unsecured creditors' committee in
14  looking to the transfer of assets from all of the Chapter 11
15  debtors and LBI to Barclays.
16          So I don't think, Your Honor, as I understand the
17  order, that that kind of discovery, the assertion of claims in
18  the future, if there are any claims, are precluded by the
19  approval of this compromise and settlement.  And it's on that
20  basis, Your Honor, that the Chapter 11 debtors do not object to
21  this compromise and settlement.
22          THE COURT:  Fine.  Thank you very much.
23          MR. MILLER:  Thank you.
24          THE COURT:  And I'd like others who are parties to
25  the settlement to confirm that what you've just said is their

50

1   together and we can talk about it sometime in mid-January. You
2   know, I guess, that's where we are. They said they don't think
3   it's appropriate for the Court to have to order them to comply
4   and I said you're just causing us to file a motion to do that.
5   It's hard to argue that the information shouldn't be made
6   available. But, I guess, that's probably where we are. We'd
7   have to file something if they don't give us the information.
8              THE COURT: All right. I'll just make the general
9   comment. It's not a ruling and I'm not ordering anybody to do
10  anything because there's nothing before me that leads to the
11  entry of an order at least at this point other than an order
12  with respect to the settlement agreement itself.
13             It's obviously in the best interest of orderly case
14  administration that information be shared as promptly as it can
15  be consistent with the other conflicting obligations that the
16  financial advisors and lawyers have in this massive case with
17  enormously complicated issues.
18             Nonetheless, I consider it to be important for us to
19  get to what I'll call closure with respect to the basics of the
20  transaction that was approved by order entered September 20th.
21  And this motion with respect to the settlement agreement is a
22  reasonable platform on which to address some of these issues
23  because while this is not fairly to be characterized as a
24  cleanup item, it's a very significant matter. It does draw all
25  of our attention back to what happened in September. And I

51

1   think it important that there be reasonably prompt resolution
2   of outstanding questions that the committee may have on the
3   subject.  I would hope that it's not necessary for the
4   committee to have to file 2004 requests in order to get the
5   information that it seeks which seems to be reasonable and
6   consistent with its mandate.
7               As it relates to the issue of standing that has been
8   alluded to during the course of this hearing and in your own
9   remarks at the outset, by making this comment, I am not making
10  any judgment as to the standing of the creditors' committee
11  appointed in the LBHI case to participate actively and directly
12  in the LBI case.  But it is apparent to me that the transaction
13  that was approved on September 20th was approved by means of
14  two orders, one entered in the LBHI case and one entered in the
15  LBI case.  It is reasonable for the creditors' committee which
16  represents substantial creditor interest in LBHI to have access
17  to information so that it can fulfill its functions in the LBHI
18  case.
19              Additionally, it appears to me reasonable for the
20  LBHI committee not just in the context of what's before me now
21  but in other settings to be a party in interest for purposes of
22  major transactions affecting the LBI case.
23              This does not constitute a ruling with respect to
24  standing.  I do, however, note that these cases operate off the
25  same agenda, very frequently have overlapping agenda items and

52

1   regardless of their actual procedural status as stand alone
2   cases are in many material respects linked.
3           To the extent that there is a reasonable standing
4   objection made at some point in the future by the LBI trustee,
5   I'm prepared to consider it on its merits. But to the extent
6   that the parties can work cooperatively, I consider that to be
7   desirable and something to be pursued in good faith.
8           MR. KIRPALANI: Thank you, Your Honor. I appreciate
9   your remark.
10          THE COURT: Whatever happened with Royal Bank? Mr.
11  Ostrow, do you wish to make your way to the front of the room?
12          MR. OSTROW: Thank you, Your Honor. Good morning,
13  Your Honor. Alec Ostrow from Stevens & Lee on behalf of Royal
14  Bank America.
15          THE COURT: Good morning.
16          MR. OSTROW: Your Honor, Royal Bank America objected
17  to this settlement on four grounds. One is that it didn't want
18  to be bound and, in particular, drew attention to particular
19  language in the order that said anyone who objects is deemed to
20  consent. We objected to that.
21          We were also concerned that our particular property,
22  collateral that was posted with Lehman Brothers Special
23  Financing somehow made its way to Lehman Brothers Inc. and
24  somehow made its way to Barclays might be affected in this
25  particular transaction. And we didn't know whether it was or