UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                             : SIPA Proceeding
                                                   : Case No. 08-01420 (JMP)
LEHMAN BROTHERS INC.,                              :
                                                   :
                                    Debtor.        :
------------------------------------------------------------------x

### DECLARATION OF SAUL E. BURIAN IN SUPPORT OF LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL. TO SIPA TRUSTEE'S MOTION UNDER 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019(a) FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT

SAUL E. BURIAN hereby declares the following under penalty of perjury:

1.  I am a managing director with Houlihan, Lokey, Howard & Zukin ("Houlihan Lokey").

2.  I submit this declaration (the "Declaration") in support of the Limited Objection Of Official Committee Of Unsecured Creditors Of Lehman Brothers Holdings Inc., Et Al. To SIPA Trustee's Motion Under 11 U.S.C. §§ 105 And 363 And Fed. R. Bankr. P. 9019(a) For Entry Of An Order Approving Settlement Agreement (the "Committee Limited Objection").[1]

3.  I have reviewed the SIPA Trustee's Motion Under 11 U.S.C. §§ 105 And 363 And Fed. R. Bankr. P. 9019(a) For Entry Of An Order Approving Settlement Agreement (the "Settlement Motion"), including the exhibits and declarations submitted in connection therewith.

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Committee Limited Objection.

4. The Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the chapter 11 cases of Lehman Brothers Holdings Inc. and its affiliated debtors and debtors in possession (collectively, the "LBHI Debtors," and their chapter 11 cases, the "Chapter 11 Cases") retained Houlihan Lokey to act as the Creditors' Committee's investment banker.

5. I am a Managing Director in the Financial Restructuring Group of Houlihan and a member of the engagement team responsible for representing the Creditors' Committee.

6. I had primary responsibility for reviewing the Sale Transaction on the Creditors' Committee's behalf.

7. Various Houlihan Lokey representatives participated in a number of conversations with LBHI and LBI on Thursday September 18, 2008 and Friday September 19, 2008 to review and discuss the Sale Transaction. I personally participated in many of those discussions.

8. I was physically present at the offices of Weil, Gotshal & Manges LLP ("Weil Gotshal") starting on the evening of Saturday, September 20, 2008, on Sunday September 21, 2008, and in the early morning hours of Monday, September 22, 2008 (until approximately 3:00 a.m.) as the parties proceeded to close the Sale Transaction.

9. At various times during the pendency of the Sale Transaction, representatives of LBHI and Barclays provided Houlihan Lokey with a number of different amounts and values for the Fed Portfolio Securities being transferred to, and liabilities being assumed by Barclays -- only to be told later that these amounts and/or values were incorrect or no longer relevant.

10. In the early morning hours of Monday September 20, Houlihan Lokey and other Creditors' Committee representatives met with representatives of LBHI and Barclays and were advised of the purportedly final terms and conditions of the Sale Transaction, specifically:

- the pre-mark value of the Fed Portfolio Securities was $49.9 billion (though neither the date nor the method of that mark was clear) -- but that value had (based on an updated mark-to-market) declined to between $44 billion and $45 billion;

- to compensate for that decline, LBI would transfer $1.9 billion of additional securities that had not previously been pledged as collateral for the New York Fed/Barclays loan to LBI or that had otherwise not previously been contemplated to be transferred to Barclays;

- the liabilities owing to the New York Fed being assumed by Barclays totaled $45.5 billion;

- Barclays was assuming an additional $4.25 billion in liabilities, representing some unknown combination of additional advances and/or assumed liabilities;

- a total of $8.55 billion of the Fed Portfolio Securities had not been transferred to Barclays. As a result, LBI was transferring $7.4 billion in cash to Barclays. Neither the date nor the method of the $8.55 billion mark was clear; and

- as a result of these changes, the terms of the Sale Transaction had, from LBHI's and LBI's perspectives, improved.

11. To date, the Creditors' Committee has not received a reconciliation showing which (and what amount of) residential real estate mortgage securities were/are held as collateral by or for the DTC, what the obligations owing from LBI to the DTC (if any) actually were, and whether such securities have been, or should have been returned to LBI. It is unclear whether any such securities were liquidated by JPMC, transferred to Barclays, or are now included in the Settlement Securities (as defined in the Settlement Motion).

12. My understanding is that following the closing of the transaction on September 22, and on various occasions since then, professionals retained by the Creditors' Committee have requested from LBHI or its retained professionals final reconciliations of the assets transferred and liabilities assumed in connection with the Sale Transaction in sufficient detail so that we can confirm the accuracy of the representations we received that Monday morning. To date, the Creditors' Committee has not received this information.

13. I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed on December 19, 2008 in New York, New York

_____
SAUL E. BURIAN