WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Richard L. Levine
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (JMP)
                                           :
              Debtors.                     :    (Jointly Administered)
                                           :
                                           :
----------------------------------------------------------------x
```

**NOTICE OF FILING OF SUPPLEMENTAL**
**DECLARATION IN SUPPORT OF DEBTORS' MOTION**
**PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE**
**FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING**
**SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY**

PLEASE TAKE NOTICE that annexed hereto is the Supplemental Declaration of

Shigeaki Momo-o, filed by Lehman Brothers Holdings Inc. and its affiliated debtors in the above

referenced chapter 11 cases (together, the "Debtors") on September 17, 2009, in support of the

Debtors' Motion Pursuant To Sections 105(a) and 362 Of The Bankruptcy Code For An Order

Enforcing The Automatic Stay And Holding Shinsei Bank In Contempt For Violating The

Automatic Stay (the "Motion") [Docket No. 4764].

Dated: September 17, 2009
       New York, New York

                                        /s/ Richard P. Krasnow
                                        Richard P. Krasnow
                                        Richard L. Levine
                                        Shai Y. Waisman

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for the Debtors
                                        and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Richard L. Levine
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
In re                                                            :
                                                                 :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                         :    08-13555 (JMP)
                                                                 :
                                                                 :
                                    Debtors.                     :    (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

<u>SUPPLEMENTAL DECLARATION</u>
<u>OF SHIGEAKI MOMO-O IN SUPPORT OF DEBTORS' MOTION</u>
<u>TO ENFORCE THE AUTOMATIC STAY AGAINST SHINSEI BANK</u>

Pursuant to 28 U.S.C. § 1746, Shigeaki Momo-o declares as follows:

1.      I am a Japanese attorney (*bengoshi*) admitted to practice in Japan since

1966 and a member of the law firm of Momo-o, Matsuo & Namba, attorneys for Lehman

Brothers Holdings Inc. ("<u>LBHI</u>") and certain of LBHI's affiliates in the civil rehabilitation

proceedings of certain of LBHI's Japanese affiliates, including Sunrise Finance Co., Ltd.

("<u>Sunrise</u>").

2.      I have worked on numerous, and a broad variety of, insolvency matters in

various capacities, including as a private lawyer, as a supervisor in civil rehabilitation

proceedings under the Civil Rehabilitation Law, as a trustee in corporate reorganization

proceedings under the Corporate Reorganization Law, and as a trustee in liquidations under the

Bankruptcy Law (defined below).   I was also a member of the Special Committee of the

Legislative Advisory Counsel of the Ministry of Justice for several years advising on bankruptcy

and reorganization matters, including during the period when the overall Japanese insolvency

scheme underwent extensive reforms that remain in effect today.   These reforms included,

among other things, enactment of the Civil Rehabilitation Law (discussed below) under which

the Sunrise proceeding is pending.

      3.     I submit this supplemental declaration in further support of the Debtors'

Motion Pursuant To Sections 105(a) and 362 Of The Bankruptcy Code For An Order Enforcing

The Automatic Stay And Holding Shinsei Bank In Contempt For Violating The Automatic Stay

(the "Motion") [Docket No. 4764], to provide the Court with a general overview of the Civil

Rehabilitation process in Japan, and to address this Court's questions about the procedural and

substantive nature of the equitable subordination being litigated by Shinsei Bank in the Civil

Rehabilitation proceeding of Sunrise.   Specifically, I address below:

    (a)    The Japanese statutory scheme.

    (b)    The history of Sunrise's Civil Rehabilitation proceeding and what steps will be taken by the Supervisor and the Tokyo District Court (the "TDC") with respect to Sunrise's proposed civil rehabilitation plan (the "Sunrise Plan") and the competing plan filed by Shinsei Bank (the "Shinsei Plan").

    (c)    Shinsei Bank's advocacy (i) in prosecution of the Shinsei Plan, which would have the TDC equitably subordinate the claims of LBHI, Lehman Brothers Asia Holdings ("LB Asia"), and their affiliates (the "LB Group") to the claims of other creditors, including Shinsei Bank, and (ii) in seeking to divest LBHI, LB Asia, and the LB Group of any voting rights with respect to the Shinsei Plan.

    (d)    The respective roles of the TDC and the Supervisor.

