VINSON & ELKINS, LLP
666 Fifth Avenue
New York, NY 10103
J. Ronald Trost (JT 4745)
Denis F. Cronin (DC 1958)
Dov Kleiner (BK 4600)
Ari M. Berman (AB 4928)
Telephone:    (212) 237-0000
Facsimile:     (212) 237-0100
Attorneys to Shinsei Bank, Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | 08-13555 (JMP) |
| | **(Jointly Administered)** |
| Debtors. | |

**DECLARATION OF ISOMI SUZUKI AND SUR-REPLY
OF SHINSEI BANK TO DEBTORS' MOTION FOR
AN ORDER ENFORCING THE AUTOMATIC STAY
AND HOLDING SHINSEI BANK IN CONTEMPT**

### I.    SUMMARY OF ARGUMENT

Lehman's new theory that its Contempt Motion depends on whether Shinsei's filing of a rehabilitation plan in the Sunrise proceedings is "offensive" or "defensive" conduct elevates form over substance and is wrong as a matter of bankruptcy law.[1]

---

[1] This sur-reply principally addresses the offense/defense theory Lehman raised for the first time in a Reply Lehman filed on August 25, 2009 (the "Lehman Reply") [Docket No. 4920], 24 hours before the hearing on Lehman's motion (the "Contempt Motion") [Docket No. 4764] and to which Shinsei has not previously replied. Capitalized terms used but not defined herein have the meaning given in Response and Objection of Shinsei Bank, Limited to Debtors Motion for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt, as Supplemented, [Docket No. 4876], filed on

Moreover, if accepted, Lehman's theory, first raised in its Reply Brief, would have an enormous impact around the world and create impossible burdens for creditors and administrators in nearly 80 foreign insolvency proceedings in 16 foreign jurisdictions. Lehman's argument simply makes no sense: Lehman concedes that Shinsei may seek to challenge and disallow the Lehman affiliate claims asserted in the Sunrise Proceeding, but Lehman simultaneously maintains that Shinsei may not challenge the priority of those claims by proposing a rehabilitation plan that classifies the claims as subordinated. Lehman's theory of the scope of the automatic stay not only misapplies the law, but also violates well-established notions of comity and leads to dramatic and impractical results. Parties in bankruptcy proceedings everywhere, and especially in foreign proceedings where the legal procedures and forms are not identical to those in the U.S., would be required first to seek advisory opinions on whether any action they might wish to take adverse to a Chapter 11 debtor will be deemed "offensive" and prohibited by the automatic stay or "defensive" and permitted. Lehman's proposed distinction is arbitrary under domestic bankruptcy law; its applicability to foreign proceedings is even more remote and unpredictable. Putting aside the practical and comity implications of Lehman's new theory, it is wrong on the law. Shinsei has done nothing more than ask a Japanese court to follow Japanese procedure and law to determine the rights inherent in

---

August 21, 2009. At the hearing on the Contempt Motion (the "Hearing") held on August 26th, the Court requested declarations of experts in Japanese law to explain the process and procedure under the applicable Japanese bankruptcy law. Shinsei and Lehman agreed on September 17, 2009 for the submission of declarations. Accordingly, Shinsei has attached the Declaration of Isomi Suzuki hereto (the "Suzuki Declaration") as Exhibit A. The Legal Opinion of Junichi Matsushita (the "Matsushita Opinion"), which addresses some of the same issues is attached as Appendix B to the Suzuki Declaration.

2

claims asserted by Lehman and its affiliates in the proceeding before that very court. That is simply not a violation of the automatic stay no matter what technical labels Lehman seeks to attach.

