VINSON & ELKINS, LLP
666 Fifth Avenue
New York, NY 10103
J. Ronald Trost (JT 4745)
Denis F. Cronin (DC 1958)
Dov Kleiner (BK 4600)
Ari M. Berman (AB 4928)
Telephone:    (212) 237-0000
Facsimile:    (212) 237-0100
Attorneys to Shinsei Bank, Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

## DECLARATION OF ISOMI SUZUKI

Pursuant to 28 U.S.C. §1746, Isomi Suzuki declares as follows:

1. I am an attorney (*bengoshi*) admitted to practice in Japan and a member of the law firm of Koga & Partners, attorneys for Shinsei Bank, Limited ("Shinsei"). I have extensive experience in the field of bankruptcy, reorganization and civil rehabilitation under insolvency proceeding of the court as well as out of the court workouts and international transactions and cross-border insolvency proceedings. See attached CV of Isomi Suzuki.

US 68634v.5

2.  I am qualified to submit this declaration in further support of *Shinsei's Response and Objection to Debtors' Motion for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt, as Supplemented*.  I have personal knowledge of the facts stated in this Declaration.

3.  Below, I provide an overview of Japanese insolvency proceedings, including specific issues concerning the insolvency proceedings for Sunrise Finance Co., Ltd. ("Sunrise"), a Japanese debtor indirectly owned by Lehman Brothers Holding, Inc. ("LBHI" or "Lehman"), in which Shinsei and Sunrise have submitted alternative plans of rehabilitation and Shinsei and Lehman have been submitting opinions contesting the relative priority of Lehman and its affiliates' claims against Sunrise in the context of these plans of rehabilitation.  I have also attached a timeline of critical dates and activity in the Sunrise Proceeding as Annex A hereto.

**Japanese insolvency process, generally**

4.  In September 2008, Sunrise commenced a bankruptcy proceeding (the "Sunrise Proceeding") in the 20th Civil Division, Tokyo District Court under Japan's Civil Rehabilitation Act (Law No. 225, Dec. 22, 1999) (hereinafter "CRA")[1]

5.  The CRA is a law that provides for reorganization pursuant to a creditor- and court-approved plan.  A rehabilitation proceeding is appropriate when there is the risk that a fact constituting the grounds for commencement of bankruptcy proceedings would occur to a debtor, or a debtor is unable to pay his/her debts that are due without causing significant hindrance to the

2

US 68634v.5

continuation of his/her business (Art. 21(1) of CRA). The CRA contemplates the subordination

or recharacterization of claims if justified by the facts and circumstances (Art. 155(1) of CRA).[2]

6.   Japanese insolvency proceedings are filed in a District Court. (Art. 5 of CRA) Upon

such a filing, the court orders that certain steps be taken to preserve the properties of the debtor

until the court determines whether rehabilitation proceedings should commence (Art. 26, 27, 30,

31, 54 of CRA). The court's orders typically contain (i) a stay of creditors' collection actions

against the debtor and (ii) the appointment of a Supervisor (the "Supervisor").

7.   Makoto Tahira, Esq. is the Supervisor in the Sunrise Proceeding.

8.   The Supervisor is considered an officer of the court and is appointed by the court

upon an application of an interested party or ex-officio pursuant to Article 54 of CRA.

9.   Once a Supervisor is appointed, the debtor must seek approval from the Supervisor to

take certain actions, such as borrowing money and assigning of or creating security interest in the

debtor's property.

10. During the period between the filing of an application to commence rehabilitation

proceedings and the court's decision concerning that application, the Supervisor prepares and

submits his opinion as to the lawfulness of the rehabilitation proceedings. Based upon the

Supervisor's opinion, the court determines whether to commence the rehabilitation proceeding or

to dismiss the application.

US 68634v.5

**Proof of claim process, generally and in the Sunrise Proceeding**

11. At the outset of a case the court determines the time limit by which proofs of claim must be filed, as well as a period for the investigation of and objection to such claims by rehabilitation creditors along with its order at the commencement of the proceeding (Art. 34 of CRA).

12. Parties have an opportunity to object to proofs of claim within a specified time frame, called the ordinary investigation period (the "Ordinary Investigation Period"):

(1) The rehabilitation debtor shall submit to the court prior to the commencement of the Ordinary Investigation Period a statement of approval or disapproval of the content of each rehabilitation claim and its voting rights (Art. 101(1) of CRA).

(2) A creditor may, within the Ordinary Investigation Period, submit a written objection to the court with regard to the content of a rehabilitation claim or the voting rights with respect to which approval or disapproval by the rehabilitation debtor were made (Art. 102(1) of CRA).

(3) Creditors whose rehabilitation claims are disapproved by the rehabilitation debtor or objected to by other creditors may apply to the court to assess the content of such claims (Art. 105(1) of CRA). The court's judgment on application for such an assessment is subject to appeal for an action to object to such assessment under the jurisdiction of a rehabilitation court (Art. 106(1) and Art. 106(2) of CRA).

