Hearing Date and Time: October 15, 2009 at 2:00 p.m.
Objection Deadline: October 9, 2009 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                            :
In re:                                      :   Chapter 11
                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*    :   Case No. 08-13555 (JMP)
                                            :
            Debtor.                         :   (Jointly Administered)
                                            :
---------------------------------------------------------------x

---------------------------------------------------------------x
                                            :
In re:                                      :   SIPA Proceeding
                                            :
LEHMAN BROTHERS INC.,                       :   Case No. 08-01420 (JMP)
                                            :
            Debtor.                         :
                                            :
---------------------------------------------------------------x

**JOINDER OF DEBTOR LBHI WITH THE COMMITTEE'S MOTION PURSUANT TO
11 U.S.C. §§ 105(a) AND 107(a) TO UNSEAL MOTIONS FOR RELIEF MODIFYING
THE SEPTEMBER 20, 2008 SALE ORDER (AND RELATED SIPA SALE ORDER)**

On September 24, 2009, the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. (the "Committee"), moved this Court, pursuant to Sections 105(a) and 107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), for the entry of an order unsealing (with limited exceptions relating to compensation information) the filed, redacted versions of the

(i)   Motion Of Official Committee Of Unsecured Creditors Of Lehman Brothers Holdings Inc., et al., Pursuant To 11 U.S.C. § 105(a), Fed. R. Civ. P. 60(b), And Fed. R. Bankr. P. 9024, For Relief From Order Under 11 U.S.C. §§ 105(a), 363, And 365 And Federal Rules Of Bankruptcy Procedure 2002, 6004 And 6006 Authorizing And Approving (A) Sale Of Purchased Assets Free And Clear Of Liens And Other Interests And (B) Assumption And Assignment Of Executory Contracts And Unexpired Leases, Dated September 20, 2008 (And Related SIPA Sale Order) And Joinder In Debtors' And SIPA Trustee's Motions For An Order Under Rule 60(b) To Modify Sale Order (the "Committee Motion"),

(ii) Debtor's Motion For An Order, Pursuant To Fed. R. Civ. P. 60 And Fed. R. Bankr. P. 9024, Modifying September 20, 2008 Sale Order And Granting Other Relief, dated September 15, 2009 (the "Debtor's Motion"), and

(iii) Trustee's Motion For Relief Pursuant To The Sale Orders Or, Alternatively, For Certain Limited Relief Under Rule 60(b), dated September 15, 2009 (the "Trustee Motion" and together with the Committee Motion and the Debtor's Motion, the "Rule 60(b) Motions").[1]

Lehman Brothers Holdings Inc. (the "Debtor" or "LBHI") hereby responds and joins in the Committee's Motion to Unseal, and separately states the following:

**PRELIMINARY STATEMENT**

1. The facts set out in the Debtor's Motion were developed by LBHI independently and through discovery which LBHI, LBI, the Committee and the Examiner have conducted pursuant to the Court's order, entered June 25, 2009, authorizing discovery under Bankruptcy Rule 2004. Due to the strictures of a Confidentiality Stipulation and Order upon which Barclays insisted before it would produce any information, the publicly-filed version of the Debtor's Motion was heavily redacted as a result of Barclays' excessive application of "Highly Confidential" and "Confidential" designations to both deposition testimony and documents. LBHI tried to resolve these over-designations with Barclays before filing its motion, but was unable to do so.

2. LBHI now seeks to have the Court remove those designations (with the exception of certain compensation-related information), and therefore joins in the Committee's Motion to Unseal. Both well-established bankruptcy principles of disclosure and transparency, and the strong public policy favoring open court proceedings, require the unsealing of the Debtor's Motion and accompanying appendix of exhibits. *See In re Food Mgmt. Group, LLC.,* 35 B.R.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Debtor's Motion.

2

543, 553 (Bankr. S.D.N.Y. 2007) ("There is a strong presumption and public policy in favor of public access to Court Records."); *In re Hemple*, 295 B.R. 200, 201 (Bankr. D. Vt. 2003) ("The Bankruptcy Code creates the presumption that all documents in bankruptcy cases are public documents."). Other than specific compensation-related information, the designated information is not commercially sensitive. Even if it were, it is for the most part information belonging to LBHI, not Barclays, as to which LBHI seeks no confidentiality and Barclays has no right to claim confidentiality.

