UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                :
In re                                           :   Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :   08-13555 (JMP)
                                                :
                    Debtors.                    :   (Jointly Administered)
                                                :
                                                :
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE ESTABLISHING PROCEDURES FOR THE DEBTORS TO TRANSFER THEIR INTERESTS IN RESPECT OF RESIDENTIAL AND COMMERCIAL LOANS SUBJECT TO FORECLOSURE TO WHOLLY-OWNED NON-DEBTOR SUBSIDIARIES

Upon the motion, dated August 26, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure for the establishment of procedures for the Debtors to transfer their interests in respect of Real Estate Foreclosure Loans[1] to wholly-owned non-debtor subsidiaries, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the order entered February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the official committee of unsecured creditors appointed in these cases (the "Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that Debtors shall be, and hereby are, authorized to transfer Residential Foreclosure Loans (or other loans secured by residential real estate subject to foreclosure) or the related foreclosure judgments to non-debtor special purpose entities wholly owned directly or indirectly by LBHI or LCPI, as applicable ("Foreclosure SPEs"), in accordance with the following Procedures:

> a. Without further order of the Court or approval of or notice to any party, the Debtors may (i) transfer Residential Foreclosure Loans (or other loans secured by residential real estate subject to foreclosure) or the related foreclosure judgments to Foreclosure SPEs directly or indirectly wholly owned by the Debtor that owns the subject Residential Foreclosure Loans, including Lunar, as applicable, and (ii) where a Foreclosure SPE takes title to the Foreclosure Property through execution of a deed in lieu of foreclosure, assignment in lieu of foreclosure, or similar mechanism, grant releases to the borrowers, indemnitors,

and guarantors (to the extent the Debtors deem necessary) under such loans of all obligations with respect to such loans.

b.  To the extent the Debtors seek to sell one or more Residential Real Estate Loans and/or residential Foreclosure Properties held by a Foreclosure SPE, or for that matter an entire Foreclosure SPE holding Residential Real Estate Loans or residential Foreclosure Properties, in one or more related transactions to the same purchaser (a "<u>Residential Portfolio Sale</u>") the aggregate value or purchase price of which is less than $10,000,000.00, the Debtors may sell such Residential Real Estate Loans or residential Foreclosure Properties or Foreclosure SPEs holding Residential Real Estate Loans or residential Foreclosure Properties without further order of the Court or approval of any other party; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Residential Portfolio Sale following the closing of the Residential Portfolio Sale.

c.  With respect to a Residential Portfolio Sale where (1) the aggregate value or purchase price of the Residential Real Estate Loans and residential Foreclosure Properties included in such Residential Portfolio Sale is equal to or greater than $10,000,000.00 but less than $25,000,000.00, (2) the purchase price of the Residential Real Estate Loans and residential Foreclosure Properties included in such Residential Portfolio Sale is less than 50% of the aggregate value of the Residential Real Estate Loans and residential Foreclosure Properties included in such Residential Portfolio Sale, or (3) purchaser is a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the purchase of such loan, the Debtors will submit to the Creditors' Committee a summary of the proposed sale transaction identifying (i) the Residential Real Estate Loans and Foreclosure Properties included in the Residential Portfolio Sale, (ii) the aggregate face value of the Residential Real Estate Loans and Foreclosure Properties included in the Residential Portfolio Sale, (iii) the proposed purchaser of the Residential Real Estate Loans and Foreclosure Properties in the Residential Portfolio Sale, (iv) the purchase price, and (v) the material terms and conditions of the proposed Residential Portfolio Sale (the "<u>Residential Portfolio Sale Summary</u>").  The Creditors' Committee will be required to submit any objections to a Residential Portfolio Sale identified in a Residential Portfolio Sale Summary, so as to be received by the Debtors on or before ten (10) business days after service of such Residential Portfolio Sale Summary.  In the event that the Creditors' Committee objects to a Residential Portfolio Sale set forth in a Residential Portfolio Sale Summary, the Debtors may attempt to resolve the objection by furnishing the Creditors' Committee with additional information to demonstrate the reasonableness of the proposed Residential Portfolio Sale.  If the Debtors and the Creditors' Committee are unable to consensually resolve the objection, the Debtors may transfer the subject Residential Real Estate Loans or residential Foreclosure Properties from the Foreclosure SPE holding said Residential Real Estate Loans or residential Foreclosure Properties to LBHI or

