K&L GATES LLP
Robert N. Michaelson, Esq.
Eunice Rim, Esq.
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Attorneys for the Tobacco Settlement
Financing Corporation

Hearing Date: October 14, 2009 at 10:00 a.m.
Objection Deadline: October 8, 2009

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re                                              :    Chapter 11
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :    Case No. 08-13555 (JMP)
                                                   :
                                                   :    (Jointly Administered)
                        Debtors.                   :
                                                   :
------------------------------------------------------------------x

## NOTICE OF MOTION OF THE TOBACCO SETTLEMENT FINANCING CORPORATION FOR AN ORDER (A) COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR REJECT EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365(d)(2) OR, ALTERNATIVELY, (B) MODIFYING THE AUTOMATIC STAY TO ALLOW THE TOBACCO SETTLEMENT FINANCING CORPORATION TO TERMINATE THE AGREEMENTS

**PLEASE TAKE NOTICE** that a hearing on the annexed Motion of the Tobacco

Settlement Financing Corporation for an Order (A) Compelling Lehman Brothers Special

Financing Inc. to Assume or Reject Executory Contracts Pursuant to 11 U.S.C. § 365(d)(2) or,

Alternatively, (B) Modifying the Automatic Stay to Allow the Tobacco Settlement Financing

Corporation to Termination the Agreements (the "Motion"), will be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 (the

"Bankruptcy Court") on October 14, 2009 at 10:00 a.m. (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to the Motion must be: (a) in writing, (b) state the name of the objecting party, (c) state with particularity the reasons for such objection, (d) be filed with the Clerk of the Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, with a courtesy copy to the Chambers of the Honorable James M. Peck and (e) served upon the undersigned counsel for the Movant so as to be received no later than October 8, 2009 (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to the Motion must be filed: (a) through the Bankruptcy Court's electronic filing system; or (b) if an objecting party is unable to file an objection electronically, such party must submit the objection in PDF format on a diskette in an envelope with (i) the case name, (ii) the case number, (iii) type and title of document, (iv) document number of the document to which the objection refers and (iv) the file name, on the outside of the envelope; or (c) if an objecting party is unable to electronically file its objection or provide the objection in PDF format, such party shall submit such objection on a diskette in Word, Wordperfect or DOS text (ASCII) format to the Clerk of the Bankruptcy Court with a label containing the information indicated in section (b) of this paragraph. An objection filed by a party without legal representation shall comply with section (b) or (c) of this paragraph.

**PLEASE TAKE FURTHER NOTICE** that, if no objections to the Motion are timely filed by the Objection Deadline, the Court may grant the relief requested in the Motion without a hearing.

**PLEASE TAKE FURTHER NOTICE** that the Hearing to consider the Motion may be adjourned from time to time, without further notice to the parties in interest, other than the announcement of such adjourned dates and times.

Dated: New York, New York
  September 25, 2009

Respectfully submitted,

K&L GATES LLP

By: _____
  Robert N. Michaelson
  A Member of the Firm
599 Lexington Avenue
New York, NY 10022
(212) 536-3900 (telephone)
(212) 536-3901 (facsimile)

Attorneys for the Tobacco Settlement Financing
Corporation

K&L GATES LLP
Robert N. Michaelson, Esq.
Eunice Rim, Esq.
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Attorneys for the Tobacco Settlement
Financing Corporation

Hearing Date: October 14, 2009 at 10:00 a.m.
Objection Deadline: October 8, 2009

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,             :        Case No. 08-13555 (JMP)
                                                    :
                                                    :        (Jointly Administered)
                        Debtors.                    :
                                                    :
-----------------------------------------------------------------x

## MOTION OF THE TOBACCO SETTLEMENT FINANCING CORPORATION FOR AN ORDER (A) COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR REJECT EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365(d)(2) OR, ALTERNATIVELY, (B) MODIFYING THE AUTOMATIC STAY TO ALLOW THE TOBACCO SETTLEMENT FINANCING CORPORATION TO TERMINATE THE AGREEMENTS

The Tobacco Settlement Financing Corporation ("TSF") hereby moves for an Order (a)

compelling Lehman Brothers Special Financing Inc. ("LBSF"), a debtor-in-possession in the

above-captioned, jointly administered cases, to assume or reject two executory contracts pursuant

to 11 USC § 352(d)(2) or, alternatively, (b) modifying the automatic stay to allow TSF to

terminate the agreements (the "Motion"), and in support thereof respectfully states as follows:

### INTRODUCTION

     1.    TSF, as issuer (the "Issuer"), the Bank of New York ("BONY"), as trustee

(the "Trustee") and LBSF, are parties to two Reserve Fund Agreements, one of which is dated as

NY-699301 v7

of June 19, 2003 (the "June 2003 RFA"), and the other of which is dated December 2, 2003 (the "Dec. 2003 RFA" and together with the June 2003 RFA, the "RFAs").

2.    The RFAs serve as the investment vehicles through which TSF invests certain reserve funds (together, the "Reserve Funds") that serve as a source of backup payment for debt service owed on two series of tobacco settlement bonds that the TSF issued in 2003.

3.    The RFAs are executory contracts that, among other things, require LBSF to deliver qualifying securities to TSF on a semi-annual basis, in exchange for payment of purchase prices that are constructed to ensure that TSF receives guaranteed rates of return on its investments.

4.    LBSF defaulted under section 7.3(a) of both RFAs post-petition by failing to deliver qualifying securities to TSF on November 28, 2008 and May 29, 2009 as required under each RFA. As a result of LBSF's failure to timely deliver qualifying securities, TSF was required to invest the Reserve Funds in replacement securities, at a rate of return that was lower than the rates guaranteed under the RFAs.

5.    LBSF also defaulted under sections 2.7(a) and 7.3(f) of both RFAs because Lehman Brothers Holdings Inc.'s ("LBHI") long term senior unsecured debt ratings had been downgraded on or about September 15, 2008[1] and LBSF failed to notify TSF of such downgrade within three (3) business days of such downgrade. Additionally, LBSF defaulted under section 7.3(d) of both RFAs by filing a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), on October 3, 2008 (the "Petition Date").

---

[1] LBHI guaranteed LBSF's obligations under the TSF, and the RFAs provide various remedies TSF can pursue upon the occurrence of such a downgrade.

6.    LBSF no longer conducts the type of business contemplated under the RFAs, and, therefore, LBSF cannot cure its prior failure to deliver securities and other defaults, or perform its ongoing obligations to TSF.  Additionally, the market for agreements like the RFAs has changed dramatically since 2003, and it is highly unlikely that LBSF could find a third party willing to assume LBSF's rights and obligations under these RFAs.  Since LBSF cannot perform under either RFA or assign them to a third party for value, LBSF has no real choice but to reject the agreements.

7.    Under the RFAs, the rights and obligations of each party upon termination are highly sensitive to interest rate fluctuations.  Accordingly, at any given time, LBSF may be "in" or "out of the money," depending on whether interest rates exceed or fall below the rate guaranteed in the RFAs.  Under present market conditions, LBSF is "out of the money" and LBSF has been "out of the money" under both RFAs at all times since the Petition Date.  If, however, the RFAs are not terminated or rejected immediately, LBSF could leave TSF 'in limbo,' waiting until interest rates improve to time its inevitable rejection at a point when it is "in the money."[2]

8.    TSF seeks an order compelling LBSF to assume or reject the RFAs immediately to avoid this inequitable result.  Alternatively, TSF seeks relief from the automatic stay to terminate the RFAs immediately.  Relief from the stay is required because LBSF lacks equity in the RFAs, the RFAs provide no value to the estate, and the RFAs are not necessary for LBSF's reorganization.

---

[2] Since they provide for the purchase and sale of securities, each RFA is "securities contract" within the meaning of 11 U.S.C. § 741(7). As securities contracts, the damages flowing from the RFAs' rejection or termination will be calculated as of the date of such rejection or termination pursuant to 11 U.S.C. § 562(a).

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (G) and (O).

10.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

11.    On September 15, 2008 (the "LBHI Petition Date"), and periodically thereafter, LBHI and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. LBSF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008.

12.    Since their respective Petition Dates, the Debtors have operated their businesses and managed their property as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

13.    On September 17, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors in these chapter 11 cases.

14.    On January 20, 2009, this Court entered an Order approving the appointment of an examiner in these chapter 11 cases.

**The Bonds**

15.    TSF is a public benefit corporation of the State of New York. TSF was established in 2003 as a subsidiary of the State of New York Municipal Bond Bank Agency, separate and apart from the State of New York, to purchase all, or a portion of, New York State's share of tobacco settlement revenues. The first series of tobacco settlement bonds, the $2,310,705,000.00 Asset-Backed Revenue Bonds, Series 2003A (State Contingency Contract Secured) (the "2003A Bonds") were issued pursuant to that certain Indenture dated as of June 1,

2003 (the "June 2003 Indenture") by and between, TSF and BONY, as trustee.[3] The second

series of tobacco settlement bonds, the $2,240,415,000 Asset-Backed Revenue bonds, Series

2003B (State Contingency Contract Secured) (the "2003B Bonds" and together with the 2003A

Bonds, the "Bonds") were issued pursuant to that certain Indenture dated as of December 1, 2003

(the "Dec. 2003 Indenture" and together with the June 2003 Indenture, the "Indentures") by and

between TSF and BONY, as trustee.[4]

16.    Among other things, the Indentures required the Trustee to establish and

maintain the Reserve Funds to serve as a source of backup payment for TSF's debt service

obligations on the Bonds.  The reserve fund for the Series 2003-A Bonds was established from

the proceeds of the issuance of the Series 2003-A Bonds in an amount equal to $227,545,572.00.

See D'Agostino Decl. at ¶ 3.  The reserve fund for the Series 2003B Bonds was established from

the proceeds of the issuance of the Series 2003B Bonds in an amount equal to $221,582,344.00.

See D'Agostino Decl. at ¶ 3.

**The RFAs and LBSF's Defaults Thereunder**

17.    The RFAs are the investment vehicles by which TSF invests the Reserve

Funds through the periodic purchase of qualifying securities from LBSF.[5]  See id. at ¶ 6;

Declaration of Peter Shapiro (the "Shapiro Decl."), filed simultaneously herewith, at ¶ 7.

Specifically, the RFAs require LBSF to deliver "Qualified Securities" to the Trustee on a semi-

annual basis, in exchange for which TSF is obligated to pay purchase prices that ensure

guaranteed rates of return on its investments of 3.722% under the June 2003 RFA and 4.687%

---

[3] A copy of the June 2003 Indenture is attached as Exhibit A to the Declaration of Genevieve D'Agostino (the "D'Agostino Decl.") filed simultaneously herewith.

[4] A copy of the December 2003 Indenture is attached as Exhibit B to the D'Agostino Decl. filed simultaneously herewith.

[5] A copy of the RFAs are attached as Exhibits C and D to the D'Agostino Decl.

under the Dec. 2003 RFA. See id. at ¶ 6; Shapiro Decl. at ¶ 7.

18.    The RFAs provide that a "Lehman Event of Default" shall occur if, among other things, (i) LBSF fails to deliver qualifying securities to the Trustee on a designated delivery date, and such failure is not cured within five (5) Business Days of written notice to LBSF thereof, see D'Agostino Decl., Exs. C and D at § 7.3(a) or (ii) LBSF becomes "Insolvent," which is defined to include the filing of a voluntary petition for relief under the Bankruptcy Code, see id. at § 7.3(d). The RFAs also require LBSF to notify TSF or the Trustee in writing if LBHI's long-term credit rating is downgraded. Id. at §§ 2.7(a) and 7.6(f). If any of these events occur and are not remedied, the RFAs authorize TSF to terminate the agreements. Id. at § 7.6.

19.    LBSF committed post-petition defaults by failing to deliver Qualified Securities to the Trustee on November 28, 2008 and May 29, 2009, which LBSF was required to do under both RFAs. Id. at ¶ 8.

20.    On or about September 15, 2008, LBHI's long-term credit rating was downgraded, see Declaration of Eunice Rim, filed simultaneously herewith, at Ex. A, and LBSF failed to notify TSF or the Trustee of this fact in writing. See D'Agostino Decl. at ¶ 7.

21.    On September 14, 2009, TSF hand delivered to LBSF a written notice of LBSF's failure to timely deliver securities on November 28, 2008 and May 29, 2009 under the June 2003 RFA. See D'Agostino Decl. at ¶ 9. On the same day, TSF also hand delivered to LBSF a written notice of LBSF's failure to timely deliver securities on November 28, 2008 and May 29, 2009 under the Dec. 2003 RFA. Id. at ¶ 9. LBSF did not cure its failure to deliver securities under either RFA within five (5) business days of TSF's notices.[6] Id. at ¶ 9. TSF also

---

[6] A copy of TSF's September 14, 2009 notices are attached as Exhibit E to the D'Agostino Decl.

notified LBSF that a Lehman Event of Default had occurred on October 3, 2008 under both

RFAs, when LBSF filed its voluntary bankruptcy petition.[7] Id. at ¶ 9, Ex. E.

    22.  LBSF no longer conducts the type of business contemplated by the RFAs

and, therefore, LBSF is unable to perform its ongoing obligations to TSF and the Trustee under

the agreements.

**TSF's Damages**

    23.  Upon LBSF's failure to deliver qualifying securities on November 28,

2008 and May 29, 2009, TSF instructed the Trustee to invest the Reserve Funds in replacement

securities pursuant to the provisions of the RFAs. See id. at ¶ 10. The replacement securities

provide lower rates of return than the 3.722% and the 4.687% guaranteed rates under the June

2003 RFA and the Dec. 2003 RFA respectively. Id. at ¶¶ 11-12. The RFAs provide that, if TSF

is required to invest in replacement securities, LBSF is required to pay TSF for any lost interest.

Id., Exs. C and D at §§ 7.6(a) and 7.7(b).

    24.  The RFAs also contain provisions for calculating amounts due from one

party to another if or when the agreements are terminated. The rights and obligations at

termination are highly dependent on then prevailing market interest rates. See Shapiro Decl. at ¶

8. Accordingly, at any given point in time, LBSF may either be "in" or "out of the money"

under the RFAs. See id. To say that a party is "out of the money" at a particular time effectively

means that if the RFAs were terminated at that time, then a termination payment would be owed

---

[7] TSF issued notices of default with respect to LBSF's bankruptcy filing because TSF maintains that, as the customer of a financial institution that is its custodian (i.e. the Trustee), it is a "financial institution" who falls within the safe harbor provisions of 11 U.S.C. § 555. While TSF maintains that Section 555 of the Bankruptcy Code authorizes TSF to terminate the RFAs based on LBSF's bankruptcy filing without first seeking relief from the automatic stay, TSF files the within motion for stay relief out of an abundance of caution and because (i) other, independent post-petition defaults exist that warrant a lifting of the stay to allow TSF to terminate the RFAs and (ii) the Debtors cannot provide adequte assurance of future performance under the RFAs.

to the counterparty. Id at ¶ 8. Presently, LBSF is "out of the money" under both RFAs and has

been "out of the money" under both RFAs at all times since the Petition Date. See id. at ¶¶ 9-10.

**LBSF Cannot Assign the RFAs to a Third Party**

      25.     The market for tobacco settlement backed bonds and related agreements,

such as the RFAs, has changed since 2003. Interest rates on tobacco settlement backed bonds

have increased sharply, while general market rates have declined, and the creditworthiness of

tobacco settlement backed bonds has changed adversely. As a result of these changes in the

market, it is highly improbable that any market participant would be willing to assume LBSF's

obligations under either of the RFAs. See id. at ¶ 11.

## RELIEF REQUESTED

      26.     By this Motion, TSF seeks entry of an order compelling LBSF to assume

or reject the RFAs immediately pursuant to 11 U.S.C. § 365(d)(2). In the alternative, TSF seeks

an order modifying the automatic stay pursuant to 11 U.S.C. § 362(d) to authorize TSF to

terminate the RFAs for cause and because LBSF lacks equity in the agreements and the RFAs

are not necessary for LBSF's reorganization.

## BASIS FOR THE RELIEF REQUESTED

**I.     The Court Should Compel LBSF to Assume or Reject the RFAs Immediately.**

      27.     The RFAs are clearly executory contracts because the RFAs have not

expired and material performance remains on the part of both TSF and LBSF under the RFAs

until the year 2022. LBSF is required to deliver, or to cause a qualifying dealer to deliver,

qualifying securities to TSF on a semi annual basis on certain dates set forth in the RFAs and

TSF is required to pay LBSF, or the qualifying dealer, the purchase price of such securities

established in the RFAs upon delivery.

28.    Section 365(d)(2) of the Bankruptcy Codes governs the time within which

a debtor-in-possession must assume or reject an executory contract and states:

> [i]n a case under chapter 9, 11, 12 or 13 of this title, the trustee may assume
> or reject an executory contract or unexpired lease of residential real property
> or of personal property of the debtor at any time before the confirmation of a
> plan but the court, on the request of any party to such contract or lease, may
> order the trustee to determine within a specified period of time whether to
> assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

29.    A counterparty's ability to shorten a debtor's time to assume or reject a

contract "prevent[s] parties in contractual or lease relationships with [a] debtor from being left in

doubt concerning their status vis-à-vis the estate." House Report No. 95-595, 95th Cong., 1st

Sess. 348-9 (1977). The ability to shorten a debtor's time to assume or reject a contract also

protects a counterparty who otherwise would be "subjected to the fluctuations of market prices

for the goods at issue in their contracts[.]" Taunton Municipal Lighting Plant v. Enron Corp. (In

re Enron Corp.), 354 B.R. 652, 660 (S.D.N.Y. 2006).

30.    Courts typically evaluate the following non-exclusive factors (to the extent

relevant to the facts and circumstances presented) when determining whether to shorten a

debtor's time to assume or reject an executory contract:

(a)    the nature of the interests at stake;

(b)    the balance of hurt to the litigants;

(c)    the 'good to be achieved';

(d)    the safeguards afforded to the litigants;

(e)    whether the action to be taken is so in derogation of Congress'
scheme that the court may be said to be arbitrary[;]

(f)    the debtor's failure or ability to satisfy post-petition obligations;

(g)    the damage that the non-debtor will suffer beyond compensation
available under the Bankruptcy Code;

(h)     the importance of the contract to the debtor's business and reorganization;

(i)     whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan;

(j)     whether there is a need for judicial determination as to whether an executory contract exists;

(k)     whether exclusivity has been terminated; and

(l)     above all, the purpose of Chapter 11, to permit successful rehabilitation of debtors.

In re Adelphia Communications Corp., 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003) (internal quotations and citations omitted).

31.    Application of the relevant foregoing factors clearly demonstrates that LBSF should be compelled to assume or reject the RFAs immediately. First, as detailed above, LBSF is incapable of curing its defaults or performing its ongoing obligations under the RFAs, making the contracts irrelevant to LBSF's business and reorganization, and leaving LBSF with no legitimate stake in the agreements. See factors (a), (f), (h) and (l), supra.

32.    Second, due to market conditions, LBSF will not be able to find suitable assignees for the RFAs, which leads to the inescapable conclusion that LBSF must eventually reject the agreements. The only reason for LBSF to delay that decision is to play the market at TSF's expense and risk, hoping that interest rates move in its favor so it may time its rejection at a point when LBSF is "in the money." As one court has noted, the ability to shorten a debtor's time to assume or reject an executory contract is the safeguard that exists to prevent a counterparty from the harm associated with the risk of market fluctuations. See Enron, 354 B.R. at 660.

33.    Finally, given LBSF's inevitable need to reject the agreements, LBSF does not need additional time to evaluate whether the RFAs are valuable to the estate or necessary for a reorganization.  See factors (i) and (j), supra.

34.    In light of these considerations, the Court should compel LBSF to reject the RFAs immediately to avoid placing TSF in the unjustifiable position of underwriting LBSF's ability to 'play the waiting game' to see whether interest rates move in LBSF's favor.

II.    **The Automatic Stay Should be Lifted to Allow TSF to Terminate the RFA.**

A.    **The Court must lift the stay pursuant to 11 U.S.C. § 362(d)(2).**

35.    11 U.S.C. § 362(d)(2) provides:

> [O]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
>
>                     . . .
>
> (2)    with respect to a stay of an act against property under subsection (a) of this section, if —
>
> (A)    the debtor does not have an equity in such property; and
>
> (B)    such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

36.    Pursuant to 11 U.S.C. § 362(g), TSF has the burden of proof on the issue of LBSF's equity in the RFAs, and LBSF has the burden of proof on all other issues.  11 U.S.C. § 362(d)(2).

37.    "[T]he language of section 362(d)(2) is mandatory, [and] when both factors necessary for relief . . . are met, the court shall grant relief." In re Indian Palms Assocs.,

61 F.3d 197, 208 (3d Cir. 1995); accord Matter of East-West Assocs., 106 B.R. 767, 774 (S.D.N.Y. 1989).

38.    LBSF clearly has no equity in the RFAs.  As detailed above, LBSF is "out of the money" under the agreements, and LBSF has no ability to cure its defaults or perform its ongoing obligations thereunder.  Moreover, due to market conditions, LBSF is unable to assume and assign the RFAs to a third party, which reinforces the fact that the agreements have no value to the estate.

39.    Although TSF is not required to prove that the RFAs are not necessary to an effective reorganization, see 11 U.S.C. § 362(g), LBSF no longer conducts the business contemplated by the agreements, and it does not have the ability to assign the agreements to a third party for value.  Accordingly, the RFAs are wholly unnecessary to LBSF's reorganization.

40.    Because LBSF has no equity in the RFAs, and the RFAs are not necessary to LBSF's reorganization, section 362(d)(2) requires that the Court modify the automatic stay and allow TSF to terminate the RFAs.

**B.    Cause exists to modify the automatic stay.**

41.    Pursuant to 11 U.S.C. § 362(d)(1), the Court may also grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not define "cause" to modify the automatic stay, which is considered to be "a broad and flexible concept." In re M.J. & K. Co., 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993).  Accordingly, the determination of whether sufficient cause exists to grant stay relief must be addressed on a case by case basis. Id. at 591; Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142-43 (2d Cir. 1999).

42.    The question of whether to lift the stay for cause is left to the Court's discretion.  Sonnax. Indus., Inc. v. Tri Component Prods. Coin. (In re Sonnax Indus. Inc.), 907

F.2d 1280, 1286 (2d Cir. 1990). Courts have broad discretion in crafting relief from the stay. In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994); Schwartz v. United States (In re Schwartz), 954 F.2d 569, 572 (9th Cir. 1992). The automatic stay should be modified "when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." Int'l Bus. Machs. v. Fernstrom Storage & Van Co., 938 F.2d 731, 735 (7th Cir. 1991). Factors to be considered in making a determination of cause include whether there is a likelihood of great prejudice to the debtor or its estate and whether continuation of the stay creates a hardship to the nondebtor party that outweighs the hardship to the debtor. Id.

43.     Ample cause exists to lift the stay and allow TSF to terminate the RFAs. Given LBSF's inability to perform under the agreements and the insolvency of LBHI, its guarantor, LBSF cannot provide any, let alone adequate, assurance that TSF's rights and interests will be protected if the stay is not lifted. Moreover, if the RFAs are not terminated, TSF will continue to be in the untenable position of having lost its guaranteed rates of return (i.e. the benefit of its bargain under the RFAs), while continuing the bear all of the risks associated with interest rate fluctuations.

44.     Conversely, LBSF will not be prejudiced at all if the stay is lifted. LBSF cannot perform under the RFAs, nor can LBSF assume and assign the RFAs to a third party for value. Since LBSF does not have a right to hold the RFAs open indefinitely solely to play the market at TSF's expense, see, e.g., Enron, 354 B.R. at 660, LBSF will not suffer any hardship if the RFAs are terminated. Accordingly, the Court should lift the automatic stay.

45.     Given the ongoing market risk it faces, TSF also requests that any Order the Court may enter granting relief from the automatic stay be immediately effective and not subject to the stay of enforcement provisions of Bankruptcy Rule 4001(a)(3).

## NOTICE

46.     Notice of the Motion has been provided to: (a) the Debtors' counsel, (b) counsel to the Official Committee of Unsecured Creditors, (c) the United States Trustee, (d) any person or entity with a particularized interest in the subject matter of this Motion and (e) all persons and entities that have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002 and the Order Implementing Certain Notice and Case Management Procedures dated September 22, 2008, as required by the Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures entered on February 13, 2009.   TSF respectfully submits that such notice is good and sufficient under the circumstances, and that no other or further notice is required.

## REQUEST FOR WAIVER OF THE
## MEMORANDUM OF LAW REQUIREMENT

47.     The legal bases for the relief requested in the Motion are set forth herein and, accordingly, TSF respectfully requests that the Court waive the memorandum of law requirement imposed by Local Rule 9013-1(b).

## NO PRIOR REQUEST

17.     TSF has not previously requested the relief requested herein from this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WHEREFORE, TSF respectfully requests the Court enter an Order

(a) compelling LBSF to assume or reject both RFAs immediately or, alternatively,

(b) modifying the automatic stay to the extent necessary to permit TSF to terminate both RFAs,

(c) waiving the stay of enforcement provisions of Bankruptcy Rule 4001(a)(3),

and (d) granting to TSF such other and further relief as the Court deems just and proper.

Dated: New York, New York
      September 25, 2009

Respectfully submitted,

K&L GATES LLP

By: _____
    Robert N. Michaelson
    A Member of the Firm
599 Lexington Avenue
New York, NY 10022
(212) 536-3900 (telephone)
(212) 536-3901 (facsimile)

Attorneys for the Tobacco Settlement Financing
Corporation