# **EXHIBIT B**

# INDENTURE

### by and between

## TOBACCO SETTLEMENT FINANCING CORPORATION

### and

## THE BANK OF NEW YORK, as Trustee

---

### Dated as of December 1, 2003

---

Securing

## ASSET-BACKED REVENUE BONDS
## (STATE CONTINGENCY CONTRACT SECURED)

434408.8 026563 IND

# INDENTURE

This **INDENTURE** (the "Indenture") is entered into as of December 1, 2003, by and between the **TOBACCO SETTLEMENT FINANCING CORPORATION** (the "Corporation"), a public benefit corporation of the State of New York (the "State"), established as a subsidiary of the State of New York Municipal Bond Bank Agency, separate and apart from the State, and The Bank of New York, as Trustee, a banking corporation organized and existing under the laws of the State of New York (the "Trustee").

The Corporation recites and represents to the Trustee for the benefit of the Beneficiaries that it has authorized this Indenture.

This Indenture provides for the following transactions:

(a)     the Corporation's issuance of the Bonds, including specifically the Series 2003B Bonds; and

(b)     the Corporation's assignment and pledge to the Trustee, in trust for the benefit and security of the Beneficiaries, of the revenues, Pledged Revenues, Funds and Accounts (other than the Rebate Account) and assets thereof to be received and held hereunder, the rights to receive the same, and the other rights assigned and pledged herein, to the extent specified in this Indenture.

## WITNESSETH

In consideration of the mutual agreements contained in this Indenture and other good and valuable consideration, the receipt of which is hereby acknowledged, the Corporation and the Trustee agree as set forth herein for their own benefit and for the benefit of the Bondholders and, as applicable, other Beneficiaries, as aforesaid.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

### Section 1.01.   Definitions.

In addition to terms defined in the Agreement or elsewhere herein, the following terms have the following meanings in this Indenture, unless the context otherwise requires:

**"Accounts"** means the Pledged Revenues Account, the Operating Account, the Debt Service Account, the Debt Service Reserve Account, the Supplemental Account, the Costs of Issuance Account, the Rebate Account and any accounts established by Series Supplement, all of which shall be established and held by the Trustee.

434408.8 026563 IND

"**Accreted Value**" means, with respect to any Bond as to which interest accretes and is not paid currently and as of any particular date of computation, the accreted value of such Bond for such date as specified by the Series Supplement relating to such Bond.

"**Act**" means the State's Tobacco Settlement Financing Corporation Act, Part D3 of chapter 62 of the laws of 2003, as the same may be amended from time to time.

"**Ancillary Contracts**" means the "ancillary bond facilities", as defined in the Act, constituting contracts entered into by the Corporation pursuant to the provisions of the related Series Supplement or other Supplemental Indenture, for its benefit or the benefit of any of the Beneficiaries, to facilitate the issuance, sale, resale, purchase, repurchase or payment of Bonds, including any bond insurance, letters of credit and liquidity facilities, investment agreements and forward delivery agreements with respect to Eligible Investments, but excluding Swap Contracts.

"**Auction Bonds**" means the subseries of Bonds of a Series so designated in the related Series Supplement.

"**Authorized Denomination**" shall have the meaning set forth therefor in the applicable Series Supplement.

"**Authorized Officer**" means: (i) in the case of the Corporation, the Chairman, Vice Chairman, Executive Director, any Senior Vice President, their successors in office, and any other person authorized to act hereunder by appropriate Written Notice to the Trustee, and (ii) in the case of the Trustee, any officer assigned to the Corporate Trust Office, including any managing director, director, vice president, assistant vice president, associate, assistant secretary, authorized signer or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and having direct responsibility for the administration of this Indenture, and also, with respect to a particular matter, any other officer, to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

"**Beneficiaries**" means Bondholders, the owner of the Residual Certificate and, to the extent specified in the related Series Supplement or other Supplemental Indenture, the party or parties to Swap Contracts and Ancillary Contracts.

"**Bond Counsel**" means Hawkins, Delafield & Wood, or another nationally recognized bond counsel or such other counsel as may be selected by the Corporation for a specific purpose hereunder.

"**Bondholders**" or "**Holders**" or similar terms mean the registered owners of the Bonds registered as to principal and interest or as to principal only, as shown on the books of the Trustee.

"**Bonds**" means all obligations issued pursuant to Section 3.01.

"**Bond Year**" means the twelve (12) month period commencing July 1 of each year and ending on June 30 of the succeeding year.

**"Broker-Dealer Fees"** means the fees paid to the broker-dealers for the Auction Bonds, as set forth in the related Series Supplement.

**"Business Day"** means any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in New York, New York, are required or authorized by law to be closed.

**"Capitalized Interest Requirement"** means, as set forth in the related Series Supplement, that amount of Bond proceeds, if any, deposited in the Debt Service Account that is to be retained in the Debt Service Account for application pursuant to Section 4.03(b)(2) on one or more future Distribution Dates.

**"Closing Date"** means the date of issuance by the Corporation of the Series 2003B Bonds.

**"Code"** or **"Tax Code"** means the Internal Revenue Code of 1986, as amended.

**"Collateral"** has the meaning set forth therefor in Section 2.01.

**"Complementary Legislation"** means sections 480-b, 481(1)(c) and 1846(a-1) of the Tax Law of the State.

**"Consent Decree"** means the Consent Decree and Final Judgment of the Supreme Court of the State of New York, County of New York, dated December 23, 1998, as the same has been and may be corrected, amended or modified, in the action entitled State of New York, et al. v. Philip Morris Incorporated, et al. (Index No. 400361/97).

**"Contingency Contract"** means (i) with respect to the Series 2003B Bonds, that certain Tobacco Settlement Financing Corporation Contingency Contract, dated as of December 1, 2003, by and between the Corporation and the State, as the same may be amended or supplemented in accordance with its terms, and (ii) with respect to any Series of Refunding Bonds, any Contingency Contract, identified as such in a Series Supplement or other Supplemental Indenture, between the Corporation and the State, pursuant to which the State agrees to pay to the Corporation, under certain circumstances and subject to appropriation by the State Legislature, such amounts as are necessary to meet the debt service requirements on such Refunding Bonds in any year.

**"Corporate Trust Office"** means the office of the Trustee at which the corporate trust business of the Trustee related hereto shall, at any particular time, be principally administered, which office is, at the date of this Indenture, located as follows: 101 Barclay Street – Floor 21W, New York, New York 10286.

**"Costs of Issuance"** means those "costs of issuance", as defined in Act, related to the authorization, sale or issuance of Bonds, including but not limited to all fees, costs, expenses and governmental charges for: underwriting and transaction structuring, auditors or accountants, printing, reproducing documents, filing and recording of documents, fiduciaries, legal services, financial advisory and professional consultants' services, credit ratings, credit and liquidity enhancements, execution, and transportation and safekeeping of Bonds; and also includes costs

3

incurred by the State to the extent the same are to be paid by the Corporation in accordance with the Sale Agreement.

"**Costs of Issuance Account**" means the Account so designated and established pursuant to Section 4.01.

"**Debt Service**" means interest, redemption premium, principal and Sinking Fund Installments due on Outstanding Bonds.

"**Debt Service Account**" means the Account so designated and established pursuant to Section 4.01.

"**Debt Service Reserve Account**" means the Account so designated and established pursuant to Section 4.01.

"**Debt Service Reserve Requirement**" means $221,582,344.

"**Default**" means an Event of Default without regard to any declaration, notice or lapse of time.

"**Defeasance Collateral**" means money and, to the extent lawful for investment of funds of the Corporation, any of the following:

(i)      non-callable direct obligations of the United States of America, non-callable and non-prepayable direct federal agency obligations the timely payment of principal of and interest on which are fully and unconditionally guaranteed by the United States of America (which do not include obligations of FNMA or the FHLMC), non-callable direct obligations of the United States of America which have been stripped by the United States Treasury itself or by any Federal Reserve Bank (not including "CATS, TIGRS" and "TRS") and the interest components of REFCORP bonds for which the underlying bond is non-callable (or non-callable before the due date of such interest component) for which separation of principal and interest is made by request to the Federal Reserve Bank of New York in book-entry form, and shall exclude investments in mutual funds and unit investment trusts;

(ii)      non-callable obligations timely maturing and bearing interest (but only to the extent that the full faith and credit of the United States of America are pledged to the timely payment thereof);

(iii)      certificates rated in one of the two highest long-term rating categories by S&P, Moody's and Fitch (if rated by Fitch) evidencing ownership of the right to the payment of the principal of and interest on obligations described in clause (ii), provided that such obligations are held in the custody of a bank or trust company satisfactory to the Trustee in a segregated trust account in the trust department separate from the general assets of such custodian;

(iv)      bonds or other obligations of any state of the United States of America or of any agency, instrumentality or local governmental unit of any such state (x) which are

4

not callable at the option of the obligor or otherwise prior to maturity or as to which irrevocable notice has been given by the obligor to call such bonds or obligations on the date specified in the notice, (y) timely payment of which is fully secured by a fund consisting only of cash or obligations of the character described in clause (i), (ii) or (iii) which fund may be applied only to the payment when due of such bonds or other obligations and (z) rated "AAA" by S&P and in one of the two highest long-term rating categories by Moody's and Fitch (if rated by Fitch); and

(v)    investment arrangements rated in the highest long-term and short-term rating categories by each Rating Agency.

**"Defeased Bonds"** means Bonds that remain in the hands of their Holders, but are deemed no longer Outstanding as specified in Subsection (iv) or (v) of the definition hereunder of "Outstanding".

**"Deposit Date"** means the date of actual receipt by the Trustee of any Pledged Revenues, provided that any payment received prior to January 1 of the year in which due, will be deemed to have been received on January 1.

**"Distribution Date"** means (i) each June 1 and December 1 commencing June 1, 2004, or if such date is not a Business Day, the following Business Day, (ii) each additional Distribution Date selected by the Corporation or the Trustee following an Event of Default, and (iii) each additional Distribution Date, to the extent specified in a Supplemental Indenture.

**"DTC"** means The Depository Trust Company, a limited-purpose trust company organized under the laws of the State of New York, and includes any nominee of DTC in whose name any Bonds are then registered.

**"Eligible Investments"** means, as set forth in the Act, (a) general obligations of, or obligations guaranteed by, any state of the United States of America or political subdivision thereof, or the District of Columbia or any agency or instrumentality of any of them, receiving one of the three highest long-term unsecured debt rating categories available for such securities of at least one independent rating agency, (b) certificates of deposit, savings accounts, time deposits or other obligations or accounts of banks or trust companies in the State, secured, if the Corporation shall so require, in such manner as the Corporation may so determine, (c) obligations in which the State Comptroller is authorized to invest, pursuant to either Section 98 or 98-a of the State Finance Law, and (d) any of the following:

(i)    Defeasance Collateral;

(ii)    direct obligations of, or obligations guaranteed as to timely payment of principal and interest by, FHLMC, FNMA, the Federal Farm Credit System or the Federal Home Loan Bank (FNLB) system;

(iii)    demand and time deposits in or certificates of deposit of, or bankers' acceptances issued by, any bank or trust company, savings and loan association or savings bank, payable on demand or on a specified date no more than three months after

5

the date of issuance thereof, if such deposits or instruments are rated at least "F-1" by Fitch (if rated by Fitch), "A-1" by S&P and "P-1" by Moody's;

(iv)    general obligations of, or obligations guaranteed by, any state of the United States, territory or possession thereof, the District of Columbia or any political subdivision of any of the foregoing rated at least "Aa1" by Moody's and receiving one of the two highest long-term unsecured debt ratings available for such securities by S&P and Fitch (if rated by Fitch);

(v)    commercial or finance company paper (including both non-interest-bearing discount obligations and interest bearing obligations payable on demand or on a specified date not more than 190 days after the date of issuance thereof) that is rated at least "F-1" by Fitch (if rated by Fitch), "A-1" by S&P and "P-1" by Moody's (and, if longer than 100 days but no longer than 190 days, rated at least "A", "A" and "A1", respectively);

(vi)    repurchase obligations with respect to any security described in clause (i), (ii), (iv) or (v) above entered into with a primary dealer, depository institution or trust company (acting as principal) rated at least "F-1" by Fitch (if rated by Fitch), "A-1" by S&P and "P-1" by Moody's (if payable on demand or on a specified date no more than three months after the date of issuance thereof) or rated at least "A3" by Moody's and in one of the three highest long-term rating categories by S&P and Fitch (if rated by Fitch) or collateralized by securities described in clause (i), (ii), (iv) or (v) above with any registered broker/dealer or with any domestic commercial bank whose long-term debt obligations are rated "investment grade" by each Rating Agency, provided that (1) a specific written agreement governs the transaction, (2) the securities are held, free and clear of any lien, by the Trustee or an independent third party acting solely as agent for the Trustee, and such third party is (a) a Federal Reserve Bank, or (b) a member of the Federal Deposit Insurance Corporation that has combined surplus and undivided profits of not less than $25 million, and the Trustee shall have received written confirmation from such third party that it holds such securities, free and clear of any lien, as agent for the Trustee, (3) the agreement has a term of thirty days or less, or the Trustee will value the collateral securities no less frequently than monthly and will liquidate the collateral securities if any deficiency in the required collateral percentage is not restored with five Business Days of such valuation, and (4) the fair market value of the collateral securities in relation to the amount of the obligation, including principal and interest, is equal to at least 102%;

(vii)    securities bearing interest or sold at a discount (payable on demand or on a specified date no more than 190 days after the date of issuance thereof) that are issued by any single corporation incorporated under the laws of the United States of America or any state thereof and rated at least "F-1" by Fitch (if rated by Fitch), "P-1" by Moody's and "A-1" by S&P at the time of such investment or contractual commitment providing for such investment; provided, that securities issued by any such corporation will not be Eligible Investments to the extent that investment therein would cause the then outstanding principal amount of securities issued by such corporation that are then held to exceed 20% of the aggregate principal amount of all Eligible Investments then held;

(viii)    units of taxable money market funds which funds are regulated investment companies and seek to maintain a constant net asset value per share and have been rated at least "Aal" by Moody's, in one of the two highest categories by Fitch (if rated by Fitch) and at least "Aam" or "AAm-G" by S&P, including if so rated any such fund which the Trustee or an affiliate of the Trustee serves as an investment advisor, administrator, shareholder, servicing agent and/or custodian or sub-custodian, notwithstanding that (a) the Trustee or an affiliate of the Trustee charges and collects fees and expenses (not exceeding current income) from such funds for services rendered, (b) the Trustee charges and collects fees and expenses for services rendered pursuant to this Indenture, and (c) services performed for such funds and pursuant to this Indenture may converge at any time (the Corporation specifically authorizes the Trustee or an affiliate of the Trustee to charge and collect all fees and expenses from such funds for services rendered to such funds, in addition to any fees and expenses the Trustee may charge and collect for services rendered pursuant to this Indenture);

(ix)    investment agreements or guaranteed investment contracts rated, or with any financial institution or corporation whose senior long-term debt obligations are rated, or guaranteed by a financial institution or corporation whose senior long-term debt obligations are rated, at the time such agreement or contract is entered into, at least "F-1" by Fitch (if rated by Fitch), "A3/P1" by Moody's and in one of the three highest long-term rating categories by S&P if the Corporation has an option to terminate such agreement in the event that any such rating is either withdrawn or downgraded below the rating on the Bonds, or if not so rated, then collateralized by securities described in clause (i), (ii), (iv) or (v) above with any registered broker/dealer or with any domestic commercial bank whose long-term debt obligations are rated "investment grade" by each Rating Agency, provided that (1) a specific written agreement governs the transaction, (2) the securities are held, free and clear of any lien, by the Trustee or an independent third party acting solely as agent for the Trustee, and such third party is (a) a Federal Reserve Bank, or (b) a member of the Federal Deposit Insurance Corporation that has combined surplus and undivided profits of not less than $25 million, and the Trustee shall have received written confirmation from such third party that it holds such securities, free and clear of any lien, as agent for the Trustee, (3) the agreement has a term of thirty days or less, or the Trustee will value the collateral securities no less frequently than monthly and will liquidate the collateral securities if any deficiency in the required collateral percentage is not restored with seven Business Days of such valuation, and (4) the fair market value of the collateral securities in relation to the amount of the obligation, including principal and interest, is equal to at least 102%;

(x)    with respect to any Series of Bonds, the investment contracts constituting Ancillary Contracts, as set forth in the related Series Supplement or other Supplemental Indenture; and

(xi)    solely for investment of money in the Supplemental Account, Non-AMT Tax-Exempt Obligations;

provided, however, that no Eligible Investment may (a) except for Defeasance Collateral, evidence the right to receive only interest with respect to the obligations underlying such

instrument or (b) be purchased at a price greater than par if such instrument may be prepaid or called at a price less than its purchase price prior to its stated maturity.

"**Event of Default**" means an event specified in Section 9.01.

"**FHLMC**" means the Federal Home Loan Mortgage Corporation.

"**Fiduciary**" means the Trustee, any representative of the Holders of Bonds appointed by Series Supplement, and each Paying Agent, if any.

"**Financing Costs**" means (i) Costs of Issuance, (ii) capitalized interest, (iii) the capitalization of initial Operating Expenses of the Corporation, (iv) the funding of the Debt Service Reserve Account and any other debt service reserves, (iv) fees and costs for Ancillary Contracts, and (v) any other fees, discounts, expenses and costs of any kind whatsoever related to issuing, securing and marketing the Bonds, including, without limitation, Bond insurance premiums and any net original issue discount.

"**Fiscal Year**" means the twelve (12) month period commencing November 1 of each year and ending on October 31 of the succeeding year.

"**Fitch**" means Fitch, Inc.; references to Fitch are effective so long as Fitch is a Rating Agency.

"**FNMA**" means Fannie Mae.

"**Funds**" means funds or accounts established hereby and by Series Supplement.

"**Indenture**" means this Indenture as amended and supplemented.

"**Junior Payments**" means (i) termination payments and loss amounts on Ancillary Contracts and any payments on Swap Contracts, (ii) Bond principal payable under term-out provisions of Ancillary Contracts, (iii) other amounts due under Ancillary Contracts and not payable as Debt Service, (iv) annual payments required to be paid by the Corporation pursuant to subdivisions 2 and 3 of Section 2975 of the Public Authorities Law, (v) litigation expenses incurred by the Corporation and (vi) any other Junior Payments, not in excess of $500,000.00 in any Fiscal Year, so identified in or by reference to this Indenture or any Supplemental Indenture.

"**Lump Sum Payment**" means a lump sum payment received by the Trustee as a payment from a PM which results in, or is due to, a release of that PM from all or a portion of its obligations due on or after January 1, 2004 under the MSA.

"**Majority in Interest**" means as of any particular date of calculation the Holders of a majority of the Outstanding Bonds eligible to act on a matter, measured by Outstanding principal amount, payable at maturity, or, in the case of a Bond specifically designated in a Series Supplement as having Accreted Value, by the Accreted Value of such Outstanding Bonds as of such date.

8

"**Master Settlement Agreement**" or "**MSA**" means the MSA identified in the Consent Decree, including the related Escrow Agreement (as defined in the MSA).

"**Maturity Date**" means the stated maturity date of each Serial Bond and Term Bond.

"**Maximum Rate**" means (i) the highest rate payable on a Bond to Holders other than parties to Ancillary Contracts, as specified by Series Supplement or (ii) the rate specified by Series Supplement as the Maximum Rate on a Swap.

"**Moody's**" means Moody's Investors Service; references to Moody's are effective so long as Moody's is a Rating Agency.

"**Non-AMT Tax-Exempt Obligation**" means a debt obligation the interest on which (i) is excludible from gross income for federal income tax purposes pursuant to Section 103 of the Tax Code and (ii) is not a preference item for purposes of computing alternative minimum tax by reason of Section 57(a)(5) of the Tax Code.

"**Officer's Certificate**" means a certificate signed by an Authorized Officer of the Corporation.

"**Operating Account**" means the Account so designated and established pursuant to Section 4.01.

"**Operating Cap**" means (i) with respect to the Series 2003B Bonds, the State Fee in the amount not exceeding $22,951,241, plus (ii) with respect to any Refunding Bonds, the State Fee in the amount not exceeding that set forth in the applicable Series Supplement, plus (iii) $500,000 in the Fiscal Year ending October 31, 2004, such $500,000 amount inflated in each following Fiscal Year by the Inflation Adjustment Percentage (as defined in the MSA and on the assumption that the year 2000 percentage contained in the MSA applies to the first yearly adjustment of the Operating Cap under this Indenture) applicable pursuant to the MSA to the calendar year ending in such Fiscal Year, plus (iv) arbitrage rebate and penalties specified by Officer's Certificate, plus (v) in each Fiscal Year, the amount of Broker-Dealer Fees calculated as set forth in the related Series Supplement, plus (vi) in each Fiscal Year, annual Bond insurance premiums that are payable by the Corporation after the Closing Date.

"**Operating Expenses**" means all operating and administrative expenses incurred by the Corporation, and all operating and administrative expenses incurred by the State of New York Municipal Bond Bank Agency and related (as set forth in a certificate of an Authorized Officer of the Corporation) to such Agency's activities on behalf of or in assistance to the Corporation, including but not limited to, the cost of preparation of accounting and other reports, costs of maintenance of ratings on the Bonds, arbitrage rebate and penalties, salaries, administrative expenses, insurance premiums, fees and charges of the State (including the State Fee), auditing and legal expenses, fees and expenses incurred for the Trustee, any Paying Agents, professional consultants and fiduciaries, the fees of any Auction Agent or Broker-Dealer, costs of any Contingency Contract, costs incurred to preserve the tax-exempt status of any Tax-Exempt Bonds, costs related to the enforcement rights with respect to the Indenture, the MSA, the Sale Agreement, the Qualifying Statute, the Complementary Legislation or the Bonds and all other Operating Expenses so identified in this Indenture.

9

**"Other Series"** means Series of Refunding Bonds.

**"Outstanding"** means, with respect to Bonds, all Bonds issued under this Indenture, excluding: (i) Bonds that have been exchanged or replaced, or delivered to the Trustee for credit against a principal payment: (ii) Bonds that have been paid or, as set forth in the applicable Series Supplement, purchased by the Corporation; (iii) Bonds that have become due and for the payment of which money has been duly provided; (iv) Bonds for which (A) there has been irrevocably set aside sufficient Defeasance Collateral timely maturing and bearing interest, to pay or redeem them and (B) any required notice of redemption shall have been duly given in accordance with this Indenture or irrevocable instructions to give notice shall have been given to the Trustee; (v) Bonds the payment of which shall have been provided for pursuant to Section 2.02; and (vi) for purposes of any consent or other action to be taken by the Holders of a Majority in Interest or specified percentage of Bonds hereunder, Bonds held by or for the account of the Corporation, the State or any person controlling, controlled by or under common control with either of them. For the purposes of this definition, "control," when used with respect to any specified person, means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by law or contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

**"Paying Agent"** means each Paying Agent designated from time to time pursuant to Section 7.03.

**"Permitted Indebtedness"** means (i) Bonds, (ii) borrowings to pay Operating Expenses as described in Section 5.01(c), (iii) bonds or other obligations payable solely from Previously Purchased and Pledged Settlement Payments and Unsold Settlement Payments, (iv) indebtedness secured by specified assets of the Corporation not subject to the lien of this Indenture and the holders of which expressly have no recourse to any other assets of the Corporation pledged hereunder in the event of non-payment.

**"Pledged Accounts"** means the Pledged Revenues Account, the Debt Service Account, the Debt Service Reserve Account, the Supplemental Account, all of which shall be established and held by the Trustee as segregated trust accounts, and any additional Accounts designated in a Supplemental Indenture as a Pledged Account.

**"Pledged Revenues"** means (i) the Pledged Settlement Payments, (ii) to the extent set forth in the applicable Series Supplement or other Supplemental Indenture, payments made to the Corporation or Trustee under Contingency Contracts, Ancillary Contracts and Swap Contracts, and (iii) all fees, charges, payments, investment earnings and other income and receipts (including Bond proceeds, but only to the extent deposited in the Debt Service Reserve Account or the Debt Service Account) paid or payable to the Corporation or the Trustee for the account of the Corporation or the Beneficiaries, but excluding all Previously Purchased and Pledged Settlement Payments and Unsold Settlement Payments.

**"Pledged Revenues Account"** means the Account so designated and established pursuant to Section 4.01.

10

**"Pledged Settlement Payments"** means the "pledged tobacco revenues," as defined in the Act, being such portion of the State's Share constituting tobacco settlement payments sold to the Corporation pursuant to Section 4 of the Act and pursuant to the Sale Agreement, and assigned and pledged pursuant to Section 2.01, consisting of (i) fifty percent (50%) of the annual payments and strategic contribution fund payments (as such terms are defined in the MSA), and of all adjustments to prior payments, received on and after January 1, 2004, and (ii) 50% of all Lump Sum Payments received at any time commencing with the Closing Date, less, with respect to either (i) or (ii) above, the Unsold Settlement Payments.

**"PM"** means a Participating Manufacturer, as defined in the MSA.

**"Presumed Auction Rate"** shall have the meaning set forth for Auction Bonds in the related Series Supplement.

**"Presumed Fixed Rate"** means with respect to any Auction Bonds, as set forth in the related Series Supplement, the hypothetical rate which it is presumed the Auction Bonds would have borne had they been issued at a fixed rate of interest. The Presumed Fixed Rate is assumed to be an all-in rate which includes Broker-Dealer Fees.

**"Proceeding"** means any suit, action or proceeding at law or in equity for the enforcement of the Undertaking or to remedy any breach thereof, except a remedial action pursuant to Article IX.

**"Previously Purchased and Pledged Settlement Payments"** means, the "Pledged Settlement Payments" as defined in the Series 2003A Sale Agreement, which were purchased by the Corporation pursuant thereto, consisting of (i) fifty percent (50%) of annual payments and strategic contribution fund payments (as such terms are defined in the MSA), and of all adjustments to prior payments, received on and after January 1, 2004 (other than the payment of funds to the State to resolve claims relating to amounts held as of the date of initial delivery of the Series 2003A Bonds in the Disputed Payments Account as defined in the Escrow Agreement under the MSA) and (ii) fifty percent (50%) of any lump sum payment (other than the payment of funds to the State to resolve claims relating to amounts held as of the date of initial delivery of the Series 2003A Bonds in the Disputed Payments Account as defined in the Escrow Agreement under the MSA) received at any time commencing with the date of initial delivery of the Series 2003A Bonds from a Participating Manufacturer which results in, or is due to, a release of that Participating Manufacturer from all or a portion of such payment obligations due on and after January 1, 2004 under the MSA.

**"Purchase Consideration"** means the consideration to be paid by the Corporation to the State for the purchase of the Pledged Settlement Payments pursuant to the Sale Agreement.

**"Qualifying Statute"** means Article 13-G of the Public Health Law of the State.

**"Rating Agency"** means each nationally recognized statistical rating organization that has, at the request of the Corporation, a rating in effect for any of the Bonds.

**"Rebate Account"** means the Account so designated and established pursuant to Section 4.01.

11

"**Record Date**" means the last Business Day of the calendar month preceding a Distribution Date; provided that with regard to Auction Bonds, "Record Date" shall have the meaning set forth in the related Series Supplement, or such other date as may be specified by this Indenture, a Series Supplement or Supplemental Indenture or an Officer's Certificate; and the Corporation or the Trustee may in its discretion establish special record dates for the determination of the Holders of Bonds for various purposes hereof, including giving consent or direction to the Trustee.

"**Refunding Bonds**" means Bonds issued to renew or refund any Bonds, by exchange, purchase, redemption or payment.

"**S&P**" means Standard & Poor's Ratings Services; references to S&P are effective so long as S&P is a Rating Agency.

"**Sale Agreement**" means the Purchase and Sale Agreement, dated as of December 1, 2003, by and between the Corporation and the State, as amended, supplemented and in effect from time to time.

"**Securities Depository**" means DTC or another securities depository specified by Series Supplement, or if the incumbent Securities Depository resigns from its functions as depository of the Bonds or the Corporation discontinues use of the incumbent Securities Depository, then any other securities depository designated in an Officer's Certificate of the Corporation.

"**Semiannual Period**" means with respect to all Pledged Revenues, each six-month period beginning June 1 or December 1.

"**Serial Bonds**" means the Bonds so specified in a Series Supplement.

"**Series**" means all Bonds so identified in a Series Supplement, regardless of variations in class, maturity, interest rate or other provisions, and any Bonds thereafter delivered in exchange or replacement therefor.

"**Series Supplement**" means a Supplemental Indenture described in Section 3.01(a), or a supplement thereto.

"**Series 2003A Bonds**" means the Corporation's $2,310,705,000 Asset-Backed Revenue Bonds, Series 2003A (State Contingency Contract Secured), dated as of June 19, 2003, issued under the Series 2003A Indenture, including any bonds issued in exchange or replacement therefor under the Series 2003A Indenture.

"**Series 2003A Indenture**" means the Indenture securing the Series 2003A Bonds, dated as of June 1, 2003, as amended, supplemented and in effect from time to time.

"**Series 2003A Sale Agreement**" means the Purchase and Sale Agreement, dated as of June 1, 2003, between the Corporation and the State, pursuant to which the State sold to the Corporation and the Corporation purchased from the State, the Previously Purchased and Pledged Settlement Payments.

12

"**Series 2003A Trustee**" means The Bank of New York, its successors in interest and any successor Trustee under the Series 2003A Indenture.

"**Series 2003B Bonds**" means the Corporation's $2,240,415,000 Asset-Backed Revenue Bonds, Series 2003B (State Contingency Contract Secured), initially dated their date of delivery, including any Bonds issued in exchange or replacement therefor.

"**Series 2003B Residual Certificate**" means an instrument in the form of Exhibit A to this Indenture and the Sale Agreement.

"**Series 2003B Supplement**" means the Series Supplement dated as of December 1, 2003 authorizing the Series 2003B Bonds.

"**Sinking Fund Installment**" means a scheduled amount set forth in the applicable Series Supplement for required amortization prior to maturity of a Term Bond.

"**Sinking Fund Installment Date**" means the date scheduled for the payment of a particular Sinking Fund Installment.

"**State**" means the State of New York.

"**State Fee**" means (i) in connection with the issuance of the Series 2003B Bonds, the one-time fee, payable in one or more installments (without interest), owing to the State from Pledged Revenues, and (ii) in connection with the issuance of any Series of Refunding Bonds, the one-time fee, payable in one or more installments (without interest), owing to the State from Pledged Revenues, as set forth in the applicable Series Supplement.

"**State Representative**" means the Governor of the State acting through the Director of the Budget of the State.

"**State's Share**" means, as set forth in the Act, all tobacco settlement payments received by the State on and after January 1, 2004 and required to be made, pursuant to the terms of the MSA, by PMs to the State, which have not been otherwise allocated to any other jurisdictions pursuant to the Consent Decree, and the State's rights to receive such tobacco settlement payments, consisting of the annual payments and strategic contribution fund payments (as such terms are defined in the MSA) received by the State under the MSA (and all adjustments thereto) and of any Lump Sum Payments.

"**Supplemental Account**" means the Account so designated and established pursuant to Section 4.01.

"**Supplemental Indenture**" means a Series Supplement or supplement hereto adopted and becoming effective in accordance with the terms hereof. Any provision that may be included in a Series Supplement or Supplemental Indenture is also eligible for inclusion in the other subject to the provisions hereof.

"**Surplus Pledged Revenues**" means all Pledged Revenues that are in excess of the requirements set forth in Section 4.03(a)(1) through (6).

13

"**Swap**" or "**Swap Contract**" means one of the "ancillary bond facilities", as defined in the Act, constituting an interest rate exchange (in currency of the United States only), cap, collar, hedge or similar agreement entered into by the Corporation, meeting the requirements of Section 4.05, and under which all payments required to be made by the Corporation constitute Junior Payments.

"**Tax Certificate**" means the Tax Certificate executed by the Corporation and the State at the time of issuance of each Series of Tax-Exempt Bonds, each as originally executed and as each may be amended or supplemented from time to time with the term thereof.

"**Tax-Exempt Bonds**" means all Bonds so identified in the Series Supplement relating to such Bonds.

"**Term Bonds**" means the Bonds so specified in a Series Supplement.

"**Trustee**" means The Bank of New York, until a successor shall become such pursuant to the applicable provisions of this Indenture and, thereafter, "Trustee" shall mean the successor Trustee.

"**Unsold Settlement Payments**" means, whenever received by the State, (i) payment of funds to the State to resolve claims relating to amounts held as of the date of initial delivery of the Series 2003A Bonds in the Disputed Payments Account as defined in the Escrow Agreement under the MSA, and (ii) 50% of the annual payments (as such term is defined in the MSA), and of all adjustments to prior payments, owed to the State under the MSA on and after January 1, 2004 and prior to January 1, 2005, and of all Lump Sum Payments received at any time on and after the Closing Date and prior to January 1, 2005, but only to the extent the amount described in this clause (ii) represents the excess of such payments over the first $22,951,241 received (such $22,951,241 amount to constitute Pledged Settlement Payments).

"**Written Notice**", "**written notice**" or "**notice in writing**" means notice in writing which may be delivered by hand or first class mail and also means facsimile transmission and electronic mail transmission.

### Section 1.02.    Interpretation.

(a)    Articles and Sections referred to by number shall mean the corresponding Articles and Sections of this Indenture

(b)    Words of the masculine gender shall mean and include correlative words of the feminine and neuter genders and words importing the singular number shall mean and include the plural number and vice versa.

(c)    Words importing persons shall include firms, associations, partnerships (including limited partnerships), trusts, corporations and other legal entities, including public bodies, as well as natural persons, and shall include successors and assigns.

(d)    The terms "hereby", "hereof", "herein", "hereunder" and any similar terms, as used in this Indenture, refer to this Indenture; and the term "date hereof" means, the

14

term "hereafter" means after, and the term "heretofore" means before, the date of delivery of the Series 2003B Bonds.

(e)     The word "including" means "including without limitation".

(f)     Any headings preceding the texts of the several Articles and Sections of this Indenture, and any table of contents or marginal notes appended to copies hereof, shall be solely for convenience of reference, and shall not constitute a part of this Indenture, nor shall they affect its meaning, construction or effect.

(g)     As used in this Indenture and in any certificate or other document made or delivered pursuant hereto or thereto, accounting terms not defined in this Indenture or in any such certificate or other document, and accounting terms partly defined in this Indenture or in any such certificate or other document to the extent not defined, shall have the respective meanings given to them under generally accepted accounting principles. To the extent that the definitions of accounting terms in this Indenture or in any such certificate or other document are inconsistent with the meanings of such terms under generally accepted accounting principles, the definitions contained in this Indenture or in any such certificate or other document shall control.

(h)     Any reference in this Indenture to the "principal" or "principal amount" of any Bond as to which interest accretes and is not paid currently shall be construed as a reference to the Accreted Value of such Bond.

(i)     In the event that any provision of this Indenture shall be held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

**Section 1.03.    Directors and Officers Not Liable on Bonds.**

(a)     Neither the members, directors or officers of the Corporation nor any person executing Bonds, Ancillary Contracts, Swap Contracts, or other obligations of the Corporation nor any official, employee or agent of the Corporation shall be liable personally thereon or be subject to any personal liability or accountability solely by reason of the issuance or execution and delivery thereof.

(b)     PURSUANT TO THE ACT, NEITHER ANY BOND NOR ANY ANCILLARY CONTRACT OF THE CORPORATION SHALL CONSTITUTE A DEBT OR MORAL OBLIGATION OF THE STATE OR A STATE SUPPORTED OBLIGATION WITHIN THE MEANING OF ANY CONSTITUTIONAL OR STATUTORY PROVISION OR A PLEDGE OF THE FAITH AND CREDIT OF THE STATE OR OF THE TAXING POWER OF THE STATE, AND THE STATE SHALL NOT BE LIABLE TO MAKE ANY PAYMENTS THEREON NOR SHALL ANY BOND OR ANY ANCILLARY CONTRACT BE PAYABLE OUT OF ANY FUNDS OR ASSETS OTHER THAN PLEDGED TOBACCO REVENUES AND OTHER ASSETS, IF ANY, SOLD TO THE CORPORATION AND OTHER FUNDS AND ASSETS OF OR AVAILABLE TO THE CORPORATION PLEDGED THEREFOR, AND THE BONDS AND ANY ANCILLARY CONTRACT OF THE CORPORATION SHALL CONTAIN ON THE FACE THEREOF OR OTHER PROMINENT PLACE THEREON A STATEMENT TO THE FOREGOING EFFECT.

434408.8 026563 IND

### Section 1.04.    Separate Accounts and Records.

The parties hereto represent and covenant, each for itself, that:

(a)    The Corporation and the Trustee each will maintain its respective books, financial records and accounts (including, without limitation, inter-entity transaction accounts) in a manner so as to identify separately the assets and liabilities of each such entity; each has observed and will observe all applicable corporate or trust procedures and formalities, including, where applicable, the holding of regular periodic and special meetings of governing bodies, the recording and maintenance of minutes of such meetings, and the recording and maintenance of resolutions, if any, adopted at such meetings; and all transactions and agreements between the Corporation and the Trustee have reflected and will reflect the separate legal existence of each entity and have been and will be formally documented in writing.

(b)    The Corporation has paid and will pay its liabilities and losses from its separate assets. In furtherance of the foregoing, the Corporation has compensated and will compensate all consultants, independent contractors and agents from its own funds for services provided to it by such consultants, independent contractors and agents.

## ARTICLE II

## GRANT OF SECURITY INTEREST AND PLEDGE

### Section 2.01.    Security and Pledge.

The Corporation assigns and pledges to the Trustee and, pursuant to the Act, grants a first lien on and a first priority security interest in, in trust upon the terms hereof, all of the Corporation's right, title and interest, whether now owned or hereafter acquired, in, to and under all of the following property (subject to the next two succeeding sentences) constituting the "**Collateral**": (a) the Pledged Revenues (including all Pledged Settlement Payments and payments on Contingency Contracts), (b) all rights to receive the Pledged Revenues and the proceeds of such rights, (c) the Pledged Accounts and assets thereof (including Swap Contracts and Ancillary Contracts), including money, contract rights, general intangibles or other personal property, held by the Trustee hereunder, (d) subject to the following sentence, all rights and interest of the Corporation under the Sale Agreement and Contingency Contracts, including the representations, warranties and covenants of the State in the Sale Agreement and in Contingency Contracts, and (e) any and all other property of every kind and nature from time to time hereafter, by delivery or by writing of any kind, conveyed, pledged, assigned or transferred as and for additional security hereunder. Except as specifically provided herein, this assignment and pledge does not include: (i) the Previously Purchased and Pledged Settlement Payments, (ii) the Unsold Settlement Payments, (iii) the rights of the Corporation pursuant to provisions for consent or other action by the Corporation, notice to the Corporation, indemnity or the filing of documents with the Corporation, or otherwise for its benefit and not for that of the Beneficiaries, (iv) any right or power reserved to the Corporation pursuant to the Act or other law, (v) any Defeasance Collateral held by the Trustee for the benefit of Defeased Beneficiaries in accordance with Section 2.02, and (vi) as to any Series of Bonds, any other property or interest explicitly excluded from Collateral pursuant to the terms of the related Series Supplement; nor

16

does this Section preclude the Corporation's enforcement of its rights under and pursuant to the Sale Agreement for the benefit of the Beneficiaries as provided herein. The Previously Purchased and Pledged Settlement Payments and the Unsold Settlement Payments, and the proceeds of the Bonds, other than the amounts deposited in the Debt Service Reserve Account or the Debt Service Account, do not constitute any portion of the Pledged Revenues, are not pledged to the holders of the Bonds and are not subject to the lien of this Indenture.    The right of the Corporation to receive the Pledged Settlement Payments is valid and enforceable and, during the respective periods that Pledged Settlement Payments are payable to the Corporation and pledged hereunder, the right of the Corporation to receive the Pledged Settlement Payments is on a parity with and is not inferior or superior to the right of the Series 2003A Trustee (or any future assignee or any future successor of the Series 2003A Trustee) to receive the Previously Purchased and Pledged Settlement Payments and the right of the State to receive the Unsold Settlement Payments.  Neither the Corporation nor the Trustee, any Beneficiary or other person or entity shall have the right to make a claim to make up all or any portion of a perceived deficiency in Pledged Settlement Payments from the Previously Purchased and Pledged Settlement Payments or Unsold Settlement Payments and, likewise, neither the Corporation nor the Series 2003A Trustee (nor any future assignee or future successor of the Series 2003A Trustee) nor the State (nor any future assignee or any purchaser of any portion of the Unsold Settlement Payments) shall have any right to make a claim to make up all or any portion of a perceived deficiency in the Previously Purchased and Pledged Settlement Payments or Unsold Settlement Payments from the Pledged Settlement Payments. The Corporation will implement, protect and defend this assignment and pledge by all appropriate legal action, the cost thereof to be an Operating Expense. The foregoing Collateral is hereby pledged and a security interest is therein granted by the Corporation to secure the payment of Bonds, Swap Contracts and Ancillary Contracts, all with the respective priorities specified herein. The pledge and assignment made by this Indenture and the covenants and agreements to be performed by or on behalf of the Corporation shall be for the equal and ratable benefit, protection and security of the Holders of any and all of the Outstanding Bonds and all other Beneficiaries, all of which, regardless of the time or times of their issue or maturity, shall be of equal rank without preference, priority or distinction of such Bonds and all other Beneficiaries over any other Bonds or Beneficiaries except as expressly provided herein or permitted hereby. The lien of such pledge and the obligation to perform the contractual provisions hereby made shall have priority over any or all other obligations and liabilities of the Corporation secured by the Pledged Revenues. The Corporation shall not incur any obligations, except as authorized hereby, secured by a lien on the Pledged Revenues or the Pledged Accounts equal or prior to the lien hereof.

### Section 2.02.    Defeasance.

When (i) there is held by or for the account of the Trustee Defeasance Collateral in such principal amounts, bearing fixed interest at such rates and with such maturities as will provide sufficient funds to pay or redeem all or any portion of Outstanding Bonds in accordance with their terms and all or any portion of obligations to Beneficiaries (including parties to Swap Contracts and Ancillary Contracts) (the holders of said Bonds and such Beneficiaries herein called the "**Defeased Beneficiaries**") (to be verified by a nationally recognized firm of independent certified public accountants or other professionals expert in verifying bond defeasance escrows), (ii) any required notice of redemption shall have been duly given in accordance with this Indenture or irrevocable written instructions to give notice shall have been

17

given to the Trustee, and (iii) all the rights hereunder of the Fiduciaries have been provided for, then upon written notice from the Corporation to the Trustee, such Defeased Beneficiaries shall cease to be entitled to any benefit or security under this Indenture except the right to receive payment of the funds so held and other rights which by their nature cannot be satisfied prior to or simultaneously with termination of the lien hereof, the security interests created by this Indenture with respect to such Defeased Beneficiaries (except in such funds and investments) shall terminate, and the Corporation and the Trustee shall execute and deliver such instruments as may be necessary to discharge the Trustee's lien and security interests created hereunder with respect to such Defeased Beneficiaries. Upon such defeasance, the funds and investments required to pay or redeem such Bonds and other obligations to such Defeased Beneficiaries shall be irrevocably set aside for that purpose, subject, however, to Section 4.08, and money held for defeasance shall be invested only in Defeasance Collateral and applied by the Trustee and other Paying Agents, if any, to the retirement of such Bonds and such other obligations. When provision for payment or redemption is made in accordance with this Section 2.02 for less than all the Bonds of a Series and maturity, the Trustee shall choose by lot the particular Bond or Bonds of such Series and maturity to be so paid or redeemed. Upon defeasance of all Outstanding Bonds and Beneficiaries, any funds or property held by the Trustee and not required for payment or redemption of such Bonds and such other obligations to Defeased Beneficiaries and Fiduciaries in full shall be distributed to the order of the Corporation.

## ARTICLE III

## THE BONDS

### Section 3.01.    Bonds of the Corporation.

(a)    By Series Supplement complying procedurally and in substance with this Indenture, and with any consent of the State Representative required by the terms of the related Series Supplement, the Corporation may authorize, issue, sell and deliver (1) the Series 2003B Bonds and (2) other Series of Bonds, but solely as Refunding Bonds, from time to time in such principal amounts as the Corporation shall determine, and establish such escrows therefor as it may determine.

(b)    Subsequent to the issuance of the Series 2003B Bonds, only Refunding Bonds may be issued and only upon receipt by the Corporation or the Trustee of a Contingency Contract for such Refunding Bonds.

(c)    The Bonds shall bear such dates, mature at such times, subject to such terms of payment, bear interest at such fixed or variable rates (not to exceed the Maximum Rate determined pursuant to the Series Supplement), be in such form and denomination, carry such registration privileges, be executed in such manner, and be payable in such medium of payment, at such place and subject to such terms of redemption, as the Corporation may provide, except that all Bonds must have the same Distribution Dates. The Bonds may be sold by the Corporation at public or private sale. The proceeds of each Series of Bonds shall be applied as provided in the Series Supplement authorizing the particular Series of Bonds.

434408.8 026563 IND

(d)     The Bonds shall be executed in the name of the Corporation by the signature or facsimile signature of an Authorized Officer and the seal or a facsimile seal of the Corporation, if any, shall be impressed or imprinted thereon, and attested by the signature or facsimile signature of an Authorized Officer. The authenticating certificate of the Trustee shall be manually signed by the Trustee at the written direction of the Corporation. Bonds executed as set forth above shall be valid and binding obligations when duly delivered, notwithstanding the fact that before the delivery thereof the persons executing the same shall have ceased in office or others may have been designated to perform such functions.

### Section 3.02.    Documents to be Delivered to Trustee.

The Corporation may from time to time request the authentication and delivery of a Series of Bonds by providing to the Trustee (at or prior to such authentication and delivery) the following:

(a)     copies of the Sale Agreement and each applicable Series Supplement, certified by an Authorized Officer of the Corporation;

(b)     with respect to Refunding Bonds, a Contingency Contract for such Refunding Bonds;

(c)     an opinion of Bond Counsel as to the due authorization, execution and delivery by the Corporation of this Indenture and each relevant Supplemental Indenture; to the effect that the Series Supplement is in full force and effect and that the Bonds being issued are valid and binding special revenue obligations of the Corporation payable solely and only out of the collateral pledged by the Corporation under this Indenture in Section 2.01 hereof; to the effect that, pursuant to the Act, the Indenture creates a valid pledge of and first-priority lien on the collateral pledged hereunder; and, after delivery of the Series 2003B Bonds, to the effect that the issuance of such Bonds will not adversely affect the exclusion from gross income for federal income tax purposes of interest on Tax-Exempt Bonds theretofore issued (as set forth in the opinions delivered with such prior Tax-Exempt Bonds);

(d)     such other documents as may be required by the applicable Series Supplement;

(e)     an Officer's Certificate of the Corporation to the effect that the applicable conditions to the issuance of Bonds set forth herein and in each applicable Series Supplement have been met; and requesting the Trustee's authentication of the Series of Bonds; and

(f)     a written order of an Authorized Officer of the Corporation to authenticate the Bonds.

### Section 3.03.    Transfer and Replacement of Bonds.

(a)     *Transfer.* A registered Bond shall be transferable upon presentation to the Trustee with a written transfer of title of the registered owner. Such transfer shall be dated, and signed by such registered owner, or his legal representatives, and shall be duly acknowledged or

434408.8 026563 IND

proved, or the signature certified as to its genuineness by an officer of a securities dealer, bank or trust company. The name of the transferee shall be entered in the books kept by the Trustee and

(1)     the transferee shall be provided with a new Bond, of substantially the same form and tenor as the Bond presented, except as provided below;

(2)     the new Bond shall be signed and attested, either (a) by manual or facsimile signature by the appropriate Authorized Officers in office at the time of delivery to the transferee, or (b) by facsimile signature of the appropriate Authorized Officers in office at the time of issuance;

(3)     the new Bond shall be executed as of the date of the Bond presented and shall be authenticated as of the date of delivery of the new Bond;

(4)     the Bond presented shall be cancelled and destroyed by standard means used by the Trustee and a certificate of destruction shall be filed with the Corporation and the Trustee;

(5)     no interest shall be paid on a Bond issued in registered form until the name of the payee has been inserted therein and such Bond has been registered as provided herein; and

(6)     the principal or Sinking Fund Installments of, redemption premium, if any, and interest on a Bond which has been registered shall be payable only to the registered owner, his legal representatives, successors or transferees.

(b)     *Replacement*. The Corporation may issue and the Trustee shall authenticate at the written direction of an Authorized Officer of the Corporation a new Bond to replace one lost, destroyed, partially destroyed or defaced, in accordance with the following:

(1)     If the Bond is claimed to be lost or destroyed, the owner shall furnish:

(A)     Proof of ownership.

(B)     Proof of loss or destruction.

(C)     Payment of the cost of preparing, issuing, mailing, shipping or insuring the new Bond.

(2)     If the Bond is defaced or partially destroyed, the owner shall surrender such Bond and pay the cost of preparing and issuing the new Bond.

(3)     The new Bond shall be of substantially the same form and tenor as the one originally issued, except that it shall be signed either by (i) the manual or facsimile signature of the appropriate Authorized Officer or Officers in the office at the time of the reissuance, or (ii) the facsimile signature of the appropriate Authorized Officer or Officers in office at the time of the original issuance or any time between original issuance and reissuance. The new Bond shall be authenticated in the manner provided

20

herein. If the Bond is issued in the place of one claimed to be lost or destroyed, it shall in addition state upon the back thereof that it is issued in the place of such Bond claimed to have been lost or destroyed, and, where applicable, that security or indemnity satisfactory to it for its payment in full at maturity is filed with the Corporation and the Trustee. The Trustee shall make an appropriate entry in its records of any new Bond issued pursuant to this section.

Neither the Trustee nor the Registrar shall have any responsibility to monitor or restrict the transfer of beneficial ownership in any Bond registered in the name of DTC or its nominee, an interest in which is transferable through DTC.

### Section 3.04.    Securities Depositories.

(a)    Immobilized Bonds. Unless otherwise provided by Series Supplement, the Bonds, upon original issuance, will be issued in the form of typewritten Bonds, to be delivered to the order of DTC by or on behalf of the Corporation. Such Bonds shall initially be registered in the name of DTC and no beneficial owner will receive a certificate representing an interest in any Bond, except as provided in Section 3.04(b). Unless and until Bonds of a Series have been issued to Holders other than DTC:

(1)    the Corporation and each Fiduciary, except to the extent specifically provided in Ancillary Contracts, shall be entitled to deal with DTC for all purposes of this Indenture (including the payment of principal or Sinking Fund Installments of and interest on such Bonds and the giving of notices, instructions or directions hereunder) as the sole Holder of such Bonds;

(2)    the rights of beneficial owners shall be exercised only through DTC; and

(3)    to the extent that the provisions of this Section 3.04(a) conflict with any other provisions of this Indenture except express terms of a Series Supplement, the provisions of this Section shall control; to the extent that the provisions of this Section conflict with the express terms of a Series Supplement, such Series Supplement shall control.

(b)    Withdrawal from DTC. If (i) the Corporation advises the Trustee in writing that DTC is no longer willing or able to properly discharge its responsibilities with respect to the Bonds or a Series or other portion thereof, and the Corporation is unable to locate a qualified successor Securities Depository, (ii) the Corporation at its option advises the Trustee in writing that it elects to terminate the book-entry system through DTC or (iii) after the occurrence of any Event of Default, beneficial owners representing a Majority in Interest of the Bonds held by DTC advise DTC in writing that the continuation of a book-entry system through DTC is no longer in the best interests of the beneficial owners, then DTC shall notify its participants and the Trustee of the occurrence of any such event and of the availability of Bonds to registered owners requesting the same. Upon surrender to the Trustee of the typewritten Bonds by DTC, accompanied by registration instructions, the Corporation shall execute and provide to the Trustee, and the Trustee shall authenticate, Bonds in accordance with the written instructions of DTC. None of the Corporation, the State or the Trustee shall be liable for any delay in delivery

21

of such instructions and may conclusively rely on, and shall be fully protected in relying on, such instructions. Unless otherwise specified by Series Supplement or Officer's Certificate, the regular record date shall in that event be the close of business on the tenth Business Day preceding a Distribution Date.

## ARTICLE IV

## FLOW OF FUNDS

### Section 4.01.    Accounts.

The following Accounts are hereby established and shall be held and maintained by the Trustee:

> Pledged Revenues Account;
> Operating Account;
> Debt Service Account;
> Debt Service Reserve Account;
> Supplemental Account;
> Costs of Issuance Account; and
> Rebate Account.

The Corporation may also by Supplemental Indenture create additional Accounts and sub-accounts within any Account. Amounts in the foregoing Accounts may be invested by the Trustee in Eligible Investments.

### Section 4.02.    Costs of Issuance.

Upon issuance of a Series of Bonds, the amount of proceeds thereof specified in the Series Supplement relating to such Bonds shall be deposited in the Costs of Issuance Account for payment of the Costs of Issuance. Payment of the Costs of Issuance not paid at the time a Series of Bonds is issued shall be made by the Trustee from the proceeds of such Series of Bonds on deposit in the Costs of Issuance Account upon receipt of an Officer's Certificate stating with respect to each payment the name of each payee, the amount payable to each payee and that each payment constitutes Costs of Issuance. Any money or investments held in the Costs of Issuance Account in excess of the amount required to pay any Costs of Issuance then unpaid, as determined in accordance with an Officer's Certificate, shall be transferred to the Pledged Revenues Account. Nothing herein is intended to prohibit the Corporation to pay Costs of Issuance directly from Bond proceeds or as Operating Expenses.

### Section 4.03.    Application of Pledged Revenues.

(a)    Any Pledged Revenues received by the Corporation shall be promptly (and in no event later than two Business Days after receipt) transferred to the Trustee. Unless otherwise specified in this Indenture, the Trustee will deposit all Pledged Revenues received by it in the Pledged Revenues Account. To the extent that the Trustee shall in error have credited Unsold Settlement Payments or Previously Purchased and Pledged Settlement Payments to the Pledged Revenues Account, the Trustee shall within one (1) Business Day transfer such Unsold

22

Settlement Payments to or for the account of the State and any such Previously Purchased and Pledged Settlement Payments to or for the account of the Series 2003A Trustee.

No later than five Business Days following each deposit of Pledged Revenues to the Pledged Revenues Account (but in no event later than the next Distribution Date), the Trustee will withdraw Pledged Revenues on deposit in the Pledged Revenues Account and transfer such amounts as follows and in the following order of priority; provided, however, that (x) payments received on Swap Contracts, and investment earnings on amounts in the Funds and Accounts (other than the Debt Service Reserve Account, investment earnings on which shall be retained therein until the amounts on deposit therein are at least equal to the Debt Service Reserve Requirement, and on the second Business Day preceding each Distribution Date amounts on deposit in the Debt Service Reserve Account in excess of the Debt Service Reserve Requirement shall be transferred to the Pledged Revenues Account and, from there, immediately to the Debt Service Account) will be deposited directly to the Debt Service Account and (y) payments received on any Contingency Contract pursuant to Section 5.06(f) shall, whether or not an Event of Default has occurred, be deposited directly to the Debt Service Account:

(1)      (a) to the Trustee the amount required to pay the Trustee fees and expenses (including reasonable attorney's fees, if applicable) due, and not previously paid or funded, during the current Fiscal Year and, if the Deposit Date is during the period from May 1 through October 31 of any year, during the first full six months of the next Fiscal Year and (b) to the Operating Account an amount specified by Officer's Certificate for Operating Expenses (provided that such amounts paid pursuant to clauses (a) and (b) shall not exceed the Operating Cap and Operating Expenses shall not include any termination payments, term-out payments or loss amounts on Ancillary Contracts or Swaps), in each case for the current Fiscal Year and, if the Deposit Date is between May 1 and October 31, for the first full six months of the following Fiscal Year; provided, that the amount required to pay any portion of the State Fee in connection with the Series 2003B Bonds shall not be deposited to the Operating Account unless it is specified in an Officer's Certificate that sufficient amounts have been deposited in the Debt Service Account (exclusive of any transfers from the Debt Service Reserve Account pursuant to Sections 403(b)(2) or 403(b)(3) hereof) to meet all principal and interest funding requirements set forth in Section 4.03(a)(2) and 4.03(a)(3) for the period ending on (but not including) December 1, 2004 (transfers to the Operating Account for the State Fee in connection with any Series of Refunding Bonds may include similar restrictions, as set forth in the applicable Series Supplement);

(2)      to the Debt Service Account an amount sufficient to cause the amount therein (together with interest and earnings reasonably expected by the Corporation to be received on investments in the Debt Service Account on or prior to the next succeeding Distribution Date, as evidenced by an Officer's Certificate) to equal interest (including interest at the stated rate on the principal of Outstanding Bonds and on overdue interest, if any) due on the next succeeding Distribution Date and, in the case of interest due at variable rates on Bonds, to deposit in separate subaccounts within the Debt Service Account, Bond interest due during the Semiannual Period including such Distribution Date, together with any unpaid interest due on prior Distribution Dates, pro rata, based upon the respective amounts of interest due; provided that with respect to Auction Bonds,

23

the deposit shall be based on actual interest which can be computed as of the transfer date and shall assume, for any period for which interest cannot be calculated, that the Auction Bonds will bear interest at a constant rate equal to the Presumed Auction Rate; and provided, further, that with respect to the Series 2003B Bonds, unless the Trustee is otherwise instructed by an Officer's Certificate, any calculation under this Section 4.03(a)(2) of interest due on Auction Bonds made on any day in the period from the Closing Date to May 31, 2004 (inclusive) and the period from June 2, 2004 to November 30, 2004 (inclusive) shall be based on the Presumed Auction Rate, and any calculation made on June 1, 2004 and December 1, 2004 shall be based on actual interest rates on the Auction Bonds during the period ending on said June 1, 2004 and December 1, 2004,

(3)    to the Debt Service Account an amount sufficient to cause the amount therein (together with interest and earnings reasonably expected by the Corporation to be received on investments in the Debt Service Account on or prior to the next succeeding Distribution Date, as evidenced by an Officer's Certificate), exclusive of the amount on deposit therein or credited thereto under clause (2) above, to equal the principal and Sinking Fund Installments due during the current Fiscal Year;

(4)    to replenish the Debt Service Reserve Account until the amount on deposit therein equals the Debt Service Reserve Requirement;

(5)    to the Debt Service Account the amount which, together with amounts deposited or credited pursuant to clause (2) above, exclusive of the amounts deposited therein or credited thereto pursuant to clause (3) above, will be sufficient to cause the amount on deposit therein (together with interest and earnings reasonably expected by the Corporation to be received on investments in the Debt Service Account on or prior to the next succeeding Distribution Date, as evidenced by an Officer's Certificate) to equal interest (including interest at the stated rate on the principal of Outstanding Bonds and on overdue interest, if any) due (a) during the current Bond Year and (b) if the Deposit Date is during the period from January 1 through June 30 of any year, during the first six months of the next Bond Year (or, in the case of variable rate Bonds, during the first complete Semiannual Period in such next Bond Year), assuming that principal and Sinking Fund Installments of the Bonds will be paid in the amounts deposited pursuant to clause (3) above;

(6)    in the amounts and to the Funds and Accounts established by Series Supplement for Junior Payments; and

(7)    to the Supplemental Account, all Pledged Revenues remaining on deposit in the Pledged Revenues Account.

In calculating deposits to the Accounts established hereunder, payments by the Corporation under Swap Contracts providing for variable rate payments and interest on variable-rate Bonds (other than Auction Bonds) shall be assumed at the Maximum Rate; and such deposits for such payments shall be transferred to the Pledged Revenues Account pursuant to Officer's Certificates reporting accruals at the actual rates.

434408.8 026563 IND

On each December 31 and each April 15, the Trustee shall calculate the amount of cash and investments on deposit in the Pledged Accounts. On or before (i) each January 5 (based on the preceding December 31 calculation) and (ii) each April 20 (based on the preceding April 15 calculation), the Trustee shall notify the Corporation and the State as to whether such amounts are sufficient to pay all principal and Sinking Fund Installments of and interest on the Bonds scheduled to be paid on the next succeeding June 1 and December 1.

On the tenth (10th) day of the calendar month preceding each Distribution Date, the Trustee shall compare (i) the liquidation value of the aggregate amount on deposit in the Debt Service Account, the Debt Service Reserve Account and the Supplemental Account (other than (a) amounts representing proceeds of refunding obligations and amounts, if any, delivered by the State to the Corporation not constituting payments on any Contingency Contract, (b) amounts that do not constitute Pledged Settlement Payments or payments made to the Corporation or Trustee under Contingency Contracts, Ancillary Contracts and Swap Contracts, and (c) amounts set aside for the payment of Bonds) to (ii) the principal amount of and accrued interest (if any) on Bonds that will remain Outstanding after the application of amounts described below on such Distribution Date, and if the amount in clause (i) is greater than the amount described in clause (ii) as of such Distribution Date, then the Trustee shall liquidate the investments in the Pledged Accounts and shall withdraw from the Pledged Accounts an amount sufficient to, and shall, redeem, in accordance with Section 4.06(e), the Bonds in full on such Distribution Date.

(b)      On each Distribution Date (except with respect to clause (1) below and clause (2)(i) below), the Trustee will apply amounts in the various Accounts in the following order of priority:

(1)      at any time, from the Operating Account, to the parties entitled thereto, to pay Operating Expenses in the amount specified in an Officer's Certificate;

(2)      from the Debt Service Account (i) at any time, as directed in an Officer's Certificate, to the Pledged Revenues Account any balance therein in excess of the amount required to be on deposit therein pursuant to Section 4.03(a)(2), and (ii) to pay interest on the Outstanding Bonds (including interest on overdue interest, if any) due on such Distribution Date, plus any unpaid interest due on prior Distribution Dates (and, to the extent that amounts in the Debt Service Account are insufficient therefor, from amounts that shall be transferred on such Distribution Date to the Debt Service Account from the Supplemental Account and the Debt Service Reserve Account, in that order);

(3)      from the Debt Service Account (and, to the extent that amounts in the Debt Service Account are insufficient therefor, from amounts that shall be transferred on such Distribution Date to the Debt Service Account from the Supplemental Account and the Debt Service Reserve Account, in that order), to pay in order of Maturity Dates and Sinking Fund Installment Dates, the principal and Sinking Fund Installments due on such Distribution Date;

(4)      from the Debt Service Reserve Account, any amount in excess of the Debt Service Reserve Requirement to the Pledged Revenues Account and from there immediately to the Debt Service Account;

25

(5)    from the Funds and Accounts established by Series Supplement, to make Junior Payments; and

(6)    from the Supplemental Account, to one or more separate subaccounts therein, to provide irrevocably for the payment of Bonds in accordance with Section 2.02 or the definition hereunder of "Outstanding", or to pay the optional redemption or purchase price of Bonds to be redeemed or purchased on such Distribution Date.

(c)    The transfers and payments to be made under this Article shall be appropriately adjusted by Series Supplement or Officer's Certificate of the Corporation delivered to the Trustee to reflect the date of issue of Bonds, any accrued or capitalized interest deposited in the Debt Service Account, actual rates of interest, any amount needed or held in the Accounts for Debt Service, and any purchase or redemption of Bonds, so that there will be available on each Distribution Date the amount necessary to pay Debt Service and so that accrued or capitalized interest will be applied to the installments of interest to which it is applicable.

(d)    The Corporation covenants in Article V, for the benefit of the Beneficiaries, to pay its Operating Expenses.

(e)    After making all deposits and payments set forth above, and provided that there are no Outstanding Bonds and no obligations to make payments to any Beneficiaries which are secured by the pledge of this Indenture, the Trustee shall deliver any amounts remaining in any Accounts to the registered owner of the Series 2003B Residual Certificate.

### Section 4.04.    Pledged Revenues Account.

Money shall be deposited in the Pledged Revenues Account as provided in this Indenture. The money in the Pledged Revenues Account shall be held in trust and, except as otherwise provided in this Indenture, shall be applied solely to the payment of Debt Service.

### Section 4.05.    Swap Contracts and Ancillary Contracts.

The Corporation may enter into, amend or terminate, as it determines to be necessary or appropriate, Swap Contracts or Ancillary Contracts with the approval (as required by the Act) of the State Representative, and may by Series Supplement or other Supplemental Indenture provide for the receipt of payments thereunder as Pledged Revenues, and provide for the payment of amounts due from the Corporation thereunder as Junior Payments. Each Swap Contract must be with a counterparty which is any entity (i) the debt securities of which are rated at least "Aa1" by Moody's and in one of the two highest long-term debt rating categories by S&P and Fitch (if rated by Fitch) or (ii) the obligations of which under the Swap Contract are either so rated or guaranteed or insured by an entity the debt securities or insurance policies of which are so rated or (iii) the debt securities of which are rated in the third highest long-term debt rating category by Moody's, S&P and Fitch (if rated by Fitch) or whose obligations are guaranteed or insured by an entity so rated, in either case the obligations of which under the contract are continuously and fully secured by Eligible Investments meeting criteria provided by the Rating Agencies to the Corporation and then in effect.

### Section 4.06.    Redemption or Purchase of the Bonds.

26

(a)      The Corporation may redeem Bonds at its option in accordance with their terms and the terms of the applicable Series Supplement and, subject to Section 4.03 and this Section 4.06, shall redeem Bonds in accordance with their terms pursuant to any mandatory redemption established by Series Supplement. When Bonds are called for redemption, the accrued interest thereon shall become due on the redemption date. To the extent not otherwise provided, the Corporation shall deposit with the Trustee on or prior to the redemption date a sufficient sum to pay principal or Sinking Fund Installments, redemption premium, if any, and accrued interest.

(b)      Unless otherwise specified by Series Supplement, there shall, at the option of the Corporation, be applied to or credited against any sinking fund requirement the principal amount of any Bonds subject to redemption therefrom that have been purchased or redeemed and not previously so applied or credited.   To the extent set forth in the applicable Series Supplement, Bonds purchased by the Corporation shall be promptly tendered to the Trustee for cancellation.

(c)      When a Bond is to be redeemed prior to its Maturity Date, the Trustee shall give notice in the name of the Corporation, which notice shall identify the Bonds to be redeemed, state the date fixed for redemption and state that such Bonds will be redeemed at the Corporate Trust Office of the Trustee or a Paying Agent. The notice shall further state that on such date there shall become due and payable upon each Bond to be redeemed the redemption price thereof, together with interest accrued to the redemption date, and that money therefor having been deposited with the Trustee or Paying Agent on or prior to the redemption date, from and after such date, interest thereon shall cease to accrue. The Trustee shall give 15 days' notice by mail, or otherwise transmit the redemption notice in accordance with any appropriate provisions hereof, to the registered owners of any Bonds which are to be redeemed, at their addresses shown on the registration books of the Corporation. Such notice may be waived by any Holder of Bonds to be redeemed. Failure by a particular Holder to receive notice, or any defect in the notice to such Holder, shall not affect the redemption of any other Bond. Any notice of redemption given pursuant to this Indenture may be rescinded by Written Notice by the Corporation to the Trustee no later than 5 days prior to the date specified for redemption. The Trustee shall give notice of such rescission as soon thereafter as practicable in the same manner and to the same persons, as notice of such redemption was given as described in this subsection (c). In making the determination as to how much money will be available in the Supplemental Account on any Distribution Date for the purpose of giving notice of redemption under this subsection (c), the Trustee shall take into account investment earnings which it reasonably expects to be available on or prior to such Distribution Date for application pursuant to Section 4.03 hereof.

(d)      Unless otherwise specified herein or by Series Supplement: (i) if less than all the Outstanding Bonds of like Series and Maturity Date are to be redeemed, the particular Bonds to be redeemed shall be selected by the Trustee by such method as it shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to any authorized denominations) of the principal of Bonds (including the Accreted Value at maturity of a Bond) of a denomination larger than the minimum authorized denomination, and (ii) the Trustee shall redeem any and all Bonds held by the provider of an Ancillary Contract prior to

27

any other Bonds redeemed hereunder unless otherwise directed by an Officer's Certificate of the Corporation.

(e)     The Bonds are subject to mandatory redemption in full, at a redemption price equal to 100% of the principal amount thereof to be redeemed, plus interest accrued thereon to the date fixed for redemption, from moneys withdrawn from the Pledged Accounts pursuant to the final paragraph of Section 4.03(a) on the Distribution Date specified therein.

(f)     The Bonds are subject to redemption as set forth in the related Series Supplement, at a redemption price equal to 100% of the principal amount of the Bonds to be redeemed plus accrued interest thereon to the date fixed for redemption, without premium, from Surplus Pledged Revenues on deposit in the Supplemental Account. Except as otherwise set forth in the applicable Series Supplement, any redemptions pursuant to this subsection (f) shall redeem the Bonds having Maturity Dates and of a Series designated by the Corporation and by lot among Bonds of a Series within a maturity and, if applicable, fixed interest rate.

(g)     To the extent set forth in the applicable Series Supplement, the Bonds shall be subject to redemption from Sinking Fund Installments.

### Section 4.07.    Investments.

(a)     Pending its application under this Indenture, money in the Funds and Accounts may be invested by the Trustee pursuant to written direction of the Corporation in Eligible Investments maturing or redeemable at the option of the holder at or before the time when such money is expected to be needed. Specifically, Eligible Investments shall mature or be redeemable at the option of the Corporation in an amount and at such times sufficient to make payments under clauses (1) through (4) of Section 4.03(b) on the next succeeding Distribution Date. Investments shall be held by the Trustee in the respective Funds and Accounts and shall be sold or redeemed to the extent necessary to make payments or transfers from each Fund or Account. The Trustee shall not be liable for any losses on investments made at the direction of the Corporation.

(b)     On the Business Day immediately preceding each Distribution Date, the Trustee shall value the money and investments in the Debt Service Reserve Account according to the methods set forth in this Section 4.07. Any amounts in the Debt Service Reserve Account in excess of the Debt Service Reserve Requirement shall be applied as provided in Section 4.03(a).

(c)     In computing the amount in a Fund or Account, the value of Eligible Investments shall be determined by the Trustee at least as frequently as the Business Day preceding each Distribution Date and shall be calculated as follows:

(i)     As to investments the bid and asked prices of which are published on a regular basis in The Wall Street Journal (or, if not there, then in The New York Times): the average of the bid and asked prices for such investments so published on or most recently prior to such time of determination;

(ii)    As to investments the bid and asked prices of which are not published on a regular basis in The Wall Street Journal or The New York Times: the average bid price at

28

such time of determination for such investments by any two nationally recognized government securities dealers (selected by the Trustee in its absolute discretion) at the time making a market in such investments or the bid price published by a nationally recognized pricing service;

(iii)    As to certificates of deposit and bankers acceptances: the face amount thereof, plus accrued interest; and

(iv)    As to any investment not specified above: the value thereof established by prior agreement between the Corporation and the Trustee (with written notice to Moody's of such agreement).

(d)    The Trustee may hold undivided interests in Eligible Investments for more than one Fund or Account (for which they are eligible) and may make interfund transfers in kind.

(e)    In respect of Defeasance Collateral held for Defeased Bonds, this Section 4.07 shall be effective only to the extent it is consistent with other applicable provisions of this Indenture or any separate escrow agreement.

## Section 4.08.    Unclaimed Money.

Anything in the Indenture to the contrary notwithstanding, any moneys held by a Fiduciary in trust for the payment and discharge of any of the Bonds which remain unclaimed after the date when such Bonds have become due and payable, either at their stated maturity dates or by call for earlier redemption, if such moneys were held by the Fiduciary at such date, or after the date of deposit of such moneys if deposited with the Fiduciary after the said date when such Bonds became due and payable, shall be applied when and as provided in by the escheat laws of the State and the Fiduciary shall thereupon be released and discharged with respect thereto and the Bondholders shall have such rights as are provided in said laws.

## Section 4.09.    Rebate.

(a)    The Trustee shall establish and maintain an account separate from any other account established and maintained hereunder designated as the Rebate Account. Subject to the transfer provisions provided in paragraph (e) below, all money at any time deposited in the Rebate Account shall be held by the Trustee in trust, to the extent required to satisfy the Rebate Requirement (as defined, computed and provided to the Trustee in accordance with the Tax Certificate), for payment to the United States Treasury. Neither the Corporation nor any Bondholder shall have any rights in or claim to such money in the Rebate Account. All amounts deposited into or on deposit in the Rebate Account shall be governed by this Section, by Section 5.04 hereof and by the Tax Certificate (which is incorporated herein by reference). The Trustee shall be deemed conclusively to have complied with such provisions if it follows such directions of the Corporation, and shall have no liability or responsibility to enforce compliance by the Corporation with the terms of the Tax Certificate.

(b)    Upon the Corporation's written direction, an amount shall be deposited to the Rebate Account by the Trustee from amounts on deposit in the Operating Account so that the balance in the Rebate Account shall equal the Rebate Requirement. Computations of the Rebate

434408.8 026563 IND

Requirement shall be furnished by or on behalf of the Corporation in accordance with the Tax Certificate. The Trustee shall supply to the Corporation all information required to be provided in the Tax Certificate to the extent such information is reasonably available to the Trustee.

(c)    The Trustee shall have no obligation to rebate any amounts required to be rebated pursuant to this Section, other than from moneys held in the Operating Account or the Rebate Account created under this Indenture.

(d)    At the written direction of the Corporation, the Trustee shall invest all amounts held in the Rebate Account in Eligible Investments, subject to the restrictions set forth in the Tax Certificate. Moneys shall not be transferred from the Rebate Account except as provided in subsection (e) below. The Trustee shall not be liable for any consequences arising from such investment.

(e)    Upon receipt of the Corporation's written directions, the Trustee shall remit part or all of the balances in the Rebate Account to the United States, as directed in writing by the Corporation. In addition, if the Corporation so directs, the Trustee will deposit money into or transfer money out of the Rebate Account from or into such Accounts or Funds as directed by the Corporation's written directions; provided, that only moneys in excess of the Rebate Requirement may, at the written direction of the Corporation, be transferred out of the Rebate Account to such other Accounts or Funds or to anyone other than the United States in satisfaction of the arbitrage rebate obligation. Any funds remaining in the Rebate Account after each five year remittance to the United States, redemption and payment of all of the Bonds and payment and satisfaction of any Rebate Requirement, or after provision has been made therefor satisfactory to the Trustee, shall be withdrawn and deposited in the Pledged Revenues Account.

Notwithstanding any other provision of this Indenture, the obligation to remit the Rebate Requirement to the United States and to comply with all other requirements of this Section, Section 5.04 and the Tax Certificate shall survive the defeasance or payment in full of the Tax-Exempt Bonds.

### Section 4.10.    Application of Supplemental Account.

In addition to the application of amounts deposited in the Supplemental Account pursuant to Section 4.03, and whether or not an Event of Default shall have occurred, the Corporation shall cause amounts in the Supplemental Account to be applied, at the written direction of the State, to the defeasance, purchase (subject to any applicable maximum purchase price limitation set forth in the Act) or optional redemption of Bonds in accordance with one or more Series Supplements. Notwithstanding Section 4.03(b)(6) hereof or the preceding sentence of this Section 4.10 to the contrary, between April 15 and the next succeeding June 1 or December 1 in each year, no amounts in the Supplemental Account shall be applied or set aside to defease Bonds or to pay the optional redemption or purchase price of Bonds unless there is held in the Pledged Revenues Account and the Debt Service Account sufficient amounts to pay all Debt Service scheduled to be paid on or before such June 1 or December 1 Distribution Date.

30

## ARTICLE V

## COVENANTS

### Section 5.01.    Contract; Obligations to Beneficiaries.

(a)    In consideration of the purchase and acceptance of any or all of the Bonds and Swap Contracts and Ancillary Contracts by those who shall hold the same from time to time, the provisions of this Indenture shall be a part of the contract of the Corporation with the Beneficiaries. The pledge made in this Indenture and the covenants herein set forth to be performed by the Corporation shall be for the equal benefit, protection and security of the Beneficiaries of the same priority. All of the Bonds, or payments on Swap Contracts or Ancillary Contracts of the same priority, regardless of the time or times of their issuance or maturity, shall be of equal rank without preference, priority or distinction of any thereof over any other except as expressly provided pursuant hereto.

(b)    The Corporation covenants to pay when due all sums payable on the Bonds, but only from the Pledged Revenues and money designated herein, subject only to (i) this Indenture, and (ii) to the extent permitted hereby, (x) agreements with Holders of Bonds pledging particular collateral for the payment thereof and (y) the rights of Beneficiaries under Swap Contracts and Ancillary Contracts. The obligation of the Corporation to pay principal or Sinking Fund Installments, interest and redemption premium, if any, to the Holders of Bonds shall be absolute and unconditional, shall be binding and enforceable in all circumstances whatsoever, and shall not be subject to setoff, recoupment or counterclaim.

(c)    The Corporation shall pay its Operating Expenses (including, without limitation, any Bond insurance premiums payable by the Corporation on or after the Closing Date). The Corporation may borrow money to pay, and repay such borrowings as, Operating Expenses. The aggregate amount of such borrowings shall never exceed the Operating Cap.

(d)    The Corporation represents that it is duly authorized pursuant to law, including the Act, to create and issue the Bonds, to enter into this Indenture and to pledge the Pledged Revenues and other collateral purported to be pledged in the manner and to the extent provided herein. The Pledged Revenues and other collateral so pledged are and will be free and clear of any pledge, lien, charge or encumbrance thereon or with respect thereto prior to, or of equal rank with, the pledge created hereby, and all corporate action on the part of the Corporation to that end has been duly and validly taken. The Bonds and the provisions hereof are and will be the valid and binding obligations of the Corporation in accordance with their terms.

(e)    At any and all times the Corporation shall, so far as it may be authorized or permitted by law, pass, make, do, execute, acknowledge and deliver, all and every such further resolutions, acts, deeds, conveyances, assignments, transfers and assurances as may be necessary or desirable for the better assuring, conveying, granting, assigning, confirming and affecting the rights, the Pledged Revenues and other collateral hereby pledged or assigned, or intended so to be, or which the Corporation may hereafter become bound to pledge or assign.

### Section 5.02.    Enforcement.

31

The Trustee shall enforce, by appropriate legal proceedings, each covenant, pledge or agreement made by the State in the Sale Agreement for the benefit of any of the Beneficiaries.

### Section 5.03.    Tax Covenants.

The Corporation shall at all times do and perform all acts and things permitted by law and necessary or desirable to assure that interest paid by the Corporation on Tax-Exempt Bonds shall be excludable from gross income for federal income tax purposes pursuant to § 103(a) of the Code; and no funds of the Corporation shall at any time be used directly or indirectly to acquire securities, obligations or other investment property the acquisition or holding of which would cause any Tax-Exempt Bond to be an arbitrage bond as defined in the Code. If and to the extent required by the Code, the Corporation shall periodically, at such times as may be required to comply with the Code, pay as an Operating Expense the amount, if any, required by the Code to be rebated or paid as a related penalty. Without limiting the foregoing, the Corporation agrees that it will comply with the provisions of the Tax Certificate which are incorporated herein by reference. Notwithstanding any other provisions hereof, the requirements of this Section 5.03 shall survive the defeasance or other payment of the Tax-Exempt Bonds.

### Section 5.04.    Accounts and Reports.

The Corporation shall:

(1)    cause to be kept books of account in which complete and accurate entries shall be made of its transactions relating to all Funds and Accounts hereunder, which books shall, at all reasonable times and at the expense of the Corporation, be subject to the inspection by the Trustee and the Holders of an aggregate of not less than 25% in principal amount or Accreted Value of Bonds then Outstanding or their representatives duly authorized in writing;

(2)    annually, within 210 days after the close of each Fiscal Year, deliver to the Trustee and each Rating Agency, a copy of its financial statements for such Fiscal Year, as audited by an independent certified public accountant or accountants;

(3)    keep in effect at all times by Officer's Certificate an accurate and current schedule of all Debt Service to be payable over the term of then Outstanding Bonds, Swap Contracts, and Ancillary Contracts, certifying for the purpose such estimates as may be necessary; and

(4)    for each Distribution Date, cause the Trustee to provide to the Corporation and each Rating Agency a written statement indicating:

(A)    the Outstanding Bonds of each Series;

(B)    the amount of principal and Sinking Fund Installments to be paid to the Holders of the Bonds of each Series on such Distribution Date;

(C)    the amount of interest to be paid to the Holders of the Bonds of each Series on such Distribution Date;

434408.8 026563 IND

(D)    the amount on deposit in each Fund and Account as of that Distribution Date;

(E)    the aggregate principal amount that has been applied to the defeasance, purchase or optional redemption of the Bonds of each Series, pursuant to Section 4.03(b)(6) of this Indenture, during the period ending on such Distribution Date and commencing on the day after the preceding Distribution Date;

(F)    the Debt Service Reserve Requirement as of that Distribution Date;

(G)    whether or not there have been any payments received under a Contingency Contract since the preceding Distribution Date; and

(H)    the amount of Junior Payments paid or to be paid to Beneficiaries under each Swap Contract and Ancillary Contract on such Distribution Date.

### Section 5.05.    Ratings.

Unless otherwise specified by Series Supplement, the Corporation shall pay such reasonable fees and provide such available information as may be necessary to obtain and keep in effect ratings on all the Bonds from at least one Rating Agency.

### Section 5.06.    Affirmative Covenants.

The Corporation hereby covenants and agrees as follows:

(a)    *Punctual Payment.* The Corporation shall duly and punctually pay the principal or Sinking Fund Installments of and premium, if any, and interest on the Bonds in accordance with the terms of the Bonds and this Indenture.

(b)    *Maintenance of Existence.* Unless the Special Conditions described in Section 5.08(e) are met, the Corporation shall keep in full effect its existence, rights and franchises as a public benefit corporation of the State under the laws of the State.

(c)    *Protection of Collateral.* The Corporation shall from time to time execute and deliver all documents and instruments, and will take such other action, as is necessary or advisable to: (i) maintain or preserve the lien and security interest (and the priority thereof) of the Indenture; (ii) perfect, publish notice of or protect the validity of any grant made or to be made by this Indenture; (iii) preserve and defend title to the Pledged Revenues and other collateral pledged under this Indenture and the rights of the Trustee and the Bondholders and Beneficiaries in such collateral against the claims of all persons and parties, including the challenge by any party to the validity or enforceability of the Consent Decree, this Indenture, the Act or the Sale Agreement or the performance by any party thereunder; (iv) cause the Trustee to enforce the Sale Agreement; (v) pay any and all taxes levied or assessed upon all or any part of the collateral; or (vi) carry out more effectively the purposes of this Indenture.

(d)    *Performance of Obligations.* The Corporation (i) shall diligently pursue any and all actions to enforce its rights under each instrument or agreement included in the

33

collateral and (ii) shall not take any action and will use its best efforts not to permit any action to be taken by others that would release any person from any of such person's covenants or obligations under any such instrument or agreement or that would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any such instrument or agreement, except, in each case, as expressly provided in this Indenture, the Sale Agreement or the Consent Decree.

(e)     *Notice of Events of Default.* The Corporation shall give the Trustee and Rating Agencies prompt written notice of each Event of Default under this Indenture.

(f)     *Concerning Payments Under Contingency Contracts.* If, on the fifth Business Day preceding any Distribution Date, the sum of the amounts on deposit to the credit of the Debt Service Account, the Debt Service Reserve Account and the Supplemental Account shall be less than the Debt Service to be payable or scheduled to be payable on such Distribution Date, then the Trustee shall cause written notice thereof, and demand for payment of an amount necessary to eliminate any such deficiency, to be promptly submitted on behalf of the Corporation to the Director of the Budget of the State pursuant to the terms of the related Contingency Contract, such payment to be received (subject to the terms of the related Contingency Contract) in any event on or before such Distribution Date, and any amounts paid pursuant to such Contingency Contract shall be deposited directly to the credit of the Debt Service Account for the purposes of making payments on such Distribution date pursuant to Sections 4.03(b)(2) and (3) hereof.

### Section 5.07.    Agreement with the State.

(a)     Pursuant to the Act, the State pledges and agrees with the Corporation, and the owners of the Bonds and all Beneficiaries by reason of the inclusion herein by the Corporation, as agent of the State, of this pledge and agreement, that the State shall (i) irrevocably direct, through the Attorney General, the Independent Auditor and the Escrow Agent (as such terms are defined in the MSA) to transfer all Pledged Settlement Payments directly to the Trustee as the assignee of the Corporation, (ii) enforce, at the expense of the State, its right to collect all moneys due from the PMs under the MSA, (iii) diligently enforce, at the expense of the State, the Qualifying Statute as contemplated in section IX(d)(2)(B) of the MSA against all tobacco products manufacturers selling tobacco products in the State that are not in compliance with the Qualifying Statute, in each case in the manner and to the extent deemed necessary in the judgment of the Attorney General, provided, however, as stated in the Agreement, (a) that the remedies available to the Corporation and the Beneficiaries for any breach of the pledges and agreements of the State set forth in this clause (iii) shall be limited to injunctive relief, and (b) that the State shall be deemed to have diligently enforced the Qualifying Statute so long as there has been no judicial determination by a court of competent jurisdiction in the State, in an action commenced by a PM under the MSA, that the State has failed to diligently enforce the Qualifying Statute for the purposes of section IX(d)(2)(B) of the MSA, (iv) neither amend the MSA nor the Consent Decree or take any other action in any way that would materially adversely (a) alter, limit or impair the Corporation's right to receive Pledged Settlement Payments, or (b) limit or alter the rights vested by the Act and this Indenture in the Corporation to fulfill the terms of its agreements with the Beneficiaries, or (c) in any way impair the rights and remedies of the Beneficiaries or the security for the Bonds until the Bonds,

34

together with the interest thereon and all costs and expenses in connection with any action or proceedings by or on behalf of the Beneficiaries, are fully paid and discharged (provided, that nothing in the Act or this Indenture shall be construed to preclude the State's regulation of smoking and taxation and regulation of the sale of cigarettes or the like or to restrict the right of the State to amend, modify, repeal or otherwise alter statutes imposing or relating to the taxes), and (v) not amend, supersede or repeal the Qualifying Statute and the Complementary Legislation, in any way that would materially adversely affect the amount of any payment to, or materially adversely affect the rights of, the Corporation or the Beneficiaries. Notwithstanding these pledges and agreements by the State, the Attorney General of the State may in his or her discretion enforce any and all provisions of the MSA without limitation.

(b)    In accordance with the Act, prior to the date that is one year and one day after which the Corporation no longer has any Bonds Outstanding, the Corporation shall have no authority to file a voluntary petition under Chapter 9 of the Federal Bankruptcy Code or such corresponding chapter or section as may, from time to time, be in effect, and neither any public officer nor any organization, entity or other person shall authorize the Corporation to be or to become a debtor under Chapter 9 or any successor or corresponding chapter or sections of the Federal Bankruptcy Code during such period. The State covenants with the owners of the Bonds and all Beneficiaries by reason of the inclusion herein by the Corporation, as agent of the State, of this covenant, that the State will not limit or alter the denial of authority under this Section 5.07(b) during the period referred to in the preceding sentence.

### Section 5.08.    Negative Covenants.

The Corporation hereby covenants and agrees as follows:

(a)    *Sale of Assets.* Except as expressly permitted by this Indenture, the Corporation shall not sell, transfer, exchange or otherwise dispose of any of its properties or assets that are pledged under this Indenture.

(b)    *No Setoff.* The Corporation shall not claim any credit on, or make any deduction from the principal or premium, if any, or interest due in respect of, the Bonds or payments due to other Beneficiaries or assert any claim against any present or former Bondholder or Beneficiary by reason of the payment of taxes levied or assessed upon any part of the collateral.

(c)    *Liquidation.* Unless the Special Conditions described in Section 5.08(e) below are met, the Corporation shall not terminate its existence or dissolve or liquidate in whole or in part.

(d)    *Limitation of Liens.* The Corporation shall not (i) permit the validity or effectiveness of this Indenture or the Sale Agreement to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any person to be released from any covenants or obligations with respect to the Bonds under this Indenture except as may be expressly permitted hereby, (ii) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture and any lien securing Permitted Indebtedness) to be created on or extend to or otherwise arise upon

35

or burden the collateral or any part thereof or any interest therein or the proceeds thereof or (iii) permit the lien of this Indenture not to constitute a valid first priority security interest in the collateral.

(e)     *Limitations on Consolidation, Merger, Sale of Assets, etc.* Except as otherwise provided in this Indenture, the Corporation shall not consolidate or merge with or into any other person, or convey or transfer all or substantially all of its properties or assets, unless the following conditions (the "Special Conditions") are met:

(i)     an entity shall survive such event, and such entity shall be organized and existing under the laws of the United States, the State or any state and shall expressly assume the due and punctual payment of all obligations owing to Beneficiaries and the performance or observance of every agreement and covenant of the Corporation in this Indenture;

(ii)     immediately after giving effect to such transaction, no Default has occurred under this Indenture;

(iii)     the Corporation has received an opinion of Bond Counsel to the effect that such transaction will not adversely affect the exclusion of interest on any Tax-Exempt Bond from gross income for federal income tax purposes;

(iv)     any action as is necessary to maintain the lien and security interest created by this Indenture has been taken; and

(v)     the Corporation has delivered to the Trustee an Officer's Certificate and an opinion of Counsel to the effect that such transaction complies with this Indenture and that all conditions precedent to such transaction have been complied with.

(f)     *No Other Business.* The Corporation shall not engage in any business other than financing, purchasing, owning and managing any portion of the State's Share sold by the State to the Corporation in the manner contemplated by this Indenture, the Sale Agreement and any other sale agreement with the State, and activities incidental thereto.

(g)     *No Borrowing.* The Corporation shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except Permitted Indebtedness, and in the event that the Corporation incurs indebtedness other than issuing Bonds, the Corporation shall provide the Rating Agency written notice of such indebtedness. Swap Contracts and Ancillary Contracts are not indebtedness within the meaning of this covenant.

(h)     *Guarantees, Loans, Advances and Other Liabilities.* Except as otherwise contemplated by this Indenture and the Sale Agreement and any other sale agreement with the State (including the issuance of obligations secured by Previously Purchased and Pledged Settlement Payments or by Unsold Settlement Payments), the Corporation shall not make any loan or advance of credit to, or guarantee (directly or indirectly or by an instrument having the effect or assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stock or dividends of, or own, purchase, repurchase or acquire

36

(or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other person.

(i)    *Restricted Payments.* The Corporation shall not, directly or indirectly, make payments to or distributions from the Pledged Revenues Account except in accordance with this Indenture.

### Section 5.09.    Prior Notice.

The Corporation shall give each Rating Agency thirty (30) days' prior written notice of each issue of Bonds other than the Series 2003B Bonds, with a copy of the proposed Series Supplement, and of each Supplemental Indenture, amendment to the Sale Agreement, Contingency Contract, Swap Contract, Ancillary Contract or defeasance or redemption of Bonds.

### ARTICLE VI

### ADDITIONAL NON-IMPAIRMENT ACKNOWLEDGMENTS

### Section 6.01.    Pledged Settlement Payments.

(a)    The State has provided through the MSA, the Consent Decree and the Sale Agreement for (i) the Corporation's ownership and receipt of the Pledged Settlement Payments, (ii) the receipt or other application of the net proceeds of the Bonds (not including Refunding Bonds) and (iii) the resulting benefits to the people of the State. The Corporation acknowledges that the MSA, the Consent Decree and the Sale Agreement constitute important security provisions of the Bonds and waives any right to assert any claim to the contrary and agrees that it shall neither in any manner directly or indirectly assert, nor in any manner directly or indirectly support the assertion by the State or any other person of, any such claim to the contrary.

(b)    By acknowledging that the MSA, the Consent Decree and the Sale Agreement constitute important security provisions of the Bonds, the Corporation also acknowledges that, in the event of any failure or refusal by the State to comply with its agreements included in the MSA, the Consent Decree or the Sale Agreement, the Holders of the Bonds may have suffered damage, the extent of the remedy for which may be, to the fullest extent permitted by applicable federal and the State law, determined, in addition to any other remedy available at law or in equity, in the course of any action taken pursuant hereto; and the Corporation hereby waives any right to assert any claim to the contrary and agrees that it shall neither in any manner directly or indirectly assert, nor in any manner directly or indirectly support the assertion by the State or any other person of, any claim to the effect that no such monetary damages have been suffered.

## ARTICLE VII

## THE FIDUCIARIES

Section 7.01.    Trustee's    Organization,    Authorization,    Capacity    and
Responsibility.

(a)    The Trustee represents and warrants that it is duly organized and validly
existing as a banking corporation under the laws of the State of New York, with the capacity to
exercise the powers and duties of the Trustee hereunder, and that by proper corporate action it
has duly authorized the execution and delivery of this Indenture.

(b)    The duties and responsibilities of the Trustee shall be as provided solely as
set forth herein. Notwithstanding the foregoing, no provision of this Indenture shall require the
Trustee to expend or risk its own funds or otherwise incur any financial liability in the
performance of any of its duties hereunder, or in the exercise of any of its rights or powers,
unless it receives indemnity satisfactory to it against any loss, liability or expense. Whether or
not therein expressly so provided, every provision of this Indenture relating to the conduct or
affecting the liability of or affording protection to the Trustee shall be subject to the provisions of
this Article.

(c)    As Trustee hereunder:

(i)    the Trustee may conclusively rely and shall be fully protected in acting or
refraining from acting upon any Officer's Certificate, opinion of Counsel (or both),
resolution, certificate, statement, instrument, opinion, report, notice, request, direction,
consent, order, bond, debenture, note, other evidence of indebtedness or other paper or
document believed by it to be genuine and to have been signed or presented by the proper
person or persons. The Trustee need not investigate any fact or matter stated in any
document, but the Trustee, in its discretion, may make such further inquiry or
investigation into such facts or matters as it may see fit;

(ii)    before the Trustee acts or refrains from acting, it may require an Officer's
Certificate and/or an opinion of Counsel. The Trustee shall not be liable for any action it
takes or omits to take in accordance with any direction of the Corporation or Holders.
Whenever in the administration of the trusts of this Indenture the Trustee shall deem it
necessary or desirable that a matter be proved or established prior to taking or suffering
or omitting to take any action hereunder, such matter (unless other evidence in respect
thereof be herein specifically prescribed) may, in the absence of negligence or willful
misconduct on the part of the Trustee, be deemed to be conclusively proved and
established by an Officer's Certificate delivered to the Trustee, and such certificate, in the
absence of negligence or willful misconduct on the part of the Trustee, shall be full
warrant to the Trustee for any action taken, suffered or omitted to be taken by it under the
provisions of this Indenture upon the faith thereof;

(iii)    any request, direction, order or demand of the Corporation mentioned
herein shall be sufficiently evidenced by an Officer's Certificate (unless other evidence in

38

respect thereof be herein specifically prescribed); and any Corporation resolution may be evidenced to the Trustee by a copy thereof certified by the secretary or an assistant secretary of the Corporation; and

(iv)    prior to the occurrence of an Event of Default hereunder and after the curing or waiving of all Events of Default, the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, Officers' Certificate, opinion of Counsel, Corporation resolution, statement, instrument, opinion, report, notice, request, consent, order, approval, appraisal, bond, debenture, note, coupon, security, or other paper or document unless requested in writing so to do by a Majority in Interest of the Bonds affected and then Outstanding; and, that, if the payment within a reasonable time to the Trustee of the costs, expenses or liabilities (including its counsel's fees) likely to be incurred by it in the making of such investigation is, in the opinion of the Trustee, not reasonably assured to the Trustee by the security afforded to it by the terms of this Indenture, the Trustee may require indemnity satisfactory to it against such expenses or liabilities as a condition to proceeding.

### Section 7.02.    Rights and Duties of the Trustee and other Fiduciaries.

(a)    All money and investments received by the Trustee or other Fiduciaries under this Indenture shall be held in trust, in a segregated trust account in the trust department of such Fiduciary, not commingled with any other funds, and applied solely pursuant to the provisions hereof.

(b)    The Trustee or other Fiduciaries shall keep proper accounts of their transactions hereunder (separate from its other accounts), which shall be open to inspection on reasonable notice by the Corporation and its representatives duly authorized in writing.

(c)    The Trustee or other Fiduciaries shall not be required to monitor the financial condition of the Corporation and, unless otherwise expressly provided, shall not have any responsibility with respect to reports, notices, certificates or other documents filed with them hereunder, except to make them available for inspection by Beneficiaries.

(d)    The Trustee and each Fiduciary shall be entitled to the advice of counsel (who may be counsel for any party) and shall not be liable for any action taken or omitted in good faith in reliance on such advice. The Trustee and each Fiduciary may rely conclusively on any notice, certificate or other document furnished to it under this Indenture and reasonably believed by it to be genuine. The Trustee, or any other Fiduciary shall not be liable for any action taken or omitted to be taken by it in good faith and reasonably believed by it to be within the discretion or power conferred upon it, or taken by it pursuant to any direction or instruction by which it is governed under this Indenture or omitted to be taken by it by reason of the lack of direction or instruction required for such action, or be responsible for the consequences of any error of judgment reasonably made by it. When any payment or consent or other action by the Trustee or any other Fiduciary is called for by this Indenture, the Trustee or Fiduciary may defer such action pending receipt of such evidence, if any, as it may reasonably require in support thereof. A permissive right or power to act shall not be construed as a requirement to act.

434408.8 026563 IND

(e)    The Trustee or any other Fiduciary shall in no event be liable for the application or misapplication of funds, or for other acts or failures to act, by any person, firm or corporation except by their respective directors, officers, agents, and employees. No recourse shall be had for any claim based on this Indenture, the Bonds or any Swap Contracts or Ancillary Contracts against any director, officer, agent or employee of the Trustee or any Fiduciary unless such claim is based upon the bad faith, fraud or deceit of such person.

(f)    Nothing in this Indenture shall obligate the Trustee or any Fiduciary to pay any debt or meet any financial obligations to any person in relation to the Bonds, Swap Contracts or Ancillary Contracts except from money received for such purposes under the provisions hereof or from the exercise of the Trustee's rights hereunder.

(g)    The Trustee or other Fiduciaries may be or become the owner of or trade in the Bonds or enter into Swap Contracts or Ancillary Contracts with the same rights as if they were not the Fiduciaries.

(h)    Unless otherwise specified by Series Supplement, the Trustee or other Fiduciaries shall not be required to furnish any bond or surety.

(i)    The Corporation covenants and agrees to pay, as and only as an Operating Expense, to the Trustee and any other Fiduciaries from time to time, and the Trustee and any other Fiduciary shall be entitled to, their reasonable fees and expenses, and will further pay or reimburse the Trustee or any other Fiduciaries upon their request, all reasonable expenses, disbursements and advances incurred or made by the Trustee or any other Fiduciaries in accordance with any of the provisions hereof or any other documents executed in connection herewith (including the reasonable compensation and the reasonable expenses and disbursements of their counsel and of all persons not regularly in their employ). The obligations of this Section 7.02 to compensate the Trustee or any other Fiduciaries and to pay or reimburse the Trustee or any other Fiduciaries for reasonable expenses, disbursements and advances shall survive the satisfaction and discharge of this Indenture or the earlier resignation or removal of the Trustee or any other Fiduciary.

(j)    The Corporation hereby agrees to the extent permitted by law to reimburse and hold harmless each Fiduciary from and against any and all claims, damages, losses, liabilities, costs or reasonable expenses whatsoever which such Fiduciary may incur in connection with the performance by such Fiduciary of its obligations under this Indenture; provided, however, that the Corporation shall not be required to reimburse and hold harmless any Fiduciary for any claims, damages, losses, liabilities, costs or expenses caused in whole or in part by such Fiduciary's negligence, bad faith, breach of contract or willful misconduct arising out of or as a result of such Fiduciary's performing its obligations under this Indenture or undertaking any transaction contemplated by this Indenture.

(k)    The indemnification provided in this Section 7.02 does not apply to or extend to any indemnification which may be given by any Fiduciary to any other person.

(l)    The Trustee or any other Fiduciary may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents,

40

custodians and nominees appointed with due care, and, unless the Corporation shall have approved in writing the engagement of any such agent, custodian or nominee, shall be responsible for any negligence, willful misconduct or bad faith on the part of any agent, custodian or nominee so appointed.

(m)    Any fees, expenses, reimbursements or other charges which the Trustee or any Fiduciary may be entitled to receive from the Corporation hereunder, if not otherwise paid, shall be a first lien upon (but only upon) any funds held hereunder by the Trustee for payment of Operating Expenses.

(n)    Nothing herein shall relieve any Fiduciary of responsibility for its negligence, or willful misconduct.

### Section 7.03.    Paying Agents and Registrar.

The Corporation designates the Trustee as Paying Agent and as registrar for the Bonds. The Corporation may appoint additional Paying Agents, generally or for specific purposes, may discharge a Paying Agent from time to time and may appoint a successor, in each case with written notice to each of the Rating Agencies. The Corporation shall designate a successor if the Trustee ceases to serve as Paying Agent. Each Paying Agent shall be a bank or trust company authorized to transact business under the laws of the State, and unless otherwise provided by Series Supplement shall have a capital and surplus of not less than $50,000,000 and be registered as a transfer agent with the Securities and Exchange Commission. The Corporation shall give notice of the appointment of a successor to the Trustee as Paying Agent in writing to each Beneficiary shown on the books of the Trustee. A Paying Agent may but need not be the same person as the Trustee. Unless otherwise provided by the Corporation, the Trustee as Paying Agent shall act as registrar and transfer agent, in accordance with Sections 3.03 and 3.04.

### Section 7.04.    Resignation or Removal of the Trustee.

The Trustee may resign at any time on not less than 30 days' written notice to the Corporation, the Holders and each of the Rating Agencies. The Trustee will promptly certify to the Corporation that it has sent written notice to all Holders and such certificate will be conclusive evidence that such notice was mailed as required hereby. Upon receiving such notice of resignation, the Corporation shall promptly appoint a successor and, upon the acceptance by the successor of such appointment, release the resigning Trustee from its obligations hereunder by written instrument, a copy of which instrument shall be delivered to each of the Holders, the resigning Trustee and the successor Trustee. The Trustee may be removed by the Corporation or by a Majority in Interest of Outstanding Bonds, upon written notice to the Trustee, if rated below investment grade by Moody's and each successor Trustee will have an investment grade rating from Moody's. The Trustee may also be removed by written notice from the Corporation if no Default has occurred or from a Majority in Interest of the Holders of the Outstanding Bonds to the Trustee and the Corporation. No such resignation or removal shall take effect until a successor has been appointed and has accepted the duties of Trustee.

41

**Section 7.05.    Successor Fiduciaries.**

(a)      Any corporation or association which succeeds to the municipal corporate trust business of a Fiduciary as a whole or substantially as a whole, whether by sale, merger, consolidation or otherwise, shall thereby become vested with all the property, rights, powers and duties thereof under this Indenture, without any further act or conveyance and without the execution or filing; of any paper with any party hereto except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.

(b)      In case a Fiduciary resigns or is removed or becomes incapable of acting, or becomes bankrupt or insolvent, or if a receiver, liquidator or conservator of a Fiduciary or of its property is appointed, or if a public officer takes charge or control of a Fiduciary, or of its property or affairs, then such Fiduciary shall with due care terminate its activities hereunder and a successor may, or in the case of the Trustee shall, be appointed by the Corporation. The Corporation shall notify the Holders and the Rating Agencies of the appointment of a successor Trustee in writing within 20 days from the appointment. The Corporation will promptly certify to the successor Trustee that it has given such notice to all Holders and such certificate will be conclusive evidence that such notice was given as required hereby. If no appointment of a successor Trustee is made within 45 days after the giving of written notice in accordance with Section 7.04 or after the occurrence of any other event requiring or authorizing such appointment, the outgoing Trustee or any Holder may apply to any court of competent jurisdiction for the appointment of such a successor, and such court may thereupon, after such notice, if any, as such court may deem proper, appoint such successor. Any successor Trustee appointed under this section shall be a trust company or a bank having the powers of a trust company having a capital and surplus of not less than $50,000,000 and a Moody's rating of Baa3 or higher or otherwise as approved by the Rating Agencies. Any such successor Trustee shall notify the Corporation of its acceptance of the appointment and, upon giving such notice, shall become Trustee, vested with all the property, rights, powers and duties of the Trustee hereunder, without any further act or conveyance. Such successor Trustee shall execute, deliver, record and file such instruments as are required to confirm or perfect its succession hereunder and any predecessor Trustee shall from time to time execute, deliver, record and file such instruments as the incumbent Trustee may reasonably require to confirm or perfect any succession hereunder.

**Section 7.06.    Reports by Trustee to Holders.**

(a)      The Trustee, on or prior to each Distribution Date for a Series of Bonds, shall deliver to the Holders of such Bonds who shall have provided written request therefor to the Trustee, and to each Rating Agency, the information provided by the Trustee pursuant to subsection 4 of Section 5.04.

(b)      The Trustee's responsibility for delivering the information described in subsection (a) above is limited to the availability, timeliness and accuracy of the information provided by the Corporation pursuant to Section 5.04.

42

### Section 7.07.    Nonpetition Covenant.

Notwithstanding any prior termination of this Indenture, no Fiduciary shall, prior to the date which is one year and one day after the termination of this Indenture, acquiesce, petition or otherwise invoke or cause the Corporation to invoke the process of any court or government authority for the purpose of commencing or sustaining a case against the Corporation under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Corporation or any substantial part of its property, or ordering the winding up or liquidation of the affairs of the Corporation.

## ARTICLE VIII

## THE HOLDERS

### Section 8.01.    Action by Holders.

Any request, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders of Bonds may be contained in and evidenced by one or more writings of substantially the same tenor signed by the requisite number of Holders or their attorneys duly appointed in writing. Proof of the execution of any such instrument, or of an instrument appointing any such attorney, shall be sufficient for any purpose of this Indenture (except as otherwise herein expressly provided) if made in the following manner, but the Corporation or the Trustee may nevertheless in its discretion require further or other proof in cases where it deems the same desirable. The fact and date of the execution by any Bondholder or his attorney of such instrument may be proved by the certificate or signature guarantee, which need not be acknowledged or verified, of an officer of a bank, trust company or securities dealer satisfactory to the Corporation or to the Trustee; or of any notary public or other officer authorized to take acknowledgments of deeds to be recorded in the state in which he purports to act, that the person signing such request or other instrument acknowledged to him the execution thereof, or by an affidavit of a witness of such execution, duly sworn to before such notary public or other officer. The authority of the person or persons executing any such instrument on behalf of a corporate Holder may be established without further proof if such instrument is signed by a person purporting to be the president or a vice president of such corporation with a corporate seal affixed and attested by a person purporting to be its clerk or secretary or an assistant clerk or secretary. Any action by the owner of any Bond shall be irrevocable and bind all future record and beneficial owners thereof.

### Section 8.02.    Registered Owners.

The enumeration in Section 3.04(a) of certain provisions applicable to DTC as Holder of immobilized Bonds shall not be construed in limitation of the rights of the Corporation and each Fiduciary to rely upon the registration books in all circumstances and to treat the registered owners of Bonds as the owners thereof for all purposes not otherwise specifically provided for by law or in this Indenture. Notwithstanding any other provisions hereof, any payment to the

43

registered owner of a Bond shall satisfy the Corporation's obligations thereon to the extent of such payment.

## ARTICLE IX

## DEFAULT AND REMEDIES

### Section 9.01.    Events of Default.

"Event of Default" in this Indenture means any one of the following:

(a)    principal or Sinking Fund Installments of or interest on any Bond has not been paid, when due;

(b)    the Corporation fails to observe or perform any other provision of this Indenture, which failure is not remedied within 60 days after written notice thereof is given to the Corporation by the Trustee or to the Corporation and the Trustee by the Holders of at least 25% in principal amount or Accreted Value of the Bonds then Outstanding. In the case of a Default under this subsection (b), if the Default cannot be corrected within the said 60-day period and is diligently pursued until the Default is corrected, it shall not constitute an Event of Default if corrective action is instituted by the Corporation within said 60-day period and diligently pursued until the Default is corrected;

(c)    the State fails to observe or perform its covenants which are included in Section 5.07 of this Indenture or in Article IV of the Sale Agreement, which failure is not remedied within 60 days after written notice thereof is given to the Corporation and the State by the Trustee or to the Corporation and the Trustee by the Holders of at least 25% in principal amount or Accreted Value of the Bonds then Outstanding; or

(d)    the State fails to provide the amounts required to be paid to the Corporation or the Trustee pursuant to the terms of Section 5.06(f); or

(e)    the failure of the Director of the Budget on behalf of the State, prior to the commencement of any fiscal year of the State, to include as a requested appropriation item in the State's budget for such fiscal year, the amount of money equal to the scheduled principal and Sinking Fund Installments of and interest on the Bonds coming due during such fiscal year; or

(f)    bankruptcy, reorganization, arrangement or insolvency proceedings, or other proceedings for relief under any bankruptcy or similar law or laws for the relief of debtors, are instituted by or against the Corporation and, if instituted against the Corporation, are not dismissed within 60 days after such institution.

### Section 9.02.    Remedies.

(a)    If an Event of Default occurs the Trustee may, and upon written request of the Holders of 25% in principal amount or Accreted Value of the Bonds Outstanding shall, in its own name by action or proceeding in accordance with the law:

44

434408.8 026563 IND

(i)     enforce all rights of the Holders and require the Corporation or, to the extent permitted by law, the State to carry out its agreements with the Holders and to perform its duties under the Sale Agreement;

(ii)    sue upon such Bonds;

(iii)   require the Corporation to account as if it were the trustee of an express trust for the Holders of such Bonds; and

(iv)    enjoin any acts or things which may be unlawful or in violation of the rights of the Holders of such Bonds.

(b)     In no event shall the principal of any Bond be declared due and payable in advance of its stated maturity.

(c)     The Trustee shall, in addition to the other provisions of this section, have and possess all of the powers necessary or appropriate for the exercise of any functions incident to the general representation of Holders in the enforcement and protection of their rights.

(d)     Upon a failure of the Corporation to pay when due, principal or Sinking Fund Installments of or interest on any Bond or a failure actually known to an Authorized Officer of the Trustee to make any other payment required thereby within seven days after the same becomes due and payable, the Trustee shall give written notice thereof to the Corporation and the Budget Director of the State.  The Trustee shall give Default notices under certain provisions of the Indenture when instructed to do so by the written direction of another Fiduciary or the Holders of at least 25% in principal amount or Accreted Value of the Outstanding Bonds. The Trustee shall proceed for the benefit of the Holders in accordance with the written direction of a Majority in Interest of the Outstanding Bonds. The Trustee shall not be required to take any remedial action (other than the giving of notice) unless indemnity satisfactory to the Trustee is furnished for any expense or liability to be incurred therein.  Upon receipt of written notice, direction and indemnity, and after making such investigation, if any, as it deems appropriate to verify the occurrence of any event of which it is notified as aforesaid, the Trustee will promptly pursue the remedies provided by the Indenture or any such remedies (not contrary to any such direction) as it deems appropriate for the protection of the Holders, and will act for the protection of the Holders with the same promptness and prudence as would be expected of a prudent person in the conduct of such person's own affairs.

(e)     The foregoing provisions of this Section 9.02 to the contrary notwithstanding, the remedies available to the Trustee for any breach of the pledges and agreements of the State set forth in clause (iii) of Section 5.07(a) hereof shall be limited to injunctive relief.

**Section 9.03.   Waiver.**

If the Trustee determines that a Default has been cured before becoming an Event of Default and before the entry of any final judgment or decree with respect to it, the Trustee may waive the Default and its consequences, by written notice to the Corporation, and shall do so

45

upon written instruction of the Holders of at least 25% in principal amount or Accreted Value of the Outstanding Bonds.

### Section 9.04.    Remedies Cumulative.

The rights and remedies under this Indenture shall be cumulative and shall not exclude any other rights and remedies allowed by law, provided there is no duplication of recovery; and provided, further, that the provisions hereof shall be deemed to abrogate the right of Bondowners to appoint a trustee under the provisions of Section 8 of the Act. The failure to insist upon a strict performance of any of the obligations of the State or the Corporation or to exercise any remedy for any violation thereof shall not be taken as a waiver for the future of the right to insist upon strict performance by the State or the Corporation or of the right to exercise any remedy for the violation.

### Section 9.05.    Delay or Omission Not a Waiver.

No delay or omission of the Trustee or of any Holder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given hereby or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

### Section 9.06.    Individual Remedies.

No one or more Holders will by his or their action affect, disturb or prejudice the pledge created by the Indenture, or enforce any right under this Indenture, except in the manner herein provided; and all proceedings at law or in equity to enforce any provision of this Indenture will be instituted, had and maintained in the manner provided herein and for the equal benefit of all Holders of the same class; but nothing in the Indenture will affect or impair the right of any Holder of any Bond to enforce payment of the principal of, premium, if any, or interest thereon at and after the same comes due pursuant to the Indenture, or the obligation of the Corporation to pay such principal, premium, if any, and interest on each of the Bonds to the respective Holders thereof at the time, place, from the source and in the manner expressed in this Indenture and in the Bonds.

### Section 9.07.    Venue

The venue of every action, suit or special proceeding against the Corporation shall be laid in the State and shall be heard and determined in the Supreme Court for the State of New York, County of Albany, and in accordance with the Act.

## ARTICLE X

## MISCELLANEOUS

### Section 10.01.  Supplements and Amendments to the Indenture.

434408.8 026563 IND

(a)    This Indenture may be:

(i)    supplemented by delivery to the Trustee of an instrument certified by an Authorized Officer of the Corporation to (A) provide for earlier or greater deposits into the Funds and Accounts, (B) subject any property to the lien hereof, (C) add to the covenants and agreements of the Corporation or surrender or limit any right or power of the Corporation, (D) identify particular Bonds for purposes not inconsistent herewith, including credit or liquidity support, remarketing, serialization and defeasance, (E) cure any ambiguity or defect, (F) protect the exclusion of interest on the Tax-Exempt Bonds from gross income for federal income tax purposes, or the exemption from registration of the Bonds under the Securities Act of 1933, as amended, or of this Indenture under the Trust Indenture Act of 1939, as amended, or (G) authorize Bonds of a Series and in connection therewith determine the matters referred to herein, including Section 3.01, and any other things relative to such Bonds that are not materially adverse to the Holders of Outstanding Bonds, or to modify or rescind any such authorization or determination at any time prior to the first authentication and delivery of such Series of Bonds; or

(ii)    amended in any other respect by the Corporation and the Trustee, (A) to add provisions that are not materially adverse to the Holders, or (B) to adopt amendments that do not take effect unless and until (1) no Bonds Outstanding prior to the adoption of such amendment remain Outstanding or (2) such amendment is consented to by the Holders of such Bonds in accordance with the further provisions hereof; or

(iii)    otherwise amended only with written notice to the Rating Agencies and the written consent of a Majority in Interest of the Bonds to be Outstanding and affected thereby; provided, however, this Indenture shall not be amended so as to (A) extend the maturity of any Bond, (B) reduce the principal or Sinking Fund Installment amount, applicable premium or interest rate of any Bond, (C) make any Bond redeemable other than in accordance with its terms, (D) create a preference or priority of any Bond over any other Bond of the same class or (E) reduce the percentage of the Bonds required to be represented by the Holders giving their consent to any amendment unless the Holders of the Bonds affected thereby have consented thereto in writing.

(b)    Any amendment of this Indenture shall be accompanied by a Bond Counsel's opinion addressed to the Trustee to the effect that the amendment is permitted by law and does not adversely affect the exclusion of interest on the Tax-Exempt Bonds from gross income for federal income tax purposes.

(c)    When the Corporation determines that the requisite number of consents have been obtained for an amendment hereto which requires consents, it shall file a certificate to that effect in its records and give written notice to the Trustee and the Holders. The Trustee will promptly certify to the Corporation that it has given such notice to all Holders and such certificate will be conclusive evidence that such notice was given in the manner required hereby.

### Section 10.02.  Supplements and Amendments to the Sale Agreement.

47

The Sale Agreement may be amended in accordance with the provisions of Section 6.01 thereof, with the consent of the Trustee but without the consent of the Holders of the Bonds (i) to cure any ambiguity, (ii) to correct or supplement any provisions in the Sale Agreement, (iii) to correct or amplify the description of the tobacco settlement payments sold thereunder, (iv) to add additional covenants for the benefit of the Corporation, or (v) for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions in the Sale Agreement that shall not adversely affect in any material respect the interest of the Holders of Outstanding Bonds. The Sale Agreement may also be amended from time to time by the Corporation and the State, with the consent of a Majority in Interest of the Bondholders, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of the Bondholders, but no such amendment shall reduce the aforesaid portion of the Outstanding amount of the Bonds, the Holders of which are required to consent to any such amendment, without the consent of all of the Bondholders. In the event that the Trustee receives a request for a consent or other action under the Sale Agreement, the Trustee may, and if consent or other action by Holders is required shall, transmit a notice of such request to each Holder and request directions with respect thereto; and the Trustee (and the Corporation, if applicable) shall proceed in accordance with such directions (if any), this Indenture and the Sale Agreement.

### Section 10.03. Supplements and Amendments to Contingency Contracts.

A Contingency Contract may be amended, changed, modified or altered, with the consent of the Trustee but without the consent of Bondholders, (i) to cure any ambiguity, or to correct or supplement any provisions contained in the Contingency Contract that may be defective or inconsistent with any other provisions contained in this Indenture or in such Contingency Contract, and (ii) in any other manner that does not materially adversely affect the interest of the Holders of Outstanding Bonds. With the prior written consent of a Majority in Interest of the Bonds then Outstanding, a Contingency Contract may also be amended, changed, modified, altered or terminated, provided however, that no such amendment, change, modification, alteration or termination will reduce the percentage of the aggregate principal amount of Outstanding Bonds the consent of the Holders of which is a requirement for any such amendment, change, modification, alteration or termination, or, without the consent of the Bondowners adversely affected thereby, decrease the amount of any payment to be made under any Contingency Contract or extend the time allowed for payment thereof; and provided, further, that if such modification or amendment will, by its terms, not take effect so long as any Bonds of any specified Series remain Outstanding, the consent of the Holders of such Bonds shall not be required and such Bonds shall not be deemed to be Outstanding for the purpose of any calculation of Outstanding Bonds for purposes of this Section 10.03. No amendment to a Contingency Contract shall become effective until an executed copy thereof certified by an Authorized Officer of the Corporation shall be filed with the Trustee.

### Section 10.04. Notices.

Unless otherwise expressly provided, all notices to the Corporation or the Trustee shall be in writing and shall be deemed sufficiently given if sent by registered or certified mail, postage prepaid, or delivered during business hours as follows: (a) to the Corporation, c/o State of New York Municipal Bond Bank Agency, 641 Lexington Avenue, New York, New York

434408.8 026563 IND

10022, and (b) to the Trustee at its Corporate Trust Office or, as to all of the foregoing, to such other address as the addressee shall have indicated by prior written notice to the one giving notice. All notices to a Holder shall be in writing and (without limitation) shall be deemed sufficiently given if sent by mail, postage prepaid, to the Holder at the address shown on the registration books. A Holder may direct the registrar to change such Holder's address as shown on the registration books by written notice to the registrar.

Notice hereunder may be waived prospectively or retrospectively by the person entitled to the notice, but no waiver shall affect any notice requirement as to other persons.

### Section 10.05.  Governing Law.

This Indenture shall be construed in accordance with the laws of the State, without reference to its conflict of law provisions, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

### Section 10.06.  Beneficiaries.

This Indenture is not intended for the benefit of and shall not be construed to create rights in parties other than the Corporation, the Fiduciaries, the Holders of Bonds, and the other Beneficiaries to the extent specified herein.

### Section 10.07.  Limitation on Liability.

(a)     Neither the State, any member of the Corporation, nor any officer, employee, or agent of the Corporation, while acting within the scope of their authority, shall be subject to any personal liability resulting from exercising or carrying out of any of the Corporation's purposes or powers.

(b)     In all events, the liability of the State, members, officers, employees and agents of the Corporation hereunder shall be subject to the provisions of Section 17 of the Public Officer's Law.

### Section 10.08.  Signatures and Counterparts.

This Indenture, each Series Supplement and each Supplemental Indenture may be executed and delivered in any number of counterparts, each of which shall be deemed to be an original, but such counterparts together shall constitute one and the same instrument.

49

[Signature Page for Indenture]

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed all as of the date first above written.

TOBACCO SETTLEMENT FINANCING CORPORATION

By: _____
    Name:
    Title:

THE BANK OF NEW YORK,
as Trustee

By: _____
    Authorized Officer

EXHIBIT A

## TOBACCO SETTLEMENT FINANCING CORPORATION

### SERIES 2003B RESIDUAL CERTIFICATE

REGISTERED OWNER: THE STATE OF NEW YORK

The TOBACCO SETTLEMENT FINANCING CORPORATION (the "Corporation"), a public benefit corporation of The State of New York (the "State"), for value received, promises (i) to pay to the registered owner of this Series 2003B Residual Certificate (this "Residual Certificate"), amounts available in accordance with Section 4.03(e) of the Indenture (the "Indenture"), dated as of December 1, 2003, between the Corporation and The Bank of New York, as Trustee (the "Trustee") and (ii) to honor the assignment to the State of the contractual right to redeem, purchase or defease Bonds at the option of the Corporation that shall have been granted to the State by the terms of the Agreement. Capitalized terms used but not defined in this Residual Certificate shall have the meaning given to them in the Indenture.

Notwithstanding anything to the contrary in the Indenture or this Residual Certificate, no amounts shall be due and payable through or in respect of this Residual Certificate, and the registered owner of this Residual Certificate shall have no right to, or interest of any kind, in the payment of any such amount, unless and until the Trustee shall determine that funds are available therefor in accordance with Article IV of the Indenture and the Trustee shall in fact withdraw funds from the Funds and Accounts for such payment and transfer the same to the registered owner of this Residual Certificate.

Reference is made to the Indenture for a description of the funds pledged and for the provisions with respect to the incurring of indebtedness and to the rights, limitations of rights, duties, obligations and immunities of the Corporation, the Trustee, the Bondholders and the registered owner of this Residual Certificate.

This Residual Certificate is issuable only in fully registered form and may not be converted into bearer form. The Corporation and the Trustee may treat the registered owner hereof as the absolute owner of this Residual Certificate for all purposes, notwithstanding any notice to the contrary.

This Residual Certificate shall not be valid or become obligatory for any purpose until the certificate of authentication hereon shall have been dated and manually signed by the Trustee.

A-1

IN WITNESS WHEREOF, the TOBACCO SETTLEMENT FINANCING CORPORATION has caused this Residual Certificate to be executed in its name by its _____ as of the ___ day of _____, 2003.

TOBACCO SETTLEMENT
FINANCING CORPORATION


By:_____

        Name:

        Title:

A-2

## CERTIFICATE OF AUTHENTICATION

This Residual Certificate is the Series 2003B Residual Certificate described in and issued in accordance with the within mentioned Indenture.

THE BANK OF NEW YORK,
as Trustee

By:_____
            Authorized Officer

Date of Authentication: _____, 2003

A-3

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

Section 1.01.  Definitions. ................................................................................ 1
Section 1.02.  Interpretation. ........................................................................... 14
Section 1.03.  Directors and Officers Not Liable on Bonds.............................. 15
Section 1.04.  Separate Accounts and Records. ............................................... 16

# ARTICLE II

## GRANT OF SECURITY INTEREST AND PLEDGE

Section 2.01.  Security and Pledge. .................................................................. 16
Section 2.02.  Defeasance. ............................................................................... 17

# ARTICLE III

## THE BONDS

Section 3.01.  Bonds of the Corporation. ......................................................... 18
Section 3.02.  Documents to be Delivered to Trustee....................................... 19
Section 3.03.  Transfer and Replacement of Bonds.......................................... 19
Section 3.04.  Securities Depositories.............................................................. 21

# ARTICLE IV

## FLOW OF FUNDS

Section 4.01.  Accounts.................................................................................... 22
Section 4.02.  Costs of Issuance. ..................................................................... 22
Section 4.03.  Application of Pledged Revenues............................................... 22
Section 4.04.  Pledged Revenues Account. ...................................................... 26
Section 4.05.  Swap Contracts and Ancillary Contracts. .................................. 26
Section 4.06.  Redemption of the Bonds.......................................................... 26
Section 4.07.  Investments................................................................................ 28
Section 4.08.  Unclaimed Money. ..................................................................... 29
Section 4.09.  Rebate........................................................................................ 29
Section 4.10.  Application of Supplemental Account.......................................... 29

# ARTICLE V

## COVENANTS

Section 5.01.  Contract; Obligations to Beneficiaries. ...................................... 31
Section 5.02.  Enforcement. ............................................................................. 31
Section 5.03.  Tax Covenants. .......................................................................... 32

434408.8 026563 IND

**TABLE OF CONTENTS**
(continued)

Section 5.04.  Accounts and Reports. ............................................................... 32
Section 5.05.  Ratings. ...................................................................................... 33
Section 5.06.  Affirmative Covenants. ............................................................. 33
Section 5.07.  Agreement with the State. ......................................................... 34
Section 5.08.  Negative Covenants. .................................................................. 35
Section 5.09.  Prior Notice. ............................................................................. 37

## ARTICLE VI

### ADDITIONAL NON-IMPAIRMENT ACKNOWLEDGMENTS

Section 6.01.  Pledged Settlement Payments. .................................................. 37

## ARTICLE VII

### THE FIDUCIARIES

Section 7.01.  Trustee's Organization, Authorization, Capacity and Responsibility. ............... 38
Section 7.02.  Rights and Duties of the Trustee and other Fiduciaries. ..................... 39
Section 7.03.  Paying Agents and Registrar. ................................................... 41
Section 7.04.  Resignation or Removal of the Trustee. ...................................... 41
Section 7.05.  Successor Fiduciaries. ............................................................... 42
Section 7.06.  Reports by Trustee to Holders. .................................................. 42
Section 7.07.  Nonpetition Covenant. .............................................................. 43

## ARTICLE VIII

### THE HOLDERS

Section 8.01.  Action by Holders. .................................................................... 43
Section 8.02.  Registered Owners. ................................................................... 43

## ARTICLE IX

### DEFAULT AND REMEDIES

Section 9.01.  Events of Default. ...................................................................... 44
Section 9.02.  Remedies. .................................................................................. 44
Section 9.03.  Waiver. ...................................................................................... 45
Section 9.04.  Remedies Cumulative. ............................................................... 46
Section 9.05.  Delay or Omission Not a Waiver. .............................................. 46
Section 9.06.  Individual Remedies. ................................................................. 46
Section 9.07.  Venue ........................................................................................ 46

434408.8 026563 IND

# TABLE OF CONTENTS
(continued)

Page

## ARTICLE X

## MISCELLANEOUS

Section 10.01. Supplements and Amendments to the Indenture. ................................................ 46
Section 10.02. Supplements and Amendments to the Sale Agreement. ..................................... 47
Section 10.03  Supplements and Amendments to Contingency Contracts. ................................ 47
Section 10.04. Notices. .............................................................................................................. 48
Section 10.05. Governing Law. .................................................................................................. 49
Section 10.06. Beneficiaries. ...................................................................................................... 49
Section 10.07. Limitation on Liability. ...................................................................................... 49
Section 10.08. Signatures and Counterparts. .............................................................................. 49

EXHIBIT A—Form of Residual Certificate ........................................................................ A-1

434408.8 026563 IND