Hearing Date and Time: November 18, 2009, at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: October 13, 2009, at 4:00 p.m. (Prevailing Eastern Time)

WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street
Suite 1900
Milwaukee, WI 53202-3819
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Bruce G. Arnold, Esq.
Daryl L. Diesing, Esq.
Daniel J. McGarry, Esq.

Attorneys for Metavante Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtors. | |

## METAVANTE CORPORATION'S MOTION TO ALTER OR AMEND THE COURT'S ORDER GRANTING LEHMAN BROTHERS SPECIAL FINANCING INC. AND ITS AFFILIATED DEBTORS' MOTION TO COMPEL PERFORMANCE AND ENFORCE THE AUTOMATIC STAY

Metavante Corporation ("Metavante") hereby moves the Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure, for entry of an Order to Alter or Amend the Court's Order granting Lehman Brothers Special Financing Inc. and its affiliated debtors' ("Debtors") "Motion to Compel Performance of Metavante Corporation's Obligations Under An Executory Contract and To Enforce the Automatic Stay" ("Debtors' Motion"). The Order granting Debtors' Motion appears on the case docket as entry number 5209. A copy of the Order granting Debtors' Motion is attached hereto as **Exhibit A.**

WHD/6688131.5

In support of this Motion, Metavante respectfully states as follows:

## Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) (2).

2. Venue of these cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

3. By this Motion, Metavante seeks an Order from this Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure and Local Rule 9023-1 of the Local Bankruptcy Rules for the Southern District of New York, altering or amending the Motion to Compel Order to: (A) clarify the Debtors' future obligations to Metavante under the Motion to Compel Order; and (B) clarify the precise amount that Metavante owes as default interest under the Motion to Compel Order.

## Background

4. On May 29, 2009, the Debtors asked this Court to enter an Order compelling Metavante to make payments pursuant to the Metavante Swap Agreement. Metavante objected to the Debtors' contention that any payments were owed, and the parties briefed the questions of first impression raised by the Debtors' Motion.

5. A hearing was held on the matter on July 14, 2009. The Court subsequently rendered an oral decision at a hearing on September 15, 2009, and pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, on September 17, 2009, the Court entered an "Order Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code to Compel Performance of

Contract and to Enforce the Automatic Stay" (the "Motion to Compel Order") that incorporated the Court's September 15, 2009, oral decision, as well as the Court's statements on the record from the hearing on July 14, 2009.

6. Metavante now brings the instant Motion to Alter or Amend the Motion to Compel Order.

## Basis For Relief

7. Rule 9023 of the Federal Rules of Bankruptcy Procedure provides that Rule 59 of the Federal Rules of Civil Procedure "applies in cases under the Code . . . ." In turn, Rule 59(e) of the Federal Rules of Civil Procedure provides that a party, within 10 days after entry of judgment, may file a motion to alter or amend the judgment. Rule 59 allows a bankruptcy court to vacate, set aside or modify a previously entered order. *In re Texlon Corp.*, 596 F.2d 1092 (2d Cir. 1979); *In re Emergency Beacon Corp.*, 666 F.2d 754 (2d Cir. 1981).

8. Granting a Rule 59(e) motion to alter or amend a judgment is within the sound discretion of the court. *In re Prince*, 85 F.3d 314 (7th Cir. 1996). A moving party "must demonstrate the need to correct a clear error or prevent a manifest injustice." *Family Golf Ctrs., Inc. v. Acushnet co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 61 (Bankr. S.D.N.Y. 2003) (quoting *Griffin Indus. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)). This Court has broad discretion to grant motions to alter or amend under Rule 59(e). *In re Hupton*, 287 B.R. 438, 445 (Bankr. N.D. Iowa 2002).

9. In this case, the Court should exercise its discretion and grant the Motion to clarify two crucial issues left open by the Motion to Compel Order: (1) the Debtors' future obligations to Metavante under the Motion to Compel Order; and (2) the precise amount that Metavante owes as default interest under the Motion to Compel Order

10. The Court has the opportunity to provide needed clarification with regard to the Debtors' future obligations to Metavante under the Metavante Swap Agreement pending the Debtors' decision to assume or reject. In particular, the Court's Motion to Compel Order does not specify the assurances that Debtors will be required to provide Metavante as adequate protection in the event that interest rates change in Metavante's favor.

11. Although the Motion to Compel Order merely orders Metavante to "perform its obligations to make payments to LBSF under the Agreement," the Court's comments during oral arguments on July 14, 2009, and the Court's reliance on *McLean Industries Inc. v. Medical Laboratory Automation, Inc. (In re Mclean Industries Inc.)*, 96 B.R. 440 (Bankr. S.D.N.Y. 1989), during the hearing on September 15, 2009, suggest that the Court acknowledges the importance of protecting the nondebtor counterparty to an interest rate swap agreement pending the Debtors' decision to assume or reject. This issue is particularly important where, as here, Metavante makes the precise allegation Judge Buschman found dispositive in *McLean Industries*. There, Judge Buschman rejected the non-debtor counterparty's objection to the debtor's efforts to enforce an option contract based in part on the fact that "MLA makes no allegation that McLean [the debtor] had previously breached the Agreement or that it had been prejudiced by McLean's performance under the Agreement." *Id.* at 450. In this case, Metavante argues that LBSF was in default prior to LBSF's own bankruptcy filing based on LBHI's filing, and that the absence of a Credit Support Provider -- LBHI -- deprived Metavante of the essential element of an interest rate swap agreement. Indeed, the pre-petition default occasioned by LBHI's filing and LBHI's decision to sell all of its assets to Barclay's Capital, Inc. meant Metavante was no longer able to treat the Metavante Swap Agreement as a hedge for accounting purposes.

WHD/6688131.5

12. This Court has the opportunity to clarify the assurances that the Debtors are required to provide Metavante as adequate protection in the event that interest rates change -- leaving Metavante "in the money" -- before the Debtors decide to assume or reject the Metavante Swap Agreement. As the Court noted during the hearing on September 15, 2009, the Metavante Swap Agreement requires quarterly reset payments between the parties, with payment only actually going to the party "in the money" at the time of the quarterly reset. The next quarterly reset date is November 1, 2009.

13. The case law is clear that pending assumption or rejection of an executory contract, a debtor can only enforce the contract if it pays for the value of the material or services it receives. *Cont'l Energy Assoc. Ltd. P'ship v. Hazelton Fuel Mgmt. Co.* (*In re Cont'l Energy Ass'n Ltd.*), 178 B.R. 405, 408 (Bankr. M.D. Pa. 1995); *In re Resource Tech. Corp.*, 254 B.R. 215, 221 (Bankr. N.D. Ill. 2000); *In re the Bolling Group, L.L.C.*, Case No. 01-81304C-11D, 2002 WL 31812671, at *6 (Bankr. M.D.N.C. Dec. 13, 2002). Therefore, if LBSF does not assume or reject the contract before the next quarterly reset payment is due, and if interest rates have, by that time or anytime thereafter, swung in Metavante's favor, then LBSF must pay Metavante for the value LBSF received (*i.e.*, an effective counterparty as a hedge against fluctuating interest rates) during that quarter.

14. Over and above Metavante's right to any payments that become due, however, Metavante also has a right to assurances that the funds to make those payments will still be available, and will go to Metavante if and when they become due. The Court's Motion to Compel Order requires both parties to continue performing under the Metavante Swap Agreement -- at least until the Debtors have assumed or rejected the contract. This is important because, as case law demonstrates, the fact that the Debtors will be enforcing the agreement in

the "gray area" (post-petition, pre-assumption or rejection) means that the Motion to Compel Order also implicitly requires the Debtors to provide Metavante with adequate protection for Metavante's interests. *See In re Cont'l Energy Assocs.*, 178 B.R. at 408 (allowing debtor to enforce the contract "until such time as it accepts or rejects the contract" because, in light of the fact that the debtor was paying the non-debtor the contract amount in advance, "the interests of the non-debtor party to the contract" were being "diligently guard[ed].").

15. The equitable basis for this rule stems first from the recognition that, "[a]t first glance, the concept that a contract should not be enforceable by either side to a contract until it has been assumed by a debtor makes imminent sense." *Id.* Indeed, "[i]f it is accepted that the non-debtor party to a contract is stayed from enforcing the terms of that contract on a debtor prior to assumption, then fairness would seem to suggest that the converse should also be true." *Id.* Nevertheless, courts have been willing to ignore this imminently sensible rule in certain, limited situations. For example, courts have permitted "gray area" enforcement when the debtor would have been placed in an especially precarious position if the non-debtor was permitted to withhold performance pending the debtor's decision to assume or reject. *Id.* at 408-09 (allowing debtor to enforce an executory contract until it decided to assume or reject the contract because the non-debtor natural gas supplier, which had designed a special pipeline to meet the debtor's specific natural gas requirement, was the only foreseeable party capable of fulfilling the debtor's natural gas requirement). Even so, because of the inherent inequity that a non-debtor faces in such a situation, a court can only order continued performance from the non-debtor if the non-debtor's interests are adequately protected. *Id.* at 408. As one court held: "The only reasonable conclusion is that this court . . . can issue an order that would allow such debtor to enforce the

6

contract until such time that it accepts or rejects the contract, ***provided that*** *we diligently guard the interests of the non-debtor party to the contract.*" *Id.* (emphasis added).

16. In this case, the Court's Motion to Compel Order -- which authorizes the Debtors to enforce the agreement in the post-petition, pre-assumption or rejection "gray area" -- is unclear as to what specific assurances will be provided to Metavante. This is what Metavante bargained for before LBSF and LBHI sought bankruptcy protection. But, given the Debtors' position as debtors in the largest bankruptcy filing in this country's history, Metavante can hardly be assured that it will receive the payments to which it is otherwise (at one point or another) entitled to receive under the contract. More importantly, Metavante has absolutely no assurance that the Debtors will not -- as seems to be their clear intention -- simply delay the decision to assume or reject until the moment that interest rates become unfavorable to them. To that end, Metavante respectfully submits that the only way for the Court to "diligently" protect Metavante's interests would be to order that the payments due under the Motion to Compel Order be held in an interest-bearing escrow account -- an accepted method of protecting both parties' interests when future events may affect the parties' respective interests, *see Miami Int't. Realty Co. v. Paynter*, 807 F.2d 871, 874 (10th Cir. 1986); *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985); *see, e.g., Winfrey v. Simmons Foods, Inc.*, No. 03 - 2237, 2006 U.S. Dist. LEXIS 70628, at *2 (W.D. Ark. Sept. 28, 2006) -- pending the Debtors' decision to assume or reject the agreement. Then, once the Debtors have made their decision, the parties can use those funds to net out any payments due upon termination, if necessary.

17. Moreover, because Metavante is willing to voluntarily place the full amount due under the Motion to Compel Order into an interest-bearing escrow account, neither Debtors, nor any other party to this case, will suffer any harm while the Debtors decide to assume or reject the

7

contract. Likewise, because Metavante will agree to continue making any reset payments that may otherwise become due under the terms of the Metavante Swap Agreement into the escrow account, all parties with any expectancy of payment from the amount due under the Motion to Compel Order will be protected.

18. The Court also has the opportunity to clarify the precise amount that Metavante owes as default interest under the Motion to Compel Order. Unlike many commercial contracts, and perhaps because of the complexity involved in swap agreements in general, the calculation of default interest under a swap agreement is far from clear. The Metavante Swap Agreement is no different. Under the Metavante Swap Agreement, the relevant term, "Default Rate," is defined as "a rate per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1% per annum." However, that definition -- especially here, in a court of equity -- cannot possibly mean that Lehman Brothers Special Financing Inc. ("LBSF") is permitted to dictate a "cost" figure and use that figure, plus 1% per annum, as its default interest rate. And indeed, on the few occasions when the Debtors have attempted to set a figure on this default interest amount, the Debtors have attempted to do just that, broadly asserting an inflated figure as its "cost," and then adding 1% per annum.

19. The Debtors' failure to follow the customary method of providing a "per diem" rate of interest accrual in all of their pleadings is particularly telling. (*See* Debtors' Mot. to Compel 7) ("To date, the default interest on the unpaid amounts specified above totals *approximately* $359,215.37") (emphasis added). The Debtors' failure to do so is a tacit admission that even they are not sure what the default rate is, either because (1) they are unsure how to calculate the rate under the terms of the Metavante Swap Agreement; or (2) they were not

8

prepared to make the necessary evidentiary showing. If the latter, the Debtors should not be rewarded for their failure to present any evidence which would support an award of default interest. If the former -- which Metavante acknowledges it could be, and as the Court itself suggested may be the case at oral argument on July 14, 2009 -- this is an admission that the definition of "Default Rate" is ambiguous. Either way, the Debtors' conduct highlights the need for clarification. The simple fact of the matter is that there is no testimony, let alone an adequate evidentiary record, that would support anything but a purely speculative calculation of the default interest owed. Therefore, the Court should grant the Motion in order to allow the parties to submit evidence and then ultimately receive clarification on this issue.

20.  Given the forgoing, Metavante respectfully requests that the Court issue an Order Amending or Altering the Motion to Compel Order to clarify the issues addressed above.

## Notice

21.  No trustee has been appointed in these chapter 11 cases. Metavante has served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009, governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the attorneys for Debtors; and (vi) the attorneys for the Ad Hoc Group of Lehman Brothers Creditors. Metavante submits that no other or further notice need be provided.

## No Prior Request

22.  No previous motion for the relief sought herein has been made to this or any other Court.

9

WHD/6688131.5

WHEREFORE, Metavante respectfully requests that the Court enter an Order Altering or Amending the Court's Order granting Lehman Brothers Holdings Special Financing Inc. and its affiliated debtors' "Motion to Compel Performance of Metavante Corporation's Obligations Under an Executory Contract and To Enforce the Automatic Stay" to clarify: (1) the Debtors' future obligations to Metavante under the Motion to Compel Order; and (2) the precise amount that Metavante owes as default interest under the Motion to Compel Order.

.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2009.

/s/ Bruce G. Arnold

Bruce G. Arnold
Daryl L. Diesing
Daniel J. McGarry

WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, WI 53202
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Attorneys for Metavante Corporation

WHD/6688131.5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re                                                       :   Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :   08-13555 (JMP)
                                                            :
                            Debtors.                        :   (Jointly Administered)
------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 105(a), 362 AND 365
## OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE OF
## CONTRACT AND TO ENFORCE THE AUTOMATIC STAY

Upon the motion, dated May 29, 2009 (the "Motion"), of Lehman Brothers Special Financing Inc. (the "Debtor"), as debtor in possession (collectively with Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105(a), 362, and 365 of the Bankruptcy Code to Compel Performance of Metavante Corporation's Obligations Under an Executory Contract and to Enforce the Automatic Stay (the "Motion"), all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to Metavante Corporation, and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, its creditors and all parties in interest; and the



Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, for the reasons set forth by the Court at the September 15, 2009 hearing, the Motion is granted; and it is further

ORDERED that, pending assumption or rejection of the Agreement (as defined in the Motion) by LBSF, Metavante Corporation shall perform its obligations to make payments to LBSF under the Agreement, without regard to any alleged defaults by LBSF under the Agreement, including but not limited to promptly making all payments that were, without regard to any alleged defaults by LBSF under the Agreement, owed to LBSF on November 1, 2008, February 1, 2009, and May 1, 2009, to pay default interest on such payment obligations, and to make all other payments to LBSF under the Agreement.

Dated:  New York, New York
        September 17, 2009

                                            _s/ James M. Peck_
                                        UNITED STATES BANKRUPTCY JUDGE