**Exhibit A**

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE

NEW YORK, NY 10153

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

RICHARD P. KRASNOW
DIRECT LINE (212) 310-8493
E-MAIL: richard.krasnow@weil.com

September 25, 2009

**BY HAND DELIVERY**

The Honorable James M. Peck
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 610
New York, New York 10004

Re: **In re Lehman Brothers Holdings Inc.,
(Case No. 08-13555) (JMP) (Jointly Administered) –
Debtors' Motion To Enforce Stay Against Shinsei Bank**

Dear Judge Peck:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") write to address the unauthorized Sur-Reply of Shinsei Bank to Debtors' Motion for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt [Docket No. 5206] (the "Sur-reply") filed by Shinsei Bank Limited ("Shinsei Bank"). The Debtors submit that the Sur-reply was filed without leave of the Court and should be stricken from the record. As the Court will recall, all it authorized was a supplemental declaration from each side's Japanese counsel relating to the Sunrise Insolvency Proceeding,[1] which each side has now submitted.

---

[1] Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Motion, as defined below.

WEIL, GOTSHAL & MANGES LLP

The Honorable James M. Peck
September 25, 2009
Page 2

If the Court does not strike the Sur-reply, the Debtors request that the Court consider the Debtors' response as set forth in this short letter. Specifically, the parties' respective supplemental filings have served to narrow the issues before this Court:

- The only significant points on which Shinsei Bank and the Debtors disagree are (i) whether *In re Enron Corp.*, No. 01-16034 (AJG), 2003 Bankr. LEXIS 2261 (Bankr. S.D.N.Y. Jan. 13, 2003), was correctly decided, and (ii) whether Shinsei Bank's litigation of the subordination of LBHI's and LB Asia's allowed claims in the Sunrise Insolvency Proceeding are offensive rather than defensive.

- Shinsei Bank admits that it is seeking *equitable subordination* of LBHI's and LB Asia's allowed claims against Sunrise, as that relief is understood in United States jurisprudence, and based on the substantially similar factors as are considered by courts in the United States.

- Since *Enron*'s holding is that equitable subordination is not defensive, but rather, offensive and therefore a violation of the automatic stay, the only question that the Court needs to determine is whether *Enron* was correctly decided and whether it applies in this case.

A.   **Background**

On August 11, 2009, the Debtors filed a Motion Pursuant To Sections 105(a) and 362 Of The Bankruptcy Code For An Order Enforcing The Automatic Stay And Holding Shinsei Bank In Contempt For Violating The Automatic Stay [Docket No. 4764] (the "Motion"). Shinsei Bank timely filed an objection and the Debtors timely filed a reply and, on August 26, 2009, a hearing to consider the Motion was held before this Court (the "Hearing"). At the Hearing, the Court requested that the Debtors and Shinsei Bank file supplemental declarations after the Hearing from each side's respective Japanese counsel on such a date as may be agreed (Hr'g Tr. at 98:7-15) concerning:

- The similarity between equitable subordination in the United States and what Shinsei Bank is seeking in Japan. (Hr'g Tr. at 67:11-13, 97:9-11.)

- The process by which Shinsei Bank is seeking to effect the subordination of LBHI's and LB Asia's claims. (Hr'g Tr. at 69:14-70:3, 84:21-25, 97:13-25.)

**WEIL, GOTSHAL & MANGES LLP**

The Honorable James M. Peck
September 25, 2009
Page 3

- The procedure going forward for the Sunrise Plan and the Shinsei Plan, and the role of the Supervisor and the Tokyo District Court. (Hr'g Tr. at 78:1-5, 88:19-25.)

- The ability of the parties to engage the Supervisor and influence his exercise of discretion, and the procedure for sending a rehabilitation plan to creditors. (Hr'g Tr. at 79:17-23.)

- Whether the Supervisor requested that competing plans be filed, as suggested by Shinsei Bank's counsel at the Hearing. (Hr'g Tr. at 84:7-9.)

- The extent to which Shinsei Bank's litigation of the subordination of LBHI's and LB Asia's allowed claims is similar to litigation before a court in the United States (Hr'g Tr. at 85:19-25, 88:19-25), or comparable to the exercise of control over assets of LBHI's estate, as opposed to an ordinary course step in the Japanese civil rehabilitation process (Hr'g Tr. at 88:1-12).

On the agreed submission date, September 17, 2009, the Debtors filed the Supplemental Declaration of Shigeaki Momo-o in Support of the Motion [Docket No. 5205] (the "Momo-o Supp. Decl."). Shinsei Bank, in contrast, submitted the Sur-reply addressing issues of law – in other words, an additional brief. The supplemental declaration requested by the Court was not filed as a stand-alone document but rather it was attached to the Sur-reply as Exhibit A (the "Suzuki Declaration").

## B.   The Sur-reply Was Not Authorized

Neither Shinsei Bank nor the Debtors requested, and the Court did not grant, leave to submit supplemental *briefs*. The Court directed that Shinsei Bank and the Debtors submit "sworn declarations from Japanese lawyers who are involved in the Sunrise proceeding and who are able to provide some first-hand knowledge of what the process is about...." (Hr'g Tr. 97:7-9.) Indeed, Shinsei Bank's counsel even "assume[ed]" that the Court "would like one declaration" and did not "expect that [the Court] anticipate[ed] each of [the parties] filing a declaration." (Hr'g Tr. 98:16-22.) The Court then clarified that it expected a *declaration* from each side's Japanese counsel. (Hr'g Tr. at 98:24-25.) There can be no misunderstanding, therefore, that the Sur-reply was filed without leave of this Court. Accordingly, the Debtors submit that the Court should strike the Sur-reply, in its entirety, from the record.

WEIL, GOTSHAL & MANGES LLP

The Honorable James M. Peck
September 25, 2009
Page 4

### C. The Issues Have Been Narrowed By The Supplemental Filings

The Debtors submit that the Sur-reply and the two supplemental declarations highlight the remaining points of agreement and disagreement. Indeed, there seems to be agreement on most points with the principal exception being Shinsei Bank's contentions that:

- Judge Gonzalez's *offensive/defensive* distinction in *Enron* does not apply here, and *Enron* should be rejected as wrongly decided (Sur-reply at 3-4, 8-11); and

- even if the Court follows *Enron*, Shinsei Bank's attempt to equitably subordinate LBHI's claims against Sunrise is not an act to obtain possession of property of the estate (Sur-reply at 6-7), and is a defensive rather than an offensive action (Sur-reply at 11-13).[2]

Importantly, Shinsei Bank does not dispute that it has sought equitable subordination of LBHI's claims through the vehicle of litigation for an alternative plan. (Sur-reply at 5, 8, 9, 11, 11 n.4, 12; Suzuki Declaration at ¶¶ 22-3, 37-8.) Nor does Shinsei Bank contend that the remedy of equitable subordination in United States jurisprudence is different from the equitable subordination that it has sought in Japan. On the contrary, the Suzuki Declaration alleges that U.S.-style "[e]quitable subordination is recognized under Japanese law"[3] and admits that "[i]n the Sunrise Insolvency Proceeding, Shinsei [Bank] has argued that LBHI's undue control, exploitation and undercapitalization of Sunrise supports a rehabilitation plan that subordinates LBHI's and LB Asia's claims and treats them as equity interests in the Sunrise estate." (Suzuki Decl. at ¶ 37.) Furthermore, Shinsei Bank does not dispute that it has sought a ruling from the Tokyo District Court on "the lawfulness of equitable subordination in the Shinsei Plan" that takes into account the foregoing factors, *i.e.*, undue control, exploitation, and undercapitalization. (Sur-reply at ¶ 38.)

---

[2] The Sur-reply also reiterates Shinsei Bank's argument, raised in its objection and at the Hearing, that the relief requested should not be granted as to non-debtors such as LB Asia. While the Debtors disagree given LBHI's claims against LB Asia are property of LBHI's estate, the Debtors suggest that there is no reason for the Court to consider this argument because, as this Court already has observed, "[t]o the extent that there's a stay violation as to LBHI that's really all that matters for purpose of today or...the next day that we have a hearing after supplemental briefing." (Hr'g Tr. at 89:18-22.)

[3] The Debtors note that whether or not equitable subordination is recognized under Japanese law is one of the foremost points of disagreement between Shinsei Bank and LBHI/LB Asia, and that the question currently is being litigated in the proceedings before the Tokyo District Court. Accordingly, the Debtors respectfully request that this Court make clear in its resolution of the Motion that it is *not* addressing any issue of Japanese law or suggesting how the Tokyo District Court should rule on any issue before it.

WEIL, GOTSHAL & MANGES LLP

The Honorable James M. Peck
September 25, 2009
Page 5

    The Debtors and Shinsei Bank, therefore, agree that Shinsei Bank has sought a ruling from the Tokyo District Court that would permit equitable subordination of LBHI's claims based on substantially the same factors that United States courts consider when deciding whether a creditor has engaged in conduct that may justify equitable subordination, *i.e.*, (i) undercapitalization, (ii) fraud, mismanagement, or breach of fiduciary duty, and (iii) use of the debtor as a mere instrumentality or alter ego. *See, e.g., Benjamin v. Diamond (In re Mobile Steel)*, 563 F.2d 692, 700 (5th Cir. 1977) (setting forth factors); *United States v. Noland*, 517 U.S. 535, 538-9 (1996) (endorsing the "Mobile Steel" test and noting that District Courts and Courts of Appeal generally follow Mobile Steel's three-part test in applying § 510(c) of the Bankruptcy Code to equitably subordinate claims in bankruptcy proceedings).

    Shinsei Bank argues only that, contrary to *Enron*, its advocacy before a court for the subordination of an already allowed claim is defensive because it is being sought through the litigation of an alternate plan to the one proposed by Sunrise rather than through an adversary proceeding. (Sur-reply at 11-13.) The Debtors submit that this is truly a distinction without a difference: LBHI has been required to defend on the law and on the facts against allegations of, *inter alia*, undue control, exploitation, and undercapitalization, just as it would if Shinsei Bank had commenced an adversary proceeding seeking equitable subordination; and LBHI now faces the same potential re-prioritization, and re-characterization of its allowed claim as equity, as it would if Shinsei Bank had commenced an adversary proceeding that seeks equitable subordination (or its equivalent in Japan, as described by the Suzuki Declaration at ¶ 35).[4]

### D.   Conclusion

    The Momo-o Supp. Decl., the Sur-reply, and the Suzuki Declaration, therefore, demonstrate that there are no material facts in dispute between Shinsei Bank and the Debtors. Shinsei Bank acknowledges that it is seeking to equitably subordinate LBHI's claims in the Sunrise Finance Proceeding. The Suzuki Declaration admits that this equitable subordination is substantially the same relief sought by that name in the United States, and on substantially similar grounds. The Debtors believe, as did the court in *Enron*, that it is a violation of the automatic stay to seek equitable subordination of a chapter 11 debtor's allowed claims, and that seeking such relief is an offensive, not a defensive, action. While Shinsei Bank thus is forced to

---

[4]   At the Hearing, Shinsei Bank's attorney also appears to have seen no difference between seeking equitable subordination through an adversary proceeding or by litigating for an alternative plan:

> Now, with respect to the Enron case I do not believe – that was a case, by the way, where there was a motion – they're [sic] proceeding in that case was a complaint, an adversary proceeding to subordinate, I don't think it makes much difference.

(Hr'g Tr. at 83:14-18.)

WEIL, GOTSHAL & MANGES LLP

The Honorable James M. Peck
September 25, 2009
Page 6

argue that *Enron* was wrongly decided, the Debtors submit that if this Court accepts Judge Gonzalez's analysis and holding in *Enron*, which the Debtors believe are well founded and persuasively presented, then Shinsei Bank's prosecution of the Shinsei Plan should be found to be an offensive act that violates the automatic stay. Accordingly, for the reasons set forth in the Motion, the Reply, and herein, the Motion should be granted.

Respectfully submitted,

Richard P. Krasnow

cc:   J. Ronald Trost (*via overnight delivery and e-mail*)
      Denis F. Cronin (*via overnight delivery and e-mail*)
      Dov Kleiner (*via overnight delivery and e-mail*)
      Ari M. Berman (*via overnight delivery and e-mail*)
      Dennis O'Donnell (*via overnight delivery and e-mail*)