| | |
|---|---|
| FLASTER/GREENBERG P.C.<br>1600 John F. Kennedy Boulevard, 2nd Floor<br>Philadelphia, PA 19103<br>Telephone: 215-279-9904<br>Facsimile: 215-279-9394<br>William J. Burnett, Esquire (PA No. 75975)<br>Greg T. Kupniewski, Esquire (PA No. 89872) | Hearing Date: November 18, 2009<br>Time: 10:00 a.m.<br><br>Objections Due: November 12, 2009<br>Time: 4:00 p.m. |

*Counsel for The TAARP Group, LLP*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et. al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

**NOTICE OF HEARING OF MOTION OF THE TAARP GROUP, LLP FOR AN ORDER: (I) AUTHORIZING AND DIRECTING IMMEDIATE PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b) AND TO THE EXTENT NECESSARY, NUNC PRO TUNC APPROVAL FOR PERFORMANCE OF POST-PETITION SERVICES; (II) GRANTING A CONSTRUCTIVE TRUST OVER A PORTION OF FUNDS CREDITED TO DEBTORS POST-PETITION; (III) GRANTING RECOVERY IN QUANTUM MERUIT; AND (IV) GRANTING SUCH OTHER RELATED RELIEF AS APPROPRIATE UNDER 11 U.S.C. §105**

PLEASE TAKE NOTICE that on September 30, 2009, The TAARP Group, LLP ("TAARP"), by and through its undersigned counsel, filed its Motion for an Order: (I) Authorizing and Directing Immediate Payment of an Administrative Expense Claim Pursuant to 11 U.S.C. § 503(B) and To The Extent Necessary, Nunc Pro Tunc Approval for Performance of Post-Petition Services; (II) Granting a Constructive Trust Over a Portion of Funds Credited to Debtors Post-Petition; (III) Granting Recovery in *Quantum Meruit*; and (IV) Granting Such Other Related Relief as Appropriate under 11 U.S.C. §105 (the "Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be filed with the Bankruptcy Court on or before November 12, 2009 at 4:00 p.m. At the same time, you must also serve a copy of any response on the undersigned counsel.

PLEASE TAKE FURTHER NOTICE that a hearing with respect to the Motion will be held on November 18, 2009 at 10:00 a.m. before the Honorable James M. Peck at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that the relief requested may be granted without a hearing if no objection is timely filed and served.

**FLASTER/GREENBERG P.C.**

Dated: September 30, 2009

/s/ *Greg T. Kupniewski*
William J. Burnett, Esquire
Greg T. Kupniewski, Esquire
1600 John F. Kennedy Boulevard, 2nd Floor
Philadelphia, PA 19103
Telephone: 215-279-9907
Facsimile: 215-279-9394

*Counsel for The TAARP Group, LLP*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**FOR THE SOUTHERN DISTRICT OF NEW YORK** | Hearing date: Nov. 18, 2009<br>Time: 10:00 a.m.<br>Objections Due: Nov. 12, 2009<br>Time: 4:00 p.m. |

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

**MOTION OF THE TAARP GROUP, LLP FOR AN ORDER: (I) AUTHORIZING AND DIRECTING IMMEDIATE PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b) AND TO THE EXTENT NECESSARY, NUNC PRO TUNC APPROVAL FOR PERFORMANCE OF POST-PETITION SERVICES; (II) GRANTING A CONSTRUCTIVE TRUST OVER A PORTION OF FUNDS CREDITED TO DEBTORS POST-PETITION; (III) GRANTING RECOVERY IN QUANTUM MERUIT; AND (IV) GRANTING SUCH OTHER RELATED RELIEF AS APPROPRIATE UNDER 11 U.S.C. §105**

The TAARP Group, LLP ("TAARP"), by and through its undersigned counsel, Flaster/Greenberg P.C., hereby moves this Court, for an Order (I) Allowing and Authorizing Payment of an Administrative Expense Pursuant to 11 U.S.C. § 503(b) for Funds Expended Post-Petition and to the Extent Necessary, Granting Nunc Pro Tunc Approval for Performance of Post-Petition Services; (II) Granting a Constructive Trust; (III) Granting Recovery in *Quantum Meruit* and (IV) Granting Such Other Related Relief as Appropriate Under 11 U.S.C. §105 (the "Motion"), all as set forth below.

## PRELIMINARY STATEMENT

Prior to the Debtors filing for chapter 11 bankruptcy, TAARP was engaged to perform certain tax related services on behalf of Debtors. Subsequent to the Filing Date, TAARP was induced to continue to perform services to the benefit of the Debtors and the estates. As a direct and exclusive result of TAARP's extensive efforts, Debtors and Debtors' bankruptcy estate received a significant benefit post-petition of nearly ten million dollars. TAARP files this instant

Motion seeking to be paid the reasonable and contractual contingent fee compensation that TAARP fully-well earned. TAARP has tried in good faith for months to resolve this situation amicably before resorting to litigation to no avail.

## JURISDICTION

This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND[1]

1. On September 15, 2008, and periodically thereafter (as applicable, the "Filing Date"), Lehman Brothers Holding, Inc. and various affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

2. Upon information and belief, the Debtors continue operating their businesses and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. TAARP is a limited liability partnership engaged in the business of providing tax consulting services for small to large companies and their subsidiaries.

4. TAARP was engaged on March 14, 2008 by the Debtors to analyze its federal tax accounts and to administratively pursue with the Internal Revenue Services (the "IRS") any favorable account corrections, including any claims for refund identified. A copy of TAARP's engagement letter ("Engagement Letter") is attached hereto as Exhibit "A". Pursuant to the

---

[1] The below described events and factual allegations can be confirmed by John J. Triolo of PricewaterhouseCoopers in New York, New York, who worked with TAARP in obtaining and securing the Refund for Debtors.

2

927614-1

Engagement Letter TAARP is to be compensated on a contingency fee basis in the amount of 15% of all favorable tax account corrections, including any amounts refunded or credited to Debtors as a result of TAARP's services. TAARP's compensation was not earned or due to TAARP until such time that refunds were received by Debtors and that the favorable account corrections were properly reflected by the IRS in Debtors' federal income tax accounts.

5. Prior to the Filing Date, TAARP identified certain refund opportunities and directly contacted IRS officials to resolve the refunds identified.

6. After the Filing Date, TAARP, at the direction of the Debtors' representative, continued to work with the IRS to secure the refunds identified. Specifically, upon Debtors' receipt of the Refund, TAARP was required (pursuant to the terms of the Engagement Letter) to ensure that Debtors' tax accounts were reconciled and that the favorable account corrections were properly reflected. If the accounts were not reconciled by TAARP and the account corrections were not properly reflected, the Debtors would be unable to retain the favorable account corrections.

7. As a direct result of TAARP's post-petition services, TAARP was able to bring to a successful conclusion the refund of $9,784,590.26 (the "Refund") to the Debtors, which sum was directly deposited into the Debtors' account, all occurring post-petition. Specifically, TAARP reviewed and completed the computations with the IRS and reached an agreement as to the amount of the refund. Attached hereto as Exhibit "B" is the relevant transcript containing the IRS' written comments as to the agreed upon refund amount. As a result of the agreement, the IRS issued a computer generated refund (not a wire) of $9,638,429.19, which posted to the IRS transcript on September 29, 2008. This amount was in error since it did not include the necessary adjustment to account for deficiency interest. Additionally, on September 15, 2008,

pursuant to the agreement with TAARP, the IRS issued a manual refund of $9,784,590.26, which was wired to Debtor on September 16, 2008. Since the IRS erroneously issued duplicate refunds (i.e., the manual wire and the computer generated refund), a debit balance of $9,784,590.26 was produced in the Debtors' accounts. As a result, the IRS would have had to recover the total amount of the Refund wired on September 16, 2008.

8. Prior to October 20, 2008, in order to properly reconcile the accounts, TAARP brought to IRS' attention the duplication and the fact that a $9,784,590.26 debit balance existed in the Debtors' account. On October 20, 2008, the IRS reversed the erroneous computer generated refund of $9,638,429.19. The reversal resulted in an outstanding debit balance of $158,908.06 (which included $12,746.99 of allowable interest). This resulting debit balance was due in part to the IRS' failure to process one of the transactions for the abatement of deficiency interest.

9. On November 7, 2008, after all the transactions posted to the Debtors' tax accounts, the IRS sent TAARP updated transcripts, which verified that the erroneous computer generated refund of $9,638,429.19 was actually reversed. However, TAARP determined that the accounts still contained errors and that the corrections, including the Refund, were not properly reflected in the Debtors' tax accounts. The accounts still reflected a balance due of $158,908.06. By telephone calls and e-mail correspondence dated November 9, 2008, TAARP advised the IRS of the errors and what specific actions were required to properly reflect the transactions so that the Debtors' accounts would be reconciled.

10. On November 10, 2008, TAARP issued a letter to the IRS (and copying the Debtors' representatives) setting forth the remaining errors and the steps needed to correct the

4

errors. A copy the letter is attached hereto as Exhibit "C". TAARP continued to work with the IRS and monitor the Debtors' accounts.

11. On December 16, 2008, TAARP received the Debtors' updated transcripts of accounts from the IRS. The updated transcripts incorporated all of TAARP's instructions, were reconciled in balance and properly reflected all of the favorable account corrections, including the Refund. At that point, the Debtors could retain the Refund. The transcripts were sent to the Debtors' representatives and TAARP's engagement was complete.

12. Pursuant to the Engagement Letter, TAARP is entitled to 15% of the Refund, or $1,467,688.50 (the "Fee") as an allowed administrative expense claim, because TAARP's work directly lead to a substantial post-petition windfall for the Debtors.

13. During and upon completion of TAARP's engagement, TAARP and the Debtors' representative continued their post-petition dialogue. Most notably, the Debtors' representative expressed a willingness to assist in recovering the Fee for TAARP and requested that TAARP prepare and submit a timeline of services and/or other information evidencing the importance of TAARP's post-petition services. Attached hereto as Exhibit "D" is email correspondence dated January 13, 2009 between TAARP and the Debtors' representative discussing this timeline of services rendered. Despite TAARP's good faith attempts over the many months to resolve this matter without litigation, the Debtors refused to pay the Fee. Therefore, this Court should grant TAARP the payment of the Fee as an allowed administrative expense claim and direct immediate payment thereof, based on the reasons set forth herein.

927614-1

## BASIS FOR RELIEF REQUESTED

I. **TAARP IS ENTITLED TO ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b) AND TO THE EXTENT NECESSARY, NUNC PRO TUNC APPROVAL FOR PERFORMANCE OF POST-PETITION SERVICES.**

14. TAARP was retained and performed services for the Debtors post-petition, which services benefited the Debtors' estate and furthered the Debtors' efforts to reorganize. Accordingly, TAARP is entitled to the allowance and payment of an administrative expense claim in the amount of the Fee pursuant to 11 U.S.C. §§ 503(b)(1)(A) and alternatively, 11 U.S.C. §§ 503(b)(2) or 503(b)(3)(D). Furthermore, to the extent necessary, TAARP is entitled to nunc pro tunc approval for its post-petition retention.

### A. TAARP is entitled to allowance of an administrative expense claim pursuant to 11 U.S.C. §§ 503(b)(1)(A) and alternatively, 11 U.S.C. §§ 503(b)(2) or (b)(3)(D).

15. Section 503(b) of the Bankruptcy Code governs the allowance of administrative claims and provides, in relevant part as follows

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate...;
>
> (2) compensation and reimbursement awarded under section 303 of this title;
>
> (3)(D) the actual, necessary expenses ... incurred by – a creditor ... in making a substantial contribution in a case ... .

11 U.S.C. § 503(b)(1)(A); 11 U.S.C. § 503(b)(2); 11 U.S.C. § 503(b)(3)(D).

16. A claim is entitled to administrative priority if "it arises out of a transaction between the creditor of the bankrupt's trustee or debtor-in-possession, and 'only to the extent

6

927614-1

that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" Trustees of Amalgamated Ins. Fund v. McFarlins, Inc., 789 F.2d 98, 101 (2d Cir. 1986) (citations omitted); In re Episode USA, Inc., 202 B.R. 691, 696 (Bankr. S.D.N.Y. 1996) (administrative claims are those that arise from "transaction with the estate or consideration must have been given to the estate, and the debt must have benefitted the estate") (citations omitted).

17.   Courts have also held that consideration is furnished to the estate where the debtor-in-possession induces post-petition performance. See In re WorldCom, Inc., 308 B.R. 157, 166 (Bankr. S.D.N.Y. 2004). Furthermore, while it is acknowledged that pre-petition fees and expenses are generally not afforded administrative expense, "[i]t is possible for a claim arising out of a pre-petition contract with the debtor to be a priority expense if the claim was "incurred" after the filing date." In re Baths International, Inc., 25 B.R. 538, 540 (Bankr. S.D.N.Y. 1982), aff'd 31 B.R. 143 (Bankr. S.D.N.Y. 1983). Courts have found that "payment of pre-petition fees and expenses as an administrative expense pursuant to section 503(b) is not per se disallowed, and that such payment is permissible under certain appropriate circumstances." In re Trans World Airlines, Inc., 1993 WL 559245 *7 (Bankr. D. Del. 1993) (citations omitted).

18.   Here, it is undisputable that, given the size of the Refund, TAARP's procurement of the Refund was a financial windfall to Debtors' estate and significant in Debtors' post-petition reorganization efforts. Furthermore, while the Debtors engaged TAARP prior to the Filing Date, TAARP relied on the Debtors and was induced after the Filing Date to continue the performance of its services. TAARP's continued performance post-petition was crucial to the Debtors' retention of the Refund. Specifically, without TAARP's post-petition work, Debtors' Refund could have easily been lost. Accordingly, pursuant to 11 U.S.C. § 503(b)(1)(A), this Court

should find that TAARP is entitled to the allowance and payment of an administrative expense under section 507(a)(2) of the Bankruptcy Code.

19. Alternatively, as set forth below in this Motion, TAARP is entitled to nunc pro tunc approval for its performance of post-petition services; therefore, section 503(b)(2) entitles TAARP to the allowance and payment of an administrative expense under section 507(a)(2) of the Bankruptcy Code.

20. Finally, since TAARP made a substantial contribution to the Debtors' Chapter 11 case, TAARP is entitled to the allowance and payment of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(3)(D).

21. Section 503(b)(3)(D) of the Bankruptcy Code allows payment of fees and expenses as an administrative expense when the fees and expenses were "incurred by a creditor ... in making a substantial contribution in a case under [C]hapter ... 11." 11 U.S.C. § 503(b)(3(D). This Court has found that this section does not require that the fees and expenses be incurred under a retention order. See In re Balport Construction Co., Inc., 123 B.R. 174, 175 (Bankr. S.D.N.Y. 1991) (stating that section 503(b)(3)(D) was intended to reimburse creditors not specifically appointed under court orders).

22. Here, TAARP is a creditor in Debtors' Chapter 11 case. Furthermore, TAARP's post-petition services resulted in a substantial financial reward to the Debtors' estate after the Filing Date. Therefore, TAARP is entitled to an allowance and payment administrative expense claim of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(3)(D).

23. Based on the foregoing, TAARP is entitled to administrative expense priority claim under Sections 507(a)(2) and 503(b) of the Bankruptcy Code.

**B. To the extent necessary, TAARP is entitled to nunc pro tunc approval for performance post-petition services.**

24. It has been held by this Court that "services qualifying under either section 503(b)(2) or section 503(b)(1)(A), must have been rendered after the filing of the petition for relief pursuant to a duly entered order of retention." In re Balport Construction Co., Inc., 123 B.R. 174, 178 (Bankr. S.D.N.Y. 1991). In the event that retention of a professional was not approved by the bankruptcy court prior to performance of post-petition services, courts have held that a "bankruptcy court may grant post facto approval of an application for the retention of a professional where (1) the employment satisfies the statutory requirements, and (2) the delay in seeking court approval resulted from extraordinary circumstances." In Re Keren Limited Partnership, 225 B.R. 303, 306 (Bankr. S.D.N.Y. 1998) (citations omitted), aff'd 189 F.3d 86 (2d Cir. 1999). With respect to the first requirement, section 327(a) of the Bankruptcy Code permits employment of "attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). With respect to the latter requirement, in determining whether "extraordinary circumstances" are present, a bankruptcy court may consider any relevant factors, including "time pressure to begin service without approval." See Keren, 225 B.R. at 306-07.

25. Here, in the event that TAARP is a "professional" requiring retention, it has already been established that TAARP's services qualify under Section 503(b)(2) or section 503(b)(1)(A) of the Bankruptcy Code, and TAARP's services were rendered after the Filing Date. However, it is acknowledged that TAARP's retention, if necessary, has not yet been approved by an order of this Court. Accordingly, TAARP is entitled post-facto approval since it meets the requirements of section 327(a) of the Bankruptcy Code and since there are extraordinary circumstances as to why TAARP was delayed in seeking this Court's approval.

9

927614-1

First, TAARP is engaged in accounting and other professional services, and notwithstanding the Fee, does not hold an interest adverse to the Debtors' estate. Second, TAARP was under pressure by the Debtors to complete the reconciliation process as quickly as possible with the IRS so that the Debtors could retain the Refund. Notwithstanding the importance of the time pressures involved in preserving the Refund, the post-petition dialogue between TAARP and the Debtors' gave TAARP hope that the Fee would be distributed to TAARP while failing to inform them of the potential issues which the intervening bankruptcy could create. Therefore, based on the time constraints and continuing conversations with the Debtors to consensually resolve this matter, TAARP has been delayed in seeking this Court's approval.

26.    Accordingly, this Court should, if necessary, approve TAARP's retention nunc pro tunc so that TAARP can be permitted to pursue an administrative priority claim for the Fee pursuant to section 503(b)(2) or section 503(b)(1)(A) of the Bankruptcy Code.

## II.   TAARP IS ENTITLED TO A CONSTRUCTIVE TRUST OVER THE PORTION OF THE REFUND ATTRIBUTABLE TO TAARP'S FEE.

27.    Notwithstanding TAARP's entitlement to the allowance and payment of the Fee as an administrative expense pursuant to 11 U.S.C. § 503(b), TAARP is also entitled to a constructive trust over the portion of the Refund attributable to TAARP's Fee.

28.    Entitlement to a constructive trust requires proof of the following: (1) a res-identifiable property from which the debt is to be paid; (2) a confidential or fiduciary relationship; (3) a promise expressed or implied; (4) a transfer in reliance thereon; and (5) unjust enrichment. See In re Branch Motor Express Co., 51 B.R. 146, 148 (Bankr. S.D.N.Y. 1985). However, it has been held that "a constructive trust may arise even in the absence of a fiduciary relationship if the party holding title has an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful or further retention would result in

10

unjust enrichment, or both." In the Matter of U.S.N. Co., Inc., 32 B.R. 675, 677 (Bankr. S.D.N.Y. 1983).

29. Here, the Refund is an identifiable property from which the Fee is to be paid. The Refund was expressly contemplated by the parties, and the Refund was actually received by the Debtors' estate. Further, unlike those cases where the claimant could not show that the parties intended that the claimant's fee would be paid specifically out of a designated fund, the Engagement Letter expressly provided that the Fee would be paid to TAARP directly from the Refund received by Debtors. See e.g., Branch Motor, 51 B.R. at 149.

30. Having satisfied the requirement of an identifiable property, the remaining requirements can be satisfied based on the nature of the Debtors' engagement of TAARP. First, the Debtors' estate has an equitable duty to convey the Fee, and retention of the Fee by the Debtors' estate is not only wrongful, but would also result in unjust enrichment. Without TAARP's performance of its services, the Debtors would not have received the Refund. In addition, the Debtors' engagement of TAARP expressly contemplated that the Fee would be paid from the Refund. Therefore, to allow the Debtors' estate to retain the entire Refund, without distributing the Fee to TAARP, would allow the Debtors' estate to reap the benefits of TAARP's work without meeting its obligations. In addition, TAARP's performance pre-petition and continued performance post-petition was based on the promise that TAARP would be compensated for it services. Finally, anticipating receipt of the Fee, TAARP relied on this promise in the performance of its services.

31. Based on the foregoing, notwithstanding TAARP's entitlement to the allowance and payment of the Fee as an administrative expense pursuant to 11 U.S.C. § 503(b), this Court

11

927614-1

should grant TAARP a constructive trust over the portion of the Refund attributable to TAARP's Fee.

### III. TAARP IS ENTITLED TO RECOVER IN QUANTUM MERUIT.

32. Notwithstanding the foregoing, alternatively, TAARP is also entitled to recover in quantum meruit for post-petition services rendered to the Debtors. Recovery in quantum meruit is appropriate under the circumstances of this case since "payment for the services rendered is required in order to prevent unjust enrichment of the party benefitted by the work." In re Chateaugay Corp., 139 B.R. 598, 606 (Bankr. S.D.N.Y. 1992) (citing Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990)). See also In re Enron Corp., 300 B.R. 201, 218 (Bankr. S.D.N.Y. 2003); In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 776 ("[I]t undisputable [sic] that a claimant is entitled to a quantum meruit recovery for benefit conferred post-petition."). Here, the Debtors' estate benefitted by the work performed by TAARP. Therefore, this Court should find that TAARP is entitled to payment for the services rendered to Debtors' estate.

33. "The right of quantum meruit is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." Chateaugay Corp., 139 B.R. at 606. In order to recover in quantum meruit, a plaintiff must prove the following: "(1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services or materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." Id. (citing Bashara v. Baptist Memorial Hosp. Sys., 685 S.W.2d 307, 310 (Tex.1985)).

12

927614-1

34. Assuming that the Engagement Letter is an executory contract, the Engagement Letter was neither rejected nor assumed by the debtor-in-possession, and TAARP is still entitled to recover in quantum meruit. See Enron., 300 B.R. at 218. "If the debtor-in-possession elects to continue to receive benefits from another party pending a decision to reject or assume a contract, 'the debtor-in-possession is obligated to pay for the reasonable vale of those services which, depending on the circumstances of a particular contract, may be what is specified in the contract.'" Id. (citing N.L.R.B. v. Bildisco, 465 U.S. 513, 531 (1984)). In either case, the Debtors elected to continue to receive benefits from TAARP after the filing date and TAARP rendered services based on the expectation of payment.

35. The first element of a quantum meruit claim requires that valuable services were rendered or materials furnished. In this case, it is clear that TAARP rendered valuable services to the Debtors' estate. As a result of such services, the Debtors' estate realized the Refund. Given the size of the Refund, it is apparent that TAARP's services were valuable to Debtors' estate. The second element is also met in this case since TAARP rendered its services for the benefit of the Debtors' estate, which is "the person sought to be charged." As to third element, TAARP performed post-petition services at the Debtors' direction, continued the services without any objection, and reached a very favorable resolution for the Debtors' estate. Therefore, the Debtors accepted, used and enjoyed TAARP's services. Finally, the fourth element requires reasonable notification under the circumstances that the claimant was expecting to be paid by the party sought to be charged. Here, the post-petition dialogue between the parties evidences the fact that the Debtors were aware of TAARP's expectation of payment for the services rendered. Therefore, in the alternate, recovery in quantum meruit is appropriate under

927614-1

the circumstances of this case. It would be unjust to allow the Debtors' estate to benefit from TAARP's post-petition services without compensation.

36. Recovery in quantum meruit is the reasonable value of the services, which may be the amount specifically agreed upon by the parties. See Enron Corp., 300 B.R. at 218 (citing N.L.R.B. v. Bildisco, 465 U.S. at 531). Since TAARP was directly responsible for obtaining the Refund post-petition, TAARP should be entitled to the full amount of the Fee, as agreed upon by the parties.

37. Notwithstanding TAARP's rights to the Fee otherwise set forth herein, this Court should alternately allow TAARP to recover the Fee in quantum meruit in accordance with the terms of the Engagement Letter.

## RESERVATION OF RIGHTS

38. TAARP reserves all rights (1) to defend against challenges from other parties and (2) to seek recovery on other alternative grounds. Nothing herein contained shall be construed to constitute an admission, assumption or acknowledgment of liability for the debts of any other entity.

## NOTICE

39. Notice of this Motion will be provided by facsimile, electronic transmission or mail delivery (except as otherwise noted) to (a) the Debtors, (b) counsel for the Debtors, (c) the United States Trustee for the Southern District of New York, (d) counsel to the Debtors' prepetition and proposed post-petition secured lenders, and (e) counsel for the Official Committee of Unsecured Creditors. In light of the nature of the relief requested herein, TAARP submits that no other or further notice need be given and that the notice provided by TAARP is sufficient.

927614-1

08-13555-scc   Doc 5309   Filed 09/30/09   Entered 09/30/09 17:48:51   Main Document
Pg 17 of 17

## **NO PRIOR REQUEST**

40. No prior request for the relief sought in this Motion has been made to this or any other court in connection with the Debtors' Chapter 11 case.

WHEREFORE, TAARP respectfully requests that this Court enter an Order, substantially in the form attached hereto (i) allowing the Fee as an administrative expense pursuant to 11 U.S.C. § 503(b) (ii) directing the Debtors to pay the Fee within 5 days of the date of Order and (iii) granting such other related relief as appropriate.

**FLASTER/GREENBERG P.C.**

Dated: September 30, 2009    */s/ Greg T. Kupniewski*
Greg T. Kupniewski, Esquire (admitted Pro Hac Vice)
William J. Burnett, Esquire (DE 4078, PA 75975, NJ WB4536)
1600 John F. Kennedy Boulevard, Suite 200
Philadelphia, PA 19103
Telephone: 215-279-9393
Facsimile: 215-279-9394

*Counsel for The TAARP Group, LLP*

15

927614-1