# EXHIBIT A

**The TAARP Group, LLP**  
8333 Douglas Avenue  
Suite 1500  
Dallas, TX 75225

Austin, TX

Dallas, TX

Ogden, UT

**ACCEPTANCE COPY**

October 29, 2007

Tampa/Clearwater, FL

<u>Private</u>  
Mr. Anthony J. Taranto  
Managing Director, Tax Director - Americas  
Lehman Brothers Holdings, Inc.  
1301 Avenue of the Americas  
New York, NY 10019

Washington, DC

Dear Tony:

We are pleased Lehman Brothers Holdings, Inc. (the "Company") has retained The TAARP Group LLP (The TAARP Group) to provide a Tax Account Analysis Review Program (TAARP) with respect to it, its acquired companies and its subsidiaries for all open tax years. This letter confirms the scope and related terms of your engagement of The TAARP Group.

**Services**

We will, with respect to all federal (and certain state) taxes (including, but not limited to, income, alternative minimum, excise and employment-related taxes) for the taxable years covered by this engagement, and with respect to all payments, deposits, refunds and accounts, perform the following services:

1. Request and analyze all tax records;
2. Determine whether there are overcharges of interest and penalties;
3. Determine whether there are under-allowances of interest on refunds, credits or offsets;
4. Determine whether there are credit balances or other account errors in respect of taxes, interest or penalties;
5. Apply global interest netting rules as appropriate;
6. Communicate the results of our findings, including preparation of submissions and communications necessary to initiate seeking corrections to the foregoing matters. In that regard, we will set forth in writing the basis for each requested correction; and
7. After obtaining your written concurrence, obtain a limited power of attorney regarding these matters to pursue administratively, on your behalf, with the Internal Revenue Service (IRS) or the appropriate agency, the corrections required with respect to items 2 through 5 above (as a refund or by means of credit, offset or abatement).

**The TAARP Group, LLP**

Page 2
Mr. Anthony J. Taranto
Lehman Brothers Holdings, Inc.
October 29, 2007

It is understood and agreed that The TAARP Group's services (the "Engagement") may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Company. We will have no liability by reason of our failure to identify any correction and/or adjustment under items 2 through 5 above.

**Initial Review**

The initial taxable periods under review will be all taxable years through November 30, 2003.

**Subsequent Reviews**

This agreement contemplates additional reviews for taxable periods beyond those enumerated in the Initial Review at your discretion. We will review any such periods for additional recoveries. Any further amounts recovered above the amounts determined as proper by the Company shall be subject to this agreement.

**Terms**

For the initial review, we will be entitled to a payment of 15% of all favorable account corrections. For purposes of this engagement, favorable account corrections will include (i) amounts refunded or credited to the Company, (ii) offsets to, or abatements of, any liability of the Company and (iii) interest saved by the Company as the result of any credit, offset or abatement. To achieve certain favorable account corrections, recommendations may be made to implement certain transactions. With such recommendations, we will include an estimate of the favorable account corrections, however, all decisions in connection with the implementation of such recommendations shall be the responsibility of, and made by, the Company. The fee structure will be the same for each subsequent review. Our fee is payable within 30 days from the date the Company receives any favorable account correction.

From time to time, the Company may request The TAARP Group to provide certain consulting services. Our fee for any consulting service will be based upon the following standard billing rates plus reasonable out-of-pocket expenses occurred:

| | |
|---|---|
| Partner | $500/hour |
| Senior Manager | $400/hour |
| Manager | $350/hour |

Our fee is payable within 30 days from the date the Company receives an invoice.

**The TAARP Group, LLP**

Page 3
Mr. Anthony J. Taranto
Lehman Brothers Holdings, Inc.
October 29, 2007

**Limitation on Damages**

Neither the Company nor The TAARP Group shall be liable to the other for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter for an aggregate amount in excess of the fees paid or owing to The TAARP Group for services rendered by The TAARP Group under the Engagement Letter. In no event shall either party be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort or otherwise.

**Alternative Dispute Resolution**

Any dispute or claim arising out of or relating to the Engagement Letter between the parties, the services provided thereunder, or any other services provided by or on behalf of The TAARP Group or any of its subcontractors or agents to the Company or at its request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures set forth in Exhibit A, which constitute the sole methodologies for the resolution of all such disputes. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction. Mediation, if selected, may take place at a location to be designated by the parties. Arbitration shall take place in Tampa, Florida. Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

We greatly appreciate the opportunity to submit our engagement letter to perform this review for the Company. If these terms meet with your approval, please sign one copy of this letter and the enclosed Form 2848, Power of Attorney form and return them to us. You will need to attach copies of any outstanding Forms 2848 that you wish to remain valid. Otherwise, the IRS will cancel all other Forms 2848 and record the one we provide. We look forward to working with you and your staff on this important initiative.

**The TAARP Group, LLP**

Page 4
Mr. Anthony J. Taranto
Lehman Brothers Holdings, Inc.
October 29, 2007

If you have any questions, please call me at 972-661-2379.

Very truly yours,

The TAARP Group, LLP

David L. Veeder
*Partner*

**ACCEPTED AND AGREED:**

_____
**Signature**

03-14-08
**Date**

**The TAARP Group, LLP**

Exhibit A

**Dispute Resolution Procedures**

The following procedures are the sole methodologies to be used to resolve any controversy or claim ("dispute"). If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

*Mediation*

Any party may request mediation of a dispute by providing a written Request for Mediation to the other party or parties. The mediator, as well as the time and place of the mediation, shall be selected by agreement of the parties. Absent any other agreement to the contrary, the parties agree to proceed in mediation using the CPR Mediation Procedures (Effective April 1, 1998), with the exception of paragraph 2 which shall not apply to any mediation conducted pursuant to this agreement. As provided in the CPR Mediation Procedures, the mediation shall be conducted as specified by the mediator and as agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

*Arbitration*

Arbitration shall be used to settle the following disputes: (1) any dispute not resolved by mediation 90 days after the issuance by one of the parties of a written Request for Mediation (or, if the parties have agreed to enter or extend the mediation, for such longer period as the parties may agree) or (2) any dispute in which a party declares, more than 30 days after receipt of a written Request for Mediation, mediation to be inappropriate to resolve that dispute and initiates a Request for Arbitration. Once commenced, the arbitration will be conducted either (1) in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("CPR Arbitration Rules") as in effect on the date of the engagement letter or contract between the parties, or (2) in accordance with other rules and procedures as the parties may designate by mutual agreement. In the event of a conflict, the provisions of this document and the CPR Arbitration Rules will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom may be designated by the parties using either the CPR Panels of Distinguished Neutrals or the Arbitration Rosters maintained by any JAMS Office in the United States. If the parties are unable to agree on the composition of the arbitration panel, the parties shall follow the screened selection process provided in Section B, Rules 5, 6, 7, and 8 of the CPR Arbitration Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitration panel shall issue its final award in writing. The panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the CPR Arbitration Rules. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.