# EXHIBIT D

**From:** Ely Mark
**Sent:** Tuesday, January 13, 2009 11:42 AM
**To:** jciongoli@lehman.com
**Cc:** Veeder David
**Subject:** TAARP engagement and timeline of services performed
**Importance:** High

Dear Jeff,

Pursuant to our discussion, here's a time line setting forth the relevant events/time periods. Let us know whether you need anything else from us like a request that our claim be considered an administrative expense. Also, if you need us to draft a motion asking the court to authorize you to retain TAARP as a professional "nunc pro tunc" (effective back to the petition date) because our work was ongoing and necessary to obtain and retain the $9 million, we would of course be happy to do so. Thanks so much for your help -- as we said, for us, this is very substantial.

(1) TAARP was engaged in March of 2008 by Lehman Brothers Holdings, Inc. (hereafter "Lehman") to analyze its federal tax accounts and to pursue administratively with the IRS any favorable account corrections, including any claims for refund identified. The compensation for the work was the payment of 15% of all favorable account corrections, which included any amounts refunded or credited to Lehman as a result of TAARP's services. TAARP's compensation was not earned or due to TAARP until such time that refunds were received by Lehman and that the favorable account corrections were properly reflected by the IRS in Lehman's federal income tax accounts.

(2) TAARP identified certain refund opportunities and directly contacted IRS officials to resolve the refunds identified. On September 15, 2008, post petition, TAARP, at the direction of Lehman's representative, continued to work with the IRS to secure the refunds identified.

(3) TAARP was able to bring to a successful conclusion the refund or $9,784,590.26 to Lehman, post-petition, which sum was directly deposited post-petition into Lehman's account. After the refunds were received, TAARP was required to ensure that Lehman's tax accounts were reconciled and that the favorable account corrections were properly reflected. If the accounts were not reconciled and the account corrections were not properly reflected, Lehman would be unable to retain the favorable account corrections.

(4) In early November of 2008, after all of the transactions posted to Lehman's tax accounts, TAARP reviewed Lehman's IRS transcripts of accounts and determined that there existed errors in the accounts and that the corrections, including the refund obtained, were not properly reflected in Lehman's tax accounts. By calls and e mail of November 9, 2008, TAARP advised IRS of the errors and advised what actions were required to properly reflect the transactions, so the accounts would be reconciled.

(5) TAARP continued to work with the IRS and monitor the accounts and on December 16, 2008, TAARP, received from the IRS Lehman's transcripts of account, which were reconciled and properly reflected all the favorable account corrections, including the refund received. The transcripts were sent to Lehman representatives and TAARP's engagement was complete.

Mark H. Ely
Partner
The TAARP Group LLP
11140 Rockville Pike, Suite 620
Rockville, Md. 20852
ph - 301-468-1877; fax - 240-266-8855
e mail - mely@taarpgroup.com