## **EXHIBIT D**

COMMITTEE'S OBJECTION

Hearing Date: July 15, 2009 at 10:00 a.m.

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                              :
In re:                                        :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :    08-13555 (JMP)
                                              :
             Debtors.                         :    (Jointly Administered)
                                              :
---------------------------------------------------------------- x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS TO MOTION OF DNB NOR BANK**
**FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE**
**EXPENSE CLAIM AND ALLOWING SETOFF OF SUCH CLAIM**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors"), hereby files this objection (the "Objection") to the Motion Of DnB NOR Bank ASA ("DnB NOR") Pursuant To 11 U.S.C. § 503(b), 507(b) For Allowance And Payment Of Administrative Expense Claim And Allowing Setoff Of Such Claim [Docket No. 4054] (the "Motion"). In support of its Objection, the Committee respectfully states as follows:

**BACKGROUND**

1.      Commencing on September 15, 2008 (the "Petition Date"), and periodically thereafter, the Debtors filed with this Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

"Bankruptcy Code"). On September 17, 2008, the Office of the United States Trustee appointed the Committee.

2. On September 17, 2008, DnB NOR sent written notice to LBHI asserting DnB NOR's purported right to set off amounts owed under a March 1, 2008 credit facility (the "Credit Agreement") against funds contained in a deposit account established and maintained by LBHI at DnB NOR (the "Account"). By the same notice, DnB NOR also advised LBHI that it had placed an "administrative freeze" on the Account to prevent LBHI from withdrawing any amounts therefrom.

3. Subsequently, on September 30, 2008, DnB NOR filed a Motion for Entry of (i) an Order Pursuant to 11 U.S.C. § 362(d) and Fed. Bankr. P. 4001 Granting Relief from the Automatic Stay to Effect Setoff or, in the Alternative, (ii) an Order Pursuant to 11 U.S.C. §§ 361 and 506(a) Requiring the Debtors to Provide Adequate Protection [Docket No. 465] (the "Setoff Motion"). On November 3, 2008, the Debtors filed an objection to the Setoff Motion [Docket No. 1334, as amended by Docket No. 1342] (the "Initial Objection") and the Committee filed a joinder to the Initial Objection [Docket No. 1336]. On December 2, 2008, the Debtors filed a supplemental objection to the Setoff Motion [Docket No. 1988] (the "Supplemental Objection"). By their Supplemental Objection, the Debtors requested, among other things, that the Court grant the Setoff Motion to permit, inter alia, DnB NOR to setoff against 99,113,236.36 Norwegian kroner ("NOK") (the "Undisputed Amount") and direct DnB NOR to transfer 7,065,351.56 NOK (the "Disputed Amount") and other funds contained in the Account upon LBHI's direction.

4. DnB NOR, the Debtors, and the Committee subsequently entered into a Stipulation, Agreement, and Order approved by the Court on January 22, 2009 [Docket No. 2605] (the "Stipulation"), providing for consensual relief from the automatic stay to permit DnB

2

NOR to effect a setoff with respect to the Undisputed Amount.

5. By the Motion, DnB NOR seeks (i) allowance and payment of an administrative expense claim representing the diminution in currency value that DnB NOR alleges it suffered[1] from the Petition Date until November 5, 2008 (the "Claim"), arising out of the Credit Agreement; and (ii) authorization to set off that Claim against funds contained the Account.

### OBJECTION

6. As a threshold matter, DnB NOR has failed to demonstrate that it has been granted adequate protection for the period from the Petition Date to November 5, 2008. On this basis alone, the Motion must be denied. Having failed to show that it has an allowable claim, DnB NOR is also not entitled to a setoff against funds contained in the Account.

### I. Administrative Expense Claim

7. A party seeking an administrative expense claim pursuant to section 507(b) is required to show that (i) the debtor has provided the party with adequate protection; (ii) it has an allowable priority expense claim pursuant to section 507(a)(2); and (iii) such claim arose from either the imposition of the automatic stay under section 362, the use, sale, or lease of collateral under section 363, or the granting of a lien under section 364. See 11 U.S.C. §507(b); see also Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 865 (4th Cir. 1994). Only by meeting all three requirements may a creditor have an allowable claim pursuant to section 507(b). DnB NOR has made no showing with respect to the first two requirements of section 507(b) and thus does not have an allowable claim.

---

[1] DnB NOR claims in the Motion that this diminution in currency value over the period from the Petition Date until November 5, 2008, is either $2,388,628.99 (¶¶ 21, 22) or $2,411,681.83 (¶¶ 12, 15 and 23). In paragraph 15, DnB NOR asks the Court to award it the greater amount as an administrative expense claim.

3

### A. LBHI Did Not Provide Adequate Protection Between Petition Date And November 5, 2008

8. DnB NOR cannot satisfy the first requirement of section 507(b) because LBHI did not provide it with adequate protection for diminution of value during the period from the Petition Date until November 5, 2008. It was during this period that DnB NOR alleges the value of the collateral held in the Account decreased by $2,411,681.83, the amount it now seeks as an administrative expense claim.

9. On November 5, 2008, the Court held a status conference on the Setoff Motion (the "Status Conference"). DnB NOR alleges that "LBHI provided DnB NOR with adequate protection by consenting [during the Status Conference] to the conversion of DnB NOR's Norwegian krone collateral into U.S. dollars." Motion ¶ 18. The transcript of the Status Conference reflects that LBHI was "agreeable to the conversion of the krona into U.S. dollars to protect it against deterioration in value." Tr. Hr'g. Nov. 5, 2008, at 42:2-4 (remarks of Mr. Miller). However, at no time did LBHI stipulate that such adequate protection was intended to deal with the time from the Petition Date until November 5, 2008.[2] In fact, statements by both DnB NOR's counsel and the Court strongly suggest that the adequate protection was not being provided retroactively. See id. at 44:2-5 (remarks of Mr. Uzzi) ("[W]e've reached an agreement also on adequate protection, as Mr. Miller said, that [DnB NOR] can convert the krona account to U.S. dollars at its discretion in order to protect it against currency fluctuations."); see also id., at 44:9-10 (remarks of the Court) ([I]t's up to you [Mr. Uzzi] as to how much protection you want as you convert kronas into dollars.") (emphasis added). Both statements make clear that

---

[2] That the adequate protection was to be provided prospectively is not surprising, considering that adequate protection is "[b]y [its] very nature . . . forward looking and . . . premised on a prediction of future events." 3 William L. Norton, Jr., Norton Bankruptcy Law & Practice 3d § 49:4 (2009).

4

the parties were contemplating conversion as protection against <u>future</u> events, and not, as DnB NOR alleges in the Motion, to protect against any historical diminution in value of the collateral in the Account.

   10. DnB NOR's attempt to construe the agreement reached during the Status Conference as granting DnB NOR adequate protection relating to the Petition Date leads to an absurd result because such adequate protection would fail the moment it was provided. A debtor provides a creditor with adequate protection to "protect[ ] [the creditor] for any decline in the value of collateral" that may occur subsequent to the imposition of the automatic stay. <u>Travelers Life & Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C., Inc.)</u>, 98 B.R. 170, 173 (S.D.N.Y. 1989). Section 361 of the Bankruptcy Code states that adequate protection may be provided by either cash payments, replacement liens, or the "indubitable equivalent" of a party's collateral. <u>See</u> 11 U.S.C. § 361. At the Status Conference, LBHI allowed DnB NOR the indubitable equivalent of its collateral by stipulating to DnB NOR's conversion of its collateral from NOK to U.S. dollars to provide DnB NOR adequate protection against any <u>future</u> diminution in value of its collateral vis-à-vis U.S. dollars. The transcript of the Status Conference makes clear that LBHI did not provide any additional consideration to DnB NOR that would serve as adequate protection for the period from the Petition Date until November 5, 2008. <u>See</u> <u>Vincent Props., Inc. v. Five Star Partners, L.P. (In re Five Star Partners, L.P.)</u>, 193 B.R. 603, 612 (Bankr. N.D. Ga. 1996) ("[A] debtor in possession does not provide adequate protection for section 507(b) purposes unless it supplies some additional consideration to which the creditor is not already entitled.").

   11. Finally, DnB NOR concedes that it was not granted adequate protection until November 5, 2008. As set forth in the Motion, "the dollar value of the cash collateral

5

securing the [ ] Claim . . . declined by . . . nearly 14 percent, <u>before DnB NOR was granted any protection of its interest</u> in that cash collateral." Motion ¶ 22 (emphasis added). Nevertheless, DnB NOR requests that the Court "award DnB NOR <u>adequate</u> <u>protection</u> in the amount of the decline in the deposits' dollar-value equivalence from September 15, 2008 to November 5, 2008." <u>Id.</u> ¶ 23 (emphasis added). If this is indeed what DnB NOR seeks, then section 361(3) of the Bankruptcy Code <u>prohibits</u> DnB NOR from receiving an administrative expense claim. 11 U.S.C. § 361(3) ("[S]uch adequate protection may be provided by . . . granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense.")

        12.     Assuming, <u>arguendo</u>, that there is a legitimate dispute over the purpose of the adequate protection granted during the Status Conference, the cause of such confusion rests upon DnB NOR's failure to memorialize its interpretation of the parties' understanding. If DnB NOR sought adequate protection from the Petition Date to November 5, 2008, it should have requested it. <u>Ahlers v. Norwest Bank (In re Ahlers)</u>, 794 F.2d 388, 395 n. 6 (8th Cir. 1986) rev'd on other grounds, <u>Norwest Bank v. Ahlers</u>, 485 U.S. 197 (1988) ("It is not unreasonable to require the creditor to be vigilant in requesting protection if it wants this protection."). At the Status Conference, the Court offered DnB NOR's counsel the opportunity to document the agreement the parties had reached with respect to adequate protection by way of a written order. DnB NOR's counsel declined such offer. <u>See</u> Tr. Hr'g. Nov. 5, 2008, at 44:14-17 (The Court: "[I]f, for your own protection [Mr. Uzzi], you want . . . documentation, go right ahead and produce it." Mr. Uzzi: "No, that's fine, your Honor."). If it was clear at that time that the U.S. dollar value of the collateral in the Account on November 5, 2008, was less than it was on the Petition Date, then DnB NOR should have made sure it was protected for such decline. DnB

6

NOR should not now be allowed to benefit from its lack of vigilance in ensuring that the terms of the agreement with respect to adequate protection were reflected on record or otherwise.

### B.      DnB NOR Does Not Have An Allowable Administrative Expense Claim

13.     DnB NOR also fails to show that it has an allowable administrative expense claim pursuant to section 507(a)(2) (which requires the party have an administrative expense claim under section 503(b)). Therefore, DnB NOR does not meet the second requirement of section 507(b). "[T]he party claiming entitlement to administrative expense priority [under section 503(b)] has the burden of proof." General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.), 1 F.3d 1130, 1132 (10th Cir. 1993). Section 503(b)(1)(A) defines administrative expenses as "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Because the "presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 100 (2d Cir. 1986); see also Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 706 (9th Cir. 1988) ("The terms 'actual' and 'necessary' are construed narrowly so as to keep fees and administrative costs at a minimum.") (internal citations omitted).

14.     In the context of section 503(b), an expense is administrative "only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession . . . and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" Amalgamated Ins. Fund, 789 F.2d at 101 (citing In re Mammoth Mart, Inc, 536 F.2d 950, 954 (1st Cir. 1976)). The debtor must derive a "real benefit from the transaction. . . . A potential

7

benefit is not sufficient." In re Enron Corp., 279 B.R. 695, 705-06 (Bankr. S.D.N.Y. 2002) (internal citations omitted). "In order for a creditor's claim to be entitled to administrative status, there must be actual use of the creditors [sic] property by the debtor-in-possession." Id., at 706.

15.  DnB NOR has not offered any evidence (i) that it entered into a transaction with LBHI, (ii) that it supplied LBHI with any consideration, let alone consideration that was of actual benefit to LBHI, or (iii) that LBHI made actual use of the collateral in the Account.  In the Motion, DnB NOR's sole argument that it is entitled to an allowable priority administrative expense claim is that "LBHI's refusal to consent to the setoff evidences its belief that the amounts on deposit in the account were necessary and beneficial to its estate." Motion ¶ 20. In support of this contention, DnB NOR cites three cases,[3] none mandatory authority, that DnB NOR purports stand for the proposition that "[w]here a debtor has challenged a creditor's request for relief from the automatic stay and provided adequate protection, it obviously desires continued use of the property and believes that such use is of necessary benefit to the estate." Id. ¶ 19. However, as those cases make clear, it is more than the mere challenge to a creditor's request for relief that controls the issue, but rather a debtor's efforts to retain possession and make use of the collateral that determines whether the collateral is necessary or beneficial to the estate. As the court in Carpet Center noted:

> Here, as in In re Mutschler and In re McGill, [the d]ebtor actively sought to retain possession of the [collateral] by agreeing to pay [creditor] monthly adequate protection payments.  The negotiation for continued possession of the [collateral] in return for adequate protection is a post-petition transaction providing new value to the bankruptcy estate.  Debtor's efforts to retain the tractors demonstrate that the collateral was beneficial to the estate.

---

[3]  See Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co.), 991 F.2d 682 (11th Cir. 1993); In re McGill, 78 B.R. 777 (Bankr. D.S.C. 1986); In re Mutschler, 45 B.R. 494 (Bankr. D.N.D. 1984).

8

Carpet Center, 991 F.2d at 686-87. Here, LBHI made no effort to lift the administrative freeze DnB NOR placed on the Account to access the funds. Nor does DnB NOR allege that LBHI either (i) sought DnB NOR's consent to use the funds (as they represent cash collateral) while the amounts potentially entitled to setoff were in dispute, or (ii) sought entry of an order by the Court pursuant to section 363(c)(2)(B) of the Bankruptcy Code to use the collateral.

16. Contrary to DnB NOR's belief, it is not always "obvious" that a debtor will challenge a creditor's request for relief from the automatic stay only when the collateral in question is necessary and beneficial to the debtor's estate. Here, the Debtors initially objected to the Setoff Motion not because they believed that the funds on deposit in the Account were necessary and beneficial to the LBHI estate, but rather because the Setoff Motion "contained insufficient information and the Debtors did not possess sufficient information to determine whether all of the funds in the Account were credited prior to the commencement of LBHI's chapter 11 case" and thus available for setoff pursuant to section 553. Initial Objection ¶ 3. Neither DnB NOR's September 17, 2008, written notice to LBHI, nor its Setoff Motion, contained any supporting documentation about the nature of the funds in the Account or what the amount of funds in the Account as of the Petition Date.

17. DnB NOR did not provide the Debtors with the documentation and access to DnB NOR's employees necessary for the Debtors to determine if DnB NOR possessed a valid right to setoff against any amounts in the Account until November 28, 2008. See Supplemental Objection ¶ 4. Once DnB NOR had provided the Debtors with such documentation—showing that only the Undisputed Amount was the amount of funds on deposit in the Account as of the filing of the LBHI petition—the Debtors promptly consented to modification of the automatic stay so that DnB NOR might set off the Undisputed Amount against LBHI's obligations to DnB

9

NOR under the Credit Agreement.  This occurred on December 2, 2008, just four (4) days after DnB NOR made a showing that it was entitled to setoff against the Undisputed Amount.

18. As the court in <u>Best Products</u> stated:

> By making a motion for adequate protection, a secured creditor . . . puts the debtor in a position where it must decide what it should do with the collateral.  The debtor is given the option to surrender the property to the entity that has made the request, and avoid providing adequate protection, or provide adequate protection to such entity for the debtor's continued use of the collateral.

<u>Best Prods. Co.</u>, 138 B.R. 155, 158 (Bankr. S.D.N.Y. 1992) (internal citations omitted).  Here, promptly after DnB NOR provided the Debtors with documentation that showed DnB NOR was entitled to setoff with respect to the Undisputed Amount, LBHI surrendered the Undisputed Amount to DnB NOR for setoff.  As stated in <u>Best</u> <u>Products</u>, <u>supra</u>, this evidences that the Debtors did <u>not</u> consider the funds in the Account to be necessary or beneficial to LBHI's estate.  The Debtors could hardly be expected to make this choice any more expeditiously, particularly in response to an unsubstantiated demand by DnB NOR to effect a setoff against all funds in the Account as of September 17, 2008; a demand that included an amount of NOK then equal to some $1.2 million U.S. dollars against which this Court subsequently found DnB NOR was not entitled to setoff its prepetition claim.  <u>See</u> Mem. Dec. Denying Relief from Automatic Stay to Effectuate Setoff Under 11 U.S.C. § 553(a) (May 12, 2009) [Docket No. 3551].  The Debtors (and LBHI's creditors) can not be penalized for opposing a demand by DnB NOR to set off against funds in an Account to which DnB NOR had no right to demand setoff.

## II.    <u>Setoff</u>

19. Every party seeking relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code carries the initial burden of showing that it is entitled to such relief.  <u>See</u> <u>Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)</u>, 907 F.2d 1280,

10

1285 (2d Cir. 1990); In re Eatman, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("While section 362(g) allocates the burden of ultimate persuasion . . . , the movant must still make a prima facie showing that it is entitled to the relief that it seeks."). As DnB NOR has not shown that it has an allowable claim, it has no right to set off any amount against the Disputed Amount in the Account.

20. DnB NOR failed to satisfy the requirements of section 507(b) of the Bankruptcy Code. As a result, the Motion should be denied and DnB should not be allowed an administrative expense claim. Without an allowable claim, DnB NOR cannot effectuate a setoff against the Disputed Amount in the Account.

WHEREFORE, for all of the foregoing reasons, the Committee respectfully requests that the Court deny the relief requested in the Motion, and grant the Committee such other and further relief as is just.

Dated:  New York, New York
        July 10, 2009

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.