# **EXHIBIT E**

DEBTORS' AND COMMITTEE'S JOINT SUPPLEMENTAL RESPONSE

**WEIL, GOTSHAL & MANGES LLP**

767 FIFTH AVENUE • NEW YORK, NY 10153-0119

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

September 3, 2009

**BY HAND**

Honorable James M. Peck
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
1 Bowling Green, Room 610
New York, New York 10004

      Re:    **In re Lehman Brothers Holdings Inc.,**
                **Case No. 08-13555 (JMP) (Jointly Administered)**

Dear Judge Peck:

      Lehman Brothers Holdings Inc. ("LBHI") and the Statutory Committee of Unsecured Creditors appointed in these cases (the "Creditors' Committee") submit this joint response to the Court's request for supplemental submissions in respect of the Motion of DNB NOR Bank ASA (the "Bank") Pursuant to 11 U.S.C. §§ 503(b), 507(b) for Allowance and Payment of Administrative Expense Claim and Allowing Setoff of Such Claim [Docket No. 4054] (the "Motion"). On July 10, 2009, the Debtors and the Creditors' Committee, respectively, filed objections to the Motion [Docket Nos. 4321 and 4323, respectively] (together, the "Objections").

      By the Motion, the Bank asserts that it is entitled to an administrative priority claim pursuant to section 507(b) of title 11 of the United States Code (the "Bankruptcy Code") for a loss the Bank alleges to have incurred due to a fluctuation in the currency exchange rate between the U.S. dollar and the Norwegian krone between September 30, 2008, the date the Bank filed a motion to setoff an LBHI Norwegian krone deposit account against the Bank's U.S. dollar-denominated pre-petition claim against LBHI pursuant to a revolving credit facility, and November 5, 2008, the date the Bank agreed to bear the risk of any subsequent fluctuation in the currency exchange rate. Specifically, the Bank contends that the 99,113,236.36 Norwegian krone held in LBHI's account with the Bank that the Bank was authorized to setoff against depreciated by $2,411,681.83 between September 30, 2008 and November 5, 2008 due to

US_ACTIVE:\43145361\06\43145361_6.DOC\58399.0003

WEIL, GOTSHAL & MANGES LLP

Honorable James M. Peck
September 3, 2009
Page 2

fluctuations in the currency exchange rate. Having never made a proper and, until the Bank filed the Motion, a timely request for adequate protection, the Bank now seeks to impose its loss onto LBHI, and demands that it be granted an administrative expense priority claim in the amount of $2,411,681.83 so that it can setoff this purported loss against post-petition deposits in the amount of 7,065,351.56 Norwegian krone due to LBHI. *See* Motion ¶¶ 23-24. At a hearing held on July 15, 2009, the Court requested supplemental submissions on the issue of "whether there is an entitlement to adequate protection in respect of currency exchange risk." *See* Tr. of July 15, 2009 Hr'g, at 48:13-16.

The Debtors and the Creditors' Committee have not located any direct authority governing the issue. We submit, however, that the Bank cannot carry its burden to demonstrate entitlement to adequate protection for the inherent risk associated with foreign currency exchange. First, the amount of the alleged loss is questionable given that the Bank, unlike most parties, had the ability to mitigate, if not totally offset, any diminution in value due to fluctuations in currency exchange rates. Rather than sitting on its hands and allowing any alleged potential loss to increase, "Norway's leading foreign exchange bank" clearly had the expertise and ability to enter into any variety of currency hedging transactions that would have mitigated, if not totally eliminated, any "loss" the Bank claims to have suffered. *See* DnB Nor, About the Group, https://www.dnbnor.com/about_the_group/deskabout_the_group.html (last visited Sept. 1, 2009).

Second, the Bank holds a pre-petition claim against LBHI denominated in U.S. dollars pursuant to a revolving credit facility that the Bank extended to LBHI. The Bank seeks to setoff that claim against 99,113,236.36 Norwegian krone that the Bank owes to LBHI. Nothing in the Bankruptcy Code allows the Bank unilaterally convert the funds held in LBHI's Norwegian krone account, which funds serve as collateral for the Bank's setoff claim only through an application of section 553 of the Bankruptcy Code, to U.S. dollars so as to increase the value of the Bank's secured claim. *Contra* 11 U.S.C. § 502(b) ("[T]he court…shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition… ."). The deposit account, and hence LBHI's claim, is denominated in krone; thus, the Bank's "collateral" for its setoff claim is 99,113,236.36 Norwegian krone, not the value of 99,113,236.36 Norwegian krone converted to U.S. dollars on a date selected by the Bank to the detriment of all other general unsecured creditors.

In its Motion, the Bank cites to *In re Aaura, Inc.*, No. 06 B 01853, 2006 WL 2568048 (Bankr. N.D. Ill. Sept. 1, 2006), wherein the Court held that an increase in the value of gold was adequate protection for the secured creditor in that case to allow use of cash collateral by the debtor. The facts of *Aaura* are inapplicable to the issue at hand. In *Aaura*, none of the parties disputed that the creditor was entitled to adequate protection upon the debtor's use of cash collateral. Further, although the court permitted the *increase* in the value of gold to serve as

WEIL, GOTSHAL & MANGES LLP

Honorable James M. Peck
September 3, 2009
Page 3

adequate protection for the secured creditor, it does not necessarily follow that a *decrease* in the value of collateral – an issue that was not before or addressed by the *Aaura* court – entitles a secured creditor to adequate protection. *Aaura* is also distinguishable because it did not involve a claim of setoff and is premised upon value that would be generated from the conversion of an asset to cash. In *Aaura*, the creditor was granted a security interest in particularly identified assets (gold) to secure an obligation of the debtor. *Id.* at *4. Thus, the creditor could look to convert the gold to cash to preserve the value of its secured claim, and, therefore, would have been entitled to protection against diminution in value of the collateral.

Here, the Bank's argument fails for two reasons. First, no conversion to cash is necessary to satisfy the Bank's claim. The collateral the Bank holds is already in cash. Second, there is no diminution in value of the collateral. The amount of the Bank's collateral (and LBHI's claim) is what it has always been: 99,113,236.36 Norwegian krone. The fluctuation of the currency exchange rate, which is unrelated to the underlying value or amount of the collateral, is irrelevant. The *Aaura* case, which considers whether a creditor's interests were adequately protected by an increase in the price of gold, does not have any bearing on this analysis.

Even if the Bank may be entitled to adequate protection for the inherent risk of fluctuation of a currency exchange rate, the Bank's Motion must fail for three independent reasons. As set forth more fully in the Objections, to establish a claim under section 507(b) of the Bankruptcy Code, the Bank bears the burden to demonstrate that: (i) adequate protection was provided and it was ultimately inadequate, (ii) it has an allowable administrative expense claim, and (iii) such administrative expense arose as a result of either section 362, 363, or 364(d) of the Bankruptcy Code. *See Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994). The Bank cannot demonstrate any of these elements. First, the Bank never made a proper demand for adequate protection until it filed the Motion, almost five months after the Bank had been allowed to effectuate a setoff.[1] Second, as a consequence of the Bank's failure to demand adequate protection, adequate protection was never agreed to by LBHI. Third, the Bank did not confer a benefit to the estate by withholding the post-petition funds from LBHI. Accordingly, the Bank has not carried its burden to show that it is entitled to an administrative expense priority claim. *See Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). Contrary to the Bank's assertions, there is no "presumption" of a benefit to the estate simply because LBHI opposed the Bank's legally and factually deficient stay relief motion. Administrative priorities are narrowly construed under the Bankruptcy Code and require an

---

[1] On January 22, 2009, the Debtors, the Creditors' Committee and the Bank entered into a Stipulation and Order that (i) set forth the undisputed facts relating to the setoff request and (ii) agreed to modify the automatic stay for the limited purpose of permitting the Bank to setoff its claim against the undisputed pre-petition amounts on deposit with the Bank. *See* Docket No. 2605. The Motion was filed on June 19, 2009.

WEIL, GOTSHAL & MANGES LLP

Honorable James M. Peck
September 3, 2009
Page 4

actual and "real benefit" to the estate.  *See In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002).  Indeed, by freezing the funds held in LBHI's bank account, the Bank has deprived LBHI access to and has not conferred a benefit on LBHI's estate.

        Accordingly, for the reasons set forth in the Objections and herein, the Motion should be denied.

    Respectfully submitted,

    /s/ Richard P. Krasnow
    Richard P. Krasnow

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Attorneys for Debtors
    and Debtors in Possession

    – and –

    MILBANK, TWEED, HADLEY & McCLOY LLP

    By: /s/ Dennis F. Dunne
    Dennis F. Dunne
    1 Chase Manhattan Plaza
    New York, New York 10005
    Telephone: (212) 530-5000

    Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.

cc:    J. Christopher Shore (*via overnight delivery and email*)
       Phillip John Nichols (*via overnight delivery and email*)