**Objection Date and Time: October 23, 2009 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: October 28, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

CROWELL & MORING LLP
590 Madison Avenue
New York, New York 10022
Telephone: (212) 223-4000
Facsimile: (212) 895-4201
William M. O'Connor, Esq.
Steven B. Eichel, Esq.
Bruce J. Zabarauskas, Esq.

Attorneys for American Express Travel
Related Services Company, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**MOTION PURSUANT TO BANKRUPTCY RULE 9019(b) FOR APPROVAL OF**
**SETTLEMENT AGREEMENT BETWEEN BARCLAYS CAPITAL INC. AND**
**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

American Express Travel Related Services Company, Inc. ("American Express"),

a creditor in the above referenced bankruptcy case, respectfully represents as follows:

**Background**

1.      On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI")

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). On September 16, 2008, LB 745 LLC commenced a voluntary

case under chapter 11 of the Bankruptcy Code. LBHI and LB 745 LLC (collectively, the

"Debtors") are debtors and debtors in possession. The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.        On September 17, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.        On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  James W. Giddens, the trustee appointed under SIPA (the "SIPC Trustee"), is administering LBI's estate.

## Jurisdiction

4.        This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Preliminary Statement

5.        On September 16, 2008, the Debtors, LBI and Barclays Capital Inc. "Barclays") executed the asset purchase agreement pursuant to which Barclays would purchase certain assets of the Debtors (the "APA").

6.        On September 17, 2008, this Court held a hearing on a proposed sale of certain assets pursuant to the APA, and thereafter issued the Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, if any, (III) Approving the Form and Manner of Sale Notices, and (IV) Setting the Sale Hearing Date in Connection with the Sale of the Debtors' Assets (the "Sale Procedures Order"), which required, inter alia, that the Debtors file and serve at least one day before the sale hearing a notice of assumption, assignment and cure, which would direct parties to a website on which they could

ascertain whether their contract was proposed for assumption and assignment to Barclays as a closing date contract.

7.      On September 18, 2008, a list of closing date contracts was posted (the "Closing Date Contracts") that included references to the following contracts: (1) the Business Travel Services Agreement between American Express and LBI entered into on September 1, 2000 and amended from time to time (the "Business Travel Agreement"), and (2) the Global Corporate Services Commercial Account Agreement between American Express and LBHI, as amended from time to time (the "Corporate Services Agreement," together with the Business Travel Agreement and collectively referred to as the "AmEx Contracts").

8.      On September 20, 2008, the Court issued the Order Under 11 U.S.C. §§ 105(a), 363 And 365 And Federal Rules of Bankruptcy Procedure 2002, 6004 And 6006 Authorizing And Approving (A) The Sale of Purchased Assets Free And Clear of Liens And Other Interests And (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (the "Sale Order"), which, inter alia, authorized the assumption and assignment of the Closing Date Contracts, but established a process for finalizing cure amounts for those contracts.

9.      A dispute arose as to whether Barclays had accepted the assignment of the AmEx Contracts due to a mistake that satisfied the requirements of Rule 60(b) of the Federal Rules of Civil Procedure.

10.     On October 14, 2008, Barclays filed with the Court a motion seeking relief from the Sale Procedures Order and Sale Order as these orders pertained to the AmEx Contracts (the "Rule 60(b) Motion"), requesting that the Court order that the AmEx Contracts were erroneously included as Closing Date Contracts.

11.     American Express subsequently filed an objection (the "Objection") to the

Rule 60(b) Motion (the "Rule 60(b) Motion" and all actions taken in connection with the Rule

60(b) Motion are collectively referred to as the "Contested Matter").

12.    American Express and Barclays sought to avoid the expense of litigating

the Contested Matter and entered into a settlement agreement (the "Settlement Agreement").

13.    On August 7, 2009, American Express filed a Notice of Presentment of the

Settlement Agreement (Docket No. 4742).  The Notice of Presentment was served in accordance

with the procedures set forth in the Amended Order Pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and

Case Management Procedures [Docket No. 2837], dated February 13, 2009 (the "Amended Case

Management Order").

14.    Counsel to (i) LBHI, (ii) the SIPC Trustee, and (iii) the Creditors'

Committee raised issues with respect to the Settlement Agreement and the order approving it.

As a result, American Express, Barclays, LBHI, and the SIPC Trustee entered into a proposed

Consent Order (the "Consent Order"), which proposes to modify the terms of the Settlement

Agreement.  The Creditors' Committee was also involved in the negotiations of the Consent

Order.

15.    The bar date to file a claim in the LBHI bankruptcy case was September

22, 2009.  Since the Settlement Agreement was not approved by the Court as of that date,

American Express filed a proof of claim against LBHI in the approximate amount of $12.28

million.  If the Consent Order is entered, American Express intends to file an amended proof of

claim to comply with the terms of the Consent Order.  American Express also has a claim against

LBI.

16.    As the Settlement Agreement was revised to reflect issues raised by the

Debtors and the SIPC Trustee, the Debtors and the SIPC Trustee consent to entry of the Consent

Order in the form attached hereto.

## Terms of Settlement Agreement

17.    A summary of the material terms of the Settlement Agreement, as

modified by the Consent Order, are as follows[1]:

(a)    Barclays shall pay to American Express the aggregate amount of US$3,900,000 (the "Barclays Payment") within 15 days of the order approving the Settlement Agreement becoming a final order.  American Express shall not file any claim(s) for amounts paid pursuant to the Settlement Agreement and shall reduce its claim by the amount of the Barclays Payment.

(b)    American Express shall be authorized to file one general unsecured nonpriority claim against each of LBHI and LBI in an amount not to exceed US$7,000,000 in the aggregate (the "Unsecured Claim"); provided however, the rights of the Debtors, Creditors' Committee, the SIPC Trustee, or any other party in interest to object to any claim filed by American Express on any grounds are expressly preserved other than such claim(s) are the obligation of Barclays as a result of the assumption and assignment of the AmEx Contracts.

(c)    The AmEx Contracts shall be deemed assumed and assigned to Barclays as of September 22, 2008.

(d)    American Express' sole remedy with respect to any amounts owing to it under the AmEx Contracts is hereby limited to (i) receipt of the Barclays Payment and (ii) the filing of the Unsecured Claim against LBHI and LBI.  Except for the Barclays Payment and the filing of the Unsecured Claim, American Express has waived and released any and all Claims (as such term is defined in section 101(5) of the Bankruptcy Code), including, but not limited to, any administrative expense claims it may have had or may have against the Debtors and LBI arising under or related to the AmEx Contracts, the assumption thereof by Barclays or otherwise.

(e)    American Express has agreed to (i) waive and release any and all claims arising under or in connection with the AmEx Contracts against former or current Corporate and/or Commercial Cardmembers (as defined in the Amex Contracts, each a "Cardmember"); and (ii) refrain from taking any and all attempts to collect from Cardmembers amounts owed under the AmEx Contracts or other related agreements, except if the

---

[1]    To the extent the terms of the summary in paragraph 17 herein differ from the terms of the Settlement Agreement and Consent Order, the terms of the Settlement Agreement and Consent Order control.

Debtors, the Creditors' Committee, the SIPC Trustee or other party in interest assert that the Unsecured Claim filed by American Express shall be reduced because the Debtors reimbursed one or more Cardmembers for amounts owed to American Express. In that event, American Express reserves its right to commence an action against a Cardmember to recover the amount of payments that the Debtors, Creditors' Committee, or any other party in interest asserts and demonstrate were paid to the Cardmember. To the extent that American Express is provided notice that a Cardmember's credit ratings have been negatively impacted, American Express shall make a good faith effort to take appropriate actions to assist the Cardmember in reversing his or her negatively impacted credit ratings.

(f)    Barclays shall have no claim against the Debtors with respect to the AmEx Contracts, the assumption thereof by Barclays or the payment of the Barclays Payment.

(g)    The Debtors shall have no claim against Barclays with respect to the AmEx Contracts, the assumption thereof by Barclays or the filing of the Unsecured Claim by American Express.

(h)    Barclays and American Express have released each other from claims relating to, or arising out of, among other things, the AmEx Contracts.

### Relief Requested

18.    By this Motion, American Express seeks authority under Bankruptcy Rule 9019 for approval of the Settlement Agreement between Barclays and American Express, as modified by the proposed Consent Order. A copy of the proposed Consent Order approving the Settlement Agreement is attached hereto as Exhibit 1. A copy of the Settlement Agreement is attached as Exhibit A to the proposed Consent Order.

### Basis for Relief

19.    Bankruptcy Rule 9019 empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R.

618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993),

*aff'd*, 17 F.3d 600 (2d Cir. 1994). Indeed, courts have long considered compromises to be "a

normal part of the process of reorganization." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case*

*v. Los Angelas Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

        20.     The decision to approve a particular compromise lies within the sound

discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The

settlement need not result in the best possible outcome for the debtor, but must not fall beneath

the lowest point in the range of reasonableness. *Drexel Burnham Lambert Group*, 134 B.R. at

505; see also *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re*

*Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its

discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown &*

*Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the

question of whether a particular compromise is "fair and equitable, and in the best interest of the

estate." *In re Best Products*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations

omitted).

        21.     While a court must "evaluate ... all ... factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *In re Ashford Hotels*

*Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998), or conduct a full independent investigation.

*Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to

decide the numerous questions of law and fact.... The court need only canvass the settlement to

determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123

(internal citations omitted).

        22.     Significantly, there is no requirement that "the value of the compromise ...

be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to

a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-

28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974).

      23.    The Settlement Agreement and the Consent Order are the product of arms'

length negotiations. American Express submits that the settlement of all outstanding issues with

respect to the Contested Matter and limiting the amount of the claims that American Express

may assert against LBHI and LBI on the terms and conditions set forth in the Settlement

Agreement, as modified by the Consent Order, is fair and reasonable and is in the interest of

LBHI and LBI and their estates, creditors, and all parties in interest.

      24.    The Settlement Agreement, as modified by the Consent Order, will allow

the Debtors as well as American Express, LBI, and Barclays to avoid costly and uncertain

litigation with respect to the Contested Matter. Specifically, all the parties, including the

Debtors, would incur substantial expense in litigating the Contested Matter and whether the

AmEx Contracts were assumed and assigned. If Barclays was successful in the Contested Matter

and the Court determined that the Amex Contracts were not properly assumed and assigned,

American Express could assert a large general unsecured claim against LBHI in excess of the $7

million cap agreed to in the Consent Order. In fact, American Express has filed a general

unsecured claim against LBHI in the approximate amount of $12.28 million, which will be

amended upon entry of the Consent Order. In addition, American Express could assert a large

general unsecured claim against LBI, and possibly an administrative claim against LBHI. The

Debtors and the SIPC Trustee contest the validity of all such claims and have reserved all rights

to object to such claims.

      25.    The Settlement Agreement reduces the aggregate amount of the potential

claim that American Express may file against LBHI and LBI to a maximum amount of

$7,000,000. Moreover, except for that $7,000,000 claim and the Barclays Payment, American

Express has waived any and all Claims (including administrative claims) that it has against the

Debtors and LBI with respect to the AmEx Contracts.

26.    Furthermore, the Consent Order provides an additional benefit to LBHI

and its former employees that were Cardmembers and owe a balance to American Express.

American Express has agreed to waive claims against these employees and refrain from

attempting to collect from these Cardmembers amounts owed under the AmEx Contracts or other

related agreements, except if the Debtors, the Creditors' Committee, the SIPC Trustee or any

other party in interest assert and demonstrate that the Unsecured Claim filed by American

Express should be reduced because the Debtors reimbursed one or more Cardmembers for

amounts owed to American Express. By this release of the Cardmembers' obligations, LBHI

will avoid being potentially involved in litigation if Cardmembers were sued by American

Express.

27.    Considering the continued expense of prolonged litigation, the attendant

delays associated with such litigation (including all possible appeals), the uncertainty or risk of

the Court's final determination, and the release of American Express' claims (except for the

Barclays Payment and the Unsecured Claim), the Settlement Agreement, as modified by the

Consent Order, falls above the lowest point of reasonableness.

28.    In light of the foregoing, the Settlement Agreement, as modified by the

Consent Order, falls within the range of reasonableness and should be granted.

### Notice

29.    No trustee has been appointed in these chapter 11 cases. American

Express has served notice of this Motion in accordance with the procedures set forth in the order

entered on February 13, 2009 governing case management and administrative procedures for

these cases [Docket No. 2837] on (i) counsel for LBHI; (ii) counsel for James W. Giddens,

Trustee for the SIPA Liquidation of LBI; (iii) the United States Trustee for the Southern District

of New York; (iv) counsel for the Creditors' Committee; (v) counsel to Barclays; and (vi) all

parties who have requested notice in these chapter 11 cases.  American Express submits that no

other or further notice need be provided.

      30.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

      WHEREFORE American Express respectfully requests entry of an order (i)

approving the Consent Order and Settlement Agreement; and (ii) granting the Debtors such other

and further relief as is just and proper.

DATED:   October 5, 2009
          New York, New York

                         /s/ William M. O'Connor
                        William M. O'Connor
                        Steven B. Eichel
                        Bruce J. Zabarauskas
                        CROWELL & MORING LLP
                        590 Madison Avenue
                        New York, New York  10022
                        Telephone:    (212) 223-4000
                        Facsimile:    (212) 895-4201

                        *Attorneys for American Express*
                        *Travel Related Services Company, Inc.*

NYIWDMS: 11294811_8

10

# **EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
In re                                                              :        Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :        08-13555 (JMP)
:
Debtors.                            :        (Jointly Administered)
:
-------------------------------------------------------------------x

### CONSENT ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN BARCLAYS CAPITAL INC. AND AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. AND ASSUMPTION OF AMEX CONTRACTS

Upon the motion dated October 14, 2008 (the "Motion") of Barclays Capital Inc.

("Barclays") For Relief Concerning an American Express Contract Erroneously Posted with the

Closing Date Contracts (D.I. 959) and declarations of Lindsee Granfield and Patrick Coster in

support thereof (D.I. 960, 961); and upon the Debtors' Response to the Motions of Barclays

Capital Inc. for Relief, Pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of

Bankruptcy Procedure 9024, Concerning Various Closing Date Contracts (D.I. 1212); and upon

the Objection of American Express Travel Related Services Company, Inc. ("American

Express") to Motion of Barclays Capital Inc. for Relief Concerning American Express Contracts

Listed as Closing Date Contracts and Request For Interest, Fees and Expenses, and Declaration

of Eugene J. Chikowski, and affidavits of Stephanie Diehl, Daniel J. Massoni and Lydia Schulz

in support thereof (the "Objection") (D.I. 1216); and upon the Objection of Official Committee

of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. to Motions of Barclays Capital

Inc. For Relief, Pursuant to Federal Rule of Civil Procedure 60(b), Concerning Certain Contracts

Erroneously Posted With the Closing Date Contracts (D.I. 1672); and upon the Reply of Barclays

Capital Inc. in Further Support of its Motion for Relief Concerning American Express Contracts

Erroneously Posted With the Closing Date Contracts (D.I. 1747) and Declarations of Michael

Feldberg, Jason White and Leslie Bernauer in support thereof (D.I. 1750, 1751, 1753); and upon

the Court's consideration of the above and the Settlement Agreement and after due deliberation

thereon, and it appearing that notice is good, sufficient and appropriate under the circumstances

and no further notice need be provided; and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.    **Jurisdiction and Venue.**  This Court has jurisdiction to consider the

Motion and the Settlement Agreement under 28 U.S.C. §§ 157 and 1334. This is a core

proceeding under 28 U.S.C. § 157(b). Venue of these cases in this District is proper under 28

U.S.C. §§ 1408 and 1409.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    **Settlement Agreement is Approved.**  The Motion has been settled

pursuant to the Settlement Agreement between Barclays and American Express (the "Settlement

Agreement"),[1] which is attached hereto as <u>Exhibit A</u>, and the terms and conditions of this Order.

To the extent there is any inconsistency or conflict between this Order and the Settlement

Agreement, the terms and conditions of this Order shall govern.

2.    **Payment.**  Barclays shall pay to American Express the aggregate amount

of US $3,900,000.00 within 15 days of this Order becoming a final order (the "Barclays

Payment").

3.    **Right to File A Claim.**  American Express shall be authorized to file one

general unsecured nonpriority claim against each of Lehman Brothers Holdings Inc. ("LBHI")

and Lehman Brothers Inc. ("LBI") in an amount not to exceed US $7,000,000 in the aggregate

(the "Unsecured Claim"); *provided; however*, the rights of the Debtors, the Official Committee

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to such terms in the Settlement Agreement.

2

of Unsecured Creditors (the "Committee"), James W. Giddens (the "Trustee"), as Trustee for the

liquidation of the business of LBI, or any other party in interest to object to any claim filed by

American Express on any grounds are expressly preserved other than that such claim(s) are the

obligation of Barclays as a result of the assumption and assignment of (a) the Business Travel

Services Agreement between American Express and LBI entered into on September 1, 2000, as

amended from time to time, and (b) the Global Corporate Services Commercial Account

Agreement between American Express and LBHI effective as of October 13, 2007, as amended

from time to time (collectively, the "Amex Contracts") in accordance with paragraph 7 below.

      4.     **Reduction and Rights.**  American Express shall not file any claim(s) for

the amount paid pursuant to the Settlement Agreement.  American Express shall reduce its claim

against the Debtors by the amount of the Barclays Payment.

      5.     **Release.**

      A.     American Express' sole remedy with respect to any amounts owing to it

under the Amex Contracts is hereby limited to (i) receipt of the Barclays Payment and (ii) filing

of the Unsecured Claim.  Other than the claim set forth in paragraph 3 above, American Express

has forever waived and released any and all Claims (as such term is defined in section 101(5) of

title of 11 of the United States Code (the "Bankruptcy Code")), including, but not limited to, any

administrative expense claims, pursuant to sections 503 or 507 of the Bankruptcy Code, it may

have had or may have against any of the Debtors arising under or related to the Amex Contracts,

the assumption thereof by Barclays or otherwise.  Other than the claim set forth in paragraph 3

above, American Express shall not, and hereby has waived, any right to file a proof of claim for

or otherwise assert or collect any administrative expenses against any of the Debtors in

connection therewith.

       **B.**      Except as set forth below, American Express hereby waives and releases any and all claims, liabilities, causes of action, demands, and damages of whatever kind or nature, and whether known or unknown, against each individual former or current Corporate and/or Commercial Cardmember (as defined in the Amex Contracts) arising under or in connection with the Amex Contracts or other related agreements, irrespective of such Corporate and/or Commercial Cardmember's current employment.  American Express shall cease and refrain from taking any and all attempts to collect from the Corporate and/or Commercial Cardmembers amounts owed under the Amex Contracts or other related agreements, except if the Debtors, the Committee, the Trustee or any other party in interest assert that the Unsecured Claim filed by American Express shall be reduced because the Debtors reimbursed one or more Corporate and/or Commercial Cardmembers for amounts owed to American Express.  In that event, American Express reserves its right to commence an action against a Corporate and/or Commercial Cardmember to recover the amount of the payments that the Debtors, the Committee, or any other party in interest assert and demonstrate were paid to the Corporate and/or Commercial Cardmember.  To the extent that American Express is provided notice that a Corporate and/or Commercial Cardmember's credit ratings have been negatively impacted, American Express shall make a good faith effort to take appropriate actions to assist the Corporate and/or Commercial Cardmember in reversing his or her negatively impacted credit ratings.

       **C.**      Barclays shall have no claim against the Debtors with respect to the Amex Contracts, the assumption thereof by Barclays or the payment of the Barclays Payment.

D.    The Debtors shall have no claim against Barclays with respect to the Amex Contracts, the assumption thereof by Barclays or the filing of the Unsecured Claim by American Express.

6.    **Withdrawal of Motion.**  Within five days of this Order becoming a final order, (i) Barclays will file a notice of withdrawal of the Motion currently pending before the Court in substantially the form attached as Exhibit B to the Settlement Agreement, and (ii) Amex's requests for interest, fees and expenses contained in its Objection of October 27, 2008 shall be deemed withdrawn with prejudice.

7.    **Assumption of Amex Contracts.**  Pursuant to section 365 of the Bankruptcy Code, the Amex Contracts shall be deemed assumed and assigned to Barclays as of September 22, 2008.

8.    **Retention of Jurisdiction.**  This Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

9.    **Non-material Modifications.**  The Settlement Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented only upon the written consent of LBHI, LBI, and the Committee without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

10.    **Accrual of Claim Against LBI.** The Unsecured Claim as against LBI shall accrue as of the date of the entry of this consent order.

AGREED AND ACCEPTED:

/s/ William M. O'Connor
William M. O'Connor
Steven B. Eichel
Bruce Zabarauskas
CROWELL & MORING LLP
590 Madison Avenue
New York, New York 10022
Telephone:  (212) 223-4000
Facsimile:  (212) 895-4201
Attorneys for American Express
Travel Related Services Company, Inc.

/s/ Michael S. Feldberg
Michael S. Feldberg
Laura Martin
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
Attorneys for Barclays Capital Inc.

/s/ Shai Y. Waisman
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

/s/  Daniel S. Lubell
James B. Kobak, Jr.
Daniel S. Lubell
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Attorneys for James W. Giddens, Trustee for the
SIPA Liquidation of Lehman Brothers Inc.

SO ORDERED, this
___ day of October, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement (the **"Agreement"**) is entered into by and between: (1) Barclays Capital Inc. (**"Barclays"**) and (2) American Express Travel Related Services Company, Inc. (**"AmEx"**) (collectively, the **"Parties"** or, individually, the **"Party"**).

WHEREAS, on September 15, 2008, Lehman Brothers Holdings Inc. (**"LBHI"**) and LB 745 LLC commenced voluntary cases under Chapter 11 of the Bankruptcy Code, and proceedings under the Securities Investors Protection Act of 1970 were commenced in respect of Lehman Brothers Inc. (**"LBI"**) on September 19, 2008 (LBHI, LB 745 LLC and LBI collectively, the **"Debtors"**);

WHEREAS, on September 16, 2008, the Debtors and Barclays executed the asset purchase agreement pursuant to which Barclays would purchase certain assets of the Debtors (the **"APA"**);

WHEREAS, on September 17, 2008, the Honorable James M. Peck, United States Bankruptcy Court Judge of the United States Bankruptcy Court for the Southern District of New York (the **"Court"**) held a hearing on a proposed sale of certain assets pursuant to the APA, and thereafter issued the Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, if any, (III) Approving the Form and Manner of Sale Notices, and (IV) Setting the Sale Hearing Date in Connection with the Sale of the Debtors' Assets (the **"Sale Procedures Order"**), which required, inter alia, that the Debtors file and serve at least one day before the sale hearing a notice of assumption, assignment and cure, which would direct parties to a website on which they could ascertain whether their contract was proposed for assumption and assignment to Barclays as a closing date contract;

WHEREAS, on September 18, 2008 a list of closing date contracts was posted (the **"Closing Date Contracts"**) that included two references to AmEx;

WHEREAS, on September 20, 2008, the Court issued the Order Under 11 U.S.C. §§ 105(a), 363 And 365 And Federal Rules of Bankruptcy Procedure 2002, 6004 And 6006 Authorizing And Approving (A) The Sale of Purchased Assets Free And Clear of Liens And Other Interests And (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (the **"Sale Order"**), which, inter alia, authorized the assumption and assignment of the Closing Date Contracts, but established a process for finalizing cure amounts for those contracts;

WHEREAS, a dispute arose as to whether Barclays had accepted the assignment of two AmEx contracts due to a mistake that satisfied the requirements of Rule 60(b) of the Federal Rules of Civil Procedure;

WHEREAS, the two contracts relevant to this dispute were: (1) the Business Travel Services Agreement between AmEx and LBI entered into on September 1, 2000 and amended from time to time (the **"Business Travel Agreement"**), and (2) the Global Corporate Services Commercial Account Agreement between AmEx and LBHI, as amended (the **"Corporate Services Agreement,"** together with the Business Travel Agreement and collectively referred to as the **"AmEx Contracts"**);

WHEREAS, on October 14, 2008, Barclays filed with the Court a Motion seeking relief from the Sale Procedure Order and Sale Order as these orders pertained to the AmEx Contracts (the **"Motion"**),

requesting that the Court order that the AmEx Contracts were erroneously included as Closing Date Contracts;

WHEREAS, AmEx subsequently filed an Objection (the "Objection") to the motion (the Motion and all actions taken in connection with the Motion collectively, the "**Contested Matter**");

WHEREAS, the Parties wish to avoid the expense of litigating and wish to settle the Contested Matter strictly as a business accommodation with respect to all such claims and without addressing their respective positions;

NOW, THEREFORE, in consideration of the foregoing and the terms and conditions set forth below, and intending to be legally bound, it is agreed by and between the Parties as follows:

**1.    PARTIES**

Barclays Capital Inc., as used herein, means (i) its present, former and future persons, parents, subsidiaries, funds and/or any other entity or investment vehicle that is affiliated or associated with Barclays Capital Inc. ("**Barclays Affiliated Persons**"), and (ii) any and all present, former and future officers, directors, shareholders, partners, employees, agents, attorneys, insurance carriers, successors, heirs and assigns of Barclays Capital Inc. and/or any Barclays Affiliated Person.

American Express Travel Related Services Company, Inc., as used herein, means (i) its present, former and future persons, parents, subsidiaries, funds and/or any other entity or investment vehicle that is affiliated or associated with American Express Travel Related Services Company, Inc. ("**AmEx Affiliated Persons**"), and (ii) any and all present, former and future officers, directors, shareholders, partners, employees, agents, attorneys, insurance carriers, successors, heirs and assigns of American Express Travel Related Services Company, Inc. and/or any AmEx Affiliated Person.

**2.    PAYMENTS IN COMPROMISE OF DISPUTE**

(a)    In full and final settlement of the matters released herein, Barclays shall pay to AmEx within 15 days of the Approval Order (defined below) becoming a final order a total settlement amount of US $3,900,000.

(b)    The payment specified in Section 2(a) shall be made by wire transfer as provided by instructions to be provided by Amex to Barclays upon execution of this Agreement.

**3.    CONDITIONS TO EFFECTIVENESS**

The following are conditions precedent to the effectiveness of the Agreement:

(a)    The Bankruptcy Court shall have entered an order (the "Approval Order"), substantially similar in substance to the proposed order attached hereto as Exhibit A.

(b)    No stay of the Approval Order shall be in effect and no appeal of such order shall have been filed or be pending upon expiration of the 10-day period as calculated pursuant to Rules 8002, 9006 and 9023 of the Federal Rules of Bankruptcy Procedure following the date of entry of the Approval Order.

2

(c)    The Approval Order shall provide that Amex shall be authorized to file one or more claims against the Debtors.

(d)    The Approval Order shall provide that Amex's claims against the Debtors shall not be the subject of an objection nor disallowed on the grounds that Amex's settlement with Barclays bars Amex from filing one or more claims against the Debtors; however, Amex will not file a claim for the amount paid pursuant to this Agreement and this Agreement may be used to reduce any claim filed in contravention of this provision.

(e)    The Approval Order shall provide that neither the Debtors nor their estates shall have a claim against Barclays based on any claim or claims Amex files against the Debtors.

## 4.    RELEASE

In consideration of the payment described in Section 2(a) and the AmEx Released Claims (defined below), the sufficiency of which is hereby acknowledged, AmEx, on behalf of (i) itself, (ii) any and all AmEx Affiliated Persons, and (iii) any and all present, former and future officers, directors, shareholders, partners, employees, agents, attorneys, insurance carriers, successors, heirs and assigns of AmEx and/or any AmEx Affiliated Person (subsections (i) through (iii) collectively, the "**AmEx Releasors**") does hereby release, remise, and forever discharge Barclays, including without limitation Barclays, Barclays Affiliated Persons and any and all present, former and future officers, directors, shareholders, partners, employees, agents, attorneys, insurance carriers, successors, heirs and assigns of Barclays Capital Inc. and any Barclays Affiliated Person (collectively, the "**Barclays Releasees**") of and from all debts, demands, actions, causes of action, suits, accounts, liens, covenants, contracts, agreements, torts, damages, and any and all claims and liabilities whatsoever, of every name and nature, both at law and in equity that any of the AmEx Releasors now has or ever had or may ever have with or against any of the Barclays Releasees relating to or arising out of (1) the Sale Procedures Order, (2) the Sale Order, (3) the Business Travel Agreement, including without limitation any agreements associated with or related to the Business Travel Agreement, (4) the Corporate Services Agreement, including without limitation any agreements associated with or related to the Corporate Services Agreement, (5) the Closing Date Contracts, and/or (6) the Contested Matter ((1) through (6) collectively, "**Barclays Released Claims**").

In consideration for the foregoing Barclays Released Claims, the sufficiency of which is hereby acknowledged, the Barclays Releasees do hereby release, remise and forever discharge the AmEx Releasors of and from all debts, demands, actions, causes of action, suits, accounts, liens, covenants, contracts, agreements, torts, damages, and any and all claims and liabilities whatsoever, of every name and nature, both at law and in equity that any of the Barclays Releasees now has or ever had or may ever have with or against any of the AmEx Releasors relating to or arising out of (1) the Sale Procedures Order, (2) the Sale Order, (3) the Business Travel Agreement, including without limitation any agreements associated with or related to the Business Travel Agreement, (4) the Corporate Services Agreement, including without limitation any agreements associated with or related to the Corporate Services Agreement, (5) the Closing Date Contracts, and/or (6) the Contested Matter ((1) through (6) collectively, "**AmEx Released Claims**"); <u>however</u>, the following debts, demands, actions, causes of action, suits, accounts, liens, covenants, contracts, agreements, torts, damages, and any and all claims and liabilities whatsoever, of every name and nature, both at law and in equity shall be excluded from the AmEx Released Claims:  (a) any Membership Reward points; and (b) any excess

3

payment made by a card member resulting in a positive balance (i.e., a credit) that has been retained by AmEx (the "**AmEx Carve-Out**").

For avoidance of doubt, upon the Approval Order becoming a final order and payment in full by Barclays of the $3.9 million set forth in paragraph 2 above, neither Barclays nor AmEx will have any outstanding obligations to each other under the Business Travel Agreement, the Corporate Services Agreement and/or any agreements associated with or related to the Business Travel Agreement and/or the Corporate Services Agreement with the exception of any obligations within the AmEx Carve-Out, if any, and Barclays will have no obligation to pay any additional amount in connection with the AmEx Contracts (except for the $3,900,000 payment set forth in paragraph 2 above).

**5.    WITHDRAWAL OF THE MOTION**

Within five days of the Approval Order becoming a final order, (i) Barclays will file a notice of withdrawal of the Motion currently pending before the Court in substantially the form attached as Exhibit B of this Agreement, and (ii) AmEx's requests for interest, fees and expenses contained in its Objection of October 27, 2008 shall be deemed withdrawn.

**6.    NO ADMISSION BY THE PARTIES**

The payment provided in Section 2(a) is for the full and complete compromise of the dispute, and such payment will not be construed as an admission by Barclays as to the validity of any claims made by AmEx in connection with the Contested Matter. By entering into this Agreement, Barclays does not admit that it had any liability to AmEx or to any other person or entity arising out of or in connection with the matters in dispute.

**7.    NO CONSTRUCTION AGAINST ANY PARTY**

The wording of this Agreement was reviewed and accepted by legal counsel for Barclays and AmEx prior to being signed by them. Neither of the Parties shall be entitled to have any wording of this Agreement construed against the other Party in the event of any dispute arising in connection with it, whether based on the identity of the drafter or on any other basis. This Agreement shall be construed as a good faith integrated settlement intended to fairly accomplish the objectives set forth herein.

**8.    INADMISSIBILITY OF AGREEMENT**

Any evidence of the existence, terms or negotiations of this Agreement shall be inadmissible in any litigation or dispute provided, however, that such evidence may be offered in an action seeking solely to enforce the terms of this Agreement. This Agreement has been entered into in reliance upon the provisions of Rule 408 of the Federal Rules of Evidence and similar state law provisions that preclude the introduction of evidence regarding settlement negotiations or agreements.

**9.    REPRESENTATIONS AND WARRANTIES**

(a)    Barclays represents and warrants as follows:

        i.    that Barclays is fully authorized to enter into this Agreement;

ii.     that Barclays has taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further corporate or other internal approval is necessary;

iii.    that the making and performance of this Agreement will not violate any provision of law or of Barclays' articles of incorporation, charter or by-laws, where applicable;

iv.    that Barclays has read this entire Agreement and knows the contents hereof, that the terms hereof are contractual and not merely recitals, and that Barclays has signed this Agreement of its own free act; and

v.     that in making this Agreement, Barclays has obtained the advice of legal counsel.

(b)     AmEx represents and warrants as follows:

i.     that AmEx is fully authorized to enter into this Agreement;

ii.     that AmEx has taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further corporate or other internal approval is necessary;

iii.    that the making and performance of this Agreement will not violate any provision of law or of AmEx's articles of incorporation, charter or by-laws, where applicable;

iv.    that AmEx has read this entire Agreement and knows the contents hereof, that the terms hereof are contractual and not merely recitals, and that AmEx has signed this Agreement of its own free act; and

v.     that in making this Agreement, AmEx has obtained the advice of legal counsel.

## 10.     SEVERABILITY

If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining provisions thereof) or the application of such provision to any other person or circumstances. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated by this Agreement are consummated as originally contemplated to the greatest extent possible. Notwithstanding the foregoing, if the release provided in Section 3 is determined to be invalid or in violation of applicable law, the Agreement in its entirety will be invalid and unenforceable, at which time any payments made under Section 2 will be returned.

**11.    ENTIRE AGREEMENT**

This Agreement contains the entire agreement and understanding among the Parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, both written and oral, by and among Barclays and AmEx relating to the subject matter described in Section 4. Neither of the Parties shall be liable or bound to the other Party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein.

**12.    HEADINGS**

The headings of paragraphs are designed to facilitate ready reference to subject matter and shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.

**13.    AMENDMENTS**

This Agreement may not be amended or modified except by a written instrument signed by duly authorized representatives of both Barclays and AmEx.

**14.    GOVERNING LAW**

This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of law principles.

**15.    CONSENT TO JURISDICTION**

Each Party irrevocably and unconditionally submits to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York to hear and determine all matters arising from the implementation of the Approval Order.

**16.    COUNTERPARTS**

This Agreement may be executed and delivered in one or more counterparts and by the different parties hereto in separate counterparts, all of which shall be deemed one and the same agreement, and shall become one and the same agreement when one or more such counterparts have been signed by each of the Parties and delivered to the other Party.

6

## 17.    EXECUTION

IN WITNESS WHEREOF, THIS AGREEMENT HAS BEEN READ AND SIGNED IN DUPLICATE
ORIGINALS BY PARTIES OR THE DULY AUTHORIZED OFFICERS OF THE PARTIES.

BARCLAYS CAPITAL INC.

By: _____

July ___, 2009

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.

By: _____
    Daniel Massoni
    Vice President & Chief Credit Officer

July 20 2009

7

**17.    EXECUTION**

IN WITNESS WHEREOF, THIS AGREEMENT HAS BEEN READ AND SIGNED IN DUPLICATE
ORIGINALS BY PARTIES OR THE DULY AUTHORIZED OFFICERS OF THE PARTIES.


BARCLAYS CAPITAL INC.

By: _____

CAROLINA DEONIS
DIRECTOR, BARCLAYS CAPITAL
~~July ___, 2009~~  August 3, 2009


AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.


By: _____
      Daniel Massoni
      Vice President & Chief Credit Officer

July ___, 2009

7

# EXHIBIT A

# FORM OF PROPOSED APPROVAL ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :    08-13555 (JMP)
                                              :
                          Debtors.            :    (Jointly Administered)
                                              :
------------------------------------------------------------------x

### CONSENT ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN BARCLAYS CAPITAL INC. AND AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. AND ASSUMPTION OF AMEX CONTRACTS

Upon the motion dated October 14, 2008 (the "Motion") of Barclays Capital Inc.

("Barclays") For Relief Concerning an American Express Contract Erroneously Posted with the

Closing Date Contracts (D.I. 959) and declarations of Lindsee Granfield and Patrick Coster in

support thereof (D.I. 960, 961); and upon the Debtors' Response to the Motions of Barclays

Capital Inc. for Relief, Pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of

Bankruptcy Procedure 9024, Concerning Various Closing Date Contracts (D.I. 1212); and upon

the Objection of American Express Travel Related Services Company, Inc. ("American

Express") to Motion of Barclays Capital Inc. for Relief Concerning American Express Contracts

Listed as Closing Date Contracts and Request For Interest, Fees and Expenses, and Declaration

of Eugene J. Chikowski, and affidavits of Stephanie Diehl, Daniel J. Massoni and Lydia Schulz

in support thereof (the "Objection") (D.I. 1216); and upon the Objection of Official Committee

of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. to Motions of Barclays Capital

Inc. For Relief, Pursuant to Federal Rule of Civil Procedure 60(b), Concerning Certain Contracts

Erroneously Posted With the Closing Date Contracts (D.I. 1672); and upon the Reply of Barclays

Capital Inc. in Further Support of its Motion for Relief Concerning American Express Contracts

Erroneously Posted With the Closing Date Contracts (D.I. 1747) and Declarations of Michael

Feldberg, Jason White and Leslie Bernauer in support thereof (D.I. 1750, 1751, 1753); and upon

the Court's consideration of the above and the Settlement Agreement and after due deliberation

thereon, and it appearing that notice is good, sufficient and appropriate under the circumstances

and no further notice need be provided; and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.      **Jurisdiction and Venue.**  This Court has jurisdiction to consider the

Motion and the Settlement Agreement under 28 U.S.C. §§ 157 and 1334. This is a core

proceeding under 28 U.S.C. § 157(b). Venue of these cases in this District is proper under 28

U.S.C. §§ 1408 and 1409.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      **Settlement Agreement is Approved.**  The Motion has been settled

pursuant to the Settlement Agreement between Barclays and American Express (the "Settlement

Agreement"),[1] which is attached hereto as Exhibit A, and the terms and conditions of this Order.

To the extent there is any inconsistency or conflict between this Order and the Settlement

Agreement, the terms and conditions of this Order shall govern.

2.      **Payment.**  Barclays shall pay to American Express the aggregate amount

of US $3,900,000.00 within 15 days of this Order becoming a final order (the "Barclays

Payment").

3.      **Right to File A Claim.**  American Express shall be authorized to file one

general unsecured nonpriority claim against each of Lehman Brothers Holdings Inc. ("LBHI")

and Lehman Brothers Inc. ("LBI") in an amount not to exceed US $7,000,000 in the aggregate

(the "Unsecured Claim"); *provided; however*, the rights of the Debtors, the Official Committee

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to such terms in the Settlement Agreement.

2

of Unsecured Creditors (the "Committee"), James W. Giddens (the "Trustee"), as Trustee for the

liquidation of the business of LBI, or any other party in interest to object to any claim filed by

American Express on any grounds are expressly preserved other than that such claim(s) are the

obligation of Barclays as a result of the assumption and assignment of (a) the Business Travel

Services Agreement between American Express and LBI entered into on September 1, 2000, as

amended from time to time, and (b) the Global Corporate Services Commercial Account

Agreement between American Express and LBHI effective as of October 13, 2007, as amended

from time to time (collectively, the "Amex Contracts") in accordance with paragraph 7 below.

4.      **Reduction and Rights.**  American Express shall not file any claim(s) for

the amount paid pursuant to the Settlement Agreement.  American Express shall reduce its claim

against the Debtors by the amount of the Barclays Payment.

5.      **Release.**

A.      American Express' sole remedy with respect to any amounts owing to it

under the Amex Contracts is hereby limited to (i) receipt of the Barclays Payment and (ii) filing

of the Unsecured Claim.  Other than the claim set forth in paragraph 3 above, American Express

has forever waived and released any and all Claims (as such term is defined in section 101(5) of

title of 11 of the United States Code (the "Bankruptcy Code")), including, but not limited to, any

administrative expense claims, pursuant to sections 503 or 507 of the Bankruptcy Code, it may

have had or may have against any of the Debtors arising under or related to the Amex Contracts,

the assumption thereof by Barclays or otherwise.  Other than the claim set forth in paragraph 3

above, American Express shall not, and hereby has waived, any right to file a proof of claim for

or otherwise assert or collect any administrative expenses against any of the Debtors in

connection therewith.

      **B.**    Except as set forth below, American Express hereby waives and releases any and all claims, liabilities, causes of action, demands, and damages of whatever kind or nature, and whether known or unknown, against each individual former or current Corporate and/or Commercial Cardmember (as defined in the Amex Contracts) arising under or in connection with the Amex Contracts or other related agreements, irrespective of such Corporate and/or Commercial Cardmember's current employment.  American Express shall cease and refrain from taking any and all attempts to collect from the Corporate and/or Commercial Cardmembers amounts owed under the Amex Contracts or other related agreements, except if the Debtors, the Committee, the Trustee or any other party in interest assert that the Unsecured Claim filed by American Express shall be reduced because the Debtors reimbursed one or more Corporate and/or Commercial Cardmembers for amounts owed to American Express.  In that event, American Express reserves its right to commence an action against a Corporate and/or Commercial Cardmember to recover the amount of the payments that the Debtors, the Committee, or any other party in interest assert and demonstrate were paid to the Corporate and/or Commercial Cardmember.  To the extent that American Express is provided notice that a Corporate and/or Commercial Cardmember's credit ratings have been negatively impacted, American Express shall make a good faith effort to take appropriate actions to assist the Corporate and/or Commercial Cardmember in reversing his or her negatively impacted credit ratings.

      **C.**    Barclays shall have no claim against the Debtors with respect to the Amex Contracts, the assumption thereof by Barclays or the payment of the Barclays Payment.

      **D.**     The Debtors shall have no claim against Barclays with respect to the Amex Contracts, the assumption thereof by Barclays or the filing of the Unsecured Claim by American Express.

      **6.**     **Withdrawal of Motion.**  Within five days of this Order becoming a final order, (i) Barclays will file a notice of withdrawal of the Motion currently pending before the Court in substantially the form attached as Exhibit B to the Settlement Agreement, and (ii) Amex's requests for interest, fees and expenses contained in its Objection of October 27, 2008 shall be deemed withdrawn with prejudice.

      **7.**     **Assumption of Amex Contracts.**  Pursuant to section 365 of the Bankruptcy Code, the Amex Contracts shall be deemed assumed and assigned to Barclays as of September 22, 2008.

      **8.**     **Retention of Jurisdiction.**  This Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

      **9.**     **Non-material Modifications.**  The Settlement Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented only upon the written consent of LBHI, LBI, and the Committee without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

      **10.**    **Accrual of Claim Against LBI.** The Unsecured Claim as against LBI shall accrue as of the date of the entry of this consent order.

AGREED AND ACCEPTED:

        /s/ William M. O'Connor
        William M. O'Connor
        Steven B. Eichel
        Bruce Zabarauskas
        CROWELL & MORING LLP
        590 Madison Avenue
        New York, New York 10022
        Telephone: (212) 223-4000
        Facsimile: (212) 895-4201
        Attorneys for American Express
        Travel Related Services Company, Inc.

        /s/ Michael S. Feldberg
        Michael S. Feldberg
        Laura Martin
        ALLEN & OVERY LLP
        1221 Avenue of the Americas
        New York, New York 10020
        Telephone: (212) 610-6300
        Facsimile: (212) 610-6399
        Attorneys for Barclays Capital Inc.

        /s/ Shai Y. Waisman
        Shai Y. Waisman
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007
        Attorneys for Debtors
        and Debtors in Possession

/s/ Daniel S. Lubell
James B. Kobak, Jr.
Daniel S. Lubell
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Attorneys for James W. Giddens, Trustee for the
SIPA Liquidation of Lehman Brothers Inc.


SO ORDERED, this
___ day of October, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

NYIWDMS: 11247913_5

# EXHIBIT B

# FORM OF NOTICE OF WITHDRAWAL

Michael S. Feldberg
Laura Martin
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 610 6300

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x
                                                :
**In re**                                       :    **Chapter 11 Case No.**
                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
                                                :
           **Debtors.**                         :    **(Jointly Administered)**
————————————————————————x

NOTICE OF WITHDRAWAL

**PLEASE TAKE NOTICE** that Barclays Capital Inc.'s motion under Federal Rule of Civil

Procedure 60(b), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure

9024, for relief concerning the American Express contracts erroneously posted with the closing

date contracts [Docket No. 959] is hereby withdrawn.


Dated: New York, New York
       ——————— ———, 2009

                              Respectfully submitted,

                              Allen & Overy LLP


                              By:_____
                                   Michael S. Feldberg
                                   Laura Martin

                              1221 Avenue of the Americas
                              New York, NY 10020
                              Tel: (212) 610 6300
                              Facsimile: (212) 610 6399

                              Attorneys for Barclays Capital Inc.