1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  SUNEDISON, INC., et al.,                Main Case No.

8        Debtors.                          16-10992-smb

9

10 - - - - - - - - - - - - - - - - - - - - -x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, New York

15

16              April 26, 2018

17              10:23 AM

18

19

20

21 B E F O R E:

22 HON. STUART M. BERNSTEIN

23 U.S. BANKRUPTCY JUDGE

24

25

1

2     Motion for Order Establishing Procedures Governing Adversary

3     Proceedings Pursuant to Sections 502, 547, 548, and 550 of the

4     Bankruptcy Code

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20     Transcribed by:  Linda Ferrara

21     eScribers, LLC

22     352 Seventh Avenue, Suite #604

23     New York, NY 10001

24     (973)406-2250

25     operations@escribers.net

1

2  A P P E A R A N C E S :

3  MCGRAIL & BENSINGER LLP

4         Attorneys for Debtors

5         888-C 8th Avenue

6         #107

7         New York, NY 10019

8

9  BY:   PEARL SHAH, ESQ.

10

11

12  COLE SCHOTZ

13         Attorneys for SunEdison Litigation Trust

14         1325 Avenue of the Americas

15         19th Floor

16         New York, NY 10019

17

18  BY:   DAVID R. HURST, ESQ.

19         DANIEL F.X. GEOGHAN, ESQ.

20         MYLES R. MACDONALD, ESQ.

21

22

23

24

25

**4**

1

2    DOSHI LEGAL GROUP P.C.

3          Attorneys for Oracle America Inc.

4          1979 Marcus Avenue

5          Suite 201 E

6          Lake Success, NY 11042

7

8    BY:   AMISH R. DOSHI, ESQ.

9

10

11   PEPPER HAMILTON

12         Attorneys for Eldor Contracting Corp.

13         3000 Two Logan Square

14         Eighteenth and Arch Street

15         Philadelphia, PA 19103

16

17   BY:   HENRY J. JAFFE, ESQ.

18

19   OFFIT KURMAN

20         Attorneys for Pro-Tech Energy Solutions

21         3 Park Avenue

22         16th Floor

23         New York, NY 10016

24

25   BY:   BRENDAN R. MARX, ESQ.

1

2  CALIFORNIA DEPARTMENT OF JUSTICE

3         Office of the Attorney General

4         Attorneys for Creditor Department of Corrections

5         300 South Spring Street, Suite 1702

6         Los Angeles, CA 90013

7

8  BY:    MATTHEW C. HEYN, ESQ. (TELEPHONICALLY)

9

10

11  PATTERSON BELKNAP WEBB & TYLER LLP

12         Attorneys for Creditor Burgelectric

13         1133 Avenue of the Americas

14         New York, NY 10036

15

16  BY:    J. TAYLOR KIRKLIN, ESQ. (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

SUNEDISON, INC., ET AL.                                6

1                    P R O C E E D I N G S

2            THE COURT:  SunEdison.

3            MR. HURST:  Good morning, Your Honor.

4            THE COURT:  Good morning.

5            MR. HURST:  David Hurst from Cole Schotz on behalf of

6    the SunEdison Litigation Trust.  Your Honor, with me in the

7    courtroom today are my colleagues, Dan Geoghan, and Myles

8    MacDonald.

9            We only have one matter on the agenda for the Court

10   today.  It's the motion for approval of procedures governing

11   avoidance actions filed by the trust.

12           Your Honor, what I would suggest is that I give you

13   just a little bit of background so you get a context.

14           THE COURT:  Go ahead.

15           MR. HURST:  And once I have done that, I'll turn it

16   over to Mr. Geoghan, who will run through the procedures, the

17   objections that were filed, and the resolutions for the most

18   part.

19           Your Honor, we sent out about 650 demand letters in

20   this case, and we did it for a variety of reasons.  One thing

21   we wanted to knock out the little claims.  We wanted to firm up

22   service addresses --

23           THE COURT:  Did you have a cutoff for claims that you

24   would bring suit on?

25           MR. HURST:  Sure, Your Honor.  Yeah, that's part of

1  what I was going to get to, but yeah, absolutely, 20,000

2  dollars was the cutoff.

3          THE COURT:  Because I thought I saw that somebody

4  said -- I think it was one of the California prisons that there

5  was a claim that was 10,000.

6          MR. HURST:  Yeah, real little, right?  Yeah, so what

7  happened there, they received a demand letter, and then we

8  served everyone that got a demand letter with the motion.  So

9  they anticipated that we were going to file a complaint and we

10  didn't.  So --

11          THE COURT:  Okay.

12          MR. HURST:  -- 20,000 was the bottom line, and that's

13  why we sent out the demand letters, to knock out those little

14  complaints or the little claims.  We wanted to firm up the

15  service addresses, and we wanted to identify defendants that

16  had a complete defense.  We did our best.  We looked through

17  the docket.  This was a complicated case.  A lot went on and we

18  knew we probably didn't do a perfect job.  So the demand

19  letters help us to flush that out.

20          Of that group of 650, Your Honor, we ended up filing

21  about 370 complaints, so we really did whittle down that group

22  significantly.  Late in the process, I would say about a week

23  before we filed the file complaint, and the deadline was last

24  Friday, the 20th, we discovered a group of defendants that we

25  had not previously identified, and that's because -- I think

1  you are very familiar with the case obviously, the accounting

2  data in this case wasn't great.  I thought it was kind of a

3  mess.  And so we're working with it and we're doing our best,

4  and we have Alvarez & Marsal working with us to help us extract

5  the information we need, but it's challenging, and so we did

6  discover defendants late in the game, and we discovered a lot

7  of additional transfers late in the game and we did our best to

8  get them into complaints and get them on file.

9          But we did identify this group of 110 defendants late

10  in the game, and we filed complaints with respect to them as

11  well.  So the total is about 370 from the demand letter group,

12  plus 110 gets us up to 480, and that's where we stood last

13  Friday when we filed the final complaint, thankfully.  I

14  appreciated the deadline actually occurred because we probably

15  could have kept going as more and more information came in.

16          THE COURT:  So you have how many complaints?

17          MR. HURST:  Approximately 480.

18          THE COURT:  Okay.

19          MR. HURST:  We have also entered into a series of

20  tolling agreements, but primarily with professional service

21  providers to try to resolve those without the need for filing

22  the complaint.  And as I said, we didn't file complaints for

23  anyone under 20,000.  To the extent we were unable to resolve

24  those through the demand letter process, we let those claims

25  go, just didn't make sense economically.

SUNEDISON, INC., ET AL.                                              9

1          And our plan is to try to resolve as many of these as

2   possible without resort to the Court.  You've seen the

3   procedures and we're going to explain them, but we're going to

4   focus in particular on the smaller claims to try to knock them

5   out even before we get to a mediation process.  And that was

6   the background I had planned to give Your Honor.  I think

7   unless you have questions for me, I'll turn it over to Mr.

8   Geoghan to walk you through --

9          THE COURT:  No, I've read the order but -- okay.

10          MR. HURST:  Okay.  Thank you, Your Honor.

11          MR. GEOGHAN:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. GEOGHAN:  Dan Geoghan from Cole Schotz here on

14   behalf of the trust to present Your Honor on the trust's motion

15   to establish procedures governing the adversary proceeding.

16   Your Honor, that's docket number 4741.

17          I'll start with the good news of the eleven objections

18   that were filed.  The vast majority of them are now resolved,

19   eight of them are resolved.  The three that remain are largely

20   resolved.  We just have one or two small open issues that we'll

21   address as we go.

22          Your Honor, the procedures themselves that we are --

23          THE COURT:  Can I ask when you served this?  Because

24   people didn't know that they were going to be defendants when

25   it was first served, right?

SUNEDISON, INC., ET AL.                              10

1      MR. GEOGHAN:  Correct, Your Honor.  A number of people

2  did not -- well, we served at a time when only demand letters

3  were on file and the complaints hadn't been filed yet.  It was

4  just a matter of a time crunch and there are certain parties,

5  as Mr. Hurst pointed out, and we were going to get to this

6  towards the end -- there are certain parties who will need to

7  be re-served because they were not subject to the demand

8  letter.  They were discovered late in the process and we plan

9  to send a copy of the motion.

10     THE COURT:  All I'm saying -- I'm saying you said you

11  got fourteen objections, but you served this before you really

12  brought any actions.  Now that people know they're defendants

13  and if you sent this to them, you might get more objections.

14     MR. GEOGHAN:  Well, that is possible, Your Honor.

15  That is possible to get more objections, but if I may, the

16  objections we did receive focused on a certain few issues,

17  which once we discussed it with the objecting parties, it

18  became clear that their objections -- that their issues could

19  be worked through very easily in the process.

20     THE COURT:  Okay.

21     MR. GEOGHAN:  The process was loose enough.  The only

22  really big remaining issue that was out there, which we'll get

23  to, is the issue of filing dispositive motions before a

24  mediation process.

25     THE COURT:  Um-hum.

SUNEDISON, INC., ET AL.                                    11

1          MR. GEOGHAN:  So, if I may, the procedure itself is

2     based on the procedure that Judge Glenn has employed in a

3     number of cases recently.  He used it in the Borders case, LHI

4     Liquidating, which was the Leohmann's II case and the Dewey

5     case, Your Honor.

6          The biggest change -- two areas of change that we made

7     from Judge Glenn's original procedures to these, the first is

8     we tightened up some of the protections for the mediator,

9     meaning that the mediator can't be called as a witness.  The

10    mediators --

11         THE COURT:  But it provides that he can be called as a

12    witness.

13         MR. GEOGHAN:  It cannot.

14         THE COURT:  If there's a dispute -- in other words,

15    the mediator tells the Court presumably that one of the

16    parties, maybe the defendant, is not cooperating or hasn't

17    shown up or hasn't satisfied the deadlines, doesn't that make

18    the mediator a witness?

19         MR. GEOGHAN:  Yes, Your Honor, in that regard it can.

20    What I meant is that he can't be called to testify --

21         THE COURT:  Yeah.

22         MR. GEOGHAN:  -- as to the communications of the

23    parties.

24         THE COURT:  Isn't that already covered by our

25    mediation order?

SUNEDISON, INC., ET AL.                                          12

1           MR. GEOGHAN:  I --

2           THE COURT:  In other words, what's the difference

3   between what the mediator is getting in the form of protection

4   under your proposed settlement agree -- under your proposed

5   agreement and what he or she would get under our guidelines?

6           MR. GEOGHAN:  Well, there's some differences in the

7   procedure of how this operates, but as to the protections

8   themselves, the protections in the existing order are certainly

9   comparable to these.  These were more put in place to give

10  comfort to the mediators to know that there was a stated

11  process.

12          And, in fact, Your Honor, as Your Honor knows, these

13  types of procedures are used in most high volume avoidance

14  action processes today.  I, myself, have been involved in five

15  or six of these post-confirmation trusts where we employ these

16  procedures or similar procedures.  They're intended to

17  facilitate a fair and efficient process, to resolve the

18  adversary proceedings, hopefully minimizing litigation, and in

19  the most cost efficient and effective manner we can.

20          Your Honor, the procedures themselves fall into three

21  broad categories in the sense that -- or three goals really, a

22  better way to put it.  In the first instance, we seek to extend

23  the early deadlines that come up in litigation; extend time to

24  answer, extend --

25          THE COURT:  Nobody's going to object to that.

1          MR. GEOGHAN:  Of course, Your Honor.  So the first

2    instance is to give the parties some time to try and exchange

3    positions and to work things out.  The second step or the

4    second part of the process is to stay formal discovery and

5    formal litigation in favor of informal discovery and the

6    mediation process.  Again, the idea being to provide the

7    parties the opportunity to resolve differences, flesh out

8    defenses, flesh out places where the debtors' records were

9    incomplete, and therefore our claim or cause of action fails

10   because we didn't know something, and we want the opportunity

11   to address that.

12          In that regard, Your Honor, one of the objecting

13   parties objected, presented us -- said we have a complete

14   defense.  That case is now already dismissed.  So we're aware

15   that there are infirmities in the information we have, and this

16   process is intended to allow the parties to work through that

17   without spending more time than the parties need to in

18   litigation and in costs.

19          Your Honor, the third and final part of that process,

20   obviously, is the mediation itself and attempt to give the

21   parties a forum if they're unable to resolve their differences

22   on their own, a forum in which there is a third party who might

23   be able to facilitate that process.

24          In other cases I've dealt with, for instance, the

25   Collins & Aikman cases that I did when I was with a prior law

1   firm, we went into mediation with 1,000 cases.  We came out of

2   mediation with thirty cases -- twenty-five cases.  And that

3   process took us eighteen months, but we got through it and were

4   able to resolve them.  And it is the stated intent of the

5   trust, the SunEdison Litigation Trust, to work with the parties

6   to seek to resolve these cases in the most efficient manner

7   possible and without the need for litigation, if it's at all

8   possible.

9          Your Honor, as Your Honor knows, pursuant to

10  Bankruptcy Rule 7016, Bankruptcy Section 105, and the inherent

11  powers of this Court, this Court has the right and the ability

12  to control its docket and to control the process and flow of

13  the litigation in front of it.

14          That being said, the recurring objection we did

15  receive -- I ran through most of them -- was the issue related

16  to the dispositive motion, whether or not parties should be

17  able to file a dispositive motion at the outset.

18          I will address that in a minute or two, but I need to

19  get through a few of the objections that we have resolved

20  first, if I may.  But I wanted to put this out there, which is

21  as I've now explained and one of the reasons a lot of these

22  objections were withdrawn, as we've now explained to the

23  parties, these procedures are not designed to take away a

24  party's right to file a dispositive motion.  They're designed

25  to delay when that process happens, when that motion gets

1  filed.  Rather than say in May or June, a string of motions to

2  dismiss, a la the issues that arise in Delphi case, which I was

3  also involved in those actions, when a hundred motions to

4  dismiss were filed in the opening month, and that's not

5  necessarily conducive to any process.

6        What the hope would be here is that we give the

7  parties some time --

8        THE COURT:  You know in Madoff, if somebody filed a

9  motion to dismiss for failure to state a claim, that went to

10  mediation.

11        MR. GEOGHAN:  I'm not aware of what the procedure was

12  in Madoff.  However, in here -- and so I'll jump right to it

13  now and then we can come back to how we resolved the other

14  objections.  Your Honor, the way the procedures are proposed,

15  we have -- the parties can extend deadlines -- the answer or

16  the response -- I don't want to say answer, the response

17  deadlines, and it's specifically discussed as a response

18  deadline, not an answer deadline, for up to ninety days.  And

19  at the end of those ninety days, if the parties have filed a

20  responsive pleading, if the defendant has filed a responsive

21  pleading and answer, the parties have thirty days to move it

22  into mediation.

23        However, there's also the option if a party -- if a

24  defendant prefers, to at that point not file a responsive

25  pleading, elect to go into mediation without a responsive

1  pleading filed, and they can do this at any time.  They don't

2  have to wait until ninety days out, and we push the case into

3  mediation.  The case can be mediated and the responsive

4  pleading isn't due until thirty days after the mediator's

5  report is filed.

6          THE COURT:  I understand.

7          MR. GEOGHAN:  Thus, preserving any party's right to

8  file a dispositive motion, whether it be a motion to dismiss or

9  a summary judgment motion.

10          THE COURT:  What do you say to the defendant who says

11 you have no personal jurisdiction over me?  How can I force

12 someone like that into mediation if I don't have jurisdiction

13 over them?

14          MR. GEOGHAN:  We have hit one of those already on a

15 relation of extraterritoriality in connection with one of these

16 objections.  We exchanged -- they provided us their

17 information.  We provided them why we thought we had

18 jurisdiction over them.  We discussed the case law.  The case

19 is now resolved.

20          THE COURT:  Okay.  But there's nothing in any of this

21 that prevents you from resolving cases informally.  The

22 question I have is can I compel someone to submit to mediation

23 without letting them make a motion, for instance, saying you

24 never served me with process or you lack personal jurisdiction

25 over me.  How do I do that?

1          MR. GEOGHAN:  Well, Your Honor, we understand that

2     there's a challenge there to the extent we're addressing

3     gatekeeping issues --

4          THE COURT:  Yeah.

5          MR. GEOGHAN:  -- issues of jurisdiction and things of

6     that nature.  We believe in good faith that we'll be able to

7     resolve those.

8          THE COURT:  I understand that.

9          MR. GEOGHAN:  However, that being said --

10          THE COURT:  But they have the right to test it.

11          MR. GEOGHAN:  -- if the Court needs us to modify the

12     procedures to allow those --

13          THE COURT:  I'm just asking --

14          MR. GEOGHAN:  -- I hate to split hairs on it.

15          THE COURT:  -- I asked you --

16          MR. GEOGHAN:  I know.

17          THE COURT:  So do I, look at me.

18          MR. GEOGHAN:  Exactly.

19          THE COURT:  But what I am asking you is a legal

20     question.  Can I compel someone over whom I lack personal

21     jurisdiction to submit to mediation?  That's a legal question.

22          MR. GEOGHAN:  It's a tough question.  I --

23          THE COURT:  Other than possibly in the context of that

24     particular motion.

25          MR. GEOGHAN:  Without having researched the issue,

1   Your Honor, I would argue yes, that under the inherent powers

2   of this Court, the Court can seek to resolve matters, even if

3   this were a jurisdictional matter presented before the Court,

4   the Court could say there is a challenge here that I'm

5   uncertain of and I want the party to go speak to someone.

6          I mean, is there a reason the Court can't ask the

7   parties to have a third-party mediator?  I believe under the --

8          THE COURT:  I'm directing mediation here.  I'm not

9   asking parties to mediate.

10         MR. GEOGHAN:  True.  We're directing mediation here.

11  We are directing mediation here.

12         THE COURT:  Okay.

13         MR. GEOGHAN:  I understand that challenge.  I

14  understand there's a challenge there.  We recognize it and we

15  recognize that there's a possibility, in that context, we might

16  have to address motions to dismiss if matters can't be

17  resolved.  And maybe there is a context there in which --

18         THE COURT:  Maybe just a pre-motion conference.

19         MR. GEOGHAN:  Maybe there's a context -- you're right,

20  Your Honor, and there are, as Your Honor is, I'm sure, aware --

21  there are procedures out there that have a different address

22  for motions to dismiss, which is any party seeking to file a

23  motion to dismiss must have a pre-motion conference before that

24  motion is filed.  I've been in those cases.  We got a lot of

25  motions to dismiss in that case.

1        To the extent that we are talking about a

2    jurisdictional or a gatekeeping issue, understood.  To the

3    extent we're talking about failure to state a claim for which

4    relief can be granted -- someone who looks at it and says I see

5    a preference and a fraudulent conveyance, only one of them can

6    be true.  It's either an antecedent debtor or it isn't.

7        So instead of coming to us and having a conversation,

8    someone throws a motion up on the docket and says we're just

9    going to fight it instead.  That takes the teeth out of having

10   some kind of process that allows to resolve those issues.  And

11   I think as we have shown in good faith, eleven objections,

12   we've resolved almost everything inside of a week.  We're in

13   a -- it's not in our best interest as the purveyors of some 500

14   litigations, some of which are very large, to be in a position

15   where we're defending -- where we're not cooperating and being

16   part of the process.  If we're going to go into it as a stick

17   in the mud and try and be difficult for people to deal with,

18   we're not going to get settlements.  We're going to wind up

19   with litigation, 480 of them, and that won't be much fun for

20   anybody.

21       So Your Honor, turning to the objections for -- the

22   other objections, as I said I would, Your Honor, there were

23   eleven objections filed.  Three of them remain open in some

24   part.  Most of them are largely resolved.  The objections filed

25   by Kingsbridge Holdings, which was adversary proceeding number

SUNEDISON, INC., ET AL.                                    20

1   18-01075, that was at docket entry number 5246 -- that has been

2   settled and withdrawn.

3            THE COURT:  Why don't you tell me the categories of

4   objections because when you tell me the names --

5            MR. GEOGHAN:  Sure.

6            THE COURT:  -- of the objectors or the docket entries,

7   I don't really focus on that.

8            MR. GEOGHAN:  Well, they --

9            THE COURT:  What was their objection, and how has it

10  been resolved?

11           MR. GEOGHAN:  It was --

12           THE COURT:  Or how has it --

13           MR. GEOGHAN:  -- so their objection was a

14  gatekeeping -- they had gatekeeping objections.

15           THE COURT:  Okay.

16           MR. GEOGHAN:  So let's start with ESM Powers, an

17  easier one.  ESM had an extraterritoriality argument.

18           THE COURT:  Okay.

19           MR. GEOGHAN:  There was discussion back and forth.

20  We're aware of the Court's case.  We're aware of the authority

21  from Judge Gerber and --

22           THE COURT:  That issue is in the Court of Appeals now.

23           MR. GEOGHAN:  Excuse me?

24           THE COURT:  The issue is in the Court of Appeals.

25           MR. GEOGHAN:  I was not aware of that, but we raised

1    it.  We discussed it.  We both expressed our -- the facts that

2    suggest whether or not we thought there was no

3    extraterritoriality issue.  The parties agreed to resolve it.

4    There were others.  In the end, we looked at the

5    extraterritoriality issue.  We looked at the defenses, and it

6    got resolved.

7              THE COURT:  But what was the objection?

8              MR. GEOGHAN:  The objection in that case was we should

9    be allowed to file a motion to dismiss based on

10   extraterritoriality.

11             THE COURT:  Okay.  So you resolved that particular

12   objection.

13             MR. GEOGHAN:  Yes.

14             THE COURT:  Next?

15             MR. GEOGHAN:  The Kingsbridge Holdings was -- the

16   objection was also, they wanted to file -- wanted to be in a

17   position to file a motion to dismiss.  They came to us with a

18   position statement.  We evaluated it.  We agreed to a

19   settlement.

20             THE COURT:  Okay.  So you resolved that specific

21   objection.

22             MR. GEOGHAN:  We resolved that specific objection.  We

23   didn't make changes to resolve it.  There was only one

24   objection we made changes to resolve.

25             THE COURT:  Is there anything you changed in the order

1  as a result of the resolution of an objection?

2         MR. GEOGHAN:  Yes, there is, Your Honor.

3         THE COURT:  What is that?

4         MR. GEOGHAN:  And we have a --

5         THE COURT:  One that would apply across the board.

6         MR. GEOGHAN:  Excuse me?

7         THE COURT:  One that would apply across the board.

8         MR. GEOGHAN:  Yes.  And we have a blackline.  They're

9  very limited.

10        May I approach?

11        THE COURT:  Yes.

12        MR. GEOGHAN:  Your Honor, they're in Section B.

13        THE COURT:  Oh, I see.  You added no later than ten

14 days in a couple of places.

15        MR. GEOGHAN:  So there was an objection raised that

16 the order suggested -- the procedure suggested that the --

17 excuse me -- that the conferences that would have to happen

18 subsequent to a mediation report being filed would happen upon

19 the mediation report.  The word was "upon" the mediation report

20 being filed.  They asked for clarification that it would be ten

21 days after we entered it.  We gave them that.

22        And the other was on page 3, this is paragraph G(4),

23 an issue was raised whether or not the mediator could command

24 discovery, require discovery, and we agreed it was not the

25 intent of the procedures to put the mediator in a position

SUNEDISON, INC., ET AL.                          23

1  where the mediator could compel discovery from parties, and

2  instead changed the language to "request".  The mediator could

3  request documents from parties.

4          THE COURT:  Can't a mediator always do that?

5          MR. GEOGHAN:  Yes.

6          THE COURT:  All right.

7          Let me hear from the objectors.  I have my own

8  comments on this, but let me hear from them.

9          MR. GEOGHAN:  I am sure.  I would just -- one thing.

10 I think a number of the objectors are not here.  As I said,

11 they were resolved.  We did agree to -- with some of those

12 parties, to make certain statements on the record --

13         THE COURT:  Okay.

14         MR. GEOGHAN:  -- to resolve their objections.  I can

15 address that after we hear from those in the courtroom.

16         THE COURT:  Yeah, let me -- because there may be other

17 issues with the order.

18         MR. GEOGHAN:  Okay.

19         THE COURT:  So let me hear from the parties who still

20 are objecting to this.

21         MR. GEOGHAN:  Thank you, Your Honor.

22         MR. JAFFE:  Good morning, Your Honor.  May it please

23 the Court.  Your Honor, my name's Henry Jaffe.  I'm an attorney

24 from Pepper Hamilton, and I am here for defendant objector

25 Eldor Construction Corp. (sic).

SUNEDISON, INC., ET AL.                                24

1        Your Honor heard the presentation of counsel and a
2    couple of notes.  Number one, we filed an objection raising
3    concerns with a number of aspects of the procedures order.  Two
4    of the changes that were made were made in response to
5    objections that we raised, but in our view, this doesn't go far
6    enough.
7        Your Honor, our primary objection, as counsel alluded
8    to, is we are extremely concerned and very much object to the
9    process that would prevent my client from filing a motion to
10   dismiss in lieu of an answer prior to mediation.  I want to
11   emphasize, Your Honor, we generally -- other than some very
12   finite and specific issues, but this issue most importantly,
13   we're fine with going to mediation.  We expect to go to
14   mediation if we can't resolve our matters consensually before
15   that time.
16       Well, we agree that the mediation procedures, which
17   really if you think about it are a bully pulpit, right?  They
18   sue a bunch of defendants.  They get you rounded up.  You go to
19   mediation.  There's a lot of power associated with that.
20       What we're asking you to do is, at the very least,
21   have the rights that were otherwise afforded under the
22   Bankruptcy Rules and Federals and that includes the right,
23   without having some type of stay that's imposed -- by the way,
24   is not contemplated by the Rules -- to go ahead and file a
25   motion to dismiss.

SUNEDISON, INC., ET AL.                               25

1          And I want to emphasize that this is of great

2     importance here because -- and I realize, Your Honor, this is

3     not the time or the day to get into the merits on our adversary

4     proceeding.  That would be totally inappropriate.  But by way

5     of context, I've got a client that's had an assumed executory

6     contract.  My client received millions of --

7               THE COURT:  Your client has an assumed executory --

8               MR. JAFFE:  Absolutely.

9               THE COURT:  Well, that's an absolute defense to a

10    preference claim.

11              MR. JAFFE:  And, Your Honor, hence the reason --

12              THE COURT:  Right.

13              MR. JAFFE:  -- why we want to be able to file a motion

14    to dismiss.  We don't believe under any set of circumstances

15    that they can, nor have they, articulated a claim for relief.

16         What they've asked for is not contemplated by the

17    Rules.  We have a choice.  We have a choice to file a motion to

18    dismiss or choice to file an answer.  We choose to file a

19    motion to dismiss, number one.

20         Number two, with respect to the process, not only -- I

21    think their concern was well, we want to be efficient, we want

22    these to be focused.  To me, there's no better way to focus a

23    mediation than have the party tell you, here's why my complaint

24    should be dismissed.  That's a gating issue.  That's something

25    that needs to be addressed by the parties.  That's the first

1   thing that they should be talking about in mediation.   So

2   rather than impairing or somehow interfering with the mediation

3   process, to me that furthers the mediation process.

4          My third point, Your Honor, is that this idea of well,

5   you know, mediation and motions to dismiss, it's a madhouse,

6   nobody -- I want to be really clear, we don't expect a parallel

7   track.  We file our motion to dismiss.  We are perfectly

8   content, at that point, to have the matter go to mediation.  If

9   the plaintiff wants to file a response, that's up to them.  We

10  don't wish to stay them, but we certainly don't expect that

11  they're going to have an obligation to file a responsive

12  record, nor do we expect that motion to dismiss to be

13  adjudicated.

14          THE COURT:  So you just want to file the motion as

15  your bargaining chip or whatever or your issue in mediation.

16          MR. JAFFE:  And that's exactly right.  It's going to

17  be the first thing the parties can and should talk about at the

18  mediation.

19          THE COURT:  Okay.

20          MR. JAFFE:  Of course, we can discuss all kinds of

21  other issues.

22          THE COURT:  So you're essentially saying that the

23  motions themselves should be mediated.

24          MR. JAFFE:  Exactly.

25          THE COURT:  All right.

1          MR. JAFFE:  And finally, Your Honor, my concern about

2    this is everybody -- first of all, like I said with the bully

3    pulpit, these folks have been researching these issues for

4    years.  They were employed a long time ago.  An issue that

5    might be a 10,000 or 100,000 dollar issue to one defendant,

6    could very well be an issue that's a multimillion dollar issue

7    to the plaintiffs because they have it across a number of

8    cases.  They have economies of scale on their side.

9          We don't have as many rights as the defendant -- as

10   the plaintiffs do.  As a defendant, one of those important --

11         THE COURT:  Well, that's the nature of --

12         MR. JAFFE:  -- rights is the right to file a motion to

13   dismiss.

14         THE COURT:  -- that's the nature though of being a

15   plaintiff in 470 actions.

16         MR. JAFFE:  That's absolutely right, but to deprive us

17   of the right to go and file those motions to dismiss, certainly

18   gives them a leg up that the Rules don't --

19         THE COURT:  So you're proposing that the motion gets

20   filed but their obligation to respond is stayed pending

21   mediation?

22         MR. JAFFE:  Absolutely, stayed or permissive.  In

23   other words, they're not required to but they're -- if they'd

24   like to, we have no problem with that, but the goal is not to

25   require them to do more work.  The goal is to articulate our

SUNEDISON, INC., ET AL.                                      28

1  issue and allow that to be resolved in the context of the

2  mediation.

3          THE COURT:  All right.

4          MR. JAFFE:  A couple of other points, and I think

5  they're really secondary compared to that main point, the

6  plaintiff suggests that parties will have the option of filing

7  a motion to dismiss later.  They have the ability to do that.

8  That's actually not the way the procedures are articulated.

9  The way the procedures are articulated would effectively give

10 the plaintiff, if they wanted to, a blocking right with respect

11 to the right to file a motion to dismiss, and I'll explain what

12 I mean by that.

13         First, they ask for a stay of the right to file

14 motions to dismiss through some period of time after the

15 mediation is concluded, after the mediator's report is filed.

16 At stay, you can't find the motion to dismiss.  Again, we argue

17 that that's inappropriate, and if, in fact, Your Honor agrees

18 with that, I think my secondary point here becomes moot.

19         If you combine, however, that proposed procedure which

20 would stay your right with the fact that defendants don't have

21 a unilateral right to extend their response date, they need

22 permission under their procedures --

23         THE COURT:  I'm sorry.  Their response date --

24         MR. JAFFE:  So the response date is to -- so the way

25 it would work under their procedures is twofold:  one, the

1  right to file motions for dispositive relief would be stayed

2  until after the mediation, okay?

3          The second part is well, okay, so what are you going

4  to do?  Well, what's going to happen?  They suggested that

5  defendants can simply elect to delay their response until after

6  the mediation is over, but that's not how it's articulated.

7  Under their procedures, which are procedures (a)(1) and (a)(2),

8  the defendant needs the consent of the plaintiff to extend the

9  response date.  If they don't give that consent, then you're

10  not going to be able to file a motion to dismiss because it's

11  stayed.  You'd have to file an answer.

12          So that may not have been what they originally

13  intended --

14          THE COURT:  Well, normally the plaintiff does have to

15  consent to an extension beyond -- I guess this is beyond the

16  ninety days, they're talking about?

17          MR. JAFFE:  Yeah.

18          THE COURT:  Why would the plaintiff have to consent to

19  that?

20          MR. JAFFE:  They don't, Your Honor, but my point is if

21  they don't consent and you're stayed from filing a motion to

22  dismiss, and you have to respond, you'd have no choice but to

23  file an answer.

24          THE COURT:  Oh, all right.

25          MR. JAFFE:  And that's -- obviously, if my first point

SUNEDISON, INC., ET AL.                              30

1   is taken by the Court and a modification is made such that

2   parties have the right to file a motion to dismiss and move and

3   answer, the second point becomes moot.

4              THE COURT:  Okay.

5              MR. JAFFE:  My other two points are very minor, Your

6   Honor, and I don't want them to overshadow our primary point.

7   Another point that we have, Your Honor, is the way this

8   procedure is set up, the plaintiff, by basically notating on a

9   complaint, has the ability to choose who is going to be in and

10  out of the mediation.

11             THE COURT:  Yeah, that I didn't understand.

12             MR. JAFFE:  Yeah, I don't think that's appropriate.

13             And then our last point is, and I am going to be very

14  brief about it, is just how the allocation of costs of the

15  mediation should be.  Our view is you've hauled us in here, I

16  think in many cases, under theories that are really doubtful,

17  at best.  It should be the plaintiff who absorbs the cost.

18  Some courts order that.  Other courts are -- whatever happens,

19  Your Honor, we will participate in this process and we just ask

20  Your Honor to reach a resolution that's just.

21             THE COURT:  Thank you.

22             MR. JAFFE:  Thank you.

23             MR. MARX:  Good morning, Your Honor.  Brendan Marx,

24  Offit Kurman.  We represent --

25             THE COURT:  Would you keep your voice up, please?

SUNEDISON, INC., ET AL.                                          31

1          MR. MARX:  Pro-Tech Energy Solutions.  Our client was

2     the recipient of one of those 650 demand letters, and the

3     demand letter that our client received was for some 7,000

4     dollars in alleged preferential payments.

5          THE COURT:  Were you sued?

6          MR. MARX:  We've received the complaint about a week

7     ago.  It has not yet been served.  The complaint, completely

8     out of the blue, alleges some 3.7 million dollars in fraudulent

9     transfers.  There are zero factual allegations back in the

10    alleged lack of reasonably equivalent value.

11         We second the statements just made by counsel who just

12    spoke.  We need to reserve the right of due process to file a

13    motion to dismiss and have that resolved before our client

14    incurs the very substantial cost of the mediation.

15         THE COURT:  Well, if you're being sued for 3.7 million

16    dollars, the cost is not that substantial in the order.

17         MR. MARX:  Well, our client is not of the same scale

18    of SunEdison.  It's a modestly-sized company and the cost of

19    mediation is very substantial to it.

20         THE COURT:  Let me ask you a question.  I had asked

21    Mr. Jaffe the question, do you have an objection to being able

22    to file the motion, stay the plaintiff's time to respond to it,

23    and then go to mediation with the motion pending?  It may cost

24    you more to come here and litigate the motion is what I am

25    saying, once you file it because they're going to file a

1   response and then you're going to file a reply and then you're

2   going to have to come here to argue it.

3          MR. MARX:  I think we would have no objection to that

4   approach.

5          THE COURT:  Okay.

6          MR. MARX:  I have nothing further.

7          THE COURT:  Okay, thank you.

8          MR. MARX:  Thank you.

9          THE COURT:  Anybody else?  All right.  Let me --

10          MR. GEOGHAN:  May I, Your Honor?

11          THE COURT:  Sure.  Then I'll tell you the problems I

12   have with your procedures.

13          MR. GEOGHAN:  Excuse me, Your Honor?

14          THE COURT:  Go ahead and then I will tell you the

15   problems I have with your procedures.

16          MR. GEOGHAN:  Thank you, Your Honor.  Your Honor, the

17   only response I had to the arguments that were being made is --

18   and to the concept of filing a mediation -- excuse me, a motion

19   to dismiss that's stayed and sits and is stayed until the

20   mediation is processed through, that would be okay.  I am not

21   sure if I see a substantive difference between that and putting

22   those same arguments into a mediation statement --

23          THE COURT:  No.

24          MR. GEOGHAN:  -- which would then be thirty days

25   later.

SUNEDISON, INC., ET AL.                               33

1              THE COURT:  But it's no cost -- it's really no cost to

2    you if somebody wants to file a motion, right?

3              MR. GEOGHAN:  It isn't, but --

4              THE COURT:  As long as the time is stayed --

5              MR. GEOGHAN:  That is correct, Your Honor.

6              THE COURT:  -- you know where they're coming from

7    going into the mediation.

8              MR. GEOGHAN:  Excuse me?

9              THE COURT:  You know where they're coming from.

10             MR. GEOGHAN:  Oh, absolutely but I also believe that

11   if they filed the -- I also believed if they filed the

12   mediation statement, presumably they would make those same

13   arguments in the mediation statement, and what is the

14   substantive difference between filing a motion to dismiss that

15   is stayed and sits there and then gets turned into a mediation

16   statement and filed in a mediation --

17             THE COURT:  You've just made his argument.

18             MR. GEOGHAN:  Okay.

19             THE COURT:  There's no substantive difference and he

20   wants to file a motion.

21             MR. GEOGHAN:  And --

22             THE COURT:  And it doesn't cost you anything.

23             MR. GEOGHAN:  I agree, Your Honor.

24             THE COURT:  Okay.

25             MR. GEOGHAN:  It doesn't cost us anything --

1          THE COURT:  Okay.

2          MR. GEOGHAN:  -- and there's no substantive

3    difference.

4          THE COURT:  Let me just go through some of these

5    things.

6          MR. GEOGHAN:  Okay.

7          THE COURT:  This was raised by Mr. Marx, I think.

8          MR. MARX:  Yes, Your Honor.

9          THE COURT:  I hope I got your name right.

10         MR. MARX:  Yes.

11         THE COURT:  Both the order and the procedures give the

12   plaintiff the ability to decide which adversary proceedings are

13   part of this procedure and which ones are not.

14         MR. GEOGHAN:  They're all part of the procedure, Your

15   Honor.

16         THE COURT:  So that should come out.

17         MR. GEOGHAN:  It can come out.  They're all -- the

18   only -- there were two that weren't -- I shouldn't say that.

19   There are two very large, one-off adversary proceedings, not in

20   a high volume, one against General Electric, one against D.E.

21   Shaw, that are not part of this procedure.

22         THE COURT:  Take it out.

23         MR. GEOGHAN:  But all the volume ones are in.

24         THE COURT:  Take them out.

25         MR. GEOGHAN:  You got it.

1      THE COURT:  With respect to the dispositive motions, I

2  think we've resolved it, but anybody can file a dispositive

3  motion.  Your time will be stayed and key your response to some

4  period, whether it's fourteen days, whatever after the

5  termination of the mediation.

6      Now, with respect to the mediators themselves, you

7  have listed a group of people and this appears to be the

8  universe of people that can be mediators in a case.

9      MR. GEOGHAN:  Your Honor, it will not be the universe.

10  It's not.  There's actually a procedure in there that allows

11  people if they don't want to use those mediators to work with

12  us to select.  And may I just say one thing about that?  Again,

13  coming from the experience of having done this six or seven

14  times, there's a benefit to all parties to have a body of

15  mediators who are intimately familiar with the facts and the

16  circumstances around the case.

17      THE COURT:  Why don't you just say that the plaintiffs

18  consent to the selection of any of the individuals that are on

19  this list?  If a defendant does not consent, then I'll just

20  select a mediator in accordance with the -- either the parties

21  can further confer or I'll just select a mediator.

22      MR. GEOGHAN:  It does.

23      THE COURT:  You don't get to pick --

24      MR. GEOGHAN:  It says that.

25      THE COURT:  You don't get -- well, it does and it

SUNEDISON, INC., ET AL.                                        36

1  doesn't.  In G(2), it says, "The parties shall jointly select

2  the mediator from the list."

3              MR. GEOGHAN:  Um-hum.

4              THE COURT:  And then there's something later on in

5  G(2) which says, "If the parties are unable to agree on a

6  mediator," which is inconsistent with the first part.  So you

7  consent to these people.  If anybody -- if the defendants

8  consent, fine, just follow whatever procedures you have to

9  designate them as the mediator.  Otherwise, you have a dispute

10 over who should be the mediator, and I'll select the mediator.

11 The point is you don't get to select the mediator.

12             MR. GEOGHAN:  Well, that is perfectly fine.  We ran

13 into a few challenges when we called mediators who wouldn't do

14 it for the fees.

15             THE COURT:  I never let -- I've done these before.  I

16 never let the plaintiff simply designate the mediators.

17             MR. GEOGHAN:  Okay.

18             THE COURT:  Okay.  You have this -- I will make this

19 specific comment and then it's a general comment at the end.

20 You have a fairly, what I'll call a Draconian provision -- I'm

21 looking I guess at 9 -- where if some reason somebody has to

22 cancel the mediation, they have to do it a week before or

23 something like that.  What happens if there's an emergency and

24 the person just can't show up for a valid reason?  Their kid is

25 sick.  Their spouse is sick.

SUNEDISON, INC., ET AL.                    37

1          MR. GEOGHAN:  This is which section, Your Honor?  I

2    think I know what you're talking about, but I just want to make

3    sure I'm looking --

4          THE COURT:  I'm looking at --

5          MR. GEOGHAN:  -- at the right language.

6          THE COURT:  Where is it?  It's the one where if you

7    cancel or you fail to appear -- it's number 15 -- you have to

8    give a notice in a week in advance.

9          MR. GEOGHAN:  Your Honor, yes, it is in there.  We can

10   make changes.

11         THE COURT:  Let me make a more general comment.

12         MR. GEOGHAN:  Okay.

13         THE COURT:  There's nothing in your proposed

14   procedures which say that for cause shown, the Court can

15   relieve anybody from anything in this.  I mean, all sorts of

16   things can come up, right?

17         MR. GEOGHAN:  Understood, Your Honor, and we can work

18   with that.  The intent was not to be Draconian.  The intent was

19   to protect --

20         THE COURT:  I understand.

21         MR. GEOGHAN:  -- and based on experience, the

22   mediators and their fees.

23         THE COURT:  I don't have a problem with the notion

24   that if somebody knows a week before that they can't show up,

25   they have a conflict, whatever it is, that as a matter of

SUNEDISON, INC., ET AL.                                          38

1    common courtesy, they should let everybody know, but you have

2    to account for the fact that sometimes people just can't show

3    up.

4              MR. GEOGHAN:  For cause shown.  Understood.

5              THE COURT:  It happens here too.

6              MR. GEOGHAN:  Of course.

7              THE COURT:  With respect to the fees, I don't see why

8    somebody who's being sued for 20,000 dollars has to pay 2,500

9    dollars to a mediator plus costs.  Let's just say that the

10   plaintiff pays all the fees for any demand that's less than

11   100,000 dollars, okay?

12             Now, there's a thing in here also about expenses.

13   That's in addition to the fee, the mediator expenses?

14             MR. GEOGHAN:  To the extent any might be incurred.

15   There's an option for the parties if they so choose -- for

16   instance, some of the objecting parties intend to choose this,

17   they don't want to mediate here.  They want us to mediate

18   somewhere else.

19             THE COURT:  That I understand but -- and that's an

20   additional 750 dollars a day, plus if he's got to get on a

21   plane, I assume.

22             MR. GEOGHAN:  Plus if he's got to get on a plane, his

23   expenses, Your Honor.

24             THE COURT:  Yeah, okay.  But then you say the parties

25   shall each pay half of the -- I'm looking at 6(d) and they have

SUNEDISON, INC., ET AL.                                    39

1   to pay half within fourteen days after the billing by the

2   mediator, plus his reasonable and actual expenses.  That seemed

3   open-ended to me.  I understand situations where -- I

4   understand the 750 dollars because you have that in here.

5          MR. GEOGHAN:  Um-hum.

6          THE COURT:  And if somebody wants to go mediate in

7   Chicago, that they should have to pay the mediator --

8          MR. GEOGHAN:  Yes.

9          THE COURT:  -- or will likely select a mediator who

10  lives in Chicago.  But what are the other reasonable fees and

11  expenses?  What kind of expenses are we talking about?  Is

12  there a cap on it?

13         MR. GEOGHAN:  There's no cap on it, Your Honor, and

14  the reason it's delayed until fourteen days after is we

15  don't -- if someone chooses a mediator from the New York panel

16  and they're going to mediate in Chicago, then that mediator's

17  got to fly out.  We don't know what those mediator's expenses

18  are until those mediator's expenses come in and are invoiced to

19  us.

20         THE COURT:  All right.  You have a provision here that

21  if a defendant fails to timely -- this is paragraph 16, "If a

22  defendant fails to timely pay a bill for a mediator's fees and

23  expenses, the trust may pay the bill and recover such sum as

24  part of a default judgment."  What happens if you don't get a

25  default judgment, but you get a judgment on the merits after a

SUNEDISON, INC., ET AL.                    40

1  trial?  You can't tax that cost.

2         MR. GEOGHAN:  Well, we would want to be able to tax

3  that cost at that point.

4         THE COURT:  So it's not limited to default judgments?

5         MR. GEOGHAN:  No, it's not intended to be limited to

6  default judgments.

7         THE COURT:  Okay.  So to the extent there's an

8  implication that if you don't pay the mediator's fees or

9  expenses, you're going to suffer a default judgment, you're not

10 intending to say that, are you?

11        MR. GEOGHAN:  No, to pay the mediator's fees or

12 expenses, not intended to incur a default judgment by itself.

13        THE COURT:  You could always make that motion.

14        MR. GEOGHAN:  Yes.

15        THE COURT:  But I am just not going to enter a default

16 judgment on a certification that the expenses have been paid.

17        In provision (I) you have a motions affecting

18 avoidance actions.

19        MR. GEOGHAN:  Which provision was that, Your Honor?

20        THE COURT:  (I), the last one.

21        MR. GEOGHAN:  (I).

22        THE COURT:  I'm not sure I understand, first of all,

23 how you can file a motion that affects an adversary proceeding,

24 but you don't file it in the adversary proceeding.

25        MR. GEOGHAN:  I think the idea behind this provision

1    is to make sure that the trust isn't filing a motion in an

2    adversary proceeding that affects everyone and not everyone is

3    going to be completely aware of it.  For instance, if we file

4    an adversary -- if we file some procedure -- if we determine

5    there's a common issue among the cases, and we determine that

6    we're going to have an insolvency proceeding, that we bind

7    everyone through the bigger case by letting people know this is

8    coming, we can also add to file it into all the adversary

9    proceedings.

10          THE COURT:  Because I know what we do in Madoff is you

11   file a case-specific motion where motions that affect that

12   adversary proceeding in the adversary proceeding, but

13   everything gets filed in the case docket, not just motions.

14   Everything gets filed in the case docket.

15          MR. GEOGHAN:  The main case docket.

16          THE COURT:  In the main case docket.  So anybody who

17   wants to look at what's going on in the other cases can see.  I

18   don't think you're going to have too many cases like that.  I

19   can understand where you might have an omnibus proceeding on

20   insolvency.

21          MR. GEOGHAN:  Right.

22          THE COURT:  That's the only one I can think of offhand

23   that you would have the case like this.

24          MR. GEOGHAN:  That's the one I keep coming back to, as

25   well.

SUNEDISON, INC., ET AL.                                         42

1          THE COURT:  All right.  Maybe fraudulent intent if you

2     have intentional fraud cases, but a lot of these seem to be

3     preference cases.

4          MR. GEOGHAN:  We don't have any of those, Your Honor.

5     There's no intentional fraud cases in this bunch.

6          THE COURT:  Now, you also provide that defendants

7     shall receive notice of the filing electronically.  What do you

8     do in a case where you have a pro se creditor, a pro se

9     defendant who doesn't receive electronic notice or hasn't

10    consented to it?

11         MR. GEOGHAN:  We're still going to serve them.

12         THE COURT:  You can't serve them electronically

13    without their consent under the Rules.

14         MR. GEOGHAN:  We'd have to mail it to that party.

15         THE COURT:  All right.  Take a look at Rule 5 of the

16    Federal Rules of Civil Procedure.

17         MR. GEOGHAN:  Um-hum.

18         THE COURT:  They're going to change, I'm not sure if

19    it's this December or next December, so that you'd be able to

20    serve ECF-registered users by filing it on ECF, but you can't

21    even do that now.  You have to send them a separate email.

22         Do you have a website?

23         MR. GEOGHAN:  The trust has a website, yes.

24         THE COURT:  You should post these procedures also on

25    the website.

SUNEDISON, INC., ET AL.                                    43

1          MR. GEOGHAN:  We will do that, Your Honor.

2          THE COURT:  And what I am going to ask you to do,

3    circulate a blackline copy or a redline copy of the procedures

4    and the order, but before I sign anything, I want you to give

5    further notice because these were all served before the -- or

6    most of them were served before the adversary proceedings were

7    started.  So what I am going to ask you to do is let's finalize

8    the order.  I'll have you send it out a notice of presentment

9    or something like that, to all the defendants in all the

10   actions --

11         MR. GEOGHAN:  Okay.

12         THE COURT:  -- so that if there's anybody else who has

13   a problem with it, they'll have an opportunity to come in.

14         MR. GEOGHAN:  Okay.  And we could put that on for

15   presentment, I think the next omnibus is the 15th of March --

16   sorry, 15th of May, I think.

17         THE COURT:  Well, it's the end of April already.  Why

18   don't we -- let me sign the order or send me the order -- yeah,

19   you can put it out for notice.  That's fine.

20         MR. GEOGHAN:  Okay.

21         THE COURT:  That's a better idea.  Put it out the

22   15th.

23         MR. GEOGHAN:  Put it on for notice for the 15th and --

24         THE COURT:  Notice the proposed order for the 15th on

25   all the defendants and all the actions.

SUNEDISON, INC., ET AL.                                44

1       MR. GEOGHAN:  Right.  And that way, there'll be an

2   opportunity for people to come back.

3       THE COURT:  Right.  Okay.  Anything else on this?

4       MR. GEOGHAN:  Your Honor, I just wanted to make a

5   couple of -- I want to relate in response to some of the

6   objections, there's a couple of points people asked me to put

7   on the record, and if I may just take a moment to do that, Your

8   Honor.

9       THE COURT:  Go ahead, sure.

10      MR. GEOGHAN:  First is the SunEdison Litigation Trust,

11  that the SunEdison Litigation Trust will mediate the adversary

12  proceedings against the California Department of General

13  Services.  So that was the two prisons.  Those were withdrawn

14  and there's a much bigger action now.

15      Burgelectric and MbarC Construction in California, if

16  that's where they would like to do it.  We also agree to work

17  with those defendants to choose California-based mediators, if

18  that's what they would like to do.  We note for the record,

19  there are several California-based mediators on the New York

20  Register of Mediators.  And if the parties are unable to choose

21  a California mediator, we'll come back to the Court and seek

22  the Court's assistance.

23      THE COURT:  Okay.

24      MR. GEOGHAN:  Your Honor, in regard to Oracle, one of

25  the objecting parties which the objection was resolved, asked

SUNEDISON, INC., ET AL.                    45

1  me to make the following statement:  It is the intention of the

2  SunEdison Litigation Trust to work to resolve cases without the

3  need for mediation or litigation.  To that end, the procedures

4  seek authority to grant re-extensions for up to ninety days, to

5  give parties time to resolve matters where possible which

6  extensions will be granted by the trust, so long as the parties

7  are continuing to negotiate in good faith.  We agree to mediate

8  the adversary proceeding against Oracle in California, New

9  York, or some other mutually agreeable location.  We also agree

10 to work with Oracle to choose a California mediator or other

11 mutually agreeable mediator.  If the parties are unable to

12 choose a mutually agreeable mediator, the parties will come

13 back to the Court --

14          THE COURT:  Okay.

15          MR. GEOGHAN:  -- and seek the Court's guidance.  To

16 the extent the mediation becomes necessary, following parties'

17 good faith attempt to resolve, the parties will split the cost

18 of the mediator and mediation, including travel costs of the

19 mediator, if any are incurred, but each party will be

20 responsible for their own legal fees and costs and expenses,

21 including travel to any location for the purpose of mediation.

22          And that resolves those objections, Your Honor.

23          THE COURT:  Okay.  Thank you very much.  Thank you.

24     (Whereupon these proceedings were concluded at 11:11 AM)

25

1

2                              I N D E X

3   RULINGS:                                        PAGE   LINE

4   Motion granted with changes as stated            43      7

5   on the record, pending final review by

6   the Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1

2                        C E R T I F I C A T I O N

3

4    I, Linda Ferrara, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7        *Linda Ferrara*

8

9    _____

10   Linda Ferrara (CET-656)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  April 27, 2018

18

19

20

21

22

23

24

25