**Presentment Date and Time: October 22, 2009 at 12:00 pm (Prevailing Eastern Time)**
**Objection Deadline:  October 22, 2009 at 11:30 am (Prevailing Eastern Time)**
**Hearing Date and Time (If an Objection is Filed):  November 18, 2009 at 10:00 am (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY**

PLEASE TAKE NOTICE that the undersigned will present the annexed motion (the "Motion") of Lehman Brothers Special Financing, Inc. (the "Debtor"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for entry of an order authorizing certain discovery from Veyance Technologies, Inc., all as more fully described in the Motion, to the Honorable James M. Peck, United States Bankruptcy Judge, for approval and signature on **October 22, 2009 at 12:00 p.m. noon (Prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq., Richard W. Slack, Esq., and Robert J. Lemons, Esq., attorneys for the Debtor; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq.,

and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be filed and received by no later than **October 22, 2009 at 11:30 a.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only if a written objection is timely filed and served, a hearing will be held on **November 18, 2009, at 10:00 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 before the Honorable James M. Peck, United States Bankruptcy Judge.  If an objection is filed, the moving and objecting parties are required to attending the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 7, 2009
      New York, New York

                                /s/ Richard W. Slack
                                Lori R. Fife
                                Richard W. Slack
                                Robert J. Lemons

                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Debtor
                                and Debtor in Possession

**Presentment Date and Time:  October 22, 2009 at 12:00 pm (Prevailing Eastern Time)**
**Objection Deadline:  October 22, 2009 at 11:30 am (Prevailing Eastern Time)**
**Hearing Date and Time (If an Objection is Filed):  November 18, 2009 at 10:00 am (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :    08-13555 (JMP)
                                              :
                    Debtors.                  :    (Jointly Administered)
                                              :
                                              :
-----------------------------------------------------------------x
```

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing, Inc. ("LBSF"), as debtor and debtor in possession (the "Debtor" and, collectively with its non-debtor affiliates, "Lehman"), hereby moves for entry of an order pursuant to Rule 2004 of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing certain discovery from Veyance Technologies, Inc. ("Veyance"), and respectfully represents:

## PRELIMINARY STATEMENT

1.       This motion seeks basic and necessary information from Veyance to allow LBSF to confirm that an interest rate swap agreement between it and Veyance exists,

pursuant to which certain amounts will be payable by Veyance to LBSF on December 11, 2009.

2.      LBSF and Veyance negotiated the economic terms of an interest-rate swap transaction (the "Transaction"), and agreed upon economic terms for the Transaction on or about May 16, 2008.  Because it is common practice in the swap industry for the parties to an interest rate swap to reach a binding agreement on economic terms with the understanding that such agreement will later be documented as a formality, LBSF's books and records were updated on or about May 16, 2008 to reflect LBSF's entry into the Transaction with Veyance.  In accordance with industry practice, on May 22, 2008 LBSF sent a final execution version of a confirmation executed by LBSF to Veyance for its signature (the "Confirmation"), which documented the agreed-upon Transaction, reflected the agreed economic terms, and incorporated the 1992 form of the ISDA Master Agreement (Multicurrency – Cross Border).  Veyance never countersigned the Confirmation.

3.      LBSF believes that, as per the common practice of the swap industry, the parties had entered into a binding agreement on or about May 16, 2008, notwithstanding the fact that Veyance never countersigned the Confirmation.  Veyance, however, claims that no formal agreement was ever reached with LBSF on the terms of the Transaction.

4.      As an estate in bankruptcy, LBSF has an obligation to its creditors to account for all of its assets.  LBSF believes that the Transaction is worth several million dollars to the estate.  Accordingly, discovery pursuant to Rule 2004 is appropriate as to whether a binding contract exists between LBSF and Veyance, so that LBSF can take appropriate steps, if necessary, to enforce its rights under the contract and obtain its bargained for benefits.

**BACKGROUND**

5.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain

of its subsidiaries commenced with this Court voluntary cases under Chapter 11 of the

Bankruptcy Code.  LBSF commenced its chapter 11 case on October 3, 2008.  LBSF's and

LBHI's chapter 11 cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Bankruptcy Rule 1015(b).  LBSF is authorized to operate its

businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

      6.     On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

## JURISDICTION

      7.     This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## LEHMAN'S BUSINESS

      8.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets and served the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

      9.     Additional information regarding Lehman's businesses, capital structures,

and the circumstances leading to the commencement of these chapter 11 cases is contained in the

Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the

Southern District of New York in Support of First-Day Motions and Applications, filed on

September 15, 2008 [Docket No. 2].

3

## RELIEF REQUESTED

10.     By this Motion, the Debtor requests entry of an order pursuant to

Bankruptcy Rule 2004:

      a.      directing Veyance to produce responsive, non-privileged documents requested on the attached Exhibit I hereto for examination by the Debtor; and

      b.      directing Veyance to designate an individual or individuals with knowledge of the matters described below in paragraph 19 and to produce that individual(s) to be examined by the Debtor under oath on such date and time and at such location that may be designated in writing by the Debtor on not less than 14 days notice.

## THE TRANSACTION

11.     Following negotiation concerning the economic terms of the Transaction,

LBSF and Veyance came to an agreement on these terms on or about May 16, 2008.

Accordingly, on or about May 16, 2008, LBSF's books and records were updated to reflect

LBSF's entry into the Transaction with Veyance.

12.     It is common practice in the swap industry for the parties to an interest rate

swap to reach a binding agreement on economic terms with the understanding that such

agreement will later be documented as a formality.  Thus, on May 22, 2008, LBSF sent an e-mail

to Veyance, attaching the Confirmation executed by LBSF which documented "the [s]wap traded

on May 16 between Lehman Brothers Special Financing and Veyance Technologies."  (A copy

of the Confirmation and accompanying e-mail is attached hereto as Exhibit A.)  LBSF requested

that Veyance sign and then return the Confirmation to LBSF.  Again, as is customary in the swap

industry, the Confirmation was merely intended to document the economic terms that had

already been agreed to by LBSF and Veyance.

13.     The Confirmation sets forth a "Trade Date" of May 16, 2008, which

reflects the parties' entry into a binding agreement on such date.  Under the terms of the

4

Confirmation, commencing on December 11, 2009, LBSF has an obligation to pay the floating

three-month USD-LIBOR-BBA interest rate on a notional amount of $100,000,000 (the

"Notional Amount"), and Veyance has the obligation to pay a fixed rate of interest (4.025%) on

the Notional Amount.  See Exhibit A at 2.  Until September 11, 2011, payments are required to

be made on a net basis by the party owing the larger amount on the 11th calendar day of each

March, June, September, and December, for amounts accrued on the Notional Amount during

the prior three months.  Id.

      14.    After Veyance did not respond to the May 22, 2008 e-mail seeking its

approval of the Confirmation, LBSF contacted Veyance by e-mail on July 7, 2008, and again

asked Veyance to sign the Confirmation.  (A copy of the July 7, 2008 e-mail is attached hereto as

Exhibit B.)  On July 8, 2008, Veyance provided comments to certain non-economic terms on the

Confirmation.  (A copy of the July 8, 2008 email from Veyance to LBSF is attached hereto as

Exhibit C.)  LBSF and Veyance then engaged in discussions with respect to these non-economic

terms.

      15.    On September 12, 2008, LBSF asked Veyance's counsel to confirm with

Veyance whether it had agreed to the latest version of the Confirmation circulated on September

10, 2008; Veyance's counsel replied: "will do."  (A copy of the September 12, 2008 e-mail is

attached hereto as Exhibit D.)

      16.    In a letter dated November 24, 2008 (the "November 24, 2008 Letter"),

Veyance informed LBSF for the first time of Veyance's position that the parties had not agreed

to the Transaction, stating that Veyance had received the "most recent counteroffer in terms of

the draft of the Proposed Confirmation dated August 13, 2008 (the 'Counteroffer')," and that it

was "not interested in entering into the Proposed [sic] Transaction at this time."  Additionally,

5

Veyance "reject[ed Lehman's] counteroffer and rescind[ed] any and all previous offers made by" Veyance.  (A copy of the November 24, 2008 Letter is attached hereto as Exhibit E.)[1]

17.    On April 6, 2009, Lehman informed Veyance by letter (the "April 6, 2009 Letter") that the parties had "agreed upon the material economic terms with respect to the Transaction . . ."  Lehman reiterated this position in a follow-up letter to Veyance dated April 28, 2009 (the "April 28, 2009 Letter"), in which Lehman stated that "there was a final agreement on material economic terms with respect to the Transaction" and that "LBSF and Veyance are subject to the terms and conditions set forth in the Confirmation and we expect to enforce and be bound by the Confirmation in accordance with its terms."  (Copies of the April 6 and 28, 2009 Letters, respectively, are attached hereto as Exhibits F and G.)

18.    On August 27, 2009, Veyance informed Lehman by letter (the "August 27, 2009 Letter") that "no final agreement was ever reached and . . . the transaction was never consummated."  (A copy of the August 27, 2009 Letter is attached hereto as Exhibit H.)

## THE SCOPE OF INFORMATION REQUESTED

19.    Exhibit "I" attached hereto contains a list of the types of documents that the Debtor requires from Veyance.  Without limiting the generality of the foregoing, the list includes documents concerning (as that word is defined in Southern District of New York Local Civil Rule 26.3(c)(7)):

(i) communications between Veyance and Lehman regarding the Transaction and the Confirmation;

(ii) communications between Veyance and any third party regarding the Transaction and the Confirmation;

---

[1]  The November 24, 2008 Letter was returned to Veyance as "not deliverable."  Thus, Veyance re-sent the November 24, 2008 Letter to LBSF on March 25, 2009.

(iii) internal communications at Veyance regarding the Transaction and the Confirmation;

(iv) financial or accounting entries made on Veyance's books and records regarding the Transaction; and

(v) all versions, edits, and drafts of the Confirmation; and

(vi) all board resolutions and minutes concerning the Transaction or the Confirmation; and

(vii) all documents concerning the Transaction and/or Confirmation not specifically addressed by the foregoing requests.

The general scope of questions to be asked of the individual(s) designated by Veyance to be examined under oath will relate to the subjects covered by the requests identified on Exhibit "I" and the documents which are produced in response thereto.

## **ARGUMENT**

20.    Bankruptcy Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).  The examination may be compelled by the issuance of a subpoena, as provided by Bankruptcy Rule 9016.  See Fed. R. Bankr. P. 2004(c).

21.    The scope of the examination sought under Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  See Fed. R. Bankr. P. 2004(b).  Thus, a "party in interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred."  In re Hilsen, 2008 WL 2945996, *4 (Bankr. S.D.N.Y., July 25, 2008) (Peck, J.)

(citations omitted).  See also In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004)

("The purpose of a Rule 2004 examination is to assist a party in determining the nature and

extent of the bankruptcy estate, revealing assets, examining transactions, and assessing whether

wrongdoing has occurred."; In re Coffee Cupboard, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991)

("The purpose of a Rule 2004 examination 'is to show the condition of the estate and to enable

the Court to discover its extent and whereabouts, and to come into possession of it, that the rights

of the creditor may be preserved.'") (citing Cameron v. U.S., 231 U.S. 710, 714 (1914)).

       22.    The granting of a motion under Rule 2004 is within the discretion of the

Court.  See In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As the permissive

language of the rule suggests, the Court has the discretion to grant a request for a 2004

examination . . .") (citations omitted).

       23.    Rule 2004 is "debtor-centric and allows considerable leeway for all

manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor

and the administration of the debtor's case".  In re Hilsen, 2008 WL 2945996, at *1. Ultimately,

however, Rule 2004 requires that discovery be appropriately tailored under the circumstances.

"It can net the dolphins as well as the tuna; however, the net, in the discretion of the Court, can

be carefully stitched to limit its catch."  In re Drexel Burnham Lambert Group, Inc., 123 B.R.

702, 711 (Bankr. S.D.N.Y. 1991).  As such, Rule 2004 requires the Court to "balance the

competing interests of the parties, weighing the relevance of and necessity of the information

sought by examination." Id. at 712.

       24.    It is customary for sophisticated parties negotiating an interest-rate swap

transaction to agree to be bound by the terms of an agreement before memorializing that

agreement in a signed confirmation.  Indeed, LBSF's own books and records were updated on or

about May 16, 2008 to reflect LBSF's entry into the Transaction. Accordingly, LBSF believes that it and Veyance agreed to the Transaction, on or about May 16, 2008, under the economic terms as set forth in the Confirmation, that the parties intended to be bound by those terms, and that the Confirmation was simply intended to memorialize, rather than effectuate, the Transaction, as per common practice in the swap industry. If Veyance similarly believed that it was bound to perform in the absence of an executed Confirmation, then a contract between Veyance and LBSF exists despite the fact that the Confirmation was never signed.

25.    LBSF is working to preserve and maximize the value of its estate for the benefit of all stakeholders. Thus, the identification of any assets that are potentially property of the estate, and the evaluation, if appropriate, of potential claims related to such assets, is important in ensuring that all available sources of value are located and pursued. LBSF has determined that the Transaction is worth several million dollars to the estate. Moreover, Veyance will likely be required to make a first payment to LBSF under the Transaction on December 11, 2009. Given its value to the estate, LBSF has an interest in confirming the existence of a contract between LBSF and Veyance. The court should therefore authorize discovery from Veyance pursuant to Rule 2004, so that LBSF can confirm that Veyance did in fact agree to and is bound by the economic terms of the Transaction, notwithstanding the absence of a signed Confirmation.

### NO PRIOR REQUEST FOR RELIEF

26.    No prior motion for the relief requested herein has been made to this Court or any other court.

### NOTICE

27.    No trustee has been appointed in these chapter 11 cases. The Debtor, in accordance with the procedures set forth in the amended order entered on February 13, 2009

9

governing case management and administrative procedures for these cases [Docket No. 2837], has served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Veyance, and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtor submits that no other or further notice need be provided.

WHEREFORE, for the reasons stated herein, the Debtor respectfully requests that the Court enter an order, pursuant to Bankruptcy Rule 2004, granting the relief requested in this Motion in its entirety and such other and further relief as may be just and proper.


Dated: October 7, 2009
       New York, New York

WEIL, GOTSHAL & MANGES LLP

By: /s/ Richard W. Slack
    Lori R. Fife
    Richard W. Slack
    Robert J. Lemons

    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtor
    and Debtor in Possession

# Exhibit A

| | |
|---|---|
| **From:** | Cardinale, William |
| **Sent:** | Thursday, May 22, 2008 3:57 PM |
| **To:** | 'benjamin.schlater@veyance.com' |
| **Cc:** | Tuttle, Kiery; Lee, Mandy |
| **Subject:** | LBSF / Veyance Technologies - May 16 Swap |



Lb Os Contract
Effort 2096338....

Attached, please find the confirmation for the Swap traded on May 16th between Lehman Brothers Special Financing and Veyance Technologies.  Please review and have signed at your earliest convenience.  If there are any issues with the attached, please let me know.

Thank you.

William Cardinale
Lehman Brothers - Capital Markets Contracts - Legal
1271 Avenue of the Americas | 43rd Floor | New York City 10020
646 333 9506 (phone) | 646 885 9558 (fax)

# LEHMAN BROTHERS

**Transaction**

| | |
|---|---|
| Date: | 22 May, 2008 |
| To: | VEYANCE TECHNOLOGIES, INC. |
| | Attention:      Documentation Unit |

| | |
|---|---|
| From: | Lehman Brothers Special Financing Inc. |
| | Confirmations Group |
| | Facsimile:      (+1) 646-885-9551 (United States of America) |
| | Telephone:      William Cardinale (646-333-9506) |

Ref. Numbers:  Risk ID: 1936711L / Effort ID: N2096338 / Global Deal ID: 3837957

---

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers Special Financing Inc. ("Party A") and VEYANCE TECHNOLOGIES, INC. ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below.

This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition, you and we agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form"), with such modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation shall supplement, form a part of, and be subject to that agreement (the "Agreement"). All provisions contained or incorporated by reference in the Agreement, upon its execution, will govern this Confirmation except as expressly modified below. Until we execute and deliver the Agreement, this Confirmation, together with all other documents confirming transactions entered into between us and referring to the ISDA Form, shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement in such form (but without any Schedule) on the Trade Date of this Transaction. In the event of any inconsistency between the provisions of that agreement, or the Agreement, when executed, and this Confirmation, this Confirmation will prevail for the purpose of this Transaction.

The definitions and provisions contained in the 2006 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. (the "Definitions") are incorporated into this Confirmation. In the event of any inconsistency between the Definitions and the terms of this Confirmation, this Confirmation will govern. For the purpose of the Definitions, references herein to a "Transaction" shall be deemed to be references to a "Swap Transaction".

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation,

enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Trade Date: | 16 May, 2008 |
| Effective Date: | 11 September, 2009 |
| Termination Date: | 11 September, 2011, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Notional Amount: | USD 100,000,000.00 |

**Floating Amounts:**

| | |
|---|---|
| Floating Amount Payer: | Party A |
| Floating Amount Payer Payment Dates: | The 11th calendar day of each March, June, September, and December, from and including 11 December, 2009 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | 3 months. |
| Spread: | Inapplicable |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first day of each Calculation Period |

**Fixed Amounts:**

| | |
|---|---|
| Fixed Amount Payer: | Party B |
| Fixed Amount Payer Payment Dates: | The 11th calendar day of each March, June, September, and December, from and including 11 December, 2009 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Fixed Rate: | 4.025% per annum |
| Fixed Rate Day Count Fraction: | Actual/360 |

**Business Days:** London; New York

**Additional Provisions:** (provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over these Additional Provisions):

1. The **"Cross Default"** provisions of <u>Section 5(a)(vi)</u> of the ISDA Form will apply.

   **"Threshold Amount"** means the lesser of (i) USD 100 million or (ii) two percent (2%) of the Stockholders' Equity of Lehman Brothers Holdings Inc. ("Holdings"), in the case of Party A and Holdings (or its equivalent in any other currency), and USD 25 million, in the case of Party B and any Credit Support Provider of Party B (or its equivalent in any other currency).

2. The **"Credit Event Upon Merger"** provisions of <u>Section 5(b)(iv)</u> of the ISDA Form will apply to Party A and Party B, provided, that the term "materially weaker" means, with respect to Party A, that Holdings or the resulting, surviving or transferee entity of Holdings fails to maintain a long-term senior, unsecured debt rating of at least Baa3 as determined by Moody's Investors Service, Inc. ("Moody's") and BBB- from Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies Inc. ("S&P").

3. **Additional Termination Events.** Each of the following shall constitute an Additional Termination Event:

   (i)   **Party A as a Secured Party.** At any time (1) Party A ceases to be one of the Secured Parties, (2) all or substantially all of the Collateral is released from the Liens of the relevant Loan Documents without the prior written consent of Party A, (3) (A) the liabilities of any Credit Support Provider of Party B in respect of its guarantee obligations under the relevant Loan Documents are limited without the prior written consent of Party A or (B) any Credit Support Provider of Party B is released from its guarantee obligations under the relevant Loan Documents without the prior written consent of Party A, (4) Party B or any of its Credit Support Providers takes any action that may render its obligations or liabilities under this Confirmation or the Credit Support Documents as unsecured indebtedness, <u>or</u> (5) the obligations and liabilities of Party B and its Credit Support Providers under this Confirmation and the relevant Credit Support Documents cease to constitute the Obligations of the Loan Parties and cease to rank pari passu with and equal in right and priority of payment with the Loans (and, for the avoidance of doubt, if there are multiple tranches of Loans, the most senior tranche) under the Loan Documents.  For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

   (ii)  **Financial Covenants.** At any time Party B fails to comply with any of the Financial Condition Covenants (A) set forth in Section 7.1 of the Credit Agreement as of the date of this Transaction or (B) of any and all other financial covenants added to the Credit Agreement at any time in the future.  For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

   (iii) **Change of Control.** A Change of Control (as defined in the Credit Agreement as of July 31, 2007) has occurred.  For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

   (iv)  **Failure to deliver an ISDA Master Agreement.** Party B fails to execute and deliver to Party A the Agreement within 60 calendar days following the Trade

Date. For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

4. **Additional Events of Default.** Each of the Events of Default (as such term is defined in the Credit Agreement) (together with the relevant provisions of any other Sections or Sections to which they refer, including definitions) of the Credit Agreement is hereby incorporated herein by this reference and made part of this Confirmation to the same extent as if the Credit Agreement were set forth in full herein, provided that any reference in such Events of Default to the "Lenders" shall be deemed to be a reference to Party A. The occurrence at any time of any such Event of Default under the Credit Agreement, will constitute an Event of Default with respect to Party B for the purposes of Section 5(a) of the Agreement. If for any reason Party A, or an affiliate of Party A, ceases to remain a party to such Credit Agreement or if such Credit Agreement should for any reason terminate or if Party A or an affiliate of Party A shall object to any amendment to the Credit Agreement, such Events of Default will be incorporated herein as they existed immediately prior to such event. If all of the obligations of Party B under such Credit Agreement have been satisfied or discharged in full and have not been replaced or succeeded by any similar obligations, then such Events of Default shall cease to apply to Party B hereunder.

5. **Additional Representations of Party B.** Party B represents to Party A in accordance with Section 3 of the ISDA Form (which representations will be deemed to be repeated by Party B at all times until the termination of this Transaction that:

(1) **Hedge Agreement.** (i) This Transaction has been, and will be, entered into and will remain in the ordinary course of business and not for the speculative purposes, (ii) Party A is one of the Secured Parties, (iii) this Transaction is a Hedge Agreement and Specified Hedge Agreement and (iii) the obligations and liabilities of Party B and its Credit Support Providers under this Transaction and the relevant Credit Support Documents constitute the Obligations of the Loan Parties and rank pari passu with and equal in right and priority of payment with the Loans (and, for the avoidance of doubt, if there are multiple tranches of Loans, the most senior tranche) under the Loan Documents.

(2) **Contractual Obligations.** This Transaction is entered into by Party B in accordance with and as permitted by the Contractual Obligations of Party B, and this Transaction does not and will not violate or conflict with any Contractual Obligation of Party B nor result in any breach of or constitute a default in respect thereof.

6. **Amendments to Loan Documents.** Party B agrees and covenants to Party A that Party B will not request or agree to any amendment, modification, addition, waiver or consent to or under any of the Loan Documents without Party A's prior written consent (such consent not to be unreasonably withheld) if such amendment, modification, addition, waiver or consent could have a materially adverse effect on Party A's rights under this Transaction or Party B's ability to comply with the terms of this Transaction or to perform under this Transaction.

7. **Additional Definitions.** Section 14 of the ISDA Form is hereby amended by adding the following definitions in their appropriate alphabetical order:

"**Collateral**" shall have the meaning assigned to such term in the Loan Documents.

"**Contractual Obligation**" means with respect to Party B and each of its Credit Support Providers, any provision of any security issued by such Person or of any agreement, instrument or other undertaking to which such Person is a party or by which it or any of its property is bound (including, but not limited to, the Loan Documents).

"**Credit Agreement**" means the First Lien Credit Agreement, dated as of July 31, 2007 (as amended, supplemented, waived or otherwise modified from time to time), by and among EDP Holdings, Inc., Veyance Technologies, Inc., as borrower, the Lenders from time to time party thereto, Lehman Commercial Paper Inc., as administrative agent and collateral agent, J.P.Morgan Securities Inc., as syndication agent, Goldman Sachs Credit Partners L.P., a Documentation Agent and Lehman Brothers Inc., J.P. Morgan Securities Inc., and Goldman Sachs Credit Partners L.P., as joint lead arrangers and joint bookrunners.

"**Credit Support Documents**" means, with respect to Party B, the First Lien Loan Documents as defined in the Credit Agreement.

"**Credit Support Provider**" means, with respect to Party B, the Guarantors as defined in the Credit Agreement.

"**Hedge Agreement**" shall have the meaning assigned to such term in the Loan Documents.

"**Lien**" shall have the meaning assigned to such term in the Credit Agreement.

"**Loans**" shall have the meaning assigned to such term in the Credit Agreement.

"**Loan Documents**" shall have the meaning assigned to the term "First Lien Loan Documents" in the Credit Agreement.

"**Loan Parties**" shall have the meaning assigned to such term in the Credit Agreement.

"**Moody's**" means Moody's Investor Services, Inc.

"**Obligations**" shall have the meaning assigned to such term in the Loan Documents.

"**Person**" shall have the meaning assigned to such term in the Credit Agreement.

"**S&P**" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc.

"**Secured Parties**" shall have the meaning assigned to such term in the Loan Documents.

"**Specified Hedge Agreement**" shall have the meaning assigned to such term in the Loan Documents

"**Stockholders' Equity**" means with respect to an entity, at any time, the sum at such time of (i) its capital stock (including preferred stock) outstanding, taken at par value, (ii) its capital surplus and (iii) its retained earnings, minus (iv) treasury stock, each to be determined in accordance with generally accepted accounting principles consistently applied.

"**USD**" means United States Dollars.

**Miscellaneous:**

| | |
|---|---|
| Calculation Agent: | Party A |
| Office: | For the purposes of this Transaction, Party A is not a Multibranch Party, and the Office of Party B is its Head Office. |
| Transfer: | Notwithstanding Section 7 of the ISDA Form, Party A may assign its rights and obligations under this Transaction, in whole or in part, (1) to any Affiliate of Holdings effective upon delivery to Party B of the guarantee by Holdings, in favor of Party B, of the obligations of such Affiliate, such guarantee to be substantially the same as the guarantee then in effect of the obligations of the transferor, or (2) to any entity with the same or higher long term senior unsecured debt rating (as determined by S&P or Moody's) as Holdings at the time of such transfer; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
| Governing Law: | The laws of the State of New York (without reference to choice of law doctrine); provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
| Termination Currency: | USD; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
| Representations: | Section 3 of the ISDA Form is hereby amended by adding the following additional subsection:<br><br>Eligible Contract Participant. It is an "eligible contract participant" as defined in the Commodity Futures Modernization Act of 2000; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
| Waiver of Trial By Jury: | Insofar as is permitted by law, each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Transaction, and acknowledges that this waiver is a material inducement to the other party's entering into this Transaction hereunder; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |

| Payments on Early Termination: | For the purpose of <u>Section 6(e)</u> of the ISDA Form, Loss and the Second Method will apply; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
|---|---|
| Netting of Payments: | <u>Subparagraph (ii)</u> of <u>Section 2(c)</u> of the ISDA Form will not apply to any Transaction between the parties hereto; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number (+1) 646-885-9551 (United States of America), Attention: Confirmations Group.

Yours sincerely,                                   Accepted and agreed to:

**Lehman Brothers Special Financing Inc.**        **VEYANCE TECHNOLOGIES, INC.**

By:  *Anatoly Kozlov*
Name:  Anatoly Kozlov
Title:  Authorized Signatory
                                                   By:  _____
                                                   Name:
                                                   Title:

Risk ID: 1936711L / Effort ID: 2096338 / Global Deal ID: 3837957

# Exhibit B

| | |
|---|---|
| **From:** | Suh, Jenny |
| **Sent:** | Monday, July 07, 2008 3:59 PM |
| **To:** | 'benjamin.schlater@veyance.com' |
| **Subject:** | Outstanding Confirmation |



Lb Os Contract
Effort 2096338....

Hi Benjamin,

I am following up on Will's correspondence with you. Could you please update me on the status of the attached confirmation. Otherwise,
please review the attached confirmation, sign and return a copy for our records. If you have any questions, please feel free to contact me.

Thanks and Regards,

Jenny Suh
**LEHMAN BROTHERS**
Capital Markets Contracts - Legal
1271 Avenue of the Americas, 43rd floor
New York, NY 10020

☎(646) 333-8420
646-885-9558
✉ jenny.suh@lehman.com

Exhibit C

| | |
|---|---|
| **From:** | Nicoleta_Bortan@veyance.com |
| **Sent:** | Tuesday, July 08, 2008 3:26 PM |
| **To:** | Cardinale, William |
| **Cc:** | bob.brown@veyance.com; william_horvath@veyance.com |
| **Subject:** | Fw: LBSF / Veyance Technologies - May 16 Swap |
| **Attachments:** | Lb Os Contract Effort 2096338.pdf |

William-

Please change the language as follows and return to me for execution.

In Paragraph 3 "Additional Provisions" (i) (1) right after the number in paranetheses and before the work "Party" we should insert the words "Excepting a voluntary sale Party A,"

In Paragraph 3 (ii) in the first sentence after the words "any of the" insert the word "unwaived".  Again in subparagraph (B) after the words "financial covenants" insert the words" which have not been waived".

In the Miscellaneous section Transfer - please add the following language

"Notwithstanding the provisions of Section 7 of the Agreement, Party A will not unreasonably withhold or delay its consent to assignment of this Agreement or any Transaction hereunder to a third party, provided that (i) such assignment and assumption is of this Agreement or any Transaction hereunder is properly documented and executed by all relevant parties, (ii) such third party meets all of Party A's then existing counterparty eligibility requirements, including credit practices and policies, and exposure limits."

In the Miscellaneous section Payments on Early Termination - Please change "Loss" to "Market Quotation".

Thanks and please let me know if you have any questions.

Regards,

Nicoleta Bortan
Veyance Technologies, Inc.
703 S. Cleveland Massillon Rd
Fairlawn, OH 44333
330.664.7032 / (M) 330.208.3247 (F) 330.664.7043
nicoleta_bortan@veyance.com

# Exhibit D

| | |
|---|---|
| **From:** | Skanthan.Vivekananda@lw.com |
| **Sent:** | Friday, September 12, 2008 12:20 PM |
| **To:** | Griesheimer, Cornelia |
| **Cc:** | Tuttle, Kiery; Christopher.Brown@lw.com; Cardinale, William |
| **Subject:** | Re: Veyance confirm |

Will do.


----- Original Message -----
From: Griesheimer, Cornelia <cornelia.griesheimer@lehman.com>
To: Griesheimer, Cornelia <cornelia.griesheimer@lehman.com>;
Vivekananda, Skanthan (LA)
Cc: Tuttle, Kiery <kiery.tuttle@lehman.com>; Brown, Christopher (DC); Cardinale, William
<william.cardinale@lehman.com>
Sent: Fri Sep 12 08:49:37 2008
Subject: RE: Veyance confirm

Skanthan,

I know that you needed to confirm two points with your client. Can you please let us know
whether you have spoken with your client and the attached is signed-off? Thank you.


Best regards,
Cornelia


Note: New Contact (Effective: February 25th, 2008)

Cornelia Griesheimer
Lehman Brothers Inc.
Capital Markets Contracts - Legal
1271 Avenue of the Americas, 43rd Floor
New York, NY 10020
Phone: 646-333-9502
Facsimile: 646-758-8288
Email: cornelia.griesheimer@lehman.com

# Exhibit E





Veyance Technologies, Inc.
703 S. Cleveland Massillon Rd
Fairlawn, OH 44333
Ph (330) 664-7000
www.goodyearep.com

November 24, 2008

**VIA EMAIL/FAX AND OVERNIGHT COURIER**
Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Inc.
Investment Banking Division, Risk Solutions Group
745 Seventh Avenue
New York, NY 10019
Attention: Joseph C. Lewis, Vice President

Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Inc.
Confirmations Group
745 Seventh Avenue
New York, NY 10019
Facsimile: 646-885-9551
Attention: William Cardinale

Re:    **Proposed ISDA Interest Rate Swap**

Dear Sirs:

We refer to the draft Confirmation (risk ID 1936711L) (the "Proposed Confirmation") initially delivered to us by you on or about May 2008, offering certain terms to govern a proposed interest rate swap transaction (the "Proposed Transaction") between Lehman Brothers Special Financing Inc. ("Lehman") and Veyance Technologies, Inc. ("Veyance").

As you are aware, since May 2008, both Lehman and Veyance, on their own behalf and with the assistance of counsel, have attempted in good faith to negotiate mutually agreeable terms with respect to the Proposed Transaction and have not, as of the date hereof, agreed upon such terms. We received your most recent counteroffer of terms in the draft of the Proposed Confirmation dated August 13, 2008 (the "Counteroffer"). We hereby inform you that we are not interested in entering into the Proposed Transaction at this time. Furthermore, we hereby respectfully reject your Counteroffer and rescind any and all previous offers made by us with respect to the proposed transaction.
We thank you for your time and assistance in this effort.

VEYANCE TECHNOLOGIES, INC.

By: Benjamin J. Schlater
Title: Treasurer & Director of Corporate Strategy

# Exhibit F

# LEHMAN BROTHERS

April 6, 2009

VIA FEDERAL EXPRESS AND EMAIL

Benjamin J. Schlater
Veyance Technologies, Inc.
703 S. Cleveland Massilon Road
Fairlawn, OH    44333

Dear Mr. Schlater:

Reference is hereby made to (i) that certain Confirmation (Risk ID: 1936711L) dated as of May 22, 2008 (the "Confirmation;" capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Confirmation) between Lehman Brothers Special Financing Inc. ("Lehman") and Veyance Technologies, Inc. ("Veyance") and to the Transactions thereunder and (ii) that certain letter dated November 24, 2008 from Veyance to Lehman regarding the Confirmation (the "November 24 Letter").

Notwithstanding the assertions made in the November 24 Letter, we agreed upon the material economic terms with respect to the Transaction on May 22, 2008 and there is sufficient evidence to support such agreement.    As such, Lehman and Veyance are subject to the terms and conditions set forth in the Confirmation and we expect to enforce and be bound by the Confirmation in accordance with its terms.

Please let me know if you have any questions.    I can be reached at (646) 333-9836 or david.downie@lehman.com.

Sincerely,

/s/ David C. Downie

David C. Downie
Derivatives Legal


cc: Robert A. Brown

# Exhibit G

# LEHMAN BROTHERS

April 28, 2009

BY OVERNIGHT COURIER AND EMAIL

Benjamin J. Schlater
Veyance Technologies, Inc.
703 South Cleveland Massilon Road
Fairlawn, OH   44333

Dear Mr. Schlater:

I am a member of the Derivatives Legal team for Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, including Lehman Brothers Special Financing, Inc. ("LBSF" and, together with LBHI and its affiliated debtors, the "Debtors").   On September 15, 2008 and periodically thereafter LBHI and certain of its subsidiaries commenced with the United States Bankruptcy Court for the Southern District of New York voluntary cases under Chapter 11 of Title 11 of the United States Code.  LBSF commenced its voluntary Chapter 11 case on October 3, 2008.

Reference is hereby made to (i) that certain Confirmation (Risk ID: 1936711L) dated as of May 22, 2008 (the "Confirmation") between LBSF and Veyance Technologies, Inc. ("Veyance") and to the Transactions thereunder, (ii) that certain letter dated November 24, 2008 from Veyance to LBSF regarding the Confirmation (the "November 24 Letter") and (iii) that certain letter dated April 6, 2009 from us to Veyance regarding the Confirmation (the "April 6 Letter").   Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Confirmation.

We have reviewed the substance and timing of the electronic communications related to the Confirmation and conclude that there was final agreement on material economic terms with respect to the Transaction.   The terms of our agreement are reflected in the final version of the Confirmation sent to you by email on May 22, 2008.   For your reference, we have enclosed the email and the attached Confirmation.   As such, LBSF and Veyance are subject to the terms and conditions set forth in the Confirmation and we expect to enforce and be bound by the Confirmation in accordance with its terms.

Please let me know if you have any questions.    I can be reached at (646) 333-9836 or
david.downie@lehman.com.

Yours truly,

David C. Downie

cc:    Robert A. Brown (by email)

# Exhibit H





Veyance Technologies, Inc.
703 S. Cleveland Massillon Rd
Fairlawn, OH 44333
Ph (330) 664-7000
www.goodyearep.com

August 27, 2009

BY OVERNIGHT COURIER AND E-MAIL

David Downie
Derivatives Legal
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020
david.downie@lehman.com

Dear Mr. Downie:

We are in receipt of your letter, dated April 28, 2009 (the "April 28 Letter"), responding to certain discussions we previously had in respect of a proposed interest rate swap transaction (the "Transaction") between Veyance Technologies, Inc. ("Veyance") and Lehman Brothers Special Financing, Inc. ("Lehman").  As we understand the April 28 Letter, Lehman is of the position that there exists a final agreement between Veyance and Lehman on the terms of the Transaction as reflected in the draft Confirmation (Risk ID: 1936711L) dated as of May 22, 2008 (the "Confirmation").  It is, however, unclear to us how you conclude that there was final agreement on the material terms as there were clearly areas of disagreement that were subject to negotiation.

We also acknowledge certain discussions between Robert Brown, Assistant Treasurer of Veyance, and [Kevin Chichester] of the Derivatives Legal department at Lehman, during the past few weeks in respect of a potential resolution of the discrepancies posed by the April 28 Letter (the "May/June Discussions").

We have thoroughly reviewed our files and correspondence in respect of the Transaction and the Confirmation and we respectfully disagree with your aforementioned position.  We do not dispute that most of the primary *economic* terms of the Transaction were agreed and settled on or prior to May 22, 2008.  However, in our view, even those terms were conditioned upon agreement to the other terms.  As you are aware and appear to concede in the April 28 Letter, many of the legal and other non-economic provisions of the Confirmation were not agreed to on or prior to May 22, 2008, most of which were material to us in assessing whether to execute the Confirmation and consummate the trade contemplated thereby.  As such, we did not execute the Confirmation at such time, nor have we done so to date.  As you are aware, Veyance and Lehman continued their bilateral negotiation of many of these material terms up through mid-September 2008, at or about which time Lehman and/or its affiliates commenced voluntary bankruptcy cases under Chapter 11 of Title 11 of the United States Code, and negotiations ceased with no final Confirmation or trade.

VEYANCE





Veyance Technologies, Inc.
703 S. Cleveland Massillon Rd
Fairlawn, OH 44333
Ph (330) 664-7000
www.goodyearep, com

Given the foregoing, we submit that no final agreement was ever reached and that the Transaction was never consummated.  In light of the above and the May/June Discussions, we do, however, welcome your continued thoughts on the above and hope to reach an amicable resolution of the same.  Please let us know when in the near future would be a good time to discuss, and please feel free to contact me at 330 664 7022 if you have any questions in the interim.

Respectfully,

Bob Brown
Assistant Treasurer

Cc: Latham Watkins – Jennifer Van Driesen
Veyance – Teresa Sebastian, Vice President, General Counsel and Corporate Secretary

VEYANCE

# Exhibit I

# EXHIBIT I

## SCHEDULE OF DOCUMENTS TO BE PRODUCED

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

2.    "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, drawings, graphs, charts, photographs, sound recordings and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

3.    The terms "Debtor," "Debtors," "LBHI" or "LBSF" shall mean Lehman Brothers Holdings, Inc. or Lehman Brothers Special Financing, Inc.

4.    "Veyance," "You," and "Your" shall mean Veyance Technologies, Inc. and any person acting on its behalf or under its control, including any of its agents, subsidiaries, affiliates, predecessors, successors, or representatives.

5.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

6.      The word "each" shall mean both "each" and "every", and the word

"every" shall mean both "each" and "every," as appropriate in order to bring within the scope of

this Request documents which might otherwise be beyond its scope.

7.      The term "Confirmation" shall mean the confirmation sent by LBSF to

Veyance on May 22, 2008, as well as any revised versions of the Confirmation exchanged by

LBSF and Veyance after May 22, 2008.

8.      The term "Transaction" shall mean the interest-rate swap transaction that

is the subject of the Confirmation.

## GENERAL INSTRUCTIONS

The following General Instructions apply to each request set forth herein.

1.      Each request seeks production of each Document, in its entirety, without

abbreviation or expurgation, and all drafts and non-identical copies of each Document.

2.      If any Document requested herein was formerly in Your possession,

custody or control (or that of Your Representative) and has been lost or destroyed or otherwise

disposed of, You are requested to submit in lieu of any such Document a written statement (a)

describing in detail the nature of the Document and its contents, (b) identifying the person(s)

who prepared or authored the Document and, if applicable, the person(s) to whom the Document

was sent, (c) specifying the date on which the Document was prepared or transmitted and (d)

specifying the date on which the Document was lost or destroyed and, if destroyed, the

conditions of and reasons for such destruction and the person(s) requesting and performing the

destruction.

3.      If any Document requested herein is withheld on the basis of any claim of

privilege, You are requested to submit, in lieu of any such Document, a written statement (a)

identifying the person(s) who prepared or authored the Document, and, if applicable, the

2

person(s) to whom the Document was sent or shown, (b) specifying the date on which the

Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter,

telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute

work product, and (e) identifying the paragraph of this request to which the Document relates.

4.      If a portion of an otherwise responsive Document contains information

subject to a claim of privilege, those portions of the Document subject to the claim of privilege

shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall

be applicable, and the rest of the Document shall be produced.

5.      All Documents are to be produced as kept in the usual course of business

or are to be organized and labeled to correspond with the categories in this request.  The method

for production of each category is to be identified at the time of production.  Documents are to be

produced in full and unexpurgated form.

6.      Each page of each document should be numbered consecutively.  A

request for a document shall be deemed to include a request for any and all file folders within

which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or

attachments to the document in addition to the document itself.

7.      Documents attached to each other (physically or via electronic mail)

should not be separated.

8.      In producing the requested documents, even though the requests are

directed to "you," furnish all documents which are available to you, including documents in the

possession of any of your officers, directors, employees, agents, attorneys, investigators,

accountants or consultants and not merely such documents in your possession.

3

9.      The requests which follow are to be regarded as continuing, and Veyance is requested to provide by the way of supplementary compliance herewith, such additional documents as Veyance may hereafter obtain, which will augment the documents now produced in response to the requests below.  Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after receipt thereof.

10.      At a future date, the Debtor may request the production of additional documents based on information revealed during this document request.

11.      At a future date, the Debtor may request to depose additional individuals based on information revealed during this document request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including January 1, 2008 through the present.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents concerning communications between Veyance and LBSF regarding the Transaction and the Confirmation.

REQUEST NO. 2

All documents concerning communications between Veyance and any third-party regarding the Transaction and the Confirmation.

REQUEST NO. 3

All documents concerning internal communications at Veyance regarding the Transaction and the Confirmation.

4

REQUEST NO. 4

      All documents concerning financial or accounting entries made on Veyance's books and records regarding the Transaction.

REQUEST NO. 5

      All documents concerning any revisions, edits, or comments to the Confirmation.

REQUEST NO. 6

      All board resolutions and minutes concerning the Transaction or the Confirmation.

REQUEST NO. 7

      All documents concerning the Transaction and/or Confirmation not specifically requested by Requests 1-6.