UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555-jmp

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC.,


       Debtors.


- - - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          October 7, 2009

          10:24 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

Hearing re: Motion Filed by Lehman Commercial Paper Inc. for Authority to Consummate Transactions Contemplated in the Chapter 11 Plan Proposed by the Lehman Lenders in the SunCal Chapter 11 Cases

Transcribed by: Hana Copperman

```
 1
 2   A P P E A R A N C E S :
 3   WEIL, GOTSHAL & MANGES LLP
 4        Attorneys for Debtors
 5        767 Fifth Avenue
 6        New York, NY 10153
 7
 8   BY:  GARRETT AVERY FAIL, ESQ.
 9        MICHAEL W. BOND, ESQ.
10
11
12   MILBANK, TWEED, HADLEY & MCCLOY LLP
13        Attorneys for the Official Committee of Unsecured
14         Creditors
15        One Chase Manhattan Plaza
16        New York, NY 10005
17
18   BY:  DENNIS C. O'DONNELL, JR.
19
20   Also Present:
21   MR. MATT HIGBEE
22   (TELEPHONICALLY),
23        Party Pro Se
24
25
```

1  P R O C E E D I N G S

2  MR. FAIL: Good morning, Your Honor. Garrett Fail,
3  Weil, Gotshal & Manges, for Lehman Brothers Holdings Inc. and
4  its debtor and certain non-debtor affiliates.
5  On the agenda this morning is one item. It's a motion
6  of Lehman Commercial Paper Inc. for authority to consummate
7  transactions contemplated by LCPI and certain of its non-debtor
8  affiliates in the Chapter 11 plan filed in the SunCal Chapter
9  11 cases. The debtors believe, in their business judgment,
10 that proposing a Chapter 11 plan in the SunCal cases will
11 increase the prospect for recovery on Lehman's interests in
12 approximately 2 billion dollars of loans made to SunCal, the
13 SunCal debtors.
14 The debtors have worked with the unsecured creditors'
15 committee in these cases and proposed a plan that is a product
16 of months of work in connection with the SunCal cases. Only
17 one objection was filed to the debtors' motion, and that was by
18 Mr. William Kuntz, III. The objection mentions SunCal and
19 another unrelated transaction that has been proposed by the
20 debtors recently, but it does not address the substance of the
21 debtors' motion, the present motion, or the next motion to be
22 heard later this month by Your Honor, and it doesn't provide
23 any support for the Court to overrule the debtors' business
24 judgment or the facts represented in the debtors' motion.
25 The Court is likely familiar with Mr. Kuntz from his

1  past appearances and submissions before this Court, and because
2  Mr. Kuntz's objection addresses another transaction, the
3  Fairpoint transaction, may hear from him again at the hearing
4  next week on the 14th.
5  Late last night our offices received a fax from Mr.
6  Kuntz asking us to convey his respects to Your Honor and accept
7  his papers on his submission.  We're told he will not be
8  appearing this morning.  I provided a copy of that fax to your
9  courtroom deputy this morning.
10  THE COURT:  I've been given a copy and I've read it.
11  MR. FAIL:  Okay, Your Honor.  The debtors request that
12  the Court deny the objection and approve the motion and the
13  relief requested therein.
14  Your Honor, I would point out that the proposed order
15  we provided and that the debtors' submitted provides that the
16  proposed plan that was attached to the motion may be modified,
17  amended or supplemented by the proponents thereof without
18  further order of the Court.  And that is consistent with
19  Chapter 11 processes where plans evolve over time.  The
20  disclosure statement hearing for both the debtors' proposed
21  plan in the SunCal cases and LCPI's and the Lehman proposed
22  plan is scheduled for next week in the California Bankruptcy
23  Court, and the debtors anticipate, these debtors, the Lehman
24  debtors, anticipate making amendments to that plan that it's
25  proposing in the SunCal cases.  The proposed order that we've

1  submitted provides that any agreements related to the proposed
2  plan may be modified, amended, supplemented, provided that in
3  each case any such modification, amendment or supplement does
4  not have a material adverse affect on LCPI's estate.  The
5  amendments under contemplation, we believe, fall within this
6  and do not present a material adverse effect on LCPI's estate,
7  but for the record I'd like to share with you where we think
8  the proposed amendment is heading.
9        The one relevant one is that subject to certain
10 limitations the Lehman entities, which include LCPI but also
11 non-debtor affiliates, will be guaranteeing a minimum payment
12 to creditors in connection with an equitable subordination
13 claims (sic) made in an adversary proceedings (sic) brought in
14 the SunCal debtor cases of up to 10 million dollars.
15       THE COURT:  May I stop you for one second, Mr. Fail?
16 There must be someone on CourtCall with an open mike rustling
17 papers, because the sound is being heard throughout the
18 courtroom, and I would just ask whoever that is to please mute
19 your phone.  Sounds like that worked.  I'm sorry for the
20 interruption.
21       MR. FAIL:  No problem, Your Honor.  Thank you.  As I
22 was saying, the Lehman entities will together guarantee a
23 maximum payment of 10 million dollars, but that will be offset
24 by its settlement -- amounts paid in settlement, and it will be
25 further offset by amounts actually paid as a result of

litigation. In addition, as I just mentioned, that will be shared by LCPI and its non-debtor affiliates. So, in total, we don't believe that there will be any material adverse effect on LCPI's estate, and in the debtors' business judgment this is still the best way to maximize recoveries from the SunCal debtors.

Your Honor, with that said we appreciate the Court scheduling a hearing this morning in advance of the disclosure statement hearings in the SunCal cases next week. I'm available to answer any questions that you may have regarding the motion, and I have with me Michael Bond, a partner at Weil, Gotshal's real estate department, who's been working on these matters for the past year.

THE COURT: Okay. I have a couple of questions. The first is really for the creditors' committee, who's here and represented, to confirm that the committee has been consulted in connection with this unusual procedure in which, in effect, one bankruptcy case is controlling another bankruptcy case, and money is being used in order to minimize possible litigation risk in that other bankruptcy case.

MR. O'DONNELL: Yes, Your Honor. Dennis O'Donnell, Milbank, Tweed, Hadley & McCloy, on behalf of the creditors' committee. We have been involved in the process with respect to this motion and have been monitoring closely developments in the SunCal case in California. People in our LA office follow

that routinely. And we do believe that the proposed authority here to file and prosecute this plan makes sense in the context of where that case is currently, and this is obviously a competing plan. There's a process that lies ahead of us, and we believe that the debtors need to do this in order to ultimately maximize value. We don't know whether the plan that's being proposed now will, in fact, be the plan at the end of the day, and we somehow doubt that it will be, but we believe that as part of the overall process the debtors need to take these steps.

In that connection, the order does provide that the debtor should be able to amend or modify the plan as necessary as the process unfolds, but our understanding with the debtors is that they will, you know, such amendments will be made in consultation with the committee and with the committee's approval. And on that understanding the proposed relief is acceptable to the committee.

THE COURT: Well, and I appreciate that, and this is, I guess, my second question, which is really for Mr. Fail. Is there any limit upon the amendments that can be made to this proposed plan? I mean, at the moment it calls for the use of 15 million dollars, potentially, as a fund to settle equitable subordination type claims in the California bankruptcy cases. But let's just say, for the sake of discussion, it turns out to be 30 million dollars. Is there some materiality component

1  here that would call for further approval of the use of funds
2  at what might be 200 percent of the current level? I'm just
3  wondering if this is a blank check or if this is simply
4  authority to proceed with a competing plan along the lines
5  outlined in the motion, but if there are material changes there
6  would be a need to come back here.
7        MR. FAIL: Your Honor, the language proposed in this
8  order does contemplate that it has to be a material adverse
9  effect on LCPI's estate. That language is consistent with
10 language that's been inserted in other orders in these cases
11 where the transaction documents haven't been finalized or where
12 they've been finalized but amendments have been contemplated.
13 This material adverse threshold is not as defined as a specific
14 dollar amount would be, but in working in consultation with the
15 committee we believe that sufficient checks on the debtors'
16 assessment of material adverse effects are in place, and
17 although Your Honor is correct that if there is a 15 million
18 dollar component, and I just mentioned a 10 million, that will
19 be offset by other factors. It's difficult at this time to say
20 what the end results of negotiations in the SunCal cases will
21 lead to and the final result of these plans in terms of dollar
22 amount or other structures. So we needed to move forward to
23 get the authority to have the flexibility to negotiate in those
24 cases. The alternative, Your Honor, we believe, would be
25 materially adverse for the debtors' estates in that they

1  wouldn't be able to propose a plan or wouldn't have the
2  flexibility to prosecute it. And that's why we --
3          THE COURT: I understand the need for flexibility, and
4  I appreciate the fact that the creditors' committee will be
5  consulted throughout the process of attempting to confirm this
6  competing plan in the California court. I also recognize that
7  it would be completely unworkable for you to have to come back
8  here on a repeated basis to obtain authority to the extent
9  there are major changes in the proposed competing plan.
10         The concern that I have is as much as anything a
11 notice concern in respect of the present motion. The present
12 motion speaks in terms of a particular kind of competing plan,
13 with funds being used at a notional level of perhaps 15 million
14 dollars. But it's obvious that in a free-form negotiation in
15 which you have no lockups with any of the constituents in the
16 California case that that may be the starting point, as opposed
17 to the ending point, of a negotiated adjustment to that plan
18 treatment.
19         I don't in any way seek to become involved in that
20 process, but to the extent that it ends up with the use of
21 proceeds from the estate at a level which is materially greater
22 than the amount suggested in the current motion it seems to me
23 there should be at least some notice given to creditors in the
24 Lehman cases that pursuant to the authority granted in this
25 motion instead of using 15 million dollars in estate funds

1  you're using some number greater than that.  Or if it turns out
2  that there's a totally different kind of plan that may involve
3  no use of funds or the assumption of some assumed liability
4  going down the road in that case because of ongoing litigation,
5  I think there should be notice of that as well.  I don't think
6  it should be a black hole.
7          MR. FAIL:  Your Honor, could I have one moment just to
8  consult with my colleagues?
9          THE COURT:  Sure.
10         (Pause)
11         MR. FAIL:  Thank you very much, Your Honor.  Having
12 consulted with Mr. O'Donnell for the committee and Mike Bond
13 from Weil, Gotshal for the debtors I would make this proposal
14 and response to Your Honor's suggestion.
15         That any material modifications will be done in
16 consultation with, or after consultation with, the creditors'
17 committee, and that material amendments to the plans, as
18 they're filed in the California cases, will be filed with a
19 notice in these cases on ECF and served by the debtors on the
20 master service list.
21         THE COURT:  That's fine, so long as we're just dealing
22 with material modifications.  I don't want the docket in this
23 case to be burdened with excessive confusing filings relating
24 to the SunCal case.  The idea is to just clearly notify parties
25 in interest if there has been a use of materially more money in

1  the context of the SunCal resolution than had been noticed in
2  the current motion.
3       MR. FAIL:  Thank you, Your Honor.  And we will
4  endeavor to do our best to minimize the filings and the
5  decision on whether or not its material will be made in
6  consultation with the creditors' committee.
7       THE COURT:  Now, and let me comment briefly on the
8  objection to this motion which has been filed by William Kuntz.
9  I read Mr. Kuntz's objection, and it appears to relate to two
10 transactions, both the SunCal and the Fairpoint matters.  Only
11 the SunCal matter is before me today.  I also received, by hand
12 delivery this morning, a letter from Mr. Kuntz, dated October
13 6th, noting his inability to attend today's hearing and the
14 fact that he is relying on his papers.
15      I have reviewed the papers filed by Mr. Kuntz and note
16 that there are a number of attachments relating to news stories
17 that have appeared in California relating to the SunCal
18 bankruptcy cases, as well as a Bloomberg article.  The
19 objection questions the business judgment of Lehman in
20 expending funds associated with the SunCal bankruptcy cases but
21 does not provide reasoning in support of the objection.
22 Instead, the objection appears to challenge aspects of Lehman's
23 current business decision process through Alvarez & Marsal,
24 claims some connection between Weil, Gotshal and Alvarez &
25 Marsal, argues that there has been a breach of a trust

13

1  relationship having to do with the Grand Union bankruptcy case
2  and various funds relating to that bankruptcy case that may or
3  may not currently be held by the New York State Comptroller's
4  Office.
5         Based upon my review of the objection it appears that
6  Mr. Kuntz is repeating various arguments made in the context of
7  an earlier motion for relief from the automatic stay which I
8  denied last November, and Mr. Kuntz's objection does not appear
9  to go to the particulars of the SunCal bankruptcy and the risks
10 in terms of expense and delay associated with that bankruptcy
11 case to the Lehman estate.
12         Under the circumstances I find that the objections
13 made by Mr. Kuntz are not relevant to the matter before the
14 Court, and I overrule those objections.  I do so, however,
15 without prejudice to Mr. Kuntz's proof of claim which appears
16 to have been filed in the bankruptcy cases, and Mr. Kuntz is
17 free to pursue such further objections as he considers
18 appropriate and in his interest.  He is also free to prosecute
19 his proof of claim, as are all the creditors.
20         So the Kuntz objection is overruled.  There are no
21 other objections to the relief being requested here, and
22 subject to the modifications that have been put on the record
23 regarding notice of material modifications that may be made to
24 the plan over time, I grant the motion.
25         MR. FAIL:  Thank you very much, Your Honor.  I could

1  either hand up the order as proposed and we could rest on the
2  record for the rest, or we could amend the order to provide --
3          THE COURT:  I suggest that the order be amended in a
4  manner that's acceptable to the creditors' committee and that
5  it be submitted following amendment.
6          MR. FAIL:  We'll submit it later this afternoon.
7  Thank you very much, Your Honor.
8          THE COURT:  Okay.  We're adjourned.
9       (Proceedings concluded at 10:44 AM)

15

I N D E X

RULINGS

                                  Page    Line

Granting of Motion Filed   13      24

by Lehman Commercial

Paper Inc. for Authority

to Consummate Transactions

Contemplated in the

Chapter 11 Plan Proposed

by the Lehman Lenders in

the SunCal Chapter 11

Cases

C E R T I F I C A T I O N

I, Hana Copperman, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

HANA COPPERMAN

AAERT Certified Electronic Transcriber (CET**D-487)

Veritext LLC

200 Old Country Road

Suite 580

Mineola, NY 11501

Date: October 8, 2009