# EXHIBIT A

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE
NEW YORK, NY 10153
(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

RICHARD P. KRASNOW
DIRECT LINE (212) 310-8493
E-MAIL: richard.krasnow@weil.com

October 8, 2009

**BY HAND DELIVERY**

The Honorable James M. Peck
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 610
New York, New York 10004

> Re:  In re Lehman Brothers Holdings Inc.,
> (Case No. 08-13555) (JMP) (Jointly Administered) –
> **Debtors' Motion To Enforce Stay Against Shinsei Bank**

Dear Judge Peck:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") write to bring to this Court's attention the fact that on September 18, 2009, Shinsei Bank filed a petition (the "Petition")[1] in the Tokyo District Court concerning the Debtors' Motion for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt for Violating the Automatic Stay [Docket No. 4764] (the "Motion") – only one day after filing its unauthorized Sur-Reply [Docket No. 5206] and ten days before delivering to this Court the letter of J. Ronald Trost Re: Debtors Motion to Enforce Stay Against Shinsei Bank [Docket No. 52911] (the "Trost Letter"), without disclosing in either the Sur-Reply or the Trost Letter that Shinsei Bank had filed the Petition. We are concerned about this because, in the Petition, Shinsei Bank misstates the issues before this Court in connection with the Motion and requests the Tokyo District Court to "take appropriate action" in response to the Motion "[i]n order to . . . preserve the independence and dignity of the Japanese Court." (Petition at 2.)

---

[1]  A certified translation of the Petition from Japanese into English is attached hereto as Exhibit A.

The Honorable James M. Peck
October 8, 2009
Page 2


        Specifically, the Petition advises the Tokyo District Court that, in considering the Motion, this Court has been requested to rule on whether the Shinsei Plan[2] filed in the Sunrise Insolvency Proceeding is permissible under Japanese law. (Petition at 8.) This is clearly wrong. While the Debtors have advised this Court that the permissibility of American-style equitable subordination under Japanese law is one of the key questions being litigated before the Tokyo District Court by Shinsei Bank in its efforts to (i) subordinate LBHI's claims and (ii) disenfranchise LBHI in the Sunrise Involvency Proceeding, the Debtors have emphasized – both in the Debtors' Reply to Objections to the Motion [Docket No. 4920] (the "Debtors' Reply") and in their letter to this Court dated September 25, 2009 (attached to the Trost Letter as Exhibit A) (the "Debtors' Letter") – that neither this nor any other question of Japanese law is before this Court, and the Debtors have respectfully requested that this Court make clear in its resolution of the Motion that it is *not* addressing any issue of Japanese law or suggesting how the Tokyo District Court should rule on any issue before it. (See, e.g., Debtors' Reply ¶ 4, Hr'g Tr. at 57:1-24, Debtors' Letter at 4 n.3.)

        Further, Shinsei Bank has requested in the Petition the Tokyo District Court's "proper handling of this matter . . . so that the independence and authority of the Japanese court is not infringed upon." (Petition at 8-9.) In other words, Shinsei Bank has requested the Tokyo District Court to intervene in support of Shinsei Bank's stay violation.

---

[2]     Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Motion.

The Honorable James M. Peck
October 8, 2009
Page 3

      Although the Petition was filed more than ten days before the Trost Letter was sent to this Court, the Trost Letter makes no mention of the Petition or of the "action" that it has requested the Tokyo District Court to take to prevent the Debtors from seeking the assistance of this Court. The Debtors themselves did not learn that the Petition had been submitted until October 2, 2009 (and then had to have it translated). The Debtors bring the Petition to this Court's attention as further evidence of Shinsei Bank's efforts to circumvent this Court's jurisdiction.

      Accordingly, and for the reasons set forth in the Motion, the Reply, the Debtors' Letter, the Motion should be granted.

Respectfully submitted,

Richard P. Krasnow

cc:    J. Ronald Trost (*via overnight delivery and e-mail*)
        Denis F. Cronin (*via overnight delivery and e-mail*)
        Dov Kleiner (*via overnight delivery and e-mail*)
        Ari M. Berman (*via overnight delivery and e-mail*)
        Dennis O'Donnell (*via overnight delivery and e-mail*)

# **EXHIBIT A**



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Imene Reda, hereby certify that the following is to the best of my knowledge and belief, a true and accurate translation, of the document "Shinsei's Petition on September 18, 2009" from Japanese into English.

_____
Imene Reda

Sworn to before me this
October 7, 2009

_____
Signature, Notary Public

Stephanie Dill
Notary Public, State of New York
No. 01DI6180934
Qualified in NEW YORK County
Commission Expires Jan 22, 2012

_____
Stamp, Notary Public

[Stamp: Submitted for examination on Sept. 18, 2009 to the Clerk of the Court, 20th Civil Division, Tokyo District Court; Presiding Judge; Judge [seal illegible]; judge [seal illegible]]

2008 (Rehabilitation) No. 208 Petition for Commencement of Rehabilitation Proceedings

Rehabilitation Debtor: Sunrise Finance Co., Ltd.

Petition Concerning US Court Proceedings

September 18, 2009

To: 20th Civil Division, Tokyo District Court

Supervisor: Makoto TAHIRA, Attorney-at-law

    Petitioner:    Rehabilitation Creditor Shinsei Bank, Ltd.

    Attorney Representing Rehabilitation Creditor: Yoshihiko OKUNO
        [Seal: Seal of Yoshihiko OKUNO, Attorney-at-law]

    Attorney Representing Rehabilitation Creditor: Isomi SUZUKI
        [Seal: Seal of Isomi SUZUKI, Attorney-at-law]

    Attorney Representing Rehabilitation Creditor: Toshiyuki ARAI
        [Seal: Seal of Toshiyuki ARAI, Attorney-at-law]

    Attorney Representing Rehabilitation Creditor: Shinpei YAMAMOTO
        [Seal: Seal of Shinpei YAMAMOTO, Attorney-at-law]

    Attorney Representing Rehabilitation Creditor: Yasushi ONO
        [Seal: Seal of Yasushi ONO, Attorney-at-law]

    Attorney Representing Rehabilitation Creditor: Hiroki SAKURABA
        [Seal: Seal of Hiroki SAKURABA, Attorney-at-law]

    Attorney Representing Rehabilitation Creditor: Ryosuke KOIKE
        [Seal: Seal of Ryosuke KOIKE, Attorney-at-law]

    Attorney Representing Rehabilitation Creditor: Mamoru FURUSHIMA
        [Seal: Seal of Mamoru FURUSHIMA, Attorney-at-law]

On August 11, 2009, Lehman Brothers Holdings, Inc. (hereinafter referred to as "LBHI") made a "Debtors' Motion Pursuant to Article 105(a) and Article 362 of the [US] Bankruptcy Code for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt for Violating the Stay" (hereinafter referred to as the "US Motion") to the United States Bankruptcy Court, Southern District of New York (hereinafter referred to as the "US Bankruptcy Court") (Attached Materials 1 and 2).

Below, after (1) stating the gist of this Petition, we herein report on (2) the issues in the US Motion, (3) the progress of the proceedings, and (4) the future outlook, as well as the influence on the rehabilitation proceedings related to Sunrise Finance Co., Ltd. (hereinafter referred to as the "Rehabilitation Proceedings") and domestic insolvency proceedings [in Japan].

1. Gist of this Petition

The US court proceedings in this case are a matter in which LBHI, a rehabilitation creditor in civil rehabilitation proceedings in Japan, is contending in the US Bankruptcy Court that when, in civil rehabilitation proceedings in Japan, other rehabilitation creditors submit a rehabilitation plan and propose in said plan the subordinate handling of rehabilitation credit as one form of amendment of the rehabilitation credit rights, this would constitute an infringement of the automatic stay (prohibition of efforts to acquire the possession of, or exercise power over, an insolvent debtor's property) applicable to US bankruptcy proceedings if the creditor having rehabilitation credit subject to said subordinate handling is, at the same time, a debtor in US bankruptcy proceedings. The purpose of this contention is to prohibit rehabilitation creditors from submitting a rehabilitation plan. Such submission of rehabilitation plans are recognized as a lawful exercise of rights according to the Civil Rehabilitation Law in Japan. Thus, the above contention involves the risk of obstructing not only the lawful involvement by said creditor in civil rehabilitations proceedings, but also poses the risk of unsettling the impartiality and equitability of civil rehabilitation proceedings in Japan, as well as the trust based on them. In order to also preserve the independence and dignity of the Japanese court, we consider it necessary for your office to consider the gist of the objection proposal made by the British Joint Administrators and take the appropriate measures. Such is the nature of our petition.

2. Issues in the US Motion

(1) Content of the Motion by LBHI

In this US Motion, based on the premise that Shinsei Bank owns credit vis-à-vis LBHI and abides by the personal jurisdiction of the US Bankruptcy Court through membership in the creditors' committee for US insolvency proceedings, LBHI is requesting the following three points of the US Bankruptcy Court (Attached Materials 2, page 11):

① Although Shinsei Bank, in these rehabilitation proceedings, is submitting a rehabilitation plan for the subordinate handling of the rehabilitation credit of LBHI and Lehman Brothers Asia Holdings, Ltd., an automatic stay in the US insolvency proceedings is to be placed on such action taken by Shinsei Bank to submit a rehabilitation plan.

② Shinsei Bank is to be held in civil contempt for intentionally violating the automatic stay due to its request for the subordinate handling of the credit of LBHI et al. in these rehabilitation proceedings in order to obstruct all the money that was finally recovered by the LBHI foundation and supposed to be proportionally divided and distributed to LBHI creditors.

③ In addition to making the US Motion, LBHI is also holding Shinsei Bank responsible for the damages incurred, attorneys' fees, and other costs.

(2) Issues

In these rehabilitation proceedings, the LBHI motion alleges that any exercise by Shinsei Bank of its rights as creditor to make a rehabilitation proposal and furthermore request the subordinate handling of the rehabilitation credit owned by LBHI et al. is injurious to the LBHI bankruptcy foundation and constitutes a violation of the automatic stay in the LBHI insolvency proceedings in the US.

Shinsei Bank has responded by stating that it reserves the right as creditor to submit a rehabilitation plan in the rehabilitation proceedings by Sunrise Finance Co., Ltd., a rehabilitation debtor in Japan, and is furthermore allowed to propose amendments to the rights of the other rehabilitation creditors. Shinsei Bank thus claims that the above does not constitute a violation of the automatic stay in the US proceedings (Attached Materials 4).

In response to these allegations, the US Bankruptcy Court set August 26, 2009 as the oral proceedings date for the US Motion. LBHI, on the day preceding said date, invoked the court ruling criteria used by Judge Gonzales in the ENRON case (that a creditor's actions are subject to an automatic stay when offensive and not subject to an automatic stay when defensive) and added the allegation that the rehabilitation plan proposal made by Shinsei Bank at the Tokyo District Court, in light of this ruling criteria, is offensive. Consequently, the issues in the US Motion have become (1) whether or not the Gonzales criteria should be applied in this case and (2) if they are applied, whether the actions by Shinsei Bank, in its proposal for a rehabilitation plan, are offensive or defensive (Attached Materials 9, page 97).

Concerning (2), our interpretation is that LBHI is alleging that the action taken by Shinsei Bank to submit a rehabilitation plan in these rehabilitation proceedings (i) uses the rehabilitation plan to request the subordinate handling of the rehabilitation credit for LBHI et al., which was settled through the process of credit investigation hearings, and therefore constitutes an overturn of the settlement, and (ii) can be viewed as a counterclaim against the litigious claim made by LBHI; such proceedings fall under the structure of opposing parties and are therefore offensive.

(3) Counterargument by Shinsei Bank

Shinsei Bank has responded by alleging that the ruling criteria of the ENRON case is not necessarily clear and moreover not legally established, so it would be erroneous, in and of itself, to use such criteria as the ruling criteria for this case, and even if this ruling criteria were used, the actions by Shinsei Bank would not constitute any violation of the automatic stay in US insolvency proceedings (Attached Materials 11 through 13).

More specifically, with respect to (i), there are three judicial precedents where, under the former [Japanese] Corporate Reorganization Law, [the decision as to] whether or not to carry out the subordinate handling of specific credit in a reorganization plan was disputed in an immediate *koukoku* (interlocutory) appeal authorizing such a plan: (Feb. 11, 1965 Tokyo Superior Court ruling (*Kaminshuu* [Lower Court Civil Cases] Vol. 16, No. 2, p. 240); Dec. 21, 1981 Fukuoka Superior Court ruling (*Hanji* [Judicial Precedent Report] No. 1046, p. 127); and Sept. 1, 1984 Nagoya Superior Court (Kanazawa Branch) ruling (*Hanji* [Judicial Precedent Report] No. 1142, p. 141). Credit not settled

- 4 -

by a credit investigation is, as a general rule, not mentioned in the reorganization plan, and due to the fact that according to the settlement in the ruling approving the reorganization plan, one is not held liable for credit not mentioned in the reorganization plan, it goes without saying that repayment is not made for debt involving credit not settled by a credit investigation. Therefore, because we consider these judicial precedents to assume that the specific credit, for which [the decision as to] whether or not to carry out the subordinate handling was made an issue, was settled through the process of credit investigation proceedings, it is legally permissible, even under the Civil Rehabilitation Law (Article 155, Paragraph 1 through Article 174, Paragraph 2, Item 1; Article 175; Article 178) that sets forth the same provisions as the former Corporate Reorganization Law (Article 229 through Article 233, Paragraph 1, Item 1; Article 237; Article 241), to use the rehabilitation plan to insist on the subordinate handling of credit settled through the process of credit investigation proceedings.

Moreover, regarding (ii), Shinsei Bank has, in the Rehabilitation Proceedings, merely submitted a rehabilitation plan that includes the subordinate handling of distribution and has not sought any payment by LBHI. Shinsei Bank has not made any demand whatsoever for the active performance of monetary payments and, on the contrary, has made nothing more than a defensive contention that the rehabilitation credit of LBHI et al., should be treated as less advantageous than the other capital in the rehabilitation plan on the grounds of undercapitalization. Furthermore, once the rehabilitation plan made by the rehabilitation debtor and rehabilitation creditor is submitted, the court will confirm that it meets the necessary conditions for approval and will then determine that it is to be subjected to a vote (not approving any *koukoku* appeal). Because the rehabilitation plan, once the court decides to subject to a vote, is subjected to the creditors' vote and is then approved or rejected by a majority of votes, the act of submitting a rehabilitation plan constitutes nothing more than a proposal to all creditors of an amendment of rights and a request for their agreement to such rehabilitation plan. Therefore, this case also does not fall under the structure of opposing parties, wherein the party that proposes the rehabilitation plan and the specific interested parties are at odds with each other.

Accordingly, the US Motion made by LBHI consequently lacks grounds.

(4) Counterarguments by Other Creditors

Out of concern about the major impact that the allegations made by LBHI et al. would have on the Lehman Brothers Group insolvency proceedings being carried out in various countries in the event that they are approved, creditors outside the US have also given their counterarguments. Below we have provided explanations on the counterarguments by the British Joint Administrator and the Barclays Bank, and we have also found counterarguments from three other creditors outside the US.

a) Counterargument by British Joint Administrators (Attached Materials 5 and 6, Paragraphs 7 and Paragraph 10; Attached Reference 13)

The British Joint Administrators oversee the property management business for insolvency proceedings in England (and various other countries) for Lehman Europe and their group of subsidiaries. Insolvent companies under their management include not only LBHI and its subsidiaries as insolvent creditors but also hypothetically include the creditors of LBHI as insolvent creditors (and possibly insolvent companies, in the case where the British General Administrator manages the other creditors for the insolvent companies with respect to which LBHI is a creditor).

The British Joint Administrators have expressed strong concerns that the allegations in the US Motion made by LBHI mean that applicable creditors would be divested by LBHI creditors of their rights under the applicable laws of foreign country in insolvency proceedings outside the US, so the allegations made by LBHI should not be accepted because the approval of such allegations would have the effect of discontinuing the progress of all insolvency proceedings outside the US until LBHI has completed the recovery of its credit and the foundation has finished distributing it.

They then respond that, while Japanese law (Article 163, Paragraph 2 of the Civil Rehabilitation Law) regards the rehabilitation creditors as being granted the right to submit a rehabilitation plan in rehabilitation proceedings, LBHI is using the automatic stay system in the US insolvency proceedings as a means to circumvent the application of the applicable laws of foreign country in insolvency proceedings outside the US; therefore, the allegations made by LBHI constitute the use of the automatic stay system as a means for circumventing the application of Japanese law (Article 163, Paragraph 2 of the Civil Rehabilitation Law) and are thus impermissible.

b) Counterargument by Barclays Bank et al. (Attached Materials 7 and 8, Paragraph 1, Paragraph 2, Paragraph 6, and Paragraph 7)

Barclays Bank et al. and its affiliates are creditors of LBHI and are also creditors in the bankruptcy proceedings for the Lehman Brothers Group outside the United States.

Barclays Bank et al. are concerned that the approval of the US Motion will, during the period until the LBHI insolvency proceedings end, have an atrophying effect on the actions taken by the creditors in jurisdictions of insolvency proceedings outside the US to recover credit from the companies belonging to the Lehman Brothers Group. They have stated that, following the logic of the allegations made by LBHI, merely the act of reporting credit in insolvency proceedings outside the US could possibly reduce the amount of the LBHI credit recovered, thus making it possible for them to be deemed automatic stay violations.

Consequently, regarding the automatic stay in the US insolvency proceedings, they have stated, citing judicial precedents, that even if the actions of creditors who participate in insolvency proceedings outside the US by opposing the credit being alleged by LBHI et al. or demanding subordinate handling of the same, in accordance with the procedures and laws of said jurisdiction as a defensive action to protect their own credit, have the effect of reducing the amount of the LBHI credit recovered, this would clearly not constitute any violation of the automatic stay.

3. Progress of Proceedings

The progress of the proceedings for the US Motion is as follows:

| | |
|---|---|
| August 11: | US Motion made by LBHI in this case (Attached Materials 1 and 2) |
| August 21: | Counterargument submitted by Shinsei Bank (Attached Materials 3 and 4) |
| August 21: | Counterargument submitted by British Joint Administrators (Attached Materials 5 and 6) |
| August 21: | Counterargument submitted by Barclays Bank et al. (Attached Materials 7 and 8) |
| August 26: | Informal Examination by Judge (Attached Material 9) |
| September 17: | Counterargument by Shinsei Bank (Attached Material 10), declaration by Isomi Suzuki (Attached Material 11), and opinion submitted by Prof. Jun'ichi Matsushita (Attached Material 12) |

4. Future Outlook, and Impact on Insolvency Proceedings Held in Japan

The main issues in this US Motion, as described above, are: (1) whether or not the insistence on the use of the rehabilitation plan for the subordinate handling of the rehabilitation credit of LBHI et al. settled in the process of the credit investigation proceedings in the Japan rehabilitation proceedings is permissible by Japanese law; and (2) whether or not, in the rehabilitation proceedings in Japan, the submission by the creditors of a rehabilitation plan that includes the subordinate handling of rehabilitation credit owned by other creditors can be viewed as a defensive procedure used against the litigious claims filed by said other creditors.

If the US motion is approved, then the Japanese creditors, even if they attempt to exercise their rights as disclosed in the domestic insolvency law vis-à-vis the creditors present in Japan, will, in many cases, be obliged to pay careful attention as to whether or not this action is defensive from the standpoint of US insolvency law, which is not the governing law, in the event that future international insolvency proceedings involving Japan and the US occur, to say nothing of the Rehabilitation Proceedings of this case. By extension, this might even infringe on the independence of domestic insolvency law.

Furthermore, although the US Motion by LBHI is made directly against Shinsei Bank, if approved, it will entail risk of obstructing the exercise by creditors of various rights as disclosed in the insolvency law of various countries outside Japan, not only for Shinsei Bank but also in insolvency proceedings outside the US that are currently being carried out concerning the Lehman Brothers Group, and moreover in international insolvency proceedings involving various countries, including the US and Japan, which are expected to occur increasingly hereafter. Therefore, we consider this to be a matter of major concern.

At the current point in time, Shinsei Bank is, naturally, making its counterarguments in earnest, with confidence that the motion by LBHI will not be approved, and the interested parties, including judicial institutions (administrators) outside Japan who have serious concerns about falling into a similar predicament, are now placing their reputations on the line as they make counterarguments regarding the above situation.

Following the submission of our counterargument on September 17, it remains to be seen whether the US Bankruptcy Court will immediately issue a dismissal ruling or if further proceedings will continue, but we humbly ask that your office and the Supervisor understand our situation. We also ardently request your proper handling of this matter so

that the reliability of the judicial proceedings and the stability of the insolvency proceedings, which are the very basis of the viability of not only civil rehabilitation law but also domestic insolvency law, be protected, and so that the independence and authority of the Japanese court is not infringed upon.

End

(Attached Documents)

1. DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY

2. Japanese translation of the above-mentioned "Debtors' Motion Pursuant to Article 105(a) and Article 362 of the Bankruptcy Code for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt for Violating the Automatic Stay"

3. RESPONSE AND OBJECTION OF SHINSEI BANK, LIMITED TO MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY

4. Japanese translation of the above-mentioned "Response and Objection of Shinsei Bank, Limited to the Debtors' Motion Pursuant to Article 105(a) and Article 362 of the Bankruptcy Code for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt for Violating the Automatic Stay"

5. OBJECTION OF THE JOINT ADMINISTRATORS OF THE LEHMAN EUROPEAN GROUP ADMINISTRATION COMPANIES TO THE DEBTORS' MOTION PURSUANT TO SECTIONS 105(A) AND 362 OF

|  |  |
|---|---|
|  | THE BANKRUPTCY CODE FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING SHINSEI BANK IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY |
| 6 | Japanese translation of the above-mentioned "Objection of the Joint Administrators of the Lehman European Group Administration Companies to the Debtors' Motion Pursuant to Article 105(a) and Article 362 of the Bankruptcy Code for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt for Violating the Automatic Stay" |
| 7 | RESPONSE OF BARCLAYS BANK PLC AND BARCLAYS CAPITAL INC. TO DEBTORS' MOTION FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING SHINSEI BANK IN CONTEMPT |
| 8 | Japanese translation of the above-mentioned "Counterargument of Barclays Bank PLC and Barclays Capital Inc. against Debtors' Motion for an Order Enforcing the Automatic Stay and Holding Shinsei Bank in Contempt" |
| 9 | Minutes of the Informal Examination by Judge (excerpted) |
| 10 | DECLARATION OF ISOMI SUZUKI AND SUR-REPLY OF SHINSEI BANK TO DEBTORS' MOTION FOR AN ORDER ENFORCING THE AUTOMATIC STAY AND HOLDING SHINSEI BANK IN CONTEMPT |
| 11 | Declaration of Isomi Suzuki (Opinion (in English) of Prof. Jun'ichi Matsushita attached) |
| 12 | Opinion of Prof. Jun'ichi Matsushita (in Japanese) |
| 13 | Summarized Counterargument of the Joint Administrators of the Lehman European Group of Administration Companies (graphic representation) |