# EXHIBIT A

**FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP**
One New York Plaza
New York, NY 10004
212-859-8000
Stephanie Goldstein, Esq.
Brian Pfeiffer, Esq.
*Counsel for HWA 555 Owners, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS INC.,<br><br>                Debtor. | Case No. 08-01420 (JMP) SIPA |
| HWA 555 OWNERS, LLC,<br><br>           Plaintiff,<br><br>       - against -<br><br>LEHMAN BROTHERS INC.,<br><br>               Defendant. | Adv. Proc. No. 09-1160 (JMP) |

**HWA 555 OWNERS, LLC's MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION BY JAMES W. GIDDENS AS TRUSTEE FOR THE SIPA LIQUIDATION OF
LEHMAN BROTHERS INC. TO DISMISS THE ADVERSARY COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................3

ARGUMENT............................................................................................................................7

POINT I THE TRUSTEE ASSUMED THE LEASE ON THE CLOSING DATE ...........7

    **A.**    No "Standalone" Motion Was Required for the Assumption......................7

    **B.**    The Trustee Ignores Clear and Unequivocal Provisions of the Sale Order and the Purchase Agreement ...........................................................13

    **C.**    The Order Did Not Grant the Trustee a Free Option to Assume the Lease if It Chose to Do So .......................................................................17

POINT II THE TRUSTEE'S STANDING ARGUMENT MISSES THE POINT............20

POINT III BARCLAYS' PURPORTED WAIVER IS INEFFECTIVE...........................22

CONCLUSION.......................................................................................................................23

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Alberts v. Humana Health Plan Inc. (In re Greater Southeast Cmty. Hosp.),
327 B.R. 26 (Bankr. D.C. 2005) ..........................................................................12 n.7, 14

In re Bricker Sys., Inc.,
44 B.R. 952 (Bankr. E.D. Wis. 1984) ..................................................................17 n.10

In re Casual Male Corp.,
120 B.R. 256 (Bankr. D. Mass. 1990) ..................................................................13

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002) ..................................................................................21 n.12

Charter Asset Corp. v. Victory Mkts., Inc. (In re Victory Mkts., Inc.),
221 B.R. 298 (B.A.P. 2d Cir. 1998) ..................................................................12, 14, 18

In re Child World,
147 B.R. 847 (Bankr. S.D.N.Y. 1992) ..................................................................7 n.5

In re Cole,
189 B.R. 40 (Bankr. S.D.N.Y 1995) ..................................................................12, 13

The Compak Cos., LLC v. Johnson,
Case Nos. 03-7427, 08-4665, 2009 WL 1543683 (N.D. Ill. June 1, 2009) ................................8, 13

In re Crystal Apparel Inc.,
220 B.R. 816 (Bankr. S.D.N.Y. 1998) ..................................................................7 n.5

DKR Capital, Inc. v. AIG Int'l W. Broadway Fund, Ltd.,
2003 U.S. Dist. LEXIS 17498 (S.D.N.Y. Oct. 1, 2003) ..........................................19 n.11

In re Dehon, Inc.,
352 B.R. 546 (Bankr. D. Mass. 2006) ..................................................................12, 13

In re Delta Airlines, Inc.,
381 B.R. 57 (Bankr. S.D.N.Y. 2008), aff'd, 2008 WL 4444001 (S.D.N.Y. Sept. 29, 2008) ....10, 18

Dent v. Assocs. Fin. Servs. Of Am., Inc. (In re Dent),
137 B.R. 78 (Bankr. S.D. Ga. 1992) ..................................................................20

In re Enron Corp.,
300 B.R. 20 (Bankr. S.D.N.Y 2003) ..................................................................7 n.5

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp. (In Enron Corp.),
367 B.R. 384 (Bankr. S.D.N.Y. 2007) ...................................................................................19 n.11

In re Federated Dep't Stores, Inc.,
135 B.R. 941 (Bankr. S.D. Ohio 1991) ..................................................................................17 n.10

Int'l Multifoods Corp. v. Commercial Union Ins. Co.,
309 F.3d 76 (2d Cir. 2002) ............................................................................................................11

Israel v. Chabra,
418 F. Supp. 2d 509 (S.D.N.Y. 2006) ..........................................................................................18

L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.),
209 F.3d 291 (3d Cir. 2000) ...................................................................................................17 n.10

Lindsey v. Dep't of Labor (In re Harris Mgmt. Co.),
791 F.2d 1412 (9th Cir. 1986) ................................................................................................13 n.8

In re Metromedia Fiber Network, Inc.,
335 B.R. 41 (Bankr. S.D.N.Y. 2005), aff'd, 2007 WL 636602 (S.D.N.Y. Feb. 27, 2007).10, 11, 16

Musso v. Brooklyn Navy Yard Dev. Corp. (In re Westchester Tank Fabricators),
207 B.R. 391 (Bankr. E.D.N.Y. 1997) ...........................................................................................22

In re Samir B. Tleel,
876 F.2d 769 (9th Cir. 1989) ...........................................................................................................8

Scholastic, Inc. v. Harris,
259 F.3d 73 (2d Cir. 2001) ...........................................................................................................11

S. St. Seaport Ltd. P'shp. V. Burger Boys (In re Burger Boys),
94 F. 3d 755 (2d Cir. 1996) .......................................................................................................6, 7

In re Specialty Foods of Pittsburgh,
91 B.R. 364 (Bankr. W.D. Pa. 1988).....................................................................................8, 13 n.8

In re Steve & Barry's Manhattan LLC,
Case No. 08-12579 (ALG), Dkt. No. 628 (Bankr. S.D.N.Y. Aug. 22, 2008) ..............................7, 8

Stroll v. Epstein,
818 F. Supp. 640 (S.D.N.Y. 1993) ................................................................................................18

Stumpf v. McGee (In re O'Connor),
258 F.3d 392 (5th Cir. 2001) ...................................................................................................12, 13

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

United States v. Spallone,
399 F.3d 415 (2d Cir. 2005) ........................................................................................19

WorldClass  Processing, Inc. v. AT&T Capital Corp. (In re WorldClass Processing, Inc.),
346 B.R. 132 (Bankr. W.D. Pa. 2006)..........................................................................20

Zacherl v. Zacherl Coal Co. (In re Zacherl Coal Co.),
14 B.R. 1001 (Bankr. W.D. Pa. 1981)............................................................................8

## STATE CASES

Lawyers' Fund for Client Prot. v. Bank Leumi Trust Co.,
94 N.Y.2d 398 (N.Y. 2000)..........................................................................................11

Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC,
818 N.Y.S.2d 513 (1st Dep't 2006)..............................................................................15

Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.,
831 N.Y.S.2d 357 (1st Dep't 2006)..............................................................................15

## STATUTES

Fed. R. Bankr. P. 6006(f) ...............................................................................................7

11 U.S.C. 365(d)(4)........................................................................................................6

11 U.S.C. 365(g)(2)......................................................................................................23

11 U.S.C. 503(b)(7)......................................................................................................23

## OTHER AUTHORITIES

46 Am. Jur. 2d Judgment § 93 (West 2004)................................................................19

Plaintiff HWA 555 Owners, LLC ("HWA") submits this memorandum of law in opposition to the Memorandum of Law of James W. Giddens, as Trustee (the "Trustee") for the SIPA Liquidation of Lehman Brothers Inc. ("LBI") in Support of His Motion to Dismiss the Adversary Complaint (cited herein as "LBI Mem.").

## PRELIMINARY STATEMENT

In the opening days of these SIPA proceedings, LBI, and its parent, Lehman Brothers Holdings Inc. ("LBHI"), urged this Court to promptly approve the sale of substantially all of LBI's assets to Barclays Capital Inc. ("Barclays") to ensure that LBI's operations did not wither, with all the attendant disruption that would have unleashed on the financial markets generally and LBI's various constituencies specifically.  Barclays, of course, which was immediately taking over a sophisticated financial business, needed to guarantee that it would be able to seamlessly transition into the operation of LBI's businesses, and accordingly it required, among a multitude of other things not relevant here, space in which to operate.

To that end, LBI made sure that Barclays had space, including with respect to the premises at 555 California Street in San Francisco that LBI leased from HWA, i.e., the Lease. Thus, LBI — at its own volition and to achieve its stated purposes — clearly, unequivocally and thus unambiguously agreed to assume the Lease in connection with the Barclays' deal, and provided notice to HWA to that end.  Before the deal was consummated, LBI never wavered from its stated commitment to assume the Lease —— the only issue was whether LBI would assume the Lease and then assign it to Barclays (as originally envisioned) or assume the Lease for the benefit of the Estate and accommodate Barclays needs by subleasing a portion of the premises to Barclays (as ultimately provided).  Prior to finalization of the sale to Barclays, the LBI Trustee never withdrew his request to assume the Lease, the LBI Trustee never gave notice

1

of withdrawal of his request to assume the Lease, and when the LBI Trustee and LBHI

consummated the purchase transaction by order of this Court, the Lease was assumed.  Armed

with the right to sublet under the assumed Lease, Barclays obtained what it bargained for —

maximum flexibility with respect to the premises covered by the Lease.

Having assumed the Lease for the benefit of itself and Barclays (and Barclays having

obtained the benefits and use of the premises), the LBI Trustee now asks this Court to disregard

its unambiguous assumption of the Lease so that it can be relieved of the consequences of that

assumption.  But in so doing, the Trustee, unable to claim any mistake with respect to its

assumption of the Lease, instead attempts to renege on its assumption by distorting the law and

the facts.  For instance, the Trustee now contends that the Lease could only be assumed if he

made a standalone motion.  But there is absolutely no legal or factual support for that notion, and

the Trustee provides none.  There is no question that the Trustee filed a motion that sought

approval of all of the terms of the transaction documents, which included those relating to the

unconditional assumption of the Lease.  Under these circumstances — and without any

complaint from HWA about the notice it received — the Trustee's effort to unwind its

assumption is entirely cynical.

Nor is there any merit in the Trustee's attempt to discern, in the language of the operative

contracts, a lack of intention to assume the Lease.  In so doing, the Trustee contorts the relevant

words in a way that violates nearly every principle of contract construction — depriving ordinary

words of their meaning and nullifying provisions of the operative documents.  The Trustee

unambiguously assumed the Lease and may not now, without claiming any confusion about the

words it chose to do so, engage in revisionism.  The Trustee's motion is a blatant attempt at

avoiding LBI's obligations and should be denied.

2

Nonetheless, insofar as any doubt may exist as to whether the Trustee intended to assume the Lease (and there should be none based on the plain language of the operative documents), the appropriate course would be for the parties to proceed to discovery, not for the Court to dismiss the Complaint.

## BACKGROUND

1.    On or about April 19, 1994, LBI entered into a certain lease agreement (the "Lease") for 60,766 square feet of commercial office space located in San Francisco, California.  HWA is successor-in-interest to the landlord.  Complaint ¶¶ 8, 9.

2.    On September 16, 2008, the day after LBHI, LBI's parent, commenced the chapter 11 proceedings, LBHI, LBI and LB 745[1] (together, the "Sellers") entered into the Sale and Assumption Agreement with Barclays.  Complaint ¶ 12.  Pursuant to the Sale and Assumption Agreement, Barclays, among other things, agreed to acquire substantially all of LBI's assets.[2]  Complaint ¶ 12.  The Sale and Assumption Agreement was amended and clarified by written instrument on September 19, 2008, and by the Clarification Letter on September 20, 2008 (together, with the Sale and Assumption Agreement, the "Purchase Agreement").  Complaint ¶ 12.

3.    The Purchase Agreement provided for the assumption and, in some cases, assignment, of certain executory contracts and leases of LBI and LBHI.  LBI initially planned to

---

[1]    All capitalized terms not defined herein shall have the meaning attributed to them in the Complaint unless otherwise provided.

[2]    The Purchase Agreement provides that any amendment or waiver of one of its provisions must be by written instrument "signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought."  Sale and Assumption Agreement, § 13.5; LBI Mem. ¶ 4.

assume the Lease and assign it to Barclays.  Complaint ¶ 13.  Thereafter, LBI continued to state

that it would assume the Lease, providing in the Clarification Letter that, "[n]otwithstanding

anything to the contrary" in the Sale and Assumption Agreement "on the Closing Date … [the

Lease] shall be assumed by Seller in connection with the bankruptcy proceedings."[3]

Clarification Letter ¶ 16(a); Complaint ¶ 13.  However, instead of assigning the Lease to

Barclays as originally contemplated, LBI committed to enter into a sublease with Barclays for a

portion of the premises.  Complaint ¶ 13.

        4.      LBHI and LBI sought, and ultimately obtained, this Court's approval of

the Purchase Agreement.  Specifically, on September 17, 2008, LBHI (and its affiliated debtors)

filed the Sale and Assumption Motion, seeking authorization to consummate the Purchase

Agreement, which is attached as an exhibit to the Sale and Assumption Motion.  Sale and

Assumption Motion ¶ 5, Ex. 4; Complaint ¶ 16.  Two days later, the Trustee filed an Application

for Entry of an Order Approving, and Incorporating by Reference, for the Purposes of [the SIPA]

Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman

Brothers Holdings, Inc. Chapter 11 Proceeding (the "Application").  Complaint ¶ 16.  In his

Application, and as supported in his accompanying declaration, the Trustee stated that "he has

determined" that the transaction "was in the best interests of LBI's customers, creditors and the

general estate."  Application ¶ 2; Declaration of James W. Giddens, Trustee dated September 19,

2008 ("Based on the foregoing and in consultation with my professional advisors, I have

determined that the [Purchase Agreement] is in the best interests of LBI's customers, creditors

and the general estate.").

---

[3]        All emphasis added throughout, unless otherwise stated.

5.      Having thus filed their motion seeking approval of the Purchase

Transaction, including the assumption of the Lease, the Sellers, together with Barclays,

submitted to the Court a proposed form of order approving the Purchase Transaction.  Complaint

¶ 17.  After holding hearings on the transaction, on September 20, 2008, this Court entered an

order in the Chapter 11 and the SIPA proceedings (the "Order") approving the Purchase

Transaction as contemplated by the Purchase Agreement.  Complaint ¶ 17.  The Order provides

that:

> The Debtors are hereby <u>authorized and directed to</u> (1) execute the
> Purchase Agreement, along with any additional instruments or
> documents that may be reasonably necessary or appropriate to
> implement the Purchase Agreement . . . (2) <u>consummate the Sale in
> accordance with the terms and conditions of the Purchase
> Agreement</u> and the other agreements contemplated thereby; and (3)
> take all other and further actions as may be reasonably necessary to
> implement the transactions contemplated by the Purchase
> Agreement.

Order ¶ 3.

6.      The Sale and Assumption Motion, together with the Purchase Agreement,

provided, as the Court recognized that "due, proper, timely, adequate and sufficient notice of the

transactions set forth in the Purchase Agreement" was provided to all of the parties in interest,

including HWA, in accordance with the Bankruptcy Code.  Complaint ¶ 22; Order ¶ C.[4]

7.      The Court also determined, after holding a lengthy hearing, that:

(a)      "[g]ood and sufficient reasons for approval of the Purchase
Agreement and the Sale have been articulated, and the relief

---

[4]      The Trustee's contention that adequate notice was not provided, LBI Mem., ¶¶ 6, 9, is thus belied by the
Order.  Regardless, HWA's complaint does not raise any issue as to the adequacy of notice.

5

requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest." Order ¶ H.

(b)     "[t]he Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale." Id. ¶ I.

(c)     "Entry of an order approving the Purchase Agreement <u>and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions</u> set forth in the Purchase Agreement." Id.

8.      The Purchase Transaction closed on September 22, 2008.  In accordance with the Sale and Assumption Motion and as directed by this Court's Order, LBI assumed the Lease effective on the Closing Date.  Complaint ¶¶ 22-24.

9.      Following entry of the Order, the Trustee has allowed Barclays to occupy a portion of the Premises, despite the fact that it does not appear that LBI ever entered into a sublease with Barclays as contemplated by the Purchase Agreement.  Complaint ¶ 25.

10.     On December 26, 2008, the Trustee moved for an order, pursuant to section 365(d)(4) of the Bankruptcy Code, extending LBI's time to assume or reject unexpired leases of nonresidential real property until April 17, 2009 (the "Extension Motion").  Complaint ¶ 26.  In response, on February 6, 2009, HWA objected to the Trustee's Extension Motion, asserting that, because assumption of the Lease had occurred on the Closing Date, the Trustee had no basis to extend the time for assuming the Lease.  Objection of HWA 555 Owners, LLC to Trustee's Motion for an Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (Docket No. 658).

11.    Following a hearing on February 11, 2009, the Court granted the

Extension Motion, explicitly reserving "any and all rights and remedies of [HWA] to seek a

determination that the Lease was already assumed."  Complaint ¶ 29; Extension Order ¶ 3.

## ARGUMENT

### POINT I
### THE TRUSTEE ASSUMED THE LEASE ON THE CLOSING DATE

*A.     No "Stand-Alone" Motion Was Required for Assumption of the Lease*

12.    As detailed supra ¶¶ 4-6, here, LBI filed a motion — the Sale and

Assumption Motion — seeking this Court's approval of the Purchase Agreement.  One of those

terms of that agreement unambiguously provided for, among other things, the assumption of the

Lease:  "[n]otwithstanding anything to the contrary . . . on the Closing Date . . . [the Lease] shall

be assumed by seller in connection with the bankruptcy proceedings."  The subsequent Order of

this Court gave approval to "[t]he Purchase Agreement and all of the terms and conditions

thereto" (Order ¶ 3), even those not specifically mentioned in the Order.  Order ¶ 27.  Indeed, the

Order plainly states that its entry, "approving the Purchase Agreement and all the provisions

thereof is a necessary condition precedent to the Purchaser's consummation of the transactions

set forth in the Purchase Agreement."  Order ¶ I.  Given that the Order thus unconditionally

authorized assumption of the Lease, no further formal motion or other action was required in

order for the Lease to be assumed on the Closing Date, and certainly no language suggests one

was contemplated by the Trustee at the time.

13.    Notwithstanding the Trustee's clear statements in the Purchase Agreement

providing for the assumption of the Lease and its subsequent motion seeking, and obtaining,

approval of the Purchase Agreement, the Trustee now contends that LBI did not assume the

Lease because it never made a standalone motion to do so.  LBI Mem. ¶¶ 18-22.  The Trustee's

contention has absolutely no support in law and is completely at odds with the Trustee's own

words.

14.    The Trustee cites a number of cases generally holding that a lease (or

executory contract) must be assumed by motion that provides the affected party notice and an

opportunity to be heard.  LBI Mem. ¶ 18 (citing <u>S. St. Seaport Ltd. P'shp. v. Burger Boys (In re</u>

<u>Burger Boys)</u>, 94 F.3d 755, 763 (2d Cir. 1996) ("assumption of a lease must be done, as

suggested by the Bankruptcy Rules, through a formal motion to the court" which necessitates

that "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall

be afforded the party against whom relief is sought").  But nothing in <u>Burger Boys</u> — or any of

the other cases the Trustee cites[5] — suggests in any way that a debtor must file a standalone

motion to effectuate the assumption of a lease.

15.    By way of example, in <u>Burger Boys</u>, the debtor contended that its filing of

an election to assume the lease sufficed, even though the court refused to hear the landlord's

objections to the assumption, particularly as to the tenant's default on the lease.  In that context,

the court held that a motion that gave appropriate notice and an opportunity the affected party to

be heard was necessary to assume a lease.  But the Second Circuit has never held that a

standalone motion must be made in order to effectuate the assumption of any given lease to

---

[5]    These cases are as follows:  <u>In re Enron Corp.</u>, 300 B.R. 20 (Bankr. S.D.N.Y 2003) (rejecting contention
that a debtor's continuation of an individual's employment resulted in assumption of his employment
agreement because a contract cannot be impliedly assumed); <u>In re Crystal Apparel Inc.</u>, 220 B.R. 816, 834
(Bankr. S.D.N.Y. 1998) ("court approval is required for assumption" and court's order authorizing
assumption and subsequent assignment relieved estate of any claim); <u>In re Child World</u>, 147 B.R. 847
(Bankr. S.D.N.Y. 1992) (holding that assumption of an employment contract cannot be implied from an
employee's continuation of employment).

satisfy the requirements of the Bankruptcy Code — let alone in factual circumstances like those here where the debtor actually makes a motion for approval of a transaction that, as one of its terms, provides for assumption of a lease.

16.     Nor is the Trustee's unprecedented position that a standalone motion is necessary for assumption of a particular lease consistent with accepted practice in this and other courts.  The Bankruptcy Rules explicitly permit, and accordingly debtors routinely file, omnibus motions seeking approval of the assumption of a multitude of executory contracts and unexpired leases.  See Bankruptcy Rule 6006(f) (permitting a motion to assume up to one hundred executory contracts or unexpired leases in a single omnibus motion); see also In re Filene's Basement, Inc., et al., Case No. 09-11525 (MFW), Dkt. No. 349 (Bankr.D. Del. June 17, 2009); In re Steve & Barry's Manhattan LLC, Case No. 08-12579 (ALG), Dkt. No. 628 (Bankr. S.D.N.Y. Aug. 22, 2008) (order approving the assumption of multiple leases in asset sale).

17.     And, in circumstances like those here, courts have recognized that one or more leases and/or executory contracts are appropriately assumed where transaction documents include language providing as such.  See In re Samir B. Tleel, 876 F.2d 769, 770-71 (9th Cir. 1989) (holding that the bankruptcy court's order authorizing the debtor to sell property operated as an assumption under section 365 of the Bankruptcy Code of a related land sales contract because (i) the debtor's notice and motion of intent to sell the property, which had been served on all parties in interest, provided reasonable notice of the assumption; and (ii) a hearing was held on the matter); The Compak Cos., LLC v. Johnson, Case Nos. 03-7427, 08-4665, 2009 WL 1543683, at * 8 (N.D. Ill. June 1, 2009) (holding that order approving asset purchase agreement providing for sale of assets being assumed and assigned by debtor effectuated an assumption of

the contract at issue because it was one of the assets identified on a list); <u>Zacherl v. Zacherl Coal</u> <u>Co. (In re Zacherl Coal Co.)</u>, 14 B.R. 1001, 1001-02 (Bankr. W.D. Pa. 1981) (holding under the Bankruptcy Act that a court's approval of a trustee's attempted sale of the debtor's assets, which included a lease of coal and mineral rights, effected an assumption of the lease even though the sale was not consummated); <u>see also In re Steve & Barry's Manhattan LLC</u>, Case No. 08-12579 (ALG); DKT. No. 628 C. (Banker S.D.N.Y. Aug. 22, 2008). These cases reflect the obvious point that requiring a separate motion in addition to a motion to sell would be duplicative and inefficient. <u>See In re Specialty Foods of Pittsburgh</u>, 91 B.R. 364, 376 (Bankr. W.D. Pa. 1988) (rejecting as "counterproductive" and an unnecessary duplication of effort by trustee and "overburdened" Bankruptcy Court requirement that trustee file separate motion in addition to motion to sell).

18.    Because no precedent holds that a standalone motion is necessary, the Trustee claims that the Order "contemplates that the assumption of leases not assumed and assigned to Barclays . . . would have to be done, consistent with Second Circuit law, through motion and separate Order of the Court which will be entered at a later date or dates." LBI Mem. ¶¶ 8, 23; Order ¶ T. The Trustee's statement, in the first place, misreads the very — <u>and</u> <u>only</u> — provision of the Order cited to support it, paragraph T, which on its face has nothing at all to do with any leases (whether just assumed, or assumed and assigned). Rather, that paragraph states that the "procedures with respect to assumption, assignment and cure <u>of the</u> <u>Contracts that are the subject of the Purchaser's designation rights</u> (the 'Designated Contracts') will be set forth in one or more separate orders of the Court which will be entered at a later date or dates." Order ¶ T. Lest there be any doubt that this provision is wholly inapplicable to leases,

section 2.5 of the Sale and Assumption Agreement, which describes Barclays' designation rights, provides: "[t]his Section will not apply to real property leases."

19.    Thus, contrary to the Trustee's contention, section 2.5 in no way evinces that a further motion would have to be filed for assumption of the Lease. Instead, these provisions plainly evidence that when the Debtors believed further orders would be necessary to effectuate provisions of the Purchase Agreement, they knew how to provide as such. Against this backdrop, the absence of any such provisions dealing with the Lease (or any other leases) speaks for itself. See Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc., 831 N.Y.S. 2d 357, 364 (1st Dep't 2006) ("[p]ursuant to New York law, when certain language is omitted from one provision but placed in other provisions, it is assumed that the omission was intentional"); Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC, 818 N.Y.S. 2d 513, 516 (1st Dep't 2006) (same).[6]

20.    Nor does the Purchase Agreement contain any other language suggesting that LBI intended to effectuate an assumption *only* through a standalone motion, and the Trustee's rationales why such a motion was needed are utterly lacking in merit. For instance, the Trustee asserts that it would have been absurd for LBI to assume the Lease in connection with the transaction because it would deprive the Trustee of the full statutory period for assuming or rejecting leases. LBI Mem. ¶ 24. But nothing requires a trustee to wait the full statutory period to assume or reject leases, and certainly no one forced the Trustee to deliberately include language in the Clarification Letter providing for assumption of the Lease. Clarification Letter ¶

---

[6]    Indeed, the Trustee's argument, if adopted, would lead to an absurd result. Whether a lease was assigned or not, the LBI estate was first required to assume the relevant lease. But, for purposes of assumption, the Code does not distinguish an assumption from an assumption and assignment.

16(b) (assuming the Lease); Sale and Assumption Agreement §§ 2.1, 2.3.  Had the Trustee

intended to obtain the benefit of the full statutory period, it could (and should) have left the

Lease off the list of leases affected by the transaction.

21.    Similarly, the Trustee's hypothesis that a trustee for a liquidating estate

has "no rationale" to assume a lease without a subsequent assignment, which the Trustee

characterizes as "inherently a far riskier proposition" than an assumption-and-assignment (LBI

Mem. ¶¶ 21, 24), ignores the words included in the Clarification Letter.[7]  But the rationale of a

mythical trustee is irrelevant here, where the only logical inference is that LBI's assumption of

the Lease had a clear motivation:  to keep HWA from putting the Premises on the market and to

provide Barclays with the ability to sublease the Premises, and accordingly operate the business

without unnecessary disruption.  Complaint ¶ 13.  Absent the Order, Barclays was not entitled to

use the premises to conduct the business it was acquiring.  Insofar as any doubt exists on this

point, discovery, not dismissal, is appropriate.

22.    Nor, even apart from the clear language used in the transaction documents,

can the Trustee had actually contemplated the filing of a standalone motion dealing exclusively

with the assumption of the Lease at the time of the transaction.  There was simply no time to file

---

[7]    The Trustee's hypothesis is also inconsistent with views expressed by courts, which have long recognized
that a debtor's assumption of a lease, even without its concomitant assignment, may promote a debtor to
maximize the value of the bankruptcy estate.  See In re Bricker Sys., Inc., 44 B.R. 952, 955 (Bankr. E.D.
Wis. 1984) (stating that, if a trustee had to immediately assign an assumed lease, it may "fail to maximize
[the lease's] potential value to the bankruptcy estate"); L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re
Rickel Home Ctrs., Inc.), 209 F.3d 291, 299 (3d Cir. 2000) ("Having assumed an executory contract or
unexpired lease, the trustee may elect to assign it" . . . . as the Bankruptcy Code "generally favors free
assignability as a means to maximize the value of the debtor's estate."); In re Federated Dep't Stores, Inc.,
135 B.R. 941, 945 (Bankr. S.D. Ohio 1991) ("[A]n assumed contract may be assigned at a later date.").

another motion in addition to the Sale and Assumption Motion, which contemplated the approval

of numerous transactions, many of which were finalized only hours before the Closing Date.

**B.      The Trustee Ignores Clear and Unequivocal Provisions of the Sale Order and
the Purchase Agreement**

23.      Tacitly recognizing that a standalone motion is not required to effectuate

an assumption of a lease, the Trustee alternatively claims that the Sale Order does not contain

language directing the assumption of the Lease.  LBI Mem. ¶ 22.  Specifically, the Trustee

characterizes the authorizing provisions of paragraph 3 of the Sale Order as "catchall" and

"boilerplate."  But, in so doing, the Trustee attempts to vitiate the terms of the Sale Order.

24.      Paragraph 3 of the Sale Order explicitly provides that:

> The Purchase Agreement and all of the terms and conditions
> thereto are hereby approved.  The Debtors are hereby authorized
> and directed to (1) execute the Purchase Agreement, along with
> any additional instruments or documents that may be reasonably
> necessary or appropriate to implement the Purchase Agreement . . .
> (2) consummate the Sale in accordance with the terms and
> conditions of the Purchase Agreement and the other agreements
> contemplated thereby; and (3) take all other and further actions as
> may be reasonably necessary to implement the transactions
> contemplated by the Purchase Agreement.

Order ¶ 3.  True, as the Trustee asserts, paragraph 3 does not specifically mention the Lease.

LBI Mem. ¶ 22.  But, that provision also does not mention a single other asset or liability that is

the subject of the Purchase Agreement.

25.      Words have meaning, and the most basic canons of construction require

that words be given effect.  E.g., In re Delta Airlines, Inc., 381 B.R. 57, 75 (Bankr. S.D.N.Y.

2008) ("Courts are not at liberty to nullify contract provisions in the guise of 'interpretation,' but

must construe the words used by the parties in a manner that will give meaning and effect to all

13

contract provisions.") (citations omitted), aff'd, 2008 WL 4444001 (S.D.N.Y. Sept. 29, 2008); In

re Metromedia Fiber Network, Inc., 335 B.R. 41, 53 (Bankr. S.D.N.Y. 2005) ("Under New York

law, agreements must be read so as to give all terms meaning."), aff'd 2007 WL 636602

(S.D.N.Y. Feb. 27, 2007).  The Trustee's argument that the Court's approval of all "the terms

and conditions of the Purchase Agreement" somehow did not effectuate assumption of the Lease

nullifies this provision and paragraph 16(a) of the Clarification Letter contravenes this maxim.

26.     Even if there was a shred of doubt about whether the authorizing

provisions of the Purchase Agreement resulted in an assumption of the Lease, the Order clears it

up:

> The <u>failure specifically to include any particular provisions of the
> Purchase Agreement in this Order shall not diminish or impair the
> effectiveness of such provisions,</u> it being the intent of the Court
> that the Purchase Agreement be authorized and approved in its
> entirety[.]

Order ¶ 27.  The Trustee's interpretation of the Order, if adopted, would impermissibly render

this provision a complete nullity.  See Scholastic, Inc. v. Harris, 259 F.3d 73, 83 (2d Cir. 2001)

("In determining whether a contract is ambiguous, a court must look at 'the entire integrated

agreement,' to 'safeguard against adopting an interpretation that would render any individual

provision superfluous.'") (citation omitted).  See also Int'l Multifoods Corp. v. Commercial

Union Ins. Co., 309 F.3d 76, 86 (2d Cir. 2002) ( "We disfavor contract interpretations that render

provisions of a contract superfluous.").[8]  In short, the Trustee does not have the option to pick

and choose after the fact which terms of the Purchase Agreement to comply with.

---

[8]     In that regard, the fact that a section of the Order specifically deals with the procedures for dealing with
objections to any contracts that would be assumed and assigned to Barclays, as the Trustee contends (LBI
Mem. ¶ 22), is irrelevant.

27.    Nor can the Trustee dismiss the authorizing provisions of the Sale Order as legally ineffective "boilerplate."  LBI Mem. ¶ 22 & n.12.  Even if the cases LBI cites were factually on point (and they are not, <u>see infra</u> ¶ 28), the Second Circuit rejects the very notion that provisions in legal documents can be disregarded on grounds the words constitute boilerplate:

> But even if the operative provisions were to be considered boilerplate, we cannot accept the contention that language of that character is to be disregarded. . . .We prefer to presume that the language of legal instruments is deliberately selected, not as filler, but because its words convey a desired idea.  At no time should the source of language affect its efficacy.  Rather, each word is to receive its customary meaning and natural interpretation, whether inserted as boilerplate or by particularized design.

See <u>Charter Asset Corp. v. Victory Mkts., Inc. (In re Victory Mkts., Inc.)</u>, 221 B.R. 298, 304 (B.A.P. 2d Cir. 1998).

28.    Boilerplate or not, the language that was at issue in the cases cited by the Trustee is nothing like the words used here.  For instance, in <u>In re Cole</u>, 189 B.R. 40, 46-47 (Bankr. S.D.N.Y 1995), the court held that a plan of reorganization that included a provision requiring the assumption of executory contracts, but which did not mention the assumption of leases, did not effectuate an assumption of a lease, in large part because section 365 of the Bankruptcy Code distinguishes between executory contracts and leases.  Likewise, in the two other cases relied upon by the Trustee, the provisions of the operative documents dealing with assumption of contracts never mentioned the contracts in dispute.  See <u>In re Dehon, Inc.</u>, 352 B.R. 546, 563-65 (Bankr. D. Mass. 2006) (holding that contracts which were never designated in a sale motion or related agreement to be assumed were not assumed); <u>Stumpf v. McGee (In re O'Connor)</u>, 258 F.3d 392 (5th Cir. 2001) (concluding in dicta that an agreement was not

assumed pursuant to a reorganization plan because it was not referenced in the Disclosure Statement or Reorganization Plan, and the Plan provided only that executory contracts not rejected "will be assumed" which implied more than plan confirmation).[9]

29.    Cole, Stumpf and Dehon are factually inapposite here.  The Purchase Agreement expressly provides that "on the Closing Date . . . the underlying lease affecting the SF Property shall be assumed by Seller in connection with the bankruptcy proceedings," Clarification Letter ¶ 16(a), and, in turn, the Order requires consummation of the "terms and conditions of the Purchase Agreement."  Order ¶ 3.  Where, as here, specific mention is made of a contract or lease for assumption, courts routinely find that an assumption occurred.  See Compak Cos., 2009 WL 1543683, at *7 (sale order referring generally to asset purchase agreement that specifically identified assets effected assumption); see also infra ¶ 30.[10]

30.    The Trustee's efforts to limit the authorizing provisions of the Order, by claiming they are inconsistent with the modification provisions contained in paragraph 25, are meritless.  The Trustee claims that, to permit the Order to effect an assumption of the Lease, would "vitiate[] the notice, motion, order and hearing requirements of the Bankruptcy Rules,"

---

[9]    Nor does a plan document have to specifically mention a contract or lease to effectuate its assumption where unambiguous general language demonstrates as such.  For instance, in Alberts v. Humana Health Plan Inc. (In re Greater Southeast Community Hospital), 327 B.R. 26 (Bankr. D.C. 2005), the court held that, even though a plan did not specifically mention a particular contract, because the plan provided that any executory contract that was not identified for rejection would "be deemed assumed and retained by the" debtor, the failure to identify a contract for rejection meant that it had been assumed.

[10]    Against this backdrop, the Trustee's suggestion that the court divine the meaning of the Order solely from its title is of no moment (LBI Mem. ¶ 20), and, in any event, is a tactic that courts reject as form over substance.  See Lindsey v. Dep't of Labor (In re Harris Mgmt. Co.), 791 F.2d 1412, 1414 (9th Cir. 1986) ("That the stipulation was not formally labeled 'assumption of contract' does not detract from the substance of the underlying agreement."); In re Specialty Foods, 91 B.R. at 377 (finding that an assumption was effective despite the fact that the Trustee did not file a separate motion to assume or use the word "assume" in his motion).

because the Order authorized and approved the transaction as contemplated in the Purchase

Agreement "as it may be subsequently modified, amended or clarified."  LBI Mem. ¶ 22; Order ¶

25.  This is a red herring.  The Order only permits <u>non-material</u> changes to the terms of the

Purchase Agreement.  Order ¶¶ 3, 25.  How any immaterial modification can "vitiate" the lease

assumption process — although not, it seems, the assumption-and-assignment process — is hard

to conceive.  In any event, courts have repeatedly held that assumption language operates to

effectuate an assumption even when such assumption is contingent on certain conditions being

met at some future date.  <u>See</u> <u>In re Victory Mkts.</u>, 221 B.R. at 304  (order authorizing the

assumption and assignment of a lease, which was conditioned on prior environmental due

diligence and cure conditions, had authorized such assumption even though the lease was

ultimately rejected because the underlying conditions were never met); <u>In re Greater Southeast</u>

<u>Cmty. Hosp.</u>, 327 B.R. at 35 (plan stating that executory contracts not expressly rejected "will be

deemed assumed," subject to a retained right of rejection by the debtor if the cure amounts were

unacceptable to it, constituted assumption of such executory contracts).

### C.    *The Order Did Not Grant the Trustee a Free Option to Assume the Lease if He Chose to Do So*

31.    Given the clear and unequivocal language of the Purchase Agreement, the

Trustee searches in vain for some language or legal maxim that would entitle it to abrogate its

prior assumption of the Lease.  Most pointedly in that regard, the Trustee now imagines that, at

most, the Order just granted LBI an option to assume the Lease at some later point if it chose to

do so, and that the Order did not direct it to do anything.  LBI Mem. ¶¶ 23-24.  The Trustee's

effort, which mostly involves torturing otherwise plain language, is in vain.  <u>See</u> <u>In re Casual</u>

Male Corp., 120 B.R. 256, 260 (Bankr. D. Mass. 1990) (rejecting "torturing" of statutory

provision to read "assume" as meaning "the filing of a motion to assume").

       32.    The Clarification Letter plainly states that "on the Closing Date . . . [the

Lease] shall be assumed by [LBI] in connection with the bankruptcy proceedings."  "Shall" is

not a permissive term, but rather means "must" and is "used in laws, regulations or directives to

express what is mandatory."  Merriam Webster; see also In re Metromedia Fiber Network, Inc.,

335 B.R. 41, 55 (Bankr. S.D.N.Y. 2005) (holding that the term "shall" in a contract provision

means that the act required is mandatory).  The Trustee's effort to impose conditionality on its

assumption, claiming that the Clarification Letter only provided authorization for the Trustee to

move to assume the Lease if it entered into a sublease with Barclays (LBI Mem. ¶ 24, is not

supported by the actual words of the Clarification Letter, which do not couple the assumption

with a sublease.

       33.    The Clarification Letter contains no language (nor does the Purchase

Agreement) suggesting that the assumption of the Lease was contingent on Barclays and LBI

entering into a sublease for the space.  Rather, a separate provision of the Clarification Letter,

paragraph 16(b)(i) dealt with subleases, whether in respect of the Lease or leases for other

properties, and imposed affirmative obligations on both LBI and Barclays pertaining to sublease

arrangements that were independent of the assumption of those leases.  That provision states that

"[w]ith respect to each Sublease Property, Seller and Purchaser shall  . . . execute and deliver, a

sublease agreement …"  Clarification Letter ¶ 16(b).  While the parties had to negotiate those

arrangements in good faith, no optionality existed with respect the parties' obligation to execute

a sublease for the Premises covered by the Lease (or any other lease).[11]  The sublease

arrangement was a requirement as to the Lease, not an option.

34.  Lastly, the Clarification Letter and subsequent Order, unambiguously

resulted in the assumption of the Lease on the Closing Date, the Court has no basis to look

beyond the text to discern intent.  See In re Victory Mkts., 221 B.R. at 303 (where the language

of a contract is unequivocal, a court must adopt the plain and natural meaning only of the words

contained within the text of the instrument itself.); Stroll v. Epstein, 818 F. Supp. 640, 643

(S.D.N.Y. 1993) (if the agreement sets forth the parties' intent clearly and unambiguously, the

court may not consider extrinsic evidence in determining the parties' obligations).

35.  Incredibly, the Trustee attempts to do just that, injecting improperly into

this dismissal motion a letter executed by LBI and Barclays in February 2009 (the "February

Letter") months after the transaction was consummated and after LBI's dispute with HWA came

to light without any suggestion of any ambiguity.  The February Letter is not subject to

consideration on a dismissal motion (see infra ¶ 42), and the self-serving, after-the-fact, untested

statements by LBI and Barclays that a further motion was necessary for the assumption of the

Lease are entirely irrelevant.  That is, the February Letter has no probative value at all.  See In re

Delta Airlines, Inc., 381 B.R. at 75 (holding that the "rule requiring courts to construe written

contracts based upon the words agreed upon by the parties in their contract, rather than upon *post*

*hoc* arguments and assertions by lawyers or laymen who participated in the negotiations and

drafting"), aff'd, 2008 WL 4444001 (S.D.N.Y. Sept. 29, 2008); Israel v. Chabra, 418 F. Supp. 2d

---

[11]    Nevertheless, the Clarification Letter provides parallel language for subleases in respect of the other Leases
that were being assumed and assigned.  If the Trustee were right, then none of those contemplated
transactions could take place without a concomitant motion and sublease.

509, 521 (S.D.N.Y. 2006) (emails written by former attorneys for defendants several years after the fact stating their recollection of the parties' intent at the time the agreement was entered into were inadmissible hearsay, and not probative).[12]

## POINT II
### THE TRUSTEE'S STANDING ARGUMENT MISSES THE POINT

36.    The Complaint alleges that the Purchase Agreement "is enforceable and binding and not subject to avoidance by the Trustee."  Complaint ¶ 21.  Instead of addressing this allegation (and the terms of the Purchase Agreement that support it), the Trustee contends that HWA is not a third party beneficiary of the Purchase Agreement, and therefore has no standing to enforce it.  LBI Mem. ¶¶ 26-28.  HWA is not seeking to enforce the Purchase Agreement. Rather, the Lease has already been assumed pursuant to the terms of the Order (which is final), and HWA, as landlord, is asserting certain rights under the Bankruptcy Code to which it is entitled as a result of the Lease's assumption.  It is untenable for The Trustee to suggest that a non-debtor party to a contract or lease has no standing to sue to prove that its lease or contract has been assumed and that it is entitled to administrative expense priority under section 503(b)(7) of the Code.

37.    The Trustee cannot, consistent with the provisions of the Order, now unilaterally "reject" or "avoid" those provisions it would rather not comply with.  Otherwise, the

---

[12]    At most, the February Letter creates an ambiguity since it is facially at odds with the documents. Accordingly, if the Court finds such an ambiguity, dismissal would be improper.  See DKR Capital, Inc. v. AIG Int'l W. Broadway Fund, Ltd., 2003 U.S. Dist. LEXIS 17498, at *13 (S.D.N.Y. Oct. 1, 2003) (denying motion to dismiss and stating that "[w]here the intent of the parties is too ambiguous to be gleaned from the contract alone, the Court should receive evidence that might better clarify that intent."); see also Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp. (In Enron Corp.), 367 B.R. 384, 408 (Bankr. S.D.N.Y. 2007) (denying motion to dismiss; where a contract's meaning is ambiguous, the interpretation of the parties' intent at the time the contract was executed is an issue for the trier of fact).

Trustee would be free to circumvent the Order and pick and choose at his own whim which of the provisions of the Purchase Agreement to perform and which to nullify. See Dent v. Assocs. Fin. Servs. Of America, Inc. (In re Dent), 137 B.R. 78, 80 (Bankr. S.D. Ga. 1992) (holding that parties could not agree among themselves to modify court order without first seeking court authorization of such); WorldClass Processing, Inc. v. AT&T Capital Corp. (In re WorldClass Processing, Inc.), 346 B.R. 132, 136 (Bankr. W.D. Pa. 2006) (holding that a plan confirmation order was final and stating that the debtor could not then "change its strategy and advocate the exact opposite position from that which it successfully asserted in, and used to gain confirmation of, its confirmed plan").

38.    The critical point that the Trustee misses entirely is that the Order specifically ensures that the Purchase Agreement, which provided for the assumption of the Lease on the Closing Date, is, by its terms, binding on, and enforceable against, LBI. Specifically, the Order states as follows:

> As of the Closing Date, … the Purchase Agreement and the transactions and instruments contemplated hereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor chapter 11 or chapter 7 trustee appointed with respect thereto.

Order ¶ 5(b). This Court's Order should be given effect.

39.    Nor did this Court limit enforcement of the Purchase Agreement to the parties to it. As stated in the Order,

> The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon the Debtors, their estates, all creditors of (whether known or unknown) and holders of equity interests in either Debtor, Purchaser and its respective

affiliates, successor and assigns, and any third parties,
notwithstanding any subsequent appointment of any trustee of the
Debtors under any chapter of the Bankruptcy Code, as to which
trustee(s) such terms and provisions likewise shall be binding.
<u>This Order and the Purchase Agreement shall inure to the benefit</u>
of the Debtors, their estates, <u>their creditors</u>, the Purchaser and the
respective successors and assigns of each of the foregoing.

Order ¶ 16.

40.    In light of the foregoing, whether HWA has standing as third-party

beneficiary to enforce the Purchase Agreement — something HWA is not contending — is a

complete red herring.

**POINT III**
**BARCLAYS' PURPORTED WAIVER IS INEFFECTIVE**

41.    Because clear language of the Purchase Agreement unequivocally

demonstrates that LBI assumed the Lease, the Trustee attempted the "self-help" route. That is,

three days after HWA formally objected to LBI's Extension Motion, LBI obtained from Barclays

the February Letter, acknowledged and agreed to by the Trustee, purporting to "waive the

provision under Section 16(a)(ii) of the Clarification Letter that Seller assume [the Lease]." LBI

Mem. ¶¶ 10, 29.

42.    Even if the February Letter was properly before the Court (and having not

been placed at issue by HWA, it is not),[13] the purported waiver is of absolutely no import. The

Order does not grant LBI and Barclays the right to unilaterally waive particular provisions of the

---

[13]    HWA did not rely on, or refer to the February Letter in its Complaint. As the Second Circuit held, in a case misquoted by the Trustee (LBI Mem. ¶ 17), "a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

Purchase Agreement — after it became final —at their leisure.  And, while the Trustee, in a

footnote, now claims without rationale that paragraph 25 of the Order is authority for the so-

called waiver, nothing in that provision supports LBI's and Barclays' efforts.  Paragraph 25,

which is entitled "non-material modifications," does not, by its terms permit the waiver of any

provisions of the Purchase Agreement by any party.  And, while it allows the Purchase

Agreement to be modified, amended or supplemented if certain criteria are met, any such change

must be "agreed to between the [Creditors'] Committee, the Debtors and the Purchaser."  Order ¶

25.  Thus, while the Trustee states that the Order "specifically contemplate[] amendments to the

Purchase Agreement" (LBI Mem. ¶ 30), he cannot claim that he has complied with this

provision.  Indeed, were the Trustee in compliance with this provision, presumably the argument

would be Point I, not Point III of his opposition.

43.    The Purchase Agreement became binding "in all respects" as of the

Closing Date, Order ¶ 16, and the Order now constitutes a final judgment that cannot be undone.

No after-the-fact purported "waiver" could undo the assumption of the Lease that had already

occurred.  See Musso v. Brooklyn Navy Yard Dev. Corp. (In re Westchester Tank Fabricators),

207 B.R. 391, 400 (Bankr. E.D.N.Y. 1997) (the right or privilege a party attempts to waive must

be in existence at time of attempted waiver).

## CONCLUSION

The Trustee's attempt to circumvent the provisions of the Bankruptcy Code protecting

counterparties to assumed leases should not be countenanced.  LBI assumed the Lease on the

Closing Date — and has allowed Barclays to occupy the Premises in the months since then.

LBI, of course, remains free to reject the Lease.  But, any rejection of the Lease by LBI

constitutes a post-assumption rejection under section 365(g)(2) and gives rise to an

administrative expense claim under section 503(b)(7) of the Bankruptcy Code.  For all the

foregoing reasons, HWA respectfully submits that the Trustee's motion to dismiss the Complaint

should be denied, and/or alternatively, if the Court finds that the Complaint does not state a

claim, HWA should be permitted to amend its complaint.

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP


      /s/  Stephanie Goldstein
Stephanie Goldstein, Esq.
Brian Pfeiffer, Esq.
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Counsel for HWA 555 Owners, LLC

Dated: New York, New York
       June 29, 2009