GOODWIN PROCTER LLP

The New York Times Building

620 Eighth Avenue

New York, New York  10018

Telephone :  (212) 813-8800

Fax :  (212) 355-3333

Emanuel C. Grillo (EC 1538)

Meagan E. Costello (MC 0962)

K. Brent Tomer (KT 2438)

Hearing Date and Time: October 15, 2009

Objection Deadline:  October 9, 2009

*Attorneys for Evergreen Solar, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
:
In re:                                                              :           **Chapter 11**
:
**LEHMAN BROTHERS HOLDINGS, INC., <u>et al.</u>,** :           **Case No. 08-13555 (JMP)**
:
**Debtors.**                                       :           **Jointly Administered**
:
------------------------------------------------------------ x
:
In re:                                                              :           **SIPA Proceeding**
:
**LEHMAN BROTHERS, INC.**                    :           **Case No. 08-01420 (JMP)**
:
**Debtor.**                                        :
:
------------------------------------------------------------ x

**JOINDER OF EVERGREEN SOLAR, INC. TO MOTION OF OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL.,**
**PURSUANT TO 11 U.S.C. § 105(a), FED. R. CIV. P. 60(b), AND FED. R. BANKR. P.**
**9024, FOR RELIEF FROM ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006**
**AUTHORIZING AND APPROVING (A) SALE OF PURCHASED ASSETS FREE AND**
**CLEAR OF LIENS AND OTHER INTERESTS AND (B) ASSUMPTION AND**
**ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, DATED**
**SEPTEMBER 20, 2008 (AND RELATED SIPA SALE ORDER) AND JOINDER IN**
**DEBTORS' AND SIPA TRUSTEE'S MOTIONS FOR AN ORDER UNDER RULE 60(b)**
<u>**TO MODIFY SALE ORDER**</u>

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Evergreen Solar, Inc. ("Evergreen"), by its undersigned attorneys Goodwin Procter LLP,

hereby files this joinder (the "Joinder") to the Motion of the Official Committee of Unsecured

Creditors of Lehman Brothers Holdings Inc., et al. (the "Committee"), pursuant to section 105(a)

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

Code"), Rule 60(b) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 9024

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for relief from the order

(the "Sale Order") of this Court under 11 U.S.C. §§ 105(a), 363, and 365 and Bankruptcy Rules

2002, 6004 and 6006 Authorizing and Approving (A) Sale of Purchased Assets Free and Clear of

Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and

Unexpired Leases, Dated September 20, 2008 (and related SIPA Sale Order) and Joinder in

Debtors' and SIPA Trustee's Motions for an Order Under Rule 60(B) to Modify Sale Order (the

"Committee Motion"), and in support thereof respectfully states as follows:

## **PRELIMINARY STATEMENT**

As this Court is aware, Evergreen is a plaintiff in that certain adversary proceeding

captioned Evergreen Solar, Inc. v. Barclays Capital, Inc., Lehman Brothers Holdings, Inc., and

Lehman Brothers, Inc., Adv. Pro. No. 08-01633 (JMP) (the "Adversary Proceeding"), arising

from the unauthorized sale of certain shares of Evergreen Common Stock by Lehman Brothers

Inc. ("LBI"), agent under that certain Share Lending Agreement, dated as of June 26, 2008 (the

"SLA").[1]  In that Adversary Proceeding, Evergreen alleged that LBI lacked authority to transfer

the loaned shares (the "Loaned Shares") in its possession solely as agent to Barclays Capital, Inc.

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the SLA, a copy of which has
been provided to this Court in connection with Adversary Proceeding (defined below).

("Barclays") at the time of the sale, LBI failed to provide Evergreen with notice of the sale

despite the fact that the SLA had terminated, and Evergreen, as a result of the defendants'

actions, was damaged through, among other things, the loss of the Loaned Shares and by a

corresponding and substantial dilution of its Common Stock.  Now, LBI and Lehman Brothers

Holdings Inc. ("LBHI"), together with the Committee, have moved to reconsider the Sale Order,

claiming that "mistakes, inadvertence, or misrepresentations" led to the approval of the Sale

Order and that assets that should not have been sold were transferred in secret to Barclays under

the guise of the Sale Order.  This is the very same subject matter of Evergreen's Adversary

Proceeding with respect to the Loaned Shares.

    While Evergreen was naturally not alone in suffering a loss upon Lehman's failure,

unlike the vast majority of unsecured creditors and customers of Lehman, a substantial portion of

Evergreen's loss—approximately 12,304,187 shares—could have and should have been

prevented both as a matter of law and in the interests of equity.  By the time the shares were

transferred, certain events of default had occurred under the SLA and LBIE was required to

return the shares through its agent, LBI, to Evergreen.  Instead, those shares over which LBI did

not hold title, but merely held as an agent for LBIE (which itself had lost title to its holdings of

the Loaned Shares upon default), were swept up into a whirlwind sale (the "Sale") to Barclays.

    According to the Debtors, the Committee, and the SIPA Trusteee, it now appears that

Barclays—which throughout its dispute with Evergreen has consistently touted the fairness of

the Sale process—took advantage of the exigent circumstances surrounding the Sale by securing

for itself a windfall profit and by arguing that assets transferred outside the scope of the Sale

Order approved by this Court were validly "purchased."  Although much of what has been

uncovered by the Committee, the Debtors, and the SIPA Trustee remains under seal, and

therefore unavailable to Evergreen at the time of this pleading, the Committee Motion describes

in sufficient detail how Barclays managed to conceal the nature of the securities transferred to it

under the Sale Order and the related Repo Agreement.  Because it is this element of the Sale that

directly affected Evergreen's interests, Evergreen hereby joins in the Committee Motion and

asks this Court to reconsider the Sale Order.

**BACKGROUND**

***The Share Lending Agreement and Defaults Thereunder***

1.      On June 26, 2008, Evergreen, LBI and Lehman Brothers International (Europe)

("LBIE") entered into the SLA, pursuant to which LBIE, as Borrower, acting through LBI, as

Borrowing Agent, borrowed 30,856,538 shares of Common Stock from Evergreen, as Lender.

LBHI guaranteed LBIE's obligations under the SLA pursuant to that certain Guaranty dated June

26, 2008 (the "Guaranty").

2.      The same date, LBI, acting as sole book-running manager, conducted a public

offering of some but not all of the Loaned Shares, selling 18,184,511 shares to public investors.

Evergreen did not receive any proceeds from the sale of these Loaned Shares.  The remaining

balance of 12,672,027 Loaned Shares remained in the hands of LBI, solely in its capacity as

agent.

3.      Subsequent to the public offering, neither LBIE nor LBI disclosed any sale of the

Loaned Shares remaining in LBI's possession as agent.  However, as the SLA did not require

disclosure, Evergreen, as of September 15, 2009, did not know whether any of the Loaned

Shares remained in LBI's possession.

4.      On or about September 15, 2008, LBHI suffered a Credit Downgrade and by

letter to LBI and LBIE dated September 15, 2008, Evergreen demanded, in accordance with

Section 4 of the SLA, that LBIE transfer to LBI, as collateral agent, collateral with a market value at least equal to the market value of the total amount of outstanding Loaned Shares and take all steps necessary to secure and perfect Evergreen's interest in the collateral.  Although LBI continued to hold 12,672,027 of the Loaned Shares, neither LBIE nor LBI took any steps to secure and perfect Evergreen's interest in that portion of the Loaned Shares or post collateral equal to the market value of the total amount of outstanding Loaned Shares.  LBIE's failure to transfer and perfect Evergreen's interest in the collateral by September 17, 2008 constituted an event of default under the SLA, requiring the Loaned Shares to be returned to Evergreen within three days and immediately re-vesting title to that portion of the Loaned Shares in LBI's possession to Evergreen.  See SLA §§ 4(a), 5(c), 7, 10(a)(viii), and 11(b).

5.      Also on September 15, 2008, LBIE was placed into administration in the United Kingdom, which event constituted a separate event of default under the SLA, automatically and immediately terminating the SLA, requiring the Loaned Shares to be returned to Evergreen within three days and immediately re-vesting title to that portion of the Loaned Shares in LBI's possession to Evergreen.  See SLA §§ 5(c), 7, 10(a)(iii), and 11(b).

6.      Neither LBIE nor LBI returned any of the Loaned Shares, including those which remained in LBI's possession in its capacity as agent and for which title re-vested in Evergreen upon the Events of Default.[2]  Rather, as Evergreen discovered much later, LBI purported to sell the Loaned Shares remaining in its possession to Barclays as part of the Sale described below. Separately, LBHI failed to meet its obligations under the Guaranty.

---

[2]      Although Barclays argued at the hearing on its motion to dismiss Evergreen's complaint, described in greater detail below, that LBI possessed the Loaned Shares as a purchaser of such shares from LBIE, neither LBI nor LBIE has asserted such or provided evidence of the same, and Barclays' argument was based entirely on Evergreen's own misunderstanding that all of the Loaned Shares had been sold into the marketplace.

**_The Sale_**

7.      On September 17, 2008, the Debtors filed the Motion to (A) Schedule a Sale

Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the

Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the

Purchased Assets (the "Sale Motion").

8.      Attached to the Sale Motion was that certain Asset Purchase Agreement among

LBHI, LBI, LB 745 LLC and Barclays (the "Sale Parties") dated as of September 16, 2008 (the

"APA").  "Purchased Assets," as defined in the APA included LBI's holdings of "government

securities, commercial paper, corporate debt, corporate equity, exchange traded derivatives and

collateralized short-term agreements with a book value as of the date [t]hereof of approximately

$70 billion."  See APA § 1.1(d) (definition of "Purchased Assets").  As the Committee Motion

points out—and as repeatedly argued by Evergreen as part of the adversary proceeding described

below—the APA contained no schedule setting forth the specific securities intended to be

transferred.  Nor did the parties thereto at anytime inform the Court or any interested party

exactly which securities were to be included.  See Committee Motion ¶ 10 (noting that the Sale

Parties "did not provide any elaboration regarding the securities included [as purchased

assets].").

9.      The Sale Parties subsequently amended the APA pursuant to the First Amendment

to the Asset Purchase Agreement dated September 19, 2008 (the "First Amendment") to include

residential real estate securities held by LBI.

10.     On September 19, 2009, this Court conducted a hearing on the Sale Motion (the

"Sale Hearing") during which the Sale Parties made several oral and potentially "incomplete"

clarifications to the Court.  First, the Debtors noted that "LBI has entered into an arrangement

with the prospective purchaser where there's a repo agreement in which they are backing up and

allowing these repos to be settled and to be financed." Committee Motion, Ex. 22, Tr. Hearing

9/17/08 at 22:8-11; 23:21-24:12.  No further details of the "repo agreement" were disclosed.

Second, the Debtors indicated that the value of the securities to be transferred under the APA had

dropped from approximately $70 billion to $47.4 billion.  Id. at 46:20-47:15.  None of the Sale

Parties indicated that the "repo agreement" was the vehicle through which the securities were to

be, or had already been, transferred to Barclays, or that the securities of any entity other than

LBHI or LBI were even potentially impacted by the Sale.

11.     On September 20, 2008, this Court entered an order approving the sale (the "Sale

Order") of the Debtors' assets to Barclays pursuant to the "Purchase Agreement."  Included in

the Sale Order's definition of "Purchase Agreement" is the APA, the First Amendment, and "that

letter agreement clarifying and supplementing the Asset Purchase Agreement dated September

20, 2008."  Committee Motion, Ex. 24, Sale Order (Introduction).  The Sale Order also directed

the Debtors to "execute the Purchase Agreement, along with any additional instruments or

documents that may be reasonably necessary or appropriate to implement the Purchase

Agreement, **provided that such additional documents do not materially change its terms**."

Id. at § 3 (emphasis added).

12.     Also on September 20, 2009, the United States District Court for the Southern

District of New York entered an Order Commencing Liquidation of LBI under the Securities

Investor Protection Act (the "SIPA Order"), which appointed a trustee (the "SIPA Trustee") to

oversee LBI's assets and resulted in an adversary proceeding (the "SIPA Proceeding") as a

corollary to the main LBHI Bankruptcy Proceeding.  This Court also entered the Sale Order in

the SIPA Proceeding, authorizing the SIPA Trustee to consummate the Sale on LBI's behalf.

13.     On September 22, 2009, the Sale Parties executed the Clarification Letter "dated as of September 20, 2008" (the "Clarification Letter").  See Committee Motion, Ex. 25 (Clarification Letter).  The Clarification Letter disclosed for the first time that Barclays and LBI had allegedly entered into a repurchase agreement (the "Repo Agreement") on September 18, 2008, whereby securities "owned" by LBI were transferred to Barclays.  The Clarification Letter further modified the definition of "Purchased Assets" contained in the APA as follows:

> [W]ith respect to clauses (a), (d) and (e) of the definition of "Purchased Assets" in the Original Agreement, instead of the items referred to in such clauses, (A) the securities owned by LBI and transferred to Purchaser or its Affiliates under the Barclays Repurchase Agreement (as defined below) as specified in Schedule A previously delivered by Seller and accepted by Purchaser, (B) such securities and other assets held in LBI's "clearance boxes" as of the time of the Closing, which at the close of business on September 21, 2008 were as specified on Schedule B previously delivered by Seller and Accepted by Purchaser . . . and (C) exchange traded derivatives (and any property that may be held to secure obligations under such derivatives) and collateralized short term agreements.

Id. at § 1(a)(ii).

14.     Neither the APA, the First Agreement, nor the Clarification Letter provided full disclosure as to which securities were transferred to Barclays.  As the Committee notes, "[e]ven though the Clarification Letter materially altered significant terms of the Sale Transaction, the parties never presented it to the Court for its review and consideration. When the parties eluded to the Clarification Letter at the Sale Hearing, the Court was advised that it only was designed to 'clarify the transaction.'"  Committee Motion ¶ 65.  Additionally, the Committee points out that, "even though the Sale Order provides for the approval of the 'Purchase Agreement,' and that definition includes the Clarification Letter, the actual text of the Sale Order cannot be read to authorize or approve the Clarification Letter."  Id. at 69.

15.     Further, to date, neither the Repurchase Agreement, nor any of the "Schedules" listed in the Clarification Letter have been publicly filed.  However, on October 8, 2008, several

weeks after the Sale and without *any* Lehman entity providing a response to Evergreen's pre-sale

notices, Barclays filed a Schedule 13G (the "13G") with the United States Securities and

Exchange Commission, claiming that it, together with its corporate parent, had beneficial

ownership, sole voting power and sole dispositive power over 12,191,478 shares of Evergreen

common stock.[3]

### *The Adversary Proceeding*

16.     On October 20, 2008, Evergreen initiated the Adversary Proceeding by the filing

of a verified complaint (together with the verified amended complaint filed on December 12,

2008, the "Complaint") asserting among other things, that LBI and LBHI were obligated under

the Share Lending Agreement and the Guaranty to return all of the Loaned Shares in its

possession to Evergreen upon termination of the Share Lending Agreement, which occurred

prior to both the entry of the SIPA Order and Sale Order.  The complaint also sought a

constructive trust over that portion of the Loaned Shares  (the "Evergreen Shares") transferred to

Barclays pursuant to the Sale Order.

17.     Through Barclays' response to Evergreen's motion for a preliminary injunction,

filed simultaneously with the complaint, Evergreen learned for the first time that the Evergreen

Shares were originally transferred to Barclays through the Repo Agreement.

18.     On January 14, 2009, Barclays filed a motion to dismiss the Complaint.  Chief

among Barclays' contentions was that the Sale Order barred any party claiming an interest in the

Purchased Assets from asserting, prosecuting, or otherwise pursuing claims against Barclays.

Barclays also contended that the Sale Motion and related documentation provided adequate

notice of Sale—and the transactions proposed thereunder—to all interested parties.  Barclays

---

[3]     On November 17, 2008, the Barclays amended the 13G to reflect ownership of 12,304,187 shares of common
stock of Evergreen.

repeated its arguments in its reply in support of its motion to dismiss, specifically stating that Evergreen's assertion that it was impossible to independently discover that the Sale would affect its interests was "unsustainable." Barclays persisted in this argument throughout the hearing on the motions to dismiss despite the fact that Evergreen would have had no reason to believe that the Evergreen Shares, which were merely held by LBI as agent, would be included in the Sale. Notably, although LBHI and the SIPA Trustee joined in Barclays' motion to dismiss to a limited extend, neither joined in Barclays' assertions with respect to the Sale Order.

19.     This Court has not entered an order with respect to the motions to dismiss, but the facts and circumstances that have been publicly disclosed in the Committee Motion (and likely those currently under seal) have a direct bearing on the allegation in the Complaint and cannot be ignored.

## JOINDER

20.     Evergreen hereby joins in the Committee Motion with respect to the unredacted arguments and facts set forth therein to the extent consistent with this Joinder. Evergreen reserves the right to be heard at any hearing in connection with the Committee Motion, to present evidence, to cross examine witnesses and proffer arguments. Evergreen further reserves the right to join in any arguments or assertion of facts currently redacted in the Committee Motion should Evergreen be provided with an unredacted copy of the Committee Motion.[4]

21.     While Evergreen has not been privy to the multitude of disclosures obtained by the Committee through discovery, it is clear, as the Committee Motion points out (as well as the Debtors and the SIPA Trustee), and as has been argued by Evergreen repeatedly in connection

---

[4]     Simultaneously herewith, Evergreen is filing a joinder to the Committee's motion to unseal all motions with respect to the issues set forth herein.

with the Adversary Proceeding,[5] that neither this Court, nor the parties affected thereby, were adequately informed as to the nature of the transactions ultimately consummated under the guise of the Sale Order. The Committee Motion is replete with a multitude of both redacted and unredacted facts, some of which have been described above and including the events surrounding the Clarification Letter, that indicate that the Sale failed to comport with the level of disclosure and transparency required in connection with bankruptcy sales.

22.      The material omissions described by the Committee, and the facts apparently uncovered by the Committee in the months following the Sale, provide grounds to reopen and grant relief from the Sale Order as requested by the Committee. Thus, Evergreen joins in the Committee Motion to the extent it seeks reconsideration of the Sale Order and requests a full accounting and reconciliation of all Purchased Assets so that all creditors can finally know which assets were transferred to Barclays and pursuant to which documents.

23.      As noted above, Evergreen has asserted in connection with the Adversary Proceeding that the transfer of the Evergreen Shares under the Sale Order was invalid, that the nature of transactions consummated under the APA were not properly disclosed to this Court, and that the Sale Parties failed to provide adequate notice to those parties' interests which were directly affected thereby, all of which are apparently confirmed by the Committee Motion. It now appears that this Court may have been as misled by the representations made to the Court as part of the Sale process as were the Debtors' creditors. Thus, Evergreen respectfully requests that this Court withhold any grant of final relief with respect to an amendment to the Sale Order or APA until full disclosure is provided, a formal reconciliation is performed, and all parties

---

[5]      See, e.g., Transcript of April 22, 2009 hearing (08-01633 (JMP)) 30:12-15 ("And if one were to take the initial motion that was filed with the Court and the initial purchase agreement, there would be no indication that any Evergreen shares were included as part of that sale.").

affected thereby have been given notice and an opportunity to be heard.  There is no benefit at this juncture to engage in a second, hasty examination of the Sale.

## **WAIVER OF MEMORANDUM OF LAW**

24.    Because this motion presents no novel issues of law and the authorities relied upon are set forth herein Evergreen requests that the Court waive the requirement of filing a separate memorandum of law in support of this motion pursuant to L.B.R. 9013-1(b).

25.    No previous request for the relief sought herein has been made by Evergreen to this or any other Court.

## CONCLUSION

WHEREFORE, Evergreen respectfully requests that this Court enter an order granting

reconsideration of the Sale Order as contemplated by the Committee.  Evergreen respectfully

requests, however, that this Court withhold the granting of final relief for the reasons set forth

herein.

Dated:  New York, New York
        October 9, 2009

                              GOODWIN PROCTER LLP


                              By: */s/ Emanuel C. Grillo*
                              Emanuel C. Grillo (EC 1538)
                              egrillo@goodwinprocter.com
                              Meagan E. Costello (MC 0962)
                              mcostello@goodwinprocter.com
                              K. Brent Tomer (KT 2438)
                              btomer@goodwinprocter.com
                              The New York Times Building
                              620 Eighth Avenue
                              New York, New York  10018
                              Telephone :  (212) 813-8800
                              Fax :  (212) 355-3333

                              *Attorneys for Evergreen Solar, Inc.*