**Hearing Date: October 15, 2009 at 2:00 p.m.**
**Objection Deadline: October 9, 2009 at 4:00 p.m.**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Gregory A. Horowitz
Amy Caton

Attorneys for Bank of New York Mellon Trust
Company, N.A. as Indenture Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
─────────────────────────────────── x
In re:                              )
                                    )
LEHMAN BROTHERS HOLDINGS INC., et al.)  Chapter 11
                                    )
                                    )  Case No. 08-13555
Debtors.                            )
                                    )  (Jointly Administered)
                                    )
─────────────────────────────────── x
```

**STATEMENT OF THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE, IN SUPPORT OF THE MOTIONS FOR (I) AN ORDER, PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024, MODIFYING THE SEPTEMBER 20, 2008 SALE ORDER AND GRANTING OTHER RELIEF AND (II) TO UNSEAL MOTIONS FOR RELIEF FROM SEPTEMBER 20, 2008 SALE ORDER (AND RELATED SIPA SALE ORDER).**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.) as indenture trustee (the "Trustee") for the holders of the Main Street Bonds (as defined below), hereby submits this statement in support (the "Statement") of (i) the Motion of Lehman Brothers Holdings Inc. ("LBHI") for an Order, Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, Modifying the September 20, 2008 Sale Order and Granting Other Relief [Docket No. 5168] (the "LBHI Rule 60(b) Motion") filed with this Court on September 15, 2009, (ii) the Motion of Official Committee of Unsecured

Creditors of Lehman Brothers Holdings, Inc., et al. (the "Committee") for Relief from the Sale Order and Joinder to the Debtor's and SIPA Trustee's Rule 60(b) Motions [Docket No. 5169] (the "Committee Rule 60(b) Motion," together with the LBHI Rule 60(b) Motion, the "Rule 60(b) Motions") filed with this Court on September 15, 2009, and (iii) the Motion of the Committee, pursuant to 11 U.S.C. §§ 105(a) and 107(a), to Unseal Motions for Relief from September 20, 2008 Sale Order (and Related SIPA Sale Order) [Docket No. 5269] (the "Committee Unsealing Motion," together with the Rule 60(b) Motions, the "Motions") filed with this Court on September 24, 2009.[1] In support of the Statement, the Trustee respectfully states as follows:

## RELEVANT BACKGROUND

1. The Trustee indirectly holds over $700 million in claims against Lehman Brothers Commodity Services ("LBCS"), Lehman's former commodities trading subsidiary, as well as a guarantee claim against LBHI. On November 26, 2008, the Trustee filed a motion (the "Trustee's Rule 2004 Motion") [Docket No. 1766] under Fed. R. Bankr. P. 2004. The Trustee's Rule 2004 Motion sought information primarily concerning whether Barclays Capital, Inc. ("Barclays") received any assets belonging to LBCS as part of the sale of Lehman Brothers assets approved by the Court on September 19, 2008 (the "Sale"), in contravention of the explicit language of the Asset Purchase Agreement, the Clarification Letter, and statements made to this Court by Debtors' counsel on the record. *See* Trustee's Rule 2004 Motion ¶¶ 4-10, 12-18; Sale Hr'g Tr. at 226:3-19, excerpted and attached as Exhibit A.

---

[1] Capitalized terms used but not defined herein shall take the meaning ascribed thereto in the LBHI Rule 60(b) Motion.

2. On September 15, 2009, LBHI filed the instant LBHI Rule 60(b) Motion.[2] Collectively, these Rule 60(b) Motions assert that certain Lehman representatives failed to disclose key components of the transaction to the Court and, even where information was disclosed, the Court and creditors were never informed of "critical changes" to the Sale that took place both prior to the final Sale Hearing and after the Sale Hearing but prior to the closing on September 22, 2008. (LBHI Rule 60(b) Motion at 1.) As one of the few parties-in-interest with the ability to discover this critical information, LBHI has thus far estimated that Barclays received at least $8.2 billion in excess Lehman assets. (LBHI Rule 60(b) Motion at ¶ 12.) More troubling still is LBHI's allegation that certain key employees responsible for negotiating a supposedly arms-length sale for the benefit of all the Debtors' estates may have been complicit with Barclays in the misrepresentation of information regarding the Sale due to their competing allegiances and improper incentives as future Barclays employees. (*See* LBHI Rule 60(b) Motion at ¶ 14.)

3. On September 24, 2009, the Committee filed the Committee Unsealing Motion. LBHI and the SIPA Trustee filed statements joining the Committee Unsealing Motion [Docket Nos. 5270 and 5271]. In the Committee Unsealing Motion, the Committee argues that Barclays improperly designated as confidential and highly confidential much of the information provided pursuant to the LBHI 2004 Motion.

## STATEMENT IN SUPPORT

4. Even after hundreds of pages of redactions, the skeletal Motions (and their gutted exhibits) suggest that misrepresentations were made to the Court concerning the assets to be

---

[2] Concurrent with the filing of the LBHI Rule 60(b), the Committee filed the Committee Rule 60(b) Motion. The SIPA Trustee filed a Joinder to LBHI's Rule 60(b) Motion stating that it would also file a similar motion in the SIPA proceedings [Docket No. 5173].

3

transferred to Barclays upon the consummation of the Sale.  Absent granting the relief requested in the Committee Unsealing Motion, the Trustee, like other parties-in-interest, will be left to wonder about such improper transfers of LBHI (and potentially LBCS) estate assets.  Such obfuscation of the truth, as underscored by the Committee, serves no valid or justifiable purpose.  Accordingly, the Trustee joins in the arguments raised in the Committee's Unsealing Motion to further expose the facts of the Sale to the "sunlight" of public examination.

5. The Trustee also agrees with the arguments set forth in the Rule 60(b) Motions, and files this Statement in support of the Rule 60(b) Motions.  However, the Trustee respectfully requests that any Order of the Court granting the Rule 60(b) Motions should leave intact the representations made in the Clarification Letter concerning the exclusion of LBCS from the Asset Purchase Agreement.

6. Among other requested relief, by their Rule 60(b) Motions, LBHI and the Committee petition the Court to strike any references to the Clarification Letter from the Sale Order and rescind any tacit Court approval of such letter.  (*See, e.g.*, LBHI Rule 60(b) Motion at 1, ¶ 3, Committee Rule 60(b) Motion at 1, 50.)  The Trustee submits that such relief would be overbroad insofar as it may affect claims relating to LBCS.  With respect to the transfer of LBCS assets, the Clarification Letter provides in relevant part:

> For the avoidance of doubt, the equity interests and assets of Lehman Brothers Commodity Services, Inc., including the equity of, as well as the assets of the energy marketing and services business of Eagle Energy Management LLC, are Excluded Assets (rather than Purchased Assets).

(Clarification Letter § 1(c).)  This language explicitly confirmed what had been stated by Debtors' counsel on the record at the Sale Hearing, statements that resulted in the withdrawal of objections to the Sale by certain creditors of LBCS and other parties-in-interest.[3]

7. Now that LBHI and the Committee have adopted the position long espoused by the Trustee – that in spite of the actual wording of the Asset Purchase Agreement and Clarification Letter, excess assets appear to have been transferred to Barclays in error and in contravention of this Court's order – it is incumbent upon the Court to carefully craft relief. The Clarification Letter is consistent with representations made to the Court about LBCS and its assets and provided the creditors of LBCS with the necessary comfort that LBCS assets were not being transferred in the Sale. To the extent that, contrary to such representations, LBCS assets in fact were transferred to Barclays – as appears to be the case – it is essential to preserve claims against Barclays arising from such wrongful transfer.

## **Conclusion**

For the reasons set forth herein, the Trustee respectfully requests that the Court enter an order: (i) granting the Rule 60(b) Motions; (ii) clarifying the status of the assets purportedly excluded from the Barclays Sale, including those of LBCS; (iii) granting the Committee Unsealing Motion and (iv) granting such other relief as the Court deems just, equitable and proper.

---

[3] (*See* Ex. A, Sale Hr'g Tr. at 226:3-17 ("MR. ELROD: Thank you, Your Honor. David Elrod on behalf of TransCanada Pipelines and its affiliates. We filed a limited objection and I think that it has been essentially in part resolved...And I just wanted to make that clarified on the record, Your Honor, because it hasn't been confirmed yet. It's our understanding that Lehman Brothers Commodity Services, Inc., Eagle Energy [Management LLC] and Eagle Energy Partners I, L.P. assets are not part of this transaction, this purchase agreement, and that the transaction will not affect their ability to operate as an entity. THE COURT: It was hours ago that I heard that but I believe that to be true. Ms. Fife, is that true? MS. FIFE: Yes it is, Your Honor."))

5

Dated: New York, New York
October 9, 2009

        KRAMER LEVIN NAFTALIS & FRANKEL LLP

        /s/ Amy Caton
        Gregory A. Horowitz
        Amy Caton
        1177 Avenue of the Americas
        New York, NY 10036
        (212) 715-9100

        Attorneys for Bank of New York Mellon Trust
        Company, N.A. as Indenture Trustee

# Exhibit A

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555

- - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


            Debtors.


- - - - - - - - - - - - - - - - - - - - - -x


            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            September 19, 2008

            4:36 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

1   done.

2           MR. KADEN:  Okay.  Thank you, Your Honor.

3           MR. ELROD:  Thank you, Your Honor.  David Elrod on
4   behalf of TransCanada Pipelines and its affiliates.  We filed a
5   limited objection and I think that it has been essentially in
6   part resolved by statements that occurred when the Court left
7   the courtroom and we had an update by counsel for the debtor on
8   what's not included in the sale.  And I just wanted to make
9   that clarified on the record, Your Honor, because it hasn't
10  been confirmed yet.  It's our understanding that Lehman
11  Brothers Commodity Services, Inc., Eagle Energy Partners, ULC
12  and Eagle Energy Partners I, L.P. assets are not part of this
13  transaction, this purchase agreement, and that the transaction
14  will not affect their ability to operate as an entity.

15          THE COURT:  It was hours ago that I heard that but I
16  believe that to be true.  Ms. Fife, is that true?

17          MS. FIFE:  Yes it is, Your Honor.

18          MR. ELROD:  Thank you, Your Honor.

19          THE COURT:  Okay.

20          MR. ANGELICH:  Good evening, Your Honor.  George
21  Angelich of Arent Fox, counsel to the Vanguard Group, Inc.  The
22  mutual fund so many Americans, millions of them, indeed, trust
23  their money with Vanguard.  And, Your Honor, people are in a
24  panic mode in America and not acting rationally on many fronts
25  in the economy.  And I think, Your Honor, the global economy