WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                           :
In re                                      :   Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :   08-13555 (JMP)
                                           :
                         Debtors.          :   (Jointly Administered)
                                           :
                                           :
------------------------------------------------------------x
```

**DEBTOR'S REPLY TO FIRST DATA CORPORATION'S RESPONSE TO DEBTOR'S
MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004
<u>AUTHORIZING DISCOVERY</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   Lehman Brothers Special Financing, Inc. ("<u>LBSF</u>") as debtor and debtor in possession (the "<u>Debtor</u>" and, collectively with its non-debtor affiliates, "<u>Lehman</u>"), replies (the "<u>Reply</u>") to the Response in Opposition (the "<u>Objection</u>") of First Data Corporation ("<u>First Data</u>") [Docket No. 5421] to LBSF's Motion (the "<u>Motion</u>") for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing certain discovery from First Data [Docket No. 5303], and respectfully represents:

**PRELIMINARY STATEMENT**

1. First Data does not dispute the Debtor's right to take discovery from First Data pursuant to Rule 2004 of the Bankruptcy Rules. Thus, there is no question that the Court should grant the Rule 2004 discovery sought; the only issue is whether the Court should issue an order consistent with the orders issued in a number of similar Rule 2004 matters or whether the Court should modify the proposed order to allow First Data to argue at a later date whether the categories of documents sought are appropriate to be provided under Rule 2004. The Debtor believes it is appropriate for any objection to the categories of documents sought to be decided now. The Debtor therefore seeks entry of the proposed order which is in the form submitted and entered by this Court in other similar matters.

2. As set forth in the Motion, LBSF and First Data were parties to an interest rate swap transaction which First Data terminated following LBSF's filing of a chapter 11 petition (the "Terminated Transaction"). Although First Data claims that the termination amount (the "Termination Amount") that it owes LBSF for the Terminated Transaction is approximately $14.3 million, LBSF has a good-faith belief that the Termination Amount should actually be higher. As an estate in bankruptcy with an interest in maximizing its assets, LBSF should be authorized by this Court to obtain discovery from First Data in connection with its calculation of the Termination Amount. The individual discovery requests (the "Requests") attached as Exhibit A to the proposed order (the "Order") are all targeted to provide LBSF with the information it needs in order to evaluate First Data's valuation of the Terminated Transaction and determine whether the valuation is commercially reasonable, and whether its estate has a claim against First Data for additional amounts.

3.  First Data argues that the Motion should be denied because the Order would supposedly deny First Data the right to object to the Requests. This argument is without merit and First Data cites no compelling reasons – based on either the facts or the law – in its support. Indeed, three other parties who were served with similar Rule 2004 motions by LBSF consented to the entry of an order identical to the one at issue here without any abridgment of their due process rights.

4.  Lastly, First Data argues that if the Order is granted, rather than raising an objection now and seek to modify the Order before it is entered by the Court, First Data will instead raise those objections later, and even possibly move to quash, after the Order has been entered and a subpoena has been served. Putting aside the fact that all of the Requests seek important information that go to the valuation issues, there is no reason why First Data should not raise its objections to specific Requests now – <u>while this matter is before the Court</u> – rather than later, after the Court has entered an Order and spent its time and resources in consideration of the Motion.

## ARGUMENT

**I.  GOOD CAUSE HAS BEEN SHOWN TO GRANT LBSF'S RULE 2004 MOTION**

4.  A "party in interest may use Rule 2004 to determine the nature and extent of the bankruptcy estate and to ascertain whether wrongdoing has occurred." <u>In re Hilsen</u>, 2008 WL 2945996, *4 (Bankr. S.D.N.Y., July 25, 2008) (Peck, J.). First Data does not deny that the discovery sought by LBSF concerns an asset of the estate. Indeed, First Data does not object "wholly to the production of documents relating to its swap agreement with the Debtors and the

3

calculation of the Termination Amount thereunder." Obj. ¶ 8. Rather, First Data argues – without any basis – that LBSF has not shown sufficient "good cause" to obtain the Order.

5.    "Good cause may ordinarily be sustained by a claim that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause undue hardship or injustice." In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (cited by First Data at Obj. ¶ 6).[1] But rather than address the elements of good cause as set forth in Drexel Burnham, First Data instead argues that good cause has not been shown because the Motion allegedly creates an "expedited" proceeding which would deny First Data "a reasonable time in which to object and respond to the discovery requests." Obj. ¶¶ 6-7. First Data does not explain why an allegedly unreasonable or expedited time frame for objections should have anything to do with a determination of good cause under Rule 2004.[2] Moreover, the Requests are narrowly targeted and are substantively similar to the

---

[1] First Data inaccurately cites In re Koma Equipment Leasing Co., 2007 WL 4219405 (Bankr. D. Alaska, Nov. 29, 2007) for the proposition that "good cause" is evaluated by "examin[ing] whether the burdens imposed upon the examinee by the requested discovery outweigh the potential benefit to the examiner of conducting the examination." Obj. ¶ 5. The court in Koma actually stated that "[a]fter determining that Rule 2004 examination is necessary for the examiner's legitimate interests, the bankruptcy court must balance the examiner's interests against the debtor's interest in avoiding the cost and burden of disclosure." Id. at 1 (emphasis supplied). Thus, questions of burden are not considered when determining whether good cause exists. Moreover, Koma concerned a situation where discovery was sought from a debtor – circumstances which are not present here, and which makes this case inapposite. Finally, it bears noting that the Rule 2004 motion in Koma was actually granted because the Court found it "reasonably necessary for the protection of the [movant's] legitimate interests in the chapter 11 process." Id.

[2] First Data's argument that a Rule 2004 motion may not be "expedited" is not supported by the cases it cites. See Obj. ¶¶ 6-7. In In re Good Hope Refineries, Inc., 9 B.R. 421, 423 (Bankr. D. Mass. 1981), the court denied a Rule 2004 motion brought by a post-confirmation debtor, only in dicta opining that "[t]here may even be a question as to whether [Rule 2004] was ever intended for a Chapter XI debtor who . . . was not in need of a quick factual fix relative to the estate, its location, and existence." Id. at 423 (emphasis supplied). In re Symington, 209 B.R. 678, 685 (Bankr. D. Md. 1997), says nothing about the timeframe for Rule 2004 discovery, noting only

4

requests contained in LBSF's April 3, 2009 letter to LBSF.  See Mot. ¶ 18.  First Data rejected producing documents in response to those requests on April 17, 2009.  Id. at ¶ 19.  Thus, not only has First Data had ample time since April in which to consider the Requests, but when it was first asked to provide the information now being sought pursuant to Rule 2004, it only required fourteen days in which to respond.  The notion that this Motion operates unfairly because it is "expedited" is no more than a red-herring.

      6.      Additionally, faced with identical deadlines, other parties in identical situations – i.e., counterparties who terminated and sent valuation statements – who were later served with substantively similar Rule 2004 motions, consensually agreed to the entry of an order without seeking additional time.[3]  Moreover, two of the parties who have consented to Rule 2004 Motions – after confirming that they do not oppose LBSF's right to take discovery under Rule 2004 and intend to produce documents in response to the Requests – agreed with LBSF to serve their respective responses and objections to the Requests after the orders granting Rule 2004 discovery were entered.  LBSF is prepared to enter into a similar agreement with First Data, and therefore believes the Order should be granted, following which First Data should serve its customary responses and objections.

---

that "the scope of a Rule 2004 examination is at least as broad as discovery under the Federal Rules of Civil Procedure and subject to the same limitations."  In re Continental Forge Co., 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987) is similarly unavailing, noting only that "as far as inspection, examination, and copying documents is concerned . . . Rule 26 of the Federal Rules of Civil Procedure [is] applicable."

[3] A third counterparty sought an extension from LBSF on the grounds that its only employee who had any familiarity with the swap transaction at issue in the Rule 2004 motion was on vacation, and that it could not address the Motion until he returned.  LBSF consented to the extension, and an order granting the Motion was later entered on consent.  First Data, however, has provided no similar reason to explain why it is unable to respond to the Motion at this time.

7.     Indeed, most counterparties have provided the categories of requested information voluntarily – without requiring LBSF to have to expend resources to file a Rule 2004 motion. First Data's position that the propriety of taking the particular discovery sought should be delayed until another time is both inefficient and unwarranted under Rule 2004.

## II.     FIRST DATA SHOULD RAISE ANY OBJECTIONS TO SPECIFIC REQUESTS AT THIS TIME, WHILE THE MOTION IS PENDING BEFORE THE COURT

8.     First Data notes that even if the motion is granted, LBSF should first serve a subpoena on First Data, to which it may "object in terms of scope, assert any available privileges, and, quash if Debtors do not provide reasonable time to comply." Obj. ¶ 9. LBSF has no objection to serving a subpoena upon First Data following entry of the Order. However, to the extent First Data objects outright to the scope of any of the Requests, or to LBSF's right generally to take discovery pursuant to Rule 2004, then LBSF believes that such objections must be raised now. For First Data to insist on service of a subpoena only so that it can file a motion to quash at a later date, when this Court is now considering the very issues that would be dealt with in such a motion, constitutes a waste of both the estate's assets and judicial resources, and will cause needless delay to the Debtor. Indeed, two of the cases cited by First Data directly contradict this approach. See In re Koma Equip. Leasing Co., 2007 WL 4219405, at *1-2 (evaluating the merits of specific discovery requests when considering a motion under Rule 2004 and specifically determining which production demands and topical inquiries will be included in the subpoena); In re Drexel Burnham Lambert Group, Inc., 123 B.R. at 705, 712 (determining the relevancy of document requests when considering a motion for discovery pursuant to Rule 2004). Moreover, First Data can hardly claim that it will be prejudiced or that its due process will be violated by raising these objections now, since the relief First Data could obtain via a

6

motion to quash will be no different from the relief it can obtain by simply objecting to the Requests now and seeking modification of the Order.

9. While the Objection does not detail which of the Requests First Data opposes, based on LBSF's discussions with First Data's counsel, First Data has indicated that it will refuse to provide any documents in response to Request No. 9 on the grounds that the documents sought are not relevant. This request seeks "[a]ll documents sufficient to identify any financial or accounting entries made on First Data's books and records as a result of the termination of the Terminated Transaction, and all supporting documents of other information related to the determination of such amounts." See Exhibit A to the Order. These documents are relevant and there is no basis to withhold their production to LBSF.

10. The notion of "relevancy" in the context of a Rule 2004 motion is much broader than in discovery conducted in an adversary proceeding. Indeed, Rule 2004 is "debtor-centric and allows considerable leeway for all manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's case." In re Hilsen, 208 WL 2945996, at *1; see also In re French, 145 B.R. 991, 992 (Bankr. D. S.D. 1992) (cited by First Data at Obj. ¶ 5) ("Bankruptcy Rule 2004 is designed to be a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case, and, as such, does not offer the procedural safeguards available under Rule 26 of the Federal Rules of Civil Procedure."). The Calculation Statement (as defined in the Motion), stated that the Termination Amount was approximately $14.3 million. See Mot. ¶ 14. At a minimum, these accounting documents will provide a data point by which LBSF can attempt to verify the accuracy of the Calculation Statement and whether the Termination Amount set forth therein is commercially reasonable. Moreover, LBSF believes, based on its own calculations, that the

7

Termination Amount should have been in excess of $14.3 million. If First Data's books reflect an accounting charge for the Terminated Transaction that is greater than the value of the Termination Amount reflected in the Calculation Statement, or if First Data has e-mails discussing the accounting for the Terminated Transaction that discuss amounts greater than the value of the Termination Amount reflected in the Calculation Statement, then LBSF will have strong support for an argument that such value is not commercially reasonable and that the estate may be owed additional funds by First Data. Thus, by any measure, the documents sought by Request No. 9 are important, and certainly relevant documents with information that is not in the Debtor's possession and should be produced.

11. Accordingly, rather than granting First Data a second bite at the apple, First Data should raise its objections to any of the Requests at this time, while the parties are before the Court and the Motion is pending. There is no reason for First Data to object at a later time, other than to needlessly delay this proceeding and waste the resources of the Debtor and the Court.

Dated: October 13, 2009
      New York, New York

By: /s/ Richard W. Slack
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession