Hearing Date and Time: November 19, 2009 at 2:00 p.m (Prevailing Eastern Time)
Objection Date and Time: November 3, 2009 at 4:00 p.m (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                  :
**In re**                                                         :   **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :   **08-13555 (JMP)**
                                                                  :
                                            **Debtors.**          :   **(Jointly Administered)**
                                                                  :
                                                                  :
-------------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO SECTIONS 105(a), 362 AND 365
OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE OF
BOARD OF EDUCATION OF THE CITY OF CHICAGO'S OBLIGATIONS
UNDER AN EXECUTORY CONTRACT AND TO ENFORCE THE
<u>AUTOMATIC STAY</u>**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of

Lehman Brothers Special Financing Inc. ("<u>LBSF</u>" and, together with Lehman Brothers

Holdings Inc. and its affiliated debtors in the above referenced chapter 11 cases, the

"<u>Debtors</u>") to compel performance of The Board of Education of the City of Chicago's

obligations under an executory contract and to enforce the automatic stay, all as more

fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton

Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 19, 2009 at 2:00 p.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard W. Slack, Esq., and Robert J. Lemons, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Wilbur F. Foster, Jr., Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity

**Hearing Date and Time: November 18, 2009 at 2:00 p.m (Prevailing Eastern Time)**
**Objection Date and Time: November 3, 2009 at 4:00 p.m (Prevailing Eastern Time)**

with a particularized interest in the Motion, so as to be so filed and received by no later than **November 3, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 13, 2009
      New York, New York

/s/ Richard W. Slack
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: November 19, 2009 at 2:00 p.m. (Prevailing Eastern Time)
Objection Date and Time:  November 3, 2009 at 5:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                                        :
**In re**                                               :    Chapter 11 Case No.
                                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al*.,   :    08-13555 (JMP)
                                                                        :
                     Debtors.                           :    (Jointly Administered)
------------------------------------------------------------------------x

**MOTION PURSUANT TO SECTIONS 105(a), 362 AND 365
OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE OF
BOARD OF EDUCATION OF THE CITY OF CHICAGO'S OBLIGATIONS UNDER AN
<u>EXECUTORY CONTRACT AND TO ENFORCE THE AUTOMATIC STAY</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), as debtor and debtor in possession (together with Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), files this motion and respectfully states:

**PRELIMINARY STATEMENT**

1.      This motion presents a straightforward application of section 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  Board of Education of the City of Chicago ("<u>Chicago Board</u>") is a party to the Agreement, as defined below, which is an executory

contract with LBSF.  Even though LBSF has not yet determined whether to assume or reject the Agreement, Chicago Board has improperly refused to perform its obligations under the Agreement.  Under well-settled authority, and as recently recognized by this Court in a similar motion against Metavante Corporation, Chicago Board must perform its obligations under the Agreement and this Court should compel Chicago Board's performance.

2. As explained in more detail below, the Agreement at issue is an interest rate swap transaction entered into by Chicago Board and LBSF in December 2003.  Generally, under the Agreement, LBSF agreed to make monthly payments based on a floating interest rate on a notional amount of $95.35 million and Chicago Board agreed to make semiannual payments based on a fixed interest rate on the same notional amount.

3. Due to declining interest rates, the value of LBSF's position has increased significantly.  Currently, Chicago Board owes LBSF approximately $1,079,647.98, representing the net of the amount that Chicago Board owed LBSF with respect to the March 1, 2009 payment date minus all principal amounts owed by LBSF under the Agreement as of October 1, 2009.  Yet, it has refused to pay this money to LBSF.  Chicago Board also owes LBSF default interest on such unpaid amounts.

4. On September 1, 2009, Chicago Board did make a payment to LBSF of $1,782,144.29, representing a net payment of the amount it owed with respect to the period from and including March 1, 2009 to but excluding September 1, 2009.  However, this payment did not include the amount Chicago Board owed with respect to the March 1, 2009 payment date, and thus Chicago Board still is in default under the Agreement.

5. In direct contravention of the Bankruptcy Code, Chicago Board improperly is attempting to take advantage of the Debtors' chapter 11 cases and avoid Chicago

Board's obligations to make its payments to LBSF. The purported rationale for this failure to make payments is that the commencement of the chapter 11 case and alleged pre-bankruptcy financial condition of LBHI constituted "Events of Default" under the Agreement. The failure to make payments under the Agreement, however, ignores section 365(e)(1) of the Bankruptcy Code, which expressly prevents parties from modifying the rights of a debtor under an executory contract "at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on – (A) the insolvency or financial condition of the debtor at any time before the closing of the case; [or] (B) the commencement of a case under this title . . . ."

6. Moreover, while LBSF is determining whether to assume or reject the Agreement, the unilateral cessation of required payments is prohibited and constitutes a violation of the automatic stay. By refusing to pay LBSF amounts owed under the Agreement, Chicago Board has effectively usurped LBSF's well-recognized right to assume or reject an executory contract. The Court, therefore, should order Chicago Board to comply with its contractual obligations and make the required payments under the Agreement.

7. On August 27, 2009, Chicago Board filed a complaint against LBSF seeking a declaratory judgment on certain issues related to Chicago Board's obligation to perform under the Agreement. On October 5, 2009, LBSF moved to dismiss. LBSF files this motion to compel Chicago Board to perform its contractual obligations.

## BACKGROUND

8. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

**JURISDICTION**

10. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**RELIEF REQUESTED**

11. Pursuant to sections 105(a), 362 and 365 of the Bankruptcy Code, LBSF requests that the Court compel Chicago Board to perform its obligations under the Agreement.

*A.    The Agreement*

12. LBSF and Chicago Board entered into a standard 1992 ISDA Master Agreement dated as of December 3, 2003 (the 1992 ISDA Master Agreement and schedule thereto are collectively referred to as the "Master Agreement"). (*See* Compl. ¶ 13.) The Master Agreement sets out the basic terms of the parties' contractual relationship and contemplates being supplemented by trade confirmations that provide the economic terms of the specific transactions agreed to by the parties. (*See* Compl. Ex. 1.) Under the Master Agreement, Chicago Board and LBSF entered into an interest rate swap transaction (the "Transaction"), the terms of which were documented pursuant to a trade confirmation dated December 8, 2003 (the "Confirmation") (the Master Agreement and Confirmation are collectively referred to as the "Agreement"). (*See* Compl. ¶ 14.)

13. Pursuant to the Agreement, LBSF has an obligation to pay 70% of the floating USD-LIBOR-BBA interest rate every month beginning January 1, 2004, on a notional

amount of $95,350,000, which notional amount declines over time as provided in Annex 1 to the Confirmation (the "Notional Amount"). (*See* Compl. Ex. A (Confirmation at 1-2).) Chicago Board has the obligation to pay a fixed rate of interest (3.771%) on the Notional Amount semiannually on the first calendar day of each March and September, beginning March 1, 2004 through March 1, 2034. (*See id.* (Confirmation at 2).) LBHI acts as a credit support provider for payment obligations of LBSF under the Agreement. (*See* Exhibit A of schedule to Master Agreement.) Section 2(c) of the Master Agreement permits any party owing a payment to net out any amounts payable to it by the other party.

14. An "Event of Default" is defined in Section 5(a) of the Master Agreement to include the bankruptcy of any party or credit support provider. Section 6(a) of the Master Agreement provides that if an Event of Default with respect to a party (the "Defaulting Party") has occurred and is continuing, the other party (the "Non-Defaulting Party") may designate an Early Termination Date for the Agreement.

15. Section 6(c) of the Master Agreement provides that if a Non-Defaulting Party designates an Early Termination Date under Section 6(a), then the Agreement, including all Transactions thereunder, will terminate on that date even if the Event of Default is later cured.

16. Section 6(e) of the Agreement provides that if an Early Termination Date occurs, the parties will make a final payment pursuant to the payment measure and method selected by the parties in the schedule to the Agreement.

17. In sum, if there is an Event of Default then the Non-Defaulting Party has the right to terminate the Agreement. Upon termination, a final payment is calculated and paid in order to put the parties into the same economic position (as determined at the time of the termination) as if the termination had not occurred. Under the terms of the Agreement, if

Chicago Board terminates the Agreement, it would owe a substantial payment to LBSF – reflecting the value of the Agreement to LBSF.

18.     Although Chicago Board has taken the position here that there has been an Event of Default based on the bankruptcy and/or the alleged pre-bankruptcy insolvency of LBHI and therefore has refused to perform, it has not attempted to terminate the Agreement.  Instead, Chicago Board has refused to perform its ongoing obligations under the Agreement.

19.     Under any circumstance — termination or continuation of the Agreement — Chicago Board owes substantial amounts to LBSF.  But rather than performing under the Agreement, as required by law, or at least attempting to terminate the Agreement pursuant to Section 560 of the Bankruptcy Code, Chicago Board seeks to use the Debtors' chapter 11 cases to deprive LBSF's estate and creditors of value by trying to escape its continuing obligations to LBSF.

### B.     *Chicago Board Wrongfully Has Withheld Payments from LBSF*

20.     From December 3, 2003 through September 1, 2008, the parties performed their payment obligations under the Agreement.  Because the floating rate owed by LBSF (70% of the prevailing USD-LIBOR-BBA interest rate) was less than the fixed rate owed by Chicago Board (3.771%) between October 1, 2008 and October 1, 2009, currently, Chicago Board owes LBSF approximately $1,079,647.98, representing the net of the amount that Chicago Board owed LBSF with respect to the March 1, 2009 payment date minus all principal amounts owed by LBSF under the Agreement as of October 1, 2009.  Yet, it has refused to pay this money to LBSF.  Chicago Board also owes LBSF default interest on such unpaid amounts.

21.     On September 1, 2009, Chicago Board did make a payment to LBSF of $1,782,144.29, representing a net payment of the amount it owed with respect to the period from and including March 1, 2009 to but excluding September 1, 2009.  However, this payment did

not include the amount Chicago Board owed with respect to the March 1, 2009 payment date, and thus Chicago Board still is in default under the Agreement.

22. Section 2(e) of the Agreement provides that "a party that defaults in the performance of any payment obligation will . . . be required to pay interest (before as well as after judgment) on the overdue amount to the other party on demand . . . for the period from (and including) the original due date for payment to (but excluding) the date of actual payment, at the Default Rate" (as that term is defined in the Agreement). As of October 13, 2009, the default interest owed by Chicago Board totals approximately $104,998.41. Thus, in addition to the payments that Chicago Board has refused to make, Chicago Board also owes LBSF default interest that continues to accrue.

23. The Court already has ruled on this issue in connection with a motion to compel performance of Metavante Corporation ("Metavante Motion"). (*See* Tr. from Sept. 15, 2009 Hearing at 110:3-6 (ordering Metavante to perform under an interest rate swap agreement), attached hereto as Exhibit A.) The Court should similarly require Chicago Board to perform its obligations.

## BASIS FOR RELIEF REQUESTED

### A. *The Agreement Is an Executory Contract that Can Be Enforced by LBSF*

24. The Agreement is an executory contract because material performance — *i.e.,* payment obligations — remains due by both LBSF and Chicago Board. *See, e.g., Shoppers World Cmty. Ctr. v. Bradlees Stores, Inc.* (*In re Bradlees Stores Inc.*), Case No. 01-CV-3934 (SAS), 2001 U.S. Dist. LEXIS 14755, at *19-20 (S.D.N.Y. Sept. 20, 2001); *In re Teligent, Inc.*, 268 B.R. 723, 730 (Bankr. S.D.N.Y. 2001) (citing Vern Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn. L. Rev. 439, 460 (1973)). Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

25.     A counterparty to an executory contract must perform its obligations under the contract while the debtor determines whether to assume or reject it. As this Court recognized in connection with the Metavante motion to compel performance, "Under relevant case law it is clear that while an unassumed executory contract is not enforceable against a debtor . . . such a contract is enforceable by a debtor against the counterparty." (Tr. from Sept. 15, 2009 hearing at 110:3-6.)

26.     Indeed, even if LBSF was in default under the Agreement, Chicago Board is compelled to perform because the contract remains enforceable against the counterparty to the contract. *See, e.g., U.S. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 625 (8th Cir. 1994) (holding that an unassumed executory contract is not enforceable against the debtor, notwithstanding debtor's default thereunder); *In re Monarch Capital Corp.*, 163 B.R. 899, 906 (Bankr. D. Mass. 1994) (same); *see also In re Feyline Presents, Inc.*, 81 B.R. 623, 626-27 (Bankr. D. Colo. 1988) (holding that non-debtor could not unilaterally enforce contractual right prior to debtor's decision to assume or reject, notwithstanding counterparty's contention that debtor was unable to perform obligations under the contract).

27. Accordingly, regardless of any defaults by LBSF, Chicago Board must continue to perform all of its obligations under the Agreement until LBSF assumes or rejects the Agreement.

### B. Chicago Board Cannot Use the Bankruptcy and Financial Condition of LBHI as a Reason Not to Perform

28. The only Events of Defaults that have occurred upon which Chicago Board relies are: (i) LBHI's supposed financial condition before its bankruptcy, and (ii) that LBHI commenced its chapter 11 case on September 15, 2008. (*See* Chicago Board Compl. filed in Adversary No.: 09-01455 (JMP) ¶ 28.) Chicago Board claims that it has no obligation to perform under the contract based solely on these events. Pursuant to section 365(e)(1) of the Bankruptcy Code, because sections 2(a)(iii) and 5(a)(vii) of the Master Agreement modify the contractual rights of LBSF based upon the commencement of bankruptcy cases or the financial condition of the Debtors, they are void and unenforceable against LBSF.

29. Such *ipso facto* clauses are void and unenforceable because the automatic termination or modification of a debtor's contractual rights deters rehabilitation and causes a forfeiture of assets. *See Summit Inv. & Dev. Corp. v. LeRoux (In re LeRoux)*, 69 F.3d 608, 610 (1st Cir. 1995). Courts have interpreted section 365(e)(1) to "abrogate[] the power of *ipso facto* clauses," such that "[n]o default may occur pursuant to an *ipso facto* clause and no reliance may be placed upon an alleged default where the only cause for default is the debtor's commencement of a bankruptcy case." *In re Texaco Inc.*, 73 B.R. 960, 965 (Bankr. S.D.N.Y. 1987) (holding that counterparty could not accelerate notes because such right was only triggered upon a bankruptcy default clause, which was void pursuant to section 365(e)(1)); s*ee also In re Ernie Haire Ford, Inc.*, 403 B.R. 750, 759 (Bankr. M.D. Fla. 2009) (holding that counterparty's

enforcement of right to terminate contract at will was unenforceable under section 365(e)(1) where the sole basis for termination was the debtor's bankruptcy filing).

30. Recently when addressing a virtually identical issue raised by LBSF in the Metavante Motion, the Court rejected Metavante's arguments that it was permitted to withhold performance owed to LBSF based on the bankruptcy filings of LBSF, LBHI, or the financial condition of either one.  (*See* Tr. from Sept. 15, 2009 hearing at 101-113.)  The Court reasoned that such a condition of performance is an *ipso facto* provision barred by section 365 and not protected by any of the Bankruptcy Code's "safe harbor" provisions that preserve certain contractual rights of certain counterparties to certain derivative contracts (the "Safe Harbor Provisions").  (*See id.* at 110:21-25 ("[Metavante's] conduct of riding the market for the period of one year, while taking no action whatsoever, is simply unacceptable and contrary to the spirit of these [safe-harbor] provisions of the Bankruptcy Code.").

31. Chicago Board's Complaint essentially raises two arguments to defend its withholding of performance – both of which were resolved by the Metavante ruling:  (1) that LBSF's rights under the Swap Agreement supposedly were modified when LBHI commenced its bankruptcy case and before LBSF commenced its bankruptcy case; and (2) that Chicago Board is relying on the bankruptcy and financial condition of LBHI and not LBSF.  Both of these arguments already have been rejected by this Court.

32. First, LBSF has the right to receive payments on bi-annual dates after the bankruptcy filing and as such the right to receive payments on those dates could not be known or altered until those payment dates.  The contractual provisions relied upon by Chicago Board did not permanently and immutably alter LBSF's contractual rights upon the commencement of LBHI's chapter 11 case the way they would have if Chicago Board had terminated the

Agreement on such date. Instead, as alleged failures of a condition precedent to Chicago Board's obligations, the alleged defaults continue to alter LBSF's rights on an ongoing basis whenever Chicago Board would have an obligation to pay LBSF but for such alleged failures. Accordingly, the modifications of LBSF's position occurred only after LBSF's bankruptcy. Under the Agreement, Chicago Board has an obligation to make payments twice a year, on March 1 and on September 1. Chicago Board concedes that it made a payment on September 1, 2008. (*See* Compl. ¶ 24.) Therefore, the next payment was due on March 1, 2009. Chicago Board failed to make that payment due to an alleged failure of a condition precedent. (*See, e.g.*, Compl. ¶ 17 ("Each payment obligation is expressly subject to the condition precedent that no 'Event of Default' has occurred and is continuing under the Swap Agreement.").) It was only at that point in time – well after the commencement of LBSF's chapter 11 case – that LBSF's contractual rights could have been modified due to the alleged events of default that allegedly occurred prior to the commencement of LBSF's chapter 11 case.

33. Next, Chicago Board argues that it was relying only upon the financial condition and bankruptcy of LBHI to justify its failure to perform, and not the financial condition or bankruptcy of LBSF. (*See* Compl. ¶ 49.) This argument also fails. (*See* Tr. from Sept. 15, 2009 Hearing at 108:12-13 (compelling performance even though "[i]t is clear that the filing of bankruptcy petitions by LBHI and LBSF constitute events of default under the Agreement.").) First, the Bankruptcy Code is clear that once LBSF filed for bankruptcy, its rights to receive performance under the Agreement may not be modified because of a provision in an executory contract that is conditioned on "the commencement of *a case* under this title." 11 U.S.C. § 365(e)(1)(B) (emphasis added). This language must be contrasted with the words used by Congress earlier in the same provision. When Congress intended to refer to the filing by the

Debtor it used the words "the case." *See id.* 365(e)(1) ("any right or obligation under such contract or lease may not be terminated or modified, at any time after commencement of *the case* solely because of a provision in such contract or lease….") (emphasis added). The plain words of the Bankruptcy Code thus make it clear that the contractual provision relied on by Chicago Board is an unenforceable *ipso facto* clause regardless of whether it modifies LBSF's rights based on its own bankruptcy *or* the bankruptcy of LBHI.

34. The sole purpose of LBHI's guarantee of LBSF's performance and the existence of LBHI as a Credit Support Provider is to protect against the financial condition of LBSF. Indeed, a guarantor is only ever needed if there are concerns regarding the financial condition of the principal obligor and its ability to perform. *See* Corpus Juris Secondum Guaranty § 2 ("A 'guaranty' is a contract of secondary liability, and a guarantor will be required to make payment only when the primary obligor has first defaulted."). Absent concerns about the financial condition of LBSF, LBHI's guarantee is irrelevant. Therefore, section 2(a)(iii)(1) constitutes an unenforceable *ipso facto* provision as to LBSF to the extent that it permits Chicago Board to withhold performance based on the financial condition or bankruptcy of LBHI. (*See generally* Tr. from Sept. 15, 2009 hearing at 112:13-18 ("[T]he argument that LBSF or LBHI may have defaulted under other specified indebtedness, as that term is defined in the Agreement, relies upon the financial condition of bankruptcy debtors to withhold performance. That is also unenforceable as an *ipso facto* clause that may not be enforced under the Bankruptcy Code Section 365(e)(1)(A).").)

35. Moreover, as this Court recognized in connection with the Metavante motion, the Agreement is a garden variety executory contract. (*See* Tr. from Sept. 15, 2009 hearing at 109:19-21.) As such, Chicago Board may not withhold performance prior to

US_ACTIVE:\43172204\06\43172204_6.DOC\58399.0003      12

assumption or rejection by the debtor. *See e.g., McLean Indus., Inc. v. Med. Lab. Automation, Inc. (In re McLean Indus., Inc.*), 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ("a debtor-in-possession's ability to continue to perform and to compel performance with respect to an assumable executory contract is usually the life blood of its reorganization."); *see also infra* Section III.D.

36.     Furthermore, the Safe Harbor Provisions[1] do not excuse Chicago Board's failure to perform under the Agreement. Generally, the Safe Harbor Provisions permit qualifying non-debtor counterparties to derivative contracts to exercise certain limited contractual rights triggered by a chapter 11 filing or financial condition. But the Safe Harbor Provisions only carve out a narrow exception to the general rule that *ipso facto* clauses are void. Specifically, the Safe Harbor Provisions are available to counterparties only to the extent that they seek to liquidate, terminate, or accelerate their contracts with the Debtors, or offset or net out their positions. *See, e.g.*, 11 U.S.C. § 560. All other uses of *ipso facto* provisions remain unenforceable under the Bankruptcy Code. *See generally* 11 U.S.C. 365(e)(1); *In re Enron Corp.*, 306 B.R. 465, 472-74 (Bankr. S.D.N.Y. 2004) (recognizing, under similar circumstances, limited scope of carve out of safe harbor provisions from general rule prohibiting *ipso facto* clauses).

37.     Here, Chicago Board has neither attempted to terminate, liquidate or accelerate the Agreement nor to offset or net out its position. Indeed, if the Agreement had been terminated, Chicago Board would owe LBSF a substantial amount of money. Instead, Chicago Board is *withholding* performance under the Agreement, which is not permitted under the plain terms of the Safe Harbor Provisions. Neither section 2(a)(iii) of the Agreement, an

---

[1] These provisions are contained in sections 362(b)(6), (7) and (17); 546(e), (f) and (g); 555; 556; 560; and 561 of the Bankruptcy Code.

unenforceable *ipso facto* clause, nor the Safe Harbor Provisions, which do not apply, permit this type of behavior at the expense of the Debtors' estates. Chicago Board should be compelled to perform under the Agreement.

C.   **The Court Has the Authority to Compel Chicago Board's Performance and Enforce the   Automatic Stay**

38.   This Court has the authority to compel Chicago Board to continue to perform its obligations under its executory contract with LBSF. For example, in *In re Ernie Haire Ford*, a court recently granted a debtor's motion to compel performance when the debtor's counterparties had improperly terminated their contracts based on the commencement of the debtor's bankruptcy case. 403 B.R. at 760. The court reasoned that the contracts were still in effect and "[w]hile these agreements are in full force and effect, the parties are bound by their terms and must continue to operate under the agreements in good faith." *Id.* at 761. Likewise, this Court recently granted a motion to compel Metavante Corporation to perform under its obligations under a similar agreement. (*See* Docket No. 5209.)

39.   LBSF's right to receive payments under the Agreement is property of the estate. *See, e.g., In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay.") (citations and internal quotations omitted); *In re Baltimore Marine Indus.*, 476 F.3d 238, 240 (4th Cir. 2007) ("Amounts owed to the debtor under existing contracts are included within the estate."); *In re Ernie Haire Ford*, 403 B.R. at 760 ("[Debtor's] rights under these executory contracts are property of the bankruptcy estate, and, therefore, exercising a terminable-at-will provision is not permitted without relief from stay.").

40.   Chicago Board's attempts to exercise control over such property of the estate by failing to make payments under the Agreement violates the automatic stay. *See* Tr.

from Sept. 15, 2009 Hearing at 113:2-8 ("This is a violation of the automatic stay imposed by Code Section 362. . . . Metavante is directed to perform under the Agreement until such time as LBSF and LBHI determine whether to assume or reject."); *In re Broadstripe, LLC*, 402 B.R. 646, 657 (Bankr. D. Del. 2009) ("By refusing to perform its obligations under the Member Agreement, NCTC is interfering with Broadstripe's property rights under the Member Agreement and acting in violation of the automatic stay.").[2]

## **NOTICE**

41. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) Chicago Board. The Debtors submit that no other or further notice need be provided.

42. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

---

[2] LBSF reserves the right to at a later date seek sanctions for Chicago Board's knowing violation of the automatic stay.

Dated: October 13, 2009
       New York, New York

          /s/ Richard W. Slack_____
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor and
Debtor In Possession