# A. 4

Page 1

1          HIGHLY CONFIDENTIAL - PATRICK CLACKSON

2               UNITED STATES BANKRUPTCY COURT

3               SOUTHERN DISTRICT OF NEW YORK

4     - - - - - - - - - - - - - - - - - - - - - -

5     In Re:

                                        Chapter 11

6

7     LEHMAN BROTHERS    Case No. 08-13555(JMP)

      HOLDINGS, INC. et al., (Jointly Administered)

8

9                    Debtors.

10    - - - - - - - - - - - - - - - - - - - - - - -

11                  HIGHLY CONFIDENTIAL

12           DEPOSITION OF PATRICK CLACKSON

13              Friday, September 4, 2009

14                 At:  9:00 am

15                   Taken at:

16                   Barclays

                 1 Churchill Place

17                   London

                 United Kingdom

18

19    Reported by: AILSA WILLIAMS

      Certified LiveNote Reporter

20

21

22

23

24

25

## Page 2

```
1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2         A P P E A R A N C E S
3    JONES DAY, LLP
     Attorneys for Lehman Brothers, Inc.
4    222 East 41st Street
     New York, NY 10017-6702
5    BY: JAYANT W. TAMBE, ESQ
     BRIDGET CRAWFORD, ESQ
6
     BOIES, SCHILLER & FLEXNER, LLP
7    Attorneys for Barclays Capital and the
     Witness
8    5301 Wisconsin Avenue N.W
     Washington D.C 20015
9    BY: HAMISH HUME
10   QUINN, EMANUEL, URQUHART, OLIVER & HEDGES,
     LLP
11   Attorneys for the Creditors Committee
     16 Old Bailey
12   London, United Kingdom EC4M 7EG
     BY: MATTHEW BUNTING, ESQ.
13
     HUGHES, HUBBARD & REED, LLP
14   Attorneys for the SIPA Trustee
     1775 I Street, N.W
15   Washington D.C. 20006-2401
     BY: JOHN F. WOOD
16   Also Present:
17      PHILIP E. KRUSE: Alvarez & Marsal
18
19
20
21
22
23
24
25
```

## Page 3

```
1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2
3              I N D E X
4    PATRICK CLACKSON ... ... ... ... ... ... ... ...5
5    DIRECT EXAMINATION BY MR. TAMBE: ... ... ... ... ...5
6    CROSS-EXAMINATION BY MR. WOOD:  ... ... ... ... ... 149
7    CROSS-EXAMINATION BY MR. BUNTING: .. ... ... ... 163
8    FURTHER CROSS-EXAMINATION BY MR. ... ... ... ... ... 170
       WOOD:
9
10           INDEX OF EXHIBITS
11   Exhibit 349A (Privileged, not .. ... ... ... ... .. .27
       attached)
12
     Exhibit 350A (Privileged) .. ... ... ... ... ... .30
13
     Exhibit 351A E-mail, Sept 15, 08 ... ... ... ... .31
14
     Exhibit 352A E-mail, Sept 16, 08 ... ... ... ... .36
15
     Exhibit 353A E-mail, Sept 24, 08 ... ... ... ... .41
16
     Exhibit 354A E-mail, Sept 16, 08 ... ... ... ... .42
17
     Exhibit 355A E-mail, Sept 16, 08 ... ... ... ... .59
18
     Exhibit 356A E-mail, Sept 17, 08 ... ... ... ... .71
19
     Exhibit 357A E-mail, Sept 17, 08 ... ... ... ... .73
20
     Exhibit 358A E-mail, Sept 18, 08 .. ... ... ... ... .85
21
     Exhibit 359A E-mail, Sept 20, 08 ... ... ... ... .87
22
     Exhibit 360A E-mail, Sept 20, 08 ... .. ... ... ... .88
23
     Exhibit 361A E-mail, Sept 22, 08 ... ... .. ... .88
24
     Exhibit 362A E-mail, Sept 19, 08 ... . .. ... ... .98
25
     Exhibit 363A E-mail, Sept 23, 08 ... ... ... ... 101
     Exhibit 363A E-mail, Sept 23, 08 ... ... ... ... 101
```

## Page 4

```
1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2    Exhibit 364A E-mail, Sept 23, 08 .. ... ... ... ... 104
3    Exhibit 365A E-mail, Sept 24, 08 .. ... ... ... ... 105
4    Exhibit 366A E-mail, Sept 21, 08 ... ... ... ... 112
5    Exhibit 367A E-mail, Sept 21, 08 ... ... ... ... 113
6    Exhibit 368A E-mail, Sept 23, 08 ... ... ... ... 118
7    Exhibit 369A E-mail, Sept 24, 08 ... ... ... ... 123
8    Exhibit 370A E-mail, Sept 23, 08 ... ... ... ... 124
9    Exhibit 371A Barclays Results .. ... ... ... ... 146
10   Exhibit 372A E-mail, Sept 17, 08 ... ... ... ... 150
11   Exhibit 373A E-mail, Sept 22, 08 ... ... ... ... 158
12   Exhibit 374A E-mail, Sept 23, 08 ... ... ... ... 160
13   Exhibit 375A E-mail, Sept 29, 08 ... ... ... ... 161
14   Exhibit 376A E-mail, Sept 17, 08 ... ... ... ... 169
15   Exhibit 377A BCI-EX-00115843-46 ... ... ... ... 178
16
17
18
19
20
21
22
23
24
25
```

## Page 5

```
1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2         PATRICK CLACKSON
3         Having been duly sworn,
4         Testified as follows:
5    DIRECT EXAMINATION BY MR. TAMBE:
6         MR. TAMBE:  Morning, Mr. Clackson.  My
7    name is Jay Tambe with the law firm Jones Day,
8    special counsel to Lehman Brothers Holdings Inc.
9    With me is my colleague, Bridget Crawford.
10        I will have the lawyers in the room
11   introduce themselves and we will get started.
12        MR. BUNTING:  Morning, I am Matthew
13   Bunting from Quinn, Emanuel, Urquhart, Oliver &
14   Hedges representing Creditors Committee.
15        MR. KRUSE:  Phillip Kruse with Alvarez &
16   Marsal on behalf of the LBHI estate.
17        MR. WOOD:  John Wood from Hughes,
18   Hubbard & Reed.  We represent the SIPA Trustee.
19        MR. HUME:  Hamish Hume, Boies, Schiller
20   & Flexner, representing Barclays and the witness.
```

REDACTED

PAGES 6 - 37 REDACTED

Page 38

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON

REDACTED

Page 39

REDACTED

23    Q.  And there is a valuation adjustment, do
24    you see, at the top of the spreadsheet,
25    $3.5 billion.  Do you see that?

Page 40

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2    A.  Yes.
3    Q.  Would that valuation adjustment have
4    been arrived at through the process you talked
5    about before, where the Barclays folks would have
6    put a fair value adjustment?
7    A.  So what happened, there was an arm's
8    length, a very arm's length, that is completely my
9    recollection, negotiation between ourselves and
10   Lehmans in terms of the assets we were taking on,
11   the liabilities which we were going to take on and
12   about the valuations of those.
13        In terms of the assets, our experts went through,
14   and I think in this level it possibly was down to a CUSIP by
15   CUSIP level, but I think you should probably talk to them
16   and get the precise details from them, went through the
17   details of the portfolio together with Lehmans people to
18   agree what the fair value for taking on that portfolio would
19   be.  I think the valuation adjustment, my understanding,
20   came out of that negotiation.  So it was not just what the
21   Barclays people thought.
22        My specific recollection is that there were some
23   portfolios where we had a disagreement, that we thought the
24   valuations were lower than Lehmans and we could not
25   triangulate the difference, and therefore we agreed to

Page 41

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2    exclude those portfolios because we could not triangulate
3    them.  So where we had a valuation adjustment it was agreed
4    through negotiation, is my understanding.
5    Q.  And then that negotiated value was
6    listed in the total assets category as a value of
7    the assets being acquired?
8    A.  Yes, so in terms of the agreement that
9    would then have been the agreed value of those
10   assets which were taken on under the contract.
11        (Exhibit 353A marked for identification)
12   Q.  I have placed before you a one page
13   document marked Exhibit 353A.  Let me know when
14   you are done looking at it.
15        You will see this is a discussion between John
16   Varley, the Group Chief Executive, and Chris Lucas about
17   negative goodwill.  Do you see that?  Is it fair to say, if
18   I read this correctly, Mr. Lucas is saying his current
19   thinking, as of September 24, was negative goodwill was hard
20   to exclude, given that it both accounting profit and tier
21   one for regulatory purposes.  Do you see that?
22   A.  Yes.
23   Q.  Is it the case Mr. Lucas just has
24   a different view of whether or not negative
25   goodwill constitutes profit than you do?

Page 42

1    **HIGHLY CONFIDENTIAL - PATRICK CLACKSON**
2        A.  What he is talking about here, just to
3    be clear, he is saying it constitutes economic
4    profit.
5        **Q.  "Accounting profit" it says?**
6        A.  Sorry, accounting profit.  I think I am
7    probably saying technically what it constitutes,
8    in terms of I think what Chris is saying is
9    technically it works out -- technically it is
10   goodwill, but in terms of -- it rolls up into
11   consolidated profit at a group level, so that
12   would be correct, yes.

REDACTED

Page 43

1    **HIGHLY CONFIDENTIAL - PATRICK CLACKSON**

REDACTED

Page 44

1    **HIGHLY CONFIDENTIAL - PATRICK CLACKSON**

REDACTED

Page 45

1    **HIGHLY CONFIDENTIAL - PATRICK CLACKSON**

REDACTED

PAGES 46 - 73 REDACTED

Page 74

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON

REDACTED

Page 75

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON

REDACTED

24    **Q.  In fact, what you find during that week**
25    **is the number that you ascribed to bonus accrual,**

Page 76

1    **HIGHLY CONFIDENTIAL - PATRICK CLACKSON**
2    **as the week wears on, is a 2 billion-dollar**
3    **number.  Correct?**
4    A.  The number which Lehmans produced, there
5    were various versions, but their proforma balance
6    sheets, and they produced a balance sheet which
7    had a 2 billion-dollar number for comp accrual.
8    At that time my understanding of that number for
9    comp accrual was that that would cover us for all
10   compensation costs, which may be costs which were
11   costs on day one in terms of taking on the
12   business and, ratcheting back, we were taking on
13   about 10,000 people.  In the middle of the night I
14   had the conversation about some of those people we
15   knew would be duplicating with functions we had,
16   so we knew we were not going to continue to employ
17   all 10,000 people.  Therefore we knew that we
18   would have to -- if we did take on those people we
19   would have to sever a number of those people.  So
20   we were taking on potentially -- we didn't know
21   what it was, an unknown severance liability.
22         Some of that severance cost, and again I was not
23   sure how that would be accounted for, whether that would be
24   accounted for as a day one cost in terms of the acquisition
25   balance sheet, which would be reflected in the acquisition

Page 77

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2    balance sheet or was ongoing running costs of the business,
3    and I think my assumption at this time was that it would be
4    taken as ongoing running costs of the business.
5         The 2 billion number which appeared in the
6    documents, though, was a number which I think was produced
7    by Lehmans.  I know it was not produced by us anyway.

REDACTED

PAGES 78 - 165 REDACTED

Page 166

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON

REDACTED

---

Page 167

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2        A.  As I said, I was in New York for some of
3    that time and I didn't attend any meetings.
4    I attend some meetings with the FSA and not other
5    meetings.  It really depends what the topic is and
6    who we are talking to at the FSA.
7        Q.  Just to clarify on the move, your travel
8    back from New York, what was the reason for coming
9    back from New York that week, on the Wednesday?
10       A.  I can't actually recall, apart from I
11   had left on a hurry on the Friday to go to New
12   York and I am not sure even if I had sufficient
13   clothes, so it may have been practical or boring
14   reasons, but I also I suppose at the time I left,
15   having done the Lehman two transaction, I think at
16   the time we believed we had done the transaction
17   and it would just go through.  So when I left we
18   had not -- or when I left some of the problems had
19   not started arising.
20       Q.  Could I ask one question about an
21   exhibit we looked at earlier, which I think is
22   Exhibit 362A, a single page e-mail about an inch
23   and a half down the stack.
24       A.  Yes.
25       Q.  As discussed earlier, the first e-mail

---

Page 168

1        HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2    in that chain is from James Trevelyan, asking for
3    an understanding of how the negative goodwill
4    works?
5        A.  Yes.
6        Q.  And you respond by saying that this is
7    "the official line".
8        A.  Yes.
9        MR. HUME:  Objection.
10       Q.  Your e-mail and reply states that the
11   official line is as follows.
12       A.  No, it is not a reply to James.
13       Q.  Okay.
14       A.  I forward this e-mail to Rich.
15       Q.  Were there other lines?
16       A.  There was a lot of confusion around the
17   deal and a lot of numbers changing.  You will have
18   seen from some of the equities and some of the
19   other e-mails that a lot of people were saying how
20   does this work and how does that work, and there
21   were not any other lines.  What I was trying to do
22   is just to make sure that Rich and I had the same
23   clear understanding so that we didn't harbor any
24   more confusion around the organization.
25       Q.  So was it your --

---

Page 169

1        HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2        A.  It was my understanding.
3        Q.  Was it your role to determine the
4    official line?
5        MR. HUME:  Objection, vague and
6    ambiguous.
7        A.  I am not quite sure what that means, but
8    just in terms of explaining the transaction,
9    Mr. Ricci and myself were the two main people
10   involved.  So in terms of how did I look at or
11   understand some of these things, I wanted to make
12   sure he understood that as well.

REDACTED

PAGES 170 - 181 REDACTED

Page 182

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON

REDACTED

Page 183

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON

REDACTED

13
14
15
16
17
18
19
20
21
22
23
24
25

Page 184

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2
3            CERTIFICATE OF DEPONENT
4
5    I, Patrick Clackson, hereby certify that I have
     read the foregoing pages, numbered 1 through 186,
6    of my deposition of testimony taken in these
     proceedings on Friday, 4 September, 2009, and,
7    with the exception of the changes listed on the
     next page and/or corrections, if any, find them to
8    be a true and accurate transcription thereof.
9
10
11
12
13   Signed: ........................
14   Name:   Patrick Clackson
15   Date: ........................
16
17
18
19
20
21
22
23
24
25

Page 185

1    HIGHLY CONFIDENTIAL - PATRICK CLACKSON
2            CERTIFICATE OF COURT REPORTER
3
4    I, AILSA WILLIAMS, an Accredited LiveNote Reporter
     with European Deposition Services, London,
5    England, hereby certify that the testimony of the
     witness Patrick Clackson in the foregoing
6    transcript, numbered pages 1 through 186, taken on
     Friday, 4 September, 2009 was recorded by me in
7    machine shorthand and was thereafter transcribed
     by me; and that the foregoing transcript is a true
8    and accurate verbatim record of the said
     testimony.
9
10   I further certify that I am not a relative,
     employee, counsel or financially involved with any
11   of the parties to the within cause, nor am I an
     employee or relative of any counsel for the
12   parties, nor am I in any way interested in the
     outcome of the within cause.
13
14
15
16
17   Signed: ........................
18   AILSA WILLIAMS
19   Dated: 9/4/2009
20
21
22
23
24
25

```
                                        Page 186
 1        HIGHLY CONFIDENTIAL - PATRICK CLACKSON
 2
 3                    E R R A T A
 4             Deposition of Patrick Clackson
 5     Page/Line No.    Description     Reason for
 6     change
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23     Signed:  ...................
24     Name:   Patrick Clackson
25     Date:   ...................
```