# A. 121

# Filed Under Seal Pursuant To Protective Order

# A. 122

# Filed Under Seal Pursuant To Protective Order

# A. 123

**From:**    Lucas, Chris : Group Exec
**Sent:**    Wed, 24 Sep 2008 15:16:43 GMT
**To:**    Varley, John : Group Exec
**Subject:** Re: negative goodwill=economic profit?

---

I have not had a discussion on this but my current thinking is that it is hard to exclude it given it is both accounting profit and tier 1 for regulatory purposes

I will use the Beijing trip to think about it and discuss with you before concluding

-----Original Message-----
From: Varley, John : Group Exec
To: Lucas, Chris : Group Exec
Sent: Wed Sep 24 13:55:00 2008
Subject: negative goodwill=economic profit?

Chris
Bob believes that the negative goodwill constitutes economic profit.
It seemed to me that we needed to get an authoritative view on this from the group finance director before we start bandying it around!

Has Patrick consulted you on it?
John


John Varley
Group Chief Executive

Tel: 020 7116 1000 (cw 6006-1000)
Fax: 020 7116 7780 (cw 6006-7780)
e-mail address: john.varley@barclays.com
Address: One Churchill Place, London E14 5HP
COMPANY CONFIDENTIAL



EXHIBIT

353 A

9.4.09  AN

**HIGHLY CONFIDENTIAL**

# A. 124

**From:** Shapiro, Mark J.
**Sent:** Thu, 25 Sep 2008 14:59:08 GMT
**To:** House Joseph
**Subject:** Status

Joe, after the tumultuous week here at Lehman (now Barclays Capital), I have finally come up for air and wanted to let you know that. I was thrust into having to lead the bankruptcy filing and sale to Barclays, which I will tell you about sometime over drinks or dinner, and luckily we were able to save most jobs in the US. Things should pretty much continue on for me as I expect to be the Head of the Restructuring and Finance efforts at Barclays once the dust all settles.

Give me a call when you have a chance. I understand the confi was signed up relating to Delta/NWA and that information should be forthcoming. Regards, Mark

**HIGHLY CONFIDENTIAL**

# A. 125

**From:**  Romain, Gary: Finance (LDN)
**Sent:**  Thu, 25 Sep 2008 17:58:49 GMT
**To:**  Westwood, Jai: Barclays Capital (NYK)
**CC:**  Utley, Charles: Finance (NYK)
**Subject:** RE: Cure payments

phew - thanks

**From:**  Westwood, Jai: Barclays Capital (NYK)
**Sent:**  Thursday, September 25, 2008 1:58 PM
**To:**  Romain, Gary: Finance (LDN)
**Cc:**  Utley, Charles: Finance (NYK)
**Subject:**    RE: Cure payments

Sure are. Sum of the 3.

**From:**  Romain, Gary: Finance (LDN)
**Sent:**  Thursday, September 25, 2008 1:54 PM
**To:**  Westwood, Jai: Barclays Capital (NYK)
**Cc:**  Utley, Charles: Finance (NYK)
**Subject:**    RE: Cure payments

Jai,

Just one point of clarification - there seem to be three lists of potential cure payments - IT, non-IT and real estate. I just wanted to check that you are covering all three categories in the high level numbers you were indicating below.

Thanks,

Gary

**From:**  Romain, Gary: Finance (LDN)
**Sent:**  Thursday, September 25, 2008 12:35 PM
**To:**  Westwood, Jai: Barclays Capital (NYK)
**Subject:**    RE: Cure payments

Thanks Jai - that's great. It's a lower number than I'd been thinking of, which is good.

If you could let me know if things move on that would also be much appreciated.

Regards,

Gary

**From:** Westwood, Jai: Barclays Capital (NYK)
**Sent:** Thursday, September 25, 2008 12:31 PM
**To:** Romain, Gary: Finance (LDN)
**Subject:** RE: Cure payments

I understood the critical piece was $158m when got it Friday. This has errors but err on the side off $125m as best guess

We found some duplicates totaling $12m straight off but other vendors we owe more. Range of $125m -$150m should work out ok

Will keep you appraised

**From:** Romain, Gary: Finance (LDN)
**Sent:** Thursday, September 25, 2008 12:25 PM
**To:** Westwood, Jai: Barclays Capital (NYK)
**Subject:** Cure payments

Jai,

Patrick Clackson has suggested that you may be able to assist with an area of judgment affecting the acquisition balance sheet. In that balance sheet, we need to make provision for the cure payments we actually expect to make (+ that the related suppliers would expect us to make), ie those that relate to services essential to continue the LBI business. This would seem a significant exercise to complete in detail (I've seen the listing and understand how long it is...), but we are trying to make an initial estimate of the amount - today if at all possible.

I believe you are looking into this general area and was hoping you might have an initial view of the proportion of the cures we might end up making? Believe the total list is something like $800m but would imagine we'll end up rejecting a significant proportion of the underlying contracts...

Hope you can help.

Regards,

Gary

Gary Romain
Director
Technical Accounting and Private Equity Finance

**Finance**
Barclays Capital | 10 The South Colonnade | Canary Wharf | London | E14 4PU
Tel: +44 (0)20 77734782 Mob: +44 (0)7733 005889
gary.romain@barclayscapital.com

**HIGHLY CONFIDENTIAL**

# A. 126

# Excerpt of Deposition Exhibit 146B

| | |
|---|---|
| **From:** | Azerad, Robert |
| **Sent:** | Sun, 28 Sep 2008 14:54:32 GMT |
| **To:** | Hraska, James W; Denig, Nancy |
| **CC:** | Tonucci, Paolo; Vergel de Dios, John |
| **Subject:** | Reconciliation Barclays - Lehman File |

**Importance:** High

Jim and Nancy

Paolo received the following file from Barclays, which, i believe, is supposed to represent the transfers that took place on Thursday and Friday.

<<Barclays Financing Collateral List (Barc Ops) 09-20-2008.xls>>
I tried to reconcile this file versus our own files (one for the Thursday transfer, one for the Friday transfer), which I am attaching for reference in case these are not the reference files

<<CORRECTED Thursday Transfers to Barclays BONY agreed (5).xls>>
<<Copy of Trf09192008 (3) (2).xls>>

There are meaningful differences between the Barclays and Lehman files. The attached files provide a summary by settlement system (Fed vs. DTC). The most worrying difference appears to be CUSIP that show up in one file but not in the other. For Fed settled securities, there are 5 CUSIPs that are in the Barclays file but not in the Lehman file and 5 CUSIPs that are in the Lehman file but not in the Barclays file (hopefully these are the same securities). For DTC settled securities, there are 1,165 CUSIPs that are in the Barclays file but not in the Lehman file and 1,563 CUSIPs that are in the Lehman file but not in the Barclays file! Additionally, there are differences in market value (this would be expected however; nevertheless the difference on the Fed settled securities ($187 million) appears large for what are meant to be liquid securities).

<<LEH BAR Reconciliation.xls>>

Can you work with the Barclays operations team (Paolo has been in contact with Marcus Morton) to reconcile the differences? Let me know if I can help.

Thanks

Robert



HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014389

**<u>Placeholder</u>**
Document produced in native format

HIGHLY CONFIDENTIAL

## Placeholder
## Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014391

## Placeholder
### Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014392

## Placeholder
## Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014393

## FED Settled

| | # of Records | # of CUSIPs | Mkt Value |
|---|---|---|---|
| Barclays File | 4,365 | 4,365 | 28,677,439,093 |
| LEH File | 4,964 | 4,365 | 28,490,469,091 |
| **Difference** | **599** | **-** | **(186,970,002)** |
| CUSIP in BAR file but not in LEH File | 5 | See Missing CUSIP | |
| CUSIP in LEH file but not in BAR File | 5 | See Missing CUSIP | |

## DTC Settled

| | # of Records | # of CUSIPs | Mkt Value | |
|---|---|---|---|---|
| | 6,316 | 6,285 | 15,426,958,432 | Thursday Transfer |
| | 3,538 | | 14,412,455,806 | Friday Transfer |
| | 2,969 | | 1,035,356,662 | |
| | 6,507 | 6,461 | 15,447,812,468 | Total |
| **Difference** | **191** | **116** | **20,854,036** | |
| | 1,165 | See Missing CUSIP | | |
| | 1,563 | See Missing CUSIP | | |

# A. 127

| | |
|---|---|
| **From:** | Forrest, Monty |
| **Sent:** | Tue, 30 Sep 2008 22:09:01 GMT |
| **To:** | Blackwell, Alastair; Tonucci, Paolo |
| **CC:** | Hraska, James W; Denig, Nancy; Ullman, Neal (NY) |
| **Subject:** | Additional Collateral Move to BarCap |

---

<<Book1.xls>>

All here is a summary of the what has been moved in order to satisfy the additional collateral move of $1.95b to BarCap. I have also shown the outstanding amount due. We will continue to identify available unencumbered collateral as the stock record breaks clean up.

Rgds,

Monty



EXHIBIT
1593
KK 8/14/09

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00017385

| CUSIP | SEC TYPE | SEC SUBTYPE | Eligible | M/V | |
|---|---|---|---|---|---|
| 57582PJQ4 | MUNIBOND | MUNIFLT | 75,000,000 | 75,002,812 | |
| 43730EAA4 | CORPBOND | CBONDCNV | 24,272,000 | 21,735,455 | |
| 64986MUV5 | MUNIBOND | MUNIFLT | 14,125,000 | 14,125,194 | |
| 7178182U1 | MUNIBOND | MUNIFLT | 8,000,000 | 8,000,151 | |
| 746189HG7 | MUNIBOND | MUNIFLT | 8,000,000 | 8,000,150 | |
| 709223TC5 | MUNIBOND | MUNIFLT | 8,000,000 | 8,000,004 | |
| 574217JB2 | MUNIBOND | MUNIFLT | 5,200,000 | 5,200,098 | |
| 841513LJ1 | MUNIBOND | MUNICIPL | 3,215,149 | 2,824,028 | delivered 3,093,446 |
| 92336GAF3 | CORPBOND | CFGN | 2,331,000 | 1,329,362 | |
| 12501BAR5 | CORPBOND | CBOND | 1,825,000 | 858,524 | |
| 870757AA9 | CORPBOND | CBOND | 2,000,000 | 630,240 | |
| 442488AP7 | CORPBOND | CBOND | 425,000 | 242,369 | |
| 517289104 | | | 14,000 | 139,999 | |
| 29255U104 | | | 43,500 | 100,046 | |
| 422905109 | | | 20,000 | 99,998 | |
| 69373E103 | | | 19,346 | 58,616 | |
| 897053AB0 | CORPBOND | CBOND | 110,000 | 42,933 | |
| 462241AP5 | MUNIBOND | MUNICIPL | 25,000 | 30,398 | |
| 744320AG7 | CORPBOND | CBONDCNV | 20,000 | 19,582 | |
| 721467AD0 | CORPBOND | CBOND | 10,000 | 10,978 | |
| 410801104 | | | 2,000 | 10,000 | |
| 14140G106 | | | 5,000 | 10,000 | |
| 554067AB4 | CORPBOND | CBOND | 68,000 | 1,378 | |
| 404167108 | | | 400 | 1,333 | |
| 975515859 | | | 3,268 | 1,226 | |
| 255213209 | | | 166 | 1,000 | |
| 253909105 | | | 1,000 | 1,000 | |
| 149109100 | | | 500 | 1,000 | |
| 386901102 | | | 500 | 1,000 | |
| 158711994 | | | 250 | 1,000 | |
| 82966U129 | | | 60,450 | 605 | |
| 06652B806 | | | 100 | 455 | |
| 006ESC958 | | | 18,500 | 19 | |
| 156ESCAG0 | | | 100,000 | 10 | |
| 55405T101 | EQUITY | COMMON | 725,069 | 10,513,501 | |
| 059784207 | EQUITY | COMMON | 1,218,000 | 4,323,900 | |
| 278858105 | EQUITY | COMMON | 13,500 | 80,000 | |
| 25470F302 | EQUITY | COMMON | 1,648 | 26,121 | |
| 40426E101 | EQUITY | COMMON | 14,020 | 20,007 | |
| 03525N109 | EQUITY | COMMON | 1,524 | 11,064 | |
| 252780200 | EQUITY | COMMON | 2,000 | 11,000 | |
| 46072H108 | EQUITY | COMMON | 178,000 | 7,120 | |
| 81724Q107 | EQUITY | COMMON | 1,132 | 4,885 | |
| 778669101 | EQUITY | COMMON | 27,049 | 1,623 | |
| 913833109 | EQUITY | COMMON | 134 | 1,000 | |
| 404450306 | EQUITY | PREFCONV | 74 | 474 | |
| 44924Q400 | EQUITY | MLP | 600 | 300 | |
| 152609103 | EQUITY | COMMON | 168 | 292 | |
| 157087107 | EQUITY | COMMON | 39 | 189 | |
| 67107W100 | EQUITY | ADR | 45 | 176 | |

| 132618109 | EQUITY | COMMON | 10 | 102 |
| 67461T107 | EQUITY | COMMON | 224 | 24 |
| 84741Y103 | EQUITY | COMMON | 200 | 12 |
| 98147T104 | EQUITY | COMMON | 11,750 | 12 |
| 98138R109 | EQUITY | COMMON | 41 | 10 |
| | | | | 161,482,771 |

| | | | | |
|---|---|---|---:|---:|
| 053472AC| AVALON F | CC | N/R | 19,650,000.00 | 13,830,002.95 |
| 12669EW8 | CWHL 200 | AAA | NR | 25,000.00 | 7,884.74 |
| 194181AB| COLIS 1A | NR | BAA2 | 4,750,000.00 | 3,697,152.58 |
| 22942MAA | CSMC 200 | BB | NR | 25,000.00 | 16,104.19 |
| 235ESCAL | DANA COF | N/R | N/R | 4,450,000.00 | 107,912.50 |
| 31394ACL| FNW 2004 | N/R | N/R | 25,000,000.00 | 8,046,904.29 |
| 31394XVD | FSPC T-6( | N/R | N/R | 11,027,410.00 | 3,588,954.88 |
| 45660LWU | INDX 2005 | AAA | A3 | 198,973,015.00 | 1,941,753.56 |
| 45661EAW | INDX 2006 | AAA | AAA | 165,000,000.00 | 33,995,782.65 |
| 46625M6U | JPMCC 20 | AAA | NR | 300,000.00 | 289,624.20 |
| 46625YNC | JPMCC 20 | AAA | AAA | 75,000.00 | 67,473.33 |
| 50180CAB | LBUBS 20( | AAA | NR | 7,889,000.00 | 7,581,145.36 |
| 50180JAD| LBUBS 20( | AAA | NR | 1,025,000.00 | 868,817.85 |
| 52108HE3| LBUBS 20( | AAA | AAA | 130,000.00 | 127,474.64 |
| 52108HFL| LBUBS 01- | AAA | N/R | 150,000.00 | 147,425.37 |
| 52108HK6| LBUBS 20( | AAA | NR | 60,000.00 | 54,104.71 |
| 52108HZX | LBUBS 20( | AAA | AAA | 120,000.00 | 110,597.45 |
| 52109RBP | LBUBS 20( | AAA | NR | 2,725,000.00 | 2,283,351.07 |
| 52518RAS | LSSCO 99 | N/R | N/R | 48,100,000.00 | 13,924,049.08 |
| 52519NJE| LBFRC 20( | AAA | AAA | 50,000.00 | 48,464.69 |
| 52524NAC | LBFRC 20( | AAA | AAA | 60,000,000.00 | 52,983,104.16 |
| 52524NAE | LBFRC 20( | NR | AAA | 25,208,000.00 | 21,125,853.24 |
| 52525DAT | LXS 07-18| AAA | NR | 1,000.00 | 106.03 |
| 55312VAB | MLCFC 20 | AAA | AAA | 5,550,000.00 | 5,284,712.57 |
| 55313KAT| MLCFC07- | BBB | BAA2 | 240,000.00 | 41,171.47 |
| 57643QBL| MARP 200 | AAA | AAA | 18,500,000.00 | 8,839,606.08 |
| 59022HFV | MLMT 200 | AAA | AAA | 187,500.00 | 184,695.43 |
| 61745MT2| MSC 2004 | AAA | NR | 30,000.00 | 27,480.11 |
| 61745MYY | MSC 2004 | AAA | NR | 300,000.00 | 256,660.79 |
| 61746WHF | MSDWC 0 | N/R | AAA | 30,000.00 | 27,767.37 |
| 61754KAG | MSC 2007 | AAA | AAA | 10,000,000.00 | 8,093,474.26 |
| 78402KAA | SASCO 200 | AAA | AAA | 95,000,000.00 | 61,998,287.87 |
| 78403WAA | SASCO 20 | CC | NR | 20,210,000.00 | 16,122,367.48 |
| 795483AG | SAL 86-4 | NR | N/R | 5,000,000.00 | 1,971.46 |
| 86359BMP | SASCO 20 | AAA | AAA | 4,858,411.00 | 238,722.24 |
| 86359DPN | SASC 200! | AAA | AAA | 189,391.00 | 27,587.16 |
| 929766LX| WBCMT 2( | AAA | AAA | 150,000.00 | 145,258.43 |
| 92978QAC | WBCMT 2( | AAA | AAA | 4,000,000.00 | 3,759,550.07 |
| 92978YAB| WBCMT 2( | AAA | AAA | 30,000.00 | 27,986.49 |
| | | | | | 269,921,342.80 |

| Summary of Collateral moved | MV |
| --- | --- |
| Bony Tri - Pledged 9/19/09 | 1,155,820,860 |
| 636 - Transferred 9/29/09 | 269,921,342 |
| 074 - Transferred 9/30/09 | 161,482,771 |
| Total Pledged/Transferred | 1,587,224,973 |

| | |
| --- | --- |
| Amount identified to be moved to BarCap | 1,950,000,000 |
| Amount Pledged or Transferred to date | -1,587,224,973 |
| Delta | 362,775,027 |

# A. 128

FOR SETTLEMENT DISCUSSION PURPOSES ONLY
WITHOUT PREJUDICE

October 11, 2008

John Varley, Group CEO
Barclays Bank PLC
One Churchill Place – Level 31
London   E145HP
England

Dear John:

I thought it would be useful to communicate directly about the dispute
between our firms, in the hope that we can have an honest and forthright
discussion about what we might do to resolve our differences – and what I
think we *must* do in light of the potential impact of these matters on the
Lehman Brothers Inc. (LBI) estate and LBI's creditors.  I know you are
focused on the movement of $7 billion of cash out of a cash collateral
account into an LBI clearance account on Friday, September 19.  What I do
not know is whether you are aware of (1) the context (at least from our
perspective) in which that occurred, and (2) the interests that LBI, its
creditors, the SIPA Trustee and the Bankruptcy Court may have in these
events and in a thorough reconciliation and accounting of the relevant cash
and securities movements.

Background

After the Lehman Brothers holding company filed its bankruptcy petition on
September 15, JPMorgan continued to act as the clearing bank for LBI – i.e.,
as the firm's agent – in order to facilitate an orderly wind-down of the firm
and the subsequent sale of LBI assets to Barclays Capital.  We did so at the
request of both the Federal Reserve Bank of New York and Barclays Capital
itself.  Even though we knew that a bankruptcy of LBI was imminent, we
advanced tens of billions of dollars to LBI to protect the markets against the

John Varley, Group CEO
October 11, 2008
Page 2 of 7

impact of a disorderly collapse of LBI and to permit the firm to remain in
business pending the asset sale. We had no legal obligation to do that, but
believed it was the right thing to do.

Throughout this period, Barclays Capital assured JPMorgan that it was going
to fully repay JPMorgan's advances by purchasing or refinancing the entire
LBI securities portfolio that we were financing as LBI's agent clearing bank.
We have contemporaneous notes of some of the conversations between our
respective personnel confirming that Barclays Capital would be succeeding
to all of the assets that we were financing. Consistent with that
confirmation, on Tuesday, September 16, Lehman Brothers filed with the
Bankruptcy Court a motion to authorize an Asset Purchase Agreement with
Barclays Capital contemplating, among other things, a purchase by Barclays
Capital of $70 billion in securities and the assumption of $69 billion in
related debt.

During the course of that week, a significant amount of the borrowing LBI
had been doing from the Fed was assumed by Barclays Capital.

|  | Mon, Sept 15 | | Tues, Sept 16 | | Wed, Sept 17 | |
|---|---|---|---|---|---|---|
|  | Fed | Barclays | Fed | Barclays | Fed | Barclays |
| **FRB Securities** | | | | | | |
| Freddie Mac & Fannie Mae MBS | 12,211 | - | 9,209 | 2,613 | 10,477 | - |
| Freddie Mac & Fannie Mae REMICs | 3,603 | - | 2,835 | 94 | 2,754 | - |
| Ginnie Mae MBS Pools | 204 | - | 1,147 | 1 | 353 | - |
| Ginnie Mae REMICs | 553 | - | 500 | 2 | 501 | - |
| US Government Agency Securities | 3,965 | - | 5,948 | 209 | 11,437 | - |
| US Treasuries and Strips | 1,465 | - | 5,760 | - | 6,887 | - |
| **subtotal** | **22,000** | | **25,399** | **2,919** | **32,408** | - |
| **DTC Securities** | | | | | | |
| Asset Back Securities | 5,011 | - | 4,377 | 212 | 4,326 | 203 |
| Commercial Paper | 4,366 | - | 5,228 | - | - | 5,228 |
| Corporate Bonds | 9,376 | - | 7,329 | 1,955 | 7,570 | 2,090 |
| Municipal Bonds | 3,350 | - | 451 | 3,112 | 144 | 3,320 |
| Other | 772 | - | 90 | 587 | 68 | 45 |
| Private Label CMO | 4,264 | - | 4,532 | 37 | 1,679 | 2,815 |
| DTC Equities | 3,281 | 2,100 | 2,886 | 2,100 | 4,445 | 2,887 |
| **subtotal** | **30,419** | **2,100** | **24,894** | **8,003** | **18,231** | **16,590** |
| **Cash** | 13,500 | - | - | - | - | - |
| **Total** | **65,919** | **2,100** | **50,294** | **10,922** | **50,640** | **16,590** |

Indeed, much of the collateral financed by Barclays Capital on Wednesday
night was the very collateral financed by the Fed on Monday and Tuesday
nights. (For a very significant amount of that collateral, the movement of
which between the Fed collateral pool and the Barclays Capital collateral
pool was undoubtedly deliberate, Barclays Capital assigned a loan value
greater than the amount that had been assigned by the Fed.)

CONFIDENTIAL

John Varley, Group CEO
October 11, 2008
Page 3 of 7

On Thursday morning, September 18, JPMorgan "unwound" these facilities
by advancing cash to repay the Fed and Barclays Capital. Again, we did so
with the clear expectation that Barclays Capital would either purchase or
finance all of the securities in these facilities and that JPMorgan's intra-day
funding would be fully repaid prior to the commencement of LBI's SIPA
proceeding.

During the day on Thursday, you commenced what we thought was the
assumption of the entire portfolio. You sent $5 billion in cash and we
released our lien on securities valued at $5 billion. In the early evening, Bob
Diamond spoke to Heidi Miller and several other of our senior executives
and asked that we release our lien on additional securities so that Barclays
Capital would receive an aggregate of $49.7 billion in securities in exchange
for aggregate payments of $45 billion in cash. (The Fed has apprised us that
the loan amount on the Fed collateral pool was $46.1 billion and we and the
Fed agree that the loan amount on $49.7 billion of the collateral was $45.2
billion. Accordingly, we have difficulty understanding any claim that you
were to receive the entire Fed collateral pool in exchange for $45 billion in
cash.) As you can appreciate, there would have been absolutely no reason
for us to give up our margin – and lien position – on the securities financed
by the Fed on Wednesday night had there been any chance that we would
have been left (post-bankruptcy) unpaid on the securities that Barclays
Capital financed on Wednesday night. We understood that you were going
to repay all of our intra-day funding and relied on that understanding in
relinquishing our margin.

Chaos reigned throughout Thursday evening. You sent in another $40
billion in cash. Billions of dollars of securities were sent out and many were
"DK'd" or otherwise sent back. By about 11 o'clock, when DTC shut down,
you had apparently received a net total of approximately $42.7 billion of
securities. All of the confusion was heightened by the absence of any
definitive list of securities that you were purchasing – an absence that we
believe further supports the notion that you were taking *all* of the securities
collateralizing our intraday advances.

The securities you received were *not* limited to the collateral that had been
financed by the Fed on Wednesday night. You took a substantial amount of
securities that had been part of your own "Barclays Capital tri-party
financing" on that Wednesday night, as well as securities from other
JPMorgan financings.

CONFIDENTIAL

BCI-CG00059722

John Varley, Group CEO
October 11, 2008
Page 4 of 7

**Activity on Thursday September 18, 2008**

| | Fed Programs | | Barclays Tri-Party | | Other | | Total | |
|---|---|---|---|---|---|---|---|---|
| | Received Back | Delivered Out | Received Back | Delivered Out | Received Back | Delivered Out | Received Back | Delivered Out |
| US Treasuries | - | 549 | - | - | - | 4,565 | - | 5,114 |
| Agency Securities | - | 23,431 | - | - | 18 | | 18 | 23,431 |
| subtotal Fed-wire eligible | - | 23,980 | - | - | 18 | 4,565 | 18 | 28,545 |
| ABS | 1,094 | 2,378 | - | - | 7 | 312 | 1,101 | 2,691 |
| CMO | 91 | 701 | 4 | 1,463 | 2 | 73 | 98 | 2,237 |
| Commercial Paper | - | - | - | 53 | - | | - | 53 |
| Corporate | 696 | 3,055 | 583 | 1,677 | 348 | 29 | 1,626 | 4,761 |
| Equities | 1,015 | 4,993 | 430 | 1,858 | 1,020 | 1,821 | 2,465 | 8,672 |
| Muni | - | 69 | 644 | 1,430 | 210 | 3 | 854 | 1,502 |
| Other | 7 | 131 | - | 132 | 95 | 185 | 103 | 448 |
| subtotal DTC | 2,904 | 11,328 | 1,661 | 6,613 | 237 | 1,444 | 6,248 | 20,364 |
| **Total** | 2,904 | 35,382 | 1,661 | 6,613 | 237 | 1,451 | 6,266 | 48,910 |

(Subsequently, we have learned that you may have also received from LBI securities that were not financed by JPMorgan at all on Wednesday.)

After DTC closed, in order to facilitate the completion of the transactions necessary to transfer the entire portfolio of securities over to Barclays Capital, we agreed (at LBI's request) to advance LBI the cash necessary for LBI to pledge $7 billion to Barclays Capital to protect it against overnight exposure pending such completion. Again, we understood that we would be fully repaid on the advances made on Thursday morning and the transfers of cash and securities would be completed prior to the commencement of LBI's SIPA proceeding, scheduled for Friday afternoon, September 19.

Still later on Thursday night, and into the early hours of Friday morning, LBI personnel told us that LBI needed financing from us because you were not purchasing or financing the securities that had been part of the Barclays Capital tri-party financing. When we told LBI that this was contrary to our understanding, and instructed them to speak with your personnel, they came back on the line and said that you would take care of the tri-party later on that Friday morning. That did not happen. On Friday, your personnel told ours that they had "forgotten" about the tri-party and were "confused," and simply wanted the $7 billion back. At that point, understanding that you had no intention of living by the assurances that you had given us – or of even completing the "take-out" of the "Fed collateral" – we credited the $7 billion back to the LBI clearing account, from which we had advanced the funds in the first place.

CONFIDENTIAL

John Varley, Group CEO
October 11, 2008
Page 5 of 7

On Friday night, for the first time as far as we know, the Bankruptcy Court
was apprised of a different "deal" between Barclays Capital and Lehman
Brothers – and that Barclays Capital was no longer purchasing $70 billion in
assets and assuming $69 billion in related debt.  But the Court was *not*
apprised of the purchase that Barclays Capital now says it agreed to make.
Instead of the Court being told that Barclays Capital was purchasing
approximately $49.7 billion in securities for $45 billion in cash, the Court
was told that Barclays Capital was purchasing $47.4 billion in securities for
$45.5 billion in cash.  In addition, the Court was told that the reason for the
change was a deterioration in market prices, an explanation that we now
know to be incorrect.

Proposal

I know that many mistakes were made during the course of the week leading
up to the LBI bankruptcy filing – including by Barclays Capital.  (You have
pointed out a number of mistakes that you believe we made.)  While of
course we can litigate about these mistakes (in which case we are confident
in our position that Barclays Capital released its claims with respect to the
$7 billion pursuant to the mutual release contained in the Services and
Settlement Agreement signed on September 22), and see ourselves tied up in
court proceedings over the next several years, I do think there is a more
sensible course:

1.  Subject to SIPA Trustee and Bankruptcy Court approval, we do think
    you should get from LBI the "Fed collateral" still remaining at LBI –
    to which the Fed ascribed a market value of approximately $6 billion
    on that Wednesday night/Thursday morning.  (We assume for these
    purposes – but certainly a different view would be reasonable – that
    you had contemplated the purchase of $49.7 billion in securities for
    $45 billion in cash rather than (1) the purchase of $47.4 billion in
    securities for $45.5 billion in cash, as described to the Bankruptcy
    Court, or (2) the purchase of $49.7 billion in securities for $45.2
    billion in cash, the loan amount assigned to the securities by the Fed
    and JPMorgan.)  We understand that the Fed, you and we agree that,
    even if you had only contemplated a "take-out" of the Fed on that
    Thursday night, this is collateral you would have received and that the
    Fed (and LBI) did indeed value it at approximately $6 billion.  If the
    collateral had a market value of less than $6 billion that night, you
    nevertheless would have been obliged to take it.  You are not entitled

                                            BCI-CG00059724

John Varley, Group CEO
October 11, 2008
Page 6 of 7

to a windfall – to the detriment of LBI (or JPMorgan) – simply
because the securities may have been worth less. Neither the SIPA
Trustee, the Bankruptcy Court nor LBI's creditors would accept such
a result. If the value of the securities has diminished during the time
of this dispute, we are prepared to discuss that with you. But to be
clear, in our view, any differences between the market value of the
securities on September 18 and the value that was being used for their
financing on September 18 should be for Barclays Capital's account.

2.  Also subject to the approval of the SIPA Trustee and the Bankruptcy
Court, the "completion" of the transaction you have said you
contemplated on Thursday evening may entitle you to approximately
$1 billion of additional "Fed collateral" from LBI. (Again, we are
assuming for these purposes that you were purchasing a $49.7 billion
pool of securities for $45 billion in cash and not either (1) a $47.4
billion pool of securities for $45.5 billion in cash, or (2) a $49.7
billion pool of securities for $45.2 billion in cash.) Because that
collateral has already been liquidated, we would suggest that a cash
payment be substituted.

3.  In connection with items 1 and 2, and inasmuch as you ended up
taking securities that had not been part of the "Fed collateral" – again,
some were part of the "Barclays Capital tri-party collateral" and still
others were not financed by JPMorgan at all – we believe that a full
accounting should be done. It is altogether possible that the LBI
estate and its creditors gave you more or less value than you were
entitled to receive. Moreover, the Bankruptcy Court was told that
Barclays Capital was to receive $47.4 billion (not $49.7 billion) in
securities and to pay $45.5 billion (not $45 or $45.2 billion) in cash.
We are both duty-bound to ensure that LBI received the value it was
supposed to receive in exchange for your $45 billion. We have
offered several times to do this accounting with you (and, as
appropriate, the Fed), and it is entirely possible that the SIPA Trustee
and the Bankruptcy Court would want such an accounting, but your
personnel have declined, citing the amount of time and effort it would
take. We should do this accounting and should do it now. We would
be willing to discuss the concept of an escrow while such
reconciliation was taking place.

CONFIDENTIAL

John Varley, Group CEO
October 11, 2008
Page 7 of 7

4. We are prepared to submit to arbitration or mediation to resolve any remaining differences between us – including (1) whether the provision of securities and cash contemplated by items 1 and 2 above is a fair proxy for the "completion" of the transaction that you say you agreed to complete, and (2) our claim that you were obliged to take all of the securities that were part of the Barclays tri-party collateral. Again, we think the LBI estate (and the SIPA Trustee and Bankruptcy Court) may have a keen interest in these matters as well.

5. In the September 22, Settlement and Services Agreement, you agreed that you would drop your lawsuit concerning the Bear Stearns hedge funds. That agreement should remain part of any resolution we reach.

John, we are prepared to sit down and discuss these issues this weekend. If we have to litigate them, so be it, but it would be a shame if we did not expend every effort now to avoid such an outcome and cooperate to fashion a result that is fair to all parties. Please let me know when you can meet.

Sincerely,

Jamie Dimon

Cc:     Robert Diamond, President
        Bill Winters

CONFIDENTIAL

# A. 129

# REDACTED

From: Hughes, Jonathan: Legal (NYK)
Sent: 23 November 2008 22:30
To: 'stephen.m.cutler@jpmorgan.com'
Subject: Fw: JPM/Trustee/Barclays Settlement Agreement

Stephen,
This looks as though it was actively prejudicial to our interests. Hal's
explanation is insufficient.
Jonathan.

----- Original Message -----
From: Lindsee GRANFIELD <lgranfield@cgsh.com>
To: mhuang <mhuang@BSFLLP.com>; Jonathan Schiller
<JSchiller@BSFLLP.com>; Hughes, Jonathan: Legal (NYK); Robert DAVIS
<rdavis@cgsh.com>
Sent: Fri Nov 21 20:26:07 2008
Subject: Fw: JPM/Trustee/Barclays Settlement Agreement


*******************************

Contact Information

Lindsee P. Granfield
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York  10006
Tel:     212-225-2738
Fax:     212-225-3999
E-mail:  lgranfield@cgsh.com


----- Original Message -----
From: HSNovikoff
Sent: 11/21/2008 08:19 PM EST
To: Lindsee GRANFIELD

BCI-CG00060950

Cc: Robert DAVIS; HSNovikoff@WLRK.com
Subject: Re: JPM/Trustee/Barclays Settlement Agreement


Also, just to be clear, none of the securities set aside were
identified.

Hal
Harold S. Novikoff
Wachtell, Lipton, Rosen & Katz
hsnovikoff@wlrk.com
Direct Dial:  212-403-1249
Direct Fax:  212-403-2249

----- Original Message -----
From: Novikoff, Harold S.
To: Granfield, Lindsee P. (Cleary Gottlieb Steen & Hamilton LLP)
Cc: Davis, Robert P. (Cleary Gottlieb Steen & Hamilton LLP); Novikoff,
Harold S.
Sent: Fri Nov 21 20:07:00 2008
Subject: RE: JPM/Trustee/Barclays Settlement Agreement

JPMorgan has been seeking information from LBHI as to the loans and
other assets underlying some very large ABCP and ABS positions in the
collateral pool for the clearance advances (including the RACERS
instruments).  JPMorgan has been stymied in being able to realize on
those position due to this lack of information.  In order to demonstrate
the importance to LBHI on its guarantee liability that JPMorgan be in a
position to favorably realize on those position, we made a highly
confidential presentation to Weil and A&M on November 6 as to then
current state of the collateral liquidations at LBI.  Unfortunately, the
fact that we have held aside approx $6 billion collateral value of
securities from the liquidations stuck out like a sore thumb.  We
disclosed that they were being held for a proposed settlement, but did
not give any of the terms or background information.


Hal
Harold S. Novikoff
Wachtell, Lipton, Rosen & Katz
hsnovikoff@wlrk.com
Direct Dial:  212-403-1249
Direct Fax:  212-403-2249

---

From: Lindsee GRANFIELD [mailto:lgranfield@cgsh.com]
Sent: Friday, November 21, 2008 7:50 PM

CONFIDENTIAL

BCI-CG00060951

To: Novikoff, Harold S.
Cc: Davis, Robert P. (Cleary Gottlieb Steen & Hamilton LLP)
Subject: RE: JPM/Trustee/Barclays Settlement Agreement

Hal:

I have just heard something very disturbing. James Kobak, counsel for
the Trustee, said that at a meeting that he was having with
representatives of LBHI today, that LBHI brought up whether there was
some settlement in the offing with JPM and Barclays, saying that JPM had
told them of a settlement (Kobak said the Trustee did not reveal that a
settlement was in the offing before LHBI asked the question). When did
JPM tell LHBI of a settlement, what was said and why was this done?
This could be quite explosive as to Barclays Capital.

Lindsee

Lindsee P. Granfield
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2738 | f: +1 212 225 3999
www.clearygottlieb.com <http://www.clearygottlieb.com/>  |
lgranfield@cgsh.com <mailto: lgranfield@cgsh.com>

This message is being sent from a law firm and may contain confidential
or privileged information. If you are not the intended recipient,
please advise the sender immediately by reply e-mail and delete this
message and any attachments without retaining a copy.

*******************************************************************
Any tax advice contained in this communication is not intended or
written to be used, and cannot be used, for the purpose of avoiding tax
penalties and is not intended to be used or referred to in promoting,
marketing or recommending a partnership or other entity, investment plan
or arrangement.
*******************************************************************
Please be advised that this transmittal may be a confidential
attorney-client communication or may otherwise be privileged or
confidential. If you are not the intended recipient, please do not read,
copy or re-transmit this communication. If you have received this
communication in error, please notify us by e-mail
(helpdesk@wlrk.com) or by telephone (call us collect at
212-403-4357) and delete this message and any attachments. Thank you in
advance for your cooperation and assistance. www.wlrk.com
*******************************************************************

This message is being sent from a law firm and may contain confidential

CONFIDENTIAL

or privileged information. If you are not the intended recipient,
please advise the sender immediately by reply e-mail and delete this
message and any attachments without retaining a copy.

---

This e-mail may contain information that is confidential, privileged or
otherwise protected from disclosure. If you are not an intended recipient of
this e-mail, do not duplicate or redistribute it by any means. Please delete it
and any attachments and notify the sender that you have received it in error.
Unless specifically indicated, this e-mail is not an offer to buy or sell or a
solicitation to buy or sell any securities, investment products or other
financial product or service, an official confirmation of any transaction, or
an official statement of Barclays. Any views or opinions presented are solely
those of the author and do not necessarily represent those of Barclays. This
e-mail is subject to terms available at the following link:
www.barcap.com/emaildisclaimer. By messaging with Barclays you consent to the
foregoing. Barclays Capital is the investment banking division of Barclays
Bank PLC, a company registered in England (number 1026167) with its registered
office at 1 Churchill Place, London, E14 5HP. This email may relate to or be
sent from other members of the Barclays Group.

---

CONFIDENTIAL