# A. 149

# Excerpt of 9/17/08 Hearing Transcript

```
                                                              1


    UNITED STATES BANKRUPTCY COURT

    SOUTHERN DISTRICT OF NEW YORK

    Case No. 08-13555

    - - - - - - - - - - - - - - - - - - - -x

    In the Matter of:



    LEHMAN BROTHERS HOLDINGS, INC., et al



            Debtors.



    - - - - - - - - - - - - - - - - - - - -x



                United States Bankruptcy Court

                One Bowling Green

                New York, New York



                September 17, 2008

                4:28 PM



    B E F O R E:

    HON. JAMES M. PECK

    U.S. BANKRUPTCY JUDGE
```

```
                                                                    2
 1   HEARING re Debtor's Motion Pursuant to Section 1015(b) of the
 2   Federal Rules of Bankruptcy Procedure Requesting Joint
 3   Administration of Chapter 11 Cases
 4
 5   HEARING re Motion for an Order Pursuant to Section 105(a) of
 6   the Bankruptcy Code Directing that Certain Orders in the
 7   Chapter 11 Case of Lehman Brothers Holdings Inc. be Made
 8   Applicable to LB 745 LLC
 9
10   HEARING re Debtor's Motion Pursuant to Section 105(a) of the
11   Bankruptcy Code and Bankruptcy Rule 1015(c) and 9007 Seeking
12   Authority to Implement Certain Notice and Case Management
13   Procedures
14
15   HEARING re Debtor's Motion to (a) Schedule a Sale Hearing; (b)
16   Establish Sales Procedures; (c) Approve a Breakup Fee; and (d)
17   Approve the Sale of the Purchased Assets and the Assumption and
18   Assignment of Contracts Relating to the Purchased Assets
19
20   HEARING re Motion for Order (i) Authorizing Debtor to Obtain
21   Post-Petition Financing Pursuant to Sections 363 and 364 of
22   Bankruptcy Code; (ii) Granting Liens and Superpriority Claims
23   to Post-Petition Lenders Pursuant to Section 364 of Bankruptcy
24   Code; and (iii) Scheduling Final Hearing
25   Transcribed by:  Lisa Bar-Leib
```

1  hearing on this? That's why, Your Honor, we have come forward
2  today. We want to go forward. And I would point out, Your
3  Honor, we are not asking for any real substantive relief today
4  with respect to the sale motion. We are asking Your Honor to
5  set a hearing for Friday afternoon. And the only sensitive --
6  I'll call it somewhat sensitive issue is the approval of the
7  breakup fee.
8           Now, Your Honor, we are talking about a transaction
9  that has, as I said, many, many parts. But looking at it from
10 the net of this transaction, there will be approximately
11 1,700,000,000 dollars yielded out of this transaction.
12          UNIDENTIFIED SPEAKER: A billion.
13          MR. MILLER: I'm sorry?
14          UNIDENTIFIED SPEAKER: A billion.
15          MR. MILLER: You know, I always think of Senator
16 Dirksen, Your Honor. He said a billion here and a billion
17 there. Pretty soon you're talking about real money.
18          THE COURT: Well, you're talking about real money
19 here.
20          MR. MILLER: Absolutely, Your Honor. And so we have
21 1,700,000,000 dollars. There has been an enormous effort put
22 into this by the prospective purchaser, Barclays Capital, Your
23 Honor. And in the negotiations, quite properly, with all of
24 the efforts that they have put into it, there was a request --
25 I should say a request, almost a demand, for a breakup fee.

23

1  And there were negotiations in respect of that amount. And
2  what it came out to be, Your Honor, was a proposed breakup fee
3  of a hundred million dollars plus reimbursement of expenses of
4  up to twenty-five million dollars.
5       THE COURT: May I ask you a question --
6       MR. MILLER: Yes, sir.
7       THE COURT: -- about how to equate that breakup fee
8  and expense reimbursement with the purchase price? And I've
9  attempted to assess the notional value of the transaction
10 because in addition to the 1.7 billion dollars, there's a
11 reference to 1.5 billion dollars in cure amounts and possibly
12 as much as 2.5 billion dollars in certain employee related --
13      MR. MILLER: Yes, sir.
14      THE COURT: -- severance expenses which may or may
15 not be triggered. For purposes of my evaluating the fairness
16 of the overall proposed breakup fee and expense reimbursement
17 as a percentage of the transaction, not that I need to do that
18 but frequently Courts are viewed as approving breakup fees
19 within a certain market range. How should I view the fair
20 value of the overall transaction?
21      MR. MILLER: I think, Your Honor, if you start with
22 the billion seven hundred million dollars, which is the cash
23 component, as Your Honor obviously read in the papers, there
24 will be an exposure for 2.5 billion dollars in connection with
25 the retention of these 10 to 12,000 employees.

24

1  In addition to that, Your Honor, in connection with
2  the assumption and assignment of contracts, the cure amounts
3  and other payments in connection with the contracts, are
4  estimated to be a billion five hundred million dollars. So we
5  have four billion dollars right there, Your Honor.
6  In addition, Your Honor, the purchaser is paying 250
7  million dollars for the goodwill of LBI. So there you have
8  4,250,000,000 dollars in that respect, Your Honor.
9  And then, Your Honor, in the interim, LBI has entered
10 into an arrangement with the prospective purchaser where
11 there's a repo agreement in which they are backing up and
12 allowing these repos to be settled and to be financed. In
13 addition, if this goes forward, there will be a support
14 agreement for this interim period of two or three days where
15 Barclays Capital will be on premises, will be offering
16 oversight and in the sole discretion, may be willing to advance
17 some monies in the interim period.
18 So the problem we had, Your Honor, there are so many
19 different elements in this transaction that to do the usual
20 calculation of whether it should be two percent, three percent,
21 etcetera, became enormously complex during the course of the
22 proceedings. As Your Honor knows, as these transactions go up
23 in value, very often the breakup fee goes up in value. And
24 this -- if Your Honor just took the 1.7, I would say to Your
25 Honor, it's above three percent, clearly above three percent.

25

1    THE COURT: I know. I did the calculation.

2    MR. MILLER: Yes, Your Honor. But this is -- again,
3 I have to use the expression, this is such a unique
4 transaction. And there's been so much effort and there is so
5 much exposure. Senior executives at Barclays likewise, like
6 the rest of us slaves, never went to sleep from Sunday right
7 through last night.

8    So, I think, Your Honor, there's an extra quota of
9 consideration that has to be given in connection with this
10 transaction. And I would also bear in mind, Your Honor, that
11 what are the prospects of a competitive bid. This is such a
12 fragile asset. And it is not an asset that people did not know
13 was for sale. For months now, Lehman Brothers has been
14 pursuing strategic alternatives. The market has known that
15 aspects of Lehman, or even all of Lehman, were available for
16 purchase or investment. So that -- I'm not going to call it
17 shopworn Your Honor, but that the public, the financial
18 markets knew that these assets were for sale. And we had a
19 benefit, Your Honor. We were lucky because Barclays had been
20 negotiating to acquire Lehman. Unfortunately, that was one of
21 the things that might have been but never turned into fruition.
22 But as the part of that process, at least they had some
23 familiarity. And that was not a long negotiation either, Your
24 Honor. It was two days, basically. Unfortunately, because of
25 various regulations in the UK, that transaction could not have

36

1  But as long as you know, I mean, if you're prepared, that's
2  fine.
3       MR. MILLER: Yes, Your Honor. And, Your Honor, if
4  Mr. Despins wants to debate the adjournment, if I may, I would
5  adopt all the reasons in the argument Your Honor is making.
6       THE COURT: You've always been a wise advocate.
7       MR. DESPINS: I think I'll pass on that, Your Honor.
8       MR. MILLER: Your Honor, if I could go back at this
9  point to the breakup fee, I would just note that if you took
10 the cash that's coming out of this transaction and you took the
11 cure amounts, the retention program, it comes up to 5.7 billion
12 dollars. A hundred million dollars, Your Honor, is
13 approximately two percent of that. Now, I grant you there's
14 some flex in those other two items. But given the enormity of
15 this transaction, Your Honor, from the debtors' perspective,
16 and we actively negotiated this, Your Honor, it's not an
17 unreasonable breakup fee. And if that's what gets the
18 transaction moving forward and as Your Honor pointed out, the
19 markets out there are very, very sensitive to what happens here
20 today. The employees are waiting. I mean, one of the things
21 filed -- I will withdraw. I was going to say something I
22 shouldn't say, Your Honor. The employees were going to come
23 down here en masse. It made me think of every time you have an
24 airline case, when the pilots are here. But we didn't think
25 that was necessary, Your Honor. There's just a lot of human