UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al

Debtors.

- - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court

One Bowling Green

New York, New York

September 17, 2008

4:28 PM

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

HEARING re Debtor's Motion Pursuant to Section 1015(b) of the Federal Rules of Bankruptcy Procedure Requesting Joint Administration of Chapter 11 Cases

HEARING re Motion for an Order Pursuant to Section 105(a) of the Bankruptcy Code Directing that Certain Orders in the Chapter 11 Case of Lehman Brothers Holdings Inc. be Made Applicable to LB 745 LLC

HEARING re Debtor's Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 1015(c) and 9007 Seeking Authority to Implement Certain Notice and Case Management Procedures

HEARING re Debtor's Motion to (a) Schedule a Sale Hearing; (b) Establish Sales Procedures; (c) Approve a Breakup Fee; and (d) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets

HEARING re Motion for Order (i) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to Sections 363 and 364 of Bankruptcy Code; (ii) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to Section 364 of Bankruptcy Code; and (iii) Scheduling Final Hearing

Transcribed by: Lisa Bar-Leib

hearing on this? That's why, Your Honor, we have come forward today. We want to go forward. And I would point out, Your Honor, we are not asking for any real substantive relief today with respect to the sale motion. We are asking Your Honor to set a hearing for Friday afternoon. And the only sensitive -- I'll call it somewhat sensitive issue is the approval of the breakup fee.

Now, Your Honor, we are talking about a transaction that has, as I said, many, many parts. But looking at it from the net of this transaction, there will be approximately 1,700,000,000 dollars yielded out of this transaction.

UNIDENTIFIED SPEAKER: A billion.

MR. MILLER: I'm sorry?

UNIDENTIFIED SPEAKER: A billion.

MR. MILLER: You know, I always think of Senator Dirksen, Your Honor. He said a billion here and a billion there. Pretty soon you're talking about real money.

THE COURT: Well, you're talking about real money here.

MR. MILLER: Absolutely, Your Honor. And so we have 1,700,000,000 dollars. There has been an enormous effort put into this by the prospective purchaser, Barclays Capital, Your Honor. And in the negotiations, quite properly, with all of the efforts that they have put into it, there was a request -- I should say a request, almost a demand, for a breakup fee.

And there were negotiations in respect of that amount. And what it came out to be, Your Honor, was a proposed breakup fee of a hundred million dollars plus reimbursement of expenses of up to twenty-five million dollars.

THE COURT: May I ask you a question --

MR. MILLER: Yes, sir.

THE COURT: -- about how to equate that breakup fee and expense reimbursement with the purchase price? And I've attempted to assess the notional value of the transaction because in addition to the 1.7 billion dollars, there's a reference to 1.5 billion dollars in cure amounts and possibly as much as 2.5 billion dollars in certain employee related --

MR. MILLER: Yes, sir.

THE COURT: -- severance expenses which may or may not be triggered. For purposes of my evaluating the fairness of the overall proposed breakup fee and expense reimbursement as a percentage of the transaction, not that I need to do that but frequently Courts are viewed as approving breakup fees within a certain market range. How should I view the fair value of the overall transaction?

MR. MILLER: I think, Your Honor, if you start with the billion seven hundred million dollars, which is the cash component, as Your Honor obviously read in the papers, there will be an exposure for 2.5 billion dollars in connection with the retention of these 10 to 12,000 employees.

In addition to that, Your Honor, in connection with the assumption and assignment of contracts, the cure amounts and other payments in connection with the contracts, are estimated to be a billion five hundred million dollars. So we have four billion dollars right there, Your Honor.

In addition, Your Honor, the purchaser is paying 250 million dollars for the goodwill of LBI. So there you have 4,250,000,000 dollars in that respect, Your Honor.

And then, Your Honor, in the interim, LBI has entered into an arrangement with the prospective purchaser where there's a repo agreement in which they are backing up and allowing these repos to be settled and to be financed. In addition, if this goes forward, there will be a support agreement for this interim period of two or three days where Barclays Capital will be on premises, will be offering oversight and in the sole discretion, may be willing to advance some monies in the interim period.

So the problem we had, Your Honor, there are so many different elements in this transaction that to do the usual calculation of whether it should be two percent, three percent, etcetera, became enormously complex during the course of the proceedings. As Your Honor knows, as these transactions go up in value, very often the breakup fee goes up in value. And this -- if Your Honor just took the 1.7, I would say to Your Honor, it's above three percent, clearly above three percent.

THE COURT: I know. I did the calculation.

MR. MILLER: Yes, Your Honor. But this is -- again, I have to use the expression, this is such a unique transaction. And there's been so much effort and there is so much exposure. Senior executives at Barclays likewise, like the rest of us slaves, never went to sleep from Sunday right through last night.

So, I think, Your Honor, there's an extra quota of consideration that has to be given in connection with this transaction. And I would also bear in mind, Your Honor, that what are the prospects of a competitive bid. This is such a fragile asset. And it is not an asset that people did not know was for sale. For months now, Lehman Brothers has been pursuing strategic alternatives. The market has known that aspects of Lehman, or even all of Lehman, were available for purchase or investment. So that -- I'm not going to call it shopworn Your Honor, but that the public, the financial markets knew that these assets were for sale. And we had a benefit, Your Honor. We were lucky because Barclays had been negotiating to acquire Lehman. Unfortunately, that was one of the things that might have been but never turned into fruition. But as the part of that process, at least they had some familiarity. And that was not a long negotiation either, Your Honor. It was two days, basically. Unfortunately, because of various regulations in the UK, that transaction could not have

October 2nd is -- that's seventeen days out, which is the date we had put in there and penciled. Well, Rosh Hashanah is earlier that week, so it's after the holiday. We just want to make sure that worked for your calendar because we haven't had an opportunity to consult with your calendar.

THE COURT: I'm here.

MS. SCHWEITZER: Okay. Do you prefer the morning or the afternoon?

THE COURT: I have a regular calendar that day, so we better do it in the afternoon. I'd say -- let's do that one at 3:00.

MS. SCHWEITZER: 3:00.

THE COURT: All right?

MR. WAISMAN: Your Honor, I believe that concludes the calendar. Thank you very much.

THE COURT: Thank you all, and we'll wait around until we hear from you about the DIP.

ALL: Thank you, Your Honor.

THE COURT: And I am bench-ordering that approved.

ALL: Thank you.

(Whereupon these proceedings were concluded at 7:48 p.m.)

INDEX

RULINGS

| DESCRIPTION | PAGE | LINE |
| --- | --- | --- |
| Debtor's bidding procedures package approved subject to adjustments according to representations made orally on the record | 72 | 18 |

C E R T I F I C A T I O N

I, Lisa Bar-Leib, certify that the foregoing transcript is a true and accurate record of the proceedings.

Lisa Bar-Leib Digitally signed by Lisa Bar-Leib
DN: cn=Lisa Bar-Leib, c=US
Reason: I am the author of this document
Date: 2008.09.19 10:48:43 -04'00'

LISA BAR-LEIB

Veritext LLC
200 Old Country Road
Suite 580
Mineola, NY 11501

Date: September 18, 2008