

Whyte Hirschboeck Dudek S.C.

Bruce G. Arnold
414-978-5501
barnold@whdlaw.com

October 16, 2009

The Honorable James M. Peck
United States Bankruptcy Court for the Southern
District of New York
One Bowling Green
New York, NY 10004

Re:    Metavante Corporation's Motion to Alter or Amend the Court's Order Granting
       LBSF's Motion to Compel Performance and Motion to Stay the Effect of the Court's
       Order Granting LBSF's Motion to Compel Performance

Dear Judge Peck:

We represent Metavante Corporation ("Metavante"), and we write to respond to Lehman
Brothers Special Financing Inc.'s ("LBSF") October 13, 2009, letter to the Court requesting
a Chambers Conference [Docket No. 5457] with respect to Metavante's Motion to Alter or
Amend the Court's Order Granting LBSF's Motion to Compel Performance and Enforce the
Automatic Stay Against Metavante (the "Motion to Alter or Amend") [Docket No. 5284] and
Metavante's Motion for an Order Staying the Effect of the Court's Order Granting Lehman
Brothers Special Financing Inc. and Its Affiliated Debtors Motion to Compel and Enforce the
Automatic Stay (the "Motion to Stay") [Docket No. 5400]. The Court's Order Granting
LBSF's Motion to Compel and Enforce the Automatic Stay (the "Motion to Compel Order")
[Docket No. 5209] was entered on September 17, 2009.

At the outset, Metavante respectfully notes that it does not oppose LBSF's request for an
earlier hearing date.

Under the applicable rules, the November 18, 2009, Omnibus Hearing was the earliest
hearing date Metavante could have selected. Metavante scheduled the hearing pursuant to the
Court's current Case Management Order [Docket No. 2837], which provides that pleadings
are subject to specific hearing date requirements. The Motions -- as "other Pleadings filed by
a non-Debtor" -- fall under the category of Pleadings that "must be scheduled for an Omnibus
Hearing . . . ."

WHD/6747751.3

555 EAST WELLS STREET  |  SUITE 1900  |  MILWAUKEE, WI 53202-3819  |  TEL 414 273 2100  |  FAX 414 223 5000  |  WWW.WHDLAW.COM
OFFICES IN MILWAUKEE AND MADISON

Rule 9023 of the Federal Rules of Bankruptcy Procedure provides that Rule 59 of the Federal Rules of Civil Procedure "applies in cases under the Code . . . ." In turn, Rule 59(e) of the Federal Rules of Civil Procedure provides that a party, within 10 days after entry of judgment, may file a motion to alter or amend the judgment. The Motion to Compel Order was entered on September 17, 2009. Therefore, Metavante had until at least September 27, 2009, to file its Motion to Alter or Amend. Metavante filed its Motion to Alter or Amend on September 25, 2009.

Local Rule 9023-1 of the Local Bankruptcy Rules for the Southern District of New York provides that "unless the Court orders otherwise, [a motion under 9023-1] shall be made returnable within the same amount of time as required for the original motion." The "original motion" (*i.e.*, LBSF's "Motion, Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code, to Compel Performance of Metavante Corporation's Obligations Under an Executory Contract and to Enforce the Automatic Stay" [Docket No. 3691]) was filed on May 29, 2009, and provided an objection deadline of June 16, 2009. In other words, the "original motion" was "made returnable" 18 days after the "original motion" was filed. Therefore, pursuant to Local Rule 9023-1, Metavante was required to provide LBSF at least 18 days (*i.e.*, until October 13, 2009) in which to object to the Motion to Alter or Amend.

The earliest Omnibus Hearing Date after Metavante filed its Motion to Alter or Amend was October 14, 2009. However, the current Case Management Order also provides that "the deadline to file an Objection (the 'Objection Deadline') to any Pleading shall be . . . at least three (3) business days before the applicable hearing date . . . ." Therefore, Metavante would have been required to set the Objection Deadline for October 9, 2009, if its Motion to Alter or Amend was going to be heard at the October 14, 2009, Omnibus Hearing. But, an Objection Deadline of October 9, 2009, would have violated Local Rule 9023-1's requirement that LBSF be given the same amount of time to respond that Metavante was given with regard to the "original motion." Therefore, Metavante could not use the October 14, 2009, Omnibus Hearing as its hearing date for the Motion to Alter or Amend. After consulting with the Court's Chambers, Metavante was advised that the next Omnibus Hearing -- after the October 14, 2009, Omnibus Hearing -- was scheduled for November 18, 2009. Accordingly, Metavante noticed its Motion to Alter or Amend for the earliest possible Omnibus Hearing -- November 18, 2009.

Although Metavante offered to escrow the amounts this Court ordered Metavante to pay pending the outcome of the Court's determination of the Motion to Alter or Amend, on October 5, 2009, Metavante received LBSF's Demand Letter to pay certain amounts to LBSF, which also included unexplained amounts of default interest. After carefully weighing its options, Metavante determined that the only way to adequately protect its interests was to file the Motion to Stay, which it did shortly after receiving LBSF's Demand Letter, on October 8, 2009 (*i.e.*, less than one week before the October 14, 2009, Omnibus Hearing).

Metavante filed the Motion to Stay with this Court because, as noted in the Motion to Stay, Rule 8005 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that a "motion for stay . . . must ordinarily be presented to the bankruptcy judge in the first instance." As to the choice of hearing date, from Metavante's perspective, the Motion to Compel Order was still not complete because Metavante had not yet received a ruling on its Motion to Alter or Amend. As such, Metavante noticed the Motion to Stay for the November 18, 2009, Omnibus Hearing, and again provided LBSF with the 18 days Metavante was given to object to LBSF's underlying motion.

While there was nothing "inappropriate" about Metavante's decision to file the Motions, or its use of the November 18, 2009, Omnibus Hearing date for its Motions, Metavante is eager to receive rulings on the Motions, and respectfully invites the Court's input at the Chambers Conference this afternoon. Moreover, if the Court's schedule permits, Metavante joins LBSF's invitation to have the Court set an earlier hearing date to hear the Motions, and Metavante is more than willing to come to New York should the Court so choose.

Before moving to LBSF's substantive objections, Metavante would be remiss if it did not comment on one other aspect of LBSF's curious strategy to date. Metavante has now twice offered to place the full amount due to LBSF pursuant to the Motion to Compel Order into an interest-bearing escrow account pending final resolution of Metavante's rights. Metavante made this offer on September 25, 2009, in its Motion to Alter or Amend. Metavante repeated this offer on October 8, 2009, in its Motion to Stay. And yet, LBSF has not placed a single phone call to Metavante to discuss this seemingly simple, mutually beneficial solution. By copy of this letter, Metavante is now making this offer a third time.

LBSF implicitly rejected Metavante's offer to place the funds into an escrow account by repeating its claim that "cash is the lifeblood of a Chapter 11 estate." But, this attempted 'one-size-fits-all' approach not only goes against the very principles of bankruptcy law, it also has no bearing with respect to this particular Chapter 11 estate. Indeed, while cash may usually be the lifeblood of a Chapter 11 estate, LBSF has significant cash reserves which quite literally dwarf the amount in question.[1] Furthermore, as LBSF has been at pains to point out, the total sum of money involved is -- from LBSF's perspective -- relatively minor. Therefore, LBSF's claim that it somehow needs an immediate cash payment from Metavante rings hollow. The simple fact of the matter is that the use of an escrow account would adequately protect LBSF's interests. In addition to protecting LBSF's interests, Metavante's escrow proposal satisfies the requirements for a stay pending appeal and Metavante's rights to adequate protection of its interests as discussed in more detail below.

---

[1]   According to its most recent Monthly Operating Report, cash on hand at Lehman and its affiliates rose to $15.7 billion as of September 30, 2009, from $14.7 billion at the start of the month, and $2.5 billion when LBHI filed for bankruptcy.

As to LBSF's substantive objections, LBSF is incorrect on all three fronts.

LBSF first argues that the arguments Metavante raised in its Motion to Alter or Amend are "inappropriate for such a motion." In particular, LBSF argues that the adequate protection issue and the default interest issue could have been raised in the underlying motion. While this argument clearly ignores the points made in oral argument on July 14, 2009, now that the Court has ruled against Metavante, Metavante needs clarification as to LBSF's obligations to Metavante under the Motion to Compel Order. Because the issue of adequate protection is related to the question of whether LBSF has a right to compel Metavante to perform, the issue of adequate protection was a perfectly appropriate issue to raise, both in oral argument and in the Motion to Alter or Amend. Indeed, as the leading treatise recognizes, Rule 59(e)'s hallmark is flexibility: "[A] motion to 'reconsider,' to 'vacate,' to 'set aside,' or to 'reargue' is a motion under Rule 59(e) . . . ." Collier's ¶ 8002.07[1]. Furthermore, from a practical perspective, it will save both the Court and the parties' time to avoid 'piecemeal litigation' and have the parties' respective obligations solidified so that the parties can effectively weigh their respective options going forward.

On the merits, LBSF argues that it is entitled to compel Metavante to perform under the contract for as long as it takes LBSF to decide whether to assume or reject, but in the meantime, LBSF is not required to provide Metavante with any assurance that Metavante's rights will be protected. Indeed, despite arguing that Metavante cannot 'ride the market' unless it is willing to 'pay to play,' LBSF claims it is entitled to 'ride the market' without giving any assurance that it will 'play' when interest rates (inevitably) swing in Metavante's favor. Furthermore, under LBSF's theory, LBSF is also not required to provide any assurance that it will 'pay' for having 'played' at a time when interest rates were in Metavante's favor.

LBSF's position is untenable. Nondebtor counterparties to an interest rate swap agreement have a right to adequate protection pending the debtor's decision to assume or reject, particularly where, as here, the debtor was already in breach of the agreement, and the nondebtor counterparty has been prejudiced by the debtor's attempts at performance thus far under the agreement. *See McLean Industries Inc. v. Medical Laboratory Automation, Inc. (In re Mclean Industries Inc.)*, 96 B.R. 440, 450 (Bankr. S.D.N.Y. 1989).

In this case, Metavante has always claimed, and LBSF has never denied, that LBSF was in default prior to LBSF's own bankruptcy because LBHI had already filed for bankruptcy, and LBHI's filing -- on its own -- deprived Metavante of an essential element of the interest rate swap agreement. There is also no dispute that Metavante was prejudiced. LBHI's pre-petition (as to LBSF) bankruptcy filing, and its subsequent sale of its assets, deprived Metavante of a Credit Support Provider, a critical element of any interest rate swap agreement. Because of LBHI's filing -- and LBHI's filing alone -- Metavante was unable to treat the Metavante Swap Agreement as a hedge for accounting purposes under Financial

Accounting Standards Board ("FASB") Statement 133, which provides that Metavante could no longer treat the swap agreement as a hedge for accounting purposes because it was no longer probable that LBSF could make the contractually required cash payments. Accordingly, Metavante seeks clarification as to the assurances that LBSF is required to provide Metavante as adequate protection in the event that interest rates change -- leaving Metavante "in the money" -- before LBSF decides to assume or reject the Metavante Swap Agreement.

Contrary to LBSF's assertion, the case law is clear that, pending assumption or rejection of an executory contract, a debtor can only enforce the contract if it pays for the value of the material or services it receives. *Cont'l Energy Assoc. Ltd. P 'ship v. Hazelton Fuel Mgmt. Co. (In re Cont'l Energy Ass 'n Ltd.)*, 178 B.R. 405, 408 (Bankr. M.D. Pa. 1995); *In re Resource Tech. Corp.*, 254 B.R. 215, 221 (Bankr. N.D. Ill. 2000); *In re the Bolling Group, L.L.C.*, Case No. 01-81304C-11D, 2002 WL 31812671, at *6 (Bankr. M.D.N.C. Dec. 13, 2002). LBSF attempts to distinguish *In re Cont'l Energy Assocs.* by pointing out that the court in that case did not actually *force* the debtor to provide any further assurances. But, that is a distinction without a difference because the only reason the court did not force the debtor to provide adequate assurances was because the debtor there did the right thing and voluntarily made advance payments to protect the nondebtor party's interests. *See In re Cont'l Energy Assocs.* 178 B.R. at 408. LBSF's argument ignores the fact that the court's opinion clearly stated that adequate protection would have been required if the debtor there -- like LBSF here -- had attempted to 'play' without any assurance that it would also 'pay.' *See* 178 B.R. at 408 ("The only reasonable conclusion is that this court . . . can issue an order that would allow such debtor to enforce the contract until such time that it accepts or rejects the contract, ***provided that** we diligently guard the interests of the non-debtor party to the contract.*" *Id.* (emphasis added).

LBSF also claims that the cases Metavante cited are distinguishable because "the counterparty provided a post-petition good or service of benefit to the estate -- not merely the payment of money owed under a contract." This argument is similarly unavailing. Nothing in those cases conditioned the nondebtor's right to payment on the provided benefit coming in the form of a "good" or "service"; the only question was whether the nondebtor was providing the debtor's estate with a benefit pending the debtor's decision to assume or reject. And providing a benefit to the estate is precisely what Metavante will be doing if Metavante is forced to perform pending LBSF's decision to assume or reject the interest rate swap agreement. Indeed, if Metavante were not going to be providing a benefit to the estate, LBSF would not, presumably, be fighting so vigorously for the right to continue receiving payments under the contract, as well as the continuing right to either assume or reject it.

The fatal flaw in LBSF's reasoning stems from its unfounded belief that by requiring LBSF to provide adequate assurance that Metavante's rights will be protected, the Court

would "also effectively strip LBSF of its right to assume or reject the agreement." Nothing could be further from the truth. In fact, the adequate protection requirement maintains the debtor's right to assume or reject the agreement -- it simply requires that the debtor pay for the benefit it receives from the nondebtor if the debtor compels the nondebtor to perform while the debtor makes up its mind. Not surprisingly, LBSF completely ignores the court's discussion of the equitable basis of this principle in *In re Cont'l Energy Assocs.* 178 B.R. at 408. There, the court noted what LBSF conveniently neglects to mention here – namely, that a debtor seeking the right to performance pending its decision to assume or reject is, from an equities standpoint, already starting 'in the whole' because "[a]t first glance, the concept that a contract should not be enforceable by either side to a contract until it has been assumed by a debtor makes imminent sense." *Id.* Indeed, "[i]f it is accepted that the non-debtor party to a contract is stayed from enforcing the terms of that contract on a debtor prior to assumption, then fairness would seem to suggest that the converse should also be true." *Id.* Thus, the fact that a debtor has a *right* to compel post-petition, pre-assumption or rejection performance from a nondebtor already puts the nondebtor at a significant disadvantage from a fairness standpoint. Nevertheless, courts permit this level of unfairness in certain, limited situations. But, LBSF claims entitlement beyond that -- it wants not only the *right* to compel "gray area" performance, it claims it can go one step further and actually compel performance, all without giving anything up in return for going that extra step. Because of the added inequity that would result if LBSF's position was correct, the *In re Cont'l Energy Assocs.* court roundly rejected it: "The only reasonable conclusion is that this court . . . can issue an order that would allow such debtor to enforce the contract until such time that it accepts or rejects the contract, ***provided that** we diligently guard the interests of the non- debtor party to the contract.*" *Id.* (emphasis added). Thus, if LBSF has a right to compel Metavante to perform, and indeed compels Metavante to perform, pending its decision to assume or reject, and if interest rates have, by that time or anytime thereafter, swung in Metavante's favor, then LBSF must pay Metavante for the value LBSF received (*i.e.*, an effective counterparty as a hedge against fluctuating interest rates) during that time.[2]

---

[2]    LBSF cites *McLean Indus., Inc. v. Medical Laboratory Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440 (Bankr. S.D.N.Y. 1989), and *U.S. v. Dewey Freight Sys. Inc. (In re Dewey Freight Sys. Inc.)*, 31 F.3d 620 (8th Cir. 1994), for the proposition that Metavante has no right to assurances that its rights will be protected. *In re McLean* does not stand for that proposition. As noted in Metavante' s Motion to Alter or Amend, in *In re McLean*, Judge Buschman found dispositive the fact that the nondebtor counterparty made no allegation that the debtor previously breached the agreement, or that the nondebtor counterparty's rights had been prejudiced by the debtor. 96 B.R. at 450. That is not the case here. As to *In re Dewey*, that case is distinguishable. In *In re Dewey*, the parties both continued to fully perform as per the contract's terms pending the debtor's ultimate decision to assume or reject the contract. 31 F.3d at 622. When the debtor concluded that it could no longer perform, it asked another company, Quick Trucking, to assume the debtor's obligations under the agreement, which the other company agreed to do. *Id.* Notwithstanding Quick Trucking's willingness to perform on the same terms as the debtor, the counterparty refused to accept an assignment of the contracts. *Id.* The debtor then notified the counterparty that it was ceasing performance,

In this case, the Court's Motion to Compel Order -- which authorizes LBSF to enforce the agreement in the post-petition, pre-assumption or rejection "gray area" -- is unclear as to what specific assurances will be provided to Metavante. This is what Metavante bargained for before LBSF and LBHI sought bankruptcy protection. But, given LBSF's position as a debtor in the largest bankruptcy filing in this country's history, Metavante can hardly be assured that it will receive the payments to which it is otherwise (at one point or another) entitled to receive under the contract. More importantly, Metavante has absolutely no assurance that LBSF will not -- as seems to be their clear intention -- simply delay the decision to assume or reject until the moment that interest rates become unfavorable to LBSF. To that end, Metavante respectfully submits that the only way for the Court to "diligently" protect Metavante's interests would be to order that the payments due under the Motion to Compel Order be held in an interest-bearing escrow account -- an accepted method of protecting both parties' interests when future events may affect the parties' respective interests, *see Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 874 (10th Cir. 1986); *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985); *see, e.g., Winfrey v. Simmons Foods, Inc.*, No. 03 - 2237, 2006 U.S. Dist. LEXIS 70628, at *2 (W.D. Ark. Sept. 28, 2006) -- pending LBSF's decision to assume or reject the agreement. Then, once the Debtors have made their decision, the parties can use those funds to net out any payments due upon termination, if necessary.

Metavante is ready and willing to voluntarily place the full amount due under the Motion to Compel Order, as clarified by the Motion to Alter or Amend, into an interest-bearing escrow account. As such, neither LBSF nor any other party will suffer any harm while LBSF decides to assume or reject the contract. Likewise, because Metavante will agree to continue making any reset payments that may otherwise become due under the terms of the Metavante Swap Agreement into the escrow account, all parties with any expectancy of payment from the amount due under the Motion to Compel Order will be protected.

LBSF also argues that Metavante cannot raise the prejudgment interest issue in a motion to clarify. LBSF is incorrect. Post-judgment motions addressing issues concerning a party's right to prejudgment interest are properly raised as Rule 59(e) Motions. *See Osterneck v. Ernst & Whitney*, 489 U.S. 169, 175-76 (1989) (holding that even though the moving party failed to raise the issue of prejudgment interest until after the jury returned its verdict, the moving party's post-judgment motion seeking clarification with respect to the issue

---

and the counterparty, in turn, solicited bids to perform the same services the debtor was performing, except this time, it was only offering "six-month 'emergency service' contracts." *Id.* Quick Trucking -- the same company that the counterparty initially refused to work with -- "was awarded the emergency contracts but at short-term rates substantially higher than the rates in the original contracts with [the debtor]." *Id.* Not surprisingly, the court had little sympathy when the counterparty then attempted to recover the extra amount it had to pay for refusing to work with Quick Trucking under the debtor's original terms. Importantly, however, both parties fully performed their contractual obligations while the debtor compelled the nondebtor's performance pending the debtor's decision to assume or reject.

of prejudgment interest constituted a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e)). Accordingly, Metavante's use of a Rule 59(e) Motion to seek clarification as to the default interest due under the Motion to Compel Order was proper.

On the merits, LBSF continues its failure to provide any actual numbers that support its calculation of the default interest allegedly owed. Had it submitted evidence on this issue in its initial Motion to Compel, the parties could have addressed that issue then. However, because LBSF did not, it should not be rewarded for that failure now. Likewise, it remains unclear whether LBSF is even entitled to default interest -- and if so, when the clock started running -- in light of the fact that LBHI's bankruptcy filing, was the party that caused the first breach. Nevertheless, Metavante remains willing to place the default interest that is allegedly owed into the escrow account until Metavante's rights have been conclusively determined. Moreover, LBSF's proposal to have Metavante pay the default interest -- at LBSF's alleged default interest rate -- and then allow Metavante to file yet another motion to challenge the default interest rate would be a waste of the parties' and the Court's time and resources. Metavante has already filed a proper Rule 59(e) Motion raising the default interest issue. Judicial economy would not be served by requiring a second round of briefing, and then another hearing date.

LBSF's final argument is that the Court should deny Metavante's Motion to Stay because, according to LBSF, a stay is an "extraordinary" remedy. It is not extraordinary at all to seek a stay pending appeal, and while the Notice of Appeal will not be filed until this Court's disposition of the Motion to Alter or Amend, Metavante was forced to file the Motion to Stay at this earlier juncture in light of LBSF's decision to tender the Demand Letter before LBSF had even responded to Metavante's Motion to Alter or Amend.

In any event, a motion to stay is a fairly commonplace remedy sought by parties pending appeal. Indeed, Rule 8005 of the Federal Rules of Bankruptcy Procedure authorizes parties to seek a stay pending appeal. In addition, section 105 of the Bankruptcy Code provides bankruptcy courts with broad discretionary power in order to carry out the provisions of the Bankruptcy Code. Moreover, Metavante's Motion to Stay was, for all intents and purposes, a garden variety motion to stay. Here, the only real distinguishing feature is Metavante's proposal to place the funds in an escrow account rather than wasting money on a supersedeas bond, as sanctioned by Judge Posner in the Seventh Circuit's seminal decision on this topic. As Judge Posner explained: "[A]n inflexible requirement of a bond would be inappropriate . . . where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money . . . ." *Olympia Equip. v. W. Union Telegraph*, 786 F.2d 794, 796 (7th Cir. 1984); *see, e.g.*, *Federal Prescription Services v. American Pharmaceutical Association*, 636 F.2d 755, 759-61 (D.C. Cir. 1980) (use of a supersedeas bond is merely one of the acceptable methods for obtaining a stay). No one has ever questioned Metavante's ability to pay the judgment, and Metavante is ready and willing to

place the full amount due -- as well as any amounts that may become due pending resolution of Metavante's appeal -- into an interest-bearing escrow account. Therefore, it would be a waste of money to require Metavante to purchase a supersedeas bond pending its appeal. Moreover, because there is no question that Metavante has the resources to pay the funds due under the Motion to Compel Order into an interest-bearing escrow account, and because Metavante has offered to do just that, LBSF would receive the same protection from harm that it would receive if Metavante were to purchase a supersedeas bond. As such, and for the reasons set forth in Metavante's Motion for Stay, the Court should enter an Order staying the effect of its Motion to Compel Order.

In order to conserve resources, this letter serves as a response to LBSF's letter to the Court dated October 13, 2009. As LBSF did, Metavante reserves the right to submit further briefing on these issues.

We respectfully invite the Court's input at the Chambers Conference this afternoon.

Very truly yours,

s/ Bruce G. Arnold

Bruce G. Arnold

BGA/kjr
cc:    Richard W. Slack, Esq. (via e-mail)
       Robert Lemons, Esq. (via e-mail)
       Wilbur F. Foster, Jr., Esq. (via e-mail)
       Christopher J. Shore, Esq. (via e-mail)
       Daryl L. Diesing, Esq. (via e-mail)