UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
In re                                                                                      :    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :    08-13555 (JMP)
:
Debtors.                                                              :    (Jointly Administered)
:
:
----------------------------------------------------------------x

## AFFIDAVIT AND DISCLOSURE STATEMENT OF ELIZABETH WAINSTEIN ON BEHALF OF THE POTOMACK COMPANY

STATE OF VIRGINIA            )
                                             ) ss:
CITY OF ALEXANDRIA      )

Elizabeth Wainstein, being duly sworn, upon her oath, deposes and says:

1. I am the owner of The Potomack Company, located at 526 North Fayette Street, Alexandria, Virginia (the "Firm").

2. Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced Chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), have requested that the Firm provide storage and auction services to the Debtors, and the Firm has consented to provide such services.

3. I submit this Affidavit in accordance with the procedures set forth in the order entered November 5, 2008 authorizing the Debtors to employ professionals utilized in the ordinary course of business [Docket No. 1394] in connection with the Firm's engagement with the Debtors, pursuant to sections 105(a), 327(a), 328, 330 and 504 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

4. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to these Chapter 11 cases, for persons that are parties in interest in the Debtors' Chapter 11 cases. As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these Chapter 11 cases. The Firm does not perform services for any such person in connection with these Chapter 11 cases. In addition, the Firm does not have any relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates.

7. Neither I, nor any principal of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm.

8. Neither I, nor any principal of, or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates.

9. The Debtors owe the Firm $0 for pre petition services.

8. The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.[1]

---

[1] If necessary.

THE POTOMACK COMPANY

By: *[signature]*
Elizabeth Wainstein -- Owner

Subscribed and sworn to before me
this 16 day of September, 2009.

*[signature]*
Notary Public  ID 186095

My Commission Expires: 2/28/2011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :    08-13555 (JMP)
                                                   :
                    Debtors.                       :    (Jointly Administered)
                                                   :
                                                   :
------------------------------------------------------------x

## RETENTION QUESTIONNAIRE

TO BE COMPLETED BY PROFESSIONALS EMPLOYED BY LEHMAN BROTHERS HOLDINGS INC. OR ANY OF ITS DEBTOR AFFILIATES (collectively, the "Debtors")

DO NOT FILE THIS QUESTIONNAIRE WITH THE COURT.
RETURN IT FOR FILING BY THE DEBTORS, TO:

    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, New York 10153
    Attn:  Jennifer Sapp
           Christopher Stauble

All questions **must** be answered. Please use "none," "not applicable," or "N/A," as appropriate. If more space is needed, please complete on a separate page and attach.

    1.    Name and address of firm:

        The Potomack Company, 526 N. Fayette Street, Alexandria, Virginia 22314

    2.    Date of retention:    September 15, 2009.

3. Type of services provided (accounting, legal, etc.):

   Storage and auction services.

4. Brief description of services to be provided:

   Auction of consigned art work.

5. Arrangements for compensation (hourly, contingent, etc.)

   Compensation is based on a sliding scale commission of 10% to 25% of the hammer price as outlined in the contract. The estimated commission is expected to be well below $150,000 per month.

   (a.) Average hourly rate (if applicable):

   N/A

   (b.) Estimated average monthly compensation based on pre petition retention (if firm was employed pre petition):

   10% - 25%

6. Pre petition claims against the Debtors held by the firm:

   Amount of claim:    N/A

   Date claim arose:   N/A

   Source of Claim:    N/A

7. Pre petition claims against the Debtors held individually by any member, associate, or professional employee of the firm:

   Name: N/A

Status: N/A

Amount of Claim: N/A

Date claim arose: N/A

Source of claim: N/A

8. Stock of the Debtors currently held by the firm:

Kind of shares: N/A

No. of shares: N/A

9. Stock of the Debtors currently held individually by any member, associate, or professional employee of the firm:

Name: N/A

Status: N/A

Kind of shares: N/A

No. of shares: N/A

10. Disclose the nature and provide a brief description of any interest adverse to the Debtors or to their estates with respect to the matters on which the above-named firm is to be employed.

N/A

11. Name of individual completing this form:

Elizabeth Wainstein – Owner, The Potomack Company

# The Potomack Company

### AUCTIONS & APPRAISALS

526 NORTH FAYETTE STREET
ALEXANDRIA, VIRGINIA 22314
703-684-4550 (TEL)  &  703-684-4554 (FAX)
WWW.POTOMACKCOMPANY.COM
VA LICENSE #704

## AUCTION CONSIGNMENT AGREEMENT

Consignor __Lehman Brothers__     Date __Sept. 23, 2009__

Address _____     Client # __9829__

Telephone/Fax _____     Email _____

Thank you for using The Potomack Company. This writing confirms our agreement to sell your property listed on The Potomack Company Receipt number _____, a copy of which is attached hereto (the "Property"). In this agreement, "you" or "your" refer to the Consignor listed above. Additionally, as used in this agreement, "we," "us" or "ours" refer to The Potomack Company. The terms of this agreement are subject to The Potomack Company's Terms and Conditions of Sale and Limited Warranty.

1. **Consignment.**
   You will consign to us the Property to be sold by us at public auction on __2009__
   (or, in our sole discretion, at any of the dates and times listed on Exhibit A attached hereto) (the "Auction") at 526 North Fayette Street, Alexandria, Virginia, 22314.

2. **Right to Sell.**
   We have the exclusive right to sell the Property at the Auction (or as otherwise agreed herein).

   We shall determine, in our sole discretion, whether any or all of the Property will be sold at one of our scheduled catalogue auctions, in which case, you may set a minimum price for the Property (a "Reserve," see paragraph 5, below), or at one of our scheduled Markets Days auctions, in which case, the Property will be sold without a Reserve, unless otherwise noted on the receipt attached hereto.

   In connection with the Auction, we shall have sole discretion to (a) consult any expert concerning the Property; (b) research the provenance of the Property; (c) group the Property into lots; (d) market and promote the sale of the Property; (e) provide descriptions and illustrations of the Property in a catalogue or otherwise for marketing purposes; and, (f) determine the manner in which the Property is to be sold.

   If any of the Property that is subject to a Reserve fails to sell at the Auction, we reserve the right to act as your agent in selling the Property privately for a period of sixty (60) days following the date of the Auction for a price that is equal to the Reserve.

3. **Commissions.**
   You will pay us a seller's commission on each lot of Property sold at the Auction. The amount of the seller's commission will be a percentage of the hammer price of such lot based upon the guidelines set forth below. The seller's commission will be withheld from the proceeds of the sale.

   | Hammer Price | Commission Rate |
   | --- | --- |
   | Up to $500 | 25% commission |
   | $501-1500 | 20% commission |
   | $1501-3000 | 15% commission |
   | $3001 and above | 10% commission |

You authorize us to charge the buyer and retain for our account a commission on each lot sold (the "buyer's premium"). The buyer's premium will be assessed against the buyer and will be 17.5 % of the hammer price of such lot.

The commissions paid to us will cover our services at auction including, but not limited to, preparation, travel, labor, advertising and any other auction-related expenses.

We reserve the right, without further notice to you, to pay out of our commissions a fee to any third party introducing property or clients to us.

4. **Settlement.**
Within thirty (30) days of the Auction in which any of the Property is sold, we will mail to you the hammer price that we have collected after we deduct our commission and reimbursable expenses (the "settlement amount"), unless, for some reason, the sale must be rescinded in accordance with the paragraph entitled "Rescission," below. We may also deduct from the settlement amount any other amounts you may owe us in connection with the Property or otherwise.

If, for some reason, the buyer does not pay for the Property, we reserve the right to cancel the sale and either (a) return the Property to you, or (b) re-sell the Property on your behalf. You authorize us, in our sole discretion, to impose on any buyer a late fee that will be retained by us if payment has not been made in accordance with the Terms and Conditions of Sale.

If we pay you all or part of the settlement amount for any Property, and the buyer has not paid for that Property, you agree to assign to us all rights you may have against the buyer and to execute any documents we may require evidencing such assignment.

5. **Reserves.**
As stated above, sale of the Property may be subject to a Reserve. Please initial here if you want the Property to be sold without a Reserve. _____

The Reserve amount for lots of the Property will be an amount agreed to by you and us in writing.

Any Property that does not sell at the Reserve that is "bought-in" for you and your account will be subject to either a commission of 6% of the Reserve or $50, whichever is greater.

6. **Bidding Restriction.**
You agree not to bid on the Property. Although we are permitted to bid on your behalf up to the Reserve, you may not instruct or permit any other person to bid for the Property on your behalf. If, in our sole judgment, we believe that you are in breach of this obligation, we will either withdraw the Property from sale under the paragraph entitled "Withdrawal," below, or, if we determine, after the sale of the Property that there has been a breach of this obligation, we may rescind the sale of the Property under the terms of the paragraph entitled "Rescission," below.

7. **Pre-sale Estimates.**
From time to time we may publish or provide to you pre-sale estimates of the value of the Property intended only as guides for prospective bidders. We make no representations or warranties as to the anticipated selling price of the Property and our pre-sale estimates may not be relied upon by anyone as a prediction of the selling price or fair market value of the Property. All estimates provided by us to you or otherwise are subject to revision at any time.

8. **Preparation for Sale.**
We may need to take certain steps to prepare the Property for the Auction. To this end, you authorize us to arrange for any repairs or other services necessary to exhibit and sell the Property, so long as the total cost of such services is no more than $100. We will obtain authorization from you before we perform any services that would amount to more than $100.

9. **Fees and Expenses.**
You agree to be charged $25 per lot for (a) expenses and fees related to internet auctioning, and (b) illustrations of the Property. In addition, you may also be charged for (1) packing and shipping and custom duties to the premises; (2) the cost of reproduction rights; and, (3) other services such as framing, restoration and gemological tests, as described in "Preparation for Sale," above.

10. **Descriptions and Photographs of the Property.**
In connection with the sale of the Property, we may, in our sole discretion, publish descriptions and/or photographs of the Property. We retain the exclusive right to the copyright of all photographs, illustrations, and descriptions of the Property created by us for the catalogue or otherwise in connection with the sale of the Property. We will not be liable for any errors or omissions in any descriptions of the Property, whether in the catalogue or otherwise. We make no guarantees, representations or warranties to you with respect to the Property as to its authenticity, condition, value or otherwise.

<u>Insurance Amount.</u> The amount of insurance we are purchasing on your behalf and which you agree to is: (a) for Property that has been sold, the hammer price; and, (b) for Property that has not yet been offered for sale or that has failed to sell at auction, the average of our latest high and low pre-sale estimates.

15. **Treatment of Unsold Property.**
If any of the Property remains unsold for any reason, we will notify you. If we choose not to sell the Property in accordance with the terms set forth in paragraph 2, above, and it is not re-consigned to us for sale upon mutually agreed-upon terms and it is not picked up within fifteen (15) days of notification to you, we may, in our sole discretion, (a) return it to you at your expense, (b) sell it at auction without a Reserve at a date to be determined by us, or (c) transfer it to a third-party warehouse. The proceeds of any sale pursuant to (b) above will be remitted to you after we deduct any amounts owed to us by you. If the Property is transferred and stored pursuant to paragraph (c) above, you agree to bear all the cost and risk thereof and be liable directly to the warehouse for its standard costs and fees. In any event, we will not release any unsold Property to you until all amounts you owe us related to the Property or otherwise, are paid.

16. **Delivery of Merchandise.**
If you have not already done so, you will deliver to us, within _____ days, the Property. The Property shall be delivered to and shall be held for sale at one of our places of business at either 526 North Fayette Street or 277 South Washington Street, Alexandria, Virginia, 22314.

17. **Inspection.**
A record of all Property that has been sold by us will be available for your inspection during regular business hours.

18. **No Amendment or Assignment.**
This agreement may not be amended other than by writing that has been signed by both of us. You may not assign your rights or responsibilities under this agreement without written consent by us.

19. **Construction; Waiver.**
This Agreement shall be construed according to the laws of the Commonwealth of Virginia. The right of either party to require strict performance by the other hereunder shall not be affected by any previous waiver, forbearance, or course of dealing.

I have read, accepted, and understand the terms of this contract on this 23 day of Sept, 2009.

Consignor: _____  Company: Cipolt H Weinstein

(If you are an agent for the Consignor, please sign below and attach hereto any documentation that we may require proving that you have the right to enter into this agreement on the behalf of the Consignor or his/her estate.)

_____ as agent for _____

4