**Hearing Date and Time: November 18, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 3, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Thomas J. Moloney
Sean A. O'Neal

*Attorneys for PB Capital Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                            :
**In re**                                   :      **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**
                                            :
           **Debtors.**                     :      **(Jointly Administered)**
                                            :
-----------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF PB CAPITAL TO**
**INCLUDE CERTAIN EUROPEAN MEDIUM TERM NOTES IN THE LEHMAN**
**PROGRAM SECURITIES LIST OR, ALTERNATIVELY, TO DEEM SUCH**
**CLAIMS TO BE TIMELY FILED BY THE SECURITIES PROGRAMS BAR DATE**

PLEASE TAKE NOTICE that the hearing on the annexed motion (the "Motion")

of PB Capital Corporation ("PB Capital") for entry of an order deeming the inclusion of four

securities held by PB Capital as Lehman Program Securities[1] and waiving any requirement that

PB Capital include blocking reference numbers with its proofs of claim or, alternatively,

deeming such claims to be timely filed by the Securities Programs Bar Date, as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, in Room 601 of the United States Bankruptcy Court for the Southern District

---

[1]     Capitalized terms used but not otherwise defined herein shall have the respective definitions ascribed to
such terms in the Order Pursuant to Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule
3003(c)(3) Establishing The Deadline For Filing Proofs Of Claim, Approving The Form And Manner Of
Notice Thereof And Approving The Proof Of Claim Form [Docket No. 4271] (the "Bar Date Order").

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York

10004 (the "Bankruptcy Court"), on **November 18, 2009, at 10:00 a.m. (Prevailing Eastern**

**Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New

York 10006, Attn: Thomas J. Moloney, Esq., and Sean A. O'Neal, Esq., attorneys for PB

Capital; (iii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153,

Attn: Lori R. Fife, Esq., Richard W. Slack, Esq., and Robert J. Lemons, Esq., attorneys for the

Debtors; (iv) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul

Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (v)

Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, New York

10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., Wilbur F. Foster, Jr., Esq., and

Evan Fleck, Esq., and Milbank, Tweed, Hadley & McCloy, LLP, 1850 K Street N.W., Suite

1100, Washington, D.C. 20006, Attn: David S. Cohen, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (vi) White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036- 2787, Attn: J. Christopher Shore, Esq., and Lisa Thompson, Esq., and Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019-6092, Attn: Martin Bienenstock, Esq., attorneys for the Ad Hoc Group of Lehman Brothers Creditors; and (vii) Hughes Hubbard & Reed, LLP, One Battery Park Plaza, New York, New York 10004, Attn: James W. Giddens, Esq., and Jeffrey S. Margolin, Esq., attorneys for the Securities Investor Protection Act Trustee, so as to be filed and received no later than **November 3, 2009, at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE THAT only those objections which have been timely filed and served by the Objection Deadline in accordance with the procedures herein may be considered by the Court at the Hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

PLEASE TAKE FURTHER NOTICE that if you fail to respond in accordance with this Notice the Court may grant the relief demanded by the Motion without any further notice or hearing.

Dated: New York, New York
        October 22, 2009

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP


                              By: /s/ Thomas J. Moloney
                                  Thomas J. Moloney
                                  Sean A. O'Neal

                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225-2000

                              *Attorneys for PB Capital Corporation*

**Hearing Date and Time: November 18, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 3, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Thomas J. Moloney
Sean A. O'Neal

*Attorneys for PB Capital Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :        **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*                        :        **08-13555 (JMP)**
                                                                    :
         **Debtors.**                                               :        **(Jointly Administered)**
                                                                    :
-------------------------------------------------------------------x

## MOTION OF PB CAPITAL TO INCLUDE CERTAIN EUROPEAN MEDIUM TERM NOTES IN THE LEHMAN PROGRAM SECURITIES LIST OR, ALTERNATIVELY, TO DEEM SUCH CLAIMS TO BE TIMELY FILED BY THE SECURITIES PROGRAMS BAR DATE

PB Capital Corporation ("PB Capital") hereby moves the Court (the "Motion")
for entry of an order, in substantially the form attached hereto as Exhibit A, deeming the
inclusion of four series of securities issued under the Euro Medium Term-Note Program of
Lehman Brothers Holdings Inc. and certain of its affiliates located outside the United States (the
"Euro Medium Term-Note Program", and each security issued under the Euro Medium Term-
Note Program, a "Euro Medium Term-Note Program Security") in the list of Lehman Program
Securities[1] (the "Program Securities List"), and waiving any requirement that PB Capital include

---

[1]    Capitalized terms used but not otherwise defined herein shall have the respective definitions ascribed to
       such terms in the Order Pursuant To Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule
       3003(c)(3) Establishing The Deadline For Filing Proofs Of Claim, Approving The Form And Manner Of
       Notice Thereof And Approving The Proof Of Claim Form [Docket No. 4271] (the "Bar Date Order").

Blocking Numbers (as defined herein) in its proofs of claim as contemplated in the Bar Date

Order.  In the alternative, PB Capital seeks entry of an order, in substantially the form attached

hereto as <u>Exhibit B</u>, deeming that any proof of claim or guarantee questionnaire filed by PB

Capital in respect of such Euro Medium Term-Note Program Securities shall be filed timely, as

long as they are filed on or prior to November 2, 2009, which is the bar date applicable to

securities included on the Program Securities List.  In support of this Motion, PB Capital

respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>

This Motion seeks to correct an error in the Program Securities List, which

occurred when the original Program Securities List, posted on July 6, 2009, was changed in a

subsequent and final draft to eliminate certain securities that should have been included on the

Program Securities List.  More specifically, this Motion seeks an order requiring that certain

Euro Medium Term-Note Program Securities held by PB Capital be included in the Program

Securities List subject to the November 2, 2009 Securities Programs Bar Date.  Although, as

noted, these securities were included in the original Program Securities List on July 6, 2009, they

were deleted from one or more subsequent versions of such lists published on the website,

without any justification for their omission or notice to PB Capital.  The deletion is inconsistent

with the terms of the Bar Date Order, which requires all of the Euro Medium Term-Note

Program Securities to be included on the Program Securities List.  In the alternative, in the event

that the Court does not grant the requested relief, PB Capital requests that the Court enter an

order deeming any proof of claim and guarantee questionnaire relating to PB Capital's European

Medium Term-Note Program Securities to be filed timely under principles of excusable neglect

provided such documents are filed on or before the Securities Programs Bar Date, or November

2, 2009.

2

## JURISDICTION

1.        The Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue of this proceeding

and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The Motion is

made pursuant to Rules 60(a) and (b) of the Federal Rules of Civil Procedure (each made

applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules)),

section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006(b)(1)

of the Bankruptcy Rules.

## BACKGROUND

2.        PB Capital is a wholly owned subsidiary of Deutsche Postbank AG, a

German bank ("Deutsche Postbank").  PB Capital is a creditor in these proceedings that engages

in the business of real estate lending, credit investments and treasury functions, among other

things.  See Declaration of Coleman Gregory ("Gregory Decl.") ¶ 3, attached hereto as Exhibit

C.

3.        On several dates in late 2007 and early 2008, PB Capital purchased four

series[2] of Financial Guarantee Linked Notes due 2027 issued under the Euro Medium Term-Note

Program with a total principal amount of $270,000,000 (the "EMT Notes").  Deutsche Postbank,

PB Capital's German parent company, at substantially the same time, also acquired four series of

Financial Guarantee Linked Notes issued under the Euro Medium Term-Note Program.[3]  The

EMT Notes were issued by Lehman Brothers Treasury Co. B.V. ("LBTCBV") and were

---

[2]        A "series" is a group of securities, issued under a program such as the Euro Medium Term-Note Program, that have the same terms and can trade fungibly with one another.  A single series may be held by one holder or by multiple holders.

[3]        The EMT Notes held by Deutsche Postbank were included on the July 17 Program Securities List and are not subject to this Motion.

guaranteed by Lehman Brothers Holdings Inc. ("LBHI"), one of the debtors and debtors in

possession (together, the "Debtors") in these chapter 11 proceedings.  The EMT Notes were

issued under the standard documentation of the Euro Medium Term-Note Program.[4]  See id. ¶ 4.

4.    Like many securities issued under the Euro Medium Term-Note Program,

the EMT Notes were "structured" securities, meaning that their payment terms were linked to the

cash flow or value of another instrument.  In the case of the EMT Notes, the related instruments

were financial guarantees issued by Lehman Brothers International (Europe) ("LBIE") and

guaranteed by LBHI.  PB Capital was the beneficiary of four of the financial guarantees (and

hence purchased four series of the linked notes).  Each of the financial guarantees provided PB

Capital with a guarantee of certain payments due under securities held by it and issued by a

group of structured product companies.  PB Capital agreed to pay premiums to LBIE in

exchange for the financial guarantees, and simultaneously agreed to purchase the related

Financial Guarantee Linked Notes.  See id. ¶ 5.

5.    On May 26, 2009, the Debtors filed a motion seeking to establish a

deadline for the filing of proofs of claim [Docket No. 3654] (the "Bar Date Motion"), including

claims relating to the Euro Medium Term-Note Program.  The Bar Date Motion initially sought

entry of an order requiring that debt security holders (other than holders of debt securities listed

on a Master List of Securities) who wished to assert claims against the Debtors arising out of or

relating to the sale, issuance, or distribution of such security, file proofs of claim and complete a

guarantee questionnaire as applicable on or prior to the Bar Date (as defined in the Bar Date

Motion).  Bar Date Motion at 7.  The Master List of Securities, published on June 24, 2009, did

---

[4]    Like all securities issued under the Euro Medium Term-Note Program, the terms of the EMT Notes were
set forth in a document known as "Final Terms," which supplements the Euro Medium Term-Note Program
Base Prospectus.  The Base Prospectus sets out terms applicable to all securities issued under the Euro
Medium Term-Note Program, as well as a series of options for individual series of securities.  The options
selected for each series, as well as any additional terms, are set forth in the Final Terms.

not include Euro Medium Term Note-Program Securities because they were issued under fiscal agency agreements rather than indentures.

6.      Following the publication of the Master List of Securities, a number of Euro Medium Term-Note Program Security holders, including PB Capital, objected to the Bar Date Motion because it would have required holders of debt securities guaranteed by LBHI, including the EMT Notes, to file proofs of claim and to submit guarantee questionnaires.  See, e.g., Docket No. 3847 (objection by PB Capital); Docket No. 3820 (objection by Barclays Capital Inc.).  The Debtors filed a response to these objections, arguing that a bar date was necessary because the Euro Medium Term-Note Program Securities were issued under fiscal agency agreements for which there was no indenture trustee authorized to file proofs of claim. The Debtors argued that holders of Euro Medium Term-Note Program Securities should be required to file proofs of claim so that claimholders could be identified.  To resolve these objections, at the urging of this Court, the Debtors engaged in a series of discussions with representatives of the objecting parties, including Cleary Gottlieb, which represented a number of affected parties, on an expedited basis.  These expedited discussions led to the inclusion of certain claims filing procedures in the Bar Date Order.  These procedures were intended to apply to all Euro Medium Term-Note Program Securities.[5]

7.      On July 2, 2009, the Bankruptcy Court entered the Bar Date Order which, among other things, established November 2, 2009 as the Securities Programs Bar Date.  See Bar Date Order at 12.  The Bar Date Order set forth special procedures to file claims in respect of Lehman Program Securities, including requirements that a holder of such claims (a) submit a particularized Securities Programs Proof of Claim Form, (b) identify each Lehman Program

---

[5]      Although one impetus for changes to the original Bar Date Order proposed by the Debtors in the Bar Date Motion was concern for certain retail customers, this was not the basis for PB Capital's objection and, in any event, the final Bar Date Order did not differentiate between retail and institutional holders.

Security by its International Securities Identification Number ("ISIN") and/or Committee on

Uniform Securities Identification Procedures ("CUSIP") number, as applicable, and (c) include

an electronic instruction reference number or blocking reference number (a "Blocking Number")

from a clearing system. Id. at 12-13.

8.    The Bar Date Order required the Debtors to publish on a specified website

(http://www.lehman-docket.com) (the "Website"), no later than July 6, 2009 at 5:00 p.m., a list

of "Lehman Program Securities" which would include, "at a minimum issuances under . . . that

certain U.S.$100,000,000,000 Euro Medium Term-Note Program," as well as securities issued

under certain other Lehman group programs. See Bar Date Order at 13 (emphasis added). The

list published by the Debtors on July 6, 2009 consisted of 55 pages of tables with several

thousand securities identification numbers in small print. The July 6 Program Securities List

included the EMT Notes held by PB Capital. See Gregory Decl. ¶ 6.

9.    Under the Bar Date Order, the Debtors were required to work in good faith

with interested parties to agree on a final Program Securities List by July 13, 2009, and to

publish the final Program Securities List on July 17, 2009. See Bar Date Order at 13. In

response to requests from a number of interested parties, including clients represented by Cleary

Gottlieb and other law firms, the Debtors added to the final Program Securities List securities

that were omitted from the July 6 Program Securities List. Specifically, the July 17 Program

Securities List was 74 pages long and included approximately 3,000 more securities than the

initial list as a result of suggested additions. The Program Securities Lists published on July 13

and July 17, for reasons that remain unknown, did not include the EMT Notes held by PB

Capital. The lists did not include any warning or notice that any securities had been deleted from

the prior version of the Program Securities List.

10.    Promptly after the publication of the July 6 Program Securities List, PB

Capital reviewed the list and determined that its EMT Notes were included.  As a consequence,

PB Capital concluded that it would not need to ask the Debtors to add its EMT Notes to the list

because they were already there.  In reliance on the July 6 Program Securities List, PB Capital

initiated the process of collecting information and preparing to file a Securities Programs Proof

of Claim Form on or before the Securities Programs Bar Date, including seeking to obtain the

Blocking Numbers.  See Gregory Decl. ¶ 6.

11.    On August 5, 2009, PB Capital asked The Bank of New York Mellon, its

securities custodian ("Custodian"), to request Blocking Numbers for the EMT Notes.  See id. ¶ 7.

On August 10, 2009, the Custodian told PB Capital that the clearing system in which the EMT

Notes were held (the Depository Trust Company ("DTC"), one of the clearing systems

specifically referred to in the Lehman Program Securities section of the Bar Date Order) did not

issue Blocking Numbers.  PB Capital concluded that it might have to transfer its EMT Notes to a

European clearing system in order to obtain a Blocking Number as contemplated under the Bar

Date Order.  Recognizing that resolving this issue could be complicated, and believing that its

Euro Medium Term-Program Securities were subject to a November 2, 2009 Securities Programs

Bar Date, PB Capital turned its attention to other proofs of claim and questionnaires (unrelated to

Lehman Program Securities) that were subject to September 22, 2009 or October 22, 2009 bar

dates.  See id. ¶ 8.

12.    Once the other proofs of claim and related questionnaires were submitted

(all in a timely manner prior to the relevant bar dates), PB Capital again contacted the Custodian

on October 7, 2009 to resolve the Blocking Number issue.  The Custodian confirmed that DTC

could not issue Blocking Numbers, and PB Capital instructed the Custodian to take the necessary

steps to transfer the EMT Notes to a European clearing system that could issue Blocking

Numbers.  On October 8, 2009, the Custodian, after making inquiries with Euroclear, informed

PB Capital that the EMT Notes were not eligible for such a transfer.  See id. ¶ 9.

13.    On October 8, 2009, PB Capital contacted Debtors' counsel to try to

resolve the Blocking Number issue.  Debtors' counsel then informed PB Capital that the EMT

Notes were not on the Program Securities List.  See id. ¶ 10.  PB Capital, astonished, reviewed

its records and confirmed that the EMT Notes were on the Program Securities List produced by

the Debtors on July 6, 2009, and discovered that the Debtors had inexplicably and without notice

deleted the EMT Notes from the final Program Securities List.  See id. ¶ 11.  PB Capital

promptly contacted Debtors' counsel again to request that the situation be rectified.  Debtors'

counsel responded that PB Capital could not file a Securities Programs Proof of Claim Form

because its EMT Notes were not on the Program Securities List as of 5:00 pm on July 17, 2009.

Debtors' counsel also informed PB Capital, without explanation, that ten securities with

identification numbers that included the prefix "US" (including the four series of PB Capital

EMT Notes) were deleted from the Program Securities List.[6]  See id. ¶ 12.

14.    On October 12, 2009, at the request of PB Capital, Cleary Gottlieb

contacted Debtors' counsel requesting that the EMT Notes be added to the Program Securities

List.  Following several additional communications with Debtors' counsel, counsel to PB Capital

and the Debtors held a conference call on October 20, 2009.  Because no resolution was reached

after several attempts to reach an agreement, PB Capital was forced to file this Motion.

---

[6]      A "US" prefix indicates that securities are included in the clearing system of DTC, which was the case for
the EMT Notes, but otherwise has no particular meaning.  DTC is one of the clearing systems specifically
mentioned in the section of the Bar Date Order relating to Lehman Program Securities.

## RELIEF REQUESTED

15.     By this Motion, PB Capital seeks entry of an order pursuant to section 105 of the Bankruptcy Code and Rules 60(a) and (b) of the Federal Rules of Civil Procedure (which are made applicable to bankruptcy cases under Rule 9024 of the Bankruptcy Rules) deeming the EMT Notes to be included on the Program Securities List and modifying the Blocking Number requirement with respect to the EMT Notes.  In the alternative, PB Capital seeks entry of an order pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9006(b)(1) permitting PB Capital to file late "ordinary" proofs of claim and guarantee questionnaires on or before the November 2, 2009 Securities Programs Bar Date, which applies to securities on the Program Securities List, and ruling that such documents will be deemed timely filed.

## BASIS FOR RELIEF

**I.     PB Capital's EMT Notes Were Improperly Removed
        From The Program Securities List And Should Be Deemed Included**

16.     The Bar Date Order provides that the Court may consider disputes "concerning the contents of the list of 'Lehman Program Securities.'"  See Bar Date Order at 13. To the extent there is an inconsistency between (i) the Bar Date Order's mandate that the Program Securities List include "at a minimum issuances under . . . that certain U.S.$100,000,000,000 Euro Medium Term-Note Program," see Bar Date Order at 13 (emphasis added), and (ii) the Bar Date Order's explicit incorporation of the Program Securities List, which currently does not include the EMT Notes, this Court has the authority pursuant to Fed. R. Civ. P. 60(a) to correct such an error and deem the inclusion of the EMT Notes on the Program Securities List retroactive to July 17, 2009 at 5:00 p.m. (prevailing Eastern Time).  Fed R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."); see also Marc Rich &

9

Co. A.G. v. U.S. (In re Marc Rich & Co. A.G.), 739 F.2d 834, 836 (2d Cir. 1984) (Rule 60(a) "permits the correction not only of clerical mistakes, but also of inadvertent errors arising from oversight or omission") (internal quotations omitted); Slupinski v. First Unum Life Ins. Co., No. 99 CV 0616 (TPG), 2006 WL 2266569, at *2 (S.D.N.Y. Aug. 7, 2006), rev'd on other grounds, 554 F.3d 38 (2d Cir. 2009) (the "general purpose of Rule 60(a) is to afford courts a means of modifying their judgments in order to ensure that the record reflects the actual intentions of the court") (internal quotation omitted).

17.    Additionally, to the extent of the movant's mistake, inadvertence or excusable neglect concerning the Program Securities List and the Bar Date Order, which in any case is due to the Debtors' failure to perform in accordance with the requirements of the Bar Date Order, Fed R. Civ. P. 60(b)(1) authorizes a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" in cases of "mistake, inadvertence, surprise, or excusable neglect," and Fed R. Civ. P. 60(b)(6) authorizes the Court to provide relief for "any other reason that justifies relief." Fed R. Civ. P. 60(b)(1), (6).  Granting relief under Rule 60(b) is soundly within the Court's discretion.  See United States v. Temporary Options, Inc., No 92 CIV. 7491 (LMM), 1994 WL 263555, at *2 (S.D.N.Y. June 6, 1994).  In exercising its discretion, the Court may consider applicable principles of equity.  See Whitaker v. Assoc. Credit Servs., Inc., 946 F.2d 1222, 1224 (6th Cir. 1991).  As described herein, under either Rule 60(a) or 60(b) of the Federal Rules of Civil Procedure, PB Capital is entitled to have the EMT Notes deemed included in the Program Securities List.

18.    Moreover, section 105(a) of the Bankruptcy Code grants bankruptcy courts the equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"  11 U.S.C. § 105(a).  In particular,

bankruptcy courts, as courts of equity, have the power to "sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." NCNB Tex. Nat'l Bank v. Jones (In re Jones), 966 F.2d 169, 173 (5th Cir. 1992) (internal citations and quotations omitted).  "A bankruptcy court's powers under 11 U.S.C. §105 are broad."  In re Alexander's Inc., No. 95 Civ. 904 (LMM), 1996 WL 284907, at *1 (S.D.N.Y. May 30, 1996) (citing In re Jones).  If the relief requested by PB Capital is not granted, an inequitable and unfair result would occur, namely the permanent and improper removal of the EMT Notes from the Program Securities List, a list that should include all Euro Medium Term-Note Program Securities as set forth in the Bar Date Order.

19.     The Bar Date Order provided that the Securities Programs Bar Date would apply to claims against the Debtors arising from securities issued by the Debtors or any of the Debtors' affiliates located outside the United States including, "at a minimum issuances under . . . that certain U.S.$100,000,000,000 Euro Medium Term-Note Program."  See Bar Date Order at 13 (emphasis added).  As PB Capital holds EMT Notes constituting Euro Medium Term-Note Program Securities, the Bar Date Order provides that PB Capital's claims with respect to the Euro Medium Term-Note Program Securities are to be subject to the Securities Programs Bar Date and related procedures set forth in the Bar Date Order.

20.     The Bar Date Order does not contain an exception for Euro Medium Term-Note Program Securities with a "US" prefix (or any other prefix or category of such Euro Medium Term-Note Program Securities).  To the contrary, several provisions of the Lehman Program Securities section of the Bar Date Order would make no sense if Euro Medium Term-Note Program Securities with a "US" prefix were to be excluded from the Program Securities List.  A "US" prefix indicates that securities are included in the clearing system maintained by

11

DTC.  The Bar Date Order specifically requires that notice of the Lehman Program Securities procedures be provided to, among others, DTC.  See Bar Date Order at 13.  If securities with a "US" prefix were intended to be excluded, then the notice to DTC would have served no purpose.  Similarly, the Bar Date Order allows Lehman Program Securities to be identified by reference to CUSIP and ISIN numbers.  A security with a CUSIP number can also have an ISIN number.  Any such security would necessarily have an ISIN number with a "US" prefix (this was the case for the EMT Notes, which had both a CUSIP number and an ISIN number).  If securities issued to U.S. holders were intended to be excluded, then the reference to CUSIP numbers would have served no purpose.  In fact, the specific references in the Bar Date Order to the Euro Medium Term-Note Program Securities, DTC and CUSIP numbers lead to the reasonable conclusion that the EMT Notes are Lehman Program Securities subject to the special procedures established therefor.

21.     Assuming arguendo the reason for the deletion was that the Debtors became aware that the Securities Programs Bar Date Procedures could not possibly work as constructed for certain Euro Medium Term-Note Securities cleared through DTC (as DTC does not issue Blocking Numbers), a unilateral deletion of such securities from the Program Securities List without notice or discussion is inconsistent with the Bar Date Order's requirements.[7]  If such a decision was an intentional one, the Debtors should have sought to amend the procedures or at least attempted to contact holders of DTC-cleared Euro Medium Term-Note Securities in order to reach a consensual resolution of the issues.  The Debtors took no such actions.

22.     Permitting the incomplete list to stand would only create an injustice here. If the requested relief is granted, it would have no impact on the ability of the Debtors to raise objections to the obligations of LBHI relating to the EMT Notes or the amount of such

---

[7]     But see Exhibit 12 to the Gregory Decl. (Debtors' counsel unaware of DTC-cleared notes).

obligations.  As such, the Debtors and estates would suffer no prejudice if the Court were to

grant this Motion.  PB Capital therefore respectfully requests the Court compel the Debtors to

restore the EMT Notes to the Program Securities List, as set forth on the July 6 Program

Securities List.

**II.     PB Capital Should Be Allowed To Undertake Not To
          Transfer The EMT Notes As a Substitute For Obtaining A Blocking Number**

23.     As noted above, the Bar Date Order specifically provided that notice of

the Program Securities procedures be given to DTC, and for the use of CUSIP numbers (which

only exist for DTC securities) to identify Lehman Program Securities.  See Bar Date Order at 13.

Presumably because of the rushed process in which the Lehman Program Securities claims filing

procedures were drafted, the Bar Date Order included DTC in the procedures despite the fact that

DTC does not issue Blocking Numbers.

24.     PB Capital did not know that DTC does not issue Blocking Numbers until

August 10, 2009, when the Custodian informed PB Capital of this policy.  PB Capital believed in

good faith that it could address this problem by transferring its securities to a European clearing

system that does issue Blocking Numbers.  See Gregory Decl. ¶ 8.   It was not until October 8,

2009 that PB Capital learned that it could not do so.  See id. ¶ 9.

25.     The Debtors implemented the Blocking Number procedure to address the

fact that they would have difficulty in identifying claimants if they were to trade Lehman

Program Securities prior to the Securities Programs Bar Date.  They were also concerned that

absent such procedures, multiple proofs of claim could be filed in respect of the same underlying

claim.  These concerns do not exist for PB Capital, which has identified itself and seeks to file a

proof of claim in its own name.  PB Capital is willing to undertake not to transfer its EMT Notes

(or the related LBHI guarantee) until after the Blocking Numbers that apply to other Lehman

Program Securities expire.  This approach will in no way prejudice the Debtors.

26.    PB Capital submits that this is a reasonable alternative that properly

addresses an oversight in the Bar Date Order.  PB Capital respectfully requests that the Court

permit PB Capital to file its proofs of claim by the Securities Programs Bar Date under this

alternative procedure.

### III.    Alternatively, PB Capital's Actions Represent Excusable Neglect And PB Capital Should Be Permitted To File Proofs Of Claim On Or Before The Securities Programs Bar Date

27.    Bankruptcy Rule 9006(b)(1) authorizes the Court in its discretion to

permit the filing of an untimely proof of claim where the delay is the result of "excusable

neglect."  See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380 (1993).

In Pioneer, the Supreme Court stated that the excusable neglect standard is an "elastic concept"

that "is at bottom an equitable one, taking account of all relevant circumstances surrounding the

party's omission."  Id. at 392, 395.   Four factors should be considered in the excusable neglect

analysis:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its
> potential impact on judicial proceedings, [3] the reason for the delay,
> including whether it was within the reasonable control of the movant, and
> [4] whether the movant acted in good faith.

See id. at 395.

28.    Specifically, in Pioneer, the Supreme Court determined that a creditor

acted with excusable neglect when the creditor failed to file a timely proof of claim because,

among other things, the claims bar date was disclosed only in small print on a notice of a

meeting of creditors and because the debtor was able to account for the creditor's claim in its

amended plan of reorganization (i.e., the debtor was not prejudiced by the creditor's late claim).

14

See id. at 397-98.  Similar circumstances exist here.  Here, the Bar Date Order specifically states

that Euro Medium Term-Note Program Securities will be included in the Program Securities

List.  Moreover, the Debtors did not provide meaningful or conspicuous notice that the EMT

Notes were or might be deleted from the July 6 Program Securities List.  Also, as in Pioneer,

there is absolutely no prejudice that could befall the Debtors if PB Capital's claims, which were

already known by the Debtors, are included.  The Debtors' rights to object to PB Capital's

guarantee claims are fully preserved.

        A.     No Prejudice To The Debtor

        29.     The first Pioneer factor heavily weighs in favor of permitting the late

filing of proofs of claim, as the delay in filing here does not "jeopardize the success of the

reorganization."  Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),

419 F.3d 115, 130 (2d Cir. 2005) (internal citations and quotations omitted).  First, there can be

no prejudice to the Debtors in allowing PB Capital to file a claim by the Securities Programs Bar

Date, which is November 2, 2009.  Second, the Debtors were already aware of the potential

claims held by PB Capital as the EMT Notes were listed on the July 6 Program Securities List.

See In re Sage-Dey, Inc., 170 B.R. 46, 53 (Bankr. N.D.N.Y. 1994) (finding no danger of

prejudice where debtors were notified by IRS prior to bar date of discrepancy in their tax forms

which later became basis for IRS's late-filed claim).  Third, no disclosure statement or plan has

been filed in this case.  See, e.g., In re Enron, No. 01-16034 (AJG), 2003 WL 21756785, at *4-5

(Bankr. S.D.N.Y. July 30, 2003) (permitting filing of nine-day-late proof of claim and finding no

prejudice because claims review and reconciliation process was in early stages and no plan or

disclosure statement had yet been filed); In re Infiltrator Sys., Inc., 241 B.R. 278, 281-82 (Bankr.

D. Conn. 1999) (permitting late-filed claim because debtor had not yet proposed plan).  Even to

the extent that PB Capital's claims may have an effect, however small, on the funds available to all creditors, the Second Circuit has found this to be of no weight in the determination of prejudice to the debtor.  In re Enron, 419 F.3d at 130 ("[W]e agree with the observation that the Court must have had more in mind than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. . . . Otherwise, virtually all late filings would be condemned by this factor . . . .") (internal citations and quotations omitted).  As there is no actual harm by allowing PB Capital to file late proofs of claim, any hypothetical harm that may be raised by the Debtors will not rise to the level of prejudice.  See In re O'Brien Envtl. Energy, 188 F.3d 116, 127 (3d Cir. 1999) ("[P]rejudice is not an imagined or hypothetical harm . . . .").

30.     Nor would allowing PB Capital to file its claim by the Securities Programs Bar Date open the proverbial floodgates for other creditors.  This is a unique situation and the relief sought here is exceptionally minor.  All that is being sought here is for the Court to extend by approximately five weeks the filing date for deemed timely proof of claims for a very limited number of securities.  It is inconceivable that such minor relief to prevent an injustice could in any way prejudice the efficient administration of these estates.  See In re Beltrami Enters., Inc., 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (rejecting the floodgates argument because there was no evidence that "hordes of claimants" would file claims).  This is in contrast to Enron where a creditor's guarantee claim was not unique as compared to thousands of potential claimants.  See In re Enron, 419 F.3d at 131–32.

16

B.        Length Of Delay Is *De Minimis*

31.        The second Pioneer factor also heavily weighs in favor of permitting the

late filing of the proofs of claim.  On October 8, 2009, upon learning from the Debtors that the

EMT Notes were not included on the final Program Securities List, PB Capital took immediate

steps to try to rectify the situation, including reaching out to Debtors' counsel to attempt to

resolve these issues.  See Gregory Decl. ¶¶ 10-12.  The delay from the time of discovery is *de*

*minimis* and, as discussed above, does not in any way disrupt the judicial administration of this

case.  See, e.g., Pioneer, 507 U.S. at 398-99 (permitting filing proof of claim twenty days after

the bar date); In re Enron, 2003 WL 21756785, at *5 (nine-day delay did not impact debtor's

judicial proceedings); In re Sage-Dey, 170 B.R. at 52-53 (permitting filing of proof of claim six

months after bar date); In re Beltrami, 178 B.R. at 392 (Bankr. M.D. Pa. 1994) (permitting filing

a two-year late proof of claim).

C.        Reasons For The Delay Justifiable

32.        In Pioneer, the Court found that excusable neglect may extend to

"inadvertent delays" and that it is "not limited strictly to omissions caused by circumstances

beyond the control of the movant."  507 U.S. at 392 ("Congress plainly contemplated that the

courts would be permitted, where appropriate, to accept late filings caused by inadvertence,

mistake, or carelessness, as well as by intervening circumstances beyond the party's control.").

Moreover, the extent to which a bar date order is unusual or outside of the ordinary is another

factor that courts weigh in determining justification.  Id. at 388.

33.        Here, PB Capital does not debate that the Bar Date Order provides for July

17, 2009 at 5:00 p.m. to be the final time to establish the Program Securities List.  However, PB

Capital does submit that its delay is justifiable and excusable under the circumstances and in

light of the actions taken by the Debtors.  In particular, PB Capital's situation is substantially

similar to that of the creditor in <u>In re O'Brien Envtl. Energy, Inc.</u>, 188 F.3d at 128–29 (3d Cir.

1999).  In <u>O'Brien</u>, the debtor scheduled a claim in respect of executory contract counterparty

Manus Corporation ("<u>Manus</u>").  <u>Id.</u> at 119.  Following confirmation of the debtor's plan, the

debtor filed an application with the bankruptcy court creating a disputed claims reserve and

establishing cure amounts; however, the application failed to include the cure amount in respect

of Manus, which would have had the effect of extinguishing Manus' scheduled claim.  <u>Id.</u>

Despite the fact that Manus received the debtor's application and had "leafed through it" (i.e., the

delay was "within Manus's control") the Third Circuit determined that Manus's failure to file a

timely proof of claim was excusable because, among other things, the debtor's actions, including

the debtor's unclear procedures and the debtor's failure to include all known cure claims on the

application, contributed to the creditor's neglect.  <u>Id.</u> at 128–29.  Likewise, the Debtors here were

aware of the EMT Notes and had scheduled them on the July 6 Program Securities List.  PB

Capital had no reason to believe that the Debtors would, without conspicuous notice or cause,

remove Euro Medium Term-Note Program Securities such as those held by PB Capital.

Moreover, PB Capital reasonably believed that the purpose of changing the Program Securities

List was to <u>add</u> (not delete) securities that were inadvertently omitted by the Debtors from the

original List.  PB Capital should not suffer draconian punishment because it failed to anticipate

the fact that the Debtors would delete from the July 6 Program Securities List securities that were

included <u>and</u> that were required to be included on the list under the Bar Date Order.

34.    The Debtors themselves have recognized the importance of providing

meaningful and conspicuous notice of the deletion of securities from a list such as this, in order

to avoid confusion and error.  The Debtors provided such notice with respect to the Master List

of Securities.  The Website contains an explicit, boldface warning that certain securities were

deleted from the Master List of Securities.  See <u>Website</u> ("Certain securities that were included

on the Master List of Securities as of June 24, 2009 have been deleted.").  In contrast, the

Website did not and does not provide any general notice or warning that the Debtors have

removed securities from the Program Securities List.

   35. The facts here are also distinguishable from those cases where courts

typically do not find excusable neglect because a creditor, for example, deliberately chose not to

file proofs of claim, <u>see</u> <u>In re D.A. Elia Constr. Corp.</u>, 246 B.R. 164, 171 (Bankr. W.D.N.Y.

2000) (counsel's claim of bar date notice inadequacy was a pretext because he systematically

ignored all other bar date notices), failed to understand the bankruptcy rules regarding claims and

bar dates, <u>see</u> <u>In re New York Seven-Up Bottling Co., Inc.</u>, 153 B.R. 21, 23 (Bankr. S.D.N.Y.

1993) (creditor chose not to file proofs of claim based on the assumption that the claims were not

in dispute), mistakenly believed that the bar date was a later, incorrect date, <u>see</u> <u>U.K. Northridge,</u>

<u>Inc. v. Au Coton, Inc. (In re Au Coton, Inc.)</u>, 171 B.R. 16, 17 (S.D.N.Y. 1994) (counsel

mistakenly believed that the bar date was June 1 when it was actually May 17), inadvertently

missed the claims bar date, <u>see</u> <u>In re Enron</u>, 419 F.3d at 120 (creditor was occupied with other

negotiations with the debtors), or offered no explanation for the delay in filing, <u>see</u> <u>In re Calpine</u>

<u>Corp.</u>, Nos. 05-60200 (BRL), 07 Civ. 8493 (JGK), 2007 WL 4326738, at *7 (S.D.N.Y. Nov. 21,

2007) (creditor failed to provide an explanation for not including alleged related claims with the

filing of the original timely filed claims).

  D. <u>PB Capital Has Acted In Good Faith</u>

   36. The circumstances of this filing demonstrate that PB Capital has acted in

good faith.  As indicated by PB Capital's communication to the Custodian on October 7, 2009

requesting assistance in obtaining Blocking Numbers and PB Capital's communication to the

Debtors on October 8, 2009 requesting assistance with resolving the Blocking Number issue, PB

19

Capital had always believed that the EMT Notes were included on the Program Securities List. See Gregory Decl. ¶¶ 9 –10. Moreover, upon learning from the Debtors that the EMT Notes were not on the July 17 Program Securities List, PB Capital immediately took steps, including attempting to reach a consensual resolution of these issues with Debtors' counsel. See id. ¶ 12. PB Capital's good-faith belief that the EMT Notes were included on the Program Securities List is further demonstrated by the other proof of claim filings made by PB Capital prior to the September 22, 2009 and October 22, 2009 filing dates, which filings did not include the EMT Notes. See id. ¶ 8.

## MEMORANDUM OF LAW

37. Because the legal points and authorities upon which this Motion relies are incorporated herein, PB Capital respectfully requests that the requirement of service and filing of a separate memorandum of law pursuant to Rule 9013-1(b) of Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

## NOTICE

38. PB Capital has provided notice of the Motion pursuant to the Amended Order Implementing Certain Notice And Case Management Procedures entered in this proceeding [Docket No. 2837]. PB Capital submits that no other or further notice need be given.

## NO PRIOR REQUEST

39. No prior motion for the relief requested herein has been made to this Court or any other court.

WHEREFORE, PB Capital respectfully requests that the Court enter the Order, in substantially the form attached hereto as Exhibit A, deeming the inclusion of the EMT Notes in the Program Securities List retroactive to July 17, 2009 at 5:00 p.m. (prevailing Eastern Time) and waiving any requirement that PB Capital include Blocking Numbers with its proofs of claim (subject to PB Capital's agreement to not trade the EMT Notes prior to the expiration of the Blocking Numbers for other Euro Medium Term-Note Program Securities).  In the alternative, and for good cause shown, PB Capital seeks entry of an order, in substantially the form attached hereto as Exhibit B, deeming that any proof of claim or guarantee questionnaire filed by PB Capital in respect of the EMT Notes shall be filed timely, as long as they are filed on or prior to November 2, 2009.

Dated: New York, New York
       October 22, 2009

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Thomas J. Moloney

Thomas J. Moloney
Sean A. O'Neal
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for PB Capital Corporation*

## <u>EXHIBIT A</u>

**Proposed Order To Deem Inclusion of the EMT Notes**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                               :

In re                              :      **Chapter 11 Case No.**

                                               :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :      **08-13555 (JMP)**

                                             :

            **Debtors.**               :      **(Jointly Administered)**

                                             :
------------------------------------------------------------------x

**ORDER DEEMING THE INCLUSION OF**
**PB CAPITAL'S SECURITIES IN THE PROGRAM SECURITIES LIST**

          Upon consideration of the motion (the "Motion") of PB Capital Corporation ("PB

Capital") for entry of an order (the "Order") pursuant to 11 U.S.C. §105 of the United States

Bankruptcy Code (the "Bankruptcy Code") and Rule 9024 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), deeming the inclusion of the EMT Notes[1] on the Program

Securities List and for such further relief as the Court may deem just and proper; and it appearing

that the relief requested by the Motion is appropriate; and due notice of the Motion having been

given; and it appearing that no other or further notice need be given; and the Court having found

and determined that it should exercise its discretion in accordance with the relief requested in the

Motion and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

          ORDERED that, pursuant to Bankruptcy Rule 9024 the Motion is granted; and it

is further

          ORDERED that the Program Securities List is immediately deemed to include the

EMT Notes issued under the Euro Medium Term-Note Program identified by ISIN numbers

---

[1]      Capitalized terms used but not otherwise defined herein have the respective definitions ascribed to such
terms in the Motion or the Bar Date Order.

US52519VAU08, US52519VAS51, US52519VAP13 and US52519VAQ95 retroactive to July

17, 2009 at 5:00 p.m. (prevailing Eastern Time); and it is further

ORDERED that any requirement that PB Capital include Blocking Numbers with

its proofs of claim is hereby waived, subject to PB Capital's agreement not to trade the EMT

Notes until the release of the Blocking Numbers relating to other Euro Medium Term-Program

Securities; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.


Dated: New York, New York
_____, 2009



_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Proposed Order to Deem Proof of Claim Timely Filed**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                      :
In re                                                 :    **Chapter 11 Case No.**
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,          :    **08-13555 (JMP)**
                                                      :
          **Debtors.**                                :    **(Jointly Administered)**
                                                      :
--------------------------------------------------------------------x

<u>**ORDER DEEMING PB CAPITAL'S PROOF OF CLAIM TIMELY FILED**</u>

            Upon consideration of the motion (the "<u>Motion</u>") of PB Capital Corporation ("<u>PB</u>

<u>Capital</u>") for entry of an order (the "<u>Order</u>") pursuant to 11 U.S.C. §105 of the United States

Bankruptcy Code (the "<u>Bankruptcy Code</u>") and Rule 9006(b)(1) of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), deeming that any proof of claim or guarantee

questionnaire filed by PB Capital in respect of PB Capital's Notes[1] (together, the "<u>Proofs of</u>

<u>Claim</u>") shall be timely filed; and for such further relief as the Court may deem just and proper;

and it appearing that the relief requested by the Motion is appropriate; and due notice of the

Motion having been given; and it appearing that no other or further notice need be given; and the

Court having found and determined that it should exercise its discretion in accordance with the

relief requested in the Motion and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefore,

            IT IS HEREBY FOUND AND DETERMINED THAT:

            A.       Deeming the timely filing of the Proofs of Claim will not unduly prejudice

the Debtors;

---

[1]        Capitalized terms used by not otherwise defined herein have the definition ascribed to such terms in the
Motion or the Bar Date Order.

        B.       The delay in filing the Proofs of Claim was *de minimis* in the context of these cases;

        C.       The reasons for the delay in filing the Proofs of Claim are justifiable; and

        D.       PB Capital has acted in good faith.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

        1.       The Motion is granted pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006(b)(1).

        2.       PB Capital shall be permitted to file the Proofs of Claim, which shall be deemed timely filed on or prior to the Bar Date in all respects and without prejudice to the rights of PB Capital, so long as the Proofs of Claim are filed by November 2, 2009.

        3.       This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
      _____, 2009


                       _____
                       HONORABLE JAMES M. PECK
                       UNITED STATES BANKRUPTCY JUDGE