## <u>EXHIBIT 4</u>

**Final Terms Dated 8 January 2008**
**Issue of U.S.$84,000,000 Financial Guarantee Linked Notes Due 2027**

Final Terms dated 8 January 2008

\#*3*

## LEHMAN BROTHERS TREASURY CO. B.V.

**Issue of U.S.$84,000,000 Financial Guarantee Linked Notes due 2027 (the "Notes")
Guaranteed by Lehman Brothers Holdings Inc.
under the U.S.$100,000,000,000
Euro Medium-Term Note Program**

*The purchase of the Notes may involve substantial risks and is suitable only for sophisticated investors who have the knowledge and experience in financial and business matters necessary to enable them to evaluate the risks and the merits of an investment in the Notes. Before making an investment decision, prospective purchasers of Notes should consider carefully, in the light of their own financial circumstances and investment objectives, all the information set forth in these Final Terms and in the Base Prospectus (as defined below).*

*The Issuer does not represent that the statements below regarding the risks of holding the Notes are exhaustive and the Issuer may be unable to pay interest, principal or other amounts on or in connection with any Notes for reasons other than those described below. The Issuer disclaims any responsibility to advise prospective investors of such risks as they exist at the date of these Final Terms or as they may change from time to time.*

*The attention of prospective investors is also drawn to the section headed "Risk Factors" in the Base Prospectus.*

**Interest and Principal**

On 20 December 2027, the Maturity Date, unless early redemption has occurred, each Note shall be redeemed by the Issuer at an amount equal to 100 per cent. of its Specified Denomination of U.S.$500,000. In addition, on 20 March, 20 June, 20 September and 20 December in each year, commencing on 20 March 2008 and ending on (and including) the Maturity Date, the Issuer shall pay interest in respect of each Note.

On each Interest Payment Date prior to 18 March 2013 (being the Step-up Calculation Date), the Issuer shall pay an Interest Amount in respect of each Note equal to the sum of the Base Coupon and the Performance Coupon. The Base Coupon accrues at a rate of 3.5 per cent. per annum on each Specified Denomination and is determined based on the actual number of days in the relevant period of calculation, divided by 360. The Performance Coupon in respect of any Interest Payment Date equals each Note's *pro rata* proportion of the balance standing to the credit of the Reserve Account on such Interest Payment Date. As described below, the balance standing to the credit of the Reserve Account is determined by reference to the interest and principal payable on the Underlying Assets and any Coupon Shortfalls or Principal Shortfalls paid under the Financial Guarantee.

The Reserve Account is a notional account maintained by the Issuer which shall be credited on each Underlying Asset Interest Payment Date with an amount equal to the interest accrued at the Stated Coupon on a notional amount of U.S.$31,000,000 during the relevant quarterly period ending on such Underlying Asset Interest Payment Date. In addition, the Reserve Account will be debited by amounts equal to any Coupon Shortfalls and Principal Shortfalls payable under the Financial Guarantee and Performance Coupons payable under the Notes. On the Step-up Calculation Date, the Reserve Account will be credited with an amount equal to

U.S.$31,000,000.

On each Interest Payment Date after 18 March 2013, the Issuer shall pay an Interest Amount in respect of each Note equal to the sum of the Base Coupon and the Step-up Coupon. The Step-up Coupon is an amount payable in equal instalments on each Interest Payment Date from (and including) the Interest Payment Date falling on or about 20 June 2013 to (and including) the Maturity Date where the sum, in respect of all of the Notes, of the Present Value (Step-up Coupon) of such amounts (including the first and last Step-up Coupons) is equal to the amount standing to the credit of the Reserve Ledger on the Step-up Calculation Date after taking into account any credit to or debits from the Reserve Ledger on the Step-up Calculation Date.

**Early redemption**

If the Financial Guarantee is terminated prior to 18 March 2013 then the Issuer shall redeem the Notes early at their Early Redemption Amount. The Notes may also be redeemed prior to the Maturity Date as a result of an Event of Default or due to taxation reasons, as described in the Base Prospectus.

In each of these circumstances where the Notes are redeemed prior to the Maturity Date, each Note will be redeemed at its Early Redemption Amount which will be equal to the product of U.S.$500,000 and a fraction (x) the numerator of which is equal to (A) the Market Value (Notes) as of five Business Days before the date fixed for redemption, (B) minus any Unwind Costs, (C) minus the Present Value (Principal Fees) of the sum of all remaining unpaid Principal Fees (as defined in the Financial Guarantee) required to be paid under the terms of the Financial Guarantee and (D) minus the Present Value (Coupon Fees) of the sum of all remaining unpaid Coupon Fees (as defined in the Financial Guarantee) required to be paid under the Financial Guarantee and (y) the denominator of which is the outstanding Aggregate Nominal Amount of the Notes.

The Early Redemption Amount in respect of each Note may therefore be less than the Specified Denomination of the Notes.


## PART A – CONTRACTUAL TERMS

Capitalised terms used herein which are defined in the Conditions set forth in the base prospectus dated July 24, 2007 (the "**Base Prospectus**") which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "**Prospectus Directive**") and are not otherwise defined herein shall have the same meaning in this document. In addition, capitalised terms defined in the Financial Guarantee, a copy of which is attached in Annex 2, and not otherwise defined herein or in the Base Prospectus shall have the same meaning in these Final Terms (unless the context otherwise requires). This document constitutes the Final Terms of the Notes described herein and must be read in conjunction with such Base Prospectus as supplemented by Base Prospectus Supplement No. 1 dated 20 September 2007, Base Prospectus Supplement No. 2 dated 15 October 2007 and Base Prospectus Supplement No. 3 dated 17 December 2007.

Full information on the Issuer, the Guarantor and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus and these Final Terms shall be deemed to modify or supersede the Base Prospectus to the extent that any term herein is inconsistent with the terms of the Base Prospectus.

None of the Arranger, the Guarantor or the Dealer has separately verified the information contained in these Final Terms and none of the Arranger, the Guarantor or the Dealer accepts any responsibility for the information contained herein unless expressly stated otherwise.

| | | |
|---|---|---|
| 1. | (i) Issuer: | Lehman Brothers Treasury Co. B.V. |
| | (ii) Guarantor: | Lehman Brothers Holdings Inc. |
| 2. | (i) Series Number: | 9154 |
| | (ii) Tranche Number: | One |
| | (If fungible with an existing Series, details of that Series, including the date on which the Notes become fungible). | |
| 3. | Specified Currency or Currencies: | U.S. dollars |
| 4. | Aggregate Nominal Amount: | |
| | (i) Series: | U.S.$84,000,000 |
| | (ii) Tranche: | U.S.$84,000,000 |
| 5. | Issue Price: | 100 per cent. of the Aggregate Nominal Amount |
| 6. | Specified Denomination(s) and Units | |
| | (i) Specified Denomination(s): | U.S.$500,000 |
| | (ii) Calculation Amount: | U.S.$500,000 |
| | (iii) Trading in Units: | Not Applicable |
| 7. | (i) Issue Date: | 8 January 2008 |
| | (ii) Interest Commencement Date: | 8 January 2008 |
| 8. | Maturity Date: | 20 December 2027 |
| 9. | Interest Basis: | See paragraph 18 and Annex 1 |
| 10. | Redemption/Payment Basis: | Redemption at par |
| 11. | Change of Interest or Redemption/ Payment Basis: | See Annex 1 |
| 12. | Put/Call Options: | Not Applicable |
| 13. | (i) Status of the Notes: | Senior Notes |
| | (ii) Status of the Guarantee: | Senior Guarantee |
| 14. | Method of distribution: | Non-syndicated |

**PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE**

| | | |
|---|---|---|
| 15. | **Fixed Rate Note Provisions** | Not Applicable |
| 16. | **Floating Rate Note Provisions** | Not Applicable |

| 17. | **Zero Coupon Note Provisions** | | Not Applicable |
|---|---|---|---|
| 18. | **Index-Linked Interest Note/Other Variable-Linked Interest Note Provisions** | | Applicable |
| | (i) | Index/Formula/other variable: | See Annex 1 |
| | (ii) | Name and address of Calculation Agent, if any, responsible for calculating the principal and/or interest due: | Lehman Brothers International (Europe) 25 Bank Street, London, E14 5LE |
| | (iii) | Provisions for determining Coupon where calculated by reference to Index and/or Formula and/or other variable: | See Annex 1 |
| | (iv) | Provisions for determining Coupon where calculation by reference to Index and/or Formula and/or other variable is impossible or impracticable or otherwise disrupted: | Not Applicable |
| | (v) | Interest Period(s)/Interest Payment Dates: | See Annex 1 |
| | (vi) | Business Day Convention: | Modified Following Business Day Convention |
| | (vii) | Additional Business Centre(s) (Condition 3(b)(B)): | Not Applicable |
| | (viii) | Minimum Interest Rate for interest accrual only (Condition 3(b)(B)): | Not Applicable |
| | (ix) | Maximum Interest Rate: | Not Applicable |
| | (x) | Interest Determination Date(s): | See Annex 1 |
| | (xi) | Day Count Fraction: | See Annex 1 |
| | (xii) | Option to defer interest payments: | Not Applicable |
| 19. | **Dual Currency Note Provisions** | | Not Applicable |

## PROVISIONS RELATING TO REDEMPTION

| 20. | **Call Option** | Not Applicable |
|---|---|---|
| 21. | **Put Option** | Not Applicable |
| 22. | **Final Redemption Amount of each Note:** | U.S.$500,000 per Note |

23.     **Early Redemption Amount of each Note**

        Early Redemption Amount(s) per          See Annex 1
        Calculation Amount payable on
        redemption for taxation reasons or on
        event of default and/or the method of
        calculating the same (if required or if
        different from that set out in the
        Conditions):

**GENERAL PROVISIONS APPLICABLE TO THE NOTES**

24.     Form of Notes:                          On or around the Issue Date, the Notes are
                                                being offered and sold only in Registered
                                                Form in the United States to qualified
                                                institutional buyers (as defined in Rule 144A
                                                under the Securities Act) in reliance on Rule
                                                144A. Interests in a global Note in registered
                                                form will be exchangeable for definitive
                                                Notes in registered form in the limited
                                                circumstances described in the global Note.
                                                Definitive Notes in registered form will not be
                                                exchangeable for interests in a global Note in
                                                registered form.

        New Global Note Form:                   Not Applicable

25.     Talons for future Coupons or Receipts   No
        to be attached to Definitive Notes
        (and dates on which such Talons
        mature):

26.     Details relating to Partly Paid Notes:  Not Applicable
        amount of each payment comprising
        the Issue Price and date on which
        each payment is to be made and
        consequences (if any) of failure to
        pay, including any right of the Issuer
        to forfeit the Notes and interest due
        on late payment:

27.     Details relating to Instalment Notes:   Not Applicable
        Instalment Amounts and Instalment
        Dates:

28.     Details relating to Extendible Notes:   Not Applicable

29.     Consolidation provisions:               Not Applicable

30.     Other final terms:                      See Annex 1.

**DISTRIBUTION**

| 31. | (i) | If syndicated, names and addresses of Managers and underwriting commitments: | Not Applicable |
| | (ii) | Date of Syndicated Trade Agreement: | Not Applicable |
| | (iii) | Stabilizing Manager (if any): | Not Applicable |
| 32. | | If non-syndicated, name and address of Dealer: | Lehman Brothers International (Europe) 25 Bank Street, London, E14 5LE |
| 33. | | Total commission and concession: | Not Applicable |
| 34. | | Selling restrictions: | |
| | (i) | Additional Selling Restrictions: | Not Applicable |
| 35. | | Non-exempt Offer: | Not Applicable. |

**PURPOSE OF FINAL TERMS**

These Final Terms comprise the final terms required for issue of the Notes described herein pursuant to the U.S.$100,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.

**RESPONSIBILITY**

The Issuer accepts responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer:

By: ......................................................

   Duly authorised

Series 9154

**PART B – OTHER INFORMATION**

1.   **LISTING**

    (i)    Listing:                      Not Applicable.

    (ii)    Admission to Trading:      Not Applicable

    (iii)   Cost of admission to trading   Not Applicable

2.   **RATINGS**

    Ratings:               Not Applicable. No rating has been sought in respect of the Notes.

The Programme has been rated:

Standard & Poor's

| Senior Debt (Long term) | A+ |
| Subordinated debt | A |
| Senior Debt (Short term) | A-1 |

An obligation rated 'A' is somewhat more susceptible to the adverse effects of changes in circumstances and economic conditions than obligations in higher-rated categories. However, the obligor's capacity to meet its financial commitment on the obligation is still strong. Negative means that a rating may be lowered. The addition of a plus (+) sign shows relative standing within the major rating categories.

A short-term obligation rated 'A-1' is rated in the highest category by Standard & Poor's. The obligor's capacity to meet its financial commitment on the obligation is strong.

Moody's

| Senior Debt (Long term) | A1 |
| Subordinated debt | A2 |
| Debt ratings (Short term) | Prime-1 |

Obligations rated A are considered upper-medium grade and are subject to low credit risk. The modifier 1 indicates that the obligation ranks in the higher end of its generic rating category and the modifier 2

indicates a mid-range ranking.

Issuers (or supporting institutions) rated Prime-1 have a superior ability to repay short-term debt obligations.

Fitch

| | |
|---|---|
| Senior Debt (Long term) | AA- |
| Subordinated debt | A+ |
| Senior Debt (Short term) | F1+ |

AA-

Very high credit quality. 'AA' ratings denote expectations of very low credit risk. They indicate very strong capacity for payment of financial commitments. This capacity is not significantly vulnerable to foreseeable events. The modifier "-" denotes relative status within this rating category.

A+

High credit quality. 'A' ratings denote expectations of low credit risk. The capacity for payment of financial commitments is considered strong. This capacity may, nevertheless, be more vulnerable to changes in circumstances or in economic conditions than is the case for higher ratings. The modifier "+" denotes relative status within this rating category.

F1+

Highest credit quality. Indicates the strongest capacity for timely payment of financial commitments; the added "+" denotes any exceptionally strong credit feature.

3.    **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

Save as discussed in "Subscription and Sale", so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer.

4.    **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES**

(i)  Reasons for the offer:  The net proceeds from each issue of Notes will be used for the general corporate purposes of the Group.

(ii)  Estimated net proceeds:  U.S. $84,000,000

(iii)  Estimated total expenses:  Not Applicable

5.  **YIELD (Fixed Rate Notes only)**

Not Applicable

6.  **HISTORIC INTEREST RATES (Floating Rate Notes only)**

Not Applicable

7.  **PERFORMANCE OF INDEX/ FORMULA/ OTHER VARIABLE, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS AND OTHER INFORMATION CONCERNING THE UNDERLYING (Index-linked or other variable Linked Notes only)**

Not Applicable

8.  **PERFORMANCE OF RATE[S] OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (Dual Currency Notes only)**

Not Applicable

9.  **OPERATIONAL INFORMATION**

ISIN Code:  US52519VAU08

Common Code:  Not Applicable

CUSIP No.:  52519VAU0

New Global Note intended to be held in a manner which would allow Eurosystem eligibility:  Not Applicable

Any clearing system(s) other than Euroclear and Clearstream, Luxembourg and the relevant identification number(s):  The Depository Trust Company

Delivery:  Delivery against payment

The Aggregate Nominal Amount of Notes issued has been translated into U.S. Dollars at the rate of [●] =$[●] producing a sum of (for Notes not denominated in U.S. Dollars):  Not Applicable

Names and addresses of Additional Paying Agent(s) (if any):  Not Applicable

10.    **TERMS AND CONDITIONS OF THE OFFER**

| | |
|---|---|
| Offer Price: | Issue Price |
| Conditions to which the offer is subject: | Not Applicable |
| Description of the application process: | Not Applicable |
| Description of possibility to reduce subscriptions and manner for refunding excess amount paid by applicants: | Not Applicable |
| Details of the minimum and/or maximum amount of application: | Not Applicable |
| Details of the method and time limits for paying up and delivering the Notes: | Not Applicable |
| Manner in and date on which results of the offer are to be made public: | Not Applicable |
| Procedure for exercise of any right of pre-emption, negotiability of subscription rights and treatment of subscription rights not exercised: | Not Applicable |
| Categories of potential investors to which the Notes are offered and whether tranche(s) have been reserved for certain countries: | Not Applicable |
| Process for notification to applicants of the amount allotted and the indication whether dealing may begin before notification is made: | Not Applicable |
| Amount of any expenses and taxes specifically charged to the subscriber or purchaser: | Not Applicable |
| Name(s) and address(es), to the extent known to the Issuer, of the placers in the various countries where the offer takes place: | None |

# Annex 1

## 1.   Definitions

"**Base Coupon**" means, in respect of any Interest Payment Date, an amount equal to the product of (i) 3.5 per cent. per annum (ii) the Calculation Amount and (iii) the Base Coupon Day Count Fraction.

"**Base Coupon Amount**" means, in respect of an Early Redemption of the Notes, the outstanding Aggregate Nominal Amount of such Notes multiplied by 3.5 per cent multiplied by a present value factor on the Early Redemption Calculation Date as determined by the Calculation Agent in its sole and absolute discretion using prevailing swap rates on such date.

"**Base Coupon Calculation Period**" means each period commencing on (and including) an Interest Payment Date and ending on (but excluding) the next following Interest Payment Date save that the first such period shall commence on (and include) the Issue Date and the last such period shall end on (but exclude) 20 December 2027.

"**Base Coupon Day Count Fraction**" means, in respect of any Interest Payment Date, the actual amount of days in the Base Coupon Calculation Period ending on (but excluding) such Interest Payment Date, divided by 360.

"**Beneficiary**" means PB Capital Corporation.

"**Business Day**" means a day which is a TARGET Settlement Day and on which commercial banks and foreign exchange markets settle payments generally in London and New York.

"**Early Redemption Amount**" means an amount in respect of each Note equal to the product of the Calculation Amount and a fraction (x) the numerator of which is equal to (A) the Market Value (Notes) as of five Business Days before the date fixed for redemption, (B) minus any Unwind Costs, (C) minus the Present Value (Principal Fees) of the sum of all remaining unpaid Principal Fees (as defined in the Financial Guarantee) required to be paid under the terms of the Financial Guarantee and (D) minus the Present Value (Coupon Fees) of the sum of all remaining unpaid Coupon Fees (as defined in the Financial Guarantee) required to be paid under the Financial Guarantee and (y) the denominator of which is the outstanding Aggregate Nominal Amount.

"**Financial Guarantee**" means a financial guarantee entered into between the Financial Guarantor and the Beneficiary, as set out in Annex 2 to these Final Terms.

"**Financial Guarantee Notional Amount**" means U.S.$31,000,000.

"**Financial Guarantor**" means Lehman Brothers International (Europe) in its capacity as "Guarantor" under the terms of the Financial Guarantee.

"**Funding Spread**" means, in respect of an Early Redemption of the Notes, a spread relative to USD-LIBOR-BBA (as defined in the ISDA Definitions with a Reset Date of the date in question and a Designated Maturity as determined by the Calculation Agent) that will reflect the funding rate for Lehman Brothers which will incorporate, as of the Early Redemption Calculation Date, the tenor of the funding period for the relevant cashflows as determined by the Calculation Agent in its sole and absolute discretion.

"**Interest Payment Date**" means 20 March , 20 June, 20 September and 20 December in each year from, and including, 20 March 2008 to, and including, 20 December 2027, in each case subject to adjustment in accordance with the Business Day Convention.

"**London Banking Day**" means any day on which banking institutions in London are open for business, including dealings in deposits in United States dollars.

"**Market Value (Notes)**" means, in respect of an Early Redemption of the Notes, the aggregate of the Principal Redemption Amount, the Step-Up Coupon Amount, the Base Coupon Amount and the Performance Coupon Amount, on the Early Redemption Calculation Date, as determined by the Calculation Agent in its sole and absolute discretion.

"**Performance Coupon**" means, in respect of any Interest Payment Date falling prior to the Step-up Calculation Date, for any Note, an amount calculated by the Calculation Agent in its sole and absolute discretion equal to (i) the amount (if any) standing to the credit of the Reserve Ledger on such Interest Payment Date (after taking into account any credits to or debits from the Reserve Ledger on such Interest Payment Date) divided by (ii) the total number of Notes then outstanding.

"**Performance Coupon Amount**" means, in respect of an Early Redemption of the Notes, the present value of the sum of Performance Coupons falling prior to the Step-Up Calculation Date discounted back to the date of such Early Redemption as determined by the Calculation Agent in its sole and absolute discretion.

"**Present Value (Coupon Fees)**" means, in respect of any unpaid Coupon Fees under the Financial Guarantee on any date, the discounted value of such amount from such date to the Step-up Calculation Date as determined by the Calculation Agent in its sole and absolute discretion using prevailing swap rates on such date.

"**Present Value (Principal Fees)**" means, in respect of any unpaid Principal Fees under the Financial Guarantee on any date, the discounted value of such amount from such date to the Step-up Calculation Date as determined by the Calculation Agent in its sole and absolute discretion using prevailing swap rates on such date.

"**Present Value (Step-up Coupon)**" means, in respect of each Step-up Coupon and Interest Payment Date on which it is due, the discounted value of such amount discounted to the Step-up Calculation Date as determined by the Calculation Agent in its sole and absolute discretion using interest rates prevailing on the Step-up Calculation Date.

"**Principal Redemption Amount**" means, in respect of an Early Redemption of the Notes, the outstanding Aggregate Nominal Amount of such Notes on the Early Redemption Calculation Date multiplied by the Principal Redemption Factor as determined by the Calculation Agent in its sole and absolute discretion.

"**Principal Redemption Factor**" means, in respect of an Early Redemption of the Notes, a present value factor which will incorporate the years until the Maturity Date, prevailing swap rates on the Early Redemption Calculation Date and a Funding Spread on such date as determined by the Calculation Agent in its sole and absolute discretion.

"**Reserve Ledger**" means a notional account in respect of the Notes maintained by the Calculation Agent with effect from the Trade Date with a balance of such notional account showing certain credits thereto and/ or debits therefrom, as more particularly set out under paragraph (2) (Reserve Ledger) below.

"**Step-up Calculation Date**" means 18 March 2013 subject to adjustment in accordance with the Business Day Convention.

"**Step-up Coupon**" means an interest amount payable in equal instalments on each Interest Payment Date from (and including) the Interest Payment Date falling on or about 20 June 2013 to (and including) the Maturity Date where the sum, in respect of all of the Notes, of the Present Value (Step-up Coupon) of such amounts is equal to the amount standing to the credit of the Reserve Ledger on the Step-up Calculation Date after taking into account any credit to or debits from the Reserve Ledger on the Step-up Calculation Date.

"**Step-Up Coupon Amount**" means, in respect of an Early Redemption of the Notes, (A) in the event such Early Redemption occurs prior to the Step-Up Calculation Date, the Financial Guarantee Notional Amount on the Early Redemption Calculation Date, and (B) in the event such Early Redemption occurs on or after the Step-Up Calculation Date, the aggregate amount of Step-Up Coupon payable from the Early Redemption Calculation Date to the Maturity Date, in each case multiplied by the Step-up Coupon Factor on the Early Redemption Calculation Date as determined by the Calculation Agent in its sole and absolute discretion.

"**Step-Up Coupon Factor**" means, in respect of an Early Redemption of the Notes, a present value factor which will incorporate the years until either the Step-Up Calculation Date or, if that date has passed, the Maturity Date, prevailing swap rates on the Early Redemption Calculation Date and a Funding Spread on such date as determined by the Calculation Agent in its sole and absolute discretion.

"**Trade Date**" means 26 November 2007.

"**Unwind Costs**" mean an amount equal to the greater of:

(a)     the U.S. dollar value of any transfer or stamp tax cost, any early redemption or termination cost (howsoever defined), if any, payable by the Issuer and/or Calculation Agent and/or the Financial Guarantor, as determined by the Calculation Agent, in its sole and absolute discretion, in relation to any swap agreement, financing arrangement or other hedging transaction entered into by, or on behalf of, the Calculation Agent or the Issuer or the Financial Guarantor in relation to the issuance of the Notes or the hedging of the obligations of the Financial Guarantor under the Financial Guarantee; and

(b)     zero.

**2       Reserve Ledger**

2.1     The Calculation Agent shall credit the following amounts to the Reserve Ledger:

(A)     on each Underlying Asset Interest Payment Date commencing on 15 February 2008, an amount equal to the amount of the current interest that has accrued during the related Underlying Asset Interest Calculation Period calculated using the Stated Coupon on the Notional Amount (each as defined in the Financial Guarantee); and

(B)     on the Step-up Calculation Date, an amount equal to U.S.$31,000,000.

2.2     From and including the Issue Date, the Calculation Agent shall debit the following amounts from the Reserve Ledger:

(A)     an amount equal to any Coupon Shortfall (as defined in the Financial Guarantee) paid under the Financial Guarantee on any date when the same is paid by the Financial Guarantor;

(B)     an amount equal to any Principal Shortfall (as defined in the Financial Guarantee) paid under the Financial Guarantee on any date when the same is paid by the Financial Guarantor; and

(C)     an amount equal to any Performance Coupon on any date when the same is paid by the Issuer.

The Reserve Ledger can have a negative balance.

2.3     On 20 March 2013 (subject to adjustment in accordance with the Business Day Convention), the Calculation Agent shall reduce any amount standing to the credit of the Reserve Ledger to zero.

3        **Interest Amounts**

Unless previously redeemed, or purchased and cancelled in accordance with the Conditions (as supplemented and amended herein) and notwithstanding anything to the contrary in Condition 3:

(A)    on each Interest Payment Date falling prior to the Step-up Calculation Date the Issuer shall pay an amount of interest in respect of each Note equal to the sum of the applicable Base Coupon and Performance Coupon calculated by the Calculation Agent in its sole and absolute discretion in respect of such Interest Payment Date;

(B)    on each Interest Payment Date scheduled to fall on or after 20 June 2013, the Issuer shall pay an amount of interest in respect of each Note equal to the sum of the applicable Base Coupon and Step-up Coupon calculated by the Calculation Agent in its sole and absolute discretion in respect of such Interest Payment Date.

4        **Mandatory Early Redemption**

Unless previously redeemed, or purchased and cancelled in accordance with the Conditions (as supplemented and amended herein), if the Financial Guarantee is terminated prior to the Step-up Calculation Date (the date of such termination being the **"Mandatory Early Redemption Event Date"**), then the Issuer shall redeem the Notes on a day falling no later than 10 Business Days following the relevant Mandatory Early Redemption Event Date (such redemption and any redemption prior to the Maturity Date in accordance with the Conditions (as supplemented and amended herein) an **"Early Redemption"**). Each Note shall be redeemed at its Early Redemption Amount.

**"Early Redemption Calculation Date"** means, in respect of an Early Redemption of the Notes, a day chosen by the Calculation Agent in its sole and absolute discretion, but in any case not earlier than the date which is 10 Business Days prior to such Early Redemption.

5        **Calculation Agent**

Any determinations, calculations or valuations made by the Calculation Agent under or pursuant to the terms of the Notes shall be made in its sole and absolute discretion and the Calculation Agent shall be solely responsible for the determination and calculation of any and all determinations, calculations or valuations made in accordance with the terms of the Notes. All such determinations, calculations or valuations made by the Calculation Agent shall be conclusive and binding in the absence of manifest error. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation, any costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of this function, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.

Nothing contained herein shall prevent the Calculation Agent from dealing in these Notes or from entering into any related transactions, including without limitation any swap or hedging transactions, with the Issuer or any holder of Notes.

**Annex 2**
**Financial Guarantee**

Dated 8 January 2008

# LEHMAN BROTHERS INTERNATIONAL (EUROPE)

and

# PB CAPITAL CORPORATION

## FINANCIAL GUARANTEE

in respect of

**Series 2 K2 Corporation Capital Notes due February 15, 2013**

# Linklaters

Ref: P Ashall/J Duncan

Linklaters LLP

THIS DEED is dated 8 January 2008 and is effective as of 26 November 2007 and made between:

(1)     **Lehman Brothers International (Europe)** whose registered office is at 25 Bank Street, London E14 5LE (in its capacity as guarantor hereunder, the "**Financial Guarantor**", and in its capacity as the calculation agent hereunder, the "**Calculation Agent**"); and

(2)     **PB Capital Corporation**, of 230 Park Avenue, New York, New York 10169 (the "**Beneficiary**").

## 1     Definitions

In this Deed, the following definitions apply:

"**Affiliate**" means, in relation to any person, any entity controlled, directly or indirectly, by the person, any entity that controls, directly or indirectly, the person or any entity directly or indirectly under common control with the person. For this purpose, "control" of any entity or person means ownership or a majority of the voting power of the entity or person.

"**Bankruptcy**" means K2 Corporation (a) is dissolved (other than pursuant to a consolidation, amalgamation or merger); (b) becomes insolvent or is unable to pay its debts or fails or admits in writing in a judicial, regulatory or administrative proceeding or filing its inability generally to pay its debts as they become due; (c) makes a general assignment, arrangement or composition with or for the benefit of its creditors; (d) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition (i) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (ii) is not dismissed, discharged, stayed or restrained in each case within thirty calendar days of the institution or presentation thereof; (e) has a resolution passed for its winding-up, official management or liquidation (other than pursuant to a consolidation, amalgamation or merger); (f) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets; (g) has a secured party take possession of all or substantially all its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all its assets and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within thirty calendar days thereafter; or (h) causes or is subject to any event with respect to it which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (a) to (g) (inclusive).

"**Business Day**" means a day on which commercial banks and foreign exchange markets are generally open to settle payments in London and New York and on which the Trans-European Automated Real-time Gross settlement Express Transfer system is open.

"**Calculation Agent**" means Lehman Brothers International (Europe).

"**Coupon Fee**" in respect of any Fee Payment Date equals the product of (a) the Notional Amount (ii) the Coupon Fee Rate and (iii) the actual number of days in the Fee Calculation Period divided by 360.

"**Coupon Fee Rate**" means 4.418 per cent. per annum.

"**Coupon Shortfall**" means with respect to an Underlying Asset Interest Payment Date an amount equal to (x) the amount of the current interest that would accrue during the related Underlying Asset Interest Calculation Period calculated using the Stated Coupon on a notional amount of the Underlying Assets equal to the Notional Amount less Recovery minus (y) the amount of interest actually paid to the holders of a notional amount of Underlying Assets equal to the Notional Amount less Recovery, subject to a minimum of zero. For the purposes of this definition, the "Recovery" as of any Underlying Asset Interest Payment Date shall exclude any principal payments made on such date.

"**Effective Date**" means 26 November 2007.

"**Failure to Pay**" means, after the expiration of any applicable Grace Period (after the satisfaction of any conditions precedent to the commencement of such Grace Period), the failure by K2 Corporation to make, when and where due, any payments under the Underlying Assets, in accordance with the terms of such Underlying Assets at the time of such failure. For the avoidance of doubt, in respect of an Underlying Asset Interest Payment Date, a decision by the directors of K2 Corporation to declare an amount of Distributable Profit (as described in (x) the Series 2 Proposal Memorandum to Investors dated December 23, 2004 and (y) the Appendix – Interest Payments to the Pricing Supplement (related to such Proposal Memorandum)) insufficient to pay the full Stated Coupon on such Underlying Asset Interest Payment Date shall not constitute a "Failure to Pay".

"**Fee Calculation Period**" means each period commencing on (and including) a Fee Payment Date and ending on (but excluding) the next following Fee Payment Date provided that the initial Fee Calculation Period shall commence on (and include) the Effective Date and the final Fee Calculation Period shall end on (and include) 18 March 2013.

"**Fee Payment Date**" means 18 March, 18 June, 18 September and 18 December in each year, commencing on 18 March 2008 and ending on 18 March 2013 or, if any such date is not a Business Day, the next following Business Day, unless that day falls in the next calendar month, in which case the relevant Fee Payment Date will be the first preceding day that is a Business Day.

"**Financial Guarantee Linked Notes**" means the Series 9154 USD 84,000,000 Financial Guarantee Linked Notes due 2027 issued by Lehman Brothers Treasury Co. B.V. on the date of this Deed.

"**Governmental Authority**" means any de facto or de jure government (or any agency, instrumentality, ministry or department thereof), court, tribunal, administrative or other governmental authority or any other entity (private or public) charged with the regulation of the financial markets (including the central bank) of the Cayman Islands.

"**Grace Period**" means the applicable grace period with respect to payments under the Underlying Assets under the terms of such Underlying Assets in effect on the Effective Date.

"**Guarantee Payment Amount**" means, in respect of any Payment Date, the applicable Coupon Shortfall or Principal Shortfall.

"**Notice of Irreversible Coupon Shortfall**" means either: (i) a notice delivered to the Beneficiary by the Financial Guarantor attaching a copy of any Publicly Available Information reasonably satisfactory to the Calculation Agent stating that a Coupon Shortfall has occurred with respect to an Underlying Asset Interest Payment Date or (ii) a notice delivered to the Financial Guarantor by the Beneficiary attaching a copy of either (A) a statement of accounts or any Publicly Available Information reasonably satisfactory to the Calculation Agent; or (B) a notice delivered by the issuing agent, the issuing and paying agent or any other similar agent in respect of the Underlying Assets, in each case stating that a Coupon Shortfall has occurred with respect to an Underlying Asset Interest Payment Date.

"**Notice of Irreversible Principal Shortfall**" means either: (i) a notice delivered to the Beneficiary by the Financial Guarantor attaching a copy of any Publicly Available Information reasonably satisfactory to the Calculation Agent stating that a Principal Shortfall has occurred with respect to an Underlying Asset Principal Payment Date or (ii) a notice delivered to the Financial Guarantor by the Beneficiary attaching a copy of either (A) a statement of accounts or any Publicly Available Information reasonably satisfactory to the Calculation Agent; or (B) a notice delivered by the issuing agent, the issuing and paying agent or any other similar agent in respect of the Underlying Assets, in each case stating that a Principal Shortfall has occurred with respect to an Underlying Asset Principal Payment Date.

"**Notional Amount**" means USD 31,000,000.

"**Payment Date**" means, in respect of any Coupon Shortfall, the earlier of the date falling 5 Business Days following (i) the date on which the Financial Guarantor receives from the Beneficiary or (ii) the date on which the Beneficiary receives from the Financial Guarantor, a Notice of Irreversible Coupon Shortfall in accordance with Clause 5 below and, in the case of a Principal Shortfall, 18 March 2013 (or, if that is not a Business Day, the next following Business Day).

"**Principal Fee**" in respect of any Fee Payment Date equals the product of (a) the Notional Amount (ii) the Principal Fee Rate and (iii) the actual number of days in the Fee Calculation Period divided by 360.

"**Principal Fee Rate**" means 4.177 per cent. per annum.

"**Principal Shortfall**" means, subject as provided below, in respect of any Underlying Asset Principal Payment Date, an amount equal to (x) the Notional Amount less Recovery as of such Underlying Asset Principal Payment Date minus (y) the amount of principal payments actually paid to the holders of a notional amount of Underlying Assets equal to the Notional Amount less Recovery as of such Underlying Asset Principal Payment Date, subject to a minimum of zero. If the principal amount of Underlying Assets that have become due and payable in respect of any Underlying Asset Principal Payment Date is less than the Notional Amount less Recovery as of such date, references in the immediately preceding sentence to "Notional Amount less Recovery" shall be construed as referring to the principal amount of Underlying Assets that have become due and payable in respect of such date. For the purposes of this definition, the "Recovery" as of any Underlying Asset Principal Payment Date shall exclude any principal payments made on such date.

"**Public Sources**" means each of Bloomberg Service, Dow Jones Telerate Service, Reuter Monitor Money Rates Services, Dow Jones News Wire, Wall Street Journal, New York Times, Nihon Keizai Shinbun, Asahi Shinbun, Yomiuri Shinbun, Financial Times, La Tribune, Les Echos and The Australian Financial Review (and successor publications), the main source(s) of business news in the Cayman Islands and any other internationally recognized published or electronically displayed news sources.

"**Publicly Available Information**" means (a) information that reasonably confirms any of the facts relevant to the determination that a Coupon Shortfall or Principal Shortfall has occurred and which (i) has been published in or on not less than two Public Sources, regardless of whether the reader or user thereof pays a fee to obtain such information; provided that, if either of the parties or any of their respective Affiliates is cited as the sole source of such information, then such information shall not be deemed to be Publicly Available Information unless such party or its Affiliate is acting in its capacity as trustee, fiscal agent, administrative agent, clearing agent or paying agent for the Underlying Assets, (ii) is information received from or published by a trustee, fiscal agent, administrative agent, clearing agent or paying agent for the Underlying Assets, (iii) is information contained in any petition or filing instituting a proceeding described in (d) of the definition of "Bankruptcy" above against or by K2 Corporation or (iv) is information contained in any order, decree, notice or filing, however described, of or filed with a court, tribunal, exchange, regulatory authority or similar administrative, regulatory or judicial body.

"**Recovery**" means the aggregate of any principal redemptions received by holders of a principal amount of the Underlying Assets equal to the Notional Amount (which, in the event that the maturity date of the Underlying Assets is extended beyond 15 February 2013, shall be deemed to be an amount equal to zero as of 15 February 2013).

"**Restructuring**" means that, with respect to the Underlying Assets, any one or more of the following events occurs in a form that binds all holders of such Underlying Assets, is agreed between K2 Corporation or a Governmental Authority and a sufficient number of holders of such Underlying Assets to bind all holders of the Underlying Assets or is announced (or otherwise decreed) by K2 Corporation or a Governmental Authority in a form that binds all holders of such Underlying Assets, and such event is not expressly provided for under the terms of such Underlying Assets in effect as of the Effective Date:

(i)     a reduction in the rate or amount of interest payable or the amount of scheduled interest accruals;

(ii)    a reduction in the amount of principal or premium payable at maturity or at scheduled redemption dates;

(iii)   a postponement or other deferral of a date or dates for either (A) the payment or accrual of interest or (B) the payment of principal or premium;

(iv)    a change in the ranking in priority of payment of the Underlying Assets, causing the Subordination of such Underlying Assets to any other obligation of K2 Corporation; or

(v)     any change in the currency or composition of any payment of interest or principal to any currency which is not a Permitted Currency.

"Permitted Currency" means (1) the legal tender of any Group of 7 country (or any country that becomes a member of the Group of 7 if such Group of 7 expands its membership) or (2) the legal tender of any country which, as of the date of such change, is a member of the Organization for Economic Cooperation and Development and has a local currency long-term debt rating of either AAA or higher assigned to it by Standard & Poor's, a division of The McGraw-Hill Companies, Inc. or any successor to the rating business thereof, Aaa or higher assigned to it by Moody's Investors Service, Inc. or any successor to the rating business thereof or AAA or higher assigned to it by Fitch Ratings or any successor to the rating business thereof.

Notwithstanding the above the following shall not constitute a Restructuring: the occurrence of, agreement to or announcement of any of the events described in (i) to (v) above due to an administrative adjustment, accounting adjustment or tax adjustment or other technical adjustment occurring in the ordinary course of business.

"Stated Coupon" means a rate of interest equal, in respect of any Underlying Asset Interest Calculation Period, to the interest rate applicable to the relevant interest period that corresponds to such Underlying Asset Interest Calculation Period, in each case under and as defined in the terms and conditions of the Underlying Assets as at the Effective Date (being equal to "3 month USD-LIBOR-BBA plus 0.25 per cent", as determined in accordance with the terms and conditions of the Underlying Assets).

"Subordination" means, with respect to an obligation (the "Subordinated Obligation") and another obligation of K2 Corporation to which such obligation is being compared (the "Senior Obligation"), a contractual, trust or similar arrangement providing that (i) upon the liquidation, dissolution, reorganization or winding up of K2 Corporation claims of the holders of the Senior Obligation will be satisfied prior to the claims of the holders of the Subordinated Obligation or (ii) the holders of the Subordinated Obligation will not be entitled to receive or retain payments in respect of their claims against K2 Corporation at any time that K2 Corporation is in payment arrears or is otherwise in default under the Senior Obligation. "Subordinated" will be construed accordingly. For purposes of determining whether Subordination exists or whether an obligation is Subordinated with respect to another obligation to which it is being compared, the existence of preferred creditors arising by operation of law or of collateral, credit support or other credit enhancement arrangements shall not be taken into account.

"Underlying Assets" means the K2 Corporation Capital Notes due February 15, 2013, Series - 02 (ISIN 48273KAA2).

"Underlying Asset Interest Calculation Period" means, with respect to each Underlying Asset Interest Payment Date, a period corresponding to the interest accrual period relating to such Underlying Asset Interest Payment Date pursuant to the terms of the Underlying Assets as of the Effective Date. For the avoidance of doubt, the first Underlying Asset Interest Calculation Period will begin on the Underlying Asset Interest Payment Date falling on or immediately prior to the Effective Date.

"Underlying Asset Interest Payment Date" means 15 February, 15 May, 15 August and 15 November in each calendar year, commencing on 15 February 2008 and ending on 15 February 2013 or, if any such date is not a Business Day, the next following Business Day, unless that day falls in the next calendar month, in which case the relevant Underlying Asset Interest Payment Date will be the first preceding day that is a Business Day.

"**Underlying Asset Principal Payment Date**" means each date on or after the Effective Date and on or prior to 18 March 2013 on which the principal amount of any of the Underlying Assets becomes due and payable, whether at scheduled maturity or upon any redemption or prepayment thereof.

"**Writedown**" means the occurrence at any time on or after the Effective Date of:

(i)

    A.    a writedown or applied loss resulting in a reduction in the outstanding principal balance of the Underlying Assets (other than as a result of a scheduled or unscheduled payment of principal); or

    B.    the attribution of a principal deficiency or realized loss to the Underlying Assets resulting in a reduction or subordination of the current interest payable on the Underlying Assets; or

(ii)    the forgiveness of any amount of principal by the holders of the Underlying Assets pursuant to an amendment to the terms and conditions of the Underlying Assets resulting in a reduction in the outstanding principal balance of the Underlying Assets.

## 2    Effective Date and Termination

### 2.1    Effective Date

This Deed is effective as of 26 November 2007.

### 2.2    Termination

This Deed terminates on the first to occur of:

2.2.1    18 March 2013;

2.2.2    the date of receipt by the Financial Guarantor of (i) a written notice from the Beneficiary requesting the termination of this Deed and (ii) payment in respect of any Coupon Fee or Principal Fee accrued since the preceding Fee Payment Date; and

2.2.3    any date falling 3 Business Days after a date on which the Beneficiary fails to pay any Coupon Fee or Principal Fee that is due in accordance with Clause 4 and which remains unpaid by the Beneficiary on such 3rd Business Day.

## 3    Guarantee Payment Amounts

### 3.1    Guarantee

In consideration of the Coupon Fee and Principal Fee, and subject to Clause 3.2, the Financial Guarantor hereby unconditionally and irrevocably agrees to pay to the Beneficiary on each Payment Date the relevant Guarantee Payment Amount.

### 3.2 Condition precedent

No Guarantee Payment Amount shall be payable by the Financial Guarantor pursuant to Clause 3.1 unless the relevant Guarantee Payment Amount arises as a result of the occurrence of any of the following events in respect of K2 Corporation or the Underlying Assets, as applicable:

3.2.1 Bankruptcy;

3.2.2 Failure to Pay;

3.2.3 Restructuring; or

3.2.4 any Writedown.

In addition, no Guarantee Payment Amount shall be payable by the Financial Guarantor pursuant to Clause 3.1 unless the Financial Guarantor has received from the Beneficiary or the Beneficiary has received from the Financial Guarantor, in each case on or before the date falling 5 Business Days prior to 18 March 2013, a Notice of Irreversible Coupon Shortfall or Notice of Irreversible Principal Shortfall, as the case may be and in accordance with Clause 5. The Financial Guarantor shall promptly inform the Beneficiary if it becomes aware of details of any event which is reasonably likely to result in the Financial Guarantor being entitled to serve a Notice of Irreversible Coupon Shortfall or Notice of Irreversible Principal Shortfall on the Beneficiary.

### 3.3 Continuing Guarantee

This guarantee is to be a continuing guarantee and accordingly is to remain in force until its termination under Clause 2.

### 3.4 Legal limitations etc.

As a separate and independent stipulation the Financial Guarantor agrees that any obligations (including, without limitation, any moneys payable) under the terms of the Underlying Assets which may not be enforceable against or recoverable from K2 Corporation by reason of any legal limitation, disability or incapacity on or of K2 Corporation or any other fact or circumstance (other than any limitation imposed by this Deed) shall nevertheless be enforceable against and recoverable from the Financial Guarantor as though the same had been incurred by the Financial Guarantor and the Financial Guarantor were the sole or principal obligor in respect thereof and shall be performed or paid by the Financial Guarantor on demand.

## 4 Fees

On each Fee Payment Date, the Beneficiary shall pay to the Financial Guarantor the applicable Principal Fee and Coupon Fee. The Principal Fee and Coupon Fee shall continue to be payable on each Fee Payment Date occurring on or before the termination of this Deed under Clause 2, notwithstanding the Underlying Assets being redeemed prior to the termination of this Deed.

## 5 Notices

### 5.1 Manner of delivery

Any notice or other communication in connection with this Deed (each, a "**Notice**") shall be:

5.1.1    in writing (which shall include email);

5.1.2    delivered by hand, fax, pre-paid first class post or courier.

If either the Financial Guarantor or the Beneficiary receives a notice or other communication from the other by email it shall promptly acknowledge receipt by sending a confirmatory email to the other.

**5.2**    **Addresses**

A Notice to the Financial Guarantor shall be sent to the following address, or such other person or address as the Financial Guarantor may notify to the Beneficiary from time to time:

Lehman Brothers International (Europe)
25 Bank Street
London E14 5LE

Fax: + 44 20 7 067 8388

Attention: David Swanson, Fixed Income Legal


Email: To each of; Andrew.Chen@lehman.com;
Magnus.Einarsson@lehman.com;Michal.Oulik@lehman.com;creditlegal@lehman.com

A Notice to the Beneficiary shall be sent to the following address, or such other person or address as the Beneficiary may notify to the Financial Guarantor from time to time:

PB Capital Corporation
230 Park Avenue
New York
New York 10169

Fax: +1 (212) 750 2219

Attention: Jens Kaessner

- with copies to:

PB Capital Corporation

230 Park Avenue

New York, New York  10169

Fax: +1 (212) 756-5536

Attention:  General Counsel

and

Deutsche Postbank AG
Kennedyalle 62-70
53113  Bonn
Germany
Fax: +49 - (0)228 920-33009

Attention: General Counsel

### 5.3    Effectiveness

A Notice shall be effective upon receipt and shall be deemed to have been received:

5.3.1    96 hours after posting, if delivered by pre-paid first class post;

5.3.2    at the earlier of (i) the time of delivery or (ii) 96 hours after delivery to a reputable courier, if delivered by courier;

5.3.3    at the time of delivery, if delivered by hand;

5.3.4    at the time of transmission in legible form, if delivered by fax and electronic confirmation of transmission has been received by the sender; or

5.3.5    at the time of receipt of acknowledgment of receipt if delivered by email.

## 6    Information

If the Beneficiary receives any notice or report or other document issued by or on behalf of K2 Corporation (including, without limitation, issued by any trustee or agent) pursuant to or in accordance with the terms and conditions of the Underlying Assets or any other information that would reasonably be considered to be material to the Financial Guarantor, the Beneficiary will promptly forward a copy of such notice or report or other document or other information to the Financial Guarantor (and in any case so as to be received by the Financial Guarantor not later than 5 Business Days following the receipt of such notice or report by the Beneficiary)

## 7    Changes to the parties

Neither the Financial Guarantor nor the Beneficiary may assign any of its rights or transfer any of its rights or obligations under this Deed without the prior written consent of the other party.

## 8    Calculation Agent

Any determinations, calculations or valuations made by the Calculation Agent under or pursuant to this Deed shall be made in its sole and absolute discretion and the Calculation Agent shall be solely responsible for the determination and calculation of any and all determinations, calculations or valuations made in accordance with the terms of this Deed. All such determinations, calculations or valuations made by the Calculation Agent shall be conclusive and binding in the absence of manifest error. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation, any costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of this function, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.

Nothing contained herein shall prevent the Calculation Agent from entering into any related transactions, including without limitation any swap or hedging transactions, with the Beneficiary or any other person.

## 9    Governing law and enforcement

### 9.1    Governing law and jurisdiction

This Deed is governed by English law. The Beneficiary irrevocable submits to the non-exclusive jurisdiction of the English Courts.

### 9.2    Service of process

Without prejudice to any other mode of service allowed under any relevant law, the Beneficiary:

9.2.1    irrevocably appoints Deutsche Postbank, AG, London Branch as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed; and

9.2.2    agrees that failure by a process agent to notify the Financial Guarantor of the process will not invalidate the proceedings concerned.

### 9.3    Contracts (Rights of Third Parties) Act 1999

No person shall have any right hereunder pursuant to the Contracts (Rights of Third Parties) Act 1999.

**This Deed has been delivered on the date stated at the beginning of this Deed.**


SIGNED as a DEED by
on behalf of **LEHMAN BROTHERS
INTERNATIONAL (EUROPE)** in the
presence of:


Name

Address


Occupation


SIGNED by
on behalf of **PB CAPITAL CORPORATION**
and thereby executed by it as a DEED