**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------x
                                    )
In re:                              )   Chapter 11
                                    )
LEHMAN BROTHERS HOLDINGS, INC.      )   Case No. 08-13555 (JMP)
                                    )
                                    )
                                    )
          Debtor.                   )   (Jointly Administered)
-------------------------------------------------x
```

NOTICE OF TRANSFER OF CLAIM
PURSUANT TO FRBP RULE 3001(e)(2)

1.  TO:           **DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT** ("Transferor")
                  c/o Baker & McKenzie LLP
                  1114 Avenue of the Americas
                  New York, New York 10036
                  Contact: Ira Reid
                  Telephone: 212-891-3976
                  Email: ira.a.reid@bakernet.com

2.      Please take notice that the transfer in the amount of $108,202,383.62, of your claim against
LEHMAN BROTHERS COMMODITY SERVICES INC. Case No. 08-13885 (JMP) in the above
referenced consolidated proceedings, arising from and relating to Claim No. 4102 (attached in Exhibit A
hereto), has been transferred to:

                  **GOLDMAN SACHS LENDING PARTNERS LLC** ("Transferee")
                  c/o Goldman, Sachs & Co.
                  30 Hudson Street, 36th Floor
                  Jersey City, NJ 07302
                  Fax: 212-428-1243
                  Contact: Andrew Caditz
                  Phone: 212-357-6240
                  Email: Andrew.Caditz@gs.com

        An evidence of transfer of claim is attached hereto as Exhibit B. All distributions and notices
regarding the transferred portion of the claim should be sent to the Transferee at the instructions attached
in Exhibit C.

548059.1/153-05245

3.      No action is required if you do not object to the transfer of your claim.  However, **IF YOU OB-JECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE, YOU MUST:**

--      **FILE A WRITTEN OBJECTION TO THE TRANSFER** with:

        United States Bankruptcy Court
        Southern District of New York
        Attn: Clerk of Court
        Alexander Hamilton Custom House
        One Bowling Green
        New York, NY 10004-1408

--      **SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE.**

--      Refer to **INTERNAL CONTROL NO.** _____ in your objection and any further correspondence related to this transfer.

4.      If you file an objection, a hearing will be scheduled.  **IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED FOR THE TRANSFEROR ON OUR RECORDS AS A CLAIMANT IN THIS PROCEEDING.**

                                                        CLERK

----------------------------------------------------------------------------------------------------

**FOR CLERK'S OFFICE USE ONLY:**
This notice was mailed to the first named party, by first class mail, postage prepaid on _____, 2005.
INTERNAL CONTROL NO._____
Copy: (check) Claims Agent ___ Transferee ___ Debtor's Attorney ___

                        _____
                        Deputy Clerk

548059.1/153-05245

**<u>EXHIBIT A</u>**

**PROOF OF CLAIM**

B 10 (Official Form 10) (12/07)

Subject to Future Amendment

| UNITED STATES BANKRUPTCY COURT | Southern District of New York | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Lehman Brothers Commodity Services Inc.

**Case Number:**
08-13885

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Deutsche Lufthansa AG

☐ Check this box to indicate that this claim amends a previously filed claim.

**Name and address where notices should be sent:**
Deutsche Lufthansa AG c/o Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036
Attention: Ira Reid
Telephone number:
(212) 891-3976

Court Claim Number:_____
*(If known)*

Filed on:_____

**Name and address where payment should be sent (if different from above):**
Deutsche Lufthansa AG
Von-Gablenz-Stresse 2-6
50879 Cologne Germany
Attention: Stefan Küper
Telephone number:
+49 69 6 96 - 9 27 97

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $108,202,383.62 plus interest and professional fees and expenses to the extent permitted by contract or law.

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

**2. Basis for Claim:**   Damages payable under Master Agreement dated 1 August 2006
(See instruction #2 on reverse side.)

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:$**_____   **Annual Interest Rate**___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**_____   **Basis for perfection:** _____

**Amount of Secured Claim: $**_____   **Amount Unsecured: $**_____

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$_____

**7. Documents:** Attach red[...]orders, invoices, itemized st[...]
You may also attach a sum[...]
a security interest. You may[...]

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)   0000004102

[...]issory notes, purchase[...]d security agreements[...]erfection of [...]side.) See Attached.

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

DO NOT SEND ORIGINAL[...]
SCANNING.

If the documents are not available, please explain:

ROYED AFTER

**Date:** 5/5/09

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
By: [signature] Ira a. Reid

Ira A. Reid
Baker & McKenzie LLP, as authorized representative and attorney-in-fact

FILED / RECEIVED

MAY 0 5 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**Attachment to Deutsche Lufthansa AG**
**Proof of Claim**

Prior to the September 15, 2008 commencement of the chapter 11 case (the "Petition Date"), Deutsche Lufthansa Aktiengesellschaft ("Lufthansa") entered into an Master Agreement for Financial Derivative Transactions, dated as of 1 August 2006 (the "Master Agreement"), with Lehman Brothers Commodity Services Inc. ("LBCSI").

As of the Petition Date, Lufthansa possesses a claim against LBCSI in the amount of $108,202,383.62, plus accrued interest and professional fees to the extent permitted by contract and applicable law (the "Claim"). The Claim represents all amounts due and payable in connection with the Master Agreement, based on the cost of replacement transactions which provide performance of all of LBCSI's obligations under the Master Agreement. The cost of substitute performance has been calculated as of the Petition Date, on which date the Master Agreement was automatically terminated under Section 7(2) thereof.

Annexed to this attachment as Schedule 1 is a copy of the Master Agreement, in German and as translated into English. Annexed as Schedule 2 is market quotation data listing the individual transactions entered into under the Master Agreement and the replacement cost for each such transaction as of the Petition Date (collectively, the "Supporting Documentation").

The Supporting Documentation is submitted in support of the Claim in lieu of the trade confirmations and related documentation for each terminated transaction executed under the Master Agreement. Those documents are available and will be produced by Lufthansa, to the extent it becomes necessary. The documents are voluminous and the Debtor has copies of each such document.

The Claim asserted herein is subject to future amendment, including after the claims bar deadline.

NYCDMS/1117989.6

<u>Schedule 1</u>
Master Agreement

| | |
|---|---|
| | Rahmenvertrag vom<br><br>1. August 2006 |

# Rahmenvertrag für Finanztermingeschäfte

Zwischen

Name und Anschrift des Vertragspartners

**Deutsche Lufthansa Aktiengesellschaft**, Von-Gablenz-Straße 2-6, 50679 Köln

nachstehend der "Vertragspartner" genannt

und

Name und Anschrift der Bank

**Lehman Brothers Commodity Services Inc.**, Corporation Service Company, 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, 19908, handelnd durch die Londoner Niederlassung

nachstehend die "Bank" genannt

wird Folgendes vereinbart:

### 1. Zweck und Gegenstand des Vertrages

(1) Die Parteien beabsichtigen, zur Gestaltung von Zinsänderungs-, Währungskurs- und sonstigen Kursrisiken im Rahmen ihrer Geschäftstätigkeit Finanztermingeschäfte abzuschließen, die
a) den Austausch von Geldbeträgen in verschiedenen Währungen oder von Geldbeträgen, die auf der Grundlage von variablen oder festen Zinssätzen, Kursen, Preisen oder sonstigen Wertmessern, einschließlich diesbezüglicher Durchschnittswerte (Indices), ermittelt werden, oder
b) die Lieferung oder Übertragung von Wertpapieren, anderen Finanzinstrumenten oder Edelmetallen oder ähnliche Leistungen
zum Gegenstand haben. Zu den Finanztermingeschäften gehören auch Options-, Zinsbegrenzungs- und ähnliche Geschäfte, die vorsehen, daß eine Partei ihre Leistung im Voraus erbringt oder dass Leistungen von einer Bedingung abhängig sind.

(2) Für jedes Geschäft, das unter Zugrundelegung dieses Rahmenvertrages abgeschlossen wird (nachstehend "Einzelabschluß" genannt), gelten die nachfolgenden Bestimmungen. Alle Einzelabschlüsse bilden untereinander und zusammen mit diesem Rahmenvertrag einen einheitlichen Vertrag (nachstehend der "Vertrag" genannt); sie werden im Sinne einer einheitlichen Risikobetrachtung auf dieser Grundlage und im Vertrauen darauf getätigt.

### 2. Einzelabschlüsse

(1) Haben sich die Parteien über einen Einzelabschluß geeinigt, so wird die Bank dem Vertragspartner schriftlich, fernschriftlich, telegraphisch, durch Telefax oder in ähnlicher Weise dessen Inhalt bestätigen.

(2) Jede Partei ist berechtigt, eine unterzeichnete Ausfertigung des Einzelabschlusses zu verlangen, die jedoch keine Voraussetzung für dessen Rechtswirksamkeit ist.

(3) Die Bestimmungen des Einzelabschlusses gehen den Bestimmungen dieses Rahmenvertrages vor.

### 3. Zahlungen und sonstige Leistungen

(1) Jede Partei wird die von ihr geschuldeten Zahlungen und sonstigen Leistungen spätestens an den im Einzelabschluß genannten Fälligkeitstagen an die andere Partei erbringen.

(2) Sämtliche Zahlungen sind in der aufgrund des Einzelabschlusses geschuldeten Vertragswährung kostenfrei und in der für Zahlungen in dieser Währung handelsüblichen Weise auf das im Einzelabschluß genannte Konto des Zahlungsempfängers in am Fälligkeitstag frei verfügbaren Mitteln zu leisten.

(3) Haben beide Parteien an demselben Tag aufgrund des Vertrages Zahlungen in der gleichen Währung zu leisten, zahlt die Partei, die den höheren Betrag schuldet, die Differenz zwischen den geschuldeten Beträgen. Die Bank wird dem Vertragspartner den zu zahlenden Differenzbetrag rechtzeitig vor dessen Fälligkeit mitteilen.

(4) Zahlt eine Partei nicht rechtzeitig, so werden bis zum Zeitpunkt des Eingangs der Zahlung des fälligen Betrages Zinsen hieraus zu dem Satz berechnet, der um den in Nr. 12 Abs 3 festgelegten Zinszuschlag über dem Zinssatz liegt, den erstklassige Banken für jeden Tag, für den diese Zinsen zu berechnen sind, untereinander für täglich fällige Einlagen am Zahlungsort in der Währung des fälligen Betrages berechnen. Die Geltendmachung eines weiteren Schadens ist nicht ausgeschlossen.

(5) Ist ein Fälligkeitstag kein Bankarbeitstag, so sind die Zahlungen und sonstigen Leistungen nach Maßgabe des Einzelabschlusses wie folgt zu erbringen:
a) am unmittelbar vorhergehenden Bankarbeitstag, oder
b) am unmittelbar folgenden Bankarbeitstag, oder
c) am unmittelbar folgenden Bankarbeitstag; sofern dieser jedoch in den nächsten Kalendermonat fällt, am unmittelbar vorhergehenden Bankarbeitstag.

### 4. Bankarbeitstag

"Bankarbeitstag" im Sinne dieses Vertrages ist jeder Tag, an dem die Banken an dem/den im Einzelabschluß genannten Finanzplatz/Finanzplätzen für Geschäfte, einschließlich des Handels in Fremdwährungen und der Entgegennahme von Fremdwährungseinlagen, geöffnet sind (mit Ausnahme des Samstags und des Sonntags).

**5. Bezugsgröße**

(1) Ist in einem Einzelabschluß ein variabler Zinssatz, Kurs, Preis oder sonstiger Wertmesser ("variable Größe") vereinbart, so wird die Bank dem Vertragspartner an dem Tag, an dem diese variable Größe zu bestimmen ist ("Feststellungstag"), oder unverzüglich danach die zugrundeliegende Bezugsgröße mitteilen.

(2) Sollte die im jeweiligen Einzelabschluß vereinbarte Bezugsgröße an einem Feststellungstag nicht ermittelt werden können, werden die Parteien diese unter Rückgriff auf Berechnungsgrundlagen festlegen, die den im Einzelabschluß vereinbarten möglichst nahekommen. Falls die Bezugsgröße ein Interbanken-Zinssatz ist und innerhalb von 20 Tagen nicht einvernehmlich festgelegt worden ist, gilt als Bezugsgröße das arithmetische Mittel der Zinssätze, zu denen zwei von der Bank zu benennende, international angesehene Banken auf dem Interbankenmarkt erstklassigen Banken Termingelder mit entsprechender Laufzeit in der Vertragswährung in ungefährer Höhe des Bezugsbetrages gegen 11:00 Uhr (Ortszeit am betreffenden Interbankenmarkt) am Feststellungstag angeboten haben.

(3) Ein als Bezugsgröße dienender Zinssatz ("Basis-Satz") ist gegebenenfalls auf den nächsten $1/100.000$ Prozentpunkt aufzurunden.

**6. Berechnungsweise bei zinssatzbezogenen Geschäften**

(1) Der aufgrund eines Einzelabschlusses jeweils zu zahlende variable Betrag ist das Produkt aus (a) dem dafür vereinbarten Bezugsbetrag, (b) dem nach Nr. 5 und dem Einzelabschluß errechneten variablen Zinssatz ("variabler Satz"), als Dezimalzahl ausgedrückt, sowie (c) dem Quotienten im Sinne des Abs. 5

(2) Der aufgrund eines Einzelabschlusses jeweils zu zahlende Festbetrag ist, falls er im Einzelabschluß betragsmäßig festgelegt wird, der dort genannte Betrag. Anderenfalls ist er das Produkt aus (a) dem dafür vereinbarten Bezugsbetrag, (b) dem im Einzelabschluß vereinbarten festen Zinssatz ("Festsatz"), als Dezimalzahl ausgedrückt, sowie (c) dem Quotienten im Sinne des Abs. 5.

(3) Im Fall von Zinsbegrenzungsgeschäften ist der variable Satz nach Maßgabe des Einzelabschlusses vorbehaltlich Absatz 4 jeweils

a) für Zahlungen durch die als Überschuss-Zahler (oder Cap- bzw. FRA-Verkäufer) bezeichnete Partei der vereinbarte Basis-Satz abzüglich des Satzes, der im Einzelabschluß als Höchstsatz (oder Cap Rate) bzw. Terminsatz festgelegt wird, und

b) für Zahlungen durch die als Minderbetrags-Zahler (oder Floor-Verkäufer bzw. FRA-Käufer) bezeichnete Partei der Satz, der im Einzelabschluß als Mindestsatz (oder Floor-Rate) bzw. Terminsatz festgelegt wird, abzüglich des vereinbarten Basis-Satzes.

(4) Wird eine Zahlung nicht nach Ablauf, sondern zu Beginn des betreffenden Berechnungszeitraums geleistet, so wird der nach Abs. 1 oder 2 zu ermittelnde Betrag diskontiert, indem er durch einen Betrag dividiert wird, der sich bei einem Berechnungszeitraum von einem Jahr oder weniger nach der Formel

$$1 + \frac{L \times \ddot{U}}{B}$$

und bei einem Berechnungszeitraum von mehr als einem Jahr nach der Formel

$$(1+L)^{\frac{\ddot{U}}{B}}$$

errechnet.

Dabei ist
L  der für den betreffenden Berechnungszeitraum ermittelte Basis-Satz oder sonstige vereinbarte Diskontsatz, als

Dezimalzahl ausgedrückt, also z.B 0,07 im Falle eines Basis- oder Diskontsatzes von 7%;

Ü  die Anzahl der Tage des Berechnungszeitraums,

B  360, es sei denn, die vereinbarte Vertragswährung ist eine Währung, für die der Basis- oder sonstige vereinbarte Diskontsatz nach Marktusance auf der Grundlage von 365 bzw. im Falle eines Schaltjahres von 366 Tagen berechnet wird, in diesem Fall ist B = 365 bzw. 366.

Diese Regelung gilt, sofern nichts anderes vereinbart ist, stets für Terminsatzvereinbarungen (Forward Rate Agreements). Bei sonstigen Geschäften gilt sie nur dann, wenn im Einzelabschluß eine Diskontierung vereinbart ist.

(5) "Quotient" ist nach Maßgabe des Einzelabschlusses
a) die Anzahl der tatsächlich abgelaufenen Tage des Berechnungszeitraums, für den der Betrag zu berechnen ist, dividiert durch die Zahl 360 ("365/360"); oder
b) die Anzahl der abgelaufenen Tage des Berechnungszeitraums, berechnet auf der Basis eines 360-Tage-Jahres mit 12 Monaten zu je 30 Tagen, dividiert durch die Zahl 360 ("360/360"), oder
c) die Anzahl der tatsächlich abgelaufenen Tage dieses Berechnungszeitraums, dividiert durch die Zahl 365 bzw. im Fall von Schaltjahren 366 ("365/365"), oder
d) die Anzahl der tatsächlich abgelaufenen Tage dieses Berechnungszeitraums, dividiert durch die Zahl 365 ("366/365").

(6) "Berechnungszeitraum" ist der Zeitraum, der mit dem Anfangsdatum des Einzelabschlusses oder einem Zahlungstermin (einschließlich) beginnt und mit dem nächstfolgenden Zahlungstermin oder dem Enddatum (ausschließlich) endet, oder, sofern die Parteien im Einzelabschluß in Bezug auf variable Beträge "Fälligkeitstag/Fälligkeitstag" vereinbart haben, der Zeitraum, der mit dem Anfangsdatum des Einzelabschlusses oder einem Fälligkeitstag (einschließlich) beginnt und mit dem nächstfolgenden Fälligkeitstag oder dem Enddatum (ausschließlich) endet. "Zahlungstermin" im Sinne dieses Vertrages ist der Tag, an dem, gegebenenfalls aufgrund einer Anpassung gemäß Nr. 3 Abs. 5, die Zahlung tatsächlich zu leisten ist; "Fälligkeitstag" ist der vertraglich vorgesehene Zahlungstag ohne Berücksichtigung einer solchen Anpassung.

(7) Ist ein variabler Betrag oder ein nach Abs. 2 Satz 2 zu berechnender Festbetrag zu zahlen, so wird die Bank diesen, im ersten Fall zugleich mit der jeweils anwendbaren Bezugsgröße, dem Vertragspartner mitteilen.

**7. Beendigung**

(1) Sofern Einzelabschlüsse getätigt und noch nicht vollständig abgewickelt sind, ist der Vertrag nur aus wichtigem Grund kündbar. Ein solcher liegt auch dann vor, wenn eine fällige Zahlung oder sonstige Leistung - aus welchem Grund auch immer - nicht innerhalb von fünf Bankarbeitstagen nach Benachrichtigung des Zahlungs- oder Leistungspflichtigen vom Ausbleiben des Eingangs der Zahlung oder sonstigen Leistung beim Empfänger eingegangen ist. Die Benachrichtigung und die Kündigung müssen schriftlich, fernschriftlich, telegraphisch, durch Telefax oder in ähnlicher Weise erfolgen. Eine Teilkündigung, insbesondere die Kündigung einzelner und nicht aller Einzelabschlüsse, ist ausgeschlossen. Nr. 12 Abs.5 (8) bleibt unberührt.

(2) Der Vertrag endet ohne Kündigung im Insolvenzfall. Dieser ist gegeben, wenn das Konkurs- oder ein sonstiges Insolvenzverfahren über das Vermögen einer Partei beantragt wird und diese Partei entweder den Antrag selbst gestellt hat oder zahlungsunfähig oder sonst in einer Lage ist, die die Eröffnung eines solchen Verfahrens rechtfertigt.

(3) Im Falle der Beendigung durch Kündigung oder Insolvenz (nachstehend "Beendigung" genannt) ist keine Partei mehr zu Zahlungen oder sonstigen Leistungen nach Nr. 3 Abs 1 verpflichtet, die gleichtägig oder später fällig geworden waren; an

die Stelle dieser Verpflichtungen treten Ausgleichsforderungen nach Nrn. 8 und 9.

**8. Schadensersatz und Vorteilsausgleich**

(1) Im Fall der Beendigung steht der kündigenden bzw. der solventen Partei (nachstehend "ersatzberechtigte Partei" genannt) ein Anspruch auf Schadensersatz zu. Der Schaden wird auf der Grundlage von unverzüglich abzuschließenden Ersatzgeschäften ermittelt, die dazu führen, daß die ersatzberechtigte Partei alle Zahlungen und sonstigen Leistungen erhält, die ihr bei ordnungsgemäßer Vertragsabwicklung zugestanden hätten. Sie ist berechtigt, nach ihrer Auffassung dazu geeignete Verträge abzuschließen. Wenn sie vom Abschluß derartiger Ersatzgeschäfte absieht, kann sie denjenigen Betrag der Schadensberechnung zugrunde legen, den sie für solche Ersatzgeschäfte auf der Grundlage von Zinssätzen, Terminsätzen, Kursen, Marktpreisen, Indices und sonstigen Wertmessern sowie Kosten und Auslagen zum Zeitpunkt der Kündigung bzw. der Kenntniserlangung von dem Insolvenzfall hätte aufwenden müssen. Der Schaden wird unter Berücksichtigung aller Einzelabschlüsse berechnet; ein finanzieller Vorteil, der sich aus der Beendigung von Einzelabschlüssen (einschließlich solcher, aus denen die ersatzberechtigte Partei bereits alle Zahlungen oder sonstige Leistungen der anderen Partei erhalten hat) ergibt, wird als Minderung des im übrigen ermittelten Schadens berücksichtigt.

(2) Erlangt die ersatzberechtigte Partei aus der Beendigung von Einzelabschlüssen insgesamt einen finanziellen Vorteil, so schuldet sie vorbehaltlich Nr. 9 Abs. 2 und, falls vereinbart Nr. 12 Abs. 4, der anderen Partei einen Betrag in Höhe dieses ihres Vorteils, höchstens jedoch in Höhe des Schadens der anderen Partei. Bei der Berechnung des finanziellen Vorteils finden die Grundsätze des Absatzes 1 über die Schadensberechnung entsprechend Anwendung.

**9. Abschlußzahlung**

(1) Rückständige Beträge und sonstige Leistungen und der zu leistende Schadensersatz werden von der ersatzberechtigten Partei zu einer einheitlichen Ausgleichsforderung in Euro zusammengefaßt, wobei für rückständige sonstige Leistungen entsprechend Nr. 8 Abs. 1 Sätze 2 bis 4 ein Gegenwert in Euro ermittelt wird.

(2) Eine Ausgleichsforderung gegen die ersatzberechtigte Partei wird nur fällig, soweit diese keine Ansprüche aus irgendeinem rechtlichen Grund gegen die andere Partei ("Gegenansprüche") hat. Bestehen Gegenansprüche, so ist deren Wert zur Ermittlung des fälligen Teils der Ausgleichsforderung vom Gesamtbetrag der Ausgleichsforderung abzuziehen. Zur Berechnung des Werts der Gegenansprüche hat die ersatzberechtigte Partei diese, (i) soweit sie sich nicht auf Euro beziehen, zu einem nach Möglichkeit auf der Grundlage des am Berechnungstag geltenden, amtlichen Devisenkurses zu bestimmenden Brief-Kurs in Euro umzurechnen, (ii) soweit sie sich nicht auf Geldzahlungen beziehen, in eine in Euro ausgedrückte Schadensersatzforderung umzuwandeln und (iii) soweit sie nicht fällig sind, mit ihrem Barwert (unter Berücksichtigung auch der Zinsansprüche) zu berücksichtigen. Die ersatzberechtigte Partei kann die Ausgleichsforderung der anderen Partei gegen die nach Satz 3 errechneten Gegenansprüche aufrechnen. Soweit sie dies unterläßt, wird die Ausgleichsforderung fällig, sobald und soweit ihr keine Gegenansprüche mehr gegenüberstehen.

**10. Übertragung**

Die Übertragung von Rechten oder Verpflichtungen aus dem Vertrag bedarf der vorherigen schriftlichen, fernschriftlichen, telegraphischen, durch Telefax oder in ähnlicher Weise mitgeteilten Zustimmung der jeweils anderen Partei. Nr. 2 Abs. 2 gilt entsprechend.

**11. Verschiedenes**

(1) Sind Bestimmungen des Vertrages unwirksam oder undurchführbar, so bleiben die übrigen Vorschriften hiervon unberührt. Gegebenenfalls hierdurch entstehende Vertragslücken werden durch ergänzende Vertragsauslegung unter angemessener Berücksichtigung der Interessen der Parteien geschlossen.

(2) Der Vertrag unterliegt dem Recht der Bundesrepublik Deutschland

(3) Nicht ausschließlicher Gerichtsstand ist der Ort der Niederlassung der Bank, durch die der Vertrag abgeschlossen wird.

(4) Der Rahmenvertrag in der hiermit vereinbarten Fassung gilt auch für alle etwaigen Einzelabschlüsse der Parteien unter dem Rahmenvertrag in einer früheren Fassung. Diese gelten als Einzelabschlüsse unter dem Rahmenvertrag in dieser neuen Fassung. Für diese Einzelabschlüsse bleibt die bisherige Fassung jedoch insoweit maßgeblich, als dies zum Verständnis der in ihnen getroffenen Regelungen erforderlich ist.

**12. Besondere Vereinbarungen**

(1) Die folgenden Absätze 2 bis 5 gelten nur, soweit die dazu bestimmten Felder angekreuzt oder ausgefüllt sind.

☐ (2) In Nr. 3 Abs. 3 werden die Worte "des Vertrages" durch "desselben Einzelabschlusses" ersetzt.

☒ (3) Der Zinszuschlag gemäß Nr. 3 Abs. 4 beträgt

| 2 % p.a. |
| --- |

(4) Nach Nr. 8 Abs. 2 Satz 1 wird folgender Satz eingefügt: entweder
☐ Dies gilt vorbehaltlich Nr. 12 Abs. 5 (C) a) nur, falls die ersatzberechtigte Partei aus mindestens einem Einzelabschluß (i) alle von der anderen Partei geschuldeten Zahlungen endgültig und unanfechtbar erhalten hat und (ii) bei Fortführung des Vertrages selbst noch unbedingte oder bedingte Zahlungsverpflichtungen hätte

oder
☐ Dies gilt vorbehaltlich Nr. 12 Abs. 5 (C) a) nur, falls die ersatzberechtigte Partei (i) aus sämtlichen Einzelabschlüssen alle von der anderen Partei geschuldeten Zahlungen oder sonstigen Leistungen endgültig und unanfechtbar erhalten hat und (ii) bei Fortführung des Vertrages selbst noch unbedingte oder bedingte Zahlungsverpflichtungen hätte.

☒ (5) Internationale Geschäfte

(A) Falls eine Partei verpflichtet ist oder verpflichtet sein wird, von einer durch sie zu leistenden Zahlung einen Steuer- oder Abgabenbetrag abzuziehen oder einzubehalten, wird sie die zusätzlichen Beträge an die andere Partei zahlen, die erforderlich sind, damit die andere Partei den vollen Betrag erhält, der ihr im Zeitpunkt einer solchen Zahlung zustehen würde, wenn kein Abzug oder Einbehalt erforderlich wäre. Dies gilt nicht, wenn die betreffende Steuer oder Abgabe vom Heimatstaat des Zahlungsempfängers oder einer in diesem Staat ansässigen Steuerbehörde auferlegt oder erhoben wird. Heimatstaat ist der Staat, in dem der Zahlungsempfänger seinen Sitz hat bzw. als ansässig angesehen wird oder in dem sich die Niederlassung des Zahlungsempfängers befindet, die unter dem betreffenden Einzelabschluß handelt.

(B) Falls aufgrund einer nach dem Abschlußdatum eines Einzelabschlusses erfolgenden Änderung von Rechtsvorschriften oder von deren Anwendung oder amtlichen Auslegung

a) zu erwarten ist, daß eine Partei am nächsten Fälligkeitstag in bezug auf eine durch sie zu leistende Zahlung zusätzliche

Beträge gemäß vorstehendem Unterabsatz (A) zu zahlen hat außer auf Zinsen gemäß Nr. 3 Abs. 4., oder

b)  eine Partei den Vertrag nicht mehr erfüllen darf,

so kann diese Partei (nachstehend die "betroffene Partei" genannt) und im Falle b) auch die andere Partei (nachstehend die "Gegenpartei" genannt) den von der Änderung betroffenen Einzelabschluß unter Einhaltung einer Frist von zwei Wochen auf einen von ihr zu bestimmenden Termin kündigen; dieser Termin darf nicht mehr als einen Monat vor dem Zeitpunkt liegen, an dem die Änderung wirksam wird. Nr. 7 Abs. 3 bezieht sich im Fall einer solchen Kündigung nur auf den oder die betroffenen Einzelabschlüsse. Die Gegenpartei bzw. im Falle einer Kündigung durch die Gegenpartei die betroffene Partei kann jedoch innerhalb einer Woche nach Zugang der Kündigungserklärung durch Erklärung an die kündigende Partei bestimmen, daß die Kündigung für den Vertrag insgesamt gilt. Für die Form der Kündigung und der Erklärung nach Satz 3 gilt Nr. 7 Abs. 1 Satz 3.

(C) Im Falle einer Kündigung aufgrund eines der in Unterabsatz (B) genannten Kündigungsgründe gilt Nr. 8 mit folgender Maßgabe:

a)  Ersatzberechtigte Partei ist die Gegenpartei. Nr. 12 Abs. 4, falls vereinbart, findet keine Anwendung.

b)  Sind beide Parteien betroffene Parteien und erleidet eine von ihnen einen Schaden, so hat die Partei, die insgesamt einen Vorteil aus der Beendigung erlangt oder den kleineren Schaden erleidet, der anderen Partei einen Betrag in Höhe der Hälfte der Differenz zwischen Vorteil und Schaden bzw. zwischen dem größeren und kleineren Schaden zu zahlen. Diese Rechtsfolge tritt auch dann ein, wenn die Kündigung nach Unterabsatz (B) Satz 1 Buchstabe b) oder die Erklärung nach Unterabsatz (B) Satz 3 durch die Gegenpartei abgegeben wird.

c)  Für Zwecke der Berechnung des eigenen Vorteils oder Schadens gilt in vorstehendem Fall b) jede Partei als ersatzberechtigte Partei

(6) Sonstige Vereinbarungen:

Nr. 11 Abs. 3 wird vollständig gestrichen und ersetzt durch:
(3) Ausschließlicher Gerichtsstand für alle Streitigkeiten ist Frankfurt am Main.

In Nr. 12 Abs. 5 (D) werden die Worte „der Vertragspartner" durch „die Bank" ersetzt.

(D) Für etwaige Rechtsstreitigkeiten oder sonstige Verfahren vor deutschen Gerichten bestellt der Vertragspartner hiermit die unter (F) oder gegebenenfalls in mindestens einem Einzelabschluss zu diesem Zweck benannte Person zum Zustellungsbevollmächtigten.

(E) Jede Partei verzichtet hiermit unwiderruflich darauf, in Verfahren betreffend sie selbst oder ihr Vermögen aufgrund etwaiger Souveränitäts- oder ähnlicher Rechte Immunität vor Klage, Urteil, Vollstreckung, Pfändung (sei es vor oder nach Urteilserlaß) oder anderen Verfahren zu genießen oder geltend zu machen.

(F) Anschrift des Zustellungsbevollmächtigten in der Bundesrepublik Deutschland:

Lehman Brothers International (Europe)
Zweigniederlassung Frankfurt am Main
Legal Department
Rathenauplatz 1

60313 Frankfurt am Main

Unterschrift(en) der Bank: Lehman Brothers Commodity Services Inc., handelnd durch die Londoner Niederlassung

ROSALIND MASON
Authorised Signatory

Unterschrift(en) des Vertragspartners: Deutsche Lufthansa Aktiengesellschaft

Anhang vom 1. August 2006
zum Rahmenvertrag für
Finanztermingeschäfte
vom 1. August 2006

**Anhang für Rohwarengeschäfte zu dem obengenannten Rahmenvertrag für Finanztermingeschäfte ("Rahmenvertrag")**

zwischen

Name und Anschrift des Vertragspartners

**Deutsche Lufthansa Aktiengesellschaft**, Von-Gablenz-Straße 2-6, Köln

(nachstehend „Vertragspartner" genannt)

und

Name und Anschrift der Bank

**Lehman Brothers Commodity Services Inc.**, Corporation Service Company, 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, 19808, handelnd durch die Londoner Niederlassung

(nachstehend „Bank" genannt)

### 1. Zweck und Gegenstand des Anhanges

(1) Ergänzend zu den Bestimmungen des Rahmenvertrages gelten für Rohwarengeschäfte die nachfolgenden Bestimmungen.
(2) Die Parteien beabsichtigen, zur Gestaltung von Preisänderungsrisiken im Rahmen ihrer Geschäftstätigkeit Rohwarengeschäfte abzuschließen. Die Bestimmungen dieses Anhangs gelten nicht für Rohwarengeschäfte, die durch die Lieferung der zugrunde liegenden Rohwaren zu erfüllen sind.
(3) Der Rahmenvertrag und dieser Anhang gelten unabhängig von einer Bezugnahme im Einzelabschluss auf den Rahmenvertrag für jedes Rohwarengeschäft, das zwischen den Parteien abgeschlossen wird.

### 2. Begriffsbestimmungen

(1) Im Sinne dieses Anhanges sind.

- „Ausübungsfrist" der Zeitraum, der an dem im Einzelabschluss genannten Anfangsdatum beginnt und am Verfalltag endet; ist im Einzelabschluss kein Anfangsdatum genannt, beginnt die Ausübungsfrist am Abschlussdatum;
- „Ausübungsstelle" die im Einzelabschluss vereinbarte Stelle des Verkäufers, mangels einer solchen Stelle die den Option abschließende Stelle des Verkäufers;
- „Ausübungstag" der Rohwarengeschäftstag, an dem ein im Einzelabschluss vereinbarte Option ausgeübt wird oder als ausgeübt gilt;
- „Ausübungszeitpunkt" die im Einzelabschluss vereinbarte Uhrzeit, mangels einer solchen Vereinbarung 17.00 Uhr Ortszeit in Frankfurt am Main;
- „Basispreis" der im Einzelabschluss vereinbarte Preis der Rohware je Einheit, ausgedrückt in der Vertragswährung; bei Rohwarengeschäften, die auf einen Rohwarenindex Bezug nehmen, der im Einzelabschluss vereinbarte Indexstand;
- „Berechnungsstelle" die im Einzelabschluss vereinbarte Stelle, mangels einer solchen Vereinbarung die Bank;
- „Bezugsmenge" die in einem Einzelabschluss für den jeweiligen Feststellungstag oder Berechnungszeitraum vereinbarte Anzahl der Einheiten der jeweiligen Rohware;
- „Börse" die oder der im Einzelabschluss als Referenzquelle oder durch Bezugnahme auf eine Referenzpreisbeschreibung oder einen Rohwarenindex vereinbarte Rohwarenbörse, Warenterminbörse oder Haupthandelsplatz;
- „Einheit" die im Einzelabschluss oder durch Bezugnahme auf eine Referenzpreisbeschreibung vereinbarte Einheit der Rohware;
- „Fälligkeitstag" der im Einzelabschluss bestimmte Fälligkeitstag, ist dieser kein Bankarbeitstag an dem Ort, an dem das Konto des Zahlungsempfängers unterhalten wird, so gilt für die Zahlungen beider Parteien an diesem Tag aus dem betroffenen Einzelabschluss Nr. 3 Abs. 4 Buchstabe b) des Rahmenvertrages;
- „Festpreis", der im Einzelabschluss vereinbarte Preis pro Einheit der Rohware ausgedrückt in der Vertragswährung
- „Feststellungstag", vorbehaltlich Nr 8, jeder im Einzelabschluss vereinbarte Tag für den der Referenzpreis festzustellen ist, mangels einer solchen Vereinbarung bei europäischen, amerikanischen und Bermuda-Rohwarenoptionen der Rohwarengeschäftstag unmittelbar vor der Ausübungstag, bei asiatischen Rohwarenoptionen jeder

der im Einzelabschluss vereinbarten Tage vor dem Ausübungstag und bei Rohwarentermingeschäften der Fälligkeitstag; ist der Feststellungstag kein Rohwarengeschäftstag, so gilt der unmittelbar folgende Rohwarengeschäftstag als Feststellungstag,
- „Gesamtbezugsmenge" die Summe sämtlicher Bezugsmengen;
- „Index-Werte" die dem jeweiligen Rohwarenindex zugrundeliegenden Rohwaren;
- „Liste A" die zwischen den Parteien gesondert vereinbarte Liste definierter Referenzpreise;
- „Optionswerte" bei Optionen auf Rohwaren die im Einzelabschluss vereinbarten Rohwaren und bei Optionen auf Rohwarenindizes die Index-Werte;
- „Preisspezifikation" die im Einzelabschluss oder durch Bezugnahme auf eine Referenzpreisbeschreibung vereinbarte Spezifikation, insbesondere der „gehandelte Preis", der „festgestellte Preis/Index", der „veröffentlichte Preis/Index" oder der „letzte festgestellte Preis/Index". Bei Geschäften, für die als Referenzquelle eine Rohwarenbörse oder Warenterminbörse vereinbart ist, gilt im Zweifel der von der oder an der Börse am Feststellungstag veröffentlichte Preis oder Indexstand und, wenn mehrere Preise oder Indexstände veröffentlicht werden, der letzte festgestellte Preis oder Indexstand als vereinbart.
- „Referenzpreis" vorbehaltlich Nr. 8, der von der Berechnungsstelle am Feststellungstag unter Zuhilfenahme der Referenzquelle und der Preisspezifikation ermittelte Preis der Rohware je Einheit, ausgedrückt in der Vertragswährung, und bei Rohwarengeschäften, die auf einen Rohwarenindex Bezug nehmen, der von der Berechnungsstelle am Feststellungstag unter Zuhilfenahme der Referenzquelle und der Preisspezifikation ermittelte Indexstand;
- „Referenzpreisbeschreibung" jede im Einzelabschluss, gegebenenfalls durch Verweis auf Liste A, vereinbarte Definition eines Referenzpreises;
- „Referenzquelle" vorbehaltlich der Nr 8, die im Einzelabschluss oder durch Bezugnahme auf eine Referenzpreisbeschreibung vereinbarte Referenzquelle, insbesondere eine Börse, eine Bildschirmseite oder sonstige Publikation eines Informationsdienstes oder die Quotierungen von Rohwarenhändlern;
- „Rohware" die im Einzelabschluss vereinbarten Gegenstände, insbesondere Primärenergieträger und andere Rohstoffe sowie land- und forstwirtschaftliche Erzeugnisse einschließlich der durch Auf-/Abfüllung, Veredelung oder Weiterverarbeitung dieser Gegenstände, durch Reststoff- oder Abfallverwertung gewonnenen Produkte, wie z.B. Kohle, Öl, Gas, Metalle oder Elektrizität;
- „Rohwarengeschäfte" jedes Geschäft, das die Zahlung von Geldbeträgen zum Gegenstand hat, die auf Grundlage von für Rohwaren festgestellten Preisen oder Rohwarenindizes ermittelt wird;
- „Rohwarengeschäftstag" bei Geschäften, für die als Referenzquelle eine Börse vereinbart ist, jeder Tag, an dem an dieser Börse gehandelt wird oder, im Falle einer Marktstörung, gehandelt worden wäre, bei Geschäften für die als Referenzquelle die Bildschirmseite oder sonstige Publikation eines Informationsdienstes vereinbart ist, jeder Tag, an dem der Informationsdienst veröffentlicht oder im Falle einer Marktstörung, veröffentlicht hätte und bei

Geschäften, für die als Referenzquelle Quotierungen von Rohwarenhändlern vereinbart sind, jeder Tag, an dem die im Einzelabschluss benannten Rohwarenhändler oder, wenn nach Nr. 3 von der Berechnungsstelle benannten Rohwarenhändler in der Rohware handeln oder, im Falle einer Marktstörung, gehandelt hätten;

- „Rohwarenindex" der im Einzelabschluss vereinbarte Index;
- „Rohwarenoption" Optionen auf Rohwaren oder Rohwarenindizes und Optionen auf Rohwarengeschäfte;
- „Verfalltag" der im Einzelabschluss bestimmte Verfalltag oder, falls dieser kein Rohwarengeschäftstag ist, der nächstfolgende Rohwarengeschäftstag.

(2) Maßgeblicher Finanzplatz für die Bestimmung des Rohwarengeschäftstages ist bezüglich der Definition „Verfalltag" und der Nr. 6 der Ort, an dem sich die Ausübungsstelle befindet, und bezüglich der Definition „Feststellungstag" der Ort, an dem sich die Berechnungsstelle befindet.

### 3. Bestimmungen für die Berechnung des variablen Preises

(1) Haben die Parteien für einen Berechnungszeitraum, Ausübungstag oder Fälligkeitstag nur einen Feststellungstag vereinbart, so ist der variable Preis der für diesen Feststellungstag ermittelte Referenzpreis.

(2) Haben die Parteien für einen Berechnungszeitraum, Ausübungstag oder Fälligkeitstag mehr als einen Feststellungstag vereinbart, so ist der variable Preis das arithmetische Mittel der für jeden dieser Feststellungstage ermittelten Referenzpreise. Haben sie abweichend hiervon ein mengengewichtetes Mittel vereinbart, so ist der variable Preis (A) die Summe der für jeden Feststellungstag berechneten Produkte aus (1) dem für den betreffenden Feststellungstag ermittelten Referenzpreis und (2) der für diesen Tag vereinbarten Bezugsmenge geteilt durch (B) die Summe der für jeden Feststellungstag vereinbarten Bezugsmengen. Nr. 5 Abs. 1 des Rahmenvertrages gilt mit der Maßgabe, dass die Berechnungsstelle der anderen Partei den von ihr ermittelten variablen Preis spätestens an dem auf den letzten Feststellungstag folgenden Bankarbeitstag mitteilt.

(3) Haben die Parteien im Einzelabschluss „Referenzquelle Rohwarenhändler" vereinbart, oder gilt „Referenzquelle Rohwarenhändler" nach Nr. 8 Abs. 2 als vereinbart, so finden die nachfolgenden Bestimmungen Anwendung:

a) Sofern in einem Einzelabschluss keine Rohwarenhändler vereinbart sind, benennt die Berechnungsstelle am Feststellungstag vier Rohwarenhändler, bei denen es sich soweit möglich um Personen oder Unternehmen handeln muss, die an der Börse oder an dem Ort für die betreffende Rohware maßgeblichen Haupthandelsplatz aufgrund der von ihnen getätigten Umsätze eine bedeutende Stellung einnehmen. Sofern aus Auffassung einer Partei ein im Einzelabschluss vereinbarter Rohwarenhändler nicht mehr zur Quotierung herangezogen werden soll, tritt an seine Stelle ein von der Berechnungsstelle zu benennender Rohwarenhändler. Bei Einzelabschlüssen mit mehreren Feststellungstagen sind die von der Berechnungsstelle für einen Feststellungstag benannten Rohwarenhändler auch für die darauffolgenden Feststellungstage maßgeblich.

b) Am Feststellungstag holt die Berechnungsstelle von den Rohwarenhändlern Quotierungen für den Referenzpreis ein. Die Quotierungen beziehen sich auf eine Einheit der Rohware, ausgedrückt in der Währung des Basispreises oder des Festbetrages. Die Quotierungen sind unter Berücksichtigung der Preisspezifikation und des gegebenenfalls maßgeblichen Liefermonats für derartige Rohwaren zu ermitteln.

c) Liegen drei oder mehr Quotierungen vor, so bleiben jeweils die höchste und die niedrigste Quotierung außer Ansatz. Haben zwei oder mehr Quotierungen denselben höchsten oder niedrigsten Wert, bleibt lediglich eine dieser Quotierungen außer Ansatz. Referenzpreis ist bei vier oder mehr Quotierungen das arithmetische Mittel der zu berücksichtigenden Quotierungen.

(4) Haben die Parteien im Einzelabschluss einen oder mehrere Berechnungszeiträume vereinbart, so ist „Berechnungszeitraum" der Zeitraum, der vom ersten Tag eines Berechnungszeitraums (einschließlich) beginnt und mit dem letzten Tag eines Berechnungszeitraums (einschließlich) endet. Haben die Parteien im Einzelabschluss Berechnungsstichtage vereinbart, so ist „Berechnungszeitraum" der Zeitraum, der mit dem Anfangsdatum des Einzelabschlusses oder einem Berechnungsstichtag (einschließlich) beginnt und mit dem

nächstfolgenden Berechnungsstichtag oder dem Enddatum (ausschließlich) endet.

### 4. Bestimmungen für Rohwarenswap- und Rohwarenpreisbegrenzungsgeschäfte

(1) Für Rohwarenswapgeschäfte gelten die Bestimmungen der Nr. 6 Abs. 1 und 2 des Rahmenvertrages mit folgender Maßgabe: Der jeweils zu zahlende variable Betrag ist das Produkt aus (A) der für den Berechnungszeitraum vereinbarten Bezugsmenge und (B) dem variablen Preis. Für die Berechnung des variablen Betrages entspricht bei Rohwarenswapgeschäften, die auf einen Rohwarenindex Bezug nehmen, ein Index-Punkt dem im Einzelabschluss vereinbarten Geldbetrag. Der jeweils zu zahlende Festbetrag ist, falls im Einzelabschluss betragsmäßig nicht festgelegt, das Produkt aus (A) der für den Berechnungszeitraum vereinbarten Bezugsmenge und (B) dem vereinbarten Festpreis.

(2) Für Rohwarenpreisbegrenzungsgeschäfte gelten die Bestimmungen der Nr. 6 Abs. 3 des Rahmenvertrages mit folgender Maßgabe: Der jeweils zu zahlende variable Betrag ist

(a) im Fall der Höchstpreisvereinbarung (Cap) für Zahlungen der als Überschuss-Zahler (oder Cap-Verkäufer) bezeichneten Partei das Produkt aus (A) der für den Berechnungszeitraum vereinbarten Bezugsmenge und (B) der absoluten Differenz, um die der variable Preis den Basispreis überschreitet und

(b) im Fall der Mindestpreisvereinbarung (Floor) für Zahlungen der als Minderbetrags-Zahler (oder Floor-Verkäufer) bezeichneten Partei das Produkt aus (A) der für den Berechnungszeitraum vereinbarten Bezugsmenge und (B) der absoluten Differenz, um die der variable Preis den Basispreis unterschreitet.

Für die Berechnung des variablen Betrages entspricht bei Rohwarengeschäften, die auf einen Rohwarenindex Bezug nehmen, ein Index-Punkt dem im Einzelabschluss vereinbarten Geldbetrag. Der Festbetrag ist die jeweils vom Käufer zu zahlende im Einzelabschluss vereinbarte Prämie.

### 5. Bestimmungen für Rohwarentermingeschäfte

Falls der variable Preis den Basispreis überschreitet, ist der Verkäufer und, falls der variable Preis den Basispreis unterschreitet, ist der Käufer verpflichtet, der jeweils anderen Partei einen Geldbetrag in Höhe des Produktes aus (A) der für den Berechnungszeitraum vereinbarten Bezugsmenge und (B) der absoluten Differenz zwischen dem variablen Preis und dem Basispreis zu zahlen. Für die Berechnung des Geldbetrages entspricht bei Rohwarentermingeschäften, die auf einen Rohwarenindex Bezug nehmen, ein Index-Punkt dem im Einzelabschluss vereinbarten Geldbetrag.

### 6. Bestimmungen für Rohwarenoptionen

(1) Der Käufer einer europäischen Rohwarenoption ist berechtigt, diese bis zum Ausübungszeitpunkt am Verfalltag auszuüben. Geht die Ausübungserklärung vor dem Verfalltag zu, gilt die Option als am Verfalltag ausgeübt.

(2) Der Käufer einer amerikanischen Rohwarenoption ist berechtigt, diese jederzeit innerhalb der Ausübungsfrist bis zum Ausübungszeitpunkt am Verfalltag auszuüben. Geht die Ausübungserklärung vor Beginn der Ausübungsfrist zu, gilt die Option als am ersten Tag der Ausübungsfrist ausgeübt. Geht die Ausübungserklärung an einem Tag vor dem Verfalltag nach dem Ausübungszeitpunkt oder an einem Tag, der kein Rohwarengeschäftstag ist, zu, so gilt die Option als am darauffolgenden Rohwarengeschäftstag ausgeübt.

(3) Der Käufer einer Bermuda-Rohwarenoption ist berechtigt, diese an den im Einzelabschluss für die Ausübung vereinbarten Tagen bis zum Ausübungszeitpunkt auszuüben. Ist einer der für den Berechnungszeitraum vereinbarten Bezugsmenge und gilt der unmittelbar folgende Rohwarengeschäftstag als vereinbart. Geht die Ausübungserklärung vor einem für die Ausübung vereinbarten Tag oder an einem für die Ausübung vereinbarten Tag, jedoch nach dem Ausübungszeitpunkt zu, so gilt die Option als nicht ausgeübt.

(4) Ist im Einzelabschluss „Teilausübung" vereinbart, ist der Käufer einer Rohwarenoption berechtigt, die Option auch teilweise und im Falle einer amerikanischen oder einer Bermuda-Rohwarenoption, für die im Einzelabschluss „Mehrmalige

Ausübung" vereinbart ist, auch mehrmals in Teilen auszuüben. Im Falle der Ausübung eines Teils der Bezugsmenge muss die Ausübungserklärung den Teil der Bezugsmenge, auf die sich die Ausübung beziehen soll („auszuübende Bezugsmenge"), ausdrücklich benennen. Die auszuübende Bezugsmenge darf die vereinbarte Mindestausübungsmenge nicht unterschreiten und die vereinbarte Höchstausübungsmenge nicht überschreiten; sie muss durch den vereinbarten Divisor ohne Rest teilbar sein. Dies gilt jedoch nicht, wenn es sich um die Ausübung eines gegebenenfalls am Verfalltag noch ausgeübten Teils der Bezugsmenge handelt. Entspricht die auszuübende Bezugsmenge diesen Anforderung nicht, so gilt im Fall des Überschreitens der Höchstausübungsmenge die Höchstausübungsmenge und im Falle der fehlenden Teilbarkeit die nächstniedrigere ohne Rest teilbare Bezugsmenge als ausgeübt; im Falle des Unterschreitens der Mindestausübungsmenge gilt die Teilausübung als nicht erfolgt. Mit erfolgter Ausübung eines Teils der Bezugsmenge reduziert sich diese jeweils um den ausgeübten Teil.
(5) Die Ausübungserklärung ist an die Ausübungsstelle zu richten. Sie ist unwiderruflich.
(6) Eine nicht ausgeübte europäische Rohwarenoption oder eine nicht ausgeübte oder nur teilweise ausgeübte amerikanische Rohwarenoption gilt als am Verfalltag und eine nicht ausgeübte Bermuda-Rohwarenoption gilt als am letzten der im Einzelabschluss für die Ausübung vereinbarten Tage ausgeübt, falls der Käufer im Fall der Ausübung der Option an diesem Tag ein Recht auf Erhalt eines Geldbetrages nach Absatz 7 oder Absatz 8 Buchstabe b) hätte.
(7) Im Fall der Ausübung einer Option auf Rohwaren oder einen Rohwarenindex ist der Verkäufer verpflichtet, dem Käufer einen Geldbetrag in Höhe des Produktes aus (A) der ausgeübten Menge und (B) der Differenz zwischen dem variablen Preis und dem Basispreis zu zahlen, falls der variable Preis den Basispreis bei einer Kaufoption überschreitet und bei einer Verkaufsoption unterschreitet. Für die Berechnung des Geldbetrages entspricht bei Optionen auf Rohwarenindizes ein Index-Punkt dem im Einzelabschluss vereinbarten Geldbetrag.
(8) Im Fall der Ausübung einer Option auf ein Rohwarengeschäft gilt folgendes:
a) Ist im Einzelabschluss „Geschäftsabschluss" vereinbart, kommt zwischen den Parteien mit Ausübung der Option das der Option zugrundeliegende Rohwarengeschäft („Bezugsgeschäft") zustande.
b) Ist im Einzelabschluss „Barausgleich" vereinbart, ist der Verkäufer verpflichtet, dem Käufer nach Maßgabe der Vereinbarung im Einzelabschluss einen Geldbetrag („Barausgleich") in Höhe des Barwertes des Bezugsgeschäfts zu zahlen, falls der Barwert des Bezugsgeschäfts für den Käufer positiv ist. Im Zweifel gilt Barausgleich als vereinbart.
(9) Die Berechnungsstelle ermittelt am Ausübungstag den nach Absatz 7 oder Absatz 8 zu zahlenden Geldbetrag und teilt ihn der anderen Partei spätestens an dem auf den Ausübungstag folgenden Bankarbeitstag mit.
(10) Der Käufer ist verpflichtet, dem Verkäufer die im Einzelabschluss vereinbarte Optionsprämie zu zahlen.

### 7. Bestimmungen für Rohwarenindizes

Bei Rohwarengeschäften, die auf einen Rohwarenindex Bezug nehmen, sind für die Berechnung des Rohwarenindexes die am Feststellungstag jeweils anwendbaren Regeln („Konzept") maßgeblich. Dies gilt auch dann, wenn während der Laufzeit des Einzelabschlusses Veränderungen und Bereinigungen in der Berechnung des Rohwarenindexes, in der Zusammensetzung der Index-Werte und der Gewichtung der Preise, auf deren Grundlage der Rohwarenindex berechnet wird, oder andere Maßnahmen vorgenommen werden, die sich auf das Konzept oder die Berechnung des Indexes auswirken, soweit sich aus Nr. 8 nicht ein anderes ergibt.

### 8. Marktstörungen

(1) Eine Marktstörung liegt vor, wenn die Berechnungsstelle an einem Feststellungstag nach sorgfältiger Beurteilung und unter Abwägung der Interessen beider Parteien feststellt, dass eines der nachstehend genannten Ereignisse eingetreten ist:
a) „Störung der Referenzquelle": Die Referenzquelle, unter deren Zuhilfenahme die Berechnungsstelle den Referenzpreis zu

ermitteln hat, (A) stellt die vereinbarte Preisspezifikation nicht fest oder macht sie nicht bekannt oder veröffentlicht sie nicht, (B) ist vorübergehend oder dauerhaft nicht erreichbar oder verfügbar oder (C), falls die Parteien im Einzelabschluss „Referenzquelle Rohwarenhändler" vereinbart haben, die Berechnungsstelle erhält weniger als drei Quotierungen oder (D), falls die Parteien im Einzelabschluss einen Prozentsatz für wesentliche Preisabweichungen" vereinbart haben, der auf Grundlage der Referenzquelle ermittelte Preis weicht von dem am selben Feststellungstag aufgrund von Quotierungen von Rohwarenhändlern ermittelten Referenzpreis um mehr als den vereinbarten Prozentsatz ab.
b) „Einstellung des Handels": Der Handel in den Rohwaren oder in den Options- oder Index-Werten oder der Handel von Future- oder Optionskontrakten, die dieselben Rohwaren oder Options- oder Indexwerte zum Gegenstand haben, wird an der Börse oder den für Zwecke der Feststellung von Marktstörungen im Einzelabschluss vereinbarten anderen Rohwarenbörsen, Warenterminbörsen oder Handelsplätzen dauerhaft, für unbestimmte Zeit oder für einen wesentlichen Zeitraum eingestellt.
c) „Wegfall des Referenzpreises": Die Rohwaren werden nicht mehr gewonnen, erzeugt oder hergestellt oder der Handel in den Rohwaren wird generell eingestellt oder, sofern die Parteien im Einzelabschluss eine Referenzpreisbeschreibung vereinbart haben, der Handel an der oder dem in der Referenzpreisbeschreibung genannten Rohwarenbörse, Warenterminbörse oder Haupthandelsplatz in der genannten Forward- oder Futurekontrakten wird entweder nicht aufgenommen oder dauerhaft eingestellt.
d) „Wesentliche Änderung des Konzepts". Die im Hinblick auf einen Rohwarenindex vorgenommenen Veränderungen und Bereinigungen oder andere Maßnahmen („Maßnahmen") wirken sich wesentlich auf das Konzept oder die Berechnung des Rohwarenindex aus. Werden während der Laufzeit des Einzelabschlusses mehrere Maßnahmen vorgenommen, so ist die Wesentlichkeit jeweils aufgrund eines Vergleiches mit dem am Abschlussdatum maßgeblichen Konzept zu beurteilen.
e) „Wesentliche Änderung des Inhalts": Die Zusammensetzung, Beschaffenheit, Eigenschaft oder Verkehrsfähigkeit der Rohwaren oder, sofern die Parteien im Einzelabschluss eine Referenzpreisbeschreibung vereinbart haben, die Zusammensetzung, Beschaffenheit, Eigenschaft oder Verkehrsfähigkeit der in der Referenzpreisbeschreibung genannten Forward- oder Futurekontrakten zugrundeliegenden Rohwaren oder die Ausgestaltung der Forward- oder Futurekontrakte selbst wird wesentlich geändert. Buchstabe d) Satz 2 gilt entsprechend.
f) „Unterschreiten Mindesthandelsvolumen": Falls die Parteien im Einzelabschluss ein „Mindesthandelsvolumen" vereinbart haben, die Anzahl der an einem Feststellungstag an der Börse gehandelten Kontrakte unterschreitet das Mindesthandelsvolumen.
g) „Steuerereignis": Falls ein Staat oder eine zuständige Steuerbehörde nach dem Abschlussdatum eines Einzelabschlusses eine auf die Rohwaren zu zahlende oder im Hinblick auf die Rohwaren oder deren Wert bemessene Verbrauchs- Produktions-, Verkaufs-, Mehrwert-, Umsatz- oder Stempelsteuer, oder irgend eine andere öffentliche Abgabe (mit Ausnahme von auf Einkommen zu zahlende Abgabe) einführt, ändert oder aufhebt und sich hierdurch der Referenzpreis ändert.
h) „Handelsbeschränkung": Der Handel in den Rohwaren oder in den Options- oder Index-Werten oder der Handel von Future- oder Optionskontrakten, die dieselben Rohwaren oder Options- oder Indexwerte zum Gegenstand haben, wird an der Börse oder den für Zwecke der Feststellung von Marktstörungen im Einzelabschluss vereinbarten anderen Rohwarenbörsen, Warenterminbörsen oder Handelsplätzen wesentlich eingeschränkt.
(2) Sofern im Einzelabschluss vereinbart, gelten im Falle einer Marktstörung in der im Einzelabschluss vereinbarten Reihenfolge die nachfolgenden Regelungen („Ersatzregelungen"):
a) „Referenzquelle Rohwarenhändler": Die Berechnungsstelle ermittelt den Referenzpreis auf Grundlage von Quotierungen von Rohwarenhändlern als hätten die Parteien im Einzelabschluss „Referenzquelle Rohwarenhändler" vereinbart.
b) „Ersatzreferenzquelle": Die Berechnungsstelle ermittelt den Referenzpreis auf Grundlage der im Einzelabschluss vereinbarten Ersatzreferenzquelle.

c) „Verschiebung des Feststellungstags – Ersatzreferenzquelle": Als Feststellungstag gilt der Rohwarengeschäftstag, an dem die Berechnungsstelle nach sorgfältiger Beurteilung und unter Abwägung der Interessen beider Parteien feststellt, dass die Marktstörung nicht mehr besteht. Dauert die Marktstörung, berechnet einschließlich des ersten Feststellungstages, für den die Berechnungsstelle das Bestehen einer Marktstörung festgestellt hat, die im Einzelabschluss vereinbarte Anzahl aufeinanderfolgender Rohwarengeschäftstage an, so gilt der letzte Tag dieses Zeitraums als Feststellungstag. An diesem Tag wird die Berechnungsstelle den Referenzpreis auf Grundlage der im Einzelabschluss gegebenenfalls vereinbarten Ersatzreferenzquelle bestimmen. Haben die Parteien keine Ersatzreferenzquelle vereinbart oder liegt die Marktstörung auch für die Ersatzreferenzquelle vor, so erfolgt die Bestimmung des Referenzpreises auf Grundlage von Quotierungen von Rohwarenhändlern, als hätten die Parteien im Einzelabschluss „Referenzquelle Rohwarenhändler" vereinbart.

d) „Verhandlung": Die Parteien werden unverzüglich Verhandlungen über den Referenzpreis aufnehmen. Haben sich die Parteien, aus welchen Gründen auch immer, nicht innerhalb von fünf Rohwarengeschäftstagen, berechnet ausschließlich des ersten Feststellungstages, für den die Berechnungsstelle das Bestehen einer Marktstörung festgestellt hat, auf den Referenzpreis geeinigt, so findet die nächste vereinbarte oder als vereinbart geltende Ersatzregelung Anwendung.

e) „Vorzeitige Erfüllung durch Barausgleich": Der Einzelabschluss endet ohne Kündigung an dem Tag, an dem diese Ersatzregelung Anwendung findet. An die Stelle der beiderseits geschuldeten Zahlungen oder sonstigen Leistungen, die nach Eintritt der Marktstörung fällig geworden wären, tritt ein Geldbetrag in Euro in Höhe des Barwertes des Einzelabschlusses. Die Berechnungsstelle ermittelt den Barwert entsprechend Nr. 12 Abs. 5 Unterabsatz (C Buchstabe b) des Rahmenvertrages.

f) „Verschiebung des Feststellungstags": Als Feststellungstag gilt der Rohwarengeschäftstag, an dem die Berechnungsstelle nach sorgfältiger Beurteilung und unter Abwägung der Interessen beider Parteien feststellt, dass die Marktstörung nicht mehr besteht. Dauert die Marktstörung, berechnet einschließlich des ersten Feststellungstages, für den die Berechnungsstelle das Bestehen einer Marktstörung festgestellt hat, die im Einzelabschluss vereinbarte Anzahl aufeinanderfolgender Rohwarengeschäftstage an, so gilt der letzte Tag dieses Zeitraums als Feststellungstag und findet die nächste vereinbarte oder als vereinbart geltende Ersatzregelung Anwendung. Bewirkt die Verschiebung des Feststellungstages, dass ein auf Grundlage des Referenzpreises zu ermittelnder Betrag an einem vereinbarten Fälligkeitstag nicht gezahlt werden kann, so verschiebt sich der Fälligkeitstag um die im Einzelabschluss vereinbarte Anzahl von Rohwarengeschäftstagen; im Falle eines Rohwarenswaps gilt dies entsprechend für den am selben Fälligkeitstag von der anderen Partei geschuldeten variablen Betrag oder Festbetrag.

g) „Berechnungsstelle": Die Berechnungsstelle ermittelt den Referenzpreis oder eine Methode zu dessen Ermittlung unter Berücksichtigung der letzten verfügbaren Quotierungen und sonstigen Informationen, die sie nach billigem Ermessen für relevant halten darf.

h) „Nichtberücksichtigung von Feststellungstagen": Haben die Parteien für einen Berechnungszeitraum, Ausübungstag oder Fälligkeitstag mehrere Feststellungstage vereinbart, so bleiben die Feststellungstage, für die die Berechnungsstelle das Bestehen einer Marktstörung festgestellt hat, unberücksichtigt. Dauert die Marktstörung, berechnet einschließlich des ersten Feststellungstages, für den die Berechnungsstelle das Bestehen einer Marktstörung festgestellt hat, die im Einzelabschluss vereinbarte Anzahl aufeinanderfolgender Rohwarengeschäftstage an, so gilt der letzte Tag dieses Zeitraums als Feststellungstag und wird die Berechnungsstelle den Referenzpreis auf Grundlage der im Einzelabschluss gegebenenfalls vereinbarten Ersatzreferenzquelle bestimmen.

(3) Sofern die Parteien im Einzelabschluss keine Ersatzregelungen vereinbart haben, gelten für die Marktstörungen „Störung der Referenzquelle", „Einstellung des Handels", „Wegfall des Referenzpreises", „Wesentliche Änderung des Konzepts" und „Wesentliche Änderung des Inhalts" in der angegebenen Reihenfolge folgende Ersatzregelungen: „Ersatzreferenzquelle", „Verhandlung" und „Vorzeitige Erfüllung durch Barausgleich".

## 9. Korrektur von Referenzpreisen

Wird ein für die Berechnung eines Betrages maßgeblicher Referenzpreis von der Referenzquelle nachträglich korrigiert, und sind gerechnet vom Zeitpunkt der Veröffentlichung des ursprünglichen Referenzpreises (ausschließlich) bis zum Zeitpunkt der Veröffentlichung des korrigierten Referenzpreises (einschließlich) weniger als dreißig Kalendertage vergangen, so wird die Berechnungsstelle der anderen Partei den korrigierten Referenzpreis sowie den unter Berücksichtigung dieses Referenzpreises neu berechneten Betrag mitteilen. Ergibt sich aufgrund der Korrektur, dass die zur Zahlung des Betrages verpflichtete Partei an dem hierfür vereinbarten Zahlungstermin zu viel oder zu wenig gezahlt hat, so wird die Partei, die den Differenzbetrag schuldet, diesen innerhalb von drei Bankarbeitstagen nach Mitteilung des neuberechneten Betrages zahlen.

## 10. Besondere Vereinbarungen

(1) Die folgenden Absätze 2 und 3 gelten nur, soweit die dazu bestimmten Felder angekreuzt sind.
☐ (2) Nr 1 Abs. 3 gilt auch für bereits abgeschlossene Rohwarengeschäfte
☐ (3) In Nr. 1 Abs. 3 werden die Worte „den Parteien" durch „den in Nr. 10 Abs. 3 genannten Niederlassungen der Parteien" ersetzt.

Niederlassungen                     Niederlassungen
des Vertragspartners:               der Bank:

## 11. Sonstige Vereinbarungen:

Haben die Parteien im Einzelabschluß eine der im Sub-Annex A zu den 2005 ISDA Commodity Definitions definierten Referenzpreisbeschreibung (Commodity Reference Price) vereinbart, so ist, vorbehaltlich Nr. 8, für die Berechnung des variablen Preises die in der vereinbarten Referenzpreisbeschreibung (Commodity Reference Price) bestimmmte, gegebenfalls in Klausel 7.2 des Sub-Annex A zu den 2005 ISDA Commodity Definitions näher definierte Referenzquelle, Börse, Preisspezifikation oder Einheit maßgeblich.

In Nr. 2 Abs. 1 wird die Begriffsbestimmung „Liste A" vollständig gestrichen.

In Nr. 2 Abs. 1 werden die Worte „Liste A" in der Begriffsbestimmung „Referenzpreisbeschreibung" gestrichen und ersetzt durch „Sub-Annex A zu den 2005 ISDA Commodity Definitions".

Unterschrift(en) der Bank: Lehman Brothers Commodity Services Inc., handelnd durch die Londonder Niederlassung

ROSALIND MASON
Authorised Signator

Unterschrift(en) des Vertragspartners:  Deutsche Lufthansa Aktiengesellschaft



|  | Master Agreement dated: |
|  |  |

# Master Agreement for Financial Derivatives Transactions

Between

Name and address of the Counterparty

(hereinafter called the „Counterparty")

and

Name and address of the Bank

(hereinafter called the „Bank")

the following is agreed:

## 1. Purpose and Scope of Agreement

(1) In order to manage interest and exchange rate risks and other price risks arising within the scope of their business operations, the parties hereto intend to enter into financial derivatives transactions, the object of which is:

(a) the exchange of amounts of money denominated in various currencies or amounts of money calculated by reference to floating or fixed interest rates, exchange rates, prices or any other calculation basis, including average values (indices) relating thereto, or

(b) the delivery or transfer of securities, other financial instruments or precious metals, or the performance of similar obligations.

Financial derivatives transactions also include options, interest rate protection and similar transactions that require a party to render performance in advance, or whose performance is subject to a condition.

(2) The terms and conditions set out below shall apply to each transaction that is entered into pursuant to this Master Agreement (hereinafter called "a Transaction"). All Transactions among themselves and together with this Master Agreement shall constitute a single agreement (hereinafter called the "Agreement"); they shall be entered into in accordance with and in reliance on this principle, to achieve an aggregate risk assessment.

## 2. Transactions

(1) As soon as the parties have agreed to a Transaction, the Bank shall confirm in writing the terms thereof to the Counterparty either, by telex, telegraph, facsimile or in any other similar form.

(2) Each party shall be entitled to request a signed confirmation of the Transaction, provided, however, that such confirmation shall not be a condition precedent to the legal validity of the Transaction.

(3) The terms of an individual Transaction shall prevail over the provisions of this Master Agreement.

## 3. Payments and Performance of other Obligations

(1) Each party shall make to the other party each payment owed and perform any other obligation no later than on the Due Dates specified in respect of the relevant Transaction.

(2) All payments shall be made to the payee's account specified in the contractual currency pursuant to the terms of the Transaction, free of all costs, in the manner customary for payments in such

currency and in funds which are freely available on the Due Date.

(3) If both parties are required to make payments under the Agreement in the same currency on the same day, the party which owes the higher amount shall pay to the other the difference between the amounts owed. The Bank shall, in due time before such payment becomes due, notify the Counterparty of the difference to be paid.

(4) If a party fails to make a payment in due time, interest shall accrue on the amount outstanding, until such amount is received, at a rate which shall be equal to the interbank interest rate charged by prime banks to each other for call deposits at the place of payment and in the currency of the amount outstanding for each day on which such interest is to be charged, plus the interest surcharge referred to in Clause 12 sub-Clause (3). The right to make further claims for damages is not hereby excluded.

(5) If a Due Date is not a Banking Day, each payment shall be made and any other obligation performed, as specified in the terms of the relevant Transaction, on any of the following:

(a) the immediately preceding Banking Day, or

(b) the immediately following Banking Day, or

(c) if the immediately following Banking Day falls within the next calendar month, the immediately preceding Banking Day.

## 4. Banking Day

"Banking Day" for the purpose of this Agreement shall mean each day (other than a Saturday or a Sunday) on which banks are open for business, including trading in foreign currencies and acceptance of foreign currency deposits, at the financial centre(s) specified in respect of the relevant Transaction.

## 5. Reference Basis

(1) Where a floating interest rate, exchange rate, price or other calculation basis ("Floating Basis") has been agreed in respect of a Transaction, the Bank shall notify the Counterparty of the underlying reference basis on the day such Floating Basis is to be determined ("Calculation Date") or promptly thereafter.

(2) If, on a Calculation Date, it is not possible to determine the reference basis agreed in respect of the relevant Transaction, the parties shall determine such reference basis by using a basis of calculation which is as close as possible, to the one agreed with respect to the relevant Transaction. If the reference basis is an interbank interest rate which cannot be determined by mutual agreement within 20 days, the reference basis shall be the

1

arithmetic mean of the interest rates which two banks of international reputation, selected by the Bank offer time deposits in the contractual currency with equivalent maturities to prime banks in the interbank market for about the same amounts as the notional amount at about 11.00 a. m. (local time of the relevant interbank market) on the Calculation Date.

(3) An interest rate used as a reference basis ("Base Rate") shall, if necessary, be rounded up to the nearest multiple of one hundred-thousandth of a percentage point.

### 6. Calculation Method for Interest-Rate Related Transactions

(1) Each floating amount to be paid in respect of a Transaction shall be the product of (a) the notional amount agreed for such Transaction, (b) the floating interest rate ("Floating Rate") calculated in accordance with Clause 5 and the terms of such Transaction, expressed as a decimal figure, and (c) the Day Count Fraction within the meaning of sub-Clause (5) below.

(2) Each fixed amount to be paid in respect of any Transaction shall be the amount stated in the terms of the Transaction, if the amount is specified as a figure. Otherwise it shall be the product of (a) the notional amount agreed for such Transaction, (b) the fixed interest rate ("Fixed Rate") agreed for such Transaction, expressed as a decimal figure, and (c) the Day Count Fraction within the meaning of sub-Clause (5) below.

(3) In the case of rate protection transactions, the Floating Rate shall be in each case, subject to the terms of the relevant Transaction and without prejudice to the provisions of sub-Clause (4) below

(a) for payments by the party designated as surplus payer (or Cap or FRA seller), the agreed Base Rate less the rate which is stated in the terms of the Transaction as the maximum rate (or cap rate) or as the forward rate, and

(b) for payments by the party designated as deficit payer (or Floor seller or FRA buyer), the rate which is stated in the terms of the Transaction as the minimum rate (or floor rate) or as the forward rate, less the agreed Base Rate.

(4) If a payment is not made upon expiration of the relevant Calculation Period, but at the beginning thereof, the amount to be determined in accordance with sub-Clause (1) or (2) above shall be discounted by dividing such amount by an amount which is calculated, in the case of a Calculation Period of one year or less in accordance with the formula

$$1 + L\frac{D}{B}$$

and in the case of a Calculation Period of more than one year in accordance with the formula

$$(1 + L)^{\frac{D}{B}}$$

where

L        means the Base Rate determined, or other discount rate agreed, in respect of the relevant Calculation Period, expressed as a decimal figure (i. e. 0.07, for instance, in the case of a Base Rate or discount rate of 7 %);

D        means the number of days comprised in such Calculation Period;

B        means 360, unless the agreed contractual currency is a currency for which it is market practice to calculate the Base Rate or other agreed discount rate on the basis of 365 or, for leap years, 366 days; in such case B means 365 or 366, respectively.

The provisions set forth above shall, unless agreed otherwise, generally apply to Forward Rate Agreements. In the case of other Transactions, they shall apply only if the terms of the Transaction provide for discounting.

(5) "Day Count Fraction" means, as specified in the terms of the relevant Transaction, any of the following:

(a) the number of days actually elapsed within the Calculation Period for which the amount is to be calculated, divided by 360, ("365/360") or

(b) the number of days elapsed within such Calculation Period, calculated on the basis of a 360-day year with 12 months of 30 days each, divided by 360, ("360/360") or

(c) the number of days actually elapsed within such Calculation Period, divided by 365 or, in the case of a leap year, 366, ("365/365") or

(d) the number of days actually elapsed within such Calculation Period, divided by 365 ("366/365").

(6) "Calculation Period" means the period beginning with, and including, the effective date of the Transaction, or a Payment Date, and ending with, but excluding, the next following Payment Date or the termination date, or, where the parties have specified "Due Date/Due Date" as the terms of the Transaction with respect to floating amounts, the period beginning with, and including, the effective date of the Transaction, or a Due Date, and ending with, but excluding, the next following Due Date or the termination date. For the purposes of this Agreement, "Payment Date" means the day on which the payment is actually to be made, where applicable after adjustment in accordance with Clause 3 sub-Clause (5), and "Due Date" means the contractually agreed day for payment, without any such adjustment.

(7) If a floating amount, or a fixed amount to be calculated pursuant to sub-Clause (2) above, sentence 2, is due, the Bank shall notify the counterparty of such amount, in the first case together with the applicable reference basis.

### 7. Termination

(1) Where Transactions have been entered into and not yet fully settled, the Agreement can only be terminated by either party for material reason. Material reason includes circumstances where payment or other performance due has not been received, for whatever reason, by the party entitled thereto within five Banking Days after the party liable to pay or to perform has been notified of non-receipt of the payment or other non-performance. Such notification, as well as the notice of termination, must be in writing, either by telex, telegraph, facsimile or in any other similar form. A partial termination, in particular a termination of some, but not all Transactions, is excluded, Clause 12 sub-Clause (5) (B) remains applicable.

(2) The Agreement shall terminate, without notice, in the event of an insolvency. An insolvency shall be given, if an application is filed for the commencement of bankruptcy or other insolvency proceedings against the assets of either party and such party either has filed the application itself or is generally unable to pay its debts as they become due or is in any other situation which justifies the commencement of such proceedings.

(3) In the event of termination upon notice by either party or upon insolvency (hereinafter called "Termination"), neither party shall be obliged to make any further payment or perform any other obligation under Clause 3 sub-Clause (1) which would have become due on the same day or later; the relevant obligations shall be replaced by compensation claims in accordance with Clauses 8 and 9.

### 8. Claims for Damages and Compensation for Benefits Received

(1) In the event of Termination, the party giving notice or the solvent party, as the case may be, (hereinafter called "Party Entitled b Damages") shall be entitled to claim damages. Damages shall be determined on the basis of replacement transactions, to be effected without undue delay, which provide the Party Entitled to Damages with all payments and the performance of all other obligations to which it would have been entitled had the Agreement been properly performed. Such party shall be entitled to enter into contracts which, in its opinion, are suitable for this purpose. If it refrains from entering into such substitute transactions, it may base the calculation of damages on that amount which it would have needed to pay for

2

such replacement transactions on the basis of interest rates, forward rates, exchange rates, market prices, indices and any other calculation basis, as well as costs and expenses, at the time of giving notice or upon becoming aware of the insolvency, as the case may be. Damages shall be calculated by taking into account all Transactions; any financial benefit arising from the Termination of Transactions (including those in respect of which the Party Entitled to Damages has already received all payments and performance of all other obligations by the other party) shall be taken into account as a reduction of damages otherwise determined.

(2) If the Party Entitled to Damages obtains an overall financial benefit from the Termination of Transactions, it shall owe the other party, subject to Clause 9 sub-Clause (2) and, where agreed, Clause 12 sub-Clause (4), a sum corresponding to the amount of such benefit, but not exceeding the amount of damages incurred by the other party. When calculating such financial benefit, the principles of sub-Clause (1) as to the calculation of damages shall apply mutatis mutandis.

## 9. Final Payment

(1) Unpaid amounts and any other unperformed obligations, and the damages which are payable, shall be combined by the Party Entitled to Damages into a single compensation claim denominated in Euro, for which purpose a money equivalent in Euro shall be determined, in accordance with the principles set forth in Clause 8 sub-Clause (1) sentences 2 to 4, in respect of claims for performance of such other overdue obligations.

(2) A compensation claim against the Party Entitled to Damages shall become due and payable only to the extent that the other party does not, for any legal reason whatsoever, have any claims against the other party ("Counterclaims"). If Counterclaims exist, their value shall be deducted from the total amount of the compensation claim in order to determine the portion of the compensation claim that is due and payable. For the purpose of calculating the value of the Counterclaims, the Party Entitled to Damages shall (i) to the extent that they are not payable in Euro, convert such Counterclaims into Euro at a selling rate to be determined, if possible, on the basis of the official foreign-exchange rate applicable on the day of computation, (ii) to the extent that they are not claims for the payment of money, convert them into a claim for damages expressed in Euro and (iii) to the extent that they are not yet due and payable, take them into account at their present value (also having regard to interest claims). The Party Entitled to Damages may set off the compensation claim or the other Party against the counterclaims calculated in accordance with sentence 3. To the extent that it fails to do so, the compensation claim shall become due and payable as soon as and to the extent that it exceeds the aggregate amount of Counterclaims.

## 10. Transfer

The transfer of rights or obligations arising from the Agreement shall require in each case the prior written consent of the other party, either, by telex, telegraph, facsimile or in any other similar form. The provisions of Clauses 2 sub-Clause (2) shall apply mutatis mutandis.

## 11. Miscellaneous

(1) If any provision of the Agreement is void or unenforceable, the remaining provisions shall remain unimpaired. Such deficient provision shall be substituted by a provision which reflects appropriately the parties' intent.

(2) The Agreement is subject to the law of the Federal Republic of Germany.

(3) The courts at the location of the Bank's office through which the Agreement is entered into shall have non-exclusive jurisdiction.

(4) The Master Agreement in the version hereby agreed shall also apply to all Transactions, if any, of the parties under the Master Agreement of an earlier version. Such Transactions shall be regarded as Transactions under the Master Agreement in this new version. However, the previous version shall remain effective for such Transactions to the extent that this is necessary in order to maintain the proper meaning of the provisions thereof.

## 12. Special Provisions

(1) The following sub-Clauses (2) to (5) shall apply only to the extent that the appropriate spaces below have been marked w ith a cross or completed.

[ ] (2) In Clause 3 sub-Clause (3) the words "under the same Transaction" are substituted for the words "under the Agreement".

[ ] (3) The interest surcharge provided for in Clause 3 sub-Clause (4) shall be

| % p.a. |
|---|

(4) After Clause 8, sub-Clause (2) sentence (1) the following sentence is inserted:

either

[ ] This shall, without prejudice to Clause 12 sub-Clause (5) (C) (a), apply only if in relation to at least one Transaction, the Party Entitled to Damages (i) has finally and incontestably received all payments or other performances owed by the other party and (ii) would still have unconditional or conditional payment or other obligations itself if the Agreement were to continue,

or

[ ] This shall, without prejudice to Clause 12 sub-Clause (5) (C) (a), apply only if the Party Entitled to Damages (i) has finally and incontestably received, in relation to all Transactions, all payments or other performances owed by the other party and (ii) would still have unconditional or conditional payment or other obligations itself if the Agreement were to continue.

[ ] (5) International transactions

(A) If a party is or will be obliged to deduct or withhold a tax amount or other fiscal charge from a payment which it is to make, it shall pay to the other party such additional amounts as are necessary to ensure that the other party receives the full amount to which it would have been entitled at the time of such payment if no deduction or withholding had been required. This shall not apply if the tax or fiscal charge concerned is imposed or levied by the home state of the payee or by a tax authority located in such state. Home state means the state in which the payee has its domicile or is considered to be located or in which the office of the payee through which it is acting for the relevant Transaction is located.

(B) If, as a result of any change in law, or in the application or official interpretation thereof, which occurs after the trade date of a Transaction

(a) it is to be anticipated that, on the next Due Date, either party will have to pay additional amounts pursuant to the preceding sub-Clause (A) with regard to a payment which it is required to make, other than with regard to interest payable pursuant to Clause 3 sub-Clause (4), or

(b) either party is no longer permitted to perform the Agreement,

such party (hereinafter called the "Affected Party"), and in the case of (b) also the other party (hereinafter called the "Non-affected Party"), may, by giving at least two weeks' notice, terminate the Transaction affected by such change with effect as from a date to be designated by it, provided that such date may not be earlier than one month before the date on which such change becomes effective. In the event of such termination, Clause 7 sub-Clause (3) shall apply only with respect to the Transaction(s) concerned. However, the Non-affected Party or, in the event of the termination notice being given by the Non-affected Party, the Affected Party may, within one week after receipt of the notice of termination, decide, by a declaration to that effect addressed to the party having given the notice of termination, that the Agreement as a whole is terminated. For the form of the notice of termination and the declaration pursuant to sentence 3, Clause 7 sub-Clause (1), sentence 3 shall apply.

3

(C) In the event of a termination notice being given on the basis of any of the grounds for termination mentioned in sub-Clause (B), Clause 8 shall apply subject to the following:

(a) The Non-affected Party shall be regarded as the Party Entitled to Damages. Clause 12 sub-Clause (4), where agreed, shall not apply.

(b) If both parties are Affected Parties and either of them suffers damage, the party which obtains an overall benefit from the termination or which suffers the least damage shall pay to the other party a sum amounting to half the difference between such benefit and such damage, or between the higher and the lower damage, as the case may be. The payment of such sum shall also be due if the notice of termination in accordance with sub-Clause (B), sentence 1, letter (b) or the declaration in accordance with sub-Clause (B), sentence 3 is made by the Non-affected Party.

(c) For the purpose of calculating its own benefit or damage, each party shall, in the case of (b) above, be considered to be a Party Entitled to Damages.

(D) For any legal dispute or other proceedings before German courts, the Counterparty hereby appoints as authorised agent for service of process the person specified for such purpose below or the person, if any, specified for such purpose in relation to at least one Transaction.

(E) Each party hereby irrevocably undertakes not to claim, and hereby irrevocably waives, with respect to any proceedings regarding itself or its assets, any immunity based on sovereignty or similar rights from legal action, judgment, execution, attachment (whether before or after judgment) or any other proceedings.

(F) Address of the person authorised to accept service of process in the Federal Republic of Germany:



(6) Other Provisions:



Signature(s) on behalf of the Bank:



Signature(s) on behalf of the Counterparty:

4

<u>Schedule 2</u>
Termination Valuation Schedules

**Marktwerte nach Kalendermonaten**

Per 15.09.2008

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/ Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81297 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | -680.338,99 | -40.000,00 | Barrel |
| 81298 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 1.279.774,74 | 40.000,00 | Barrel |
| 81654 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -40.000,00 | Barrel |
| 81906 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 1.424.863,00 | 50.000,00 | Barrel |
| 81908 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | -753.015,43 | -50.000,00 | Barrel |
| 81910 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -50.000,00 | Barrel |
| 83043 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 1.206.700,50 | 75.000,00 | Barrel |
| 83044 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -75.000,00 | Barrel |
| 83049 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -75.000,00 | Barrel |
| 83063 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 1.168.486,47 | 75.000,00 | Barrel |
| 83728 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 620.395,42 | 40.000,00 | Barrel |
| 83732 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | -60.122,80 | -40.000,00 | Barrel |
| 83778 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -40.000,00 | Barrel |
| 83779 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 1.189.466,72 | 75.000,00 | Barrel |
| 83780 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -75.000,00 | Barrel |
| 84000 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 1.462.959,28 | 75.000,00 | Barrel |
| 84040 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | -294.059,57 | -75.000,00 | Barrel |
| 84041 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -75.000,00 | Barrel |
| 84937 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 788.594,06 | 75.000,00 | Barrel |
| 84938 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | 0,00 | -75.000,00 | Barrel |
| 84939 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -75.000,00 | Barrel |
| 84940 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 788.594,06 | 75.000,00 | Barrel |


Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 84941 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | 0,00 | -75.000,00 | Barrel |
| 84942 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Put | Verkauf | 0,00 | -75.000,00 | Barrel |
| 87335 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | -71.244,15 | -2.500,00 | Barrel |
| 87336 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Kauf | 37.650,77 | 2.500,00 | Barrel |
| 87337 | 01.09.2008 | 30.09.2008 | BNT IPE 00SF | Call | Verkauf | -80.859,58 | -3.500,00 | Barrel |
| | | | | Summe 09.2008 | | | 8.027.864,48 | |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/ Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81297 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -548.349,95 | -40.000,00 | Barrel |
| 81298 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 1.129.892,55 | 40.000,00 | Barrel |
| 81654 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,01 | -40.000,00 | Barrel |
| 81906 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 1.238.352,24 | 50.000,00 | Barrel |
| 81908 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -599.895,84 | -50.000,00 | Barrel |
| 81910 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,06 | -50.000,00 | Barrel |
| 83043 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 966.864,12 | 75.000,00 | Barrel |
| 83044 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,09 | -75.000,00 | Barrel |
| 83049 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,09 | -75.000,00 | Barrel |
| 83063 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 933.456,50 | 75.000,00 | Barrel |
| 83779 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 951.745,40 | 75.000,00 | Barrel |
| 83780 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,09 | -75.000,00 | Barrel |
| 84000 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 1.200.383,23 | 75.000,00 | Barrel |
| 84040 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -328.386,98 | -75.000,00 | Barrel |
| 84041 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,09 | -75.000,00 | Barrel |
| 84937 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 628.859,62 | 75.000,00 | Barrel |
| 84938 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -113.418,79 | -75.000,00 | Barrel |
| 84939 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,09 | -75.000,00 | Barrel |
| 84940 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 628.859,62 | 75.000,00 | Barrel |
| 84941 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -113.418,79 | -75.000,00 | Barrel |
| 84942 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Put | Verkauf | -0,09 | -75.000,00 | Barrel |
| 86944 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 38.375,21 | 75.000,00 | Barrel |
| 86945 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -743,56 | -75.000,00 | Barrel |
| 87335 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -61.917,61 | -2.500,00 | Barrel |
| 87336 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Kauf | 29.994,79 | 2.500,00 | Barrel |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 87337 | 01.10.2008 | 31.10.2008 | BNT IPE 00SF | Call | Verkauf | -68.074,14 | -3.500,00 | Barrel |
| | | | Summe 10.2008 | | | 5.912.577,01 | | |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81297 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -634.874,10 | -40.000,00 | Barrel |
| 81298 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 1.186.804,61 | 40.000,00 | Barrel |
| 81654 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -18,01 | -40.000,00 | Barrel |
| 81906 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 1.313.418,14 | 50.000,00 | Barrel |
| 81908 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -715.568,86 | -50.000,00 | Barrel |
| 81910 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -50,10 | -50.000,00 | Barrel |
| 83043 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 1.134.454,31 | 75.000,00 | Barrel |
| 83044 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -75,15 | -75.000,00 | Barrel |
| 83049 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -75,15 | -75.000,00 | Barrel |
| 83063 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 1.103.994,64 | 75.000,00 | Barrel |
| 83173 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 1.208.894,85 | 75.000,00 | Barrel |
| 83174 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -75,15 | -75.000,00 | Barrel |
| 83779 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 1.120.668,28 | 75.000,00 | Barrel |
| 83780 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -75,15 | -75.000,00 | Barrel |
| 84000 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 1.348.343,45 | 75.000,00 | Barrel |
| 84040 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -531.713,54 | -75.000,00 | Barrel |
| 84041 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -75,15 | -75.000,00 | Barrel |
| 84937 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 824.581,19 | 75.000,00 | Barrel |
| 84938 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -276.619,50 | -75.000,00 | Barrel |
| 84939 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -75,15 | -75.000,00 | Barrel |
| 84940 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 824.581,19 | 75.000,00 | Barrel |
| 84941 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -276.619,50 | -75.000,00 | Barrel |
| 84942 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Put | Verkauf | -75,15 | -75.000,00 | Barrel |
| 87335 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -65.670,91 | -2.500,00 | Barrel |
| 87336 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 35.778,44 | 2.500,00 | Barrel |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 87337 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -74.145,79 | -3.500,00 | Barrel |
| 87503 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Kauf | 44.006,16 | 50.000,00 | Barrel |
| 87504 | 01.11.2008 | 30.11.2008 | BNT IPE 00SF | Call | Verkauf | -4.587,31 | -50.000,00 | Barrel |
| | | | | | Summe 11.2008 | | 7.565.131,60 | |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81297 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -694.266,34 | -40.000,00 | Barrel |
| 81298 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 1.224.309,08 | 40.000,00 | Barrel |
| 81654 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -189,73 | -40.000,00 | Barrel |
| 81906 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 1.364.938,48 | 50.000,00 | Barrel |
| 81908 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -793.681,22 | -50.000,00 | Barrel |
| 81910 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -426,10 | -50.000,00 | Barrel |
| 83043 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 1.248.614,60 | 75.000,00 | Barrel |
| 83044 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -639,15 | -75.000,00 | Barrel |
| 83049 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -639,15 | -75.000,00 | Barrel |
| 83063 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 1.219.663,19 | 75.000,00 | Barrel |
| 83173 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 1.319.323,78 | 75.000,00 | Barrel |
| 83174 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -639,15 | -75.000,00 | Barrel |
| 83779 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 1.235.513,04 | 75.000,00 | Barrel |
| 83780 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -639,15 | -75.000,00 | Barrel |
| 84000 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 1.451.767,21 | 75.000,00 | Barrel |
| 84040 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -665.110,78 | -75.000,00 | Barrel |
| 84041 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -639,15 | -75.000,00 | Barrel |
| 84937 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 952.603,28 | 75.000,00 | Barrel |
| 84938 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -397.040,95 | -75.000,00 | Barrel |
| 84939 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -639,15 | -75.000,00 | Barrel |
| 84940 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 952.603,28 | 75.000,00 | Barrel |
| 84941 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -397.040,95 | -75.000,00 | Barrel |
| 84942 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Put | Verkauf | -639,15 | -75.000,00 | Barrel |
| 87335 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -68.246,92 | -2.500,00 | Barrel |
| 87336 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Kauf | 39.684,06 | 2.500,00 | Barrel |

20.01.2009 17:09:50
Marktwerte nach Kalendermonaten 601800
X-map F1 Bericht Page 7 of 28

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 87337 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -78.438,30 | -3.500,00 | Barrel |
| 87377 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -225.421,71 | -10.000,00 | Barrel |
| 87379 | 01.12.2008 | 31.12.2008 | BNT IPE 00SF | Call | Verkauf | -108.364,99 | -5.000,00 | Barrel |
| | | | | | Summe  12.2008 | 7.576.317,94 | | |

Luftansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81297 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -744.992,90 | -40.000,00 | Barrel |
| 81298 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.257.453,04 | 40.000,00 | Barrel |
| 81654 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -692,95 | -40.000,00 | Barrel |
| 81906 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.410.775,07 | 50.000,00 | Barrel |
| 81908 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -859.772,02 | -50.000,00 | Barrel |
| 81910 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -1.391,81 | -50.000,00 | Barrel |
| 83043 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.345.675,15 | 75.000,00 | Barrel |
| 83044 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 83049 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 83063 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.317.766,44 | 75.000,00 | Barrel |
| 83173 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.413.783,80 | 75.000,00 | Barrel |
| 83174 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 83306 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -662.014,07 | -75.000,00 | Barrel |
| 83307 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 83308 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.724.037,83 | 75.000,00 | Barrel |
| 83779 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.333.047,32 | 75.000,00 | Barrel |
| 83780 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 84000 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.541.242,54 | 75.000,00 | Barrel |
| 84040 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -775.913,81 | -75.000,00 | Barrel |
| 84041 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 84937 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.059.171,70 | 75.000,00 | Barrel |
| 84938 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -501.125,36 | -75.000,00 | Barrel |
| 84939 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 84940 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 1.059.171,70 | 75.000,00 | Barrel |
| 84941 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -501.125,36 | -75.000,00 | Barrel |

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 84942 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Verkauf | -2.087,72 | -75.000,00 | Barrel |
| 85843 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Put | Kauf | 2.087,72 | 75.000,00 | Barrel |
| 87335 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -70.538,75 | -2.500,00 | Barrel |
| 87336 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 42.988,60 | 2.500,00 | Barrel |
| 87337 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -82.215,11 | -3.500,00 | Barrel |
| 87369 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -198.198,64 | -7.500,00 | Barrel |
| 87370 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 116.457,41 | 7.500,00 | Barrel |
| 87373 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -86.201,89 | -3.750,00 | Barrel |
| 87374 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Kauf | 33.100,70 | 3.750,00 | Barrel |
| 87377 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -236.165,05 | -10.000,00 | Barrel |
| 87379 | 01.01.2009 | 31.01.2009 | BNT IPE 00SF | Call | Verkauf | -113.895,51 | -5.000,00 | Barrel |

Summe  01.2009

8.805.814,03

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81297 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -782.846,51 | -40.000,00 | Barrel |
| 81298 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.282.009,07 | 40.000,00 | Barrel |
| 81654 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -1.478,40 | -40.000,00 | Barrel |
| 81906 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.445.086,15 | 50.000,00 | Barrel |
| 81908 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -908.988,99 | -50.000,00 | Barrel |
| 81910 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -2.789,55 | -50.000,00 | Barrel |
| 83043 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.418.030,68 | 75.000,00 | Barrel |
| 83044 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 83049 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 83063 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.390.860,24 | 75.000,00 | Barrel |
| 83173 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.484.296,84 | 75.000,00 | Barrel |
| 83174 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 83306 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -744.639,43 | -75.000,00 | Barrel |
| 83307 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 83308 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.785.850,57 | 75.000,00 | Barrel |
| 83733 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.447.684,40 | 75.000,00 | Barrel |
| 83734 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 84000 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.608.205,37 | 75.000,00 | Barrel |
| 84040 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -858.687,81 | -75.000,00 | Barrel |
| 84041 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 84937 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.138.332,04 | 75.000,00 | Barrel |
| 84938 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -580.979,27 | -75.000,00 | Barrel |
| 84939 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 84940 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 1.138.332,04 | 75.000,00 | Barrel |
| 84941 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -580.979,27 | -75.000,00 | Barrel |

 Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 84942 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -4.184,33 | -75.000,00 | Barrel |
| 85843 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Kauf | 4.184,33 | 75.000,00 | Barrel |
| 86946 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 580.979,27 | 75.000,00 | Barrel |
| 86947 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -203.299,29 | -75.000,00 | Barrel |
| 86948 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Verkauf | -57.921,30 | -75.000,00 | Barrel |
| 86949 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Put | Kauf | 20.189,75 | 75.000,00 | Barrel |
| 87335 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -72.254,31 | -2.500,00 | Barrel |
| 87336 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 45.449,45 | 2.500,00 | Barrel |
| 87337 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -85.050,63 | -3.500,00 | Barrel |
| 87369 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -203.681,65 | -7.500,00 | Barrel |
| 87370 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 124.146,92 | 7.500,00 | Barrel |
| 87373 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -89.292,53 | -3.750,00 | Barrel |
| 87374 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Kauf | 37.231,97 | 3.750,00 | Barrel |
| 87377 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -244.231,45 | -10.000,00 | Barrel |
| 87379 | 01.02.2009 | 28.02.2009 | BNT IPE 00SF | Call | Verkauf | -118.045,50 | -5.000,00 | Barrel |

**Summe  02.2009**                                                                        **9.382.228,57**

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81297 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -811.755,85 | -40.000,00 | Barrel |
| 81298 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.299.449,64 | 40.000,00 | Barrel |
| 81654 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -2.517,15 | -40.000,00 | Barrel |
| 81906 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.470.130,61 | 50.000,00 | Barrel |
| 81908 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -946.736,04 | -50.000,00 | Barrel |
| 81910 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -4.553,45 | -50.000,00 | Barrel |
| 83043 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.473.402,60 | 75.000,00 | Barrel |
| 83044 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 83049 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 83063 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.446.858,40 | 75.000,00 | Barrel |
| 83173 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.538.111,57 | 75.000,00 | Barrel |
| 83174 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 83306 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -810.098,57 | -75.000,00 | Barrel |
| 83307 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 83308 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.832.330,71 | 75.000,00 | Barrel |
| 83353 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 2.077.321,48 | 75.000,00 | Barrel |
| 83354 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -1.174.622,63 | -75.000,00 | Barrel |
| 83355 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 83733 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.502.364,27 | 75.000,00 | Barrel |
| 83734 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 84000 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.659.030,51 | 75.000,00 | Barrel |
| 84040 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -923.708,55 | -75.000,00 | Barrel |
| 84041 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 84937 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.199.603,63 | 75.000,00 | Barrel |
| 84938 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -645.323,06 | -75.000,00 | Barrel |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 84939 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 84940 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 1.199.603,63 | 75.000,00 | Barrel |
| 84941 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -645.323,06 | -75.000,00 | Barrel |
| 84942 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -6.830,18 | -75.000,00 | Barrel |
| 85843 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Kauf | 6.830,18 | 75.000,00 | Barrel |
| 86946 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 645.323,06 | 75.000,00 | Barrel |
| 86947 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -249.462,87 | -75.000,00 | Barrel |
| 86948 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Verkauf | -73.501,73 | -75.000,00 | Barrel |
| 86949 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Put | Kauf | 28.221,93 | 75.000,00 | Barrel |
| 87335 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -73.506,53 | -2.500,00 | Barrel |
| 87336 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 47.336,80 | 2.500,00 | Barrel |
| 87337 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -87.178,09 | -3.500,00 | Barrel |
| 87369 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -207.732,15 | -7.500,00 | Barrel |
| 87370 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 130.073,18 | 7.500,00 | Barrel |
| 87371 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -195.294,01 | -7.500,00 | Barrel |
| 87372 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 113.232,86 | 7.500,00 | Barrel |
| 87373 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -91.616,54 | -3.750,00 | Barrel |
| 87374 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 40.504,93 | 3.750,00 | Barrel |
| 87375 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -207.732,15 | -7.500,00 | Barrel |
| 87376 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 117.462,26 | 7.500,00 | Barrel |
| 87377 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -250.280,08 | -10.000,00 | Barrel |
| 87378 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -268.834,25 | -11.250,00 | Barrel |
| 87379 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -121.168,84 | -5.000,00 | Barrel |
| 87380 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Verkauf | -348.722,45 | -30.000,00 | Barrel |
| 87381 | 01.03.2009 | 31.03.2009 | BNT IPE 00SF | Call | Kauf | 179.102,66 | 30.000,00 | Barrel |

⊘ Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| | | | Summe  03.2009 | | | 9.805.155,23 | | |



| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 81906 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.494.116,53 | 50.000,00 | Barrel |
| 81908 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -980.904,77 | -50.000,00 | Barrel |
| 81910 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -6.537,36 | -50.000,00 | Barrel |
| 83043 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.523.682,67 | 75.000,00 | Barrel |
| 83044 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 83049 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 83063 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.497.626,84 | 75.000,00 | Barrel |
| 83173 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.587.173,89 | 75.000,00 | Barrel |
| 83174 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 83306 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -868.179,85 | -75.000,00 | Barrel |
| 83307 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 83308 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.875.582,99 | 75.000,00 | Barrel |
| 83353 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 2.115.729,13 | 75.000,00 | Barrel |
| 83354 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -1.229.827,10 | -75.000,00 | Barrel |
| 83355 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 83733 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.552.103,73 | 75.000,00 | Barrel |
| 83734 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 84000 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.705.740,37 | 75.000,00 | Barrel |
| 84040 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -981.447,53 | -75.000,00 | Barrel |
| 84041 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 84937 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.254.457,49 | 75.000,00 | Barrel |
| 84938 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -702.564,73 | -75.000,00 | Barrel |
| 84939 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 84940 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 1.254.457,49 | 75.000,00 | Barrel |
| 84941 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -702.564,73 | -75.000,00 | Barrel |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/ Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 84942 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -9.806,05 | -75.000,00 | Barrel |
| 85843 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Kauf | 9.806,05 | 75.000,00 | Barrel |
| 86946 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 702.564,73 | 75.000,00 | Barrel |
| 86947 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -292.463,28 | -75.000,00 | Barrel |
| 86948 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Verkauf | -87.928,50 | -75.000,00 | Barrel |
| 86949 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Put | Kauf | 36.220,33 | 75.000,00 | Barrel |
| 87335 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -74.705,83 | -2.500,00 | Barrel |
| 87336 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 49.045,24 | 2.500,00 | Barrel |
| 87337 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -89.163,12 | -3.500,00 | Barrel |
| 87369 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -211.572,91 | -7.500,00 | Barrel |
| 87370 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 135.403,44 | 7.500,00 | Barrel |
| 87371 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -199.378,63 | -7.500,00 | Barrel |
| 87372 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 118.809,28 | 7.500,00 | Barrel |
| 87373 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -93.779,15 | -3.750,00 | Barrel |
| 87374 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 43.408,99 | 3.750,00 | Barrel |
| 87375 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -211.572,91 | -7.500,00 | Barrel |
| 87376 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Kauf | 122.982,71 | 7.500,00 | Barrel |
| 87377 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -255.927,61 | -10.000,00 | Barrel |
| 87378 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -275.442,58 | -11.250,00 | Barrel |
| 87379 | 01.04.2009 | 30.04.2009 | BNT IPE 00SF | Call | Verkauf | -124.072,09 | -5.000,00 | Barrel |

**Summe  04.2009**                                                                          **9.602.624,81**

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 83043 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.571.017,93 | 75.000,00 | Barrel |
| 83044 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 83049 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 83063 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.545.376,06 | 75.000,00 | Barrel |
| 83173 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.633.475,38 | 75.000,00 | Barrel |
| 83174 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 83306 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -922.155,73 | -75.000,00 | Barrel |
| 83307 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 83308 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.916.911,51 | 75.000,00 | Barrel |
| 83353 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 2.152.842,69 | 75.000,00 | Barrel |
| 83354 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -1.281.326,66 | -75.000,00 | Barrel |
| 83355 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 83733 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.598.980,37 | 75.000,00 | Barrel |
| 83734 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 84000 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.750.037,27 | 75.000,00 | Barrel |
| 84040 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -1.035.106,81 | -75.000,00 | Barrel |
| 84041 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 84937 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.305.660,72 | 75.000,00 | Barrel |
| 84938 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -755.903,53 | -75.000,00 | Barrel |
| 84939 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 84940 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 1.305.660,72 | 75.000,00 | Barrel |
| 84941 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -755.903,53 | -75.000,00 | Barrel |
| 84942 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -13.102,64 | -75.000,00 | Barrel |
| 85843 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Kauf | 13.102,64 | 75.000,00 | Barrel |
| 86946 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 755.903,53 | 75.000,00 | Barrel |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/ Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 86947 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -333.988,38 | -75.000,00 | Barrel |
| 86948 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Verkauf | -101.740,26 | -75.000,00 | Barrel |
| 86949 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Put | Kauf | 44.307,21 | 75.000,00 | Barrel |
| 87371 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -203.303,05 | -7.500,00 | Barrel |
| 87372 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 124.006,58 | 7.500,00 | Barrel |
| 87373 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -95.845,58 | -3.750,00 | Barrel |
| 87374 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 46.107,79 | 3.750,00 | Barrel |
| 87375 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -215.284,27 | -7.500,00 | Barrel |
| 87376 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Kauf | 128.132,67 | 7.500,00 | Barrel |
| 87377 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -261.334,87 | -10.000,00 | Barrel |
| 87378 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -281.745,69 | -11.250,00 | Barrel |
| 87379 | 01.05.2009 | 31.05.2009 | BNT IPE 00SF | Call | Verkauf | -126.844,36 | -5.000,00 | Barrel |

Summe  05.2009          9.403.116,58

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 83043 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.612.144,93 | 75.000,00 | Barrel |
| 83044 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 83049 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 83063 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.586.867,45 | 75.000,00 | Barrel |
| 83173 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.673.693,46 | 75.000,00 | Barrel |
| 83174 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 83306 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Verkauf | -969.410,20 | -75.000,00 | Barrel |
| 83307 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 83308 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.952.757,57 | 75.000,00 | Barrel |
| 83353 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 2.184.955,98 | 75.000,00 | Barrel |
| 83354 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Verkauf | -1.326.151,14 | -75.000,00 | Barrel |
| 83355 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 83733 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.639.703,98 | 75.000,00 | Barrel |
| 83734 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 84000 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.788.494,52 | 75.000,00 | Barrel |
| 84040 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Verkauf | -1.081.965,36 | -75.000,00 | Barrel |
| 84041 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 84937 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.350.217,91 | 75.000,00 | Barrel |
| 84938 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Verkauf | -802.860,00 | -75.000,00 | Barrel |
| 84939 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 84940 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 1.350.217,91 | 75.000,00 | Barrel |
| 84941 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Verkauf | -802.860,00 | -75.000,00 | Barrel |
| 84942 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Verkauf | -16.504,29 | -75.000,00 | Barrel |
| 85843 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Put | Kauf | 16.504,29 | 75.000,00 | Barrel |
| 86946 | 01.06.2009 | 30.06.2009 | BNT IPE 00SF | Call | Kauf | 802.860,00 | 75.000,00 | Barrel |

 Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/ Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 83043 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 1.647.578,87 | 75.000,00 | Barrel |
| 83044 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 83049 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 83063 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 1.622.615,48 | 75.000,00 | Barrel |
| 83173 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 1.708.344,65 | 75.000,00 | Barrel |
| 83174 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 83353 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 2.212.614,23 | 75.000,00 | Barrel |
| 83354 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -1.364.792,69 | -75.000,00 | Barrel |
| 83355 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 83733 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 1.674.790,41 | 75.000,00 | Barrel |
| 83734 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 84000 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 1.821.630,62 | 75.000,00 | Barrel |
| 84040 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -1.122.444,51 | -75.000,00 | Barrel |
| 84041 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 84937 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 1.388.624,95 | 75.000,00 | Barrel |
| 84938 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -843.662,89 | -75.000,00 | Barrel |
| 84939 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 84940 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 1.388.624,95 | 75.000,00 | Barrel |
| 84941 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -843.662,89 | -75.000,00 | Barrel |
| 84942 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -19.848,39 | -75.000,00 | Barrel |
| 86946 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 843.662,89 | 75.000,00 | Barrel |
| 86947 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -405.681,34 | -75.000,00 | Barrel |
| 86948 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Verkauf | -125.934,54 | -75.000,00 | Barrel |
| 86949 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Put | Kauf | 59.315,45 | 75.000,00 | Barrel |
| 87375 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -221.261,42 | -7.500,00 | Barrel |

 Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 87376 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Kauf | 136.479,27 | 7.500,00 | Barrel |
| 87378 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -291.926,04 | -11.250,00 | Barrel |
| 87379 | 01.07.2009 | 31.07.2009 | BNT IPE 00SF | Call | Verkauf | -131.321,23 | -5.000,00 | Barrel |
| | | | Summe  07.2009 | | | | 8.994.807,10 | |

(·) Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 83173 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 1.737.801,20 | 75.000,00 | Barrel |
| 83174 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Verkauf | -23.015,07 | -75.000,00 | Barrel |
| 83353 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 2.235.998,45 | 75.000,00 | Barrel |
| 83354 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -1.397.733,29 | -75.000,00 | Barrel |
| 83355 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Verkauf | -23.015,07 | -75.000,00 | Barrel |
| 83733 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 1.704.624,61 | 75.000,00 | Barrel |
| 83734 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Verkauf | -23.015,07 | -75.000,00 | Barrel |
| 84000 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 1.849.773,72 | 75.000,00 | Barrel |
| 84040 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -1.157.052,20 | -75.000,00 | Barrel |
| 84041 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Verkauf | -23.015,07 | -75.000,00 | Barrel |
| 84937 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 1.421.358,27 | 75.000,00 | Barrel |
| 84938 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -878.749,84 | -75.000,00 | Barrel |
| 84939 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Verkauf | -23.015,07 | -75.000,00 | Barrel |
| 84940 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 1.421.358,27 | 75.000,00 | Barrel |
| 84941 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -878.749,84 | -75.000,00 | Barrel |
| 84942 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Verkauf | -23.015,07 | -75.000,00 | Barrel |
| 86946 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 878.749,84 | 75.000,00 | Barrel |
| 86947 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -435.425,60 | -75.000,00 | Barrel |
| 86948 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Verkauf | -136.045,61 | -75.000,00 | Barrel |
| 86949 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Put | Kauf | 65.869,04 | 75.000,00 | Barrel |
| 87375 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -223.599,84 | -7.500,00 | Barrel |
| 87376 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Kauf | 139.773,33 | 7.500,00 | Barrel |
| 87378 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -295.923,46 | -11.250,00 | Barrel |
| 87379 | 01.08.2009 | 31.08.2009 | BNT IPE 00SF | Call | Verkauf | -133.078,69 | -5.000,00 | Barrel |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Summe 08.2009 | | |
| | | | | | | 5.780.857,93 | | |
| 83733 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Kauf | 1.725.627,04 | 75.000,00 | Barrel |
| 83734 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Put | Verkauf | -25.444,75 | -75.000,00 | Barrel |
| 84000 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Kauf | 1.869.476,97 | 75.000,00 | Barrel |
| 84040 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Verkauf | -1.181.812,44 | -75.000,00 | Barrel |
| 84041 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Put | Verkauf | -25.444,75 | -75.000,00 | Barrel |
| 84937 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Kauf | 1.444.607,02 | 75.000,00 | Barrel |
| 84938 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Verkauf | -904.061,11 | -75.000,00 | Barrel |
| 84939 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Put | Verkauf | -25.444,75 | -75.000,00 | Barrel |
| 84940 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Kauf | 1.444.607,02 | 75.000,00 | Barrel |
| 84941 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Verkauf | -904.061,11 | -75.000,00 | Barrel |
| 84942 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Put | Verkauf | -25.444,75 | -75.000,00 | Barrel |
| 86946 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Kauf | 904.061,11 | 75.000,00 | Barrel |
| 86947 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Call | Verkauf | -457.342,23 | -75.000,00 | Barrel |
| 86948 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Put | Verkauf | -143.338,57 | -75.000,00 | Barrel |
| 86949 | 01.09.2009 | 30.09.2009 | BNT IPE 00SF | Put | Kauf | 70.715,07 | 75.000,00 | Barrel |
| | | | | | | Summe 09.2009 | | |
| | | | | | | 3.766.699,80 | | |

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 84000 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Kauf | 1.888.318,53 | 75.000,00 | Barrel |
| 84040 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Verkauf | -1.205.586,19 | -75.000,00 | Barrel |
| 84041 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Put | Verkauf | -27.894,91 | -75.000,00 | Barrel |
| 84937 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Kauf | 1.466.888,16 | 75.000,00 | Barrel |
| 84938 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Verkauf | -928.445,16 | -75.000,00 | Barrel |
| 84939 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Put | Verkauf | -27.894,91 | -75.000,00 | Barrel |
| 84940 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Kauf | 1.466.888,16 | 75.000,00 | Barrel |
| 84941 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Verkauf | -928.445,16 | -75.000,00 | Barrel |
| 84942 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Put | Verkauf | -27.894,91 | -75.000,00 | Barrel |
| 86946 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Kauf | 928.445,16 | 75.000,00 | Barrel |
| 86947 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Call | Verkauf | -478.729,76 | -75.000,00 | Barrel |
| 86948 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Put | Verkauf | -150.377,84 | -75.000,00 | Barrel |
| 86949 | 01.10.2009 | 31.10.2009 | BNT IPE 00SF | Put | Kauf | 75.472,92 | 75.000,00 | Barrel |

**Summe  10.2009**                                                                 **2.050.744,06**

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 84937 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Call | Kauf | 1.486.108,51 | 75.000,00 | Barrel |
| 84938 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Call | Verkauf | -949.317,43 | -75.000,00 | Barrel |
| 84939 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Put | Verkauf | -29.891,59 | -75.000,00 | Barrel |
| 84940 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Call | Kauf | 1.486.108,51 | 75.000,00 | Barrel |
| 84941 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Call | Verkauf | -949.317,43 | -75.000,00 | Barrel |
| 84942 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Put | Verkauf | -29.891,59 | -75.000,00 | Barrel |
| 86946 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Call | Kauf | 949.317,43 | 75.000,00 | Barrel |
| 86947 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Call | Verkauf | -497.067,50 | -75.000,00 | Barrel |
| 86948 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Put | Verkauf | -155.777,76 | -75.000,00 | Barrel |
| 86949 | 01.11.2009 | 30.11.2009 | BNT IPE 00SF | Put | Kauf | 79.222,73 | 75.000,00 | Barrel |

Summe  11.2009                                                   1.389.493,87

Lufthansa

| Ordernummer | Laufzeitbeginn | Laufzeitende | Commodity | Options-typ | Kauf/Verkauf | Mark to market | Menge | Einheit |
|---|---|---|---|---|---|---|---|---|
| 86946 | 01.12.2009 | 31.12.2009 | BNT IPE 00SF | Call | Kauf | 968.195,72 | 75.000,00 | Barrel |
| 86947 | 01.12.2009 | 31.12.2009 | BNT IPE 00SF | Call | Verkauf | -513.917,14 | -75.000,00 | Barrel |
| 86948 | 01.12.2009 | 31.12.2009 | BNT IPE 00SF | Put | Verkauf | -160.730,60 | -75.000,00 | Barrel |
| 86949 | 01.12.2009 | 31.12.2009 | BNT IPE 00SF | Put | Kauf | 82.706,50 | 75.000,00 | Barrel |

**Summe  12.2009**                                                                     376.254,48

**Summe über den gesamten Zeitraum**                                          108.202.383,62

**Berichtsparameter**

| | |
|---|---|
| Positionsdatum Handelstag | 15.09.2008 |
| Marktdaten von | 15.09.2008 |
| Kalkulationsdatum | 15.09.2008 |
| Beginn Analysehorizont | 01.01.2008 |
| Taggleiche Fälligkeiten | Ja |
| Null-Bestände | Nein |
| Fällige Bestände | Nein |
| Anleihen über Zinskurven bewerten | Nein |
| Portfolios | MT/ Management Treibstoff |
| Instrumenttypen | Rohwarenoptionen, Rohwarenswaps |
| Handelstag | 01.01.2004 - 31.08.2008 |
| Kontrahenten | Lehman Brothers Commodity Services |
| Kein Szenario ausgewählt | |
| Berechnungszeit | 20.01.2009 17:07 |

 Lufthansa

## BAKER & McKENZIE

**Baker & McKenzie LLP**
1114 Avenue of the Americas
New York, New York 10036, USA

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakernet.com

Asia
Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe &
Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South
America
Bogota
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

May 5, 2009

Matthew J. Sandiford
Tel: +1 212 626 4214
Matthew.J.Sandiford@bakernet.com

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

**Via Federal Express**

RE:    Deutsche Lufthansa AG Proofs of Claim

To Whom it May Concern:

Please find enclosed proofs of claim for Deutsche Lufthansa Aktiengesellschaft against Lehman Brothers Holdings Inc. (Case Number 08-13555) and Lehman Brothers Commodity Services Inc.  (Case Number 08-13885) in their bankruptcy proceedings in the Southern District of New York.

Sincerely,

Matthew J. Sandiford

Enclosures

RECEIVED

MAY 05 2009

BY: _____

## **EXHIBIT B**

### **EVIDENCE OF TRANSFER OF CLAIM**

Execution Version

**Counterparty/Guarantor in US Insolvency Proceedings**

**Form of Notice to be Filed with Bankruptcy Court**

EVIDENCE OF TRANSFER OF CLAIM

TO: THE DEBTOR AND THE BANKRUPTCY COURT

For value received, the adequacy and sufficiency of which are hereby acknowledged, Deutsche Lufthansa Aktiengesellschaft (the "**Assignor**") hereby unconditionally and irrevocably sells, transfers and assigns to Goldman Sachs Lending Partners LLC (the "**Assignee**") all right, title, interest, claims and causes of action in and to, or arising under or in connection with, the Assignor's general unsecured claim (as such term is defined in Section 101(5) of the U.S. Bankruptcy Code) against Lehman Brothers Commodity Services Inc. (the "**Debtor**"), the debtor and debtor-in-possession in the Chapter 11 reorganization case entitled, In re Lehman Brothers Holdings Inc., Chapter 11, Case No. 08-13555 (JMP) (Jointly administered), pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), in the amount of $108,202,383.62 (the "**Claim**").

The Claim number is 14087 (which amends No. 4102).

The Assignor hereby waives any objection to the transfer of the Claim to the Assignee on the books and records of the Debtor and the U.S. Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be prescribed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the U.S. Bankruptcy Code, applicable local bankruptcy rules or applicable law. The Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to the Assignor transferring to the Assignee the Claim and recognizing the Assignee as the sole owner and holder of the Claim. The Assignor further directs each Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Claim, and all payments or distributions of money or property in respect of the Claim, shall be delivered or made to the Assignee.

IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM IS EXECUTED THIS 2 day of October 2009.

Deutsche Lufthansa Aktiengesellschaft

By:

Name:

Title:

Goldman Sachs Lending Partners LLC

By:

Name:

Title:      Mark DeNatale

547451.1/153-05245

## EXHIBIT C

<u>Address for Notices</u>:

Goldman Sachs Lending Partners LLC
30 Hudson Street, 36th Floor
Jersey City, NJ 07302
Fax: 646-769-7700
Group Email: ficc-lstops-ny@gs.com

Financials, Amendments, Credit Documentation, Voting:
Primary Email : gsd.link@gs.com
30 Hudson Street, 36th Floor
Jersey City, NJ 07302
Fax: 212-428-1243
Contact: Andrew Caditz
Phone: 212-357-6240
Email: Andrew.Caditz@gs.com

<u>Wire Instructions</u>:

ABA #: 021000089
BANK NAME: CITIBANK
CITY: NEW YORK
A/C: 30581483
ENTITY NAME: GOLDMAN SACHS LENDING PARTNERS, LLC
Ref: Lehman from Lufthansa
Attn: Bank Loan Operations