**Hearing Date and Time: November 18, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 13, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

---------------------------------------------------------------x

**NOTICE OF MOTION OF THE DEBTORS PURSUANT TO SECTIONS 105(a)**
**AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(a)**
**FOR THE ESTABLISHMENT OF PROCEDURES TO (I) RESTRUCTURE,**
**(II) MAKE NEW OR ADDITIONAL DEBT OR EQUITY INVESTMENTS IN,**
**AND/OR (III) ENTER INTO SETTLEMENTS AND COMPROMISES**
**IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of

October 28, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. and its affiliated debtors in

the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections 105(a) and

363(b) of title 11 of the United States Code and Rule 9019 of the Federal Rules of Bankruptcy

Procedure for establishment of procedures to permit the Debtors to (i) restructure, (ii) make new

or additional debt and/or equity investments in, and/or (iii) enter into settlements and

compromises in connection with existing real estate investments, all as more fully described in

the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge,

at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601,

One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 18, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received no later than **November 13, 2009 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 28, 2009
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                    :
In re                                                               :        **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                        :        **08-13555 (JMP)**
                                                                    :
                                    **Debtors.**                    :        **(Jointly Administered)**
                                                                    :
-------------------------------------------------------------------x

**MOTION OF THE DEBTORS PURSUANT TO SECTIONS 105(a) AND**
**363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(a)**
**FOR THE ESTABLISHMENT OF PROCEDURES TO (I) RESTRUCTURE,**
**(II) MAKE NEW OR ADDITIONAL DEBT OR EQUITY INVESTMENTS**
**IN, AND/OR (III) ENTER INTO SETTLEMENTS AND COMPROMISES**
**IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

                Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), respectfully represent:

**Background**

                1.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

5.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Relief Requested

8.       By this Motion, the Debtors seek authority under sections 105(a) and

363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 to establish procedures by which they

may (i) restructure the terms of, (ii) make new or additional debt and/or equity investments in,

and/or (iii) enter into settlements and compromises in connection with existing commercial

mortgage loans, commercial mezzanine loans, residential mortgage loans, repurchase facilities

and other loans and similar facilities either owned by the Debtors or in which the Debtors have a

direct or indirect debt or equity investment or other interest, in each case directly or indirectly in

or secured by real property or interests therein ("Real Estate Investments").

## The Debtors' Real Estate Lending Business
## and Restructuring of Real Estate Investments

9.       As of September 15, 2008, the Debtors were among the nation's leading

real estate lenders with thousands of Real Estate Investments.  In the ordinary course of their

business prior to the Commencement Date, and in accordance with standard practices in the real

estate lending industry, the Debtors engaged in a variety of activities with respect to Real Estate

Investments, which included, honoring existing funding obligations in the underlying loan and

equity agreements, restructuring existing Real Estate Investments and making new or additional

debt and/or equity investments to borrowers in order preserve the value of the Debtors' interests

in existing loans and equity investments.

10.       Since the Commencement Date, the Debtors have been reviewing and

assessing their Real Estate Investment positions, and, where appropriate, (i) transferring

commercial and residential real estate loans that may be subject to foreclosure or deeds or

assignments in lieu of foreclosure to non-debtor special purpose entities wholly owned directly

or indirectly by LBHI,[1] (ii) entering into discounted payoff transactions with respect to

commercial and residential mortgage loans and modifying the terms of residential mortgage

loans,[2] and (iii) seeking Court approval to restructure certain financial and other non-monetary

terms of certain Real Estate Investments.  For example, the Debtors have sought and received

approval from this Court to restructure individual Real Estate Investments, including loan

agreements with Archstone-Smith Operating Trust [D.I. No. 2677], TPG-Austin Portfolio

Holdings LLC [D.I. No. 3222], and affiliates of Broadway Partners Fund Manager, LLC [D.I.

No. 4236].  In evaluating the appropriate course of action in all these areas, the Debtors have

provided regular and fulsome updates and abundant information to the advisors to the Creditors'

Committee and have been mindful that the Bankruptcy Code requires that they obtain court

approval of any transactions outside the ordinary course of business as well as compromises and

settlements of claims.

      11.    Many Real Estate Investments are not performing, in large measure, due

to the prevailing economic conditions.  As is customary in the lending industry, the Debtors, in

their capacity as lenders or equity holders, may determine in their reasonable business judgment

that circumstances warrant restructuring the terms of a Real Estate Investment through various

means, including, but not limited to: adjusting interest rates, adjusting the outstanding principal

balance, adjusting amortization, changing payment schedules, changing events of default,

---

[1] On September 24, 2009, the Court entered an *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for the Establishment of Procedures for the Debtors to Transfer Their Interests in Respect of Residential and Commercial Loans Subject to Foreclosure to Wholly-Owned Non-Debtor Subsidiaries* (the "SPE Foreclosure Procedures Order") [D.I. No. 5272].

[2] On September 16, 2009, the Court entered an *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 Authorizing the Establishment of Procedures for the Debtors to Compromise Claims of the Debtors in Respect of Real Estate Loans* (the "Discounted Payoff Procedures Order") [D.I. No. 5187].

releasing or obtaining collateral, granting releases of certain of the Debtors' rights as against

borrowers (or their affiliates) or guarantors, entering into new intercreditor agreements, adjusting

covenants, obtaining equity interests in borrowers, granting forbearances, granting guarantees

and/or indemnities, voting on plans of reorganization of borrowers, and/or negotiating,

amending, or modifying any of the terms and conditions of the underlying loan or equity

agreement (a "Restructuring").  In addition to, and often in connection with, Restructurings, the

Debtors may determine in their reasonable business judgment that circumstances warrant (i)

making additional or new debt and/or equity investments beyond existing commitments in

connection with an existing Real Estate Investment ("New Investments"), and/or (ii) entering

into settlements and compromises with borrowers, lenders, investors, business partners, joint

ventures, brokers, and any other person with an interest in, or in the proceeds of, a Real Estate

Investment of equity interests and/or claims which include, without limitation, the forgiveness of

debt and conveyance of direct or indirect interests in real property, including, without limitation,

the release of collateral, borrowers, guarantors, and/or sponsors ("Settlements" and collectively

with Restructurings and New Investments, "Real Estate Loan Transactions").

            12.      Restructurings, where appropriate, enable the Debtors to maximize the

value of their existing Real Estate Investments and, concomitantly, recoveries for their estates by

ensuring a greater likelihood of recovery on the original investment.  In some cases, a

Restructuring may give the Debtors operational control over the real property securing the Real

Estate Investment.  To the extent the Restructuring involves a New Investment, the Restructuring

may help salvage a profitable investment that would have otherwise been lost.  Making a New

Investment on an existing Real Estate Investment can be an effective manner in which to protect

against asset loss and value deterioration.  In addition, Settlements enable the Debtors to

effectively resolve claims arising out of their Real Estate Investments that may otherwise require costly and time-consuming foreclosure proceedings and/or litigation.  Settlements are often a critical component of Restructuring transactions.

13.    Prior to the Commencement Date, the Debtors undertook Real Estate Loan Transactions in the ordinary course of their business.  The Debtors propose to continue to undertake these activities with respect to Real Estate Investments in a manner substantially consistent with their prepetition practices, subject to the procedures set forth in this Motion, and without the need for obtaining Court approval of each such transaction.  While the Debtors believe that Restructurings and New Investments constitute transactions in the ordinary course of the Debtors' business not requiring notice or a hearing under section 363(c) of the Bankruptcy Code, it is out of an abundance of caution and for the purpose of providing full disclosure to the estates' creditors that the Debtors filed this motion.

14.    In order to permit the Debtors to act expeditiously with respect to Real Estate Loan Transactions, the Debtors submit that it is in best interests of the Debtors and their creditors that the Debtors be authorized to enter into Real Estate Loan Transactions in accordance with the procedures set forth herein.  Moreover, the flexibility requested herein is also in the interests of the Debtors' borrowers, and the credit markets in general, because it will limit the delays attendant to obtaining court approval for many of the dozens of Real Estate Loan Transactions in which the Debtors are or will be involved in the coming months.

15.    Absent the relief requested in this Motion, the Debtors may be required to seek specific Court approval prior to each Real Estate Loan Transaction.  Given the number of Real Estate Investments the Debtors have—numbering in the thousands—filing individual pleadings with respect to each Real Estate Loan Transaction, sending notice of each proposed

Real Estate Loan Transaction to every party entitled to receive notice in these cases, and holding individual hearings to approve same would be needlessly expensive, time-consuming, cumbersome and highly inefficient.

16.    Accordingly, this Motion sets forth various guidelines and procedures the Debtors propose to implement with respect to Real Estate Loan Transactions.  These procedures, in large part, have been developed over several months together with the advisors to the Creditors' Committee.  The Debtors believe that it would be far more efficient and cost effective for their estates and creditors if they were authorized to undertake Real Estate Loan Transactions under the terms and conditions outlined in this Motion.

17.    The Debtors seek authorization to implement the following procedures to enter into Real Estate Loan Transactions:

a.    The Debtors may enter into and consummate a Restructuring or Settlement that involves a Real Estate Investment having an aggregate Mark-to-Market Carrying Value[3] of up to and including $10 million without further order of the Court or notice to or approval of any party.

b.    The Debtors may enter into and consummate Real Estate Loan Transactions that (i) involve (x) a Real Estate Investment having an aggregate Mark-to-Market Carrying Value of greater than $10 million but less than or equal to $25 million, and/or (y) the Debtors making a New Investment in an amount up to and including $5 million, and (ii) do not also fall within the parameters set forth below in clauses (c) or (d) of these procedures, without further order of the Court or approval of or notice to any other party; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transactions as soon as practicable but in no event later than promptly following the closing of such transactions.  If a Real Estate Loan Transaction falls within the

---

[3] "Mark-to-Market Carrying Value" as used herein shall mean the mark-to-market carrying value on the Debtors' records of any Real Estate Investment as of December 31, 2008, or as otherwise agreed to by the Creditors' Committee; provided however, if (i) the mark-to-market carrying value of any Real Estate Investment on the Debtors' records as of December 31, 2008 is less than or equal to 50% of mark-to-market carrying value of such Real Estate Investment on the Debtors' records as of September 17, 2008, and (ii) the mark-to-market carrying value of any Real Estate Investment is not otherwise agreed to by the Creditors' Committee, the Mark-to-Market Carrying Value for the purposes of this Motion shall be the mark-to-market carrying value of such Real Estate Investment on the Debtors' records as of September 17, 2008.

parameters set forth within both clauses (b) and (c) or both clauses (b) and (d) of these procedures, the provisions of clause (c) or (d), respectively, shall govern.

c.      If a Real Estate Loan Transaction (i) involves (w) a Real Estate Investment having an aggregate Mark-to-Market Carrying Value greater than $25 million but less than or equal to $100 million, (x) the Debtors making a New Investment in an amount greater than $5 million but less than or equal to $25 million, (y) a Restructuring of the Debtors' debt or equity position in a Real Estate Investment or a Settlement resulting in a reduction in the aggregate value of the Real Estate Investment to a value that is less than 50% of the aggregate Mark-to-Market Carrying Value of the Real Estate Investment, and/or (z) any party to the Real Estate Loan Transaction being either a person employed by the Debtors at any time on or after September 15, 2007 or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Real Estate Loan Transaction, and (ii) does not also fall within the parameters set forth in clause (d) of these procedures, the Debtors will provide to the Creditors' Committee a summary of the proposed Real Estate Loan Transaction identifying the salient terms of the proposed Real Estate Loan Transaction (the "Real Estate Loan Transaction Summary"). The Creditors' Committee will be required to submit any objections to a Real Estate Loan Transaction identified in a Real Estate Loan Transaction Summary so as to be received by the Debtors on or before ten (10) business days after service of such Real Estate Loan Transaction Summary; provided, however, that if the Creditors' Committee requests additional information regarding a Real Estate Loan Transaction, its objection period shall be suspended until the requested information has been provided.  If the Debtors and the Creditors' Committee are unable to consensually resolve the objection, the Debtors may file a motion with the Court seeking approval of the Real Estate Loan Transaction.  If the Creditors' Committee does not timely object to a Real Estate Loan Transaction, or the Debtors and the Creditors' Committee resolve a timely objection, the Debtors may proceed with the Real Estate Loan Transaction without further order of the Court or notice to or approval of any party.  If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (c) and (d) of these procedures, the provisions of clause (d) shall govern.

d.      The Debtors will be required to file a motion with the Court seeking approval of any Real Estate Loan Transaction that involves (i) a Real Estate Investment having an aggregate Mark-to-Market Carrying Value greater than $100 million, and/or (ii) the Debtors making a New Investment in an amount greater than $25 million.

e.      The Debtors may enter into and consummate any Real Estate Loan Transaction that involves a Real Estate Investment having an aggregate Mark-to-Market Carrying Value of greater than $25 million without further order of the Court or notice to or approval of any party, if the transaction involves only (i) a non-material amendment to or modification of a Real Estate Investment, as

determined by the Debtors after consultation with the Creditors' Committee, and/or (ii) the Debtors making a New Investment in an amount not greater than $5 million; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transaction as soon as practicable but in no event later than promptly following the closing of such transaction.

f.        Real Estate Investments managed by the Debtors that are cross-collateralized or cross-defaulted with each other shall be aggregated for purposes of applying the thresholds set forth in paragraphs (b) through (e) to Real Estate Loan Transactions.

g.        The Debtors ability to carry out the actions set forth in the foregoing procedures shall not override any applicable notice, consent or other rights that any third parties may have pursuant to agreements with the Debtors.

18.        As part of the procedures set forth herein, the Debtors will file with the Court, on a quarterly basis beginning not later than 105 calendar days after entry of an order approving this Motion, a report of all Real Estate Loan Transactions entered into by the Debtors during the prior three calendar months pursuant to these procedures, identifying (i) the number of Real Estate Loan Transactions entered into by the Debtors, (ii) with respect to each Real Estate Loan Transaction, whether such Real Estate Loan Transaction involved a Restructuring, a New Investment, a Settlement, or some combination thereof, (iii) the Mark-to-Market Carrying Value of each Real Estate Investment subject to a Real Estate Loan Transaction, and (iv) to the extent the Real Estate Loan Transaction involved a New Investment, the amount of the New Investment made in connection therewith.

19.        The procedures set forth in this Motion are intended to complement, and not override, the procedures approved by this Court in the SPE Foreclosure Procedures Order and the Discounted Payoff Procedures Order (together, the "Approved Procedures Orders").  To the extent a Real Estate Transaction Loan Transaction proposed to be undertaken pursuant to the procedures set forth in this Motion conflicts with the procedures set forth in either of the

Approved Procedures Orders, the procedures set forth in the Approved Procedures Orders, respectively, shall govern.

## Basis for Relief

20.    This Court has the authority to grant the relief requested in this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code provides that "[t]he [debtor-in-possession] after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." *See* 11 U.S.C. § 363(b)(1); Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction."). The decision to use or sell assets outside the ordinary course of business is based upon the sound business judgment of the debtor. *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 772 F.2d 1063, 1071 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *In re Adelphia Communications Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002).

21.    It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

22.     For the reasons discussed above, the Debtors believe that entering into Restructurings and New Investments constitute actions in the ordinary course of the Debtors' business not requiring notice or a hearing under section 363(c) of the Bankruptcy Code.  To the extent that such transactions are deemed to be outside of the ordinary course of the Debtors' business, the Debtors have nevertheless determined, in their sound business judgment, that entering into such Real Estate Loan Transactions represents the best method of protecting the Debtors' Real Estate Investments and maximizing return for their estates.  Restructurings and New Investments enable borrowers under real estate loans to protect and realize the value of the assets that underlie the loans, which in turn enables the Debtors to protect the value of their interests in loans and realize returns on their investments.  The benefits of Restructuring substantially outweigh the contractual rights that the Debtors are required to give up in the process in the form of releases and the ability to collect on the original loan amounts, particularly where such ability to collect without a Restructuring is prone to uncertainty.

23.     In light of the expected volume of such transactions currently contemplated by the Debtors, the Debtors submit that in order to take full advantage of these processes and limit the costs that would otherwise be incurred in seeking Court approval on a one-off basis, they require pre-authorization from the Court for procedures authorizing them to enter into Real Estate Loan Transactions and, where necessary and appropriate, enter into Settlements and/or grant releases to borrowers, indemnitors, and guarantors of certain obligations in connection with the underlying loan and equity agreements.  The proposed procedures are designed to allow the Debtors to effectively consummate Real Estate Loan Transactions while at

the same time protecting the interests of the estates' creditors' by implementing certain notice

and consent requirements as conditions to effectiveness.  To the extent the Creditors' Committee

does not consent to a proposed Real Estate Loan Transaction valued above a certain pre-

established threshold, the proposed procedures require the Debtors to seek court approval of the

proposed Real Estate Loan Transaction.

24.    To the extent that a Real Estate Loan Transaction is deemed to involve a

Settlement, or other settlement and compromise of claims within the context of a Restructuring,

approval of the transaction is warranted under Bankruptcy Rule 9019(a), which provides that,

"[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve

a compromise or settlement."  FED. R. BANKR. P. 9019(a).  This rule empowers bankruptcy

courts to approve compromises "if they are in the best interest of the estate."  *Vaughn v. Drexel*

*Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505

(Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer*

*Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St.,*

*Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426

(S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered

compromises to be "a normal part of the process of reorganization."  *TMT Trailer Ferry,* 390

U.S. at 424 (quoting *Case v. Los Angelas Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

25.    The decision to approve a particular compromise lies within the sound

discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The

settlement need not result in the best possible outcome for the debtor, but must not fall beneath

the lowest point in the range of reasonableness."  *Drexel Burnham Lambert Group*, 134 B.R. at

505; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re*

*Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

26.    While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation.  *Drexel Burnham Lambert Group*, 134 B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact….  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

27.    The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness….  If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

28.    Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974)).

29.    The Debtors seek the establishment of procedures, which if complied with, would render certain future compromises and settlements of the Debtors' rights in connection with Real Estate Loan Transactions, including Settlements, pre-approved.  Other courts have granted authority to settle various types of claims to debtors in possession in other large chapter 11 cases, including *In re Footstar, Inc. et al.*, (Case No. 04-22350) (Bankr. S.D.N.Y.) (approving procedures for the settlement of litigation claims and pre-petition leases and contracts); *In re NRG Energy, Inc., et al.* (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) (approval of procedures for the settlement of terminated derivative contracts); *In re Mirant Corporation, et al.* (Case No. 03-46590) (Bankr. N.D. Tex. 2003) (approval of procedures for the settlement of terminated derivative contracts); *In re Enron Corp., et al.* (Case No. 01-16034) (Bankr. S.D.N.Y. 2001) (approval of procedures for estimation and settlement of unliquidated and contingent claims); *In re Armstrong World Industries, Inc., et al.* (Case No. 00-4471) (Bankr. D. Del. 2000) (approving procedures for the settlement of personal injury claims, employee litigation claims and tax claims against the debtor).

30.    For the foregoing reasons, the procedures set forth in this Motion to allow the Debtors to enter into Real Estate Loan Transactions are within the parameters set forth in Bankruptcy Rule 9019 and are in the best interests of the Debtors, their estates, their creditors, and all parties in interest.

## Relief Under Bankruptcy Rule 6004(h)

31.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the Court orders otherwise." Fed. R. Bank. P. 6004(h).  The Debtors are currently in the process of negotiating several Real Estate Loan Transactions and seek to consummate such transactions as soon as possible in order to realize their full value.  Accordingly, the Debtors seek to consummate transactions contemplated by this Motion immediately following the entry of the proposed order.  Waiver of the ten-day stay is therefore requested.

## Notice

32.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

33.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: October 28, 2009
       New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                    :

In re                             :        **Chapter 11 Case No.**
                             :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                             :

              **Debtors.**         :        **(Jointly Administered)**
                             :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a) AND
363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019(a) ESTABLISHING PROCEDURES TO (I) RESTRUCTURE,
(II) MAKE NEW OR ADDITIONAL DEBT OR EQUITY INVESTMENTS
IN, AND/OR (III) ENTER INTO SETTLEMENTS AND COMPROMISES
IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS**

Upon the motion, dated October 28, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor

affiliates, "Lehman"), pursuant to sections 105(a) and 363(b) of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for establishment of procedures to (i) restructure, (ii) make

new or additional debt and/or equity investments in, and/or (iii) enter into settlements and

compromises in connection with existing Real Estate Investments[1], all as more fully described in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the order entered

February 13, 2009 governing case management and administrative procedures for these cases

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; and (vi) all parties who have requested

notice in these chapter 11 cases, and it appearing that no other or further notice need be provided;

and a hearing (the "Hearing") having been held to consider the relief requested in the Motion;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates and creditors, and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors shall be, and hereby are, authorized to enter into Real

Estate Loan Transactions, including Restructurings, New Investments, and Settlements, in

accordance with the following procedures:

a.      The Debtors may enter into and consummate a Restructuring or Settlement that involves a Real Estate Investment having an aggregate Mark-to-Market Carrying Value[2] of up to and including $10 million without further order of the Court or notice to or approval of any party.

---

[2] "Mark-to-Market Carrying Value" as used herein shall mean the mark-to-market carrying value on the Debtors' records of any Real Estate Investment as of December 31, 2008, or as otherwise agreed to by the Creditors' Committee; provided however, if (i) the mark-to-market carrying value of any Real Estate Investment on the Debtors' records as of December 31, 2008 is less than or equal to 50% of mark-to-market carrying value of such Real Estate Investment on the Debtors' records as of September 17, 2008, and (ii) the mark-to-market carrying value of any Real Estate Investment is not otherwise agreed to by the Creditors' Committee, the Mark-to-Market Carrying Value for the purposes of this Order shall be the mark-to-market carrying value of such Real Estate Investment on the Debtors' records as of September 17, 2008.

b.      The Debtors may enter into and consummate Real Estate Loan Transactions that (i) involve (x) a Real Estate Investment having an aggregate Mark-to-Market Carrying Value of greater than $10 million but less than or equal to $25 million, and/or (y) the Debtors making a New Investment in an amount up to and including $5 million, and (ii) do not also fall within the parameters set forth below in clauses (c) or (d) of these procedures, without further order of the Court or approval of or notice to any other party; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transactions as soon as practicable but in no event later than promptly following the closing of such transactions.  If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (b) and (c) or both clauses (b) and (d) of these procedures, the provisions of clause (c) or (d), respectively, shall govern.

c.      If a Real Estate Loan Transaction (i) involves (w) a Real Estate Investment having an aggregate Mark-to-Market Carrying Value greater than $25 million but less than or equal to $100 million, (x) the Debtors making a New Investment in an amount greater than $5 million but less than or equal to $25 million, (y) a Restructuring of the Debtors' debt or equity position in a Real Estate Investment or a Settlement resulting in a reduction in the aggregate value of the Real Estate Investment to a value that is less than 50% of the aggregate Mark-to-Market Carrying Value of the Real Estate Investment, and/or (z) any party to the Real Estate Loan Transaction being either a person employed by the Debtors at any time on or after September 15, 2007 or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Real Estate Loan Transaction, and (ii) does not also fall within the parameters set forth in clause (d) of these procedures, the Debtors will provide to the Creditors' Committee a summary of the proposed Real Estate Loan Transaction identifying the salient terms of the proposed Real Estate Loan Transaction (the "Real Estate Loan Transaction Summary"). The Creditors' Committee will be required to submit any objections to a Real Estate Loan Transaction identified in a Real Estate Loan Transaction Summary so as to be received by the Debtors on or before ten (10) business days after service of such Real Estate Loan Transaction Summary; provided, however, that if the Creditors' Committee requests additional information regarding a Real Estate Loan Transaction, its objection period shall be suspended until the requested information has been provided.  If the Debtors and the Creditors' Committee are unable to consensually resolve the objection, the Debtors may file a motion with the Court seeking approval of the Real Estate Loan Transaction.  If the Creditors' Committee does not timely object to a Real Estate Loan Transaction, or the Debtors and the Creditors' Committee resolve a timely objection, the Debtors may proceed with the Real Estate Loan Transaction without further order of the Court or notice to or approval of any party.  If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (c) and (d) of these procedures, the provisions of clause (d) shall govern.

d.      The Debtors will be required to file a motion with the Court seeking approval of any Real Estate Loan Transaction that involves (i) a Real Estate Investment having an aggregate Mark-to-Market Carrying Value greater than $100 million, and/or (ii) the Debtors making a New Investment in an amount greater than $25 million.

e.      The Debtors may enter into and consummate any Real Estate Loan Transaction that involves a Real Estate Investment having an aggregate Mark-to-Market Carrying Value of greater than $25 million without further order of the Court or notice to or approval of any party, if the transaction involves only (i) a non-material amendment to or modification of a Real Estate Investment, as determined by the Debtors after consultation with the Creditors' Committee, and/or (ii) the Debtors making a New Investment in an amount not greater than $5 million; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transaction as soon as practicable but in no event later than promptly following the closing of such transaction.

f.      Real Estate Investments that are managed by the Debtors as part of distinct and identifiable portfolios that are cross-collateralized or cross-defaulted shall be aggregated for purposes of applying the thresholds set forth in paragraphs (b) through (e) to Real Estate Loan Transactions.

g.      The Debtors ability to carry out the actions set forth in the foregoing procedures shall not override any applicable notice, consent or other rights that any third parties may have pursuant to agreements with the Debtors;

and it is further

ORDERED that, as part of the procedures set forth herein, the Debtors will file with the Court, on a quarterly basis beginning not later than 105 calendar days after entry of this Order, a report of all Real Estate Loan Transactions entered into by the Debtors during the prior three calendar months pursuant to these procedures, identifying (i) the number of Real Estate Loan Transactions entered into by the Debtors, (ii) with respect to each Real Estate Loan Transaction, whether such Real Estate Loan Transaction involved a Restructuring, a New Investment, a Settlement, or some combination thereof, (iii) the Mark-to-Market Carrying Value of each Real Estate Investment subject to a Real Estate Loan Transaction, and (iv) to the extent the Real Estate Loan Transaction involved a New Investment, the amount of the New Investment made in connection therewith; and it is further

ORDERED that the procedures set forth herein shall not override the procedures previously approved by this Court in the SPE Foreclosure Procedures Order and the Discounted Payoff Procedures Order (together, the "Approved Procedures Orders"), and to the extent a Real Estate Transaction Loan Transaction proposed to be undertaken pursuant to the procedures set forth herein conflicts with the procedures set forth in either of the Approved Procedures Orders, the procedures set forth in the Approved Procedures Orders, respectively, shall govern; and it is further

ORDERED that nothing in this Order authorizes the transfer of any collateral for securities guaranteed by the Government National Mortgage Association ("GNMA"), including, but not limited to, mortgage loans or related foreclosure judgments or deeds or assignments in lieu of foreclosure, or any Participations or Other Interests as such terms are defined in the guaranty agreements between LBHI and GNMA; and it is further

ORDERED that the Debtors are authorized to execute such documents or other instruments and carry out all other actions as may be necessary to effectuate any Real Estate Loan Transaction in accordance with this Order; and it is further

ORDERED that this Order shall not obligate or require the Debtors to restructure or amend any Real Estate Investment or make any New Investment in connection with an existing Real Estate Investment, nor shall this Order preclude Debtors from settling or compromising any claim upon further application to the Court; and it is further

ORDERED that nothing in this Order shall be construed to limit or otherwise affect the Debtors' ability to assume or reject any credit, loan, security, participation or similar agreement in accordance with the provisions of the Bankruptcy Code; and it is further

ORDERED that any stay imposed by Bankruptcy Rule 6004(h) is hereby waived and this Order shall be immediately effective and enforceable; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: November __, 2009
     New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE