## Exhibit B

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

See a sample reprint in PDF format.          Order a reprint of this article now

# THE WALL STREET JOURNAL.
WSJ.com

SEPTEMBER 11, 2009

# Prosecutors Are Poised to Impanel AIG Grand Jury

*Ex-Executive Cassano Is Focus of Probe as Authorities Weigh Criminality vs. Poor Decisions*

By AMIR EFRATI and SUSAN PULLIAM

Federal prosecutors, capping an 18-month investigation, are preparing to impanel a grand jury in Brooklyn, N.Y., to consider an indictment of a former senior American International Group Inc. executive, according to people familiar with the matter.

The Justice Department and the Securities and Exchange Commission have been investigating whether Joseph Cassano, whose AIG Financial Products unit nearly brought down the insurer a year ago, committed securities fraud in allegedly misleading investors by overstating the value of mortgage-related contracts and failing to disclose material facts about them to AIG's outside auditor, the people said.



The planned grand jury in the AIG case also could weigh charges against other employees. The possible case against Mr. Cassano and others could rely partly on tape recordings of 2007 phone calls involving AIG Financial Products employees who discussed the value of derivatives trades known as credit-default swaps, these people said.

Spokesmen for the Justice Department's fraud section in Washington, the SEC and the U.S. attorney's office in Brooklyn, which are handling the case, declined to comment.

Mr. Cassano has denied wrongdoing. His lawyer, F. Joseph Warin, has said AIG was fully aware of Mr. Cassano's activities, and his client has been cooperating with the inquiry. AIG declined to comment.

Any indictments of AIG employees would represent just the second major criminal corporate-fraud case stemming from the two-year-old credit crisis. That so few criminal cases have come to fruition illustrates the complicated legal road that prosecutors face in trying to find criminal wrongdoing at companies whipsawed by extraordinary events.

AIG has become a symbol of much of what the public has found wrong with Wall Street in the crisis: big bets on subprime mortgages using unregulated derivatives, failures that caused widespread financial pain, and multiple

government bailouts with uncertainty over whether taxpayers would ever see their money returned. AIG also became a target of criticism because it paid $165 million in bonuses to Financial Products employees this year, long after a government bailout of the company.

Financial-industry executives said poor business decisions, rather than criminal acts, fueled the financial crisis. Most of the probes of executives at large financial firms focus on behavior after the crisis began. Investigators are looking to see whether individuals made false public statements to investors about the firms' financial condition, engaged in insider trading or tinkered improperly with the firms' accounting.

In another criminal case, prosecutors are investigating whether executives at Lehman Brothers Holdings Inc. misled investors about the firm's financial picture before it filed for bankruptcy protection a year ago, among other things. But people familiar with the probe said any potential case against individuals at Lehman could be complicated by the fact that representatives of the Federal Reserve and SEC had been stationed at Lehman's headquarters, with access to its books and records, since the collapse of Bear Stearns Cos. in March 2008.

Authorities who had been investigating whether Wall Street firms, including Merrill Lynch & Co. and UBS AG, overvalued mortgage-related holdings before taking huge write-downs have ceded these cases to regulators at the SEC, an agency that brings only civil cases. The Merrill matter has been put on hold at the SEC amid a judicial challenge to a settlement in another Merrill-related case involving whether Bank of America Corp. misled investors about Merrill bonuses after agreeing to take over the securities firm last year. Bank of America neither admitted nor denied the allegations as part of the pact. The SEC declined to comment. Bank of America and UBS declined to comment.

For the Justice Department, the difficulty in these cases has been the higher criminal bar of proving the firms intended to defraud investors, people familiar with the cases said. Financial-industry representatives and defense lawyers said executives were dealing with an unprecedented catastrophe, and they had no intent to mislead investors, even if statements turned out to be wrong.

"There's not a lot of 'there there,'" said Carey Dunne, a former New York state prosecutor who is now a defense lawyer at Davis Polk & Wardwell LLP and isn't involved in the Lehman or AIG investigations. Typically, "you'd see damning internal emails and whistle-blowers coming out of the woodwork," he said. "We haven't seen much of that."

## Tales of the Tape

In the AIG matter, the swaps at issue led to billions of dollars in write-downs for the insurer after PricewaterhouseCoopers LLP, its auditor, said the process AIG used to value them was flawed. Pricewaterhouse could be called to testify about, among other things, the way in which it came to determine there was a material weakness in the internal controls used by Mr. Cassano's group to value the swaps, the people familiar with the matter said.

The 2007 tape recordings include discussions by Mr. Cassano's group about the impact of the deteriorating mortgage market on AIG's credit-default swaps, the people said. Prosecutors could try to contrast these calls with reassuring statements Mr. Cassano and other executives made publicly around the same time, telling investors at a conference that any possible losses would be limited, these people said.

If the case is filed, these people said, one potential witness could be Joseph St. Denis, a former internal auditor at AIG, who told a congressional committee last year that Mr. Cassano said he had "deliberately excluded" Mr. St. Denis from evaluating the credit-default swaps "because I was concerned that you would pollute the process." A lawyer for Mr. St. Denis declined to comment.

In the only major criminal case filed against Wall Street executives in the wake of the credit crisis, two former managers of hedge funds at Bear Stearns were indicted last summer on charges they lied to investors as the funds were collapsing. They have pleaded not guilty. A trial is set for this month.

## *A Surfeit of Cases*

Documents filed in Lehman's bankruptcy-court proceedings shed some light on the volume of Lehman-related documents and witnesses being examined by regulators and Anton Valukas, a lawyer at Jenner & Block LLP, the court-appointed examiner in the bankruptcy case.

Mr. Valukas has been preparing documents and sharing witness lists and information with the SEC relating to issues such as Lehman's valuation of real-estate and other assets -- the subject of an investigation by prosecutors in Manhattan -- and Lehman's finances heading into bankruptcy. Mr. Valukas declined to comment.

Prosecutors in Brooklyn and the SEC also are investigating whether former Lehman executives sold auction-rate securities to clients while knowing that the market for the short-term securities was drying up, people familiar with the matter said. Spokesmen for the Brooklyn U.S. attorney's office and the SEC declined to comment.

Some prosecutors acknowledge the hurdles they face. Benton Campbell, the U.S. attorney in Brooklyn, whose office brought the Bear Stearns case and who declined to comment about pending investigations, said prosecutors have been inundated with fraud cases recently.

Mr. Campbell said prosecutors are being particularly swamped with cases involving alleged Ponzi schemes and other fraud that have emerged amid the recession. These cases require immediate attention in order to prevent alleged suspects from fleeing or dissipating investors' money.

"We're having to deal with things that pop up, and Ponzi schemes and large mortgage fraud schemes have had an impact," said Mr. Campbell, whose office this week charged a Long Island, N.Y., money manager with running a 30-year Ponzi scheme. "We have limited resources."

**Write to** Amir Efrati at amir.efrati@wsj.com and Susan Pulliam at susan.pulliam@wsj.com

Printed in The Wall Street Journal, page C1

Copyright 2009 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com