K&L GATES LLP  
Robert N. Michaelson, Esq.  
599 Lexington Avenue  
New York, NY 10022  
(212) 536-3900

-and-

Marc L. Barreca  
925 Fourth Avenue  
Suite 2900  
Seattle, Washington 98104  
(206) 623-7580

Attorneys for Seattle Pacific University

Hearing Date: November 18, 2009 at 10:00 a.m.  
Objection Deadline: November 13, 2009

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------------x  
: 
In re : Chapter 11  
 : 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Case No. 08-13555 (JMP)  
 : 
 : (Jointly Administered)  
Debtors. : 
 : 
---------------------------------------------------------------x

# DECLARATION OF CRAIG KISPERT
## IN SUPPORT OF MOTION OF SEATTLE PACIFIC UNIVERSITY FOR AN ORDER COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR <u>REJECT EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365(d)(2)</u>

I, Craig Kispert, hereby declare pursuant to 28 U.S.C. § 1746:

      1.     I am the Associate Vice President for Business and Finance at Seattle Pacific University ("SPU"). I have served in that capacity since July 2004. I am authorized to make this Declaration on SPU's behalf.

      2.     SPU is a non-profit Christian university of arts, sciences and professional studies, which currently serves more than 3,800 students. SPU was established in 1891 by the

NY-711312 v6

Washington Conference of the Free Methodist Church to educate students for missionary service. As a part of SPU's Comprehensive Plan for the 21st century, which included a major capital plan, SPU built a 64,000 square foot science building and undertook major improvements to SPU's residence halls, dining hall and other facilities (the "Capital Projects").

3. To finance the Capital Projects, SPU undertook Washington Higher Education Facilities Authority Variable Rate Demand Revenue Bonds (Seattle Pacific University Project) (the "Bonds"). The Bonds were issued by the Washington Higher Education Facilities Authority (the "Authority"). The Authority loaned the proceeds of the Bonds to SPU and SPU is responsible for paying the principal and interest on the Bonds. Although the initial Bonds have been restructured since their issuance, the debt has remained in a variable interest rate mode throughout, exposing SPU to long-term interest rate risk.

4. LBSF and SPU entered into that certain ISDA Master Agreement dated as of October 16, 2000 by and between SPU and LBSF (the "ISDA Agreement"), along with the Schedule to the ISDA Agreement dated as of October 16, 2000 (the "Schedule"), that certain Credit Support Annex dated as of October 16, 2000 by and between SPU and LBSF (the "CSA") and all related agreements (collectively, the "Swap Agreement"). I have been involved in matters relating to the Swap Agreement since October 16, 2000. A true and correct copy of the Swap Agreement is annexed hereto as Exhibit A.

5. SPU entered into a long-term interest rate swap (the "Interest Rate Swap") with LBSF under the Swap Agreement pursuant to a confirmation dated as of October 16, 2000 (the "Confirmation") in an effort to hedge SPU's variable interest rate exposure for a 20-year period. A true and correct copy of the Confirmation dated October 16, 2000 is annexed hereto as Exhibit B.

6. The Interest Rate Swap was effective as of October 17, 2000 and was scheduled to terminate on October 1, 2020 (the "Scheduled Termination Date"). The initial notional amount for the Interest Rate Swap was $20,700,000. The notional amount (the "Notional Amount") was subject to reduction over time as set forth in the Confirmation.

7. Pursuant to the Swap Agreement and the Confirmation, SPU is required to pay LBSF a fixed rate of 4.85% on the Notional Amount and LBSF is required to pay SPU a floating rate on the Notional Amount based on the BMA Municipal Bond Index.

8. The CSA to the ISDA Agreement requires LBSF to post collateral to secure LBSF's obligations under the Swap Agreement but does not require SPU to post collateral to secure SPU's obligations under the Swap Agreement (the "One-Way Collateral Posting Provision"). The One-Way Collateral Posting Provision was a key term of the Swap Agreement.

9. Additionally, LBSF is the "Calculation Agent" under the Schedule to the ISDA Agreement and is, therefore, required to calculate the regularly scheduled payments due from each party and provide calculation statements (the "Calculation Statements") to SPU.

10. Lehman Brothers Holdings Inc. ("LBHI" and together with LBSF, "Lehman") serves as the "Credit Support Provider" to LBSF under the Swap Agreement.

11. The filings by LBHI and LBSF for voluntary petitions for relief under title 11 of the United States Code on September 15, 2008 and October 3, 2008 (the "Petition Dates"), respectively, constituted Events of Default pursuant to section 5(a)(vii) of the ISDA Agreement.

12. On November 17, 2008, SPU received the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption of Prepetition Derivatives Contracts. SPU reviewed a copy of the Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the

Settlement or Assumption and Assignment of Prepetition Derivatives Contracts (the "Assumption and Assignment Order") after its entry by the Bankruptcy Court.

13. During the period from October, 2000 through August, 2008, SPU paid LBSF a net aggregate amount of $4,065,170.24 in regularly scheduled payments due under the Swap Agreement.

14. From October 2008 through July 9, 2009, LBSF failed to satisfy its obligations as Calculation Agent under the Swap Agreement and failed to provide Calculation Statements to SPU.

15. On July 9, 2009, LBSF provided retroactive Calculation Statements to SPU for the period from September 2008 through June 2009, at SPU's behest, pursuant to an e-mail dated July 8, 2009 from SPU to LBSF. A true and correct copy of the e-mail dated July 8, 2009 from SPU to LBSF is annexed hereto as Exhibit C.

16. On July 10, 2009, SPU made a wire payment in the amount of $558,008.03 to LBSF, which amount represented the payments owing by SPU to LBSF from September 2008 through June 2009. On August 6, 2009, SPU paid $72,679.53 to LBSF as its netted regularly scheduled payment for the period through July 2009. LBSF again failed to provide a Calculation Statement for this most recent payment until prompted to do so by SPU. Together with its payments of $4,065,170.24 through August, 2008, and $558,008.03 from September 2008 through June 2009, SPU has paid LBSF a total of $4,695,857.80.

17. Since SPU's payment to LSBF on August 6, 2009, LBSF has again failed to provide any Calculation Statements to SPU to date.

18. LBSF's failure to perform its obligations as Calculation Agent under the Swap Agreement amounted to an additional Event of Default under section 5(a)(ii) of the ISDA

Agreement as of October 25, 2009 (thirty days after Lehman was notified of this failure in SPU's letter dated September 24, 2009).

19. SPU wanted Lehman to assign the Swap Agreement to a third party to maintain the Swap Agreement "as is", with the One-Way Collateral Posting Provision in the Swap Agreement favoring SPU.

20. Because Lehman was "in-the-money" under the Swap Agreement between the Petition Dates and April 2009, and because the Court had entered the Assumption and Assignment Order in December 2008, SPU assumed that Lehman would be marketing the Swap Agreement for assignment.

21. On April 23, 2009, SPU was contacted by a representative of Lehman, pursuant to which Lehman indicated the options available to SPU under the Swap Agreement, including (a) SPU's option to terminate the Swap Agreement based on a technical default, (b) a consensual assignment of the Swap Agreement to a third party or (c) a consensual termination of the Swap Agreement. Lehman requested SPU's consent to share the Confirmation with a potential assignee that had flagged SPU's Interest Rate Swap as one that the assignee might be interested in assuming from Lehman. SPU consented to Lehman sharing the Confirmation with the potential assignee, which Lehman later indicated to be JPMorgan.

22. In a follow-up e-mail dated April 23, 2009 from Lehman to SPU, Lehman indicated that it would approach JPMorgan regarding a consensual assignment of the Interest Rate Swap either "as-is" or with new credit terms to be defined by JPMorgan. Lehman further indicated that once Lehman obtained information from JPMorgan, Lehman would contact SPU and share such results with SPU, although this might require some time, but SPU never heard

anything from Lehman regarding this potential assignment. A true and correct copy of the e-mail dated April 23, 2009 from Lehman to SPU is annexed hereto as <u>Exhibit D.</u>

23. By e-mail dated July 1, 2009, SPU requested a mark-to-market report from Lehman on the Interest Rate Swap, a service which LBSF has previously provided, in connection with SPU's closing of the fiscal year. A true and correct copy of the e-mail dated July 1, 2009 from SPU to Lehman has been previously attached as a part of Exhibit C.

24. On July 1 2009, Lehman responded that it no longer provided mark-to-market reports for financial reporting purposes due to financial constraints. Additionally, Lehman indicated that it "would be keen to reinitiate an assignment dialogue" with SPU. A true and correct copy of the e-mail dated July 1, 2009 from Lehman to SPU has been previously attached as a part of Exhibit C.

25. By e-mail dated July 8, 2009, SPU indicated that it had not received any Calculation Statements from LBSF since September 2008 and that SPU was amenable to continuing the assignment dialogue. SPU pointed out, however, that Lehman had previously indicated its intention of pursuing a consensual assignment with JPMorgan but that SPU was waiting to hear the results of Lehman's attempts to assign the Interest Rate Swap. A true and correct copy of the e-mail dated July 1, 2009 from Lehman to SPU has been previously attached as a part of Exhibit C.

26. Lehman accepted responsibility for the breakdown in communication between Lehman and SPU by e-mail dated July 9, 2009. Lehman indicated that it would send to SPU the required Calculation Statements, which LBSF has failed to deliver under Swap Agreement, and that Lehman intended to send a novation agreement to SPU but would have to confirm whether a novation agreement was ever, in fact, sent to SPU. Lehman then indicated

that once Lehman confirmed that SPU was comfortable with the terms of the novation agreement, Lehman would approach JPMorgan and other third parties. A true and correct copy of the e-mail dated July 9, 2009 from Lehman to SPU has been previously attached as a part of Exhibit C.

27. By e-mail dated July 9, 2009 (the "July 9, 2009 E-mail"), Lehman sent a draft novation agreement (the "Novation Agreement") to SPU for the first time. A true and correct copy of July 9, 2009 E-mail from Lehman to SPU has been previously attached as a part of Exhibit C. A true and correct copy of the draft Novation Agreement is annexed hereto as Exhibit E.

28. Along with its transmission of the Novation Agreement in the July 9, 2009 E-mail, Lehman asked SPU for certain information required to begin the assignment process, including (a) whether there was a minimum credit rating required in the indenture for the Bonds, (b) whether there were any dealers that SPU had a relationship with or with whom SPU had discussed novation, (c) whether there were any dealers to whom SPU did not want the Swap Agreement assigned, and (d) whether SPU could provide written consent by return e-mail as to whether SPU is interested and legally able to novate the Swap Agreement to a reputable dealer.

29. Due to the One-Way Collateral Posting Provision that favors SPU, SPU determined upon consultation with its financial advisor that the assignment of the Swap Agreement "as-is" to a third party dealer was highly unlikely.

30. Accordingly, on September 18, 2009, as a result of LBSF's inability to assign the Swap Agreement to a third party despite previous representation of its ability to do so, SPU delivered a Notice Designating Early Termination Date (the "Termination Notice") to

LBSF seeking to terminate the Swap Agreement. A true and correct copy of the Termination Notice dated September 18, 2009 is annexed hereto as Exhibit F.

31. On September 21, 2009, SPU received a letter from Lehman dated September 18, 2009, indicating that due to the amount of time that has elapsed since the Petition Dates, SPU had waived its rights to terminate based on Lehman's bankruptcy filings and citing this Court's Order Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code to Compel Performance of Contract and to Enforce the Automatic Stay (the "Metavante Decision"). A true and correct copy of the letter dated September 18, 2009 from Lehman to SPU is annexed hereto as Exhibit G.

32. By letter dated September 24, 2009, SPU responded to Lehman indicating: (a) SPU's calculation of the termination payment owing to LBSF to be $1,553,183.35 and detailing the Loss Calculation, (b) that SPU was ready and willing to make a termination payment in the amount of the Loss Calculation, (c) that Lehman had not assigned the Interest Rate Swap despite the nine month period which had elapsed since the Court's Assumption and Assignment Order, (d) that SPU had continually made payments to Lehman from September 2008 through July 2009 despite Lehman's continuing failure to perform its obligations as Calculation Agent under the Swap Agreement and (e) that SPU remained ready and willing to provide its most recent regularly scheduled payment under the Swap Agreement to LBSF but that, yet again, LBSF had not performed its obligations as Calculation Agent to provide a Calculation Statement to SPU. SPU indicated that due to SPU's untenable position of making continuous payments to LBSF, while incurring ongoing legal and advisor fees in connection with protecting and enforcing its rights under the Swap Agreement, without any assurance that LBSF would be able to perform its obligations under the Swap Agreement, SPU would have no choice

but to file a motion compelling LBSF to assume or reject the Swap Agreement (the "Motion") if LBSF was not otherwise willing to accept the termination payment. SPU requested that Lehman advise as to whether it would agree to the termination and receive the proposed termination payment. A true and correct copy of the letter dated September 24, 2009 from SPU to Lehman is annexed hereto as Exhibit H

33. By letter dated September 29, 2009, Lehman indicated that SPU had waived its rights to terminate the Swap Agreement outside of a consensual termination due to the Metavante Decision and that any such termination was a violation of the automatic stay under section 362 of the Bankruptcy Code. Additionally, Lehman indicated it had not received the exhibits detailing SPU's Loss Calculation under the Swap Agreement and any details relating to SPU's attempts to reestablish a hedge. A true and correct copy of the letter dated September 29, 2009 from Lehman to SPU is annexed hereto as Exhibit I.

34. To date, SPU has not received any proposed termination payment amount from Lehman.

35. SPU has not entered into a replacement hedge for the Interest Rate Swap.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 30, 2009

_____
Craig Kispert