# EXHIBIT A

# K&L|GATES

K&L Gates LLP
925 Fourth Avenue
Suite 2900
Seattle, WA 98104-1158

T 206.623.7580    www.klgates.com

October 6, 2009

Marc Barreca
D (206) 370-7815
marc.barreca@klgates.com

**VIA EMAIL** Locke.mcmurray@lehman.com

Lehman Brothers
1271 Sixth Avenue, 40th Floor
New York, NY 10020
Attn:   Locke R. McMurray
Telephone:  212-526-7186

Re:      ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("LBSF)
and Seattle Pacific University, dated as of October 16, 2000, together with Schedule, Credit
Support Annex and Confirmation (the "Agreement')

Dear Mr. McMurray:

Since Seattle Pacific University ("SPU") delivered its notice designating an early termination
date for the Agreement on September 18, 2009 (the "SPU termination notice"), we or SPU
have been contacted and received the following correspondence from Lehman or the
Derivatives Legal function for Lehman Brothers Holdings Inc. and its affiliate Lehman
Brothers Special Financing Inc. (together "Lehman"):

- Letter from Satoko Koyama dated September 18, 2009 stating that the SPU
  termination notice "violates the Bankruptcy Code and is accordingly voidable at the
  election of Lehman" (the "Lehman September 18 Letter"), received by SPU on
  September 21, 2009.
- In response to the Lehman September 18 Letter, SPU sent a letter to you dated
  September 24, 2009 (the "SPU September 24 Letter", received by the Lehman
  mailroom at 9:39 am on September 25, 2009, signed for by Grant):
    - o stating that SPU stands ready and willing to make a Termination Payment to
      Lehman, but requesting confirmation that the termination of the Agreement
      will not be voided by Lehman and that the Termination Payment will be
      treated as such;
    - o including SPU's determination of the Termination Payment payable by SPU
      to Lehman in respect of the outstanding Transaction under the Agreement as
      of September 18, 2009 ($1,553,183.35), and detailing the Termination
      Payment in the attached Exhibit (the "Loss Calculation Exhibit");

Lehman Brothers
Attn.: Lock R. McMurray
October 6, 2009
Page 2

- o noting that SPU has made ongoing payments to Lehman during 2009 even though Lehman has not performed its obligations as Calculation Agent under the Agreement except when prompted by SPU to provide a calculation and statement; and
- o stating that SPU stands ready and willing to make its most recent regularly scheduled payment but, again, Lehman has not performed its obligations as Calculation Agent and SPU has not received a statement.
- In response to the SPU September 24 Letter:
  - o On September 25, 2009, Craig Kispert, Associate Vice President of Business and Finance of SPU, received a phone call from Rie Ando (riando@Lehman.com, (646) 333-9484) requesting copies of the exhibits referenced in the Loss Calculation Exhibit;
  - o On September 25, 2009, Craig Kispert responded to Rie Ando by email asking whether Lehman is interested in terminating the Agreement (notwithstanding the Lehman September 18 Letter suggesting that it is Lehman's stance that SPU was not able to terminate the swap) and asking about the relevancy of the underlying exhibits to the Loss Calculation Exhibit except in connection with a termination;
  - o SPU has not received a response to this email;
  - o On September 28, 2009, SPU received your letter dated September 25, 2009 (the "Lehman September 25 Letter") stating that:
    - Lehman's records indicate that no valid termination notice has been delivered under the Agreement (not referencing the SPU termination notice);
    - That Lehman has determined that the Agreement may only be terminated with mutual consent of the parties;
    - Referencing the Metavante order and attaching the transcript of Judge Peck's remarks with respect to Metavante on September 15, 2009, including Judge Peck's holding with respect to that counterparty's failure to make periodic payment, but not referencing that SPU has made its periodic payments and not acknowledging SPU's notice that Lehman has failed to perform its responsibilities as calculation agent and provide statements to SPU for its September (and now October) payments; and
    - Stating that Lehman will hold SPU accountable for damages resulting from the stay violation including damages associated with Lehman's hedging activities.
  - o On September 30, 2009, I received your letter dated September 29, 2009 the "Lehman September 29 Letter") stating:
    - Again that SPU's putative termination of the Transaction under the Agreement represents a violation of the automatic stay;
    - That Lehman is working with counterparties to settle open derivatives transactions on mutually agreeable terms;

Lehman Brothers
Attn.: Lock R. McMurray
October 6, 2009
Page 3

- Asking for the exhibits specified in the Loss Calculation Exhibit as well as evidence of Market Quotations sought or received, details and evidence of replacement hedges and detailed backup for SPU's expenses, but not referencing Craig Kispert's email response to Rio Ando.

We take exception to references in the Lehman September 25 Letter to the Metavante failure to make periodic payments in light of SPU's continued performance of its obligations under the Agreement even during a period in which Lehman has failed to perform its responsibilities as Calculation Agent. We again put Lehman on notice of its failure to perform as Calculation Agent under the Agreement.

In light of this correspondence (copies of which are attached), we understand that Lehman believes that the SPU termination notice was not effective to terminate the Agreement, but that Lehman may be willing to terminate the Agreement through mutual consent. SPU has already provided its Loss Calculation Exhibit. Prior to SPU's providing information over and above the Loss Calculation Exhibit please provide Lehman's proposed termination amount.

We believe it may be beneficial to schedule a call to discuss these matters. SPU is interested in determining whether it will be productive to pursue a mutually acceptable termination or whether SPU should move the court for assumption or rejection of the Agreement.

I am available for a call on either Thursday or Friday, October 8, 2009 and October 9, 2009, respectively, at the following times: between 10:00 a.m. and noon, or 1:30 and 3:00 p.m. Seattle time. Please advise regarding your availability. Thanks.

Sincerely,

K&L Gates LLP

By
    Marc Barreca

MLB:ved

Attachments

K:\206686\00001\20922_MLB\20922L24FE

# EXHIBIT B

# K&L|GATES

K&L Gates LLP
925 Fourth Avenue
Suite 2900
Seattle, WA 98104-1158

T 206.623.7580    www.klgates.com

October 16, 2009

Lehman Brothers
1271 Sixth Avenue, 40th Floor
New York, NY 10020
Attn:   Locke R. McMurray
Telephone: 212-526-7186
Locke.mcmurray@lehman.com

*Via Email*

> Re:    ISDA Master Agreement between Lehman Brothers Special Financing Inc.
> ("LBSF") and Seattle Pacific University, dated as of October 16, 2000, together with
> Schedule, Credit Support Annex and Confirmation (the "Agreement')

Dear Mr. McMurray:

We spoke Monday morning regarding the Agreement between Seattle Pacific University and
Lehman Brothers Special Financing Inc.  As we discussed, you were going to determine whether
Lehman is willing to propose a termination amount that would be acceptable to Lehman in
connection with a mutual termination of the Agreement.  You asked whether the University
could provide the exhibits specified in the Loss Calculation Exhibit attached to the University's
letter to you dated September 24, 2009.  We have consulted with our client, and the University is
willing to provide the supporting exhibits specified in the Loss Calculation Exhibit if Lehman
will provide its proposed termination amount, together with its supporting calculations.

Please let us know if you are willing to proceed to exchange such documentation prior to the
close of next week.  Thank you.

Sincerely,

*Stacey Crawshaw-Lewis*
*for Marc Barreca*

# EXHIBIT C

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Case No. 08-01420(JMP)(SIPA)

Adv. Case No. 09-01258

Adv. Case No. 08-01743

Adv. Case No. 09-01242

Case No. 09-14884-jmp

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.,

                   Debtors.

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

                   Debtor.

- - - - - - - - - - - - - - - - - - -x

NEUBERGER BERMAN, LLC,

                   Plaintiff,

        -against-

PNC BANK, NATIONAL ASSOCIATION,

LEHMAN BROTHERS INC., AND LEHMAN

BROTHERS COMMERICAL CORPORATION,

                   Defendants.

- - - - - - - - - - - - - - - - - - -x

**VERITEXT REPORTING COMPANY**

2

```
 1    - - - - - - - - - - - - - - - - - -x
 2    STATE STREET BANK AND TRUST COMPANY,
 3                        Plaintiff,
 4    LEHMAN COMMERCIAL PAPER INC.,
 5            -against-
 6                        Defendant.
 7    - - - - - - - - - - - - - - - - - -x
 8    LEHMAN BROTHERS SPECIAL FINANCING INC.,
 9                        Plaintiff,
10    BNY CORPORATE TRUSTEE SERVICES, LTD.,
11            -against-
12                        Defendant.
13    - - - - - - - - - - - - - - - - - -x
14    In the Matter of:
15    LEHMAN RE LTD.,
16                        Debtor.
17    - - - - - - - - - - - - - - - - - -x
18                U.S. Bankruptcy Court
19                One Bowling Green
20                New York, New York
21                September 15, 2009
22                10:03 a.m.
23    B E F O R E:
24    HON. JAMES M. PECK
25    U.S. BANKRUPTCY JUDGE
```

3

1

2   RE: CASE NOS. 08-13555(JMP) and 08-01420(JMP)(SIPA)

3   HEARING re Interim Applications for Allowance of Compensation

4   for Professional Services Rendered and for Reimbursement of

5   Actual and Necessary Expenses [Docket No. 4839]

6

7   HEARING re Motion of Wells Fargo, NA for Relief from the

8   Automatic Stay [Docket No. 4640]

9

10   HEARING re Motion of Wells Fargo, NA for Relief from the

11   Automatic Stay [Docket No. 4671]

12

13   HEARING re Motion of Washington Mutual Bank f/k/a Washington

14   Mutual Bank, FA. For Relief from the Automatic Stay [Docket No.

15   4759]

16

17   HEARING re Motion of A/P Hotel, LLC for Relief from the

18   Automatic Stay [Docket No. 4950]

19

20   HEARING re Motion for Authorization to Assume an Interest Rate

21   Swap with MEG Energy Corp. [Docket No. 5012]

22

23

24

25

4

1

2    HEARING re Debtors' Motion for Establishment of Procedures for

3    the Debtors to Transfer Their Interests in Respect of

4    Residential and Commercial Loans Subject to Foreclosure to

5    Wholly-Owned Non-Debtor Subsidiaries [Docket No. 4966]

6

7    HEARING re Debtors' Motion for Establishment of Procedures for

8    the Debtors to Compromise Claims of the Debtors in Respect of

9    Real Estate Loans [Docket No. 4942]

10

11   HEARING re Motion of Landwirtschaftliche Rentenbank for 2004

12   Examination [Docket No. 4800]

13

14   HEARING re Debtors' Motion for Authorization to Implement

15   Alternative Dispute Resolution Procedures for Affirmative

16   Claims of Debtors Under Derivative Contracts [Docket No. 4453]

17

18   HEARING re Debtors' Motion to Compel Performance of Metavante

19   Corporation's Obligations Under an Executory Contract and to

20   Enforce the Automatic Stay [Docket No. 3691]

21

22   HEARING re Motion of DnB Nor Bank ASA for Allowance and Payment

23   of Administrative Expense Claim and Allowing Setoff of Such

24   Claim [Docket No. 4054]

25

5

1

2      HEARING re Motion of William Kuntz, III for Review of Dismissal

3      of Appeal [Docket No. 1261]

4

5      RE: ADV. CASE NO. 09-01258:

6      PRE-TRIAL CONFERENCE

7

8      RE: ADV. CASE NO. 08-01743:

9      PRE-TRIAL CONFERENCE

10

11     RE: ADV. CASE NO. 09-01242:

12     Motion of BNY Corporate Trustee Services Limited to Stay

13     Further Proceedings Pending Disposition of its Motion for Leave

14     to Appeal the August 12, 2009 Order Denying BNY's Motion to

15     Dismiss and any Disposition of the Merits of that Appeal

16

17     RE: CASE NO. 09-14884-jmp

18     HEARING re Joint provisional liquidators' request that the

19     Court grant recognition of the company's Chapter 15 case as a

20     foreign main proceeding or, alternatively, as a foreign non-

21     main proceeding, and award the JPLs the requested associated

22     relief

23

24     Transcribed by:  Clara Rubin

25                      Pnina Eilberg

6

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES, LLP

4        Attorneys for Debtors

5        767 Fifth Avenue

6        New York, NY 10153

7

8   BY:   HARVEY R. MILLER, ESQ.

9         ROBERT J. LEMONS, ESQ.

10        MARK I. BERNSTEIN, ESQ.

11        RICHARD P. KRASNOW, ESQ.

12        PETER GRUENBERGER, ESQ.

13        DENISE ALVAREZ, ESQ.

14        HOWARD B. COMET, ESQ.

15        RICHARD W. SLACK, ESQ.

16

17   WEIL, GOTSHAL & MANGES, LLP

18        Attorneys for Plaintiffs/Movants Lehman Brothers

19        Holdings, Inc. ("LBHI") and Lehman Brothers

20        Special Financing, Inc. ("LBSF")

21        1300 I Street, N.W.

22        Suite 900

23        Washington, DC 20005

24

25   BY:   RALPH I. MILLER, ESQ.

7

1

2      WEIL, GOTSHAL & MANGES, LLP

3            Attorneys for Plaintiffs/Movants Lehman Brothers

4             Holdings, Inc. ("LBHI") and Lehman Brothers

5             Special Financing, Inc. ("LBSF")

6            8911 Capital of Texas Highway

7            Building One, Suite 1350

8            Austin, TX 78759

9

10     BY:   MEREDITH B. PARENTI, ESQ.

11

12     ANDREWS KURTH LLP

13            Attorneys for EPCO Holdings, Inc.

14            450 Lexington Avenue

15            New York, NY 10017

16

17     BY:   PETER S. GOODMAN, ESQ.

18

19     BINGHAM MCCUTCHEN LLP

20            Attorneys for State Street Bank and Trust

21            One Federal Street

22            Boston, MA 02110

23

24     BY:   ANDREW C. PHELAN, ESQ.

25

8

1

2    BUCHANAN INGERSOLL & ROONEY PC

3         Attorneys for PNC

4         One Oxford Centre

5         301 Grant Street, 20th Floor

6         Pittsburgh, PA 15219

7

8    BY:    STANLEY YORSZ, ESQ.

9

10

11    CADWALADER, WICKERSHAM & TAFT LLP

12         Attorneys for Lehman Re Ltd.

13         One World Financial Center

14         New York, NY 10281

15

16    BY:    INGRID BAGBY, ESQ.

17         ELIZABETH BUTLER, ESQ.

18         JONATHAN M. HOFF, ESQ.

19         GREGORY M. PETRICK, ESQ.

20

21

22

23

24

25

9

```
 1
 2    CLEARY GOTTLIEB STEEN & HAMILTON LLP
 3         Attorneys for D.E. Shaw Composite Portfolios LLC, D.E.
 4          Shaw Oculus Portfolios LLC, and Affiliates, and Wachovia
 5         One Liberty Plaza
 6         New York, NY 10006
 7
 8    BY:  JEFFREY A. ROSENTHAL, ESQ.
 9         DAVID Y. LIVSHIZ, ESQ. (admitted pro hac vice)
10
11    CLEARY GOTTLIEB STEEN & HAMILTON LLP
12         Attorneys for Barclays Capital, Inc.
13         One Liberty Plaza
14         New York, NY 10006
15
16    BY:  LUKE A. BAREFOOT, ESQ.
17
18    DEWEY & LEBOEUF, LLP
19         Attorneys for Royal Bank of Scotland PLC and Its
20          Affiliates
21         1301 Avenue of the Americas
22         New York, NY 10019
23
24    BY:  MARTIN J. BIENENSTOCK, ESQ.
25         IRENA M. GOLDSTEIN, ESQ.
```

```
                                                               10

 1

 2   HOGAN & HARTSON LLP

 3        Attorneys for Landwirtschaftliche Rentenbank

 4        875 Third Avenue

 5        New York, NY 10022

 6

 7   BY:   LYNDON M. TRETTER, ESQ.

 8

 9

10   HUGHES HUBBARD & REED LLP

11        Attorneys for the James W. Giddens, SIPA Trustee

12        One Battery Park Plaza

13        New York, NY 10004

14

15   BY:   JEFFREY S. MARGOLIN, ESQ.

16        JEFFREY M. GREILSHEIMER, ESQ.

17

18

19   JENNER & BLOCK LLP

20        Attorneys for Anton R. Valukas, Examiner

21        919 Third Avenue

22        37th Floor

23        New York, NY 10022

24

25   BY:   PATRICK J. TROSTLE, ESQ.
```

11

```
 1
 2    KIRKLAND & ELLIS LLP
 3         Attorneys for Lehman Re
 4         300 North LaSalle Street
 5         Chicago, IL 60654
 6
 7    BY:   ANDREW R. MCGAAN, ESQ.
 8
 9    MAYER BROWN LLP
10         Attorneys for Societe Generale and Certain of its
11          Affiliates, and CIBC and Certain of its Affiliates
12         1675 Broadway
13         New York, NY 10019
14
15    BY:   AMIT K. TREHAN, ESQ.
16
17    MILBANK, TWEED, HADLEY & MCCLOY, LLP
18         Attorneys for the Official Committee of
19          Unsecured Creditors
20         One Chase Manhattan Plaza
21         New York, NY 10005
22
23    BY:   DENNIS C. O'DONNELL, ESQ.
24         DENNIS F. DUNNE, ESQ.
25         EVAN R. FLECK, ESQ.
```

```
                                                              12
  1

  2    MILBANK, TWEED, HADLEY & MCCLOY, LLP

  3         Attorneys for the Official Committee of

  4          Unsecured Creditors

  5         International Square Building

  6         1850 K Street, NW

  7         Washington, DC 20006

  8

  9    BY:   DAVID S. COHEN, ESQ.

 10

 11    MILLER & MARTIN PLLC

 12         1200 One Nashville Place

 13         150 Fourth Avenue North

 14         Nashville, TN 37219

 15

 16    BY:   W. NEAL MCBRAYER, ESQ.

 17

 18    O'MELVENY & MYERS LLP

 19         Attorneys for Oceania Cruises, Inc.

 20         Times Square Tower

 21         7 Times Square

 22         New York, NY 10036

 23

 24    BY:   SHANNON LOWRY NAGLE, ESQ.

 25
```

13

1

2      PACHULSKI STANG ZIEHL & JONES

3          780 Third Avenue

4          36th Floor

5          New York, NY 10017

6

7   BY:   ROBERT J. FEINSTEIN, ESQ.

8

9

10     PILLSBURY WINTHROP SHAW PITTMAN LLP

11         Attorneys for Embarcadero Aircraft Securitization Trust

12         1540 Broadway

13         New York, NY 10036

14

15   BY:   RICK B. ANTONOFF, ESQ.

16

17

18     QUINN EMANUEL URQUHART OLIVER & HEDGES LLP

19         Special Counsel to the Official Creditors' Committee

20         51 Madison Avenue

21         22nd Floor

22         New York, NY 10010

23

24   BY:   JAMES G. TECCE, ESQ.

25

14

1

2    REED SMITH, LLP

3        Attorneys for BNY Corporate Trustee Services, Bank of

4         New York Mellon

5        599 Lexington Avenue

6        New York, New York 10022

7

8    BY:   ERIC A. SCHAFFER, ESQ.

9

10

11   RICHARDS KIBBE & ORBE LLP

12        One World Financial Center

13        New York, NY 10281

14

15   BY:   MICHAEL FRIEDMAN, ESQ.

16

17

18   SALANS LLP

19        Attorneys for Swedbank AB

20        Rockefeller Center

21        620 Fifth Avenue

22        New York, NY 10020

23

24   BY:   CLAUDE D. MONTGOMERY, ESQ.

25

15

1

2    SHEARMAN & STERLING LLP

3        Attorneys for Bank of America and Merrill Lynch and Their

4         Affiliates

5        599 Lexington Avenue

6        New York, NY 10022

7

8    BY:   DANIEL H.R. LAGUARDIA, ESQ.

9          NED S. SCHODEK, ESQ.

10

11

12   SHEARMAN & STERLING LLP

13       Attorneys for Nomura International plc

14       599 Lexington Avenue

15       New York, NY 10022

16

17   BY:   SOLOMON J. NOH, ESQ.

18

19   STROOCK & STROOCK & LAVAN LLP

20       Attorneys for Omnibus Derivative Counterparties

21       180 Maiden Lane

22       New York, NY 10038

23

24   BY:   CLAUDE G. SZYFER, ESQ.

25

16

1

2    STROOCK & STROOCK & LAVAN LLP

3         Attorneys for Neuberger Berman

4         180 Maiden Lane

5         New York, NY 10038

6

7    BY:   DEREK I. A. SILVERMAN, ESQ.

8

9

10   SULLIVAN & CROMWELL LLP

11        Attorneys for Defendant Barclays Bank PLC and Long Island

12         International

13        125 Broad Street

14        New York, NY 10004

15

16   BY:   ROBINSON B. LACY, ESQ.

17

18

19   WHITE & CASE, LLP

20        Attorneys for Ad Hoc Group of Creditors

21        1155 Avenue of the Americas

22        New York, NY 10036

23

24   BY:   LISA THOMPSON, ESQ.

25

17

1

2    WHYTE HIRSCHBOECK DUDEK S.C.

3          Attorneys for Creditor Metavante Corporation

4          555 East Wells Street

5          Suite 1900

6          Milwaukee, WI 53202

7

8    BY:   BRUCE G. ARNOLD, ESQ.

9

10

11   WINTHROP COUCHOT PC

12          660 Newport Center Drive

13          Fourth Floor

14          Newport Beach, CA 92660

15

16   BY:   SEAN A. O'KEEFE, ESQ.

17

18

19   U.S. DEPARTMENT OF JUSTICE

20          Office of the United States Trustee

21          33 Whitehall Street, 21st Floor

22          New York, NY 10004

23

24   BY:   LINDA A. RIFFKIN, ESQ.

25

18

1

2    U.S. DEPARTMENT OF JUSTICE

3         U.S. Attorney's Office, Southern District of New York

4         86 Chambers Street

5         3rd Floor

6         New York, NY 10007

7

8    BY:    JOSEPH N. CORDARO, ESQ.

9

10   SELTZER CAPLAN MCMAHON VITEK

11        Attorneys for Lusardi Construction Co.

12        2100 Symphony Towers

13        750 B Street

14        San Diego, CA 92101

15

16   BY:    DENNIS J. WICKHAM, ESQ. (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

99

1    that it has been presented and will make some judgments as to

2    the identity of the mediators in consultation with counsel for

3    the debtors and for the creditors' committee who have been so

4    active in developing these procedures.

5           I recognize that a lot of people who are in court at

6    this moment are here for the ADR procedures, and I'm going to

7    give people who want to leave an opportunity to leave.  I'm

8    also going to give everybody an opportunity for a break.  But

9    because of the congestion of this docket, I think I'm going to

10   go until 1 o'clock.  So let's take a break for ten minutes, and

11   then resume, and then go until 1 o'clock and then break for

12   lunch.  We're adjourned until then.

13          MR. GRUENBERGER:  Thank you, Your Honor.

14      (Recess from 12:12 p.m. to 12:28 p.m.)

15          THE COURT:  Be seated please.  Number 11, Metavante.

16          MR. SLACK:  Your Honor, Richard Slack from Weil,

17   Gotshal for the debtors.  We're here on the debtors' motion to

18   compel performance of Metavante Corporation.  As Your Honor

19   knows, two months ago we had argument, after fully briefing the

20   issue.  Your Honor is in receipt of letters from both

21   Metavante's counsel and from the debtors, which I think

22   provides the status of where we are in terms of discussions,

23   which is, essentially, that the parties have not had

24   substantial discussions, as the letters which are docketed

25   state.

100

1          The debtors were requested to make a proposal to

2     resolve it, which we did.  We have not received a proposal from

3     Metavante in the two months since the hearing, and Metavante

4     has not responded to our proposal that we've made.

5          Your Honor has mentioned Metavante a couple of times

6     today, and so Your Honor may have a plan for the conference,

7     but it is the debtors' position that this matter should be

8     considered and decided, at the Court's discretion, obviously.

9          THE COURT:  Understood.  I'm ready to rule today.

10         MR. ARNOLD:  May it please the Court, mindful of that

11    comment, I want you to know why we wrote the letter, so that

12    you have in mind that parties do take into account the risks of

13    not settling, and you were quite clear at the hearing on July

14    14th that there was an opportunity for the parties to consider

15    resolving this matter.

16         For the Court's information, neither Lehman nor its

17    counsel have been obdurate, ornery, or in any fashion

18    unprofessional.  Our dealings have been quite, to the contrary,

19    exceptional throughout the history of our relationships.  I

20    reached out to counsel for the debtors to explain how it is

21    that an impending transaction which will close on October 1st

22    would, in my judgment, have a favorable impact on the

23    likelihood of this matter resolving consensually.  That was the

24    singular purpose for us writing the letter to the Court.  We

25    are not here today to reargue the motion.  The Court heard

101

1    extensive oral argument.  It has been well briefed.  The issues

2    have come up again in, frankly, in other instances and motions

3    and adversary proceedings.  I wanted the Court to know that it

4    was not by design, neglect or deliberately ignoring your

5    comments on July 14th that the settlement has not proceeded

6    further than it has.  About a week ago we received a settlement

7    proposal.  I am authorized to state by both Fidelity and

8    Metavante that post-closing of the merged entity we expect to,

9    and intend to, and will make a settlement proposal, but we're

10    also mindful that it hasn't been settled, and if it is the

11    Court's desire to rule on the matter today, we govern ourselves

12    accordingly.  I just wanted the Court to know what I've done

13    since July 14th to try to move this matter on.

14            THE COURT:  Okay.  Thank you for that update.

15            MR. ARNOLD:  Thank you, Your Honor.

16            THE COURT:  The Metavante matter consumed the better

17    part of an afternoon's oral argument.  My best recollection is

18    that we specially listed it on the afternoon before the July

19    omnibus hearing.  Candidly, I don't recall why it was specially

20    listed all by itself, but it's just as well that it happened,

21    because it took a lot of time.

22            It's correct that I encouraged the parties to attempt

23    to resolve this consensually, and I appreciate the fact that

24    large enterprises, particularly those that are involved in

25    major transactions in which acquisitions are literally weeks

102

1    away from being consummated, may be distracted or may have

2    other priorities.  But I also believe that when I suggested

3    that this be listed for the September 15th omnibus hearing it

4    was with the notion that, in effect, time would be up.

5         I'm also mindful of the fact that on today's calendar

6    a matter very similar to this, item 6, has been consensually

7    resolved, involving the payment of fifty percent more dollars

8    to the debtors than are at issue in this current dispute.

9         I am prepared to rule and will do so now.  Recognize

10    that what I'm about to do will take some time and will probably

11    take us to the lunch hour.  If there is anyone here who doesn't

12    want to hear the ruling in this case I'd like you to be free to

13    both leave, because I won't be offended, or, if at some point

14    during my rendition of this ruling you say to yourself this is

15    something I don't need to hear, you're also free to leave at

16    that point.

17         LBSF requests that the Court compel Metavante to

18    perform its obligations under that certain 1992 ISDA Master

19    Agreement dated as of November 20, 2007, defined as the "Master

20    Agreement".  And that certain trade confirmation dated December

21    4, 2007, defined as the "Confirmation", and together with the

22    Master Agreement, the "Agreement".

23         The Master Agreement provides the basic terms of the

24    parties' contractual relationship and contemplates being

25    supplemented by trade confirmations that provide the economic

103

1    terms of the specific transactions agreed to by the parties.

2    Under the Master Agreement, Metavante and LBSF entered into an

3    interest rate swap transaction, the terms of which were

4    documented pursuant to the Confirmation.

5          LBHI is a credit support provider for LBSF's payment

6    obligations under the Agreement.

7          Due to declining interest rates the value of LBSF's

8    position under the Agreement has increased.  As of May 2009,

9    under the payment terms of the Agreement, Metavante owed LBSF

10    in excess of 6 million dollars, representing quarterly payments

11    due November, 2008, February, 2009 and May, 2009, plus default

12    interest in excess of 300,000 dollars.

13          It is possible that due to current market conditions

14    and to the quarterly payment schedule prescribed by the

15    Agreement the amounts that Metavante owes to LBSF as of today

16    are even higher than those stated in the motion.  Metavante has

17    refused to make any payments to LBSF.  In fact, it has refused

18    to perform its obligations under the Agreement, as of November

19    3, 2008.  Instead, Metavante claims that LBSF and LBHI, via the

20    filing of their respective Chapter 11 cases, each caused an

21    event of default under the Agreement.

22          Metavante argues that due to such events of default it

23    has the right, but not the obligation, under the safe harbor

24    provisions of the Bankruptcy Code, to terminate all outstanding

25    derivative transactions under the Agreement.  Metavante also

104

1    maintains that it is not otherwise required to perform under

2    the Agreement.

3         The parties presented their arguments to the Court at

4    a hearing held on July 14, 2009.  Notably at the hearing

5    counsel to Metavante stated that, quote, "the opportunity to

6    settle the matter", is a possibility.  The reference in the

7    transcript is page 58, lines 18 to 19.  The Court took the

8    matter under advisement and suggested that it be calendared for

9    the September 15, 2009 omnibus hearing for purposes of either a

10   bench ruling or a status conference on any progress the parties

11   may have made towards a resolution.

12        I want to make clear that I am proceeding with this

13   ruling because I view the letter described by counsel for

14   Metavante, which talked about a possible settlement

15   counterproposal occurring sometime after the closing of a

16   merger on October 1, as being an insufficient commitment to a

17   timely settlement.

18        On September 14, 2009 the Court received letters from

19   counsel to each of the parties.  Counsel to Metavante requests

20   an adjournment to October 14.  Counsel states that an

21   adjournment will facilitate the parties' settlement

22   negotiations but explains that Metavante may not make a

23   counterproposal to LBSF's September 5, 2009 settlement proposal

24   until after the proposed October 1, 2009 closing of a merger.

25   Counsel also suggests that an adjournment will allow the Court

105

1   to put the motion on the same track as two other motions

2   currently pending before the Court.  Which motions, counsel

3   claims, raise similar issues to the motion?  Counsel to LBSF

4   and LBHI maintain that inasmuch as Metavante has done nothing

5   since July 14, 2009 to settle this matter other than asking

6   LBSF and LBHI to make a settlement proposal, the parties are no

7   closer to settlement than they were at the hearing, and,

8   therefore, the status conference should go forward as planned.

9        While each of the matters reference by counsel to

10   Metavante may have overlapping issues with those presented in

11   the current dispute, each matter involves its own distinct set

12   of fats.  Moreover, each of the two referenced matters is in

13   its infancy.  No response has been filed in either one, which

14   may further delay resolution here.

15        This is a dispute that has been fully briefed and

16   argued and is ripe for determination.  Moreover, I note that

17   the settlement that was achieved with MEG Energy that was

18   referenced this morning indicates that parties who are willing

19   to settle can, and do.

20        Under the Agreement LBSF is obligated to pay the

21   floating three month USD LIBOR BBA interest rate on a notional

22   amount of 600 million dollars, which notional amount declines

23   over time, beginning in May, 2010.  Metavante, in turn, is

24   obligated to pay a fixed interest rate, 3.865 percent, on the

25   notional amount.  The Agreement is set to expire on February 1,

106

1    2012.  The Agreement defines event of default to include the

2    bankruptcy of any party or credit support provider.  Under the

3    terms of the Agreement, upon an event of default the non-

4    defaulting party may designate an early termination date.  Upon

5    termination a final payment is calculated and paid in order to

6    put the parties into the same economic position as if the

7    termination had not occurred.

8         In the instant case Metavante has refused to perform

9    under the Agreement on account of the event of default that has

10   occurred, and is continuing, on account of the bankruptcies of

11   LBSF and LBHI.  Metavante has not, however, attempted to

12   terminate the Agreement.  Instead, Metavante entered into a

13   replacement hedge covering the period from November 3, 2008

14   through February 1, 2010.

15        LBSF and LBHI argue that the Agreement is an executory

16   contract because material performance, specifically payment

17   obligations, remain due by both LBSF and Metavante.  Under

18   Bankruptcy Code Section 365(a) a debtor in possession may,

19   "subject to the court's approval, assume or reject any

20   executory contract".  The case law makes clear, however, that

21   while a debtor determines whether to assume or reject an

22   executory contract the counterparty to such contract must

23   continue to perform.

24        LBSF and LBHI further argue that the safe harbor

25   provisions do not excuse Metavante's failure to perform.

107

1    Indeed, the safe harbor provisions permit qualifying non-debtor

2    counterparties to derivative contracts to exercise certain

3    limited contractual rights triggered by, among other things, a

4    Chapter 11 filing.  They're available, however, only to the

5    extent that a counterparty seeks to one, liquidate, terminate

6    or accelerate its contracts or two, net out its positions.  All

7    other uses of ipso facto provisions remain unenforceable under

8    the Bankruptcy Code.

9         Notably, Metavante does not dispute that it has failed

10    to perform under the Agreement.  Instead, Metavante argues that

11    the occurrence of an event of default under the Agreement gives

12    rise to its right, as the non-defaulting party, to terminate

13    under the safe harbor provisions.  According to Metavante the

14    occurrence of an event of default does not, however, create the

15    obligation for it to terminate under the safe harbor

16    provisions.  Metavante emphasizes the term, quote, "condition

17    precedent" set forth in Sections 2(a), 1 and 3 of the

18    Agreement, which subject payment obligations to the condition

19    precedent that no event of default with respect to the party

20    has occurred and is continuing.

21         Metavante argues that under New York State contract

22    law a failure of a condition precedent excuses a party's

23    obligation to perform.  Metavante states that its unequivocal

24    right to suspend payments until the termination of the

25    Agreement is fundamental to the manner in which swap parties

108

1   government themselves.  Metavante takes issue with LBSF and

2   LBHI in asking the Court to treat the Agreement like a garden

3   variety executory contract, arguing that it cannot be compelled

4   to pay because LBSF and LBHI cannot provide the essential item

5   of value Metavante bargained for, namely an effective

6   counterparty.

7         Metavante further argues on information and belief

8   that LBSF and LBHI also are in default under certain

9   unspecified indebtedness that allegedly may have created a

10  cross default under the Agreement, asserting, as a result, an

11  alleged need to engage in the discovery process.

12        It is clear that the filing of bankruptcy petitions by

13  LBHI and LBSF constitute events of default under the Agreement.

14  Specifically, Section 5(a)(vii) of the Agreement provides that

15  it shall constitute an event of default should a party to the

16  Agreement or any credit support provider of such party

17  institute a proceeding seeking a judgment of insolvency or

18  bankruptcy, or any other relief under any bankruptcy insolvency

19  law or similar law affecting creditors' rights.

20        Section 2(a)(i) and 3 of the Agreement, in turn,

21  subject payment obligations to the condition precedent that no

22  event of default with respect to the other party has occurred

23  and is continuing.  It is also clear, however, that the safe

24  harbor provisions, primarily Bankruptcy Code Sections 560 and

25  561, protect a non-defaulting swap counterparty's contractual

109

1    rights solely to liquidate, terminate or accelerate one or more

2    swap agreements because of a condition of the kind specified in

3    Section 365(e)(1), or to "offset or net out any termination

4    values or payment amounts arising under or in connection with

5    the termination, liquidation or acceleration of one or more

6    swap agreements". That language comes from Section 560.

7        In the instant matter Metavante has attempted neither

8    to liquidate, terminate or accelerate the Agreement, nor to

9    offset or net out its position as a result of the events of

10   default caused by the filing of bankruptcy petitions by LBHI

11   and LBSF. Metavante simply is withholding performance, relying

12   on the conditions precedent language in Sections 2(a)(i) and

13   (iii) under the Agreement.

14       The question presented in this matter and the issue

15   that was argued by the parties at the hearing is whether

16   Metavante's withholding of performance is permitted, either

17   under the safe harbor provisions or under terms of the

18   Agreement itself. It is not.

19       Although complicated at its core the Agreement is, in

20   fact, a garden variety executory contract, one for which there

21   remains something still to be done on both sides. Each party

22   to the Agreement still is obligated to make quarterly payments

23   based on a floating or fixed interest rate of a notional

24   amount, it being understood that the net obligor actually makes

25   a payment after the parties respective positions are calculated

110

1  on a quarterly basis, in February, May, August and November of

2  each calendar year.

3       Under relevant case law it is clear that while an un-

4  assumed executory contract is not enforceable against a debtor,

5  see NLRB v. Bildisco & Bildisco, 465 US 513 at 531, such a

6  contract is enforceable by a debtor against the counterparty.

7  See McLean Industries, Inc. v. Medical Laboratory Automation,

8  Inc., 96 B.R. 440 at 449 (Bankr. S.D.N.Y. 1989).  Metavante

9  relies on In re Lucre, Inc., 339 BR 648 (WD Mich.) for the

10  proposition that a debtor's uncured pre-petition breach of its

11  executory contract, here the event of default caused by the

12  bankruptcy filings of LBHI and LBSF, will, in and of itself,

13  justify continued nonperformance by the non-debtor

14  counterparty, and mere commencement of bankruptcy proceedings

15  and the imposition of the automatic stay does not empower the

16  debtor to compel performance from a non-debtor party.

17       The Court rejects the Lucre decision as nonbinding and

18  non-persuasive.  While Metavante's argument for the events of

19  default caused by the bankruptcy filings of LBHI and LBSF do

20  create an obligation for it to terminate the Agreement under

21  the safe harbor provisions, that's a tenable argument.  Its

22  conduct of riding the market for the period of one year, while

23  taking no action whatsoever, is simply unacceptable and

24  contrary to the spirit of these provisions of the Bankruptcy

25  Code.

111

1          First, inasmuch as the Bankruptcy Code trumps any

2     state law excuse of nonperformance, Metavante's reliance on New

3     York contract law is misplaced.  Moreover, legislative history

4     evidences Congress's intent to allow for the prompt closing out

5     or liquidation of open accounts upon the commencement of a

6     bankruptcy case.  Citation is to the Congressional history of

7     this, H.R. Rep. 97-420 at 1 (1982), as well as its stated

8     rationale that the immediate termination for default and the

9     netting provisions are critical aspects of swap transactions

10    and are necessary for the protection of all parties in light of

11    the potential for rapid changes in the financial markets.

12    Citation to the Senate Report number 101-285 at 1 (1990).

13          The safe harbor provisions specifically permit

14    termination solely, quote, "because of a condition of the kind

15    specified in Section 365(e)(1) that is the insolvency or

16    financial condition of the debtor and the commencement of a

17    bankruptcy case.  See also In re Enron Corp., 2005. WL 3874285,

18    at *4, Judge Gonzalez's case, 2005.  Noting that a

19    counterparty's action under the safe harbor provisions must be

20    made fairly contemporaneously with the bankruptcy filing, less

21    the contract be rendered just another ordinary executory

22    contract.

23          The Court finds that Metavante's window to act

24    promptly under the safe harbor provisions has passed, and while

25    it may not have had the obligation to terminate immediately

112

1    upon the filing of LBHI or LBSF, its failure to do so, at this

2    juncture, constitutes a waiver of that right at this point.

3         Metavante's references to defaults under certain

4    unspecified indebtedness that allegedly may have created a

5    cross default under the Agreement are of no moment.  First,

6    Metavante failed to set forth the basis, either in its papers

7    or at the hearing, for its information and belief that such a

8    default may have occurred.  Its assertion that such a default

9    may have occurred indicates that Metavante is not aware of any

10   such default, and, therefore, did not rely on that default in

11   its refusal to perform under the Agreement or lacks knowledge

12   of what that default may be.

13        Additionally, the argument that LBSF or LBHI may have

14   defaulted under other specified indebtedness, as that term is

15   defined in the Agreement, relies upon the financial condition

16   of bankruptcy debtors to withhold performance.  That is also

17   unenforceable as an ipso facto clause that may not be enforced

18   under the Bankruptcy Code Section 365(e)(1)(A).

19        LBSF and LBHI are entitled to continued receipt of

20   payments under the Agreement.  Metavante's attempts to control

21   LBSF's right to receive payment under the Agreement constitute,

22   in effect, an attempt to control property of the estate.  See

23   In re Enron Corp., 300 B.R. 201 at 212 (S.D.N.Y. 2003),

24   recognizing that contract rights are property of the estate and

25   that therefore those rights are protected by the automated

113

1    stay.

2         This is a violation of the automatic stay imposed by

3    Code Section 362.  Accordingly, for the reasons set forth in

4    LBSF's and LBHI's papers, for the reasons stated on the record

5    at the hearing and for the reasons stated on the record today,

6    pursuant to Bankruptcy Code Sections 105(a), 362 and 365,

7    Metavante is directed to perform under the Agreement until such

8    time as LBSF and LBHI determine whether to assume or reject.

9    That's the ruling of the Court.

10        MR. KRASNOW:  Good afternoon, Your Honor.  Richard

11   Krasnow, Weil, Gotshal & Manges, for the Chapter 11 debtors.

12   We are close to the end of this morning's agenda, but not quite

13   there as yet.  The next item, Your Honor, is number 12.  It is

14   the motion of DnB Nor Bank described in the agenda.  Your

15   Honor, that matter has been fully submitted to the Court, fully

16   briefed, arguments held on November 5th, and today is the

17   scheduled status conference.

18        THE COURT:  Okay.  I'm ready to rule on that, but

19   given the hour I'm not going to take the time to do that now.

20   But we'll issue a short memorandum in due course.  So as to not

21   create any undue suspense for those parties who are here in

22   connection with the DnB Nor matter, I am deciding that in favor

23   of the debtors and against DnB Nor, denying DnB Nor's motion

24   for allowance of an administrative expense claim, substantially

25   for the reasons set forth in the committee's papers.