| | |
|---|---|
| K&L GATES LLP<br>Robert N. Michaelson, Esq.<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 536-3900 | Hearing Date: November 18, 2009 at 10:00 a.m.<br>Objection Deadline: November 13, 2009 |

-and-

Marc L. Barreca
925 Fourth Avenue
Suite 2900
Seattle, Washington 98104
(206) 623-7580

Attorneys for Seattle Pacific University

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
: 
In re                                                    :    Chapter 11
                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                 :    Case No. 08-13555 (JMP)
                                                         :
                                                         :    (Jointly Administered)
                          Debtors.                       :
                                                         :
-----------------------------------------------------------------------x

**DECLARATION OF JEFFREY KLEIN**
**IN SUPPORT OF MOTION OF SEATTLE PACIFIC UNIVERSITY FOR AN ORDER**
**COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR**
<u>**REJECT EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365(d)(2)**</u>

I, Jeffrey S. Klein, hereby declare pursuant to 28 U.S.C. § 1746:

1. I am a principal of Kensington Capital Advisors LLC ("<u>Kensington</u>") and have served in that capacity since March 22, 2006. Kensington is an independent financial advisory firm formed to serve end users of derivative products and specializes in the analysis, structuring and execution of derivative products. Kensington's six professionals constitute over 80 years of combined experience in derivatives trading.

    2. I have over 15 years of experience as a derivatives specialist and have focused on the areas of non-profit and tax-exempt applications.  Prior to joining Kensington, I was, among other things, a former derivatives specialist on Bank of America's Global Derivative Trading Desk.  My client base included both indirect issuers of taxable and tax-exempt municipal debt and public finance professionals, including underwriters, financial advisors, reinvestment brokers and bond counsel.  A more detailed description of my background and professional experience is annexed hereto as Exhibit A.

    3. Kensington has been retained to assist Seattle Pacific University ("SPU") in connection with the above-captioned bankruptcy cases filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (the "Debtors") and to advise SPU regarding a long-term interest rate swap transaction (the "Interest Rate Swap") entered into between SPU and Lehman Brothers Special Financing Inc. ("LBSF") pursuant to that certain ISDA Master Agreement dated as of October 16, 2000 by and between SPU and LBSF (the "ISDA Agreement"), along with the Schedule to the ISDA Agreement dated as of October 16, 2000 (the "Schedule"), that certain Credit Support Annex dated as of October 16, 2000 by and between SPU and LBSF (the "CSA") and all related agreements (collectively, the "Swap Agreement").  I am the person at Kensington responsible for the SPU matter, am familiar with the facts set forth herein and am authorized to make this Declaration on SPU's behalf.

    4. I have reviewed the ISDA Agreement, the Schedule to the ISDA Agreement, the CSA and all related agreements.

    5. I have also reviewed the confirmation (the "Confirmation") dated as of October 16, 2000 by and between SPU and LBSF.

6. SPU entered into the long-term Interest Rate Swap with LBSF, governed by the Swap Agreement and Confirmation, in an effort to hedge SPU's variable interest rate exposure in connection with bonds for a 20-year period. In my experience, it is common for non-profit institutions to enter into interest rate swap transactions, similar to the Interest Rate Swap entered into by SPU, to hedge against exposure to variable interest rates.

7. The Interest Rate Swap was effective as of October 17, 2000 and was scheduled to terminate on October 1, 2020 (the "Scheduled Termination Date"). The initial notional amount for the Interest Rate Swap matched the principal amount of the Bonds of $20,700,000. The notional amount (the "Notional Amount") was subject to reduction over time as set forth in the Confirmation. Pursuant to the Swap Agreement and the Confirmation, SPU is required to pay LBSF a fixed rate of 4.85% on the Notional Amount and LBSF is required to pay SPU a floating rate on the Notional Amount based on the BMA Municipal Bond Index.

8. The CSA to the ISDA Agreement requires LBSF to post collateral to secure LBSF's obligations under the Swap Agreement but does not require SPU to post collateral to secure SPU's obligations under the Swap Agreement (the "One-Way Collateral Posting Provision").

9. The One-Way Collateral Posting Provision is a key term of the Swap Agreement and, in my experience, the benefit of this provision would be reflected by the inclusion of a collateral charge in the pricing of the Interest Rate Swap (the interest rate that SPU is required to pay to LBSF under the Swap Agreement).

10. Additionally, LBSF is the "Calculation Agent" under the Schedule to the ISDA Agreement and is, therefore, required to calculate the regularly scheduled payments due from each party and provide calculation statements (the "Calculation Statements") to SPU.

11. Under the section 2(c) of the ISDA Agreement and the Confirmation, the payments due by each party are netted against each other and the party owing the net obligation is required to make payment on the first day of each calendar month beginning in November 1, 2000 until the Scheduled Termination Date.

12. The filing by LBHI and LBSF for voluntary petitions for relief under title 11 of the United States Code on September 15, 2008 and October 3, 2008, respectively, constituted Events of Default pursuant to section 5(a)(vii) of the ISDA Agreement.

13. LBSF's failure to perform its obligations as Calculation Agent under the Swap Agreement amounted to an additional Event of Default under section 5(a)(ii) of the ISDA Agreement as of October 25, 2009.

14. Due to the One-Way Collateral Posting Provision, it is highly unlikely that a credit-worthy third party dealer would assume the Swap Agreement "as-is" from LBSF.

15. To date, SPU has not entered into a replacement hedge for SPU's Interest Rate Swap with LBSF.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 30, 2009

*[signature: Jeffrey S. Klein]*

Jeffrey S. Klein