Jeff J. Friedman
Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for the Board of Education of the City of Chicago*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT NEW YORK**

---------------------------------------------------------------x
In re: : Chapter 11
 :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, : Case No. 08-13555 (JMP)
 :
 Debtors. : Jointly Administered
 :
---------------------------------------------------------------x

**OBJECTION OF BOARD OF EDUCATION OF THE CITY OF CHICAGO**
**TO THE MOTION PURSUANT TO SECTIONS 105(a), 362 AND 365 OF THE**
**BANKRUPTCY CODE TO COMPEL PERFORMANCE OF BOARD OF EDUCATION**
**OF THE CITY OF CHICAGO'S OBLIGATIONS UNDER AN EXECUTORY**
**CONTRACT AND TO ENFORCE THE AUTOMATIC STAY**

Board of Education of the City of Chicago (the "School Board"), by and through its undersigned counsel, hereby objects to the Motion Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code to Compel Performance of Board of Education of the City of Chicago's Obligations under an Executory Contract and to Enforce the Automatic Stay (the "Motion") filed by the debtor and debtor-in-possession, Lehman Brothers Special Financing Inc. ("LBSF" and together with Lehman Brothers Holdings Inc. ("LBHI") and its debtor affiliates, the "Debtors") on October 13, 2009, and respectfully states as follows:

**Preliminary Statement**

1. The relief requested in the Motion is contrary to settled bankruptcy law as LBSF seeks to retain the benefits of an agreement that it refuses to perform. The parties' interest rate swap agreement requires that LBSF make scheduled monthly payments to the School Board in exchange for the School Board's semiannual payment to LBSF. Although LBSF wishes to derive all of the economic benefits from the parties' agreement, it refuses to make any of the payments due the School Board. To compel the School Board's performance post-petition, LBSF must perform post-petition so that the School Board receives the benefit of what it bargained for.

**Background**

**I. The Parties' Agreement**

2. On December 3, 2003, the School Board and LBSF entered into an International Swap Dealers Association, Inc. Master Agreement (together with the Schedule thereto and the Guarantee and Credit Support Annex to such Schedule, the "Master Agreement"). The Master Agreement provides the terms of the parties' contractual relationship and governs the transactions at issue here. The terms and conditions of the transactions are evidenced by a Confirmation that is incorporated into the Master Agreement.

3. LBSF and the School Board executed a Confirmation (appended to and together with the Master Agreement, the "Swap Agreement") on December 8, 2003. Pursuant to the Confirmation, the Board agreed to make semiannual payments to LBSF of a fixed rate of interest (3.771%) on the notional amount ($95,350,000) on the first business day of each March and September until the Swap Agreement is terminated. (*See* Confirmation at 2.) LBSF, on the other hand, agreed to make monthly payments to the School Board at the floating rate (70% of USD-LIBOR-BBA) on the first business day of each month until the Swap Agreement is

2

terminated.[1]  (*See* Confirmation at 2.)  The Swap Agreement matures on March 1, 2034.  (*See* Confirmation at 1.)

4. The Swap Agreement was entered into in connection with a variable rate bond issuance by the School Board in December 2003.  The monthly payments due from LBSF to the School Board under the Swap Agreement are used to pay the interest due on the bonds.  The notional amount under the Swap Agreement declines as the principal amount of the bonds is amortized. [2]

5. LBSF has not made a scheduled monthly payment to the School Board under the Swap Agreement since August 2008.  With the Motion, LBSF requests that the Court compel the School Board to make its semiannual payments to LBSF until the Swap Agreement is assumed or rejected, notwithstanding LBSF's refusal to perform.

**Argument**

6. The Motion should be denied because LBSF has intentionally refused to perform its post-petition obligations under the Swap Agreement.  The Court's holding in its recent decision involving Metavante Corporation (*In re Lehman Brothers Holdings, Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y., Sep. 15, 2009) ("Metavante")) does not apply here because in that dispute Metavante was the only party with a payment obligation – i.e., there was no evidence in *Metavante* that LBSF was not performing.  In this case, the Swap Agreement requires that LBSF make scheduled monthly payments, which LBSF undisputedly has elected

---

[1] Mechanically, LBSF would make 10 monthly payments to the School Board.  For March and September, however, because there were payments owing in both directions, the parties would net the payment obligations for those months.

[2] Unlike an ordinary business entity that may have available lines of credit or borrowing ability, when LBSF failed to make monthly payments that LBSF understood were intended to satisfy variable rate bond interest obligations, the School Board had to scramble to find in its fixed budget the means to cover those obligationis from other sources.  LBSF's failure to make the payments is more than just a minor inconvenience that can be readily

3

not to make for over a year. Based on LBSF's refusal to perform the Swap Agreement, the School Board should not be compelled to pay for the protections and services it never received. Moreover, LBSF is not entitled to receive the benefits of an agreement when it fails to comply with the burdens and obligations imposed by the agreement. The Motion should therefore be denied.

        **A.     The Court's Ruling in Metavante is Inapplicable to this Dispute.**

7.     The School Board is not suspending its performance under the Swap Agreement solely on account of purported unenforceable Events of Default. The Motion alleges that the School Board, like Metavante, cannot suspend its performance under the Swap Agreement based on the bankruptcy filings or financial conditions of LBSF and LBHI. (*See* Motion ¶¶28-37.) The Debtors contend that these Events of Default under the Swap Agreement are unenforceable *ipso facto* clauses pursuant to the Court's ruling in *Metavante*. (*Id.* at ¶30.) The Debtors' reliance on *Metavante* is misplaced. The School Board's dispute with LBSF involves a distinct set of facts, different from those present in *Metavante*. (*See Metavante*, at 105:9-12.)

8.     Under the agreement between Metavante and LBSF, LBSF was not required to make scheduled monthly payments. In *Metavante*, quarterly payments were due on a net basis and, because of prevailing interest rates since the petition date, no performance of LBSF was required under the agreement. (*See* Mot. to compel [Docket No. 3691] ¶¶ 13, 20.) Metavante owed the net payments to LBSF without LBSF having any affirmative payment obligation under its agreement.

9.     Under the instant Swap Agreement, LBSF is required to make monthly payments to the School Board. (*See* Confirmation at 2.) LBSF failed to make its prepetition payment due

---

measured by the time value of money. The School Board bargained not just for LBSF's monthly payments, but for the timeliness of those payments.

4

October 1, 2008, and has made none of its monthly payments post-petition. LBSF has, for all intents and purposes, chosen not to perform the Swap Agreement. The Debtor cites to no authority for the proposition that it can withhold all performance post-petition, yet still require its counterparty to fully perform.

### B. To Compel the School Board's Payments, LBSF Must Perform.

10. If the Debtors' seek to compel the School Board's payments, then LBSF must at least elect to perform its obligations under the Swap Agreement. The principle set forth in *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 532-33 (1984)—that prior to assumption the terms of an executory contract are temporarily unenforceable against the debtor—does not suggest a non-debtor party is compelled to perform an executory when the debtor elects to withhold all post-petition performance. The cases cited by the Debtors in the Motion illustrate this point. In each case, the debtor performed or was required to perform its post-petition obligations if it sought to compel the performance of a counterparty.

11. In *U.S. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 624 (8th Cir. 1994), the debtor continued to perform under its executory contracts post-petition by hauling mail, and the United States Postal Service continued to make payments under those contracts on account of the debtor's performance. *Id*. at 624. When the debtor elected to cease performance, before the contracts were assumed or rejected, the court relied on *Bildisco* to hold that the postal service could not enforce its contractual rights against the debtor post-petition. *Id.* at 625 (holding postal service did not have administrative claim based on debtor's post-petition breach, but had only a rejection damages claim). Importantly, when the debtor in *Dewey* ceased performance, the counterparty was not compelled to continue to pay for services that the debtor refused to provide. *See id*.

5

12.     The Debtors also rely on *In re Feyline Presents, Inc.*, 81 B.R. 623, 625 (Bankr. D. Colo. 1988), where the debtor and Coca-Cola were parties to a prepetition contract pursuant to which Coca-Cola would pay to be the exclusive soft drink provider at the debtor's "Summer of Stars" music concert. *Id.* at 625. After the debtor filed for bankruptcy, but before it elected to assume or reject the contract, the debtor performed under the parties' contract by holding the concert. *Id.* Coca-Cola was accordingly required to pay the amounts due under the parties' agreement and could not unilaterally terminate the agreement. *Id.* at 626-27. The court expressly noted that in the interim period before assumption or rejection, the parties may continue to perform their respective roles, *id.* at 626, but nothing in *Feyline* suggests that a counterparty must perform when the debtor refuses to perform its obligations. It would have lead to an absurd result to have required Coca-Cola to continue making payments for a concert that the debtor refused to put on.

13.     To be sure, the debtor cannot be forced to perform post-petition, but if the debtor wishes to compel a counterparty's performance, then the debtor must likewise perform its post-petition obligations. *See In re Monarch Capital Corp.*, 163 B.R. 899, 907 (Bankr. D. Mass. 1994) (holding that the debtor was obligated to perform under the parties' contract by reimbursing creditor's expenses if it required creditor's continued performance). The court in *Monarch* explicitly stated that the "bankruptcy estate . . . can require the nondebtor to continue performance, so long as the estate performs." *Id.* at 907. Here, the Debtors request an order compelling the School Board to perform a contract that LBSF refuses to perform. None of the cases cited by the Debtors in the Motion support the requested relief.

14.     If the Debtors seek to compel the School Board's performance under the Swap Agreement, then LBSF must perform by making its required monthly payments.

6

### C. The Debtors Cannot Receive the Benefits of the Swap Agreement Without Performing its Obligations.

15. The Debtors have been operating their businesses under section 1108 of the Bankruptcy Code for over a year. Throughout this time, the Debtors have properly paid their creditors for the services received in the ordinary course of their businesses. *See, e.g., In re Enron Corp.*, No. 01-16034, 2003 WL 1562202, at *9 n.12 (Bankr. S.D.N.Y. 2003) (noting expenses incurred in the ordinary course of business under section 363(c)(1) are ordinarily paid on a current basis). The Debtors suggest no reason for the disparate treatment of their derivatives business or, specifically, the Swap Agreement. If the Debtors seek to receive the economic benefits of the Swap Agreement, then it must perform in accordance with the Swap Agreement.

16. The law is clear that "[a]s long as the debtor continues to receive the benefits under [a] contract it must also bear the burdens or obligations imposed under the contract." *In re Texaco Inc. v. Board of Comm'rs for the LaFourche Basin Levee Dist. (In re Texaco Inc.)*, 254 B.R. 536, 557 (Bankr. S.D.N.Y. 2000) (quoting *In re Yonkers Hamilton Sanitarium Inc.*, 22 B.R. 427, 435 (Bankr. S.D.N.Y. 1982)); *see also Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 197 Fed. Appx. 285, 294-95 (5th Cir. 2006) (affirming order that required debtor's performance under contract prior to assumption or rejection where debtor received benefits of contract). LBSF should not be allowed to repudiate its obligations under the Swap Agreement and expect the School Board's continued performance.

**Conclusion**

17. For all the foregoing reasons, the School Board respectfully requests that the Court deny the Motion and grant such further relief as is just and proper.

Dated: November 3, 2009
      New York, New York

By:   /s/   *Jeff J. Friedman*

Jeff J. Friedman
Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

Attorneys for the Board of Education of the City of Chicago