WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                    :

**In re:**                                 :       **Chapter 11 Case No.**

                                                    :

**LEHMAN BROTHERS HOLDINGS INC., et al.**     :       **08-13555 (JMP)**

                                                    :

                           **Debtors.**           :       **(Jointly Administered)**

                                                      :

-------------------------------------------------------------------x

**OBJECTION TO MOTION OF PB CAPITAL TO INCLUDE CERTAIN**
**EUROPEAN MEDIUM TERM NOTES IN THE LEHMAN PROGRAM**
**SECURITIES LIST OR, ALTERNATIVELY, TO DEEM SUCH CLAIMS**
**TO BE TIMELY FILED BY THE SECURITIES PROGRAMS BAR DATE**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and as debtors

in possession, (the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"),

respectfully submit this response in opposition (the "Objection") to the motion, dated October

22, 2009 (the "Motion"), of PB Capital Corporation for an order including certain Euro Medium-

Term Notes on the list of Lehman Programs Securities (as defined below) or, alternatively,

deeming certain late filed claims of PB Capital Corporation ("PB Capital") to be timely filed if

filed prior to the Securities Programs Bar Date, and respectfully represent:

<u>**PRELIMINARY STATEMENT**</u>[1]

1.      No cause exists to extend the Bar Date for PB Capital in respect of claims based on four particular Euro Medium Term Notes held by PB Capital (the "<u>PB Securities</u>"). The provisions of the Bar Date Order[2] were clear.  First, because the Debtors did not issue these securities and largely had no record of them, the Debtors were to work with parties quickly to cobble together an Initial List that included certain broad categories of notes.  Then, the Debtors and interested parties would review and refine the Initial List in order to establish a Final List. Finally, any party that took issue with the Final List had the right to appeal to the Court on an expedited basis.   The Bar Date Order was explicit that only securities included on the Final List were entitled to the benefit of the later bar date.  Since the PB Securities were not included on the Final List, PB Capital was <u>required</u> by the clear terms of the Bar Date Order to file a claim by September 22, 2009 (the "<u>Bar Date</u>") in order to preserve its claim and participate in any distributions from the Debtors.  Simply put, PB Capital missed the Bar Date.

2.      PB Capital instead relies on the hope that the Court will accept its misrepresentation as to the clear text of the Bar Date Order.  The Motion relies almost exclusively on the false premise that the Bar Date Order required that the list of Lehman Programs Securities include "at a minimum issuances under that certain U.S.$100,000,000,000 Euro Medium Term-Note Program."   In fact, under the plain, clear and unambiguous terms of the Bar Date Order— terms that were most heavily negotiated with PB Capital's counsel, this

---

[1] Capitalized terms used but not defined shall have the meanings ascribed to them below.

[2] Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, entered on July 2, 2009 [Docket No. 4271] (the "<u>Bar Date Order</u>")

provision only relates to content of the Initial List of Lehman Programs Securities posted by the

Debtors and not the Final List.  The Motion misleadingly implies that such requirement relates to

the Final List.  The Bar Date Order specifically and purposefully <u>did</u> <u>not</u> include a requirement

that any particular securities be included on the Final List of Lehman Programs Securities, as

parties were to negotiate the content in good faith between the posting of the Initial List and the

completion of the Final List.  The complete provision in the Lehman Programs Securities

Procedures relating to the creation of the list of Lehman Programs Securities provides:

> "the Debtors shall publish on http://www.lehman-docket.com ***a proposed
> list of "Lehman Programs Securities," to include at a minimum
> issuances under*** (i) that certain U.S.$100,000,000,000 Euro Medium
> Term-Note Program, (ii) that certain U.S.$4,000,000,000 German Note
> Issuance Programme, as described in a certain Base Prospectus, dated
> August 28, 2007, (iii) the Swiss Certificates Programme, as described in a
> certain Programme Prospectus, dated November 29, 2007 and (iv) the
> Italian Inflation Linked Notes, dated December 2005 – December 2017,
> which list will include the ISIN and/or CUSIP, as applicable, for each
> Lehman Program Security no later than July 6, 2009 at 5:00 pm
> (prevailing Eastern Time)"

The Bar Date Order then went on to clearly provide,

> ***"the Debtors, the Creditors' Committee, the account holders or holders
> of any Lehman Program Security that identify themselves in writing to
> the Debtors, and the trustees for Lehman Brothers Treasury Co. B.V.
> and other applicable foreign proceedings will work in good faith to
> agree on a list of "Lehman Programs Securities" by no later than July
> 13, 2009."***

     3.     All relevant parties were invited to work with the Debtors in good faith on

the content of the final list of Lehman Program Securities, and parties were entitled to raise any

disputes about the content of the list with the Court on an expedited basis.  On July 13, 2009 the

Debtors posted a proposed final list of Lehman Programs Securities on www.lehman-

docket.com.  The Debtors provided procedures for anyone who disagreed with an omission to

raise a challenge.  The Bar Date Order provided that,  "in the event of any disputes concerning

the contents of the list of "Lehman Programs Securities," the Court may consider such disputes on an expedited basis with notice to the disputing parties." Bar Date Order, p. 12. Four days after posting the list of Lehman Programs Securities, and after advising PB Capital's own counsel that notes issued to US Investors would not be included on the Final List and not receiving any objection, the list became final.

4.    As the Court well recalls, the Lehman Programs Securities Procedures were an accommodation extending the Bar Date to a total 123 days following the entry of the Bar Date Order in order to assist retail purchasers in foreign countries of European Medium-Term Notes who likely did not speak English and were not sophisticated parties. Since PB Capital owns securities which were issued in the United States to sophisticated investors, PB Capital falls outside the clear language and intent of the Lehman Programs Securities Procedures.

5.    PB Capital's argument that it did not understand the Lehman Programs Securities Procedures, including that the Initial List was subject to change, is disingenuous and should not be accepted by the Court. PB Capital's counsel led the charge to persuade the Debtors and the Court to implement alternative claims filing procedures for a specific class of creditors. Not only did Counsel to PB Capital participate in drafting of the Lehman Programs Securities Procedures, but they actively participated in the creation of the Final List of Lehman Programs Securities, making scores of requests for securities to be added on almost a daily basis. Directly contrary to PB Capital's suggestion, prior to the publication of the Final List, the Debtors communicated to PB Capital's own counsel that no security issued to a US Investor would be included on the final list of Lehman Programs Securities. PB Capital's counsel raised

no objection.  Finally, the Debtors posted clear and conspicuous notice with respect to both the

Initial List and Final List, which stated,

> **"The list of "Lehman Programs Securities" will be finalized on July
> 17, 2009 at 5:00. Prior to such time, securities may be added or
> <u>deleted</u> from the list.**
>
> **All holders of securities should review the list of "Lehman Programs
> Securities" after July 17, 2009 and prior to the Bar Date to confirm
> whether their securities are included on the final list of "Lehman
> Programs Securities."" <u>See</u> <u>http:///www.lehman-docket.com, "Bar
> Date Information and Forms</u>.**"

PB Capital conveniently excludes these facts from the Motion and the success of their arguments

depends on the Court ignoring them as well.

6.      Despite statements to the contrary, as evidenced by the fact that they

found and checked the Initial List of Lehman Programs Securities and requested blocking

numbers, PB Capital understood the Lehman Programs Securities Procedures.  The only

conclusion is that PB Capital ignored these procedures and warnings and failed to confirm

whether the PB Securities were included on the Final List.  PB Capital is a sophisticated party

that missed the Bar Date and is now trying to craft ambiguity into the Court's order so as to take

advantage of procedures put into place to benefit unsophisticated foreign retail investors.

Ignoring Court orders and clearly promulgated procedures, especially procedures that PB

Capital's counsel helped create, does not constitute excusable neglect.  PB Capital does not, and

cannot, set forth an argument that their failure to file a claim by the Bar Date constitutes

excusable neglect.

## <u>BACKGROUND</u>

7.      Commencing on September 15, 2008 (the "<u>Commencement Date</u>") and

periodically thereafter, as applicable, LBHI and certain of its subsidiaries commenced with this

Court voluntary cases under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy</u>

Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

9. Pursuant to the Bar Date Order, the Bankruptcy Court established September 22, 2009 at 5:00 p.m. (the "Bar Date"), as the deadline for each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit) to file proofs of claim based on prepetition claims against the Debtors.

10. Furthermore, the Bar Date Order provides that pursuant to Bankruptcy Rule 3003(c)(2), any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order on or before the Bar Date, in compliance with the Bar Date Order "shall be forever barred, estopped and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim."

11.    In response to the many objections filed in response to the Bar Date Motion,[3] and oral arguments in Court that the typical claim filing procedures are unfair and overly burdensome on the holders of Euro Medium-Term Notes which were issued by LBHI and its affiliates to retail investors outside of the United States, the Debtors agreed to create alternative and simpler procedures for the filing of such claims (the "Lehman Programs Securities Procedures").  The Lehman Program Securities Procedures include, among other provisions, a streamlined proof of claim form and a later deadline November 2, 2009 at 5:00 p.m. (the "Securities Programs Bar Date") for holders to file claims against the Debtors based on Lehman Programs Securities.

12.    The Debtors agreed to implement alternate procedures at the hearing on the Bar Date Motion on June 29, 2009.  Subsequent thereto, the Debtors worked with all interested and willing parties to create the Lehman Programs Securities Procedures, which included the procedures for creating the list of securities that would be subject to the Lehman Programs Securities Procedures.  The Debtors and counsel at more than a dozen other law firms around the world had numerous conference calls and reviewed numerous drafts of the Lehman Programs Securities Procedures prior to settling on the procedures included in the Bar Date Order.  Counsel to PB Capital was one of, if not the leading voices in the group of creditors that participated in such discussions.  The Lehman Programs Securities Procedures that were included in the Bar Date Order are attached hereto as Exhibit "A."

---

[3] Motion of the Debtors Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form, dated as of Mau 26, 2009 [Docket No. 3654] (the "Bar Date Motion").

13. As the Court may recall, at the hearing on June 29, 2009, neither the Debtors nor the creditors could precisely indicate which securities should be subject to the Lehman Programs Securities Procedures. Furthermore, since the Debtors did not issue a large majority of the Euro Medium Term Notes, they did not have records of all of the securities issued by their European affiliates under such program or similar programs. Therefore, the agreed upon procedures for creating the list of Lehman Programs Securities provided that the Debtors would post an <u>initial list</u> of securities on the website www.lehman-docket.com, as a starting place for negotiation of the final list. The publication of the initial list would be followed by a one week period where the Debtors would work in good faith with all parties to agree on a final list of Lehman Programs Securities.

14. The Debtors posted the initial list of Lehman Programs Securities on July 6, 2009 (the "<u>Initial List</u>"), which included <u>3,798 securities</u>! During the ensuing week, the Debtors were inundated with requests from many creditors seeking the inclusion of thousands of additional securities on the final list of Lehman Programs Securities. Following a frenetic week of negotiations and diligence on the requests, the Debtors <u>added almost 3,000 additional securities</u> to the list, for a total of <u>6,744 securities</u> and posted a proposed final list on www.lehman-docket.com on July 13, 2009.[4] The Debtors then allowed for an additional four day period for any party to request that the Court consider any disputes regarding the final list.

---

[4] In reviewing the requests for the inclusion of thousands of additional securities on the Final List, the Debtors were over-inclusive in accepting securities and only excluded securities to the extent that the Debtors had a specific reason to exclude such security (e.g. such securities were issued to US Investors, were common or preferred stock of the Debtors or securities in which the Debtors had no obligation or relation whatsoever). To the extent the Debtors could not identify a particular security, the Debtors requested supporting documentation or included the security on the Final List.

PB Capital had an obligation to verify the final list and voice any concerns.  It did neither.  When no such requests were made, the list of securities became the <u>final list</u> of Lehman Programs Securities on July 17, 2009 (the "<u>Final List</u>") and posted such list on www.lehman-docket.com.

15.     While there were requirements in the Bar Date Order that the Debtors include specific issuances of securities on the <u>Initial List</u> of securities (e.g. the $100,000,000,000 European Medium Term Note Program), there were no such obligations that any particular securities be included on the <u>Final List</u>.  The Debtors removed from the list many erroneously included securities, including, but certainly not limited to instances where securities were issued to investors located in the United States ("<u>US Investors</u>").  To the extent possible, if the Debtors rejected the inclusion of any requested securities, the Debtors contacted such requesting party and explained the Debtors' rationale for excluding such securities from the Final List.

16.     Directly contrary to PB Capital's allegation, the Debtors had several conversations and sent several emails, including one to PB Capital's own counsel, explaining the exclusion from the Final List of all securities issued to US Investors.  A copy of the email that Debtors' counsel sent to PB Capital's counsel informing them that a security that was issued to US Investors would be excluded from the Final List is attached hereto as Exhibit "B".  At no time did PB Capital's counsel object to the exclusion of such securities from the Final List.

17.     To provide notice to all parties that the Initial List of Lehman Programs Securities was subject to change, on July 6, 2009, directly below the link to the Initial List of Lehman Program Securities on the www.lehman-docket.com, the Debtors included a clear and conspicuous note stating,

> **""The list of "Lehman Programs Securities" will be finalized on July 17, 2009 at 5:00. Prior to such time, securities may be added or <u>deleted</u> from the list.**

**All holders of securities should review the list of "Lehman Programs Securities" after July 17, 2009 and prior to the Bar Date to confirm whether their securities are included on the final list of "Lehman Programs Securities."" See http:///www.lehman-docket.com, "Bar Date Information and Forms."[5]**

18.      The Debtors were aware that they had a diverse group of creditors in countries all around the world.  Therefore, the Debtors endeavored to provide notice of the Bar Date as broadly as possible.  As a result, the Bar Date in the Debtors' cases likely is the most publicized bar date in history of bankruptcy cases.  With respect to the Bar Date, the Debtors mailed approximately 256,000 notices of the Bar Date and proof of claim forms, and published notice of the Bar Date in The New York Times (International Edition), The Wall Street Journal (International Edition) and The Financial Times.  With respect to the Securities Programs Bar Date, the Debtors distributed notice of the Securities Programs Bar Date and proof of claim forms to the various clearing agencies, which distributed them to each record holder of the Lehman Programs Securities.  Furthermore, the Debtors published notice of the Securities Programs Bar Date in 10 languages (plus 7 translations for local dialects) in 26 newspapers in 18 countries.  As a result of this monumental noticing effort, over 50,000 proofs of claim have been filed against the Debtors.

## OBJECTIONS

**A.      The Securities Held by PB Capital Corporation are Not Lehman Programs Securities and Should Not be Added to the Final List of Lehman Programs Securities**

19.      PB Capital's interpretation of the Bar Date Order as it relates to the Lehman Programs Securities Procedures is incorrect and their representation of certain

---

[5] A screenshot of the "Bar Date Information and Forms" page on www.lehman-docket.com, that was active on the morning of July 7, 2009 is attached hereto as Exhibit "C".

provisions is misleading.  The lead-in to the Lehman Programs Securities Procedures in the Bar

Date Order provides that "the following procedures apply to the filing of any and all claims

(including any claims under a related Guarantee) against the Debtors arising from securities

issued by the Debtors or any of the Debtors' affiliates outside of the United States, solely to the

extent identified on http://www.lehman-docket.com under the heading "Lehman Programs

Securities."" Bar Date Order, p. 12.

20.    PB Capital suggests that the purpose of this sentence was to indicate that

the Lehman Programs Securities Procedures apply to all securities issued by (i) the Debtors and

(ii) all of the Debtors' affiliates organized outside the United States.  PB Capital's opportunistic

misreading is clearly absurd as it would render all securities issued by the Debtors and all of their

foreign affiliates part of the Lehman Programs Securities Procedures—common equity, preferred

equity, bonds, etc.  Clearly to give this sentence any logical meaning on its own or as it relates to

the record of the Bar Date before the Court, the words "outside of the United States" modify the

words "securities issued" and therefore relate to securities issued to investors outside the United

States.

21.    Most critically, PB Capital completely ignores the final clause of this

sentence which clearly provides that the procedures apply to securities "solely to the extent

identified on http://www.lehman-docket.com under the heading "Lehman Programs Securities.""

See Bar Date Order, p. 12.  No matter how one was to construe the language on page 12 of the

Bar Date Order through which PB Capital weaves its sophistry, it cannot escape the fact that to

fit within "Lehman Programs Securities," a security had to appear on the Final List.

22.    At the hearing on the Bar Date Motion, counsel to one of the creditors

asked the question "In order to be part of the program does the note have to be listed, or does it

just have to look like one of the agreements?" Counsel to the Debtors responded "It has to be

listed." See Hearing Transcript, June 29, 2009, p. 78. This answer and the process were not

challenged at the hearing or at any point in the over 4 months since. The securities held by PB

Capital were not identified on the Final List, and therefore, PB Capital's securities are not

Lehman Programs Securities, subject to the Lehman Programs Securities Procedures.

23.    In citing the requirement in the Bar Date Order that the list of Lehman

Programs Securities include "at a minimum issuances under…that certain U.S.$100,000,000,000

Euro Medium Term-Note Program," PB Capital omits to include the entire sentence which

actually only requires that the initial list of "Lehman Programs Securities" include the

U.S.$100,000,000,000 Euro Medium Term-Note Program. See ¶19 of the Motion. The full

provision does not include any obligation to include all of the U.S.$100,000,000,000 Euro

Medium Term-Note Program on the Final List. Rather, creditors were protected against any

exclusion of their securities on the Final List by their participation in the creation of the Final

List, and the ability to request the Court settle the dispute on "an expedited basis with notice to

the disputing parties," as provided in the Bar Date Order. See Bar Date Order, p. 13. PB Capital

did not raise any issue regarding these procedures with the Debtors back in July, nor did they

request the Court settle any dispute, even though they were reminded that securities issued to US

Investors are not eligible to be Lehman Programs Securities.

24.    Grasping at straws, PB Capital relies on references in the Lehman

Programs Securities Procedures to the requirement that the list of Lehman Programs Securities

and the proof of claim form to be used in connection with the Lehman Programs Securities

Procedures include "CUSIPs" of any security included on the list. The Debtors do not disagree

that CUSIPs relate to securities included in the clearing system of DTC and generally relates to

securities held by US Investors.  The inclusion of the term about "CUSIPs" in the Bar Date

Order is superfluous and not instructive at all about what securities will be included on the list of

Lehman Programs Securities, and does not override the fact that securities are considered

Lehman Programs Securities ***solely to the extent identified on http://www.lehman-docket.com***

***under the heading "Lehman Programs Securities.""***  Furthermore, on July 27, 2009, following

the posting of the Final List, the Debtors distributed and posted on the website the Securities

Programs Bar Date Notice and Securities Programs Proof of Claim.  Counsel to PB Capital

reviewed and signed-off these documents prior to distribution.[6]  Neither of the Securities

Programs Bar Date Notice nor the Securities Programs Proof of Claim includes any reference to

"CUSIPS" (or the Depositary Trust Company that issues "CUSIPs"), but rather requires blocking

numbers and account numbers acquired from Euroclear Bank and Clearstream Bank, which, for

the most part, are clearing agencies for securities held by non-US investors.

       25.    During the implementation of the procedures and creation of the Final

List, the Debtors received requests from counsel to PB Capital, as well as various parties for the

inclusion securities issued to US Investors.  The Debtors communicated and explained to counsel

for each party that requested such inclusion and explained that such securities would not be

included on the Final List.  In fact, as evidenced in a July 13, 2009 email is attached hereto as

Exhibit "B", the Debtors communicated directly to counsel to PB Capital that securities issued to

US Investors would not be included on the Final List.  Again, no concern was raised by counsel

to PB Capital.

---

[6] A July 27, 2009 email from PB Capital's counsel to the Debtors' counsel indicating that, other
than a "couple little nits", it did not have any substantive comments on the Securities Programs
Bar Date Notice and Securities Programs Proof of Claim form, is attached hereto as Exhibit "D".

26.     PB Capital can try to twist the words of the Bar Date Order all they want, but the fact remains that PB Capital, as stated in the Declaration of Coleman Gregory, checked only the Initial List, and then never checked the Final List to determine whether such securities were still included.  See Declaration of Coleman Gregory ¶6.  In addition to the clear language in the Bar Date Order, the Debtors informed holders that the Initial List, was just that an Initial List, and parties should check the Final List to determine if their securities were actually Lehman Programs Securities.  On www.lehman-docket.com immediately below the link to the list of Lehman Programs Securities, on July 6, in connection with the Initial List, the Debtors posted language (the second sentence of which is still there today) stating:

> **"The list of "Lehman Programs Securities" will be finalized on July 17, 2009 at 5:00. Prior to such time, securities may be added or deleted from the list.**
>
> **All holders of securities should review the list of "Lehman Programs Securities" after July 17, 2009 and prior to the Bar Date to confirm whether their securities are included on the final list of "Lehman Programs Securities.""  See http:///www.lehman-docket.com, "Bar Date Information and Forms."**

27.     PB Capital is a sophisticated party whose principal business activities include "credit investments."  See Declaration of Coleman Gregory ¶6.  As the Court stated at the hearing on June 29, 2009 during the discussion about which notes should be included in the Lehman Programs Securities Procedures,

> **"If they're sophisticated holders they're not entitled to any benefit. No offense to sophisticated holders, but they can take care of themselves.  And the reason you put together this exception to the rule, is because we're dealing with widely dispersed individuals who purchased small denomination notes that were issued under the EMT programs."  See Hearing Transcript, June 29, 2009, p. 83.**

28.     PB Capital had sufficient notice and opportunity to object to the

procedures and Final List, but did not raise any such objections until it missed the Bar Date.  PB

Capital has not stated any valid reason for adding securities to the Final List at this time.

**B.      The Claimants Did Not And Cannot Demonstrate Excusable Neglect**

29.     Section 502(b)(9) of the Bankruptcy Code provides, in relevant part, that a

Court shall allow a claim "except to the extent that – proof of such claim is not timely filed."  11

U.S.C. § 502(b)(9).  Bankruptcy Rule 9006(b)(1) provides that "on motion made after the

expiration of the specified period [the court may] permit the act to be done where the failure to

act was the result of excusable neglect."  Fed. R. Bankr. P. 9006(b)(1).  In making this

determination, a court should consider all relevant circumstances including:  "the danger of

prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings,

the reason for the delay, including whether it was within the reasonable control of the movant,

and whether the movant acted in good faith."  Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.

P'ship, 507 U.S. 380, 395 (1993).  A creditor seeking to have its proof of claim deemed timely

filed has the burden of proving "excusable neglect" by a preponderance of the evidence.  See In

re O'Shaughnessy, 252 B.R. 722 (Bankr. N. D. Ill. 2000).

30.     Requests for extensions of time to file proofs of claim are "strictly

scrutinized" by the Court due to the importance of the bar date in the administration of a debtor's

chapter 11 cases.  Florida Dept. of Ins. v. Drexel Burnham Lambert Group, Inc. (In re Drexel

Burnham Lambert Group, Inc.), 148 B.R. 1002, 1005 (S.D.N.Y. 1993).

> 'The setting of a bar date is an important event in Chapter 11 cases.  The
> bar order by forcing creditors to make known their claims against the
> estate, enables the bankruptcy judge to tally up the debtor's assets and
> liabilities so that a reorganization plan can be developed.'  Thus, it may be
> said that harm to creditors who have acted in reliance on the certainty of a
> firm bar date is precisely the reason why an [sic] motion to extend the bar

> date must be strictly scrutinized and may be granted only if excusable
> neglect is found in 'extraordinary circumstances.'

Id. (quoting Hooker Investments, Inc., 122 B.R. 659, 664 (S.D.N.Y. 1991)).  Bankruptcy Rule

9006(b) vests the decision to extend the bar date "squarely within the discretion of the

bankruptcy judge."  Id. at 1008.

31.    In applying the Pioneer factors to determine whether a late-filed proof of

claim was the result of "excusable neglect," the Second Circuit focuses on the reason for the

delay in filing, including whether the cause of such delay was within the reasonable control of

the movant.  In re Enron Corp., 419 F.3d at 122-24.  The Second Circuit has noted that the other

factors delineated in Pioneer – prejudice, length of delay and impact on judicial proceedings –

will typically weigh in favor of the movant, and the court will therefore focus on the reason for

the delay in filing.  Id. at 122.  Further, "the equities will rarely if ever favor a party who fails to

follow the clear dictates of a court rule, and … where the rule is entirely clear, we continue to

expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer

test."  Id. at 123 (internal quotes omitted).

*Reason for Delay*

32.    A determination of whether the reason for delay is sufficient frequently

turns on the adequacy of the notice of the bar date, the sophistication of the creditor, and whether

the creditor had and followed its own internal procedures for dealing with such notices.  See In re

Keene Corp., 188 B.R. at 909 (citations omitted); see also In re Chateaugay Corp., 1993 WL

127180 at *6.  PB Capital acknowledges that it was aware of the Lehman Programs Securities

Procedures and the September 22 Bar Date for all other prepetition claims.  As discussed above,

the Bar Date order and the website www.lehman-docket.com provided adequate notice to

creditors that the Initial List was subject to change and would not be final until July 17, 2009.

Moreover, PB Capital is a sophisticated party and as stated above, its "its principal business activity is that of a finance company, engaging in real estate lending, credit investments and treasury functions." <u>Declaration of Coleman Gregory ¶3</u>.  In addition, PB Capital's counsel was involved in the crafting of the procedures and the creation of the Final List, and was informed that securities issued to US Investors would not be included on the Final List.  This is not the type of party that should be granted relief from a clear and unambiguous order of this Court.

33.     PB Capital's failure to timely file a proof of claim in the Debtors' chapter 11 cases was due to a clear error and failure to follow the directions of the Bar Date Order.  In <u>In re Enron Corp</u>., the Second Circuit affirmed the bankruptcy court's ruling that the failure to timely file a proof of claim "result[ing] solely from inadvertence," was not sufficient to support a motion to extend the bar date in that case. 419 F.3d at 126.  Similarly, the Supreme Court of the United States has noted that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." <u>Pioneer</u>, 507 U.S. at 392.  PB Capital cannot seriously contend that any factors outside its control contributed to his filing of a proof of claim after the Bar Date, as PB Capital would have realized that its securities had been removed from the Final List, if PB Capital had checked the Final List.  PB Capital's "inadvertent" oversight in failing to timely file a proof of claim in the Debtors' chapter 11 cases therefore does not constitute "excusable neglect" under Pioneer, and does not warrant an extension of the Bar Date with respect to its claim.

34.     PB Capital attempts to analogize this matter to the facts of Pioneer where the Supreme Court found excusable neglect because the bar date notice had been included inconspicuously in the notice of the meeting of creditors and was not clear and unambiguous. The instant facts bear no resemblance to those in Pioneer.  As stated herein, (i) PB Capital's

counsel participated in the drafting of the Lehman Programs Securities Procedures and the

creation of the Final List, (ii) the Bar Date Order clearly provided that only securities included

on the Final List would be  subject to the Lehman Programs Securities Procedures, and (iii) the

Debtors provided a bold statement on the www.lehman-docket.com immediately below the link

to the list of Lehman Programs Securities informing creditors that the list would not be finalized

until July 17, and creditors should check the Final List to determine whether their securities were

included.  PB Capital admits that they failed to check the Final List.  See Declaration of Coleman

Gregory ¶6.

*Prejudice*

35.    "Prejudice" includes not only the harm to the debtor but also the adverse

impact that a late claim may have on the judicial administration of the case, considering the size

of the late claim in relation to the estate.  See In re Keene Corp., 188 B.R. at 910; In re Drexel

Burnham Lambert Group, Inc., 148 B.R. at 1007; In re Alexander's Inc., 176 B.R. 715, 722

(Bankr. S.D.N.Y. 1995).

36.    In the instant case, the prejudice to the Debtors is that allowing PB Capital

to file its claim late, would "likely precipitate a flood of similar claims," a factor that has been

given great weight in past cases.  See In re Enron Corp, 419 F. 3d 115, 130 (2nd Cir 2005); In re

Kmart Corp, 381 F.3d 709, 714 (7th Cir. 2004) ("[I]f the bankruptcy court allowed all late-filed

claims of nearly a million dollars where simple 'innocent mistake'…was to blame for the

tardiness of the proof of claim, we think Kmart could easily find itself faces with a mountain of

such claims).  If PB Capital's claim is allowed any party that failed to file a claim prior to the

Bar Date in respect of any of the Euro Medium Term Notes that were issued to US Investors and

not included on the Final List, could make the same argument as PB Capital.

*Length of Delay; Good Faith*

37.     The Debtors (i) recognize that the length of the delay is minimal, and (ii) have no evidence that PB Capital was acting in bad faith when it filed the Motion, but these factors hardly counterbalance the other two Pioneer factors which weigh heavily in the Debtors' favor.

## **Reservation of Rights**

38.      In the event that the Court determines to grant the relief requested in the Motion, the Debtors reserve all of its rights to object to the validity and amount of any claims which may be filed by PB Capital.

39.     The Debtors reserve the right to conduct discovery as to the matters raised in the Motion and to supplement this filing as a result thereof.

WHEREFORE the Debtors respectfully requests the Court deny the Motion and grant such other and further relief as is just and proper.

Dated: New York, New York
          November 3, 2009

/s/ Shai Y. Waisman
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtor and
Debtor In Possession

<u>Exhibit A</u>

ORDERED that notwithstanding anything to the contrary contained in this Order,

the following procedures apply to the filing of any and all claims (including any claims under a

related Guarantee) against the Debtors arising from securities issued by the Debtors or any of the

Debtors' affiliates outside of the United States, solely to the extent identified on

http://www.lehman-docket.com under the heading "Lehman Programs Securities" (any such

security, a "<u>Lehman Program Security</u>") as of July 17, 2009 at 5:00 pm (prevailing Eastern

Time):

(a)   **November 2, 2009, at 5:00 p.m. (prevailing Eastern Time)** is established as the deadline (the "<u>Securities Programs Bar Date</u>") for each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit) (the "<u>Filing Entities</u>" and each a "<u>Filing Entity</u>") to file proofs of claim based on any Lehman Program Security;

(b)   the Debtors, in coordination with the Creditors' Committee, are authorized to, and will, create a notice of the Securities Programs Bar Date (the "<u>Securities Programs Bar Date Notice</u>") and a proof of claim form (the "<u>Securities Programs Proof of Claim Form</u>") as necessary to provide notice of the Securities Programs Bar Date;

(c)   the Debtors are authorized to, and will, translate the Securities Programs Bar Date Notice into relevant foreign languages; it being understood that claims submitted in respect of any Lehman Program Security must: (i) be written in the English language; (ii) to the extent a claim amount is reflected thereon, be denominated in lawful currency of the United States using the exchange rate as applicable as of September 15, 2008; (iii) conform substantially with the Securities Programs Proof of Claim Form; (iv) state the name and case number of the specific Debtor against which it is filed; (v) identify the International Securities Identification Number ("<u>ISIN</u>") and/or Committee on Uniform Securities Identification Procedures ("<u>CUSIP</u>") number, as applicable, for each Lehman Program Security; (vi) include either a Euroclear electronic instruction reference number or a Clearstream blocking reference number; (vii) be signed by the

Filing Entity or by an authorized agent of the Filing Entity; and (viii) be submitted in hard copy form with an original signature;

(d)    the Debtors shall publish on http://www.lehman-docket.com a proposed list of "Lehman Programs Securities," to include at a minimum issuances under (i) that certain U.S.$100,000,000,000 Euro Medium Term-Note Program, (ii) that certain U.S.$4,000,000,000 German Note Issuance Programme, as described in a certain Base Prospectus, dated August 28, 2007, (iii) the Swiss Certificates Programme, as described in a certain Programme Prospectus, dated November 29, 2007 and (iv) the Italian Inflation Linked Notes, dated December 2005 – December 2017, which list will include the ISIN and/or CUSIP, as applicable, for each Lehman Program Security, no later than July 6, 2009 at 5:00 pm (prevailing Eastern Time), and the Debtors, the Creditors' Committee, the account holders or holders of any Lehman Program Security that identify themselves in writing to the Debtors, and the trustees for Lehman Brothers Treasury Co. B.V. and other applicable foreign proceedings will work in good faith to agree on a list of "Lehman Programs Securities" by no later than July 13, 2009;

(e)    in the event there are any disputes concerning the contents of the list of "Lehman Program Securities," the Court may consider such disputes on an expedited basis with notice to the disputing parties;

(f)    notice of the entry of this Order, of the Bar Date and of the Securities Programs Bar Date in the form of the Securities Programs Bar Date Notice shall be deemed good, adequate, and sufficient notice if (i) it is  served by deposit in the United States mail, first class postage prepaid, and/or delivered by electronic mail on or before July 27, 2009 upon (1) the U.S. Trustee, (2) Euroclear, Clearstream and the Depository Trust Company and other similar clearing systems, as applicable (collectively, the "Clearing Systems") and (3) each of the issuers (and their representative or administrator) of the Lehman Program Securities (the "Issuers"), and (ii) the Debtors request that the Clearing Systems and the Issuers promptly distribute the Securities Program Bar Date Notice to the account holders and/or holders of any Lehman Program Security;

(g)    pursuant to Bankruptcy Rules 2002(f) and (l), the Debtors shall publish notice (translated into the appropriate language, if necessary) substantially in the form of the Securities Programs Bar Date Notice at least once in one leading national newspaper in each of Italy, Spain, France, Germany, The

Netherlands (in English), Switzerland, Luxembourg, United Kingdom, Hong Kong, Mexico, Belgium, Austria, Greece, Brazil, Argentina, Australia and Japan, each at least sixty (60) days prior to the Securities Programs Bar Date, which publication notice hereby is approved in all respects and shall be deemed good, adequate, and sufficient notice of the Bar Date and the Securities Programs Bar Date and the procedures for filing Proofs of Claim and Securities Programs Proofs of Claim in these cases;

(h)     any person or entity that files a claim based on both (i) a Lehman Program Security and (ii) any other claim, is not required to complete the Guarantee Questionnaire or Derivative Questionnaire in respect of the portion of the claim that relates to such Lehman Program Security, but is required to complete the Guarantee Questionnaire and Derivative Questionnaire, as applicable, prior to the Questionnaire Deadline with respect to all other claims that are not based on a Lehman Program Security;

(i)     persons or entities that file claims based on any Lehman Program Security are not required to attach or submit any documentation supporting any claim based on such Lehman Program Security; provided however that, the Debtors reserve the right to seek production of all documentation required by Bankruptcy Rule 3001(c) as part of the claims reconciliation process;

(j)     claims based on any Lehman Program Security shall not be disallowed on the ground that such claims were not filed by the proper party or an authorized agent, as contemplated by Bankruptcy Rule 3001(b);

(k)     a Filing Entity that files a claim based on any Lehman Program Security, by filing such claim, for the purposes of U.S. Bankruptcy proceedings, consents to and hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if any, except as otherwise provided in a confirmation order related to a plan, and responding to any objection interposed as to such claim.  For the avoidance of doubt, a Filing Entity that files a claim on behalf of multiple account holders or holders of any Lehman Program Security shall not be required to provide identifying information for such account holders or holders of any Lehman Program Security;

(l)     nothing in this Order shall impose a duty or obligation on any party to any agreement related to any Lehman Program Security to file a claim beyond

whatever duty or obligation currently exists in the applicable agreements for the Lehman Program Security or applicable law;

(m)       nothing in this Order shall prevent a holder of a Lehman Program Security that has filed a proof of claim from buying or selling claims based on a Lehman Program Security in a manner consistent with the applicable clearing system practice; and

(n)       other than as specifically provided in clauses (a) through (m) above, all provisions of this Order apply to holders of claims under any Lehman Program Security and holders of claims based on such Lehman Program Security are required to comply with all provisions of this Order;

and it is further

Bar Date Order, pp, 12-15.

<u>Exhibit B</u>

Email to Cleary Gottlieb July 13, 2009

**Bernstein, Mark**

| | |
|---|---|
| **From:** | Bernstein, Mark |
| **Sent:** | Monday, July 13, 2009 3:25 PM |
| **To:** | zsegal-reichlin@cgsh.com |
| **Subject:** | Re: Fw: Additions to Lehman Program Securities List |

Zoe-

I think the security with ISIN number US52522M4996 is a 144A security issued to US investors and therefore does not belong on the list.

Please let me know if you would like to discuss.

_____

Mark Bernstein
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Ph: (212) 310-8778
Fax: (212) 310-8007
mark.bernstein@weil.com

| | | |
|---|---|---|
| **"Zoe Segal-Reichlin" <zsegal-reichlin@cgsh.com>** | To | Mark.Bernstein@weil.com |
| 07/13/2009 08:45 AM | cc | jsullivan@fbgllc.com, Ksullivan@alvarezandmarsal.com |
| | Subject | Re: Fw: Additions to Lehman Program Securities List |

Mark -

Please find attached 11 more additions to Cleary's supplemental list.   Rows 40 to 50 are new.

Please advise as to the status of our proposed additions.

Best,

Zoe

_____

Zoe Segal-Reichlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2598 | f: +1 212 225 3999
www.clearygottlieb.com | zsegal-reichlin@cgsh.com

Exhibit C

Screenshot from www.lehman-docket.com, July 7, 2009



## Lehman Programs Securities And The Securities Programs Bar Date

"Lehman Programs Securities" are the securities that are included on the "Lehman Programs Securities" list. The current list of "Lehman Programs Securities" is available here.

The list of "Lehman Programs Securities" will be finalized on July 17, 2009 at 5:00. Prior to such time, securities may be added or deleted from the list.

**All holders of securities should review the list of "Lehman Programs Securitiues" after July 17, 2009 and prior to the Bar Date to confirm whether their securities are included on the final list of "Lehman Programs Securitiues".**

The deadline for filing of proofs of claims against the Debtors based on Lehman Programs Securities has been established as **November 2, 2009 at 5:00 p.m. Eastern Time.**

The **Notice of Deadlines for Filing Proofs of Claim Based Lehman Programs Securities** and the **Securities Programs Proof of Claim Form** for the filing of claims based on Lehman Program Securities will be available here no later than July 28, 2009.

<u>Exhibit D</u>

Email from Cleary Gottlieb, July 27, 2009

**Bernstein, Mark**

| | |
|---|---|
| **From:** | Zoe Segal-Reichlin [zsegal-reichlin@cgsh.com] |
| **Sent:** | Monday, July 27, 2009 9:38 AM |
| **To:** | Bernstein, Mark |
| **Subject:** | Re: Lehman Programs Securities Bar Date Notice and Proof of Claim |
| **Attachments:** | Program Securities Bar Date Notice CGSH comments.DOC |

Mark -

Thanks for sending this along.  I don't have any substantive comments, but we did catch a couple little nits.  You have likely already found these, but thought I would send them along just in case (in tracked changes).

Best,

Zoe

---

Zoe Segal-Reichlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2598 | f: +1 212 225 3999
www.clearygottlieb.com | zsegal-reichlin@cgsh.com

**Mark.Bernstein@weil.com**

25 July 2009  10:00 PM

To sshimshak@paulweiss.com, rzubaty@paulweiss.com, chammerman@paulweiss.com, schan@paulweiss.com, jmoss@cgsh.com, zsegal-reichlin@cgsh.com

cc

Subject Lehman Programs Securities Bar Date Notice and Proof of Claim

Attached is a draft of the Lehman Programs Securities Bar Date Notice and Proof of Claim form.  The order requires that we distribute this notice on Monday.

---

Mark Bernstein
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Ph: (212) 310-8778
Fax: (212) 310-8007
mark.bernstein@weil.com

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this