# EXHIBIT B

# CORY DECLARATION

{00086505.3 \ 0694-001}

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------x

**DECLARATION OF VICTORIA A. CORY IN SUPPORT OF
MOTION OF 1407 BROADWAY REAL ESTATE LLC AND PGRS
1407 BWAY LLC FOR AN ORDER (I) COMPELLING CERTAIN OF THE
DEBTORS TO COMPLY WITH THEIR LENDING OBLIGATIONS OR
ALTERNATIVELY, GRANTING THE MOVANTS RELIEF FROM THE
AUTOMATIC STAY AND (II) AUTHORIZING THE MOVANTS TO
CONDUCT EXAMINATIONS OF THE DEBTORS AND REQUEST THE
<u>PRODUCTION OF DOCUMENTS PURSUANT TO F.R.B.P. 2004</u>**

Victoria A. Cory, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am a Senior Vice President of Prime Group Realty Trust ("<u>Prime Group</u>"), and I am in charge of Prime Group's loan administration, real estate tax and due diligence group. I have held that position with Prime Group since February 13, 2006. Before then, beginning on April 1, 2000, I was Vice President of Prime Group.

2. Prime Group is the managing general partner of Prime Group Realty L.P., which is in turn the sole owner of PGRS 1407 BWAY LLC ("<u>PGRS 1407</u>").

3. I submit this declaration in support of the Motion[1] of PGRS 1407 and 1407 Broadway Real Estate LLC ("<u>1407 Broadway</u>" and together with PGRS 1407, the "<u>Movants</u>") pursuant to sections 105, 362(d) and 365(c) of title 11 of the United States Code (the

---

[1] Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

{00086505.3 \ 0694-001}

"Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") for entry of an order (a) compelling Lehman Brothers Holdings Inc. ("Lehman") and to the extent necessary, Lehman Commercial Paper Inc. ("LCPI "), to comply with their obligations to lend under the Loan and Loan Agreement (as defined below), or alternatively, granting the Movants relief from the automatic stay so that the Movants may declare Lehman and LCPI in default/breach of the Loan and all related documents, suspend payments under the Loan and the Net Profits Agreement (defined below), seek a replacement lender for the remaining unfunded portion of the Loan, and pursue any and all other available remedies, and (b) authorizing the Movants to request documents from and conduct oral examinations of Lehman and, to the extent necessary, LCPI.  I have reviewed the Motion and attest to the following facts upon personal knowledge, unless otherwise stated herein.

    4.    PGRS 1407 is the asset and development manager of the property owned by the borrower, 1407 Broadway, and PGRS 1407 and 1407 Broadway are also affiliates.  In connection with PGRS 1407's role and the relationships between Prime Group, PGRS 1407 and 1407 Broadway, I have become generally familiar with the terms of the Loan, and in particular, the Loan Agreement.

    5.    I am (or someone acting under my supervision is) responsible for assembling much of the paperwork that 1407 Broadway is required to provide under the Loan, including budgets, title commitments, leasing reports, insurance, and construction work orders.  In addition, I work regularly with the people who supervise the collection of rents and their deposit into the Lehman/Trimont lockbox account, and the funding of interest payments and the various reserves from the lockbox funds.  After the monthly interest and reserve payments are

made, the remaining funds become available to 1407 Broadway, and can be used to pay the ordinary operating expenses of the 1407 Broadway property.

6. In addition, I prepare draw requests for submission to Lehman pursuant to the terms and conditions stated in the Loan. Since May of 2007, I have made multiple requests to Lehman, through its agent, Trimont Real Estate Advisors, for "future fundings" (as defined in the Loan Agreement). I am authorized to make such requests by and on behalf of 1407 Broadway, and I make those requests by submitting written requests for funding, accompanied by borrowing affidavits and any other budgets or documents called for under the Loan. I sent in eleven funding requests between May 2007 and September 2008, and Lehman honored all of those funding requests, which totaled $7,709,490.96. As of the end of September 2008, $13,540,509.04 in "future fundings" remained available to 1407 Broadway under the Loan.

7. Upon learning of Lehman's bankruptcy filing in mid or late September 2008, I checked with Lehman and Trimont about how to proceed with future requests for funding under the Loan. I was advised that the procedures for submitting a funding request had not changed, and that each new request should be made through Trimont, with a copy to Lehman, in the same manner as in the past.

8. By a letter dated October 7, 2008, I communicated 1407 Broadway's twelfth request for funding under the Loan to Trimont and Lehman. In late October, I also sent both an updated budget for the last four months of 2008 and a proposed budget for 2009. Trimont acknowledged receipt of that budget on October 30, 2008.

9. On January 21, 2009, I sent 1407 Broadway's thirteenth request for funding to Trimont and Lehman.

{00086505.3 / 0694-001}

3

10. Between October 7, 2008 and early February of 2009, I contacted Trimont and Lehman numerous times to find out why the funding requests had not been honored. I was repeatedly told that Lehman would be providing funding but no money was received. Eventually, 1407 Broadway, PGRS 1407 and Prime Group had to refer the matter to counsel.

11. In February of 2009, with the assistance of counsel, I prepared a declaration in connection with a motion to compel payment or alternatively, grant the Movants relief from stay. I understand that the motion and my declaration were filed with the Court in late February.

12. In March and early April of 2009, I prepared and submitted two additional draw requests to Trimont and Lehman, and on April 17, 2009, all four outstanding funding requests were paid by Lehman. The total amount of the payment was $3,193,160.00, leaving $10,453,736.71 available to 1407 Broadway under the Loan.

13. In early February 2009, I also learned of a letter from Michael Frege to 1407 Broadway. I reviewed the letter, in which Mr. Frege identified himself as the Insolvency Administrator of Lehman Brothers Bankhaus AG, a German company. The letter referenced a December 2008 letter and made general reference to claims that Lehman Brothers Bankhaus AG might hold against 1407 Broadway. I referred that letter to counsel, as I was not aware of any December 2008 letter, or more importantly, of any relationship between Bankhaus and 1407 Broadway, its asset manager or Prime Group.

14. It is my understanding that counsel advised Mr. Frege's representatives in writing that 1407 Broadway never received the supposed December 2008 letter and that we knew of no claims or relationship with Bankhaus. To my knowledge, neither counsel nor any of 1407

{00086505.3 / 0694-001}

4

Broadway, PGRS 1407 or Prime Group has heard anything more from Mr. Frege or his representatives.

15. In the Spring of 2009, I also was told in an email from Derek Dobson of Trimont Services that Swedbank AB, a foreign bank, had somehow gotten involved with the Loan. I was not provided with any assignment or participation documents, and to this day, I do not know precisely when or how Swedbank became involved with the Loan. But in light of this information, I began sending proposed leases to both Lehman and Swedbank.

16. I sent four proposed leases out to Lehman and Swedbank for lender approval in late April of 2009, and received written approvals from both on May 8, 2009. All four leases contemplated that 1407 Broadway would make significant tenant improvements to the leased space -- costs that the Loan was in place to fund.

17. From late April 2009 through the present, I have continued to be responsible for the preparation and submission of funding requests under the Loan. The following requests have been submitted to Trimont and Lehman:

| Draw Request | Request Date | Amount |
|---|---|---|
| 16 | 4/21/09 | $ 195,186.93 |
| 17 | 5/21/09 | $ 238,939.62 |
| 18 | 6/17/09 | $1,874,730.61 |
| 19 | 7/27/09 | $ 448,553.64 |
| 20 | 8/26/09 | $ 562,096.61 |
| 21 | 9/23/09 | $ 383,930.81 |

18. On or about August 11, 2009, I was provided with a copy of a letter from Swedbank, advising that Swedbank now held what had formerly been Lehman's rights and interests under the Loan Agreement, so I sent draw requests 20 and 21 to Swedbank as well.

19. Lehman has not honored any draw requests under the Loan since the April 17th payment, and as of the date of this declaration, none of requests 16 through 21 have been

{00086505.3 / 0694-001}

5

funded. I have communicated with Lehman and Trimont numerous times to ask about the overdue funding and stress that the borrower urgently needs the requested funds, particularly since the four new leases require that we make certain improvements for the tenants.

20. In July of 2009, Trimont notified me that Lehman had in fact transferred money to Trimont for draws 16 through 18. But Trimont subsequently notified me that it had been instructed by Lehman not to distribute the money, because Lehman needed to get approvals from other parties.

21. To the best of my knowledge, 1407 Broadway has been in compliance with the Loan at all times during this process. Monthly debt service has been paid through the lockbox arrangement, with Trimont sweeping the lockbox account on the 9th day of each month, and upon information and belief, depositing the required amounts into the tax and leasing escrows, and transferring the interest payment to Lehman. Moreover, the Loan Agreement requires that copies of all notices to 1407 Broadway be sent to Prime Group, and any notices or correspondence about this Loan received by Prime Group would, as a matter of course, be directed to my attention. I have never received any notice of default with respect to the Loan or any notice that the 2009 budget has been rejected by Lehman or anyone else.

22. Lehman's continuing failure to fund has become an urgent matter as the requested funds are needed to (i) make capital improvements to the building, (ii) do necessary construction for tenants and (iii) generally insure that the property remains a first class building. While I very much doubt that there would ever be a good time for a lender to breach its lending

{00086505.3 / 0694-001}

6

obligations and obstruct such necessary work, maintaining the building as a first class facility is particularly important in the current real estate market.

Executed on:   November 4, 2009

*Victoria A. Cory*
Victoria A. Cory