WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                            :
**In re:**                                   :    **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC., et al.**    :    **08-13555 (JMP)**
                                            :
                            **Debtors.**     :    **(Jointly Administered)**
                                            :
-------------------------------------------------------------x

**OBJECTION TO MOTION OF BANESCO BANCO**
**UNIVERSAL REQUIRING LEHMAN BROTHERS HOLDINGS INC.**
**TO PROVIDE REQUESTED INFORMATION AND TO DEEM CLAIM**
**TO BE TIMELY FILED BY THE SECURITIES PROGRAMS BAR DATE**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and as debtors

in possession (the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"),

respectfully submit this response in opposition (the "Objection") to the motion, dated October

31, 2009 (the "Motion"), of Banesco Banco Universal ("Banesco") for an order requiring the

Debtors to provide the identification number of a particular security to Banesco and include such

security on the list of Lehman Programs Securities (as defined below) or, alternatively, deeming

certain late filed claims of Banesco to be timely filed if filed prior to the Securities Programs Bar

Date (as defined below), and respectfully represent:

## PRELIMINARY STATEMENT[1]

1.      In accordance with Banesco's request in the Motion, the Debtors have

reviewed their books and records and determined that the certain Three-Year Venezuelan Bolivar

Fuerte Linked Note held by Banesco (the "Banesco Note") was a privately placed security issued

in physical form solely to Banesco and was not part of a larger issuance of securities. The

Debtors records indicate that the Banesco Note does not have a CUSIP or ISIN. The Debtors

have communicated this information to Banesco.

2.      The Banesco Note was <u>not</u> included on the Final List of Lehman Programs

Securities. The provisions of the Bar Date Order[2] are clear that securities were only entitled to

the benefit of the later bar date **"solely to the extent identified on http://www.lehman-**

**docket.com under the heading 'Lehman Programs Securities.'"** *See* Bar Date Order at 12.

Therefore, like all claims against the Debtors (other than those based Lehman Programs

Securities), claims based on the Banesco Note were required to be filed by September 22, 2009

(the "Bar Date"). Banesco did not file a claim prior to the Bar Date.

3.      It was Benesco's obligation to confirm that the Benesco Note was

included on the Final List. Pursuant to the Court's Bar Date Order, Banesco had an opportunity

to request the inclusion of the Banesco Note on the Final List in accordance with the Lehman

Programs Securities Procedures prior to July 13, 2009 or petition the Court with respect thereto

prior to July 17, 2009. However, Banesco never requested the inclusion of the Banesco Note

---

[1] Capitalized terms used but not defined shall have the meanings ascribed to them below.

[2] Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, entered on July 2, 2009 [Docket No. 4271] (the "Bar Date Order").

prior to July 13, 2009 or petitioned the Court prior to July 17, 2009 as required by the

procedures. Banesco's inability to confirm whether the Banesco Note was included on the Final

List or take one of the many steps within its control pursuant to the Lehman Programs Securities

Procedures to have the Benesco Note included on the Final List required Banesco to file a proof

of claim prior to the Bar Date. Instead, Banesco relied upon its erroneous assumption that the

Banesco Note was on the Final List and missed the Bar Date.

4.      While Banesco seeks leave to file a late claim based upon nothing more

than sweeping allegations as to the alleged "complexity" of the Lehman Programs Securities

Procedures and difficulties in managing the filing of claims, the Motion at its base seeks relief

for the failure of Banesco to comply with the clear provisions of the Bar Date Order. The

declaration attached to the Motion confirms that Banesco and its counsel knew in August that

they were required to file a claim in respect of the Banesco Note. Yet, neither the Motion nor the

declaration provide any justifiable reason for Banesco's failure to timely file a claim. Banesco

has not, and cannot, set forth an argument of excusable neglect.

**BACKGROUND**

5.      Commencing on September 15, 2008 (the "Commencement Date") and

periodically thereafter, as applicable, LBHI and certain of its subsidiaries commenced with this

Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and

are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

6.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

7.    Pursuant to the Bar Date Order, the Bankruptcy Court established September 22, 2009 at 5:00 p.m. as the deadline for each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit) to file proofs of claim based on prepetition claims against the Debtors.

8.    Furthermore, the Bar Date Order provides that pursuant to Bankruptcy Rule 3003(c)(2), any holder of a claim against the Debtors who is required, but fails, to file a proof of such claim on or before the Bar Date in compliance with the Bar Date Order "shall be forever barred, estopped and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim." *See* Bar Date Order at 9-10.

9.    In response to the many objections filed in response to the Bar Date Motion,[3] and oral arguments in Court that the typical claim filing procedures are unfair and overly burdensome on the holders of certain securities issued by the Debtors and its affiliates to retail investors outside of the United States, the Debtors agreed to create alternative and simpler

_____

[3] Motion of the Debtors Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form, dated as of May 26, 2009 [Docket No. 3654] (the "Bar Date Motion").

procedures for the filing of such claims (the "Lehman Programs Securities Procedures").  The

Lehman Programs Securities Procedures include, among other provisions, a streamlined proof of

claim form and a later deadline of November 2, 2009 at 5:00 p.m. (the "Securities Programs Bar

Date") for holders to file claims against the Debtors based on Lehman Programs Securities.

        10.     The Debtors agreed to implement alternate procedures at the hearing on

the Bar Date Motion on June 29, 2009.  Subsequent thereto, the Debtors worked with all

interested and willing parties to create the Lehman Programs Securities Procedures, which

included the procedures for creating the list of securities that would be subject to the Lehman

Programs Securities Procedures.  The Debtors and counsel at more than a dozen other law firms

around the world had numerous conference calls and reviewed numerous drafts of the Lehman

Programs Securities Procedures prior to settling on the procedures included in the Bar Date

Order.  The Lehman Programs Securities Procedures that were included in the Bar Date Order

are annexed hereto as Exhibit A.

        11.     As the Court may recall, at the hearing on June 29, 2009, neither the

Debtors nor the creditors could precisely indicate which securities should be subject to the

Lehman Programs Securities Procedures.  Furthermore, since the Debtors did not issue a large

majority of the relevant securities, they did not have records of all of the securities issued by

their foreign affiliates under such program or similar programs.  Therefore, the agreed upon

procedures for creating the list of Lehman Programs Securities provided that the Debtors would

post an initial list of securities on the website www.lehman-docket.com, as a starting place for

negotiation of the final list.  The publication of the initial list would be followed by a one week

period where the Debtors would work in good faith with all parties to agree on a final list of

Lehman Programs Securities.

12. The Debtors posted the initial list of Lehman Programs Securities on July 6, 2009 (the "Initial List"), which included 3,798 securities! During the ensuing week, the Debtors were inundated with requests from many creditors seeking the inclusion of thousands of additional securities on the final list of Lehman Programs Securities. However, Banesco did not request that the Final List include the Banesco Note. Following a frenetic week of negotiations and diligence on the requests, the Debtors added almost 3,000 additional securities to the list, for a total of 6,744 securities and posted a proposed final list on www.lehman-docket.com on July 13, 2009.[4] The Debtors then allowed for an additional four day period for any party to request that the Court consider any disputes regarding the final list. Banesco had an obligation to verify the Final List and voice any concerns. It did neither. When no such complaints were made, the list of securities became the final list of Lehman Programs Securities on July 17, 2009 (the "Final List") and the Debtors posted such list on www.lehman-docket.com.

13. The Debtors were aware that they had a diverse group of creditors in countries all around the world. Therefore, the Debtors endeavored to provide notice of the Bar Date as broadly as possible. As a result, the Bar Date in the Debtors' cases likely is the most publicized bar date in history of bankruptcy cases. With respect to the Bar Date, the Debtors mailed approximately 256,000 notices of the Bar Date and proof of claim forms, and published notice of the Bar Date in The New York Times (International Edition), The Wall Street Journal (International Edition) and The Financial Times. With respect to the Securities Programs Bar

---

[4] In reviewing the requests for the inclusion of thousands of additional securities on the Final List, the Debtors were over-inclusive in accepting securities and only excluded securities to the extent that the Debtors had a specific reason to exclude such security (e.g., such securities were issued to US Investors, were common or preferred stock of the Debtors or were securities in which the Debtors had no obligation or relation whatsoever). To the extent the Debtors could not identify a particular security, the Debtors requested supporting documentation or included the security on the Final List.

Date, the Debtors distributed notice of the Securities Programs Bar Date and proof of claim

forms to the various clearing agencies, which distributed them to each record holder of the

Lehman Programs Securities.  Furthermore, the Debtors published notice of the Securities

Programs Bar Date in 10 languages (plus 7 translations for local dialects) in 26 newspapers in 18

countries.  As a result of this monumental noticing effort, over 50,000 proofs of claim have been

filed against the Debtors.

## OBJECTIONS

A.    **The Banesco Note is Not a Lehman Programs Security and Should
Not be Added to the Final List of Lehman Programs Securities**

14.    In response to Banesco's request in the Motion that the Debtor's provide

the CUISP or ISIN of the Banesco Note, the Debtors have searched their books and records and

determined that the Banesco Note was issued in a private placement and in physical form.

Banesco was the only purchaser of the Banesco Note, and the Banesco Note was not part of a

larger issuance of securities.  Based on the records reviewed by the Debtors, no CUSIP or ISIN

was obtained for this Note.  The Debtors have communicated this information to Banesco.  The

Banesco Note is not included on the Final List by description or otherwise.

15.    The lead-in to the Lehman Programs Securities Procedures in the Bar Date

Order provides that "the following procedures apply to the filing of any and all claims (including

any claims under a related Guarantee) against the Debtors arising from securities issued by the

Debtors or any of the Debtors' affiliates outside of the United States, **solely to the extent

identified on http://www.lehman-docket.com under the heading 'Lehman Programs

Securities.'"** *See* Bar Date Order at 12.

16.    Banesco's contention that the Banesco Note should be added to the Final

List on the basis that it "is the type of claim that should properly have been on that list from the

outset," is contrary to the clear language of the Bar Date Order that a security was required to be included on the Final List to be subject to the Lehman Programs Securities Procedures. First, the Banesco Note is <u>not</u> similar to other securities on the list because it was issued only to one party rather than as part of a larger issuance of securities. The Banesco Note was not identified on the Final List and therefore, is not a Lehman Programs Security, subject to the Lehman Programs Securities Procedures.

17.    During the implementation of the procedures and creation of the Final List, the Debtors received requests from many parties, for the inclusion of securities on the Final List. The Debtors did not receive a request from Banesco to include the Banesco Note on the Final List. For the Banesco Note to be subject to the Lehman Programs Securities Procedures, Banesco was required to request its inclusion on the Final List or raise the dispute before the Court for consideration on an "expedited basis," as provided for in the Bar Date Order. *See* Bar Date Order at 13. Banesco did neither. Banesco should not be allowed to circumvent the clear terms of the Bar Date Order, and, after failing to utilize several opportunities to prosecute its position, now seek to retroactively rewrite the Court's order.

18.    Banesco's position that it did not know the ISIN of the Banesco Note, and therefore could not determine whether the Banesco Note was included on the Final List is irrelevant. Banesco could have requested the inclusion of the Banesco Note based on the description of the Banesco Note or request information from the Debtors about the Banesco Note back in July. The Debtors received several requests for inclusion of securities based on descriptions rather than ISINs. Banesco, by its own admission, made no such request from the Debtors until October 28, 2009, 118 days following the entry of the Bar Date Order and over a month after the Bar Date. *See* Motion at ¶ 10. Even had the Debtors provided information about

8

the Banesco Note to Banesco immediately following its request, the Bar Date for the Banesco Note had already passed.

19.    Banesco clearly understood the Lehman Programs Securities Procedures having filed other claims in compliance with such procedures, including a claim on behalf of Banesco Holdings CA [Claim No. 62723], annexed hereto as <u>Exhibit B</u>. *See* Motion at ¶ 19; Declaration at ¶ 7 ("Banesco (or related entities) also held three other notes . . . that are listed on the Program Securities List, and for which Chadbourne has prepared proof [sic] of claims."). Banesco had sufficient notice and opportunity to object to the procedures and Final List, but did not raise any such objections until it missed the Bar Date. Banesco has not stated a valid reason for adding the Banesco Note to the Final List at this time.

**B.    <u>Banesco Did Not And Cannot Demonstrate Excusable Neglect</u>**

20.    The Bankruptcy Rules direct a bankruptcy court to establish bar dates in chapter 11 cases. Bankruptcy Rule 3003(c)(3) requires that the bankruptcy court "fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3). Given the critical importance of the bar date to the successful administration of a chapter 11 case, requests for extensions of time to file proofs of claim are "strictly scrutinized" by courts. *Florida Dept. of Ins. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993).

> 'The setting of a bar date is an important event in Chapter 11 cases. The bar order by forcing creditors to make known their claims against the estate, enables the bankruptcy judge to tally up the debtor's assets and liabilities so that a reorganization plan can be developed.' Thus, it may be said that harm to creditors who have acted in reliance on the certainty of a firm bar date is precisely the reason why an [sic] motion to extend the bar date must be strictly scrutinized and may be granted only if excusable neglect is found in 'extraordinary circumstances.'

*Id.* (quoting *Hooker Investments, Inc.*, 122 B.R. 659, 664 (S.D.N.Y. 1991), *appeal denied*, 937

F.2d 833 (2d Cir. 1991)). Bankruptcy Rule 9006(b) vests the decision to extend the bar date

"squarely within the discretion of the bankruptcy judge." *Id.* at 1008.

      21.     Bankruptcy Rule 9006(b)(1) provides that "on motion made after the

expiration of the specified period [the court may] permit the act to be done where the failure to

act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The Supreme Court, in

interpreting the term "excusable neglect," has held that the term "neglect" in its ordinary sense

means "to give little attention or respect to a matter, or . . . to leave undone or unattended to

esp[ecially] through carelessness . . . and encompasses both simple, faultless omissions to act and

more commonly, omissions caused by carelessness." *Pioneer Inv. Serv. Co. v. Brunswick*

*Assocs. L.P.*, 507 U.S. 380, 395 (1993). The determination of whether a claimant's neglect of a

deadline is *excusable*, according to the *Pioneer* Court, however, is an equitable determination in

which a court should consider all relevant circumstances surrounding the claimant's omission,

including: "the danger of prejudice to the debtor, the length of the delay and its potential impact

on judicial proceedings, the reason for the delay, including whether it was within the reasonable

control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

      22.     In applying the *Pioneer* factors to determine whether a late-filed proof of

claim was the result of "excusable neglect," the Second Circuit has taken a "hard line" approach

that does not give the four factors equal weight but rather focuses on the third *Pioneer* factor—

the reason for the delay in filing, including whether the cause of such delay was within the

reasonable control of the movant—as the most critical. *In re Enron Corp.*, 419 F.3d 115, 122-24

(2d Cir. 2005) ("We have 'taken a hard line' in applying the *Pioneer* test . . . focus[ing] on the

third factor: the reason for the delay, including whether it was within the reasonable control of

10

the movant.") (internal citations and quotations omitted).  The Second Circuit has noted that the

reason for this approach is that the other factors delineated in *Pioneer* – prejudice, length of

delay and impact on judicial proceedings, and the movant's good faith – will typically weigh in

favor of the movant, and the court will therefore focus on the reason for the delay in filing.  *Id*. at

122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355 (2d Cir. 2003).

Failure to Follow Clearly Mandated Rules
And Ignoring a Known Bar Date Is Not Excusable Neglect

23.    While the Supreme Court in *Pioneer* recognized that courts are

"permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or

carelessness, as well as by intervening circumstances beyond the party's control," it further

observed that "inadvertence, ignorance of the rules, or mistakes construing the rules do not

usually constitute 'excusable' neglect . . . ."  *Pioneer*, 507 U.S. at 388, 391.  The Second Circuit

has applied a strict standard in determining whether inadvertence or mistake amounts to

excusable neglect, noting that "the equities will rarely if ever favor a party who fails to follow

the clear dictates of a court rule, and … where the rule is entirely clear, we continue to expect

that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test."

*In re Enron Corp.*, 419 F.3d at 123, 126 (internal quotations omitted).

24.    Banesco attempts to analogize this matter to the facts of *Pioneer* where the

Supreme Court found excusable neglect because the bar date notice had been included

inconspicuously in the notice of the meeting of creditors and was not clear and unambiguous.

The instant facts bear no resemblance to those in *Pioneer*.  As stated herein, (i) Banesco was well

aware of the Lehman Programs Securities Procedures and (ii) the Bar Date Order clearly

provided that only securities included on the Final List would be subject to the Lehman

Programs Securities Procedures.  Banesco allegedly timely filed other claims and successfully

11

navigated the procedures, other than with respect to the one claim subject to the Motion. Banesco's failure to file a claim based on the Banesco Note cannot be attributed to any alleged complexity in the Lehman Programs Securities Procedures or the claims filing procedures in the Debtors' chapter 11 cases, generally.

25.    Banesco's failure to timely file a proof of claim in the Debtors' chapter 11 cases was due to its failure to follow the directions of the Bar Date Order. Courts in the second Second Circuit have routinely held that such mistakes do not constitute excusable neglect. *See, e.g.*, *In re Enron Corp.*, 419 F.3d at 123-24 (noting that because the excuse given for the late filing has the greatest import, "when a party's or counsel's misunderstanding of clear law or misreading of an unambiguous judicial decree is the reason for the delay . . . we have continued to uphold findings of 'no excusable neglect' where the court cited the absence of unique or extraordinary circumstances.") (internal citations and quotations omitted); *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (acknowledging the "principle that failure to follow the clear dictates of a court rule will generally not constitute . . . excusable neglect"); *U.S. v. Hooper*, 43 F.3d 26, 29 (2d Cir. 1994) ("Ignorance of the law or rules does not, in general, constitute 'excusable neglect.'"). Banesco acknowledges that it was aware of the Lehman Programs Securities Procedures and the Bar Date for all prepetition claims. The mandates of the Bar Date Order are unambiguous and clearly dictate the rules and procedures regarding Lehman Programs Securities and filing proofs of claim. Banesco's failure to comply with these rules and procedures does not constitute excusable neglect.

26.    The fact that parties were busy in the weeks leading up to the Bar Date, and erroneously believed that the Banesco Note was included on Final List of their own inadvertence, also does not constitute excusable neglect. This very conclusion was reached by

the Second Circuit in *Enron*, where the court affirmed the bankruptcy court's ruling that failure

to timely file a proof of claim "result[ing] solely from inadvertence" attributed to the movant and

its counsel being so heavily focused upon and involved in negotiations regarding other matters of

the case was not sufficient reason to support a motion to extend the bar date.  419 F.3d at 123,

126.  In arriving at this holding, the *Enron* court stated that "preoccupation or an excessive

workload does not typically render a mistake excusable." *Id.* at 126.

Allowing Banesco's Claim Will Prejudice These Estates

27.    "Prejudice" includes not only the harm to the debtor but also the adverse

impact that a late claim may have on the judicial administration of the case, considering the size

of the late claim in relation to the estate.  *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr.

S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1007; *In re*

*Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995).

28.    In the instant case, the prejudice to the Debtors is that allowing Banesco to

file its claim late, would "likely precipitate a flood of similar claims," a factor that has been

given great weight in past cases.  *See In re Enron Corp.*, 419 F.3d at 130; *In re Kmart Corp.*, 381

F.3d 709, 714 (7th Cir. 2004) ("[I]f the bankruptcy court allowed all late-filed claims of nearly a

million dollars where simple 'innocent mistake'…was to blame for the tardiness of the proof of

claim, we think Kmart could easily find itself faced with a mountain of such claims . . . .").  If

Banesco's claim is allowed any party that failed to file a claim prior to the Bar Date in respect of

any security that was not included on the Final List, could make the same argument as Banesco.

Such a ruling could result in many more requests for late-filed claims to be deemed timely filed

claims.  Indeed several such requests already are pending and more are sure to follow.

Length of Delay; Good Faith

29.    The Debtors (i) recognize that the length of the delay is minimal, and (ii) have no evidence that Banesco was acting in bad faith when it filed the Motion, but these factors hardly counterbalance the other two *Pioneer* factors which weigh in the Debtors' favor.

## CONCLUSION

30.    Banesco failed to confirm whether the Banesco Note was included on the Final List, failed to request that the Banesco Note be included on the Final List or follow any of the procedures in the Bar Date Order to prosecute its position that the Benesco Note should be subject to the Securities Program Bar Date, and failed to timely file a claim. Banesco could have taken reasonable steps to confirm whether the Banesco Note was on the Final List or to request that it be included pursuant to the Lehman Programs Securities Procedures. The declaration submitted in support of Banesco's Motion concedes that the Final List was only reviewed to determine if "some of the securities in Banesco's accounts" were included. *See* Declaration at ¶ 9. It is not excusable that Banesco did not determine that each of Banesco's securities, including the Banesco Note, was included on the Final List prior to the Bar Date. Banesco's mere oversight in failing to follow clear procedures and timely file a proof of claim in the Debtors' chapter 11 cases was entirely within its control and, therefore, does not rise to the level of "excusable neglect" under *Pioneer* or warrant an extension of the Bar Date with respect to its claim.

## RESERVATION OF RIGHTS

31.    In the event that the Court determines to grant the relief requested in the Motion, the Debtors reserve all of its rights to object to the validity and amount of any claims which may be filed by Banesco.

14

32.    The Debtors reserve the right to conduct discovery as to the matters raised in the Motion and to supplement this filing as a result thereof.

WHEREFORE the Debtors respectfully requests the Court deny the Motion and grant such other and further relief as is just and proper.

Dated: November 10, 2009
        New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtor and
Debtor In Possession

## Exhibit A

ORDERED that notwithstanding anything to the contrary contained in this Order,

the following procedures apply to the filing of any and all claims (including any claims under a

related Guarantee) against the Debtors arising from securities issued by the Debtors or any of the

Debtors' affiliates outside of the United States, solely to the extent identified on

http://www.lehman-docket.com under the heading "Lehman Programs Securities" (any such

security, a "Lehman Program Security") as of July 17, 2009 at 5:00 pm (prevailing Eastern

Time):

(a)     **November 2, 2009, at 5:00 p.m. (prevailing Eastern Time)** is
established as the deadline (the "Securities Programs Bar Date") for each
person or entity (including, without limitation, each individual,
partnership, joint venture, corporation, estate, trust and governmental unit)
(the "Filing Entities" and each a "Filing Entity") to file proofs of claim
based on any Lehman Program Security;

(b)     the Debtors, in coordination with the Creditors' Committee, are authorized
to, and will, create a notice of the Securities Programs Bar Date (the
"Securities Programs Bar Date Notice") and a proof of claim form (the
"Securities Programs Proof of Claim Form") as necessary to provide
notice of the Securities Programs Bar Date;

(c)     the Debtors are authorized to, and will, translate the Securities Programs
Bar Date Notice into relevant foreign languages; it being understood that
claims submitted in respect of any Lehman Program Security must: (i) be
written in the English language; (ii) to the extent a claim amount is
reflected thereon, be denominated in lawful currency of the United States
using the exchange rate as applicable as of September 15, 2008; (iii)
conform substantially with the Securities Programs Proof of Claim Form;
(iv) state the name and case number of the specific Debtor against which it
is filed; (v) identify the International Securities Identification Number
("ISIN") and/or Committee on Uniform Securities Identification
Procedures ("CUSIP") number, as applicable, for each Lehman Program
Security; (vi) include either a Euroclear electronic instruction reference
number or a Clearstream blocking reference number; (vii) be signed by the

Filing Entity or by an authorized agent of the Filing Entity; and (viii) be submitted in hard copy form with an original signature;

(d)    the Debtors shall publish on http://www.lehman-docket.com a proposed list of "Lehman Programs Securities," to include at a minimum issuances under (i) that certain U.S.$100,000,000,000 Euro Medium Term-Note Program, (ii) that certain U.S.$4,000,000,000 German Note Issuance Programme, as described in a certain Base Prospectus, dated August 28, 2007, (iii) the Swiss Certificates Programme, as described in a certain Programme Prospectus, dated November 29, 2007 and (iv) the Italian Inflation Linked Notes, dated December 2005 – December 2017, which list will include the ISIN and/or CUSIP, as applicable, for each Lehman Program Security, no later than July 6, 2009 at 5:00 pm (prevailing Eastern Time), and the Debtors, the Creditors' Committee, the account holders or holders of any Lehman Program Security that identify themselves in writing to the Debtors, and the trustees for Lehman Brothers Treasury Co. B.V. and other applicable foreign proceedings will work in good faith to agree on a list of "Lehman Programs Securities" by no later than July 13, 2009;

(e)    in the event there are any disputes concerning the contents of the list of "Lehman Program Securities," the Court may consider such disputes on an expedited basis with notice to the disputing parties;

(f)    notice of the entry of this Order, of the Bar Date and of the Securities Programs Bar Date in the form of the Securities Programs Bar Date Notice shall be deemed good, adequate, and sufficient notice if (i) it is  served by deposit in the United States mail, first class postage prepaid, and/or delivered by electronic mail on or before July 27, 2009 upon (1) the U.S. Trustee, (2) Euroclear, Clearstream and the Depository Trust Company and other similar clearing systems, as applicable (collectively, the "Clearing Systems") and (3) each of the issuers (and their representative or administrator) of the Lehman Program Securities (the "Issuers"), and (ii) the Debtors request that the Clearing Systems and the Issuers promptly distribute the Securities Program Bar Date Notice to the account holders and/or holders of any Lehman Program Security;

(g)    pursuant to Bankruptcy Rules 2002(f) and (l), the Debtors shall publish notice (translated into the appropriate language, if necessary) substantially in the form of the Securities Programs Bar Date Notice at least once in one leading national newspaper in each of Italy, Spain, France, Germany, The

2

Netherlands (in English), Switzerland, Luxembourg, United Kingdom, Hong Kong, Mexico, Belgium, Austria, Greece, Brazil, Argentina, Australia and Japan, each at least sixty (60) days prior to the Securities Programs Bar Date, which publication notice hereby is approved in all respects and shall be deemed good, adequate, and sufficient notice of the Bar Date and the Securities Programs Bar Date and the procedures for filing Proofs of Claim and Securities Programs Proofs of Claim in these cases;

(h)    any person or entity that files a claim based on both (i) a Lehman Program Security and (ii) any other claim, is not required to complete the Guarantee Questionnaire or Derivative Questionnaire in respect of the portion of the claim that relates to such Lehman Program Security, but is required to complete the Guarantee Questionnaire and Derivative Questionnaire, as applicable, prior to the Questionnaire Deadline with respect to all other claims that are not based on a Lehman Program Security;

(i)    persons or entities that file claims based on any Lehman Program Security are not required to attach or submit any documentation supporting any claim based on such Lehman Program Security; provided however that, the Debtors reserve the right to seek production of all documentation required by Bankruptcy Rule 3001(c) as part of the claims reconciliation process;

(j)    claims based on any Lehman Program Security shall not be disallowed on the ground that such claims were not filed by the proper party or an authorized agent, as contemplated by Bankruptcy Rule 3001(b);

(k)    a Filing Entity that files a claim based on any Lehman Program Security, by filing such claim, for the purposes of U.S. Bankruptcy proceedings, consents to and hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if any, except as otherwise provided in a confirmation order related to a plan, and responding to any objection interposed as to such claim. For the avoidance of doubt, a Filing Entity that files a claim on behalf of multiple account holders or holders of any Lehman Program Security shall not be required to provide identifying information for such account holders or holders of any Lehman Program Security;

(l)    nothing in this Order shall impose a duty or obligation on any party to any agreement related to any Lehman Program Security to file a claim beyond

3

whatever duty or obligation currently exists in the applicable agreements for the Lehman Program Security or applicable law;

(m)     nothing in this Order shall prevent a holder of a Lehman Program Security that has filed a proof of claim from buying or selling claims based on a Lehman Program Security in a manner consistent with the applicable clearing system practice; and

(n)     other than as specifically provided in clauses (a) through (m) above, all provisions of this Order apply to holders of claims under any Lehman Program Security and holders of claims based on such Lehman Program Security are required to comply with all provisions of this Order;

and it is further

Bar Date Order, pp, 12-15.

4

# **Exhibit B**

**Banesco Claim**

**ORIGINAL**

| | |
|---|---|
| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **LEHMAN SECURITIES PROGRAMS<br>PROOF OF CLAIM** |

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et AL.
08-13555 (JMP)     0000062723

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

............ IS FOR COURT USE ONLY

| | |
|---|---|
| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br>Banesco Holdings CA<br>Av. Principal, entre calle Sorbone y Lincoln<br>Urb. Bello Monte. Edif. Ciudad Banesco<br>Caracas, Venezuela<br>Attn: Miguel Angel Marcano<br><br>with a copy to:<br>Chadbourne & Parke<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Attn: David LeMay, Esq. &<br>Christy Rivera, Esq. | { FORMCHECKBOX } Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number: _____<br>(If known)<br><br>Filed on: _____ |
| Telephone Number: 58-212-501-8451<br>Email Address: mmarcano@banesco.com | |
| Name and address where payment should be sent (if different from above)<br><br><br>Telephone Number:              Email Address: | { FORMCHECKBOX } Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

1.  Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim:    $ _See Addendum_____    (Required)

{ FORMCHECKBOX }   Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2.  Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

International Securities Identification Number (ISIN):              See Addendum              (Required)

3.  Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:
    See Addendum                         (Required)

4.  Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:
    See Addendum                         (Required)

| 5.  Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions. | FOR COURT USE ONLY |
|---|---|
| Date:<br>10/28/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Banesco Holdings CA, Miguel Angel Marcano | **FILED / RECEIVED**<br><br>NOV 0 2 2009<br><br>EPIQ BANKRUPTCY SOLUTIONS, LLC |

Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

{ title }

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The questions on the Proof of Claim form include instructions for completing each question. The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules*

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

____DEFINITIONS____          ____INFORMATION____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.
**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.
**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5).
A claim may be secured or unsecured, reduced to judgment or not, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal or equitable

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

**Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076**

**Lehman Programs Security**
Any security included on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

{ title }

**H A N D   D E L I V E R Y**

FILED / RECEIVED

NOV 0 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

_____    _____    _____
RECEIVED BY:                        DATE                                TIME