Hearing Date and Time:  November 18, 2009 at 10:00 a.m.
Objection Date and Time:  November 13, 2009 at 4:00 p.m.

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000
Craig M. Price

Attorneys for National Australia Bank Limited, as creditor

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al*., | CASE NO.  08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF NATIONAL AUSTRALIA BANK LIMITED TO THE DEBTORS'
MOTION, PURSUANT TO BANKRUPTCY RULE 2004, FOR AN ORDER GRANTING
AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS
AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES National Australia Bank Limited (*"NAB"*), by and through its counsel,

Chapman and Cutler LLP, and for its Objection to Debtors' Motion, Pursuant to Bankruptcy

Rule 2004, for an Order Granting Authority to Issue Subpoenas for the Production of Documents

2718280.01.01.doc

and Authorizing the Examination of Persons and Entities (the "*Motion*" and NAB's objection

thereto, the "*Objection*"), respectfully states as follows:

SUMMARY

1.      NAB is Counterparty to a number of transactions involving the Debtors in these

proceedings.   These transactions are generally sophisticated transactions involving derivative

contracts.   The procedures proposed by the Debtors provide affected parties with as little as 10

days to comply with subpoenas, as well as to review potentially numerous documents and

prepare privilege logs.   The proposed procedures do not provide sufficient time for compliance,

or provide enough time for NAB to provide any meaningful response given the highly technical

nature of the transactions between NAB and the Debtors.

2.      NAB has been working with the Debtors to resolve issues in these matters and it

believes this process has generally worked well.   It is the expectation of NAB that this dialogue

and cooperation will continue.   NAB does not object to providing the Debtors with any

information required by law, provided that it has adequate time to coordinate a response to the

relevant Rule 2004 request.   As such, NAB does not believe that it is appropriate to subject it to

these expedited procedures.   Therefore, given the consensual process which NAB and Debtors

have been using to date, and the lack of adequate time to comply in the draft order, NAB

believes that it should be excluded from the proposed procedures, or that a longer period of thirty

(30) days be provided for responses.[1]

ARGUMENT

3.      By the filing of this Objection, NAB by no means intends to signal that it is

unwilling to work with the Debtors to achieve an acceptable mechanism to resolve discovery-

---

[1]      Moreover, NAB believes that if the Court deems it appropriate to permit 2004 discovery to be initiated without leave of court, any "streamlined" subpoena procedures should be mutual so that parties in interest can also serve 2004 discovery on the Debtors as well.

- 2 -

related disputes.    In fact, it has already been working with the Debtors on a number of resolutions of certain issues in this case.  NAB, however, believes that the proposed procedures are not appropriate for complex structured finance transactions, and do not provide adequate procedural safeguards for the interests of NAB.    For example, because NAB is a large, multinational banking institution and complying with a subpoena may involve numerous employees and affiliates in various locations along with the review of a potentially large number of documents, it may be difficult for NAB to protect its interests within the timelines provided by the proposed procedures.  NAB suggests that the Debtors work with it to identify areas where further discovery is appropriate on a mutually agreeable timetable, and only seek relief under Rule 2004 when an agreement cannot be reached.  Where an agreement cannot be reached, NAB requests that it be granted thirty (30) days to provide a response.  In summary, the proposed procedures are inappropriate for the nature of the complex transactions involved.

4.        In deciding whether to grant a 2004 discovery request, each situation should be examined individually on its own merits, and the interest of all parties should be considered.  *In re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (permitting limited examination, but noting "Rule 2004 requires that we balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination").

5.        A party seeking examination under Rule 2004 must first show that the specific examination is proper under the circumstances.  FED.R.BANKR.P. 2004(a); *see also  In re GHR Energy Corp.*, 35 B.R. 534, 537-38 (Bankr. D. Mass. 1983) (noting broad scope of allowable discovery under Fed.R.Bankr.P. 2004, but holding that "it must *first* be determined that examination is proper") (emphasis in original).  Here, the Debtors improperly attempt to circumvent the protections afforded to targets of Rule 2004 requests by removing this important determination from this Court's scrutiny.

6.      Moreover, before obtaining discovery under Rule 2004, a party must make a showing that it has "good cause" to do so. *See Matter of Wilcher*, 56 B.R. 428, 434-35 (Bankr. N.D. Ill. 1985).  The "good cause" standard requires a showing of "some reasonable basis to examine the material . . . [and] that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." *In re Grabill Corp*., 109 B.R. 329, 334 (N.D. Ill. 1989) (quoting *Wilcher*, 56 B.R. at 434-45).  This is especially true where a party seeks to examine a non-debtor entity.  *See Wilcher*, 56 B.R. at 433-34 ("[T]he main function of the examiner is to uncover defalcations involving the debtor and his management of the estate.  The examination of third parties is at best ancillary to that main purpose." (internal citations omitted)) (holding that examination may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs).  While NAB recognizes that there may be cause to initiate Rule 2004 discovery under certain circumstances in this matter, there is no exemption for "complex" cases in Rule 2004.  Parties such as NAB should not be forced to surrender important procedural safeguards afforded by the Federal Rules of Bankruptcy Procedure based on the perceived administrative inconvenience of the Debtors.

7.      In analyzing whether the motion requirement can be overlooked, courts have noted that "[a]lthough a subpoena issued by the clerk under seal is sufficient to compel the attendance of witnesses under Rule 2004, it must be preceded by an order of court allowing the Rule 2004 Examination to commence." *In re Hickman*, 151 B.R. 125, 127 (Bankr. N.D. Ohio 1993).  Pre-approving the Debtors to issue subpoenas without specific prior order of this Court would read out of Rule 2004(a) the requirement that the moving party file a motion.  Given the broad scope of discovery under Rule 2004 and the potential for abuse, Congress specifically drafted the rule to include Court oversight to protect targets of Rule 2004 discovery.  *See In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (courts will typically

reject Rule 2004 requests that are more disruptive and costly to the examinee than beneficial to the movant); *In re Drexel Burnham Lambert Group*, 123 B.R. at 712 (noting that "[t]he burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents"). This Court should not remove this important threshold protection.

8.      NAB is also concerned about the potentially significant cost of compliance with subpoenas issued by the Debtors. While the Motion provides some limited procedures for objecting to the subpoena, this process effectively shifts the burden from the Debtors to show "good cause" to NAB in resisting the subpoena. This is contrary to the mandates of Rule 2004, and inappropriate with respect to NAB, who could be subjected to multiple subpoenas under the proposed process. To the extent that the Court believes the proposed procedures are appropriate for the creditor body generally, the complex transactions involved in this case warrant a longer period of time within which to object or comply.

[Remainder of Page Intentionally Left Blank]

WHEREFORE National Australia Bank Limited respectfully requests that this Court deny the relief requested in the Motion and grant such other relief as the court deems appropriate.

Respectfully submitted,

NATIONAL AUSTRALIA BANK LIMITED, as
    Creditor

By: _____/s/ Ann Acker_____
                 One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
(312) 845-3000


Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
(212) 655-6000