Hearing Date and Time: November 18, 2009 at 10:00 a.m.
Objection Date and Time: November 13, 2009 at 4:00 p.m.

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000
Craig M. Price

Attorneys for U.S. Bank National Association, as Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | CASE NO. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE TO LBSF'S MOTION FOR AUTHORIZATION, PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006, TO ASSUME, ASSIGN AND SELL AN INTEREST RATE SWAP AGREEMENT WITH STRUCTURED ASSET RECEIVABLE TRUST SERIES 2005-1**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    NOW COMES U.S. Bank National Association, not individually but as Trustee for the

Structured Asset Receivable Trust Series 2005-1 ("*U.S. Bank*" or the "*Trustee*") by and through

its counsel, Chapman and Cutler LLP, to object, on a limited basis, to LBSF's Motion for Authorization, Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, to Assume, Assign and Sell an Interest Rate Swap Agreement with Structured Asset Receivable Trust Series 2005-1 (the "*Motion*", and U.S. Bank's limited objection thereto, the "*Objection*"). In support of its Objection, U.S. Bank states as follows:[1]

### SUMMARY

1. U.S. Bank objects to the Motion to the extent that (a) it seeks interest from the START Trust for the period prior to the assumption of the Agreement and (b) the relief requested does not require the Debtors to cure (i) LBSF's defaults by virtue of its failure, as Calculation Agent, to timely deliver notices with respect to the Payment Dates and the amounts due from the counterparties thereon, and (ii) pay the reasonable fees and expenses of the Trustee pursuant to Section 11 of the ISDA Master Agreement in connection with the preservation and protection of the START Trust's rights under the Agreement (as defined in the Motion). Additionally, the Debtors have failed to properly comply with the demand requirement of Section 2(e) of the Master Agreement and therefore are not entitled to default interest. Further, LBSF has failed to provide the required certification of the interest calculation under Section 14 of the Master Agreement. For these procedural reasons, and the additional reasons set forth below, LBSF should not be awarded default interest. Finally, U.S. Bank objects to the waiver of the ten-day stay under Bankruptcy Rule 6006(d). LBSF has failed to allege any immediate and irreparable harm that would occur from compliance with the requirements of this rule and has not met its burden to obtain a waiver.[2]

---

[1]   Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2]   On October 23, 2009 *Metavante* filed a Notice of Appeal of this Court's order, *inter alia*, compelling *Metavante's* performance under its swap agreement with LBSF. To the extent that that order is reversed,
*Footnote continued*.

**ARGUMENT**

2.  U.S. Bank serves as Trustee for the Structured Asset Receivables Trust, Series 2005-1 (the *"START Trust"* or the *"Trust"*). LBSF and the Trust entered into an interest rate swap under the terms of an ISDA Master Agreement dated as of December 15, 2004, by and between LBSF and the Trust, together with that certain Schedule to Master Agreement dated December 15, 2004 and Interest Rate Swap Confirmation dated December 15, 2004. This transaction was entered into in connection with an Amended and Restated Series Trust Agreement dated as of January 25, 2005 by and between Lehman Brothers, Inc., as Depositor and U.S. Bank National Association, as Trustee, as supplemented by those certain Standard Terms for Trust Agreements of equal date (collectively the *"Agreements"*). LBSF's obligations to the Trust were unconditionally guaranteed by Lehman Brothers Holdings, Inc. (*"LBHI"*).

3.  Importantly, LBSF served as Calculation Agent as defined in the 2000 ISDA Definitions under the terms of the Swap Agreement and had all of the obligations of a Calculation Agent thereunder. Section 365 gives a debtor the right, but not the obligation, to assume and assign beneficial executory contracts provided that certain conditions are met. 11 U.S.C. § 365 (2009). However, Section 365 requires the debtor to take the contract as it is, with its burdens as well as its benefits. *In re Village Rathskeller, Inc.,* 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992) ("the debtor or the trustee is not free to retain the favorable features of a contract and reject the unfavorable ones.")

**A.  LBSF Cannot Obtain Default Interest Because it in Default of its Obligations as Calculation Agent under the terms of the Agreement**

4.  Under the terms of the Agreement, LBSF was appointed as the Calculation Agent. *See* Part 4(e), Schedule to the Master Agreement, at 24. The Calculation Agent plays a very

---

U.S. Bank respectfully reserves its right, where appropriate, to reclaim any interest payments made to the Debtors under the Agreement.

- 3 -

important role under the Agreement. The Agreement, by its terms, is governed by the 2000 ISDA definitions. The 2000 ISDA Definitions set forth the following duties and responsibilities of the Calculation Agent:

> Section 4.14. Calculation Agent. "Calculation Agent" means the party to a Swap Transaction (or a third party) designated as such for the Swap Transaction and responsible for: (a) calculating the applicable Floating Rate, if any, for each Payment Date or for each Calculation Period or Compounding Period; (b) calculation any Floating Amount payable on each Payment Date or for each Calculation Period; (c) calculating any Fixed Amount payable on each Payment Date or for each Calculation Period; . . . (e) giving notice to the parties of the Swap Transaction on the Calculation Date for each Payment Date or for each Calculation Period, specifying (i) the Payment Date, (ii) the party or parties required to make payment or payment then due, (iii) the amount or amounts of the payment or payments then due and (iv) reasonable details as to how the amount or amounts were determined . . .

*2000 ISDA Definitions,* § 4.14, at 7. LBSF failed to provide to the Trust or the Trustee the notice with respect to each Payment Date setting forth the amounts owed by the relevant counterparty to the other counterparty. The lack of the notice setting forth any payment due from the Trust, and thereby informing the Trust and the Trustee of the required payment, excuses the Trust from any obligations to pay interest on any amounts due from the Trust until an appropriate notice is provided by LBSF as Calculation Agent to the Trustee.

5.      The failure to provide the notice is a default under the terms of the Agreement. In order to assume the Agreement, LBSF is required to provide the requisite notices to the Trustee for each Payment Date. Upon providing the Notices to the Trust and the Trustee, the Trustee will pay the lesser of $5,084,229.91 or the aggregate amount reflected in the Notices net of any amounts due from LBSF.

**B.    LBSF Cannot Obtain Default Interest Because it Failed to Assume and Assign the ISDA Master Agreement until Now**

6.      U.S. Bank is mindful of the Court's recent ruling in the *Metavante* matter and is willing to remit the net principal amount owed to LBSF under the Agreement.  Nonetheless, while LBSF is currently agreeing to assume the obligations under the terms of the Agreement, it should not be entitled to interest on any Unpaid Amounts until LBSF formally assumes the Agreement.

7.      Until LBSF assumes the Agreement, there is no guarantee that LBSF would honor its obligations under the Agreement if the economic environment causes the Agreement to change from being "in the money" to LBSF, to being "out of the money" to LBSF.  In fact, this actually occurred in connection with the January 2009 Payment Date (according to the Motion) where LBSF owed the Trust money.  If this circumstance continued, it is likely that LBSF would not have assumed the Agreement at all.  For this reason U.S. Bank believes that LBSF is not entitled to interest unless and until it assumes the Agreement.  U.S. Bank adopts the arguments set forth by Metavante in the Motions relating to that matter.

**C.    LBSF Cannot Obtain Default Interest Because it has Failed to Comply with Section 2(e) of the Master Agreement**

7.      In addition, the Agreement requires that the Debtor make demand prior to its entitlement to default interest:

> Prior to the occurrence or effective designation of an Early Termination Date in respect of the relevant Transaction, a party that defaults in the performance of any payment obligation will, to the extent permitted by law and subject to Section 6(c), be required to pay interest (before as well as after judgment) on the overdue amount to the other party ***on demand*** in the same currency as such over due amount . . .

*Master Agreement* at § 2(e) (emphasis added) (*Motion* at Ex. A).  Until U.S. Bank was served with the Motion (via the ECF System), it had received no demand, nor any notice that the

Debtors would seek to obtain default interest from the START Trust. Thus, as a threshold matter, the Debtors have failed to comply with the contractual prerequisite to obtaining default interest and therefore are not entitled to default interest from the START Trust.

**D.    Equitable Considerations Weigh Against Awarding Default Interest**

8.    In *Metavante*, this Court ruled that counterparties waive their right to terminate swap agreements with LBSF when they unreasonably delay in exercising these rights. Such a waiver should apply equally here to the Debtors who have delayed for over a year in seeking to exercise their right to seek default interest. While Section 365 may preserve LBSF's right to assume beneficial contracts, this Court should not permit LBSF to obtain default interest without strictly complying with the demand requirements.

9.    The failure to make demand is also particularly significant to the Trust in this instance in light of the safe harbor provisions of the Bankruptcy Code. To the extent that the Trustee had notice that LBSF was demanding Default Interest, this would haven been an important factor for holders to consider in determining whether to timely designate an Early Termination Date. Until the Court's recent ruling in the *Metavante* matter, it was unclear whether counterparties could be required to perform at all. Moreover, had the Debtors timely complied with the demand requirement in the Agreement after the first payment was missed on October 21, 2008 (less than three weeks after LBSF's bankruptcy filing), the START Trust would have been within its right to terminate under any reasonable interpretation of the safe harbor period under Section 560 of the Bankruptcy Code. *See In re Mirant Corp.*, 314 B.R. 347 (N.D. Tex. 2004) (holding that counterparty was entitled to safe harbor protections despite a seven week delay). As Section 2(e) contains a demand requirement, the START Trust was reasonably entitled to notice and demand before it can be subjected to this significant additional cost.

10. The failure to comply with the demand requirement is also important in analyzing whether LBSF should be entitled to default interest under principles of equity. Section 365 was intended to give a debtor an opportunity to determine which contracts were important to a successful reorganization. *See generally In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993) (discussing "business judgment" standard). However, a decision to reject the Agreement would have obviously relieved the START Trust of any obligation to pay default interest. *See, e.g., In re Crippin*, 877 F.2d 594, 597 (7th Cir. 1989) (noting that rejection excuses performance by nonbankrupt party and that the debtor "must also give up any future benefit he might receive from the contract.") Thus, absent demand from LBSF, there is no way for counterparties to know whether they could be subjected to default interest payments, particularly since the decision to assume or reject is controlled by the Debtors in their business judgment and not by the counterparty. To permit LBSF to claim default interest without any demand or notice to counterparties (who do not even know whether their contract is to be assumed) would be highly inequitable under these circumstances, and would encourage the Debtors to unreasonably delay assumption of swap agreements to accrue additional interest. To the extent that LBSF intended to seek default interest from the START Trust post-petition, it should have made such a demand in a timely manner.

E. **LBSF has Failed to Comply with the Necessary Certification Requirements to Obtain Default Interest**

11. LBSF should also not be awarded default interest because it has failed to provide any detail for the interest demanded, and has failed to provide the required certification set forth in the "Default Rate" provisions in Section 14 of the ISDA Master Agreement. Section 14 defines "Default Rate" to mean "a rate per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee *(as certified by it)* if it were to fund or of funding the relevant amount plus 1% per annum." *ISDA Master Agreement* § 14. Here, the Trustee has not

received the required certification nor is there a certification (or any other detail) contained in the Motion. Until proper certification of the cost of funds is received, this Court should not permit LBSF to obtain interest at the Default Rate.[3]

F.  **U.S. Bank is Entitled to the Fees, Costs and Expenses of Enforcing and Protecting Its Rights With Respect to the Agreement**

12. Section 11 of the ISDA Master Agreement provides:

> A Defaulting Party will, on demand, indemnify and hold harmless the other party for and against all reasonable out of pocket expenses, including legal fees and Stamp Tax, incurred by such other party by reason of the enforcement and protection of its rights under the Agreement or any Credit Support Document to which the Defaulting Party is a party or by reason of the early termination of any Transaction, including, but not limited to, costs of collection.

As a result of the defaults of LBSF and LBHI under the Agreement, the Trustee has been required to incur fees, costs and expenses, including attorneys fees, in responding to questions from noteholders, evaluating its rights under the terms of the Agreements and its rights and limitations under the various trust documents, and reviewing and responding to the pending Motion. Under the terms of the Agreement, LBSF and LBHI as guarantor are obligated to reimburse U.S. Bank for these expenses.

G.  **LBSF has Failed to Provide an Adequate Basis for Waiving the 10-day Stay Under Rule 6006(d)**

13. Finally, this Court should not waive the ten-day stay required by Bankruptcy Rule 6006(d). In order to obtain a waiver of the stay, LBSF must show that there is a sufficient business need to close the assignment within the 10-day period. *In re PSINet, Inc.*, 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) (request denied when debtor made no evidentiary showing of a

---

[3] To the extent that the Debtors provide the required certification in the future, the Trustee respectfully reserves its rights to contest the certification on any basis permitted by applicable law.

business exigency requiring a closing within 10 days). Here, the Motion fails to articulate any harm that the estate will suffer if the rule is complied with. To the extent that the sale is to be approved, the order should remain stayed for the 10-day period required by Rule 6006(d) so that objecting parties can properly assess their respective rights.

WHEREFORE U.S. Bank National Association, as Trustee respectfully requests that this Court deny the relief requested in the Motion to the extent it requests the payment of interest on amounts due LBSF under the terms of the Agreement, to the extent LBSF seeks to avoid providing the Trustee with notice of the amounts due with respect to each past Payment Date as required by the Agreement, and to the extent LBSF seeks to avoid the obligation to pay the Trustee's fees and expenses under the Agreement, and grant such other relief as the court deems appropriate. A copy of a revised Order reflecting the Objections of the Trustee is attached hereto as Exhibit A.

      Respectfully submitted,

      U.S. BANK NATIONAL ASSOCIATION, not individually but as Trustee

      By: _____/s/ Ann Acker_____
                  One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
(212) 655-6000