Amended Hearing Date: November 18, 2009 at 10:00 a.m. (E.D.T.)

GREENBERG FREEMAN LLP
Michael A. Freeman (MAF-9600)
110 East 59th Street, 29th Floor
New York, New York 10022
(212) 838-3121
Attorneys for Marie Hunter

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In the Matter of: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC. et al., | Case No. 08-13555 (JMP) |
| | Jointly Administered |
| Debtors, | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MARIE HUNTER'S REPLY TO THE OBJECTIONS FILED
AGAINST HER CLAIM FOR THE ALLOWANCE
AND PAYMENT OF AN ADMINISTRATIVE EXPENSE
CLAIM PURSUANT TO 11 U.S.C. § 503(b) FOR A
<u>SEPARATION PAYMENT INCIDENT TO TERMINATION</u>

To:   THE HONORABLE JAMES M. PECK
      United States Bankruptcy Judge

      Marie Hunter ("Hunter") by and through her undersigned attorneys, submits this reply to the objections filed to her claim for the allowance of an administrative claim for a separation payment arising under her Separation Agreement with Lehman Brothers, Inc. (the "Agreement").[1]

---

[1] A copy of the Separation Agreement is attached as Exhibit B to Hunter's moving papers.

**ARGUMENT ON REPLY**

**THE OBJECTION OF THE DEBTORS IS WITHOUT MERIT**

1. Lehman Brothers Holdings, Inc. and its various affiliated entities (collectively the "Debtors") have raised the following points in their objection, filed on November 13, 2009 (the "Debtors Obj."): (a) Hunter's claim is not entitled to treatment as an administrative expense because her Agreement is a pre-petition contract and she did not provide actual post-petition benefit to the Debtors as required under the holding of Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98 (2d Cir. 1986) (Debtors Obj. ¶¶ 19-22); and (b) the $160,000 payment due to Hunter is not a severance payment of the type entitled to *per se* treatment as an administrative expense under Straus-Duparquet, Inc. v. Local Union No. 3 Intern. Broth. of Elec. Workers, A F of L, CIO, 386 F.2d 649, 651 (2d Cir. 1967) (Debtors Obj. ¶¶ 23-29.)

2. Neither of these arguments have merit.

A. Hunter's Separation Agreement Is a Post-Petition Contract and She Provided Benefit To the Debtors

3. McFarlin's held that "an expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." 789 F.2d at 101 (internal quotations omitted).

4. Debtors advance the overly simplistic argument that the Agreement must be considered a pre-petition contract because it was executed on

2

September 12, 2008, three days before the Debtors' filed for bankruptcy protection. (Objection ¶ 19.)

5. This contention ignores the most important language of the Agreement relating to this point, which appears in the very first section of the Agreement under the heading "<u>Effective</u> <u>Dates</u>, Payments and Benefits." (Exhibit B, emphasis added.)

6. This section of the Agreement identifies two relevant dates. First, the Agreement states that Hunter shall "remain an active employee through September 26, 2008." Second, the Agreement defines Hunter's "separation date" as "the earlier of November 21, 2009 or the date on which you become actively employed with another firm." (Exhibit B, ¶¶ 1-2.)

7. Obviously, both of these dates are after the date Debtors filed for bankruptcy, and they are the only dates that have any bearing on the parties' Agreement. In fact, as previously described in Hunter's moving papers and her accompanying declaraiton, all the services provided by Hunter to Debtors under the Agreement were performed after the filing date.

8. By contrast, there is no language anywhere in the Agreement to suggest that the date the Agreement was executed has any meaning under the terms of the parties' Agreement. Indeed, the Agreement contained a provision that gave Hunter 45 days "to review and consider th[e] agreement before signing it." (Exhibit B, page 5.) Given this language, it would be illogical for this Court to determine whether to classify the Agreement as a pre- or post-petition obligation based solely on the random act of when Hunter signed the Agreement.

3

9. Even if the Agreement were deemed to be a pre-petition contract based on the date it was signed, this still would not preclude Hunter from having her claim given administrative priority status. It is well-settled that claims arising under pre-petition contracts can receive administrative priority status as long as the claimant has provided an actual post-petition benefit to the estate. In re Chateaugay Corp., 10 F.3d 944, 956 (2d Cir. 1993).

10. Mindful of this rule, Debtors further challenge Hunter's claim that she has not provided adequate benefit to the Debtors' estate by the work she performed post-petition. (Debtors Obj. ¶ 21-22.) Although Hunter believes she adequately addressed this point in her moving papers, she now submits a declaration, attached hereto as Exhibit D, describing her actions and how she believes they benefitted the Debtors.

11. In addition or in the alternative, if the Court deems it appropriate, Hunter accepts the suggestion of Debtors to engage in further discovery to establish the nature of extent of the benefit conferred by Hunter's post-petition activities. (Debtors Obj. ¶ 22.)

B.  Hunter's Claim Is Properly Characterized As A Severance Payment

12. Debtors next challenge Hunter's assertion that her claim for a $160,000 "special separation payment" is entitled to *per se* treatment as an administrative expense under Straus-Duparquet, which held that payments incident to termination are allowable as administrative expenses under § 503(b).[2]

---

[2] In a related point, Debtors also argue that they were not required to formally rejected Hunter's Agreement. (Debtors' Obj. ¶¶ 28-29.) Hunter acknowledges that rejection was not required under the facts here, but that does not impact her right to relief.

4

13. The shortcomings of Debtors' contention are best illustrated by their apparent confusion over why Hunter has sought to recover only her $160,000 "special separation payment" and not the other benefits identified in the Agreement. (Debtors' Obj. at ¶¶ 1, 13, 26.)

14. Debtors take the position that Hunter was terminated pre-petition on September 8, 2008, when she was informed that her job was being eliminated. (Debtors Obj. ¶¶ 7-8, 25.)

15. The Agreement states otherwise, however. The Agreement provides that Hunter's status as an "active" employee did not end until September 26, 2008. Even more important, her employment by Lehman Brothers, Inc. was not supposed to end under the terms of the Agreement until the earlier of the date she found a new job or November 21, 2009 (the "separation date"). (Exhibit B at ¶ 2.)

16. Until her "separation date," Hunter was entitled to receive her normal salary and benefits. (Exhibit B. ¶ 2.) "In addition," Hunter was entitled to a $160,000 "special separation payment . . . payable within four weeks of [her] separation date." (Exhibit B. ¶ 3.)

17. On September 30, 2008, Hunter was notified by Lehman Brothers Holdings, Inc. that she would no longer be receiving "the salary continuation or other payments described" in her Agreement. (A copy of this letter is attached as Exhibit C to Hunter's moving papers.) It was this letter, and not the Agreement or the notice on September 8, 2008 that her job was being eliminated, that ended Hunter's employment, and triggered her separation from Lehman Brothers, Inc.

18. Her salary payments, therefore, were not being paid as a part of a severance package. Rather, they were compensation paid to her as an employee of Lehman Brothers, Inc. Hunter is aware of no authority that would entitle her to recover this unpaid salary as an administrative expense.

19. On the other hand, the $160,000 "special separation payment" promised to Hunter upon her termination is entitled to priority status under Straus-Duparquet and its progeny.

20. The Second Circuit in Straus-Duparquet described severance as "compensation for termination of employment . . . [where] employment . . . was terminated as an incident of the administration of the bankrupt's estate." 386 F.2d at 651. See also In re Bethlehem Steel Corp., 479 F.3d 167 (2d Cir. 2007) (severance payment does "not accrue day to day over the course of employment, but rather was triggered by termination").

21. The "special separation payment" payable to Hunter of the Agreement fits all these criteria. First, the Agreement clearly reflects that this payment was being made to compensate Hunter for the termination of employment, and, as a result, it was supposed to be paid four weeks after her "separation date." (Exhibit B.) Second, although Hunter was not supposed to be terminated until her "separation date," her employment was terminated on September 30, 2008 as an incident of the administration of the Debtors' estate. (Exhibit C.)

22. Debtors' attempt to distinguish Straus-Duparquet is unpersuasive. First, Debtors cite In re Phones For All, Inc., 288 F.3d 730 (5th Cir. 2002) (cited in Debtors Obj. ¶ 24), and In re AppliedTheory Corp., 312 B.R. 225 (Bankr.

6

S.D.N.Y. 2004) (cited in Debtors Obj. ¶ 24), for the proposition that severance payments are earned when the severance agreement is made, not when termination occurs. In both of those cases, however, the claimants were executives who entered into employment contracts at the commencement of their employment that provided for unconditional severance payments when they were terminated. Here, by contrast, the Agreement was intended to in compensate Hunter for her termination, and she did not earn the right to be paid until she had provided services to Debtors after they filed for bankruptcy protection.

23. Next, Debtors argue that the amount of the payment due to Hunter is not consistent with the "very limited" payments paid in other cases where severance payments were granted priority status. (Debtors Obj. ¶ 26.) A payment of $160,000, however, represents only 16% of Hunter's total compensation for the prior year, and hardly appears excessive when her 24 years of service to Lehman Brothers, Inc. are taken into account.[3] And it is far less, both in terms of percentages and dollars, to the types of payments being sought in AppliedTheory Corp. 312 B.R. at 232 (cited in Debtors Obj. ¶ 26), where the claimants were requesting double or quadruple their annual salary for one year in amounts totaling over $2.2 million.

## CONCLUSION

24. For the foregoing reasons, as well as those set forth in Hunter's moving papers, we respectfully requests that the Court grant the Motion by entering an

---

[3] In Straus-Duparquet, employees with as little as three years of service were entitled to a severance payment equal to two weeks pay, or just under 4%, of their annual compensation. 386 F.2d at 650. For this same reason, the payment to Hunter is not the type intended to be covered by the regulations prohibiting "golden parachute" payments.

7

order substantially in the form attached as Exhibit A, and for such other relief as the Court deems just and proper.

Dated: New York, New York
       November 17, 2009

> Respectfully submitted,
>
> GREENBERG FREEMAN LLP
>
> By: /s/ *Michael A. Freeman*
> Michael A. Freeman (MAF-9600)
> 110 East 59th Street, 29th Floor
> New York, New York  10022
> (212) 838-3121
> Attorneys for Marie Hunter