1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555-JMP

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC.,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                November 5, 2009

                2:10 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1      HEARING re Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      Transcribed by:  Pnina Eilberg

25

3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4          Attorneys for Debtor

5          767 Fifth Avenue

6          New York, NY 10153

7

8    BY:   GARRETT AVERY FAIL, ESQ.

9

10

11   HUGHES HUBBARD & REED LLP

12         Attorneys for SIPA Trustee

13         One Batter Park Plaza

14         New York, NY 10004

15

16   BY:   JEFFREY S. MARGOLIN, ESQ.

17         JAMES B. KOBAK, JR. ESQ.

18

19

20

21

22

23

24

25

4

```
 1
 2     SECURITIES INVESTOR PROTECTION CORPORATION
 3          Attorneys for SIPC
 4          805 15th Street N.W.
 5          Suite 600
 6          Washington, DC 20005
 7
 8     BY:   KENNETH J. CAPUTO, ESQ.
 9
10
11     HOGAN & HARTSON LLP
12          875 Third Avenue
13          New York, NY 10022
14
15     BY:   DAVID DUNN, ESQ.
16
17
18     SONNENSCHEIN NATH & ROSENTHAL LLP
19          Attorneys for Hudson City Savings Bank
20          1221 Avenue of the Americas
21          New York, NY 10020
22
23     BY:   LOUIS A. CURCIO, ESQ.
24
25
```

5

1    MILBANK, TWEED, HADLEY & MCCLOY LLP

2         Attorneys for LBHI Official Committee

3         One Chase Manhattan Plaza

4         New York, NY 10005

5

6    BY:   DENNIS C. O'DONNELL, ESQ.

7

8

9    BROWN RUDNNICK LLP

10        Attorneys for Newport and Providence Funds

11        7 Times Square

12        New York, NY 10036

13

14   BY:   ANDREW S. DASH, ESQ.

15

16

17   CHAPMAN AND CUTLER LLP

18        Attorneys for U.S. Bank

19        111 West Monroe Street

20        Chicago, IL 60603

21

22   BY:   JAMES HEISER, ESQ.

23        FRANKLIN H. TOP, III, ESQ.

24        (TELEPHONICALLY)

25

6

1

2   ALSO PRESENT TELEPHONICALLY:

3        MEGHAN S. MICHELS, Creditor, The Baupost Group

4        MITCHELL SOCKETT, Creditor King Street Capital Management

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7

1            P R O C E E D I N G S

2        THE COURT:  Be seated, please.

3    (Pause)

4        MR. CAPUTO:  Good afternoon, Your Honor.  Ken Caputo

5    on behalf of the Securities Investor Protection Corporation.

6        THE COURT:  Good afternoon.

7        MR. CAPUTO:  Thanks for taking the time today.

8        We're here to give you a very brief update on the

9    claims process --

10       THE COURT:  Okay.

11       MR. CAPUTO:  -- and the status of it in the SIPA

12   liquidation of Lehman Brothers, Inc.

13       You may recall, Your Honor, that on November 7th of

14   2008 you had entered an order specifying procedures that the

15   trustee could use to determine claims, resolve claims,

16   etcetera.  And the trustee and SIPC have been working on

17   implementing the terms and conditions of that order and we've

18   made terrific progress and we're here to tell you a little bit

19   about that progress and some of the obstacles that we face in

20   going forward.

21       We had sent a letter to the Court dated October 14th

22   of 2009 which sets forth some numbers which provide some sort

23   of barometer on where the estate is.  And in that letter we had

24   told you that there were approximately 594 objections relating

25   to 928 customer claims and that involved about 7,041 claims

8

1    that had been denied or reclassified.  Those numbers are

2    updated, some of which appear on the chart.  But we now have

3    received up through 627 objections to claims that relate to 965

4    customer claims and those are out of 8,356 determinations that

5    have been denied.  So we've made large progress in determining

6    a significant number of claims just since the letter has been

7    written to the Court over the last couple of weeks.  There are

8    a lot of objections, that's really the gist of what we're here

9    to talk about, for the most part.

10            Attached to our letter was a chart that set forth a

11    number of categories of objections and listed them and we have

12    an update to that, Your Honor.  And if it pleases the Court I'd

13    like to hand one up for you.

14            THE COURT:  That would be fine.  Thank you.

15        (Pause)

16            THE COURT:  This is an example of what's on the easel

17    as well?

18            MR. CAPUTO:  Exactly.

19            THE COURT:  Okay.

20            MR. CAPUTO:  And these are the categories of

21    objections that we have received.  Without getting into any of

22    the specifics of the issues or the numbers, and in a minute

23    you're going to hear from Jim Kobak representing the trustee

24    who's going to be able to tell you a little bit more about the

25    specific numbers.  But as an overview, what we have done thus

1    far and what we intend to continue to do is to address this

2    case much like we've addressed SIPA cases in jurisdictions

3    throughout the country and in many of the cases that have come

4    before judges in this district.

5         And part of that process is, once you have an

6    objection and once you have an issue that you know needs to be

7    determined and then resolved, we tend to -- we want to reach

8    out to those claimants and we've done so here, repeatedly, is

9    reach out to the objector.  Try to get your hands around what

10   the actual dispute is all about, what the facts are, what the

11   law is, what the issues are and first see if you can reach

12   common ground.  We've been successful thus far in having more

13   than thirty objections, that have been filed, withdrawn.  So

14   that process we hope would continue and we're able to make

15   progress on having objections withdrawn, so be it, that's

16   terrific.

17        There will be a number of them, however, that that's

18   just not going to happen.  There are going to be real issues

19   and significant issues that will have to come before the Court

20   for resolution.

21        Recently we filed, the trustee filed, a motion for

22   resolution on an agreed order basis of a dispute which we think

23   serves as a bit of a model for what we would like to do going

24   forward.  And in that dispute the parties have submitted fairly

25   concise lists with stipulated facts and on that basis the

10

1   parties have set forth what they would like to do on a briefing

2   schedule.  And then they, assuming the Court enters the order,

3   the briefs would be filed and the issue would be ripe for

4   resolution by the Court.

5        So many of the disputes that we have, whether it's on

6   TBA's or repos or any of the categories that you see on the

7   chart, what we'll intend to do is to try to find a resolution.

8   Where we can't find a resolution, get our hands around it as

9   litigants without affecting the Court.  And then, and only

10  then, coming before the Court via motion and at the convenience

11  of the Court set it down for hearing or other types of

12  resolution as may be necessary.

13       So that's generally the process that we envision.

14  That's what worked well in SIPA cases in many jurisdictions.

15  What we're really trying to alert the Court to, perhaps, is the

16  fact that we do have a lot of objections.  And some of these

17  objections involve significant dollars and they're significant

18  issues to the claimants.  You're talking issues in the tens if

19  not hundreds of millions of dollars or more.  So they're not

20  going to go away, is what we're trying to tell you.  And we're

21  going to have to get to the point where we resolve them.  So we

22  recognize that the Court has a very busy calendar, so we intend

23  to work with your clerks and your calendar clerk and try to get

24  these scheduled up in a way that best fits the Court's

25  schedule.

11

1    THE COURT:  Let me understand what it is that you

2    envision happening, assuming you have a group of objections

3    that fall within a particular category, and we're talking about

4    large numbers of claims within that category.  Let's just pick

5    one of example, a TBA has 360.

6    MR. CAPUTO:  Right.

7    THE COURT:  Four more then existed on the 14th of

8    October when you sent me the letter.  Let's just use that as a

9    round number.  What do you do and how do you make that an

10   orderly process and to what extent is alternative dispute

11   resolution techniques that have been identified for purposes of

12   the LBHI case techniques that might be suitable here and to

13   what extent is that not suitable?

14   MR. CAPUTO:  The first thing we do is make contact

15   with each of the objectors, their counsel, and try to gauge

16   essentially what the issues are and what their inclination is

17   to be in the lead of resolution of that issue or as part of a

18   group that is willing to go along with the lead group.  With

19   that issue in particular, because of its magnitude, I think

20   we're going to have to spend a fair amount of time just getting

21   our hands around all of the different parties.  But we will be

22   reaching out to them absent the court process and trying to

23   gauge from each of the parties what their issues are and

24   whether or not we can, at all, get to a point where we

25   concisely have facts and then issues or matters of law for

12

1    resolution.

2         It may be, with that particular class because it's so

3    large, that there are a series of sub issues or sub

4    determinations that need to be remedied.  There may be a

5    certain type or different category within the TBA class.  We

6    don't know that yet but that may turn out to be the case as we

7    reach out to these parties, where you have lesser numbers.

8    Where you have, for example, thirty-eight for lack of

9    information or, you know, I can tell you that there have been a

10   number of claimants who have filed claims for their LBHI bond

11   that they want back or losses in their account after 9/19, that

12   kind of thing.  What we intend to do, we reach out to them; we

13   collectivize that as best we can.

14        As for the alternative dispute resolution process, it

15   presents a bit of a quandary for us as a program going forward.

16   Can't rule it out because where it may apply it may be possible

17   to work it in.  But for the most part, the resolutions of

18   issues here are issues of law, matters of law under the

19   Securities Investor Protection Act and it's applicability and

20   sections of the Code and whether they apply in SIPA or not.

21        So it may be very difficult to have a mediator or

22   arbitrator come before and try to work out a solution that

23   would be amenable to 360 parties or maybe 135 parties in the

24   second category.  I can't say it would not be possible,

25   standing here today, I think it may be.  But what we've seen,

13

1    of course we've never seen this kind of magnitude in a SIPA

2    case, but what we've seen in other issues it comes down to a

3    determination that needs to be made by a court of law.  And

4    what the importance of that is, seen by the fact that the

5    determination by the Court, the ultimate determination of the

6    legal issue provides clarity for, among others, the regulatory

7    process, investors, customers and it helps each of those

8    parties down the road gauge better their risk, their appetite

9    for risk, their ability to manage their affairs and also tells

10   them what kind of protections are available to them ultimately

11   down the road.

12           So we may be able to -- we have mediated disputes in

13   the past within the SIPA context, we have been successful doing

14   that.  But here it may come down to a number of them requiring

15   the Court to determine what the law is.  So I think we're going

16   to be flexible and we'll certainly look to work with the Court

17   to the maximum extent we can on that and see if we can make

18   some headway.

19           So I'm not ruling anything out.  Of course I wouldn't

20   categorically say we can't do that but it may prove difficult

21   for some of these issues down the road.

22           THE COURT:  Okay.

23           MR. CAPUTO:  Thank you.

24           MR. KOBAK:  Good afternoon, Your Honor.  James Kobak,

25   Hughes Hubbard & Reed for the Trustee.

14

1        I just wanted to focus on some of the individual

2   categories.  Although there are a large number of claims it's

3   not quite as daunting, perhaps, as appears.  And the TBA's for

4   instance, although they're 360 pending objections and there

5   probably will be more in the future, the great majority of

6   those are really accounted for by clients of three or four

7   entities; BlackRock, Pimco, Morgan Stanley and Galliard.  And

8   we've already talked to some of those people, so I think as a

9   practical matter we see this as involving one or two overriding

10  legal issues.  And I think we should be able to work with some

11  of those parties to get this issue teed up.

12       If it were to be determined that there were customer

13  claims, there might perhaps be some factual issues that would

14  then have to be dealt with that we could either resolve or what

15  have you.  But I think that the basic overriding legal

16  question, is this a customer transaction or not, is it covered

17  by SIPC is essentially a legal issue and I think they'll be

18  three or four.

19       THE COURT:  Let me stop you for a second just to

20  understand how this issue gets to this point of being a number

21  on a chart.

22       I take it that either the trustee or SIPC makes a

23  determination that a particular claim is not an allowed

24  customer claim, is that right?

25       MR. KOBAK:  That's correct.  We send a letter -- this

15

1    is all pursuant to the procedures in Your Honor's November 7th

2    order.

3            THE COURT:  Right.  Which party is making that

4    decision in the case of these claims?  And I'm just using the

5    TBA as an example.

6            MR. KOBAK:  Well actually the trustee and his

7    professionals review the claim, we have an extensive system for

8    doing that, reconcile the amounts and so forth, determine

9    what's on the books and records, whether it corresponds with

10   the claim and then we make a determination.  Those

11   determinations are also reviewed by SIPC and then a letter goes

12   out.  Technically the letter goes out from the trustee; it's

13   the trustee's determination.  But in fact SIPC is involved in

14   the process.

15           THE COURT:  It's a consultation.

16           MR. KOBAK:  That's correct.

17           THE COURT:  It's a consultation with SIPC.

18           MR. KOBAK:  That's correct.

19           THE COURT:  And I take it that the trustee, in

20   consultation with SIPC, has determined that in the case of,

21   again this category which is just by way of example, that at

22   least at this point 360 claims that have been made in this

23   category are to be disallowed because they do not constitute,

24   in the determination of the trustee, customer claims, is that

25   correct?

16

1        MR. KOBAK:  That's correct.

2        THE COURT:  But they all fall into the same general

3  category of type of claim.

4        MR. KOBAK:  That's correct.

5        THE COURT:  Is there any guidance in case law or

6  regulatory authority or administrative authority that supports

7  the determination?  Is there anything in the statute that

8  supports the determination or is this simply a judgment call,

9  an informed judgment call by the trustee?

10       MR. KOBAK:  It's our interpret -- I mean, we do think

11  it's an informed judgment call.  I really don't want to be in

12  the position, because I don't think it's fair to claimants, so

13  I'm, kind of, putting forth what our argument is.

14       THE COURT:  I don't want to know what your argument

15  is.  I'm just trying to understand whether or not it's a simple

16  question because you're pointing to authority and say, well

17  this doesn't qualify as a customer claim under the authority of

18  the XYZ case or under the authority of what we did in another

19  similar case.  Or is this rather something which is being

20  fabricated, I mean that not in a negative way, in the context

21  of this case because of the more sophisticated nature of the

22  kinds of claims being presented?

23       MR. KOBAK:  I think some of the specific claims have

24  not been litigated frequently.  Repos, for instance, there is

25  some case law on but it's only one or two cases.  But it's --

17

1    our position is basically based on what we think is very clear

2    statutory interpretation, legislative history, what case law

3    there is.  So it's not really a fabricated position but some of

4    these questions --

5            THE COURT:  When I used the term fabricated --

6            MR. KOBAK:  No, I --

7            THE COURT:  -- I didn't mean that in the sense that it

8    might be used informally.  I meant constructed or put together

9    in the context of this particular case.

10           MR. KOBAK:  I don't think it's completely

11   unprecedented but on most of these points there is not a lot of

12   precedent directly on point out there.

13           THE COURT:  And in the objections that have been

14   filed, are the parties who are taking issue with the position

15   that you have articulated, presenting you with authority of one

16   sort or another to suggest that you're just plain wrong?

17           MR. KOBAK:  Yes, in some cases they are.  Some cases

18   the objections are fairly short and cryptic but in the case of

19   some of these sophisticated entities that have a lot of clients

20   with TBA claims, they have in fact set forth things, kind of,

21   in the nature of the summary of argument and brief, sometimes

22   even citing what they think is pertinent authority.  And we

23   have looked at that very carefully.

24           THE COURT:  Okay.  So this is an example, then, of a

25   kind of claim that may lend itself to a summary judgment type

18

1    presentation?

2         MR. KOBAK:  That's correct.  The shorts position,

3    which Mr. Caputo alluded to, we've already, as he mentioned,

4    worked out a stipulation of facts with an entity known as Fifth

5    Third (ph.).  And we think that tees up the -- what we think is

6    the controlling legal issue.

7         So far there's only been one person who's objected to

8    short position but there will be some hedge funds that take a

9    similar position.  And it will be up to them but I would think

10   that they may well want to come in and be involved in some of

11   the briefing and so forth on this issue.  Because again, we

12   think there's overriding legal issue as to what the

13   determinative date is for SIPA purposes.

14        THE COURT:  All right.  Well, what's the vehicle,

15   then, for a summary judgment that would be generally applicable

16   to, in this case, the TBA claims, 360 similarly situated

17   parties?

18        MR. KOBAK:  Well, I think with the TBAs what we'd be

19   inclined to do, and of course it takes two to tango in a sense,

20   but I think -- we have had some preliminary discussions.  I

21   think we would try to come up with some kind of omnibus motion

22   that would cover, maybe not all of them but at least a

23   substantial number, and essentially get agreement as to what

24   the basic underlying facts are, which I think would be largely

25   undisputed for purposes of determining the overriding legal

19

1    issues and present it.  We've done that in other SIPA cases in

2    the past when there have been similar types of issues as to

3    whether a certain transaction or certain kind of relationship

4    qualifies for customer treatment or not.

5         THE COURT:  In terms of process, it's apparent that

6    the total number of pending objections, which is as of today

7    627, is up by thirty-three from the number that -- thirty-four

8    from the number that existed as of a few weeks ago.  Some

9    objections have been withdrawn but on a moving target basis is

10   there a projection as to how many overall objections we're

11   going to need to be dealing with in the life of this case?

12        MR. KOBAK:  There will be more and there are, I think,

13   approximately -- the way the order works, when we send a letter

14   of determination the claimant has thirty days to file an

15   objection or not.  If they don't object the objection is final.

16   In our experience maybe eighty, ninety percent of the time

17   there isn't an objection but the rest of the time there may be.

18   So I think they're approximately a little over a 1,000 letters

19   as to which the thirty day period hasn't run, so there would be

20   some more objections on those.  And there are another 1,000 to

21   2,000 claims that haven't been determined yet and many of those

22   will probably be denied and there probably will be further

23   objections.  But I don't think we've been able to really come

24   up with any kind of precision with a number as to whether it'll

25   be 200 more or 300 more or 400 more.  There will be more.

20

1       I do think we are in touch with many of the

2  categories, the empty account category which means the account

3  on the debtor's books and records shows no activity in the

4  account and nothing in the account; lack of information where

5  it's hard to understand what the claim is even for.  Once or

6  twice, for instance, allowed amount there's not any dispute the

7  claim's allowed.  I think there's just a very minor dispute as

8  to the amount.  We've been in touch with a lot of these people

9  so I think a number of those will get withdrawn.  But there

10  undoubtedly will be a very substantial number just given the

11  great number of customers that we're dealing with.

12       THE COURT:  All right.  Well, what do you propose at

13  this point?

14       MR. KOBAK:  I think our objective coming here today

15  was simply to inform Your Honor that there would be a

16  substantial number of claims.  There already have been a lot of

17  claims, as you know, filed on the docket.  But that we do have

18  an approach of grouping them together and dealing with them in

19  an efficient way, in a way which we hope will be efficient in

20  terms of Your Honor's calendar.

21       THE COURT:  I hope so too.  So this is really a

22  warning to me that my workload is going to increase sometime

23  over the next six months?

24       MR. KOBAK:  Unfortunately yes, Your Honor.  Although

25  we'll try to keep that to a minimum.  We'll try to keep the

21

1   numbers of objections that come before you, at least the

2   numbers on the discrete matters that come before you to a

3   minimum and try to handle them in the most efficient way

4   possible.

5          We've found many of the claimants, actually even

6   though we may have substantial differences as to the ultimate

7   legal question, fairly reasonable to deal with.  Many of them

8   also have an objective of having these decided efficiently and

9   without having to spend a lot of time in discovery and arguing

10  about facts that may not have proved to be relevant.

11         THE COURT:  Let me ask you a case administration

12  question, unrelated to the specifics of the claim types or the

13  issues that might be presented.  Is it your expectation,

14  notwithstanding what may be the very good working rapport that

15  you have with some of your adversaries, that it will be

16  necessary to set up some additional calendar time specific to

17  the SIPC case to deal with this question?  In other words, we

18  have a pattern in the LBHI and LBI cases of shared omnibus

19  hearing dates with shared agendas in which, for the most part,

20  the LBI case has been, in relative terms, a less time consuming

21  portion of omnibus days.  Is it your expectation that we will

22  need court time just for this on a separate day in certain

23  months to be identified in the future?

24         MR. KOBAK:  I don't know if it's absolutely necessary.

25  I think it would be very helpful.  I think it would make a lot

22

1   of sense because there will be issues about interpretation of

2   SIPA that are fairly unique to our case.  And I think there is

3   a significant -- and some of those omnibus day calendars I know

4   get rather lengthy already.  So I think from our perspective

5   that would seem to me to be a very salutary approach.

6          THE COURT:  It appears to me that that would be

7   desirable.  And even if it turns out that some days are

8   reserved and you only use a few hours on a day that's been set

9   aside, it's probably preferable, given the number of people who

10  may be physically present or on the phone to deal with these

11  issues, that we identify separate LBI objection issues days,

12  and I'm not sure what the right label is for it but you get the

13  idea.

14         MR. KOBAK:  Yes.  No, I think that would be an

15  excellent suggestion, Your Honor.

16         THE COURT:  Okay.  Now when do you think you're going

17  to need this time?

18         MR. KOBAK:  The Fifth Third, I think the schedule is

19  the first brief will be due December 1st.  So we anticipate

20  that being ripe for coming before Your Honor sometime after the

21  first of the year.  And I think we'd probably be talking about

22  after the first of the year, really for all these things.

23         MR. CAPUTO:  The reply dates on that, Your Honor, are

24  January 6th.  So sometime after that it may be fully submitted

25  and then it would come pursuant to that separate date that you

23

1   may set aside on that single issue.  So that's not until

2   January on that issue.

3          THE COURT:  All right.  Well --

4          MR. CAPUTO:  And that's the first.

5          THE COURT:  My suggestion is, if you think it would be

6   useful to identify in advance certain dates in 2010 starting in

7   January that will be designated for purposes of dealing with

8   claims objections or issues relating to claims objections in

9   the SIPA liquidation portion of the Lehman case, that we do

10  that sooner rather than later.  And that you think together

11  with your various colleagues who need to prepared for this and

12  perhaps some leading representatives of claimants, to come up

13  with a schedule on a month-by-month basis that makes sense.

14  And if you can come up with some suggested dates or weeks that

15  would be useful, and contact my courtroom deputy and we can see

16  if we can accommodate you consistent with my other obligations.

17  It may be that we will need a chambers' conference just for

18  purposes of working out dates that make sense and fine tuning

19  the schedule.

20         MR. KOBAK:  I understand, Your Honor.  And that's fine

21  with us.  I think that's an excellent suggestion.  I think that

22  will help move this along as efficiently as possible.

23         THE COURT:  Okay.  Now, are there any other issues,

24  other than scheduling, that need to be addressed now?

25         MR. KOBAK:  Not at this time, Your Honor.

24

1          THE COURT:  Is there anything else that you wish to

2     say at this point?

3          MR. KOBAK:  No, Your Honor.

4          THE COURT:  Is there anything that anyone who has

5     heard this wishes to say at this point?  Apparently there is

6     one person who is taking that bait.

7          MR. MCDONALD:  Good afternoon, Your Honor.  Hugh

8     McDonald with Sonnenschein Nath & Rosenthal on behalf of Hudson

9     City Savings Bank.

10          Your Honor, my client falls into the repurchase

11     agreement category here.  And my client has received the letter

12     notice.  We have timely responded with an objection setting

13     forth, briefly, the basis of our objection, primarily this is

14     an assault on the level (ph.) line of case law by SIPC and the

15     trustee.

16          We understand from Your Honor's comments that you're

17     looking to position these things for what is akin to a summary

18     judgment resolution at some ultimate point.  But we understand

19     at this juncture the trustee and SIPC haven't finished

20     resolving all of the -- or making determinations with regard to

21     all of the repurchase agreements.  So it sort of leaves us in

22     limbo at this juncture as to timing going out.

23          We would hope that in the interim that we would be

24     able to at least obtain some limited discovery on the

25     particular issues so that we could tee this up for a situation

25

1  where we would have other stipulated facts or position

2  ourselves for an affidavit on a summary judgment basis.  We

3  don't envision a lot of discovery on this but we would need

4  some preliminary discovery and hopefully can do that on a

5  consensual basis without having to burden the Court with any

6  discovery related litigation.

7      THE COURT:  Okay.  Well I'm going to ask the trustee a

8  question that is a more general question that your comment

9  brings to mind.

10     MR. MCDONALD:  Okay.

11     THE COURT:  And it's a very basic issue, is it the

12 trustee's position that in effect the issue has been joined

13 when a party within the thirty day period objects to the denial

14 of a claim and that at that point there is a contested matter

15 for purposes of discovery rights under the bankruptcy rules?

16     MR. KOBAK:  I think our position formally is that we

17 would file, then, a motion to have our position confirmed.

18 There'd be reply briefs and so forth.  That's essentially what

19 we've worked out with Fifth Third.

20     Having said that, I think there have been discussions

21 between Mr. McDonald and others in my office about the points

22 he's raising.  And I don't think we're resistant to doing some

23 limited discovery, either formally or informally for someone in

24 their position.

25     THE COURT:  All I was really asking, and I understand

26

1  that with an actively represented party that seeks discovery

2  it's difficult to say no.  I was just trying to get an

3  understanding whether, for a party who was not actively

4  represented but who objected to a claim determination, if there

5  was a general rule of thumb that made that a contested matter,

6  such that without having to come to court to ask, anybody who

7  wanted to take discovery would be able to do so consistent with

8  the Bankruptcy Rules.

9       MR. KOBAK:  I think, Your Honor, we'd want to think

10  about that because there are a number of parties and it's very

11  easy for somebody to serve a deposition notice or something

12  even if they're not that serious about pursuing the claims.  So

13  we do intend to tee some of these up as quickly as we can to

14  get the issues raised.

15       THE COURT:  Well here's really where I'm going.

16  Certain discovery may be permissible because you consent to it.

17  Certain discovery simply may be available as a matter of right

18  because there is a contested matter, which gives any party in

19  interest who's involved in that an opportunity to take such

20  discovery as is relevant to the objection.  We're not talking

21  about 2004 discovery here, we're talking about --

22       MR. KOBAK:  Correct.

23       THE COURT:  -- contested matter discovery.  So my

24  threshold question is, and you don't have to respond now but I

25  do have the question, as to whether procedurally we have what

27

1   amounts to contested matters at this point, 627 separate

2   contested matters in which there are pending objections with

3   disputes in which parties, at least in theory, would have

4   discovery rights.

5        MR. MCDONALD:  Preliminary, at least in our view based

6   on past experience, I would think the contested matter would

7   begin at the time that we file a motion specifically asking for

8   the relief that the claim be denied.  Because before that it's

9   always possible that the claimant will convince us to change

10  their mind, we'll convince the claimant to change their mind.

11  Perhaps there are some facts that weren't on the books and

12  records that somebody can show us.  So I think -- and I think

13  that's consistent with the practice in past litigation -- past

14  liquidations.

15       THE COURT:  Okay.

16       MR. MCDONALD:  Thank you, Your Honor.

17       UNIDENTIFIED ATTORNEY:  Your Honor, if I could be

18  heard for a moment on that?  The Court has set up specific

19  procedures pursuant to which SIPC and the trustee could

20  essentially object to claims.  And what they have done here is

21  they have said your customer claim is denied status as a

22  customer claim.  And we have responded to that with a formal

23  pleading.  And we're discussing having a motion for summary

24  judgment essentially filed here.  I don't know how a motion, at

25  that point, triggers the contested matter for discovery

28

1    purposes.  I think at this point the issue has clearly been

2    joined from a procedural perspective and that a litigant, at

3    this point, would be entitled to appropriate discovery.

4         I'm not saying we're going to have a problem here,

5    they're indicating that they're willing to engage in informal

6    discovery; I don't know how far that willingness goes.  But I

7    think, clearly from our position, we have the right under the

8    rules to engage in this discovery.

9         THE COURT:  Well, why don't we leave it on this basis,

10   and I'm not suggesting that you're the test case for all

11   discovery that's going to apply in the various pending

12   objections or objections to be filed by the trustee.

13        As it relates to your situation, the trustee has

14   already indicated a willingness to work cooperatively with you,

15   so there's really no issue.  If it turns out that there is a

16   discovery dispute, it will not be presented in open court in

17   this fashion, it will be subjected to the very same discipline

18   that applies to any discovery dispute in any case pending in

19   the Southern District of New York.  There'll be a meet and

20   confer obligation, there'll be a request for a conference with

21   the Court and ultimately motion practice if that's necessary.

22        The more general question that your coming to the

23   podium raised in my mind, and I don't think we need to resolve

24   it today, is whether there is, as a matter of law, a discovery

25   right prior to the trustee's taking the step of filing some

29

1   kind of formal pleading in the bankruptcy court to obtain

2   coercive relief as to a party who has objected to a claim

3   determination made by the trustee.  And I suspect that there

4   are different perspectives on that question.  I'm not

5   suggesting that we have a free-for-all on whether or not

6   discovery has been triggered by virtue of the response made by

7   a claimant to the trustee's objection to that claim.  I can

8   understand both sides of that argument.  I was simply asking,

9   in a very, I think, balanced way what the trustee's position

10  was on it and he told me, through counsel, I don't know yet.

11  And so I'm going to take that as the equivocal response for the

12  day.

13          As to your situation, it's not an issue because you're

14  going to work it out.

15          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

16          THE COURT:  Is there anyone else who wishes to say

17  anything at this point?

18     (No audible response)

19          THE COURT:  Then we're adjourned.  Thank you.

20          MR. CAPUTO:  Thanks for taking the time, Your Honor.

21

22

23

24

25

30

1

2                    C E R T I F I C A T I O N

3

4       I, Pnina Eilberg, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       _____

8       Pnina Eilberg

9       AAERT Certified Electronic Transcriber (CET**D-488)

10

11      Veritext

12      200 Old Country Road

13      Suite 580

14      Mineola, NY 11501

15

16      Date:  November 13, 2009

17

18

19

20

21

22

23

24

25