Omnibus Hearing Date: December 16, 2009 at 10:00 a.m.
Objection Deadline: December 11, 2009 at 4:00 p.m.

Thomas E. Chase, Esq. (TC-8266)
**ROTTENBERG LIPMAN RICH, P.C.**
369 Lexington Avenue, 16th Floor
New York, New York 10017
Telephone: (212) 661-3080
Facsimile: (212) 867-1914

Counsel for Malayan Banking Berhad

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
In re:                                                     :    Chapter 11
LEHMAN BROTHERS HOLDINGS INC., et al.,                     :    Case No. 08-13555 (JMP)
                                                           :
                       Debtors.                            :    Jointly Administered
                                                           :
-----------------------------------------------------------x

## MOTION OF MALAYAN BANKING BERHAD
## FOR LEAVE TO CONDUCT RULE 2004 DISCOVERY

Malayan Banking Berhad ("Maybank"), by and through its undersigned counsel, hereby moves this Court, pursuant to the Federal Rules of Bankruptcy Procedure Rule 2004, for an order authorizing and directing discovery in the form of (i) document production by Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI" and, together, the "Debtors") concerning the 1999 interest rate swap transaction entered by and among (a) Maybank; (b) Lehman Brothers International (Europe) ("LBIE"); (c) LBSF and (d) LBHI (the "Swap Transaction") and (ii) a deposition of a knowledgeable representative(s) of the Debtors relating to the Swap Transaction. In support of this motion, Maybank submits the declaration of Thomas E. Chase, Esq. (the "Chase Dec.") and exhibits annexed thereto, and states as follows:

I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

II. BACKGROUND

2. Maybank is a large Malaysian bank with headquarters in Kuala Lumpur, Malaysia. In 1999 Maybank's New York branch office entered the Swap Transaction with LBIE, LBSF and LBHI. The Swap Transaction had a ten year term running from July 22, 1999 to June 1, 2009 and had an $8 million notional amount on which LBIE would pay Maybank an interest rate of LIBOR plus 1.85% per annum and on which Maybank would pay LBIE an interest rate of 8.75% per annum. As collateral for Maybank's obligations under the Swap Transaction, Lehman required Maybank to post an $8 million 8.75% June 1, 2009 note issued by the Malaysian government (the "Collateral Note"). LBHI provided a guarantee of LBIE's obligations under the Swap Transaction.

3. Maybank requires an examination pursuant to FRBP 2004 to determine LBSF's obligations with respect to the Swap Transaction and, in particular, to determine (1) LBSF's obligations with respect to the Collateral Note and/or the proceeds paid upon the maturity of the Collateral Note on or around June 1, 2009 and (2) to obtain any information in Debtors' possession regarding the custodianship of the Collateral Note at the time Debtors filed for bankruptcy.

4. The terms of the Swap Transaction are memorialized in a Confirmation dated July 22, 1999. Chase Dec. Ex. A. The Confirmation was entered between LBIE (defined

as "Party A" in the Confirmation) and Maybank, acting through its New York branch office (defined as "Party B" in the Confirmation"). However, the Confirmation provides that it is subject to and forms part of an ISDA Master Agreement that was entered between Maybank and LBSF, not LBIE.

5. The second paragraph of the Confirmation states:

> This Confirmation supplements, forms part of, and is subject to, the <u>ISDA Master Agreement dated as of 7 August 1992</u>, as amended and supplemented from time to time, between Party A and Party B (the "Swap Agreement"). All provisions contained in, or incorporated by reference to, such Swap Agreement shall govern this Confirmation except as expressly modified below.

6. The Swap Agreement referenced in the second paragraph of the Confirmation was entered between Maybank and LBSF, not LBIE. Contemporaneous with the execution of the Confirmation, on July 22, 1999 Maybank and LBSF entered an ISDA Master Agreement, Schedule and Credit Support Annex that purported to be "dated as of August 7, 1992." Chase Dec. Ex. B. At that time, Maybank had not entered another ISDA Master Agreement with any other Lehman entity and the reference to the "ISDA Master Agreement dated as of 7 August 1992" in the Confirmation entered between LBIE and Maybank can only refer to the agreement entered between Maybank and LBSF, for there was no other.

7. The paragraph in the Confirmation that addresses collateral and that requires Maybank to post the Collateral Note, moreover, specifically refers to the ISDA Credit Support Annex entered between Maybank and LBSF. The third page of the Confirmation provides:

> Party A and Party B agree that the Reference Security will be Eligible Collateral under the terms of the ISDA Credit Support Annex, dated as of 7 August 1992, between Party A and party B.

3

Chase Dec. Ex. A.

8. The Credit Support Annex dated August 7, 1992 provides the terms and conditions on which Eligible Collateral is to be posted, held and returned between Maybank and LBSF. The Credit Support Annex contains a New York choice of law provision and does not provide that title to any Eligible Collateral posted by Maybank passes to LBSF. Chase Dec. Ex. B.

9. On October 24, 2003 Maybank and LBIE executed an ISDA Master Agreement, Schedule and Credit Support Annex "dated as of 22 July 1999." Chase Dec. Ex. C. These documents, however, do not claim to amend or modify the Confirmation or the August 7, 1992 ISDA documentation. The 2003 Credit Support Annex between Maybank and LBIE specifies the terms and conditions on which "Credit Support" is to be posted, held and returned between Maybank and LBIE. The 2003 Credit Support Annex contains an English choice of law provision and does provide that title to Credit Support posted by Maybank passes to LBIE.

10. On November 25, 2003, Maybank and LBSF executed a "Termination Agreement" terminating "the ISDA Master Agreement, its Schedule and the ISDA Credit Support Annex dated as of August 7, 1992" (the "Termination Agreement"). Chase Dec. Ex. D. The Termination Agreement, however, does not terminate or amend the Swap Transaction, the Confirmation or any other obligations arising prior to execution of the Termination Agreement. The Termination Agreement states that its effective date is November 18, 2003 and provides that it shall extinguish the rights and obligations among Maybank and LBSF "except for those arising prior to the effective date of this termination." Chase Dec. Ex. D.

4

11. On this record, it appears that at the commencement of the Swap Transaction in 1999 the parties intended that LBSF would have significant obligations under the Swap Agreement with respect to the Collateral Note. In July 2009, Maybank's counsel spoke to Maurice Horwitz an attorney representing Debtors at Weil Gotschal & Manges LLP in an effort to obtain information about the status of the Collateral Note. Mr. Horwitz represented that he had located the Collateral Note and that "LBIE has your note." Chase Dec. ¶¶ 5-6. Mr. Horwitz declined to provide any further information about the Collateral Note and directed Maybank to try to obtain information about the Collateral Note from LBIE. Over the past several months, Maybank's U.S. and London counsel have attempted to obtain information about the Collateral Note from representatives of LBIE, but have repeatedly been rebuffed. Chase Dec. ¶ 7.

III. RELIEF REQUESTED

12. By this motion, Maybank seeks an order compelling Debtors to produce discovery relating to the Swap Transaction in the form of (a) all documents responsive to the Document Requests attached as Schedule A to the Proposed Order submitted herewith; and (b) permission to depose the person(s) within the Debtors most knowledgeable about the topics listed in Schedule B to the Proposed Order submitted herewith.

IV. ARGUMENT

A. Legal Standard

13. Bankruptcy Rule 2004 provides that "on motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The purpose of a Rule 2004 examination is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing

5

has occurred." See In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); see also Fed. R. Bankr. P. 2004(b) (examination may relate to, among other things, "the acts, conduct, or property or to liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . .").

14.    Maybank potentially is a major creditor of LBSF's and is a large creditor of LBHI's under LBHI's guarantee of the Swap Transaction and therefore is clearly a "party in interest" with standing to seek authorization for, and to undertake, the requested Rule 2004 examination. See 11 U.S.C. § 1109(b) ("A party in interest, including . . . a creditor . . . may appear and be heard on any issue in a case under this chapter").

B.    Scope of 2004 Exam

15.    Under Rule 2004, examination may be sought with respect to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

16.    The scope of Rule 2004 discovery is "unfettered and broad." In re GHR Energy, 33 B.R. 451, 453 (Bankr. D. Mass. 1983). Thus, a Rule 2004 examination provides a party in interest an opportunity to conduct a wide-ranging examination with respect to a debtor's financial affairs, In re Texaco Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987), though a court must also "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." In re Drexel Burnham Lambert Group, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

C.   The Requested Discovery

17.   Despite the wide latitude afforded to examinations under Rule 2004, Maybank seeks only narrowly tailored discovery relating to the Swap Transaction and the Collateral Note. The relative burden that this modest request might impose on Debtors is reasonable given the $8 million value of the Collateral Note belonging to Maybank. In June 2009, moreover, Debtors' counsel Maurice Horvitz confirmed to Maybank's counsel that Debtors had ready access to at least some information about the Collateral Note but declined to share that information with Maybank's counsel, directing Maybank to attempt to obtain such information from LBIE. On this record, Maybank is entitled to the requested relief.

V.   NO PRIOR REQUEST

18.   No prior motion for the relief requested herein has been made to this Court or any other court.

VIII.   NOTICE

19.   Maybank has served Notice of this Motion and all supporting papers on all parties as required by this Court's Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated February 13, 2009.

IX.   CONCLUSION

20.   WHEREFORE, for the reasons stated herein, Maybank respectfully requests that this Court enter an Order (i) pursuant to Bankruptcy Rule 2004, in the form attached hereto as Exhibit A, requiring Debtors to provide certain document and deposition discovery and

(ii) granting Maybank such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 19, 2009

ROTTENBERG LIPMAN RICH, P.C.

By: _____
Thomas E. Chase (TC-8266)
369 Lexington Avenue, 16th Floor
New York, New York 10017
(212) 661-3080
Attorneys for Malayan Banking Berhad