Hearing Date and Time:  December 16, 2009 at 10:00 a.m.
Objection Deadline:  December 1, 2009 at 4:00 p.m.

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Jayant W. Tambe
Stephen Pearson
James K. Goldfarb
Benjamin Rosenblum

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re: : Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Case No. 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
---------------------------------------------------------------x

**NOTICE OF MOTION OF DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTION 105(a), 362, AND 365 OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE BY NORTON GOLD FIELDS LIMITED OF ITS OBLIGATIONS UNDER AN EXECUTORY CONTRACT AND TO ENFORCE THE AUTOMATIC STAY**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion of Lehman Brothers Commercial Corporation, as debtor and debtor in possession (together, with Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors"), to compel performance of Norton Gold Fields Limited's obligations under an executory contract and to enforce the automatic stay (the "Motion"), all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Jayant W. Tambe, Stephen Pearson, James K. Goldfarb, and Benjamin Rosenblum) and Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Richard P. Krasnow, Lori R. Fife, Shai Y. Waisman, and Jacqueline Marcus), attorneys for the Debtor; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn:  Dennis F. Dunne, Dennis O'Donnell, and Evan Fleck) and Quinn Emanuel Urquhart Oliver & Hedges, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 (Attn: Susheel Kirpalani), attorneys for the official committee of unsecured creditors appointed in these cases; (v) Sheppard Mullin Richter & Hamilton LLP, 30 Rockefeller Plaza, 24th floor, New York, New York 10112 (Attn:  Malani J. Cademartori), attorneys for Norton Gold Fields Limited, and (vi) Norton Gold Fields Limited, 79

Hope Street, South Brisbane QLD 4101, AUSTRALIA (Attn: Simon Brodie), so as to be received no later than December 1, 2009 at 4:00 p.m. (Prevailing Eastern Time) (the "<u>Objection Deadline</u>").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  New York, New York           Respectfully submitted,
        November 20, 2009

                                                           /s/   Jayant W. Tambe
Jayant W. Tambe
Stephen Pearson
James K. Goldfarb
Benjamin Rosenblum
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

Hearing Date and Time:  December 16, 2009 at 10:00 a.m.
Objection Deadline:  December 1, 2009 at 4:00 p.m.

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Jayant W. Tambe
Stephen Pearson
James K. Goldfarb
Benjamin Rosenblum

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :    Case No. 08-13555 (JMP)
                                                            :
                        Debtors.                            :    (Jointly Administered)
                                                            :
------------------------------------------------------------x

**MOTION OF DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTION 105(a), 362, AND 365 OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE BY NORTON GOLD FIELDS LIMITED OF ITS OBLIGATIONS UNDER AN EXECUTORY CONTRACT AND TO ENFORCE THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Commercial Corporation ("LBCC"), as debtor and debtor in possession (together with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, the "Debtors"), files this motion for an order pursuant to sections 105(a), 362, and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), to enforce the automatic stay and compel Norton Gold Fields Limited ("Norton") to perform its obligations under an executory contract – a gold price swap agreement pursuant to an ISDA Master Agreement, dated as of August 29, 2007 (the "Master Agreement" and together with the accompanying schedule

(the "Schedule") and various confirmations entered into thereunder, as defined below, the "Agreement") between it and LBCC.  In support of this motion, LBCC respectfully states:

**PRELIMINARY STATEMENT**

1. LBCC seeks an order directing Norton to make payments due and owing to LBCC under the Agreement and to continue to perform under the Agreement.  Norton is a leading Australian gold producer.  On August 29, 2007, Norton entered into the Agreement with LBCC.  Both before and after the October 5, 2008 petition date, the contract has been in-the-money to LBCC, meaning that on each of the quarterly settlement dates under the Agreement, Norton has been obliged to pay LBCC.

2. But Norton has not paid LBCC in respect of the five quarterly settlement dates since the petition date for three reasons.  First, Norton contends – contrary to the Bankruptcy Code – that LBCC's and LBHI's bankruptcies are defaults under the Agreement that give Norton the right, but not the obligation, to terminate the Agreement and excuse Norton's payment obligations to LBCC.  Second, Norton contends that the parties agreed to make payments as specified in each confirmation between them, but LBCC has failed to issue any confirmation since September 12, 2008.  Finally, although the confirmations clearly indicate that the transactions are cash settled, Norton contends that LBCC repudiated the Agreement by failing to make "gold pre-deliveries for settlement".  Based on these contentions, Norton unlawfully is withholding significant value from the Debtors, in excess of $18 million.

3. Meanwhile, Norton has treated the Agreement as continuing, has performed its obligations other than making payments, and has publicly stated that "termination is not in Norton's best interests [because] an early termination would require Norton to pay the

4221207                                    2

accrued amount owing and additional amounts based on the mark to market value of the [Agreement], which could result in a significant termination payment to LBCC by Norton".[1]

4. Norton's position is untenable. As the Court made plain in the *Metavante* matter, under the Bankruptcy Code, Norton may not refuse to terminate the Agreement and continue enjoying its benefits, while at the same time shirking its obligation to pay LBCC.[2] Further, the plain terms of the Agreement refute Norton's contentions concerning post-petition confirmations and "gold pre-deliveries". For these reasons, and those set forth below, the Court should grant the motion and compel Norton to pay the outstanding sums and to continue to perform.

## JURISDICTION & VENUE

5. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

7. LBCC requests that the Court issue an order pursuant to sections 105(a), 362, and 365 of the Bankruptcy Code compelling Norton to perform its obligations under the Agreement, including the obligation to pay the amounts due and owing.

---

[1] The quotation is from a Norton press release to the Australian Securities Exchange, dated April 29, 2009, entitled, "Status of Norton's Gold Hedge with Lehman Brothers", at page 2. For the court's ease of reference, the press release is attached hereto as Exhibit A. Norton also noted in the press release that LBCC might contend that the Bankruptcy Code precludes Norton's position, and that Norton "takes the position that the U.S. Bankruptcy Code would not affect its rights to withhold payment and [Norton] would, in turn, oppose and challenge any such assertion on the part of LBCC under applicable law." (Ex. A at 2).

[2] The "*Metavante* matter" refers to the proceedings concerning the Debtors' Motion pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code to Compel Performance of Metavante Corporation's Obligations under an Executory Contract and to Enforce the Automatic Stay, dated May 29, 2009 (Docket No. 3691). The Court's September 15 bench ruling on the motion is attached hereto as Exhibit B. All references to "*Metavante*" herein are references to the bench ruling.

**BACKGROUND**

  A. **The Agreement**

    8. In August 2007, Norton and LBCC entered into certain transactions, including forward swaps of gold prices. In a forward swap, the parties agree to swap a fixed and floating price of a certain quantity (the notional quantity) of a certain commodity (here, gold) on a certain date (the settlement date). The fixed price is established by agreement at the time the contract is formed. The floating amount is determined by reference to an agreed-to benchmark as of a certain date (the calculation date) that is on or around the settlement date. By convention, the parties swap only the difference in the fixed and floating price, multiplied by the notional quantity, on each settlement date during the term of the contract. The party agreeing to pay the fixed price receives the difference if the fixed price is less than the floating price on the calculation date, and pays the difference if the fixed price is more than the floating price on the calculation date.[3]

    9. The Agreement was memorialized in a contract consisting of the 2002 Master Agreement and the Schedule thereto, dated as of August 29, 2007.[4] Subsequently, the parties entered into written, signed confirmations (each, a "Confirmation" and, collectively, the "Confirmations") to memorialize the terms of specific gold price swap transactions (each a "Transaction" and, collectively, the "Transactions") between Norton and LBCC. Further, LBHI agreed to guarantee LBCC's obligations, thereby becoming a Credit Support Provider, as defined in the Master Agreement. English law governs the Agreement. (*See* Schedule Part 4(h)).

---

[3] For example, assume Party A and Party B agree to swap the price of 10,000 ounces of gold on January 1, 2010. Party A agrees to pay a fixed price of $900 per ounce; Party B agrees to pay the floating price. On January 1, 2010, the price per ounce of gold is $950. Accordingly, Party B pays Party A $50 * 10,000 ounces, or $500,000.

[4] A form of the 2002 ISDA Master Agreement is attached hereto as Exhibit C. The Schedule executed by the parties is attached hereto as Exhibit D.

4221207        4

10. On August 30, 2007, the parties executed Confirmations to memorialize the initial gold price swap Transactions. Those Confirmations set forth the notional quantity of gold for each quarterly settlement date during the term of the Agreement and the fixed price of gold for those settlement dates, among other details.[5]

11. On February 22, 2008, the parties entered into a Confirmation that expressly replaced and cancelled certain of the Transactions set forth in the August 30, 2007 Confirmations.[6] (*See* Ex. F at 2 ("Special Condition")). The February 22, 2008 Confirmation established new notional quantities of gold for each quarterly settlement date during the term of the Agreement and a new fixed price of gold for those settlement dates, among other details.

B. **The Bankruptcies**

12. On September 15, 2008, LBHI, the credit support provider under the Agreement, commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. On October 5, 2008, LBCC filed its voluntary petition under chapter 11 of the Bankruptcy Code, and the Court consolidated the Debtors' chapter 11 cases for procedural purposes and is jointly administering them pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[5] The three August 30, 2007 Confirmations memorializing the initial forward swap Transactions are attached hereto as Exhibit E, each separated by a blue sheet.

[6] The February 22, 2008 Confirmation is attached hereto as Exhibit F.

4221207                                            5

### C.   Norton Refuses to Pay LBCC, But Otherwise Performs under the Agreement

13.   The Agreement has been in-the-money to LBCC from its inception. Before the petition date, Norton paid LBCC faithfully. Post-petition, Norton has refused to pay LBCC.

14.   Specifically, on April 20, 2009, LBCC provided to Norton, via e-mail, an invoice for payments due from Norton under Confirmations issued pre-petition for post-petition settlement dates that had come due. The total amount due and owing as of April 20, 2009 was $9,287,197.

15.   On April 30, 2009, Norton advised LBCC, via letter, that it had received the invoice, but that it would not pay LBCC for three reasons. First, because LBHI's and LBCC's bankruptcies constituted Events of Default under the Agreement, which, pursuant to Section 2(a)(iii)(1) of the Master Agreement, had the effect of suspending any payment obligation under Section 2(a)(i) of the Master Agreement. Second, because the parties agreed to make payments as specified in each Confirmation between them, but LBCC failed to issue Confirmations after September 12, 2008. Third, because LBCC repudiated the Agreement by its "failure and apparent inability to timely execute gold pre-deliveries for settlement" – repudiation is a separate Event of Default under Section 5(a)(ii)(2) of the Master Agreement.

16.   Norton also issued press releases to the Australian Securities Exchange on April 29, 2009 and July 17, 2009 in which it stated that Norton is not obligated to honor its payment obligations under the Agreement on account of LBCC's and LBHI's bankruptcy filings. Norton stated in those releases that, under the Bankruptcy Code, Norton has the right, but not the obligation, to terminate the Agreement, and that it may refuse to honor its payment obligations yet not terminate the Agreement. Norton also explained in the April 29, 2009 press release that "termination is not in Norton's best interests [because] an early termination would require

Norton to pay the accrued amount owing and additional amounts based on the mark to market value of the [Agreement], which could result in a significant termination payment to LBCC by Norton." (Ex. A at 2). In short, Norton publicly took the position that it may enjoy the potential benefits of the Agreement while not accepting its principal burden – payment.

17. On August 4, 2009, LBCC provided to Norton, via e-mail, an updated invoice (dated July 31, 2009) that included the payments indicated on the April 20 invoice in addition to payments due from Norton under Confirmations issued pre-petition for the June 2009 quarterly settlement date. The total revised amount due and owing to LBCC as of that date was $13,098,379.[7]

18. Norton failed to make payment by August 6, 2009, as required by the Agreement. On August 20, 2009, Norton advised LBCC, via letter, that it had received the July 31 invoice, but would not pay LBCC for the reasons set forth in the April 30, 2009 letter (which Norton referred to as the "April 29 Letter").

19. On November 3, 2009, LBCC provided to Norton, via e-mail, an updated invoice that included the payments due and owing, as indicated on the April 20 and July 31 invoices, and the payments due and owing from Norton under Confirmations issued pre-petition for the September 2009 quarterly settlement date. The total revised amount due and owing as of that date was $18,662,658.24.

20. Norton failed to pay by November 5, as required by the Agreement. On November 13, 2009, Norton advised LBCC, via letter, that it had received the November 3

---

[7] In connection with preparing the November 3 invoice (discussed below), LBCC discovered an exchange rate error that impacted the original calculation of the amounts due on the April 20 and July 31 invoices. Those invoices should have reflected amounts due of $10,407,690 and $14,566,127, respectively.

invoice, but would not pay LBCC for the reasons set forth in the April 30, 2009 letter (which Norton referred to as the "April 29 Letter") and the August 20, 2009 letter.

21. Although it refuses to pay, Norton continues to perform other obligations under the Agreement. By way of example, Norton has twice delivered to LBCC the Joint Ore Reserve Committee Report called for in the Schedule (Part 3, page 4, last row).[8] And, in its recent quarterly report, Norton advised its shareholders that it continues to hold open forward positions under the terms of the Agreement and otherwise "continues to meet its obligations in respect of the [Agreement]" (page 11).[9]

### RELIEF REQUESTED

22. For the following reasons, the Court should grant the motion and order Norton to honor all its obligations under the Agreement, including payment of those amounts due and owing.

### A. The Agreement is an Executory Contract

23. The Agreement is an "executory contract" pursuant to section 365 of the Bankruptcy Code because material performance remains due – or may become due – by either party. *See Metavante* at 109:19 to 110:2 (holding that a swap agreement is an executory agreement); *In re Enron Corp.*, Case No. 01 B 16034 (AJG), 2005 WL 3874285, at *4 n.11 (Bankr. S.D.N.Y. Oct. 5, 2005) (same).

24. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory

---

[8] Norton made the first of these two deliveries after LBCC served notice on Norton that its failure to produce the report would constitute an Event of Default under the Agreement. (*See* Letter dated March 26, 2009, attached hereto as Exhibit G).

[9] The April 20, July 31, and November 3 invoices are attached hereto as Exhibits H, I, and J. Norton's April 30 and August 20 letters are attached hereto as Exhibits K and L. Norton's July 17 press releases is attached hereto as Exhibit M. Norton's September 2009 Quarterly Report is attached hereto as Exhibit N.

contract . . . of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 518 (1984); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386 (2d Cir. 1997). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quotation marks, citations omitted).

25.     A counterparty to an executory contract must perform its obligations under the contract while the debtor determines whether to assume or reject the agreement. The United States Supreme Court has held that an unassumed executory contract is not enforceable by a counterparty against a debtor. *See Bildisco*, 465 U.S. at 531. But such a contract is enforceable by the debtor against the counterparty. *See Metavante* at 110:3-8 (citing *McLean Indus., Inc. v. Med. Lab. Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989)).

26.     Accordingly, even assuming LBCC is not meeting its obligations under the Agreement – though it is – Norton must continue to perform all its obligations under the Agreement, including payment of the quarterly settlements.

B.     **Norton May Not Suspend Its Performance under the Agreement on the Basis of LBHI's and LBCC's Bankruptcy Filings**

27.     Norton has repeatedly stated that its refusal to pay LBCC is based on the chapter 11 filings of LBHI and LBCC on September 15, 2008 and October 5, 2008, respectively. (*See* Exs. K at 2, M at 2). In support of this position, Norton relies on Sections 2(a)(iii) and 5(a)(vii) of the Master Agreement. But Norton's reliance on those provisions does not excuse its

4221207                                   9

failure to pay. To the contrary, Norton's failure to pay violates the Bankruptcy Code's prohibition on enforcing *ipso facto* clauses, as well as the automatic stay.

28. *Ipso facto* clauses are provisions in executory contracts that automatically terminate the contract or modify a contractual right solely because of the insolvency or financial condition of the debtor, the commencement of a bankruptcy case, or the appointment of a bankruptcy trustee, receiver, or custodian.

29. *Ipso facto* clauses are void and unenforceable pursuant to section 365(e)(1) of the Bankruptcy Code because the automatic termination or modification of a debtor's contractual rights impedes rehabilitation and causes a forfeiture of assets. *See Summit Inv. & Dev. Corp. v. LeRoux (In re LeRoux)*, 69 F.3d 608, 610 (1st Cir. 1995); *In re Enron Corp.*, 306 B.R. 465, 472 (Bankr. S.D.N.Y. 2004) ("Ipso facto clauses are generally unenforceable . . . because the automatic termination of a debtor's contractual rights deters rehabilitation and causes a forfeiture of assets.") (quotation marks, citations omitted).

30. Most courts have interpreted section 365(e)(1) to broadly "abrogate[] the power of *ipso facto* clauses" such that "[n]o default may occur pursuant to an *ipso facto* clause and no reliance may be placed upon an alleged default where the only cause for default is the debtor's commencement of a bankruptcy case." *Reloeb Co. v. LTV Corp. (In re Chateaugay Corp.)*, Case No. 92 CIV 7054 (PKL), 1993 WL 159969, at *5 (S.D.N.Y. 1993); *In re Child World, Inc.,* 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993).

31. Here, Norton relies on a quintessential *ipso facto* clause, Section 2(a)(iii) of the Master Agreement, in refusing to pay LBCC. Section 2(a)(iii)(1) provides that a condition precedent to a counterparty's payment obligation is the absence of an Event of Default. Section 5(a)(vii) provides that a party's bankruptcy filing is an Event of Default. Norton has pointed to

LBHI's and LBCC's bankruptcy filings as the pertinent Event of Default, and asserts that under Section 2(a)(iii), a condition precedent to payment (absence of a bankruptcy filing) has not been satisfied. Thus applied, Section 2(a)(iii) operates to automatically modify the contractual rights of LBCC as a result of bankruptcy in clear contravention of the Bankruptcy Code's *ipso facto* bar. Such an application is void and unenforceable as a matter of law.

32. As a separate matter, the Bankruptcy Code's automatic stay prohibits creditors like Norton from undertaking "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors . . . . It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." 11 U.S.C. § 362, Revision Notes and Legislative Reports.

33. Norton's failure to make the payments due and owing to LBCC is an impermissible "exercise of control over property of the estate" in violation of Section 362(a)(3). *See Metavante* at 112:19 to 113:3 ("Metavante's attempts to control LBSF's right to receive payment under the Agreement, constitute in effect, an attempt to control property of the estate . . . . This is a violation of the automatic stay imposed by Code Section 362."); *see also Broadstripe, LLC v. Nat'l Cable Television Coop., Inc. (In re Broadstripe, LLC)*, 402 B.R. 646, 657 (Bankr. D. Del. 2009) ("By refusing to perform its obligations under the Member Agreement, [the defendant] is interfering with Broadstripe's property rights under the Member Agreement and acting in violation of the automatic stay.").

34.     The Court may compel Norton's performance to remedy its violation of the automatic stay. *See* 11 U.S.C. § 105; *Metavante* at 113:2-9; *In re Ernie Haire Ford, Inc.*, 403 B.R. 750, 760-61 (Bankr. M.D. Fla. 2009) (granting debtor's motion to compel performance when the nondebtor counterparties improperly terminated their contracts based on the commencement of the debtor's bankruptcy case: "While [the parties'] agreements are in full force and effect, the parties are bound by their terms and must continue to operate under the agreements in good faith.").[10]

### C.    Norton's Refusal to Pay is Not Protected by the Safe Harbor Provisions

35.     The Bankruptcy Code's swap safe harbor provisions (*see* 11 U.S.C. §§ 362(b)(6), (7), (17); 546(e), (f), (g); 555; 556; 560; and 561) do not protect Norton's chosen strategy of refusing to pay while refusing to terminate. These provisions protect only a party's contractual right to "cause the liquidation, termination, or acceleration" of a swap agreement, "or to offset or net out" the party's position. 11 U.S.C. § 560; *see also Metavante* at 108:23 to 109:6 ("It is also clear . . . that the safe harbor provisions, primarily Bankruptcy Code Sections 560 and 561, protect a non-defaulting swap counterparty's contractual rights solely to liquidate, terminate or accelerate one or more swap agreements because of a condition of the kind specified in Section 365(e)(1), or to 'offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation or acceleration of one or more swap agreements.'"). Consequently, if the counterparty is not seeking to cause the liquidation, termination, acceleration, or netting of the agreement, the safe harbor provisions simply do not apply. *See Metavante* at 108:23 to 109:6; *In re Enron Corp.*, 306 B.R. at 472.

---

[10] LBCC reserves the right to seek at a later date sanctions for Norton's knowing violation of the automatic stay.

4221207                                    12

36.     Norton is not seeking to cause the liquidation, termination, acceleration, or netting of the Agreement. In fact, the opposite is true. Norton does not want to terminate the Agreement; it continues to selectively perform its obligations. (*See* ¶¶ 16, 21, above). As a result, Norton's refusal to pay is not protected by the safe harbor provisions.

### D. Norton's Refusal to Pay Is Not Protected by LBCC's Supposed Failure to Issue Confirmations

37.     Norton's contention that it has no obligation to pay LBCC post-petition because LBCC never issued post-petition confirmations misapprehends the parties' agreement. The February 22, 2008 Confirmation details gold price swap Transactions to be settled on quarterly settlement dates for the remaining term of the Agreement. Those settlement dates include dates post-petition, through June 2012. The Agreement may be amended or modified only by a writing executed by each party. (*See* Master Agr. § 9(b)). LBCC is aware of no such writing. Accordingly, the quarterly settlement dates set forth in the February 22, 2008 Confirmation remain valid and binding settlement dates for the related Transactions.

### E. LBCC Did Not Repudiate the Agreement

38.     Norton's position that LBCC repudiated the Agreement by its "failure and apparent inability to timely execute gold pre-deliveries for settlement" is perplexing and wrong. Neither party is required to deliver gold under the Agreement for physical settlement. Indeed, the Confirmations specifically state that the Transactions are financially settled bullion trades. (*See, e.g.*, Ex. F at 1 ("Description")). Accordingly, LBCC had no obligation to make "gold pre-deliveries". And, even assuming LBCC had such an obligation, LBCC as a debtor may suspend its performance while determining whether to assume the Agreement. (*See* Point A, above).

**NOTICE**

39. No trustee has been appointed in these chapter 11 cases. The Debtor has served notice of this motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases (*see* Docket No. 2837) on (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) counsel for Norton; (v) Norton; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtor submits that no other or further notice need be provided.

40. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court (a) enter an order granting the relief requested in this motion and as set forth in the accompanying proposed order (Exhibit O), and (b) such other and further relief to the Debtor as the Court may deem just and proper.

Dated:  New York, New York
        November 20, 2009

Respectfully submitted,

 /s/  Jayant W. Tambe
Jayant W. Tambe
Stephen Pearson
James K. Goldfarb
Benjamin Rosenblum
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION