**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David R. Fertig, Esq.
Eleanor H. Gilbane, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

**DEBTORS' OBJECTION TO THE MOTION OF THE CALIFORNIA**
**PUBLIC EMPLOYEES' RETIREMENT SYSTEM FOR AN ORDER**
**PURSUANT TO 11 U.S.C. §§ 362 AND 553 FOR RELIEF FROM**
**THE AUTOMATIC STAY TO EFFECT A NON-MUTUAL SETOFF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Brothers Special Financing, Inc.

("LBSF"), together with their debtor-affiliates (the "Debtors") hereby submit this objection (the

"Objection") to the motion (the "Motion") of the California Public Employees' Retirement

System ("CalPERS"), seeking entry of an order pursuant to sections 362 and 553 of the United

States Bankruptcy Code (the "Bankruptcy Code") for relief from the automatic stay to effect a

non-mutual setoff of CalPERS' debt to LBSF against CalPERS' claim against LBHI (the

"Purported Setoff").  In support of this Objection, the Debtors allege as follows:

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

## I.    **PRELIMINARY STATEMENT**

1.    CalPERS' Motion must be denied because the Purported Setoff represents a classic "triangular setoff" which lacks the strict "mutuality of obligation" required under New York law and section 553(a) of the Bankruptcy Code.  Indeed, CalPERS admits – because it must – that it owes LBSF in excess of $17 million (the "LBSF Claim") in connection with pre-petition derivative transactions that CalPERS and LBSF entered into pursuant to the terms of a 1992 International Swap Dealers Association, Inc. Multicurrency Cross Border Master Agreement dated as of June 5, 2006 (the "Master Agreement").  Yet, through the Purported Setoff, CalPERS seeks to avoid paying LBSF, and to thereby deprive LBSF and its creditors of substantial sums to which they *admittedly* are entitled, by "offsetting" the LBSF Claim against alleged obligations owed to CalPERS *not by LBSF, but by LBHI* – a separate and legally distinct entity – in connection with medium-term notes or other corporate debt instruments (the "Bonds") allegedly issued to CalPERS *by LBHI* and which are *wholly unrelated* to the Master Agreement or the derivative transactions that gave rise to the LBSF Claim (the "LBHI Debt").  The Purported Setoff is thus a blatant request for preferential treatment that is not permitted by the Bankruptcy Code or applicable non-bankruptcy law, and as such, CalPERS has not shown – and cannot possibly show – any "cause" for relief from the automatic stay.

2.    Notably, CalPERS does not dispute that "strict mutuality" is a prerequisite to any right of setoff under both New York law and the Bankruptcy Code.  *See* Motion at ¶ 24.[1]  Moreover, CalPERS *concedes* the "technical" absence of mutuality between the LBHI Debt and the LBSF Claim, admitting – as  it must – that the former is owed "by LBHI" whereas the latter

---

[1] Under the terms of the Master Agreement, New York is the non-bankruptcy law applicable to the parties' rights, obligations and relationship.  *See* Schedule to Master Agreement, (a true and correct copy of which is annexed hereto as Exhibit ("Exh.") A, at Part 4(1).

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

is "technically [ ] owed by CalPERS *to LBSF*." *Id.* at ¶ 29 (emphasis added). Nevertheless, CalPERS urges the Court to find that "a sufficient basis" exists for the Purported Setoff, and to grant stay relief, on three alternative grounds: *first*, on the ground that the Master Agreement provides for the Purported Setoff; *second*, on the ground that, under a narrow exception recognized in *Bloor v. Shapiro*, 32 B.R. 993 (S.D.N.Y. 1983), LBHI's status as LBSF's "guarantor" permits (*i.e.*, "requires") LBHI to assert the LBSF Claim, and thereby furnishes the otherwise missing mutuality; and *third*, on the ground that, despite the express language of section 553(a) of the Bankruptcy Code and controlling law to the contrary, mutuality is simply not required. None of these theories, however, provides a "legally sufficient basis" for the Purported Setoff or otherwise supports CalPERS' application for stay relief.[2]

3.      First, despite CalPERS' suggestion to the contrary – and consistent with applicable law – the Purported Setoff is not permitted under the Master Agreement. While CalPERS suggests in its Preliminary Statement that the Master Agreement provides a basis for the Purported Setoff, CalPERS does not develop that argument, and in fact appears to abandon it, in the body of its brief. Presumably this is because CalPERS recognizes that the Master Agreement provides *only* for the setoff of debts owing by and between CalPERS on the one hand *and LBSF on the other hand*, or any other setoff permitted "by operation of law." The Master

---

[2] CalPERS also curiously raises this Court's December 16, 2008 *Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts* (the "Settlement & Assumption Procedures Order") as a basis for the Purported Setoff. *See* Motion at Exh. H (Settlement & Assumption Procedures Order), at ¶ 18. By its terms, however, that order deals only with situations not relevant here – to wit: (i) the assumption and assignment of pre-petition derivatives contracts *that have not been terminated*; (ii) the *consensual termination* of such derivatives contracts; and (iii) the *consensual settlement of claims* arising out of derivative contracts terminated pre- or post-petition. *See id.* Moreover, and in any event, the Settlement & Assumption Procedures Order permits consensual termination and settlement agreements between the Debtors and their derivatives counterparties to "incorporate setoff or recoupment *solely to the extent that such setoff or recoupment is legally valid.*" *See id.* at 8, ¶ b (emphasis added). As explained herein, the Purported Setoff is not "legally valid." Thus, the Settlement & Assumption Procedures Order is irrelevant and fails to support the Purported Setoff.

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

Agreement, therefore, neither provides for, nor permits, the Purported Setoff, which seeks to effect a patently *non*-mutual setoff of amounts owed by CalPERS *to LBSF* against a claim allegedly held by CalPERS *against LBHI*.  (*See* Point III.A.1., *infra*.).

4.     Second, under New York law, the general rule is that a guarantor does *not* have standing to assert the claims of its principals, and the limited exception to this rule recognized by *Bloor* does not apply.  Indeed, the narrow exception recognized by *Bloor – which exists only for the benefit and at the election of the guarantor*, and may not be raised by the principal's debtors as a means of manufacturing setoffs designed to avoid obligations to the principal – is premised on the notion that a guarantor has the "implied consent" of its wholly-owned principal to assert claims belonging to the principal for the purpose of defeating or offsetting liability *under the guaranty*.  It is therefore inapplicable where, as here, (i) the guarantor's principal is a debtor in bankruptcy – with the result that the fiction of "implied consent" may not be indulged – or (ii) no claim exists or has been made on the guarantor's guaranty.  (*See* Point III.A.2.b., *infra*.). Accordingly, the general prohibition against a guarantor's assertion of claims belonging to the principal applies, LBHI may *not* assert the LBSF Claim, which is property of, and belongs exclusively to, LBSF and its Chapter 11 estate.  The mere existence of a principal-guarantor relationship between LBHI and LBSF, therefore, does not supply the mutuality needed to support the Purported Setoff.  (*See* Point III.A.2.a., *infra*.)

5.     Finally, neither Second Circuit case law nor principles of "equity" permit or require the Court to dispense with the "mutuality" requirement imposed by the Bankruptcy Code and applicable non-bankruptcy law.  In fact, none of the cases cited by CalPERS in support of this argument actually permitted a non-mutual setoff on equitable grounds, and the equities lie squarely in favor of *denying*, rather than permitting, the Purported Setoff; because the Purported

(Tentative) Hearing Date for Oral Arguments January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

Setoff represents a classic "triangular setoff" and such non-mutual setoffs "encroach[ ] upon the fundamental bankruptcy policy of equality of distribution without serving the basic purposes that preserving rights of setoff in bankruptcy were designed to serve."[3]  Indeed, the Purported Setoff would, in effect, unfairly take funds from LBSF's estate to pay alleged obligations of LBHI, to the prejudice of creditors of LBSF's estate who, as this Court previously recognized, "have been diligent in their efforts to segregate and account for the assets of each estate for the protection of separate creditor constituencies."[4]  Accordingly, the Court should deny CalPERS' Motion for relief from the automatic stay.

## II.    FACTS

6.    Prior to the commencement of its bankruptcy case, LBHI issued a variety of bonds and other corporate debt instruments having various maturity dates and orders of priority, and paying various rates of interest.  CalPERS alleges it that holds various such bonds (the "Bonds"), the total par value of which is alleged to equal $433,090,000.  *See* Motion at ¶ 8; Motion at Exh. A (CalPERS Bond Holdings in Lehman).[5]  Of that total, approximately $340 million is alleged to be owed in connection with Bonds for which payment is subordinated and junior to all other financial obligations of LBHI.

7.    CalPERS and LBSF entered into the Master Agreement, dated as of June 5, 2006. *See* Motion at Exh. B (Master Agreement), at 18.  By its terms, the Master Agreement governed various derivative transactions (*e.g.*, swaps, options, forwards, etc.) between CalPERS and LBSF (each a "Transaction"), each of which were memorialized by documents or other confirming

---

[3] *In re KZK Livestock, Inc.*, 221 B.R. 471, 481 (Bankr. C.D. Ill. 1998).

[4] *In re Lehman Bros. Holdings Inc.*, 404 B.R. 752, 762 (Bankr. S.D.N.Y. 2009) (Peck, J.).

[5] LBHI reserves all rights to challenge the amount and priority of the Bonds held by CalPERS, as well as LBHI's liability to CalPERS for alleged payment obligations in respect thereof.

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

evidence (each a "Confirmation") exchanged by and between CalPERS and LBSF. *See* Motion at Exh. B (Master Agreement), at 1.

8.      By Amendment Agreement dated as of December 18, 2007 (the "Amendment"), CalPERS and LBSF amended the Master Agreement to include additional terms relating to existing or prospective commodity transactions between them. *See* Motion at Exh. B, (Amendment), at 1-2.

9.      LBSF and CalPERS were the only signatories to the Master Agreement and the Amendment, and both of those agreements refer to only two parties – "Party A" and "Party B" – with LBSF designated as "Party A" and CalPERS designated as "Party B." *See* Motion at Exh. B. Indeed, the final page of the Master Agreement declares that "the parties have executed this document . . . below," and the only signature blocks and signatures that appear beneath that clause are those for LBSF and CalPERS. *See id.* at 18. Moreover, the Schedule to the Master Agreement specifically designates LBSF as "Party A" and CalPERS as "Party B," and makes no mention of LBHI as a "party." *See* Schedule, Exh. A hereto, at 1.

10.     Pursuant to the Schedule to the Master Agreement, LBHI was designated as a "Credit Support Provider" for LBSF and executed a guarantee, dated as of June 5, 2006 (the "Guarantee"), pursuant to which LBHI, as guarantor, "guarantee[d] to [CalPERS] the due, punctual and complete payment of all amounts *payable by [LBSF]* under each Transaction *when and as [LBSF]'s obligations thereunder shall become due and payable in accordance with the terms of the [Master] Agreement*." *See* Guarantee (a true and correct copy of which is annexed hereto as Exh. B), at 1, ¶ (a) (emphasis added). Indeed, the Guarantee specifically provided that LBHI would, "*[i]n the case of the failure of [LBSF] to pay punctually any such amounts* [and]

**(Tentative) Hearing Date for Oral Arguments: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

*upon written demand by [CalPERS], . . . pay or cause to be paid any such amounts . . . when and as the same shall become due and payable.*" *Id.* (emphasis added).

11.    LBHI was the only signatory to the Guarantee, and neither signed nor was designated in the Guarantee as a party to the Master Agreement. *Id.* In fact, the Guarantee expressly noted that the only parties to the Master Agreement were LBSF, as Party A, and CalPERS, as Party B. *Id.* at 1, Preamble.

12.    Under the terms of the Master Agreement, the filing of a bankruptcy petition by either party's Credit Support Provider constitutes an "Event of Default" as to which that party is considered the "Defaulting Party." *See* Motion at Exh. B (Master Agreement), at § 5(a)(viii)(4). Upon such an Event of Default, the other party – who is considered the "Non-defaulting Party" – is entitled to designate an "Early Termination Date" in respect of all outstanding Transactions (the "Terminated Transactions"). *Id.* at § 6(a). Upon the occurrence or effective designation of an Early Termination Date, no further payments or deliveries under section 2(a)(i) or section 2(e) of the Master Agreement are required to be made in respect of the Terminated Transactions. *Id.* at § 6(c)(ii). However, "an amount . . . payable in respect of an Early Termination Date shall be determined pursuant to Section 6(e)." *Id.*

13.    Pursuant to Section 6(e) of the Master Agreement, "[t]he amount, if any, payable in respect of an Early Termination Date and determined pursuant to this Section will be subject to any Set-off." *See* Motion at Exh. B (Master Agreement), at §§ 6(e), 14 (Definition of "Set-off"). In Part 1(10) of the Schedule to the Master Agreement, however, LBSF and CalPERS modified Section 6 of the Master Agreement to specifically define the parties' contractual setoff rights as follows:

> (f) *Set-off.* Any amount *(*the "Early Termination Amount") payable to one party (the "Payee") by the other party (the "Payer")

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

under Section 6(e), in circumstances where there is a Defaulting Party or one Affected Party will, at the option of the party ("*X*") other than the Defaulting Party or Affected Party (and without prior notice to same) be reduced by its set-off against any amount(s) (the "Other Agreement Amount(s)") payable (whether at such time or in the future or upon the occurrence of a contingency) by the Payee to the Payer (irrespective of the currency place of payment or booking office of such obligation) under any other agreement(s) between the Payee and the Payer or instrument(s) or undertaking(s) issued or executed by one party to, or in favor of, the other party (and the Other Agreement Amount(s) will be discharged promptly and in all respects to the extent it is so set-off).  X will give notice to the other party of any set-off effected under this Section 6(f).

14.     On September 15, 2008, LBHI filed a petition for protection in this Court, pursuant to Chapter 11 of the Bankruptcy Code.  On October 3, 2008 LBSF filed a petition for protection in this Court, pursuant to Chapter 11 of the Bankruptcy Code.

15.     By letters dated September 19, 2008, and entitled "Notice of Early Termination Date" (the "Termination Notices"), CalPERS notified LBSF that, as a result of the Event of Default caused by the filing of LBHI's Chapter 11 petition, CalPERS was declaring an Early Termination Date in respect of all outstanding Transactions evidenced by the Confirmations, and declared September 19, 2008 as the Early Termination Date.  *See* Motion at ¶ 10; Motion at Exh. C.

16.     By letter dated February 3, 2009, LBSF acknowledged receipt of the Termination Notices and requested that CalPERS deliver to LBSF the valuation statement required by section 6(d)(i) of the Master Agreement, showing the calculation of amounts payable under section 6(e) of the Master Agreement, and that CalPERS make any payment owing to LBSF as soon as practicable.  *See* Motion at ¶ 11; Motion at Exh. D.

17.     By letter dated May 14, 2009, CalPERS purported to provide LBSF with the valuation statement required pursuant to section 6(d)(i) of the Master Agreement, and

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

acknowledged that LBSF was entitled to a payment under section 6(e) of the Master Agreement in the amount of $17,173,892.83 (the "<u>LBSF Claim</u>").[6] CalPERS, however, purported to possess "the right to setoff [the LBSF Claim] against any and all amounts owed to it by [LBHI] in connection with [the Bonds]." *See* Motion at <u>Exh. F</u>, at 2.

18.     By letter dated July 2, 2009, Debtors advised CalPERS that CalPERS has no right to setoff the LBSF Claim against the LBHI Debt and that CalPERS' refusal to make payment to LBSF in respect of the LBSF Claim was a violation of the automatic stay, and thus reiterated its demand for immediate payment of the LBSF Claim. *See* Motion at <u>Exh. G</u>. On August 26, 2009, CalPERS responded by filing the instant Motion, seeking relief from the automatic stay to exercise the non-mutual Purported Setoff.

## III.     ARGUMENT

**A.     CALPERS IS NOT ENTITLED TO RELIEF FROM THE AUTOMATIC STAY TO EXERCISE THE PURPORTED SETOFF BECAUSE IT HAS NOT DEMONSTRATED, AND CANNOT DEMONSTRATE, ANY VALID AND ENFORCEABLE RIGHT TO EXERCISE THAT SETOFF.**

19.     As CalPERS properly recognizes, it must obtain relief from the automatic stay before exercising the Purported Setoff. *See* Motion at ¶ 37; *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 839 (Bankr. S.D.N.Y. 1990); *In re Garden Ridge Corp.*, 338 B.R. 627, 632 (Bankr. D. Del. 2006) (internal citations omitted); 11 U.S.C §§ 362(a)(7), 362(d).[7] The

---

[6] LBSF reserves all rights to challenge CalPERS' valuation and calculation of interest, and nothing contained herein shall be deemed an acceptance of CalPERS' valuation or interest calculations.

[7] CalPERS correctly anticipates the inapplicability of the "safe harbor" provisions to the Purported Setoff, *see* Motion at ¶ 3, because the Purported Setoff: (i) involves non-mutual debts, and therefore is not a valid setoff under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) seeks to set off the LBHI Debt, and thus does not represent an attempt to "offset" "termination values or payment amounts arising under or in connection with the termination, liquidation or acceleration of one or more swap agreements." *See* 11 U.S.C. §§ 362(b)(17), 362(b)(27), 560 and 561.  Section 546(g) of the Bankruptcy Code, which protects pre-petition transfers in connection with a swap agreement, is irrelevant to setoffs.  11 U.S.C. § 546(g).

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

decision whether to lift the automatic stay is committed to the sound discretion of the bankruptcy court, and is appropriate only where a creditor demonstrates "cause."   11 U.S.C. § 362(d); *Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (holding that movant bears the burden of proof to show cause for relief from the stay).

20.     Section 362(d) of the Bankruptcy Code does not define what constitutes "cause" for relief from stay.  At a minimum, however, "cause" "requires the establishment of a legally sufficient basis for the action sought." *In re Drexel Burnham*, 113 B.R. at 838.  Thus, where a creditor seeks relief from stay for the purpose of exercising a purported right of setoff, the creditor bears the burden of demonstrating that it possesses a valid right of setoff under section 553(a) of the Bankruptcy Code. *Official Comm. of Unsecured Creditors v. Mfg. and Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 212 B.R. 206, 212 (2d Cir. 1997), *aff'd* 146 F.3d 136 (2d. Cir. 1998); *In re Lehman Bros.*, 404 B.R. at 757; *Scherling v. Hellman Elec. Corp.* (*In re Westchester Structures, Inc.*), 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995) (movant must establish all elements under section 553(a)).

21.     Additionally, the movant bears the burden of demonstrating that the relevant factors identified in *In re Sonnax,* including the balance of harms, weigh in favor of stay relief. *In re Sonnax, 907 F.2d* at 1287 (noting balance of harms as one of twelve factors in considering relief from the stay).  Here, CalPERS has wholly failed to even address the *Sonnax* factors, let alone to demonstrate how or why those factors – which clearly weigh in favor of *denying* CalPERS' Motion – support CalPERS' request for stay relief.[8]  Accordingly, and for this reason

---

[8] *In re Sonnax* enumerates twelve factors that may be relevant to determining whether "cause" exists to lift the automatic stay.  *Id.* at 1286.  While not all of the factors are relevant in every case, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), and while it is true that the *Sonnax* factors most often are considered in the context of motions seeking stay relief for the purpose of pursuing

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

alone, CalPERS' Motion must be denied. *In re Sonnax*, 907 F.2d at 1285 ("If the movant fails to make [such an] initial showing . . . the court should deny relief without requiring any showing from the debtor that it is entitled to [the] continued protection [of the automatic stay.]"); *In re Bousa*, 2006 WL 2864964 at *4 (remanding for failure to address *Sonnax* factors in motion to effect setoff).

22.      Moreover, as demonstrated below, CalPERS has not shown – and cannot possibly demonstrate – "a legally sufficient basis" for its Purported Setoff because, CalPERS' suggestion to the contrary notwithstanding, *see* Motion at ¶ 3, the Purported Setoff is not valid or enforceable under either the Master Agreement, section 553(a) of the Bankruptcy Code or "equity and Second Circuit case law." Accordingly, CalPERS' Motion should be denied. *See In re Drexel Burnham*, 113 B.R. at 839 (it "makes no sense to modify the automatic stay to permit the movant to set off mutual debts [where] the movant fails to demonstrate that it enjoys the right"); *In re McLean Indus. Inc.*, 90 B.R. 614, 622 (Bankr. S.D.N.Y. 1988) (denying relief from stay where creditor did not satisfy burden of demonstrating a valid setoff).

**1.      The Purported Setoff Is Not Valid Or Enforceable Under The Master Agreement Because That Agreement Allows Only For "Mutual" Setoffs Involving Amounts Owed To And From CalPERS and *LBSF*.**

23.      CalPERS contends that a basis for the Purported Setoff lies under the Master Agreement. Motion at ¶ 3. Yet CalPERS does not develop that agreement and merely

---

litigation against a debtor rather than for the purpose of effecting a purported right of setoff, consideration of the *Sonnax* factors is nevertheless necessary in any motion for relief from the stay. *See, e.g, In re Bousa Inc.*, No. 05 Civ. 230, 2005 WL 1412961, *4 (S.D.N.Y. June 15, 2005) (listing cases and remanding for failure to address *Sonnax* factors in motion to effect setoff). Courts have held that, in the context of a motion seeking relief to exercise a setoff, the balance of harms is a relevant consideration. *See Global Cable, Inc. v. Adelphia Comm'n Corp. (In re Adelphia Comm'n Corp.)*, No. 02 Civ. 9770, 2006 WL 1559437, at *3 (S.D.N.Y. June 7, 2006) (balance of harms *Sonnax* factor supported denial of invalid setoff); *In re Bousa Inc.*, No. 89-B-13380, (JMP), 2006 WL 2864964, *9 (Bankr. S.D.N.Y. Sept. 29, 2006) (Peck, J.) (same). Here, as explained in Point III.A.3, *infra*, equitable considerations and the balance of harms clearly weigh *against* the stay relief proposed by CalPERS.

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

references the language of section 6(e) and section 6(f) of the Master Agreement to claim that,
taken together, those provisions "provide[ ] that any amount payable under section 6(e) [*i.e.*, the
CalPERS Debt] may be reduced by setoff." *See* Motion at ¶¶ 16-17. As even a cursory reading
of the Master Agreement confirms, however, CalPERS is mistaken.

24.     It is true that section 6(e) of the Master Agreement provides that "[t]he amount, if
any, payable in respect of an Early Termination Date and determined pursuant to this Section
will be subject to any Set-off." *See* Motion at Exh. B, § 6(e). And section 14 of the Master
Agreement defines "Set-off" as  any "setoff, offset, . . . right of retention or withholding, or
similar right or requirement to which the payer of an amount under Section 6 is entitled . . .
whether arising under this Agreement, another contract, applicable law or otherwise . . . ." *Id.* at
§ 14 (Definition of "Set-off"). Those provisions, however, are expressly modified by the
Schedule, which expressly limits the parties' respective contractual setoff rights through the
addition of section 6(f). *See* Schedule, Exh. A hereto, at Part 1(10).

25.     Indeed, the Schedule carefully delineated the parties' contractual setoff rights
through the addition of section 6(f) to the Master Agreement, which specifically provides that
"[a]ny amount (the "Early Termination Amount") payable to one party (the "Payee") by the
other party (the "Payer") under section 6(e), in circumstances where there is a Defaulting Party .
. . will, at the option of the party . . . other than the Defaulting Party . . . be reduced by its set-off
against any amount(s) . . . payable . . . *by the Payee to the Payer* . . . under any other
agreement(s) *between the Payee and the Payer* or instrument(s) or undertaking(s) issued or
executed *by one party to, or in favor of, the other party* . . . ." *See* Schedule, Exh. A hereto, at
Part 1(10).

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

26.    Notably, LBHI is not "a party" under the Master Agreement or Schedule; the only "parties" under the Master Agreement and Schedule are LBSF, as "Party A," and CalPERS, as "Party B." *See* Motion at <u>Exh. B</u>, at 1; Schedule, <u>Exh. A</u> hereto, at 1. Thus, *only LBSF and CalPERS* can be considered "the Payee" or "the Payer" as those terms are used and defined in section 6(f) of the Master Agreement, and the only setoffs that are provided for in section 6(f) are those involving amounts payable by LBSF to CalPERS and vice-versa.[9]

27.    Of course, as CalPERS notes in its Motion, the contractual setoff rights provided for in the Master Agreement are expressly stated to be "without prejudice and in addition to any right of set-off otherwise available to a party (whether by operation of law, contract, or otherwise)." *See* Motion at ¶ 17; Schedule, <u>Exh. A</u> hereto, Part 1(10). As explained below, however, CalPERS cannot establish any right to exercise the Purported Setoff under applicable non-bankruptcy law (*i.e.*, New York law) or under the Bankruptcy Code. Accordingly, neither

---

[9] Although not set forth in its Motion, CalPERS previously has suggested that LBHI could be considered "a party" to the Master Agreement for purposes of section 6(f)'s setoff provision because Part 4 of the Schedule provides that the Guaranty "forms part of, and is subject to, th[e] [Master Agreement]." *See* Motion, Exh. F, at p. 2. It is settled New York law, however, that "[a] guarantee is a contract separate and independent of the underlying contract[ ]," and that "[t]he principal debtor is not a party to the guarantee nor is the guarantor a party to the underlying contract." *Congress Factors Corp. v. Meinhard Commercial Corp.*, 129 Misc. 2d 726, 728-29, 493 N.Y.S.2d 917, 919-20 (Sup. Ct. 1985). Moreover, the reference to LBHI's Guaranty in Part 4 of the Schedule cannot be interpreted to subject LBHI to any of the burdens or obligations set forth in the Master Agreement (including, for example, the obligation to make any payment required under section 6(e) thereof) since LBHI never agreed to be bound by those burdens or obligations. *See E.E.O.C. v. Waffle House, Inc.* 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). Indeed, LBHI's rights and obligations with respect to the Master Agreement are limited to those set forth in the Guaranty, and under settled New York law, those rights and obligations must be "narrowly construed" and "cannot be extended by construction beyond the plain and explicit language of the [Guaranty]." *Key Bank v. Burns*, 162 A.D.2d 501, 503, 556 N.Y.S.2d 829, 830 (2d Dep't 1990); *see also Fehr Bros. v. Scheinman*, 121 A.D.2d 13, 509 N.Y.S.2d 304, (1st Dep't 1986) ("the obligations of the guarantor must be strictly construed according to the terms of the agreement and cannot be altered, extended or enlarged by the creditor or debtor without the creditor's consent, since he cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty.").

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

section 6(f) of the Master Agreement (as amended by the Schedule), nor any other provision of the Master Agreement, provides a "legally sufficient basis" for the Purported Setoff.[10]

### 2. The Purported Setoff Is Not Valid Or Exercisable Under The Bankruptcy Code Or Under Applicable Non-Bankruptcy Law Due To Lack Of Mutuality.

28. The Bankruptcy Code does not, itself, create any independent right of setoff. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995); *In re Lehman Bros.*, 404 B.R. at 757. Instead, section 553(a) of the Bankruptcy Code "preserves any right to setoff that exists under applicable non-bankruptcy law," while "impos[ing] additional restrictions . . . that must be met to impose a setoff against a debtor in bankruptcy." *Packaging Indus. Group Inc. v. Dennison Mfg. Co. Inc. (In re Sentinel Prod. Corp., PI, Inc.)*, 192 B.R. 41, 45 (N.D.N.Y. 1996); *see also In re Bennett Funding*, 212 B.R. at 212; 11 U.S.C. § 553(a). Thus, "setoff is appropriate in bankruptcy only when a creditor enjoys *both* an independent right of setoff under applicable non-bankruptcy law *and* meets the further Code-imposed requirements and limitations set forth in section 553." *In re SemCrude,* 399 B.R. at 393 (emphasis added); *see also In re Bennett Funding*, 212 B.R. at 212.

29. Among the "additional restrictions" imposed by section 553(a) is the requirement that "the debts [sought] to be offset [against one another] be *mutual*, pre-petition debts." *In re SemCrude*, 399 B.R. at 393 (emphasis added); *see also In re Bennett Funding*, 212 B.R. at 212. "The central premise of the right to setoff is the adjustment of *mutual* obligations." *In re*

---

[10] Even if the parties had provided in the Master Agreement for a purported contractual right to setoff the LBSF Claim against amounts owed to the Guarantor, the LBHI Debt, such a right would violate the strict mutuality requirement embodied in section 553(a) of the Bankruptcy Code, and would therefore be wholly unenforceable. *See In re SemCrude LLP*, 399 B.R. 388, 398-99 (Bankr. D. Del. 2008). Thus, in all events, it is clear that the Master Agreement does not provide a legally sufficient basis for the Purported Setoff or CalPERS' request for stay relief.

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

*Lehman Bros.,* 404 B.R. at 756. Indeed, the express language of section 553(a) specifically provides that:

> [T]his title does not affect any right of a creditor to offset a *mutual* debt owing *by such creditor to the debtor* that arose before the commencement of the case under this title against a claim of *such creditor against the debtor* that arose before the commencement of the case ….

11 U.S.C. § 553(a) (emphasis added).[11] Thus, in order to possess a valid right of setoff, a creditor must demonstrate not only that the debts sought to be setoff against one another each arose prepetition, but that those pre-petition debts are "*mutual.*" *In re Lehman Bros.,* 404 B.R. at 757 ("The prerequisites of setoff include the following: (1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual.") (internal quotations marks and citation omitted); *see also In re Bennett Funding*, 212 B.R. at 212.[12]

30. Neither section 553 nor any other provision of the Bankruptcy Code defines what constitutes a "mutual debt." *In re SemCrude,* 399 B.R. at 396. "The overwhelming majority of courts to consider the issue," however, have held that debts are 'mutual' only if they are "due to and from the same persons in the same capacity." *Id.; Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002). Moreover, the authorities interpreting section 553 make clear

---

[11] New York law, like section 553(a) of the Bankruptcy Code, requires that all setoffs be of mutual debts. *In re Westchester Structures*, 181 B.R. at 740 ("Under New York [equitable and statutory] law, to offset debts, they must be mutual . . . [meaning] due to and from the same persons in the same capacity.").

[12] Notably, "[n]o mention is made in [section 553] of non-mutual debts," *In re SemCrude,* 399 B.R. at 396-97; and mutuality has been a cardinal tenet of any right of setoff since the Bankruptcy Act's enactment in 1898. *In re Drexel Burnham*, 113 B.R. at 851; *Citizens Bank*, 516 U.S. at 18 ("The right of setoff. . . allows entities that owe *each other* money to apply their *mutual* debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.") (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). Thus, "a debt *must be mutual* in order to be setoff under section 553." *In re SemCrude*, 399 B.R. at 396. Indeed, "[o]n this general rule, the courts are in unanimous agreement." *Id.*

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

that, in order for debts to be mutual, "each party must own [its] claim in [its] own right severally, with the right to collect [against the other] in [its] own name . . . ." *In re SemCrude*, 399 B.R. at 396 (citing *In re Garden Ridge*, 338 B.R. at 633-34 and *Braniff Airways, Inc. v. Exxon Co., USA*, 814 F.2d 1030, 1036 (5th Cir. 1987)).  To be "mutual' within the meaning of section 553, the debts must be owed: (i) to and from the same parties; (ii) in the same right; and (iii) in the same capacity.  *Westinghouse Credit Corp.*, 278 F.3d at 149; *In re Bennett Funding*, 146 F.2d at 139.

31.     Importantly, the proponent of a setoff – here, CalPERS – bears the burden of demonstrating mutuality.  *In re Lehman Bros.*, 404 B.R. at 758 (citing *In re Adelphia Comm'ns*, 2006 WL 1559437, *4; *Geron v. Schulman* (*In re Manshul Constr. Corp.*, 2000 WL 1228866, *56 (S.D.N.Y. 2000) ("A creditor bears the burden of proving its right to setoff and must establish … [that] the debt and the claim [are] mutual.")).  Because setoffs "disfavor[ ] other equally-deserving creditors and interrupt[ ] the debtor's cash flow," however, *see Public Serv. Co. of New Hampshire v. New Hampshire Elec. Coop. (In re Public Serv. Co. of New Hampshire)*, 884 F.2d 11, 13 (1st Cir. 1989), the concept of mutuality must be "strictly construed against" CalPERS.  *See In re Bennett Funding*, 212 B.R. at 212 ("mutuality is strictly construed against the party seeking setoff").

32.     Here, as demonstrated below, CalPERS has not carried, and cannot possibly carry, its high burden of demonstrating that the debts it seeks to setoff – to wit, the LBSF Claim and the LBHI Debt – are owed to and from "the same parties."  Nor, as explained below, can CalPERS demonstrate that the Purported Setoff would be of claims held "in the same right" or "in the same capacities."  Accordingly, CalPERS has failed to establish a valid right of setoff due to a lack of "mutuality."

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

### a.    The LBSF Claim And The LBHI Debt Are
### Not Owed To And From "The Same Parties."

33.    The "threshold requirement of mutuality" is that the relevant claim and debt must exist between the "same parties." *In re KZK Livestock,* 221 B.R. at 480.  As other bankruptcy courts have recognized, this requirement is designed to prevent so-called "triangular setoffs" – *i.e.*, situations in which a creditor seeks to offset its obligations to a debtor against an obligation owed to the creditor by an affiliate of the debtor.  *See In the Matter of Elcona Homes Corp.*, 863 F.2d 483, 486 (7th Cir. 1988) ("the statute itself speaks of 'a mutual debt'. . . and therefore precludes 'triangular' set offs")); *In re SemCrude, L.P.*, 399 B.R. at 393-94 ("Allowing a creditor to offset a debt it owes to one corporation against funds owed to it by another corporation – even a wholly-owned subsidiary – would [ ] constitute an improper triangular setoff under the Code."); *Bakst v. Dellaquila (In re Chatam, Inc.)*, 239 B.R. 837, 840 (Bankr. S.D. Fla. 1999) ("'triangular setoffs' are not permitted under 11 U.S.C. § 553").

34.    "Triangular setoffs" are prohibited on the theory that they "encroach[ ] upon the fundamental bankruptcy policy of equality of distribution without serving the basic purposes that preserving rights of setoff in bankruptcy were designed to serve." *In re KZK Livestock*, 221 B.R. at 481.  "Thus, two entities, even if related, may not aggregate their debts and claims for setoff purposes." *Id*. at 480.

35.    Here, CalPERS concedes – as it must – that "the CalPERS Claim is owed to CalPERS *by LBHI*" and that "the CalPERS Debt [ ] is owed by CalPERS *to LBSF*."  *See* Motion at ¶ 29.[13]  Thus, it is beyond dispute that CalPERS seeks to exercise a "triangular setoff" and that the debts sought to be set off against one another are *not* owed by and between the "same

---

[13] *See also* Motion at ¶ 1 (defining the CalPERS Claim as "a pre-petition claim *held against LBHI*. . . ."); *id*. at ¶ 2 (defining the CalPERS Debt as "a pre-petition claim against CalPERS" that "debtor *LBSF held* . . . .").

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

parties"; for, "[i]t is settled law that a 'triangular setoff' exists even where the parties are related," *In re Garden Ridge Corp.*, 338 B.R. at 635, and that "a subsidiary's debt may not be setoff against the credit of a parent or other subsidiary, or vice versa, because no mutuality exists under the circumstances." *In re Sentinel Prods. Corp.*, 192 B.R. at 46.[14] Accordingly, under controlling Second Circuit law, the Purported Setoff is impermissible and unenforceable as a matter of law.

36.     Without disputing the foregoing legal principles, CalPERS urges this Court to nevertheless find that the "same parties" requirement of mutuality is met simply because LBHI was a "guarantor" of LBSF's obligations under the Master Agreement.    Indeed, while acknowledging that "the CalPERS Debt *technically* is owed by CalPERS *to LBSF*," CalPERS emphasizes that the CalPERS Debt "is based upon a contract in which LBHI was the credit support provider and guarantor," and argues that this somehow compels the conclusion that "the same party (*i.e.*, LBHI) both owed a debt to CalPERS and owned a claim against CalPERS." Motion at ¶¶ 29, 32.    Nothing about LBHI's status as "guarantor," however, supplies the requisite mutuality between the CalPERS Claim and the CalPERS Debt.

### i.    The Mere Existence Of LBHI's Guarantee Does Not Permit CalPERS To Treat LBSF And LBHI As One And The Same Party.

37.     The "mere existence of a guaranty," or the presence of a guarantor/subsidiary relationship, does not create the requisite mutuality among debts owing between (i) a principal and its creditors on the one hand and (ii) the principal's guarantor and the principal's creditors on

---

[14] *See also MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618 n.2 (2d Cir. 1989) (noting that "a subsidiary's debt may not be set off against the credit of a parent"); *In re Fasano/Harriss Pie Co.*, 43 B.R. 864, 870 (Bankr. W.D. Mich. 1984) ("Since an intercorporate relationship is insufficient to meet the mutuality requirement in an offensive claim of setoff by a member of the corporate family against a third party, it likewise is insufficient to meet the mutuality requirement in a third party claim of setoff against a member of the corporate family.").

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

the other hand. *In re Ingersoll*, 90 B.R. 168 (Bankr. W.D.N.C. 1987); *Buchanan v. Kerr-McGee Energy Serv. Corp. (In re GPR Holdings, L.L.C)*, No. 01-36736, 2004 WL 3007080, *4-5 (Bankr. N.D. Tex. Nov. 21, 2004). Indeed, while the effect of such a guaranty is to make the guarantor obligated for the debts of its principal, "it does not change the fact" that any debts owed between the principal and its creditors on the one hand, and the principal's creditors and its guarantor on the other hand, are "owed between different parties, in different capacities and, thus, not subject to offset." *In re Ingersoll*, 90 B.R. at 171.

38.     In *Ingersoll*, for example, the Bankruptcy Court for the Western District of North Carolina denied stay relief to Donald Gladieux ("Gladieux"), the sole shareholder and guarantor of Rodson Corporation ("Rodson"), in connection with his efforts to set off Rodson's $440,000 debt under a promissory note executed in favor of Chapter 11 debtors Clyde and Betty Ingersoll (the "Ingersolls") against the Ingersolls' separate $22,000 debt to Gladieux in connection with an unrelated loan. 90 B.R. at 169-70. Among other things, Gladieux argued that "the fact that he [wa]s guarantor of Rodson's debt to the Ingersolls creat[ed] the requisite mutuality" since "his guaranty . . . [wa]s an absolute promise that ma[de] him, in effect, a co-maker" on Rodson's promissory note. *Id*. at 171. The court rejected this argument, however, noting that "Rodson [wa]s indebted to the Ingersolls and the Ingersolls [we]re indebted to Gladieux," and that his guaranty of Rodson's indebtedness to the Ingersolls "d[id] not change the fact that the debts [sought to be setoff we]re between different parties in different capacities and, thus, not subject to offset." *Id*.

39.     Similarly, in *GPR Holdings*, the Bankruptcy Court for the Northern District of Texas granted summary judgment in favor of Chapter 11 debtor GPR Holdings ("GPR"), the pre-petition parent and guarantor of affiliates Aurora Natural Gas LLC ("Aurora") and Western

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

Natural Gas LLC ("Western"), declaring that Kerr-McGee Energy Services ("Kerr-McGee"), a trade counterparty that had purchased and sold natural gas to each of GPR, Aurora and Western pre-petition, was *not* entitled to set off its $2.1 liability to GPR (which arose out of its purchase of gas from GPR) against its claims against Aurora and Western (which arose out of its sale of gas to those affiliates of GPR). *See In re GPR Holdings,* 2004 WL 3007080 at *1, 5. As did the movant in *Ingersoll*, Kerr-McGee argued that GPR's status as guarantor created the requisite mutuality of obligations. *Id.* at *1 ("Kerr-McGee argues that the two Corporate Guaranties executed by GPR, which guarantee[d] the obligations of Aurora and Western, affords Kerr-McGee the right of set-off."). Noting that Kerr-McGee had "made no demand on GPR to pay under the guaranty agreements," however, the court held that "the guaranty agreements d[id] not make [Kerr-McGee's] debt and claim mutual obligations." *Id.* at *5. "The mere existence of the guaranty," the court explained, "[did not] create[] a mutual obligation" and Kerr-McGee could demonstrate no authority "for the proposition that amounts owed to Kerr-McGee from third parties may be offset against amounts Kerr-McGee owe[d] GPR simply because GPR [had] guaranteed the third parties' obligations." *Id.*

40.    Here, as in *Ingersoll* and *GPR*, CalPERS' argument that "the same party (LBHI) both owed a debt to CalPERS and owned a claim against CalPERS" is premised entirely on the existence of the Guarantee and the resulting guarantor-principal relationship between LBHI and LBSF. CalPERS, however, *neither made nor could make any demand* on the Guarantee because, by CalPERS' own admission, LBSF was "in the money" under the Master Agreement and had *no* liability to CalPERS. Motion at ¶ 2. Indeed, the claim that CalPERS purports to possess against LBHI arises *not* out of the Guarantee, but out of Bonds that are wholly unrelated to the

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

Master Agreement and the Guarantee. Accordingly, as in *Ingersoll* and *GPR*, there is no mutuality between the debts that CalPERS seeks to setoff.

ii.    ***Bloor v. Shapiro* Is Inapplicable And Does Not Permit CalPERS To Treat LBSF And LBHI As "The Same Party."**

41.    Ignoring the foregoing authority and relying on the court's decision in *Bloor v. Shapiro*, 32 B.R. 993 (Bankr. S.D.N.Y. 1983), CalPERS contends that the "same parties" requirement is met because, as guarantor of LBSF's payment obligations under the Master Agreement, LBHI "had the right to assert any claim that LBSF held against CalPERS for amounts owed under the Master Agreement." *See* Motion at ¶ 29. In fact, however, the holding in *Bloor* – which recognized a narrow exception to the general rule that a guarantor does *not* have standing to assert the rights and claims of its principals, *see Sterling Financial Serv. Co. v. Franklin*, 259 Fed. Appx. 367, 369 (2d Cir. 2008) – is inapplicable under the circumstances presented here. Accordingly, LBHI does *not* have the right to assert any claim that LBSF held against CalPERS for amounts owed under the Master Agreement, and LBHI's status as guarantor of LBSF's payment obligations thereunder does not provide any basis for treating LBHI and LBSF as "the same party" for purposes of setoff mutuality.

42.    Under New York law, the general rule is that a guarantor does *not* have standing to assert the claims of its principals. *See id.* at 369 (affirming summary judgment for lender on grounds that guarantor lacked standing to assert claims of principals); *G.M.A.C. v. Farkos*, 133 A.D.2d 738, 739, 520 N.Y.S.2d 27, 28 (N.Y. App. Div. 1987); *Ettlinger v. Nat'l Sur. Co.*, 221 N.Y. 467, 117 N.E. 945 (1917). This rule exists for the purpose of protecting the principal – here, LBSF – and *its* right to collect on *its* claim. *Bloor*, 32 B.R. at 1001.

43.    As the court in *Bloor* recognized, a *narrow* exception to this rule exists whenever: (1) a guarantor becomes obligated on its guaranty; and (2) the principal consents to the

21

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

guarantor's use of the principal's claims as a defense to, or as a means of reducing, the guarantor's liability under the guaranty. *See Bloor*, 32 B.R. at 1001 (citing *Taylor & Jennings v. Bellino*, 57 A.D.2d 42, 45, 393 N.Y.S.2d 203 (3d 1977)); *Cinema North Corp. v. Plaza at Latham Assoc.*, 867 F.2d 135, 139 (2d Cir. 1989). Moreover, as the *Bloor* court noted, the principal's consent may be presumed if the guarantor "controls the principal." *Bloor*, 32 B.R. at 1001. This narrow exception, however, "***does not apply*** where, as here, the principal is bankrupt and is no longer a going concern." *First New York v. DeMarco*, 130 B.R. 650, 655 (S.D.N.Y. 1991) (emphasis added). Indeed, as the *First New York* court aptly noted:

> [t]he limited exception [recognized in *Bloor*] is based on a notion of implied consent by the principal, which consent can be inferred by the fact that the guarantors control and speak for the principal. However, [where a principal is [ ] in bankruptcy, any claims existing on behalf of the company are property of the bankrupt's estate, 11 U.S.C. § 541 . . . and such claims [ ] belong exclusively to the trustee in bankruptcy. . . Without [the trustee's] consent, [the guarantor] cannot claim implied consent from the corporation . . . and thus lack[s] standing to bring [the principal's] claims.

130 B.R. at 655.

44.    Here, LBSF admittedly filed a voluntary petition in bankruptcy on October 3, 2008 and remains a debtor-in-possession in connection with the above-captioned jointly administered Chapter 11 cases. *See* Motion at ¶ 6. As in *First New York*, therefore, LBSF's claim against CalPERS is property of LBSF's estate, and CalPERS' suggestion that "it can be presumed that LBSF would consent to LBHI's assertion of LBSF's claims under the Master Agreement" rings hollow.[15] Motion at ¶ 30. In fact, far from abandoning the LBSF Claim or

---

[15] *See First New York*, 130 B.R. at 655 (rejecting application of *Bloor* doctrine where principal's bankruptcy trustee "ha[d] not consented to [guarantors'] assertion of causes of action which may exist in favor of [the principal]" and where "there has been no showing made that the trustee has taken the specific actions required by section 554 of Title 11 of the United States Code to formally abandon [those] claims, and the trustee may still choose to assert such claims, on his own, or even at [the guarantors'] urging"); *see also G.M.A.C.*, 133 A.D.2d at 739.

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

relinquishing that claim to LBHI, LBSF has affirmatively pursued its claim, making several demands for payment *on its own behalf* and for the benefit of creditors of *its* estate (rather than for the benefit of creditors of LBHI's estate), including as recently as July 2, 2009. *See* Motion at <u>Exhs</u>. <u>D</u> & <u>G</u>. The *Bloor* decision thus does nothing to establish the mutuality required to support the Purported Setoff.

45.    *Bloor* decision is also inapposite for the following additional reasons. First, nothing about the *Bloor* decision suggests that a guarantor is *required* to assert its principal's claims – or that it may be *deemed* to have done so – so as to allow the guarantor's creditors to avoid obligations they may have to the guarantor's principal by claiming a setoff against amounts allegedly owed by the guarantor. To the contrary, *Bloor* expressly emphasizes that the narrow exception it recognizes is an *elective* one that belongs exclusively to, and which exists for the benefit of, *the guarantor – not creditors of the guarantor or other third parties. Bloor*, 32 B.R. at 1002. Indeed, as CalPERS' Motion recognizes, the *Bloor* court expressly held that "[a] guarantor *may assert* the claims of [its] principal." *See* Motion at ¶ 30 (quoting *Bloor*, 32 B.R. at 1001).[16] Here, LBHI has not elected to assert the LBSF Claim – even assuming it had the power to do so – and the *Bloor* decision therefore fails to support CalPERS' claim of setoff mutuality.[17]

---

[16] *See Bloor*, 32 B.R. at 1002 (noting that a principal's claims "*may* be asserted *by the [guarantor]*") (emphasis added); *id*. ("If the guarantee agreements entitled the [guarantors] to assert the [principal's contractual] claims . . . [s]uch claims *could* be asserted *by the* [*guarantors*]. . .") (emphasis added).

[17] In any event, it would inappropriate to allow a third-party creditor of LBHI, such as CalPERS, to invoke the narrow *Bloor* exception to "manufacture" a setoff so as to avoid its admitted obligations to LBSF and creditors of LBSF's estate. Indeed, CalPERS' attempted invocation of *Bloor* is akin to an action by CalPERS to pierce the corporate veils of LBHI and LBSF and to ignore their corporate integrity to justify the Purported Setoff – something which, as a creditor of LBHI's estate, CalPERS lacks standing to do. *See, e.g., In re Enron Corp.* No. 01-16034, Adv. Proc. No. 02-3609, 2003 Bankr. LEXIS 330, at *10 (Bankr. S.D.N.Y. April 17, 2003) (decision to seek to pierce corporate veils of chapter 11 debtor belongs exclusively to debtor or its bankruptcy trustee).

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

46.     Second, as noted above, the "narrow exception" in *Bloor* does not support mutuality between *any and every* debt owed by the guarantor to a third party and debts owed by such third party to the guarantor's principal.   Rather, as *Bloor* itself makes clear, the exception merely supports mutuality between the claims of a guarantor's principal that are "related to" the guarantee, and claims made against the guarantor "*under the guarantee[ ].*"  *See Bloor*, 32 B.R. at 1002 ("If the guarantee agreements entitled the [guarantors] to assert the [principal's] claims, *which were closely related to the guarantees*, then [ ] such claims would be debts owed to the [guarantors] *to the extent of the [guarantors'] liability under the guarantees.*") (emphasis added). Indeed, in *Taylor & Jennings*, cited for support by *Bloor*, the court explained the "narrow exception" as follows: "The principal may consent to the use of its cause of action on the principal contract *as a defense by the [guarantor] when sued on the contract of guaranty.*"  57 A.D.2d at 44-45, 393 N.Y.S.2d at 205 (emphasis added).

47.     Here, CalPERS effectively admits that the LBHI Debt is *in any way related to* the Guarantee or the Master Agreement.   Rather, the LBHI Debt is based upon LBHI's alleged obligations to CalPERS under the Bonds, which have absolutely no nexus to the Guarantee.  *See id.* at ¶ 1 (admitting that the CalPERS Claim is based upon a pre-petition claim against LBHI is "based upon certain bonds issued by LBHI to CalPERS").

48.     Moreover, CalPERS *cannot possibly* make any demand under the Guarantee – and LBHI *cannot possibly* have any liability thereunder – because the Guarantee only requires LBHI to pay "amounts payable by [LBSF] . . . when and as [LBSF]'s obligations thereunder shall become due and payable in accordance with the terms of the [Master] Agreement."  LBSF, however, is "in the money" under the Master Agreement, and *LBSF therefore has no payment obligation* under the Master Agreement.   Rather, it is *CalPERS* that is obligated *to LBSF* under

24

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

the Master Agreement. *See* Motion at ¶ 2 (conceding that "LBSF held a pre-petition claim *against CalPERS* in the amount of $17,173,892.83 based upon the termination of [the]. . . Master Agreement. . . .") (emphasis added). *Bloor* is, therefore, wholly inapposite and CalPERS' setoff rights (or lack thereof) are governed by *In re GPR Holdings*, *supra*, which confirms the absence of mutuality in this case. *See In re GPR Holdings*, 2004 WL 3007080, at *4-5 (where no demand is made on the guaranty, the existence of a guarantor/principal relationship does not establish the mutuality required to permit setoff of claims owed to and by the guarantor and the principal).

### b. The Purported Setoff Does Not Involve Claims Held Or Owed "In The Same Capacities."

49.     Not only does the Purported Setoff fail the "same parties" requirement of mutuality, but also it fails the "same capacities" requirement. That debts must be held in the "same capacity" in relation to each other means that "if the same parties are involved but they stand in *different relationships* in the various transactions, mutuality does not exits and setoff is impermissible." *In re Westchester Structures*, 181 B.R. at 739 (internal citations omitted). In other words, the parties seeking to recover the obligations must own them in their "individual capacities." *In re Drexel Burnham*, 113 B.R. at 848.

50.     Here, even under the theory advanced by CalPERS, LBHI would not be entitled to assert or collect on the LBSF Claim in its "individual capacity," but rather in its capacity *as LBSF's Guarantor* pursuant to the Guarantee. While the effect of a guaranty is to make the guarantor obligated for the principal's debt, "it does not change the fact that the debts are owed

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

between different parties, *in different capacities* and, thus, not subject to offset." *In re Ingersoll*, 90 B.R. 168 at 171 (W.D.N.C. 1987).[18]

> ### c. The Purported Setoff Does Not Involve Claims Held "In The Same Right."

51.     Citing only Colliers for support, CalPERS claims that "same right" requirement is no different from the "same capacity" requirement.  Motion at ¶ 28.  If that is so, then, for the reasons set forth above, the Purported Setoff also fails the "same right" requirement of mutuality. To the extent that the "same right" requirement is *not* synonymous with the "same capacity" requirement, however, courts have held that a subordinated debt and a non-subordinated obligation are *not* held in the "same right" and cannot be set off under section 553(a) of the Bankruptcy Code.  *See, e.g., Northwest Racquet Swim & Health Clubs, Inc. v. Resolution Trust Corp.*  927 F.2d 355, 363 n.22 (8th Cir. 1991).  Here, as noted above, the overwhelming majority of the LBHI Debt consists of *subordinated* alleged debt obligations of LBHI under the Bonds. *See* ¶ 7, *supra*.  The LBSF Claim, on the other hand, is not a subordinated obligation. Accordingly, the LBSF Claim and the LBHI Debt are not held in the "same right" and, for this reason as well as the others previously stated, the Purported Setoff does not involve "mutual debts."

> ### 3.     Equity Favors Rejection, Rather Than Allowance, Of The Purported Setoff.

52.     Citing a case that was reversed by the Second Circuit, CalPERS claims that "federal and New York State courts have held that the mutuality rule is relaxed when necessary to prevent injustice."  Motion at ¶ 33; *citing, e.g., Modern Settings, Inc. v. Prudential-Bache*

---

[18] The "same capacity" requirement is not satisfied merely if neither party holds its claim as a "fiduciary," as CalPERS disingenuously suggests.  Motion at ¶ 27.  A fiduciary capacity is merely one example of a "non-individual" capacity in which a party might hold a claim, in conflict with the "same capacities" requirement.  Holding a claim in one's capacity as surety, or guarantor, is another.

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

*Securities, Inc.*, 109 B.R. 605, 607 (S.D.N.Y. 1989). In fact, however, no court cited by *Modern Settings* or CalPERS disregarded the mutuality required by section 553 of the Bankruptcy Code in the "interests of justice." To the contrary, in each case cited in paragraph 33 of CalPERS' Motion, the rule of mutuality was enforced. *See Gray v. Rollo*, 85 U.S. 629, 634 (1873) (noting that where two parties are each jointly and severally liable "*in solido*" on an obligation, the obligation might be set off against either party's claim, but where a debt is due *to* several joint creditors it cannot be setoff by a debt due *by* one of them); *In the Matter of Sherman Plastering Corp.*, 346 F.2d 492, 493 (2d Cir. 1965) (permitting setoff only after observing that the debts "are owed and owned by the same party acting in the same capacity"); *Beecher v. Peter A. Vogt Mfg. Co.*, 227 N.Y. 468, 474 (1920) (refusing allowance of non-mutual setoff). Moreover, the Second Circuit *reversed* the district court in *Modern Settings,* upon which CalPERS principally relies, and *disallowed* the setoff due to *lack* of mutuality of the claims set off in that case. *Modern Settings,* 936 F.2d at 648. As the Second Circuit's decision and the decisions of numerous other courts make clear, the equities weigh *against* permitting setoffs of non-mutual debts, such as the Purported Setoff. *See, e.g., In re Adelphia Comm'n*, 2006 WL 1559437, *3 (denial of setoff appropriate where mutuality lacking); *In re Drexel Burnham*, 113 B.R. at 852 (same); *In re Public Serv. Co. of New Hampshire)*, 884 F.2d 11, 13 ("setoffs work against both the goal of orderly reorganization and the fairness principle because they. . . disfavor[ ] other equally-deserving creditors and interrupt[ ] the debtor's cash flow").

53.     Furthermore, CalPERS' claim that it would be "unjust" to require CalPERS to make payment on the LBSF Claim merely because CalPERS alleges it is owed "more than twenty-five times that amount by LBHI" and the Purported Setoff "represents only a 3.9% offset of [its] total claim," Motion at ¶ 35, is hardly compelling. For one thing, there exists no

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

exception to the rule of strict mutuality simply because a creditor claims to seek a comparatively "small" setoff (assuming $17 million could be considered a "small" amount). More importantly, however, it would be far more unjust to *permit* the Purported Setoff than to deny it since the Purported Setoff would, in effect, use assets of LBSF's estate to pay alleged obligations of LBHI, to the unfair prejudice of creditors of LBSF's estate. *See In re Drexel Burnham*, 113 B.R. at 852 (recognizing inequity of permitting non-mutual setoffs because "[t]o not enforce the mutuality requirement would . . . enable one set of creditors to dismember the estate by taking property that is owned by a debtor rather than merely offsetting a debt owed to a debtor").[19]

54.     Indeed, as this Court has previously noted, "[f]rom the beginning of LBHI's bankruptcy case, parties in interest have been quite vocal in expressing concern as to the possible impact on recoveries of transfers made from the account of one Lehman-related entity to another." *In re Lehman Bros.*, 404 B.R. at 761. And "creditors have been diligent in their efforts to segregate and account for the assets of each estate for the protection of separate creditor constituencies." *Id.* at 762. "Proper alignment of mutual obligations is [therefore] required" to protect the integrity of the Debtors' respective estates. *Id.* at 761.

55.     In fact, to ignore the corporate form of the affiliated Debtors and allow the Purported Setoff would likely have significant inequitable and prejudicial consequences because LBHI provided guarantees in respect of the overwhelming majority of derivative transactions entered into by its affiliated debtors. If this Court were to permit CalPERS to exercise its non-mutual Purported Setoff, scores of other creditors would no doubt seek the same relief and the

---

[19] *See also Gray*, 85 U.S. at 635 (noting it would be unjust to deprive a creditor of its claim by virtue of an offset designed to benefit another); *In re Adelphia Comm'n*, 2006 WL 1559437, *3 (noting it would be "highly detrimental to unsecured creditors" to allow setoff). *In re Drexel Burnham*, 113 B.R. at 852 ("[F]ailure to enforce the mutuality requirement would adversely affect the general creditors by enabling one set of creditors to receive more than others. . . Only if pre-petition debts and claims are mutual did Congress so provide.").

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

estates of LBSF and its affiliated debtors could unfairly be stripped of expected receivables, while LBHI would be relieved of many of its obligations.  Permitting the Purported Setoff thus has the potential to result in the *de facto* substantive consolidation of the estates of LBHI and its affiliated debtors, and the effective subordination of all claims of LBSF and other affiliated debtors to those of LBHI.  Even if for this reason alone, the Court should exercise its rightful discretion to disallow the setoff.  *See, e.g., In re Bennett Funding*, 212 B.R. at 212 ("[even if] the technical requirements of setoff are satisfied [under section 553], the bankruptcy judge must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives, . . . includ[ing] the equitable treatment of all creditors."); *In re Continental Airlines, Inc.*, 218 B.R. 324, 328 (D. Del. 1997); *In re Bennett Funding,* 146 F.3d at 140.

**B.      CALPERS HAS SHOWN NO BASIS FOR ITS CLAIM FOR ATTORNEYS' FEES.**

56.      CalPERS bases its request for attorneys' fees on section 11 of the Master Agreement.  *See* Motion at ¶¶ 20, 42-43.  Section 11, however, only provides for indemnity in respect of "*reasonable*" out-of-pocket expenses incurred by the other party in connection with the "enforcement and protection of its rights under th[e] [Master] Agreement."  *See* Motion, Exh. B, Master Agreement, § 11.  As demonstrated above, CalPERS has no right to exercise the Purported Setoff, and its withholding of payment in respect of the LBSF Claim has been an unlawful act, in violation of the automatic stay and the terms of the Master Agreement. Accordingly, whatever legal fees or other expenses CalPERS may have incurred in bringing this Motion or otherwise seeking to refuse or avoid payment of the LBSF Claim can hardly be considered "reasonable" or incurred in connection with the "enforcement and protection of [CalPERS'] rights under th[e] [Master] Agreement."  *Id.*  CalPERS has no right to recover any of its expenses, including attorneys' fees.  To the contrary, CalPERS should reimburse the Debtors'

(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)

estates for the expenses and reasonable legal fees, incurred by Debtors in *responding* to CalPERS' baseless Motion and its attempted exercise of the Purported Setoff.

57.    Furthermore, to the extent any of CalPERS' expenses could possibly be deemed "reasonable" or incurred "by reason of the enforcement and protection of [CalPERS'] rights under th[e] [Master] Agreement," section 11 of the Master Agreement, as applied in this case, is an unenforceable *ipso facto* clause.  *See* 11 U.S.C. § 365(e).  Indeed, section 11 purports to impose indemnity obligations only on a "Defaulting Party," and LBSF is alleged to be a "Defaulting Party" under the Master Agreement only by reason of LBSF's and LBHI's Chapter 11 filing.  Motion at ¶ 43.  Accordingly, section 11 of the Master Agreement, to the extent it imposes any indemnity obligations on LBSF, is a provision that penalizes LBSF and modifies its contractual obligations, based upon the commencement of a case under Chapter 11 of the Bankruptcy Code.  As such, it is an unenforceable *ipso facto* clause that does not provide CalPERS with a right of indemnity.  *See* 11 U.S.C. 365(e); Motion at ¶ 43 (noting that "[a] contract allocating attorneys' fees that is enforceable under substantive, non-bankruptcy law is allowable in bankruptcy *except where the Bankruptcy Code provides otherwise*.") (emphasis added).

## IV.    <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court deny CalPERS' request for relief from the automatic stay to effect the non-mutual Purported Setoff, deny its request for attorneys' fees, and grant the Debtors costs and expenses incurred (including attorneys' fees), and such other and further relief as the Court deems just.

Dated:  November 24, 2009              Respectfully submitted,
        New York, New York             WEIL, GOTSHAL & MANGES LLP

**(Tentative) Hearing Date for Oral Argument: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Status Conference Date: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: December 23, 2009 at 5:00 p.m. (Prevailing Eastern Time)**

by:   _/s/ David R. Fertig_
David R. Fertig, Esq. (DF-5068)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Eleanor H. Gilbane, Esq. (EG-0764)
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5047
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession