# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x
In re:                                                          :         Chapter 11
                                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*                         :         Case No. 08-13555 (JMP) (Jointly
                                                                :         Administered)
                                        Debtors.                :
                                                                :
-------------------------------------------------------------- x

-------------------------------------------------------------- x
In re:                                                          :
                                                                :
LEHMAN BROTHERS, INC.                                           :         SIPA Proceeding Case No. 08-01420
                                                                :         (JMP)
                                                                :
                                        Debtor.                 :
                                                                :
-------------------------------------------------------------- x


## LETTER OF REQUEST

Request for International Judicial Assistance
*Pursuant to the Hague Convention of 18 March 1970 on*
*the Taking of Evidence in Civil or Commercial Matters*


By the United States Bankruptcy Court, Southern District of New York

Hon James M. Peck

## DEFINITIONS

"**Asset Purchase Agreement**" means the Asset Purchase Agreement, dated as of September 16, 2008, among LBHI, LBI, LB 745 LLC, and Barclays.

"**Barclays**" means Barclays Capital Inc., all affiliates and subsidiaries thereof, and any agent, servant, employee or representative of any of the foregoing.

"**Barclays 2008 Results Announcement**" means the document entitled "Barclays PLC Results Announcement, Figures 2008" and approved by the Barclays' Board of Directors on February 8, 2009.

"**Clarification Letter**" means the letter, dated as of September 20, 2008, from Barclays to LBHI, LBI, and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

"**Committee**" means the Official Committee of Unsecured Creditors of LBHI and its affiliated Chapter 11 debtors.

"**Court**", unless otherwise stated, means the United States Bankruptcy Court for the Southern District of New York

"**December Settlement**" means the settlement that was the subject of the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

"**First Amendment**" means the First Amendment to Asset Purchase Agreement, dated as of September 19, 2008, among LBHI, LBI, LB 745 LLC, and Barclays.

"**Initial Barclays Purchase Proposal**" means Barclays' proposed purchase of all or any portion of Lehman Brothers as contemplated as of on or about September 14, 2008.

"**LBHI**" means Lehman Brothers Holdings Inc., all affiliates and subsidiaries thereof, and any agent, servant, employee or representative of any of the foregoing.

"**LBI**" means Lehman Brothers Inc., and any agent, servant, employee or representative thereof.

"**Lehman Brothers**" means LBI, LBHI and their affiliates and subsidiaries.

"**Motions**" means the Motions brought on 15 September 2009 by the Committee, LBHI, and the Trustee pursuant to Rule 60(b) of the Federal Rules of Procedure and Rule 9024 of the Federal Rules of Bankruptcy Procedure, seeking from the Court relief from the Sale Order.

"**PwC**" means PricewaterhouseCoopers LLP and, for the avoidance of doubt, refers to the United Kingdom entity of the PricewaterhouseCoopers International Limited, which is a separate and independent legal entity from any United States Pricewaterhouse Coopers entity.

"**Requesting Party**" means the Committee.

"**Sale Hearing**" means the 19 September 2008 hearing on LBHI's Motion to Approve the Sale of Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets.

"**Sale Orders**" means the Court's (i) Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 20, 2008, and (ii) Order Approving, and Incorporating by reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings Inc. Chapter 11 Proceeding.

"**Sale Transaction**" means the sale of assets of LBHI, LBI, and LB 745 LLC to Barclays that was the subject of the Sale Orders, and any proposed sale of assets of LBHI, LBI or LB 745 to Barclays, whether or not consummated, prior to the Sale Hearing.

"**Trustee**" means the SIPA Trustee for Lehman Brothers, Inc

**TO THE HIGH COURT OF ENGLAND AND WALES:**

The United States Bankruptcy Court for the Southern District of New York presents its compliments to the High Court of England and Wales and requests international judicial assistance to obtain the production of documents from the PwC as set forth the Schedule to this Letter .

This request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, as adopted and implemented in the United States of America at 28 U.S.C. § 1781, and in the United Kingdom by the Evidence (Proceedings in Other Jurisdictions) Act 1975, and Part 34 of the Civil Procedure Rules.   This Court, the United States Bankruptcy Court for the Southern District of New York, is a competent court of law and equity which properly has jurisdiction over this proceeding, and has the power to compel the production of documents both within and outside its jurisdiction.   PwC is or is likely to have in its control the particular documents specified in the requests in the Schedule to this Letter.

The production of these documents by PwC is intended for use at trial of certain motions brought by the Plaintiffs, and in the view of this Court will be relevant to the issues raised by those motions.   The documents sought here will be relevant to determining whether a court-approved order under Chapter 11 of the United States Bankruptcy Code, for the sale of certain assets from Lehman

Brothers Inc to Barclays Capital, ought to be modified.   The evidence sought in this Letter of Request goes to the heart of significant issues of fact and law that will influence the final determination of the Motions brought by the Plaintiffs against the Defendant (as they are set out herein) and is needed as evidence to be introduced in further proceedings and hearings on the Motions..

This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if this litigation were conducted in England and Wales.   In the proper exercise of its authority, this Court has determined that the production of the documents described in the Schedule cannot be secured except by the intervention of the High Court of England and Wales.

1.    SENDERS:

      James C. Tecce
      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      51 Madison Avenue, 22nd Floor
      New York, New York 10010
      United States of America
      Telephone:  (212) 849 7000
      Facsimile:  (212) 849 7100

      Robert W. Gaffey/Jayant W. Tambe/William J. Hine
      JONES DAY
      222 East 41st Street
      New York, New York  10017-6702
      U.S.A.
      Telephone:  (212) 326 3939
      Facsimile:  (212) 755 7306

2.    CENTRAL AUTHORITY OF THE REQUESTED STATE:

      Foreign and Commonwealth Office
      Clive House
      Petty France
      London SW1A 2AL
      United Kingdom

3.    PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED:

      Richard East/Marc Becker/James Shaerf
      QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
      16 Old Bailey
      London EC4M 7EG
      United Kingdom
      Telephone:  +44 (0) 20 7653 2000
      Facsimile:  +44 (0) 20 7653 2100

a.    SPECIFICATION OF THE DATE BY WHICH THE REQUESTING
     AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTER
     OF REQUEST:

      As soon as reasonably practicable consistent with the Court's calendar.

4.      IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE
        UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING
        REQUEST:

5.      a.      REQUESTING JUDICIAL AUTHORITY:

                The Honorable James M. Peck
                United States Bankruptcy Court
                Southern District of New York
                One Bowling Green
                New York, NY 10004
                U.S.A.

        b.      TO THE COMPETENT AUTHORITY OF:

                England and Wales, United Kingdom

        c.      NAME OF THE CASE AND IDENTIFYING NUMBER:

                In re:  LEHMAN BROTHERS HOLDINGS INC., et al., Case No. 08-13555
                (JMP), United States Bankruptcy Court for the Southern District of New York

                In re:  LEHMAN BROTHERS INC., Case No. 08-01420 (JPM), United States
                Bankruptcy Court for the Southern District of New York

6.      NAMES AND ADDRESSES OF THE PARTIES AND THEIR REPRESENTATIVES:

        a.      PLAINTIFFS:

                (1)     The Committee.

                        Representatives:        James C. Tecce
                                                QUINN EMANUEL URQUHART OLIVER &
                                                HEDGES, LLP
                                                51 Madison Avenue, 22nd Floor
                                                New York, New York 10010
                                                U.S.A.
                                                Telephone:  (212) 849 7000
                                                Facsimile:  (212) 849 7100

                (2)     LBHI.

                        Representatives:        Robert W. Gaffey/Jayant W.
                                                Tambe/William J. Hine
                                                JONES DAY
                                                222 East 41st Street
                                                New York, New York  10017-6702
                                                U.S.A.

Telephone:  (212) 326 3939
Facsimile:  (212) 755 7306

b.    DEFENDANTS AND THIRD-PARTY PLAINTIFFS:

(1)    Barclays.

Representatives:        Jonathan D. Schiller/Hamish P.M. Hume
BOIES, SCHILLER & FLEXNER, LLP
575 Lexington Avenue
New York, NY 10022
U.S.A.
Telephone:  (212) 446 2300
Facsimile:  (212) 446 2350

c.    THIRD-PARTY DEFENDANTS:

None.

7.    NATURE OF THE PROCEEDINGS (DIVORCE, PATERNITY, BREACH OF
CONTRACT, PRODUCT LIABILITY, ETC.):

a.    The proceeding is a civil motion under the Federal Rules of Civil Procedure
seeking relief from the Sale Orders approved by the Court.

a.    SUMMARY OF COMPLAINT:

During the weekend of 13 September 2008 and 14 September 2008, Barclays
made a bid to purchase Lehman Brothers.  On Sunday 14 September 2008, the
proposed acquisition was submitted to the FSA for its approval.  The FSA did not
approve the acquisition.   On Monday 15 September 2008, LBHI filed for
protection under Chapter 11 of the United States Bankruptcy Code in the United
States Bankruptcy Court for the Southern District of New York.

Shortly after LBHI filed for chapter 11 protection on 15 September 2008,
Barclays, LBHI and LBI announced Barclays would purchase LBI's North
American broker-dealer business. As described in a press release dated September
17, Barclays agreed to "acquir[e] [LBI's] North American investment banking and
capital markets operations and supporting infrastructure." Barclays also publicly
described the deal as "acquir[ing] trading assets with a current estimated value of
£40bn (US$72bn) and trading liabilities with a current estimated value of £38bn
(US$68bn) for a cash consideration of £0.14bn (US$0.25bn). "

The Sale Transaction was effected through three documents: the Asset Purchase
Agreement, the First Amendment, and the Clarification Letter.  There is a
dispute as to when or if the Court in fact approved the Clarification Letter, but it
is common ground that the Clarification Letter was executed after the Court

approved the Sale Transaction. The Sale Transaction was negotiated by very senior LBHI and Barclays personnel.

At the 19 September 2008 Sale Hearing, the Court held a contested hearing to consider approval of the Sale Transaction.

On 20 September 2008, the Sale Transaction was approved pursuant to the Sale Orders entered by the US Bankruptcy Court.

Following the Sale Hearing and entry of the Sale Orders, the parties to the Sale Transaction entered into the Clarification Letter which was dated 20 September 2008 and executed 22 September 2008. The parties' dispute concerns, among other things, the Clarification Letter and, in particular, the extent to which its terms modified the Sale Transaction from what had been disclosed to and approved by the Bankruptcy Court and whether the modifications were beyond the scope of the Sale Order.

Barclays sought regulatory approval from the FSA before entering into the Sale Transaction.

On 15 September 2009, the Committee, the Trustee and LBHI each filed motions under, *inter alia*, Rule 60(b) of the Federal Rules of Civil Procedure and Rule 9024 of the Federal Rules of Bankruptcy Procedure in the United States Bankruptcy Court seeking relief from the Sale Orders. The substance of these Motions is that:

(1)     The Sale Transaction ultimately was consummated differently from the Sale Transaction that was represented to the US Bankruptcy Court (and approved by the US Bankruptcy Court). The Motions argue that in the days after the Sale Transaction was approved by the Court, Barclays sought billions of dollars in additional assets, which transfers where neither disclosed to nor approved by the Court.

(2)     To provide just one example, the Motions argue that, unbeknownst to the Court or the Committee, Barclays was promised a $5 billion discount from the transferred assets' book value.

(3)     The Motions reference , among other things, argue that, while the Sale Transaction as described to the Court contemplated an equivalent exchange of value or a transaction that would produce a net gain for Lehman, Barclays's public financial statements, indicate a gain on the Sale Transaction for Barclays of approximately £2.62 billion (more than $5 billion at the then prevailing exchange rate) arising from what Barclays described as "[t]he excess of fair value of net assets over the consideration paid . . . on acquisition."

The parties prosecuting the Motions and Barclays have agreed to a stipulated protective order governing the production of documents in connection with the

Motions.  Under that agreement, certain documents designated confidential and
highly confidential must be maintained as such absent further order of the US
Bankruptcy Court.  The parties also have entered into a scheduling stipulation that
provides for disclosure to be conducted through March 2010, at which point the
parties will present oral argument to the Court.  Thereafter, if the Court considers
it necessary, the parties will proceed to a trial in April 2010.

b.     SUMMARY OF DEFENSES AND COUNTERCLAIMS:

To date, Barclays has not answered the Motions (and is to do so
in February 2010).  Nonetheless, Barclays has suggested that it will argue the
Court should deny the motions on the grounds of, *inter alia*, waiver and estoppel.
Barclays also maintains it undertook significant risk in connection with the
acquisition, for which it was entitled to additional assets to provide protection
(e.g., against market fluctuations).

c.     OTHER NECESSARY INFORMATION OR DOCUMENTS:

The Court encloses the Motions, the stipulated protective order governing the
production of documents with respect to the Motions, and the scheduling
stipulation and order

8.     a.     EVIDENCE TO BE OBTAINED OR OTHER JUDICIAL ACT TO BE
              PERFORMED:

The obtaining of the production of documents as described in Schedule s A and B
herein, in connection with proceedings described in Paragraph 7.a. and 7.b. above.

b.     PURPOSE OF THE EVIDENCE OR JUDICIAL ACT SOUGHT:

The party from whom disclosure is sought, PwC (the United Kingdom entity), is
in London, and is not located in nor doing business in the United States and thus
cannot be directly compelled by United States Courts to produce the requested
documents.

More particularly, the documents sought from PwC are not located in the State of
New York or the United States and thus PwC cannot be directly compelled by the
United States Courts to produce the requested documents.

The documents produced pursuant to this Letter of Request are admissible
evidence under United States law, i.e. the Federal Rule of Evidence and will be
offered as further evidence in support of, or in opposition to, the Motions and in
the trial if necessary.  This evidence is sought, as described in Paragraph 8.a.
above, to prove specific facts regarding the Sale Transaction, how it differed from
the Sale Orders, and the reasoning behind such differences as the case may be,
and the attached schedules of requested documents was drafted to address these
specific issues.  Information leading to a train of inquiry or other information is
not sought by this Letter of Request.

While the Court expresses no view as to the merits or otherwise of the Motions, it is of the view that the sought evidence will be relevant to and either probative or disprobative of the complaints at the heart of the Motions.

9.    ADDRESS OF PARTIES FROM WHOM DISCLOSURE IS SOUGHT

It has been represented to the Court that PwC currently resides at:

1 Embankment Place
London WC2N 6RH
United Kingdom
Telephone:  +44 (0) 20 7583 5000
Facsimile:  +44 (0) 20 7822 4652

10.    QUESTIONS TO BE PUT TO THE PERSONS TO BE EXAMINED OR STATEMENT OF THE SUBJECT-MATTER ABOUT WHICH THEY ARE TO BE EXAMINED:

None.

11.    DOCUMENTS OR OTHER PROPERTY TO BE INSPECTED:

See the Schedule of Requested Documents from PwC

12.    ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION AND ANY SPECIAL FORM TO BE USED.  (IN THE EVENT THAT THE EVIDENCE CANNOT BE TAKEN IN THE MANNER REQUESTED, SPECIFY WHETHER IT IS TO BE TAKEN IN SUCH MANNER AS PROVIDED BY LOCAL LAW FOR THE FORMAL TAKING OF EVIDENCE):

None.

13.    SPECIAL METHODS OR PROCEDURE TO BE FOLLOWED (E.G., ORAL OR IN WRITING, VERBATIM TRANSCRIPT OR SUMMARY, CROSS-EXAMINATION, ETC.).  IN THE EVENT THAT THE EVIDENCE CANNOT BE TAKEN IN THE MANNER REQUESTED, SPECIFY WHETHER IT IS TO BE TAKEN IN SUCH MANNER AS PROVIDED BY LOCAL LAW:

None.

14.    REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE EXECUTION OF THE REQUEST AND IDENTITY AND ADDRESS OF ANY PERSON TO BE NOTIFIED:

The Court requests that notice be given to the following persons:

Richard East/Marc Becker/James Shaerf
QUINN EMANUEL URQUHART OLIVER & HEDGES LLP

16 Old Bailey
London
EC4M 7EG
United Kingdom
Telephone: +44 (0)20 7653 2000
Facsimile: +44 (0)20 7653 2100

15. REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL
PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF
THE LETTER OF REQUEST:

None.

16. SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE
UNDER THE LAW OF THE STATE OF ORIGIN (ATTACH COPIES OF
RELEVANT LAWS OR REGULATIONS):

None.

17. THE FEES AND COSTS INCURRED WHICH ARE REIMBURSABLE UNDER
THE SECOND PARAGRAPH OF ARTICLE 14 OR UNDER ARTICLE 26 OF THE
CONVENTION WILL BE BORNE BY:

United States Bankruptcy Court for the Southern District of New York

DATE OF REQUEST: 16 December 2009

SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY:

(Affix Seal Here)                    _____

Hon. James M. Peck
United States Bankruptcy Court
    for the Southern District of New York

# **SCHEDULE**

## REQUESTED DOCUMENTS

1.     The audit working papers in PwC's Barclays audit file referring to any gain or loss Barclays had on the Sale Transaction, including the December Settlement.

2.     The audit working papers in PwC's Barclays audit file referring to the identity of the assets Barclays received in the Sale Transaction, including by means of the December Settlement.

3.     The audit working papers in PwC's Barclays audit file supporting or refuting the statement at page 95 of the Barclays 2008 Results Announcement that "[t]he excess of the fair value of net assets acquired over consideration paid resulted in £2,262m of gains on acquisition."

4.     The audit working papers in PwC's Barclays audit file setting out the accounting underpinning (1) the decision to enter the Sale Transaction; and (2) the description of the Sale Transaction in Barclays 2008 Results Announcement.

5.     The audit working papers in PwC's Barclays audit file setting out the accounting underpinning the description of the Sale Transaction in Barclays 2008 Form 20-F filing with the United States Securities & Exchange Commission.

6.     The audit working papers in PwC's Barclays audit file referring to filings Barclays has made with regulatory agencies (particularly the United States Securities and Exchange Commission and the United Kingdom Financial Services Authority) in respect of the Sale Transaction and Barclays' Initial Purchase Proposal

7.     The audit working papers in PwC's Barclays audit file in respect of the following items (in particular (i) calculations for each item of (ii) Barclays' management representations in relation to each item, and (iii) data entered electronically into the PwC audit program for each item):

(a)  the value of £23,837 million for the acquired "Trading Portfolio assets" referred to on page 97, line 2 under "assets" in the Barclays 2008 Results Announcement.

(b)  the value of £1,948 million for the acquired "available-for-sale financial investment assets" referred to on page 97, line 5 under "assets" in the Barclays 2008 Results Announcement

(c)  the value of £599 million for the assumed "derivative financial instruments" referred to page 97, line 3 under "liabilities" in the Barclays 2008 Results Announcement

(d)  the value of £24,409 million for the assumed "liabilities for repurchase agreements and cash collateral on securities lent" referred to on page 97, line 5 under "liabilities" in the Barclays 2008 Results Announcement.

8.    The reconciliation between balances as set out in the PwC audit working papers with respect to Barclays and the following balances in the Barclays 2008 Results Announcement:

(a)  £23,837 million for the acquired "Trading Portfolio assets" referred to on page 97, line 2 under "assets".

(b)  £1,948 million for the acquired "available-for-sale financial investment assets" referred to on page 97, line 5 under "assets".

(c)  £599 million for the assumed "derivative financial instruments" referred to page 97, line 3 under "liabilities".

(d)  £24,409 million for the assumed "liabilities for repurchase agreements and cash collateral on securities lent" referred to on page 97, line 5 under "liabilities".

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

In re:                                                           :           Chapter 11
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*                          :           Case No. 08-13555 (JMP) (Jointly
                                                                 :           Administered)
                                       Debtors.                  :
                                                                 :
-------------------------------------------------------------- x


-------------------------------------------------------------- x

In re:                                                           :
                                                                 :
LEHMAN BROTHERS, INC.                                            :           SIPA Proceeding Case No. 08-01420
                                                                 :           (JMP)
                                       Debtor.                   :
                                                                 :
-------------------------------------------------------------- x


# LETTER OF REQUEST

Request for International Judicial Assistance
*Pursuant to the Hague Convention of 18 March 1970 on*
*the Taking of Evidence in Civil or Commercial Matters*


By the United States Bankruptcy Court, Southern District of New York

Hon James M. Peck

03690.61377/3216550.1
NYI-4230551v1

DEFINITIONS

"**Asset Purchase Agreement**" means the Asset Purchase Agreement, dated as of September 16, 2008, among LBHI, LBI, LB 745 LLC, and Barclays.

"**Barclays**" means Barclays Capital Inc., all affiliates and subsidiaries thereof, and any agent, servant, employee or representative of any of the foregoing.

"**Barclays 2008 Results Announcement**" means the document entitled "Barclays PLC Results Announcement, Figures 2008" and approved by the Barclays' Board of Directors on February 8, 2009.

"**Clarification Letter**" means the letter, dated as of September 20, 2008, from Barclays to LBHI, LBI, and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

"**Committee**" means the Official Committee of Unsecured Creditors of LBHI and its affiliated Chapter 11 debtors.

"**Court**", unless otherwise stated, means the United States Bankruptcy Court for the Southern District of New York

"**December Settlement**" means the settlement that was the subject of the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

"**First Amendment**" means the First Amendment to Asset Purchase Agreement, dated as of September 19, 2008, among LBHI, LBI, LB 745 LLC, and Barclays.

"**FSA**" means the Financial Services Authority.

"**Initial Barclays Purchase Proposal**" means Barclays' proposed purchase of all or any portion of Lehman Brothers as contemplated as of on or about September 14, 2008.

"**LBHI**" means Lehman Brothers Holdings Inc., all affiliates and subsidiaries thereof, and any agent, servant, employee or representative of any of the foregoing.

"**LBI**" means Lehman Brothers Inc., and any agent, servant, employee or representative thereof.

"**Lehman Brothers**" means LBI, LBHI and their affiliates and subsidiaries.

"**Motions**" means the Motions brought on 15 September 2009 by the Committee, LBHI, and the Trustee pursuant to Rule 60(b) of the Federal Rules of Procedure and Rule 9024 of the Federal Rules of Bankruptcy Procedure, seeking from the Court relief from the Sale Order.

"**Requesting Party**" means the Committee.

"**Sale Hearing**" means the 19 September 2008 hearing on LBHI's Motion to Approve the Sale of Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets.

"**Sale Orders**" means the Court's (i) Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 20, 2008, and (ii) Order Approving, and Incorporating by reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings Inc. Chapter 11 Proceeding.

"**Sale Transaction**" means the sale of assets of LBHI, LBI, and LB 745 LLC to Barclays that was the subject of the Sale Orders, and any proposed sale of assets of LBHI, LBI or LB 745 to Barclays, whether or not consummated, prior to the Sale Hearing.

"**Trustee**" means the SIPA Trustee for Lehman Brothers, Inc

**TO THE HIGH COURT OF ENGLAND AND WALES:**

The United States Bankruptcy Court for the Southern District of New York presents its compliments to the High Court of England and Wales and requests international judicial assistance to obtain the production of documents from the FSA as set forth in the Schedule to this Letter.

This request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, as adopted and implemented in the United States of America at 28 U.S.C. § 1781, and in the United Kingdom by the Evidence (Proceedings in Other Jurisdictions) Act 1975, and Part 34 of the Civil Procedure Rules. This Court, the United States Bankruptcy Court for the Southern District of New York, is a competent court of law and equity which properly has jurisdiction over this proceeding, and has the power to compel the production of documents both within and outside its jurisdiction. The FSA is or is likely to have in its control the particular documents specified in the requests in the Schedule to this letter.

The production of these documents by the FSA is intended for use at trial of certain motions brought by the Plaintiffs, and in the view of this Court will be relevant to the issues raised by those motions. The documents sought here will be relevant to determining whether a court-approved order under Chapter 11 of the United States Bankruptcy Code, for the sale of certain assets from Lehman

Brothers Inc to Barclays Capital, ought to be modified.   The evidence sought in this Letter of Request goes to the heart of significant issues of fact and law that will influence the final determination of the Motions brought by the Plaintiffs against the Defendant (as they are set out herein) and is needed as evidence to be introduced in further proceedings and hearings on the Motions..

This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if this litigation were conducted in England and Wales.   In the proper exercise of its authority, this Court has determined that the production of the documents described in Schedules A and B cannot be secured except by the intervention of the High Court of England and Wales.

1.    SENDERS:

       James C. Tecce
       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       51 Madison Avenue, 22nd Floor
       New York, New York 10010
       United States of America
       Telephone:  (212) 849 7000
       Facsimile:  (212) 849 7100

       Robert W. Gaffey/Jayant W. Tambe/William J. Hine
       JONES DAY
       222 East 41st Street
       New York, New York  10017-6702
       U.S.A.
       Telephone:  (212) 326 3939
       Facsimile:  (212) 755 7306

       William R. Maguire/Neil J. Oxford
       HUGHES HUBBARD & REED, LLP
       One Battery Park Plaza
       New York, NY 10004
       U.S.A.
       Telephone:  (212) 837 6000
       Facsimile:  (212) 422 4726

2.    CENTRAL AUTHORITY OF THE REQUESTED STATE:

       Foreign and Commonwealth Office
       Clive House
       Petty France
       London SW1A 2AL
       United Kingdom

3.    PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED:

       Richard East/Marc Becker/James Shaerf
       QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
       16 Old Bailey
       London EC4M 7EG
       United Kingdom
       Telephone:  +44 (0) 20 7653 2000
       Facsimile:  +44 (0) 20 7653 2100

a.    SPECIFICATION OF THE DATE BY WHICH THE REQUESTING
AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTER
OF REQUEST:

As soon as reasonably practicable consistent with the Court's calendar.

4.    IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE
UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING
REQUEST:

5.    a.    REQUESTING JUDICIAL AUTHORITY:

The Honorable James M. Peck
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004
U.S.A.

b.    TO THE COMPETENT AUTHORITY OF:

England and Wales, United Kingdom

c.    NAME OF THE CASE AND IDENTIFYING NUMBER:

In re:  LEHMAN BROTHERS HOLDINGS INC., et al., Case No. 08-13555
(JMP), United States Bankruptcy Court for the Southern District of New York

In re:  LEHMAN BROTHERS INC., Case No. 08-01420 (JPM), United States
Bankruptcy Court for the Southern District of New York

6.    NAMES AND ADDRESSES OF THE PARTIES AND THEIR REPRESENTATIVES:

a.    PLAINTIFFS:

(1)    The Committee.

Representatives:              James C. Tecce
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
U.S.A.
Telephone:  (212) 849 7000
Facsimile:  (212) 849 7100

(2)    LBHI.

    Representatives:             Robert W. Gaffey/Jayant W. Tambe/William J. Hine
                                                  JONES DAY
                                                  222 East 41st Street
                                                  New York, New York  10017-6702
                                                  U.S.A.
                                                  Telephone:  (212) 326 3939
                                                  Facsimile:  (212) 755 7306

(3)    The Trustee.

    Representatives:             William R. Maguire/Neil J. Oxford
                                                  HUGHES HUBBARD & REED, LLP
                                                  One Battery Park Plaza
                                                  New York, NY 10004
                                                  U.S.A.
                                                  Telephone:  (212) 837 6000
                                                  Facsimile:  (212) 422 4726

b.    **DEFENDANTS AND THIRD-PARTY PLAINTIFFS:**

(1)    Barclays.

    Representatives:             Jonathan D. Schiller/Hamish P.M. Hume
                                                  BOIES, SCHILLER & FLEXNER, LLP
                                                  575 Lexington Avenue
                                                  New York, NY 10022
                                                  U.S.A.
                                                  Telephone:  (212) 446 2300
                                                  Facsimile:  (212) 446 2350

c.    **THIRD-PARTY DEFENDANTS:**

None.

7.    **NATURE OF THE PROCEEDINGS (DIVORCE, PATERNITY, BREACH OF CONTRACT, PRODUCT LIABILITY, ETC.):**

a.    The proceeding is a civil motion under the Federal Rules of Civil Procedure seeking relief from the Sale Orders approved by the Court.

a.    **SUMMARY OF COMPLAINT:**

During the weekend of 13 September 2008 and 14 September 2008, Barclays made a bid to purchase Lehman Brothers.  On Sunday 14 September 2008, the proposed acquisition was submitted to the FSA for its approval.  The FSA did not

approve the acquisition.   On Monday 15 September 2008, LBHI filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

Shortly after LBHI filed for chapter 11 protection on 15 September 2008, Barclays, LBHI and LBI announced Barclays would purchase LBI's North American broker-dealer business. As described in a press release dated September 17, Barclays agreed to "acquire [LBI's] North American investment banking and capital markets operations and supporting infrastructure." Barclays also publicly described the deal as "acquir[ing] trading assets with a current estimated value of £40bn (US$72bn) and trading liabilities with a current estimated value of £38bn (US$68bn) for a cash consideration of £0.14bn (US$0.25bn). "

The Sale Transaction was effected through three documents: the Asset Purchase Agreement, the First Amendment, and the Clarification Letter.  There is a dispute as to when or if the Court in fact approved the Clarification Letter, but it is common ground that the Clarification Letter was executed after the Court approved the Sale Transaction.  The Sale Transaction was negotiated by very senior LBHI and Barclays personnel.

At the 19 September 2008 Sale Hearing, the Court held a contested hearing to consider approval of the Sale Transaction.

On 20 September 2008, the Sale Transaction was approved pursuant to the Sale Orders entered by the US Bankruptcy Court.

Following the Sale Hearing and entry of the Sale Orders, the parties to the Sale Transaction entered into the Clarification Letter which was dated 20 September 2008 and executed 22 September 2008.  The parties' dispute concerns, among other things, the Clarification Letter, and, in particular, the extent to which its terms modified the Sale Transaction from what had been disclosed to and approved by the Bankruptcy Court and whether the modifications were beyond the scope of the Sale Order.

Barclays sought regulatory approval from the FSA before entering into the Sale Transaction.

On 15 September 2009, the Committee, the Trustee and LBHI each filed motions under, *inter alia*, Rule 60(b) of the Federal Rules of Civil Procedure and Rule 9024 of the Federal Rules of Bankruptcy Procedure in the United States Bankruptcy Court seeking relief from the Sale Orders.  The substance of these Motions is that:

(1)    The Sale Transaction ultimately was consummated differently from the Sale Transaction that was represented to the US Bankruptcy Court (and approved by the US Bankruptcy Court).  The Motions argue that in the days after the Sale Transaction was approved by the Court, Barclays

sought billions of dollars in additional assets, which transfers where neither disclosed to nor approved by the Court.

(2)     To provide just one example, the Motions argue that, unbeknownst to the Court or the Committee, Barclays was promised a $5 billion discount from the transferred assets' book value.

(3)     The Motions reference , among other things, argue that, while the Sale Transaction as described to the Court contemplated an equivalent exchange of value or a transaction that would produce a net gain for Lehman, Barclays's public financial statements, indicate a gain on the Sale Transaction for Barclays of approximately £2.62 billion (more than $5 billion at the then prevailing exchange rate) arising from what Barclays described as "[t]he excess of fair value of net assets over the consideration paid . . . on acquisition."

The parties prosecuting the Motions and Barclays have agreed to a stipulated protective order governing the production of documents in connection with the Motions.   Under that agreement, certain documents designated confidential and highly confidential must be maintained as such absent further order of the US Bankruptcy Court.   The parties also have entered into a scheduling stipulation that provides for disclosure to be conducted through March 2010, at which point the parties will present oral argument to the Court.   Thereafter, if the Court considers it necessary, the parties will proceed to a trial in April 2010.

b.     SUMMARY OF DEFENSES AND COUNTERCLAIMS:

To date, Barclays has not answered the Motions (and is to do so in February 2010).   Nonetheless, Barclays has suggested that it will argue the Court should deny the motions on the grounds of, *inter alia*, waiver and estoppel. Barclays also maintains it undertook significant risk in connection with the acquisition, for which it was entitled to additional assets to provide protection (e.g., against market fluctuations).

c.     OTHER NECESSARY INFORMATION OR DOCUMENTS:

The Court encloses the Motions, the stipulated protective order governing the production of documents with respect to the Motions, and the scheduling stipulation and order

8.    a.     EVIDENCE TO BE OBTAINED OR OTHER JUDICIAL ACT TO BE PERFORMED:

The obtaining of the production of documents as described in Schedule s A and B herein, in connection with proceedings described in Paragraph 7.a. and 7.b. above.

b.     PURPOSE OF THE EVIDENCE OR JUDICIAL ACT SOUGHT:

The party from whom disclosure is sought, the FSA, is in London, and is not located in nor doing business in the United States and thus cannot be directly compelled by United States Courts to produce the requested documents.

More particularly, the documents sought from the FSA are not located in the State of New York or the United States and thus the FSA cannot be directly compelled by the United States Courts to produce the requested documents.

The documents produced pursuant to this Letter of Request are admissible evidence under United States law, i.e. the Federal Rule of Evidence and will be offered as further evidence in support of, or in opposition to, the Motions and in the trial if necessary. This evidence is sought, as described in Paragraph 8.a. above, to prove specific facts regarding the Sale Transaction, how it differed from the Sale Orders, and the reasoning behind such differences as the case may be, and the attached schedules of requested documents was drafted to address these specific issues. Information leading to a train of inquiry or other information is not sought by this Letter of Request.

While the Court expresses no view as to the merits or otherwise of the Motions, it is of the view that the sought evidence will be relevant to and either probative or disprobative of the complaints at the heart of the Motions.

9.    ADDRESS OF PARTIES FROM WHOM DISCLOSURE IS SOUGHT:

It has been represented to the Court that the FSA currently resides at:

25 The North Colonnade
Canary Wharf
London E14 5HS
United Kingdom
Telephone: 44 (0) 20 7066 1000
Facsimile: +44 (0) 20 7066 1099

10.    QUESTIONS TO BE PUT TO THE PERSONS TO BE EXAMINED OR STATEMENT OF THE SUBJECT-MATTER ABOUT WHICH THEY ARE TO BE EXAMINED:

None.

11.    DOCUMENTS OR OTHER PROPERTY TO BE INSPECTED:

See Schedule of Requested Documents from the FSA

12.   ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR
      AFFIRMATION AND ANY SPECIAL FORM TO BE USED.  (IN THE EVENT
      THAT THE EVIDENCE CANNOT BE TAKEN IN THE MANNER REQUESTED,
      SPECIFY WHETHER IT IS TO BE TAKEN IN SUCH MANNER AS PROVIDED
      BY LOCAL LAW FOR THE FORMAL TAKING OF EVIDENCE):

          None.

13.   SPECIAL METHODS OR PROCEDURE TO BE FOLLOWED (E.G., ORAL OR IN
      WRITING, VERBATIM TRANSCRIPT OR SUMMARY, CROSS-EXAMINATION,
      ETC.).  IN THE EVENT THAT THE EVIDENCE CANNOT BE TAKEN IN THE
      MANNER REQUESTED, SPECIFY WHETHER IT IS TO BE TAKEN IN SUCH
      MANNER AS PROVIDED BY LOCAL LAW:

          None.

14.   REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE
      EXECUTION OF THE REQUEST AND IDENTITY AND ADDRESS OF ANY
      PERSON TO BE NOTIFIED:

          The Court requests that notice be given to the following persons:

          Richard East/Marc Becker/James Shaerf
          QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
          16 Old Bailey
          London
          EC4M 7EG
          United Kingdom
          Telephone:  +44 (0)20 7653 2000
          Facsimile:  +44 (0)20 7653 2100

15.   REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL
      PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF
      THE LETTER OF REQUEST:

          None.

16.   SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE
      UNDER THE LAW OF THE STATE OF ORIGIN (ATTACH COPIES OF
      RELEVANT LAWS OR REGULATIONS):

          There is a live issue as to whether documents held by the FSA are caught by the
          confidentiality provisions in section 348 of the Financial Markets and Services
          Act 2000 (UK).  The Requesting Party will notify the FSA of its intention to
          request documents with a view to ventilating the issue of section 348's
          applicability before the English court requested.

17.    THE FEES AND COSTS INCURRED WHICH ARE REIMBURSABLE UNDER THE SECOND PARAGRAPH OF ARTICLE 14 OR UNDER ARTICLE 26 OF THE CONVENTION WILL BE BORNE BY:

United States Bankruptcy Court for the Southern District of New York

DATE OF REQUEST:  16 December 2009

SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY:

(Affix Seal Here)

_____
Hon. James M. Peck
United States Bankruptcy Court
        for the Southern District of New York

## SCHEDULE

## REQUESTED DOCUMENTS

1.    Barclays' application for regulatory approval of the Initial Barclays' Purchase Proposal.

2.    The FSA analysis of Barclays' application for regulatory approval of the Initial Barclays' Purchase Proposal.

3.    The FSA response to Barclays' application for regulatory approval of the Initial Barclays' Purchase Proposal.

4.    The FSA's final evaluation of the Initial Barclays' Purchase Proposal.

5.    The FSA internal notes of the meeting between Barclays and the FSA on 22 September 2008 regarding the Sale Transaction, and copies of all documents referred to therein.

6.    The response received by the FSA from Barclays to the letter sent by Mark Wharton (Manager, FSA) to Barclays dated 23 September 2008, and the ensuing correspondence between Barclays and the FSA.

7.    The correspondence between from Barclays and the FSA setting out the impact of (i) the Sale Transaction; or (ii) the December Settlement on Barclays' compliance with the Capital Adequacy Directive (2006/49/EC).

8.    The correspondence between Barclays and the FSA referring to the expected profit/loss margin on the Sale Transaction in the dates from 16 September 2008 until the FSA approval of the Sale Transaction.

9.    The FSA evaluation of the results reported in the Barclays 2008 Results Announcement.

10.    The FSA final evaluation of the Sale Transaction and the FSA's analysis of the Sale Transaction.