Hearing Date and Time: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  December 11, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
**In re**                                                        :    **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                     :    **08-13555 (JMP)**
                                                                 :
                       Debtors.                                  :    **(Jointly Administered)**
                                                                 :
-----------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS
SPECIAL FINANCING INC. PURSUANT TO SECTIONS
105(a) AND 363 OF THE BANKRUPTCY CODE AND FEDERAL
RULE OF BANKRUPTCY PROCEDURE 9019 FOR APPROVAL OF
WAIVER OF CERTAIN INTEREST PAYMENTS FROM ITS SUBSIDIARY
LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Special Financing Inc. ("LBSF" and together with its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors"),

pursuant to Sections 105(a) and 363 of chapter 11 of the United States Code and Rule 9019 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to waive

certain interest payments from, and amend certain terms of a note issued by, its subsidiary Libro

Companhia Securitizadora de Créditos Financeiros, as more fully described in the Motion, will

be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling

Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received by no later than **December 11, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 25, 2009
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                  :
In re                                             :   Chapter 11 Case No.
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :   08-13555 (JMP)
                                                  :
                        Debtors.                  :   (Jointly Administered)
                                                  :
------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS**
**SPECIAL FINANCING INC. PURSUANT TO SECTIONS**
**105(a) AND 363 OF THE BANKRUPTCY CODE AND FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 9019 FOR APPROVAL OF**
**WAIVER OF CERTAIN INTEREST PAYMENTS FROM ITS SUBSIDIARY**
**LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Special Financing Inc. ("LBSF," together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession, the "Debtors," and collectively with their non-debtor affiliates, "Lehman"), files this motion (the "Motion") and respectfully represents:

**Preliminary Statement**

    1.  Libro Companhia Securitizadora de Créditos Financeiros ("Libro") is a Brazilian affiliate of the Debtors that owns and manages portfolios of distressed assets. Substantially all of the equity of Libro is owned by Lehman Brothers Special Financing Inc.

("LBSF"). LBSF and LB I Group Inc. ("LB I Group"), a non-debtor affiliate of LBSF, purchased promissory notes issued by Libro in the respective amounts of 301 million Brazilian reais ("BRL") ($173.5 million[1]) and BRL156 million ($89.9 million) (collectively, the "Notes"), which funds were used by Libro to purchase various of its assets. Until September, 2009, Libro was current with respect to principal payments under the Notes.

2. Under Brazilian law, interest payments to non-Brazilian residents, such as LBSF and LB I Group, are subject to withholding income tax at a rate of 15% payable at the time of remittance. Libro has not remitted interest payments to LBSF since September 30, 2008 and has never made interest payments to LB I Group. As a result, Libro has accrued a payable to the Brazilian taxing authority (the "Taxing Authority") that would become due and payable upon the remittance of such interest payments to LBSF and LB I Group (the "Taxes"). The aggregate amount of the unpaid interest, including the amounts that Libro would be contractually required to gross-up to offset the effect of the Taxes, is approximately BRL97.1 million ($56 million). Of that amount, BRL82.6 million ($47.6 million) represents the accrued interest (the "Accrued Interest") on the Notes and approximately BRL14.5 million ($8.4 million) represents the Taxes that would have to be paid if the Accrued Interest were paid in full.

3. LBSF and LB I Group have determined that they can best maximize the realization on the Notes and LBSF's equity interest in Libro through a sale process (the "Libro Sale").[2] In connection with their formulation of that process, both LBSF and LB I Group have determined that, as a consequence of the Taxes, any prospective purchaser in the forthcoming

---

[1] All amounts are for October 31, 2009 unless otherwise indicated and were converted from BRL into U.S. dollars ($) using the exchange rate published by the Central Rate of Brazil on November 20, 2009 (U.S.$ 1 = R$1.7348).

[2] LBSF will file a separate motion for approval of the sale once the sale process, including the role, if any, of a stalking horse bidder, has been clarified. LBSF anticipates that the Libro Sale will occur in early 2010.

2

Libro Sale will require either payment, or a reserve for payment from the sale proceeds, of the Taxes, thereby reducing whatever remuneration LBSF and LB I Group might otherwise realize on the Notes.

4. Accordingly, in order to maximize proceeds from the Libro Sale, LBSF and LB I Group intend to waive and forgive a portion of the Accrued Interest equal to BRL56.7 million ($32.7 million). Of that total, LBSF will waive and forgive interest in the amount of BRL13.5 million ($7.8 million), and LB I Group will waive and forgive interest in the amount of BRL43.2 million ($24.9 million). LBSF will agree to compensate LB I Group for its waiver and forgiveness from a portion of the amounts, if any, that LBSF receives pursuant to the Libro Sale that are attributable to its equity interest.

5. By this motion, LBSF seeks approval of (i) such waiver and forgiveness, (ii) certain amendments to the Notes as described below, and (iii) the payment from LBSF's realization, if any, on the Libro equity of certain compensation to LB I Group for its waiver and forgiveness, all as described below.

**Background**

6. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and the other Debtors commenced with this Court voluntary cases under chapter 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3

7. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Jurisdiction

8. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

9. LBSF requests authorization, pursuant to section 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, to waive and forgive a portion of the Accrued Interest owed to it by Libro, to amend the LBSF Note and to compensate LB I Group for its waiver and forgiveness of a part of the Accrued Interest that is attributable to LB I Group, and to take all corporate actions related thereto, including but not limited to executing and delivering documents memorializing the foregoing.

## Libro

10. Libro is a Brazilian entity with its principal place of business in Sao Paulo, Brazil. LBSF owns 99.9% of Libro's equity (the "Equity") with the other .01% owned by Libro Holdings I Inc., a non-debtor Lehman affiliate. Libro is a securitization company that is primarily engaged in the management of three groups of assets. These asset groups consist of a corporate non-performing loan portfolio with an outstanding principal balance of BRL759.3 million ($437.7 million) (the "NPL Portfolio"), a performing loan portfolio with an outstanding principal balance of BRL46.5 million ($26.8 million), (the "BMG Portfolio"), and a distressed asset portfolio with a face value of approximately BRL 78.8 million ($45.4 million) (the

4

"Distressed Asset Portfolio" and together with the NPL Portfolio and the BMG Portfolio the "Portfolios").

11.     On November 10, 2006, LB I Group entered into a note purchase agreement pursuant to which it purchased a promissory note issued by Libro in the original principal amount of BRL156 million ($89.9 million) to Libro (the "LB I Note," with said note and the LBSF Note constituting the Notes). Libro used the proceeds of the LB I Note to purchase the NPL Portfolio and the Distressed Asset Portfolio.

12.     LBSF entered into a similar note purchase agreement with Libro pursuant to which LBSF purchased a promissory note issued by Libro in the original principal amount of approximately BRL301 million ($173.5 million) (the "LBSF Note"). Libro used the proceeds of the LBSF Note to purchase the BMG Portfolio. According to the terms of the note purchase agreement and the LBSF Note, payments on the LBSF Note are conditional upon the sufficiency of the cash flows from, and LBSF's recourse is limited to, the BMG Portfolio.

13.     As of October 31, 2009, approximately BRL47 million ($27.1 million) in principal and BRL19.7 million ($11.4 million) in interest remained due under the LBSF Note and approximately BRL145 million ($83.6 million) in principal and BRL62.8 million ($36.2 million) in interest remained due under the LB I Note.[3]

**Waiver of the Interest Due LBSF and LBI Group Under The Notes**

14.     Interest payments to non-Brazilian residents are subject to withholding income tax at a rate of 15% payable at the time of remittance, with payment being grossed up, pursuant to the terms of the Notes, so that the non-resident creditor receives interest in full and

---

[3] These amounts are exclusive of the gross-ups of Taxes due should such interest payments be made in full of BRL23.2 million ($13.4 million) in respect of the LBSF Note and BRL73.9 million ($42.6 million) in respect of the LB I Note.

5

the Brazilian payor is charged with the full liability for such taxes. Accordingly, in order for Libro to pay the full amount of the Accrued Interest it would have to have sufficient cash to pay BRL97.1 million ($56 million), representing the BRL82.6 million ($47.6 million) of Accrued Interest plus the BRL14.5 million ($8.4 million) representing the Taxes.

15. LBSF also understands that there have been instances where the Tax Authority has taken the position that these taxes become due not when they are remitted, but when the interest becomes due and payable (i.e., on the date they should have been paid) and fined borrowers accordingly. While LBSF further understands that this is not common, and is not the correct interpretation of Brazilian tax law, it is nonetheless a risk to Libro (and derivatively to LBSF and LB I Group) so long as the Accrued Interest remains reserved for on Libro's books and records.

16. In order to reduce liability for the Taxes, and thereby conserve Libro's assets in advance of the Libro Sale, LBSF and LB I Group have agreed to waive and forgive a portion of the Accrued Interest in the amount of BRL56.7 million ($32.7 million), with LBSF waiving and forgiving interest in the amount of BRL13.5 million ($7.8 million), and LB I Group waiving and forgiving interest in the amount of BRL43.2 million ($24.9 million).

17. As a result of the waiver of a portion of the Accrued Interest, Libro's book value will increase by approximately BRL21.9 million ($12.6 million), which includes adjustments for both the Accrued Interest that would otherwise have been due under the Notes (including the Taxes that would otherwise have been paid to the Brazilian Taxing Authority) and a deductible bad debts provision that Libro will take on the NPL Portfolio[4].

---

[4] Libro will simultaneously take a deductible provision for bad debts in the NPL Portfolio in an amount of BRL 44.8 million ($25.8 million), to offset the Brazilian corporate income tax effects of the waiver of the Accrued Interest.

6

18. If the proceeds from the Libro Sale exceed the balance of the principal that remains outstanding under the Notes, the purchaser in the Libro Sale will be required to allocate the remaining proceeds to the Equity. Otherwise, amounts attributable to the Equity are expected to be nominal, leaving the majority of the sale proceeds to be divided among the Portfolios. Once that allocation has occurred, sale proceeds attributable to the BMG Portfolio will be payable to LBSF and sales proceeds attributable to the NPL Portfolio and to the Distressed Assets Portfolio will be payable to LB I Group.

**Compensation for LB I Group's Participation in the Proposed Transaction**

19. LB I Group will benefit from the waiver of the Accrued Interest pro-rata if the proceeds from the sale of Libro attributable to the LB I Note do not exceed the principal balance of the LB I Note, or if Libro is liquidated without enough assets to repay the principal balance of the LB I Note. This is because the value of the LB I Note is tied to the value of the NPL Portfolio and the Distressed Assets Portfolio, less any taxes attributable to payments made with respect to the LB I Note. Accordingly, if there are no taxes to be paid, the value of the LB I Note will be increased.

20. However, because LB I Group does not hold equity in Libro, it will not benefit from any equity returns that may be realized as a result of the waiver of a portion of the Accrued Interest. Accordingly, in order to compensate LB I Group for its contribution towards any equity return that LBSF may receive, LBSF will pay to LB I Group 76.1% from any such equity returns based on that portion of the total Accrued Interest attributable to LBI Group's forgiveness (the "Compensation Payments").

**Amendments to the Notes**

21.     LBSF and LB I Group will also amend certain terms of the Notes so as to reduce and defer the interest payable by Libro.  The material terms of such amendment will include the following:

a. Remove late payment fees and default interest provisions;

b. Reduce interest rates to Overnight LIBOR + 3% per annum (consistent with Brazilian transfer pricing rules);

c. Exclude Libro's obligation to gross up interest payments to offset the Taxes; and

d. Reschedule interest payments to the final maturity of the Notes.

**Waiver of the Interest Due Under the LBSF Note Fits the Legal Standard
Established Under Rule 9019 and is in the Bests Interests of LBSF's Estate**

22.     LBSF's waiver of the a portion of the interest due under the LBSF Note is in LBSF's best interests and should be approved under Bankruptcy Rule 9019.  Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

23.     The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness."  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d

8

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

24. While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

25. The Court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

26. In the absence the waiver of a portion of the Accrued Interest, potential purchasers would be expected to reserve from the purchase price or otherwise discount their bids in the Libro Sale by the amount of the Taxes. Such a reserve or discount is likely, not only with respect to any amounts paid in excess of the outstanding principal balances of the Notes, but also to address the risk, discussed above, that the Taxing Authority might take the position, as it has

9

in the past, that the mere accrual of interest, not just the payment, gives rise to a tax liability. This reserve or discount could be as much as BRL14.5 million ($8.4 million).

27. While the increase in the proceeds from the Libro Sale are not expected to correspond precisely to the value of the Taxes because of the other tax implications of the waiver of a portion of the Accrued Interest, LBSF nonetheless believes that the waiver of a portion of the Accrued Interest will result in a significant increase in the value of any bids made as a part of the Libro Sale. Additionally, assuming that such bids exceed the remaining principal balances of the Notes, the surplus would increase the return to LBSF on its equity interest in Libro and also benefit LB I Group through the payment of a portion of such surplus from LBSF to LB I Group. Consequently, the waiver of a portion of the Accrued Interest, and the corresponding amendments to the LBSF Note, are fair and equitable, and in the best interests of LBSF's estate and creditors.

### The Court Should Approve The Use Of Estate Funds to Compensate LB I Group for its Waiver and Forgiveness of a Portion of the Accrued Interest that is Attributable to the LB I Note

28. LBSF also seeks authority to make the Compensation Payments pursuant to sections 105(a) and 363 of the Bankruptcy Code. As discussed above, the Compensation Payments will be based on that portion of the proceeds from the Libro Sale, if any, received by LBSF that are attributable to the Equity.

29. Section 105(a) of the Bankruptcy Code provides, in relevant part, that the court may issue any order that is "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *Id.* § 363(b)(1).

30. Courts in the Second Circuit, and others, require such transactions outside the ordinary course of business be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

31. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

32. Absent the Compensation Payments, a disproportionate share of the benefits of the waiver of a portion of the Accrued Interest would accrue to LBSF since LB I Group does not hold any equity in Libro and thus would not benefit if the proceeds from the Libro Sale exceed the outstanding principal balance of the Notes. By waiving and forgiving a portion of the Accrued Interest, however, LBSF and LB I Group are eliminating liability for the Taxes and thereby preserving value for Libro. Some portion of this value is expected to be

11

reflected in an increase in the proceeds from the Libro Sale over what could be expected absent the waiver of a portion of the Accrued Interest.  Since both LBSF and LB I Group are waving amounts due to them under the Notes, both entities should share in the upside of the Libro Sale.  This will happen automatically if the proceeds of the sale are less than the principal outstanding balance of the Notes, but not if the proceeds of the sale exceed the principal outstanding balance of the Notes.  Accordingly, the Compensation Payments will allow LBSF and LB I Group to benefit from the waiver and forgiveness of a portion of the Accrued Interest pro rata.  The Compensation payments, therefore, represent an exercise of reasonable business judgment and, as such, should be approved.

## Request for Bankruptcy Rule 6004 Waiver

1.    LBSF requests a waiver of any stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 6004(h).  Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of ten (10) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth above, the waiver and forgiveness of the Accrued Interest is expected to increase the proceeds ultimately payable to LBSF and LB I Group pursuant to the Libro Sale.  However, in order for the waiver and forgiveness of the Accrued Interest to be effective, the transactions described herein must be consummated prior to December 31, 2009.[5]  This Motion is not scheduled for hearing until December 16, 2009.  If the Court grants the relief requested herein, there will be very little time for LBSF to complete such transactions absent a waiver of the 10 day stay.  Accordingly, the Debtors submit that ample

---

[5] Libro's current operating losses will become accumulated operating losses after December 31, 2009.  Libro has been advised by Brazilian counsel that Brazilian tax laws limit the deductibility of accumulated operating losses.

12

cause exists to justify the waiver of the ten (10) day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

### Notice

33. No trustee has been appointed in these chapter 11 cases. LBSF has served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. LBSF submits that no other or further notice need be provided.

34. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE LBSF respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated: November 25, 2009
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
:
In re                                                                  :   Chapter 11 Case No.
                                                                       :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :   08-13555 (JMP)
                                                                       :
                          Debtors.                          :   (Jointly Administered)
                                                                       :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a) 363 OF THE
BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 APPROVING WAIVER BY LEHMAN BROTHERS
SPECIAL FINANCING INC. OF CERTAIN INTEREST PAYMENTS FROM
ITS SUBSIDIARY LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS**

Upon the motion (the "Motion"), of Lehman Brothers Special Financing Inc. ("LBSF" and together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authority to (i) waive and forgive a portion of the Accrued Interest[1] that is attributable to the LBSF Note and due from its subsidiary Libro, (ii) amend certain terms of the LBSF Note, and (iii) make the Compensation Payments to its affiliate LB I Group, all as more particularly described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBSF, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, LBSF is authorized, but not directed, to (i) waive and forgive a portion of the Accrued Interest otherwise payable to it, (ii) amend the terms of the LBSF Note, (iii) make the Compensation Payments to LB I Group Inc., and (iv) take any corporate actions related thereto, including but not limited to, executing and delivering documents memorializing such waiver, forgiveness, amendment and payment; and it is further

ORDERED that the relief set forth in this order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and any stay imposed by Bankruptcy Rule 6004(g) are hereby waived.; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: December __, 2009
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE