WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :   08-13555 (JMP)
                                        :
                    Debtors.            :   (Jointly Administered)
                                        :
                                        :
--------------------------------------------------------------x
```

### NOTICE OF DEBTORS'
### MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT AGREEMENT AMONG LEHMAN BROTHERS SPECIAL FINANCING INC., AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, AND OTHERS, RELATING TO CERTAIN SWAP TRANSACTIONS WITH BERYL FINANCE LIMITED

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, including Lehman Brothers Special Financing Inc. ("LBSF") (collectively, the "Debtors")

pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

for authorization of a settlement agreement among LBSF, LBHI, American Family Life

Assurance Company of Columbus ("Aflac"), and others, relating to certain swap transactions

with Beryl Finance Limited, all as more fully described in the Motion, will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Ralph I. Miller, Esq., Peter Gruenberger, Esq., and Maurice Horwitz, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) Skadden Arps Slate Meagher & Flom LLP, One Rodney Square, Wilmington, Delaware 19801, Attn: Anthony W. Clark, Esq., and Skadden Arps Slate

Meagher & Flom LLP, 4 Times Square, New York, New York 10036, Attn: Sally McDonald Henry, Esq., attorneys for Aflac; and (vi) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **December 11, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 25, 2009
     New York, New York

/s/ Peter Gruenberger
Ralph I. Miller
Peter Gruenberger

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                     Debtors.             :      (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------------x
```

**DEBTORS' MOTION**
**PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE FOR APPROVAL OF A SETTLEMENT AGREEMENT AMONG**
**LEHMAN BROTHERS SPECIAL FINANCING INC., AMERICAN FAMILY LIFE**
**ASSURANCE COMPANY OF COLUMBUS, AND OTHERS, RELATING**
**TO CERTAIN SWAP TRANSACTIONS WITH BERYL FINANCE LIMITED**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Brothers Special Financing Inc. ("LBSF"), as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

**Background**

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.　　　　On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.　　　　On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.　　　　On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5.　　　　This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6.　　　　Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

8.    By this Motion, the Debtors seek approval, pursuant to Bankruptcy Rule 9019, of a settlement agreement (the "Settlement Agreement"), a redacted copy of which is attached hereto as "Exhibit A," among LBSF, LBHI, Beryl Finance Limited ("Beryl"), BNY Corporate Trustee Services Limited ("BNY"), and American Family Life Assurance Company of Columbus ("Aflac") (the "Parties"), in connection with the Dante Program (defined below). The Debtors have determined, in the exercise of their sound business judgment, that the Settlement Agreement is in the best interests of the Debtors, their estates, and their creditors.

## The Dante Program

9.    BNY, as Trustee, entered into a Principal Trust Deed dated October 10, 2002 as amended and restated from time to time, with Dante Finance Public Limited Company ("Dante") pursuant to which a multi-issuer secured obligation program (the "Dante Program") was established. Under the Dante Program, Beryl Finance Public Limited Company ("Beryl"), a Cayman Islands corporation, issued various credit-linked synthetic portfolio notes, including the Beryl Finance Limited Series 2007-5 Tranche A Notes, 2006-15 Tranche A Notes, 2008-7 Tranche A Notes, and 2007-14 Tranche A Notes (the "Notes") (collectively, the agreements underlying the Beryl 2007-5, 2006-15, 2008-7, and 2007-14 transactions are referred to as the "Transaction Documents"). These Notes were secured by various assets and certain secured obligations, including credit default swap transactions. The performance of the Notes is linked

to credit-default swap transactions between LBSF and Beryl that were executed in connection with the issuance of the Notes (collectively, the "<u>Transactions</u>").

<b><u>The Dispute</u></b>

10.     Following the Commencement Date, the Transactions were terminated and Aflac, the 100% owner of the Notes, sought to redeem the Notes and liquidate the collateral that secures them.  Disputes arose between LBSF and Aflac regarding, *inter alia*, the priority of payments that should be applied by BNY under the Transaction Documents when liquidating the collateral and distributing the proceeds between Aflac and LBSF, as well as counterclaims filed by Aflac in the adversary proceeding (described below) and proofs of claims asserted against LBSF and LBHI.

11.     On June 3, 2009, LBSF and LBHI filed a complaint in this Court against Aflac and BNY, Adv. No. 09-01261 (JMP) (the "<u>Adversary Proceeding</u>"), seeking declaratory relief.  On July 7, 2009, Aflac filed its first amended answer and counterclaims (corrected), and LBSF responded on July 13, 2009.  On August 4, 2009, Aflac filed its motion for summary judgment.  On September 25, 2009, LBSF and LBHI filed their cross-motion for summary judgment.  At various junctures since the commencement of the Adversary Proceeding, the Parties have engaged in settlement discussions.

<b><u>The Settlement Agreement</u></b>

12.     The Parties have entered into a Settlement Agreement under which, subject to approval by this Court:

- A settlement payment will be paid to LBSF from the proceeds of the collateral or by Aflac directly.

- The Parties will exchange a mutual release of all claims related to the Transactions.

- Upon receipt of the settlement payment by LBSF and distribution of the remaining collateral to Aflac, BNY and Beryl, (i) the Debtors will execute and

file a Stipulation of Dismissal with Prejudice of the Adversary Proceeding, and (ii) all proofs of claims filed against the Debtors on behalf of Beryl in respect of the Transactions or the Notes, in the aggregate amount of in excess of $126 million, will be withdrawn, with prejudice.

- Each party will bear its own costs and expenses relating to the Adversary Proceeding and the Settlement Agreement.

The Creditors' Committee has been fully informed of and consented to the terms of the Settlement Agreement.

### The Controlling Legal Standard

13.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

14.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its

discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

15.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

16.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

17.     Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

**The Settlement Agreement Meets the Legal Standard
Established Under Rule 9019 and Is in the Bests Interests of the Debtors' Estates**

18.     The Settlement Agreement will clearly benefit the Debtors and their creditors.  First, the settlement will result in a substantial payment to LBSF's estate.  LBSF has determined, in the exercise of its business judgment, that such payment will adequately compensate the estate for the value of the Transactions.  Second, the Settlement Agreement will avoid future disputes and litigation concerning the Transactions because the parties have agreed to release one another from claims thereunder.  Thus, the Settlement Agreement will allow LBSF to capture the value of the Transactions for its estate, while avoiding the costs associated with continuation of the pending litigation.  The Debtors therefore submit that the Settlement Agreement falls well above the lowest point in the range of reasonableness.  For these reasons, the Court should approve the Settlement Agreement pursuant to Bankruptcy Rule 9019.

**Notice**

19.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

20.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  November 25, 2009
          New York, New York

                                                    /s/ Peter Gruenberger
                                                    Ralph I. Miller
                                                    Peter Gruenberger

                                                    WEIL, GOTSHAL & MANGES LLP
                                                    767 Fifth Avenue
                                                    New York, New York 10153
                                                    Telephone: (212) 310-8000
                                                    Facsimile: (212) 310-8007

                                                    Attorneys for Debtors
                                                    and Debtors in Possession

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                    :  Chapter 11
                                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,                    :  Case No. 08-13555 (JMP)
                                                          :
        Debtors.                                          :  (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LEHMAN BROTHERS SPECIAL FINANCING                         :
INC. and LEHMAN BROTHERS HOLDINGS INC.                    :
                                                          :
                                                          :
        Plaintiffs,                                       :
                                                          :  Adversary Proceeding
  -against-                                               :
                                                          :  No.: 09-01261 (JMP)
AMERICAN FAMILY LIFE ASSURANCE                            :
COMPANY OF COLUMBUS and                                   :
BNY CORPORATE TRUSTEE SERVICES                            :
LIMITED                                                   :
                                                          :
        Defendants.                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AMERICAN FAMILY LIFE ASSURANCE                            :
COMPANY OF COLUMBUS                                       :
                                                          :
        Counterclaim Plaintiff,                           :
                                                          :
  -against-                                               :
                                                          :
LEHMAN BROTHERS SPECIAL FINANCING                         :
INC. and LEHMAN BROTHERS HOLDINGS INC.                    :
                                                          :
        Counterclaim Defendants.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STIPULATION OF SETTLEMENT AMONG DEBTORS LEHMAN BROTHERS**
**SPECIAL FINANCING INC. AND LEHMAN BROTHERS HOLDINGS INC.,**
**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, BNY**
**CORPORATE TRUSTEE SERVICES LIMITED, AND BERYL FINANCE LIMITED**

Debtors Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers

Holdings Inc. ("LBHI", and with LBSF, the "Debtors" or "Plaintiffs"), American Family Life

Assurance Company of Columbus ("Aflac"), BNY Corporate Trustee Services Limited (for itself

and on behalf of its Affiliates, [1] "BNY" or the "Trustee"), and Beryl Finance Limited ("Beryl") (all of the foregoing parties collectively, the "Settling Parties") hereby enter into this Stipulation of Settlement (the "Settlement" or "Settlement Agreement") as follows:

**RECITALS:**

A.     LBSF and Beryl entered into credit derivative transactions in relation to the following series of notes (the "Notes"): Beryl 2006-15 Tranche A with a notional amount of Japanese Yen ("JPY")   5,000,000,000 (confirmation January 10, 2007), Beryl 2007-5 Tranche A with a notional amount of JPY 5,000,000,000 (confirmation   March 6, 2007), Beryl 2007-14 Tranche A with a notional amount of JPY 7,500,000,000 (confirmation   October 30, 2007), and Beryl 2008-7 Tranche A with a notional amount of JPY 10,000,000,000 (confirmation   July 28, 2008) (the "Transactions").   LBSF and Beryl are the counterparties in the Transactions, and BNY, as Trustee under the transaction documents, is the assignee of certain rights of Beryl. LBHI unconditionally guaranteed LBSF's payment obligations under the Transactions.   Beryl is the issuer of the Notes, and Aflac owns 100% of the Notes.

B.     On September 15 and October 3, 2008, respectively, each of LBHI and LBSF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which filings constituted events of default under the master agreements governing the Transactions. LBHI's and LBSF's chapter 11 cases have been consolidated for procedural purposes only and

---

[1] "Affiliates" means (a) in the case of a party, other than LBSF, a subsidiary or associated company of that party or entity in any way related to that party and (b) in the case of LBSF: (i) LBHI, a subsidiary of LBHI or an associated entity of LBHI subject, from time to time, to U.S. chapter 11 bankruptcy proceedings (each such subsidiary or associated entity, a "Related Entity"); or (ii) any other entity under the direct or indirect control or management of either LBSF, LBHI, or a Related Entity.

are being jointly administered pursuant to Bankruptcy Rule 1015(b). LBSF and LBHI are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C. On October 10, 2008, Beryl terminated the Transactions by delivering termination notices to LBSF.

D. On June 3, 2009, Plaintiffs filed their complaint in this adversary proceeding (the "Litigation") against Aflac and BNY asserting claims related to the Transactions. Aflac filed its answer and counterclaim on June 15, 2009, amended on July 2 and corrected with consent of the parties on July 7. The Trustee filed its answer and counterclaim on July 7, 2009. Plaintiffs answered Aflac's Counterclaim on July 13, and the Trustee's on July 27, 2009. From August to November 2009, Plaintiffs, Aflac and BNY filed and briefed cross-motions for summary judgment on their respective claims

E. After extensive negotiations, on November 17, 2009, LBSF and Aflac entered into a memorandum of understanding setting forth the contemplated terms of a proposed settlement of the Litigation and all claims related to the Transactions.

F. Further to the memorandum of understanding between LBSF and Aflac, the Settling Parties have reached the following agreement, which they each, in their business judgment, believe is fair, reasonable and in the best interests of each of them, to resolve the matters in dispute.

NOW, THEREFORE, in consideration of the terms and conditions set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the Bankruptcy Court approving this Settlement

Agreement, the Settling Parties hereby agree as follows, notwithstanding anything to the contrary in the transaction documents:

1.      The Debtors, on behalf of themselves and their Affiliates, agree not to pursue any claim that LBSF may have (in its capacity as a swap counterparty or otherwise) on any securities, cash or other property held by or on behalf of Beryl or BNY in respect of the Notes, including any credit support transferred by LBSF, and all income thereon and proceeds thereof (collectively, the "Relevant Property"), or any other claim whatsoever in connection with the Notes or the Transactions.

2.      Aflac, Beryl, and BNY agree not to pursue any claim that they (or either of them on behalf of the other or on behalf of any other party) may have with respect to LBSF's obligations (if any) to post additional collateral under any of the Transactions or in respect of any claim against the Debtors or any of their respective Affiliates whatsoever in connection with the Notes or the Transactions.

3.      Aflac agrees to instruct the Trustee to cause the following payments to be made, and Beryl agrees that such payments shall be made:

a.      To LBSF, the amount of US [REDACTED] (the "Final Settlement Amount") from such of the Relevant Property as may be available in cash and/or from the proceeds of the liquidation of such Relevant Property as Aflac determines.  Aflac, at its sole option and discretion, will elect one of the following methods by which the Final Settlement Amount will be paid to LBSF and will so notify Beryl, BNY, and LBSF in writing not later than the third (3rd) business day before the Cut-Off Date (defined below):

(i) Aflac will direct the Trustee to cause payment of the Final Settlement Amount to LBSF from the Relevant Property; provided that sufficient funds for such purpose are or on the proposed payment date will be available to Beryl in cash (USD) (including as a result of sales and/or currency conversions of such part of the Relevant Property as Aflac may direct pursuant to paragraph 7); or

(ii) Aflac will (1) direct the Trustee to cause payment of a portion of the Final Settlement Amount from the Relevant Property (provided that sufficient funds to pay such portion are or on the proposed payment date will be available to Beryl in cash (USD), including as a result of sales and/or currency conversions of such part of the Relevant Property as Aflac may direct pursuant to paragraph 7) and (2) pay the portion of the Final Settlement Amount not paid by Beryl from Aflac's own cash (USD); or

(iii) Aflac will pay the Final Settlement Amount to LBSF directly from its own cash (USD);

b. To the Trustee, the outstanding fees and expenses incurred by the Trustee with respect to the Transactions and the Litigation; and

c. To Beryl, the outstanding fees and expenses incurred by Beryl in connection with the negotiation and performance of the Settlement Agreement, not to exceed USD 30,000;

provided that at its sole option and discretion, Aflac also may elect to pay out of pocket to the Trustee and/or Beryl such portion of the payments provided for in this paragraph 3 as may not be

available to Beryl in cash. The Trustee will promptly undertake Aflac's instructions. The payments provided for in this paragraph 3 shall be made without any set-off, netting, withholding, combination of accounts or retention in respect of any present or future monies, debts or liabilities owing to or by Beryl, BNY or Aflac or incurred by the Debtors or their respective Affiliates at any time and regardless of any right of equity, counterclaim, or claim against the Debtors or their respective Affiliates.

4.      Aflac agrees to instruct the Trustee to cause the distribution to Aflac of all Relevant Property remaining after the payments provided for in paragraph 3 above (to the extent such payments are made from the Relevant Property), in kind or in cash in such currency as Aflac determines in its sole discretion, without set-off, withholding or deduction of any kind, and Beryl agrees that such distribution shall be made.

5.      The payments made pursuant to paragraph 3 (to the extent made from the Relevant Property), and the distribution made pursuant to paragraph 4, shall be released from the Trustee's lien under the trust deed governing the Notes without the need for any further action or execution of any instrument by the Trustee or any other person.

6.      The payments provided for in paragraph 3, and the distribution provided for in paragraph 4, above shall be made on the same date, which date shall be no later than 60 days following the date on which the Bankruptcy Court's order approving this Settlement becomes final (the "Cut-Off Date"). Within ten (10) business days following the execution of this Settlement Agreement, Aflac and LBSF agree to provide BNY and Beryl with separate wiring instructions for their respective payments and distributions as set forth in paragraphs 3 and 4.

7. Aflac shall be permitted, but not required, to direct the Trustee to effect such sales and currency conversions of Relevant Property as Aflac may elect at its sole option and discretion. The Trustee agrees promptly to execute any such instructions by Aflac, and Beryl hereby consents to any such transactions and agrees to cooperate, as and if directed by Aflac or the Trustee, to cause such instructions to be effected.

8. Each of the Settling Parties agrees that it shall not disclose the Final Settlement Amount ("Confidential Information") to any person other than to its directors, officers, employees, counsel or other advisors (including in the case of LBSF, the Official Committee of Unsecured Creditors and their advisors) (together the "Related Parties" and each a "Related Party"), in each case who need to know such information (it being understood that such Related Parties will be informed in advance of the confidential nature of the Confidential Information and will be directed to maintain the confidentiality of such Confidential Information), except as may be required by applicable law or regulation. If a Settling Party or any Related Party becomes legally obligated to disclose any of the Confidential Information, the Settling Party or such Related Party will, if permitted by law and applicable regulation, promptly endeavor to provide the other Settling Parties with prompt notice of such proposed disclosure so that the other Settling Parties may seek a protective order or other appropriate remedy. If such a protective order or other protective remedy is not obtained, the Settling Party or such Related Party will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and the Settling Party or such Related Party will exercise its reasonable efforts to request confidential treatment for the Confidential Information, and, if possible, to obtain reliable assurance that such confidential treatment will be accorded. It is understood that if the Confidential Information becomes publicly available, other than as a result

of a breach of this paragraph by a Settling Party or a Related Party, it shall no longer constitute Confidential Information. Each Settling Party recognizes and acknowledges that disclosure of the Final Settlement Amount other than in compliance with the terms of paragraph 8 would lead to substantial, foreseeable, and irreparable harm or injury such that the Settling Parties could take action against any Settling Party who may be in breach of this paragraph, such actions include, without limitation, immediate injunctive relief to prevent any such disclosure.

9. Immediately upon satisfaction and effectuation of the payments provided for in paragraph 3, and the distribution provided for in paragraph 4, above:

a. the following releases shall become effective

(i) The Debtors, on behalf of themselves, their Affiliates, their estates, and their respective past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "Lehman Releasors"), hereby unconditionally covenant not to sue, and hereby release and discharge, each of Aflac, BNY, and Beryl and each of their respective Affiliates, together with all of their respective past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "Lehman Releasees") from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, expenses, attorneys' fees, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity, or

otherwise, whether now known or unknown, which the Lehman Releasors now own or hold or have at any time heretofore owned or held as against the Lehman Releasees, arising out of the Transactions or the Litigation; provided, however, that the foregoing release shall not apply to any claims arising under this Settlement Agreement;

**(ii)** Aflac, on behalf of itself and its past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "Aflac Releasors"), hereby unconditionally covenants not to sue, and hereby releases and discharges each of the Debtors, BNY and Beryl and their respective Affiliates, together with all of their respective past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "Aflac Releasees") from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, expenses, attorneys' fees, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, which the Aflac Releasors now own or hold or have at any time heretofore owned or held as against the Aflac Releasees, arising out of the Transactions or the Litigation; provided, however, that the

foregoing release shall not apply to any claims arising under this Settlement Agreement;

**(iii)** BNY, on behalf of itself and its past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "BNY Releasors"), hereby unconditionally covenants not to sue, and hereby releases and discharges each of the Debtors and Aflac and their respective Affiliates, together with all of their respective past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "BNY Releasees") from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, expenses, attorneys' fees, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, which the BNY Releasors now own or hold or have at any time heretofore owned or held as against the BNY Releasees, arising out of the Transactions or the Litigation; provided, however, that the foregoing release shall not apply to any claims arising under this Settlement Agreement; and provided further, that Aflac's indemnity agreement in favor of BNY in respect of the Transactions (the "BNY Indemnity") shall

survive execution of this Settlement Agreement and court approval of this Stipulation;

**(iv)** Beryl, on behalf of itself and its past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "Beryl Releasors"), hereby unconditionally covenants not to sue, and hereby releases and discharges each of the Debtors and Aflac and their respective Affiliates, together with all of their respective past and present shareholders, officers, directors, employees, attorneys, agents, representatives, successors, predecessors and assigns (individually and collectively the "Beryl Releasees") from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, expenses, attorneys' fees, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, which the Beryl Releasors now own or hold or have at any time heretofore owned or held as against the Beryl Releasees, arising out of the Transactions or the Litigation; provided, however, that the foregoing release shall not apply to any claims arising under this Settlement Agreement;

**(v)** all rights and obligations of the Settling Parties and their respective Affiliates in connection with and under the Transactions and the Notes (other than the BNY Indemnity) will be canceled;

**(vi)** all claims and counterclaims in the Litigation will be dismissed with prejudice; and

**(vii)** all proofs of claim filed in Case No. 08-13555 (JMP) related to the Transactions (the "Proofs of Claim"), including by way of example only and not limitation, Proof of Claim Nos. 21823, 21824, 21979, 21980, 21981, 21982, 21983, 21984, 40698, 40699, 40701, 40702, 40718, 40719, 40741 and 40742,[2] will be withdrawn with prejudice.

10. As used herein, "business day" means a day on which the major clearing banks in London and New York (and, for purposes of paragraph 3, Tokyo) are ordinarily open for business, which for the avoidance of doubt, excludes weekends and bank holidays commonly recognized in the United Kingdom or the United States of America (or, to the extent applicable, Tokyo).

11. For the avoidance of doubt, the releases contained in this Settlement Agreement in respect of the Notes and the Transactions do not affect any Settlement Party's rights and obligations with respect to any other series in the Dante Finance Public Limited Company Multi Issuer Secured Obligation Programme.

12. Except as otherwise agreed herein, each of the Settling Parties will bear its own costs and expenses (including legal fees) incurred in connection with the Litigation, the Proofs of Claim, liquidation of the Relevant Property, and preparation, negotiation and execution of this Settlement Agreement.

---

[2] The aggregate amount of the Proofs of Claim is at least $126 million.

13. The Debtors represent and warrant that the Official Committee of Unsecured Creditors, through its counsel, has consented to the settlement of LBSF's interests under the Transactions at the Final Settlement Amount.

14. The Settling Parties shall cooperate in good faith to prepare and execute all documents and to take all actions required to fully effect the terms of this Settlement Agreement as soon as reasonably possible. The Settling Parties will further cooperate to obtain all necessary court approvals of this Settlement Agreement.

15. This Settlement Agreement is subject to the approval of the Bankruptcy Court and shall become effective upon the order by the Bankruptcy Court approving this Settlement Agreement becoming a final order.

16. The purpose of this Settlement Agreement is to compromise disputed claims and issues and to avoid further litigation and the related expense and uncertainty thereof. Neither the execution, delivery, nor performance of this Settlement Agreement by any of the Settling Parties shall be deemed or construed as an admission by any Settling Party.

17. Aflac, as the holder of all outstanding Notes, confirms that it has directed (i) Beryl to seek the consent of the Trustee to Beryl's entry into and performance of this Settlement Agreement, (ii) the Trustee to consent to Beryl's request to enter into and perform this Settlement Agreement, and (iii) the Trustee to enter into and perform this Settlement Agreement.

18. Beryl confirms that it has requested the Trustee to consent to Beryl's entry into and performance of this Settlement Agreement, and the Trustee confirms that it has consented to Beryl's entry into and performance of this Settlement Agreement and Beryl's taking or causing to be taken the actions necessary to effect the agreements made herein.

19.     Each of the Settling Parties represents and warrants to the other Settling Parties as follows (provided that to the extent, if any, any of the following representations and warranties implicates New York law, then with regard to Beryl, the representation and warranty is made to the extent of its best knowledge and belief):

a.      Subject to entry of an order by the Bankruptcy Court approving the Settlement Agreement and such order becoming a final order with respect to the Debtors, the Settling Parties have full power and authority to execute this Settlement Agreement and perform all of its obligations set forth herein.

b.      No further corporate or organizational action or approval, except for the entry of an order by the Bankruptcy Court approving the Settlement Agreement and such order becoming a final order, is necessary on the part of the Settling Party to execute and deliver this Settlement Agreement, to be bound by its terms, or to perform its obligations set forth herein.

c.      Prior to execution, the Settling Party fully informed itself as to the terms, contents, provisions, and effects of this Settlement Agreement and is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth herein.

d.      Prior to execution, the Settling Party had the benefit of the advice of an attorney or attorneys chosen and employed by that Settling Party concerning this Settlement Agreement.

e.      No promise or representation of any kind has been made to the Settling Party or its representatives by any other Settling Party or its representative, except as expressly set forth in this Settlement Agreement.

f.      The Settling Party is the sole owner and holder of the claims it is releasing under this Settling Agreement, and (except for the security interests in favor of BNY as Trustee, pursuant to the documents governing the Transactions and the Notes) none of those claims have been assigned, pledged, encumbered, or otherwise transferred, in whole or in part, to any other person or entity.

20.      This Settlement Agreement is binding upon the Settling Parties and their respective successors and assigns, including any chapter 11 or chapter 7 trustee subsequently appointed in the Debtors' bankruptcy cases.

21.      This Settlement Agreement sets forth the entire agreement and understanding of the Settling Parties with respect to the subject matter hereof and supersedes and replaces any and all prior arrangements, understandings, representations, promises, inducements, or other communications, whether written or oral, among the Settling Parties pertaining to the subject matter of this Settlement Agreement.

22.      Each of the Settling Parties understands, agrees, and acknowledges that all of the Settling Parties shall be deemed to be the drafters of this Settlement Agreement and any ambiguity in or dispute regarding the interpretation of this Settlement Agreement shall not be resolved by any rule of interpretation providing for interpretation against the party that causes the uncertainty to exist or against any party as the drafter.

23.     This Settlement Agreement shall be construed and enforced in accordance with the laws of the State of New York.  Any suit regarding this Settlement Agreement or to enforce any rights hereunder shall be brought in the Bankruptcy Court.

24.     No supplement, modification, waiver or termination of this Settlement Agreement shall be binding unless executed in writing by the Settling Parties.

25.     This Settlement Agreement may be executed in any number of counterparts, including by facsimile or other electronic means, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have duly executed this Settlement Agreement as of the 25th day of November, 2009.

**Lehman Brothers Special Financing Inc.**

/s/ Daniel Ehrmann
By: Daniel Ehrmann

Title: Vice President


**Lehman Brothers Holdings Inc.**

/s/ Daniel Ehrmann
By: Daniel Ehrmann

Title: Vice President


**American Family Life Assurance Company of Columbus**

/s/ W. Jeremy Jeffery
By: W. Jeremy Jeffery

Title: Chief Investment Officer


**Beryl Finance Limited**

/s/ Alasdair Foster
By: Alasdair Foster

Title: Director


**BNY Corporate Trustee Services Limited**

/s/ Grace Mulvihill
By: Grace Mulvihill

Title: Authorized Signatory

**Proposed Order**

US_ACTIVE:\43230330\11\58399.0003

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                           :

In re                                    :        Chapter 11 Case No.
                                           :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :        08-13555 (JMP)
                                           :

                  Debtors.          :        (Jointly Administered)
                                           :
                                           :

---------------------------------------------------------------x

**ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT AMONG LEHMAN BROTHERS SPECIAL FINANCING INC., AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, AND OTHERS, RELATING TO CERTAIN SWAP TRANSACTIONS WITH BERYL FINANCE LIMITED**

Upon the motion, dated November 25, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases,

including Lehman Brothers Special Financing Inc. ("LBSF"), as debtors and debtors-in-

possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"),

pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

for authorization of a settlement agreement among LBSF, LBHI, American Family Life

Assurance Company of Columbus, and others, relating to certain swap transactions with Beryl

Finance Limited (the "Settlement Agreement"), all as more fully described in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion and the Objection; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Debtors' execution of the Settlement Agreement is approved; and it is further

ORDERED that LBSF and LBHI are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that the terms of this Order shall be immediately effective and enforceable upon its entry; it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2009
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE