**Hearing Date and Time: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: December 11, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
: 
**In re**                                                          : **Chapter 11 Case No.**
                                                                   : 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       : **08-13555 (JMP)**
                                                                   : 
     **Debtors.**                                                  : **(Jointly Administered)**
                                                                   : 
                                                                   : 
-------------------------------------------------------------------x

### NOTICE OF LBHI'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND RULE 6004 OF THE BANKRUPTCY RULES, FOR AUTHORIZATION TO MAKE A CAPITAL CONTRIBUTION TO AURORA BANK

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for authorization to make a capital contribution to Aurora Bank, FSB, all as more fully set forth in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Alfredo R. Perez, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **December 11, 2009 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 25, 2009
      New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: December 11, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :   08-13555 (JMP)
                                          :
                    Debtors.              :   (Jointly Administered)
                                          :
------------------------------------------------------------x
```

**LBHI'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF THE**
**BANKRUPTCY CODE AND RULE 6004 OF THE BANKRUPTCY RULES, FOR**
**AUTHORIZATION TO MAKE A CAPITAL CONTRIBUTION TO AURORA BANK**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

**Preliminary Statement**

1.  LBHI seeks authorization to make a capital contribution to its indirect wholly-owned non-debtor subsidiary Aurora Bank FSB f/k/a Lehman Brothers Bank, FSB (the "Bank" or "FSB") to continue to preserve the opportunity to realize the value of its equity interest in the Bank for creditors, which was most recently reported at $445 million. As the

US_ACTIVE:\43233209\04\58399.0003

Court is aware, since approximately October 2008, LBHI has taken a series of actions to preserve the opportunity to realize the value of its equity interest in FSB as well as LBHI's equity interest in the Bank's affiliate, Woodlands Commercial Bank f/k/a Lehman Brothers Commercial Bank ("Woodlands"). In order to achieve this goal under the strategies being considered by LBHI and the Creditors' Committee (defined below), the Bank must obtain approval of a business plan under which it will resume normal lending and other business operations, including, the issuance of brokered certificates of deposit. Under regulatory requirements and credit market conditions, in order to issue brokered certificates of deposit, the Bank needs to achieve and maintain at least a "well-capitalized" status under applicable regulations.

2.  The Bank is required to report to the Office of Thrift Supervision (the "OTS," when referred to with the Federal Deposit Insurance Corporation "FDIC," the "Regulators"), its primary regulator, its capital levels as of December 31, 2009 on its next quarterly thrift financial report (the "TFR"). Although the Bank's condition has for the most part remained stable as a result of various actions taken by the Bank and LBHI's prior actions in support of the Bank, due to a miscalculation in the valuation of a portfolio of mortgage servicing rights previously contributed to the Bank by LBHI and the continued effect of fair value accounting on the Bank's capital, as discussed in greater detail below, the Bank at September 30, 2009 fell somewhat below the "well-capitalized" level, and is expected to be below this level on December 31, 2009.

3.  LBHI's discussions with the Bank and the OTS regarding a resolution of the Bank's proof of claim based upon the master forward agreement between LBHI and the Bank (the "MFA Claim") and regarding a business plan for the Bank (the "Business Plan") have been

progressing and are at a highly sensitive stage. LBHI believes that the failure of the Bank to achieve a "well capitalized" total risk-based capital ratio on December 31, 2009 would seriously undermine the credibility with the OTS of the Bank's intentions to carry out its Business Plan and would disrupt or delay the ability, if an approved Business Plan were achieved, to carry out the Business Plan and stabilize its funding sources. The Bank and LBHI believe that it is important for the Bank to have reported in the ordinary course that it is "well capitalized" for it to be able to raise funds efficiently in the market. Accordingly, to ensure that implementation of LBHI's business strategy for the Bank is not jeopardized, LBHI seeks authorization to make a capital contribution of up to $100 million to the Bank prior to December 31, 2009. As explained below, LBHI believes that this capital investment is appropriate and necessary to continue to protect its prior investments in the Bank and to realize the value of its equity interest in the Bank for the benefit of creditors.

**Background**

4.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

7. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

8. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

9. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

10. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

11.    By this Motion, LBHI seeks authorization, but not direction, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(h), to invest up to $100 million in cash into the Bank to the extent such investment is determined by LBHI to be necessary to assure that the Bank's total risk-based capital ratio satisfies the 10% "well-capitalized" mark as of December 31, 2009 (the "Capital Contribution").  Given the importance to the Bank's business strategy of achieving a "well-capitalized" status on December 31, 2009, LBHI requests that the Court waive the requirements of Bankruptcy Rule 6004(h) and direct that the order granting the relief requested herein be effective immediately.  As set forth more fully below, LBHI's decision to make the Capital Contribution represents a reasonable exercise of its business judgment and should be approved.

**The Need for a Capital Contribution**

The PCA and the Capital Restoration Motion

12.    In response to the diminished capital level reported in the Bank's December 31, 2008 TFR, on February 4, 2009, the OTS issued a Prompt Corrective Action directive (the "PCA") requiring the Bank to (i) achieve the "adequate" capital levels required under the applicable regulations by February 28, 2009 and (ii) to demonstrate how it would thereafter maintain those levels, including by virtue of the support from its holding company, LBHI, which would be available for this purpose.  The PCA directive imposes serious restrictions on the Bank's operations, including, most significantly, limitations on its sources of funding and restrictions on originating new commercial loans or conducting new business without the approval of the OTS.  While the Bank's total risk-based capital ratio exceeded 10% (the regulatory definition of "well-capitalized") as of March 31, 2009 and June 30, 2009 and the 8% capital adequacy level as of September 30, 2009, the PCA directive remains in effect until it

is terminated by the OTS. The capital maintenance restrictions in the PCA and a separate Consent Order to Cease and Desist, dated January 26, 2009, cause the Bank to be considered only "adequately capitalized" for purposes of 12 C.F.R. § 337.6 until such restrictions are lifted by the OTS, and, therefore, the Bank currently continues to be prohibited from issuing brokered certificates of deposit. Approval by the OTS of the Bank's Business Plan is being held in abeyance pending the Bank and LBHI addressing a resolution of the MFA Claim. The MFA Claim, which is secured in part, represents a material portion of the Bank's capital.

13. To allow FSB to comply with the PCA and avoid further adverse regulatory action, including possible seizure of the Bank, LBHI sought and obtained authority from the Court in February 2009 to take certain actions to restore the Bank's diminished capital level as of December 31, 2008. *See In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Feb. 17, 2009) [Docket No. 2847].[1] Pursuant to the order authorizing the relief requested in the Capital Restoration Motion, on February 27, 2009, LBHI consummated a settlement agreement (the "Settlement Agreement") with Aurora Loan Services, LLC ("Aurora"), the Bank's wholly-owned loan servicing subsidiary, that was intended to have the effect of transferring approximately $189 million in economic benefit to Aurora.

14. The Settlement Agreement included the settlement of a dispute between Aurora and LBHI over ownership of a portfolio of mortgage servicing rights that LBHI purchased from a third party, Residential Funding Company, LLC (the "RFC Servicing Rights"), on or about February 19, 2008 and had Residential Funding Company LLC ("RFC") deliver at

---

[1] Order Approving *LBHI's Motion, Pursuant to Section 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 6004, for Authorization to Increase the Capital Level of Lehman Brothers Bank, FSB Through (I) the Settlement of Pending Disputes and (II) a Direct Capital Contribution of up to $15 Million* [Docket No. 2800] (the "Capital Restoration Motion"). The Capital Restoration Motion is incorporated by reference herein.

08-13555-mg    Doc 5956    Filed 11/25/09    Entered 11/25/09 17:43:36    Main Document
Pg 10 of 20

that time to Aurora. Pursuant to the Settlement Agreement, LBHI transferred to Aurora ownership of the RFC Servicing Rights and certain fees (the "Excess Servicing Fees") that were paid monthly by Aurora to LBHI as compensation for LBHI's appointment of Aurora as servicer for the RFC and other loans prior to the Commencement Date, but had come into dispute between Aurora and LBHI since the Commencement Date.

15. At the time of the Settlement Agreement, the RFC Servicing Rights were believed to be worth approximately $89 million based upon an independent third party appraisal. However, the Bank and LBHI learned this Fall that the February 2009 valuation of the RFC Servicing Rights was overstated because it did not take into consideration certain prioritization provisions in the servicing agreements involved in the RFC Servicing Rights. Under these provisions, the securitization trusts and other holders of the residential loans that are serviced pursuant to the RFC Servicing Rights are entitled to priority in recovery of principal and interest on the loans over the payment of certain servicing fees to the servicer, Aurora. Specifically, in the event a residential mortgage that is serviced pursuant to the RFC Servicing Rights is sold upon foreclosure, proceeds from the sale are first payable to the owner of the loan to satisfy the outstanding principal on the mortgage before certain accrued servicing fees are payable to the servicer, Aurora. Typically, among the hundreds of servicing agreements under which Aurora operates, accrued and unpaid servicing fees rank higher in priority in the event of a foreclosure sale. A recent investigation by Aurora determined that this was mistakenly assumed to be the case with respect to the RFC Servicing Rights and was the basis on which the RFC Servicing Rights were accidentally programmed into Aurora's records and under which LBHI and Aurora had been operating since the transfer of ownership of the RFC Servicing Rights to Aurora in February 2009. In addition, Aurora has been collecting fees from foreclosure sales that it will

need to pay over to the owners of the mortgage loans it services under the RFC Servicing Rights in order to correct the mistake.

16. As are a result of this error, the value of the RFC Servicing Rights and associated Excess Servicing Fees that LBHI transferred to Aurora in February 2009 was, based upon a recently obtained independent appraisal, approximately $38 million, or $51 million less than what LBHI and the Bank believed the RFC Servicing Rights and associated Excess Servicing Fees to be worth at the time of the Settlement Agreement. As a result, an adjustment to the value of the RFC Servicing Rights was made by the Bank in preparing its September 30, 2009 TFR, which caused the Bank to fall below the "well-capitalized" 10% risk-based capital ratio on such date. Absent a capital contribution to remedy the shortfall in value caused by the mistake relating to the RFC Servicing Rights, the Bank's capital as of December 31, 2009 will similarly fall below the "well capitalized" level.

17. In addition, due to the effect of fair value accounting, the Bank's capital levels continue to be subject to the volatile and unpredictable fluctuations of the marketplace. As the Court will recall, in 2007, in order to be consistent with the accounting practices of LBHI and its subsidiaries, the Bank (unlike most banks) adopted the Financial Accounting Standards Board's Statement of Financial Accounting Standards No. 159, Fair Value Option for Financial Assets and Financial Liabilities ("<u>FAS 159</u>"). FAS 159 requires entities that adopt such treatment to measure certain financial instruments and other items at fair value for financial reporting purposes. For this purpose, "fair value" is the price that would be received to sell assets or paid to transfer a liability in an orderly transaction between market participants at the measurement date and the preferred method of determining "fair value" is based on comparable market transactions. Among other assets, cecause of current adverse conditions in the residential

mortgage market adversely affecting servicers of mortgage loans, the RFC Servicing Rights and certain other servicing rights owned by Aurora, in particular, may be marked down in value by December 31, 2009 under FAS 159. As a result, the Bank may fall short of the 10% total risk based capital ratio required for the Bank to be considered "well capitalized" at December 31, 2009. LBHI continues to believe that the short-term value fluctuations resulting from the application of fair value accounting conventions to the Bank's capital calculations results in a distortedly negative portrayal of the Bank's financial position.

18. To compensate for the miscalculation of the value of the RFC Servicing Rights and the effect of fair value accounting, LBHI believes that the Bank will need up to $100 million in additional capital to ensure that the Bank achieves a 10% total risk-based capital ratio on December 31, 2009.

### LBHI's Strategy for the Bank

19. LBHI, in consultation with the Creditors' Committee, is currently considering the available alternatives to best realize the value of its equity interests in both FSB and Woodlands. Each alternative is being further developed and reviewed with the Creditors' Committee, but it is clear that to achieve the best result under any of the alternatives, FSB must achieve and maintain at least a minimum 10% risk-based capital ratio so that it can resume normal business operations, including having the ability to access new deposits.

20. The Bank, with LBHI's support, has submitted a Business Plan to the OTS that contemplates a long-term business strategy for the continued operation of the Bank that would position the Bank so that LBHI can recover the value of its equity interest and prior investments in the Bank. Consideration of the proposed Business Plan by the OTS has been put on hold until a resolution can be achieved with respect to the Bank's MFA Claim. LBHI and the

Bank have been engaged in serious discussions regarding a resolution of the Bank's MFA Claim, which may include a further capital contribution by LBHI so as to enable the Bank to operate without reliance upon further capital support by LBHI. LBHI believes that if it receives the necessary cooperation from the Bank and the Regulators, a resolution of the MFA Claim could be achieved in the near future.

21. Once the MFA Claim is resolved, LBHI, in consultation with the Creditors' Committee, and the Bank would finalize and resubmit an amended and updated Business Plan to the OTS for approval. The revised Business Plan would continue to be premised upon the Bank achieving and maintaining at least a "well-capitalized" status so that the Bank can replace maturing and high cost certificates of deposit and resume normal business operations. If the Bank's capital level is not reported at "well-capitalized" on its December 31, 2009 TFR, approval of the Business Plan may be jeopardized, and, at the very least, the ability of the Bank to carry out the contemplated Business Plan would be subject to delay.

### Sound Business Reasons Support
### LBHI's Decision to Invest the Capital Contribution

22. Pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBHI requests authorization to invest the Capital Contribution to preserve the value of the Bank for the benefit of its creditors. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir.

1996) (citing *Fulton State Bank v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

23. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

24. There are ample business justifications in support of the Motion. By making the Capital Contribution, LBHI can maintain momentum on implementing the Bank's long-term business strategy and fulfilling its goal of putting the Bank in a position to resume normal lending and other business operations. Unless the Bank achieves and maintains a "well-capitalized" status, none of LBHI's strategies to recover the value of the Bank can be successful. On the contrary, if the Bank is not at a "well-capitalized" level on December 31, 2009, there is a material risk that a resolution of the MFA Claim and approval of a Business Plan will be jeopardized, which could potentially result in a failure of the Bank that would eliminate LBHI's ability to recover the value of its equity interest for the benefit of its creditors.

25.     Allowing a failure of the Bank and appointment of a receiver would not only deprive LBHI of a valuable asset, but it would also expose the Debtors to guarantee claims and a potentially significant claim under section 365(o) of the Bankruptcy Code that would precipitate significant litigation and attendant costs.  Pursuant to section 365(o) of the Bankruptcy Code, if (a) there is a commitment by a debtor to maintain the capital of an insured depository institution and (b) there is a deficiency in capital existing on the date of the petition, then the debtor may be compelled to immediately cure the capital deficiency or convert to a case under chapter 7 and treat the claim as a priority claim under section 507(a)(9) of the Bankruptcy Code.  *See* 11 U.S.C. § 365(o); *Resolution Trust Corp. v. Firstcorp Inc. (In re Firstcorp Inc.)*, 973 F.2d 243 (4th Cir. 1992).  Although LBHI believes it has valid and sustainable defenses to a section 365(o) claim, if one were asserted, there is very limited existing dispositive authority as to the potential issues.  The results of litigation are never certain.  If the Regulators successfully prosecute the section 365(o) claim, it will have to be paid ahead of all allowed general unsecured claims.

26.     The appointment of a receiver for FSB might also cause LBHI to lose the value of, and its prior investments in, Woodlands pursuant to a cross-liability statute.  *See* 12 U.S.C. § 1815(e)(1)(A) ("Any insured depository institution shall be liable for any loss incurred by the [FDIC]…in connection with – (i) the default of a commonly controlled insured depository institution; or (ii) any assistance provided by the [FDIC] to any commonly controlled depository institution in danger of default.").  If FSB is allowed to fail, there is a possibility that the deficiencies covered by the FDIC on FSB will be imposed onto Woodlands, which would thereby expose Woodlands' capital levels and risk a receivership of Woodlands.  The value of LBHI's equity interest in Woodlands was most recently reported at $645 million.  In sum, the

appointment of a receiver and failure of the Banks could cause LBHI to suffer between $1.2 billion (reasonable best case) and $3.6 billion (reasonable worst case) in losses.[2] The potential harm to all general unsecured creditors is obvious.

27. LBHI has invested a substantial amount of time, money, and effort into preserving the opportunity to realize the value of its equity interest in the Bank and in taking necessary and appropriate steps to try to finalize and obtain approval of a Business Plan that allows the Bank to resume normal business operations so as to permit LBHI to recover the fair value of the Bank. It would be a gross waste of LBHI's prior efforts to preserve the value of the FSB and Woodlands[3] and unreasonable as a matter of business judgment to, at this juncture, put at risk or delay finalizing and obtaining approval of a Business Plan.

28. For these reasons, LBHI's decision to make the Capital Contribution is in the best interest of its estate and creditors and represents a reasonable exercise of its business judgment. Accordingly, the relief requested by the Motion should be granted.

### Notice

29. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended

---

[2] *See* Tr. of February 17, 2009 Hr'g, at 18:3 – 9 (presentation and testimony of Bryan Marsal) (the "February 17, 2009 Hearing"). The record of the February 17, 2009 Hearing, including the presentation and testimony given by Bryan Marsal is incorporated by reference herein.

[3] The Debtors have taken a series of actions to preserve the value of the Banks, including: (i) LBHI's entry into two settlement agreements with Aurora that transferred to the Bank and Aurora ownership of approximately $99 million in excess servicing fees; (ii) capital contributions of $9.838 million on February 27, 2009, $15 million on March 31, 2009, and $50 million on June 30, 2009; (iii) the transfer of master servicing rights to the Bank and Aurora valued at approximately $171 million (reduced for miscalculation of the value of the RFC Servicing Rights); (iv) the provision of services to assist the termination of certain Bank loan commitments totaling $1.357 billion; (v) LBHI's entry into the amended master repurchase agreement that made $450 million in financing available to the Bank; (vi) LBHI's entry into a short-term bridge financing facility with Aurora that made up to $500 million in financing available to Aurora; and (vii) a $200 million cash contribution to Woodlands.

order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

30. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: November 25, 2009
    New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
:
In re                                                                  :       Chapter 11 Case No.
                                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :      08-13555 (JMP)
                                                                       :
                    Debtors.                                   :       (Jointly Administered)
                                                                       :
-----------------------------------------------------------------x

**ORDER GRANTING LBHI'S MOTION, PURSUANT TO**
**SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND**
**RULE 6004 OF THE BANKRUPTCY RULES, FOR AUTHORIZATION**
**TO MAKE A CAPITAL CONTRIBUTION TO AURORA BANK**

Upon the motion, dated November 25, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105(a) and 363(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to invest up to $100 million in cash into Aurora Bank FSB (the "Bank") to the extent such investment is determined by LBHI to be necessary to assure that the Bank's total risk-based capital ratio satisfies the 10% "well-capitalized" mark as of December 31, 2009 (the "Capital Contribution"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBHI is authorized, but not required, to fund the Capital Contribution; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and this Order shall be effective immediately upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: December __, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE