Hearing Date and Time: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: December 11, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                                 :
In re                                            :   Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,           :   08-13555 (JMP)
                                                 :
                  Debtors.                       :   (Jointly Administered)
                                                 :
-------------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION FOR AN ORDER
PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING SETTLEMENTS WITH
BAMBURGH INVESTMENTS (UK) LTD AND CORFE INVESTMENTS (UK) LTD**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. (together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors") for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving settlements with its affiliates Bamburgh Investments (UK) Ltd and Corfe Investments (UK) Ltd, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **December 11, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 25, 2009
      New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  December 11, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                           :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :    **08-13555 (JMP)**
:
Debtors.                              :    (Jointly Administered)
:
------------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER
PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING SETTLEMENTS WITH
<u>BAMBURGH INVESTMENTS (UK) LTD AND CORFE INVESTMENTS (UK) LTD</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("<u>LBHI</u>" and together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), files this motion and respectfully represents:

**Preliminary Statement**

1.  Alnwick Investments (UK) Limited ("<u>Alnwick</u>"), Bamburgh Investments (UK) Limited ("<u>Bamburgh</u>"), and Corfe Investments (UK) Limited ("<u>Corfe</u>" and together with Alnwick and Bamburgh, "<u>AB&C</u>") are companies incorporated in England and Wales and wholly-owned indirect subsidiaries of LBHI.  These companies were formed to carry out

US_ACTIVE:\43235510\04\58399.0003

structured bond trades executed by Lehman's European Strategic Transaction Group. All of the transactions between AB&C, on the one hand, and external, third parties, on the other, were terminated and unwound prior to September 15, 2008; however, internal transactions among AB&C and other Lehman affiliates remain in place. The only assets of AB&C are intercompany receivables, including prepetition claims against LBHI. The only liabilities of AB&C are intercompany payables, including amounts owed to LBHI, and certain tax liabilities in England and Wales. As a result of the commencement of these chapter 11 cases, AB&C are unable to repay their outstanding debts.

    2.  As detailed below, AB&C are at risk of being "struck off" the company register in England and Wales by Companies House in England and Wales and dissolved. A strike off procedure is an alternative to a formal insolvency procedure (where the circumstances are appropriate) in England and Wales where the company is no longer required. If AB&C were struck off the register, their assets, including claims against LBHI in excess of €3.6 billion, will become property of the Crown in England and Wales. The liabilities of AB&C, including in excess of €4.8 billion owed to LBHI, would be extinguished. It is therefore in LBHI's interest to prevent AB&C from being struck off and dissolved.

    3.  After careful consideration and analysis, LBHI, the sole shareholder of AB&C, and certain of their other affiliates have agreed in principle certain transactions that would prevent AB&C from being struck off and dissolved. These transactions, detailed below, would substantially reduce the claims against LBHI and maximize the return on amounts owed to LBHI. To facilitate the actions, LBHI seeks authority to enter into compromises and settlements whereby LBHI would forgive prepetition amounts owed to it by Bamburgh and

Corfe in exchange for a release of prepetition claims against LBHI currently held by Alnwick and certain other non-Debtor affiliates.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

5.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

7.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### The European Strategic Transaction Group

8. As illustrated in the diagram below, AB&C and Kenilworth Investments 2 Ltd ("Kenilworth 2"), a company incorporated in the Cayman Islands, are wholly-owned indirect subsidiaries of LBHI. Gainsborough Investments B.V. ("Gainsborough"), a company incorporated in the Netherlands, is a wholly-owned subsidiary of Bamburgh, and Kenilworth Investments 1 Limited ("Kenilworth 1"), incorporated in the Cayman Islands, is a wholly-owned subsidiary of Gainsborough. Hartcliffe Limited ("Hartcliffe") is a company incorporated in Gibraltar and is a wholly-owned indirect subsidiary of LBHI.



9. The special purpose vehicles shown above were specifically set up to carry out structured bond and share trades executed by Lehman's Europe Strategic Transaction Group (referred to herein as the "Helsinki Recapitalization", the "Bond Trades" and the "Share Trade"). Some of these transactions that involved external third parties were terminated and

unwound prior to September 15, 2008. The remaining transactions still in place involve only Lehman affiliates. The approximate outstanding intercompany balances among these entities are illustrated in the diagram below.



10.   In the ordinary course of business, if these chapter 11 cases had not commenced, all of the internal trades between the Lehman affiliates would have been unwound at a zero or minimal cost to the companies in the structure, because the cash flows involved in unwinding the internal transactions would have passed through the structure to reduce the intercompany positions between the group companies to a minimal amount or zero. On the unwind of the transactions, the majority of taxes that AB&C would have individually had to pay to the HM Revenue and Customs in England and Wales ("<u>HMRC</u>") would have been significantly reduced by AB&C receiving group tax losses from other members of the Lehman tax group in the form of group tax relief.

11.     As a result of the commencement of these cases, however, some of the group tax losses may not be able to be used by companies incorporated in England and Wales to off set taxable gains.  Thus, HMRC is the only remaining third party creditor in relation to these structured transactions.  Bamburgh estimates it owes approximately €53.5 million, Alnwick estimates it owes approximately €300,000 and Corfeestimates it owes approximately €1 million, to HMRC.

12.     AB&C do not currently have directors in place.  The former directors of each of these entities were Lehman employees who resigned earlier this year.  The latest audited and filed accounts for AB&C are for the financial year ending 2006.  As a result, AB&C are at risk of being struck off the company register in England and Wales by Companies House in England and Wales.  In fact, an advertisement has been placed in the London Gazette by Companies House for the strike-off of Bamburgh.  The strike off and dissolution of Bamburgh will take effect on January 13, 2010 if directors are not appointed and audited accounts are not filed in relation to Bamburgh before this date.

13.     If Bamburgh is struck off the company register, on the date of its dissolution any of its assets will become *bona vacantia*; that is, they will pass to and become the property of the Crown in England and Wales.  The unsecured liabilities of Bamburgh will be extinguished, subject to approval of HMRC as the sole third party creditor of Bamburgh.  Therefore, Alnwick's receivable from LBHI in the amount of approximately €3.7 billion could become the property of the Crown and could be sold to a third party.  In this situation, distributions from LBHI would be kept by the Crown and no funds or benefit would flow back to LBHI.

14. It is possible that HMRC, as a creditor of AB&C, may, alternatively, seek to appoint a liquidator over AB&C. In this situation, the actions of such a liquidator would not necessarily be aligned with the best interests of LBHI, and the liquidator would not necessarily be amenable to working with LBHI to formulate steps to unwind the remaining structured transactions.

15. In order to prevent the "strike off", LBHI proposes that the structured transactions are unwound and liquidators are appointed to Bamburgh, and possibly Alnwick and Corfe, pursuant to the process set out herein prior to January 13, 2010. LBHI believes that the process below is in the best interests of its estate and its creditors.

**The Proposed Steps to Unwind the Remaining Transactions**

16. As preliminary steps to unwind the Helsinki Recapitalization, the Bond Trades and the Share Trade:

   i. 314 Commonwealth Ave Inc. ("314 Commonwealth"), the parent company of AB&C, will appoint directors to AB&C and Lehman Brothers Helsinki Holdings Sarl will appoint directors to Hartcliffe to enter into any relevant documentation for the sole purpose of unwinding these transactions;

   ii. the new directors of Bamburgh will engage prospective liquidators for Bamburgh, and the new directors of Alnwick and Corfe may decide to engage prospective liquidators for Alnwick and Corfe, respectively;

   iii. 314 Commonwealth will resolve to wind up Bamburgh, and may resolve to wind up Alnwick and Corfe; and

   iv. the liquidators for Bamburgh (and Alnwick and Corfe, if appointed) will be formally appointed by the creditors of each company.

17. It is anticipated that the liquidators of Bamburgh and any liquidators of Alnwick and/or Corfe will then formulate unwind steps substantially in the form set out herein,

with approval by the creditors of each company[1] with the relevant Lehman affiliates. The proposed steps are described below.

    i. AB&C, Hartcliffe, Kenilworth 2, Kenilworth 1 and Gainsborough will enter into an agreement or agreements under which any intercompany payables owed by one group company to another will be satisfied through the transfer of the claim or a portion of the claim the relevant group company holds or has acquired against LBHI.

    ii. Corfe will enter into an agreement with LBHI under which Corfe will discharge and release up to approximately €180 million of the amount it owes LBHI in exchange for Corfe agreeing to release and discharge the remaining claim of up to approximately €180 million it has acquired against LBHI.

    iii. Bamburgh and LBHI will enter into an agreement under which Bamburgh will agree to discharge and release the claims of up to approximately €3,360 million it has acquired against LBHI in exchange for LBHI agreeing to discharge and release up to approximately €3,360 million Bamburgh owes to LBHI.

    iv. If required, Bamburgh and LBHI will enter into an agreement under which Bamburgh will agree to discharge and release the claims of up to approximately €1,265 million it has acquired against LBHI in exchange for LBHI agreeing to discharge and release up to approximately €1,265 million Bamburgh owes to LBHI.

    v. At the conclusion of step (iv.):

        A. Alnwick and Corfe will no longer have any assets or liabilities;

        B. Bamburgh will hold a claim against LBHI in the amount of approximately €231 million and a payable to HMRC of approximately €53.5 million;[2] and

        C. Hartcliffe's claim against LBHI will be approximately €130 million. LBHI is the sole creditor of Hartcliffe, therefore any amounts realized on the receivable by Hartcliffe will be paid directly to LBHI.

---

[1] There is a risk that the liquidators may not agree to the procedures outlines herein and may pursue other alternatives. But LBHI and the parties believe that the course outlined herein nonetheless provides the greatest likelihood for reducing claims and maximizing returns to LBHI.

[2] LBHI considered using group tax losses to offset the claim of HMRC, but determined that the tax losses may be more efficiently used by other members in the tax group given that the losses could be used to offset gains on a dollar-for-dollar basis. If the group tax losses were used to offset the tax gains of an insolvent company, such as Bamburgh, where the expected realizations by creditors will only be a percentage of the claim, the group tax relief would not be used in the most efficient manner.

The steps described in this and the preceding paragraphs shall herein be referred to as the "Unwind Steps".

## Relief Requested

18. By this Motion, LBHI seeks entry of an order, pursuant to Bankruptcy Rule 9019, approving LBHI's release and discharge of certain intercompany receivables in return for the forgiveness of certain prepetition claims, in particular, the release and discharge of (a) up to approximately €4,625 million of the outstanding debt under the intercompany unsecured loan facility agreements entered into with Bamburgh in exchange for Bamburgh discharging and releasing in aggregate up to approximately €4,625 million of the claims it will acquire against LBHI, and (b) up to approximately €180 million in outstanding intercompany debt under an unsecured loan facility agreement entered into with Corfe in exchange for Corfe discharging and releasing the claim, up to approximately €180 million, it will acquire against LBHI.

## The Controlling Legal Standard

19. Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). Indeed, courts have long considered compromises to be "a normal part of the process of

reorganization." *TMT Trailer Ferry,* 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

20. The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505; see also *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

21. While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

22. The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert*

*Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

23. Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at lease in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974).

### The Settlements Meets the Legal Standard
### Established Under Rule 9019 and Is in the Bests Interests of LBHI's Estate

24. LBHI believes that the settlements requested in this Motion and the Unwind Steps represents the best method by which LBHI can (a) maximize its recoveries on the debts owed by Bamburgh and Corfe, and (b) enable more funds to be available for payment to other creditors of the Debtor's estate by the discharging of the claims by Alnwick against LBHI in the amount of up to approximately €3,670 millionand by Kenilworth 2 against LBHI in the amount of up to approximately €1,385 million.

25. If the Unwind Steps are not authorized, AB&C may be struck off the register of companies in England and Wales and the claim of approximately €3,670 million which Alnwick holds against LBHI may become the property of the Crown in England and Wales. Recoveries on this claim would be paid to third parties outside the control of Lehman.

Recoveries would not wind their way back to LBHI, as was contemplated when the transactions were initially structured and as would be accomplished by the Unwind Steps.

26. If the settlements requested herein are approved, LBHI will be able to set off its claims against Bamburgh and Corfe against the claims that Bamburgh and Corfe will acquire against LBHI, thereby reducing the amount of claims against LBHI by up to approximately €4.8 billion. LBHI has concluded that the settlements requested herein and the Unwind Steps relating to the structured transactions is in the best interests of LBHI, its estate, its creditors, and all parties in interest.

## Notice

27. No trustee has been appointed in these chapter 11 cases. LBHI has served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. LBHI submits that no other or further notice need be provided.

28. No previous request for the relief sought herein has been made by LBHI to this or any other court.

WHEREFORE LBHI respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: November 25, 2009
      New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**<u>Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                           : Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        : 08-13555 (JMP)
                                                :
                  Debtors.                      : (Jointly Administered)
                                                :
                                                :
------------------------------------------------------------------x

**ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING SETTLEMENTS WITH
BAMBURGH INVESTMENTS (UK) LTD, CORFE INVESTMENTS (UK) LTD**

Upon the motion, dated November 25, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of LBHI's settlements with its affiliates Bamburgh Investments (UK) Ltd ("Bamburgh") and Corfe Investments (UK) Ltd ("Corfe"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative

procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion and the Objection; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted[3]; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the settlements described in the Motion between LBHI and Bamburgh and Corfe are approved; and it is further

ORDERED that LBHI is authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Unwind Steps, or steps substantially in the form of the Unwind Steps, and perform any and all obligations contemplated therein; and it is further

ORDERED that the terms of this Order shall be immediately effective and enforceable upon its entry; it is further

---

[3] Capitalized terms used by not defined shall have the meanings ascribed to them in the Motion.

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2009
       New York, New York

                                              _____
                                              UNITED STATES BANKRUPTCY JUDGE