(xix) Knock-out Event:

[Applicable/Not Applicable]
(*Specify mechanics, such as Knock-out Event, Knock-out Level, Knock-out Determination Day, Knock-out Period Beginning and End Dates, Knock-out Valuation Time*)

25. **Equity-Linked Redemption Provisions**

[Applicable/Not Applicable]
(*If not applicable, delete the remaining sub-paragraphs of this paragraph*)

(i) Share(s):

[   ]

(ii) ISIN of Share(s):

[*Specify*]

(iii) Bloomberg Code:

[*Specify*]

(iv) Provisions for determining Final Redemption Amount where calculated by reference to Share(s):

[*If Cash Settlement applies, insert Calculation Method*]
[*If Trigger Event applies, insert details here*]

(v) Disrupted Day:

[As set out in the Conditions]

(vi) Calculation Agent responsible for calculating the Final Redemption Amount due:

[   ]

[*Address*]

(vii) Provisions for determining Final Redemption Amount where calculation by reference to Share(s) is impossible or impracticable:

[   ]/[As set out in the Conditions]

(viii) Averaging:

Averaging [applies/does not apply] to the Notes. [The Averaging Dates are [   ].]

[In the event that an Averaging Date is a Disrupted Day [Omission/Postponement/Modified Postponement] will apply]

(ix) Strike Date/ Strike Price:

[   ]

(x) Valuation Date(s):

[*Specify*]

(xi) Observation Date(s):

[The Observation Date(s) is/are [   ]/Not Applicable]]

[In the event that an Observation Date is a Disrupted Date/[Omission/Postponement/Modified Postponement] will apply]

(xii) Observation Period:

[*Specify*/Not Applicable]]

(xiii) Scheduled Trading Day:

[As set out in the Conditions]/[Per Share Basis]

(xiv) Exchange(s):

[   ]

(xv) Related Exchange(s):

[*Specify*/All Exchanges]

(xvi) Weighting:

[Not Applicable/*specify*]

(xvii) Valuation Time:

[As set out in the Conditions]/[*Specify*]

(xviii) Additional Disruption Events:

(a)    [The following Additional Disruption Events apply to the Notes:]

*(Specify each of the following which applies.)*

[Change in Law]

[Hedging Disruption]

[Failure to Deliver due to Illiquidity]
*(N.B. Only applicable in the case of Physical Delivery Notes - Failure to Deliver due to Illiquidity is applicable to certain Share Linked Notes. Careful consideration should be given to whether Failure to Deliver due to Illiquidity would apply to other Physical Delivery Notes).*

(b)     [[The Trade Date is [    ].]

(N.B. only applicable if Change in Law is applicable)]

(xix)   Knock-in Event:     [Applicable/Not Applicable]
*(Specify mechanics, such as Knock-in Event, Knock-in Price, Knock-in Determination Date, Knock-in Period Beginning and End Dates, Knock-in Valuation Time)*

(xx)    Knock-out Event:     [Applicable/Not Applicable]
*(Specify mechanics, such as Knock-out Event, Knock-out Price, Knock-out Determination Date, Knock-out Period Beginning and End Dates, Knock-out Valuation Time)*

26    **Physical Settlement:**     [Applicable]/[Not Applicable][If Physical Settlement applies[1], Condition 25 applies]

(i)     Physical Settlement Amount per Note:     *[give details]*

(ii)    Number of Shares     [    ]

27.    **Final Redemption Amount of each Note:**     [[    ] per Calculation Amount

[In cases where the Final Redemption Amount is other variable-linked:

(i)     Formula/variable:     [give or annex details]

(ii)    Calculation Agent responsible for determining the Final Redemption Amount:     [    ]

(iii)   Provisions for determining Final Redemption Amount where calculated by reference to Formula and/or other variable:     [    ]

(iv)    Provisions for determining Final Redemption Amount where calculation by reference to Formula and/or other variable is impossible or impracticable or otherwise disrupted:     [    ]

---

1       In the event that the Notes provide for physical settlement involving equity securities of U.S. issuers, the relevant Shares may not include "restricted securities" within the meaning of Rule 144 under the Securities Act.

| | | | |
|---|---|---|---|
| (v) | Payment Date: | [    ] | |
| (vi) | Minimum Final Redemption Amount: | [    ] per Calculation Amount | |
| (vii) | Maximum Final Redemption Amount: | [    ] per Calculation Amount | |

28. **Early Redemption Amount of each Note**    [    ]

Early Redemption Amount(s) per Calculation Amount payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in the Conditions):

29. **Mandatory Early Redemption** (Condition 8(j)):

[Applicable / Not Applicable]
(*If not applicable, delete the remaining subparagraphs of this paragraph*)

(i) Mandatory Early Redemption Event:

[*Specify* / [    ] is [greater than/greater than or equal to/less than/less than or equal to/the Mandatory Early Redemption [Price(s)/Level(s)] as of [the/any] Mandatory Early Redemption Valuation Date]

(ii) Mandatory Early Redemption [Price(s)/Level(s)]:

[*give details*]

(iii) Mandatory Early Redemption Date(s):

[*specify date(s)*] [or if such day is not a Business Day the immediately [succeeding/preceding] Business Day [unless it would thereby fall into the next calendar month, in which event it will be brought forward to the immediately preceding Business Day].

(iv) Mandatory Early Redemption Valuation Date(s):

[*specify date(s)*]

(v) Mandatory Early Redemption Rate(s):    [*give details*]

(vi) Other terms relating to the method of calculating the Mandatory Early Redemption Amount, if different from those set out in the Conditions:

[Not Applicable / *give details*]

## GENERAL PROVISIONS APPLICABLE TO THE NOTES

30. Form of Notes:

[*In the case of Notes issued by LBHI*]

[Bearer form. Interests in a temporary global Note will be exchangeable for, at the request of each Holder (with respect to its own Notes in bearer form), definitive Notes in bearer form.]

[Bearer form. Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form. Interests in a permanent global Note will be exchangeable for, at the request of each Holder (with respect to its own Notes in bearer form), definitive Notes in bearer form.]

[Registered form. Interests in a global Note in registered form will be exchangeable for definitive Notes in registered form in the limited circumstances described in the global Note. Definitive Notes in registered form will [not] be exchangeable for interests in a global Note in registered form.]

[Australian/New Zealand Domestic Notes in registered, uncertificated and dematerialised book-entry form]

[*In the case of Notes issued by LBTCBV or LBB*]

[Bearer form. Interests in a temporary global Note will be exchangeable for definitive Notes in bearer form.]

[Bearer form. Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form. Interests in a permanent global Note will be exchangeable for definitive Notes in bearer form in the limited circumstances described in the permanent global Note.]

[Registered form. Interests in a global Note in registered form will be exchangeable for definitive Notes in registered form in the limited circumstances described in the global Note. Definitive Notes in registered form will [not] be exchangeable for interests in a global Note in registered form.]

[Australian/New Zealand Domestic Notes in registered, uncertificated and dematerialised book-entry form]

[*Australian Domestic Notes and New Zealand Domestic Notes can not be issued by LBB*]

[*In the case of [Danish/Finnish/Norwegian/Swedish] Notes*] The Notes are [Danish/Finnish/Norwegian/Swedish] Notes and are in uncertificated and dematerialised book-entry form.

31.    New Global Note Form:    [Applicable /Not Applicable][4]

32.    Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature):    [Yes/No/Not Applicable. *If yes, give details*]

---

4.    If "Not Applicable" is specified here ensure that "Not Applicable" is specified for Eurosystem eligibility in the relevant paragraph of section 9 of Part B of the Final Terms and if "Applicable" is specified here enure that the appropriate specification is made in respect of Eurosystem eligibility in the relevant paragraph of section 9 of Part B of the Final Terms.

33.   Details relating to Partly Paid Notes:                    [Not Applicable/*give details*]
      amount of each payment comprising the
      Issue Price and date on which each
      payment is to be made and consequences
      (if any) of failure to pay, including any
      right of the Issuer to forfeit the Notes and
      interest due on late payment:

34.   Details relating to Instalment Notes:                     [Not Applicable/*give details*]
      Instalment Amounts and Instalment Dates:

35.   Details relating to Extendible Notes:                     [Not Applicable/Condition 4[(a)/(b)] applies – give
                                                                details (*see Condition 4* (*Extendible Notes*))]

36.   Consolidation provisions:                                 [Not Applicable/The provisions [in Condition 18
                                                                (Further Issues of Notes)] [annexed to these Final
                                                                Terms] apply]

37.   Other final terms:                                        [Not Applicable/*give details*]
                                                                (*When adding any other final terms consideration
                                                                should be given as to whether such terms constitute
                                                                "significant new factors" and consequently trigger
                                                                the need for a supplement to the Base Prospectus
                                                                under Article 16 of the Prospectus Directive.*)

**DISTRIBUTION**

38.   (i)    If syndicated, names [and addresses]              [Not Applicable/*give names, addresses and
             of Managers [and underwriting                    underwriting commitments*]
             commitments]:                                     (*Include names and addresses of entities agreeing to
                                                                underwrite the issue on a firm commitment basis and
                                                                names and addresses of the entities agreeing to place
                                                                the issue without a firm commitment or on a "best
                                                                efforts" basis if such entities are not the same as the
                                                                Managers.*)

      (ii)   Date of Syndicated Trade Agreement:   [    ]

      (iii)  Stabilizing Manager (if any):                     [Not Applicable/*give name, addresses and
                                                                underwriting commitments*]

39.   If non-syndicated, name and address                     [Not Applicable/*give name and address*]
      of Dealer:

40.   Total commission and concession:                         [    ] per cent. of the Aggregate Nominal Amount

41.   Selling restrictions:

      (i)    Additional Selling Restrictions:                  [Not Applicable/*give details*]

42.   Non-exempt Offer:                                        [Not Applicable] [An offer of the Notes may be made
                                                                by the Managers [and [*specify, if applicable*]] other
                                                                than pursuant to Article 3(2) of the Prospectus
                                                                Directive in [*specify relevant Member State(s) - which
                                                                must be jurisdictions where the Base Prospectus and
                                                                any supplements have been approved or passported*]
                                                                ("**Public Offer Jurisdictions**") during the period
                                                                from [*specify date*] until [*specify date*] ("**Offer
                                                                Period**"). See further Paragraph 10 of Part B below.

**PURPOSE OF FINAL TERMS**

These Final Terms comprise the final terms required for issue [and] [public offer in the Public Offer Jurisdictions] [and] [admission to trading on [*specify relevant regulated market*] of the Notes described herein pursuant to the U.S.$100,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.]

**RESPONSIBILITY**

The Issuer accepts responsibility for the information contained in these Final Terms. [[*Relevant third party information*] has been extracted from [*specify source*]. The Issuer confirms that such information has been accurately reproduced and that, so far as it is aware, and is able to ascertain from information published by [*specify source*], no facts have been omitted which would render the reproduced inaccurate or misleading.]

Signed on behalf of the Issuer:

By:    ...................................................................
       Duly authorised

73

**PART B – OTHER INFORMATION**

1.   **LISTING**

      (i)    Listing:                      [The Irish Stock Exchange/The Singapore Exchange Securities Trading Limited/The Australian Stock Exchange/ other (*specify*)/ None]

      (ii)   Admission to Trading:       [Application has been made for the Notes to be admitted to listing and/or trading on [the Official List of the regulated Irish Stock Exchange and to trading on its regulated market]/[the alternative securities market of the Irish Stock Exchange]/ [the Australian Stock Exchange]/ [other (*specify*)]/ with effect from [·]/ Not Applicable]

                                       No assurance can be given as to whether or not or when such application for listing/admission to trading will be granted.

                                       (*Where documenting a fungible issue need to indicate that original securities are already admitted to trading.*)

      [(iii)   Cost of admission to trading]

2.   **RATINGS**

      Ratings:                      The Program has been rated:

| | |
|---|---|
| **Standard & Poor's** | |
| Senior Debt (Long Term) | [   ] |
| Subordinated Debt | [   ] |
| Short Term Debt | [   ] |
| **Moody's** | |
| Senior Debt (Long Term) | [   ] |
| Subordinated Debt | [   ] |
| Short Term Debt | [   ] |
| **Fitch** | |
| Senior Debt (Long Term) | [   ] |
| Subordinated Debt | [   ] |
| Short Term Debt | [   ] |

3.   **[INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

Need to include a description of any interest, including conflicting ones, that is material to the issue/offer, detailing the persons involved and the nature of the interest. May be satisfied by inclusion of the following statement:

"Save as discussed in "Subscription and Sale", so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer."]

[(*When adding any other description, consideration should be given as to whether such matters described constitute "significant new factors" and consequently trigger the need for a supplement to the Prospectus under Article 16 of the Prospectus Directive.*)]

4.   **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES***

      [(i)    Reasons for the offer:

*(See "Use of Proceeds" wording in the Base Prospectus – if reasons for offer differ from making profit and or hedging certain risks will need to include those reasons here)]*

[(ii)]    Estimated net proceeds:                [    ]

[(iii)]   Estimated total expenses:               [    ] *[Include breakdown of expenses]*

*(If the Notes are derivative securities to which Annex XII of the Prospectus Directive Regulation applies it is only necessary to include disclosure of net proceeds and total expenses at (ii) and (iii) above where disclosure is included at (i) above.)*

5.    **YIELD (Fixed Rate Notes only)**

Indication of yield:                          [    ]

Calculated as *[include method of calculation in summary form]* on the Issue Date.*

As set out above, the yield is calculated at the Issue Date on the basis of the Issue Price. It is not an indication of future yield.]

6.    **HISTORIC INTEREST RATES (Floating Rate Notes only)**

Details of historic [LIBOR/EURIBOR/other] rates can be obtained from [Reuters].]*

7.    **PERFORMANCE OF INDEX/ FORMULA/ OTHER VARIABLE, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS AND OTHER INFORMATION CONCERNING THE UNDERLYING (Index-linked or other variable Linked Notes only)**

*Need to include details of where past and future performance and volatility of the index/formula/other variable can be obtained and a clear and comprehensive explanation of how the value of the investment is affected by the underlying and the circumstances when the risks are most evident. [Where the underlying is an index need to include the name of the index and a description if composed by the Issuer and if the index is not composed by the Issuer need to include details of where the information about the index can be obtained. Where the underlying is a security need to include the name of the issuer of the security and the ISIN code. Where the underlying is an interest rate need to include a description of the interest rate. Where the underlying is a basket of underlyings need to include the relevant weightings of each underlying in the basket. Where the underlying is not any of the above need to include equivalent information.*]

*[Where Annex XII of the Prospectus Directive applies, include a description of: how any return on the derivative securities takes place, the payment or delivery date and the way such return is calculated, the type of underlying and details of where relevant information can be obtained, any market disruption or settlement disruption event and any adjustment rules with relation to events concerning the underlying.]*

*[(When completing this paragraph, consideration should be given as to whether such matters described constitute "significant new factors" and consequently trigger the need for a supplement to the Prospectus under Article 16 of the Prospectus Directive.)]*

The Issuer [intends to provide post-issuance information [*specify what information will be reported and where it can be obtained*]] [does not intend to provide post-issuance information].

---

*          Not required for Notes with a denomination per unit of at least €50,000.

8. **PERFORMANCE OF RATE[S] OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (Dual Currency Notes only)**

*[Need to include details of where past and future performance and volatility of the relevant rate[s] can be obtained [and a clear and comprehensive explanation of how the value of the investment is affected by the underlying and the circumstances when the risks are most evident.\*]*

*[(When completing this paragraph, consideration should be given as to whether such matters described constitute "significant new factors" and consequently trigger the need for a supplement to the Prospectus under Article 16 of the Prospectus Directive.)]*

9. **OPERATIONAL INFORMATION**

| | |
|---|---|
| ISIN Code: | [  ] |
| Common Code: | [  ] |
| CUSIP No.: | [  ] |
| New Global Note intended to be held in a manner which would allow Eurosystem eligibility: | [Not Applicable*/Yes/No] |

Note that the designation "Yes" simply means that the Notes are intended upon issue to be deposited with Euroclear or Clearstream, Luxembourg as common safekeeper and does not necessarily mean that the Notes will be recognised as eligible collateral for Eurosystem monetary policy and intra-day credit operations by the Eurosystem either upon issue or at any or all times during their life. Such recognition will depend upon an appropriate application being made and upon satisfaction of the Eurosystem eligibility criteria.] To check whether an application has been successfully made see the following page on the website of the European Central Bank *[insert URL]* *[Include this text if "Yes" selected in which case the Notes must be issued in NGN form]*

| | |
|---|---|
| Any clearing system(s) other than DTC, Euroclear and Clearstream, Luxembourg and the relevant identification number(s): | [Not Applicable/*give name(s) and number(s)*] |
| Delivery: | Delivery [against/free of] payment |
| The Aggregate Nominal Amount of Notes issued has been translated into U.S. Dollars at the rate of [  ]=$[  ] producing a sum of (for Notes not denominated in U.S. Dollars): | $[  ] |
| Names and addresses of Additional Paying Agent(s) (if any): | [  ] |

[In the case of Australian Domestic Notes:

| | |
|---|---|
| (i)    Notes to be listed on the Australian Stock Exchange: | [Yes/No] |

---

\*        Not required for Notes with a denomination per unit of at least €50,000.

| (ii) | Agent for service of process in New South Wales: | [    ] of [address] |
|------|---|---|
| (iii) | Transfer restrictions: | Transfers of Australian Domestic Notes are restricted as provided by Condition 1(j) (Australian Domestic Notes). |
| (iv) | Australian Registrar: | [    ] of [*address*] |
| (v) | Australian Administration Agent: | [[    ] (see Condition 7(i) (Payments in respect of Australian Domestic Notes))/Not required] |

The Notes will be eligible for lodgement into the Austraclear System. Distributions of principal and interest with respect to Notes held through the Austraclear System will be credited to the cash accounts of members of the Austraclear System in accordance with the regulations and the operating manual applicable to the Austraclear System.

Interests in the Notes may be held through Euroclear and Clearstream, Luxembourg indirectly through institutions which are participants in Euroclear and Clearstream, Luxembourg. In such circumstances, Westpac Custodian Nominees Limited (as nominee of, or another nominee appointed by, Euroclear) or ANZ Nominees Limited (as nominee of, or another nominee appointed by, Clearstream, Luxembourg) would hold the interests in the Notes in the Austraclear System. Austraclear Limited will be inscribed as the Holder of such Notes and will therefore be treated by the Issuer and the Australian Registrar as the absolute owner of such Notes for all purposes.

The Issuer will not be responsible for the operation of the clearing arrangements which is a matter for the clearing institutions, their participants and the investors.]

[In the case of New Zealand Domestic Notes:

(i)    Agent for service of process in New South Wales: [    ] of [*address*]

(ii)   Transfer restrictions: Transfers of New Zealand Domestic Notes are restricted as provided by Condition 1(j) (New Zealand Domestic Notes)

(iii)  New Zealand Registrar: [    ] of [*address*]

The Notes will be eligible for lodgement into the Austraclear New Zealand System. Trading of Notes and distributions of principal and interest with respect to Notes held through the Austraclear New Zealand System takes place in accordance with the Austraclear New Zealand Regulations, meaning the rules issued by the Reserve Bank of New Zealand or its successor from time to time and includes the Austraclear New Zealand operating guidelines published by the Reserve Bank of New Zealand, any documentation or advice which is expressly stated to form part of such rules and guidelines, all schedules and appendices of the foregoing, and all amendments or new versions.

Interests in the Notes may be held through Euroclear and Clearstream, Luxembourg indirectly through institutions which are participants in Euroclear and Clearstream, Luxembourg. In such circumstances, entitlements in respect of such Notes would be held through respective New Zealand sub-custodians (being HSBC Nominees Limited as sub-custodian of, or another sub-custodian appointed by, Euroclear or ANZ Nominees Limited as sub-custodian of, or another sub-custodian appointed by, Clearstream, Luxembourg) which in turn would hold such interests in the names of the New Zealand sub-custodians on the books of New Zealand Central Securities Depository Limited. New Zealand Central Securities Depository Limited would be registered as the Holder of such Notes.

The Issuer will not be responsible for the operation of the clearing arrangements which is a matter for the clearing institutions, their participants and the investors.]

---

5.    Specify "Not Applicable" if the Notes being issued are Classic Global Notes/CGNs.

10.    **TERMS AND CONDITIONS OF THE OFFER**

| | |
|---|---|
| Offer Price: | [Issue Price][*specify*] |
| Conditions to which the offer is subject: | [Not Applicable/*give details*] |
| Description of the application process: | [Not Applicable/*give details*] |
| Description of possibility to reduce subscriptions and manner for refunding excess amount paid by applicants: | [Not Applicable/*give details*] |
| Details of the minimum and/or maximum amount of application: | [Not Applicable/*give details*] |
| Details of the method and time limits for paying up and delivering the Notes: | [Not Applicable/*give details*] |
| Manner in and date on which results of the offer are to be made public: | [Not Applicable/*give details*] |
| Procedure for exercise of any right of pre-emption, negotiability of subscription rights and treatment of subscription rights not exercised: | [Not Applicable/*give details*] |
| Categories of potential investors to which the Notes are offered and whether tranche(s) have been reserved for certain countries: | [Not Applicable/*give details*] |
| Process for notification to applicants of the amount allotted and the indication whether dealing may begin before notification is made: | [Not Applicable/*give details*] |
| Amount of any expenses and taxes specifically charged to the subscriber or purchaser: | [Not Applicable/*give details*] |
| Name(s) and address(es), to the extent known to the Issuer, of the placers in the various countries where the offer takes place: | [None/*give details*] |

## TERMS AND CONDITIONS OF THE NOTES

*The following are the Terms and Conditions of the Notes which will be incorporated by reference in each temporary or permanent global Note in bearer form, each global Note in registered form and will be attached to each definitive Note, in the latter case, only if permitted by the relevant stock exchange or other relevant authority (if any) and agreed by the relevant Issuer and the relevant Dealer(s) at the time of issue but if not so permitted and agreed, such Terms and Conditions will be endorsed upon such definitive Note. The applicable Final Terms in relation to any Tranche of Notes may specify other terms and conditions which shall, to the extent so specified or to the extent inconsistent with such Terms and Conditions, replace or modify the following Terms and Conditions for the purpose of such Notes. The applicable Final Terms or the relevant provisions thereof will be incorporated by reference in each temporary or permanent global Note and each global Note in registered form and endorsed on each definitive Note. Reference should be made to "Form of the Notes" above for a description of the content of Final Terms which will include the definitions of certain terms used in the following Terms and Conditions or specify which of such terms are to apply in relation to the relevant Notes.*

This Note is one of a Series of Notes (the "*Notes*") issued and to be issued pursuant to the Amended and Restated Fiscal Agency Agreement dated July 24, 2008 (as amended, supplemented or replaced from time to time, the "*Fiscal Agency Agreement*") between, amongst others, Lehman Brothers Holdings Inc., a Delaware corporation ("*LBHI*"), Lehman Brothers Treasury Co. B.V., incorporated in The Netherlands as a private company with limited liability ("*LBTCBV*"), Lehman Brothers Bankhaus AG a company incorporated in the Federal Republic of Germany ("*LBB*"), The Bank of New York Mellon, acting through its London Branch, as fiscal agent (the "*Fiscal Agent*", which expression shall include any successor fiscal agent) and as principal paying agent (the "*Principal Paying Agent*"), The Bank of New York Mellon, acting through its New York branch, as registrar (the "*Registrar*"), exchange agent making payments in the case of Notes registered in the name of a nominee of DTC that are denominated in currency other than U.S. Dollars (the "*Exchange Agent*") and the U.S. sub-paying agent (the "*U.S. Sub-Paying Agent*") (together with the Fiscal Agent in its capacity as Principal Paying Agent, the "*Paying Agents*", which expression shall include any additional or successor paying agents). Unless otherwise specified in the applicable Final Terms, The Bank of New York Mellon shall act as calculation agent (The Bank of New York Mellon, or any other or additional calculation agent appointed from time to time by the Issuer, which may include any of the Dealers, the "*Calculation Agent*") for purposes of determining, among other things, the interest rates on Floating Rate Notes, pursuant to the terms of a calculation agency agreement (the "*Calculation Agency Agreement*") agreed to by the relevant Issuer, the Guarantor (if applicable) and the relevant Calculation Agent. The Notes (other than Australian Domestic Notes) have the benefit of a deed of covenant (as amended, supplemented or replaced from time to time, the "*Deed of Covenant*") dated July 24 2008, executed by the Issuers.

The Notes are to be issued by LBHI (such Notes, including when acting through its London Branch "*LBHI Notes*") or LBTCBV ("*LBTCBV Notes*") or LBB (including when acting through its London Branch) ("*LBB Notes*"). The applicable Final Terms will specify which of LBHI, LBTCBV or LBB is the Issuer (the "*Issuer*"). Each LBTCBV Note or LBB Note (as the case may be) shall have the benefit of an unconditional guarantee of LBHI (in such capacity, the "*Guarantor*") as to, inter alia, the payment of principal (including premium, if any, and in the case of Zero Coupon Notes (as hereafter defined), the Accrual Yield Amount (as hereafter defined) payable in respect thereof) and interest, if any, in respect thereof, as evidenced by guarantees in respect of each of LBTCBV and LBB (in respect of each such Note, the "*Guarantee*", and together the "*Guarantees*") each dated July 24, 2008 as amended or supplemented from time to time, among the Guarantor and the third parties referred to therein.

Interest bearing definitive Notes in bearer form (unless otherwise indicated in the applicable Final Terms) have interest coupons ("*Coupons*") and, if indicated in the applicable Final Terms, talons for further Coupons ("*Talons*") attached on issue. Any reference herein to Coupons shall, unless the context otherwise requires, be deemed to include a reference to Talons. Definitive Notes in bearer form repayable in instalments have receipts ("*Receipts*") for the payment of the instalments of principal (other than the final instalment) attached on issue.

The Final Terms in relation to this Note or the relevant provisions thereof is attached hereto, or is endorsed hereon and supplements these Terms and Conditions and may specify other terms and conditions which shall, to the extent so specified or to the extent inconsistent with these Terms and Conditions, replace or modify these Terms and Conditions. References herein to the "*applicable Final Terms*" are to the Final Terms or the relevant provisions thereof attached hereto or endorsed hereon.

As used herein, "*Series*" means each original issue of Notes together with any further issues expressed to form a single series with the original issue which are issued by the same Issuer and which are denominated in the same currency and which have the same Maturity Date, Interest Basis and interest payment dates (if any) (all as indicated in the applicable Final Terms) and the terms of which (except for the Issue Date, the Interest Commencement Date and/or the Issue Price (as indicated as aforesaid)) are otherwise identical (including whether or not the Notes are listed). As used herein, "*Tranche*" means all Notes of the same Series with the same Issue Date, Issue Price and Interest Commencement Date.

Copies of the Fiscal Agency Agreement, the form of Final Terms and each Calculation Agency Agreement are available for inspection and copies of each Final Terms are obtainable at the specified offices of the Fiscal Agent and each of the other Paying Agents, save that a Final Terms relating to an unlisted Note of any Series will only be available for inspection by a Noteholder holding one or more unlisted Notes of that Series and such Noteholder must produce evidence satisfactory to the relevant Paying Agent as to his identity. The holders of the Notes (the "*Noteholders*" or the "*Holders*", which expression shall, in relation to any registered Notes and any Notes represented by a global Note, be construed as provided in Condition 1 (Form and Transfer) below), the holders of the Receipts (the "*Receiptholders*") and the holders of the Coupons (the "*Couponholders*", which expression shall, unless the context otherwise requires, include the holders of the Talons (the "*Talonholders*")) are deemed to have notice of, and are entitled to the benefit of, all the provisions of the Fiscal Agency Agreement, the relevant Deed Poll (if applicable), the relevant Calculation Agency Agreement, if any, and the applicable Final Terms, which are binding on them. The Deed of Covenant is held by the Fiscal Agent and the Bank of New York Mellon, acting through its New York Branch as registrar (the "*Registrar*").

Words and expressions defined in the Fiscal Agency Agreement or used in the applicable Final Terms (which term as used herein means, in relation to this Note, the Final Terms attached hereto) shall have the same meanings where used in these Terms and Conditions unless the context otherwise requires or unless otherwise stated.

## 1.    Form and Transfer

(a)    *Form.* The Notes are either in bearer form or in registered form and, in the case of definitive Notes, serially numbered in the Specified Currency or Currencies and the Specified Denomination(s). This Note is a Senior Note or a Subordinated Note, as indicated in the applicable Final Terms. Notes of one Specified Denomination may not be exchanged for Notes of another Specified Denomination.

(b)    *Interest; Instalment Basis.* This Note is a Fixed Rate Note, a Floating Rate Note, a Zero Coupon Note, an Index-Linked Redemption Amount Note, an Index-Linked Interest Note, a Dual Currency Note or an Extendible Note (each as hereafter defined), depending upon the Interest Basis shown in the applicable Final Terms. If so indicated in the applicable Final Terms, this Note may combine any of the foregoing at any one time or may be one or more of the foregoing types of Note for one part of its term and one or more other of the foregoing types for another part of its term. If so indicated in the applicable Final Terms, this Note is also a Partly Paid Note and/or an Instalment Note.

(c)    *Coupons attached.* Bearer Notes in definitive form are issued with Coupons attached, unless they are Zero Coupon Notes in which case reference to Coupons and Couponholders in these Terms and Conditions are not applicable.

(d)    *Transfer of Bearer Notes.* For so long as any Notes are represented by a temporary or permanent global Note in bearer form (i) such Notes will be transferable in accordance with the rules and procedures for the time being of Clearstream Banking, société anonyme, Luxembourg ("*Clearstream, Luxembourg*") and/or Euroclear Bank SA/NV ("*Euroclear*") as the case may be, and (ii) each person

(other than Euroclear or Clearstream, Luxembourg) who is for the time being shown in the records of Clearstream, Luxembourg and/or Euroclear, as the case may be, as the owner of a particular nominal amount of such Notes (in which regard any certificate or other document issued by Clearstream, Luxembourg and/or Euroclear, as the case may be, as to the nominal amount of Notes standing to the account of any person shall be conclusive and binding for all purposes except in the case of manifest error) shall be treated by the Issuer, the Guarantor (if applicable), the Fiscal Agent, and any Paying Agent as a Holder of such nominal amount of Notes (and the term "*Holder*" shall be construed accordingly) for all purposes other than with respect to the payment of principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount (as herein defined) payable in respect thereof) and interest, if any, and any other amounts payable, on such Notes, the right to which shall be vested, as against the Issuer, the Guarantor (if applicable), the Fiscal Agent and any Paying Agent, solely in the bearer of the temporary or permanent global Note or solely in the common depositary for Euroclear and Clearstream, Luxembourg or its nominee as the Registered Holder (as defined below) of the global Note in registered form in accordance with and subject to its terms and the Fiscal Agency Agreement. References to Euroclear and/or Clearstream, Luxembourg shall, whenever the context so permits, be deemed to include a reference to any additional or alternative clearing system approved by the Issuers and the Agent. The term "*Holder*" shall also include the bearer of a definitive Note in bearer form.

(e)   *Title to Definitive Notes.* Title to definitive Notes in bearer form, Coupons, Receipts and Talons will pass by delivery. The Issuer, the Guarantor (if applicable), the Fiscal Agent and any Paying Agent may (except as ordered by a court of competent jurisdiction or as required by applicable law) deem and treat the bearer of any definitive Note in bearer form, Couponholder, Receiptholder, or Talonholder as the owner thereof for all purposes (notwithstanding any notice of ownership given or any writing thereon made by anyone) whether or not such definitive Note in bearer form or Coupon, or any Coupon to which any Talon appertains, or Receipt shall be overdue.

(f)   *Note register.* The Registrar shall maintain the Note register in which shall be recorded the names and addresses of Holders of global and definitive Notes in registered form, the numbers of the Notes and other details with respect to issuance, transfer and exchange of such Notes.

(g)   *Transfer of Registered Notes.* All Notes in registered form presented for registration of transfer shall be surrendered to the Registrar at its specified office or at the specified office of any Paying Agent, duly endorsed or accompanied by a written instrument of transfer, in a form satisfactory to the relevant Issuer and the Registrar, duly executed by the Holder thereof or his attorney duly authorised in writing. Upon satisfaction of the above requirements for registration of transfer, and subject to such reasonable and customary regulations as the relevant Issuer may from time to time prescribe, the Registrar shall authenticate and deliver to the transferee or send by mail (at the risk of the transferee) to such address as the transferee may request, definitive Notes in registered form in the name of such transferee, for the same aggregate principal amount as shall have been transferred. Subject to any applicable requirements for minimum denomination, in the case of the transfer of any definitive Note in registered form in part the Registrar shall also authenticate and deliver to the transferor or send by mail (at the risk of the transferor) to such address as the transferor may request, definitive Notes or Notes in registered form registered in the name of the transferor, for the aggregate principal amount that was not transferred.

(h)   *Sums payable on Transfer.* No service charge shall be made for any registration of transfer. However, in connection with any such registration of transfer the relevant Issuer may require payment of a sum sufficient to cover any applicable stamp, tax or any other governmental charge that may be imposed.

(i)   *Owner of Registered Notes.* Prior to satisfaction of the applicable requirements for registration of transfer, the relevant Issuer, the Guarantor (if applicable), the Fiscal Agent, the Registrar and each Paying Agent may (except as ordered by a court of competent jurisdiction or as required by applicable law) deem and treat the Holder of any registered Note as the absolute owner of such Note for the purpose of receiving payment of the principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, on such Note

and for all other purposes whatsoever whether or not such Note shall be overdue, and none of such Issuer, the Guarantor (if applicable), the Fiscal Agent, the Registrar or any Paying Agent shall be affected by notice to the contrary. No person shall have any right to enforce any term or condition of any Note under the Contracts (Rights of Third Parties) Act 1999.

2.    **Status of Notes and Guarantees**

(a)    *Status of Senior Notes and Senior Guarantees*

The Senior Notes and the Senior Guarantees will constitute direct, unconditional and (subject to the provisions set forth below in Condition 11 (Negative Pledge with respect to Senior Notes) and in the Fiscal Agency Agreement) unsecured obligations of the Issuer and the Guarantor, respectively, and will rank pari passu in right of payment among the Notes of such Issuer and the Guarantees, respectively, prior to the equity securities of the Issuer and the Guarantor (if applicable) and equally with all other unsecured and unsubordinated obligations of the Issuer and the Guarantor (if applicable) (subject, in the event of insolvency, to laws affecting creditors' rights generally).

*(b)    Status of Subordinated Notes and Subordinated Guarantees*

If the Notes and Guarantees are Subordinated Notes and Subordinated Guarantees, the Subordinated Notes and Subordinated Guarantees and (if applicable) the relative Coupons are direct, unsecured and subordinated obligations of the Issuer and the Guarantor (if applicable), respectively and rank pari passu among themselves and *pari passu* with all other present and future unsecured, unconditional and subordinated indebtedness of such Issuer and the Guarantor (if applicable), respectively.

The Notes and the Guarantees constituting part of the subordinated debt of an Issuer and Guarantor, respectively (the "*Subordinated Debt*"), will be subordinate and junior in the right of payment, to the extent and in the manner set forth in Conditions 2(b), 2(c) (*Status of LBHI Subordinated Notes*) and 10(a)(x) (*Events of Default*), to all present or future Senior Debt. "*Senior Debt*" is defined to mean (a) any indebtedness for money borrowed or evidenced by bonds, notes, debentures or similar instruments, (b) any indebtedness under capitalized leases, (c) any indebtedness representing the deferred and unpaid purchase price of any property or business, and (d) all deferrals, renewals, extensions and refundings of any such indebtedness or obligation; except that the following does not constitute Senior Debt: (i) indebtedness evidenced by the Subordinated Debt, and (ii) indebtedness which is expressly made equal in right of payment with the Subordinated Debt or subordinate and subject in right of payment to the Subordinated Debt. Additionally, in the case of LBHI, the following also does not constitute Senior Debt: (x) indebtedness for goods or materials purchased in the ordinary course of business or for services obtained in the ordinary course of business or indebtedness consisting of trade payables or (y) indebtedness which is subordinated to any obligation of LBHI of the type specified in clauses (a) through (d) above. The effect of clause (y) is that LBHI may not issue or assume any indebtedness for money borrowed which is junior to the Senior Debt and senior to the Subordinated Debt. The Fiscal Agency Agreement does not limit the amount of Senior Debt or other indebtedness that may be issued.

Subordinated Notes issued by LBTCBV will be subordinated and junior in right of payment to the prior payment in full of all Senior Creditors of LBTCBV. "*Senior Creditors*" means all unsubordinated creditors of LBTCBV and all subordinated creditors of LBTCBV whose claims against LBTCBV rank or are expressed to rank ahead of the claims of the Holders of Subordinated Notes.

In respect to Subordinated Notes (Tier 2) issued by LBB, the following provisions will apply:

In the event of the dissolution, liquidation, insolvency, composition or other proceedings for the avoidance of insolvency of, or against, LBB, such obligations will be subordinated to the claims of all unsubordinated creditors of LBB so that in any such event no amounts shall be payable under such obligations until the claims of all unsubordinated creditors of LBB shall have been satisfied in full. No Holder may set off his claims arising under the Notes against any claims of LBB. No security of

whatever kind is, or shall at any time be, provided by LBB or any other person securing rights of the Holders under such Notes. No subsequent agreement may limit the subordination pursuant to the provision set out in this Condition 2 or amend the Maturity Date in respect of the Notes to any earlier date or shorten any applicable notice period (*Kündigungsfrist*). If the Notes are redeemed before the Maturity Date otherwise than in the circumstances described in this Condition 2 or as a result of an early redemption according to Condition 5 (2) or repurchased by LBB otherwise than in accordance with the provisions of § 10 (5a) sentence 6 of the German Banking Act (*Kreditwesengesetz*), then the amounts redeemed or paid must be returned to LBB irrespective of any agreement to the contrary unless the amounts paid have been replaced by other liable capital (*haftendes Eigenkapital*) of at least equal status within the meaning of the German Banking Act, or the German Financial Supervisory Authority (*Bundesanstalt für Finanzdienstleistungsaufsicht*) has consented to such redemption or repurchase.

In respect to Subordinated Notes (Tier 3) issued by LBB, the following provisions will apply:

In the event of the dissolution, liquidation, insolvency, composition or other proceedings for the avoidance of insolvency of, or against, LBB, such obligations will be subordinated to the claims of all unsubordinated creditors of LBB so that in any such event no amounts shall be payable under such obligations until the claims of all unsubordinated creditors of LBB shall have been satisfied in full. No Holder may set off his claims arising under the Notes against any claims of LBB. No security of whatever kind is, or shall at any time be, provided by LBB or any other person securing rights of the Holders under such Notes. No payment in respect of the Notes (whether of principal, interest or otherwise) may be made by LBB if such payment would have the consequences that the own funds (*Eigenmittel*) of LBB would no longer meet the statutory requirements applicable from time to time, any payment made in violation of the foregoing must be repaid to LBB irrespective of any agreement to the contrary. No subsequent agreement may limit the subordination pursuant to the provisions set out in this Condition 2 or change the Maturity Date in respect of the Notes to any earlier date or shorten any applicable notice period (*Kündigungsfrist*). If the Notes are redeemed before the Maturity Date otherwise than in the circumstances described in this Condition 2 or repurchased by LBB otherwise than in accordance with the provisions of § 10 (7) sentence 5 of the German Banking Act (*Kreditwesengesetz*), then the amounts redeemed or paid must be returned to LBB irrespective of any agreement to the contrary unless the amounts paid have been replaced by other own funds (*Eigenmittel*) of at least equal status within the meaning of the German Banking Act, or the German Financial Supervisory Authority (*Bundesanstalt für Finanzdienstleistungsaufsicht*) has consented to such redemption or repurchase.

Subject, in the case of LBHI Subordinated Notes (as defined below) to Condition 2(c) (*Status of LBHI Notes*), in the event (a) of any insolvency or bankruptcy proceedings, or any receivership, liquidation, reorganization or other similar proceedings in respect of the Issuer or the Guarantor (if applicable) or a substantial part of its property, (b) that (i) a default shall have occurred with respect to the payment of principal of or interest on or other monetary amounts due and payable on any Senior Debt or (ii) there shall have occurred an event of default (other than a default in the payment of principal of or interest or other monetary amounts due and payable) with respect to any Senior Debt, as defined therein or in the instrument under which the same is outstanding, permitting the holder or holders thereof to accelerate the maturity thereof (with notice or lapse of time, or both), and such event of default shall have continued beyond the period of grace, if any, in respect thereof, and such default or event of default shall not have been cured or waived or shall not have ceased to exist, or (c) that the principal of and accrued interest on the Subordinated Debt shall have been declared due and payable upon an Event of Default under the Fiscal Agency Agreement and such declaration shall not have been rescinded and annulled as provided therein, then the holders of all Senior Debt shall first be entitled to receive payment of the full amount unpaid thereon in cash before the holders of any of the Subordinated Debt are entitled to receive a payment on account of the principal, premium, if any, or interest, if any, on such Subordinated Debt.

(c)    *Status of LBHI Subordinated Notes*

    (i)    *Agreement to Subordinate*

LBHI, for itself, its successors and assigns, covenants and agrees, and each Holder of Subordinated Notes issued by LBHI ("*LBHI Subordinated Notes*"), by accepting the same, likewise covenants and agrees, that the payment of the principal and interest payable in respect of the LBHI Subordinated Notes is hereby expressly subordinated, to the extent and in the manner set forth in this Condition 2(c), in right of payment to the prior payment in full of all Senior Debt.

    (ii)    *Distribution on Dissolution, Liquidation and Reorganization; Subrogation of the LBHI Subordinated Notes*

Upon any distribution of assets of LBHI upon any dissolution, winding up, liquidation or reorganization of LBHI, whether in bankruptcy, insolvency, reorganization or receivership proceedings or upon an assignment for the benefit of creditors or any other marshalling of the assets and liabilities of LBHI or otherwise (subject to the power of a court of competent jurisdiction to make other equitable provision reflecting the rights conferred in these Conditions applicable to LBHI Subordinated Notes upon the Senior Debt and the holders thereof with respect to the LBHI Subordinated Notes and the Holders thereof by a lawful plan or reorganization under applicable bankruptcy law),

    (A)    the holders of all Senior Debt shall be entitled to receive payment in full of the principal thereof, premium, if any, interest or additional amounts required in respect of certain taxes, and any interest thereon, due thereon before the Holders of the LBHI Subordinated Notes are entitled to receive any payment upon the principal of or interest on the LBHI Subordinated Notes of or interest on overdue amounts thereof; and

    (B)    any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, to which the Holders of the LBHI Subordinated Notes or the Fiscal Agent would be entitled except for the provisions of this Condition 2(c) shall be paid by the liquidating trustee or agent or other person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise, directly to the holders of Senior Debt or their representative or representatives or to the agent, trustee or trustees under any agency agreement or indenture under which any instruments evidencing any of such Senior Debt may have been issued, ratably according to the aggregate amounts remaining unpaid on account of the principal of, premium, if any, interest or additional amounts required in respect of certain taxes, and any interest thereon, on the Senior Debt held or represented by each, to the extent necessary to make payment in full of all Senior Debt remaining unpaid, after giving effect to any concurrent payment or distribution to the holders of such Senior Debt; and

    (C)    in the event that, notwithstanding the foregoing, any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, shall be received by the Fiscal Agent or the Holders of the LBHI Subordinated Notes before all Senior Debt is paid in full, such payment or distribution shall be paid over to the holders of such Senior Debt or their representative or representatives or to the agent, trustee or trustees under any agency agreement or indenture under which any instruments evidencing any of such Senior Debt may have been issued, ratably as aforesaid, for application to the payment of all Senior Debt remaining unpaid until all such Senior Debt shall have been paid in full, after giving effect to any concurrent payment or distribution to the holders of such Senior Debt.

Subject to the payment in full of all Senior Debt, the Holders of the LBHI Subordinated Notes shall be subrogated to the rights of the holders of Senior Debt to receive payments or distributions of cash, property or securities of LBHI applicable to Senior Debt until the principal or interest, and any interest thereon, of or on the LBHI Subordinated Notes shall be paid in full and no such payments or distributions to the Holders of the LBHI Subordinated Notes of cash, property or securities otherwise

distributable to the Senior Debt shall, as between LBHI, its creditors other than the holders of Senior Debt, and the Holders of the LBHI Subordinated Notes, be deemed to be a payment by LBHI to or on account of the LBHI Subordinated Notes. It is understood that the provisions of this Condition 2(c) are and are intended solely for the purpose of defining the relative rights of the Holders of the LBHI Subordinated Notes, on the one hand, and the holders of Senior Debt, on the other hand. Nothing contained in this Condition 2(c) or elsewhere in the Fiscal Agency Agreement or in the LBHI Subordinated Notes is intended to or shall impair, as between LBHI, its creditors other than the holders of Senior Debt, and the Holders of the LBHI Subordinated Notes, the obligation of LBHI, which is unconditional and absolute, to pay to the Holders of the LBHI Subordinated Notes the principal or interest, and any interest thereon, of or on the LBHI Subordinated Notes as and when the same shall become due and payable in accordance with their terms, or to affect the relative rights of the Holders of the LBHI Subordinated Notes and creditors of LBHI other than the holders of Senior Debt, nor shall anything in the Fiscal Agency Agreement or in the LBHI Subordinated Notes prevent the Fiscal Agent or the Holder of any of the LBHI Subordinated Notes from exercising all remedies otherwise permitted by applicable law upon default under the Terms and Conditions applicable to the LBHI Subordinated Notes or the Fiscal Agency Agreement, subject to the rights, if any, under this Condition 2(c) or under the Fiscal Agency Agreement of the holders of Senior Debt in respect of cash, property or securities of LBHI received upon the exercise of any such remedy. Upon any payment or distribution of assets of LBHI referred to in this Condition 2(c), the Fiscal Agent shall be entitled to conclusively rely upon a certificate of the liquidating trustee or agent or other person making any distribution to the Fiscal Agent for the purpose of ascertaining the persons entitled to participate in such distribution, the holders of Senior Debt and other indebtedness of LBHI, the amount thereof or payable thereon, the amount or amounts paid or distributed thereon, and all other facts pertinent thereto or to this Condition 2(c).

The Fiscal Agent, however, shall not be deemed to owe any fiduciary duty to the holders of Senior Debt. The Fiscal Agent shall not be liable to any such holder if it shall pay over or distribute to or on behalf of Holders of the LBHI Subordinated Notes or LBHI moneys or assets to which any holder of Senior Debt shall be entitled by virtue of this Condition 2(c). The rights and claims of the Fiscal Agent under Clause 8 of the Fiscal Agency Agreement shall not be subject to the provisions of this Condition 2(c).

If the Fiscal Agent or any Holder of LBHI Subordinated Notes does not file a proper claim or proof of debt in the form required in any proceeding referred to above prior to 30 days before the expiration of the time to file such claim in such proceeding, then the holder of any Senior Debt is hereby authorized, and has the right, to file an appropriate claim or claims for or on behalf of such Holder of LBHI Subordinated Notes.

(iii)    *No Payment on LBHI Subordinated Notes in Event of Default on Senior Debt*

No payment by LBHI on account of principal or interest, and any interest thereon, of or on the LBHI Subordinated Notes shall be made unless full payment of amounts then due for principal, premium, if any, sinking funds, and interest or additional amounts on Senior Debt has been made or duly provided for in money or money's worth.

(iv)    *Payments on LBHI Subordinated Notes Permitted*

Nothing contained in the Fiscal Agency Agreement or in the LBHI Subordinated Notes shall (a) affect the obligation of LBHI to make, or prevent LBHI from making, at any time except as provided in paragraphs (ii) and (iii), payments of principal or interest, and any interest thereon, of or on the LBHI Subordinated Notes or (b) prevent the application by the Fiscal Agent of any moneys deposited with it hereunder to the payment of or on account of the principal or interest, and any interest thereon, of or on the LBHI Subordinated Notes unless the Fiscal Agent shall have received written notice of any event prohibiting the making of such payment more than two Business Days prior to the date fixed for such payment.

(v)    *Authorization of Holders of LBHI Subordinated Notes to Fiscal Agent to Effect Subordination*

Each Holder of LBHI Subordinated Notes by accepting the same authorizes and directs the Fiscal Agent on its behalf to take such action as may be necessary or appropriate to effectuate the subordination as provided in this Condition 2(c) and appoints the Fiscal Agent its attorney-in-fact for any and all such purposes.

(vi)    *Notices to Fiscal Agent*

LBHI shall give prompt written notice to the Fiscal Agent of any fact known to LBHI which would prevent the making of any payment to or by the Fiscal Agent in respect of the LBHI Subordinated Notes. Notwithstanding the provisions of this 2(c) or any other provisions of these Terms and Conditions applicable LBHI Subordinated Notes and the Fiscal Agency Agreement, neither the Fiscal Agent nor any Paying Agent shall be charged with knowledge of the existence of any Senior Debt or of any event which would prohibit the making of any payment of moneys to or by the Fiscal Agent or such Paying Agent, unless and until the Fiscal Agent or such Paying Agent shall have received written notice thereof from LBHI or from the holder of any Senior Debt or from the agent or trustee for any such holder, together with proof satisfactory to the Fiscal Agent of such holding of Senior Debt or of the authority of such trustee; provided, however, that if at least two Business Days prior to the date upon which by the terms hereof any such moneys may become payable for any purpose (including, without limitation, the payment of the principal of or interest on the LBHI Subordinated Notes, or any interest thereon) the Fiscal Agent shall not have received with respect to such moneys or the moneys deposited with it as a condition to such satisfaction and discharge the notice provided for in this paragraph (vi), then, anything herein contained to the contrary notwithstanding, the Fiscal Agent shall have full power and authority to receive such moneys and to apply the same to the purpose for which they were received, and shall not be affected by any notice to the contrary, which may be received by it on or after such two Business Days prior to such date. The Fiscal Agent shall be entitled to conclusively rely on the delivery to it of a written notice by a person representing himself to be a holder of Senior Debt (or an agent or trustee on behalf of such holder) to establish that such a notice has been given by a holder of Senior Debt or an agent or trustee on behalf of any such holder. In the event that the Fiscal Agent determines in good faith that further evidence is required with respect to the right of any person as a holder of Senior Debt to participate in any payment or distribution pursuant to this 2(c), the Fiscal Agent may request such person to furnish evidence to the reasonable satisfaction of the Fiscal Agent as to the amount of Senior Debt held by such person, the extent to which such person is entitled to participate in such payment or distribution and any other facts pertinent to the rights of such person under this 2(c) and, if such evidence is not furnished, the Fiscal Agent may defer any payment to such person pending judicial determination as to the right of such person to receive such payment.

(vii)    *Fiscal Agent as holder of Senior Debt.*

The Fiscal Agent shall be entitled to all the rights set forth in this 2(c) in respect of any Senior Debt at any time held by it to the same extent as any other holder of Senior Debt and nothing in these Condition applicable to LBHI Subordinated Notes or in the Fiscal Agency Agreement shall be construed to deprive the Fiscal Agent of any of its rights as such holder.

(viii)    *Modification of Terms of Senior Debt.*

Any renewal or extension of the time of payment of any Senior Debt or the exercise by the holders of Senior Debt of any of their rights under any instrument creating or evidencing Senior Debt, including without limitation the waiver of default thereunder, may be made or done all without notice to or assent from Holders of the LBHI Subordinated Notes or the Fiscal Agent.

No compromise, alteration, amendment, modification, extension, renewal or other change of, or waiver, consent or other action in respect of, any liability or obligation under or in respect of, or of any of the terms, covenants or conditions of any agency agreement, indenture or other instrument

under which any Senior Debt is outstanding or of such Senior Debt, whether or not such release is in accordance with the provisions of any applicable document, shall in any way alter or affect any of the provisions of this 2(c) relating to the subordination thereof.

**3.    Interest**

(a)    *Interest on Fixed Rate Notes*

Each Fixed Rate Note bears interest on its outstanding nominal amount (or, if it is a Partly Paid Note, the amount paid up) from (and including) the Interest Commencement Date at the rate(s) per annum equal to the Fixed Rate(s) of Interest payable in arrear on the Interest Payment Date(s) in each year and on the Maturity Date (if that does not fall on an Interest Payment Date).

Interest will be paid subject to and in accordance with the provisions of Condition 7 (*Payment of Principal and Interest; Paying Agents*). Interest will cease to accrue on each Fixed Rate Note (or, in the case of the redemption of part of a Note, that part only of such Note) on the due date for redemption thereof unless, upon due presentation thereof, payment of principal is improperly withheld or refused in which event interest will continue to accrue (as well after as before any judgment) until whichever is the earlier of (A) the day on which all sums due in respect of such Note up to that day are received by or on behalf of the Holder of such Note and (B) the day on which the Fiscal Agent has notified the Holder thereof (either in accordance with Condition 15 (*Notices*) or individually) of receipt of all sums due in respect thereof up to that date.

Except as provided in the applicable Final Terms, the amount of interest payable on each Interest Payment Date in respect of the Fixed Interest Period ending on such date will amount to the Fixed Coupon Amount. Payments of interest on any Interest Payment Date or the Maturity Date will, if so specified in the applicable Final Terms, amount to the Broken Amount so specified.

As used in these Terms and Conditions, the expression "*Fixed Interest Period*" means the period from (and including) an Interest Payment Date (or the Interest Commencement Date) to (but excluding) the next (or first) Interest Payment Date

If interest is required to be calculated for a period ending other than on an Interest Payment Date, such interest shall be calculated by applying the Fixed Rate of Interest to the Calculation Amount, multiplying such sum by the applicable Day Count Fraction, rounding the resultant figure to the nearest sub-unit of the relevant Specified Currency, half of any such sub-unit being rounded upwards and multiplying such rounded figure by a fraction equal to the Specified Denomination of the relevant Note divided by the Calculation Amount or otherwise in accordance with applicable market convention.

(b)    *Interest on Floating Rate Notes and Index-Linked Interest Notes*

(i)    *Interest Payment Dates*

Each Floating Rate Note and Index-Linked Interest Note bears interest on its nominal amount (or, if it is a Partly Paid Note, on the amount paid up) from and including the Interest Commencement Date and such interest will be payable in arrear on either:

(A)    the Interest Payment Date(s) in each year specified in the applicable Final Terms (the period from and including the Interest Commencement Date to but excluding the first Interest Payment Date and each successive period from and including an Interest Payment Date to but excluding the next Interest Payment Date each being an "*Interest Period*"); or

(B)    if no express Interest Payment Date(s) is/are specified in the applicable Final Terms, each date (each an "*Interest Payment Date*") which falls the number of months or other period specified as the Interest Period in the applicable Final Terms after the preceding

Interest Payment Date or, in the case of the first Interest Payment Date, after the Interest Commencement Date.

If a Business Day Convention is specified in the applicable Final Terms and if any Interest Payment Date would otherwise fall on a day which is not a Business Day, then, if the Business Day Convention specified is:

(1)    in any case where Interest Periods are specified in accordance with Condition 3(b)(i)(B) (Interest Payment Dates) above, the Floating Rate Convention, such Interest Payment Date shall be postponed to the next day which is a Business Day unless it would thereby fall into the next calendar month, in which event (A) such Interest Payment Date shall be brought forward to the immediately preceding Business Day and (B) each subsequent Interest Payment Date shall be the last Business Day in the month which falls the number of months or other period specified as the Interest Period in the applicable Final Terms after the preceding applicable Interest Payment Date occurred; or

(2)    the Following Business Day Convention, such Interest Payment Date shall be postponed to the next day which is a Business Day; or

(3)    the Modified Following Business Day Convention, such Interest Payment Date shall be postponed to the next day which is a Business Day unless it would thereby fall into the next calendar month, in which event such Interest Payment Date shall be brought forward to the immediately preceding Business Day; or

(4)    the Preceding Business Day Convention, such Interest Payment Date shall be brought forward to the preceding Business Day.

In these Terms and Conditions:

"*Business Day*" means for all Conditions:

(A)    in relation to any sum payable in euro, any day on which the Trans-European Automated Real-Time Gross Settlement Express Transfer payment system which utilises a single shared platform and which was launched on 19 November 2007 (TARGET2) is open (a "*TARGET Settlement Day*") and a day on which commercial banks and foreign exchange markets settle payments generally in London and each (if any) Additional Business Centre; and

(B)    in relation to any sum payable in a currency other than euro, a day on which commercial banks and foreign exchange markets settle payments generally in London, in the Principal Financial Centre of the relevant currency and in each (if any) Additional Business Centre; and

"*Principal Financial Centre*" means, in relation to any currency, the principal financial centre for that currency provided, however, that in relation to euro, it means the principal financial centre of such Member State of the European Communities as is selected (in the case of a payment) by the payee or (in the case of a calculation) by the Calculation Agent.

(ii)    *Interest Payments*

Interest will be paid subject to and in accordance with the provisions of Condition 7 (Payment of Principal and Interest; Paying Agents). Interest will cease to accrue on each Floating Rate Note or Index-Linked Interest Note (or, in the case of the redemption of part of a Note, that part only of such Note) on the due date for redemption thereof unless, upon due presentation thereof, payment of principal is improperly withheld or refused in which event interest will continue to accrue (as well after as before any judgment) until whichever is the earlier of (A)

the day on which all sums due in respect of such Note up to that day are received by or on behalf of the Holder of such Note and (B) the day on which the Fiscal Agent has notified the Holder thereof (either in accordance with Condition 15 (Notices) or individually) of receipt of all sums due in respect thereof up to that date.

(iii)   *Rate of Interest*

The Rate of Interest payable from time to time in respect of Floating Rate Notes and Index-Linked Interest Notes will be determined in the manner specified in the applicable Final Terms, including where the Rate of Interest is to be determined by reference to an index and/or formula or otherwise.

(A)   *ISDA Determination for Floating Rate Notes*

Where ISDA Determination is specified in the applicable Final Terms as the manner in which the Rate of Interest is to be determined, the Rate of Interest for each Interest Period will be the relevant ISDA Rate plus or minus (as indicated in the applicable Final Terms) the Margin (if any) and/or multiplied by the Multiplier (if any). For the purposes of this sub-paragraph (A), "*ISDA Rate*" for an Interest Period means a rate equal to the Floating Rate that would be determined by the Calculation Agent specified in the applicable Final Terms under an interest rate swap transaction if the Calculation Agent was acting as Calculation Agent for that swap transaction under the terms of an agreement incorporating the ISDA Definitions and under which:

(1)   the Floating Rate Option is as specified in the applicable Final Terms;

(2)   the Designated Maturity is a period specified in the applicable Final Terms; and

(3)   the relevant Reset Date is either (i) if the applicable Floating Rate Option is based on the London inter-bank offered rate (LIBOR) for a currency, the first day of that Interest Period or (ii) in any other case, as specified in the applicable Final Terms.

For the purposes of this sub-paragraph (A), "*Floating Rate*", "*Calculation Agent*" "*Floating Rate Option*", "*Designated Maturity*", and "*Reset Date*" have the meanings given to those terms in the ISDA Definitions, where "*ISDA Definitions*" means the ISDA 2006 Definitions (as amended and updated as at the date of issue of the first Tranche of the Notes of the relevant Series (as specified in the relevant Final Terms) as published by the International Swaps and Derivatives Association, Inc. (formerly the International Swap Dealers Association, Inc.)).

When this sub-paragraph (A) applies in respect of each relevant Interest Period, the Calculation Agent will be deemed to have discharged its obligations under Condition 3 (b)(iii) (Rate of Interest) in respect of the determination of the Rate of Interest if it has determined the Rate of Interest in respect of such Interest Period in the manner provided in this sub-paragraph (A).

(B)   *Screen Rate Determination for Floating Rate Notes*

Where Screen Rate Determination is specified in the applicable Final Terms, the Rate of Interest for each Interest Period will, subject as provided below, be either:

(1)   the offered quotation; or

(2)   the arithmetic mean (rounded if necessary to the fourth decimal place, with 0.00005 being rounded upwards) of the offered quotations;

(expressed as a percentage rate per annum) for the Reference Rate which appears or appear, as the case may be, on the Relevant Screen Page as of the Relevant Time on the

relevant Interest Determination Date plus or minus (as indicated in the applicable Final Terms) the Margin (if any) and/or multiplied by the Multiplier (if any), all as determined by the Calculation Agent. If five or more such offered quotations are available on the Relevant Screen Page, the highest (or, if there is more than one such highest quotation, one only of such quotations) and the lowest (or, if there is more than one such lowest quotation, one only of such quotations) shall be disregarded by the Calculation Agent for the purpose of determining the arithmetic mean (rounded as provided above) of such offered quotations.

If, in respect of any Interest Period, the Relevant Screen Page is not available or if, in the case of (1) above, no such offered quotation appears or, in the case of (2) above, fewer than three of such offered quotations appear, in each case as at the time specified in the preceding paragraph, the Calculation Agent shall request the principal Relevant Financial Centre office of each of the Reference Banks (as defined below) to provide the Calculation Agent with its offered quotation (expressed as a percentage rate per annum) for the Reference Rate at approximately the Relevant Time on the Interest Determination Date in question. If two or more of the Reference Banks provide the Calculation Agent with such offered quotations, the Rate of Interest for such Interest Period shall be the arithmetic mean (rounded if necessary to the fourth decimal place, with 0.00005 being rounded upwards) of such offered quotations plus or minus (as appropriate) the Margin (if any), all as determined by the Calculation Agent.

If the provisions of the preceding paragraph are applicable and on the relevant Interest Determination Date one only or none of the Reference Banks provides the Calculation Agent with such offered quotations as provided in the preceding paragraph, the Rate of Interest for the relevant Interest Period shall be the rate per annum which the Calculation Agent determines as being the arithmetic mean (rounded if necessary to the fourth decimal place, with 0.00005 being rounded upwards) of the rates, as communicated to (and at the request of) the Calculation Agent by the Reference Banks or any two or more of them, at which such banks were offered, at approximately 11.00 a.m. local time in the Principal Financial Centre of the Specified Currency on such Interest Determination Date, deposits in the Specified Currency, in an amount approximately equal to the nominal amount of the relevant Tranche, for a period equal to the relevant Interest Period plus or minus (as appropriate) the Margin (if any) or, if only one of the Reference Banks provides the Calculation Agent with such offered rates, the offered rate for deposits in the Specified Currency, in an amount approximately equal to the nominal amount of the relevant Tranche, for a period equal to the relevant Interest Period or the arithmetic mean (rounded as provided above) of the offered rates for deposits in the Specified Currency for a period equal to the relevant Interest Period, at which, at approximately 11.00 a.m. local time in the Principal Financial Centre of the Specified Currency on the relevant Interest Determination Date, any one or more banks in the Principal Financial Centre of the Specified Currency (which bank or banks is or are in the opinion of the Issuer suitable for such purpose) informs the Calculation Agent it is quoting to leading European banks plus or minus (as appropriate) the Margin (if any), provided that, if the Rate of Interest cannot be determined in accordance with the foregoing provisions of this paragraph, the Rate of Interest shall be determined as at the last preceding Interest Determination Date at which the Rate of Interest could be determined in accordance with the foregoing provisions (though substituting, where a different Margin is to be applied to the relevant Interest Period from that which applied to the last preceding Interest Period, the Margin relating to the relevant Interest Period in place of the Margin relating to that last preceding Interest Period).

In this Condition 3 (Interest), the expression *"Reference Banks"* means, in the case of (1) above, those banks whose offered rates were used to determine such quotation when such quotation last appeared on the Relevant Screen Page and, in the case of (2) above,

those banks whose offered quotations last appeared on the Relevant Screen Page when no fewer than three such offered quotations appeared.

If "*BBSW*" is specified in the applicable Final Terms it shall mean the average mid rate for Bills (having the meaning that term has in the Bills of Exchange Act 1909 of Australia) having a tenor closest to the Interest Period as displayed on the "BBSW" page of the Reuters Monitor System on the first day of that Interest Period.

(iv)   *Determination of Rate of Interest and Calculation of Interest Amount*

The Calculation Agent will, at or as soon as practicable after each time at which the Rate of Interest is to be determined, determine the Rate of Interest for the relevant Interest Period. The Calculation Agent will notify the Fiscal Agent of the Rate of Interest for the relevant Interest Period as soon as practicable after calculating the same. The Fiscal Agent will calculate the amount of interest payable in respect of each Specified Denomination (each an "*Interest Amount*") for the relevant Interest Period. Each Interest Amount shall be calculated by applying the Rate of Interest to the Calculation Amount, multiplying such sum by the relevant Day Count Fraction, rounding the resultant figure to the nearest sub-unit of the Specified Currency (half a sub-unit being rounded upwards) and multiplying such rounded figure by a fraction equal to the Specified Denomination divided by the Calculation Amount.

(v)   *Notification of Rate of Interest and Interest Amount*

The Calculation Agent will cause each Rate of Interest and Interest Amount determined by it, together with the relevant Interest Payment Date, and any other amount(s) required to be determined by it together with any relevant payment date(s) to be notified to the Paying Agents and each competent authority, stock exchange and/or quotation system (if any) by which the Notes have then been admitted to listing, trading and/or quotation as soon as practicable after such determination but (in the case of each Rate of Interest, Interest Amount and Interest Payment Date) in any event not later than the first day of the relevant Interest Period.

(vi)   *Minimum and/or Maximum Rate of Interest*

If the applicable Final Terms specifies a Minimum Interest Rate for any Interest Period, then, in the event that the Rate of Interest in respect of such Interest Period determined in accordance with the above provisions is less than such Minimum Interest Rate, the Rate of Interest for such Interest Period shall be such Minimum Interest Rate. If the applicable Final Terms specifies a Maximum Interest Rate for any Interest Period, then, in the event that the Rate of Interest in respect of such Interest Period determined in accordance with the above provisions is greater than such Maximum Interest Rate, the Rate of Interest for such Interest Period shall be such Maximum Interest Rate.

(vii)   *Certificates to be Final*

All certificates, communications, opinions, determinations, calculations, quotations and decisions given, expressed, made or obtained for the purposes of the provisions of this Condition 3 (Interest), whether by the Fiscal Agent or, if applicable, the Calculation Agent, shall (in the absence of wilful default, bad faith or manifest error) be binding on the Issuer, the Guarantor (if applicable), the Fiscal Agent, the Calculation Agent (if applicable), the other Paying Agents and all Noteholders, Couponholders and Receiptholders and (in the absence as aforesaid) no liability to the Issuer, the Guarantor (if applicable), the Noteholders, the Receiptholders or the Couponholders shall attach to the Fiscal Agent or the Calculation Agent (if applicable) in connection with the exercise or non-exercise by it of its powers, duties and discretions pursuant to such provisions.

(c)    *Dual Currency Notes*

In the case of Dual Currency Notes, if the rate or amount of interest fails to be determined by reference to an exchange rate, the rate or amount of interest payable shall be determined in the manner specified in the applicable Final Terms and payment shall otherwise be made in accordance with Condition 7 (Payment of Principal and Interest; Paying Agents).

(d)    *Partly Paid Notes*

In the case of Partly Paid Notes (other than Partly Paid Notes which are Zero Coupon Notes) interest will accrue as aforesaid on the paid-up nominal amount of such Notes and otherwise as specified in the applicable Final Terms.

(e)    *Option to Defer Interest Payments*

The applicable Final Terms will indicate whether this Condition 3(e) is applicable. If this Condition 3(e) is applicable, the Issuer can defer interest payments on the Notes for up to five years if the Notes are not in default. A deferral of interest payments cannot extend, however, beyond the Maturity Date of the Notes. The period between (a) the Interest Payment Date (the "*Reference Interest Payment Date*") immediately preceding the first Interest Payment Date for which the Issuer has elected to defer interest pursuant to these Conditions and (b) the Interest Payment Date falling closest to the fifth anniversary of the Reference Interest Payment Date or, if earlier, the date on which all interest which has been deferred pursuant to these Conditions is paid in full at the option of the Issuer shall be referred to as a "Deferral Period". During the Deferral Period, interest will continue to accrue on the Notes, compounded on each Interest Payment Date during the Deferral Period. No interest will be due and payable on the Notes until the end of the Deferral Period except upon a redemption of the Notes during a Deferral Period. The Issuer may pay at any time all or any portion of the interest accrued to that point during a Deferral Period. At the end of the Deferral Period or on any redemption date, the Issuer will be obligated to pay all accrued and unpaid interest. Once the Issuer makes all interest payments on the Notes, with accrued and unpaid interest, it can again defer interest payments on Notes as described above.

During any Deferral Period, if LBHI is the Issuer it will not be permitted to:

(i)    declare or pay any dividend on its shares of common stock; or

(ii)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option.

The above restriction shall not apply to:

(A)    dividends or distributions in the form of the Issuer's common stock;

(B)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(C)    purchases of common stock related to the issuance of common stock or rights under any of the Issuer's benefit plans.

(f)    *Interpretation*

For the purposes of these Terms and Conditions, "*Day Count Fraction*" means, in respect of the calculation of an amount of interest for any Interest Period or for any other period of time (such Interest Period or other period, the "*Calculation Period*"), such day count fraction as may be specified in these Conditions on the relevant Final Terms and:

(i)    if "*Actual/Actual (ICMA)*" is specified in the applicable Final Terms:

(a) where the Calculation Period is equal to or shorter than the Regular Period during which it falls, the actual number of days in the Calculation Period divided by the product of (1) the actual number of days in such Regular Period and (2) the number of Regular Periods normally ending in any year; and

(b) where the Calculation Period is longer than one Regular Period, the sum of:

   (A) the actual number of days in such Calculation Period falling in the Regular Period in which it begins divided by the product of (1) the actual number of days in such Regular Period and (2) the number of Regular Periods in any year; and

   (B) the actual number of days in such Calculation Period falling in the next Regular Period divided by the product of (a) the actual number of days in such Regular Period and (2) the number of Regular Periods normally ending in any year;

(ii) if "**Actual/360**" is so specified, means the actual number of days in the Interest Period divided by 360;

(iii) if "**Actual/Actual (ISDA)**" is so specified means the actual number of days in the Calculation Period divided by 365 (or, if any portion of that Calculation Period falls in a leap year, the sum of (i) the actual number of days in that portion of the Calculation Period falling in a leap year divided by 366; and (ii) the actual number of days in that portion of the Calculation Period falling in a non-leap year divided by 365);

(iv) if "**Actual/365 (Fixed)**" is so specified means the actual number of days in the Calculation Period divided by 365;

(v) if "**30/360**" is so specified, means the number of days in the Calculation Period divided by 360 calculated on a formula basis as follows:

$$\text{Day Count Fraction} = \frac{[360 \times (Y_2 - Y_1)] + [30 \times (M_2 - M_1)] + (D_2 - D_1)}{360}$$

where:

"$Y_1$" is the year, expressed as a number, in which the first day of the Calculation Period falls;

"$Y_2$" is the year, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$M_1$" is the calendar month, expressed as a number, in which the first day of the Interest Period falls;

"$M_2$" is the calendar month, expressed as number, in which the day immediately following the last day included in the Calculation Period falls;

"$D_1$" is the first calendar day, expressed as a number, of the Calculation Period, unless such number would be 31, in which case $D_1$ will be 30; and

"$D_2$" is the calendar day, expressed as a number, immediately following the last day included in the Calculation Period, unless such number would be 31 and $D_1$ is greater than 29, in which case $D_2$ will be 30;

(vi) if "**30E/360**" or "**Eurobond Basis**" is so specified, means

$$\text{Day Count Fraction} = \frac{[360 \times (Y_2 - Y_1)] + [30 \times (M_2 - M_1)] + (D_2 - D_1)}{360}$$

where:

"$Y_1$" is the year, expressed as a number, in which the first day of the Calculation Period falls;

"$Y_2$" is the year, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$M_1$" is the calendar month, expressed as a number, in which the first day of the Calculation Period falls;

"$M_2$" is the calendar month, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$D_1$" is the first calendar day, expressed as a number, of the Calculation Period, unless such number would be 31, in which case $D_1$ will be 30; and

"$D_2$" is the calendar day, expressed as a number, immediately following the last day included in the Calculation Period, unless such number would be 31, in which case $D_2$ will be 30; and

(vii)   if "**30E/360 (ISDA)**" is so specified, means the number of days in the Calculation Period divided by 360, calculated on a formula basis as follows:

$$\text{Day Count Fraction} = \frac{[360 \times (Y_2 - Y_1)] + [30 \times (M_2 - M_1)] + (D_2 - D_1)}{360}$$

where:

"$Y_1$" is the year, expressed as a number, in which the first day of the Calculation Period falls;

"$Y_2$" is the year, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$M_1$" is the calendar month, expressed as a number, in which the first day of the Calculation Period falls;

"$M_2$" is the calendar month, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$D_1$" is the first calendar day, expressed as a number, of the Calculation Period, unless (i) that day is the last day of February or (ii) such number would be 31, in which case $D_1$ will be 30; and

"$D_2$" is the calendar day, expressed as a number, immediately following the last day included in the Calculation Period, unless (i) that day is the last day of February but not the Maturity Date or (ii) such number would be 31, in which case $D_2$ will be 30;

"*Regular Period*" means:

(i)   in the case of Notes where interest is scheduled to be paid only by means of regular payments, each period from and including the Interest Commencement Date to but excluding the first Interest Payment Date and each successive period from and including one Interest Payment Date to but excluding the next Interest Payment Date;

(ii)   in the case of Notes where, apart from the first Interest Period, interest is scheduled to be paid only by means of regular payments, each period from and including a Regular Date falling in any year to but excluding the next Regular Date, where "*Regular Date*" means the day and month (but not the year) on which any Interest Payment Date falls; and

(iii)   in the case of Notes where, apart from one Interest Period other than the first Interest Period, interest is scheduled to be paid only by means of regular payments, each period from and including a Regular Date falling in any year to but excluding the next Regular Date, where "*Regular Date*" means the day and month (but not the year) on which any Interest Payment Date falls other than the Interest Payment Date falling at the end of the irregular Interest Period.

"*sub unit*" means, with respect to any currency other than euro, the lowest amount of such currency that is available as legal tender in the country of such currency and, with respect to euro, means one cent.

**4.    Extendible Notes**

(a)    The applicable Final Terms will indicate whether this Condition 4(a) is applicable. If this Condition 4(a) is applicable, this Note is a Note the Maturity Date of which will be automatically extended for such periods and at such times as are set forth in the applicable Final Terms unless the Holder of such Note elects to terminate the automatic extension of such Note. The applicable Final Terms will set forth the periods and times for which the maturity of such Note is to be automatically renewed, the date beyond which the maturity may not be so renewed, the procedures for Noteholders to elect repayment of such Notes in the event of such renewal and other details of such Notes. Notes to which this Condition 4(a) applies may only be issued in registered form.

(b)    The applicable Final Terms will indicate whether this Condition 4(b) is applicable. If this Condition 4(b) is applicable, this Note is a Note as to which the Issuer will have the option to extend the original Maturity Date of such Note. The applicable Final Terms will set forth the number of periods for which the maturity of such Note is extendible, the date beyond which the final maturity may not be extended, the procedure for notification to the Noteholders of such extension, the procedure, if any, for Noteholders to elect repayment of such Notes in the event of such extension and other details of such Notes. Notes to which this Condition 4(b) applies may only be issued in registered form.

**5.    Zero Coupon and Inflation-Linked Notes**

(a)    The applicable Final Terms will indicate whether this Note is a Zero Coupon Note.

*Early redemption of Zero Coupon Notes*

Unless otherwise specified in the applicable Final Terms, the principal amount payable on redemption of a Zero Coupon Note at any time before the Maturity Date shall be an amount (the "*Accrual Yield Amount*") equal to the sum of:

(i)    the Reference Price; and

(ii)    the product of the Accrual Yield (compounded annually) being applied to the Reference Price from (and including) the Issue Date to (but excluding) the date fixed for redemption or (as the case may be) the date upon which the Note becomes due and payable.

Where such calculation is to be made for a period which is not a whole number of years, the calculation in respect of the period of less than a full year shall be made on the basis of such Day Count Fraction as may be specified in the applicable Final Terms for the purposes of this Condition 5 (Zero Coupon Notes) or, if none is so specified, a Day Count Fraction of 30E/360.

*Late payment on Zero Coupon Notes:*

If the principal amount payable in respect of any Zero Coupon Note is improperly withheld or refused, the principal amount shall thereafter by an amount equal to the sum of:

(i)    the Reference Price; and

(ii)    the product of the Accrual Yield (compounded annually) being applied to the Reference Price from (and including) the Issue Date to (but excluding) whichever is the earlier of (i) the day on which all sums due in respect of such Note up to that day are received by or on behalf of the relevant Noteholder and (ii) the day which is seven days after the Fiscal Agent has notified the Noteholders that it has received all sums due in respect of the Notes up to such seventh day (except to the extent that there is any subsequent default in payment).

(b)    Notes issued pursuant to the Program may include Notes in respect of which the rate of interest applicable for one or more Interest Periods and/or the redemption amount is calculated by reference to one or more indices relating to the consumer price index or any other formula linked to a measure of inflation in one or more jurisdictions, as specified in the applicable Final Terms. Such Notes are

referred to as "*Inflation-Linked Notes*". Such Notes shall also be Index Linked Interest Notes or Index Linked Redemption Amount Notes.

Section 1.12 of the 2006 ISDA Inflation Derivatives Definitions published by the International Swaps and Derivatives Association, Inc. (the "*ISDA Inflation Definitions*") shall be deemed incorporated by reference into this condition (provided that such terms may be amended in the applicable Final Terms).

The Final Terms for the Inflation-Linked Notes shall specify the relevant Index (or Indices) and Index Sponsor (or Index Sponsors).

For the purposes of this Base Prospectus and any Inflation-Linked Note (unless otherwise specified in the applicable Final Terms):

"*Index*" means each index specified as such in the Final Terms, or any Successor Index determined in accordance with the provisions below.

"*Index Sponsor*" means the entity that publishes or announces (directly or through an agent) the level of the relevant Index.

The applicable Final Terms of Inflation-Linked Notes shall include the following Index and Disruption Event provisions, subject to modification in respect of any particular Tranche of Inflation-Linked Notes.

*Delay of Publication*

(i)     If any level of an Index for a month which is relevant to the calculation of a payment under the Notes (a "*Relevant Level*") has not been published or announced by the day that is five Business Days prior to the next Interest Payment Date in respect of which it is required, or as the case may be, five Business Days prior to the date scheduled for redemption of the Notes, the Calculation Agent shall determine a Substitute Index Level by using the following methodology:

(I)     if applicable, the Calculation Agent will take the same action to determine the Substitute Index Level for the Interest Payment Date as that taken by the calculation agent pursuant to the terms and conditions of the Related Bond; or

(II)     if (I) above does not result in a Substitute Index Level for the Interest Payment Date, then the Calculation Agent shall determine the Substitute Index Level as follows:

Substitute Index Level = Base Level x (Latest Level/Reference Level)

Where:

"*Base Level*" means the level of the Index (excluding "flash estimates") published or announced by the Index Sponsor in respect of the month which is 12 calendar months prior to the month for which the Substitute Index Level is being determined.

"*Latest Level*" means the latest level of the Index (excluding "flash estimates") published or announced by the Index Sponsor prior to the month in respect of which the Substitute Index Level is being calculated.

"*Reference Level*" means the level of the Index (excluding "flash estimates") published or announced by the Index Sponsor in respect of the month that is 12 calendar months prior to the month referred to in "Latest Level" above.

(ii)     If a Relevant Level is published or announced at any time after the day that is five Business Days prior to the next Interest Payment Date in respect of which it is required or, as the case may be, five Business Days prior to the date scheduled for redemption of the Notes, such

Relevant Level will not be used in any calculations. The Substitute Index Level so determined pursuant to paragraph (i) above will be the definitive level for that month.

*Cessation of Publication*

If a level for the Index has not been published or announced for two consecutive months or the Index Sponsor announces that it will no longer continue to publish or announce the Index then the Calculation Agent shall determine a Successor Index (in lieu of any previously applicable Index) for the purposes of the Notes by using the following methodology:

(i)     if at any time (other than after an Early Redemption Event has been designated by the Calculation Agent pursuant to (v) below) a successor index has been designated by the calculation agent pursuant to the terms and conditions of the Related Bond, such successor index shall be designated a "Successor Index" for the purposes of all subsequent payment dates in relation to the Notes, notwithstanding that any other Successor Index may previously have been determined under the other sub-paragraphs of this section; or

(ii)    if, a Successor Index has not been determined under sub-paragraph (i) above and there has been no designation of an Early Redemption Event by the Calculation Agent pursuant to (v) below and a notice has been given or an announcement has been made by an Index Sponsor, specifying that an Index will be superseded by a replacement Index specified by the Index Sponsor, and the Calculation Agent determines that such replacement index is calculated using the same or substantially similar formula or method of calculation as used in the calculation of the previously applicable Index, such replacement index shall be the Index for purposes of the Notes from the date that such replacement Index comes into effect; or

(iii)   if a Successor Index has not been designated by the Calculation Agent under sub-paragraph (i) or (ii) above and there has been no designation of an Early Redemption Event by the Calculation Agent pursuant to (v) below, the Calculation Agent shall ask five leading independent dealers to state what the replacement index for the Index should be. If between four and five responses are received, and of those four or five responses, three or more leading independent dealers state the same index, this index will be deemed the "Successor Index". If three responses are received, and two or more leading independent dealers state the same index, this index will be deemed the "Successor Index", otherwise, no "Successor Index" will be determined under this sub-paragraph (iii). If fewer than three responses are received, no "Successor Index" will be determined under this sub-paragraph and the Calculation Agent will proceed to sub-paragraph (iv) hereof; or

(iv)    if no Successor Index has been deemed under sub-paragraph (i), (ii) or (iii) by the fifth Business Day prior to an Interest Payment Date or, as the case may be, by the fifth Business Day prior to the date scheduled for redemption of the Notes the Calculation Agent will determine an appropriate alternative index for such date, and such index will be deemed a "Successor Index"; or

(v)     if the Calculation Agent determines that there is no appropriate alternative index (an "*Early Redemption Event*"), the Notes will be redeemed at an amount calculated by the Calculation Agent as the Final Redemption Amount of the Notes plus any interest accrued but unpaid less any Unwind Costs. For the purposes of this sub-section, "*Unwind Costs*" means the value (determined in the currency in which the Notes are denominated) of any transfer or stamp tax cost, any early redemption or termination cost, if any, borne by the Issuer or Calculation Agent, as determined by the Calculation Agent, in its sole and absolute discretion, in relation to any swap agreement, financing arrangement or other hedging transaction entered into by, or on behalf of, the Calculation Agent or the Issuer in relation to the issuance of the Notes.

*Rebasing of the Index*

If the Calculation Agent determines that the Index has been or will be rebased at any time, the Index as so rebased (the "*Rebased Index*") will be used for purposes of determining the level of an Index from the date of such rebasing; provided, however, that the Calculation Agent shall make such adjustments as are made by the calculation agent pursuant to the terms and conditions of the Related Bond, if any, to the past levels of the Rebased Index so that the Rebased Index levels prior to the date of rebasing reflect the same rate of inflation as the Index before it was rebased. If there is no Related Bond, the Calculation Agent shall make adjustments to the past levels of the Rebased Index so that the Rebased Index levels reflect the same rate of inflation as the Index before it was rebased. Any such rebasing shall not affect any prior payments made under the Notes.

*Material Modification Prior to Interest Payment Date*

If, on or prior to the day that is five Business Days before the next Interest Payment Date in respect of which it is required or, as the case may be, five Business Days prior to the date scheduled for redemption of the Notes, the Index Sponsor announces that it will make a material change to an Index then the Calculation Agent shall make any such adjustments to the Index consistent with the adjustments made to the Related Bond, or, if there is no Related Bond, only those adjustments necessary for the modified Index to continue as the Index.

*Manifest Error in Publication*

If, within 30 days of publication, the Calculation Agent determines that the Index Sponsor has corrected the level of the Index to remedy a manifest error in its original publication, the Calculation Agent will notify the Fiscal Agent and the Noteholders in accordance with the Terms and Conditions of the Notes of (i) that correction and (ii) the amount that is payable as a result of that correction and the Calculation Agent will take such other action as it may deem necessary to give effect to such correction.

*Related Bond*

The Related Bond shall be a bond specified in the Final Terms or if no bond is specified as the Related Bond therein, the Related Bond shall be the Fallback Bond. If the bond specified to be the Related Bond redeems or matures during the term of the Notes, the Related Bond shall be the Fallback Bond.

*Fallback Bond*

The Fallback Bond will be a bond selected by the Calculation Agent and issued by the government of the country to whose level of inflation the Index relates and which pays a coupon or redemption amount which is calculated by reference to the Index, with a maturity date which falls on (a) the same day as the Maturity Date (b) the next longest maturity after the Maturity Date if there is no such bond maturing on the Maturity Date, or (c) the next shortest maturity before the Maturity Date if no bond defined in (a) or (b) is selected by Calculation Agent. If the Index relates to the level of inflation in the European Monetary Union, the Calculation Agent will select an inflation-linked bond that constitutes a debt obligation of one of the governments (but not any government agency) of France, Italy, Germany or Spain which pays a coupon or redemption amount which is calculated by reference to the level of inflation in the European Monetary Union. In each case, the Calculation Agent will select the Fallback Bond from those inflation-linked bonds issued on or before the Issue Date of the Notes. If there is more than one bond maturing on the same date, the Fallback Bond shall be selected by the Calculation Agent from those bonds. If the Fallback Bond redeems the Calculation Agent will select a new Fallback Bond on the same basis, but selected from all eligible bonds in issue at the time the original Fallback Bond redeems (including any bond for which the redeemed bond is exchanged).

*Determinations by the Calculation Agent*

All determinations, calculations or valuations made by the Calculation Agent under or pursuant to the terms of the Notes shall be made in its sole and absolute discretion and the Calculation Agent shall be solely responsible for the determination and calculation of any and all determinations, calculations or valuations in accordance with the terms of the Notes. All such determinations, calculations or valuations made by the Calculation Agent shall be conclusive and binding. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation, any costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of this functions, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.

Nothing contained herein shall prevent the Calculation Agent from dealing in these Notes or from entering into any related transactions, including without limitation any swap or hedging transactions, with the Issuer or any holder of Notes.

**6.    Payment Currency**

(a)    *Payment in Specified Currency*

Except as provided below or in the applicable Final Terms, payment of the principal of (including premium, if any, and in the case of a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) and interest, if any, on each Note will be made in the Specified Currency of such Note (or, if the Specified Currency at the time of such payment is no longer used by the government of the country issuing such currency or for the settlement of transactions by public institutions of or within the international banking community, in such other coin or currency of the country which issued the Specified Currency which at the time of payment is used by the government of the country issuing such currency and for the settlement of transactions by public institutions of or within the international banking community).

(b)    *Specified Currency Unavailable*

Except as provided in Condition 6(a) (Payment in Specified Currency), if the Specified Currency is unavailable due to the imposition of exchange controls or other circumstances beyond the control of the Issuer, or is no longer used by the government of the country which issued such currency or for the settlement of transactions by public institutions of or within the international banking community, such Issuer will be entitled to make such payments in such coin or currency of the United States as is at the time of payment legal tender for the payment of public and private debts on the basis of the most recently available Market Exchange Rate (defined below) for such Specified Currency preceding the day on which such payment is due. Any payment made under such circumstances in U.S. dollars will not constitute an Event of Default (as defined in Condition 10 (Events of Default)) under the Notes. "*Market Exchange Rate*" means the noon buying rate in New York City for cable transfers in non-U.S. currencies as certified for customs purposes by the Federal Reserve Bank of New York for the applicable Specified Currency.

(c)    *Redenomination of Specified Currency*

In the event of an official redenomination of the Specified Currency the obligations of the Issuer to make payments in or with reference to such currency shall, in all cases, be deemed immediately following such redenomination to be obligations to make payments in or with reference to that amount of redenominated currency representing the amount of such currency immediately before such redenomination. Except to the extent the Notes provide for Index-Linked Interest or an Index-Linked Redemption Amount in the applicable Final Terms provide for the adjustment of the amount of principal or interest payable in respect of such Notes pursuant to application of the formulas provided for in the applicable Final Terms, no adjustment will be made to any amount payable under such Notes

as a result of any change in the value of the Specified Currency thereof relative to any other currency due solely to fluctuations in exchange rates.

(d)    *Determinations Conclusive*

All determinations referred to in Conditions 6(b) (Specified Currency Unavailable) or 6(c) (Redenomination of Specified Currency) above made by the Fiscal Agent shall be at its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and binding on the Issuer and all Holders of Notes and any Coupons, Receipts or Talons relating thereto. Holders of Notes and any Coupons, Receipts or Talons relating thereto shall not be entitled to make any claim whatsoever against the Issuer on account of or in relation to such determinations regardless of any errors or omissions with respect thereto which may be made by the Fiscal Agent.

## 7.    Payment of Principal and Interest; Paying Agents

(a)    *Place of Payment*

No payment of principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) or interest, if any, in respect of any Note in bearer form (and any Notes in registered form issued by LBHI and having a maturity of 183 days or less) will be made at an office of LBHI, LBTCBV or LBB or any agent of LBHI, LBTCBV or LBB in the United States or by check mailed to any address in the United States or by transfer to an account maintained with a bank located in the United States, except as may be permitted by United States tax law in effect at the time of such payment without detriment to LBHI, LBTCBV or LBB. Notwithstanding the foregoing, such payments may be made in U.S. dollars at an office or agency located in the United States, if (but only if) the Specified Currency is the U.S. dollar and payment of the full amount so payable in U.S. dollars at each office of the Fiscal Agent and of each Paying Agent outside the United States appointed and maintained pursuant to the Fiscal Agency Agreement is illegal or effectively precluded by exchange controls or other similar restrictions and the relevant payment is permitted by applicable U.S. law. Any payment made under such circumstances will not constitute an Event of Default under the Notes. As used in this Condition 7 (Payment of Principal and Interest; Paying Agents), "*United States*" means the United States of America (including the States and the District of Columbia); and its possessions include Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands.

(b)    *Payments on Global Notes*

The principal (including premium, if any, and in the case of a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) and interest, if any, due in respect of any portion of a temporary global Note in bearer form will be paid in immediately available funds to each of Euroclear and Clearstream, Luxembourg with respect to that portion of such temporary global Note held for its account but only upon receipt by the Fiscal Agent of written certification with respect to such portion from Euroclear or Clearstream, Luxembourg, as the case may be, delivered prior to each such date in the form required by the Fiscal Agency Agreement, dated no earlier than such payment date, which certificate must be based on certifications provided to it by its account holders as to non-U.S. beneficial ownership of interests in such temporary global Note as required by U.S. Treasury regulations and as set forth in the Fiscal Agency Agreement. Payments of principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, due in respect of any portion of a permanent global Note in bearer form or a global Note in registered form will be made in immediately available funds to each of Euroclear, Clearstream, Luxembourg or DTC, as applicable, as is appropriate with respect to the portion of such permanent global Note or a global Note in registered form, as the case may be, held for its account without certification as aforesaid. Each of Euroclear, Clearstream, Luxembourg or DTC, as applicable, will undertake in such circumstances to credit any such amounts received by it to the respective accounts of the persons who are the owners of such interests on the date on which such amounts are paid. Any such amounts so received by Euroclear, Clearstream, Luxembourg or DTC, as

applicable, and not so paid shall be returned to the Fiscal Agent immediately prior to the expiration of two years after the receipt thereof.

(c)    *Payments on Definitive Bearer Notes*

Any interest on definitive Notes in bearer form (and any Notes in registered form issued by LBHI and having a maturity of 183 days or less) of a Series shall be payable by check mailed to an address outside the United States or by wire transfer to an account maintained outside the United States upon surrender of any applicable Coupon; payment of instalments of principal (if any), shall be payable by check mailed to an address outside the United States or by wire transfer to an account maintained outside the United States upon surrender of the applicable Receipt and presentation of the Note to which such Receipt relates (without which presentation such Receipt shall not be valid); and principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) on definitive Notes in bearer form of such Series at their maturity shall be payable by check or by wire transfer upon surrender of such Notes, in each case at such offices or agencies of the Fiscal Agent or any Paying Agent outside the United States as LBHI, LBTCBV or LBB may from time to time designate, unless LBHI, LBTCBV or LBB shall have otherwise instructed the Fiscal Agent, or additionally or alternatively, in such other manner as may be set forth or provided for in the applicable Final Terms.

(d)    *Payments on Definitive Registered Notes*

Any interest (other than interest payable at maturity or upon redemption) on definitive Notes in registered form (other than any Notes in registered form issued by LBHI and having a maturity of 183 days or less) of a Series shall be payable by check or (if a Registered Holder shall have designated an account to which payment should be made at least 15 calendar days prior to the date on which payment is due) by wire transfer, to the Holders in whose name such definitive Notes are registered (*"Registered Holders"*) at the close of business on the 15th calendar day (whether or not a Business Day) preceding the date such interest is due and any principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, payable at maturity or upon redemption of definitive Notes in registered form of a Series shall be payable by check or (subject as aforesaid) by wire transfer upon surrender of such Notes, to the Registered Holders, in each case at such offices or agencies of any Paying Agent as LBHI, LBTCBV or LBB may from time to time designate, unless LBHI, LBTCBV or LBB shall have otherwise instructed the Registrar, or additionally or alternatively, in such other manner as may be set forth or provided for in the applicable Final Terms. If registered Notes are issued, a register will be maintained in accordance with the Fiscal Agency Agreement.

(e)    *Payments on Non-Business Days*

Subject to Condition 3(b)(i) (Interest Payment Dates), if any date for payment of any amount in respect of any Note, Receipt or Coupon is not a business day, then the payment to be made on such date may be made on the next day which is a business day, with the same force and effect as if made on the due date. As used in this Condition 7(e) (Payments on Non-Business Days), the term *"business day"* means any day which is both a Business Day (as defined in Condition 3 (Interest)) and, in the case of any Note in bearer form, a day on which commercial banks and foreign exchange markets settle payments generally in the relevant place of presentation of such Note.

(f)    *Stamp Duties, Etc.*

LBHI, LBTCBV and LBB will pay all stamp and other duties, if any, which may be imposed by the United States, The Netherlands or the Federal Republic of Germany or any political subdivision or taxing authority thereof with respect to the execution and delivery of the Fiscal Agency Agreement or the issuance of the Notes.