(g)    *Exchange of Coupons and Talons*

On and after the Interest Payment Date on which the final Coupon on any Coupon sheet matures, the Talon (if any) forming part of such Coupon sheet may be surrendered at the specified office of the Fiscal Agent or any Paying Agent in exchange for a further Coupon sheet including (if such further Coupon sheet does not include Coupons to and including the final date for the payment of interest due in respect of the Note to which it appertains) a further Talon, subject to the provisions of Condition 17 (Prescription). Each Talon shall, for the purposes of these Terms and Conditions, be deemed to mature on the Interest Payment Date on which the final Coupon comprised in the related Coupon sheet matures.

(h)    *Fiscal Agent, Registrar and Paying Agents*

The names of the initial Fiscal Agent, Registrar and Paying Agents and their initial specified offices are set forth below. LBHI, LBTCBV and LBB have initially designated the Fiscal Agent, acting through its principal offices in London, as its Principal Paying Agent for the Notes in bearer form. The Paying Agent located in London is also referred to herein as the "*Principal Paying Agent*". LBHI, LBTCBV and LBB have covenanted that until the Notes of a Series have been delivered to the Fiscal Agent or the Registrar for cancellation, or monies sufficient to pay the principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, on the Notes of such Series will have been made available for payment and either paid or returned to the Issuer as provided in the Notes, there will at all times be (i) a Paying Agent in a Western European city, (ii) if and for so long as the Notes of any Series are listed on the Irish Stock Exchange and/or are admitted to trading and/or quotation by any other competent authority, stock exchange and/or quotation system, a Paying Agent with a specified office in Ireland and/or in such other place as may be required by the rules of such other competent authority, stock exchange and/or quotation system and (iii) a paying agent in an EU Member State that will not be obliged to withhold or deduct tax pursuant to European Council Directive 2003/48/EC or any other Directive implementing the conclusions of the ECOFIN Council meeting of 26-27 November 2000 or any law implementing or complying with, or introduced in order to conform to, such Directive. A notice of any change of the Fiscal Agent, Registrar, Principal Paying Agent or Paying Agents will be given to the Holders of the Notes in accordance with Condition 15 (Notices).

**8.    Repayment, Redemption and Repurchase**

(a)    *At Maturity*

Unless previously redeemed or purchased and cancelled as specified below, each Note will be redeemed by the Issuer at its Final Redemption Amount specified in, or determined in the manner specified in, the applicable Final Terms in the relevant Specified Currency (except as otherwise provided in Condition 6 (Payment Currency)). Unless otherwise specified in the applicable Final Terms, the Final Redemption Amount shall be 100% of the Aggregate Nominal Amount outstanding of each Note.

(b)    *Instalment Notes*

If the Notes are repayable in instalments, they will be repaid in the Instalment Amounts on the Instalment Dates specified in the applicable Final Terms.

(c)    *Redemption for Tax Reasons*

The Notes may be redeemed prior to their Maturity Date for tax reasons as provided in Condition 9 (Payments of Additional Amounts; Tax Redemption).

(d)    *Redemption at the Option of the Issuer*

If so specified in the applicable Final Terms, the Issuer may, having (unless otherwise specified in the applicable Final Terms) given not more than 60 nor less than 30 days' notice to the Holders of the Notes in accordance with Condition 15 (Notices) (which notice shall be irrevocable), redeem all or only some of the Notes then outstanding on any Optional Redemption Date and at the Optional Redemption Amount(s) specified in, or determined in the manner specified in, the applicable Final Terms together with accrued interest (if any) to the date fixed for redemption (which date, in the case of Floating Rate Notes or Index-Linked Interest Notes, must be an Interest Payment Date). If the Notes are to be redeemed in part only on any date in accordance with this Condition 8(d) (Redemption at the Option of the Issuer), the Notes to be redeemed shall be in an amount at least equal to the Minimum Redemption Amount and not greater than the Higher Redemption Amount (in each case as may be specified in the applicable Final Terms) and shall be selected by the drawing of lots in such place as the Fiscal Agent (or, if any such option is being exercised in respect of Notes in registered form, the Registrar) approves and in such manner as the Fiscal Agent (or, if any such option is being exercised in respect of Notes in registered form, the Registrar) considers appropriate, subject to compliance with applicable law and the rules of each competent authority, stock exchange and/or quotation system (if any) by which the Notes have then been admitted to listing, trading and/or quotation, and the notice to Noteholders referred to in this Condition 8(d) (Redemption at the Option of the Issuer) shall specify the serial numbers of the Notes so to be redeemed.

(e)    *Redemption at the Option of the Noteholders*

If and to the extent specified in the applicable Final Terms, upon the Holder of any Note giving to the Issuer in accordance with Condition 15 (Notices) not more than 60 nor less than 30 days' notice (unless otherwise specified in the applicable Final Terms), which notice shall be irrevocable, the Issuer will, upon the expiry of such notice, redeem subject to, and in accordance with, the terms specified in the applicable Final Terms in whole or in part such Note (and, if in part, in an amount at least equal to the Minimum Redemption Amount and not greater than the Higher Redemption Amount) on the Optional Redemption Date and at the Optional Redemption Amount specified in, or determined in the manner specified in, the applicable Final Terms together with accrued interest (if any) to the date fixed for redemption. In order to exercise the option contained in this Condition 8(e) (Redemption at the Option of the Noteholders), the Holder of a Note must, not more than 60 nor less than 30 days' (unless otherwise specified in the applicable Final Terms) before the date fixed for redemption, deposit with any Paying Agent such Note together with all unmatured Coupons and Talons relating thereto and a duly completed Put Option Notice in the form obtainable from any Paying Agent. The Paying Agent with which a Note is so deposited shall deliver a duly completed Put Option Receipt to the depositing Noteholder. No Note, once deposited with a duly completed Put Option Notice in accordance with this Condition 8(e) (Redemption at the Option of the Noteholders), may be withdrawn; provided, however, that if, prior to the date fixed for redemption, any such Note becomes immediately due and payable or, upon due presentation of any such Note on the date fixed for redemption, payment of the redemption moneys is improperly withheld or refused, the relevant Paying Agent shall mail notification thereof to the depositing Noteholder at such address as may have been given by such Noteholder in the relevant Put Option Notice and shall hold such Note at its specified office for collection by the depositing Noteholder against surrender of the relevant Put Option Receipt. For so long as any outstanding Note is held by a Paying Agent in accordance with this Condition 8(e) (Redemption at the Option of the Noteholders), the depositor of such Note and not such Paying Agent shall be deemed to be the Holder of such Note for all purposes, *provided, however, that* for so long as any Notes are represented by a temporary or permanent global Note in bearer form, the Notes to be redeemed shall be selected in accordance with the rules and procedures of Euroclear and Clearstream, Luxembourg (to be reflected in the records of Euroclear and Clearstream, Luxembourg as either a pool factor or a reduction in principal amount, at their discretion).

(f)    *Early Redemption Amounts*

For the purposes of paragraph 8(c) (Redemption for Tax Reasons) above and Conditions 9 (Repayment of Additional Amounts; Tax Redemption) and 10 (Events of Default), the Notes will be redeemed at an amount (the "*Early Redemption Amount*") calculated as follows (unless otherwise specified in the applicable Final Terms):

(i)    in the case of Notes with a Final Redemption Amount equal to the Issue Price, at the Final Redemption Amount thereof;

(ii)    in the case of Notes with a Final Redemption Amount which is or may be less or greater than the Issue Price, or which is payable in a Specified Currency other than that in which the Notes are denominated, at the amount set out in, or determined in the manner set out in, the applicable Final Terms or, if no such amount or manner is set out in the Final Terms, at their principal amount; or

(iii)    in the case of Zero Coupon Notes, at their Accrual Yield Amount.

(g)    *Purchases*

The Issuer or any of its subsidiaries or affiliates may at any time purchase Notes (provided that, in the case of definitive Notes in bearer form, all unmatured Receipts and Coupons appertaining thereto are surrendered therewith) in the open market or by tender at any price. Notes purchased as aforesaid may, at the option of the purchaser thereof, be held, resold or surrendered for cancellation.

(h)    *Cancellation*

All Notes redeemed in full by the Issuer will be cancelled forthwith (together with all unmatured Receipts and Coupons surrendered therewith or attached thereto) and may not be reissued or resold.

(i)    *Procedure for Payment upon Redemption*

If notice of redemption has been given in the manner set forth herein, the Notes of a Series to be redeemed shall become due and payable on the redemption date specified in such notice and upon presentation and surrender of the Notes at the place or places specified in such notice, together with all appurtenant Coupons and Talons, if any, maturing subsequent to the redemption date, the Notes shall be paid and redeemed by the Issuer thereof at the places and in the manner and currency therein specified and at the redemption price therein specified together with accrued interest, if any, to the redemption date. If any Fixed Rate Note (other than an Index-Linked Redemption Amount Note or a Dual Currency Note) surrendered for redemption shall not be accompanied by all appurtenant Coupons, if any, maturing after the redemption date (which expression shall include Coupons which are to be issued on exchange of Talons which will have matured on or before the relevant redemption date), such Note may be paid after deducting from the amount otherwise payable an amount equal to the face amount of all such missing Coupons (or, in the case of payment not being made in full, that proportion of the full amount of such missing unmatured Coupons which the sum so paid bears to the total amount due) or the surrender of such missing Coupon or Coupons may be waived by the Issuer, the Guarantor, if applicable, and the Fiscal Agent if they are furnished with such security or indemnity as they may require to save each of them and each other paying agent of the Issuer and, if applicable, the Guarantor harmless. If a deduction is made from the redemption price in the case of any such missing Coupon and thereafter, but prior to five years after the redemption date, the bearer of such Coupon shall surrender such Coupon at a place specified for redemption, such bearer shall be entitled to receive the amount so deducted with respect to such Coupon. Upon any Fixed Rate Note becoming due and payable prior to its Maturity Date, all unmatured Talons, if any, appertaining thereto and maturing on or after such due date will become void and no further Coupons will be issued in respect thereof. Any unmatured Coupons and Talons, whether attached to or missing from any Floating Rate Note, Dual Currency Note or Index-Linked Note surrendered for redemption, will become void at the redemption date for such Note. From and after the redemption date, if monies for the redemption of

Notes called for redemption shall have been made available at the corporate trust office of the Fiscal Agent for redemption on the redemption date, the Notes called for redemption shall cease to bear interest (and in the case of Zero Coupon Notes, cease to increase the Accrual Yield Amount payable in respect thereof), and the only right of the Holders of such Notes shall be to receive payment of the redemption price together with accrued interest, if any, to the redemption date as aforesaid.

## 9.    Payment of Additional Amounts; Tax Redemption

(a)    *Additional Amounts*

The Issuer or the Guarantor, as the case may be, will pay, subject to certain exceptions set forth below and to the right of redemption as provided in Condition 9(b) (Tax Redemption) below, to a Holder of a Note, Coupon or Receipt such additional amounts ("*Additional Amounts*") as may be necessary in order that every net payment of the principal (including premium, if any, and in the case of a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) and interest, if any, on any Note, Coupon or Receipt appertaining thereto, after deduction or withholding for or on account of any present or future tax, assessment or other governmental charge imposed upon such Holder, or by reason of the making of such payments, by the country in which such Issuer or the Guarantor (as the case may be) is organized or in which such payments are regarded as being sourced, or any taxing authority thereof or therein, will not be less than the amount provided for in such Note, such Coupon or in such Receipt to be then due and payable. Neither the Issuer nor the Guarantor, as the case be, shall be required, however, to make any payment for any Additional Amounts for or on account of:

(i)    any tax, assessment or other governmental charge which would not have been imposed but for (A) the existence of any present or former connection between such Holder (or between a fiduciary, settlor, beneficiary of, member or shareholder of, or possessor of a power over, such Holder, if such Holder is an estate, trust, partnership or corporation) and the jurisdiction in which such Issuer or the Guarantor, as the case may be, is organized or in which such payments are regarded as being sourced, including, without limitation, such Holder (or such fiduciary, settlor, beneficiary, member, shareholder or possessor) being or having been a citizen or resident or treated as a resident thereof or being or having been engaged in trade or business or present therein, or having or having had a permanent establishment therein or (B) the presentation of a Note or any Coupon or Receipt appertaining thereto for payment on a date more than 10 days after the Relevant Date (as defined below);

(ii)    any estate, inheritance, gift, sales, transfer, excise, personal property or similar tax, assessment or other governmental charge;

(iii)    in the case of any tax imposed by the United States, any tax, assessment or other governmental charge imposed by reason of such Holder's past or present status as a passive foreign investment company, a controlled foreign corporation, a personal holding company or foreign personal holding company with respect to the United States, as a private foundation or other tax exempt organization for United States federal income tax purposes, or as a corporation which accumulates earnings to avoid United States federal income tax;

(iv)    any tax, assessment or other governmental charge which is payable otherwise than by withholding from payment of principal of, or interest on, such Note, Coupon or Receipt;

(v)    any tax, assessment or other governmental charge required to be withheld by any Paying Agent from any payment of principal of, or interest on, any Note, Coupon or Receipt (A) if such payment can be made without withholding by any other Paying Agent or (B) in the case of any tax imposed by the United Kingdom, which is presented for payment in the United Kingdom;

(vi)    any tax, assessment or other governmental charge which would not have been imposed but for the failure to comply with certification, information, documentation or other reporting requirements concerning the nationality, residence, identity or connections with the relevant tax authority of the Holder or beneficial owner of such Note, Coupon or Receipt, if such

compliance is required by statute or by regulation as a precondition to relief or exemption from such tax, assessment or other governmental charge;

(vii)  in the case of any tax imposed by the United States, any tax, assessment or other governmental charge imposed on (A) interest received by a Holder or beneficial owner of a Note, Coupon or Receipt that is a 10% shareholder (as defined in Section 871 (b) (3) (B) of the United States Internal Revenue Code of 1986, as amended (the "*Code*"), and the regulations that may be promulgated thereunder) of LBHI or (B) interest that is treated as contingent interest described in Section 871(h)(4) of the Code;

(viii)  any withholding or deduction imposed on a payment to an individual and is required to be made pursuant to European Council Directive 2003/48/EC or any other Directive implementing the conclusions of the ECOFIN Council meeting of November 26-27, 2000 on the taxation of savings income;

(ix)  a Noteholder, Receiptholder or Couponholder who would have been able to avoid such withholding or deduction by presenting the relevant Note, Receipt or Coupon to, or arranging to receive payment through, another Paying Agent in a Member State of the EU, or

(x)  in the case of any tax imposed by the United States, any tax, assessment or other governmental charge imposed in respect of any Notes issued by (i) LBHI that are not fully principal protected (which means that the Final Redemption Amount may be less than the nominal amount of the Notes); or (ii) LBB or LBTCBV, that are not fully principal protected (as defined in (i) above) and that are linked to an underlying asset which consists (wholly or partly) of a share issued by a U.S. issuer;

(xi)  any combination of items (i) through (x);

nor shall any Additional Amounts be paid to any Holder who is a fiduciary or partnership or other than the sole beneficial owner of such Note, Coupon or Receipt appertaining thereto to the extent that a beneficiary or settlor with respect to such fiduciary, or a member of such partnership or a beneficial owner thereof would not have been entitled to the payment of such Additional Amounts had such beneficiary, settlor, member or beneficial owner been the Holder of the Note or any Coupon or Receipt appertaining thereto.

The term "*Relevant Date*" means either (i) the date on which such payment first becomes due or (ii) if the full amount of the moneys payable has not been received by the Fiscal Agent on or prior to such due date, the date on which all moneys then due for payment shall have been so received and notice to that effect shall have been duly given to the Noteholders in accordance with Condition 15 (Notices).

(b)  *Tax Redemption*

Subject to the conditions described below, the Notes of any Series may be redeemed, as a whole but not in part, at the option of the Issuer (or, in the case of LBTCBV Notes and LBB Notes, at the option of the Guarantor), upon not more than 60 days' nor less than 30 days' prior notice (given in accordance with Condition 15 (Notices)) to the Holders thereof at a redemption price equal to the Early Redemption Amount (as defined in Condition 8(f) (Early Redemption Amount)), together with interest accrued, if any, to but excluding the date fixed for redemption (which date, in the case of Floating Rate Notes or Index-Linked Interest Notes, must be an Interest Payment Date), if on the next succeeding Interest Payment Date the Issuer (or, in the case of LBTCBV Notes and LBB Notes, in the case of any payment by the Guarantor pursuant to the Guarantee, the Guarantor) determines that, as a result of any change in or amendment to the laws or treaties, or any regulations or rulings promulgated thereunder, of the country in which the Issuer or the Guarantor, as the case may be, is organized affecting taxation, or any proposed change in such laws, treaties, regulations or rulings, or any change in the official application, enforcement or interpretation of such laws, treaties, regulations or rulings (including a holding by a court of competent jurisdiction in the country in which the Issuer or the Guarantor, as the case may be, is organized affecting taxation) which change or amendment

becomes effective or is proposed on or after the Issue Date of the first Tranche of Notes of that Series, or any other action predicated on such amendment or change taken by any taxing authority or court of competent jurisdiction in the country in which the Issuer or the Guarantor, as the case may be, is organized or the official proposal of such action, whether or not such action or proposal was taken or made with respect to the Issuer or the Guarantor, the Issuer or the Guarantor, as the case may be, has or will or, if the Guarantees were called, would become obligated to pay Additional Amounts on any Note, Coupon or Receipt and such obligation cannot be avoided by the Issuer or the Guarantor, as the case may be, by any reasonable measures available to it which (in the good faith opinion of the Issuer or the Guarantor, as the case may be) will not have a material adverse impact on the conduct of its business; provided that the Notes of any Series may not be so redeemed if, as of the date of an assumption of the obligations of LBTCBV or LBB (as applicable) under the Notes and under the Fiscal Agency Agreement and each Calculation Agency Agreement by any wholly-owned subsidiary of LBHI, such obligation to pay Additional Amounts arises because of the official application or interpretation of the laws or regulations affecting taxation in the country of which such wholly-owned subsidiary is organized. If the relevant Issuer or the Guarantor, as the case may be, provides an opinion of independent counsel licensed to practice law in the appropriate jurisdiction, dated as of the date of such assumption, that no obligation to pay Additional Amounts arises, then that opinion shall be final and binding, solely for purposes of this paragraph, on such Issuer, the Guarantor, the Fiscal Agent, the Registrar and the Holders of the Notes of such Series as to the law of the relevant jurisdiction at the date of such opinion.

Prior to the giving of any notice of redemption pursuant to the preceding paragraph, the Issuer shall deliver to the Fiscal Agent (and, if an option is being exercised in respect of Notes in registered form, the Registrar) (i) a certificate stating that the Issuer is entitled to effect such redemption and setting forth a statement of facts showing that the conditions precedent to the right of the Issuer to so redeem have occurred and (ii) an opinion of counsel to such effect based upon such statement of facts.

In addition, no such notice of redemption shall be given earlier than 90 days prior to the earliest date on which the Issuer or the Guarantor, as the case may be, would be obligated to pay Additional Amounts were a payment in respect of the Notes (or the Guarantees, as the case may be) then due.

If the Issuer (or, in the case of payments made by the Guarantor pursuant to the Guarantee, the Guarantor) determines that any payment made outside the United States by the Issuer or the Guarantor, as the case may be, or any of their paying agents of principal, interest, original issue discount or premium due in respect of any Note in bearer form, Coupon or Receipt would be, under any present or future laws or regulations of the United States, subject to any certification, information or other reporting requirement of any kind, the effect of which requirement is the disclosure to the Issuer or the Guarantor, as the case may be, any paying agent or any governmental authority of the nationality, residence or identity of a beneficial owner of such Note, Coupon or Receipt who is a United States Alien (other than such a requirement (i) that would not be applicable to a payment made by the Issuer or the Guarantor, as the case may be, or any of their paying agents (A) directly to the beneficial owner or (B) to a custodian, nominee or other agent of the beneficial owner, or (ii) that can be satisfied by such custodian, nominee or other agent certifying to the effect that such beneficial owner is a United States Alien, or (iii) that would not be applicable in the case of payment made by any other paying agent, provided that in each case referred to in clauses (i) (B) and (ii) payment by such custodian, nominee or agent to such beneficial owner is not otherwise subject to any such requirement), the Issuer at its election will either (X) redeem the Notes, in whole, at a redemption price equal to the Early Redemption Amount, together with interest accrued, if any, to but excluding the date fixed for redemption, or (Y) if and so long as the conditions of the next succeeding paragraph are satisfied, pay the Additional Amounts specified in such paragraph; provided that if any Holder fails to present its Note, together with all appurtenant Coupons, Receipts and Talons, if any, for redemption specified in clause (X) above, such Holder will not be entitled to any Additional Amounts. The Issuer will make such determination and such election and notify the Fiscal Agent (and, if an option is being exercised in respect of Notes in registered form, the Registrar) as soon as practicable, and the Fiscal Agent (or, if an option is being exercised in respect of Notes in registered form, the Registrar) will promptly give notice thereof (the "*Determination Notice*"), stating the effective date of such

certification, information or other reporting requirement, whether the Issuer has elected to redeem the Notes or to pay the Additional Amounts specified in the next succeeding paragraph, and (if applicable) the last date by which the redemption of the Notes must take place. If the Issuer elects to redeem the Notes, such redemption will take place on such date, not later than one year after the publication of the Determination Notice, as the Issuer elects by notice to the Fiscal Agent (and, if an option is being exercised in respect of Notes in registered form, the Registrar) at least 60 days before the redemption date, unless shorter notice is acceptable to the Fiscal Agent. Notwithstanding the foregoing, the Issuer will not so redeem the Notes if the Issuer subsequently determines, not less than 30 days prior to the redemption date, that subsequent payments would not be subject to any such requirement, in which case the Issuer will notify the Fiscal Agent (and, if an option is being exercised in respect of Notes in registered form, the Registrar) which will give prompt notice of such determination and any earlier redemption notice will be revoked and will have no further effect. If the Issuer elects as provided in clause (Y) above to pay Additional Amounts, and as long as the Issuer is obligated to pay such Additional Amounts, the Issuer may subsequently redeem the Notes, at any time, as a whole but not in part, at a redemption price equal to the Early Redemption Amount, together with interest accrued, if any, to but excluding the date fixed for redemption, but without reduction for United States withholding taxes discussed in this paragraph. The term "*United States Alien*" means any person that is, as to the United States, a foreign corporation, a non-resident alien individual, a non-resident alien fiduciary of a foreign estate or trust or a foreign partnership one or more of the members of which is, as to the United States, a foreign corporation, a non-resident alien individual or a non-resident alien fiduciary of a foreign estate or trust.

If and so long as certification, information or other reporting requirements referred to in the immediately preceding paragraph would be fully satisfied by payment of a backup withholding tax or similar charge, the Issuer may elect (or the Guarantor may cause the Issuer to elect, as the case may be), by so stating in the Determination Notice, to have the provisions of this paragraph apply in lieu of the provisions of the preceding paragraph. In such event, the Issuer or the Guarantor, as the case may be, will pay Additional Amounts to Holders who are United States Aliens, provided that the backup withholding tax or similar charge is not a charge which:

(i)     would not be applicable to a payment made to a custodian, nominee or other agent of the beneficial owner or which can be satisfied by such a custodian, nominee or other agent certifying to the effect that such beneficial owner is a United States Alien; provided, however, in each case that payment by such custodian, nominee or agent to such beneficial owner is not otherwise subject to any requirement referred to in this paragraph;

(ii)    is applicable only to payment by a custodian, nominee or other agent of the beneficial owner to such beneficial owner;

(iii)   would not be applicable to a payment made by any other paying agent;

(iv)    is imposed as a result of the fact that the Issuer or the Guarantor, as the case may be, or any paying agent has actual knowledge that the beneficial owner of such Note, Coupon or Receipt is a U.S. person; or

(v)     is imposed as a result of presentation of such Note, Receipt or Coupon for payment more than 10 days after the date on which such payment becomes due and payable or on which payment thereof is duly provided for, whichever occurs later.

## 10.    Events of Default

(a)     *Events of Default*

An "*Event of Default*" with respect to any Note of a particular Series shall mean any one or more of the following:

(i)    default in the payment of any interest or Additional Amounts, if any, upon any Note of that Series and any related Coupon when it becomes due and payable, and continuance of such default for a period of 30 days;

(ii)    default in the payment of the principal of (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount thereof) any Note of that Series when it becomes due and payable;

(iii)    default in the making or satisfaction of any sinking fund payment or analogous obligation when the same becomes due and payable by the terms of any Note of that Series, and continuance of such default for a period of 30 days;

(iv)    default in the observance or performance, or breach, of any other material covenants or agreements of the Issuer (or, if applicable, the Guarantor) in respect of the Notes of that Series contained in the Fiscal Agency Agreement or such Notes (other than a covenant or warranty in respect of the Notes of such Series, a default in the performance of which or the breach of which is elsewhere in this section specifically dealt with or which has expressly been included in the Fiscal Agency Agreement or such Notes solely for the benefit of Series of Notes other than that Series), and continuance of such default or breach for a period of 90 days after there has been given, by registered or certified mail, to (A) the Issuer (and LBHI, if LBTCBV or LBB is the Issuer) or, if applicable, the Guarantor and (B) the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) by the Holders of at least 25% in principal amount of the Outstanding (as defined in Condition 12 (Meetings and Amendments)) Notes of that Series a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a *"Notice of Default"*;

(v)    the entry by a court having jurisdiction in the premises of (A) a decree or order for relief in respect of LBHI in an involuntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or (B) a decree or order adjudging LBHI bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of LBHI under any applicable U.S. federal or state law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of LBHI or of any substantial part of its property, or ordering the winding-up or liquidation of its affairs, and the continuance of any such decree or order for relief of any such other decree or order unstayed and in effect for a period of 60 consecutive days;

(vi)    the commencement by LBHI of a voluntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated bankrupt or insolvent, or the consent by it to the entry of a decree or order for relief in respect of it in an involuntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under any applicable U.S. federal or state law, or the consent by it to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or similar official of LBHI or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts generally as they become due, or the taking of corporate action by LBHI in furtherance of any such action;

(vii)    except as provided in Condition 13 (Assumption of Obligations) hereof, any of the Guarantees shall cease to be in full force or effect, or LBHI shall deny or disaffirm any of its obligations under any of the Guarantees;

(viii)    in the case of LBTCBV Notes, if LBTCBV applies for suspension of payment (*"surséance van betaling"*) or is declared bankrupt (*"failliet verklaard"*), in both cases within the meaning of the

Netherlands Bankruptcy Act ("*Faillissementswet*"), or becomes subject to analogous proceedings under the Netherlands Financial Market Supervision Act (*Wet op het financieel toezicht, the "WFT"*), or is unable to pay or shall admit in writing its inability to pay, or shall threaten to stop or suspend payment of, its debts as they fall due or shall otherwise become insolvent or applies for or consents to or suffers the appointment of an administrator, liquidator or receiver of LBTCBV or of the whole or any substantial part of the undertaking, property, assets or revenues of LBTCBV or takes any proceeding under any law for a readjustment or deferment of its obligations or any substantial part of them or makes or enters into a general assignment or an arrangement or composition with or for the benefit of its creditors, or ceases or threatens to cease to carry on all or any substantial part of its business or is wound up;

(ix)    in the case of LBB Notes, if (aa) LBB stops payments or announces that it is not in a position to meet its financial obligations; (bb) bankruptcy, composition or any insolvency proceedings are instituted against LBB which shall not have been dismissed or stayed within 60 days after institution; (cc) LBB applies for institution of such proceedings, or LBB offers or makes an arrangement for the benefit of its creditors generally, due to financial difficulties; or (dd) LBB ceases or through an official action of the Board of Directors of LBB threatens to cease to carry on business, in any case otherwise than in connection with a Reorganisation (as defined below); or

(x)    In the case of LBHI Subordinated Notes, other than as specified in Conditions 10(a)(v) and 10(a)(vi) no event or circumstance described in Conditions 10(a)(i) to 10(a)(ix) shall constitute an "*Event of Default*".

For the purposes of these Terms and Conditions, "*Reorganisation*" means a consolidation, amalgamation, merger or reorganisation of LBB with another company, and

(A)    the terms of the Reorganisation provide that:

–    the obligations of LBB under the Notes (the "*Predecessor*") are assumed by a successor company of the Predecessor which succeeds to the rights and assets of the Predecessor substantially proportionate to the liabilities of the Predecessor, and

–    such successor company does not assume any other substantial obligations or liabilities unless other rights and assets are transferred to it in approximately the same proportion as described above, and

(B)    the Reorganisation does not have any material adverse effect on the Holders or 10 per cent. or more of them.

(b)    *Automatic Rescission in Certain Circumstances*

So long as no other Event of Default has then occurred and is continuing or would result therefrom, if an Event of Default specified in paragraph (viii) shall have occurred, said Event of Default shall automatically be deemed rescinded and annulled if LBHI shall have assumed the obligations of LBTCBV or LBB (as applicable) under such Notes as referred to under Condition 13 (Assumption of Obligations) below within 30 days of the occurrence of such Event of Default.

(c)    *Remedies; Rescission; Waiver*

If an Event of Default with respect to Notes of any Series and any related Coupons or Receipts at the time Outstanding occurs and is continuing, then in every such case, unless the principal of all of the Notes of such Series shall have already become due and payable, the Holders of at least 25% in principal amount of the Outstanding Notes of that Series may declare the principal amount (or, if the Notes of that Series are Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) of all of the Notes of that Series to be due and payable immediately at their Early Redemption Amount, by a notice in writing to the Issuer and, if applicable, the Guarantor, and upon any such declaration

such Early Redemption Amount, together with the premium, if any, accrued and unpaid interest, if any, and Additional Amounts, if any, shall become immediately due and payable.

At any time after such a declaration of acceleration with respect to Notes of any Series has been made and before a judgment or decree for payment of the money due has been obtained, the Holders of at least a majority in principal amount of Outstanding Notes of that Series, by written notice to the Issuer and, if applicable, the Guarantor, and the Fiscal Agent (or, in the case of Notes in registered form, the Registrar), may rescind and annul such declaration and its consequences if (i) the Issuer or, if applicable, the Guarantor, has paid or deposited with the Fiscal Agent a sum sufficient to pay in the Specified Currency in which the Notes of such Series are payable: (A) all overdue interest, if any, on all Notes of that Series and any related Coupons and (B) the principal of (and premium, if any, on, and, if such Note is a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) any Notes of that Series which have become due otherwise than by such declaration of acceleration and interest thereon at the Fixed Rate of Interest, Rate of Interest or Accrual Yield, as the case may be, applicable to that Series; and (ii) all Events of Default with respect to Notes of that Series, other than the non-payment of the principal of Notes of that Series, which have become due solely by such declaration of acceleration, have been cured or waived as provided below. No such rescission shall affect any subsequent default or impair any right consequent thereon.

The Holders of at least a majority in principal amount of the Outstanding Notes of any Series and any related Coupons or Receipts may on behalf of the Holders of all the Notes of such Series waive any past default hereunder with respect to such Series and its consequences, except a default (i) in the payment of the principal of (or premium, if any, and, if such Note is a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) or interest, if any, on any Note of such Series, or in the payment of any sinking fund instalment or analogous obligation with respect to the Notes of such Series, or (ii) in respect of a covenant or provision hereof which as described under Condition 12(e) (Amendments Requiring Extraordinary Resolution of Noteholders) below cannot be modified or amended without the passing of an Extraordinary Resolution (as hereafter defined) by the Holders of the Outstanding Notes of such Series affected. Upon any such waiver, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of the Fiscal Agency Agreement and the Notes of such Series, but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

## 11. Negative Pledge with respect to Senior Notes

Except as may be otherwise provided in the Notes of a Series and in the applicable Final Terms, so long as any Senior Note remains Outstanding and unpaid, LBHI will not, and will not permit any Designated Subsidiary (as defined below) to, directly or indirectly, create, issue, assume, incur or guarantee any indebtedness for money borrowed which is secured by a mortgage, pledge, lien, security interest or other encumbrance of any nature on any of the present or future common stock of a Designated Subsidiary unless the Senior Guarantees and the Senior Notes issued by LBHI (and, if LBHI so elects, any other indebtedness of LBHI ranking at least pari passu with the Senior Guarantees and such Senior Notes) shall be secured equally and rateably with (or prior to) such other secured indebtedness for money borrowed so long as it is outstanding. As used herein, the following terms shall have the following meanings: "*Consolidated Net Worth*" means consolidated assets minus consolidated liabilities as calculated in accordance with generally accepted accounting principles in effect in the United States from time to time; "*Designated Subsidiary*" means any present or future consolidated Subsidiary the Consolidated Net Worth of which constitutes at least 5% of the Consolidated Net Worth of LBHI; and "*Subsidiary*" means a corporation more than 50% of the outstanding voting stock of which is owned, directly or indirectly, by LBHI or by one or more other Subsidiaries, or by LBHI and one or more other Subsidiaries. For the purposes of this definition, "*voting stock*" means stock which ordinarily has voting power for the election of directors, whether at all times or only as long as no senior class of stock has such voting power by reason of any contingency.

**12. Meetings and Amendments**

(a) *Meetings*

A meeting of Holders of Notes of one or more Series may be called at any time and from time to time by the Issuer to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Notes of such Series to be made, given or taken by Holders of Notes of such Series or to modify, amend or supplement the terms of the Notes of such Series or the Fiscal Agency Agreement as hereinafter provided. The Fiscal Agent (or, in the case of Notes in registered form, the Registrar) may at any time, and shall upon the request of the Issuer, call a meeting of Holders of Notes of one or more Series for any such purpose to be held at such time and at such place as the Issuer (and LBHI, if LBTCBV or LBB is the Issuer) shall determine. Notice of every meeting of Holders of Notes of a Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as specified in Condition 15 (Notices) not less than 30 nor more than 60 days' prior to the date fixed for the meeting. In case at any time the Holders of at least 10% in aggregate principal amount of the Outstanding Notes of a Series shall have requested the Issuer to call a meeting of the Holders of Notes of such Series to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Notes of such Series, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Issuer shall call such meeting for such purposes by giving notice thereof.

(b) *Quorum Requirements*

To be entitled to vote at any meeting of Holders of Notes of a Series, a person shall be (i) a Holder of Outstanding Notes of such Series or (ii) a person appointed by an instrument in writing as proxy for a Holder or Holders of Outstanding Notes of such Series by such Holder or Holders, which proxy need not be a Holder of Notes. The persons entitled to vote 10% in aggregate principal amount of the Outstanding Notes which may be affected by the action to be taken at such meeting, except as hereinafter provided, shall constitute a quorum for the transaction of all business referred to in the preceding paragraph. No business shall be transacted in the absence of a quorum unless a quorum is represented when the meeting is called to order. In the absence of a quorum within 30 minutes of the time appointed for any such meeting, the meeting shall, if convened at the request of the Holders of Notes (as provided above), be dissolved. In any other case the meeting may be adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such meeting. In the absence of a quorum at any such adjourned meeting, such adjourned meeting may be further adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such meeting. Notice of the reconvening of any adjourned meeting shall be given as provided in Condition 15 (Notices) except that notice must be given not less than five days prior to the date on which the meeting is scheduled to be reconvened. Subject to the foregoing, at the reconvening of any meeting adjourned for a lack of a quorum two or more persons who are present in person holding Notes which may be affected by the action to be taken at such meeting or who have been appointed by an instrument in writing as proxy for a Holder of such Notes by such Holder, which proxy need not be a Holder of Notes, shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. Notice of the reconvening of such an adjourned meeting shall state expressly the quorum requirements for any such reconvened meeting. Any Holder of a Note who has executed an instrument in writing appointing a person as his proxy shall be deemed to be present for the purposes of determining a quorum and be deemed to have voted; provided that such Holder shall be counted as present or voting only with respect to the matters covered by such instrument in writing (which may include authorization to vote on any other matters as may come before the meeting).

(c) *Regulations for Meetings*

The Fiscal Agent (or, in the case of a Series of Notes in registered form, the Registrar) may make such reasonable and customary regulations as it shall deem advisable for any meeting of Holders of Notes

of any Series with respect to the proof of the holding of Notes of such Series, the adjournment and chairmanship of such meeting, the appointment and duties of inspectors of votes, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(d)    *Certain Amendments*

Any meeting of Holders of Notes at which a quorum is present may be adjourned from time to time by a vote of more than 50% in aggregate principal amount of the Outstanding Notes represented at the meeting, and the meeting may be held as so adjourned without further notice. Except as provided in paragraphs 12(e) (Amendments Requiring Extraordinary Resolution of Noteholders) and 12(f) (Amendments without the Consent of Noteholders), any modifications, amendments or waivers to the Fiscal Agency Agreement or the terms and conditions of the Notes of a Series shall require (i) the consent of the Issuer (and LBHI, if LBTCBV or LBB is the Issuer) and (ii) (A) the written consent of Holders of more than 50% in aggregate principal amount of the Outstanding Notes of such Series or (B) the approval of more than 50% of the aggregate principal amount of such Notes represented at a meeting of the Holders of Notes of such Series called in accordance with the provisions set forth above; provided that any such modification, amendment or waiver which affects the Outstanding Notes of more than one Series (as determined by the relevant Issuer (and LBHI, if LBTCBV or LBB is the Issuer)) shall require (X) the written consent of Holders of more than 50% in aggregate principal amount of the Outstanding Notes affected thereby or (Y) the approval of more than 50% of the aggregate principal amount of such Notes represented at such meeting of the Holders of Notes. Except as otherwise provided in paragraph 12(e) (Amendments Requiring Extraordinary Resolution of Noteholders), any such modification, amendment or waiver shall be conclusive and binding on all Holders of Notes, whether or not they have given such consent or were present at such meeting and whether or not notation of such modification, amendment or waiver is made upon the Notes, and on all future Holders of Notes. Any instrument given by or on behalf of any Holder of a Note in connection with any consent to any such modification, amendment or waiver shall be irrevocable once given and shall be conclusive and binding on all subsequent Holders of such Note.

(e)    *Amendments Requiring Extraordinary Resolution of Noteholders*

Notwithstanding the foregoing, no action at any meeting of Holders of Notes, and no modification, amendment, or supplement to the Notes, the Fiscal Agency Agreement or the Guarantees, may (i) change the due date for the payment of the principal of (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) or any instalment of interest, if any, on any Note of such Series, (ii) reduce the principal amount of (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) any Note of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Note, the interest rate thereon or the premium payable upon redemption thereof, (iii) change the obligation of the Issuer or the Guarantor, as the case may be, to pay Additional Amounts on any Note of such Series, (iv) except as provided in Conditions 13 (Assumption of Obligations) and 14 (Merger or Consolidation of the Issuer or the Guarantor), modify the obligation of the Guarantor to make payment under the Guarantees, (v) change the Specified Currency in which or the required places at which payment with respect to principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) or interest, if any, in respect of Notes of such Series or the Guarantees related thereto is payable, (vi) impair the right to institute suit for the enforcement of any such payment on or with respect to any Note of such Series or any Coupon or Receipt or the Guarantee, as the case may be, related thereto, (vii) amend the procedures provided for or the circumstances under which the Notes of such Series may be redeemed, (viii) reduce the proportion of the principal amount of Notes of such Series the consent of the Holders of which is necessary to modify or amend the Fiscal Agency Agreement or the terms and conditions of the Notes of such Series or the Guarantees related thereto or to make, take or give any consent, waiver or other action provided hereby or thereby to be made, taken or given, or (ix) reduce the percentage of aggregate principal amount of Notes Outstanding required for the adoption of a resolution or the

quorum required at any meeting of Holders of Notes at which a resolution is adopted, in each case, unless such action or modification, amendment or supplement is approved by an extraordinary resolution (an "*Extraordinary Resolution*") as follows: (A) in the case of a Series of Notes issued only in bearer form, the quorum at any meeting of Holders of Notes for passing an Extraordinary Resolution will be any person or persons holding or representing not less than 75%, or at any such adjourned meeting not less than 25%, in aggregate principal amount of the Notes of such Series for the time Outstanding and entitled to be voted at such meeting and an Extraordinary Resolution may be passed by the affirmative vote of not less than 75% in aggregate principal amount of such Notes voted in respect of such Extraordinary Resolution; (B) in the case of a Series of Notes issued only in registered form, an Extraordinary Resolution may only be passed by the affirmative vote of the Registered Holder of each Note of such Series then Outstanding; and (C) in the case of a Series of Notes issued both in bearer and registered form, such Series will be deemed, for the purposes of determining which Extraordinary Resolution voting provisions shall apply, to have been issued only in bearer form.

(f)     *Amendments without the Consent of Noteholders*

LBHI, LBTCBV, LBB and, in the case of the Fiscal Agency Agreement, the Fiscal Agent (or, in the case of Notes in registered form, the Registrar), may agree, without the vote or consent of any Holder of Notes, Couponholder, Receiptholder or Talonholder, to any modification (except as aforesaid) of, or to any waiver or authorization of any breach or proposed breach of, any of the terms and conditions of the Notes or any other provisions of the Fiscal Agency Agreement for the purpose of (i) adding to the covenants of LBHI, LBTCBV or LBB for the benefit of the Holders of Notes, Couponholders, Receiptholders or Talonholders, (ii) surrendering any right or power conferred upon LBHI, LBTCBV or LBB which does not adversely affect the interest of any holders of Notes, Coupons, Receipts or Talons in any material respect, (iii) securing the Notes pursuant to the requirements of the Notes or otherwise for the benefit of the Holders of Notes, Coupons, Receipts or Talons, (iv) subject to the existence of the conditions set forth in Condition 7(a) (Place of Payment), permitting the payment of principal (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, in respect of Notes in bearer form in the United States, (v) evidencing the succession of another corporation to LBHI, LBTCBV or LBB as described in Condition 14 (Merger or Consolidation of the Issuer or the Guarantor) and the assumption by such successor of the covenants and obligations of LBHI or LBTCBV in the Fiscal Agency Agreement and in the Notes, Coupons, Receipts and Talons as permitted by the Notes, (vi) evidencing the assumption by LBHI of the obligations of LBTCBV or LBB under the Fiscal Agency Agreement and the Notes issued by LBTCBV or LBB or the designation by LBHI of one of its wholly-owned Subsidiaries to be the issuer of the Notes previously issued by LBTCBV or LBB, as described in Condition 13 (Assumption of Obligations), (vii) correcting or supplementing any defective provision contained in the Fiscal Agency Agreement or in the Notes, Coupons, Receipts or Talons in a manner which does not adversely affect the interest of any Holders of the Notes, Coupons, Receipts or Talons in any material respect, (viii) amending the certification requirements referred to in Condition 7 (Payment of Principal and Interest; Paying Agents) in order to allow LBHI, LBTCBV or LBB to comply with the certification requirements with respect to nationality or status as required by applicable laws, (ix) making any modification, or granting any waiver or authorization of any breach or proposed breach of, any of the terms and conditions of the Notes or any other provisions of the Fiscal Agency Agreement in any manner which LBHI, LBTCBV or LBB and, in the case of the Fiscal Agency Agreement, the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) may determine and which does not adversely affect the interest of any Holders of Notes, Coupons, Receipts or Talons in any material respect, or (x) making any modification which is of a minor or technical nature or correcting a manifest error.

(g)     *Effect of Amendments*

Notes of a Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other

action may bear a notation in the form approved by the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) and the Issuer (and LBHI, if LBTCBV or LBB is the Issuer) as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action. New Notes of such Series modified to conform, in the opinion of the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) and LBHI, to any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may be prepared by LBHI, LBTCBV or LBB, authenticated by the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) (or any authenticating agent appointed pursuant to the Fiscal Agency Agreement) and delivered in exchange for the Outstanding Notes of such Series.

(h)   *Notes Deemed to be Outstanding*

As used herein, any Note authenticated and delivered pursuant to the Fiscal Agency Agreement shall, as of any date of determination, be deemed to be "*Outstanding*", except: (i) Notes theretofore cancelled by any Paying Agent, the Fiscal Agent or the Registrar or delivered to any Paying Agent, the Fiscal Agent or the Registrar for cancellation or held by the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) for reissuance but not reissued by the Fiscal Agent (or, in the case of Notes in registered form, the Registrar); (ii) Notes which have been called for redemption in accordance with their terms or which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, thereon shall have been made available to the Fiscal Agent; or (iii) Notes in lieu of or in substitution for which other Notes shall have been authenticated and delivered pursuant to the Fiscal Agency Agreement; provided, however, that in determining whether the Holders of the requisite principal amount of Outstanding Notes of a Series are present at a meeting of Holders of Notes of such Series for quorum purposes or have consented to or voted in favour of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Notes of such Series owned directly or indirectly by LBHI, LBTCBV or LBB or any Affiliate of LBHI, LBTCBV or LBB shall be disregarded and deemed not to be Outstanding. As used herein, the term "*Affiliate*" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with LBHI, LBTCBV or LBB. For the purposes of this definition, (i) "*control*" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "*controlling*" and "*controlled*" have meanings correlative to the foregoing; and (ii) "*Person*" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

(i)   *Number of Votes*

The Holder of a Note may, at any meeting of Holders of a Series of Notes at which such Holder is entitled to vote, cast one vote for each currency unit in principal amount of the Notes held by such Holder in which such Notes are denominated. Notwithstanding the foregoing, at any meeting of Holders of more than one Series of Notes, a Holder of a Note which does not specify regular payments of interest, including, without limitation, Zero Coupon Notes, shall be entitled to one vote at any such meeting for each such currency unit of the redemption value of such Note calculated as of the date of such meeting. Where Notes are denominated in one or more currencies other than U.S. dollars, the U.S. dollar equivalent of such Notes shall be calculated at the exchange rates prevailing in the Principal Financial Centre on the date of such meeting or, in the case of written consents or notices, on such date as LBHI shall designate for such purpose and each Holder of such a Note shall have one vote for every U.S. dollar of Notes (converted as aforesaid) which he holds.

(j)    *Written Resolutions*

A resolution in writing signed by or on behalf of all Holders of Notes of a Series who for the time being are entitled to receive notice of a meeting of Holders of Notes of that Series will take effect as if it were an Extraordinary Resolution. Such a resolution in writing may be contained in one document or several documents in the same form, each signed by or on behalf of one or more Holders of Notes of that Series.

## 13.    Assumption of Obligations

LBHI or any wholly-owned Subsidiary of LBHI may assume the obligations of LBTCBV or LBB (or any corporation which shall have previously assumed the obligations of LBTCBV or LBB (as applicable) as provided in this Condition 13 (Assumption of Obligations); LBTCBV or LBB (as applicable) or such corporation in each case being referred to herein as the "*prior Issuer*") for the due and punctual payment of the principal of (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, on and Additional Amounts, if any, in respect of the Notes issued by it and the performance of every covenant of the Fiscal Agency Agreement, the Notes and each Calculation Agency Agreement on the part of the prior Issuer to be performed or observed; provided that: (i) LBHI or such Subsidiary of LBHI, as the case may be, shall expressly assume such obligations by an amendment or supplement to the Fiscal Agency Agreement, executed by LBHI and such Subsidiary, if applicable, and delivered to the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) for the benefit of the Holders of the Notes, Coupons, Receipts and Talons; (ii) if such Subsidiary assumes such obligations, LBHI shall, by such amendment or supplement, confirm that its Guarantees shall apply to such Subsidiary's obligations under the Notes, Coupons, Receipts and Talons and the Fiscal Agency Agreement and each Calculation Agency Agreement, as modified by such amendment or supplement; provided, however, that this subsection (ii) shall not apply in the event of such an assumption by a Subsidiary of LBHI, not being incorporated in The Netherlands, the long-term debt securities of which, as of the effective date of such assumption and after giving effect thereto, have a rating from Moody's Investors Service, Inc. and Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies, Inc. which is equal to or higher than those of LBHI; (iii) LBHI or such Subsidiary, as the case may be, shall confirm in such amendment or supplement that LBHI or such Subsidiary, as the case may be, will pay to the Holders such Additional Amounts as provided by, and subject to the limitations set forth in, Condition 9 (Payment of Additional Amounts; Tax Redemption) as may be necessary in order that every net payment of the principal of (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, on the Notes will not be less than the amount provided for in the Notes to be then due and payable; provided, that such obligation shall extend to any deduction or withholding for or on account of any present or future tax, assessment or governmental charge imposed upon such payment by any taxing authority of or in the country in which LBHI or any such Subsidiary is organized (it being understood that, except as aforesaid, neither LBHI nor such Subsidiary shall be obligated to make any indemnification or payments in respect of any tax consequences to any Holder of a Note or Couponholder, Receiptholder or Talonholder as a result of the assumption of rights and obligations described herein and which arise as a result of the domicile or residence of such Holder in, or connection of such Holder with, or subjection of such Holder to, any jurisdiction); and (iv) immediately after giving effect to such assumption, no Event of Default and no event which, after notice or lapse of time or both, would become an Event of Default, shall have occurred and be continuing.

Upon any such assumption, LBHI or such Subsidiary, as the case may be, shall succeed to, and be substituted for, and may exercise every right and power of, the prior Issuer under the Fiscal Agency Agreement, the Notes issued by the prior Issuer and each Calculation Agency Agreement, with the same effect as if LBHI or such Subsidiary, as the case may be, had been named as the prior Issuer in the Fiscal Agency Agreement, and the prior Issuer shall be released from all liability under the Fiscal Agency Agreement, the Notes issued by it and each Calculation Agency Agreement.

For the avoidance of doubt, no consent of any Holder of Notes is required for the transactions contemplated by this Condition 13 (Assumption of Obligations).

In the event that LBHI, during the term of this Program, no longer complies with the conditions described in clause 3.1.19 of the Distribution Agreement (as defined under "*Subscription and Sale*" below), in particular as soon as it becomes aware that it may not continue to have a positive consolidated shareholder's equity (*positief geconsolideerd eigen vermogen*) within the meaning of Section 2:373 of the Dutch Civil Code, either

(a)    the obligations of LBTCBV shall be assumed (in the manner described above) by LBHI or any wholly-owned Subsidiary of LBHI, such Subsidiary not being incorporated in The Netherlands; or

(b)    LBHI shall arrange for its substitution as guarantor of any Notes issued by LBTCBV by a different entity (the "*New Guarantor*") provided that: (i) the New Guarantor shall have a positive consolidated shareholder's equity (as defined above); (ii) the New Guarantor and LBTCBV shall belong to one group (*concern*) as defined in the WFT and (iii) LBTCBV shall be a subsidiary (*dochtermaatschappij*) of the New Guarantor within the meaning of Section 2:24a of the Dutch Civil Code; or

(c)    any Notes issued by LBTCBV shall, in addition to the existing Guarantee by LBHI, be guaranteed by a credit institution that is subject to prudential supervision in The Netherlands, another European Economic Area member state, the U.S., Canada, Japan, Australia or Switzerland.

## 14.    Merger or Consolidation of the Issuer or the Guarantor

So long as any Note remains Outstanding, neither the Issuer nor the Guarantor, if applicable, shall consolidate or amalgamate with or merge into any other corporation or convey, transfer or lease its properties and assets substantially as an entirety to any person unless: (i) the corporation formed by such consolidation or amalgamation or into which such Issuer or the Guarantor, as the case may be, is merged or the person which acquires by conveyance or transfer, or which leases, the properties and assets of such Issuer or the Guarantor, as the case may be, substantially as an entirety shall expressly assume, by an amendment to the Fiscal Agency Agreement executed and delivered to the Fiscal Agent (A) (1) in the case of a successor to an Issuer, the due and punctual payment of the principal of (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof), and interest, if any, and Additional Amounts, if any, on all of the Notes and the performance of every covenant in the Notes, each Calculation Agency Agreement and the Fiscal Agency Agreement to be performed by such Issuer and (2) in the case of a successor to LBTCBV or LBB, LBHI shall confirm that the Guarantee shall apply to the obligations of such successor under the Notes, each Calculation Agency Agreement and the Fiscal Agency Agreement; provided that this subsection (i) (A) (2) shall not apply in the event of a conveyance or transfer of the properties and assets of LBTCBV or LBB (as applicable) substantially as an entirety to any corporation, the long-term debt securities of which, as of the effective date of such conveyance or transfer and after giving effect thereto, have a rating from Moody's Investors Service, Inc. and Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies, Inc. which is equal to or higher than those of the Guarantor, so long as such corporation shall assume the obligations of LBHI under the Guarantees, the Fiscal Agency Agreement and each Calculation Agency Agreement in the manner contemplated by the following subsection (i) (B) and (B) in the case of a successor to the Guarantor, the due and punctual performance of the Guarantees and the performance of every covenant in the Fiscal Agency Agreement and each Calculation Agency Agreement on the part of the Guarantor to be performed, which assumption shall provide in each case that such corporation or person, as the case may be, shall pay to the Holder of any Note and any Couponholder, Receiptholder or Talonholder such Additional Amounts as provided by, and subject to the limitations set forth in, Condition 9 (Payment of Additional Amounts; Tax Redemption) as may be necessary in order that every net payment of the principal of (including premium, if any, and in the case of Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) and interest, if any, will not be less than the amount provided for in the Notes to be then due and payable; provided that such obligation shall extend to any deduction or withholding for or on account of any present or future tax, assessment or governmental charge imposed upon such payment by any taxing authority of or in the country in which any such corporation or person is organized (it being understood that except as aforesaid, no such corporation or

person shall be obligated to make any indemnification or payment in respect of any tax consequences to any individual Holder of a Note or Couponholder, Receiptholder or Talonholder as a result of the assumption of rights and obligations described herein and which arise as a result of the domicile or residence of such Holder in, or connection of such Holder with, or subjection of such Holder to, any jurisdiction); (ii) immediately after giving effect to such transaction, no Event of Default, and no event which, after notice or lapse of time or both, would become an Event of Default, shall have occurred and be continuing; (iii) if, as a result of any such consolidation, amalgamation or merger or such conveyance, transfer or lease, properties or assets of LBHI, LBTCBV or LBB would become subject to a mortgage, pledge, lien, security interest or other encumbrance which would not be permitted by the Fiscal Agency Agreement or the Notes, LBHI, LBTCBV or LBB or such successor corporation or person, as the case may be, shall take such steps as shall be necessary effectively to secure the Notes equally and rateably with (or prior to) all indebtedness secured thereby; and (iv) a certificate, signed by a duly authorized officer of such Issuer or the Guarantor, as the case may be, and a written opinion of counsel, each stating that such consolidation, amalgamation, merger, conveyance, transfer or lease and such document evidencing the assumption by such corporation or person complies with all conditions precedent herein provided for relating to such transaction shall have been made available for inspection by Holders of the Notes at the principal office of the Fiscal Agent and, in the case of Notes in registered form, the Registrar.

Upon any such assumption, such corporation or person, as the case may be, shall succeed to, and be substituted for, and may exercise every right and power of, such Issuer or the Guarantor, as the case may be, under the Fiscal Agency Agreement with the same effect as if such corporation or person had been named as "*Issuer*" or the "*Guarantor*", as the case may be, under the Fiscal Agency Agreement, and thereafter, except in the case of a lease, the predecessor corporation shall be relieved of all obligations and covenants under the Fiscal Agency Agreement, each Calculation Agency Agreement, the Notes, the Coupons, the Receipts and the Talons.

For the avoidance of doubt, no consent of any Holder of Notes is required for the transactions contemplated by this Condition 14 (Merger or Consolidation of the Issuer or the Guarantor).

15.    **Notices**

(a)    *Bearer Notes*

Notices to redeem Notes in bearer form and all other notices to Holders of Notes in bearer form will be valid if published (i) in one leading London daily newspaper (which is expected to be the *Financial Times*), (ii) if any Notes are admitted to trading on the Irish Stock Exchange and the rules of that exchange so require, a daily newspaper having general circulation in Dublin (which is expected to be the Irish Times) and (iii) if any Notes are listed on the Singapore Exchange Securities Trading Limited and the rules of that exchange so require, a daily English language newspaper having general circulation in Singapore (which is expected to be *The Business Times*) or, in the case of (i) or (ii), if such publication is not practicable in the opinion of the Issuer, in another leading English language daily newspaper which is approved by the Issuer with circulation in Europe. The Issuer shall also ensure that notices are duly published in a manner which complies with the rules and regulations of any other stock exchange on which the Notes are for the time being listed. Any notice published in a newspaper as aforesaid shall be deemed to have been given on the date of such publication or, if published more than once, on the date of the first such publication.

In the case of global Notes in bearer form of a Series, there may, so long as such global Notes are held in their entirety on behalf of Euroclear and Clearstream, Luxembourg, be substituted for such publication as aforesaid, the delivery of the relevant notice to Euroclear and Clearstream, Luxembourg for communication by them to Holders of Notes. Any such notice shall be deemed to have been given to Holders of Notes three Business Days after the day on which the said notice was given to Euroclear and Clearstream, Luxembourg.

(b)   *Registered Notes*

Notices to redeem definitive Notes in registered form and all other notices to Holders of definitive Notes in registered form shall (except to the extent otherwise expressly provided) be in writing and shall be addressed to such Holders at their addresses appearing in the note register maintained pursuant to the Fiscal Agency Agreement. In the case of Notes which are listed on the Irish Stock Exchange and, if the rules of that exchange so require, such notices will also be published in a leading newspaper having general circulation in Dublin (which is expected to be the Irish Times).

In the case of global Notes in registered form of a Series, such notices shall be sent to the common depositary for Euroclear and Clearstream, Luxembourg or its nominee, as the Registered Holder, who will in turn forward such notices to Euroclear and Clearstream, Luxembourg for communication by them to Holders of such Notes. Any such notice shall be deemed to have been given to Holders of Notes three Business Days after the day on which the said notice was given to Euroclear and Clearstream, Luxembourg.

(c)   *Notices to the Issuers*

Notices given by any Holders of Notes to LBHI, LBTCBV or LBB shall be in writing and given by delivering the same: (i) in the case of LBHI, to Lehman Brothers Holdings Inc., 745 Seventh Avenue, New York, New York 10019, U.S.A., Attention: Treasurer, (ii) in the case of LBTCBV, to Lehman Brothers Treasury Co. B.V., Atrium, Strawinskylaan 3105, 1077 2X Amsterdam, The Netherlands, Attention: L. Kho and (iii) in the case of LBB, to Lehman Brothers Bankhaus AG, Rathenauplatz 1, D-60313 Frankfurt am Main, Germany, Attention: Treasury.

## 16.   Replacement of Notes, Coupons, Receipts and Talons

If any Note, Coupon, Receipt or Talon is lost, stolen, mutilated, defaced or destroyed, it may be replaced at the Specified Office of the Fiscal Agent (or, in the case of Notes in registered form, the Registrar) (and, if the Notes are then admitted to listing, trading and/or quotation by any competent authority, stock exchange and/or quotation system which requires the appointment of a Paying Agent in any particular place, the Paying Agent having its Specified Office in the place required by such competent authority, stock exchange and/or quotation system), subject to all applicable laws and competent authority, stock exchange and/or quotation system requirements, upon payment by the claimant of the expenses incurred in connection with such replacement and on such terms as to evidence, security, indemnity and otherwise as the Issuer may reasonably require.

## 17.   Prescription

All amounts paid by the Issuer or the Guarantor, as the case may be, to a Paying Agent for payment of the principal of or premium or interest on any Note and remaining unclaimed for two years after such payment has been made shall be repaid to the Issuer or the Guarantor, as the case may be, and to the extent permitted by law, the Holder of such Note or related Coupon or Receipt thereafter may look only to the Issuer or the Guarantor, as the case may be, for payment. Definitive Notes in bearer form, Receipts and Coupons will become void unless presented for payment within periods of 10 years (in the case of principal) and 5 years (in the case of interest) from the Relevant Date (as defined in Condition 9 (Payment of Additional Amounts; Tax Redemption)). Talons will become void unless presented for exchange for a fresh Coupon sheet within a period of 5 years from the date on which all Coupons on the Coupon sheet to which the Talon appertains have matured. Under the State of New York's statute of limitations, any legal action upon the Notes must be commenced within six years after the payment thereof is due.

## 18.   Further Issues of Notes

Each original issue of Notes together with any further issues expressed to form a single series with the original issue which are issued by the same Issuer, denominated in the same currency, having the same maturity date, bearing interest, if any, on the same basis and at the same rate and the terms of which (but for

the issue date, issue price and the date from which interest accrues) are otherwise identical will constitute a Series (a "*Series*" or the "*Notes of a Series*").

**19.    Governing Law; Consent to Jurisdiction**

(a)    *Governing Law*

The Fiscal Agency Agreement, each Calculation Agency Agreement, the Notes (other than Condition 2(b) in respect of Subordinated Notes issued by LBB), the Coupons, the Receipts, the Talons and the Deed of Covenant and all matters arising from or connected with the Fiscal Agency Agreement, each Calculation Agency Agreement, the Notes (other than Condition 2(b) in respect of Subordinated Notes issued by LBB), the Coupons, the Receipts, the Talons and the Deed of Covenant are governed by, and shall be construed in accordance with, English law. The Guarantees and all matters arising from or connected with the Guarantees, are governed by, and shall be construed in accordance with, the laws of the State of New York.

In case of Subordinated Notes issued by LBB, Condition 2(b) (Status of Subordinated Notes and Subordinated Guarantees) is governed by German law.

In the case of LBHI Subordinated Notes, Condition 2(c) (*Status of LBHI Subordinated Notes*) and all matters arising from or connected with Condition 2(c) (*Status of LBHI Subordinated Notes*), are governed by, and shall be construed in accordance with, the laws of the State of New York.

(b)    *English courts*

The courts of England have exclusive jurisdiction to settle any dispute (a "*Dispute*") arising from or connected with the Notes.

(c)    *Appropriate forum*

Each of LBHI, LBTCBV and LBB agrees that the courts of England are the most appropriate and convenient courts to settle any Dispute and, accordingly, that it will not argue to the contrary.

(d)    *Rights of the Noteholders to take proceedings outside England*

Condition 20(b) (English courts) is for the benefit of the relevant Noteholders only. As a result, nothing in this Condition 20 (Governing law; Consent to jurisdiction) prevents any Noteholder from taking proceedings relating to a Dispute ("*Proceedings*") in any other courts with jurisdiction. To the extent allowed by law, Noteholders may take concurrent Proceedings in any number of jurisdictions.

(e)    *Service of process*

Each of LBHI, LBTCBV and LBB agrees that the documents which start any Proceedings and any other documents required to be served in relation to those Proceedings may be served on it by being delivered to it at 25 Bank Street, London, E14 5LE, England or at any other address in Great Britain at which service of process may be served on it in accordance with Part XXIII of the Companies Act 1985. This Condition 20 (Governing law; Consent to jurisdiction) applies to Proceedings in England and to Proceedings elsewhere. If the appointment of the person mentioned in this Condition 20(e) (Service of Process) ceases to be effective, each of LBHI, LBTCBV and LBB shall forthwith appoint a person in England to accept service of process on its behalf in England and notify the name and address of such person to the Fiscal Agent and, failing such appointment within fifteen days, any Holder of a Note, shall be entitled to appoint such a person by written notice addressed to LBHI, LBTCBV or LBB, as the case may be, and delivered to the relevant Issuer or to the specified office of the Fiscal Agent. Nothing in this paragraph shall affect the right of any Noteholder to serve process in any other manner permitted by law.

**20.    Fiscal Agent; Registrar**

The Fiscal Agency Agreement contains provisions for the indemnification of the Fiscal Agent and the Registrar and for their relief from responsibility. The Fiscal Agent, the Registrar and the Paying Agents are entitled to enter into business transactions with the Issuers without accounting for any profit resulting therefrom.

In acting under the Fiscal Agency Agreement and in connection with the Notes, Coupons, Receipts and Talons, the Fiscal Agent and the Registrar are acting solely as agents of the Issuer and do not assume any obligation towards or relationship of agency or trust for or with any Noteholder, Couponholder, Receiptholder or Talonholder, except that any funds held by the Fiscal Agent or the Registrar for payment of any sums due in respect of the Notes or any Coupons or Receipts shall be held in trust by it for the Noteholders, the Couponholders and the Receiptholders (as the case may be) until the expiration of the period set forth in Condition 17 (Prescription) and shall be applied as set forth herein, but need not be segregated from other funds held by it, except as required by law. For a description of the duties and the immunities and rights of the Fiscal Agent and the Registrar under the Fiscal Agency Agreement, reference is made to the Fiscal Agency Agreement, and the obligations of the Fiscal Agent and the Registrar to the Holder of each Note are subject to such immunities and rights.

**21.    Rounding**

For the purposes of any calculations referred to in these Conditions (unless otherwise specified in these Conditions or the relevant Final Terms), (a) all percentages resulting from such calculations will be rounded, if necessary, to the nearest one hundred-thousandth of a percentage point (with 0.000005 per cent. being rounded up to 0.00001 per cent.), (b) all United States dollar amounts used in or resulting from such calculations will be rounded to the nearest cent (with one half cent being rounded up), (c) all Japanese Yen amounts used in or resulting from such calculations will be rounded downwards to the next lower whole Japanese Yen amount, and (d) all amounts denominated in any other currency used in or resulting from such calculations will be rounded to the nearest two decimal places in such currency, with 0.005 being rounded upwards.

**22.    Descriptive Headings**

The descriptive headings appearing in these Terms and Conditions are for convenience of reference only and shall not alter, limit or define the provisions hereof.

## Annex 1

### Amendments to the Terms and Conditions of the Notes in respect of Australian Domestic Notes

*The terms and conditions of Australian Domestic Notes shall comprise the Terms and Conditions of the Notes set forth on page 79 above (the "General Conditions") as amended by the additional terms and conditions set forth below (the "Australian Conditions"), subject to completion and/or amendment in the applicable Final Terms. In the event of any inconsistency between the General Conditions and the Australian Conditions, the Australian Conditions shall prevail. In the event of any inconsistency between any of the foregoing and the applicable Final Terms, the applicable Final Terms shall prevail.*

(A)   **General**

For the purpose of this Base Prospectus, *"Australian Domestic Notes"* means any Tranche of Notes denominated in Australian dollars and issued by LBTCBV or LBHI in the Australian domestic capital markets, as specified in the applicable Final Terms.

The Australian Domestic Notes will be issued pursuant to a deed poll to be entered into by the relevant Issuer and will be registered in uncertificated and dematerialised book-entry form with Austraclear Limited as operator of the Austraclear System.

(B)   **Amendments to the Terms and Conditions in respect of the Australian Domestic Notes**

(a)   **Form, Denomination and Title**

The following paragraph shall be added to the end of Condition 1 (*Form and Transfer*):

"(j) *Australian Domestic Notes*

In the case of Australian Domestic Notes, the following provisions of this Condition 1(j) (*Australian Domestic Notes* shall apply in lieu of the foregoing provisions of this Condition 1 in the event of any inconsistency. Australian Domestic Notes will be debt obligations of LBTCBV or LBHI, as the case may be, owing under separate deeds poll to be executed by LBTCBV and LBHI (each as amended, supplemented or replaced from time to time, a "*Deed Poll*" and together, the "*Deeds Poll*") and will take the form of entries in a register (the "*Australian Register*") to be maintained by an Australian registrar to be appointed by LBTCBV or LBHI, as the case may be, as specified in the applicable Final Terms (the "*Australian Registrar*"). Australian Domestic Notes will have the benefit of the Guarantee of the Guarantor. The Fiscal Agency Agreement is not applicable to Australian Domestic Notes.

Australian Domestic Notes will not be serially numbered. Each entry in the Australian Register constitutes a separate and individual acknowledgement to the relevant Noteholder of the indebtedness of LBTCBV to the relevant Noteholder. The obligations of LBTCBV and LBHI, as the case may be, in respect of each Australian Domestic Note constitute separate and independent obligations which the Holder to whom those obligations are owed is entitled to enforce without having to join any other Holder or any predecessor in title of a Holder. No certificate or other evidence of title will be issued by or on behalf of LBTCBV or LBHI, as the case may be, to evidence title to an Australian Domestic Note unless LBTCBV or LBHI, as the case may be, determines that certificates should be made available or it is required to do so pursuant to any applicable law or regulation.

No Australian Domestic Note will be registered in the name of more than four persons. A Note registered in the name of more than one person is held by those persons as joint tenants. Australian Domestic Notes will be registered by name only without reference to any trusteeship. The person registered in the Australian Register as a Noteholder of an Australian Domestic Note will be treated by LBTCBV or LBHI, as the case may be, and the Australian Registrar as absolute owner of that Australian Domestic Note and none of LBTCBV, LBHI, the Guarantor or the Australian Registrar is, except as ordered by a court or as required by statute,

obliged to take notice of any other claim to an Australian Domestic Note. For the avoidance of doubt, where an Australian Domestic Note is entered into the Austraclear System, the expression Holder includes Austraclear as operator of the Austraclear System.

Upon a person acquiring title to any Australian Domestic Note by virtue of becoming registered as the owner of that Australian Domestic Note, all rights and entitlements arising by virtue of the relevant Deed Poll in respect of that Australian Domestic Note vest absolutely in the registered owner of the Australian Domestic Note, such that no person who has previously been registered as the owner of the Australian Domestic Note has or is entitled to assert against the LBTCBV or LBHI, as the case may be, or the Australian Registrar or the registered owner of the Australian Domestic Note for the time being and from time to time any rights, benefits or entitlements in respect of the Australian Domestic Note.

Conditions 1(c) (*Coupons Attached*) to 1(i) (*Owner of Registered Notes*) inclusive do not apply to Australian Domestic Notes. Australian Domestic Notes may be transferred in whole but not part.

Australian Domestic Notes will be transferable by duly completed and (if applicable) stamped transfer and acceptance forms in the form specified by, and obtainable from, the Australian Registrar or by any other manner approved by LBTCBV or LBHI, as the case may be, and the Australian Registrar. Notes entered in the Austraclear System (as defined below) will be transferable only in accordance with the Austraclear Regulations (as defined below).

Unless the Australian Domestic Notes are lodged in the Austraclear System, application for the transfer of Australian Domestic Notes must be made by the lodgement of a transfer and acceptance form with the Australian Registrar. Each transfer and acceptance form must be accompanied by such evidence (if any) as the Australian Registrar may require to prove the title of the transferor or the transferor's right to transfer the Australian Domestic Note and be signed by both the transferor and the transferee.

The transferor of an Australian Domestic Note is deemed to remain the Holder of that Australian Domestic Note until the name of the transferee is entered in the Australian Register in respect of that Australian Domestic Note. Transfers will not be registered later than eight days prior to the Maturity Date of the Australian Domestic Note.

Australian Domestic Notes may only be transferred in, to or from Australia if (a) the aggregate consideration payable by the transferee at the time of transfer is at least A$500,000 (or the equivalent in another currency and, in either case disregarding moneys lent by the transferor or its associates) or the offer or invitation giving rise to the transfer otherwise does not require disclosure to investors in accordance with Part 6D.2 of the Corporations Act 2001 of Australia, and (b) the transfer is in compliance with all other applicable laws, regulations or directives and does not require any document to be lodged or registered with the Australian Securities and Investments Commission. Australian Domestic Notes may only be transferred between persons in a jurisdiction or jurisdictions other than Australia if (a) a transfer and acceptance form is signed outside Australia, and (b) the transfer is in compliance with the laws of the jurisdiction in which the transfer takes place. A transfer to an unincorporated association is not permitted.

Transfers will be registered without charge provided taxes, duties or other governmental charges (if any) imposed in relation to the transfer have been paid.

A person becoming entitled to an Australian Domestic Note as a consequence of the death or bankruptcy of a Holder or of a vesting order or a person administering the estate of a Holder may, upon producing such evidence as to that entitlement or status as the Australian Registrar considers sufficient, transfer the Australian Domestic Note or, if so entitled, become registered as the Holder of the Australian Domestic Note.

Where the transferor executes a transfer of less than all Australian Domestic Notes registered in its name, and the specific Australian Domestic Notes to be transferred are not identified, the

Australian Registrar may register the transfer in respect of such of the Australian Domestic Notes registered in the name of the transferor as the Australian Registrar thinks fit, provided the aggregate principal amount of the Australian Domestic Notes registered as having been transferred equals the aggregate principal amount of the Australian Domestic Notes expressed to be transferred in the transfer.

If Austraclear Services Limited (ABN 28 003 284 419) is the Australian Registrar and the Australian Domestic Notes are lodged in the Austraclear System, despite any other provision of these Terms and Conditions, the Australian Domestic Notes are not transferable on the Australian Register, and LBTCBV or LBHI, as the case may be, may not, and must procure that the Australian Registrar does not, register any transfer of the Australian Domestic Notes issued by it and no member of the Austraclear System has the right to request any registration of any transfer of such Australian Domestic Notes, except:

(a)   in the case of any repurchase, redemption or cancellation (whether on or before the Maturity Date of the Australian Domestic Notes) of such Australian Domestic Notes, a transfer of the relevant Australian Domestic Notes from Austraclear to LBTCBV or LBHI, as the case may be, may be entered in the Australian Register; and

(b)   if Austraclear exercises any power it may have under the Austraclear Regulations or these Terms and Conditions to require the relevant Australian Domestic Notes to be transferred on the Australian Register to a member of the Austraclear System, the relevant Australian Domestic Notes may be transferred on the Australian Register from Austraclear to the member of the Austraclear System.

In any of these cases, the relevant Australian Domestic Notes will cease to be held in the Austraclear System.

Where Austraclear is recorded in the Australian Register as the holder of an Australian Domestic Note, each person in whose Security Record (as defined in the Austraclear Regulations) an Australian Domestic Note is recorded is deemed to acknowledge in favour of the Australian Registrar and Austraclear that:

(a)   the Australian Registrar's decision to act as the Australian Registrar of that Australian Domestic Note does not constitute a recommendation or endorsement by the Australian Registrar or Austraclear in relation to that Australian Domestic Note, but only indicates that the holding of such Australian Domestic Note is considered by the Australian Registrar to be compatible with the performance by it of its obligations as Australian Registrar under the Agency and Registry Services Agreement (as defined in Condition 7); and

(b)   the holder of the Australian Domestic Note does not rely on any fact, matter or circumstance contrary to paragraph (a).

In this Condition 1(j) (*Australian Domestic Notes*):

*Austraclear* means Austraclear Limited (ABN 94 002 060 773).

*Austraclear Regulations* means the rules and regulations established by Austraclear from time to time to govern the use of the Austraclear System.

*Austraclear System* means the system operated by Austraclear for holding securities and the electronic recording and settling of transactions in those securities between members of that system."

(b)   **Interest**

(i)   The definition of "Business Day" in Condition 3(b)(i) shall not apply to Condition 7(i) (*Payments in respect of Australian Domestic Notes*).

(ii)   The definition of "Principal Financial Centre" in Condition 3(b)(i) shall be deleted and replaced with the following:

""*Principal Financial Centre*" means, in relation to any currency, the principal financial centre for that currency provided, however, that:

(i)   in relation to euro, it means the principal financial centre of such Member State of the European Communities as is selected (in the case of a payment) by the payee or (in the case of a calculation) by the Calculation Agent; and

(ii)   in relation to Australian dollars, it means either Sydney or Melbourne, as selected (in the case of a payment) by the payee or (in the case of a calculation) by the Calculation Agent."

(iii)   Condition 3(b)(iv)(G) shall be deleted and replaced with the following:

"if "*RBA Bond Basis*" is specified as the applicable day count fraction in the applicable Final Terms, it shall mean one divided by the number of Interest Payment Dates in a year."

(c)   **Payment of Principal and Interest; Paying Agents**

(i)   Condition 7(d) (*Payments on Definitive Registered Notes*) shall not apply to Australian Domestic Notes.

(ii)   The following paragraph shall be added at the end of Condition 7:

"(i) *Payments in respect of Australian Domestic Notes*

The Australian Registrar or, depending on the identity of the Australian Registrar, an administration agent appointed by LBTCBV or LBHI, as the case may be, (*"Australian Administration Agent"*) will act (through an office in Sydney) as principal paying agent for the Australian Domestic Notes pursuant to an Agency and Registry Services Agreement (as amended, supplemented or replaced from time to time, the *"Agency and Registry Services Agreement"*) to be entered into between LBTCBV or LBHI, as the case may be, the Australian Registrar and (depending on the identity of the Australian Registrar) the Australian Administration Agent as described in the applicable Final Terms. If required, the Australian Administration Agent will act as the agent of LBTCBV or LBHI, as the case may be, for certain purposes pursuant to an Issuing and Payment Administration Agreement to be entered into between LBTCBV or LBHI, as the case may be, and the Australian Administration Agent (as amended, supplemented or replaced from time to time, the *"Issuing and Payment Administration Agreement"*).

For the purposes of this Condition 7(i) (Payments in respect of Australian Domestic Notes), "*Business Day*" will have the meaning given to it in the relevant Agency and Registry Services Agreement.

Payments of principal and interest will be made in Sydney in Australian dollars to the persons registered at the close of business on the relevant Record Date (as defined below) as the Holders of such Australian Domestic Notes, subject in all cases to normal banking practice and all applicable laws and regulations. Payment will be made by check drawn on the Sydney branch of an Australian bank despatched by post on the relevant payment day at the risk of the Noteholder or, at the option of the Noteholder, in the case of principal or interest, by the Australian Registrar giving in Sydney irrevocable instructions for the effecting of a transfer of the relevant funds to an Australian dollar account in Australia specified by the Noteholder to the Australian Registrar, or in any other manner in Sydney which the Australian Registrar and the Noteholder agree.

In the case of payments made by electronic transfer, payments will for all purposes be taken to be made when the Australian Registrar gives irrevocable instructions in Sydney

for the making of the relevant payment by electronic transfer, being instructions which would be reasonably expected to result, in the ordinary course of banking business, in the funds transferred reaching the account of the Noteholder and, in the case of accounts maintained in Australia, reaching the account on the same day as the day on which the instructions are given.

If a check posted or an electronic transfer for which irrevocable instructions have been given by the Australian Registrar is shown, to the satisfaction of the Australian Registrar, not to have reached the Noteholder and the Australian Registrar is able to recover the relevant funds, the Australian Registrar may make such other arrangements as it thinks fit for the effecting of the payment in Sydney.

Interest will be payable in the manner specified in Condition 3 (*Interest*) above, to the persons who are registered as Noteholders at the close of business in Sydney on the relevant Record Date and a check will be made payable to the Noteholder (or, in the case of joint Noteholders, to the first-named) and sent to his registered address, unless instructions to the contrary are given by the Noteholder (or, in the case of joint Noteholders, by all such Noteholders) in such form as may be prescribed by the Australian Registrar. Payment of principal will be made to, or to the order of, the persons who are registered as Noteholders at the close of business in Sydney on the relevant Record Date, subject, if so directed by the Australian Registrar, to receipt from them of such instructions as the Australian Registrar may require.

If any day for payment in respect of any Australian Domestic Note is not a Business Day, such payment shall not be made until the next following day which is a Business Day, and no further interest shall be paid in respect of the delay in such payment.

Payments will be subject in all cases to any fiscal or other laws and regulations applicable thereto. None of LBTCBV or LBHI, as the case may be, or the Australian Registrar shall be liable to any Holder or other person for any commissions, costs, losses or expenses in relation to or resulting from such payments.

In this Condition 7(i) (*Payments in respect of Australian Domestic Notes*), "*Record Date*" means, in the case of payments of principal or interest, the close of business in Sydney on the date falling 8 calendar days before each Interest Payment Date and the Maturity Date (as the case may be)."

(d)   **Notices**

The following paragraph shall be added at the end of Condition 15:

"(d) *Notices in respect of Australian Domestic Notes*

Notices in respect of Australian Domestic Notes will be published in a leading daily newspaper of general circulation in Australia (which is expected to be The Australia Financial Review). Any such notice will be deemed to have been given to the Holders on the date of publication."

(e)   **Replacement of Notes, Coupons, Receipts and Talons**

Condition 16 shall not apply to Australian Domestic Notes.

(f)   **Prescription**

Condition 17 shall not apply to Australian Domestic Notes.

(g)   **Governing Law; Consent to Jurisdiction**

(i)   The following paragraph shall be added to Condition 19(a) (*Governing Law*):

"Any Australian Domestic Notes, the relevant Deed Poll, the relevant Agency and Registry Services Agreement and (if required) the relevant Issuing and Payment Administration Agreement in respect of such Australian Domestic Notes are, or will be, governed by, and construed in accordance with, the laws of New South Wales, Australia."

(ii)    Condition 19(b) (*English courts*) shall not apply to Australian Domestic Notes.

(iii)    The following paragraph shall be added at the end of Condition 19:

"(f) *Australian Domestic Notes*

In respect of Australian Domestic Notes, the relevant Deed Poll, the relevant Agency and Registry Services Agreement and (if required) the relevant Issuing and Payment Administration Agreement, LBTCBV and LBHI will agree to submit to the jurisdiction of the courts of New South Wales, Australia and courts of appeal from then. LBCTCBV and LBHI will irrevocably waive any objection which it may have to the laying of the venue of any suit, action or proceedings arising out of or in connection with the Australian Domestic Notes, the relevant Deed Poll, the relevant Agency and Registry Services Agreement or any relevant Issuing and Paying Administration Agreement ("*Australian Proceedings*") in any such court and any claim that any such Australian Proceedings have been brought in an inconvenient forum and will further irrevocably agree that a judgment in any such Australian Proceedings brought in the courts of New South Wales, Australia and courts of appeal from them shall be conclusive and binding upon it and may be enforced in the courts of any other jurisdiction. LBTCBV will ensure, in respect of Australian Domestic Notes, that there is an agent for service of process in New South Wales, Australia as specified in the relevant Final Terms."

**Annex 2**

**Amendments to the Terms and Conditions of the Notes in respect of Danish Notes**

*The terms and conditions of Danish Notes shall comprise the Terms and Conditions of the Notes set forth on page 79 above (the "General Conditions") as amended by the additional terms and conditions set forth below (the "Danish Conditions"), subject to completion and/or amendment in the applicable Final Terms. In the event of any inconsistency between the General Conditions and the Danish Conditions, the Danish Conditions shall prevail. In the event of any inconsistency between any of the foregoing and the applicable Final Terms, the applicable Final Terms shall prevail.*

**(A)    General**

For the purpose of this Base Prospectus, "*Danish Notes*" means any Tranche of Notes issued by LBTCBV or LBB and designated as "*Danish Notes*" in the applicable Final Terms.

The Danish Notes will be registered in uncertificated and dematerialised book-entry form with the Danish Securities Centre (*Værdipapircentralen*) ("*VP*"). Danish Notes registered in VP are negotiable instruments and not subject to any restrictions on free negotiability under Danish law. For so long as it is a requirement of the VP Rules (as defined below), Danish Notes may not provide for any form of settlement in respect of payment of interest, principal or premium other than payment in cash.

**(B)    Amendments to the Terms and Conditions in respect of the Danish Notes**

As the Danish Notes will be in uncertificated and dematerialised book-entry form, the Terms and Conditions of the Notes as so amended shall be deemed to be incorporated by reference in, and to form part of, the Deed of Covenant by which the Danish Notes are constituted.

All references to the "Fiscal Agency Agreement" shall include such agreement as may be entered into in relation to the Danish Notes (as amended, supplemented or replaced from time to time, the "*Danish Agency Agreement*") between the Issuers, the Guarantor and Skandinaviska Enskilda Banken A/S which has its registered address at Landemaerket 10, 1014 Copenhagen K, Denmark (the "*Danish Issuing Agent*").

**(a)    Form, Denomination and Title**

    (i)    Condition 1(a) (*Form*) shall be amended to read:

        "(a) *Form*. The Notes are issued in uncertificated and dematerialised book-entry form in accordance with the Danish Securities Trading Act (Da. *lov om værdipapirhandel 479/2006 (as amended)*) in each case in the Specified Currency or Currencies and Denomination(s). This Note is a Senior Note or a Subordinated Note, as indicated in the applicable Final Terms. Notes of one Specified Denomination may not be exchanged for Notes of another Specified Denomination.

        The Notes shall be regarded as Registered Notes for the purposes of these Terms and Conditions save to the extent these Terms and Conditions are inconsistent with Danish laws, regulations and operating procedures applicable to and/or issued by VP (the "*VP Rules*") and all references in these Terms and Conditions to the "Registrar" shall be deemed to be references to VP. No physical notes or certificates will be issued in respect of Notes and the provisions relating to presentation, surrendering or replacement of Notes shall not apply to the Notes.

    (ii)    Condition 1(c) (*Coupons attached*) , Condition 1(d) (*Transfer of Bearer Notes*) and Condition 1(e) (*Title to Definitive Notes*) shall not apply to the Notes, save that references to Euroclear and/or Clearstream, Luxembourg shall, whenever the context so permits, be deemed to include a reference to VP.

(iii)    Condition 1(f) (*Note register*) shall be amended to read:

"(f) *Title to the Notes*. Title to the Notes shall pass by registration in the register (the "*Register*") maintained by the Registrar on behalf of the Issuer in accordance with the VP Rules. The Danish Issuing Agent is acting as account holding institute (Da. *kontoførende institut*) in relation to VP. The Issuer shall be entitled to obtain information from the Register in accordance with the VP Rules. Except as ordered by a court of competent jurisdiction or as required by law, the Holder (as defined below) of any Note shall be deemed to be and may be treated as its absolute owner for all purposes, whether or not it is overdue and regardless of any notice of ownership, trust or an interest in it, any writing on it or its theft or loss and no person shall be liable for so treating the Holder.

Settlement of purchase and sale transactions take place on registration against payment basis. Transfer of ownership of the Notes will be made in accordance with the VP Rules.

In these Terms and Conditions, "*Noteholder*" or "*Holder*" means the person in whose name a Note is registered or the person on whose book-entry securities account the Danish Notes are held (as the case may be) including any person duly authorised to act as a nominee and registered for the Notes.

(iv)    Condition 1(g) (*Transfer of Registered Notes*), Condition 1(h) (*Sums payable on Transfer*) and Condition 1(i) (*Owner of Registered Notes*) shall not apply to the Notes.

**(b)    Interest**

In Condition 3 (*Interest*), where any period is expressed to run from (and including) a particular date to (but excluding) another date, for the purposes of the Notes such period shall instead run from (but excluding) the first date to (and including) the second date.

Payments of interest shall be made in accordance with the VP Rules.

**(c)    Payment of Principal and Interest; Paying Agents**

(v)    Condition 7(b) (*Payments on Global Notes*) shall be amended to read:

"(b) *Payments in accordance with the VP Rules*. Payments of principal and/or interest in respect of the Notes shall be made to the Noteholders registered as such on the third business day (as defined by the then applicable VP Rules) before the due date for such payment, or such other business day falling closer to the due date as then may be stipulated in said rules and will be made in accordance with said rules. Such day shall be the "*Record Date*" in respect of the Notes in accordance with the VP Rules."

In respect of each Series of Notes, the Issuer shall at all times maintain a Registrar which shall be a duly authorised central securities depository under the Danish Securities Trading Act (or any successor thereto) and an Issuing Agent in Denmark duly authorised as an account holding institute under the Danish Securities Trading Act (or any successor thereto)."

(vi)    Condition 7(d) (*Payments on Definitive Registered Notes*) shall not apply to the Notes.

**(d)    Repayment Redemption and Repurchase**

(i)    The following shall be added to the end of Condition 8(d) (*Redemption at the Option of the Issuer*):

"Any such redemption shall be in accordance with the VP Rules and the notice to Noteholders shall also specify the Notes or amounts of the Notes to be redeemed or in

respect of which such option has been so exercised and the procedures for partial redemptions laid down in the VP Rules."

(ii)    The following shall be added to the end of Condition 8(e) (*Redemption at the Option of the Noteholders*):

"Any such notice from the Holder of any Notes will not be take effect against the Issuer before the date on which the relevant Notes have been transferred to the account designated by the Danish Issuing Agent and blocked for further transfer by the Danish Issuing Agent.

(iii)    The following shall be added to the end of Condition 8(i) (*Procedure for Payment upon Redemption*):

Any such redemption shall be in accordance with the VP Rules.

**(e)**    **Events of Default**

Condition 10(c) (*Remedies; Rescission; Waiver*) shall be deleted and replaced by the following:

"(c)    *Remedies; Rescission; Waiver*

If an Event of Default with respect to Notes of any Series at the time Outstanding occurs and is continuing, then in every such case, unless the principal of all of the Notes of such Series shall have already become due and payable, the Holders of at least 25% in principal amount of the Outstanding Notes of that Series may declare the principal amount (or, if the Notes of that Series are Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) of all of the Notes of that Series to be due and payable immediately (or on such later date on which the relevant Notes have been transferred to the account designated by the Danish Issuing Agent and blocked for further transfer by the Danish Issuing Agent) at their Early Redemption Amount, by a notice in writing to the Issuer and the Guarantor, and upon any such declaration such Early Redemption Amount, together with the premium, if any, accrued and unpaid interest, if any, and Additional Amounts, if any, shall become immediately due and payable.

At any time after such a declaration of acceleration with respect to Notes of any Series has been made and before a judgment or decree for payment of the money due has been obtained, the Holders of at least a majority in principal amount of Outstanding Notes of that Series, by written notice to the Issuer and the Guarantor and the Fiscal Agent or the Danish Issuing Agent (as the case may be), may rescind and annul such declaration and its consequences if (i) the Issuer or the Guarantor has paid or deposited with the Fiscal Agent or the Danish Issuing Agent (as the case may be) a sum sufficient to pay in the Specified Currency in which the Notes of such Series are payable:

(A) all overdue interest, if any, on all Notes of that Series and (B) the principal of (and premium, if any, on, and, if such Note is a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) any Notes of that Series which have become due otherwise than by such declaration of acceleration and interest thereon at the Fixed Rate of Interest, Rate of Interest or Accrual Yield, as the case may be, applicable to that Series; and (ii) all Events of Default with respect to Notes of that Series, other than the non-payment of the principal of Notes of that Series, which have become due solely by such declaration of acceleration, have been cured or waived as provided below. No such rescission shall affect any subsequent default or impair any right consequent thereon.

The Holders of at least a majority in principal amount of the Outstanding Notes of any Series or Receipts may on behalf of the Holders of all the Notes of such Series waive any past default hereunder with respect to such Series and its consequences, except a default (i) in the payment of the principal of (or premium, if any, and, if such Note is a

Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) or interest, if any, on any Note of such Series, or in the payment of any sinking fund instalment or analogous obligation with respect to the Notes of such Series, or (ii) in respect of a covenant or provision hereof which as described under Condition 12(e) (*Amendments Requiring Extraordinary Resolution of Noteholders*) below cannot be modified or amended without the passing of an Extraordinary Resolution (as hereafter defined) by the Holders of the Outstanding Notes of such Series affected. Upon any such waiver, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of the Fiscal Agency Agreement or the Danish Agency Agreement (as the case may be) and the Notes of such Series, but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon."

**(f)    Meetings and Amendments**

Each reference in Condition 12 (*Meetings and Amendments*) to Notes being "authenticated" shall not apply to any Notes for so long as they are registered in uncertificated book-entry form with VP.

**(g)    Assumption of Obligations**

The following shall be added as a new sub-paragraph (v) in the first paragraph of Condition 13 (*Assumption of Obligations*) immediately following sub-paragraph (iv) after the words "any jurisdiction);":

"(v) VP, if required, has given its consent to the assumption;"

and the original sub-paragraph (v) shall be read as sub-paragraph (vi).

**(h)    Merger or Consolidation of the Issuer or the Guarantor**

The following shall be added as a new-sub paragraph (ii) in the first paragraph of Condition 14 (*Merger or Consolidation of the Issuer or the Guarantor*) immediately following the words "any jurisdiction);":

"(ii) VP, if required has given its consent to such a transaction and"

and the original sub-paragraph (ii) shall be read as sub-paragraph (iii), the original sub-paragraph (iii) shall be read as sub-paragraph (iv) and the original sub-paragraph (iv) shall be read as sub-paragraph (v).

**(i)    Notices**

The following shall be added as a new paragraph to the end of Condition 15 (*Notices*):

"Notices in respect of Danish Notes shall be in writing and shall be addressed to such Holders at their respective address appearing in the Register maintained by the Registrar in accordance with the VP Rules."

**(j)    Governing Law, Consent to Jurisdiction**

Notwithstanding Condition 19 (*Governing Law, Consent to Jurisdiction*) Danish law and jurisdiction will be applicable with regard to the registration of the Notes in VP.

**Annex 3**

**Amendments to the Terms and Conditions of the Notes in respect of Finnish Notes**

*The terms and conditions of Finnish Notes shall comprise the Terms and Conditions of the Notes set forth on page 79 above (the "General Conditions") as amended by the additional terms and conditions set forth below (the "Finnish Conditions"), subject to completion and/or amendment in the applicable Final Terms. In the event of any inconsistency between the General Conditions and the Finnish Conditions, the Finnish Conditions shall prevail. In the event of any inconsistency between any of the foregoing and the applicable Final Terms, the applicable Final Terms shall prevail.*

(A)    **General**

For the purpose of this Base Prospectus, "*Finnish Notes*" means any Tranche of Notes issued by LBTCBV or LBB and designated as "*Finnish Notes*" in the applicable Final Terms.

The Finnish Notes will be registered in uncertificated and dematerialised book-entry form with the Finnish Central Securities Depository Ltd., Visiting Address, Urho Kekkosen katu 5 C, PO Box 1110, 00101 Helsinki, Finland (the "*APK*"). Finnish Notes registered in APK are negotiable instruments and not subject to any restrictions on free negotiability under Finnish law.

(B)    **Amendments to the Terms and Conditions in respect of the Finnish Notes**

As the Finnish Notes will be in uncertificated and dematerialised book-entry form, the Terms and Conditions of the Notes as so amended shall be deemed to be incorporated by reference in, and to form part of, the Deed of Covenant by which the Finnish Notes are constituted.

All references to the "Fiscal Agency Agreement" shall include such agreement (as amended, supplemented or replaced from time to time, the "*Finnish Issuing and Paying Agency Agreement*") as may be entered into in relation to the Finnish Notes between the Issuers, the Guarantor and Nordea Bank Finland Plc, Aleksanterinkatu 36, Helsinki, Finland (the "*Finnish Issuing Agent*").

(a)    **Form and Transfer**

(i)    Condition 1(a) (*Form*) shall be amended to read:

"(a) *Form.* The Notes are in uncertificated and dematerialised book-entry form in accordance with the Finnish Act on the Book-Entry System (*Fin. laki arvo-osuusjärjestelmästä (826/1991)*) and with the Finnish Act on Book-Entry Accounts (*Fin. laki arvo-osuustileistä (827/1991)*). This Note is a Senior Note or a Subordinated Note, as indicated in the applicable Final Terms. Notes of one Specified Denomination may not be exchanged for Notes of another Specified Denomination.

The Notes shall be regarded as Registered Notes for the purposes of these Terms and Conditions save to the extent these Terms and Conditions are inconsistent with Finnish laws, regulations and operating procedures applicable to and/or issued by the APK (the "*APK Rules*") and all references in these Terms and Conditions to the "Registrar" shall be deemed to be references to the APK. No physical Notes or certificates will be issued in respect of Notes and the provisions relating to presentation, surrendering or replacement of Notes shall not apply to the Notes.

(ii)    Condition 1(c) (*Coupons attached*) , Condition 1(d) (*Transfer of Bearer Notes*) and Condition 1(e) (*Title to Definitive Notes*) shall not apply to the Notes, save that references to Euroclear and/or Clearstream, Luxembourg shall, whenever the context so permits, be deemed to include a reference to the APK.

132

(iii)   Condition 1(f) (*Note register*) shall be amended to read:

"(f) *Title to the Notes*. Title to the Notes shall pass by transfer from a Noteholder's book-entry securities account to another securities book-entry account within the APK (except where the Finnish Notes are nominee-registered and are transferred from one account to another account with the same nominee). Notwithstanding any secrecy obligation, the Issuer shall be entitled to obtain information (including but not limited to information on Noteholders) from the register (the "*Register*") maintained by the Registrar on behalf of the Issuer in accordance with the APK Rules, and the APK shall be entitled to provide such information to the Issuer notwithstanding any secrecy obligation. The Issuer shall be entitled to pass such information to the Finnish Issuing Agent, Paying Agent or Fiscal Agent or to authorise such Agent to acquire such information from the APK directly. Except as ordered by a court of competent jurisdiction or as required by law, the Holder (as defined below) of any Note shall be deemed to be and may be treated as its absolute owner for all purposes, whether or not it is overdue and regardless of any notice of ownership, trust or an interest in it, any writing on it or its theft or loss and no person shall be liable for so treating the Holder.

In these Terms and Conditions, "*Noteholder*" or "*Holder*" means the person in whose name a Note is registered or the person on whose book-entry securities account the Notes are held including a nominee account holder (as the case may be)"

(iv)   Condition 1(g) (*Transfer of Registered Notes*), Condition 1(h) (*Sums payable on Transfer*) and Condition 1(i) (*Owner of Registered Notes*) shall not apply to the Notes.

**(b)    Interest**

Condition 3(d) (*Partly Paid Notes*) shall not apply to the Notes.

**(c)    Payments of Principal and Interest; Paying Agents**

(i)   Condition 7(b) (*Payments on Global Notes*) shall be amended to read:

"(b) *Payments in accordance with the APK Rules*. Payments of principal and/or interest in respect of the Notes shall be made to the Noteholders on the basis of information recorded in the relevant Noteholder's book-entry securities account on the due date in accordance with the APK Rules. Noteholders will not be entitled to any interest or other compensation for any delay after the due date in receiving the amount due as a result of the due date for payment not being a business day. In this Condition 7(b) (*Payments on Global Notes*), "*business day*" means a day, other than a Saturday or Sunday on which APK and its relevant system in which the Notes are registered are open for business in accordance with the APK Rules.

In respect of each Series of Notes, the Issuer shall at all times maintain a Registrar which shall be the duly authorised Finnish central securities depository under the Finnish Act on the Book-Entry System and a Finnish Issuing Agent duly authorised as an account operator (*Fin. tilinhoitajayhteisö*) under the Act on the Book-Entry System.

(ii)   Condition 7(d) (*Payments on Definitive Registered Notes*) and 7(g) (*Exchange of Coupons and Talons*) shall not apply to the Notes.

(iii)   The following shall be added to the end of Condition 8(i) (*Procedure for Payment upon Redemption*):

Any such redemption shall be in accordance with the APK Rules.

(d)     **Repayment, Redemption and Repurchase**

    (i)    The following shall be added to the end of Condition 8(d) (*Redemption at the Option of the Issuer*):

        Any such redemption shall be in accordance with the APK Rules and the notice to Noteholders shall also specify the Notes (recognizing that the Notes are not numbered or otherwise separable from each other) or amounts of the Notes to be redeemed or in respect of which such option has been so exercised and the procedures for partial redemptions laid down in the APK Rules.

    (ii)    The following shall be added to the end of Condition 8(e) (*Redemption at the Option of the Noteholders*):

        Any such notice from the Holder of any Note will not take effect against the Issuer before the date on which the relevant Notes have been transferred to the account designated by the Finnish Issuing Agent and blocked for further transfer by the Finnish Issuing Agent.

(e)     **Events of Default**

Condition 10(c) (*Remedies; Rescission; Waiver*) shall be deleted and replaced by the following:

"(c)    *Remedies; Rescission; Waiver*

If an Event of Default with respect to Notes of any Series at the time Outstanding occurs and is continuing, then in every such case, unless the principal of all of the Notes of such Series shall have already become due and payable, the Holders of at least 25% in principal amount of the Outstanding Notes of that Series may declare the principal amount (or, if the Notes of that Series are Zero Coupon Notes, the Accrual Yield Amount payable in respect thereof) of all of the Notes of that Series to be due and payable immediately (or on such later date on which the relevant Notes have been transferred to the account designated by the Finnish Issuing Agent and blocked for further transfer by the Finnish Issuing Agent) at their Early Redemption Amount, by a notice in writing to the Issuer and the Guarantor, and upon any such declaration such Early Redemption Amount, together with the premium, if any, accrued and unpaid interest, if any, and Additional Amounts, if any, shall become immediately due and payable.

At any time after such a declaration of acceleration with respect to Notes of any Series has been made and before a judgment or decree for payment of the money due has been obtained, the Holders of at least a majority in principal amount of Outstanding Notes of that Series, by written notice to the Issuer and the Guarantor and the Fiscal Agent or the Finnish Issuing Agent (as the case may be), may rescind and annul such declaration and its consequences if (i) the Issuer or the Guarantor has paid or deposited with the Fiscal Agent or the Finnish Issuing Agent (as the case may be) a sum sufficient to pay in the Specified Currency in which the Notes of such Series are payable:

(A) all overdue interest, if any, on all Notes of that Series and (B) the principal of (and premium, if any, on, and, if such Note is a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) any Notes of that Series which have become due otherwise than by such declaration of acceleration and interest thereon at the Fixed Rate of Interest, Rate of Interest or Accrual Yield, as the case may be, applicable to that Series; and (ii) all Events of Default with respect to Notes of that Series, other than the non-payment of the principal of Notes of that Series, which have become due solely by such declaration of acceleration, have been cured or waived as provided below. No such rescission shall affect any subsequent default or impair any right consequent thereon.

The Holders of at least a majority in principal amount of the Outstanding Notes of any Series may on behalf of the Holders of all the Notes of such Series waive any past default hereunder

with respect to such Series and its consequences, except a default (i) in the payment of the principal of (or premium, if any, and, if such Note is a Zero Coupon Note, the Accrual Yield Amount payable in respect thereof) or interest, if any, on any Note of such Series, or in the payment of any sinking fund instalment or analogous obligation with respect to the Notes of such Series, or (ii) in respect of a covenant or provision hereof which as described under Condition 12(e) (*Amendments Requiring Extraordinary Resolution of Noteholders*) below cannot be modified or amended without the passing of an Extraordinary Resolution (as hereafter defined) by the Holders of the Outstanding Notes of such Series affected. Upon any such waiver, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of the Fiscal Agency Agreement and the Notes of such Series, but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon."

**(f)    Meetings and Amendments**

Each reference in Condition 12 (*Meetings and Amendments*) to Notes being "authenticated" shall not apply to any Notes for so long as they are registered in uncertificated book-entry form with the APK.

**(g)    Assumption of Obligations**

The following shall be added as a new sub-paragraph (v) in the first paragraph of Condition 13 (*Assumption of Obligations*) immediately following sub-paragraph (iv) after the words "any jurisdiction);":

"(v)    the APK, if required, has given its consent to the assumption;"

and the original sub-paragraph (v) shall be read as sub-paragraph (vi).

**(h)    Merger or Consolidation of the Issuer or the Guarantor**

The following shall be added as a new-sub paragraph (ii) in the first paragraph of Condition 14 (*Merger or Consolidation of the Issuer or the Guarantor*) immediately following the words "any jurisdiction);":

"(ii)    the APK, if required has given its consent to such a transaction and;"

and the original sub-paragraph (ii) shall be read as sub-paragraph (iii).

**(i)    Notices**

The following shall be added as a new paragraph to the end of Condition 15 (*Notices*):

"Notices in respect of Finnish Notes will be in writing and shall be addressed to such Holders at its address appearing in the Register maintained by the Registrar in accordance with the APK Rules."

**(j)    Governing Law, Consent to Jurisdiction**

Notwithstanding Condition 19 (*Governing Law, Consent to Jurisdiction*) Finnish law and jurisdiction will be applicable with regard to the registration of the Notes in APK.