"*Settlement Disruption Event*" means, in respect of the Shares of a Share Issuer, an event beyond the control of the Issuer as a result of which the relevant Clearance System cannot clear the transfer of such Shares;

"*Share Basket*" means the basket of shares (each a "*Share*" and collectively the "*Shares*" which shall refer to any one or more of the Shares included in the Share Basket, as the context requires) of the companies described in the applicable Final Terms or any Replacement Share Issuer (as defined below) selected by the Calculation Agent in accordance with the terms hereof (each a "*Share Issuer*");

"*Strike Price*" means, in relation to the Shares of a Share Issuer, the Closing Price of such Shares on the Initial Valuation Date;

"*Strike Price$_{Worst}$*" means the Strike Price of the Worst Performing Shares;

"*Trading Disruption*" means, in respect of the Shares of a Share Issuer, any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise (i) relating to the relevant Share on the relevant Exchange, or (ii) in futures or options contracts relating to the relevant Share on the relevant Related Exchange;

"*Valuation Date*" means each date specified as such in the applicable Final Terms (including the Initial Valuation Date and the Final Valuation Date), or if such day is not a Scheduled Trading Day, the next following Scheduled Trading Day, and subject to Condition 23 (*Disrupted Days*);

"*Valuation Time*" means in respect of the Shares of a Share Issuer, unless otherwise specified in the applicable Final Terms, the official close of trading on the relevant Exchange; and

"*Weighting*" for each Share means the weighting of such Share in the Basket as specified in the applicable Final Terms, or if Weighting is specified as not applicable, the Shares shall be deemed to be equally weighted.

"*Worst Performing Shares*" means the Shares of the Share Issuer with the lowest Performance, as determined by the Calculation Agent.

**(B)     Amendments to, and Restatements of, the Terms and Conditions**

1.      The following Condition 3(f) *Equity linked Interest* is inserted in Condition 3 (*Interest*):

"(f) *Equity linked Interest*

Interest linked to a single Share or to a Share Basket, as the case may be, may become payable on each Note on any Interest Payment Date (including if so specified the Maturity Date), as may be specified in the applicable Final Terms. Any rights to payment of interest may be conditional upon the satisfaction of all such conditions as may be set forth in the applicable Final Terms.

Subject to Condition 23 (*Disrupted Days*), the Calculation Agent will, at or as soon as practicable after each applicable Valuation Date (except the Initial Valuation Date), final Averaging Date or final Observation Date, as the case may be, determine the interest linked to the Share or the Share Basket, as the case may be, payable in respect of each Note (the "*Equity Linked Interest Amount*") and notify the Fiscal Agent as soon as practicable after calculating the same. Each Equity Linked Interest Amount shall be calculated in accordance with the formulae set forth in the applicable Final Terms and rounding the resultant figure to the nearest sub-unit of the Specified Currency (half a sub-unit being rounded upwards)."

2.      Condition 8(a) (*At Maturity*) is hereby amended and restated as follows:

"(a)     *At Maturity*

(A)     *Final Redemption Amount*

Unless Physical Settlement applies and unless previously redeemed or purchased or cancelled as specified below, each Note will be redeemed by the Issuer at its Final Redemption Amount (the "*Final Redemption Amount*") specified in, or determined in the manner specified in, the applicable Final Terms in the relevant Specified Currency (except as otherwise provided in Condition 6 (*Payment Currency*)) ("*Cash Settlement*"). If applicable, the Calculation Agent will, on or as soon as practicable after the Final Valuation Date, determine the Final Redemption Amount of each Equity Linked Note and notify the Fiscal Agent as soon as practicable after calculating the same. The Calculation Agent shall calculate the Final Redemption Amount of each Equity Linked Note in accordance with the formula set forth in the applicable Final Terms and rounding the resultant figure to the nearest sub-unit of the Specified Currency (half a sub-unit being rounded upwards).

(B) **Physical Settlement**

If the applicable Final Terms so provide, physical settlement shall apply to the Notes, in which case the Issuer shall, on the Maturity Date, deliver the Physical Settlement Amount to or to the order of each Noteholder in accordance with, and subject to, Condition 25 (*Physical Settlement*) ("*Physical Settlement*").

(C) **Certificates to be Final**

The provisions of Condition 3(b)(vii) (*Certificates to be Final*) shall apply, *mutatis mutandis* to any certificate, communication, opinion, calculation, determination, quotation and decision given, expressed, made or obtained by the Calculation Agent for the purposes of this Condition 8 (*Repayment, Redemption and Repurchase*)."

3. The following Condition 8(j) (*Mandatory Early Redemption*) is inserted in Condition 8 (*Repayment, Redemption and Repurchase*):

"(j) *Mandatory Early Redemption*

Unless the Notes have been previously redeemed or purchased and cancelled, if on any Mandatory Early Redemption Valuation Date a Mandatory Early Redemption Event occurs, then the Notes will be automatically redeemed in whole, but not in part, on the Mandatory Early Redemption Date immediately following such Mandatory Early Redemption Valuation Date and the redemption amount payable by the Issuer on such date upon redemption of each Note shall be an amount in the Specified Currency equal to the relevant Mandatory Early Redemption Amount.

As used herein:

"*Mandatory Early Redemption Amount*" means, in respect of each Mandatory Early Redemption Date, an amount equal to the product of (i) the Calculation Amount and (ii) the relevant Mandatory Early Redemption Rate relating to that Mandatory Early Redemption Date;

"*Mandatory Early Redemption Date*" means each date specified as such in the applicable Final Terms, subject in each case to adjustment in accordance with the Business Day Convention specified in the applicable Final Terms;

"*Mandatory Early Redemption Event*" means an event as further specified in the relevant Final Terms whereby the Closing Price of a specified Share or of all Shares in a basket, as the case may be, as determined by the Calculation Agent as of any Mandatory Early Redemption Valuation Date is, as specified in the relevant Final Terms, (i) "greater than", (ii) "greater than or equal to", (iii) "less than" or (iv) "less than or equal to" the Mandatory Early Redemption Price, or as the case may be, any other specified value;

"*Mandatory Early Redemption Price*" means the price per Share (which may be specified as a percentage) specified as such or otherwise determined in the applicable Final Terms;

"*Mandatory Early Redemption Rate*" means, in respect of any Mandatory Early Redemption Date, the rate specified as such in the applicable Final Terms; and

"*Mandatory Early Redemption Valuation Date*" means each date specified as such in the applicable Final Terms or, if such date is not a Scheduled Trading Day, the next following Scheduled Trading Day unless, in the opinion of the Calculation Agent, any such day is a Disrupted Day. If any such day is a Disrupted Day, then the corresponding provisions in Condition 23 (*Disrupted Days*) in relation to the Valutation Date shall apply *mutatis mutandis* as if references in such provisions to "Valuation Date" were to "Mandatory Early Redemption Valuation Date".

If the Notes are interest bearing, no further amounts of interest or principal would be payable after a Mandatory Early Redemption Date, unless otherwise specified in the Final Terms."

4.    The following Condition 23 (*Disrupted Days*) is hereby inserted into the Terms and Conditions:

"23    **Disrupted Days**

If, in respect of the Shares of any Share Issuer, the Calculation Agent determines that any Valuation Date is a Disrupted Day, then

(i)    in the case of Equity-Linked Notes relating to a single Share, the Valuation Date shall be the first succeeding Scheduled Trading Day that is not a Disrupted Day relating to such Share, provided that (A) such day shall not be later than, and shall be deemed to be the earlier of (i) the eighth succeeding Scheduled Trading Day and (ii) the third weekday (meaning any day other than a Saturday or a Sunday) immediately prior to the relevant Interest Payment Date, the relevant Mandatory Early Redemption Date or the Maturity Date, as the case may be, notwithstanding that such day is a Disrupted Day in respect of such Share (the "*Deemed Date*") and (B) the Calculation Agent shall determine its good faith estimate of the value for such Shares that would have prevailed but for that Disrupted Day as of the Valuation Time on that Deemed Date.; or

(ii)   in the case of Equity-Linked Notes relating to a Share Basket, the Valuation Date for the Shares of each Share Issuer not affected by the occurrence of a Disrupted Day shall be the scheduled Valuation Date and the Valuation Date for the Shares of each Share Issuer affected by the occurrence of a Disrupted Day shall be the first succeeding Scheduled Trading Day that is not a Disrupted Day relating to such Shares, provided that (A) such day shall not be later than, and shall be deemed to be the earlier of (i) the eighth succeeding Scheduled Trading Day and (ii) the third weekday (meaning any day other than a Saturday or a Sunday) immediately prior to the relevant Interest Payment Date, the relevant Mandatory Early Redemption Date or the Maturity Date, as the case may be, notwithstanding that such day is a Disrupted Day in respect of such Share (the "*Deemed Date*") and (B) the Calculation Agent shall determine its good faith estimate of the value for such Shares that would have prevailed but for that Disrupted Day as of the Valuation Time on that Deemed Date."

5.    The following Condition 24 (*Potential Adjustment Events and Extraordinary Events*) is hereby inserted into the Terms and Conditions:

"24    **Potential Adjustment Events and Extraordinary Events**

(*A*)    *Definitions*: In these Terms and Conditions, the following terms will have the following meaning:

(i)    "*Delisting*" means that the relevant Exchange announces that pursuant to the rules of such Exchange, the Shares of a Share Issuer cease (or will cease) to be listed, traded or publicly quoted on the relevant Exchange for any reason (other than a Merger Event or Tender Offer) and are not immediately re-listed, re-traded or re-quoted (i) in respect of any Share whose Exchange is located in the United States of America, on the New York Stock Exchange, the American Stock Exchange or the NASDAQ NMS, (ii) in respect of

any Share whose Exchange is located in the European Union, in any member state of the European Union and (iii) in respect of any Share whose Exchange is located elsewhere, on an exchange or quotation system located in the same country as the Exchange;

(ii)     "*Insolvency*" means that by reason of the voluntary or involuntary liquidation, bankruptcy, insolvency, dissolution or winding-up of or any analogous proceedings affecting a Share Issuer (i) all the Shares of a Share Issuer are required to be transferred to a trustee, liquidator or other similar official or (ii) holders of the Shares of a Share Issuer, become legally prohibited from transferring them;

(iii)    "*Merger Date*" means the closing date of a Merger Event or, where a closing date cannot be determined under the local law applicable to such Merger Event, such other date as determined by the Calculation Agent;

(iv)    "*Merger Event*" means, as determined by the Calculation Agent in its sole discretion in respect of any relevant Shares, any (i) reclassification or change of such Shares that results in a transfer of or an irrevocable commitment to transfer all of such Shares outstanding to another entity or person, (ii) consolidation, amalgamation, merger or binding share exchange of the Share Issuer with or into another entity or person (other than a consolidation, amalgamation, merger or binding share exchange in which such Share Issuer is the continuing entity and which does not result in a reclassification or change of all of such Shares outstanding), (iii) takeover offer, tender offer, exchange offer, solicitation, proposal or other event by any entity or person to purchase or otherwise obtain 100 per cent. of the outstanding Shares of the Share Issuer that results in a transfer of or an irrevocable commitment to transfer all such Shares (other than such Shares owned or controlled by such other entity or person), or (iv) consolidation, amalgamation, merger or binding share exchange of the Share Issuer or its subsidiaries with or into another entity in which the Share Issuer is the continuing entity and which does not result in a reclassification or change of all such Shares outstanding but results in the outstanding Shares (other than Shares owned or controlled by such other entity) immediately prior to such event collectively representing less than 50 per cent. of the outstanding Shares immediately following such event (a "*Reverse Merger*"), in each case if the Merger Date is on or before the Final Valuation Date;

(v)     "*Nationalisation*" means that all the Shares or all or substantially all the assets of a Share Issuer are nationalised, expropriated or are otherwise required to be transferred to any governmental agency, authority, entity or instrumentality thereof;

(vi)    "*Potential Adjustment Event*" means any of the following:

(1)     a subdivision, consolidation or reclassification of Shares (unless resulting in a Merger Event) or, a free distribution or dividend of any Shares to existing holders by way of bonus, capitalisation or similar issue;

(2)     a distribution, issue or dividend to existing holders of the Shares of (a) such Shares or (b) other share capital or securities granting the right to payment of dividends and/or the proceeds of liquidation of a Share Issuer equally or proportionately with such payments to holders of such Shares or (c) share capital or other securities of another issuer acquired or owned (directly or indirectly) by the Share Issuer as a result of a spin-off or other similar transaction, or (d) any other type of securities, rights or warrants or other assets, in any case for payment (in cash or otherwise) at less than the prevailing market price as determined by the Calculation Agent;

(3)     an Extraordinary Dividend;

(4)     a call by a Share Issuer in respect of the relevant Shares which are not fully paid;

(5)     a repurchase by a Share Issuer or any of its subsidiaries of relevant Shares whether out of profits or capital and whether the consideration for such repurchase is cash, securities or otherwise;

(6)     in respect of a Share Issuer, an event that results in any shareholder rights being distributed or becoming separated from shares of common stock or other shares of the capital stock of the Share Issuer pursuant to a shareholder rights plan or arrangement directed against hostile takeovers that provides upon the occurrence of certain events for a distribution of preferred stock, warrants, debt instruments or stock rights at a price below their market value, as determined by the Calculation Agent, provided that any adjustment effected as a result of such an event shall be readjusted upon any redemption of such rights; or

(7)     any other event having, in the opinion of the Calculation Agent, a diluting or concentrative effect on the theoretical value of the Shares or of the composition of the Share Basket;

(vii)   "*Tender Offer*" means a takeover offer, tender offer, exchange offer, solicitation, proposal or other event by any entity or person that results in such entity or person purchasing, or otherwise obtaining or having the right to obtain, by conversion or other means, greater than 10 per cent. and less than 100 per cent. of the outstanding Shares, as determined by the Calculation Agent, based upon the makings of filings with governmental or self-regulatory agencies or such other information as the Calculation Agent deems relevant; "*Tender Offer Date*" means, in respect of a Tender Offer, the date on which Shares in the amount of the applicable percentage threshold are actually purchased or otherwise obtained (as determined by the Calculation Agent).

**(B)     *Potential Adjustment Events*:** Following the declaration by a Share Issuer of the terms of any Potential Adjustment Event, the Calculation Agent will, in its sole and absolute discretion, determine whether such Potential Adjustment Event has a diluting or concentrative effect on the theoretical value of the relevant Shares or on the composition of the Share Basket and, if so, the Calculation Agent will determine in its sole and absolute discretion the appropriate adjustment(s), if any, to be made to the terms of the Conditions as the Calculation Agent determines appropriate to account for the Potential Adjustment Event and determine the effective date(s) of that adjustment(s) (including but not limited to adjustment(s) to account solely for changes in volatility, expected dividends, stock loan rate or liquidity relative to the relevant Share). The Calculation Agent may (but need not) determine the appropriate adjustment(s) by reference to the adjustment(s) in respect of the Potential Adjustment Event made by an options exchange to options on the Shares traded on that options exchange.

**(C) *Merger Event or Tender Offer*:** In respect of each Merger Event or Tender Offer, the following terms have the meanings given below:

*Share-for-Share* means, (i) in respect of a Merger Event or Tender Offer, that the consideration for the relevant Shares consists (or, at the option of the holder of such Shares, will consist) solely of New Shares and (ii) a Reverse Merger;

*Share-for-Other* means, in respect of a Merger Event or Tender Offer, that the consideration for the relevant Shares consists solely of Other Consideration;

*Share-for-Combined* means, in respect of a Merger Event or Tender Offer, that the consideration for the relevant Shares consists of Combined Consideration;

*New Shares* means ordinary or common shares, whether of the entity or person (other than the Share Issuer) involved in the Merger Event or the making of the Tender Offer or a third party, that are, or that as of the Merger Date or Tender Offer Date are promptly scheduled to be, (A) publicly quoted, traded or listed (i) in respect of the Shares of any Share Issuer which Exchange is located in the United States of America, on the New

York Stock Exchange, the American Stock Exchange or the NASDAQ NMS, (ii) in respect of the Shares of any Share Issuer which Exchange is located in the European Union, in any member state of the European Union and (iii) in respect of the Shares of any Share Issuer which Exchange is located elsewhere, on an exchange or quotation system located in the same country as the Exchange and (B) not subject to any currency exchange controls, trading restrictions or other trading limitations;

**Other Consideration** means cash and/or any securities (other than New Shares) or assets (whether of the entity or person (other than the Share Issuer) involved in the Merger Event or the making of a Tender Offer or a third party); and

**Combined Consideration** means New Shares in combination with Other Consideration.

If a Merger Event or Tender Offer occurs, the Calculation Agent will in its sole and absolute discretion take any of the actions described in (1) (2) (3) and/or (4) below, as applicable:

(1)   (a)   in respect of each Share-for-Share Merger Event or, as the case may be, each Share-for-Share Tender Offer, on or after the relevant Merger Date or, as the case may be, the Tender Offer Date make such adjustment(s) the Calculation Agent acting in its sole discretion considers appropriate to reflect the number of New Shares to which a holder of one relevant Share immediately prior to the occurrence of the Merger Event or, as the case may be, the Tender Offer would be entitled upon consummation of the Merger Event or, as the case may be, the Tender Offer and the New Shares will be deemed to be the relevant Shares and the issuer thereof will be deemed the Share Issuer, respectively, and, if necessary, the Calculation Agent will adjust any other relevant terms (including, without limitation, adjustments to account for changes in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares);

      (b)   in respect of each Share-for-Other Merger Event or, as the case may be each Share-for-Other Tender Offer, on or after the relevant Merger Date or, as the case may be, the Tender Offer Date, the amount of Other Consideration (as subsequently modified in accordance with any relevant terms and including the proceeds of any redemption, if applicable) to which a holder of one relevant Share would be entitled upon consummation of the Merger Event or, as the case may be, the Tender Offer will be applied by the Calculation Agent to determine such adjustment(s) as it acting in its sole discretion considers appropriate in respect of such Share, and, if necessary, the Calculation Agent will adjust any other relevant terms (including, without limitation, adjustments to account for changes in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares); or

      (c)   in respect of each Share-for-Combined Merger Event or, as the case may be, each Share-for Combined Tender Offer, on or after the Merger Date or, as the case may be, the Tender Offer Date, the number of New Shares and the amount of Other Consideration (as subsequently modified in accordance with any relevant terms and including the proceeds of any redemption, if applicable) to which a holder of one of the relevant Shares would be entitled upon consummation of the Merger Event or, as the case may be, the Tender Offer will be applied by the Calculation Agent to determine such adjustment(s) as it acting in its sole discretion considers appropriate with respect to the affected Shares and the issuer of such New Shares and, if necessary, the Calculation Agent will adjust any other relevant terms (including, without limitation, adjustments to account for

175

changes in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares);

(2)    if, in the case of Equity-Linked Notes relating to a Share Basket, at any time the Calculation Agent determines that a Merger Event or Tender Offer has led, or would lead, to the merger, consolidation or any other combination of the Shares of two or more Share Issuers (a "**Share Issuer Merger**"), the Calculation Agent will determine which original Share Issuer or Share Issuers should cease to be treated as a Share Issuer or Share Issuers for the purpose of these Conditions (each a "**Replaced Share Issuer**") and shall be entitled either (i) to select one or more new entities (as the case may be) (each a "**Replacement Share Issuer**") to be a Share Issuer in place of the Replaced Share Issuer or Share Issuers as of a date determined by the Calculation Agent (a "**Replacement Date**") or (ii) to adjust the Weighting of the Shares of the remaining Share Issuers in the basket. Any Replacement Share Issuer will, to the extent practicable, be selected from the same industry, have shares denominated in the same currency and have a similar market capitalisation to the relevant Replaced Share Issuer;

(3)    on or after the relevant Merger Date or Tender Offer Date (A) make such adjustment(s) to the exercise, interest, payment or any other terms of the Notes as the Calculation Agent determines appropriate to account for the economic effect on the Notes of such Merger Event or Tender Offer (provided in the case of a Tender Offer, the Shares will not change) including adjustments to account for changes in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Notes, which may, but need not, be determined by reference to the adjustment(s) made in respect of such Merger Event or Tender Offer by an options exchange to options on the relevant Shares traded on such options exchange and (B) determine the effective date(s) of such adjustment(s); and/or

(4)    either:

(a)    cancel the Notes in whole only and pay the Cancellation Amount (if any); or

(b)    determine which original Share Issuer or Share Issuers should cease to be treated as a Share Issuer or Share Issuers for the purpose of these Conditions and pay the Cancellation Amount (if any).

If a Merger Date or Tender Offer Date is scheduled to be after the Final Valuation Date, the Calculation Agent will determine, with respect to the theoretical value of the Notes, the economic effect of the announcement of a potential Merger Event or Tender Offer Event (including but not limited to any change in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares) from the announcement date to such Final Valuation Date, as applicable. If such economic effect is material, the Calculation Agent shall (acting in its sole and absolute discretion) adjust the terms of the Conditions to reflect such economic effect.

***(D) Nationalisation and Insolvency***: If a Nationalisation or Insolvency occurs, the Calculation Agent shall, in its sole and absolute discretion take any of the actions described in (1) and (2) below:

(1)    on a Nationalisation, acting in its sole and absolute discretion, either:

(a)    treat the affected Share Issuer as a Replaced Share Issuer and select a Replacement Share Issuer in the manner specified in paragraph (C) (2) above; or

(b) make such other adjustment(s) to the terms of the Conditions or such determination as the Calculation Agent, acting in its sole and absolute discretion, considers appropriate to account for the Nationalisation;

(2) either:

(a) request the Issuer to cancel the Notes in whole only and pay the Cancellation Amount (if any); or

(b) determine which original Share Issuer or Share Issuers should cease to be treated as a Share Issuer or Share Issuers for the purpose of these Conditions and request the Issuer to pay the Cancellation Amount (if any).

**(E) Delisting**: If a Delisting occurs, the Calculation Agent shall, in its sole and absolute discretion, take either of the actions described in (1) or (2) below:

(1) treat the affected Share Issuer as a Replaced Share Issuer and select a Replacement Share Issuer in the manner specified in (C) (2) above; or

(2) either:

(a) request the Issuer to cancel the Notes in whole only and pay the Cancellation Amount (if any); or

(b) determine which original Share Issuer or Share Issuers should cease to be treated as a Share Issuer or Share Issuers for the purpose of these Conditions and request the Issuer to pay the Cancellation Amount (if any).

**(F) Valuation of Shares of Replacement Share Issuers**: In calculating any Equity Linked Interest Amount, Early Redemption Amount, Mandatory Early Redemption Amount, the Final Redemption Amount or the Physical Settlement Amount, as the case may be, the Strike Price for the Replacement Share Issuer Share shall be deemed to be the product of (a) the Closing Price of the Replacement Share Issuer Share on the relevant Replacement Date, and (b) the quotient of the relevant Strike Price for the Replaced Share Issuer Share and the Closing Price for the Replaced Share Issuer Share on the relevant Replacement Date (as adjusted by the Calculation Agent in its discretion to reflect the cost to the Issuer or any affiliate of replacing the affected replaced Share and adjusting any associated hedging arrangements)."

6. The following Condition 25 (*Physical Settlement*) is hereby inserted into the Terms and Conditions:

"**25 Physical Settlement**

**(A) Physical Settlement Amount**

(i) Determination of Physical Settlement Amount: If Physical Settlement applies, the amount to be delivered to, or to the order of, each Noteholder in respect of each Note shall be the Number of Shares, together with any Fractional Share Amount to which a Noteholder may be entitled in accordance with paragraph (ii) below (*Fractions of a Share*), or any other amount as provided in the applicable Final Terms (the "*Physical Settlement Amount*").

(ii) Fractions of a Share: If Physical Settlement applies and the aggregate Number of Shares to be delivered to a Noteholder in respect of its holding of Notes is not an integral number, as determined by the Calculation Agent, the Issuer shall, on the Maturity Date, in lieu of delivery of the fractional entitlement of the Number of Shares (the "*Fraction*"), make or procure that there is made to the relevant Noteholder a cash payment in the Specified Currency (the "*Fractional Share Amount*") as determined by the Calculation Agent in accordance with the following formula:

**Fractional Share Amount = Fraction X Final Price**

*provided that* if the Fractional Share Amount is of a *de minimis* amount, as determined by the Calculation Agent, the Noteholder shall not receive any such amount and shall not be entitled to the delivery of a fractional entitlement of the relevant Shares but shall only receive the applicable Number of Shares rounded down to the nearest whole number of Shares.

**(B)** *Delivery of Physical Settlement Amount*

(i) *Delivery on the Maturity Date*: If Physical Settlement applies, provided that the conditions for Physical Settlement are fulfilled, the Issuer shall deliver to the Noteholder the Physical Settlement Amount through the Clearance System on the Maturity Date (or, if such day is not a Clearance System Business Day, the first succeeding Clearance System Business Day), subject as provided in this paragraph and in paragraph (C) below (*Procedure for Physical Settlement*).

(ii) *Settlement Disruption Event*: If Physical Settlement applies and a Settlement Disruption Event prevents the Issuer from effecting delivery of any Shares on the Clearance System Business Day which would, but for the Settlement Disruption Event, have been the Maturity Date (the "*Scheduled Maturity Date*"), then the Maturity Date shall be deemed to be the first succeeding day on which delivery of the Shares can take place through the relevant Clearance System unless, in the opinion of the Issuer, a Settlement Disruption Event prevents the Issuer from delivering the Shares on each of the eight Clearance System Business Days immediately following the Scheduled Maturity Date. In that case:

(a) if the Calculation Agent determines that the Shares can be delivered in any other commercially reasonable manner, then payment and/or delivery of the Physical Settlement Amount, as the case may be, shall be effected on the first day on which settlement of a sale of Shares executed on that eighth Clearance System Business Day customarily would take place using such other commercially reasonable manner of delivery of the Shares (which other manner of delivery will be deemed the Clearance System for the purposes of delivery of the relevant Shares); or

(b) if the Calculation Agent determines that the Shares cannot be delivered in any other commercially reasonable manner, then payment and/or delivery of the Physical Settlement Amount, as the case may be, shall be postponed until such day as the Calculation Agent determines that it can be effected through the Clearance System or in any other commercially reasonable manner.

(iii) Manner of delivery: For the avoidance of doubt, the Issuer makes no representation that the Shares will be deliverable in any particular manner.

(iv) Risk of any postponement: The risk of any postponement of payment and/or delivery of the Physical Settlement Amount, as the case may be, as described in paragraph (ii) above (*Settlement Disruption Event*) shall be borne by the Noteholders, and no Noteholder shall be entitled to any payment whatsoever in respect of such postponement or of any loss suffered or incurred by such Noteholder by reason of such postponement.

(v) Rights arising on Physical Settlement: For the avoidance of doubt, if Physical Settlement applies, the Noteholder shall not be entitled to receive any dividend or other distribution declared, paid or made, or any rights granted (including, but not limited to, voting rights), on any Shares prior to delivery of the relevant Shares to the Noteholder.

**(C)**    ***Procedure for Physical Settlement***

(i)    Settlement details and U.S. certification: If Physical Settlement applies, in order to receive the Physical Settlement Amount to which it is entitled each Noteholder shall, within the three Business Days immediately following the Final Valuation Date, final Averaging Date or final Observation Date, as the case may be (hereafter in this Annex the "*Relevant Date*"):

(a)    complete, execute and deposit at the Noteholder's own expense during normal business hours with the Principal Paying Agent any documents which may be required by any of (a) the laws of England or of any part thereof, (b) the jurisdiction in which the Principal Paying Agent's specified office is then located or (c) the jurisdiction in which the Issuer is to effect delivery of the Physical Settlement Amount to, or to the order of, the Noteholder;

(b)    transfer any amount to be paid by the Noteholder pursuant to this paragraph (C) and/or under paragraph (D) below (*Expenses and taxes*) to the account of the Principal Paying Agent with Euroclear and/or Clearstream, Luxembourg;

(c)    provide to the Principal Paying Agent and the Issuer in writing details of the accounts with the Clearance System to which the Issuer is to deliver the Physical Settlement Amount and/or any other details which may be necessary in order to effect delivery of the relevant Shares and cash; and

(d)    represent in writing, delivered to the Principal Paying Agent, that such Noteholder, or the person who has the beneficial interest in that Note, is not in the United States (within the meaning of Regulation S under the United States Securities Act of 1933 ("*Regulation S*")) and it, or such person, purchased such Note, or the beneficial interest therein, in a transaction made in accordance with Rule 903 or Rule 904 of Regulation S.

(ii)    Failure to satisfy conditions for Physical Settlement: If Physical Settlement applies and a Noteholder fails to take any of the actions referred to in paragraph (i) above (*Settlement details and U.S. certification*) within the three Business Days immediately following the Relevant Date, in lieu of delivery of the Shares, the Issuer shall instead pay an amount in the Specified Currency equal to the Proceeds of Sale (calculated in accordance with paragraph (iii) below (*Proceeds of sale*)), in addition to any Fractional Share Amount, to the Noteholder on the Maturity Date.

(iii)    Proceeds of sale: For the purposes of paragraph (ii) above (*Failure to satisfy conditions for physical settlement*), "*Proceeds of Sale*" shall mean an amount in the Specified Currency which the Issuer or its affiliates on its behalf actually receives as consideration for the sale of the relevant Shares, plus any amounts paid by the relevant Noteholder and received by the Principal Paying Agent pursuant to this paragraph (C) and/or paragraph (D) below (*Expenses and taxes*), less the expenses and taxes incurred by the Issuer or by the Calculation Agent on its behalf in respect of such sale, *provided that* the Issuer shall not be obliged to pay to the Noteholder any amount, which is in excess of the amount for which such Shares could have been sold on the Relevant Date, all as determined by the Calculation Agent (together with any amounts paid by the relevant Noteholder pursuant to this paragraph (C) and/or pursuant to paragraph (D) (*Expenses and taxes*), but after deduction of the expenses and taxes incurred by the Issuer or by the Calculation Agent on its behalf in respect of such sale).

**(D)    Expenses and taxes**

As condition precedent to the delivery of the Physical Settlement Amount, the relevant Noteholder must pay to the Issuer all applicable stamp, issue, registration, transfer or other taxes and duties, including withholding taxes (if any) arising out of the delivery of the relevant Shares which may be determined by the Calculation Agent to be payable:

(i)    in the country in which the Principal Paying Agent's specified office is situated; and

(ii)    in any other jurisdiction as a result of the issue or delivery of the relevant Shares to or to the order of the Noteholder."

7.    The following condition 26 (*Additional Disruption Events*) is hereby inserted into the Terms and Conditions:

"26.    **Additional Disruption Events**

In the event that an Additional Disruption Event occurs as determined by the Calculation Agent in its sole and absolute discretion, then the Calculation Agent shall either (a)(1) make such adjustment to the exercise, settlement, payment or any other terms of the Notes as the Calculation Agent in its sole and absolute discretion determines appropriate and (2) determine the effective date of that adjustment, or (b) if the Calculation Agent determines that no adjustment that it could make under (a) will produce a commercially reasonable result, notify the Issuer thereof in which event the Issuer shall redeem the Notes as of such date as the Calculation Agent shall determine by notice given to the Noteholders and in the event of such early redemption the Issuer will pay to each Noteholder the Cancellation Amount with respect to each Note held by such Noteholder."

8.    The following Condition 27 (*Knock-in, Knock-out Provisions*) is hereby inserted in the Terms and Conditions:

"27    **Knock-in, Knock-out Provisions**

If "*Knock-in Event*" is specified as applicable in the Final Terms, then, unless otherwise specified in such Final Terms, payment under the relevant Notes subject to a Knock-in Event shall be conditional upon the occurrence of such Knock-in Event.

If "*Knock-out Event*" is specified as applicable in the Final Terms, then, unless otherwise specified in such Final Terms, payment under the relevant Notes subject to a Knock-out Event shall be conditional upon the occurrence of such Knock-out Event.

If the Knock-in Valuation Time or the Knock-out Valuation Time specified in the applicable Final Terms is the Valuation Time and if on any Knock-in Determination Day or Knock-out Determination Day at any time during the one hour period that begins and/or ends at the Valuation Time the price of the Share triggers the Knock-in Price or the Knock-out Price, and a Trading Disruption, Exchange Disruption or Early Closure occurs or exists, then the Knock-in Event or the Knock-out Event shall be deemed not to have occurred; provided that if, by operation of this provision, no Knock-in Determination Day or Knock-out Determination Day would occur in the Knock-in Determination Period or Knock-out Determination Period, the Knock-in Period Ending Date or Knock-out Period Ending Date shall be treated as a Valuation Date and the Calculation Agent shall determine the price of the Share as at the Knock-in Valuation Time or Knock-out Valuation Time in accordance with the provisions contained in Condition 23 (*Disrupted Days*).

If the Knock-in Valuation Time or the Knock-out Valuation Time specified in the applicable Final Terms is any time or period of time during the regular trading hours on the relevant Exchange and if on any Knock-in Determination Day or Knock-out Determination Day and at any time during the one-hour period that begins and/or ends at the time on which the price of the Share triggers the Knock-in Price or the Knock-out Price, a Trading Disruption, Exchange Disruption or Early Closure occurs or

exists, then the Knock-in Event or the Knock-out Event shall be deemed not to have occurred, provided that if, by operation of this provision, no Knock-in Determination Day or Knock-out Determination Day would occur in the Knock-in Determination Period or Knock-out Determination Period, the Knock-in Period Ending Date or Knock-out Period Ending Date shall be treated as a Valuation Date and the Calculation Agent shall determine the price of the Share as at the Knock-in Valuation Time or Knock-out Valuation Time in accordance with the provisions contained in Condition 23 (*Disrupted Days*).

Definitions

Unless otherwise specified in the applicable Final Terms:

"*Knock-in Event*" means (i) in the case of a single Share, that the price of the Share determined by the Calculation Agent as of the Knock-in Valuation Time on any Knock-in Determination Day is and (ii) in the case of a Share Basket, that the amount determined by the Calculation Agent equal to the sum of the values of each Share as the product in respect of each Share of (x) the price of such Share as of the Knock-in Valuation Time on any Knock-in Determination Day and (y) the relevant Weighting is (i) "greater than", (ii) "greater than or equal to", (iii) "less than" or (iv) "less than or equal to" the Knock-in Price specified in the applicable Final Terms.

"*Knock-in Price*" means (i) in the case of a single Share, the price of the Share specified and (ii) in the case of a Share Basket, the price in each case specified as such or otherwise determined in the applicable Final Terms.

"*Knock-in Determination Day*" means the date(s) specified as such in the applicable Final Terms, or each Scheduled Trading Day during the Knock-in Determination Period.

"*Knock-in Determination Period*" means, in respect of a single Share or a Share Basket the period which commences on, and includes, the Knock-in Period Beginning Date and ends on, and includes, the Knock-in Period Ending Date.

"*Knock-in Period Beginning Date*" means the date specified as such in the applicable Final Terms or, if such date is not a Scheduled Trading Day, the next following Scheduled Trading Day.

"*Knock-in Period Ending Date*" means the date specified as such in the applicable Final Terms or, if such date is not a Scheduled Trading Day, the next following Scheduled Trading Day.

"*Knock-in Valuation Time*" means the time or period of time on any Knock-in Determination Day specified as such in the applicable Final Terms or in the event that the applicable Final Terms do not specify a Knock-in Valuation Time, the Knock-in Valuation Time shall be the Valuation Time.

"*Knock-out Determination Day*" means the date(s) as specified in the applicable Final Terms, or each Scheduled Trading Day during the Knock-out Determination Period.

"*Knock-out Determination Period*" means the period which commences on, and includes, the Knock-out Period Beginning Date and ends on, and includes, the Knock-out Period Ending Date.

"*Knock-out Event*" means (i) in the case of a single Share, that the price of the Share determined by the Calculation Agent as of the Knock-out Valuation Time on any Knock-out Determination Day is and (ii) in the case of a Share Basket, that the amount determined by the Calculation Agent equal to the sum of the values of each Share as the product in respect of each Share of (x) the price of such Share as of the Knock-out Valuation Time on any Knock-out Determination Day and (y) the relevant Weighting is (i) "greater than", (ii) "greater than or equal to", (iii) "less than" or (iv) "less than or equal to" the Knock-out Price as specified in the applicable Final Terms.

"*Knock-out Price*" means (i) in the case of a single Share the price of the Share and (ii) in the case of a Share Basket, the price, in each case specified as such or otherwise determined in the applicable Final Terms.

"*Knock-out Period Beginning Date*" means the date specified as such in the applicable Final Terms or, if such date is not a Scheduled Trading Day, the next following Scheduled Trading Day.

"*Knock-out Period Ending Date*" means the date specified as such in the applicable Final Terms or, if such date is not a Scheduled Trading Day, the next following Scheduled Trading Day.

"*Knock-out Valuation Time*" means the time or period of time on any Knock-out Determination Day specified as such in the applicable Final Terms or in the event that the applicable Final Terms do not specify a Knock-out Valuation Time, the Knock-out Valuation Time shall be the Valuation Time.

9.  The following Condition 28 (*Autocallable Equity-Linked Note Additional Definitions*) is hereby inserted in the Terms and Conditions:

"28   **Autocallable Equity-Linked Note Additional Definitions**

"*Adjusted Strike Price*" means, in relation to the Shares of a Share Issuer, an amount equal to the product of (i) the relevant Strike Price Adjustment Percentage and (ii) the Strike Price of such Shares;

"*Adjusted Strike Price_Worst_*" means the Adjusted Strike Price in respect of the Worst Performing Shares;

"*Barrier Percentage*" means, in relation to the Shares of a Share Issuer, the percentage specified in the applicable Final Terms;

"*Barrier Price*" means, in relation to the Shares of a Share Issuer, an amount equal to the product of (i) the relevant Barrier Percentage and (ii) the Strike Price of such Shares;

"*Barrier Price_Worst_*" means, in relation to the Worst Performing Shares, an amount equal to the product of (i) the relevant Barrier Percentage and (ii) the Strike Price_Worst_;

"*Strike Price Adjustment Percentage*" means, in relation to the Shares of a Share Issuer, the percentage specified in the applicable Final Terms;

10.  The following Condition 29 (*Trigger Event Provisions*) is hereby inserted in the Terms and Conditions:

"29   **Trigger Event Provisions**

Trigger Event: A Trigger Event shall be deemed to occur on the occurrence of either (a) a Trigger Event (Closing Observation), or (b) a Trigger Event (Intraday Observation) as determined by the Calculation Agent, and may be specified in the applicable Final Terms in relation to Mandatory Early Redemption, the Final Redemption Amount, Physical Settlement and Interest provisions, as the case may be.

"*Trigger Event*" means a Trigger Event (Closing Observation), a Trigger Event (Intraday Observation) or such other event as specified in the applicable Final Terms;

"*Trigger Event (Closing Observation)*" means the determination by the Calculation Agent that on any Trigger Event Observation Date the Closing Price of the Shares of any Share Issuer is less than or equal to the relevant Trigger Price, as determined by the Calculation Agent;

"*Trigger Event Date*" means a date on which a Trigger Event has occurred as determined by the Calculation Agent;

"*Trigger Event (Intraday Observation)*" means the determination by the Calculation Agent that at any time during the regular trading session hours on any Trigger Event Observation Date the price of a Share of a Share Issuer is less than or equal to the relevant Trigger Price, as determined by the Calculation Agent;

"*Trigger Event Observation Date*" means each Scheduled Trading Day during the Trigger Event Observation Period *provided that* if at any relevant time on any such Scheduled Trading Day there is a Market Disruption Event, as determined by the Calculation Agent in its sole and absolute discretion,

then notwithstanding the fact that there is a Market Disruption Event on such Trigger Event Observation Date, the Calculation Agent shall determine in good faith and in a commercially reasonable manner whether a Trigger Event has occurred during such Market Disruption Event;

"*Trigger Event Observation Period*" means the period from and including the Initial Valuation Date to and including the Final Valuation Date;

"*Trigger Percentage*" means, in relation to the Shares of a Share Issuer, the percentage specified in the applicable Final Terms;

"*Trigger Price*" means, in relation to the Shares of a Share Issuer, an amount equal to the product of (i) the relevant Trigger Percentage and (ii) the Strike Price of such Shares.

11. The following Condition 30 (*Determinations by the Calculation Agent*) is hereby inserted into the Terms and Conditions:

"**30.    Determinations by the Calculation Agent**

All determinations, calculations or valuations made by the Calculation Agent under or pursuant to the terms of the Notes shall be made in its sole and absolute discretion and the Calculation Agent shall be solely responsible for all determinations, calculations or valuations in accordance with the terms of the Notes. All such determinations, calculations or valuations made by the Calculation Agent shall be conclusive and binding on all holders of the Notes. The Calculation Agent will be appointed by the Issuer and may be an affiliate of the Issuer. The Calculation Agent is obligated to carry out its duties and functions as Calculation Agent in good faith and using its commercially reasonable judgment. Furthermore, the Calculation Agent will not act as a fiduciary or as an advisor to the Noteholders in respect of its duties as Calculation Agent. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation any costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of its functions, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.

Nothing contained herein shall prevent the Calculation Agent from dealing in the Notes or from entering into any related transactions, including without limitation any swap or hedging transactions, with the Issuer or any holder of Notes."

**Annex 9**

**Additional Terms and Conditions for Commodity-Linked Notes with certain Agricultural Products, Energy Products and Metals as a Relevant Commodity**

*The terms and conditions of Commodity-Linked Notes with certain Agricultural Products, Energy Products and Metals as a Relevant Commodity shall comprise the Terms and Conditions of the Notes set forth on page 79 above (the "General Conditions") and the additional terms and conditions set forth below (the "Special Conditions"), in each case subject to completion and/or amendment in the applicable Final Terms. If any such Notes are Australian Domestic Notes, Danish Notes, Finnish Notes, New Zealand Domestic Notes, Norwegian Notes or Swedish Notes then the General Conditions applicable to such Notes shall, in addition, be amended as described in Annexes 1 to 6 above , as applicable (the "Applicable Domestic Conditions"). In the event of any inconsistency between the General Conditions and the Special Conditions, the Special Conditions shall prevail. If any such Notes are Australian Domestic Notes, Danish Notes, Finnish Notes, New Zealand Domestic Notes, Norwegian Notes or Swedish Notes then in the event of any inconsistency between (1) the General Conditions as amended by the Special Conditions and (2) the Applicable Domestic Conditions, the Applicable Domestic Conditions shall prevail. In the event of any inconsistency between any of the foregoing and the applicable Final Terms, the applicable Final Terms shall prevail.*

1.    **Determination of a Commodity Price**

"*Commodity*" means the commodity specified in the relevant Final Terms, and if more than one commodity is so specified in the relevant Final Terms, then each such commodity.

"*Commodity Business Day*" means:

(i)    where the Commodity Reference Price is a price announced or published by an Exchange, a day that is (or, but for the occurrence of a Disruption Event, would have been) a day on which that Exchange is open for trading during its regular trading session, notwithstanding any such Exchange closing prior to its scheduled closing time; and

(ii)    where the Commodity Reference Price is not a price announced or published by an Exchange, a day that is (or, but for the occurrence of a Disruption Event, would have been) a day in respect of which the relevant Price Source published (or, but for the occurrence of a Disruption Event, would have published) a price.

"*Commodity Reference Price*" means, in respect of a Commodity, the relevant reference price for such Commodity which may be one of the following:

(i)    a reference price set out in the Annex hereto ("Certain Commodity Reference Prices") (with such amendments, if any, as shall be set out in the applicable Final Terms); or

(ii)    a reference price as specified in the relevant Final Terms where:

(A)    if that Commodity Reference Price is a price announced or published by an Exchange, the following is specified: (1) the relevant Commodity (including, if relevant, the type or grade of that Commodity, the location of delivery and any other details); (2) the relevant Unit; (3) the relevant Exchange; (4) the relevant currency in which the Specified Price is expressed; (5) the Specified Price; and, if applicable, (6) the Delivery Date, in which case the price for any relevant date will be that day's Specified Price per Unit of that Commodity on that Exchange and, if applicable, for delivery on that Delivery Date, stated in that currency, as announced or published by that Exchange on that date; and

(B)    if that Commodity Reference Price is not a price announced or published by an Exchange, the following is specified: (1) the relevant Commodity (including, if relevant, the type or grade of that Commodity, the location of delivery and any other details); (2) the relevant Unit; (3) the relevant Price Source (and, if applicable, the location in that

Price Source of the Specified Price (or the prices from which the Specified Price is calculated)); (4) the relevant currency in which the Specified Price is expressed; (5) the Specified Price; and, if applicable, (6) the Delivery Date, in which case the price for any relevant date will be that day's Specified Price per Unit of that Commodity and, if applicable, for that Delivery Date, stated in that currency, published (or shown) in the issue of that Price Source that reports prices effective on that date.

"*Delivery Date*" means, in respect of a Commodity Reference Price, the relevant date or month for delivery of the underlying Commodity (which must be a date or month reported, or capable of being determined from information reported, in or by the relevant Price Source) as follows:

(i)     if a date is, or a month and year are, specified in the relevant Final Terms, that date or that month and year;

(ii)    if a Nearby Month is specified in the relevant Final Terms, that date or the month of expiration of the relevant Futures Contract; and

(iii)   if a method is specified for the purpose of determining the Delivery Date in the relevant Final Terms, the date or the month and year determined pursuant to that method.

"*Disruption Events*" means, Commodity Valuation Date Disruption Events (see section 3 below) and/or Commodity Observation Date Disruption Events (see section 4 below), as applicable.

"*Disruption Fallbacks*" means, Commodity Valuation Date Fallbacks (see section 3 below) and/or Commodity Observation Date Fallbacks (see section 4 below), as applicable.

"*Exchange*" means the exchange or principal trading market specified in the relevant Final Terms or Commodity Reference Price and any Successor Exchange, and shall include the following, if referred to in the relevant Commodity Reference Price:

*Exchanges and Principal Trading Markets:*

(i)     "*APX*" means the Amsterdam Power Exchange N.V., or its successor, which reports market prices on its website at www.apx.nl or its successor;

(ii)    "*CBOT*" means the Chicago Board of Trade or its successor;

(iii)   "*CME*" means the Chicago Mercantile Exchange or its successor;

(iv)    "*COMEX*" means the COMEX Division, or its successor, of the New York Mercantile Exchange, Inc. or its successor;

(v)     "*EEX*" means the European Energy Exchange AG, or its successor, which reports market prices on its website at www.eex.de or its successor;

(vi)    "*EURONEXT LIFFE*" means Euronext B.V. London International Financial Futures and Options Exchange or its successor;

(vii)   "*ICE Futures*" or "*IPE*" means ICE Futures, a wholly owned subsidiary of Intercontinental Exchange™, or its successor;

(viii)  "*KCBOT*" means the Kansas City Board of Trade or its successor;

(ix)    "*LEBA*" means The London Energy Brokers' Association or its successor;

(x)     "*LME*" means The London Metal Exchange Limited or its successor;

(xi)    "*London Gold Market*" means the market in London on which members of The London Bullion Market Association ("*LBMA*"), amongst other things, quote prices for the buying and selling of Gold;

(xii) "*London Silver Market*" means the market in London on which members of LBMA, amongst other things, quote prices for the buying and selling of Silver;

(xiii) "*LPPM*" means The London Platinum and Palladium Market in London on which members quote prices for the buying and selling of Platinum and Palladium;

(xiv) "*MDEX*" means the Malaysian Derivatives Exchange or its successor;

(xv) "*NYBOT*" means the New York Board of Trade or its successor;

(xvi) "*NYMEX*" means the NYMEX Division, or its successor, of the New York Mercantile Exchange, Inc. or its successor;

(xvii) "*SICOM*" means the Singapore Commodity Exchange Limited or its successor;

(xviii) "*TOCOM*" means The Tokyo Commodity Exchange or its successor;

"*Futures Contract*" means, in respect of a Commodity Reference Price, the contract for future delivery of a contract size in respect of the relevant Delivery Date relating to the Commodity referred to in that Commodity Reference Price.

"*kL*" means kiloliter.

"*Nearby Month*", when preceded by a numerical adjective, means, in respect of a Delivery Date and any date on which a Relevant Price is to be determined, the month of expiration of the Futures Contract identified by that numerical adjective, so that, for example, (A) "*First Nearby Month*" means the month of expiration of the first Futures Contract to expire following the relevant date; (B) "*Second Nearby Month*" means the month of expiration of the second Futures Contract to expire following the relevant date; and (C) "*Sixth Nearby Month*" means the month of expiration of the sixth Futures Contract to expire following the relevant date.

"*Price Source*" means the publication (or such other origin of reference, including an Exchange) containing (or reporting) the Specified Price (or prices from which the Specified Price is calculated) specified in the relevant Commodity Reference Price or in the relevant Final Terms, and shall include the following, if referred to in the relevant Commodity Reference Price:

(i) "APPI", which means the Asian Petroleum Price Index, or any successor report, prepared by KPMG Corporate Services Limited, Hong Kong or its successor and reported on the Energy Market Information Service or its successor;

(ii) "*Argus*" means Argus European Natural Gas, or any successor publication, published by Argus Media Limited or its successor;

(iii) "*Argus/McCloskey's*" and "Argus/McCloskey's Coal Price Index Report" each means the Argus/McCloskey's Coal Price Index Report, or any successor publication, published by Argus Media Limited or its successor and The McCloskey Group Limited;

(iv) "*Dow Jones Power*" and "*Dow Jones Energy Service - Dow Jones Electricity Price Indexes*" each means the Dow Jones Energy Service - Dow Jones Electricity Price Indexes, or any successor indexes, published by Dow Jones Newswires, a division of Dow Jones & Company, Inc. or its successor;

(v) "*globalCOAL*" means globalCOAL, or its successor, which reports market prices on its website at http://www.globalcoal.com or its successor;

(vi) "*Heren*" means European Spot Gas Markets, or any successor publication, published by Heren Energy Ltd. or its successor;

(vii) "*OMEL*" means the Operador del Mercado Ibérico de Energía – Polo Español, S.A., or its successor, which reports market prices on its website at www.omel.es or its successor;

(viii) "*Platts Marketwire*" means Platts Crude Oil Marketwire, or any successor publication, published by The McGraw-Hill Companies Inc. or its successor;

(ix) "*Powernext*" means Powernext S.A., or its successor, which reports market prices on its website at www.powernext.fr or its successor;

"*Specified Price*" means, in respect of a Commodity Reference Price, any of the following prices (which must be a price reported in or by, or capable of being determined from information reported in or by, the relevant Price Source), as specified in the relevant Final Terms (and, if applicable, as of the time so specified): (A) the high price; (B) the low price; (C) the average of the high price and the low price; (D) the closing price; (E) the opening price; (F) the bid price; (G) the asked price; (H) the average of the bid price and the asked price; (I) the settlement price; (J) the official settlement price; (K) the official price; (L) the morning fixing; (M) the afternoon fixing; (N) the spot price; or (O) any other price specified in the relevant Final Terms.

"*Strike Date*" means the date as specified in the relevant Final Terms, or as otherwise determined by the Calculation Agent, in its sole discretion provided that the Commodity Valuation Date Disruption Events and Fallbacks shall apply to any Strike Date.

"*Successor Exchange*" means, in respect of a Commodity where the relevant Exchange is no longer the principal exchange or trading market for the Commodity, such other exchange or principal trading market as determined in good faith by the Calculation Agent which serves as the source of prices for the Commodity and any principal exchanges where options or futures contracts on the Commodity are traded.

"*Trade Date*" means the date as specified in the relevant Final Terms.

"*Unit*" means the unit of measure of the relevant Commodity, as specified in the relevant Commodity Reference Price or the relevant Final Terms.

## 2. Commodity Business Day Convention

If any date on which a Commodity Reference Price is to be determined is not a Commodity Business Day then (subject to application of the Disruption Events and Fallbacks) that date will be adjusted to the first following day that is a Commodity Business Day (unless otherwise specified in the relevant Final Terms).

## 3. Commodity Valuation Date Disruption Events and Fallbacks

### 3.1 Commodity Valuation Date Disruption Events

For the purposes of this Supplement and any Commodity-Linked Note (unless otherwise specified in the relevant Final Terms):

"*Commodity Valuation Date Disruption Event*" means, in respect of a relevant Commodity, an event that, if provided by the relevant Final Terms to be applicable to the Notes, would give rise, in accordance with an applicable Disruption Fallback, to an alternative basis for determining the relevant price in respect of a specified Commodity Reference Price or Price Source were the event to occur or exist on any day.

The following events, if specified in the relevant Final Terms to be applicable, shall be Commodity Valuation Date Disruption Events:

(i) "*Price Source Disruption*", which means (A) the failure of the Price Source to announce or publish the Specified Price (or the information necessary for determining the Specified Price) for the relevant Commodity Reference Price, or (B) the temporary or permanent discontinuance or unavailability of the Price Source.

(ii) "*Trading Disruption*", which means the material suspension of, or the material limitation imposed on, trading in the Futures Contract or the Commodity on the Exchange or in any

additional futures contract, options contract or commodity on any Exchange as determined by the Calculation Agent. For these purposes:

(a)    a suspension of the trading in the Futures Contract or the Commodity on any Commodity Business Day shall be deemed to be material only if:

(I)    all trading in the Futures Contract or the Commodity is suspended for the entire Commodity Business Day; or

(II)    all trading in the Futures Contract or the Commodity is suspended subsequent to the opening of trading on the Commodity Business Day, trading does not recommence prior to the regularly scheduled close of trading in such Futures Contract or such Commodity on such Commodity Business Day and such suspension is announced less than one hour preceding its commencement; and

(b)    a limitation of trading in the Futures Contract or the Commodity on any Commodity Business Day shall be deemed to be material only if the relevant Exchange establishes limits on the range within which the price of the Futures Contract or the Commodity may fluctuate and the closing or settlement price of the Futures Contract or the Commodity on such day is at the upper or lower limit of that range;

(iii)    "*Disappearance of Commodity Reference Price*", which means (A) the permanent discontinuation of trading, in the relevant Futures Contract on the relevant Exchange; (B) the disappearance of, or of trading in, the relevant Commodity; or (C) the disappearance or permanent discontinuance or unavailability of the Commodity Reference Price, notwithstanding the availability of the related Price Source or the status of trading in the relevant Futures Contract or the relevant Commodity;

(iv)    "*Material Change in Formula*", which means the occurrence since the Trade Date of a material change in the formula for or the method of calculating the relevant Commodity Reference Price; and

(v)    "*Material Change in Content*", which means the occurrence since the Trade Date (or such other date as may be specified) of a material change in the content, composition or constitution of the Commodity or relevant Futures Contract.

If the relevant Final Terms specify that the "Additional Bullion Provisions" shall apply to any Commodity, then, in respect of such Commodity, (iv) Material Change in Formula and (v) Material Change in Content, shall not be Commodity Valuation Date Disruption Events with respect to such Commodity.

## 3.2    Commodity Valuation Date Fallbacks

The relevant Final Terms may provide that if the Calculation Agent determines that in respect of any day in respect of which a relevant price is to be determined, a Disruption Event has occurred or exists on such day (each such Commodity, an "*Affected Commodity*" and any such date, a "*Disrupted Date*"), the Calculation Agent will determine the relevant price in accordance with the first Disruption Fallback (applied in accordance with its terms) specified as being applicable in the relevant Final Terms.

The relevant Final Terms may provide that one or more Disruption Fallbacks may apply to any Disrupted Date, and that such applicable Disruption Fallbacks may apply concurrently or sequentially, in such manner as specified in the relevant Final Terms.

The following events, as are provided by the relevant Final Terms to be applicable in respect of a Disrupted Date, shall be "Disruption Fallbacks" (and the relevant Final Terms may provide for different Disruption Fallbacks to be applicable to different dates):

(i)    "*Postponement*" which means that the relevant date will be deemed, for the purposes of the application of this Disruption Fallback only, to be the first succeeding Commodity Business

Day on which the Commodity Valuation Date Disruption Event ceases to exist, provided that, where the relevant Commodity Valuation Date Disruption Event has been in existence (measured from and including the first Disrupted Date) for 5 consecutive Commodity Business Days (or where the Maturity Date is less than 7 Commodity Business Days from the date of the first Disrupted Date, for such number of consecutive Commodity Business Days measured from and including the Disrupted Date and ending on the date which is 2 Business Days prior to the Maturity Date), the next Disruption Fallback specified in the relevant Final Terms will apply;

(ii)    "*Calculation Agent Determination*" which means that the Calculation Agent will determine the relevant price (or a method for determining a relevant price), taking into consideration the latest available quotation for the relevant Commodity Reference Price and any other information that in good faith it deems relevant.

## 4.    Commodity Observation Date Disruption Events and Fallbacks

### 4.1    Commodity Observation Date Disruption Events

For the purposes of this Supplement and any Commodity-Linked Note (unless otherwise specified in the relevant Final Terms):

"*Commodity Observation Date Disruption Event*" means, in respect of a relevant Commodity, an event that, if provided by the relevant Final Terms to be applicable to the Notes, would give rise, in accordance with an applicable Disruption Fallback, to an alternative basis for determining the relevant price in respect of a specified Commodity Reference Price or Price Source were the event to occur or exist on any relevant day. The following events, if specified in the relevant Final Terms to be applicable, shall be Commodity Observation Date Disruption Events:

(i)     "*Price Source Disruption*", which means (A) the failure of the Price Source to announce or publish the Specified Price (or the information necessary for determining the Specified Price) for the relevant Commodity Reference Price, or (B) the temporary or permanent discontinuance or unavailability of the Price Source.

(iii)   "*Disappearance of Commodity Reference Price*", which means (A) the permanent discontinuation of trading, in the relevant Futures Contract on the relevant Exchange; (B) the disappearance of, or of trading in, the relevant Commodity; or (C) the disappearance or permanent discontinuance or unavailability of the Commodity Reference Price, notwithstanding the availability of the related Price Source or the status of trading in the relevant Futures Contract or the relevant Commodity;

### 4.2    Commodity Observation Date Fallbacks

The relevant Final Terms may provide that if the Calculation Agent determines that in respect of a Commodity, a Commodity Observation Date Disruption Event has occurred or exists on any relevant day (each such Commodity, an "*Affected Commodity*" and any such date, a "*Disrupted Date*"), the Calculation Agent will determine the relevant price in accordance with the first Disruption Fallback (applied in accordance with its terms) specified as being applicable in the relevant Final Terms. The relevant Final Terms may provide that one or more Disruption Fallbacks may apply to any relevant date, and that such applicable Disruption Fallbacks may apply concurrently or sequentially, in such manner as specified in the relevant Final Terms.

The following events, as are provided by the relevant Final Terms to be applicable in respect of any day, shall be "*Disruption Fallbacks*" (and the relevant Final Terms may provide for different Disruption Fallbacks to be applicable to different days):

(i)     "*Preceding*" which means that for the purposes of the application of this Disruption Fallback only, the Calculation Agent will use the relevant price for such Commodity published by the

Price Source in respect of the Commodity Business Day falling immediately prior to the relevant date provided that where the relevant Commodity Observation Date Disruption Event has been in existence (measured from and including the first Disrupted Date) for 5 consecutive Commodity Business Days, the next Disruption Fallback specified in the relevant Final Terms will apply;

(ii)    "*Calculation Agent Determination*" which means that the Calculation Agent will determine the relevant price (or a method for determining a relevant price), taking into consideration the latest available quotation for the relevant Commodity Reference Price and any other information that in good faith it deems relevant.

## 5.    Commodity Early Redemption Events

The relevant Final Terms may provide that in respect of a relevant Commodity where the Calculation Agent determines that:

(i)    the Price Source has permanently ceased to announce or publish the Commodity Reference Price;

(ii)    trading in the relevant Futures Contract on the relevant Exchange has permanently ceased; or

(iii)    the Commodity Reference Price has disappeared, been permanently discontinued, or become permanently unavailable, and

the Calculation Agent determines that there is no appropriate alternative Price Source or Commodity Reference Price (as the case may be) (a "*Commodity Early Redemption Event*"), then the Notes will be redeemed at an amount calculated by the Calculation Agent as the Final Redemption Amount of the Notes plus any interest accrued but unpaid less any Unwind Costs (the "*Early Redemption Amount*"). For the purposes of this section, "*Unwind Costs*" means the value (determined in the currency in which the Notes are denominated) of any transfer or stamp tax cost, early redemption or termination cost, if any borne by the Issuer or Calculation Agent, as determined by the Calculation Agent in its sole and absolute discretion, in relation to any swap agreement, financing arrangement or other hedging transaction entered into by or on behalf of, the Calculation Agent or the Issuer in relation to the issuance of the Notes.

## 6.    Correction of Published Prices

The relevant Final Terms may provide that for the purpose of determining the relevant price for any day, if the price published or announced on a given day and used or to be used by the Calculation Agent to determine a relevant price is subsequently corrected and the correction is published or announced by the person responsible for that publication or announcement within 30 calendar days (or such other time frame as the Calculation Agent acting in its absolute discretion deems appropriate; where different time frames may be deemed appropriate for different dates) after the original publication or announcement, such corrected price shall be the relevant price, and the Calculation Agent, to the extent it deems necessary, may make such adjustments to any of the terms of the Notes that it determines in its sole and absolute discretion to account for such correction.

## 7.    Determinations by the Calculation Agent

The relevant Final Terms may provide that all determinations, calculations or valuations made by the Calculation Agent under or pursuant to the terms of the Notes shall be made in its sole and absolute discretion and the Calculation Agent shall be solely responsible for all determinations, calculations or valuations in accordance with the terms of the Notes. All such determinations, calculations or valuations made by the Calculation Agent shall be conclusive and binding on all holders of the Notes. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation any costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of its functions in relation to the Notes, except as such may result from its own wilful default, negligence or bad faith or that of its

officers or agents. Nothing contained herein shall prevent the Calculation Agent from dealing in the Notes or from entering into any related transactions, including without limitation, any swap or hedging transactions, with the Issuer or any holder of the Notes.

## 8.    Additional Bullion Provisions

8.1    If the relevant Final Terms specify that the "Additional Bullion Provisions" shall apply to any Commodity, then, in respect of such Commodity, paragraphs 1 to 7 of this section "Additional Description of Commodity Linked Notes" shall be deemed to be amended as follows:

(i)    each reference to "Commodity Business Day" shall be deemed to be a reference to "Bullion Business Day"

8.2    The following terms and expressions shall have the following meanings in relation to any Commodity to which Notes to which the "Additional Bullion Provisions" shall apply:

"*Bullion Business Day*" means any day on which commercial banks are open for business (including dealings in foreign exchange and foreign currency deposits) in London and New York and (if applicable) in such Bullion Business Day Centers specified in the relevant Final Terms.

"*Bullion Business Day Centers*" means such places as may be specified in the relevant Final Terms.

"*Bullion Reference Dealers*" means, if the relevant Commodity Reference Price is "Commodity-Reference Dealers", the four major dealers that are members of the LBMA specified in the relevant Final Terms, or if no such Bullion Reference Dealers are specified, selected by the Calculation Agent, in each case, acting through their principal London offices.

"*Gold*" means gold bars or unallocated gold complying with the rules of the LBMA relating to good delivery and fineness from time to time in effect, unless otherwise specified in the relevant Final Terms.

"*Ounce*" means, in the case of Gold, a fine troy ounce, and in the case of Silver, Platinum, and Palladium, a troy ounce.

"*Palladium*" means palladium ingots or plate or unallocated palladium complying with the rules of the LPPM relating to good delivery and fineness from time to time in effect, unless otherwise specified in the relevant Final Terms.

"*Platinum*" means platinum ingots or plate or unallocated platinum complying with the rules of the LPPM relating to good delivery and fineness from time to time in effect, unless otherwise specified in the relevant Final Terms.

"*Silver*" means silver bars or unallocated silver complying with the rules of the LBMA relating to good delivery and fineness from time to time in effect, unless otherwise specified in the relevant Final Terms.

## 9.    Notification of Early Redemption Events, Disruption Events and other Events

(i)    *Notice of Disruption Event*: The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the existence or occurrence of a Disruption Event on any relevant date however any delay or failure to notify will not affect the application of the applicable Disruption Fallbacks.

(ii)    *Notice of Commodity Early Redemption Event*: The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the occurrence of a Commodity Early Redemption Event and the Early Redemption Amount however any delay or failure to notify will not affect the application of the applicable Early Redemption provisions.

(iii)    *Notice of Published Price Correction Event*: Upon the occurrence of a correction to a published price which changes the relevant price determined with respect to any date, the Calculation Agent shall as soon as reasonably practicable notify the Issuer stating the occurrence of such event, giving details of such correction and the action proposed to be taken in relation thereto.

(iv)    *Notice to Noteholders*: Adjustments and calculations in accordance with the foregoing sections shall be calculated by the Calculation Agent, shall be notified to the Noteholders in accordance with Condition 15 (Notices) and shall be (in the absence of manifest error) binding on all parties concerned. However, Noteholders should be aware that there may be, necessarily, some delay between the time at which any of the above events occur and the time at which it is reported to Noteholders.

## CERTAIN COMMODITY REFERENCE PRICES

### Definitions

For the purpose of this Annex and the Commodity Reference Prices listed below (unless otherwise specified in the relevant Final Terms):

"*Delivery Date*" means any date specified as such in the applicable Final Terms.

"*Futures Contract*" means the contract for future delivery of a contract size in respect of a Delivery Date (excluding any Futures Contract that is due to expire on such date) relating to the Commodity referred to in that Commodity Reference Price.

"*Specified Price*" means any price specified as such in the applicable Final Terms.

### *Commodity Reference Prices for certain Agricultural Products:*

Cocoa

- **"COCOA-NYBOT"** means that the price for a relevant date will be that day's settlement price per metric ton of deliverable grade cocoa beans on the NYBOT of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the NYBOT and displayed on Bloomberg Screen page "CC1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the NYBOT and displayed on Bloomberg Screen page "CC2 Cmdty <GO> on that relevant date.

Coffee

- **"COFFEE ARABICA-NYBOT"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade washed arabica coffee on the NYBOT of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the NYBOT and displayed on Bloomberg Screen page "KC1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the NYBOT and displayed on Bloomberg Screen page "KC2 Cmdty <GO> on that relevant date.

- **"COFFEE ROBUSTA-EURONEXT LIFFE"** means that the price for a relevant date will be that day's settlement price per tonne of deliverable grade robusta coffee on EURONEXT LIFFE of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as determined by EURONEXT LIFFE and displayed on Bloomberg Screen page "CF1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract

to expire following such date shall be used, as made public by the EURONEXT LIFFE and displayed on Bloomberg Screen page "CF2 Cmdty <GO> on that relevant date.

Corn

- **"CORN-CBOT"** means that the price for a relevant date will be that day's settlement price per bushel of deliverable grade corn on the CBOT of the first monthly futures contract to expire following such date following such date, stated in U.S. cents, as made public by the CBOT and displayed on Bloomberg page "C 1 Cmtdy <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the CBOT and displayed on Bloomberg Screen page "C2 Cmtdy <GO>" on that relevant date.

Cotton

- **"COTTON NO. 2-NYBOT"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade cotton No. 2 on the NYBOT of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the NYBOT and displayed on Bloomberg Screen page "CT1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the NYBOT and displayed on Bloomberg Screen page "CT2 Cmdty<GO> on that relevant date.

Livestock

- **"FEEDER CATTLE-CME"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade medium and large frame #1 feeder steers on the CME of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the CME and displayed on Bloomberg Screen page "FC1 Cmdty <GO>" on that relevant date.

- **"LEAN HOGS-CME"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade lean value hog carcasses on the CME of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the CME and displayed on Bloomberg Screen page "LH1 Cmdty <GO>" on that relevant date.

- **"LIVE CATTLE-CME"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade live steers on the CME of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the CME and displayed on Bloomberg Screen page "LC1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the CME and displayed on Bloomberg Screen page "LC2 Cmdty <GO> on that relevant date.

Milk

- **"MILK – CLASS III – CME"** means that the price for a relevant date will be that day's settlement price per 100 pounds of deliverable grade Class III milk on the CME, stated in U.S. Dollars, as made public by the CME and displayed on Bloomberg Screen page "DA1 Cmdty <GO>" on that relevant date.

Orange Juice

- **"FROZEN CONCENTRATED ORANGE JUICE NO. 1-NYBOT"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade orange solids on the NYBOT of the first monthly futures contract to expire following such date, stated in U.S.

cents, as made public by the NYBOT and displayed on Bloomberg Screen page "JO1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the NYBOT and displayed on Bloomberg Screen page "JO2 Cmdty <GO> on that relevant date.

Palm Oil

- **"CPO-MDEX"** means that the price for a relevant date will be that day's settlement price per ton of deliverable crude palm oil on the MDEX of the first monthly futures contract to expire following such date, stated in Malaysian Ringgit, as made public by the MDEX and displayed on Bloomberg page "KO1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the MDEX and displayed on Bloomberg Screen page "KO2 Cmdty <GO> on that relevant date.

Rice

- **"RICE-CBOT"** means that the price for a relevant date will be that day's settlement price per 100 pounds of deliverable grade Rough Rice on the CBOT of the first monthly futures contract, stated in U.S. Dollars, as made public by the CBOT and displayed on Bloomberg Screen page "RR1 Comdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the CBOT and displayed on Bloomberg Screen page "RR2 Cmdty <GO>" on that relevant date.

Rubber

- **"RUBBER-RSS3-SICOM"** means that the price for a relevant date will be that day's settlement price per kilogram of ribbed smoked sheets grade 3 rubber on the SICOM of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the SICOM and displayed on Bloomberg Screen page "RG1 Cmdty <GO>" on that relevant date.

Soybeans

- **"SOYBEAN MEAL-CBOT"** means that the price for a relevant date will be that day's settlement price per ton of deliverable grade soybean meal on the CBOT of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the CBOT and displayed on Bloomberg Screen page "SM1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the CBOT and displayed on Bloomberg Screen page "SM2 Cmdty <GO> on that relevant date.

- **"SOYBEAN OIL-CBOT"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade crude soybean oil on the CBOT of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the CBOT and displayed on Bloomberg Screen page "BO1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the CBOT and displayed on Bloomberg Screen page "BO2 Cmdty <GO> on that relevant date.

- **"SOYBEANS-CBOT"** means that the price for a relevant date will be that day's settlement price per bushel of deliverable grade of soybean on the CBOT of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the CBOT and displayed on Bloomberg page "S 1 Cmdty <GO>" on that relevant date provided that if such

date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the CBOT and displayed on Bloomberg Screen page "S2 Cmdty <GO> on that relevant date.

Sugar

- **"SUGAR #11 (WORLD)-NYBOT"** means that the price for a relevant date will be that day's settlement price per pound of deliverable grade cane sugar on the NYBOT of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the NYBOT and displayed on Bloomberg Screen page "SB1 Cmdty <GO>" on that relevant date.

Wheat

- **"WHEAT-CBOT"** means that the price for a relevant date will be that day's settlement price per bushel of deliverable rate wheat on the CBOT of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by CBOT and displayed on Bloomberg page "W 1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the CBOT and displayed on Bloomberg Screen page "W2 Cmdty <GO> on that relevant date.

- **"WHEAT HRW-KCBOT"** means that the price for a relevant date will be that day's settlement price per bushel of deliverable grade hard red winter wheat on the KCBOT of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the KCBOT and displayed on Bloomberg Screen page "KW1 Cmdty <GO>" on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second monthly futures contract to expire following such date shall be used, as made public by the KCBOT and displayed on Bloomberg Screen page "KW2 Cmdty <GO> on that relevant date.

### *Commodity Reference Prices for certain Energy Products:*

Gas Oil

- **"GAS OIL-ICE"** means that the price for a relevant date will be that day's settlement price per metric ton of gas oil on ICE Futures of the first monthly futures contract to expire following such date, stated in U.S. dollars, as made public by ICE Futures and displayed on Bloomberg Screen page "QS1 Cmdty <GO>" on that relevant date.

- **"RBOB GASOLINE-NEW YORK-NYMEX"** means that the price for a relevant date will be that day's settlement price per gallon of New York Harbor RBOB unleaded gasoline on the NYMEX of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the NYMEX and displayed on Bloomberg Screen page "XB1 Cmdty <GO>" on that relevant date.

Heating Oil

- **"HEATING OIL-NEW YORK-NYMEX"** means that the price for a relevant date will be that day's settlement price per gallon of New York Harbor No. 2 heating oil on the NYMEX of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the NYMEX and displayed on Bloomberg Screen page "HO1 Cmdty <GO>" on that relevant date.

Natural Gas

- **"NATURAL GAS-MONTHLY-ICE"** means that the price for a relevant date will be that day's settlement price per therm of natural gas on ICE Futures of the monthly first monthly

futures contract to expire following such date, stated in pence, as made public by ICE Futures and displayed on Bloomberg Screen page "FN1 Cmdty <GO>"on the relevant date.

- **"NATURAL GAS-NYMEX"** means that the price for a relevant date will be that day's settlement price per MMBTU of natural gas on the NYMEX of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the NYMEX and displayed on Bloomberg Screen page "NG1 Cmdty <GO>" on that relevant date.

Oil

- **"OIL-WTI-NYMEX"** means that the price for a relevant date will be that day's settlement price per barrel of West Texas Intermediate light sweet crude oil on the NYMEX of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the NYMEX and displayed on Bloomberg Screen page "CL1 Cmdty <GO>"on that relevant date.

- **"OIL-BRENT-ICE"** means that the price for a relevant date will be that day's settlement price per barrel of Brent blend crude oil on the ICE Futures of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by ICE Futures and displayed on Bloomberg Screen page "CO1 Cmdty <GO>" on that relevant date.

Coal

- **"COAL-API2"** means that the price for a relevant date, will be that day's settlement price per tonne of steam coal, 6,000 kcal/kg, up to 1% sulphur NAR basis, cif ARA, stated in U.S. Dollars, for swaps on the calendar month of the month following such date as determined by Argus/McCloskey and displayed on Bloomberg page "API22MON MCCL Index" on that relevant date.

- **"COAL-API2-YEAR"** means that the price for a relevant date, will be that day's settlement price per tonne of steam coal, 6,000 kcal/kg, up to 1% sulphur NAR basis, cif ARA, stated in U.S. Dollars, for swaps on the calendar year of the year following such date as determined by Argus/McCloskey and displayed on Bloomberg page "API2YR1 MCCL Index" on that relevant date.

- **"COAL – TFS API 2 – ARGUS/MCCLOSKEY'S"** means that the price for a relevant date will be the previous week's official price (currently published each Friday) or, if determined on a Friday, the weekly official price published on such day per tonne of steam coal 6,000 kcal/kg, up to 1% sulphur NAR basis, cif ARA, stated in U.S. Dollars, published under the heading "International Coal Indexes incorporating the TFS APITM Indices: Monthly Coal Price Indexes: TFS API2 (cif ARA)" in the issue of Argus/McCloskey's Coal Price Index Report that reports prices effective on that relevant date.

- **"COAL-API4"** means that the price for a relevant date, will be that day's price per tonne of steam coal, 6,000 kcal/kg, up to 1% sulphur NAR basis, fob Richards Bay, stated in U.S. Dollars, for swaps on the calendar month of the month following the such date as determined by Argus/McCloskey and displayed on Bloomberg page "API42MON MCCL Index" on that relevant date.

- **"COAL-API4-YEAR"** means that the price for a relevant date, will be that day's price per tonne of steam coal, 6,000 kcal/kg, up to 1% sulphur NAR basis, fob Richards Bay, stated in U.S. Dollars, for swaps on the calendar year of the year following the such date as determined by Argus/McCloskey and displayed on Bloomberg page "API4YR1 MCCL Index" on that relevant date.

- **"COAL – TFS API 4 – ARGUS/MCCLOSKEY'S"** means that the price for a relevant date will be the previous week's official price (currently published each Friday) or, if determined on a Friday, the weekly official price published on such day per tonne of steam coal 6,000 kcal/kg, up to 1% sulphur NAR basis, fob Richards Bay, stated in U.S. Dollars, published under the

heading "International Coal Indexes incorporating the TFS APITM Indices: Monthly Coal Price Indexes: TFS API4 (fob Richards Bay)" in the issue of Argus/McCloskey's Coal Price Index Report that reports prices effective on that relevant date.

• **"COAL-NYMEX"** means that the price for a relevant date will be that day's settlement price per tonne of steam coal, stated in U.S. Dollars, on the NYMEX of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the NYMEX and displayed on Bloomberg Screen page "QZ1 Cmdty <GO>"on that relevant date.

Emissions

• **"EUA-ICE"** means that the price for a relevant date will be that day's settlement price per tonne of EU Allowance, stated in Euros, on ICE Futures of the first December futures contract to expire following such date, as made public by ICE Futures and displayed on the relevant Bloomberg Screen page (as specified in the applicable Final Terms) on that relevant date.

Power

• **"ELECTRICITY-GERMAN-BASE-YEAR"** means that the price for a relevant date will be that day's settlement price per MWh of German base year electricity, on the EEX of the first year futures contract to expire following such date, stated in Euro, as made public by the NYMEX and displayed on Bloomberg Screen page "HP1 Cmdty <GO>"on that relevant date provided that if such date is on or after the first notice date (in accordance with the terms of such futures contract) then the second year futures contract to expire following such date shall be used, as made public by the NYMEX and displayed on Bloomberg Screen page "HP2 Cmdty <GO> on that relevant date.

Uranium

• **"URANIUM OXIDE-NYMEX"** means that the price for a relevant date will be that day's settlement price per pound of Uranium on the NYMEX of the first futures contract to expire following such date, stated in U.S. Dollars, as made public by the NYMEX and displayed on Bloomberg page "UXA1 Cmdty <GO>" on that relevant date.

***Commodity Reference Prices for certain Metals:***

Aluminium

• **"ALUMINIUM-LME CASH"** means that the price for a relevant date will be that day's second ring spot fix price per tonne of high grade Primary Aluminium on the LME for spot delivery, stated in U.S. Dollars, as determined by the LME and displayed on Bloomberg page "LOAHDY Cmdty <GO>" that displays prices effective on that relevant date.

Copper

• **"COPPER-LME CASH"** means that the price for a relevant date will be that day's second ring spot fix price per tonne of Copper Grade A on the LME for spot delivery, stated in U.S. Dollars, as determined by the LME and displayed on Bloomberg page "LOCADY Cmdty <GO>" that displays prices effective on that relevant date.

Gold

• **"GOLD–A.M. FIX"** means that the price for a relevant date will be that day's morning Gold fixing price per troy ounce of Gold for delivery in London through a member of the LBMA authorized to effect such delivery, stated in U.S. Dollars, as determined by the London Gold Market and displayed on Bloomberg page "GOLDLNAM Cmdty <GO>" that displays prices effective on that relevant date.

- **"GOLD–COMEX"** means that the price for a relevant date will be that day's settlement price per troy ounce of Gold on the COMEX of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the COMEX and displayed on Reuters Screen page "O#GC:" on that relevant date.

- **"GOLD–P.M. FIX"** means that the price for a relevant date will be that day's afternoon Gold fixing price per troy ounce of Gold for delivery in London through a member of the LBMA authorized to effect such delivery, stated in U.S. Dollars, as calculated by the London Gold Market and displayed on Bloomberg page "GOLDLNPM Cmdty <GO>" that displays prices effective on that relevant date.

- **"GOLD–TOCOM"** means that the price for a relevant date will be that day's settlement price per gram of fine Gold on the TOCOM of the first monthly futures contract to expire following such date, stated in Japanese Yen, as made public by the TOCOM and displayed on Reuters Screen page "O#GL:" on that relevant date.

Lead

- **"LEAD–LME CASH"** means that the price for a relevant date will be that day's second ring spot fix price per tonne of Standard Lead on the LME for spot delivery, stated in U.S. Dollars, as determined by the LME and displayed on Bloomberg page "LOPBDY Cmdty <GO>" that displays prices effective on that relevant date.

Nickel

- **"NICKEL-LME CASH"** means that the price for a relevant date will be that day's second ring spot fix price per tonne of Primary Nickel on the LME for spot delivery, stated in U.S. Dollars, as determined by the LME and displayed on Bloomberg page "LONIDY Cmdty <GO>"that displays prices effective on that relevant date.

Palladium

- **"PALLADIUM–A.M. FIX"** means that the price for a relevant date will be that day's morning Palladium fixing price per troy ounce gross of Palladium for delivery in Zurich through a member of the LPPM authorized to effect such delivery, stated in U.S. Dollars, as calculated by the LPPM and displayed on Bloomberg page "PLDLNAM Cmdty <GO>" that displays prices effective on that relevant date.

- **"PALLADIUM–NYMEX"** means that the price for a relevant date will be that day's settlement price per troy ounce of palladium on the NYMEX of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the NYMEX on that and displayed on Reuters Screen page "O#PA:" on the relevant date.

- **"PALLADIUM–P.M. FIX"** means that the price for a relevant date will be that day's afternoon Palladium fixing price per troy ounce gross of Palladium for delivery in Zurich through a member of the LPPM authorized to effect such delivery, stated in U.S. Dollars, as calculated by the LPPM and displayed on Bloomberg page "PLDLNPM Cmdty <GO>" that displays prices effective on that relevant date.

- **"PALLADIUM–TOCOM"** means that the price for a relevant date will be that day's settlement price per gram of fine palladium on the TOCOM of the first monthly futures contract to expire following such date, stated in Japanese Yen, as made public by the TOCOM and displayed on Reuters Screen page "O#JPA:" on that relevant date.

Platinum

- **"PLATINUM–A.M. FIX"** means that the price for a relevant date will be that day's morning Platinum fixing price per troy ounce gross of Platinum for delivery in Zurich through a member of the LPPM authorized to effect such delivery, stated in U.S. Dollars, as calculated by the

LPPM and displayed on Bloomberg page "PLTMLNAM Cmdty <GO>" that displays prices effective on that relevant date.

- **"PLATINUM–NYMEX"** means that the price for a relevant date will be that day's settlement price per troy ounce of platinum on the NYMEX of the first monthly futures contract to expire following such date, stated in U.S. Dollars, as made public by the NYMEX and displayed on Reuters Screen page "O#PL:" on that relevant date.

- **"PLATINUM–P.M. FIX"** means that the price for a relevant date will be that day's afternoon Platinum fixing price per troy ounce gross of Platinum for delivery in Zurich through a member of the LPPM authorized to effect such delivery, stated in U.S. Dollars, as calculated by the LPPM and displayed on Bloomberg page "PLTMLNPM Cmdty <GO>" that displays prices effective on that relevant date.

- **"PLATINUM–TOCOM"** means that the price for a relevant date will be that day's settlement price per gram of fine Platinum on the TOCOM of the first monthly futures contract to expire following such date, stated in Japanese Yen, as made public by the TOCOM and displayed on Reuters Screen page "O#JPL:" on that relevant date.

Silver

- **"SILVER–COMEX"** means that the price for a relevant date will be that day's settlement price per troy ounce of Silver on the COMEX of the first monthly futures contract to expire following such date, stated in U.S. cents, as made public by the COMEX and displayed on Reuters Screen page "O#SI:" on that relevant date.

- **"SILVER–FIX"** means that the price for a relevant date will be that day's Silver fixing price per troy ounce of Silver for delivery in London through a member of the LBMA authorized to effect such delivery, stated in U.S. cents, as calculated by the London Silver Market and displayed on Bloomberg page "SLVRLN Cmdty <GO>" that displays prices effective on that relevant date.

- **"SILVER–TOCOM"** means that the price for a relevant date will be that day's settlement price per ten (10) grams of fine Silver on the TOCOM of the first monthly futures contract to expire following such date, stated in Japanese Yen, as made public by the TOCOM and displayed on Reuters Screen page "O#JSV:" on that relevant date.

Tin

- **"TIN-LME CASH"** means that the price for a relevant date will be that day's second ring spot fix price per tonne of Tin on the LME for spot delivery, stated in U.S. Dollars, as determined by the LME and displayed on Bloomberg page "LOSNDY Cmdty <GO>" that displays prices effective on that relevant date.

Zinc

- **"ZINC-LME CASH"** means that the price for a relevant date will be that day's second ring spot fix price per tonne of Special High Grade Zinc on the LME for spot delivery, stated in U.S. Dollars, as determined by the LME and displayed on Bloomberg page "LOZSDY Cmdty <GO>" that displays prices effective on that relevant date.

## Annex 10

### Additional Terms and Conditions for FX Notes

*The terms and conditions of FX Notes shall comprise the Terms and Conditions of the Notes set forth on page 79 above (the "General Conditions") and the additional terms and conditions set forth below (the "Special Conditions"), in each case subject to completion and/or amendment in the applicable Final Terms. If any such Notes are Australian Domestic Notes, Danish Notes, Finnish Notes, New Zealand Domestic Notes, Norwegian Notes or Swedish Notes then the General Conditions applicable to such Notes shall, in addition, be amended as described in Annexes 1 to 6 above, as applicable (the "Applicable Domestic Conditions"). In the event of any inconsistency between the General Conditions and the Special Conditions, the Special Conditions shall prevail. If any such Notes are Australian Domestic Notes, Danish Notes, Finnish Notes, New Zealand Domestic Notes, Norwegian Notes or Swedish Notes then in the event of any inconsistency between (1) the General Conditions as amended by the Special Conditions and (2) the Applicable Domestic Conditions, the Applicable Domestic Conditions shall prevail. In the event of any inconsistency between any of the foregoing and the applicable Final Terms, the applicable Final Terms shall prevail.*

**(A)    Examples of FX Notes**

*The following provisions set out specific examples of FX Notes and are not intended to be a comprehensive or exhaustive description of all of the structures which may constitute an FX Note.*

*Payments on FX Notes - Coupons*

(a)    *FX Linked Coupons*: FX Notes **may** include Notes under the terms of which an amount is payable in respect of one or more interest periods which is determined by reference to the Reference Exchange Rate (each a "*FX Linked Coupon*"). If so specified in the applicable Final Terms, the FX Linked Coupon in respect of an interest period will be calculated as being an amount per Note equal to the minimum denomination of such Note multiplied by the Performance (defined below). Payment of a FX Linked Coupon may also be subject to a requirement that the Performance exceeds or falls short of a benchmark value by a specified threshold (as specified in the applicable Final Terms).

(b)    *FX Linked Digital Coupons*: FX Notes **may** include Notes under the terms of which an amount is payable in respect of one or more interest periods which is contingent upon the Performance meeting, exceeding or falling short of one or more criteria specified in the applicable Final Terms (each a "*FX Linked Digital Coupon*"). The FX Linked Digital Coupon in respect of an interest period will be an amount determined according to the method (other than the method referred to in (a) above) specified in the applicable Final Terms.

*Payments on FX Notes - Final Redemption Amount*

*FX Final Redemption Amount*: FX Notes **may** include Notes under the terms of which the Final Redemption Amount payable at maturity of the Notes is determined by reference to the performance (the "*Performance*") of a Reference Exchange Rate (a "*FX Final Redemption Amount*"). Examples of how the FX Final Redemption Amount may be calculated are as follows:

(a)    **Method A**: The FX Final Redemption Amount will be calculated as an amount per Note equal

to:

      (I)    the minimum denomination of such Note; multiplied by

      (II)    (1 + Performance),

           where the Performance is positive; or

      (III)    (1 – the absolute value of the Performance),

where the Performance is negative.

(b) **Method B**: The FX Final Redemption Amount will be calculated as an amount per Note equal to:

    (I)    the minimum denomination of such Note; multiplied by

    (II)    a percentage defined in the Final Terms as being the 'Principal Protection' level; and adding the result to

    (III)    an amount per currency unit of the nominal amount of each Note equal to the Performance (if positive) multiplied by a factor.

Payment of an FX Final Redemption Amount may also be subject to a requirement that the Performance, the Reference Exchange Rate and/or a percentage thereof, is equal to, exceeds or falls short of a benchmark value by a specified threshold (as specified in the applicable Final Terms).

*FX Digital Final Redemption Amount*: FX Notes may include Notes under the terms of which the Final Redemption Amount payable at maturity of the Notes is contingent upon the Performance and/or Reference Exchange Rate being equal to, exceeding or falling short of one or more criteria specified in the applicable Final Terms (a "*FX Digital Final Redemption Amount*"). The FX Digital Final Redemption Amount will be an amount determined according to the method specified in the applicable Final Terms.

### Principal Protection

The Final Terms of FX Notes may specify a minimum amount payable in respect of the redemption of such Notes at maturity (the "*Principal Protection*"). The level of Principal Protection may be expressly stated as a percentage of the nominal amount of each Note at issuance or may be inherent in the formula or formulae for determining the amount payable on the redemption of such Notes. Where there is no Principal Protection, or the level of Principal Protection of less than 100% of the nominal amount of each Note at issuance, the amount of principal that is to be repaid at redemption of the note may be less than the principal invested and in certain circumstances may be equal to zero.

### Leverage

Payments, the timing of payments, redemption of the Notes and/or any other economic feature in respect of FX Notes may additionally be determined by reference to a multiplication factor (the "*Leverage*") specified in the applicable Final Terms of such Notes. With respect to such Notes, the degree to which the Reference Exchange Rate impacts upon the amount of such payments will vary according to the level of the Leverage.

### General

Payments under FX Notes will usually be settled (unless otherwise specified in the Final Terms) in the currency in which the note is denominated (the "*Specified Currency*"). Such currency may be different from a Reference Currency and investors will not be legally or beneficially entitled to any amounts in (if different from the Specified Currency) a Reference Currency.

### (B) Disruption Events and Fallback Provisions

The relevant Final Terms may provide that the following Disruption Event and Disruption Fallback provisions apply to a particular series of FX Notes (and the applicable Final Terms may also provide for different Disruption Events and Fallback provisions to be applicable to different series of FX Notes).

The Disruption Event and Fallback provisions for FX Notes that are denominated in a G-10 Currency and/or that refer to a Reference Exchange Rate where either the Reference Currency or the Base Currency are G-10 Currencies, will be determined by the Calculation Agent acting in good faith and in a commercially reasonable manner as specified in the applicable Final Terms.

For Notes, in respect of which, the Reference Exchange Rate is not determined by reference to a Settlement Rate Option or, under the terms of which, the Reference Exchange Rate is determined on a continuous basis, that is, not at any specified time, the Disruption Event and Disruption Fallback provisions will be determined in accordance with the applicable Final Terms.

## 1.    Disruption Events

In these provisions, *"Disruption Event"* shall mean, with respect to a series of FX Notes, the occurrence as determined by the Calculation Agent in its sole and absolute discretion of any of Price Source Disruption, Dual Exchange Rate, Illiquidity, Price Materiality, Inconvertibility, Non-Transferability, Material Change in Circumstance and Additional Disruption Event, in each case if specified as applicable in the applicable Final Terms as either a Category 1 Disruption Event (each event so specified a *"Category 1 Disruption Event"*) or a Category 2 Disruption Event (each event so specified a *"Category 2 Disruption Event"*) provided that no event shall be a Disruption Event unless the Calculation Agent determines in its sole discretion that it may have a materially prejudicial effect on the Issuer's ability to effect, maintain or terminate any hedge relating to its exposure under the Notes;

For the purposes of these provisions:

*"Affected Valuation Date"* means a Valuation Date in relation to which a Disruption Event has occurred;

*"Alternative Settlement Rate Option"* with respect to a Reference Currency, means any rate source in respect of such Reference Currency, other than the Settlement Rate Option with respect to such Reference Currency;

*"Dual Exchange Rate"* means that, with respect to a Reference Currency, the currency exchange rate specified in the Settlement Rate Option applicable to that Reference Currency splits into dual or multiple currency exchange rates;

*"FX Basket Supplement"* means the Base Prospectus Supplement dated 6 September 2006.

*"Illiquidity"* means that it becomes impossible to obtain a firm quote of the Settlement Rate for a Reference Currency for the minimum amount specified in the Final Terms;

*"Non-convertibility"* means that it becomes impossible to convert generally in the currency markets a Reference Currency into the Base Currency or the Specified Currency as appropriate through customary legal channels; or to convert any Reference Currency into the Base Currency or the Specified Currency as appropriate at a rate at least as favourable as the rate for domestic institutions located in a Reference Currency Jurisdiction;

*"Non-Transferability"* means that it becomes generally impossible in the markets to deliver amounts denominated in the Base Currency or the Specified Currency as appropriate from accounts inside a Reference Currency Jurisdiction to accounts outside that Reference Currency Jurisdiction or amounts denominated in any Reference Currency between accounts inside the relevant Reference Currency Jurisdiction or to a party that is a non-resident of that Reference Currency Jurisdiction;

*"Material Change in Circumstance"* means that any event (other than any other Disruption Event or an Event of Default) has occurred and/or is in existence which is beyond the control of the Issuer or the Calculation Agent, with respect to a Reference Currency, that:

(a)    prevents, materially delays or makes it impossible for the Issuer or the Calculation Agent to fulfil any of their obligations under the Notes; or

(b)    generally makes it impossible for the Issuer or any of its affiliates through which it hedges its exposure under the Notes to continue to hedge with other market participants such exposure in its entirety or in any material part or to terminate any hedge of such exposure;

"*Price Materiality*" means the Calculation Agent determines that, with respect to a Reference Currency, the Settlement Rate Option materially differs from any quote obtained by the Calculation Agent on the currency markets;

"*Price Source Disruption*" means that it becomes impossible to obtain the Reference Exchange Rate from the pricing source with respect to a Reference Currency on any Valuation Date (or if different, the day on which rates for that Reference Currency would, in the ordinary course, be published or announced by the relevant pricing source with respect to that Valuation Date);

"*Reference Currency Jurisdiction*" with respect to any Reference Currency, means the country of which such Reference Currency is the lawful currency;

"*Settlement Rate*" means with respect to a Reference Currency and subject to any disruption event or fallback provisions, means the level of the Reference Exchange Rate for such Reference Currency, as determined by the Calculation Agent in good faith and in a commercially reasonable manner (including but not limited to making such adjustments as are necessary to published quoting conventions and/or implying the Reference Exchange Rate from one or more Settlement Rate Options in relation to a Reference Currency);

"*Valuation Date*" means each date specified as such in the applicable Final Terms.

## 2.   Disruption Fallbacks

(i)   *Category 1 Disruption Event on a Valuation Date*

If the Calculation Agent determines in its sole discretion and acting in a commercially reasonable manner that a Category 1 Disruption Event has occurred on a Valuation Date in respect of a Settlement Rate (an "*Affected Settlement Rate*"), then such Affected Settlement Rate for such Valuation Date will be the rate determined by the Calculation Agent:

(A)   using the Alternative Settlement Rate Option for the relevant Reference Currency (or, if there is more than more than one such Alternative Settlement Rate Option, following any order of such rates specified in the applicable Final Terms, using the Alternative Settlement Rate which is not, in the determination of the Calculation Agent, affected by the occurrence of a Category 1 Disruption Event); or

(B)   if there is no Alternative Settlement Rate Option for the relevant Reference Currency, or the Alternative Settlement Rate Option (or, if there is more than one Alternative Settlement Rate Option, each Alternative Settlement Rate Option), in the determination of the Calculation Agent, is affected by the occurrence of a Category 1 Disruption Event, in its sole discretion, acting in good faith and taking into account such information available to it that it deems relevant.

(ii)   *Category 2 Disruption Event*

If, at any time (the "*Determination Time*") on any day (which may but need not be a Valuation Date), the Calculation Agent determines in its sole discretion acting in a commercially reasonable manner that a Category 2 Disruption Event has occurred and is outstanding in respect of a Settlement Rate or a Reference Currency, other than in relation to any calculations or determinations under the Notes which have already been made by the Calculation Agent, then:

(A)   the Issuer will, subject to (B) and (C) below, fix the relevant Settlement Rate for such Reference Currency at the prevailing rate of exchange immediately prior to the Determination Time with such adjustment as the Calculation Agent determines is necessary to compensate the Issuer for the costs of unwinding or re-establishing any transaction required in order to hedge its exposure under the Notes; or