Furthermore, where the Notes are placed solely with professional investors and are then systematically resold on the secondary market at any time in the 12 months following such placing, purchasers of Notes who are acting outside of the course of their business or profession may in certain circumstances be entitled to declare such purchase void and to claim damages from any authorised person at whose premises the Notes were purchased, unless an exemption provided for under Decree No. 58 applies.

**Australia**

No prospectus or other disclosure document (as defined in the Corporations Act) in relation to the Program or any Notes has been or will be lodged with the Australian Securities and Investments Commission ("*ASIC*"). Each Dealer has represented and agreed and each further Dealer appointed under the Program will be required to represent and agree that, unless the relevant Final Terms (or a supplement to the Base Prospectus) otherwise provides, it:

(a)   has not (directly or indirectly) offered or invited applications, and will not offer or invite applications, for the issue, sale or purchase of the Notes, in, to or from Australia (including an offer or invitation which is received by a person in Australia); and

(b)   has not distributed or published, and will not distribute or publish, any Base Prospectus or other offering material or advertisement relating to any Notes in Australia,

unless (i) the aggregate consideration payable by each offeree is at least A$500,000 (or the equivalent in other currencies but disregarding moneys lent by the offeror or its associates); (ii) the offer or invitation otherwise does not require disclosure to investors under Part 6D.2 of the Corporations Act; (iii) such action complies with all applicable laws, regulations and directives; and (iv) such action does not require any document to be lodged with ASIC.

**New Zealand**

No action has been or will be taken in relation to the Program or any Notes which would permit a public offering of any of the Notes, or possession or distribution of any offering material in relation to the Notes, in New Zealand. Each Dealer has represented and agreed, and each further Dealer appointed under the Program will be required to represent and agree, that:

(a)   it has not offered or sold, and will not offer or sell, directly or indirectly, any Notes; and

(b)   it has not distributed and will not distribute, directly or indirectly, any offering materials or advertisements in relation to any offer of Notes,

in each case in New Zealand other than:

(i)   to persons whose principal business is the investment of money or who, in the course of and for the purposes of their business, habitually invest money within the meaning of section 3(2)(a)(ii) of the Securities Act 1978 of New Zealand; or

(ii)   to persons who are each required to pay a minimum subscription price of at least NZ$500,000 for the Notes (disregarding any amount lent by the offeror, the Issuer or any associated person of the offeror or Issuer) before the allotment of those Notes and who have a minimum holding of the Notes of at least NZ$500,000; or

(iii)   in other circumstances where there is no contravention of the Securities Act 1978 of New Zealand.

**Singapore**

Each Dealer has acknowledged that this Base Prospectus has not been and will not be registered as a prospectus with the Monetary Authority of Singapore. Accordingly, each Dealer has represented, warranted and agreed that it has not offered or sold any Notes or caused the Notes to be made the subject of an invitation for subscription or purchase and will not offer or sell any Notes or cause the Notes to be made the subject

of an invitation for subscription or purchase, and has not circulated or distributed, nor will it circulate or distribute, this Base Prospectus or any other document or material in connection with the offer or sale, or invitation for subscription or purchase, of the Notes, whether directly or indirectly, to persons in Singapore other than (i) to an institutional investor under Section 274 of the Securities and Futures Act, Chapter 289 of Singapore (the "*SFA*"), (ii) to a relevant person pursuant to Section 275(1) of the SFA, or any person pursuant to Section 275(1A) of the SFA, and in accordance with the conditions, specified in Section 275 of the SFA or (iii) otherwise pursuant to, and in accordance with the conditions of, any other applicable provision of the SFA.

Each Dealer has further represented, warranted and agreed to notify (whether through the distribution of this Base Prospectus or otherwise) each of the following relevant persons specified in Section 275 of the SFA which has subscribed or purchased Notes from or through such Dealer, namely a person which is:

(a) a corporation (which is not an accredited investor (as defined in Section 4A of the SFA)) the sole business of which is to hold investments and the entire share capital of which is owned by one or more individuals, each of whom is an accredited investor; or

(b) a trust (where the trustee is not an accredited investor) whose sole purpose is to hold investments and each beneficiary is an individual who is an accredited investor,

that shares, debentures and units of shares and debentures of that corporation or the beneficiaries' rights and interest (howsoever described) in that trust shall not be transferable for six months after that corporation or that trust has acquired the Notes under Section 275 of the SFA except:

(1) to an institutional investor under Section 274 of the SFA or to a relevant person (as defined in Section 275(2) of the SFA) and in accordance with the conditions, specified in Section 275 of the SFA;

(2) (in the case of a corporation) where the transfer arises from an offer referred to in Section 275(1A) of the SFA, or (in the case of a trust) where the transfer arises from an offer that is made on terms that such rights or interests are acquired at a consideration of not less than S$200,000 (or its equivalent in a foreign currency) for each transaction, whether such amount is to be paid for in cash or by exchange of securities or other assets;

(3) where no consideration is or will be given for the transfer; or

(4) by operation of law.

**General**

Each Dealer has severally agreed with the Issuers that it will observe all applicable laws and regulations in any country or jurisdiction in which it may offer, sell or deliver Notes and that it will not, directly or indirectly, offer, sell or deliver Notes or distribute or publish any prospectus, circular, advertisement or other offering material in relation to the Notes in or from any country or jurisdiction except under circumstances that will to the best of its knowledge and belief result in compliance with any applicable laws and regulations and all offers, sales and deliveries of Notes by it will be made on the foregoing terms.

Each purchaser of Notes must observe all applicable laws and regulations in any jurisdiction in which it may offer, sell, or deliver the Notes and it may not, directly or indirectly, offer, sell, resell, reoffer or deliver any Notes or distribute this Base Prospectus or any circular, advertisement or other offering material (including, without limitation, any supplement to this Base Prospectus) in any country or jurisdiction except under circumstances that will result, to the best of its knowledge and belief, in compliance with all applicable laws and regulations.

The restrictions on offerings may be modified by the agreement of the Issuers and the Dealers following a change in a relevant law, regulation or directive. Any such modification will be set forth in the relevant Final Terms or in a supplement to this Base Prospectus.

## GENERAL INFORMATION

1. The consolidated financial statements for the years ended November 30, 2006 and November 30, 2007 of LBHI have been prepared in accordance with generally accepted accounting principles in the United States and have been reported upon without qualification for LBHI by Ernst & Young LLP, certified public accountants, which has its principal place of business at 5 Times Square, New York, New York 10036, U.S.A. Ernst & Young LLP is an independent registered public accounting firm with respect to LBHI and its subsidiaries within the meaning of the Securities Act of 1933, as amended and the applicable rules and regulations thereunder adopted by the Securities and Exchange Commission and the Public Company Accounting Oversight Board (United States) (PCAOB). The financial statements for the years ended November 30, 2006 and November 30, 2007 of LBTCBV have been prepared in accordance with generally accepted accounting principles in The Netherlands and have been reported upon without qualification by Ernst & Young Accountants, Amsterdam, certified public accountants of NIvRA (*Nederlands Instituut voor Register Accountants*), Drentestraat 20, 1083 HK Amsterdam, P.O. Box 7883, 1008 AB Amsterdam, The Netherlands. The financial statements for the years ended November 30, 2006 and November 30, 2007 of LBB have been prepared on the basis of generally accepted accounting principles in the Federal Republic of Germany and have been audited by Ernst & Young AG Wirtschaftsprüfungsgesellschaft, independent auditors of the Institut der Wirtschaftsprüfer (Institute of Public Auditors in Germany), Eschersheimer Landstr. 14, D-60322 Frankfurt am Main. Ernst & Young AG Wirtschaftsprüfungsgesellschaft issued unqualified auditor's reports thereon.

2. Since May 31, 2008, the date to which the latest unaudited consolidated financial statements of LBHI were prepared, there has been no significant change in the consolidated financial or trading position of LBHI (which includes LBTCBV and LBB) and, save as disclosed in the Information Incorporated by Reference, since November 30, 2007, the date to which the latest audited consolidated financial statements of LBHI were prepared, there has been no material adverse change in the prospects of LBHI and its subsidiaries. Since November 30, 2007, the date to which the latest audited financial statements of LBTCBV were prepared, there has been no significant change in the financial or trading position of LBTCBV, and there has been no material adverse change in the prospects of LBTCBV. Since November 30, 2007, the date to which the latest audited financial statements of LBB were prepared, there has been no significant change in the financial or trading position of LBB and there has been no material adverse change in the prospects of LBB.

3. Except as otherwise disclosed in this Base Prospectus, neither LBHI nor any of its subsidiaries (including LBTCBV and LBB) is or has been involved in any governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which LBHI, LBTCBV or LBB is aware) during the 12 months before the date of this Base Prospectus which may have, or have had in the recent past, significant effects on the financial position or profitability of the Group, LBTCBV or LBB.

4. The authority to approve issuance of debt in the Euro markets, including the issuance of the Guarantee, was delegated to the Executive Committee of the Board of Directors of LBHI pursuant to resolutions (the "*Resolutions*") adopted by the Board of Directors of LBHI as of September 28, 1998. The Executive Committee of the Board of Directors of LBHI, in accordance with the provisions of the Resolutions, authorized the Guarantees on the Notes issued thereunder by LBTCBV or LBB, as the case may be, on July 23, 2007. The Program was authorized pursuant to resolutions of the Board of Managing Directors of LBTCBV passed on March 31, 1995, August 12, 2002, August 19, 2003, August 17, 2004, August 17, 2005, August 3, 2006, July 23, 2007 and July 22, 2008. This Program was authorised pursuant to resolutions of the Board of Directors of LBB passed on August 18, 2003, August 18, 2004 and August 17, 2005.

5. From the date hereof and during the lifetime of the Program copies of the following documents in physical and/or electronic form, and English translations thereof where relevant, may be inspected during normal business hours on any weekday (excluding Saturdays) at the principal place of business and registered office of LBHI (in its capacity as Issuer and as Guarantor), at the registered office of

LBTCBV, at the registered office of LBB, at the offices of the Fiscal Agent in London and at the office of the listing agent in Singapore referred to in this Base Prospectus:

(a) the Restated Certificate of Incorporation and the Amended and Restated By-Laws of LBHI, the Deed of Incorporation ("*akte van oprichting*") and the amended Articles of Association ("*statuten*") of LBTCBV and the Articles of Association ("*Satzung*") of LBB;

(b) the audited consolidated financial statements of LBHI (including the audit report thereon) for each of the years ended November 30, 2006 and November 30, 2007, together with the quarterly interim unaudited consolidated financial statements for the three months ended February 28, 2008 and for the three months ended May 31, 2008;

(c) the audited financial statements of LBTCBV (including the audit report thereon) for the years ended November 30, 2006 and November 30, 2007. No publicly available interim financial statements financial statements are currently prepared by LBTCBV;

(d) the audited financial statements of LBB (including the audit report thereon) for the years ended November 30, 2006 and November 30, 2007. No publicly available interim financial statements financial statements are currently prepared by LBB;

(e) the Amended and Restated Fiscal Agency Agreement dated July 24, 2008 and any amendments or supplements thereto;

(f) the Amended and Restated Distribution Agreement dated July 24, 2008 and any amendments or supplements thereto;

(g) the Deed of Covenant dated July 24, 2008 and any amendments or supplements thereto;

(h) each of the Guarantee Agreements dated July 24, 2008 and any amendments or supplements thereto;

(i) each Calculation Agency Agreement;

(j) each Final Terms (for issues of listed Notes);

(k) any Drawdown Prospectus (for issues of listed notes);

(l) the Base Prospectus and all amendments and supplements thereto; and

(m) in the case of each issue of listed Notes subscribed pursuant to a subscription agreement, the subscription agreement (or equivalent document).

If Australian Domestic Notes or New Zealand Domestic Notes are issued by LBTCBV or LBHI, as the case may be, the relevant Deed Poll, the relevant Agency and Registry Services Agreement and (if required) the relevant Issuing and Payment Administration Agreement in relation to the Australian Domestic Notes or New Zealand Domestic Notes may be inspected during normal business hours on any weekday (excluding Saturdays) at the principal place of business and registered office of LBTCBV or LBHI, as the case may be, and at the office of the Australian Registrar in Sydney or the New Zealand Registrar in Auckland as the case may be, as specified in the applicable Final Terms.

6. Regulations in Australia and certain laws in New Zealand restrict or prohibit payments, transactions and dealings with assets having a prescribed connection with certain countries or named individuals or entities subject to international sanctions or associated with terrorism.

7. Notes have been accepted for clearance through DTC and Euroclear and Clearstream, Luxembourg. The Common Code, the ISIN and the CUSIP number for each Series of Notes will be set out in the relevant Final Terms.

8. Neither LBHI, LBTCBV nor LBB intends to publish any post issuance information in relation to any securities, index or other product underlying such Note.

## PRINCIPAL PLACE OF BUSINESS OF LBHI

**Lehman Brothers Holdings Inc.**
745 Seventh Avenue
New York, New York 10019

## REGISTERED OFFICE OF LBTCBV

**Lehman Brothers Treasury Co. B.V.**
Strawinskylaan 3105
1077 ZX Amsterdam

## REGISTERED OFFICE OF LBB

**Lehman Brothers Bankhaus AG**
Rathenauplatz 1, D-60313
Frankfurt am Main

## LONDON BRANCH OF LBHI AND LBB

25 Bank Street
London E14 5LE

## ARRANGER

**Lehman Brothers
International (Europe)**
25 Bank Street
London E14 5LE

## DEALERS

| | |
|---|---|
| **Lehman Brothers International (Europe)** | **Lehman Brothers Inc.** |
| 25 Bank Street | 745 Seventh Avenue |
| London E14 5LE | New York, NY 10019 |

| | |
|---|---|
| **FISCAL AGENT, PRINCIPAL PAYING AGENT** | **REGISTRAR, EXCHANGE AGENT AND U.S. SUB-PAYING AGENT** |
| **The Bank of New York Mellon, acting through its London Branch** | **The Bank of New York Mellon, acting through its New York Branch** |
| One Canada Square | 101 Barclay Street |
| London E14 5AL | New York, New York 10028 |

## IRISH LISTING AGENT

**The Bank of New York Mellon**
One Canada Square
London E14 5AL

## LEGAL ADVISORS TO THE ISSUERS

*as to United States Law*

**Andrew M.W. Yeung**
Lehman Brothers Holdings Inc.
745 Seventh Avenue
New York, New York 10019

## LEGAL ADVISORS TO THE DEALERS

| *as to English Law* | *as to Netherlands Law* | *as to United States Law* |
|---|---|---|
| **Clifford Chance LLP** | **Clifford Chance LLP** | **Clifford Chance** |
| 10 Upper Bank Street | Droogbak 1A | **US LLP** |
| London E14 5JJ | 1013 GE Amsterdam | 31 West 52nd Street |
|  |  | New York, NY 10019-6131 |
| *as to German law* | *as to Australian law* | *as to Singapore Law* |
| **Clifford Chance Partnerschaftsgesellschaft** | **Mallesons Stephen Jaques** | **Wong Partnership** |
| Mainzer Landstraße 46 | Level 61 | One George Street |
| D-60325 Frankfurt am Main | Governor Phillip Tower | 20th Floor |
|  | 1 Farrer Place | Singapore 049145 |
|  | Sydney NSW 2000 |  |

*as to New Zealand law*

**Russell McVeagh**
Vero Centre
48 Shortland Street
PO Box 8
Auckland

| **AUDITORS OF LBHI** | **AUDITORS OF LBTCBV** | **AUDITORS OF LBB** |
|---|---|---|
| **Ernst & Young LLP** | **Ernst & Young Accountants, Amsterdam** | **Ernst & Young AG Wirtschaftsprüfungsgesellschaft** |
| 5 Times Square | Drentestraat 20 | Eschersheimer Landstr. 14 |
| New York | 1083 HK | D-60322 Frankfurt am Main |
| New York 10036 | Amsterdam |  |