**EXHIBIT B**

**REPRESENTATIVE EXAMPLE OF GUARANTEE**

08-13555-mg    Doc 5958-10    Filed 11/25/09    Entered 11/25/09 18:53:22    Exhibit B
Pg 1 of 10

**CLIFFORD CHANCE**

CLIFFORD CHANCE LLP

EXECUTION COPY

LEHMAN BROTHERS HOLDINGS INC.
LEHMAN BROTHERS TREASURY CO. B.V.
LEHMAN BROTHERS BANKHAUS AG

U.S.$100,000,000,000
EURO MEDIUM-TERM NOTE PROGRAM

*Unconditionally and irrevocably guaranteed, as to Notes to be issued by
Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, by*

LEHMAN BROTHERS HOLDINGS INC.

GUARANTEE AGREEMENT

*in respect of*

LEHMAN BROTHERS TREASURY CO. B.V.

24 July 2008

## CONTENTS

**Clause**          **Page**

1. Definitions ................................................................................................ 2
2. Guarantee ................................................................................................. 3
3. Status ....................................................................................................... 4
4. Continuing Guarantee ............................................................................. 5
5. Reinstatement .......................................................................................... 5
6. Immediate Recourse ............................................................................... 5
7. Covenants ................................................................................................ 5
8. Deposit Of Guarantee ............................................................................. 6
9. Stamp Duties ........................................................................................... 6
10. Partial Invalidity ..................................................................................... 6
11. Notices .................................................................................................... 6
12. Governing Law ....................................................................................... 6

**THIS GUARANTEE AGREEMENT** is made as of 24 July 2008

---

**BY**

(1) **LEHMAN BROTHERS HOLDINGS INC.** (the "**Guarantor**")

**IN FAVOUR OF**

(2) **HOLDERS** (as defined below); and

(3) **THE ACCOUNTHOLDERS** (as defined below);

**WHEREAS**

(A) **LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS TREASURY CO. B.V.** and **LEHMAN BROTHERS BANKHAUS AG** (each an "**Issuer**" and together the "**Issuers**") have established a Program (the "**Program**") for the issuance of medium-term notes (the "**Notes**"). In connection with the Program the Issuers have entered into an Amended and Restated Fiscal Agency Agreement dated 24 July 2008 (as supplemented and amended from time to time, the "**Fiscal Agency Agreement**") with the Bank of New York Mellon, acting through its London Branch, as Fiscal Agent, the Bank of New York Mellon, acting through its New York Branch, as Registrar and the other parties referred to therein. Notes in bearer form may be represented initially by (in the case of Issuers other than Lehman Brothers Holdings Inc.) a permanent global Note (the "**Permanent Global Note**") or by a temporary global Note (the "**Temporary Global Note**") exchangeable in accordance with its terms for a Permanent Global Note or, as the case may be, definitive notes in bearer form ("**Definitive Notes**") and/or registered Notes ("**Registered Notes**") represented by definitive Notes in registered form ("**Definitive Registered Notes**"), global Notes in registered form ("**Global Registered Notes**") or Notes in registered uncertified form. Permanent Global Notes are, in accordance with their respective terms, exchangeable for Definitive Notes. Registered Notes may be represented initially by Definitive Registered Notes and/or Global Registered Notes. Global Registered Notes, are themselves exchangeable, in accordance with their terms, for Definitive Registered Notes. References herein to "**Global Notes**" shall be to Permanent Global Notes, Temporary Global Notes and Global Registered Notes. A Global Note will be delivered to a depositary or a common depositary or a common safekeeper or a custodian, as the case may be, for any one or more of the Clearing Systems (as defined below) for credit to such securities clearing (or any other) account or accounts with any Clearing System as may be determined by the terms and conditions and operating procedures or management regulations of the relevant Clearing System with its respective participants and/or accountholders. Notes denominated in Australian dollars may be issued in the domestic Australian capital markets ("**Australian Domestic Notes**") and Notes denominated in New Zealand dollars that may be cleared through the Austraclear New Zealand System ("**New Zealand Domestic Notes**") may be issued by Lehman Brothers Treasury Co. B.V. ("**LBTCBV**"), in each case pursuant

to a deed poll to be executed by LBTCBV (the "**Deed Poll**"), and such Australian Domestic Notes and New Zealand Domestic Notes will be issued in registered, uncertificated and dematerialised book-entry form and take the form of entries on a register to be maintained by an Australian or New Zealand registrar, as applicable, to be appointed by LBTCBV.

(B)   The Guarantor has agreed to guarantee irrevocably the payment of principal and interest together with all other sums payable by LBTCBV under the Notes issued by LBTCBV (the "**Guaranteed Issuer**") and to guarantee irrevocably the performance by the Guaranteed Issuer of its obligations under the Deed of Covenant, dated 24 July 2008, by the Guaranteed Issuer in favour of the parties identified therein (as supplemented, amended or replaced from time to time, the "**Deed of Covenant**") and the performance by the Guaranteed Issuer of its obligations under the Deed Poll.

**NOW THIS GUARANTEE WITNESSES** as follows:

1.   **DEFINITIONS**

1.1   In this Guarantee the following words and expressions shall have the following meanings:

"**Accountholder**" shall bear the meaning ascribed thereto in the Deed of Covenant in respect of Guaranteed Notes;

"**Clearing System**" means each of Euroclear, Clearstream, Luxembourg, DTC and any other clearing system specified in the relevant Final Terms;

"**Conditions**" means the terms and conditions of the relevant Notes, as the same may be modified or supplemented in accordance with the terms thereof, and any reference to a numbered "**Condition**" is to the correspondingly numbered provision thereof;

"**DTC**" means The Depositary Trust Company;

"**Guaranteed Note**" shall mean a Note issued by the Guaranteed Issuer (including an Australian Domestic Note and a New Zealand Domestic Note) and shall include any related Coupon, Talon or Receipt;

"**Holder**" shall bear the meaning ascribed thereto in the Conditions, in respect of any Guaranteed Note;

"**Relevant Date**" means either (i) the date on which payment of the relevant Note first becomes due or (ii) if the full amount of the moneys payable has not been received by the Fiscal Agent (or any other paying agent in respect of the relevant Note) on or prior to such due date, the date on which all moneys then due for payment shall have been so received and notice to that effect shall have been duly given to the Holders or Accountholders; and

"**this Guarantee**" shall mean this Guarantee Agreement as amended or supplemented from time to time.

1.2    Headings used in this Guarantee are for each of reference only and shall not affect its construction.

1.3    Unless otherwise defined herein, terms defined in the Conditions have the same respective meanings when used in this Guarantee.

2.    **GUARANTEE**

2.1    The Guarantor hereby irrevocably and unconditionally guarantees to the Holders and the Accountholders the performance by the Guaranteed Issuer of all its obligations pursuant to the Conditions of the Notes including without limitation:

(a)    the due and punctual payment of each amount payable in respect of any Guaranteed Note, the Deed of Covenant and the Deed Poll as and when the same become due and payable; and

(b)    any obligation to deliver or procure the delivery of any securities pursuant to such Conditions,

so that the Guarantor shall, if the Guaranteed Issuer shall fail punctually to perform any such obligation forthwith perform or procure the performance of the obligation in accordance with the applicable Conditions upon written demand by such Holder or Accountholder including (without limitation) the due and punctual payment of any such amount in the manner and currency prescribed by such Guaranteed Note which the Guaranteed Issuer shall be liable to pay under and pursuant to such Guaranteed Note, the Deed of Covenant or the Deed Poll or the delivery of any securities pursuant to such Conditions and which the Guaranteed Issuer shall have failed to pay or deliver (as the case may be) at the time such demand is made.

2.2    This Guarantee is one of payment and not collection. The Guarantor acknowledges that its obligations hereunder are several and independent obligations of the Guaranteed Issuer and that the Guarantor shall be liable as sole principal debtor, with the consequence that such liability will not be discharged, impaired or otherwise affected by anything which would not so discharge, impair or otherwise affect its liability if it were a sole principal debtor, including without limitation:

(a)    any time, indulgence, waiver or consent at any time given to the Guaranteed Issuer or any other person;

(b)    any amendment to the Conditions in respect of the Guaranteed Notes, the Deed of Covenant or the Deed Poll or to any security or other guarantee or indemnity;

(c)    the making or absence of any demand on the Guaranteed Issuer or any other person;

(d)    the enforcement or absence of enforcement of any Guaranteed Notes, the Deed of Covenant or the Deed Poll or of any security or other guarantee or indemnity;

(e) the release of any such security, guarantee or indemnity;

(f) the dissolution, amalgamation, reconstruction or reorganisation of the Guaranteed Issuer or any other person;

(g) the winding up of the Guaranteed Issuer or the bringing of any analogous proceeding in any jurisdiction or any change in its status, function, control or ownership; and

(h) the illegality, invalidity, irregularity or unenforceability of, or any defect in, any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll or any of the Guaranteed Issuer's obligations in respect thereof.

2.3 As a separate and alternative stipulation, the Guarantor irrevocably agrees that any sum expressed to be payable by the Guaranteed Issuer under any Guaranteed Note, the Deed of Covenant or the Deed Poll which is for any reason (including, without limitation, by reason of any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll being or becoming void, unenforceable or otherwise invalid under any applicable law) (whether or not now known or becoming known to the Guaranteed Issuer, the Guarantor, the Holder(s), the Accountholder(s) or any other person) not recoverable from it on the basis of a guarantee, will nevertheless be recoverable from it as if it were the sole principal debtor and will be paid by it to the Holder(s) or the Accountholder(s) on written demand. This indemnity constitutes a separate and independent obligation from the other obligations in this Guarantee, gives rise to a separate and independent cause of action and will apply irrespective of any indulgence granted by the Holder(s), the Accountholder(s) or any other person.

3. **STATUS**

3.1 The claims of the Holders and Accountholders against the Guarantor in respect of senior Guaranteed Notes will constitute direct, unconditional and (subject to the provisions of Condition 11 (*Negative Pledge with respect to Senior Notes*) and the provisions of the Fiscal Agency Agreement) unsecured obligations of the Guarantor and rank *pari passu* in right of payment among the Guarantee, prior to the equity securities of the Guarantor and equally with all other unsecured and unsubordinated debt obligations of the Guarantor (subject, in the event of insolvency, to laws affecting creditors' rights generally).

3.2 The claims of the Holders and the Accountholders against the Guarantor in respect of subordinated Guaranteed Notes constitute direct, unsecured and subordinated obligations of the Guarantor and rank *pari passu* among themselves and *pari passu* will all other present and future unsecured, unconditional and subordinated indebtedness of the Guarantor and will be subordinated, in the event of the winding-up of the Guarantor, to the claims of its Senior Creditors. Amounts payable under the Guarantee shall be due and payable by the Guarantor in such winding-up only if and to the extent that all claims against the Guarantor by its Senior Creditors have been paid in full.

3.3  Subject to applicable law, no Holder or Accountholder may be granted any security by the Guarantor or any third party or claim any right of set-off in respect of any amount owed to it by the Guarantor under this Guarantee in connection with subordinated Guaranteed Notes and each Holder or relevant Accountholder shall be deemed to have waived all such rights.

3.4  Subsequent agreements which limit the subordination effected pursuant to Clause 3.2 or which accelerate payments under this Guarantee in respect of subordinated Guaranteed Notes are not permitted by law.  Should payments be effected in respect of subordinated Guaranteed Notes by the Guarantor before the maturity date without legal preconditions being fulfilled, the amount paid shall be refunded to the Guarantor notwithstanding any agreement to the contrary.

4.  **CONTINUING GUARANTEE**

This Guarantee is a continuing guarantee and shall extend to the ultimate balance of all the obligations of the Guaranteed Issuer under any Guaranteed Note notwithstanding any settlement of account or other matter or thing whatsoever.  It shall remain in full force and effect until all such obligations have been irrevocably paid and satisfied in full.  Furthermore, such obligations are additional to, and not in substitution for, any security or other guarantee or indemnity at any time existing in favour of any person.

5.  **REINSTATEMENT**

If any payment received by a Holder or Accountholder shall, on the subsequent bankruptcy, insolvency, corporate reorganisation or other similar event of the Guaranteed Issuer, be avoided or set aside under any laws relating to such events, such payment shall not be considered as discharging or diminishing the liability of the Guarantor and this Guarantee shall continue to apply as if such payment had at all times remained owing by the Guaranteed Issuer, provided that the obligations of the Guaranteed Issuer and/or the Guarantor under this Clause 5 shall, as regards each payment made to the Holder or Accountholder which is avoided or set aside, be contingent upon such payment being reimbursed to the Guaranteed Issuer or other persons entitled through the Guaranteed Issuer.

6.  **IMMEDIATE RECOURSE**

The Guarantor waives any right it may have of first requiring a Holder or Accountholder to proceed against or enforce any other rights or security against the Guaranteed Issuer or any other person before claiming from the Guarantor hereunder.

7.  **COVENANTS**

The Guarantor covenants in favour of the Holders and the Accountholders that it will duly perform and comply with the obligations expressed to be undertaken by it in the Conditions.

8. **DEPOSIT OF GUARANTEE**

   This Guarantee shall be deposited with and held by the Fiscal Agent until all obligations of the Guaranteed Issuer and/or in respect of the Guaranteed Notes have been discharged in full. The Guarantor hereby acknowledges the right of every Holder and Accountholder to the production of this Guarantee.

9. **STAMP DUTIES**

   The Guarantor shall pay all stamp, registration and other taxes and duties (including any interest and penalties thereon or in connection therewith) which may be payable upon or in connection with the execution and delivery of this Guarantee, and shall indemnify each Holder and Accountholder against any claim, demand, action, liability, damages, cost, loss or expense (including, without limitation, reasonably legal fees and any applicable value added tax) which it incurs as a result of or arising out of or in relation to any failure of the Guarantor to pay or delay in paying any of the same.

10. **PARTIAL INVALIDITY**

    If at any time any provisions hereof is or becomes illegal, invalid or unenforceable in any respect under the laws of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions hereof nor the legality, validity or enforceability of such provision under the laws of any other jurisdiction shall in any way be affected or impaired thereby.

11. **NOTICES**

    All notices, demands or other communications by any Holder or Accountholder upon the Guarantor shall be duly served upon the Guarantor if served on the Guarantor by letter at 745 Seventh Avenue, New York, New York 10019.

12. **GOVERNING LAW**

    This Guarantee shall be governed by, and construed in accordance with, the law of the State of New York.

**IN WITNESS** whereof the Guarantor has executed this Guarantee the day and year first above written.

| | |
|---|---|
| **EXECUTED** | ) |
| by **LEHMAN BROTHERS HOLDINGS INC.** | ) |
| acting by | ) |
| | PAOLO TONUCCI |