WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                :
**In re:**                                                      :    **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC., et al.**    :    **08-13555 (JMP)**
                                                                :
                                             **Debtors.**      :    **(Jointly Administered)**
                                                                :
-----------------------------------------------------------------x

<u>**DEBTORS' SUPPLEMENT TO**</u>
<u>**OBJECTIONS TO REQUESTS TO FILE LATE CLAIMS**</u>

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

            Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors and as debtors

in possession, (the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"),

respectfully submit this pleading as supplemental to its objections to the requests by (i) PB

Capital Corp. ("<u>PB Capital</u>") and (ii) Pacific Life Insurance Company ("<u>Pacific Life</u>") to have

the claims such entities filed after the Bar Date[1] or the Securities Programs Bar Date, as

applicable, to be deemed timely filed by the Court and respectfully represent:

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Objection to the Motion of PB Capital to Include Certain European Medium Term Notes in the Lehman Program Securities List or, Alternatively, to Deem Such Claims to be Timely Filed by the Securities Programs Bar Date.

## I.    Preliminary Statement

1.    At the conclusion of the hearing before the Court on November 18, 2009, the Court offered the Debtors the opportunity to provide additional information that would supplement the record related to the motions filed with the Court requesting the court deem timely filed three late filed claims.  The Debtors submit this pleading to provide the Court with additional information for its consideration in connection with the motions filed by PB Capital and Pacific Life.

2.    In addition to the foregoing, this pleading includes information regarding the magnitude of late filed claims.  As indicated in the Declaration of Steven Kotarba annexed as Exhibit "A" hereto, more than 3,000 claims (the "Late-Filed Claims") in the aggregate asserted face amount of approximately $174,000,000,000 (619 of the claims are either unliquidated or have unliquidated components) have been filed after the applicable bar date.  For the Court's information and convenience, the following are subsets of the late filed claims:

a.    as of November 17, 2009, approximately 62,000 were filed in advance of September 22, 2009 (the "Bar Date") or November 2, 2009 (the "Securities Programs Bar Date") as applicable;

b.    of the approximately 31,927 timely filed claims on account of Lehman Programs Securities, approximately 30,643 were filed timely, and approximately 1,284 claims based on Lehman Programs Securities, were filed after the Securities Programs Bar Date; and

c.    of the approximately 4,057 claims filed on account of Derivative Contracts, approximately 3,717 were timely filed, and approximately 340 claims were filed after the Bar Date.

## II.    Pacific Life Insurance Company[2]

3.    Pacific Life admits in its motion, and represented in Court, that it failed to comply with the Bar Date Order and timely file a proof of claim.  *See* November 18, 2009

---

[2] Pacific Life filed an Affidavit in support of its motion on November 24, 2009 [Docket No. 5939].

Hearing Tr. at 71.  Pacific Life's chief argument for the allowance of its late claim is that it

timely filed the Derivative Questionnaire.  However, providing supplemental information related

to a claim prior to the questionnaire deadline does not constitute compliance with the Bar Date

Order.  The Debtors have identified more than 100 claims that suffer the same infirmity as the

claim filed by Pacific Life, in that no proof of claim form was filed prior to the Bar Date, but a

completed Derivative Questionnaire or Guarantee Questionnaire prior to the Questionnaire

Deadline over a month after the Bar Date.  In these scenarios, the delay in filing claims was

completely in the control of the creditor and minimal supervision and/or reasonable diligence

would have prevented such failure to timely file claims.

           4.      Such situations contrast with the facts set forth in the motion recently filed

by Deutsche Bank AG seeking authority to file a late claim based on excusable neglect (the

"Deutsche Bank Motion").  *See* Motion of Deutsche Bank AG to Permit Late Claim Filing

Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) [Docket No. 5829].  The reasons

for the delay in the Deutsche Bank Motion were the result of the actions of third parties and not

in the control of Deutsche Bank AG.  Therefore, under prevailing case law, the Deutsche Bank

Motion is the only motion filed with this Court to date asserting facts that justify a finding of

excusable neglect. *See In re Enron Corp*., 419 F.3d 115, 122-24 (2d Cir. 2005) ("We have 'taken

a hard line' in applying the Pioneer test . . .  focus[ing] on the third factor:  the reason for the

delay, including whether it was within the reasonable control of the movant.") (internal citations

and quotations omitted); *In re Dana Corp*., No. 06-10354 (BRL), 2008 WL 2885901, at *5

(Bankr. S.D.N.Y. July 23, 2008) (where notice of the bar date was inadvertently filed away

without any action being taken, "movant's failure to file a timely proof of claim was entirely

within his and his attorneys' reasonable control and does not constitute excusable neglect"); *In re

Chateaugay Corp.*, No. 92 Civ. 8722 (LJF), 1993 WL 1127180, at *6 (S.D.N.Y. Apr. 22, 1993)

(movant's failure to timely file proof of claim due to failure of movant's own internal procedures
in forwarding bankruptcy matters to its appropriate department for review did not constitute
excusable neglect). Pacific Life missed the Bar Date as a result of its simple failure to coordinate
and supervise the filing of proofs of claim. Even minimal diligence— like communication and
coordination between two employees overseeing claims filings— would have prevented Pacific
Life's default.

### III.    Corrections of Erroneous and Misleading Statements of PB Capital in the Reply and Related Declarations

5.    <u>Assertion in the Reply</u>: PB Capital asserts in the Reply[3] that the Debtors
did not act in good faith in connection with the creation of the final list of Lehman Programs
Securities the ("<u>Final List</u>") and the exclusion from the Final List of certain securities that were
included on the initial list of Lehman Programs Securities (the "<u>Initial List</u>"). *See* PB Capital
Reply at ¶¶2 and 15.

6.    <u>Debtors' Response</u>:  The Debtors and many creditors cooperated and
worked in good faith to create the Lehman Programs Securities Procedures and the Final List.
The Debtors' good faith is evidenced by the fact that the Debtors (i) worked with dozens of
creditors to create the Lehman Programs Securities Procedures and the Final List, (ii) included
all requested securities on the Initial List (iii) were over-inclusive on the Final List, as evidenced
by the inclusion of more than 6,744 securities on the list, and excluded only securities that the
Debtors could readily identify as not belonging on the list (e.g. the Debtors determined that: the
security was issued to investors in the Unites States, the security was not an obligation of any of
the Debtors or their affiliates, the security was common or preferred equity or the security had
matured and been redeemed in full)— each of the foregoing being actual examples of securities

---

[3] PB Capital's Reply to Objection to the Motion of PB Capital to Include Certain European Medium Term Notes in
the Lehman Program Securities List or, Alternatively, to Deem Such Claims to be Timely Filed by the Securities
Programs Bar Date (the "<u>Reply</u>").

the Debtors did not include on the Final List,[4] (iv) communicated with creditors to the extent

possible if the Debtors determined that a requested security did not belong on the Final List, (v)

provided clear notice to holders as they checked the list on the website www.lehman-docket.com

that the Initial List was subject to change, including deletions and specifically advising creditors

to check the Final List after July 17, 2009, and (vi) and the Court did not receive any requests to

have a dispute related to the content of the Final List determined prior to the motion of PB

Capital.

       7.    Assertion in Reply:  The inclusion of the securities held by PB Capital on
the Initial List is evidence that the Lehman Programs Securities Procedures were intended to
include such securities issued to investors in the United States.  *See* Reply at ¶8.

       8.    Debtor's Response:  The Debtors did not have any record of most of the

Euro Medium Term Note securities and had to rely on the information provided by other parties

for the creation of the Initial List.  The Initial List was largely based on the list of securities

issued by Lehman Brothers Treasury Co. B.V. ("Lehman Brothers Treasury"), provided to the

Debtors by the trustee of Lehman Brothers Treasury.  The Debtors did not have time to review

each of the over 3,000 securities included on this Initial List over the weekend they had before

they were required to post the list, and included all requested securities.  However, the Initial

---

[4] The Debtors were so over-inclusive in the creation of the Final List, that one security included on the Final List at
the request of Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), was issued by Capital Raising Gmbh, an
entity that is wholly unaffiliated with the Debtors.  When this fact was brought to the Debtors' attention by Capital
Raising Gmbh, and confirmed by the Debtors, despite the fact that Capital Raising Gmbh indicated that the inclusion
of such security on the Final List was causing enormous distress in the operations of its business, the Debtors
refused to delete the security from the list without Cleary Gottlieb's authorization because the procedures did not
permit them to do so.  Instead, to ameliorate the situation, the Debtors sought the consent of Cleary Gottlieb to
remove the security from the Final List.  Shockingly, even though it was confirmed that the request to include this
security was erroneous, the request for authorization to remove the security was denied!  Ultimately the Debtors
included a footnote on the Final List explaining that the Capital Raising Gmbh security was erroneously included on
the Final List.

List, was just that, an initial list and there was no obligation for any securities to be included on the Final List. *See* Bar Date Order at 13.

9.      <u>Assertion in Reply</u>: "Once a party, such as PB Capital, confirmed its Euro Medium Term-Note Programs Securities were on the July 6 Program Securities List, it would be assured that such securities would also be on the July 17 Program Securities List." *See* Reply at ¶17.

10.     <u>Debtors' Response</u>:  This assumption was, at best, an erroneous assumption with no basis and, in fact, <u>contrary</u>, to the Bar Date Order and the clear and conspicuous notice posted on the website where the list was posted.  There was no restriction in the Bate Date Order on the removal of securities between the posting of the Initial List and the Final List.  The Bar Date Order was clear, that only securities included on the Final List were Lehman Programs Securities. *See* Bar Date Order at 12.

11.     <u>Assertion in the Reply</u>:  PB Capital asserts that there are only three securities similarly situated to the securities owned by PB Capital subject to the Motion and therefore there is a limited universe of creditors that may seek similar relief.  *See* PB Capital Reply at ¶22.

12.     <u>Debtors' Response</u>:  While it is accurate that there are only three other securities with an ISIN with a "US" prefix that were included on the Initial List but not on the Final List, the statement incorrectly implies that there are only a few other creditors in the same shoes as PB Capital.  In actuality, it is unknowable how many creditors hold those certain three securities.  All three securities are book-entry securities held on the books of the Depository Trust Company ("<u>DTC</u>"), and it is not possible for the Debtors or any other party at this time to look through the records of DTC and their participants to determine how many holders there are of these three securities.

13.     Furthermore, the three outstanding securities have an aggregate outstanding amount of approximately $67 million.  When added to the claims of PB Capital

subject to the Motion, allowing the claims of these seven securities would result in additional

claims against the Debtors of approximately $330 million.

14.    Assertion in the Declaration of Andrew A. Bernstein, Esq. (the "Bernstein
Declaration"): "PB Capital was not involved in any of the negotiations of the terms of the Bar
Date Order that subsequently ensued in respect of the derivatives and guarantee questionnaires,
nor was PB Capital involved in any other subsequent negotiations relating to the Bar Date
Order." *See* Bernstein Declaration ¶12.

15.    Debtors' Response: Cleary Gottlieb spear-headed the charge to implement

the Lehman Programs Securities Procedures and numerous attorneys were intimately involved in

the drafting of such procedures, as evidenced by the Bernstein Declaration.  Cleary Gottlieb

never identified to the Debtors which of their clients they were acting on behalf of when they

participated in such negotiations.  However, they did identify to the Court which clients they

appeared on behalf of and it is clear from the record that they appeared on behalf of PB Capital

at the June 29, 2009  hearing regarding the Bar Date Order and Derivatives Questionnaire and, as

the Court well recalls, they participated actively.  *See* Exhibit "B" attached hereto.

16.    Assertion in the Bernstein Declaration:  The Bernstein Declaration asserts
that the Debtors insisted on a five-day period for the creation of the Final List because "of their
view that the process was really going to be about counsel putting forward names of additional
securities." *See* Bernstein Declaration ¶23.  At the hearing PB Capital's counsel referred to a
supposed conversation, and to an exhibit or email of sorts that refers to such conversation
without showing such communication to the Court or counsel.

17.    Debtors' Response: Debtors' counsel did not make any such statements or

imply to Cleary Gottlieb at any time that securities would only be added to the list.  In fact, such

statement would directly contradict statement posted by the Debtors on the website

www.lehman-docket.com: "The list of 'Lehman Programs Securities' will be finalized on July

17, 2009 at 5:00.  Prior to such time, securities may be added or deleted from the list." *See*

Exhibit C to the Objection.  Furthermore, there is no email or any exhibit relating to any such

conversation in the record— certainly had it existed counsel would have included it among the 4

7

exhibits to their Reply (or 13 exhibits attached to such exhibits) or provided it to the Court or counsel. *See* November 18, 2009 Hearing Tr. at 98.

18.     Assertion in the Bernstein Declaration:  The Bernstein Declaration explains Mr. Bernstein's rationale for certain comments and suggestions that he made to the Lehman Programs Securities Procedures.  With respect to the provision of the Bar Date Order that states "the following procedures apply to the filing of any and all claims (including any claims under a related Guarantee) against the Debtors arising from securities issued by the Debtors or any of the Debtors' affiliates outside of the United States, solely to the extent identified on http://www.lehman-docket.com under the heading "Lehman Programs Securities"", Mr. Bernstein states that he suggested the inclusion of the words "outside the United States" to "avoid a redundancy, since affiliates in the United States that were relevant to this procedure were all "Debtors" and thus already covered by that term." *See* Bernstein Declaration ¶27.

19.     Debtors' Response:  Mr. Bernstein's explanation is not logical.  Prior to the inclusion of the phrase "Debtors or any of the Debtors' affiliates outside of the United States" in the Lehman Programs Securities Procedures, a prior iteration described the universe of Lehman Programs Securities as those issued by the "Debtors' affiliates".  *See* Exhibit 2 to the Bernstein Declaration.  The term "Debtors' affiliates" would have already included the foreign affiliates of the Debtors, and thus Mr. Bernstein's additional proposed language and interpretation of the words "outside the United States" would be superfluous and meaningless. Therefore, to give the addition of the words "outside the United States" any meaning, they must refer to the location of the issuance of the securities.

20.     Furthermore, as the list of securities subject to these procedures had not yet been determined when the Lehman Programs Securities Procedures language was drafted, neither Cleary Gottlieb nor Debtors' counsel could possibly have known at that time that domestic affiliates of the Debtors did not issue any of the securities that would become subject to the Lehman Programs Securities Procedures.

21.     Assertion in Declaration of Zoe Segal-Reichlin (the "Segal-Rechlin Declaration"):  The Segal-Reichlin Declaration states that Ms. Segal-Reichlin has not served as counsel to PB Capital in these cases, and in particular in connection with her participation in the creation of the Lehman Programs Securities Procedures and lists, and therefore any knowledge

of or communications with Ms. Segal-Reichlin cannot be imputed to PB Capital.  *See* Segal-Reichlin Declaration ¶¶4 and 11.

22.    Debtors' Response:  Ms. Segal-Reichlin appeared on behalf of PB Capital Corp. at the hearing on June 29, 2009. *See* June 29, 2009 Hearing Tr. at 7 attached hereto as Exhibit B.

## IV.    Reservation of Rights

23.    In the event that the Court determines to grant the relief requested in the Motion, the Debtors reserve all of its rights to object to the validity and amount of any claims which may be filed by PB Capital.

WHEREFORE the Debtors respectfully requests the Court deny the Motion and grant such other and further relief as is just and proper.

Dated: New York, New York
      November 27, 2009

                              /s/ Shai Y. Waisman
                              Shai Y. Waisman
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York  10153-0119
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for the Debtor and
                              Debtor In Possession

<u>Exhibit A</u>

Declaration of Steven Kotarba

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                   :
**In re**                                          :          **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :          **08-13555 (JMP)**
                                                   :
                                **Debtors.**       :          **(Jointly Administered)**
                                                   :
-------------------------------------------------------------------x

<u>**DECLARATION OF STEVEN KOTARBA**</u>

Pursuant to 28 U.S.C. § 1746, I, Steven Kotarba, declare:

1.       I am over the age of 18 years and make these statements of my own

personal knowledge.   If called to testify, I could testify to truth of the matters set forth

herein.

2.       I am a Managing Director for Alvarez and Marsal North America, LLC

("<u>A&M</u>").   I am head of the team at A&M tasked with reviewing and reconciling claims

filed against the above captioned debtors (the "<u>Debtors</u>").

3.       In consultation with the Debtors' court-appointed claims agent, Epiq,

Bankruptcy Solution, LLC, I, along with the assistance of my team and certain of the

Debtors and their retained professionals, have reviewed the register of claims filed

against the Debtors and based upon such review I have determined that as of the date of

this declaration more than 3,000 claims (the "Late-Filed Claims") in the aggregate

asserted face amount of approximately $174,000,000,000 (619 of the claims are either

unliquidated or have unliquidated components) have been filed after the applicable bar

date.  Of such late filed claims, as if the date if this declaration, based on my review of

the claims register, I have determined the following:

> a.    as of November 17, 2009, approximately 62,000 were filed in
> advance of September 22, 2009 (the "Bar Date") or November 2, 2009
> (the "Securities Programs Bar Date") as applicable;
>
> b.    of the approximately 31,927 timely filed claims on account of
> Lehman Programs Securities, approximately 30,643 were filed timely, and
> approximately 1,284 claims based on Lehman Programs Securities, were
> filed after the Securities Programs Bar Date; and
>
> c.    of the approximately 4,057 claims filed on account of Derivative
> Contracts, approximately 3,717 were timely filed, and approximately 340
> claims were filed after the Bar Date.

4.    I declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct to the best of my knowledge.

Executed on this 27th day of November, 2009.

/s/ Steven Kotarba
Steven Kotarba

<u>Exhibit B</u>

Pages from June 29, 2009 Hearing Transcript

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)


- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


          Debtors.

- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          June 29, 2009

          2:06 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2    HEARING re LBHI's Motion for Authorization to Make a Capital

3    Contribution to Aurora Bank

4    FSB

5

6    HEARING re Debtors' Motion for Establishment of the Deadline

7    for Filing Proofs of Claim, Approval of the Form and Manner of

8    Notice Thereof and Approval of the Proof of Claim Form

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

3

```
 1
 2    A P P E A R A N C E S :
 3    WEIL, GOTSHAL & MANGES LLP
 4         Attorneys for Debtors
 5         767 Fifth Avenue
 6         New York, NY 10153
 7
 8    BY:  RICHARD W. SLACK, ESQ.
 9         LORI R. FIFE, ESQ.
10         SHAI Y. WAISMAN, ESQ.
11         RICHARD P. KRASNOW, ESQ.
12
13    HUGHES HUBBARD & REED LLP
14         Attorneys for James W. Giddens, SIPC Trustee
15         One Battery Park Plaza
16         New York, NY 10004
17
18    BY:  JEFFREY S. MARGOLIN, ESQ.
19
20
21
22
23
24
25
```

4

1

2   MILBANK, TWEED, HADLEY & MCCLOY LLP

3       Attorneys for Official Committee of Unsecured Creditors

4       One Chase Manhattan Plaza

5       New York, NY 10005

6

7   BY:   DENNIS C. O'DONELL, ESQ.

8        EVAN R. FLECK, ESQ.

9

10  ALLEN & OVERY LLP

11      Attorneys for ISDA; Banca Akros S.p.A.; Mediolanum Vita,

12       S.p.A.; Banca Monte dei Paschi di Siena, S.p.A.; Banca

13       Popolare di Milano Societa Cooperativa a r.l.; and Banco

14       Popolare Societa Cooperativa

15      1221 Avenue of the Americas

16      New York, NY 10020

17

18  BY:   JOSHUA D. COHN, ESQ.

19       JOHN KIBLER, ESQ.

20

21

22

23

24

25

5

```
 1

 2    BINGHAM MCCUTCHEN LLP

 3         Attorneys for Deutsche Bank; Harbinger Funds; Putman

 4          Investments, LLC; State Street Bank and Trust Company;

 5          and UBS AG; Harbinger Capital Partners Special Situations

 6          Fund, L.P. and Harbinger Capital Partners Master Fund I,

 7          Ltd. (f/k/a Harbert Distressed Investment Master Fund

 8          Ltd.)

 9         399 Park Avenue

10         New York, NY 10022

11

12    BY:  JOSHUA DORCHAK, ESQ.

13

14    CADWALADER, WICKERSHAM & TAFT LLP

15         Attorneys for Morgan Stanley

16         One World Financial Center

17         New York, NY 10281

18

19    BY:  ELLEN M. HALSTEAD, ESQ.

20

21

22

23

24

25
```

6

1

2      CADWALADER, WICKERSHAM & TAFT LLP

3           Attorneys for Morgan Stanley

4           1201 F. Street, N.W.

5           Washington, DC 20004

6

7      BY:  MARK C. ELLENBERG, ESQ.

8

9      CHAPMAN & CUTLER LLP

10          Attorneys for US Bank, N.A.

11          111 West Monroe Street

12          Chicago, IL 60603

13

14     BY:  FRANKLIN H. TOP, III, ESQ.

15

16

17

18

19

20

21

22

23

24

25

7

1

2    CLEARY GOTTLIEB STEEN & HAMILTON LLP

3        Attorneys for Barclays Capital Inc.; Barclays Bank PLC and

4         their affiliates; D. E. Shaw Composite Portfolios,

5         L.L.C., D. E. Shaw Oculus Portfolios, L.L.C., and their

6         affiliates; Abu Dhabi Investment Authority; Banco Bilbao

7         Vizcaya Argentaria, S.A.; Deutsche Postbank AG; PB

8         Capital Corporation; Wachovia Bank, N.A. and its

9         affiliates; Evergreen Investment Management Company, LLC,

10        acting as agent for various funds; AB Svensk

11        Exportkredit; Autonomy Capital Research LLP, Autonomy

12        Master Fund Limited and Autonomy Rochevera One Limited

13        One Liberty Plaza

14        New York, NY 10006

15

16   BY:  LINDSEE GRANFIELD, ESQ.

17        ZOE SEGAL-REICHLIN, ESQ.

18

19   CLIFFORD CHANCE US LLP

20        Attorneys for Calyon

21        31 West 52nd Street

22        New York, NY 10019

23

24   BY:  ANDREW BROZMAN, ESQ.

25        JENNIFER C. DEMARCO, ESQ.