WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                          :
In re                                     :     **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :     **08-13555 (JMP)**
                                          :
                        **Debtors.**      :     **(Jointly Administered)**
                                          :
----------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for relief from the automatic stay, to the extent applicable, to

permit the Debtors' third-party insurers to make payments in connection with a certain

settlement agreement between Openwave Systems Inc. and the Debtors' current and former

officers, directors, and employees that have been named as defendants in a certain legal action,

all as more fully described in the Motion, will be held before the Honorable James M. Peck,

United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton

Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the

"Bankruptcy Court"), on **December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

            PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **December 11, 2009 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 1, 2009
      New York, New York

                    /s/ Richard P. Krasnow
                    Richard P. Krasnow

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
:
In re                                                                    :       **Chapter 11 Case No.**
                                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :       **08-13555 (JMP)**
                                                                         :
                             Debtors.                                :       **(Jointly Administered)**
                                                                         :
-------------------------------------------------------------------x

**DEBTORS' MOTION, PURSUANT TO
SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER
MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT
PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and

respectfully represent:

**Preliminary Statement**

        1.       Pursuant to Orders dated March 25, 2009 [Docket No. 3220], and

November 23, 2009 [Docket No. 5906], the Court modified the automatic stay provided for

under section 362(a) of title 11 of the United States Code (the "Bankruptcy Code"), to the extent

applicable, to remove any impediments to payment by respectively, XL Specialty Insurance

Company ("XL"), the Debtors' primary third-party insurer, and Federal Insurance Company

(Chubb) ("Chubb"), the first level excess third-party insurer, of directors and officers coverage

and fiduciary liability coverage of defense costs and fees that current or former directors,

officers, and employees of the Debtors were incurring as defendants in ongoing civil lawsuits,

arbitration proceedings, and regulatory and other investigations.

2.    As explained more fully below, by this Motion, the Debtors seek to again

assure XL and, to the extent it is obligated to make any payment, Chubb (together, the

"Insurers") that, in addition to their ability to advance defense costs, they can also make

payments in connection with a settlement agreement between Openwave Systems Inc.

("Openwave") and certain of the Debtors' current or former directors, officers, and employees

(the "Individual Defendants") without concern that, if the automatic stay is otherwise applicable,

they are violating the automatic stay.

3.    Confirming the Insurers' ability to make settlement payments on behalf of

the Individual Defendants is in the best interests of the Debtors' estates and creditors because,

*inter alia*, it will avoid the possible collateral estoppel effect on the Debtors that could result if

the individuals' inability to settle the Action (defined below) were to give rise to judgments and

findings that impacted direct claims against the Debtors.  Furthermore, the interests of the

Debtors' estates, if any, in the proceeds of the applicable insurance policy is expressly

subordinate to the interest of the individual insureds.  Specifically, the applicable insurance

policies provide that the Debtors have a right to the insurance proceeds only after the insured

individuals are fully reimbursed for any "Loss,"[1] including defense costs and settlement

payments.  As such, granting the relief requested by this Motion is unlikely to have any adverse

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Policy (defined below).

effect on the Debtors' estates and creditors.  Moreover, validating that the Insurers are authorized

to fund certain settlement payments without violating the automatic stay will also eliminate or

reduce potential indemnification claims that the Individual Defendants may seek to assert against

the Debtors.  Accordingly, granting the relief requested herein is in the best interest of the

Debtors' estates and creditors.

**Background**

4.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced

voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

5.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned Chapter 11 Cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the
Examiner.

## Jurisdiction

8.      This Court has subject matter jurisdiction to consider and determine this
matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

9.      Prior to the events leading up to these Chapter 11 Cases, Lehman was the
fourth largest investment bank in the United States.  For more than 150 years, Lehman has been
a leader in the global financial markets by serving the financial needs of corporations,
governmental units, institutional clients and individuals worldwide.

10.     Additional information regarding the Debtors' businesses, capital
structures, and the circumstances leading to the commencement of these chapter 11 cases is
contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy
Rules for the Southern District of New York in Support of First-Day Motions and Applications,
filed on September 15, 2008 [Docket No. 2].

## Relief Requested

11.     The Debtors seek the entry of an order granting relief from the automatic
stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow
the Insurers to make settlement payments in the aggregate amount of $1,675,000 (the
"Settlement Amount") in connection with the terms of a settlement agreement (the "Settlement
Agreement") between Openwave and the Individual Defendants (together, the "Parties") as
required under the Policy (defined below).  A copy of the Settlement Agreement, dated
November 23, 2009, is annexed hereto as Exhibit A.  The Debtors further request that the Court

waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

### The Debtors' Directors and Officers Liability Insurance Policy

12.     Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and excess directors and officers ("D&O") liability insurance, which provides coverage for the Debtors' current and former officer, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations.

13.     For Claims made against the Individual Defendants during the period from May 16, 2007 to May 16, 2008, the Debtors purchased a primary Policy from XL (the "2007-2008 D&O Policy" or the "Policy").[2]  During this period, the Debtors also purchased excess coverage from a variety of other carriers of up to $250 million in the aggregate, including Chubb. The terms and conditions of the excess coverage are governed by the 2007-2008 D&O Policy and are subject to certain additional terms, such as a cap on coverage and are triggered only after all of the preceding layers of coverage have been exhausted.

14.     Subject to the terms, conditions, limitations and exclusions of the Policy, XL provides for D&O coverage of $20 million to the Individual Defendants for Loss (i.e., defense costs, expenses, settlements, and judgments) for Claims made during the Policy Period arising from Wrongful Acts allegedly committed by the Individual Defendants in their capacity as directors, officers or employees of LBHI and its subsidiaries.  When triggered, Chubb provides for coverage of $15 million in excess of the $20 million or between $20 million and $35 million with respect to the foregoing Loss.  Coverage under Side A provision of the 2007-

---

[2] A copy of the 2007-2008 D&O Policy along with the additional terms and conditions of the Chubb coverage is annexed hereto as Exhibit "B."

2008 D&O Policy is immediately available to Insured Persons, which includes certain of the Debtors' present and former officers, directors, and employees for any Losses associated with Claims made under the Policy that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

15.     Furthermore, endorsement 22 of the 2007-2008 D&O Policy contains a "Priority of Payments" provision, which provides that when competing claims for coverage under both Insuring Agreement (A) for non-indemnifiable loss, as described above, and Insuring Agreement (B) are made under the 2007-2008 D&O Policy, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ." Thus, the 2007-2008 D&O Policy and each of the excess Policies, by virtue of Insuring Agreement A and the Priority of Payments endorsement, provides for the immediate payment of the Settlement Amount on behalf of the Individual Defendants ahead of any payment that may be made to the Debtors.

## The Action

16.     Both prior to and after the collapse of the Lehman enterprise in September 2008, various securities actions were commenced against certain current and former officers and directors of Lehman in both federal and state courts.  The Settlement Agreement relates to an action commenced by Openwave against the Individual Defendants, Case No. 08-05683-SI, relating to Openwave's purchase of auction-rate securities (the "Action").  Openwave alleges violations of various common law and state statutory laws.  Neither LBHI nor any of the other Debtors is named as a defendant in the Action.  The Action is pending in the United States District Court for the Northern District of California (the "District Court").

## The Settlement Agreement

17.    To eliminate the uncertainties, burden, and expense of further litigation,

without any admission or concession of any fault, liability, or wrongdoing, the Parties, through

arms-length negotiations, have agreed to settle all disputes outstanding between them, including

those that are the subject of the Action (the "Settlement").  In addition, Openwave has agreed to

release any and all claims (i) that concern Openwave's LBI account, (ii) that Openwave brought

in the Action, (iii) that related to any of the Claims asserted or facts alleged in the Action or the

subject matter thereof, or (iv) that are based on the defense, settlement, or resolution of the

action, which Claims Openwave ever had, now has, or hereafter may have against LBHI and LBI

notwithstanding that LBHI and LBI are not named defendants in the Action and have no

payment obligations with respect to the Settlement.  The salient terms of the Settlement

Agreement, as applicable to LBHI, are as follows:[3]

- The Settlement is subject to an entry of an order in the Chapter 11 Cases granting relief from the automatic stay, to the extent applicable, to permit the Insurers to pay the Settlement Amount to Openwave as provided in the Settlement Agreement;

- Within 10 business days after entry of a final order by this Court, Insurers shall pay the Settlement Amount to Openwave; and

- Within five business days after receipt of the Settlement Amount, Openwave shall: (1) dismiss the Action with prejudice and (2) release any and all claims (i) that concern Openwave's LBI account, (ii) that Openwave brought in the Action, (iii) that related to any of the Claims asserted or facts alleged in the Action or the subject matter thereof, or (iv) that are based on the defense, settlement, or resolution of the action, which Claims Openwave ever had, now has, or hereafter may have against any and all of the Defendants (as defined in the Settlement Agreement), LBHI, and LBI.

---

[3] To the extent there is an inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control.

## Cause Exists to Grant the Relief Requested

A.      The Proceeds Are Not Property of the Estate

18.      Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate.  It is well settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code.  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988).  However, courts have distinguished between ownership of a *policy* and ownership of the *proceeds* of a policy.  While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds of such policy are not property of the bankruptcy estate.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*,

238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity

coverage were highly remote and therefore proceeds were not property of estate).

19.    In determining whether proceeds are property of the estate, courts review

the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. *See also In re*

*CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455

(Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must

be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the

pertinent contractual provisions under applicable state law").

20.    Here, the Policy contains an unambiguous priority of payments

endorsement that expressly subordinates the rights of the Debtors to proceeds payable under the

Policy to the rights of the Individual Defendants.  The priority of payment endorsements is an

enforceable contractual provision and should be upheld for the benefit of the Individual

Defendants as intended.  *See In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11,

2002) [Docket No. 3278] (holding that priority of payment provision was an enforceable

contractual right).[4]  In addition, if the Settlement Agreement is not implemented, the Debtors

will require coverage under the Policy in connection with the Action.  First, none of the Debtors

are named defendants in the Action.  Moreover, Openwave has agreed, in accordance with the

terms of the Settlement Agreement, to dismiss the Action with prejudice and to release any

claims that could have been brought against LBHI relating to Openwave's LBI account or the

claims in the Action.  As the court explained in *In re Laminate Kingdom LLC*:

> [T]he Court believes the depletion of proceeds to pay the [c]osts of [d]efense
> [i]ncurred by the officers and directors] does not diminish the protection afforded
> the estate's assets under the terms of the Policy.  The Policy's "Priority of
> Payments Endorsement" specifically requires that the proceeds be used *first* to

---

[4] A copy of the Court's bench ruling in *Enron* is attached hereto at Exhibit "C."

> pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy, which coverage includes the [officer's and director's costs of defense]. Then, only after such payments are made, and only if proceeds remain after payment of such [c]osts of [d]efense, will the Trustee or the estate be paid any proceeds. Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the [c]osts of [d]efense are paid.

No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008).

21.     Consistent with the purpose of such policies, the Debtors purchased the Policy primarily to provide insurance coverage to their officers and directors, including the Individual Defendants. *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). The Debtors' speculative rights to any residual proceeds, which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.     Cause Exists to Modify the Automatic Stay, to the Extent
       That it Applies, to Allow Payment of the Settlement Amount.

22.     Even if the proceeds from the Policy are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow for the payment of the Settlement Amount as required under the Policy. It is not uncommon for courts to grant stay relief to allow payment of settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary. *See Allied Digital*, 306 B.R. at 513.

23.     Allowing the Insurers to make payment of the Settlement Amount on behalf of the Individual Defendants will, in fact, benefit the Debtors' estates. The Action is highly complex. If the Action is not settled, it is foreseeable that a potential finding of

wrongdoing or liability against the Individual Defendants may be used, or attempted to be used,

to judicially prejudice or prosecute claims against the Debtors.

24.     Additionally, the Debtors believe that they have an obligation under their

by-laws to advance the settlement costs incurred by the Individual Defendants.  If the Insurers

are barred from advancing the Settlement Amount due to the enforcement of the automatic stay,

the Individual Defendants may seek to assert indemnification claims against the Debtors for such

amounts.  Consequently, payment of the Settlement Amount under the Policy will reduce or

eliminate the claims that the Individual Defendants could assert against the Debtors.

25.     Modifying the automatic stay will not harm the Debtors' estates.  As

explained above, the Debtors' rights to the proceeds are contractually subordinated to the rights

of the Individual Defendants pursuant to the priority of payments endorsements.  In addition, the

Action has been settled and all claims arising out of the allegations in the complaint or that could

have been asserted against LBHI relating to Openwave's LBI account will be released.  Thus, if

the Settlement Agreement is implemented, the Debtors will not need coverage with respect to the

Action.  Moreover, by modifying the automatic stay, and allowing the Insurers to pay the

Settlement Amount, LBHI will obtain the benefit of a release of "any and all claims (i) that

concern Openwave's LBI account, (ii) that Openwave brought in the Action, (iii) that related to

any of the Claims asserted or facts alleged in the Action or the subject matter thereof, or (iv) that

are based on the defense, settlement, or resolution of the action, which Claims Openwave ever

had, now has, or hereafter may have" without having to make any payment from its estate.

26.     Accordingly, there are no legal impediments by the Insurers under the

Policy with respect to making payment of the Settlement Amount on behalf of the Individual

Defendants.  Alternatively, if this Court finds that the Debtors have some interest in the proceeds

of the Policy, the Debtors submit that any such interest is nominal and in any event cannot be

determined until the Individual Defendants' losses have been quantified and paid.  Advancing

the Settlement Amount pursuant to the Policy, which represents less than one percent (1%) of the

Debtors' total coverage under its primary and excess D&O insurance coverage, is necessary to

minimize those losses.  Accordingly, cause exists to modify the automatic stay pursuant to

section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the Insurers to make

payment of the Settlement amount pursuant to the terms of the Settlement Agreement.

27.    It should be noted that in making this motion, neither the Debtors, the

Individual Defendants nor the Insurers are waiving any of their respective rights under the Policy

or any other insurance policy.  In addition, the Debtors are not seeking a determination of the

Insurers' obligation to pay any settlement costs on behalf of the Individual Defendants.  Rather,

the Debtors seek only the entry of an order modifying the automatic stay, to the extent

applicable, to allow the Insurers to make payment of the Settlement Amount on behalf of the

Individual Defendants.

### Notice

28.    No trustee has been appointed in these cases.  The Debtors have served

notice of this Motion in accordance with the procedures set forth in the amended order entered

on February 13, 2009 governing case management and administrative procedures for these cases

[Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) all parties who have requested notice

in these chapter 11 cases; and (vii) Chubb.  The Debtors submit that no other or further notice

need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: December 1, 2009
      New York, New York

                          /s/ Richard P. Krasnow
                          Richard P. Krasnow

                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone: (212) 310-8000
                          Facsimile: (212) 310-8007

                          Attorneys for Debtors
                          and Debtors in Possession

# EXHIBIT "A"

## (SETTLEMENT AGREEMENT)

## CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between (i) Plaintiff Openwave Systems Inc. ("Openwave"), and (ii) Defendants Richard S. Fuld, Jr., Michael L. Ainslie, Roland A. Hernandez, David Goldfarb, John F. Akers, Roger S. Berlind, Joseph M. Gregory, Thomas H. Cruikshank, Marsha Johnson Evans, Henry Kaufman, John D. Macomber, Thomas A. Russo, Christopher M. O'Meara, Melissa Conroy Whitney, and Tim Ford (collectively, "Defendants"). Openwave and Defendants are referred to collectively as the "Settling Parties."

This Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all claims that were or could have been brought by Openwave against, *inter alia*, Defendants, Lehman Brothers Holdings Inc. ("LBHI") or Lehman Brothers Inc. ("LBI") in *Openwave Systems Inc. v. Richard S. Fuld, Jr., et al.* (Case No. 08-05683), as well as any claims pending against Defendants, LBHI or LBI in the District Court or the Bankruptcy Court.

## I.    DEFINITIONS

A.    As used in this Agreement, the following capitalized terms have the meanings specified below.

1.    "Action" means the action entitled *Openwave Systems Inc. v. Richard S. Fuld, Jr., et al.* (Case No. 08-05683), pending in the District Court.

2.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

3.    "Chapter 11 Cases" means the voluntary cases commenced in the Bankruptcy Court by LBHI and certain of its subsidiaries under chapter 11 of title 11 of the United States Code, Case No. 08-13555 (JMP), *et seq.*

4.    "Claims" means any and all claims, demands, rights, liabilities, damages, penalties, costs, losses, indemnities, duties, obligations, rights, causes of action, or suits of any nature (including claims for costs, attorneys' fees or expenses), whether known or unknown, concealed or hidden, fixed or contingent, direct or indirect, anticipated or unanticipated, whether actually asserted or that might have been asserted, whether legal, equitable, contractual, statutory, or any other type, under the federal or state securities laws or under any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside of the United States.

5.    "Defendants" means Richard S. Fuld, Jr., Michael L. Ainslie, Roland A. Hernandez, David Goldfarb, John F. Akers, Roger S. Berlind, Joseph M. Gregory, Thomas H. Cruikshank, Marsha Johnson Evans, Henry Kaufman, John D. Macomber, Thomas A. Russo, Christopher M. O'Meara, Melissa Conroy Whitney, and Tim Ford.

6.    "District Court" means the United States District Court for the Northern District of California, San Francisco Division.

7. "Effective Date" means the date on which Openwave receives the Settlement Amount.

8. "Final Order" means an order by the Bankruptcy Court that is either finally affirmed on appeal, or is no longer subject to appeal and the time for any petition for re-argument, appeal or review, by leave, certiorari or otherwise, has expired.

9. "Insurer" means Federal Insurance Company and/or XL Specialty Insurance Company. "Insurers" means each of them.

10. "Openwave Released Claims" means any and all Claims (i) that concern Openwave's LBI account, (ii) that Openwave brought in the Action, (iii) that relate to any of the Claims asserted or facts alleged in the Action or the subject matter thereof, or (iv) that are based on the defense, settlement or resolution of the Action, which Claims Openwave ever had, now has, or hereafter may have against Releasees.

11. "Releasees" means, in any capacity:

    (a) Defendants;

    (b) Defendants' past, present, and future attorneys, accountants, agents, insurers, spouses, children, heirs, successors, assigns, trusts, corporations, companies, partnerships, affiliates, or any entity in which they have a controlling interest;

    (c) LBHI, LBI, and all of their respective past, present and future employees, officers, directors, attorneys, accountants, insurers, agents, and direct or indirect parents, subsidiaries and/or affiliates; and

    (d) Each of the predecessors, heirs, successors, assignors and assigns, representatives, bankruptcy estates, court-appointed trustees and administrators of each of the persons or entities in (a), (b) and/or (c) and their respective attorneys, accountants, insurers and agents.

12. "Releasors" means Openwave and each of its predecessors, successors, affiliates, assignors and assigns, direct or indirect parents, subsidiaries and/or affiliates, and their respective directors, officers, employees, agents, representatives, and administrators.

13. "Settlement" means the settlement of the Action, as embodied in this Agreement.

14. "Settlement Amount" means one million, six hundred and seventy-five thousand dollars ($1,675,000.00).

15. "SIPA Proceeding" means the proceeding commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI, Case No. 08-1420 (JMP) SIPA, which proceeding is now pending before the Bankruptcy Court, with James W. Giddens (the "LBI Trustee") appointed trustee for LBI pursuant to SIPA.

## II.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Settling Parties that, subject to the approval of this Agreement by the Bankruptcy Court, all claims in the Action shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, as follows:

### A.    Payment and Dismissal of the Action; Bankruptcy Court Approval

1.    The Settlement is subject to the Bankruptcy Court entering an order in the Chapter 11 Cases authorizing relief from the automatic stay, to the extent applicable, to permit Insurer to pay the Settlement Amount to Openwave as provided herein. Should such authorization be withheld, the Agreement and the Settlement will be deprived of all legal effect, and the Settling Parties will be returned to their respective positions as of October 18, 2009.

2.    Upon execution of this Agreement by each of the Settling Parties, Defendants shall take all reasonable steps to cause LBHI to file a motion in the Chapter 11 Cases as promptly as possible seeking Bankruptcy Court approval consistent with section II(A)(1) of this Agreement.

3.    Upon entry of a Final Order by the Bankruptcy Court consistent with the foregoing, Defendants shall take all reasonable steps to cause Insurer to pay the Settlement Amount to Openwave. Defendants represent and warrant that they consulted with each of Insurers before entering into this Agreement and that Insurers have agreed with Defendants to the terms of this Agreement, including the terms regarding payment of the Settlement Amount.

4.    Openwave acknowledges that it is responsible for the payment of any applicable taxes related to its receipt of the Settlement Amount.

5.    Within ten business days of the Final Order, Insurer shall pay the Settlement Amount to Openwave, via check or wire transfer. If payment is made by wire transfer, it will be as follows:

To: Silicon Valley Bank, San Jose, 3003 Tasman Drive, Santa Clara, CA 95054

Routing & Transit #: 121140399.

For Credit Of: Openwave Systems Inc.

Address: 2100 Seaport Blvd., Redwood City, CA 94063

Credit Account #: 3300657950

By Order of: _____ [name of sender]

If the payment is via international wire transfer, then Insurer shall also include Swift Code SVBKUS6S.

6.      Within five business days after receipt of the Settlement Amount, Openwave shall dismiss the Action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1) by filing a notice of dismissal in the form attached as Exhibit A hereto.

7.      Within five business days after receipt of the Settlement Amount, Openwave shall dismiss and/or withdraw, with prejudice, all claims (including proofs of claim) against any and all of the Defendants, LBI and/or LBHI, whether pending in the Bankruptcy Court or otherwise, as set forth on Schedule 1 attached hereto.

8.      Within five business days after receipt of the Settlement Amount, any proofs of claim identified by LBHI or the LBI Trustee, on behalf of LBI, including but not limited to those listed on Schedule 1 attached hereto, that have been filed in the Chapter 11 Cases and/or in the SIPA Proceeding by Openwave seeking damages arising from or relating to the claims resolved by this Settlement will be deemed disallowed and expunged from the applicable claims register (the "Claim Disallowance"). Such Claim Disallowance shall occur upon notice by LBHI or the LBI Trustee, on behalf of LBI, to their respective claims agent.

**B.      Mutual Releases**

1.      Upon the Effective Date, Releasors shall be deemed to have, and shall have, fully, finally and forever released, relinquished, and discharged all Openwave Released Claims against Releasees.

2.      Upon the Effective Date, Defendants shall be deemed to have, and shall have, fully, finally, and forever released, relinquished, and discharged Openwave, and all of its past and present officers, employees, agents, attorneys, and representatives, from any and all Claims based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Action, or otherwise related to or arising from any of the Claims asserted or facts alleged in the Action, the subject matter thereof, or Openwave's LBI account.

3.      Openwave warrants and represents that it is unaware of any Claims that it has against Defendants, LBI or LBHI other than those it brought in the Action or as set forth in Schedule 1 attached hereto.

**C.      Waiver of Statutory Provisions and Unknown Claims**

1.      The Settling Parties expressly waive the provisions, rights, and benefits of any statutory provision or common law rule that provides, in sum or substance, that a release does not extend to claims that a releasing party does not know or expect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any of the other parties. With respect to sections II(B)(1) and II(B)(2) of this Agreement, each Settling Party expressly waives the provision of California Civil Code Section 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO
CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR

SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

2.    The Settling Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those that any of them or their counsel now knows or believes to be true with respect to the subject matter of the Claims released in sections II(B)(1) and II(B)(2) or otherwise. However, upon the Effective Date, the Settling Parties each shall have expressly, fully, finally, and forever settled and released any and all Claims as set forth in sections II(B)(1) and II(B)(2), whether known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

**D.    Confidentiality**

1.    The Settling Parties and their counsel agree that, until this Agreement is presented to the Bankruptcy Court, the terms and conditions of this Agreement and the Settlement are strictly confidential. No party shall disclose, discuss or reveal the terms of this Agreement or the Settlement to any other persons, entities, or organizations without the prior written consent of all Settling Parties.

2.    Notwithstanding the foregoing, nothing in this Agreement shall prohibit the Settling Parties from: (a) disclosing the fact that the matter has been resolved on terms satisfactory to all Settling Parties, without otherwise disclosing such terms; (b) disclosing to their agents such information as is reasonably necessary to conduct business and comply with the law, and/or tax and accounting requirements, so long as said agents have agreed to be bound by the terms of this article prior to such disclosure, or are otherwise bound to similar obligations of confidentiality pursuant to professional undertakings; or (c) making such disclosures as required by law, including regulatory disclosures or disclosures in response to a valid subpoena or other lawful process, provided that if any of the Settling Parties or any of its counsel are subpoenaed or otherwise lawfully required to reveal the terms of this Agreement before it is filed with the Bankruptcy Court, such Settling Party shall give prompt written notice of such subpoena or other lawful process to the other Settling Party. If any Settling Party discloses this Agreement to any of the aforementioned individuals to whom disclosure is permitted, that party shall specifically advise such individuals of this confidentiality provision and expressly condition the disclosure upon the recipient's agreement to maintain the confidentiality of this Agreement.

**E.   Miscellaneous Provisions**

1.   Defendants, LBHI and LBI deny all charges of wrongdoing, violation of law, or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants enter into this Agreement solely to eliminate the uncertainties, burden, and expense of further litigation.  This Agreement shall in no event be construed as or deemed to be evidence of an admission or concession by Defendants, LBHI or LBI with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.  Nor shall it be deemed to be an admission or concession by any of the Defendants, LBHI or LBI of personal jurisdiction over them in California.

2.   In consideration of the mutual promises contained herein, Openwave further covenants to not sue, institute, continue, participate in, cooperate with, facilitate, encourage, or share information in connection with any claim, demand, suit, proceeding, arbitration, mediation, alternative dispute resolution or any action or proceeding in law or equity ("Proceeding") against Defendants, LBI, or LBHI, in any way relating to or arising from any act, omission or other matter concerning the Openwave Released Claims that occurred prior to the Effective Date.  Provided, however, that this covenant shall not prevent Openwave from making any disclosures as required by law, including regulatory disclosures or disclosures in response to a valid subpoena or other lawful process, provided that if Openwave or its counsel are subpoenaed or otherwise lawfully required to participate in a Proceeding against the Defendants, LBI or LBHI, Openwave or its counsel shall give written notice of such subpoena or other lawful process to the other Settling Party within five calendar days of its receipt.

3.   Openwave agrees not to solicit or encourage any other persons, whether individual or corporate, to commence any Proceeding against Releasees concerning the Openwave Released Claims.

4.   Openwave shall not disparage, in any way, Defendants, LBI or LBHI.

5.   The Settling Parties agree that the terms of this Agreement were negotiated in good faith by the Settling Parties on an arms' length basis, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

6.   This Agreement may be amended or modified only by a written instrument signed by or on behalf of all of the Settling Parties.

7.   This Agreement constitutes the entire agreement between Openwave and Defendants, and no representations, warranties, or inducements have been made to any Settling Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in this Agreement.  It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be materially other than or different from the facts now known to each Settling Party or believed by such Settling Party to be true; each Settling Party therefore expressly assumes the risk of the facts or law turning out to be so

different, and agrees that this Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

8.    Without in any way limiting the scope or effect of the Releases in II(B)(1) and II(B)(2), above, each Settling Party shall bear all of his, her or its own costs, attorneys' fees, and experts' fees incurred in connection with the Action and Settlement, subject to any applicable insurance or indemnification.  In the event that any Settling Party takes any action to enforce any of its, his or her rights under this Agreement, the prevailing party in any judicial proceeding shall be entitled to recover all reasonable costs and expenses of doing so, including reasonable attorneys' fees, expert's fees, and costs.

9.    Each Settling Party represents that it, he or she has the full power and authority to enter into this Agreement; that, other than the Bankruptcy Court's authorization of the payment of the Settlement Amount as provided for herein, there are no other persons or entities whose consent to this Agreement or whose joinder herein is necessary to make fully effective the provisions of this Agreement; that this Agreement does not and will not interfere with any other agreement to which it, he or she is a party; and that it, he or she will not enter into any agreement the execution and/or performance of which would violate or interfere with this Agreement.

10.    The person executing this Agreement on behalf of Openwave warrants and represents that he or she is authorized and legally empowered to execute this Agreement on behalf of Openwave.

11.    Regardless of which Settling Party may have drafted this Agreement or any portion thereof, this Agreement shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Settling Party on the ground that the Settling Party or its counsel drafted the Agreement.

12.    Each Settling Party warrants and represents that, as of the Effective Date, he/she/it has not transferred or assigned, and will not transfer or assign, all or any part of the Claims that are released hereby.

13.    A waiver by any Settling Party hereto of a particular right under this Agreement or of a breach or default in connection with any provision of this Agreement shall not be deemed to be a waiver of any other right or subsequent default or breach of that same or any other provision of this Agreement.

14.    All covenants, representations, warranties and agreements made under this Agreement or pursuant hereto or in connection with the transactions contemplated hereby shall survive the dismissal of the Action.

15.    The Settling Parties intend that each of the provisions in the Agreement be independent and separate provisions, severable and divisible from the other provisions.  Therefore, in the event that any particular provision other than sections II(A)(1), II(A)(3), II(A)(5), II(A)(6), II(A)(7), II(B)(1), II(B)(2), or II(E)(10) is deemed to be unenforceable by a court of competent jurisdiction, the Settling Parties agree that such provision

8

should be deemed to be severed from this Agreement, and all remaining provisions shall remain in full force and effect.

16. This Agreement may be signed in counterparts, or duplicate originals, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may be original or may be provided by facsimile or pdf.

17. Each Settling Party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

18. The District Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and the Settling Parties submit to the jurisdiction of the District Court for purposes of implementing and enforcing this Agreement. Such submission to the jurisdiction of the District Court shall not be deemed a waiver of personal jurisdiction defenses for any purpose other than implementation and enforcement of this Agreement.

19. This Agreement and the rights and obligations of the Settling Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**PLAINTIFF OPENWAVE SYSTEMS INC.**

Dated: November _10_, 2009

Name: Karen J. Willem
Title: CFO & SVP

**DEFENDANTS**

Dated: November ___, 2009

_____
Richard S. Fuld, Jr.

Dated: November ___, 2009

_____
Michael L. Ainslie

Dated: November ___, 2009

_____
Roland A. Hernandez

8

should be deemed to be severed from this Agreement, and all remaining provisions shall remain in full force and effect.

16. This Agreement may be signed in counterparts, or duplicate originals, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may be original or may be provided by facsimile or pdf.

17. Each Settling Party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

18. The District Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and the Settling Parties submit to the jurisdiction of the District Court for purposes of implementing and enforcing this Agreement. Such submission to the jurisdiction of the District Court shall not be deemed a waiver of personal jurisdiction defenses for any purpose other than implementation and enforcement of this Agreement.

19. This Agreement and the rights and obligations of the Settling Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California without giving effect to any choice of law rules or principles.


IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**PLAINTIFF OPENWAVE SYSTEMS INC.**

Dated: November ___, 2009

Name:
Title:

**DEFENDANTS**

Dated: November 16, 2009

Richard S. Fuld, Jr.


Dated: November ___, 2009

Michael L. Ainslie


Dated: November ___, 2009

Roland A. Hernandez

8

should be deemed to be severed from this Agreement, and all remaining provisions shall remain in full force and effect.

16. This Agreement may be signed in counterparts, or duplicate originals, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may be original or may be provided by facsimile or pdf.

17. Each Settling Party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

18. The District Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and the Settling Parties submit to the jurisdiction of the District Court for purposes of implementing and enforcing this Agreement. Such submission to the jurisdiction of the District Court shall not be deemed a waiver of personal jurisdiction defenses for any purpose other than implementation and enforcement of this Agreement.

19. This Agreement and the rights and obligations of the Settling Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**PLAINTIFF OPENWAVE SYSTEMS INC.**

Dated: November ___, 2009

_____
Name:
Title:

**DEFENDANTS**

Dated: November ___, 2009

_____
Richard S. Fuld, Jr.

Dated: November 13, 2009

_____
Michael L. Ainslie

Dated: November 13, 2009

_____
Roland A. Hernandez

Dated: November ⅃⅃ , 2009

_David Goldfarb_ (signature)
David Goldfarb

Dated: November ___, 2009

_____
John F. Akers

Dated: November ___, 2009

_____
Roger S. Berlind

Dated: November ___, 2009

_____
Joseph M. Gregory

Dated: November ___, 2009

_____
Thomas H. Cruikshank

Dated: November ___, 2009

_____
Marsha Johnson Evans

Dated: November ___, 2009

_____
Henry Kaufman

Dated: November ___, 2009

_____
John D. Macomber

Dated: November ___, 2009

_____
Thomas A. Russo

9

Dated: November ___, 2009

_____
David Goldfarb

Dated: November 23, 2009

_____
John P. Akers

Dated: November ___, 2009

_____
Roger S. Berlind

Dated: November ___, 2009

_____
Joseph M. Gregory

Dated: November ___, 2009

_____
Thomas H. Cruikshank

Dated: November ___, 2009

_____
Marsha Johnson Evans

Dated: November ___, 2009

_____
Henry Kaufman

Dated: November ___, 2009

_____
John D. Macomber

Dated: November ___, 2009

_____
Thomas A. Russo

Dated: November ___, 2009

_____
David Goldfarb

Dated: November ___, 2009

_____
John F. Akers

Dated: November 13, 2009

_____
Roger S. Berlind

Dated: November ___, 2009

_____
Joseph M. Gregory

Dated: November ___, 2009

_____
Thomas H. Cruikshank

Dated: November ___, 2009

_____
Marsha Johnson Evans

Dated: November 13, 2009

_____
Henry Kaufman

Dated: November 13, 2009

_____
John D. Macomber

Dated: November ___, 2009

_____
Thomas A. Russo

Dated: November ___, 2009

_____
David Goldfarb

Dated: November ___, 2009

_____
John F. Akers

Dated: November ___, 2009

_____
Roger S. Berlind

Dated: November 12, 2009

_____
Joseph M. Gregory

Dated: November ___, 2009

_____
Thomas H. Cruikshank

Dated: November ___, 2009

_____
Marsha Johnson Evans

Dated: November ___, 2009

_____
Henry Kaufman

Dated: November ___, 2009

_____
John D. Macomber

Dated: November ___, 2009

_____
Thomas A. Russo

9

Dated: November \_\_\_, 2009

_____
David Goldfarb

Dated: November \_\_\_, 2009

_____
John F. Akers

Dated: November \_\_\_, 2009

_____
Roger S. Berlind

Dated: November \_\_\_, 2009

_____
Joseph M. Gregory

Dated: November 13 , 2009

_____
Thomas H. Cruikshank

Dated: November \_\_\_, 2009

_____
Marsha Johnson Evans

Dated: November \_\_\_, 2009

_____
Henry Kaufman

Dated: November \_\_\_, 2009

_____
John D. Macomber

Dated: November \_\_\_, 2009

_____
Thomas A. Russo

Dated: November ___, 2009

_____
David Goldfarb


Dated: November ___, 2009

_____
John F. Akers


Dated: November ___, 2009

_____
Roger S. Berlind


Dated: November ___, 2009

_____
Joseph M. Gregory


Dated: November ___, 2009

_____
Thomas H. Cruikshank


Dated: November 13, 2009

_____
Marsha Johnson Evans


Dated: November ___, 2009

_____
Henry Kaufman


Dated: November ___, 2009

_____
John D. Macomber


Dated: November ___, 2009

_____
Thomas A. Russo

Dated: November ___, 2009

_____
David Goldfarb

Dated: November ___, 2009

_____
John F. Akers

Dated: November ___, 2009

_____
Roger S. Berlind

Dated: November ___, 2009

_____
Joseph M. Gregory

Dated: November ___, 2009

_____
Thomas H. Cruikshank

Dated: November ___, 2009

_____
Marsha Johnson Evans

Dated: November ___, 2009

_____
Henry Kaufman

Dated: November ___, 2009

_____
John D. Macomber

Dated: November _10_, 2009

_____
Thomas A. Russo

10

Dated: November _10_, 2009

Christopher M. O'Meara

Dated: November ___, 2009

Tim Ford

Dated: November ___, 2009

Melissa Conroy Whitney

10

Dated: November ___, 2009

_____
Christopher M. O'Meara

Dated: November 17, 2009

_____
Tim Ford

Dated: November 17, 2009

_____
Melissa Conroy Whitney

# EXHIBIT A

RICHARD R. PATCH (State Bar No. 88049)
HOWARD A. SLAVITT (State Bar No. 172840)
NORENE M. LEW (State Bar No. 184504)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California  94111-4213
Telephone:  415.391.4800
Facsimile:  415.989.1663
Email:    ef-rrp@cpdb.com,
            ef-has@cpdb.com,
            ef-nml@cpdb.com

Attorneys for Plaintiff
OPENWAVE SYSTEMS INC.,
a Delaware corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| OPENWAVE SYSTEMS INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>            v.<br><br>RICHARD S. FULD, JR., MICHAEL L. AINSLIE, ROLAND A. HERNANDEZ, DAVID GOLDFARB, JOHN F. AKERS, ROGER S. BERLIND, JOSEPH M. GREGORY, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, HENRY KAUFMAN, JOHN D. MACOMBER, THOMAS A. RUSSO, CHRISTOPHER M. O'MEARA, MICHAEL GELBAND, ALEX KIRK, MELISSA CONROY WHITNEY, TIM FORD, and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. CV 08-05683 SI<br><br>**NOTICE OF DISMISSAL WITH PREJUDICE** |

1

**NOTICE OF DISMISSAL WITH PREJUDICE**

1    Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiff Openwave Systems

2    Inc., by and through its counsel, hereby voluntarily dismisses all claims in the above-captioned

3    action. The claims, and the entire action, are hereby dismissed as to all defendants *with prejudice*,

4    with all parties to bear their own costs.

5

6    Dated: _____          COBLENTZ, PATCH, DUFFY & BASS LLP

7

8                                           By:    _____
                                                              /s/
9                                                  Howard A. Slavitt
                                                   *Attorneys for Plaintiff Openwave Systems Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 • FAX 415.989.1663

**NOTICE OF DISMISSAL WITH PREJUDICE**

## Schedule 1

Filed: USBC – Southern District of New York
SIPC v. Lehman Brothers Inc.
08-01420 (JMP)

1.    Proof of Claim # 000001770

2.    Proof of Claim # 000002401

3.    SIPC Customer Claim # 900002209

4.    SIPC Customer Claim # 900002210

5.    SIPC Customer Claim # 900002211

6.    SIPC Customer Claim # 900003476

## EXHIBIT "B"

### (2007-2008 D&O POLICY)

**Policy Number:**    **ELU097792-07**  
**Renewal of Number**    ELU092534-06

☐ **Greenwich Insurance Company**  
☒ **XL Specialty Insurance Company**  
Members of the XL America Companies

---

**MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE POLICY DECLARATIONS**

Executive Offices  
70 Seaview Avenue  
Stamford, CT 06902-6040  
Telephone 877-953-2636

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY PROVIDES FOR THE INSURER TO DEFEND ANY CLAIM MADE AGAINST AN INSURED EXCEPT UNDER THOSE CERTAIN SPECIFIED CIRCUMSTANCES WHERE THE INSURED CHOOSES TO PROVIDE ITS OWN DEFENSE. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

---

**Item 1.**    **Name and Mailing Address of Parent Company:**

Lehman Brothers Holdings Inc.  
1301 Avenue of the Americas  
New York, NY 10019

---

**Item 2.**    **Policy Period:**    **From:**    May 16, 2007    **To:**    May 16, 2008

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

---

**Item 3.**    **Limit of Liability:**

$20,000,000 Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**    **Retentions:**

| | |
|---|---|
| $0 | each **Insured Person** under INSURING AGREEMENT I (A) |
| $10,000,000 | each **Claim** under INSURING AGREEMENT I (B) |
| N/A | each **Claim** under INSURING AGREEMENT I (C) |

---

**Item 5.**    **Optional Extension Period:**

Length of Optional Extension Period:

(Either one year or two years after the end of the **Policy Period**, at the election of the **Parent Company**)

Premium for Optional Extension Period:    One Year:    $3,113,625.00

Two Years:    N/A

---

**Item 6.**    **Pending and Prior Litigation Date:**    March 31, 1989

---

**Item 7.**    **Notices required to be given to the Insurer must be addressed to:**

Executive Liability Underwriters  
One Constitution Plaza, 16th Floor  
Hartford, CT 06103  
Toll Free Telephone: 877-953-2636

---

DO 70 00 11 01

## MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT POLICY DECLARATIONS

---

| Item 8. | **Premium:** | |
|---|---|---|
| | Taxes, Surcharges or Fees: | $0.00 |
| | Total Policy Premium: | $2,075,750.00 |

---

**Item 9.**   **Policy Forms and Endorsements Attached at Issuance:**
DO 71 00 09 99   XL 80 39 04 05   XL 80 24 03 03   DO 85 01 01 02   DO 85 02 02 00   DO 96 04 02 00
DO 96 02 02 00   DO 85 00 05 00   DO 80 142 10 01   DO 80 266 03 04   DO 80 122 06 01   DO 80 44 07 00
DO 80 48 07 00   DO 80 353 05 06   DO 83 33 08 01   XL 80 22 05 02   DO 80 286 08 04   DO 80 354 05 06
DO 80 02 03 00   DO 80 118 05 01   Manuscript 1236 08 04   Manuscript 1150 06 04
Manuscript 6189 05 06   Manuscript 1034 02 04   Manuscript 1151 06 04   Manuscript 6191 05 06
Manuscript 1102 05 04   Manuscript 6474 09 06   DO 83 134 01 07   Manuscript 6192 05 06
Manuscript 6193 05 06   Manuscript 87 01 01   Manuscript 6190 05 06   Manuscript 6473 09 06
Manuscript 7142 05 07   Manuscript 7141 05 07

Countersigned:   _____   By:   _____
                          Date                              Authorized Representative

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

*Nicholas M. Brown, Jr.*                    *Theresa M. Morgan*

Nicholas M. Brown, Jr.                     Theresa M. Morgan
President                                          Secretary

**Greenwich Insurance Company**

*Nicholas M. Brown, Jr.*                    *Theresa M. Morgan*

Nicholas M. Brown, Jr.                     Theresa M. Morgan
President                                          Secretary

**XL Specialty Insurance Company**

DO 70 00 11 01                                                                          Page 2 of 2

## POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You
should know that, effective November 26, 2002, under your existing coverage,
any losses caused by certified acts of terrorism would be partially reimbursed by
the United States under a formula established by federal law. Under this formula,
the United States pays 90% of covered terrorism losses exceeding the statutorily
established deductible paid by the insurance company providing the coverage.
The portion of your annual premium that is attributable to coverage for acts of
terrorism is: $ waived.  Any premium waiver is only valid for the current Policy
Period.

However, the applicable federal law described above is set to expire on December
31, 2007 and it is unclear if such statutory provision will be extended past such
date.  In the event such federal law expires without such extension, any losses
caused by certified acts of terrorism would not be partially reimbursed by the
United States.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT
UNDER THE TERRORISM RISK INSURANCE ACT OF
2002, ANY LOSSES CAUSED BY CERTIFIED ACTS OF
TERRORISM UNDER MY POLICY COVERAGE WILL BE
PARTIALLY REIMBURSED BY THE UNITED STATES
AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY
PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer:   **XL Specialty Insurance Company**
Policy Number:     **ELU097792-07**

# IN WITNESS ENDORSEMENT

XL SPECIALTY INSURANCE COMPANY

ADMINISTRATIVE OFFICE:    SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040

STATUTORY HOME OFFICE:    1201 NORTH MARKET STREET
SUITE 501
WILMINGTON, DE 19801

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
John R. Glancy
President

_____
Kenneth P. Meagher
Secretary

IL MP 9104 0406 XLS

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# PRIVACY POLICY

The XL America, Inc. insurance group ("We" or "Our Group"), respects the privacy of all personal information. Thus, the information We collect from our customers, or potential customers, is treated with the highest degree of privacy.

We have developed a Privacy Policy for Our Group that:
1) ensures the security of your information; and
2) complies with state and federal privacy laws.

The term "personal information" includes all information we obtain about a customer and maintain in our files. All persons with access to personal information are required to follow this policy.

## Our Privacy Promise

Your privacy rights are important to us. Analysis of your private information allows us to provide to you excellent service and products. Your trust in us depends upon the security and integrity of our records. Thus, We promise to:

1) Follow strict security standards. This will protect any information you share with us, or that we receive about you.
2) Verify and exchange data regarding your credit and financial status only for the purposes of: underwriting; policy administration; or risk management. We will obtain only reputable references and services.
3) Collect and use the least amount of information necessary to:
   a. advise you and deliver excellent service and products; and
   b. conduct our business.
4) Train our employees to securely handle private information. We will only permit authorized employees to have access to such information.
5) Not disclose data about you or your business to any organization outside Our Group or to third party providers unless:
   a. we disclose to you our intent to do so; or
   b. we are required to do so by law.
6) Not disclose medical information unless:
   a. you give us written consent to do so; or
   b. We disclose for any exception provided in the law.
7) Attempt to keep our records complete and exact.
8) Advise you how and where to access your account (unless prohibited by law).
9) Advise you how to correct errors or make changes to your account.
10) Inspect our procedures to ensure your privacy.

## Collection and Sources of Information

We collect only the personal information needed to:
1) determine suitability for a product or service;
2) manage the product or service; and
3) advise customers about our products and services.

The information we collect comes from the following sources:
- **Submission** – In the application, you provide: your name; address; phone number; e-mail address; and other types of private information.
- **Quotes** – We collect information to determine:
  1) your eligibility for an insurance product; and
  2) your coverage cost.

The data we collect will vary with the type of insurance you seek.
- **Transactions** – We maintain records of all transactions with Our Group and our third party providers. Our records include:

1)   your coverage choices;
2)   premiums; billing; and payment records,
3)   claims history; and
4)   other data related to your account.

- **Claims** – We maintain records on any claims that are made under your policies. The investigation of a claim involves collection of a broad range of information. It also involves many issues, some of which do not directly involve you. We will share with you facts that we collect about your claim; unless prohibited by law. The process of claim investigation also involves advice; opinions; and comments from many people. These may include attorneys and experts. This will help us determine how best to handle your claim. To protect the legal and privileged aspects of opinions and advice, we will not disclose this information to you.
- **Credit and Financial Reports** – We may receive your credit history. This is to support information you provided during the submission and quote processes. This history will help to underwrite your coverage.

## Retention and Correction of Personal Information

We retain personal information only as long as required by law; or as required by our business methods. If we become aware that any information may be incorrect, we will make reasonable effort to correct it.

## Storage of Personal Information

Safeguards are in place to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We do not share personal information with a third party outside of Our Group for marketing purposes. This is true unless such sharing is permitted by law. Information may be shared with a third party for necessary servicing of the product. It may also be disclosed for other business reasons as permitted by law.

We do not share personal data outside of Our Group for servicing or joint marketing reasons. We will only disclose such data when a contract containing non-disclosure language has been signed by us and the third party.

Unless a consumer consents, we do not disclose "consumer credit report" type information outside of Our Group. "Consumer credit report type information" means such things as: net worth; credit worthiness; hobbies (piloting, boating, etc.); solvency, etc.

We also do not disclose outside of Our Group personal information for use in marketing. We may share information within Our Group regarding our experience and dealings with the customer.

We may disclose private information about a customer as allowed or otherwise required by law. The law allows us to share a customer's financial data within Our Group for marketing purposes. The law does not allow customers to limit or prevent such disclosures.

We may also disclose personal information about you or your business to:
- your independent agent or broker;
- an independent claim adjuster; investigator; attorney; or expert;
- persons or groups that conduct scientific studies. This includes actuaries and accountants;
- a medical care facility or professional to verify coverage for a covered person;
- an insurance support group;
- another insurer if to prevent fraud;
- another insurer to properly underwrite a risk;
- insurance regulators;
- governmental authorities pursuant to law;
- an authority in response to a valid administrative or judicial order. This includes a warrant or subpoena;
- a party for the following purposes regarding a book of business: sale; transfer; merger; or consolidation. This applies whether the transaction is proposed or complete;

- a professional peer review group.  This includes reviewing the service or conduct of medical care facilities or personnel;
- a covered person for providing the status of a transaction; or
- any of the following: a lienholder; mortgagee; assignee; lessor; or other person of record having a legal interest in the policy.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer; unless consent is obtained from that customer.  However, such consent shall not be prohibited, limited or sought for certain insurance functions.  This includes, but is not limited to:
- a.  claims administration;
- b.  fraud prevention;
- c.  underwriting; policy placement or issuance; loss control or auditing.

## Access to Your Information

The following persons will have access to personal information we collect:
employees of Our Group and third party service providers.  Information will only be collected as is needed in transactions with you.

## Violation of the Privacy Policy

Any person violating this Policy will be subject to discipline. This may include termination.


For questions regarding this privacy statement, please contact your broker.

# MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

## I.    INSURING AGREEMENTS

(A)    The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act**, except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)    The Insurer shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act**.

(C)    The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Company Wrongful Act**.

## II.    DEFINITIONS

(A)    **"Application"** means:

    (1)    the application attached to and forming part of this Policy; and

    (2)    any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)    **"Change In Control"** means:

    (1)    the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

    (2)    the acquisition by any person, entity or affiliated group of persons or entities of the right to vote, select or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)    the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)    **"Claim"** means:

    (1)    a written demand for monetary or non-monetary relief;

    (2)    any civil proceeding in a court of law or equity, or arbitration;

    (3)    any criminal proceeding which is commenced by the return of an indictment; and

    (4)    a formal civil, criminal, administrative regulatory proceeding or formal investigation of an **Insured Person** or the **Company** (but with respect to the **Company** only for a **Company Wrongful Act**) which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such **Insured Person** or the **Company** as a person or entity against whom a proceeding as described in (C)(2) or (3) above may be commenced, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body having jurisdiction over any **Employment Practices Wrongful Act.**

(D)    "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to GENERAL CONDITIONS VI (D).

(E)    "**Company Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the **Company** in connection with a **Securities Claim**.

(F)    "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers or employees.

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1)    wrongful termination of employment whether actual or constructive;

    (2)    employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status;

    (3)    sexual or other harassment in the workplace; or

    (4)    wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)    "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act.**

(I)    "**Insured**" means the **Insured Persons** and the **Company.**

(J)    "**Insured Person**" means:

    (1)    any past, present or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2)    any past, present or future employee of the **Company** to the extent any **Claim** is a **Securities Claim**;

    (3)    an individual identified in (J)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**;

    (4)    any individual identified in (J)(1) above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

(5)    the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any **Claim** solely in their capacity as a spouse of such persons and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (J)(1), (2), (3), (4) or (5) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** or **Employment Practices Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(K)    "**Interrelated Wrongful Acts**" means any **Wrongful Act, Company Wrongful Act,** or **Employment Practices Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(L)    "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary,** during any time in which the **Parent Company,** either directly or through one or more **Subsidiary(s)**;

(1)    owns or controls at least thirty three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company,** regardless of the name or title by which such position is designated, of a **Joint Venture;** or

(2)    has the right, by contract, ownership of securities or otherwise, to elect, appoint or designate at least thirty three (33%) of those persons described in (L)(1) above.

(M)    "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:

(1)    the multiplied portion of any damage award;

(2)    fines, penalties or taxes imposed by law; or

(3)    matters which are uninsurable under the law pursuant to which this Policy is construed.

**NOTE:** With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the **Insured,** punitive damages are insurable under applicable law the Insurer will not dispute the written opinion of counsel for the **Insured.**

(N)    "**Non-Profit Entity**" means a corporation or organization other than the **Company,** which is exempt from taxation under Section 501(c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(O)    "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(P)    "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(Q)    "**Securities Claim**" means a **Claim** made against an **Insured** for:

(1)    any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

(2)    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the **Company**, whether such purchase, sale or offer involves a transaction with the **Company or** occurs in the open market.

(R)    "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(s)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(S)    "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

(1)    **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

(2)    **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**; or

(3)    **Insured Person** of the **Company**, who at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**.

## III.    EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**, or with respect to INSURING AGREEMENT (C), the **Company**:

(A)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (A) will not apply to any allegations of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**;

(B)    for any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste. With respect to a **Claim** made under INSURING AGREEMENT (A) only, this EXCLUSION (B) will not apply to a **Claim** unless a court of competent jurisdiction specifically determines the **Company** is not permitted to indemnify the **Insured Person**;

**NOTE:** EXCLUSIONS (A) and (B) above will not apply with respect to a **Securities Claim** brought by a security holder of the **Company**, or a derivative action brought by or on behalf of, or in the name or right of, the **Company**, and brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, an **Insured**.

(C)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation;

(D)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth in ITEM 6 of the Declarations;

(E)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, Directors and Officers liability policy or similar policy;

(F)    brought about or contributed to in fact by any:

    (1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

    (2)    profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled;

    as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(G)    by, on behalf of, or at the direction of the **Company**, except and to the extent such **Claim**:

    (1)    is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of an **Insured Person** or the **Company**; or

    (2)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company**;

(H)    by, on behalf of, at the direction of or in the name or right of any **Non-Profit Entity** or **Joint Venture** against an **Insured Person** for a **Wrongful Act** or **Employment Practices Wrongful Act** while acting in his or her capacity as a director, officer, trustee, regent or governor of such, or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated; or

(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in their capacity as a **Insured Person** of any entity other than the **Company**, **Non-Profit Entity** or **Joint Venture**.

No conduct of any **Insured Person** will be imputed to any other **Insured** to determine the application of any of the above EXCLUSIONS.

## IV.    LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer shall pay the amount of **Loss** in excess of the applicable Retention(s) set forth in ITEM 4 of the Declarations up to the Limit of Liability set forth in ITEM 3 of the Declarations.

(B)    The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(C)     With respect to the **Company's** indemnification of its **Insured Persons**, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the **Parent Company**, each **Subsidiary** and each **Non-Profit Entity** or **Joint Venture**, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(D)     The Retention applicable to INSURING AGREEMENT (B) shall apply to any **Loss** as to which indemnification by the **Company**, **Non-Profit Entity** or **Joint Venture** is legally permissible, whether or not actual indemnification is made unless such indemnification is not made by the **Company**, **Non-Profit Entity** or **Joint Venture** solely by reason of its financial insolvency. In the event of financial insolvency, the Retention(s) applicable to INSURING AGREEMENT (A) shall apply.

(E)     If different retentions are applicable to different parts of any **Loss**, the applicable Retention(s) will be applied separately to each part of such **Loss**, and the sum of such Retention(s) will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

(F)     Notwithstanding the foregoing, solely with respect to a **Securities Claim**, no Retention shall apply to such **Claim** and the Insurer will reimburse those **Defense Expenses** incurred by the **Insured** if:

    (1)     the **Securities Claim** is dismissed, or there is a stipulation to dismiss the **Securities Claim**, with or without prejudice and without the payment of any monetary consideration by the **Insured**;

    (2)     there is a final judgment of no liability obtained prior to or during trial, in favor of the **Insured**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or

    (3)     there is a final judgment of no liability obtained after trial, in favor of the **Insured**, after the exhaustion of all appeals.

Any reimbursement in the case of (F)(1), (2), or (3) above will only occur if ninety (90) days after the date of dismissal, stipulation, final judgment of no liability is obtained and only if:

    (a)     the same **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is not brought again within that time; and

    (b)     the **Insured** provides the Insurer with an Undertaking in a form acceptable to the Insurer that such reimbursement of the applicable Retention(s) will be paid back to the Insurer in the event the **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is brought after the ninety (90) day period.

V.     DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS

(A)     It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim** under this Policy.

(B)     No insured may incur any Defense Expenses or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(C)     Upon the written request of an **Insured**, the Insurer will advance **Defense Expenses** on a current basis in excess of the applicable Retention, if any, before the disposition of the **Claim** for which this policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the **Insured** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(D)     If both Loss covered by this Policy and Loss not covered by this Policy are incurred, either because a **Claim** made against the **Insured** contains both covered and uncovered matters, or because a **Claim** is made against both the **Insured** and others (including the **Company** for **Claims** other than **Securities Claims**) not insured

under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of **Loss** that is covered under this Policy and that portion of **Loss** that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the **Insured** and others.

(E)   In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VI.   GENERAL CONDITIONS

(A)   NOTICE

   (1)   As a condition precedent to any right to payment under this Policy with respect to any **Claim**, the **Insured** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

   (2)   If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** and if, during the **Policy Period**, the **Insured**:

      (a)   provides the Insurer with written notice of the specific **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the **Insured** first became aware of such **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act**; and

      (b)   requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act**;

   then any **Claim** subsequently made arising out of such **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

   (3)   All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations; Attention: Claim Department.

(B)   INTERRELATED CLAIMS

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (A)(1) above or GENERAL CONDITIONS (A)(2), if applicable.

(C)   OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES

   (1)   All **Loss** payable under this Policy will be specifically excess of and will not contribute with any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

(2)    All coverage under this Policy for **Loss** from **Claims** made against the **Insured Persons** while acting in their capacity as a director, officer, trustee, regent or governor of a **Non-Profit Entity** or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of the **Insured Persons** of the Company, regardless of the name or title by which such position is designated, of a **Joint Venture** will be specifically excess of and will not contribute with, any other insurance or indemnification available to such **Insured Person** from such **Non-Profit Entity** or **Joint Venture** by reason of their service as such.

(D)    **MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)**

(1)    If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** occurring after the consummation of the transaction.

(2)    If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, **Subsidiary** or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the **Company**, as represented in the **Company's** most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any **Loss** involving a **Claim** for a **Wrongful Act, Company Wrongful Act,** or **Employment Practices Wrongful Act** that occurred after the transaction has been consummated. Coverage beyond the ninety (90) day period will be provided only if:

     (a)    the Insurer receives written notice containing full details of the transaction(s); and

     (b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)    With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, **Subsidiary** or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for **Claims** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary,** liability, or **Insured Person** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed any time during which such entity, asset, liability or **Subsidiary** is not an **Insured**.

(4)    If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who, because of their service with such **Subsidiary**, were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the Company.

(5)    If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** against an **Insured** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed or allegedly committed up to the time of the **Change In Control**; and

     (a)    coverage will cease with respect to any **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed subsequent to the **Change In Control**; and

     (b)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(E)    **CANCELLATION AND RENEWAL OF COVERAGE**

(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the **Parent Company** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured**, if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(F)    **OPTIONAL EXTENSION PERIOD**

(1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act, Company Wrongful Act, or Employment Practices Wrongful Act,** occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (F)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit Of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(G)    **ASSISTANCE, COOPERATION AND SUBROGATION**

(1)    The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The **Insured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(H)   **EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)   **REPRESENTATION CLAUSE**

The **Insured** represents that the statements and particulars contained in the **Application** as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except for material facts or information known to the person(s) who signed the **Application**. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(J)   **ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)   No action may be taken against the Insurer unless, as a condition precedent thereto:

    (a)   there has been full compliance with all of the terms and conditions of this Policy; and

    (b)   the amount of the obligation of the **Insured** has been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the insured, the claimant and the Insurer.

(2)   Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the Insurer to determine their liability, nor may the **Insured** implead the Insurer in any **Claim**.

(3)   Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)   Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations may only be waived or changed by written endorsement.

(K)   **AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)   the payment of the premiums;

(2)   the receiving of any return premiums that may become due under this Policy;

(3)   the giving of all notices to the Insurer as provided herein; and

(4)   the receiving of all notices from the Insurer.

DO 71 00 09 99

(L)    ENTIRE AGREEMENT

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.

**Endorsement No.: 1**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CHANGE OF ADDRESS OF INSURER ENDORSEMENT

In consideration of the premium charged, as of the effective date of this Endorsement:

Notices required to be given to the Insurer must be addressed to:

Notice to Claim Dept:

XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept

All other Notices:

XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 39 04 05

**Endorsement No.: 2**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 8. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

Page 1 of 1

DO 85 01 01 02

| | |
|---|---|
| Endorsement No.: 3 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

## NEW YORK ADDENDUM TO DECLARATIONS

1.    The Declarations to the Management Liability and Company Reimbursement Insurance Policy is amended by the addition of the following:

**THIS IS A CLAIMS MADE POLICY, EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD, THE AUTOMATIC EXTENSION PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. NO COVERAGE EXISTS FOR CLAIMS MADE AFTER THE END OF THE POLICY PERIOD OR THE AUTOMATIC EXTENSION PERIOD UNLESS, AND TO THE EXTENT, THE OPTIONAL EXTENSION PERIOD APPLIES. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC EXTENSION PERIOD WILL APPLY. FOR AN ADDITIONAL PREMIUM AN OPTIONAL EXTENSION PERIOD OF AT LEAST ONE YEAR CAN BE PURCHASED AS INDICATED IN ITEM 5 OF THE DECLARATIONS. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE AUTOMATIC EXTENSION PERIOD OR, IF PURCHASED, THE OPTIONAL EXTENSION PERIOD, WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER INSURER. DURING THE FIRST SEVERAL YEARS OF A CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.**

2.    Item 5. is deleted in its entirety and amended to read as follows:

**Item 5.    Optional Extension Period and Premium (if purchased at the election of the Parent Company):**

| Length of Optional Extension Period | Optional Extension Premium |
|---|---|
| 1 year | 90% of policy premium |
| 2 years | 180% of policy premium |
| 3 years | 205% of policy premium |

3.    Item 7. is amended by the addition of the following:

Notwithstanding the foregoing, notice given by or on behalf of the Insured or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the Insurer in this state shall be deemed notice to the Insurer.

**Endorsement No.: 4**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# NEW YORK COINSURANCE ENDORSEMENT

Solely for the purpose of the coverage provided under Insuring Agreement I.A., in accordance with New York State Laws BCL section 726(a)(3):

1.    the **Insured Persons** are liable to coinsure 0.5% of **Loss** in excess of the applicable Retention for the first $1,000,000 of coverage; and

2.    the retention (under Insuring Agreement I.A.) shall be $5,000 each **Insured Person**, not to exceed $50,000 in the aggregate.

The **Insured Persons** shall not be liable to coinsure any **Loss** in excess of the first $1,000,000 of **Loss** in excess of the applicable retention.

DO 85 02 02 00

DO 96 04 02 00

Endorsement No.: 5                              Effective: May 16, 2007
Named Insured: Lehman Brothers Holdings Inc.    12:01 A.M. Standard Time
Policy No.: ELU097792-07                         Insurer: XL Specialty Insurance Company

# NEW YORK DEFENSE EXPENSES DISCLOSURE

Defense Expenses reduce and may completely exhaust the Limit of Liability.  To the extent the Limit of Liability is exceeded, the Insurer shall not be liability for Defense Expenses or for the amount of any judgment or settlement. Defense Expenses are also applied to the Retention.

This form shall be attached to and made part of the Policy.

The below Officer of the Parent Company, on behalf of the Insureds, acknowledges that he/she read this form and understands the above provisions.

Endorsement No.: 6                                    Effective: May 16, 2007
Named Insured: Lehman Brothers Holdings Inc.          12:01 A.M. Standard Time
Policy No.: ELU097792-07                              Insurer: XL Specialty Insurance Company

DO 96 02 02 00

# NEW YORK DISCLOSURE STATEMENT

This Policy is a claims-made policy.

Coverage under this Policy or any subsequent renewal of this Policy, subject to the terms of the applicable policy, applies only to any "Claim" (as defined herein) made against the Insureds, or specific Wrongful Act, Employment Practices Wrongful Act or Company Wrongful Act reported during the Policy Period of this Policy or the applicable renewal policy.  All coverage under this Policy ceases upon Termination of Coverage, except for the Automatic Extension Period unless the Optional Extension Period is purchased.

The below officer of the Parent Company, on behalf of the Insureds, acknowledges that he/she has received information from the Insurer or its agent explaining the limitations and potential gaps in coverage of a claims-made policy and that he/she understands these limitations and potential gaps in coverage.

This Policy includes a 60-day automatic extended reporting period, referred to as the Automatic Extension Period.

This Policy provides the Insured with the option to purchase for an additional premium at least a one-year Optional Extension Period from the termination of this Policy.  The premium for the Optional Extension Period is indicated in Item 5. of the Policy's Declarations.

During the first several years of a claims-made relationship between the Insureds and the Insurer, claims-made rates are relatively lower than occurrence rates, and the Insured can expect substantial annual premium increases independent of overall rate level increases, until the claims-made relationships reaches maturity.

Endorsement No.: 7
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# NEW YORK AMENDATORY ENDORSEMENT

1.   Clause II. DEFINITIONS (G)(2) is deleted and replaced by the following:

(2)   vicarious liability for employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status; or disparate impact discrimination in employment.

2.   Clause II. DEFINITIONS (G)(3) is deleted and replaced by the following:

(3)   vicarious liability for sexual or other harassment in the workplace: or

3.   Clause II. DEFINITIONS (M) is deleted and replaced by the following:

(M)   "Loss" means damages, judgments, settlements or other amounts and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay.  Loss will not include:

(1) punitive damages or exemplary damages or the multiplied portion of any damage award;

(2) fines, penalties or taxes imposed by law; or

(3) matters which are uninsurable under the law pursuant to which this Policy is construed.

4.   Clause II. DEFINITIONS is amended by addition of the following:

"(T)   'Termination of Coverage' means (1) the Policy expiration date set forth in Item 2., of the Declarations, or its earlier cancellation date, or (2) a decrease in limits, a reduction in coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the Insured."

5.   Clause III. EXCLUSIONS (F) is deleted and replaced by the following:

"(F)   brought about or contributed to by any:

(1)   intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2) profit or remuneration gained by any Insured to which such Insured is not legally entitled; "

6.   Notwithstanding anything to the contrary in the Declarations and Clause VI. GENERAL CONDITIONS (A), notice of any Claim may also be provided to any authorized agent of the Insurer located within the state of New York".

7.   Clause VI. GENERAL CONDITIONS (C) OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES (1) is deleted and replaced by the following:

"(1)   "If any Loss resulting from any Claim is insured under any other policy(ies), this Policy shall apply only to the extent Loss exceeds the amount paid under such other valid and collectible insurance whether such other insurance is stated to be primary, contributory,

excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over this Policy."

8.   Clause VI. GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (3) is deleted and replaced by the following:

"(3)   The Insurer is under no obligation to renew this Policy upon its expiration.  Once the Insurer chooses to non-renew this Policy or conditions its renewal upon a change in the Limit of Liability, change in type of coverage, reduction of coverage, increased retention, the addition of any exclusion or an increase in premium in excess of 10%, then the Insurer shall mail or deliver written notice of the refusal to renew or the conditional renewal to the Parent Company at the mailing address shown on the Policy and to the Insureds' authorized agent at least sixty (60) days but not more than one hundred and twenty (120) days in advance of the expiration date of the Policy.  Such notice shall contain the specific reasons for the refusal to renew or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.

If the Insurer does not provide notice of nonrenewal or conditional renewal as provided in Clause VI.(E)(3), coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the Parent Company, during this 60-day period, has replaced the coverage or elects to cancel.

If the Insurer provides notice of nonrenewal or conditional renewal on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another Policy Period, at the lower of the current rates or the prior period's rates, unless the Parent Company, during the additional Policy Period, has replaced the coverage or elects to cancel.

The Insurer will not send the Insureds notice of nonrenewal or conditional renewal if the Insureds, their authorized agent or another insurer of the Insureds mail or deliver notice that the Policy has been replaced or is no longer desired.

If the Insureds elect to accept the terms, conditions and rates of the conditional renewal notice pursuant to Clause VI.(E)(3), a new aggregate Limit of Liability shall become effective as of the inception date of renewal, subject to regulations promulgated by the Superintendent of Insurance."

9.   Clause VI. GENERAL CONDITIONS (F) OPTIONAL EXTENSION PERIOD is deleted and replaced by the following:

"(1)   If either the Parent Company or the Insurer cancels or does not renew this Policy, or if the Parent Company or Insurer offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, an increase in Retention, an addition of an exclusion, an increase in premium in excess of 10% over the current Policy's premium, or any change in coverage less favorable to the Insured, then, without any additional premium being required, there shall be an automatic extension of the coverage granted by this Policy with respect to any Claim first made during a period of sixty (60) days immediately following the Termination of Coverage, but only with respect to a Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act committed before the Termination of Coverage, provided such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act is otherwise covered by this Policy.  This 60-days period shall be referred to as the 'Automatic Extension Period'  The granting of such Automatic Extension Period shall not serve to increase the Limit of Liability set forth in Item 3., of the Declarations applicable to the Policy Period and Automatic Optional Extension Period.

(2)   If either the Parent Company or the Insurer cancels or does not renew this Policy, or if the Parent Company or Insurer offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, an increase in Retention, an addition of an exclusion, an

increase in premium in excess of 10% over the current Policy's premium, or any change in coverage less favorable to the Insured, then the Parent Company shall have the right, upon payment of an additional premium set forth in Item 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any Claim first made during the period of time set forth in Item 5 of the Declarations after the date upon which the Automatic Extension Period ends.  However, the extension of coverage applies only to a Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act committed before the Termination of Coverage provided such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act is otherwise covered by this Policy.  This additional period of coverage shall be referred to as the 'Optional Extension Period'  Except in the Declarations to the Policy and this Clause VI., the Automatic Extension Period may also be referred to as the Optional Extension Period.

(3)     The Limit of Liability applicable to the Optional Extension Period, if any, shall be at least equal to the amount of coverage remaining in the Policy's Limit of Liability set forth in Item 3. of the Declarations.

(4)     The Insurer shall provide written notice to the Parent Company of the Automatic Optional Extension Period and the availability of, the premium for, and the importance of purchasing, the Additional Optional Extension Period within thirty (30) days after the Termination of Coverage.

(5)     The right to purchase the Optional Extension Period shall terminate unless written notice is given to the Insurer within sixty (60) days from the Termination of Coverage, or within thirty (30) days after the mailing or delivery of the notice provided by the Insurer under Clause VI.(4), above, which ever is greater, together with full payment of the premium for the Additional Optional Extension Period.  If such notice and premium payment are not so given to the Insurer, the Parent Company will not be able to exercise the right to purchase the Additional Optional Extension Period.

(6)     If the Optional Extension Period is purchased, the entire premium shall be deemed earned at its commencement and if the Parent Company terminates the Optional Extension Period before its term, the Insurer shall not be liable to return any portion of the premium paid for the Additional Optional Extension Period.  The premium charged for the Additional Optional Extension Period shall be based upon the rates in effect on the date this Policy was issued or last renewed.

(7)     In the event the Parent Company is in liquidation or bankruptcy, or permanently ceases operation, and if the Parent Company or its designated trustee, although entitled to, does not purchase the Optional Extension Period, any Directors and Officers insured under this Policy who request the Optional Extension Period within 120 days of the Termination of Coverage may purchase the Optional Extension Period, as provided in Clause VI.(2), above.

(8)     A person employed or otherwise affiliated with the Insured and covered by this Policy during such affiliation shall continue to be covered under this Policy and any Optional Extension Period after such affiliation has ceased for such person's covered acts or omissions during such affiliation.

(9)     Upon Termination of Coverage, any return premium due the Insured shall be applied to the premium for the Optional Extension Period if the Insured elects to purchase such coverage.  Where the premium is due to the Insurer, any payment received by the Insurer from the Insured as payment for the Optional Extension Period shall be first applied to any premium due for the Policy.

(10)    In the event similar insurance to that provided by this Policy is in force during the Optional Extension Period, the coverage afforded during the Optional Extension Period shall be excess over any such valid and collectible insurance."

10.    Clause VI. GENERAL CONDITIONS (I) REPRESENTATION CLAUSE is amended by the addition of the following:

"However, no misrepresentation shall be deemed material unless knowledge by the Insured of the facts misrepresented would have led to a refusal by the Insurer to issue the Policy."

11.   Clause VI. GENERAL CONDITIONS (J) ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY (4) is deleted and replaced by the following:

"Notice given by or on behalf of the Insured or written notice by or on behalf of the injured person or any other claimant, to any licensed agent to the Insurer in this state shall be deemed notice to the Insurer."

12.   Clause VI. GENERAL CONDITIONS (J) ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY (1) is amended by addition of the following:

"(c)   If the Insurer does not pay any judgment covered by the terms of this Policy within thirty (30) days from the service of notice of the judgment upon the Insured or its attorney and the Insurer, then an action may be brought against the Insurer under the terms of the Policy for the amount of judgment not exceeding the amount of the applicable Limit of Liability under the Policy, except during a stay or limited stay of execution against the Insured on such judgment."

13.   This Policy is amended by the addition of the following:

"The insolvency or bankruptcy of the Insureds, or the insolvency of their estates, shall not release the Insurer from the payment of Loss not otherwise excluded under this Policy."

DO 80 142 10 01

**Endorsement No.: 8**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND SECTION IV ENDORSEMENT

In consideration of the premium charged, Section IV Limit of Liability, Indemnification and Retentions (F) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 9**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DELETE INSURING AGREEMENT (C) ENDORSEMENT

In consideration of the premium charged:

(1)    Section I Insuring Agreement (C) of the Policy is deleted in its entirety and all references in the Policy to Insuring Agreement (C) are deleted.

(2)    The term "Company Wrongful Act," as defined in Section II Definitions (E) of the Policy, is deleted in its entirety and all references in the Policy to "Company Wrongful Act" are deleted.

(3)    Section II Definitions (Q) is deleted in its entirety and replaced by the following:

    (Q)    "Securities Claim" means a Claim made against an Insured Person for:

        (1)    any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

        (2)    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market;

        (3)    any actual or alleged violation of any federal, state or local law (whether statutory or common law), rule or regulation in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market."

(4)    Item 4. of the Declarations Page is deleted and replaced by the following:

    Item 4    Retentions:

           $0  each Insured Person under INSURING AGREEMENT I(A)
      $10,000,000 each Claim under INSURING AGREEMENT I(B)"

(5)    Solely with respect to Securities Claims made against any of the Insured Persons, Item 4 of the Declarations is amended to read as follows:

    Item 4    Retentions:

           $0  each Insured Person under INSURING AGREEMENT I(A)
      $10,000,000 each Claim under INSURING AGREEMENT I(B)"

    With respect to all other Claims, Item 4 of the Declarations shall remain unchanged.

(6)    Solely in the event of a Securities Claim made against an Insured Person(s) and the Company, if both Loss covered by this Policy and loss not covered by this Policy are incurred because such Securities Claim is made against both the Insured Person and the Company (which is not insured under this Policy), the portion of Loss allocated to Insured Persons under this Policy shall in no event be less than one hundred percent (100%).

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 10**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND MERGERS & ACQUISITIONS ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (D)(2) of the Policy is amended to read in its entirety as follows:

(2)     If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed twenty percent (20%) of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act, Company Wrongful Act, or Employment Practices Wrongful Act that occurred after the transaction has been consummated.  Coverage beyond the ninety (90) day period will be provided only if:

(a)     the Insurer receives written notice containing full details of the transaction(s); and

(b)     the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 11**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND NOTICE OF CLAIM

In consideration of the premium charged, for purposes of Section VI (A) Notice, the Insured will be deemed to have given the Insurer notice of a Claim as soon as practicable after such Claim is first made if the Risk Manager gives the Insurer written notice of such Claim as soon as practicable after first becoming aware thereof.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 12
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

DO 80 48 07 00
Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND DEFINITION OF COMPANY

In consideration of the premium charged, Section II (D), Definition of "Company," is amended to include:

Any Non Profit foundation that is under the management control of the Company

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 13**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND NON-PROFIT ENTITY ENDORSEMENT

In consideration of the premium charged, the term "Non-Profit Entity," as defined in Section II Definitions (N) of the Policy, is amended to read in its entirety as follows:

    (N)    'Non-Profit Entity' means any not-for-profit entity or not-for-profit organization.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 353 05 06

Endorsement No.: 14                          Effective: May 16, 2007
Named Insured: Lehman Brothers Holdings Inc.    12:01 A.M. Standard Time
Policy No.: ELU097792-07                      Insurer: XL Specialty Insurance Company

# AMEND EXCLUSION (F) ENDORSEMENT

In consideration of the premium charged, Section III Exclusions (F) of the Policy is amended to read in its entirety as follows:

(F)    brought about or contributed to in fact by any:

(1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2)    profit or remuneration gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 15**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

XL 80 22 05 02

# DEBTOR IN POSSESSION ENDORSEMENT

In consideration of the premium charged, the term "Insured" shall include the Company as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 16**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (J)(5) of the Policy shall include the domestic partner of any person set forth in Section II Definition (J)(1) – (J)(4), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner to such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 17**                              **Effective: May 16, 2007**
**Named Insured: Lehman Brothers Holdings Inc.**     **12:01 A.M. Standard Time**
**Policy No.: ELU097792-07**                         **Insurer: XL Specialty Insurance Company**

# SPECIFIED OTHER INSURANCE ENDORSEMENT

In consideration of the premium charged:

(1)    Solely with respect to any Employment Practices Claim, it is understood and agreed that the coverage provided under this Policy will be specifically excess of, and will not contribute with, Policy Number BM00022400EP06A issued by XL Insurance (Bermuda) Ltd. and any other policy or policies excess thereof issued to the Insured, and no coverage will be available under this Policy for Claims as to which such other insurance applies unless and until the limit or limits of liability of such other insurance shall have been completely exhausted by the payment of loss thereunder.  Nothing herein shall be construed to limit, restrict or otherwise affect coverage under this Policy for Loss, including Defense Expenses, not covered under such other insurance.

(2)    Nothing in this endorsement is intended, nor shall it be construed, to make this Policy subject to any terms of any other insurance policy.

(3)    Section VI General Conditions (C) of the Policy shall be deemed to have been amended as necessary to effect the purpose and intent of this endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 18**                              **Effective: May 16, 2007**
**Named Insured: Lehman Brothers Holdings Inc.**     **12:01 A.M. Standard Time**
**Policy No.: ELU097792-07**                         **Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person" shall include those individuals holding the following positions for the Company:

    <u>Position(s)</u>

    De Facto Directors

All other terms, conditions and limitations of this policy shall remain unchanged.

Endorsement No.: 19
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND GENERAL CONDITIONS (A)(2) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (A)(2) of the Policy is amended to read in its entirety as follows:

(2)   If, during the Policy Period, or if applicable the Optional Extension Period, the Insured first becomes aware of a specific Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act and if, during the Policy Period, or if applicable the Optional Extension Period, the Insured:

(a)   provides the Insurer with written notice of the specific Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the Insured first became aware of such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act; and

(b)   requests coverage under this Policy for any subsequently resulting Claim for such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act;

then any Claim subsequently made arising out of such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act will be treated as if it had been first made during the Policy Period.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 20
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, Section II Definitions (M) of the Policy is amended to read in its entirety as follows:

"(M)  'Loss' means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law and any prejudgment and post-judgment interest awarded on any judgment) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay. Loss will not include:

    (1)    the multiplied portion of any damage award;

    (2)    fines, penalties or taxes imposed by law;

    (3)    taxes or wages; or

    (4)    matters which are uninsurable under the law pursuant to which this Policy is construed.

NOTE:  With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the Insured, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of the counsel for the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 1150 06 04

**Endorsement No.: 21**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# GENERAL E&O ENDORSEMENT
# (WITH MANAGEMENT CARVE-BACK)

In consideration of the premium charged:

(1)    No coverage will be available under this Policy for Claims for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for others or for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under this Policy; provided that this exclusion will not apply solely with respect to a Claim to which Insuring Agreement (A) applies.

(2)    Paragraph (1) above is not intended, however, nor shall it be construed, to apply to a Claim against an Insured to the extent that such Claim is for a Wrongful Act by such Insured in connection with the management or supervision of any division, Subsidiary or group of the Parent Company offering any of the aforementioned services.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6189 05 06

| | |
|---|---|
| **Endorsement No.: 22** | **Effective: May 16, 2007** |
| **Named Insured: Lehman Brothers Holdings Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU097792-07** | **Insurer: XL Specialty Insurance Company** |

# PRIORITY OF PAYMENTS ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that if Loss, including Defense Expenses, shall be payable under more than one of the INSURING AGREEMENTS, then the Insurer shall, at the request of the chief financial officer of the Parent Company, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

(1)     first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under INSURING AGREEMENT (A);

(2)     second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company under INSURING AGREEMENT (B); and

(3)     third, the Insurer shall make such other payments which the Insurer may be liable to make under INSURING AGREEMENT (C) or otherwise.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 1034 02 04

**Endorsement No.: 23**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INSURING AGREEMENT (A) ENDORSEMENT

In consideration of the premium charged, solely with respect to Claims made under Section I Insuring Agreements (A) of the Policy, the Insurer may not void and/or rescind this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 1151 06 04

| | |
|---|---|
| Endorsement No.: 24 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person" shall include those individuals holding the following positions for the Company; provided that the Company indemnifies such individuals with respect to such position(s):

Position(s)

Trustees
Consultants
Officials or Advisors to the Company's Board of Directors

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6191 05 06

| | |
|---|---|
| Endorsement No.: 25 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# LIMITED LIABILITY COMPANY ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Subsidiary", as defined in Section II Definitions (R) of the Policy, is amended to include any limited liability company organized under the laws of any state, during any time in which the Company and/or the Insured Persons own(s), directly or indirectly, the right to elect, appoint or designate fifty percent (50%) or more of the members of such company's Board of Managers provided that the Company has "management control" of such entity and has an obligation to indemnify such entity's Insured Persons.

(2)     The term "Change In Control," as defined in Section II Definitions (B) of the Policy, is amended to read in its entirety as follows:

"(B)     'Change In Control' means:

(1)     the acquisition of the Parent Company by another entity, or the merger of the Parent Company into another entity such that the Parent Company is not the surviving entity, or the consolidation of the Parent Company with another entity, or the acquisition of substantially all of the assets of the Parent Company by another entity; or

(2)     the acquisition at any time or over a period of time during the Policy Period of record or beneficial ownership or control by any person, entity or affiliated group of persons or entities of fifty percent (50%) or more of the outstanding securities representing the present right to vote for the election of directors or member of the Board of Managers, as the case may be, of the Parent Company."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 1102 05 04**

Endorsement No.: 26
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CLARIFICATION ENDORSEMENT

In consideration of the premium charged, in the event that there is an inconsistency between a state amendatory attached to this Policy and any term or condition of this Policy, then it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions of either the state amendatory or the Policy which are more favorable to the Insured.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6474 05 07

Endorsement No.: 27
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND INSURED PERSON ENDORSEMENT

In consideration of the premium charged:

I.      The definition of "Insured Person," as set forth in Section II Definition (J) of the Policy, is amended to include the following:

"(6)    an individual identified in (J)(1) above who, at the request of the Company, is, was or will be serving as a director, officer, regent or governor of an Outside Entity;

(7)     the following individuals, in their capacity as a director or officer of the entities set forth below:

Henry Lentz – Peabody Energy Corp.
James Peet – SevenSpace, Inc.
James Peet – OpenReach, Inc.
James Peet – Network Telephone Corporation
James Peet – EpicRealm, Inc.
John Cecil – CP Kelco
Peter Cohen – First Capital Holdings
Richard Descherer – First Capital Holdings
William Mack – First Capital Holdings
Hingge Hsu - Aerovance
Hingge Hsu – Fluidigm
Hingge Hsu – Peak Surgical
Keith Greengrove – Grande Asset Development Public Co. Ltd.
Erik Van Kuelen – Grande Asset Development Public Co. Ltd.
Jason Dunn – Grande Asset Development Public Co. Ltd.
Xie Bingwu – Grande Asset Development Public Co. Ltd.
Mark Newman – Grande Asset Development Public Co. Ltd.
Kenneth Burd – Grande Asset Development Public Co. Ltd.
Jerome Calvet – SOFCO
Glenn McKenzie – Lehman Brothers Private Equity Advisers LLC and its portfolio companies
Nick Hill – Carpeta Center Comercio Internacional e Servicos Lda
Nick Hill – Lusotel – Industria Hoteleira Lda
Nick Hill – Sociedade Hoteleira Sao Lourenco Lda
Nick Hill – Sociedade Turistica da Penina SA
Richard E. Wenz – Hunter Fan Company
Richard E. Wenz – Hunter Fan Holdings, Inc.
Emilio Novela – Patentes Talgo
Jack Pope – Patentes Talgo
David Williams – European Seafood 1 Sarl, Heinz Seafood Luxemborg
David Williams – MW Brands SAS, Heinz Seafood France
Jose Arozamena - European Seafood 1 Sarl, Heinz Seafood Luxemborg
Jose Arozamena - MW Brands SAS, Heinz Seafood France
Michael Castleman – Touchstone Health Partnership Inc.
Michael Castleman – FuelQuest, Inc.

(8)    an individual identified in (J)(1) above who, at the request of the company is, was or will be serving as a director, officer, trustee, regent or governor of any entity as described in Section III of this endorsement, other than a Shadow Director Entity;

(9)    William Wesp in his capacity as a director, officer, trustee, regent or governor of Conseco Inc.;

(10)    an individual identified in (J)(1) above who is, was or will be serving as a Shadow Director of any Shadow Company (other than a Company or Joint Venture) that is incorporated or domiciled in the United Kingdom, as defined in Section 741 of the Companies Act 1985 (such entity, "Shadow Director Entity");

(11)    the lawful spouse or domestic partner of any person set forth in subparagraph (6)-(10) above, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse or domestic partner of such persons, and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse or domestic partner, or property transferred from such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in J(1)-(10) above, any Claim against the estate, heirs, legal representatives or assigns of such individual for a Wrongful Act or Employment Practices Wrongful Act of such individual will be deemed to a Claim against such individual."

II.    For purposes of this endorsement, the following terms shall have the meanings set forth below:

(1)    "Outside Entity" means any Non-Profit Entity (regardless if private or public) or any non-public for-profit entity, other than any Company or Joint Venture.

(2)    "New Public Outside Entity" means any public, for-profit entity, other than any Company, Joint Venture, Specified Entity, as described in Section III of this Endorsement, or Shadow Director Entity.

(3)    "Specified Entity" means:

(a)    the entities set forth in Section I paragraph (J)(7) of this Endorsement; and

(b)    the following entities:

Peabody Energy Corp
Seven Space, Inc.
Open Reach, Inc.
Network Telephone Corporation
Epic Realm, Inc.
CP Kelco APS
First Capital Holdings
St. Mary's NHS Trust
RSI Holding Corporation
Newcastle Investment Holdings Corp.
Weatherford International Ltd.
Gulfmark Offshore, Inc.
Link Energy, LLC
Walter Industries, Inc.
Interstate Hotels Corp./Interstate Hotels & Resorts Inc.
Blount International, Inc.
R.G. Barry Corp.
Automatic Data Processing

Delta – Galil Industries Ltd.
L-3 Communications Corporation
Imperial Sugar Company
Mahogany Capital Limited
Antero Resources Corporation
Pacific Energy Management LLC
Gulfmark International
Pemstar, Inc.
Regeneration Technologies, Inc.

(4)     "Directorship Entity" means any Outside Entity, New Public Outside Entity, Specified Entity, Non-Profit Entity, or Shadow Director Entity.

III.    New Positions

If, during the Policy Period, an individual identified in Section II Definition (J)(1) of the Policy provides service as a director, officer, trustee, regent or governor of a New Public Outside Entity upon the request of the Company, it shall be the Company's responsibility to report such position to the Insurer within 30 days of Company's risk management group's knowledge of such position.  Upon receiving such notice from the Company, the Insurer will then have 30 days, from its date of notice, to underwrite the risk and advise the Company if it will: (1) provide coverage for such Insured Person's service with the New Public Outside Entity pursuant to Section IV(1) of this Endorsement for no additional premium; (2) provide coverage for such Insured Person's service with the New Public Outside Entity pursuant to Section IV(1) of this Endorsement for an additional premium; or (3) provide coverage for such Insured Person's service with the New Public Outside Entity specifically excess of and without contributing to any other insurance or indemnification available to such Insured Person from any source, including from such New Public Outside Entity or the Company pursuant to Section IV(2) of this Endorsement.  If the Insurer does not provide the Company with its determination within 30 days, coverage for such New Public Outside Entity position will apply pursuant to Section IV.(1) of this Endorsement.

IV.

(1)     All coverage under this Policy for Loss from Claims made against the Insured Persons while acting their capacity as a director, officer, trustee, regent or governor of an Outside Entity, Specified Entity, New Public Outside Entity or Shadow Director Entity (if applicable), will be specifically excess of and will not contribute with any other insurance or indemnification available to such Insured Person from such Outside Entity, Specified Entity, New Public Outside Entity or Shadow Director Entity.

(2)     All coverage under this Policy for Loss from Claims made against the Insured Persons while acting in their capacity as a director, officer, regent or governor of any New Public Outside Entity so designated by the Insurer pursuant to Section III of this Endorsement will be specifically excess of and will not contribute with any other insurance or indemnification available to such Insured Person from any source, including from such New Public Outside Entity or the Company.  Accordingly, coverage is only available under this Policy in connection with Loss arising under Insuring Agreement (A) of the Policy.

(3)     All coverage under this Policy for Loss from Claims made against William Wesp in his capacity as a director, officer, trustee, regent or governor of Conseco Inc., as set forth in Section II Definition (J)(9), as amended above, will be specifically excess of and will not contribute with any other insurance or indemnification available to such Insured Person from any source, including from Conseco Inc. or the Company.  Accordingly, coverage is only available under this Policy in connection with Loss arising under Insuring Agreement (A) of the Policy.

(4)      With respect to any Directorship Entity's indemnification of its Insured Persons, the certificate of incorporation, charter, partnership agreement or other organizational and operational documents of such Directorship Entity, including bylaws and resolutions, shall be deemed to provide indemnification to the Insured Person for his or her service with respect to such Directorship Entity to the fullest extent permitted by law.

## V.  Wrongful Act

The definition of "Wrongful Act," as set forth in Section II Definition (S)(2) of the Policy, is amended to read in its entirety as follows:

"(2)      Insured Person of the Company who, at the request of the Company is serving as a director, officer, trustee, regent or governor of a Directorship Entity."

## VI.    Exclusions

(1)      Section III Exclusions is amended to include the following paragraphs:

"(J)      by, on behalf of, at the direction or in the name or right of any Directorship Entity (including any parent company, holding company, controlling entity of any kind or subsidiary thereof, of any Directorship Entity) or past, present or future director or officer thereof, except and to the extent that such Claim:

    (1)     is brought derivatively by a security holder of the Directorship Entity (including any subsidiary thereof) who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person, a Directorship Entity (including any subsidiary thereof) or any director or officer of the Directorship Entity (including any subsidiary thereof), (other than any solicitation, assistance or participation for which Section 806 of the Sarbanes-Oxley Act of 2002, or any similar "whistleblower" protection provision of any applicable federal, state, local or foreign securities law, affords protection to such Insured Person or director or officer of the Directorship Entity) ;

    (2)     alleges an Employment Practices Wrongful Act by a director, officer, trustee, governor or regent of the Directorship Entity (including any subsidiary thereof);

    (3)     is brought and maintained by a director, officer, trustee, governor or regent, or those persons serving in a functionally equivalent role, of any Directorship Entity (including any subsidiary thereof) and brought and maintained in a jurisdiction outside the United States of America, including its territories and possessions;

    (4)     is brought in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this policy;

    (5)     is brought by the Bankruptcy Trustee or Examiner of the Directorship Entity (including any subsidiary thereof) or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator or Liquidator or comparable authority of the Directorship Entity (including any subsidiary thereof);

    (6)     is brought and maintained by a director or officer of any Directorship Entity (including any subsidiary thereof):

        (a)     who has not served as a director, officer, or employee of such Directorship Entity (including any subsidiary thereof) for at least four years prior to the date such Claim is first made; and

      (b)    who is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person, a Directorship Entity (including ay subsidiary thereof) or any director or officer of the Directorship Entity (including any subsidiary thereof);"

(2)    Section III Exclusion (I) of the Policy is amended to read in its entirety as follows:

    "(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an Insured Person acting in their capacity as an Insured Person of any entity other than the Company, Joint Venture or Directorship Entity.

## VII.    Miscellaneous

    (a)    If any Claim made against any Insured Person gives rise to coverage under both this Policy and under any other policy or policies of management liability and company reimbursement, directors and officers liability or other similar insurance issued by the Insurer to any Directorship Entity, the Insurer's maximum aggregate limit of liability under all such policies for all Loss, including Defense Expenses, in respect of such Claim shall not exceed $35,000,000.  It is understood and agreed that to the extent that there are any excess insurers that follow form to the terms and conditions of this policy and this Section (VII)(a) of this Endorsement is pertinent with respect to coverage hereunder, such excess insurers shall treat such event as exhaustion of this policy as though the Insurer paid such Loss under this Policy.

    (b)    In the event loss resulting from a Claim is covered in part under this Policy and in part under any other policy or policies of management liability and company reimbursement, directors and officers liability or other similar insurance issued by the Insurer to any Directorship Entity, the applicable retention or deductible, as the case may be, set forth in the Declarations of each such policy, and the sum of the retentions or deductibles, as the case may be so, shall constitute the Retention applicable to all Loss resulting from such Claim; provided, however, that the total Retention as finally determined shall in no event exceed the largest single retention or deductible, as the case may be, set forth in the Declarations of either policy.

    (c)    Nothing in this endorsement is intended, nor shall it be construed, to obligate or require the Insurer to pay Loss, including Defense Expenses, under the Policy in respect of such Claim in any amount exceeding the available Limit of Liability under this Policy.  Nothing in this endorsement is intended, nor shall it be construed, to obligate or require the Insurer to pay loss, including all costs and expenses of defense, under any other policy in respect to any such Claim in any amount exceeding the available limit of liability under such other policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 134 01 07

**Endorsement No.: 28**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND INSURED v. INSURED EXCLUSION

In consideration of the premium charged: Section III Exclusions (G) of the Policy is amended to read in its entirety as follows:

"(G) by, on behalf of, or in the name or right of, the Company or any Insured Person, except and to the extent such Claim:

 (1) is brought derivatively by a security holder of the Company who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person or the Company (other than any solicitation, assistance or participation for which Section 806 of the Sarbanes-Oxley Act of 2002, or any similar "whistleblower" protection provision of an applicable federal, state, local or foreign securities law, affords protection to such Insured);

 (2) is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy;

 (3) is brought by an Insured Person and brought and maintained in a jurisdiction outside the United States of America, including its territories and possessions;

 (4) is brought and maintained by an Insured Person:

  (a) who has not served as a director, officer, member of the Board of Managers, or employee of the Company for at least four (4) years prior to the date such Claim is first made; and

  (b) who is acting independently of, and without the solicitation, assistance, participation or intervention of an Insured Person or the Company;

 (5) is an Employment Practices Claim; or

 (6) is brought by the Bankruptcy Trustee or Examiner of the Company of any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 6192 05 06**

| | |
|---|---|
| Endorsement No.: 29 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# AMEND ERISA EXCLUSION

In consideration of the premium charged, Section III Exclusions (C) of the Policy is amended to read in its entirety as follows:

"(C)    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation; provided that this EXCLUSION (C):

    (1)    will not apply to a Securities Claim brought by a security holder of the Company other than an Insured Person;

    (2)    will only apply to any pension, employee benefit or welfare plan sponsored by the Company; and

    (3)    will not apply to Claims made under Section I Insuring Agreement (A) of the Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6193 05 06

| | |
|---|---|
| Endorsement No.: 30 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# FOREIGN JURISDICTION ENDORSEMENT

In consideration of the premium charged:

(1)    Where legally permissible, this Policy shall apply to any Claim made against an Insured Person anywhere in the world.

(2)    With respect to any Claim brought and maintained solely in a Foreign Jurisdiction, as defined below, against an Insured Person of a Foreign Company, as defined below, for a Wrongful Act committed or allegedly committed in such Foreign Jurisdiction, the Insurer shall apply those terms and conditions (and related provisions) of the Foreign Policy, as defined below, registered with the appropriate regulatory body in such Foreign Jurisdiction that are more favorable to the Insured Person than the terms and conditions of this Policy; provided, however, this paragraph (2) shall only apply to the following sections of the Policy and the comparable provisions of the Foreign Policy:

Sections I, II, III, VI (D), VI (E), VI (F), VI (G), VI (I), VI (J) and VI (K)

In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

(3)    Solely for the purposes of this endorsement, the following terms shall have the meanings set forth below:

(a)    "Foreign Company" means any Company formed and operating in any Foreign Jurisdiction.

(b)    "Foreign Jurisdiction" means any jurisdiction, other than the United States of America or any of its territories or possessions.

(c)    "Foreign Policy" means the Insurer's or an affiliated company of the Insurer's (collectively "XL"), management liability policy (including all mandatory endorsements, if any) approved by XL to be sold within the Foreign Jurisdiction that provides coverage substantially similar to the coverage afforded under this Policy. If more than one such policy exists, then "Foreign Policy" means the standard policy most recently registered in the local language of the Foreign Jurisdiction, or if no such policy has been registered, then the policy most recently registered in that Foreign Jurisdiction. The term "Foreign Policy" shall not include any partnership managerial, pension trust or professional liability coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 87 01 01**

| | |
|---|---|
| Endorsement No.: 31 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# AMEND REPRESENTATION CLAUSE ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (I) of the Policy is amended to read in its entirety as follows:

"(I)    REPRESENTATION CLAUSE

The Insured represents that the statements and particulars contained in the Application as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy. No knowledge or information possessed by any Insured will be imputed to any other Insured. In the event that any of the particulars or statements in the Application are untrue, this Policy will be void with respect to any Insured who knew of such untruth."

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6190 05 06

**Endorsement No.: 32**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# LOCAL TAX ENDORSEMENT

In consideration of the premium charged, in the event the Insurer is unable to pay any Loss in the country where such Loss is incurred because of local law or otherwise, to the degree allowable, such Loss shall be paid in the United States of America.  In the event of the payment of such Loss by the Insurer, the Insurer shall also pay the Insured an additional amount required to offset any tax(es) on income as a result of local tax(es) on income payable by the Insured in the country of payment, that accrues because of such payment, which amount is part of, and not in addition to, the maximum aggregate Limit of Liability for all Loss from all Claims under this Policy as set forth in Item 3 of the Declarations.  Any such additional amount shall be reduced to the extent of any reduction in tax(es) on income as a result of local tax treatment of the loss in the country where the loss occurred.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6473 09 06

Endorsement No.: 33
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND SUBSIDIARY DEFINITION ENDORSEMENT

In consideration of the premium charged, Section II Definition (R) of the Policy is amended to read in its entirety as follows:

"(R)    'Subsidiary' means any entity during any time in which the Parent Company owns, directly or through one or more Subsidiary(s), fifty percent (50%) or greater of the outstanding securities representing the right to vote for the election of such entity's directors provided that, only in the case where the Parent Company owns, directly or through one or more Subsidiary(ies), fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors, the Company has "management control" of such entity and has an obligation to indemnify such entity's Insured Persons."

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 7142 05 07

| | |
|---|---|
| Endorsement No.: 34 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# EMPLOYED LAWYERS ENDORSEMENT

In consideration of the premium charged:

(1)   The coverage afforded under this Policy will, subject to all of its terms, conditions, limitations and exclusions, be extended to apply to Loss resulting from a Claim made against any Employed Lawyer of the Company (an "Employed Lawyer Claim").

(2)   The term "Employed Lawyer" means any employee of the Company if and to the extent such employee is or, during the course of such person's employment was,"

    (a)   admitted to the practice of law; and

    (b)   employed within the Company for the purpose of providing legal services to or for the benefit of the Company.

(3)   The term "Insured Person" also includes any Employed Lawyer.

(4)   The term "Wrongful Act" also includes any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Employed Lawyer, but only in connection with an Employed Lawyer's performance of, or actual or alleged failure to perform, legal services to or for the benefit of the Company within the scope of his or her employment.

(5)   No coverage will be available under this endorsement for Loss, including Defense Expenses, from any Claim against an Employed Lawyer based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    (a)   the service by any such person in any capacity, whether or not with the Company, other than those explicitly set forth in this endorsement; or

    (b)   an Employed Lawyer's performance of, or actual or alleged failure to perform, any legal services other than legal services to or for the benefit of the Company within the scope of the Employed Lawyer's employment.

(6)   It is understood and agreed that Endorsement No. 21 shall not apply to the coverage afforded by this Endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 7141 05 07

| | |
|---|---|
| **Endorsement No.: 35** | **Effective: May 16, 2007** |
| **Named Insured: Lehman Brothers Holdings Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU097792-07** | **Insurer: XL Specialty Insurance Company** |

# AUSTRALIAN CLAIM ENDORSEMENT

In consideration of the premium charged, solely with respect to Defense Expenses, Section III Exclusion (G) will not apply to the extent a Claim is brought and maintained in Australia.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 218 04 03**

**Endorsement No.: 36**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CHANGE IN CONTROL ENDORSEMENT

In consideration of the premium charged, Section II Definitions (B)(3) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DFI Excess Professional Liability**

PREMIUM BILL

Insured:    LEHMAN BROTHERS HOLDINGS INC.                Date:    07/25/2007

Producer:    MARSH USA, INC
              1166 AVE OF AMERICAS 24F
              NEW YORK, NY 100360000

Company:    Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Product:        DFI Excess Professional Liability

Policy Number: 7043-0876

Policy Period:   May 16, 2007 to May 16, 2008

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| Product | Effective Date | Premium |
|---|---|---|
| EXECUTIVE LIABILITY & INDEMNIFICATION - EXCESS | 05/16/07 | $1,159,620.00 |
|  |  |  |
|  |  |  |

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $1,159,620.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $1,159,620.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 14-02-1324i (Rev. 1/99)

**Chubb & Son**, div. of Federal Insurance Company
as manager of the member insurers of the
Chubb Group of Insurance Companies

# POLICYHOLDER
## DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism.   Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.   Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.   The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 1/2003)

# Schedule of Forms

To be attached to and form part of          Company:    Federal Insurance Company
Policy No.    7043-0876

Issued to:    LEHMAN BROTHERS HOLDINGS INC.


14-02-12123 (10/06 ed.)

14-02-3756 (10/01 ed.)

14-02-9228 (4/04 ed.)

17-02-2373 (5/01 ed.)

Q06-1290 (7/06 ed.)

QLEHMAN4 (7/07 ed.)

QLEHMAN5 (6/05 ed.)

Form 14-02-0854 (Ed. 04-01)

# *EXCESS POLICY*

DECLARATIONS

Policy Number   7043-0876

**Federal Insurance Company**,
a stock insurance company,
incorporated under the laws of
Indiana, herein called the
Company.

---

Item 1.    **Parent Organization**:    LEHMAN BROTHERS HOLDINGS INC.

Item 2.    Principal Address:    1301 Avenue of the Americas
New York, NY  10019

Item 3    Limit of Liability:

Each **Policy Period**    $15,000,000

Item 4.    **Underlying Insurance**:

(A)    **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| XL Specialty Insurance Company | ELU097792-07 | $20,000,000 | May 16, 2007 to May 16, 2008 |

(B)    Other Policies

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|

Item 5.    **Policy Period**:    From:   12:01 a.m. on May 16, 2007
To:   12:01 a.m. on May 16, 2008

Item 6.    Endorsements Effective at Inception:   See Schedule of Forms Attached

Item 7.    Termination of Prior Policies:  None

Item 8.    Pending or Prior Date:  March 31, 1989

The Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

_____
President

07/25/2007
_____
Date

_____
Authorized Representative

# *Excess Policy*

In consideration of the payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this policy, the Company agrees as follows:

| | | |
|---|---|---|
| **Insuring Clause** | 1. | The Company shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** as amended by any more restrictive terms and conditions of any other policy designated in Item 4(B) of the Declarations, except as otherwise provided herein. |
| **Maintenance of Underlying Insurance** | 2. | All **Underlying Insurance** shall be maintained in full effect during the **Policy Period** and shall afford the same coverage provided by all **Underlying Insurance** in effect upon inception of this **Policy Period**, except for any depletion or exhaustion of the **Underlying Limit** solely by reason of payment of losses thereunder. |
| **Depletion of Underlying Limit** | 3. | Only in the event of exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Insurance**, or the **Insureds** in the event of financial impairment or insolvency of an insurer of the **Underlying Insurance**, paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.<br><br>The risk of uncollectability of any **Underlying Insurance**, whether because of financial impairment or insolvency of an underlying insurer or any other reason, is expressly retained by the **Insureds** and is not in any way insured or assumed by the Company. |
| **Underlying Sublimits** | 4. | If any **Underlying Limit** is subject to a **Sublimit**:<br><br>a.   coverage hereunder shall not apply to any claim which is subject to such **Sublimit**, however,<br><br>b.   the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such claim subject to such **Sublimit**. |
| **Limit of Liability** | 5. | The Company's maximum liability for loss shall be the amount set forth in Item 3 of the Declarations. |
| **Claim Participation** | 6. | The Company may, at its sole discretion, elect to participate in the investigation, settlement or defense of any claim covered by this policy even if the **Underlying Insurance** has not been exhausted. |

| | | |
|---|---|---|
| **Pending or Prior Matters** | 7. | The Company shall not be liable under this policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 8 of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein. |
| **Subrogation - Recoveries** | 8. | In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **Insured**. |
| | | Any amounts recovered after payment of loss hereunder shall be apportioned in the inverse order of payment to the extent of actual payment. The expenses of all recovery proceedings shall be apportioned among the recipients of the recovery in the ratio of their respective recoveries. |
| **Notice** | 9. | The **Insureds** shall, as a conditions precedent to exercising their rights under this policy, give to the Company written notice as soon as practicable of the cancellation of any **Underlying Insurance**, any notice given under any **Underlying Insurance** and additional or return premiums charged or paid in connection with any **Underlying Insurance**. |

Notice to the Company under this policy shall be given in writing addressed to:

Notice of claim:    Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

All other notices:    Executive Protection Practice
Chubb Group of Insurance Companies
15 Moutain View Road
Warren, New Jersey 07059

Such notice shall be effective on the date of receipt by the Company at such address.

| | | |
|---|---|---|
| **Company Authorization Clause** | 10. | By acceptance of this policy, the **Parent Organization** named in Item 1 of the Declarations agrees to act on behalf of all the **Insureds** with respect to the giving and receiving of notice of claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for under this policy (except the giving of notice to apply for any extended reporting period), and the **Insureds** agree that the **Parent Organization** shall act on their behalf. |
| **Alteration** | 11. | No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the Company. |

## *Excess Policy*

| | | |
|---|---|---|
| ***Policy Termination*** | 12. | This policy shall terminate at the earliest of the following times: |

    (a)    sixty days after the receipt by the **Parent Organization** of a written notice of termination from the Company;

    (b)    upon the receipt by the Company of written notice of termination from the **Parent Organization**;

    (c)    upon expiration of the **Policy Period**;

    (d)    thirty days after the effective date of any alteration or termination of any **Underlying Insurance**, whether by the **Insureds** or any insurer of the **Underlying Insurer**, unless the Company (i) receives written notice of such alteration or termination from the **Parent Organization**, (ii) receives such information as the Company reasonably requests, and (iii) agrees, pursuant to an endorsement, not to terminate this policy; or

    (e)    at such other time as may be agreed upon by the Company and the **Parent Organization**.

Notice of cancellation or non-renewal of the **Primary Policy** duly given by the primary insurer shall serve as notice of the cancellation or non-renewal of this policy by the Company.

The Company shall refund the unearned premium computed at customary short rates if the policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata.

| | | |
|---|---|---|
| ***Termination of Prior Policies*** | 13. | Any policies specified in Item 7 of the Declarations shall terminate, if not already terminated, as of the inception date of this policy. |

| | | |
|---|---|---|
| ***Policy Definitions*** | 14. | When used in this policy: |

**Insureds** means those persons or organizations insured under the **Primary Policy**.

**Parent Organization** means the organization designated in Item 1 of the Declarations.

**Primary Policy** means the policy scheduled in Item 4(A) of the Declarations or any policy of the same insurer replacing or renewing such policy.

**Policy Period** means the period of time specified in Item 5 of the Declarations, subject to prior termination in accordance with Section 12 above. If any extended reporting period is exercised, such extension shall be treated as set forth in the **Primary Policy**.

**Sublimit** means any **Underlying Insurance** limit of liability which:

    a.    applies only to a particular grant of coverage under such **Underlying Insurance**, and

    b.    reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

***Policy Definitions***
*(continued)*

**Underlying Insurance** means all policies scheduled in Item 4 of the Declarations and any policies of the same insurers replacing or renewing them.

**Underlying Limit** means the amount equal to the aggregate of all limits of liability as set forth in Item 4 of the Declarations for all **Underlying Insurance**, subject to any **Sublimits**, plus the applicable uninsured retention, if any, under the **Primary Policy**.

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: May 16, 2007          Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

AMEND INSURING CLAUSE AND DEPLETION OF UNDERLYING LIMITS SECTION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    The following definitions are added to Section 14, Policy Definitions:

"**Underlying Policy**" means a policy scheduled in Item 4(A) or Item 4(B) of the Declarations (or a policy of the same insurer that replaces or renews any such scheduled policy during the **Policy Period**);

"**Underlying Insurer**" means the insurer(s) of each respective **Underlying Policy**.

(2)    Section 1, Insuring Clause, is deleted and replaced with the following:

The Company shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the **Underlying Insurers** and/or, subject to paragraph (3) of this endorsement, the **Insureds**, shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** as amended by any more restrictive terms and conditions of any other policy designated in Item 4(B) of the Declarations, except as otherwise provided herein.

(3)    Section 3, Depletion of Underlying Limit is deleted and replaced with the following:

In the event of exhaustion of the **Underlying Limit** by reason of the **Underlying Insurers** and/or the **Insureds**, paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this Policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.

If the **Insureds** have for any reason (other than the financial impairment or insolvency of an **Underlying Insurer**) contributed to the payment of a loss which:

(i)     would otherwise be covered under this Policy;
(ii)    payment for such loss is sought under any **Underlying Insurance** together with this Policy; and
(iii)   such contribution to the payment of loss by the **Insureds** together with any payment by the **Underlying Insurers** exhausts the **Underlying Limit**, then the amount of the limit of liability of this Policy that would otherwise be available for payment of such loss shall, at a minimum, be reduced by the highest percentage by which the limit of any **Underlying**

**Policy** was reduced as a result of such payment by the **Insureds**.  However, the limit of liability of this Policy shall only be reduced by the amount paid by the Company for such loss unless otherwise agreed to by the **Insureds** and the Company.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Effective date of
this endorsement:  May 16, 2007          Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

NEW YORK AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    If judgment against any person or entity entitled to coverage under the policy remains unsatisfied
thirty (30) days after the serving of notice of entry of judgment upon such person or entity (or his,
her or its attorney) and upon the Company, then, except during a stay or limited stay of execution
against such person or entity on such judgment, an action may be maintained against the
Company under the policy for the amount of such judgment.  Nothing herein is intended,
however, nor shall it be construed, to obligate the Company to make any payment it would not
otherwise be obligated to make under the terms, conditions, limitations and endorsements of the
policy, or to pay any Loss in excess of the then-available Limit of Liability under the policy.

(2)    Notice of any claim or of any circumstances which may give rise to a claim, whether by or on
behalf of any person or entity entitled to coverage under this policy or by or on behalf of any
claimant against any such person or entity, will be deemed written notice to the Company if given
to any licensed agent of the Company in the State of New York, with particulars sufficient to
identify the person or entity entitled to coverage.

(3)    Failure by any person or entity entitled to coverage under the policy to give any notice required to
be given within any prescribed time will not invalidate any coverage that would otherwise have
been available if it is shown that (a) it was not reasonably possible to give such notice within the
prescribed time, and (b) notice was given as soon as reasonably possible.

(4)    Section 12.  Policy Termination is deleted and replaced with the following:

"Policy Termination
12.  This policy shall terminate in accordance with the following provisions:

(a) The Parent Organization may cancel this policy at any time by written notice stating when
thereafter such cancellation is to be effective.  Except as set forth in 12.(g) below, the
Company may cancel this policy only for non-payment of premium, and only by delivering or
mailing to the Parent Organization, with a copy to the agent or broker of record, if any, written
notice stating when, not less than fifteen (15) days thereafter, such cancellation will become
effective and stating the reason for such cancellation.  Proof of mailing of such notice will be

14-02-3756 (10/2001 ed.)              Page 1

sufficient proof that the notice was given and this policy will terminate at the date and hour specified in such notice.

(b) The Company will refund the unearned premium computed at the customary short rate if this policy is cancelled by the Parent Organization.

(c) The Company may

    (i)   non-renew this policy, or

    (ii)  condition its renewal upon a change in limits, change in the type of coverage, reduction of coverage, increased deductibles or retentions or addition of exclusions, or upon increased premiums in excess of ten percent (10%) of the expiring rate (exclusive of premiums commensurate with insured value added subsequent to issuance of this policy or at the request of the Parent Organization or as a result of experience rating or retrospective rating);

    (iii) condition its renewal upon requirements relating to the Underlying Insurance, in which event the conditional renewal notice shall be treated as an effective notice of nonrenewal if such requirements are not satisfied as of the later of the Expiration Date in ITEM 5 of the Declarations or sixty days after the mailing or delivery of such notice;"

by mailing or delivering to the Parent Organization, at least sixty (60) days but not more than one hundred twenty (120) days before the end of the Policy Period as set forth in Item 5 of the Declarations, written notice containing the specific reason or reasons for non-renewal or conditional renewal, and setting forth the amount of any premium increase and the nature of any other proposed changes. Any notice of non-renewal will advise the Parent Organization of any rights to coverage and the duration thereof. Copies of notices required under this paragraph will also be mailed or delivered to the authorized insurance agent or broker of record, if any. This requirement will not apply when the Parent Organization or an agent or broker authorized by such entity has mailed or delivered written notice that this policy has been replaced or is no longer desired. If the Company provides notice of non-renewal and subsequently extends the Policy Period for ninety (90) days or less, no additional notice of non-renewal will be required.

(d) If before the end of the Policy Period as set forth in Item 5 of the Declarations the Company provides an incomplete or late conditional renewal notice, coverage hereunder will remain in effect on the same terms and conditions and at the lower of the current rates or the rates for the prior period until sixty (60) days after proper notice is mailed, unless the Parent Organization elects to cancel sooner; provided, however, that if the Parent Organization elects to accept the terms, conditions and rates of the conditional renewal notice and renews this policy on that basis, such terms, conditions and rates will govern upon expiration of such sixty (60) day period.

(e) If before the end of the Policy Period as set forth in Item 5 of the Declarations the Company fails to provide timely or substantially complete notice of non-renewal or conditional renewal, coverage will remain in effect on the same terms and conditions as this policy for another Policy Period at the lower of the proposed or existing Policy Period premium rates.

(f) The Limit of Liability set forth in Item 3 of the Declarations will not be increased by any non-renewal or conditional renewal notification requirements except that it will be increased in proportion to the extension of the policy.

(g) Notwithstanding anything to the contrary in this policy, this policy may be cancelled by the Company for acts or omissions by the Parent Organization or its representative constituting fraud or material misrepresentation in obtaining the policy or in presenting a claim under the

policy.  Such cancellation will be with respect solely to the coverage afforded under this policy for the Underlying Insurance under which the fraud or material misrepresentation occurred. Written notice stating when, not less than fifteen (15) days thereafter, such cancellation shall be effective, will be mailed or delivered to the Parent Organization at the last address known to the Company and its authorized agent or broker, if any.  Such notice shall state the specific reason(s) for the cancellation.  Proof of mailing is sufficient proof that the proper notice has been given."

(5)    The bankruptcy or insolvency of the Insureds, or the Insureds estate(s), shall not relieve the Company of its obligations nor deprive the Company of its rights under this policy.

(6)    It is hereby understood and agreed that, notwithstanding anything in the policy to the contrary, with respect to such insurance as is afforded by the policy, the terms of the policy, as respects coverage for operations in the State of New York, shall conform to the coverage requirements of the applicable insurance laws of the State of New York, or the applicable regulations of the New York Insurance Department; provided, however, that the Company's Limit of Liability, as set forth in Item 3 of the Declarations, shall be excess of the limits of liability of any Underlying Insurance, or self-insurance, as stated in Item 3 of the Declarations, or in any endorsement attached hereto.

(7)    The policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the State of New York.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: May 16, 2007

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

### COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other laws
or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Robert Hamburger_

---
Authorized Representative

Effective date of
this Endorsement: May 16, 2007

**Federal Insurance Company**

Endorsement No.:    4

To be attached to and form a part of Policy
Number:                  7043-0876

Issued to:    LEHMAN BROTHERS HOLDINGS INC.

---

### AMENDED NOTICE ENDORSEMENT

It is agreed that Section 9, Notice, of this Policy, is amended by deleting the second paragraph in its entirety
and replacing it with the following:

Notices required to be given to the Company under this policy shall be given in writing addressed to:

Notice of Claims:

Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey  07059

All Other Notices:

Department of Financial Institutions
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey  07059

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  May 16, 2007

By _____
                    Authorized Representative

Excess Policy
Form 17-02-2373 (Rev. 5-01)

Page 1

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: May 16, 2007

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

FOLLOW FORM ENDORSEMENT

In consideration of the premium charged, it is agreed that in the event of any conflict between the provisions of this Policy and the terms and conditions of the **Primary Policy**, then the terms and conditions of the **Primary Policy** shall control, except with regard to premium, limit of liability, retention or attachment point, and the Pending & Prior Litigation Exclusion date, and in no event shall the coverage provided under this Policy be more broad than the coverage under the **Primary Policy** or any **Underlying Insurance**.

It is further understood and agreed that in any case where this Policy contains any provision which is not referenced in the terms and conditions of the **Primary Policy**, then the provisions of this Policy shall prevail.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: May 16, 2007

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.    The following Section is added to the policy:

      15.    Non-Accumulation of Limits

          If any loss arising from a claim made against any **Insured**, as covered by the **Primary Policy** under Endorsement Number 27, OUTSIDE DIRECTORSHIP ENDORSEMENT (hereinafter "ODL Claim"), is covered under any other valid policy(ies) issued by any member company of the Chubb Group of Insurance Companies, then the total amount the Company shall pay under all such policies for all covered loss on account of such claim shall not exceed the combined aggregate Limit of Liability of $25,000,000.

          Further, and solely with respect to an ODL Claim, this Policy shall recognize any payment made by Lehman Brothers Holdings, Inc. in excess of all payments made by XL Specialty Insurance Company for loss arising from a claim made against any **Insured** which is covered by any member of the XL Capital family of companies under any policy and the **Primary Policy** for Lehman Brothers Holdings, Inc., as being part of the **Underlying Limit** with respect to an ODL Claim.

          Nothing in this Section shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

2.    Solely as respects an ODL Claim, Section 4. Underlying Sublimits is deleted in its entirety.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

**ENDORSEMENT**

Effective date of
this endorsement: May 16, 2007

Company:  Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

### AMEND SECTIONS 1 AND 3 FOR NON-INDEMNIFIABLE LOSS ENDORSEMENT

In consideration of the premium charged, it is agreed:

(1)     Solely with respect to loss covered under Insuring Agreement I. (A) of the **Primary Policy**, the second sentence of Section 1 Insuring Clause of this Policy is amended to read in its entirety as follows:

Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**; except that in the event of financial impairment or insolvency of an insurer of any policy of **Underlying Insurance** (an "Underlying Policy"), coverage otherwise afforded by this Policy shall drop down and attach, to the extent of the unexhausted portion of such Underlying Policy's limit of liability (but subject in all events to this Policy's own limit of liability as set forth in Item 3 of the Declarations), at the point where such Underlying Policy would have attached had such financial impairment or insolvency not occurred.

(2)     Solely with respect to loss covered under Insuring Agreement I. (A) of the **Primary Policy**, Section 3 Depletion of Underlying Limit of this Policy is deleted and replaced with the following:

3.     Only in the event of:

(a)     exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Insurance** paying in legal currency loss which, except for the amount thereof, would have been covered hereunder; or

(b)     financial impairment or insolvency of the insurers of the **Underlying Insurance**,

this Policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner specified in the **Primary Policy**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: May 16, 2007

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

DELETE ENDORSEMENT(S)

In consideration of the premium charged, it is agreed that Endorsement Number(s) 6 is/are deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: May 16, 2007

Federal Insurance Company

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 7043-0876

Issued to:  LEHMAN BROTHERS HOLDINGS INC.

---

ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.    The following Section is added to the policy:

      15.    Non-Accumulation of Limits

          If any loss arising from a claim made against any **Insured**, as covered by the **Primary Policy** under Endorsement Number 27, Amend Insured Person Endorsement (hereinafter "ODL Claim"), including any revisions or amendments made to Endorsement Number 27, is covered under any other valid policy(ies) issued by any member company of the Chubb Group of Insurance Companies, then the total amount the Company shall pay under all such policies for all covered loss an account of such claim shall not exceed the combined aggregate Limit of Liability of $25,000,000.

          Further, and solely with respect to an ODL Claim, this Policy shall recognize any payment made by Lehman Brothers Holdings, Inc. in excess of all payments made by XL Specialty Insurance Company for loss arising from a claim made against any **Insured** which is covered by any member of the XL Capital family of companies under any policy and the **Primary Policy** for Lehman Brothers Holdings, Inc., as being part of the **Underlying Limit** with respect to an ODL Claim.

          Nothing in this Section shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

2.    Solely as respects an ODL Claim, Section 4. Underlying Sublimits is deleted in its entirety.

Q07-2102 (08/2007)                    Page 1

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

## EXHIBIT "C"

**(TRANSCRIPT FROM BENCH RULING IN *ENRON*)**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

In the Matter of:

ENRON CORP., ET AL.,

Case No.

01-16034

Debtor.

-----------------------------------------x

April 11, 2002

2:00 p.m.

United States Custom House

One Bowling Green

New York, New York

B E F O R E:

HON. ARTHUR J. GONZALEZ, U.S. BANKRUPTCY JUDGE

Ruling in reference to:  One, the schedules; two,
exclusivity; and three, the D&O insurance issue

Reported by:

Linda D. Noto, RPR, CSR

2

                    ENRON CORP., ET AL.,

A p p e a r a n c e s:

            WEIL, GOTSHAL & MANGES, LLP
                 Attorneys for Debtors
                 767 Fifth Avenue
                 New York, New York 10153-0119

            BY:    MARTIN J. BIENENSTOCK, ESQ.
                        - and -
                   RICHARD L. LEVINE, ESQ.
                        - and -
                   HANS S. HWANG, ESQ.

            WEIL, GOTSHAL & MANGES, LLP
                 Attorneys for Debtors
                 1501 K Street, N.W., Suite 100
                 Washington, D.C. 20005
            BY:    DAVID R. BERZ, ESQ.

            WEIL, GOTSHAL & MANGES, LLP
                 Attorneys for Debtors
                 700 Louisiana, Suite 1600
                 Houston, Texas 77002
            BY:    STEPHEN T. LODEN, ESQ.

            OFFICE OF THE ATTORNEY GENERAL - STATE OF TEXAS
                 JOHN CORNYN
                 Post Office Box 12548
                 Austin, Texas 78711-2548
            BY:    JEFF BOYD, DEPUTY ATTORNEY
                   GENERAL FOR LITIGATION
                        - and -
                   HAL F. MORRIS, ASSISTANT ATTORNEY
                   GENERAL - SENIOR ATTORNEY
                   BANKRUPTCY & COLLECTIONS DIVISION

3

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)

THOMPSON & KNIGHT LLP

Attorneys for Dunhill Group

1700 Pacific Avenue, Suite 3300

Dallas, Texas 75201

BY:   DAVID M. BENNETT, ESQ.


CARRINGTON COLEMAN SLOMAN & BLUMENTHAL L.L.P.

Attorneys for Kenneth Lay

200 Crescent Court, Suite 1500

Dallas, Texas 75201-1848

BY:   RUSSELL F. NELMS, ESQ.


CADWALADER, WICKERSHAM & TAFT

Attorneys for PG&E

100 Maiden Lane

New York, New York 10038

BY:   EDWARD A. SMITH, ESQ.

4

ENRON CORP., ET AL.,

A p p e a r a n c e s:  (Continued)

CLIFFORD CHANCE ROGERS & WELLS LLP
        Attorneys for PE&E, GTN
        200 Park Avenue
        New York, New York 10166-0153
BY:   WENDY ROSENTHAL, ESQ.


REED SMITH LLP
        Attorneys for The Wiser Oil Company
        375 Park Avenue, 17th Floor
        New York, New York 10152
BY:   DEBORAH A. REPEROWITZ, ESQ.


McCLAIN & SIEGEL, P.C.
        Attorneys for The Employment
        Related Issues Committee
        909 Fannin, Suite 4050
        Houston, Texas 77010


BY:   DAVID McCLAIN, ESQ.

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)

KRONISH LIEB WEINER & HELLMAN, LLP
        Attorneys for The Employee
        Related Issues Committee
        1114 Avenue of the Americas
        New York, New York 10036-7798

BY:   RONALD R. SUSSMAN, ESQ.

BARRY A. BROWN, ESQ.
        Attorney for Upstream Energy Services
        as agent for the gas producers
        The Arena Tower, Suite 1100
        7322 Southwest Freeway
        Houston, Texas 77074

ARTER & HADDEN, LLP
        Attorneys for AEGIS Insurance
        101 West Broad Street, Suite 2100
        Columbus, Ohio  43215-3422

BY:   DAN A. BAILEY, ESQ.

6

                    ENRON CORP., ET AL.,
A p p e a r a n c e s:    (Continued)

         PHILLIPS NIZER, LLP
                Attorneys for AEGIS
                600 Old Country Road
                Garden City, New York  11530-2011
         BY:    LOUIS A. SCARCELLA, ESQ.

         TOGUT, SEGAL & SEGAL LLP
                Attorneys for Enron et al
                One Penn Plaza
                New York, New York  10119
         BY:    FRANK A. OSWALD, ESQ.
                     -and-
                SCOTT RATNER, ESQ.

         NICKENS, LAWLESS & FLACK, L.L.P.
                Attorneys for Officers Regarding
                Insurance Carriers
                1000 Louisiana Street, Suite 5360
                Houston, Texas 77002

         BY:    JACK C. NICKENS, ESQ.

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
        Attorneys for Appaloosa Management L.P.,
        Oaktree Capital Management, LLC,
        Angelo Gordon & Co., L.P.,
        Elliott Associates, L.P.
        1633 Broadway
        New York, New York   10019-6799

BY:   RICHARD F. CASHER, ESQ.

GOLUB & GOLUB, LLP
        Attorneys for Rio Piedras
        225 Broadway, Suite 1515
        New York, New York   10007

BY:   CHRISTOPHER P. BRUNDAGE, ESQ.
              - and -
        FRANK JAKLITSCH, ESQ.

MILBANK, TWEED, HADLEY & MCCLOY LLP
        Attorneys for Official Comm. of the
        Unsecured Creditors Committee
        1 Chase Manhattan Plaza
        New York, New York   10005-1413
BY:   LUC A. DESPINS, ESQ.
              - and -
        MATTHEW BARR, ESQ.

8

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)


DALTON GOTTO SAMSON & KILGARD
        Attorneys for Tittle
        Suite 900, National Bank Plaza
        3101 N. Central Avenue
        Phoenix, Arizona   85012

BY:    GARY A. GOTTO, ESQ.


ENTWISTLE & CAPPUCCI LLP
        Attorneys for Florida State Board
        of Administration
        200 Park Avenue
        New York, New York   10171-1499
BY:    ANDREW J. ENTWISTLE, ESQ.


GIBBS & BRUNS, L.L.P.
        Attorneys for Enron Outside Directors
        1100 Louisiana, Suite 5300
        Houston, Texas   77002
BY:    ROBERT MADDEN, ESQ.

2ace9960-508a-11d6-bfa1-0050da59f9be

9

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)

GENOVESE JOBLOVE & BATTISTA, P.A.
        Attorneys for Class Claimants
        in Houston Action
        Bank of America Tower
        100 Southeast Second Street, 36th Floor
        Miami, Florida  33131
BY:   CRAIG P. RIEDERS, ESQ.
              - and -
      JOHN GENOVESE, ESQ.

TONKON TORP LLP
        Attorneys for Ken L. Harrison
        1600 Pioneer Tower
        888 SW Fifth Avenue
        Portland, Oregon  97204

BY:   ZACHARY W.L. WRIGHT, ESQ.

SHEARMAN & STERLING
        Attorneys for Citigroup
        599 Lexington Avenue
        New York, New York  10022-6069

BY:   FREDRIC SOSNICK, ESQ.

10

                    ENRON CORP., ET AL.,
A p p e a r a n c e s:  (Continued)

            DAVIS POLK & WARDWELL
                    Attorneys for JP Morgan Chase Bank
                    450 Lexington Avenue
                    New York, New York  10017
            BY:    MARSHALL SCOTT HUEBNER, ESQ.

            ROPES & GRAY
                    Attorneys for Present and Former
                    Outside Directors
                    One International Place
                    Boston, Massachusetts  02110-2624

            BY:    WILLIAM F. MCCARTHY, ESQ.

    APPEARING TELEPHONICALLY
                    NEBENZAHL KOHN DAVIS & LEFF LLP
                        ALBERT DAVIES, ESQ.
                        MERTON RANDEL DAVIES, ESQ.
                    WOLLMUTH, MAHER & DEUTSCH LLP
                        KIRSTIN PETERSON, ESQ.

                    VORYS, SATER, SEYMOUR & PEASE
                        JONATHAN AIREY, ESQ.
                    WEIL, GOTSHAL & MANGES LLP
                        MARGARITA COALE, ESQ.

                    ROPES, GRAY
                        GREG KADEN, ESQ.

1              ENRON CORP., ET AL.,

2              THE COURT:  Please be seated.

3              All right.  My recollection, if I

4    left something out I'll have to go back in and get

5    some more papers, but my recollection is that

6    there are three decisions I have to read into the

7    record:  One, the schedules; two, exclusivity; and

8    three, the D&O insurance issue.

9              Was there anything else that I

10   reserved on this morning?

11             All right.  I'll deal first with

12   exclusivity and then I'll read a decision with

13   respect to the D&O.  And when I deal with

14   exclusivity, I'll deal as well with the schedules.

15             Cause exists to extend the Debtors

16   exclusive periods as to all the Debtors.

17             With respect to ENA, the Court will

18   do the following:  One, extend ENA's exclusive

19   period to August 31st, 2002; two, sua sponte

20   expand the ENA Examiner's role to that of the

21   facilitator of a plan in the ENA case and direct

22   him to file a report regarding the status of those

23   efforts including a recommendation as to any

24   further extension of ENA's exclusivity; three,

25   such report shall be filed on or before July 26,

12

1                    ENRON CORP., ET AL.,

2      2002.

3                    With respect to the other Enron

4      Debtors, the exclusive period is extended as

5      requested by the Debtor and the Committee for the

6      six-month period sought.

7                    With respect to the schedules, the

8      Court grants the Debtors' request for the

9      additional 60 days and the related relief sought.

10     And the Debtor is to serve an order with respect

11     to both of those issues, and obviously settle it

12     upon the ENA Examiner with respect to the

13     exclusivity issue.

14                   Regarding the AEGIS motion and the

15     outside directors.  Concerning the motions filed

16     by AEGIS and the outside directors to lift the

17     automatic stay to allow AEGIS to pay amounts under

18     the AEGIS D&O Policy and the AEGIS Fiduciary and

19     Employee Benefit Liability Policy, first, as set

20     forth by the Movants, their motion to lift the

21     stay is the procedurally correct method to have

22     this matter presented to the Court.

23                   Therefore, currently at issue is

24     the payment of the defense costs incurred by the

25     officers and directors.

1              ENRON CORP., ET AL.,

2              The D&O Policy provides for

3    coverage of the directors and officers,

4    indemnification coverage for the Debtor, and

5    entity coverage for the Debtor.

6              Pursuant to the terms of the D&O

7    Policy, the directors have a right to advancement

8    of defense costs under a priority of payments

9    endorsement.

10             The Debtors' entity coverage and

11   its indemnification coverage are expressly

12   subordinated to the rights of the directors and

13   officers under the AEGIS D&O policy.

14             As the Debtors' property rights are

15   defined by state law, it is that law that governs

16   the contractual obligation; thus, any directors

17   and officers currently due defense costs covered

18   by the policy must be paid from the proceeds of

19   the policy first.  The Debtors are then entitled

20   to have their own claims for defense costs paid.

21             The Debtors note the importance of

22   providing the officers and directors with this

23   type of coverage.  The Debtors assert that the

24   Debtor, itself, is entitled to currently-due

25   defense costs and will seek payment once the

14

1                       ENRON CORP., ET AL.,

2       directors and officers receive payments for the

3       amounts currently due them.

4                       With respect to the payment of

5       officers and directors' defense costs, to the

6       extent that any such payments would negatively

7       impact the Debtors' interest in the proceeds of

8       the D&O policy, that result is dictated by the

9       negotiated terms of the policy.

10                      As certain officers and directors

11      may have present rights to payment of defense

12      costs, the fact that certain parties may in the

13      future assert claims and potentially become

14      entitled to payment from the insurance policies

15      does not preclude those who are currently entitled

16      to payment from receiving it.

17                      In any case, the parties are bound

18      by the contractual provisions of the policy.  The

19      Debtors' interest in the policy is limited by its

20      contractual provisions including a priority

21      advancement and payment obligations contained in

22      those policies.  The Court cannot rewrite the

23      provisions of the contract.

24                      The Objectants acknowledge the

25      terms of the contract.  Some of the Objectants

15

1                         ENRON CORP., ET AL.,

2      argue that because AEGIS and the outside directors

3      are seeking to invoke this Court's jurisdiction

4      concerning the lifting of the stay, that gives

5      this Court leeway to set conditions upon which the

6      stay would be lifted.  However, in this case, any

7      such action would result in changing the terms of

8      the contract.

9                         The Court finds that, while

10     exercising jurisdiction concerning the issue of

11     lifting the stay, it should not exercise

12     jurisdiction over the terms of the contract and

13     will not interfere with those terms.

14                        Under the AEGIS Fiduciary Policy,

15     the coverage afforded the relevant Debtors is

16     co-extensive with the coverage afforded the

17     individual insureds.  However, that policy

18     provides a special $10 million fund earmarked for

19     defense costs.

20                        Payment from that fund will protect

21     the coverage that is available for payment of

22     settlements and judgements.  Moreover, payment

23     from the special funds requires written approval

24     from the Debtor.  These two aspects protect the

25     Debtors' interest.

16

```
 1                    ENRON CORP., ET AL.,

 2                    In addition, the Debtors have

 3   referenced the estates' interest in having

 4   individual defendants vigorously defend themselves

 5   in light of the potential for vicarious liability.

 6                    The Debtors also have asserted that

 7   the payment of the individual claimants' defense

 8   cost from the special $10 million fund should not

 9   limit the availability of proceeds that may be

10   required by the Debtor.

11                    Based upon the pleadings filed and

12   the record of this hearing, the Court finds that

13   because of the entity coverage, the stay is

14   implicated.  However, the Debtors' interest appear

15   minimal.

16                    Moreover, the Debtors' interest

17   should not be expanded by this Court.  They should

18   receive no greater protection than their contract

19   rights afford them.

20                    The Court finds cause to lift the

21   stay and grant the motion to permit the parties to

22   exercise their contractual rights under the D&O

23   Policy.

24                    In addition, the Court grants the

25   motion to lift the automatic stay to the extent
```

2ace9960-508a-11d6-bfa1-0050da59f9be

```
1                    ENRON CORP., ET AL.,

2    that the individual insureds and the Debtors may

3    exercise their contractual rights against the

4    $10 million special fund portion of the Fiduciary

5    Policy.

6                    The Movants shall settle an order

7    upon the appropriate parties.

8                    We will begin again, I think, at

9    2:30.  Thank you.

10

11                    (Time noted:  2:05 p.m.)

12                              oOo

13

14

15

16

17

18

19

20

21

22

23

24

25
```

18

C E R T I F I C A T E

STATE OF NEW YORK        )

                         ) SS.:

COUNTY OF NEW YORK       )

      I, LINDA D. NOTO, a Certified Shorthand Reporter, Registered Professional Reporter and Notary Public within and for the State of New York, do hereby certify:

      I reported the proceedings in the within entitled matter, and that the within transcript is a true record of such proceedings.

      I further certify that I am not related, by blood or marriage, to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

      IN WITNESS WHEREOF, I have hereunto set my hand this 11th day of April, 2002.

*Linda D. Noto*

LINDA D. NOTO, C.S.R., R.P.R.

License Number XI 01887 - N.J.

License Number 001002 - N.Y.

212-867-8220        Doyle Reporting, Inc.    Doylerpt1@aol.com

2ace9960-508a-11d6-bfa1-0050da59f9be

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :        **08-13555 (JMP)**
                                                    :
                                 **Debtors.**       :        **(Jointly Administered)**
                                                    :
------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES

Upon the motion, dated December 1, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to section 362(d) of

title 11 to the United States Code (the "Bankruptcy Code") and Rule 4001(a)(3) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order modifying the automatic

stay provided for in section 362(a) of the Bankruptcy Code, to the extent applicable, to allow XL

Specialty Insurance Company and Federal Insurance Company (Chubb) (together, the

"Insurers") to make certain settlement payments in connection with the terms of a settlement

agreement (the "Settlement Agreement") between Openwave Systems Inc. ("Openwave") and

the Individual Defendants,[5] dated November 23, 2009, a copy of which is annexed to the Motion

as Exhibit A, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

---

[5] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

management and administrative procedures [Docket No. 2837] to (i) the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; (vi) all parties who have

requested notice in these chapter 11 cases; (vii) XL Specialty Insurance Company; and (viii)

Federal Insurance Company (Chubb), and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Motion; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates and creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

       ORDERED that the Motion is granted; and it is further

       ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code,

the automatic stay, to the extent applicable, is hereby modified to, and without further order of

this Court, allow the Insurers to make certain settlement payments provided for in the Settlement

Agreement on behalf of the Individual Defendants in accordance with the terms of the Policy;

and it is further

ORDERED the Debtors are authorized to execute all documentation necessary to allow the Insurers to fund the settlement payments on behalf of Individual Defendants pursuant to the Settlement Agreement; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the Insurers, the Debtors or the Individual Defendants provided for under the terms and conditions of the Policy; and it is further

ORDERED that all parties to the Policy reserve all rights and defenses that they would otherwise have; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Policy are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Policy are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that the ten day stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: December __, 2009
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE