**Hearing Date: December 10, 2009, 2:00 p.m. (prevailing Eastern Time)**

BOIES, SCHILLER & FLEXNER LLP

575 Lexington Avenue

New York, NY 10022

Telephone:  (212) 446-2300

Facsimile:  (212) 446-2350

Jonathan D. Schiller

Hamish P.M. Hume

Jack G. Stern

*Attorneys for Barclays Capital Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| In re | SIPA Proceeding Case No. |
| LEHMAN BROTHERS INC., | 08-01420 (JMP) |
| Debtor. | |

## BARCLAYS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THE TRUSTEE AND THE COMMITTEE BASED ON PRIVILEGE WAIVER

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ............................................................................................5

ARGUMENT....................................................................................................................11

    A.    The Trustee Has Waived Attorney-Client Privilege for Any
Communications Reflecting The Trustee's Knowledge and Understanding
of the Sale Transaction...................................................................................12

    B.    The Committee Has Waived Attorney-Client Privilege for Any
Communications Reflecting The Committee's Knowledge and
Understanding of the Sale Transaction. ..........................................................16

    C.    The Trustee and the Committee Have Also Impliedly Waived Work
Product for Documents Reflecting Their Knowledge of the Sale
Transaction. .....................................................................................................21

CONCLUSION.................................................................................................................22

# TABLE OF AUTHORITIES

**Federal Cases**

**Page**

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.*,
   252 F.R.D. 163 (S.D.N.Y. 2002)..........................................................................11

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*,
   605 F.2d 648 (2d Cir. 1979)..........................................................................17

*Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*,
   2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002) ....................................................16

*Bowne of New York City, Inc. v. AmBase Corp.*,
   150 F.R.D. 465 (S.D.N.Y. 1993)..........................................................................15

*Century 21, Inc. v. Diamond State Ins. Co.*,
   2006 WL 2355323 (S.D.N.Y. Aug. 10, 2006) ....................................................17

*Commodity Futures Trading v. Richards*,
   1996 WL 308286 (N.D. Ill. June 6, 1996)..........................................................15

*DeBiasi v. Charter County of Wayne*,
   284 F. Supp. 2d 760 (E.D. Mich. 2003) ............................................................15

*Granite Partners v. Bear, Stearns & Co., Inc.*,
   184 F.R.D. 49 (S.D.N.Y. 1999)..........................................................................21

*IMC Chems., Inc. v. Niro, Inc.*,
   2000 WL 1466495 (D. Kan. July 19, 2000) ......................................................14

*In re von Bulow*,
   828 F.2d 94 (2d Cir. 1987)..........................................................................11, 15

*In re Erie County*,
   546 F.3d 222 (2d Cir. 2008)..........................................................11, 13, 15, 21

*John Doe Co. v. United States*,
   350 F.3d 299 (2d Cir. 2003)..........................................................................13, 21

*Kingsway Fin. Serv., Inc. v. PriceWaterHouseCoopers LLP*,
   2008 WL 5423316 (S.D.N.Y. Dec. 31, 2008) ..................................................21

*Oneida Indian Nation of New York v. Oneida County,*
    214 F.R.D. 83 (N.D.N.Y. 2003) ........................................................................19

*Richard v. Allen,*
    1996 WL 102419 (6th Cir. 1996) ..................................................................17

*Seese v. Volkswagenwerk, A.G.,*
    679 F.2d 336 (3d Cir. 1982) ..........................................................................19

*Shore v. Warden, Stateville Prison,*
    942 F.2d 1117 (7th Cir. 1991) ......................................................................19

*Sloan v. Bertelsmann Music Group,*
    1993 WL 359470 (4th Cir. Sept. 16, 1993) .................................................17

*State Street Bank & Trust v. Inversiones Errazuriz Limitada,*
    374 F.3d 158 (2d Cir. 2004) ..........................................................................18

*Stovall v. United States,*
    85 Fed. Cl. 810 (2009) ..................................................................................14

*Thornton v. Syracuse Sav. Bank,*
    961 F.2d 1042 (2d Cir. 1992) ........................................................................14

*United States v. Adlman,*
    68 F.3d 1495 (2d Cir. 1995) ..........................................................................11

*United States v. Jacobs,*
    117 F.3d 82 (2d Cir. 1997) ............................................................................11

*United States v. Zvi,*
    25 F. App'x 34 (2d. Cir. 2001) ....................................................................19

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.,*
    164 F.3d 123 (2d Cir. 1999) ..........................................................................11

## **Federal Rules**

Federal Rule of Bankruptcy Procedure 7037 ...........................................................1

Federal Rule of Bankruptcy Procedure 9014(c) ......................................................1

Federal Rule of Civil Procedure 37.........................................................................1

Barclays Capital, Inc. ("Barclays"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 37, made applicable by Federal Rules of Bankruptcy Procedure 7037 and 9014(c), hereby moves for an order compelling the Trustee in the Securities Investor Protection Act proceedings (the "Trustee") and the Official Committee of Unsecured Creditors of LBHI (the "Committee") to produce documents in response to Barclays' document requests. The parties have met and conferred with respect to this issue and have failed to resolve it.

## PRELIMINARY STATEMENT

After Lehman Brothers Holdings Inc. ("LBHI") filed for bankruptcy, Barclays agreed to purchase assets associated with Lehman's North American broker-dealer and investment banking businesses. This Court approved the transaction, and the Court's Sale Order was affirmed on appeal. Approximately one year after the Sale closed, LBHI (represented by new counsel), the Trustee, and the Committee filed Rule 60(b) motions seeking to modify the terms of the Sale and the Sale Order. The Rule 60(b) motions are predicated in large part on the assertion that the moving parties and their attorneys misunderstood the terms and effect of the sale documents. That misapprehension, they assert, led them either (i) to mistakenly support the sale transaction, or (ii) to refrain from objecting to, seeking reconsideration of, or appealing the Sale Order. By making these arguments, the movants place at issue the extent to which the attorneys who represented them in the transaction understood and adequately explained the terms of the transaction.

Recognizing that their attorneys' knowledge and advice had been put at issue, LBHI agreed to a waiver of privilege with respect to communications with its lawyers concerning the sale transaction on or before September 30, 2008 (or later such communications that relate to

1

LBHI's state of knowledge on or prior to September 30, 2008).[1]  *See* LBHI Privilege Agreement, attached hereto as Ex. 1.  The Trustee and the Committee, however, have refused to agree that there has been such a waiver or to produce documents that would reveal what they and their lawyers really understood about the sale transaction, even though their motions put that information at issue.  Consequently, Barclays seeks an order compelling the production of such documents.

In their Rule 60(b) motions, both the Trustee and the Committee make the same argument as LBHI:  they did not know (and were not advised), nor did their lawyers understand, the true nature and terms of the sale agreement that the Trustee entered and the Committee, at the very least, acquiesced to.  For instance, the Trustee alleges in support of its claim that it was never "advised" by anyone (which necessarily includes its lawyers) of the correct legal interpretation of the Clarification Letter and that its advisors "did not understand" the effect of the Clarification Letter.  Trustee's Motion for Relief Pursuant to the Sale Orders or, Alternatively, for Certain Limited Relief Under Rule 60(b) ("Trustee's Rule 60 Motion") at ¶¶ 52 (Trustee "did not understand, and was never advised by Barclays or anyone else, that the Clarification letter could be read to grant Barclays billions of dollars of additional assets"); 77 (advisors "did not understand [] that the Clarification Letter would materially and adversely change the sale").  To support this allegation, the Trustee has submitted a declaration from its lawyer that selectively submits evidence as to what the Trustee and its attorneys understood about the effects of the Sale documents and the intent of the Trustee.  *See, e.g.*, Declaration of James Kobak at ¶¶ 10, attached hereto as Ex. 2 (the Trustee and his attorneys "did not believe

---

[1] The September 30, 2008 cutoff date was a product of a negotiated agreement.  Additionally, any information that was known or could have been discovered with reasonable diligence as of that date cannot constitute "new evidence" for purposes of Rule 60(b)(2).

that the Clarification Letter was intended to, or did, effect any material changes"); 11 & 19 (had

they believed the documents could be interpreted as Barclays now contends, he would not have

signed the Clarification Letter or the Transfer and Assumption Agreement ("TAA")).  Thus, as

evidence of its alleged "mistake," the Trustee relies on what its attorneys understood and the

content of its attorneys' advice to the Trustee – in other words, the Trustee argues that if

Barclays' interpretation of the sale documents is correct, then the Trustee was mistaken as to the

effects of the sale documents because its attorneys' advice was incorrect.  That argument has no

legal merit and should be rejected as a matter of law.  In addition, however, Barclays is entitled

to contest the factual predicate of that argument and seeks discovery to test the Trustee's

assertion as to its lawyers' understanding and advice, since that information could provide yet

another basis for rejecting the Trustee's legally flawed argument.

    Moreover, the declaration by the Trustee's attorney, submitted by the Trustee in support

of its motion, is replete with statements about the attorney's impressions and opinions about the

legal effect of various sale documents – about how he believed it "could be read," his

understanding of the sale documents, and the parties' intent.  This selective waiver of privileged

information – the Trustee's attorney's mental impressions and other work product – results in a

waiver of the entire subject matter.

    The Committee has asserted, in anticipation of this motion, that it is situated differently

than LBHI and the Trustee on this issue, and that the Committee's Rule 60(b) motion does not

rely on what Committee lawyers understood.  While the Committee is less explicit than the

Trustee in its reliance on its counsel's understanding and advice, that is principally a function of

the Committee failing to fully address certain required elements of its claim.  For instance, while

not explicitly stating that it is relying on the content of its attorneys' advice, most of the alleged

3

"new evidence" upon which it bases its claim for relief under Rule 60(b)(2) simply involves the

correct legal interpretation of the sale documents.  For example, the Committee claims that Rule

2004 discovery revealed for the first time to the Committee and its advisors that the Clarification

Letter provided for the transfer to Barclays of certain categories of Purchased Assets – all of

which are plainly set forth in the Clarification Letter, which the Committee's attorneys reviewed.

Moreover, the claims filed by the Committee and the Trustee also require that they prove,

among many other things, that they were not aware of and could not have discovered with

reasonable diligence the alleged "new evidence" in time to move for reconsideration of the Sale

Order, that they could not have known enough to raise these issues on appeal, and that they filed

their motions within a reasonable time based on what they knew and when.[2]  In the particular

circumstances of this case, all of the knowledge and relevant communications rest with the

movants' attorneys.  Both the Committee and the Trustee acted, largely if not exclusively,

through their attorneys, who were the ones participating in the meetings about the sale terms and

reviewing the sale documents.  By filing these particular claims, the Committee and Trustee are

necessarily relying on and placing at issue their attorneys' understanding and advice.

In an effort to resolve this dispute, Barclays proposed to the Trustee and the Committee

that they agree not to rely on, in support of any aspect of their Rule 60 motions, any assertion

that their attorneys misunderstood the terms and effect of the sale documents.  *See* Letter from T.

Thomas to E. Taggert dated November 4, 2009, and Letter from T. Thomas to W. Maguire dated

November 10, 2009, attached hereto as Ex. 3.  They both declined.  Because the Trustee and the

---

[2] As a matter of law, the movants cannot meet these burdens because they are charged with
knowledge of the contents of the purchase agreement, including the Clarification Letter that they
now seek to disavow.  Nevertheless, Barclays is entitled to take discovery on the movants' actual
knowledge of the contents of the purchase agreement, which may constitute an additional reason
these burdens cannot be met.

Committee are relying on the substance of attorney-client communications – what they were and were not advised of – and what their lawyers and advisors did and did not understand, the Trustee and the Committee have waived any privilege in connection with such communications.

### FACTUAL BACKGROUND

In addition to joining in LBHI's Rule 60 motion, the Trustee has filed a motion for relief in the SIPA proceeding.  In the Trustee's SIPA motion, he seeks an order confirming his interpretation of the Clarification Letter (which negates several clauses of that letter agreement by making them completely redundant and without meaning).  Alternatively, if the Court does not adopt the Trustee's interpretation of the sale documents, the Trustee asks the Court to nullify the Clarification Letter and to impose a new agreement upon Barclays under the supposed authority of Rule 60.  In his motion, the Trustee makes a number of representations concerning both his and his attorneys' understanding of the deal at the time the sale closed.  In particular, the Trustee asserts Rule 60(b) relief is appropriate because the Trustee was "[n]ever told that the Clarification Letter and the TAA would materially change the deal or add, according to Barclays, up to $6.7 billion in additional assets to the sale."  Trustee's Rule 60 Motion at ¶ 7.  Further, the Trustee claims he would not have executed the Clarification Letter or the TAA "had he been told" of Barclays' interpretation of the documents.  *Id.* at ¶ 8  The Trustee also asserts that he "believed that the Clarification Letter would simply give effect to the deal that had been described at the Sale Hearing."  *Id.* at ¶ 47  He further contends he would not have authorized "his counsel to sign the Clarification Letter if he believed that . . . [it] transferred billions of dollars in customer property and additional assets to Barclays."  *Id.* at ¶ 48  The Trustee also claims he "did not understand that the Clarification Letter would effect any fundamental change in the sale" and that he "did not understand and was never advised by Barclays or anyone else,

that the Clarification Letter **could be read** to grant Barclays billions of dollars of additional

assets that had never been disclosed to the Court." *Id.* at ¶ 52 (emphasis added).

The Trustee also expressly relies on what its "advisors" – which clearly includes its

attorneys – understood about the effect of sale documents. "They [the Trustee's advisors] were

never advised, **and did not understand**, that the Clarification Letter would materially and

adversely change the sale approved by the Court by inserting into the sale a transfer to Barclays

of billions of dollars in additional consideration, including some $2.5 billion in additional LBI

assets at the OCC and as much as an additional $1 billion of LBI assets at other derivative

exchanges." *Id.* at 77 (citing the Kobak declaration) (emphasis added).[3]    The Trustee further

states that he "was not told that the sale documents **could be read** to transfer to Barclays as

much as $6.7 billion in additional assets." *Id.* at ¶ 104 (emphasis added). The Trustee expressly

relies on his purported understanding of the sale documents at the time the sale closed – based on

his advice from counsel – in support of his request for relief, asserting that relief is appropriate

because he "believed that the sale documents (including the Clarification Letter and the TAA) at

closing corresponded to the fundamental parameters of the sale disclosed to the Court." *Id.* at ¶

103

In support of his motion for relief, the Trustee has chosen to partially disclose privileged

information. In particular, the Trustee attaches to its motion an affidavit from James Kobak, his

lead counsel. In the affidavit, Kobak selectively discloses legal opinions held by him, the

Trustee, and other attorneys at Hughes Hubbard concerning the terms of the sale and the effect of

the sale documents. For example, Kobak avers that Hughes Hubbard attorneys were present at

---

[3] The Trustee has also claimed privilege over all of its financial advisors' (Deloitte) work and
communications with the Trustee. Deloitte has not yet produced a privilege log, but the granting
of this motion will largely moot the issue of whether Deloitte's work and documents are
privileged.

Weil as these documents were created and that they "did not believe that the Clarification Letter
was intended to, or did, effect any material changes to the basic $47.4/$45.5 billion deal . . . ."
Kobak Decl. at ¶ 10, Ex. 2.  Further, Kobak states that "We did not understand . . . that the
Clarification Letter could be read to convey billions of dollars in additional customer property
and estate assets to Barclays beyond those that had been disclosed to the Court" and, had that
been the case, "the Trustee would not have authorized [them] to sign the Clarification Letter."
*Id.* at ¶ 11.  Kobak goes on to set forth what the Trustee's attorneys' legal opinion (and
presumably advice) was as to the effect of certain provisions of the sale documents on various
disputed assets.  For example, Kobak states "We understood this provision to be conditioned on,
among other things, there being an excess in LBI's Rule 15c3-3 accounts, which we understood
was believed to be the case," *id.* at ¶ 14, and "We did not believe that this provision provided
Barclays any right to $769 million in securities …," *id.* at ¶ 15.  Finally, Kobak provides that
they did not understand the TAA "would materially change the deal that was presented to the
Court at the Sale Hearing" and, if they had, "[he] would not have signed the TAA." *Id.* at ¶ 19

     The Committee, in addition to joining LBHI's motion, also filed a motion for relief.  In
its motion, the Committee argues relief is appropriate because the Court – and the Committee
itself – were never informed of material changes made to the terms and structure of the
transaction.  The Committee also specifically premises its request for relief under Rule 60 on its
then-existing understanding of certain aspects of the terms of the transaction.  For example, the
Committee requests relief from the Sale Order "pursuant to Federal Rule 60(b) to the extent that
order purports to approve material modifications to the Sale Transaction that were neither
disclosed to, nor secured the imprimatur of . . . the Committee."  Motion of Official Committee
of Unsecured Creditors ("Committee Rule 60 Motion") at ¶ 6.

7

Such disclosures likely would have been made to the Committee's attorneys and financial advisors who were present at Weil over the weekend as the sale documents were finalized. Those attorneys and advisors were the Committee's primary source of direct information concerning the transaction, including information concerning the status and effect of the final Purchase Agreement.  Deposition Transcript of James Seery at 91:20-92:7, 97:21-98:2, 114:20-115:188, and 126:8-126:19, attached hereto as Ex. 4.[4]  At a hearing before this Court on December 22, 2008, Committee counsel represented to the Court unequivocally that the Committee and its advisors participated in the final negotiations over the September 20-21, 2008 weekend.  Transcript of December 22, 2008, Court Hearing at pp. 45-46, attached hereto as Ex. 5 (stating that "the issues . . . from the Friday night when [the Court] approved the sale going forward were thereafter spun into a whole variety of additional discussions and negotiations into Saturday and Sunday.  And we did submit the declaration of Mr. Saul Burian from Houlihan Lokey who was intimately involved in those negotiations").  Committee counsel also represented that, "The Sale Order itself made the Creditors' Committee a party, if you will, to the transaction in the sense that it couldn't be changed without the Creditors' Committee's consent, even an immaterial change."  *Id.*

In its Rule 60 motion, the Committee now claims not to have understood the effect of the final Purchase Agreement that its advisors reviewed and interpreted for the Committee.  The Committee's Rule 60 motion asserts that the Committee never approved the final transaction and lacked basic information concerning the final provisions.  *See* Committee Rule 60 Motion at ¶ 4.  The Committee claims that the most fundamental aspects of the final Purchase Agreement were

---

[4] Dennis Dunne and Luc Despins were attorneys for Milbank, the Committee's attorneys.

8

"unbeknownst to the Court or the Committee." *Id.* However, much of what allegedly was not known to the Committee simply involves the correct legal interpretation of the sale documents.

For instance, the Committee seeks relief, *inter alia*, under Rule 60(b)(2) based on alleged newly discovered evidence, including:

- "the restructuring of the transaction that resulted in Barclays acquiring the broker-dealer business through the Barclays-LBI Repurchase Agreement (and not the APA), including the 'haircut' associated with the Fed Portfolio securities;"

- "the transfer of unencumbered securities in the non-actionable box which may have totaled $2.3 billion (not $1.9 billion); the OCC Accounts, which may have totaled between $2.3 billion and $5.0 billion and the 15c3 Securities (which may have totaled $800 million);" and

- "the haircut under the Barclays-LBI Repurchase Agreement … was retained by Barclays as part of the transaction."

*Id.* at ¶ 71. There should be no dispute that the Committee's attorneys reviewed drafts of the final Purchase Agreement and related agreements before they were finalized. Each of these issues is addressed explicitly in the governing written contracts that the Committee's counsel reviewed and presumably interpreted for the Committee's consideration.

Barclays' document requests seek, *inter alia*, documents relating to the sale transaction and the disputed assets, including what the moving parties (and their attorneys and financial advisors) really understood about the transaction. Barclays' Requests for Production of Documents, attached hereto as Ex. 6. The Trustee and the Committee have refused to agree that they have waived privilege with respect to such information, and they (along with their attorneys and financial advisers, at the Trustee's and Committee's direction,) continue to withhold responsive documents concerning what they knew and were advised about the sale transaction on the grounds of attorney-client and work product privilege.

9

While the Committee has redacted its production extensively, four examples illustrate the way in which the Committee has used the privilege as a shield from discovery concerning the Committee's asserted lack of knowledge or understanding:

1.      On Sunday, September 21, 2008, at 1:22 AM EDT, Committee counsel distributed to the Committee and its advisors a summary of the sale approval hearing. That summary may have included a description of what the Committee's professionals were told before the hearing and during the first recess concerning changes to the transaction. It may also have included a description of what the Committee understood the Court to have considered and ruled upon at that hearing. The description is redacted in its entirety, blocking Barclays from discovering the Committee's true understanding at that time. Sample Redactions from the Committee, attached hereto as Ex. 7(a).

2.      On the same day, at 11:17 PM AST, Committee counsel, having participated in meetings at Weil, distributed an "Update on Barclays/LBI Negotiations." That contemporaneous report on the status of the final negotiations is redacted in its entirety, again shielding from discovery the Committee's true understanding at the time. *Id.*, attached hereto as Ex. 7(b).

3.      Following the Closing of the Sale Transaction on the morning of September 22, 2008, Committee counsel distributed a report to the Committee in anticipation of "POSSIBLE EMERGENCY COMMITTEE CALL TODAY." That report is redacted in its entirety. *Id.*, attached hereto as Ex. 7(c).

4.      That same morning of September 22, in anticipation of a Committee call scheduled for 1:00 PM, Committee counsel also distributed "an email from Houlihan Lokey summarizing the current state of the LBI/Barclays transaction." That email is redacted completely. *Id.*, attached hereto as Ex. 7(d).

Following those communications, the Committee never challenged the Sale Order.

Although the Committee could have sought reconsideration any time through September 30,

2008, and could have filed an appeal any time through November 10, 2008, it did not do so. In

addition to numerous other reasons why the Rule 60 motions are legally meritless, if the

Committee's professionals either really did understand the terms of the deal at closing or failed

to challenge the sale with reasonable diligence thereafter, the Committee should not be entitled

to Rule 60 relief at this time. The Committee's redactions of key communications, however,

effectively block discovery concerning that essential element of the Committee's claim for Rule

60 relief – a matter that the Committee's motion necessarily placed at issue.

## **ARGUMENT**

The "party claiming the benefit of the attorney-client privilege has the burden of

establishing all the essential elements." *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir.

1995).[5] In addition to waiving attorney-client privilege for information actually disclosed, *see*

*United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997), a party impliedly waives privilege for all

attorney-client communications regarding a particular subject matter when the client injects such

issues into the litigation by "rel[ying] on the privileged communication as a claim or defense or

as an element of a claim or defense," *In re Erie County*, 546 F.3d 222, 228 (2d Cir. 2008). In

addition to the doctrine of issue injection, selective (or partial) disclosure of otherwise privileged

communications or information results in waiver of all such communications or information on

that subject. *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) ("testimony as to part of a

---

[5] When cases are governed by federal law, like bankruptcy, privilege is "resolved by the federal common law." *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 126 (2d Cir. 1999) Federal law always governs the applicability of work product. *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008).

privileged communication, in fairness, requires production of the remainder"). Both the Trustee

and the Committee have waived privilege with respect to communications concerning the terms

of the sale transaction, and the Trustee has also waived privilege through selective disclosure of

privileged communications and information with respect to same.[6]

> A.    **The Trustee Has Waived Attorney-Client Privilege for Any Communications Reflecting The Trustee's Knowledge and Understanding of the Sale Transaction.**

The Trustee has waived attorney-client privilege for any communications reflecting the

Trustee's understanding of the sale transaction (including that of its lawyers and financial

advisors) by placing such attorney-client communications at issue in his motion. Like LBHI, the

Trustee asserts that he was never informed of, nor did he otherwise understand, the effect of the

Clarification Letter or the TAA on specific assets in dispute. Notably, he claims that he and his

attorneys did not hold the opinion that the Clarification Letter or the TAA would add additional

assets to the deal. Trustee's Rule 60 Motion at ¶ 7. He also contends he "did not understand and

was never advised by . . . anyone . . . that the Clarification Letter could be read to grant Barclays

billions of dollars of additional assets that had never been disclosed to the Court." *Id.* at ¶ 52.

Furthermore, the Trustee uses his then-existing legal interpretation of the documents as grounds

for relief under Rule 60, stating that relief is appropriate because he believed the Clarification

Letter and the TAA "corresponded to the fundamental parameters of the sale disclosed to the

---

[6] The Trustee has suggested that Barclays might be taking a position inconsistent with the position it took in opposing a prior motion to compel in these proceedings by American Express. However, there is no such inconsistency. In that prior motion, the Court concluded, and Barclays flatly stated, that Barclays was not relying on the substance or content of its attorney's advice in support of its motion. Here, the Trustee and the Committee *are* relying on their attorneys' understanding and advice, and have refused to agree not to so rely.

Court" and that he "was not told that the sale documents could be read to transfer to Barclays as

much as $6.7 billion in additional assets." *Id.* at ¶¶ 103-04

The implied waiver doctrine is designed to eliminate "the type of unfairness to the

adversary that results in litigation circumstances when a party uses an assertion of fact to

influence the decisionmaker while denying its adversary access to privileged material potentially

capable of rebutting the assertion." *Erie County*, 546 F.3d at 229 (quoting *John Doe Co. v.*

*United States*, 350 F.3d 299, 306 (2d Cir. 2003)).  By basing his request for relief on the

assertion that he was never advised by anyone – including his fellow attorneys at Hughes

Hubbard – of the effect of the Clarification Letter and the TAA, the Trustee is placing the

substance of his communications with his attorneys at issue in the motion.  Notably, the Trustee

is seeking relief based upon the advice given to him by his counsel – *i.e.*, that his counsel did not

advise him the documents in dispute could be interpreted as Barclays now contends.  In

particular, should this Court disagree with his interpretation of the documents, he seeks relief

under Rule 60 to the extent the Court's interpretation of the documents is different than the

advice he received from counsel about those documents.  Having asked this Court to accept a

factual assertion concerning what he and his attorneys interpreted the documents to include, and

having used that assertion of fact as a basis for relief, the Trustee cannot now invoke privilege to

prevent Barclays from accessing material potentially capable of rebutting that assertion.  *See*

*John Doe Co.*, 350 F.3d at 306.  Before this Court can accept the Trustee's representations,

Barclays must have an adequate opportunity to rebut them, which necessarily requires discovery

of communications between the Trustee and his attorneys discussing their intent in agreeing to

13

the documents and their understanding as to the legal effects of the relevant documents on certain assets now in dispute.[7]

That the Trustee is relying on what his attorneys did and did not advise him concerning the effect of the sale documents is further demonstrated by the express use of his attorney's then-existing understanding and interpretation of the documents in support of his claim, as well as testimony concerning his client's intent. This is precisely the type of scenario in which implied waiver is found because a party "injects into litigation an issue that requires testimony from its attorneys . . . ." *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992).

Moreover, the Trustee not only uses testimony from his attorney as evidence of a supposed mistake, but also uses such testimony in support of arguing for a particular construction of the sale agreement. The use of otherwise privileged attorney communications and work product as parole evidence also results in an implied waiver, as recently summarized by the Court of Federal Claims:

> Indeed, a veritable Niagara of opinions have concluded that where a party affirmatively reserves the right to use parol evidence to bolster its interpretation of a contract, it may not, via the attorney-client privilege, withhold from discovery attorney-client communications that also form the extrinsic context for the agreement, particularly those that occurred in negotiating or interpreting the agreement. In such circumstances, a waiver of the privilege as to the latter communications is implied. **And fairness particularly compels this result when the party seeking to support its interpretation of an agreement with parol evidence indicates it might rely on evidence taken from its own attorneys**.

*Stovall v. United States*, 85 Fed. Cl. 810, 816 (2009) (emphasis added); *see, e.g., IMC Chems., Inc. v. Niro, Inc.*, 2000 WL 1466495, at *23 (D. Kan. July 19, 2000) ("When a party already has disclosed some privileged information relating to its intent with regard to a contract and such

---

[7] To be sure, there are numerous reasons why the Rule 60 motions (and adversary complaints) fail even if movants really did not understand the deal; however, Barclays is entitled to refute this necessary but far from sufficient element of movants' claims as well.

party intends to rely upon extrinsic evidence to support its interpretation of the contract, it has waived the attorney-client privilege attached to intent and interpretation thereof"); *Commodity Futures Trading v. Richards*, 1996 WL 308286, at *5 (N.D. Ill. June 6, 1996) (where there is an indication that a party's attorney may contribute evidence as to her intention in negotiating a settlement agreement, it would be "improper and unjust to assert the attorney-client privilege to bar discovery of [the] attorneys' intent in negotiating the agreement"). The Trustee himself recognizes that his claim requires testimony from his attorneys, for he has provided an affidavit from one of his attorneys discussing their understanding of the documents and assets now in dispute. Thus, the Trustee is relying upon the legal advice given by his counsel at the time of the transaction to support his interpretation of the documents, and, as such, he has impliedly waived attorney-client privilege. *Stovall*, 85 Fed. Cl. at 816*; see also Erie County*, 546 F.3d at 228; *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 771-772 (E.D. Mich. 2003) (holding that where an attorney submitted an affidavit in support of a contract claim, the attorney became "a fact witness as to the intent of the parties and the understanding of the final language of the relevant contract provisions").

Furthermore, the Trustee has chosen to disclose select portions of privileged communications and attorney work product in support of his claim for relief. As the Second Circuit has noted, subject-matter waiver "allows the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that subject has been disclosed." *In re von Bulow*, 828 F.2d at 101; *see also Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) (attorney-client privilege is waived when "the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others"). The Trustee's submission of his attorneys' legal opinions, combined

15

with his assertions that he was not advised by anyone that the contract "could be read" a certain

way, selectively discloses attorney-client communications about the terms of the deal.

Moreover, the opinions of the Trustee's attorneys as to the correct interpretation of the sale

documents are also privileged work product; by disclosing and relying on that work product, the

Trustee (and his attorneys) have waived privilege with respect to such work product, including

all documents that relate to or reflect on the subject. *See Bovis Lend Lease, LMB, Inc. v. Seasons

Contracting Corp.*, 2002 WL 31729693, at *5 (S.D.N.Y. Dec. 5, 2002) (applying selective

disclosure doctrine to work product).

### B.    The Committee Has Waived Attorney-Client Privilege for Any Communications Reflecting The Committee's Knowledge and Understanding of the Sale Transaction.

Like LBHI and the Trustee, the Committee asserts numerous times throughout its motion

that the Committee was not informed of, and therefore did not understand the terms of, the

transaction as consummated.  Specifically, it contends the transaction "that closed was **far

different from that described to . . . the Committee**," the valuation process of assets (and

alleged undervaluation) was **"[u]nbeknownst to . . . the Committee**," and that there are

"discrepancies between the terms of the Sale Transaction as the Lehman Sellers and Barclays

had represented them to the Committee . . . and **the recitation of those terms appearing in

later-filed documents**."  Committee Rule 60 Motion at ¶¶ 1, 2, 4, and 23 (emphases added).

The Committee's claim that it did not understand the sale transaction that it, at the very

least, acquiesced to, is not superfluous – it is a necessary (although far from sufficient) element

of its claim for relief.  There can be no question that if the Committee was apprised of and

understood the terms of the sale transaction, and the Committee agreed to the terms (or in any

event acquiesced), then it would be barred by numerous legal doctrines such as waiver and

estoppel from seeking the extraordinary relief that it now seeks a year later.

16

For example, one requirement for Rule 60 relief that the Committee has the burden to prove is the timeliness of its motion. *See, e.g., Richard v. Allen*, 1996 WL 102419, at *1 (6th Cir. Mar. 7, 1996) ("The burden is on the moving party to demonstrate to the court that his delay in filing a Rule 60(b) motion was justified"); *Sloan v. Bertelsmann Music Group*, 1993 WL 359470, at *1 (4th Cir. Sept. 16, 1993) (noting that the "movant must make a showing of timeliness"); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir. 1979) (as the delay approaches one year, "there should be a corresponding increase in **the burden** that must be carried to show the delay was 'reasonable'") (emphasis added). While in many cases this requirement will not necessarily put at issue attorney-client communications, in these particular circumstances, it does. This is not a situation where the Committee claims to have not received the Clarification Letter or other sale documents, or bases its claim solely on some unknown fact extrinsic to the sale agreement. Rather, the Committee's claim is necessarily that its attorneys (and financial advisors),[8] who were advising the Committee as to the terms and meaning of the sale documents, did not advise them correctly – that is, that their advice as to the meaning and effect of the sale documents was something other than the meaning and effect that Barclays maintains. *See generally Century 21, Inc. v. Diamond State Ins. Co.*, 2006 WL 2355323, at *2 (S.D.N.Y. Aug. 10, 2006) ("Century has placed the privileged material in issue by suing on an insurance contract that required provision of timely notice, where the law bases timeliness on the knowledge of the insured, and where any evidence relating

---

[8] The Committee appears to be broadly claiming that advice as to the terms of the sale transaction from its financial advisors, Houlihan Lokey, is also privileged. As with Deloitte, Barclays does not believe the majority of communications are so privileged, but it withholds moving to compel on this basis until Houlihan has produced a privilege log, and because a finding of waiver would moot this issue.

17

to Century's knowledge may be found in the protected communication is not likely discoverable

from another source").

The Committee's reliance on what its attorneys advised it concerning the meaning and

effect of the terms of the sale documents can also be seen in the supposed "new evidence" the

Committee relies on in support of its claim for relief under Rule 60(b)(2). To obtain relief under

Rule 60(b)(2), the Committee bears the burden of proving that it was not aware of, and could not

have discovered with reasonable diligence, the "new evidence" within the time to move for

reconsideration of the Court's Sale Order. *State Street Bank & Trust v. Inversiones Errazuriz

Limitada*, 374 F.3d 158, 178 (2d Cir. 2004). Again, the Committee does not rely solely on a

claim that it did not have or know some objective fact extrinsic to the sale agreement. Rather,

much of its "new evidence" is simply based on a legal interpretation of the sale documents.

For instance, the fact that "the restructuring of the transaction that resulted in Barclays

acquiring the broker-dealer business through the Barclays-LBI Repurchase Agreement (and not

the APA), including the 'haircut' associated with the Fed Portfolio securities" is simply a

function of reading and interpreting a legal document. The same is true for the fact that the sale

documents provided for "the transfer of unencumbered securities in the non-actionable box

which may have totaled $2.3 billion (not $1.9 billion); the OCC Accounts, which may have

totaled between $2.3 billion and $5.0 billion and the 15c3 Securities (which may have totaled

$800 million)" and that "the haircut under the Barclays-LBI Repurchase Agreement … was

retained by Barclays as part of the transaction." This is not a situation where there was some lien

on a property that no one knew of; rather, the Committee necessarily claims that its attorneys'

and financial advisors' advice concerning the interpretation and effect of a legal document was

incorrect.

Furthermore, the Committee bears the burden under the mandate rule to prove that it could not have raised its Rule 60 arguments in time to challenge the Sale Order on appeal. *See Oneida Indian Nation of New York v. Oneida County*, 214 F.R.D. 83, 96 (N.D.N.Y. 2003) (placing the burden to establish an exception on the party seeking to modify an order); *Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1123 (7th Cir. 1991) (same). Again, while the Committee makes no mention of its duty in this regard, to satisfy its burden the Committee must, as a matter of law, assert that it and its attorneys did not understand – in time to appeal the Order – that certain publicly disclosed sale documents included as Purchased Assets certain asset categories. If the Committee's attorneys (or Houlihan) advised the Committee (or knew) of the alleged grounds for its Rule 60 motion – *i.e.*, the assets to be included or liabilities to be assumed – at a time when the Committee could have timely appealed the Sale Order, then its claims are barred. *United States v. Zvi*, 25 F. App'x 34, 36 (2d. Cir. 2001) ("The mandate rule also bars the district court from revisiting an issue that could have been, but was not, raised in the initial appeal"); *Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir. 1982) (a lower court may not, via a Rule 60 motion, consider arguments that were includable on appeal). Because the burden is on the Committee to prove otherwise, it is relying upon an implicit assertion that its attorneys and advisors did not, at the time of the sale, advise it of how certain documents could be interpreted or which assets the parties intended to include as part of the sale. Barclays is entitled to test that implicit – but necessary – assertion. The Committee has waived privilege by relying on the premise that its counsel did not know or communicate such information to the Committee and that such information was first revealed to the Committee via recent Rule 2004 discovery. *See, e.g.,* Committee Rule 60 Motion at ¶¶ 4, 33, and 36.

Of course, the Committee motion avoids addressing these aspects of its claim.  For

instance, the Committee simply fails to address its burden to prove timeliness, and therefore does

not explain how it did not understand (and could not have discovered) the true terms and effect

of the deal a year ago, when it had the sale documents and was being advised by some of the

most sophisticated lawyers and financial advisors in the world.  This, of course, is why the

Trustee put in a declaration from its attorney explaining how he did and did not interpret the sale

documents, and the Trustee asserts that he was never "advised" of the correct interpretation of

the sale documents (or, at least, the interpretation Barclays maintains is evident on the face of the

agreement).  However, failing to address these issues as explicitly as the other two movants does

not change the fact that the claim brought by the Committee, and the factual basis for that relief,

necessarily relies on what the Committee's lawyers understood about the deal and did and did

not advise their client of.

The Committee has emphasized – in the context of resisting privilege waiver – that its

claim is about whether the transaction ultimately consummated after the Sale Hearing complies

with the transaction as represented to the Court.  However, as noted above, the Committee's

claim is – and must be – wider than that, and includes its attorneys' understanding and advice

about the terms and effect of the sale.  The fact that the Committee is unwilling to agree to

refrain from relying on what its attorneys and advisors did and did not understand and did and

did not advise the Committee only further highlights this point.  Nor is it relevant that the

Committee may have other claims, or bases for claims, that do not rely on the content of the

advice it received from its attorneys as to the terms of the sale; because some of its claim *does*

rely on such communications, Barclays is entitled to discover those communications.

20

The Committee introduces its Rule 60 motion with a bold heading declaring that, "Sunshine is the best disinfectant." Barclays agrees. Barclays is entitled to discover what the Committee and its agents *really* understood and were advised about the terms of the sale transaction. It would be unfair to force Barclays to defend against the Committee's representations (albeit sometimes implicit) in this regard while at the same time denying it access to material potentially capable of rebutting such assertions. *See Erie County*, 546 F.3d at 229. Therefore, the Committee has impliedly waived attorney-client privilege for documents reflecting upon the attorneys' (and financial advisors') understanding and advice to the Committee.

### C. The Trustee and the Committee Have Also Impliedly Waived Work Product for Documents Reflecting Their Knowledge of the Sale Transaction.

For the above reasons, any assertion of work product for any documents relating to the parties' understanding (including that of their attorneys and financial advisors) of the sale transaction is also waived. This is because "[a] party also impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue." 6 Moore's Federal Practice 26.70[6][c] at 26-226 (3d ed. 1997) (quoted favorably by Second Circuit in *John Doe Co.*, 350 F.3d at 302); *see also Kingsway Fin. Serv., Inc. v. PriceWaterHouseCoopers LLP*, 2008 WL 5423316, at *11 (S.D.N.Y. Dec. 31, 2008) ("The 'at issue' doctrine applies with equal force to assertions of the work product doctrine."); *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) ("work product privilege is waived when a party places otherwise protected work product 'at issue'").

Further, while the work product doctrine is broad, a party can overcome an assertion of work product if it "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R.

Civ. P. 26(b)(3)(A)(ii).  Again, for all of the reasons above, because the Trustee and the

Committee are relying on their attorneys' alleged lack of understanding and advice concerning

the sale terms as a necessary (albeit far from sufficient) basis for the relief they seek, Barclays

has demonstrated a substantial need for materials reflecting the movants' (including their

attorneys and financial advisors) understanding of the terms of the sale.  The substantial

equivalent of such materials – *i.e.*, that would show what the movants' attorneys and financial

advisors understood and advised about the sale terms – cannot be obtained by other means.[9]

## CONCLUSION

For the above reasons, Barclays respectfully requests that the Court find that any

privilege with respect to attorney-client communications or work product reflecting what the

Trustee and the Committee (including its attorneys and other advisors) understood concerning

the sale transaction has been impliedly waived and order the Trustee and the Committee to

produce the requested documents that have been withheld on the grounds of privilege.

---

[9] Barclays believes work product does not apply in the first instance because the parties were not anticipating litigation over the transaction as the transaction was being negotiated and consummated; however, Barclays withholds moving to compel on this basis at this time pending review of the not-yet-received privilege logs because such a challenge may apply differently to different subsets of documents.  The granting of the present motion will moot that issue.

22

Dated:  December 2, 2009

BOIES, SCHILLER & FLEXNER LLP

By:   /s/ Hamish P.M. Hume
      Jonathan D. Schiller
      Hamish P.M. Hume
      Jack G. Stern
      BOIES, SCHILLER & FLEXNER LLP
      575 Lexington Avenue, 7th Floor
      New York, NY 10022
      Telephone:  (212) 446-2300
      Facsimile:  (212) 446-2350

      W. Todd Thomas
      BOIES, SCHILLER & FLEXNER LLP
      401 East Las Olas Boulevard, Suite 1200
      Fort Lauderdale, FL 33301
      Telephones:  (954) 356-0011
      Facsimile:  (9564) 356-0022

      *Attorneys for Barclays Capital Inc.*