# EXHIBIT 3

# BOIES, SCHILLER & FLEXNER LLP
401 EAST LAS OLAS BLVD.* SUITE 1200* FT. LAUDERDALE, FL 33301* 954-356-0011* FAX 954-356-0022

Todd Thomas, Esq.
tthomas@bsfllp.com

November 10, 2009

William R. Maguire, Esq.
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004

    Re:    *In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP)(Bankr. S.D.N.Y. (Jointly Administered); In re Lehman Brothers Inc., Case No. 08-1420 (JMP)*

Dear Bill:

    I write in response to your letter dated November 6, 2009. We have both set out our positions on the privilege waiver issue a number of times, so I do not want to try to brief the issue here; however, because your description of our argument continues to be incorrect, I thought I would briefly try to address the disconnect.

    We do not believe "the mere assertion of a party's understanding or belief trigger[s] waiver." We of course do not believe that mere relevancy can support a waiver. Nor do we believe that "a claim of mistake under Rule 60(b) automatically triggers waiver of privilege." Nor do we disagree that, were the Trustee solely relying on what others told the Trustee and his lawyers, there would be no privilege waiver. And we are not ignoring *Country of Erie*.

    Intentionally or unintentionally, these are all scarecrow arguments.

    Rather, we believe that there has been a clear waiver under even your narrow reading of *County of Erie* – that is, that you are indeed (directly and necessarily) relying on the contents of your communications with your counsel in support of your claims. As I stated in my last letter, "In an effort to make out its claim of 'mistake,' the Trustee relies on its assertion that its attorneys' advice and understanding concerning the interpretation and effect of the sale transaction was incorrect – that is the Trustee's claimed 'mistake.'" The supposed mistake here is not just the failure of some other party to provide the Trustee with some document that the Trustee did not have. Rather, the Trustee *had* the Purchase Agreement (including the Clarification Letter) – the Trustee's claim that it "did not understand" the legal effect of the Clarification Letter or how it "could be read" directly (and necessarily) devolves to what the Trustee's lawyers "understood" and advised the Trustee as to that legal issue.

William R. Maguire, Esq.
November 10, 2009
Page 2

      To the extent you assert that the Trustee is not relying on what the Trustee's attorneys understood and advised the Trustee concerning the terms of the Clarification Letter, is the Trustee willing to agree, *e.g.*, that the Trustee will not rely on any assertion that the Trustee's attorneys did not understand the terms and effect of the Clarification Letter or that the Trustee was not accurately advised by its attorneys as to the terms and effect of the Clarification Letter?

                                        Sincerely,

                                        *Todd Thomas*

                                        Todd Thomas

cc:    Linda M. Beyer
        Robert W. Gaffey
        James C. Tecce

# BOIES, SCHILLER & FLEXNER LLP

401 EAST LAS OLAS BLVD.* SUITE 1200* FT. LAUDERDALE, FL 33301* 954-356-0011* FAX 954-356-0022

Todd Thomas, Esq.
tthomas@bsfllp.com

November 4, 2009

Erica Taggart, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:   *In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP)(Bankr. S.D.N.Y. (Jointly Administered); In re Lehman Brothers Inc., Case No. 08-1420 (JMP)*

Dear Erica:

I write concerning your letter to Chris Green dated October 28, 2009, the Committee's response to Barclays' October 9, 2009 document request, James Tecce's letter to Hamish Hume dated October 12, 2009, and Houlihan's response to Barclays' October 9, 2009 subpoena.

First, with respect to your October 28 letter summarizing the meet and confer discussions, your assertion that "Barclays was unwilling to work toward a mutually acceptable search and review process" is belied by your own description of the meet and confer process in the letter. We indicated a willingness to limit the custodians whose files would be searched. We agreed that the Committee need not produce certain identical documents. We agreed that the Committee need not produce various filed documents. We agreed to consider search terms to help facilitate the Committee's searches. We were working through production issues with you when you promptly terminated the process and announced in your letter that you were producing nothing.

The claimed basis for your producing nothing is that "documents sought from the Committee after September 30 are not relevant and will in any event be privileged, and the Committee therefore will not agree to produce them."

The claimed irrelevance of "what the Committee knew" after the Sale Order was entered is also a central part of the Committee's argument that it has not waived privilege with respect to attorney-client communications concerning the deal. *See* October 12 letter ("Committee questions the relevance of Barclays' discovery into 'what the Committee knew'"; Committee's knowledge was not "legally operative"). Is the Committee willing to agree that, in support of its motion, it is not and will not rely on any assertion that it or its attorneys did not understand the terms and effect of the deal that was consummated by the parties? If so, we may be able to forego this line of discovery. If the Committee is reserving its right to assert that it did not

Erica Taggart, Esq.
November 4, 2009
Page 2

understand the terms or effect of the deal as reflected in the sale documents, then we need to pursue this line of discovery (and the attorney-client communications are at issue).

With respect to Houlihan's response to Barclays' October 9 subpoena, we are happy to discuss the parameters of that production. I do note that, however, that we do not believe that any responsive Houlihan documents could be privileged because (1) Houlihan consultants are not lawyers (so there is no attorney-client privilege), (2) documents they created would have been created even absent any claimed anticipation of litigation, and (3) even if such privileges did exist (they do not), they are waived through the Committee's waiver. Houlihan, based on its own fee application, was retained because of its "extensive knowledge and reputation in financial restructuring," and its "primary role has been to advise and represent the Committee in connection with the Debtor's far flung, varied and complicated assets and operations." None of its work, therefore, can be withheld as privileged.

I am available to discuss these issues at your convenience anytime this week.

                                                        Sincerely,

                                                        *Todd Thomas*
                                                        Todd Thomas


cc:    James C. Tecce, Esq.
        Robert W. Gaffey, Esq.
        William R. Maguire, Esq.