**HEARING DATE:**
December 16, 2009 at 10:00 a.m.
**OBJECTIONS DUE:**
December 7, 2009 at 4:00 p.m.

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller, Esq.
Hamish P.M. Hume, Esq.
Jack G. Stern, Esq.

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Lehman Brothers Inc.,<br><br>      Debtor. | Case No. 08-01420 (JMP)<br>SIPA |
| In re:<br><br>Lehman Brothers Holdings Inc., et al.<br><br>      Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |

**OBJECTION OF BARCLAYS CAPITAL INC. TO MOTION BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC. ET AL., PURSUANT TO 11 U.S.C. § 105(a) AND HAGUE CONVENTION (28 U.S.C. § 1781), FOR LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**

## TABLE OF CONTENTS

I. THE FACTUAL PREDICATE FOR THE DISCOVERY REQUEST
IS FALSE. …………………………………………………………………….1

II. THE DISCOVERY SOUGHT IS IRRELEVANT AND DOES NOT
MEET THE NECESSARY LEGAL STANDARDS. ……………….................5

    A. The Documents Sought Are Irrelevant. ………………………………….7

    B. The Information Contained in the PwC Documents Sought Is
Already Largely Available to the Creditors Committee. ………………...8

    C. The Discovery Sought Would Undermine Important Interests
of the United Kingdom. …………………………………………………..8

# TABLE OF AUTHORITIES

**Cases**

*First American Corp. v. Price Waterhouse LLP*,
    154 F.3d 16 (2d Cir. 1998) .................................................................9

*In re Global Power Equip. Group, Inc.*,
    2009 WL 3464212 (Bankr. D. Del., Oct. 28, 2009) .......................................8

*Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*,
    2007 WL 1875560 (E.D.N.Y. June 25, 2007) ..........................................6, 10

*Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*,
    2008 WL 719243 (E.D.N.Y. Mar. 18, 2008) ............................................9, 10

*Rio Tinto Zinc Corp. v. Westinghouse Elec. Corp.*,
    [1977] 2 C.M.L.R. 420, 1977 WL 58913 (CA (Civ Div)) ...............................9

*Seoul Semiconductor Co. LTD. v. Nichia Corp.*,
    590 F. Supp. 2d 832 (E.D. Tex. 2008) ....................................................6

*Societe Nationale Industrielle Aerospatiale v. United States District Court*,
    482 U.S. 522 (1987) .........................................................................6

*South Carolina Ins. Co. v. Assurantie Maatschappij "de Zeven provincien" N.V.*,
    [1987] A.C. 24 (HL), 1986 WL 407667 ....................................................8

*Smith v. Phillip Morris Companies Inc.*,
    [2006] EWHC 916 (QB), 2006 WL 1078940 ...............................................9

**Statutes**

28 U.S.C. § 1781 ...................................................................................6

Barclays Capital Inc. ("Barclays"), through its undersigned attorneys, respectfully objects to the Motion of the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §105(a) and 28 U.S.C. §1781 for Letters of Request for International Judicial Assistance (the "Motion").[1] The Motion seeks Letters of Request to compel document production: (1) from the United Kingdom's Financial Services Authority ("FSA") relating to Barclays' application for regulatory approval of a failed bid to acquire LBHI and to Barclays' actual purchase of assets of LBHI and Lehman Brothers Inc. ("LBI"), as approved by this Court; and (2) from Barclays' auditors, PricewaterhouseCoopers International Limited and PricewaterhouseCoopers LLP (collectively "PwC"), audit papers relating to Barclays' purchase of LBI and LBHI assets. Each is a non-party located in the United Kingdom.

The Creditors Committee's Motion is based on a false factual predicate and also does not meet the standard for issuing letter requests under governing law.

## I. THE FACTUAL PREDICATE FOR THE DISCOVERY REQUEST IS FALSE.

1.  The Creditors Committee argues that it needs discovery from the FSA and PwC to support assertions made in its pending motion seeking to modify this Court's Order approving the sale of assets to Barclays.[2] The Committee bases its request for

---

[1] Lehman Brothers Holdings Inc. and its affiliated debtors and debtors in possession (collectively, "LBHI") and James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc. (the "Trustee") join in the Motion with respect to the documents sought from FSA, and LBHI joins in it with respect to the documents sought from PwC. (Motion at n.1.)

[2] See Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al., Pursuant to 11 U.S.C. §§ 105(a), Fed. R. Civ. P. 60(b), and Fed. R. Bankr. P. 9024, For Relief From Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rule of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 20, 2008

1

foreign discovery on an assertion that the sale transaction was required to be "flat" or a "wash," yet Barclays ended up recording an undisclosed, "secret" acquisition gain on its accounting statements.

2. This assertion is untrue and is contradicted flatly by the record. In fact, this Court was never told that the transaction necessarily would be "flat," with assets perfectly equal to liabilities. Rather, the information given to this Court made clear that: (a) Barclays would pay $250 million plus the appraised value of the real estate to acquire "all assets" used in the Business – for which no total valuation was given, in the contract or otherwise; (b) the estimated value of the financial assets Barclays was acquiring would *exceed* the estimated value of the liabilities associated with those assets (that was clear both from the original Asset Purchase Agreement ("APA") and from all other information given to the Court), and (c) Barclays would also assume certain contractually specified liabilities, whose dollar amounts could not be determined with certainty, but for which estimates of "potential exposure" were provided by Lehman. (APA attached to Debtor's Motion for Approval of Sale, at Sections 1.1 (definition of Purchased Assets), 2.3 (Assumption of Liabilities), 2.5 (Cure Amounts), 9.1 (Employee Benefits) [Ch. 11 Docket No.280]; 9/19/08 Hearing Transcript ("Sale Hearing Tr.") at 99:22-100:4. [Ch. 11 Docket No. 318].) Given the extraordinary speed with which the transaction was negotiated and consummated, the exceptional volatility in the financial markets, and the uncertainty regarding the information Lehman provided to Barclays, it is untenable to assert, as the Creditors Committee does, that there was *any* guaranteed accounting result to the transaction.

---

(and Related SIPA Sale Order) and Joinder In Debtor's and SIPA Trustee's Motions for an Order Under Rule 60(b) to Modify Sale Order.

3. In addition, the Creditors Committee itself was well aware of Barclays' intention to record an immediate accounting gain on the transaction. Two days before the sale hearing, Barclays announced publicly that it hoped to recognize immediate "capital accretion" as a result of the acquisition. It issued a press release on September 17, 2008 stating that it was acquiring assets "currently estimated to have a value of £40bn (US $72bn) and liabilities currently estimated to have a value of £38bn (US $68bn)." (Ex. 1 hereto). That same day, in a call with financial analysts, Barclays publicly announced that "the transaction is capital ratio accretive without additional equity issuance" and that "the source of that accretion is the negative goodwill from the transaction, which amounts to about 2 billion US dollars post tax". (Ex. 2 hereto.)

4. This information was e-mailed to over two dozen senior Lehman executives[3] and to the Creditors Committee two days before the closing. Additional documents produced by the Creditors Committee, but that the Creditors Committee has refused to de-designate for public filing, further demonstrate conclusively that the Creditors Committee members and advisors were fully aware of the import of Barclays' stated intentions.

5. Indeed, contrary to the Creditors Committee's current claims, the Committee took special note of Barclays' stated intentions, and certain creditors objected at the Sale Hearing that Barclays was receiving a "discount" and a "fire sale" deal. (Sale Hearing Tr. at 174:8; 227:5-15.) This Court considered and rejected those objections,

---

[3] After the September 17, 2008 analyst call, Roger Freeman, a Senior Vice President at Lehman who attended the call reported to his superiors at Lehman, including LBHI President Bart McDade, that Barclays' personnel had stated on the call that it was acquiring trading assets of $72 billion and accruing liabilities of $68 billion, and that "this transaction, due to $2bn in after-tax negative goodwill is accretive to capital ratios immediately." (Ex. 3 hereto.)

3

and accepted the arguments from the Debtor, Weil, Lazard, the SIPC Trustee, and numerous regulators, that the sale was necessary to avoid, among other things, an "immeasurable" injury to global credit markets, and to prevent losses that could run into the "hundreds of billions of dollars." (*Id.* at 93:6-9; 98:10-12).

6. It is also false for the Creditors Committee to suggest, as they do, that the gain Barclays ultimately recorded was somehow the result of "secret" negotiations to transfer "undisclosed" assets. The assets that were transferred to Barclays (and many that have still not been transferred) are all specified in a *written contract* that the Debtor and the SIPC Trustee both signed, and that was given to the Creditors Committee to review. The Creditors Committee chose not to object to that contract, and chose not to file any appeal. There was nothing "secret" about this contract or its terms.

7. Nor was it a surprise to anyone that this contract had to be finalized after the Court issued its Sale Orders approving the sale. At the sale hearing held late in the night of September 19, 2008, Debtor's counsel at Weil, Gotshal & Manges LLP ("Weil") told the Court that there had been "major changes" to the deal set forth in the original APA, and that there were "many moving parts" to the deal that were moving at "great velocity." (Sale Hearing Tr. at 43:14-20.) Debtor's counsel informed the Court that these changes would be reflected in a letter agreement that was still being drafted (what Weil called the "clarifying" or "clarification" letter). (*Id.* at 48:8-10.) Weil also told the Court – as did numerous government officials and regulators, and the SIPC Trustee – that the public interest required the sale to be approved expeditiously, and there was no time to wait for final documentation or formal valuations. (*Id.* at 60:17-25; 61:1-13; 144-45.)

8. In short, the fundamental premise of the Creditors Committee's objections to the sale order (and the supposed justification for burdensome foreign discovery) is

4

untrue. The Creditors Committee was well aware before closing of Barclays' intention to record a day-one profit on the sale transaction. The Creditors Committee knew of, approved, and did not object to or appeal the written agreements filed with this Court that clearly transferred to Barclays assets that exceeded the value of the liabilities Barclays would incur. The Committee merely wishes to renegotiate now a deal that it fully understood and approved of more than a year ago.

## II. THE DISCOVERY SOUGHT IS IRRELEVANT AND DOES NOT MEET THE NECESSARY LEGAL STANDARDS.

9. Despite the fundamental errors in the Creditors Committee's theory of this case, Barclays, the Creditors Committee, Debtor and Trustee have engaged in extensive Rule 2004 discovery pursuant to the Court's June 25, 2009 order. As of November 23, 2009, Barclays has produced over 468,000 bates-numbered pages and over 3,100 spreadsheets in native format. The Creditors Committee, Debtor and Trustee have taken thirty-two depositions of Barclays' executives and former LBI executives, including numerous Rule 30(b)(6) depositions of Barclays' representatives. (Nov. 23, 2009 letter from C. Green to W. Maguire, Ex. 4 hereto.) The parties recently agreed to a second discovery phase pursuant to the Scheduling Order entered October 27, 2009 [Ch. 11 docket no. 5636]. In this phase, the Creditors Committee, Trustee and Debtor served Barclays with additional document requests and have served seven non-parties with subpoenas *duces tecum*. Barclays has already agreed to produce, *inter alia*, non-privileged documents that it provided to its auditors concerning "(i) the Sale Transaction; (ii) the December Settlement; or (iii) any gain or loss Barclays realized on the Sale Transaction or December Settlement, including but not limited to, any gain on acquisition reported in Barclays 2008 Results Announcement." (Objections of Barclays Capital Inc.

5

to the Trustee's, Debtor's and Creditors Committee's First Set of Requests for Production of Documents and Things ("Barclays' Objections"), Ex. 5 hereto; *see* Request and Response to Request No. 3.)

10. Not content with this wide-ranging discovery in the United States in support of demonstrably false assertions, the Creditors Committee now seeks to enmesh the U.K. High Court in overseas discovery of FSA and PwC. Under the governing legal standard, the Court should not issue either Letter Request.

11. This Court is permitted – but not obliged – to issue letters of request pursuant to the Hague Convention of 18 March 1970 on the taking of Evidence Abroad in Civil or Commercial Matters. 28 U.S.C. § 1781. Litigants are not entitled to such letters as a matter of right, nor based upon conclusory assertions of relevance and need. Rather, the Court must "carefully scrutinize applications of this type to attempt to minimize the burden placed on the foreign judiciary by virtue of such an application." *Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, 2007 WL 1875560 at * 1 (E.D.N.Y. June 25, 2007) ("*Metso I*"). The Supreme Court has specifically warned that our courts must "exercise special vigilance" to protect foreign litigants from "unnecessary, or unduly burdensome, discovery...." *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 546 (1987).

12. Several factors must be considered before the Court issues letters of request, including (i) the importance of the information sought, (ii) its availability from other sources and (iii) the extent to which providing such information would undermine important interests of the foreign nation. *Seoul Semiconductor Co. LTD. v. Nichia Corp.*, 590 F. Supp. 2d 832, 833 (E.D. Tex. 2008) (refusing to issue letter of request where

6

balance of factors did not favor plaintiff).[4] A balancing of these factors here weighs decisively against granting the Motion because the Creditors Committee seeks discovery that is irrelevant, largely available by other means, and prohibited by English law.

### A.      The Documents Sought Are Irrelevant.

13.    First, the PwC documents are irrelevant to the Creditors Committee's key claims. Barclays does not contest that it expected to achieve a gain on the sale transaction; to the contrary, it publicized that intention before the Court entered the Sale Order. Nor does Barclays contest that it achieved that goal; its accounting for the transaction is publicly-available in its published financial statements (indeed, the Creditors Committee cites to them in their Letters of Request). The audit work papers are therefore irrelevant.

14.    The FSA documents are similarly irrelevant to the Creditors Committee's claims. The FSA Letter Request seeks 10 categories of documents, the first four of which seek documents relating to the "Initial Barclays' Purchase Proposal," a proposal by Barclays to purchase LBHI and related entities that did not go forward and that this Court was never asked to approve. The remaining categories in the FSA Letter Request include documents reflecting communications between Barclays and the FSA regarding the sale transaction, such as the FSA's "final evaluation of the Sale Transaction." But the FSA's review of the sale transaction is not an issue in the Rule 60(b) Motions and no allegations are made regarding that review or the FSA's approval of the sale transaction. Such documents thus are irrelevant to the present litigation.

---

[4]   Two other factors are (i) the specificity of the requests; and (ii) whether the information sought originated in the United States. *Id.*

7

      **B.**      **The Information Contained in the PwC Documents Sought Is Already Largely Available to the Creditors Committee.**

15.    <u>Second</u>, the information the Creditors Committee seeks is obtainable from other sources. As the Committee itself acknowledges, a key factor in determining whether to grant a request for a Letter of Request is "the availability of alternative means of securing the information." (Motion at 10, citing *In re Global Power Equip. Group, Inc.*, – B.R. –, 2009 WL 3464212, at *12 (Bankr. D. Del., Oct. 28, 2009.) Here, Barclays has agreed to produce non-privileged documents provided to PwC regarding the sales transaction, the December Settlement, and any gain reported in Barclays' 2008 Results Announcement. The Creditors Committee has made no attempt to explain why additional productions from PwC and the FSA are necessary in light of Barclays' agreed production.[5]

      **C.**      **The Discovery Sought Would Undermine Important Interests of the United Kingdom.**

16.    Finally, the discovery sought by the Creditors Committee would undermine two important interests of the United Kingdom – (i) its prohibition on pretrial discovery of non-parties; and (ii) its statutory ban on disclosing information provided to the FSA.

17.    Under English law, pretrial discovery may not be obtained from non-party witnesses. *South Carolina Ins. Co. v. Assurantie Maatschappij "de Zeven provincien" N.V.*, [1987] A.C. 24, 35 (HL), 1986 WL 407667 ("[T]here is no way in which a party to an action in the High Court in England can compel pre-trial discovery as against a person who is not a party to such action...."). This is reflected in England's opting out, under

---

[5] The Creditors Committee asserts incorrectly that "Barclays has not produced (or agreed to produce) documents from its regulators and auditors that have been requested by the Lehman Debtors." (Motion at 3.)

8

Article 23 of the Hague Convention, from issuing Letters of Request "for the purpose of obtaining pretrial discovery." *Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, 2008 WL 719243 at * 4 (E.D.N.Y. Mar. 18, 2008) ("*Metso II*"). Thus, although the *Metso I* Court initially issued a letter of request, the U.K. Special Master *returned* the application for the United States court's "reconsideration" with an explanation of English law prohibiting pretrial discovery of non-parties and the necessity for very specific document requests. *Metso II at* * 1, 9 (U.S. court admonishes defendants for their poorly drafted requests and "reluctantly" issues an amended letter of request with only four very specific document requests).[6] *See also First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22 (2d Cir. 1998) (noting that English court had refused to enforce letter of request seeking testimony and documents of British partners of PW-UK because plaintiff "was seeking pretrial discovery not provided for under the Hague convention or British law"); *Smith v. Phillip Morris Companies Inc.*, [2006] EWHC 916 (QB), 2006 WL 1078940 (denying application for letters of request which appear to be of an impermissible "investigatory nature").

18. In addition, under UK law, information provided to the FSA is confidential and may not be disclosed except in limited and specified circumstances not

---

[6] The Creditors Committee concedes that it may submit only "narrowly-tailored" requests for "particular documents" (Motion ¶ 17), but its requests often place the burden on the responding party to guess what documents might be responsive. For example, the demand audit working papers "supporting or refuting" certain of Barclays' accounting statements, or "referring to the identity of the assets" that Barclays received in the sale transaction. PwC is thus expected to divine what the Creditors Committee would consider to constitute documents supporting or refuting Barclays' accounting, and what they would deem to be references to an asset's "identity." (PwC Letter Requests 2 and 3, Motion, Ex. A.) However, as one British Court put it, discovery respondents "ought not be required to chase through masses of documents to see whether this or that may or may not relate to the dispute." *Rio Tinto Zinc Corp. v. Westinghouse Elec. Corp.*, [1977] 2 C.M.L.R. 420, 425, 1977 WL 58913 (CA (Civ Div)).

9

present here. Unauthorized disclosure is a criminal offense (Financial Services and Markets Act 2000 ("FSA Statute"), ch.8, section 348, sections 348, 349 and 352; Ex. 6 hereto).

19. The Creditors Committee acknowledges this law in a footnote and suggests that a U.K. regulation which allows for disclosure in the context of liquidation proceedings might allow for an exception here. However, that regulation explicitly refers to liquidations *under U.K. statutes* – not to bankruptcy proceedings in foreign countries. (Reg 5, Disclosure, Ex. 7 hereto). The Creditors Committee further argues that this Court should in any event defer to the U.K. Court on whether the FSA Statute precludes the discovery they seek, citing *Metso I*. (Motion at n.10.) The Creditors Committee fails to acknowledge however, that in *Metso II*, the court emphasized the futility in sending out obviously inappropriate requests. Moreover, in *Metso I*, the motion for a letter of request was unopposed, and no issues of relevance were raised regarding the discovery sought. Here, where the Motion is based on a fundamentally false premise and where the Creditors Committee cannot credibly claim that the documents sought are relevant or necessary to this litigation, this Court should not burden the foreign tribunal with an application for Letters of Request.

WHEREFORE, Barclays respectfully requests that the Court deny the Motion and grant Barclays such additional and further relief as the Court deems just and appropriate.

Dated: New York, New York
December 7, 2009

                          BOIES, SCHILLER & FLEXNER LLP

                    By:   /s/ Hamish P.M. Hume
                        Jonathan D. Schiller
                        Hamish P.M. Hume
                        Jack G. Stern
                        BOIES, SCHILLER & FLEXNER LLP
                        575 Lexington Avenue
                        New York, NY 10022
                        Telephone: (212) 446-2300
                        Facsimile: (212) 446-2350

                        *Attorneys for Barclays Capital Inc.*