William R. Maguire
Seth D. Rothman
Neil J. Oxford
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000 (telephone)
(212) 422-4726 (facsimile)
maguire@hugheshubbard.com

Attorneys for James W. Giddens, as
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **Case No. 08-13555 (JMP)** |
| | : | |
| | : | **(Jointly Administered)** |
| Debtors. | : | |
| | : | |
| In re: | : | |
| | : | |
| **LEHMAN BROTHERS INC.,** | : | **Case No. 08-01420 (JMP) (SIPA)** |
| | : | |
| Debtor. | : | |
| | : | |

**THE TRUSTEE'S MEMORANDUM OF LAW IN
OPPOSITION TO BARCLAYS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE TRUSTEE AND
<u>THE COMMITTEE BASED ON PRIVILEGE WAIVER</u>**

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

    The Trustee's Motion Relies on the Representations that Lehman and Barclays Made at the Sale Hearing..............................................................................................2

    The Trustee's Alternative Claim of Mistaken Reliance on Lehman's and Barclays' Representations at the Sale Hearing ..................................................................3

    LBHI's Motion.................................................................................................................5

    Barclays' Claim of Waiver ..............................................................................................6

    The Trustee Has Repeatedly Confirmed That He Is Not Relying on Any Privileged Communication ...............................................................................................6

ARGUMENT..................................................................................................................................8

    I.     THE TRUSTEE HAS NOT WAIVED ANY PRIVILEGE ...................................8

          A.     The Trustee Does Not Rely On Privileged Communications......................8

          B.     There is No Unfairness to Barclays .............................................................11

    II.    THE TRUSTEE HAS NOT WAIVED WORK PRODUCT.................................11

CONCLUSION.............................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975) ................................................................8, 9, 11

John Doe Co. v. United States, 350 F.3d 299 (2d Cir. 2003) ....................................................11, 12

Pritchard v. County of Erie (In re County of Erie), 546 F.3d 222 (2d Cir. 2008) ..................8, 9, 11

**STATUTES AND RULES**

11 U.S.C. § 105 ...................................................................................................................................2

11 U.S.C. § 363 ...................................................................................................................................2

11 U.S.C. § 365 ...................................................................................................................................2

Fed. R. Bankr. P. 2002 ........................................................................................................................2

Fed. R. Bankr. P. 6004 ........................................................................................................................2

Fed. R. Bankr. P. 6006 ........................................................................................................................2

Fed. R. Civ. P. 26 ..............................................................................................................................11

Fed. R. Civ. P. 60 ...................................................................................................................3, 5, 8, 10

James W. Giddens (the "Trustee"), as trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI" or "Debtor") submits this memorandum of law in opposition to Barclays' Motion to Compel Production of Documents from the Trustee and the Committee Based on Privilege Waiver ("Barclays Motion") to the extent that the motion applies to the Trustee.

## PRELIMINARY STATEMENT

1. Against all evidence, Barclays Capital Inc. ("Barclays") insists that the Trustee is relying upon privileged communications in litigating the dispute about Barclays' acquisition of Lehman's business. Barclays is wrong. The Trustee is not relying on privileged communications. The Trustee's motion papers seeking relief against Barclays rely on the representations that Lehman and Barclays made to the Court at the September 19, 2008 sale hearing and do not even mention, much less rely upon, any privileged communication.

2. Barclays' misreading of the Trustee's papers and its insistence that the Trustee "has refused to agree not to so rely" on privileged communications is inexplicable. In a lengthy exchange of emails and letters over the past two months, the Trustee has repeatedly confirmed that his motion does not rely upon any privileged communication. Barclays' motion disregards the plain meaning of the Trustee's papers and these express written confirmations that the Trustee is not relying on any privileged communication.

3. Because the Trustee does not rely on any privileged communication, there is no basis for any claim of waiver and Barclays' motion should be denied.

## STATEMENT OF FACTS

**The Trustee's Motion Relies on the Representations
that Lehman and Barclays Made at the Sale Hearing**

4. On September 15, 2009, the Trustee filed a motion (the "Trustee's Motion," LBI Docket No. 1971) to resolve its dispute with Barclays concerning the sale that was the subject of this Court's hearing on September 19, 2008 (the "Sale Hearing"), and the Court's sale orders issued on September 20, 2008 (the "Sale Orders").[1] The dispute includes competing claims to over $6 billion of estate property, which the Trustee may need to honor customer claims. This property includes:

   (i) Over $1.3 billion in cash, notwithstanding both Lehman's and Barclays' representations to the Court at the Sale Hearing that Lehman cash would not be conveyed to Barclays;

   (ii) Over $1 billion of customer or estate property that Barclays obtained in what appears to be a series of improper transfers, which the Trustee discovered in the course of the recent Rule 2004 discovery of Barclays;[2] and

   (iii) Approximately $3 billion of additional customer or estate property, which Barclays claims was included in the sale.

5. The Trustee's Motion argues that Barclays is not entitled to the disputed assets. In addition to specific contractual arguments under the sale documents (Trustee's Motion ¶¶ 80-

---

1. The Sale Orders are: (i) Order under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (LBHI Docket No. 258); and (ii) Order Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings Inc. Chapter 11 Proceeding (LBI Docket No. 3).

2. The bulk of this property was transferred to Barclays <u>before</u> the sale was closed on September 22, 2008. Barclays initially advised the Trustee that this property was transferred to Barclays as "repo" collateral, but subsequently corrected this representation, and now insists that the transfers belong to Barclays pursuant to the terms of the Clarification Letter.

86), the Trustee asserts that the Court did not approve two of the sale documents, the Clarification Letter and the Transfer and Assumption Agreement, or any conveyance of the disputed assets, and argues that Barclays' claims to these assets are fundamentally inconsistent with the terms that Lehman and Barclays presented to the Court, and which the Court approved in the Sale Orders. (Trustee's Motion ¶¶ 87-88.) Conveying the disputed assets to Barclays would materially change the nature of the transaction that was presented to the Court, which was supposed to involve: (a) the transfer of assets (other than real estate) totaling $47.4 billion; and (b) no transfer of cash. (Id. ¶¶ 2, 3, 26, 32-33 (citing Transcript of Sale Hearing at 47:1-48:1, 53:21-25, 205:17-208:5, 242:11-16.)

**The Trustee's Alternative Claim of Mistaken Reliance
on Lehman's and Barclays' Representations at the Sale Hearing**

6. The principal ground for the relief sought by the Trustee is that the sale agreements do not convey, and that the Sale Orders do not approve conveying, the disputed assets to Barclays. The Trustee's Motion also seeks alternative relief in the event that the sale agreements and the Sale Orders are deemed to convey such assets to Barclays. In that event, the Trustee seeks relief from the Sale Orders under Rule 60(b) of the Federal Rules of Civil Procedure on the ground of mistake. (Id. ¶¶ 93-101.)

7. The Trustee's Motion asserts that the Trustee relied on Lehman's and Barclays' representations at the Sale Hearing and entered into the Clarification Letter and the Transfer and Assumption Agreement on the understanding that those agreements were intended to clarify or effectuate the Asset Purchase Agreement as described to the Court, and that no-one, including Barclays, disclosed to the Trustee or his counsel that anything in those agreements would materially change the sale from what had been disclosed to and approved by the Court:

> (i) "[N]either the Court nor the Trustee was ever told that the Clarification Letter and the TAA would materially change the deal or add, according to

|     | Barclays, up to $6.7 billion in additional assets to the sale." (Trustee's Motion ¶ 7.) |
| --- | --- |
| (ii) | "The Trustee believed that the sale was intended to maximize the value of the LBI estate, and he would not have executed the Clarification Letter or the TAA had he been told that they would, as Barclays now claims, relinquish as much as $6.7 billion in customer property and additional estate assets." (Id. ¶ 8.) |
| (iii) | "Based on the representations made to the Court, the Trustee believed that the Clarification Letter would simply give effect to the deal that had been described at the Sale Hearing." (Id. ¶ 47.) |
| (iv) | "The Trustee would not have authorized his counsel to sign the Clarification Letter if he believed that, as Barclays now claims, the Clarification Letter transferred billions of dollars in customer property and additional assets to Barclays." (Id. ¶ 48.) |
| (v) | The Trustee "did not understand, and was never advised by Barclays or anyone else, that the Clarification Letter could be read to grant Barclays billions of dollars of additional assets that had never been disclosed to the Court." (Id. ¶ 52.) |
| (vi) | The Trustee's advisors "were never advised, and did not understand, that the Clarification Letter would materially and adversely change the sale approved by the Court by inserting into the sale a transfer to Barclays of billions of dollars in undisclosed consideration, including some $2.5 billion in additional LBI assets at the OCC and as much as an additional $1 billion of LBI assets at other derivatives exchanges. (Kobak Decl. ¶¶ 16, 20.) Similarly, Barclays did not disclose to the Trustee that the assets that it would claim as a result of adding the parenthetical expression '(and any property that may be held to secure obligations under such derivatives)' or as a result of entering into the TAA included some $1.3 billion in cash at the OCC. (Id. ¶ 20.) Rather, the Trustee understood that, in accordance with the representations made at the Sale Hearing, cash was excluded from the sale. (Id.)" (Id. ¶ 77.) |
| (vii) | "The Trustee, who entered the negotiations late in the process, had little information concerning LBI, had no active role in drafting the Clarification Letter and the TAA, relied on the representations made to the Court at the Sale Hearing, and believed that the sale documents (including the Clarification Letter and the TAA) at closing corresponded to the fundamental parameters of the sale disclosed to the Court." (Id. ¶ 103.) |
| (viii) | "Like the Court, the Trustee was not told that the sale documents could be read to transfer to Barclays as much as $6.7 billion in additional estate assets." (Id. ¶ 104.) |

8. The motion papers include the Declaration of the Trustee's counsel, James B. Kobak, Jr. (the "Kobak Declaration"), which confirms that Mr. Kobak and the Trustee attended the Sale Hearing and relied on the representations that Lehman and Barclays made to the Court and on the fact that no-one, including Barclays, said anything to contradict any of those representations. The Kobak Declaration reiterates that the Trustee and his attorneys "understood that, <u>as described at the Sale Hearing</u>, Barclays was still acquiring $47.4 billion in assets and assuming $45.5 billion in liabilities in connection with those assets. We did not understand, and <u>were never advised by anyone, including Barclays</u>, that the Clarification Letter could be read to convey billions of dollars in additional customer property and estate assets to Barclays beyond those that had been disclosed to the Court." (Kobak Declaration ¶ 11 (emphasis added).)

9. Based on this general assertion, the Kobak Declaration states the Trustee's position with respect to each of the assets in dispute between the Trustee and Barclays.[3]

**LBHI's Motion**

10. On September 15, 2009, Lehman Brothers Holdings Inc. ("LBHI") also filed a motion (the "LBHI Motion," LBHI Docket No. 5514), seeking, among other things, limited relief pursuant to Rule 60(b) from the sale order entered in the chapter 11 proceeding. (LBHI Motion at 1.) The LBHI Motion relies on LBHI's privileged attorney-client communications. It

---

3. See Kobak Declaration ¶ 13 ("I understood that Barclays agreed to exclude the assets at the DTCC from the Asset Purchase Agreement. Between late Sunday night and early Monday morning, the DTCC drafted a letter reflecting this agreement."); ¶ 14 ("[w]e understood this provision to be conditioned on, among other things, there being an excess in LBI's Rule 15c3-3 accounts, which we understood was believed to be the case."); ¶15 ("my understanding of the factual situation" was that the Clarification Letter did not provide "Barclays any right to the $769 million in securities, unless (i) there was an excess in the Rule 15c3-3 accounts, as was believed to be the case that weekend, (ii) there was regulatory approval to release the fund or securities from the lock-up, and (iii) customer claims were fully satisfied in the SIPA liquidation."); ¶16 ("[w]e were not involved in any business discussion in which anyone agreed to give Barclays margin at the OCC or at other exchanges."); ¶19 ("[t]he TAA was not intended to, and we did not understand that it would, provide Barclays with more than $2.5 billion in margin and clearing funds.").

asserts that the "Sale Order was entered on an inaccurate record due to mistake, inadvertence or misrepresentations to the Court." (Id.) LBHI explains that this "mistake" was a result of multiple factors, including the fact that Barclays and certain Lehman executives did not inform the Court or LBHI's in-house and outside counsel of undisclosed benefits that would be transferred to Barclays under the sale documents. (Id. at 1, ¶¶ 39-40.) The LBHI Motion asserts that LBHI's lawyers who were involved in the drafting of the sale documents, such as Steven Berkenfeld, "were kept in the dark," and "were effectively prevented from disclosing the discount to the Court," by the failure of these LBHI executives and Barclays to appraise them of undisclosed features of the sale. (Id. ¶¶ 45-46.)

11. Unlike LBHI, the Trustee does not rely on any privileged communication with his counsel. The Trustee relies on the public representations made to him, his counsel, and the Court at the Sale Hearing, and on the failure of the only people who knew better (Barclays and certain Lehman executives) to say anything to contradict those representations.

**Barclays' Claim of Waiver**

12. In response to the Trustee's Motion, Barclays has demanded that the Trustee produce all of the Trustee's privileged attorney-client communications concerning the sale, all of his counsel's privileged internal communications, and all of his counsel's privileged work product. (Barclays Motion at 22.)

**The Trustee Has Repeatedly Confirmed That He
Is Not Relying on Any Privileged Communication**

13. Barclays fails to mention the Trustee's repeated confirmations that his motion does not rely on any privileged communication and asserts that the Trustee has "refused to agree not to so rely." (Barclays Motion at 12 n.6; see also id. at 4.) In fact, by a letter dated October 13, 2009 (Maguire Decl. Ex. A), we pointed out that, in this Circuit, a claim of waiver requires

showing reliance upon a privileged communication, and we confirmed that the Trustee's papers did no such thing. We addressed each of the paragraphs of the Kobak Declaration that Barclays had cited to support a claim of waiver and showed Barclays how none involved any mention of, much less reliance upon, a privileged communication:

- "The Trustee and Mr. Kobak did not believe that the Clarification Letter was intended to, or did, effect any material changes to the basic $47.4/$45.5 billion deal, particularly as far as protection of customers or the integrity of the LBI estate were concerned. (¶10.)

- The Trustee and Mr. Kobak 'understood that, as described at the Sale Hearing, Barclays was still acquiring $47.4 billion in assets and assuming $45.5 billion in liabilities in connection with those assets. We did not understand, and were never advised by anyone, including Barclays, that the Clarification Letter could be read to convey billions of dollars in additional customer property and estate assets to Barclays beyond those that had been disclosed to the Court.' (¶11.)

- The TAA 'was not intended to, and we did not understand that it would, provide Barclays with more than $2.5 billion in margin and clearing funds, as Barclays now claims. Nor did we understand that it would materially change the deal that was presented to the Court at the Sale Hearing.' (¶19.)"

(Maguire Decl. Ex. A at 1-2.)[4]

14. As we advised Barclays:

Nowhere in any of these paragraphs or elsewhere in the Kobak Declaration or the Trustee's motion does the Trustee place at issue his reliance on any legal advice.

All that these paragraphs set forth is the unremarkable proposition that no-one, including Barclays, informed the Court, HHR or the Trustee that the sale would convey to Barclays billions of dollars of assets beyond what had been disclosed to the Court. There is nothing in this fact that implicates waiver of privilege.

---

4. References to "Maguire Decl." are to the accompanying Declaration of William R. Maguire in Support of the Trustee's Memorandum of Law in Opposition to Barclays' Motion to Compel Production of Documents from the Trustee and the Committee Based on Privilege Waiver.

-7-

(Id. at 2.)

15. Barclays responded by citing additional passages from the Trustee's motion papers, and in a further letter, dated November 6, 2009 (Maguire Decl. Ex. B), we confirmed that none of the additional passages relied upon any privileged communication. Under the caption "No Reliance on Any Privileged Communication," we wrote:

> Your letter cites additional paragraphs of the Trustee's motion papers, but again fails to identify any reliance on any privileged communication. Barclays cannot get around this hole in its argument by re-writing the Trustee's papers. Contrary to the assertion on page 2 of your letter, the Trustee does not need to, and is not undertaking to prove "what its lawyers advised the Trustee."

(Maguire Decl. Ex. B. at 2 (footnote omitted).)

16. We also pointed out that Barclays' waiver argument was flatly inconsistent with the position that Barclays had asserted in its dispute with American Express. (Id. at 3-4.) In that dispute, Barclays asserted that it had not waived any privilege, despite having submitted a declaration that referred to a privileged communication as the basis of its declarant's understanding of the mistake for which Barclays sought relief under Rule 60. (Id.)

## ARGUMENT

### I. THE TRUSTEE HAS NOT WAIVED ANY PRIVILEGE

#### A. The Trustee Does Not Rely On Privileged Communications

17. The Second Circuit has held "that a party must rely on privileged advice from his counsel to make his claim or defense" in order to effect waiver of the attorney-client privilege. Pritchard v. County of Erie (In re County of Erie), 546 F.3d 222, 229 (2d Cir. 2008) (emphasis in original). In In re County of Erie, plaintiffs sought disclosure of privileged communications between the offices of the County Sheriff and the County Attorney concerning a strip search policy that plaintiffs were challenging. Id. at 224-25. The District Court applied what was

known as the Hearn test and found waiver.[5] Id. at 226. The Second Circuit reversed, holding that the Hearn test was overbroad because it would frequently result in waiver of privileged information that was "relevant." Id. at 229. Noting that "privileged information may be in some sense relevant in any lawsuit," the Second Circuit was concerned that the Hearn test could open "a great number of privileged communications to claims of at-issue waiver." Id. (emphasis in original). Accordingly, the Court held that, "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue," and instead, "the essential element of reliance on privileged advice in the assertion of the claim or defense [is necessary] in order to effect a waiver." Id.

18. Under County of Erie, there is no waiver here because the Trustee's motion papers do not mention a single privileged communication. Accordingly, Barclays fails to identify a single instance in the Trustee's Motion where the Trustee even mentions a privileged communication. All Barclays' citations are to passages of the Trustee's papers affirming that the Trustee relied on Lehman's and Barclays' representations at the Sale Hearing. For example, Barclays repeatedly cites to statements in the Trustee's papers that the Trustee and his counsel "did not understand and w[ere] never advised by Barclays or anyone else, that the Clarification Letter could be read to grant Barclays billions of dollars of additional assets that had never been disclosed." (Barclays Motion at 2, 5-6 (citing Trustee's Motion ¶ 52; emphasis added by Barclays).) By emphasizing the words, "could be read," Barclays suggests that the Trustee is

---

5. The Hearn test, originating from Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), finds at-issue waiver of privileged communications whenever, (i) the party asserting privilege takes an affirmative act, such as filing suit; (ii) by such act, the asserting party puts protected information at issue by making it relevant to the case; and (iii) the application of privilege would deny the opposing party information vital to the defense. In re County of Erie, 546 F.3d at 226 (citing Hearn, 68 F.R.D. at 581).

referring to a communication between the Trustee and his counsel. In fact, the sentence and the paragraph cited by Barclays clearly refer to what the Trustee and his counsel were told by Lehman and Barclays and not to any privileged communication:

> The Trustee did not understand that the Clarification Letter would effect any fundamental change in the sale. (Kobak Decl. ¶ 10-11.) The Trustee understood that Barclays was acquiring $47.4 billion in assets, as disclosed at the Sale Hearing, and did not understand, and was never advised by Barclays or anyone else, that the Clarification Letter could be read to grant Barclays billions of dollars of additional assets that had never been disclosed to the Court. (Id. ¶ 11.)

(Trustee's Motion ¶ 52.)[6]

19. Misreading the Trustee's motion papers and disregarding our repeated confirmations that the motion does not rely on any privileged communication, Barclays insists on recasting the Trustee's statements about what he and his attorneys were or were not told by Lehman and Barclays into what Barclays claims are references to privileged advice.[7] There is no foundation for this "straw man" argument because Barclays cannot point to any reliance on privileged advice in the Trustee's motion papers. (See supra ¶¶ 13-15, 18.)

20. Barclays' remaining arguments are similarly without merit. Barclays fails to provide any support for its argument that the timeliness of a Rule 60 motion warrants waiver of all the movant's privileges (Barclays Motion at 4) and such an argument is directly contrary to

---

6. The same is true for all Barclays' other citations. (See Barclays Motion at 2, 3, 5, 6, 12, 13 (citing paragraphs 7, 8, 47, 48, 77, 103 and 104 of the Trustee's Motion, all of which, like paragraph 52 above, explicitly refer to the Trustee's and his counsel's reliance on what Lehman and Barclays represented at the Sale Hearing and their failure to say anything contrary to those representations), and at 7 (citing Kobak Declaration ¶¶ 14-15, which, like the foregoing paragraphs, lack any reference to privileged advice).)

7. See, e.g., Barclays Motion at 6 ("[t]he Trustee expressly relies on his purported understanding of the sale documents at the time the sale closed - based on his advice from counsel."); 13 ("[n]otably, the Trustee is seeking relief based upon the advice given to him by counsel - i.e., that his counsel did not advise him the documents in dispute could be interpreted as Barclays now contends.").

County of Erie, not to mention the position that Barclays adopted before this Court in the American Express dispute. (See supra ¶ 16.)

### B. There is No Unfairness to Barclays

21. The notion of unfairness is fundamental to a finding of at-issue waiver of privilege. Even under the Hearn test that the Second Circuit held deficient, unfairness was necessary to justify waiver. In re County of Erie, 546 F.3d at 226.

22. Upholding the Trustee's privilege is not unfair to Barclays. The Trustee is not relying on any privileged communication, so respecting the privilege cannot prejudice Barclays. Moreover, Barclays can readily test the Trustee's factual assertions. Barclays is free to inquire what facts Mr. Kobak and the Trustee did or did not know at the time of the sale. Barclays has ready access to its own lawyers, bankers, employees, and other professional advisors who were key actors in the sale to test what Lehman and Barclays did or did not disclose to the Trustee and his representatives. Barclays has no need, therefore, to invade the Trustee's and his counsel's privileged communications.[8]

## II. THE TRUSTEE HAS NOT WAIVED WORK PRODUCT

23. Work product is discoverable only upon a showing that the requesting party has "substantial need" of the materials to prepare his case and that the party "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). A party waives work-product protection by placing "the substance of the documents

---

8. Barclays cites John Doe Co. v. United States, 350 F.3d 299 (2d Cir. 2003), in support of its fairness argument. (See Barclays Motion at 13.) The Second Circuit's opinion in fact favors the Trustee. Holding that there had been no waiver of privilege, the Second Circuit stated that there is no unfairness where, as here, the non-asserting party has "adequate opportunity to rebut" the asserting party's representations. John Doe Co., 350 F.3d. at 305.

for which the protection is claimed at issue." John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) (quoting 6 Moore's Federal Practice 26.70[6][c] at 26-226 (3d ed. 1997)). Barclays can establish neither need nor waiver here. Barclays has no need to invade the Trustee's privileges, and the Trustee has not placed any of his counsel's advice or work-product at issue.

## CONCLUSION

For the forgoing reasons, the Trustee respectfully requests that this Court deny Barclays' motion to compel the Trustee to produce documents on the basis of privilege waiver.

Dated: New York, New York
       December 7, 2009

                HUGHES HUBBARD & REED LLP

                By:   /s/ William R. Maguire
                     William R. Maguire

                Seth D. Rothman
                Neil J. Oxford
                One Battery Park Plaza
                New York, New York 10004
                (212) 837-6000 (telephone)
                (212) 422-4726 (facsimile)
                maguire@hugheshubbard.com

                *Attorneys for James W. Giddens, as*
                *Trustee for the SIPA Liquidation of*
                *Lehman Brothers Inc.*