UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| In re: | : | |
| | : | |
| | : | |
| LEHMAN BROTHERS INC., | : | Case No. 08-01420 (JMP) (SIPA) |
| | : | |
| Debtor. | : | |
| | : | |

**DECLARATION OF WILLIAM R. MAGUIRE IN SUPPORT OF
THE TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION
TO BARCLAYS' MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FROM THE TRUSTEE AND
THE COMMITTEE BASED ON PRIVILEGE WAIVER**

I, WILLIAM R. MAGUIRE, declare that the following is true and correct.

1. I am a member of the firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens (the "Trustee"), as trustee for the SIPA liquidation of Lehman Brothers Inc. I am an attorney duly admitted to practice in the State of New York, and in this Court. I make this declaration based on my personal knowledge, the knowledge of those with whom I work, and the documents referred to herein. I make this declaration in support of The Trustee's Memorandum of Law in Opposition to Barclays' Motion to Compel Production of Documents from the Trustee and the Committee Based on Privilege Waiver.

2. Attached hereto as Exhibit A is a true and correct copy of a letter from William R. Maguire, Esq. to Hamish P.M. Hume, Esq., dated October 13, 2009.

-2-

3. Attached hereto as Exhibit B is a true and correct copy of a letter from William R. Maguire, Esq. to W. Todd Thomas, Esq., dated November 6, 2009.

Executed on   December 7, 2009
              New York, New York

By:   /s/ William R. Maguire
      William R. Maguire

-2-

# EXHIBIT A

# Hughes
# Hubbard

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

William R. Maguire
Direct Dial: 212-837-6879
maguire@hugheshubbard.com

October 13, 2009

BY EMAIL
Hamish P.M. Hume, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Washington, DC 20015

    Re:  *In re Lehman Brothers Holdings Inc.*, et al., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered); *In re Lehman Brothers Inc.*, Case No. 08-1420 (JMP) (Bankr. S.D.N.Y.)

Dear Hamish:

    This letter responds to your letter dated October 8, 2009, which asserts that the Trustee has waived "any attorney-client privilege with respect to communications, documents, or information relating to the Barclays-Lehman sale transaction." We understand from your colleague Christopher Green that Barclays is demanding that the Trustee and Hughes Hubbard & Reed LLP ("HHR") produce attorney client and internal HHR communications concerning the sale. Your letter provides no basis for such a demand or for your claim of waiver.

    As a threshold matter, for the reasons that James Tecce set out in his October 12, 2009 letter for the Creditors' Committee, raising this issue now, a month before the Trustee is required make any document production and before any privilege has been invoked, is premature, to say the least.

    Without waiting for any actual assertion of privilege, your letter argues that the Trustee's Rule 60(b) motion waived the attorney client privilege by pointing out that no-one disclosed to the Court, HHR or the Trustee that Barclays was seeking the transfer of billions of dollars of consideration beyond the $47.4 billion in financial assets that were disclosed at the Sale Hearing. Specifically, you cite paragraphs 10, 11 and 19 of the Declaration of James B. Kobak, Jr., submitted in support of the Trustee's motion. Those paragraphs provide as follows:

- The Trustee and Mr. Kobak did not believe that the Clarification Letter was intended to, or did, effect any material changes to the basic $47.4/$45.5 billion deal, particularly as far as protection of customers or the integrity of the LBI estate were concerned. (¶10.)

60817793_1.doc

New York ■ Washington, D.C. ■ Los Angeles ■ Miami ■ Jersey City ■ Paris ■ Tokyo

- The Trustee and Mr. Kobak "understood that, as described at the Sale Hearing, Barclays was still acquiring $47.4 billion in assets and assuming $45.5 billion in liabilities in connection with those assets. We did not understand, and were never advised by anyone, including Barclays, that the Clarification Letter could be read to convey billions of dollars in additional customer property and estate assets to Barclays beyond those that had been disclosed to the Court." (¶11.)

- The TAA "was not intended to, and we did not understand that it would, provide Barclays with more than $2.5 billion in margin and clearing funds, as Barclays now claims. Nor did we understand that it would materially change the deal that was presented to the Court at the Sale Hearing." (¶19.)

Nowhere in any of these paragraphs or elsewhere in the Kobak Declaration or the Trustee's motion does the Trustee place at issue his reliance on any legal advice.

All that these paragraphs set forth is the unremarkable proposition that no-one, including Barclays, informed the Court, HHR or the Trustee that the sale would convey to Barclays billions of dollars of assets beyond what had been disclosed to the Court. There is nothing in this fact that implicates waiver of privilege.

There is no merit to your claim that waiver should be found here in order to prevent "unfairness in allowing such assertions to go untested." Barclays has every opportunity to test all these assertions. Barclays already has access to many of the key players, including those who are now Barclays employees, as well as Barclays' own lawyers and bankers, and Barclays has the ability to take discovery of all the other participants, and can therefore test whether anyone, in fact, disclosed to HHR or the Trustee that the sale would convey billions of dollars of assets beyond the $47.4 billion that was disclosed to the Court.

We also agree with the point made by the Creditors Committee (at note 1 of its October 12 letter) that the rule Barclays presumes is not only unsupported, but is hopelessly overbroad. In many contested matters a party may assert its understanding of a fact and, if that were enough to trigger waiver, then there would be little left of the attorney client privilege. By way of example, Barclays appears to be asserting that its intent or understanding was that Barclays would obtain billions of dollars of financial assets beyond the $47.4 billion that were disclosed to the Court. If the law were as Barclays presumes, then Barclays would be required to disclose its attorney client communications with its lawyers, including Cleary Gottleib and S&C.

Separately, you asked me today about LBHI's agreement not to assert the attorney client privilege as to certain communications between LBHI and either of its counsel, Weil Gotshal or Simpson Thacher. You asked whether the Trustee would assert the attorney client privilege on behalf of LBI with respect to any such communications. The short answer is no. It is my understanding that LBHI retained Weil Gotshal and Simpson Thacher and, therefore, that any attorney client privilege over communications between either firm and LBI belongs to LBHI. Accordingly, if LBHI does not assert the attorney client privilege as to any such communication, then neither will LBI.

60817793_1.doc

Please let me know if you would like to discuss this issue further.

Very truly yours,

WRM/NJO

cc.   Robert W. Gaffey, Jones Day
      James C. Tecce, Quinn Emanuel Urquart Oliver & Hedges

60817793_1.doc

# E<small>XHIBIT</small> B

# Hughes Hubbard

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

William R. Maguire
Direct Dial: 212-837-6879
maguire@hugheshubbard.com

November 6, 2009

By Email
Todd Thomas, Esq.
Boies, Schiller & Flexner LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301

Re: *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered); *In re Lehman Brothers Inc.*, Case No. 08-1420 (JMP) (Bankr. S.D.N.Y.)

Dear Todd:

I write in response to your letter dated October 30, 2009, concerning Barclays' assertion that the Trustee has waived privilege.

Your letter does not address the points that I made in my October 13 letter: (i) the Trustee's motion papers do not rely on any privileged communication; and (ii) Barclays has no need to pry into the Trustee's privileged communications. Each is dispositive.

1. No Reliance on Any Privileged Communication

Barclays' citations to the Trustee's motion papers fail to identify any mention of, much less reliance on, any privileged communication. My October 13 letter addressed all the paragraphs (¶¶10, 11, 19) of the Declaration of James B. Kobak, Jr., that Barclays cited in support of its waiver argument. I pointed out that nowhere in any of those paragraphs does the Trustee place at issue his reliance on any privileged communication. The Declaration explains that the Trustee and his counsel attended the sale hearing, and that no one, including Barclays, advised the Trustee or his counsel that Barclays had an understanding of the sale that was contrary to what was disclosed at the sale hearing. That is, no one disclosed any intention on the part of Barclays to change the sale by using --

- the Clarification Letter to convey to Barclays billions of dollars in customer property and estate assets beyond what had been disclosed to the Court. (*See* Kobak Decl. ¶¶10, 11); or

- the TAA to convey to Barclays more than $2.5 billion in margin and clearing funds beyond what had been disclosed to the Court. (*See id.* ¶19.)

Your letter cites additional paragraphs of the Trustee's motion papers, but again fails to identify any reliance on any privileged communication.[1] Barclays cannot get around this hole in its argument by re-writing the Trustee's papers. Contrary to the assertion on page 2 of your letter, the Trustee does not need to, and is not undertaking to prove "what its lawyers advised the Trustee."

Because the Trustee's papers do not rely on any privileged advice, there is no legal basis for Barclays' claim of waiver. In *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008), the Second Circuit reversed a finding of waiver where there was no reliance on privileged advice. The District Court had applied a test that originated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).[2] The Second Circuit acknowledged widespread criticism of the *Hearn* test, which appeared to find waiver whenever the information sought appeared relevant and should in fairness be disclosed, and which, literally applied, would result in waiver of a large majority of privilege claims. 546 F.3d at 227-28 (citing cases). The Second Circuit agreed that "the *Hearn* test cuts too broadly and therefore conclude[d] that the District Court erred in applying it." *Id.* at 229.

The Second Circuit noted that "privileged information may be in some sense *relevant* in any lawsuit," and that "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue." *Id.* (original emphasis). The Court held that reliance on privileged advice in asserting a claim was essential to effect a waiver: "We hold that a party must *rely* on privileged advice from his counsel to make his claim or defense." *Id.* (original emphasis). Accordingly, the fact that the Trustee's papers do not even mention, much less rely on, any privileged advice disposes of any claim of waiver.

Your letter does not cite *County of Erie*, and relies on cases decided either before that decision or by courts outside this Circuit, which are also distinguishable on their facts.[3]

---

1. ¶52 ("The Trustee did not understand that the Clarification Letter would effect any fundamental change in the sale. The Trustee understood that Barclays was acquiring $47.4 billion in assets, as disclosed at the Sale Hearing, and did not understand, and was never advised by Barclays or anyone else, that the Clarification Letter could be read to grant Barclays billions of dollars of additional assets that had never been disclosed to the Court.") (citations omitted); ¶77 ("The Trustee's advisors *** were never advised, and did not understand, that the Clarification Letter would materially and adversely change the sale approved by the Court by inserting into the sale a transfer to Barclays of billions of dollars in undisclosed consideration, including some $2.5 billion in additional LBI assets at the OCC and as much as an additional $1 billion of LBI assets at other derivatives exchanges.").

2. The *Hearn* test finds waiver when all of the following three factors are present: (1) a party asserts privilege as a result of some affirmative act such as filing suit or pleading in response to a claim; (2) through the affirmative act, the party puts privileged information at issue by making it relevant; and (3) applying the privilege would deny the opposing party access to information vital to its defense. *In re County of Erie*, 546 F.3d at 226.

3. *See Century 21, Inc. v. Diamond State Ins. Co.*, No. 03 Civ. 5163(GEL), 2006 WL 2355323 (S.D.N.Y. Aug. 10, 2006) (timeliness of plaintiff's notice depended on attorneys' legal conclusions as to the prospect of future litigation); *Weizmann Inst. of Science v. Neschis*, No. 00 Civ.7850(RMB), 2004 WL 540480 (S.D.N.Y. Mar. 17,

Cases where a party is relying on privileged communications should be distinguished from cases where a party is relying on non-privileged communications, such as public disclosures or information from its adversary. Indeed, the *Weizmann* decision, on which you rely, expressly recognized this distinction and found that "where a party merely claimed that it relied on information provided by its adversary," courts did *not* permit the adversary to gain access to privileged communications. *Weizmann* at *5. Thus, even under *Weizmann*, the Trustee's reliance on public statements and on information from Barclays would not support a claim of waiver.

The argument that a claim of mistake under Rule 60(b) automatically triggers waiver of privilege, where the opposing party seeks to explore whether the motion is timely, is unsupported by any citation on point. (Your letter at page 2.) There is no shortage of cases under Rule 60, including cases where timeliness has been disputed, so your letter's failure to cite any finding of waiver in this context, even prior to *County of Erie* or in other circuits, is telling.

Were the law to permit the ready waiver of privilege that Barclays now advocates, Barclays itself would be subject to a claim of waiver. If a mere assertion of a party's understanding or belief triggered waiver, then all contractual disputes concerning the parties' intent would feature mutual discovery of privileged information. Here, for example, Barclays is affirmatively asserting contractual entitlement to billions of dollars of estate property. Your letter does not explain how Barclays can pursue that claim without asserting what was its understanding, belief, or intent in entering into the sale agreements. If that is all that is needed to effect a waiver, your letter does not explain how Barclays escapes the necessary consequences of its own argument.

Finally, I look forward to your sending me the brief on privilege that Barclays filed under seal in its Rule 60(b) dispute with American Express. The transcript records Barclays' argument that it had not disclosed any privileged communication, or put its counsel's advice at issue, notwithstanding having submitted a declaration reciting its in-house lawyer's understanding of Barclays' mistake, which he declared he obtained based upon a privileged communication with outside counsel. (LBHI Docket No. 1751.)

Barclays argued that it was not relying on the privileged communication "to establish the fact of mistake and the nature of the mistake." (Hearing Tr. 25:23-25 (Feb. 26, 2009).) The Court agreed and opined that the statement had not put legal advice at issue because the statement of Barclays' understanding was offered, "not for proving the truth of anything but just for saying this is our position." (*Id.* at 13:5-7.) Judge Peck further observed that, "[w]e're taking information which is ... completely accessible from nonlawyer sources and we're taking the position that because it passed at one point through the mouthpiece of Lindsee Granfield's

---

2004) (compulsion defense depended on accuracy of attorneys' analysis of right under foreign law); *Am. Home Assurance Co. v. Fremont Indem. Co.*, Nos. 88 Civ. 3394 (RPP), 89 Civ. 4415 (RPP), 90 Civ. 0468 (RPP) and 91 Civ. 0772 (RPP), 1993 WL 426984 (S.D.N.Y. Oct. 13, 1993) (timeliness of rescission claim depended on attorneys' conclusions and advice as to when grounds for rescission had occurred); *Byers v. Burleson*, 100 F.R.D. 436 (D. Col. 1983) (timeliness of malpractice claim depended on attorneys' conclusions and advice as to when malpractice had occurred.).

60833779_1.doc

telephone that it somehow opens up everything that she ever did as a lawyer with respect to the subject matter. That seems extreme to me." (*Id.* at 33:18-24.)

Here, Barclays' argument is far more "extreme" than the approach it recently opposed. Barclays is claiming waiver even though the Trustee's motion papers do not recite, much less rely on, any privileged communication.

        2.       No Unfairness to Barclays

The unfairness of denying an opposing party privileged information vital to its defense is one of the *Hearn* factors that the Second Circuit found insufficient to justify waiver. *County of Erie*, 546 F.3d at 226. Just as problematic as this legal impediment is the fact that Barclays' claim of unfairness is completely unsupported.

As I pointed out in my October 13 letter, Barclays can readily test the Trustee's assertions. Many key players are Barclays' employees, Barclays no doubt has ready access to its lawyers, bankers, and other professional advisors, and Barclays can take discovery of all the other participants. Barclays has no need, therefore, of the Trustee's privileged communications to test whether any Barclays representatives or anyone else made any disclosure to the Trustee or HHR that Barclays intended the Clarification Letter or the TAA to change the sale by conveying to Barclays billions of dollars of assets beyond what had been disclosed to the Court.

        3.       Deloitte

Barclays' argument that any responsive Deloitte documents cannot not be privileged because "Deloitte consultants are not lawyers" is incorrect. *See, e.g., United States v. Kovel*, 296 F.2d 918, 922 (2d. Cir. 1961) (the attorney-client privilege may extend to others, including accountants). The work that Deloitte performed to assist the Trustee's counsel in anticipation of litigation is clearly privileged.

Please let me know if you would like to discuss these issues further.

Very truly yours,

*[signature: Bill]*

WRM/NJO

cc:    Robert W. Gaffey, Jones Day
        James C. Tecce, Quinn Emanuel Urquart Oliver & Hedges

60833779_1.doc