Presentment Date and Time: December 15, 2009 at 12:00 noon (Prevailing Eastern Time)
Objection Deadline: December 14, 2009 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                         :
In re                                    :        Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :        08-13555 (JMP)
                                         :
                    Debtors.             :        (Jointly Administered)
                                         :
                                         :
------------------------------------------------------------------x
```

### NOTICE OF PRESENTMENT OF STIPULATION, AGREEMENT AND ORDER BETWEEN LEHMAN COMMERCIAL PAPER INC. AND THE SCC ENTITIES GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY

**PLEASE TAKE NOTICE** that the undersigned will present the annexed Stipulation, Agreement and Order (the "Stipulation and Order") between Lehman Commercial Paper Inc. and the SCC Entities to the Honorable James M. Peck, United States Bankruptcy Judge, for signature on **December 15, 2009 at 12:00 noon (Prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the proposed Stipulation and Order, with proof of service, is served and filed with the Clerk of the Court and a courtesy copy is delivered to (i) the Bankruptcy Judge's chambers and (ii) the undersigned, so as to be received by **December 14, 2009 at 11:00 a.m. (Prevailing Eastern Time)**, there will not be a hearing and the Order may be signed.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely served and filed, a hearing (the "Hearing") will be held to consider the Stipulation and Order on **December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 7, 2009
New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                         :
In re                                    :       Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :       08-13555 (JMP)
                                         :
                Debtors.                 :       (Jointly Administered)
                                         :
-----------------------------------------------------------------x
```

**STIPULATION, AGREEMENT AND ORDER**
**BETWEEN LEHMAN COMMERCIAL PAPER INC. AND THE**
**SCC ENTITIES GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY**

Lehman Commercial Paper Inc. ("LCPI") and the SCC Entities[1] (the "SCC Entities"

together with LCPI, the "Parties"), by and through their respective counsel, hereby enter into this

Stipulation, Agreement and Order and represent and agree as follows:

**RECITALS**

A.      On September 15, 2008 and periodically thereafter (the "Commencement Date"),

Lehman Brothers Holdings Inc. and certain of its subsidiaries (collectively, the "Debtors")

commenced with this Court voluntary cases under chapter 11 of title 11 of the United States

Code ("Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses

---

[1]     The "SCC Entities" are Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC
SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC, Acton Estates,
LLC, Seven Brothers, LLC, SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal
Communities I, LLC, SunCal Communities III, LLC, SCC Communities, LLC, North Orange Del Rio Land,
LLC and Tesoro SF, LLC.

and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

      B.       The SCC Entities are currently debtors whose chapter 11 cases (the "SCC Bankruptcy Cases") are pending in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court").

      C.       The Parties are negotiating a stipulation for filing with the California Bankruptcy Court (a copy of which is annexed hereto as Exhibit "1") (the "California Stipulation"). The Parties request the Court modify the automatic stay, to the extent it applies.

      D.       The Parties hereto have agreed to the terms set forth below.

      **NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THEIR UNDERSIGNED COUNSEL, AND UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT**:

      1.       This Stipulation, Agreement and Order is hereby approved without necessity or requirement of further proceedings or Court approval.

      2.       The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified solely to permit LCPI to enter into the California Stipulation and undertake any actions contemplated to be taken by LCPI in connection therewith; *provided that,* nothing in this Stipulation, Agreement and Order shall require any party hereto to enter into the California Stipulation.

      3.       Except as provided in paragraph 2, and to the extent the automatic stay applies, the provisions of section 362(a) of the Bankruptcy Code, including, without limitation, those

provisions prohibiting any act to collect, assess, or recover a claim that arose prior to the

Commencement Date from LCPI's estate and/or assets or property of LCPI (as defined in section

541 of the Bankruptcy Code) shall remain in full force and effect.

4.     Notwithstanding anything to the contrary herein, this Stipulation, Agreement and

Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any

rights, claims or privileges (whether legal, equitable or otherwise) of the Parties with respect to

any issues that are not expressly addressed herein.  Specifically, and for the avoidance of doubt,

the Parties reserve all rights in connection with the Cash Collateral (as defined in the California

Stipulation) and all aspects of pending litigation among the Parties, including, without limitation,

any matters involving equitable subordination or substantive consolidation.

5.     This Stipulation, Agreement and Order is solely for the benefit of the Parties and

not for any other person or entity, and no such other person or entity shall be entitled to the

benefit of (or be entitled to rely upon) this Stipulation, Agreement and Order.

6.     Each person who executes this Stipulation, Agreement and Order on behalf of a

Party represents that he or she is duly authorized to execute this Stipulation, Agreement and

Order on behalf of such Party.

7.     This Stipulation, Agreement and Order may be executed in multiple counterparts,

each of which shall be deemed an original but all of which together shall constitute one and the

same instrument.

8.     This Stipulation, Agreement and Order can only be amended or otherwise

modified by a signed writing executed by the parties hereto.

9.     This Stipulation, Agreement and Order shall be effective immediately upon its

entry and shall not be stayed pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

10.    The Court shall retain jurisdiction to resolve any disputes or controversies arising

from this Stipulation, Agreement and Order.


Dated: December 7, 2009

**WEIL, GOTSHAL & MANGES LLP**

/s/ Shai Y. Waisman
Shai Y. Waisman
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**WINTHROP  COUCHOT  PROFESSIONAL
CORPORATION**

/s/ Paul J. Couchot
Paul J. Couchot
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949)720-4111

Attorneys for the SCC Entities



SO ORDERED this _____ day of December, 2009


_____
*HONORABLE JAMES M.  PECK*
*UNITED STATES BANKRUPTCY JUDGE*

**EXHIBIT "1"**

1  Richard M. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Boulevard, Suite 1100
3  Los Angeles, California  90067
   Telephone:  (310) 277-6910
4  Facsimile:  (310) 201-0760

5  Edward Soto (admitted *pro hac vice*)
   Shai Waisman (admitted *pro hac vice*)
6  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
7  New York, NY  10153-0119
   Telephone:  (212) 310-8000
8  Facsimile:  (212) 310-8007

9  Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
   Northlake Holdings LLC and OVC Holdings LLC

**UNITED STATES BANKRUPTCY COURT**
10
**CENTRAL DISTRICT OF CALIFORNIA**
11 **SANTA ANA DIVISION**

In re:                                          Case No.: 8:08-bk-17206-ES
12 Palmdale Hills Property, LLC, and Its Related Debtors,    Jointly Administered With Case Nos.
           Jointly Administered Debtors and         8:08-bk-17209-ES; 8:08-bk-17240-ES;
13         Debtors-In-Possession.                   8:08-bk-17224-ES; 8:08-bk-17242-ES;
                                                    8:08-bk-17225-ES; 8:08-bk-17245-ES;
   Affects:                                         8:08-bk-17227-ES; 8:08-bk-17246-ES;
14 ☐  All Debtors                                   8:08-bk-17230-ES; 8:08-bk-17231-ES;
   ☒  Palmdale Hills Property, LLC                  8:08-bk-17236-ES; 8:08-bk-17248-ES;
15 ☒  SunCal Beaumont Heights, LLC                  8:08-bk-17249-ES; 8:08-bk-17573-ES;
   ☒  SCC/Palmdale, LLC                             8:08-bk-17574-ES; 8:08-bk-17575-ES;
16 ☒  SunCal Johannson Ranch, LLC                   8:08-bk-17404-ES; 8:08-bk-17407-ES;
   ☒  SunCal Summit Valley, LLC                     8:08-bk-17408-ES; 8:08-bk-17409-ES;
17 ☒  SunCal Emerald Meadows, LLC                   8:08-bk-17458-ES; 8:08-bk-17465-ES;
   ☒  SunCal Bickford Ranch, LLC                    8:08-bk-17470-ES; 8:08-bk-17472-ES;
18 ☒  Acton Estates, LLC                            and 8:08-bk-17588-ES
   ☒  Seven Brothers, LLC
19 ☒  SJD Partners, Ltd.
   ☒  SJD Development Corp.                         Chapter 11
20 ☒  Kirby Estates, LLC
   ☒  SunCal Communities I, LLC                     **STIPULATION PURSUANT TO 11**
21 ☒  SunCal Communities III, LLC                   **U.S.C. §§ 362, 363, AND 364: (1)**
   ☒  SCC Communities, LLC                          **AUTHORIZING THE USE OF CASH**
22 ☒  North Orange Del Rio Land, LLC                **COLLATERAL AND ALLEGED**
   ☒  Tesoro SF, LLC                                **UNENCUMBERED CASH; (2)**
23 ☐  LB-L-SunCal Oak Valley, LLC                   **APPROVING POSTPETITION**
   ☐  SunCal Heartland, LLC                         **FINANCING; (3)  PROVIDING**
24 ☐  LB-L-SunCal Northlake, LLC                    **ADMINISTRATIVE EXPENSE**
   ☐  SunCal Marblehead, LLC                        **STATUS; AND (4) MODIFYING**
25 ☐  SunCal Century City, LLC                      **AUTOMATIC STAY TO THE**
   ☐  SunCal PSV, LLC                               **EXTENT NECESSARY**
26 ☐  Delta Coves Venture, LLC
   ☐  SunCal Torrance, LLC                          **Hearing:**
27 ☐  SunCal Oak Knoll, LLC                         Date:   December 10, 2009
                                                    Time:   2:00 P.M.
28                                                  Place:  Courtroom 5A

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2         This stipulation (the "Stipulation") is made by and between Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper Inc. ("LCPI"), Northlake Holdings LLC ("Northlake Holdings"),

3

4    OVC Holdings LLC ("OVC Holdings" and, collectively with Lehman ALI, LCPI and Northlake Holdings, the "Lehman Entities"),[1] on the one hand, and certain of the above-captioned debtors and

5

6    debtors in possession (the "Voluntary Debtors")[2] affected by this Stipulation (the "Borrowers"), on the other hand.  The Lehman Entities and the Borrowers (together, the "Parties") hereby enter into

7    this Stipulation and agree as follows:

8

### RECITALS

9         WHEREAS, on November 6, 7 and 19, 2008, the Voluntary Debtors filed their respective

10   voluntary petitions under title 11 of the United States Code (the "Bankruptcy Code") in the United

11   States Bankruptcy Court for the Central District of California (the "Court").  The Voluntary Debtors

12   continue to manage their affairs and property as debtors in possession pursuant to sections 1107 and

13   1008 of the Bankruptcy Code.

14        WHEREAS, on November 12, 14 and 19, 2008, involuntary petitions were filed against the

15   Trustee Debtors.[3]

16        WHEREAS, on or about January 8, 2009, the Court entered orders for relief in the Trustee

17   Debtors' cases.

18

19   _____

[1] The Lehman Entities shall refer to the Lehman Entities on behalf of themselves, both individually and collectively, as
20   purported lenders, and as purported agents for all lenders under the applicable loan documents, including, without
     limitation, as purported agents for Fenway Capital, LLC.  Notwithstanding anything to the contrary contained herein, the
21   Lehman Entities do not concede that they are "purported" lenders or agents, and reserve all of their rights in connection
     therewith.

22   [2] The Voluntary Debtors in these cases consist of : Palmdale Hills Property, LLC (Main Case) (Case No. 8:08-17206-
     ES); Acton Estates LLC (Case No. 8:08-17236-ES); Kirby Estates, LLC (Case No. 8:08-17246-ES); North Orange Del
23   Rio Land, LLC (Case No. 8:08-17574-ES); SCC Communities, LLC (Case No. 8:08-17573-ES); SCC/Palmdale, LLC
     (Case No. 8:08-17224-ES); Seven Brothers, LLC (Case No. 8:08-17240-ES); SJD Development Corp. (Case No. 8:08-
24   17245-ES); SJD Partners, Ltd. (Case No. 8:08-17242-ES); SunCal Beaumont Heights, LLC (Case No. 8:08-17209-ES);
     SunCal Bickford Ranch LLC (Case No. 8:08-17231-ES); SunCal Communities I, LLC (Case No. 8:08-17248-ES);
25   SunCal Communities III, LLC (Case No. 8:08-17249-ES); SunCal Emerald Meadows LLC (Case No. 8:08-17230-ES);
     SunCal Johannson Ranch, LLC (Case No. 8:08-17225-ES); SunCal Summit Valley LLC (Case No. 8:08-17227-ES); and
26   Tesoro SF, LLC (Case No. 8:08-17575-ES).
     [3] The Trustee Debtors in these cases consist of:  SunCal Heartland, LLC (Case No. 8:08-17407-ES); LB-L-SunCal
27   Northlake, LLC (Case No. 8:08-17408-ES); SunCal Marblehead, LLC (Case No. 8:08-17409-ES); SunCal Century City,
     LLC (Case No. 8:08-17458-ES); SunCal PSV, LLC (Case No. 8:08-17465-ES); Delta Coves Venture, LLC (Case No.
28   8:08-17470-ES); SunCal Torrance, LLC (Case No. 8:08-17472-ES); LB-L SunCal Oak Valley, LLC (Case No. 8:08-
     17404-ES); and SunCal Oak Knoll, LLC (Case No. 8:08-17588-ES). The Voluntary Debtors and the Trustee Debtors
     shall be referred to herein as the "Debtors."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

WHEREAS, on or about January 15, 2009, the Court entered orders granting the appointment of a chapter 11 trustee in each of the Trustee Debtors' cases. Thereafter, the Office of the United States Trustee appointed Steven M. Speier as the Chapter 11 Trustee (the "Trustee") for the Trustee Debtors.

WHEREAS, the Lehman Entities are authorized to enter into this Stipulation on behalf of themselves, as lenders, and as agents for all lenders under the applicable loan documents.

WHEREAS, LCPI is a debtor and debtor in possession in the jointly administered cases captioned In re Lehman Brothers Holdings, Inc., Case No. 08-13555 (JMP), pending in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

WHEREAS, the Lehman Entities assert secured claims against the Debtors that approximate $2.3 billion, and include within the scope of the pledged collateral (i) certain funds held by Fidelity National Title Insurance Company ("Fidelity") in an escrow account (the "ELR Escrow Account") pursuant to that certain escrow agreement (as amended and/or supplemented), dated June 25, 2008, by and among Palmdale Hills Property, LLC ("Palmdale Hills"), LCPI and Fidelity (the "Escrow Agreement") and (ii) certain funds held by California Bank & Trust in account no. 3090340741 (the "Ritter Pledged Account" and, collectively with the ELR Escrow Account, the "Ritter Accounts") owned by Palmdale Hills and pledged to LCPI to secure that certain first mortgage loan made by LCPI to or for the benefit of Palmdale Hills with respect to real property owned by Palmdale Hills located in Palmdale, California that is commonly referred to as Ritter Ranch (the "Ritter Ranch Project").

WHEREAS, Palmdale Hills asserts that the (i) ELR Escrow Account contains cash and cash equivalents in the total amount of approximately $2,191,008.39 as of October 30, 2009, and (ii) the Ritter Pledged Account contains cash and cash equivalents in the total amount of approximately $16,681,498.00. LCPI asserts that such cash and cash equivalents held in the Ritter Accounts constitute "cash collateral" under section 363 of the Bankruptcy Code (the "Cash Collateral").

WHEREAS, certain of the Voluntary Debtors maintain additional accounts containing cash or cash equivalents, which the Lehman Entities assert are subject to perfected liens and therefore

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

constitute the Lehman Entities' "cash collateral" under section 363 of the Bankruptcy Code.  The

Voluntary Debtors dispute such contention, and assert that such cash and cash equivalents are not

subject to perfected liens of the Lehman Entities' and therefore do not constitute "cash collateral"

under section 363 of the Bankruptcy Code.  The cash and cash equivalents held by the Voluntary

Debtors, excluding the cash and cash equivalents in the Ritter Accounts, shall be referred to herein

as the "Alleged Unencumbered Cash" and shall include, but are not limited to, the accounts

maintained by the Voluntary Debtors set forth in **Exhibit A** attached hereto.

WHEREAS, on April 2, 2009, Lehman ALI, certain of the Voluntary Debtors, and the

Trustee for the Trustee Debtors, by and through their counsel, entered into that certain *Stipulation

with Lehman ALI, Inc. Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior

Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority

Administrative Expense Status; and (3) Modifying Automatic Stay to the Extent Necessary* (the

"April 2009 DIP Stipulation") affecting certain of the Voluntary Debtors and certain of the Trustee

Debtors as set forth specifically therein (the "April 2009 Borrowers").  The April 2009 DIP

Stipulation was approved by the Court by the entry of an order on April 17, 2009 (the "April 2009

DIP Order").

WHEREAS, pursuant to the April 2009 DIP Stipulation, among other things, (a) the April

2009 Borrowers were authorized to borrow from Lehman ALI, and Lehman ALI was authorized to

make available to each April 2009 Borrower, individual loans (collectively, the "April 2009 DIP

Loans") in an aggregate amount equal to $1,790,572.00 (the "April DIP Loan Amount"), and (b) in

order to secure the payment of the April 2009 DIP Loans, Lehman ALI was granted, among other

things, (i) continuing, valid, binding, enforceable, non-avoidable and automatically and properly

perfected, senior postpetition security interests in and liens (the "April 2009 DIP Liens") on any and

all presently owned and hereafter acquired personal property, real property and other assets of April

2009 Borrowers, whether owned or consigned by or to, or leased from or to April 2009 Borrowers,

regardless of where located, including, without limitation, the assets set forth in clauses (1) through

(4) of paragraph 8 of the April 2009 DIP Stipulation (collectively, the "April 2009 DIP Collateral"),

and (ii) an allowed superpriority administrative expense claim in these Cases (the "April 2009 DIP

Superpriority Claim") for all April 2009 DIP Loans, subject only to the Senior Danske Claims (as defined in the April 2009 DIP Stipulation) in respect of any collateral securing the Senior Danske Claims.

WHEREAS, the Trustee and Lehman ALI have entered into the *Stipulation Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Status; and (3) Modifying the Automatic Stay to the Extent Necessary* (the "Trustee Debtors' DIP Stipulation"), which provides for, among other things, debtor-in-possession loans made by Lehman ALI to certain of the Trustee Debtors for the purpose of paying health and safety costs in accordance with the terms of the Trustee Debtors' DIP Stipulation. On November 20, 2009, the Court entered an order approving the Trustee Debtors' DIP Stipulation on an interim basis [Docket No. 792].

WHEREAS, the Trustee, Lehman ALI, Northlake Holdings and OVC Holdings have filed the Joint Motion for Approval of Stipulation Consenting to the Use of Cash Collateral for Covered Professional Expenses (the "Joint Funding Motion") [Docket No. 631], which seeks approval of the Stipulation Consenting to the Use of Cash Collateral for Covered Professional Expenses entered into by and among the Chapter 11 Trustee, Lehman ALI, Northlake Holdings and OVC Holdings (the "Trustee Debtors' Professional Fee Cash Collateral Stipulation").

WHEREAS, the Voluntary Debtors and/or the Trustee have filed the (i) *Voluntary Debtors' and Trustee's Motion for Order (1) Authorizing Surcharge Under 11 U.S.C. Section 506(c), or, In the Alternative, Use of Cash Collateral, and (2) Compelling Release and Turnover of Undrawn Pledged Accounts* (the "Surcharge Motion") [Docket No. 544], (ii) *Voluntary Debtors' Motion For Order (1) Approving Acquisition's Proposal, (2) Authorizing Disposition Of Certain Depository Accounts, (3) Rejecting Cost Sharing Agreement With Anaverde LLC, And (4) Turnover Of Funds* (the "Acquisitions Financing Proposal Motion") [Docket No. 720] and (iii) *Motion for Reconsideration of Order Entered on April 17, 2009* (the "Reconsideration Motion") [Docket No. 736].

NOW THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration (the receipt and sufficiency of which are acknowledged), it is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

hereby stipulated and agreed by and among the Parties as follows:

## AGREEMENT

1.   <u>Court Approval</u>.  The Stipulation is subject to approval of the Court, and LCPI's entry into the Stipulation is subject to approval by the New York Bankruptcy Court, and the Stipulation shall have no force and effect until the date that both such approvals have been obtained (the "<u>Approval Date</u>").  Immediately upon the Approval Date (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Stipulation shall become valid and binding upon and inure to the benefit of the Lehman Entities, the Borrowers, all other creditors of the Voluntary Debtors, any committees appointed in these cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the cases or upon dismissal of any of the above-captioned cases (the "<u>Cases</u>").

2.   <u>Use of ELR Escrow Account Cash Collateral</u>.  LCPI consents to the use by Palmdale Hills of Cash Collateral held in the ELR Escrow Account in an amount not to exceed $2,191,008.89 (the "<u>ELR Escrow Cash Collateral Amount</u>") solely for the purpose of paying the costs and expenses attributable to the completion of the construction of certain improvements relating to Elizabeth Lake Road located at the Ritter Ranch Project as more particularly described in the Escrow Agreement, and reimbursing Palmdale Hills in the amount of $148,560.63 of Alleged Unencumbered Cash used to pay such costs and expenses (the "<u>ELR Improvements</u>").  Palmdale Hills shall maintain appropriate documentation related to the expenditure of any and all of the ELR Escrow Cash Collateral Amount, and shall comply in all respects with all of the terms and procedures provided under the Escrow Agreement including, without limitation, the procedures prescribed therein for the requisition and disbursement of funds from the ELR Escrow Account, and LCPI shall have the right to approve all proposed, reasonable disbursements from the ELR Escrow Account as provided for in the Escrow Agreement.  In the event LCPI and Palmdale Hills disagree with respect to a proposed disbursement, the Court shall determine whether such disbursement is permissible pursuant to the Escrow Agreement.  Palmdale Hills shall not expend any of the ELR Escrow Cash Collateral Amount for any items other than the ELR Improvements, and the ELR Escrow Cash Collateral Amount shall not be used by any Borrower other than Palmdale Hills for costs and expenses

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

allocable to such other Borrowers, without the prior written consent of LCPI, which consent may be granted or withheld in LCPI's sole and absolute discretion. The authority to use the ELR Escrow Cash Collateral Amount shall terminate on the one hundred and twentieth day (120th) day after the Approval Date (the "Termination Date"), and no further disbursement of the ELR Escrow Cash Collateral Amount shall be made after thirty (30) days following the Termination Date without either the prior written consent of LCPI, which consent may be granted or withheld in LCPI's sole and absolute discretion, or further order of the Court.

3.      Repayment of ELR Escrow Cash Collateral Amount. Palmdale Hills or any other party in interest shall not be obligated to repay the ELR Escrow Cash Collateral Amount or otherwise replenish such amount into the ELR Escrow Account in the event that a Lehman Entity (or a nominee and/or successor thereof) purchases the Ritter Ranch Project pursuant to a sale of the Ritter Ranch Project under section 363 of the Bankruptcy Code or otherwise. In the event a party other than a Lehman Entity (or a nominee and/or successor thereof) purchases the Ritter Ranch Project pursuant to a sale of the Ritter Ranch Project under section 363 of the Bankruptcy Code or otherwise, such purchaser shall repay such portion of the ELR Escrow Cash Collateral Amount that has been used as provided for in this Stipulation, in cash, by depositing such amount in the ELR Escrow Account upon the closing of the sale of the Ritter Ranch Project. Any agreement providing for the sale of the Ritter Ranch Project to a purchaser other than a Lehman Entity (or nominee and/or successor thereof) shall include a provision requiring the repayment of such used portion of the ELR Escrow Cash Collateral Amount in accordance with this paragraph.

4.      Use by Palmdale Hills of Ritter Pledged Account Cash Collateral. Except as provided in paragraph 6 of this Stipulation, LCPI consents to the use by Palmdale Hills of Cash Collateral held in the Ritter Pledged Account solely for the purpose of paying the costs and expenses attributable to Palmdale Hills as set forth in the 120-day budget attached hereto as **Exhibit B** (the "Palmdale Budget," as such Palmdale Budget may be revised or amended with the written consent of LCPI, which consent may be granted or withheld in LCPI's sole and absolute discretion) in an amount not to exceed the total amount of the Palmdale Budget set forth in Exhibit B (the "Ritter Pledged Account Cash Collateral Amount"). Except as provided in paragraph 6 of this Stipulation,

the Ritter Pledged Account Cash Collateral Amount shall be used by Palmdale Hills solely for the

purpose of paying the costs and expenses set forth in the Palmdale Budget attributable to the Ritter

Ranch Project (with the exception of the ELR Improvements, which shall be paid from the ELR

Escrow Account). Except as provided in paragraph 6 of this Stipulation, Palmdale Hills shall use the

Ritter Pledged Account Cash Collateral Amount solely as provided in the Palmdale Budget and shall

maintain appropriate documentation related to the expenditure of any and all of the Ritter Pledged

Account Cash Collateral Amount. Palmdale Hills' expenditures shall not exceed 5 % of any

Palmdale Budget Item (as defined below) or the aggregate amount of the expenditures set forth in

the Palmdale Budget. Palmdale Hills shall provide to LCPI, upon its reasonable request, a

breakdown of all amounts spent from the Ritter Pledged Account as of the date of the request and

provide all documentation relating to the monies spent from the Ritter Pledged Account as of the

date of the request. The Palmdale Budget shall not be modified without the prior written consent of

LCPI. For the avoidance of doubt, Palmdale Budget line items (the "Palmdale Budget Items") for

the Ritter Ranch Project shall not be modified, Palmdale Hills shall not expend any funds from the

Ritter Pledged Account for any particular Palmdale Budget Items in excess of the respective

amounts provided for such Palmdale Budget Items in the Palmdale Budget (plus 5%), and the Ritter

Pledged Account Cash Collateral Amount shall not be used for any other purpose, or by any

Borrower other than Palmdale Hills for costs and expenses allocable to such other Borrowers,

without (i) the prior written consent of LCPI, which consent may be granted or withheld in LCPI's

sole and absolute discretion, or (ii) further order of the Court. The authority under this Stipulation to

use the Ritter Pledged Account Cash Collateral Amount shall terminate on the Termination Date,

and no further disbursements of the Ritter Pledged Account Cash Collateral Amount shall be made

after thirty (30) days following the Termination Date without either the prior written consent of

LCPI, which consent may be granted or withheld in LCPI's sole and absolute discretion, or further

order of the Court.

     5.    <u>Repayment to Palmdale Hills of Ritter Pledged Account Cash Collateral Amount as</u>

<u>an Administrative Obligation</u>. Palmdale Hills expressly stipulates and acknowledges that monies

used by Palmdale Hills from the Ritter Pledged Account Cash Collateral Amount shall be treated as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

an administrative expense obligation under the Bankruptcy Code and, as such, must be paid in full, in cash, on the effective date of any confirmed plan of reorganization or liquidation (the "Ritter Pledged Account Administrative Obligation"), which obligation shall be limited to portions of the Ritter Pledged Account Cash Collateral Amount actually expended by Palmdale Hills as provided pursuant to this Stipulation.  The Ritter Pledged Account Administrative Obligation shall be due and payable in full, in cash, without notice or demand, upon the effective date of any confirmed plan of reorganization or liquidation in the Cases, or, in the event no plan is confirmed in the Cases, the earlier of dismissal of the Cases or conversion of the Cases to chapter 7.  For the avoidance of doubt, a plan proponent will provide to Palmdale Hills and Palmdale Hills hereby agrees to repay the Ritter Pledged Account Administrative Obligation in full, in cash, by depositing such amount in the Ritter Pledged Account.

6.    DIP Financing Provided By Palmdale Hills From Ritter Pledged Account to Certain Other Voluntary Debtors.  LCPI consents to and Palmdale Hills is authorized to make individual loans (each, a "DIP Loan" and, collectively, the "DIP Loans") to the respective Borrowers (with the exception of Palmdale Hills) from the Ritter Pledged Account, the proceeds of which shall be used by the respective Borrowers solely for the purpose of paying the costs and expenses attributable to each such Borrower as set forth in the budget attached hereto as **Exhibit C** (the "Budget," as such Budget may be revised or amended with the written consent of LCPI, which consent may be granted or withheld in LCPI's sole and absolute discretion) in an aggregate amount not to exceed the total amount of the Budget as set forth in Exhibit C (the "DIP Loan Amount"); provided, however, that DIP Loans shall be made only to Borrowers that have used, and accordingly no longer hold, any Alleged Unencumbered Cash.  For the avoidance of doubt, no DIP Loan shall be made to Palmdale Hills.  The maximum amount of each DIP Loan to each Borrower shall be equal to the applicable amount in the Budget for each Borrower's respective costs and expenses as set forth in the Budget.  The Borrowers shall use the DIP Loan proceeds solely as provided in the Budget and shall maintain appropriate documentation related to the expenditure of any and all DIP Loan Amounts.  The Borrowers shall provide to LCPI, upon its reasonable request, a breakdown of all amounts spent from DIP Loan proceeds as of the date of the request and provide all documentation relating to the

monies spent from DIP Loan proceeds as of the date of the request. During the term of this Stipulation, the Budget shall not be modified and DIP Loan funds shall not be reallocated from one Borrower to another Borrower without the prior written consent of LCPI, which consent may be granted or withheld in LCPI's sole and absolute discretion, except that each Borrower may expend funds for any particular line items allocable to such Borrower as set forth in the Budget (the "Budget Items") in excess of the respective amounts provided for such Budget Items for a particular Borrower, so long as such excess amount is equal to or less than 5% of the amount allocated to that particular Borrower for a particular Budget Item and provided that the aggregate amount for all such Budget Items for a particular Borrower is not increased. Funding under the DIP Loans shall only be available through and including the Termination Date, and no further disbursements of DIP Loan proceeds shall be made after such date without either the prior written consent of LCPI, which consent may be granted or withheld in LCPI's sole and absolute discretion, or further order of the Court. Any amounts borrowed under the DIP Loans pursuant to this Stipulation that are not expended by, and remain in the possession of, any of the Borrowers as of the thirtieth (30th) day following the Termination Date, shall be immediately refunded by each such Borrower to Palmdale Hills for deposit in the Ritter Pledged Account.

7.    DIP Loan Maturity Date. The Borrowers expressly stipulate and acknowledge that the DIP Loans shall be treated as administrative expense obligations owed to Palmdale Hills under the Bankruptcy Code (the "DIP Loan Administrative Obligations" and, collectively with the Ritter Pledged Account Administrative Obligations, the "Administrative Obligations") and, as such, must be paid in full, in cash, on the effective date of any confirmed plan or reorganization or liquidation pursuant to the Bankruptcy Code. The DIP Loan Administrative Obligations of the Borrower(s) shall be due and payable in full, in cash, without notice or demand, upon the effective date of any confirmed plan of reorganization or liquidation in each such Borrower's Case, or, in the event no plan is confirmed in such Borrower's Case, the earlier of dismissal of such Case or conversion of such Case to chapter 7 (the "DIP Loan Maturity Date"). Each Borrower shall repay to Palmdale Hills the amount of the DIP Loan Administrative Obligation attributable to the DIP Loan that was made to such Borrower.

8.    Interest.  The DIP Loans shall accrue interest at the rate of ten percent (10%) per annum, which interest shall accrue and shall be payable in full on the DIP Loan Maturity Date. There are no other fees associated with the DIP Loans.  All accrued interest on the DIP Loans shall be added to the outstanding principal amount of the DIP Loans and shall be allocated in the same proportion as principal to the applicable Borrower and paid to Palmdale Hills by the Borrower, to the extent applicable to each Borrower, on the DIP Loan Maturity Date.

9.    The Voluntary Debtors' Use of the Alleged Unencumbered Cash.  The Lehman Entities consent to the use by the Voluntary Debtors of the Alleged Unencumbered Cash held by the Voluntary Debtors solely for the purpose of paying the reasonable fees and expenses incurred by professionals retained in the Voluntary Debtors' Cases and, at the Voluntary Debtors' option, to make loans to the Trustee Debtors for the purpose of paying the professionals retained in the Trustee Debtors' Cases.  The Lehman Entities hereby assert their position that the order approving the retention of Miller Barondess LLP ("Miller Barondess") entered by the Court on June 24, 2009 does not permit payment of fees and costs to Miller Barondess from the Alleged Unencumbered Cash without a further order of the Court.  The Voluntary Debtors reserve their rights to seek approval, by separate notice and motion, to use the Alleged Unencumbered Cash for the Voluntary Debtors' health and safety costs, and all the undersigned signatories hereby reserve their rights with respect to any such request.  In addition, the Lehman Entities consent to the use by each Voluntary Debtor of Alleged Unencumbered Cash held by such Voluntary Debtor in an amount equal to 10% in excess of the amount allocable to each such Voluntary Debtor in the Budget as set forth in **Exhibit C**.

10.    Use of Alleged Unencumbered Cash Held By Palmdale Hills.  LCPI consents to the use by Palmdale Hills of Alleged Unencumbered Cash held by Palmdale Hills in an amount equal to 10% in excess of the aggregate amount of the Palmdale Budget as set forth in **Exhibit B**.  In addition, LCPI consents to and Palmdale Hills is authorized to make, from Alleged Unencumbered Cash held by Palmdale Hills, individual loans to each of the other Voluntary Debtors in amounts equal to 10% in excess of the amounts allocable to each such Voluntary Debtor as set forth in **Exhibit C**.  The aggregate amount of any Alleged Unencumbered Cash used in accordance with paragraphs 9 and 10 herein shall be referred to as the "Alleged Unencumbered Cash Funding

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Amount." The Voluntary Debtors shall provide to the Lehman Entities, upon their reasonable request, a breakdown of the Alleged Unencumbered Cash Funding Amount spent as of the date of the request and provide all documentation relating to such actual amounts spent.

11. <u>Repayment of the Alleged Unencumbered Cash Funding Amount as an Administrative Obligation Under Certain Circumstances</u>. In the event the Parties agree or the Court finds that all or portion(s) of the Alleged Unencumbered Cash are subject to perfected liens of the Lehman Entities, then such portions of the Alleged Unencumbered Cash Funding Amount subject to the perfected liens shall constitute an administrative expense obligation under the Bankruptcy Code that shall be due and payable by a plan proponent in full, in cash, without notice or demand, upon the effective date of any confirmed plan of reorganization or liquidation in the Cases. In the event the Parties agree or the Court finds that all or portion(s) of the Alleged Unencumbered Cash are not subject to perfected liens held by the Lehman Entities, then such portions of the Alleged Unencumbered Cash Funding Amount not subject to a perfected lien shall not be repayable in such circumstances wherein a Voluntary Debtor used its own Alleged Unencumbered Cash to pay the expenses of its own estate or that such payments were authorized to be made pursuant to the entered orders of the Court authorizing joint administration of the Debtors (the "<u>Joint Administration Orders</u>"). Notwithstanding anything to the contrary contained herein, the Lehman Entities reserve their rights to assert that the Joint Administration Orders did not excuse the Voluntary Debtors from repaying the amounts of professional fees paid by other Voluntary Debtors. In the event that the Parties agree or the Court finds that all or portion(s) of the Alleged Unencumbered Cash are not encumbered by a perfected lien of the Lehman Entities but such portions were used for the benefit of another Voluntary Debtor or a Trustee Debtor, then such portion(s) shall constitute an administrative expense obligation of the Voluntary Debtor or Trustee Debtor for whose benefit such portion of the Alleged Unencumbered Cash was used, and shall be repaid in accordance with section 1129(a)(9) of the Bankruptcy Code to the Voluntary Debtor that owned such portion of the Alleged Unencumbered Cash. The Parties reserve all rights in connection with the Alleged Unencumbered Cash, including, without limitation, their rights with respect to whether such cash is encumbered or unencumbered by perfected liens held by the Lehman Entities. The administrative expense

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

obligations provided for in this paragraph 7 shall be referred to herein as the "Alleged Unencumbered Cash Administrative Obligations."

12.    Repayment Of April DIP Loan Amounts.  Upon the occurrence of the Approval Date, each applicable Voluntary Debtor shall repay to Lehman ALI, from the Alleged Unencumbered Cash held by each such Voluntary Debtor, only to the extent of the lesser of the amount that such Voluntary Debtor borrowed under the April 2009 DIP Order and the amount of such Voluntary Debtor's Alleged Unencumbered Cash, the full amount of the April 2009 DIP Loans (including all outstanding principal and accrued and unpaid interest) made to each such Voluntary Debtor as set forth in **Exhibit D**, plus all outstanding accrued and unpaid interest on such loans as provided for in paragraph 5 of the April 2009 DIP Stipulation.  To the extent an April DIP Loan made to a particular Voluntary Debtor exceeds the amount of Alleged Unencumbered Cash held by such Voluntary Debtor, Palmdale Hills shall make an individual loan to such Voluntary Debtor from Alleged Unencumbered Cash held by Palmdale Hills for the purpose of permitting the repayment of such Voluntary Debtor's April DIP Loan by such Voluntary Debtor to Lehman ALI.  All funds lent by Palmdale Hills from its Alleged Unencumbered Cash to any Voluntary Debtor(s) for the purpose set forth in this paragraph shall constitute Alleged Unencumbered Cash Administrative Obligations and shall be repaid in accordance with paragraph 11 herein.  Any lien or encumbrance arising by reason of the April DIP Loans shall be deemed released and of no further force or effect as to each Voluntary Debtor that has fully repaid such amount.

13.    Withdrawal of Reconsideration Motion.  Upon the occurrence of the Approval Date, the Reconsideration Motion shall be deemed withdrawn with prejudice.

14.    Resolution of Financing Motions.  The undersigned parties hereby agree that this Stipulation resolves the (i) Surcharge Motion and (ii) the Acquisitions Financing Proposal Motion effective as of the Approval Date.  The undersigned parties have no objection, effective as of the Approval Date, to the entry of orders by the Court approving the Joint Funding Motion, the Trustee Debtors' DIP Stipulation and the Trustee Debtors' Professional Fee Cash Collateral Stipulation.

15.    Continued Effectiveness of April 2009 DIP Stipulation/Waiver of Defenses.  Except as expressly set forth herein, nothing contained herein shall be deemed to modify the terms of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

April 2009 DIP Stipulation, and the April 2009 DIP Stipulation shall continue in full force and effect. Effective as of the Approval Date, the Voluntary Debtors and the Trustee hereby irrevocably waive any defenses to, and shall not contest or object to any terms of the April 2009 DIP Stipulation, including, without limitation, the validity, perfection or enforceability of the April 2009 DIP Liens or the April 2009 DIP Superpriority Claim, or the payment of the April 2009 DIP Loans as provided under the April 2009 DIP Stipulation.

16.    DIP Obligations. This Stipulation constitutes and evidences the validity and binding effect of the DIP Loans and DIP Loan Administrative Obligations, which obligations shall be enforceable against the Borrowers, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing. The DIP Loans include all loans, reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Borrowers under this Stipulation, including, without limitation, all principal, accrued interest, and other amounts owed pursuant to or in respect of the DIP Loans.

17.    Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Stipulation, including, without limitation, to: (a) permit Borrowers to incur all liabilities and obligations in connection with the DIP Loans; (b) authorize the repayment of the ELR Escrow Cash Collateral Amount, Administrative Obligations, and Alleged Unencumbered Cash Administrative Obligations all in accordance with the terms of this Stipulation; and (c) enable the enforcement, protection and preservation of the DIP Loans, and all of the rights and remedies with respect thereto or otherwise under this Stipulation.

18.    Events of Default. The following occurrences shall constitute an "Event of Default" under this Stipulation as to the particular defaulting Borrower: (a) failure of the Borrower(s) to comply with any term of this Stipulation; or (b) the use of Alleged Unencumbered Cash, Cash Collateral or the proceeds of DIP Loans other than in strict compliance with the terms of this

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

Stipulation; or (c) the failure to repay the ELR Escrow Cash Collateral Amount, Administrative

Obligations, or Alleged Unencumbered Cash Administrative Obligations pursuant to and in

accordance with the terms of this Stipulation.

19.    Remedies.  Immediately upon the occurrence and during the continuation of an Event

of Default set forth in paragraph 16 by a particular Borrower, and without further order of the Court:

(a) Palmdale Hills shall, at the direction of LCPI, (i) declare all DIP Loan Administrative

Obligation(s) to be immediately due and payable by the defaulting Borrower(s), (ii) terminate,

reduce or restrict the use of any of the proceeds of the DIP Loans or any further commitment to

extend credit to the defaulting Borrower(s) to the extent any such commitment remains, and/or (iii)

seek relief from the automatic stay under section 362 of the Bankruptcy Code; (b) if Palmdale Hills

is the defaulting Borrower, Palmdale Hills shall, at the direction of LCPI, cease using any of the

ELR Escrow Cash Collateral Amount or Ritter Pledged Account Cash Collateral Amount; and (c)

the applicable defaulting Voluntary Debtors shall, at the direction of the Lehman Entities, cease

using the Alleged Unencumbered Cash.

20.    Good Faith.  The DIP Loans have been extended in good faith.  In accordance with

section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Stipulation

are hereafter modified, amended or vacated by a subsequent order of this Court or any other court,

the Voluntary Debtors are entitled to the protections provided in section 364(e) of the Bankruptcy

Code.  Any such modification, amendment or vacatur shall not affect the extent, validity, priority,

allowability, enforceability or non-avoidability of any advances previously made or made hereunder,

or claim or priority granted, authorized or created hereby.  Any claims granted to the Voluntary

Debtors hereunder arising prior to the effective date of any such modification, amendment or vacatur

of this Stipulation shall be governed in all respects by the original provisions of this Stipulation,

including entitlement to all rights, remedies, privileges and benefits granted herein.

21.    Reservation of Rights.  Notwithstanding anything to the contrary herein, this

Stipulation is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any

rights, claims or privileges (whether legal, equitable or otherwise) of the Parties with respect to any

issues that are not expressly addressed herein.  Specifically, and for the avoidance of doubt, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Parties reserve all rights in connection with the Alleged Unencumbered Cash, including without limitation whether such cash is encumbered by perfected liens held by the Lehman Entities, and all aspects of pending litigation among the Parties, including, without limitation, any matters involving equitable subordination or substantive consolidation. The Parties further agree that entry into this Stipulation, and the use of Cash Collateral, use of Alleged Unencumbered Cash, the extension of the DIP Loans, or the consent to the Administrative Obligations and Alleged Unencumbered Cash Administrative Obligations contemplated hereunder, shall not be used in any manner in litigation amongst the Parties, whether as, for instance, a basis for or against substantive consolidation or otherwise, and in no way shall have any effect on the adversary proceeding captioned *Palmdale Hills Property, LLC, et al., v. Lehman ALI, Inc., et al.*, Adv. Pro. No. 09-1005-ES, pending in the Court.

22.    <u>No Modification</u>. Absent the written consent of the Lehman Entities and the Borrowers or further order of the Court, the Lehman Entities and the Borrowers agree that this Stipulation shall not be modified.

23.    <u>Jurisdiction</u>. The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

24.    <u>Further Cooperation</u>. The Parties agree to and will cooperate fully with each other in the performance of this Stipulation, and will execute such additional agreements, documents or other instruments as may reasonably be required to carry out the intent of this Stipulation.

25.    <u>Signatures</u>. This Stipulation may be signed in any number of counterparts (and by each Party hereto on different counterparts), each of which constitutes an original, but all such counterparts when taken together shall constitute one and the same agreement. This Stipulation may be executed by facsimile signature and delivered by facsimile transmission with the same effect as delivery of a manually executed counterpart of this Stipulation.

26.    <u>Compromise</u>. The Parties agree that this Stipulation is a compromise of certain financing and use of cash collateral issues. Neither this Stipulation nor anything contained in this Stipulation shall be construed as, treated as or characterized as an admission by any Party of any fact or liability or as evidence of any allegation of any Party. Neither this Stipulation nor anything in this Stipulation shall be admissible in any proceeding as evidence of liability or wrongdoing by any of

1    this Stipulation.

2          27.    Authority.  Each person who signs this Stipulation represents and warrants that he or

3    she has the authority and capacity to act on behalf of the Party for whom he or she is signing and to

4    bind that Party to the terms of this Stipulation.

5          28.    Entire Agreement.  This Stipulation contains the entire agreement between the Parties

6    and may not be amended or modified except by a writing executed by the Parties or further order of

7    the Court.  All prior oral and written agreements, if any, are expressly superseded hereby and are of

8    no further force and effect.

9                                         WEIL, GOTSHAL & MANGES LLP

10

11                                        - and -

      Dated:    December ___, 2009        PACHULSKI STANG ZIEHL & JONES LLP
12

13                                        By _____
                                             Richard M. Pachulski
14                                           Dean A. Ziehl
                                             Attorneys for Lehman ALI, Inc., Lehman
15                                           Commercial Paper Inc., Northlake
                                             Holdings LLC and OVC Holdings LLC.
16

17    Dated:    December 7, 2009           WINTHROP COUCHOT
                                           PROFESSIONAL CORPORATION
18

19                                        By _____
                                             Paul J. Couchot
20                                           Peter W. Lianides
                                             General Insolvency Counsel for Debtors
21                                           and Debtors-in Possession

22

23    APPROVED AS TO FORM AND SUBSTANCE:

24    Dated:    December ___, 2009         THE LOBEL FIRM

25                                        By _____

26                                           William Lobel
                                             Mike D. Neue
27                                           General Insolvency Counsel for Steven M.
                                             Speier, Chapter 11 Trustee

28    *[Signatures Continued on Next Page]*

52063-001\DOCS_NY:19230.10

this Stipulation.

27.    <u>Authority</u>. Each person who signs this Stipulation represents and warrants that he or she has the authority and capacity to act on behalf of the Party for whom he or she is signing and to bind that Party to the terms of this Stipulation.

28.    <u>Entire Agreement</u>. This Stipulation contains the entire agreement between the Parties and may not be amended or modified except by a writing executed by the Parties or further order of the Court. All prior oral and written agreements, if any, are expressly superseded hereby and are of no further force and effect.

WEIL, GOTSHAL & MANGES LLP

- and -

Dated:    December ___, 2009        PACHULSKI STANG ZIEHL & JONES LLP

By _____
      Richard M. Pachulski
      Dean A. Ziehl
      Attorneys for Lehman ALI, Inc., Lehman
      Commercial Paper Inc., Northlake
      Holdings LLC and OVC Holdings LLC.

Dated:    December ___, 2009        WINTHROP COUCHOT
                                    PROFESSIONAL CORPORATION

By _____
      Paul J. Couchot
      Peter W. Lianides
      General Insolvency Counsel for Debtors
      and Debtors-in Possession

<u>APPROVED AS TO FORM AND SUBSTANCE</u>:

Dated:    December 7, 2009        THE LOBEL FIRM

By _____
      William Lobel
      Mike D. Neue
      General Insolvency Counsel for Steven M.
      Speier, Chapter 11 Trustee

*[Signatures Continued on Next Page]*

1  Dated:    December 7, 2009          IRELL & MANELLA LLP

2

3                                       By _____

4                                          Alan Friedman
                                           Kerri A. Lyman
                                           Attorneys for Official Unsecured
5                                          Creditors' Committee of Voluntary
                                           Debtors

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

| Account Holder | Approx. Balance | Account No. | Depository Bank |
|---|---|---|---|
| Acton Estates, LLC | 107.00 | 3090345971 | California Bank & Trust |
| Kirby Estates, LLC | 10.00 | 3090344731 | California Bank & Trust |
| North Orange Del Rio LLC | 72.00 | 3090343681 | California Bank & Trust |
| Palmdale Hills Property LLC (Anaverde Account) | 2,713,338.00 | 1000914414 | Central Pacific Bank |
| Palmdale Hills Property LLC - (bond interest) | 5,870,308.00 | 3090346941 | California Bank & Trust |
| SCC Communities LLC | 5,509.00 | 3090343411 | California Bank & Trust |
| SCC Palmdale, LLC | 27.00 | 3090340901 | California Bank & Trust |
| Seven Brothers, LLC | 174.00 | 3090346001 | California Bank & Trust |
| SJD Development | 211.00 | 3090344651 | California Bank & Trust |
| SJD Partners, Ltd | 10,978.00 | 3090344571 | California Bank & Trust |
| SunCal Beaumont Heights, LLC | 11.00 | 3090340821 | California Bank & Trust |
| SunCal Bickford Ranch LLC | 2,208,741.00 | Former Bickford LOC Accounts | California Bank & Trust |
| SunCal Bickford Ranch LLC | 38,809.00 | 3090345891 | California Bank & Trust |
| SunCal Communities I LLC | 26.00 | 3090344811 | California Bank & Trust |
| SunCal Communities III LLC | 29.00 | 3090345031 | California Bank & Trust |
| SunCal Emerald Meadows LLC | 45,025.00 | 3090345701 | California Bank & Trust |
| SunCal Johannson Ranch LLC | 47,662.00 | 3090341041 | California Bank & Trust |
| SunCal Summit Valley, LLC | 38,409.00 | 3090341121 | California Bank & Trust |
| Tesoro SF, LLC | 71.00 | 3090343761 | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT B

CONTINUATION/MAINTENANCE BUDGET
PROJECT NAME: Ritter
LOCATION: Palmdale, CA
ACREAGE: 10,625
LOTS DELIVERED: 0
LOTS REMAINING: 7,158
TOTAL LOTS: 7,158
STATUS: Owned
YEAR PURCHASED: 2004-2007
PURCHASE PRICE: $67m

**DOES NOT INCLUDE ELR**

**SunCal Companies**

| Summary | | |
|---|---|---:|
| A | Health/Safety/Insurance | $ 77,705 |
| B | Non-Compliance | $ 38,400 |
| C | Entitlements/Preservation of Value | $ - |
| D | Supervision, Reporting and Management | $ 80,000 |
| | Subtotal | $ 196,105 |
| E | Other | $ 5,000 |
| | Grand Total | $ 201,105 |

| Category | Ref | Cost Items | Month 1 Budget | Month 2 Budget | Month 3 Budget | Month 4 Budget | Total | Explanation/Consequence |
|---|---|---|---|---|---|---|---|---|
| **A. Health/Safety/Insurance** | | | | | | | | |
| | | Insurance | 6,572 | 6,572 | 6,572 | 6,572 | 26,388 | General Liability |
| | | Fencing | 2,500 | 1,000 | 1,000 | 1,000 | 5,500 | Purchase of fencing for security and to avoid fines. |
| | | Utilities - Water | 500 | 500 | 500 | 500 | 2,000 | |
| | | Elizabeth Lake Road | | | | | | |
| | | Unpaid Insurance | 43,917 | | | | 43,917 | Removed $2,159,851 for ELR which will be funded through the escrow |
| | | Subtotal | 53,489 | 8,072 | 8,072 | 8,072 | 77,705 | |
| **B. Non-Compliance** | | | | | | | | |
| | | SWPPP Compliance - Dust Control/Erosion Control | 5,000 | 5,000 | 4,500 | 4,500 | 19,000 | Maintain project BMP's |
| | | Water Quality Monitoring | 3,100 | 3,100 | 3,100 | 3,100 | 12,400 | Required for Discharge permit |
| | | Reatore Fire Protection - Homefinder Center | 7,000 | | | | 7,000 | Required since final water is incomplete |
| | | Subtotal | 15,100 | 8,100 | 7,600 | 7,600 | 38,400 | |
| **C. Entitlements/Preservation of Value** | | | | | | | | |
| | | Subtotal | - | - | - | - | - | |
| **D. Supervision, Reporting and Management** | | | | | | | | |
| | | General & Administrative | 20,000 | 20,000 | 20,000 | 20,000 | 80,000 | |
| | | Subtotal | 20,000 | 20,000 | 20,000 | 20,000 | 80,000 | |
| **E. Other** | | | | | | | | |
| | | Property Tax Appeal | 5,000 | | | | 5,000 | Reduced SWPPP to cover property tax appeal |
| | | Subtotal | 5,000 | - | - | - | 5,000 | |
| **GRAND TOTAL** | | | 93,589 | 36,172 | 35,672 | 40,672 | 201,105 | |

# EXHIBIT C

**Lehman Projects – SunCal Budget**
*120 Day Funding Needs Summary*

## VOLUNTARY BUDGET

### Month 1

| Projects | Health/Safety /Insurance | Non-Compliance | Entitlements/ Preservation of Value | Supervision, Reporting, & Management | Other | Professional Fees | Total | Subtotal |
|---|---|---|---|---|---|---|---|---|
| Acton | 5,917 | 500 | 0 | 0 | 0 | 0 | 6,417 | 7,917 |
| Bickford Ranch | 92,616 | 41,800 | 37,100 | 10,909 | 5,000 | 0 | 187,425 | 208,125 |
| Burnum | 5,917 | 2,892 | 0 | 0 | 0 | 0 | 8,808 | 9,808 |
| Del Rio | 11,284 | 0 | 0 | 0 | 0 | 0 | 11,284 | 12,955 |
| Emerald Meadows | 5,917 | 3,000 | 0 | 10,909 | 3,000 | 0 | 22,826 | 58,735 |
| Ritter Ranch | 53,489 | 15,100 | 0 | 20,000 | 0 | 0 | 88,589 | 124,761 |
| Total | 175,139 | 63,292 | 37,100 | 41,818 | 8,000 | 0 | 325,349 | 422,301 |

### Month 2

| Projects | Health/Safety /Insurance | Non-Compliance | Entitlements/ Preservation of Value | Supervision, Reporting, & Management | Other | Professional Fees | Total | Subtotal |
|---|---|---|---|---|---|---|---|---|
| Acton | 1,000 | 500 | 0 | 0 | 0 | 0 | 1,500 | 3,001 |
| Bickford Ranch | 2,791 | 7,000 | 0 | 10,909 | 0 | 0 | 20,700 | 32,000 |
| Burnum | 1,000 | 0 | 0 | 0 | 0 | 0 | 1,000 | 2,000 |
| Del Rio | 1,671 | 0 | 0 | 0 | 0 | 0 | 1,671 | 3,342 |
| Emerald Meadows | 7,000 | 18,000 | 0 | 10,909 | 0 | 0 | 35,909 | 27,418 |
| Ritter Ranch | 8,072 | 8,100 | 0 | 20,000 | 0 | 0 | 36,172 | 76,344 |
| Total | 21,534 | 33,600 | 0 | 41,818 | 0 | 0 | 96,952 | 144,105 |

### Month 3

| Projects | Health/Safety /Insurance | Non-Compliance | Entitlements/ Preservation of Value | Supervision, Reporting, & Management | Other | Professional Fees | Total |
|---|---|---|---|---|---|---|---|
| Acton | 1,000 | 500 | 0 | 0 | 0 | 0 | 1,500 |
| Bickford Ranch | 4,391 | 1,000 | 0 | 10,909 | 0 | 0 | 16,300 |
| Burnum | 1,000 | 0 | 0 | 0 | 0 | 0 | 1,000 |
| Del Rio | 1,671 | 0 | 0 | 0 | 0 | 0 | 1,671 |
| Emerald Meadows | 1,300 | 3,000 | 0 | 10,909 | 0 | 0 | 15,209 |
| Ritter Ranch | 8,072 | 7,600 | 0 | 20,000 | 0 | 0 | 35,672 |
| Total | 17,434 | 12,100 | 0 | 41,818 | 0 | 0 | 71,352 |

### Month 4

| Projects | Health/Safety /Insurance | Non-Compliance | Entitlements/ Preservation of Value | Supervision, Reporting, & Management | Other | Professional Fees | Total |
|---|---|---|---|---|---|---|---|
| Acton | 1,000 | 501 | 0 | 0 | 0 | 0 | 1,501 |
| Bickford Ranch | 2,791 | 2,000 | 0 | 10,909 | 0 | 0 | 15,700 |
| Burnum | 1,000 | 0 | 0 | 0 | 0 | 0 | 1,000 |
| Del Rio | 1,671 | 0 | 0 | 0 | 0 | 0 | 1,671 |
| Emerald Meadows | 1,300 | 0 | 0 | 10,909 | 0 | 0 | 12,209 |
| Ritter Ranch | 8,072 | 7,600 | 0 | 20,000 | 5,000 | 0 | 40,672 |
| Total | 15,834 | 10,101 | 0 | 41,818 | 5,000 | 0 | 72,753 |

### Summary by Category

| | Health/Safety /Insurance | Non-Compliance | Entitlements/ Preservation of Value | Supervision, Reporting, & Management | Other | Professional Fees | Grand Total |
|---|---|---|---|---|---|---|---|
| Acton | 8,917 | 2,001 | 0 | 0 | 0 | 0 | 10,918 |
| Bickford Ranch | 102,589 | 51,800 | 37,100 | 43,636 | 5,000 | 0 | 240,125 |
| Burnum | 8,917 | 2,892 | 0 | 0 | 0 | 0 | 11,808 |
| Del Rio | 16,297 | - | 0 | 0 | 0 | 0 | 16,297 |
| Emerald Meadows | 15,517 | 24,000 | 0 | 43,636 | 3,000 | 0 | 86,153 |
| Ritter Ranch | 77,705 | 38,400 | 0 | 80,000 | 5,000 | 0 | 201,105 |
| Total | 229,941 | 119,093 | 37,100 | 167,272 | 13,000 | 0 | 566,406 |

| | |
|---|---|
| Ritter Ranch Elizabeth Lake Road Escrow Account (Funds to complete ELR work) | $2,191,008 |
| **TOTAL BUDGET INCLUDING RITTER RANCH ELR ESCROW ACCOUNT** | **$2,757,414** |

NOTE: ELR improvements are not included in the 120 day budget as these improvements will be funded through the escrow.

# EXHIBIT D

SUNCAL PORTFOLIO
Lehman 30-Day April 2009 Approved Voluntary Budgets

| | | | | Lehman 30-Day April 2009 Approved Voluntary Budgets | | | | |
|---|---|---|---|---|---|---|---|---|
| Asset Name | Life Safety | Security | Utilities | Erosion Control & Maint. | Insurance (1) | G&A (2) | Legal Fee | 30-Day Total |
| Acton Ranch | - | - | 150 | 1,000 | 2,273 | 10,909 | 22,727 | 37,059 |
| Beaumont Heights | - | - | - | - | - | - | - | - |
| Bickford Ranch | - | - | - | 47,545 | 2,273 | 10,909 | 22,727 | 83,454 |
| Del Rio | - | - | - | - | - | - | - | - |
| Emerald Meadows | - | 1,200 | - | 33,150 | 2,273 | 10,909 | 22,727 | 70,259 |
| Johansen Ranch | - | - | - | - | - | - | - | - |
| Joshua Ridge II | - | - | 7,550 | 36,500 | 2,273 | 10,909 | 22,727 | 79,959 |
| Ritter Ranch | - | - | - | - | - | - | - | - |
| Summit Valley | - | - | - | - | - | - | - | - |
| Tesoro Burnham | - | - | - | - | - | - | - | - |
| TOTAL | $0 | $1,200 | $7,700 | $118,195 | $9,091 | $43,636 | $90,909 | $270,731 |