**Hearing Date: December 10, 2009, 2:00 p.m. (prevailing Eastern Time)**

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br><br>08-13555 (JMP)<br><br>(Jointly Administered) |
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | SIPA Proceeding Case No.<br><br>08-01420 (JMP) |

**BARCLAYS' REPLY TO THE RESPONSES OF THE TRUSTEE AND THE
COMMITTEE TO BARCLAYS MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FROM THE TRUSTEE AND THE COMMITTEE
<u>BASED ON PRIVILEGE WAIVER</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ………………………………………………………………1

ARGUMENT ……………………………………………………………………………..…..4

    A. The Trustee Has Waived Attorney-Client Privilege. …………………………………5

    B. The Committee Has Waived Attorney-Client Privilege …………………………….7

CONCLUSION ……………………………………………………………………………..11

## PRELIMINARY STATEMENT

The Opposition briefs suggest that the knowledge of the Trustee and the Committee is irrelevant to the legal merit of their claims, which they say rest solely upon what Weil Gotshal told the Court on September 19. But that is false. Their claims are based upon what their lawyers knew and understood about the contract that those lawyers reviewed and (in the case of the Trustee) executed or (in the case of the Committee) chose not to object to. They now ask the Court to rewrite that contract. In an effort to avoid the numerous legal prohibitions against seeking that relief, the Trustee and the Committee claim there is "new evidence" that they and their lawyers "did not know" or "did not understand" at the time the contract was executed. Those assertions place directly at issue what their lawyers told them: their lawyers, after all, were the primary (if not exclusive) source of information for both the Trustee and the Committee. Indeed, Barclays offered to resolve the privilege dispute if the Trustee and Committee would agree *not* to argue that their attorneys misunderstood the terms of the contractual documents governing the sale. They refused. They know their motions depend upon the unfounded assertion that their lawyers were confused or misadvised about the terms of the deal. By relying upon that assertion, they put at issue what their lawyers told them about the deal, and thereby waive the privilege. The Barclays motion should therefore be granted.

A brief review of the context of this Court's approval of the Barclays sale further demonstrates why the Trustee and the Committee cannot avoid the privilege waiver that is at the core of their Rule 60 motions. On September 20, 2008, this Court approved the Barclays acquisition of Lehman's North American investment-banking and broker-dealer business, including all assets used in that business (other than certain, specifically excluded assets). The Court issued its Sale Orders approving that transaction after being told that there were "major changes" to the transaction set forth in the Asset Purchase Agreement ("APA") that had been

1

submitted to the Court on September 17, and that those changes would be reflected in a letter agreement that was still being finalized (the "Clarification Letter"). The Court issued the Sale Orders over the objection of creditors who complained that the sale was governed by "a contract that's not complete," was a "fire sale" deal, and appeared to be "selling assets on what we perceive to be a discount value."[1] The Court correctly rejected those objections because, as emphasized by Weil Gotshal, the Debtor, Lazard, the Trustee, SIPC, and other government officials and regulators, expedited approval of the sale was absolutely essential for the public interest and the estate's interest in avoiding a potentially disastrous liquidation threatening "hundreds of billions of dollars" of losses.

After the sale hearing, the parties worked diligently to finalize the Clarification Letter to reflect the agreement made by the parties before the sale hearing. The drafting process that produced the Clarification Letter was conducted at the law offices of Weil Gotshal, and involved consultations with the lawyers representing both the Trustee and the Creditors Committee. Those lawyers were informed of the provisions that were in the Clarification Letter, and those lawyers reviewed the letter agreement. Those lawyers knew that the Clarification Letter provided that (as was also understood and explained in a recess at the sale hearing) certain purchased assets set forth in the APA were being replaced with certain other purchased assets, which were specifically listed in the Clarification Letter. The lawyers for the Trustee and the Committee also knew that the Clarification Letter did *not* include any estimated valuations for the purchased assets. That was hardly surprising: as the lawyers for the Trustee and the Committee must have known, the financial markets were in exceptional turmoil, causing valuations to change constantly; moreover, many of the assets Barclays was acquiring were illiquid and extremely difficult to value. After the Clarification Letter was finalized, a lawyer for

---

[1] [September 19, 2008 Sale Hearing Tr. at 173:7 – 174:8; 227:5-14]

2

the Trustee executed it on behalf of the Trustee, and lawyers for the Committee reviewed the agreement and made no objection.

Now, a full year later, after the markets have stabilized, the Debtor, the Trustee, and the Committee come back to the Court in an effort to re-trade the deal. The Trustee and the Committee assert that they "were not told" and "did not understand" the terms of the Clarification Letter – and therefore ask the Court to rewrite those terms. As a matter of law, that claim must fail: the Trustee and the Committee are charged with the knowledge of the terms set forth in the contract (the assets that Barclays would acquire), and with the knowledge of what is not in the contract (any representation or agreement regarding the value of those assets or the precise accounting result on the Barclays balance sheet). But even though their claim is legally meritless, Barclays is entitled to discovery in order to prove that it is factually false as well. By asking this Court to rewrite the deal and impose a massive loss on Barclays, the Trustee and the Committee are claiming that they "were not advised" what the contract really meant. In doing so, they place directly at issue what their lawyers told them, and they must allow Barclays discovery into what those lawyers did explain – what they knew and understood at the time the transaction closed, and in its immediate aftermath.

For example, the Trustee and the Committee claim they believed that certain assets in the sale were subject to a total valuation cap of $47.4 billion, as that was one of the estimates provided to the Court in the middle of the sale hearing for certain (though not all) of the purchased assets in the deal. But the lawyers for the Trustee and the Committee knew that Weil Gotshal also told the Court there was no time for "ordered reports," "physical inventories," or "appraisals," and knew that the Clarification Letter did not (and could not) make any representation regarding the final value of the various categories of illiquid and volatile financial assets being acquired by Barclays. They therefore must have known that they could not

3

reasonably rely upon the purchased assets having any definite final value. They likewise must have known that if they wanted a "valuation cap" of the type they now seek to impose on the deal, they had to ask for it to be inserted into the contract, or otherwise ask the Court to impose it. They did neither – because they knew that doing so was unrealistic and impractical. Their claims should therefore fail as a matter of law. But if they wish to make such meritless claims, then Barclays is entitled to discovery to explore what was truly known and understood, and when.

## ARGUMENT

In an effort to avoid privilege waiver, the Trustee and the Committee argue that their claim is solely about what Weil Gotshal disclosed to the Court. That is not correct. By challenging aspects of the transaction that were expressly included in the Clarification Letter – a contract that their attorneys reviewed before it was signed, and that the Trustee's lawyers executed on his behalf – the Trustee and the Committee are claiming that their lawyers "did not understand" and "were not advised" of the meaning of that contractual document. There is no way around that. Well-established legal doctrines bar the Trustee and the Committee from asking the Court to rewrite the contract. In order to sidestep those doctrines, they are necessarily claiming that their lawyers simply did not understand the contract. The Trustee does so explicitly through an affidavit of his lawyer, yet fails even to address the numerous cases cited by Barclays holding that such an act waives privilege. The Committee's Rule 60 motion is likewise full of claims that they "were not told" what the contract meant, yet they now characterize their claims as if they were just a passive bystander, and their knowledge of the deal as irrelevant.

The Trustee and the Committee cannot have it both ways. By asking the Court to rewrite the contract, they are necessarily saying (as they do in their Rule 60 motions) that their lawyers

4

did not understand the meaning of that contract. By making that claim, either explicitly or implicitly, they put directly at issue what their lawyers knew. Under established law, Barclays is therefore entitled to discovery of what the Trustee and Committee lawyers knew and communicated to their clients.

**A. The Trustee Has Waived Attorney-Client Privilege**

The Trustee's response to Barclays' motion largely ignores Barclays' arguments and instead relies on (1) a broad conclusory assertion that its claims do not rely on any privileged "communications" and (2) Barclays' inability to cite any particular communication relied upon. However, that the Trustee does not (and Barclays understandably cannot) specifically cite a specific communication (such as a letter or email) does not mean that the Trustee is not relying on "legal advice" – what it was or was not advised about the terms of the deal. Although the Trustee narrowly focuses on whether a particular "communication" is relied on, the actual test set forth in *Erie* is much broader – whether "legal advice" in general was relied on. There is no question that the Trustee's attorneys reviewed and participated in discussions concerning the terms of the Clarification Letter as that agreement was being finalized, or that the Trustee's attorneys were advising the Trustee on same. The Trustee, as a necessary part of its claim, now contends that it did not correctly understand those contract terms and was not advised by anyone as to the correct meaning of those terms. In doing so, the Trustee is relying on assertions about what its attorneys did and did not advise it concerning the contract terms. The Trustee's claim that it did not understand the deal it signed and was not advised by anyone of the correct legal effect and meaning of the contract it agreed to necessarily entails the assertion that the advice it received from its attorneys as to the effect of the contract provisions was something other than

the correct interpretation. The fact that the Trustee does not cite a particular "communication" – *i.e.*, a particular email or conversation – is irrelevant.[2]

Further, after the Trustee's conclusory assertions in letters (cited in the Trustee's opposition) that it was not relying on privileged "communications," the Trustee was asked specifically whether it would agree not to "rely on any assertion that the Trustee's attorneys did not understand the terms and effect of the Clarification Letter or that the Trustee was not accurately advised by its attorneys as to the terms and effect of the Clarification Letter." The Trustee has declined to agree to such a stipulation, which speaks for itself. If it is relying on the substance of its attorneys' understanding and advice (*i.e.*, that it was different than the interpretation maintained by Barclays) – as Barclays' believes to be the case – then this results in a waiver of privilege.

The Trustee also fails to explain how the disclosures of privileged information contained in its Rule 60 motion and the accompanying declaration of James Kobak do not demonstrate both at-issue waiver and selective disclosure waiver. Numerous times throughout the motion and Kobak's declaration, the Trustee references their "understand[ing]" and "belief" concerning the Clarification Letter, as well as their intent in agreeing to the documents (*e.g.*, saying they would not have signed the documents had they believed they could be interpreted as Barclays now contends). In doing so, the Trustee is revealing how its attorneys interpreted the documents and their intent in signing the agreements, which is privileged information. Other than proclaiming that this does not constitute reliance because the Trustee says otherwise, it – tellingly – fails to

---

[2] Notably, even the Committee recognizes that the Trustee is arguing it signed a document it allegedly did not understand. Committee Response at ¶ 23 ("The Committee's position with respect to the Clarification Letter is different [than LBHI or the SIPA Trustee]. **Instead of maintaining it signed a document it did not understand**, the Committee submits that ..."). While the Committee's argument is flawed for several reasons, as will be discussed, it is telling that the Committee undertakes such significant efforts to distinguish itself from the position of the Trustee.

dispute or even acknowledge the numerous cases cited by Barclays holding that testimony from an attorney as to a party's intent in entering into a contract, or his or her understanding of a contract's terms, constitutes a waiver of privileged information. *Stovall v. United States*, 85 Fed. Cl. 810, 816 (2009); *IMC Chems., Inc. v. Niro, Inc.*, 2000 WL 1466495, at *23 (D. Kan. July 19, 2000); *Commodity Futures Trading v. Richards*, 1996 WL 308286, at *5 (N.D. Ill. June 6, 1996); *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 771-772 (E.D. Mich. 2003). And, here, the Trustee expressly relies on claims of what its intent was (and was not) in signing the Clarification Letter. *See Trustee's Rule 60 Motion at 39* ("The Court Should Grant Rule 60(b) Relief To The Trustee *Because The Trustee Did Not Intend* To Provide Barclays with As Much As $6.7 Billion In Additional Estate Assets").

Moreover, this selective disclosure of privileged information in support of its motion is the classic "sword and shield" situation that results in a broad waiver with respect to the entire subject matter. *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party").

### B. The Committee Has Waived Attorney-Client Privilege

While the Committee's reliance on legal advice is less explicit than the Trustee – in large part because it simply fails to address certain elements of its claim – a simple analysis of its claim reveals that it also puts legal advice at issue. The Committee necessarily relies on its attorneys' advice because of the specific circumstances of its claim:

1. For several reasons, the Committee bears the burden of proving that it did not know, at the time of the sale or soon thereafter, of the specific aspects of the transaction from which it now seeks relief. The Committee's claim of "new evidence" requires it to show that the

**Committee was not aware** of anything it asserts as new evidence. It also has the burden of proving **as part of its claim** (not as part of an affirmative defense Barclays may assert) that the grounds raised in its motion were timely presented to this Court and could not have been raised on appeal.

2. Several aspects of the transaction that it now challenges were expressly included as part of the Clarification Letter. This includes the inclusion of collateral associated with the Repurchase Agreement and the addition of unencumbered securities in the non-actionable box.

3. As the Committee was in possession of the Clarification Letter, it must – to prove the items contained within are "new evidence" or were otherwise unbeknownst to the Committee at a time when it could have appealed the Sale Order – claim that it did not understand these provisions of the Letter.[3]

4. The Committee acted through its attorneys, who reviewed the Clarification Letter and advised the Committee as to its contents.

5. Therefore, the Committee's claim that it did not understand the Letter – a necessary claim for the above-mentioned reasons – requires it to rely on privileged information it received about the Letter.

In its response, the Committee completely ignores its Rule 60(b)(2) claim and its burden under the mandate rule, but instead argues that its claim is only about what was told to the Court. Therefore, the Committee argues, it is presenting an "objective" claim without reliance on its own knowledge or state of mind. Indeed, the Committee goes on at great length to discuss the parts of its motion that may not put privileged information at issue, but it fails to address those

---

[3] The fact that the Committee has other claims that do not rely on an interpretation of the Clarification Letter (*e.g.*, that the Clarification Letter was never approved by the Court) or rely on information extrinsic to the Clarification Letter is immaterial. The Committee could have limited its claims to those that do not necessarily entail the reliance upon privileged information, but it chose not to do so.

parts of its claim which Barclays asserts *do* put privileged information at issue and the significant legal doctrines that require it to prove a subjective lack of knowledge for the bases of several of the Committee's claims. Notably, the Committee does not dispute that it must prove – as an element of its claim – that any "new evidence" it asserts was **unknown to the Committee** during the time it could have moved for reconsideration of the Court's order. *State Street Bank & Trust v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d cir. 2004). Try as it might to structure its claim as only being about what was told to the Court, all claims of "new evidence" require the movant to demonstrate a lack of subjective knowledge with respect to the new evidence. Thus, despite the Committee's protestations to the contrary, its subjective knowledge is placed at issue for anything it claims to be "new evidence." Here, that knowledge was based on legal advice from its attorneys concerning the terms of the Sale.

Additionally, the Committee makes no mention of its duty to prove the mandate rule does not foreclose its claims. *See Oneida Indian Nation of New York v. Oneida County*, 214 F.R.D. 83, 96 (N.D.N.Y. 2003); *Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1123 (7th Cir. 1991). To do so, the Committee must prove that it did not have, in time to appeal the order, subjective knowledge of the parts of the transaction from which it now seeks relief. *United States v. Zvi*, 25 F. App'x 34, 36 (2d Cir. 2001). Furthermore, the Committee must prove, as part of its requirement to demonstrate its motion was timely filed, that it did not have knowledge of the challenged aspects of the sale transaction at the time the transaction was consummated. *Richard v. Allen*, 1996 WL 102419, at *1 (6th Cir. Mar. 7, 1996); *Sloan v. Bertelsmann Music Group*, 1993 WL 359470, at *1 (4th Cir. Sept. 16, 1993). While the Committee argues it can prove timeliness without relying on privileged communications, it fails to recognize the unremarkable proposition that – regardless of its conduct since the transaction closed – if it knew of the components of the transaction it now complains about, its motion with respect to those

9

parts of the transaction would be untimely. Try as it might to contort these doctrines into affirmative defenses, they are well-established legal doctrines that define the scope of what the Committee must prove as part of its claim.

Thus, several legal doctrines require the Committee to prove that it did not have knowledge of the components of the transaction that it now challenges. While this, by itself, does not necessarily place privileged information at issue, it does so when considering specific aspects of the Committee's claim in connection with the Committee's possession of documents relating to same. Several components of the transaction the Committee now challenges were expressly added as part of the Clarification Letter, including the "restructuring of the transaction that resulted in Barclays acquiring the broker-dealer business through the Barclays-LBI Repurchase Agreement" and "the transfer of unencumbered securities in the non-actionable box." As these items were plainly included in the Clarification Letter – which the Committee possessed and reviewed – the only way for the Committee to prove that it did not have subjective knowledge of this information (*i.e.*, to prove this evidence is "new" and was unknown to the Committee in time to appeal the Order) is to assert that it did not understand these provisions of the Clarification Letter. Thus, regardless of how it wishes to frame its claim, the Committee's motion requires it to prove a subjective lack of knowledge of those aspects of the transaction on which it bases its Rule 60 motion. Because it has chosen to base its motion at least in part on components of the transaction that were expressly included in a document the Committee's attorneys possessed and reviewed, the Committee must – to prove a lack of knowledge of anything contained therein – assert that it did not understand the document. Once the Committee must assert its lack of understanding with respect to certain provisions of the Clarification Letter, it places at issue and relies upon legal advice it received about the Letter.

Additionally, neither the Committee nor the Trustee dispute that a waiver of attorney-client privilege extends to any claims of work product. And, even if there is no waiver of privileged information, Barclays is entitled to work product because it has demonstrated – for the reasons above – a substantial need for materials reflecting the movants' understanding of the terms of the sale.

## CONCLUSION

For the aforementioned reasons, Barclays respectfully requests this Court to order the Trustee and the Committee to produce the requested documents.

Dated: December 9, 2009

BOIES, SCHILLER & FLEXNER LLP

By: _____
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

W. Todd Thomas
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephones: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Barclays Capital Inc.*

11