# Exhibit 1

Financial Services Authority

Direct line: 0207-066 3364
Local fax: 0207 066 3365
Email: greg.choyce@fsa.gov.uk

**FSA**

Ms Sue Prevezer QC
Quinn Emanuel
16 Old Bailey
London
EC4M 7EG

9 December 2009

Our Ref:

Your Ref:

By e-mail and by post

Dear Ms Prevezer

## Civil Proceedings in the US between the official Committee of Unsecured Creditors of Lehmans brothers Holdings Inc and Barclays Capital Inc

1. I refer to your letter and attachments of 25 November. These are our comments on your Motion asking Judge Peck to send Letters of Request to the High Court in London. Please could you ensure that this letter is made available to Judge Peck for the hearing on 16 December.

### Relevance, alternative means and specificity

2. It does not appear to us that your Motion discloses any basis for believing that any documents which we may possess would be relevant or, more particularly, constitute evidence in relation to the issues in your clients' proceedings. For example, it is difficult for us to see why any documents we hold about the aborted transaction are relevant, as they will relate to a different transaction which in the event did not complete. Further, in the context of a claim about how Barclays described the completed transaction to the US Court, it is difficult to see how any internal consideration carried out by the FSA could be relevant.

3. Even if there are any relevant documents, it is not clear why disclosure of Barclays' side of its exchanges with the FSA have not been pursued with Barclays. Footnote 9 on page 11 of the Motion says that "Barclays has not agreed to produce such documents". It does not seem reasonable to pursue disclosure of documents from the FSA, which is not a party to the proceedings, when steps appear not to have been taken to compel their production from Barclays, which is a party.

4. In addition, our understanding of the position is that, consistently with the aim of the Hague Convention being to facilitate the obtaining of foreign evidence rather than discovery, requests for documents should be for specific documents. It seems to us

that requests in the Schedule to your Motion are expressed in an inappropriately imprecise way.

5.  In view of the difficulty we would have in complying with any Letters of Request, set out in the "Confidentiality" section below, we say no more on these points at this stage but we reserve our position on developing them (and any others) in the future, should that be necessary.

## Confidentiality

### Legal materials

6.  In preparing this section we have relied on the following legal materials:

    (i)   sections 348 to 353 and 391 Financial Services and Markets Act 2000 ("FSMA");

    (ii)  the Financial Services and Markets Act 2000 (Disclosure of Confidential Information) Regulations 2001 (SI 2001 No. 2188) (as amended) ("the Regulations");

    (iii) **BCCI v Price Waterhouse and Others** [1997] 4 All ER 781 ("the BCCI case");

    (iv)  **Re Galileo Group Limited** [1998] 1 All ER 545 ("the Galileo case");

    (v)   **Barings plc v Coopers & Lybrand** [2000] 3 All ER 910 ("the Barings case");

    (vi)  **Real Estate Opportunities v Aberdeen Asset Management** [2007] 2 All ER 791 ("the Real Estate case").

### The confidentiality regime established under section 348 FSMA

7.  It is clear from the terms of the Schedule to your clients' Letter of Request that any relevant documents held by the FSA will contain a significant amount of information received from, or about Barclays, as well as others. This is not incidental. Your clients' Letter of Request would appear to be directed to just such information. As I will explain, on the information presently available to us, we do not consider that we have a lawful way of disclosing such information to your clients.

8.  Section 348 FSMA provides that "confidential" information must not be disclosed by a "primary recipient" (which for present purposes includes the FSA), or by any person obtaining the information directly or indirectly from a primary recipient, subject to two exceptions (discussed in paragraphs 13 to 16 below).

9.  What makes information "confidential" is defined in section 348(2). It is information which:

(i) relates to the business or other affairs of any person (person here having its meaning under the Interpretation Act 1978 and therefore legal as well as natural persons are included);

(ii) was received by the primary recipient (the FSA for present purposes) for the purposes of, or in the discharge of, any functions of the FSA under any provision made by or under FSMA; and

(iii) has not been made available to the public by way of disclosure which is not contrary to section 348, or is not in the form of a summary or collection of information from which it is not possible to ascertain information relating to any particular person.

10. In the context of the FSA's consideration of Barclays' purchase and attempted purchase of Lehman Brothers, any information received by the FSA is "confidential" as the FSA was discharging its functions as the regulator of the Barclays Group.

11. We would make a further, general comment. The confidentiality obligation in section 348 implements the UK's obligation, under the various Single Market Directives of the European Parliament, to impose on the regulators under those Directives an "obligation of professional secrecy" (see, for example, Article 44 of the Banking Consolidation Directive). This means that the provisions in Part XXIII FSMA have to be interpreted consistently with the Directives, and that any disclosure of Directive information permissible under Part XXIII must also be permissible under the relevant Directive.

12. Before considering the exceptions to the confidentiality obligation in section 348, we should note that disclosure contrary to section 348 is, under section 352, a criminal offence.

13. As indicated in paragraph 8 above, there are two circumstances in which confidential information may be disclosed. The first exception, set out in section 348 itself, provides for disclosure by consent, where consent to the disclosure has been given by the person from whom the primary recipient obtained the information (i.e. the source of the information) and (if different) the person (or persons) to whom it relates. Consent is discussed further in paragraph 20 below.

14. The second exception, or perhaps more accurately set of exceptions, arises where one or more of the circumstances set out in the Regulations apply to the potential disclosure. For convenience, these circumstances are referred to as "gateways", through which confidential information may lawfully pass. I should note that, even if confidential information is properly passed through a gateway, the reference in section 348(1) to persons obtaining the information directly or indirectly from a primary recipient means that the information remains subject to section 348 in the hands of any later recipient.

15. Regulation 5 is headed "Disclosure for the purposes of certain other [ie. non-criminal] proceedings". Regulation 5(6) is an exhaustive list of the civil proceedings for which

a gateway is available. These include civil proceedings under FSMA and the legislation which preceded it, any civil proceedings to which the FSA is or is proposed to be a party, proceedings relating to the disqualification of company directors and (in paragraph 6(e)) certain insolvency proceedings.

16. Paragraphs 20 and 21 and footnote 10 on page 13 of your clients' Motion suggest that Regulation 5(6)(e) applies to your clients' proceedings. We do not agree, as the insolvency proceedings described in sub-paragraph (e) are proceedings under English and Welsh, Scottish and Northern Irish insolvency legislation. Proceedings under the insolvency legislation in other jurisdictions are not specified. This jurisdictional limitation may be contrasted with the lack of such a limitation in relation to criminal proceedings in Regulation 4 (a) and (b) ("whether in the United Kingdom or elsewhere"). On the information available, it does not appear that there is a gateway in the Regulations available which would allow confidential information to be lawfully disclosed by the FSA in the civil proceedings involving your clients and Barclays in the U.S.

**Can other legal processes override section 348 FSMA?**

17. Under English law, there are many examples of circumstances in which a person can be required to disclose information in his possession to a third party. The FSA itself has powers to compel regulated firms and others to provide it with information, relevant to the exercise of its regulatory functions. The Civil Procedure Rules require the parties to civil litigation in England, inter alia, to disclose all documents relevant to the proceedings in their possession to each other. The CPR also allow the Court to approve the service of witness summonses requiring third parties to disclose documents or to provide oral evidence in proceedings to which they are not parties. The question therefore arises as to whether these powers or obligations to disclose information override the restriction in section 348 FSMA, or whether the restriction in section 348 prevails.

18. This point was considered in the three cases referred to in paragraph 5(iii) to (v) above. The cases involved section 82 Banking Act 1987, which section was for present purposes to the same effect as section 348 FSMA. Section 82 was repealed when FSMA came fully into force on 1 December 2001.

19. The three cases confirmed that section 82 took precedence over other disclosure obligations. Mr Justice Laddie in the BCCI case noted (on page 799) that: "The court has no power to order the disclosure of documents containing information covered by s.82(1)." This was because, following the reasoning in a House of Lord's case from 1937, "A judge cannot compel a man to commit a criminal offence". The cases on the pre–FSMA position have recently been confirmed as good law by the Court of Appeal in the Real Estate case. Our view, therefore, is that it is well established under English law that the Courts will not compel the FSA to disclose information which is confidential under section 348 FSMA, where the relevant consents have not been obtained, where the information is not otherwise lawfully available to the public and where there is no gateway permitting disclosure.

**Consent**

20. As indicated in paragraph 13 above, an alternative route to lawful disclosure would be for Barclays to give their consent to the FSA disclosing to you the information it had sent to the FSA in September 2008. We have discussed your request with Barclays, but they have not given us that consent. Were Barclays to do so, we would need to consider the form in which it might be appropriate for us to assist you. As you will appreciate, the FSA would not normally consider it appropriate to provide third parties with any of its internal working papers created in the course carrying out its official duties.

**Conclusion**

21. In the circumstances, the FSA does object to the issuing of the Letters of Request. I would however be happy to respond to any questions you may have on this letter, which I am copying to Barclays.

Yours sincerely

D G Choyce
Advisory Counsel