# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE
NEW YORK, NY 10153
(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
SINGAPORE
WARSAW
WASHINGTON, D.C.

October 27, 2009

JONATHAN D. POLKES
DIRECT LINE (212) 310-8881
E-MAIL: jonathan.polkes@weil.com

**BY HAND DELIVERY**

Honorable Judge Lewis A. Kaplan
United States District Court-SDNY
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *In re Lehman Brothers Equity/Debt Securities Litigation*,
      **C.A. No. 08-CV-5523 (LAK); Plaintiffs' Motion for
      Limited Relief from the PSLRA Discovery Stay**

Dear Judge Kaplan:

On behalf of Lehman Brothers Holdings Inc. ("Lehman" or the "Lehman Estate"), we submit this letter to the Court with respect to Lead Plaintiffs' motion to "modify" the stay of discovery mandated by the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), in the above-referenced action (the "Motion" or "Mot.").[1] Although not a party to the action, the Lehman Estate is an interested and affected party to the Motion.

Since its September 15, 2008 Chapter 11 filing, Lehman has been actively co-operating with various governmental authorities to produce documents in response to a series of subpoenas and document requests in the numerous government investigations of Lehman.

---

[1] On October 22, 2009, Plaintiffs in *In re Lehman Brothers Mortgage-Backed Securities Litigation*, C.A. No. 08-CV-6762, filed a motion with this Court, asking for the same relief from the stay as requested by plaintiffs in *In re Lehman Brothers Equity/Debt Securities Litigation*, C.A. No. 08-CV-5523 (LAK). Plaintiffs in *San Mateo County Investment Pool v. Fuld et al.*, C.A. No. 09-CV-01239, *Zenith Insurance Co. v. Fuld, et al.*, C.A. No. 09-CV-01238, *Lou Solton, Monterey County Treasurer, on Behalf of The Monterey County Investment Pool v. Fuld, et al.*, C.A. No. 09-CV-01944, *City of Auburn v. Fuld, et al.* C.A. No. 09-CV-03474, *City of Burbank v. Fuld, et al.*, C.A. No. 09-CV-03475, *City of San Buenaventura v. Fuld, et al.*, C.A. No. 09-CV-03476 (consolidated with the above-referenced action for pre-trial purposes) have also joined plaintiffs' motions to lift the stay. For the same reasons set forth herein, the motions to lift the stay in the foregoing actions should also be denied.

WEIL, GOTSHAL & MANGES LLP
Honorable Judge Lewis A. Kaplan
October 27, 2009
Page 2

Since its September 15, 2008 Chapter 11 filing, Lehman has been actively co-operating with various governmental authorities to produce documents in response to a series of subpoenas and document requests in the numerous government investigations of Lehman. Similarly, since January of this year, Lehman has been co-operating with the Examiner appointed by the Bankruptcy Court in Lehman's Chapter 11 case (the "Examiner") and responding to the Examiner's numerous requests for documents. All of these investigations remain active and Lehman continues to produce documents to the Examiner and governmental authorities on a weekly basis.

While Plaintiffs characterize their request as "only limited relief from the stay" and "only seek[ing] access to a specific and circumscribed universe…." (Mot. at 1, 17), in truth, Plaintiffs request the production of millions of pages of documents related to hundreds of different topics and time-frames. Nonetheless, Plaintiffs contend that the stay should be lifted because to do so would impose no burden on the Lehman Estate and is necessary to preserve evidence. As set forth herein, Plaintiffs' assertions simply are not true.

### Lifting the Stay Would Unreasonably Burden the Lehman Estate

The Lehman Estate is currently processing documents for production to the Examiner. The Examiner must produce a written report by February of 2010 and has asked Lehman to complete its production by the end of the year. As such, the production of documents from Lehman to the Examiner has been conducted on an expedited and rolling basis. As of October 20, 2009, the total number of documents either produced or to be produced to the Examiner through the two electronic review tools utilized by Lehman was approximately 6,538,182.[2] Additionally, thousands of pages of documents were produced, and continue to be produced, to the Examiner on discs and by Lehman's provision of access to programs and models. Hundreds of thousands of documents have also been produced to governmental authorities. These numbers increase each week as additional documents requested of Lehman are reviewed and produced.

In order to facilitate the timely production of documents to the Examiner, United States Bankruptcy Judge James H. Peck issued an Order, dated January 9, 2009, permitting Lehman to produce documents to the Examiner without conducting a full privilege review and reserving Lehman's right to claw-back and prevent the dissemination of produced documents that contain attorney work product or are protected by the attorney-client privilege. *See* January 9, 2009 Order ("[N]either the Parties, nor their respective professionals, intend to , or shall, waive, in whole or part, the attorney-client privilege, the work product doctrine or any other privilege, right or immunity they may be entitled to invoke with respect to any Shared Information"). Thus, throughout the rolling production, documents are reviewed for privilege determinations. However, due to the large volume of

---

[2] This tally is with respect to number of *documents*, not *pages*. The production called for by Plaintiffs involves a page count of a significant *multiple* of the 6,538,182 documents. Indeed, Plaintiffs cite to a September 30, 2009 filing of the Examiner stating the Examiner had collected over twenty-eight million pages of documents. Mot. at 7.

WEIL, GOTSHAL & MANGES LLP

Honorable Judge Lewis A. Kaplan
October 27, 2009
Page 3

documents involved in the review and the timetable required by the Examiner, at no point in time is the universe of documents produced to the Examiner free of privileged documents. As such, and as contemplated by the Order, Lehman engages in a claw-back of privileged documents that have been produced. As of October 20, 2009, approximately 360,000 previously-produced documents were being individually processed for potential claw-back. This ongoing review employs approximately forty (40) full-time contact attorneys, in addition to the time of at least fourteen (14) attorneys from Weil, Gotshal & Manges LLP.

Plaintiffs' assertion that a modification of the stay would "place a minimal burden, if any, on the Producing Parties" is thus wholly inaccurate and fundamentally misstates the undertaking involved in reviewing and producing the volume of materials sought by governmental authorities and the Examiner, from an entity as large and as complex as Lehman.

Production of these documents to Plaintiffs would thus necessitate a privilege review of millions of documents. Such a review would ultimately result in a privilege log of tens of thousands of entries. If the stay were lifted, this undertaking would necessarily result in the diversion of resources – including of attorneys with significant experience with the Lehman document production – and would therefore detract from Lehman's ability to co-operate with the Examiner and governmental authorities and timely respond to ongoing document requests from the Examiner and governmental authorities.

### Millions of Pages of Documents Sought by Plaintiffs Are Not Relevant to Their Claims and all Produced Documents Have Been Preserved

As discussed, Plaintiffs' request – a blanket claim for over 7 million documents produced to the Examiner and regulators to date – is anything but particularized. The Examiner has a broad mandate to investigate virtually every aspect of the workings of Lehman. Plaintiffs make no attempt to demonstrate that the vast universe of documents they seek access to meets the relevance requirements for discovery under the Federal Rules of Civil Procedure ("Rule 26(b)"). Rule 26(b) limits the scope of discovery in a federal civil case to non-privileged documents that are relevant to the claims or defenses of the parties. A wide swath of the documents Plaintiffs seek by this Motion are wholly irrelevant to its claims. For example, documents related to the Examiner's investigation into whether any Lehman affiliate has colorable claims against Lehman for (i) potentially insider preferences under the Bankruptcy Code or (ii) potentially voidable transfers or incurrences of debt, have absolutely no bearing on Plaintiffs' claims. The Lehman Estate should not be required to undertake the extraordinary expense and burden of producing millions of pages of irrelevant documents and, thus, would certainly object to any subpoena served upon it that would call for such a production. And this is only one of many relevance objections Lehman would assert with respect to Plaintiffs' request for documents. Plaintiffs must not be permitted to use the Motion as an end run around relevance objections that Lehman would otherwise be permitted to present to the Court. Indeed, Lehman expressly reserves all its rights to object to any third party subpoena(s) that Plaintiffs may serve in this action.

WEIL, GOTSHAL & MANGES LLP

Honorable Judge Lewis A. Kaplan
October 27, 2009
Page 4

    Additionally, Plaintiffs explicitly concede that "the risk of loss is reduced as to documents already produced to regulators," (Mot. at 21) but then also argue that the "reorganization" of Lehman "creates a reasonable concern that documents may be lost, despite best efforts to preserve them." Id. In addition to production to the Examiner, the documents that Plaintiffs seek are backed-up to prevent any chance that documents and data will be lost, thus, Plaintiffs will suffer no real prejudice from adhering to the statutorily-imposed stay. The risk of loss or destruction of documents is essentially nonexistent. "[B]ecause Plaintiff only seeks documents which have already been produced and are in the custody of [the Regulators], the risk that evidence will be lost is negligible...." *In Re Lantronix, Inc. Sec. Litig.*, 2003 WL 22462393, at *2 (C.D. Cal. Sept. 26, 2003). If Plaintiffs' case survives the motion to dismiss, relevant and non-privileged documents in Lehman's possession will be available and subject to appropriate, limited, discovery requests by the Plaintiffs.

    Plaintiffs face no prejudice in following the normal course outlined by the PSLRA and waiting for the motions to dismiss to be decided by the Court before subjecting the Lehman Estate to burdensome discovery. If the Court would find it helpful, the Lehman Estate will brief this issue for the Court in full or answer any of the Court's questions.

Respectfully Submitted,

Jonathan D. Polkes