**Hearing Date and Time: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                :
**In re**                                                       :    **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC., *et al.*,**                    :    **08-13555 (JMP)**
                                                                :
             Debtors.                                           :    **(Jointly Administered)**
                                                                :
                                                                :
-----------------------------------------------------------------x

**DEBTORS' OBJECTION TO THE MOTION BY MERRILL LYNCH
INTERNATIONAL AND CERTAIN OF ITS AFFILIATES FOR ENTRY OF AN
ORDER(A) CONFIRMING ABILITY TO DELIVER NOTICE OF ACCELERATION
WITH RESPECT TO CERTAIN NOTES ISSUED BY FOREIGN AFFILIATE
WITHOUT RELIEF FROM THE AUTOMATIC STAY OR (B) GRANTING LIMITED
RELIEF FROM THE AUTOMATIC STAY TO DELIVER SUCH NOTICE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectively submit this response in opposition to the motion of Merrill Lynch International and certain of its affiliates (collectively, "Merrill"), filed on November 25, 2009 (Docket No. 5958) (the "Motion"), for entry of an order (a) confirming their ability to deliver one or more notices of acceleration to LBHI with respect to certain notes issued by Lehman Brothers Treasury Co. B.V. ("LBT") so as to increase the

US_ACTIVE:\43245115\04\58399.0003

amount of their claim without relief from the automatic stay or (b) granting limited relief from the automatic stay to deliver such notices:

### Preliminary Statement

1.  The EMTN Program was a financing program arranged by Lehman Brothers International (Europe) ("LBIE") under which LBT, Lehman Brothers Bankhaus AG, and LBHI issued structured notes (the "Structured Notes") to individuals and financial institutions with a variety of characteristics. With the exception of approximately 70 Series of notes that were issued by LBHI under the EMTN Program, LBHI's sole involvement in the EMTN Program was through the issuance of a guarantee that purportedly runs in favor of the Accountholders.[1] The Structured Notes were issued in series, with each series consisting of one or more tranches of Structured Notes. More than 4,000 series of Structured Notes (the "Series") were outstanding as of the Commencement Date.

2.  Structured Notes are complex debt instruments that are typically combined with a derivative element, so that while they are structured as notes, their redemption value to the noteholders requires a valuation exercise. Prior to their placement into Administration, with certain partners from PricewaterhouseCooopers as their appointed Joint Administrators, LBIE, with the assistance of Lehman Brothers Limited ("LBL"), performed this valuation function as the "calculation agent" under the EMTN Program.

---

[1] Each series of Structured Notes are represented by a "Global Note" and traded through the electronic clearing and settlement services offered by Euroclear SA and Clearstream Banking S.A. (the "Clearing Agencies"). The Clearing Agencies execute trades on behalf of financial institutions that are approved and regulated participants with the Clearing Systems (the "Accountholders"). The Accountholders are generally the legal owners of the Structured Notes and may or may not be the beneficial owner of the Structured Notes. The Accountholders will frequently be holding accounts of the Structured Notes on behalf of their customers, who in some instances are smaller financial institutions who hold a beneficial interest in the Structured Notes on behalf of their customers (the "Intermediary Parties" and, collectively with Accountholders, "Holders"). Ultimately, either the Accountholders or, through various intermediary stages, the Intermediary Parties, hold the beneficial interests in the Structured Notes on behalf of the parties who ultimately benefit from the income and certain voting rights under the EMTN Program.

3. Some Structured Notes are relatively simple fixed or floating rate securities. Others are highly complex and uniquely tailored to the interests of specific investors. In the case of many of the Structured Notes, the principal amount as well as the amount and payment of interest is linked to some underlying security, foreign exchange rate, commodity price, index or basket of securities or indices (collectively, the "Underlying"). This derivative element makes valuation of the Structured Notes extremely complex, particularly for Structured Notes that have not reached maturity but are dependent on the value of a certain Underlying at the maturity date.

4. LBT, the largest issuer under the EMTN Program, was declared bankrupt (*in staat van faillissement*) by the Amsterdam District Court on October 8, 2008 with the appointment of the LBT Trustee.[2] Since his appointment, the LBT Trustee has been working to collect from LBIE all the documentation pursuant to which the Structured Notes were issued in order to formulate a methodology for valuing the Structured Notes issued by LBT (the "LBT Notes") – in particular, the Structured Notes that have not reached maturity – and to administer claims in the liquidation of LBT. On November 3, 2008, the LBT Trustee published his fourth report (attached as Exhibit C to the Motion), in which he published "provisional valuation principles" for the LBT Notes (the "Valuation Principles"). Until the publication of this report, it was not clear how the LBT Trustee would value those LBT Notes that had neither matured nor been accelerated.

5. By the Motion, Merrill seeks relief from the automatic stay so that it may send notices of acceleration to LBHI with respect to certain LBT Notes that it allegedly holds and has failed or refused to identify, as well as LBT Notes that it may acquire in the future.

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

(Motion ¶ 15.)  In the motion, Merrill states that it is seeking a modification of the stay because, by accelerating the LBT Notes, Merrill may obtain a larger claim than would otherwise be allowed by the LBT Trustee – by avoidance of the discount of their LBT Notes to present value under the LBT Trustee's proposed Present Value Adjustment, as provided in the Valuation Principles – and a resulting larger guarantee claim against LBHI.  (Motion ¶¶ 12, 19.)

6. That the automatic stay may prevent a creditor from increasing its claim and procuring an advantage at the expense of other unsecured creditors does not constitute "cause" to lift the stay.  Quite the opposite:  the automatic stay exists to *prevent* this type of action.  Not only has Merrill failed to bear the burden of establishing "cause" under section 362(d)(1) for relief from the automatic stay; Merrill has signaled that it seeks blanket relief from the automatic stay to elect a more favorable distribution in respect of any LBT Notes that it now holds *or may acquire*.  (Motion ¶ 5.)  Such a blatant request for authority to disturb the automatic stay's *status quo* and profit from the loss of other creditors has no basis under the Bankruptcy Code or any applicable case-law and should be denied in all respects.

### A Creditor May Not Accelerate Debt Post-Petition Without First Seeking Relief From The Automatic Stay

7. As a preliminary matter, Merrill's conclusory statement that "the stay does not apply to [its] delivery of a Notice to LBHI" (Motion ¶ 16) is a misstatement of the law.  Courts in the Southern District of New York have consistently held that a creditor may not accelerate debt post-petition without first seeking relief from the automatic stay. *See, e.g., In re PCH Assocs.*, 122 B.R. 181, 198 (Bankr. S.D.N.Y. 1990) ("A post-filing acceleration of the Note[] would clearly have violated the automatic stay of section 362 of the Code and, therefore, would have been null and void."); *In re Texaco Inc.*, 73 B.R. 960, 967 (Bankr. S.D.N.Y. 1987) ("Texaco I") (holding that acceleration of the debt under the contract's terms was proscribed by

the automatic stay); *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 298 (Bankr. S.D.N.Y. 1984) (explaining that "tak[ing] overt steps to accelerate the debt without first seeking a modification of the stay ... would have violated the stay."), *aff'd in part*, 60 B.R. 403 (S.D.N.Y. 1986).  This same principle is recognized elsewhere. *See First Bank Investors' Trust v. Tarkio College*, 129 F.3d 471, 476 (8th Cir. 1997) (automatic stay precludes creditor from sending notice of acceleration post-petition); *In re Metro Square*, No. 4-88-2117, 1988 WL 86679, at *4--5 (Bankr. D. Minn. Aug. 10, 1988) (denying indenture trustee's request to lift automatic stay in order to provide notice of acceleration); *Riggs Nat'l Bank v. Perry*, 729 F.2d 982, 985 (4th Cir. 1984) (exercise of acceleration clause violates automatic stay); *In re Davidson Lumber Co.*, 24 B.R. 49, 51 (Bankr. S.D. Fla. 1982) (same); *cf. In re Texaco Inc.*, 81 B.R. 804, 806 (Bankr. S.D.N.Y. 1988) (finding that the facts at issue were significantly different than in *Texaco I*, because the debtors had filed a plan of reorganization which provided for 100% payment to unsecured creditors, such that delivery of the acceleration notice "will not give the Noteholders a leg up over other unsecured creditors").

### Merrill Has Not Carried Its Burden of Showing Cause For Relief From The Automatic Stay

8. Merrill requests that the Court lift the automatic stay extant under section 362 of the Bankruptcy Code to allow it to accelerate any LBT Notes that it has acquired or may acquire (Motion ¶ 5), and thus to take advantage of the Early Redemption Amount calculation (Motion ¶ 12) – if and when it pleases – to increase the amount of claims that it may hold or acquire in the secondary market.

9. Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances.  11 U.S.C. § 362(d); *In re*

*Éclair Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).  Specifically, the pertinent portion of section 362(d) provides:

> (d) On a grant of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

10.  The party seeking to lift or modify the automatic stay bears the initial burden to show cause why the stay should be lifted.  *Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause … the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection").

11.  Merrill has not carried its burden of establishing "cause" under section 362(d)(1) for relief from the automatic stay.  Although the term "cause" is not defined in the Bankruptcy Code, the Court in the seminal Second Circuit case, *In re Sonnax Industries, Inc.* set forth twelve factors that may constitute "cause" for the purposes of determining whether the automatic stay should be lifted:

> (1) whether relief would result in a partial or complete resolution of the issues;
>
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;
>
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
>
> (6) whether the action primarily involves third parties;
>
> (7) whether litigation in another forum would prejudice the interests of other creditors;
>
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;

> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
>
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
>
> (11) whether the parties are ready for trial in the other proceeding; and
>
> (12) impact of the stay on the parties and the balance of harms.

Sonnax, 907 F.2d at 1286. Not all of these factors are relevant to every instance in which relief from the stay is sought.

12. Merrill correctly identifies the twelfth factor – the balance of the harms – as the only relevant factor that could weigh in its favor. (Motion ¶ 17.) Merrill's stated harm, however, defies sympathy and equity. Merrill's stated harm is not that absent stay relief, it would be forced to forfeit any claim based on unaccelerated LBT Notes. Indeed, Merrill acknowledges that although under Dutch law, Now that the LBT Trustee has proposed a methodology for valuing claims based on LBT Notes, including unaccelerated LBT Notes, Merrill holds claims on unaccelerated LBT Notes that may be asserted and are capable of calculation. (Motion ¶¶ 10.) Merrill's stated harm, rather, is that due to the law governing its direct claim against LBT, absent acceleration, Merrill is prevented from asserting a *larger* claim than it currently holds against LBT and accordingly, LBHI. (Motion ¶¶ 12, 19.)

13. Merrill posits two reasons for this. First, the LBT Notes "will be discounted to their present value as of October 8, 2009," unless Merrill validly accelerates the LBT Notes by delivering a notice to both LBT and LBHI. (Motion ¶ 10.) While Merrill may already hold a claim that, under Dutch insolvency law, is set to be discounted to present value from its maturity date, Merrill would like to enhance its position by accelerating the LBT Notes that it holds and shortening the applicable discount period under the Present Value Adjustment,

thus effectuating a potentially substantial increase in the size of its claims against both LBT and LBHI.

14. Second, pursuant to the EMTN Program's governing documentation, if Merrill validly accelerates the LBT Notes, Merrill's claim will be calculated "based on the [LBT] Notes' Early Redemption Amounts rather than the Final Redemption Amounts. (Motion ¶ 12.) Merrill's reason for preferring the Early Redemption Amount for certain LBT Notes, and not others, is simple: "Although determined on a Note-by-Note basis, the Early Redemption Amounts may be equal to, or larger than, the applicable Final Redemption Amounts (if accelerated)." (Motion ¶ 12.)

15. Merrill is candid about its motivation for seeking relief from stay: Merrill wishes to be authorized, but not required, to elect for the Early Redemption Amount by accelerating LBT Notes that it holds or may acquire in the future (Motion ¶ 5), if and when it pleases, so as to maximize its claims against LBT and LBHI in the event that it has managed to acquire 25% or more – in principal amount – of a particular series in the EMTN Program. (Motion ¶ 13.) Merrill makes the bald assertion, in other words, that its inability to race past LBHI's other creditors and elevate itself above them by aggregating LBT Notes and then triggering an acceleration that will increase the size of its claims against LBT and LBHI is a "harm," that actually outweighs the harm that LBHI would suffer if relief from the stay were granted.

16. The Debtors cannot conceive of how Merrill's stated inability to disrupt the status quo and reap enormous profits in the manner stated above could be perceived as a harm from anyone's perspective other than Merrill's. Merrill has failed to carry its burden of establishing "cause" for relief from stay. Moreover, if Merrill has established anything, it is that

acceleration of its LBT Notes would increase its claim and thus prejudice LBHI's other creditors. Consequently, far from establishing cause for relief from stay, the facts that Merrill establishes in its Motion militate *against* relief from the automatic stay under applicable case-law, as demonstrated below.

**Merrill Does Not Have Standing To Seek
Stay Relief With Respect To Claims It Does Not Hold**

17.     Although the Debtors do not question whether Merrill has standing to enforce LBT Notes for which it proves itself to be an Accountholder, Merrill provides no evidence in the Motion that it is, in fact, an Accountholder or Holder of any specific LBT Notes. Merrill does not even identify the LBT Notes that it purports to hold, and in respect of which it seeks a modification of the stay.  Moreover, Merrill seeks to enforce legal rights under LBT Notes that it *may acquire*, but does not even hold at this time.  (Motion ¶ 5.)

18.     There can be no question but that Merrill is not the real party in interest with standing to move for relief from stay to accelerate LBT Notes that it does not even hold. *See In re Comcoach Corp.*, 698 F.2d 571, 574-75 (2d Cir. 1983) (denying relief from the automatic stay where movant held no right to payment from the debtor).  Merrill has no direct pecuniary or financial interest in LBT Notes and claims that it may, or may not, acquire.  It is not, therefore, a party in interest with standing to seek relief from the automatic stay in connection therewith.  *See Horne v. Flores*, 129 S.Ct. 2579, 2592 (2009) ("Here, as in all standing inquiries, the critical question is whether at least one petitioner has alleged such a personal stake in the outcome of the controversy as to warrant  his invocation of federal-court jurisdiction") (citations omitted); *U.S. v. Little Joe Trawlers, Inc.*, 780 F.2d 158, 161 (1st Cir. 1986) ("…to have standing a party must have an immediate and pecuniary interest, not a contingent interest.").  Accordingly, to the extent that Merrill seeks relief from the automatic stay

to accelerate LBT Notes that it does not hold, such relief should be denied for lack of standing. Furthermore, unless Merrill identifies to the Debtors and to this Court the specific LBT Notes that it seeks to accelerate, and provides evidence of its ownership of these specific LBT Notes *as of the date that the Motion was filed*, the relief sought by the Motion should be denied for lack of standing.  *See In re Foreclosure Cases*, 521 F. Supp. 2d 650, 654 (N.D. Ohio 2007) ("[t]o show standing…in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage [and was harmed] at the time the complaint was filed.").

### The Motion Should Be Denied

19.     There is no justifiable reason for this Court, the Debtors, or the Debtors' other creditors to allow Merrill to obtain a larger claim, particularly when it is Merrill's singular stated reason for seeking relief from the automatic stay to artificially increase its claim and elevate itself above LBHI's other creditors.  For all the foregoing reasons, the Debtors respectfully submit that the Motion should be denied is all respects.  The Debtors reserve their right to challenge any claims asserted in connection with the EMTN Program, including in connection with any guarantee issued by LBHI, subject to the terms of the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and

Approving the Proof of Claim Form (the "<u>Bar Date Order</u>") entered by this court on July 2, 2009 [Docket No. 4271].

   WHEREFORE the Debtors respectfully request that the Court deny the Motion in its entirety and grant the Debtors such other and further relief as may be just.

Dated: December 11, 2009
   New York, New York

                 <u>/s/ Richard P. Krasnow</u>
                 Richard P. Krasnow
                 WEIL, GOTSHAL & MANGES LLP
                 767 Fifth Avenue
                 New York, New York 10153
                 Telephone: (212) 310-8000
                 Facsimile: (212) 310-8007

                 Attorneys for Debtors
                 and Debtors in Possession