**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

LEHMAN BROTHERS HOLDINGS INC.,

Case No. 08-13555 (JMP)

Debtor.

### NOTICE OF TRANSFER OF CLAIM
### PURSUANT TO FED. R. BANKR. P. 3001(e)(2)

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives notice pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2) of the transfer, other than for security, of the claim referenced in this notice ('the "Claim").

An Evidence of Transfer of Claim is attached hereto as Exhibit A. The Proof of Claim filed with this Court is attached hereto as Exhibit B.

**Name of Transferor**
SR GGI Master MA, Ltd.

**Name of Transferee**
Swiss Re Financial Products Corporation

Court Claim Number:   21307
Amount of Claim:   see Exhibit B (no less than $52,004.63)
Date Claim Filed:   September 21, 2009

**Address of Transferor:**
SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P.,
557 Madison Avenue, Third Floor
New York, NY 10065
Tel:    +1 (212) 668-1500
Email:  mm@gruss.com
Attn:   Michael Monitcciolo

**Address of Transferee:**
Swiss Re Financial Products Corporation
c/o Swiss Re Services Limited
30 St. Mary Axe
London EC3A 8EP
United Kingdom
Tel:    +44 (0) 20 7933 4265
Fax:    +44 (0) 20 7933 6265
Attn:   Nicholas Raymond

The Transferor has waived its right, pursuant to Rule 3001(e)(2) of the Bankruptcy Rules, to receive from the Clerk of the Court notice of filing of the evidence of transfer of the Proof of Claim and its right to object to such transfer within the twenty (20) day period set forth therein. The Transferor stipulates that an order may be entered recognizing the transfer of the Claim as an unconditional transfer and the Transferee as the valid owner of the Claim.

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

SWISS RE FINANCIAL PRODUCTS
CORPORATION, as Transferee

By: _____

Name: Jron Seymour
Title: Director

**EXHIBIT A**

**EVIDENCE OF TRANSFER OF CLAIM**

**TO:   THE DEBTOR AND THE BANKRUPTCY COURT**

**Assignor:**   SR GGI Master MA, Ltd.

**Assignee:**   SWISS RE FINANCIAL PRODUCTS CORPORATION

For value received, the adequacy and sufficiency of which are hereby acknowledged, Assignor hereby unconditionally and irrevocably sells, transfers and assigns to Assignee all of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, its claim (as such term is defined in Section 101(5) of the U.S. Bankruptcy Code) in the amount of no less than $52,004.63, based on a claim arising out of SR GGI Master MA, Ltd's contract to purchase and receive a certain amount of the revolving commitment extended under a certain credit agreement from Lehman Commercial Paper Inc. at 85% on August 4, 2008, against Lehman Commercial Paper Inc. (the "Debtor") in the bankruptcy case <u>In re Lehman Brothers, Inc.</u>, Case No. 08-13555 (JMP), pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any and all proof of claims filed by Assignor, including the attached, with the Bankruptcy Court in respect of the foregoing claim.

Assignor hereby waives any objection to the transfer of the claim to Assignee on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing claim and recognizing the Assignee as the sole owner and holder of the claim. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the claim, and all payments or distributions of money or property in respect of claim, shall be delivered or made to the Assignee.

IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM IS EXECUTED THIS _____ day of December, 2009.

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| SR GGI Master MA, LTD | SWISS RE FINANCIAL PRODUCTS CORPORATION |
| By: _____ Name:  Don Seymour Title:  Director | By: _____ Name: Title: |

**EXHIBIT A**

**EVIDENCE OF TRANSFER OF CLAIM**

**TO:    THE DEBTOR AND THE BANKRUPTCY COURT**

**Assignor:**    SR GGI Master MA, Ltd.

**Assignee:**    SWISS RE FINANCIAL PRODUCTS CORPORATION

      For value received, the adequacy and sufficiency of which are hereby acknowledged, Assignor hereby unconditionally and irrevocably sells, transfers and assigns to Assignee all of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, its claim (as such term is defined in Section 101(5) of the U.S. Bankruptcy Code) in the amount of no less than $52,004.63, based on a claim arising out of SR GGI Master MA, Ltd's contract to purchase and receive a certain amount of the revolving commitment extended under a certain credit agreement from Lehman Commercial Paper Inc. at 85% on August 4, 2008, against Lehman Commercial Paper Inc. (the "Debtor") in the bankruptcy case In re Lehman Brothers, Inc., Case No. 08-13555 (JMP), pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any and all proof of claims filed by Assignor, including the attached, with the Bankruptcy Court in respect of the foregoing claim.

      Assignor hereby waives any objection to the transfer of the claim to Assignee on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing claim and recognizing the Assignee as the sole owner and holder of the claim. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the claim, and all payments or distributions of money or property in respect of claim, shall be delivered or made to the Assignee.

      IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM IS EXECUTED THIS _____ day of December, 2009.

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| SR GGI Master MA, LTD | SWISS RE FINANCIAL PRODUCTS CORPORATION |
| By: _____<br>    Name:<br>    Title: | By: _____<br>    Name:<br>    Title:   ANDREAS GOCKSCH<br>            Director<br>   Swiss Re Financial Products Corporation |

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
| Lehman Brothers Holdings Inc., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Commercial Paper Inc. | 08-13900 |

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000021307

0000021307

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

### THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor) SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P., Attn: Michael Monticciolo
667 Madison Avenue, Third Floor, New York, NY 10065
mm@gruss.com

Deborah S. Tuchman & Andrew M. Thau
Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Sq., New York, NY, 10036
212-735-3000; deborah.tuchman@skadden.com & andrew.thau@skadden.com

Telephone number: See above    Email Address: See above

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number: _____
    (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P., Attn: Michael Montici
667 Madison Avenue, Third Floor, New York, NY 10065
Telephone number: (212) 668-1500    Email Address: mm@gruss.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ no less than $52,004.63
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See addendum
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** N/A
    3a. Debtor may have scheduled account as: _____
        (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☑ Other
Describe:
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**
$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:
See addendum

Date:    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Don Seymour
Director

### FOR COURT USE ONLY

**FILED / RECEIVED**

SEP 21 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

No. 0397    P. 4

Sep. 16. 2009 11:21AM

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | Merit LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy Filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that Qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):**
State the value of any goods received by the debtor within 20 days before the date of commencement on which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## ___ DEFINITIONS ___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for that relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

---

## ___ INFORMATION ___

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

No. 0397  P. 5              Sep. 16. 2009 11:22AM

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x
                                                    :
In re                                               :    Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :    Case No. 08-13555 (JMP)
                                                    :
                    Debtors.                        :    (Jointly Administered)
                                                    :
-------------------------------------------------------------------- x

## ADDENDUM TO PROOF OF CLAIM OF
## SR GGI MASTER MA, LTD.

SR GGI Master MA, Ltd. (the "Claimant") hereby asserts claims (the "Claims")

against Lehman Commercial Paper Inc. ("LCPI"), a debtor and debtor-in-possession in the

above-captioned bankruptcy cases, as set forth in the attached official proof of claim form, this

addendum and the exhibits hereto (collectively, the "Proof of Claim").

**Background**

1.      On September 15, 2008 (the "LBHI Petition Date"), Lehman Brothers Holdings

Inc. and certain of its affiliates filed voluntary petitions under chapter 11 of title 11 of the United

States Code, as amended (the "Bankruptcy Code").

2.      On October 5, 2008 (together with the LBHI Petition Date, the "Petition Date"),

LCPI and certain other affiliates of LBHI filed voluntary petitions under chapter 11 of the

Bankruptcy Code.

3.      The bankruptcy cases of LBHI, LCPI and their affiliated debtors and debtors-in-

possession (collectively, the "Debtors") are jointly administered for procedural purposes under *In

re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.).

1

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

**Claims Not Based on Derivative Contract(s) and/or Guarantee(s)**

4.     The Claimant's Claims are not based on one or more "Derivative Contracts"

and/or "Guarantees," as such terms are defined in the *Order Pursuant to Section 502(b)(9) of the*

*Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of*

*Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim*

*Form* (the "Bar Date Order"). As such, the Bar Date Order does not require the Claimant to

complete a derivative questionnaire and/or guarantee questionnaire for the Claims.

**The Transactions**

5.     The Claimant's claims arise out of the Claimant's contract with LCPI to purchase

and receive certain amount of the revolving commitment extended under a certain Credit

Agreement[1] (the "Bank Debt"), from LCPI at 85% on August 4, 2008. This transaction is

evidenced by (a) the LSTA[2] Distressed Trade Confirmation dated as of August 4, 2008, by and

between LCPI and the Claimant (the "LCPI Confirmation"). A copy of the LCPI Confirmation

is attached hereto as **Exhibit A**. Pursuant to the LCPI Confirmation, LCPI agreed to sell, and the

Claimant agreed to purchase, via an assignment, $170,506.98, in principal amount, of the Bank

Debt (which was subsequently reduced due to permanent commitment reductions) under the

Credit Agreement. The LCPI Confirmation provided, *inter alia*, that the Claimant would pay a

purchase rate of 85%, but since the facility was not fully funded at the time of trade and had

---

[1]     The "Credit Agreement" refers to the Senior Unsecured Revolving Credit Agreement dated as of June 13, 2006 among WCI Communities, Inc., as Borrower, Bank of America, N.A., as Administrative Agent, Swing Line Lender, and an L/C Issuer, and the other Lenders party thereto, Wachovia Bank, N.A., as Syndication Agent, Fifth Third Bank, Keybank, N.A. and The Royal Bank of Scotland PLC as Co-Documentation Agents, and Banc of America Securities LLC, Wachovia Capital Markets, LLC, and RBS Securities Corporation, as Joint Lead Arrangers and Joint Book Managers (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement")

[2]     "LSTA" refers to the Loan Syndications and Trading Association, a trading association that has developed certain industry-standard transaction documents.

2

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

several commitment reductions during the relevant time period for the Bank Debt, the Claimant's expected cost for the August 4, 2008 purchase was $116,207.29.[3]

6.    In accordance with the LCPI Confirmation, the parties worked in good faith toward closing the Bank Debt transfer set forth in the LCPI Confirmation. The LBHI Petition Date, however, interrupted efforts to settle the transfer of the Bank Debt. After the LBHI Petition Date, the Claimant was in active discussions with the Debtors pursuing, *inter alia*, settling the transfer of the Bank Debt. Even after LCPI filed bankruptcy, the Claimant's discussions with the Debtors regarding the transfer of the Bank Debt and other matters continued. While such discussions continued, the Claimant could not buy the Bank Debt from an alternate seller or it would bear the market risk for further changes in the value of the Bank Debt in the event that LCPI sought to settle. Notably, the Debtors' bankruptcy cases caused the leveraged credit markets to seize up and the value of the Bank Debt declined significantly during this period while the Claimant pursued negotiations with LCPI.

7.    On November 14, 2008, LCPI filed a *Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations* (the "Motion"). In the Motion, LCPI sought to, *inter alia*, to assume the LCPI Confirmation. On December 16, 2008, the Court issued an order (the "Order") approving the Motion and the assumption of the LCPI Confirmation. As of the date on which the Order was entered, the Bank Debt's market value was 54.5% of the principal amount.[4] This valuation is based upon dealer quotes.

---

[3]    The Revolver Facility was 83.15% funded on Trade Date, and 10.72% of the facility was also retired at par due to the WCI Communities Inc. Chapter 11 filing on August 4th, 2008.
[4]    The significant changes in the Bank Debt's value likely reflected general market volatility and may be exacerbated by events in the chapter 11 bankruptcy cases of WCI Communities Inc. and 130 of its subsidiaries
*(cont'd)*

3

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

8.      Upon the assumption of the LCPI Confirmation, the Claimant, LCPI and some additional parties settled the transactions contemplated by the LCPI Confirmation. The consummation of transfer of the Bank Debt is evidenced by, *inter alia*: (a) the Assignment and Assumption Agreement, dated April 8, 2009, a copy of which is attached hereto as **Exhibit B**; (b) the Purchase and Sale Agreement, dated as of April 8, 2009, by and between the Claimant and LCPI, a copy of which is attached hereto as **Exhibit C** and (c) the Purchase Price Letter, dated as of April 8, 2009, by and between the Claimant and LCPI, a copy of which is attached hereto as **Exhibit D**.

## The Claims

9.      The Claimant has Claims against LCPI for the sum of $52,004.63 for damages, plus costs, resulting from LCPI's delayed performance under the LCPI Confirmation. The loss calculation is based on the decline in value of the Bank Debt as assumed from the date of the trade (when the Bank Debt's market value was 85% of the principal amount) to a value of 54.5% of the principal amount on December 15, 2008, when the LCPI Confirmation was assumed. Therefore, the Claimant was forced to pay $116,207.29 to purchase Bank Debt worth only $64,202.66 at the time of assumption – with no ability to hedge this exposure. The amount of this difference, representing the Claimant's damages, is $52,004.63.

10.     Except as otherwise set forth in this Proof of Claim, the Claims are filed as general unsecured claims without prejudice to any and all rights of the Claimant to assert that the Claims, or any portion thereof, are secured or entitled to administrative expense priority under Bankruptcy Code Sections 503 and/or 507.

---

*(cont'd from previous page)*
commenced chapter 11 bankruptcy cases in the District of Delaware. *See In re WCI Communities Inc., et al.,* Case No. 08-11643 (KJC) (Bankr. D. Del. filed Aug. 4, 2008).

4

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

11.    Upon information and belief, no judgment has been rendered on the Claims.

12.    The amount of all payments on the Claims has been credited and deducted for the purpose of making this Proof of Claim.

13.    Upon information and belief, no portion of the Claims is subject to any setoffs, defenses or counterclaims by the Debtors, except as otherwise described herein.  To the extent that the Debtors take any action that would give rise to a right of setoff or recoupment, a counterclaim or other rights or claims in favor of the Claimant against the Debtors, the Claimant reserves all of its respective rights.

**Reservations of Rights**

14.    The Claimant reserves the right to: (a) amend, update, or supplement this Proof of Claim (including, without limitation, to add additional amounts due and owing) at any time and in any respect; (b) file additional proofs of claim; and (c) file a request for payment of administrative or priority expenses in accordance with Bankruptcy Code sections 503 and 507.

15.    By filing this Proof of Claim, the Claimant: (a) does not submit to the jurisdiction of this Court for any purpose other than with respect to this Proof of Claim; (b) does not waive (and expressly reserves) all of its procedural and substantive defenses, counterclaims and objections (including without limitation, the right of setoff, recoupment or any similar right, remedy or defense) to any objection to the Claims or any claim that may be asserted against the Claimant by the Debtors, their estates, any successor to the Debtors, or any other person, including, without limitation, any defense based upon the lack of jurisdiction of this Court to entertain any such claim; (c) does not waive (and expressly reserves) any right to any security held by or on behalf of the Claimant or any right of the Claimant to claim specific assets or any

5

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

other claim, right, or right of action that the Claimant has or might have against the Debtors, their

estates, any successor to the Debtors, or any other person, whether such claim, right, or right of

action arises prior to, upon, or after the Petition Date; and (d) does not waive (and expressly

reserves) any and all other rights that the Claimant may have pursuant to applicable law or

agreement.

16.     Nothing contained in this Proof of Claim shall be deemed an admission by the

Claimant.  The Claimant expressly reserves the right to withdraw this Proof of Claim as if it had

never been filed.

## Supporting Documentation

17.     As a party to the transaction, the Debtors should already have a copy of the

documentation evidencing the consummation of the transfer of the Bank Debt on April 8, 2009.

These closing documents and any additional documents (including valuation information)

supporting this Proof of Claim are voluminous and/or confidential and, furthermore, are

summarized herein.  Should one or more of the Debtors, the official committee of unsecured

creditors of the Debtors, another appropriate party-in-interest or the counsel to one or more such

parties so request, additional documentation supporting the Proof of Claim will be made

available for review and copying.

6

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

**Notices**

18.     All notices, objections or other communications relating to this Proof of Claim

should be addressed and sent to:

> Michael Monticciolo
> General Counsel and Chief Compliance Officer
> Gruss Asset Management, L.P.
> 667 Madison Avenue, Third Floor.
> New York, NY 10065
> Tel:  (212) 688-1500
> Fax:  (212) 688-2138
>
> -and-
>
> Deborah S. Tuchman
> Andrew M. Thau
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, NY 10036
> Tel:  (212) 735-3000
> Fax:  (212) 735-2000
> E-mail:  deborah.tuchman@skadden.com
>          andrew.thau@skadden.com

7

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

EXHIBIT A

**LCPI CONFIRMATION**

**LSTA**                                      DECEMBER 2006

# LEHMAN COMMERCIAL PAPER INC

### LSTA DISTRESSED TRADE CONFIRMATION

#### REVISED 12.30.08

To:     SR GGI Master MA, Ltd.        *[handwritten: Michael Monticciolo]*
        Contact:  ~~Urban Englert~~
        Tel No.:  ~~212-446-4279~~     *[handwritten: C88-1500]*
        Fax No.:  ~~212-350-9724~~     *[handwritten: 9788]*
        Email:    ~~ue@gruss.com~~

        *[handwritten: mm  jm]*

From:   Lehman Commercial Paper Inc.
        Contact:  Tina Wong              Confirms:   Jenna Yoo
        Tel No.:  212-526-2044           Tel No.:    212-526-2061
        Fax No.:  646-758-4993           Fax No.:    646-834-1847
        Email:    tina.wong@lehman.com   Email:      jenna.yoo@lehman.com

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Distressed Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc. (the "LSTA") as of December 1, 2006,[1] which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. Capitalized terms used herein and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| Trade Date: | August 4, 2008 ✓ |
| Seller: | Lehman Commercial Paper Inc.[3] ☒ Principal[3]  ☐ Agent |
| Buyer: | SR GGI Master MA, Ltd.[4] ☒ Principal[4]  ☐ Agent |
| Credit Agreement: | SENIOR UNSECURED REVOLVING CREDIT AGREEMENT ("Agreement") ~~is entered into~~ *[handwritten: dated]* as of June 13, 2006, among WCI COMMUNITIES, INC., a Delaware corporation ("Borrower"), each lender from time to time party ~~hereto~~ *[handwritten: thereto]* (collectively, the "Lenders" and individually, a "Lender") and BANK OF AMERICA, N.A., as Administrative Agent.[5]  *[handwritten: mm  jm]* |
| Borrower: | WCI Communities, Inc.[5] |
| Form of Purchase: | If no election is made, "Assignment" applies. |

---

[1] The Standard Terms and Conditions are available on the LSTA website at http://www.lsta.org.

[2] Designate specific funds, if any, and allocations within T+1 (this may be done on separate trade confirmations); identify ERISA counterparties.

[3] If Seller or Buyer is acting as a Riskless Principal, specify this in the "Trade Specific Other Terms of Trade" section below. (See Sections 11 and 19 of the Standard Terms and Conditions.) It is not necessary to identify the third party with respect to a Riskless Principal.

[4] Designate specific funds, if any, and allocations within T+1 (this may be done on separate trade confirmations); identify ERISA counterparties.

[5] If multiple borrowers, specify the entity that is named as the first borrower under the Credit Agreement.

LSTA EFFECTIVE DECEMBER 2006  Copyright © LSTA 2008. All rights reserved.

2

☒ Assignment
☐ Participation
☐ Other: _____

Commitment/ Committed Loan

| | Purchase Amount[6] | Type of Debt[7] | Facility[8] | CUSIP Number |
|---|---|---|---|---|
| **Purchase Amount/ Type of Debt:** | $170,506.98 ✓ | ~~Revolver~~ Revolving | R/O | N/A |

**Purchase Rate:** 85.000%

**Accrued Interest:** ☒ Settled Without Accrued Interest

☐ Trades Flat

**Credit Documentation to be provided by Seller:** ☒ Yes (only applicable if Buyer was not a lender on Trade Date and made its request on or prior to Trade Date) [Public-Side Lender]

☒ No

**LSTA Standard Other Terms of Trade:** ☐ This Transaction shall be subject to the successful completion of the purchase by Seller of the Purchase Amount of the Debt to be sold to Buyer hereunder

☐ This Transaction shall be subject to the successful completion of the sale by Buyer of the Purchase Amount of the Debt to be purchased from Seller hereunder

☐ Flip representations shall apply (election is applicable only if Seller is a Riskless Principal (i.e., the first box above has been checked), the settlement of the sale of the Purchase Amount of the Debt to Buyer from Seller occurs no later than one (1) business day after the settlement of the purchase of the Purchase Amount of the Debt by Seller from Seller's immediate prior seller(s) and the other criteria specified in Section 11 of the Standard Terms and Conditions are met)

**Trade Specific Other Terms of Trade:** ☒ Specify Other Terms

Unless otherwise specified herein, Lehman Commercial Paper Inc. shall not be required to pay (in the aggregate) more than one half of one Agent transfer fee for transactions specified in this or any other confirmation allocated by an investment manager or advisor to multiple funds or accounts [9]

---

[6] Specify amount of Debt to be transferred or, in the case of Debt subject to further funding obligations (as in revolving credit or letter of credit facilities), specify amount of total exposure to be transferred, both funded and unfunded.

[7] Specify whether the type of Debt is term, revolving, letter of credit (if stand-alone), claim, amount or other.

[8] Specify Credit Agreement designation of the facility (e.g., tranche). Specify multicurrency component, if any.

[9] Set forth any other terms of this Transaction; include in this Section a specific reference to each term, if any, in this Confirmation (including the Standard Terms and Conditions) that has been modified in any manner whatsoever from the form of LSTA Distressed Trade Confirmation and/or the LSTA Standard Terms and Conditions for Distressed Trade Confirmations; if more space is needed, attach additional pages.

3

Subject to:                    Negotiation, execution and delivery of reasonably acceptable contracts
                               and instruments of transfer in accordance herewith.

Please provide the signature of a duly authorized signatory where indicated below and return this letter to
the attention of *Jenna Yoo* at the following fax number(s) or e-mail address(es):
Jenna.yoo@lehman.com.

If you have any questions, please contact *Jenna Yoo* at 212-526-2061.

LEHMAN COMMERCIAL PAPER INC.                SR GGI Master MA, Ltd.
                                            By: Gruss Asset Management, L.P., Its Sub-
                                            Advisor
                                            By: Gruss Co., LLC., Its General Partner

By: _____

Name: TINA CHEN                             Name: Michael Monticciolo
     AUTHORIZED SIGNATORY

Title: _____             Title:  Manager

Date: _____

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

**EXHIBIT B**

**LCPI ASSIGNMENT AGREEMENT**

### ASSIGNMENT AND ASSUMPTION

This Assignment and Assumption (this "Assignment and Assumption") is dated as of the Effective Date set forth below and is entered into by and between the Assignor identified in item 1 below (the "Assignor") and the Assignee identified in item 2 below (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Assumption as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the respective facilities identified below (including, without limitation, the Letters of Credit and the Swing Line Loans included in such facilities) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned by the Assignor to the Assignee pursuant to clauses (i) and (ii) above being referred to herein collectively as the "Assigned Interest"). Each such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and Assumption, without representation or warranty by the Assignor.

1. Assignor:  Lehman Commercial Paper Inc.

2. Assignee:  SR GGI Master MA, Ltd.

3. Borrower(s):  WCI Communities, Inc.

4. Administrative Agent: Bank of America, N.A., as the administrative agent under the Credit Agreement

5. Credit Agreement:  Senior Unsecured Revolving Credit Agreement, dated as of June 13, 2006, among WCI Communities, Inc., as the Borrower, the Lenders from time to time party thereto, and Bank of America, N.A., as Administrative Agent, an L/C Issuer, and Swing Line Lender.

NYC:187958.1

6.    Assigned Interest:

| FACILITY ASSIGNED | AGGREGATE AMOUNT OF COMMITMENT FOR ALL LENDERS* | AMOUNT OF COMMITMENT ASSIGNED* | PERCENTAGE ASSIGNED OF COMMITMENT | CUSIP NUMBER |
|---|---|---|---|---|
| Commitment | $532,222,097.35 | $151,245.99 | 0.0284178336% | N/A |

7.    Trade Date:    August 4, 2008

Effective Date:   April 8 , 2009

NYC:187958.1

The terms set forth in this Assignment and Assumption are hereby agreed to:

ASSIGNOR

LEHMAN COMMERCIAL PAPER INC.

By: _____

    Name:
    Title:      TINA CHEN
             AUTHORIZED SIGNATORY

ASSIGNEE

SR GGI MASTER MA, LTD.

By:  Gruss Asset Management, L.P.
     its Investment Manager
By:  Gruss Co., LLC
     its General Partner

By: _____
    Name:
    Title:

The terms set forth in this Assignment and Assumption are hereby agreed to:

ASSIGNOR

LEHMAN COMMERCIAL PAPER INC.

By: _____
    Name:
    Title:

ASSIGNEE

SR GGI MASTER MA, LTD.

By: Gruss Asset Management, L.P.
    Its Investment Manager
By: Gruss Co., LLC
    Its General Partner

By: _____
Name: Michael Monticciolo
Title:   Manager

NYC:187958.1

Consented to and Accepted:

BANK OF AMERICA, N.A., as
  Administrative Agent

By: _____
  Title: Officer

BANK OF AMERICA, N.A., as
  L/C Issuer

By: _____
  Title: Senior Vice President

WACHOVIA BANK, N.A., as
  L/C Issuer

By: _____N/A_____
  Title:

Consented to:
WCI COMMUNITIES, INC.
As Borrower.

By: _____N/A_____
  Title:

NYC:187958.1

**ANNEX 1 TO ASSIGNMENT AND ASSUMPTION**

STANDARD TERMS AND CONDITIONS FOR
ASSIGNMENT AND ASSUMPTION

1.    Representations and Warranties.

1.1.    Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the Credit Agreement or any other Loan Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Loan Documents or any collateral thereunder, (iii) the financial condition of the Borrower, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Loan Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Loan Document.

1.2.    Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all the requirements to be an assignee under Section 11.06(b)(iii), (v) and (vi) of the Credit Agreement (subject to such consents, if any, as may be required under Section 11.06(b)(iii) of the Credit Agreement), (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it is sophisticated with respect to decisions to acquire assets of the type represented by the Assigned Interest and either it, or the Person exercising discretion in making its decision to acquire the Assigned Interest, is experienced in acquiring assets of such type, (v) it has received a copy of the Credit Agreement, and has received or has been accorded the opportunity to receive copies of the most recent financial statements delivered pursuant to Section 6.01 thereof, as applicable, and such other documents and information as it deems appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest, (vi) it has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest, and (vii) if it is a Foreign Lender, attached hereto is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance upon the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Loan Documents are required to be performed by it as a Lender.

NYC:187958.1

2.    <u>Payments</u>.  From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

3.    <u>General Provisions</u>.  This Assignment and Assumption shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment and Assumption may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment and Assumption by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment and Assumption.  This Assignment and Assumption shall be governed by, and construed in accordance with, the law of the State of New York.

NYC:187958.1

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

EXHIBIT C

**LCPI P&S AGREEMENT**



### PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | August 4, 2008 |
| Agreement Date: | April 8, 2009 |
| Seller: | Lehman Commercial Paper Inc. |
| Buyer: | SR GGI Master MA, Ltd. |
| Credit Agreement: | Senior Unsecured Revolving Credit Agreement dated as of June 13, 2006, among WCI Communities, Inc., as borrower, the lenders party thereto, and Bank of America, N.A., as Administrative Agent, Swing Line Lender and an L/C Issuer |
| Borrower: | WCI Communities, Inc. |
| Purchase Amount(s): | $151,245.99 |
| Tranche(s): | Commitment |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest ☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment ☒ Secondary Assignment |
| Immediate Prior Seller (if any): | Fifth Third Bank, a Michigan banking corporation |
| Borrower in Bankruptcy: | Yes ☒    No ☐ |
| Delivery of Credit Documents: | Yes ☒    No ☐ |
| Netting Arrangements: | Yes ☐    No ☒ |
| Flip Representations: | Yes ☐    No ☒ |
| Step-Up Provisions: | Yes ☐    No ☒ |
| | Shift Date:    N/A |
| Transfer Notice: | Yes ☐    No ☒ |

NYC:180236.7

LSTA EFFECTIVE DECEMBER 2006        Copyright © LSTA 2006. All rights reserved.

## A.   DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Bank of America, N.A., a national banking association, as Administrative Agent.

"Assignment" means Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
- [ ] none.
- [x] means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, in re WCI Communities, Inc., et al., No. 08-11643 (KJC) (Jointly Administered).

"Bankruptcy Court" select one:
- [ ] none.
- [x] means the United States Bankruptcy Court for the District of Delaware (and, if appropriate, the United States District Court for that District).

"Bar Date" select one:
- [ ] not applicable.
- [ ] none has been set.
- [x] means February 2, 2009.

"Buyer Purchase Price" select one:
- [x] not applicable.
- [ ] means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
- [ ] means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
- [ ] none.
- [x] means the Commitment in the principal amount of $151,245.99 of which $141,783.34 is outstanding Committed Loans and $9,462.65 is Unfunded Commitments.

"Covered Prior Seller" select one:
- [x] not applicable.
- [ ] means each Prior Seller that transferred the Loans and Commitments on or after the Shift Date.

"Filing Date" select one:
- [ ] none.
- [x] means August 4, 2008.

"Loans" means Committed Loans in the outstanding principal amount of $141,783.34.

"Netting Letter" select one:
- ☒ not applicable.
- ☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
- ☒ not applicable.
- ☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
- ☒ not applicable.
- ☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
- ☐ means [_____].

"Required Consents" means consent of the Agent and each L/C Issuer.

"Seller Purchase Price" select one:
- ☒ not applicable.
- ☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means that part of the Commitments that has not been funded in the form of loans, advances, letter of credit disbursements or otherwise under the Credit Agreement, which is in the principal amount of $9,462.65.

B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(ii) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
   If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

      "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).

   ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
   ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
   ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
   ☒ None.
   ☐ The following: _____

Section 4.1(v) (Proof of Claim).
    ☒ The *Proof of Claim* was duly and timely filed, on or prior to the Bar Date, by
        ☒ the Agent on behalf of the Lenders.
        ☐ Seller or a Prior Seller.
    ☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy
Case and no Proof of Claim has been filed.
    ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.**    **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (Buyer Status).

    ☒ Buyer is not a Lender.
    ☐ Buyer is a Lender.
    ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the
Credit Agreement) of a Lender.
    ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.**    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.**    **SECTION 7 (COSTS AND EXPENSES)**

☒ The Transfer Fee shall be paid by Seller to the Agent and the *Purchase Price shall be increased by*
an amount equal to
    ☒ one-half thereof.
    ☐ other relevant fraction or percentage, ___, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the
Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, ___, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☐ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase
Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in
respect thereof.

**F.**   **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**   Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)   If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)   If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**   Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

UBS AG Stamford
SWIFT UBSWU33
ABA No: 026-007-993
Account: UBS AG London
Account No. 101 WA 377104-000
FCT: SR GGI Master MA, Ltd.
Account No.: 75000618
Reference: WCI/ Lehman

Seller's Wire Instructions:

Citibank NYC
ABA Number: 021000089
Account Number: 30434133
Account Name: LCPI Bank Loans
Reference: WCI/Gruss

NYC:180236.7
6

G.    SECTION 9 (NOTICES)

Buyer's Address for Notices and Delivery:

Address for Notices and Deliveries for Payments, Administrative Information and Public Information:

SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P.
667 Madison Avenue, 3rd Floor
New York, New York 10065
Attention: Robert Swenson
Telephone: 212-688-1500 x373
Facsimile: 212-350-9730
rs@gruss.com

SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P.
667 Madison Avenue, 3rd Floor
New York, New York 10065
Attention: Monica Bilciu
Telephone: 212-688-1500 x377
Facsimile: 212-350-9728
mb@gruss.com

SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P.
667 Madison Avenue, 3rd Floor
New York, New York 10065
Attention: Trish Albate
Telephone: 212-688-1500 x375
Facsimile: 212-350-9722
ta@gruss.com

SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P.
667 Madison Avenue, 3rd Floor
New York, New York 10065
Attention: Tina Guberman
Telephone: 212-688-1500 x326
Facsimile: 212-350-9712
tsg@gruss.com

Address for Notices and Deliveries for Credit and Non-Public Information:

SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P.
667 Madison Avenue, 3rd Floor
New York, New York 10065
Attention: Michael Monticciolo
Telephone: 212-688-1500 x351
Facsimile: 212-350-9728

mm@gruss.com

Seller's Address for Notices and Delivery:

| | |
|---|---|
| **Operations Contact:** | **(For Notices on Borrowings, Paydowns, Interest & Fees)** |
| Name: | Jessica Markowitz |
| Company: | Lehman Commercial Paper Inc. |
| Address: | 1271 6th Ave 35th Floor |
| | New York, NY 10019 |
| Telephone: | 646-333-9935 |
| E-Mail Address: | jessica.markowitz@lehman.com |

| | |
|---|---|
| **Credit Contact:** | **(For Credit, Legal & Financial Documents)** |
| Name: | Randall Braunfeld |
| Address: | 1271 6th Ave 35th Floor |
| | New York, NY 10019 |
| E-Mail Address: | randall.braunfield@lehman.com |


**H.    SECTION 26 (FURTHER PROVISIONS)**

1.    Seller and Buyer agree that the following representation shall be added at the end of Section 4.1 of the Standard Terms as follows:

"(x)    The Standard Terms apply to and govern the Fifth Third PSA (as defined in the Annex)."


2.    Seller and Buyer agree that a new Section 28 shall be added to the Standard Terms as follows:

**"28.    Limited Liability**

Notwithstanding anything contained in this Agreement to the contrary, Seller agrees that all obligations and liabilities of Buyer under this Agreement are enforceable solely against Buyer and Buyer's assets and not against any manager, officer, director, agent, representative, general partner, limited partner, shareholder or member of Buyer, or against any assets of any manager, officer, director, agent, representative, general partner, limited partner, shareholder or member of Buyer.  No manager, officer, director, agent, representative, general partner, limited partner, shareholder or member of Buyer shall be personally liable for any obligation under this Agreement."

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

LEHMAN COMMERCIAL PAPER INC.

By:
Name:          TINA CHEN
Title:      AUTHORIZED SIGNATORY

BUYER

SR GGI MASTER MA, LTD.
By: Gruss Asset Management, L.P.
    Its Sub-Advisor
By: Gruss Co., LLC,
    its General Partner

By:
    Name:
    Title:

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by
their duly authorized officers or representatives as of the Agreement Date.

SELLER

**LEHMAN COMMERCIAL PAPER INC.**

By:_____
Name:
Title:


**BUYER**

**SR GGI MASTER MA, LTD.**
By: **Gruss Asset Management, L.P.**
      Its Sub-Advisor
By: **Gruss Co., LLC,**
      Its General Partner


By:_____
Name: Michael Monticciolo
Title:   Manager

NYC:180236.7
9

**ANNEX TO PURCHASE AND SALE AGREEMENT**

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    Purchase and Sale Agreement (Original Assignment)(the "Fifth Third PSA"), dated as of July 11, 2008, by and between Fifth Third Bank, a Michigan banking corporation, as seller, Seller, as buyer and the related Assignment (as defined therein). [distressed]

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    Senior Unsecured Revolving Credit Agreement dated as of June 13, 2006, among WCI Communities, Inc., as borrower, the lenders party thereto, and Bank of America, N.A., as Administrative Agent, Swing Line Lender and an L/C Issuer.

    First Amendment to Credit Agreement, dated as of April 5, 2007, by and among WCI Communities, Inc., as Borrower, each lender party thereto and Bank of America, N.A., as Administrative Agent, Swing Line Lender and an L/C Issuer.

    Second Amendment to Credit Agreement, dated as of August 17, 2007, by and among WCI Communities, Inc., as Borrower, each lender party thereto and Bank of America, N.A., as Administrative Agent, Swing Line Lender and an L/C Issuer.

    Third Amendment to Credit Agreement, dated as of January 16, 2008, by and among WCI Communities, Inc., as Borrower, each lender party thereto and Bank of America, N.A., as Administrative Agent, Swing Line Lender and an L/C Issuer.

3.  Description of Proof of Claim (if any).

    Those certain Proofs of Claim filed by the Agent on behalf of the Lenders in the Bankruptcy Case with the Bankruptcy Court dated January 28, 2009 and filed on January 30, 2009.

4.  Description of Adequate Protection Order (if any).

    Final Order (I) Authorizing Debtors (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1), 364(E) and 507 and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507 and (III) Authorizing Debtors to Use Proceeds of Post-Petition Financing and Cash Collateral to Repay Secured Indebtedness Pursuant to 11 U.S.C. § 363, entered by the Bankruptcy Court on September 23, 2008.

5.  List any exceptions to Section 4.1(w) (Notice of Impairment).

    N/A

6.  The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

NYC:180236.7

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

**EXHIBIT D**

**PURCHASE PRICE LETTER, DATED AS OF APRIL 8, 2009**

**Lehman Commercial Paper Inc.**
1271 6th Ave 35th Floor
New York, NY 10019

April 8, 2009

SR GGI Master MA, Ltd.
c/o Gruss Asset Management, L.P.
667 Madison Avenue, 3rd Floor
New York, NY 10065
Attention: Robert Swenson

**Re: WCI Communities, Inc.**

Ladies and Gentlemen:

Reference is made to the Purchase and Sale Agreement for Distressed Trades (the "Agreement") dated as of the date hereof between Lehman Commercial Paper Inc. ("Seller") and SR GGI Master MA, Ltd. ("Buyer"). This is the Purchase Price Letter referred to therein. All capitalized terms used but not defined herein shall have the same meanings set forth in the Agreement.

The Purchase Price, as described in the Agreement, is calculated in U.S. dollars as set forth on Schedule A hereto.

The Parties agree that, upon satisfaction of the terms and conditions set forth in the Agreement, the Purchase Price shall be paid by Buyer to Seller in U.S. dollars by wire transfer of immediately available funds to Seller's account set forth in the Agreement.

(Signatures follow on next page)

1

NYC:180242.1

Please indicate your acceptance of the terms of this letter by signing below.

                                        LEHMAN COMMERCIAL PAPER INC.

                                        By: _____
                                            Name:
                                            Title:      TINA CHEN
                                                    AUTHORIZED SIGNATORY


SR GGI MASTER MA, LTD.
By: Gruss Asset Management, L.P.
    its Sub-Advisor
By: Gruss Co., LLC
    its General Partner

    By:_____
        Name:
        Title:


2

NYC:180242.1

Please indicate your acceptance of the terms of this letter by signing below.

LEHMAN COMMERCIAL PAPER INC.

By: _____

Name:
Thle:

**SR GGI MASTER MA, LTD.**
By: Gruss Asset Management, L.P.
   its Sub-Advisor
By: Gruss Co., LLC
   its General Partner

By: _____
Name: Michael Monticciolo
Title:  Manager

2

## SCHEDULE A

*(See attached spreadsheet)*

3

NYC:180242.1

## WCI COMMUNITIES, INC. (REVOLVER CREDIT)

BUYER: SR GGI MASTER MA, LTD.
SELLER: LEHMAN COMMERCIAL PAPER INC.

| | | | | |
|---|---|---|---|---|
| | TD: | 8/4/2008 | Orig. Global: | $600,000,000.00 |
| | T+20: | 9/2/2008 | Orig. Assigned: | $170,505.98 |
| | SD: | 4/8/2009 | Orig. Pro-Rata: | 0.028417830000% |
| Purchase Rate | 88.000% | | T+20 Global: | $535,638,552.33 |
| | | | T+20 Assigned: | $152,216.86 |
| | | | Curr. Global: | $532,222,097.33 |
| | | | Curr. Assigned: | $151,245.87 |
| | | | | 0.028417830000% |

### COST OF CARRY as of T + 20

| Facility | Purchase Price @ T + 20 | From | To | Days | Libor Rate | Basis | Cost of Carry |
|---|---|---|---|---|---|---|---|
| RC | $119,207.29 | 9/2/2008 | 4/8/2009 | 218 | 1.52326% | 360 | $1,071.94 |
| | | | | | | TOTAL | $1,071.94 |

### DELAY COMPENSATION (INTEREST)

| Prime / Libor | Facility | Global | Assigned Share | From | To | Basis | Accrued Interest |
|---|---|---|---|---|---|---|---|
| Libor | RC | $173,923,874.71 | $49,425.39 | 9/2/2008 | 9/29/2008 | 380 | $286.13 |
| Libor | RC | $173,923,874.71 | $49,425.39 | 9/29/2008 | 10/28/2008 | 380 | $368.80 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 10/28/2008 | 11/5/2008 | 380 | $122.04 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 11/5/2008 | 11/12/2008 | 380 | $103.96 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 11/12/2008 | 11/19/2008 | 380 | $100.86 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 11/19/2008 | 12/19/2008 | 380 | $475.97 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 12/19/2008 | 1/20/2009 | 380 | $440.31 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 1/20/2009 | 1/27/2009 | 380 | $90.70 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 1/27/2009 | 2/26/2009 | 380 | $400.05 |
| Libor | RC | $299,923,874.71 | $84,947.68 | 2/26/2009 | 3/27/2009 | 380 | $381.89 |
| Libor | RC | $125,000,000.00 | $35,522.29 | 9/2/2008 | 10/14/2008 | 360 | $328.20 |
| Prime | RC | $125,000,000.00 | $35,522.29 | 10/14/2008 | 10/14/2008 | 360 | $120.11 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 9/2/2008 | 8/10/2008 | 360 | $207.21 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 9/19/2008 | 11/18/2008 | 360 | $786.11 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 11/18/2008 | 11/25/2008 | 360 | $98.10 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 11/25/2008 | 1/29/2008 | 360 | $143.53 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 1/29/2008 | 12/19/2008 | 360 | $88.17 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 12/19/2008 | 12/23/2008 | 360 | $62.03 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 12/23/2008 | 1/22/2009 | 360 | $271.00 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 1/22/2009 | 1/29/2009 | 360 | $60.70 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 1/29/2009 | 2/27/2009 | 360 | $259.20 |
| Libor | RC | $200,000,000.00 | $56,835.66 | 2/27/2009 | 3/27/2009 | 360 | $253.24 |
| Libor | RC | $469,923,874.71 | $141,783.34 | 3/27/2009 | 4/8/2009 | 360 | $272.70 |

### DELAY COMPENSATION (LETTER OF CREDIT FEE)

| Funded | LC | Unfunded | | |
|---|---|---|---|---|
| $469,923,874.71 | $39,714,707.62 | $0.00 | | |
| $141,783.34 | $10,433.52 | - | | |
| | $33,298,222.62 | $0.00 | | |
| | $9,462.63 | - | | |

| | | | | |
|---|---|---|---|---|
| | | | 8/4/2008 | 64,381,417.87 |
| | | | 8/10/2008 | 90,000.00 |
| | | | 11/12/2008 | 1,317,465.00 |
| | | | 11/5/2009 | 2,000,000.00 |
| | | | TODAY | |

**$5,669.91**

| Facility | Global | Assigned Share | From | To | Rate | Basis | Accrued Fee |
|---|---|---|---|---|---|---|---|
| Letter of Credit | $36,714,707.82 | $10,433.52 | 9/2/2008 | 9/18/2008 | 7.1850% | 360 | $33.04 |
| Letter of Credit | $36,615,707.82 | $10,405.39 | 9/18/2008 | 1/13/2009 | 7.1250% | 360 | $240.95 |
| Letter of Credit | $35,288,222.62 | $10,030.99 | 1/13/2009 | 1/15/2009 | 7.1250% | 360 | $3.97 |
| Letter of Credit | $33,298,222.62 | $9,462.63 | 1/15/2009 | 4/8/2009 | 7.1250% | 360 | $155.44 |
|  |  |  |  |  |  |  | $433.40 |

**COMMITMENT REDUCTION**

| Facility | Global Paydown | Pro Rata Paydown | Benefit | From | To | Rate | Basis |
|---|---|---|---|---|---|---|---|
| RC | $84,361,411.67 | $18,206.12 | ($2,743.52) | 9/2/2008 | 9/18/2008 |  |  |
| RC | $96,000.00 | $28.13 | ($4.22) | 9/18/2008 | 1/13/2009 |  |  |
| RC | $1,317,485.00 | $374.40 | ($56.16) | 1/13/2009 | 1/15/2009 |  |  |
| RC | $2,000,000.00 | $568.38 | ($85.25) | 1/15/2009 | 4/8/2009 |  |  |
|  |  | TOTAL | ($2,889.15) |  |  |  |  |

**PURCHASE PRICE CALCULATION**

| | |
|---|---|
| Funded Loans | $141,783.34 |
| Purchase Rate | 85.000% |
| Subtotal | $120,515.84 |
| Credit for Unfunded | ($1,419.39) |
| Cost of Carry | $1,071.94 |
| Credit for Accrued Interest | ($5,680.91) |
| Credit for L/C Fee | ($433.40) |
| Benefit of comm reduction | ($2,889.15) |
| Purchase price | $111,164.92 |

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-3769
DIRECT FAX
(917) 777-3769
EMAIL ADDRESS
ANDREW.THAU@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

September 20, 2009

**VIA HAND DELIVERY**

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

RE:  *In re Lehman Brothers Holdings Inc., et al.*
**Case No. 08-13555 (JMP)**
**U.S. Bankruptcy Court, Southern District of New York**

Dear Sir or Madam:

Enclosed are one (1) original and two (2) duplicates of proofs of claim forms, the corresponding addenda and any exhibits thereto (each, a "Proof of Claim") to be filed by Gruss Global Investors Master Fund, Ltd. in the above-referenced bankruptcy cases. Two Proofs of Claim is against Lehman Commercial Paper Inc. for no less than $1,173,612.98 and $1,146,430.92 and another one is against Lehman Brothers Holdings Inc, for no less than $183,108.

Please return the duplicate copies of each Proof of Claim to me stamped with the date of filing.

If you should have any questions or comments with regard to the foregoing, please contact me by telephone at (212) 735-3769 or by email at andrew.thau@skadden.com.

Sincerely,

Andrew M. Thau

Enclosures

812653.01-New York Server 2A                                          MSW - Draft September 20, 2009 - 1:59 PM

H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

N. Roman

RECEIVED BY: _____     DATE: _____     11:39  TIME: _____