| | |
|---|---|
| **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP** | **HEARING DATE**: |
| 51 Madison Avenue, 22nd Floor | December 16, 2009 |
| New York, New York 10010 | |
| Telephone: (212) 849-7000 | |
| Telecopier: (212) 849-7100 | |
| Susheel Kirpalani | |
| James C. Tecce | |
| Robert K. Dakis | |

*Special Counsel to the Official
Committee of Unsecured Creditors of
Lehman Brothers Holdings Inc., et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                              :
                                                    :   **Chapter 11**
**LEHMAN BROTHERS HOLDINGS INC.,**                  :
**ET AL.**,                                         :   **Case No. 08-13555 (JMP)**
                                                    :   **(Jointly Administered)**
              Debtors.                              :
------------------------------------------------------------x
In re:                                              :
                                                    :
**LEHMAN BROTHERS INC.**,                           :   **SIPA Proceeding**
                                                    :   **Case No. 08-1420 (JMP)**
              Debtor.                               :
------------------------------------------------------------x

**REPLY IN FURTHER SUPPORT OF MOTION OF
OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
LEHMAN BROTHERS HOLDINGS INC., ET AL., PURSUANT TO
11 U.S.C. § 105(a) AND HAGUE CONVENTION (28 U.S.C. § 1781), FOR
LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**

The Official Committee of Unsecured Creditors (the "Committee"), appointed in the above-captioned chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and debtors in possession (collectively, the "Lehman Debtors"), by and through its undersigned counsel, hereby files this reply in further support of, and in response to the Objection (the "Objection") of Barclays Capital Corp. ("Barclays") to, the Motion (the "Motion"), pursuant to section 105(a) of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and the Hague Convention of 18 March 1970 (the "Hague Convention") for judicial assistance, and, in support thereof, respectfully states as follows:[1]

## I. PRELIMINARY STATEMENT

1. The Committee requests procedural relief, specifically the issuance by this Court of letters of request ("Letters") seeking specific documents from two entities located in the United Kingdom: the FSA[2] and PwC. The purpose of the Letters is to obtain documents that are highly relevant to the prosecution of the Rule 60(b) Motions that cannot otherwise be obtained, especially considering that the FSA and PwC[3] are beyond the reach of the Court's subpoena power. Neither of the proposed recipients of the Letters, PwC and the FSA, have formally responded to the Motion.[4] The lone formal response comes from Barclays, who is not the subject of the Letters and whose Objection fails to present a sustainable challenge to the relief requested in the Motion.

2. Barclays first points to its different recitation of the facts and argues the requested documents are not relevant. Yet, the Committee's request for procedural relief relating to third parties should not devolve into a dispute concerning the merits of the Rule 60(b) Motions. Rather, the question presented is whether the evidence

---

[1] The Lehman Debtors and the SIPA Trustee have reviewed, and both join in the Motion with respect to the FSA; LBHI also joins in the Motion with respect to PwC.

[2] Capitalized terms not defined herein have the meanings ascribed to them in the motion.

[3] The motion relates only to PwC entities in the United Kingdom. To the extent that a PwC entity located in the United States may have relevant evidence, the Bankruptcy Court clearly has jurisdiction, and such United States entity will be the subject of an independent request.

[4] The FSA has not formally appeared in these proceedings. Instead, it has transmitted a letter dated December 9, 2009 (the "FSA Letter") setting forth its position to the Committee's counsel in London, which Barclays has submitted to the Court.

2

is relevant to the Rule 60(b) Motions. The documents requested are highly relevant to the Committee's claims and are located in the United Kingdom.

   3. Barclays next argues the Committee could obtain the documents it is seeking in the United States. While Barclays has agreed to produce "non-privileged documents [Barclays] provided to PwC," it has not confirmed it will instruct PwC, in the United Kingdom, to produce its work papers. Barclays has indicated it will take that request under advisement (but the Committee does not have any assurances that PwC will consent even if asked by Barclays to produce the work papers). Barclays' consideration, while appreciated, does not militate against taking the procedural step of issuing the Letters.

   4. With respect to the FSA, Barclays has thus far only agreed to consider producing correspondence with the FSA. Even if Barclays agrees to produce its correspondence with the FSA, however, the Committee still would not obtain the FSA's internal communications and notes regarding the Sale Transaction; it can only obtain them from the FSA. The Letters are necessary in order to obtain these documents.[5]

---

[5] The FSA has indicated that Barclays could agree to waive any objection to the FSA's producing documents that Barclays provided to the FSA. Barclays, thus far, has not agreed to do so. However, even assuming Barclays were to give its consent, the FSA has only committed to "consider the form in which it might be appropriate" to assist the Committee. See FSA Letter at ¶ 20. Moreover the FSA strongly suggested that such assistance would not include its working papers or internal notes and correspondence. See FSA Letter at ¶ 20 ("As you will appreciate, the FSA would not normally consider it appropriate to provide third parties with any of its internal working papers created in the ordinary course carrying out its official duties"). A copy of the correspondence among Committee counsel and the FSA is attached hereto as Exhibit 1.

3

5. Finally, Barclays argues the Committee's request violates English law. But the premise of Barclays' argument – that the Letters are seeking "pretrial discovery" as that phrase is used in the United States – is wrong. The Committee has propounded narrow and particular document requests in connection with an ongoing litigation of the very type courts in the U.S. and England have permitted, as the cases Barclays has cited make clear. Moreover, resolving the question of whether English law shields the FSA from the production of documents responsive to the Committee's requests requires consideration of complicated provisions of English law.

6. The Committee is seeking specific documents that are highly relevant to disposition of the Rule 60(b) Motions. The Committee respectfully requests the Court take the first step of issuing the proposed Letters to enable the Committee to try and pursue those documents from the FSA and PwC.

## II. RESPONSE

### A. THE DOCUMENT REQUESTS ARE RELEVANT TO THE COMMITTEE'S CLAIMS

7. Relevance under the Federal Rules of Evidence is a very broad concept. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "As one court has said, Rule 401 provides a 'rather liberal standard' . . . evidence is relevant if it has the slightest bit of probative worth; only evidence that has no value as proof of a consequential fact is irrelevant." 22 Charles Alan Wright, Arthur R. Miller, et al., Fed. Prac. & Proc. Evid. § 5165

8. Barclays spends considerable time disputing the factual contentions in the Rule 60(b) Motions. Ultimately Barclays argues that according to it alternate version of the facts, the Committee's document requests are not relevant. It is

4

undisputed that Barclays announced a gain of nearly $4.0 billion as a result of its purchase of the North-American broker dealer business.  The Rule 60(b) Motions allege that Barclays' significantly greater return bears no resemblance to the transaction presented to the Court -- where liabilities assumed supposedly either equaled or exceeded acquired assets.  The specific documents that the Committee seeks from PwC, as Barclays' auditor, and the FSA, as one of its regulators, clearly satisfy the liberal standard under Federal Rule of Evidence 401 and are relevant to the issues raised in the Rule 60(b) Motions.  The mere fact that Barclays disagrees with the Committee's contentions does not render irrelevant documents that support the Rule 60(b) Movant's claims.

      B.     THE FSA AND PWC DOCUMENTS ARE NOT OBTAINABLE THROUGH OTHER SOURCES

         9.     Barclays next contends that the Motion is unnecessary as the documents that are subject to the Letters of Request are available from Barclays.  The Committee, however, is seeking PwC's internal work papers and correspondence and the FSA's internal correspondence and notes.  Barclays suggests that its agreement to produce non-privileged documents that Barclays provided to PwC satisfies the Committee's need for the specific documents set forth in the Letters.  It also recently has agreed to (i) consider instructing PwC to produce its work papers, and (ii) consider producing its correspondence with the FSA.  While the Committee appreciates Barclays' cooperation, it has no choice but to persist in requesting the limited procedural relief it seeks in the Motion.

         10.    First, Barclays only agreed to produce documents that it supplied to PwC.  That would not include PwC's work papers, which will be relevant to how it audited the Sale Transaction.  Barclays has asserted that its valuations of the assets transferred in the Sale Transaction were "subject to audit."  PwC's working papers are necessary to determine whether PwC selected assets for testing and, if so, whether the

5

results of PwC's testing comported with or contradicted Barclays' valuations.  PwC is the only entity with access to its work papers.  Absent Barclays' agreement for PwC to release them (and PwC's consent), the formal Letter is the only means for the Committee to obtain these documents from PwC in the United Kingdom.

11.     Similarly, the Committee is seeking the FSA's internal correspondence and notes.  Indeed, the internal FSA documents may capture the contemporaneous records that the FSA made of its meetings with Barclays officials regarding the Sale Transaction.  Barclays' however, has thus far only agreed to produce correspondence with the FSA.  Barclays has not argued, nor could it, that the Committee could obtain the FSA's internal communications and notes regarding the Sale Transaction from any source other than the FSA.  Thus, the formal Letter is necessary in order to obtain these documents as well.

### C.   THE DOCUMENT REQUESTS DO NOT VIOLATE ENGLISH LAW

12.     Finally, Barclays argues that the Committee's requests of PwC and the FSA under The Hague Convention and the 1975 Act violate English law.  As the cases Barclays cites make clear, non-parties can be required to produce evidence ***for trial*** in an action pending in the United States, so long as the requests are sufficiently particularized.  For example, in Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd., 2008 WL 719243 (E.D.N.Y. Mar. 18, 2008), the court approved a letter of request for four fairly broad categories of documents.  Indeed, the Committee's focused request for documents that directly support or refute Barclays' position is narrowly tailored to ensure that only those documents that would lead directly to admissible evidence are produced.  By contrast, the Committee is not seeking all documents "related to" the Sale Transaction.  See Rio Tinto Zinc Corp. v. Westinghouse Elec. Corp., 3 W.L.R. 430, 435-36 (CA (Civ. Div.) May 26, 1977).  Neither Barclays (directly) nor the FSA (in its letter

6

attached to Barclays' supplemental response) has identified any specific request it claims is overly broad or improperly worded.  Indeed, the requests Barclays identifies that are at least, if not more, particular than those approved in Metso.

13. Notwithstanding that Barclays' own cases demonstrate that letters of request are granted for third party evidence prior to trial, Barclays further argues that the Committee's requests should be denied as a matter of course as the English courts will not allow "pretrial" discovery from third parties.  Barclays' argument is based on the flawed premise that an English court would consider the Committee's request to be "pretrial" discovery.  That is not the case at all.  While the request is being made during the discovery phase of this litigation, the purpose of the proposed Letter of Request is to obtain evidence for use when the Rule 60(b) Motions are submitted to the Court for consideration, which constitutes the "trial" on this matter.  The United Kingdom's refusal to require non-parties to provide "pre-trial discovery" is only directed towards party's seeking broad categories of evidence for pre-trial *purposes*, (i.e., evidence that is not directly relevant to the ultimate issues in the litigation, but rather could lead to a train of inquiry which *might* produce direct evidence for the trial).  English courts will grant a request for evidence from third parties, prior to the time of trial, where the evidence is in the nature of proof to be used for the purposes of the trial. See e.g., Rio Tinto, 3 W.LR. at 608.  Accordingly, the United Kingdom's refusal to require non-parties to provide "pre-trial discovery" is not implicated by the pending motion.[6]

---

[6] The Committee submits that the Rule 60(b) Motions can be decided in large part without an evidentiary hearing, and reserves any and all rights to argue the motions can be decided on the papers without such an evidentiary hearing.

7

### D. CONSTRUCTION OF THE FSA CONFIDENTIALITY PROVISIONS SHOULD BE LEFT TO THE ENGLISH COURT

14. Barclays further suggests, through its reliance on the FSA letter, that certain confidentiality provisions that apply to the FSA as a matter of English law would preclude the Committee from seeking evidence from the FSA. Whether the FSA documents are shielded by confidentiality restrictions is a complex question of English law that should be raised and considered by the English court. For that reason the Committee has not burdened the Court with the substance of its argument, which goes beyond mere reliance on Regulation 5. See e.g., Metso Minerals, Inc. v. Powerscreen Int'l Dist. Ltd., 2007 WL 1875560, at *3 (E.D.N.Y. June 25, 2007) (issuing letter of request notwithstanding issue of whether U.K. reservation under Article 23 (precluding pre-trial discovery) applied: "[w]hether the Letter of Request will ultimately be executed in light of the United Kingdom's reservation under Article 23, however, is unknown. Such decision is best left to the judicial authorities in the United Kingdom"). Neither Barclays nor the FSA have pointed to any authority addressing the confidentiality regulations' application to litigation arising from a U.S. bankruptcy, and the Committee respectfully submits that the requests at issue here are far from "obviously inappropriate" under English law. Should the Court believe that it must reach a determination on the merits of the English law position before ruling on this motion, the Committee respectfully requests an opportunity to provide additional briefing on the question.

WHEREFORE, the Committee respectfully requests that this Court enter an Order granting the Motion and denying the Objection, issuing the Letters, and awarding the Committee such other, further relief as it deems appropriate.

Dated: December 11, 2009
New York, New York

**QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP**

/s/ James C. Tecce
Susheel Kirpalani
James C. Tecce
Robert K. Dakis
51 Madison Avenue
New York, New York 10010
Telephone No.: (212) 849-7000
Facsimile No.: (212) 849-7100

*Special Counsel to the Official Committee
Of Unsecured Creditors Of Lehman
Brothers Holdings Inc., et al.*