Hearing Date and Time:  December 16, 2009 at 10:00 a.m.
Response Date and Time (consensually extended): December 14, 2009 at 4:00 p.m.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Thomas Moers Mayer
Daniel M. Eggermann
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Rutger Schimmelpenninck and
Frederic Verhoeven as Trustees for Lehman
Brothers Treasury Co. B.V.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**THE TRUSTEES FOR LEHMAN BROTHERS TREASURY CO. B.V.'S STATEMENT
IN CONNECTION WITH THE MOTION BY MERRILL LYNCH INTERNATIONAL
AND CERTAIN OF ITS AFFILIATES FOR ENTRY OF AN ORDER (A)
CONFIRMING ABILITY TO DELIVER NOTICE OF ACCELERATION WITH
RESPECT TO CERTAIN NOTES ISSUED BY FOREIGN AFFILIATE WITHOUT
RELIEF FROM THE AUTOMATIC STAY OR (B) GRANTING LIMITED RELIEF
FROM THE AUTOMATIC STAY TO DELIVER SUCH NOTICE**

Rutger Schimmelpenninck and Frederic Verhoeven (the "LBT Trustees"), as bankruptcy trustees for Lehman Brothers Treasury Co., B.V. ("LBT"), hereby file this statement in connection with the motion (the "Motion") filed by Merrill Lynch International and certain of its affiliates (collectively "Merrill Lynch") for entry of an order (a) confirming the ability to deliver one or more notices of acceleration to Lehman Brothers Holdings Inc. ("LBHI") with respect to certain notes issued by LBT without relief from the automatic stay or (b) granting limited relief from the automatic stay to deliver such notices (Docket No. 5958). In connection with the Motion, the LBT Trustees respectfully represent as follows:

KL2 2630397.5

**PRELIMINARY STATEMENT**

1. The LBT Trustees take no position as to (i) whether the delivery of an acceleration notice to LBHI violates the automatic stay or (ii) to the extent the automatic stay does apply, whether the automatic stay should be lifted to permit Merrill Lynch to deliver such a notice to LBHI for purposes of determining its claim against LBHI.

2. As discussed in more detail below, the LBT Trustees respectfully request that, to the extent it does apply, the automatic stay be modified to permit holders of LBT Notes to deliver acceleration notices to LBHI for the *sole* purpose of accelerating claims against LBT in The Netherlands.

**BACKGROUND**

3. LBT is a private company with limited liability organized under Dutch law with its corporate seat and registered office in Amsterdam, The Netherlands. LBT is an indirect wholly-owned subsidiary of LBHI.

4. On September 19, 2008, LBT filed a petition with the Amsterdam District Court in The Netherlands for the granting of a provisional moratorium ("*voorlopige surseance van betaling*") under the Dutch Bankruptcy Act. On October 8, 2008 (the "LBT Bankruptcy Date"), the Amsterdam District Court withdrew the provisional moratorium and declared LBT bankrupt ("*in staat van faillissement*") under the Dutch Bankruptcy Act. On that same day, the Amsterdam District Court appointed Rutger Schimmelpenninck to serve as LBT's bankruptcy trustee ("*curator*"). On October 13, 2009, the Amsterdam District Court appointed Frederic Verhoeven as LBT's bankruptcy co-trustee.

5. LBT was incorporated for the financing of the business activities of the Lehman Brothers enterprise by issuing financial instruments – in particular structured notes (the

2

"LBT Notes") – to institutional and private (including retail) investors. The LBT Trustees understand that LBT's obligations under the LBT Notes were unconditionally and irrevocably guaranteed by LBHI (the "Guarantee").

6. In general, the characteristics of the LBT Notes vary from relatively simple to incredibly complex. In most cases, the principal of the loan as well as the amount of the return is linked to movements of (embedded) derivative market elements such as equity prices, stock indices, commodities and the like.

7. The economic terms of the LBT Notes vary from note to note. Generally, the economic terms of the individual notes are set forth in a final terms supplement (the "Final Terms") to each particular issued note. The Final Terms set forth the amounts that are due under the notes to the individual noteholders (the "Contractual Amounts"). Generally, if held to maturity, the Contractual Amount is calculated by reference to market data that exists on the final maturity date and is referred to as the final redemption amount (the "Final Redemption Amount"). If a note is validly accelerated, the Contractual Amount is generally calculated by reference to market data that exists as of the date of acceleration and is referred to as the early redemption amount (the "Early Redemption Amount").

8. As of the LBT Bankruptcy Date, there were in excess of 3,700 series of LBT Notes outstanding.

9. The LBT Trustees are in the process of formulating a methodology by which the LBT Trustees will value claims against LBT under the LBT Notes for purposes of LBT's insolvency proceedings in The Netherlands.[1] In its latest and fourth public report dated

---

[1] This methodology is intended to apply only to claims against LBT under the LBT Notes – not claims against LBHI under the Guarantee. The LBT Trustees understand that the valuation of Guarantee claims against LBHI will be addressed in these U.S. proceedings.

3

November 3, 2009 (the "LBT Fourth Report") (a copy of which is attached to the Motion as Exhibit C), the LBT Trustees have announced provisional principles (the "Provisional Principles") for valuing the claims against LBT under the LBT Notes. The LBT Trustees are in discussions with various LBT Noteholders concerning those Provisional Principles and intend to announce final valuation principles ("Final Principles") in early 2010.

10.  Once the Final Principles are settled, the LBT Trustees intend to value the LBT Notes and request that the judge supervising the LBT proceedings (the "Supervisory Judge") establish dates for (i) the filing of claims against LBT in The Netherlands (the "LBT Claims Filing Date") and (ii) a creditor's meeting (*verificatievergadering*) (the "Claims Admission Meeting") during which it will be determined which claims will be admitted and which claims are disputed. Disputed claims will be referred to the Amsterdam District Court for resolution. The LBT Trustees do not expect to make this request of the Supervisory Judge prior to the second half of 2010.

11.  The starting point for the valuation of the LBT Notes in the Dutch proceedings requires a calculation of the Contractual Amount. Once the Contractual Amount is calculated, Dutch bankruptcy law must be followed in order to calculate (based on the Contractual Amounts), the corresponding amount that can be admitted against LBT.

12.  As reflected in the Provisional Principles, the LBT Trustees have taken the preliminary view that, as a matter of Dutch insolvency law, an otherwise legally valid acceleration made after the commencement of LBT's moratorium or the LBT Bankruptcy Date is enforceable against LBT for purposes of calculating and fixing LBT's liability under an accelerated LBT Note. While the terms of the individual LBT Notes may differ from note to note, generally, a series of LBT Notes is accelerated when, among other things, holders of 25%

4

or more in principal amount provide written notice to *both* LBT and LBHI of such acceleration. (*See* Base Prospectus, Condition 10(c) attached to the Motion as Exhibit A.)

13. As discussed above, the terms of the LBT Notes generally provide that where an LBT Note is validly accelerated, the Contractual Amount owed under the note can be calculated by reference to market data as of the date of acceleration. However, the value of LBT Notes that are not accelerated and do not mature by their terms prior to the LBT Claims Filing Date must be valued under the Dutch Bankruptcy Act.[2] Depending upon the terms of the particular note, acceleration may result in a claim against LBT that is less than, equal to or larger than the claim that would exist had the particular note not been accelerated.[3]

14. On November 25, 2009, Merrill Lynch filed the Motion indicating that it holds (and may thereafter acquire from time to time) certain of the LBT Notes and may wish to accelerate those notes. (Motion ¶ 5.) Merrill Lynch correctly notes that nothing under Dutch insolvency law bars Merrill Lynch from delivering acceleration notices to LBT. Rather, the issue presented by the Motion is whether the automatic stay bars the delivery of acceleration notices to LBHI. Pursuant to the Motion, Merrill Lynch is seeking an order either (a) confirming that Merrill Lynch can deliver acceleration notices to LBHI without relief from the automatic stay or (b) granting Merrill Lynch limited relief from the automatic stay to deliver such notices to LBHI.

---

[2] As reflected in the Provisional Principles, the LBT Trustees have tentatively concluded that the valuation of those non-accelerated LBT Notes which have an undetermined value should be made by reference to market data as of the beginning of the New York business day on September 15, 2008. (*See* Exhibit C to the Motion at § 6.4.4(d).)

[3] For a more thorough discussion of the LBT Notes generally as well as the calculation and admission of claims against LBT in the Dutch proceedings, the LBT Trustees respectfully refer the Court to the LBT Fourth Report attached to the Motion as Exhibit C.

5

15. On December 11, 2009, LBHI filed an objection to the Motion (the "LBHI Objection") asserting that the automatic stay bars Merrill Lynch from delivering acceleration notices to LBHI.[4] LBHI further asserts that the automatic stay should not be lifted to enable Merrill Lynch to accelerate and thereby assert larger claims against LBHI. LBHI further asserts that Merrill Lynch lacks standing to seek the relief it is requesting as it has failed to provide any evidence that it is in fact a holder of LBT Notes.

16. Also on December 11, 2009, the Official Committee of Unsecured Creditors appointed in these chapter 11 cases filed a joinder to the LBHI Objection.

17. Pursuant to Section 3 of that certain Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies approved by the Court on June 17, 2009 (the "Cross-Border Protocol"), the LBT Trustees have the right to appear and be heard in this matter.

### THE LBT TRUSTEES' STATEMENT

18. The LBT Trustees take no position as to whether the delivery of acceleration notices to LBHI violates the automatic stay or whether Merrill Lynch has standing to seek relief from the automatic stay.

19. The LBT Trustees respectfully submit that the automatic stay does not prohibit the delivery of acceleration notices to LBT. Indeed, neither LBHI nor the Committee contends that it does.

20. However, as discussed above, the LBT Notes, by their terms, generally require an acceleration notice to be provided to *both* LBT and LBHI. To the extent that the automatic stay bars the delivery of acceleration notices to LBHI, the LBT Trustees respectfully

---

[4] LBHI does not contend that the delivery of acceleration notices to LBT violates the automatic stay.

6

KL2 2630397.5

request that the automatic stay be modified to permit the delivery of such notices *for the sole purpose of calculating claims against LBT in the Dutch proceedings*.

21.     As stated above, the LBT Trustees have taken the preliminary view that a validly exercised acceleration is effective as against LBT as a matter of Dutch insolvency law even if the underlying acceleration notice is delivered after the commencement of LBT's moratorium or the LBT Bankruptcy Date.  In other words, it is the LBT Trustee's preliminary view that nothing in the Dutch insolvency laws prohibits the contractual acceleration of a note against LBT, even if such acceleration results in a higher claim in the LBT proceedings (which, depending upon the Final Terms of the particular note, may or may not be the case).

22.     Moreover, the acceleration of a series of notes may simplify the valuation of that series as such acceleration fixes the date by which the valuation is calculated.

23.     In addition, the valuations of non-accelerated notes may pose particular complications for the LBT Trustees as there will be a possibility that such notes may become accelerated after the Claims Admission Meeting.  To that end, acceleration of a series of notes prior to the Claims Admission Meeting will provide certainty to the LBT Trustees as to how the accelerated notes should be treated.[5]

24.     While the LBT Trustees express no opinion as to whether an individual LBT Noteholder *should* accelerate any particular LBT Note, the LBT Trustees submit that those LBT Noteholders wishing to accelerate should be permitted to do so for the limited purpose of accelerating and calculating claims against LBT.  The LBT Trustees assert that the validity of those accelerations as against LBT should be resolved in LBT's Dutch insolvency proceeding.

---

[5]     For that reason, the LBT Trustees are investigating the possibility under Dutch insolvency law of setting, with approval of the Dutch courts, a final date for acceleration of the LBT Notes.  (*See* LBT Fourth Report § 6.6.3.)

7

25. Accordingly, to the extent the delivery of acceleration notices to LBHI violates the automatic stay, the LBT Trustees respectfully request that the automatic stay be modified to permit the delivery of such notices for the sole purpose of accelerating claims against LBT. The Court may further provide in such order, to the extent the Court deemed it appropriate and advisable, that such acceleration shall not affect the calculation of claims against LBHI under the Guarantee. The LBT Trustees assert that such relief is consistent with the purposes and spirit of the Cross-Border Protocol approved by the Court.

26. Alternatively, to the extent the Court determines that the automatic stay bars the delivery of acceleration notices to LBHI and that the automatic stay should not be lifted or modified as requested herein, the LBT Trustees respectfully request that such order expressly provide that (i) nothing contained therein prohibits the delivery of acceleration notices to LBT and (ii) that the issue of whether an acceleration is valid against LBT if notice is delivered only to LBT (and not LBHI) shall be determined in LBT's Dutch proceedings by reference to applicable Dutch insolvency law and the law governing the applicable LBT Note.

Respectfully Submitted,

Dated: December 14, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Thomas Moers Mayer
Thomas Moers Mayer
Daniel M. Eggermann
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Rutger Schimmelpenninck and Frederic Verhoeven as Trustees for Lehman Brothers Treasury Co. B.V.

KL2 2630397.5