**Hearing Date and Time: December 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Thomas J. Moloney
Sean A. O'Neal

*Attorneys for PB Capital Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                  :
In re                                             :    Chapter 11 Case No.
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,      :    **08-13555 (JMP)**
                                                  :
          Debtors.                                :    **(Jointly Administered)**
                                                  :
-------------------------------------------------------------------x

**MOTION OF PB CAPITAL FOR LEAVE TO FILE A LIMITED
SUR-REPLY DECLARATION IN RESPONSE TO THE DEBTORS'
SUPPLEMENT TO OBJECTIONS TO REQUESTS TO FILE LATE CLAIMS**

PB Capital Corporation ("PB Capital") hereby moves to file a limited sur-reply

declaration in response to the Debtors' Supplement To Objections To Requests To File Late

Claims [Docket No. 5960] (the "Debtors' Sur-Reply").  PB Capital submits that its request to file

the following limited sur-reply declaration should be granted to enable it to respond to a new

argument raised for the first time in the Debtors' Sur-Reply, and because new, pertinent

information has come to light since PB Capital filed its Reply.[1]  This information is important

---

[1]      Capitalized terms used but not otherwise defined herein shall have the respective definitions ascribed to
such terms in the Motion Of PB Capital To Include Certain European Medium Term Notes In The Lehman
Program Securities List Or, Alternatively, To Deem Such Claims To Be Timely Filed By The Securities
Programs Bar Date filed on October 22, 2009 [Docket No. 5601] (the "Motion"), the Order Pursuant To
Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(c)(3) Establishing The Deadline
For Filing Proofs Of Claim, Approving The Form And Manner Of Notice Thereof And Approving The
Proof Of Claim Form entered on July 2, 2009 [Docket No. 4271] or PB Capital's Reply To Objection To
The Motion Of PB Capital To Include Certain European Medium Term Notes In The Lehman Program

because it undercuts any remaining argument that the Debtors would suffer legal prejudice, or

that there would be disruption to efficient judicial administration of the bankruptcy cases (i.e.,

open the proverbial floodgates), from the granting of the relief proposed in the Motion.[2]

1.    In their Sur-Reply, the Debtors concede that there are only three other

securities identified by three ISINs (the "Non-PB Capital US ISINs") potentially in the same

position as the EMT Notes held by PB Capital. See Debtors' Sur Reply, ¶ 12 ("[I]t is accurate

that there are only three other securities with an ISIN with a 'US' prefix that were included on

the Initial List but not on the Final List."). However, the Debtors argue that it is unknowable

how many creditors hold securities identified by the Non-PB Capital US ISINs. See id. This

purported uncertainty, the Debtors argue, raised the specter of an open floodgate of additional

claims.

2.    Because it struck us as unintuitive that there would be more than a few

holders of these securities, and because we believed that the relevant information should be

obtainable by reviewing the Debtors' claims register, following the receipt of the Debtors' Sur-

Reply we undertook such a review. Our intuition was correct and the proposed Sur-Reply

Declaration, which is annexed hereto as Exhibit A, confirms that there are at most two holders of

these securities.

3.    There has been no prior application for the relief requested here.

---

Securities List Or, Alternatively, To Deem Such Claims To Be Timely Filed By The Securities Programs
Bar Date filed on November 13, 2009 [Docket No. 5811] (the "Reply").

[2]    There are a number of statements in the Debtors' Sur-Reply that are unsupported and/or untrue, including
the statement that our firm refused a request by the Debtor that we agree to the removal of a security
inadvertently included on the Program Securities List. Because we do not believe these arguments are
material to the matter before the Court and because PB Capital has an acute need to see this matter swiftly
and favorably determined, we will not burden the Court by seeking permission to file a further reply to
address these misstatements.

Dated: New York, New York
December 14, 2009

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Thomas J. Moloney

Thomas J. Moloney
Sean A. O'Neal
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for PB Capital Corporation*

## <u>EXHIBIT A</u>

**Declaration of Jamie Rietema**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                            :

In re                               :         **Chapter 11 Case No.**
                                            :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :         **08-13555 (JMP)**
                                            :

                     **Debtors.**               :        **(Jointly Administered)**
                                            :

---------------------------------------------------------------x

## <u>DECLARATION OF JAMIE RIETEMA</u>

       Pursuant to 28 U.S.C. § 1746, Jamie Rietema declares and says:

       1.      I am a Law Clerk at Cleary Gottlieb Steen & Hamilton LLP.

       2.      As provided in the Rodriguez Declaration and the Reply, the US ISIN securities removed from the July 6 Program Securities List other than the US ISINs held by PB Capital are identified by ISINs US52519VAR78, US52519VAW63 and US52521XAB47 (the "<u>Non-PB Capital US ISINs</u>").  <u>See</u> Rodriguez Declaration, ¶ 12; Reply at 22.[1]

       3.      Beginning on November 30, 2009, I supervised a team of paralegals and attorneys in a review of the Debtors' claim register for claims in respect of the three Non-PB Capital US ISINs.

---

[1]     Capitalized terms used but not otherwise defined herein shall have the respective definitions ascribed to such terms in the Motion Of PB Capital To Include Certain European Medium Term Notes In The Lehman Program Securities List Or, Alternatively, To Deem Such Claims To Be Timely Filed By The Securities Programs Bar Date filed on October 22, 2009 [Docket No. 5601], the Order Pursuant To Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(c)(3) Establishing The Deadline For Filing Proofs Of Claim, Approving The Form And Manner Of Notice Thereof And Approving The Proof Of Claim Form entered on July 2, 2009 [Docket No. 4271] or PB Capital's Reply To Objection To The Motion Of PB Capital To Include Certain European Medium Term Notes In The Lehman Program Securities List Or, Alternatively, To Deem Such Claims To Be Timely Filed By The Securities Programs Bar Date filed on November 13, 2009 [Docket No. 5811] (the "<u>Reply</u>").

4.      Pursuant to that review, we identified claim number 13735 as containing ISIN US52519VAR78.  A true and correct copy of the relevant portion of claim number 13735 is attached hereto as Exhibit 1.  This claim was filed by DWS Communications Fund, Inc. (the "DWS Claim"), in the amount of $14,373,860, in respect of the $12.7 Million Floating Rate Index Linked Redemption Note due October 2008.  As provided on page 16 of the DWS Claim attached hereto, the security represented by ISIN US52519VAR78 is held by DWS Institutional Funds, on behalf of DWS Commodity Securities Fund, the sole beneficial owner of such security.

5.      The other two securities represented by the remaining Non-PB Capital US ISINs, US52519VAW63 and US52521XAB47, are held by "The Commonwealth of Pennsylvania, Public School Employees' Retirement Board" ("Retirement Board"), with Deutsche Investment Management Americas Inc. acting as agent (the "Retirement Board Claim").

6.      Our client, Coleman Gregory of PB Capital, has confirmed with a senior representative of the Retirement Board that it is, in fact, the sole holder of the Retirement Board Claim and that a guarantee questionnaire, attached hereto as Exhibit 2, has been filed in respect of such claim.


[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 14, 2009 in New York, New York.

/s/ Jamie Rietema
Jamie Rietema

## <u>EXHIBIT 1</u>

**Relevant Portion of Claim Number 13735**

| **United States Bankruptcy Court/Southern District of New York**<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

DWS Institutional Funds on behalf of
the DWS Commodity Securities Fund
c/o J. Christopher Jackson
280 Park Avenue
New York, NY 10017

j-christopher.jackson@db.com

Telephone number: (212) 454-6187     Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:     Email Address:

**1.    Amount of Claim as of Date Case Filed:** $ 14,373,860.00

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.    Basis for Claim:** Proceeds from exercise of Structured Notes
(See instruction #2 on reverse side.)

**3.    Last four digits of any number by which creditor identifies debtor:** N/A
**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4.    Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: _____
Value of Property: $_____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____  Basis for perfection: _____
**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____

**6.    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

**5.    Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

**7.    Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.    Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

Date:
9/11/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

_(signature)_

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | |
|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## ___ D E F I N I T I O N S ___     ___ I N F O R M A T I O N ___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the
initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                        )
In re:                                  )
                                        )
LEHMAN BROTHERS                         )        Case No. 08-13555 (JMP)
HOLDINGS INC.,                          )
                                        )
_____ Debtor.          )


**ATTACHMENT TO CUSTOMER PROOF OF CLAIM**
**OF THE DWS INSTITUTIONAL FUNDS ON BEHALF OF**
**THE DWS COMMODITY SECURITIES FUND**

1.      J. Christopher Jackson, Chief Legal Officer of the DWS Institutional Funds on

behalf of the DWS Commodity Securities Fund whose business and mailing address is 280 Park

Avenue, New York, NY 10017, is an authorized signatory of DWS Commodity Securities Fund.

2.      On September 15, 2008 (the "Commencement Date"), Lehman Brothers Holdings

Inc. ("LBHI" or "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the

United States Code.  As more fully described below, as of the Commencement Date, the Debtor

was and still is indebted to DWS Commodity Securities Fund in the aggregate amount of at least

$14,373,860.00.

3.      DWS Commodity Securities Fund held the following structured notes issued by

Lehman Brothers Treasury Co. B.V. ("Lehman Treasury") and guaranteed by LBHI:

$12,700,000 face value Floating Rate Notes linked to the S&P GSCI Total Return Index, with a

maturity date of October 2008, Cusip # 52519VAR7 ("Structured Notes").  The Structured Notes

were redeemable at any time upon at least five business days notice.

4.      On September 10, 2008, the DWS Commodity Securities Fund provided an order

to Lehman Brothers Inc. ("LBI") to liquidate the entire principal amount of the Structured Notes

with a settlement date of September 15, 2008. Although LBI accepted the order and indicated that it had been executed, LBI did not indicate to the DWS Commodity Securities Fund whether it treated the order as a sale to LBI or as a redemption of the Structured Notes. LBI informed the DWS Commodity Securities Fund that the total net proceeds from the liquidation were $14,373,860.00. A copy of the electronic confirmation provided by LBI to the DWS Commodity Securities Fund for the Structured Notes transaction is attached as Exhibit A.

5.      The DWS Commodity Securities Fund attempted delivery of the Structured Notes for settlement 10 times in accordance with LBI's instructions, including 2 delivery attempts on September 15, 2008 and 2 additional attempts on September 16, 2008. After failing to receive payment, on September 19, 2008 and again on October 8, 2008, the DWS Commodity Securities Fund sent a request for payment of the proceeds with respect to its liquidation order to LBI, Lehman Treasury and LBHI, as guarantor. The September 19, 2008 letter and October 8, 2008 e-mail are attached as Exhibits B and C, respectively.

6.      As stated in the term sheet for the Notes, LBHI is guarantor and thus is liable for the obligations of the issuer of the Notes, including payment of redemption proceeds. The guarantee is an unqualified guarantee of payment and does not require claimants to first seek to collect from Lehman Treasury. The term sheet for the Structured Notes is attached as Exhibit D.

7.      In the event that its order to liquidate is characterized as a redemption request with respect to the Structured Notes, the DWS Commodity Securities Fund reserves its right to file a claim against Lehman Treasury in its insolvency proceeding in Amsterdam once that tribunal publishes procedures regarding the filing of claims and to claim against LBHI under the guarantee.

8.      In the event that its order to liquidate the Structured Notes is characterized as a sale, the DWS Commodity Securities Fund reserves its right and has filed a SIPC claim for the proceeds for the Structured Notes transaction in the LBI SIPC proceeding on January 27, 2009. Documentation of this claim is attached as Exhibit E.

9.      In executing and filing this proof of claim, DWS Commodity Securities Fund does not submit itself to the jurisdiction of this Court for any purpose other than that set forth in this proof of claim, and does not waive (i) any of its rights and remedies against any other person or entity who may be liable for all or part of the claim set forth herein, whether an affiliate, assignee, guarantor or otherwise, of the Debtor, (ii) any other obligation owed to DWS Commodity Securities Fund and rights of off-set, (iii) any past, present or future defaults (or events of default) by the Debtor, or (iv) any right to seek to withdraw the reference with respect to the subject matter of this claim or any objection, counterclaim or other proceeding commenced with respect thereto. The filing of this proof of claim is not an election of remedies.

10.     DWS Commodity Securities Fund expressly reserves the right to amend or supplement this proof of claim in any respect at any time in the future, including, without limitation, in respect of additional amounts.

Dated: September _//_ , 2009

                                        DWS COMMODITY SECURITIES FUND

                                        By: _____

                                        J. Christopher Jackson
                                        Chief Legal Officer of the
                                        DWS Institutional Funds on behalf of
                                        the DWS Commodity Securities Fund

3

# Exhibit A

11111111111111409/24/200809/24/200809:44:31 AM    Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)



**DeepakDhananjay Patel/db/dbcom**
09/24/2008 08:43 AM

To  Rabuan-Trevor Davadesen/db/dbcom@DBAmericas
cc
bcc
Subject  Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)





**"Bilberg, Jacob"**
<jacob.bilberg@lehman.com>
09/15/2008 12:14 PM

To  Tanveer-K Inamdar/db/dbcom@DBAmericas
cc  DeepakDhananjay Patel/db/dbcom@DBAmericas, <Dina.Spirou@lehman.com>, Naveen-C N/db/dbcom@DBAmericas, "Kurovskaya, Olga" <olga.kurovakaya@lehman.com>, Raj-K Singh/db/dbcom@DBAmericas, Sakshi Kochar/db/dbcom@DBAmericas, "Gupta, Shikha" <Shikha.Gupta@lehman.com>, Sushant Suman/db/dbcom@DBAmericas, <ts@list.db.com>
Subject  RE: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi,

Unfortunately, I have been notified that until further notice we will not be settling trades via DTC I do not know when the status will change, but I will keep you updated as soon as I find out

Please feel free to contact me with any questions

Regards,
Jacob

**Jacob Bilberg | Commodities Derivatives**
**LEHMAN BROTHERS** | jbilberg@lehman.com
745 7th Ave., 16th Floor, New York, NY 10019
Tel: 212.526.7120 | Fax: 646-834-4615

---

**From:** Tanveer-K Inamdar [mailto:tanveer-k.inamdar@db.com]
**Sent:** Monday, September 15, 2008 10:45 AM
**To:** Bilberg, Jacob
**Cc:** DeepakDhananjay Patel; Dina.Spirou@lehman.com; Naveen-C N; Kurovskaya, Olga; Raj-K Singh; Sakshi Kochar; Gupta, Shikha; Sushant Suman; ts@list.db.com
**Subject:** RE: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

2222222222222224409/24/200809/24/200809:44:31 AM    Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi Jacob,

The below Structured note is settling today. Please inform if everything is well for settlement.

Do confirm once the paymeny is made.

Thanks,



"Bliberg, Jacob"
<jacob.bliberg@lehm
en.com>

09/11/2008 02:38 PM

To Sushant Suman/db/dbcom@DBAmericas
cc "Kurovskaya, Olga" <olga.kurovskaya@lehman.com>, "Gupta, Shikha"
<Shikha.Gupta@lehman.com>, <ts@list.db.com>, <Dina.Spirou@lehman.com>, Sakshi
Kocher/db/dbcom@DBAmericas, DeepakDhananjay Patel/db/dbcom@DBAmericas,
Naveen-C N/db/dbcom@DBAmericas, RajK Singh/db/dbcom@DBAmericas, Tanveer-K
Inamdar/db/dbcom@DBAmericas, <s@list.db.com>
Subject RE: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi,

We confirm details. You will be delivering the shares delivery versus payment to Lehman, DTC074,
and we will release the cash amount to the account listed below, CPAFGB88X2 - DTC 954.

Thanks,
Jacob

**Jacob Bliberg | Commodities Derivatives**
**LEHMAN BROTHERS** | jbtliberg@lehman.com
745 7th Ave., 16th Floor, New York, NY 10019
Tel: 212.526.7120 | Fax: 646-834-4615

From: Sushant Suman [mailto:sushant.suman@db.com]
Sent: Thursday, September 11, 2008 2:29 PM
To: Bliberg, Jacob

33333333333333334409/24/200809/24/200809;44:31 AM       Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

**Cc:** Kurovskaya, Olga; Gupta, Shikha; ts@list.db.com; Dina.Spirou@lehman.com; Sakshi Kochar; DeepakDhananjay Patel; Naveen-C N; Raj-K Singh; Tanveer-K Inamdar; ts@list.db.com

**Subject:** 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi Jacob,

DB Sell 3 Note to Lehman on TD- 9/10 . Please confirm the below trade details & the settlement date

Cusip : 52519VAW6 Notional: *$10.55mm.*
03007F1 - please deliver the payment of  $ 10,354,825 mm to Mellon Ref A/c - CPAFGE366X2 to
***Mellon DTC -954***on VD:09/15, and in return receive notes from mellon

Cusip : 52519VAR7 Notional: *$12.7mm.*
03007F1 -please deliver the payment of  $ 14,373,860mm to Mellon Ref A/c - CPAFGE366X2  to
***Mellon DTC - 954***on VD:09/15, and in return receive notes from mellon

Cusip : 52521XAB4 Notional: *$34.3mm.*
02550F1 - please deliver the payment of $ 26,085,150mm  to Mellon Ref A/c - CPAFGE366X2 to
***Mellon DTC -954***on VD:09/15, and in return receive notes from mellon

Also please confirm your DTC no.

Regards,



—

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only
for the personal and confidential use of the designated recipient(s) named above. If you are
not the intended recipient of this message you are hereby notified that any review,
dissemination, distribution or copying of this message is strictly prohibited. This
communication is for information purposes only and should not be regarded as an offer to sell
or as a solicitation of an offer to buy any financial product, an official confirmation of any
transaction, or as an official statement of Lehman Brothers. Email transmission cannot be
guaranteed to be secure or error-free. Therefore, we do not represent that this information is
complete or accurate and it should not be relied upon as such . All information is subject to

4444444444444444409/24/200809/24/200809:44:31 AM    Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

--

This e-mail may contain confidential and/or privileged information. If you are not the intended recipient (or have received this e-mail in error) please notify the sender immediately and destroy this e-mail. Any unauthorized copying, disclosure or distribution of the material in this e-mail is strictly forbidden.

-------------------------------------------- This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# Exhibit B



**Deutsche Asset Management**
A Member of the Deutsche Bank Group

Deutsche Investment Management Americas Inc.
345 Park Avenue
New York, NY 10154-0010

Tel 212 454 6260

www.deam-us.db.com

### Request for Payment of Proceeds of Structured Notes Issued
### by Lehman Brothers Treasury Co. B.V.

**$34.3 million of the Floating Rate Index Linked Redemption Amount Notes due June 2009 linked to the Dow Jones-AIG Commodity Total Return Index,**
**$12.7 million of the Floating Rate Index Linked Redemption Amount Notes due October 2008 linked to the S&P GSCI Total Return Index**
**$10.55 million of the Floating Rate Index Linked Redemption Notes due February 2009 linked to the Dow Jones-AIG Commodity Total Return Index**


To:  Lehman Brothers Treasury Co. B.V.
c/o Lehman Brothers Holdings, Inc.
Attn: Treasurer
745 Seventh Avenue
New York, NY 10019


We understand that pursuant to e-mail instructions given by us to your agent, Lehman Brothers, Inc., on September 11, 2008, you redeemed the entire principal amount of each note listed below: (1) $34.3 million of the Floating Rate Index Linked Redemption Amount Notes due June 2009 linked to the Dow Jones-AIG Commodity Total Return Index (the "DJ 2009 Notes"), (2) $12.7 million of the Floating Rate Index Linked Redemption Amount Notes due October 2008 linked to the S&P GSCI Total Return Index (the "GSCI Notes") and (3) $10.55 million of the Floating Rate Index Linked Redemption Amount Notes due February 2009 linked to the Dow Jones-AIG Commodity Total Return Index (the "DJ 144A 2009 Notes" and, together with the DJ 2009 Notes and the GSCI Notes, the "Notes").  In accordance with your electronic confirmation issued to us on September 11, 2008, we understand that you accepted our redemption request with respect to each of the Notes (collectively, the "Trades").  Please note that, prior to redemption, the Notes had been held by: the Commonwealth of Pennsylvania, Public School Employees' Retirement Board ("PSERS"), which owned the DJ 2009 Notes and the DJ 144A 2009 Notes, and the DWS Institutional Funds, on behalf of DWS Commodity Series ("DWS Commodity Series"), which owned the GSCI Notes.

We request that you settle the Trades promptly by wiring the redemption proceeds in full into the accounts specified below.  Settlement instructions are as follows:

Deutsche Asset Management is the marketing name in the US for the asset management activities of Deutsche Bank AG, Deutsche Bank Trust Company Americas, Deutsche Bank Securities, Inc., Deutsche Asset Management Inc., Deutsche Asset Management Investment Services Ltd., Deutsche Investment Management (Americas) Inc. and Scudder Trust Company.

## Deutsche Asset Management
### A Member of the Deutsche Bank Group



1.  DJ 2009 Notes (Cusip: 52521XAB4, Notional: $34.3 mm) - *Deliver to your DTC 074 from ***Mellon DTC -954*** VD:09/15, 03007FI - please MAKE payment of $ 26,085,150 mm.*

2.  GSCI Notes (Cusip: 52519VAR7 Notional: $12.7 mm)- *Deliver to your DTC 074 from ***BBH DTC -10*** VD:09/15, 02550FI - please MAKE payment of $ 14,373,860 mm.*

3.  DJ 144A 2009 Notes (Cusip: 52519VAW6, Notional: $10.55 mm)- *Deliver to your DTC 074 from ***Mellon DTC -954*** VD:09/15, 03007FI - please MAKE payment of $10,354,825 mm.*

In the event that the Trades have not yet been completed, we hereby give you notice that we are exercising our right to redeem the Notes in full as described in the Term Sheet for each of the Notes (each, a "Term Sheet"). We have attached the Put Option Notices as defined each Note's Term Sheet and copied the Fiscal Agent for the Notes. We understand that the issuer of the Notes, Lehman Brothers Treasury Co. B.V., has not filed for bankruptcy and therefore, should forward the proceeds from the original Trades or pursuant to the attached Put Option Notices, as applicable.

Should you have any questions, please feel free to contact Thomas Tomchak at 212-454-6325 and Theresa Gusman at 970-922-0332.

Very truly yours,

Deutsche Investment Management Americas Inc., as agent
for PSERS and DWS Commodity Series, and not in
its individual capacity.

Date: September 19, 2008

cc:    Lehman Brothers Treasury Co. B.V.
       Attn: L. Kho
       Atrium, Strawinskylann 3105, 1077 2X
       Amsterdam, The Netherlands

Deutsche Asset Management is the marketing name in the US for the asset management activities of Deutsche Bank AG, Deutsche Bank Trust Company Americas, Deutsche Bank Securities Inc., Deutsche Asset Management Inc., Deutsche Asset Management Investment Services Ltd., Deutsche Investment Management America Inc. and Scudder Trust Company.

**Deutsche Asset Management** 

A Member of the Deutsche Bank Group

Lehman Brothers Treasury Co. B.V.
Attn: Rumoldus de Schutter, Director
Atrium, Strawinskylann 3105, 1077 2X
Amsterdam, The Netherlands

Lehman Brothers Treasury Co. B.V.
Attn: Wolbert Kamphuijs, Director
Atrium, Strawinskylann 3105, 1077 2X
Amsterdam, The Netherlands

The Bank of New York
Attn: Fiscal Agent for Lehman Brothers Treasury Co. B.V.
One Canada Square
London EI4 5AL

Miki Herrick, Esq.
Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019

Allyson Carine
Lehman Brothers Inc.
Transaction Management Group
1271 Ave of Americas, 43rd floor
New York, NY 10019

Deutsche Asset Management is the marketing name in the US for the asset management activities of Deutsche Bank AG,
Deutsche Bank Trust Company Americas, Deutsche Bank Securities Inc., Deutsche Asset Management Inc., Deutsche Asset
Management Investment Services Ltd., Deutsche Investment Management America Inc. and Scudder Trust Company.

# Exhibit C

**Thomas
Tomchak/db/dbcom**

Toinfo.lbtreasurybv@houthoff.com

10/08/2008 04:30
PM

ccThomas Connors/db/dbcom@DBAmericas, Igor
Abramov/db/dbcom@DBAmericas

SubjectClaim for Notes issued by Lehman Brothers Treasury Co. B.V. --
(i) $34.3 million Notes (Cusip: 52521XAB4); (ii) $12.7 million
Notes (Cusip: 52519VAR7) and (iii) $10.55 million Notes (Cusip:
52519VAW6)

In connection with the above-referenced claim, we submit the following details:

*a. Name, postal address and e-mail of the beneficial owner of the notes;*

(i) $34.3 Million of Floating Rate Index Linked Redemption Amount Notes due June 2009
linked to the Dow Jones-AIG Commodity Total Return Index (Cusip 52521XAB4) –
Redemption Proceeds Owed -- $26,085,150

**The Commonwealth of Pennsylvania, Public School Employees' Retirement
Board
c/o Deutsche Investment Management Americas Inc., as agent
345 Park Avenue, 25th Floor
New York, NY 10154
Attention: Thomas J. Tomchak
Director, Active Equity Middle Office and Business Management
email: thomas.tomchak@db.com**

(ii) $12.7 Million of Floating Rate Index Linked Redemption Amount Notes due October 2008
linked to the S&P GSCI Total Return Index (Cusip 52519VAR7) - Redemption Proceeds Owed -
- $14,373,860

**DWS Institutional Funds, on behalf of DWS Commodity Securities Fund
c/o Deutsche Investment Management Americas Inc., as agent
345 Park Avenue, 25th Floor
New York, NY 10154
Attention: Thomas J. Tomchak**
**Director, Active Equity Middle Office and Business Management**
**email: thomas.tomchak@db.com**

(iii) $10.55 Million of Floating Rate Index Linked Redemption Amount Notes due February
2009 linked to the Dow Jones-AIG Commodity Total Return Index (Cusip 52519VAW6) -
Redemption Proceeds Owed -- $10,354,825

**The Commonwealth of Pennsylvania, Public School Employees' Retirement
Board
c/o Deutsche Investment Management Americas Inc., as agent
345 Park Avenue, 25th Floor
New York, NY 10154
Attention: Thomas J. Tomchak**
**Director, Active Equity Middle Office and Business Management**

email: thomas.tomichak@db.com

**b. Details of the note issue and the related issue program.**

(i) $34.3 Million of Floating Rate Index Linked Redemption Amount Notes due June 2009 linked to the Dow Jones-AIG Commodity Total Return Index (Cusip 52521XAB4; ISINUS52521XAB47), issued under a Final Term sheet dated 30 June 2008, through Lehman Brothers Inc., 745 Seventh Avenue, New York, NY 10019 USA, as permitted by Rule 144A under the U.S. Securities Act of 1933 and a Based Prospectus, dated July 24, 2007, for a U.S. $100,000,000,000 Euro Medium-Term Note Program, of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, unconditionally and irrevocably guaranteed by Lehman Brothers Holdings Inc., Naming as Arranger and Dealer, Lehman Brothers.

(ii) $12.7 Million of Floating Rate Index Linked Redemption Amount Notes due October 2008 linked to the S&P GSCI Total Return Index (Cusip 52519VAR7; ISIN US52519VAR78), issued under a Final Term sheet dated 19 October 2007, through Lehman Brothers Inc., 745 Seventh Avenue, New York, NY 10019 USA, as permitted by Rule 144A under the U.S. Securities Act of 1933 and a Based Prospectus, dated July 24, 2007, for a U.S. $100,000,000,000 Euro Medium-Term Note Program, of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, unconditionally and irrevocably guaranteed by Lehman Brothers Holdings Inc., Naming as Arranger and Dealer, Lehman Brothers.

(iii) $10.55 Million of Floating Rate Index Linked Redemption Amount Notes due February 2009 linked to the Dow Jones-AIG Commodity Total Return Index (Cusip 52519VAW6; ISIN U.S. 52519VAW63) issued under a Final Term sheet dated 2 January, 2008, through Lehman Brothers Inc., 745 Seventh Avenue, New York, NY 10019 USA, as permitted by Rule 144A under the U.S. Securities Act of 1933 and a Based Prospectus, dated July 24, 2007, for a U.S. $100,000,000,000 Euro Medium-Term Note Program, of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, unconditionally and irrevocably guaranteed by Lehman Brothers Holdings Inc., Naming as Arranger and Dealer, Lehman Brothers.

**c. The security (ISIN) code of the note;**

(i) ISINUS52521XAB47

(ii) ISIN US52519VAR78

(iii) ISIN U.S. 52519VAW63

**d. The broker, agent or bank who acted in the purchase of the notes;**

For all three, Lehman Brothers Inc., 745 Seventh Avenue, New York, NY 10019 USA.

**e. The principal amount outstanding under the notes.**

(i) ISINUS52521XAB47 - $34.3 Million

(ii) ISIN US52519VAR78 - $12.7 Million

(iii) ISIN U.S. 52519VAW63 - $10.55 Million

**f. Other –**

On September 10, 2008, Deutsche Asset Management tendered each of the Notes for redemption. On September 11, 2008, 2:29 PM, Suman Sushant, of Deutsche Asset Management, sent an email to Jacob Bliberg, of Lehman Brothers Inc. confirming the redemption as of

September 9, 2008 with the following delivery information:

Cusip: 52519VAW6 Notional: $10.55mm.; 03007FI – please deliver the payment of $10,354,825 mm to Mellon Ref A/c – CPAFGE366X2 to ***Mellon DTC-954*** pm VD:9/15, and in return receive notes from mellon

Cusip: 52519VAR7 Notional: $12.7mm.; 03007FI – please deliver the payment of $14,373,860mm to Mellon Ref A/c-CPAFGE366X2 to ***Mellon DTC-954*** pm VD:9/15, and in return receive notes from mellon

Cusip: 52521XAB4 Notional: $34.3mm.; 02550FI – please deliver the payment of $26,085,150mm to Mellon Ref A/c-CPAFGE366X2 to ***Mellon DTC-954*** pm VD:9/15, and in return receive notes from mellon

This email was confirmed the same day by an email from Jacob Bliber, Commodities Derivatives, Lehman Brothers Inc., 745 7th Avenue, 16th floor, New York, NY 10019, Tel: 212-536-7120; Fax: 646-834-4615 stating "We confirm details. You will be delivering the shares delivery versus payment to Lehman, DTC 074, and we will release the cash amount to the account listed below, CPAFGE366X2 – DTC 954."

Deutsche Asset Management and the beneficial owners have not received the proceeds for the Notes notwithstanding that they tendered the Notes for redemption twice – once on September 15, 2008 and once on September ___, 2008.

Should you have any questions on this, please contact either of the following representatives of Deutsche Asset Management:

Thomas J. Tomchak
Director, Active Equity Middle Office and Business Management
Deutsche Asset Management
345 Park Avenue, 25th Floor
New York, NY 10154
Phone: 212 454-6325
Mobile: 917-841-4314
email: thomas.tomchak@db.com

Thomas H. Connors
Director, Legal Department
Deutsche Asset Management/DWS Funds
One Beacon Street, 14th Floor
Boston, NA 02108-3106
Phone: 617 295-3357
Fax: 617 295-4326
email: thomas.connors@db.com

Igor Abramov
Vice President & Counsel
Deutsche Asset Management
280 Park Avenue, NYCO3-0620
New York, New York 10017
Tel: (212) 454-3794

Fax: (646) 257-3317
E-mail: igor.abramov@db.com

We would appreciate your emailing updates to us at the following addresses, which include addresses for our U.S. and Dutch counsel:

thomas.tomchak@db.com
thomas.connors@db.com
frans.haak@steklaw.com
gbullitt@morganlewis.com
igor.abramov@db.com

cc: Houthoff Buruma N.V.
Attn: Messrs. F. Verhoeven and M.F. Horck
P.O. Box 75505
NL-1070 AM Amsterdam
The Netherlands

Thanks,

Thomas J. Tomchak
Director, Active Equity Middle Office and Business Management
Deutsche Asset Management
345 Park Avenue 25th Floor
New York, New York 10154
Phone: 212 454-6325
Mobile: 917 841-4314

Administrative Assistant: Melissa Jauss 212-454-7223

# Exhibit D

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

Final Terms dated 19 October 2007

## LEHMAN BROTHERS TREASURY CO. B.V.
*(incorporated with limited liability in The Netherlands and
having its statutory domicile in Amsterdam)*
Issue of
USD 12,700,000  Floating Rate Index Linked Redemption Amount Notes due October 2008
linked to the S&P GSCI™ Total Return Index
and a U.S. Treasury Bill return rate
unconditionally and irrevocably guaranteed by
## LEHMAN BROTHERS HOLDINGS INC.
*(incorporated in the State of Delaware)*

under the USD 100,000,000,000 Euro Medium-Term Note Program

### PART A - CONTRACTUAL TERMS

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the base prospectus dated 24 July, 2007 for the USD 100,000,000,000 Euro Medium-Term Note Program for the issuance of mid-term notes by Lehman Brothers Holding Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, as supplemented by the Base Prospectus Supplements dated 20 September 2007 and 15 October 2007, which together constitute a base prospectus (the "Base Prospectus"). This document constitutes the Final Terms of the Notes described herein and must be read in conjunction with such Base Prospectus. Full information on the Issuer and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus.

| | | |
|---|---|---|
| 1. | (i) Issuer: | Lehman Brothers Treasury Co. B.V. |
| | (ii) Guarantor: | Lehman Brothers Holdings Inc. |
| 2. | (i) Series Number: | 8733 |
| | (ii) Tranche Number: | 1 |
| 3. | Specified Currency or Currencies: | United States Dollars ("USD") |
| 4. | Aggregate Nominal Amount: | |
| | (i) Series: | USD 12,700,000 |
| | (ii) Tranche: | USD 12,700,000 |
| 5. | Issue Price: | 100.00 per cent. of the Aggregate Nominal Amount |
| 6. | Specified Denomination: | USD 100,000. The Notes are transferable in a minimum aggregate Nominal Amount of USD 100,000. |
| 7. | Issue Date: | 22 October 2007 |
| 8. | Maturity Date: | 23 October 2008, subject to adjustment in accordance with the Modified Following Business Day Convention (the "Scheduled Maturity Date"); *provided that*, if as a result of a Market |

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

Disruption Event (as defined in Appendix 1) the Valuation Date (as defined in Appendix 1) for one or more Index Contracts (as hereinafter defined) is postponed pursuant to paragraph 4 (*Market Disruption Events*) of Appendix 1 so that it falls less than three Business Days prior to the Scheduled Maturity Date, the Maturity Date will be the third Business Day following the latest occurring postponed Valuation Date.

9.    Interest Rate:

1-Month USD-LIBOR-BBA Floating Rate minus the Margin (see paragraph 16)

10.    Redemption/Payment Basis:

Index Linked Redemption Amount. See Appendix 1.

The Notes are subject to mandatory early redemption in whole following the occurrence of a Mandatory Early Redemption Event (as defined in Appendix 1). The Notes are also subject to redemption in whole at the option of the Holder. See Appendix 1 and paragraphs 21, 22 and 23 below.

11.    Change of Interest or Redemption/Payment Basis:

Not Applicable

12.    Put/Call Options:

Condition 8(e) (*Redemption at the Option of Noteholders*) applies subject as provided in paragraph 21 below

13.    (i)    Status of the Notes:

Senior Notes

    (ii)    Status of the Guarantee:

Senior Guarantee

14.    Method of distribution:

Non-syndicated

## PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE

15.    Fixed Rate Note Provisions

Not Applicable

16.    Floating Rate Note Provisions

Applicable. Interest calculated at the Interest Rate and compounded on a monthly basis for each Interest Period will be payable on the Notes on the Interest Payment Date. Such interest will be calculated by the Calculation Agent in accordance with the following formula:

$$\left[ \left\{ 1 + \left( R_1 * \frac{D}{360} \right) \right\} * \left\{ 1 + \left( R_2 * \frac{D_2}{360} \right) \right\} * .....* \left\{ 1 + \left( R_n * \frac{D_n}{360} \right) \right\} \right] - 1$$

where

$R_1$ , $R_2$, ....$R_n$ denotes the Interest Rate for the relevant Interest Period

$D_1$ , $D_2$, ....$D_n$ denotes the actual number of calendar days in the

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

relevant Interest Period and

$n$ denotes the final Interest Period

| | | | |
|---|---|---|---|
| (i) | Interest Period(s)/Interest Payment Date(s): | For the purpose of calculating interest: | |
| | | (a) | each Interest Period will be from and including one Interest Reset Date (or the Issue Date, in the case of the first Interest Period) to but excluding the next succeeding Interest Reset Date (or the Maturity Date, Optional Redemption Date or Mandatory Early Redemption Date, in the case of the final Interest Period); and |
| | | (b) | the Interest Reset Dates will be the 22nd day of each month from and including 22 November 2007 to and including 22 September 2008, in each case subject to adjustment in accordance with the Business Day Convention. |

The Interest Payment Date will be the Maturity Date or, if applicable, the Mandatory Early Redemption Date or Optional Redemption Date.

| | | |
|---|---|---|
| (ii) | Business Day Convention: | Modified Following Business Day |
| (iii) | Additional Business Centre(s) for interest accrual only (Condition 3(b)(B)): | Not Applicable |
| (iv) | Manner in which the Rate(s) of Interest is/are to be determined: | Screen Rate Determination |
| (v) | Party responsible for calculating the Rate(s) of Interest and Interest Amount(s) (if not the Fiscal Agent): | Lehman Brothers Inc. shall be the Calculation Agent |
| (vi) | Screen Rate Determination: | |
| | – Reference Rate: | 1 month USD LIBOR BBA |
| | – Interest Determination Date(s): | Second London business day prior to the start of each Interest Period |
| | – Relevant Screen Page: | Reuters page LIBOR01 |
| | – Relevant Time: | 11.00 a.m. London Time |
| | – Relevant Financial Centre: | London |
| (vii) | ISDA Determination: | Not Applicable |

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

| | | |
|---|---|---|
| (viii) | Margin(s): | - 0.27 per cent |
| (ix) | Multiplier: | Not Applicable |
| (x) | Minimum Interest Rate: | Not Applicable |
| (xi) | Maximum Interest Rate: | Not Applicable |
| (xii) | Day Count Fraction: | Actual/360 |
| (xiii) | Fall back provisions, rounding provisions, denominator and any other terms relating to the method of calculating interest on Floating Rate Notes, if different from those set out in the Conditions: | Not Applicable |

17.  Zero Coupon Note Provisions          Not Applicable

18.  Index-Linked Interest Note/other          Not Applicable
     variable-linked interest Note
     Provisions

19.  Dual Currency Note Provisions          Not Applicable

PROVISIONS RELATING TO REDEMPTION

20.  Call Option                              Not Applicable

21.  Put Option                              Applicable as provided herein at the option of the Holder of all
                                             the Notes by giving a Put Option Notice (as hereafter defined) on
                                             any Index Business Day during the Observation Period requiring
                                             the Issuer to redeem the Notes in whole on the related Optional
                                             Redemption Date at the relevant Optional Redemption Amount.

     (i)   Optional Redemption Date(s):      The fifth Business Day following the Optional Redemption
                                             Amount Determination Date (as hereafter defined); *provided that*
                                             if the Optional Redemption Amount Determination Date is
                                             postponed due to the occurrence of a Market Disruption Event (as
                                             defined in Appendix 1) the Optional Redemption Date shall be
                                             postponed to the fifth Business Day following the postponed
                                             Optional Redemption Amount Determination Date.

                                             As used herein:

                                             "Optional Redemption Amount Determination Date" means
                                             the Notice Date (as defined below); *provided that* if the Optional
                                             Redemption Amount Determination Date is postponed due to the
                                             occurrence of a Market Disruption Event (as defined in Appendix
                                             1) the Optional Redemption Date shall be postponed to the fifth
                                             Business Day following the postponed Optional Redemption

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

Amount Determination Date.

"Notice Date" means the Index Business Day on which the Put Option Notice is deemed to be provided; any such Put Option Notice shall be deemed to be provided on the date on which it is received by the Issuer, provided that if such notice is received after 10:00 a.m. New York Time on such Index Business Day, such notice shall be deemed to have been provided on the immediately following Index Business Day.

| | | | |
|---|---|---|---|
| (ii) | Optional Redemption Amount(s) of each Note and method, if any, of calculation of such amount(s): | | An amount in the Specified Currency in respect of each Note equal to the product of the Specified Denomination and the Strategy Performance (as defined in Annex 1) as of the Optional Redemption Amount Determination Date together with interest accrued in respect of the period from and including the Issue Date to but excluding the Optional Redemption Date. |
| (iii) | If redeemable in part: | | |
| | (a) | Minimum Redemption Amount: | Not Applicable |
| | (b) | Higher Redemption Amount: | Not Applicable |
| (iv) | Notice period (if other than as set out in the Conditions): | | Five Business Days. |
| (v) | Notice procedures: | | In order to exercise the put option, the Holder of the Notes must submit a put option notice (a "Put Option Notice") to the Fiscal and Principal Paying Agent within the notice period set out in paragraph 21(iv) above. A form of the Put Option Notice is appended to these Final Terms (see Appendix 8). An investor holding interests in the Notes through accounts with the Depository Trust Company must look to the rules and procedures of the Depository Trust Company from time to time to determine the appropriate method of giving instructions to exercise the put option. |
| 22. | Final Redemption Amount of each Note: | | See Appendix 1 |
| 23. | Early Redemption Amount of each Note | | |
| | Early Redemption Amount(s) of each Note payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in the | | The Early Redemption Amount (as defined in Appendix 1) as of such day as is determined by the Calculation Agent in its sole and absolute discretion |

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

Conditions):

## GENERAL PROVISIONS APPLICABLE TO THE NOTES

24. Form of Notes:      Interests in a global Note in registered form that are exchangeable for definitive Notes in registered form in the limited circumstances specified in the global Note.

25. Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature):      Not Applicable

26. Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment:      Not Applicable

27. Details relating to Instalment Notes: Instalment Amounts and Instalment Dates:      Not Applicable

28. Details relating to Extendible Notes:      Not Applicable

29. Consolidation provisions:      The provisions in Condition 18 (*Further Issues of Notes*) apply

30. Other final terms:      See Appendix 1

## DISTRIBUTION

31. (i) If syndicated, names and addresses of Managers and underwriting commitments:      Not Applicable

     (ii) Date of Syndicated Trade Agreement:      Not Applicable

     (iii) Stabilizing Manager (if any):      Not Applicable

32. If non-syndicated, name and address of Dealer:      Lehman Brothers Inc.
745 Seventh Avenue, New York, NY 10019 USA

33. Total commission and concession:      Not Applicable

34. Selling restrictions:

     (i) Netherlands Selling Restrictions:      Not Applicable

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

| | | |
|---|---|---|
| (ii) | Additional Selling Restrictions: | The Notes may not be offered or sold except (i) as permitted by Rule 144A to qualified institutional buyers within the meaning of Rule 144A or (ii) outside the United States in reliance on Regulation S under the Securities Act |

35. **Non-exempt Offer:**          Not Applicable

Signed on behalf of the Issuer:

By: ................................                  ................................

W. H. KAMP HUIS                      R. G. A. DE SCHUTTER
Duly Authorised                          Duly Authorised

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

## PART B - OTHER INFORMATION

1. **LISTING AND ADMISSION TO TRADING APPLICATION**

   (i) Listing:                    Not Applicable

   (ii) Admission to trading:      Not Applicable


2. **RATINGS**

   The Notes have not been rated.

3. **NOTIFICATION**

   Not Applicable.

4. **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

   Information not provided.

5. **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES**

   Information not provided.

6. **YIELD (Fixed Rate Notes Only)**

   Not Applicable

7. **HISTORIC INTEREST RATES**

   Not Applicable

8. **PERFORMANCE OF INDEX/FORMULA/other variable, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS and other information concerning the underlying (INDEX-LINKED OR OTHER VARIABLE -LINKED NOTES ONLY)**

   See Appendix 2 ("Risk Factors") and Appendix 4 ("The Index")

9. **PERFORMANCE OF RATES OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (DUAL CURRENCY NOTES ONLY)**

   Not Applicable

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

10.    OPERATIONAL INFORMATION

CUSIP Number:                                      52519V AR 7

ISIN:                                              US52519VAR78

Any clearing system(s) other than Euroclear      The Depository Trust Company
Bank S.A./N.V. and Clearstream Banking
Societe      Anonyme    and    the    relevant
identification number(s):

Delivery:                                         Delivery against payment

Names and addresses of Additional Paying          Not Applicable
Agent(s) (if any):

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

## Appendix 1

1. **Definitions**

For the purposes of these Final Terms:

"**Calculation Agent**" means Lehman Brothers Inc. of 745 Seventh Avenue, New York, NY 10019, USA;

"**Early Redemption Amount**" means, as of any date (including without limitation any Optional Redemption Amount Determination Date or Mandatory Early Redemption Amount Determination Date), an amount in the Specified Currency in respect of each Note equal to the product of the Specified Denomination and the Strategy Performance as of such date together with interest accrued in respect of the period from and including the Issue Date to but excluding such early redemption date;

"**Final Index Value**" means, subject to paragraph 5 (*Matters affecting the Index*) below, the Index Value as of the Valuation Date;

"**Index**" means, subject to paragraph 5 (*Matters affecting the Index*) below, the S&P GSCI™ Total Return Index (Bloomberg code: SPGCCITR);

"**Index Business Day**" means a day, as determined in good faith by the Calculation Agent, on which trading is generally conducted on the Relevant Exchange for each Index Contract then comprising the Index or any Successor Index; and "**Index Business Day$_t$**" denotes any Index Business Day during the Observation Period ("t" denoting any day during the Observation Period);

"**Index Contracts**" means, at any time, the commodities contracts then underlying the Index or any Successor Index;

"**Index Sponsors**" means Standard & Poor's, a division of The McGraw-Hill Companies Inc. or such other corporation(s) or other entity(ies) that (a) is or are responsible for setting and reviewing the rules and procedures and the methods of calculation and adjustments, if any, related to the Index and (b) announce(s) (directly or through an agent) the level of the Index on a regular basis during each Index Business Day, as determined by the Calculation Agent;

"**Index Unavailability Event**" means that the Index is not calculated by the Index Sponsors and published by Dow Jones or any Successor Index is not calculated and published by the sponsors thereof.

"**Index Value** " means, on an Index Business Day, the closing level of the Index on that Index Business Day as determined and published by the Index Sponsors (subject to the occurrence of a Market Disruption Event or an Index Unavailability Event), rounded to three decimal places;

"**Initial Index Value** " means 6893.201;

"**Market Disruption Event**" means the occurrence or existence of any of the following, as determined in good faith by the Calculation Agent: (A) the termination or suspension of, or material limitation or disruption in the trading on a Relevant Exchange of an Index Contract; (B) the settlement price on a Relevant Exchange of an Index Contract has increased or decreased by an amount equal to the maximum permitted price change from the previous day's

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

settlement price; or (C) the settlement price of an Index Contract is not published by the Relevant Exchange. Notwithstanding the foregoing, the following events will not constitute Market Disruption Events: (1) a limitation on the hours in a trading day and/or number of days of trading, if it results from an announced change in the regular business hours of the Relevant Exchange; or (2) a decision to permanently discontinue trading in an Index Contract or options or futures contracts relating to the Index or any Index Contract.

"Observation Period" means the period from and including the Issue Date to and including the Valuation Date;

"Relevant Exchange" means, in respect of each Index Contract, any organized exchange or market of trading for such Index Contract, as determined by the Calculation Agent;

"Relevant Index Business Day" means, in respect of an Index Business Day and (i) where a redemption prior to the Scheduled Maturity Date is scheduled to occur as a result of an exercise by a Noteholder of its rights under Condition 8(e) (*Redemption at the Option of Noteholders*), (x) if the Put Option Notice to the Issuer to exercise such redemption was provided prior to 10:00 a.m. New York time on such Index Business Day, such Index Business Day or (y) if such Put Option Notice was made after 10:00 a.m. New York time on such Index Business Day, the immediately following Index Business Day following the date on which such Put Option Notice was provided to the Issuer, and (ii) where a redemption prior to the Scheduled Maturity Date occurs pursuant of paragraph 5.2(b) (*Discontinuation of the Index*) below, the Index Business Day immediately following the relevant Notice Date (as defined in paragraph 5.2(b) below);

"Strategy Performance" means as of any Index Business Day$_{(i)}$ during the Observation Period, the percentage determined by the Calculation Agent on such Index Business Day$_{(i)}$ in accordance with the following formula:

$$Strategy\ Performance_i = \left(100\% + \left[Index\ Performance_i - T\ Bill\ Return_i - Fee\ Percentage_i\right]\right)$$

Where

$i$ denotes the interval from the Issue Date to Index Business Day$_{(i)}$

*Index Performance* means, for Index Business Day$_{(i)}$, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$\frac{IndexValue_i}{Initial\ IndexValue} - 1$$

where *Index Value$_i$* means the Index Value at the Valuation Time on Index Business Day$_{(i)}$, as determined by the Calculation Agent

*T Bill Return* means, for Index Business Day$_{(i)}$, a rate as determined by the Calculation Agent by compounding the High Discount Rate daily during the period from, but excluding, the Strike Fixing Date to, and including, such Index Business Day$_{(i)}$ in accordance with the following formula:

$$\prod_{Daily}\left[1-(High\ Discount\ Rate*91/360)\right]^{-1/91} - 1$$

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

*High Discount Rate* means the 91-day weekly auction High Discount rate for U.S. Treasury Bills published on Bloomberg page USB3MTA (USB3MTA, <Index>, <GO>) as of approximately 3:00 p.m., New York City time, on any calendar day during the Observation Period. If such rate is not published on any calendar day, then the last published High Discount rate shall be used for that day. If the High Discount Rate ceases to be published by Bloomberg, then the High Discount Rate shall be the rate determined by the Calculation Agent by reference to the rate provided by such alternative rate source provider as the Calculation Agent shall select in good faith and in a commercially reasonable manner.

*Fee Percentage* means, for Index Business Day$_{(t)}$, whichever is the greater of (a) a rate as determined by the Calculation Agent as of Index Business Day$_{(t)}$ in accordance with the following formula:

$$\frac{(0.20 \, per \, cent * ND)}{365}$$

where $ND$ is the number of calendar days from and including the Strike Fixing Date to, but excluding, Index Business Day$_{(t)}$ and (b) 0.10 per cent.;

"**Strike Fixing Date**" or "**Trade Date**" means 17 October 2007;

"**trading day**" means, with respect to an Index Contract, a day, as determined in good faith by the Calculation Agent, on which trading is generally conducted on the Relevant Exchange applicable to such Index Contract;

"**Valuation Date**" means, subject to paragraph 4 (*Market Disruption*) below, the date which falls 5 scheduled Index Business Days prior to the Scheduled Maturity Date; and

"**Valuation Time**" means the time at which the Index Sponsors calculate and publish the closing level of the Index.

2.   **Final Redemption Amount of each Note**

Unless previously redeemed or purchased and cancelled, and subject as provided herein, each Note of a Specified Denomination shall be redeemed on the Maturity Date at a Final Redemption Amount ("**FRA**") in the Specified Currency determined by the Calculation Agent in its sole and absolute discretion in accordance with the following:

$$FRA = SD \times Max \left( Final \; Strategy \; Performance_{FD} ; 0\% \right)$$

together with interest accrued in respect of the period from and including the Issue Date to but excluding the Maturity Date

where

$SD$ means the Specified Denomination of a Note;

$Max$ denotes the greater of the percentages specified in the following parentheses; and

*Final Strategy Performance$_{FD}$* means Strategy Performance as determined by the Calculation Agent as of the Valuation Date.

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

3.    **Mandatory Early Redemption**

3.1    If a Mandatory Early Redemption Event occurs, the Issuer will redeem the Notes in whole on
the Mandatory Early Redemption Date at an amount per Note in the Settlement Currency as
equal to the Mandatory Early Redemption Amount determined as of the Mandatory Early
Redemption Amount Determination Date.

3.2    For the purposes hereof:

"**Mandatory Early Redemption Amount**" means an amount in the Specified Currency in
respect of each Note equal to the product of the Specified Denomination and the Strategy
Performance (as defined in Annex 1) as of the Mandatory Early Redemption Amount
Determination Date together with interest accrued in respect of the period from and including
the Issue Date to but excluding the Mandatory Early Redemption Date;

"**Mandatory Early Redemption Amount Determination Date**" means, subject to paragraph 4
(*Market Disruption*) below, the Index Business Day following the day on which the Mandatory
Early Redemption Event occurred;

"**Mandatory Early Redemption Barrier Level**" means 85%;

"**Mandatory Early Redemption Date**" means the fifth Business Day following the Index
Business Day on which the Mandatory Early Redemption Event was determined by the
Calculation Agent to have occurred; *provided* that if the determination of the Mandatory Early
Redemption Amount Determination Date is deferred by reason of the occurrence of a Market
Disruption Event, the Mandatory Early Redemption Date shall be deferred to the fifth Business
Day following the postponed Mandatory Early Redemption Amount Determination Date; and

"**Mandatory Early Redemption Event**" means that, as determined by the Calculation Agent,
the Strategy Performance as of any Index Business Day during the Observation Period (for the
avoidance of doubt, irrespective of whether any Index Unavailability Event is in effect or any of
the Index Contracts is affected by the occurrence of a Market Disruption Event on such Index
Business Day) is less than the Mandatory Early Redemption Barrier Level.

4.    **Market Disruption**

If a Market Disruption Event relating to or one or more Index Contracts is in effect on the scheduled
Valuation Date, Optional Redemption Amount Determination Date or Mandatory Early Redemption
Amount Determination Date, the Calculation Agent will calculate the Index Value for such day in good
faith in accordance with the formula for and method of calculating the Index last in effect prior to
commencement of the Market Disruption Event, using: (i) for each Index Contract that was not affected
by a Market Disruption Event on the scheduled Valuation Date, Optional Redemption Amount
Determination Date or Mandatory Early Redemption Amount Determination Date (as the case may be)
the settlement price on the applicable Relevant Exchange of such Index Contract on the scheduled
Valuation Date, Optional Redemption Amount Determination Date or Mandatory Early Redemption
Amount Determination Date (as the case may be) and (ii) for each Index Contract that was affected by
the occurrence of a Market Disruption Event on the scheduled Valuation Date, , Optional Redemption
Amount Determination Date or Mandatory Early Redemption Amount Determination Date (as the case
may be) the settlement price of such Index Contract on the applicable Relevant Exchange on the
immediately succeeding trading day on which no Market Disruption Event occurs or is continuing with
respect to such Index Contract (which trading day shall be deemed the Valuation Date, Optional

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

Redemption Amount Determination Date or Mandatory Early Redemption Amount Determination Date
(as the case may be) for such Index Contract); *provided however* that if a Market Disruption Event has
occurred or is continuing with respect to such Index Contract on each of the five scheduled trading days
following the scheduled Valuation Date, Optional Redemption Amount Determination Date or
Mandatory Early Redemption Amount Determination Date (as the case may be) then (a) the fifth
scheduled trading day shall be deemed the Valuation Date, Optional Redemption Amount
Determination Date or Mandatory Early Redemption Amount Determination Date (as the case may be)
for such Index Contract and (b) the Calculation Agent will determine the price for such Index Contract
on such fifth scheduled trading day in its sole and absolute discretion taking into account the latest
available quotation for the settlement price of such Index Contract and any other information that in
good faith it deems relevant.

5.    **Matters affecting the Index**

5.1    *Index Unavailability Event:* If an Index Unavailability Event is in effect on the scheduled
Valuation Date, Optional Redemption Amount Determination Date or Mandatory Early
Redemption Amount Determination Date (as the case may be) (and no Disruption Event is then
in effect), the Calculation Agent will determine the Final Index Value on the Valuation Date,
Optional Redemption Amount Determination Date or Mandatory Early Redemption Amount
Determination Date (as the case may be) in good faith in accordance with the formula for and
method of calculating the Index in effect on the Valuation Date using the closing price on the
Relevant Exchanges of each Index Contract.

5.2    *Index Adjustment:*

(a)    If the Index Sponsors discontinue publication of the Index and the Index Sponsors or
another entity publishes a successor or substitute index that the Calculation Agent
determines, in its sole discretion, to be comparable to the discontinued Index (such
index, a "Successor Index"), then the Final Index Value will be determined by
reference to the level of such Successor Index at the close of trading on the Relevant
Exchange or market of the Successor Index last to close on the Valuation Date. Upon
any selection by the Calculation Agent of a Successor Index, the Calculation Agent
will cause written notice thereof to be promptly furnished to the Issuer and to the
Noteholders.

(b)    *Discontinuation of the Index:* If the Index Sponsors discontinue publication of the
Index prior to, and such discontinuation is continuing on, the Valuation Date, and the
Calculation Agent determines, in its sole discretion, that no Successor Index is
available at such time, then the Calculation Agent will (subject as set forth below)
determine the Final Index Value on the Valuation Date. The Final Index Value will be
computed by the Calculation Agent in accordance with the formula for and method of
calculating the Index last in effect prior to such discontinuation, using the closing
price (or, if trading in the relevant futures contracts has been materially suspended or
materially limited, its good faith estimate of the closing price that would have
prevailed but for such suspension or limitation) at the close of the principal trading
session on the Valuation Date of each futures contract most recently constituting the
Index. Notwithstanding the foregoing, the Calculation Agent shall in no circumstances
be required to determine the level of the Index on a continuous basis if, in the opinion
of the Calculation Agent, to do so would be unduly burdensome or would cause the
Calculation Agent to incur any cost that it would not otherwise incur. If, on any Index

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

Business Day following any date on which the Index Sponsors no longer calculate and announces the Index as aforesaid, the Calculation Agent informs the Issuer that (i) having used reasonable endeavours, the Calculation Agent is unable to continue to determine the level of the Index, or (ii) in the opinion of the Calculation Agent continuing to determine the level of the Index would be unduly burdensome or would cause the Calculation Agent to incur a cost that it would not otherwise incur, the Issuer may, on the Index Business Day next following the date on which the Calculation Agent gave notice to the Issuer (the "Notice Date"), give notice to the Noteholders that the Issuer will redeem the Notes. In such event the Issuer shall redeem all of the Notes on the fifth Business Day following the Notice Date (which such day shall be the Optional Redemption Amount Determination Date with respect to such redemption) at the Early Redemption Amount determined as of that Optional Redemption Amount Determination Date, including any accrued interest during the period from and including the immediately preceding Interest Payment Date to and including the early redemption date.

(c)    *Index changes:* If at any time the method of calculating the Index or a Successor Index, or the level thereof, is changed in a material respect, or if the Index or a Successor Index is in any other way modified so that the Index or such Successor Index does not, in the opinion of the Calculation Agent, fairly represent the level of the Index or such Successor Index had such changes or modifications not been made, then, from and after such time, the Calculation Agent will, at the close of business in New York City on the Valuation Date, make such calculations and adjustments as, in the good faith judgment of the Calculation Agent, may be necessary in order to arrive at a level of a commodity index comparable to the Index or such Successor Index, as the case may be, as if such changes or modifications had not been made, and the Calculation Agent will calculate the Final Index Value with reference to the Index or such Successor Index, as adjusted.

(d)    *Corrections to the Index:* In the event that the official closing level of the Index published or announced on any given Index Business Day and used by the Calculation Agent to determine the Index Performance on any such date is subsequently corrected and the correction is published or announced by the Index Sponsors within 30 calendar days of the original publication or announcement, but not later than 10 calendar days after publication or announcement of the correction or, if earlier, the date 3 Business Days prior to the date for payment of the relevant amount calculated by reference to the Index Performance as so determined, the Calculation Agent shall make such adjustment to such payable amount as it shall determine to be appropriate to take account of such correction.

6.    **Notification of Early Redemption Amount, Final Redemption Amount, Market Disruption Event and other Events**

(A)    *Notice of Redemption Amounts:* As soon as reasonably practicable after calculating or otherwise determining the Early Redemption Amount or the Final Redemption Amount, as the case may be, the Calculation Agent shall give notice of the relevant amount to the Issuer;

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

(B)    *Notice of Mandatory Early Redemption Event*:  The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the occurrence of a Mandatory Early Redemption Event.

(C)    *Notice of Market Disruption Event:*  The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the existence or occurrence of a Market Disruption Event on the Valuation Date;

(D)    *Notice of Index Unavailability Event:*  Upon the occurrence of an Index Unavailability Event, the Calculation Agent shall give notice as soon as practicable to the Issuer stating the occurrence of the Index Unavailability Event, as the case may be, giving details thereof and the action proposed to be taken in relation thereto;

(E)    *Notice to Noteholders:*  Adjustments and calculations in accordance with the foregoing sections shall be calculated by the Calculation Agent, shall be notified to the Noteholders in accordance with Condition 15 (*Notices*) and shall be (in the absence of manifest error) binding on all parties concerned. However, Noteholders should be aware that there may be, necessarily, some delay between the time at which any of the above events occur and the time at which it is reported to Noteholders.

7.    **The Calculation Agent**

The Calculation Agent shall act independently and not as an agent of the Issuer or the Noteholders.  All determinations made by the Calculation Agent hereunder shall, in the absence of manifest error, wilful default or bad faith, be final and conclusive, and the Calculation Agent shall have no liability to the Issuer, the Noteholders or any third party in relation to such determinations except in the case of its wilful default or bad faith.

Nothing contained herein shall prevent the Calculation Agent from dealing in the Notes or from entering into any related transaction, including without limitation any swap or hedging transactions with the Issuer (or any of its affiliates) or any holder of the Notes (or any of its affiliates).

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

## Appendix 2

## RISK FACTORS

You should carefully consider the following information in conjunction with other information contained in these Final Terms and in the Base Prospectus, including the section entitled "Risk Factors" beginning on page 19 of the Base Prospectus, before purchasing the Notes.

These Final Terms, however, cannot disclose all of the risks and other significant aspects of the Notes and investment decisions should not be made solely on the basis of these risk factors since the information contained herein cannot serve as a substitute for independent individual advice which is tailored to your requirements, investment objectives, experience, knowledge and circumstances.

You should consider carefully whether the Notes are suitable for you in the light of your circumstances and financial position and in view of the complexity and risks inherent in the Notes. You should be experienced with respect to derivatives, particularly options and options transactions. Furthermore, you should understand the risks of transactions involving the Notes and should reach an investment decision only after careful consideration of the suitability of the Notes in light of your particular financial circumstances and after consultation with your own legal, tax, accountancy and other professional advisers. You should not deal in the Notes unless you understand fully the nature of the relevant transaction. Such transaction is suitable only for, and should be made only by, an investor who has no need for liquidity and understands and can afford the financial and other risks of this transaction.

*The Final Redemption Amount is variable and may even be zero*

You should be familiar with investments in the global capital markets and with derivatives and the Index generally. The value of the Notes can be volatile. Changes in the level of the Index may result in sudden and large fluctuations in the value of the Notes. The level of the Index may vary over time and may increase or decrease by reference to a variety of factors, which may include, but are not limited to, corporate actions and macro economic factors.

The Final Redemption Amount is variable and equals the principal amount multiplied by the Strategy Performance on the relevant Valuation Date plus accrued Interest. You should understand that in certain circumstances the Final Redemption Amount will be less than 100% and may even be zero.

*Even if the value of the Index at the Valuation Date or upon early redemption exceeds the value of the Index on the Strike Fixing Date, you may receive less than the principal amount of your Notes*

Because the formula for calculating your return at maturity or upon redemption subtracts from the Index performance measure the returns you would have received on implied cash collateral if it was invested in U.S. Treasury Bills as well as certain fixed amount for each calendar day, such subtractions will reduce the amount of your return at maturity or upon early redemption. Therefore, the value of the Index must increase significantly in order for you to receive at least the principal amount of your investment at maturity or upon early redemption of your Notes. If, after taking into account the accrued Interest payable at maturity, the value of the Index decreases or does not increase sufficiently to offset these subtractions, you will receive less than the principal amount of your investment at maturity or upon early redemption of your Notes.

*You will not benefit from any increase in the value of the Index if such increase is not reflected in the value of the Index on the Valuation Date*

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

Changes in the Index during the term of the Notes before the Valuation Date will not be reflected in the determination of the amount payable at maturity. If, after taking into account the accrued Interest payable at maturity, the Index does not increase by an amount sufficient to offset the subtractions described above between the Strike Fixing Date and the Valuation Date and the Valuation Date, we will pay you less than the principal amount of your Notes at maturity or upon redemption. This will be true even if the value of the Index as of some date or dates prior to the Valuation Date would have been sufficiently high to offset the subtractions described above.

*The market value of the Notes may be influenced by many unpredictable factors, including volatile commodities prices*

When we refer to the market value of your Notes, we mean the value that you could receive for your Notes if you chose to sell them in the open market before the Maturity Date. The market value of your Notes may fluctuate between the date you purchase them and the Valuation Date. You may also sustain a significant loss if you sell the Notes in the secondary market. Various factors, many of which are beyond our control, will influence the market value of the Notes. We expect that generally the value of the Index Contracts and the Index will affect the market value of the Notes more than any other factor. Other factors that may influence the market value of the Notes include:

- the time remaining to the maturity of the Notes;

- economic, financial, political, regulatory, geographical, biological, or judicial events that affect the level of the Index or the market price of the Index Contracts or the commodities underlying the Index Contracts; or

- the creditworthiness of the Issuer and the Guarantor.

These factors interrelate in complex ways, and the effect of one factor on the market value of your Notes may offset or enhance the effect of another factor.

*Suspension or disruptions of market trading in commodities and related futures may adversely affect the value of your Notes*

The commodity futures markets are subject to temporary distortions or other disruptions due to various factors, including the lack of liquidity in the markets, congestion, disorderly markets, limitations on deliverable supplies, the participation of speculators and government regulation and intervention. In addition, U.S. futures exchanges and some foreign exchanges have regulations that limit the amount of fluctuation in futures contract prices which may occur during a single business day. These limits are generally referred to as "daily price fluctuation limits" and the maximum or minimum price of a contract on any given day as a result of these limits is referred to as a "limit price". Once the limit price has been reached in a particular contract, no trades may be made at a different price. Limit prices may have the effect of precluding trading in a particular Index Contract or forcing the liquidation of Index Contracts at disadvantageous times or prices. These circumstances could adversely affect the value of the Index and, therefore, the value of your Notes.

*Higher future prices of the Index Contracts relative to their current prices may decrease the amount payable at maturity or upon redemption*

The Index is composed of commodity futures contracts rather than physical commodities. Unlike equities, which typically entitle the holder to a continuing stake in a corporation, commodity futures contracts, including the Index Contracts, normally specify a certain date for delivery of the underlying physical commodity. As the Index Contracts approach expiration, they are replaced by contracts that

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

have a later expiration. Thus, for example, a contract purchased and held in August may specify an October expiration. As time passes, the contract expiring in October is replaced by a contract for delivery in November. This process is referred to as "rolling". If the market for these contracts is in "backwardation", which means that the prices are lower in the distant delivery months than in the nearer delivery months, the sale of the October contract would take place at a price that is higher than the price of the November contract, thereby creating a "roll yield". This means that the value of the Index could increase, and therefore, your payment at maturity or upon early redemption could increase. While many of the Index Contracts have historically exhibited consistent periods of backwardation, backwardation will most likely not exist at all times. Moreover, certain of the commodities represented by Index Contracts, such as gold, have historically traded in "contango" markets. Contango markets are those in which the prices of contracts are higher in the distant delivery months than in the nearer delivery months. The absence of backwardation or the presence of contango in the commodity markets could result in negative "roll yields", which could adversely affect the value of the Index and, accordingly, decrease the payment you receive at maturity or upon redemption.

*Historical values of the Index or any Index Contract should not be taken as an indication of the future performance of the Index during the term of the Notes*

The actual performance of the Index or any Index Contract over the term of the Notes may bear little relation to the historical values of the Index or the Index Contracts, which have been highly volatile. Fluctuations in the performance of the Index make the amount payable at maturity or upon redemption difficult to predict.

*Commodity prices may change unpredictably, affecting the value of the Index and the value of your Notes in unforeseeable ways*

Trading in the Index Contracts, and the commodities underlying the Index Contracts, is speculative and can be extremely volatile. Market prices of the Index Contracts or the commodities underlying the Index Contracts may fluctuate rapidly based on numerous factors, including: changes in supply and demand relationships; weather; agriculture; trade; fiscal, monetary, and exchange control programs; domestic and foreign political and economic events and policies; disease; pestilence; technological developments and changes in interest rates. These factors may affect the value of the Index and the value of your Notes in varying ways, and different factors may cause the prices of the Index Contracts, and the volatilities of their prices, to move in inconsistent directions at inconsistent rates.

*The Notes may not trade in a liquid market and the Issue Price may not be an accurate reflection of the market value of the Notes on the Issue Date.*

There can be no assurance as to how any Notes will trade in the secondary market, whether there will be a secondary market or, if a secondary market exists, whether such market will be sustainable or liquid or illiquid. The Notes will not be listed or traded on any stock exchange and, as a result, pricing information for the Notes may be more difficult to obtain, and the liquidity and market prices of the Notes may be adversely affected.

The liquidity of the Notes may also be affected by restrictions, if any, on offers and sales of the Notes in some jurisdictions. In any case, due to the relative complexity and lower liquidity of the Notes if compared to more conventional financial instruments such as shares, comparatively larger spreads between bid and ask quotes should be expected.

In addition, the Issue Price in respect of the Notes may not be an accurate reflection of the market value of such Notes as at the Issue Date. The price at which the Notes may be sold in secondary market

transactions may be lower than the Issue Price. In particular, the Issue Price in respect of the Notes may take into account the distribution fee payable to any appointed distributor of the Notes with respect to the offer and sale of the Notes.

*Changes in the Issuer's and the Guarantor's credit ratings may affect the market value of your securities*

The credit ratings of the Issuer and the Guarantor are an assessment of their ability to pay their obligations, including those on the Notes and the Guarantee. Consequently, actual or anticipated changes in the credit ratings of the Issuer and the Guarantor may affect the market value of your Notes. However, because the return on your Notes is dependent upon certain factors in addition to the ability of the Issuer and to pay its obligations on your Notes and the ability of the Guarantor to guarantee such obligations of the Issuer, an improvement in the credit ratings of the Issuer and the Guarantor will not reduce the other investment risks related to your Notes.

Any person who purchases the Notes is relying upon the creditworthiness of the Issuer and the Guarantor and has no rights against any other person. The Notes constitute general, unsecured, unsubordinated, contractual obligations of the Issuer and of no other person. The Notes rank *pari passu* among themselves.

*You will not have rights in the Index Contracts*

As an owner of the Notes, you will not have rights that investors in the Index Contracts may have. Your Notes will be paid in cash, and you will have no right to receive delivery of any Index Contracts or commodities underlying the Index Contracts.

*Trading and other transactions by the affiliates of the Issuer and the Guarantor in instruments linked to the Index or Index Contracts may impair the market value of the Notes*

As described in Appendix 5, one or more of the affiliates of the Issuer and the Guarantor may hedge the obligations of the Issuer under the Notes by purchasing Index Contracts (including the underlying physical commodities), futures or options on Index Contracts or the Index, or other derivative instruments with returns linked to the performance of Index Contracts or the Index, and they may adjust these hedges by, among other things, purchasing or selling any of the foregoing. Although they are not expected to, any of these hedging activities may adversely affect the market price of Index Contracts and the value of the Index and, therefore, the market value of the Notes. It is possible that one or more of the affiliates of the Issuer and the Guarantor could receive substantial returns from these hedging activities while the market value of the Notes declines.

*The trading activities of the Issuer and the Guarantor may create a conflict of interest*

One or more of the affiliates of the Issuer and the Guarantor may also engage in trading in Index Contracts, futures or options on Index Contracts, the physical commodities underlying the Index Contracts or the Index, and other investments relating to Index Contracts or the Index on a regular basis as part of their general broker-dealer and other businesses, for proprietary accounts, for other accounts under management or to facilitate transactions for customers. Any of these activities could adversely affect the market price of the Index Contracts or the value of the Index and, therefore, the market value of the Notes. The Issuer, the Guarantor or one or more of their affiliates may also issue or underwrite other securities or financial or derivative instruments with returns linked or related to changes in the performance of any of the foregoing. By introducing competing products into the marketplace in this

manner, the Issuer or the Guarantor or one or more of their affiliates could adversely affect the market value of the Notes.

In addition, the Issuer, the Guarantor, the Calculation Agent and/or their respective subsidiaries may, from time to time, act in other capacities with regard to the Notes (such as in an agency capacity and/or as the calculation agent) and may issue or participate in the issue of other competing financial instruments in respect of the Index or Index Contracts and the introduction of such competing financial instruments may affect the value of the Notes.

Such transactions could present certain conflicts of interest with the interest of holders of Notes and may affect the value of the Notes. The Issuer, the Guarantor, the Calculation Agent and/or their respective subsidiaries owe no duty or responsibility to any holder of a Note (or any other party) to avoid such conflicts.

*The S&P GSCI™ may in the future include contracts that are not traded on regulated futures exchanges*

The S&P GSCI™ was originally based solely on futures contracts traded on regulated futures exchanges (referred to in the United States as "designated contract markets"). At present, the S&P GSCI™ continues to be composed exclusively of regulated futures contracts. However, the S&P GSCI™ may in the future include over-the-counter contracts (such as swaps and forward contracts) traded on trading facilities that are subject to lesser degrees of regulation or, in some cases, no substantive regulation. As a result, trading in such contracts, and the manner in which prices and volumes are reported by the relevant trading facilities, may not be subject to the provisions of, and the protections afforded by, the U.S. Commodity Exchange Act of 1936, or other applicable statutes and related regulations, that govern trading on regulated U.S. futures exchanges, or similar statutes and regulations

*The Index Sponsor may be required to replace an index contract if the existing index contract is terminated or replaced*

A futures contract known as an "index contract" has been selected as the reference contract for each of the physical commodities underlying the component commodities. Data concerning the index contracts will be used to calculate the Index. If an index contract were to be terminated or replaced in accordance with the rules described under "The Index" below, a comparable futures contract would be selected by S&P, if available, to replace that index contract. The termination or replacement of any index contract may have an adverse impact on the value of the Index.

*Changes in the Treasury Bill rate of interest may affect the value of the Index and your Notes*

Because the value of the Index is linked, in part, to the Treasury Bill rate of interest that could be earned on cash collateral invested in specified Treasury Bills, changes in the Treasury Bill rate of interest may affect the amount payable on your Notes at maturity or upon redemption and, therefore, the market value of your Notes. Assuming the trading prices of the Index Contracts remain constant, an increase in the Treasury Bill rate of interest will increase the value of the Index and, therefore, the value of your Notes. A decrease in the Treasury Bill rate of interest will adversely impact the value of the Index and, therefore, the value of your Notes.

*There are potential conflicts of interest between the Calculation Agent and you*

Lehman Brothers Inc. will serve as the Calculation Agent. The Calculation Agent has discretion to determine whether certain events have occurred. You should be aware that any determination made by the Calculation Agent may have an adverse effect on the value of the Notes. For example, the

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

Calculation Agent may determine that a Market Disruption Event has occurred or exists at a relevant time which may affect the determination of the level of the Index on a relevant Index Business Day and/or may delay settlement in respect of the Notes. Any such discretion exercised by, or any calculation made by, the Calculation Agent (in the absence of manifest error) shall be binding. Since these determinations by the Calculation Agent may affect the fair market value of the Notes, the Calculation Agent may have a conflict of interest if it needs to make any such decision.

*In the event of an early redemption, holders of Notes may receive less than the Principal Amount of the Notes*

In the event of a Mandatory Early Redemption Event, an early redemption for taxation reasons or in an event of default (as described in Item 23 of the Final Terms), as determined by the Calculation Agent, the Issuer will redeem the Notes at the Mandatory Early Redemption Amount (provided that, in the case of early redemption for taxation reasons or in an event of default, only if permitted by applicable law). The Early Mandatory Redemption Amount payable will be equal to the principal amount of the Notes multiplied by the Strategy Performance as determined by the Calculation Agent on the Mandatory Early Redemption Amount Determination Date plus accrued Interest that has accrued from the Issue Date to but excluding the Mandatory Early Redemption Date. You should understand that such Early Mandatory Redemption Amount may be less than the principal amount of the Notes or the amount you have paid for the Notes and may even be nil.

*The Issuer and the Guarantor and their affiliates have no affiliation with S&P and are not responsible for S&P's public disclosure of information, which may change over time*

The Issuer and the Guarantor and their affiliates are not affiliated with S&P in any way and have no ability to control or predict S&P's actions, including any errors in, or discontinuation of disclosure regarding their methods or policies relating to the calculation of, the Index. S&P is not under any obligation to continue to calculate the Index or required to calculate any successor index. If S&P discontinues or suspends the calculation of the Index, it may become difficult to determine the market value of the Notes or the amount payable at maturity or upon redemption. If the Calculation Agent determines that no successor index comparable to the Index exists and that it is either unable to continue to determine the level of the Index, or it would be unduly burdensome to it to determine the level of the Index or would cause it to incur additional cost that it would not otherwise incur, the Notes will be subject to early redemption at the option of the Issuer and the amount you receive at maturity or upon redemption will be determined by the Calculation Agent.

All disclosure in Appendix 4 regarding the Index, including its make-up, method of calculation and changes in its components, is derived from publicly available information. The Issuer and the Guarantor have not independently verified this information. You, as an investor in the Notes, should make your own investigation into the Index and S&P, which is not involved in the offer of the Notes in any way and has no obligation to consider your interests as a holder of the Notes.

*The policies of S&P and changes that affect the valuation of the Index or the Index Contracts could affect the amount payable on your Notes and their market value*

The policies of S&P concerning the calculation of the level of the Index, additions, deletions or substitutions of Index Contracts and the manner in which changes affecting the Index Contracts are reflected in the Index could affect the value of the Index and, therefore, the amount payable on your Notes at maturity or upon redemption and the market value of your Notes prior to maturity. The amount payable on your Notes at maturity or upon early redemption and their market value prior to maturity could also be affected if S&P changes the policies of the Index, for example by changing the

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

manner in which it calculates the value of the Index or if it discontinues or suspends calculation or publication of the Index, in which case it may become difficult to determine the market value of the Notes. If events such as these occur, or if the value of the Index is not available or cannot be calculated because of a Market Disruption Event or for any other reason, the Calculation Agent may be required to make an alternative determination of the value of the Index.

The composition of the Index may change over time, as additional commodities satisfy the eligibility criteria or commodities currently included in the Index fail to satisfy such criteria. The weighting factors applied to each commodity included in the Index change annually, based on changes in commodity production statistics. In addition, S&P, in consultation with its Advisory Committee, may modify the methodology for determining the composition and weighting of the Index and for calculating its value in order to assure that the Index represents a measure of the performance over time of the markets for the underlying commodities. A number of modifications to the methodology for determining the contracts to be included in the Index, and for valuing the Index, have been made in the past several years and further modifications may be made in the future. Such changes could adversely affect the market value and/or the payment at maturity for the Notes.

*Because the Global Notes are held by or on behalf of DTC, you will have to rely on DTC's procedures for transfer, payment and communication with the Issuer.*

The Notes will be represented by one or more Global Notes. Such Global Notes will be deposited with a custodian for DTC. Except in the circumstances described in the relevant Global Note, investors will not be entitled to receive definitive Notes. DTC will maintain records of the beneficial interests in the Global Notes. While the Notes are represented by one or more Global Notes, investors will be able to trade their beneficial interests only through DTC.

While the Notes are represented by one or more Global Notes, the Issuer will discharge its payment obligations under the Notes by making payments to the Fiscal Agent for distribution to participants in DTC holding an interest in the Global Note. A holder of a beneficial interest in a Global Note must rely on the procedures of DTC to receive payments under the Notes. The Issuer has no responsibility or liability for the records relating to, or payments made in respect of, beneficial interests in the Global Notes.

Holders of beneficial interests in the Global Notes will not have a direct right to vote in respect of the relevant Notes. Instead, such holders will be permitted to act only to the extent that they are enabled by DTC to appoint appropriate proxies. Similarly, holders of beneficial interests in the Global Notes will not have a direct right under the Global Notes to take enforcement action against the Issuer in the event of a default under the Notes but will have to rely upon their rights under the deed of covenant dated 24 July 2007 (as amended, supplemented or replaced from time to time), executed by Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

### Appendix 3

### STATEMENTS REGARDING THE INDEX

The Issuer and its affiliates currently have a non-exclusive license from S&P to use the S&P GSCI™ and the Index in connection with the offered notes. Effective February 8, 2007 Goldman Sachs completed a transaction with S&P by which all rights in the S&P GSCI™ and Index were sold to S&P.

THE NOTES ARE NOT SPONSORED, ENDORSED, SOLD OR PROMOTED BY S&P. S&P MAKES NO REPRESENTATION, CONDITION OR WARRANTY, EXPRESS OR IMPLIED, TO THE OWNERS OF THE NOTES OR ANY MEMBER OF THE PUBLIC REGARDING THE ADVISABILITY OF INVESTING IN SECURITIES GENERALLY OR IN THE NOTES PARTICULARLY OR THE ABILITY OF THE S&P GSCI™ OR THE INDEX TO TRACK GENERAL STOCK MARKET PERFORMANCE, THE PERFORMANCE OF THE GENERAL COMMODITY MARKET, OR THE PERFORMANCE OF SPECIFIC COMMODITIES. S&P'S ONLY RELATIONSHIP TO THE ISSUER IS THE LICENSING OF CERTAIN TRADEMARKS AND TRADE NAMES AND OF THE S&P GSCI™ AND THE INDEX WHICH IS DETERMINED, COMPOSED AND CALCULATED BY S&P WITHOUT REGARD TO THE NOTES. S&P HAS NO OBLIGATION TO TAKE THE NEEDS OF THE ISSUER OR THE OWNERS OF THE NOTES INTO CONSIDERATION IN DETERMINING, COMPOSING OR CALCULATING THE S&P GSCI™ OR THE INDEX. S&P IS NOT RESPONSIBLE FOR AND HAS NOT PARTICIPATED IN THE DETERMINATION OF THE PRICES AND AMOUNT OF THE NOTES OR THE TIMING OF THE ISSUANCE OR SALE OF THE NOTES. S&P HAS NO OBLIGATION OR LIABILITY IN CONNECTION WITH THE ADMINISTRATION, MARKETING, OR TRADING OF THE NOTES.

S&P DOES NOT GUARANTEE THE ACCURACY AND/OR THE COMPLETENESS OF THE S&P GSCI™ OR THE INDEX OR ANY DATA INCLUDED THEREIN AND S&P SHALL HAVE NO LIABILITY FOR ANY ERRORS, OMISSIONS OR INTERRUPTIONS THEREIN. S&P MAKES NO WARRANTY, CONDITION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO RESULTS TO BE OBTAINED BY LEHMAN BROTHERS TREASURY CO. BV., HOLDERS OF THE NOTES, OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE INDEX OR ANY DATA INCLUDED THEREIN. S&P MAKES NO EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS OR CONDITIONS, AND EXPRESSLY DISCLAIMS ALL WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE AND ANY OTHER EXPRESS OR IMPLIED WARRANTY OR CONDITION WITH RESPECT TO THE S&P GSCI™ OR THE INDEX OR ANY DATA INCLUDED THEREIN. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT SHALL S&P HAVE ANY LIABILITY FOR ANY SPECIAL PUNITIVE, INDIRECT OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS) RESULTING FROM THE USE OF THE S&P GSCI™ OR THE INDEX OR ANY DATA INCLUDED THEREIN, EVEN IF NOTIFIED OF THE POSSIBILITY OF SUCH DAMAGES.

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

## Appendix 4

## THE INDEX

## THE S&P GSCI™ TOTAL RETURN INDEX

The S&P GSCI™ Total Return (the "Index") was established in May 1991, and is designed to be a diversified benchmark for physical commodities as an asset class. The Index reflects the excess returns that are potentially available through an unleveraged investment in the contracts comprising the S&P GSCI™ plus the Treasury Bill rate of interest that could be earned on funds committed to the trading of the underlying contracts. The value of the Index on any given day reflects:

- the price levels of the contracts included in the S&P GSCI™ (which represents the value of the S&P GSCI™);

- the "contract daily return", which is the percentage change in the total dollar weight of the S&P GSCI™ from the previous day to the current day; and

- the Treasury Bill rate of interest that could be earned on funds committed to the trading of the underlying contracts.

The Treasury Bill rate of interest used for purposes of calculating the Index on any day is the 91-day auction high rate for U.S. Treasury Bills, as reported on Telerate page 56, or any successor page, on the most recent of the weekly auction dates prior to such day. The Treasury Bill rate of interest is the return on a hypothetical investment at a rate equal to the interest rate on a specified U.S. Treasury Bill.

The S&P GSCI™ is a proprietary index that Goldman, Sachs & Co. ("Goldman, Sachs") developed. Effective February 8, 2007, The Goldman Sachs Group, Inc. ("GS Group") completed a transaction with S&P by which GS Group sold to S&P all of the rights of Goldman, Sachs in the GSCI™ and all related indices and Index, as well as certain intellectual property related to the GSCI™. According to publicly available information, as of that date, Goldman, Sachs no longer owned the Index and is no longer responsible for the calculation, publication or administration of the Index, or for any changes to the methodology.

The S&P GSCI™ is an index on a world-production weighted basket of principal non-financial commodities (i.e., physical commodities) that satisfy specified criteria. The S&P GSCI™ is designed to be a measure of the performance over time of the markets for these commodities. The only commodities represented in the S&P GSCI™ are those physical commodities on which active and liquid contracts are traded on trading facilities in major industrialized countries. The commodities included in the S&P GSCI™ are weighted, on a production basis, to reflect the relative significance (in the view of S&P, in consultation with the Advisory Committee, as described below) of such commodities to the world economy. The fluctuations in the value of the S&P GSCI™ are intended generally to correlate with changes in the prices of such physical commodities in global markets. The S&P GSCI™ has been normalized such that its hypothetical level on January 2, 1970 was 100. Futures contracts on the S&P GSCI™, and options on such futures contracts, are currently listed for trading on the Chicago Mercantile Exchange.

Set forth below is a summary of the composition of and the methodology used to calculate the S&P GSCI™ as of the date hereof. The methodology for determining the composition and weighting of the S&P GSCI™ and for calculating its value is subject to modification in a manner consistent with the purposes of the S&P GSCI™, as described below. S&P makes the official calculations of the S&P GSCI™. At present, these calculations are performed continuously and are reported on Reuters Page S&P GSCI™ with respect to the S&P GSCI™ and are updated on Reuters at least once every three minutes during business hours on each S&P GSCI™ business day.

In light of the rapid development of electronic trading platforms and the potential for significant shifts in liquidity between traditional exchanges and such platforms, the methodology for determining the composition of the S&P GSCI™ and its Index has been modified in order to provide market participants

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

with efficient access to new sources of liquidity and the potential for more efficient trading. As a result, the S&P GSCI™ methodology now provides for the inclusion of contracts traded on trading facilities other than exchanges, such as electronic trading platforms, if liquidity in trading for a given commodity shifts from an exchange to an electronic trading platform. S&P, in consultation with its Advisory Committee, will continue to monitor developments in the trading markets and will announce the inclusion of additional contracts, or further changes to the S&P GSCI™ methodology, in advance of their effectiveness.

### The Advisory Committee

S&P has established an Advisory Committee to assist it in connection with the operation of the S&P GSCI™. The Advisory Committee meets on a regular basis and at other times upon the request of S&P. The principal purpose of the Advisory Committee is to advise S&P with respect to, among other things, the calculation of the S&P GSCI™, the effectiveness of the S&P GSCI™ as a measure of commodity futures market performance and the need for changes in the composition or in the methodology of the S&P GSCI™. The Advisory Committee acts solely in an advisory and consultative capacity; all decisions with respect to the composition, calculation and operation of the S&P GSCI™ are made by S&P.

The Advisory Committee meets once during each year. Prior to the meeting, S&P determines the commodities to be included in the S&P GSCI™ for the following calendar year, as well as the weighting factors for each commodity. The Advisory Committee members receive the proposed composition of the S&P GSCI™ in advance of the meeting and discuss the composition at the meeting. S&P also consults the Advisory Committee on any other significant matters with respect to the calculation or operation of the S&P GSCI™. The Advisory Committee may, if necessary or practicable, meet at other times during the year as issues arise that warrant its consideration.

### Composition of the S&P GSCI™

In order to be included in the S&P GSCI™, a contract must satisfy the following eligibility criteria:

- The contract must be in respect of a physical commodity and not a financial commodity.

- In addition, the contract must:

- have a specified expiration or term or provide in some other manner for delivery or settlement at a specified time, or within a specified period, in the future; and

- at any given point in time, be available for trading at least five months prior to its expiration or such other date or time period specified for delivery or settlement.

From January 2007, the trading facility on which the contract trades must allow market participants to execute spread transactions, through a single order entry, between the pairs of contract expirations (defined below) included in the S&P GSCI™ that, at any given point in time, will be involved in the rolls to be effected in the next three roll periods (defined below).

The commodity must be the subject of a contract that:

- is denominated in U.S. dollars; and

- is traded on or through an exchange, facility or other platform (referred to as a "trading facility") that has its principal place of business or operations in a country which is a member of the Organization for Economic Cooperation and Development and that:

- makes price quotations generally available to its members or participants (and, if S&P is not such a member or participant, to S&P) in a manner and with a frequency that is sufficient to

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

provide reasonably reliable indications of the level of the relevant market at any given point in time;

- makes reliable trading volume information available to S&P with at least the frequency required by S&P to make the monthly determinations;

- accepts bids and offers from multiple participants or price providers; and

- is accessible by a sufficiently broad range of participants.

With respect to inclusion on each Index, a contract must be in respect to the physical commodity that is described by that specific index.

The price of the relevant contract that is used as a reference or benchmark by market participants (referred to as the "daily contract reference price") generally must have been available on a continuous basis for at least two years prior to the proposed date of inclusion in the S&P GSCI™. In appropriate circumstances, however, S&P, in consultation with the Advisory Committee, may determine that a shorter time period is sufficient or that historical daily contract reference prices for such contract may be derived from daily contract reference prices for a similar or related contract. The daily contract reference price may be (but is not required to be) the settlement price or other similar price published by the relevant trading facility for purposes of margining transactions or for other purposes.

At and after the time a contract is included in the S&P GSCI™, the daily contract reference price for such contract must be published between 10:00 a.m. and 4:00 p.m., New York City time, on each business day relating to such contract by the trading facility on or through which it is traded and must generally be available to all members of, or participants in, such facility (and, if S&P is not such a member or participant, to S&P) on the same day from the trading facility or through a recognized third-party data vendor. Such publication must include, at all times, daily contract reference prices for at least one expiration or settlement date that is five months or more from the date the determination is made, as well as for all expiration or settlement dates during such five-month period.

For a contract to be eligible for inclusion in the S&P GSCI™, volume data with respect to such contract must be available for at least the three months immediately preceding the date on which the determination is made.

A contract that is:

- Not included in the S&P GSCI™ at the time of determination and that is based on a commodity that is not represented in the S&P GSCI™ at such time must, in order to be added to the S&P GSCI™ at such time, have a total dollar value traded, over the relevant period, as the case may be and annualized, of at least U.S. $15 billion. The total dollar value traded is the dollar value of the total quantity of the commodity underlying transactions in the relevant contract over the period for which the calculation is made, based on the average of the daily contract reference prices on the last day of each month during the period.

- A contract that is already included in the S&P GSCI™ at the time of determination and that is the only contract on the relevant commodity included in the S&P GSCI™ must, in order to continue to be included in the S&P GSCI™ after such time, have a total dollar value traded, over the relevant period, as the case may be and annualized, of at least U.S. $10 billion during at least one of the three most recent annual periods used in making the determination.

- A contract that is not included in the S&P GSCI™ at the time of determination and that is based on a commodity on which there are one or more contracts already included in the S&P GSCI™ at such time must, in order to be added to the S&P GSCI™ at such time, have a total dollar value traded, over the relevant period, as the case may be and annualized of at least U.S. $30 billion.

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

- A contract that is already included in the S&P GSCI™ at the time of determination and that is based on a commodity on which there are one or more contracts already included in the S&P GSCI™ at such time must, in order to continue to be included in the S&P GSCI™ after such time, have a total dollar value traded, over the relevant period, as the case may be and annualized, of at least U.S. $10 billion and at least U.S. $20 billion during at least one of the three most recent annual periods used in making the determination.

A contract that is:

- already included in the S&P GSCI™ at the time of determination must, in order to continue to be included after such time, have a reference percentage dollar weight of at least 0.10%. The reference percentage dollar weight of a contract is determined by multiplying the CPW (defined below) of a contract by the average of its daily contract reference prices on the last day of each month during the relevant period. These amounts are summed for all contracts included in the S&P GSCI™ and each contract's percentage of the total is then determined.

- A contract that is not included in the S&P GSCI™ at the time of determination must, in order to be added to the S&P GSCI™ at such time, have a reference percentage dollar weight of at least 0.75% (or at least 1.0% from January 2007).

- In the event that two or more contracts on the same commodity satisfy the eligibility criteria, such contracts will be included in the S&P GSCI™ in the order of their respective total quantity traded during the relevant period (determined as the total quantity of the commodity underlying transactions in the relevant contract), with the contract having the highest total quantity traded being included first, provided that no further contracts will be included if such inclusion would result in the portion of the S&P GSCI™ attributable to such commodity exceeding a particular level.

- If additional contracts could be included with respect to several commodities at the same time, that procedure is first applied with respect to the commodity that has the smallest portion of the S&P GSCI™ attributable to it at the time of determination. Subject to the other eligibility criteria relating to the composition of the S&P GSCI™, the contract with the highest total quantity traded on such commodity will be included. Before any additional contracts on the same commodity or on any other commodity are included, the portion of the S&P GSCI™ attributable to all commodities is recalculated. The selection procedure described above is then repeated with respect to the contracts on the commodity that then has the smallest portion of the S&P GSCI™ attributable to it.

The contracts currently included in the S&P GSCI™ are all futures contracts traded on the New York Mercantile Exchange, Inc. ("NYM"), the International Petroleum Exchange ("IPE"), the Chicago Mercantile Exchange ("CME"), the Chicago Board of Trade ("CBT"), the Coffee, Sugar & Cocoa Exchange, Inc. ("CSC"), the New York Cotton Exchange ("NYC"), the Kansas City Board of Trade ("KBT"), the Commodities Exchange Inc. ("CMX") and the London Metal Exchange ("LME").

The quantity of each of the contracts included in the S&P GSCI™ is determined on the basis of a five-year average (referred to as the "world production average") of the production quantity of the underlying commodity as published by the United Nations Statistical Yearbook, the Industrial Commodity Statistics Yearbook and other official sources. However, if a commodity is primarily a regional commodity, based on its production, use, pricing, transportation or other factors, S&P, in consultation with its advisory committee, may calculate the weight of such commodity based on regional, rather than world, production data. At present, natural gas is the only commodity the weight of which is calculated on the basis of regional production data, with the relevant region being North America.

The five-year moving average is updated annually for each commodity included in the S&P GSCI™, based on the most recent five-year period (ending approximately two years prior to the date of calculation and moving backwards) for which complete data for all commodities is available. The contract production weights, or CPWs, used in calculating the S&P GSCI™ are derived from world or

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

regional production averages, as applicable, of the relevant commodities, and are calculated based on the total quantity traded for the relevant contract and the world or regional production average, as applicable, of the underlying commodity. However, if the volume of trading in the relevant contract, as a multiple of the production levels of the commodity, is below specified thresholds, the CPW of the contract is reduced until the threshold is satisfied. This is designed to ensure that trading in each such contract is sufficiently liquid relative to the production of the commodity.

In addition, S&P performs this calculation on a monthly basis and, if the multiple of any contract is below the prescribed threshold, the composition of the S&P GSCI™ is reevaluated, based on the criteria and weighting procedure described above. This procedure is undertaken to allow the S&P GSCI™ to shift from contracts that have lost substantial liquidity into more liquid contracts, during the course of a given year. As a result, it is possible that the composition or weighting of the S&P GSCI™ will change on one or more of these monthly evaluation dates. In addition, regardless of whether any changes have occurred during the year, S&P reevaluates the composition of the S&P GSCI™, in consultation with the Advisory Committee, at the conclusion of each year, based on the above criteria. Other commodities that satisfy such criteria, if any, will be added to the S&P GSCI™. Commodities included in the S&P GSCI™ which no longer satisfy such criteria, if any, will be deleted.

S&P, in consultation with the Advisory Committee, also determines whether modifications in the selection criteria or the methodology for determining the composition and weights of and for calculating the S&P GSCI™ are necessary or appropriate in order to assure that the S&P GSCI™ represents a measure of commodity market performance. S&P has the discretion to make any such modifications, in consultation with the Advisory Committee.

The futures contracts currently included in the S&P GSCI™, their percentage dollar weights, their market symbols and the exchanges on which they are traded are as follows:

| Commodity | Weight October 16, 2007* | Market Symbol | Trading Facility |
|---|---|---|---|
| WTI Crude Oil | 37.97% | CL | NYM |
| Brent Crude Oil | 14.89% | LCO | IPE |
| Natural Gas | 7.04% | NG | NYM |
| Heating Oil | 5.97% | HO | NYM |
| Gas Oil | 5.14% | LGO | IPE |
| Copper | 3.75% | IC | LME |
| Aluminium | 2.52% | IA | LME |
| Corn | 2.66% | C | CBT |
| Live Cattle | 2.32% | LC | CME |
| Wheat | 4.00% | W | CBT |
| Gold | 1.94% | GC | CMX |
| Primary Nickel | 1.12% | IN | LME |
| Soybeans | 1.94% | S | CBT |
| Lean Hogs | 1.05% | LH | CME |
| RBOB Gas | 1.29% | RB | NYM |
| Zinc | 0.87% | IZ | LME |
| Sugar | 0.96% | SB | CSC |
| Red Wheat | 1.41% | KW | KBT |
| Cotton | 0.82% | CT | NYC |

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

| | | | |
|---|---|---|---|
| Coffee | 0.64 % | KC | CSC |
| Feeder Cattle | 0.53 % | FC | CME |
| Standard Lead | 0.74 % | IL | LME |
| Silver | 0.24 % | SI | CMX |
| Cocoa | 0.18 % | CC | CSC |

**Contract Expirations**

Because the S&P GSCI™ comprises actively traded contracts with scheduled expirations, it can only be calculated by reference to the prices of contracts for specified expiration, delivery or settlement periods, referred to as "contract expirations." The contract expirations included in the S&P GSCI™ for each commodity during a given year are designated by S&P, in consultation with the Advisory Committee, provided that each such contract must be an "active contract." An "active contract" for this purpose is a liquid, actively traded contract expiration, as defined or identified by the relevant trading facility or, if no such definition or identification is provided by the relevant trading facility, as defined by standard custom and practice in the industry.

If a trading facility deletes one or more contract expirations, the S&P GSCI™ will be calculated during the remainder of the year in which such deletion occurs on the basis of the remaining contract expirations designated by S&P. If a trading facility ceases trading in all contract expirations relating to a particular contract, S&P may designate a replacement contract on the commodity. The replacement contract must satisfy the eligibility criteria for inclusion in the S&P GSCI™. To the extent practicable, the replacement will be effected during the next monthly review of the composition of the index. If that timing is not practicable, S&P will determine the date of the replacement and will consider a number of factors, including the differences between the existing contract and the replacement contract with respect to contractual specifications and contract expirations.

**Value of the GSCI**

The value of the S&P GSCI™ on any given day is equal to the total dollar weight of the S&P GSCI™ divided by a normalizing constant that assures the continuity of the S&P GSCI™ over time. The total dollar weight of the S&P GSCI™ is the sum of the dollar weight of each of the underlying commodities.

The dollar weight of each such commodity on any given day is equal to:

- the daily contract reference price,

- multiplied by the appropriate CPWs, and

- during a roll period, the appropriate "roll weights" (discussed below).

The daily contract reference price used in calculating the dollar weight of each commodity on any given day is the most recent daily contract reference price made available by the relevant trading facility, except that the daily contract reference price for the most recent prior day will be used if the exchange is closed or otherwise fails to publish a daily contract reference price on that day. In addition, if the trading facility fails to make a daily contract reference price available or publishes a daily contract reference price that, in the reasonable judgment of S&P, reflects manifest error, the relevant calculation will be delayed until the price is made available or corrected; provided, that, if the price is not made available or corrected by 4:00 p.m. New York City time, S&P may, if it deems such action to be appropriate under the circumstances, determine the appropriate daily contract reference price for the applicable futures contract in its reasonable judgment for purposes of the relevant S&P GSCI™ calculation.

**Contract Daily Return**

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

The contract daily return on any given day is equal to the sum, for each of the commodities included in the S&P GSCI™, of the applicable daily contract reference price on the relevant contract multiplied by the appropriate CPW and the appropriate "roll weight," divided by the total dollar weight of the S&P GSCI™ on the preceding day, minus one.

The "roll weight" of each commodity reflects the fact that the positions in contracts must be liquidated or rolled forward into more distant contract expirations as they approach expiration. If actual positions in the relevant markets were rolled forward, the roll would likely need to take place over a period of days. Since the S&P GSCI™ is designed to replicate the performance of actual investments in the underlying contracts, the rolling process incorporated in the S&P GSCI™ also takes place over a period of days at the beginning of each month (referred to as the "roll period"). On each day of the roll period, the "roll weights" of the first nearby contract expirations on a particular commodity and the more distant contract expiration into which it is rolled are adjusted, so that the hypothetical position in the contract on the commodity that is included in the S&P GSCI™ is gradually shifted from the first nearby contract expiration to the more distant contract expiration.

If on any day during a roll period any of the following conditions exists, the portion of the roll that would have taken place on that day is deferred until the next day on which such conditions do not exist:

- no daily contract reference price is available for a given contract expiration;

- any such price represents the maximum or minimum price for such contract month, based on exchange price limits (referred to as a "Limit Price");

- the daily contract reference price published by the relevant trading facility reflects manifest error, or such price is not published by 4:00 p.m., New York City time. In that event, S&P may, but is not required to, determine a daily contract reference price and complete the relevant portion of the roll based on such price; provided, that, if the trading facility publishes a price before the opening of trading on the next day, S&P will revise the portion of the roll accordingly; or

- trading in the relevant contract terminates prior to its scheduled closing time.

If any of these conditions exist throughout the roll period, the roll with respect to the affected contract, will be effected in its entirety on the next day on which such conditions no longer exist.

**Calculation of the Index**

The value of any of the Index on any S&P GSCI™ business day is equal to the product of (1) the value of the underlying futures contracts on the immediately preceding S&P GSCI™ business day multiplied by (2) one plus the contract daily return of the applicable Index on the S&P GSCI™ business day on which the calculation is made.

**Information**

All information contained herein relating to the S&P GSCI™ and each of the Index, including their make-up, method of calculation, changes in its components and historical performance, has been derived from publicly available information.

The information contained herein with respect to each of the Index and the S&P GSCI™ reflects the policies of and is subject to change by the S&P.

Current information regarding the market value of the Index is available from S&P and from numerous public information sources. The Issuer makes no representation that the publicly available information about the Index is accurate or complete.

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

## Appendix 5

## USE OF PROCEEDS AND HEDGING

The Issuer will use the net proceeds it receives from the sale of the Notes for the purposes described in the Base Prospectus under "Use of Proceeds". The affiliates of the Issuer and the Guarantor may also use those proceeds in transactions intended to hedge the Issuer's obligations under the Notes as described below.

In anticipation of the sale of the Notes, certain affiliates of the Issuer expect to enter into hedging transactions involving purchases of instruments comprising or linked to, the Index prior to or on the Trade Date. In addition, from time to time after the Issuer issues the Notes, certain affiliates of the Issuer may enter into additional hedging transactions or unwind those hedging transactions they have entered into. In this regard, the affiliates of the Issuer may:

- acquire or dispose of long or short positions in listed or over-the-counter options, futures, or other instruments comprising or linked to, some or all of the Index Contracts (including the underlying physical commodities) or the Index;

- acquire or dispose of long or short positions in listed or over-the-counter options, futures, or other instruments comprising or linked to, the level of other similar market indices, contracts or commodities; or

- any combination of the above.

Affiliates of the Issuer may acquire a long or short position in securities similar to the Notes from time to time and may, in our or their sole discretion, hold or resell those securities.

Affiliates of the Issuer may close out our or their hedge positions on or before the Valuation Date. That step may involve sales or purchases of listed or over-the-counter options or futures on Index Contracts (including the underlying physical commodities) or listed or over-the-counter options, futures, or other instruments linked to the level of the Index Contracts or the Index, as well as other indices designed to track the performance of the Index or other components of the commodities market.

**The hedging activity discussed above may adversely affect the value of the Index and, as a consequence, the market value of the Notes from time to time and the amount payable at maturity or upon redemption. See Appendix 2 ("Risk Factors") for a discussion of possible adverse effects related to the hedging activities of the affiliates of the Issuer.**

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

**Appendix 6**

## DESCRIPTION OF DTC, THE METHOD OF EFFECTING BOOK-ENTRY TRANSFERS OF SECURITIES DISTRIBUTED THROUGH DTC AND CERTAIN RELATED MATTERS

1.     The Depository Trust Company ("DTC"), New York, NY, will act as securities depository for the Notes. The Notes will be issued as fully-registered securities registered in the name of Cede & Co. (DTC's partnership nominee) or such other name as may be requested by an authorized representative of DTC. One fully-registered global Note will be issued for the Notes, in the aggregate principal amount of such issue, and will be deposited with DTC.

2.     DTC, the world's largest securities depository, is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934. DTC holds and provides asset servicing for over 2.2 million issues of U.S. and non-U.S. equity issues, corporate and municipal debt issues, and money market instruments from over 100 countries that DTC's participants ("Direct Participants") deposit with DTC. DTC also facilitates the post-trade settlement among Direct Participants of sales and other securities transactions in deposited securities, through electronic computerized book-entry transfers and pledges between Direct Participants' accounts. This eliminates the need for physical movement of securities certificates. Direct Participants include both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. DTC is a wholly-owned subsidiary of The Depository Trust & Clearing Corporation ("DTCC"). DTCC, in turn, is owned by a number of Direct Participants of DTC and Members of the National Securities Clearing Corporation, Fixed Income Clearing Corporation, and Emerging Markets Clearing Corporation (NSCC, FICC, and EMCC, also subsidiaries of DTCC), as well as by the New York Stock Exchange, Inc., the American Stock Exchange LLC, and the National Association of Securities Dealers, Inc. Access to the DTC system is also available to others such as both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, and clearing corporations that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly ("Indirect Participants"). DTC has Standard & Poor's highest rating: AAA. The DTC Rules applicable to its Participants are on file with the Securities and Exchange Commission. More information about DTC can be found at www.dtcc.com and www.dtc.org.

3.     Purchases of Notes under the DTC system must be made by or through Direct Participants, which will receive a credit for the Notes on DTC's records. The ownership interest of each actual purchaser of each Note ("Beneficial Owner") is in turn to be recorded on the Direct and Indirect Participants' records. Beneficial Owners will not receive written confirmation from DTC of their purchase. Beneficial Owners are, however, expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which the Beneficial Owner entered into the transaction. Transfers of ownership interests in the Notes are to be accomplished by entries made on the books of Direct and Indirect Participants acting on behalf of Beneficial Owners. Beneficial Owners will not receive certificates representing their ownership interests in Notes, except in the event that use of the book-entry system for the Notes is discontinued.

4.     To facilitate subsequent transfers, all Notes deposited by Direct Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co., or such other name as may be requested by an authorized representative of DTC. The deposit of Notes with DTC and their

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

registration in the name of Cede & Co. or such other DTC nominee do not effect any change in beneficial ownership. DTC has no knowledge of the actual Beneficial Owners of the Notes; DTC's records reflect only the identity of the Direct Participants to whose accounts such Notes are credited, which may or may not be the Beneficial Owners. The Direct and Indirect Participants will remain responsible for keeping account of their holdings on behalf of their customers.

5.      Conveyance of notices and other communications by DTC to Direct Participants, by Direct Participants to Indirect Participants, and by Direct Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time.

6.      Redemption notices shall be sent to DTC. If less than all of the Notes within an issue are being redeemed, DTC's practice is to determine by lot the amount of the interest of each Direct Participant in such issue to be redeemed.

7.      Neither DTC nor Cede & Co. (nor any other DTC nominee) will consent or vote with respect to Notes unless authorized by a Direct Participant in accordance with DTC's Procedures. Under its usual procedures, DTC mails an Omnibus Proxy to Issuer as soon as possible after the record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct Participants to whose accounts Notes are credited on the record date (identified in a listing attached to the Omnibus Proxy).

8.      Redemption proceeds, distributions, and dividend payments on the Notes will be made to Cede & Co., or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit Direct Participants' accounts upon DTC's receipt of funds and corresponding detail information from Issuer or Agent, on payable date in accordance with their respective holdings shown on DTC's records. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the responsibility of such Participant and not of DTC, Agent, or Issuer, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of redemption proceeds, distributions, and dividend payments to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) is the responsibility of Issuer or Agent, disbursement of such payments to Direct Participants will be the responsibility of DTC, and disbursement of such payments to the Beneficial Owners will be the responsibility of Direct and Indirect Participants.

9.      DTC may discontinue providing its services as depository with respect to the Notes at any time by giving reasonable notice to Issuer or Agent. Under such circumstances, in the event that a successor depository is not obtained, Note certificates are required to be printed and delivered.

10.     Issuer may decide to discontinue use of the system of book-entry-only transfers through DTC (or a successor securities depository). In that event, Note certificates will be printed and delivered to DTC.

11.     The information in this section concerning DTC and DTC's book-entry system has been obtained from sources that Issuer believes to be reliable, but Issuer takes no responsibility for the accuracy thereof.

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

## Appendix 7

### Certain U.S. Federal Income Tax Consequences

The discussion of U.S. tax matters set forth below was written in connection with the promotion or marketing of the Notes and was not intended or written to be used, and cannot be used, by any prospective purchaser for the purpose of avoiding tax-related penalties under U.S. federal, state or local tax law. Each prospective purchaser should seek advice based on its particular circumstances from an independent tax advisor.

The following is a summary of certain U.S. federal income tax consequences of the purchase, ownership and disposition of Notes as of the date hereof. If any of the information herein is inconsistent with the information in the Base Prospectus, you should rely on the information herein.

This discussion is based on the Internal Revenue Code of 1986, as amended (the "Code"), administrative pronouncements, judicial decisions and currently effective and proposed Treasury Regulations, changes to any of which subsequent to the date hereof may affect the tax consequences described in this discussion, possibly with retroactive effect. This discussion is only addressed to U.S. Holders (as defined below) who purchase Notes at their initial issuance and hold the Notes as capital assets. This discussion does not address all aspects of U.S. federal income taxation that may be relevant to an investor in light of its own circumstances or all rules that may be relevant to investors that are subject to special treatment under the U.S. federal income tax laws (e.g., certain financial institutions, entities classified as partnerships for U.S. federal income tax purposes, tax-exempt organizations, dealers in options or securities, U.S. Holders subject to the alternative minimum tax, U.S. Holders whose functional currency is not the U.S. dollar or persons who hold Notes as a part of a hedging transaction, straddle, conversion or other integrated transaction). Moreover, the effect of any applicable U.S. state, local or non-U.S. tax laws is not discussed in this summary.

As the law applicable to the U.S. federal income taxation of instruments such as the Notes is technical and complex, the discussion below necessarily represents only a general summary.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of a Note that is, for U.S. federal income tax purposes, a corporation organized under the laws of the United States or any political subdivision thereof, or an estate or trust the income of which is subject to U.S. federal income taxation regardless of its source. If a partnership invests in Notes, the tax treatment of a partner will generally depend on the status of the partner and on the activities of the partnership. Partners in a partnership that invests in Notes are urged to consult their own tax advisors about the consequences of the investment.

### Classification of the Notes

No statutory, judicial or administrative authority directly addresses the characterization of the Notes or instruments similar to the Notes for U.S. federal income tax purposes, and no ruling is being requested from the IRS with respect to the Notes. As a result, significant aspects of the U.S. federal income tax treatment of the consequences of owning and disposing of the Notes are not certain. The Issuer intends to treat the Notes as cash-settled financial contracts. This treatment is not binding on the U.S. Internal Revenue Service (the "IRS") or the courts. No assurance can be given that the IRS will not attempt to challenge this treatment of the Notes or that the IRS would not be successful in any such challenge. Except as otherwise indicated, this discussion assumes that the Notes will be treated as cash-settled financial contracts.

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

**Final Redemption Amount**

There is no direct authority addressing the treatment of the Final Redemption Amount under current law, and such treatment is not clear. Neither the Final Redemption Amount nor the portion thereof referred to as Interest should constitute interest income for U.S. federal income tax purposes, but may in whole or in part constitute other ordinary income that may need to be taken into income by a U.S. Holder in advance of when it is paid. Prospective investors should consult their own tax advisors about the treatment of the Final Redemption Amount.

**Sale, Exchange or Other Disposition of a Note**

Upon a sale, exchange or other disposition of a Note, a portion of a U.S. Holder's amount realized may be treated as ordinary income. A U.S. Holder will recognize capital gain or loss in an amount equal to the difference between the remaining portion of the amount realized, if any, and the U.S. Holder's basis in its Notes. A U.S. Holder's basis in a Note should generally equal its cost for the Note plus the amount of accrued but unpaid payments, if any. The deductibility of capital losses is subject to limitations.

**Treatment of Notes under the RIC Rules**

This discussion does not consider how the Notes would be treated for purposes of the various asset and income tests relevant to an investor that is a regulated investment company (or "RIC") for U.S. federal income tax purposes. In particular, this discussion does not consider the application of recent IRS authority about the treatment of income from certain derivative contracts with respect to a commodity index for purposes of the requirement that a RIC earn at least 90% of its gross income from certain enumerated sources.

**Alternative Characterizations of the Notes**

Due to the absence of authorities that directly address the proper tax treatment of the Notes, no assurance can be given that the IRS will accept, or that a court will uphold, the characterization and treatment described above. A successful assertion of an alternate characterization of the Notes by the IRS could affect the timing and the character of any income or loss with respect to the Notes. It is possible, for instance, that the IRS could seek to apply the rules governing "contingent payment debt instruments," which would alter the manner in which income on the Notes is accounted for (including requiring a U.S. Holder to recognize income in the taxable year preceding the Maturity Date even though no payment is actually made with respect to the Notes in that taxable year) and would cause gain on the Notes to be ordinary rather than capital. Alternatively, the IRS might attempt to characterize the Notes as representing a deposit and cash settled forward contract or assert some other characterization that could affect the timing, amount and character of income, deductions, gain or loss on the Notes. The IRS might also attempt to characterize amounts referred to as Interest, in whole or in part, as interest, a payment analogous to option premium or a purchase price adjustment or rebate. U.S. Holders are urged to consult their own tax advisors regarding the U.S. federal income tax consequences of an investment in the Notes.

**Information Reporting and Backup Withholding**

A U.S. Holder may be subject to information reporting unless it establishes that payments to it are exempt from these rules (e.g., payments to corporations generally are exempt from these rules).

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

Payments that are subject to information reporting may be subject to backup withholding if a U.S. Holder does not provide its taxpayer identification number and otherwise comply with the backup withholding rules. Amounts withheld under the backup withholding rules are available to be credited against a U.S. Holder's U.S. federal income tax liability and may be refunded to the extent they exceed such liability, provided the required information is provided to the IRS.

**Non-U.S. Holders**

An investor that is not a U.S. Holder may be subject to the rules discussed under "—Information Reporting and Backup Withholding" described above if it does not establish that it is not a U.S. person for U.S. federal income tax purposes.

USD 12,7m Notes due October 2008 linked to S&P GSCI Total Return Index

**Appendix 8**

**Form of Put Option Notice**

To:    The Bank of New York
       One Canada Square
       London E14 5AL
       (the "Fiscal Agent")

**Lehman Brothers Treasury Co. B.V.**

*(incorporated with limited liability in The Netherlands and having its statutory domicile in Amsterdam)*

Issue of

USD 12,700,000  Floating Rate Index Linked Redemption Amount Notes due October 2008
linked to the S&P GSCI™ Total Return Index
and a U.S. Treasury Bill return rate
unconditionally and irrevocably guaranteed by
**LEHMAN BROTHERS HOLDINGS INC.**
*(incorporated in the State of Delaware)*

under the USD 100,000,000,000 Euro Medium-Term Note Program

**PUT OPTION NOTICE**

By depositing this duly completed Notice with the above Fiscal Agent for the above Notes (the
"Notes") in accordance with Condition 8(e) (*Redemption at the option of Noteholders*) and the Final
Terms dated 19 October 2007 (the "**Final Terms**"), the undersigned certifies that it is the Holder of all
the Notes outstanding, including the principal amount of Notes specified below and evidenced by the
Note certificate(s) referred to below [and presented with this Put Option Notice - *delete these words if
Notes are evidenced by a global Note certificate*] and, as Holder of all the Notes, exercises its option to
have such principal amount of Notes specified below redeemed in accordance with Condition 8(e)
(*Redemption at the option of Noteholders*) and the Final Terms on the Optional Redemption Date (as
defined in the Final Terms).

This Notice relates to Note(s) in the aggregate principal amount of USD.................. evidenced by
Note Certificate(s) bearing the following serial numbers:

......................................................

......................................................

......................................................

Payment should be made by [*complete and delete as appropriate*]:

—    U.S. dollar cheque drawn on a bank in New York and in favour of [*name of payee*] and mailed
     at the payee's risk by uninsured airmail post to [*name of addressee*] at [*addressee's address*].

**OR**

—    transfer to [*details of the relevant account maintained by the payee*] with [*name and address of
     the relevant bank*].

USD 12.7m Notes due October 2008 linked to S&P GSCI Total Return Index

If the Note certificates referred to above are to be returned to the undersigned, they should be returned by post to:

..................................................

..................................................

..................................................

The undersigned acknowledges that any Note certificates so returned will be sent by uninsured airmail post at the risk of the registered Holder.

Name of Holder:        ..............................................

Signature
of Holder:        .............................................

Date:        ...........................................

*[To be completed by Fiscal Agent:]*

Received by: ...........................................

*[Signature and stamp of Fiscal Agent:]*

At its office at ........................................

..............................................................

On .......................................................

**THIS NOTICE WILL NOT BE VALID UNLESS ALL OF THE PARAGRAPHS REQUIRING COMPLETION HAVE BEEN DULY COMPLETED.**

# Exhibit E

 

**CUSTOMER CLAIM FORM**
**LEHMAN BROTHERS INC.**

**COPY**

Account Name: <u>DWS Commodity Securities Fund</u>    Daytime Phone: <u>212-454-6187</u>

Account Number: <u>See Annex A</u>    Email: <u>j-christopher.jackson@db.com</u>

Address: <u>280 Park Avenue</u>

<u>New York, NY 10017</u>    Taxpayer I.D. Number

Contact Person: <u>J. Christopher Jackson</u>    (Social Security No.): <u>202065625</u>

FILED / RECEIVED

JAN 27 2009

## PLEASE NOTE

- **A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT.**

- **TO BE ELIGIBLE FOR THE MAXIMUM PROTECTION AFFORDED UNDER THE SECURITIES INVESTOR PROTECTION ACT ("SIPA"), ALL CUSTOMER CLAIMS SHOULD BE RECEIVED BY THE TRUSTEE ON OR BEFORE JANUARY 30, 2009; THE TRUSTEE WILL DETERMINE WHETHER CLAIMS MEET THE STATUTORY REQUIREMENTS FOR "CUSTOMER" CLAIMS UNDER SIPA; INCLUSION OF A CLAIM OR CLAIM TYPE ON THIS CLAIM FORM IS NOT DETERMINATIVE OF CUSTOMER STATUS UNDER SIPA.**

- **THE DEADLINE FOR FILING ALL CLAIMS IS JUNE 1, 2009. <u>NO CLAIM WILL BE ALLOWED IF IT IS RECEIVED AFTER THAT DATE.</u>**

- **ALL CLAIMS ARE DATED AS OF THE DATE <u>RECEIVED</u> BY THE TRUSTEE.**

- **YOU MAY FILE YOUR CLAIM ELECTRONICALLY ONLINE AT WWW.LEHMANTRUSTEE.COM OR SEND YOUR COMPLETED AND SIGNED CLAIM FORM TO THE TRUSTEE VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED.**

- **IF YOUR ACCOUNT HAS BEEN TRANSFERRED TO ANOTHER BROKERAGE FIRM, BUT YOU BELIEVE YOU HAVE A CLAIM FOR PROPERTY OWED TO YOU BY LEHMAN BROTHERS INC., YOU MUST FILE A CLAIM TO PROTECT YOUR RIGHTS.**

- **LEHMAN BROTHERS INC. IS THE ONLY LEHMAN ENTITY THAT IS A DEBTOR IN THIS SIPA LIQUIDATION PROCEEDING. THIS CUSTOMER CLAIM FORM APPLIES ONLY TO LEHMAN BROTHERS INC. AND DOES NOT APPLY TO ANY OTHER LEHMAN ENTITY, INCLUDING ANY ENTITY IN A PROCEEDING UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE.**

This claim form must be completed electronically online at www.lehmantrustee.com or mailed promptly, together with supporting documentation, to the following:

If by first class mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 6389
Portland, OR 97228-6389

If by overnight mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

1. **CLAIM FOR MONEY BALANCES OR CASH AS OF SEPTEMBER 19, 2008:**

    a.   LBI owes me a credit or cash in the amount of:        $ 14,373,860

    b.   I owe LBI a debit or cash in the amount of:           $      0

    c.   If you wish to repay the debit balance listed in point b. above please
        insert the amount you wish to repay and attach a check payable to
        "James W. Giddens, Trustee for the SIPA Liquidation of Lehman
        Brothers Inc." If you wish to make a payment, **it must be enclosed**
        with this claim form.

                                                             $

2. **CLAIM FOR SECURITIES AS OF SEPTEMBER 19, 2008:**

        <u>**Please Do Not Claim Any Securities You Have In Your Possession**</u>

|  |  | YES | NO |
|---|---|---|---|
|  |  | (Circle Y or N) |  |
| a. | LBI owes me securities: | Y | Ⓝ |
| b. | I owe LBI securities: | Y | Ⓝ |

    c.   If yes to either, please list below (or in
        additional pages as necessary):

| | | | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|---|
| **Trade Date of Transaction (mm/dd/yyyy)** | **Name of Security** | **CUSIP** | **LBI Owes Me (Long)** | **I Owe LBI (Short)** |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

If additional space is needed, attach additional pages providing the information in the exact
format above.

### 3.    COMMODITY FUTURES CLAIMS

|  | YES | NO |
|---|---|---|
|  |  | (Circle Y or N) |
| Do you have a claim based on a commodity futures account? | Y | Ⓝ |

If the answer to the above question is "yes," please state the amount, and explain the basis for your claim below, attaching additional pages and supporting documents as necessary:

Amount of Claim: _____

Basis for Claim: _____

_____

_____

_____

_____

### WHEN COMPLETING SECTIONS 1 THROUGH 3 PLEASE KEEP IN MIND:

- If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate that your claim is an estimated claim.

- Proper documentation can speed the review, allowance, and satisfaction of your claim.

- Please enclose: copies of your last LBI account statement; purchase or sale confirmation slips; copies of checks that relate to the securities or cash you claim; and any other documentation or correspondence you believe will be of assistance in processing your claim.

- Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.

- If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

### PLEASE CIRCLE THE APPROPRIATE ANSWER FOR ITEMS 4 THROUGH 11.

NOTE:    IF "Y" IS CIRCLED FOR ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |  |
|---|---|---|---|---|
|  |  |  | (Circle Y or N) |  |
| 4. | Does your claim in any way relate to an entity other than Lehman Brothers Inc. (for example, Lehman Brothers Holdings Inc., or another Lehman subsidiary)? | Y | Ⓝ | Please see Annex A |
| 5. | Has there been any change in your account since September 19, 2008? | Y | Ⓝ |  |

3

6.  Are you or were you a party to a repurchase or reverse repurchase agreement, director, officer, partner, shareholder, lender to, or capital contributor of LBI?        Y        Ⓝ

7.  Are you related to, or do you have any business venture with, any of the persons specified in "6" above, or any employee or other person associated in any way with LBI? If so, give name(s).        Y        Ⓝ

8.  Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of LBI?        Y        Ⓝ

9.  Is this claim being filed on behalf of a customer of a broker or dealer or bank? If so, provide documentation with respect to each customer on whose behalf you are claiming.        Y        Ⓝ

10. Have you ever given any discretionary authority to any person to execute securities transactions with or through LBI on your behalf? Give names, addresses and phone numbers.        Ⓨ        N   **Please see Annex A**

11. Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker.        Y        Ⓝ

Please list the full name, address, phone number, and email address of anyone assisting you in the preparation of this claim form:

Full name: _Georgia Bullitt, Morgan, Lewis & Bockius  LLP_

Address: _101 Park Avenue, New York, NY 10178_

Phone number: _212-309-6683_

Email address: _GBullitt@morganlewis.com_

If more than one person is assisting you, attach additional pages providing the information in the exact format above.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF UP TO $50,000 OR IMPRISONMENT OF UP TO FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _JANUARY 27, 2009_        Signature _____

Date _____        Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

4

Please see Attachment to Customer Proof of Claim

## Annex A

Account Number:

The DWS Commodities Securities Fund ("DWS Fund") custodies its assets with Brown Brothers Harriman & Co.  It did not custody any assets at Lehman Brothers Inc. ("LBI").

Response to Question 4:

The claim of the DWS Fund against Lehman Brothers Inc. ("LBI") is based on a securities contact between LBI and DWS Fund.  The securities contract involved the sale of structured notes issued by Lehman Brothers Treasury Co. B.V. and guaranteed by Lehman Brothers Holdings Inc.  However, the contract with LBI was to sell the structured notes.

Response to Question 10:

The DWS Fund has given discretionary authority to execute securities transactions with or through LBI to its adviser, Deutsche Investment Management Americas Inc.  The contact for the investment adviser is:

J. Christopher Jackson, Esq.
Director & Head of U.S. Retail Legal
Deutsche Asset Management -- Legal Division
280 Park Avenue
New York, New York 10017
(212) 454-6187

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| LEHMAN BROTHERS INC., | )    Case No. 08-01420 (JMP) SIPA |
| | ) |
| Debtor. | ) |

## ATTACHMENT TO CUSTOMER PROOF OF CLAIM
## OF DWS COMMODITY SECURITIES FUND

1.      J. Christopher Jackson, Chief Legal Officer of the DWS Commodity Securities

Fund ("DWS Commodity Fund"), whose business and mailing address is 280 Park Avenue, New

York, NY 10017 is an authorized signatory of DWS Commodity Fund.

2.      On September 19, 2008 (the "Commencement Date"), a proceeding was

commenced under the Securities Investor Protection Act of 1970 ("SIPA"), with respect to

Lehman Brothers Inc. ("LBI" or the "Debtor"), and James W. Giddens was appointed as trustee

under SIPA to administer the LBI estate.    As more fully described below, as of the

Commencement Date, the Debtor was and still is indebted to DWS Commodity Fund in the

aggregate amount of at least $14,373,860.

3.      The DWS Commodity Fund has a customer claim under SIPC Rule 300(d) as it is

a customer that "executed a transaction out of which arose an open contractual commitment

with" LBI.    The DWS Commodity Fund, Inc. qualifies as a customer under SIPC Rule 300(d)

because it meets the definition of customer in SIPA[1] and it is not a broker-dealer.[2]    Further, the

---

[1] 15 U.S.C. §78lll(2) (2009).

[2] Although it is not required by the rule, the DWS Communications Fund, Inc. also notes that its investment adviser,
Deutsche Investment Management Americas Inc. ("DIMA") is not a broker-dealer.

1

structured notes involved in the claim by the DWS Communications Fund, Inc. are securities under SIPA.[3]

4.      On September 10, 2008, the DIMA trading desk, on behalf of the DWS Communications Fund, Inc., submitted an order (the "Sell Order") to LBI to sell 12,700,000 face value Floating Rate Notes Linked to the S&P GSCI Total Return Index due October 2008 (Cusip 52519VAR) ("Structured Notes"). The Structured Notes were issued by Lehman Brothers Treasury Co. BV and guaranteed by Lehman Brothers Holdings Inc. The Sell Order for the Structured Notes was transmitted by Peter Saganski, of the DIMA trading desk, to Olga Kurovskaya, of LBI, by telephone. Ms. Kurovskaya accepted the Sell Order.[4] A copy of the FINRA BrokerCheck Report for Ms. Kurovskaya, indicating her employment by and registration with LBI, is attached as Exhibit A.

5.      DIMA received a confirmation for its sale of the Structured Notes through LBI ("Structured Notes Trade") on September 11, 2008. The confirmation reflected that the DWS Commodity Fund was entitled to receive sales proceeds of $14,373,860 under the Structured Notes Trade. The Structured Notes Trade was scheduled to settle on September 15, 2008. Attached as Exhibit B is a copy of e-mail confirmation showing the Structured Notes Trade with LBI.

6.      On September 15, 2008, and again on the following days, the DWS Commodity Fund tendered the Structured Notes to LBI versus payment. In each case, LBI failed to tender

---

[3] 15 U.S.C. §78lll(14) (2009) (including notes and evidence of indebtedness in the definition of a security).

[4] DIMA retains a copy of the recording of this conversation, which confirms that the transaction was a customer sale to LBI and not an exercise of a "put" of the securities back to the issuer. Specifically, the parties agreed that the transaction would settle T+3 and LBI did not request that DIMA complete a Put Option Notice, whereas the offering documents for the Structure Notes specify that a "put" would only be effective on 5 days notice and could only be accomplished through completion of the Put Option Notice included with the term sheet. Further, the offering documents for the Structured Notes do not state that LBI was authorized to act as paying agent or put agent in connection with the exercise of put rights by holders of the Structured Notes.

2

payment under the Structured Notes Trade. DWS Commodity Fund remains willing to deliver the Structured Notes versus payment by LBI of the agreed upon $14,373,860. Also included in Exhibit B are e-mails from LBI stating its intention not to settle the Structured Notes Trade.

7.      In executing and filing this proof of claim, the DWS Commodity Fund does not submit itself to the jurisdiction of this Court for any purpose other than that set forth in this proof of claim, and does not waive (i) any of its rights and remedies against any other person or entity who may be liable for all or part of the claim set forth herein, whether an affiliate, assignee, guarantor or otherwise, of the Debtor, (ii) any other obligation owed to the DWS Commodity Fund and rights of off-set, (iii) any past, present or future defaults (or events of default) by the Debtor, or (iv) any right to seek to withdraw the reference with respect to the subject matter of this claim or any objection, counterclaim or other proceeding commenced with respect thereto. The filing of this proof of claim is not an election of remedies.

8.      The DWS Commodity Fund expressly reserves the right to amend or supplement this proof of claim in any respect at any time, including, without limitation, in respect of additional amounts.

Dated: New York, New York
      January 26, 2009

                                     DWS COMMODITY SECURITIES FUND

                                     By: _____

                                     J. Christopher Jackson
                                     Chief Legal Officer of the
                                     DWS Commodity Securities Fund

3

# Exhibit A



70

**BrokerCheck Report**

# OLGA KUROVSKAYA

CRD# 4986843

Report #51378-26744, data current as of Friday, January 23, 2009.

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 3 |
| Registration and Employment History | 4 |
| About this BrokerCheck Report | 6 |

**Dear Investor:**



FINRA has generated the following BrokerCheck report for OLGA KUROVSKAYA. The information contained within this report has been provided by a FINRA brokerage firm(s) and securities regulators as part of the securities industry's registration and licensing process and represents the most current information reported to the Central Registration Depository (CRD®).

FINRA regulates the securities markets for the ultimate benefit and protection of the investor. FINRA believes the general public should have access to information that will help them determine whether to conduct, or continue to conduct, business with a FINRA member. To that end, FINRA has adopted a public disclosure policy to make certain types of information available to you. Examples of information FINRA provides include: regulatory actions, investment-related civil suits, customer disputes that contain allegations of sales practice violations against brokers, all felony charges and convictions, misdemeanor charges and convictions relating to securities violations, and financial events such as bankruptcies, compromises with creditors, judgments, and liens.

When evaluating this report, please keep in mind that it may include items that involve pending actions or allegations that may be contested and have not been resolved or proven. Such items may, in the end, be withdrawn or dismissed, or resolved in favor of the individual broker, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

The information in this report is not the only resource you should consult. FINRA recommends that you learn as much as possible about the individual broker or firm from other sources, such as professional references, local consumer and investment groups, or friends and family members who already have

established investment business relationships.

FINRA BrokerCheck is governed by federal law, Securities and Exchange Commission (SEC) regulations and FINRA rules approved by the SEC. State disclosure programs are governed by state law, and may provide additional information on brokers licensed by the state. Therefore, you should also consider requesting information from your state securities regulator. Refer to www.nasaa.org for a complete list of state securities regulators.

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions as well as additional resources. For more information about FINRA, visit www.finra.org.

# OLGA KUROVSKAYA

CRD# 4986843

**Currently employed by and registered with the following FINRA Firms:**

**CITIGROUP GLOBAL MARKETS INC.**
390 - 388 GREENWICH STREET
NEW YORK, NY 10013-2396
CRD# 7059
Registered with this firm since: 11/17/2008

## Report Summary for this Broker



The report summary provides an overview of the broker's professional background and conduct. The individual broker, a FINRA-registered firm(s), and/or securities regulator(s) have provided the information contained in this report as part of the securities industry's registration and licensing process. The information contained in this report was last updated by either the broker, a previous employing brokerage firm, or a securities regulator on 12/04/2008.

### Broker Qualifications

**This broker is registered with:**

• 4 Self-Regulatory Organizations

• 1 U.S. state or territory

Is this broker currently suspended or inactive with any regulator? **No**

**This broker has passed:**

• 0 Principal/Supervisory Exams

• 2 General Industry/Product Exams

• 1 State Securities Law Exam

### Registration and Employment History

This broker was previously registered with the following FINRA firms:

**BARCLAYS CAPITAL INC.**
CRD# 19714
NEW YORK, NY
09/2008 - 10/2008

**LEHMAN BROTHERS INC.**
CRD# 7506
NEW YORK, NY
09/2005 - 09/2008

For additional registration and employment history details as reported by the broker, refer to the Registration and Employment History section of this report.

### Disclosure of Customer Disputes, Disciplinary, and Regulatory Events

This section includes details regarding disclosure events reported by or about this broker to CRD as part of the securities industry registration and licensing process. Examples of such disclosure events include formal investigations and disciplinary actions initiated by regulators, customer disputes, certain criminal charges and/or convictions, as well as financial disclosures, such as bankruptcies and unpaid judgments or liens.

Are there events disclosed about this broker? **No**

©2008 FINRA. All rights reserved.    Report# 51378-26744 about OLGA KUROVSKAYA. Data current as of Friday, January 23, 2009.

# Broker Qualifications



## Registrations

This section provides the SROs, states and U.S. territories the broker is currently registered and licensed with, the category of each registration, and the date on which the registration status became effective. This section also provides information on the physical location of each branch that the broker is associated with, for each listed employment.

**This individual is currently registered with 4 SROs and is licensed in 1 U.S. state or territory through his or her employer.**

## Employment 1 of 1

Firm Name:          **CITIGROUP GLOBAL MARKETS INC.**

Main Office Address:  **390 - 388 GREENWICH STREET**
                     **NEW YORK, NY  10013-2396**

Firm CRD#:          **7059**

| SRO | Category | Status | Date |
|-----|----------|--------|------|
| FINRA | General Securities Representative | APPROVED | 11/17/2008 |
| Chicago Board Options Exchange | General Securities Representative | APPROVED | 11/17/2008 |
| NASDAQ Stock Market | General Securities Representative | APPROVED | 11/17/2008 |
| New York Stock Exchange | General Securities Representative | APPROVED | 11/17/2008 |

| U.S. State/ Territory | Category | Status | Date |
|-----|----------|--------|------|
| New York | Agent | APPROVED | 11/17/2008 |

## Branch Office Locations

This individual does not have any registered Branch Office where the individual is located.

©2008 FINRA. All rights reserved.   Report# 61378-26744 about OLGA KUROVSKAYA. Data current as of Friday, January 23, 2009.

## Broker Qualifications



### Industry Exams this Broker has Passed

This section includes all current principal/supervisory, general product/industry, and/or state securities law exams that the broker has passed. Under certain, limited circumstances, a broker may receive a waiver of an exam requirement based on a combination of previous exams passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on a broker's specific qualifying work experience. Information regarding instances of exam waivers or the grandfathering of an exam requirement are not included as part of the BrokerCheck report.

**This individual has passed 0 principal/supervisory exams, 2 general industry/product exams, and 1 state securities law exam.**

### Principal/Supervisory Exams

| Exam | Category | Date |
|------|----------|------|
| No information reported. | | |

### General Industry/Product Exams

| Exam | Category | Date |
|------|----------|------|
| National Commodity Futures Examination | Series 3 | 01/11/2007 |
| General Securities Representative Examination | Series 7 | 08/31/2005 |

### State Securities Law Exams

| Exam | Category | Date |
|------|----------|------|
| Uniform Securities Agent State Law Examination | Series 63 | 09/06/2005 |

Additional information about the securities industry's qualifications and continuing education requirements, as well as the examinations administered by FINRA to brokers and other securities professionals can be found at http://www.finra.org/brokerqualifications/.

# Registration and Employment History



## Previously Registered with the Following FINRA Firms

FINRA records show this broker previously held FINRA registrations with the following firms:

| Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|
| 09/2008 - 10/2008 | BARCLAYS CAPITAL INC. | 19714 | NEW YORK, NY |
| 09/2005 - 09/2008 | LEHMAN BROTHERS INC. | 7506 | NEW YORK, NY |

## Employment History

This section provides up to 10 years of a broker's employment history as reported by the individual broker, and includes all securities and non-securities related employment, full and part-time work, self-employment, military service, unemployment, and full-time education. Please note that this information is not updated after an individual ceases to be registered with a FINRA firm.

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 10/2008 - Present | CITI | NY, NY |
| 09/2008 - 10/2008 | BARCLAYS CAPITAL INC. | NEW YORK, NY |
| 07/2003 - 09/2008 | LEHMAN BROTHERS | NY, NY |
| 08/1999 - 06/2003 | PACE UNIVERSITY | PLEASANTVILLE, NY |
| 08/2002 - 05/2003 | DEUTSCHE BANK | NY, NY |
| 10/1999 - 03/2003 | PACE UNIVERSITY | PLEASANTVILLE, NY |
| 06/2002 - 08/2002 | BERKERY, NOYES AND CO. | NY, NY |
| 05/2001 - 09/2001 | MERRILL LYNCH | NY, NY |
| 07/1999 - 09/1999 | UNEMPLOYED | NY, NY |
| 09/1995 - 06/1999 | MIDWOOD HIGH SCHOOL | BROOKLYN, NY |
| 01/1999 - 05/1999 | WPLJ RADIO | NY, NY |

## Affiliations

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

No information reported.

©2009 FINRA. All rights reserved.    Report# 51278-26744 about OLGA KUROVSKAYA. Data current as of Friday, January 23, 2009.

76

# About this BrokerCheck Report



BrokerCheck reports are part of a FINRA initiative to disclose information about FINRA-registered firms and brokers to help investors determine whether to conduct, or continue to conduct, business with these firms and brokers. The information contained within these reports is collected through the securities industry's registration and licensing process.

### Who provides the information in BrokerCheck?

Information made available through FINRA BrokerCheck is derived from the Central Registration Depository (CRD®) as reported on the industry registration and licensing forms brokerage firms and brokers are required to complete.

The forms used by brokerage firms, Forms BD and BDW, are established by the Securities and Exchange Commission (SEC) and adopted by all state securities regulators and self-regulatory organizations (SROs). FINRA and the North American Securities Administrators Association (NASAA) establish the Forms U4 and U5, the forms that collect broker information. Regulators provide information via Form U6, which is used primarily to report certain history about brokerage firms and brokers. These forms are approved by the SEC.

### How current is the information contained in BrokerCheck?

Brokerage firms and brokers are required to keep this information accurate and up-to-date (updates typically are required not later than 30 days after the broker/brokerage firm learns of an event). The report data is updated when a firm, broker, or regulator submits new or revised information to CRD. Generally, updated information is available on BrokerCheck Monday through Friday.

### What information is NOT disclosed through BrokerCheck?

Information that has not been reported to the CRD system, or that is not required to be reported, is not disclosed through FINRA BrokerCheck. Examples of events that are not required to be reported or are no longer reportable include: judgments and liens originally reported as pending that subsequently have been satisfied and bankruptcy proceedings filed more than 10 years ago. Conversely, certain customer complaint information that is not required to be reported may be disclosed provided certain criteria are met.

Additional information not disclosed through BrokerCheck includes Social Security Numbers, residential history information, and physical description information. On a case-by-case basis, FINRA reserves the right to exclude information that contains confidential customer information, offensive and potentially defamatory language or information that raises significant identity theft or privacy concerns that are not outweighed by investor protection concerns. NASD Interpretive Material 8310-2 describes in detail what information is and is not disclosed through BrokerCheck.

Under FINRA's current public disclosure policy, in certain limited circumstances, most often pursuant to a court order, information is expunged from the CRD system. Further information about expungement from the CRD system is available in NASD Notices to Members 99-09, 99-54, 01-65, and 04-16 at www.finra.org.

For further information regarding FINRA's BrokerCheck program, please visit FINRA's Web Site at www.finra.org/brokercheck or call the FINRA BrokerCheck Hotline at (800) 289-9999. The hotline is open Monday through Friday from 8 a.m. to 8 p.m., Eastern Time (ET).

For more information about the following, select the associated link:
- About BrokerCheck Reports:   http://www.finra.org/brokercheck_reports
- Glossary:   http://www.finra.org/brokercheck_glossary
- Questions Frequently Asked about BrokerCheck Reports:   http://www.finra.org/brokercheck_faq
- Terms and Conditions:   http://brokercheck.finra.org/terms.aspx

©2008 FINRA. All rights reserved.    Report# 51278-26744 about OLGA KUBOVSKAYA. Data current as of Friday, January 23, 2009.

# Exhibit B

1111111111111114409/24/200809/24/200809:44:31 AM    Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)



DeepakDhananjay
Patel/db/dbcom

09/24/2008 09:43 AM

To  Rabuan-Trevor Davadesen/db/dbcom@DBAmericas

cc

bcc

Subject  Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)





"Bilberg, Jacob"
<jacob.bilberg@lehman.co
m>

09/15/2008 12:14 PM

To  Tanveer-K Inamdar/db/dbcom@DBAmericas

cc  DeepakDhananjay Patel/db/dbcom@DBAmericas,
    <Dina.Spirou@lehman.com>, Naveen-C
    N/db/dbcom@DBAmericas, "Kurovskaya, Olga"
    <olga.kurovskaya@lehman.com>, Raj-K
    Singh/db/dbcom@DBAmericas, Sakshi
    Kochar/db/dbcom@DBAmericas, "Gupta, Shikha"
    <Shikha.Gupta@lehman.com>, Sushant
    Suman/db/dbcom@DBAmericas, <ts@list.db.com>

Subject  RE: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi,

Unfortunately, I have been notified that until further notice we will not be settling trades via DTC I do
not know when the status will change, but I will keep you updated as soon as I find out

Please feel free to contact me with any questions

Regards,
Jacob

Jacob Bilberg | Commodities Derivatives
LEHMAN BROTHERS | jblilberg@lehman.com
745 7th Ave., 16th Floor, New York, NY 10019
Tel: 212.526.7120 | Fax: 646-834-4615

---------------
From: Tanveer-K Inamdar [mailto:tanveer-k.inamdar@db.com]
Sent: Monday, September 15, 2008 10:45 AM
To: Bilberg, Jacob
Cc: DeepakDhananjay Patel; Dina.Spirou@lehman.com; Naveen-C N; Kurovskaya, Olga; Raj-K Singh;
Sakshi Kochar; Gupta, Shikha; Sushant Suman; ts@list.db.com
Subject: RE: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

2222222222222224409/24/200809/24/200809:44:31 AM    Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi Jacob,

The below Structured note is settling today. Please inform if everything is well for settlement.

Do confirm once the paymeny is made.

Thanks,



"Bilberg, Jacob"
<jacob.bilberg@lehm
an.com>

09/11/2008 02:39 PM

To Sushant Suman/db/dbcom@DBAmericas

cc "Kurovskaya, Olga" <olga.kurovskaya@lehman.com>, "Gupta, Shikha"
<Shikha.Gupta@lehman.com>, <ts@list.db.com>, <Dins.Spirou@lehman.com>, Sakshi
Kocher/db/dbcom@DBAmericas, DeepakDhananjay Patal/db/dbcom@DBAmericas,
Naveen-C N/db/dbcom@DBAmericas, Raj-K Singh/db/dbcom@DBAmericas, Tanveer-K
Inamdar/db/dbcom@DBAmericas, <s@list.db.com>

Subject RE: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi,

We confirm details. You will be delivering the shares delivery versus payment to Lehman, DTC074,
and we will release the cash amount to the account listed below, CPAFGB66X2 - DTC 954.

Thanks,
Jacob

Jacob Bilberg | Commodities Derivatives
LEHMAN BROTHERS | jbliberg@lehman.com
745 7th Ave., 16th Floor, New York, NY 10019
Tel: 212.526.7120 | Fax: 646-834-4615

From: Sushant Suman [mailto:sushant.suman@db.com]
Sent: Thursday, September 11, 2008 2:29 PM
To: Bilberg, Jacob

33333333333333334409/24/200809/24/200809:44:31 AM   Fw: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Cc: Kurovskaya, Olga; Gupta, Shikha; ts@list.db.com; Dina.Spirou@lehman.com; Sakshi Kochar; DeepakDhananjay Patel; Naveen-C N; Raj-K Singh; Tanveer-K Inamdar; ts@list.db.com
Subject: 3 Sell Structured Notes - TD - 9/10/08 (Lehman)

Hi Jacob,

DB Sell 3 Note to Lehman on TD- 9/10 . Please confirm the below trade details & the settlement date

Cusip : 52519VAW6 Notional: *$10.55mm.*
03007FI - please deliver the payment of $ 10,354,825 mm to Mellon Ref A/c - CPAFGE366X2 to
***Mellon DTC -954***on VD:09/15, and in return receive notes from mellon

Cusip : 52519VAR7 Notional: *$12.7mm.*
03007FI -please deliver the payment of $ 14,373,860mm to Mellon Ref A/c - CPAFGE366X2 to
***Mellon DTC - 954***on VD:09/15, and in return receive notes from mellon

Cusip : 52521XAB4 Notional: *$34.3mm.*
02550FI - please deliver the payment of $ 26,085,150mm to Mellon Ref A/c - CPAFGE366X2 to
***Mellon DTC -954***on VD:09/15, and in return receive notes from mellon

Also please confirm your DTC no.

Regards,



—

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only
for the personal and confidential use of the designated recipient(s) named above. If you are
not the intended recipient of this message you are hereby notified that any review,
dissemination, distribution or copying of this message is strictly prohibited. This
communication is for information purposes only and should not be regarded as an offer to sell
or as a solicitation of an offer to buy any financial product, an official confirmation of any
transaction, or as an official statement of Lehman Brothers. Email transmission cannot be
guaranteed to be secure or error-free. Therefore, we do not represent that this information is
complete or accurate and it should not be relied upon as such. All information is subject to

change without notice. --------- IRS Circular 230 Disclosure: Please be advised that any
discussion of U.S. tax matters contained within this communication (including any
attachments) is not intended or written to be used and cannot be used for the purpose of (i)
avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only
for the personal and confidential use of the designated recipient(s) named above. If you are
not the intended recipient of this message you are hereby notified that any review,
dissemination, distribution or copying of this message is strictly prohibited. This
communication is for information purposes only and should not be regarded as an offer to sell
or as a solicitation of an offer to buy any financial product, an official confirmation of any
transaction, or as an official statement of Lehman Brothers. Email transmission cannot be
guaranteed to be secure or error-free. Therefore, we do not represent that this information is
complete or accurate and it should not be relied upon as such. All information is subject to
change without notice. --------- IRS Circular 230 Disclosure: Please be advised that any
discussion of U.S. tax matters contained within this communication (including any
attachments) is not intended or written to be used and cannot be used for the purpose of (i)
avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

13725-068543-0003 JB

# Morgan Lewis
C O U N S E L O R S   A T   L A W

101 Park Avenue
New York, NY 10178-0060

TO:  Epiq Bankruptcy Solutions, LLC
     Attn:  Lehman Brothers Holdings Inc.  (08-13555)
     757 Third Avenue, 3rd Floor
     New York, NY  10017

     (Re: DWS Communications Fund, Inc.)

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Joshua R. Blackman**
Associate
212.309.7131
jblackman@MorganLewis.com

.

September 15, 2009

**VIA HAND DELIVERY**

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Inc. (08-13555)
757 Third Avenue, 3rd Floor
New York, NY 10017

Gentlemen:

Enclosed please find an original and two copies of the claim form for DWS Communications Fund, Inc.  Please file stamp one of the copies and return it to the messenger.

Please feel free to contact the undersigned at 212-309-7131 if you have any questions.  Thank you.

Sincerely,

*Joshua Blackman*

Joshua R. Blackman

**H
A
N
D

D
E
L
I
V
E
R
Y**

_____
RECEIVED BY:

9/16/09
_____
DATE

9:14
_____
TIME

## **EXHIBIT 2**

**Guarantee Confirmation**

**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 10/21/2009 at 2:39 PM Central. Please print this page as proof of your filing.

**Pennsylvania Public School Employees' Retirement System**
**c/o Alan Van Noord, CFA &**
**Jeffrey B. Clay, Executive Director**
**P.O. Box 125**
**Harrisburg, PA 17108-0125 UNITED STATES**

Name of Debtor, or other entity, against which you have a direct claim (the "Obligor")

Lehman Brothers Treasury Co. B.V.

If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed.

| Documents |
|---|
| Attachment q 2.pdf |

If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed.

Our understanding is that no procedures have yet been established for substantiation of claims in Obligor's bankruptcy proceeding. Attached are the Notices of Claim provided by the Fund to the Administrator and Trustee. The Notice to the Bankruptcy Trustee is in the form requested by the Trustee.

| Documents |
|---|
| Attachment q 2.pdf |

List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount.

| Documents |
|---|
| DJAIGTR_06 23 08_52521X9AB.pdf |
| DJAIGTR_12 20 07_52519VAW6.pdf |
| Sale confirm.pdf |

Amount of claim against Obligor

$36,439,975.00

Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"):

Lehman Brothers Holdings Inc. (08-13555)

Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire.

| Documents |
|---|
| DJAIGTR_06 23 08_52521X9AB.pdf |
| DJAIGTR_12 20 07_52519VAW6.pdf |

Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You

As noted in the term sheets, LBHI is the guarantor for both structured notes.

08-13555-mg    Doc 6175    Filed 12/14/09    Entered 12/14/09 16:21:33    Main Document
Pg 97 of 97

do not need to comply with this question if you have provided this
information in compliance with question 4a of the Derivative
Questionnaire.

| Documents |
|---|
| DJAIGTR_06 23 08_52521X9AB.pdf |
| DJAIGTR_12 20 07_52519VAW6.pdf |

Amount of claim against the Guarantor                    $36,439,975.00