Hearing Date:  To Be Determined, 2010
Objection Deadline:  To Be Determined, 2010

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, NY  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott
E-mail:  sreisman@curtis.com
        lharrison@curtis.com
        ceilbott@curtis.com

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

|  |  |  |
|---|---|---|
|  | : | **Chapter 11** |
| **In re:** | : |  |
|  | : | **Case No. 08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : |  |
|  | : | **(Jointly Administered)** |
| **Debtors.** | : |  |
|  | : |  |

------------------------------------------------------------------------x

**THIRD INTERIM APPLICATION OF CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR**
**PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT**
**OF ACTUAL AND NECESSARY EXPENSES INCURRED**
<u>**FOR THE PERIOD JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**</u>

**SUMMARY OF CURRENT FEE APPLICATION**

| | |
|---|---|
| Name of Applicant: | Curtis, Mallet-Prevost, Colt & Mosle LLP |
| Authorized to Provide Professional Services To: | Debtors and Debtors In Possession |
| Retention Date: | November 21, 2008 *nunc pro tunc* to September 26, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | June 1, 2009 through September 30, 2009 |

| | |
|---|---|
| Amount of Compensation Requested: | $      4,664,248 |
| Amount of Expense Reimbursement Requested: | $      188,127.18 |
| Total Compensation and Expense Reimbursement Requested: | $  4,852,375.18 |
| Blended Rate: | $         478.21 |

### PRIOR FEE APPLICATION(S)

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| First<br>09/15/08 – 01/31/09 | $4,661,589.50 | $151,402.02 | $4,605,112.00 | $151,402.02 |
| Second<br>02/01/09 – 05/31/09 | $4,230,132.50 | $164,681.90 | $3,807,119.25 | $164,681.90 |

### Exhibits to Current Fee Application

The following exhibits are attached hereto and incorporated herein by reference:

Exhibit "A"      Certification Under Guidelines for Fees and Disbursements for Professionals in Respect of Third Interim Application of Curtis, Mallet-Prevost, Colt & Mosle LLP for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses

Exhibit "B"      By-Timekeeper Summary of Hours Devoted and Compensation Sought (includes billing rate and year of admission to practice) for Third Interim Compensation Period

Exhibit "C"      Summary of Expenses for Third Interim Compensation Period

Exhibit "D"      Summary of Hours Devoted and Compensation Sought by Work Task Code for Third Interim Compensation Period

6719920

Hearing Date:  To Be Determined, 2010
Objection Deadline:  To Be Determined, 2010

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, NY  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott
E-mail:  sreisman@curtis.com
        lharrison@curtis.com
        ceilbott@curtis.com

*Conflicts Counsel for the Debtors*
  *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | |
| | : | **(Jointly Administered)** |
| Debtors. | : | |
| | : | |

---------------------------------------------------------------------------x

**THIRD INTERIM APPLICATION OF CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED
FOR THE PERIOD JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), as conflicts counsel for

Lehman Brothers Holdings Inc., and its direct and indirect debtor subsidiaries, as debtors and

debtors in possession (collectively, the "Debtors"), respectfully submits this application (the

"Application") for allowance of interim compensation for professional services rendered for the

period June 1, 2009 through and including September 30, 2009 (the "<u>Compensation Period</u>"),

and for reimbursement of its actual and necessary expenses incurred in connection with such

services.  In support of this Application, Curtis respectfully represents as follows:

**SUMMARY OF PROFESSIONAL COMPENSATION AND
<u>REIMBURSEMENT OF EXPENSES REQUESTED</u>**

1.      This Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on November 25, 2009 (the "<u>Local Guidelines</u>"), the

United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the

"<u>UST Guidelines</u>"), and the Third Amended Order Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of

Expenses of Professionals entered by the Court on June 25, 2009 (the "<u>Administrative Order</u>,"

collectively with the Local Guidelines and UST Guidelines, the "<u>Guidelines</u>").  Pursuant to the

Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as

"<u>**Exhibit A**</u>."[1]

2.      Curtis attorneys and paraprofessionals expended a total of 10,738.20 hours

representing the Debtors during the Compensation Period for which the firm requests

compensation.  Curtis seeks allowance of interim compensation for services rendered to the

Debtors in the amount of $4,664,248.00, representing 100% of fees incurred during the

---

[1] As to contested matters, existing litigation, or possible additional litigation to be brought by, or against, the Debtors, adversary proceedings, and other actions or threatened actions, this Fee Application shall not constitute or be construed as an admission of any fact or any issue of liability, nor shall it constitute a stipulation, or a waiver, but rather as statements made without prejudice to the Debtors' rights and interests in these chapter 11 cases.

6719920

Compensation Period, and for reimbursement of $195,325.72, representing 100% of the actual and necessary expenses incurred during the Compensation Period.[2]

3.    During the Compensation Period, other than pursuant to the Administrative Order, Curtis has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Application.  There is no agreement or understanding between Curtis and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

4.    In accordance with the Administrative Order, Curtis has received payments totaling $3,053,440.93 for the Compensation Period, which consists of $2,885,113.20 representing 80% of the fees incurred from June 1, 2009 through September 30, 2009, and $168,327.73 representing 100% of the expenses incurred during such period.

5.    The fees charged by Curtis in these cases are billed in accordance with Curtis' existing billing rates and procedures in effect during the Compensation Period.[3]  The rates Curtis charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates Curtis charges for professional and paraprofessional services rendered in non-bankruptcy-related matters.[4]  Such fees are reasonable based on the customary

---

[2] In an effort to comply with the prior recommendations of the Fee Committee related to the First and Second Interim Fee Applications, Curtis has voluntarily reduced its expenses as detailed in **Exhibit C** hereto.  In fact, after the Fee Committee filed its Report Pertaining to the Final Recommended Deductions from the Second Interim Fee Applications of All Retained Professionals [Docket No. 6107] (the "Fee Committee Report") on December 10, 2009, Curtis once again reviewed this Application for compliance with the Fee Committee's recommendations. However, given the fact that, based on Curtis' review of the docket, the corrected Fee Committee Report [Docket No. 6165]  first gave notice of a potential "deduction of 50 percent for fees/expenses that are supplemented with descriptive information" on the deadline for filing this Application, Curtis reserves the right to supplement its Application with descriptive information as requested by the Fee Committee.

[3] In accordance with the Firm's ordinary practice, certain professionals' and paraprofessionals' rates were increased in September 2009.

[4] In instances where professionals spent less than one hour working on the Debtors' cases during a month, Curtis has written off the time as a courtesy to the Debtors.

compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

6.　　　Pursuant to the UST Guidelines, annexed hereto as "**Exhibit B**" is a schedule setting forth all Curtis professionals and paraprofessionals who have performed services in these chapter 11 cases during the Compensation Period, the capacity in which each such individual is employed by Curtis, the hourly billing rate charged by Curtis for services performed by such individual, the aggregate number of hours expended in these proceedings and fees billed therefor, and, if applicable, the year in which each professional was first licensed to practice law.

7.　　　Annexed hereto as "**Exhibit C**" is a schedule specifying the categories of expenses for which Curtis is seeking reimbursement, and the total amount for each such expense category.

8.　　　Pursuant to Section II.D of the UST Guidelines, annexed hereto as "**Exhibit D**" is a summary of Curtis' time records billed during the Compensation Period by project categories.

9.　　　Curtis maintains computerized records of the time spent by all Curtis attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Subject to redaction for the attorney-client privilege where necessary to protect the Debtors' estates, copies of these computerized records have been furnished to the Court, the attorneys for the official committee of unsecured creditors (the "Creditors' Committee"), the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and the Committee appointed pursuant to the Order Appointing Fee Committee and Approving Fee Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee Committee"), in the format specified by the UST Guidelines.

-4-

10.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Curtis reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

11.     Curtis has provided the Debtors, the U.S. Trustee, lead counsel to the Debtors, the Creditors' Committee and the Fee Committee with monthly fee statements for professional services rendered and expenses incurred on behalf of the Debtors, along with detailed reports of time entries and expenses.  Pursuant to such statements, and in accordance with the Administrative Order, Curtis has requested that the Debtors pay Curtis 80% of its fees for professional services and 100% of the expenses.  By this Application, Curtis requests the release of the 20% "holdback" of fees for professional services rendered during the Compensation Period.[5]

### BACKGROUND

12.     Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").  The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.     On September 17, 2008, pursuant to section 1102 of the Bankruptcy Code, the U.S. Trustee appointed the Creditors' Committee.

---

[5]  The requested release of the holdback for the Compensation Period will not affect the holdback for any subsequent periods.

6719920

14.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

15.     On May 27, 2009, the Court entered an order approving the appointment of the Fee Committee.

### RETENTION OF CURTIS

16.     Curtis was retained by the Debtors as of September 26, 2008 to serve as conflicts counsel for the Debtors.  Among other matters, Curtis is responsible for handling all bankruptcy-, corporate- and litigation-related matters where lead counsel for the Debtors, Weil, Gotshal & Manges LLP ("WGM"), or other counsel for the Debtors, has an actual or perceived conflict of interest, and to perform discrete duties as assigned by WGM and other Debtors' counsel that could be handled more efficiently by Curtis.

17.     Pursuant to the Order of the Court, dated November 21, 2008, the Debtors were authorized to retain Curtis as their conflicts counsel to render legal services in the prosecution of their chapter 11 cases.

18.     Since its retention, Curtis has coordinated its efforts with WGM so that their work is complementary and not duplicative.

19.     WGM and Curtis have experience working as debtors' general bankruptcy counsel and conflicts counsel, respectively, for large bankruptcy cases previously pending before this Court.  See *In re Silicon Graphics, Inc., et al.*, Case No. 06-10977 (ALG) (Bankr. S.D.N.Y. 2006) and *In re Parmalat Finanziaria S.p.A., et al.,* Case No. 04-14268 (RDD) (Bankr. S.D.N.Y. 2004).  As a result of these experiences and the continued efforts of WGM and Curtis, the assignment of tasks is being maintained efficiently and with a clear delineation of duties.  In addition, Curtis is presently acting as conflicts counsel in *In re CIT Group Inc., et al.*, Case No.

09-16565 (ALG) (Bankr. S.D.N.Y. 2009), *In re The Reader's Digest, Inc., et al.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. 2009), *In re Lear Corporation*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. 2009), *In re Charter Communications, Inc., et al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009), *In re Star Tribune Holdings Corporation*, Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. 2009) and *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 08-14818 (BRL) (Bankr. S.D.N.Y. 2008).

20.     The work encompassed by this Application for which Curtis seeks compensation was performed efficiently and at a reasonable cost to the estates. All of the work summarized in this Application was performed in a manner to ensure minimal duplication of services and an effort to keep the administration expenses to a minimum.

## SUMMARY OF SERVICES RENDERED BY CURTIS DURING THE COMPENSATION PERIOD

21.     During the Compensation Period, Curtis performed substantial services for the Debtors. These services were necessary to effectively administer the chapter 11 cases.

22.     In accordance with the Guidelines and Curtis' internal billing procedures, Curtis has established separate matter numbers and matter names for distinct project categories in these chapter 11 cases. Listed below is a summary, by matter name, of services provided by Curtis during the Compensation Period:

23.     **Case Administration.**  A total of 255.70 hours of services was performed and Curtis is seeking allowance of $77,899 in fees. This matter covers a variety of different services undertaken by Curtis attorneys and paraprofessionals in the general administration of the Debtors' chapter 11 cases. Given the scale and complexity of the matters on which Curtis advises the Debtors, Curtis attorneys and paraprofessionals spent time on case administration in order to keep informed with respect to the matters on which Curtis is representing the Debtors, as

well as communicate with the conflict-related parties and other stakeholders of the Debtors with

respect to ongoing matters in the Debtors' cases.  To the extent possible, Curtis attorneys and

paraprofessionals billed administrative matters under the appropriate matter, and the amount of

time billed to case administration was necessary to Curtis' smooth and effective administration

of the matters assigned to it in these chapter 11 cases.  Services rendered by Curtis in connection

with this matter included, among other tasks, the monitoring of the case docket for pleadings

with potential conflict implications, reviewing and maintaining a case docket of significant

pleadings filed with the Court and keeping a calendar of critical dates in these chapter 11 cases.

24.    **General Corporate Issues.**  A total of 462.70 hours of services was

performed and Curtis is seeking allowance of $216,243.50 in fees.  This matter corresponds to

general issues handled by Curtis' Corporate and Restructuring and Insolvency departments,

especially advising the Debtors with regard to Riopelle Broadway L.P. ("Riopelle").  Riopelle

was formed by Lehman in association with Caisse de dépôt et placement du Québec ("Caisse")

and its wholly owned subsidiary CDP Investissements (together with Caisse, the "Quebec

Partners") to acquire from Lehman Commercial Paper Inc. ("LCPI") approximately $750 million

principal amount of certain funded (approximately $550 million) and unfunded (approximately

$200 million) loans of Texas Competitive Electric Holdings Company LLC.  To finance the

purchase and funding of the underlying loans, Riopelle issued a Senior Variable Floating Rate

Note due 2012 in a principal amount of up to $517 million to LCPI, and Junior Profit-

Participating Notes due 2012 to the Quebec Partners, with LCPI holding a nominal (0.1%) junior

ownership percentage, and with U.S. Bank National Association ("U.S. Bank") serving as

indenture trustee.  During the Compensation Period, Curtis advised and assisted the Debtors in

their negotiations with the Quebec Partners, with the goal of LCPI monetizing its position and

ultimately recovering on its investment.  Curtis also advised the Debtors in negotiations with

6719920

counsel to the Quebec Partners and U.S. Bank in connection with the resolution of certain issues

relating to the transfer of a senior note to Caisse in September 2008. Curtis advised the Debtors

in negotiations which led to the Quebec Partners posting a cash margin payment that restored the

structure to the required level of collateralization.

25.    **Curtis Retention, Fee Applications and Monthly Fee Statements.** A

total of 619.40 hours of services was performed and Curtis is seeking allowance of $171,053.50

in fees. In connection with this matter, Curtis prepared and served its Monthly Fee Statements

all in accordance with the Guidelines. Tasks included reviewing all expenses, timekeeper

entries, and Fee Statement schedules and tables for accuracy and compliance with the

Guidelines. Additionally, during the Compensation Period, Curtis prepared, filed and served its

First Supplemental Affidavit Pursuant to Rules 2014(a) and 2016(b) of the Federal Rules of

Bankruptcy Procedure. Finally, Curtis responded to requests from the Fee Committee and

prepared monthly budgets for the Fee Committee.

26.    **Swap Transactions/Terminations/Analysis.** A total of 404.10 hours of

services was performed and Curtis is seeking allowance of $185,638 in fees. This matter covers

a multitude of services related to the analysis and resolution of the complex financial instruments

affected by the Debtors' cases, including the review and analysis of ISDA agreements and

synthetic CDO structures.

27.    Additionally, Curtis performed a variety of tasks related to counterparty

termination of (i) interest rate swaps (the "<u>AmeriCredit Interest Rate Swaps</u>") between LBSF and

affiliates of three trusts serviced by AmeriCredit Financial Services, Inc. (AmeriCredit

Automobile Receivables Trust 2005-B-M, AmeriCredit Automobile Receivables Trust 2007-B-F

and AmeriCredit Automobile Receivables Trust 2007-D-F) (collectively the "<u>AmeriCredit</u>

<u>Trusts</u>") and (ii) Differential Swaps between AmeriCredit Financial Services, Inc. ("<u>ACFSI</u>")

and LBSF (the "<u>AmeriCredit Diff Swaps</u>").  The tasks performed by Curtis included analysis of

the AmeriCredit Interest Rate Swaps and the AmeriCredit Diff Swaps and related

correspondence and documentation, the respective terminations thereof and the calculation of

termination amounts with respect thereto, advising LBSF with respect to LBSF's right to contest

the manner of calculation of and the termination amounts related to such early terminations,

drafting correspondence to counsel for ACFSI and the AmeriCredit Trusts, and review and

analysis of response correspondence received from such counsel.

28.    **Pebble Creek CDO Citibank Matter.**  A total of 2.90 hours of services

was performed and Curtis is seeking allowance of $1,779.50 in fees.  This matter involves a

structured CDO transaction - Pebble Creek LCDO 2007-2, Ltd. ("<u>Pebble Creek</u>") - concerning

Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), as credit default swap counterparty, and

Citibank, N.A., as indenture trustee.  The issuer in the Pebble Creek transaction sold tranches of

notes to investors and a credit default swap to LBSF, which swap position was in the money to

LBSF as of Commencement Date.  The swap was purportedly terminated on September 19,

2008.  Citibank therafter redeemed the collateral, consisting of shares in Lehman Brothers ABS

Enhanced LIBOR Fund, liquidating the transaction and distributing the proceeds on or around

October 15, 2008.  Curtis has continued to perform tasks relating to LBSF's position that the

termination of the swap and the liquidation of collateral and distribution of proceeds violated the

terms of the indenture and the credit default swap.  The Pebble Creek transaction is part of the

same series as 15 other structured CDO transactions being handled by WGM for which U.S.

Bank is the indenture trustee and LBSF is the credit default swap counterparty.  Accordingly,

Curtis professionals have in the past and will continue to closely coordinate their efforts in the

Pebble Creek matter with WGM and Lehman professionals who are involved in ongoing

negotiations with the indenture trustee and the noteholders in the U.S. Bank CDO transactions.

29.     **JPMorgan Chase Matters.**  A total of 8,063.70 hours of services was

performed and Curtis is seeking allowance of $3,611,137 in fees.  During the Compensation

Period, Curtis continued to work on matters related to the various relationships between

JPMorgan Chase ("JPMC") and the Debtors, including the analysis of pledges that Lehman

provided which collateralize the JPMC entities' claims.  To this end, Curtis continued to conduct

interviews with a number of the Debtors' current and former employees; continued to review

documents provided by JPMC; and continued to update detailed memoranda addressing the

Debtors' relationship with JPMC and related matters and coordinated its efforts regarding this

matter with other parties in interest, including the Creditors' Committee.  Curtis also reviewed

and analyzed the transaction documents for the Kingfisher CDO transaction to respond to

questions from the Debtors regarding the structure.  Additionally, Curtis assisted the Debtors

with respect to analyzing certain derivatives transactions with JPMC.  Finally, Curtis assisted the

Debtors in negotiating the release of certain notes held in a vault at JPMC

30.     **CIFG Matters.**  A total of 2.90 hours of services was performed and

Curtis is seeking an allowance of $1,017.50 in fees.  Curtis attended to matters related to certain

credit default swap transactions between LBSF and affiliates of bond insurer CIFG Guaranty,

including advising LBSF with respect to the CIFG restructuring transaction and LBSF claims

with respect to termination of the credit default swap transactions.

31.     **Syncora Matters.**  A total of 123.70 hours of services was performed and

Curtis is seeking an allowance of $73,914 in fees.  This matter designation covers all tasks

related to the restructuring of bond insurer Syncora Holdings, Ltd. ("Syncora") and a related

credit default swap commutation transaction, including working with common counsel to

6719920

Syncora credit default swap counterparties with respect to the closing of the restructuring and commutation transaction, final negotiations related thereto and post-closing matters; working with counsel to the Creditors' Committee in connection with the Creditors' Committee's approval of the transaction; and preparing and filing a motion to obtain a Bankruptcy Court Order approving the transaction .

32.    **Fenway Matters.**  A total of 4.80 hours of services was performed and Curtis is seeking an allowance of $1,283 in fees.  Curtis assisted the Debtors with the production of the legal documentation constituting the Fenway structured finance transaction, including the securities issued by the issuer Fenway Capital LLC.

33.    **RACERS Matters.**  A total of 23.70 hours of services was performed and Curtis is seeking an allowance of $10,359 in fees.  Curtis performed an analysis of the legal documentation constituting the Restructured Asset Securities with Enhanced Returns ("RACERS") Series 2007 structured finance transaction, including a review of the securities issued by the RACERS Series 2007-MM Trust.  Curtis also advised the Debtors on issues relating to real estate interests included in the collateral pool held by the RACERS Series 2007-A Trust.

34.    **Sasco Matters.**  A total of 8.80 hours of services was performed and Curtis is seeking an allowance of $4,419 in fees.  During the Compensation Period, Curtis assisted the Debtors with the production of the legal documents related to the Sasco structured finance transaction.

35.    **Pyxis Matters.**  A total of 346.50 hours of services was performed and Curtis is seeking an allowance of $166,057 in fees.  For this project category, Curtis has provided services related to PYXIS ABS CDO 2007-1 LTD ("Pyxis"), a CDO transaction.  In the Pyxis transaction, LBSF is the credit default swap counterparty, and Bank of America, N.A.,

as successor to LaSalle Bank, is the indenture trustee.  On October 6, 2008, the indenture trustee,

after having previously declared (i) an event of default under the indenture, (ii) an acceleration of

the maturity of the notes, and (iii) an early termination date under the credit default swap,

distributed approximately $386 million from the Reserve Account to the noteholders, and

cancelled the remaining unfunded commitment of the holder of the Class A-1 Notes, Canadian

Imperial Bank of Commerce ("CIBC").  Curtis has continued to perform tasks relating to

LBSF's position that the indenture trustee's termination of the credit default swap and any

liquidation of collateral or distribution of proceeds by the indenture trustee is improper.  Curtis

has continued to work closely with WGM and Lehman to coordinate negotiation and litigation

strategies in the Pyxis transaction with those in the other CDO transactions being handled for the

Debtors by WGM.

36.    **Pine, Spruce and Verano Matters.**  A total of 7.40 hours of services was

performed and Curtis is seeking an allowance of $2,124.50 in fees.  Curtis assisted the Debtors

with the production of the legal documentation constituting the Pine, Spruce and Verano

structured finance transactions, including securities issued by issuers Pine CCS, Ltd., Spruce

CCS, Ltd. and Verano CCS, Ltd.

37.    **CEAGO Matters.**  A total of 7.20 hours of services was performed and

Curtis is seeking an allowance of $4,851.50 in fees.  Curtis performed several tasks related to

CEAGO ABS CDO 2007-1, Ltd., in which LBSF is a counterparty to a credit default swap and a

total return swap with the CDO, and for which Bank of America, N.A., as successor to LaSalle

Bank, is indenture trustee.  The tasks performed by Curtis included working with counsel to the

Creditors' Committee in connection with its analysis of the CDO and advising LBSF with

respect to LBSF's rights in the event of a liquidation of the CDO.

6719920

38. **Rule 2004 Bankruptcy Discovery.** A total of 110 hours of services was performed and Curtis is seeking an allowance of $65,891.50 in fees. During the Compensation Period, Curtis assisted the Debtors in its negotiation with a counterparty to certain derivatives transactions regarding the production of certain trade detail. Curtis prepared pleadings to compel production under Rule 2004 of the Federal Rules of Bankruptcy Procedure. The filing of such pleadings was postponed when the counterparty voluntarily produced the requested documents to the Debtors.

39. **Bankruptcy Litigation.** A total of 236.90 hours of services was performed and Curtis is seeking an allowance of $122,206.50 in fees. During the Compensation Period, Curtis provided services primarily with respect to disputes involving GE Corporate Financial Services, Inc. ("GECFS"). In connection with this matter, Curtis advised the Debtors in disputes under loan purchase agreements between LCPI and Fusion Funding Limited ("Fusion") and Fusion Funding Luxembourg S.A.R.L. ("Fusion Luxembourg" and, together with Fusion, the "Fusion Entities"), and a loan participation agreement between Lehman Brothers Bankhaus AG and Fusion Luxembourg. The Fusion Entities are special-purpose vehicles whose purchases were financed almost exclusively from a secured credit facility provided by General Electric Capital Corporation ("GE Capital" and, together with GECFS, the "GE Entities"), with GECFS acting as the loan servicer for the Fusion Entities. Earlier in the Chapter 11 Cases, the Debtors and the GE Entities filed various motions and objections in Bankruptcy Court relating to the disputes. Curtis has advised the Debtors in negotiations with the GE Entities, developing positions in response and opposition to the GE Entities' contentions. At the same time, Curtis has negotiated with counsel for the GE Entities to reach agreement on a series of adjournments of the hearing date for the parties' respective motions and objections. Curtis has coordinated its

efforts with respect to these matters with the legal and financial advisors to the Creditors'

Committee, including their review and evaluation of the current settlement proposal.

40.     Curtis also assisted LCPI in connection with a dispute with Deutsche Bank

in its role as administrative agent under a credit facility provided to Crown Americas LLC and its

affiliates ("Crown Americas"). LCPI, a lender in the credit facility, had defaulted on its

obligations to fund certain disbursements to Crown Americas and, consequently, Deutsche Bank

had retained certain funds paid by Crown Americas on account of loans previously made to it by

LCPI. Curtis assisted LCPI in negotiating a pay-off letter with Deutsche Bank that permitted

Deutsche Bank to pay the retained funds over to LCPI, as well as the terms of an amendment to

the underlying credit agreement. Curtis also assisted the Debtors in their reporting obligations to

the Creditors' Committee with respect to the termination of their unfunded commitment.

41.     **Hearings and Court Matters.** A total of 57.80 hours of services was

performed and Curtis is seeking an allowance of $26,511.50 in fees. This matter encompasses

all hearings and court appearances other than those specific to any of the aforementioned project

categories.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

42.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation. *See* 11 U.S.C. § 331. The awarding of interim compensation

should be based on the circumstances of the particular case. *In re Nana Daly's Pub., Ltd.*, 67

B.R. 782, 787 (Bankr. E.D.N.Y. 1986).

43.     Section 330 of the Bankruptcy Code provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11

-15-

U.S.C. § 330(a)(1). The Court has broad discretion in determining whether to allow

compensation and determining the amount of compensation. *In re Nine Assocs., Inc.*, 76 B.R.

943, 944 (Bankr. S.D.N.Y. 1987).

44.     Section 330 of the Bankruptcy Code also sets forth the criteria for the

award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration
>         of, or beneficial at the time at which the service was
>         rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable
>         amount of time commensurate with the complexity,
>         importance, and nature of the problem, issue, or task
>         addressed; and
>
> (E)     whether the compensation is reasonable based on the
>         customary compensation charged by comparably skilled
>         practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

45.     Courts within the Second Circuit have employed the "lodestar approach"

for calculating judicial awards of compensation to attorneys. The lodestar approach was

articulated by the Second Circuit in *New York State Ass'n for Retarded Children, Inc. v. Carey*,

711 F.2d 1136 (2d Cir. 1983). The lodestar method of determining reasonable compensation

involves multiplying the hours spent on a case, based on attorney time records, by a reasonable

hourly rate of compensation for each attorney based on prevailing market rates for private law

firms performing services for non-governmental clients. *In re McLean Industries, Inc.*, 88 B.R.

36, 39 (Bankr. S.D.N.Y. 1988). Once calculated, this lodestar figure may be adjusted upward or

downward to take into account the facts of the particular case. *In re Baldwin United Corp.*, 79

B.R. 321, 347 (Bankr. S.D. Ohio 1987). Factors regarding the difficulty, complexity and

contingent nature of the case may thereafter be employed to arrive at a reasonable and just

compensation in excess of the lodestar figure. *In re Stable Mews Assocs.*, 49 B.R. 395, 398

(Bankr. S.D.N.Y. 1985); *In re Chriss*, 38 B.R. 655, 657 (Bankr. S.D.N.Y. 1984).

46.    In the instant case, Curtis respectfully submits that the services for which

it seeks compensation in this Application meet or exceed the standards set forth in section 330 of

the Bankruptcy Code as applied by bankruptcy courts in this Circuit to determine the

reasonableness of professional fees sought from a debtor's estate. Curtis also respectfully

submits that the services provided to the Debtors during the Compensation Period were

necessary and beneficial to the Debtors' efforts to maximize the value of their estates. The

professional services that Curtis rendered were focused on pursuing an efficient reorganization

and/or liquidation of the Debtors' businesses that maximizes the value of the estates and

recovery to creditors. Except as otherwise set forth herein, Curtis' rates charged to the Debtors

are identical to the rates charged by Curtis for comparable services in a non-chapter 11 context.

Such services were not only necessary to benefit the Debtors' estates, but also to enhance

potential recovery to creditors. Accordingly, Curtis further submits that the compensation

requested herein is reasonable and warranted in light of the nature, extent and value of such

services to the Debtors, their estates and all parties in interest.

### FEES AND ACTUAL AND NECESSARY DISBURSEMENTS OF CURTIS

47.    Curtis devoted 10,738.20 hours of actual recorded time during the

Compensation Period resulting in time charges of $4,664,248. The amount of $932,849.60[6]

---

[6] This amount reflects the 20% holdback from June 2009, July 2009, August 2009 and September 2009.

6719920

remains unpaid as of the date of this Application.  By this Application, Curtis also requests

release of the remaining 10% holdback from the Second Interim Compensation Period.

48.    Throughout the Compensation Period, Curtis sought to assign projects in

this case to partners, associates and paraprofessionals who could most efficiently and

expeditiously handle the tasks at hand.  Curtis respectfully submits that the legal services

reflected in this Application are fair and reasonable and are commensurate with the quality of

services provided herein.  The blended rate for services performed by Curtis during the

Compensation Period is $478.21.

49.    In addition to the fees sought for legal services, Curtis has incurred

$195,325.72 in out-of-pocket expenses and disbursements during the Compensation Period

directly attributable to the representation of the Debtors.

50.    No part of the compensation to be received pursuant to this Application

will be shared with any other person or firm, and no other agreements, either express or implied,

to share any compensation received as attorneys for the Debtors has been, or will be, made by

Curtis.

## NOTICE

51.    A copy of this Application has been presented to:  (i) the Debtors; (ii) lead

bankruptcy counsel for the Debtors; (iii) counsel for the Creditors' Committee; (iv) the U.S.

Trustee; and (v) the Fee Committee.

6719920

## **CONCLUSION**

**WHEREFORE**, Curtis respectfully requests that this Application be granted and

that it be awarded an allowance of $4,664,248.00 for legal services rendered to the Debtors

during the Compensation Period, and $195,325.72 for reimbursement of expenses, and that the

Debtors be allowed to pay such amounts to the extent not previously paid, together with such

other and further relief be granted as may be just and proper.

Dated:      December 14, 2009              Respectfully submitted,
            New York, New York

                                           **CURTIS, MALLET-PREVOST,**
                                           **  COLT & MOSLE LLP**

                                           By: */s/ Steven J. Reisman*
                                                Steven J. Reisman
                                                L. P. Harrison 3rd
                                                Cindi M. Eilbott
                                           101 Park Avenue
                                           New York, NY  10178-0061
                                           Telephone:  (212) 696-6000
                                           Facsimile:  (212) 697-1559
                                           E-mail:  sreisman@curtis.com
                                                     lharrison@curtis.com
                                                     ceilbott@curtis.com


                                           *Conflicts Counsel for the Debtors and*
                                           *  Debtors in Possession*

6719920

**EXHIBIT A**

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  212) 696-6000
Facsimile  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
|   |   |
|---|---|
| In re: | :   **Chapter 11** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | :   **Case No. 08-13555 (JMP)** |
| | : |
| Debtors. | :   **(Jointly Administered)** |
| | : |
-----------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR
PROFESSIONALS IN RESPECT OF THIRD INTERIM APPLICATION OF CURTIS,
MALLET-PREVOST, COLT & MOSLE LLP FOR ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

       I, L. P. Harrison 3rd, hereby certify that:

       1.      I am a partner with the applicant firm, Curtis, Mallet-Prevost, Colt &

Mosle LLP ("Curtis"), with primary responsibility for the chapter 11 cases of Lehman Brothers

Holdings Inc., and its direct and indirect subsidiaries, as debtors and debtors in possession

(collectively, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees

and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on November 25, 2009 (the "Local Guidelines"), the United States Trustee

6719920

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Third

Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the

"Administrative Order," collectively with the Local Guidelines and UST Guidelines, the

"Guidelines").

      2.      This certification is made in respect of Curtis' application, dated

December 14, 2009 (the "Application"), for interim compensation and reimbursement of

expenses for the period commencing June 1, 2009, through and including September 30, 2009

(the "Compensation Period") in accordance with the Guidelines.

      3.      In respect of section A.1 of the Local Guidelines, I certify that:

- I have read the Application;

- to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

- the fees and disbursements sought are billed at rates in accordance with practices customarily employed by Curtis and generally accepted by Curtis' clients; and

- in providing a reimbursable service, Curtis does not make a profit on that service, whether the service is performed by Curtis in house or through a third party.

      4.      In respect of section A.2 of the Local Guidelines, I certify that Curtis has

provided the Debtors, counsel for the statutory committee of unsecured creditors appointed in

these cases (the "Creditors' Committee"), the United States Trustee for the Southern District of

New York (the "U.S. Trustee") and the Committee appointed pursuant to the Order Appointing

Fee Committee and Approving Fee Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee

Committee") with, on a monthly basis, a statement of Curtis' fees and disbursements accrued

during the previous month.

       5.     In respect of section A.3 of the Local Guidelines, I certify that the

Debtors, counsel for the Creditors' Committee, lead bankruptcy counsel for the Debtors, the Fee

Committee and the U.S. Trustee are each being provided with a copy of the Application more

than 14 days before the hearing on the Application.


Dated:    New York, New York
            December 14, 2009


                                      */s/ L. P. Harrison 3rd*
                                        L. P. Harrison 3rd

6719920

## EXHIBIT B

## SUMMARY OF THIRD INTERIM FEE APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR SERVICES RENDERED FOR THE PERIOD JUNE 1, 2009 TO SEPTEMBER 30, 2009[1]

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED[2] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | | | |
| **PARTNERS** | | | | |
| L. P. Harrison 3rd | RIG – 1984 | $785 | 151.70 | $119,084.50 |
| | | $730 | 535.70 | $391,061.00 |
| Joseph D. Pizzurro | L – 1977 | $785 | 266.40 | $209,124.00 |
| Steven J. Reisman | RIG – 1991 | $785 | 11.60 | $9,106.00 |
| Marie-Thérèse Allen | C – 1983 | $730 | 2.00 | 1,460.00 |
| David Bayrock | C – 1995 | $730 | 152.40 | $111,252.00 |
| Nancy E. Delaney | L – 1989 | $730 | 112.20 | $81,906.00 |
| | | $675 | 338.20 | $228,285.00 |
| Daniel R. Lenihan | C – 1982 | $730 | 66.30 | $48,399.00 |
| Michael J. Moscato | L – 1982 | $730 | 266.00 | $194,180.00 |
| Turner P. Smith | L – 1980 | $730 | 84.40 | $61,612.00 |
| Andrew H. Seiden | C – 1993 | $675 | 396.70 | $267,772.50 |
| **TOTAL PARTNERS** | | | **2,383.60** | **$1,723,242.00** |
| | | | | |
| **COUNSEL** | | | | |
| Jerrold L. Bregman | RIG – 2003 | $675 | 7.20 | $4,860.00 |
| | | $595 | 35.30 | $21,003.50 |
| Myles K. Bartley | L – 1999 | $595 | 144.00 | $85,680.00 |
| Susan F. Pollack | C – 1967 | $595 | 394.20 | $234,549.00 |
| Eric J. Stenshoel | C – 1981 | $595 | 2.90 | $1,725.50 |
| **TOTAL COUNSEL** | | | **583.60** | **$347,818.00** |
| | | | | |
| **ASSOCIATES** | | | | |
| Joshua Brook | L – 2003 | $575 | 16.30 | 9,372.50 |
| James V. Drew | RIG – 2002 | $575 | 43.10 | $24,782.50 |
| Thomas Laurer | C – 2001 | $575 | 1.50 | $862.50 |
| Susana M. Namnum | C – 1996 | $575 | 273.80 | $157,435.00 |
| Dora Strauss | L - 2000 | $575 | 23.60 | $13,570.00 |
| Peter von zur Gathen | C – 1996 | $575 | 1.20 | $690.00 |
| Peter J. Behmke | L – 2005 | $495 | 117.20 | $58,014.00 |
| | | $455 | 224.70 | $102,238.50 |
| Karen Brice | C – 2005 | $495 | 74.90 | $37,075.50 |
| | | $455 | 238.80 | $108,654.00 |
| Benjamin Lowin | C – 2006 | $495 | 48.40 | $23,958.00 |
| | | $455 | 186.50 | $84,857.50 |
| Rachael Yocum | L – 2006 | $495 | 11.10 | $5,494.50 |
| | | $455 | 8.00 | $3,640.00 |

---

[1] In instances where professionals spent less than one hour working on the Debtors' cases during a month, Curtis has written off the time as a courtesy to the Debtors.

[2] C – Corporate; L – Litigation; RE – Real Estate; RIG – Restructuring and Insolvency Group; T – Tax; *- Not yet admitted to the Bar.

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | | | |
| Andrew Zinman | L – 1996 | $495 | 25.20 | $12,474.00 |
| | | $455 | 48.20 | $21,931.00 |
| Priya Swaminathan | L – 2007 | $455 | 156.50 | $71,207.50 |
| | | $415 | 516.30 | $214,264.50 |
| Joseph Clyne | L – 1984 | $415 | 2.50 | 1,037.50 |
| John Balzano | L – 2006 | $415 | 2.70 | $1,120.50 |
| | | $375 | 1.50 | $562.50 |
| Cindi M. Eilbott | RIG – 2007 | $415 | 104.60 | $43,409.00 |
| | | $375 | 452.80 | 169,800.00 |
| Danny Phillips | C – 2006 | $415 | 22.30 | $9,254.50 |
| Julie W. Arkush | L – 2008 | $375 | 70.30 | $26,362.50 |
| | | $335 | 338.10 | $113263.50 |
| Stefano de Stefano | C – 2008 | $375 | 109.10 | $40,912.50 |
| | | $335 | 197.20 | $66,062.00 |
| Bradley H. Doline | C – 2007 | $375 | 4.40 | $1,650.00 |
| Louisa Fennell | L – 2008 | $375 | 45.80 | $17,175.00 |
| | | $335 | 182.00 | $60,970.00 |
| Ryan Hansen | C – 2007 | $375 | 10.90 | $4,087.50 |
| Veronique Hodeau | RIG – 2007 | $375 | 30.80 | $11,550.00 |
| Benjamin Johnson | C – 2008 | $375 | 69.40 | $26,025.00 |
| | | $335 | 255.80 | $85,693.00 |
| Katherine M. Smith | L – 2007 | $375 | 36.30 | $13,612.50 |
| Catinca Tabacaru | L – 2008 | $375 | 17.00 | $6,375.00 |
| | | $335 | 174.70 | $58,524.50 |
| Steven Gibbs | L - * | $335 | 85.50 | $28,642.50 |
| | | $290 | 107.10 | $31,059.00 |
| Sarah Hale | L – 2009 | $335 | 5.10 | $1,708.50 |
| Christina Manthei | RIG – 2008 | $335 | 57.50 | $19,262.50 |
| Chelsea McLean | L – 2009 | $335 | 2.00 | $670.00 |
| Shafiq Perry | C – 2009 | $335 | 145.80 | $48,843.00 |
| | | $290 | 489.30 | $141,897.00 |
| Naomi Reinharz | L – 2009 | $335 | 106.00 | $35,510.00 |
| | | $290 | 187.40 | $54,346.00 |
| Derek Tokaz | C – 2009 | $335 | 12.80 | $4,288.00 |
| | | $280 | 263.10 | $73,668.00 |
| Christina Tretter-Herriger | C - * | $335 | 1.60 | $536.00 |
| | | $280 | 224.80 | $62,944.00 |
| Brian White | L – 2009 | $335 | 16.50 | $5,527.50 |
| | | $290 | 1.10 | $319.00 |
| H. Michael Zografakis | C – 2008 | $335 | 35.10 | $11,758.50 |
| Dienna Ching | RIG – 2009 | $290 | 346.30 | $100,427.00 |
| Jeanine Turell | C – 2009 | $290 | 10.70 | $3,103.00 |
| **TOTAL ASSOCIATES** | | | **6,241.20** | **$2,332,478.00** |

6719920

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| **SUMMER ASSOCIATES** | | | | |
| Uzma Burney | L | $250 | 154.70 | $38,675.00 |
| Jasper Cacanata | C | $250 | 3.20 | $800.00 |
| Heather Hiznay | RIG | $250 | 99.80 | $24,950.00 |
| Ryan Lema | RIG | $250 | 101.10 | $25,275.00 |
| Keith Lucas | RIG | $250 | 64.10 | $16,025.00 |
| Nicole Mazanitis | L | $250 | 58.30 | $14,575.00 |
| Tara McDevitt | L | $250 | 29.40 | $7,350.00 |
| Morgan Nighan | C | $250 | 28.40 | $7,100.00 |
| James Zimmer | RIG | $250 | 86.10 | $21,525.00 |
| **TOTAL SUMMER ASSOCIATES** | | | **625.10** | **$156,275.00** |
| **CLERKS/PARAPROFESSIONALS** | | | | |
| Neal Goodman | L | $250 | 145.30 | $36,325.00 |
| Oleg Bitman | RIG | $210 | 13.90 | $2,919.00 |
| Keesha Parsons | C | $210 | 3.00 | $630.00 |
| Andrew Russo | RIG | $210 | 7.00 | $1,470.00 |
| Roman Vengerovskiy | C | $210 | 121.10 | $25,431.00 |
| Samuel Coe | RIG | $190 | 17.30 | $3,287.00 |
| Jed Cohen | RIG | $190 | 84.90 | $16,131.00 |
| Beth Forman | RE | $190 | 1.10 | $209.00 |
| Ramon Miyar | RIG | $190 | 108.20 | $20,558.00 |
| Laura Raposo | RIG | $190 | 22.80 | $4,332.00 |
| Jerome Tufte | RIG | $190 | 303.20 | $57,608.00 |
| Julio Velazquez | L | $190 | 25.20 | $4,788.00 |
| Olivia Dana | L | $180 | 23.60 | $4,248.00 |
| Michael Malavarca | L | $165 | 24.40 | $4,026.00 |
| Patrick Romero | L | $165 | 3.70 | $610.50 |
| **TOTAL CLERKS/PARAPROFESSIONALS** | | | **904.70** | **$182,572.50** |

| TOTALS | | | |
|---|---|---|---|
| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
| Partners | $722.96 | 2,383.60 | $1,723,242.00 |
| Counsel | $595.99 | 583.60 | $347,818.00 |
| Associates | $373.72 | 6,241.20 | $2,332,478.00 |
| Summer Associates | $250.00 | 625.10 | $156,275.00 |
| Clerks/Paraprofessionals | $201.80 | 904.70 | $182,572.50 |
| | | | |
| **SUBTOTAL** | | 10,738.20 | $4,742,385.50 |
| Less discount on Summer Associate fees[3] | | | [78,137.50] |
| **TOTAL FEES REQUESTED** | | **10,738.20** | **$4,664,248.00** |

---

[3] With respect to time billed during the Compensation Period by Summer Associates, while the Firm typically bills all clients for Summer Associate time at the full hourly rate, as an accommodation to the Debtors, but in no means reflective of the professional level of the work performed, Curtis has voluntarily reduced the amount of fees billed to the Debtors' estate by fifty percent (50%) for all Summer Associates' time for this Compensation Period.

6719920

**EXHIBIT C**

**EXPENSE SUMMARY FOR CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
FOR THE THIRD INTERIM COMPENSATION PERIOD FROM
JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

| DESCRIPTION | AMOUNT |
|---|---|
| Corporation Service Company | $      170.00 |
| Courier | 578.75 |
| Duplicating | 11,791.45 |
| Lexis/Westlaw | 124,147.89 |
| Litigation Printing | 6,276.05 |
| Long Distance Telephone | 39.59 |
| Meals Expense | 5,257.86[1] |
| Pacer | 811.92 |
| Postage | 12.30 |
| Printing Outside | 184.24 |
| Search Fees | 110.00 |
| Telephone Audio Conference | 852.33 |
| Telephone Expense | 260.81 |
| Transportation Expense | 4,120.52[2] |
| Travel | 41.56 |
| Word Processing | 33,471.91[3] |
| **TOTAL:** | **$  188,127.18** |

---

[1] Curtis is voluntarily deducting $31.54 from Meals expenses in accordance with the Guidelines and the guidelines set forth by the Fee Committee.
[2] Curtis is voluntarily deducting $57 from Transportation expenses in accordance with the Guidelines and the guidelines set forth by the Fee Committee.
[3] Curtis is voluntarily deducting $7,110 from Word Processing expenses in accordance with the Guidelines and the guidelines set forth by the Fee Committee.

6719920

**EXHIBIT D**

**COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR THE THIRD INTERIM COMPENSATION PERIOD JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

| WORK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| Matter No. 100 | Case Administration | 255.70 | $    77,899.00 |
| Matter No. 200 | General Corporate Matters | 462.70 | 216,243.50 |
| Matter No. 300 | Curtis Retention/Billing/Fee Application | 619.40 | 171,053.50 |
| Matter No. 400 | Swap Transactions/Terminations/Analysis/ | 404.10 | 185,638.00 |
| Matter No. 410 | U.S. Bank Matters | 2.90 | 1,779.50 |
| Matter No. 420 | JPMorgan Chase Matters | 8,063.70 | 3,611,137.00 |
| Matter No. 430 | CIFG Matters | 2.90 | 1,017.50 |
| Matter No. 440 | Syncora Matters | 123.70 | 73,914.00 |
| Matter No. 450 | Fenway Matters | 4.80 | 1,283.00 |
| Matter No. 460 | Racers Matters | 23.70 | 10,359.00 |
| Matter No. 470 | Sasco Matters | 8.80 | 4,419.00 |
| Matter No. 480 | Pyxis Matters | 346.50 | 166,057.00 |
| Matter No. 490 | Pine, Spruce and Verano Matters | 7.40 | 2,124.50 |
| Matter No. 510 | CEAGO Matters | 7.20 | 4,851.50 |
| Matter No. 600 | Bankruptcy Litigation | 110.00 | 65,891.50 |
| Matter No. 700 | Non-Bankruptcy Litigation | 236.90 | 122,206.50 |
| Matter No. 1200 | Hearings and Court Matters | 57.80 | 26,511.50 |
| **SUBTOTAL** | | **10,738.20** | **$    4,742,385.50** |
| Less 50% discount on Summer Associate fees[1] | | | [78,137.50] |
| **TOTAL** | | **10,738.20** | **$    4,664,248.00** |

---

[1] See *supra*, **Exhibit B**, n.1.