**Hearing Date/Time:   TBD**
**Objections Due: TBD**

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                                  :    Chapter 11 Case
                                                        :
LEHMAN BROTHERS HOLDINGS INC.,                          :    No. 08-13555 (JMP)
<u>et al.</u>                                           :
                                                        :    Jointly Administered
                                        Debtors.        :
------------------------------------------------------- x

## <u>SUMMARY SHEET</u>

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart Oliver & Hedges, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al.</u> |
| **Date of Retention** | October 21, 2008, (*Nunc pro tunc* to September 15, 2008) |
| **Compensation Period** | June 1, 2009 through September 30, 2009 |
| **Fees Incurred for Counsel** | $2,248,453.00 |
| **Expenses Incurred** | $144,241.20 |
| **Prior Interim Applications Filed** | This is the Third Interim Fee Application Filed by Quinn Emanuel Oliver & Hedges, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $644.75 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $431.16 |

**Schedule 1**

**Hours, Rate and Fees for Services Rendered during the Third Interim Fee Period[1].**

| Attorneys/ Paraprofessionals | Title | Year of Bar Admission | Current Hourly Rate | Hours | Total Fee Charged |
|---|---|---|---|---|---|
| Marc A. Becker | Partner | 1988 | $950.00 | 11 | $10,450.00 |
| Daniel P. Cunningham | Partner | 1980 | $950.00 | 91.4 | $86,830.00 |
| Richard East | Partner | 1997 | $950.00 | 0.3 | $285.00 |
| Faith Gay | Partner | 1987 | $950.00 | 2.1 | $1,995.00 |
| Richard I. Werder, Jr. | Partner | 2003 | $950.00 | 3.3 | $3,135.00 |
| Susheel Kirpalani | Partner | 1995 | $820.00 | 38.4 | $31,488.00 |
| Jonathan Pickhardt | Partner | 2000 | $775.00 | 1.20 | $930.00 |
| James C. Tecce | Partner | 1995 | $775.00 | 464.2 | $359,755.00 |
| Eric D. Winston | Partner | 1999 | $740.00 | 168.5 | $124,690.00 |
| Erica Taggart | Partner | 2001 | $660.00 | 356.5 | $235,290.00 |
| Eric M. Kay | Counsel | 1995 | $650.00 | 313.9 | $204,035.00 |
| Matthew Bunting | Associate | 2001 | $485.00 | 82.3 | $42,075.50 |
| Molly Stephens | Associate | 2002 | $445.00 | 39.1 | $17,399.50 |
| Jake M. Shields | Associate | 2002 | $445.00 | 39.4 | $17,533.00 |
| Robert K. Dakis (rate changed in September to $430.00, from $410.00) | Associate | 2004 | $430.00 | 385.4 | $160,824.00 |
| Thomas O'Brien | Associate | 2007 | $390.00 | 168.3 | $66,099.00 |
| Tyler G. Whitmer | Associate | 2006 | $390.00 | 208.7 | $82,510.00 |
| Marc A. Palladino | Associate | 2007 | $390.00 | 54.7 | $21,430.00 |
| Olga M. Urbieta | Associate | 2008 | $380.00 | 349.3 | $129,597.00 |
| Lance Yang | Associate | 2008 | $370.00 | 160.1 | $59,237.00 |

---

[1]     The titles and hourly rates list above are reflective of the current status, and may have changed during the interim period.

| Attorneys/ Paraprofessionals | Title | Year of Bar Admission | Current Hourly Rate | Hours | Total Fee Charged |
|---|---|---|---|---|---|
| Heather Nolan | Attorney | 2001 | 455.00 | 113.1 | $54,052.50 |
| SoYun Roe | Attorney | 2007 | 390.00 | 358.3 | $137,012.00 |
| Christopher Clark | Attorney | 2007 | 320.00 | 349.2 | $111,744.00 |
| John Volpe | Attorney | 1988 | 320.00 | 708.9 | $226,848.00 |
| Jennifer English | Law Clerk | N/A | 295.00 | 14.9 | $4,395.50 |
| Ben Odell | Law Clerk | N/A | 295.00 | 17.7 | $5,221.50 |
| John Lee | Law Clerk | N/A | 295.00 | 2 | $590.00 |
| Serafina Shishkova | Law Clerk | N/A | 295.00 | 56.7 | $16,726.50 |
| Roy Nelson | Managing Clerk | N/A | 280.00 | 0.5 | $140.00 |
| Dave Scholz | Graphic Coord. | N/A | 250.00 | 2.30 | $575.00 |
| Joan Collopy | Paralegal | N/A | 250.00 | 8 | $2,000.00 |
| Sebastian Dinges | Paralegal | N/A | 250.00 | 4.3 | $1,075.00 |
| Martine LaCroix | Paralegal | N/A | 250.00 | 4.1 | $1,025.00 |
| James Bandes | Lit Support | N/A | 250.00 | 0.5 | $125.00 |
| Harold Edison | Lit Support | N/A | 250.00 | 1.2 | $300.00 |
| Danny Rose | Lit Support | N/A | 150.00 | 4 | $600.00 |
| Raul Vasquez | Lit Support | N/A | 150.00 | 25.9 | $3,885.00 |
| Patricia Chew | Lit Support | N/A | 150.00 | 5.3 | $795.00 |
| Jet Ma | Lit Support | N/A | 150.00 | 23.3 | $3,495.00 |
| Micheal Lee | Lit Support | N/A | 150.00 | 5.2 | $780.00 |
| Joe Liao | Lit Support | N/A | 150.00 | 119.6 | $17,940.00 |
| Alan Davis | Lit Support | N/A | 150.00 | 3 | $450.00 |
| Arthur Daye | Lit Support | N/A | 150.00 | 14 | $2,100.00 |
| Matt Hester | Lit Support | N/A | 150.00 | 6.6 | $990.00 |
| **TOTAL** | | | | 4,786.7 | $2,248,453.00 |

**Schedule 2**

**Hours and Fees for the Third Interim Compensation Period As Rendered By Category**

| Task Codes | | Hours | Fees |
|---|---|---|---|
| LEH01 | Case Management/Calendar Maintenance | 66.4 | $21,112.00 |
| LEH02 | Cash Collateral and DIP Financing | 12.4 | $4,409.00 |
| LEH03 | Claims Analysis/Objections | 75.1 | $38,636.00 |
| LEH04 | Committee Administration | 0 | $0 |
| LEH05 | Court Hearings | 38.5 | $24,520.00 |
| LEH06 | Creditor Communication | 15.7 | $12,047.50 |
| LEH07 | Creditors' Committee Meetings | 102.1 | $71,725.50 |
| LEH08 | Executory Contracts & Unexpired Leases | 53.9 | $24,848.50 |
| LEH09 | Lender and Counterparty Claims | 21.9 | $7,913.00 |
| LEH10 | Liens and Set-Off | 0 | $0 |
| LEH11 | Litigation/Potential Litigation[1] | 1457.6 | $690,368.00 |
| LEH12 | Non-Working Travel | 55.4 | $38,098.50 |
| LEH13 | Other Conflict Roles | 9.8 | $6,646.00 |
| LEH14 | Other Professional Fee Applications | 0 | $0 |
| LEH15 | Pre-petition Transactions | 0 | $0 |
| LEH16 | Quinn Emanuel Fee Applications | 168.5 | $61,104.00 |
| LEH17 | Retention of Professionals | 25.6 | $9,858.50 |
| LEH18 | Rule 2004 Investigations | 447.9 | $208,460.00 |
| LEH19 | Stay Relief Matter | 0.4 | $310.00 |
| LEH20 | United Kingdom & European Matters | 0 | $0 |
| LEH21 | Derivatives | 130.4 | $83,120.50 |
| LEH22 | Barclays' Transaction Investigation and Litigation | 1666.1 | $780,379.50 |
| LEH23 | Special Litigation | 439.0 | $164,896.50 |
| | TOTAL | 4,786.7 | $2,248,453.00 |

---

[1]    Time billed in this category includes time spent on the Barclays litigation and the Bank of America adversary proceeding, which are now billed in categories LEH22 and LEH23, respectively.  As a result of the increasing time spent on these matters, Quinn Emanuel created these new task codes in August 2009.  As such, all time related to the Bank of America and Barclays disputes from August 2009 forward were recorded in the new categories.  We estimate that approximately $64,406 in fees relates to Barclays and $244,225 relates to BofA.

**Schedule 3**

**Summary Of Expenses**

| Description | Total |
|---|---|
| Outside Photocopy | $4,614.18 |
| Westlaw/Lexis Service | $14,347.08 |
| Photocopying $0.10 per page | $642.70 |
| Photocopy at $0.15 per page[1] | $11,690.55 |
| Printing at $0.10 per page | $251.80 |
| Printing at $0.15 per page | $9,916.65 |
| Color Printing at $0.57 per page | $216.60 |
| Color Printing at $0.82 per page | $27.88 |
| Scan | $309.90 |
| Express Mail | $2,254.70 |
| Local Travel | $305.98 |
| Messenger | $852.77 |
| Postage | $63.11 |
| Professional Services | $2,218.03 |
| Taxi | $609.03 |
| Telecopier | $78.24 |
| Telephone | $211.13 |
| Travel | $112.10 |
| Air Travel | $14,836.44 |
| Hotel | $7,867.19 |
| Parking | $590.25 |
| Meals | $484.01 |
| Attorney Service/Travel Agent | $700.00 |

---

[1]    Beginning on July 1, 2009, Quinn Emanuel's cost for printing and photocopying increased from $0.10 per page to $0.15 per page.

| Description | Total |
|---|---|
| Deposition Transcripts | $44,182.15 |
| Hearing Transcript | $138.00 |
| Video Depositions | $22,127.00 |
| Media Create/Dup | $1,210.00 |
| Outside Velobinding | $26.00 |
| Hosting | $890.00 |
| Digital Prints | $3,272.81 |
| Other Lit. Services | $1,316.34 |
| Licensing Fees | $192.91 |
| OCR @.04 | $308.84 |
| **Subtotal** | $146,864.37 |
| **Overcharge Credit** | -$2,623.17[2] |
| **TOTAL** | $144,241.20 |

---

[2]    During a routine review of expenses, it became apparent to Quinn Emanuel that certain IT related charges had not been reduced to cost.  Upon discovery, Quinn Emanuel took the necessary steps to prevent this inadvertent mistake from happening again.  Quinn Emanuel also issued a credit, in the amount of $2,623.17, relating to these IT expenses (to ensure they were billed at cost) and deducted that amount from the August 2009 Fee Statement.  It also advised the estates of that mistake by letter dated September 28, 2009.

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                                        :    Chapter 11 Case
                                                              :
LEHMAN BROTHERS HOLDINGS INC.,           :    No. 08-13555 (JMP)
<u>et al.</u>                                                 :
                                                              :    Jointly Administered
                                           Debtors.       :
-------------------------------------------------------- x

**THIRD INTERIM APPLICATION OF QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING THE
<u>PERIOD JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009</u>**

Quinn Emanuel Urquhart Oliver & Hedges, LLP ("<u>Quinn Emanuel</u>"), Special

Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holding Inc., <u>et</u>

<u>al.</u> (the "<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court,

pursuant to sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the

"<u>Bankruptcy Code</u>"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), and the Amended Administrative Order, pursuant to sections 105(a) and

331 of the Bankruptcy Code establishing procedures for interim compensation and reimbursement

of expenses of professionals, dated June 25, 2009, (as amended, the "<u>Compensation Order</u>"), for

allowance of interim compensation for professional services rendered in the amount of $2,248,453.00 and reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the amount of $144,241.20, during the period beginning June 1, 2009 through and including September 30, 2009 (the "Fee Period"), and, in support thereof, respectfully represents as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction to hear and determine the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

## II.    GENERAL BACKGROUND

2.    On September 15, 2008, and periodically thereafter (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI"), and certain of its subsidiaries and affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

3.    On September 17, 2008, the Untied States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

4.      On January 16, 2009, the Court entered an Order directing the appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2) to investigate, *inter alia*, various transfers and transactions involving the Debtors and their affiliates as well as the events immediately preceding the commencement of the Chapter 11 Cases.

### III.    <u>RETENTION OF QUINN EMANUEL</u>

5.      On October 21, 2008, the Committee filed its Application Under 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, <u>Nunc Pro Tunc</u> to September 17, 2008 (the "<u>Retention Application</u>").

6.      On November 21, 2008, this Court entered the Final Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. <u>et al.</u>, <u>Nunc Pro Tunc</u> to September 17, 2008 (the "<u>Retention Order</u>").  A true and correct copy of the Retention Order is attached hereto as Exhibit B.

7.      As set forth in the Retention Application, the Committee retained Quinn Emanuel to:

• assist the Committee on matters involving entities as to which the Committee's primary counsel Milbank, Tweed, Hadley & McCloy LLP ("<u>Milbank</u>") has an actual or potential conflict of interest;

• assist the Committee's investigation of the acts, conduct, assets, liabilities, intercompany relationships and claims and financial condition of the Debtors and their non-debtor subsidiaries, the existence of estate causes of action and the operation of their businesses to the extent that Milbank is conflicted from conducting those investigations; and

• perform such other legal services as requested by the Committee to the extent not duplicative of Milbank's services.

8.      To that end, Quinn Emanuel has served as special counsel to the Committee and has rendered legal services for the benefit of the Committee in respect of all matters relating to the Debtors' bankruptcy cases where Milbank has a conflict and where the Committee has otherwise directed Quinn Emanuel to advise the Committee.

9.      On October 11, 2008, the Debtors filed a Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "Compensation Motion").  The Compensation Motion was granted pursuant to the Compensation Order.

10.      The Compensation Order established a procedure for, inter alia, the payment of interim fees and expenses to professionals employed by the Committee on a monthly basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is attached as Exhibit C.

## IV.      MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

11.      Quinn Emanuel prepared and submitted its first quarterly fee application on April 10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing September 15, 2008 through January 31, 2009.

12.      Quinn Emanuel prepared and submitted its second quarterly fee application on August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period commencing February 1, 2009 through May 31, 2009.

---

[1]      Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

13.     This Application is Quinn Emanuel's third quarterly fee application and

seeks payment of interim compensation and reimbursement of expenses for services rendered to

the Committee in amounts that have been invoiced to the Debtors for the period from June 1,

2009 through September 30, 2009.

14.     This Application requests that the Court (a) approve interim fees in the

total amount of $2,248,453.00 (including the 20% of such fees "held back"), and reasonable out-

of-pocket expenses in the amount of $144,241.20 incurred by Quinn Emanuel for services

rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to

Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after

deducting interim payments already received by Quinn Emanuel pursuant to the Compensation

Order.

15.     For the period from June 1, 2009 through and including September 30,

2009, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements").

Through the Monthly Fee Statements,  Quinn Emanuel has requested interim fee compensation in

the amount of $1,798,762.40 (representing 80% of the fees billed by Quinn Emanuel from June 1,

2009 through September 30, 2009) and expenses incurred in the total amount of $144,241.20

(100% of the expenses billed by Quinn Emanuel from June 1, 2009 through September 30, 2009).

For the period commencing on June 1, 2009 through June 30, 2009, Quinn Emanuel requested

payment of $285,980.80 in fees (representing 80% of the $357,476 fees for that period) and

$6,538.30 in expenses.  For the period commencing on July 1, 2009 through July 31, 2009, Quinn

Emanuel requested payment of $478,734 in fees (representing 80% of the $598,417.50 fees for

that period) and $29,363.74 in expenses.  For the period commencing on August 1, 2009 through

August 31, 2009, Quinn Emanuel requested payment of $508,494.40 in fees (representing 80% of

the $635,618 fees for that period) and $43,088.68 in expenses.  For the period commencing on

September 1, 2009 through September 30, 2009, Quinn Emanuel requested payment of

$525,553.20 in fees (representing 80% of the $656,941.50 fees for that period) and $65,268.90 in

expenses.

16.     The fees and expenses requested are reasonable, and all amounts requested

were for actual and necessary services rendered on behalf of the Committee.

17.     Quinn Emanuel has not entered into any agreement, express or implied,

with any other party for the purpose of fixing or sharing fees or other compensation to be paid for

professional services rendered in these cases.  No promises have been received by Quinn Emanuel

or any member thereof as to compensation in connection with these cases other than in

accordance with the provisions of the Bankruptcy Code.

## V.     SUMMARY OF PROFESSIONAL SERVICES RENDERED

18.     Pursuant to the guidelines promulgated by the United States Trustee, Quinn

Emanuel classified all services performed for which compensation is sought into separate

categories.  Quinn Emanuel attempted to place the services performed in the category that best

relates to the services provided.  However, because certain services may relate to one or more

categories, services pertaining to one category may be included in another category.  Schedule 1,

attached hereto, lists each timekeeper, his or her respective billing rate, professional information,

and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes the

professional and paraprofessional time expended by project category.  Timekeeping entries and

Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these

categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths of an

hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee.[2]

19.     The following summary is intended only to highlight key services rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has expended a considerable number of hours on behalf of the Committee, and is not meant to be a detailed description of all of the work performed.

**A.     Case Management/Calendar Maintenance  (Hours: 66.4, Fees: $21,112.00)**

20.     Time billed under this category relates to a variety of tasks that were necessary to ensure competent representation of the Committee, including:

• Daily monitoring of dockets in the Chapter 11 Cases, SIPA proceeding and certain of the adversary proceedings when Quinn Emanuel has taken the lead role with respect to the Committee;

• Circulating relevant documents filed to the appropriate team attorneys; and

• Creating and updating reports tracking the status of various matters in the cases and certain of the adversary proceedings.

**B.     Claims Analysis/Objections  (Hours: 75.1, Fees: $38,636.00)**

21.     Since the inception of the Chapter 11 Cases, Quinn Emanuel attorneys and the Committee's retained professionals continually engaged in the task of reviewing and analyzing a wide variety of claims asserted against the Debtors' estates.  Certain of the claims examined during this period are set forth below.

---

[2]     Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; and (iii) counsel for the Debtors.

22.    <u>SMBC Motion.</u>  On October 15, 2008, Sumitomo Mitsui Banking Corporation ("<u>SMBC</u>") filed a motion ("<u>SMBC Motion</u>") seeking relief from the automatic stay to recover certain collateral it maintained was pledged in connection with its credit agreement with certain Lehman entities.  Lehman, the Committee and an ad hoc noteholder group objected to the motion, alleging that the relief requested was premature and that Sumitomo failed to provide evidence to support the decline in value of the loan collateral.  In December 2008, the Debtors and Sumitomo entered into a stipulation resolving their dispute (the "<u>Sumitomo Settlement</u>").  In January 2009, the parties amended the Sumitomo Settlement to make certain non-substantive changes.  On June 2, 2009, Sumitomo and the Debtors filed a second amendment to the Sumitomo Settlement (the "<u>Second Amendment</u>").  Quinn Emanuel attorneys analyzed the Second Amendment to the Sumitomo Settlement to determine its effect on the estates, and to ensure it did not have any negative implications for the unsecured creditors.

23.    <u>HSBC Stipulation.</u>  On May 1, 2009, Lehman Brothers Holdings, Inc. ("<u>LBHI</u>") and HSBC Bank Plc ("<u>HSBC</u>") filed a proposed stipulation, agreement and order (the "<u>HSBC Stipulation</u>") seeking permission for HSBC to offset considerable amounts against LBHI. The HSBC Stipulation alleged that prior to September 2008, LBHI, Lehman Brothers International (Europe) ("<u>LBIE</u>") and Lehman Brothers Limited maintained customer clearance accounts (the "<u>Customer Accounts</u>") at HSBC.  On September 9, 2008, HSBC and LBHI executed a Deed (the "<u>Deed</u>"), creating an LBHI collateral account (the "<u>Collateral Account</u>") and granting HSBC the right to apply funds in the Collateral Account against "Debts."  Moreover, on October 31, 2008, RBS mistakenly wired approximately £605,000.00 to an LBHI customer account (the "<u>Misdirected Payment Claim</u>").  As of April 23, 2009, the Customer Accounts were

overdrawn by £100,062,061.97.  As of April 28, 2009, the Collateral Account balance was

€343,446,459.96 (the "Collateral Funds").

        24.      The HSBC Stipulation requested authority to set off approximately €343

million in the Collateral Account maintained at HSBC against (i) HSBC's overdraft exposure

(which HSBC maintained was approximately £100 million) (the "Overdraft") and (ii) amounts

purportedly owing from LBHI to Royal Bank of Scotland ("RBS") in respect of a misdirected

wire transfer (approximately £605 thousand) (the "Misdirected Wire").  Given the significance of

this transaction, during this Fee Period, Quinn Emanuel attorneys dedicated time to examining the

HSBC Stipulation to determine its effect on the estate, to ensure it did not have any negative

implications for the unsecured creditors.

### C.      Court Hearings  (Hours: 38.5, Fees: $24,520.00)

        25.      Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of

the Committee, have prepared for and attended regularly scheduled omnibus hearings and special

scheduled hearings with respect to matters for which they are responsible.  To prepare for these

hearings, Quinn Emanuel attorneys often expended considerable time reviewing and analyzing

documents, including correspondence and pleadings, and conducting independent legal and

factual research.

### D.      Creditors' Committee Meetings  (Hours: 102.1, Fees: $71,725.50)

        26.      Numerous issues arose during the Fee Period requiring meetings of the

Committee ("Committee Meetings").  Committee Meetings occur weekly, either via

teleconference or in person.  The meetings generally address the significant issues in the cases at

that time, e.g., the Debtors' pending motions, asset sales, settlements, the status of various

investigations, the status of litigations, Committee operational issues and various other matters

related to the Debtors' cases.  Quinn Emanuel attorneys were often called upon to present the results of its legal and factual research to the Committee.  Due to the enormity of the cases and the complexity of issues, considerable time is often spent preparing for the Committee Meetings, including preparing or reviewing memoranda examining issues selected for presentment and consideration at such meetings.

      **E.**       **Executory Contracts and Unexpired Leases  (Hours: 53.9, Fees: $24,848.50)**

      27.      The Debtors frequently are presented with significant issues concerning the assumption or rejection of a wide range of executory contracts.  They also receive various demands by creditors that contracts be assumed or rejected.  Quinn Emanuel attorneys and the Committee's financial advisors often assume an active role in reviewing these requests, and working with the Debtors to resolve (or, where appropriate oppose) them.

      28.      <u>Fidelity Stipulation.</u>  On August 5, 2009, the Debtors and Variable Insurance Products V: Strategic Income Portfolio, Fidelity Summer Street Trust: Fidelity Capital & Income Fund, Fidelity School Street Trust: Fidelity Strategic Income Fund, Fidelity Advisor Series II: Fidelity Advisor Strategic Income Fund (collectively, the "<u>Fidelity Funds</u>") and Pyramis Global Advisors (collectively, "<u>Fidelity</u>") entered into a stipulation (the "<u>Fidelity Stipulation</u>") terminating a trade between the Debtors and Fidelity.

      29.      The Debtors were active participants in the secondary loan market, purchasing and selling both par and distressed commercial loans.  These trades were reflected in oral and written confirmations (the "<u>Trade Confirmations</u>").  As of the Petition Date, the Debtors had entered into hundreds of Trade Confirmations (the "<u>Open Trade Confirmations</u>"), but had not yet consummated or settled these transactions.  On November 14, 2008, the Debtors moved for authority to either assume or reject these Open Trades Confirmations.

30.      In connection with the motion to assume or reject the Open Trade Confirmations, the Debtors sought to assume a Trade Confirmation with Fidelity (the "Fidelity Trade") whereby the Debtors would sell to Fidelity $15 million (original face amount) of debt of Wind Acquisition Holdings Finance S.A.  The Court approved the assumption of the Fidelity Trade.

31.      Subsequently, Fidelity asserted that the Fidelity Trade had been terminated pre-petition and was thus not subject to assumption.  The Debtors moved to compel Fidelity to close the Fidelity Trade.  During the pendency of the dispute, the value of the loan underlying the Fidelity Trade Increased.  As a result, the Debtors entered into the Fidelity Stipulation in order to terminate the Fidelity Trade.  During the Fee Period, Quinn Emanuel attorneys reviewed the Fidelity Stipulation to ensure that it maximized value for unsecured creditors and did not negatively impact the estates.

32.      Barclays/AMEX Stipulation.  In connection with the Barclays sale transaction (the "Sale Transaction"), certain executory contracts related to the broker-dealer business were to be assumed by the Debtors and assigned to Barclays.  On September 18, 2008, pursuant to the Notice Order, a list of closing date contracts (the "Closing Date Contracts") was posted on a website.  The Closing Date Contracts purportedly included certain contracts, including two contracts with Amex (the "Amex Contracts").  On September 20, 2008, the Court issued a sale order (the "Sale Order"), pursuant to which the assumption and assignment of the Closing Date Contracts was authorized along with a process for finalizing the cure amounts for those contracts.  On October 14, 2008, Barclays moved for relief under Rule 60(b) of the Federal Rules of Civil Procedure (the "FRCP") with respect to the assumption and assignment of the Amex Contracts under the Sale Order ("Barclays' Second 60(b) Motion").  On October 27, 2008,

Amex filed an objection to Barclays' Second 60(b) Motion and argued that Barclays lacked standing to seek relief pursuant to Rule 60(b) because (i) it was not a party to the motion to approve the sale of the broker-dealer business (the "Sale Motion") and (ii) the Debtors, as the moving party, did not join Barclays' Second 60(b) Motion.  On November 21, 2008, the Committee filed a limited objection to Barclays' Second 60(b) Motion (the "Objection").  The Committee submitted that the estates should not be exposed to damages claims relating to the IT Contracts or the Amex Contracts.

33.    On August 6, 2009, Barclays and Amex proposed a settlement agreement (the "Amex Agreement"), whereby Barclays agreed to pay $3.9 million to Amex in order to end the dispute.  During the Fee Period, Quinn Emanuel attorneys reviewed the propriety of the Amex Agreement and negotiated various modifications to minimize its negative effect on against the estates, including a damages cap.

### F.    Lender And Counterparty Claims  (Hours: 21.9, Fees: $7,913.00)

34.    From the outset of the Chapter 11 Cases, the Debtors have faced myriad issues relating to the interaction between the Debtors and their lenders and counterparties under different financial arrangements.  Quinn Emanuel has devoted and directed resources into the review and analysis of these relationships.  Time billed in this category relates primarily to Quinn Emanuel's legal and factual research regarding claims that the Debtors' lenders and counterparties have asserted against the Debtors, as well as potential estate claims that the Debtors may assert against these lenders and counterparties.  These investigations remain ongoing.

35.    Barclays Stipulation.    On August 6, 2009, Neuberger Berman Group LLC

("NB"), the SIPA Trustee and Barclays Capital Inc. ("Barclays") proposed a stipulation and order

(the "Unrelated Contracts Stipulation"), under which (a) certain contracts previously assumed and

assigned to Barclays in the Sale Transaction were designated as "unrelated contracts" with respect

to the assets purchased by Barclays (the "Unrelated Contracts"), and (b) the Debtors' prior

assumption and assignment of the Unrelated Contracts to Barclays was rescinded.    During this

Fee Period, Quinn Emanuel attorneys reviewed and analyzed the Unrelated Contracts Stipulation

to ascertain its affect on the estates and the pending litigations with Barclays.    On August 25,

2009, the Court entered the Unrelated Contracts Stipulation.

G.    **Litigation/Potential Litigation  (Hours: 1,457.6, Fees: $690,368.00)[3]**

36.    Time billed to this category generally relates to litigation that Quinn

Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities

in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors.

Generally, time billed in this category falls into three categories:

i.    Monitor Pending Adversary Proceedings.    As special litigation

counsel to the Committee, Quinn Emanuel attorneys are tasked with the review and consideration

of numerous adversary proceedings filed by or against the Debtors.    In performing this review,

Quinn Emanuel attorneys review each pleading as well as hearing transcripts in order to remain

---

[3]    Time billed in this category includes time spent on the Barclays litigation and the Bank of
America adversary proceeding discussed below (which now are billed to LEH22 and 23,
respectively).    Because of the increasing amount of time dedicated to these, and other special
litigation matters, Quinn Emanuel created two new task codes in August 2009.    As such, all
time related to the Bank of America and Barclays disputes from August 2009 forward were
recorded in the new categories.    During the Fee Period, we estimate that of the $690,368,
approximately $64,406 in fees relate to Barclays and $244,225 in fees relate to BofA.

abreast of the procedural and substantive issues pending in each proceeding. This responsibility is split between Milbank and Quinn Emanuel.

      ii.    <u>Investigation of Certain Key Parties and Transactions.</u> Prior to and since the bankruptcy filings, the estates have been parties to numerous significant transactions. Quinn Emanuel has been tasked with examining, on the Committee's behalf, certain of these events and transactions. Thus, Quinn Emanuel attorneys have devoted and directed resources into the review and analysis of the Debtors' relationships with, among others, its prime brokers and contract counterparties, and have attempted to review and consider the circumstances surrounding transactions in which they were involved.

      iii.    <u>Discrete Litigation Matters.</u> In addition, time billed in this category relates to discrete litigation matters wherein Quinn Emanuel represents the interests of the Committee and its constituents. Included in this category are fees incurred in connection with litigation between the estates and Bank of America ("<u>BofA</u>"), Barclays, and certain derivatives counterparties, which are each descried more fully below. Given the considerable time spent on these issues, during the Fee Period, Quinn Emanuel created new billing task codes to provide better clarity regarding the time and expense of these matters.

      37.    <u>DB Adversary Proceeding.</u> On July 13, 2009, the Debtors presented a stipulation dismissing an adversary proceeding commenced by Deutsche Bank AG ("<u>DB</u>") against LBHI seeking the return of $72.5 million (the "<u>Subject Funds</u>") which DB mistakenly wired to LBHI. LBHI had responded to DB's complaint alleging that it was entitled to retain the Subject Funds because LBHI and LBSF could assert affirmative claims against DB in connection with DB's termination of certain swap transactions. On March 25, 2009, DB moved for summary judgment against LBHI. Then, on April 24, 2009, LBHI opposed DB's motion for summary

judgment, arguing that amounts DB owed LBHI exceeded the value of the Subject Funds and that it was entitled to assume that DB's transfer of the Subject Funds was made in satisfaction of the debts DB owed to LBSF.  The Debtors ultimately moved to dismiss the litigation and return the Subject Funds to DB.  Quinn Emanuel attorneys dedicated time to reviewing the parties' claims and defenses, and reviewing the proposed settlement to determine the effect on the estates.

38.    Ballyrock Adversary Proceeding.  On February 3, 2009, Lehman Brothers Special Financing ("LBSF") filed a complaint seeking: (i) a declaratory judgment that (a) the proposed distribution to Ballyrock's investors is improper and (b) termination of the Swap Agreement was improper, and (ii) a preliminary and permanent injunction, enjoining the Trustee or Ballyrock from taking any action in furtherance of the wrongful termination, including disbursing any of the remaining assets to any party other than LBSF.  On February 5, 2009, Wells Fargo filed an answer and complaint in interpleader as Trustee and sought a determination as to which, if any, of the parties is entitled to the funds at issue.  On March 31, 2009, Ballyrock filed a motion to dismiss the adversary proceeding.  On April 2, 2009, Wells Fargo filed a notice of presentment of an order granting Wells Fargo's counterclaim in interpleader.

39.    On April 20, 2009, the Court signed an order granting preservation of status quo for disputed funds, the notice of interpleader request and the payment of trustee fees.  On June 3, 2009, the Court signed an order granting interpleader to Wells Fargo.  On June 17, 2009, certain noteholders filed a memorandum of law in further support of Ballyrock's motion to dismiss.  On August 7, 2009, Barclays also filed a reply memorandum in further support of the motion to dismiss.

40.     Quinn Emanuel attorneys, on behalf of the Committee, intervened in this action by stipulation and order entered on July 30, 2009.  Quinn Emanuel attorneys spent time drafting, revising and filing a substantive joinder to the Lehman Debtors' opposition to Ballyrock's motion to dismiss.  On behalf of the Committee, we filed a joinder to the Debtors' opposition to Ballyrock's motion to dismiss on August 7, 2009.  Thereafter, Quinn Emanuel attorneys spent time preparing for the hearing which took place on September 17, 2009.  After a lengthy hearing, the Judge took the matter under advisement.

41.     <u>Libra Adversary Proceeding.</u>  On May 5, 2009, Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") and LBHI filed a complaint for declaratory and injunctive relief against Libra CDO Limited ("<u>Libra</u>"), LaSalle Bank National Association ("<u>LaSalle</u>"), acting in its capacity as trustee under an indenture (the "<u>Indenture</u>") pursuant to which Libra raised capital through the issuance of certain notes, Bank of America (as successor in interest to LaSalle and with LaSalle, the "<u>Trustee</u>"), and Société Générale, New York Branch ("<u>SGNY</u>" and together with Libra and the Trustee, the "<u>Defendants</u>").  On June 5, 2009, Bank of America filed a response to the complaint denying the allegations in the complaint.  Thereafter, on June 19, 2009, LBHI and LBSF filed a motion seeking summary judgment arguing that no material facts are in dispute, rather, at issue is the proper construction of the Contracts.  On June 26, 2009, Defendants filed a motion and memorandum of law in support of their cross-motion for summary judgment.

42.     During this Fee Period, Quinn Emanuel attorneys dedicated time to reviewing relevant issues in this matter.  Quinn Emanuel negotiated the Committee's intervention in the adversary proceeding and researched and wrote a response in opposition to the Defendants' cross-motion for summary judgment.  The Committee intervened in this action by stipulation and order entered on July 16, 2009.  On July 17, 2009, LBHI and LBSF filed an opposition to the

Defendants' cross-motion for summary judgment.  Also, on July 17, 2009, the Committee filed a response in opposition to Defendants' cross-motion for summary judgment and a joinder in LBHI and LBSF's opposition to Libra's cross-motion for summary judgment.

43.    During this Fee Period, Quinn Emanuel attorneys also drafted and revised a reply to the Defendants' opposition to LBHI and LBSF's motion for summary judgment.  On August 7, 2009, the Committee filed a reply to Defendants' opposition to LBHI and LBSF's motion for summary judgment, arguing that the Libra parties' arguments simply ignore the plain meaning of the documents and the economic reality of the integrated transaction.  On August 26, 2009, the Court held a hearing on the summary judgment motions.  The Court took the matters under advisement, but permitted supplemental briefing on two issues.

44.    On September 2, 2009, the Defendants filed a supplemental memorandum of law to address the August 26, 2009 hearing and Lehman's arguments at that hearing.  Quinn Emanuel attorneys reviewed the Defendants' supplemental memorandum and then worked quickly to draft and file a response.  On September 9, 2009, LBHI, LBSF and the Committee submitted a joint response to Bank of America's supplemental memorandum of law.

**H.    Nonworking Travel  (Hours: 55.4, Fees: $38,098.50)**

45.    Time billed under this category was for the necessary time that Quinn Emanuel attorneys spent traveling on behalf of the Creditors' Committee to Committee meetings, depositions and court hearings.  Given the compressed time and magnitude of the Barclays investigation, it was necessary to task attorneys outside of Quinn Emanuel's New York office with handling depositions and discovery taking place in New York.  Time billed during this Fee Period, included cross-country air travel relating to this investigation.

I.   **Other Conflict Roles (Hours: 9.8, Fees $6,646.00)**

46.   Time billed to this category relates to Quinn Emanuel's role as conflict counsel to the Committee on certain discrete issues, including interaction with the Examiner and his counsel concerning the matters that are the subject of the Committee's investigations.

J.   **Quinn Emanuel Fee Applications (Hours: 168.5, Fees: $61,104.00)**

47.   Pursuant to the Bankruptcy Code, Local Rules, and the Compensation Order, Quinn Emanuel prepared and served four monthly fee statements (the "Fee Statements") for approval and allowance of compensation for actual, reasonable and necessary professional services rendered, and reimbursement of expenses for actual reasonable and necessary expenses incurred during those fee periods.  Each Fee Statement contained extensive records of the work performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared and served the Second Interim Fee Application during this Fee Period.  Preparing the Second Interim Fee Application involved consolidating Quinn Emanuel's fees and expenses for four monthly fee statements and preparing a detailed pleading describing these efforts.  Extensive time was also spent organizing the time entries and preparing the charts and the summary descriptions of the work done throughout the Second Interim Fee Application.

K.   **Retention of Professionals (Hours: 25.6, Fees: $9,858.50)**

48.   Time billed to this category relates to the subsequent review of documents or information necessary to ensure appropriate and effective disclosure in connection with Quinn Emanuel's continued retention.

L.    **Rule 2004 Investigations  (Hours: 447.9, Fees: $208,460.00)**[4]

49.    In connection with certain of the Committee's investigations of certain events that transpired prior to the commencement of the Chapter 11 Cases, certain post-petition transactions (e.g., the Sale Transaction), and the relationships between the Debtors and their lenders and counterparties, Quinn Emanuel attorneys attempted to obtain consensual discovery from various parties.  Consistent with these efforts, attorneys from Quinn Emanuel prepared and, when necessary, filed motions pursuant to Bankruptcy Rule 2004.

50.    JPMC 2004    In October 2008, Quinn Emanuel filed a motion (the "JPMC Motion") on the Committee's behalf seeking leave under Bankruptcy Rule 2004 to conduct discovery against JPMC, i.e., documents regarding (i) the numerous contractual relationships between JPMC and the Debtors, (ii) JPMC's claims against the Debtors, and (iii) certain events leading to the filing of the Chapter 11 Cases.  Negotiations with counsel to JPMC seeking a consensual resolution of the JPMC Motion and their objection resulted in the November 5, 2008 Stipulation And Consent Order (I) Governing Interim Production of Documents and (II) Adjourning Remainder of Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings**,** Inc**.,** et al**.** For Leave to Conduct Discovery of JPMorgan Chase Bank**,** N.A. Pursuant to 11 U.S.C. §§ 105(A) and 1103(C) And Federal Rule Of Bankruptcy Procedure Rule 2004 (the "2004 Stipulation") and the various confidentiality agreements (the "JPMC Production").

---

[4]    Time billed in this category includes time spent on the Barclays litigation discussed below, specifically time spent joining in the Rule 2004 examination initiated by the Debtors.  Quinn Emanuel estimates such fees to total $138,647.50 (which includes time attending depositions and reviewing documents).  Because of the increasing amount of time dedicated to this special litigation matter, Quinn Emanuel created a new task code in August 2009.  As such, all time related to the Barclays disputes from August 2009 forward was recorded in the new category.

51.     Pursuant to the 2004 Stipulation, JPMC produced documents during the Fee Period.  Quinn Emanuel attorneys dedicated time during the Fee Period to reviewing these documents in an attempt to ascertain the contours of the relationship (e.g., the legal rights and entitlements as well as the business dealings) between the Debtors and JPMC.  During this period, Quinn Emanuel also engaged in negotiations with JPMC's counsel regarding the productions and related discovery issues.

**M.     Derivatives  (Hours: 130.4, Fees: $83,120.50)**

52.     During the Fee Period, Quinn Emanuel attorneys devoted time to reviewing numerous derivatives transactions that the Debtors are party to.  The Debtors are in the process of reconciling and winding down their considerable derivatives trading activities.  As part of that function, the Debtors are constantly informing the Committee of its intent to terminate or continue derivatives.  Quinn Emanuel attorneys devoted time to diligence certain of these transactions to ensure that the Debtors' decisions maximized value for unsecured creditors and did not otherwise negatively affect the estates.

53.     The Debtors also commenced litigation challenging the actions of certain counterparties in complex credit default swap transactions.  In particular, the Debtors have challenged whether counterparties had the right to unilaterally terminate the transaction as a result of the Debtors' chapter 11 filings.  Given the sheer volume of the Debtors' trading activity, the number of similar transactions, and the value of these credit default swap transactions, this litigation is certain to affect these Chapter 11 cases as a whole.  Quinn Emanuel attorneys assisted the Committee in examining the issues involved in certain of these litigations and transactions involving certain counter parties.

### N.    Barclays' Transactional Investigation and Litigation  (Hours: 1,666.1, Fees: $780,379.50)[5]

54.    Quinn Emanuel attorneys continued to devote significant time during this Fee Period to the Committee's investigation of the Sale Transaction.  In particular, Quinn Emanuel attorneys spent time (a) pursuing discovery from Barclays, (b) analyzing documents produced by Barclays, and (c) preparing and filing a Rule 60(b) Motion.

55.    In April 2009, the Debtors engaged Jones Day to initiate their own investigation into the Sale Transaction.  Quinn Emanuel coordinated its efforts with respect to the Sale Transaction investigation with Jones Day's efforts to avoid duplication of efforts.

56.    On May 18, 2009, the Debtors filed a 2004 motion (the "Barclays 2004") seeking leave under Bankruptcy Rule 2004 to conduct discovery against Barclays.  On June 5, 2009, Quinn Emanuel attorneys, on behalf of the Committee, filed a response to the Barclays 2004 requesting that any order of the Court also provide that the Committee receive copies of all documents produced to LBHI and that the representatives of the Committee be entitled to appear and propound questions at any deposition noticed in accordance with such order.  Barclays objected to the Rule 2004 Motion and the Committee's joinder.  On June 25, 2009, the Court granted the Rule 2004 motion and authorized the Committee to participate in the Rule 2004 discovery.

57.    Quinn Emanuel attorneys and Barclays' counsel negotiated a proposed stipulation and order regarding confidentiality in the Barclays 2004 production.  Pursuant to the 2004 Stipulation, Barclays began production of documents during the Fee Period.  Quinn Emanuel attorneys spent considerable time and effort reviewing these documents in an attempt to

---

[5]    In August 2009, Quinn Emanuel attorneys opened a separate billing category to cover the time (footnote continued)

ascertain the contours of the Sale Transaction (e.g., the legal rights and entitlements as well as the business dealings) between the Debtors and Barclays.

58.    As with any document production, it was necessary for Quinn Emanuel's professionals to install storage and categorization methods to allow Quinn Emanuel attorneys to better access the material produced.  Quinn Emanuel attorneys also coordinated with the Committee's financial professionals in their review of Barclays' documents.

59.    Quinn Emanuel attorneys then prepared for and attended numerous depositions in conjunction with its ongoing investigation of the Sale Transaction.  Quinn Emanuel attorneys spent a substantial amount of time analyzing the various depositions and documents.  In order to prepare for the depositions, Quinn Emanuel attorneys reviewed relevant documents produced in connection with the Barclays 2004 Motion for each deposition.

60.    The Committee ultimately requested relief from the Sale Order.   During the Fee Period, Quinn Emanuel attorneys dedicated an extensive amount of time to researching various issues surrounding the Sale Transaction and to drafting a motion for relief from the Sale Order under Rule 60(b).  On  September 15, 2009 Quinn Emanuel filed the Rule 60(b) Motion ("Committee's Rule 60(b) Motion"), seeking relief from the Sales Order entered on September 20, 2008.  The Debtors and SIPA Trustee also filed similar motions on the same day.

### O.    Special Litigation  (Hours: 439, Fees: $107,356.00)[6]

61.    On November 26, 2008, Bank of America ("BofA") commenced an adversary proceeding seeking a declaratory judgment ratifying a post-petition offset of approximately $509 million deposited by Lehman Brothers Special Financing Inc. and LBHI in

---

entries with respect to the Barclays litigation.

various BofA accounts against amounts allegedly owed to it under certain derivatives contracts. On January 2, 2009, the Debtors answered BofA's complaint and filed a counter-suit against BofA seeking (a) damages of $501.8 million from BofA and its Cayman Islands affiliates; (b) a declaratory judgment that BofA is legally obligated to return the overdraft deposit account funds to LBHI; (c) the imposition of a constructive trust respecting the overdraft deposit account funds; (d) a ruling that BofA and BofA Cayman violated the automatic stay; and (e) an order that BofA turnover and remit to the Debtors $501.8 million.

62.     The pending litigation with BofA concerns complex and novel issues regarding setoff of funds in a special purpose account.  Given the importance of the issues raised in the BofA proceeding and the size of the estate funds at issue, the Committee intervened and since has been involved in all aspects of the pending proceeding.  During the Fee Period, Quinn Emanuel attorneys participated in an extensive and protracted discovery process.  Quinn Emanuel attorneys reviewed the document productions from each of BofA and the Debtors, analyzed the potential claims and defenses based on the review of the documents produced, and attended numerous depositions scheduled by both parties.  Quinn Emanuel continues to participate in this litigation on behalf of the Committee.

63.     Throughout the Fee Period, Quinn Emanuel attorneys drafted memoranda to summarize the depositions of various key deponents.  In addition, Quinn Emanuel attorneys prepared for and attended the remaining depositions of potential trial witnesses.  The parties to the litigation also submitted expert reports,  which Quinn Emanuel attorneys extensively reviewed and analyzed.

---

6     In August 2009, Quinn Emanuel attorneys opened a separate billing category to cover the time entries with respect to the BofA litigation.

64.    During this Fee Period, Quinn Emanuel attorneys also spent a considerable amount of time drafting, researching and revising a memorandum in support of LBHI's motion for summary judgment.  The memorandum was filed under seal on September 14, 2009.  On the same day, BofA filed a motion for summary judgment completely under seal.  Thereafter, Quinn Emanuel attorneys spent time reviewing BofA's motion, for summary judgment and then began researching and drafting a response to BofA's motion which was eventually filed in October 2009.

## VI.    <u>ALLOWANCE OF COMPENSATION</u>

65.    The factors to be considered in awarding attorneys fees as enumerated in <u>In re First Colonial Corp. of America</u>, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts, including the Bankruptcy Court for the Southern District of New York.  <u>See, e.g.</u>, <u>In re Drexel Burnham Lambert Group, Inc.</u>, 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y. 1991).  Indeed, a majority of the <u>First Colonial</u> factors are now codified in section 330(a)(3).  <u>See, e.g.</u>, 3 L. King, <u>et al.</u>, Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

66.    Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

67.     The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."). Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

**A.      The Time and Labor Required**

68.     The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays. The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch. During the Compensation Period, approximately 4,786.7 recorded hours were expended by Quinn Emanuel's partners, associates, and legal assistants in providing the requested professional services. Quinn Emanuel's

hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly

charges its hourly clients.

#### B.        The Necessity of The Services and Benefit to the Estate

69.        These Chapter 11 Cases are generally regarded as among the most complex

and active bankruptcy cases ever filed.  Indeed, many of the complex issues regarding the

Debtors' financial contracts are issues of first impression, with far reaching ramifications.  As

detailed above, the services Quinn Emanuel provided to the Committee were necessary to

preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the

Debtors' unsecured creditors.  Quinn Emanuel's services have furthered and will continue to

further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will

continue to maximize estate value.

#### C.        The Novelty and Difficulty of Issues Presented in the Cases

70.        Novel and complex issues have arisen in the course of the Chapter 11

Cases, and it can be anticipated that other such issues will be encountered. In these cases, as in

many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative

approach to problem solving have helped clarify and resolve difficult issues and will continue to

prove beneficial.

#### D.        The Experience, Reputation and Ability of the Attorneys

71.        Quinn Emanuel has extensive experience in the areas of insolvency,

workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee

have been rendered in a highly efficient manner by attorneys who have achieved a high degree of

expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have

represented the Committee have ensured that these cases have been administered in the most

efficient and expeditious manner.

## VII.    **DISBURSEMENTS**

72.    Quinn Emanuel has incurred a total of $144,241.20 in expenses in

connection with representing the Committee during the Third Interim Compensation Period.

Quinn Emanuel records all expenses incurred in connection with the performance of professional

services.  A summary of these expenses and detailed descriptions of these expenses, is annexed

hereto as Exhibit E.

73.    In connection with the reimbursement of expenses, Quinn Emanuel's policy

is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead

expenses, incurred in connection with representing its clients.  The expenses charged to Quinn

Emanuel's clients include, among other things, telephone and telecopy toll and other charges, mail

and express mail charges, special or hand delivery charges, photocopying charges, out-of-town

travel expenses, local transportation expenses, expenses for working meals, computerized

research and transcription costs.

74.    Quinn Emanuel charges the Committee for these expenses at rates

consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal

to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients. Quinn Emanuel

seeks reimbursement from the Debtors at the following rates for the following expenses: (a)

currently a fifteen cents ($0.15)[7] per page for photocopying; (b) no charge for incoming

facsimiles; and (c) toll charges only for outgoing facsimiles.  In accordance with section 330 of

---

[7]    Beginning on July 1, 2009, Quinn Emanuel's cost for printing and photocopying
increased from $0.10 per page to $0.15 per page.

the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel

seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.[8]

75.    In providing or obtaining from third parties services which are

reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs

of investment, equipment or capital outlay.

76.    Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary

business hourly fees and expenses for secretarial, library, word processing and other staff services

because such items are not included in the firm's overhead for the purpose of setting the billing

rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this

Application and will not seek reimbursement from the Debtors of such expenses in future

applications. Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until

such time as an order is entered regarding its final fee application.

77.    Attorneys at Quinn Emanuel have not incurred expenses for luxury

accommodations or deluxe meals.  The Application does not seek reimbursement of air travel

expenses in excess of coach fares.  Throughout the Third Interim Compensation Period, Quinn

Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses

charged to the Debtors' estates.

---

[8]    During a routine review of expenses, it became apparent to Quinn Emanuel that certain IT
related charges had not been reduced to cost.  Upon discovery, Quinn Emanuel took the
necessary steps to prevent this inadvertent mistake from happening again.  Quinn Emanuel
also issued a credit, in the amount of $2,623.17, relating to these IT expenses (to ensure they
were billed at cost) and deducted that amount from the August 2009 Fee Statement.  It also
advised the estates of that mistake by letter dated September 28, 2009.

## VIII.  <u>NOTICE</u>

78.    Notice of this Application, as set forth in the Interim Compensation Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors and (e) the chairperson of the fee committee.

# IX.    <u>CONCLUSION</u>

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Third Interim Compensation Period in the amount of $2,248,453.00 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $144,241.20, for a total award of $2,392,694.20; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Third Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  December 14, 2009
        New York, New York

**QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP**

By:    s/James C. Tecce
        James C. Tecce

Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone No.:  (212) 849-7000
Facsimile No.:  (212) 849-7100

*Special Counsel to Official Committee Of
Unsecured Creditors Of Lehman Brothers
Holdings Inc., et al.*