WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                : 
**In re**                                       :    **Chapter 11 Case No.**
                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
                                                :
                        **Debtors.**            :    **(Jointly Administered)**
                                                :
-------------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. §§ 330 AND 331**

**THIRD INTERIM FEE APPLICATION**

Name of Applicant:       **Weil, Gotshal & Manges LLP**

Time Period:             June 1, 2009 through and including September 30, 2009

Role in the Case:        Attorneys for the Debtors and Debtors in Possession

Current Application:     Total Fees Requested:  $45,282,797.75
                         Total Expenses Requested:  $1,332,433.67

Prior Applications:      First Interim Fee Application, filed April 13, 2009 [Docket No. 3343], for the
                         period from September 15, 2008 through and including January 31, 2009
                             Total Fees & Expenses Requested:  $55,140,791.25
                             Total Fees & Expenses Allowed:  $55,140,791.25
                         Second Interim Fee Application, filed August 14, 2009 [Docket No. 4825],
                         for the period from February 1, 2009 through and including May 31, 2009
                             Total Fees & Expenses Requested:  $46,462,615.85
                             Total Fees and Expenses Allowed:  $41,939,832.63
                             Hold Back Pending Recommendation of Fee Committee: $4,522,783.25

## SUMMARY SHEET FOR THE THIRD INTERIM FEE
## APPLICATION OF WEIL, GOTSHAL & MANGES LLP (continued)

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Harvey R. Miller | BFR | 1959 | $950.00 | 233.30 | $221,635.00 |
| Peter Gruenberger | L | 1961 | $950.00 | 663.20 | $630,040.00 |
| Barry Frank | C | 1967 | $810.00 | 132.30 | $107,163.00 |
| Gilbert Friedlander | C | 1968 | $875.00 | 8.10 | $7,087.50 |
| Richard J. Davis | L | 1970 | $900.00 | 20.30 | $18,270.00 |
| Joseph H. Newberg | T | 1972 | $900.00 | 11.10 | $9,990.00 |
| Ralph I. Miller | L | 1972 | $900.00 | 441.80 | $370,530.00 |
| Richard P. Krasnow | BFR | 1972 | $950.00 | 685.10 | $642,532.50 |
| Thomas A. Roberts | C | 1973 | $950.00 | 24.60 | $23,370.00 |
| Howard B. Comet | L | 1976 | $825.00 | 80.20 | $66,165.00 |
| T. R. Guy | L | 1976 | $850.00 | 35.40 | $30,090.00 |
| Francis Teitgen | L | 1977 | $650.00 | 15.30 | $9,945.00 |
| William H. Horton, Jr. | T | 1977 | $825.00 | 22.10 | $18,232.50 |
| Edward Soto | L | 1978 | $875.00 | 545.50 | $477,312.50 |
| Elaine Stangland | C | 1978 | $860.00 | 23.20 | $19,952.00 |
| Marsha E. Simms | C | 1978 | $860.00 | 5.70 | $4,902.00 |
| Richard A. Rothman | L | 1978 | $925.00 | 252.60 | $233,655.00 |
| Rupert J. L. Jones | C | 1978 | $940.00 | 51.00 | $47,940.00 |
| Rupert J. L. Jones | C | 1978 | $885.00 | 25.70 | $22,744.50 |
| David I. Bower | T | 1979 | $790.00 | 21.00 | $16,590.00 |
| Robert L. Messineo | C | 1979 | $925.00 | 130.40 | $120,620.00 |
| Alfredo R. Perez | BFR | 1980 | $900.00 | 88.90 | $80,010.00 |
| Peter D. Isakoff | L | 1980 | $860.00 | 673.60 | $579,296.00 |
| W. M. Bond | C | 1980 | $925.00 | 717.30 | $663,502.50 |
| Mike Francies | C | 1981 | $1,000.00 | 85.10 | $85,100.00 |
| Mindy J. Spector | L | 1981 | $925.00 | 38.80 | $35,890.00 |
| Kimberly S. Blanchard | T | 1982 | $900.00 | 29.70 | $26,730.00 |
| Jacqueline Marcus | BFR | 1983 | $810.00 | 235.90 | $191,079.00 |
| Daniel J. Mette | C | 1984 | $825.00 | 381.20 | $314,490.00 |
| Lawrence J. Baer | L | 1984 | $700.00 | 9.90 | $6,930.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Lori R. Fife | BFR | 1984 | $925.00 | 371.60 | $343,498.75 |
| Richard A. Morrison | C | 1984 | $850.00 | 890.10 | $756,585.00 |
| Richard L. Levine | L | 1984 | $850.00 | 300.50 | $255,425.00 |
| Stuart J. Goldring | T | 1984 | $900.00 | 43.80 | $39,420.00 |
| Conrad G. Bahlke | C | 1985 | $790.00 | 236.50 | $186,835.00 |
| Jonathan D. Polkes | L | 1985 | $950.00 | 286.00 | $271,700.00 |
| Andrew N. Norwood | C | 1986 | $1,000.00 | 380.10 | $379,350.00 |
| Andrew L. Gaines | T | 1987 | $900.00 | 11.70 | $10,530.00 |
| Bruce S. Meyer | L | 1987 | $850.00 | 17.20 | $14,620.00 |
| Michael K. Kam | T | 1987 | $875.00 | 23.30 | $20,387.50 |
| Richard W. Slack | L | 1987 | $850.00 | 428.30 | $364,055.00 |
| Annemargaret Connolly | C | 1988 | $790.00 | 94.10 | $74,339.00 |
| Jeffrey B. Hitt | C | 1988 | $810.00 | 46.60 | $37,746.00 |
| Kenneth E. Schiff | C | 1988 | $1,000.00 | 159.70 | $159,700.00 |
| Kenneth E. Schiff | C | 1988 | $970.00 | 75.90 | $73,623.00 |
| Larry J. Gelbfish | T | 1988 | $850.00 | 42.50 | $36,125.00 |
| Paul T. Cohn | C | 1988 | $825.00 | 215.40 | $177,705.00 |
| Eric J. Peterman | C | 1989 | $850.00 | 433.80 | $368,305.00 |
| Frank P. Nocco | C | 1989 | $875.00 | 395.20 | $345,800.00 |
| Nellie P. Camerik | C | 1989 | $790.00 | 677.20 | $534,988.00 |
| Vernon S. Broderick | L | 1989 | $740.00 | 116.50 | $86,210.00 |
| Andrew J. Colao | C | 1990 | $790.00 | 37.30 | $29,467.00 |
| Barry Fishley | C | 1990 | $990.00 | 102.50 | $101,475.00 |
| Barry Fishley | C | 1990 | $930.00 | 27.70 | $25,761.00 |
| Douglas R. Urquhart | C | 1990 | $825.00 | 23.70 | $19,552.50 |
| Anthony Horspool | BFR | 1991 | $1,000.00 | 235.40 | $235,400.00 |
| Christopher R. Pace | L | 1991 | $800.00 | 149.90 | $115,320.00 |
| Craig W. Adas | C | 1991 | $825.00 | 95.10 | $78,457.50 |
| Dominic T. McCahill | BFR | 1991 | $1,000.00 | 65.30 | $65,300.00 |
| Elizabeth H. Evans | C | 1991 | $810.00 | 278.80 | $225,828.00 |
| Jacky Kelly | C | 1991 | $1,000.00 | 109.70 | $109,700.00 |
| Juergen Boerst | T | 1991 | $805.00 | 84.30 | $67,861.50 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Juergen Boerst | T | 1991 | $745.00 | 0.80 | $596.00 |
| Michael E. Lubowitz | C | 1991 | $850.00 | 7.50 | $6,375.00 |
| Robert N. Chiperfield | C | 1991 | $850.00 | 487.20 | $414,120.00 |
| Steven K. Ong | C | 1991 | $990.00 | 89.30 | $88,407.00 |
| Steven K. Ong | C | 1991 | $930.00 | 16.80 | $15,624.00 |
| Tobias Geerling | T | 1991 | $890.00 | 2.00 | $1,780.00 |
| Tobias Geerling | T | 1991 | $805.00 | 7.80 | $6,279.00 |
| Rodney D. Miller | C | 1993 | $810.00 | 103.10 | $83,511.00 |
| Beatriz Azcuy-Diaz | C | 1994 | $725.00 | 424.80 | $307,980.00 |
| James Cole | C | 1994 | $1,000.00 | 1.00 | $1,000.00 |
| James Cole | C | 1994 | $970.00 | 5.10 | $4,947.00 |
| John J. Dedyo | C | 1994 | $850.00 | 18.90 | $16,065.00 |
| Emmanuelle Henry | C | 1995 | $910.00 | 41.00 | $37,310.00 |
| Holly E. Loiseau | L | 1995 | $725.00 | 261.30 | $189,442.50 |
| Peter Van Keulen | L | 1995 | $940.00 | 58.90 | $55,366.00 |
| Peter Van Keulen | L | 1995 | $885.00 | 36.40 | $32,214.00 |
| Uwe Hartmann | C | 1995 | $805.00 | 105.90 | $85,249.50 |
| Uwe Hartmann | C | 1995 | $745.00 | 16.80 | $12,516.00 |
| Y. S. Grossman | C | 1995 | $790.00 | 444.90 | $351,471.00 |
| Jeffrey D. Osterman | C | 1996 | $790.00 | 282.00 | $222,780.00 |
| Anthony J. Albanese | L | 1997 | $760.00 | 207.20 | $157,472.00 |
| Fiona A. Schaeffer | L | 1997 | $790.00 | 28.10 | $19,829.00 |
| Jane E. McDonald | C | 1997 | $900.00 | 346.20 | $311,580.00 |
| Matthew Shankland | L | 1997 | $1,000.00 | 363.70 | $363,700.00 |
| Robert Frastai | T | 1997 | $740.00 | 218.90 | $161,986.00 |
| Shai Y. Waisman | BFR | 1997 | $775.00 | 435.30 | $337,357.50 |
| Britta Grauke | L | 1998 | $805.00 | 6.40 | $5,152.00 |
| Britta Grauke | L | 1998 | $745.00 | 3.90 | $2,905.50 |
| David R. Fertig | L | 1998 | $725.00 | 363.90 | $263,827.50 |
| Heather L. Emmel | C | 1998 | $650.00 | 18.30 | $11,895.00 |
| Scott M. Sontag | T | 1998 | $725.00 | 56.40 | $40,890.00 |
| Arnold Buessemaker | C | 1999 | $815.00 | 132.60 | $108,069.00 |

---

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Arnold Buessemaker | C | 1999 | $735.00 | 360.70 | $265,114.50 |
| Nancy E. Lynch | C | 1999 | $650.00 | 611.40 | $397,410.00 |
| Randi W. Singer | L | 1999 | $725.00 | 146.50 | $106,212.50 |
| Ardith Bronson | L | 2000 | $650.00 | 386.40 | $251,160.00 |
| Danielle D. Do | C | 2000 | $725.00 | 23.70 | $17,182.50 |
| David P. Murgio | C | 2000 | $650.00 | 164.00 | $106,600.00 |
| Robert J. Lemons | BFR | 2001 | $725.00 | 384.20 | $278,545.00 |
| Stanley Ramsay | T | 2001 | $700.00 | 5.30 | $3,710.00 |
| William A. Burck | L | 2001 | $700.00 | 75.80 | $52,185.00 |
| **Total Partners and Of Counsel** | | | | **18,894.40** | **$15,888,679.75** |

---

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  \* – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christine Howard | L | 1975 | $660.00 | 26.30 | $17,358.00 |
| Christine Howard | L | 1975 | $595.00 | 43.90 | $26,120.50 |
| Christine Howard | L | 1975 | $560.00 | 9.00 | $5,040.00 |
| Carole K. Ganguzza | C | 1982 | $640.00 | 230.60 | $147,584.00 |
| Lynn Bodkin | C | 1984 | $640.00 | 182.00 | $116,480.00 |
| Richard I. Ellenbogen | C | 1985 | $590.00 | 13.20 | $7,788.00 |
| Alan R. Kusinitz | L | 1986 | $640.00 | 59.10 | $37,824.00 |
| Sally Willcock | L | 1989 | $825.00 | 2.00 | $1,650.00 |
| Sally Willcock | L | 1989 | $775.00 | 27.00 | $20,925.00 |
| John Butenas | C | 1991 | $600.00 | 317.40 | $190,440.00 |
| Barbara Baker | C | 1992 | $660.00 | 0.60 | $396.00 |
| Barbara Baker | C | 1992 | $595.00 | 58.60 | $34,867.00 |
| Barbara Baker | C | 1992 | $560.00 | 9.50 | $5,320.00 |
| Ariel Kronman | C | 1993 | $650.00 | 393.50 | $255,287.50 |
| Ariel Kronman | C | 1993 | $540.00 | 164.30 | $88,722.00 |
| Joel Catherin | L | 1995 | $585.00 | 7.50 | $4,387.50 |
| Leslie S. Smith | C | 1995 | $640.00 | 17.50 | $11,200.00 |
| Elizabeth A. Martialay | C | 1996 | $580.00 | 135.50 | $78,590.00 |
| Meredith Parenti | L | 1996 | $640.00 | 649.50 | $410,816.00 |
| Scarlett E. Collings | L | 1997 | $640.00 | 779.30 | $488,192.00 |
| JoLee Adamich | C | 1998 | $580.00 | 27.70 | $16,066.00 |
| Konstantin Hoppe | C | 1998 | $620.00 | 95.70 | $59,334.00 |
| Konstantin Hoppe | C | 1998 | $560.00 | 202.40 | $113,344.00 |
| Melanie P. Sarwal | L | 1998 | $640.00 | 196.90 | $126,016.00 |
| Eugene J. Ng | C | 1999 | $580.00 | 515.00 | $298,700.00 |
| Melissa Meyrowitz | C | 1999 | $640.00 | 92.70 | $59,328.00 |
| Christy K. Farr | BFR | 2000 | $865.00 | 182.90 | $158,208.50 |
| Christy K. Farr | BFR | 2000 | $815.00 | 102.60 | $83,619.00 |
| Deepak Reddy | C | 2000 | $640.00 | 314.90 | $201,536.00 |
| Elisa R. Lemmer | BFR | 2000 | $640.00 | 289.20 | $185,088.00 |
| Konrad V. Buchwaldt | C | 2000 | $525.00 | 41.30 | $21,682.50 |
| Konrad V. Buchwaldt | C | 2000 | $485.00 | 7.70 | $3,734.50 |

---

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  \* – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Oleksandr Shulzhenko | C | 2000 | $640.00 | 93.30 | $59,712.00 |
| Astrid N. Sandberg | L | 2001 | $715.00 | 20.40 | $14,586.00 |
| Astrid N. Sandberg | L | 2001 | $660.00 | 22.20 | $14,652.00 |
| David Herman | C | 2001 | $640.00 | 383.70 | $245,568.00 |
| Elliot Ganchrow | C | 2001 | $640.00 | 108.10 | $69,184.00 |
| Jean-Christophe David | C | 2001 | $700.00 | 130.20 | $91,140.00 |
| Jean-Christophe David | C | 2001 | $650.00 | 44.00 | $28,600.00 |
| Margarita Platkov | L | 2001 | $580.00 | 210.40 | $122,032.00 |
| Matthew L. Mustokoff | L | 2001 | $640.00 | 89.70 | $57,408.00 |
| Randell J. Gartin | T | 2001 | $580.00 | 89.00 | $51,620.00 |
| Ron Ben-Menachem | C | 2001 | $540.00 | 98.10 | $52,974.00 |
| Stuart Morrissy | C | 2001 | $640.00 | 15.70 | $10,048.00 |
| Airi Hammalov | C | 2002 | $500.00 | 144.70 | $72,350.00 |
| Arlene A. Hahn | C | 2002 | $640.00 | 131.40 | $84,096.00 |
| Arman Kuyumjian | C | 2002 | $580.00 | 490.90 | $284,722.00 |
| Brandye L. Brown | C | 2002 | $610.00 | 181.90 | $110,959.00 |
| Charles J. Maples | L | 2002 | $825.00 | 12.40 | $10,230.00 |
| Charles J. Maples | L | 2002 | $765.00 | 71.80 | $54,927.00 |
| Eleanor H. Gilbane | L | 2002 | $630.00 | 449.60 | $275,971.50 |
| James E. Sanborn | L | 2002 | $610.00 | 252.60 | $154,086.00 |
| Jay H. Park Jr. | C | 2002 | $500.00 | 268.90 | $134,450.00 |
| John T. Goldman | C | 2002 | $630.00 | 72.50 | $45,675.00 |
| Keith L. Cooper | T | 2002 | $610.00 | 10.80 | $6,588.00 |
| Lianne Craig | L | 2002 | $825.00 | 313.70 | $258,802.50 |
| Lianne Craig | L | 2002 | $775.00 | 147.60 | $114,390.00 |
| Matthew M. Newby | C | 2002 | $610.00 | 77.10 | $47,031.00 |
| Paullette C. Deruelle | L | 2002 | $630.00 | 379.20 | $238,896.00 |
| Philipp Gantenberg | C | 2002 | $425.00 | 19.80 | $8,415.00 |
| Philipp Gantenberg | C | 2002 | $385.00 | 18.80 | $7,238.00 |
| Ryan P. Gallagher | C | 2002 | $610.00 | 6.00 | $3,660.00 |
| Tracy L. McCreight | L | 2002 | $610.00 | 97.50 | $59,475.00 |
| Yehudah L. Buchweitz | L | 2002 | $610.00 | 64.50 | $39,345.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Björn Krausgrill | T | 2003 | $420.00 | 7.30 | $3,066.00 |
| Christian Eggert | C | 2003 | $420.00 | 35.70 | $14,994.00 |
| Christian Eggert | C | 2003 | $390.00 | 3.50 | $1,365.00 |
| Daniel B. Martin | BFR | 2003 | $825.00 | 2.50 | $2,062.50 |
| Daniel B. Martin | BFR | 2003 | $775.00 | 8.10 | $6,277.50 |
| Denise Alvarez | L | 2003 | $610.00 | 804.00 | $490,440.00 |
| Edward McCarthy | L | 2003 | $580.00 | 267.00 | $154,860.00 |
| Edward N. Jackson | C | 2003 | $765.00 | 23.50 | $17,977.50 |
| Edward N. Jackson | C | 2003 | $720.00 | 30.70 | $22,104.00 |
| Julia S. Williams | C | 2003 | $580.00 | 382.00 | $221,560.00 |
| Julie T. Friedman | BFR | 2003 | $500.00 | 352.00 | $176,000.00 |
| Justin G. Mapes | C | 2003 | $580.00 | 6.40 | $3,712.00 |
| Lei Yu | C | 2003 | $620.00 | 13.30 | $8,246.00 |
| Lori M. Schiffer | C | 2003 | $610.00 | 73.30 | $44,713.00 |
| Marisa L. Ferraro | C | 2003 | $610.00 | 130.90 | $79,849.00 |
| Pia A. Deshpande | C | 2003 | $765.00 | 30.50 | $23,332.50 |
| Pia A. Deshpande | C | 2003 | $715.00 | 162.50 | $116,187.50 |
| Pia A. Deshpande | C | 2003 | $675.00 | 58.50 | $39,487.50 |
| Rima J. Oken | L | 2003 | $610.00 | 31.00 | $18,910.00 |
| Virginia H. Johnson | L | 2003 | $610.00 | 37.50 | $22,875.00 |
| Alcira Moncada | L | 2004 | $250.00 | 145.30 | $36,325.00 |
| Allen S. Blaustein | L | 2004 | $540.00 | 711.50 | $384,210.00 |
| Aparna Ravi | C | 2004 | $825.00 | 6.80 | $5,610.00 |
| Caroline Hickey Zalka | L | 2004 | $500.00 | 500.50 | $249,300.00 |
| Christian Timm Neugebauer | L | 2004 | $420.00 | 1.80 | $756.00 |
| Christian Timm Neugebauer | L | 2004 | $390.00 | 11.70 | $4,563.00 |
| Dion D. Messer | L | 2004 | $580.00 | 17.00 | $9,860.00 |
| Garrett Fail | BFR | 2004 | $580.00 | 933.10 | $540,299.00 |
| Hannah L. Field | L | 2004 | $765.00 | 36.20 | $27,693.00 |
| Hannah L. Field | L | 2004 | $715.00 | 103.20 | $73,788.00 |
| Hannah L. Field | L | 2004 | $675.00 | 18.40 | $12,420.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Heather R. Solow | L | 2004 | $580.00 | 127.90 | $74,182.00 |
| Hendrik Boss | C | 2004 | $465.00 | 83.80 | $38,967.00 |
| Hendrik Boss | C | 2004 | $420.00 | 83.10 | $34,902.00 |
| J. Friedrich Isenbart | C | 2004 | $385.00 | 26.30 | $10,125.50 |
| Jennifer M. Wolff | T | 2004 | $540.00 | 11.50 | $6,210.00 |
| Jordan K. Kolar | T | 2004 | $580.00 | 178.60 | $103,588.00 |
| Kristina L. Coffee | T | 2004 | $465.00 | 33.10 | $15,391.50 |
| Laurinda H. Martins | C | 2004 | $540.00 | 54.10 | $29,214.00 |
| Leah W. Turner | L | 2004 | $540.00 | 172.40 | $93,096.00 |
| Maya M. Grant | C | 2004 | $565.00 | 158.90 | $89,778.50 |
| Michael Firestone | L | 2004 | $580.00 | 191.80 | $111,244.00 |
| Michelle F. Herman | C | 2004 | $580.00 | 112.90 | $65,482.00 |
| Mirella B. Hart | C | 2004 | $825.00 | 106.80 | $88,110.00 |
| Mirella B. Hart | C | 2004 | $765.00 | 238.60 | $182,146.50 |
| Mirella B. Hart | C | 2004 | $720.00 | 118.60 | $85,392.00 |
| Natalie C. Maksin | T | 2004 | $580.00 | 38.00 | $22,040.00 |
| Oliver D. Walker | T | 2004 | $765.00 | 8.30 | $6,349.50 |
| Oliver D. Walker | T | 2004 | $715.00 | 7.80 | $5,577.00 |
| Robert C. Shmalo | C | 2004 | $580.00 | 496.30 | $287,854.00 |
| Robert S. Velevis | L | 2004 | $540.00 | 564.70 | $302,373.00 |
| Scott T. Arakawa | C | 2004 | $500.00 | 7.30 | $3,650.00 |
| Amber D. Taylor | L | 2005 | $500.00 | 377.80 | $188,900.00 |
| Anwar Imam | L | 2005 | $500.00 | 137.00 | $68,500.00 |
| Blandine Davies | BFR | 2005 | $715.00 | 356.00 | $253,646.25 |
| Blandine Davies | BFR | 2005 | $675.00 | 153.40 | $103,207.50 |
| Brittany R. Perez | C | 2005 | $500.00 | 104.40 | $52,200.00 |
| Bronwen R. Pyle | C | 2005 | $465.00 | 51.20 | $23,808.00 |
| Daniel J. Venditti | L | 2005 | $540.00 | 14.90 | $8,046.00 |
| Elodie Fabre | BFR | 2005 | $595.00 | 3.90 | $2,320.50 |
| Elodie Fabre | BFR | 2005 | $550.00 | 4.00 | $2,200.00 |
| Gemma Bullmore | L | 2005 | $715.00 | 96.30 | $68,854.50 |
| Gemma Bullmore | L | 2005 | $660.00 | 246.50 | $162,690.00 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Gemma Bullmore | L | 2005 | $620.00 | 162.50 | $100,750.00 |
| Hyun K. Kim | C | 2005 | $540.00 | 444.50 | $240,030.00 |
| Ilomai Kurrik | C | 2005 | $610.00 | 289.10 | $176,351.00 |
| Jeffrey C. Angerman | C | 2005 | $500.00 | 145.30 | $72,650.00 |
| John W. Lucas | BFR | 2005 | $500.00 | 352.10 | $176,050.00 |
| Kamran A. Khan | L | 2005 | $250.00 | 11.40 | $2,850.00 |
| Katy Byatt | C | 2005 | $715.00 | 2.10 | $1,501.50 |
| Katy Byatt | C | 2005 | $660.00 | 22.20 | $14,652.00 |
| Katy Byatt | C | 2005 | $620.00 | 7.10 | $4,402.00 |
| Kevin F. Meade | L | 2005 | $540.00 | 286.40 | $151,821.00 |
| Kirsten A. Noethen | C | 2005 | $540.00 | 309.10 | $165,213.00 |
| Mark I. Bernstein | BFR | 2005 | $540.00 | 594.20 | $320,868.00 |
| Monty A. Ward | C | 2005 | $500.00 | 37.80 | $18,900.00 |
| Pejman Razavilar | C | 2005 | $580.00 | 566.60 | $328,628.00 |
| Peter Godhard | C | 2005 | $465.00 | 47.90 | $22,273.50 |
| Rastko Vrbaski | T | 2005 | $390.00 | 12.50 | $4,875.00 |
| Robert C. Roesch | L | 2005 | $500.00 | 485.50 | $232,225.00 |
| Robert T. Polemeni | L | 2005 | $540.00 | 240.20 | $129,708.00 |
| Romy Richter | C | 2005 | $525.00 | 41.90 | $21,997.50 |
| Samuel J. Comer | C | 2005 | $540.00 | 855.40 | $461,916.00 |
| Sean White | C | 2005 | $715.00 | 13.00 | $9,295.00 |
| Sean White | C | 2005 | $660.00 | 23.40 | $15,444.00 |
| Sean White | C | 2005 | $620.00 | 4.60 | $2,852.00 |
| Thomas S. Hetherington | C | 2005 | $765.00 | 68.40 | $52,326.00 |
| Thomas S. Hetherington | C | 2005 | $715.00 | 102.40 | $73,216.00 |
| Thomas S. Hetherington | C | 2005 | $675.00 | 139.30 | $94,027.50 |
| Alexander Levine | L | 2006 | $500.00 | 227.90 | $113,950.00 |
| Anne-Sophie Noury | BFR | 2006 | $525.00 | 5.50 | $2,887.50 |
| Anne-Sophie Noury | BFR | 2006 | $485.00 | 11.60 | $5,626.00 |
| Benay H. Lizarazu | C | 2006 | $640.00 | 298.20 | $190,848.00 |
| Brett S. Thorstad | C | 2006 | $465.00 | 12.60 | $5,859.00 |
| Brian Compagna | L | 2006 | $465.00 | 261.20 | $121,458.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Brian P. Maher | C | 2006 | $660.00 | 5.90 | $3,894.00 |
| Brian P. Maher | C | 2006 | $595.00 | 72.80 | $43,316.00 |
| Brian P. Maher | C | 2006 | $560.00 | 51.90 | $29,064.00 |
| Bryant S. York | L | 2006 | $500.00 | 256.80 | $128,400.00 |
| Christopher R. Machera | C | 2006 | $500.00 | 438.30 | $219,150.00 |
| Daniel Koob | C | 2006 | $465.00 | 108.70 | $50,545.50 |
| Danitra T. Spencer | L | 2006 | $540.00 | 495.50 | $267,570.00 |
| Edward K. Gray | C | 2006 | $465.00 | 64.20 | $29,853.00 |
| Elizabeth Alibhai | C | 2006 | $595.00 | 61.70 | $36,711.50 |
| Elizabeth Alibhai | C | 2006 | $560.00 | 19.30 | $10,808.00 |
| Emily L. Gold | C | 2006 | $500.00 | 335.60 | $167,800.00 |
| Georgia Magno | L | 2006 | $540.00 | 395.00 | $210,951.00 |
| Haskell Murray | L | 2006 | $465.00 | 7.30 | $3,394.50 |
| Hillary G. Chapman | L | 2006 | $465.00 | 51.00 | $23,715.00 |
| Jaime S. Kaplan | L | 2006 | $500.00 | 158.30 | $79,150.00 |
| Lauren Hoelzer | L | 2006 | $465.00 | 193.00 | $89,117.25 |
| Mark Schwed | T | 2006 | $540.00 | 53.60 | $28,944.00 |
| Naomi Munz | C | 2006 | $630.00 | 41.20 | $25,956.00 |
| Steven Seltzer | C | 2006 | $465.00 | 156.20 | $72,633.00 |
| Su-Yeon Cho | C | 2006 | $540.00 | 72.90 | $39,366.00 |
| Timothy J. Nestler | C | 2006 | $465.00 | 160.50 | $74,632.50 |
| Tomasz Kulawik | C | 2006 | $355.00 | 332.10 | $117,895.50 |
| Zhiqing Hu | L | 2006 | $595.00 | 56.60 | $33,677.00 |
| Zhiqing Hu | L | 2006 | $560.00 | 145.50 | $81,480.00 |
| Aabha Sharma | C | 2007 | $465.00 | 66.60 | $30,969.00 |
| Aida P. Santillan | T | 2007 | $500.00 | 44.30 | $22,150.00 |
| Alexandra Lehson | C | 2007 | $415.00 | 231.40 | $96,031.00 |
| Alfredo Perez de Alejo | L | 2007 | $465.00 | 18.80 | $8,742.00 |
| Alicia L. Speake | C | 2007 | $595.00 | 50.40 | $29,988.00 |
| Alicia L. Speake | C | 2007 | $530.00 | 41.40 | $21,942.00 |
| Alicia L. Speake | C | 2007 | $495.00 | 14.00 | $6,930.00 |
| Amanjit Arora | BFR | 2007 | $465.00 | 639.50 | $297,321.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Andrew R. Fox | L | 2007 | $595.00 | 127.30 | $75,743.50 |
| Andrew R. Fox | L | 2007 | $530.00 | 158.20 | $83,846.00 |
| Andrew R. Fox | L | 2007 | $495.00 | 37.80 | $18,711.00 |
| Brant D. Kuehn | L | 2007 | $465.00 | 78.40 | $36,456.00 |
| Cassie Waduge | C | 2007 | $415.00 | 171.40 | $71,131.00 |
| Christine Doktor | L | 2007 | $415.00 | 517.80 | $214,887.00 |
| Diana H. Widjaya | L | 2007 | $465.00 | 88.80 | $41,292.00 |
| Diem Tran | L | 2007 | $465.00 | 88.20 | $41,013.00 |
| Eberhard Koch | L | 2007 | $350.00 | 62.10 | $21,735.00 |
| Eberhard Koch | L | 2007 | $325.00 | 5.90 | $1,917.50 |
| Elisa Jaclyn | L | 2007 | $465.00 | 192.20 | $89,373.00 |
| Elizabeth Bosshard-Blackey | L | 2007 | $415.00 | 45.00 | $18,675.00 |
| Evert J. Christensen | L | 2007 | $415.00 | 103.00 | $42,745.00 |
| Jackson P. Wagener | L | 2007 | $500.00 | 57.70 | $28,850.00 |
| Jennifer A. Seymour | C | 2007 | $415.00 | 18.80 | $7,802.00 |
| Jessica Ryan | C | 2007 | $465.00 | 30.10 | $13,996.50 |
| Jie Yuan | C | 2007 | $465.00 | 264.10 | $122,806.50 |
| John T. O'Connor | L | 2007 | $415.00 | 193.10 | $80,136.50 |
| Joshua Pohl | T | 2007 | $465.00 | 33.90 | $15,763.50 |
| Justin Wagner | L | 2007 | $465.00 | 48.60 | $22,599.00 |
| Kerianne Crooker | C | 2007 | $500.00 | 7.10 | $3,550.00 |
| Manesh J. Shah | BFR | 2007 | $465.00 | 11.90 | $5,533.50 |
| Marc B. Rosen | C | 2007 | $465.00 | 502.70 | $233,755.50 |
| Marc Weinroth | L | 2007 | $415.00 | 42.90 | $17,803.50 |
| Mark B. Rosen | L | 2007 | $415.00 | 68.20 | $28,303.00 |
| Monica J. Jeong | C | 2007 | $465.00 | 132.50 | $61,612.50 |
| Oliver DeGeest | C | 2007 | $465.00 | 146.60 | $68,169.00 |
| Rachel Xuereb | C | 2007 | $595.00 | 4.50 | $2,677.50 |
| Rachel Xuereb | C | 2007 | $530.00 | 6.10 | $3,233.00 |
| Rachel Xuereb | C | 2007 | $495.00 | 8.70 | $4,306.50 |
| Richard O'Donoghue | L | 2007 | $465.00 | 186.20 | $86,583.00 |

---

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  \* – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Ritu Pancholy | L | 2007 | $465.00 | 69.80 | $32,457.00 |
| Sarah E. Moore | L | 2007 | $465.00 | 94.60 | $43,989.00 |
| Sue T. Chen-Holmes | C | 2007 | $465.00 | 59.40 | $27,621.00 |
| Sunny Singh | BFR | 2007 | $465.00 | 972.80 | $450,840.75 |
| Teresa Brady | L | 2007 | $465.00 | 389.70 | $181,210.50 |
| Alexander J. Swartz | C | 2008 | $465.00 | 104.90 | $48,778.50 |
| Amanda M. Hendy | BFR | 2008 | $355.00 | 823.70 | $291,898.75 |
| Audrey K. Susanin | C | 2008 | $415.00 | 91.60 | $38,014.00 |
| Brennan Hackett | BFR | 2008 | $415.00 | 841.80 | $349,347.00 |
| Charles Herschel | C | 2008 | $415.00 | 187.40 | $77,771.00 |
| Eleanore Hickman | C | 2008 | $470.00 | 5.90 | $2,773.00 |
| Elizabeth R. Todd | C | 2008 | $530.00 | 1.00 | $530.00 |
| Elizabeth R. Todd | C | 2008 | $470.00 | 16.90 | $7,943.00 |
| Elizabeth R. Todd | C | 2008 | $440.00 | 17.20 | $7,568.00 |
| Farbod Solaimani | T | 2008 | $415.00 | 22.60 | $9,379.00 |
| Fiona Twigg | C | 2008 | $470.00 | 10.00 | $4,700.00 |
| Georgia P. Quinn | C | 2008 | $415.00 | 39.90 | $16,558.50 |
| Irini Kalamakis | C | 2008 | $415.00 | 131.40 | $54,531.00 |
| Jakub Biernacki | C | 2008 | $415.00 | 107.20 | $44,488.00 |
| Jennifer D. Larson | L | 2008 | $355.00 | 942.50 | $334,587.50 |
| Jennifer Sloan | C | 2008 | $465.00 | 36.10 | $16,786.50 |
| Jessica Cunningham | C | 2008 | $415.00 | 22.80 | $9,462.00 |
| Jessica F. Townsend | L | 2008 | $355.00 | 38.80 | $13,774.00 |
| John A. Goldfinch | C | 2008 | $660.00 | 46.80 | $30,888.00 |
| John A. Goldfinch | C | 2008 | $595.00 | 121.10 | $72,054.50 |
| John A. Goldfinch | C | 2008 | $560.00 | 97.70 | $54,712.00 |
| Joseph Abadi | C | 2008 | $415.00 | 423.70 | $175,835.50 |
| Joshua E. Peck | C | 2008 | $415.00 | 235.90 | $97,898.50 |
| June K. Lee | L | 2008 | $415.00 | 396.40 | $164,506.00 |
| Kate McGovern | L | 2008 | $250.00 | 154.90 | $38,725.00 |
| Kathleen E. Clark | C | 2008 | $415.00 | 93.30 | $38,553.50 |
| Kathryn M. Zunno | L | 2008 | $465.00 | 80.00 | $37,037.25 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Kimberleigh Scott | C | 2008 | $530.00 | 16.10 | $8,533.00 |
| Kimberleigh Scott | C | 2008 | $470.00 | 86.20 | $40,514.00 |
| Kimberleigh Scott | C | 2008 | $440.00 | 17.80 | $7,832.00 |
| Kristen L. Depowski | C | 2008 | $355.00 | 246.40 | $87,472.00 |
| Lauren L. Zerbinopoulos | L | 2008 | $355.00 | 311.40 | $110,547.00 |
| Layne Roistacher | L | 2008 | $415.00 | 206.70 | $85,780.50 |
| Lisa N. Cloutier | L | 2008 | $415.00 | 441.90 | $183,388.50 |
| Lorri Anne Carrozza | C | 2008 | $415.00 | 135.60 | $56,274.00 |
| Maria G. Carminati | L | 2008 | $355.00 | 27.90 | $9,904.50 |
| Matthew Eisler | C | 2008 | $415.00 | 21.00 | $8,715.00 |
| Maurice Horwitz | BFR | 2008 | $415.00 | 865.20 | $355,157.00 |
| Mavnick B. Nerwal | T | 2008 | $440.00 | 6.10 | $2,684.00 |
| Meghan A. McCaffrey | L | 2008 | $355.00 | 47.50 | $16,862.50 |
| Michael C. Smith | L | 2008 | $465.00 | 128.30 | $59,403.75 |
| Philip Ratner | C | 2008 | $415.00 | 124.50 | $51,667.50 |
| Qiong Sun | C | 2008 | $465.00 | 129.30 | $60,124.50 |
| Richard A. DeCicca | L | 2008 | $415.00 | 465.20 | $192,892.00 |
| Sinan Kalayoglu | C | 2008 | $415.00 | 176.20 | $73,123.00 |
| Steven B. Stein | C | 2008 | $415.00 | 44.70 | $18,550.50 |
| Sujan H. Trivedi | L | 2008 | $465.00 | 119.70 | $55,660.50 |
| Sunny J. Thompson | L | 2008 | $355.00 | 93.70 | $33,263.50 |
| Susan Fiore | C | 2008 | $415.00 | 364.60 | $151,309.00 |
| Thomas Thorndike | C | 2008 | $415.00 | 71.00 | $29,465.00 |
| Tlalit Packer | T | 2008 | $465.00 | 105.50 | $49,057.50 |
| Vigdis Bronder | C | 2008 | $415.00 | 168.10 | $69,761.50 |
| Xiaofeng S. Da | C | 2008 | $355.00 | 69.60 | $24,708.00 |
| Zillah Whittaker | C | 2008 | $530.00 | 1.90 | $1,007.00 |
| Zillah Whittaker | C | 2008 | $435.00 | 1.20 | $522.00 |
| Zillah Whittaker | C | 2008 | $415.00 | 10.10 | $4,191.50 |
| Adam J. Feit | C | 2009 | $355.00 | 193.30 | $68,621.50 |
| Allen T. Yancy | L | 2009 | $465.00 | 176.60 | $82,119.00 |
| Allison J. Becker | L | 2009 | $355.00 | 124.40 | $44,162.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Andrew Arons | C | 2009 | $355.00 | 71.10 | $25,240.50 |
| Anna Shanley | L | 2009 | $415.00 | 43.80 | $18,177.00 |
| Bin Wang | L | 2009 | $355.00 | 399.70 | $141,893.50 |
| Cassie Kimmelman | C | 2009 | $355.00 | 205.20 | $72,846.00 |
| Christopher M. Neely | L | 2009 | $415.00 | 88.70 | $36,810.50 |
| Christopher T. Luise | L | 2009 | $355.00 | 266.80 | $94,714.00 |
| Consuelo A. Kendall | L | 2009 | $355.00 | 5.00 | $1,775.00 |
| Daniel Bagliebter | C | 2009 | $355.00 | 17.40 | $6,177.00 |
| Daniel S. Klein | L | 2009 | $465.00 | 278.20 | $129,363.00 |
| David J. Schwartz | L | 2009 | $355.00 | 18.60 | $6,603.00 |
| David P. Byeff | L | 2009 | $355.00 | 209.20 | $74,266.00 |
| Dev A. Ghose | C | 2009 | $415.00 | 29.30 | $12,159.50 |
| Eileen Hren | L | 2009 | $355.00 | 263.10 | $93,400.50 |
| Erica Coleman | BFR | 2009 | $355.00 | 175.90 | $62,444.50 |
| Erin Craddock | L | 2009 | $355.00 | 26.10 | $9,265.50 |
| Erin K. Yates | L | 2009 | $355.00 | 13.30 | $4,721.50 |
| Evgeny Zborovsky | C | 2009 | $355.00 | 27.00 | $9,585.00 |
| Jannelle M. Seales | C | 2009 | $415.00 | 285.20 | $118,358.00 |
| Jared Foley | L | 2009 | $355.00 | 262.00 | $93,010.00 |
| Jeffrey R. Friedman | C | 2009 | $415.00 | 208.40 | $86,486.00 |
| Jenna E. Schaeffer | C | 2009 | $355.00 | 331.50 | $117,682.50 |
| Jennifer Cheng | C | 2009 | $415.00 | 22.00 | $9,130.00 |
| Jennifer Sapp | BFR | 2009 | $355.00 | 736.90 | $261,599.50 |
| Mark Glover | C | 2009 | $355.00 | 112.90 | $40,079.50 |
| Matthew Baudler | L | 2009 | $355.00 | 423.70 | $150,413.50 |
| Matthew M. Speiser | C | 2009 | $355.00 | 37.10 | $13,170.50 |
| Matthew M. Spritz | L | 2009 | $355.00 | 125.50 | $44,552.50 |
| Melanie Conroy | L | 2009 | $355.00 | 356.10 | $126,415.50 |
| Michael Bell | L | 2009 | $415.00 | 9.90 | $4,108.50 |
| Nadya Salcedo | L | 2009 | $355.00 | 308.70 | $109,588.50 |
| Noam I. Haberman | C | 2009 | $355.00 | 30.40 | $10,792.00 |
| Patricia Astorga | L | 2009 | $355.00 | 89.40 | $31,737.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| R. Todd Hatcher | T | 2009 | $355.00 | 35.90 | $12,744.50 |
| Rachel B. Sherman | L | 2009 | $355.00 | 25.50 | $9,052.50 |
| Samuel J. Spector | C | 2009 | $355.00 | 49.40 | $17,537.00 |
| Stefan Saerbeck | L | 2009 | $350.00 | 9.20 | $3,220.00 |
| Tashanna B. Pearson | L | 2009 | $355.00 | 26.50 | $9,407.50 |
| Tracy K. Bookspan | C | 2009 | $355.00 | 223.40 | $79,307.00 |
| U-Hyeon Kwon | C | 2009 | $465.00 | 190.10 | $88,396.50 |
| Violetta A. Kokolus | C | 2009 | $500.00 | 113.20 | $56,600.00 |
| J. Zaw Win | BFR | 2009 | $355.00 | 673.50 | $239,092.50 |
| Zohar R. Levy | L | 2009 | $355.00 | 236.10 | $83,815.50 |
| Ajit Gokhale | T | * | $355.00 | 272.00 | $96,560.00 |
| Benjamin H. Yunis | L | * | $415.00 | 21.80 | $9,047.00 |
| Brett A. Bush | C | * | $355.00 | 519.70 | $184,493.50 |
| Chhunny Chhean | L | * | $355.00 | 144.10 | $51,155.50 |
| Damien Wint | L | * | $355.00 | 221.50 | $78,632.50 |
| David A. Cohen | C | * | $355.00 | 185.30 | $65,781.50 |
| Matthew D. Bergman | C | * | $355.00 | 30.90 | $10,969.50 |
| Megan Pendleton | C | * | $355.00 | 70.10 | $24,885.50 |
| Peter J. McRae | C | * | $355.00 | 734.70 | $260,818.50 |
| Rachel Dougnac | C | * | $355.00 | 23.80 | $8,449.00 |
| Savitri A. Deopersaud | L | * | $250.00 | 13.60 | $3,400.00 |
| Stephanie L. Weitzner | L | * | $415.00 | 122.70 | $50,920.50 |
| Tracy T. Mann | L | * | $355.00 | 26.20 | $9,301.00 |
| Young Lee | C | * | $355.00 | 87.70 | $31,133.50 |
| **Total Associates:** | | | | **54,596.20** | **$27,109,694.00** |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk, LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Abeer Garousha | BFR | $280.00 | 329.90 | $92,092.00 |
| Abeer Garousha | BFR | $265.00 | 74.30 | $19,689.50 |
| Alexander Hasek | BFR | $280.00 | 25.10 | $7,028.00 |
| Alexandra J. Winter | C | $295.00 | 14.00 | $4,130.00 |
| Alexandra J. Winter | C | $280.00 | 2.50 | $700.00 |
| Alissa G. Friedman | L | $160.00 | 8.00 | $1,280.00 |
| Allison L. Van Kampen | L | $160.00 | 8.00 | $1,280.00 |
| Amorita Gaucin | LSS | $180.00 | 10.80 | $1,944.00 |
| Andrea Wilmer | BFR | $160.00 | 107.10 | $17,136.00 |
| Andrew Bell | LSS | $190.00 | 28.90 | $5,491.00 |
| Andrew Kim | L | $160.00 | 5.30 | $848.00 |
| Ann M. Scarpa | L | $180.00 | 203.80 | $36,684.00 |
| Artur Robin | LSS | $215.00 | 23.30 | $5,009.50 |
| Barbara Frayle | C | $210.00 | 321.20 | $67,452.00 |
| Beth Akers | L | $210.00 | 22.60 | $4,746.00 |
| Bill K. Chan | C | $180.00 | 48.00 | $8,640.00 |
| Brenda Pancham | X | $100.00 | 5.10 | $510.00 |
| Caitlin M. McGrath | L | $160.00 | 113.40 | $18,144.00 |
| Camille A. George | BFR | $210.00 | 5.50 | $1,155.00 |
| Candace Chung | C | $160.00 | 36.80 | $5,888.00 |
| Catherine Gurney | C | $295.00 | 46.70 | $13,776.50 |
| Catherine Gurney | C | $255.00 | 106.70 | $27,068.25 |
| Catherine Gurney | C | $240.00 | 73.30 | $17,592.00 |
| Cheryl Eng-Bendel | LSS | $235.00 | 85.70 | $20,139.50 |
| Chris Jalomo | BFR | $130.00 | 10.50 | $1,365.00 |
| Christine Joseph | L | $170.00 | 89.50 | $15,215.00 |
| Christine Shrestha | C | $245.00 | 14.00 | $3,430.00 |
| Christopher A. Stauble | BFR | $245.00 | 558.20 | $136,759.00 |
| Christopher Oliver | C | $240.00 | 22.40 | $5,376.00 |
| Crystal McCray | L | $210.00 | 45.10 | $9,471.00 |
| Daniel F. McLaughlin | X | $195.00 | 12.60 | $2,457.00 |
| David Brangam | C | $295.00 | 4.90 | $1,445.50 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| David Brangam | C | $255.00 | 16.50 | $4,207.50 |
| David Brangam | C | $240.00 | 22.20 | $5,328.00 |
| David Elphinstone | C | $295.00 | 14.50 | $4,277.50 |
| David Elphinstone | C | $255.00 | 30.10 | $7,675.50 |
| David Elphinstone | C | $240.00 | 11.80 | $2,832.00 |
| David Litvack | BFR | $225.00 | 18.50 | $4,162.50 |
| Dawil R. Sully | BFR | $95.00 | 11.60 | $1,102.00 |
| Deidra M. Mulligan | X | $140.00 | 6.70 | $938.00 |
| Doe Y. Oh | C | $195.00 | 28.30 | $5,518.50 |
| Donald Etienne | BFR | $160.00 | 163.30 | $24,552.00 |
| Edith Hwang | X | $195.00 | 7.40 | $1,443.00 |
| Elio Bettini | X | $125.00 | 5.90 | $737.50 |
| Elizabeth E. Melson | L | $195.00 | 12.50 | $2,437.50 |
| Elizabeth W. Safran | L | $160.00 | 13.50 | $2,160.00 |
| Ellen Bauche | X | $170.00 | 6.70 | $1,139.00 |
| Ellen Bauche | X | $155.00 | 0.10 | $15.50 |
| Emilie Niu | C | $250.00 | 63.20 | $15,800.00 |
| Emily Wapples | BFR | $255.00 | 8.80 | $2,154.75 |
| Emily Wapples | BFR | $240.00 | 2.40 | $576.00 |
| Erica Rees | C | $255.00 | 25.10 | $6,400.50 |
| Francene S. Castillero | L | $170.00 | 230.30 | $39,151.00 |
| Frances Fredrick | X | $195.00 | 6.70 | $1,306.50 |
| Francheska Marquez | C | $200.00 | 134.30 | $26,860.00 |
| Gareth M. Mandel | L | $170.00 | 306.70 | $52,139.00 |
| Geetinder Gujral | LSS | $215.00 | 95.70 | $20,575.50 |
| Genna D. Grossman | C | $160.00 | 254.50 | $40,720.00 |
| George Scopas | LSS | $215.00 | 32.10 | $6,901.50 |
| Gillad Matiteyahu | BFR | $160.00 | 401.20 | $64,192.00 |
| Halley C. Morrissey | L | $160.00 | 186.50 | $29,840.00 |
| Harish Perkari | C | $170.00 | 28.60 | $4,862.00 |
| Herbert Chan | L | $195.00 | 256.60 | $50,037.00 |
| Hillary A. Axon | L | $160.00 | 324.10 | $51,856.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Inna Rudman | C | $170.00 | 9.30 | $1,581.00 |
| Jae Ko | L | $230.00 | 6.30 | $1,449.00 |
| James Nierinck | C | $255.00 | 54.10 | $13,795.50 |
| Jeffrie Hausman | L | $230.00 | 9.90 | $2,277.00 |
| Jennifer Einersen | L | $170.00 | 100.00 | $17,000.00 |
| Jessica Choi | L | $160.00 | 28.60 | $4,576.00 |
| Jiaan Yin | C | $250.00 | 66.70 | $16,675.00 |
| Jodie A. Turner | BFR | $295.00 | 6.40 | $1,888.00 |
| John A. Ellsworth | C | $230.00 | 211.70 | $48,691.00 |
| Jonathan H. Adler | C | $160.00 | 229.30 | $36,688.00 |
| Jorge A. Romero | LSS | $205.00 | 37.10 | $7,605.50 |
| Jorge Martorell | LSS | $260.00 | 63.00 | $16,380.00 |
| Joyce Du | C | $250.00 | 38.30 | $9,575.00 |
| Julian Chatterton | C | $255.00 | 19.90 | $5,074.50 |
| Julie B. Mukendi | L | $180.00 | 338.50 | $60,930.00 |
| Justin Benjamin | LSS | $190.00 | 63.70 | $12,103.00 |
| Kaitlin C. Prindle | BFR | $180.00 | 17.00 | $3,060.00 |
| Karen A. Joffrion | C | $210.00 | 52.50 | $11,025.00 |
| Karen M. Roche | L | $205.00 | 9.40 | $1,927.00 |
| Katharine L. Steigerwald | C | $160.00 | 86.10 | $13,776.00 |
| Kathleen Lee | BFR | $245.00 | 31.50 | $7,717.50 |
| Kathleen T. Mendoza | L | $170.00 | 121.10 | $20,587.00 |
| Katie Slater | T | $255.00 | 7.30 | $1,861.50 |
| Kazuho Nakajima | C | $225.00 | 26.10 | $5,872.50 |
| Kim Wu | LSS | $235.00 | 24.30 | $5,710.50 |
| Lance Y. Shiroma | C | $230.00 | 199.20 | $45,816.00 |
| Lara Pender | L | $255.00 | 14.90 | $3,799.50 |
| Lara Pender | L | $240.00 | 17.70 | $4,248.00 |
| Laura Jewett | LSS | $235.00 | 13.60 | $3,196.00 |
| Laura Sauceda | L | $130.00 | 37.00 | $4,810.00 |
| Lesley Phillips | L | $210.00 | 69.20 | $14,532.00 |
| Lori A. Seavey | BFR | $205.00 | 191.10 | $39,175.50 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Luis Cruz | X | $135.00 | 12.40 | $1,674.00 |
| Luis L. Pasion | MC | $140.00 | 18.00 | $2,380.00 |
| Marie J. Carmant | X | $145.00 | 8.10 | $1,174.50 |
| Mark Ribaudo | MC | $170.00 | 12.60 | $2,142.00 |
| MaryAnne Bollen | LSS | $215.00 | 16.20 | $3,483.00 |
| Matthew Schoenfeld | BFR | $160.00 | 168.50 | $26,960.00 |
| Maximiliano Greco | X | $85.00 | 6.60 | $561.00 |
| Mel C. Maravilla | C | $200.00 | 11.90 | $2,380.00 |
| Merill Losick | X | $195.00 | 13.40 | $2,613.00 |
| Michael Brien | T | $205.00 | 9.90 | $2,029.50 |
| Michael Jackson | L | $200.00 | 649.40 | $129,880.00 |
| Michael Quarry | LSS | $215.00 | 19.30 | $4,149.50 |
| Michael R. Lynch | C | $160.00 | 25.00 | $4,000.00 |
| Michael T. Tily | C | $160.00 | 14.00 | $2,240.00 |
| Mili Sam | LSS | $235.00 | 54.30 | $12,760.50 |
| Mona V. Mehta | L | $160.00 | 563.60 | $90,176.00 |
| Nancy P. Cade | L | $210.00 | 14.10 | $2,961.00 |
| Nathan Lorenzo-George | C | $255.00 | 27.00 | $6,885.00 |
| Nathan Lorenzo-George | C | $240.00 | 15.00 | $3,600.00 |
| Nicole K. Aliseo | BFR | $160.00 | 11.00 | $1,760.00 |
| Nicole Swaney | L | $160.00 | 45.70 | $7,312.00 |
| Noel Hughes | C | $255.00 | 55.80 | $14,229.00 |
| Odalys C. Smith | L | $205.00 | 190.40 | $39,032.00 |
| Peggy Jones | C | $230.00 | 146.80 | $33,764.00 |
| Peter A. Siebel | BFR | $210.00 | 30.10 | $6,321.00 |
| Peter J. Ibrahim | C | $295.00 | 100.20 | $29,559.00 |
| Peter J. Ibrahim | C | $280.00 | 4.80 | $1,344.00 |
| Peter Nudelman | LSS | $215.00 | 18.20 | $3,913.00 |
| Peter Schell | C | $205.00 | 33.50 | $6,867.50 |
| Philip Barahona | X | $195.00 | 5.20 | $1,014.00 |
| Piotr Grabarczyk | C | $90.00 | 5.50 | $495.00 |
| Rachel Shapiro | BFR | $160.00 | 115.60 | $18,416.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Rene A Olvera | BFR | $180.00 | 16.30 | $2,934.00 |
| Sabrina M. Ialuna | L | $160.00 | 6.00 | $960.00 |
| Sarah Wade | C | $225.00 | 3.00 | $675.00 |
| Sarah Wade | C | $205.00 | 2.00 | $410.00 |
| Scott Larangeira | LSS | $215.00 | 30.50 | $6,557.50 |
| Shelley J. Fortune | L | $180.00 | 8.00 | $1,440.00 |
| Sherri Wright | L | $140.00 | 112.40 | $15,736.00 |
| Stuart Donnelly | L | $295.00 | 10.90 | $3,215.50 |
| Stuart Donnelly | L | $280.00 | 5.80 | $1,624.00 |
| Suzanne Inglis | L | $245.00 | 173.40 | $42,483.00 |
| Tashan Q. Reid | C | $195.00 | 69.20 | $13,494.00 |
| Thomas Certin | L | $160.00 | 39.00 | $6,240.00 |
| Timothy Vogel | BFR | $295.00 | 89.80 | $26,491.00 |
| Timothy Vogel | BFR | $280.00 | 53.20 | $14,896.00 |
| Trinh Hoang | L | $295.00 | 7.40 | $2,183.00 |
| Victoria A. Bennett | L | $195.00 | 22.80 | $4,446.00 |
| Victoria Burton | L | $255.00 | 6.20 | $1,581.00 |
| Vijay Sangwan | C | $280.00 | 24.20 | $6,776.00 |
| Walden Maurissaint | L | $170.00 | 19.30 | $3,281.00 |
| William H. Gordon | L | $195.00 | 26.30 | $5,128.50 |
| Yashomati B. Koul | BFR | $180.00 | 603.00 | $108,540.00 |
| Yovanka Malkovich | L | $190.00 | 25.80 | $4,902.00 |
| Yvonne Washington | L | $230.00 | 283.10 | $65,113.00 |
| **Total Paraprofessionals:** | | | **11,450.10** | **$2,284,424.00** |

_____
* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  * – Not yet admitted to the bar

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $840.92 | 18,894.40 | $15,888,679.75 |
| Associates | $496.55 | 54,596.20 | $27,109,694.00 |
| Paraprofessionals | $199.51 | 11,450.10 | $2,284,424.00 |
| **Blended Attorney Rate** | **$585.09** | | |
| **Total** | | **84,940.70** | **$45,282,797.75** |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                             Debtors.     :      (Jointly Administered)
                                          :
---------------------------------------------------------------------x
```

**THIRD APPLICATION OF WEIL, GOTSHAL & MANGES LLP,**
**AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

             Weil, Gotshal & Manges LLP ("WGM"), attorneys for Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors in possession (together with LBHI, the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman"), for its third application, pursuant to sections 330(a) and 331 of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for the interim allowance of compensation for

professional services performed by WGM for the period commencing June 1, 2009, through and

including September 30, 2009 (the "Third Compensation Period"), and for reimbursement of its

actual and necessary expenses incurred during the Third Compensation Period, respectfully

represents:

### PRELIMINARY STATEMENT

1.    Through WGM's efforts during the Third Compensation Period, the

Debtors have made substantial progress implementing strategies to efficiently resolve these cases

and maximize recoveries to creditors.  Specifically, WGM's advice and services were critical in

enabling the Debtors to obtain numerous forms of relief critical to these cases, including several

significant achievements, such as:

- an unprecedented decision compelling a derivatives contract counterparty, Metavante Corporation, to perform its obligations under its contract with one of the Debtors, Lehman Brothers Special Financing Inc. ("LBSF") – a ruling that has led to significant increases in recoveries to the Debtors' estates;

- an order establishing deadlines to file proofs of claim, approving an unprecedented process requiring creditors to file fulsome supplemental derivative and guarantee questionnaires, and allowing the Debtors to expedite and organize their claims review process – an order that was granted after nearly all 120 objections were resolved consensually due to the enormous effort expended by WGM professionals in extended meetings and conferences with creditors;

- an order authorizing alternative dispute resolution procedures for the Debtors to efficiently pursue potential recoveries related to their derivatives contracts – an order that was entered over 22 remaining objections, after WGM negotiated and consensually resolved 34 filed (and many other potential) objections;

- an order extending the Debtors' exclusive periods to file and solicit acceptances of chapter 11 plans through and including March 15, 2010  and May 17, 2010, respectively, which was granted over the objection by an *ad hoc* group of creditors;

- orders establishing various protocols, such as a protocol allowing the Debtors to accept discounted payoffs on certain of their real estate loans, and a protocol allowing the debtors to transfer loans to a special purpose entity prior to initiating foreclosure proceedings on such loans, that have allowed the Debtors to minimize the costs associated with securing their real estate and loan assets and liquidating and maximizing the value of such assets for creditors;

- an order authorizing LBHI's entry into agreements with Aurora Bank FSB ("Aurora") and Aurora Loan Services LLC to preserve the opportunity to realize the substantial value of both Aurora and Woodlands Commercial Bank (together, the "Banks") for the benefit of creditors; and

- the disposal and/or settlement of 8 adversary proceedings pending against the Debtors.

These critical achievements and others will permit the Debtors to continue to make deliberate progress in the administration of these cases at minimized costs to the estates, and will allow the Debtors to exit from chapter 11 as soon as possible with maximum recoveries to creditors.

2.      During the Third Compensation Period, WGM also began to consider exit strategies and coordinated with Alvarez and Marsal North America LLC ("A&M") regarding the formation of chapter 11 plans for the Debtors.  In that regard, WGM expended substantial resources in researching, investigating, and counseling the Debtors on issues that will have a significant impact on the Debtors' chapter 11 plans, including substantive consolidation, intercompany issues, guarantee claims, preference analyses and the creation of a new asset management company to manage Lehman's assets and liabilities.  While the work continues, WGM's efforts ultimately will pave the way for the Debtors to make an objective and fair assessment of each of these issues and to take appropriate action that is in the best interests of creditors.

3.      In addition to these significant accomplishments, during the Third Compensation Period, WGM was required to prepare, review, or respond to the more than 1,600 motions, notices, applications, objections, briefs, orders, and other pleadings filed in the Debtors' chapter 11 cases to ensure that the interests of the Debtors were adequately represented.  Among other filings, 12 new adversary proceedings were commenced by third parties against the Debtors (increasing to 35 the total number of pending adversary proceedings seeking a wide

range of relief from the Debtors); 12 motions for relief from the automatic stay, including

motions seeking to exercise asserted rights of setoff, were filed against the Debtors; and 3

motions to compel the assumption or rejection of executory contracts were filed against the

Debtors.  Each of the filings in the Debtors' chapter 11 cases and the 618 pleadings filed in the

SIPA Proceeding (defined below) required careful consideration and substantial resources from

WGM to protect the interests of the Debtors.

4.    Since the commencement of these cases, WGM has coordinated its efforts

with the professionals of the Official Committee of Unsecured Creditors (the "Creditors'

Committee"), the Office of the United States Trustee for the Southern District of New York (the

"U.S. Trustee"), the SIPA Trustee (defined below), the Examiner (defined below), the foreign

administrators appointed to administer the Debtors' foreign affiliates, and a variety of other

constituents to ensure that the interests of the Debtors were adequately represented and all of the

Debtors' constituents were apprised of major developments.  WGM's efforts to advise and

represent the Debtors in all facets of these cases and the affairs of the Lehman enterprise during

the Third Compensation Period were actual and necessary and of substantial benefit to the estates

and their creditors.  In the perspective of the complexity and scale of these cases, WGM's

charges for professional services performed and expenses incurred are reasonable under the

applicable standards.  WGM respectfully requests that the Court grant this application and allow

interim compensation for professional services performed and reimbursement for expenses as

requested.

## **BACKGROUND**

5.    Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11

cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    On October 8, 2008, the Debtors filed an application to employ WGM as their attorneys.  No objections were filed to WGM's retention and, pursuant to an order, dated November 21, 2008, the Debtors were authorized to retain WGM as their attorneys to render legal services in the prosecution of their chapter 11 cases.

7.    On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

8.    On September 19, 2008, a proceeding was commenced under Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  James Giddens, Esq. is the trustee (the "SIPA Trustee") appointed to administer LBI's estate under the SIPA (the "SIPA Proceeding").

9.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner (the "Examiner") and by order, dated January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

10.    On April 13, 2009, WGM submitted its First Application for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From September 15, 2008 Through January 30, 2009 (the "First WGM Application").

11.    On May 26, 2009, the Court entered an order appointing a fee committee (the "Fee Committee") and approving a fee protocol (the "Fee Protocol").  After a hearing on

August 5, 2009, and upon the recommendation of the Fee Committee, on August 13, 2009, the

Court entered an order approving the First WGM Application.

        12.     On August 14, 2009, WGM submitted its Second Application for Interim

Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual

and Necessary Expenses Incurred From February 1, 2009 Through May 30, 2009 (the "Second

WGM Application").  On September 25, 2009, the Court entered an order approving 90% of the

requested fees and 100% of the requested expenses in the Second WGM Application.  Approval

of the balance of fees requested was deferred, and the fees requested subject to a holdback.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

        13.     WGM seeks allowance of interim compensation for professional services

performed during the Third Compensation Period in the amount of $45,282,797.75 and for

reimbursement of expenses incurred in connection with the performance of such services in the

amount of $1,332,433.67.  During the Third Compensation Period, WGM attorneys and

paraprofessionals expended a total of 84,940.70 hours in connection with the necessary services

performed.  Of the aggregate time expended, 18,894.40 recorded hours were expended by

partners and counsel of WGM, 54,596.20 recorded hours were expended by associates, and

11,450.10 recorded hours were expended by paraprofessionals of WGM.  To the extent that time

or disbursement charges for services performed or disbursements incurred relate to the Third

Compensation Period, but are processed subsequent to the preparation of this application, WGM

reserves the right to request additional compensation for such services and reimbursement of

such expenses in a future application.

        14.     This application has been prepared in accordance with the Guidelines for

Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on

April 19, 1995 (together the "Local Guidelines"), the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Second Amended

Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [Docket No. 3102] (the "Administrative Order," and together with the Local

Guidelines and the UST Guidelines, the "Guidelines").  Further, WGM has endeavored to

comply with the directions provided by the Fee Committee made in connection with the First and

Second WGM Applications.  Pursuant to the Fee Protocol, the Debtors will provide a copy of

this application to the Fee Committee.

        15.     The fees charged by WGM in these cases are billed in accordance with

WGM's existing billing rates and procedures in effect during the Third Compensation Period.

The rates WGM charges for the services rendered by its professionals and paraprofessionals in

these chapter 11 cases are the same rates WGM charges for professional and paraprofessional

services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are

reasonable based on the customary compensation charged by comparably skilled practitioners in

comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

During the Third Compensation Period, WGM billed the Debtors for time expended by attorneys

based on hourly rates ranging from $250 to $950 per hour for domestic attorneys and $325 to

$1,000 for foreign attorneys.  Allowance of compensation in the amount requested would result

in a blended hourly billing rate of approximately $585.09 (based on 73,490.60 recorded hours for attorneys at WGM's regular billing rates in effect at the time of the performance of services).

16.    WGM consistently monitors its charges and expenses before and after the submission of monthly fee statements for potential errors or charges that might be inappropriate or otherwise should be reduced.  As a result, prior and subsequent to the submission of monthly fee statements for the Third Compensation Period, WGM reduced its charges by $646,177.75 and its expenses by $117,672.35, for a total of $763,850.10 in voluntary reductions, and credited the Debtors' account for an additional $452.90 mistakenly charged to the Debtors during the Third Compensation Period.  WGM will continue to diligently monitor its charges and expenses and, where appropriate, make appropriate reductions.  As of the date hereof, WGM has voluntarily reduced its fees and expenses by $1,648,368.22 in aggregate since the Commencement Date.

17.    In accordance with the Administrative Order, to date, WGM received payments totaling $28,725,899.62 for the Third Compensation Period, consisting of $27,689,397.00, representing 80% of the fees, and $1,036,502.62, representing 100% of the expenses, invoiced for June, July, and August 2009.  WGM has not yet received payment for either the fees or the expenses invoiced for September 2009 or the holdback of fees related to the Second WGM Application pursuant to the Second Interim Order.

18.    There is no agreement or understanding between WGM and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.  Except as explained immediately below, during the Third Compensation Period, other than pursuant to the Administrative Order, WGM received no

payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this application.

19.      As described in the First and Second WGM Applications, in certain instances, the Debtors and Lehman may be entitled to reimbursement from third parties, or third parties may be obligated to pay the Debtors' and Lehman's professionals directly, for legal services provided and expenses incurred in connection therewith.  For example, in many instances, borrowers may be responsible for payment of Lehman's costs and expenses in connection with Lehman's role as a lender or agent.  After consultation and upon agreement with the U.S. Trustee, WGM endeavored to segregate legal fees and expenses that may be subject to payment by third parties, and such fees and expenses are not contained within this Application. Based upon the agreement with the U.S. Trustee, for each matter in which the Debtors and/or Lehman may be entitled to reimbursement from third parties, WGM has opened, or will open, a new billing account.  WGM has sought and will seek payment from third parties for all applicable fees and expenses charged to these accounts, which will not be subject to any holdback.  WGM has not, and will not, submit monthly fee statements to the Debtors or Lehman for such matters unless and until such third-parties fail to pay the amounts due, at which point WGM would seek payment from the Debtors, but will reflect amounts charged and payments received on account of such matters, in summary fashion, in interim fee applications.

20.      During the Third Compensation Period, WGM has received payment in the aggregate of approximately $2,667,600 from third parties related to representations of Lehman entities listed on Exhibit A hereto.  WGM may have incurred, but not yet receive payment from third parties for, additional fees and expenses in connection with these and other matters.  WGM expects to receive all such payments from all such third parties.  To the extent

any third party fails to reimburse WGM for such fees or expenses, however, WGM is authorized

to seek reimbursement from the Debtors or Lehman in accordance with the Administrative

Order.[1]

       21.     As of the date hereof, WGM has a remaining credit balance in favor of the

Debtors for future professional services to be performed, and expenses to be incurred, in the

amount of $4,422,608.80. WGM will file further disclosures to the extent reconciliation of time

and expenses incurred prior to the Commencement Date results in further charges.

       22.     Annexed hereto as <u>Exhibit B</u> is a certification regarding compliance with

the Guidelines.

       23.     Pursuant to the UST Guidelines, the Summary Sheet filed in connection

with this Application includes a schedule of WGM professionals and paraprofessionals who have

performed services for the Debtors during the Third Compensation Period, the capacities in

which each such individual is employed by WGM, the department in which each individual

practices, the hourly billing rate charged by WGM for services performed by such individuals,

the year in which each professional was first licensed to practice law and the aggregate number

of hours expended in this matter and fees billed therefor.

       24.     Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of

expenses for which WGM is seeking reimbursement and the total amount for each such expense

category. An itemized schedule of all such expenses has been provided to the Debtors, the

Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee.

       25.     Annexed hereto as <u>Exhibit D</u>, pursuant to the UST Guidelines, is a

summary of WGM's time records billed during the Third Compensation Period using project

---

[1] Based upon an agreement with the U.S. Trustee, WGM is not required to maintain or provide detailed task codes or billing increments for such requests.

categories hereinafter described.  WGM maintains computerized records of the time spent by all

WGM attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter

11 cases.  Copies of these computerized records have been furnished to the Debtors and, subject

to redaction or modification for the attorney-client privilege where necessary to protect the

Debtors' estates, the Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the

Fee Committee in the format specified by the UST Guidelines.

## SUMMARY OF SERVICES PERFORMED BY
## WGM DURING THE THIRD COMPENSATION PERIOD

26.    Descriptions of some of the more significant tasks performed by WGM

during the Third Compensation Period are set forth below.

27.    <u>Derivatives</u>.  As of the Commencement Date, Lehman was party to or

guarantor of over 10,000 derivatives contracts (the "<u>Derivatives Contracts</u>") with an excess of

1,700,000 transactions.  The size and complexity of the Derivative Contracts are unprecedented

in the context of chapter 11 cases and will have an enormous impact on recoveries to creditors.

During the Third Compensation Period, WGM devoted substantial resources to implementing the

Debtors' global strategies to maximize the value of their derivatives assets.  At any one time,

WGM's multi-disciplinary derivatives team may be engaged a large number of research and

other derivative-related projects.

28.    Significantly, WGM filed and successfully prosecuted an unprecedented

motion to compel performance of a Derivatives Contract by Metavante Corporation (the

"<u>Metavante Motion</u>").  Significantly, the facts presented by the Metavante Motion are

representative of hundreds of similar Derivatives Contracts, and, indeed, the successful

prosecution of the Metavante Motion by WGM has resulted in numerous settlement and

contractual payments from other Derivatives Contract counterparties that have brought in

significant amounts to the Debtors.  For example, the Debtors were able to consensually resolve

a motion WGM prepared and filed to assume and assign an interest rate swap agreement with

MEG Energy Corporation, resulting in a substantial payment to the Debtors.

29.    In addition, during the Third Compensation Period, WGM developed and

obtained Court approval of alternative dispute resolution procedures for the Debtors' Derivatives

Contracts with recovery potential (the "ADR Procedures").  WGM began fielding numerous

calls and inquiries – almost immediately after it filed the motion to approve the ADR Procedures

– from counterparties raising objections and proposing changes to the proposed procedures.

WGM, in consultation with the Creditors' Committee, led the effort in multiple rounds of

revisions to the ADR Procedures in the spirit of compromise and cooperation.  Nevertheless, 56

objections were lodged with the Court.  After two hearings and two months of negotiations with

counterparties, WGM was successful in obtaining approval of the ADR Procedures and

convincing the Court to overrule the 22 outstanding objections.  The ADR Procedures represent

a critical step in the Debtors' global strategy to capture and maximize the value of the

Derivatives Contracts by expediting, in the most cost effective manner, the resolution of disputes

involving Derivatives Contracts.

30.    In addition to these significant achievements, throughout the Third

Compensation Period, WGM represented the Debtors' interests in various disputes, such as

invalid terminations, counterparty non-performance, and assertions of rights of setoff.  These

issues were raised both informally, in direct negotiations, and formally, in applications filed with

the Court.  The motion filed by Landwirtschaftliche Rentenbank ("Rentenbank") [Docket No.

4800] seeking authority to take discovery to effectuate an impermissible triangular setoff against

the Debtors is one example of the latter.  WGM attorneys in New York coordinated with WGM

attorneys in London who are handling a turnover proceeding against Rentenbank in England to

draft and successfully prosecute an objection to Rentenbank's motion in this Court.

31.    WGM was also available to respond to inquiries on a daily basis from the

full-time members of the Debtors' derivative teams charged with winding down and collecting

termination payments under the Derivatives Contracts.  WGM assisted the Debtors in reconciling

their agreements with hundreds of counterparties and ensuring that resolutions comply with

applicable law.  With WGM's guidance, the Debtors recovered approximately $1.5 billion

during the Third Compensation Period for the benefit of creditors in connection with the wind

down of their derivatives businesses.

32.    <u>Bar Date</u>.  During the Third Compensation Period, the Debtors took a

major step forward in the administration of their chapter 11 cases by establishing the deadlines to

file proofs of claims against the Debtors (the "<u>Bar Date</u>").  Due to the size, nature, and

complexity of the Debtors' liabilities (e.g. liabilities pursuant to Derivative Contracts, guarantees

and securities), a typical bar date process would not have been sufficient for the Debtors.

Therefore, without the benefit of precedent, WGM, in consultation with the Debtors, A&M, and

the Creditors' Committee, developed procedures that included online derivative and guarantee

questionnaires and alternative procedures for the filing of claims based on securities issued or

guaranteed by the Debtors.

33.    Nearly 120 objections asserting a wide range of issues were filed in

opposition to the Bar Date motion.  WGM reviewed and analyzed each of the objections and

filed two replies and multiple declarations in support of the Debtors' Bar Date motion.  WGM

also hosted an all-day meeting with counsel from virtually every major firm in New York and

participated in numerous conference calls to negotiate the requirements of the questionnaires.  In

addition, WGM created alternative procedures for the filing of claims based on certain securities

issued by affiliates of the Debtors to international retail investors.  Such procedures were

negotiated with the various creditors, clearing agencies and issuers of the securities.  WGM's

Herculean efforts resulted in the consensual resolution of almost all of the objections to the Bar

Date motion.

34.      Following the entry of the Bar Date order, WGM continued working to

execute and implement the various Bar Date procedures.  WGM assisted in the creation of lists

of thousands of securities and the publication of the various procedures in 10 languages and 7

local dialects in 26 newspapers in 18 countries.  To assist creditors with compliance with the Bar

Date order, WGM responded to thousands of creditors' questions.

35.      The Bar Date order has provided the Debtors with valuable information

that will allow the Debtors to efficiently review and reconcile claims against their estates and

administer their chapter 11 cases in a manner that would not have been possible without the

extraordinary efforts of WGM.

36.      Bank Issues.  As referenced above, during the Third Compensation Period,

one of LBHI's indirect wholly-owned non-debtor subsidiaries, Aurora, was at risk of having a

receiver appointed if it was unable to satisfy its brokered certificate of deposit obligations, a

substantial portion of which were coming due in mid-August 2009.  WGM took immediate

action to evaluate the consequences from such a failure and to preserve the value of both Aurora

and its affiliate Woodlands Commercial Bank, which was exposed pursuant to a cross-liability

statute.  Specifically, WGM negotiated, drafted and finalized an amended repurchase agreement

with Aurora and a bridge financing facility with Aurora Loan Services LLC to provide Aurora

access to liquidity that it needed to satisfy its deposit obligations while protecting the interest of

the Debtors.  WGM also prepared a motion and obtained an order authorizing the Debtors' entry

into these transactions over an objection.

37.     In addition, throughout the Third Compensation Period, WGM

participated in numerous conference calls and meetings with the Banks, their counsel, and their

regulators to try to achieve a resolution that will preserve the Banks' significant value for

creditors.  All the while, WGM also coordinated on the Debtors' strategy for the Banks with the

Creditors' Committee and its advisors.

38.     Real Estate.  As of the Commencement Date, the Debtors and their

affiliates had tens of billions of dollars invested in both the debt and equity of various

commercial and residential real estate projects across the globe.  During the Third Compensation

Period, WGM continued to dedicate a significant amount of time to review the extensive

documentation related to these projects and to familiarize itself and the Creditors' Committee

with Lehman's prepetition transactions and counterparties to implement the best available course

of action for the Debtors' real estate assets.  At any one time, WGM's multi-disciplinary real

estate team may be engaged in analyzing aspects of more than eighty transactions.

39.     During the Third Compensation Period, WGM devoted substantial time to

drafting motions for authorization to provide liquidity to projects that the Debtors determined, in

their business judgment, will benefit their creditors.  For example, WGM advised on

restructuring a $580 million construction loan facility involving a commercial property located at

200 Fifth Avenue in New York City in order to preserve long-term viability of the project.

Furthermore, WGM negotiated the extension of a $75 million loan secured by an office property

in order to capture rents from an large tenant renewing its lease.  All of these actions preserved

significant value for creditors.

40.    In addition, in order to increase efficiency and preserve the Debtors'
resources, WGM dedicated substantial time and effort to establishing various protocols with the
Creditors' Committee to govern commonly recurring real estate transactions.  The protocols aim
to minimize the costs of loan modifications while also preserving an oversight role for the
Creditors' Committee for significant transactions.  For example, WGM worked with the
Creditor's Committee to establish a protocol governing foreclosures and subsequent sales and
transfers of the underlying assets that are foreclosed upon.  WGM also worked with the
Creditors' Committee to formulate a protocol for handling discounted payoffs with borrowers,
which includes selling and assigning loans to borrowers and releasing borrowers from prepetition
obligations where the Debtors believe that such action is in the best interest of creditors.

41.    WGM also expended substantial resources during the Third Compensation
Period to defend the Debtors against motions brought by borrowers to compel the Debtors to
immediately assume or reject leases where a Debtor acted as landlord and loan agreements under
which a Debtor acted as lender.  In addition, WGM continued to defend against motions to lift
the automatic stay to prime the Debtors' liens or take other actions with respect to the Debtors'
real estate assets.  WGM's extensive experience enabled the Debtors to expeditiously resolve
formal and informal demands of their counterparties and to take necessary actions that will
preserve the value of Lehman's real estate portfolio.

42.    Adversary Proceedings.  WGM continued to defend against adversary
proceedings filed against the Debtors and also commenced adversary proceedings against third
parties to recover funds or property belonging to the Debtors.  In total, there were 35 adversary
proceedings (the "Adversary Proceedings") pending during the Third Compensation Period.  The
Adversary Proceedings involve extraordinarily complex financial securities, the scope of the

Bankruptcy Code's safe harbor provisions, the rights of parties with respect to certain posted collateral, claims filed by former employees, claims relating to certain funding commitments, and various other causes of action. During the Third Compensation Period, WGM actively engaged in developing strategies and litigating to protect the rights and interests of the Debtors in these Adversary Proceedings, including, among other things, filing dispositive motions and preparing responses to dispositive motions (both motions to dismiss and motions for summary judgment).

43.    WGM's professional services in connection with the Adversary Proceedings included: thoroughly investigating and evaluating all claims asserted by and against the Debtors; drafting appropriate answers; drafting and researching potential counterclaims; preparing motions to dismiss; preparing motions for summary judgment; preparing responses to motions to dismiss and motions for summary judgment; conducting legal research; negotiating appropriate dismissals and settlements; attending pretrial conferences and discovery conferences; negotiating appropriate discovery schedules; drafting discovery requests, including interrogatories, requests for production of documents, and requests for admissions; responding to discovery requests, including asserting appropriate objections to such requests; reviewing documents to produce to and documents produced by opposing litigants; defending and taking depositions; and various other tasks.

44.    More specifically, during the Third Compensation Period, WGM drafted and filed one motion to dismiss, three motions for summary judgment, and one complaint. WGM also prepared and filed three responses to motions to dismiss, two responses to motions for summary judgment, three answers to complaints filed against the Debtors, numerous letters to the Court regarding pending Adversary Proceedings, a response to a third party's motion to

withdraw the reference of an Adversary Proceeding, an objection to a motion to dismiss an

Adversary Proceeding for lack of jurisdiction, and a motion to stay discovery.

45.     Remarkably, during the Third Compensation Period, WGM's efforts

resulted in a dismissal and/or settlement of 8 Adversary Proceedings (almost 25% of the pending

Adversary Proceedings) against the Debtors.  WGM anticipates that it will continue to be

required to devote considerable time to these matters as these chapter 11 cases progress.  In

addition to the Adversary Proceedings, during the Third Compensation Period, WGM's multi-

disciplinary litigation team was engaged in analyzing aspects of many out-of-court disputes.

46.     <u>Asset Sales</u>.  During the Third Compensation Period, WGM represented

the Debtors in connection with the out-of-court sale of Lehman's real estate private equity funds,

including a transaction involving the sale, by Real Estate Private Equity Inc., an indirect

subsidiary of LBHI, of its European mezzanine funds and its interest in the general partner of the

Real Estate Private Equity Mezzanine Funds on July 31, 2009.  WGM also advised the Debtors

on issues surrounding the establishment of a new asset management company to manage

Lehman's assets and liabilities.  Among other things, WGM analyzed and advised the Debtors on

the structure of the new entity, including corporate governance and tax implications, the

interplay of the new entity that the Debtors' obligations and compliance with the Bankruptcy

Code, and potential third-party joint ventures.

47.     In connection with each of these transactions, during the Third

Compensation Period, WGM reviewed and advised on the Debtors' communications with third

parties, reviewed and counseled strategic alternatives on credit facilities and third party

agreements, advised on the extension and amendment of certain credit facilities, extensively

diligenced the transactions and the underlying investments of the funds, developed structures for

other possible transactions, counseled on potential litigation and negotiated and drafted

transaction documents (including transaction and purchase agreements, trust agreements,

consents, transition services agreements), as well as notes, collateral agreements, advisory

agreements and partnership agreements.  WGM also reviewed and counseled on the restructuring

of the Debtors' corporate structure, assets and liabilities, and liaised with foreign local counsel

on issues of foreign law, which included regulatory, tax, employee and transfer matters.  As a

result of WGM's efforts, the Debtors have generated and preserved substantial value for their

creditors.  During the Third Interim Compensation Period, WGM's interdisciplinary M&A teams

worked on well over one hundred Lehman-related matters.

48.    <u>International Matters</u>.  During the Third Compensation Period, WGM

assisted the Debtors in preparing and hosting the first meeting of all signatories (the "<u>Protocol

Signatories</u>") to the Cross-Border Insolvency Protocol for the Lehman Brothers Group of

Companies dated May 12, 2009 (the "<u>Protocol</u>") on July 17, 2009 in London.  The objective of

the first protocol meeting was primarily to discuss how the Protocol Signatories might agree to

intercompany balances through a streamlined, consistent, coordinated, and transparent process

that reduces administrative expenses and avoids years of potential costly litigation.  The agenda

and presentations that the Debtors made at the meeting were carefully prepared by the Debtors in

close consultation with WGM.  WGM also actively participated in the negotiations that took

place among the Protocol Signatories during the meeting, and subsequently drafted the

conclusion minutes.  The conclusion minutes themselves required further bilateral negotiation to

ensure that the conclusions reached at the first protocol meeting were accurately reflected in the

minutes.

49.    In the months that followed the first protocol meeting, WGM assisted the Debtors in the establishment of a procedures committee to work towards a consensus on the methods and elements of proof that should apply in calculating and resolving intercompany claims.  The primary goal of the Protocol and the committee is to achieve an expeditious resolution of intercompany claims in the hopes of avoiding costly and prolonged litigation.

50.    In addition to the foregoing, WGM continued to devote considerable time and resources to preserving the Debtors' foreign interests, both among their affiliates and vis-à-vis third parties.

51.    <u>Loan Portfolio</u>.    Prior the Commencement Date, the Debtors were among the nation's leading lenders, with over $46 billion of loan commitments outstanding to borrowers from a multitude of industries for use in their general business operations.  During the Third Compensation Period, WGM continued to assist the Debtors in assessing and reviewing their loan portfolio to enable the Debtors to make informed business decisions that will maximize value for creditors.  WGM also negotiated, drafted and reviewed documentation needed for the Debtors to take actions as lender, agent and loan participant for hundreds of corporate loans and to terminate billions dollars worth of unfunded loans and loan commitments.  WGM also worked to restructure and negotiate Lehman's loans to third parties that neared or went into default.  During the Third Interim Compensation Period, WGM's interdisciplinary teams worked on more than fifteen transactions for Lehman's loan portfolios.

52.    <u>Transparency</u>.  Disclosure to the Court, the U.S. Trustee, the Creditors' Committee and their professionals, and all creditors has been, and continues to be, a fundamental goal of the Debtors.  WGM has taken the lead in assisting the Debtors in the disclosure process and in providing information to the Debtors' stakeholders.  For example, WGM assisted in

preparing for and participated in the continued meeting of creditors pursuant to section 341 of

the Bankruptcy Code in July 2009.  The Debtors and WGM attorneys spent hours answering

questions from creditors and continued to field inquiries well after the meeting concluded.

53.     And, as previously disclosed, WGM has established a "Lehman Team

Hotline" through which any party in interest can email WGM attorneys or call to speak with

WGM attorneys regarding developments in these cases.  WGM attorneys spend hours each day

responding to emails and calls on a continuous basis to ensure that individual stakeholders have

access to accurate information and a platform to raise inquiries.  During the Third Compensation

Period, WGM responded to hundreds, if not thousands, of informal inquiries related to the status

of these cases, issues relating to the Bar Date and filing claims, and employee matters.  Indeed,

the number of inquiries relating to the Bar Date order were unprecedented and required the full

time dedication of several WGM attorneys in the days and weeks leading up to the Bar Date.

54.     Additional professional services rendered by WGM during the Third

Compensation Period, organized in accordance with WGM's work codes, are described below.

a.     Case Administration

  (i)     General Pleading Preparation

  ▪    drafted, revised, and filed various motions, notices, applications,
       objections, and orders and researched various legal issues and prepared
       memoranda regarding same.

  (ii)    Case Administration

  ▪    reviewed and distributed filings in the main chapter 11 cases, adversary
       proceedings, appeals and non-Bankruptcy Court litigations to appropriate
       Lehman, A&M, and WGM teams.

  (iii)   Document Management

  ▪    conducted document review for factual investigation, privilege and
       attorney work product and document production in response to numerous
       discovery requests and subpoenas in connection with various

governmental investigations, Examiner investigations and ongoing and potential litigations.

b.    Unsecured Creditors Issues/Meeting/Communications/Creditors' Committee

- prepared for and participated in meetings and teleconferences with the Creditors' Committee and its professionals regarding the status of the cases, settlement of estate causes of actions, document demands, asset sales, derivative transactions, inter-company, international and various other issues;
- reviewed and responded to document requests from the Creditors' Committee; and
- responded to numerous telephone and email inquiries from foreign and domestic creditors regarding the chapter 11 cases.

c.    Secured Creditors Issues/Meetings/Communications

- conducted legal research and responded to assertions of setoff rights, requests for adequate protection, and other claims by multiple counterparties; and
- reviewed documents and drafted stipulations in response to requests to segregate cash collateral.

d.    Case Strategy

(i)    Strategy Meetings

- conducted internal meetings, conferences, and teleconferences with the Debtors, the Creditors' Committee, the Examiner, their respective professionals and other parties in interest regarding case strategy, pending issues, business issues, preparation of and responses to various motions and applications, numerous sale transactions of the Debtors and their non-Debtor affiliates, general litigation strategy, governmental and other investigations, corporate governance, inter-company issues, and international issues.

(ii)    Project Monitoring/Court Calendar

- monitored Court dockets for Debtors' main cases, adversary proceedings and various state and federal court dockets for Lehman-related litigations;
- prepared summaries of Court hearings, pleadings and objections, work-in-progress reports, and case calendar for distribution to the Debtors and internal teams; and
- reviewed and responded to requests from the Debtors, the Creditors' Committee and its professionals, and third parties regarding pending Court matters.

e.  Hearing and Court Matters

- ▪ prepared for and participated in Court hearings, including omnibus hearings on June 3 and 24, July 15, August 5 and 26, September 17 and other hearings on June 17 and 29, July 14, August 6, 11 and 12, and September 15, 2009, and in telephonic and in-person conferences in the Court's chambers; and
- ▪ coordinated regularly with the Court and parties in interest regarding hearings and agenda items.

f.  WGM Retention/Billing/Fee Applications

- ▪ prepared and filed WGM's Second Application for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred and second supplemental affidavit for WGM; and
- ▪ prepared monthly fee statements in compliance with the Guidelines and monthly budgets in response to request from Fee Committee.

g.  Retention/Fee Applications: Ordinary Course Professionals

- ▪ assisted the Debtors in negotiating engagement letters with ordinary course professionals and certain parties for whom Court approval was not required; and
- ▪ regularly conferred with Lehman' approximately 100 ordinary course professionals regarding retention procedures and conflicts issues.

h.  Retention/Fee Applications: Other Professionals

- ▪ drafted and filed applications and obtained Court approval to retain Bingham McCutchen LLP, Hudson Global Resources Management, Inc., Pachulski, Stang, Zeihl and Jones LLP, and CB Richard Ellis, Inc.;
- ▪ filed applications to expand the retention of Jones Day and Simpson Thacher & Bartlett LLC as special counsel; and
- ▪ conferred with professionals regarding scope of retention, terms of compensation and related issues.

i.  U.S. Trustee Related Issues

- ▪ conferred and corresponded with U.S. Trustee regarding case matters, including retentions and compensation of professionals and ordinary course issues and monitored compliance with the UST Guidelines; and
- ▪ assisted Debtors in preparation and filing of monthly operating reports.

j.    General Business Operations

(i)    Cash Management

- participated in conferences and teleconferences with Lehman, A&M, the Creditors' Committee, the U.S. Trustee, the SIPC Trustee and various parties-in-interest regarding Lehman's cash management systems, intercompany notes, misdirected wire transfers, various banking institutions, prepetition bank accounts, postpetition administrative freezes, setoffs, and postpetition account administration;
- conducted research, drafted various documents and addressed numerous issues, both foreign and domestic, relating to certain customer accounts and inter-company issues;
- drafted agreements with banking institutions to prevent setoffs of postpetition deposits for debtor-in-possession accounts and stipulations to resolve postpetition misdirected wire transfers;
- negotiated and drafted stipulation and obtained Court authorization restricting use of alleged cash collateral with Commerzbank AG; and
- obtained Court authorization to enter into confirmation letter with HSH Nordbank AG, New York Branch, as collateral agent.

(ii)    Loans/Investments

- prepared motion and obtained authority for LBHI to provide intercompany funding to preserve one of Lehman's valuable assets, a twenty percent interest in D.E. Shaw & Co., L.P. and D.E. Shaw & Co., L.L.C.;
- participated in meetings and teleconferences with Lehman and various parties-in-interest and attended to issues related to Canadian insolvency proceeding of Skypower Corp. and drafted documents related to same;
- negotiated, drafted, reviewed, revised and advised Lehman regarding its rights and obligations pursuant to numerous corporate documents, including limited liability company agreements, loan agreements, forbearance agreements, collateral documents, Uniform Commercial Code statements, offering documents, reservation of rights letters, credit agreements, lock-up agreements, participation agreements, maintenance agreements, mortgage servicing agreement, debt purchase agreements, share purchase agreements, agency resignation and transfer documents, commitment terminations, letter of credit documents, partnership agreements, construction management documents, security agreements, securitization agreements and guarantees; and
- reviewed and prepared summaries of loan transactions, and resolved issues related to collateral and elevation requests, enforcement of liens, and defaults under transaction documents;
- conferred with Lehman, A&M and Creditors' Committee regarding general operations in the ordinary course of business.

▪ reviewed and prepared summaries of Lehman's investments and potential strategies and options, including with respect to Lehman's private investment and energy portfolio matters.

k.   Corporate Governance

▪ prepared, updated and maintained organizational charts of the Lehman entities, authorized signatories, and directors and officers;

▪ attended meetings of LBHI's board of directors, drafted and reviewed resolutions and minutes, drafted consents for various entities and advised the Debtors' directors and officers on issues arising in these chapter 11 cases;

▪ prepared for and attended meetings with the Debtors and A&M regarding reporting, compliance, organizational and related matters;

▪ drafted and reviewed numerous organizational documents and consents for various issues and prepared and filed forms 8-K, 10-D, 13F and other documents with the United States Securities and Exchange Commission;

▪ prepared for and participated in numerous meetings with various governmental and regulatory entities and witnesses for interviews related to governmental and regulatory investigations, and coordinated with A&M regarding same; and

▪ performed and coordinated document review, collection and production in response to various governmental and regulatory requests and created and reviewed various privilege logs related thereto.

l.   Insurance Issues

▪ prepared motion and proposed order and obtained authority for the Debtors to enter into a revolving surety bond facility agreement and to grant first priority liens in cash collateral to Travelers Casualty and Surety Company of America; and

▪ reviewed, conducted research and responded to inquiries regarding the Debtors' insurance policies and coverage.

m.   Employee/ERISA/Benefits Issues

▪ participated in meetings and responded to inquiries regarding Debtors' employee-related issues, including, among other things, retiree medical benefits, the Lehman Healthcare Trust, LBI-related issues, and certain employee-related litigation;

▪ drafted, reviewed and revised employment, separation and retirement agreements and plans for various Lehman employees, and advised the Debtors and A&M regarding employee benefits, severance, continuation of employment agreements and other issues, including those in connection with various asset sales.

n.    Asset Disposition/363 Issues

    (i)   Barclays Sale

- prepared and reviewed documents and coordinated with A&M regarding post-closing issues, such as transition services agreement, engagement of new third party vendors and asset ownership issues;
- reviewed and responded to government inquiries related to Barclays sale and inquiries related to Federal Rule 60(b) investigation.

    (ii)  Investment Management Division Sale

- negotiated, drafted and coordinated with LBI, Barclays Capital Inc. and Neuberger Berman Group LLC regarding various post-closing matters, including entity structure, foreign entity formation, tax issues, employee agreements, intellectual property and technology, and real estate.

    (iii) Real Estate Sales

- conducted sale process, factual due diligence and legal research related to Lehman Brothers Real Estate Private Equity Funds, Lehman Brothers Real Estate Partners Funds, and Lehman Brothers Real Estate Mezzanine Partners Funds, including corporate structure, assets and liabilities, regulatory and other consents required for transfers, and other issues relating to sales of such funds, including tax, employee and transfer considerations both domestic and international;
- negotiated, drafted and reviewed numerous complex transaction documents related to various transactions, facilities and properties, including the Nationwide Facility, Natixis Facility, Column Financial Facility, LB Rose Ranch LLC, Fenway Capital, Stamford Financial Centre, LB Shadow Valley LLC, and Vegas Grand; and
- organized and participated in regular meetings and teleconferences with Lehman, A&M and various other domestic and international professionals, to coordinate real estate asset disposition strategy.

    (iv)  Other Sales and Sales of Miscellaneous Assets

- coordinated with the Creditors' Committee and negotiated, drafted, and obtained Court approval, over objections of parties in interest, of protocols and procedures to sell or abandon *de minimis* assets;
- completed diligence and negotiation and drafting of documentation for resignation, termination, and transfer of various Lehman administrative agency positions and attend to transfer of collateral related to same; and
- conducted diligence, engaged in negotiations, and drafted various documents and pleadings in connection with transactions, including those involving certain artwork, furniture, fixtures and equipment, collateralized debt obligation funds, LB Skypower LLC, Bridge Pharmaceuticals,

Libertyview Capital Management Inc., Lehman's venture capital business, LBT Varlik Yonetim Anonim Sirketi, Lehman Brothers Trust Company, and Lehman Brothers Menkul Degeler A.S.

(v)    Domestic Banks & Aurora

- negotiated and drafted documents concerning amended master repurchase agreement with Aurora and bridge advance facility with Aurora Loan Services LLC;
- drafted and filed motion for authority to amend master repurchase agreement and enter into bridge loan facility with Aurora Loan Services LLC, and drafted and filed reply to objection of Elliot Capital Management, et. al. to same;
- drafted legal memoranda, reviewed and revised presentation, and conferred with A&M, Creditors' Committee, and regulatory counsel regarding master forward agreement and Debtors' strategy regarding same;
- conducted research and analysis regarding proofs of claim filed by Aurora and Woodlands; and
- participated in conference calls and meetings with A&M, LBI and Creditors' Committee regarding Woodlands' customer claim against LBI.

o.    Executory Contracts/365 Issues

(i)    Executory Contracts/365 Issues

- participated in numerous conferences with Debtors, A&M and objecting parties regarding motions for approval of the assumption or rejection of open trade confirmations, responded to objections to the motion, prepared for depositions of relevant witnesses, reviewed document production of certain open trade counterparties, and negotiated and drafted stipulations and settlement letters regarding same; and
- drafted and filed motion for authorization to purchase certain loan participations.

(ii)    Derivatives Issues

- drafted and successfully prosecuted motion to implement ADR Procedures and negotiated and responded to 56 objections thereto;
- drafted and successfully prosecuted Metavante Motion, researched case law and drafted response to Metavante Corp.'s motion to alter or amend the Court's order granting same;
- drafted and successfully prosecuted objection to Rentenbank's motion for discovery relating to Derivatives Contracts;
- drafted motion to assume an interest rate swap with MEG Energy Corp. and negotiated and documented stipulation between LBSF and MEG Energy regarding same;

- conducted due diligence of derivatives transactions including collateralized debt obligations and swap novations and negotiated, drafted and reviewed settlement and/or novation agreements regarding Derivatives Contracts and confidentiality agreements related thereto;
- counseled Debtors regarding jurisdictional issues related to foreign swaps, subordination agreements, valuation issues relating to ISDA termination calculations, conflicts of law, safe harbor and set-off issues, non-performing counterparties, and intercompany trades;
- reviewed termination notices and other correspondence from counterparties and drafted responses to counterparties, including letters to enforce the automatic stay and contest improper set-offs; and
- drafted and filed several motions pursuant to Bankruptcy Rule 2004 to take discovery of swap counterparties and negotiated numerous consensual discovery schedules.

p.    Real Property/365 Issues

- negotiated, drafted and reviewed numerous real estate loan restructuring documents, including with respect to Canyon Ranch Living Miami Beach Condominiums and the VCC joint venture projects;
- negotiated settlements and related agreements with various counterparties to repurchase transactions, including State Street Bank and Trust Company, Lehman Re, Ltd. and Fenway Capital, LLC and drafted pleadings to approve same;
- drafted pleadings and attended hearings to defend the Debtors against motions brought by borrowers to compel the immediate assumption or rejection of loan agreements under which a Debtor acted as lender or to lift the automatic stay to prime the Debtors' liens securing such loan agreements with new financing from third party lenders;
- prepared pleadings seeking Court approval of various procedures related to real estate loans, including a loan foreclosure procedures motion and protocols pursuant to which the Debtors will be able to efficiently effectuate discounted pay-off transactions, restructure, make new or additional debt investments in and or enter into settlements and compromises in connection with existing real estate investments;
- participated in meetings and telephonic conferences and drafted pleadings relating to Lehman's involvement in the chapter 11 cases of certain indirect subsidiaries of SCC Acquisitions, Inc. (the "SunCal Case"), including various issues related to proofs of claim objections on behalf of the Lehman affiliates;
- researched issues and drafted and finalized reply brief in support of appeal of order denying motion for relief from the automatic stay in the SunCal Case and prepared for related appellate hearing;
- attended to numerous issues related to chapter 11 cases of borrowers under various loans and related agreements entered into by the Debtors, including the preparation of proof of claims in the Fontainebleau Las

Vegas case and the filing of a competing disclosure statement and plan of reorganization in the SunCal Case;

- attended to numerous issues with remaining leases for non-residential real property, including the assumption, rejection or modification of various leases at 1271 Avenue of the Americas and the assignment of a lease at 600 Madison Avenue; and

- attended to various issues regarding the servicing of real estate loans by Aurora Loan Servicing LLC.

q.    Adversary Proceedings

- drafted and filed motions for summary judgment in the Lehman Brothers Special Financing Inc, et al. v. American Family Life Insurance Company of Columbus, et al., Lehman Brothers Holdings Inc., et al. v. Libra CDO Limited, et al., and Bank of America, N.A. v. Lehman Brothers Special Financing Inc. & Lehman Brothers Holdings Inc. adversary proceedings;

- drafted and filed oppositions to motions to dismiss in the Lehman Brothers Special Financing Inc. v. Harrier Finance Limited and the Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited adversary proceedings;

- resolved the following adversary proceedings: Federal Home Loan Bank of Pittsburgh v. Lehman Brothers Special Financing Inc. et al, Kelly v. Lehman Brothers OTC Derivatives Inc. et al, Royal Bank of America v. Lehman Brothers Special Financing, Inc., Deutsche Bank AG v. Lehman Brothers Holdings Inc., Southern Community Financial Corporation, Southern Community Bank and Trust v. Lehman Brothers Special Financing, Inc., Carolina First Bank v. Lehman Brothers Special Financing, Inc., Western Digital Corp. v. Lehman Brothers Holdings Inc., and Ceradyne, Inc. v. Lehman Brothers Holdings Inc.;

- conducted legal research and drafted memoranda regarding numerous issues and participated in internal team meetings, conferences, and teleconferences with Debtors regarding pending and prospective litigations, legal issues, and related strategy;

- reviewed, coordinated, and responded to various formal and informal discovery requests related to adversary proceedings;

- prepared for and participated in meetings with the Debtors and A&M regarding potential causes of actions including preferential transfers and preference actions and researched and reviewed documents and drafted memoranda relating to same; and

- reviewed issues and drafted memos regarding mutuality, set-off requirements, mistake of fact, and elements of fraud.

r.    Bar Date Motion and Claims Reconciliation Issues

- drafted Bar Date motion, Proof of Claim Form and Bar Date notice and conducted numerous meetings and teleconferences with the Debtors, A&M, the Creditors' Committee and its professionals regarding same;

- reviewed objections to Bar Date motion and prepared and filed omnibus reply to objections to the Bar Date motion, declarations of the Debtors in support of the Bar Date motion and reply to objection for establishment of the deadline for filing proofs of claim in connection with EMTN program;
- negotiated the content of the derivatives questionnaire and guarantee questionnaire with a large group of creditors and the Creditors' Committee;
- negotiated and drafted the alternative claims filing procedures for certain classes of securities sold by Lehman's foreign affiliates (the "Program Securities") with counsel to various creditors, the Creditors' Committee, various foreign affiliates and clearing agencies and created list of more than 6,000 Program Securities;
- prepared numerous stipulations with various parties resolving issues related to the Bar Date Motion, including stipulation between the Debtors and the signatories to the cross-border insolvency protocol;
- attended to issues related to the publication of the Bar Date notice and the Lehman Program Securities Bar Date notice in both foreign and domestic publications and in various languages and dialects; and
- reviewed and responded to hundreds of inquiries from potential creditors and contract counterparties regarding the filing of proofs of claim and the scheduling of a bar date.

s.    Automatic Stay/Safe Harbor

- reviewed, analyzed and responded to numerous motions for relief from automatic stay, including those filed by Matthew Hudson, Merit Floors, Wells Fargo Bank, NA, Washington Mutual, New York Institute of Finance, Inc., Unclaimed Property Service Inc. and Jamie Desmond;
- conducted extensive negotiations with Markit Group Limited regarding Markit Group Limited's motion for relief from the automatic stay filed in SIPA Proceeding;
- drafted correspondence to third parties regarding enforcement of the automatic stay;
- participated in meetings and researched issues raised in DNB NOR Bank ASA litigation and drafted and filed objection, supplemental objection and correspondence regarding DnB NOR Bank ASA's motion for administrative claim;
- conducted research, drafted and filed motion to enforce the automatic stay and hold Shinsei Bank in contempt for violating the automatic stay and prepared reply to objections to same; and
- conducted factual and legal research, prepared legal memoranda, coordinated with Lehman and A&M and negotiated stipulations and settlement agreements with movants and third parties regarding the foregoing.

t.     Exclusivity

- drafted and successfully prosecuted motion, over objections, to obtain second extension of the exclusive periods to file chapter 11 plans and solicit acceptances thereof.

u.     Plan of Reorganization/Plan Confirmation

- researched, prepared memoranda, reviewed documents and conducted diligence regarding substantive consolidation and other preliminary chapter 11 plan related issues;
- participated in numerous conferences with the Debtors, A&M and Creditors' Committee regarding same.

v.     Tax Issues

- advised Lehman in connection with tax efficient structures for various asset sales and restructurings; and
- conducted research and regular conferences and teleconferences with Lehman, A&M, the Creditors' Committee, the SIPA Trustee and various professionals regarding various tax matters, including those relating to certain payments, net operating losses, the dissolution of certain non-Debtor entities, partnership issues, exemptions, and inter-company issues.

w.     Communications

- responded to hundreds of telephone and email inquiries from creditors and other parties in interest, including customers, vendors, shareholders, secured and unsecured creditors, and potential purchasers of assets, regarding Debtors' chapter 11 cases.

x.     Customer/Vendor Issues

- reviewed and negotiated various documents, including consulting agreement, non-disclosure agreement and master services agreement for the retention of Citadel Solutions LLC and prepared and filed motion to approve same; and
- advised Lehman and A&M regarding postpetition vendor agreements and negotiated and drafted agreements regarding same.

y.     Corporate/Securities

- prepared corporate resolutions, amendments, agreements, releases and consents required for various transactions, including multiple asset sales and the appointment and election of officers and directors for the Debtors' foreign and domestic affiliates;

- prepared and filed various UCC documents including terminations and name changes; and
- performed factual and legal research, drafted memoranda regarding, participated in numerous conferences in connection with, and advised on certain board authorizations, certain of Lehman's transactions, businesses, investments, inter-company relationships.

z.    Non-Bankruptcy Litigation

- reviewed, researched, drafted and analyzed complaints, claims and pleadings in multiple foreign and domestic litigations commenced by and against Lehman entities;

aa.    Intellectual Property

- advised Lehman regarding certain claims and disputes related to the use or service of intellectual property and information technology, whether against Lehman directly or through one of its transition service providers;
- negotiated, drafted and revised several agreements related to Lehman's use or service of intellectual property and information technology; and
- recorded post closing transfers of intellectual property in foreign jurisdictions.

bb.    International Matters/Foreign Proceedings

(i)    U.K. / Lehman Brothers International (Europe) ("LBIE")

- monitored and participated in English court hearings in respect of insolvency proceedings of 19 English companies with PricewaterhouseCoopers LLP's ("PWC") as joint administrators and their respective effects on the Debtors' chapter 11 cases and counseled the Debtors with their role on the official committee of unsecured creditors in the cases of LBIE, Lehman Brothers Europe Limited, Lehman Brothers Limited, LB UK Re Holdings Limited, and Lehman Brothers Holdings Plc cases;
- reviewed and provided advice on various loan documentation and other transactions, including the debt restructuring of ELQ Hypotheken NV;
- advised on sales of LBT Varlik Yontim A.S., Lehman Brothers Menkul Degerler and Borasco Elektrik Uretim Sanayi Ticaret; and
- provided advise on numerous other issues, including corporate governance issues for Lehman affiliates, service charges, access to data and information under the transition services agreement with Barclays Capital Inc.

(ii)    Asia

- assisted foreign counsel in representing Lehman in proceedings and related issues in Japan, Hong Kong, Singapore, the Philippines, Korea, Thailand and Australia; and

- coordinated and facilitated the list of authorized signatories, directors and officers and the replacement of directors for various Asian entities.

(iii) Germany

- participated in numerous meetings with the Lehman Brothers Bankhaus Aktiengesellschaft ("Bankhaus AG") insolvency administrator, and prepared for and attend Bankhaus AG creditors' meetings;
- reviewed master agreements, security and collateral agreements, guarantees, and derivatives contracts between U.S. Lehman entities and Bankhaus AG, and between U.S. Lehman entities and third parties in Germany and negotiated settlement/termination agreements with various counterparties;
- analyzed, drafted, and revised various participation, subparticipation, and repurchase agreements, tax letters, shareholders resolutions and notification letters regarding several German entities; and
- researched and analyzed issues related to the rights of third parties to setoff against Bankhaus AG, including research related to the enforceability of U.S. Bankruptcy Court decisions, safe harbor provisions, and repurchase agreements under German law; and researched and analyzed a potential subordination of Lehman's intercompany claims in Bankhaus AG insolvency.

(iv) France

- monitored French proceeding regarding Coeur Defense, a commercial real estate investment that was Europe's largest direct single commercial property transaction;
- researched and analyzed various documents regarding the debt structure, equity ownership, securitization documents and joint venture agreements regarding same; and
- participated in hearing regarding Lehman Brothers Asset Management France.

(v) Other/General

- organized, hosted, and advised the Debtors on the preparation of the agenda and the Debtors' presentations for the first protocol meeting and drafted and negotiated conclusions and minutes regarding same;
- participated in bilateral meetings with Protocol Signatories on a variety of intercompany issues;
- collected and catalogued information regarding status of the Debtors' foreign subsidiaries and investments and communicated with Lehman, A&M and third parties regarding international insolvency proceedings and regulatory matters; and

- analyzed and reviewed numerous inter-company documents, prepared memoranda thereon, and reviewed memoranda prepared by foreign counsel.

cc.    **LBI Issues**

- analyzed issues relating to intercompany claims and relationships between the Debtors, Lehman, and LBI;
- conducted meetings and teleconferences with the Debtors, A&M, and the SIPC Trustee's professionals to address same, including reconciling customer claims and non-customer claims of Lehman's foreign and domestic affiliates, including Woodlands Commercial Bank's municipal bond securities claim, and identification of collateral held by LBI;
- prepared for and participated in conference with Lehman, A&M, the SIPC Trustee and his professionals regarding the transfer of LBI's subsidiaries to Lehman ALI Inc.; and
- monitored the docket in the SIPA Proceeding and reviewed and coordinated with Lehman and A&M regarding filings that implicated Lehman.

dd.    **2004 Issues**

- reviewed, conducted research, and responded to motions to compel discovery pursuant to Bankruptcy Rule 2004, including those filed by First Bank of Puerto Rico and Freddie Mac;
- prepared and filed motions to authorize discovery pursuant to Bankruptcy Rule 2004 from Pinnacle Foods Finance LLC, Consolidated Container Company LLC, Dollar General Corporation, Colorado Housing and Finance Authority, Veyance Technologies, Inc., and First Data Corporation; and
- negotiated agreements and reviewed documents produced from the foregoing.

ee.    **Examiner Issues**

- conducted meetings and teleconferences with the Examiner, his professionals, the Debtors and A&M regarding various issues and coordination of workstreams and investigations;
- developed and implemented procedure for responding to information requests from the Examiner;
- provided Examiner with informal discovery and met with, prepared for, and attended witnesses interviews with the Examiner;
- created database and privilege logs for documents produced to the Examiner; and
- conducted diligence, coordinated and prepared (e.g., redaction and review for confidential information) materials for production to and review by

Examiner and supervised document review by Examiner in connection
with same.

ff.    Other Bankruptcy Matters

▪    consulted and coordinated with Lehman and A&M, and negotiated and
drafted motions, stipulations, settlement agreements, responses and other
documents in connection with (i) a settlement between LBHI, Lehman
Commercial Paper Inc. and Lehman RE Ltd. resolving certain disputes
related to mortgage loans, (ii) a settlement between American Express
Travel Related Services and Barclays Capital Inc resolving certain
disputes related to certain contracts, (iii) a Debt Repayment Agreement
with ELQ Hypotheken N.V., (iv) a settlement between Lehman Brothers
Holding Inc. and VCC, and (v) a settlement between Lehman Brothers
Special Financing Inc. and Lehman Brothers UK RE.

55.    The professional services performed by WGM were actual, necessary and
appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests
of the Debtors and their stakeholders.  Compensation for such services as requested is
commensurate with the complexity, importance, and nature of the issues and tasks involved.  The
professional services were performed expeditiously and efficiently.

56.    The professional services performed by members and associates of WGM
were rendered by the Business Finance & Restructuring, Corporate, Litigation, and Tax
Departments in numerous offices across three continents.  WGM has a preeminent Business
Finance & Restructuring practice and enjoys an international reputation for its expertise in
financial reorganizations and restructurings of troubled entities, with approximately 90 attorneys
that specialize in this area of law.

**ACTUAL AND NECESSARY DISBURSEMENTS OF WGM**

57.    As set forth in Exhibit C hereto, WGM has disbursed $1,332,433.67 as
expenses incurred in providing professional services during the Third Compensation Period.
These expenses are reasonable and necessary in light of the size and complexity of the Debtors'
cases.  For example, the novel legal issues invoked by the global scope of the Debtors'

businesses and the complex nature of the many financial arrangements they are party to require

WGM attorneys to work long hours, engage in numerous long distance and international

communications, and perform considerable computerized research in order to effectively

prosecute the Debtors' chapter 11 cases.

58.     The time constraints facing the Debtors, along with the sheer magnitude of

tasks generated by these cases, have required WGM's attorneys and other employees to devote

significant time during the evenings and on weekends to perform legal services on behalf of the

Debtors.  Such services were essential to meet deadlines, timely respond to motions and

objections, and to satisfy the extraordinary demands of the Debtors' businesses and the

administration of these complex chapter 11 cases.

59.     While WGM has not charged the Debtors for any overtime expenses,

consistent with firm policy, attorneys and other employees of WGM who worked late into the

evenings or on weekends were reimbursed for their reasonable meal costs and their cost for

transportation from the office to home.  WGM's regular practice is not to include components for

those charges in overhead when establishing billing rates and to charge its clients for these and

all other out-of-pocket disbursements incurred during the regular course of the rendition of

services.  The reimbursement amounts do not exceed those set forth in the U.S. Trustee

Guidelines.

60.     With respect to photocopying expenses, WGM charges all of its clients

$.10 per page for black-and-white copies.  With respect to facsimile expenses, in compliance

with the U.S. Trustee Guidelines, WGM does not charge for facsimile transmissions, other than

the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than

the $1.25 per page amount permitted by the U.S. Trustee Guidelines.  Each of these categories of

expenses does not exceed the maximum rate set by the U.S. Trustee Guidelines.  These charges

are intended to cover WGM's direct operating costs, which costs are not incorporated into the

WGM hourly billing rates.  Only clients who actually use services of the types set forth in

Exhibit C are separately charged for such services.  The effect of including such expenses as part

of the hourly billing rates would impose that cost upon clients who do not require extensive

photocopying and other facilities and services.  The amount of the standard photocopying charge

is intended to allow WGM to cover the related expenses of its photocopying service.  A

determination of the actual expenses per page for photocopying, however, is dependent on both

the volume of copies and the total expenses attributable to photocopying on an annual basis.

        61.     In addition, because of the global scope of the Debtors' businesses,

frequent long distance and international telephone calls are required.  On many occasions,

overnight delivery of documents and other materials was required as a result of circumstances

necessitating the use of such express services.  These disbursements are not included in WGM's

overhead for the purpose of setting billing rates.  WGM has made every effort to minimize its

disbursements in these cases.  The actual expenses incurred in providing professional services

were absolutely necessary, reasonable, and justified under the circumstances to serve the needs

of the Debtors, their estates, and creditors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

        62.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  Id.

§ 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and

reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code];
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

Id. § 330(a)(3).

63.     In the instant case, WGM respectfully submits that the services for which

it seeks compensation and the expenditures for which it seeks reimbursement in this application

were necessary for and beneficial to the Debtors' preservation, the orderly administration of their

estates, and the prosecution of their chapter 11 cases.  WGM worked assiduously to anticipate or

respond to the Debtors' needs and assist in the Debtors' chapter 11 process.  The professional

services were performed expediently and efficiently.  Whenever possible, WGM sought to

minimize the costs of its services to the Debtors by utilizing talented junior attorneys and

paraprofessionals to handle more routine aspects of case administration.  Groups of the same

WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-

WGM communication and education about the Debtors' circumstances.  The compensation

requested herein is reasonable in light of the nature, extent, and value of such services to the

Debtors, their estates, and all parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved.  Furthermore, WGM voluntarily reduced its requests for fees and expenses incurred during the Third Compensation Period in the aggregate amount of $763,850.10. Approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## CONCLUSION

64.    WGM respectfully requests the Court allow interim compensation for professional services rendered during the Third Compensation Period in the amount of $46,615,231.42, consisting of $45,282,797.75, representing 100% of fees incurred during the Third Compensation Period, and reimbursement of $1,332,433.67, representing 100% of actual and necessary expenses incurred during the Third Compensation Period, without prejudice to WGM's right to seek additional compensation for services performed and expenses incurred during the Third Compensation Period, which were not processed at the time of this application, and (ii) direct payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested and such other and further relief as is just.

Dated: December 14, 2009
       New York, New York

/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife
Shai Y. Wasiman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

## (Third Party Representations)

| Lehman Party | Amount Paid |
|---|---|
| LB I Group Inc. | $59,694.73 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $38,479.25 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $72,763.27 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $1,687.50 |
| Lehman Brothers Holdings Inc. | $2,363.03 |
| Lehman Brothers Holdings Inc. and certain of its direct subsidiaries | $1,125,000.00 |
| Lehman Brothers Holdings Inc. and certain of its direct subsidiaries | $1,759.58 |
| Lehman Brothers Holdings Inc. and certain of its direct subsidiaries | $136,531.06 |
| Lehman Brothers Real Estate Mezzanine Partners, L.P. | $1,782.00 |
| Lehman Brothers Real Estate Partners | $8,768.90 |
| Lehman Commercial Paper Inc. | $32,589.58 |
| Lehman Commercial Paper Inc. | $17,096.50 |
| Lehman Commercial Paper Inc. | $30,189.51 |
| Lehman Commercial Paper Inc. | $41,583.28 |
| Lehman Commercial Paper Inc. | $3,949.50 |
| Lehman Commercial Paper Inc. | $207.50 |
| Lehman Commercial Paper Inc. | $11,153.50 |
| Lehman Commercial Paper Inc. | $448.50 |
| Lehman Commercial Paper Inc. | $729.00 |
| Lehman Commercial Paper Inc. | $13,030.20 |
| Lehman Commercial Paper Inc. | $4,900.00 |
| Lehman Commercial Paper Inc. | $2,461.00 |
| Lehman Commercial Paper Inc. | $3,155.00 |
| Lehman Commercial Paper Inc. | $26,760.80 |
| Lehman Commercial Paper Inc. | $4,562.50 |
| Lehman Commercial Paper Inc. | $296.68 |
| Lehman Commercial Paper Inc. | $11,432.00 |
| Lehman Commercial Paper Inc. | $2,607.00 |
| Lehman Commercial Paper Inc. | $2,469.00 |
| Lehman Commercial Paper Inc. | $7,599.00 |
| Lehman Commercial Paper Inc. | $2,724.50 |
| Lehman Commercial Paper Inc. | $10,917.50 |
| Lehman Commercial Paper Inc. | $3,075.00 |
| Lehman Commercial Paper Inc. | $1,245.00 |
| Lehman Commercial Paper Inc. | $6,460.50 |
| Lehman Commercial Paper Inc. | $4,275.00 |
| Lehman Commercial Paper Inc. | $5,699.50 |
| Lehman Commercial Paper Inc. | $19,590.50 |
| Lehman Commercial Paper Inc. | $253,216.34 |
| Lehman Commercial Paper Inc. | $204.63 |
| Lehman Commercial Paper Inc. | $273,310.94 |
| Lehman Commercial Paper Inc. | $42,176.91 |
| Lehman Commercial Paper Inc. | $42,000.00 |
| Lehman Commercial Paper Inc. | $36,106.50 |
| Lehman Commercial Paper Inc. | $11,860.00 |
| Lehman Commercial Paper Inc. | $2,879.00 |
| Lehman Commercial Paper Inc. | $102,270.37 |
| Lehman Commercial Paper Inc. | $19,863.00 |
| Lehman Commercial Paper Inc. | $2,076.50 |
| Lehman Commercial Paper Inc. | $54,327.20 |
| Lehman Commercial Paper Inc. | $70,913.75 |
| Lehman Commercial Paper Inc. and a subsidiary of Property Asset Management Inc. | $29,903.45 |
| Lehman Commercial Paper Inc. and a subsidiary of Property Asset Management Inc. | $6,468.45 |
| **Total:** | **$2,667,613.91** |

# **EXHIBIT B**

### **(Certification)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
:
**In re**                                                               :      **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**   :      **08-13555 (JMP)**
:
**Debtors.**                                           :      **(Jointly Administered)**
:
--------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES
AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT
OF THIRD APPLICATION OF WEIL, GOTSHAL & MANGES LLP
FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, Lori R. Fife, hereby certify that:

1.       I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("WGM"), with responsibility for the chapter 11 cases of Lehman Brothers Holdings Inc. and

certain of its affiliates, as debtors in possession in the above-captioned cases (collectively, the

"Debtors"), in respect of compliance with the Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June

20, 1991 (the "Fee and Disbursement Guidelines") and the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by

the Court on April 19, 1995 (together with the Fee and Disbursement Guidelines, the "Local

Guidelines"), the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996 (the "U.S. Trustee Guidelines") and the Second Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals

[Docket No. 3102] (the "Administrative Order," and together with the Local Guidelines and the

U.S. Trustee Guidelines, the "Guidelines").

2.      This certification is made in respect of WGM's application, dated

December 14, 2009 (the "Application"), for interim compensation and reimbursement of

expenses for the period commencing June 1, 2009 through and including September 30, 2009

(the "Third Compensation Period") in accordance with the Guidelines.

3.      In respect of section 2 of the Fee and Disbursement Guidelines, I certify

that WGM reviewed the fee application and has approved it.

4.      In respect of section B.1 of the Local Guidelines, I certify that:

   a.      I have read the Application;

   b.      to the best of my knowledge, information, and belief formed after
           reasonable inquiry, the fees and disbursements sought fall within
           the Local Guidelines;

   c.      the fees and disbursements sought are billed at rates in accordance
           with those customarily charged by WGM and generally accepted
           by WGM's clients; and

   d.      in providing a reimbursable service, WGM does not make a profit
           on that service, whether the service is performed by WGM in-
           house or through a third party.

5.      In respect of section B.2 of the Local Guidelines and as required by the

Administrative Order, I certify that WGM has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"Committee") and the Debtors, with a statement of WGM's fees and disbursements accrued

during the previous months, although, due to administrative limitations, such statements were not

always provided within the timetables set forth in the Local Guidelines and the Administrative

Order.

      6.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors,

attorneys for the Committee, and the United States Trustee for the Southern District of New

York are each being provided with a copy of the Application.

Dated: December 14, 2009
      New York, New York


                    /s/ Lori R. Fife
                    Lori R. Fife

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors in Possession

## EXHIBIT C

## EXPENSE SUMMARY BY WEIL, GOTSHAL & MANGES LLP FOR THE
## SECOND INTERIM PERIOD OF JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009

| EXPENSES | AMOUNTS |
|---|---|
| 341 Creditors Meeting Expenses | $4,782.48 |
| Bank Charges | $22.58 |
| Business Meals | $67,592.49 |
| Computerized Research / Other Research | $628,995.27 |
| Consultant / Witness / Deposition Fees | $67,549.46 |
| Corporation Service | $25,664.35 |
| Court / Filing / Regulatory Fees | $17,008.02 |
| Court Reporting | $17,987.09 |
| Duplicating | $274,323.47 |
| Facsimile | $471.00 |
| London - Chapter 11 Debtors' Signatory Conference | $20,117.86 |
| Mediation Expenses | $2,675.00 |
| Messenger / Process Service | $10,216.91 |
| Outside Temps - Paralegal/Other | $2,415.00 |
| Periodicals / Online News Monitoring | $1,096.90 |
| Postage and Express Mail | $8,551.49 |
| Real Estate Title Updates | $18,217.50 |
| Telephone | $8,937.18 |
| Translation Fees | $5,119.82 |
| Travel and Transportation | $151,142.70 |
| **Total Expenses:** | $1,332,886.57 |
| **Expense Credit:** | ($452.90) |
| **Total Expenses Requested:** | **$1,332,433.67** |

**EXHIBIT D**

**COMPENSATION BY WORK TASK CODE FOR SERVICES
RENDERED BY WEIL, GOTSHAL & MANGES LLP FOR SECOND
INTERIM PERIOD OF JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1001** | **Case Administration** | | |
| 0100 | Entity Filings | 0.40 | $142.00 |
| 0101 | General Pleading Preparation | 41.90 | $11,550.00 |
| 0102 | Case Administration | 878.30 | $250,059.50 |
| 0103 | Document Management | 548.50 | $117,446.50 |
| **1002** | **Unsecured Creditors Issues/Meetings/Communications/ Creditors' Committee** | | |
| 0200 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 257.00 | $144,781.00 |
| **1003** | **Secured Creditors Issues/Meetings/ Communications** | | |
| 0300 | Secured Creditors Issues/Meetings/Communications | 12.50 | $7,824.50 |
| **1005** | **Case Strategy** | | |
| 0500 | Strategy Meetings | 580.80 | $356,466.00 |
| 0501 | Project Monitoring/Court Calendar | 378.10 | $160,328.50 |
| **1006** | **Hearing and Court Matters** | | |
| 0600 | Debtors | 736.00 | $241,508.50 |
| 0601 | SIPC | 0.90 | $487.50 |
| 0602 | Court Communications | 4.90 | $1,331.00 |
| **1007** | **WG&M Retention/Billing/Fee Applications** | | |
| 0700 | WG&M Retention/Billing/Fee Applications | 1,871.90 | $579,634.50 |
| **1008** | **Retention/Fee Applications: Ordinary Course Professionals** | | |
| 0800 | Retention/Fee Applications: Ordinary Course Professionals | 310.40 | $106,969.50 |
| **1009** | **Retention/Fee Applications: Other Professionals** | | |
| 0900 | Retention/Fee Applications: Other Professionals | 473.00 | $207,921.50 |
| **1010** | **Schedules/Statement of Financial Affairs** | | |
| 1000 | Schedules/Statement of Financial Affairs | 17.70 | $7,482.50 |
| **1011** | **US Trustee Related Issues** | | |
| 1100 | US Trustee Related Issues | 35.20 | $19,400.00 |
| **1012** | **General Business Operations** | | |
| 1200 | Party In Interest Communications | 78.50 | $67,092.50 |
| 1201 | Cash Management | 153.40 | $75,841.50 |
| 1202 | A&M Issue Coordination | 10.20 | $8,600.50 |
| 1203 | General Third Party Business Inquiries | 4.90 | $3,418.00 |
| 1204 | Other | 222.30 | $119,290.50 |
| 1205 | Loans/Investments-General | 1,021.80 | $512,150.00 |
| **1013** | **Corporate Governance** | | |
| 1300 | Corporate Governance | 6,115.00 | $2,380,377.00 |
| **1016** | **Insurance Issues** | | |
| 1600 | Insurance Issues | 42.00 | $22,942.00 |

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1017** | **Employee/ERISA/Benefit Issues** | | |
| 1700 | Employee/ERISA/Benefit Issues | 443.30 | $263,823.00 |
| **1018** | **Asset Disposition/363 Issues** | | |
| 1800 | Barclays Sale | 192.00 | $139,836.50 |
| 1801 | IMD Sale | 967.10 | $396,559.50 |
| 1802 | Real Estate Sales | 2,844.00 | $1,173,533.00 |
| 1803 | Sales of Miscellaneous Assets | 3,966.90 | $2,332,712.00 |
| 1804 | Other | 5,077.40 | $2,543,220.50 |
| 1805 | Domestic Banks & Aurora | 499.80 | $322,191.50 |
| **1019** | **Executory Contracts/365 Issues** | | |
| 1900 | Executory Contracts/365 Issues | 3,171.90 | $1,529,956.50 |
| 1901 | Derivatives/SWAP Agreement Issues | 8,975.50 | $5,606,998.00 |
| **1020** | **Real Property/365 Issues** | | |
| 2000 | Real Property/365 Issues | 12,205.80 | $7,380,793.00 |
| **1021** | **Adversary Proceedings** | | |
| 2100 | Adversary Proceedings | 12,216.60 | $6,648,180.00 |
| **1022** | **Claims Objections Litigation** | | |
| 2200 | Claims Objections Litigation | 128.90 | $62,553.00 |
| **1023** | **Bar Date Motion and Claims Reconciliation Issues** | | |
| 2300 | Bar Date Motion and Claims Reconciliation Issues | 1,357.00 | $761,631.00 |
| **1024** | **Automatic Stay/Safe Harbor** | | |
| 2400 | Automatic Stay/Safe Harbor | 737.70 | $397,095.50 |
| **1026** | **Exclusivity** | | |
| 2600 | Exclusivity | 322.90 | $171,384.00 |
| **1027** | **Plan of Reorganization/Plan Confirmation** | | |
| 2700 | Plan of Reorganization/Plan Confirmation | 756.30 | $402,621.00 |
| **1029** | **Tax Issues** | | |
| 2900 | Tax Issues | 926.70 | $507,387.00 |
| **1030** | **Communications** | | |
| 3001 | Lehman Team Hotline/Emails | 609.90 | $254,248.00 |
| **1031** | **Customer/Vendor Issues** | | |
| 3100 | Clearing Bank Issues (JPM, BofA, Etc.) | 1.90 | $1,805.00 |
| 3102 | Other | 295.70 | $184,926.50 |
| **1032** | **Utility Issues** | | |
| 3200 | Utility Issues | 1.30 | $253.50 |
| **1034** | **Corporate/Securities** | | |
| 3400 | Corporate/Securities | 687.70 | $325,484.00 |
| **1035** | **Non-Bankruptcy Litigation** | | |
| 3500 | Non-Bankruptcy Litigation | 1,854.70 | $1,035,945.50 |
| 3501 | Merchant Banking Fund | 200.10 | $90,310.50 |
| **1036** | **Non-Working Travel** | | |
| 3600 | Non-Working Travel | 321.00 | $100,796.75 |
| **1037** | **Intellectual Property** | | |
| 3700 | Intellectual Property | 251.30 | $141,115.50 |

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1038** | **International Matters/Foreign Proceedings** | | |
| 3800 | U.K. (Including LBIE) | 4,762.20 | $3,278,231.50 |
| 3801 | Asia | 237.60 | $80,001.50 |
| 3802 | Germany | 1,317.10 | $825,533.50 |
| 3803 | France | 284.00 | $193,970.00 |
| 3804 | Switzerland | 14.80 | $8,825.50 |
| 3805 | Israel | 71.60 | $42,299.00 |
| 3807 | Other/General | 321.80 | $211,157.00 |
| 3808 | PWC / LBIE Client Money Directions Application | 491.00 | $326,003.00 |
| **1039** | **Appeals** | | |
| 3900 | Appeals | 49.50 | $28,238.00 |
| **1040** | **LBI Issues** | | |
| 4000 | LBI | 473.70 | $291,592.50 |
| 4001 | SIPC Coordination | 12.30 | $7,922.00 |
| **1041** | **2004 Issues** | | |
| 4100 | 2004 Issues | 840.30 | $469,738.00 |
| **1042** | **Examiner Issues** | | |
| 4200 | Examiner Issues | 2,288.30 | $884,679.00 |
| **1043** | **Other Bankruptcy Matters** | | |
| 4300 | 9019 Motions | 165.60 | $74,518.50 |
| 4301 | Other Bankruptcy Motions | 116.20 | $44,619.00 |
| 4302 | Other Bankruptcy Litigation | 685.70 | $337,064.50 |
| **Total Fees Requested:** | | **84,940.70** | **$45,282,797.75** |