Hearing Date and Time: December 16, 2009 at 10:00 a.m. (New York Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

----------------------------------------------------------------x

**OMNIBUS REPLY TO OBJECTIONS TO DEBTORS'**
**MOTION FOR AN ORDER AUTHORIZING THE PAYMENT OF**
**PROCEEDS FROM DIRECTORS AND OFFICERS INSURANCE POLICIES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (collectively, the "Debtors") file this reply to the objections (the "Objections")[1] interposed by Intersil Investment Company, Intersil Holding GmbH, Intersil Europe Sarl, and Xicor, LLC [Docket Nos. 6128 and 6135 (duplicative)], and InfoSpace, Inc. [Docket No. 6130] (together, the "Objectors") to the Debtors' motion (the "Motion") for an order modifying the automatic stay, to the extent applicable, to allow payment of proceeds from the Debtors' director and officer liability insurance policies [Docket No. 5985], and respectfully state:

---

[1] The "Argument" sections of each of the Objections are virtually identical. Citations to the Objections herein shall be to the Objection filed by InfoSpace, Inc.

**THE OBJECTIONS SHOULD BE OVERRULED AND THE MOTION GRANTED**

1. The Objections are singularly devoid of merit. At the request of its insurers, and out of an abundance of caution, the Debtors filed the Motion seeking a comfort order authorizing the use of proceeds from director and officer liability policies (the "Policies") to pay approximately $1.6 million to settle a major lawsuit (the "Action") against certain of the Debtors' current and former directors and officers (the "D&Os").

2. Two final, non-appealable orders of this Court previously authorized the same insurers to pay, with the same insurance proceeds, and without any cap or limitation, the costs of defending the Action. [Docket Nos. 3220, 5906.] Another final, non-appealable order of this Court had previously authorized the Debtors to advance the D&Os up to $3 million (the "Fund") to cover costs of defending auction rate securities ("ARS") litigations, including the Action. [Docket No. 2052.] Motions seeking the foregoing relief were filed after careful consideration of facts and law by the Debtors, the Creditors' Committee, and their respective professionals. The Objectors did not interpose any objections to the relief previously sought or obtained.

3. The Objectors now express concern about the diminution of available proceeds from the Policies. However, the Debtors have been advised that the cost of settlement, i.e. $1.6 million, is significantly less than the cost of defending continued litigation of the Action. If the Motion is not approved and the Settlement cannot be consummated, far greater amounts of Policy proceeds will be depleted in defense costs. This alone is sufficient cause to grant the Motion. Accordingly, the Objections should be overruled.

4. The Objectors raise several other issues, building strawmen to obfuscate the above facts. Some are clearly fishing expeditions, improper discovery attempts related to claims

2

against the Debtors and the D&Os –for actions which the Objectors have yet to commence.[2] Others challenge the Debtors' business judgment in continuing the Policies long after such continuance was approved by this Court.[3]

5. The bulk of the Objectors' questions and argument, however, relate to whether Policy proceeds are property of the Debtors' estates. The Debtors' argument – that the Policy proceeds are not property of the Debtors' estates – is set forth in detail in the Motion and in prior motions[4] before this Court and are incorporated by reference herein. Additionally, what is perhaps purposefully lost in the Objections is the fact that the Policies do not provide <u>the Debtors</u> with coverage for claims against <u>the Debtors</u>. The Policies only (A) provide direct coverage to the D&Os (the "<u>Side A</u>" coverage) and (B) reimburse the Debtors to the extent the Debtors first pay the D&Os for claims which would be covered directly by the Side A coverage (the "<u>Side B</u>" coverage). "<u>Side C</u>" coverage, that at one time covered the Debtors' directly, was deleted in May 2007.[5] Thus, regardless of the fact that the Debtors have both Side A and Side B

---

[2] *See, e.g.,* Objection at 15 (seeking information about other ARS claims made against non-Debtor parties outside of this Court).

[3] *See* Objection at 9 (questioning the Debtors' continuation of coverage under the Policies). *Cf.* Order Authorizing the Debtors to (A) (i) Continue its Workers Compensation Programs and its Liability, Property, and Other Insurance Programs, (ii) Pay All Prepetition Obligations in Respect Thereof and (B) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations, dated November 5, 2008 [Docket No. 1398] (approved without objection).

[4] *See* Mot. ¶¶ 18-20; Debtors' Motion, Pursuant to Section 362 of the Bankruptcy Code, for an Order Modifying the Automatic Stay to Allow Advancement Under Directors and Officers Insurance Policy by Federal Insurance Company (Chubb), dated October 28, 2009 [Docket No. 5652]; Debtors' Motion, Pursuant to Section 362 of the Bankruptcy Code, for an Order Modifying the Automatic Stay to Allow Advancement Under Directors and Officers and Fiduciary Liability Insurance Policies, dated February 26, 2009 [Docket No. 2949].

[5] *See* Policy at Endorsement No. 9, dated May 16, 2007, titled "Delete Insuring Agreement (C) Endorsement." It states that "[s]ection I Insuring Agreement (C) of the Policy is deleted in its

3

coverage, the purpose of the Policies is the protection of the D&Os – not the Debtors. *See In re Cybermedica, Inc.*, 280 B.R. 12, 16-17 (Bankr. D. Mass. 2002) ("In essence and at its core, a D&O policy remains a safeguard of officer and director interest and not a vehicle for corporate protection.").

6. The present facts are thus distinguishable from the facts of *Sacred Heart Hospital of Norristown*, 182 B.R. 413 (Bankr. E.D. Pa. 1995), which the Objectors cite to support their argument that proceeds are property of the estate "since the policy provided liability coverage to the Debtor itself." (*See* Objection at 11.) The present facts are also distinguishable from the facts of *Circle K Corp. v. Marks (In re Circle K Corp.),* 121 B.R. 257(Bankr, D. Ariz. 1990), which the Objectors also rely upon. In *Circle K*, the debtor had a claim for indemnification against the policy proceeds. Here, the Debtors have no indemnification claims related to the Action. To the extent the Debtors could have a claim for reimbursable legal fees with respect to matters unrelated to the Action, such claim could only relate to amounts paid from the Fund (which itself was capped at $3 million) that may be covered by the Policy, a *de minimis* amount as to which the $250 million of coverage is more than adequate. (Mot. ¶ ¶ 13.) It is well established that, "when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate." *In re Allied Digital Techs, Corp.*, 306 B.R. 505, 511(Bankr. D. Del. 2004); *see also, Youngstown Osteopathic Hosp. Ass'n v. Ventresco (In re Youngstown Osteopathic Hosp. Ass'n),* 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002) (finding policy proceeds were not property of the bankruptcy estate where there was not entity coverage and the debtor had not paid any defense costs such that it was not entitled to reimbursement).

---

entirety and all references in the Policy to Insuring Agreement (C) are deleted." *Id. See also* Objection ¶ 13, 16 ("Side C coverage … was dropped").

4

7. Nonetheless, the Debtors did not seek[6] and the Court need not make a determination on this issue to approve the Motion. Assuming, arguendo, that Policy proceeds are property of the Debtors' estates, the Debtors have established cause to lift the automatic stay and permit the relief requested in their Motion:

- Only $1.6 million of the Policy proceeds will be used to settle the Action. The Debtors believe, in their business judgment, that such amount is far less than the cost of defending continued litigation, which would further deplete the Policy. *See supra* ¶ 3.
- Settlement of the Action and payment through Policy proceeds eliminates or reduces potential indemnification claims that the D&Os may otherwise seek to assert against the Debtors. (Mot. ¶¶ 3, 24.) Thus, to the extent that Policy proceeds are depleted by use for Side A coverage, there will be a corresponding or greater reduction in Side B claims against the Policy proceeds.
- Settlement of the Action avoids the possible collateral estoppel effect on the Debtors that could result if a judgment or finding that could impact direct claims against the Debtors were made in the Action. (*Id.* ¶¶ 3, 23.)
- There is no immediate risk the Policy proceeds will be depleted. The Debtors maintained a total of $250 million in insurance coverage for the D&Os for the relevant time period. (*Id.* ¶¶ 13, 26.) To date, 15 months into these chapter 11 cases, only approximately $20 million has been depleted.
- The insurers are willing to fund the settlement payment, but may be unwilling to provide coverage for judgments that may be rendered against the D&Os if the Action were to continue.
- The D&Os are in immediate need of the Policy proceeds. As made clear in the Motion, the pending settlement agreement is contingent upon the Court approving this Motion. (Mot. ¶ 17.)

Indeed, the bankruptcy court in the case that the Objectors rely primarily upon lifted the automatic stay to permit the payment of directors' and officers' defense costs from insurance proceeds. *See In re Cybermedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002). That court concluded that the directors and officers were in immediate need of the funds and the harm to the debtors was speculative, there was no immediate risk that that policy proceeds would be

---

[6] *See* Proposed Order ("ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Policy are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Policy are, or are not, property of the Debtors' estates are hereby reserved;").

5

depleted, and that the entity had no direct coverage. *See id. See also In re Allied,* 306 B.R. at 513 (lifting the automatic stay to allow payment of policy of proceeds to directors and officers after finding policy proceeds were property of the estate).

8. Despite the foregoing, the Objectors argue no cause exists. The essence of their confused, singular argument is that "[f]or every dollar paid out to the D&O's there is one less dollar of coverage protecting the estates of [LBHI] and [Lehman Brother Inc.] against the claims against them." (Objection at 15.) But, as noted above, Policy proceeds are not available to satisfy any claims the Objectors may have against the Debtors. Policy proceeds are only available, if the insurers accept coverage, to satisfy claims against D&Os.

9. The Objectors seek to use the Debtors' chapter 11 cases to preserve and ration the Policy proceeds with respect to asserted, unproven claims against the Debtors not covered by the Policy and unasserted claims against the D&Os. The automatic stay extant in the Debtors' cases, however, does not protect creditors of the non-debtor D&Os. Moreover, it is a long path from filing of a proof of claim with a creative *ad damnum* clause to a liquidated judgment.

10. Exposing the weakness of their prior argument, the Objectors, as potential plaintiffs of unasserted claims against the D&Os, make the bizarre suggestion that the automatic stay should be extended to enjoin the Action. But the automatic stay is intended to protect a debtor, and the Objectors seek to extend the Debtors' automatic stay solely to protect themselves and their recovery from third parties. Additionally, a request to extend the automatic stay to non-debtor parties is not properly brought before the Court by an objection to a motion to lift the automatic stay. A request for injunctive relief requires, among other things, the commencement of an adversary proceeding. FED. R. BANKR. P. 7001.

11. The Objectors appear to just now realize that the race to the courthouse is not stayed with respect to non-debtor parties. They lament that they will now have to join others in the race, 2.5 years after they were allegedly harmed and 15 months after the commencement of these chapter 11 cases. Perhaps they wish an insurance company or other party would offer them a settlement. But this Court should not countenance their attempt to gain leverage in their parochial interests by denying the Motion and a delaying or derailing a valuable, cost-saving settlement.

WHEREFORE for all of the foregoing reasons and authorities, as well as those set forth in Motion, the Debtors respectfully request that the Court overrule the Objections and grant the Motion.

Dated: December 15, 2009
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession