SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Jay M. Goffman
George A. Zimmerman

Attorneys for Merrill Lynch International
 and Certain of its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC. | : | Case No. 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------ x

**REPLY OF MERRILL LYNCH INTERNATIONAL AND CERTAIN OF ITS
AFFILIATES IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER
(A) CONFIRMING ABILITY TO DELIVER NOTICE OF ACCELERATION WITH
RESPECT TO CERTAIN NOTES ISSUED BY FOREIGN AFFILIATE WITHOUT
RELIEF FROM THE AUTOMATIC STAY OR (B) GRANTING LIMITED RELIEF
FROM THE AUTOMATIC STAY TO DELIVER SUCH NOTICE**

Merrill Lynch International and certain of its affiliates (collectively, "ML") hereby replies to the objection [Dkt. No. 6121] (the "Objection") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), in which the Official Committee of Unsecured Creditors joined [Dkt. No. 6138], to ML's motion (the "Motion") for entry of an order (a) confirming their ability to deliver one or more notices of acceleration to Lehman Brothers Holdings Inc. ("LBHI") with respect to certain notes issued by Lehman Brothers Treasury Co. B.V. ("LBT") without relief from the automatic stay or (b) granting limited relief

from the automatic stay to deliver such notices [Dkt. No. 5958] (the "<u>Motion</u>"),[1] and respectfully states:

## INTRODUCTION

1. The gravamen of the Debtors' Objection to ML's Motion to deliver notices of acceleration to LBHI is that it seeks to increase ML's claims against LBHI as guarantor of the LBT notes held by ML, and therefore, violates the automatic stay. The Debtors' Objection fundamentally misconstrues the nature of the Motion.

2. ML has already filed its proofs of claim against LBHI as guarantor of the LBT notes. LBHI's bankruptcy filing served to accelerate those claims against LBHI as a matter of law, and the proofs of claim seek the full undiscounted values of the notes, as expressly provided in the LBHI Guarantee. At the appropriate point in these proceedings, this Court will ascertain the value of these claims, and LBHI can assert whatever arguments or objections it deems appropriate.

3. Through the Motion, ML seeks only to preserve its right to accelerate and determine the amount of its claims against LBT – not LBHI – in the Dutch proceedings. Under Dutch law, ML's claims did not automatically accelerate upon bankruptcy, but ML can accelerate its claims by a written acceleration notice during LBT's bankruptcy. Under the terms of the LBT notes, ML is required to serve such a notice of acceleration on both LBT and LBHI in order to accelerate the LBT notes and enable the Dutch court to ascertain the value of the notes. Thus, ML seeks only to preserve its day in court in the Dutch proceeding.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

4. It bears emphasis that numerous noteholders in ML's position have already served notices of acceleration on LBHI without seeking leave to do so – and LBHI has not so much as suggested that the automatic stay was implicated, let alone objected to the service of those notices. In addition, the LBT Trustee is on record as endorsing ML's ability to serve the notices of acceleration on LBHI,[2] as such service will facilitate the certainty of the claims process in the Dutch proceeding. For all these reasons, as set forth herein and in the Motion, ML's Motion should be granted.

## STAY RELIEF, IF REQUIRED, SHOULD BE GRANTED

5. There is no rigid test for determining whether "cause" for stay relief under Bankruptcy Code section 362(d) exists; it is determined on a case-by-case basis. *See Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990). The application of the *Sonnax* factors guides the determination of whether stay relief should be granted. In some situations, as here, only a portion of the factors are relevant. Further, the weighting of such factors varies depending on the facts.

6. In a somewhat similar matter, this Court noted that "[e]veryone recognizes that balancing the harms represents the fundamental question." Hr'g. Tr. at 147, *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 22, 2008) (the "Dec. 22, 2008 Hr'g Tr.") (Peck, J.);[3] *see Sonnax*, 907 F.2d at 1286. Therefore, ML focuses on the balance of

---

[2] *See The Trustees for Lehman Brothers Treasury Co. B.V.'s Statement in Connection with the Motion by Merrill Lynch International and Certain of its Affiliates for Entry of an Order (A) Confirming Ability to Deliver Notice of Acceleration with Respect to Certain Notes Issued by Foreign Affiliate Without Relief from the Automatic Stay or (B) Granting Limited Relief from the Automatic Stay to Deliver such Notice* [Dkt. No. 6161] (the "LBT Statement").

[3] The relevant portion of the Dec. 22, 2008 Hr'g Tr. is attached hereto as Exhibit A.

harms. Nonetheless, additional *Sonnax* factors also support stay relief, as discussed further below.

### A.   Delivery of the Acceleration Notice Would Not Harm LBHI.

7.   Contrary to the Debtors' assertions, the delivery of the acceleration notice would not harm LBHI. Indeed, the Debtors appear to misunderstand the relief requested by ML. ML seeks to deliver the acceleration notice to LBHI only because such delivery is a contractual requirement for accelerating the notes against LBT.

8.   ML does not seek to accelerate claims against LBHI. Such relief is unnecessary because all claims against LBHI – including ML's claims under the LBT notes – were automatically accelerated upon LBHI's bankruptcy filing. Courts in this Circuit, including cases cited in the Objection, have held that filing bankruptcy "automatically accelerate[s]" all of the debtor's obligations. *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984) (citing numerous cases), *aff'd in part, rev'd in part on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986); *see also In re Ridgewood Apts. of DeKalb County, Ltd.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) ("Even without specific contractual language, a bankruptcy filing acts as an acceleration of all [of] a debtor's obligations."); *In re Johns-Manville Corp.*, 36 B.R. 727, 740 (Bankr. S.D.N.Y. 1984) (bankruptcy filing "triggered the acceleration of . . . debt which had not been due prior to the filing"). Second Circuit courts have also held that such automatic acceleration also occurs where a creditor, like ML, seeks relief from the automatic stay. *In re PCH Assocs.*, 122 B.R. 181, 198 (Bankr. S.D.N.Y. 1990) (citing *In re LHD Realty Corp.*, 726 F.2d 327 (7th Cir. 1984)).

9.   The Debtors misconstrue ML's effort to limit the Present Value Adjustment as an effort "to race past LBHI's other creditors and elevate itself above them," (Objection ¶ 15.) when

such relief does not affect ML's claims against LBHI.[4]  The liability of LBT and LBHI on the notes are separate matters.  LBT's liability is subject to the LBT Trustee's valuation principles (including the Present Value Adjustment) and the Dutch court.  In contrast, LBHI's liability is a contractual matter determined by reference to the Guarantee.  As discussed further below, the Guarantee obligates LBHI to pay the contractual amount due under the LBT notes notwithstanding any Present Value Adjustment that may be applicable in Dutch insolvency proceedings.

10.    The Guarantee provides, repeatedly, that LBHI will be obligated for any amount due under a LBT note that LBT does not pay, whether or not such amount is enforceable against LBT.  *See* Guarantee, §§ 2.1, 2.2, 2.3 and 3.1.  Section 2.3 even provides that LBHI is obligated to pay any sum "expressed to be payable" under a LBT note "which is for any reason (including, without limitation, by reason any provision of any [LBT note] . . . being or becoming void, unenforceable or otherwise invalid under any applicable law) . . . not recoverable from [LBHI] on the basis of a guarantee, will nevertheless be recoverable from [LBHI] as if it were the sole principal debtor."  Thus, claims against LBT, as a debtor in a Dutch insolvency, may be reduced by the Present Value Adjustment, but claims against LBHI are not subject to the same limit (regardless of whether stay relief is granted).[5]  Through the Guarantee, LBHI expressly waived

---

[4]   It is true that ML seeks to limit the effect of the Present Value Adjustment with respect to its claims against LBT.  (Objection ¶ 12.)  However, this is not a basis for denying relief from the stay.  The automatic stay protects debtors in Chapter 11 not non-debtors in foreign proceedings.

[5]   Notably, this result is consistent with both (a) section 8.3 of the Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies, which expressly contemplates creditors having claims, in differing amounts, against the obligor and the guarantor and (b) the LBT Report, which "address[es] the valuation of claims under [Dutch law], and not the valuation of any claims under the guarantees granted by LBHI to Noteholders of LBT."  *See* LBT Report, § 6.1.1.

any such defense and provided that LBHI would pay the contractual amount even if LBT's liability was limited by law.

11.   Under New York law, which governs the Guarantee, if sophisticated "parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984); *Ursa Minor Ltd. v. AON Fin. Prods., Inc.*, No. 00 Civ. 2474 (AGS), 2000 WL 1010278, at *6 (S.D.N.Y. July 21, 2000) (enforcing a credit default swap on similar basis), *aff'd*, 7 F. App'x 129 (2d Cir. 2001).  Indeed, New York courts have repeatedly upheld waivers rendering a guarantor liable even in circumstances where the obligor may not be liable.  *E.g., Marine Midland Bank, N.A. v. Walter Pearlstein, Inc.*, 572 N.Y.S.2d 789, 791-92 (3d Dep't 1991) (finding that where guarantee "clearly and unambiguously provided that [guarantor's] obligation . . . would not be affected by the 'invalidity or enforceability of the [underlying obligor's] indebtedness' . . . guarantor may not escape liability" even if debt was unauthorized or guaranty was fraudulently induced); *Bank of N.A. v. Shapiro*, 298 N.Y.S.2d 399, 401 (1st Dep't 1969) (similar and noting that guarantor would be liable "even where the principal may escape liability"); *Manufacturer's Hanover Trust Co. v. Green*, 464 N.Y.S.2d 474, 475-76 (1st Dep't 1983) (same), *appeal dismissed*, 61 N.Y.2d 760 (N.Y. 1984).

12.   As a result, under the Guarantee, which is enforceable under New York law, LBHI is liable for the contractual amount due under the LBT notes, subject to the Bankruptcy Code, but not subject to any Present Value Adjustment.  The fact that LBHI is bound under the LBT notes even where LBT is not further underscores the ministerial nature of the relief ML requests against LBHI – merely allowing delivery of a piece of paper so that ML can preserve its rights against LBT.

13. Notably, because ML does not seek allowance of its claims today, LBHI retains its ability to object to claims based on the LBT notes during LBHI's claims reconciliation process. This is further evidence that LBHI is not "harmed" by stay relief permitting delivery of an acceleration notice with respect to the LBT notes.

14. Moreover, relief to provide an acceleration notice to LBHI is no guarantee that ML's claims will be accepted by the LBT Trustee and/or the Dutch court. ML is merely seeking to preserve its rights to make an argument in the Dutch proceeding.

15. Finally, as this Court has recognized in similar circumstances, LBHI would not be harmed even if an increase in claims against LBHI resulted. Dec. 22, 2008 Hr'g Tr. at 148 (Peck, J.) (noting that argument analogizing to Bankruptcy Rule 9006 was "quite persuasive in suggesting that there is no harm [to a debtor from assertion an additional claim], it's just a claim, one of many.").

### B. Inability to Deliver the Acceleration Notice Would Seriously Harm ML.

16. In contrast, ML would be seriously harmed if not permitted to deliver the acceleration notice to LBHI. ML would be denied the ability to comply with the contractual requirements for acceleration of the LBT notes. Therefore, ML's efforts to accelerate the notes against LBT may be denied by the LBT Trustee and/or the Dutch court. As a result, absent the requested relief, ML's claims against LBT would slowly evaporate over time, and ML would be deprived of its contractual right to fix its claim amount against LBT. Preventing ML from accelerating the LBT notes would conflict with the LBT Trustee's desire for certainty regarding claims against LBT. (*See* LBT Statement ¶ 23.) Further, ML would have been deprived of its contractual right to crystallize its claims and would unnecessarily subject ML to the uncertainty regarding the treatment of unaccelerated notes under Dutch law.

17.     Further, such a result may uniquely disadvantage ML's claims against LBT. Upon information and belief, a number of parties have served LBHI with purported acceleration notices relating to LBT notes,[6] as part of proofs of claim or otherwise, without response from LBHI. ML does not question the validity of these acceleration notices; indeed, ML believes that stay relief is not required to provide LBHI with an acceleration notice relating to LBT's notes. However, ML's decision to seek stay relief out of an abundance of caution should not prevent ML from delivering acceleration notices. It would be the height of inequity for the stay to affect only the party that sought relief from the stay. ML would have been punished for seeking permission rather than forgiveness.

18.     Contrary to the Debtors' assertions (Objection ¶ 4.), the valuation of unmatured and unaccelerated LBT notes remains uncertain. The LBT Report contains only *provisional* valuation principles reflecting the LBT Trustee's "preliminary view." (LBT Statement ¶¶ 9-12.) Even once finalized, the LBT Trustee's valuation principles are subject to the approval of a Dutch court. (LBT Statement, ¶ 10.)

C.      **Additional *Sonnax* Factors Support Stay Relief.**

19.     Contrary to the Debtors' assertion (Objection ¶ 12.), multiple relevant *Sonnax* factors weigh in favor of granting the Motion. *See Sonnax*, 907 F.2d at 1286. Surely the Dutch court is a "specialized tribunal with the necessary expertise" to consider ML's claims against LBT under Dutch law. *Id.* Litigation in the Dutch court regarding LBT's liabilities to ML will not "prejudice the interests" of LBHI's other creditors, most of whom have no direct claim against LBT. Further, granting relief to ML furthers the "interests of judicial economy" by

---

[6] For instance, through July 2009, the LBT Trustee had received 181 acceleration notices for notes issued by LBT. *See* LBT Trustee's Bankruptcy Report No. 3, § 6.6, dated July 22, 2009, a copy of which is attached hereto as
*(cont'd)*

permitting the parties to begin addressing the issues presented by the LBT notes, rather than letting these matters fester through delay.

## STANDING

20.     The Debtors concede that ML has standing to seek the relief requested in the Motion with respect to the LBT notes that ML currently holds.  However, the Debtors allege without basis that ML "failed or refused to identify" the LBT notes it holds.  (Objection ¶ 5.) The Debtors could have easily obtained such information, if desired, regarding ML's notes from the proofs of claim that ML has filed.  ML offered to provide additional information to the Debtors, including identifying the LBT notes to be accelerated, upon the execution of a standard confidentiality agreement, but ML's offer was rejected by the Debtors.

21.     In effect, the Motion asks the Court to bless a concept:  whether holders of LBT's notes should be permitted to send an acceleration notice to LBHI to preserve their rights against LBT in the Dutch proceeding.  This fundamental issue does not change depending on the series or amount of LBT's notes that are held.  ML merely seeks to ensure that the relief, if any, granted in respect of the Motion is applicable in the future.  This is merely an effort to achieve efficiency and minimize the imposition on the Court's time.

---

*(cont'd from previous page)*
    Exhibit [__].  Upon information and belief, acceleration notices have been sent with respect to billions of dollars, in principal amount, of LBT notes.

## CONCLUSION

WHEREFORE, ML respectfully requests that the Court overrule the Objections and enter an order, in substantially the form attached to the Motion, and such other and further relief as it deems just and proper.

Dated: New York, New York
December 15, 2009

    Skadden, Arps, Slate, Meagher & Flom LLP

    By:   */s/ Jay M. Goffman*
          Jay M. Goffman
    George A. Zimmerman
    Four Times Square
    New York, New York 10036
    Telephone:  212-735-3000
    Facsimile:  212-735-2000

    Attorneys for Merrill Lynch International
     and Certain of its Affiliates