**EXHIBIT A**

**RELEVANT PORTION OF TRANSCRIPT FROM DECEMBER 22, 2009 HEARING**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555 (JMP)

       08-01420 (JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.

    Debtors.

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

    Debtor.

- - - - - - - - - - - - - - - - - - - - -x

        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        December 22, 2008

        10:14 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1
2   I.   UNCONTESTED MATTERS:
3   HEARING re Debtors' Motion for Entry of Order Pursuant to
4   Sections 105 and 363 of the Bankruptcy Code and Federal Rules
5   of Bankruptcy Procedure 2002, 6004, and 9019 (i) Authorizing
6   Lehman Brothers Holdings Inc. to Enter into a Settlement
7   Agreement with Certain French Affiliates Relating to
8   Intercompany Claims, (ii) Authorizing Lehman Brothers Holdings
9   Inc. to Vote Its Shares in French Affiliate to Approve Sale of
10  Substantially All of the Assets of and Voluntary Dissolution of
11  Such Affiliate and (iii) Granting Certain Related Relief
12
13  HEARING re LBHI's Motion, Pursuant to Sections 105(a) and 365
14  of the Bankruptcy Code, for Authorization to Assume
15  Administrative Services Agreement with Aetna
16
17  HEARING re LBHI's Motion, Pursuant to Sections 105(a) and 365
18  of the Bankruptcy Code and Bankruptcy Rules 6006 and 9014, for
19  Authorization to Reject Prescription Drug Program Master
20  Agreement with Medco
21
22  II.  CONTESTED MATTERS:
23  HEARING re Motion for Relief from Stay Motion of OMX Timber
24  Finance Investments II, L.L.C. For Limited Relief from the
25  Automatic Stay

```
                                                                    3
 1

 2    HEARING re Debtors' Motion for an Order Pursuant to Section 365

 3    of the Bankruptcy Code Approving the Assumption or Rejection of

 4    Open Trade Confirmations

 5

 6    HEARING re Debtors Motion to (A) Establish Sales Procedures;

 7    (B) Approve a Seller Termination Fee and a Reimbursement

 8    Amount; and (C) Approve the Sale of the Purchased Assets and

 9    the Assumption and Assignment of Contracts Relating to the

10    Purchased Assets

11

12    SECURITIES INVESTOR PROTECTION CORPORATION PROCEEDINGS:

13    III. CONTESTED MATTERS:

14    HEARING re Trustee's Motion under 11 U.S.C. 105 and 363 and

15    Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving

16    Settlement Agreement

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib
```

146

1  THE COURT: Yes. But my question was whether if you
2  assume away for a moment the Lehman guarantee and you were
3  simply looking simplistically at a borrower that presumably had
4  cash flow that matched the obligations at the time that this
5  transaction was set up, is there such a borrower and is it
6  generating cash flow?
7  MR. WILAMOWSKY: I think the answer is that there is
8  such a borrower, but it's source of cash -- of payment was a
9  different Lehman entity. And, therefore, it doesn't have any
10  source of cash flow.
11  THE COURT: Okay. So that source is dried up.
12  MR. WILAMOWSKY: Right.
13  THE COURT: All right, thank you.
14  MR. WILAMOWSKY: Thank you, Your Honor.
15  THE COURT: I'm not going to decide this today. But
16  what I am going to do is to provide that when I do decide it it
17  will relate back to today.
18  This means that the moving party, OMX, has at least
19  done what it needed to do timely to get stay relief that speaks
20  as of a date prior to the notional deadline of December 27.
21  The reason I'm not deciding it today is that I don't
22  have enough information yet. I've asked any number of
23  questions and the answers are not anything other than lawyers,
24  and that's fine, telling me to the best of their ability what
25  they think the facts are. But as Mr. Fail has pointed out in

147

his comments on behalf of the debtor, the debtor reserves all of its rights to the actual facts and what the evidence would show if we had an evidentiary hearing, which today is not.

I think there is a need for an evidentiary hearing in this instance. And there are a number of questions that I have. The first general question is to understand the structure more fully than I do now. Why it was set up the way it was set up, the purposes to be served by the various notice provisions, and a better understanding based upon the underlying transaction documents as to why notice within a certain period of time is deemed to be an important condition to the obligations of Lehman as guarantor.

Everybody recognizes that balancing the harms represents the fundamental question here. And I'm getting mixed messages from the parties as to just what kind of harm that is. I'd like to know more from the moving party OMX, as to the actual harm to be encountered by virtue of a denial of the requested relief. I'm particularly troubled by the fact that the indentured trustee appears to have, at least at some level, mooted the motion by delivering under whatever kind of cover letter was carefully created by counsel, what appears to be a demand notice covering the very same subject matters of the pending motion. Assuming there is efficacy to that demand, and I don't know if there is or there isn't, this is a motion I could easily deny. To the extent that there's no efficacy the

148

1    notice may be a nullity, or may be liability creating.
2             I want to know a lot more than I know right now as to
3    why that notice was sent and what color of law was cited in the
4    cover letter that gave the trustee the authority to send it in
5    the first instance on Thursday.
6             In terms of the harm to the debtor I think that Mr.
7    Wilamowsky's argument was quite persuasive in suggesting that
8    there is no harm, it's just a claim, one of many.  And that the
9    business of bankruptcy is not to erect artificial barriers to
10   keep legitimate claims outside the bankruptcy court.
11            I'd like to know more from the debtor in particular
12   as to what harm is associated with permitting this claim to be
13   asserted now.  While it's not a matter for an evidentiary
14   hearing, I think it's worth noting that my curiosity has at
15   least been aroused by the role reversal associated with the
16   current controversy.  The principal party opposing this motion
17   for stay relief is not the debtor, it's the creditors'
18   committee.  The debtor joined in the position articulated by
19   the committee, but is hardly carrying the laboring law on this
20   one.  I'd like to know more about the debtor's position.  I
21   understand that the creditors' committee is a watchdog, but
22   this watchdog is doing more than I think is appropriate in this
23   instance.  This is a situation in which the debtor should be
24   asserting positions on behalf of the estate.  For some reason
25   it's in a joinder role, I want to know why.  Is there anyone at

1   the debtor who has evaluated this, who has considered whether
2   or not there is actual merit to the harm argument being made by
3   the creditors' committee.  I heard the argument, but I'm not
4   particularly persuaded that there is cognizable harm to the
5   estate, unless this is a situation in which a claim that would
6   not otherwise exist is, in effect, being activated by the
7   demand notice.
8            For that reason, I'd like some supplemental briefing
9   in addition to a further evidentiary hearing.  Are there really
10  only two cases that deal with this subject matter.  Or by
11  analogy are there other situations in which courts have
12  permitted notices to be given, not necessarily in the context
13  of a guarantee, but in other settings.  Or in which other
14  action has been permitted in order to give a claimant the
15  ability to pursue claims in bankruptcy by satisfying non-
16  bankruptcy conditions precedent.
17           I suggest that the parties meet and confer regarding
18  a schedule for both, the evidentiary hearing and supplement
19  briefing, consistent with these remarks.
20           Meanwhile, the automatic stay will continue in affect
21  because I'm not ruling.  But when I do rule, as I will
22  eventually, it will be as of today's date, nunc pro tunc.
23           Any questions?  We're adjourned.
24        (Whereupon these proceedings were concluded at 4:13 p.m.)
25