**Objection Deadline:  January 6, 2010 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time:  January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                            :   Chapter 11 Case No.
                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*     :   **08-13555 (JMP)**
                                                 :
                        Debtors.                 :   (Jointly Administered)
-------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION TO STRIKE WILLIAM KUNTZ'S**
**NOTICE OF APPEAL OF THE ORDER AUTHORIZING LEHMAN**
**COMMERCIAL PAPER INC. TO PURCHASE FAIRPOINT PARTICIPATION**
**OR, IN THE ALTERNATIVE, TO DISMISS WILLIAM KUNTZ'S APPEAL**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LCPI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") to strike from the record of these cases the notice of appeal of the order of this Court, entered on October 16, 2009, authorizing LCPI to purchase a participation in the loan known as FairPoint Communications Term Loan A from Variable Funding Trust 2008-1 [Docket No. 5551] (the "FairPoint Order") filed by William Kuntz, III ("Kuntz") or, in the alternative, to dismiss Kuntz's appeal of the FairPoint Order, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **January 6, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 16, 2009
       New York, New York

/s/Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Objection Deadline:  January 6, 2010 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time:  January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                        :        Chapter 11 Case No.
                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (JMP)**
                                             :
                     **Debtors.**              :        **(Jointly Administered)**
-------------------------------------------------------------------x

**DEBTORS' MOTION TO STRIKE WILLIAM KUNTZ'S**
**NOTICE OF APPEAL OF THE ORDER AUTHORIZING LEHMAN**
**COMMERCIAL PAPER INC. TO PURCHASE FAIRPOINT PARTICIPATION**
**OR, IN THE ALTERNATIVE, TO DISMISS WILLIAM KUNTZ'S APPEAL**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Commercial Paper Inc. ("LCPI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors"), respectfully submit this motion (the "Motion") to strike from the record of these cases the notice of appeal (the "Notice of Appeal") of the Order Authorizing Lehman Commercial Paper Inc. to Purchase Fairpoint Participation, entered on October 16, 2009 [Docket No. 5551] (the "FairPoint Order"), filed by William Kuntz, III ("Kuntz") or, in the alternative, to dismiss Kuntz's appeal of the FairPoint Order (the "Appeal"), from the record of these cases and respectfully represent:

**Preliminary Statement**

1.          Kuntz, who is no stranger to this Court or the court system in general, appeared just three days into these cases, not as a concerned creditor genuinely asserting his

rights in accordance with the procedures of this Court and the laws and rules governing these cases, but, rather, as an individual lacking respect for such procedures and the resources of this Court and the Debtors' estates.  Once again and in accordance with his past practices, Kuntz has ignored the procedures of this Court by untimely filing a motion to enlarge the period to appeal the FairPoint Order without noticing it for hearing and untimely filing a notice of appeal (the "<u>Notice of Appeal</u>") of the FairPoint Order to the United States District Court for the Southern District of New York (the "<u>District Court</u>"), forcing the Debtors to expend their resources responding and taking up more of this Court's valuable time.

2.    While filing a notice of appeal ordinarily divests this Court of jurisdiction and transfers the issue being appealed to the District Court, one significant exception to that general rule is when, as here, the notice of appeal is not timely filed.  Under such circumstances, the Court has authority to consider and rule upon a motion to strike the notice of appeal. Accordingly, the Debtors respectfully request that the Court strike the Notice of Appeal from the record of these cases.  In the alternative, should this Court decline to strike the Notice of Appeal, then the Debtors respectfully request that the Court dismiss the Appeal for the same reasons set forth herein.

3.    Although Kuntz is a *pro se* litigant, under well-established law he must adhere to all rules of procedure, including with respect to the timely filing of appeals.  Because Rule 8002(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") is jurisdictional, Kuntz's failure to follow the applicable statutory procedures is fatal to the validity of his appeal of the FairPoint Order.  Moreover, although Kuntz has filed a motion pursuant to Bankruptcy Rule 8002(c) seeking to extend the time in which to file a notice of appeal (the "<u>Motion to Extend</u>"), the Motion to Extend was itself filed untimely and was never noticed for

hearing or prosecuted by Kuntz.  Accordingly, the Notice of Appeal should be stricken from the record of these cases or, alternatively, the Appeal should be dismissed.

## **Background**

4.     Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. and certain of its subsidiaries, including LCPI, commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## **The FairPoint Order**

8.     On September 17, 2009, LCPI filed the Motion of Lehman Commercial Paper Inc. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for

Authorization to Purchase FairPoint Participation [Docket No. 5199] (the "FairPoint Motion").

The FairPoint Motion requested, among other things, authorization for LCPI to purchase a

participation in the loan known as FairPoint Communications Term Loan A (the "FairPoint

Participation") from Variable Funding Trust 2008-1.

            9.      On October 2, 2009, Kuntz filed an omnibus objection [Docket No. 5333]

(the "Objection") to the FairPoint Motion as well as a separate unrelated motion filed by LCPI

for authorization to enter into certain transactions related to the SunCal chapter 11 cases

currently pending in the United States Bankruptcy Court for the Central District of California

(the "SunCal Motion").  On October 7, 2009, the Court held a hearing on the SunCal Motion,

which Kuntz failed to attend.  The Court granted the SunCal Motion and overruled Kuntz's

objection to the SunCal Motion, characterizing Kuntz's objections as, among other things, "not

relevant to the matter before the Court"  *See* Tr. of Oct. 7, 2009 Hr'g, at 13:13– 14 (attached

hereto as Exhibit A).

            10.     On October 14, 2009, the Court held a hearing on the FairPoint Motion,

which Kuntz also failed to attend.  The Court granted the FairPoint Motion at the hearing, and

indicated that the Objection was "inapposite to the motion."  *See* Tr. of Oct. 14, 2009 Hr'g, at

31:16 (an excerpt of which is attached hereto as Exhibit B).  The Court further incorporated its

disposition of the Objection from the record of the SunCal Hearing into the record of the

FairPoint Hearing. *See Id*. at 30: 7-10.

            11.     On October 16, 2009, the Court entered the FairPoint Order, authorizing

LCPI's purchase of the FairPoint Participation, effective immediately notwithstanding the stay

pursuant to Bankruptcy Rule 6004(h).

### Kuntz's Procedurally Improper Attempts to Appeal the FairPoint Order

12.     On October 27, 2009, Kuntz filed with this Court a motion to extend the time to appeal the Order Denying Stay Relief (the "Motion to Extend") [Docket No. 5718]. Disregarding procedural rules, Kuntz untimely filed the Motion to Extend.  The Order was dated October 16, 2009, requiring Kuntz to file a Motion to extend on or before October 26, 2009.  *See* Fed. R. Bankr. P. 8002 (requiring a request to extend the time for filing a notice of appeal to be made within ten days of the date of the entry of the appealed order absent a showing of excusable neglect).  In addition to being filed untimely, the Motion to Extend did not set a hearing date, as required by the Amended Order Implementing Certain Notice and Case Management Procedures, dated February 13, 2009 (the "Case Management Order") [Docket No. 2837], and Kuntz, not surprisingly, never prosecuted the Motion to Extend.  As a result, this Court has not ruled on the Motion to Extend.   Putting aside the procedural deficiencies of the Motion to Extend, the relief requested in the Motion to Extend was moot as LCPI had already purchased the FairPoint Participation.

13.     Notwithstanding that the Court had not ruled on the Motion to Extend, on November 16, 2009 – 31 days after the entry of the FairPoint Order – Kuntz filed the Notice of Appeal [Docket No. 5853] seeking to appeal the FairPoint Order.  Accordingly, the appeal was untimely under Bankruptcy Rule 8002(a).  *See* Fed. R. Bankr. P. 8002(a) ("The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from.").

14.     On December 1, 2009 and again disregarding procedural rules, Kuntz filed the statement of issues on appeal and designation of items to be included in the record on appeal (the "Statement of Issues and Designation") [Docket No. 6017].  Bankruptcy Rule 8006 requires

that an appellant file a designation of the items to be included in the record on appeal and a

statement of the issues to be presented within 10 days of filing the notice of appeal.  *See* Fed. R.

Bankr. P. 8006.  Thus, Kuntz's Statement of Issues and Designation was also untimely filed.

15.    On December 11, 2009, out of an abundance of caution, the Debtors filed

their statement of issues and counter-designation of additional items to be included in the record

on appeal in response to Kuntz's Statement of Issues and Designation [Docket No. 6133].

## Jurisdiction

16.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§ § 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. § § 1408 and 1409.

17.    Although ordinarily the filing of a notice of appeal deprives a bankruptcy

court of jurisdiction to proceed with matters related to such appeal, *see* Fed. R. Bankr. P.

8001(a), where, as here, a notice of appeal is *untimely* filed, the bankruptcy court properly may

adjudicate a motion to strike the notice of appeal or, in the alternative, dismiss the untimely

appeal.  *See, e.g.*, *Williams v. EMC Mortgage Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th

Cir. 2000) (upholding district court's affirmance of bankruptcy court's dismissal of appeal for

untimeliness); *Stepflug v. Fed. Land Bank of St. Paul*, 790 F.2d 47, 51 (7th Cir. 1986)

(bankruptcy court granted appellee's motion to dismiss untimely appeal and district court

affirmed; court of appeals ultimately reversed on grounds other than the bankruptcy court's

jurisdiction to decide motion to dismiss); *Gravel & Shea v. Vt. Nat'l Bank*, 162 B.R. 969, 972 n.2

(D. Vt. 1993) (noting that "the Bankruptcy Court could consider the timeliness of [a] notice of

appeal in the context of a motion to dismiss the appeal as untimely filed," but because the

question of timeliness of the notice had not been presented to the Bankruptcy Court, the District

Court must determine whether to dismiss the appeal as untimely); *In re Bushnell*, 273 B.R. 359, 360 (Bankr. D. Vt. 2001) (granting motion to dismiss untimely appeal); *Beiwel v. Sallie Mae Servicing (In re Beiwel)*, No. 00-00112-W, 2001 WL 753778, at *3 (Bankr. N.D. Iowa June 12, 2001) (granting motion to dismiss untimely *pro se* appeal).   Thus, as discussed more fully below, because Kuntz's Notice of Appeal was not timely filed, this Court has jurisdiction to adjudicate the Motion and strike the Notice of Appeal.

## The Notice of Appeal Should be Stricken from the Record.

### I.   *Kuntz's Failure to Timely File a Notice of Appeal Precludes Appellate Review.*

18.   Kuntz's appeal of the Order is invalid and precludes review by the District Court.  The timely filing of an appeal of a bankruptcy court's order is essential to the validity of the appeal.  Bankruptcy Rule 8001(a) provides:

> (a) *Appeal as of Right; How Taken.*  An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel . . . shall be taken by filing a notice of appeal with the clerk *within the time* allowed by Rule 8002. An appellant's failure to take any step *other than timely filing the notice of appeal* does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal.

Fed. R. Bankr. P. 8001(a).   The statutory language clearly provides that an appeal from a bankruptcy court's order is valid only if the notice of appeal is filed within the ten-day time period set forth in Bankruptcy Rule 8002.  *See* Fed. R. Bankr. P. 8002(a).   As the Notice of Appeal was filed outside the ten-day period, the Appeal is invalid.

19.   Significantly, the ten-day period is strictly construed, and courts require strict compliance with its terms.  *Twins Roller Corp. v. Roxy Roller Rink Joint Venture*, 70 B.R. 308, 310 (S.D.N.Y. 1987); *Stephen Rose & Partners, Ltd. v. Togut, Segal & Segal (In re Satellite*

*Sys. Corp.)*, 73 B.R. 610, 611 (S.D.N.Y. 1987).  Further, Bankruptcy Rule 8002(a) is

jurisdictional, such that "[f]ailure to file a timely notice of appeal thus deprives the district court

of jurisdiction to review the bankruptcy court's order or judgment."  *Twins Roller Corp.*, 70 B.R.

at 310 (collecting cases); *accord Peryea v. Town of Plattsburgh (In re Peryea)*, No. 96-5041,

1997 WL 50015, at *2 (2d Cir. Jan. 17, 1997); *Montco, Inc. v. Barr (In re Emergency Beacon

Corp.)*, 666 F.2d 754, 758 (2d Cir. 1981); *Joslin v. Wechsler (In re Wechsler)*, 246 B.R. 490, 492

(S.D.N.Y. 2000); *In re Satellite Sys. Corp.*, 73 B.R. at 611; *French Bourekas, Inc. v. Turner*, 199

B.R. 807, 813 (E.D.N.Y. 1996) ("The failure to file a notice of appeal within the ten-day period

is a jurisdictional defect, which requires dismissal of the appeal."); *In re Bushnell*, 273 B.R. at

362-63 (collecting cases supporting the "well settled" principle that "the filing requirements of

[Bankruptcy] Rule 8002 are jurisdictional and failure to timely file a notice of appeal precludes

appellate review.").  Thus, the District Court is without jurisdiction to review the Order.

   20. Most recently, *In re Loral Space & Communications Ltd., et al.*, Judge

Drain granted the reorganized debtors' motion to dismiss an appeal of this Court's order that was

filed by a *pro se* litigant one day after the expiration of the statutory period for filing a notice of

appeal.  Case no. 03-41710 (RDD), Order at 2-3 (Bankr. S.D.N.Y. June 18, 2009), attached

hereto as <u>Exhibit C</u>.  Judge Drain did not issue a written opinion regarding the reorganized

debtors' motion to dismiss the untimely appeal.  However, while ruling from the bench, Judge

Drain addressed the jurisdictional issue and found the following:

> Generally speaking, the filing of a notice of appeal divests the
> lower court of jurisdiction over matters covered by the appeal.
> However, the timely filing of a notice of appeal is mandatory in
> jurisdiction.  If the notice is not timely filed, the Appellate Court
> is without jurisdiction to hear the appeal . . . .
>
> More specifically, this issue has been addressed by, at least, one
> court directly.  Where the court found that the Bankruptcy Court

> had jurisdiction to consider the timeliness of the notice of appeal
> as this ruling said.  The notice of appeal from the final order
> generally deprives a lower court over [sic] jurisdiction over the
> merits of the matter subject to appeal.  However, the Bankruptcy
> Court retains certain authority concerning the timeliness of the
> appeal.  Including, for example, the authority to extend the
> period of time for filing a notice of appeal, pursuant to Rule
> 8002(c) . . . .
>
> So I believe that it is appropriate for me to decide this issue.

*See* Tr. of June 16, 2009 Hr'g at 11:21 – 12:16, case no. 03-41710 (RDD), attached hereto as

Exhibit D.  Judge Drain's bench-ruling is consistent with the statutory language of Bankruptcy

Rule 8001(a) and related case law.  *See* Fed. R. Bank. P. 8001(a).

21.    In this case, the Order was entered on the Court's docket on October 16,

2009.  Therefore, the ten-day period in which to file a notice of appeal of the Order expired on

October 26, 2009.  *See* Fed. R. Bankr. P. 8002(a).  Kuntz did not file his Motion to Extend until

after the expiration of such period on October 27, 2009.  Accordingly, the Appeal is not valid

and the District Court is precluded from reviewing the Order.  Therefore, the Notice of Appeal

should be stricken from the record of these cases or, alternatively, the Appeal should be

dismissed.

## II.    The Court Should Give No Weight to Kuntz's Pro Se *Status.*

22.    The fact that Kuntz is appearing *pro se* does not compel a different result.

It is well-settled that *pro se* litigants must adhere to all rules of procedure, and, a lack of

knowledge of such rules, although Kuntz could not prove one here,  is not a defense.  *See Green*

*v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (dismissal of complaint appropriate where *pro se*

plaintiff failed to comply with local rules).  Many Circuit Courts, including the Second Circuit,

have recognized that "*pro se* litigants are not entitled to a general dispensation from the rules of

procedure or court imposed deadlines."  *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994);

accord *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).  This rule applies with

equal strength in the context of the timeliness of the filing of an appeal.  *See, e.g., Campos v.*

*LeFevre*, 825 F.2d 671, 675 (2d Cir. 1987) (adopting a strict position with respect to the

timeliness of *pro se* appellant's appeal, notwithstanding that such rule may be "Draconian,"

especially "[a]s we deal more and more frequently with *pro se* appeals and laymen unfamiliar

with the intricacies of federal civil procedure, let alone the rules of appellate practice"); *accord*

*Poole v. Family Court of New Castle County*, 368 F.3d 263, 269 (3d Cir. 2004) (adopting

stringent rule with respect to appeals despite recognition that it may lead to "harsh results" for

*pro se* litigants); *In re Furst*, 206 B.R. 979, 981 (B.A.P. 10th Cir. 1997) (holding that *pro se*

appellant was not relieved of its responsibility to follow rules setting out the deadline for filing a

notice of appeal, as it is the risk the party assumes when it opts to proceed *pro se*); *In re Dow*

*Corning Corp.*, 255 B.R. 445, 466 (E.D. Mich. 2000) (dismissing a number of untimely appeals,

including several *pro se* appeals, and citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991),

for proposition that "although a person proceeding *pro se* may not fully understand the rules or

procedure, he or she is still required to comply with the rules. . . . [A] *pro se* status does not

exempt a person from complying with the rules."); *In re Beiwel*, 2001 WL 753778, at *3

(dismissing appeal of *pro se* appellant who "was solely in control of the time for filing his notice

of appeal and was not mislead or misinformed at any stage.  It was his duty to inform himself of

the appeal deadline . . .").

   23. Moreover, as this Court well knows, Kuntz is no ordinary *pro se* litigant.

The Debtors again direct the Court to a decision issued by the District Court <u>over 15 years ago</u>,

in which the District Court found that

> Kuntz's status as a *pro se* litigant is of little import. During his
> fourteen-year participation in the underlying Grant bankruptcy

> proceedings, Kuntz has amassed litigation experience that would embarrass the majority of associates, and some partners, at large New York law firms. He has already filed no fewer than eight appeals, all unsuccessful, with six dismissed as either untimely or for failure to prosecute. I had to adjourn one conference in this action because Kuntz had an argument before the Second Circuit. Although I am unsure what significance to give to the ten years that Kuntz purportedly spent in law school, I find that his failure to comply with court rules, procedures, and deadlines is the result of conscious disregard, and not because of unfamiliarity with the courts. Throughout the proceedings, Kuntz has demonstrated a consistent pattern of vexatious litigation and little respect for the courts or other parties. The acts required of Kuntz were within his complete control and there was no acceptable reason for the delay.

*Kuntz v. Pardo*, 160 B.R. 35, 39 (S.D.N.Y. 1993). The court further stated that

> Kuntz's dilatory conduct throughout his participation in the Grant case evinces bad faith. Apart from the lack of merit to his appeals, he has repeatedly failed to abide by the rules of the court and repeatedly fails to prosecute the appeals that he has filed. By contrast to cases holding that a party should not be penalized without considering the relative culpability of the appellant and his or her attorney, Kuntz has elected to appear *pro se* and thus the culpability is all his. There is no injustice manifest in allowing Kuntz to bear the brunt of his own neglect.

*Kuntz v. Pardo*, 160 B.R. at 39 (internal citations omitted). *See also In re Silicon Graphics, Inc. et al.*, Case No. 06-10977 (Bankr. S.D.N.Y. June 20, 2007) (Mem. Decision Denying Mot. of William Kuntz III For An Order Reinstating His Proof of Claim, at 6) [Docket No. 877], *aff'd*, Case No. 07-7698 (DAB) (S.D.N.Y. Sept. 29, 2008) [Docket No. 9] (finding that Kuntz's "extensive legal experience, unlike many other pro se litigants, invokes little sympathy from this Court . . .."); *In re Commercial Financial Services, Inc.*, 238 B.R. 479, 484 n.7 (Bankr. N.D. Okla. 1999) (noting that Kuntz has considerable experience with federal law and his *pro se* status is not something the court considered relevant).[1] In light of the foregoing, the Motion should be

---

[1] The court in *Commercial Financial* listed some of the published and unpublished decisions that Kuntz has been an active party:

granted and the untimely Notice of Appeal should be stricken from the record of these cases or,

in the alternative, the Appeal should be dismissed.

---

*Kuntz v. DASU LLC*, (*In re Cray Computer Corp.*), 145 F.3d 1345 (Table) (10th Cir. 1998); *Kuntz v. Cray Computer Corp.* (*In re Cray Computer Corp.*), 107 F.3d 880 (Table) (10th Cir. 1997); *Kuntz v. Grand Union Co.* (*In re Grand Union Co.*), 106 F.3d 385 (Table) (3d Cir. 1996); *Kuntz v. Saul, Ewing, Remick & Saul*, 200 B.R. 101 (D. Del. 1996) (Kuntz sanctioned for pursuing a frivolous appeal, notwithstanding his *pro se* status, because of Kuntz's extensive appellate experience – listing failed federal and state appeals); *Kuntz v. Cray Computer Corp.* (*In re Cray Computer Corp.*), 97 F.3d 1464 (Table) (10th Cir. 1996); *Kuntz v. Nova Vista Industries, Inc.* (*In re Nova Vista Industries, Inc.*), 1992 WL 60395 (S.D.N.Y. 1992); *In re Adirondack Railway*, 1990 WL 124225 (N.D.N.Y. 1990); *Ehre v. State of New York* (*In re Adirondack Railway*), 93 B.R. 867 (N.D.N.Y. 1998); *In re W.T. Grant Co.*, 85 B.R. 250 (Bankr. S.D.N.Y. 1988), *aff'd in part, reversed in part*, 119 B.R. 898 (S.D.N.Y. 1990) (denial of Kuntz's request for fees and expenses); *In re One Westminister Co.*, 74 B.R. 37 (D. Del. 1987); *In re W.T. Grant Co.*, 4 B.R. 53 (Bankr. S.D.N.Y. 1980).

Kuntz brought an action in connection with the fate of The Peter Kuntz Company, a company apparently founded by his grandfather, against six banks, an investment firm, and John and Jane Does 1-299, alleging a conspiracy to dismantle the company. *See Kuntz v. Shawmut Bank of Boston*, 1987 WL 11172 (S.D.N.Y. 1987).

Kuntz also sued the New York State Senate, the New York State Board of Elections, various individuals, and numerous John and Jane Does, claiming constitutional violations in connection with Kuntz's attempt to run as an independent candidate for the United States House of Representatives in 1992. *See Kuntz v. New York State Board of Elections*, 924 F. Supp. 364 (N.D.N.Y. 1996); *Kuntz v. New York State Senate*, 113 F.3d 326 (2d Cir. 1997).

Kuntz has filed complaints against the New York Stock Exchange (motion for leave to appeal denied, 92 N.Y.2d 877 (1998)); the Board of Governors of the Federal Reserve, *see* 1997 WL 150062 (D.C. Cir. 1997); the City of Dayton, Ohio, see 99 F.3d 1139 (Table) (6th Cir. 1996); the Department of Energy (1995); and the United States Postal Service (1993). Kuntz has also been to Tax Court, although not *pro se*. *See Kuntz v. Commissioner*, 64 T.C.M 1258 (1992).

Further, Kuntz has unsuccessfully petitioned to the United States Supreme Court for writs of certiorari in numerous cases, including *Kuntz v. Fadness*, 519 U.S. 996 (1996); *Kuntz v. Shawmut Bank of Boston*, 501 U.S. 1252 (1991); *Kuntz v. Manley, Burke and Fischer, L.P.A.*, 500 U.S. 918 (1991); *Kuntz v. City of Dayton*, 499 U.S. 962 (1991); *Kuntz v. Society Bank, N.A.*, 498 U.S. 1089 (1991); *Kuntz v. Little Miami Railroad Co.*, 498 U.S. 1027 (1991); *Kuntz v. City of Dayton*, 488 U.S. 1008 (1989); *Kuntz v. Shawmut Bank of Boston*, 488 U.S. 952 (1988); *Kuntz v. Winters National Bank and Trust Co.*, 465 U.S. 1080 (1984).

*Commercial Financial*, 238 B.R. at 484 n.7.

### III.    Under Bankruptcy Rule 8002(c), Kuntz Cannot Show Excusable
### Neglect for Untimely Filing the Motion to Extend or the Notice of Appeal

24.    While Kuntz has filed the Motion to Extend, he cannot show "excusable neglect" justifying his late filing of such Motion or his untimely filing of the Notice of Appeal. *See* Fed. R. Civ. P. 8002(c)(2).  The burden of demonstrating "excusable neglect" rests on the party seeking the extension.  *In re Hilliard*, 36 B.R. 80, 82 (S.D.N.Y. 1984).

25.    In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, the Supreme Court addressed the issue of "excusable neglect" in the context of Bankruptcy Rule 9006(b) and concluded that the decision whether a delay is justified by excusable neglect is "at bottom, an equitable one."  507 U.S. 380, 395 (1993); *cf. In re Wechsler*, 246 B.R. at 492-93 (recognizing that the *Pioneer* factors "apply with equal force to [a determination under] Rule 8002(c)(2)").  The Supreme Court in *Pioneer* held that the determination of excusable neglect takes into account "all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395; *Wechsler*, 246 B.R. at 492.  Courts generally have recognized that "[t]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import."  *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000); *In re Beiwel*, 2001 WL 753778, at *2 (same); *but see U.S. Lines, Inc. v. United States (In re McLean Indus., Inc.)*, 196 B.R. 670, 674 (S.D.N.Y. 1996) (noting that the "reason for the delay" factor "*may* be the pivotal factor, depending on the particular circumstances presented") (emphasis in original).  Although excusable neglect may justify "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the

party's control," *Pioneer*, 507 U.S. at 388, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . ." *Id.* at 392; *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994); *Official Comm. of Unsecured Creditors of Investors & Lenders, Ltd. v. Field (In re Investors & Lenders, Ltd.)*, 169 B.R. 546, 551 (Bankr. D.N.J. 1994) (collecting cases). Kuntz manifestly cannot make the requisite showing of excusable neglect.

> A.  *The Reason for the Delay, Including Whether*
> *It was Within the Reasonable Control of the Movant*

26.  As stated, this factor is the most significant consideration. See In re McLean Indus., 196 B.R. at 674; Lowry, 211 F.3d at 463. Kuntz simply does not have a valid reason for his delay, which was entirely within his control. Moreover, courts have held that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392; *Weinstock*, 16 F.3d at 503; *In re Beiwel*, 2001 WL 753778, at *2-3 (concluding that *pro se* appellant failed to demonstrate excusable neglect where "he had the responsibility to ascertain the deadline for the appeal period," he was "solely in control of the time for filing his notice of appeal and was not mislead or misinformed at any stage," and "[i]t was his duty to inform himself of the appeal deadline").

27.  *Pro se* appellants are not granted special dispensation from the requirements for filing an appeal or a motion to extend the time to file an appeal. See, *e.g.*, *Campos*, 825 F.2d 674 (citing *Shah v. Hutto*, 722 F.2d 1167, 1168-69 (4th Cir. 1983) (en banc), for principle that filing requirements "[are] to be applied equally to *pro se* litigants and litigants represented by counsel" and adopting this position in accordance with the "en banc majority in *Shah* and the First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits").

28.    Kuntz, by filing the Motion to Extend, has demonstrated to this Court that he is not ignorant of the ten-day window in which a bankruptcy court order may be appealed. Moreover, Kuntz's filing of another motion to extend earlier in these cases, suggests that Kuntz is also aware of that such ten-day period also applies to the filing of a request to extend the time for filing a notice of appeal.  *See* Motion to Extend Time to Appeal [Docket No. 1260].

29.    Kuntz indicates in his Motion to Extend that he was unable to fully access the Debtors' claims agent's site to view the FairPoint Order until October 21, 2009 because "in Early Oct[ober] 2009 he "traveled to upstate [New York] where computer [a]ccess is quite limited." Motion to Extend, ¶5.  Nevertheless, Kuntz not indicated why he was unable to access the Order for days after it was entered on the docket in these cases.  Computers and internet, not to mention a wide range of telecommunication devices are available throughout the New York area, even "upstate."  Additionally, the Objection is signed and dated as of September 29, 2009, indicating that Kuntz was well aware of the date of the hearing on the FairPoint Motion before he traveled to upstate New York.   It was reasonable for Kuntz to expect that the FairPoint Order would be entered on the date of or soon after the hearing on the FairPoint Motion.  It was Kuntz's responsibility to prepare himself for the possibility that the FairPoint Motion would be granted over the Objection and that he might wish to seek an appeal during such time.  Kuntz's ability to access the FairPoint Order was fully in his control, and his failure to do so does not excuse his untimely filing of the Motion to Extend or the Notice of Appeal.  Whether it was through inadvertence, ignorance or mistake, it was Kuntz's sole responsibility to timely file his Motion to Extend and Notice of Appeal, yet he failed to do so.

B.      *The Danger of Prejudice to the Debtor*

30.     The Debtors continue to be prejudiced by Kuntz's baseless motions, appeals, and objections.  The Debtors are consistently forced to waste time, money and other resources to address the frivolous pleadings filed by Kuntz.  Indeed, the Debtors' will be challenging yet another frivolous and procedurally improper appeal recently filed by Kuntz, an appeal of the order, dated September 17, 2009 [Docket No. 5215] denying Kuntz's motion under Rule 60 of the Federal Rules of Civil Procedure for relief from the order, dated October 16, 2008 [Docket No. 1094], denying Kuntz's motion for relief from the automatic stay. *See* Kuntz's Amended Notice of Appeal, dated September 29, 2009 [Docket No. 5307].

C.      *The Length of the Delay and its Potential Impact on Judicial Proceedings*

31.     While the length of the delay was not protracted, Kuntz, being fully cognizant of the Court's ruling, had no reason to delay the filing of his Motion to Extend or his Notice of Appeal.

D.      *Whether the Movant Acted in Good Faith*

32.     At this point in the chapter 11 cases, it is clear that Kuntz is no longer acting in good faith.  Although he is fully aware of the rules and procedures of this Court, Kuntz continually chooses to disregard them.

33.     Given the foregoing application of the *Pioneer* factors, Kuntz has failed to demonstrate excusable neglect.  Accordingly, (i) the Motion to Extend must be denied, and (ii) the Notice of Appeal should be stricken or from the record, or, in the alternative, the Appeal must be dismissed.

## Notice

34.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; (vi) Kuntz; and (vii) all

parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or

further notice need be provided.

       35.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

       WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  December 16, 2009
      New York, New York


               /s/Jacqueline Marcus
               Jacqueline Marcus

               WEIL, GOTSHAL & MANGES LLP
               767 Fifth Avenue
               New York, New York 10153
               Telephone: (212) 310-8000
               Facsimile: (212) 310-8007

               Attorneys for Debtors
               and Debtors in Possession

**<u>Exhibit A</u>**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555-jmp

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                October 7, 2009

                10:24 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2     Hearing re:  Motion Filed by Lehman Commercial Paper Inc. for

3     Authority to Consummate Transactions Contemplated in the

4     Chapter 11 Plan Proposed by the Lehman Lenders in the SunCal

5     Chapter 11 Cases

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24     Transcribed by:  Hana Copperman

25

3

1

2       A P P E A R A N C E S :

3       WEIL, GOTSHAL & MANGES LLP

4               Attorneys for Debtors

5               767 Fifth Avenue

6               New York, NY 10153

7

8       BY:   GARRETT AVERY FAIL, ESQ.

9               MICHAEL W. BOND, ESQ.

10

11

12      MILBANK, TWEED, HADLEY & MCCLOY LLP

13              Attorneys for the Official Committee of Unsecured

14               Creditors

15              One Chase Manhattan Plaza

16              New York, NY 10005

17

18      BY:   DENNIS C. O'DONNELL, JR.

19

20      Also Present:

21      MR. MATT HIGBEE

22      (TELEPHONICALLY),

23              Party Pro Se

24

25

4

1           P R O C E E D I N G S

2           MR. FAIL:  Good morning, Your Honor.  Garrett Fail,

3    Weil, Gotshal & Manges, for Lehman Brothers Holdings Inc. and

4    its debtor and certain non-debtor affiliates.

5           On the agenda this morning is one item.  It's a motion

6    of Lehman Commercial Paper Inc. for authority to consummate

7    transactions contemplated by LCPI and certain of its non-debtor

8    affiliates in the Chapter 11 plan filed in the SunCal Chapter

9    11 cases.  The debtors believe, in their business judgment,

10   that proposing a Chapter 11 plan in the SunCal cases will

11   increase the prospect for recovery on Lehman's interests in

12   approximately 2 billion dollars of loans made to SunCal, the

13   SunCal debtors.

14          The debtors have worked with the unsecured creditors'

15   committee in these cases and proposed a plan that is a product

16   of months of work in connection with the SunCal cases.  Only

17   one objection was filed to the debtors' motion, and that was by

18   Mr. William Kuntz, III.  The objection mentions SunCal and

19   another unrelated transaction that has been proposed by the

20   debtors recently, but it does not address the substance of the

21   debtors' motion, the present motion, or the next motion to be

22   heard later this month by Your Honor, and it doesn't provide

23   any support for the Court to overrule the debtors' business

24   judgment or the facts represented in the debtors' motion.

25          The Court is likely familiar with Mr. Kuntz from his

5

1    past appearances and submissions before this Court, and because

2    Mr. Kuntz's objection addresses another transaction, the

3    Fairpoint transaction, may hear from him again at the hearing

4    next week on the 14th.

5           Late last night our offices received a fax from Mr.

6    Kuntz asking us to convey his respects to Your Honor and accept

7    his papers on his submission.  We're told he will not be

8    appearing this morning.  I provided a copy of that fax to your

9    courtroom deputy this morning.

10          THE COURT:  I've been given a copy and I've read it.

11          MR. FAIL:  Okay, Your Honor.  The debtors request that

12   the Court deny the objection and approve the motion and the

13   relief requested therein.

14          Your Honor, I would point out that the proposed order

15   we provided and that the debtors' submitted provides that the

16   proposed plan that was attached to the motion may be modified,

17   amended or supplemented by the proponents thereof without

18   further order of the Court.  And that is consistent with

19   Chapter 11 processes where plans evolve over time.  The

20   disclosure statement hearing for both the debtors' proposed

21   plan in the SunCal cases and LCPI's and the Lehman proposed

22   plan is scheduled for next week in the California Bankruptcy

23   Court, and the debtors anticipate, these debtors, the Lehman

24   debtors, anticipate making amendments to that plan that it's

25   proposing in the SunCal cases.  The proposed order that we've

6

1    submitted provides that any agreements related to the proposed

2    plan may be modified, amended, supplemented, provided that in

3    each case any such modification, amendment or supplement does

4    not have a material adverse affect on LCPI's estate.  The

5    amendments under contemplation, we believe, fall within this

6    and do not present a material adverse effect on LCPI's estate,

7    but for the record I'd like to share with you where we think

8    the proposed amendment is heading.

9         The one relevant one is that subject to certain

10   limitations the Lehman entities, which include LCPI but also

11   non-debtor affiliates, will be guaranteeing a minimum payment

12   to creditors in connection with an equitable subordination

13   claims (sic) made in an adversary proceedings (sic) brought in

14   the SunCal debtor cases of up to 10 million dollars.

15        THE COURT:  May I stop you for one second, Mr. Fail?

16   There must be someone on CourtCall with an open mike rustling

17   papers, because the sound is being heard throughout the

18   courtroom, and I would just ask whoever that is to please mute

19   your phone.  Sounds like that worked.  I'm sorry for the

20   interruption.

21        MR. FAIL:  No problem, Your Honor.  Thank you.  As I

22   was saying, the Lehman entities will together guarantee a

23   maximum payment of 10 million dollars, but that will be offset

24   by its settlement -- amounts paid in settlement, and it will be

25   further offset by amounts actually paid as a result of

7

1    litigation.  In addition, as I just mentioned, that will be

2    shared by LCPI and its non-debtor affiliates.  So, in total, we

3    don't believe that there will be any material adverse effect on

4    LCPI's estate, and in the debtors' business judgment this is

5    still the best way to maximize recoveries from the SunCal

6    debtors.

7         Your Honor, with that said we appreciate the Court

8    scheduling a hearing this morning in advance of the disclosure

9    statement hearings in the SunCal cases next week.  I'm

10   available to answer any questions that you may have regarding

11   the motion, and I have with me Michael Bond, a partner at Weil,

12   Gotshal's real estate department, who's been working on these

13   matters for the past year.

14        THE COURT:  Okay.  I have a couple of questions.  The

15   first is really for the creditors' committee, who's here and

16   represented, to confirm that the committee has been consulted

17   in connection with this unusual procedure in which, in effect,

18   one bankruptcy case is controlling another bankruptcy case, and

19   money is being used in order to minimize possible litigation

20   risk in that other bankruptcy case.

21        MR. O'DONNELL:  Yes, Your Honor.  Dennis O'Donnell,

22   Milbank, Tweed, Hadley & McCloy, on behalf of the creditors'

23   committee.  We have been involved in the process with respect

24   to this motion and have been monitoring closely developments in

25   the SunCal case in California.  People in our LA office follow

8

1    that routinely.  And we do believe that the proposed authority

2    here to file and prosecute this plan makes sense in the context

3    of where that case is currently, and this is obviously a

4    competing plan.  There's a process that lies ahead of us, and

5    we believe that the debtors need to do this in order to

6    ultimately maximize value.  We don't know whether the plan

7    that's being proposed now will, in fact, be the plan at the end

8    of the day, and we somehow doubt that it will be, but we

9    believe that as part of the overall process the debtors need to

10   take these steps.

11        In that connection, the order does provide that the

12   debtor should be able to amend or modify the plan as necessary

13   as the process unfolds, but our understanding with the debtors

14   is that they will, you know, such amendments will be made in

15   consultation with the committee and with the committee's

16   approval.  And on that understanding the proposed relief is

17   acceptable to the committee.

18        THE COURT:  Well, and I appreciate that, and this is,

19   I guess, my second question, which is really for Mr. Fail.  Is

20   there any limit upon the amendments that can be made to this

21   proposed plan?  I mean, at the moment it calls for the use of

22   15 million dollars, potentially, as a fund to settle equitable

23   subordination type claims in the California bankruptcy cases.

24   But let's just say, for the sake of discussion, it turns out to

25   be 30 million dollars.  Is there some materiality component

9

1   here that would call for further approval of the use of funds

2   at what might be 200 percent of the current level?  I'm just

3   wondering if this is a blank check or if this is simply

4   authority to proceed with a competing plan along the lines

5   outlined in the motion, but if there are material changes there

6   would be a need to come back here.

7           MR. FAIL:  Your Honor, the language proposed in this

8   order does contemplate that it has to be a material adverse

9   effect on LCPI's estate.  That language is consistent with

10  language that's been inserted in other orders in these cases

11  where the transaction documents haven't been finalized or where

12  they've been finalized but amendments have been contemplated.

13  This material adverse threshold is not as defined as a specific

14  dollar amount would be, but in working in consultation with the

15  committee we believe that sufficient checks on the debtors'

16  assessment of material adverse effects are in place, and

17  although Your Honor is correct that if there is a 15 million

18  dollar component, and I just mentioned a 10 million, that will

19  be offset by other factors.  It's difficult at this time to say

20  what the end results of negotiations in the SunCal cases will

21  lead to and the final result of these plans in terms of dollar

22  amount or other structures.  So we needed to move forward to

23  get the authority to have the flexibility to negotiate in those

24  cases.  The alternative, Your Honor, we believe, would be

25  materially adverse for the debtors' estates in that they

10

1    wouldn't be able to propose a plan or wouldn't have the

2    flexibility to prosecute it.  And that's why we --

3            THE COURT:  I understand the need for flexibility, and

4    I appreciate the fact that the creditors' committee will be

5    consulted throughout the process of attempting to confirm this

6    competing plan in the California court.  I also recognize that

7    it would be completely unworkable for you to have to come back

8    here on a repeated basis to obtain authority to the extent

9    there are major changes in the proposed competing plan.

10           The concern that I have is as much as anything a

11   notice concern in respect of the present motion.  The present

12   motion speaks in terms of a particular kind of competing plan,

13   with funds being used at a notional level of perhaps 15 million

14   dollars.  But it's obvious that in a free-form negotiation in

15   which you have no lockups with any of the constituents in the

16   California case that that may be the starting point, as opposed

17   to the ending point, of a negotiated adjustment to that plan

18   treatment.

19           I don't in any way seek to become involved in that

20   process, but to the extent that it ends up with the use of

21   proceeds from the estate at a level which is materially greater

22   than the amount suggested in the current motion it seems to me

23   there should be at least some notice given to creditors in the

24   Lehman cases that pursuant to the authority granted in this

25   motion instead of using 15 million dollars in estate funds

11

1    you're using some number greater than that.  Or if it turns out

2    that there's a totally different kind of plan that may involve

3    no use of funds or the assumption of some assumed liability

4    going down the road in that case because of ongoing litigation,

5    I think there should be notice of that as well.  I don't think

6    it should be a black hole.

7           MR. FAIL:  Your Honor, could I have one moment just to

8    consult with my colleagues?

9           THE COURT:  Sure.

10          (Pause)

11          MR. FAIL:  Thank you very much, Your Honor.  Having

12   consulted with Mr. O'Donnell for the committee and Mike Bond

13   from Weil, Gotshal for the debtors I would make this proposal

14   and response to Your Honor's suggestion.

15          That any material modifications will be done in

16   consultation with, or after consultation with, the creditors'

17   committee, and that material amendments to the plans, as

18   they're filed in the California cases, will be filed with a

19   notice in these cases on ECF and served by the debtors on the

20   master service list.

21          THE COURT:  That's fine, so long as we're just dealing

22   with material modifications.  I don't want the docket in this

23   case to be burdened with excessive confusing filings relating

24   to the SunCal case.  The idea is to just clearly notify parties

25   in interest if there has been a use of materially more money in

12

1    the context of the SunCal resolution than had been noticed in

2    the current motion.

3          MR. FAIL:  Thank you, Your Honor.  And we will

4    endeavor to do our best to minimize the filings and the

5    decision on whether or not its material will be made in

6    consultation with the creditors' committee.

7          THE COURT:  Now, and let me comment briefly on the

8    objection to this motion which has been filed by William Kuntz.

9    I read Mr. Kuntz's objection, and it appears to relate to two

10   transactions, both the SunCal and the Fairpoint matters.  Only

11   the SunCal matter is before me today.  I also received, by hand

12   delivery this morning, a letter from Mr. Kuntz, dated October

13   6th, noting his inability to attend today's hearing and the

14   fact that he is relying on his papers.

15          I have reviewed the papers filed by Mr. Kuntz and note

16   that there are a number of attachments relating to news stories

17   that have appeared in California relating to the SunCal

18   bankruptcy cases, as well as a Bloomberg article.  The

19   objection questions the business judgment of Lehman in

20   expending funds associated with the SunCal bankruptcy cases but

21   does not provide reasoning in support of the objection.

22   Instead, the objection appears to challenge aspects of Lehman's

23   current business decision process through Alvarez & Marsal,

24   claims some connection between Weil, Gotshal and Alvarez &

25   Marsal, argues that there has been a breach of a trust

13

1    relationship having to do with the Grand Union bankruptcy case

2    and various funds relating to that bankruptcy case that may or

3    may not currently be held by the New York State Comptroller's

4    Office.

5        Based upon my review of the objection it appears that

6    Mr. Kuntz is repeating various arguments made in the context of

7    an earlier motion for relief from the automatic stay which I

8    denied last November, and Mr. Kuntz's objection does not appear

9    to go to the particulars of the SunCal bankruptcy and the risks

10   in terms of expense and delay associated with that bankruptcy

11   case to the Lehman estate.

12       Under the circumstances I find that the objections

13   made by Mr. Kuntz are not relevant to the matter before the

14   Court, and I overrule those objections.  I do so, however,

15   without prejudice to Mr. Kuntz's proof of claim which appears

16   to have been filed in the bankruptcy cases, and Mr. Kuntz is

17   free to pursue such further objections as he considers

18   appropriate and in his interest.  He is also free to prosecute

19   his proof of claim, as are all the creditors.

20       So the Kuntz objection is overruled.  There are no

21   other objections to the relief being requested here, and

22   subject to the modifications that have been put on the record

23   regarding notice of material modifications that may be made to

24   the plan over time, I grant the motion.

25       MR. FAIL:  Thank you very much, Your Honor.  I could

14

1    either hand up the order as proposed and we could rest on the

2    record for the rest, or we could amend the order to provide --

3             THE COURT:  I suggest that the order be amended in a

4    manner that's acceptable to the creditors' committee and that

5    it be submitted following amendment.

6             MR. FAIL:  We'll submit it later this afternoon.

7    Thank you very much, Your Honor.

8             THE COURT:  Okay.  We're adjourned.

9        (Proceedings concluded at 10:44 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

15

1

2                              I N D E X

3

4                              RULINGS

5                                   Page      Line

6    Granting of Motion Filed   13        24

7    by Lehman Commercial

8    Paper Inc. for Authority

9    to Consummate Transactions

10   Contemplated in the

11   Chapter 11 Plan Proposed

12   by the Lehman Lenders in

13   the SunCal Chapter 11

14   Cases

15

16

17

18

19

20

21

22

23

24

25

16

1

2                              C E R T I F I C A T I O N

3

4        I, Hana Copperman, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        HANA COPPERMAN

9        AAERT Certified Electronic Transcriber (CET**D-487)

10

11       Veritext LLC

12       200 Old Country Road

13       Suite 580

14       Mineola, NY 11501

15

16       Date: October 8, 2009

17

18

19

20

21

22

23

24

25

**<u>Exhibit B</u>**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Case No. 08-01420(JMP)(SIPA)

Adv. Case No. 08-01751

Adv. Case No. 08-01743

Adv. Case No. 09-01054

Adv. Case No. 09-01455

Adv. Case No. 09-01258

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.,

                    Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

                    Debtor.

- - - - - - - - - - - - - - - - - - - -x

ALIANT BANK,

                    Plaintiff,

            -against-

LEHMAN BROTHERS SPECIAL FINANCING, et al.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - -x

2

```
1   - - - - - - - - - - - - - - - - - - -x

2   STATE STREET BANK AND TRUST COMPANY,

3                    Plaintiff,

4        -against-

5   LEHMAN COMMERCIAL PAPER INC.,

6                    Defendant.

7   - - - - - - - - - - - - - - - - - - -x

8   HANK'S LIVING TRUST,

9                    Plaintiff,

10        -against-

11  LEHMAN BROTHERS OTC DERIVATIVES AND LBHI,

12                    Defendants.

13  - - - - - - - - - - - - - - - - - - -x

14  BOARD OF EDUCATION, CITY OF CHICAGO,

15                    Plaintiff,

16        -against-

17  LEHMAN BROTHERS SPECIAL FINANCING,

18                    Defendant.

19  - - - - - - - - - - - - - - - - - - -x

20  NEUBERGER BERMAN,

21                    Plaintiff,

22        -against-

23  PNC BANK, NA, et al.,

24                    Defendants.

25  - - - - - - - - - - - - - - - - - - -x
```

3

1                  U.S. Bankruptcy Court

2                  One Bowling Green

3                  New York, New York

4

5                  October 14, 2009

6                  10:04 AM

7

8    B E F O R E:

9    HON. JAMES M. PECK

10   U.S. BANKRUPTCY JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1          As a result of these rulings, there's no basis for

2     finding Shinsei in contempt.  And I will entertain an order

3     denying the motion.

4          MR. KRASNOW:  Thank you, Your Honor.  With the Court's

5     permission, may I be excused for the balance of the hearing?

6     This is Richard Krasnow.

7          THE COURT:  Yes.  You're excused.

8          And Shinsei's counsel is excused as well.

9          MR. KLEINER:  Thank you.

10         MR. TROST:  Thank you.

11         MS. MARCUS:  Your Honor, Jacqueline Marcus again for

12    LBHI.  The next item on the agenda is number 6, the motion of

13    Lehman Commercial Paper Inc. for authorization to purchase the

14    FairPoint participation.  Your Honor, this is a motion by LCPI

15    for authorization to purchase from the VFT (ph.) 2008 Trust a

16    participation in Term Loan A issued by FairPoint

17    Communications.

18         This motion arises out of a settlement with

19    Metropolitan Life Insurance Company which was approved by the

20    Court on May 13th.  Under the terms of the MetLife settlement,

21    if LCPI and MetLife cannot agree as to whether a particular

22    loan should be sold by the trust, and if the outlook of Moody's

23    and Standard & Poor's with respect to that debt is negative,

24    then MetLife can compel a sale of the loan at the prevailing

25    market rate.

29

1          MetLife has requested that LCPI sell the VFT 2008's

2     interest in the FairPoint loan.  Because LCPI believes that the

3     market is undervaluing the FairPoint loan, LCPI would like to

4     purchase the FairPoint participation from VFT 2008.

5          Your Honor, there have been a couple of pleadings

6     filed in response to the motion.  The ad hoc group of Lehman

7     Brothers creditors has filed a statement in support of the

8     motion.  And we have received one objection; it was filed by

9     William Kuntz III as part of his objection to the SunCal

10    motion.  I don't know if Mr. Kuntz is present in court today or

11    by phone.

12         THE COURT:  Let me find out.

13         Is Mr. Kuntz present on the phone or in court?

14         Apparently not.

15         MS. MARCUS:  I'll just address his objection very

16    briefly, Your Honor.  It appears Mr. Kuntz questions the

17    debtors' business judgment underlying the motion.

18         THE COURT:  If I could just interject.  There was a

19    separate hearing that took place in connection with the SunCal

20    matter; I think it was last week.

21         MS. MARCUS:  It was.

22         THE COURT:  And Mr. Kuntz submitted a letter just

23    before the start of that hearing, which was delivered to

24    chambers, indicating that he was going to rely on his papers

25    and not appear in person to press his objection in the SunCal

30

1    matter, which is an entirely different issue.  For those who

2    weren't present, that was a separate motion brought by Lehman

3    Brothers to file a competing plan in the Central District of

4    California relating to the bankruptcy of SunCal.  Mr. Kuntz

5    filed a single objection in writing, which related both to the

6    matter which is now being heard and the SunCal matter.

7         I placed on the record during the course of the SunCal

8    hearing a disposition of his objection, and I am prepared to

9    incorporate that disposition into the record today, after

10   you've completed your remarks, so I don't have to repeat it.

11        MS. MARCUS:  Okay, thank you, Your Honor.  Mr. Kuntz

12   questions the debtors' business judgment underlying the motion.

13   And I failed to mention that the creditors' committee, which is

14   here today, supports the motion.  So we have both the

15   creditors' committee and the ad hoc group supporting the

16   debtors' business judgment here.  I think that speaks volumes

17   for the appropriateness of the debtors' business judgment.

18        Notwithstanding that, we have present in court today

19   Mr. Frank Turner who is in charge of LCPI's commercial and

20   industrial loan portfolio.  And in support of the motion, I am

21   prepared to proffer Mr. Turner's testimony; I think I'll wait

22   on that decision until I hear what the Court's disposition of

23   the SunCal hearing was.

24        THE COURT:  I'm surprised you don't talk to everybody

25   at your office.

31

1          MS. MARCUS:  We try, Your Honor.

2          THE COURT:  It was simply a denial of Mr. Kuntz's

3   objection for a variety of reasons that related to SunCal but,

4   I believe, are also applicable to the matter before the Court.

5   The Kuntz objection did not speak to the specifics of SunCal,

6   nor does it speak to the specifics of the pending motion.

7   Rather, it repeats and reiterates positions previously

8   expressed by Mr. Kuntz in connection with his concerns about

9   the disposition of funds associated with the Grand Union

10  bankruptcy from a number of years ago.

11          I found in my comments, which will speak for

12  themselves, that Mr. Kuntz's objections did not in fact go to

13  the merits of the SunCal competing plan, nor did it go to the

14  merits of what's presently before me.  And so I denied the

15  motions as, in effect, being inapposite -- excuse me, the

16  objection as being inapposite to the motion.  That's what I

17  did.

18          MS. MARCUS:  Okay.  Thank you, Your Honor.

19          THE COURT:  But what I actually did will speak for

20  itself on the record --

21          MS. MARCUS:  Okay.

22          THE COURT:  -- because I don't remember word for word.

23          MS. MARCUS:  I know Mr. Fleck wants to speak on behalf

24  of the committee, and maybe I'll withhold my decision as to

25  whether we proffer the testimony until he's through, if that's

32

1    okay.

2            THE COURT:  Okay.

3            MR. FLECK:  Good morning, Your Honor.  Evan Fleck of

4    Milbank, Tweed, Hadley & McCloy, on behalf of the official

5    committee of unsecured creditors.  As Ms. Marcus stated, the

6    committee does support the relief requested in the motion, but

7    we do view it as an important matter and something the

8    committee would like to address the Court briefly on just for a

9    few points.

10           Your Honor, it's important, from the committee's

11   perspective and in considering this motion, what the debtors

12   are not seeking here.  The debtors are not seeking approval to

13   make an open-market purchase of FairPoint notes.  We think we

14   that's a very different motion; it's asking for a different

15   level of business judgment and authority, and that's not what

16   was requested here.  Instead, it's a preservation of an

17   interest that the debtors have in the securitization trust.

18   Nevertheless, the committee spent considerable time considering

19   the relief, the business judgment and the merits of the

20   proposed transaction; had separate meetings, in fact, with Mr.

21   Turner to talk about the particular credit here and whether it

22   was appropriate -- an appropriate expenditure of estate

23   resources.

24           We do have a protocol, as the Court is aware, for

25   considering these transactions.  We think, given the nature of

33

1    the transaction, it was appropriate to come before the Court,

2    and we respectfully disagree with the debtors' view that this

3    is an ordinary-course transaction.  Notwithstanding that, it's

4    not an open-market purchase.  It is a significant expenditure

5    of estate resources.  Even though it's to preserve an asset, it

6    should be vetted before the Court.  And we're pleased to see

7    that other creditors have also -- we spent time with them, they

8    read the motion and there also was a statement, as Ms. Marcus

9    stated, on behalf of one group of creditors in the case.

10           Your Honor, for the reasons that were set forth in the

11   debtors' motion, and based upon the committee's considered

12   judgment of the relief requested, we do support the relief and

13   the proposed transaction.

14           THE COURT:  Okay, thank you.

15           MR. FLECK:  Thank you.

16           MS. MARCUS:  Your Honor, upon further reflection,

17   unless you want to hear the proffer, I think we'll defer with

18   the proffer and save the Court and everyone else some time.

19           THE COURT:  I don't feel a need to hear the proffer

20   based upon my review of the papers and the supporting statement

21   just given by the creditors' committee, but it's entirely up to

22   you.

23           MS. MARCUS:  Okay.  Thank you, Your Honor.  Based on

24   that, the debtors request that you approve the relief requested

25   in the FairPoint motion.

34

1          THE COURT:  I approve the relief and I overrule the

2     objections, to the extent applicable, filed by Mr. Kuntz.

3          MS. MARCUS:  Thank you, Your Honor.  The next matter

4     will be handled by my partner Mr. Lemons.

5          MR. LEMONS:  Good morning, Your Honor.  Robert Lemons

6     from Weil, Gotshal & Manges, on behalf of the debtors.  Your

7     Honor, I'm here to present a fourth supplemental order,

8     pursuant to Sections 105 and 365 of the Bankruptcy Code, to

9     establish procedures for the settlement or assumption and

10    assignment of pre-petition derivative contracts.

11          This order, Your Honor, would supplement the order

12    that you entered on December 16th, 2008, the established

13    procedures, both for the assumption and assignment of

14    derivative contracts and for the termination -- or the entry by

15    the debtors of termination and settlement agreements with

16    respect to derivative contracts.

17          As Your Honor may recall, originally there were

18    several contracts that were carved out of that December 16th

19    order so that neither the assumption and assignment procedures,

20    nor the termination and settlement procedures, were applicable.

21    The contracts that were carved out were contracts subject to

22    objections of certain parties that had been lodged to our

23    original motion.

24          The debtors have discovered since then that there have

25    been a number of instances where one of the objecting parties

**<u>Exhibit C</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

In re:                                                   :
                                                         :        Chapter 11
                                                         :
LORAL SPACE &                                            :        Lead Case No. 03-41710 (RDD)
COMMUNICATIONS LTD., ET AL.,                             :        03-41709 (RDD) through
                                                         :        03-41728 (RDD)
                                                         :
          Reorganized Debtors.                           :        Jointly Administered
                                                         :
--------------------------------------------------------- x

PHIL IVALDY,                                             :
                                                         :
              Appellant,                                 :
v.                                                       :
                                                         :
LORAL SPACE &                                            :
COMMUNICATIONS LTD., ET AL.,                             :
                                                         :
          Reorganized Debtors-Appellees.   :
--------------------------------------------------------- x

## ORDER DISMISSING PHIL IVALDY'S APPEAL OF ORDER GRANTING APPLICATION FOR FINAL DECREE AND CLOSING OF THIS CHAPTER 11 CASE

Upon the Motion dated May 18, 2009 (the "Motion"), of Loral Space &

Communications Ltd. and its affiliated reorganized debtors (collectively, the "Debtors" and, as

reorganized, the "Reorganized Debtors") to (I) Enforce the Order Confirming the Debtors'

Fourth Amended Joint Plan of Reorganization, as Modified, (II) Dismiss Phil Ivaldy's Appeal of

Order Granting Application for Final Decree and Closing of this Chapter 11 Case and, in the

Alternative, (III) Strike Certain Items from Phil Ivaldy's Designation of Record on Appeal; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting, C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) Phil Ivaldy, (ii) the United States Trustee for the

Southern District of New York, (iii) the attorneys for the agent for the Debtors' prepetition

secured lenders, (iv) the attorneys for the statutory committee of unsecured creditors appointed in

these chapter 11 cases, (v) the attorneys for the official committee of equity security holders

appointed in these chapter 11 cases and (vi) those parties entitled to notice pursuant to this

Court's Order dated July 15, 2003 establishing notice procedures in these chapter 11 cases; and it

appearing that no other or further notice need be provided; and the Court having conducted a

hearing (the "Hearing") on the Motion on June 16, 2009; and based upon the record of the

Hearing; and upon (i) the Motion, (ii) the Reorganized Debtors-Appellees' Counter-Designation

of Items to be Included in Record on Appeal (the "Counter-Designation"); (iii) Appellant's

Objections to the Reorganized Debtor-Appellees' Motion (the "Objection"), (iv) the Reply of the

Reorganized Debtors to the Objection, (v) Appellant's Motion for Extension of Time to File

Responses to the Reorganized Debtors-Appellees' Counter-Designation and Motion, and (vi)

Appellant's Opposition to Application of Section 350(a) of the Bankruptcy Code and Bankruptcy

Rule 3022 for Final Decree Closing Chapter 11 Case of Loral Space & Communications Ltd.;

and the Court having determined that the legal and factual bases set forth in the Motion and at

the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefore for the

reasons stated by the Court at the conclusion of the Hearing, **THE COURT HEREBY FINDS,**

**DETERMINES AND CONCLUDES THAT:**

A. The Appeal was filed after the expiration of the period set forth in Rule 8002(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B. Phil Ivaldy did not make any request to enlarge the period set forth in the Bankruptcy Rule 8002(a) in accordance with Bankruptcy Rule 8002(c).

C. Phil Ivaldy neither claimed nor offered any facts to support any claim of excusable neglect with respect to the filing of the Appeal.

**FOR ALL OF THE FOREGOING AND AFTER DUE DELIBERATION THE COURT**

**ORDERS THAT:**

1. The Motion is hereby granted as provided herein.

2. The Appeal is dismissed, with prejudice.

3. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York for the filing of a memorandum of law hereby is waived.

Dated: June 18, 2009
New York, New York

/s/Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
**One Bowling Green**
**New York, NY 10004–1408**

---

| | |
|---|---|
| IN RE: Loral Space & Communications Ltd. and Space Systems/Loral, Inc. ("SS/L") | CASE NO.: 03–41710–rdd |
| Social Security/Taxpayer ID/Employer ID/Other Nos.: 13–3867424 | CHAPTER:  11 |

---

## NOTICE OF DISMISSAL

An order of dismissal was entered by the Honorable Robert D. Drain in this Chapter 11 case.

Loral Space & Communications Ltd. was dismissed from the case on June 18, 2009 WITH PREJUDICE.


Dated: June 18, 2009                                Vito Genna
                                                     Clerk of the Court

# Notice Recipients

District/Off: 0208–1                 User: mgist                      Date Created: 6/18/2009
Case: 03–41710–rdd                 Form ID: 131                    Total: 97

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**
dbpos      Space Systems/Loral, Inc. ("SS/L")
3932096    AMB Property, L.P.
                                                                                                TOTAL: 2

**Recipients of Notice of Electronic Filing:**
aty        Alan Jay Lipkin          alipkin@willkie.com, maosbny@willkie.com
aty        Lori R. Fife          lori.fife@weil.com, garrett.fail@weil.com, jae.kim@weil.com, saima.majid@weil.com
aty        Shai Waisman          shai.waisman@weil.com, amanda.hendy@weil.com, rachel.albanese@weil.com,
           jae.kim@weil.com, ilusion.rodriguez@weil.com, sherri.toub@weil.com, victoria.vron@weil.com,
           julio.gurdian@weil.com, matthew.curro@weil.com, michele.meises@weil.com
aty        Stephen Karotkin          stephen.karotkin@weil.com, theodore.tsekerides@weil.com, Shai.Waisman@weil.com,
           Rachel.albanese@weil.com, michele.meises@weil.com, ilusion.rodriguez@weil.com, nathan.pierce@weil.com,
           lacey.laken@weil.com
aty        Tonny K. Ho          maosbny@willkie.com, tho@willkie.com
                                                                                                TOTAL: 5

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db         Loral Space &Communications Ltd.      c/o Loral SpaceCom Corporation      600 Third Avenue      New York,
           NY 10016
ust        United States Trustee      33 Whitehall Street      21st Floor      New York, NY 10004
aty        Alicia M. Leonhard      Office of the United States Trustee      Southern District of New York      33 Whitehall
           Street, Suite 2100      New York, NY 10004
aty        Pamela Jean Lustrin      United States Trustee      33 Whitehall Street      21st Floor      New York, NY
           10004
aty        Theodore Elias Tsekerides      Weil, Gotshal &Manges, LLP      767 5th Avenue      New York, NY 10153
smg        New York State Tax Commission      Bankruptcy/Special Procedures Section      P.O. Box 5300      Albany,
           NY 12205–0300
smg        United States Attorney      One St. Andrew's Plaza      Claims Unit – Room 417      New York, NY
           10007–1701
smg        Internal Revenue Service      290 Broadway      Insolvency 5th fl      New York, NY 10007
smg        N.Y. State Unemployment Insurance Fund      P.O. Box 551      Albany, NY 12201–0551
smg        New York City Dept. Of Finance      345 Adams Street, 3rd Floor      Attn: Legal Affairs – Devora
           Cohn      Brooklyn, NY 11201–3719
3233496    AKIN GUMP STRAUSS HAUER &FELD LLP      590 Madison Avenue      New York, New York
           10022      Attn.: Daniel H. Golden, Esq.      David H. Botter, Esq.
3233540    AKIN GUMP STRAUSS HAUER &FELD LLP      590 Madison Avenue      New York, New York
           10022      Attn.: Daniel H. Golden, Esq.      David H. Botter, Esq.
3239439    ALAN W POPE      STEPHEN E. GRUENDEL      MOORE &VAN ALLEN PLLC      100 NORTH
           TRYON STREET, SUITE 4700      CHARLOTTE, NC 28200–4003
3238810    ALLEN PETERS, ESQ.      NORTHROP GRUMMAN CORPORATION      1840 CENTURY PART
           EAST      LOS ANGELES, CA 90067
3311349    AMERICAN EXPRESS TRAVEL RELATED      SVCS CO INC CORP CARD      C/o BECKET &LEE
           LLP      P O BOX 3001      MALVERN, PA 19355–0701
3282536    ANDREW A. OSTROW      GENERAL COUNSEL      GLOBECAST NORTH AMERICA
           INCORPORATED      7291 N.W. 74TH STREET      MEDLEY, FLORIDA 33166
3539177    APPEN MENON, ESQ.      MENON &POSNER      170 BROADWAY, SUITE 1010      NEW YORK, NY
           10038
3440897    BANKRUPTCY ADMINISTRATION      IOS Capital, LLC      1738 Bass Road      POB
           13708      Macon, GA 31208–3708
3232776    BEN H. LOGAN, ESQ.      KAREN RINEHART, ESQ      O'MELVENY &MYERS, LLP      400 SOUTH
           HOPE STREET      LOS ANGELES, CA 90071–2899
3258737    BEN H. LOGAN, ESQ.      KAREN RINEHART, ESQ.      O'MELVENY &MYERS LLP      400 SOUTH
           HOPE STREET      LOS ANGELES, CA 90071–*2899
3282429    BEN H. LOGAN, ESQ.      KAREN RINEHART, ESQ.      O'MELVENY &MYERS LLP      400 SOUTH
           HOPE STREET      LOS ANGELES, CA 90071–2899
3637086    BROWN RUDNICK BERLACK ISRAELS LLP      Seven Times Square      New York, N.Y.
           10036      Attn.: Steven B. Smith
3437147    BRYN H. SHERMAN, ESQ.      Deckelbaum Ogens &Raftery, Chartered      3 Bethesda Metro Center, Ste
           200      Bethesda, MD 20814
3437145    D. SCOTT BARASH      V.P. &General Counsel      Universal Service Adm. Co.      2000 L Street, NW, Suite
           200      Washington, D.C. 20036
3353124    D. SCOTT BARASH      V.P. and General Counsel      Universal Service Administrative Company      2000 L
           Street, NW, Suite 200      Washington, D.C. 20036
3543131    DORSEY &WHITNEY LLP      50 South Sixth Street, Ste 1500      Minneapolis, Minnesota
           55402–1498      Attn Monica L. Clark, Esq.
3286003    DUANE MORRIS, LLP      380 Lexington Avenue      New York, New York 10022      Attn.: Robert M.
           Hirsh, Esq.

| | | |
|---|---|---|
| 3286004 | DUANE MORRIS, LLP | 470 Atlantic Avenue, Suite 500    Boston, Massachusetts 02210    Attn.: Jeffrey D. Sternklar, Esq. |
| 3266635 | EAGLE PICHER TECHNOLOGIES LLC | P.O. Box 47    Joplin, MO 64802    Attn: Raul E. Tellez, Esq. |
| 4174794 | Eric Seiler    Friedman Kaplan Seiler &Adelman LLP | 1633 Broadway    New York, NY 10019–6708 |
| 3213648 | Ethan Schwartz    CRT Capital Group LLC | 262 Harbor Drive    Stamford, CT 06902 |
| 3266551 | GARDNER CARTON &DOUGLAS LLC | 1301 K. Street, N.W.    Suite 900 East Tower    Washington, DC 20005–3317    Attn.: Kristin K. Going, Esq.    Stephanie Wickouski, Esq. |
| 3266552 | GARDNER CARTON &DOUGLAS LLC | 191 N. Wacker Drive    Suite 3700    Chicago, IL 60606–1698    Attn.: Jeffrey M. Schwartz, Esq.    Harold L. Kaplan, Esq. |
| 3266596 | HOGAN &HARTSON LLP | 875 Third Avenue    New York, New York 10022    Attn.: David M. Posner, Esq. |
| 3266553 | JONES DAY    222 East 41st Street | New York, New York 10017    Attn.: Erica M. Ryland, Esq. |
| 3213647 | Jeff Gates    ECF Value Fund LP/ Gates Capital Mgmt | 1177 Avenue of the Americas, 32nd Fl    New York, NY 10036 |
| 3713013 | Jerome M. Balsam    Authorized Agent | 450 Park Avenue, 32nd Fl.    New York, NY 10022 |
| 3263504 | John G. Loughnane    Gadsby Hannah LLP | 225 Franklin Street    Boston, MA 02110 |
| 3214603 | Josiah Rotenberg    Quadrangle Group LLC | 375 Park Avenue, 14th Fl    New York, NY 10152 |
| 3647568 | KASOWITZ BENSON TORRES &FRIEDMAN LLP | 1633 Broadway, 22nd Fl.    New York, New York 10016    Attn: D.S. Rosner, D.N.Zinman, Esqs. |
| 3440895 | KIESELSTEIN &LEE, LLP    Westchester Financial Center | 50 Main Street    White Plains, NY 10606    Attn: Steve Kieselstein, Esq. |
| 4594332 | KONICA MINOLTA DANKA IMAGING COMPANY    fka DANKA OFFICE IMAGING COMPANY | 11101 ROOSEVELT BLVD.    ST. PETERSBURG, FL 33716 |
| 3591337 | LATHAM &WATKINS LLP | 633 West Fifth Street, Suite 4000    Los Angeles, California 90071–2007    Attn.: M.S. Lurey, J.D. Diener, Esqs. |
| 3258735 | LESLIE A. COHEN ESQ.    LINER YANKELEVITZ SUNSHINE &REGENSTREIF    1100 GLENDON AVENUE, 14TH FLOOR    LOS ANGELES, CA 90024 |
| 3282425 | LESLIE A. COHEN, ESQ.    LINER YANKELEVITZ    SUNSHINE &REGENSTREIF LLP    1100 GLENDON AVENUE, 14TH FLOOR    LOS ANGELES, CALIFORNIA 90024 |
| 3646686 | LOWENSTEIN SANDLER PC | 1251 Avenue of the Americas    18th Floor    New York, NY 10019    Attn Michael S. Etkin, Esq. |
| 3646688 | LOWENSTEIN SANDLER PC | 65 Livingston Avenue    Roseland, NJ 07068    Attn M. Levee, Esq. |
| 3213646 | Leigh Walzer    Angelo, Gordon &Co. | 245 Park Avenue, 26th Fl.    New York, NY 10167 |
| 3214600 | MHR Fund Management LLC | 40 West 57th Street    New York, NY 10019    Attn: Hal Goldstein |
| 3282578 | MICHAEL F. McGRATH, ESQ.    RAVICH MEYER KIRKMAN McGRATH    &NAUMAN, P.A.    4545 IDS CENTER    80 SOUTH EIGHTH STREET    MINNEAPOLIS, MN 55402 |
| 3458440 | MICHAEL W. NEVILLE, DEPTY ATTY GEN    Ofc of Attorney General of California    455 Golden Gate Avenue, Ste 11000    San Francisco, CA 94102 |
| 3275553 | MISSOURI DEPARTMENT OF REVENUE    Bankruptcy Unit    P.O. Box 475    Jefferson City, MO 65105–0475    Attn.: Chad A. Kelsch |
| 3839289 | McDermott Will &Emergy LLP    28 State Street    Boston, MA 02109    Attn: Thomas O. Bean, Esq. , Peter M. Acton, Jr. |
| 3543107 | McNUTT &LITTENEKER, LLP | 188 The Embarcadero, Ste 800    San Francisco, CA 94105    Attn R.U. Litteneker, K.W. Coleman |
| 3534296 | McNutt &Litteneker, LLP | 188 The Embarcadero, Ste 800    San Francisco, CA 94105    Attn R.U. Litteneker, K.W. Colman |
| 3214602 | Morris, Nichols, Arsht &Tunnell    Robert J. Dehney, Esquire    James C. Carignan, Esquire    1201 N. Market Street    P.O. Box 1347    Wilmington, DE 19899–1347 |
| 3365694 | NEAL S. MANN, ASSIST. ATTY. GEN.    120 Broadway, 24th Fl.    New York, NY 10271 |
| 3247608 | NORMAN A. FUTAMI, ESQ.    PAUL, HASTINGS, JANOFSKY &WALKER, LLP    Twenth–Fifth Floor    515 South Flower Street    Los Angeles, California 90071–2371 |
| 4353088 | PA DEPARTMENT OF LABOR &INDUSTRY    OFC OF UNEMPLOYMENT COMPENSATION    TAX SERVICES    HARRISBURG BANKRUPTCY AND COMPLIANCE OFC    333 MARKET ST., 16TH FL.    HARRISBURG,PA 17101–2235 |
| 4351173 | PA DEPT. OF LABOR &INDUSTRY    OFFICE OF UNEMPLOYMENT    COMPENSATION TAX SVCS.    HARRISBURG BANKRUPTCY AND COMPLIANCE OFF    333 MARKET ST., 16TH FLOOR    HARRISBURG, PA 17101–2235 |
| 3283165 | PINO &ASSOCIATES, LLP    Westchester Financial Center    50 Main Street – 7th Floor    White Plains, New York 10606    Attn.: Melissa R. Gassler(MG6043) |
| 3285540 | PINO &ASSOCIATES, LLP    Westchester Financial Center    50 Main Street, 7th Floor    White Plains, New York 10606    Attn.: Melissa R. Gassler (MG6043) |
| 3684766 | POYNER &SPRUILL LLP    301 South College Street, Suite 2300    Charlotte, NC 28202    Attn J.D. Thompson, Esq. |
| 3544112 | RIVERSIDE CLAIMS LLC    POB 626    Planetarium Station    New York, NY 10024 |
| 3247325 | ROBERT B. WEISS, ESQ.    FRANK L. GORMAN, ESQ.    HONIGMAN MILLER SCHWARTZ AND COHN LLP    2290 FIRST NATIONAL BUILDING    DETROIT, MI 48225 |
| 3437146 | ROBERT E. GREENBERG, ESQ.    FRIEDLANDER MISLER SLOAN KLETZKIN    &OCHSMAN, PLLC    1101 Seventeenth Street, N.W.    Suite 700    Washington, D.C. 20036–4704 |
| 3311291 | ROBERT M. HIRSH, ESQ.    DUANE MORRIS LLP    380 LEXINGTON AVENUE    NEW YORK, NEW YORK 10022 |
| 3282577 | ROBERT S. PRINCE    KIRTON &McCONKIE    1800 EAGLE GATE TOWER    60 EAST SOUTH TEMPLE    SALT LAKE CITY, UTAH 84111–1004 |
| 3214601 | Reid and Riege, P.C.    One Financial Plaza, 31st Floor    Hartford, CT 06103–2608 |
| 4134649 | Rosa Dominy    Bankruptcy Administration    IKON Financial Services    1738 Bass Road    P.O. Box 13708    Macon, GA 31208–3708 |

3646689    SCHIFFRIN &BARROWAY, LLP       Three Bala Plaza East, Suite 400       Bala Cynwyd, PA 19004       Attn J.H. Meltzer, K.B. Bornstein, Esqs.

3660388    SHAW PITTMAN LLP       2300 "N" Street, NW       Washington, D.C. 20037       Attn T.J. Catliota, A.J. Love

3282579    SHAWN M. CHRISTIANSON, ESQ.       BUCHALTER, NEMER, FIELDS &YOUNGER       A PROFESSIONAL CORPORATION       333 MARKET STREET, 25TH FLOOR       SAN FRANCISCO, CALIFORNIA 94105–2130

3363179    SHAWN M. CHRISTIANSON, ESQ.       Buchalter, Nemer, Fields &Younger       333 Market Street, 25th Fl.       San Francisco, CA 94105–2130

3368211    SHEARMAN &STERLING, LLP       599 Lexington Avenue       New York, N.Y. 10022       Attn.: Constance A. Fratianni

3266595    SQUIRE, SANDERS &DEMPSEY LLP       312 Walnut Street       Suite 3500       Cincinnati, OH 45202–4036       Attn.: Jeffrey A. Marks, Esq.       Kim D. Seaton, Esq.

4242668    STEPHEN KAROTKIN       WEIL, BOTSHAL &MANGES LLP       767 FIFTH AVENUE       NEW YORK, NEW YORK 10153

3525006    Satterlee Stephens Burke &Burke LLP       Attn: Christopher L. Belmonte, Esq.       Attn: Pamela Bosswick, Esq.       Counsel to Onesat SRL       230 Park Avenue       New York, NY 10169

3254819    Scott A. Zuber, Esq.       Pitney, Hardin, Kipp &Szuch, LLP       P.O. Box 1495       Morristown, NJ 07962–1945

3328237    Shawn M. Christianson, Esq.       Buchalter, Nemer, Fields &Younger, P.C.       333 Market Street, 25th Floor       San Francisco, California 94105–2130

3225698    Stephen J. Shimshak       Paul, Weiss, Rifkind, Wharton       Garrison, LLP       1285 Avenue of the Americas       New York, New York 10019–6064

3726401    Stroock &Stroock &Lavan LLP       Attn: M.J. Sage, K.M. Hansen       180 Maiden Lane       New York, New York 10038

3371492    TONY M. DAVIS, ESQ.       Baker Botts, L.L.P.       One Shell Plaza       910 Louisiana       Houston, TX 77002

3213645    Thomas O. Bean       Nutter, McClennen &Fish, LLP       World Trade Center West       155 Seaport Blvd.       Boston, MA 02210

3238809    VICTOR A. SAHN, ESQ.       ISRAEL SAPERSTEIN, ESQ.       SULMEYERKUPETZ       333 SOUTH HOPE STREET, 35TH FLOOR       LOS ANGELES, CA 90071

3238811    WALTER PAGE, ESQ       ASTRO AEROSPACE       6384 VIA REAL       CARPINTERIA, CA 93013

3282426    WILLIAM E. NILES       EXECUTIVE VICE PRESIDENT AND       GENERAL COUNSEL       ASCENT MEDIA GROUP, INC.       520 BROADWAY, 5TH FLOOR       SANTA MONICA, CALIFORNIA 90401

3258736    WILLIAM E. NILES       EXECUTIVE VICE PRESIDENT AND GENERAL COU       ASCENT MEDIA GROUP, INC.       520 BROADWAY,. 5TH FLOOR       SANTA MONICA, CA 90401

3266549    WINSTON &STRAWN LLP       200 Park Avenue       New York, New York 10166       Attn.: Steven M. Schwartz, Esq.       Alan D'Ambrosio, Esq.

3311219    WilTel Communications, LLC       One Technology Center       Legal Department       Tulsa, OK 74103       Attn.: Amy Callard, Esq., Mail Drop 15–L

TOTAL: 90

## Exhibit D

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 03-41710

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LORAL SPACE & COMMUNICATIONS LTD., ET AL.,


                    Debtors.


- - - - - - - - - - - - - - - - - - - - -x


                    U.S. Bankruptcy Court

                    One Bowling Green

                    New York, New York


                    June 16, 2009

                    12:42 p.m.


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1    MOTION of Reorganized Debtors to (I) Enforce the Order

2    Confirming the Debtors Fourth Amended Join Plan, (II) Dismiss

3    Phil Ivaldy's Appeal of Order Granting Application for Final

4    Decree and Closing of this Chapter 11 Case.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed By:  Esther Accardi

25

3

1    A P P E A R A N C E S :

2    WEIL GOTSHAL & MANGES, LLP

3         Attorneys for Debtors

4         767 Fifth Avenue

5         New York, New York 10153

6

7    BY:   SHAI Y. WAISMAN, ESQ.

8

9

10   PHIL IVALDY

11   Appearing Pro Se

12   (Telephonically)

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1                    P R O C E E D I N G S

 2           THE COURT:  Loral.

 3           MR. WAISMAN:  Good afternoon, Your Honor.

 4           THE COURT:  Good afternoon.

 5           MR. WAISMAN:  Shai Waisman, Weil Gotshal & Manges on

 6   behalf of the reorganized Loral debtors.

 7           Your Honor, we're here on the debtors' motion to

 8   enforce the confirmation order, dismiss an appeal, or in the

 9   alternative, to strike designation of record.

10           This relates to the notice of appeal served and filed

11   by Mr. Ivaldy.  I'm not sure if Mr. Ivaldy is present or

12   participating on the phone.

13           THE COURT:  Are you on the phone, Mr. Ivaldy?

14           MR. IVALDY:  I'm here.

15           THE COURT:  Okay.

16           MR. WAISMAN:  Your Honor, unfortunately, the Court is

17   probably all too familiar with the background of this matter.

18   I won't belabor the record as it's been a long morning.

19           In summary, Mr. Ivaldy -- Your Honor issued a final

20   decree closing the lead case in this matter on April 15, 2009.

21   And that order was entered on the docket of the cases on

22   April 15, 2009.

23           Mr. Ivaldy did not file his notice of appeal until

24   thirteen days later, April 28, 2009.  Manifestly, he has not

25   complied with Bankruptcy Rule 8002.  The appeal is late and the
```

5

1  Bankruptcy Court retains the jurisdiction to dismiss the appeal

2  for being untimely.

3         In the alternative, Your Honor, if one were to read

4  the notice of appeal and the subsequent responses filed by Mr.

5  Ivaldy, they make clear they have nothing to do, whatsoever,

6  with Your Honor's order entering a final decree in these cases.

7  Rather, Mr. Ivaldy would like to reargue or collaterally attack

8  Your Honor's confirmation order which is now years old.  And

9  which Mr. Ivaldy objected to in the original proceeding lost,

10  took an appeal from that to the District Court as well as the

11  Second Circuit.  Denied by both courts and petitioned to be

12  heard by the Supreme Court, and that, too, was denied.

13         As such, the confirmation order is final, non-

14  appealable and the collateral attack is, in fact, a violation

15  of the final confirmation order, itself.  And Your Honor should

16  enforce the confirmation order and dismiss the appeal on those

17  grounds.

18         Finally, if Your Honor were to entertain or otherwise

19  believe that the appeal were timely, for the reasons stated in

20  our papers, and I don't have to go on, we would ask that the

21  designation of the record be stricken as requested, as none of

22  the documents Mr. Ivaldy seeks to rely on in his appeal, were

23  submitted in connection with Your Honor's consideration of the

24  final decree, and, therefore, do not constitute part of the

25  record.

6

1          Unless Your Honor has any questions, those are the

2    simple facts before the Court.

3          THE COURT:  Okay.

4      (Pause)

5          THE COURT:  All right.  Mr. Ivaldy, do you have

6    anything beyond what you submitted?

7          MR. IVALDY:  I'd like to go through item-by-item.

8          One of the statements that had just been made, I guess

9    the first issue would be whether or not my appeal is timely.

10   Does the Court have any problems with my appeal?

11         THE COURT:  Yes.  I believe it is -- based on what I

12   see as to the facts, the appeal is untimely.

13         MR. IVALDY:  I worked with the Court and submitted the

14   appeal.  Was informed that the appeal was submitted in a timely

15   fashion.  And the Clerk had not docketed the appeal as he

16   received it.

17         THE COURT:  Where is that set forth?

18         MR. IVALDY:  I'm sorry; I cannot hear you very well.

19         THE COURT:  I don't -- where is that set forth?  I can

20   tell you it's very unusual for anyone in our Clerk's office to

21   give anyone a statement that something is timely or not.

22         MR. IVALDY:  When did you file your order?

23         THE COURT:  The order, itself, was entered April 15th.

24         MR. IVALDY:  That's correct.  And then I have ten days

25   to respond, is that correct?

7

1        THE COURT:  Well, in fact, you had more than ten days,

2   because April 25th was a Saturday.

3        MR. IVALDY:  Okay.  So you would receive it on the

4   following Monday then.

5        THE COURT:  The 28th.  I'm sorry, the 27th.

6        MR. IVALDY:  Yes, the 27th, is that correct?

7        THE COURT:  That would have been timely.  But our

8   records show that it was actually docketed on the 28th.

9        MR. IVALDY:  Yes.  But the clerk had received it in a

10  timely fashion and notified me of that.

11       THE COURT:  Do you have any record of that?

12       MR. IVALDY:  Do you want me to pull out my records

13  from Express Mail showing that you received it in a timely

14  fashion?  Are we going to play the same game that the District

15  Court played with me?

16       THE COURT:  Well, it's not a game, sir, this is

17  important.

18       MR. IVALDY:  I perceive it as a game.

19       THE COURT:  All right.  Why don't we move to the next

20  point then?

21       MR. IVALDY:  If you want me to I will get my records

22  showing that the papers were filed in a timely manner.  And as

23  far as I'm concerned, Weil Gotshal is playing a game with me.

24  They have the papers; they received the papers the same day as

25  you did.

8

1          If Weil Gotshal is willing to submit an affidavit that

2    they did not receive it in a timely fashion then let them do

3    it.  But as far as I'm concerned, without that affidavit this

4    is a non-issue.

5          THE COURT:  Well, no, that's not really right.  It was

6    filed on the 28th.

7          MR. IVALDY:  I don't care when it was filed --

8          THE COURT:  Well, I do.  That's the date that sets the

9    timeline unless something extraordinary shows that it was

10   received and should have been filed at an earlier date.  And I

11   have no evidence of that fact.  Do you have an affidavit of

12   service or filing?

13         MR. IVALDY:  Yes.

14         THE COURT:  Where is that?

15         MR. IVALDY:  I beg your pardon?

16         THE COURT:  Where is it?

17         MR. IVALDY:  I have it.

18         THE COURT:  Did you file it?

19         MR. IVALDY:  I have from the Clerk that my papers were

20   filed on time.

21         THE COURT:  No, no.  Did you file it with the Court,

22   the affidavit of service?

23         MR. IVALDY:  Yes.  Along with the papers.

24         MR. WAISMAN:  Your Honor, with Mr. Ivaldy's notice of

25   appeal, there appears a certificate of service signed by Mr.

9

1   Ivaldy indicating that he sent, by U.S. Mail on April 24th, his

2   notice of appeal to Your Honor's chambers, our offices, the

3   Solicitor General of the United States, and the United States

4   Attorney General.

5          Irrespective of that, the docket clearly indicates the

6   appeal was not filed until the 28th.  And notwithstanding Mr.

7   Ivaldy's pro se appearance in these cases, he is very familiar

8   with the rules of procedure, has filed over a hundred

9   pleadings, and has repeatedly appeared before this Court.  And

10  as he indicates, the District Court, as well.  And has been

11  repeatedly admonished that the rules aren't a game and they

12  need to be complied with.

13         THE COURT:  Okay.

14         MR. IVALDY:  I think we should ask Weil Gotshal the

15  date that they received my notice.

16         THE COURT:  No, that's not the relevant issue.  The

17  issue is when it was received by the Clerk of the Court.

18         MR. IVALDY:  It was the Clerk of the Court received it

19  the same day that Weil Gotshal did.

20         THE COURT:  All right.  Did you have anything else on

21  this?

22         MR. IVALDY:  Are you speaking to me?

23         THE COURT:  Yes.

24         MR. IVALDY:  Not on this issue.

25         THE COURT:  Okay.  Anything else?

10

1          MR. IVALDY:  I think that Weil Gotshal should be able

2     to make a statement on the date that they received it.

3          THE COURT:  I already told you that's not relevant.

4          MR. IVALDY:  Well, the date --

5          THE COURT:  Okay.  Do you have anything else, Mr.

6     Ivaldy?

7          MR. IVALDY:  On this issue, no.

8          THE COURT:  Okay.  On anything else?

9          MR. IVALDY:  Well, of course.  I mean, I was given an

10    agenda that had gotten to me today.  But I never had it before.

11    And there's a service list that was sent by Federal Express.

12    Federal Express didn't give it to me on time for this hearing,

13    number one.

14          And the affidavit previously by Donald Agean on his

15    affidavit of service -- from my perception, his affidavit of

16    service was late.  So I don't understand what the --

17          THE COURT:  But --

18          MR. IVALDY:  I think that what you have to do -- what

19    I urge the Court to do is have a five-minute recess and you

20    check with the Clerk and see when they got this notice of

21    appeal.  I think that that would be the easiest thing and --

22          THE COURT:  All right.  Do you have anything else, Mr.

23    Ivaldy?

24          MR. IVALDY:  I filed my notice of appeal in a timely

25    manner.

11

1      THE COURT:  Okay.

2      MR. IVALDY:  I see no documentation that it hasn't

3  been done.

4      THE COURT:  All right.  Okay.  I have before me the

5  debtors' motion to dismiss Mr. Phil Ivaldy's appeal.  My order

6  dated April 15, 2009 closing the debtors' chapter 11 case.

7      The debtor seeks various alternative forms of relief

8  in its motion.  But the first form of relief it seeks is really

9  a gatekeeping item.  The debtor contends that Mr. Ivaldy's

10  appeal was untimely and, therefore, that it should be

11  dismissed.

12      MR. IVALDY:  They have not given any proof of that.

13      THE COURT:  I'm giving my ruling, sir; I'm not in oral

14  argument at this point.

15      MR. IVALDY:  Okay.

16      THE COURT:  As far as the motion is concerned, there

17  are three issues as I see it.

18      First, is the issue as to whether this is an issue

19  that the Bankruptcy Court should address or whether it's an

20  issue properly addressed by the District Court to which the

21  appeal was directed.  Generally speaking, the filing of a

22  notice of appeal divests the lower court of jurisdiction over

23  matters covered by the appeal.  However, the timely filing of a

24  notice of appeal is mandatory in jurisdiction.  If the notice

25  is not timely filed, the Appellate Court is without

12

1    jurisdiction to hear the appeal.  That's a quote from In re

2    Williams, 216 F.3d, 1295, 1298 (11th Cir. 2000).

3           More specifically, this issue has been addressed by,

4    at least, one court directly.  Where the court found that the

5    Bankruptcy Court had jurisdiction to consider the timeliness of

6    the notice of appeal as this ruling said.  The notice of appeal

7    from the final order generally deprives a lower court over

8    jurisdiction over the merits of the matter subject to appeal.

9    However, the Bankruptcy Court retains certain authority

10   concerning the timeliness of the appeal.  Including, for

11   example, the authority to extend the period of time for filing

12   a notice of appeal, pursuant to Rule 8002(c)

13          In any event -- and I'm sorry, that's in In re Geiger,

14   2006 U.S. District LEXIS 39570, pages 2-3 (W.D. Wisconsin June

15   12, 2006).  So I believe that it is appropriate for me to

16   decide this issue.

17          Secondly, there's an issue, given the fact that Mr.

18   Ivaldy is pro se, as to whether I should view an untimely

19   notice of appeal as treated for him as a request for an

20   extension of time to file the notice of appeal, which would, if

21   I would do that, at the time, given the time he filed it, be

22   liberally granted.  However, the Second Circuit has made it

23   clear that a party's filing of a late notice of appeal, even

24   when the party is pro se and provides affording evidence of

25   excusable neglect, cannot be treated as an application to

13

1    extend the time to file a notice of appeal.  Campos v. LeFevre,

2    825 F.2d 671, 676 (2d Cir. 1987).  See also In re R.H. Macy and

3    Company, 173 B.R. 301 at 302 (S.D.N.Y. 1994).

4         Finally, there's the underlying issue whether the

5    appeal was, indeed, untimely.  The certificate of service

6    indicates that the appeal was filed on April 24th -- I'm sorry,

7    it was mailed on April 24, 2009, which would have fallen within

8    the proper timely period for an appeal from the April 15, 2009

9    order.  However, mailing does not start the -- or count as far

10   as the time to appeal is concerned.  The time of filing of the

11   notice is measured not from mailing but from actual receipt by

12   the Bankruptcy Clerk.  In re Geiger, again, 2006 U.S. District

13   LEXIS 39570 at pages 3-4, citing In re Maurice, 69 F.3d 830-832

14   (7th Cir. 1995), as well as Bankruptcy Rule 8002(a).

15        Here, the appeal is not shown as having been filed

16   until April 28, which was a day after the expiration of the

17   time --

18        MR. IVALDY:  You have --

19        THE COURT:  Excuse me.  Of the time to appeal.  And

20   that evidence of filing, without any evidence to the contrary

21   other than Mr. Ivaldy's statement over the phone at this

22   hearing, that he believes it was received before the 28th, to

23   my mind is sufficient to establish the untimeliness of the

24   appeal.

25        So for those reasons, in the absence of any proof to

14

1    the contrary, I will treat the filing date as the receipt date

2    and find that the appeal is untimely and should be dismissed.

3           In light of that, I don't believe that it would be

4    appropriate to address the other forms of relief sought in the

5    motion.

6           MR. WAISMAN:  Thank you, Your Honor.  Would Your Honor

7    like us to settle an order?

8           THE COURT:  Just submit the order.

9           MR. WAISMAN:  Thank you, Your Honor, we will.

10          MR. IVALDY:  What are you going to do if you find out

11   later that it was received on time?

12          THE COURT:  I am not going to check, that's not what

13   judges do.

14          MR. IVALDY:  But what are you going to do if I

15   submit -- if I get the Court to --

16          THE COURT:  I will have to decide that if and when you

17   make such a motion.

18          All right.

19          MR. WAISMAN:  Thank you, Your Honor.

20          THE COURT:  Thank you.

21       (Proceedings concluded at 1:03 p.m.)

22

23

24

25

15

1

2                              I N D E X

3

4                            R U L I N G S

5                                              PAGE LINE

6    Motion of Debtors' to Dismiss              14    2

7    Phil Ivaldy's Appeal as Untimely,

8    Granted

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

16

1

2                            C E R T I F I C A T I O N

3

4        I, Esther Accardi, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        ESTHER ACCARDI

         Certified Electronic Transcriber (CET**D-485)

9

10       Veritext LLC

11       200 Old Country Road

12       Suite 580

13       Mineola, New York 11501

14

15       Date: June 18, 2009

16

17

18

19

20

21

22

23

24

25

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re                                              :        **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,       :        **08-13555 (JMP)**
                                                   :
                              **Debtors.**         :        **(Jointly Administered)**
-------------------------------------------------------------------x

## ORDER STRIKING FROM THE RECORD WILLIAM KUNTZ'S NOTICE OF APPEAL OF THE ORDER AUTHORIZING LEHMAN COMMERCIAL PAPER INC. TO PURCHASE FAIRPOINT PARTICIPATION

Upon the Motion dated December 16, 2009 (the "Motion"), of Lehman

Commercial Paper Inc. ("LCPI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors in possession (together, the "Debtors"), to strike from the record of these cases

the notice of appeal (the "Notice of Appeal") filed by William Kuntz, III ("Kuntz") of the order

of this Court, entered on October 16, 2009, authorizing LCPI to purchase a participation in the

loan known as FairPoint Communications Term Loan A from Variable Funding Trust 2008-1

[Docket No. 5551] (the "FairPoint Order") or, in the alternative, to dismiss the appeal of the

FairPoint Order; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. §157(b); and venue being proper

before this Court pursuant to  28 U.S.C. §§ 1408 and 1409; and due and proper notice having

been provided in accordance with the procedures set forth in the amended order entered February

13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the

United States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York

and (vi) Kuntz, and it appearing that no other or further notice need be provided; and a hearing

having been held to consider the relief requested in the Motion (the "Hearing"); and the Court

having found and determined that the relief sought in the Motion is in the best interests of LCPI,

its estate and creditors, and all parties in interest and that the legal and factual bases set forth in

the Motion establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefore,

THE COURT HEREBY FINDS, DETERMINES AND CONCLUDES THAT:

    A.    Kuntz's motion (the "Motion to Extend") to extend the period set forth in the Rule 8002(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") was filed after the expiration of the period set forth in Bankruptcy Rule 8002(c).

    B.    The Notice of Appeal was filed after the expiration of the period set forth in Bankruptcy Rule 8002(a).

    C.    Kuntz did not claim nor offer any facts to support any claim of excusable neglect with respect to the untimely filing of the Motion to Enlarge or the Notice of Appeal.

FOR ALL OF THE FOREGOING AND AFTER DUE DELIBERATION THE COURT ORDERS THAT:

    1.    The Motion is hereby granted.

    2.    The Motion to Extend is denied.

    3.    The Notice of Appeal is stricken from the record of these cases.

Dated: January __, 2010
    New York, New York

                       _____
                       UNITED STATES BANKRUPTCY JUDGE