**Hearing Date and Time: January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: January 6, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Sarah L. Cave

Attorneys for James W. Giddens
as Trustee for the SIPA Liquidation of
the Business of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | |
| **LEHMAN BROTHERS INC.** | : | **08-01420 (JMP) SIPA** |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------x

### NOTICE OF JOINT MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN BROTHERS INC. PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT AGREEMENT OF ADAMS GOLF SECURITIES LITIGATION AND OTHER RELATED RELIEF

PLEASE TAKE NOTICE that a hearing on the annexed joint motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI," together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession, the "Debtors") and James W. Giddens (the "SIPA Trustee"), as trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI"), (i) for authorization and approval, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, of a settlement agreement and (ii) for a limited modification of the automatic stay provided for under section 362(a) of the Bankruptcy Code, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York, 10004, Attn: Sarah L. Cave, Esq., attorneys for the SIPA

Trustee; (iv) Securities Investor Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, DC 20005, Attn: Kenneth J. Caputo, Esq.; (v) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (vi) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases; and (vii) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **January 6, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 22, 2009
        New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

/s/ Sarah L. Cave
Sarah L. Cave

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
as Trustee for the SIPA Liquidation of
the Business of Lehman Brothers Inc.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Sarah L. Cave

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------------x
                                     :

**In re**                                  :    **Chapter 11 Case No.**
                                     :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
                                     :

             **Debtors.**        :    **(Jointly Administered)**
                                     :

------------------------------------------------------------------------------x
                                       :

**In re**                                  :
                                     :    **Case No.**

**LEHMAN BROTHERS INC.,**           :
                                     :    **08-01420 (JMP) (SIPA)**

             **Debtor.**       :
                                     :

------------------------------------------------------------------------------x

**JOINT MOTION OF LEHMAN BROTHERS**
**HOLDINGS INC. AND LEHMAN BROTHERS INC. PURSUANT TO**
**RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT AGREEMENT**
**OF ADAMS GOLF SECURITIES LITIGATION AND OTHER RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman") and James W. Giddens (the "SIPA Trustee"), trustee for the Securities Investor Protection Act ("SIPA") liquidation of Lehman Brothers Inc. ("LBI"), file this joint motion (the "Motion") and respectfully represent:

### Preliminary Statement

1.      On or about June 11, 1999, certain individuals (the "Class Plaintiffs") who had bought Adams Golf Inc. ("Adams Golf") shares in or traceable to its July 9, 1998 initial public offering ("IPO") filed a class action complaint (the "Complaint") with the United States District Court of the District of Delaware (the "District Court") against Adams Golf, certain of its current and former officers and directors (collectively, the "Adams Golf Defendants"), and three of the underwriters of Adams Golf's IPO (the "Underwriter Defendants" and together with the Adams Golf Defendants, the "Defendants") alleging various violations of Sections 11, 12 and 15 of the Securities Act of 1933.  Although LBI was the Lehman entity that served as underwriter in connection with the IPO, the Complaint names LBHI as one of the Underwriter Defendants.  LBI is not a named party to the action.  *In re Adams Golf, Inc. Securities Litigation*, No. 99-371-GMS (the "Action").  Due to the commencement of LBHI's chapter 11 case, the Action has been stayed as against LBHI.

2.      On or about September 22, 2009, in connection with the Action, the Class Representatives[1] filed five proofs of claims (collectively, the "Proof of Claims") in LBHI's

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement (defined below).

chapter 11 case in their capacity as individual claimants and as representatives of the Class

Plaintiffs.

3.       After almost 10 years of litigation and discovery, the parties have now

reached an agreement to settle the Action and have offered LBHI and LBI the opportunity to

participate without any cost to either estate.  Pursuant to the Settlement Agreement (defined

below), the Class Plaintiffs have agreed to release all claims asserted or that could have been

asserted against LBHI and LBI in connection with the Action, including disallowance and

expungement of the Proofs of Claims, in exchange for a payment to be made by the remaining

Defendants.  Both LBHI and LBI will not be liable for any payment obligation with respect to

the settlement.  LBHI and LBI will be required to release nominal indemnification claims for

fees and costs incurred in connection with defending the Action, which ceased accruing as of the

Commencement Date because of the automatic stay.  Because LBHI does not believe it acted in

connection with Adams Golf's IPO, it is unlikely that LBHI has a right to indemnification.

**Background**

4.       Commencing on September 15, 2008 and periodically thereafter, LBHI

and certain of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' Chapter

11 Cases have been consolidated for procedural purposes only and are being jointly administered

pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").  The Debtors are authorized to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On September 19, 2008, the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New York, entered an order commencing liquidation (the "LBI Liquidation Order") with respect to LBI pursuant to the provisions of SIPA in the case captioned *Securities Investor Protection Corporation v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL) (the "SIPA Proceeding").

7.      The LBI Liquidation Order, among other things, (i) appointed the SIPA Trustee for the SIPA liquidation of the business of LBI pursuant to § 78eee(b)(3) of SIPA and (ii) removed LBI's case to this Court pursuant to § 78eee(b)(4) of SIPA.

## Jurisdiction

8.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

9.      LBHI and the SIPA Trustee request (i) authorization and approval, pursuant to Bankruptcy Rule 9019, of a settlement agreement (the "Settlement Agreement") with the Class Plaintiffs, the Adams Golf Defendants, and the Underwriter Defendants (together, the "Parties"), dated as of December 9, 2009, a copy of which is annexed to the Motion as Exhibit 1, and (ii) for a limited modification of the automatic stay provided for under section 362(a) of the Bankruptcy Code to allow the District Court to consider LBHI's and LBI's participation in the Settlement Agreement, and to enter an order in respect of a request by the Parties for approval of the Settlement Agreement.  LBHI and the SIPA Trustee further request that the Court waive the

requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested

relief be effective immediately.

### The Settlement Agreement

10.     To avoid the ongoing expense and inherent risk associated with litigation,

the Parties, through arm's-length negotiations, have agreed to settle all disputes raised or that

could have been raised in the Action.  Although the Action has been stayed as against LBHI, the

Class Plaintiffs and remaining Defendants have offered LBHI and LBI, as an unnamed party to

the Action, an opportunity to participate in the Settlement Agreement in order to achieve and

complete resolution of the Action.  The salient terms of the Settlement Agreement, as applicable

to LBHI and LBI, are as follows:[2]

- LBHI's and the SIPA Trustee's entry into the Settlement Agreement is subject to the entry of a final non-appealable order in the Chapter 11 Cases and the SIPA proceeding that (1) approves LBHI's and LBI's entry into the Settlement Agreement and the release of any indemnification claims they may have with respect to the Action and (2) approves the Claim Disallowance (as defined below).

- Once a final non-appealable order approving the Settlement Agreement is entered in the District Court (the "Effective Date"), the Class Members and Defendants shall release any claims against any of the Released Parties, including LBHI, LBI and the SIPA Trustee, with respect to the Action.

- Upon the Effective Date, the Underwriter Defendants including LBHI, LBI, and their counsel shall release any claim for indemnification against Adams Golf or the other Underwriter Defendants (the "Indemnification Claims") relating to the Action.

- Upon the Effective Date, any Proofs of Claim identified by LBHI, the SIPA Trustee on behalf of LBI, or any other Debtor, including, but not limited to those listed on Schedule 1 annexed to the Settlement Agreement, that have been filed or may be filed in the Chapter 11 Cases and/or in the SIPA Proceeding by a member of the Class seeking damages arising from or relating to the claims resolved by the Settlement Agreement will be deemed

---

[2] To the extent there is an inconsistency between the language of this Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

disallowed and expunged from the applicable claims register to the extent the holder of such claim has not opted out of the Class (the "Claim Disallowance"). Such Claim Disallowance shall occur upon notice by LBHI, the SIPA Trustee on behalf of LBI, or any other Debtor to their respective claims agent.

### The Settlement Agreement is Fair and Equitable and Falls Well Within the Range of Reasonableness and Should Be Approved

11.     LBHI's and LBI's entry into the Settlement Agreement is in their best interests and in the best interest of their respective estates, and should be approved under Bankruptcy Rule 9019. Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

12.     The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

13.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

14.    The Court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

15.    The Settlement Agreement satisfies the standard for approval. First and foremost, the Settlement Agreement provides that LBHI and LBI will be released of all claims related to the Action that have been or could have been asserted by the Class Plaintiffs without requiring either of them to make any payment. All LBHI and the SIPA Trustee have been required and agreed to do is release nominal Indemnification Claims the estates may have with respect to the Action. Because LBHI did not act as an underwriter of Adams Golf's IPO, and LBHI believes that it has only been named in the Action in error, it is highly unlikely that LBHI has a right to assert Indemnification Claims. Moreover, given that LBI was not a named party to the Action, it has incurred almost no costs or expenses for which it would seek indemnification. Accordingly, for essentially no costs, LBHI and LBI obtain the benefits of the Settlement Agreement and will eliminate claims against their estates.

16.     Furthermore, the Claim Disallowance described in the Settlement Agreement will spare LBHI's and LBI's respective estates the time and expense of having to object to the Proofs of Claims.  Because the Settlement Agreement will only apply to Class Plaintiffs, approving the Settlement Agreement, including the Claim Disallowance, will not prejudice the due process rights of class members who opted out of the Class Plaintiffs.

17.     Accordingly, the Settlement Agreement falls well above the lowest point in the range of reasonableness.  Approval of the Settlement Agreement, including release of the Indemnification Claims and the Claim Disallowance, is in the best interests of LBHI's and LBI's respective estates, creditors, and other parties in interest.

### A Limited Modification of the Automatic Stay is in the Best Interest of LBHI's and LBI's Estates

18.     In light of the foregoing, a limited modification of the automatic stay provided for under section 362(a) of the Bankruptcy Code to allow the District Court to consider the Settlement Agreement, including LBHI's and LBI's participation therein, is appropriate so that the Parties can consummate the Settlement Agreement and achieve a final resolution.

### Notice

19.     No trustee has been appointed in the Chapter 11 Cases.  LBHI has served notice of this Motion in accordance with the procedures set forth in the amended order entered in the Chapter 11 Cases on February 13, 2009 governing case management and administrative procedures [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these Chapter 11 Cases.  The SIPA Trustee has provided notice of this Motion in accordance with the order entered in the SIPA Proceeding implementing certain notice

and case management procedures and other related relief [Docket No. 240].  LBHI and the

SIPATrustee submit that no other or further notice need be provided.

        20.     No previous request for the relief sought herein has been made by LBHI

or the SIPA Trustee to this or any other court.

        WHEREFORE LBHI and the SIPA Trustee respectfully request that the Court

grant the relief requested herein and such other and further relief as is just.

Dated: December 22, 2009
     New York, New York


               /s/ Richard P. Krasnow
               Richard P. Krasnow

               WEIL, GOTSHAL & MANGES LLP
               767 Fifth Avenue
               New York, New York 10153
               Telephone: (212) 310-8000
               Facsimile: (212) 310-8007

               Attorneys for Debtors
               and Debtors in Possession


Dated:  December 22, 2009
     New York, New York


               /s/ Sarah L. Cave
               Sarah L. Cave

               HUGHES HUBBARD & REED LLP
               One Battery Park Plaza
               New York, New York 10004
               Telephone: (212) 837-6000
               Facsimile: (212) 422-4726

               Attorneys for James W. Giddens, Trustee for
               the SIPA Liquidation of Lehman Brothers Inc.

**<u>Exhibit 1</u>**
**(Settlement Agreement)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE ADAMS GOLF, INC. SECURITIES
LITIGATION,

CONSOLIDATED
C.A. No. 99-371-GMS

## STIPULATION OF SETTLEMENT

THIS STIPULATION OF SETTLEMENT ("Stipulation") is entered into this 9th

day of December, 2009 (the "Execution Date") by and among Plaintiffs Todd Tonore, F.

Kenneth Shockley, John Morrash and Patricia Craus ("Plaintiffs") on behalf of a class as

defined herein of persons who made purchases in or traceable to Adams Golf Inc.'s

("Adams Golf") initial public offering ("IPO"), and Defendants, Adams Golf, B. H.

Adams, Darl P. Hatfield, Richard Murtland, Paul F. Brown, Roland E. Casati, Finis F.

Conner and Stephen R. Patchin (collectively, "Adams Golf Defendants"), Lehman

Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Inc. ("LBI") (an unnamed party to

the Action), Nationsbanc Montgomery Securities, LLC (now Banc of America Securities,

LLC) and Ferris, Baker Watts, Inc. (now RBC Capital Markets Corporation)

(collectively, "Underwriter Defendants") (collectively, with the Adams Golf Defendants,

"Defendants").

## I.    THE LITIGATION

On June 11, 1999, persons who had bought Adams Golf shares in or traceable to

the July 9, 1998 IPO filed a class action complaint pursuant to Sections 11, 12 and 15 of

1

the Securities Act of 1933, 15 U.S.C.A. §§77k, 77l and 77o, against Defendants in the
United States District Court for the District of Delaware (the "Action").

The complaint alleged, in pertinent part, that the Registration Statement for the
IPO omitted disclosure of both the existence and the risk of gray marketing, and that the
Registration Statement materially misrepresented how Adams Golf's clubs were sold to
the public. The complaint also alleged that the Registration Statement materially
misrepresented or omitted the impact of an industry-wide oversupply of golf clubs. The
complaint alleged that the value of Adams Golf stock declined precipitously after the
IPO.

On August 13, 1999, Plaintiffs moved to consolidate the case with related cases,
and they moved to be appointed Lead Plaintiffs and for their counsel to be appointed lead
and liaison counsel. On April 17 and 25, 2000, Judge Roderick R. McKelvie granted the
motion to consolidate and appointed Plaintiffs as lead plaintiffs, Berger & Montague,
P.C. as Plaintiffs' Lead Counsel, and Rosenthal, Monhait, Gross & Goddess, P.A. (now
Rosenthal, Monhait & Goddess, P.A.) as Liaison Counsel. Thereafter, Plaintiffs filed a
Consolidated and Amended Class Action Complaint on May 17, 2000.

On July 6, 2000, the Adams Golf Defendants and the Underwriter Defendants
filed motions to dismiss. Judge McKelvie granted the motions to dismiss on December
10, 2001. Plaintiffs filed a motion to alter or amend the judgment, but Judge McKelvie
left the bench before ruling on the motion. On January 6, 2003, the case was reassigned
to Judge Kent A. Jordan, who denied Plaintiffs' motion to alter or amend the judgment on
August 27, 2003.

2

Plaintiffs appealed Judge Jordan's decision to the Court of Appeals for the Third

Circuit. The Third Circuit reversed as to the gray marketing allegations, affirming as to

the allegations concerning industry-wide oversupply, and remanded to the District Court

on September 17, 2004.

On June 27, 2005, Judge Jordan certified a class (the "Class") consisting of "all

persons who purchased shares of Adams Golf in, or traceable to Adams Golf's IPO

between July 10, 1998 and October 22, 1998" (the "Class Period"). The Class excludes

Defendants and their affiliates. The Court appointed Todd Tonore, F. Kenneth Shockley,

John Morrash and Patricia Craus as Class Representatives. Judge Jordan affirmed this

Class definition in signing the Class Certification Order on August 3, 2005. On

September 1, 2005, Plaintiffs filed their Second Consolidated and Amended Class Action

Complaint ("Complaint"). The Court denied the ensuing motion to dismiss. On

November 4, 2005, Plaintiffs sent a Notice of Pendency of the Class Action to all Class

Members. Five Class Members requested exclusion.

Thereafter, Plaintiffs took extensive discovery, including productions of

documents from Defendants, requests for admissions, document subpoenas on third

parties and twenty-five depositions. Plaintiffs named two experts who produced reports,

and Defendants named six experts who produced reports. The parties deposed almost all

of the experts, and Plaintiffs named a rebuttal expert. On September 11, 2006, the

Underwriter Defendants and the Adams Golf Defendants each filed motions for summary

judgment against Plaintiffs and *Daubert* motions against Plaintiffs' experts. Plaintiffs

filed *Daubert* motions against most of Defendants' expert witnesses on the same date.

Soon after all the motions were briefed, in November 2006, Judge Jordan was elevated to

the Third Circuit.  The case was assigned to Magistrate Judge Mary Pat Thynge, who, on

March 5, 2007, terminated all pre-trial and trial dates previously set by Judge Jordan.

        The case was reassigned to Chief Judge Gregory M. Sleet on February 7, 2008.

Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its

subsidiaries (collectively, the "Debtors") commenced with the United States Bankruptcy

Court for the Southern District of New York (the "Bankruptcy Court") voluntary cases

under Chapter 11 of title 11 of the United States Code (the "Chapter 11 Cases"), and this

Action was stayed as to LBHI.  On September 19, 2008, a proceeding was commenced

under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI (the

"SIPA Proceeding"), which proceeding is now pending before the Bankruptcy Court.

James W. Giddens (the "LBI Trustee") was appointed trustee for LBI pursuant to SIPA.

        The Court reinstated the case against all other defendants and Judge Sleet held a

status conference on January 16, 2009. Thereafter, Judge Sleet heard argument on the

motions for summary judgment and the *Daubert* motions, and set September 11, 2009 for

the pretrial conference, and October 13, 2009 for the trial.  Subsequently, Judge Sleet

denied most of the relief sought in the motions.

        The parties mediated before retired Judge Nicholas H. Politan on September 9,

2009, two days before the scheduled pretrial conference.  As a result of that mediation,

the parties, after arms-length bargaining, reached a settlement that also includes LBI and

LBHI.  Defendants and their insurers, except LBI and LBHI, agreed to pay or cause to be

paid to Plaintiffs and the Class $16.5 million in cash plus up to an additional $1.25

million if the Adams Golf Defendants are successful in litigation ("the Insurance

Litigation") against their former insurance broker, Thilman & Filipini, LLC, or its

4

successor entities ("Thilman"), and/or Zurich American Insurance Company ("Zurich").

Thilman is alleged to have failed to give notice of the Action to Zurich, one of Adams

Golf's insurers, which denied coverage. The $1.25 million, or as much as is recovered up

to $1.25 million, will be paid from any settlement or judgment in the Insurance Litigation

after Adams Golf's attorney's fees and costs have been paid.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have expressly denied and continue to deny all allegations of any

wrongdoing or liability against them arising out of any of the conduct, statements, acts or

omissions alleged, or that could have been alleged, in the Action. Defendants have also

denied and continue to deny, *inter alia*, any allegations of material misrepresentations,

non-disclosures or lack of due diligence in connection with the Registration Statement.

They deny that Plaintiffs or the Class have suffered any damages, or that Plaintiffs or the

Class were harmed by any conduct alleged in the Action or that could have been alleged

therein. Defendants state that any harm to the Class was caused by factors other than

those alleged in the Complaint, and maintain that Defendants can prove the affirmative

defenses of loss causation and due diligence.

Nonetheless, Defendants have concluded that further conduct of the Action would

be protracted, expensive and distracting, and that it is desirable that the Action be fully

and finally settled.

## III.   PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT

Plaintiffs allege that the Registration Statement, pursuant to which they and the

Class bought their stock, contained material misstatements and omissions about, *inter*

*alia*, the existence and risk of the unauthorized distribution of Adams Golf Tight Lies

5

golf clubs to discount outlets, known as gray marketing.  Plaintiffs allege that they and

the Class members were damaged because of the fall in the price of Adams Golf stock

after the IPO, which Plaintiffs allege was caused by growing public awareness of the sale

of Adams Golf clubs, through the gray market, at discount prices.

Although Plaintiffs believe their allegations are sound, and believe they could

have prevailed at trial, they have concluded that it is in the best interest of the Class to

settle.  Plaintiffs considered the risks of trial and the time and expense of protracted

litigation, including appeals, especially since this litigation is more than 10 years old.

The Parties have, therefore, determined that it is desirable and beneficial that the Action

be settled in the manner and upon the terms and conditions set forth herein.

## IV.    TERMS OF SETTLEMENT

NOW THEREFORE, IT IS HEREBY AGREED, by and among Plaintiffs (on

behalf of themselves and the Class Members) and Defendants, by and through their

respective undersigned counsel of record, without any admission or concession on the

part of Plaintiffs of any lack of merit of the Action whatsoever, and without any

admission or concession by Defendants of any liability or wrongdoing or lack of merit in

the defenses to the Action whatsoever, subject to the approval of the Court pursuant to

Rule 23(e) of the Federal Rules of Civil Procedure, and subject to approval of the

Bankruptcy Court, with respect to LBHI, LBI, and the LBI Trustee, and in consideration

of the benefits flowing to the Settling Parties from the Settlement, that the Action and all

Released Claims as against the Released Parties shall be finally and fully compromised,

settled, released and dismissed with prejudice as to all Released Parties, upon and subject

to the following terms and conditions.

## 1.    Certain Definitions

The following terms, as used in this Stipulation, have the following meanings:

1.1    "Attorney's Fees and Costs" means the amount awarded by the Court for

Plaintiffs' counsel's attorney's fees and costs.

1.2    "Authorized Claimant" means any Class Member who submits a timely

and valid Proof of Claim to the Claims Administrator.

1.3    "Claimant" means any Class Member who submits a Proof of Claim to

the Claims Administrator.

1.4    "Claims Administrator" means Heffler Radetich & Saitta, LLP.

7

1.5     "Claims Released by Plaintiffs" means and includes all claims, causes of

action, demands, rights, liabilities, whether class or individual in nature, known or

unknown, suspected or unsuspected, contingent or non-contingent, collateral or direct, at

law, equity, or otherwise, that have been or could have been asserted by any Plaintiff or

Class Member or any person claiming rights derivatively of a member of the Class,

which arise out of, are based upon or relate to, or are in connection with: the claims

asserted in the Action including the facts alleged in the Complaint; the purchase of

Adams Golf stock during the Class Period; or any of the facts, claims, or matters of any

kind, related directly or indirectly to the subject matters set forth in, or the facts, causes of

action, counts or claims for relief which were, might have been, or could have been

asserted, alleged or litigated in the Action; against Defendants (including any other

former director or officer of Adams Golf), or any of Defendants' current or former

parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers,

directors, employees, attorneys, insurers (except with respect to the Insurance Litigation),

agents, representatives, principals, assigns, subrogees, stockholders, partners, trustees,

heirs, beneficiaries, servants, all persons claiming rights derivatively of them, and all

other persons, trusts, partners, entities or corporations in privity with any of them or

otherwise affiliated or related to any of them, and/or any subsidiary thereof or any of

them.  Released Claims also include Unknown Claims.

1.6     "Claims Released by Defendants" means all Defendants' claims or causes

of action which could have been asserted relating to the defense, institution or

prosecution of the Action, or arising out of or related to facts alleged in the Complaint,

released by Defendants, their counsel, and/or any entity basing a claim on rights of

8

Defendants and/or their counsel, but not including claims made by Defendants in the Insurance Litigation.

1.7     "Claims Released by Underwriter Defendants" mean all Underwriter Defendants' claims for indemnification related to the Action released by LBHI, LBI, and the LBI Trustee, RBC Capital Markets Corporation, and Banc of America Securities, LLC.

1.8     "Class" means all persons who purchased shares of Adams Golf in, or traceable to, Adams Golf's July 9, 1998 IPO or between July 10, 1998 and October 22, 1998, excluding Defendants and members of their immediate families, any entity in which a Defendant has a controlling interest, and the heirs, successors and assigns of any excluded individual or entity.

1.9     "Class Member" means each member of the Class who has not timely and validly excluded himself, herself or itself from the Settlement, but including those who have opted back into the Settlement.

1.10    "Effective Date" means the day when the Final Order becomes Final.

1.11    "Escrow Agents" means Todd S. Collins, Esq. of Berger & Montague, P.C., Paul R. Bessette, Esq. of Greenberg Traurig, LLP, and their designees, who shall serve until the Effective Date, after which Todd S. Collins shall be the Escrow Agent.

1.12    "Final," in reference to a judgment or order means a judgment or order as to which the time for appeal or to seek permission to appeal therefrom has expired without an appeal or, if appealed, such order or judgment has been affirmed in its entirety, or satisfactorily to the Parties, by the court of last resort to which such appeal

9

has been taken and such affirmance has become no longer subject to further appeal or
review.

    1.13    "Final Order" means the Order and Final Judgment of the Court approving
the Stipulation of Settlement and dismissing the Action with prejudice and without costs,
substantially in the form of Exhibit E attached hereto.

    1.14    "Memorandum of Understanding" means the Memorandum of
Understanding signed October 29, 2009 ("MOU").

    1.15    "Net Settlement Fund" shall mean the Settlement Fund, plus interest, less
Notice and Administration Costs, Attorney's Fees and Costs, amounts payable to any
Plaintiff pursuant to 15 U.S.CA 77 z-1(a)(4) ("PSLRA") as awarded by the Court
("Plaintiff Expense Awards"), and taxes on interest earned by the Settlement Fund, and
tax expenses.

    1.16    "Notice" means the notice of the class settlement to be mailed to Class
Members in substantially the form of Exhibit B attached hereto.

    1.17    "Plaintiffs' Lead Counsel" means Berger & Montague, P.C.

    1.18    "Plaintiffs' Counsel" means Plaintiffs' Lead Counsel, Liaison Counsel and
Plaintiffs' counsel who have worked under the direction of Plaintiffs' Lead Counsel,
including the Law Office of Donald B. Lewis, Keller Rohrback, L.L.P., Klafter, Olsen &
Lesser, L.L.P., and Abrahams, Lowenstein & Bushman, P.C.

    1.19    "Plan of Allocation" means the plan by which the Net Settlement Fund is
distributed to the Authorized Claimants.

1.20    "Preliminary Approval Order" means the proposed Order to be entered by the Court, preliminarily approving the Settlement and directing notice thereof to the Class, substantially in the form of Exhibit A attached hereto.

1.21    "Proof of Claim" shall mean the document sent to Class Members, along with the Notice, entitled "Proof of Claim and Release Form and Substitute Form W-9" substantially in the form of Exhibit C attached hereto.

1.22    "Registration Statement" means the Registration Statement for the Adams Golf IPO, including the prospectus, filed with the SEC that became effective on July 9, 1998.

1.23    "Released Claims" includes claims released by Plaintiffs, claims released by Defendants and indemnity claims released by Underwriter Defendants, including the Trustee of LBI.

1.24    "Released Parties" means each of the Adams Golf Defendants, Underwriter Defendants (including LBHI, LBI, and the LBI Trustee), Plaintiffs, and Class Members, and their past or present parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, advisors, agents, assigns, administrators, attorneys, banks or investment banks, co-insurers, consultants, employees, estates, executors, heirs, insurers, limited partners or partners, reinsurers, representatives, spouses (present and former), any entity in which any Party has a controlling interest, any member of any individual Party's immediate family, or any trust of which any Party is the settlor or which is for the benefit of any individual Party and/or member(s) of his or her family, but not Thilman, or its successor entities, Zurich or any other present or future defendant in the Insurance Litigation.

11

1.25 "Settlement" means the settlement embodied by this Stipulation.

1.26 "Settlement Amount" or "Settlement Fund" means the principal amount of $16,500,000.00, plus the first $1,250,000, after attorney's fees and costs, actually received by Adams Golf (if any) in connection with the Insurance Litigation, plus interest, deposited in Huntington National Bank.

1.27 "Settling Parties" or "Parties" means the Plaintiffs, Class Members, and Defendants (including LBI and LBHI).

1.28 "Summary Notice" means the summary notice of class settlement in substantially the form of Exhibit D attached hereto.

1.29 "Unknown Claims" means any Released Claim that any Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, that if known by him, her or it, might have affected his, her or its decision to settle and release Released Parties, or might have affected any Class Member's decision not to object to this Settlement or not to exclude himself, herself or itself from the Settlement.

## 2. Terms

2.1 The Adams Golf Defendants and their insurers and the Underwriter Defendants, other than LBI and LBHI, shall pay or cause to be paid to Plaintiffs $16,500,000 in cash. The $16,500,000, less the amount payable from Federal Insurance Company ("Federal"), shall be paid into an interest-bearing escrow account maintained by the Escrow Agents at Huntington National Bank (the "Escrow Account") within ten (10) business days of the Court's preliminary approval of the Settlement.

2.2.  Federal shall pay its contribution to the Settlement Amount to the Escrow Agent for deposit into the Escrow Account within ten (10) business days after the Effective Date.

2.3     Within ten (10) business days of any payment to Adams Golf in settlement or as a result of a judgment in the Insurance Litigation, Adams Golf shall pay to the Escrow Agent(s), for deposit into the Escrow Account, the amount of the payment, less reasonable attorney's fees and expenses incurred by Adams Golf in the Insurance Litigation, up to and including, but not in excess of, $1,250,000.

2.4     The control of the Insurance Litigation and any decision to settle, dismiss, or otherwise dispose of the litigation remains at the sole discretion of Adams Golf. Adams Golf agrees to keep Plaintiffs' Lead Counsel informed with respect to all material developments in the Insurance Litigation, including with respect to settlement, and will provide periodic reports and respond to questions from Plaintiffs' Counsel.

2.5     The Settlement shall be without costs to either side.

2.6     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all Released Claims as against all Released Parties.

2.7     Upon the Effective Date of this Settlement, Plaintiffs, Class Members and Defendants, on behalf of themselves and each of their heirs, executors, administrators, successors and assigns, and any persons they represent, shall, with respect to each Released Claim, release and forever discharge, and shall forever be enjoined from prosecuting, any Released Claims against any of the Released Parties.

**3.     Notice and Administration Fund**

13

3.1     Ten (10) business days after the entry of the Preliminary Approval Order, Plaintiffs' Lead Counsel may establish a "Notice and Administration Fund" of $50,000 from the Settlement Amount deposited at Huntington National Bank.  This Fund may be used by Plaintiffs' Counsel to pay costs and expenses reasonably and actually incurred in connection with providing the Notice to the Class, publishing the Summary Notice, locating Class Members, and assisting with the filing of Claim Forms, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Claim Forms and paying escrow fees and costs, taxes on interest earned by the Settlement Amount, tax expenses and any related or incidental costs and charges ("Notice and Administration Costs").  The Notice and Administration Fund may also be invested and earn interest.  If the $50,000 in the Notice and Administration Fund is used up before the Net Settlement Fund has been distributed to Authorized Claimants, any further Notice and Administration Costs may be paid from the Settlement Fund.

3.2     Under no circumstances will Defendants be required to pay more than the Settlement Amount pursuant to this Stipulation and the Settlement set forth herein. However, any interest on the Settlement Amount accrues to the benefit of the Class, provided the Final Order dismissing the Action becomes Final.

**4.      The Escrow Agents**

4.1     The Escrow Agents shall invest the funds in the Settlement Fund in excess of One Hundred Thousand Dollars ($100,000) in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government, or any agency thereof, and shall reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates.  Any funds held by the Escrow

14

Agents in escrow hereunder in an amount of less than One Hundred Thousand Dollars ($100,000) shall be held in an interest-bearing bank account insured by the FDIC.

4.2    All funds held by the Escrow Agents shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed to Class Members or for Notice and Administration Costs, Taxes and Tax Expenses, Attorney's Fees and Costs, or Plaintiff Expense Awards pursuant to this Stipulation and/or further order(s) of the Court.

4.3    The Escrow Agents shall not disburse the Settlement Fund except as provided in this Stipulation, or by an order of the Court.

4.4    Subject to further order and/or directions as may be made by the Court, the Escrow Agents are authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of this Stipulation.

## 5.    **Taxes**

5.1    The Settling Parties and the Escrow Agents agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The Escrow Agents shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 5.1, including the "relation-back election" (as defined in Treas. Reg. ¶ 1.468B-1) back to the earlier permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  The Escrow Agents are responsible for timely and properly preparing and delivering the necessary documentation for signature by all necessary parties, and thereafter for making the appropriate filing.

5.2     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agents. The Escrow Agents shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Amount (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns as well as the election described in this paragraph shall be consistent with this paragraph and in all events shall reflect that all taxes as defined in subsection 5.3 below (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

5.3     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including without limitation, any taxes or tax detriments that may be imposed upon Defendants or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of the terms of paragraphs 5.1 to 5.4, including without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph (collectively, "Tax Expenses"), shall be paid out of the Notice and Administration Fund. In all events, neither Defendants nor any of them, nor their counsel, shall have any liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall timely be paid by the Escrow Agent(s) out of the Notice

and Administrative Fund without prior order from the Court. The Escrow Agent(s) shall

be obligated (notwithstanding anything herein to the contrary) to withhold from

distribution to Authorized Claimants any funds necessary to pay such amounts, including

the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any

amounts that may be required to be withheld under Treas. Reg. § 1.468B-2 (1)(2));

neither any of the Defendants, nor their insurers, nor their counsel is responsible for taxes

or Tax Expenses, nor shall they have any liability therefore. Defendants and their

insurers will be indemnified through the Settlement Fund for any tax liabilities relating to

the Settlement Fund. The Settling Parties agree to cooperate with the Escrow Agents,

each other and their tax attorneys and accountants to the extent reasonably necessary to

carry out the provisions of this paragraph.

6.    **Preliminary Approval, Notice, Settlement Hearing and Final Approval**

6.1    Within five (5) business days after the Execution Date of this Stipulation,

Plaintiffs shall submit the Stipulation together with its exhibits to the Court and shall

submit to the Court a motion for entry of the Preliminary Approval Order, requesting,

*inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, and final

approval of the Notice, Proof of Claim and Release Form to be mailed to all persons in

the Class who can be identified with reasonable effort and of the Summary Notice to be

published, substantially in the forms attached hereto as Exhibits B, C and D. The Notice

shall include the general terms of the Settlement set forth in this Stipulation and shall set

forth the procedure by which Class Members may request to be excluded from the

Settlement or may object to the Settlement, the Plan of Allocation, the request for

Attorney's Fees and Costs, and/or the Plaintiff Expense Award. The date and time of the

hearing for final approval of the Settlement ("Final Hearing") shall be included in the Notice.

6.2     The Parties shall request that the Court hold a hearing and finally approve the Settlement and the Final Order contemplated by this Stipulation, after the Notice and Summary Notice have been mailed and published, respectively, and after the Class Members have been given an opportunity to exclude themselves or to object to the Settlement, the Plan of Allocation, the Request for Attorney's Fees and Costs and the request for Plaintiff Expense Awards.

6.3     If the Settlement contemplated by this Stipulation is approved by the Court, counsel for the Parties shall request that the Court enter the Final Order approving the Settlement and enter Final Judgment dismissing the Action with prejudice and without costs, substantially in the form to be attached hereto as Exhibit E.  In the event of an appeal of the Final Order, Plaintiffs, with the cooperation of Defendants, shall use their best efforts to seek a dismissal of the appeal or an affirmance of the Final Order. The Final Order shall contain a statement that the parties agree that, during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Fed. R. Civ. P. 11, and the parties agree not to make any public statements that contradict such a finding.  The Parties agree that the Action was resolved in good faith following arm's length bargaining and with the assistance of Judge Nicholas Politan serving as mediator.

## 7.    **Releases**

7.1     On the Effective Date, the Plaintiffs and each Class Member, on behalf of themselves, their successors and assigns, and any other person claiming (now or in the

future) through or on behalf of them, and, in addition, Defendants, on behalf of

themselves, their successors and assigns, and any other person claiming (now or in the

future) through or on behalf of Defendants: (i) fully, finally and forever release,

relinquish, remise and discharge the Released Parties from all claims, including, without

limitation, Released Claims, arising out of or in connection with the institution,

prosecution, or assertion of the Action and covenant not to threaten, demand, or sue the

Released Parties or any of them  regarding any action or proceeding of any nature with

respect to the Released Claims, and (ii) are forever enjoined and barred from asserting the

Released Claims against the Released Parties or any of them in any action or proceeding

of any nature.  With respect to Plaintiffs and Class members, the foregoing applies

regardless of whether any such Plaintiffs and/or Class Members ever seek or obtain any

distribution from the Net Settlement Fund; whether such Plaintiffs and/or Class Members

executed and delivered a Proof of Claim; whether such Plaintiffs and/or Class Members

filed an objection to the Settlement or to their claim being rejected as provided in this

Stipulation, the proposed Plan of Allocation, any application by Plaintiffs' Counsel for an

award of Attorney's Fees and Costs, and any Plaintiff Expense Request; and whether the

claims of such Plaintiffs or Class Members have been approved or allowed or such

objection has been overruled by the Court.

7.2    In accordance with the Private Securities Litigation Reform Act of 1995,

15 U.S.C. § 77k(f)(2)(A) and 15 U.S.C. §77z-1 ("PSLRA"), and other statutory or

common law rights, the Released Parties, and each of them, will, on the Effective Date,

be fully, finally and forever released and discharged from all claims for contribution,

indemnity or other federal or state law causes of action that have been brought or may be

brought by any person based upon, relating to, arising out of, or in connection with the

matters alleged in the Action.  The Final Judgment shall contain a provision that bars and

enjoins Lead Plaintiffs and the Class Members from prosecuting claims released by the

Final Judgment.

7.3      The Underwriter Defendants including LBHI, LBI and the LBI Trustee

and their counsel shall release any claim for indemnification against Adams Golf relating

to the Action, on the Effective Date.

7.4      With respect to any and all Released Claims, the Settling Parties stipulate

and agree that, upon the Effective Date, they shall be deemed to have, and by operation

of the Final  Order shall have, expressly waived the provisions, rights and benefits of any

statute, rule or provision which prohibits the release of Unknown Claims, including

California Civil Code §1542, which provides:

> A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her favor at the
> time of executing the release, which if known by him or her must
> have materially affected his or her settlement with the debtor.

7.5      A Settling Party may hereafter discover facts in addition to or different

from those which he, she, it or they now know or believe to be true with respect to the

subject matter of the Released Claims, but the Settling Parties, upon the Effective Date,

shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and

forever settled and released any and all Released Claims, known or unknown, suspected

or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which

now exist, or heretofore have existed, upon any theory of law or equity now existing or

coming into existence in the future, including, but not limited to, conduct which is

alleged to be negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties shall be deemed by operation of the Final Order to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

## 8.    **Provisions Relating to LBI and LBHI**

8.1    Notwithstanding anything herein, neither LBHI nor LBI will be responsible for or have any obligation to make any payments provided for or contemplated herein.

8.2    Upon final approval of the Settlement, any bankruptcy proofs of claims identified by LBHI, the LBI Trustee, on behalf of LBI, or any other applicable Debtor, including, but not limited to those listed on Schedule 1 annexed hereto, that have been filed in the Chapter 11 Cases and/or in the SIPA Proceeding by a member of the Class seeking damages arising from or relating to the claims resolved by this Settlement will be deemed disallowed and expunged from the applicable claims register to the extent the holder of such claim has not opted out of the Class (the "Claim Disallowance").  Such Claim Disallowance shall occur upon notice by LBHI, the LBI Trustee on behalf of LBI, or any other applicable Debtor to their respective claims agent.

8.3    LBHI and the LBI Trustee agree to seek an order of the Bankruptcy Court in the respective Chapter 11 Cases and/or SIPA Proceeding that (1) approves LBHI's and LBI's entry into the Settlement and the release of any indemnification claims they may have with respect to the Action and (2) approves the Claim Disallowance.

8.4     LBHI's and LBI's entry into the Settlement and the MOU is subject to the entry of a final non-appealable order of the Bankruptcy Court consistent with the foregoing.

## 9.     Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Settlement Amount

9.1     On notice to the Class and appropriate orders of the Court, the Claims Administrator, subject to such supervision and direction of the Court and/or Plaintiffs' Lead Counsel, as may be necessary or as circumstances may require, shall administer and calculate the Proofs of Claim submitted by Class Members and, upon the Effective Date and thereafter, shall oversee distribution of the Net Settlement Fund to Authorized Claimants.  Subject to the terms of this Stipulation and any order(s) of the Court, the Settlement Amount shall be applied as follows:

9.1.1    to pay Notice and Administration Costs;

9.1.2    to pay the Taxes and tax expenses;

9.1.3    to pay the Attorney's Fees and Costs;

9.1.4    to pay Plaintiff Expense Awards;

9.1.5    to distribute the Net Settlement Fund pro rata to Authorized Claimants as allowed by the Plan of Allocation, this Stipulation, or the Court, in amounts not to exceed the damages any Authorized Claimant could have received under 15 U.S.C. §77k(e), plus interest.

9.1.6    it being understood that this is not a claims made settlement, the funds in the Settlement Account will not necessarily be returned to defendants;

if any funds remain from the Settlement Amount, after the above payments, the
Court shall determine the disposition of such remaining funds.

9.2     After the Effective Date, and after Federal has deposited its share of the
Settlement Amount in the Escrow Account and in accordance with the terms of the
Stipulation, the Plan of Allocation, or such further approval and further order(s) of the
Court as may be necessary or as circumstances may require, the Net Settlement Fund
shall be distributed to Authorized Claimants, subject to and in accordance with the
following:

9.2.1   Each Claimant shall be required to submit to the Claims
Administrator a completed valid Proof of Claim signed under penalty of perjury
and supported by such documents as specified in the Proof of Claim, post-
marked on or before the date set by the Court and stated in the Notice.

9.2.2   Except as otherwise ordered by the Court, all Class Members who
fail to submit a valid Proof of Claim within such period as may be ordered by
the Court, or otherwise allowed, shall be forever barred from receiving any
payments pursuant to the Settlement or this Stipulation, but shall in all other
respects be subject to and bound by the provisions of the Stipulation, the
releases contained herein, and the Final Order with respect to all Released
Claims, regardless of whether such Class Members seek or obtain by any
means, including without limitation, by submitting a Proof of Claim or any
similar document, any distribution from the Net Settlement Fund.

9.2.3    The Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation as set forth in the Notice. Any such Plan of Allocation is not a part of this Stipulation.

9.3    Neither Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever to any person, including, without limitation, to any Class Members, Claimants, or Plaintiffs and Plaintiffs' Counsel with respect to the investment or distribution of the Settlement Amount, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or tax expenses, or any losses incurred in connection with any such matters.

9.4    No person shall have any claim against the Plaintiffs, Plaintiffs' Counsel, or the Claims Administrator based on distributions made substantially in accordance with the Settlement and this Stipulation, any Plan of Allocation, or orders of the Court.

9.5    It is understood and agreed by the Settling Parties that any Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to any Authorized Claimant's claim, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Final Order approving the Stipulation and the Settlement herein, or any other orders entered pursuant to the Stipulation.

9.6    Each Proof of Claim shall be submitted to the Claims Administrator who shall determine, in accordance with this Stipulation and order of the Court, the extent, if any, to which each claim shall be allowed, subject to appeal to the Court.

24

9.7     Proofs of Claim that do not meet the filing requirements may be rejected. Before rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant submitting such claim in order to attempt to remedy curable deficiencies in the Proof of Claim submitted.  The Claims Administrator shall notify in a timely fashion, and in writing, all Claimants whose Proofs of Claim the Administrator proposes to reject in whole or in part, setting forth the reasons thereof, and shall indicate in such notice that the Claimant whose claims are to be rejected has the right to review by the Court if such Claimant so desires and complies with the requirement of ¶ 9.8 below.

9.8     If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required by ¶ 9.7 above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's ground for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, the Claimant shall thereafter present the request for review to the Court.  Class Members involved in such a dispute whose rejection is ultimately upheld by the Court shall (i) be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but shall in all respects be subject to and bound by this Stipulation and the Settlement, including the releases provided for in this Stipulation, the Proof of Claim, and the Final Order; (ii) be conclusively deemed to have fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties; (iii) be conclusively deemed to have and by operation of the Final Order shall have fully, finally, and forever released, relinquished, and discharged the Released Parties from all claims,

25

including without limitation, Released Claims arising out of or in connection with the institution, prosecution, or assertion of the Action or the Released Claims; (iv) be conclusively deemed to have covenanted not to sue any Released Parties in any action or proceeding of any nature with respect to the Released Claims; and (v) forever be enjoined and barred from asserting the Released Claims against any of the Released Parties in any action or proceeding of any nature, whether or not such Class Members have filed an objection to the Settlement, the proposed Plan of Allocation, or any application by Plaintiffs' Counsel for an award of Attorney's Fees and Costs or for Plaintiff Expense Awards, and whether or not the claims of such Class Members have been approved or allowed, or such objections have been overruled by the Court.

9.9 Payment to Authorized Claimants pursuant to this Stipulation shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall in all respects be subject to and bound by this Stipulation and the Settlement, including the releases provided for in this Stipulation, the Proof of Claim, and the Final Order and shall (i) be conclusively deemed to have fully, finally and forever released, relinquished, and discharged all Released Claims against the Defendants (ii) be conclusively deemed to have and by operation of the Final Order shall have fully, finally, and forever released, relinquished, and discharged the Defendants from all claims (including, without limitation, the Released Claims) arising out of or in connection with the institution, prosecution, or assertion of the Action or the Released Claims; (iii) be conclusively deemed to have covenanted not to sue the Defendants in any action or proceeding of any nature with respect to the Released Claims; and (iv) forever

26

be enjoined and barred from asserting the Released Claims against the Defendants or any

of them in any action or proceeding of any nature, whether or not such Class Members

have executed and delivered a Proof of Claim, whether or not such Class Members

participated in the Net Settlement Fund, and whether or not such Class Members have

filed an objection to the Settlement or to their claims being rejected as provided therein,

the proposed Plan of Allocation, or any application by Plaintiffs' Counsel for an award of

Attorney's Fees and Costs and whether or not the claims of such Class Members have

been approved or allowed or such objection has been overruled by the Court.

9.10    The Plaintiffs, through Plaintiffs' Counsel, hereby agree not to opt out or

object to this Stipulation or entry of the Preliminary Approval Order or Final Order.

## 10.    **Plaintiffs' Attorney's Fees and Costs and Plaintiff Expense Awards**

10.1    Plaintiffs' Counsel may, upon such notice to the Class as may be required,

submit an application or applications (the "Fees and Costs Application") for distributions

from the Settlement Amount for: (i) an award of Attorney's Fees; plus (ii) reimbursement

of Costs incurred in connection with prosecuting the Action, including any Notice and

Administration Costs; plus (iii) any interest on such Attorney's Fees and Costs (until

paid) at the same rate and for the same periods as earned by the Settlement Amount, as

appropriate, as may be awarded by the Court; plus (iv) any Plaintiff Expense Awards.

10.2    Plaintiffs' Counsel reserve the right to seek additional compensation for

their services in administering the Settlement or in the event of exceptional recoveries on

a per claim basis.

10.3    Defendants shall not take any position concerning the Fees and Costs

Application.  Any decision by the Court concerning any such awards shall not affect the

27

validity or finality of the Settlement. Any award of Attorney's Fees and Costs shall be
paid solely from the Settlement Amount, which is in the Escrow Account, to Plaintiffs'
Counsel at such time as the Court has granted final approval of the Settlement, and
ordered an award of Attorney's Fees and Costs, and those orders have become Final.
Likewise, any amounts granted by the Court for Plaintiff Expense Awards will be paid to
Plaintiffs from the Settlement Amount in the Escrow Account after the Final Order and
the order granting Plaintiff Expense Awards have become Final.

10.4    The procedure for, and the allowance or disallowance by the Court of, the
Fees and Costs Application are not part of the Settlement set forth in this Stipulation, and
are to be considered by the Court separately from the Court's consideration of the
fairness, reasonableness and adequacy of this Stipulation of Settlement. Any order or
proceedings relating to the Fees and Costs Application or any appeal from any Attorney's
Fees and Costs award or Plaintiff Expense Award or any other order relating thereto or
reversal or modification thereof, shall not operate to terminate or cancel the Stipulation,
or affect or delay the finality of the Final Order and the Settlement of the Action as set
forth herein.

10.5    Defendants and their counsel, or any of them, shall have no responsibility
for, and no liability whatsoever with respect to, any payment(s) pursuant to the Fees and
Costs Application.

10.6    Defendants and their counsel, or any of them, shall have no responsibility
for, and no liability whatsoever with respect to, the allocation of the Attorney's Fees and
Costs among Plaintiffs' Counsel, and/or any other person who may assert some claim
thereto, or any Fees and Costs Award, that the Court may make in the Action.

28

## 11.    Termination of Settlement

11.1    At least ten (10) days before the date set for the Final Hearing, Plaintiffs'

Counsel shall provide to the Defendants' Counsel a list of those who have timely opted-

out or excluded themselves from the Settlement, showing the number of shares bought in

the Class Period by each person who has opted out and has not withdrawn the exclusion

(the "Opt-Out List").  As soon as practicable, but at least five (5) days before the Final

Hearing,  the Parties' counsel shall confer for the purpose of calculating the number of

shares bought by persons in the Class who have timely excluded themselves from the

Settlement.  Defendants shall have the option to terminate the Settlement if they

reasonably determine that requests for exclusion from the Settlement have been made by

persons in the Class representing more than a certain number of the total of 6.9 million

shares purchased pursuant to the Registration Statement.  The number of opt-out shares

triggering Defendants' right to terminate the Settlement is set forth in a separate

stipulation signed by the Parties, and filed under seal.

11.2    If the Defendants elect to exercise the option set forth in ¶ 11.1 hereof,

written notice of such election must be provided to Plaintiffs' Counsel and filed with the

Court  at least three (3) days before to the Final Hearing.  Such notice must be served by

hand delivery, e-mail or fax, with confirmation by telephone to Plaintiffs' Counsel.  The

Defendants may withdraw their election by providing written notice of such withdrawal,

by hand delivery, e-mail or fax with telephone confirmation to Plaintiffs' Counsel no

later than 5:00 p.m. Eastern Time on the day before the Final Hearing, or by such later

date as the Parties agree in writing.

11.3     If the Defendants elect to terminate the Stipulation pursuant to ¶ 11.1

hereof, Plaintiffs' Counsel may review the validity of any request for exclusion from the

Settlement and may attempt to cause retraction or withdrawal of any request for

exclusion.  No Defendant or Released Party shall in any way interfere with, obstruct or

seek to enjoin efforts by Plaintiffs' Counsel to seek to have those persons who requested

exclusion to withdraw their requests for exclusion.  If, by the day before the Final

Hearing (or a later date agreed upon in writing), Plaintiffs' Counsel are successful in

reducing the number of shares held by persons who requested exclusion from the Class to

a number which is within the limit permitting the Defendants to terminate the Stipulation,

then any termination of the Stipulation by the Defendants shall automatically be deemed

null and void.  In that event, Plaintiffs' Counsel shall serve on counsel for the

Defendants, by hand delivery, e-mail or fax, a statement identifying the persons in the

Class who have withdrawn their requests for exclusion and the number of shares they

bought, or persons who requested exclusion but were not in the Class, and the number of

shares they bought.

11.4     If the Defendants elect to terminate the Stipulation in accordance with

¶11.1 and such termination is not nullified in accordance with ¶11.3, the Stipulation shall

be terminated and deemed null and void, and the provisions of ¶12.4 shall apply.

## 12.     Conditions of Settlement, Effective Date, Effect of Disapproval, Cancellation or Termination

12.1     The Effective Date, at which time this Stipulation shall become Final,

shall be conditioned on the occurrence of all of the following events:

12.1.1  The Defendants have not exercised any right under Section 11.1 to

terminate the Stipulation;

30

12.1.2  The Final Order has been entered by the Court without any changes not acceptable to the Parties;

12.1.3  The Bankruptcy Court both in the Chapter 11 Cases and the SIPA Proceeding has approved LBHI's and LBI's entry into the Settlement and release of indemnification claims they may have with respect to the Action and has approved the Claim Disallowance, and such order has become Final; and

12.1.4  The Final Order has become Final.

12.2    Upon occurrence of all of the events referenced in ¶ 12.1 (and its subparts), above, any and all remaining interest or right of the Defendants in or to the Settlement Amount shall be absolutely and forever extinguished, and Paul Bessette, Esq. will no longer be Escrow Agent.

12.3    If all of the conditions specified in ¶ 12.1 (and its subparts) are not met, then the Stipulation shall be cancelled and terminated, subject to and in accordance with ¶¶ 12.4 below, unless Plaintiffs' Counsel and Defendants' counsel mutually agree in writing to proceed with the Stipulation.

12.4    Unless otherwise ordered by the Court, in the event that the Stipulation should terminate, or be cancelled, or otherwise fail to become effective for any reason, including without limitation, in the event that the Final Order approving the Settlement and dismissing the Action does not become Final, then within five (5) business days after written notification of such event is sent by counsel for Defendants or by Plaintiffs' Counsel to the Escrow Agents, the amount in the Escrow Account, including accrued interest, except for amounts already incurred or paid for Notice and Administration Costs, and Taxes, and Tax Expenses, shall be refunded to Defendants and their Insurers in

31

proportion to their contributions to the Settlement Amount. At the request of counsel for

Defendants, the Escrow Agent or its designee shall apply for any tax refund owed on the

Settlement Funds and pay the proceeds, after deduction for any fees or expenses incurred

in connection with such application(s)for refund, to the Persons contributing to the

Settlement Fund. In addition, (i) the Settling Parties shall be restored to their respective

positions in the Action as of September 9, 2009, with all of their respective claims and

defenses preserved as they existed on that date; (ii) the terms and provisions of the

Stipulation shall be null and void and shall have no further force or effect with respect to

the Settling Parties, and neither the existence nor the terms of this Stipulation or MOU

(nor any negotiations preceding this Stipulation nor any acts performed pursuant to, or in

furtherance of, this Stipulation) shall be used in the Action or in any other action or

proceeding for any purpose except in litigation or other proceedings concerning the

Settlement; and (iii) any judgment or order entered by any court in accordance with the

terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

## 13.    **Miscellaneous Provisions**

13.1    Plaintiffs and their counsel represent and warrant that none of Plaintiffs'
claims or causes of action alleged in the Complaint or that could have been alleged in the
Action have been assigned, encumbered or in any manner transferred in whole or in part.

13.2    Upon final approval of the Settlement, all parties to the Stipulation of
Settlement agree to abide by the provisions in ¶18 of the Protective Order filed on
December 14, 2004 regarding the return or destruction of Confidential Information.

13.3    The Settling Parties: (i) acknowledge that it is their intent to consummate
this Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to
effectuate and implement all terms and conditions of the Stipulation and to exercise their
best efforts to accomplish the foregoing terms and conditions of the Stipulation.

13.4    The Settling Parties intend this Settlement to be a final and complete
resolution of all Released Claims between them with respect to the Action.  Defendants
do not admit any liability to any person, nor do Defendants admit any wrongdoing or
liability, however described, including without limitation, any violations of federal or
state securities laws, gross negligence or negligence and Defendants expressly deny any
such wrongdoing or liability.  Nothing herein contained shall constitute an adjudication
or finding on the merits as to the claims of any party hereto, and shall not be deemed to
be, intended to be or construed as an admission of liability, in any way on the part of any
Party hereto, or any evidence of the truth of any fact alleged or the validity of any claims
that have been or could be asserted in the Action.   All Parties expressly deny any liability
for any and all claims of any nature whatsoever; nor shall anything herein contained
constitute an acknowledgment of fact, allegation or claim that has been or could have

33

been made, nor shall any third party derive any benefit whatsoever from the statements

made within this Stipulation. Nor shall this Stipulation, nor any negotiations or

proceedings connected with it be construed, offered or received in evidence in any action

or proceeding of any kind whether as an admission or concession of any liability or

wrongdoing or otherwise by any party hereto except as may be necessary to consummate,

defend or enforce this Stipulation.

13.5    Neither the MOU, the Stipulation nor the Settlement, nor any act

performed or document executed pursuant to or in furtherance of the MOU, the

Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an

admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or

liability of the Parties; (ii) is or may be deemed to be or may be used as an admission of,

or evidence of, any fault or omission of the Parties in any civil, criminal or administrative

proceeding in any court, administrative agency or other tribunal; (iii) shall constitute an

adjudication or finding on the merits as to the claims of any Party and shall not be

deemed to be, intended to be or construed as an admission of liability, in any way on the

part of any Party or any evidence of the truth of any fact alleged or the validity of any

claims that have been or could be asserted in the Action. All Parties expressly deny any

liability for any and all claims of any nature whatsoever; nor shall anything herein

contained constitute an acknowledgment of fact, allegation or claim that has been or

could have been made, nor shall any third party derive any benefit whatsoever from the

statements made within this Stipulation; nor (iv) shall be construed against Defendants as

an admission or concession that the consideration to be given hereunder represents the

amount which could be or would have been recovered after trial. Any Party may file the

34

Stipulation and/or the Final Order in any action that may be brought against them in order to support a defense or counter claim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.6    All Stipulations made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

13.7    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

13.8    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

13.9    The Stipulation and the Exhibits attached hereto and the stipulation referred to in Section 11.1 above constitute the entire Stipulation between the Settling Parties and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each party shall bear its own costs.

13.10   Plaintiffs' Counsel, on behalf of the Class, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by or on behalf of the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class that they deem appropriate.

13.11   Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

13.12   The Stipulation may be executed by facsimile or PDF and in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to the Stipulation shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

13.13   The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

13.14   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation.

13.15   The Stipulation and the Exhibits attached hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Delaware, and the rights and obligations of the Parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Delaware without giving effect to that State's choice of law principles.

13.16   All notices, requests, claims, demands, and other communications under this Stipulation shall be in writing, and shall be given or made (and shall be deemed to have been duly given or made upon receipt) by delivery in person, by registered or certified mail (postage prepaid, return receipt requested), by facsimile, by e-mail followed by first-class mail, or by Federal Express or similar overnight courier to the

36

respective parties at the following addresses (or at such address for a party as shall be

specified in a notice given in accordance with this paragraph).

    (a)    If to Plaintiffs:

        BERGER & MONTAGUE, P.C.
        Todd S. Collins
        Elizabeth W. Fox
        Neil F. Mara
        1622 Locust Street
        Philadelphia, PA 19103
        Tel:   (215) 875-3000
        Fax:  (215) 875-4604

    (b)    If to Banc of America Securities, LLC, RBC Capital Markets
        Corporation, and/or Lehman Brothers Holdings, Inc.

        SIMPSON THACHER & BARTLETT LLP
        Michael J. Chepiga
        Paul C. Gluckow
        425 Lexington Avenue
        New York, NY 10017
        Tel:   (212) 455-2000
        Fax:  (212 455-2502

    (c)    If to James W. Giddens, Trustee for the SIPA Liquidation of
        Lehman Brothers Inc.

        HUGHES HUBBARD & REED LLP
        James B. Kobak, Jr.
        Sarah L. Cave
        One Battery Park Plaza
        New York, New York 10004
        Telephone: (212) 837-6000

    (d)    If to Adams Golf Defendants:

        GREENBERG TRAURIG LLP
        Paul R. Bessette
        300 West Sixth Street, Suite 2050
        Austin, TX 78701
        Tel:   (512) 320-7200
        Fax:  (215) 864-0065

**IN WITNESS WHEREOF**, the Parties hereto have caused the Stipulation to be

executed, by themselves or their duly authorized attorneys, dated as of the Execution

Date referred to above.

Carmella P. Keener, Del. Bar No. 2810
ROSENTHAL, MONHAIT GROSS &
GODDESS
Suite 1401, Citizens Bank Center
Wilmington, DE 19899
Tel: (302) 656-4433
ckeener@rmgglaw.com
*Liaison  Counsel for Plaintiffs*

Jeffrey L. Moyer, Del. Bar No. 3309
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19899
Tel: (302) 651-7700
moyer@rlf.com
*Local Counsel for Adams Golf Defendants*

Todd S. Collins
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103
Tel: (215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

Paul R. Bessette
GREENBERG TRAURIG, LLP
300 West Sixth Street, Suite 2050
Austin, Texas 78701
Tel: (512) 320-7200
*Counsel for Adams Golf Defendants*


John E. James, Del. Bar No. 996
POTTER ANDERSON & CORROON, LLP
Hercules Plaza – Sixth Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
jjames@potteranderson.com
*Local Counsel for Underwriter Defendants*

Michael J. Chepiga
Paul C. Gluckow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Tel: (212) 455-2000
*Counsel for Banc of America Securities,
LLC, RBC Capital Markets Corporation, and
Lehman Brothers Holdings, Inc.*

**IN WITNESS WHEREOF**, the Parties hereto have caused the Stipulation to be

executed, by themselves or their duty authorized attorneys, dated as of the Execution

Date referred to above.

Carmella P. Keener, Del. Bar No. 2810
ROSENTHAL, MONHAIT GROSS &
GODDESS
Suite 1401, Citizens Bank Center
Wilmington, DE 19899
Tel: (302) 656-4433
ckeener@rmgglaw.com
*Liaison  Counsel for Plaintiffs*

Jeffrey L. Moyer, Del. Bar No. 3309
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19899
Tel: (302) 651-7700
moyer@rlf.com
*Local Counsel for Adams Golf Defendants*

Todd S. Collins
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103
Tel: (215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

Paul R. Bessette
GREENBERG TRAURIG, LLP
300 West Sixth Street, Suite 2050
Austin, Texas 78701
Tel: (512) 320-7200
*Counsel for Adams Golf Defendants*

John E. James, Del. Bar No. 996
POTTER ANDERSON & CORROON, LLP
Hercules Plaza – Sixth Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
jjames@potteranderson.com
*Local Counsel for Underwriter Defendants*

Michael J. Chepiga
Paul C. Gluckow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Tel: (212) 455-2000
*Counsel for Banc of America Securities,
LLC, RBC Capital Markets Corporation, and
Lehman Brothers Holdings, Inc.*

38

**IN WITNESS WHEREOF**, the Parties hereto have caused the Stipulation to be

executed, by themselves or their duty authorized attorneys, dated as of the Execution

Date referred to above.

| | |
|---|---|
| Carmella P. Keener, Del. Bar No. 2810 | Jeffrey L. Moyer, Del. Bar No. 3309 |
| ROSENTHAL, MONHAIT GROSS & | RICHARDS, LAYTON & FINGER, P.A. |
| GODDESS | One Rodney Square |
| Suite 1401, Citizens Bank Center | 920 North King Street |
| Wilmington, DE 19899 | Wilmington, DE 19899 |
| Tel: (302) 656-4433 | Tel: (302) 651-7700 |
| ckeener@rmgglaw.com | moyer@rlf.com |
| *Liaison Counsel for Plaintiffs* | *Local Counsel for Adams Golf Defendants* |

Todd S. Collins
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA. 19103
Tel: (215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

Paul R. Bessette
GREENBERG TRAURIG, LLP
300 West Sixth Street, Suite 2050
Austin, Texas 78701
Tel: (512) 320-7200
*Counsel for Adams Golf Defendants*

John E. James, Del. Bar No. 996
POTTER ANDERSON & CORROON, LLP
Hercules Plaza -- Sixth Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
jjames@potteranderson.com
*Local Counsel for Underwriter Defendants*

Michael J. Chepiga
Paul C. Gluckow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Tel: (212) 455-2000
*Counsel for Banc of America Securities,
LLC, RBC Capital Markets Corporation, and
Lehman Brothers Holdings, Inc.*

38

## Schedule 1[1]

1. **Proof of Claim No. 30699** – individual claim for damages in excess of $30,041.00 based on violations of the Securities Act of 1933.

2. **Proof of Claim No. 30700** – individual claim for damages in excess of $123,660.00 based on violations of the Securities Act of 1933.

3. **Proof of Claim No. 31115** – individual claim for damages in excess of $46,850.00 based on violations of the Securities Act of 1933.

4. **Proof of Claim No. 31116** – individual claim for damages in excess of $45,370.00 based on violations of the Securities Act of 1933.

5. **Proof of Claim No. 32494** – class claim for damages in excess of $200,000.00 based on violations of the Securities Act of 1933.

---

[1] The proofs of claim set forth in this Schedule 1 were filed in the Chapter 11 Cases.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ADAMS GOLF, INC. SECURITIES LITIGATION | CONSOLIDATED C.A. No. 99-371-GMS |

### PRELIMINARY APPROVAL ORDER

WHEREAS, the above-captioned action (the "Action") has been pending since June 11, 1999,

WHEREAS, by Order dated August 3, 2005, the Court certified a class consisting of all persons who purchased shares of Adams Golf Inc. ("Adams Golf") in or traceable to Adams Golf 's Initial Public Offering ("IPO") or between July 10, 1998 and October 22, 1998, excluding Defendants and their affiliates (the "Class"), and

WHEREAS, Plaintiffs Todd Tonore, F. Kenneth Shockley, John Morrash and Patricia Craus (collectively, "Plaintiffs"), on behalf of the Class, and Defendants Adams Golf, B. H. (Barney) Adams, Darl P. Hatfield, Richard Murtland, Paul F. Brown, Roland E. Casati, Finis F. Conner and Stephen R. Patchin ("Adams Golf Defendants"), and Lehman Brothers Inc. ("LBI"), Lehman Brothers Holdings, Inc. ("LBHI"), Nationsbanc Montgomery Securities, LLC (now Banc of America Securities, LLC), and Ferris, Baker Watts, Inc. (now RBC Capital Markets Corporation) (collectively, "Underwriter Defendants") (collectively, with the Adams Golf Defendants, "Defendants"), having made application, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order preliminarily approving the proposed settlement (the

1

"Settlement") of this Action in accordance with the Stipulation of Settlement dated

, 2009 (the "Stipulation of Settlement") (attached as Ex. 1) which, together with the

exhibits annexed thereto, sets forth the terms and conditions for the Settlement, and the

Court having read and considered the Stipulation of Settlement and the exhibits annexed

thereto;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that

1.    The definitions in the Stipulation of Settlement are incorporated herein.

2.    The Settlement, as set forth in the Stipulation of Settlement, is

preliminarily approved as fair, reasonable and adequate.

3.    The Final Hearing shall be held before this Court on _____, 2010,

at ____ in Courtroom ___, United States Courthouse, J. Caleb Boggs Federal Bldg., 844

North King Street, Wilmington, DE 19801-3519, to determine whether the proposed

Settlement of the Action, on the terms and conditions provided for in the Stipulation of

Settlement, is fair, reasonable and adequate and should be finally approved by the Court;

to determine whether a Judgment as provided in the Stipulation of Settlement should be

entered herein; to determine whether the Plan of Allocation of the Net Settlement Fund as

set forth in the Notice should be approved; to determine the amount of Attorney's Fees

and Costs that should be awarded to Plaintiffs' Counsel; to determine whether to allow

reimbursement of reasonable, out-of-pocket costs and expenses Plaintiffs incurred in

connection with representation of the Class ("Plaintiff Expense Awards"); and to

determine whether the Class Members' objections, if any, have merit. *See* Final Order,

Ex. E attached to Stipulation of Settlement.  The Court may adjourn the Final Hearing

and later reconvene it without further notice to Members of the Class.

2

4.       Within ten (10) business days after this Order is signed and entered, the

Adams Golf Defendants, their insurers other than Federal Insurance Company, and the

Underwriter Defendants, other than LBI and LBHI, shall pay their respective portions of

the $16,500,000 initial Settlement Amount into the Escrow Account established at

Huntington National Bank by Escrow Agents, Todd S. Collins and Paul R. Bessette, as

set forth in the Stipulation of Settlement.  Plaintiffs may establish a Notice and

Administration Fund of $50,000 from the money in the Escrow Account, which shall be

used for the expenses reasonably and actually incurred in connection with providing the

Notice to the Class, publishing the Summary Notice, locating Class Members, assisting

with the filing of Claim Forms, administering and distributing the Net Settlement Fund to

Authorized Claimants, processing Claim Forms, and paying escrow fees and costs, taxes

on interest earned by the Settlement Amount, tax expenses and any related or incidental

costs and charges.  The Notice and Administration Fund may also be invested and earn

interest.  If the $50,000 in the Notice and Administration Fund is used up before the Net

Settlement Fund has been distributed to Authorized Claimants, any further Notice and

Administration Costs may be paid from the Settlement Fund.

5.       The Funds deposited into the Escrow Account shall be deemed in the

custody of this Court and shall not be disbursed except as provided in the Stipulation of

Settlement or by an order of this Court.

6.       The funds in the Escrow Account shall be invested as specified in the

Stipulation of Settlement.

7.       The Court approves, as to form and content, the Notice of  Proposed

Settlement of Class Action (the "Notice"), the Proof of Claim and Release Form (the

"Proof of Claim") including the Substitute W-9 Form, and the Summary Notice (the

"Summary Notice"), attached as Exhibits B, C and D, respectively, to the Stipulation of

Settlement, and finds that the mailing and distribution of the Notice and Proof of Claim

and the publication of the Summary Notice, substantially in such form and substantially

in the manner set forth in this Order, meet the requirements of Rule 23 of the Federal

Rules of Civil Procedure, § 15 U.S.C.A. 77z-1(a)(4-8), and due process.  Such notice is

the best notice practicable under the circumstances and shall constitute valid, due and

sufficient notice to all Members of the Class.  Plaintiffs' Counsel is hereby authorized to

provide such Notice to those Members of the Class that can be identified through

reasonable effort.

8.      The notification provisions of the Class Action Fairness Act, 28 U.S.C.

§1715 ("Notifications to appropriate federal and state officials"), do not apply to this

case, since it was commenced before February 18, 2005.

9.      Plaintiffs' Counsel are hereby authorized to retain Heffler, Radetich &

Saitta LLP as the Claims Administrator to supervise and administer the Notice procedure

as well as the processing of claims and distribution of the Net Settlement Fund.

10.      Not later than fifteen (15)  days from the date of this Order, Plaintiffs'

Counsel shall cause copies of the Notice and Proof of Claim, substantially in the forms

attached as Exhibits B and C to the Stipulation of Settlement, to be mailed by first class

mail to all Members of the Class reasonably identified by the list of Adams Golf Class

Members previously furnished to Plaintiffs' Counsel by Adams Golf, and all Class

Members otherwise identified as a result of the November 2005 Notice of Pendency of

the Class.  The mailing shall be directed to the addresses listed on such records or such

4

updated or revised addresses as may be available.  The date of the initial mailing of the

Notice of Settlement shall be referred to as the "Notice Date."

11.     Not later than seven (7) days after the Notice Date, Plaintiffs' Lead

Counsel shall cause the Summary Notice, substantially in the form attached as Exhibit D

to the Stipulation of Settlement, to be published once in the *Wall Street Journal* and shall

cause a copy of the Summary Notice to be published electronically on *PR Newswire*.

12.     Plaintiffs' Counsel shall also cause copies of the Notice and Proof of

Claim to be mailed as soon as practicable to persons who indicate, in response to the

Summary Notice or otherwise, that they purchased Adams Golf shares in or traceable to

the IPO or during the Class Period and to other persons who are identified as having

purchased Adams Golf shares in or traceable to the IPO or during the Class Period.

13.     Not later than five (5) days before the Final Hearing, Plaintiffs' Lead

Counsel or the Claims Administrator shall serve on Defendants' Counsel and file with the

Court proof, by affidavit or declaration under penalty of perjury, of the publication and

mailing of the Notices.

14.     All Class Members, except those who exclude themselves, shall be bound

by all determinations and judgments in the Action concerning the Settlement, whether

favorable or unfavorable.

15.     All Members of the Class who wish to be excluded from the Class must

submit a request for exclusion in the manner described in the Notice postmarked at least

fifteen (15) days before the Final Hearing date set forth in paragraph 3 above.  Any

person who does not submit a valid and timely request for exclusion shall be a Class

Member. All requests for exclusion must include information sufficient to establish proof of purchases of Adams Golf shares in or traceable to the Adams Golf IPO.

16.    Plaintiffs' Lead Counsel shall present the Opt-Out List to Defendants' Counsel at least ten (10) days before the Final Hearing.

17.    If the number of shares bought by persons on the Opt-Out List comprises more than the number agreed to by the Parties in a separate stipulation, Defendants shall inform Plaintiffs' Lead Counsel, as specified in the Stipulation of Settlement, ¶ 11.2, whether Defendants intend to withdraw from the Stipulation of Settlement, at least three (3) days before the Final Hearing.

18.    If Plaintiffs learn that certain persons on the Opt-Out List wish to withdraw their exclusion requests, such that the total number of shares for which opt-out is sought falls below the number agreed to by the Parties in the stipulation, by the day before the Final Hearing, Plaintiffs must serve Defendants with a list of persons who have withdrawn their request for exclusion or who were not Members of the Class.  In such event, the Final Hearing will take place as scheduled.

19.    Any Member of the Class who has not requested exclusion may appear with or without counsel, and object to the proposed Settlement of the Action, the proposed Plan of Allocation of the Net Settlement Fund, the Request for Attorneys' Fees and Costs, and/or the request for Plaintiff Expense Awards (collectively "Objections"); provided, however, that no Member of the Class shall be heard or entitled to make Objections unless that person has served, by first class U.S. mail, postmarked on or before fifteen (15) days before the Final Hearing, written Objections and copies of any papers and briefs upon each of the following:

Todd S. Collins, Esquire
Berger & Montague, P.C
1622 Locust Street
Philadelphia, PA 19103

Paul R. Bessette, Esquire
Greenberg Traurig, LLP
300 West Sixth Street, Suite 2050
Austin, Texas 78701

Michael J. Chepiga, Esquire
Simpson Thacher & Bartlett, LLP
425 Lexington Avenue
New York, NY 10017-3954

and has filed the Objections, papers and briefs with the Clerk of the United States District

Court for the District of Delaware (which filing may be done by mail, if postmarked on

or before fifteen (15) days before the Final Hearing). Any such written Objections must

include proof of membership in the Class (*e.g.,* proof of purchases of Adams Golf shares

pursuant to or traceable to the IPO or bought between July 10, 1998 and October 22,

1998). Any Member of the Class who does not make his, her or its Objections in the

manner provided shall be deemed to have waived such Objections and shall forever be

foreclosed from making any such Objections. Any Class Member who files and serves

Objections is not required to appear at the Final Hearing. The Court will rule on all

timely filed written Objections.

20.     Any response to any Objections shall be filed no later than three (3) days

before the Final Hearing.

21.     All papers in support of the Settlement, the Plan of Allocation, the

Attorney's Fees and Costs Application, and/or the application for Plaintiff Expense

Awards shall be filed at least twenty (20) days before the Final Hearing.

22.     Any Member of the Class may enter an appearance in the Action, at his,

her or its own expense, individually or through counsel of his, her or its own choice.

7

Members of the Class who do not enter an appearance will be represented by Plaintiffs'
Lead Counsel.

23.     Class Members who wish to participate in the Net Settlement Fund shall
complete and timely submit signed Proofs of Claim and Releases, signed Substitute W-9
Forms and documents to prove their Class membership showing the date, number of
shares and price at which they bought their Adams Golf stock, and the date and price at
which they sold it, postmarked on or before _____ , 2010 in accordance with the
instructions contained therein.

24.     The Claims Administrator shall notify each person who files a Proof of
Claim whether or not the Claim is accepted or is rejected in whole or in part.  If the Claim
is rejected, in whole or in part, the Claims Administrator will give the Claimant the
reasons for the rejection.  Claimants who are told their Claim is rejected will be permitted
to remedy their Proof of Claim, if that is possible.  If the Claim is still rejected in whole
or in part, the Claimant may request review by the Court in accordance with the
requirements of ¶¶ 9.7 and 9.8 of the Stipulation of Settlement.

25.     Upon the Effective Date of the Settlement, all Class Members, whether or
not they filed an approved Proof of Claim within the time provided for, and whether or
not they participate in the Settlement Fund, shall be barred from asserting any claims
Released by Plaintiffs, and any such Class Member shall be conclusively deemed to have
fully, finally, and forever released the Released Parties, from any and all such Released
Claims, including Unknown Claims.  Defendants shall have released Plaintiffs, Class
Members and Plaintiffs' Counsel from all claims relating to the Action, including any
Unknown Claims.  The Underwriter Defendants shall have released all Claims for

8

indemnification against Adams Golf. The full definitions of the terms "Released Claims", "Released Parties" "Claims Released by Plaintiffs", "Claims Released by Underwriters" and "Unknown Claims" and the full release are set forth in the Stipulation of Settlement.

26.     As of the Effective Date, the distribution of the Net Settlement Fund in accordance with the terms and obligations of the Stipulation of Settlement will be approved. Only Authorized Claimants shall have any right to any portion of the Net Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation of Settlement. If there are funds left in the Escrow Account after all Authorized Claimants have been paid, on motion of Lead Counsel, this Court will rule on the distribution of such funds.

27.     Pending final determination of whether the Settlement should be approved, neither the Plaintiffs nor any Class Member, nor any Defendant either directly, representatively, or in any other capacity, shall commence against any Released Party any action or proceeding in any court or tribunal asserting any of the Released Claims.

28.     Pending final determination of whether the Settlement should be approved, all proceedings in the Action are stayed, except for proceedings relating to the Settlement.

29.     At or after the Final Hearing, the Court will determine whether the Attorney's Fees and Costs Application including the application for Plaintiff Expense Awards should be approved. Any such amounts awarded shall be paid ten (10) business days after the Final Order becomes Final and after the order awarding Attorney's Fees

and Costs and Plaintiff Expense Award, respectively, become Final, subject to the conditions set forth in the Stipulation of Settlement.

30.    All reasonable costs incurred in identifying and notifying Members of the Class, administering the Settlement, Taxes, Tax Expenses, and distributing the Net Settlement Fund, shall be paid as set forth in the Stipulation of Settlement, ¶3.1.

31.    The Court reserves the right to adjourn the date of the Final Hearing and any adjournment thereof without further notice to Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 2009.


_____
GREGORY M. SLEET
CHIEF JUDGE

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE ADAMS GOLF, INC. SECURITIES
LITIGATION,

CONSOLIDATED
C.A. No. 99-371-GMS

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**If you bought shares of Adams Golf stock in its July 9, 1998 Initial Public Offering ("IPO") or between July 10, 1998 and October 22, 1998 (the "Class Period"), you could get a payment from a class action settlement.**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

- This Settlement will provide $16,500,000 in cash, plus interest, plus possibly up to an additional $1,250,000 (the "Settlement" and the "Settlement Amount" or "Settlement Fund"), to pay claims of persons ("Plaintiffs" and the "Class") who, during the Class Period, bought shares of Adams Golf Inc. stock ("Adams Golf" or the "Company").

- The Settlement Amount is worth an average of $2.39 per share, or $2.57 per share if the extra $1.25 million is received, before payment of attorney's fees

1

and various expenses.  Put another way, the Settlement amount would pay
all Class Members between 19% and 21% of their estimated losses,
assuming that all Class Members participate in this Settlement, before
attorney's fees and various expenses are subtracted.  If fewer Class Members
participate, as is likely, participating Class Members will get a higher
percent of their losses.

- Plaintiffs believe that this is a very good Settlement, representing a
substantial recovery.  The Settlement avoids the expense and risk of a jury
trial, and brings this ten-year old case to a successful conclusion.

- The lawyers for Plaintiffs and the Class ("Plaintiffs' Counsel") have spent
thousands of hours over ten years litigating this class action suit on a
contingent fee basis.  They have advanced all the expenses of the lawsuit.
Plaintiffs intend to ask Chief Judge Gregory M. Sleet (the "Court"), who is
in charge of this case, to award attorney's fees of up to one-third of the
Settlement Amount, and reimbursement of litigation costs of not more than
$775,000.

- Your legal rights are affected whether you act, or don't act, in response to
this Notice.

2

## PLEASE READ THIS NOTICE CAREFULLY

## YOUR LEGAL RIGHTS AND OPTIONS IN

## THIS SETTLEMENT ARE LISTED BELOW

| WHAT YOU CAN DO | WHAT WILL RESULT |
|---|---|
| **SUBMIT A PROOF OF CLAIM, RELEASE, AND W-9 FORM ("PROOF OF CLAIM")** | The only way to get a payment. |
| **EXCLUDE YOURSELF OR OPT OUT** | Get no payment. This allows you to sue Defendants on your own about the claims in this case, hiring your own attorneys. |
| **OBJECT BUT REMAIN IN THE SETTLEMENT** | Write to the Court about why you don't like the Settlement, the Plan of Allocation, or the request for Plaintiff's Counsel's fees and costs or for Plaintiff Expense Awards. The Court will consider your objection. You will still get a payment, if you file a valid, approved Proof of Claim, and if the Court approves the Settlement. |
| **WITHDRAW YOUR PRIOR EXCLUSION** | Even if you asked to be excluded from the Class in response to the Notice dated November 4, 2005 (which informed you that this class action is pending), you can withdraw that exclusion and get a payment if you file a valid, approved Proof of Claim, and if the Court approves the Settlement. |
| **GO TO A HEARING** | The Court will conduct a hearing on _____, 2010. This hearing is open to the public. It will take place at __ o'clock in Courtroom ___ at J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, DE 19801-3519. To speak at the hearing about any objection you may have filed, you will need to give advance written notice to the Court and the parties. |
| **DO NOTHING** | Get no payment. Give up your rights. |

- The Settlement releases and disposes of claims against all Defendants in the case: Adams Golf, its officers and directors, B.H. Adams, Darl P. Hatfield, Richard Murtland, Paul F. Brown, Roland E. Casati, Finis F. Conner and Stephen R. Patchin and the Underwriters who underwrote the Adams Golf IPO, Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Inc.

("LBI") (an unnamed party to the Action), Nationsbanc Montgomery

Securities, LLC (now Banc of America Securities, LLC), and Ferris Baker

Watts, Inc (now RBC Capital Markets Corporation).

• The balance (the "Net Settlement Fund") of the Settlement Amount (after

plaintiffs' attorney's fees and costs, as well as expenses related to sending

notice, processing claims, and Plaintiff Expense Awards) will be paid to

Class Members who have submitted Proofs of Claim that are approved by

the Settlement Administrator ("Authorized Claimants"). Claims are

calculated based on the number of Adams Golf shares purchased in the IPO

or during the Class Period, the amount paid (not exceeding $16 per share,

the IPO price), and the amount received on sale. (If the stock was never sold

or sold after June 11, 1999, the amount received will be the closing price of

the stock on June 11, 1999, which was $3.06.) Your actual recovery will

depend on how much you lost, how many Class Members submit valid

Proofs of Claim, and the amount the Court awards for attorney's fees and

various expenses. *See* Questions 9 and 24 below for a more detailed

explanation.

• The Settlement ends a class action lawsuit against Adams Golf, its former

directors and officers and the Underwriter Defendants concerning whether

the Registration Statement and prospectus by which the stock was sold in the

4

IPO (the "Registration Statement") contained misleading statements, or left out important information. Plaintiffs claim that the Registration Statement misled buyers about the existence and risk of "gray marketing." Gray marketing involved the unauthorized sales of Adams Golf clubs to discounters who sold to the public at low prices. In the Registration Statement, Adams Golf claimed its golf clubs were sold only to exclusive retailers, such as shops on golf courses or specialty stores, that charged customers full retail prices. The risk posed by gray marketing was that Adams Golf's customers – the retail golf shops – would stop buying clubs from Adams Golf, because they could not compete against the discounters' low retail prices.

- Defendants deny the claims in the lawsuit. The parties disagree not only regarding whether the Registration Statement was misleading by not warning about the risk of gray marketing, but also regarding whether Plaintiffs and the Class could have recovered damages, even if they had won at trial. See Questions 2 and 4 below for a more detailed explanation.

For further information regarding this Settlement and a copy of the Stipulation of Settlement you may (1) contact Plaintiffs' Lead Counsel: Todd S. Collins or Elizabeth W. Fox, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA,

19103-6305, Telephone: 215-875-3000, efox@bm.net; (2) write to the Claims

Administrator, *In Re Adams Golf, Inc. Securities Litigation*, Heffler, Radetich &

Saitta LLP, P.O. Box 660, Philadelphia, PA 19105; or (3) visit the website at

www.hrsclaimsadministration.com, where you will find answers to common

questions about the Settlement, the claims procedure, and related matters.

Your rights and options—**and the deadlines to exercise them**—are
explained in this Notice.

The Court will decide whether to approve the Settlement. Payments will be

made to Authorized Claimants if the Court approves the Settlement, after any

appeals are resolved, after other conditions are satisfied, and after the claims are

processed. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................................................. **Page**

**1.    Why did I get this Notice package?**

6

**2.    What is this lawsuit about?**

**3.    Why is this a class action?**

**4.    Why is there a Settlement?**

**WHO IS IN THE SETTLEMENT** .................................................................. **Page**

**5.    How do I know if I am part of the Settlement?** ...........................................

**6.    Are there exceptions to being included?** ........................................................

**THE SETTLEMENT BENEFITS – WHAT YOU GET** .............................. **Page**

**7.    What does the Settlement provide?**

**8.    What is the Settlement Amount?**

**9.    What can I expect to receive under the proposed Settlement?**

**HOW YOU GET A PAYMENT – SUBMITTING A PROOF OF CLAIM** ......
**Page**

**10.    How can I get a payment?** .............................................................................

**11.    When would I get my payment?** ...................................................................

**12.    What am I giving up to get a payment and to stay in the Class?**

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ......................... **Page**

**13.    How do I get out of the Settlement?**

**14.    If I already excluded myself, how can I participate in the Settlement?**

**THE LAWYERS REPRESENTING YOU**………………………………... **Page**

7

**15.    Do I have a lawyer in this case?**

**16.    How will the lawyers be paid?**

**17.    Will the Plaintiffs be paid?**

**OBJECTING TO THE SETTLEMENT** ........................................................ **Page**

**18.    How do I tell the Court that I do not like the Settlement?**

**19.    What is the difference between objecting and requesting exclusion?**

**THE COURT'S FAIRNESS HEARING** ........................................................ **Page**

**20.    When and where will the Court decide whether to approve the**

**Settlement?**

**21.    Do I have to come to the hearing?**

**22.    May I speak at the hearing?**

**IF YOU DO NOTHING** .................................................................................. **Page**

**23.    What happens if I do nothing at all?**

**UNDERSTANDING YOUR PAYMENT – THE PLAN**
**OF ALLOCATION** ........................................................................................ **Page**

**24.    How will each Authorized Claimant's Payable Claim**

   **be calculated?** ..............................................................................................

**25.    What if my Payable Claim is less than $10.00?**

26.     **If I receive no payment will I be bound by the Court's final order?**

27.     **If I don't like the allocation, can I sue the Plaintiffs, the lawyers or the Claims Administrator?**

## BASIC INFORMATION

1.     **Why did I get this Notice package?**

You or someone in your family probably bought Adams Golf stock in the July 9, 1998 IPO or during the Class Period, from July 10, 1998 to October 22, 1998. The persons who sued on behalf of the Class – Todd Tonore, F. Kenneth Shockley, John Morrash and Patricia Craus – are called Plaintiffs. The entities and persons they sued – Adams Golf, Barney Adams, Darl P. Hatfield, Richard Murtland, Paul F. Brown, Roland E. Casati, Finis F. Conner, Stephen R. Patchin, Lehman Brothers Holdings, Inc., Nationsbanc Montgomery Securities, LLC (now Banc of America Securities, LLC), and Ferris Baker Watts, Inc. (now RBC Capital Markets Corporation) – are called Defendants.

The Court directed that you be sent this Notice, if you are a member of the Class, because you have a right to know about the proposed Settlement of this class action lawsuit, and about all of your choices, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and objections to the

9

Settlement submitted by Class Members (as explained below) and/or any appeals
are denied, then a Settlement Administrator appointed by the Court will process the
claims received and send payments to Class Members with valid claims. You can
track the progress of the Settlement by visiting:

www.hrsclaimsadministration.com.

This Notice explains the lawsuit, the Settlement, your legal rights, the
benefits that are available, who is eligible for them, and how to get them. It also
contains the Proof of Claim that you must fill out, sign, and send in with
documents to prove you bought the stock, to get a payment.

**2.    What is this lawsuit about?**

The lawsuit claims that Defendants misled Class Members, who bought
Adams Golf shares in the IPO or during the Class Period, by misrepresenting the
existence of and risk of gray marketing. The lawsuit claims that the Registration
Statement failed to tell the Class that Adams Golf clubs were being sold to the
public by discounters, and failed to warn the class of the risks of such gray
marketing, while at the same time emphasizing Adams Golf's "exclusive" retail
network. Defendants deny they did anything wrong, and deny that they caused
your losses.

10

**3.     Why is this a class action?**

In a class action, one or more persons called Plaintiffs sue for all persons
who have similar claims – in this case, all persons who bought Adams Golf shares
in the IPO or during the Class Period, between July 10, 1998 and October 22,
1998, and lost money. All of these persons are referred to as a Class, or,
individually, as Class Members. The Court resolves all of the issues for all Class
Members, except for those Members of the Class who exclude themselves from the
Class.

**4.     Why is there a Settlement?**

The Court did not decide in favor of Plaintiffs or Defendants. Instead,
Plaintiffs, on behalf of the Class, and Defendants have agreed to settle. Plaintiffs
have agreed to settle this lawsuit based on: (1) the facts they have discovered
during the litigation; (2) the substantial amount of money being paid by
Defendants in the Settlement; and (3) their conclusion that the proposed Settlement
is fair, reasonable and adequate under the circumstances, Plaintiffs believe the
Settlement serves the best interests of the Class Members, and avoids the risks of a

11

jury trial. Defendants have agreed to settle to eliminate the risk of a jury trial and
probable post-trial appeals, as well as to avoid the distraction and expense of
further litigation.

Plaintiffs and Defendants disagree about the merits of Plaintiffs' claims
against Defendants. The major issues on which the parties disagree include: (1)
whether Defendants made any materially false and misleading statements in the
Registration Statement; (2) whether Defendants failed to disclose important facts
or risks in the Registration Statement; (3) whether factors other than gray
marketing caused the decline in the price of Adams Golf stock; and ( 4) whether
Plaintiffs could establish damages.

# WHO IS IN THE SETTLEMENT

To see if you will get money from the Settlement, you first have to decide if you
are a Class Member.

**5.     How do I know if I am part of the Settlement?**

You are a Class Member if you bought Adams Golf stock in the July 9, 1998

IPO or during the Class Period (between July 10, 1998 and October 22,

1998).

**6.     Are there exceptions to being included?**

You are not a Class Member if you are a Defendant in this lawsuit or a

relative or member of the immediate family of any of the Defendants.    You

are also not a Class Member if you bought all of your Adams Golf stock

after October 22, 1998 or you owned your stock before the July 9, 1998 IPO.

Also, if you excluded yourself from the Class at the time you received the

November 2005 Notice of Pendency of the Class, as described below, you

are not a part of the Class, unless you tell the Court that you no longer wish

to be excluded by signing the Proof of Claim and checking the box after

paragraph 2 of the Proof of Claim.   See Questions 10, 13 and 14 for a

detailed explanation.

# THE SETTLEMENT BENEFITS – WHAT YOU GET

**7.     What does the Settlement provide?**

13

The terms of the proposed Settlement, including the payment of $16,500,000

plus the contingent $1,250,000, are summarized below and set forth in the

Stipulation of Settlement. You can get a copy of the Stipulation of

Settlement by writing to Plaintiffs' Counsel, or by visiting

www.hrsclaimsadministration.com.

The Settlement requires that all Class Members release all of the

Defendants, and their relatives, lawyers, insurance companies and heirs and

other related persons, with respect to all claims concerning Adams Golf's

IPO. This includes any claims made by Class Members about this case in

the Chapter 11 bankruptcy of LBHI or the Securities Investor Protection Act

(SIPA) Proceeding as to LBI. This means that you agree never again to sue

any of Defendants about the shares you bought in Adams Golf's IPO, and

your losses from that purchase. If you made a claim in the LBHI bankruptcy

or LBI SIPA proceeding about your losses in this case, that claim will be

eliminated or withdrawn. The exact legal language is in the Proof of Claim

at the end of this Notice.

**8.    What is the Settlement Amount?**

14

The proposed Settlement calls for Defendants to create a Settlement Fund in the amount of $16,500,000 in cash. In addition, Adams Golf will pay into the Settlement Fund up to $1,250,000, if Adams Golf wins or favorably settles a lawsuit against its former insurance broker, Thilman & Filipini ("Thilman"), or against Zurich American Insurance Company ("Zurich"), concerning Zurich's denial of insurance coverage and Thilman's alleged failure to notify Zurich of Plaintiffs' class action lawsuit against Adams Golf (the "Insurance Litigation"). If Adams Golf is successful in the Insurance Litigation, the Settlement Fund will be increased by the first $1,250,000 that may be recovered, after paying Adams Golf's attorney's fees and expenses.

Further, subject to the Court's approval, a portion of the Settlement Amount will be used to pay Plaintiffs' attorney's fees and costs and other reasonable expenses of the case (including notice and settlement administration costs and taxes on interest earned), as well as Plaintiff Expense Awards. See Questions 9, 16 and 17 below for a more detailed explanation. The Net Settlement Fund will be paid to Authorized Claimants.

**9.      What can I expect to receive under the proposed Settlement?**

15

Your share, if any, of the Net Settlement Fund will depend on: (1) the total
dollar amount of all the valid claims submitted by Authorized Claimants; (2)
the amount of interest earned by the Settlement Fund; (3) the amount of
administrative costs, including the costs of sending notice and settlement
administration; (4) the amount of taxes and tax expenses on any interest
earned by the Fund; (5) the amount awarded by the Court for Plaintiffs'
attorney's fees and costs; (6) the amount awarded by the Court for Plaintiff
Expense Awards; (7) the amount, if any, by which the Net Settlement Fund
is increased as a result of the Insurance Litigation; and (8) the amount of
money you lost because you bought Adams Golf stock in the IPO or during
the Class Period. The Claims Administrator will distribute the Net
Settlement Fund, according to the Plan of Allocation, after the deadline for
submission of Proofs of Claim has passed, after all claims have been
processed, and after the Court has finally approved the Settlement and any
appeals are resolved. See Questions 24-26 for an explanation of the Plan of
Allocation.

# HOW YOU GET A PAYMENT—SUBMITTING A PROOF OF CLAIM

16

## 10.    How can I get a payment?

To get a payment, you must send in a signed Proof of Claim regarding your

purchase of Adams Golf shares in the IPO or between July 10, 1998 and

October 22, 1998; you must specify the dates on which you bought and sold

the shares; the number of shares you bought and sold;  the price at which

you bought and sold, and your ending balance as of June 11, 1999;you must

submit documents showing your purchases and sales; and you must submit a

signed Substitute W-9 Form.  The Proof of Claim is attached to this Notice.

You may also download a Proof of Claim from

www.hrsclaimsadministration.com.  Please (1) read the instructions

carefully; (2) fill out the Proof of Claim and sign it at the two places shown;

(3) include copies of documents that show the number of shares that you

bought and sold, the prices per share and ending balance as of June 11, 1999,

such as copies of documents from your broker; and (4) mail the Proof of

Claim and documents, postmarked no later than _____, 2010 to:

Claims Administrator
In Re Adams Golf Inc. Securities Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 660
Philadelphia, PA 19105-0660

17

The Claims Administrator will process your claim and advise you if you are

an "Authorized Claimant" – meaning that your claim satisfies the

requirements established by the Court. If the Claims Administrator rejects

your claim or any part of it, you will be given an explanation, and you will

be given a chance to correct any problems. If you disagree with the Claims

Administrator's final decision, you may appeal that decision to the Court.


If you excluded yourself from the Class in response to the Notice informing

you of the pendency of this class action, dated November 4, 2005, and now

want to get a payment from the Settlement, you should send in the Proof of

Claim with your supporting documents and check the box after paragraph 2

of the Proof of Claim, saying that you want to withdraw your exclusion. If

you filed a claim in the Lehman Bankruptcy, you must check the box, and

provide your claim number or a copy of your claim.


## 11.   When would I get my payment?

The Court has scheduled a hearing for _____, 2010 (the "Final

Hearing"), to decide whether to approve the Settlement. See Question 20.

Even if the Court approves the Settlement, there may be appeals that would delay the payments. After Court approval, and the resolution of any appeals, the Claims Administrator must process all of the Proofs of Claim. As many as 7,500 persons could send in Proofs of Claim. Everyone who sends in a Proof of Claim will be informed of the approval or disapproval of his or her claim. Please be patient. You can also track the progress of the Settlement by visiting: www.hrsclaimsadministration.com.

**12.    What am I giving up to get a payment and to stay in the Class?**

Unless you exclude yourself, you will remain in the Class. If the Settlement is approved, you and all Class Members will release all of the claims that are covered by the Stipulation of Settlement ("Released Claims") against Defendants and the persons related to them, such as their children, parents, lawyers, affiliates and insurers. This means that you agree not to sue or be part of a lawsuit against Defendants about the Adams Golf IPO or the stock you bought, and you will give up any claims you may have filed in the Lehman bankruptcy, concerning Adams Golf. It also means that all of the Court's orders will apply to you and legally bind you. Please see the definitions of the terms that are in quotations in the Proof of Claim. If you

19

sign the Proof of Claim, you are agreeing to release all the "Released

Claims" against "Released Parties" as defined in the Proof of Claim, which

describes exactly the legal claims that you will give up unless you opt out.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do **not** want to receive a payment from this Settlement, and you want

to keep the right to sue Defendants on your own about the legal issues in this

case, then you must take steps to get out of the Settlement. This is called

excluding yourself – or is sometimes referred to as opting out of the Class.

### 13.    How do I get out of the Settlement?

To exclude yourself from or opt out of the Settlement, you must send a letter

by mail stating that you want to be excluded from *In re Adams Golf, Inc.*

*Securities Litigation*, File No. 99-CV-371-GMS.  Be sure to include your

name, address, telephone number, and your signature, along with the

purchase date(s) and amount(s) of your shares to prove your membership in

20

the Class.  You must mail your exclusion request postmarked no later than

_____, 2010 to:

Claims Administrator
Adams Golf, Inc. Securities Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 660
Philadelphia, PA 19105-0660

You can't exclude yourself on the phone or by e-mail. **If you ask to be excluded, you will not receive a Settlement payment, and you cannot object to the Settlement.** If you ask to be excluded, you will not be legally bound by anything that happens in this lawsuit or Settlement, and you may be able to sue Defendants on your own, subject to various factors including applicable statutes of limitation and statutes of repose. If you have already excluded yourself from the Class and want to remain excluded and not get a payment, you do not need to send in anything.

## 14.   If I already excluded myself, how can I participate in the Settlement?

If you opted out in response to the November 4, 2005 notice to the Class, and now want to rejoin the Class so you might become eligible to get a

21

payment, you may do so by checking the box after paragraph 2 of the Proof

of Claim and signing and returning the Proof of Claim.  See Question 10

above.

## THE LAWYERS REPRESENTING YOU

### 15.    Do I have a lawyer in this case?

The Court approved the law firm of Berger & Montague, P.C. to represent

you and the other Class Members.  Other law firms have also done some of

the legal work.  The lawyers from Berger & Montague and these firms are

called Plaintiffs' Counsel.  You will not be charged for these lawyers, except

that they seek payment of their fees and expenses from the Settlement Fund.

If you want to be represented by your own lawyer, you may hire one at your

own expense, but it is not necessary for you to do so.

### 16.    How will the lawyers be paid?

22

Plaintiffs' Counsel have spent thousands of hours working on this suit on a

contingent fee basis, and have paid or incurred the expenses of litigation –

up to $775,000 – with the expectation that if they were successful in

recovering money for the Class, they would receive fees and be reimbursed

for their expenses from the Settlement Amount, as is customary in this kind

of litigation. They also took the risk that if the suit were not successful, they

would be paid nothing. Therefore, Plaintiffs' Counsel will ask the Court at

the Final Hearing (see Question 20 below) to make an award of attorney's

fees in an amount not more than one-third of the Settlement Amount and for

reimbursement of expenses in an amount not more than $775,000. The

Court may award less than these amounts. Any amounts awarded by the

Court will come out of the Settlement Amount.

Plaintiffs' Counsel also reserve their right to seek additional money for their

work in connection with administering the Settlement, and/or for exceptional

recoveries, should they occur, on a per claim basis.

**17.    Will the Plaintiffs be paid?**

Lead Counsel will ask the Court to reimburse Plaintiffs for their reasonable,

out-of-pocket costs and expenses (including lost wages directly related to the

representation of the Class) in acting as Plaintiffs and Class representatives.

These are called Plaintiff Expense Awards, which Plaintiffs will receive in

addition to their pro rata shares of the Net Settlement Fund. Plaintiffs have

devoted considerable time to consulting with Plaintiffs' Counsel, providing

discovery, and giving their depositions. Plaintiff John Morrash also

frequently consulted with and instructed Plaintiffs' Counsel and attended

numerous arguments and mediations over the last ten years. Plaintiff

Expense Awards will come out of the Settlement Amount. The total amount

of Plaintiff Expense Awards will not be more than $40,000.

## **OBJECTING TO THE SETTLEMENT**

You can tell the Court that you do not agree with the Settlement, any part of

the Settlement, the Plan of Allocation, and /or the requests for Plaintiffs'

attorney's fees and costs and Plaintiff Expense Awards ("Objections" or "to

object"). The Court will consider your Objections and rule on them at or

after the Final Hearing on _____, 2010.

24

## 18.   How do I tell the Court that I do not like the Settlement?

If you are a Class Member, you can object.  The Court will consider your views.

To object, you must send a letter stating that you object in *In re Adams Golf Inc.*

*Securities Litigation*, File No. 99-CV-371-GMS.  Be sure to include your name,

address, telephone number, your signature, and the purchase date(s), number of

shares, and amount(s) paid for each share of the stock you bought in the IPO or

during Class Period to show your membership in the Class.  In the letter, write all

of the reasons for your objection to the Settlement, the proposed Plan of

Allocation, or the requests for attorney's fees and costs and Plaintiff Expense

Awards.  Mail the Objection to the four different places stated below, postmarked

no later than _____, 2010.

## Places to Mail Objections

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>District Court for the District of<br>Delaware,  J. Caleb Boggs<br>Federal Building, 844 N. King<br>Street, Wilmington, DE  19801-3519 | Todd S. Collins, Esquire<br>Elizabeth W. Fox, Esq.<br>Berger & Montague, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103 | Paul R. Bessette<br>Greenberg Traurig, LLP<br>300 West Sixth Street,<br>Suite 2050<br>Austin, Texas  78701<br><br>and<br><br>Michael J. Chepiga<br>Simpson Thacher &Bartlett, LLP<br>425 Lexington Avenue<br>New York, NY  10017-3954 |

**19.    What is the difference between objecting and requesting exclusion?**

You can object only if you are a member of the Class. If you submit a valid claim, you may get a payment, even if you object. Excluding yourself is telling the Court that you do not want to be part of the Class, and that you do not want a payment from the Settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a Final Hearing to decide whether to approve the Settlement and to consider other matters addressed in this Notice. You may attend and you may ask to speak, but you do not have to be there or to speak.

**20.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Hearing at _____ _.m. on _____, 2010, in Courtroom ___, at the United States District Court for the District of Delaware, J. Caleb Boggs, Federal Building, 844 N. King Street, Wilmington, DE 19801-3519. At this hearing the Court will consider whether the Settlement is fair, reasonable,

and adequate. At or after the hearing, the Court will also decide whether to approve the proposed Plan of Allocation, how much to pay Plaintiffs' Counsel for attorney's fees and costs, and whether and how much to pay for Plaintiff Expense Awards. If there are Objections, the Court will consider them. The Court will listen to people (or their lawyers) who have submitted a written Objection and have told the Court of their intent to appear and speak at the hearing, postmarked no later than _____, 2010, and mailed to the four different places listed in the chart following Question 18 above. We do not know how long these decisions will take.

### 21. Do I have to come to the hearing?

No. Plaintiffs' Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you file an Objection, you do not have to come to court to talk about it. As long as you mailed your written Objection on time, the Court will consider it. You may also attend or pay your own lawyer to attend to speak in support of any Objection you may have mailed, but it is not necessary. You may speak as long as you have followed the instructions set forth in the answer to Question 22.

27

## 22. May I speak at the hearing?

If you have submitted a written Objection to the Settlement, or any other issue, and

followed the instructions in Questions 18 and 21 and this paragraph, you (or your

lawyer) may speak at the Fairness Hearing in support of your Objection. To speak

at the hearing, you or your lawyer must send a letter, along with your written

Objection, saying that it is your "Notice of Intention to Appear in *In re Adams*

*Golf, Inc. Securities Litigation*, File No. 99-CV-371 GMS." Be sure to include

your name, address, telephone number, and your signature. Your Notice of

Intention to Appear must be postmarked no later than _____, 2010, and be

sent to the Clerk of the Court, Plaintiffs' Counsel, and Defense Counsel, at the

addresses listed in Question 18. You may not speak at the hearing if you exclude

yourself.

# IF YOU DO NOTHING

## 23. What happens if I do nothing at all?

**If you do nothing, you will not receive any money from this Settlement.** You

also will not be able to start a lawsuit against Defendants about the legal issues in

28

this case, ever again. You will not be permitted to object to this Settlement, and
any claim you may have filed in the Lehman bankruptcy will be invalid.

## UNDERSTANDING YOUR PAYMENT – THE PLAN OF ALLOCATION

The Plan of Allocation is the method by which the Claims Administrator will
calculate how much to pay each Authorized Claimant.

## 24.   How will each Authorized Claimant's Payable Claim be calculated?

The Net Settlement Fund will be divided among the Authorized Claimants in
accordance with the Plan of Allocation. See Questions 8 and 9. The amount to be
paid to you, if you are an Authorized Claimant, is your Payable Claim. Your
Payable Claim requires calculation of your Recognized Loss. Recognized Loss
equals the total amount of your damages, which is the total amount you paid for
your stock, but no more than $16 per share, minus the total amount you sold your
stock for. If you sold your shares after June 11, 1999 (the day Plaintiffs filed this
lawsuit), or you still own them, then $3.06 per share, the amount at which Adams
Golf shares closed on June 11, 1999, will be subtracted from the amount you paid
for the stock. The Plan of Allocation is based on each Authorized Claimant's pro
rata share of the Net Settlement Fund. In other words, the greater your Recognized
Loss, the larger your Payable Claim will be.

29

To figure out your Payable Claim as an Authorized Claimant, the Settlement Administrator will calculate what percent your Recognized Loss represents of the total of all Authorized Claimants' Recognized Losses. Once your percent of all Recognized Losses is calculated, then that percent times the total Net Settlement Fund will be your Payable Claim.

For Authorized Claimants who held shares at the beginning of the Class Period or made multiple purchases or sales during the Class Period, the first-in, first-out ("FIFO") method will be applied to such holdings, purchases and sales for purposes of calculating a Recognized Loss. Under the FIFO method, sales of shares during the Class Period will be matched, in chronological order, first against shares held at the beginning of the Class Period, and any remaining shares sold during the Class Period will then be matched, in chronological order, against shares purchased during the Class Period.

Shares "transferred into", "delivered into" or "received into" the claimant's account, shall NOT be considered as purchased shares unless claimant submits documents supporting that the original purchase of the shares occurred during the Class Period. Also, shares purchased and subsequently "transferred out" or "delivered out" of claimant's account will NOT be considered part of claimant's

claim, as the right to file for those shares belongs to the person or party receiving the shares.

"Short" sales shall not be recognized for any amount of loss on the cover or purchase transaction, and no Recognized Loss will be computed for any such covering purchase transaction.

No Recognized Loss will be computed for any transactions in Adams Golf Securities engaged in by market makers.

If you inherited or received a gift of Adams Golf stock during the Class Period, that inheritance or gift is not considered a purchase of Adams Golf stock unless your ancestor or donor was the actual purchaser of Adams Golf stock during the Class Period. You, as a recipient of a gift or inheritance, and the original purchaser may not both file a claim with regard to the same shares of Adams Golf stock. If both you and the donor (or you and your ancestor's estate) make such a claim, only the claim filed by the recipient (or heir) will be honored.

## 25. What if my Payable Claim is less than $10.00?

31

In the interest of economy, no payment will be made to any Authorized Claimant whose Payable Claim would be less than $10 based on the initial allocation of the Net Settlement Fund to the Authorized Claimants.

### 26.   If I receive no payment, will I be bound by the Court's final order?

Payment in the manner explained above (including not paying amounts below $10 and not paying anything to Class Members who did not submit signed Proofs of Claim and supporting documents) will be considered to be conclusive compliance with the Settlement.  All Class Members who fail to submit valid and timely Proofs of Claim, or whose payable claim is less than $10, will be barred from receiving payments from the Net Settlement Fund.  All Class Members, except those who opt out, whether or not they get a payment, will be bound by all of the terms of the Settlement, including the terms of any final orders or judgments entered and the releases given to Defendants and others.  This means that no Class Member will be permitted to sue any Defendants concerning the shares they bought in the Adams Golf IPO, or during the Class Period, whether or not they received a payment.

**27.    If I don't like the allocation, can I sue Plaintiffs, Class Counsel or the Claims Administrator?**

No.  Although Class Members have a right to send Objections to the Court, no Class Member will have a right to make a claim against Plaintiffs, Plaintiffs' lawyers or the Claims Administrator (Heffler), or any other person who is helping Plaintiffs' Counsel, based on the distributions made in accordance with the Settlement, the Plan of Allocation, and further Orders of Court.  In addition, in the interest of achieving substantial justice, Plaintiffs' Counsel will have the right, but not the obligation, to waive or not insist on what they believe to be formal or technical defects or problems in any Proofs of Claim received by the Claims Administrator.

### NOTICE TO BANKS, BROKERS AND OTHER NOMINEES

Each bank, brokerage firm or other nominee ("Nominees") who purchased or acquired Adams Golf common stock in the IPO or during the Class Period for a beneficial owner, should, within ten (10) days of receipt of this Notice, provide a list of the names and addresses of such beneficial owners to Heffler, Radetich & Saitta, LLP, P. O. Box 660, Philadelphia, PA, 19105, who will then mail Notices to the beneficial owners.  Alternatively, a Nominee may request copies of this Notice

and mail such copies out to beneficial owners. The expenses for such a mailing

will be borne by the Claims Administrator.

## INQUIRIES

All inquiries concerning this Notice, the Proof of Claim, or any other questions by

Class Members should be directed to the Claims Administrator or Plaintiffs'

Counsel listed above.

## PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE

DATED: _____, 2009      BY ORDER OF THE COURT:

GREGORY M. SLEET, CHIEF JUDGE

Adams_Golf_-_Notice.DOC

# EXHIBIT C

[ATTACHED TO END OF NOTICE]

**PROOF OF CLAIM AND RELEASE FORM AND SUBSTITUTE FORM W-9**

**I.      GENERAL INSTRUCTIONS**

1.      If you bought shares of Adams Golf Inc. ("Adams Golf") stock in the July 9, 1998 Initial Public Offering ("IPO") or during the period from July 10, 1998 through October 22, 1998 (the "Class Period"), you are a "Class Member" and you may be entitled to a payment from the Settlement proceeds.  (See the accompanying Notice for a description of persons that are excluded from the Class.)  If you are NOT a Member of the Class, PLEASE DO NOT submit a Proof of Claim and Release ("Proof of Claim").

2.      If you have already excluded yourself from the Class in 2005 but want to get a payment from the Settlement, please check the box below and your exclusion will be withdrawn.  In this event, you will be bound by the Settlement and will release Defendants in this case.

**[    ]  I want to withdraw my exclusion filed in November or December 2005.**

**If you filed one or more proofs of claim (the "Bankruptcy Claims") in (1) the chapter 11 bankruptcy cases (the "Chapter 11 Bankruptcy Cases") of Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries and/or (2) the proceeding (the "SIPA Proceeding") commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI") check here [    ].**

1

**The Bankruptcy Claims will be deemed disallowed and expunged if you submit this Proof of Claim, and will be treated as if they had not been filed, and you will not be entitled to any distribution on account thereof. See Question 7 in the attached Notice.  Please include your claim number or a copy of your Bankruptcy Claim(s), if you filed a claim in the Chapter 11 Bankruptcy Cases and/or SIPA Proceeding.**

3.    To get a payment, you must:

a.   complete this Proof of Claim and sign it on page __.

b.   complete the Substitute Form W-9 and sign it on page __.

c.   mail your completed and signed Proof of Claim Form, your completed and signed Substitute Form W-9 and documents proving your claim (such as copies of confirmation slips or documents from your broker showing the purchase, sale (if any) or holding of your Adams Golf stock, before _____, 2010, addressed as follows:

Claims Administrator
Financial Services
Adams Golf Litigation
Heffler Radetich & Saitta LLP
P.O. Box 660
Philadelphia, PA 19105-0660

d.  Send these documents by First Class Mail or by

Certified Mail, return receipt requested, if you want proof

that they were received.

4.  If you do not send your signed Proof of Claim and signed Substitute W-9

Form and copies of documents to prove your claim such as documents from your broker showing

purchases and sales of Adams Golf stock to the address above, postmarked by _____,

2010, your claim may be rejected and you may not get any payment from the Settlement, as

explained in the Notice.  Submission of this Proof of Claim, however, does not assure that you

will get a payment from the Settlement.

## II.    PROOF OF CLAIM AND RELEASE

5.  By submitting this Proof of Claim, I state that I believe in good faith that I

am a Class Member as defined above and in the Notice of Proposed Settlement of Class Action,

(the "Notice"), or am acting for such person; that I am not a Defendant in the Action, the family

member of a Defendant, a trust of which a Defendant is a settlor, or any entity in which a

Defendant has a controlling interest; that if I asked to be excluded from the Class in response to

the notice dated November 4, 2005, I want to withdraw that exclusion; that I have read and

understand the Notice; that I believe that I am entitled to receive a share of the Net Settlement

Amount; and that I have decided to participate in the proposed Settlement described in the

Notice.  (If you are acting on behalf of a Class member, for instance, as an executor,

administrator, trustee, or other representative, you must send evidence of your current authority

to act on behalf of that Class member.  Such evidence would include, for example, copies of

letters testamentary, letters of administration, or a copy of the trust documents.)

WEST-#6419022-v2-Adams_Golf_-_Proof_of_Claim (2).DOC

6.    I understand that the information contained in this Proof of Claim is subject to such verification as the Court may direct, and I agree to cooperate in any such verification.  If the Claims Administrator requests additional information, I will provide it if I can.

7.    I have set forth where requested below all relevant information about all of my Adams Golf purchases during the Class Period, July 10, 1998 – October 22, 1998.

8.    I have included copies of my confirmation slips and copies of documents from my broker.

9.    CLAIMANT IDENTIFICATION - PLEASE TYPE OR PRINT

_____
Class Member's Name

_____
Join Member's Name (if any)

_____
Street Address

_____
City/State/Zip Code

_____
E-Mail Address, if any

_____
Foreign Province/Foreign Country

_____ (day)        _____ (cell phone)
Area Code Telephone Number                    Area Code Telephone Number
_____ (evening)
Area Code Telephone Number

If you are a bank or other institution filing on behalf of a third-party, and an account number is needed to identify the claimant for your records, indicate the account number here.

_____

4

10.    SCHEDULE OF TRANSACTIONS IN ADAMS GOLF SHARES BOUGHT IN
THE IPO BETWEEN JULY 10, 1998 AND OCTOBER 22, 1998.

**PLEASE LIST ALL ADAMS GOLF SHARES BOUGHT BY YOU IN THE
IPO OR BETWEEN JULY 10, 1998 AND OCTOBER 22, 1998.  Please use an extra sheet if
you do not have room.**

| Date You Bought Stock (Mo./Day/Year) | Number of Shares Bought | Amount per share. If more than $16 put $16 | Date Sold | Number of shares sold | Amount per share. If sold after 6/11/99, or if you still own shares, put $3.06 | Loss Per Num Shan |
|---|---|---|---|---|---|---|
| 1. | | 1. | 1. | | 1. | 1. |
| 2. | | 2. | 2. | | 2. | 2. |
| 3. | | 3. | 3. | | 3. | 3. |

11.    TOTAL SHARES PURCHASED _____
         TOTAL SHARES SOLD ON OR BEFORE JUNE 11, 1999.

If you bought stock and sold it in several parts at different prices, please list each sale separately.

Sales after June 11, 1999, should be listed together, even if sold on different dates.

You must attach documents to show your purchases, sales and holdings as of June 11, 1999 of

Adams Golf stock.

**YOU MUST READ THE REMAINDER OF THIS FORM AND SIGN BELOW**

12.    I hereby warrant and represent that I have not assigned or transferred,

voluntarily or involuntarily, any "Released Claims" as defined below.

13.    On the Effective Date (as defined in the Settlement) my signature will

constitute a full and complete release, remise and discharge by me or, if I am submitting this

Proof of Claim on behalf of an estate or one or more other persons, by it, him, her or them, and

by my, its, his, her or their heirs, executors, administrators, successors, and assigns of each of the

"Released Parties" of all "Released Claims," as defined below.  In paragraphs (a) (b) and (c)

below, "Action" means *In re Adams Golf Inc. Securities Litigation,* No. 99-cv-371-GMS (D.

Del.), and "Defendants" are the Defendants in this Action, who are listed at page _____ of the

attached Notice.

(a)    "Claims Released by Plaintiffs" means and includes all claims, causes of

action, demands, rights, liabilities, whether class or individual in nature, known or unknown,

suspected or unsuspected, contingent or non-contingent, collateral or direct, at law, equity, or

otherwise, that have been or could have been asserted by any Plaintiff or any Class Member or

any person claiming rights derivatively of a member of the Class, which arise out of, are based

upon or relate to, or are in connection with: the claims asserted in the Action including the facts

6

alleged in the Second Amended and Consolidated Class Action Complaint (the "Complaint");

the purchase of Adams Golf stock during the Class Period; or any of the facts, claims, or matters

of any kind, related directly or indirectly to the subject matters set forth in, or the facts, causes of

action, counts or claims for relief which were, might have been, or could have been, asserted,

alleged or litigated in the Action; against Defendants (including any other former director or

officer of Adams Golf), or any of Defendants' current or former parents, subsidiaries, affiliates,

predecessors-in-interest, successors-in-interest, officers, directors, employees, attorneys, insurers

(except with respect to the Insurance Litigation), agents, representatives, principals, assigns,

subrogees, stockholders, partners, trustees, heirs, beneficiaries, servants, all persons claiming

rights derivatively of them, and all other persons, trusts, partners, entities or corporations in

privity with any of them or otherwise affiliated or related to any of them, and/or any subsidiary

thereof or any of them.  Released Claims also include Unknown Claims, and any claims a Class

Member filed in, or may have or could have filed in the Chapter 11 Bankruptcy cases and/or

SIPA Proceeding, with respect to the Adams Golf Litigation.

(b)     "Released Parties" means each of the Adams Golf Defendants,

Underwriter Defendants (including LBHI, LBI and James W. Giddens, the appointed trustee for

LBI pursuant to SIPA), Plaintiffs, and Class members, and their past or present parents,

subsidiaries, affiliates, predecessors-in-interest, successors-in-interes, officers, directors,

advisors, agents, assigns, administrators, attorneys, banks or investment banks, co-insurers,

consultants, employees, estates, executors, heirs, insurers, limited partners or partners, reinsurers,

representatives, spouses (present and former), any entity in which any Party has a controlling

interest, any member of any individual Party's immediate family, or any trust of which any Party

is the settlor or which is for the benefit of any individual Party and/or member(s) of his or her

7

family, but not Thilman, or its successor entities, Zurich or any other present or future defendant

in the Insurance Litigation.

(c)     "Unknown Claims" means any Released Claim that any Plaintiff or Class

Member does not know or suspect to exist in his, her or its favor at the time of the release of the

Defendants, that if known by him, her or it, might have affected his, her or its decision to settle

and release Defendants, or might have affected his, her or its decision not to object to this

Settlement or not to exclude himself, herself or itself from the Settlement.  With respect to any

and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date,

they shall be deemed to have, and by operation of the Final Order shall have, expressly waived

the provisions, rights and benefits of any statute, rule or provision which prohibits the release of

Unknown Claims, including California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

14.     **Signature** _____
                          **Sign your name here**                              **Date Signed**

(Joint Claimant Sign your name here)                    Date
(All Joint Claimants must sign)

_____
Capacity of persons signing (e.g., Beneficial Owner, Executor, Administrator
or Corporate Title)

8

## SUBSTITUTE FORM W-9

Request for Taxpayer Identification Number (TIN) and Certification

NAME: _____

Check appropriate box:

___ Individual/Sole Proprietor      ___ Pension Plan      ___ Corporation-Executor

___ Partnership      ___ Trust      ___ IRA      ___ Other

Enter Taxpayer identification number, TIN on appropriate line. For individuals, this is your social security number ("SSN"). For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name. You may enter either your SSN or your Employer Identification Number ("EIN"). For other entities, it is your EIN.

_ _ _ - _ _ - _ _ _ _        or        _ _ - _ _ _ _ _ _ _
Social Security Number                Employer Identification Number

NOTE:   If you require instructions for Completing Substitute Form W-9, please make a written request to us at Claims Administrator, Adams Golf Litigation, Heffler, Radetich & Saitta L.L.P., P.O. Box 660, Philadelphia, PA 19102. Please note that your accountant should also be able to provide you with these instructions.


15.    CERTIFICATION

UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF THE

UNITED STATES, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON

THIS FORM IS TRUE, CORRECT AND COMPLETE.

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions

of Section 3406 (a)(l)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from

backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject

to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S.

WEST-#6419022-v2-Adams_Golf_-_Proof_of_Claim (2)5DOC

has notified me (us) that I am (we are) no longer subject to backup withholding.  NOTE:  If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

Executed this _____ day of _____, in _____,

_____,    _____
(City)                                                               (State / Country)

_____    _____
(Sign your name here)                                                     Date

(Type or print your name here) _____

_____

## ACCURATE CLAIMS PROCESSING TAKES A
## SIGNIFICANT AMOUNT OF TIME.
## THANK YOU FOR YOUR PATIENCE.

Reminder Checklist:

1.    Please sign the above Proof of Claim, and sign the Substitute W-9 Form.

2.    Remember to attach confirmation slips or statements from your broker to prove your transactions in Adams Golf stock.

3.    Keep a copy of your Proof of Claim for your records.

4.    Mail the Proof of Claim and your documents by _____.

5.    If you want proof that your Proof of Claim was received, please send it Certified Mail, Return Receipt Requested.

6.    If you move after submitting your Proof of Claim, please send your new address to the Claims Administrator.

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE ADAMS GOLF, INC. SECURITIES LITIGATION,** | **CONSOLIDATED**<br>**C.A. No. 99-371-GMS** |

### Summary Notice of Proposed Class Action
### Settlement and Settlement Hearing

**To:    All Buyers of Shares of Adams Golf Inc. Stock in the July 9, 1998 Initial Public
Offering or between July 10, 1998 and October 22, 1998:**

YOU ARE HEREBY NOTIFIED that a settlement for $16,500,000 cash, plus a

contingent amount of up to $1,250,000 (the "Settlement" or the "Settlement Amount"), has been

reached in this Federal Securities Class Action between the Class members and Adams Golf, Inc.

and its officers and directors and its underwriters ("Defendants"). A hearing will be held before

the Honorable Chief Judge Gregory M. Sleet in Courtroom ___, in the United States Courthouse,

J. Caleb Boggs Federal Bldg, 844 North King Street, Wilmington, DE 19801-3519, at

__:_____.m., on _____, 2010, to determine whether the Settlement should be

approved by the Court as fair, reasonable, and adequate; to consider the proposed Plan of

Allocation; to consider applications for Plaintiffs' Counsel's fees and costs and reimbursement to

Plaintiffs for their out-of-pocket expenses; and  to consider any objections filed by Class

members.

If you bought shares of Adams Golf stock in or traceable to the July 9, 1998 Initial Public

Offering ("IPO"), or between July 10, 1998 and October 22, 1998 (the "Class Period"), you may

be entitled to share in the Settlement proceeds. If you have not yet received the full printed

Notice of Proposed Settlement of Class Action, you may obtain a copy by identifying yourself as

a member of the Class and by calling toll-free: (800) 768-8450, or by writing to the Claims

Administrator, In Re Adams Golf, Inc. Securities Litigation, c/o Heffler, Radetich & Saitta, LLP,

P.O. Box 660, Philadelphia, PA 19105-660, or by contacting Lead Counsel, Todd Collins, Esq.

or Elizabeth W. Fox, Esq., Berger &Montague, P.C., 1622 Locust Street, Philadelphia, PA

19103 . You may also download a copy from: www.hrsclaimsadministration.com.

     Further information may be obtained by directing your inquiry in writing to the Claims

Administrator.

Dated: _____, 2009     By Order of the United States District Court for the
                                   District of Delaware

2

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE ADAMS GOLF, INC. SECURITIES LITIGATION,** | **CONSOLIDATED C.A. No. 99-371-GMS** |

## ORDER AND FINAL JUDGMENT

All capitalized terms used herein have the meanings set forth in the Stipulation of Settlement.

On _____, 2009, following Notice to all parties and Notice to the Class Members as described herein, a Final Hearing was held before this Court to consider: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Approval Motion"); (2) the motion for an Award of Fees and Costs to Plaintiffs' Counsel and the motion for the payment of Plaintiffs' reasonable, out-of-pocket expenses ("Fees and Costs Application"); and (3) Objections filed by Class Members.

1.      Pursuant to those Motions, the Court must:

a.      determine whether the terms and conditions of the Stipulation of Settlement dated _____, 2009 are fair, reasonable and adequate for the settlement of all claims asserted by Lead Plaintiffs and the Class in the Second Consolidated and Amended Class Action Complaint in this Action ("Complaint"), including the release of Plaintiffs, Class Members and Defendants, and should be approved;

b.      determine whether judgment should be entered dismissing the Complaint on the merits and with prejudice in favor of the Defendants and as against all persons or entities who are Members of the Class herein who have not requested exclusion therefrom;

       c.     determine whether to approve the Plan of Allocation as a fair and reasonable method to allocate the Net Settlement Fund among the Authorized Claimants;

       d.     determine whether and in what amount to approve the Fees and Costs Application; and

       e.     determine whether Class Members' Objections, if any, have merit.

       2.     The Court has considered all matters submitted to it at the hearing and otherwise. It appears that a Notice of the hearing substantially in the form approved by the Court was mailed to all persons or entities reasonably identifiable, who suffered damage as a result of their purchase of Adams Golf Inc. ("Adams Golf") shares in the IPO or during the Class Period, and that a Summary Notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* pursuant to the specifications of the Court and was also disseminated over the *PR Newswire*. The Court has considered and determined the fairness and reasonableness of the Settlement, the Plan of Allocation, the Fees and Costs Application, and has considered all Objections of Class Members. The Court has received a final non-appealable order from the United States Bankruptcy Court for the Southern District of New York in the respective Chapter 11 cases and/or SIPA proceedings approving Lehman Brothers Holdings Inc.'s ("LBHI") and Lehman Brothers, Inc.'s ("LBI"), entry into this Settlement, their release of any indemnification claims they may have with respect to the Action, and approving the Claim Disallowance.

       NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

       3.     The Court has jurisdiction over the subject matter of the Action, the Plaintiffs, all Class Members, and the Defendants.

4.      The Court has previously certified a Class of all persons who bought Adams Golf common stock in or traceable to the IPO of Adams Golf or between July 10, 1998 and October 22, 1998, inclusive, and suffered damages thereby. Excluded from the Class are Defendants and members of their immediate families, any entity in which a Defendant has a controlling interest, and the heirs, successor and assigns of any excluded individual or entity. Also excluded from the Class are all persons whose names appear on the attached Opt-Out List, who requested exclusion from the Class.

5.      Pursuant to Fed. R. Civ. P. 23, Plaintiffs Todd Tonore, Kenneth Shockley, John Morrash and Patricia Craus, have been certified as Lead Plaintiffs.

6.      The Parties have resolved the Action in good faith following arm's length bargaining, that also included LBI and LBHI, and with the assistance of Judge Nicholas Politan serving as mediator.

7.      Notice of the proposed Settlement of class action and related matters, including Notice of the _____, 2010 Final Hearing, was mailed to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

8.      A Final, Non-Appealable order of the Bankruptcy Court in the bankruptcy of LBI and LBHI in their respective Chapter 11 Cases and/or SIPA proceeding that approves the entry of LBI and LBHI into the Settlement, release of any indemnification claims LBI, the LBI

3

Trustee and LBHI may have with respect to the Action, and the disallowance of any claims made against LBI and LBHI by Plaintiffs, Class Members, or the Class itself in the Bankruptcy proceedings, has become Final.

9.    The Settlement is approved as fair, reasonable and adequate, and the Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation of Settlement.  Any Objections of Class Members to the Settlement are overruled.

10.    The Complaint is hereby dismissed with prejudice and without costs, except as provided in the Stipulation of Settlement.

11.    On the Effective Date, the Plaintiffs and each Class Member, on behalf of themselves, their successors and assigns, and any other person claiming (now or in the future) through or on behalf of them, and, in addition, Defendants, on behalf of themselves, their successors and assigns, and any other person claiming (now or in the future) through or on behalf of Defendants: (i) fully, finally and forever release, relinquish, remise and discharge the Released Parties from all claims, including, without limitation, Released Claims, arising out of or in connection with the institution, prosecution, or assertion of the Action and covenant not to threaten, demand, or sue the Released Parties or any of them  regarding any action or proceeding of any nature with respect to the Released Claims, and (ii) are forever enjoined and barred from asserting the Released Claims against the Released Parties or any of them in any action or proceeding of any nature.  With respect to Plaintiffs and Class members, the foregoing applies regardless of whether any such Plaintiffs and/or Class Members ever seek or obtain any distribution from the Net Settlement Fund; whether such Plaintiffs and/or Class Members executed and delivered a Proof of Claim; whether such Plaintiffs and/or Class Members filed an objection to the Settlement or to their claim being rejected as provided in the Stipulation of

4

Settlement, the proposed Plan of Allocation, any application by Plaintiffs' Counsel for an award

of Attorney's Fees and Costs, and any Plaintiff Expense Request; and whether the claims of such

Plaintiffs or Class Members have been approved or allowed or such objection has been overruled

by the Court.

12.     In accordance with the Private Securities Litigation Reform Act of 1995, 15

U.S.C. § 77k(f)(2)(A) and 15 U.S.C. §77z-1 ("PSLRA"), and other statutory or common law

rights, the Released Parties, and each of them, are hereby fully, finally and forever released and

discharged from all claims for contribution, indemnity or other federal or state law causes of

action that have been brought or may be brought by any person based upon, relating to, arising

out of, or in connection with the matters alleged in the Action.

13.     The Underwriter Defendants including LBHI, LBI and the LBI Trustee and their

counsel release any claim for indemnification against Adams Golf relating to the Action, on the

Effective Date.

14.     With respect to any and all Released Claims, the Settling Parties stipulate and

agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Final

Order shall have, expressly waived the provisions, rights and benefits of any statute, rule or

provision which prohibits the release of Unknown Claims, including California Civil Code

§1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

15.     A Settling Party may hereafter discover facts in addition to or different from those

which he, she, it or they now know or believe to be true with respect to the subject matter of the

Released Claims, but the Settling Parties, upon the Effective Date, shall be deemed to have, and

by operation of the Final Order shall have, fully, finally, and forever settled and released any and

all Released Claims, known or unknown, suspected or unsuspected, contingent or non-

contingent, whether or not concealed or hidden, which now exist, or heretofore have existed,

upon any theory of law or equity now existing or coming into existence in the future, including,

but not limited to, conduct which is alleged to be negligent, intentional, with or without malice,

or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of

such different or additional facts. The Settling Parties shall be deemed by operation of the Final

Order to have acknowledged that the foregoing waiver was separately bargained for and a key

element of the Settlement of which this release is a part.

16.     It is the intention of the Parties that these releases shall provide complete peace to

the Parties related to the Action, except with respect to the Insurance Litigation, as explained in

the Stipulation of Settlement.

17.     Neither this Order and Final Judgment, the Stipulation of Settlement, nor any of

its terms and provisions, or any of the negotiations or proceedings connected with it, nor any of

the documents or statements referred to therein:

(a)     is or may be deemed to be or may be used as an admission of, or evidence

of, the validity of any Released Claim, or of any wrongdoing or liability of the Parties;

(b)     is or may be deemed to be or may be used as an admission of, or evidence

of, any fault or omission of the Parties in any civil, criminal or administrative proceeding in any

court, administrative agency or other tribunal;

(c)     shall constitute an adjudication or finding on the merits as to the claims of

any Party and shall not be deemed to be, intended to be or construed as an admission of liability,

6

in any way on the part of any Party or any evidence of the truth of any fact alleged or the validity

of any claims that have been or could be asserted in the Action. All Parties expressly deny any

liability for any and all claims of any nature whatsoever; nor shall anything herein contained

constitute an acknowledgment of fact, allegation or claim that has been or could have been made,

nor shall any third party derive any benefit whatsoever from the statements made in the

Stipulation of Settlement; nor

    (d) shall be construed against Defendants as an admission or concession that

the consideration to be given hereunder represents the amount which could be or would have

been recovered after trial. Any Party or Class Member may file the Agreement and/or the Final

Order in any action that may be brought against them in order to support a defense or counter

claim based on principles of res judicata, collateral estoppel, release, good faith settlement,

judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar

defense or counterclaim.

   18. The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Counsel

and the Claims Administrator are directed to administer the Settlement in accordance with its

terms and provisions. Any Objections to the Plan of Allocation filed by Class Members are

overruled.

   19. Plaintiffs' Counsel are hereby awarded _____% of the Settlement Fund in

fees, which the Court finds to be fair and reasonable, and $_____ in reimbursement of

expenses, which fees and expenses shall be paid to Plaintiffs' Lead Counsel from the Settlement

Fund, with interest from the date(s) of deposit of the Settlement Amount in Huntington National

Bank, to the date of payment at the same rate that the Settlement Fund earns. These amounts are

to be paid pursuant to the procedure set forth in the Stipulation of Settlement after this Order and

any separate order awarding attorney's fees and costs is Final. The award of attorney's fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion and sole discretion of Plaintiffs' Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions to the prosecution of the Action. Any Objections to the Award of Fee's and Costs to Plaintiffs' Counsel are overruled.

20.    Plaintiffs are hereby awarded reasonable costs and expenses, pursuant to 15 U.S.C. 77z(a)(4) as follows: Todd Tonore is awarded $_____; John Morrash is awarded $_____; and Patricia Craus is awarded $_____; F. Kenneth Shockley is awarded $_____. Such amounts shall be paid from the Settlement Fund, at the time this order is Final, and any supplementary order awarding such expenses is Final. Any Objections to the Plaintiff Expense Awards are overruled.

21.    The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein. The Parties agree not to make any public statements that contradict this finding.

22.    Within ten (10) business days after the Effective Date of this Settlement, Federal Insurance shall pay its portion of the Settlement Amount in cash to the Escrow Agent.

23.    Exclusive jurisdiction is hereby retained over the administration, interpretation, effectuation or enforcement of the Stipulation of Settlement and this Order and Final Judgment, and including the Fees and Costs Application or any other application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the Class Members, and including any individual objections by Claimants to the rejection of their claim or to the Allocation of the Net Settlement Fund.

8

24.     Without further order of the Court, the parties may agree to reasonable extensions

of time to carry out any of the provisions of the Stipulation of Settlement.

25.     There is no just reason for delay in the entry of this Order and Final Judgment and

immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the

Federal Rules of Civil Procedure.

Dated: Wilmington, Delaware

_____, 2010

_____
GREGORY M. SLEET
CHIEF JUDGE, UNITED STATES
DISTRICT COURT

9

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------x
                                                        :
In re                                                   :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,             :        **08-13555 (JMP)**
                                                        :
                    **Debtors.**                         :        **(Jointly Administered)**
                                                        :
--------------------------------------------------------------------------------x
                                                        :
In re                                                   :
                                                        :        **Case No.**
**LEHMAN BROTHERS INC.,**                                :
                                                        :        **08-01420 (JMP) (SIPA)**
                    **Debtor.**                          :
                                                        :
--------------------------------------------------------------------------------x

**ORDER GRANTING JOINT MOTION OF LEHMAN BROTHERS
HOLDINGS INC. AND LEHMAN BROTHERS INC. PURSUANT TO
RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT AGREEMENT
OF ADAMS GOLF SECURITIES LITIGATION AND OTHER RELATED RELIEF**

   Upon the joint motion, dated December 22, 2009 (the "Motion") of Lehman

Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession, the "Debtors") and James W. Giddens

(the "SIPA Trustee"), as trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI"), (i) for

authorization and approval, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), of a settlement agreement with the Class Plaintiffs,[1] the Adams Golf

Defendants, and the Underwriter Defendants, dated as of December 9, 2009, a copy of which is

annexed to the Motion as Exhibit 1, and (ii) for a limited modification of the automatic stay

provided for under section 362(a) of title 11 of the United States Code (the "Bankruptcy Code")

to allow the District Court to consider LBHI's and LBI's participation in the Settlement

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

Agreement, and to enter an order in respect of a request by the Parties for approval of the

Settlement Agreement, all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in

accordance with the procedures set forth in the amended order entered in the Chapter 11 Cases

on February 13, 2009 governing case management and administrative procedures [Docket No.

2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for

the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission;

(iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; and (vi) all parties who have requested notice in these chapter 11 cases; and due and

proper notice of the Motion having been provided in accordance with the order entered in the

SIPA Proceeding implementing certain notice and case management procedures and other

related relief [Docket No. 240]; and it appearing that no other or further notice need be provided;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of LBHI and LBI, their estates and creditors, and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement Agreement is

approved; and it is further

ORDERED that LBHI and the SIPA Trustee are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is hereby modified, solely to allow the District Court to consider LBHI's and LBI's participation in the Settlement Agreement, and to enter an order in respect of a request by the Parties for approval of the Settlement Agreement; *provided*, *however*, that except as provided in the foregoing sentence all other provisions of the automatic stay, including, without limitation, those provisions prohibiting any act to collect, assess, or recover a claim that arose before the commencement of LBHI's chapter 11 case and/or the SIPA Proceeding or from LBHI's, the Debtors', or LBI's estates and/or assets or property of LBHI, the Debtors, or LBI (as defined in section 541 of the Bankruptcy Code) shall remain in full force and effect; and it is further

ORDERED that upon the Effective Date of the Settlement Agreement, any Proofs of Claim identified by LBHI, the SIPA Trustee on behalf of LBI, or any other applicable Debtor, including, but not limited to those listed on Schedule 1 annexed to the Settlement Agreement, that have been or may be filed in the Chapter 11 Cases and/or in the SIPA Proceeding by a member of the Class Plaintiffs (as defined in the Settlement Agreement) seeking damages arising from or relating to the claims resolved by the Settlement Agreement will be deemed disallowed and expunged from the applicable claims register to the extent the holder of such claim has not opted out of the Class Plaintiffs (the "Claim Disallowance"); and it is further

3

ORDERED that such Claim Disallowance shall occur upon notice by LBHI, the

SIPA Trustee on behalf of LBI, or any other applicable Debtor to their respective claims agent;

and it is further

ORDERED that the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) is

waived and this Order shall be effective immediately upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.


Dated: January __, 2010
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE