Hearing Date: January 21, 2010, at 2:00 p.m.  (Prevailing Eastern Time)

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814-4434
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
E-mail: sfelderstein@ffwplaw.com
Steven H. Felderstein, Esq.
Holly A. Estioko, Esq.

Attorneys for Creditor California Public
Employees' Retirement System

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**LEHMAN BROTHERS HOLDINGS, INC.,** **et al.,**<br><br>　　　　　　　**Debtors.** | **Case No. 08-13555 (JMP)**<br>**Chapter 11**<br><br>**(Jointly Administered)** |

**REPLY TO DEBTORS' OBJECTION TO THE MOTION OF
CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM
FOR AN ORDER PURSUANT TO 11 U.S.C. §§362 AND 553
FOR RELIEF FROM THE AUTOMATIC STAY TO EFFECT SETOFF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

　　　　The California Public Employees' Retirement System ("CalPERS"), a creditor in the above-captioned case, by its undersigned counsel, Felderstein Fitzgerald Willoughby & Pascuzzi LLP, hereby files its Reply to the Debtors' Objection (the "Objection") to the Motion of California Public Employees' Retirement System for an Order Pursuant to 11 U.S.C. §§362 and 553 for Relief from the Automatic Stay to Effect Setoff (the "Motion"), and respectfully represents as follows:

**ARGUMENT IN REPLY**

　　A.　**The Factors Enumerated in *In re Sonnax* are Largely Inapplicable to the Present Motion for Relief From Stay to Effect Setoff.**

-1-

1.      Debtors argue that because CalPERS did not analyze the factors discussed in *In re Sonnax*[1], its Motion must fail.  See Objection at ¶ 21.  This is simply incorrect.  The *Sonnax* court indicated that those factors were to be weighed in determining the relief from stay issue involving the question of "*whether litigation should be permitted to continue in another forum*," *Sonnax*, 907 F.2d at 1286 (italics added), which is not the issue here.  Indeed, the *Sonnax* court acknowledged that "neither the statute nor the legislative history defines the term 'for cause'" (pertaining to relief from the automatic stay), and that the "facts of each request will determine whether relief is appropriate under the circumstances."  *Id.* at 1285-86.

2.      Debtors cite no published cases supporting their assertion that the *Sonnax* factors must be discussed in a motion for relief to effect setoff.  Instead, Debtors rely on unpublished cases such as *In re Bousa, Inc.*, 2005 U.S. Dist. LEXIS 11812.  In their Objection, Debtors twice state that this case was remanded "for failure to address the *Sonnax* factors in motion to effect setoff."  See Objection at ¶ 21 and fn 8.  A review of the case, however, reveals that the case was remanded because "[t]he Bankruptcy Court did not clearly identify any findings of fact or conclusions of law in denying the Government's motions" and "this Court simply has nothing to review and must vacate and remand for further findings."  *Bousa* at *8 and *12.  Although the *Bousa* court did state in its discussion that it was "unclear whether that court considered any of the *Sonnax* factors," *Bousa* at *12, there was no mention whatsoever of the movants' pleadings and whether such factors had been discussed therein.  Therefore, to the extent that the Debtors may be implying that the case was remanded due to a defect in the pleadings, that implication is not supported by the opinion.

3.      Debtors also rely on the unpublished *In re Bousa* case on remand, 2006 Bankr. LEXIS 2733 ("*Bousa II*").  Curiously, in that case this very Court determined that only one of the factors mentioned in *Sonnax* was even applicable to a request for relief to effect setoff - the "impact of the stay on the parties and the balance of harms."  *Bousa II* at *29.[2]

4.      Although not binding precedent, to the extent that the discussion in the *Bousa II* case may require a discussion of the impact of the stay on the parties and the balance of the harms, CalPERS asserts that such issues were addressed in its Motion.  For example, CalPERS discussed that the automatic stay prevented it from effecting a setoff that it believed was proper

---

[1] *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2nd Cir. 1990).
[2] In addition, this Court in *Bousa II* also mentioned that "[e]quity favors setoff and thus a creditor's valid setoff right should not be disallowed unless compelling circumstances require it…" *Id.* at *29-30.

[see Motion at ¶ 37]; and that if CalPERS held valid setoff rights, then it also held a secured claim in this case and yet it had received no adequate protection. See Motion at ¶¶ 39-40. CalPERS also mentioned that it had received a demand from Lehman to pay the amount due under the Master Agreement[3], and yet that if CalPERS complied with that demand, it would likely lose any rights to setoff that it held. See Motion at ¶ 41. CalPERS argued that all of these factors made the determination of CalPERS' setoff rights necessary, and that sufficient cause existed to grant relief from stay. See Motion at ¶ 42.

5.   CalPERS also discussed the impact on the parties of the proposed setoff, including that the amount that CalPERS sought to offset was relatively small ($17 million) compared to the total debt owed to CalPERS by Debtors ($430 million) - or, just 3.9% of CalPERS' total claim amount. See Motion at ¶ 35.

6.   In addition, as already discussed in CalPERS' Motion, courts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of "cause" for relief from the automatic stay under § 362(d)(1). *U.S. v. Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008); *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Penn. 2000); *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991). See Motion at ¶ 38.

**B.   The Master Agreement Provides that CalPERS May Exercise Any and All Rights of Setoff Available to It, Whether Pursuant to the Terms of the Master Agreement, or "By Operation of Law, Contract, or Otherwise."**

7.   Debtors next spend three paragraphs attempting to argue that the rights of setoff available to CalPERS under the Master Agreement were somehow limited by the Schedule to the Master Agreement (the "Schedule"), and therefore that setoff is not proper. See Objection at ¶¶ 24-26.

8.   As Debtors eventually acknowledge, however, the specific setoff rights provided for in the Schedule were to be "*without prejudice and in addition to any right of set-off otherwise available to a party (whether by operation of law, contract, or otherwise)*." See Objection at ¶ 27; see Schedule, Exhibit A to Objection, at Part 1(10) (italics added). Therefore, CalPERS' setoff rights are not limited by either the Master Agreement or the Schedule.

///

---

[3] Unless otherwise noted, all capitalized terms shall have the same meaning set forth in the

  **C. Mutuality is Established through *Bloor v. Shapiro*, *LaBonne* and the Express Language in the Guarantee.**

  9. As discussed in its Motion, CalPERS believes that the mutuality requirement for setoff can be satisfied under the *Bloor v. Shapiro* analysis. 32 B.R. 993 (Distr. Ct. S.D.N.Y. 1983). In *Bloor v. Shapiro*, guarantors asserted setoff claims related to the breach of certain contracts that they had personally guaranteed. The opposing party argued that the guarantors did not have standing to assert the claims of setoff because they were not parties to the contracts, and specifically asserted that setoff could not occur because of lack of mutuality. The court, however, disagreed, holding that the guarantors could assert the setoff claims because of their status as guarantors to the contracts. *Bloor v. Shapiro*, 32 B.R. at 1001-1002.

  10. Part of the *Bloor v. Shapiro* court's analysis included an explanation that, "A guarantor may assert the claims of the principal with the principal's consent." *Id.* at 1001. And also that, "Where the guarantor controls the principal, consent will be presumed." *Id*.

  11. In its Motion, CalPERS reasoned that the mutuality requirement was met because here, as in the *Bloor v. Shapiro* case, the guarantor Lehman Brothers Holdings, Inc. ("LBHI") could assert the claims of Lehman Brothers Special Financing ("LBSF"), its wholly-owned subsidiary, under the consent theory discussed in *Bloor v. Shapiro*. See Motion at ¶¶ 29-32.

  **1. LBSF Gave Its Consent to LBHI to Assert Its Claims.**

  12. The Debtors in their Objection argue that such "implied" consent could not be given to LBHI to assert the claims of LBSF due to the fact that LBSF was in bankruptcy, and therefore that the Motion must fail. See Objection at ¶¶ 43-44.

  13. CalPERS contends, however, that consent to assert claims already had been given by LBSF to LBHI prior to the bankruptcy, and in addition, that the express language of the Guarantee allows LBHI to exercise the rights of LBSF with respect to obligations arising under the Master Agreement. Pursuant to the Guarantee at section (c), the Guarantor agrees that its obligations under the Guarantee are unconditional, provided however, that the Guarantor was entitled: (1) "to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement;" or, (2) "*to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to*

---

Motion.

-4-

*Party A under the Agreement.*" See Guarantee, Exhibit B to Objection, at (c) (italics added).[4]

14. This language clearly establishes that LBSF had agreed *at the time of the Guarantee* to allow LBHI to exercise rights that it held under the Master Agreement (including but not limited to the right to setoff, counterclaim or withhold payment) as a condition to LBHI's agreement that it would be unconditionally liable as LBSF's Guarantor. Had LBSF not so agreed, presumably the Guarantee language as stated would have been rejected by LBSF, and LBSF either would have revised that language or found another guarantor for the Master Agreement.

15. The fact that LBSF later filed a bankruptcy case does not change the fact that LBSF gave LBHI the right to assert its claims at the time the Guarantee, or that the Guarantee specifically gives LBHI the right to assert LBSF's claims.

**2. The Existence of a Guarantee Can Establish Mutuality.**

16. Debtors cite in their Objection two cases for the proposition that mutuality cannot be established through the existence of a guarantee, *In re Ingersoll* ("*Ingersoll*") and *Buchanan v. Kerr-McGee Energy Serv. Corp. (In re GPR Holdings, L.L.C.)* ("*GPR Holdings*"),[5] and assert that this Court should follow those cases. See Objection at ¶ 37-40. In fact, the Debtors apparently fault CalPERS for "ignoring the foregoing authority" (i.e., *Ingersoll* and *GPR Holdings*) and instead relying on *Bloor v. Shapiro* for its analysis. See Objection at ¶ 41.

17. In response, CalPERS first points out that neither the *Ingersoll* nor the *GPR Holdings* cases is controlling precedent in the Second Circuit. The *Ingersoll* decision is from a bankruptcy court in North Carolina, and the *GPR Holdings* case is an <u>unpublished</u> decision from a bankruptcy court in Texas.

18. *Bloor v. Shapiro*, by contrast, is a published decision of the U. S. District Court of the Southern District of New York. Therefore, the *Bloor v. Shapiro* decision is the proper decision upon which to analyze the issue at hand. As discussed above, the *Bloor v. Shapiro* court held that mutuality could be satisfied based upon the existence of the guarantee, and allowed the requested setoff.

---

[4] An "Event of Default" under the Master Agreement includes, *inter alia*, the "[f]ailure by the party to make, when due, any payment under this Agreement…if such failure is not remedied on or before the third Local Business Day after notice of such failure is given to the party." See Master Agreement, Exhibit B to Motion, at Section 5(a)(i) and Section 14 "Definitions."
[5] *In re Ingersoll*, 90 B.R. 168 (Bankr. W.D.N.C. 1987); *Buchanan v. Kerr-McGee Energy Serv. Corp. (In re GPR Holdings, L.L.C.)*, No. 01-36736, 2004 WL 3007080 (Bankr. N.D. Tex. 2004).

19. In addition, another Second Circuit case, *In re LaBonne*, 64 B.R. 483 (Bankr. D. Conn. 1986) ("*LaBonne*"), supports the proposition that mutuality may be found, and setoff allowed, where there are seemingly non-mutual debts between a guarantor, the guarantor's principal, and a creditor. In *LaBonne*, a guarantor sought to setoff a debt that it owed to a debtor's estate against an amount that the debtor owed to the guarantor's principal (and wholly-owned subsidiary). The bankruptcy court, relying in part on the consent theory discussed in *Shapiro*, held that the setoff was proper and allowed the setoff. *LaBonne*, 64 B.R. at 486.

20. To the extent that *Ingersoll* and *GPR Holdings* conflict with *Bloor v. Shapiro* and/or *LaBonne*, this Court should reject those cases and instead should follow *Bloor v. Shapiro* and *LaBonne*.

### 3. *Bloor v. Shapiro* is Applicable.

21. The Debtors argue that *Bloor v. Shapiro* is inapplicable to the circumstances of the present case based upon factual differences between the *Bloor v. Shapiro* case and this one. See, *i.e.*, Objection at ¶¶ 46-48. They argue, for example, that there must be liability under the guarantee in order for *Bloor v. Shapiro* to apply, and that only claims related to the guarantee may be offset.

22. It is true that in the case of *Bloor v. Shapiro* the guarantee had been triggered; indeed, it was the guarantor who was seeking to offset amounts allegedly owed under the guarantee. 32 B.R. at 1001. Yet, the *Bloor v. Shapiro* court did not state in its decision that an offset could occur *only* if there was liability under the guarantee; nor did it state that only claims specifically related to the guarantee could be offset.

23. In *Bloor v. Shapiro*, the guarantor sought to setoff, against any debt owed under the guarantee, two types of claims: claims arising for breach of the underlying contracts (the principals' claims) and a claim that was unrelated to the underlying contracts (a claim that the guarantor held based upon the allegedly tortious conduct of the trustee of the bankruptcy estate). *Id.* at 997, 998. The trustee sought summary judgment as to this claim (to either dismiss it or for judgment in its favor), which request was denied by the court. *Id.* at 1003. Had the court believed that the guarantor had no right to setoff this claim, it surely would have so stated (and presumably would have granted summary judgment to the trustee).

24. In addition, to the extent that the Debtors argue that claims are not held in the same capacity under a guarantee situation, and therefore that mutuality cannot be established, see Objection at ¶¶ 49-50, *Bloor v. Shapiro* (and *LaBonne*) stand for just the opposite. As

stated above, the courts in both of these cases found mutuality existed, despite the fact that the guarantors asserted claims in their capacities as guarantors.

25. In *Bloor v. Shapiro*, the court reasoned that, "If the guarantee agreements entitled the [guarantors] to assert the [principals'] claims, which were closely related to the guarantees, then the trustee's liability under such claims would be debts owed to the [guarantors], to the extent of the [guarantor's] liability under the guarantees. Such claims could thus be asserted by the [guarantors] as set-offs." *Id.* at 1002.

### D. The Mutuality Requirement Has Been Relaxed in the Second Circuit to Prevent Injustice.

26. As discussed in CalPERS' Motion, courts in the Southern District of New York and the Second Circuit have frequently stated that the mutuality requirement for setoff can be relaxed upon equitable principles, or, "in order to prevent injustice." See *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 109 B.R. 605, 607 (Dist. Ct. S.D.N.Y. 1989) ("Defendant correctly notes that the federal and New York state courts have held that the mutuality rule is relaxed when necessary to prevent injustice" and "a court of equity will deviate from the strict rule of mutuality, allowing a set-off [where] the justice of the particular case requires it, and . . . injustice would result from refusing it . . . .") (citing *Gray v. Rollo*, 85 U.S. (18 Wall.) 629, 633 (1873));[6] *Beecher v. Vogt Manufacturing Co.*, 227 N.Y. 468, 473 (1920) (lack of mutuality may be excused to prevent injustice); *In re LaBonne*, 64 B.R. 483, 486 (Bankr. D. Conn. 1986) ("Even without a presumption of consent, equitable principles would entitle IMC to setoff the LJM debt."); *In re Sherman Plastering Corp.*, 346 F.2d 492, 494 (2nd Cir. 1965) (allowing setoff despite absence of mutuality).

27. In the event that the Court finds that strict mutuality is not met here under the *Bloor v. Shapiro* analysis, CalPERS requests the Court to relax the mutuality requirement and allow the setoff requested in the Motion, for the reasons set forth in the Motion at ¶¶ 34-35, as well as those discussed below.

### E. The Possibility of Substantive Consolidation is a Relevant Consideration.

---

[6] Debtors correctly note in their Objection that this case was later reversed at *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 936 F.2d 640 (2nd Cir. 1991); nevertheless, even the reversing court acknowledged the general principle that there is an "exception to the strict mutuality rule where an injustice would be caused by disallowing a setoff," 936 F.2d at 648, which was the very principle for which CalPERS cited the *Modern Settings* case in its Motion. See Motion at ¶ 33.

28. The Debtors argue in their Objection that if the Court allowed the CalPERS setoff, such a setoff would be unfairly prejudicial to the creditors of LBSF's estate because the setoff "would, in effect, use assets of LBSF's estate to pay alleged obligations of LBHI." See Objection at ¶¶ 53-54.

29. In response, CalPERS notes that the Debtors have indicated in their "State of the Estate" Report dated November 18, 2009 (the "Report"), as well as in their oral presentation to the Court on the same date, that the possibility of substantive consolidation of these jointly administered cases is a real issue that is being seriously considered. At page 39 of the Report, the Debtors state that the issue of substantive consolidation is being "intensively studied," and also that they expect to provide to the Court an outline for a Plan of Reorganization by end of the first quarter in 2010. See Report, Exhibit A, attached hereto.

30. CalPERS does not here argue for substantive consolidation, nor does it assert that it has standing to do so. Nevertheless, CalPERS asserts that the very real possibility of substantive consolidation of these cases should be considered by the Court as an equitable factor in deciding whether to relax the mutuality requirement (if the Court ultimately determines that mutuality does not exist currently) and grant CalPERS' Motion.

31. If there is a substantive consolidation of the cases, the reality is that a claim will exist against CalPERS by the consolidated estate, without distinction as to which entity originally asserted it, and likewise a claim will exist by CalPERS against the consolidated estate, without distinction as to which entity originally owed CalPERS. The concern that 'assets of LBSF's estate might be used to pay creditors of LBHI' would no longer be relevant as a practical matter.

32. In addition, the issue of substantive consolidation is relevant to CalPERS' Motion because if the cases are substantively consolidated, there is a greater likelihood that its request to setoff would be allowed. CalPERS acknowledges that the right to such a setoff would not necessarily be automatic. As the court in *In re Wade Cook Financial Corporation* explained, "Whether the pooling of assets through substantive consolidation allows a creditor to set off the debt of one of the consolidated debtors against the pool of assets containing assets of another consolidated debtor is an open question." 375 B.R. 580, 600 fn. 23 (9th Cir. BAP 2007). Nevertheless, if the assets of all the Lehman entities are pooled, and all the claims against such assets are pooled, allowing CalPERS' setoff certainly would make sense.

33. It would be wholly unfair if the Court was to decide now that no setoff right

existed with respect to CalPERS, and then within a few months' time (following a substantive consolidation) allow the setoffs of other creditors' debts and claims due to the consolidation.

34. Therefore, because the issue of substantive consolidation may be decided within a relatively short period of time, and if the Court is not presently inclined to grant CalPERS' Motion based upon the facts as they currently stand, CalPERS believes the Court should either: (1) adjourn the hearing on this Motion until the matter of substantive consolidation is determined; or (2) allow CalPERS to withdraw its Motion without prejudice to re-file a similar motion once the issue of substantive consolidation has been determined. Fed. R. Bankr. P. 7041 and 9014(c); Fed. R. Civ. P. 41(a)(2).

### F.    CalPERS is Entitled to An Award of Attorneys' Fees.

35. Debtors argue that there is no basis for CalPERS' request for attorneys' fees, and that the Master Agreement "only" provides for the recovery of reasonable out-of-pocket expenses incurred by the party in connection with the "enforcement and protection of its rights under th[e] [Master Agreement]." See Objection at ¶ 56. Curiously, Debtors completely ignore the remainder of the sentence they quote, including the part stating "*or by reason of the early termination of any Transaction, including, but not limited to, costs of collection.*" See Master Agreement, Exhibit B to Motion, at Section 11.

36. Therefore, there are at least two bases for which CalPERS could recover attorneys' fees under the Master Agreement: (1) actions taken to enforce and protect its rights under the Master Agreement; and (2) actions taken by reason of the early termination. CalPERS contends that it is proper to award attorneys' fees upon either basis.

37. By its Motion, CalPERS is indeed seeking to enforce and protect its rights under the Master Agreement, including, but not limited to, its general rights upon an Event of Default and Early Termination as set forth in Sections 5 and 11, and its setoff rights as set forth in Section 6(e) and Section 14 of the Master Agreement, as well as any and all setoff rights in Section 6(f) of the Schedule.

38. In addition, CalPERS is entitled to recover its expenses arising by reason of the Early Termination of all outstanding transactions under the Master Agreement. CalPERS notes that such expenses may include, *but are not limited to*, costs of collection. Therefore, the Master Agreement expressly contemplates and allows the reimbursement of other types of expenses arising by reason of the Early Termination.

39. Debtors next argue that CalPERS should not recover attorneys' fees because

Section 11 is an "unenforceable ipso facto clause" under 11 U.S.C. § 365(e). See Objection at ¶ 57. Pursuant to 11 U.S.C. § 560, however, "The exercise of any contractual right of any swap participant … to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition specified in section 365(e)(1) of this title … shall not be stayed, avoided or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title." Pursuant to section 560, CalPERS terminated the swap agreements, and now seeks reimbursement of its expenses related to such termination. Therefore, CalPERS contends that Section 11 of the Master Agreement is enforceable. In addition, CalPERS contends that seeking reimbursement of expenses under Section 11 is not an attempt to "modify" the Debtors' contractual obligations, only to enforce them.

### G. There is No Basis Upon Which to Award Attorneys' Fees to Debtors' Counsel.

40. In their Objection, Debtors assert the right to recover attorneys' fees from CalPERS. Yet, Debtors cite absolutely no authority to establish that they have the right to recover such fees. Federal courts generally follow the "American Rule" regarding attorneys' fees, *i.e.*, that each party bears its own costs of litigation, unless such fees are provided for by contract or by statute. *Travelers Casualty & Surety Company of America v. Pacific Gas and Electric Company*, 549 U.S. 443, 448 (2007).

41. Here, Debtors cannot possibly argue the right to attorneys' fees under the Master Agreement. As the Debtors acknowledge, the Master Agreement specifically imposes indemnity obligations only on the "Defaulting Party." See Objection at ¶ 57. It is indisputable that LBSF was the Defaulting Party, not CalPERS, and therefore the Debtors cannot assert a right under the Master Agreement to attorneys' fees (or any other expense).

42. In addition, Debtors have cited no statutory authority that would entitle the Debtors to recover attorneys' fees. Therefore, the Debtors have not shown any right to recover fees, and their request should be denied.

### CONCLUSION

WHEREFORE, based upon all of the foregoing, CalPERS moves the Court for an order:

(1) Granting relief from the automatic stay to allow CalPERS to effect setoff of the CalPERS Debt of approximately $17.1 million (plus accrued interest, if any)[7] in partial satisfaction of the CalPERS Claim of approximately $433 million;

---

[7] Exact amount still to be determined by the parties.

     (2)     Or, in the alternative, (a) adjourning the hearing on this matter until the issue of substantive consolidation is determined or (b) allowing CalPERS to withdraw its Motion without prejudice to re-filing a similar motion once the issue of substantive consolidation is determined by this Court;

     (3)     Awarding any attorneys' fees to which CalPERS may be entitled under the Master Agreement, according to proof;

     (4)     Denying the Debtors' request for attorneys' fees; and

     (5)     For such other and further relief as the Court deems just and proper.

Dated:  December 23, 2009

                          */s/ Steven H. Felderstein*
                          Steven H. Felderstein
                          FELDERSTEIN FITZGERALD
                          WILLOUGHBY & PASCUZZI LLP
                          400 Capitol Mall, Suite 1450
                          Sacramento, CA 95814-4434
                          Telephone: (916) 329-7400
                          Facsimile: (916) 329-7435
                          E-mail: sfelderstein@ffwplaw.com
                          Attorneys for Creditor California Public
                          Employees' Retirement System