WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
**In re**                                              :  **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :  **08-13555 (JMP)**
:
Debtors.                    :  **(Jointly Administered)**
:
------------------------------------------------------------------x

**NOTICE OF LEHMAN BROTHERS SPECIAL FINANCING INC.'S
MOTION TO STRIKE CAPITAL AUTOMOTIVE L.P.'S
OBJECTION TO DEBTORS' MOTION TO COMPEL PERFORMANCE**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Special Financing Inc. ("LBSF" and, together with Lehman Brothers Holdings Inc. and its affiliated debtors in the above referenced chapter 11 cases, the "Debtors") to Strike Capital Automotive L.P.'s Objection to Debtors' Motion to Compel Performance, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 13, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard W. Slack, Esq. and Robert J. Lemons, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Wilbur F. Foster, Jr., Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) Capital Automotive, L.P., c/o Capital Automotive REIT, 8270 Greensboro Drive, Suite 950, McLean, VA 22102, Attn: James Kahler, and (vi) Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174, Attn: Andrew B. Eckstein, Esq. and Rocco A. Cavaliere, Esq., and Blank Rome LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998, Attn: Thomas E. Biron, Esq., so as to be so filed and received by no later than **January 6, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 23, 2009
      New York, New York

/s/ Robert J. Lemons
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor and
Debtor In Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
-------------------------------------------------------------------x

**LEHMAN BROTHERS SPECIAL FINANCING INC.'S**
**MOTION TO STRIKE CAPITAL AUTOMOTIVE L.P.'S**
**OBJECTION TO DEBTORS' MOTION TO COMPEL PERFORMANCE**

Defendant Lehman Brothers Special Financing Inc. ("LBSF") files this Motion to Strike Capital Automotive L.P.'s Objection (the "Objection") to Debtors' Motion, Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code, to Compel Performance of Obligations Under an Interest Rate Swap Agreement (the "Motion to Compel"), and respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. In its Objection, Capital Automotive L.P. ("Capital Auto") has flagrantly breached its contractual obligations to LBSF and intentionally revealed settlement communications that Capital Auto had specifically agreed not to introduce into evidence for any purpose. Contractual obligations to keep settlement and other communications confidential and not use such communications for any purpose cannot be ignored when it would be convenient to do so. Accordingly, LBSF requests that the Court enter an order striking certain sections of the Objection (specifically, sections II.C.2, III.C, and IV) and the Strassel and Rosenfield Declarations attached to it from the evidentiary record.

## II. FACTUAL BACKGROUND

2. On December 5, 2008, Capital Auto and LBSF entered into a Negotiation Agreement[1] that governed discussions and negotiations concerning the parties' respective obligations under the parties' Interest Rate Swap Agreement dated as of February 2, 2006. The Negotiation Agreement in two separate places expressly precludes Capital Automotive from using and disclosing settlement communications for any purpose in any judicial proceeding. The Negotiation Agreement unambiguously states that: "It is understood that the Negotiations and any Communications (as hereinafter defined) shall be made with a view toward compromise and settlement, and that all such Negotiations and Communications shall be protected accordingly and *shall not be admissible as evidence on any issue that is or may be before any court or administrative body, including without limitation, as proof of admission or liability or for other evidentiary*

---

[1] The Negotiation Agreement is attached hereto as Exhibit A and was attached as Exhibit A2 to the Objection.

*purposes*." (Negotiation Agreement at 1 (emphasis added).) The Negotiation Agreement further states that "[t]he parties agree that all Communications shall be considered 'compromise negotiations' pursuant to Federal Rules of Evidence 408 . . . and that *no such Communications shall ever be admissible for any other purpose such as to prove bias, intent, prejudice, interest of a witness or a party, negating a contention of undue delay, or for any other purpose*." (*Id.* at 2 (emphasis added).)

3. "Communications" is defined in the Negotiation Agreement as "correspondence, statements, discussions, negotiations, meetings, drafts of documents (including, without limitation, unexecuted drafts of this document) and telephone communications among the parties or their respective attorneys, agents and representatives with respect to the SWAP Agreement or Negotiations . . . ." (*Id.*)

4. On November 30, 2009, Capital Auto filed its Objection to the Motion to Compel and attached declarations in support of the Objection. The Objection contains repeated references to Communications that the parties specifically agreed through the Negotiation Agreement would not be introduced into evidence for any purpose. Specifically, Capital Auto's argument sections II.C.2, III.C, and IV all are based entirely upon alleged communications and other actions by LBSF surrounding potential settlement negotiations in the period after the Negotiation Agreement was entered. For instance, on pages 24-25 of the Objection, Capital Auto details alleged settlement communications between the parties and quotes verbatim from emails sent between the parties after the Negotiation Agreement was entered. Indeed, Capital Auto's argument

that the Interest Rate Swap Agreement was effectively terminated on December 5, 2008[2] is premised solely on Communications that the parties specifically agreed not to admit into evidence. (*See, e.g.*, Obj. at 24-27.) Similarly, on page 10 of the Objection, Capital Auto claims that LBSF engaged in "conduct in lulling [Capital Auto] into believing that the Swap Agreement had been effectively terminated as of December 5, 2008," and claims that it needs further discovery regarding LBSF's conduct after the Negotiation Agreement was entered. Moreover, Capital Auto actually attaches certain confidential Communications to the Objection. More specifically, in support of the Objection, Capital Auto filed Declarations from Roger J. Stattel and Dennis Rosenfield, both of which are replete with references to Communications as defined in the Negotiation Agreement.

### III.   ARGUMENT AND AUTHORITIES

5.   When a party relies on evidence that the party specifically agreed would never be introduced into evidence, the appropriate remedy is to strike the evidence from the record. *See, e.g., Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 407 F. Supp. 2d 401, 403-04 (D. Conn. 2006); *Eastman Kodak Co. v. Sun Microsystems, Inc.*, No. 02-CV-6074T, 2004 U.S. Dist LEXIS 18244, at *4-5 (W.D.N.Y. September 13, 2004). For instance, in *Victor G. Reiling Assocs*, the parties entered into an agreement providing that settlement communications were "confidential, not subject

---

[2] Any argument that the Interest Rate Swap Agreement was effectively terminated as of December 5, 2008 is belied by the plain terms of the Negotiation Agreement, which provides that the parties entered into the Negotiation Agreement "with the goal of engaging in Negotiations or Communications in an open, frank and direct manner without risk of exposure to liability as a result thereof and in order to avoid any claim or allegation that the Swap Agreement or any Obligations arising thereunder have been modified, amended waived, released or altered in any manner whatsoever by reason of the Negotiations or any Communications." (Negotiation Agreement at 1.)

to discovery, [and] inadmissible." *Id.* When one of the parties sought to introduce evidence of the settlement negotiations, the district court struck the evidence. *See id.* The Court stated that "in light of the strong public policy favoring settlements . . . and encouraging uninhibited settlement negotiations, the parties' confidentiality agreement will be enforced." *Id.*

6. The Court should similarly strike sections II.C.2, III.C, and IV of the Objection and the Stattel and Rosenfield Declarations. The parties entered into the Negotiation Agreement in order to conduct open and unrestricted settlement negotiations in the hopes of achieving a consensual resolution. Capital Auto cannot now seek to use such settlement communications in objecting to the Motion to Compel. Indeed, if Capital Auto were permitted to rely on such evidence in contravention of its agreement to the contrary, the ability of the Debtors to negotiate with hundreds of other counterparties, some of whom engage in communications with the Debtors pursuant to similar agreements and understandings, would be diminished. If parties can introduce confidential communications that they specifically agreed to keep private without repercussion, the Debtors will be unable to openly communicate and exchange information with counterparties, which will result in fewer settlements and a consequent drain on the Court's and the Debtors' estates' resources. That would be contrary to the clear terms of the Negotiation Agreement and the strong public policy in promoting settlements. Accordingly, the Court should enforce the terms of the parties' agreement and grant the Motion.

7. Finally, Capital Auto has argued that it was permitted to disclose the settlement communications based on a clause in the Negotiation Agreement that

provides: "Communications shall not include any action, communication or statements made by a party in connection with a party's enforcement of its rights and remedies under the Swap Agreement ('Enforcement Actions') or this letter." (Negotiation Agreement at 2.) Capital Auto's reliance on this provision is misguided. By its plain terms, this provision allows the parties to admit into evidence communications and other actions taken to enforce the terms of the Interest Rate Swap Agreement. For instance, the parties could send a termination notice and would not be precluded from seeking to admit that notice into evidence at a later hearing. This provision, however, cannot be read to permit Capital Auto to admit into evidence settlement discussions, which are, by their very nature, not actions or communications to enforce the Interest Rate Swap Agreement. Indeed, if Capital Auto could admit into evidence such settlement discussions, then it would eliminate the purpose of the Negotiation Agreement and nothing would be an inadmissible Communication under the Negotiation Agreement. This Court should construe the Negotiation Agreement consistent with its clear purpose and strike from the record all Communications relied upon by Capital Auto in its Objection.

## IV. CONCLUSION AND REQUESTED RELIEF

8. For the foregoing reasons, LBSF respectfully requests that the Court strike sections II.C.2, III.C, and IV of the Objection and the Strassel and Rosenfield Declarations. LBSF further requests any other relief to which it is entitled and this Court deems appropriate.

Dated: December 23, 2009
      New York, New York

/s/ Robert J. Lemons
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor and
Debtor In Possession

Exhibit A

December 5, 2008

## NEGOTIATION AGREEMENT

Re: ISDA Master Agreement dated as of February 2, 2006 between Lehman Brothers Financing, Inc. and Capital Automotive, L.P. (the "SWAP Agreement")
Confirmation dated December 15, 2005 – Risk ID: 1089413L/Effort ID:N799808/Global Deal ID:2344708
Confirmation dated December 15, 2005 – Risk ID: 1089355L/Effort ID:N799747/Global Deal ID:2344704
Confirmation dated December 19, 2005 – Risk ID: 1089403L/Effort ID:N799806/Global Deal ID: 2344709

Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing, Inc., (collectively "Lehman") and Capital Automotive Real Estate Services, Inc., for and on behalf of Capital Automotive L.P. ("CARS") have participated in or are about to participate in discussions and negotiations (the "Negotiations") concerning their respective obligations ("Obligations") to one another under or related to the SWAP Agreement and its assumption, sale and/or termination.

No party shall have any obligation, however, either to commence any such Negotiations or, once and if commenced, to continue with such Negotiations, and any party, in such party's sole and absolute discretion, may terminate the Negotiations at any time and for any reason or no reason, with or without cause or notice. It is understood that the Negotiations and any Communications (as hereinafter defined) shall be made with a view toward compromise and settlement, and that all such Negotiations and Communications shall be protected accordingly and shall not be admissible as evidence on any issue that is or may be before any court or administrative body, including, without limitation, as proof of admissions of liability or for other evidentiary purposes. Notwithstanding the foregoing, the parties acknowledge and agree that the parties intend to be bound by the terms of this letter and this letter shall be admissible in any legal, judicial, administrative or other proceeding in connection with any action and proceeding to enforce its terms.

The parties acknowledge and agree that no amendment, modification, compromise, settlement, agreement or understanding with respect to the SWAP Agreement or any Obligations arising thereunder, and no rights, claims, obligations or liabilities of any kind, either express or implied, shall arise or exist in favor of or be binding upon any party, or any other person (including, without limitation, any Guarantor) as a result of the Negotiations or Communications, except to the extent (if any) expressly set out in a written agreement executed and delivered by authorized representatives of all stated parties thereto which expressly states the intent of the parties to be bound thereby and, if required, has been approved by the United States Bankruptcy Court. Without limitation of the foregoing or any other provision of this letter, the following are not and shall not be construed as a waiver or release of any rights or remedies by the parties, as an indication of a course of dealing, or in any manner to give rise to an obligation of any of the parties or in any manner to modify the legal relationship among the parties: (a) the

124350.05004/35888741v.1

attendance by the parties or their respective attorneys and representatives at any meetings with respect to the SWAP Agreement; or (b) correspondence, statements, discussions, negotiations, meetings, drafts of documents (including, without limitation, unexecuted drafts of this document) and telephone communications among the parties or their respective attorneys, agents and representatives with respect to the SWAP Agreement or Negotiations (such correspondence, statements, discussions, negotiations, meetings, drafts of documents and telephone communications being collectively referred to herein as the "Communications"). Communications shall not include any action, communication or statements made by a party in connection with a party's enforcement of its rights and remedies under the SWAP Agreement ("Enforcement Actions") or this letter.

The parties agree that all Communications shall be considered "compromise negotiations" pursuant to Federal Rules of Evidence 408 and similar state laws and rules, and that no such Communications shall ever be admissible for any other purpose such as to prove bias, intent, prejudice, interest of a witness or a party, negating a contention of undue delay, or for any other purpose.

The parties further acknowledge that they have executed this letter with the goal of engaging in Negotiations or Communications in an open, frank and direct manner without risk of exposure to liability as a result thereof and in order to avoid any claim or allegation that the SWAP Agreement or any Obligations arising thereunder have been modified, amended, waived, released or altered in any manner whatsoever by reason of the Negotiations or any Communications.

LEHMAN BROTHERS HOLDINGS INC.  CAPITAL AUTOMOTIVE, L.P.
LEHMAN BROTHERS SPECIAL           By: Capital Automotive Real
   FINANCING, INC.                      Estate Services, Inc.

By: _____        By: _____

124550.05004/35888741v.1

# Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
In re : Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
----------------------------------------------------------------x

# ORDER GRANTING LEHMAN BROTHERS SPECIAL FINANCING INC.'S MOTION TO STRIKE CAPITAL AUTOMOTIVE L.P.'S OBJECTION TO DEBTORS' MOTION TO COMPEL PERFORMANCE

Upon the motion, dated December 23, 2009 (the "Motion") of Defendant Lehman Brothers Special Financing Inc. ("LBSF") to strike Capital Automotive L.P.'s Objection to Debtors' Motion to Compel Performance (the "Objection"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and due and proper notice having been provided; it is hereby

ORDERED that the Motion is granted and sections II.C.2, III.C, and IV of the Objection and the Strassel and Rosenfield Declarations are stricken from the evidentiary record.

Dated: January __, 2010
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE