Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x
                                                                    :
In re:                                                              :   Chapter 11 Case No.
                                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,                              :   08-13555 (JMP)
                                                                    :
                        Debtors.                                    :   (Jointly Administered)
                                                                    :
------------------------------------------------------------------- x

**STATEMENT OF OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS IN SUPPORT OF DEBTORS' MOTION**
**PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORIZATION**
**AND APPROVAL OF A SETTLEMENT AGREEMENT WITH THE INSOLVENCY**
**ADMINISTRATOR OF LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENZ)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated chapter 11 debtors, as debtors in possession (collectively, the "Debtors"), hereby files this statement (the "Statement") in support of the Debtors' motion, dated December 18, 2009 [Docket No. 6303] (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure, seeking entry of an order approving a settlement

agreement, dated December 15, 2009 (the "Agreement"), by and among (i) LBHI, Lehman ALI, Inc., and Lehman Commercial Paper Inc. (each a "Lehman Party" and collectively the "Lehman Parties"); and (ii) Dr. Michael C. Frege, in his capacity as Insolvency Administrator of Lehman Brothers Bankhaus AG (*in Insolvenz*) ("Bankhaus"), a wholly owned subsidiary of LBHI.  In support of the Motion, the Committee respectfully states as follows:

**BACKGROUND**

1. Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Petition Date"), LBHI and certain of its affiliates commenced in this Court voluntary cases under chapter 11 the Bankruptcy Code.  Lehman ALI, Inc. is not a chapter 11 debtor.

2. On September 17, 2008, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District of New York appointed the Committee.

3. On November 13, 2008, the Frankfurt Lower District Court opened an insolvency proceeding for Bankhaus and appointed Dr. Frege as Insolvency Administrator.  Under applicable German law, Dr. Frege is vested with the power to administer the assets of the Bankhaus estate and to dispose of any of the assets contained in the estate.

4. On May 22, 2009, this Court entered an order granting the relief sought in Bankhaus's chapter 15 petition for recognition of a foreign main proceeding.  See In re Lehman Brothers Bankhaus AG (*In Insolvenz*), Case No. 09-12704 [Docket No. 25].

5. Following more than six months of negotiations between the Debtors and Dr. Frege, in his capacity as Insolvency Administrator of Bankhaus, culminating in the execution of the Agreement, the Debtors filed the Motion.  By the Motion, the Debtors seek approval of the

Agreement and authorization to consummate the transactions contemplated thereby (collectively, the "Transactions").

**STATEMENT**

6. As set forth in the Motion, prior to the Petition Date, the Lehman Parties and Bankhaus entered into certain participations (the "Participations") whereby one party or one of its affiliates (the "Lender") would act as the lender of record and/or agent for certain loans (the "Loans"), and the other party or parties (the "Participant") would acquire participation interests in the Loans. Uncertainty arose as to the ownership of the Loans due to the characterization of the Participations under applicable law. In light of this legal uncertainty, the Lehman Parties have – quite reasonably – been unwilling to commit the resources to fully realize on the value of the Loans. Furthermore, pursuant to that certain Security & Collateral Agreement, dated August 15, 2002 (the "Security & Collateral Agreement"), LBHI guaranteed certain obligations under the Loans to Bankhaus. Both the Security & Collateral Agreement and the Participations left the Lehman Parties susceptible to the assertion of substantial claims by Bankhaus against their respective estates. The prospect of entering into an agreement to resolve certain of these issues through the Lehman Parties' purchase of the Loans at a discount was therefore appealing.

7. The Committee and its advisors expended considerable time and effort working with the Debtors towards a global settlement of the issues arising from the Loans and the claims flowing therefrom. The settlement, which resulted in the Agreement for which the Debtors seek approval, is the product of extensive negotiations between the Debtors and Dr. Frege, in his capacity as Insolvency Administrator of Bankhaus. The Committee closely monitored these negotiations and, by communicating its concerns to the Debtors and ensuring

3

that such concerns were addressed, had a meaningful impact on the negotiation process. Having carefully reviewed and considered the economic terms of the Transactions as well as the documentation thereof, the Committee has determined that the Agreement and the Transactions contemplated thereby are in the best interests of the Debtors' estates and well above the lowest point in the range of reasonableness. Accordingly, the Committee supports the relief requested in the Motion.

8. Prior to conducting its diligence, the Committee was dubious of the merits and propriety of the transaction envisioned by the Debtors and Dr. Frege, and therefore approached the Agreement with a fair degree of skepticism. It cannot be disputed that the transactions are extraordinary – both in terms of dollar amount and because liquidating debtors in possession are seeking authority to *acquire* assets. For these reasons, the Committee took great care to ensure that the Transactions received the highest degree of scrutiny. The Committee ultimately became comfortable with the terms of the Agreement, principally because of the favorable pricing of the Transactions and the understanding reached with the Debtors regarding the controlled sale of the purchased assets. Indeed, pursuant to the terms of the Agreement, the Lehman Parties will purchase the Loans from Bankhaus at a significant discount to their current market values.[1] Although the Agreement does not resolve all of the Debtors' disputes with Bankhaus, the Agreement reflects material progress toward that end by providing for (a) resolution of the ownership dispute with respect to the Loans; (b) the fixing of claims against the estates arising from one of the four categories of Loans and from the Security & Collateral

---

[1] In the aggregate, the Lehman Parties will pay a purchase price which, based on the schedules attached to the Agreement on the date of its execution, is calculated to equal $1,388,900,000 (subject to certain adjustments at closing) for assets that are currently valued at approximately $2,148,600,000, and have an outstanding principal balance of approximately $3,459,200,000. The asset valuations were reviewed independently by the Committee's financial advisors.

4

Agreement with respect to such Loans; and (c) a release of claims arising from the other three categories of Loans and from the Security & Collateral Agreement with respect to such Loans.

9. Despite the fact that not all issues are resolved under the Agreement, and the value of the Loans remains subject to market risk, the Committee shares the Debtors' view that entry into the Agreement represents a sound exercise of the Debtors' business judgment. The economic terms of the Transactions are favorable to the Debtors' estates, and the benefits of the Agreement to the Debtors' estates are manifest, including the resolution of the complex legal issues arising out of the disputed ownership of the Loans. As a result of the Agreement, the Lehman Parties, in consultation with the Committee, will be able to capture and maximize the inherent value of the Loans for the benefit of their respective estates and creditors. Furthermore, the reduction and fixing of claims asserted by Bankhaus against the Lehman Parties in connection with the Participations and the Security & Collateral Agreement, as provided for in the Agreement, will inure to the benefit of all unsecured creditors of the Lehman Parties' respective estates.

## **CONCLUSION**

10. For the foregoing reasons, the Committee respectfully requests that the Court grant (a) the Motion, and (b) such other relief as the Court deems just.

Dated: New York, New York
December 30, 2009

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.