IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>                       Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |
| Debtor Against which Transferred Claim Was Filed:<br><br>In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC.,<br><br>                       Debtor. | Chapter 11<br><br>Case No. 08-13555 (JMP) |

## NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives notice pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure of the transfer, other than for security, of the claim referenced herein.

Name of Transferee:
**Lehman Brothers Bankhaus AG *(in Insolvenz)***
Name and Address of where notices to transferee should be sent:
**Lehman Brothers Bankhaus, AG *(in Insolvenz)***
**c/o Felix Schaefer**
**Rechtsanwalt, CMS Hasche Sigle**
**Barckhausstr. 12-16**
**D-60325 Frankfurt am Main**
**Germany**

Name of Transferor:
**7th Avenue Inc.**
Court Record Address of Transferor
(Court use only)

Name and current address of transferor:
**7th Avenue Inc.**
**c/o HSBC Bank (Cayman) Limited**
**HSBC House**
**68 West Bay Road, P.O. Box 1109**
**Georgetown, Grand Cayman**
**Cayman Islands KY 1-1102**

Court Claim No.: 27946
Claim Amount: $1,200,000,000.00
Allowed Claim Amount: $1,200,000,000.00
Date Claim Filed: Sept. 22, 2009

I declare under penalty of perjury that the information in this notice is true and correct to the best of my knowledge.

By: _____         Date:  December 15, 2009
Transferee/Transferee's Agent
Dr. Michael Frege, Insolvency Administrator

## DEADLINE TO OBJECT TO TRANSFER

The transferor of the claim named above is advised that this notice of transfer of claim other than for security has been filed in the clerk's office of this Court as evidence of the transfer. Objections must be

filed with the Court within twenty (20) days of the mailing of this notice.  If no objection is timely received by the Court, the transferee will be substituted as the original claimant without further order of the Court.


Date:_____

_____
Clerk of the Court

Series 3 and 4

2

17660140\V-1

To: Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
Dr. Michael C. Frege as Insolvency Administrator

CMS Hasche Sigle
Barckhausstrasse 12-16
60325 Frankfurt am Main
Germany

E-mail: Michael.Frege@cms-hs.com

Copy to: HSBC Trustee (C.I.) Limited

     1 Grenville Street
     St Helier
     Jersey JE4 9PF
     Channel Islands

Email:    Ursula.v.elliott@hsbcpb.com; Ian.r.graham@hsbcpb.com

Dear Dr. Frege,

**7TH AVENUE INC.** (the **Issuer**)
**HSBC TRUSTEE (C.I) LIMITED** (the **Trustee**)
**Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746)**
(the **Notes**)

04 November 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated 29 October 2009 between the Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

The Issuer confirms that it has received the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**

By: _____

Name: Connan Hill
Title: Director



**EXECUTION COPY**

## DEED OF ASSIGNMENT

DATED 29 OCTOBER 2009

BETWEEN

**HSBC TRUSTEE (C.I.) LIMITED**

**7TH AVENUE INC.**

AND

**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN**

DEWEY & LeBOEUF

**THIS DEED OF ASSIGNMENT** dated  2.9  OCTOBER  2009

**BETWEEN:**

(1)    **HSBC TRUSTEE (C.I.) LIMITED,** as trustee in respect of the Notes (the **Trustee**);

(2)    **7TH AVENUE INC.,** as issuer of the Notes (the **Issuer**); and

(3)    **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN,** as holder of 100 percent of the aggregate outstanding principal amount of the Notes (the **Noteholder**).

**BACKGROUND**

(A)    On 8 December 2004 (the **Issue Date**), the Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746) (the **Notes**) were issued by the Issuer. The Notes were constituted and secured by a master trust deed dated 12 September 2002 (the **Master Trust Deed**) as supplemented and modified by a supplemental trust deed dated the Issue Date made between, *inter alios,* the Trustee and the Issuer (the **Supplemental Trust Deed** and, together with the Master Trust Deed, the **Trust Deed**). The Trustee and the Issuer, *inter alios,* are parties to an Agency Agreement in respect of a EUR2,500,000,000 Multi-Structure Secured Note Programme dated 12 September 2002 (the **Agency Agreement**).

(B)    The Notes are secured by way of a first ranking assignment by way of security of all the Issuer's rights, title and interest under (i) a term loan agreement (the **Loan Agreement**) dated the Issue Date between the Issuer, Lehman Brothers Special Financing Inc. (**LBSF**) and the Trustee, (ii) a security agreement between the Issuer, LBSF and the Trustee (the **Security Agreement**), the securities account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Securities Account Control Agreement**) and a deposit account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Deposit Account Control Agreement** and, together with the Security Agreement and the Securities Account Control Agreement, the **Charged Assets Security Documents**), in each case dated the Issue Date and entered into in respect of the Notes, and (iii) any sums or money, securities or other property received or receivable under the Loan Agreement and/or the Charged Assets Security Documents.

(C)    As from 3 October 2008, LBSF is the subject of a Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the **LBSF Proceedings**) and, as a result, demands of LBSF (or against its property) are subject to an automatic stay.

(D)    An event of default (a **Loan Event of Default**) has occurred pursuant to Clause 13.7 of the Loan Agreement as a result of the LBSF Proceedings. Pursuant to Clause 14.1 of the Loan Agreement, all amounts under the Loan Agreement have become immediately due and payable. The Loan Event of Default has resulted in an event of default pursuant to Clause 8.1 of the Security Agreement.

(E)    Pursuant to Condition 7(b)(i) of the Notes, if the loan made pursuant to the Loan Agreement (or part thereof) becomes due and repayable on a date prior to its stated repayment date (other than by reason of default in payment or an optional prepayment), the Issuer shall, forthwith upon becoming aware of such event, on giving notice as soon as reasonably practicable following the date upon which the

1



Issuer is to receive the repayment amount of such Charged Assets (or if applicable the redemption proceeds of enforcement of the Charged Assets Security Documents) (or such other period of notice as may be otherwise agreed with the Trustee unless the Trustee shall (at the expense of the Issuer) certify to the Issuer that it considers in its absolute discretion that it is in the best interests of the Noteholders that such notice be delayed or not given or an Extraordinary Resolution of the Noteholders shall otherwise direct) to the Trustee, the Principal Paying Agent and to the Noteholders in accordance with Condition 16, redeem the Notes at the Early Redemption Amount on expiry of such notice.

(F)     Clause 2 of the Supplemental Trust Deed provides that, upon enforcement of the security over the Charged Assets, the Trustee and the Issuer may (upon consent of the holders of all outstanding Notes) effect the assignment of the Issuer's rights in respect of LBSF's rights and obligations under the Contracts (as defined in the Schedule to the Pricing Supplement in respect of the Notes) directly to the Noteholders, subject to all relevant laws and regulations and the terms of the Contracts and, upon such assignment, the Issuer will have no further liability in respect of the Notes.

(G)     In accordance with the Trust Deed and the Conditions of the Notes, the Noteholder may direct the Trustee in writing to take certain actions in respect of the Notes and to enforce rights in respect of the Mortgaged Property relating to the Notes. The Noteholder has directed the Trustee to take such action as set out in a letter dated 27 October 2009 and has indemnified the Trustee pursuant to a deed of indemnity between the Noteholder and the Trustee dated 19 August 2009 (the **Indemnity Deed**).

(H)     It is intended that this document takes effect as a deed notwithstanding the fact that a party may only execute this document under hand.

**IT IS AGREED** as follows:

1.      **INTERPRETATION**

        Capitalised terms defined in the Trust Deed, the Supplemental Trust Deed (including the Pricing Supplement appended thereto) the Loan Agreement and the Charged Assets Security Documents have, unless expressly defined in this Deed, the same meaning in this Deed.

2.      **CONDITION PRECEDENT**

(a)     The provisions of Clause 3 below (including, for the avoidance of doubt, the Assignment) shall not be effective until the Noteholder has paid to the Issuer the sum of USD 70,000. The Issuer shall immediately confirm receipt of this payment in the form attached as Annex 1 hereto. For the avoidance of doubt, the Noteholder is required to make only one payment of USD 70,000, payment of which shall be the condition precedent for the effectiveness of both Clause 3 of this Deed and Clause 3 of the Deed of Assignment between the Issuer, the Noteholder and HSBC Corporate Trustee Company (UK) Limited in respect of the Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) issued by the Issuer on 28 August 2008.

(b)     The amount paid to the Issuer pursuant to Clause 2(a) and the amounts of USD 30,000 and USD 15,000 that were paid by the Noteholder to the Issuer in late May 2009 and early September 2009 shall be applied by the Issuer only to cover (i) the Issuer's costs and expenses in full in respect of action taken (including legal advice

2



and any applicable value added taxes) in respect of the negotiation, preparation and execution of this Deed and any related documentation, (ii) all other matters in relation thereto, and (iii) the costs of the liquidation of the Issuer in a timely manner (the **Issuer Costs**).

(c)    The Issuer shall deliver to the Noteholder (both (i) in writing to Lehman Brothers Bankhaus AG (in Insolvency), c/o Dr. Michael C. Frege as Insolvency Administrator, CMS Hasche Sigle, Barckhausstrasse 12-16, 60325 Frankfurt am Main, Germany and (ii) by email to Michael.Frege@cms-hs.com) from time to time reasonably detailed invoices or other reasonable documentary evidence (together, the **Invoices**) of the Issuer Costs. The amount (if any) of those amounts referred to in Clause 2(b) as being paid by the Noteholder to the Issuer remaining following the payment of the Issuer Costs shall promptly be repaid by the Issuer to the Noteholder.

(d)    For the avoidance of doubt, the Noteholder hereby confirms that the Pre-funding Amount (as defined in the Indemnity Deed) may be used to discharge any amounts due to the Trustee under the Indemnity Deed without the need for the Trustee or Allen & Overy LLP to seek any further consents or approvals.

3.    **ASSIGNMENT**

(a)    The Trustee and the Issuer (without representation, warranty or recourse) irrevocably and unconditionally transfer and assign all of their respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all rights and priority of the Trustee and the Issuer in the Collateral and the Trustee's and the Issuer's rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transfers and assigns all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (all assets referred to in this Clause 3(a) together, the **Assigned Assets**), in each case, to the Noteholder (the **Assignment**). The Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) the executed originals of the Loan Agreement, the Charged Assets Security Documents, the Supplemental Trust Deed and any other transaction documents (which for the avoidance of doubt, shall exclude any legal opinions) executed in connection with the transactions consummated therein (in each case, to the extent the Trustee and the Issuer are in possession of the same). If the Trustee or the Issuer are not in possession of such executed original documents, the Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) such documentation, correspondence, notes of meetings or calls or e-mails that the Trustee or the Issuer (or their legal counsel) has in its possession that the Noteholder may reasonably request in order to enforce its rights, title and interest in the Assigned Assets. For the avoidance of doubt, the Assigned Assets shall include any claims or other rights relating to the Assigned Assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of LBSF and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered) (the **Case**), pending in the United States

3

Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009 (all proofs of claim together, the **Proofs of Claim**), all agreements, instruments, account statements and other documents evidencing, or relating or referred to in, such claim(s) or the Proofs of Claim, all rights to receive payment, interest, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Trustee's or the Issuer's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

(b)    In the event either the Trustee or the Issuer receives any sums or money, securities or property or other proceeds under or relating to the Assigned Assets, whether before or after the Assignment, the Trustee or the Issuer, as the case may be, shall hold the same in trust for the sole benefit of the Noteholder and shall immediately remit such sums or money, securities or property or other proceeds to the Noteholder.

(c)    The Noteholder directs the Issuer and the Issuer hereby irrevocably and unconditionally:

(i)    releases the Trustee from all duties, obligations and liability arising following the date of this Deed to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**); and

(ii)    discharges each of the Agents (excluding the Redemption Agent and the Calculation Agent) and the Trustee from all of their duties, obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes.

(d)    Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and the Trustee shall have no further duties, obligations or liabilities arising following the date of this Deed in respect of any Transaction Document (including, without limitation, the Loan Agreement and the Charged Assets Security Documents), and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

(e)    To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer hereby by way of security for the performance of its obligations contained in this Deed appoints the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets hereby.

(f)    The Issuer hereby irrevocably appoints the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions relating to the Assigned Assets and (ii) generally exercise all and any of the powers,

4



authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise. The Issuer hereby revokes and the Trustee hereby agrees to the revocation of its appointment as attorney of the Issuer pursuant to Clause 8(M) of the Trust Deed.

(g)  Notwithstanding the Assignment, the limitation on recourse to the Issuer in respect of the Notes set forth in Condition 3(f)(C) shall remain in full force and effect, and the Noteholder accordingly acknowledges and agrees that it shall look solely to the Assigned Assets (and any other Charged Assets and Mortgaged Property, if any) for payments to be made by the Issuer on the Notes.

(h)  The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a copy of this Deed to each of the Agents (excluding the Redemption Agent and the Calculation Agent) and inform them that they have been discharged from all of their obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes. The parties hereby agree that notwithstanding anything to the contrary in the Trust Deed, the Agency Agreement and the Conditions of the Notes, neither the Issuer nor the Trustee shall be obliged to appoint any replacement Agents.

(i)  The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a notice to LBSF and LBHI in the form attached at Annex 2 hereto informing them of the Assignment. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether LBSF and LBHI acknowledge such notice.

(j)  Subject to the Issuer and the Trustee being indemnified and secured to their satisfaction, the Issuer and the Trustee shall take all reasonable actions and execute and deliver all documents reasonably requested by the Noteholder to protect, perfect and further assure the effectiveness of the Assignment and the Noteholder's rights and remedies under this Deed or under or in respect of the Assigned Assets, including, without limitation, executing such UCC assignments or amendments as the Noteholder shall specify in respect of any UCC financing statements previously filed by the Trustee or the Issuer in respect of any Charged Assets, Contracts or other collateral.

(k)  After the Assignment has become effective, the Noteholder shall as soon as reasonably possible deliver the Notes 'free of payment' to the repurchase account at Euroclear.

4.   **LIABILITY**

Subject to the immediately succeeding paragraph of this Clause 4, upon the Assignment, the Trustee shall not have any further liability (a) in respect of the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and any other document in relation thereto and (b) any action taken, purported to be taken or omitted to be taken by the Noteholder or the Issuer under the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and/or any other document in relation thereto. Except as set forth herein, the respective rights, remedies, liabilities, obligations and duties of the Issuer and the Noteholder under the Trust Deed, the Notes, any documents related thereto and applicable law shall remain in full force and effect.

The Trustee shall, in any event, remain fully liable (i) to the fullest extent provided under the Trust Deed, the Notes, the Loan Agreement, the Charged Assets Security



Documents, any documents in relation to any of the foregoing and applicable law for all actions taken or omitted to be taken by it prior to the effective date of the Assignment, and (ii) for any breach of its agreements and obligations under or in respect of this Deed, and the Issuer shall remain fully liable to the Noteholder, in its capacity as Noteholder or as assignee of the Trustee, (i) under or in respect of the Notes, the Trust Deed, the Loan Agreement, the Charged Assets Security Documents for all obligations of the Issuer thereunder and (ii) for any breach of the Issuer's agreements and obligations under or in respect of this Deed.

The Trustee and the Issuer agree that the Noteholder's insolvency administrator, Dr. Michael C. Frege, shall not incur any personal liability in relation to this Deed.

5.    **COUNTERPARTS**

This Deed may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of the Deed.

6.    **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999**

No third party, other than, for the purposes of Clause 4, third paragraph, Dr. Michael C. Frege, shall have any rights to enforce any term or condition of this Deed under the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists or is available apart from under that Act.

7.    **GOVERNING LAW**

This Deed and any issues or disputes arising out of or in connection with it (whether such disputes are contractual or non-contractual in nature, such as claims in tort, for breach of statute or regulation or otherwise) shall be governed by and construed in accordance with English law.

8.    **ENFORCEMENT**

(a)    The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed (including a dispute relating to the existence, validity or termination of this Deed or any non-contractual obligation arising out of or in connection with this Deed).

(b)    The Issuer confirms that it has irrevocably appointed Law Debenture Corporate Services Limited (Fifth Floor, 100 Wood Street, London EC2V 7EX, United Kingdom) as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed, without prejudice to any other mode of service allowed under any relevant law. The Issuer agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

This Deed has been entered into as a deed on the date stated at the beginning of this Deed.

6



## ANNEX 1

To: Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
Dr. Michael C. Frege as Insolvency Administrator

CMS Hasche Sigle
Barckhausstrasse 12-16
60325 Frankfurt am Main
Germany

E-mail: Michael.Frege@cms-hs.com


Copy to: HSBC Trustee (C.I.) Limited

1 Grenville Street
St Helier
Jersey JE4 9PF
Channel Islands

Email:    Ursula.v.elliott@hsbcpb.com; Ian.r.graham@hsbcpb.com


Dear Dr. Frege,

### 7TH AVENUE INC. (the **Issuer**)
### HSBC TRUSTEE (C.I) LIMITED (the **Trustee**)
### Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746)
### (the **Notes**)

[      ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [      ] 2009 between the
Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of
Assignment.

The Issuer confirms that it has received the payment of USD 50,000 pursuant to Clause 2(a)
of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have
therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

7



**ANNEX 2**

**To: Lehman Brothers Special Financing, Inc.**

Lehman Brothers
Operations, FID Mid Office Admin
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212)526-2240

Attn: Seth Konheim; e-mail: skonheim@lehman.com;
Paul Puskuldjian; e-mail: ppusk@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212) 526-8140

Attn: Kaushik Amin; e-mail: kamin@lehman.com

Lehman Brothers
Derivative Trading – London
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-2444

Attn: Andrew Morton; e-mail: amorton@lehman.com

Lehman Brothers
Central Funding Unit
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-1305

Attn: John Feraca; e-mail: joferaca@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave
New York, NY, 10019

Tel: (212) 526-6697

Attn: Neville Nagarwalla; e-mail: nneville@lehman.com



Lehman Brothers Special Financing, Inc.
1271 Avenue of the Americas
40th Floor
New York, New York 10020

Attention:    Michael Ferraro; e-mail: michael.ferraro@lehman.com
              Locke R. McMurray, e-mail: locke.mcmurray@lehman.com


**To: Lehman Brothers Holdings, Inc.**

745 7th Ave 5th Floor
New York, NY, 10019

Attn.: Chief Executive Officer


**With a copy to:**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attn: Richard P. Krasnow, Esq., e-mail: richard.krasnow@weil.com


Dear Sirs,

**7TH AVENUE INC.** (the Issuer)
**HSBC TRUSTEE (C.I) LIMITED** (the Trustee)
**Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746)** (the
Notes)

[     ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [     ] 2009 between the
Issuer, the Noteholder and the Trustee attached at Schedule 1 hereto.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of
Assignment.

We hereby give you notice that by Clause 3 of the Deed of Assignment, we irrevocably and
unconditionally transferred and assigned all of our respective rights, title and interest in, to
and under the Loan Agreement, the Charged Assets Security Documents (which shall include,
for the avoidance of doubt and without limitation, all our respective rights and priority in the
Collateral and our respective rights in respect of all rights, title and interest that LBSF has or
later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and
any sums of money, securities, property and other proceeds received or receivable under the
Loan Agreement and the Charged Assets Security Documents (including any claims the
Trustee or Issuer may have against any person in respect of any of the foregoing or in respect
of the Notes), and the Trustee irrevocably and unconditionally transferred and assigned all of
its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as

it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (together, the **Assignment**). The assigned assets include any claims or other rights relating to the assigned assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of Lehman Brothers Special Financing Inc. (**LBSF**) and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered), pending in the United States Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009.

The Assignment became effective upon receipt by the Issuer of the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment on [      ] 2009.

Additionally, we hereby give you notice that the Issuer has, to the extent provided in the Deed of Assignment, irrevocably and unconditionally released the Trustee from all duties, obligations and liability to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**). Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and, to the extent provided in the Deed of Assignment, the Trustee shall have no further duties, obligations or liabilities in respect of the Loan Agreement and the Charged Assets Security Documents, and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer by way of security for the performance of its obligations contained in the Deed of Assignment has appointed the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

The Issuer has appointed the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions of the Trust Deed relating to the Assigned Assets and (ii) generally exercise all and any of the powers, authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise.

We should be grateful if you would sign and return to each of us and to the Noteholder the attached copies of this letter to confirm that you have received this notice of such transfer. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether you acknowledge such notice.

Yours faithfully,

10

**7TH AVENUE INC.**

By: _____
Name:
Title:

**HSBC TRUSTEE (C.I.) LIMITED**


By: _____
Name:
Title:


Receipt of notice acknowledged:
**LEHMAN BROTHERS SPECIAL FINANCING, INC.**


By: _____
Name:
Title:


**LEHMAN BROTHERS HOLDINGS, INC.**


By: _____
Name:
Title:

11

**SCHEDULE 1**
**DEED OF ASSIGNMENT**



## SIGNATORIES

**Trustee**

EXECUTED AS A DEED by                )
**HSBC TRUSTEE (C.I.) LIMITED**      )
acting by                            )

Authorised Signatory:        ~~Ian Graham~~
                             ~~Authorised Signatory~~

Authorised Signatory:

*JF Braid*

**Jacki Braid**
**Authorised Signatory**

**Issuer**

EXECUTED AS A DEED by                )
**7TH AVENUE INC.**                  )
acting by                            )

Director

In the presence of:

Witness's signature:
Name:
Address:

**Noteholder**

EXECUTED AS A DEED by                                        )
**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY)**             )
acting by                                                   )
**MICHAEL C. FREGE**                                        )
**IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR**             )

In the presence of:

Witness's signature:
Name:
Address:

13

**EXECUTION COPY**

# DEED OF ASSIGNMENT

DATED  29 October  2009

**BETWEEN**

**HSBC TRUSTEE (C.I.) LIMITED**

**7TH AVENUE INC.**

**AND**

**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY),
FRANKFURT AM MAIN**

DEWEY & LeBOEUF

**THIS DEED OF ASSIGNMENT** dated  29 October, 2009

**BETWEEN:**

(1)     **HSBC TRUSTEE (C.I.) LIMITED**, as trustee in respect of the Notes (the **Trustee**);

(2)     **7TH AVENUE INC.**, as issuer of the Notes (the **Issuer**); and

(3)     **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN**, as holder of 100 percent of the aggregate outstanding principal amount of the Notes (the **Noteholder**).

**BACKGROUND**

(A)     On 8 December 2004 (the **Issue Date**), the Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746) (the **Notes**) were issued by the Issuer. The Notes were constituted and secured by a master trust deed dated 12 September 2002 (the **Master Trust Deed**) as supplemented and modified by a supplemental trust deed dated the Issue Date made between, *inter alios*, the Trustee and the Issuer (the **Supplemental Trust Deed** and, together with the Master Trust Deed, the **Trust Deed**). The Trustee and the Issuer, *inter alios*, are parties to an Agency Agreement in respect of a EUR2,500,000,000 Multi-Structure Secured Note Programme dated 12 September 2002 (the **Agency Agreement**).

(B)     The Notes are secured by way of a first ranking assignment by way of security of all the Issuer's rights, title and interest under (i) a term loan agreement (the **Loan Agreement**) dated the Issue Date between the Issuer, Lehman Brothers Special Financing Inc. (**LBSF**) and the Trustee, (ii) a security agreement between the Issuer, LBSF and the Trustee (the **Security Agreement**), the securities account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Securities Account Control Agreement**) and a deposit account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Deposit Account Control Agreement** and, together with the Security Agreement and the Securities Account Control Agreement, the **Charged Assets Security Documents**), in each case dated the Issue Date and entered into in respect of the Notes, and (iii) any sums or money, securities or other property received or receivable under the Loan Agreement and/or the Charged Assets Security Documents.

(C)     As from 3 October 2008, LBSF is the subject of a Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the **LBSF Proceedings**) and, as a result, demands of LBSF (or against its property) are subject to an automatic stay.

(D)     An event of default (a **Loan Event of Default**) has occurred pursuant to Clause 13.7 of the Loan Agreement as a result of the LBSF Proceedings. Pursuant to Clause 14.1 of the Loan Agreement, all amounts under the Loan Agreement have become immediately due and payable. The Loan Event of Default has resulted in an event of default pursuant to Clause 8.1 of the Security Agreement.

(E)     Pursuant to Condition 7(b)(i) of the Notes, if the loan made pursuant to the Loan Agreement (or part thereof) becomes due and repayable on a date prior to its stated repayment date (other than by reason of default in payment or an optional prepayment), the Issuer shall, forthwith upon becoming aware of such event, on giving notice as soon as reasonably practicable following the date upon which the

1

Issuer is to receive the repayment amount of such Charged Assets (or if applicable the redemption proceeds of enforcement of the Charged Assets Security Documents) (or such other period of notice as may be otherwise agreed with the Trustee unless the Trustee shall (at the expense of the Issuer) certify to the Issuer that it considers in its absolute discretion that it is in the best interests of the Noteholders that such notice be delayed or not given or an Extraordinary Resolution of the Noteholders shall otherwise direct) to the Trustee, the Principal Paying Agent and to the Noteholders in accordance with Condition 16, redeem the Notes at the Early Redemption Amount on expiry of such notice.

(F)     Clause 2 of the Supplemental Trust Deed provides that, upon enforcement of the security over the Charged Assets, the Trustee and the Issuer may (upon consent of the holders of all outstanding Notes) effect the assignment of the Issuer's rights in respect of LBSF's rights and obligations under the Contracts (as defined in the Schedule to the Pricing Supplement in respect of the Notes) directly to the Noteholders, subject to all relevant laws and regulations and the terms of the Contracts and, upon such assignment, the Issuer will have no further liability in respect of the Notes.

(G)     In accordance with the Trust Deed and the Conditions of the Notes, the Noteholder may direct the Trustee in writing to take certain actions in respect of the Notes and to enforce rights in respect of the Mortgaged Property relating to the Notes. The Noteholder has directed the Trustee to take such action as set out in a letter dated 27 October 2009 and has indemnified the Trustee pursuant to a deed of indemnity between the Noteholder and the Trustee dated 19 August 2009 (the **Indemnity Deed**).

(H)     It is intended that this document takes effect as a deed notwithstanding the fact that a party may only execute this document under hand.

**IT IS AGREED** as follows:

1.      **INTERPRETATION**

Capitalised terms defined in the Trust Deed, the Supplemental Trust Deed (including the Pricing Supplement appended thereto) the Loan Agreement and the Charged Assets Security Documents have, unless expressly defined in this Deed, the same meaning in this Deed.

2.      **CONDITION PRECEDENT**

(a)     The provisions of Clause 3 below (including, for the avoidance of doubt, the Assignment) shall not be effective until the Noteholder has paid to the Issuer the sum of USD 70,000. The Issuer shall immediately confirm receipt of this payment in the form attached as Annex 1 hereto. For the avoidance of doubt, the Noteholder is required to make only one payment of USD 70,000, payment of which shall be the condition precedent for the effectiveness of both Clause 3 of this Deed and Clause 3 of the Deed of Assignment between the Issuer, the Noteholder and HSBC Corporate Trustee Company (UK) Limited in respect of the Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) issued by the Issuer on 28 August 2008.

(b)     The amount paid to the Issuer pursuant to Clause 2(a) and the amounts of USD 30,000 and USD 15,000 that were paid by the Noteholder to the Issuer in late May 2009 and early September 2009 shall be applied by the Issuer only to cover (i) the Issuer's costs and expenses in full in respect of action taken (including legal advice

2

and any applicable value added taxes) in respect of the negotiation, preparation and execution of this Deed and any related documentation, (ii) all other matters in relation thereto, and (iii) the costs of the liquidation of the Issuer in a timely manner (the **Issuer Costs**).

(c)    The Issuer shall deliver to the Noteholder (both (i) in writing to Lehman Brothers Bankhaus AG (in Insolvency), c/o Dr. Michael C. Frege as Insolvency Administrator, CMS Hasche Sigle, Barckhausstrasse 12-16, 60325 Frankfurt am Main, Germany and (ii) by email to Michael.Frege@cms-hs.com) from time to time reasonably detailed invoices or other reasonable documentary evidence (together, the **Invoices**) of the Issuer Costs. The amount (if any) of those amounts referred to in Clause 2(b) as being paid by the Noteholder to the Issuer remaining following the payment of the Issuer Costs shall promptly be repaid by the Issuer to the Noteholder.

(d)    For the avoidance of doubt, the Noteholder hereby confirms that the Pre-funding Amount (as defined in the Indemnity Deed) may be used to discharge any amounts due to the Trustee under the Indemnity Deed without the need for the Trustee or Allen & Overy LLP to seek any further consents or approvals.

3.    **ASSIGNMENT**

(a)    The Trustee and the Issuer (without representation, warranty or recourse) irrevocably and unconditionally transfer and assign all of their respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all rights and priority of the Trustee and the Issuer in the Collateral and the Trustee's and the Issuer's rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transfers and assigns all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (all assets referred to in this Clause 3(a) together, the **Assigned Assets**), in each case, to the Noteholder (the **Assignment**). The Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) the executed originals of the Loan Agreement, the Charged Assets Security Documents, the Supplemental Trust Deed and any other transaction documents (which for the avoidance of doubt, shall exclude any legal opinions) executed in connection with the transactions consummated therein (in each case, to the extent the Trustee and the Issuer are in possession of the same). If the Trustee or the Issuer are not in possession of such executed original documents, the Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) such documentation, correspondence, notes of meetings or calls or e-mails that the Trustee or the Issuer (or their legal counsel) has in its possession that the Noteholder may reasonably request in order to enforce its rights, title and interest in the Assigned Assets. For the avoidance of doubt, the Assigned Assets shall include any claims or other rights relating to the Assigned Assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of LBSF and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered) (the **Case**), pending in the United States

3

Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009 (all proofs of claim together, the **Proofs of Claim**), all agreements, instruments, account statements and other documents evidencing, or relating or referred to in, such claim(s) or the Proofs of Claim, all rights to receive payment, interest, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Trustee's or the Issuer's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

(b)     In the event either the Trustee or the Issuer receives any sums or money, securities or property or other proceeds under or relating to the Assigned Assets, whether before or after the Assignment, the Trustee or the Issuer, as the case may be, shall hold the same in trust for the sole benefit of the Noteholder and shall immediately remit such sums or money, securities or property or other proceeds to the Noteholder.

(c)     The Noteholder directs the Issuer and the Issuer hereby irrevocably and unconditionally:

(i)     releases the Trustee from all duties, obligations and liability arising following the date of this Deed to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**); and

(ii)    discharges each of the Agents (excluding the Redemption Agent and the Calculation Agent) and the Trustee from all of their duties, obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes.

(d)     Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and the Trustee shall have no further duties, obligations or liabilities arising following the date of this Deed in respect of any Transaction Document (including, without limitation, the Loan Agreement and the Charged Assets Security Documents), and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

(e)     To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer hereby by way of security for the performance of its obligations contained in this Deed appoints the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

(f)     The Issuer hereby irrevocably appoints the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions relating to the Assigned Assets and (ii) generally exercise all and any of the powers,

4

authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise. The Issuer hereby revokes and the Trustee hereby agrees to the revocation of its appointment as attorney of the Issuer pursuant to Clause 8(M) of the Trust Deed.

(g)     Notwithstanding the Assignment, the limitation on recourse to the Issuer in respect of the Notes set forth in Condition 3(f)(C) shall remain in full force and effect, and the Noteholder accordingly acknowledges and agrees that it shall look solely to the Assigned Assets (and any other Charged Assets and Mortgaged Property, if any) for payments to be made by the Issuer on the Notes.

(h)     The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a copy of this Deed to each of the Agents (excluding the Redemption Agent and the Calculation Agent) and inform them that they have been discharged from all of their obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes. The parties hereby agree that notwithstanding anything to the contrary in the Trust Deed, the Agency Agreement and the Conditions of the Notes, neither the Issuer nor the Trustee shall be obliged to appoint any replacement Agents.

(i)     The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a notice to LBSF and LBHI in the form attached at Annex 2 hereto informing them of the Assignment. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether LBSF and LBHI acknowledge such notice.

(j)     Subject to the Issuer and the Trustee being indemnified and secured to their satisfaction, the Issuer and the Trustee shall take all reasonable actions and execute and deliver all documents reasonably requested by the Noteholder to protect, perfect and further assure the effectiveness of the Assignment and the Noteholder's rights and remedies under this Deed or under or in respect of the Assigned Assets, including, without limitation, executing such UCC assignments or amendments as the Noteholder shall specify in respect of any UCC financing statements previously filed by the Trustee or the Issuer in respect of any Charged Assets, Contracts or other collateral.

(k)     After the Assignment has become effective, the Noteholder shall as soon as reasonably possible deliver the Notes 'free of payment' to the repurchase account at Euroclear.

4.      **LIABILITY**

Subject to the immediately succeeding paragraph of this Clause 4, upon the Assignment, the Trustee shall not have any further liability (a) in respect of the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and any other document in relation thereto and (b) any action taken, purported to be taken or omitted to be taken by the Noteholder or the Issuer under the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and/or any other document in relation thereto. Except as set forth herein, the respective rights, remedies, liabilities, obligations and duties of the Issuer and the Noteholder under the Trust Deed, the Notes, any documents related thereto and applicable law shall remain in full force and effect.

The Trustee shall, in any event, remain fully liable (i) to the fullest extent provided under the Trust Deed, the Notes, the Loan Agreement, the Charged Assets Security

5

Documents, any documents in relation to any of the foregoing and applicable law for all actions taken or omitted to be taken by it prior to the effective date of the Assignment, and (ii) for any breach of its agreements and obligations under or in respect of this Deed, and the Issuer shall remain fully liable to the Noteholder, in its capacity as Noteholder or as assignee of the Trustee, (i) under or in respect of the Notes, the Trust Deed, the Loan Agreement, the Charged Assets Security Documents for all obligations of the Issuer thereunder and (ii) for any breach of the Issuer's agreements and obligations under or in respect of this Deed.

The Trustee and the Issuer agree that the Noteholder's insolvency administrator, Dr. Michael C. Frege, shall not incur any personal liability in relation to this Deed.

5.    **COUNTERPARTS**

This Deed may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of the Deed.

6.    **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999**

No third party, other than, for the purposes of Clause 4, third paragraph, Dr. Michael C. Frege, shall have any rights to enforce any term or condition of this Deed under the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists or is available apart from under that Act.

7.    **GOVERNING LAW**

This Deed and any issues or disputes arising out of or in connection with it (whether such disputes are contractual or non-contractual in nature, such as claims in tort, for breach of statute or regulation or otherwise) shall be governed by and construed in accordance with English law.

8.    **ENFORCEMENT**

(a)    The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed (including a dispute relating to the existence, validity or termination of this Deed or any non-contractual obligation arising out of or in connection with this Deed).

(b)    The Issuer confirms that it has irrevocably appointed Law Debenture Corporate Services Limited (Fifth Floor, 100 Wood Street, London EC2V 7EX, United Kingdom) as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed, without prejudice to any other mode of service allowed under any relevant law. The Issuer agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

This Deed has been entered into as a deed on the date stated at the beginning of this Deed.

6

**ANNEX 1**

To: Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
Dr. Michael C. Frege as Insolvency Administrator

CMS Hasche Sigle
Barckhausstrasse 12-16
60325 Frankfurt am Main
Germany

E-mail: Michael.Frege@cms-hs.com


Copy to: HSBC Trustee (C.I.) Limited

1 Grenville Street
St Helier
Jersey JE4 9PF
Channel Islands

Email:    Ursula.v.elliott@hsbcpb.com; Ian.r.graham@hsbcpb.com


Dear Dr. Frege,

**7TH AVENUE INC. (the Issuer)**
**HSBC TRUSTEE (C.I.) LIMITED (the Trustee)**
**Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746)**
**(the Notes)**

[       ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [       ] 2009 between the Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

The Issuer confirms that it has received the payment of USD 50,000 pursuant to Clause 2(a) of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

7

**ANNEX 2**

**To: Lehman Brothers Special Financing, Inc.**

Lehman Brothers
Operations, FID Mid Office Admin
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212)526-2240

Attn: Seth Konheim; e-mail: skonheim@lehman.com;
Paul Puskuldjian; e-mail: ppusk@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212) 526-8140

Attn: Kaushik Amin; e-mail: kamin@lehman.com

Lehman Brothers
Derivative Trading – London
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-2444

Attn: Andrew Morton; e-mail: amorton@lehman.com

Lehman Brothers
Central Funding Unit
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-1305

Attn: John Feraca; e-mail: joferaca@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave
New York, NY, 10019

Tel: (212) 526-6697

Attn: Neville Nagarwalla; e-mail: nneville@lehman.com

8

Lehman Brothers Special Financing, Inc.
1271 Avenue of the Americas
40th Floor
New York, New York 10020

Attention:    Michael Ferraro; e-mail: michael.ferraro@lehman.com
              Locke R. McMurray, e-mail: locke.mcmurray@lehman.com

**To: Lehman Brothers Holdings, Inc.**

745 7th Ave 5th Floor
New York, NY, 10019

Attn.: Chief Executive Officer

**With a copy to:**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attn: Richard P. Krasnow, Esq., e-mail: richard.krasnow@weil.com

Dear Sirs,

**7TH AVENUE INC. (the Issuer)**
**HSBC TRUSTEE (C.I) LIMITED (the Trustee)**
**Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746) (the Notes)**

[      ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [      ] 2009 between the Issuer, the Noteholder and the Trustee attached at Schedule 1 hereto.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

We hereby give you notice that by Clause 3 of the Deed of Assignment, we irrevocably and unconditionally transferred and assigned all of our respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all our respective rights and priority in the Collateral and our respective rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transferred and assigned all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as

9

it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (together, the **Assignment**). The assigned assets include any claims or other rights relating to the assigned assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of Lehman Brothers Special Financing Inc. (**LBSF**) and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered), pending in the United States Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009.

The Assignment became effective upon receipt by the Issuer of the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment on [       ] 2009.

Additionally, we hereby give you notice that the Issuer has, to the extent provided in the Deed of Assignment, irrevocably and unconditionally released the Trustee from all duties, obligations and liability to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**). Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and, to the extent provided in the Deed of Assignment, the Trustee shall have no further duties, obligations or liabilities in respect of the Loan Agreement and the Charged Assets Security Documents, and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer by way of security for the performance of its obligations contained in the Deed of Assignment has appointed the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

The Issuer has appointed the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions of the Trust Deed relating to the Assigned Assets and (ii) generally exercise all and any of the powers, authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise.

We should be grateful if you would sign and return to each of us and to the Noteholder the attached copies of this letter to confirm that you have received this notice of such transfer. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether you acknowledge such notice.

Yours faithfully,

10

**7TH AVENUE INC.**

By: _____

Name:    **Connan Hill**     **Scott Aitken**

Title:     **Director**        **Director**

**HSBC TRUSTEE (C.I.) LIMITED**


By: _____

Name: _____

Title:


Receipt of notice acknowledged:

**LEHMAN BROTHERS SPECIAL FINANCING, INC.**


By: _____

Name: _____

Title:


**LEHMAN BROTHERS HOLDINGS, INC.**


By: _____

Name: _____

Title:

11

**SCHEDULE 1**
**DEED OF ASSIGNMENT**

## SIGNATORIES

**Trustee**

EXECUTED AS A DEED by          )
**HSBC TRUSTEE (C.I.) LIMITED**   )
acting by                      )


Authorised Signatory:

Authorised Signatory:


**Issuer**

EXECUTED AS A DEED by          )
**7TH AVENUE INC.**             )
acting by                      )

Director

In the presence of:

Witness's signature: *[signature]*
Name:   SEAN MURPHY
Address:  P.O. BOX 1109 GEORGETOWN
          GRAND CAYMAN

**Connan Hill**
**Director**

**Scott Aitken**
**Director**

**Noteholder**

EXECUTED AS A DEED by                                          )
**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY)**   )
acting by                                                      )
**MICHAEL C. FREGE**                                           )
**IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR**   )


In the presence of:

Witness's signature:
Name:
Address:

EXECUTION COPY


## DEED OF ASSIGNMENT


DATED 29 October 2009


BETWEEN



HSBC TRUSTEE (C.I.) LIMITED

7TH AVENUE INC.

AND

LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY),
FRANKFURT AM MAIN




DEWEY & LEBOEUF

**THIS DEED OF ASSIGNMENT** dated 2 9 October  2009

**BETWEEN:**

(1)    **HSBC TRUSTEE (C.I.) LIMITED**, as trustee in respect of the Notes (the **Trustee**);

(2)    **7TH AVENUE INC.**, as issuer of the Notes (the **Issuer**); and

(3)    **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN**, as holder of 100 percent of the aggregate outstanding principal amount of the Notes (the **Noteholder**).

**BACKGROUND**

(A)    On 8 December 2004 (the **Issue Date**), the Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746) (the **Notes**) were issued by the Issuer. The Notes were constituted and secured by a master trust deed dated 12 September 2002 (the **Master Trust Deed**) as supplemented and modified by a supplemental trust deed dated the Issue Date made between, *inter alios*, the Trustee and the Issuer (the **Supplemental Trust Deed** and, together with the Master Trust Deed, the **Trust Deed**). The Trustee and the Issuer, *inter alios*, are parties to an Agency Agreement in respect of a EUR2,500,000,000 Multi-Structure Secured Note Programme dated 12 September 2002 (the **Agency Agreement**).

(B)    The Notes are secured by way of a first ranking assignment by way of security of all the Issuer's rights, title and interest under (i) a term loan agreement (the **Loan Agreement**) dated the Issue Date between the Issuer, Lehman Brothers Special Financing Inc. (**LBSF**) and the Trustee, (ii) a security agreement between the Issuer, LBSF and the Trustee (the **Security Agreement**), the securities account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Securities Account Control Agreement**) and a deposit account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Deposit Account Control Agreement** and, together with the Security Agreement and the Securities Account Control Agreement, the **Charged Assets Security Documents**), in each case dated the Issue Date and entered into in respect of the Notes, and (iii) any sums or money, securities or other property received or receivable under the Loan Agreement and/or the Charged Assets Security Documents.

(C)    As from 3 October 2008, LBSF is the subject of a Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the **LBSF Proceedings**) and, as a result, demands of LBSF (or against its property) are subject to an automatic stay.

(D)    An event of default (a **Loan Event of Default**) has occurred pursuant to Clause 13.7 of the Loan Agreement as a result of the LBSF Proceedings. Pursuant to Clause 14.1 of the Loan Agreement, all amounts under the Loan Agreement have become immediately due and payable. The Loan Event of Default has resulted in an event of default pursuant to Clause 8.1 of the Security Agreement.

(E)    Pursuant to Condition 7(b)(i) of the Notes, if the loan made pursuant to the Loan Agreement (or part thereof) becomes due and repayable on a date prior to its stated repayment date (other than by reason of default in payment or an optional prepayment), the Issuer shall, forthwith upon becoming aware of such event, on giving notice as soon as reasonably practicable following the date upon which the

1

Issuer is to receive the repayment amount of such Charged Assets (or if applicable the redemption proceeds of enforcement of the Charged Assets Security Documents) (or such other period of notice as may be otherwise agreed with the Trustee unless the Trustee shall (at the expense of the Issuer) certify to the Issuer that it considers in its absolute discretion that it is in the best interests of the Noteholders that such notice be delayed or not given or an Extraordinary Resolution of the Noteholders shall otherwise direct) to the Trustee, the Principal Paying Agent and to the Noteholders in accordance with Condition 16, redeem the Notes at the Early Redemption Amount on expiry of such notice.

(F)     Clause 2 of the Supplemental Trust Deed provides that, upon enforcement of the security over the Charged Assets, the Trustee and the Issuer may (upon consent of the holders of all outstanding Notes) effect the assignment of the Issuer's rights in respect of LBSF's rights and obligations under the Contracts (as defined in the Schedule to the Pricing Supplement in respect of the Notes) directly to the Noteholders, subject to all relevant laws and regulations and the terms of the Contracts and, upon such assignment, the Issuer will have no further liability in respect of the Notes.

(G)     In accordance with the Trust Deed and the Conditions of the Notes, the Noteholder may direct the Trustee in writing to take certain actions in respect of the Notes and to enforce rights in respect of the Mortgaged Property relating to the Notes. The Noteholder has directed the Trustee to take such action as set out in a letter dated 27 October 2009 and has indemnified the Trustee pursuant to a deed of indemnity between the Noteholder and the Trustee dated 19 August 2009 (the **Indemnity Deed**).

(H)     It is intended that this document takes effect as a deed notwithstanding the fact that a party may only execute this document under hand.

**IT IS AGREED** as follows:

1.     **INTERPRETATION**

       Capitalised terms defined in the Trust Deed, the Supplemental Trust Deed (including the Pricing Supplement appended thereto) the Loan Agreement and the Charged Assets Security Documents have, unless expressly defined in this Deed, the same meaning in this Deed.

2.     **CONDITION PRECEDENT**

(a)     The provisions of Clause 3 below (including, for the avoidance of doubt, the Assignment) shall not be effective until the Noteholder has paid to the Issuer the sum of USD 70,000. The Issuer shall immediately confirm receipt of this payment in the form attached as Annex 1 hereto. For the avoidance of doubt, the Noteholder is required to make only one payment of USD 70,000, payment of which shall be the condition precedent for the effectiveness of both Clause 3 of this Deed and Clause 3 of the Deed of Assignment between the Issuer, the Noteholder and HSBC Corporate Trustee Company (UK) Limited in respect of the Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) issued by the Issuer on 28 August 2008.

(b)     The amount paid to the Issuer pursuant to Clause 2(a) and the amounts of USD 30,000 and USD 15,000 that were paid by the Noteholder to the Issuer in late May 2009 and early September 2009 shall be applied by the Issuer only to cover (i) the Issuer's costs and expenses in full in respect of action taken (including legal advice

2

and any applicable value added taxes) in respect of the negotiation, preparation and execution of this Deed and any related documentation, (ii) all other matters in relation thereto, and (iii) the costs of the liquidation of the Issuer in a timely manner (the **Issuer Costs**).

(c)    The Issuer shall deliver to the Noteholder (both (i) in writing to Lehman Brothers Bankhaus AG (in Insolvency), c/o Dr. Michael C. Frege as Insolvency Administrator, CMS Hasche Sigle, Barckhausstrasse 12-16, 60325 Frankfurt am Main, Germany and (ii) by email to Michael.Frege@cms-hs.com) from time to time reasonably detailed invoices or other reasonable documentary evidence (together, the **Invoices**) of the Issuer Costs. The amount (if any) of those amounts referred to in Clause 2(b) as being paid by the Noteholder to the Issuer remaining following the payment of the Issuer Costs shall promptly be repaid by the Issuer to the Noteholder.

(d)    For the avoidance of doubt, the Noteholder hereby confirms that the Pre-funding Amount (as defined in the Indemnity Deed) may be used to discharge any amounts due to the Trustee under the Indemnity Deed without the need for the Trustee or Allen & Overy LLP to seek any further consents or approvals.

3.    **ASSIGNMENT**

(a)    The Trustee and the Issuer (without representation, warranty or recourse) irrevocably and unconditionally transfer and assign all of their respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all rights and priority of the Trustee and the Issuer in the Collateral and the Trustee's and the Issuer's rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transfers and assigns all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (all assets referred to in this Clause 3(a) together, the **Assigned Assets**), in each case, to the Noteholder (the **Assignment**). The Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) the executed originals of the Loan Agreement, the Charged Assets Security Documents, the Supplemental Trust Deed and any other transaction documents (which for the avoidance of doubt, shall exclude any legal opinions) executed in connection with the transactions consummated therein (in each case, to the extent the Trustee and the Issuer are in possession of the same). If the Trustee or the Issuer are not in possession of such executed original documents, the Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) such documentation, correspondence, notes of meetings or calls or e-mails that the Trustee or the Issuer (or their legal counsel) has in its possession that the Noteholder may reasonably request in order to enforce its rights, title and interest in the Assigned Assets. For the avoidance of doubt, the Assigned Assets shall include any claims or other rights relating to the Assigned Assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of LBSF and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered) (the **Case**), pending in the United States

3

Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009 (all proofs of claim together, the **Proofs of Claim**), all agreements, instruments, account statements and other documents evidencing, or relating or referred to in, such claim(s) or the Proofs of Claim, all rights to receive payment, interest, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Trustee's or the Issuer's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

(b)     In the event either the Trustee or the Issuer receives any sums or money, securities or property or other proceeds under or relating to the Assigned Assets, whether before or after the Assignment, the Trustee or the Issuer, as the case may be, shall hold the same in trust for the sole benefit of the Noteholder and shall immediately remit such sums or money, securities or property or other proceeds to the Noteholder.

(c)     The Noteholder directs the Issuer and the Issuer hereby irrevocably and unconditionally:

(i)     releases the Trustee from all duties, obligations and liability arising following the date of this Deed to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**); and

(ii)     discharges each of the Agents (excluding the Redemption Agent and the Calculation Agent) and the Trustee from all of their duties, obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes.

(d)     Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and the Trustee shall have no further duties, obligations or liabilities arising following the date of this Deed in respect of any Transaction Document (including, without limitation, the Loan Agreement and the Charged Assets Security Documents), and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

(e)     To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer hereby by way of security for the performance of its obligations contained in this Deed appoints the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

(f)     The Issuer hereby irrevocably appoints the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions relating to the Assigned Assets and (ii) generally exercise all and any of the powers,

4

authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise. The Issuer hereby revokes and the Trustee hereby agrees to the revocation of its appointment as attorney of the Issuer pursuant to Clause 8(M) of the Trust Deed.

(g)   Notwithstanding the Assignment, the limitation on recourse to the Issuer in respect of the Notes set forth in Condition 3(f)(C) shall remain in full force and effect, and the Noteholder accordingly acknowledges and agrees that it shall look solely to the Assigned Assets (and any other Charged Assets and Mortgaged Property, if any) for payments to be made by the Issuer on the Notes.

(h)   The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a copy of this Deed to each of the Agents (excluding the Redemption Agent and the Calculation Agent) and inform them that they have been discharged from all of their obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes. The parties hereby agree that notwithstanding anything to the contrary in the Trust Deed, the Agency Agreement and the Conditions of the Notes, neither the Issuer nor the Trustee shall be obliged to appoint any replacement Agents.

(i)   The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a notice to LBSF and LBHI in the form attached at Annex 2 hereto informing them of the Assignment. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether LBSF and LBHI acknowledge such notice.

(j)   Subject to the Issuer and the Trustee being indemnified and secured to their satisfaction, the Issuer and the Trustee shall take all reasonable actions and execute and deliver all documents reasonably requested by the Noteholder to protect, perfect and further assure the effectiveness of the Assignment and the Noteholder's rights and remedies under this Deed or under or in respect of the Assigned Assets, including, without limitation, executing such UCC assignments or amendments as the Noteholder shall specify in respect of any UCC financing statements previously filed by the Trustee or the Issuer in respect of any Charged Assets, Contracts or other collateral.

(k)   After the Assignment has become effective, the Noteholder shall as soon as reasonably possible deliver the Notes 'free of payment' to the repurchase account at Euroclear.

4.    **LIABILITY**

Subject to the immediately succeeding paragraph of this Clause 4, upon the Assignment, the Trustee shall not have any further liability (a) in respect of the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and any other document in relation thereto and (b) any action taken, purported to be taken or omitted to be taken by the Noteholder or the Issuer under the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and/or any other document in relation thereto. Except as set forth herein, the respective rights, remedies, liabilities, obligations and duties of the Issuer and the Noteholder under the Trust Deed, the Notes, any documents related thereto and applicable law shall remain in full force and effect.

The Trustee shall, in any event, remain fully liable (i) to the fullest extent provided under the Trust Deed, the Notes, the Loan Agreement, the Charged Assets Security

5

Documents, any documents in relation to any of the foregoing and applicable law for all actions taken or omitted to be taken by it prior to the effective date of the Assignment, and (ii) for any breach of its agreements and obligations under or in respect of this Deed, and the Issuer shall remain fully liable to the Noteholder, in its capacity as Noteholder or as assignee of the Trustee, (i) under or in respect of the Notes, the Trust Deed, the Loan Agreement, the Charged Assets Security Documents for all obligations of the Issuer thereunder and (ii) for any breach of the Issuer's agreements and obligations under or in respect of this Deed.

The Trustee and the Issuer agree that the Noteholder's insolvency administrator, Dr. Michael C. Frege, shall not incur any personal liability in relation to this Deed.

5.    **COUNTERPARTS**

This Deed may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of the Deed.

6.    **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999**

No third party, other than, for the purposes of Clause 4, third paragraph, Dr. Michael C. Frege, shall have any rights to enforce any term or condition of this Deed under the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists or is available apart from under that Act.

7.    **GOVERNING LAW**

This Deed and any issues or disputes arising out of or in connection with it (whether such disputes are contractual or non-contractual in nature, such as claims in tort, for breach of statute or regulation or otherwise) shall be governed by and construed in accordance with English law.

8.    **ENFORCEMENT**

(a)    The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed (including a dispute relating to the existence, validity or termination of this Deed or any non-contractual obligation arising out of or in connection with this Deed).

(b)    The Issuer confirms that it has irrevocably appointed Law Debenture Corporate Services Limited (Fifth Floor, 100 Wood Street, London EC2V 7EX, United Kingdom) as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed, without prejudice to any other mode of service allowed under any relevant law. The Issuer agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

This Deed has been entered into as a deed on the date stated at the beginning of this Deed.

6

**ANNEX 1**

To: Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
Dr. Michael C. Frege as Insolvency Administrator

CMS Hasche Sigle
Barckhausstrasse 12-16
60325 Frankfurt am Main
Germany

E-mail: Michael.Frege@cms-hs.com

Copy to:  HSBC Trustee (C.I.) Limited

1 Grenville Street
St Helier
Jersey JE4 9PF
Channel Islands

Email:    Ursula.v.elliott@hsbcpb.com; Ian.r.graham@hsbcpb.com

Dear Dr. Frege,

**7TH AVENUE INC. (the Issuer)**
**HSBC TRUSTEE (C.I) LIMITED (the Trustee)**
**Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746)**
**(the Notes)**

[      ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [      ] 2009 between the Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

The Issuer confirms that it has received the payment of USD 50,000 pursuant to Clause 2(a) of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

7

## ANNEX 2

**To:  Lehman Brothers Special Financing, Inc.**

Lehman Brothers
Operations, FID Mid Office Admin
745 7th Ave 5th Floor
New York, NY, 10019

Tel:  (212)526-2240

Attn: Seth Konheim; e-mail: skonheim@lehman.com;
Paul Puskuldjian; e-mail: ppusk@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave 5th Floor
New York, NY, 10019

Tel:  (212) 526-8140

Attn:  Kaushik Amin; e-mail: kamin@lehman.com

Lehman Brothers
Derivative Trading – London
25 Bank Street
London E14 5LE

Tel:  44-(0)20-7103-2444

Attn:  Andrew Morton; e-mail: amorton@lehman.com

Lehman Brothers
Central Funding Unit
25 Bank Street
London E14 5LE

Tel:  44-(0)20-7103-1305

Attn:  John Feraca; e-mail: joferaca@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave
New York, NY, 10019

Tel:  (212) 526-6697

Attn:  Neville Nagarwalla; e-mail: nneville@lehman.com

8

Lehman Brothers Special Financing, Inc.
1271 Avenue of the Americas
40th Floor
New York, New York 10020

Attention:    Michael Ferraro; e-mail: michael.ferraro@lehman.com
              Locke R. McMurray, e-mail: locke.mcmurray@lehman.com

**To: Lehman Brothers Holdings, Inc.**

745 7th Ave 5th Floor
New York, NY, 10019

Attn.: Chief Executive Officer

**With a copy to:**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attn: Richard P. Krasnow, Esq., e-mail: richard.krasnow@weil.com

Dear Sirs,

**7TH AVENUE INC.** (the **Issuer**)
**HSBC TRUSTEE (C.I) LIMITED** (the **Trustee**)
**Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746)** (the
**Notes**)

[    ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [    ] 2009 between the
Issuer, the Noteholder and the Trustee attached at Schedule 1 hereto.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of
Assignment.

We hereby give you notice that by Clause 3 of the Deed of Assignment, we irrevocably and
unconditionally transferred and assigned all of our respective rights, title and interest in, to
and under the Loan Agreement, the Charged Assets Security Documents (which shall include,
for the avoidance of doubt and without limitation, all our respective rights and priority in the
Collateral and our respective rights in respect of all rights, title and interest that LBSF has or
later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and
any sums of money, securities, property and other proceeds received or receivable under the
Loan Agreement and the Charged Assets Security Documents (including any claims the
Trustee or Issuer may have against any person in respect of any of the foregoing or in respect
of the Notes), and the Trustee irrevocably and unconditionally transferred and assigned all of
its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as

9

it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (together, the **Assignment**). The assigned assets include any claims or other rights relating to the assigned assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of Lehman Brothers Special Financing Inc. (**LBSF**) and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered), pending in the United States Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009.

The Assignment became effective upon receipt by the Issuer of the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment on [      ] 2009.

Additionally, we hereby give you notice that the Issuer has, to the extent provided in the Deed of Assignment, irrevocably and unconditionally released the Trustee from all duties, obligations and liability to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**). Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and, to the extent provided in the Deed of Assignment, the Trustee shall have no further duties, obligations or liabilities in respect of the Loan Agreement and the Charged Assets Security Documents, and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer by way of security for the performance of its obligations contained in the Deed of Assignment has appointed the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

The Issuer has appointed the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions of the Trust Deed relating to the Assigned Assets and (ii) generally exercise all and any of the powers, authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise.

We should be grateful if you would sign and return to each of us and to the Noteholder the attached copies of this letter to confirm that you have received this notice of such transfer. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether you acknowledge such notice.

Yours faithfully,

10

**7TH AVENUE INC.**

By: _____
Name:
Title:

**HSBC TRUSTEE (C.I.) LIMITED**


By: _____
Name:
Title:


Receipt of notice acknowledged:
**LEHMAN BROTHERS SPECIAL FINANCING, INC.**


By: _____
Name:
Title:


**LEHMAN BROTHERS HOLDINGS, INC.**


By: _____
Name:
Title:

11

**SCHEDULE 1**
**DEED OF ASSIGNMENT**

## SIGNATORIES

**Trustee**

EXECUTED AS A DEED by                    )
**HSBC TRUSTEE (C.I.) LIMITED**          )
acting by                                )


Authorised Signatory:

Authorised Signatory:

**Issuer**

EXECUTED AS A DEED by                    )
**7TH AVENUE INC.**                      )
acting by                                )

Director

In the presence of:

Witness's signature:
Name:
Address:

**Noteholder**

EXECUTED AS A DEED by                            )
**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY)**  )
acting by                                        )
**MICHAEL C. FREGE**                             )
**IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR**  )

In the presence of:

Witness's signature: _Charlotte Schildt_
Name: _Dr. Charlotte Schildt_
Address: _Barckhausstraße 12 - 16_
_60325 Frankfurt am Main_

13

To:        Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
           Dr. Michael C. Frege as Insolvency Administrator

           CMS Hasche Sigle
           Barckhausstrasse 12-16
           60325 Frankfurt am Main
           Germany

E-mail:    Michael.Frege@cms-hs.com


Copy to:  HSBC Corporate Trustee Company (UK) Limited

    ·      8 Canada Square
           London
           E14 4HQ

Email:     ctla.trustee.admin@hsbc.com


Dear Dr. Frege,

**7TH AVENUE INC.** (the **Issuer**)
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED** (the **Trustee**)
**Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711)**
(the **Notes**)

04 November 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated 29 October 2009 between the Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

The Issuer confirms that it has received the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**


By: _____
Name: Connan Hill
Title: Director

EXECUTION COPY

# DEED OF ASSIGNMENT

DATED 29 October, 2009

BETWEEN

**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**

**7TH AVENUE INC.**

**AND**

**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY),
FRANKFURT AM MAIN**

Dewey & LeBoeuf

**THIS DEED OF ASSIGNMENT** dated *29 October,*    2009

**BETWEEN:**

(1)    **HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**, as trustee in respect of the Notes (the **Trustee**);

(2)    **7TH AVENUE INC.**, as issuer of the Notes (the **Issuer**); and

(3)    **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN**, as holder of 100 percent of the aggregate outstanding principal amount of the Notes (the **Noteholder**).

**BACKGROUND**

(A)    On 28 August 2008 (the **Issue Date**), the Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) (the **Notes**) were issued by the Issuer. The Notes were constituted and secured by a master trust deed dated 12 September 2002 (the **Master Trust Deed**) as supplemented and modified by a supplemental trust deed dated the Issue Date made between, *inter alios*, the Trustee and the Issuer (the **Supplemental Trust Deed** and, together with the Master Trust Deed, the **Trust Deed**). The Issuer, *inter alios*, is party to an Agency Agreement in respect of a EUR2,500,000,000 Multi-Structure Secured Note Programme dated 12 September 2002 (the **Agency Agreement**), to which the Trustee has acceded.

(B)    The Notes are secured by way of a first ranking assignment by way of security of all the Issuer's rights, title and interest under (i) a term loan agreement (the **Loan Agreement**) dated the Issue Date between the Issuer, Lehman Brothers Special Financing Inc. (**LBSF**) and the Trustee, (ii) a security agreement between the Issuer, LBSF and the Trustee (the **Security Agreement**), the securities account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Securities Account Control Agreement**) and a deposit account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Deposit Account Control Agreement** and, together with the Security Agreement and the Securities Account Control Agreement, the **Charged Assets Security Documents**), in each case dated the Issue Date and entered into in respect of the Notes, and (iii) any sums or money, securities or other property received or receivable under the Loan Agreement and/or the Charged Assets Security Documents.

(C)    As from 3 October 2008, LBSF is the subject of a Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the **LBSF Proceedings**) and, as a result, demands of LBSF (or against its property) are subject to an automatic stay.

(D)    An event of default (a **Loan Event of Default**) has occurred pursuant to Clause 13.7 of the Loan Agreement as a result of the LBSF Proceedings. Pursuant to Clause 14.1 of the Loan Agreement, all amounts under the Loan Agreement have become immediately due and payable. The Loan Event of Default has resulted in an event of default pursuant to Clause 8.1 of the Security Agreement.

(E)    Pursuant to Condition 7(b)(i) of the Notes, if the loan made pursuant to the Loan Agreement (or part thereof) becomes due and repayable on a date prior to its stated repayment date (other than by reason of default in payment or an optional prepayment), the Issuer shall, forthwith upon becoming aware of such event, on

1

giving notice as soon as reasonably practicable following the date upon which the Issuer is to receive the repayment amount of such Charged Assets (or if applicable the redemption proceeds of enforcement of the Charged Assets Security Documents) (or such other period of notice as may be otherwise agreed with the Trustee unless the Trustee shall (at the expense of the Issuer) certify to the Issuer that it considers in its absolute discretion that it is in the best interests of the Noteholders that such notice be delayed or not given or an Extraordinary Resolution of the Noteholders shall otherwise direct) to the Trustee, the Principal Paying Agent and to the Noteholders in accordance with Condition 16, redeem the Notes at the Early Redemption Amount on expiry of such notice.

(F)    Clause 2 of the Supplemental Trust Deed provides that, upon enforcement of the security over the Charged Assets, the Trustee and the Issuer may (upon consent of the holders of all outstanding Notes) effect the assignment of the Issuer's rights in respect of LBSF's rights and obligations under the Contracts (as defined in the Schedule to the Pricing Supplement in respect of the Notes) directly to the Noteholders, subject to all relevant laws and regulations and the terms of the Contracts and, upon such assignment, the Issuer will have no further liability in respect of the Notes.

(G)    In accordance with the Trust Deed and the Conditions of the Notes, the Noteholder may direct the Trustee in writing to take certain actions in respect of the Notes and to enforce rights in respect of the Mortgaged Property relating to the Notes. The Noteholder has directed the Trustee to take such action as set out in a letter dated 27 October 2009 and has indemnified the Trustee pursuant to a deed of indemnity between the Noteholder and the Trustee dated 19 August 2009 (the **Indemnity Deed**).

(H)    It is intended that this document takes effect as a deed notwithstanding the fact that a party may only execute this document under hand.

**IT IS AGREED** as follows:

1.    **INTERPRETATION**

Capitalised terms defined in the Trust Deed, the Supplemental Trust Deed (including the Pricing Supplement appended thereto) the Loan Agreement and the Charged Assets Security Documents have, unless expressly defined in this Deed, the same meaning in this Deed.

2.    **CONDITION PRECEDENT**

(a)    The provisions of Clause 3 below (including, for the avoidance of doubt, the Assignment) shall not be effective until the Noteholder has paid to the Issuer the sum of USD 70,000.The Issuer shall immediately confirm receipt of this payment in the form attached as Annex 1 hereto. For the avoidance of doubt, the Noteholder is required to make only one payment of USD 70,000, payment of which shall be the condition precedent for the effectiveness of both Clause 3 of this Deed and Clause 3 of the Deed of Assignment between the Issuer, the Noteholder and HSBC Trustee (C.I.) Limited in respect of the Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746) issued by the Issuer on 8 December 2004.

(b)    The amount paid to the Issuer pursuant to Clause 2(a) and the amounts of USD 30,000 and USD 15,000 that were paid by the Noteholder to the Issuer in late May 2009 and early September 2009 shall be applied by the Issuer only to cover (i) the Issuer's costs and expenses in full in respect of action taken (including legal advice

2

    and any applicable value added taxes) in respect of the negotiation, preparation and execution of this Deed and any related documentation, (ii) all other matters in relation thereto, and (iii) the costs of the liquidation of the Issuer in a timely manner (the **Issuer Costs**).

(c)    The Issuer shall deliver to the Noteholder (both (i) in writing to Lehman Brothers Bankhaus AG (in Insolvency), c/o Dr. Michael C. Frege as Insolvency Administrator, CMS Hasche Sigle, Barckhausstrasse 12-16, 60325 Frankfurt am Main, Germany and (ii) by email to Michael.Frege@cms-hs.com) from time to time reasonably detailed invoices or other reasonable documentary evidence (together, the **Invoices**) of the Issuer Costs. The amount (if any) of those amounts referred to in Clause 2(b) as being paid by the Noteholder to the Issuer remaining following the payment of the Issuer Costs shall promptly be repaid by the Issuer to the Noteholder.

(d)    For the avoidance of doubt, the Noteholder hereby confirms that the Pre-funding Amount (as defined in the Indemnity Deed) may be used to discharge any amounts due to the Trustee under the Indemnity Deed without the need for the Trustee or Allen & Overy LLP to seek any further consents or approvals.

3.    **ASSIGNMENT**

(a)    The Trustee and the Issuer (without representation, warranty or recourse) irrevocably and unconditionally transfer and assign all of their respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all rights and priority of the Trustee and the Issuer in the Collateral and the Trustee's and the Issuer's rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transfers and assigns all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (all assets referred to in this Clause 3(a) together, the **Assigned Assets**), in each case, to the Noteholder (the **Assignment**). The Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) the executed originals of the Loan Agreement, the Charged Assets Security Documents, the Supplemental Trust Deed and any other transaction documents (which for the avoidance of doubt, shall exclude any legal opinions) executed in connection with the transactions consummated therein (in each case, to the extent the Trustee and the Issuer are in possession of the same). If the Trustee or the Issuer are not in possession of such executed original documents, the Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) such documentation, correspondence, notes of meetings or calls or e-mails that the Trustee or the Issuer (or their legal counsel) has in its possession that the Noteholder may reasonably request in order to enforce its rights, title and interest in the Assigned Assets. For the avoidance of doubt, the Assigned Assets shall include any claims or other rights relating to the Assigned Assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of LBSF and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered) (the **Case**), pending in the United States

3

Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009 (all proofs of claim together, the **Proofs of Claim**), all agreements, instruments, account statements and other documents evidencing, or relating or referred to in, such claim(s) or the Proofs of Claim, all rights to receive payment, interest, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Trustee's or the Issuer's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

(b)     In the event either the Trustee or the Issuer receives any sums or money, securities or property or other proceeds under or relating to the Assigned Assets, whether before or after the Assignment, the Trustee or the Issuer, as the case may be, shall hold the same in trust for the sole benefit of the Noteholder and shall immediately remit such sums or money, securities or property or other proceeds to the Noteholder.

(c)     The Noteholder directs the Issuer and the Issuer hereby irrevocably and unconditionally:

   (i)     releases the Trustee from all duties, obligations and liability arising following the date of this Deed to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**); and

   (ii)    discharges each of the Agents (excluding the Redemption Agent and the Calculation Agent) and the Trustee from all of their duties, obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes.

(d)     Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and the Trustee shall have no further duties, obligations or liabilities arising following the date of this Deed in respect of any Transaction Document (including, without limitation, the Loan Agreement and the Charged Assets Security Documents), and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

(e)     To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer hereby by way of security for the performance of its obligations contained in this Deed appoints the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

(f)     The Issuer hereby irrevocably appoints the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions relating to the Assigned Assets and (ii) generally exercise all and any of the powers,

4

authorities and discretions which the Issuer ought to exercise for the benefit of the
Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of
the agreements and documents relating to the Assigned Assets or otherwise. The
Issuer hereby revokes and the Trustee hereby agrees to the revocation of its
appointment as attorney of the Issuer pursuant to Clause 8(M) of the Trust Deed.

(g)    Notwithstanding the Assignment, the limitation on recourse to the Issuer in respect of
the Notes set forth in Condition 3(f)(C) shall remain in full force and effect, and the
Noteholder accordingly acknowledges and agrees that it shall look solely to the
Assigned Assets (and any other Charged Assets and Mortgaged Property, if any) for
payments to be made by the Issuer on the Notes.

(h)    The Issuer and the Trustee shall, as soon as reasonably practicable on or following the
date hereof, send a copy of this Deed to each of the Agents (excluding the
Redemption Agent and the Calculation Agent) and inform them that they have been
discharged from all of their obligations and liabilities of whatsoever nature under the
Trust Deed, the Agency Agreement and the Conditions of the Notes. The parties
hereby agree that notwithstanding anything to the contrary in the Trust Deed, the
Agency Agreement and the Conditions of the Notes, neither the Issuer nor the Trustee
shall be obliged to appoint any replacement Agents.

(i)    The Issuer and the Trustee shall, as soon as reasonably practicable on or following the
date hereof, send a notice to LBSF and LBHI in the form attached at Annex 2 hereto
informing them of the Assignment. For the avoidance of doubt, the Assignment shall
be effective notwithstanding whether LBSF and LBHI acknowledge such notice.

(j)    Subject to the Issuer and the Trustee being indemnified and secured to their
satisfaction, the Issuer and the Trustee shall take all reasonable actions and execute
and deliver all documents reasonably requested by the Noteholder to protect, perfect
and further assure the effectiveness of the Assignment and the Noteholder's rights and
remedies under this Deed or under or in respect of the Assigned Assets, including,
without limitation, executing such UCC assignments or amendments as the
Noteholder shall specify in respect of any UCC financing statements previously filed
by the Trustee or the Issuer in respect of any Charged Assets, Contracts or other
collateral.

(k)    After the Assignment has become effective, the Noteholder shall as soon as
reasonably possible deliver the Notes 'free of payment' to the repurchase account at
Euroclear.

4.    **LIABILITY**

Subject to the immediately succeeding paragraph of this Clause 4, upon the
Assignment, the Trustee shall not have any further liability (a) in respect of the Notes,
the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets
Security Documents and any other document in relation thereto and (b) any action
taken, purported to be taken or omitted to be taken by the Noteholder or the Issuer
under the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the
Charged Assets Security Documents and/or any other document in relation thereto.
Except as set forth herein, the respective rights, remedies, liabilities, obligations and
duties of the Issuer and the Noteholder under the Trust Deed, the Notes, any
documents related thereto and applicable law shall remain in full force and effect.

The Trustee shall, in any event, remain fully liable (i) to the fullest extent provided
under the Trust Deed, the Notes, the Loan Agreement, the Charged Assets Security

5

Documents, any documents in relation to any of the foregoing and applicable law for all actions taken or omitted to be taken by it prior to the effective date of the Assignment, and (ii) for any breach of its agreements and obligations under or in respect of this Deed, and the Issuer shall remain fully liable to the Noteholder, in its capacity as Noteholder or as assignee of the Trustee, (i) under or in respect of the Notes, the Trust Deed, the Loan Agreement, the Charged Assets Security Documents for all obligations of the Issuer thereunder and (ii) for any breach of the Issuer's agreements and obligations under or in respect of this Deed.

The Trustee and the Issuer agree that the Noteholder's insolvency administrator, Dr. Michael C. Frege, shall not incur any personal liability in relation to this Deed.

5.    **COUNTERPARTS**

This Deed may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of the Deed.

6.    **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999**

No third party, other than, for the purposes of Clause 4, third paragraph, Dr. Michael C. Frege, shall have any rights to enforce any term or condition of this Deed under the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists or is available apart from under that Act.

7.    **GOVERNING LAW**

This Deed and any issues or disputes arising out of or in connection with it (whether such disputes are contractual or non-contractual in nature, such as claims in tort, for breach of statute or regulation or otherwise) shall be governed by and construed in accordance with English law.

8.    **ENFORCEMENT**

(a)    The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed (including a dispute relating to the existence, validity or termination of this Deed or any non-contractual obligation arising out of or in connection with this Deed).

(b)    The Issuer confirms that it has irrevocably appointed Law Debenture Corporate Services Limited (Fifth Floor, 100 Wood Street, London EC2V 7EX, United Kingdom) as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed, without prejudice to any other mode of service allowed under any relevant law. The Issuer agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

This Deed has been entered into as a deed on the date stated at the beginning of this Deed.

6

**ANNEX 1**

To:      Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
         Dr. Michael C. Frege as Insolvency Administrator

         CMS Hasche Sigle
         Barckhausstrasse 12-16
         60325 Frankfurt am Main
         Germany

E-mail:  Michael.Frege@cms-hs.com


Copy to: HSBC Corporate Trustee Company (UK) Limited

         8 Canada Square
         London
         E14 4HQ

Email:   ctla.trustee.admin@hsbc.com


Dear Dr. Frege,

**7TH AVENUE INC. (the Issuer)**
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED (the Trustee)**
**Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711)**
**(the Notes)**

[      ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [       ] 2009 between the Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

The Issuer confirms that it has received the payment of USD 50,000 pursuant to Clause 2(a) of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

7

**ANNEX 2**

**To: Lehman Brothers Special Financing, Inc.**

Lehman Brothers
Operations, FID Mid Office Admin
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212)526-2240

Attn: Seth Konheim; e-mail: skonheim@lehman.com;
Paul Puskuldjian; e-mail: ppusk@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212) 526-8140

Attn: Kaushik Amin; e-mail: kamin@lehman.com

Lehman Brothers
Derivative Trading – London
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-2444

Attn: Andrew Morton; e-mail: amorton@lehman.com

Lehman Brothers
Central Funding Unit
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-1305

Attn: John Feraca; e-mail: joferaca@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave
New York, NY, 10019

Tel: (212) 526-6697

Attn: Neville Nagarwalla; e-mail: nneville@lehman.com

8

Lehman Brothers Special Financing, Inc.
1271 Avenue of the Americas
40th Floor
New York, New York 10020

Attention:    Michael Ferraro; e-mail: michael.ferraro@lehman.com
              Locke R. McMurray, e-mail: locke.mcmurray@lehman.com


**To:  Lehman Brothers Holdings, Inc.**

745 7th Ave 5th Floor
New York, NY, 10019

Attn.: Chief Executive Officer


**With a copy to:**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attn:  Richard P. Krasnow, Esq., e-mail: richard.krasnow@weil.com


Dear Sirs,

**7TH AVENUE INC.** (the Issuer)
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED** (the Trustee)
**Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) (the Notes)**

[     ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [     ] 2009 between the
Issuer, the Noteholder and the Trustee attached at Schedule 1 hereto.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of
Assignment.

We hereby give you notice that by Clause 3 of the Deed of Assignment, we irrevocably and
unconditionally transferred and assigned all of our respective rights, title and interest in, to
and under the Loan Agreement, the Charged Assets Security Documents (which shall include,
for the avoidance of doubt and without limitation, all our respective rights and priority in the
Collateral and our respective rights in respect of all rights, title and interest that LBSF has or
later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and
any sums of money, securities, property and other proceeds received or receivable under the
Loan Agreement and the Charged Assets Security Documents (including any claims the
Trustee or Issuer may have against any person in respect of any of the foregoing or in respect
of the Notes), and the Trustee irrevocably and unconditionally transferred and assigned all of
its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as

9

it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (together, the **Assignment**). The assigned assets include any claims or other rights relating to the assigned assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of Lehman Brothers Special Financing Inc. (**LBSF**) and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered), pending in the United States Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009.

The Assignment became effective upon receipt by the Issuer of the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment on [      ] 2009.

Additionally, we hereby give you notice that the Issuer has, to the extent provided in the Deed of Assignment, irrevocably and unconditionally released the Trustee from all duties, obligations and liability to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**). Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and, to the extent provided in the Deed of Assignment, the Trustee shall have no further duties, obligations or liabilities in respect of the Loan Agreement and the Charged Assets Security Documents, and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer by way of security for the performance of its obligations contained in the Deed of Assignment has appointed the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

The Issuer has appointed the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions of the Trust Deed relating to the Assigned Assets and (ii) generally exercise all and any of the powers, authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise.

We should be grateful if you would sign and return to each of us and to the Noteholder the attached copies of this letter to confirm that you have received this notice of such transfer. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether you acknowledge such notice.

Yours faithfully,

**7TH AVENUE INC.**

By: _____

Name: **Connan Hill**        **Scott Aitken**

Title: **Director**            **Director**

**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**


By: _____
Name:
Title:


Receipt of notice acknowledged:
**LEHMAN BROTHERS SPECIAL FINANCING, INC.**


By: _____
Name:
Title:


**LEHMAN BROTHERS HOLDINGS, INC.**

By: _____
Name:
Title:

**SCHEDULE 1**
**DEED OF ASSIGNMENT**

## SIGNATORIES

**Trustee**

EXECUTED AS A DEED by                          )
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**    )
acting by                                      )


Attorney:

Witness's signature:
Name:
Address:


**Issuer**

EXECUTED AS A DEED by          )
**7TH AVENUE INC.**            )
acting by                     )

Director

In the presence of:

Witness's signature:
Name:     SEAN MURPHY
Address:  P.O. Box 1109  GEORGE TOWN
          GRAND CAYMAN

**Conann Hill**
**Director**

**Scott Aitken**
**Director**

**Noteholder**

EXECUTED AS A DEED by                              )
**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY)**    )
acting by                                          )
**MICHAEL C. FREGE**                               )
**IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR**    )


In the presence of:

Witness's signature:
Name:
Address:

13

EXECUTION COPY

# DEED OF ASSIGNMENT

DATED 29 October 2009

BETWEEN

## HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED

## 7TH AVENUE INC.

### AND

## LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN

## DEWEY & LeBOEUF



**THIS DEED OF ASSIGNMENT** dated    29 October    2009

**BETWEEN:**

(1)    **HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**, as trustee in respect of the Notes (the **Trustee**);

(2)    **7TH AVENUE INC.**, as issuer of the Notes (the **Issuer**); and

(3)    **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN**, as holder of 100 percent of the aggregate outstanding principal amount of the Notes (the **Noteholder**).

**BACKGROUND**

(A)    On 28 August 2008 (the **Issue Date**), the Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) (the **Notes**) were issued by the Issuer. The Notes were constituted and secured by a master trust deed dated 12 September 2002 (the **Master Trust Deed**) as supplemented and modified by a supplemental trust deed dated the Issue Date made between, *inter alios*, the Trustee and the Issuer (the **Supplemental Trust Deed** and, together with the Master Trust Deed, the **Trust Deed**). The Issuer, *inter alios*, is party to an Agency Agreement in respect of a EUR2,500,000,000 Multi-Structure Secured Note Programme dated 12 September 2002 (the **Agency Agreement**), to which the Trustee has acceded.

(B)    The Notes are secured by way of a first ranking assignment by way of security of all the Issuer's rights, title and interest under (i) a term loan agreement (the **Loan Agreement**) dated the Issue Date between the Issuer, Lehman Brothers Special Financing Inc. (**LBSF**) and the Trustee, (ii) a security agreement between the Issuer, LBSF and the Trustee (the **Security Agreement**), the securities account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Securities Account Control Agreement**) and a deposit account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Deposit Account Control Agreement** and, together with the Security Agreement and the Securities Account Control Agreement, the **Charged Assets Security Documents**), in each case dated the Issue Date and entered into in respect of the Notes, and (iii) any sums or money, securities or other property received or receivable under the Loan Agreement and/or the Charged Assets Security Documents.

(C)    As from 3 October 2008, LBSF is the subject of a Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the **LBSF Proceedings**) and, as a result, demands of LBSF (or against its property) are subject to an automatic stay.

(D)    An event of default (a **Loan Event of Default**) has occurred pursuant to Clause 13.7 of the Loan Agreement as a result of the LBSF Proceedings. Pursuant to Clause 14.1 of the Loan Agreement, all amounts under the Loan Agreement have become immediately due and payable. The Loan Event of Default has resulted in an event of default pursuant to Clause 8.1 of the Security Agreement.

(E)    Pursuant to Condition 7(b)(i) of the Notes, if the loan made pursuant to the Loan Agreement (or part thereof) becomes due and repayable on a date prior to its stated repayment date (other than by reason of default in payment or an optional prepayment), the Issuer shall, forthwith upon becoming aware of such event, on

1

giving notice as soon as reasonably practicable following the date upon which the Issuer is to receive the repayment amount of such Charged Assets (or if applicable the redemption proceeds of enforcement of the Charged Assets Security Documents) (or such other period of notice as may be otherwise agreed with the Trustee unless the Trustee shall (at the expense of the Issuer) certify to the Issuer that it considers in its absolute discretion that it is in the best interests of the Noteholders that such notice be delayed or not given or an Extraordinary Resolution of the Noteholders shall otherwise direct) to the Trustee, the Principal Paying Agent and to the Noteholders in accordance with Condition 16, redeem the Notes at the Early Redemption Amount on expiry of such notice.

(F)     Clause 2 of the Supplemental Trust Deed provides that, upon enforcement of the security over the Charged Assets, the Trustee and the Issuer shall (upon consent of the holders of all outstanding Notes) effect the assignment of the Issuer's rights in respect of LBSF's rights and obligations under the Contracts (as defined in the Schedule to the Pricing Supplement in respect of the Notes) directly to the Noteholders, subject to all relevant laws and regulations and the terms of the Contracts and, upon such assignment, the Issuer will have no further liability in respect of the Notes.

(G)     In accordance with the Trust Deed and the Conditions of the Notes, the Noteholder may direct the Trustee in writing to take certain actions in respect of the Notes and to enforce rights in respect of the Mortgaged Property relating to the Notes. The Noteholder has directed the Trustee to take such action as set out in a letter dated 27 October 2009 and has indemnified the Trustee pursuant to a deed of indemnity between the Noteholder and the Trustee dated 19 August 2009 (the **Indemnity Deed**).

(H)     It is intended that this document takes effect as a deed notwithstanding the fact that a party may only execute this document under hand.

**IT IS AGREED** as follows:

1.     **INTERPRETATION**

       Capitalised terms defined in the Trust Deed, the Supplemental Trust Deed (including the Pricing Supplement appended thereto) the Loan Agreement and the Charged Assets Security Documents have, unless expressly defined in this Deed, the same meaning in this Deed.

2.     **CONDITION PRECEDENT**

(a)    The provisions of Clause 3 below (including, for the avoidance of doubt, the Assignment) shall not be effective until the Noteholder has paid to the Issuer the sum of USD 70,000. The Issuer shall immediately confirm receipt of this payment in the form attached as Annex 1 hereto. For the avoidance of doubt, the Noteholder is required to make only one payment of USD 70,000, payment of which shall be the condition precedent for the effectiveness of both Clause 3 of this Deed and Clause 3 of the Deed of Assignment between the Issuer, the Noteholder and HSBC Trustee (C.I.) Limited in respect of the Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746) issued by the Issuer on 8 December 2004.

(b)    The amount paid to the Issuer pursuant to Clause 2(a) and the amounts of USD 30,000 and USD 15,000 that were paid by the Noteholder to the Issuer in late May 2009 and early September 2009 shall be applied by the Issuer only to cover (i) the Issuer's costs and expenses in full in respect of action taken (including legal advice

2

and any applicable value added taxes) in respect of the negotiation, preparation and execution of this Deed and any related documentation, (ii) all other matters in relation thereto, and (iii) the costs of the liquidation of the Issuer in a timely manner (the **Issuer Costs**).

(c)    The Issuer shall deliver to the Noteholder (both (i) in writing to Lehman Brothers Bankhaus AG (in Insolvency), c/o Dr. Michael C. Frege as Insolvency Administrator, CMS Hasche Sigle, Barckhausstrasse 12-16, 60325 Frankfurt am Main, Germany and (ii) by email to Michael.Frege@cms-hs.com) from time to time reasonably detailed invoices or other reasonable documentary evidence (together, the **Invoices**) of the Issuer Costs. The amount (if any) of those amounts referred to in Clause 2(b) as being paid by the Noteholder to the Issuer remaining following the payment of the Issuer Costs shall promptly be repaid by the Issuer to the Noteholder.

(d)    For the avoidance of doubt, the Noteholder hereby confirms that the Pre-funding Amount (as defined in the Indemnity Deed) may be used to discharge any amounts due to the Trustee under the Indemnity Deed without the need for the Trustee or Allen & Overy LLP to seek any further consents or approvals.

3.    **ASSIGNMENT**

(a)    The Trustee and the Issuer (without representation, warranty or recourse) irrevocably and unconditionally transfer and assign all of their respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all rights and priority of the Trustee and the Issuer in the Collateral and the Trustee's and the Issuer's rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transfers and assigns all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (all assets referred to in this Clause 3(a) together, the **Assigned Assets**), in each case, to the Noteholder (the **Assignment**). The Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) the executed originals of the Loan Agreement, the Charged Assets Security Documents, the Supplemental Trust Deed and any other transaction documents (which for the avoidance of doubt, shall exclude any legal opinions) executed in connection with the transactions consummated therein (in each case, to the extent the Trustee and the Issuer are in possession of the same). If the Trustee or the Issuer are not in possession of such executed original documents, the Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) such documentation, correspondence, notes of meetings or calls or e-mails that the Trustee or the Issuer (or their legal counsel) has in its possession that the Noteholder may reasonably request in order to enforce its rights, title and interest in the Assigned Assets. For the avoidance of doubt, the Assigned Assets shall include any claims or other rights relating to the Assigned Assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of LBSF and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered) (the **Case**), pending in the United States

3

Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009 (all proofs of claim together, the **Proofs of Claim**), all agreements, instruments, account statements and other documents evidencing, or relating or referred to in, such claim(s) or the Proofs of Claim, all rights to receive payment, interest, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Trustee's or the Issuer's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

(b)    In the event either the Trustee or the Issuer receives any sums or money, securities or property or other proceeds under or relating to the Assigned Assets, whether before or after the Assignment, the Trustee or the Issuer, as the case may be, shall hold the same in trust for the sole benefit of the Noteholder and shall immediately remit such sums or money, securities or property or other proceeds to the Noteholder.

(c)    The Noteholder directs the Issuer and the Issuer hereby irrevocably and unconditionally:

(i)    releases the Trustee from all duties, obligations and liability arising following the date of this Deed to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**); and

(ii)    discharges each of the Agents (excluding the Redemption Agent and the Calculation Agent) and the Trustee from all of their duties, obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes.

(d)    Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and the Trustee shall have no further duties, obligations or liabilities arising following the date of this Deed in respect of any Transaction Document (including, without limitation, the Loan Agreement and the Charged Assets Security Documents), and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

(e)    To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer hereby by way of security for the performance of its obligations contained in this Deed appoints the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

(f)    The Issuer hereby irrevocably appoints the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions relating to the Assigned Assets and (ii) generally exercise all and any of the powers,

4

authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise. The Issuer hereby revokes and the Trustee hereby agrees to the revocation of its appointment as attorney of the Issuer pursuant to Clause 8(M) of the Trust Deed.

(g)     Notwithstanding the Assignment, the limitation on recourse to the Issuer in respect of the Notes set forth in Condition 3(f)(C) shall remain in full force and effect, and the Noteholder accordingly acknowledges and agrees that it shall look solely to the Assigned Assets (and any other Charged Assets and Mortgaged Property, if any) for payments to be made by the Issuer on the Notes.

(h)     The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a copy of this Deed to each of the Agents (excluding the Redemption Agent and the Calculation Agent) and inform them that they have been discharged from all of their obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes. The parties hereby agree that notwithstanding anything to the contrary in the Trust Deed, the Agency Agreement and the Conditions of the Notes, neither the Issuer nor the Trustee shall be obliged to appoint any replacement Agents.

(i)     The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a notice to LBSF and LBHI in the form attached at Annex 2 hereto informing them of the Assignment. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether LBSF and LBHI acknowledge such notice.

(j)     Subject to the Issuer and the Trustee being indemnified and secured to their satisfaction, the Issuer and the Trustee shall take all reasonable actions and execute and deliver all documents reasonably requested by the Noteholder to protect, perfect and further assure the effectiveness of the Assignment and the Noteholder's rights and remedies under this Deed or under or in respect of the Assigned Assets, including, without limitation, executing such UCC assignments or amendments as the Noteholder shall specify in respect of any UCC financing statements previously filed by the Trustee or the Issuer in respect of any Charged Assets, Contracts or other collateral.

(k)     After the Assignment has become effective, the Noteholder shall as soon as reasonably possible deliver the Notes 'free of payment' to the repurchase account at Euroclear.

4.     **LIABILITY**

Subject to the immediately succeeding paragraph of this Clause 4, upon the Assignment, the Trustee shall not have any further liability (a) in respect of the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and any other document in relation thereto and (b) any action taken, purported to be taken or omitted to be taken by the Noteholder or the Issuer under the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and/or any other document in relation thereto. Except as set forth herein, the respective rights, remedies, liabilities, obligations and duties of the Issuer and the Noteholder under the Trust Deed, the Notes, any documents related thereto and applicable law shall remain in full force and effect.

The Trustee shall, in any event, remain fully liable (i) to the fullest extent provided under the Trust Deed, the Notes, the Loan Agreement, the Charged Assets Security

5

Documents, any documents in relation to any of the foregoing and applicable law for all actions taken or omitted to be taken by it prior to the effective date of the Assignment, and (ii) for any breach of its agreements and obligations under or in respect of this Deed, and the Issuer shall remain fully liable to the Noteholder, in its capacity as Noteholder or as assignee of the Trustee, (i) under or in respect of the Notes, the Trust Deed, the Loan Agreement, the Charged Assets Security Documents for all obligations of the Issuer thereunder and (ii) for any breach of the Issuer's agreements and obligations under or in respect of this Deed.

The Trustee and the Issuer agree that the Noteholder's insolvency administrator, Dr. Michael C. Frege, shall not incur any personal liability in relation to this Deed.

5.    **COUNTERPARTS**

This Deed may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of the Deed.

6.    **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999**

No third party, other than, for the purposes of Clause 4, third paragraph, Dr. Michael C. Frege, shall have any rights to enforce any term or condition of this Deed under the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists or is available apart from under that Act.

7.    **GOVERNING LAW**

This Deed and any issues or disputes arising out of or in connection with it (whether such disputes are contractual or non-contractual in nature, such as claims in tort, for breach of statute or regulation or otherwise) shall be governed by and construed in accordance with English law.

8.    **ENFORCEMENT**

(a)    The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed (including a dispute relating to the existence, validity or termination of this Deed or any non-contractual obligation arising out of or in connection with this Deed).

(b)    The Issuer confirms that it has irrevocably appointed Law Debenture Corporate Services Limited (Fifth Floor, 100 Wood Street, London EC2V 7EX, United Kingdom) as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed, without prejudice to any other mode of service allowed under any relevant law. The Issuer agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

This Deed has been entered into as a deed on the date stated at the beginning of this Deed.

6

## ANNEX 1

To:      Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
         Dr. Michael C. Frege as Insolvency Administrator

         CMS Hasche Sigle
         Barckhausstrasse 12-16
         60325 Frankfurt am Main
         Germany

E-mail:  Michael.Frege@cms-hs.com


Copy to: HSBC Corporate Trustee Company (UK) Limited

         8 Canada Square
         London
         E14 4HQ

Email:   ctla.trustee.admin@hsbc.com


Dear Dr. Frege,

### 7TH AVENUE INC. (the **Issuer**)
### HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED (the **Trustee**)
### Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711)
### (the **Notes**)

[      ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [      ] 2009 between the Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

The Issuer confirms that it has received the payment of USD 50,000 pursuant to Clause 2(a) of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

7

# ANNEX 2

**To:  Lehman Brothers Special Financing, Inc.**

Lehman Brothers
Operations, FID Mid Office Admin
745 7th Ave 5th Floor
New York, NY, 10019

Tel:  (212)526-2240

Attn:  Seth Konheim; e-mail: skonheim@lehman.com;
Paul Puskuldjian; e-mail: ppusk@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave 5th Floor
New York, NY, 10019

Tel:  (212) 526-8140

Attn:  Kaushik Amin; e-mail: kamin@lehman.com

Lehman Brothers
Derivative Trading – London
25 Bank Street
London E14 5LE

Tel:  44-(0)20-7103-2444

Attn:  Andrew Morton; e-mail: amorton@lehman.com

Lehman Brothers
Central Funding Unit
25 Bank Street
London E14 5LE

Tel:  44-(0)20-7103-1305

Attn:  John Feraca; e-mail: joferaca@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave
New York, NY, 10019

Tel:  (212) 526-6697

Attn:  Neville Nagarwalla; e-mail: nneville@lehman.com

8

Lehman Brothers Special Financing, Inc.
1271 Avenue of the Americas
40th Floor
New York, New York 10020

Attention:     Michael Ferraro; e-mail: michael.ferraro@lehman.com
               Locke R. McMurray, e-mail: locke.mcmurray@lehman.com


To:  **Lehman Brothers Holdings, Inc.**

745 7th Ave 5th Floor
New York, NY, 10019

Attn.: Chief Executive Officer


**With a copy to:**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attn:  Richard P. Krasnow, Esq., e-mail: richard.krasnow@weil.com


Dear Sirs,

**7TH AVENUE INC.** (the Issuer)
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED** (the Trustee)
**Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711)** (the Notes)

                                                              [      ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [      ] 2009 between the
Issuer, the Noteholder and the Trustee attached at Schedule 1 hereto.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of
Assignment.

We hereby give you notice that by Clause 3 of the Deed of Assignment, we irrevocably and
unconditionally transferred and assigned all of our respective rights, title and interest in, to
and under the Loan Agreement, the Charged Assets Security Documents (which shall include,
for the avoidance of doubt and without limitation, all our respective rights and priority in the
Collateral and our respective rights in respect of all rights, title and interest that LBSF has or
later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and
any sums of money, securities, property and other proceeds received or receivable under the
Loan Agreement and the Charged Assets Security Documents (including any claims the
Trustee or Issuer may have against any person in respect of any of the foregoing or in respect
of the Notes), and the Trustee irrevocably and unconditionally transferred and assigned all of
its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as

9

it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (together, the **Assignment**). The assigned assets include any claims or other rights relating to the assigned assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of Lehman Brothers Special Financing Inc. (**LBSF**) and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered), pending in the United States Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009.

The Assignment became effective upon receipt by the Issuer of the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment on [      ] 2009.

Additionally, we hereby give you notice that the Issuer has, to the extent provided in the Deed of Assignment, irrevocably and unconditionally released the Trustee from all duties, obligations and liability to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**). Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and, to the extent provided in the Deed of Assignment, the Trustee shall have no further duties, obligations or liabilities in respect of the Loan Agreement and the Charged Assets Security Documents, and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer by way of security for the performance of its obligations contained in the Deed of Assignment has appointed the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

The Issuer has appointed the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions of the Trust Deed relating to the Assigned Assets and (ii) generally exercise all and any of the powers, authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise.

We should be grateful if you would sign and return to each of us and to the Noteholder the attached copies of this letter to confirm that you have received this notice of such transfer. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether you acknowledge such notice.

10

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**

By: _____
Name:
Title:

Receipt of notice acknowledged:
**LEHMAN BROTHERS SPECIAL FINANCING, INC.**

By: _____
Name:
Title:

**LEHMAN BROTHERS HOLDINGS, INC.**

By: _____
Name:
Title:

**SCHEDULE 1**
**DEED OF ASSIGNMENT**

**SIGNATORIES**

**Trustee**

| | |
|---|---|
| EXECUTED AS A DEED by | ) |
| **HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED** | ) |
| acting by | ) |

Attorney:

Witness's signature:
Name:
Address:

**Issuer**

| | |
|---|---|
| EXECUTED AS A DEED by | ) |
| **7TH AVENUE INC.** | ) |
| acting by | ) |

Director

In the presence of:

Witness's signature:
Name:
Address:

**Noteholder**

| | |
|---|---|
| EXECUTED AS A DEED by | ) |
| **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY)** | ) |
| acting by | ) |
| **MICHAEL C. FREGE** | ) |
| **IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR** | ) |

In the presence of:

Witness's signature: *Charlotte Schildt*
Name: *Dr. Charlotte Schildt*
Address: *Barckhausstraße 12-16*
*60325 Frankfurt am Main*

13



**EXECUTION COPY**

# DEED OF ASSIGNMENT

### DATED 29 OCTOBER 2009

### BETWEEN

**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**

**7TH AVENUE INC.**

**AND**

**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY),
FRANKFURT AM MAIN**

## DEWEY & LeBOEUF



**THIS DEED OF ASSIGNMENT** dated 29 OCTOBER    2009

**BETWEEN:**

(1)    **HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**, as trustee in respect of the Notes (the **Trustee**);

(2)    **7TH AVENUE INC.**, as issuer of the Notes (the **Issuer**); and

(3)    **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY), FRANKFURT AM MAIN**, as holder of 100 percent of the aggregate outstanding principal amount of the Notes (the **Noteholder**).

**BACKGROUND**

(A)    On 28 August 2008 (the **Issue Date**), the Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) (the **Notes**) were issued by the Issuer. The Notes were constituted and secured by a master trust deed dated 12 September 2002 (the **Master Trust Deed**) as supplemented and modified by a supplemental trust deed dated the Issue Date made between, *inter alios*, the Trustee and the Issuer (the **Supplemental Trust Deed** and, together with the Master Trust Deed, the **Trust Deed**). The Issuer, *inter alios*, is party to an Agency Agreement in respect of a EUR2,500,000,000 Multi-Structure Secured Note Programme dated 12 September 2002 (the **Agency Agreement**), to which the Trustee has acceded.

(B)    The Notes are secured by way of a first ranking assignment by way of security of all the Issuer's rights, title and interest under (i) a term loan agreement (the **Loan Agreement**) dated the Issue Date between the Issuer, Lehman Brothers Special Financing Inc. (**LBSF**) and the Trustee, (ii) a security agreement between the Issuer, LBSF and the Trustee (the **Security Agreement**), the securities account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Securities Account Control Agreement**) and a deposit account control agreement between the Issuer, LBSF, HSBC Bank USA, National Association and the Trustee (the **Deposit Account Control Agreement** and, together with the Security Agreement and the Securities Account Control Agreement, the **Charged Assets Security Documents**), in each case dated the Issue Date and entered into in respect of the Notes, and (iii) any sums or money, securities or other property received or receivable under the Loan Agreement and/or the Charged Assets Security Documents.

(C)    As from 3 October 2008, LBSF is the subject of a Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the **LBSF Proceedings**) and, as a result, demands of LBSF (or against its property) are subject to an automatic stay.

(D)    An event of default (a **Loan Event of Default**) has occurred pursuant to Clause 13.7 of the Loan Agreement as a result of the LBSF Proceedings. Pursuant to Clause 14.1 of the Loan Agreement, all amounts under the Loan Agreement have become immediately due and payable. The Loan Event of Default has resulted in an event of default pursuant to Clause 8.1 of the Security Agreement.

(E)    Pursuant to Condition 7(b)(i) of the Notes, if the loan made pursuant to the Loan Agreement (or part thereof) becomes due and repayable on a date prior to its stated repayment date (other than by reason of default in payment or an optional prepayment), the Issuer shall, forthwith upon becoming aware of such event, on

1

giving notice as soon as reasonably practicable following the date upon which the Issuer is to receive the repayment amount of such Charged Assets (or if applicable the redemption proceeds of enforcement of the Charged Assets Security Documents) (or such other period of notice as may be otherwise agreed with the Trustee unless the Trustee shall (at the expense of the Issuer) certify to the Issuer that it considers in its absolute discretion that it is in the best interests of the Noteholders that such notice be delayed or not given or an Extraordinary Resolution of the Noteholders shall otherwise direct) to the Trustee, the Principal Paying Agent and to the Noteholders in accordance with Condition 16, redeem the Notes at the Early Redemption Amount on expiry of such notice.

(F)     Clause 2 of the Supplemental Trust Deed provides that, upon enforcement of the security over the Charged Assets, the Trustee and the Issuer may (upon consent of the holders of all outstanding Notes) effect the assignment of the Issuer's rights in respect of LBSF's rights and obligations under the Contracts (as defined in the Schedule to the Pricing Supplement in respect of the Notes) directly to the Noteholders, subject to all relevant laws and regulations and the terms of the Contracts and, upon such assignment, the Issuer will have no further liability in respect of the Notes.

(G)     In accordance with the Trust Deed and the Conditions of the Notes, the Noteholder may direct the Trustee in writing to take certain actions in respect of the Notes and to enforce rights in respect of the Mortgaged Property relating to the Notes. The Noteholder has directed the Trustee to take such action as set out in a letter dated 27 October 2009 and has indemnified the Trustee pursuant to a deed of indemnity between the Noteholder and the Trustee dated 19 August 2009 (the **Indemnity Deed**).

(H)     It is intended that this document takes effect as a deed notwithstanding the fact that a party may only execute this document under hand.

**IT IS AGREED** as follows:

1.      **INTERPRETATION**

Capitalised terms defined in the Trust Deed, the Supplemental Trust Deed (including the Pricing Supplement appended thereto) the Loan Agreement and the Charged Assets Security Documents have, unless expressly defined in this Deed, the same meaning in this Deed.

2.      **CONDITION PRECEDENT**

(a)     The provisions of Clause 3 below (including, for the avoidance of doubt, the Assignment) shall not be effective until the Noteholder has paid to the Issuer the sum of USD 70,000.The Issuer shall immediately confirm receipt of this payment in the form attached as Annex 1 hereto. For the avoidance of doubt, the Noteholder is required to make only one payment of USD 70,000, payment of which shall be the condition precedent for the effectiveness of both Clause 3 of this Deed and Clause 3 of the Deed of Assignment between the Issuer, the Noteholder and HSBC Trustee (C.I.) Limited in respect of the Series 3 USD200,000,000 Floating Rate Notes due 2008 (ISIN: XS0207405746) issued by the Issuer on 8 December 2004.

(b)     The amount paid to the Issuer pursuant to Clause 2(a) and the amounts of USD 30,000 and USD 15,000 that were paid by the Noteholder to the Issuer in late May 2009 and early September 2009 shall be applied by the Issuer only to cover (i) the Issuer's costs and expenses in full in respect of action taken (including legal advice

2

and any applicable value added taxes) in respect of the negotiation, preparation and execution of this Deed and any related documentation, (ii) all other matters in relation thereto, and (iii) the costs of the liquidation of the Issuer in a timely manner (the **Issuer Costs**).

(c)    The Issuer shall deliver to the Noteholder (both (i) in writing to Lehman Brothers Bankhaus AG (in Insolvency), c/o Dr. Michael C. Frege as Insolvency Administrator, CMS Hasche Sigle, Barckhausstrasse 12-16, 60325 Frankfurt am Main, Germany and (ii) by email to Michael.Frege@cms-hs.com) from time to time reasonably detailed invoices or other reasonable documentary evidence (together, the **Invoices**) of the Issuer Costs. The amount (if any) of those amounts referred to in Clause 2(b) as being paid by the Noteholder to the Issuer remaining following the payment of the Issuer Costs shall promptly be repaid by the Issuer to the Noteholder.

(d)    For the avoidance of doubt, the Noteholder hereby confirms that the Pre-funding Amount (as defined in the Indemnity Deed) may be used to discharge any amounts due to the Trustee under the Indemnity Deed without the need for the Trustee or Allen & Overy LLP to seek any further consents or approvals.

3.    **ASSIGNMENT**

(a)    The Trustee and the Issuer (without representation, warranty or recourse) irrevocably and unconditionally transfer and assign all of their respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all rights and priority of the Trustee and the Issuer in the Collateral and the Trustee's and the Issuer's rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transfers and assigns all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (all assets referred to in this Clause 3(a) together, the **Assigned Assets**), in each case, to the Noteholder (the **Assignment**). The Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) the executed originals of the Loan Agreement, the Charged Assets Security Documents, the Supplemental Trust Deed and any other transaction documents (which for the avoidance of doubt, shall exclude any legal opinions) executed in connection with the transactions consummated therein (in each case, to the extent the Trustee and the Issuer are in possession of the same). If the Trustee or the Issuer are not in possession of such executed original documents, the Trustee and the Issuer shall promptly deliver to the Noteholder (and/or procure that their legal counsel promptly delivers to the Noteholder) such documentation, correspondence, notes of meetings or calls or e-mails that the Trustee or the Issuer (or their legal counsel) has in its possession that the Noteholder may reasonably request in order to enforce its rights, title and interest in the Assigned Assets.  For the avoidance of doubt, the Assigned Assets shall include any claims or other rights relating to the Assigned Assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of LBSF and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered) (the **Case**), pending in the United States

3



Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009 (all proofs of claim together, the **Proofs of Claim**), all agreements, instruments, account statements and other documents evidencing, or relating or referred to in, such claim(s) or the Proofs of Claim, all rights to receive payment, interest, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Trustee's or the Issuer's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

(b)     In the event either the Trustee or the Issuer receives any sums or money, securities or property or other proceeds under or relating to the Assigned Assets, whether before or after the Assignment, the Trustee or the Issuer, as the case may be, shall hold the same in trust for the sole benefit of the Noteholder and shall immediately remit such sums or money, securities or property or other proceeds to the Noteholder.

(c)     The Noteholder directs the Issuer and the Issuer hereby irrevocably and unconditionally:

    (i)     releases the Trustee from all duties, obligations and liability arising following the date of this Deed to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**); and

    (ii)    discharges each of the Agents (excluding the Redemption Agent and the Calculation Agent) and the Trustee from all of their duties, obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes.

(d)     Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and the Trustee shall have no further duties, obligations or liabilities arising following the date of this Deed in respect of any Transaction Document (including, without limitation, the Loan Agreement and the Charged Assets Security Documents), and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

(e)     To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer hereby by way of security for the performance of its obligations contained in this Deed appoints the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

(f)     The Issuer hereby irrevocably appoints the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions relating to the Assigned Assets and (ii) generally exercise all and any of the powers,

4



authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise. The Issuer hereby revokes and the Trustee hereby agrees to the revocation of its appointment as attorney of the Issuer pursuant to Clause 8(M) of the Trust Deed.

(g)    Notwithstanding the Assignment, the limitation on recourse to the Issuer in respect of the Notes set forth in Condition 3(f)(C) shall remain in full force and effect, and the Noteholder accordingly acknowledges and agrees that it shall look solely to the Assigned Assets (and any other Charged Assets and Mortgaged Property, if any) for payments to be made by the Issuer on the Notes.

(h)    The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a copy of this Deed to each of the Agents (excluding the Redemption Agent and the Calculation Agent) and inform them that they have been discharged from all of their obligations and liabilities of whatsoever nature under the Trust Deed, the Agency Agreement and the Conditions of the Notes. The parties hereby agree that notwithstanding anything to the contrary in the Trust Deed, the Agency Agreement and the Conditions of the Notes, neither the Issuer nor the Trustee shall be obliged to appoint any replacement Agents.

(i)    The Issuer and the Trustee shall, as soon as reasonably practicable on or following the date hereof, send a notice to LBSF and LBHI in the form attached at Annex 2 hereto informing them of the Assignment. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether LBSF and LBHI acknowledge such notice.

(j)    Subject to the Issuer and the Trustee being indemnified and secured to their satisfaction, the Issuer and the Trustee shall take all reasonable actions and execute and deliver all documents reasonably requested by the Noteholder to protect, perfect and further assure the effectiveness of the Assignment and the Noteholder's rights and remedies under this Deed or under or in respect of the Assigned Assets, including, without limitation, executing such UCC assignments or amendments as the Noteholder shall specify in respect of any UCC financing statements previously filed by the Trustee or the Issuer in respect of any Charged Assets, Contracts or other collateral.

(k)    After the Assignment has become effective, the Noteholder shall as soon as reasonably possible deliver the Notes 'free of payment' to the repurchase account at Euroclear.

4.    **LIABILITY**

Subject to the immediately succeeding paragraph of this Clause 4, upon the Assignment, the Trustee shall not have any further liability (a) in respect of the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and any other document in relation thereto and (b) any action taken, purported to be taken or omitted to be taken by the Noteholder or the Issuer under the Notes, the Trust Deed, the Agency Agreement, the Loan Agreement, the Charged Assets Security Documents and/or any other document in relation thereto. Except as set forth herein, the respective rights, remedies, liabilities, obligations and duties of the Issuer and the Noteholder under the Trust Deed, the Notes, any documents related thereto and applicable law shall remain in full force and effect.

The Trustee shall, in any event, remain fully liable (i) to the fullest extent provided under the Trust Deed, the Notes, the Loan Agreement, the Charged Assets Security

5



Documents, any documents in relation to any of the foregoing and applicable law for all actions taken or omitted to be taken by it prior to the effective date of the Assignment, and (ii) for any breach of its agreements and obligations under or in respect of this Deed, and the Issuer shall remain fully liable to the Noteholder, in its capacity as Noteholder or as assignee of the Trustee, (i) under or in respect of the Notes, the Trust Deed, the Loan Agreement, the Charged Assets Security Documents for all obligations of the Issuer thereunder and (ii) for any breach of the Issuer's agreements and obligations under or in respect of this Deed.

The Trustee and the Issuer agree that the Noteholder's insolvency administrator, Dr. Michael C. Frege, shall not incur any personal liability in relation to this Deed.

5.    **COUNTERPARTS**

This Deed may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of the Deed.

6.    **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999**

No third party, other than, for the purposes of Clause 4, third paragraph, Dr. Michael C. Frege, shall have any rights to enforce any term or condition of this Deed under the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists or is available apart from under that Act.

7.    **GOVERNING LAW**

This Deed and any issues or disputes arising out of or in connection with it (whether such disputes are contractual or non-contractual in nature, such as claims in tort, for breach of statute or regulation or otherwise) shall be governed by and construed in accordance with English law.

8.    **ENFORCEMENT**

(a)    The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed (including a dispute relating to the existence, validity or termination of this Deed or any non-contractual obligation arising out of or in connection with this Deed).

(b)    The Issuer confirms that it has irrevocably appointed Law Debenture Corporate Services Limited (Fifth Floor, 100 Wood Street, London EC2V 7EX, United Kingdom) as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed, without prejudice to any other mode of service allowed under any relevant law. The Issuer agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

This Deed has been entered into as a deed on the date stated at the beginning of this Deed.

6



**ANNEX 1**

To:     Lehman Brothers Bankhaus AG (in Insolvency) (the **Noteholder**)
        Dr. Michael C. Frege as Insolvency Administrator

        CMS Hasche Sigle
        Barckhausstrasse 12-16
        60325 Frankfurt am Main
        Germany

E-mail: Michael.Frege@cms-hs.com


Copy to: HSBC Corporate Trustee Company (UK) Limited

         8 Canada Square
         London
         E14 4HQ

Email:   ctla.trustee.admin@hsbc.com


Dear Dr. Frege,

**7TH AVENUE INC. (the Issuer)**
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED (the Trustee)**
**Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711)**
**(the Notes)**

                                                            [    ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [        ] 2009 between the
Issuer, the Trustee and the Noteholder.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of
Assignment.

The Issuer confirms that it has received the payment of USD 50,000 pursuant to Clause 2(a)
of the Deed of Assignment.

The provisions of Clause 3 of the Deed of Assignment, including the Assignment, have
therefore become effective.

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

7



**ANNEX 2**

**To: Lehman Brothers Special Financing, Inc.**

Lehman Brothers
Operations, FID Mid Office Admin
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212)526-2240

Attn: Seth Konheim; e-mail: skonheim@lehman.com;
Paul Puskuldjian; e-mail: ppusk@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave 5th Floor
New York, NY, 10019

Tel: (212) 526-8140

Attn: Kaushik Amin; e-mail: kamin@lehman.com

Lehman Brothers
Derivative Trading – London
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-2444

Attn: Andrew Morton; e-mail: amorton@lehman.com

Lehman Brothers
Central Funding Unit
25 Bank Street
London E14 5LE

Tel: 44-(0)20-7103-1305

Attn: John Feraca; e-mail: joferaca@lehman.com

Lehman Brothers
Derivative Trading
745 7th Ave
New York, NY, 10019

Tel: (212) 526-6697

Attn: Neville Nagarwalla; e-mail: nneville@lehman.com

8

Lehman Brothers Special Financing, Inc.
1271 Avenue of the Americas
40th Floor
New York, New York 10020

Attention:     Michael Ferraro; e-mail: michael.ferraro@lehman.com
               Locke R. McMurray, e-mail: locke.mcmurray@lehman.com


**To:  Lehman Brothers Holdings, Inc.**

745 7th Ave 5th Floor
New York, NY, 10019

Attn.: Chief Executive Officer


**With a copy to:**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attn: Richard P. Krasnow, Esq., e-mail: richard.krasnow@weil.com


Dear Sirs,

**7TH AVENUE INC. (the Issuer)**
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED (the Trustee)**
**Series 4 USD1,000,000,000 Floating Rate Notes due 2013 (ISIN: XS0385832711) (the Notes)**

                                                        [     ] 2009

We refer to the deed of assignment (the **Deed of Assignment**) dated [       ] 2009 between the Issuer, the Noteholder and the Trustee attached at Schedule 1 hereto.

Capitalised terms not otherwise defined herein shall bear the same meaning as in the Deed of Assignment.

We hereby give you notice that by Clause 3 of the Deed of Assignment, we irrevocably and unconditionally transferred and assigned all of our respective rights, title and interest in, to and under the Loan Agreement, the Charged Assets Security Documents (which shall include, for the avoidance of doubt and without limitation, all our respective rights and priority in the Collateral and our respective rights in respect of all rights, title and interest that LBSF has or later acquires in, to and under the Contracts, together with all proceeds of the Contracts) and any sums of money, securities, property and other proceeds received or receivable under the Loan Agreement and the Charged Assets Security Documents (including any claims the Trustee or Issuer may have against any person in respect of any of the foregoing or in respect of the Notes), and the Trustee irrevocably and unconditionally transferred and assigned all of its rights, title and interest in, to and under the Trust Deed, the Agency Agreement insofar as

9



it pertains to the Notes, the Conditions of the Notes, and any sums of money, securities, property and other proceeds received or receivable thereunder (together, the **Assignment**). The assigned assets include any claims or other rights relating to the assigned assets that the Trustee or the Issuer have asserted in the United States bankruptcy cases of Lehman Brothers Special Financing Inc. (**LBSF**) and Lehman Brothers Holdings Inc. (**LBHI**), administratively consolidated with the bankruptcy cases of certain of LBSF's and LBHI's related entities under In re Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 (JPM) (Jointly Administered), pending in the United States Bankruptcy Court for the Southern District of New York, including, without limitation, the right, title and interest in the proof of claim filed by (i) the Issuer against LBSF, (ii) the Issuer against LBHI, (iii) the Trustee against LBSF and (iv) the Trustee against LBHI, each such proof of claim dated 18 September 2009.

The Assignment became effective upon receipt by the Issuer of the payment of USD 70,000 pursuant to Clause 2(a) of the Deed of Assignment on [       ] 2009.

Additionally, we hereby give you notice that the Issuer has, to the extent provided in the Deed of Assignment, irrevocably and unconditionally released the Trustee from all duties, obligations and liability to the Noteholder and each other secured party in respect of the trusts created by the Trust Deed (the **Trust**). Upon the Assignment, the Trust shall terminate in full, the Trustee shall no longer be an assignee of the Issuer and, to the extent provided in the Deed of Assignment, the Trustee shall have no further duties, obligations or liabilities in respect of the Loan Agreement and the Charged Assets Security Documents, and the Noteholder shall succeed to all rights and interests of the Trustee under the Trust Deed, the Loan Agreement and the Charged Assets Security Documents including rights of enforcement contained therein. For the avoidance of doubt, the Trustee shall no longer be included in the definition of "Lender" in respect of the Securities Account Control Agreement and the Deposit Account Control Agreement or the definition of "Secured Party" in respect of the Security Agreement, and the Noteholder shall be substituted for the Trustee as such "Lender" and "Secured Party" thereunder.

To the extent that any of the Assigned Assets cannot be transferred and assigned by the Issuer to the Noteholder, the Issuer by way of security for the performance of its obligations contained in the Deed of Assignment has appointed the Noteholder to be its true and lawful attorney for and in its name to do any act, matter or thing which the Noteholder considers bona fide necessary to enforce its rights, title and interest in the Assigned Assets.

The Issuer has appointed the Noteholder to be its attorney and in its name to (i) exercise and do any assurances, acts and things which the Issuer ought to execute or do for the benefit of the Noteholder under the covenants and provisions of the Trust Deed relating to the Assigned Assets and (ii) generally exercise all and any of the powers, authorities and discretions which the Issuer ought to exercise for the benefit of the Noteholder relating to the Assigned Assets conferred by or pursuant to the terms of the agreements and documents relating to the Assigned Assets or otherwise.

We should be grateful if you would sign and return to each of us and to the Noteholder the attached copies of this letter to confirm that you have received this notice of such transfer. For the avoidance of doubt, the Assignment shall be effective notwithstanding whether you acknowledge such notice.

10

Yours faithfully,

**7TH AVENUE INC.**

By: _____
Name:
Title:

**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**


By: _____
Name:
Title:


Receipt of notice acknowledged:
**LEHMAN BROTHERS SPECIAL FINANCING, INC.**


By: _____
Name:
Title:


**LEHMAN BROTHERS HOLDINGS, INC.**

By: _____
Name:
Title:

11

**SCHEDULE 1**
**DEED OF ASSIGNMENT**

12



## SIGNATORIES

**Trustee**

EXECUTED AS A DEED by                              )
**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**    )
acting by                                          )

Attorney: JASON BLONDELL
Witness's signature: 
Name: J. ACKTHORN
Address: c/o 8, CANADA SQUARE, LONDON E14 5HQ

**Issuer**

EXECUTED AS A DEED by          )
**7TH AVENUE INC.**            )
acting by                      )

Director

In the presence of:

Witness's signature:
Name:
Address:

**Noteholder**

EXECUTED AS A DEED by                              )
**LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENCY)**    )
acting by                                          )
**MICHAEL C. FREGE**                               )
**IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR**    )

In the presence of:

Witness's signature:
Name:
Address:

13