**Objection Deadline: January 6, 2010 at 4:00 p.m. (Eastern)**
**Hearing Date and Time: January 13, 2010 at 10:00 a.m. (Eastern)**

MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel. (212) 506-2500
Fax (212) 262-1910
Brian Trust (BT-0347)
Frederick D. Hyman (FH-7832)
Jeffrey G. Tougas (JT-5533)

*COUNSEL TO SOCIÉTÉ GÉNÉRALE AND
CANADIAN IMPERIAL BANK OF COMMERCE*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: LEHMAN BROTHERS HOLDINGS INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 08-13555 (JMP) <br><br> (Jointly Administered) |

**OBJECTION OF SOCIETE GENERALE AND
CANADIAN IMPERIAL BANK OF COMMERCE TO DEBTORS' MOTION
PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 3007 AND 9019(b) FOR APPROVAL OF
(I) CLAIM OBJECTION PROCEDURES AND (II) SETTLEMENT PROCEDURES**

TO:   THE HONORABLE JUDGE JAMES M. PECK
      UNITED STATES BANKRUPTCY JUDGE:

Société Générale and certain of its affiliates (collectively, "**SG**") and Canadian Imperial

Bank of Commerce and certain of its affiliates (collectively, "**CIBC**") by and through their

undersigned counsel, hereby file this objection (the "**Objection**") to the Motion of Lehman

Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors in the above-referenced chapter 11

17611402

cases (together with LBHI, the "**Debtors**") pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for approval of (I) certain claim objection procedures and (II) certain settlement procedures [Docket No. 6374] (the "**Motion**").[1] In support of this Objection, SG and CIBC respectfully state the following:

## PRELIMINARY STATEMENT

The Debtors request, as they have on several prior occasions, certain unprecedented claim administration protocols that shift burdens traditionally borne by chapter 11 debtors from the debtors to the estates' many creditors. The Debtors cite as justification for the protocols the very large size, by almost any measure, of these cases (a fact that is beyond dispute) and the highly-laudable goal of reducing the Court's administrative burden (which goal SG and CIBC support and share). While certain departures from statutorily- and rule-prescribed claims resolution protocols may be appropriate, the radical departure from the protocols established by the Bankruptcy Code and Bankruptcy Rules, as proposed in the Motion, go far beyond what is reasonable and necessary and would effectively deny creditors the due process rights afforded to them under the Bankruptcy Code and other applicable law. Specifically, the Motion would require creditors to respond, in extensive detail, and on an a very short timeline, to cursory "omnibus" objections that would contain, essentially, no supporting detail. Moreover, the Debtors offer no valid reason why this set of protocols would enhance administration of the estates or reduce the Court's administrative burden.

## BACKGROUND FACTS

1. On September 15, 2008 (the "**LBHI Petition Date**"), LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York.

---

[1] Terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

2

17611402

2. On various dates thereafter, the other Debtors filed voluntary petitions for relief under the Bankruptcy Code.

3. On July 2, 2009, this Court entered the Bar Date Order.

4. SG and CIBC have, in compliance with the Bar Date Order, each filed multiple respective claims in these cases aggregating hundreds of millions of dollars (collectively, the "**Claims**"). The Claims arise under various agreements and include derivative contracts. In addition, SG and CIBC hold claims against LBHI in connection with various guarantees issued to each of them by LBHI.

5. On December 23, 2009, the Debtors filed the Motion.

## ARGUMENT

**A.  The Additional Permitted Grounds and Lack of Detail Required of The Debtors Unreasonably and Inappropriately Expands Bankruptcy Rule 3007(d).**

6. The Debtors would expand Bankruptcy Rule 3007(d) to the point that the special and limited rule allowing "omnibus" objections would no longer serve a fair purpose. The eight grounds set forth in Bankruptcy Rule 3007(d) for which a claim may be objected to on an omnibus basis are premised on, in each case, a simple administrative flaw in the claim for which little explanation is necessary. The historical justification for the short-form "omnibus" objection is that objections of the type listed in Bankruptcy Rule 3007(d)(1)-(8) generally can be resolved without material factual or legal disputes[2]--the eight grounds do not require more particularity for a creditor to examine the claim at issue and respond *accordingly* to the asserted objection. The list notably excludes the "books and records" objection that "was typically used as a tactic to shift the burden of proof of the claim objection from the trustee to the creditor." *9 Collier on Bankruptcy* ¶ 3007.04 at 14-15 (15th ed. 2007). The Debtors seek profoundly to

---

[2]  *See*, 2007 Advisory Committee Note to Fed. R. Bankr. P. 3007.

3

expand this set of eight ministerial grounds to include the five Additional Permitted Grounds. These additional grounds, each of which is substantive and almost certainly to be the subject of a factual and/or legal dispute, simply do not belong alongside Bankruptcy Rule 3007(d)'s eight existing grounds. The Debtor's expanded list would include: (i) a simple assertion, without support, that a mere "contradiction" exists between the amount claimed and the amount purportedly carried on the Debtors' books and records; (ii) a simple assertion, without support, that the claim sets forth an incorrect "classification" (presumably whether a claim is liquidated, or not; contingent, or not), (iii) a simple assertion, without support, that the claim seeks "recovery of amounts for which the Debtors are not liable," (iv) a simple assertion, without support, that the claim does not include sufficient documentation to ascertain the validity of the claim, and (v) a simple assertion, without support, that the claim is objectionable under section 502(e)(1) of the Bankruptcy Code. It is hard to imagine objection bases that could be more substantive and naturally prone to factual and/or legal dispute than these. How, for example, can a creditor thoughtfully and thoroughly respond, with the detailed factual and legal bases required by this proposed order, to an objection that merely states that "your claim seeks recovery of amounts for which the Debtors are not liable" other than to re-submit the existing Proof of Claim and attachments (and, in the case of derivative contracts, the questionnaires)? By expunging claims with respect to which the creditor fails timely to submit the required response, the proposed order is tantamount to a second bar date. And most importantly, this would do little to further the reconciliation process other than, perhaps, to reduce the aggregate number of claims facing the estates due to creditors having missed this "second bar date."

7.      Allowing the Debtors to object, on an omnibus basis, that a creditor filed a "liquidated" claim, when it should have filed an "unliquidated" claim is the essence of a

substantive objection—especially where the basis for it is a valuation dispute. The creditor filed what it believed to be a "liquidated" claim. The Debtor disputes the valuation. It is now, in the Debtors view, an "unliquidated" claim and that is all the Debtor needs to say about it.

8. SG and CIBC do not dispute that the Court has discretion to supplement the grounds for which omnibus objections can be made pursuant to Bankruptcy Rule 3007(d) in an appropriate case. However, the administrative exigencies of the Debtors' cases, complex as they may be, do not justify "supplementation" to this degree. The Additional Permitted Grounds give rise to a massive expansion of the ministerial purpose of Bankruptcy Rule 3007(c). Moreover, to allow a claim to be expunged for failure timely or accurately to prepare and submit a "response" to such an omnibus objection is utterly unreasonable and not at all justified solely to accommodate the size of the cases.

B.   **The Motion Would Eliminate the *Prima Facie* Validity of Claims.**

9. Bankruptcy Code section 502(a) deems a proof of claim that is filed in accordance with all relevant rules to be *prima facie* evidence of the validity and amount of a claim, thereby placing the burden *on the objecting party* to controvert the claim.

10. The procedures proposed by the Debtors summarily do away with the concept of *prima facie* validity as to those claims that would be subject to an omnibus objection by the debtors. It is well-settled that a debtor objecting to a proof of claim must establish sufficient, credible facts to rebut a proof of claim. The Debtors propose to release minimal, at best, information regarding the substance of their objections to potentially billions of dollars worth of claims requiring the creditor in each case either to guess as to the true substance of the Debtors' objection, or to address, in the creditor's "response," every conceivable factual and legal basis on which the Debtors might have objected had the Debtors been required to produce a customary objection setting forth, with support, their bases for objection.

**C.    The Relief Sought by the Motion Duplicates the Bar Date Order in Many Respects.**

11.    The Bar Date Order gave rise to what this Court has subsequently described as an "unprecedented" process that included not only a bar date, but also the production and delivery, on staggered dates, of a substantial amount of documentation not otherwise required under the Bankruptcy Code or Bankruptcy Rules for holders of Guarantee claims and holders of claims arising under Derivative Contracts (as such terms are defined in the Bar Date Order).  Creditors, particularly those party to Derivative Contracts, were burdened by enhanced mandatory documentation production and the creation of spreadsheets and elaborate electronic questionnaires merely to lodge a claim.  This production was submitted in a multi-step process concluding with the upload of all required documents in an electronic format on a specified website with required electronic fields.

12.    A standard proof of claim that is deemed in compliance with Bankruptcy Rule 3001(a) typically includes minimal information.  The Debtors were granted the right, in the Bar Date Order, substantially to increase the amount of information and documentation required with respect to certain types of claims.  Now, as part of the Motion, the Debtors seek to extinguish claims for lack of sufficient documentation that was neither required in accordance with the Bankruptcy Code or Bankruptcy Rules, nor required under the Bar Date Order.

13.    These unprecedented bar date-related procedures have already resulted in the production to the Debtors of *substantial* documentation, including specially-produced analyses and spreadsheets, for the purpose of easing the Debtors' claims reconciliation.  In addition, most, if not all, large financial institutions, including SG and CIBC, have voluntarily produced, at the request of the Debtors' representatives, substantial additional information at significant additional cost and administrative burden.  The Motion would require those same creditors to produce and deliver additional information, without specification, that could prove duplicative of

6

17611402

requirements that exist under the Bar Date Order. However, the proposed procedures will not achieve any additional efficiency or reduction in cost, but rather burden those creditors affected with yet another substantial document to produce (the "response") and yet another short time-frame in which to perform at risk of losing their claim altogether.

**D.     If There Must be a "Response," the Shortened Time Period For Creditors To Respond Should Actually be Expanded.**

14.     Bankruptcy Rule 3007(a) gives a creditor thirty days notice prior to a hearing. In common practice, a hearing is only required where a debtor and creditor have been unable to reach a stipulation with respect to a claim. The proposed order requires substantial and unduly burdensome work and expense on the creditor's part without even attempting, first, to see if the particular infirmity can be remedied consensually. For example, if the Debtors require additional documentation, they should first ask for it *with specificity*. Only if a creditor fails to deliver the needed documentation should it have to bear the burden entailed in a "response."

15.     It is inconceivable that the Debtors can reasonably expect that a careful and thorough "response," as this Motion requires, can be prepared and served within the proposed twenty-one day timeframe. A twenty-one day timeline allows for insufficient time for the affected creditor to respond. Given the additional burden proposed by the Debtors, even thirty days is insufficient. A "response" would require the setting forth of the complete factual and legal basis for the creditor's claim—a process tantamount to filing a complex proof of claim. As such, the time given should be not less than *sixty* days.

**E.     No Objection to Settlement Protocols; Precedent Cited by Debtors.**

16.     SG and CIBC do not object to the settlement protocols set forth in paragraphs 19-21, 27-33 of the Motion (the "**Settlement Protocols**").

7

17611402

17. In the Motion, the Debtors draw the Court's attention to five bankruptcy cases, where, the Debtors assert, similar relief to the relief being sought in the Motion has previously been granted. The Debtors fail to mention, however, that none of this precedent occurred in cases that included a multi-stepped proof of claim process as extensive and comprehensive as the one that exists in these cases. The Debtors also fail to mention that what they assert to be similar orders in the three Southern District of New York cases cited in the Motion were approved by the respective Courts *without objection*. Pursuant to the Bar Date Order, all creditors holding a Derivative Contract claim or Guarantee claim have provided information such that discussion and resolution should already be an efficient and productive process and allow for meaningful discussions, reconciliations and analysis. SG and CIBC and their advisors are ready, willing and able voluntarily to produce reasonable types and quantities of information that the Debtors may request, on reasonable time schedules. The time and expense that was necessary to provide back-up data to all Derivative Contract and Guarantee valuations via the questionnaire process should, as was its purpose, prove useful to the Debtors in resolving many disputes.

## RESERVATION OF RIGHTS

18. Nothing in this Objection shall constitute a waiver of, and SG and CIBC reserve in all respects, their rights under their respective Claims, the Bankruptcy Code, and applicable State, Federal and foreign law, including (but not limited to) the rights to dispute any and all objections to such Claims.

## CONCLUSION

19. WHEREFORE, SG and CIBC request that this Court deny the Motion, other than the Settlement Protocols, and grant such other and further relief as this Court deems appropriate under the circumstances.

8

17611402

Dated: New York, New York

January 5, 2010

                          Respectfully submitted,

                          /s/ Brian Trust

                          Brian Trust (BT-0347)
                          Frederick D. Hyman (FH-7832)
                          Jeffrey G. Tougas (JT-5533)
                          **MAYER BROWN LLP**
                          1675 Broadway
                          New York, New York 10019
                          (212) 506-2500 (phone)
                          (212) 262-1910 (fax)

                          *Counsel to Société Générale and*
                          *Canadian Imperial Bank of Commerce*

                    *    *    *

17611402