Duane Morris LLP

A Delaware Limited Liability Partnership

1540 Broadway

New York, NY 10036

Tel:  (212) 692.1000

Fax: (212) 208.4521

Lawrence J. Kotler, Esq.

ljkotler@duanemorris.com

Patricia H. Piskorski Heer, Esq.

phheer@duanemorris.com

**Hearing Date: February 10, 2010 at 10:00 a.m.**

**Objection Deadline: February 3, 2010 at 4:00 p.m.**

30 South 17th Street

Philadelphia, PA 19103-4196

Rudolph J. Di Massa, Jr., Esq.

DiMassa@duanemorris.com

*Counsel for Pennsylvania Public School Employees'*
*Retirement System*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

**In re:**                                                                    :          **Chapter 11**

                                                                                :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al*     :          **Case Nos. 08-13555 (JMP)**

                                                                                :          **(Jointly Administered)**

                                              **Debtor.**          :

-------------------------------------------------------- x

### NOTICE OF HEARING ON MOTION OF PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM FOR ENTRY OF AN ORDER THAT ITS TIMELY FILED GUARANTEE QUESTIONNAIRE BE CONSIDERED A TIMELY FILED PROOF OF CLAIM, OR, IN THE ALTERNATIVE, TO PERMIT A LATE CLAIM FILING PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)

PLEASE TAKE NOTICE that a hearing to consider the relief requested in the Motion for

entry of an Order that its Timely Filed Guarantee Questionnaire be considered a Timely Filed

Proof of Claim or, in the alternative, to Permit a Late Claim Filing Pursuant to Federal Rule of

Bankruptcy Procedure 9006(b)(1), dated January 7, 2010 (the "Motion"), filed by Pennsylvania

Public School Employees' Retirement System ("PSERS") in the above-captioned, jointly

administered chapter 11 cases, by and through their undersigned counsel, shall be held before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court") on **February 10, 2010 at 10:00 a.m.** (prevailing Eastern Time), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion and the relief requested therein shall be made in writing, shall state with particularity the grounds thereof, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with two hard copies delivered directly to Chambers) and served in accordance with General Order M-242 or otherwise so as to be actually received no later than **February 3, 2010** at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") by: (a) counsel to the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Harvey R. Miller, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.; (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (c) counsel to the statutory committee of unsecured creditors appointed in these chapter 11 cases, Millbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., Evan Fleck, Esq.; (d) counsel for PSERS, Duane

Morris LLP, 1540 Broadway, New York, New York 10036-4086, Attn: Patricia H. Heer, Esq.

PLEASE TAKE FURTHER NOTICE that only those objections that have been filed and

served by the Objection Deadline in accordance with the procedures herein may be considered

by the Court at the hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

hearing, and failure to appear may result in relief being granted or denied upon default.

PLEASE TAKE FURTHER NOTICE that the Court may grant the relief requested in the

Motion without a hearing if no objections to the Motion are timely filed and served.


**DUANE MORRIS LLP**


Dated:  January 7, 2010                    By: */s/ Patricia H. Piskorski Heer*
                                           Patricia H. Piskorski Heer, Esq.
                                           Lawrence J. Kotler, Esq.
                                           Rudolph J. Di Massa, Jr., Esq.
                                           1540 Broadway
                                           New York, NY 10036
                                           Telephone:   (212) 692.1000
                                           Facsimile:   (212) 208.4521
                                           *Counsel for Pennsylvania Public School*
                                           *Employees' Retirement System*

Duane Morris LLP

A Delaware Limited Liability Partnership

1540 Broadway

New York, NY 10036

Tel:  (212) 692.1000

Fax: (212) 208.4521

Lawrence J. Kotler

ljkotler@duanemorris.com

Patricia H. Piskorski Heer, Esq.

phheer@duanemorris.com

30 South 17th Street

Philadelphia, PA 19103-4196

Rudolph J. Di Massa, Jr., Esq.

DiMassa@duanemorris.com

*Counsel for Pennsylvania Public School Employees'
Retirement System*

**Hearing Date: February 10, 2010 at 10:00 a.m.**

**Objection Deadline: February 3, 2010 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al* | : | **Case Nos. 08-13555 (JMP)** |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

---------------------------------------------------------- x

**MOTION OF PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT
SYSTEM FOR ENTRY OF AN ORDER THAT ITS TIMELY FILED GUARANTEE
QUESTIONNAIRE BE CONSIDERED A TIMELY FILED PROOF OF CLAIM, OR, IN
THE ALTERNATIVE, TO PERMIT A LATE CLAIM FILING PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

Pennsylvania Public School Employees' Retirement System ("PSERS"), by and through

its attorneys, Duane Morris LLP, hereby moves this Court (the "Motion") for the entry of an

order, pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9006(b) (the

"Bankruptcy Rules") that its timely Filed Guarantee Questionnaire (as defined herein) be

considered a timely filed Proof of Claim or, in the alternative, permitting PSERS to file a late

proof of claim against Lehman Brothers Holdings Inc. ("LBHI").  In support of the Motion,

PSERS respectfully states as follows:

## PRELIMINARY STATEMENT

In this matter, application of principles of equity and fundamental fairness should result

in the allowance of certain claims of PSERS that were intended to be, and believed to have been,

filed against LBHI.  Acting at all times in good faith, and well before any claims bar date set in

the above-referenced chapter 11 cases of LBHI and its affiliated debtors (together, the

"Debtors"), PSERS took steps to have proofs of claim filed on its behalf.  In fact, PSERS timely

filed numerous proofs of claim against the various Debtors.  While PSERS timely filed a notice

of claim in the bankruptcy forum in the Netherlands against the Lehman entity that issued  two

notes (the "Notes") under the Euro Medium Term-Note Program of LBHI and certain of its

affiliates located outside the United States (the "Euro Medium Term-Note Program"),

unfortunately, for the reasons stated below, PSERS did not timely file a proof of claim (the

"Claim") against LBHI, the guarantor of the Notes, in the instant proceedings.

As this Court is aware, numerous bar dates were set for different species of claims in the

Debtors' jointly administered cases, as well as deadlines for filing claims in the Securities

Investor Protection Act Proceeding of Lehman Brothers Inc. (the "SIPA Liquidation") and the

administration proceeding of Lehman Brothers Treasury Co. B.V. ("Lehman Brothers B.V.") in

the Netherlands (the "Dutch Proceeding").  In the LBHI proceeding, holders of claims were

required to file (1) proofs of claim, (2) a questionnaire with respect to any claim based on a

guarantee (the "Guarantee Questionnaire"), and (3) a proof of claim with respect to any Lehman

Program Securities (as defined in the bar date order).  PSERS requested assistance from its

investment manager, Deutsche Bank Asset Management Advisors ("DB Advisors"), which

acquired the Notes on PSERS's behalf, in the filing of claims relating to the Notes in the appropriate Lehman Brothers proceedings. In connection thereto, DB Advisors submitted, on PSERS' behalf, a notice regarding the Notes to the administrator of the Dutch Proceeding. Believing a claim related to the Notes had been properly filed (and such prior filing being a requirement of the Guarantee Questionnaire), PSERS filed the Guarantee Questionnaire in relation to the Notes in the LBHI proceeding, a copy of which is attached hereto as "Exhibit D". Based on its communications with DB Advisors and the filing of the Guarantee Questionnaire, PSERS believed that all required proofs of claim had been properly and timely filed in the LBHI proceeding.

DB Advisors, however, had not filed the Claim against LBHI; it did so only against Lehman Brothers B.V.  To add to the miscommunication, there was confusion regarding the inclusion of certain securities among the Lehman Programs Securities and the filing of related proofs of claims for such securities.  The Notes were initially supposed to have been included in the Lehman Programs Securities, but ultimately were not included on the Lehman Programs Securities list.

By filing this Motion, PSERS respectfully requests that this Court either (i) treat the timely filing of the Guarantee Questionnaire as an "informal" Proof of Claim or, in the alternative, (ii) permit PSERS to file the Claim after the filing deadline in accordance with the principle of excusable neglect.  For the reasons set forth herein, the Motion should be granted because (i) the Debtors were on actual notice of the existence of the Claim when PSERS timely filed the Guarantee Questionnaire; (ii) the late filing would cause no material prejudice to the debtor; (iii) the length of delay and impact on the proceedings are both negligible; (iv) the delay

3

was caused by complications outside PSERS's control and by miscommunication among PSERS

and others; and (v) PSERS has acted in good faith.

PSERS is a legitimate creditor of the above-captioned Debtors and, based upon the

equities of this matter, and in the interests of justice, should receive a pro rata distribution on

account of its Claim.

## **FACTS**

1.      PSERS prudently invests assets and manages resources of the Public School

Employees' Retirement Fund for the exclusive benefit of nearly  one half million public school

active and retired public school employees of the Commonwealth of Pennsylvania.   The

members of PSERS range young, newly hired employees embarking on their careers in public

education to elderly retirees whose careers ended years ago , live in all 67 counties of

Pennsylvania and in other states, and include 175,000 retirees.  Fiscus Decl. ¶ 2.[1]

2.      The Claim PSERS requests this Court to deem timely filed includes: (i) a certain

note PSERS purchased on January 2, 2008, in the face amount of $10.55 million, under a US

$100,000,000,000 Euro Medium Term-Note Program of Lehman Brothers B.V. and Lehman

Brothers Bankhaus AG, guaranteed by LBHI, Cusip 52519VAW6, ISIN Code

US52519VAW63; and (ii) a certain note PSERS purchased on June 30, 2008, in the face amount

of $34.4 million, under a US $100,000,000,000 Euro Medium Term-Note Program of Lehman

Brothers B.V. and Lehman Brothers Bankhaus AG, guaranteed by LBHI, Cusip 52521XAB4,

ISIN Code US52521XAB47.  Fiscus Decl. ¶ 3.

---

[1] PSERS has submitted the Declaration of Andrew D. Fiscus, dated January 7, 2010 (the "Fiscus Declaration") in
support of the Motion annexed hereto as Exhibit A, the substance of which is incorporated herein.

3.      The Notes are structured securities with the payment terms linked to the cash flow or value of another instrument.  In this case, the terms were linked to the Dow Jones-AIG Commodity Total Return Index.  Fiscus Decl. ¶ 5.

4.      The Notes are "Lehman Programs Securities" as described in the Court's Order Pursuant To Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271].  Fiscus Decl. ¶ 6.

5.      On or about September 11, 2008, DB Advisors tendered each of the Notes for redemption.  Fiscus Decl. ¶ 7.

6.      On the date of the attempted redemption, the market value of the Notes was $10,354,825 for Cusip 52519VAW6 and $26,085,150 for Cusip 52521XAB4. Fiscus Decl. ¶ 8.

7.      On or about September 11, 2008, DB Advisors confirmed the redemption with LBI.  Fiscus Decl. ¶ 9-11.

8.      On the same day, Lehman Brothers Inc. ("LBI"), on behalf of Lehman Brothers B.V., accepted the redemption request, indicating that cash would be released and deposited into the account that had been identified by DB Advisors. Fiscus Decl. ¶ 12.

9.      On or about September 19, 2008, DB Advisors requested that Lehman Brothers B.V. settle the redemption request with respect to each of the Notes.  Fiscus Decl. ¶ 13.

10.     Notwithstanding its tender of the Notes for redemption on September 11, 2008, and on September 19, 2008, DB Advisors did not receive the proceeds from the Notes. Fiscus Decl. ¶ 14.

11.     On or about January 21, 2009, PSERS performed a comprehensive review with at least five of its investment advisors regarding the status of its securities and accounts that were

under their management in order to identify potential claims that PSERS may have against the Lehman entities. Fiscus Decl. ¶ 15.

12.  Most of PSERS' investment advisors confirmed that they would be filing claims in the various proceedings of the Debtors on behalf of PSERS related to the transactions that they managed. Fiscus Decl. ¶ 16.

13.  On or about January 16, 2009 and again on January 20, 2009, PSERS requested the assistance of DB Advisors in filing claims related to the transactions that DB Advisors entered into on behalf of PSERS in the appropriate Lehman Brothers proceeding(s). Fiscus Decl. ¶ 17.

14.  DB Advisors informed PSERS that it would assist with a claim related to the Notes on behalf of PSERS. Fiscus Decl. ¶ 19.

15.  DB Advisors filed a notice of claim on behalf of PSERS with the administrator in the Dutch Proceeding. Fiscus Decl. ¶ 20.

16.  PSERS also filed proofs of claim in the SIPA Liquidation in relation to foreign currency transactions unrelated to the Notes. Fiscus Decl. ¶ 21.

17.  On or about September 16, 2009, the liquidating trustee in the SIPA Liquidation filed an objection notice denying PSERS' claim related to the foreign exchange transactions. As a result, PSERS allocated resources to focus on addressing such objection. Fiscus Decl. ¶ 22.

18.  Separately in the LBHI proceeding, on or about May 26, 2009, LBHI filed a motion seeking to establish a deadline for the filing of proofs of claim [Docket No. 3654] (the "Bar Date Motion"), including claims relating to the Euro Medium Term-Note Program.

19.  Following the publication of the Master List of Securities, a number of security holders objected to the Bar Date Motion because it would have required holders of debt

securities, guaranteed by LBHI, to file proofs of claim and to submit the Guarantee Questionnaires.

20.     To resolve these objections, at the urging of this Court, the parties engaged in a series of discussions which led to the inclusion of certain claims filing procedures in the Bar Date Order. These procedures were intended to apply to all Euro Medium Term-Note Program Securities.

21.     On July 2, 2009, the Bankruptcy Court entered the Bar Date Order which, among other things, established November 2, 2009 as the Securities Programs Bar Date. The Bar Date Order set forth special procedures to file claims in respect of Lehman Programs Securities.

22.     The Bar Date Order required the Debtors to publish a list of Lehman Programs Securities which would include "at a minimum issuances under . . . that certain U.S. $100,000,000,000 Euro Medium Term-Note Program," as well as securities issued under certain other Lehman group programs. See Bar Date Order at 13. The lengthy list published by the Debtors on July 6, 2009, initially consisting of 55 pages of tables with several thousand securities identification numbers, was subsequently amended by the addition of approximately 3,000 more securities and 20 pages.

23.     The Bar Date Order also provided that holders of a claim based on a guarantee, must (a) file a proof of claim by September 22, 2009, and (b) enter the unique identification number included on the proof of claim and complete the electronic Guarantee Questionnaire by October 22, 2009.

24.     Aware of the impending questionnaire deadline, and believing that a claim based on the Notes had been properly filed, in light of DB Advisor's filing of the claim in the SIPA

Liquidation and in the Dutch Proceeding, PSERS timely filed the Guarantee Questionnaire on October 21, 2009. Fiscus Decl. ¶ 23.

25.     Instantly upon learning that, aside from its completion of the Guarantee Questionnaire, there may not be a record of a claim with respect to the Notes, PSERS conducted an examination surrounding the circumstances of the claim.  It inquired  whether DB Advisors filed a claim based on the Notes on behalf of PSERS. Fiscus Decl. ¶ 24.

26.     On or about December 22, 2009, PSERS learned that, as a result of (1) miscommunication with its investment advisor regarding the filing of the Claim, (2) the confusion regarding the qualification of the Notes as claims in the various chapter 11 proceedings of the Debtors and the inclusion of the Notes in the Lehman Programs Securities, and (3) PSERS's filing foreign exchange transaction claims in the SIPA Liquidation and other proceedings of the Debtors and the subsequent defense of such claim, the Notes were not among the securities for which PSERS timely filed proofs of claim in the LBHI proceeding. Fiscus Decl. ¶ 25.

27.     PSERS immediately requested the assistance of Duane Morris LLP to represent its interests going forward relating to the Notes, while continuing to investigate the circumstances surrounding the Claim. Fiscus Decl. ¶ 26.

28.     PSERS subsequently confirmed that DB Advisors did not file a proof of claim based on the Notes.  Fiscus Decl. ¶ 26.

## ARGUMENT

**A.     The Court Should Deem PSERS' Guarantee Questionnaire An Informal Proof of Claim Which Was Timely Filed**

29.     While it is true that PSERS did not file a formal Proof of Claim by the Bar Date, there is no question that the Guarantee Questionnaire was timely filed.

30.     As the Guarantee Questionnaire contained all of the information that is requested to be set forth on Official Claim Form No. 10, this Court should deem the Guarantee Questionnaire filed by PSERS as an informal proof of claim.

31.     The "informal proof of claim" doctrine has been established by courts "to prevent the harsh result that occurs when a creditor fails to file a formal proof of claim before the claims bar date." *In re Phillips*, 2007 WL 2241778, *2 (Bankr. S.D. Fla. Aug. 6, 2007) (citation omitted). The doctrine "allows for another document that was filed in a timely fashion to become the basis for a timely amended proof of claim." *Id.* (citation omitted). Whether an informal proof of claim should be allowed is an equitable determination to be made by the bankruptcy court. *In re Wigoda*, 234 B.R. 413, 415 (Bankr. N.D. Ill. 1999) (citation omitted).

32.     The elements of a valid informal proof of claim are: 1) it must be in writing; 2) it must contain a demand by the creditor on the estate; 3) it must express an intent to hold the debtor liable for the debt; 4) it must be filed with the bankruptcy court; and 5) allowance of an informal proof of claim is equitable based on the facts of the case. *In re Petrucci*, 256 B.R. 704, 706 (Bankr. D.N.J. 2001) (citations omitted). *See also Am. Classic Voyages Co. v. Official Comm. of Unsecured Creditors*, 405 F.3d 127, 130-32 (3d Cir. 2005).

33.     The prerequisites for an informal proof of claim have been satisfied in this case. First, the Guarantee Questionnaire filed by PSERS against LBHI was "in writing" and filed before the October 22, 2009 deadline. Second, the Guarantee Questionnaire was properly submitted as required by the Bar Date Notice. Third, the Guarantee Questionnaire was to be completed by holders of a claim based on a guarantee. PSERS completed the questionnaire and attached the documents giving rise to the Claim. Based upon the Debtors' Schedules, it is clear

that the Debtors recognize the claims owed to the holders of the securities issued under the Euro Medium Term-Note Program and acknowledge that they are liable for those claims.

34.    Consequently, the factors of a demand upon the estate along with an express intent to hold the debtor liable for the debt are established.  Finally, it is entirely equitable for the Court to hold that the Guarantee Questionnaire constitutes an informal proof of claim based upon the nature of the debt owed by the Debtors to PSERS.  Preventing PSERS from receiving a distribution upon the Notes would provide an inequitable consequence based upon the confusion surrounding the claims process and miscommunication with its investment manager, and would significantly worsen the already severe losses stemming from the Lehman bankruptcy incurred by a retirement fund on which hundreds of thousands active and retired public school employees and their families are dependent.

35.    As a consequence, PSERS respectfully requests that the Court deem the Guarantee Questionnaire timely filed by PSERS against LBHI as a timely informal proof of claim.

**B.    In the Alternative, the Court Should Permit PSERS to File a Late Proof of Claim**

36.    In the event this Court does not deem the Guarantee Questionnaire to be an informal Proof of Claim, then PSERS respectfully requests that it should be granted leave to file a "late" proof of claim based upon PSERS's excusable neglect.

37.    In this respect, Bankruptcy Rule 9006(b) provides, in relevant part:

> . . .  when an act is required or allowed to be done at or within a specified period of time by the rules or by notice given thereunder or by order of court, the court for cause shown may at any time its discretion . . .  on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

38.     The Supreme Court of the United States has held, among other things, that (i) "neglect" in this context encompasses "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control," and (ii) whether or not such neglect is "excusable" is an equitable matter, "taking into account all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, (*Pioneer*), 507 U.S. 380, 395 (1993).

39.     In *Pioneer*, the Supreme Court established a four-part test in analyzing whether an untimely filing was the result of "excusable neglect:" (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id*. at 388, 395.

40.     In identifying the four areas of inquiry, the *Pioneer Court* established that excusable neglect for the purposes of Bankruptcy Rule 9006(b) "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 391-92. The Court stated that "the determination is at bottom an equitable one, taking into account of all relevant circumstances surrounding the party's omission." *Id*. at 395.

41.     The relative weight to be accorded to the factors identified in *Pioneer* requires recognition of the fact that not all factors need to favor the moving party. *In re Enron Corp*. No. 01-16034, 2003 WL 21756785, at *4 (Bankr. S.D.N.Y. July 30, 2003). While a district court is to consider all the *Pioneer* factors, the Second Circuit Court of Appeals has stated that the third factor, the reason for the delay is the focus of the analysis. *See Midland Cogeneration Venture*

*Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 122 (2d Cir. 2005) (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003).

42.    Other courts place the greatest weight on whether any prejudice to the debtor or other parties will occur by allowing a late claim. *In re Tannen Towers Acquisition Corp.*, 235 B.R. at 755 (*citing In re Brown*, 159 B.R. 710, 716 (Bankr. D.N.J. 1993); s*ee In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr. D.N.J. 1994) (noting that "[t]he absence of a confirmed plan of reorganization indicates a lack of prejudice to the debtor") (citation omitted).

43.    Nevertheless, all four of the *Pioneer* factors must be weighed and balanced together as part of the "elastic concept" referred to by the Supreme Court. *Pioneer*, 507 U.S. at 395; *See Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F. 3d 248, 250-51 (2d Cir. 1997) (*Pioneer* established a more liberal standard for determining excusable neglect, and court should engage in an equitable determination taking into account all relevant factors.) (internal citations and quotations omitted).

44.    However, not all the *Pioneer* factors need to weigh in favor of the moving party in order for relief to be granted, and relief can be granted even if the Court finds against the movant as to the reason for delay, especially where all the other *Pioneer* factors strongly favor the moving party. *In re Enron Corp.* 2003 WL 21756785, at *6.

45.    In *Pioneer*, the Supreme Court determined that a creditor acted with excusable neglect when the creditor failed to timely file a proof of claim because, among other things, the claims bar date was disclosed only in small print on a notice of a meeting of creditors and because the debtor was able to account for the creditor's claim in its amended plan of reorganization (i.e., the debtor was not prejudiced by the creditor's late claim). *See Pioneer*, 507 U.S. at 397-98.

46.    Similar circumstances exist here.  Here, the claims process was complex and confusing to creditors because of the various bar dates that were established and the fact that there were additional deadlines established for submission of certain questionnaires by which creditors had to file various types of claims.  In addition, the Bar Date Order specifically stated that Euro Medium Term-Note Program Securities would be included in the Lehman Programs Securities.

47.    Also, as in *Pioneer*, there is no prejudice that could befall the Debtors if PSERS's Claim, which was already known by the Debtors, given the PSERS' filing of the Guarantee Questionnaire is included.  To the extent LBHI has a substantive basis to object to PSERS's Claim, LBHI's rights to object to PSERS' are fully preserved.

48.    In this instance, the factors outlined by the United States Supreme Court in *Pioneer* weigh heavily in favor of granting PSERS' motion to file a late proof of claim.

### 1.    The Danger of Prejudice to LBHI

49.    First, the Debtors will suffer no prejudice by permitting PSERS to file a late proof of claim.  A claim will not jeopardize the success of the reorganization where no plan has been filed and the claims reconciliation process was only beginning.  *In re Enron Corp.*, 2003 WL 21756785, at *6 (permitting filing of nine-day-late proof of claim and finding no prejudice because claims review and reconciliation process was in early stages and no plan or disclosure statement had yet been filed); *In re Infiltrator Sys., Inc.*, 241 B.R. 278, 281-82 (Bankr. D. Conn. 1999) (permitting late-filed claim because debtor had not yet proposed plan).  No disclosure statement or plan has been filed in this case.

50.    In addition, over 100,000 claims remain unresolved and the claims review process is only in its initial stages.  In fact, the Debtors only recently began a comprehensive review of

the more than 65,000 claims that were filed including a review of the Guarantee Questionnaires.
*See* Debtor's Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules
3007 and 9019(b) for Approval of (I) Claim Objection Procedures and (II) Settlement Procedures
(the "Claim Procedures Motion").

51.     Moreover, the Debtors have long been aware of their potential liability on the
Notes. The Debtors here were aware of the Euro Medium Term-Note Program Securities, as
these securities were among the July 6 Lehman Programs Securities.

52.     More importantly, PSERS timely filed the Guarantee Questionnaire in October
21, 2009 attaching all documents upon which the Claim is based. *See In re Sage-Dey, Inc.*, 170
B.R. 46, 53 (Bankr. N.D.N.Y. 1994) (finding no danger of prejudice where debtors were notified
by IRS prior to bar date of discrepancy in their tax forms which later became basis for IRS's late-
filed claim).

53.     Further, the Claim is not of a substantial size in relation to the rest of the claims
filed against the Debtors' estate. *See In re XO Communications, Inc.*, 301 B.R. 782 (Bankr.
S.D.N.Y. 2003) (finding that the amount at issue would not have any disruptive impact with
respect to the economic considerations and reliance factors related to the plan process if the late-
filed proof of claim was deemed timely). The amount of PSERS' Claim is $36,439,975.00. The
filed claims asserted against the Debtors in these chapter 11 cases exceed $830 billion, and the
debts listed by the Debtors on Exhibit A to the Voluntary Petition total $613 billion.

54.     Even to the extent that PSERS's Claim may have an effect, however small, on the
funds available to all creditors, the United States Court of Appeals for the Second Circuit has
found this factor to be of "no weight" in the determination of prejudice to the debtor. *In re
Enron*, 419 F.3d at 130 ("[W]e agree with the observation that the Court must have had more in

mind than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. . . . Otherwise, virtually all late filings would be condemned by this factor . . . .") (internal citations and quotations omitted).

55.    As there is no actual harm by allowing PSERS to file late proofs of claim, any hypothetical harm that may be alleged by the Debtors will not rise to the level of prejudice.  *See In re O'Brien Envtl. Energy*, 188 F.3d 116, 127 (3d Cir. 1999) ("[P]rejudice is not an imagined or hypothetical harm . . . .").

56.    PSERS' Claim is unique because it relates to the Notes that should have appeared on the Lehman Programs Securities and because a timely Guarantee Questionnaire (which, in and of itself, contained all of the information that would be required to be set forth on a proof of claim) was filed.

57.    Accordingly, permitting PSERS' Claim to be deemed timely filed will not "open the floodgates" for the filing of other claims.  This is a unique situation and the relief sought here is exceptionally minor.  All that is being sought here is for the Court to extend by several weeks the filing date for two very discrete claims—claims the existence of which the Debtors were already aware of.

58.    It is inconceivable that such minor relief, particularly for only two securities which should have been included by the Debtors in the Lehman Programs Securities and for which a Guarantee Questionnaire was timely filed, could in any way prejudice the efficient administration of these estates. *See In re Beltrami Enters., Inc*., 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (rejecting the floodgates argument because there was no evidence that "hordes of claimants" would file claims). *Cf In re Enron*, 419 F.3d at 131–32 (prejudice found where a creditor's guarantee claim was not unique as compared to thousands of potential claimants).

59.    The lack of negative impact on these judicial proceedings is evidenced by the Debtors' request to resolve claims under $50 million without Court approval.  *See* Claim Procedures Motion.  A resolution of the Claim in the approximate amount of $36 million would not even require approval by this Court.

## 2.    The Length of the Delay And Its Potential Impact on the Proceedings.

60.    By now, the Debtors have only just commenced an assessment of the claims that have been filed based on the Lehman Programs Securities and of the derivative and Guarantee Questionnaires, and can only facially determine the extent of their claim liability.  Accordingly, the delay is *de minimis*, and will have no impact on the Debtors' bankruptcy cases.  *See In re Enron,* 2003 WL 21756785, at *4-5 (Bankr. S.D.N.Y. July 30, 2003).  Including the Claim among 65,000 claims that had been filed against the Debtors, and more than 46,000 claims scheduled by the Debtors, would have no "impact on judicial proceedings" in this case.  *See id.*

61.    On December 11, 2009, upon learning that there was a Guarantee Questionnaire but not a separate proof of claim that was filed, PSERS took immediate steps to confirm and rectify the situation.  PSERS investigated whether the Notes were included among the final Lehman Programs Securities, whether a claim had indeed been filed by DB Advisors, since there was a timely subsequent Guarantee Questionnaire filed, and promptly asked Duane Morris to investigate the circumstances surrounding the Claim.  See Michlovitz Decl. ¶¶ 23-27.

62.    The delay from the time of discovery is *de minimis* and, as discussed above, does not in any way disrupt the judicial administration of this case.  *See Pioneer*, 507 U.S. at 398-99 (permitting filing proof of claim twenty days after the bar date); *In re Enron*, 2003 WL 21756785, at *5 (nine-day delay did not impact debtor's judicial proceedings); *In re Sage-Dey*,

170 B.R. at 52-53 (permitting filing of proof of claim six months after bar date); *In re Beltrami*,

178 B.R. at 392 (Bankr. M.D. Pa. 1994) (permitting filing a two-year late proof of claim).

### 3.    The Reason For The Delay

63.    The third element articulated in *Pioneer* is whether the facts underlying the failure

of PSERS to timely file a proof of claim in this matter establish excusable neglect.

64.    In *Pioneer*, the Court found that excusable neglect may extend to "inadvertent

delays" and that it is "not limited strictly to omissions caused by circumstances beyond the

control of the movant."   507 U.S. at 392 ("Congress plainly contemplated that the courts would

be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or

carelessness, as well as by intervening circumstances beyond the party's control.").   The extent

to which a bar date order is unusual or "outside of the ordinary" is a factor that courts weigh in

determining justification.  *Id*. at 388.  Although all four *Pioneer* factors should be considered, the

Second Circuit Court of Appeals places the greatest weight on the reason for the delay, and

whether it was in the claimant's reasonable control.  *In re Delphi Corp*., Case No. 05-44481,

2009 Bankr. LEXIS 571, at *11 (Bankr. S.D.N.Y. Jan. 20, 2009), *citing In re Musicland

Holdings Corp*., 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006).

65.    PSERS has met the standard; the delay in filing the Claim is justifiable and

excusable under the circumstances.  The initial confusion arising from the numerous bar dates in

the various proceedings and the qualification of the Notes as claims in the appropriate

proceedings was compounded by the miscommunication with PSERS' investment advisors as

well as the subsequent circumstances surrounding the inclusion of certain securities among the

Lehman Program Securities.

66.     Here, there were numerous bar dates set in the various chapter 11 cases of the Debtors.   The Bar Date Order in the LBHI proceeding established two separate dates for different species of claims (and a related questionnaire deadline for some claims), not to mention the previous deadlines for filing claims in related cases, such as the Dutch Proceeding and the SIPA Liquidation.

67.     PSERS conducted inquiries regarding the qualification of the Notes for the various chapter 11 cases of Lehman Brothers and believed that its investment advisors were filing claims on its behalf.   DB Advisors had indeed filed a notice, based on the Notes, in the Dutch Proceeding and, as a consequence, PSERS believed that DB Advisors had filed a claim relating to the Notes in this proceeding.   PSERS' belief that a claim was properly filed is evidenced by its timely filing of the Guarantee Questionnaire, which required the prior filing of a proof of claim.

68.     In addition, PSERS filed numerous other claims, unrelated to the Notes, subject to several bar dates in the chapter 11 cases.   Specifically, PSERS timely filed claims related to foreign exchange transactions in the SIPA Liquidation.   Some of those claims were disputed by the liquidating trustee, and PSERS focused on dealing with the SIPA Trustee's objection to such claim.

69.     To add to the miscommunication and the difficulty of navigating the various bar dates, the inconsistency of including certain securities on the Lehman Programs Securities also created confusion. The Euro Medium Term-Note Program Securities were initially listed among the July 6 Lehman Programs Securities and were then removed.

70.    This is not a situation where the claimant failed to take the filing deadline seriously.  *See Enron*, 419 F.3d at 126-27 (creditor was negotiating with the debtors, or offered no explanation for the delay in filing).

71.    Nor was this a tactical, or simply a knowing, decision not to file a timely claim. *In re Delphi Corp.*, 2009 Bankr. LEXIS 571, at *19-20, *citing Pioneer*, 507 U.S. at 388, 395 (internal citations omitted); *see In re Calpine Corp.*, Nos. 05-60200, 07 Civ. 8493, 2007 WL 4326738, at *7 (S.D.N.Y. Nov. 21, 2007) (creditor failed to provide an explanation for not including alleged related claims with the filing of the original timely filed claims); *see In re D.A. Elia Constr. Corp.*, 246 B.R. 164, 171 (Bankr. W.D.N.Y. 2000) (counsel's claim of bar date notice inadequacy was a pretext because he systematically ignored all other bar date notices); *see In re New York Seven-Up Bottling Co., Inc.*, 153 B.R. 21, 23 (Bankr. S.D.N.Y. 1993) (creditor chose not to file proofs of claim based on the assumption that the claims were not in dispute).

72.    In the instant case, PSERS neither knowingly nor strategically decided to not file its Claim prior to the Bar Date.  PSERS reviewed its claims, investigated notices affecting its rights, and inquired about its claims with its numerous investment managers.  PSERS timely and properly filed a Guarantee Questionnaire in this proceeding, as well as numerous proofs of claim in the other chapter 11 cases including the SIPA Liquidation and the Dutch Proceeding.  Thus, it can be concluded that PSERS takes seriously its responsibilities for protecting its legal rights.

73.    Moreover, the *Pioneer Court* stated that "the determination as to excusable neglect is at bottom an equitable one."  *Pioneer*, 507 U.S. at 395.  PSERS invests the assets of the retirement system of over one half million public school employees and retirees.  The principles of equity and fundamental fairness should result in the allowance of certain claims of PSERS that were intended to be, and believed to have been, filed against LBHI.

### 4.    __The Good Faith of PSERS__

74.     As acknowledged by many courts, it is difficult to assess the "good faith" of the claimant in determining whether this fourth *Pioneer* factor has been satisfied.  *See In re Delphi*, 2009 Bankr. LEXIS 571, at *17.  In many cases, courts simply acknowledge that no question or challenge had been raised with respect to the good faith of the claimant.  *Id.*

75.     In this case, PSERS has evidenced its good faith.  Once PSERS became aware of the mistake, it immediately took steps to ascertain the facts relating to the Claim and then diligently sought to resolve this matter with Debtors' counsel in advance of filing the instant motion.  The good-faith belief that the Claim had been timely filed is further demonstrated by PSERS's timely filing of Guarantee Questionnaire, which assumed the previous filing of a claim. Here, "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim."  *Pioneer*, 507 U.S. at 398.

### __MEMORANDUM OF LAW__

76.     Because the legal points and authorities upon which this Motion relies are incorporated herein, PSERS respectfully requests that the requirement of service and filing of a separate memorandum of law pursuant to Rule 9013-1(b) of Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

### __NOTICE__

77.     PSERS has provided notice of the Motion pursuant to the Amended Order Implementing Certain Notice and Case Management Procedures entered in this case [Docket No. 2837].  PSERS submits that no other or further notice need be given.

## NO PRIOR REQUEST

78.     No prior motion for the relief requested herein has been made to this Court or any other court.

## CONCLUSION

For the foregoing reasons, PSERS respectfully moves this Court to enter an order either in the form annexed hereto as Exhibit "B" or in the form annexed hereto as Exhibit "C," respectively: (i) granting its request to have the Guarantee Questionnaire to be treated as a timely filed proof of claim and (ii) granting such other and further relief as this Court deems just and appropriate.  In the alternative, PSERS respectfully requests that (i) this Court permit PSERS to file the Claim against LBHI; (ii) deeming such filing to be timely under Bankruptcy Rule 9006(b); and (iii) granting such other and further relief as this Court deems just and equitable.


Dated:  January 7, 2010

                    **DUANE MORRIS LLP**


                    By: */s/ Patricia H. Piskorski Heer*
                          Patricia H. Piskorski Heer, Esq.
                          Lawrence J. Kotler, Esq.
                          Rudolph J. Di Massa, Jr., Esq.
                          1540 Broadway
                          New York, NY 10036
                          Telephone:   (212) 692.1000
                          Facsimile:   (212) 208.4521
                          *Counsel for Pennsylvania Public School*
                          *Employees' Retirement System*