(e)      The issue that the TDC has been asked by Shinsei Bank to decide, *i.e.*:   whether equitable considerations warrant a subordination of the allowed claims of LBHI, LB Asia, and the LB Group, and divestment of their corresponding voting rights.

## I.      The Statutory Scheme of Japanese Insolvency Law in General

4.      Japan has four different insolvency statutes:   (i) the Bankruptcy Law, (ii) the Civil Rehabilitation Law, (iii) the Corporate Reorganization Law, and (iv) Special Liquidation, each of which is briefly addressed below.

### A.      The Bankruptcy Law (*Hasan-ho*)

5.      The Bankruptcy Law (the "BL") is the basic law regarding insolvency applicable to individuals, stock corporations, and any other corporations.   The purpose of the BL is to liquidate the assets of a debtor and distribute the proceeds thereof to the debtor's unsecured creditors in the following order (Article 194(1) of BL):

(a)      Priority claims (*e.g.*, certain claims arising from employment and certain tax claims).

(b)      Claims other than (a) above and (b) and (c) below.

(c)      Statutorily subordinated claims (*e.g.*, post-commencement interest on the claim) (as defined in Article 99(1) of the BL).

(d)      Consensually subordinated claims (as defined in Article 99(2) of the BL).

6.      Under the BL, the distribution of proceeds is *pro rata* among claims of the same rank (Article 194(2)).   There is no provision of the BL allowing disproportionate distributions.

### B.      The Civil Rehabilitation Law (*Minji saisei-ho*)

7.      The Civil Rehabilitation Law (the "Civil RL"), which governs the Sunrise proceeding, was enacted in 1999 as part of an effort to reform Japan's insolvency laws.   The

3

Civil RL is applicable to both individuals and corporations.   Under the Civil RL, the debtor, in

principle, retains its right to manage and dispose of its assets.   Thus, the debtor is comparable to

the "debtor in possession" under chapter 11 of Title 11 of the United States Code (the "U.S.

Bankruptcy Code").   The purpose of the Civil RL is to reconstruct the business or life of the

debtor pursuant to a plan of rehabilitation (a "Plan") that reschedules the time of payment and/or

reduces the amount of debt.   The Plan is subject to initial authorization by the court, approval

by a majority vote of the debtor's unsecured creditors (as discussed in detail below), and final

confirmation by the court.   Only the debtor's unsecured creditors vote on the Plan because

Secured creditors' rights and rights of creditors with statutory priority are not affected by the

Civil RL, with certain exceptions (*e.g.*, the court may issue a provisional order to stay a

foreclosure sale in certain circumstances).

    **C.**    **The Corporate Reorganization Law (*Kaisha Kosei-ho*)**

        8.    The Corporate Reorganization Law (the "Corporate RL") is applicable

only to stock corporations (*kabushiki kaisha*).   Under the Corporate RL, the debtor, in principle,

loses the right to manage and dispose of its assets, which are transferred to the court-appointed

trustee.   The purpose of the Corporate RL is to reconstruct the business of a stock corporation

pursuant to a plan that reschedules the time of payment and/or reduces the amount of debt,

subject to the approval of the a majority of creditors and confirmation by the court.   Unlike

under the Civil RL, however, creditors under the Corporate RL are divided into voting classes

such as general unsecured creditors, secured creditors, priority creditors, etc.

**D.**    <u>**Special Liquidation**</u>

9.    Special Liquidation is allowed for already-resolved corporations under Company Law.

**II.**    <u>**The Sunrise Civil Rehabilitation Proceedings**</u>

10.    Sunrise is subject to a proceeding under the Civil RL.    Below is a more detailed description of the civil rehabilitation proceeding, both in general and as it relates to Sunrise.

**A.**    <u>**Petition**</u>

11.    The debtor may file a voluntary petition for commencement of a rehabilitation proceeding (Article 21(1)).[1]    The filing of such a petition does not operate as a stay as provided under section 362 of the U.S. Bankruptcy Code.    Instead, the court may grant provisional relief that maintains the *status quo* on certain matters until it adjudicates the commencement of the proceeding.

12.    In Sunrise's proceeding, Sunrise filed a petition with the TDC on <u>September 15, 2008</u>, and the TDC entered a provisional order on September 16, 2008 precluding Sunrise from paying its debts (with certain exceptions).

13.    The court may also order the appointment of a supervisor (Article 54(1)) and designate acts that the debtor may not conduct without the supervisor's consent (Article 54(2)).    This is quite standard and normal and conforms with the TDC's common practice.

14.    In the Sunrise proceeding, the TDC appointed Mr. Makoto Tahira (the "<u>Supervisor</u>") as supervisor on September 16, 2008 and designated certain acts that require the Supervisor's consent.

---

[1]    Unless otherwise described, article numbers cited herein are those of Civil RL.

15.     As described in more detail below, a supervisor has various functions and authority, one of which is the supervisor's report to the court pursuant to Article 125(3).     Article 125(3) provides (in translation to English) as follows:

> A supervisor, as provided for by court, shall report to the court on the status of the administration of the rehabilitation debtor's business and property and any other matters as ordered by the court.

16.     The TDC normally requires a supervisor to give the supervisor's opinion on whether or not an order of commencement of rehabilitation proceedings should be entered. In Sunrise's proceeding, the Supervisor submitted his opinion on September 19, 2008 to the TDC that an order of commencement was appropriate.

**B.     Commencement**

17.     Under the Civil RL, except under certain conditions listed under Article 25 (*e.g.*, where the petition was filed in bad faith), the court shall enter an order of commencement of a rehabilitation proceeding (Article 33(1)).     In the Sunrise proceeding, the TDC entered an order of commencement on September 19, 2008 at 5:00 p.m.

18.     Upon commencement, with certain exceptions, the debtor is prohibited from paying pre-petition claims (Article 85(1)) and unsecured creditors are prohibited from exercising their rights on pre-petition claims (Article 39).[2]

**C.     Time Limit Set By The Court**

19.     The order of commencement specifies a deadline for filing proofs of claim ("Deadline for Proofs of Claim Filing") and a period for conducting and completing an

---

[2]     *See* "Revised Practice of Bankruptcy and Civil Rehabilitation," Vol. III, page 115.   This treatise was published by the Study Group of the Bankruptcy & Civil Rehabilitation Division of the Tokyo District Court, which consists of judges and clerks headed by the former Chief Judge, Mr. Kenji Nishi.   *See generally* Volumes I (*Jo*), II (*Chu*) and III (*Ge*).   Volume III covers Civil Rehabilitation and Individual Rehabilitation, and describes the guidelines, practices and legal interpretations.   All page citations below refer to Volume III.

investigation of claims ("Period for Investigation of Claims") (Article 34).   In the practice of

the TDC, (i) the court also specifies a deadline for the debtor to submit to the court a statement of

approval or disapproval of submitted claims pursuant to Article 101(5) ("Deadline for Statement

of Approval or Disapproval of Claims"); (ii) the date by which the debtor shall submit the

written report to the court pursuant to Article 125(1) ("Deadline for Debtor's Article 125

Report"); and (iii) the deadline for the debtor to submit a rehabilitation plan (the "Plan") to the

court pursuant to Article 163(1) (the "Deadline for Submission of Plan").

> 20.   In the Sunrise proceeding, the TDC set the following deadlines:

| | |
|---|---|
| Deadline for Filing Proofs of Claim | October 21, 2008 |
| Deadline for Statement of Approval or Disapproval of Claims | November 18, 2008 |
| Period for Investigation of Claims | From November 25, 2008 until December 2, 2008 |
| Deadline for Debtor's Article 125 Report | November 17, 2008 |
| Deadline for Submission of Plan | December 15, 2008 |

### D.   Determination of Claims And Voting Rights

#### (i)   Filing of Proofs of Claim

> 21.   LBHI, LB Asia, the LB Group, and Shinsei Bank filed their proofs of

claim on or before the October 21, 2008 deadline.   Sunrise submitted its Statement of Approval

or Disapproval of Claims by the November 18, 2008 deadline.   The statement accepted the full

LB Asia claim (in the amount of JPY 229,460,334,640 or approximately USD 2.3 billion) but

disallowed the LBHI claim in the amount of JPY 1,422,193,000 or USD 14.2 million.   On

December 26, 2009, however, Sunrise accepted a revised LBHI claim in the amount of

JPY1,376,858,354 or USD 13.7 million.   No creditor, including Shinsei Bank, filed an

objection to the claims of LBHI, LB Asia, or the LB Group within the above time limit (*i.e.*, by

December 2, 2008).

      *(ii)*     *Allowance of Claims*

22.     Article 104(1)-(3) of the Civil RL provides as follows (translated into

English):

> (1)    The content of a rehabilitation claim and the amount of the voting rights (in the case of a rehabilitation claim stated in a statement of approval or disapproval pursuant to the provision of Article 101(3), the content as stated therein) shall be determined if, in the investigation of rehabilitation claims, they are approved by the rehabilitation debtor, *etc.* and no objection is made by any holder of a filed rehabilitation claim during the period of investigation.

> (2)    A court clerk shall enter the results of the investigation of rehabilitation claims in the schedule of rehabilitation creditors.

> (3)    With respect to the rehabilitation claims that become determined pursuant to the provision of paragraph (1), entry in the schedule of rehabilitation creditors shall have the same effect as a final and binding judgment against all rehabilitation creditors.

Thus, where a debtor approves a claim and no objection is made to the claim by any creditor,

such claim is finally determined and, upon entry thereof on the schedule of rehabilitation

creditors, the claim shall have the same effect as a final and binding judgment against all

creditors.   Also Civil RL provides to the effect that the debtor and creditors are not entitled to

contest or dispute the voting rights of the claims the amount of which is determined pursuant to

Article 104(1) (Article 170(1)), and the creditors may exercise their voting rights in accordance

with the amount determined pursuant to Article 104(1) (Article 170(2)).

23.     In light of the above, no creditor in the Sunrise proceeding, including

Shinsei Bank, may dispute the amount of the claims or the corresponding voting rights of LBHI,

LB Asia, or the LB Group.    It is my understanding that this is the equivalent of a claim being "allowed" in U.S. Bankruptcy nomenclature.

**E.    Submission of Plan by Sunrise and Shinsei Bank**

*(i)    Deadline*

24.    On December 16, 2008, pursuant to Article 163(3) and upon the petition of Sunrise, the TDC extended the Deadline for Submission of Plan from December 15, 2008 to May 15, 2009.    Sunrise timely submitted the Sunrise Plan to the TDC on May 15, 2009.

*(ii)    Submission by Creditor*

25.    Article 163(2) provides that a creditor may submit its own Plan within the timeframe specified by the court.    Shinsei Bank (but no other creditor) submitted the Shinsei Plan to the TDC on May 15, 2009.

**F.    Future Proceedings**

*(i)    Opinion on the Plans to be issued by the Supervisor*

26.    Pursuant to Article 125(3), cited above, the TDC normally requires the supervisor to submit a report (typically called a "Statement of Opinion" or "Opinion") setting forth his recommendations on a proposed Plan.    Typically the Opinion is submitted as quickly as possible (*e.g.*, within one (1) week after the submission of a Plan).[3]    However, in the Sunrise proceeding, the Supervisor has not submitted his Opinion as of today because of the complexity of the proceedings (four (4) subsidiary corporations of LBHI are in rehabilitation proceedings with the same supervisor) and because Shinsei Bank's submission of the Shinsei Plan has initiated a dispute and raised novel issues of law in the Sunrise proceeding.

---

[3]    *Id.*, p. 180.

27.     However, the Supervisor has stated that he will submit his Opinion to the

TDC soon.   His Opinion is required to address both the Sunrise Plan and the Shinsei Plan.   As

is typical and required by the TDC, the Opinion also will include the Supervisor's opinion on the

following additional issues:[4]

> (a)     Whether or not either Plan violates the Civil RL's principle of equality; and

> (b)     How distribution amounts under the Plans will compare with distribution amounts in case of a liquidation under the Bankruptcy Law and whether the Plans are contrary to the "general interest of creditors."[5]

28.     The Supervisor's Opinion is advisory but is respected by the TDC under

normal circumstances, and it typically reflects the results of the supervisor's frequent informal

discussions with the court on important legal issues.   The Supervisor's opinion on the Plan

ultimately will be distributed, together with the Plan, to creditors for reference in their decision

to vote for or against the Plan, if the TDC determines that the Plan may be submitted to creditors

for voting.[6]

> *(ii)     Authorization by the Court to Distribute a Plan to Creditors for Voting*

29.     Article 169(1) of the Civil RL (in English translation) provides as follows:

> Where a proposed rehabilitation plan is submitted, the court shall enter an order authorizing distribution of the proposed rehabilitation plan for approval by the parties entitled to vote, *except* in any of the following circumstances:

> (i)     Where the general period for investigation of claims has not yet expired.

---

[4]     *Id.*

[5]     The term, "general interest of creditors," is used in some provisions of the Civil RL and it is generally interpreted to mean the creditors' interest in receiving liquidation value in case of liquidation bankruptcy under BL. As it is an important concept, it will be described in more detail below.

[6]     *Id.*, pp. 179-180.

(ii)     Where no report is made by the rehabilitation debtor, etc. at a meeting for reporting the status of property or no written report set forth in Article 125(1) is submitted.

(iii)    Where the court finds that the proposed rehabilitation plan meets any of the prohibitions listed in Article 174(2) (excluding item (iii)).

(iv)     Where the court discontinues the rehabilitation proceeding pursuant to the provisions of Article 191(ii).

30.     Here, the period for investigation of claims has expired, and Sunrise has submitted the Article 125 Report.   This essentially leaves the TDC to consider whether the Plan falls within any of the three relevant prohibitions set forth in Article 174(2) (i.e., Article 174(2)(i),(ii) and (iv)).   If so, then the court shall enter an order disapproving the Plan.

31.     Article 174(2)(i), (ii) and (iv) provide as follows:

(2)     In any of the cases set forth in the following items, the court shall enter an order disapproving the rehabilitation plan:

(i)     Where the rehabilitation proceedings or rehabilitation plan violate provisions of any law, and such violation cannot be corrected; provided, however, that this shall not apply where rehabilitation proceedings violate provisions of any law but such violation is minor.

(ii)     Where the rehabilitation plan is unlikely to be performed.

* * *

(iv)     Where the resolution on the rehabilitation plan is contrary to the general interests of rehabilitation creditors.

The TDC will therefore authorize a Plan for distribution to creditors *unless* the TDC concludes that either or both of the Shinsei Plan or the Sunrise Plan irreparably violate provisions of the Civil RL, are unlikely to be performed, or are contrary to the general interests of creditors. Therefore, there are three possibilities in the civil rehabilitation proceeding of Sunrise:

(a)   The TDC authorizes both the Sunrise Plan and Shinsei Plan for distribution to creditors for a vote;

(b)   The TDC authorizes only the Sunrise Plan for distribution to creditors for a vote; or

(c)   The TDC authorizes only Shinsei Plan for distribution to creditors for a vote.

It is the position of the TDC that a court order disapproving a Plan cannot be appealed at this stage.[7]

### (iii)   *Voting by Creditors*

32.   A Plan which the court approves shall be distributed to creditors for a vote at either a creditors' meeting or in writing.   The Plan must be approved by (i) a majority of unsecured creditors present at the creditors' meeting or who may vote by ballot *and* (ii) creditors with voting rights who possess at least one-half of the aggregate claim amounts (Article 172-3(1) and (2)).

### (iv)   *Final Approval (*i.e.*, Confirmation) by the Court*

33.   Under Article 174(2) above, a Plan has been approved by creditors if the court must make a decision whether to approve or disapprove it.   If the court considers that that Plan approved by creditors falls within any of the four prohibitions of Article 174(2), the court cannot confirm such Plan.

### (v)   *Immediate Appeal*

34.   A party in interest may make an immediate appeal to the High Court with respect to an order confirming or refusing to confirm a Plan (Article 175(1)).   A decision by the High Court can be appealed to the Supreme Court in exceptional cases (*e.g.*, on constitutional

---

[7] *Id.*, p. 261.

grounds).   When the decision to approve a Plan becomes final and binding, the Plan becomes

effective (Article 176).

> ### (vi)    Post Confirmation

35.    The debtor shall perform the confirmed Plan (Article 186(1)).   The

supervisor shall supervise such performance by the debtor (Article 186(2)).   Unless the court

decides to discontinue the rehabilitation proceeding for a reason provided for in the Civil RL

(*e.g.*, default in performance), the proceeding will be terminated if the performance by the debtor

is completed or three (3) years after the confirmation of the Plan becomes final and binding,

whichever is earlier (Article 188(2)).

### G.    The Role of The Supervisor

36.    The supervisor is subject to the supervision of the court (Article 57(1)),

and his position will be terminated by the court if he fails to supervise the debtor properly

(Article 57(2)).   The role of the supervisor is varied and may change depending upon the size or

complexity of a given case.   It should be noted that a supervisor is different from a trustee under

the BL or the Corporate RL.   For example, the supervisor does not have the right to (i) manage

and dispose of the debtor's assets, (ii) propose a rehabilitation plan, and (iii) litigate on behalf of

the debtor, with certain exceptions (*e.g.*, for avoidance actions under Article 56(1) and Article

135(1)).   On the other hand, the supervisor has the right to provide or withhold consent to

certain actions of the debtor specified by the court (Article 54(2)).   The supervisor also has the

right to inspect the debtor's books, documents and any other objects, and to request the debtor,

its officers and employees to report on the status of the debtor's business and property (Article

59(1)).

37.    The supervisor also shall report or give his opinion to the court with respect to court orders pursuant to Article 125(3), which almost always includes the supervisor's opinion about a proposed plan.    In practice, the supervisor frequently contacts the court to discuss cases in which important or difficult questions arise.    As the supervisor is appointed from among those lawyers who have experience in and knowledge of insolvency cases, the court would, in principle, respect the supervisor's opinion.    In accounting matters, the supervisor typically employs professional accountants to investigate the financial situation of the debtor. Although the supervisor does not have the right to make a rehabilitation plan, the supervisor may advise the debtor with respect to the debtor's drafting of the Plan from a legal standpoint or from the viewpoint of the interests of the creditors in general.

38.    Cooperation among the debtor, the supervisor and the court is essential to carry out the rehabilitation proceeding smoothly and effectively.    In fact, the court requires that both the debtor and supervisor hold periodic discussions with the court (Civil Rehabilitation Rule, Article 23-2), and more frequently in complex and difficult rehabilitation cases.

39.    Due to the important role of the supervisor, it is not uncommon for creditors to contact him to voice their opinions or concerns.

III.    **Shinsei Bank's Advocacy of the Shinsei Plan**

A.    **Shinsei Bank's Failure to Object to LBHI's, LB Asia's, and the LB Group's Claims**

40.    As stated above, Shinsei Bank and all other creditors failed to timely object to the claims filed by LBHI, LB Asia, and the LB Group, and Sunrise has allowed them. The claims and their corresponding voting rights, therefore, have become fixed and allowed, and are binding upon Sunrise and its creditors.    Nevertheless, Shinsei Bank is alleging in documents

submitted to the Supervisor and the TDC that LBHI, LB Asia, and the LB Group should not be

allowed voting rights and that their claims should be subordinated.   This is extraordinary, in my

view, because I am unaware of any prior instance where one creditor in a Japanese insolvency

proceeding has sought to attack the allowed claims of other creditors by filing a competing plan

– as Shinsei Bank has sought to do here because it missed the deadline to object to the LBHI, LB

Asia, and LB Group claims.   Indeed, Shinsei Bank has failed to produce any statutory grounds

or precedent to support its advocacy of equitable subordination other than the "Opinion" it

procured from Professor Matsushita (discussed below).

**B.**   **The Shinsei Plan**

41.   The Shinsei Plan would subordinate the allowed claims of LBHI and LB

Asia to the claims of any other creditors having allowed claims, including Shinsei Bank, based

on certain equitable considerations that Shinsei Bank argues justify unequal treatment of claims,

which treatment is otherwise illegal under the Civil RL.   Shinsei Bank has once revised its Plan

to provide that the claims of not only LBHI and LB Asia, but also another thirteen (13)

companies of LB Group, should be subordinated.

42.   According to the Shinsei Plan (as revised), LBHI, LB Asia, and the LB

Group cannot receive *any* distribution on their claims unless and until the allowed claims of

other creditors, including Shinsei Bank, are paid in full.   This means that LB Group will receive

nothing or very little from Sunrise because the funds available for distribution are far less than

the total allowed claims.

**C.**   **Shinsei Bank's Arguments**

43.   Shinsei Bank has argued that the Shinsei Plan is legal under the Civil RL

and that LBHI, LB Asia, and the LB Group should have no voting rights by submitting various

documents and opinions (as listed in the "Shinsei Record" annexed hereto) to the TDC, the

Supervisor, and Sunrise.   The Shinsei Record includes Opinion by Shinsei dated June 26, 2009,

Opinion by Shinsei dated August 12, 2009, Opinion by Professor Junichi Matsushita dated April

16, 2009 and Opinion by Professor Junichi Matsushita dated June 26, 2009.

44.   In the Shinsei Opinions dated June 26, 2009 and August 12, 2009, and in

the Shinsei Plan, Shinsei Bank alleges and argues that:

(a)   The Sunrise Plan is illegal because it does not subordinate
LBHI, LB Asia, and LB Group to the claims of other creditors,
including Shinsei Bank, so that if the Sunrise Plan is approved by
the creditors and confirmed by the TDC, such confirmation should
be revoked by immediate appeal to the Tokyo High Court; and

(b)   The Shinsei Plan should be authorized for distribution to
creditors and, if approved, it should be confirmed by the TDC
because it subordinates the claims of LBHI, LB Asia, and the LB
Group to the claims of other creditors including Shinsei Bank and
is, therefore, equitable; and furthermore, that LBHI, LB Asia, and
the LB Group should be divested of their voting rights.

To support its position, Shinsei Bank puts forward numerous arguments but relies primarily on

Article 155(1) of the Civil RL, which provides (in English translation) as follows:

The content of any modification of rights based upon a rehabilitation plan
shall be equal between rehabilitation creditors; provided, however, that
this shall not apply where any rehabilitation creditor who will suffer
detriment has given consent or where equity will not be undermined even
if the plan otherwise provides for a small rehabilitation claim or any of the
claims listed in Article 84(2) or any other difference in treatment of
rehabilitation creditors.

45.   Shinsei Bank argues that the subordination for which it is litigating is

allowed by the language that allows different treatment of rehabilitation creditors where equity

will not be undermined.   In support, Shinsei Bank cites Professor Matsushita's Opinion dated

June 26, 2009 which, in turn, relies on the theory of equitable subordination applied in what it

calls the "Deep Rock Doctrine" of the United States Supreme Court in *Taylor v. Standard Gas*

*Co., see* 306 U.S. 307 (1939) – and section 510(c) of the U.S. Bankruptcy Code.    Shinsei Bank

then contends that the claims of related companies should be subordinated when it can be

established that there was (i) undercapitalization, (ii) mismanagement or undue control, and (iii)

undue exploitation by the parent or related company.    Shinsei Bank alleges that those facts are

found here and therefore the allowed claims of LBHI, LB Asia, and LB Group Claims should be

subordinated and their voting rights should be denied.

      **D.**     **<u>Arguments by LBHI and LB Asia</u>**

        46.     LBHI and LB Asia submitted their legal opinion together with a

supporting opinion of Professor Yamamoto to the TDC and the Supervisor.    The following is a

summary of their arguments:

        *(i)*     *Voting Rights*

        47.     The LBHI, LB Asia, and LB Group claims and their voting rights were

already fixed and allowed because Sunrise allowed the claims and no creditors, including Shinsei

Bank, asserted a timely objection.

        *(ii)*     *No Basis in Japanese Law for U.S.-Style Equitable Subordination*

        48.     There is no statutory provision to support Shinsei Bank's advocacy for

"equitable subordination."    Article 155(1) cannot support subordination as sought by Shinsei

Bank because such subordination would violate Articles 169(2) and 174(2)(iv) which, as

discussed above, provide that the court shall not refer the Plan for a vote by creditors if it is

against the "general interest of creditors."    It is generally recognized by courts and in academic

circles that if the value which the creditors would receive under the proposed plan is less than the

value that creditors would receive in a liquidation under the BL, then such plan violates the

general interest of creditors.    In Japan, such principle is called the "Principle of Guaranteeing

Liquidation Value." As the BL does not have a provision similar to Article 155(1) of the Civil

RL, all creditors must be equally treated without exception unless conduct by the debtor is

extremely and exceptionally malicious. In fact, there was no such malicious conduct of Sunrise

at all.

49.    Indeed, it is for these reasons that the court always requests that the

supervisor examine the proposed plan and render its opinion to the court as to whether the

distribution amount of each creditor under the proposed Plan is less or more than the amount

which the creditor would receive in a liquidation under the BL, and whether the Plan is contrary

to the general interest of the creditors.

50.    In Sunrise's proceeding, most of Sunrise's assets were or are to be sold

and liquidated and, under the Sunrise Plan, substantially all of the proceeds are to be distributed

to creditors equally. Therefore, under the Sunrise Plan, LBHI, LB Asia, and the LB Group will

receive the same amount as they would in a liquidation under the BL. Under the Shinsei Plan,

however, LB Group will likely receive nothing, which is far less than the liquidation value of

Sunrise. Therefore, the Shinsei Plan violates Article 169(2) and should not be referred by the

TDC for vote by creditors, and it is also against Article 174(2)(iv) and should not be confirmed

by the TDC.

(iii)    *Facts*

51.    LBHI and LBAH allege that there are no facts that support Shinsei Bank's

factual arguments.

(iv)    *Next Steps*

52.    After considering the submissions of Shinsei Bank and the responsive

submissions of LBHI and LB Asia, the Supervisor will need to render his opinion, which will

consider whether or not the TDC should adopt Shinsei Bank's position that the claims of LBHI,

LB Asia, and the LB Group should be subordinated, and whether LBHI, LB Asia, and the LB Group should be divested of their voting rights.

53.    The TDC will ultimately need to decide whether subordination of allowed claims is legal under the Civil RL and if it is, whether Shinsei Bank has established a basis for the TDC to allow subordination of the claims of LBHI, LB Asia, and the LB Group.    The TDC also will need to decide whether the Sunrise Plan, which does not provide for subordination of the claims of LBHI, LB Asia, and the LB Group, is legal and should be authorized for submission to creditors and whether the Shinsei Plan, which provides for subordination, is legal and should be authorized for submission to creditors.

Dated:        Tokyo, Japan
              September 16, 2009


                            Shigeaki Momo-o
                            Momo-o, Matsuo & Namba
                            Kojimachi Diamond Building 6F
                            4-1 Kojimachi, Chiyoda-Ku
                            Tokyo 102-0083, Japan

**Shinsei Record**

| Name of Document and Addressee (if applicable) | Submission Date | Submitted By |
|---|---|---|
| Petition<br>To: TDC & Supervisor | December 2, 2008 | Shinsei |
| Opinion<br>To: Sunrise<br>Copy To: TDC & Supervisor | May 5, 2009 | Shinsei |
| Opinion | April 16, 2009 | Shinsei |
| Opinion<br>To: TDC & Supervisor | April 16, 2009 | Prof. Junichi Matsushita |
| Petition<br>To: TDC & Supervisor | April 24, 2009 | Shinsei |
| Petition for Administration Order<br>To: TDC | May 8, 2009 | Shinsei |
| Proposed Rehabilitation Plan | May 15, 2009 | Shinsei |
| Petition for Permission for Revision of Proposed Rehabilitation Plan<br>To: TDC | May 19, 2009 | Shinsei |
| Report of Result of Questioning the People Concerned<br>To: TDC & Supervisor<br>Copy To: Attorney for Sunrise | June 10, 2009 | Shinsei |
| Opinion Regarding Order Disallowing Petition for Administration Order<br>To: TDC<br>Copy To: Supervisor and Attorney for Sunrise | June 10, 2009 | Shinsei |
| Opinion<br>To: TDC & Supervisor | June 18, 2009 | Toru Suda, Certified Public Accountant and Tax Accountant |
| Petition<br>To: TDC<br>Copy to: Supervisor & Attorney for Sunrise | June 19, 2009 | Shinsei |
| Petition for Permission for Revision of Proposed Rehabilitation Plan<br>To: TDC | June 26, 2009 | Shinsei |
| Opinion<br>To: TDC & Supervisor | June 26, 2009 | Shinsei |
| Opinion<br>To: TDC & Supervisor | June 26, 2009 | Prof. Junichi Matsushita |
| Opinion<br>To: TDC & Supervisor | June 26, 2009 | Prof.   Hiroyuki Kansaku |
| Proposal | July 17, 2009 | Shinsei |

| To: Supervisor | | |
|---|---|---|
| Petition<br>To: TDC & Supervisor | July 21, 2009 | Shinsei |
| Petition<br>To: TDC & Supervisor | July 31, 2009 | Shinsei |
| Opinion<br>To: TDC & Supervisor | August 12, 2009 | Shinsei |