      **II.**     **ADOPTING LEHMAN'S REVISED THEORY WOULD LEAD TO CHAOS AND CONFUSION AND IS NOT SUPPORTABLE AS A MATTER OF BANKRUPTCY LAW OR POLICY**

If the Court were to adopt Lehman's new theory—that opposition to a Lehman position is permissible if the conduct is "defensive" but is prohibited if it is "offensive"—it would lead to widespread confusion as to its meaning and application, especially with respect to proceedings outside the U.S., where rules and procedures are quite different from those here. How would a party know, as Lehman argues, that, in Japan, objecting to a claim is "defensive" and permissible but filing a competing rehabilitation plan classifying Lehman claims as subordinated is "offensive"? Hearing Tr., attached hereto as Exhibit B, p 63-64. At each stage of a foreign proceeding when a creditor or an administrator takes a position contrary to Lehman's alleged interests, will that party be required to first come to this Court to seek an advisory opinion as to whether its conduct is "offensive" or "defensive"? The implication of this result is not trivial. Considering only Lehman affiliates, there are insolvency proceedings for nearly 80 foreign entities across 16 foreign jurisdictions. *Debtors' Motion Pursuant to Sections 105 and 363 of The Bankruptcy Code for Approval of a Cross-Border Insolvency Protocol* [Docket No. 3647] ¶8. And when one accounts for all the other non-Lehman affiliated cases, foreign or domestic, in which Lehman or a Lehman affiliate may assert a claim, the impact of

3

Lehman's argument becomes staggering. However arbitrary these labels may be when applied to actions in American courts, the problem is compounded where, as this Court noted, both legal substance and procedure vary by country, and actions have different meanings and contexts within those nations. Hearing Tr. at 58, 79-70. For these reasons alone, the Court should avoid adopting Lehman's argument that objecting to the allowance of a debtor's claim is permissible but classifying the claim as subordinated in a rehabilitation plan is prohibited because one action is considered "defensive" and the other "offensive".

Lehman responded to these adverse policy considerations at oral argument by advancing the notion that it is only the specific conduct of this specific creditor at issue here. Hearing Tr. at 56. Clever but wrong, as the Court recognized. *See id.* Lehman seeks a broad ruling that the automatic stay itself prohibited Shinsei's conduct, and if Lehman is successful, the force of this ruling will be felt in the myriad of related proceedings and any other proceeding in which Lehman or an affiliate asserts a claim. If Lehman truly wanted a laser-like ruling that addresses only Shinsei's filing of a competing rehabilitation plan in the Japanese proceeding, then Lehman should have filed an adversary complaint seeking an injunction. But, if Lehman had pursued this course, it would also have to overcome a serious laches argument: The issue of which plan— Sunrise's or Shinsei's—should be sent to creditors for a vote has been the subject of extensive briefing in the Japanese proceeding, by Shinsei and Lehman, for months before Lehman's Contempt Motion was filed in this court.

4

**III.** **THERE IS NO THEORY OF BANKRUPTCY LAW WHICH PERMITS LEHMAN TO PROSECUTE $2.4 BILLION OF INTERCOMPANY CLAIMS IN THE SUNRISE PROCEEDING BUT PROHIBITS OTHER CREDITORS FROM DEFENDING AGAINST THOSE CLAIMS**

Shinsei's filing of a rehabilitation plan proposal in the Sunrise Proceeding does not violate Section 362 of the Bankruptcy Code. Section 362 has two relevant branches, 362(a)(1) and 362 (a)(3), which provide:

> (a) . . . a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor . . . ; . . .
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(1) and (a)(3). Shinsei's attempt to have a Japanese court determine the priority of a claim asserted by Lehman and its affiliate is not an act to obtain control over property of the estate. Nor is the response to a claim Lehman and its affiliate filed an action against Lehman.

**A.   Shinsei's filing of a Sunrise rehabilitation plan classifying the Lehman claims as subordinated is not a violation of section 362(a)(3)**

Lehman's position is clear: Lehman and its affiliate, LB Asia, can press their argument that the intercompany claims against their own affiliate should be treated on a parity with all other debt but Shinsei (and presumably all other Sunrise creditors) cannot take an opposing position. Why? Because, Lehman contends, no objection to the allowance of claims was filed in a one week period at the early stages of the *Sunrise* case

5

when creditors had little relevant information, even though Japanese law clearly permits the later challenge to the classification of the Lehman claims. Suzuki Declaration ¶ 16. At oral argument, Lehman urged that it was an act to obtain possession of property of the estate in violation of section 362(a)(3) for another party in the Sunrise proceedings to propose the reclassification of the $2.4 billion of intercompany claims because the impact on the debtor would be adverse. Hearing Tr. At 60 (Krasnow: "It is that they are taking a position with respect to that which would result in a reduced recovery, which in our view violates the stay.")

**But, again, Lehman is wrong**. Judge Richard Posner articulated the fundamental controlling principle: "There is . . . no policy preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing the suit, seeking to take possession of it, subsection (a)(3) is no more applicable than section (a)(1) is." *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 576 (7th Cir. 1989).

This principle, well established in the case law, recognizes that a claim is no different than a lawsuit: a debtor cannot hide behind the automatic stay to protect against a challenge to claims that it is itself asserting in an unrelated proceeding. *Justus v. Fin. News Network Inc. (In re Fin. News Network)*, 158 B.R. 570, 571 (S.D.N.Y. 1993) (objecting to a proof of claim by a bankrupt creditor not a stay violation); *In re Metiom, Inc.*, 301 B.R. 634, 642-43 (Bankr. S.D.N.Y. 2003) (seeking to equitably subordinate and disallow the claim of a bankrupt creditor not a violation of the automatic stay); *In re*

6

*Palmdale Hills Property, LLC*, 08-17206 (EAS) (Bankr. C.D. Cal. Mar. 10, 2009).[2] And Lehman admits as much. Lehman Reply ¶10 ("The Debtors have not argued that Sunrise's creditors are required to seek relief from the stay from this Court in order to defend against claims asserted by the Debtors."); *see also*, *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, supra, 892 F.2d at 577 (stay not violated by defendant's move to dismiss a suit in which debtor was the plaintiff); *see also, Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) (automatic stay not violated when appealing dismissal because "the suit was filed by rather than against the debtor"); *In re Merrick*, 175 B.R. 333, 338 (B.A.P. 9th Cir. 1994) (filing a motion to dismiss in a proceeding brought by the debtor is not a stay violation because "[t]he automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate . . . . While it is true that a successful defense to a lawsuit eliminates its alleged value, this results in no loss to the estate, . . . . There can be no loss of what does not exist."). In each of these cases the ruling had an adverse impact upon the value of property of the estate, but in none of the cases did the automatic stay prevent the action.

Simply put, Lehman is wrong in asserting that "Shinsei fundamentally is seeking to levy upon distributions that should go to LBHI and LB Asia." Lehman Reply at ¶ 8. Lehman only has the right to collect on a claim whose amount and priority is determined under principles of Japanese law applicable to the Japanese proceeding. There is no levy on the intercompany receivables, whatever they may be. There is no (a)(3) violation.

---

[2] A copy of the cited order is attached hereto as <u>Exhibit C</u>. This order and certain related orders are currently subject to appeal to the 9th Circuit Bankruptcy Appellate Panel. Such appeals have yet to be determined.

**B.    Shinsei's filing of a rehabilitation plan that classifies the Lehman claims as subordinated does not violate section 362(a)(1)**

*In re Enron Corp.,* No. 01-16034 (AJG), 2003 Bankr. LEXIS 2261 (Bankr. S.D.N.Y. Jan. 13, 2003, cited for the first time in Lehman's Reply, is not determinative of this Contempt Motion. Lehman's position is that Japanese creditors have violated subsection (a)(3) of section 362 but Lehman's sole basis for this theory is an unreported (a)(1) case (*Enron*) and its unworkable "offensive/defensive" distinction that is not supported by the case law. Putting aside for the moment the validity of that holding, *Enron* was an (a)(1) case; its holding and rationale were directed toward (a)(1), which applies to actions or proceedings against the debtor, and are inapposite. And yet Lehman asks this Court to take an untested and arbitrary minority rule and apply its twisted logic it to an entirely separate body of law concerning (a)(3).

Moreover, even if the focus of the *Enron* court were the proper inquiry, an inquiry as to whether an act of a third party is "offensive" (and therefore prohibited) or "defensive" (and therefore permitted) impermissibly elevates form over substance and produces arbitrary and bizarre outcomes. The *Enron* Court took a simple and well-settled proposition—that debtors cannot hide behind the automatic stay when pressing their interests in other proceedings—and transformed it into a rigid and arbitrary inquiry into whether opposition to the debtor was either "offensive" or "defensive". Lehman's rigid application of *Enron* to the facts of this case allows Lehman to propose an absurd proposition: if Shinsei objected to Lehman's claim *entirely*, this would be "defensive"

8

and permissible, but Shinsei's later classification of the claim as subordinated is somehow "offensive" and impermissible. Total disallowance: Permitted. Subordination: Prohibited. For Lehman, this is situational ethics; they like this result. But as legal precedent and public policy, it is wrong.

As unsupportable as the *Enron* holding is for *United States* proceedings, the problem is compounded many times over by applying this rigid scheme to *foreign* proceedings, where, as this Court implied, different bodies of substantive and procedural law mean that the characterization of certain American procedures or remedies as "offensive/defensive"—already a subjective and context-driven determination—will have limited, if any, applicability to foreign systems. Hearing Tr. at 58. This case provides a perfect example: while the *Enron* Court labeled a post-confirmation "equitable subordination" adversary proceeding action as offensive, in the Japanese proceeding Shinsei's action is merely part and parcel of the standard process of parties proposing plans and advocating before the Supervisor as he makes his own determinations and recommendations to the court. Yet *Enron*, in Lehman's self-serving view, would allow Lehman affiliates to press one proposal, while its competing creditors cannot disagree. This strict application of *Enron's* "offensive/defensive" rule leads to unsupportable results and to chaos – the need for thousands of advisory opinions from this Court before parties could take action in proceedings across the world.

Lehman's reliance on such formalistic distinctions is an improper attempt to elevate form over substance that is neither sensible nor consistent with Japanese law.

9

*See, e.g., Pepper v. Litton*, 308 U.S. 295, 305 ("The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, <u>that substance will not give way to form, that technical considerations will not prevent substantial justice from being done</u>.") (emphasis added).

Further, as set forth in the Suzuki Declaration, under Japanese insolvency law the treatment and priority of a claim, even if allowed (or "finalized" in the Japanese usage), is still properly the subject for *classification* in a rehabilitation plan. Suzuki Declaration at ¶ 16; *see* Matsushita Opinion at ¶ 1. All that has been determined by finalization is the amount of the claim for distribution and voting purposes. To adopt Lehman's distinction would mean that Japanese creditors would lose the right to exercise the very meaningful procedure Japanese law affords them for challenging the priority of the Lehman claims and would instead be relegated to the relatively meaningless "right" to challenge a claim during a limited period in the first few days of a case when creditors have little, if any, relevant information.[3]

In the *Sunrise* case, the implication is particularly stark. Lehman argues that because the amounts of the Lehman affiliate claims were agreed to by its subsidiary early in the case, Sunrise's creditors are prohibited by Lehman's automatic stay from

---

[3] As set forth in the Suzuki Declaration, the period for objecting to the Lehman affiliate claims was very short (from November 25, 2008 to December 2, 2008) and concluded barely 60 days into the case. Moreover, third-party creditors like Shinsei had little access to the relevant facts about Sunrise and its affiliate creditors. Suzuki Declaration at ¶ 15.

10

defending against $2.4 billion in claims asserted by Lehman and its affiliate in the Sunrise Proceeding, even though Japanese law permits the subordination of a claim after the determination period in a rehabilitation plan.[4]  That cannot be the law, and to the extent *Enron* can be said to hold otherwise, at least as applied to these facts, it is wrongly decided.

Moreover, if an American bankruptcy court *had* to apply the *Enron* labeling to Shinsei's actions in the Sunrise Proceeding, there is no question that Shinsei's conduct is "defensive" and not "offensive".  The Suzuki Declaration explains in great detail the process for the proposal of rehabilitation plans in a Japanese insolvency proceeding generally and in the Sunrise proceeding specifically.  The Declaration also describes the Japanese equivalent of an adversary proceeding.  In summary, under the relevant Japanese Rehabilitation Act, an adversary proceeding and the proposal of a plan are nothing alike:

- An adversary proceeding is commenced by the filing of a complaint, to which the defendant files a reply.  The parties then file briefs and the court conducts a trial where evidence is heard, ultimately reaching a judgment. Suzuki Declaration at ¶ 35.

---

[4]  Though the substance of Shinsei's subordination argument is not at issue here, Shinsei's assertion that the Lehman affiliate claims be subordinated is far from frivolous. Japanese law, like U.S. insolvency law, recognizes the concept of equitable subordination of intercompany claims.  Suzuki Declaration at ¶ 37-38; *see also, Taylor* v. *Standard Gas & Electric,* 306 U.S. 307 (1939) (frequently referred to as "The Deep Rock" case) ("Deep Rock [the debtor] was insufficiently capitalized, was top heavy with debt and was in parlous financial condition . . . ").  Shinsei has contended, among other things, that Sunrise was capitalized almost entirely with debt.

- In Japan, as in the United States, the filing of a creditor rehabilitation plan is not an adversary proceeding. FED. R. BANKR. P. 7001(8) ("An adversary proceeding is . . . . a proceeding . . . to subordinate any allowed claim or interest, **except when subordination is provided in a chapter 9, 11, 12, or 13 plan**") (emphasis added);

- Shinsei proposed subordination of the Lehman affiliate claims not by complaint, but by proposing a plan of rehabilitation (the "Shinsei Plan") that separately classified the Lehman affiliate claims, subordinated their recovery to those of other creditors, and disallowed their vote;

- It is for the Supervisor to decide whether or not to recommend the Shinsei Plan to the Sunrise Court;

- Shinsei may make arguments on why subordination of the Lehman affiliate claims is lawful, but there is no requirement that its arguments be ruled on by the Supervisor or the Sunrise Court;

- Shinsei will not have the right for an evidentiary hearing, or any kind of hearing, on the propriety of its plan's classification scheme;

- If the Supervisor or Sunrise Court do not choose to recommend or send out the Shinsei Plan for a vote, Shinsei may not appeal that decision;

- If the Shinsei Plan is recommended and sent out for vote, Shinsei will have no further control over the plan – Shinsei will be unable to withdraw the Shinsei Plan;

- Once submitted for a vote, it is up to creditors to decide whether or not to accept the Shinsei Plan;

12

- If the Shinsei Plan is accepted, Shinsei will not be responsible for implementing the plan or even have the ability to do so; Shinsei's only appeal right is to appeal the order confirming a plan that is sent out and accepted by creditors; it may not appeal the non-acceptance of the Shinsei Plan or the specific refusal to subordinate claim as set forth therein. Suzuki Declaration at ¶ 15-32.

Given the substance of Shinsei's actions, that it was defending against a claim through proposing a plan, there is simply no way Shinsei's actions can be considered a violation of the stay.

### IV. SHINSEI'S PROPOSED REHABILITATION PLAN WITH RESPECT TO LB ASIA'S CLAIM IS NOT AFFECTED BY THE AUTOMATIC STAY

Further, even if the Court were to accept Lehman's "offensive/defensive" distinction, that argument has no applicability to non-debtor claims such as the $2.4 billion claim asserted against Sunrise by LB Asia. Therefore, even if Shinsei's filing of its rehabilitation plan is deemed a violation of the automatic stay, the Court should not require Shinsei to change its plan at all with respect to LB Asia. *See, e.g., In re Calpine*, 354 B.R. 45, 48-49 (Bankr. S.D.N.Y. 2006) (recognizing that, absent an injunction, the automatic stay only "bar[s] proceedings against the debtor").

## V. CONCLUSION

We agree with this Court's statement at the Hearing:

> "[T]he supervisor is being given plans to consider for recommendation to the court, and the court in Japan is then authorizing that a particular plan be distributed to creditors for their approval, that at that point Shinsei is doing nothing. At that point the court is doing something consistent with applicable Japanese insolvency law to effect an equitable distribution. That is not a violation of the automatic stay in my view."

Hearing Tr. at 97.

WHEREFORE, for the foregoing reasons, Shinsei respectfully requests this Court deny the relief requested in the Contempt Motion and grant Shinsei such other relief that the Court deems proper.

Dated: September 17, 2009
New York, New York

/s/ J. Ronald Trost
VINSON & ELKINS, LLP
666 Fifth Avenue
New York, New York  10103
Telephone:   (212) 237-0000
Facsimile:   (212) 237-0100
J. Ronald Trost
Denis F. Cronin
Dov Kleiner
Ari M. Berman

Attorneys for Shinsei Bank, Limited