(4) The content of a rehabilitation claim and the amount of the voting rights of a rehabilitation claim shall, when the rehabilitation debtor approves and no

objection has been made by creditors within the Ordinary Investigation Period, become determined (Art. 104(1) of CRA). The entries in the schedule of rehabilitation creditors' claims that become determined pursuant to Article 104(1) shall have the same effect as a final and binding judgment against all creditors (Art. 104(3) of CRA).

13. Thus, creditors can object to other creditors' claims during the Ordinary Investigation Period. If they fail to do so, such claims' content and the amount of voting rights are considered to be finalized.

14. The Ordinary Investigation Period in the Sunrise Proceeding was <u>eight</u> days, from November 25, 2008 to December 2, 2008.

15. During the Ordinary Investigation Period creditors generally have the right to challenge other creditors' claims; practically, however, this right is of limited value because creditors have only partial access to information about the rehabilitation debtor and its creditors. In the Sunrise proceeding, this was particularly true because a material part of such information was first disclosed to creditors many months after the expiration of the Ordinary Investigation Period.

16. A creditor's failure to file a timely objection to the content and voting rights of other creditors' claims during the Ordinary Investigation Period does not preclude that creditor from later asserting that those claims should be equitably subordinated to other creditors. In other words, the failure to object to a proof of claim does not prejudice the ultimate determination of

5

the priority and the legality of exercise of the voting rights which is beyond the scope of the determination of the proof of that claim.[3] As discussed below, the priority of a claim, even after it is finalized, is properly the subject of a rehabilitation plan.

17. Only claims determined during the Ordinary Investigation Period may be listed in a rehabilitation plan and any claim not listed is released upon the finality of the confirmation of the plan.

18. Thus, the Ordinary Investigation Period has a specific but relatively narrow role – as evidenced by its short duration, its scheduling at the outset of the proceeding and creditors' limited access to information – as it is intended to determine whether claims are able to be listed in a rehabilitation plan.

**Creditors' rights to file plans of rehabilitation**

19. The debtor must, and its creditors may, file plans of rehabilitation within a period of time specified by the court (Art. 163(1) and Art. 163(2) of CRA). It is not unusual for a creditor to file a plan of rehabilitation and creditor-proposed plans are a normal element of a Civil Rehabilitation Proceeding.

20. The classification of different claims, including the relative priority of claims, is a normal element for a plan of reorganization to address, as provided in Art. 155(1) of CRA. The CRA explicitly provides that modification of some or all of the rights of rehabilitation creditors

6

may be set forth in a rehabilitation plan (Art.154(1) of CRA) and such modification may treat rehabilitation creditors differently as long as equity will not be undermined (Art.155(1) of CRA)[4]. Thus claims, even after they have been finalized, may be subordinated in payment or role under a rehabilitation plan. *See Opinion of Junichi Matsushita* (the "Matsushita Opinion"), *attached hereto as Annex B.*

21. Plans submitted to the court are forwarded to the Supervisor for his review. The Supervisor then opines as to whether there are grounds to dismiss a proposed plan.[5] The grounds for dismissal are provided in CRA, including Articles 154 through 162. Based upon the Supervisor's opinion, the court then decides whether to refer a draft plan to creditors for vote (unless the court finds that there exist statutory grounds for dismissal).

22. In Sunrise's Insolvency Proceeding, Sunrise and Shinsei have each submitted plans of rehabilitation to the court. Both plans generally provide that the debtor's estate, which will be realized in cash by sale of Sunrise's properties or collection of receivables, will be distributed to the unsecured creditors on a *pari passu* basis. However, while the Sunrise plan treats the claims of LBHI and Lehman Brothers Asia Holdings ("LB Asia"), another LBHI and Sunrise affiliate, equally to that of unaffiliated creditors, Shinsei's plan proposes that LBHI's and LB Asia's claims should be entitled to receive distribution only after other creditors' claims are satisfied in full from the estate and that LBHI's and LB Asia's voting rights be subordinated.

7

23. Accordingly, the Sunrise Supervisor will determine whether to recommend one, both, or neither of the plans for submission to the creditors for vote. In so doing, the Supervisor (and ultimately the court) will determine if equitable subordination of LB Asia's and LBHI's claims is lawful or whether LB Asia's and LBHI's claims should participate equally and to the same degree as third-party creditors.

**Multiple Plans**

24. In practice, when two or more plans are submitted to the court, the Supervisor and court routinely encourage the submitting parties to reach an agreement on a single, joint plan:

> When two or more rehabilitation plans are submitted, since the plan which is to be confirmed by the court order must be one, from submission through the confirmation order, these plans must be reduced into a single plan in any event. The way to reduce the multiple plans into a single one may be by (i) before the decision by the court on the referral of a plan or plans to creditors' meeting, voluntary withdrawal or consolidation of plans by the submitting creditors/debtor, (ii) at the decision on the referral to creditors' meeting, exclusion of plans by the court from the referral or (iii) after referral of multiple plans to the creditors' meeting, approval of a single plan by the vote creditors.
>
> Although it may not be a straightforward standard that is guiding how to deal with multiple plans when they are submitted, in light of the purpose of the Civil Rehabilitation Act, a fairer and more proper plan is expected to be prepared for the referral to creditors' meeting through negotiations between such interested parties.

(Kenji Nishi and Takao Nakayama eds., Tokyo District Court Study Group on Bankruptcy and Rehabilitation Practice, *Practice of Bankruptcy/Civil Rehabilitation [New Edition] Vol. II*, Kinzai, p. 258).

8

**Supervisor's Role in Sunrise Insolvency Proceeding**

25.  In Sunrise's Insolvency Proceeding, the Supervisor has functioned as an intermediary between creditors LBHI, LB Asia and Shinsei, in an effort to reach agreement on a single draft plan.

26.  On July 17, 2009, Shinsei submitted a Proposal for the terms of a single, joint plan as well as an invitation for the parties to mediate concerning whether or how the competing plans could be consolidated.  On July 29, 2009, LBHI, together with LB Asia, responded to the Supervisor, rejecting Shinsei's Proposal and requesting that the Sunrise Proceeding instead continue quickly with respect to the competing plans.

27. Shinsei understands that the Supervisor remains willing to encourage the parties to negotiate a single draft plan.

**Process of submitting a plan and proceeding to a creditors vote**

28. If the parties are unable to agree upon a single draft plan (to replace the two competing plans), the Supervisor will prepare and submit an opinion as to whether to refer one, both, or none of the plans to the creditors for a vote.  The court will then rule on the referral, taking into account the Supervisor's recommendation.

29.  The parties' ability to influence this process is limited to submitting their opinions (i.e., legal briefs) to the court.  In the Sunrise Insolvency Proceeding, various creditors have

US 68634v.5

submitted their opinions in support of Shinsei's plan and in support of the subordination of LBHI's and LB Asia's claims.

30. The court does not hold an evidentiary hearing to determine which plan should be referred to the creditors, nor does it issue a formal ruling on the parties' legal briefs. Rather, the court determines which plan (or plans) meets the legal requirements to be sent to creditors for a vote. The court's decision concerning the referral of a plan (or plans) is final and is not subject to appeal.

**Creditors vote**

31. Once a plan is selected for distribution to creditors, the parties may not withdraw the plan. Nor would Shinsei be responsible for implementing the Shinsei plan or even have the ability to implement it if it were approved. Sunrise is solely responsible for implementation of any plan.

32. In order to approve a proposed rehabilitation plan, the following consents are required at the creditors meeting: (i) consent of the majority of voting right holders (limited to those who attend a creditors' meeting or vote by proper document); and (ii) consent of persons who hold voting rights that account for not less than half of the total amount of voting rights held by voting right holders (Art. 172-3 of CRA).

10

33. Once a plan is approved by creditors, the court shall make an order of confirmation for the rehabilitation plan, unless the plan is subject to mandatory dismissal as per CRA Article 174 (paragraph 2, which incorporates all relevant articles of CRA including Article 155(1)).

34. In contrast to the decision to refer the plan for approval, which is not appealable, the court's decision whether to confirm a plan approved by the creditors' meeting is subject to appeal – however, the appeal is of the confirmation of the plan as a whole, not any specific issues such as the subordination of claims which is merely a part of the entire plan. The appellate court has the power to affirm, revoke or remand the decision by the court.

**Japanese adversary proceedings**

35. Japanese insolvency practice contains within it a procedure for discrete litigation, similar to what is referred to as an "adversary proceeding" in U.S. Bankruptcy practice. Such litigation is referred to as an "action" (in Japanese, "Uttae" or "Sosho") wherein the proceeding is commenced by a complaint, which is followed by a written answer by the opposing party. The court presides over a formal hearing between the parties, who submit legal briefs, produce evidence, and offer testimony. The court then renders judgment. CRA provides for three types of "actions", including: (1) an action regarding a judicial determination of a petition for assessment of the content and voting rights of a creditor's claim disapproved or objected to in the investigation proceeding (Art. 105(1)), (2) an action against an order upholding a request for avoidance exercised by a Supervisor or a Trustee of acts prejudicial to rehabilitation creditors

11

(Art. 137(1)), and (3) an action against an assessment decision on a claim for damages based on

liability of the officer of the debtor (Art. 145(1)). Submission of a rehabilitation plan is *not*

considered to be any of the above "actions" (nor is it considered to be one of the respective

assessment procedures that precede these "actions").

36. Shinsei's submission of a plan of rehabilitation is not considered to be the equivalent

of an adversary proceeding. Rather, Shinsei's submission (along with the legal briefs filed in

support of its proposed plan) is part of the ordinary plan proposal process and implicitly requests

a determination by the Japanese court that the Shinsei plan, as opposed to the Sunrise plan,

complies with Japanese Rehabilitation Law taking into account the facts and circumstances of

Sunrise's insolvency. Because the subordination of the claims of LBHI and LB Asia is included

in the Shinsei plan, the proposal of the Shinsei Plan does assert that such subordination complies

with the CRA. *See also Matsushita Opinion.*

**"Equitable subordination" under Japanese law**

37. Equitable subordination is recognized under Japanese law. For example, the

Hiroshima District Court Fukuyama Branch of March 6, 2008 (1660 *Hanrei Jihou* 112), has held

that:

> the principle of fairness (equity) is also valid in the bankruptcy
> proceedings of Japan, and accordingly there are cases wherein,
> depending on such creditor's relationship with the bankruptcy
> debtor, the manner and degree of such creditor's participation in
> the business operation of the bankruptcy debtor, etc., it is against
> the fair and equitable principle and thus impermissible even for

12

such a party who is formally allowed as an ordinary bankruptcy creditor to exercise his credit in order to receive distribution from the bankruptcy estate as *pari passu* with other ordinary bankruptcy creditors under the bankruptcy proceeding.

In the Sunrise Insolvency Proceeding, Shinsei has argued that LBHI's undue control, exploitation and undercapitalization of Sunrise supports a rehabilitation plan that subordinates LBHI's and LB Asia's claims and treats them as equity interests in the Sunrise estate.

38. In connection with his determination of which rehabilitation plan to refer to the creditors for a vote, Sunrise's Supervisor will opine as to the lawfulness of equitable subordination in the Shinsei Plan. The Japanese court ultimately will rule on the issue, taking into account the Supervisor's opinion and applicable law.

Dated:    September 17, 2009
          Tokyo, Japan

Isomi Suzuki
KOGA & PARTNERS
2nd Floor, Kamiyacho MT Building
4-3-20 Toramonon Minato-ku,
Tokyo 105-0001 Japan

---

[1]   To see the entire CRA in English, please visit:
      http://www.japaneselawtranslation.go.jp/law/detail/?id=125&vm=02&re=01 Excerpts from the CRA that are cited herein are compiled in the endnotes.

US 68634v.5

[2]    Article 155(1) of CRA (Modification of Rights Based on Rehabilitation Plan):

The content of any modification of rights based on a rehabilitation plan shall be equal between rehabilitation creditors; *provided, however, that this shall not apply* where any rehabilitation creditor who will suffer detriment has given consent or *where equity will not be undermined even if the plan otherwise provides* for a small rehabilitation claim or any of the claims listed in Article 84(2) or *any other difference in treatment of rehabilitation creditors.* (emphasis added)

[3]    The claim determination procedure under the CRA also does not determine the priority of creditors' claims in terms of distribution of the estate. *See The Resolution and Collection Corporation., et al. v. Hirabayashi Building Kabushiki Kaisha*, 62 Minshu 860 (Supreme Court) April 11, 2007 (the Supreme Court denied the rehabilitation plan approval for which the voting rights were exercised by certain creditors whose claims were not objected in the proof of the claim procedure because of the exercise of the voting rights to approve the rehabilitation plan by the creditors violates Item 3 of Paragraph 2 of Article 174 of the Civil Rehabilitation Act; the legality of the exercise of the voting rights is not determined by the filing of proof to which no timely objection is raised).

[4]    Article 154 of CRA (Clauses of Rehabilitation Plan)

(1) A rehabilitation plan shall specify clauses concerning the following matters:

      (i)    Modification of some or all of the rights of rehabilitation creditors

      (ii)   Payment of common benefit claims and claims with general priorities

      (iii)  The content of known post commencement claims, if there is any

(2)...

(3)...

(4)...

Article 155 of CRA (Modification of Rights Based on Rehabilitation Plan)

(1) The content of any modification of rights based on a rehabilitation plan shall be equal between rehabilitation creditors; provided, however, that this shall not apply where any rehabilitation creditor who will suffer detriment has given consent or where equity will not be undermined even if the plan otherwise provides for a small rehabilitation claim or any of the claims listed in Article 84(2) or any other difference in treatment of rehabilitation creditors.

(2)...

(3)...

(4)...

Article 156 of CRA (General Standards for Modification of Rights)

Clauses for modifying rights of rehabilitation creditors shall provide for general standards for the reduction and release of debts, extension of the term for debts or any other modification of rights (in cases where proof of any consensually-subordinated rehabilitation claim is filed, general standards for consensually-subordinated rehabilitation claims shall be included).

14

Article 157 of CRA (Provisions on Rights of Holders of Filed Rehabilitation Claims, etc.)

(1) Clauses for modifying rights of rehabilitation creditors shall clearly indicate rights held by holders of filed rehabilitation claims and rehabilitation creditors stated in a written approval or disapproval under the provision of Article 101(3), which are to be modified, and also provide for the content of rights as modified according to the general standards set forth in the preceding Article; provided, however, that this shall not apply to rehabilitation claims prescribed in Article 159 and Article 160(1).

(2) If there is a right held by a holder of filed rehabilitation claim or rehabilitation creditor, both prescribed in the preceding paragraph, which will not be affected by a rehabilitation plan, such right shall be clearly indicated.

[5] There are several grounds which mandate that the Supervisor refuse to refer a proposed plan to creditors, including:

Art. 169(1) of CRA

    i. Where the ordinary investigation period does not expire;

    ii. Where no report of rehabilitation debtor, etc. at the meeting for reporting status of properties nor any submission of report under Article 125 paragraph 1 has been made;

    iii. Where the Court finds that the proposed plan of rehabilitation does satisfy any of the requirements listed in each respective item of Article 174 paragraph 2 (except for item (3)); or

    iv. Where the court discontinues the rehabilitation proceedings pursuant to the provision of Article 191 item (2).

Art. 174(2) of CRA

    i. Where the rehabilitation proceedings or rehabilitation plan are in violation of provision of a law, and at the same time such defect cannot be corrected; provided, however, that this may not be applied to a case where rehabilitation proceedings are in violation of the provision of a law but the extent of said violation is of minor nature.

    ii. Where the rehabilitation plan is not likely to be implemented.

    iii. Where the resolution on the rehabilitation plan has adopted by an unlawful means.

    iv. Where the resolution for a rehabilitation plan is in conflict with general interests of rehabilitation creditors.

US 68634v.5

## APPENDIX A

## CHRONOLOGY OF SUNRISE INSOLVENCY PROCEEDING

The following is a chronology of Shinsei's, LBHI's and LB Asia's involvement in the Sunrise insolvency proceeding:

- September 16, 2008 – Sunrise filed a Petition for the Commencement of Civil Rehabilitation Proceedings in the Tokyo District Court; subsequently the Court issued an order as preservative measures for the protection of the Company's assets and appointed Makoto Tahira Esq. to be the Supervisor in this Case.

- September 19, 2008 – Sunrise hosted a briefing session to explain to the creditors the status of Sunrise and its parent company, as well as an overview of the rehabilitation proceedings in Tokyo.

- September 19, 2008 – The Court announced the commencement of the civil rehabilitation proceedings and the following:

  - the filing deadline for the report of rehabilitation claims to be October 21, 2008

  - the ordinary investigation period of claims to be from November 25, 2008 to December 2, 2008.

  - the filing deadline of a rehabilitation plan to be December 15, 2008.

- October 21, 2008 – deadline for the submission of the rehabilitation claim report:

  - October 20, 2008 – LB Asia filed a rehabilitation claim report (JPY 229,439,000,000 plus interest)

  - October 21, 2008 – LBHI filed a rehabilitation claim report (JPY 1,422,193,000 plus interest)

  - October 21, 2008 – Shinsei filed a rehabilitation claim report (JPY25,000,000,000 plus interest)

- November 18, 2008 – The Debtor filed the List of Rehabilitation Claims Approved with the Court.

US 68634v.5

- - Shinsei's Claim – Approved.

  - LB Asia's Claim – Approved.

  - LBHI's Claim – Not Approved.

- From November 25, 2009 to December 2, 2009 – Ordinary Investigation Period.

- December 12, 2008 – LBHI and LB Asia filed a Petition for Adjournment of Filing Deadline of Rehabilitation Plan to the Court and the Supervisor.

- December 15, 2008 – Sunrise filed a Petition for Adjournment of Filing Deadline of Rehabilitation Plan to the Court.

- December 16, 2008 – The Court announced the filing deadline of rehabilitation plans to be changed to May 15, 2009 from October 21, 2008

- December 26, 2008 – Sunrise filed the Notification of Change of Rehabilitation Claims Approved.

  - LBHI's Claim – Approved with Claim Amount being JPY 1,376,858,354.

    (Note: the approval process including negotiation between LBHI and Sunrise was not disclosed to other creditors)

- January 13, 2009 – Sunrise hosted a briefing session to explain to the creditors the brief status of Sunrise and the bidding process Sunrise is going to undertake.

- February 2, 2009 – Sunrise hosted a briefing session to explain to the creditors Sunrise's status, the results of the preliminary bidding of its assets and the schedule for the second bidding Sunrise is going to undertake.

- February 19, 2009 – Shinsei, Bank of Tokyo-Mitsubishi UFJ (BTMU), Resona Bank, Resona Servicer, Mizuho Corporate Bank, Nippon Life Insurance Company, and Intesa Sanpaolo Tokyo Branch jointly submitted a petition to Sunrise with its carbon copy to the Supervisor, requesting to 1) disclose adequate information to creditors, 2) to carry out the proceedings smoothly, 3) execute the bidding of its assets fairly and appropriately, and 4) create a plan that includes the subordination of Lehman Brothers group's claims to make the plan fair and equitable.

- February 25, 2009 – Sunrise filed a Statement of Value Evaluation of the Assets to the Court.

- March 16, 2009 – Sunrise hosted a briefing session to explain to the creditors the status of the bidding process of its assets and basic outline of its Rehabilitation Plan that Sunrise was drafting. In the meeting, LBHI and LB Asia had a presentation to other creditors how they have come to the conclusion of supporting the outline of Sunrise's Plan after LBHI and LB Asia had completed their due diligence of Sunrise's assets.

- May 11, 2009 – Sunrise hosted a briefing session to explain to the creditors the status of the bidding process of its assets and brief summary of its Rehabilitation Plan that the Sunrise is planning to file.

- May 15, 2009 – Sunrise filed a Rehabilitation Plan with the Court.

- May 15, 2009 – Shinsei filed a Rehabilitation Plan with the Court.

- May 21, 2009 – Hybrid Capital (HC), a creditor to Sunrise (HC bought the loan from BTMU) and an affiliate company of Morgan Stanley, submitted an opinion to the Court and the Supervisor expressing its support for Shinsei's Plan and asking the Court and the Supervisor to recommend the Court to refer Shinsei's Plan to the Creditors' Meeting for the Voting.

- May 22, 2009 – LBHI and LB Asia filed a Petition objecting to Shinsei's Rehabilitation Plan which subordinates claims of LBHI and LB Asia to the Court and the Supervisor.

- June 4, 2009 – Citigroup Principal Investments Japan, a creditor to Sunrise and an affiliate company of Citigroup, submitted an opinion to the Court expressing its support for Shinsei's Plan.

- June 26, 2009 – Shinsei filed its Opinion Brief with the Court and the Supervisor in support of its Rehabilitation Plan.

- June 26, 2009 – Shinsei filed with the Court its Application for Approval to Revise Rehabilitation Plan.

- July 9, 2009 – HC submitted to the Court and the Supervisor, expressing its support for Shinsei's Opinion Brief and asking the Court and the Supervisor to recommend the Court that Lehman Brothers affiliated creditors' claims be subordinated and their voting rights at the Creditors' Meeting be disqualified.

- July 9, 2009 – Intesa Sanpaolo Tokyo Branch submitted an opinion to the Court, expressing its support for Shinsei's Plan and Opinion Brief.

- July 17, 2009 – Shinsei submitted its Proposal to the Supervisor, proposing mediation between the parties on whether and how the competing plans may be consolidated.

- July 17, 2009 – LBHI and LB Asia filed its Opinion Brief Regarding the Rehabilitation Plan with the Court and the Supervisor opposing Shinsei's Rehabilitation Plan.

- July 29, 2009 – Shinsei received a sheet of fax transmission from counsels for LBHI and LB Asia via Supervisor stating they would refuse to consider Shinsei's proposal of mediation.

- August 12, 2009 – Shinsei filed an additional Opinion Brief supporting its Rehabilitation Plan.

US 68634v.5

**APPENDIX B**

**LEGAL OPINION OF JUNICHI MATSUSHITA**

Legal Opinion

September 17, 2009

By Junichi Matsushita

Professor of Law at the University of Tokyo

1.    *Question: Whether it is legally permissible to assert subordination in a rehabilitation plan of a rehabilitation claim which has been determined through the investigation proceeding on creditors claims.*

I am of the opinion that it is legally permissible to assert subordination in a rehabilitation plan of a rehabilitation claim which has been finalized and determined through the investigation proceeding on creditors claims.

The above question was at the issue in three cases [1] where the legal permissibility of subordination of a certain claim provided in a corporate reorganization plan under the former Corporate Reorganization Act (Law No. 172, June 7, 1952) was decided. The court decisions in these cases were rendered at the appeals against orders confirming a corporate reorganization plan approved by creditors meeting which contains a subordination of a certain claim. The courts in their respective decisions addressed the same issue: whether a corporate reorganization plan providing for subordination of a certain claim is in compliance with the requirement that the different treatment of rehabilitation claims belonging to a same class must not undermine equity. Since the subordination is challenged in the appeal from the court order confirming a plan approved at the creditors meeting, each of the above decisions considered the permissibility of subordination of a certain claim as the issue of lawfulness of the entire reorganization plan. In this framework the courts ruled that the permissibility of subordination of a certain claim in a reorganization proceeding is to be decided by taking into account various and specific facts in each case such as the extent

---

[1]    (1) *Isao Iijima, et al. v. Reorganization Trustee*, 16 *kaminshu* 242 (Tokyo High Court) February 11, 1965, (2) *Tokuden Co., Ltd. v. Reorganization Trustee*, 1046 *hanreijiho* 127( Fukuoka High Court) December 21, 1981, (3) *Tatsujiro Tanaka, et al. v. Reorganization Trustee*, 1142 *hanreijihou* 141(Nagoya High Court Kanazawa Br.) September 1, 1984

of the control by the creditor over the debtor, and whether the cause of the economic unraveling of the debtor is attributable to the creditor.

It is implicit and prerequisite in these decisions that those claims with respect to which the lawfulness of the subordination became the issue were ones that had already been determined and finalized through the investigation proceeding on creditors' claims. This is because a claim which is not determined in the investigation proceeding is not able to be listed in the corporate reorganization plan. And any claim not listed in the plan is discharged upon finalization of the court order for confirmation of the plan. Thus, the claim not determined by the investigation proceeding on creditors' claims is not entitled to a distribution from the estates and could not be subject to subordination treatment. In order to consider the question of subordination of claims treated in the plan, the courts accepted that claims that have been determined by the investigation proceeding could be subordinated under a plan if the conditions for subordination were met and that determination of the claim was not itself a defense against subordination.

Since the provisions applied by above decisions under the former Corporate Reorganization Act which provide that (i) the not undermining the equity of the different treatment of claims in the same class is a requirement for a confirmation order (Art. 229 and Art. 233(1)(i) of the former Corporate Reorganization Act), that (ii) an appeal is available from an order confirming a plan by finding existence of this requirement (Art.237(1) of the same Act), and that (iii) claims not listed in a reorganization plan in principle is to be discharged (Art.241 of the same Act) are substantially same as corresponding provisions of the Civil Rehabilitation Act in effect (respectively Art. 155(1), Art. 174(2)(i), Art.175 and Art. 178 of the Civil Rehabilitation Act), the explanation about above decisions is valid with respect to the application of relevant provisions of the current Civil Rehabilitation Act.

Accordingly, I opine that it is legally permissible to assert a subordination in a rehabilitation plan of a certain claim even if the claim has already been determined through the investigation proceeding on creditors claims.

2.    *Question: Whether a creditor's submission of a rehabilitation plan in a rehabilitation proceeding which contains subordination of other creditor's claim is deemed to be similar in nature to a creditor filing a counter claim against the claim by the other creditor or to raise a defense against the claim.*

The submission by creditor A of a rehabilitation plan containing a provision of subordinating claim X means that creditor A asserts that claim X is entitled to distribution at the lesser rate than other claims in the same class. By asserting this, creditor A is not demanding the holder of claim X to perform affirmative act such as payment of certain amount of money. In this sense assertion of subordination of a claim is different from the civil action initiated by a complaint demanding a claim by creditor A against the creditor of claim X. Rather it is deemed to be merely raising a defense in which creditor A asserts less favorable treatment of claim X as compared to other claims for the reason of under-capitalization and so on.

Thus, it is not correct to deem the submission by a creditor of a rehabilitation plan containing provision of subordination of a certain claim as similar to filing a counter-claim and such submission should be considered to be much similar to the defense raised by a creditor against the claim subject to the subordination.

3.    *Question: Whether it is correct to deem that the submission by a creditor in a rehabilitation proceeding of a rehabilitation plan containing subordination is not a legal action but merely a submission of a proposal with respect to which the court decides whether to refer to creditors meeting for vote and not subject to adversary proceeding.*

In a rehabilitation proceeding where a Trustee is not appointed, the debtor is obligated to submit a rehabilitation plan. And a rehabilitation creditor is entitled to submit a rehabilitation plan.

There are two basic considerations underlying the plan submission procedure.

Firstly, if the plan does not fulfill the requirements for the court confirmation, the vote by creditors' meeting is meaningless. The court will only refer a plan after finding that the plan fulfils the confirmation requirements. Namely, submission of a plan is therefore an act to submit proposal with respect to which the court decides whether to refer to creditors' meeting for vote. And the decision to refer a plan to

creditors' meeting is not subject to appeal. Consequently, in this first sense it is correct that the submission by a creditor in a rehabilitation proceeding of a rehabilitation plan containing subordination is not a legal action but is merely a submission of a proposal with respect to which the court then decides whether to refer to creditors meeting for vote and is not the subject of an adversary proceeding.

Secondly, the plan referred to creditors' meeting by decision of the court shall be subject to vote by creditors for approval or disapproval. In other words the submission of a rehabilitation plan is a proposal sought to be presented to all creditors to modify the content of claims and seeking approval. In this second sense also the submission of a plan is not a legal action or proceeding but a proposal that a plan be implemented.

Dated:    September 17, 2009
Tokyo, Japan


Junichi Matsushita

Junichi Matsushita
Professor of Law
The University of Tokyo, School of Law
7-3-1 Hongo, Bunkyo-ku,
Tokyo 113-0033, Japan


Attachment: Curriculum Vitae

# CURRICULUM VITAE

Name:    Junichi  MATSUSHITA
         first name    last name

Age:    48

Date of Birth:   June 5, 1961

Citizenship:   Japan


Present Position:

   Professor, The University of Tokyo, School of Law

Educational Background:

   1986          LL.B., The University of Tokyo, Faculty of Law

Professional Background:

   1986-1989    Research Assistant, The University of Tokyo, Faculty of Law

   1989-1990    Part-time Researcher, Institute for Monetary and Economics Studies of The Bank of Japan

   1990-1991    Lecturer, Gakushuin University, Faculty of Law

   1991-1998    Associate Professor, Gakushuin University, Faculty of Law

   1998-2004    Professor, Gakushuin University, Faculty of Law

   2004-         Professor, The University of Tokyo, School of Law


   1998-2005    Insolvency Law Committee, Legislative Council of the Ministry of Justice

   1999-2005    The Advisory Committee on Civil Rules of the Supreme Court


   2001 July- 2009 May

                 Representative of Japan at the Meeting of UNCITRAL Working Group on Insolvency
                 Law


Specialty:   Insolvency Law, Civil Procedure


Major publication (in English):

   *"On Current International Insolvency Law In Japan,"* 6 INTERNATIONAL INSOLVENCY REVIEW, 210-224
   (1997)

   *"Present and Future Status of Japanese International Insolvency Law,"* 33 TEXAS INTERNATIONAL LAW
   JOURNAL 71-100 (1998)

   *"Uncitral Model Law and the Comprehensive Reform of Japanese Insolvency Law,"* in LEGAL ASPECTS OF

1

GLOBALIZATION (Juergen Basedow & Toshiyuki Kono eds.), 151-164 (2000)

*"Current Japanese Insolvency Law and the Comprehensive Reform Project,"* in INDONESIA: BANKRUPTCY, LAW REFORM & THE COMMERCIAL COURT (Timothy Lindsey ed.), 125-133 (2000)

*"Comprehensive Reform of Japanese Insolvency Law and Civil Rehabilitation Law,"* 6 Zeitschrift fuer Zivilprozess International, 277-294 (2001)

*"New Corporate Reorganization Law in Japan,"* INSOL WORLD First Quarter 2003, 18-19

*"Comprehensive Reform of Japanese Personal Insolvency,"* Theoretical Inquiries in Law (Tel Aviv University), Volume 7, Number 2, pp. 555-564 (2006)

Junichi MATSUSHITA

University of Tokyo, School of Law

7-3-1 Hongo, Bunkyo-ku

Tokyo 113-0033, Japan

  phone: +81-3-5841-1329

  fax: +81-3-5841-3161

  e-mail: jmatsu@j.u-tokyo.ac.jp

*Junichi Matsushita*

# APPENDIX C

## CV OF ISOMI SUZUKI

# CURRICULUM VITAE

Name:       Isomi SUZUKI

Office:     Partner,

Koga & Partners, Attorneys-at-Law

2nd Floor, Kamiyacho MT Bldg., 4-3-20, Toranomon, Minato-ku, Tokyo,

105-0001, JAPAN

Date of Birth:      April 17, 1950

Birth Place:        Tokyo, Japan

Sex:                Male

Nationality:        Japanese

Education:          Hitotsubashi University (LL.B., 1973)

Legal Research and Training Institute of the Supreme Court (graduated, 1975)

University of California at Berkeley (LL. M., 1979)

Fulbright Scholarship, 1978-1980

Professional Career:

| | |
|---|---|
| 1975 | Admitted to the Japanese bar |
| 1981 | Admitted to the New York bar |
| 1998-2005 | Commissioner, United Nations Security Council Compensation Commission |
| 2002-2005 | Chairperson, Committee of the Resolution and Collection Corporation on Review of Reorganization and Rehabilitation of Debtors |
| 2005-2008 | Executive General Counsel of the Resolution and Collection Corporation |
| 2003- | Chairperson, Committee of Japan Federation of Bar Associations on enactment of laws concerning private international law and international jurisdiction |
| 2008- | Vice President, LAWASIA (The Law Association for Asia and Pacific) |

Area of Practice:

More than thirty years engaged in corporate and commercial law as well as insolvency law practice with expertise also in matters involving international nature.

Major Articles relating to Insolvency:

- *"Foreign Monetary Obligation and the Article 403 of the Civil Code"* (1976)
- *"Commentary on Arbitration Law"* (1989)
- *"Reorganization Rehabilitation Cases under the approach of the Resolution and Collection Corporation"* (2003)
- *"Compliance Standards and Corporate Social Responsibility"* (2006)
- *"The Resolution and Collection Corporation's Contribution to Relationship Banking in terms of reorganization and rehabilitation of debtor"* (2007)
- *"Cases by the Resolution and Collection Corporation on Reorganization and Rehabilitation of regional nature"* (2008)