I.   **ADDITIONAL FACTUAL BACKGROUND AND ARGUMENT**

   **A.   Barclays Has Misused the Confidentiality Order**

3.   On July 16, 2009, the Debtors, the Committee, the SIPA Trustee, the Examiner and Barclays each executed the Confidentiality Stipulation And Protective Order Between The Examiner, Debtors, Trustee, Committee And Barclays Capital Inc. (the "Confidentiality Order"). On July 30, 2009, the Court "so ordered" the Confidentiality Order.

4.   The Confidentiality Order authorizes Barclays to designate "in good faith" materials produced in discovery as "Confidential" or "Highly Confidential" to prevent the disclosure of select categories of competitively sensitive, proprietary or personal information. (*See* Confidentiality Order ¶¶ 2-3.) The Confidentiality Order expressly states that a party cannot designate as Confidential or Highly Confidential "information that was, prior to disclosure, rightfully in the possession or knowledge of the Examiner or Discovery Party." (*Id.* ¶¶ 2-3.) LBHI is defined as a "Discovery Party" in this regard. (*Id*.)

5.   Barclays has misused the provisions of the Confidentiality Order to seal virtually the entire record. To date, Barclays has produced in discovery a total of 361,955 bates-numbered pages, plus many more unnumbered pages. The vast majority of the documents were marked by

3

Barclays as Confidential or Highly Confidential.  Many of these designated documents are Lehman-authored documents created prior to the closing of the Sale Transaction.  By definition, documents created by Lehman during the week leading up to the closing of the Sale Transaction were "rightfully in the possession" of Lehman prior to disclosure, and therefore not subject to designation under the Confidentiality Order.  Apparently to seal as much of the record as it can, Barclays has disregarded the provisions of the Confidentiality Order and marked these materials as confidential anyway.

6. Barclays' misuse of the Confidentiality Order also carried over to deposition testimony.  LBHI was forced to file under seal virtually the entire transcript of every deposition because Barclays designated virtually every one of thousands of pages of testimony as Confidential or Highly Confidential.

7. For example, Barclays designated almost the entirety of Ian Lowitt's deposition transcript as either Confidential or Highly Confidential.  Most of this designated testimony, however, concerned Mr. Lowitt's activities, knowledge and/or impressions concerning or acquired during his time as a Lehman employee, prior to the September closing of the Sale Transaction and prior to Barclays' acquiring any Lehman assets.  Barclays' designations for Mr. Berkenfeld's deposition are equally overreaching.  Although the vast majority of his testimony involved his work and internal discussions while he was still employed at Lehman, Barclays marked almost every line as Confidential or Highly Confidential.  This is the case for virtually all the transcripts of former Lehman employees now working for Barclays. (*See* A.1-3, A.5, A.7, A.10-14, A.19, A.21, A.25-26, of the publicly filed appendix containing redacted transcripts).  As for the witnesses who worked at Barclays, Barclays has similarly marked almost every word

as Confidential or Highly Confidential. (*See* A.4, A.6, A.8, A.15-16, A.18, A.20, A.22-24, A.27-29, of the publicly filed appendix.)

8.  Barclays also has over-designated the exhibits marked at the depositions. Debtors and the other parties marked several hundred deposition exhibits. Only 5 of these were not marked by Barclays as either Confidential or Highly Confidential. Out of the 230 marked Confidential or Highly Confidential, only 12 were offers or letters of employment containing compensation figures (which LBHI agrees are properly considered confidential under these circumstances). The remainder are not competitively sensitive and should not have been designated by Barclays under the Confidentiality Order.

9.  Barclays' over-designations during discovery are a misuse of the Confidentiality Order which have hampered LBHI in filing its Rule 60 Motion and will continue to hamper LBHI as this case proceeds because of the restrictions on use of Highly Confidential or Confidential documents.[2] Although, where it was able to do so, LBHI used in the Debtor's Motion the "Lehman version" of a document marked by Barclays as Confidential or Highly Confidential when it produced the same document, Debtor nonetheless had to file under seal over one-third of the exhibits to its motion, and virtually the entirety of the deposition testimony.

### B. Debtors' Efforts to Resolve The Issue of Barclays' Over-Designations

10. Prior to filing the Debtor's Motion, LBHI attempted to resolve the issue of Barclays' excessive designations. On September 8, 2009, counsel for LBHI requested that Barclays review and reconsider its blanket designations of deposition testimony taken during discovery. (*See* Letter from William Hine to Christopher Green, dated September 8, 2009 and

---

[2] Barclays will not suffer the same restriction. Because it is the party that marked the documents as confidential, it can use them to interview witnesses, for example, while simultaneously preventing LBHI from doing so through its indiscriminate designations.

5

attached hereto as Ex. 1.)  LBHI wrote that "Barclays has no basis for insisting on confidential treatment for activities taking place within Lehman for which Lehman requests no such protection."  (*Id.* at 1.)

11.     In a transparently strategic response, Barclays refused to revisit its designations, and instead proposed that the Debtors do their work for them, i.e., review all of the deposition transcripts and "propose specific alternative designations" that Barclays would "be happy to consider."  (*See* Letter from Christopher Green to William Hine, dated September 10, 2009 and attached hereto as Ex. 2.)   The Debtors asked Barclays to reconsider its position.  (*See* Letter from William Hine to Christopher Green, dated September 11, 2009 and attached hereto as Ex. 3.)  Barclays has not done so, however.

12.     Prior to filing this motion, LBHI, the Committee and the Trustee again attempted to resolve the issue of Barclays' over-designations – in particular, with respect to the Rule 60(b) Motions.  On September 16, 2009, counsel for LBHI wrote counsel for Barclays requesting that Barclays reconsider its designations and specifically attaching a proposed set of redactions to Debtor's Motion.  (*See* Letter from Robert Gaffey to Hamish Hume, dated September 16, 2009 and attached hereto as Ex. 4 (proposed redactions filed under seal).)  On September 21, 2009, counsel for LBHI, the Committee and the Trustee had a conference call with counsel for Barclays.  Counsel for Barclays represented that Barclays would present the parties with a proposal concerning a new set of redacted papers at some point later this week, by no earlier than Friday September 25.   However, given the notice requirements under the applicable rules, the Committee filed its Motion to Unseal, and LBHI has joined therein, to provide the requisite notice prior to the October 15 hearing date.

### C. The Designated Materials Concern Information Belonging To Lehman That, In Any Event, Is Not Commercially Sensitive

13. Section 107(a) of the Bankruptcy Code specifically provides that, with limited exceptions, all papers "filed in a case under this title ... are public records and open to examination" by the public. 11 U.S.C. § 107(a). As noted by the Committee, Barclays may argue entitlement to relief under only two exceptions to the broad right of public access codified in Section 107(b):

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may-
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under [the Bankruptcy Code].

14. *Id.* § 107(b). The courts narrowly construe these exceptions. *See* 2 L. King, et al. *Collier on Bankruptcy* at ¶107 .03[1][b] (15th ed. Rev. 2007) (noting Section 107(b) exceptions are "construed narrowly, in light of the general public policy that court records should be open for public inspection"); *In re FiberMark, Inc.,* 330 B.R. 480, 506 (Bankr. D. Vt. 2005) (noting that courts have "zealously upheld the public's right to access and narrowly construed the exceptions [in Section 107(b)]). That information might "conceivably" or "possibly" fall within a protected category is not sufficient to seal documents. *See In re Gitto/Global Corp.*, 321 B.R. 367, 374 (Bankr. D. Mass. 2005). And "[i]f the [Section] 107(b) exceptions do not apply, the inquiry is complete and the Court's decision will favor public access." *In re Fiber Mark*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005) (citation omitted).

15. Barclays' designations go far beyond the scope of the exceptions permitted under Section 107. In the first instance, the designated information in the Rule 60 Motions concerning

7

negotiations and events prior to the September 22 closing of the Sale Transaction, whether commercially sensitive or not, belonged to the Lehman Sellers. The information concerns activities that took place within Lehman prior to and during the negotiation and closing of the Sale Transaction for which Lehman itself requests no such protection under the Confidentiality Order or the bankruptcy laws. Thus, Barclays has no basis for insisting on confidential treatment.

16. Furthermore, even if the information were not Lehman's, the designated information is not the type of commercial information that warrants protection under Section 107 of the Bankruptcy Code. The Second Circuit has held that section 107(b) applies only to commercial information "which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (citations omitted).

17. Here, the designated information does not fall within this category.[3] Setting aside the fact that the designated information has always been that of the Lehman Sellers, and not Barclays, the majority of the information at issue in the Rule 60 Motions concerns the negotiation and terms of the Sale Transaction during a period of a couple weeks in September 2008, over a year ago. It does *not* concern the ongoing or future commercial operations of any party and there could be no reasonable argument that it does.

---

[3] LBHI cannot conceive of any argument Barclays could make that the designated information rises to the level of a "trade secret" or scandalous or defamatory matter. For purposes of Section 107(b), scandalous or defamatory material has been defined as material that would cause "a reasonable person to alter their [sic] opinion of [a party] based on the statements therein, taking those statements in the context in which they appear." *In re Phar-Mor, Inc*., 191 B.R. at 679 (citation omitted). Information that is prejudicial or embarrassing is not necessarily scandalous or defamatory. *Id; see also In re Gitto/Global Corp*., 321 B.R. at 374.

18. The release of any of this information, including even that created by Barclays before and after the closing, will cause no competitive harm to Barclays. While it may be of historical interest (and it is most certainly relevant to this proceeding), Barclays can make no showing that the disclosure of this information would in any way assist other banks in competing with Barclays or that it would harm Barclays' ongoing business. For example, the valuations or the amounts of Lehman assets transferred to Barclays before and after the closing of the Sale Transaction is now stale information, and therefore not commercially sensitive or otherwise entitled to protection under Section 107(b). In any event, as noted above, much of this information came from the testimony of former employees of the Lehman Sellers while they worked for the Lehman Sellers.

**D.     Debtors' Are Willing To Continue To Treat Certain Information Concerning Compensation As Confidential And Highly Confidential**

19. There is some information that may be entitled to protection under the Confidentiality Order. LBHI agrees that, consistent with the Committee's position, information concerning compensation paid by Barclays to transferred employees from Lehman may continue to receive confidential treatment and should remain filed under seal. Accordingly, Debtors attach a proposed, redacted Rule 60 Motion (which has to be filed under seal for the time being) redacting references to individual and total compensation figures paid by Barclays to the transferred employees from Lehman. (*See* Ex. 4.)

**CONCLUSION**

20. For the foregoing reasons, Debtors respectfully join in the Committee's Motion to Unseal, and request that the Court enter an order (A) unsealing the Committee Motion, and authorizing the Committee to file a substantially unredacted form of the Committee Motion and its annexed exhibits consistent with the Proposed Unredacted Pleading annexed hereto, (B) unsealing the Debtor's Motion and authorizing the Debtor to file a substantially unredacted form of the Debtors' Motion and its annexed exhibits, (C) unsealing the Trustee's Motion and authorizing the Trustee to file a substantially unredacted form of the Trustee Motion and its annexed exhibits, and (D) awarding the parties such further, different relief as the Court deems appropriate.

Dated: September 24, 2009  
       New York, New York

By: /s/ William J. Hine

Robert W. Gaffey  
Jay Tambe  
William J. Hine  
Tracy V. Schaffer  
JONES DAY  
222 East 41st Street  
New York, New York 10017  
Telephone: (212) 326-3939  
Facsimile: (212) 755-7306

ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that the foregoing was served electronically by the Court's ECF system and by first class mail on those parties not registered for ECF pursuant to the rules of this court.

Dated: September 24, 2009          <u>s/ William J. Hine</u>
                     William J. Hine