LCPI, as applicable, and file a motion with the Court seeking approval of the Residential Portfolio Sale.

d.  For any Residential Portfolio Sale where the aggregate value or purchase price of the Residential Real Estate Loans and residential Foreclosure Properties included in such Residential Portfolio Sale is equal to or greater than $25,000,000.00, the Debtors will be required to file a motion with the Court seeking approval of the Residential Portfolio Sale and, to the extent deemed necessary by the Debtors, the Debtors may, without approval or notice, transfer the subject Residential Real Estate Loans or residential Foreclosure Properties to LBHI or LCPI, as applicable, in order to seek Court approval of the Residential Portfolio Sale.

e.  The Debtors ability to carry out the actions set forth in the foregoing procedures shall not override any applicable notice, consent or other rights that any third parties may have pursuant to agreements with the Debtors;

and it is further

ORDERED that Debtors shall be, and hereby are, authorized to transfer Commercial Foreclosure Loans (or other loans secured by commercial real estate subject to foreclosure) or the related foreclosure judgments to Foreclosure SPEs in accordance with the following procedures:

a.  Without further order of the Court or approval of or notice to any party, the Debtors may (i) transfer Commercial Foreclosure Loans (or other loans secured by commercial real estate subject to foreclosure) or the related foreclosure judgments to Foreclosure SPEs directly or indirectly wholly owned by the Debtor that owns the subject Commercial Foreclosure Loans, including Lunar, as applicable, and (ii) where a Foreclosure SPE takes title to the Foreclosure Property through execution of a deed in lieu of foreclosure, assignment in lieu of foreclosure, or similar mechanism, grant releases to the borrowers, indemnitors, and guarantors (to the extent the Debtors deem necessary) under such loans of all obligations with respect to such loans.

b.  To the extent the Debtors seek to sell a Foreclosure Property underlying a Commercial Foreclosure Loan ("Commercial Foreclosure Property") held by a Foreclosure SPE, or an entire Foreclosure SPE holding a Commercial Foreclosure Property (a "Commercial Property Sale"), if the Mark-to-Market Carrying Value[2]

---

[2] "Mark-to-Market Carrying Value" as used herein shall mean the mark-to-market carrying value on the Debtors' records of any Real Estate Loan securing the Commercial Foreclosure Property as of December 31, 2008, or as otherwise agreed to by the Creditors' Committee; provided however, if (i) the mark-to-market carrying value of any Real Estate Loan securing the Commercial Foreclosure Property on the Debtors' records as of December 31, 2008 is less than or equal to 50% of mark-to-market carrying value

of the Real Estate Loan securing the Commercial Foreclosure Property is less than $10,000,000.00, the Debtors may sell such Commercial Foreclosure Property or Foreclosure SPE holding a Commercial Foreclosure Property without further order of the Court or approval of any other party; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Commercial Property Sale following the closing of the Commercial Property Sale.

c. If the Commercial Property Sale involves the sale of Commercial Foreclosure Property secured by a Real Estate Loan and (1) the Mark-to-Market Carrying Value of the Real Estate Loan securing the Commercial Foreclosure Property is equal to or greater than $10,000,000.00 but less than $25,000,000.00, (2) the purchase price of Commercial Foreclosure Property secured by a Real Estate Loan is less than 50% of the Mark-to-Market Carrying Value of the Real Estate Loan securing the Commercial Foreclosure Property, or (3) the purchaser is a person employed by the Debtors at any time on or after September 15, 2007, or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the purchase of such loan or property, the Debtors will submit to the Creditors' Committee a summary of the proposed sale transaction identifying (i) the Commercial Foreclosure Property, (ii) the Mark-to-Market Carrying Value of the Real Estate Loan underlying the Commercial Foreclosure Property, (iii) the proposed purchaser of the Commercial Foreclosure Property, (iv) the purchase price, and (v) the material terms and conditions of the proposed Commercial Property Sale (the "Commercial Property Sale Summary"). The Creditors' Committee will be required to submit any objections to a Commercial Property Sale identified in a Commercial Property Sale Summary, so as to be received by the Debtors on or before ten (10) business days after service of such Commercial Property Sale Summary. In the event that the Creditors' Committee objects to a Commercial Property Sale set forth in a Commercial Property Sale Summary, the Debtors may attempt to resolve the objection by furnishing the Creditors' Committee with additional information to demonstrate the reasonableness of the proposed Commercial Property Sale. If the Debtors and the Creditors' Committee are unable to consensually resolve the objection, the Debtors may transfer the subject Commercial Foreclosure Property from the Foreclosure SPE holding said Commercial Foreclosure Property to LBHI or LCPI, as applicable, and file a motion with the Court seeking approval of the Commercial Property Sale.

d. For any Commercial Property Sale where the Mark-to-Market Carrying Value of the Real Estate Loan securing the Commercial Foreclosure Property is equal to or greater than $25,000,000.00, the Debtors will be required to file a

---

of such Real Estate Loan securing the Commercial Foreclosure Property on the Debtors' records as of September 17, 2008, and (ii) the mark-to-market carrying value of any Real Estate Loan is not otherwise agreed to by the Creditors' Committee, the Mark-to-Market Carrying Value for the purposes of this Order shall be the mark-to-market carrying value of such Real Estate Loan securing the Commercial Foreclosure Property on the Debtors' records as of September 17, 2008.

motion with the Court seeking approval of the Commercial Property Sale and, to the extent deemed necessary by the Debtors, the Debtors may, without further approval or notice, transfer the subject Commercial Foreclosure Property to LBHI or LCPI, as applicable, in order to seek Court approval of the Commercial Property Sale.

e. The Debtors ability to carry out the actions set forth in the foregoing procedures shall not override any applicable notice, consent or other rights that any third parties may have pursuant to agreements with the Debtors;

and it is further

ORDERED that, as part of the procedures set forth herein, the Debtors will file with the Court, on a quarterly basis beginning not later than 105 calendar days after entry of this Order, reports of all Commercial Foreclosure Loan transfers to Foreclosure SPEs that have occurred during the prior three calendar months pursuant to the authority granted in this Order. Such reports will set forth (x) the aggregate number of Commercial Foreclosure Loans transferred to Foreclosure SPEs in the prior three calendar months and (y) the Mark-to-Market Carrying Value, in the aggregate, of all such Commercial Foreclosure Loans transferred to Foreclosure SPEs in the prior three calendar months, in the following format:

| Commercial Foreclosure Loan Transfer Report ||
| --- | --- |
| Number of Commercial Foreclosure Loans Transfers to Foreclosure SPEs in Last Three Months | Aggregate Mark-to-Market Carrying Value of all Commercial Foreclosure Loans Transferred to Foreclosure SPEs in Last Three Months |
| _____ | $_____ |

; and it is further

ORDERED that with respect to all Real Estate Foreclosure Loan transfers to Foreclosure SPEs carried out in accordance with the procedures set forth above, the Debtors will

provide the Committee on a quarterly basis a report of such transfers, identifying the Real Estate Foreclosure Loans or related foreclosure judgments that have been transferred during the quarterly period, the Foreclosure SPEs to which such Real Estate Foreclosure Loans have been transferred, and the disposition, if any, of the Real Estate Foreclosure Loans and/or the Foreclosure Property underlying such Real Estate Foreclosure Loans; and it is further

ORDERED that the Debtors are authorized to execute such documents or other instruments and carry out all other actions as may be necessary to transfer Real Estate Foreclosure Loans to Foreclosure SPEs and dispose of Real Estate Foreclosure Loans and Foreclosure Property, including through Commercial Property Sales and Residential Portfolio Sales, in accordance with this Order; and it is further

ORDERED that nothing in this Order authorizes the transfer of any collateral for securities guaranteed by the Government National Mortgage Association ("GNMA"), including, but not limited to, mortgage loans or related foreclosure judgments or deeds or assignments in lieu of foreclosure, or any Participations or Other Interests as such terms are defined in the guaranty agreements between LBHI and GNMA; and it is further

ORDERED that nothing in this Order shall impair, diminish or otherwise affect any right, title or interest (including, without limitation, any security interest, lien, participation or sub-participation) of an entity in, to or in respect of a Real Estate Loan and any such right, title or interest shall (a) not be impaired by any transfer of such Real Estate Loan or any related foreclosure judgment to a Foreclosure SPE, and (b) attach with equivalent scope, priority and validity to any proceeds of such Real Estate Loan, including, without limitation, any Foreclosure Property and proceeds of sale or other disposition of such Foreclosure Property or the Foreclosure SPE holding such Foreclosure Property; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: New York, New York
September 24, 2009

    _s/ James M. Peck_
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE