**Hearing Date and Time: February 10, 2010 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time: February 3, 2010 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
|   |   |
| :--- | :--- |
| In re | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | **08-13555 (JMP)** |
| Debtors. | **(Jointly Administered)** |
-------------------------------------------------------------------x

**NOTICE OF FILING OF MOTION FOR AN ORDER**
**APPROVING CERTAIN RESTRICTIONS AND PROCEDURES**
**APPLICABLE TO TRANSFERS OF THE DEBTORS' SECURITIES**

TO ALL PERSONS OR ENTITIES WITH SECURITIES OF LEHMAN BROTHERS
HOLDINGS INC. OR ANY OF ITS DEBTOR AFFILIATES WHOSE CASES UNDER
CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE ARE, OR SUBSEQUENTLY
BECOME, JOINTLY ADMINISTERED WITH CASE NO. 08-13555 (JMP)[1]:

PLEASE TAKE NOTICE that on September 15, 2008 (the "Commencement
Date") and periodically thereafter, Lehman Brothers Holdings, Inc. ("LBHI") and its subsidiaries
in the above-referenced chapter 11 cases, as debtors and debtors in possession (the "Debtors"
and, collectively with LBHI's wholly-owned non-debtor domestic subsidiaries, "Lehman"),
commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy
Code"). Section 362(a) of the Bankruptcy Code operates as a stay of any act to obtain
possession of property of the Debtors' estates or of property from the Debtors' estates or to
exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on November 5, 2008, pursuant to that
certain *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Certain
Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating
Thereto*, the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court") found that Lehman's consolidated net operating loss tax carryforwards

---

[1] All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion.

("NOLs") and certain other tax attributes (together with NOLs, the "Tax Attributes") are property of the Debtors' estates and are protected by the automatic stay prescribed in section 362 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that on January 19, 2010, the Debtors filed a motion (the "Motion") with the Bankruptcy Court, having jurisdiction over these chapter 11 cases, to consider entry of an order (the "Order") (i) finding that under certain circumstances the unrestricted accumulation of Securities (as hereinafter defined) could, following a chapter 11 plan of the Debtors (or successors thereto), severely limit the Debtors' (or their successors') ability to use the Tax Attributes for purposes of the Internal Revenue Code of 1986, as amended (the "Tax Code"); and (ii) approving the restrictions and procedures as set forth herein to preserve the Tax Attributes pursuant to sections 105(a) and 362(a) of the Bankruptcy Code. **The Debtors are requesting that the relief be effective as of the date of the filing of the Motion** (the "Motion Date"). **IF THE REQUESTED RELIEF IS GRANTED, ANY ACQUISITION, DISPOSITION OR OTHER TRANSFER IN VIOLATION OF THE RESTRICTIONS SET FORTH IN THE ORDER SHALL BE NULL AND VOID *AB INITIO* AS AN ACT IN VIOLATION OF THE AUTOMATIC STAY UNDER SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE.**

PLEASE TAKE FURTHER NOTICE that a copy of the Motion can be found on the Debtors' website: http://www.lehman-docket.com.

PLEASE TAKE FURTHER NOTICE that the following restrictions and procedures, if approved by the Bankruptcy Court, shall apply to the accumulation of and trading in THE DEBTORS' SECURITIES, effective *nunc pro tunc* to the date of the filing of the Motion:[2]

**1**      Notice of 382(l)(5) Plan; Amended Notice of 382(l)(5) Plan.

   **(a)**      Notice of 382(l)(5) Plan. Upon filing a chapter 11 plan and disclosure statement that contemplates the potential utilization of section 382(l)(5) of the Tax Code (a "382(l)(5) Plan"), the Debtors may, if, after consultation with their attorneys and advisors and the attorneys and advisors for the Creditors' Committee, they determine that the application of section 382(l)(5) of the Tax Code is reasonably likely to be beneficial to the reorganized Debtors (or any successors thereto), (i) publish (or arrange for publication of) a notice and provide a written notice to the Notice Parties, disclosing the filing of such 382(l)(5) Plan and the potential issuance of a Sell-Down Notice (as defined in Paragraph 3(a) below) in connection therewith on the Debtors' website: http://www.lehman-docket.com and in the national editions of *The Wall Street Journal* and *The New York Times* (a "Notice of 382(l)(5) Plan"), (ii) identify the classes of Securities that are potentially subject to a Sell-Down Notice and (iii) identify the applicable

---

[2] Capitalized terms used in Paragraphs 1 – 7 have the meaning ascribed in Paragraph 7, if not otherwise defined herein.

Threshold Amounts (by class or other applicable breakdown) for status as a Substantial Securityholder.

(b)     Amended Notice of 382(l)(5) Plan.  The Debtors may determine subsequent to the date of the Notice of 382(l)(5) Plan or an Amended Notice of 382(l)(5) Plan (as defined below), to (i) adjust the Threshold Amount or (ii) identify additional classes of Securities that are potentially subject to a Sell-Down Notice.  In that case, the Debtors shall publish and provide notice of such additional amount and/or such additional class of Securities in the same manner as the Notice of 382(l)(5) Plan and such notice shall be an "Amended Notice of 382(l)(5) Plan."  The Amended Notice of 382(l)(5) Plan shall require (x) any person or Entity that previously filed a Notice of Substantial Securityholder Status to update information regarding such Substantial Securityholder's Beneficial Ownership of Securities and (y) any person or Entity that is a Substantial Securityholder as of the date of the most recent Amended Notice of 382(l)(5) Plan, but that was not previously required to file a Notice of Substantial Securityholder Status (an "Additional Substantial Securityholder"), to file with the Bankruptcy Court and serve upon the Debtors', the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 below within ten (10) days of the date of the Amended Notice of 382(l)(5) Plan.

(c)     Early Notice.  The Debtors reserve the right, in order to assist in determining their eligibility for section 382(l)(5) of the Tax Code, to request in a manner consistent with the publication of the Notice of 382(l)(5) Plan described above, information regarding the Beneficial Ownership of Securities prior to the filing of the Notice of 382(l)(5) Plan.

2      Notice of Substantial Securityholder Status.  Following a request for Beneficial Ownership information pursuant to (i) a Notice of 382(l)(5) Plan, (ii) an Amended Notice of 382(l)(5) Plan or (iii) Paragraph 1(c) above, any person or Entity that as of the date such request is made (the "Request Date") is or becomes a Substantial Securityholder shall file with the Bankruptcy Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status (a "Notice of Substantial Securityholder Status"), in the form annexed to the Motion as Exhibit D, within ten (10) days of the later of (i) the Request Date and (ii) the date such person becomes a Substantial Securityholder. At the holder's election, the Notice of Substantial Securityholder Status that is filed with the Bankruptcy Court (but not such notice served upon the Debtors, the attorneys for the Debtors or the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the aggregate dollar amount of Securities that such holder Beneficially Owns.

**3**     <u>Sell-Down Notices</u>.

    **(a)**     <u>Sell-Down Notices</u>.  Following the issuance of a Notice of 382(l)(5) Plan, but no earlier than sixty (60) days prior to the then-scheduled hearing with respect to the 382(l)(5) Plan, if the Debtors determine it to be reasonably necessary to require the sale or transfer of all or a portion of the Beneficial Ownership of Securities held by a Substantial Securityholder on the basis that such sale or transfer is appropriate to reasonably ensure that the requirements of section 382(l)(5) of the Tax Code will be satisfied, and either the Creditors' Committee or the Bankruptcy Court similarly so determines, the Debtors may file a motion requesting that the Bankruptcy Court enter an order (the "<u>Sell-Down Order</u>") approving the issuance of a notice (the "<u>Sell-Down Notice</u>") that such Substantial Securityholder must sell, cause to sell or otherwise transfer all or a portion of its Beneficial Ownership of Securities (by class or other applicable breakdown) in excess of the Maximum Amount for such Substantial Securityholder (such excess amount, an "<u>Excess Amount</u>") to Permitted Transferees.  If the Bankruptcy Court enters a Sell-Down Order approving the Debtors' issuance of a Sell-Down Notice, the Debtors shall provide a copy of such Sell-Down Order to the applicable Substantial Securityholders.

    **(b)**     <u>Requirement to Sell Down</u>.  Prior to (i) the effective date of the 382(l)(5) Plan or (ii) such earlier date set forth in the Sell-Down Order, which shall not be earlier than the day after the entry of the order confirming the 382(l)(5) Plan as may be specified by the Debtors (the "<u>Sell-Down Date</u>"), each Substantial Securityholder shall sell, cause to sell or otherwise transfer an amount of the Beneficial Ownership of Securities (if any) necessary to comply with the Sell-Down Notice (the "<u>Sell-Down</u>"); <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary in the Order and for the avoidance of doubt, no Substantial Securityholder shall be required to sell, cause to sell or otherwise transfer any Beneficial Ownership of Securities if such sale would result in such holder having Beneficial Ownership of an aggregate amount of Securities (by class or other applicable breakdown) that is less than such holder's Protected Amount (as hereinafter defined). Each Substantial Securityholder shall sell, cause to sell or otherwise transfer its Beneficial Ownership of Securities subject to the Sell-Down to Permitted Transferees; <u>provided however</u> that such Substantial Securityholder shall not have a reasonable basis to believe that any such Permitted Transferee would own, immediately after the contemplated transfer, an Excess Amount of Securities.

    **(c)**     <u>Notice of Compliance</u>.  A Substantial Securityholder subject to the Sell-Down shall, within five (5) business days after the later of (i) entry of an order approving the 382(l)(5) Plan, (ii) the Sell-Down Date, and (iii) such other date specified in the Sell-Down Notice, as applicable, but in all events before the effective date of the 382(l)(5) Plan, and as a condition to

4

receiving Affected Equity, serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice substantially in the form annexed to the Motion as <u>Exhibit E</u> that such Substantial Securityholder has complied with the terms and conditions set forth in this Paragraph 3 and that such Substantial Securityholder does not and will not hold an Excess Amount of Securities as of the Sell-Down Date and at all times through the effective date of the 382(l)(5) Plan (the "<u>Notice of Compliance</u>").  Any Substantial Securityholder who fails to comply with this provision shall not receive Affected Equity with respect to any Excess Amount of Securities.

4    <u>Advance Approval of Acquisitions</u>.  Any proposed transfer or acquisition of Securities from and after the date of the Sell-Down Order shall be subject to the following advance approval procedures:

    **(a)**    <u>Acquisition of Securities</u>.  At least fifteen (15) business days prior to the proposed date of any transfer of Securities that would result in (i) an increase in the dollar amount of Securities Beneficially Owned by a Substantial Securityholder or (ii) any person or Entity becoming a Substantial Securityholder (a "<u>Proposed Securities Acquisition Transaction</u>"), such person, Entity, or Substantial Securityholder (each a "<u>Proposed Securities Transferee</u>") must file with the Bankruptcy Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a Notice of Request to Purchase, Acquire, or Otherwise Accumulate a Security (a "<u>Securities Acquisition Request</u>"), in the form annexed to the Motion as <u>Exhibit F</u>, which describes specifically and in detail the intended acquisition of Securities, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements of Bankruptcy Rule 3001.  At the Proposed Securities Transferee's election, the Securities Acquisition Request that is filed with the Bankruptcy Court (but not such request served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such transferee's taxpayer identification number and the aggregate dollar amount of Securities that such transferee Beneficially Owns and proposes to purchase or otherwise acquire.

    **(b)**    <u>Approval Procedures</u>.  The Debtors may determine, in furtherance of the purposes of the provisions herein and after consultation with the attorneys for the Creditors' Committee, whether or not to approve a Securities Acquisition Request.  A Securities Acquisition Request that is not approved in writing by the Debtors within ten (10) business days after the filing of a Securities Acquisition Request shall be deemed rejected.

5    <u>Equity Forfeiture Provision</u>.

    **(a)**    <u>Equity Forfeiture Provision</u>.  Any Substantial Securityholder that violates its obligations under the Sell-Down Notice shall, pursuant to the Order, be

precluded from receiving, directly or indirectly, any consideration consisting of a beneficial ownership of equity (as determined in accordance with the applicable rules of section 382 of the Tax Code, including Options, whether or not treated as exercised under Treasury Regulation section 1.382-4) of the Debtors (or any successor to the Debtors, including as determined for U.S. federal income tax purposes) that is attributable to the Excess Amount of Securities for such Substantial Securityholder, including any consideration in lieu thereof, <u>provided</u> that such Substantial Securityholder may be entitled to receive any other consideration to which such holder may be entitled by virtue of holding Securities (the "<u>Equity Forfeiture Provision</u>").  Any purported acquisition of, or other increase in the Beneficial Ownership of, equity of the Debtors (or any successor) that is precluded by the Equity Forfeiture Provision will be an acquisition of "<u>Forfeited Equity</u>."  Any acquirer of Forfeited Equity shall, immediately upon becoming aware of such fact, return or cause to return the Forfeited Equity to the Debtors (or any successor to the Debtors) or, if all of the equity consideration properly issued to such acquirer and all or any portion of such Forfeited Equity shall have been sold prior to the time such acquirer becomes aware of such fact, such acquirer shall return or cause to return to the Debtors (or any successor to the Debtors) (i) any Forfeited Equity still held by such acquirer and (ii) the proceeds attributable to the sale of Forfeited Equity, calculated by treating the most recently sold equity as Forfeited Equity.  Any acquirer that receives Forfeited Equity and deliberately fails to comply with the preceding sentence shall be subject to such additional sanctions as the Bankruptcy Court may determine.  Any Forfeited Equity returned to the Debtors shall be distributed (including a transfer to charity) or extinguished, in the Debtors' sole discretion, in furtherance of the 382(l)(5) Plan.

**(b)**   <u>Notification Requirement</u>.  In effecting any sale or other transfer of Securities pursuant to a Sell-Down Notice, a Substantial Securityholder shall, to the extent that it is reasonably feasible to do so within the normal constraints of the market in which such sale takes place, notify the acquirer of such Securities of the existence of the Order and the Equity Forfeiture Provision (it being understood that, in all cases in which there is direct communication between a salesperson and a customer, including, without limitation, communication via telephone, e-mail, and instant messaging, the existence of the Order and the Equity Forfeiture Provision shall be included in such salesperson's summary of the transaction).

**6**   <u>Miscellaneous</u>.

**(a)**   <u>No Disclosure of Participation</u>.  To permit reliance by the Debtors on Treasury Regulation section 1.382-9(d)(3), any Substantial Securityholder that participates in formulating any chapter 11 plan of or on behalf of the Debtors (which shall include, without limitation, making any suggestions

or proposals to the Debtors or their advisors with regard to such a plan), shall not, and shall not be asked to, disclose (or otherwise make evident unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement) to the Debtors that any Securities in which such Substantial Securityholder has a Beneficial Ownership are Newly Traded Securities.  For this purpose, the Debtors acknowledge and agree that the following activities shall not constitute participation in formulating a chapter 11 plan if, in pursuing such activities, the relevant Substantial Securityholder does not disclose (or otherwise make evident) to the Debtors that such Substantial Securityholder has Beneficial Ownership of Newly Traded Securities: filing an objection to a proposed disclosure statement or to confirmation of a proposed chapter 11 plan; voting to accept or reject a proposed chapter 11 plan; reviewing or commenting on a proposed business plan; providing information on a confidential basis to the attorneys for the Debtors or attorneys for the Creditors' Committee unconnected with the formulation of the chapter 11 plan; general membership on an official committee or an *ad hoc* committee; or taking any action required by the order of the Bankruptcy Court.

**(b)**     Confidentiality.  Except to the extent necessary to demonstrate to the Bankruptcy Court the need for the issuance of a Sell-Down Notice, other than information contained in the Notice of Substantial Securityholder Status that is public or in connection with an audit or other investigation by the Internal Revenue Service ("IRS") or other taxing authority, the Debtors shall keep such notices and any additional information provided by a Substantial Securityholder pursuant to the Order strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity; provided, however, that the Debtors may disclose the identity of the Substantial Securityholder to its counsel and professional advisors and/or the counsel and professional advisors of the Creditors' Committee and of any other person(s) that are subject to a nondisclosure agreement with the Debtors, each of whom shall keep all such notices strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity subject to further order of the Bankruptcy Court; and provided, further, that to the extent the Debtors reasonably determine such confidential information is necessary to demonstrate to the Bankruptcy Court the need for the issuance of a Sell-Down Notice, the Debtors shall seek to file such confidential information (determined by, among other things, whether such information was redacted in any public filing) under seal.

**(c)**     Exception.  No person or Entity shall be subject to the aforementioned provisions with respect to any transfer described in Treasury Regulation section 1.382-9(d)(5)(ii), provided that such transfer is not for a principal purpose of obtaining stock in the reorganized Debtors (or any successor) or permitting the transferee to benefit from the losses of the Debtors

within the meaning of Treasury Regulation section 1.382-9(d)(5)(iii); provided, further, that any such transferee who becomes a Substantial Securityholder shall file with the Bankruptcy Court, and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 above within fifteen (15) business days of the later of (i) the day of the entry of the Order by the Bankruptcy Court and (ii) the date on which such person or Entity becomes a Substantial Securityholder.

**7**    Definitions. For purposes of the Order, the following terms have the following meanings:

**(a)**    Affected Equity. "Affected Equity" means the stock or other equity of the reorganized Debtors (or their successors), including Options, to be issued and distributed pursuant to the 382(l)(5) Plan.

**(b)**    Applicable Percentage. "Applicable Percentage" means, if only one class of Affected Equity is to be issued pursuant to the terms of the 382(l)(5) Plan and holders within any class of Securities will receive a pro-rata distribution of the Affected Equity, 4.5% of the number of such shares or equity interests that the Debtors reasonably estimate will be issued at the effective date of such 382(l)(5) Plan, as determined for U.S. federal income tax purposes. If more than one class of Affected Equity is to be distributed pursuant to the terms of the 382(l)(5) Plan or holders with a class of Securities may receive a disproportionate distribution of such Affected Equity relative to other holders in the same class, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the 382(l)(5) Plan and disclosure statement, and shall be expressed in a manner that makes clear the number of shares or other equity interests in each class of Affected Equity that would constitute the Applicable Percentage.

**(c)**    Beneficial Ownership. "Beneficial Ownership" of a Security shall mean:

(x) the beneficial ownership of a Security as determined in accordance with applicable rules under section 382 of the Tax Code (for such purpose, treating a Security as if it is stock), and, to the extent provided in those rules from time to time, shall include (A) direct and indirect ownership (determined without regard to the rule that treats stock of an Entity to which the constructive ownership rules apply as no longer owned by that Entity); and (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of Securities and/or stock; and

    (y) the beneficial ownership of an Option (irrespective of the purpose for which such option was issued, created or acquired).

For the avoidance of doubt, beneficial ownership of a Security also includes the beneficial ownership of any right to receive any equity consideration to be distributed in respect of a Security pursuant to a chapter 11 plan or applicable bankruptcy court order.  Variations of the term "Beneficial Ownership" shall have correlative meanings.

**(d)**    <u>Creditors' Committee</u>. The "Creditors' Committee" shall mean any official committee of holders of unsecured Securities appointed pursuant to section 1102 of the Bankruptcy Code in the Debtors' chapter 11 cases.

**(e)**    <u>Entity</u>.  "Entity" shall have the meaning given to such term under Treasury Regulation section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition.

**(f)**    <u>Maximum Amount</u>.  "Maximum Amount" means for each person or Entity and by class or other applicable breakdown of Securities, the greater of (A) the applicable Threshold Amount and (B) the Protected Amount (if any) for such Substantial Securityholder.

**(g)**    <u>Newly Traded Securities</u>.  "Newly Traded Securities" means Securities (i) with respect to which an Entity acquired Beneficial Ownership after the date that was 18 months before the Commencement Date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury Regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Beneficial Ownership.

**(h)**    <u>Notice Parties</u>.  "Notice Parties" shall mean (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities.

**(i)**    <u>Option</u>.  An "Option" shall have the meaning given to such term under Treasury Regulation section 1.382-4(d)(9)(i), with respect to the acquisition of a Security or any consideration (including equity) distributed in respect of any Security pursuant to a chapter 11 plan or applicable bankruptcy court order.

**(j)**    Order.  The "Order" shall mean the order, entered by the Bankruptcy Court, authorizing the implementation of these restrictions and procedures.

**(k)**    Permitted Transferee.  A "Permitted Transferee" with respect to a Substantial Securityholder is a person that is not a Related Person and whose holding of a Security would not result in such Substantial Securityholder having Beneficial Ownership of such Security.

**(l)**    Protected Amount.  "Protected Amount" means the amount of Securities (by class or other applicable breakdown) of which a holder had Beneficial Ownership on the Motion Date, increased by the amount of Securities of which such holder acquires, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date minus the amount of Securities of which such holder sells, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date.

**(m)**    Related Person.  Persons (including Entities) are "Related Persons" if:  (A) the person bears a relationship to the other person described in section 267(b) or 707(b) of the Tax Code, or (B) the persons are members of a group acting in concert with respect to the acquisition of Securities or equity in the reorganized Debtors.

**(n)**    Security.  A "Security" shall be any claim against any of the Debtors, including, without limitation (i) any claim against any of the Debtors as a guarantor and (ii) the following classes of preferred stock of LBHI: (a) 5.94% Cumulative Preferred Stock, Series C; (b) 5.67% Cumulative Preferred Stock, Series D (c) 6.50% Cumulative Preferred Stock, Series F; (d) Floating Rate Cumulative Preferred Stock, Series G; and (e) 7.95% Non-Cumulative Perpetual Preferred Stock, Series J.   In calculating the amount of any Securities hereunder, any applicable intercreditor agreements, including subordination agreements, shall be given effect in accordance with their terms.  Nothing contained in this Paragraph 7(n) shall be deemed an admission of a party or be used by any party for any purpose other than compliance with the Order and shall not constitute an admission or evidence by any party with respect to Securities of the Debtors.

**(o)**    Substantial Securityholder.  A "Substantial Securityholder" is any person or Entity that Beneficially Owns an aggregate dollar amount of Securities, or any Entity controlled by such person or Entity through which such person or Entity Beneficially Owns Securities, of more than the Threshold Amount.

For the avoidance of doubt, section 382 of the Tax Code, the Treasury Regulations promulgated thereunder, and all relevant IRS and judicial

authority shall apply in determining whether the Securities of several persons and/or Entities must be aggregated when testing for Substantial Securityholder status, treating Securities as if they were stock.

**(p)**    Tax Code.  "Tax Code" means the Internal Revenue Code of 1986, as amended from time to time, and the Treasury Regulations promulgated thereunder.

**(q)**    Threshold Amount.  "Threshold Amount" means the amount of Securities, as set forth in the Notice of 382(l)(5) Plan (as revised by any Amended Notice of 382(l)(5) Plan, as applicable) sufficient, in the determination of the Debtors, to entitle the Beneficial Owner thereof to the Applicable Percentage of the Affected Equity.  The amount determined in the preceding sentence shall be disclosed in the Notice of 382(l)(5) Plan and may be adjusted thereafter as contemplated by this Order or any future order of the Bankruptcy Court.

**(r)**    Treasury Regulations.  "Treasury Regulations" means the U.S. Department of Treasury regulations promulgated under the Tax Code, as amended from time to time.

**8**    Noncompliance with the Trading Procedures.  Any purchase, sale, or other transfer of Securities in violation of the procedures set forth herein shall be null and void *ab initio* and shall confer no rights on the transferee.

**9**    Debtors' Right to Waive.  The Debtors may waive, in writing, any and all restrictions, stays, and notification procedures contained in this Motion.

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004, on **February 10, 2010 at 10:00 a.m.** (Eastern Time) or as soon thereafter as counsel may be heard (the "Hearing").

PLEASE TAKE FURTHER NOTICE that any objection or response to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York, and (i) shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format and (ii) shall be served in accordance with General Order M-242, upon (A) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (B) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, (Attn:  Shai Y. Waisman, Esq.), attorneys for the Debtors; (C) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (D) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), attorneys for the official committee of unsecured creditors appointed in these cases; and (E) any person or entity entitled to receive notice of the Motion in these cases, so as to be actually filed and received no later than **February 3, 2010 at 4:00 p.m.** (Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not filed and received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 19, 2010
New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (JMP)
                                           :
                    Debtors.               :    (Jointly Administered)
                                           :
-----------------------------------------------------------------x
```

**DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105(a) AND 362 OF THE BANKRUPTCY**
**CODE FOR APPROVAL OF CERTAIN RESTRICTIONS AND**
**PROCEDURES APPLICABLE TO TRANSFERS OF THE DEBTORS' SECURITIES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its subsidiaries in the above

referenced chapter 11 cases, as debtors and debtors in possession (the "Debtors" and, collectively

with LBHI's wholly-owned non-debtor domestic subsidiaries, "Lehman"), request entry of an

order pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy

Code"), authorizing the Debtors to establish certain restrictions and procedures applicable to

trading in Securities (as hereinafter defined) in order to protect the potential value of Lehman's

consolidated net operating tax loss carryforwards ("NOLs") and certain other tax attributes

(together with NOLs, the "Tax Attributes"). In support of the motion, the Debtors respectfully

represent as follows:

**Background**

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Jurisdiction**

4.      This Court has jurisdiction to consider this motion (the "Motion") pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

5.      On November 5, 2008, the Court granted the relief sought in the Debtors' Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Approving

Restrictions on Certain Transfers of Interests of Debtors and Establishing Notification

Procedures Relating Thereto, dated October 15, 2008 (the "Stock Trading Motion") [Docket No.

978], and entered an order (the "Stock Trading Order"), effective as of October 15, 2008,

establishing notification procedures and approving restrictions on the transfers of certain equity

interests in LBHI [Docket No. 1386], as more fully described in the Stock Trading Motion.

6.      By this motion (the "Motion"), the Debtors request, pursuant to sections

105(a) and 362 of the Bankruptcy Code, entry of an order (the "Order") establishing certain

restrictions and procedures **effective *nunc pro tunc* to the date of the filing of this Motion** (the

"Motion Date") applicable to trading in Securities as set forth herein (the "Procedures") to

protect the potential value of the Tax Attributes following an emergence from bankruptcy.  The

Debtors propose to notify parties of the Procedures through (i) a form of notice substantially in

the form annexed hereto as Exhibit A (the "Notice of Motion"), which shall describe the

restrictions and procedures described herein, reference the Debtors' website where a copy of the

Motion will be available, and state the date of the hearing at which the Court will consider the

Motion and (ii) a form of notice substantially in the form annexed hereto as Exhibit B which

shall describe the Procedures actually approved by the Court (the "Procedures Notice").  A copy

of the Debtors' proposed Order is annexed hereto as Exhibit C.

### Net Operating Loss Carryforward Amounts

7.      The Debtors estimate that, as of the date hereof, Lehman has incurred

NOLs of $48 billion, in addition to certain other Tax Attributes.

8.      Pursuant to the Stock Trading Order, this Court found that the Tax

Attributes are property of the Debtors' estates and are protected by the automatic stay prescribed

in section 362 of the Bankruptcy Code.  In the event that some or all of the Debtors successfully

3

reorganize, their Tax Attributes – even after reductions for the discharge of debt, if the Tax Attributes are not otherwise restricted – could potentially allow the reorganized Debtors (or their successors) to significantly reduce future U.S. federal income tax liability, depending upon their future operating results.

9.     The ability of the Debtors to use the Tax Attributes to offset future income is subject to certain statutory limitations – namely, sections 382 and 383 of the Internal Revenue Code of 1986, as amended (the "Tax Code") – previously described to this Court in connection with the Stock Trading Order.  Sections 382 and 383 of the Tax Code limit a corporation's use of its NOLs, tax credits and certain other tax attributes to offset future income or tax after the corporation has undergone an "ownership change."  For purposes of section 382, an ownership change generally occurs when the percentage of a company's equity held by one or more "5% shareholders" (as such term is defined in section 382) increases by more than 50 percentage points above such shareholders' lowest stock ownership percentage (calculated over a statutorily prescribed testing period, usually three years).  However, subject to certain requirements, the limitations imposed by section 382 in the context of an ownership change pursuant to a confirmed chapter 11 plan or applicable bankruptcy court order are significantly more relaxed than those applicable outside chapter 11.  *See* 26 U.S.C. §§ 382(l)(5), (6).

10.     The Stock Trading Order is intended to prevent an ownership change *prior* to a chapter 11 plan, thereby preserving the use of Lehman's Tax Attributes during the pendency of the Debtors' bankruptcy cases.  This Motion seeks to preserve the Debtors' ability to maximize the potential value of the Tax Attributes in connection with the implementation of any chapter 11 plan involving all or part of the Debtors' current assets.  It is now possible that one or more of the Debtors' chapter 11 plans will involve the issuance of new common stock in one or

4

more of the Debtors (or their successors) and the distribution of such stock to certain creditors in

satisfaction, in whole or in part, of their Securities.  This issuance and distribution likely would

result in an "ownership change" under section 382.  In such event, the Debtors may be entitled to

the special relief afforded by section 382(l)(5) of the Tax Code for ownership changes pursuant

to a confirmed chapter 11 plan or applicable court order.  Such relief, however, may not be

available if the trading and accumulation of Securities prior to the effective date of a chapter 11

plan is left unmonitored and unrestricted.

11.    Accordingly, and in furtherance of the automatic stay provisions of section

362 of the Bankruptcy Code and pursuant to section 105 of the Bankruptcy Code, the Debtors

need the ability to monitor and, if necessary, to require the sell-down of Securities acquired by

certain holders after the Motion Date to ensure that the Debtors will have the opportunity to avail

themselves of relief under section 382(l)(5) in the event of a successful chapter 11 plan.

<u>**Trading Restrictions and Notification Requirements**</u>

12.    To preserve the potential value of the Tax Attributes in connection with a

chapter 11 plan of some or all of the assets of the Debtors, the Debtors propose the following

trading restrictions and procedures applicable to acquisitions of Securities, effective *nunc pro*

*tunc* to the Motion Date:[1]

**1**    Notice of 382(l)(5) Plan; Amended Notice of 382(l)(5) Plan.

    **(a)**    <u>Notice of 382(l)(5) Plan</u>.  Upon filing a chapter 11 plan and disclosure
statement that contemplates the potential utilization of section 382(l)(5) of
the Tax Code (a "<u>382(l)(5) Plan</u>"), the Debtors may, if, after consultation
with their attorneys and advisors and the attorneys and advisors for the
Creditors' Committee, they determine that the application of section
382(l)(5) of the Tax Code is reasonably likely to be beneficial to the
reorganized Debtors (or any successors thereto), (i) publish (or arrange for

---

[1] Capitalized terms used in Paragraphs 1 – 7 have the meaning ascribed in Paragraph 7, if not otherwise defined
herein.

publication of) a notice and provide a written notice to the Notice Parties, disclosing the filing of such 382(l)(5) Plan and the potential issuance of a Sell-Down Notice (as defined in Paragraph 3(a) below) in connection therewith on the Debtors' website: http://www.lehman-docket.com and in the national editions of *The Wall Street Journal* and *The New York Times* (a "Notice of 382(l)(5) Plan"), (ii) identify the classes of Securities that are potentially subject to a Sell-Down Notice and (iii) identify the applicable Threshold Amounts (by class or other applicable breakdown) for status as a Substantial Securityholder.

(b)    Amended Notice of 382(l)(5) Plan.  The Debtors may determine subsequent to the date of the Notice of 382(l)(5) Plan or an Amended Notice of 382(l)(5) Plan (as defined below), to (i) adjust the Threshold Amount or (ii) identify additional classes of Securities that are potentially subject to a Sell-Down Notice.  In that case, the Debtors shall publish and provide notice of such additional amount and/or such additional class of Securities in the same manner as the Notice of 382(l)(5) Plan and such notice shall be an "Amended Notice of 382(l)(5) Plan."  The Amended Notice of 382(l)(5) Plan shall require (x) any person or Entity that previously filed a Notice of Substantial Securityholder Status to update information regarding such Substantial Securityholder's Beneficial Ownership of Securities and (y) any person or Entity that is a Substantial Securityholder as of the date of the most recent Amended Notice of 382(l)(5) Plan, but that was not previously required to file a Notice of Substantial Securityholder Status (an "Additional Substantial Securityholder"), to file with the Court and serve upon the Debtors', the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 below within ten (10) days of the date of the Amended Notice of 382(l)(5) Plan.

(c)    Early Notice.  The Debtors reserve the right, in order to assist in determining their eligibility for section 382(l)(5) of the Tax Code, to request in a manner consistent with the publication of the Notice of 382(l)(5) Plan described above, information regarding the Beneficial Ownership of Securities prior to the filing of the Notice of 382(l)(5) Plan.

2    Notice of Substantial Securityholder Status.  Following a request for Beneficial Ownership information pursuant to (i) a Notice of 382(l)(5) Plan, (ii) an Amended Notice of 382(l)(5) Plan or (iii) Paragraph 1(c) above, any person or Entity that as of the date such request is made (the "Request Date") is or becomes a Substantial Securityholder shall file with the Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status (a "Notice of Substantial Securityholder Status"), in the form annexed hereto as Exhibit D, within ten (10) days of the later of (i) the Request Date and (ii) the date such person becomes a Substantial Securityholder.  At the holder's election, the Notice of Substantial Securityholder Status that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors

or the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the aggregate dollar amount of Securities that such holder Beneficially Owns.

**3**    <u>Sell-Down Notices</u>.

**(a)**    <u>Sell-Down Notices</u>.  Following the issuance of a Notice of 382(l)(5) Plan, but no earlier than sixty (60) days prior to the then-scheduled hearing with respect to the 382(l)(5) Plan, if the Debtors determine it to be reasonably necessary to require the sale or transfer of all or a portion of the Beneficial Ownership of Securities held by a Substantial Securityholder on the basis that such sale or transfer is appropriate to reasonably ensure that the requirements of section 382(l)(5) of the Tax Code will be satisfied, and either the Creditors' Committee or the Court similarly so determines, the Debtors may file a motion requesting that the Court enter an order (the "<u>Sell-Down Order</u>") approving the issuance of a notice (the "<u>Sell-Down Notice</u>") that such Substantial Securityholder must sell, cause to sell or otherwise transfer all or a portion of its Beneficial Ownership of Securities (by class or other applicable breakdown) in excess of the Maximum Amount for such Substantial Securityholder (such excess amount, an "<u>Excess Amount</u>") to Permitted Transferees.  If the Court enters a Sell-Down Order approving the Debtors' issuance of a Sell-Down Notice, the Debtors shall provide a copy of such Sell-Down Order to the applicable Substantial Securityholders.

**(b)**    <u>Requirement to Sell Down</u>.  Prior to (i) the effective date of the 382(l)(5) Plan or (ii) such earlier date set forth in the Sell-Down Order, which shall not be earlier than the day after the entry of the order confirming the 382(l)(5) Plan as may be specified by the Debtors (the "<u>Sell-Down Date</u>"), each Substantial Securityholder shall sell, cause to sell or otherwise transfer an amount of the Beneficial Ownership of Securities (if any) necessary to comply with the Sell-Down Notice (the "<u>Sell-Down</u>"); <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary in the Order and for the avoidance of doubt, no Substantial Securityholder shall be required to sell, cause to sell or otherwise transfer any Beneficial Ownership of Securities if such sale would result in such holder having Beneficial Ownership of an aggregate amount of Securities (by class or other applicable breakdown) that is less than such holder's Protected Amount (as hereinafter defined).  Each Substantial Securityholder shall sell, cause to sell or otherwise transfer its Beneficial Ownership of Securities subject to the Sell-Down to Permitted Transferees; <u>provided however</u> that such Substantial Securityholder shall not have a reasonable basis to believe that any such Permitted Transferee would own, immediately after the contemplated transfer, an Excess Amount of Securities.

    **(c)**    <u>Notice of Compliance</u>.  A Substantial Securityholder subject to the Sell-Down shall, within five (5) business days after the later of (i) entry of an order approving the 382(l)(5) Plan, (ii) the Sell-Down Date, and (iii) such other date specified in the Sell-Down Notice, as applicable, but in all events before the effective date of the 382(l)(5) Plan, and as a condition to receiving Affected Equity, serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice substantially in the form annexed hereto as <u>Exhibit E</u> that such Substantial Securityholder has complied with the terms and conditions set forth in this Paragraph 3 and that such Substantial Securityholder does not and will not hold an Excess Amount of Securities as of the Sell-Down Date and at all times through the effective date of the 382(l)(5) Plan (the "<u>Notice of Compliance</u>").  Any Substantial Securityholder who fails to comply with this provision shall not receive Affected Equity with respect to any Excess Amount of Securities.

**4**    <u>Advance Approval of Acquisitions</u>.  Any proposed transfer or acquisition of Securities from and after the date of the Sell-Down Order shall be subject to the following advance approval procedures:

    **(a)**    <u>Acquisition of Securities</u>.  At least fifteen (15) business days prior to the proposed date of any transfer of Securities that would result in (i) an increase in the dollar amount of Securities Beneficially Owned by a Substantial Securityholder or (ii) any person or Entity becoming a Substantial Securityholder (a "<u>Proposed Securities Acquisition Transaction</u>"), such person, Entity, or Substantial Securityholder (each a "<u>Proposed Securities Transferee</u>") must file with the Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a Notice of Request to Purchase, Acquire, or Otherwise Accumulate a Security (a "<u>Securities Acquisition Request</u>"), in the form annexed hereto as <u>Exhibit F</u>, which describes specifically and in detail the intended acquisition of Securities, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements of Bankruptcy Rule 3001.  At the Proposed Securities Transferee's election, the Securities Acquisition Request that is filed with the Court (but not such request served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such transferee's taxpayer identification number and the aggregate dollar amount of Securities that such transferee Beneficially Owns and proposes to purchase or otherwise acquire.

    **(b)**    <u>Approval Procedures</u>.  The Debtors may determine, in furtherance of the purposes of the provisions herein and after consultation with the attorneys for the Creditors' Committee, whether or not to approve a Securities Acquisition Request.  A Securities Acquisition Request that is not approved in writing by the Debtors within ten (10) business days after the filing of a Securities Acquisition Request shall be deemed rejected.

**5**     Equity Forfeiture Provision.

**(a)**     Equity Forfeiture Provision.  Any Substantial Securityholder that violates its obligations under the Sell-Down Notice shall, pursuant to the Order, be precluded from receiving, directly or indirectly, any consideration consisting of a beneficial ownership of equity (as determined in accordance with the applicable rules of section 382 of the Tax Code, including Options, whether or not treated as exercised under Treasury Regulation section 1.382-4) of the Debtors (or any successor to the Debtors, including as determined for U.S. federal income tax purposes) that is attributable to the Excess Amount of Securities for such Substantial Securityholder, including any consideration in lieu thereof, provided that such Substantial Securityholder may be entitled to receive any other consideration to which such holder may be entitled by virtue of holding Securities (the "Equity Forfeiture Provision").  Any purported acquisition of, or other increase in the Beneficial Ownership of, equity of the Debtors (or any successor) that is precluded by the Equity Forfeiture Provision will be an acquisition of "Forfeited Equity."  Any acquirer of Forfeited Equity shall, immediately upon becoming aware of such fact, return or cause to return the Forfeited Equity to the Debtors (or any successor to the Debtors) or, if all of the equity consideration properly issued to such acquirer and all or any portion of such Forfeited Equity shall have been sold prior to the time such acquirer becomes aware of such fact, such acquirer shall return or cause to return to the Debtors (or any successor to the Debtors) (i) any Forfeited Equity still held by such acquirer and (ii) the proceeds attributable to the sale of Forfeited Equity, calculated by treating the most recently sold equity as Forfeited Equity.  Any acquirer that receives Forfeited Equity and deliberately fails to comply with the preceding sentence shall be subject to such additional sanctions as the Court may determine.  Any Forfeited Equity returned to the Debtors shall be distributed (including a transfer to charity) or extinguished, in the Debtors' sole discretion, in furtherance of the 382(l)(5) Plan.

**(b)**     Notification Requirement.  In effecting any sale or other transfer of Securities pursuant to a Sell-Down Notice, a Substantial Securityholder shall, to the extent that it is reasonably feasible to do so within the normal constraints of the market in which such sale takes place, notify the acquirer of such Securities of the existence of the Order and the Equity Forfeiture Provision (it being understood that, in all cases in which there is direct communication between a salesperson and a customer, including, without limitation, communication via telephone, e-mail, and instant messaging, the existence of the Order and the Equity Forfeiture Provision shall be included in such salesperson's summary of the transaction).

**6**    <u>Miscellaneous</u>.

    **(a)**    <u>No Disclosure of Participation</u>.  To permit reliance by the Debtors on Treasury Regulation section 1.382-9(d)(3), any Substantial Securityholder that participates in formulating any chapter 11 plan of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisors with regard to such a plan), shall not, and shall not be asked to, disclose (or otherwise make evident unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement) to the Debtors that any Securities in which such Substantial Securityholder has a Beneficial Ownership are Newly Traded Securities.  For this purpose, the Debtors acknowledge and agree that the following activities shall not constitute participation in formulating a chapter 11 plan if, in pursuing such activities, the relevant Substantial Securityholder does not disclose (or otherwise make evident) to the Debtors that such Substantial Securityholder has Beneficial Ownership of Newly Traded Securities: filing an objection to a proposed disclosure statement or to confirmation of a proposed chapter 11 plan; voting to accept or reject a proposed chapter 11 plan; reviewing or commenting on a proposed business plan; providing information on a confidential basis to the attorneys for the Debtors or attorneys for the Creditors' Committee unconnected with the formulation of the chapter 11 plan; general membership on an official committee or an *ad hoc* committee; or taking any action required by the order of the Court.

    **(b)**    <u>Confidentiality</u>.  Except to the extent necessary to demonstrate to the Court the need for the issuance of a Sell-Down Notice, other than information contained in the Notice of Substantial Securityholder Status that is public or in connection with an audit or other investigation by the Internal Revenue Service ("<u>IRS</u>") or other taxing authority, the Debtors shall keep such notices and any additional information provided by a Substantial Securityholder pursuant to the Order strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity; <u>provided</u>, <u>however</u>, that the Debtors may disclose the identity of the Substantial Securityholder to its counsel and professional advisors and/or the counsel and professional advisors of the Creditors' Committee and of any other person(s) that are subject to a nondisclosure agreement with the Debtors, each of whom shall keep all such notices strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity subject to further order of the Court; and <u>provided</u>, <u>further</u>, that to the extent the Debtors reasonably determine such confidential information is necessary to demonstrate to the Court the need for the issuance of a Sell-Down Notice, the Debtors shall seek to file such confidential information (determined by, among other things, whether such information was redacted in any public filing) under seal.

**(c)**    Exception.  No person or Entity shall be subject to the aforementioned provisions with respect to any transfer described in Treasury Regulation section 1.382-9(d)(5)(ii), provided that such transfer is not for a principal purpose of obtaining stock in the reorganized Debtors (or any successor) or permitting the transferee to benefit from the losses of the Debtors within the meaning of Treasury Regulation section 1.382-9(d)(5)(iii); provided, further, that any such transferee who becomes a Substantial Securityholder shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 above within fifteen (15) business days of the later of (i) the day of the entry of the Order by the Court and (ii) the date on which such person or Entity becomes a Substantial Securityholder.

**7**    Definitions.  For purposes of the Order, the following terms have the following meanings:

**(a)**    Affected Equity.  "Affected Equity" means the stock or other equity of the reorganized Debtors (or their successors), including Options, to be issued and distributed pursuant to the 382(l)(5) Plan.

**(b)**    Applicable Percentage.  "Applicable Percentage" means, if only one class of Affected Equity is to be issued pursuant to the terms of the 382(l)(5) Plan and holders within any class of Securities will receive a pro-rata distribution of the Affected Equity, 4.5% of the number of such shares or equity interests that the Debtors reasonably estimate will be issued at the effective date of such 382(l)(5) Plan, as determined for U.S. federal income tax purposes.  If more than one class of Affected Equity is to be distributed pursuant to the terms of the 382(l)(5) Plan or holders with a class of Securities may receive a disproportionate distribution of such Affected Equity relative to other holders in the same class, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the 382(l)(5) Plan and disclosure statement, and shall be expressed in a manner that makes clear the number of shares or other equity interests in each class of Affected Equity that would constitute the Applicable Percentage.

**(c)**    Beneficial Ownership.  "Beneficial Ownership" of a Security shall mean:

(x) the beneficial ownership of a Security as determined in accordance with applicable rules under section 382 of the Tax Code (for such purpose, treating a Security as if it is stock), and, to the extent provided in those rules from time to time, shall include (A) direct and indirect ownership (determined without regard to the rule that treats stock of an Entity to which the constructive ownership rules apply as

no longer owned by that Entity); and (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of Securities and/or stock; and

(y) the beneficial ownership of an Option (irrespective of the purpose for which such option was issued, created or acquired).

For the avoidance of doubt, beneficial ownership of a Security also includes the beneficial ownership of any right to receive any equity consideration to be distributed in respect of a Security pursuant to a chapter 11 plan or applicable bankruptcy court order.  Variations of the term "Beneficial Ownership" shall have correlative meanings.

**(d)**     Creditors' Committee. The "Creditors' Committee" shall mean any official committee of holders of unsecured Securities appointed pursuant to section 1102 of the Bankruptcy Code in the Debtors' chapter 11 cases.

**(e)**     Entity.  "Entity" shall have the meaning given to such term under Treasury Regulation section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition.

**(f)**     Maximum Amount.  "Maximum Amount" means for each person or Entity and by class or other applicable breakdown of Securities, the greater of (A) the applicable Threshold Amount and (B) the Protected Amount (if any) for such Substantial Securityholder.

**(g)**     Newly Traded Securities.  "Newly Traded Securities" means Securities (i) with respect to which an Entity acquired Beneficial Ownership after the date that was 18 months before the Commencement Date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury Regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Beneficial Ownership.

**(h)**     Notice Parties.  "Notice Parties" shall mean (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities.

**(i)**    Option.  An "Option" shall have the meaning given to such term under Treasury Regulation section 1.382-4(d)(9)(i), with respect to the acquisition of a Security or any consideration (including equity) distributed in respect of any Security pursuant to a chapter 11 plan or applicable bankruptcy court order.

**(j)**    Order.  The "Order" shall mean the order, entered by the Bankruptcy Court, authorizing the implementation of these restrictions and procedures.

**(k)**    Permitted Transferee.  A "Permitted Transferee" with respect to a Substantial Securityholder is a person that is not a Related Person and whose holding of a Security would not result in such Substantial Securityholder having Beneficial Ownership of such Security.

**(l)**    Protected Amount.  "Protected Amount" means the amount of Securities (by class or other applicable breakdown) of which a holder had Beneficial Ownership on the Motion Date, increased by the amount of Securities of which such holder acquires, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date minus the amount of Securities of which such holder sells, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date.

**(m)**    Related Person.  Persons (including Entities) are "Related Persons" if:  (A) the person bears a relationship to the other person described in section 267(b) or 707(b) of the Tax Code, or (B) the persons are members of a group acting in concert with respect to the acquisition of Securities or equity in the reorganized Debtors.

**(n)**    Security.  A "Security" shall be any claim against any of the Debtors, including, without limitation (i) any claim against any of the Debtors as a guarantor and (ii) the following classes of preferred stock of LBHI: (a) 5.94% Cumulative Preferred Stock, Series C; (b) 5.67% Cumulative Preferred Stock, Series D (c) 6.50% Cumulative Preferred Stock, Series F; (d) Floating Rate Cumulative Preferred Stock, Series G; and (e) 7.95% Non-Cumulative Perpetual Preferred Stock, Series J.   In calculating the amount of any Securities hereunder, any applicable intercreditor agreements, including subordination agreements, shall be given effect in accordance with their terms.  Nothing contained in this Paragraph 7(n) shall be deemed an admission of a party or be used by any party for any purpose other than compliance with the Order and shall not constitute an admission or evidence by any party with respect to Securities of the Debtors.

**(o)**    Substantial Securityholder.  A "Substantial Securityholder" is any person or Entity that Beneficially Owns an aggregate dollar amount of Securities,

or any Entity controlled by such person or Entity through which such person or Entity Beneficially Owns Securities, of more than the Threshold Amount.

For the avoidance of doubt, section 382 of the Tax Code, the Treasury Regulations promulgated thereunder, and all relevant IRS and judicial authority shall apply in determining whether the Securities of several persons and/or Entities must be aggregated when testing for Substantial Securityholder status, treating Securities as if they were stock.

**(p)**  Tax Code.  "Tax Code" means the Internal Revenue Code of 1986, as amended from time to time, and the Treasury Regulations promulgated thereunder.

**(q)**  Threshold Amount.  "Threshold Amount" means the amount of Securities, as set forth in the Notice of 382(l)(5) Plan (as revised by any Amended Notice of 382(l)(5) Plan, as applicable) sufficient, in the determination of the Debtors, to entitle the Beneficial Owner thereof to the Applicable Percentage of the Affected Equity.  The amount determined in the preceding sentence shall be disclosed in the Notice of 382(l)(5) Plan and may be adjusted thereafter as contemplated by this Order or any future order of the Court.

**(r)**  Treasury Regulations. "Treasury Regulations" means the U.S. Department of Treasury regulations promulgated under the Tax Code, as amended from time to time.

**8**  Noncompliance with the Trading Procedures.  Any purchase, sale, or other transfer of Securities in violation of the procedures set forth herein shall be null and void *ab initio* and shall confer no rights on the transferee.

**9**  Debtors' Right to Waive.  The Debtors may waive, in writing, any and all restrictions, stays, and notification procedures contained in this Motion.

## Restriction on Use of Tax Attributes Following Change of Control

13.    Sections 382 and 383 of the Tax Code impose an annual limitation on the use by a corporation (or a consolidated group of corporations) of net operating loss carryforwards, capital loss carryforwards, tax credits and other tax attributes (including certain "built-in" losses) following an "ownership change."  An "ownership change" generally occurs when "5-percent shareholders" (as defined in section 382) increase their interests in a corporation by more than 50 percent.  Any reorganization of the Debtors is likely to trigger an

ownership change of the consolidated group of which LBHI is the common parent for U.S.

federal income tax purposes.

14.    The annual limitation imposed on a corporation's (or group's) use of its

tax attributes is generally calculated by reference to the equity value of the corporation (or

common parent of the group).  Where the ownership change occurs pursuant to a chapter 11 plan

in a case under title 11 of the United States Code, a more favorable rule generally permits the

corporation or group to calculate the limitation imposed under sections 382 and 383 by reference

to the equity value of the corporation or group immediately after, rather than immediately before,

the ownership change (i.e., taking into account any increase in value resulting from the surrender

or cancellation of claims again the corporation or group in connection with the effectiveness of

the plan).  See Tax Code § 382(l)(6).

15.    However, the Tax Code provides an exception to this annual limitation for

a debtor corporation where certain conditions are satisfied.  Under section 382(l)(5) of the Tax

Code, a debtor corporation (or group) is not subject to the annual limitation ordinarily imposed

by section 382 the Tax Code if the debtor's pre-change shareholders (i.e., persons or entities who

owned the debtor's stock immediately before the ownership change) and/or "qualified creditors"

emerge from the reorganization owning at least 50% of the total value and voting power of the

reorganized debtor's stock immediately after the ownership change.  See Tax Code

§ 382(l)(5)(A).  For this purpose, holders of certain debt-like preferred stock are treated as

creditors. See Notice 88-57.

16.    Under section 382(1)(5)(E) of the Tax Code and the Treasury Regulations

promulgated thereunder, a creditor whose claim is exchanged for stock under a chapter 11 plan

or pursuant to an applicable bankruptcy court order is a "qualified creditor" if such claim either

15

(i) has been owned by such creditor for 18 or more months prior to the date of filing of the

bankruptcy petition or (ii) arose in the ordinary course of the debtor's business and was at all

times beneficially owned by such creditor.  In addition, even creditors that do not satisfy the

necessary holding periods can be "qualified creditors" if their receipt of stock in the reorganized

company pursuant to the chapter 11 plan does not exceed a threshold level.

17.    Under Treasury Regulation section 1.382-9(d)(3), a debtor generally may,

for purposes of the section 382(1)(5), "treat indebtedness as always having been owned by the

beneficial owner of the indebtedness immediately before the ownership change if the beneficial

owner is not, immediately after the ownership change, directly or indirectly either a 5%

shareholder or an entity through which a 5% shareholder owns an indirect ownership interest" in

the debtor.  Stock ownership is measured in terms of vote *and* value.

18.    Although there can be no assurance that section 382(1)(5) will ultimately

be available to the Debtors, the proposed procedures and restrictions seek to preserve the

Debtors' ability to propose a chapter 11 plan or other transactions that maximize the value of the

Tax Attributes following a chapter 11 plan in a manner that does not unduly impact the trading

of Securities.  Because the determination of whether a creditor is a "qualified creditor" is

generally made as of the effective date of the chapter 11 plan, transfers of Securities by holders

before such date may affect the Debtors' ability to satisfy the requirements of section 382(1)(5).

19.    The requested relief is intended to allow the Debtors the flexibility to

structure a chapter 11 plan that preserves the maximum potential value of the Tax Attributes by

ensuring that trading in Securities after the Motion Date does not jeopardize the availability to

the reorganized Debtors of the benefits of section 382(l)(5).

**The Proposed Conditions and Notice Procedures are**
**Necessary and in the Best Interests of the Debtors, Their Estates, and Creditors**

20.     The Debtors may not be able to satisfy the requirements of section

382(l)(5) of the Tax Code unless certain restrictions and procedures are established to allow the

Debtors to require certain holders to sell down Securities acquired after the Motion Date.  The

Debtors believe the proposed procedures and the sell-down obligation strike an appropriate

balance between Security holders' reasonable desire for current liquidity and the Debtors' efforts

to maximize the value of their estates for the benefit of all Security holders and any other parties

in interest by preserving, to the greatest extent possible, the availability of the maximum amount

of Tax Attributes following a reorganization.

21.     Specifically, the relief requested has been narrowly tailored to permit the

unrestricted trading of Securities—subject to Bankruptcy Rule 3001(e) and applicable securities,

corporate and other legal restrictions—until the Debtors determine to pursue a chapter 11 plan or

other court-approved transfer of assets contemplating the potential utilization of section

382(l)(5), at which point, if necessary to satisfy section 382(l)(5), a purchaser of Securities may

be required to resell some or all of any Securities acquired from and after the Motion Date.

22.     The preservation of the Debtors' Tax Attributes may enhance the Debtors

prospects for a successful emergence from chapter 11.  Thus, the Tax Attributes are valuable

assets of the Debtors' estates and are entitled to the protection of the automatic stay, and the

exercise of this Court's equitable powers under section 105(a) is appropriate.

**Ample Support Exists for the Proposed Restrictions and Notification Requirements**

23.     Section 362(a) of the Bankruptcy Code operates as a stay of, among other

things, "any act to obtain possession of property of the estate or of property from the estate or to

exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Accordingly, "where a non-

17

debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."  *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991), *cert. denied,* 502 U.S. 821 (1991).

24.     It is well-established that a debtor's NOLs are property of its estate and protected by section 362 of the Bankruptcy Code.  *See Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them.").  The United States Court of Appeals for the Second Circuit, in its seminal *Prudential Lines* decision, affirmed the application of the automatic stay and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction for the stock of its debtor subsidiary because doing so would have adversely affected the subsidiary's ability to use its NOLs under the special relief provisions of section 382 of the Tax Code.  928 F.2d 565.  The Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate."  Moreover, "[a] paramount and important goal of Chapter 11 is the rehabilitation of the debtor by offering breathing space and an opportunity to rehabilitate its business and eventually generate revenue."  Including the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id*. at 573 (internal citations omitted); s*ee also In re Fruehauf Trailer Corp.*, 444 F.3d 203 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Prudential Lines*, 928 F.2d at 572); *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. 2003) (finding that the debtors'

18

NOL carryforwards "are property of the Debtors' estates and are protected by the automatic stay

prescribed in section 362 of the Bankruptcy Code"); *Gibson v. United States (In re Russell)*, 927

F.2d 413, 417 (8th Cir. 1991) (concluding the "right to carry forward the [debtor's] NOLs" was a

"property interest" of the estate); *In re Delta Air Lines, Inc.*, Ch. 11 Case No. 05-17923 (PCB)

(Bankr. S.D.N.Y. Sept. 16, 2005) (finding that tax credit carryforwards were property of the

debtors' estates and approving notification procedures and restrictions on certain transfers of

claims against and interests in the debtors to protect, among other things, $346 million in non-

NOL tax credits).

   25. In *Prudential Lines,* the parent corporation's interest in its worthless stock

deduction was intertwined with the debtor's NOLs.  The Second Circuit determined that, if the

parent were permitted to take a worthless stock deduction, it would have an adverse impact on

the debtor subsidiary's ability to carry forward its NOLs.  Therefore, the Second Circuit noted

that, "despite the fact that the [parent corporation's] action is not directed specifically at [the

debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over

property of the estate."  *Id.*

   26. The Second Circuit also held that the permanent injunction was supported

by the court's equitable powers pursuant to section 105(a) of the Bankruptcy Code, which

authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of [title 11]."  *Id.*; *see also* 11 U.S.C. § 105(a).  Because the NOLs were

valuable assets of the debtor, the Second Circuit refused to disturb the bankruptcy court's

determination that elimination of the right to apply its NOLs to offset income on future tax

returns would impede the debtor's reorganization.  *Prudential Lines*, 928 F.2d at 574.

27.    Courts have consistently limited trading in claims through a sell-down remedy.  *See In re Northwest Airlines Corp., et al.*, Ch. 11 Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. 2005) [Docket No. 836], *In re Delta Air Lines, Inc., et al.*, Ch. 11 Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. 2005) [Docket No. 1640], *In re Bearingpoint, Inc., et al.*, Ch. 11 Case No. 09-10691(REG) (Bankr. S.D.N.Y. 2008) [Docket No. 670].  A sell-down remedy allows holders of claims to continue purchasing and selling claims throughout the bankruptcy case without jeopardizing the Debtors' ability to avail themselves of the relief afforded by section 382(l)(5) of the Tax Code.  Trading in claims will be subject to the advance approval of the Debtors only when there is a viable chapter 11 plan that contemplates the use of section 382(l)(5).

28.    In short, it is well-established in this Circuit, as well as other Circuits, that the automatic stay under section 362(a)(3) of the Bankruptcy Code stays actions that would adversely affect a debtor's NOLs, tax credits and other tax attributes.  These actions, including the trading of claims against a debtor, may be determined to be null and void *ab initio*.

## Relief Should Be Granted

29.    Absent granting the relief requested herein *nunc pro tunc* to the Motion Date, the Debtors may be irreparably harmed by the mere filing of this Motion.  Because a flurry of Securities trading outside the scope of the Procedures would likely immediately follow the filing of the Motion.  Parties holding Securities may rush to transfer their interests in the Debtors before any protections against claims trading that may be deleterious to the Debtors' estates is approved by this Court.  Such trading would put the Debtors' Tax Attributes in jeopardy and be counterproductive to the Debtors' objectives in seeking the relief requested herein.  Accordingly, the Debtors request that the Procedures described herein be effective as of the Motion Date.

30.     Within three (3) business days of the filing of this Motion, the Debtors

will send the Notice of Motion to (i) the Office of the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the

Southern District of New York, (vi) all parties who have requested notice in these chapter 11

cases in accordance with the amended order entered on February 13, 2009 governing case

management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of

transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or

clearinghouses for Securities. (collectively, the "Notice Parties").

31.     Following the entry of the Order, the Debtors will send the Notice Parties

the Procedures Notice describing the authorized trading restrictions and procedures.  The

Debtors will also publish the Procedures Notice in the national editions of *The Wall Street

Journal* and *The New York Times*, and post the Procedures Notice on the Debtors' website,

http://www.lehman-docket.com.

32.     The foregoing Procedures satisfy due process and the strictures of

Bankruptcy Rule 9014 by providing the counterparties with notice and an opportunity to object

and be heard at a hearing.  *See, e.g.*, *In re General Motors Corp.*, Ch. 11 Case No. 09-50026

(REG) (Bankr. S.D.N.Y. 2009) [Docket No. 2539] (approving similar procedures); *Harada v.

DBL Liquidating Trust (In re Drexel Burnham Lambert Group, Inc.)*, 160 B.R. 729, 733

(S.D.N.Y. 1993) (indicating that an opportunity to present objections satisfies due process); *see

also Atamian v. U.S. Dep't of Educ. (In re Atamian),* 368 B.R. 375, 378 (Bankr. D. Del. 2007),

*aff'd,* No. 05-20040 (MFW), 2008 WL 853462 (D. Del. Mar. 31, 2008), *aff'd*, No. 08-2026, 2008

WL 5007392 (3d Cir. Nov. 26, 2008) ("Rule 9014 does not require a hearing, only an

opportunity for a hearing."). Furthermore, the proposed Procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwarranted administrative expenses. Similar notice and objection procedures were approved in the cases discussed above.

## Notice

33.    No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities. The Debtors submit that no other or further notice need be provided.

## No Previous Request

34.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  January 19, 2010
        New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

## **Exhibit A**

(Notice of Motion)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x
                                                               :
In re                                                          :        **Chapter 11 Case No.**
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                                               :
                              **Debtors.**              :        **(Jointly Administered)**
                                                               :
-------------------------------------------------------------- x

**NOTICE OF FILING OF MOTION FOR AN ORDER**
**APPROVING CERTAIN RESTRICTIONS AND PROCEDURES**
**APPLICABLE TO TRANSFERS OF THE DEBTORS' SECURITIES**

TO ALL PERSONS OR ENTITIES WITH SECURITIES OF LEHMAN BROTHERS
HOLDINGS INC. OR ANY OF ITS DEBTOR AFFILIATES WHOSE CASES UNDER
CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE ARE, OR SUBSEQUENTLY
BECOME, JOINTLY ADMINISTERED WITH CASE NO. 08-13555 (JMP)[1]:

      PLEASE TAKE NOTICE that on September 15, 2008 (the "Commencement
Date") and periodically thereafter, Lehman Brothers Holdings, Inc. ("LBHI") and its subsidiaries
in the above-referenced chapter 11 cases, as debtors and debtors in possession (the "Debtors"
and, collectively with LBHI's wholly-owned non-debtor domestic subsidiaries, "Lehman"),
commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy
Code").   Section 362(a) of the Bankruptcy Code operates as a stay of any act to obtain
possession of property of the Debtors' estates or of property from the Debtors' estates or to
exercise control over property of the Debtors' estates.

      PLEASE TAKE FURTHER NOTICE that on November 5, 2008, pursuant to that
certain *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Certain
Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating
Thereto*, the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court") found that Lehman's consolidated net operating loss tax carryforwards
("NOLs") and certain other tax attributes (together with NOLs, the "Tax Attributes") are
property of the Debtors' estates and are protected by the automatic stay prescribed in section 362
of the Bankruptcy Code.

      PLEASE TAKE FURTHER NOTICE that on January 19, 2010, the Debtors filed
a motion (the "Motion") with the Bankruptcy Court, having jurisdiction over these chapter 11
cases, to consider entry of an order (the "Order") (i) finding that under certain circumstances the
unrestricted accumulation of Securities (as hereinafter defined) could, following a chapter 11

---

[1]  All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion.

plan of the Debtors (or successors thereto), severely limit the Debtors' (or their successors') ability to use the Tax Attributes for purposes of the Internal Revenue Code of 1986, as amended (the "Tax Code"); and (ii) approving the restrictions and procedures as set forth herein to preserve the Tax Attributes pursuant to sections 105(a) and 362(a) of the Bankruptcy Code. **The Debtors are requesting that the relief be effective as of the date of the filing of the Motion** (the "Motion Date"). **IF THE REQUESTED RELIEF IS GRANTED, ANY ACQUISITION, DISPOSITION OR OTHER TRANSFER IN VIOLATION OF THE RESTRICTIONS SET FORTH IN THE ORDER SHALL BE NULL AND VOID *AB INITIO* AS AN ACT IN VIOLATION OF THE AUTOMATIC STAY UNDER SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE.**

PLEASE TAKE FURTHER NOTICE that a copy of the Motion can be found on the Debtors' website: http://www.lehman-docket.com.

PLEASE TAKE FURTHER NOTICE that the following restrictions and procedures, if approved by the Bankruptcy Court, shall apply to the accumulation of and trading in THE DEBTORS' SECURITIES, effective *nunc pro tunc* to the date of the filing of the Motion:[2]

    **1**    Notice of 382(l)(5) Plan; Amended Notice of 382(l)(5) Plan.

        **(a)**    Notice of 382(l)(5) Plan.   Upon filing a chapter 11 plan and disclosure statement that contemplates the potential utilization of section 382(l)(5) of the Tax Code (a "382(l)(5) Plan"), the Debtors may, if, after consultation with their attorneys and advisors and the attorneys and advisors for the Creditors' Committee, they determine that the application of section 382(l)(5) of the Tax Code is reasonably likely to be beneficial to the reorganized Debtors (or any successors thereto), (i) publish (or arrange for publication of) a notice and provide a written notice to the Notice Parties, disclosing the filing of such 382(l)(5) Plan and the potential issuance of a Sell-Down Notice (as defined in Paragraph 3(a) below) in connection therewith on the Debtors' website: http://www.lehman-docket.com and in the national editions of *The Wall Street Journal* and *The New York Times* (a "Notice of 382(l)(5) Plan"), (ii) identify the classes of Securities that are potentially subject to a Sell-Down Notice and (iii) identify the applicable Threshold Amounts (by class or other applicable breakdown) for status as a Substantial Securityholder.

        **(b)**    Amended Notice of 382(l)(5) Plan.   The Debtors may determine subsequent to the date of the Notice of 382(l)(5) Plan or an Amended Notice of 382(l)(5) Plan (as defined below), to (i) adjust the Threshold Amount or (ii) identify additional classes of Securities that are potentially

---

[2] Capitalized terms used in Paragraphs 1 – 7 have the meaning ascribed in Paragraph 7, if not otherwise defined herein.

subject to a Sell-Down Notice.   In that case, the Debtors shall publish and provide notice of such additional amount and/or such additional class of Securities in the same manner as the Notice of 382(l)(5) Plan and such notice shall be an "Amended Notice of 382(l)(5) Plan."   The Amended Notice of 382(l)(5) Plan shall require (x) any person or Entity that previously filed a Notice of Substantial Securityholder Status to update information regarding such Substantial Securityholder's Beneficial Ownership of Securities and (y) any person or Entity that is a Substantial Securityholder as of the date of the most recent Amended Notice of 382(l)(5) Plan, but that was not previously required to file a Notice of Substantial Securityholder Status (an "<u>Additional Substantial Securityholder</u>"), to file with the Bankruptcy Court and serve upon the Debtors', the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 below within ten (10) days of the date of the Amended Notice of 382(l)(5) Plan.

**(c)**     <u>Early Notice</u>.   The Debtors reserve the right, in order to assist in determining their eligibility for section 382(l)(5) of the Tax Code, to request in a manner consistent with the publication of the Notice of 382(l)(5) Plan described above, information regarding the Beneficial Ownership of Securities prior to the filing of the Notice of 382(l)(5) Plan.

**2**     <u>Notice of Substantial Securityholder Status</u>.   Following a request for Beneficial Ownership information pursuant to (i) a Notice of 382(l)(5) Plan, (ii) an Amended Notice of 382(l)(5) Plan or (iii) Paragraph 1(c) above, any person or Entity that as of the date such request is made (the "<u>Request Date</u>") is or becomes a Substantial Securityholder shall file with the Bankruptcy Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status (a "<u>Notice of Substantial Securityholder Status</u>"), in the form annexed to the Motion as <u>Exhibit D</u>, within ten (10) days of the later of (i) the Request Date and (ii) the date such person becomes a Substantial Securityholder. At the holder's election, the Notice of Substantial Securityholder Status that is filed with the Bankruptcy Court (but not such notice served upon the Debtors, the attorneys for the Debtors or the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the aggregate dollar amount of Securities that such holder Beneficially Owns.

**3**     <u>Sell-Down Notices</u>.

**(a)**     <u>Sell-Down Notices</u>.   Following the issuance of a Notice of 382(l)(5) Plan, but no earlier than sixty (60) days prior to the then-scheduled hearing with respect to the 382(l)(5) Plan, if the Debtors determine it to be reasonably necessary to require the sale or transfer of all or a portion of the Beneficial Ownership of Securities held by a Substantial Securityholder on the basis that such sale or transfer is appropriate to reasonably ensure that the

requirements of section 382(l)(5) of the Tax Code will be satisfied, and either the Creditors' Committee or the Bankruptcy Court similarly so determines, the Debtors may file a motion requesting that the Bankruptcy Court enter an order (the "Sell-Down Order") approving the issuance of a notice (the "Sell-Down Notice") that such Substantial Securityholder must sell, cause to sell or otherwise transfer all or a portion of its Beneficial Ownership of Securities (by class or other applicable breakdown) in excess of the Maximum Amount for such Substantial Securityholder (such excess amount, an "Excess Amount") to Permitted Transferees.   If the Bankruptcy Court enters a Sell-Down Order approving the Debtors' issuance of a Sell-Down Notice, the Debtors shall provide a copy of such Sell-Down Order to the applicable Substantial Securityholders.

**(b)**    Requirement to Sell Down.   Prior to (i) the effective date of the 382(l)(5) Plan or (ii) such earlier date set forth in the Sell-Down Order, which shall not be earlier than the day after the entry of the order confirming the 382(l)(5) Plan as may be specified by the Debtors (the "Sell-Down Date"), each Substantial Securityholder shall sell, cause to sell or otherwise transfer an amount of the Beneficial Ownership of Securities (if any) necessary to comply with the Sell-Down Notice (the "Sell-Down"); provided, however, that notwithstanding anything to the contrary in the Order and for the avoidance of doubt, no Substantial Securityholder shall be required to sell, cause to sell or otherwise transfer any Beneficial Ownership of Securities if such sale would result in such holder having Beneficial Ownership of an aggregate amount of Securities (by class or other applicable breakdown) that is less than such holder's Protected Amount (as hereinafter defined).   Each Substantial Securityholder shall sell, cause to sell or otherwise transfer its Beneficial Ownership of Securities subject to the Sell-Down to Permitted Transferees; provided however that such Substantial Securityholder shall not have a reasonable basis to believe that any such Permitted Transferee would own, immediately after the contemplated transfer, an Excess Amount of Securities.

**(c)**    Notice of Compliance.   A Substantial Securityholder subject to the Sell-Down shall, within five (5) business days after the later of (i) entry of an order approving the 382(l)(5) Plan, (ii) the Sell-Down Date, and (iii) such other date specified in the Sell-Down Notice, as applicable, but in all events before the effective date of the 382(l)(5) Plan, and as a condition to receiving Affected Equity, serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice substantially in the form annexed to the Motion as Exhibit E that such Substantial Securityholder has complied with the terms and conditions set forth in this Paragraph 3 and that such Substantial Securityholder does not and will not hold an Excess Amount of Securities as of the Sell-Down

Date and at all times through the effective date of the 382(l)(5) Plan (the "Notice of Compliance").   Any Substantial Securityholder who fails to comply with this provision shall not receive Affected Equity with respect to any Excess Amount of Securities.

**4**    Advance Approval of Acquisitions.   Any proposed transfer or acquisition of Securities from and after the date of the Sell-Down Order shall be subject to the following advance approval procedures:

**(a)**    Acquisition of Securities.   At least fifteen (15) business days prior to the proposed date of any transfer of Securities that would result in (i) an increase in the dollar amount of Securities Beneficially Owned by a Substantial Securityholder or (ii) any person or Entity becoming a Substantial Securityholder (a "Proposed Securities Acquisition Transaction"), such person, Entity, or Substantial Securityholder (each a "Proposed Securities Transferee") must file with the Bankruptcy Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a Notice of Request to Purchase, Acquire, or Otherwise Accumulate a Security (a "Securities Acquisition Request"), in the form annexed to the Motion as Exhibit F, which describes specifically and in detail the intended acquisition of Securities, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements of Bankruptcy Rule 3001.   At the Proposed Securities Transferee's election, the Securities Acquisition Request that is filed with the Bankruptcy Court (but not such request served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such transferee's taxpayer identification number and the aggregate dollar amount of Securities that such transferee Beneficially Owns and proposes to purchase or otherwise acquire.

**(b)**    Approval Procedures.   The Debtors may determine, in furtherance of the purposes of the provisions herein and after consultation with the attorneys for the Creditors' Committee, whether or not to approve a Securities Acquisition Request.   A Securities Acquisition Request that is not approved in writing by the Debtors within ten (10) business days after the filing of a Securities Acquisition Request shall be deemed rejected.

**5**    Equity Forfeiture Provision.

**(a)**    Equity Forfeiture Provision.   Any Substantial Securityholder that violates its obligations under the Sell-Down Notice shall, pursuant to the Order, be precluded from receiving, directly or indirectly, any consideration consisting of a beneficial ownership of equity (as determined in accordance with the applicable rules of section 382 of the Tax Code, including Options, whether or not treated as exercised under Treasury Regulation section 1.382-4) of the Debtors (or any successor to the

Debtors, including as determined for U.S. federal income tax purposes) that is attributable to the Excess Amount of Securities for such Substantial Securityholder, including any consideration in lieu thereof, <u>provided</u> that such Substantial Securityholder may be entitled to receive any other consideration to which such holder may be entitled by virtue of holding Securities (the "<u>Equity Forfeiture Provision</u>").   Any purported acquisition of, or other increase in the Beneficial Ownership of, equity of the Debtors (or any successor) that is precluded by the Equity Forfeiture Provision will be an acquisition of "<u>Forfeited Equity</u>."   Any acquirer of Forfeited Equity shall, immediately upon becoming aware of such fact, return or cause to return the Forfeited Equity to the Debtors (or any successor to the Debtors) or, if all of the equity consideration properly issued to such acquirer and all or any portion of such Forfeited Equity shall have been sold prior to the time such acquirer becomes aware of such fact, such acquirer shall return or cause to return to the Debtors (or any successor to the Debtors) (i) any Forfeited Equity still held by such acquirer and (ii) the proceeds attributable to the sale of Forfeited Equity, calculated by treating the most recently sold equity as Forfeited Equity.   Any acquirer that receives Forfeited Equity and deliberately fails to comply with the preceding sentence shall be subject to such additional sanctions as the Bankruptcy Court may determine.   Any Forfeited Equity returned to the Debtors shall be distributed (including a transfer to charity) or extinguished, in the Debtors' sole discretion, in furtherance of the 382(l)(5) Plan.

**(b)**    <u>Notification Requirement</u>.   In effecting any sale or other transfer of Securities pursuant to a Sell-Down Notice, a Substantial Securityholder shall, to the extent that it is reasonably feasible to do so within the normal constraints of the market in which such sale takes place, notify the acquirer of such Securities of the existence of the Order and the Equity Forfeiture Provision (it being understood that, in all cases in which there is direct communication between a salesperson and a customer, including, without limitation, communication via telephone, e-mail, and instant messaging, the existence of the Order and the Equity Forfeiture Provision shall be included in such salesperson's summary of the transaction).

**6**    <u>Miscellaneous</u>.

**(a)**    <u>No Disclosure of Participation</u>.   To permit reliance by the Debtors on Treasury Regulation section 1.382-9(d)(3), any Substantial Securityholder that participates in formulating any chapter 11 plan of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisors with regard to such a plan), shall not, and shall not be asked to, disclose (or otherwise make evident unless compelled to do so by an order of a court of competent jurisdiction

or some other applicable legal requirement) to the Debtors that any Securities in which such Substantial Securityholder has a Beneficial Ownership are Newly Traded Securities.   For this purpose, the Debtors acknowledge and agree that the following activities shall not constitute participation in formulating a chapter 11 plan if, in pursuing such activities, the relevant Substantial Securityholder does not disclose (or otherwise make evident) to the Debtors that such Substantial Securityholder has Beneficial Ownership of Newly Traded Securities:   filing an objection to a proposed disclosure statement or to confirmation of a proposed chapter 11 plan; voting to accept or reject a proposed chapter 11 plan; reviewing or commenting on a proposed business plan; providing information on a confidential basis to the attorneys for the Debtors or attorneys for the Creditors' Committee unconnected with the formulation of the chapter 11 plan; general membership on an official committee or an *ad hoc* committee; or taking any action required by the order of the Bankruptcy Court.

**(b)**     Confidentiality.   Except to the extent necessary to demonstrate to the Bankruptcy Court the need for the issuance of a Sell-Down Notice, other than information contained in the Notice of Substantial Securityholder Status that is public or in connection with an audit or other investigation by the Internal Revenue Service ("IRS") or other taxing authority, the Debtors shall keep such notices and any additional information provided by a Substantial Securityholder pursuant to the Order strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity; provided, however, that the Debtors may disclose the identity of the Substantial Securityholder to its counsel and professional advisors and/or the counsel and professional advisors of the Creditors' Committee and of any other person(s) that are subject to a nondisclosure agreement with the Debtors, each of whom shall keep all such notices strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity subject to further order of the Bankruptcy Court; and provided, further, that to the extent the Debtors reasonably determine such confidential information is necessary to demonstrate to the Bankruptcy Court the need for the issuance of a Sell-Down Notice, the Debtors shall seek to file such confidential information (determined by, among other things, whether such information was redacted in any public filing) under seal.

**(c)**     Exception.   No person or Entity shall be subject to the aforementioned provisions with respect to any transfer described in Treasury Regulation section 1.382-9(d)(5)(ii), provided that such transfer is not for a principal purpose of obtaining stock in the reorganized Debtors (or any successor) or permitting the transferee to benefit from the losses of the Debtors within the meaning of Treasury Regulation section 1.382-9(d)(5)(iii);

7

provided, further, that any such transferee who becomes a Substantial Securityholder shall file with the Bankruptcy Court, and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 above within fifteen (15) business days of the later of (i) the day of the entry of the Order by the Bankruptcy Court and (ii) the date on which such person or Entity becomes a Substantial Securityholder.

**7**    Definitions.    For purposes of the Order, the following terms have the following meanings:

**(a)**    Affected Equity.    "Affected Equity" means the stock or other equity of the reorganized Debtors (or their successors), including Options, to be issued and distributed pursuant to the 382(l)(5) Plan.

**(b)**    Applicable Percentage.    "Applicable Percentage" means, if only one class of Affected Equity is to be issued pursuant to the terms of the 382(l)(5) Plan and holders within any class of Securities will receive a pro-rata distribution of the Affected Equity, 4.5% of the number of such shares or equity interests that the Debtors reasonably estimate will be issued at the effective date of such 382(l)(5) Plan, as determined for U.S. federal income tax purposes.   If more than one class of Affected Equity is to be distributed pursuant to the terms of the 382(l)(5) Plan or holders with a class of Securities may receive a disproportionate distribution of such Affected Equity relative to other holders in the same class, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the 382(l)(5) Plan and disclosure statement, and shall be expressed in a manner that makes clear the number of shares or other equity interests in each class of Affected Equity that would constitute the Applicable Percentage.

**(c)**    Beneficial Ownership.    "Beneficial Ownership" of a Security shall mean:

(x) the beneficial ownership of a Security as determined in accordance with applicable rules under section 382 of the Tax Code (for such purpose, treating a Security as if it is stock), and, to the extent provided in those rules from time to time, shall include (A) direct and indirect ownership (determined without regard to the rule that treats stock of an Entity to which the constructive ownership rules apply as no longer owned by that Entity); and (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of Securities and/or stock; and

8

(y) the beneficial ownership of an Option (irrespective of the purpose for which such option was issued, created or acquired).

For the avoidance of doubt, beneficial ownership of a Security also includes the beneficial ownership of any right to receive any equity consideration to be distributed in respect of a Security pursuant to a chapter 11 plan or applicable bankruptcy court order.   Variations of the term "Beneficial Ownership" shall have correlative meanings.

**(d)**    Creditors' Committee. The "Creditors' Committee" shall mean any official committee of holders of unsecured Securities appointed pursuant to section 1102 of the Bankruptcy Code in the Debtors' chapter 11 cases.

**(e)**    Entity.   "Entity" shall have the meaning given to such term under Treasury Regulation section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition.

**(f)**    Maximum Amount.   "Maximum Amount" means for each person or Entity and by class or other applicable breakdown of Securities, the greater of (A) the applicable Threshold Amount and (B) the Protected Amount (if any) for such Substantial Securityholder.

**(g)**    Newly Traded Securities.   "Newly Traded Securities" means Securities (i) with respect to which an Entity acquired Beneficial Ownership after the date that was 18 months before the Commencement Date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury Regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Beneficial Ownership.

**(h)**    Notice Parties.   "Notice Parties" shall mean (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities.

**(i)**    Option.   An "Option" shall have the meaning given to such term under Treasury Regulation section 1.382-4(d)(9)(i), with respect to the acquisition of a Security or any consideration (including equity) distributed in respect of any Security pursuant to a chapter 11 plan or applicable bankruptcy court order.

**(j)**     Order.   The "Order" shall mean the order, entered by the Bankruptcy Court, authorizing the implementation of these restrictions and procedures.

**(k)**     Permitted Transferee.   A "Permitted Transferee" with respect to a Substantial Securityholder is a person that is not a Related Person and whose holding of a Security would not result in such Substantial Securityholder having Beneficial Ownership of such Security.

**(l)**     Protected Amount.   "Protected Amount" means the amount of Securities (by class or other applicable breakdown) of which a holder had Beneficial Ownership on the Motion Date, increased by the amount of Securities of which such holder acquires, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date minus the amount of Securities of which such holder sells, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date.

**(m)**     Related Person.   Persons (including Entities) are "Related Persons" if: (A) the person bears a relationship to the other person described in section 267(b) or 707(b) of the Tax Code, or (B) the persons are members of a group acting in concert with respect to the acquisition of Securities or equity in the reorganized Debtors.

**(n)**     Security.   A "Security" shall be any claim against any of the Debtors, including, without limitation (i) any claim against any of the Debtors as a guarantor and (ii) the following classes of preferred stock of LBHI: (a) 5.94% Cumulative Preferred Stock, Series C; (b) 5.67% Cumulative Preferred Stock, Series D (c) 6.50% Cumulative Preferred Stock, Series F; (d) Floating Rate Cumulative Preferred Stock, Series G; and (e) 7.95% Non-Cumulative Perpetual Preferred Stock, Series J.   In calculating the amount of any Securities hereunder, any applicable intercreditor agreements, including subordination agreements, shall be given effect in accordance with their terms.   Nothing contained in this Paragraph 7(n) shall be deemed an admission of a party or be used by any party for any purpose other than compliance with the Order and shall not constitute an admission or evidence by any party with respect to Securities of the Debtors.

**(o)**     Substantial Securityholder.   A "Substantial Securityholder" is any person or Entity that Beneficially Owns an aggregate dollar amount of Securities, or any Entity controlled by such person or Entity through which such person or Entity Beneficially Owns Securities, of more than the Threshold Amount.

For the avoidance of doubt, section 382 of the Tax Code, the Treasury

Regulations promulgated thereunder, and all relevant IRS and judicial authority shall apply in determining whether the Securities of several persons and/or Entities must be aggregated when testing for Substantial Securityholder status, treating Securities as if they were stock.

**(p)** <u>Tax Code</u>.   "Tax Code" means the Internal Revenue Code of 1986, as amended from time to time, and the Treasury Regulations promulgated thereunder.

**(q)** <u>Threshold Amount</u>.   "Threshold Amount" means the amount of Securities, as set forth in the Notice of 382(l)(5) Plan (as revised by any Amended Notice of 382(l)(5) Plan, as applicable) sufficient, in the determination of the Debtors, to entitle the Beneficial Owner thereof to the Applicable Percentage of the Affected Equity.   The amount determined in the preceding sentence shall be disclosed in the Notice of 382(l)(5) Plan and may be adjusted thereafter as contemplated by this Order or any future order of the Bankruptcy Court.

**(r)** <u>Treasury Regulations</u>. "Treasury Regulations" means the U.S. Department of Treasury regulations promulgated under the Tax Code, as amended from time to time.

**8** <u>Noncompliance with the Trading Procedures</u>.   Any purchase, sale, or other transfer of Securities in violation of the procedures set forth herein shall be null and void *ab initio* and shall confer no rights on the transferee.

**9** <u>Debtors' Right to Waive</u>.   The Debtors may waive, in writing, any and all restrictions, stays, and notification procedures contained in this Motion.

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004, on **February 10, 2010 at 10:00 a.m.** (Eastern Time) or as soon thereafter as counsel may be heard (the "<u>Hearing</u>").

PLEASE TAKE FURTHER NOTICE that any objection or response to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York, and (i) shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format and (ii) shall be served in accordance with General Order M-242, upon (A) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (B) Weil Gotshal & Manges LLP, 767 Fifth

Avenue, New York, New York 10153, (Attn:   Shai Y. Waisman, Esq.), attorneys for the
Debtors; (C) the Office of the United States Trustee for the Southern District of New York, 33
Whitehall Street, 21st Floor, New York, New York 10004 (Attn:   Andy Velez-Rivera, Paul
Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (D) Milbank, Tweed,
Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn:   Dennis
F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), attorneys for the official
committee of unsecured creditors appointed in these cases; and (E) any person or entity entitled
to receive notice of the Motion in these cases, so as to be actually filed and received no later than
**February 3, 2010 at 4:00 p.m.** (Eastern Time) (the "<u>Objection Deadline</u>").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not
filed and received by the Objection Deadline, the relief requested shall be deemed unopposed,
and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend
the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:   January 19, 2010
      New York, New York

_____

Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007


Attorneys for Debtors
and Debtors in Possession

**<u>Exhibit B</u>**

(Procedures Notice)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
                                                                  :
In re                                           :        **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* :        **08-13555 (JMP)**
                                                                  :
                                        **Debtors.**    :        **(Jointly Administered)**
                                                                  :
----------------------------------------------------------------- x

## NOTICE OF ORDER ESTABLISHING CERTAIN
## RESTRICTIONS AND PROCEDURES APPLICABLE
## TO CERTAIN TRANSFERS OF THE DEBTORS' SECURITIES

TO ALL PERSONS OR ENTITIES WITH SECURITIES OF LEHMAN BROTHERS
HOLDINGS INC. OR ANY OF ITS DEBTOR AFFILIATES WHOSE CASES UNDER
CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE ARE, OR SUBSEQUENTLY
BECOME, JOINTLY ADMINISTERED WITH CASE NO. 08-13555 (JMP)[1]:

PLEASE TAKE NOTICE that on September 15, 2008 (the "Commencement
Date") and periodically thereafter, Lehman Brothers Holdings, Inc. ("LBHI") and its subsidiaries
in the above-referenced chapter 11 cases, as debtors and debtors in possession (the "Debtors"
and, collectively with LBHI's wholly-owned non-debtor domestic subsidiaries, "Lehman")
commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy
Code").   Section 362(a) of the Bankruptcy Code operates as a stay of any act to obtain
possession of property of the Debtors' estates or of property from the Debtors' estates or to
exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on November 5, 2008, pursuant to that
certain *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Certain
Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating
Thereto*, the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court") found that Lehman's consolidated net operating loss tax carryforwards
("NOLs") and certain other tax attributes (together with NOLs, the "Tax Attributes") are
property of the Debtors' estates and are protected by the automatic stay prescribed in section 362
of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that on February __, 2010, the Bankruptcy
Court, having jurisdiction over these chapter 11 cases, upon motion of the Debtors (the
"Motion"), entered an order (i) finding that under certain circumstances the unrestricted

---

[1]  All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion, found at
the Debtors' website: http://www.lehman-docket.com.

accumulation of Securities (as hereinafter defined) could, following a reorganization of the Debtors (or their successors), severely limit the Debtors' (or their successors') ability to use the Tax Attributes for purposes of title 26 of the United States Code (the "Tax Code"); and (ii) approving the restrictions and procedures set forth below to preserve the Tax Attributes pursuant to sections 105(a) and 362(a) of the Bankruptcy Code (the "Order"). **The Order is effective as of January 19, 2010, the date of the filing of the Motion** (the "Motion Date"). **ANY ACQUISITION IN VIOLATION OF THE RESTRICTIONS SET FORTH BELOW SHALL BE NULL AND VOID *AB INITIO* AS AN ACT IN VIOLATION OF THE AUTOMATIC STAY UNDER SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE.**

PLEASE TAKE FURTHER NOTICE that the following restrictions and procedures have been approved by the Bankruptcy Court and shall apply to the accumulation of and trading in SECURITIES OF THE DEBTORS, effective *nunc pro tunc* to January 19, 2010, the date of the filing of the Motion:[2]

1    Notice of 382(l)(5) Plan; Amended Notice of 382(l)(5) Plan.

(a)    Notice of 382(l)(5) Plan.   Upon filing a chapter 11 plan and disclosure statement that contemplates the potential utilization of section 382(l)(5) of the Tax Code (a "382(l)(5) Plan"), the Debtors may, if, after consultation with their attorneys and advisors and the attorneys and advisors for the Creditors' Committee, they determine that the application of section 382(l)(5) of the Tax Code is reasonably likely to be beneficial to the reorganized Debtors (or any successors thereto), (i) publish (or arrange for publication of) a notice and provide a written notice to the Notice Parties, disclosing the filing of such 382(l)(5) Plan and the potential issuance of a Sell-Down Notice (as defined in Paragraph 3(a) below) in connection therewith on the Debtors' website: http://www.lehman-docket.com and in the national editions of *The Wall Street Journal* and *The New York Times* (a "Notice of 382(l)(5) Plan"), (ii) identify the classes of Securities that are potentially subject to a Sell-Down Notice and (iii) identify the applicable Threshold Amounts (by class or other applicable breakdown) for status as a Substantial Securityholder.

(b)    Amended Notice of 382(l)(5) Plan.   The Debtors may determine subsequent to the date of the Notice of 382(l)(5) Plan or an Amended Notice of 382(l)(5) Plan (as defined below), to (i) adjust the Threshold Amount or (ii) identify additional classes of Securities that are potentially subject to a Sell-Down Notice.   In that case, the Debtors shall publish and provide notice of such additional amount and/or such additional class of Securities in the same manner as the Notice of 382(l)(5) Plan and such notice shall be an "Amended Notice of 382(l)(5) Plan."   The Amended

---

[2] Capitalized terms used in Paragraphs 1 – 7 have the meaning ascribed in Paragraph 7, if not otherwise defined herein.

Notice of 382(l)(5) Plan shall require (x) any person or Entity that previously filed a Notice of Substantial Securityholder Status to update information regarding such Substantial Securityholder's Beneficial Ownership of Securities and (y) any person or Entity that is a Substantial Securityholder as of the date of the most recent Amended Notice of 382(l)(5) Plan, but that was not previously required to file a Notice of Substantial Securityholder Status (an "Additional Substantial Securityholder"), to file with the Bankruptcy Court and serve upon the Debtors', the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 below within ten (10) days of the date of the Amended Notice of 382(l)(5) Plan.

**(c)**    Early Notice.    The Debtors reserve the right, in order to assist in determining their eligibility for section 382(l)(5) of the Tax Code, to request in a manner consistent with the publication of the Notice of 382(l)(5) Plan described above, information regarding the Beneficial Ownership of Securities prior to the filing of the Notice of 382(l)(5) Plan.

**2**    Notice of Substantial Securityholder Status.    Following a request for Beneficial Ownership information pursuant to (i) a Notice of 382(l)(5) Plan, (ii) an Amended Notice of 382(l)(5) Plan or (iii) Paragraph 1(c) above, any person or Entity that as of the date such request is made (the "Request Date") is or becomes a Substantial Securityholder shall file with the Bankruptcy Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status (a "Notice of Substantial Securityholder Status"), in the form annexed to the Motion as Exhibit D, within ten (10) days of the later of (i) the Request Date and (ii) the date such person becomes a Substantial Securityholder. At the holder's election, the Notice of Substantial Securityholder Status that is filed with the Bankruptcy Court (but not such notice served upon the Debtors, the attorneys for the Debtors or the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the aggregate dollar amount of Securities that such holder Beneficially Owns.

**3**    Sell-Down Notices.

**(a)**    Sell-Down Notices.    Following the issuance of a Notice of 382(l)(5) Plan, but no earlier than sixty (60) days prior to the then-scheduled hearing with respect to the 382(l)(5) Plan, if the Debtors determine it to be reasonably necessary to require the sale or transfer of all or a portion of the Beneficial Ownership of Securities held by a Substantial Securityholder on the basis that such sale or transfer is appropriate to reasonably ensure that the requirements of section 382(l)(5) of the Tax Code will be satisfied, and either the Creditors' Committee or the Bankruptcy Court similarly so determines, the Debtors may file a motion requesting that the Bankruptcy Court enter an order (the "Sell-Down Order") approving the issuance of a notice (the "Sell-Down Notice") that such Substantial Securityholder must

3

sell, cause to sell or otherwise transfer all or a portion of its Beneficial Ownership of Securities (by class or other applicable breakdown) in excess of the Maximum Amount for such Substantial Securityholder (such excess amount, an "Excess Amount") to Permitted Transferees.   If the Bankruptcy Court enters a Sell-Down Order approving the Debtors' issuance of a Sell-Down Notice, the Debtors shall provide a copy of such Sell-Down Order to the applicable Substantial Securityholders.

(b)    Requirement to Sell Down.   Prior to (i) the effective date of the 382(l)(5) Plan or (ii) such earlier date set forth in the Sell-Down Order, which shall not be earlier than the day after the entry of the order confirming the 382(l)(5) Plan as may be specified by the Debtors (the "Sell-Down Date"), each Substantial Securityholder shall sell, cause to sell or otherwise transfer an amount of the Beneficial Ownership of Securities (if any) necessary to comply with the Sell-Down Notice (the "Sell-Down"); provided, however, that notwithstanding anything to the contrary in the Order and for the avoidance of doubt, no Substantial Securityholder shall be required to sell, cause to sell or otherwise transfer any Beneficial Ownership of Securities if such sale would result in such holder having Beneficial Ownership of an aggregate amount of Securities (by class or other applicable breakdown) that is less than such holder's Protected Amount (as hereinafter defined).   Each Substantial Securityholder shall sell, cause to sell or otherwise transfer its Beneficial Ownership of Securities subject to the Sell-Down to Permitted Transferees; provided however that such Substantial Securityholder shall not have a reasonable basis to believe that any such Permitted Transferee would own, immediately after the contemplated transfer, an Excess Amount of Securities.

(c)    Notice of Compliance.   A Substantial Securityholder subject to the Sell-Down shall, within five (5) business days after the later of (i) entry of an order approving the 382(l)(5) Plan, (ii) the Sell-Down Date, and (iii) such other date specified in the Sell-Down Notice, as applicable, but in all events before the effective date of the 382(l)(5) Plan, and as a condition to receiving Affected Equity, serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice substantially in the form annexed to the Motion as Exhibit E that such Substantial Securityholder has complied with the terms and conditions set forth in this Paragraph 3 and that such Substantial Securityholder does not and will not hold an Excess Amount of Securities as of the Sell-Down Date and at all times through the effective date of the 382(l)(5) Plan (the "Notice of Compliance").   Any Substantial Securityholder who fails to comply with this provision shall not receive Affected Equity with respect to any Excess Amount of Securities.

**4**     Advance Approval of Acquisitions.   Any proposed transfer or acquisition of Securities from and after the date of the Sell-Down Order shall be subject to the following advance approval procedures:

    **(a)**     Acquisition of Securities.   At least fifteen (15) business days prior to the proposed date of any transfer of Securities that would result in (i) an increase in the dollar amount of Securities Beneficially Owned by a Substantial Securityholder or (ii) any person or Entity becoming a Substantial Securityholder (a "Proposed Securities Acquisition Transaction"), such person, Entity, or Substantial Securityholder (each a "Proposed Securities Transferee") must file with the Bankruptcy Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a Notice of Request to Purchase, Acquire, or Otherwise Accumulate a Security (a "Securities Acquisition Request"), in the form annexed to the Motion as Exhibit F, which describes specifically and in detail the intended acquisition of Securities, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements of Bankruptcy Rule 3001.   At the Proposed Securities Transferee's election, the Securities Acquisition Request that is filed with the Bankruptcy Court (but not such request served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such transferee's taxpayer identification number and the aggregate dollar amount of Securities that such transferee Beneficially Owns and proposes to purchase or otherwise acquire.

    **(b)**     Approval Procedures.   The Debtors may determine, in furtherance of the purposes of the provisions herein and after consultation with the attorneys for the Creditors' Committee, whether or not to approve a Securities Acquisition Request.   A Securities Acquisition Request that is not approved in writing by the Debtors within ten (10) business days after the filing of a Securities Acquisition Request shall be deemed rejected.

**5**     Equity Forfeiture Provision.

    **(a)**     Equity Forfeiture Provision.   Any Substantial Securityholder that violates its obligations under the Sell-Down Notice shall, pursuant to the Order, be precluded from receiving, directly or indirectly, any consideration consisting of a beneficial ownership of equity (as determined in accordance with the applicable rules of section 382 of the Tax Code, including Options, whether or not treated as exercised under Treasury Regulation section 1.382-4) of the Debtors (or any successor to the Debtors, including as determined for U.S. federal income tax purposes) that is attributable to the Excess Amount of Securities for such Substantial Securityholder, including any consideration in lieu thereof, provided that such Substantial Securityholder may be entitled to receive any other consideration to which such holder may be entitled by virtue of holding Securities (the "Equity Forfeiture Provision").   Any purported acquisition

of, or other increase in the Beneficial Ownership of, equity of the Debtors (or any successor) that is precluded by the Equity Forfeiture Provision will be an acquisition of "Forfeited Equity."   Any acquirer of Forfeited Equity shall, immediately upon becoming aware of such fact, return or cause to return the Forfeited Equity to the Debtors (or any successor to the Debtors) or, if all of the equity consideration properly issued to such acquirer and all or any portion of such Forfeited Equity shall have been sold prior to the time such acquirer becomes aware of such fact, such acquirer shall return or cause to return to the Debtors (or any successor to the Debtors) (i) any Forfeited Equity still held by such acquirer and (ii) the proceeds attributable to the sale of Forfeited Equity, calculated by treating the most recently sold equity as Forfeited Equity.   Any acquirer that receives Forfeited Equity and deliberately fails to comply with the preceding sentence shall be subject to such additional sanctions as the Bankruptcy Court may determine.   Any Forfeited Equity returned to the Debtors shall be distributed (including a transfer to charity) or extinguished, in the Debtors' sole discretion, in furtherance of the 382(l)(5) Plan.

**(b)**    Notification Requirement.   In effecting any sale or other transfer of Securities pursuant to a Sell-Down Notice, a Substantial Securityholder shall, to the extent that it is reasonably feasible to do so within the normal constraints of the market in which such sale takes place, notify the acquirer of such Securities of the existence of the Order and the Equity Forfeiture Provision (it being understood that, in all cases in which there is direct communication between a salesperson and a customer, including, without limitation, communication via telephone, e-mail, and instant messaging, the existence of the Order and the Equity Forfeiture Provision shall be included in such salesperson's summary of the transaction).

**6**    Miscellaneous.

**(a)**    No Disclosure of Participation.   To permit reliance by the Debtors on Treasury Regulation section 1.382-9(d)(3), any Substantial Securityholder that participates in formulating any chapter 11 plan of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisors with regard to such a plan), shall not, and shall not be asked to, disclose (or otherwise make evident unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement) to the Debtors that any Securities in which such Substantial Securityholder has a Beneficial Ownership are Newly Traded Securities.   For this purpose, the Debtors acknowledge and agree that the following activities shall not constitute participation in formulating a chapter 11 plan if, in pursuing such activities, the relevant Substantial Securityholder does not disclose (or otherwise make evident) to the Debtors that such Substantial Securityholder has Beneficial Ownership of Newly Traded Securities:   filing an objection to

a proposed disclosure statement or to confirmation of a proposed chapter 11 plan; voting to accept or reject a proposed chapter 11 plan; reviewing or commenting on a proposed business plan; providing information on a confidential basis to the attorneys for the Debtors or attorneys for the Creditors' Committee unconnected with the formulation of the chapter 11 plan; general membership on an official committee or an *ad hoc* committee; or taking any action required by the order of the Bankruptcy Court.

**(b)**    <u>Confidentiality</u>.    Except to the extent necessary to demonstrate to the Bankruptcy Court the need for the issuance of a Sell-Down Notice, other than information contained in the Notice of Substantial Securityholder Status that is public or in connection with an audit or other investigation by the Internal Revenue Service ("<u>IRS</u>") or other taxing authority, the Debtors shall keep such notices and any additional information provided by a Substantial Securityholder pursuant to the Order strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity; <u>provided</u>, <u>however</u>, that the Debtors may disclose the identity of the Substantial Securityholder to its counsel and professional advisors and/or the counsel and professional advisors of the Creditors' Committee and of any other person(s) that are subject to a nondisclosure agreement with the Debtors, each of whom shall keep all such notices strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity subject to further order of the Bankruptcy Court; and <u>provided</u>, <u>further</u>, that to the extent the Debtors reasonably determine such confidential information is necessary to demonstrate to the Bankruptcy Court the need for the issuance of a Sell-Down Notice, the Debtors shall seek to file such confidential information (determined by, among other things, whether such information was redacted in any public filing) under seal.

**(c)**    <u>Exception</u>.    No person or Entity shall be subject to the aforementioned provisions with respect to any transfer described in Treasury Regulation section 1.382-9(d)(5)(ii), <u>provided</u> that such transfer is not for a principal purpose of obtaining stock in the reorganized Debtors (or any successor) or permitting the transferee to benefit from the losses of the Debtors within the meaning of Treasury Regulation section 1.382-9(d)(5)(iii); <u>provided</u>, <u>further</u>, that any such transferee who becomes a Substantial Securityholder shall file with the Bankruptcy Court, and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 above within fifteen (15) business days of the later of (i) the day of the entry of the Order by the Bankruptcy Court and (ii) the date on which such person or Entity becomes a Substantial Securityholder.

**7**    <u>Definitions</u>.    For purposes of the Order, the following terms have the following meanings:

**(a)**     <u>Affected Equity</u>. "Affected Equity" means the stock or other equity of the reorganized Debtors (or their successors), including Options, to be issued and distributed pursuant to the 382(l)(5) Plan.

**(b)**     <u>Applicable Percentage</u>. "Applicable Percentage" means, if only one class of Affected Equity is to be issued pursuant to the terms of the 382(l)(5) Plan and holders within any class of Securities will receive a pro-rata distribution of the Affected Equity, 4.5% of the number of such shares or equity interests that the Debtors reasonably estimate will be issued at the effective date of such 382(l)(5) Plan, as determined for U.S. federal income tax purposes. If more than one class of Affected Equity is to be distributed pursuant to the terms of the 382(l)(5) Plan or holders with a class of Securities may receive a disproportionate distribution of such Affected Equity relative to other holders in the same class, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the 382(l)(5) Plan and disclosure statement, and shall be expressed in a manner that makes clear the number of shares or other equity interests in each class of Affected Equity that would constitute the Applicable Percentage.

**(c)**     <u>Beneficial Ownership.</u> "Beneficial Ownership" of a Security shall mean:

      (x) the beneficial ownership of a Security as determined in accordance with applicable rules under section 382 of the Tax Code (for such purpose, treating a Security as if it is stock), and, to the extent provided in those rules from time to time, shall include (A) direct and indirect ownership (determined without regard to the rule that treats stock of an Entity to which the constructive ownership rules apply as no longer owned by that Entity); and (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of Securities and/or stock; and

      (y) the beneficial ownership of an Option (irrespective of the purpose for which such option was issued, created or acquired).

For the avoidance of doubt, beneficial ownership of a Security also includes the beneficial ownership of any right to receive any equity consideration to be distributed in respect of a Security pursuant to a chapter 11 plan or applicable bankruptcy court order. Variations of the term "Beneficial Ownership" shall have correlative meanings.

**(d)**     <u>Creditors' Committee</u>. The "Creditors' Committee" shall mean any official committee of holders of unsecured Securities appointed pursuant to section 1102 of the Bankruptcy Code in the Debtors' chapter 11 cases.

8

**(e)**     Entity.   "Entity" shall have the meaning given to such term under Treasury Regulation section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition.

**(f)**     Maximum Amount.   "Maximum Amount" means for each person or Entity and by class or other applicable breakdown of Securities, the greater of (A) the applicable Threshold Amount and (B) the Protected Amount (if any) for such Substantial Securityholder.

**(g)**     Newly Traded Securities.   "Newly Traded Securities" means Securities (i) with respect to which an Entity acquired Beneficial Ownership after the date that was 18 months before the Commencement Date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury Regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Beneficial Ownership.

**(h)**     Notice Parties.   "Notice Parties" shall mean (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities.

**(i)**     Option.   An "Option" shall have the meaning given to such term under Treasury Regulation section 1.382-4(d)(9)(i), with respect to the acquisition of a Security or any consideration (including equity) distributed in respect of any Security pursuant to a chapter 11 plan or applicable bankruptcy court order.

**(j)**     Order.   The "Order" shall mean the order, entered by the Bankruptcy Court, authorizing the implementation of these restrictions and procedures.

**(k)**     Permitted Transferee.   A "Permitted Transferee" with respect to a Substantial Securityholder is a person that is not a Related Person and whose holding of a Security would not result in such Substantial Securityholder having Beneficial Ownership of such Security.

**(l)**     Protected Amount.   "Protected Amount" means the amount of Securities (by class or other applicable breakdown) of which a holder had Beneficial Ownership on the Motion Date, increased by the amount of Securities of which such holder acquires, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet

closed as of the Motion Date minus the amount of Securities of which such holder sells, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date.

**(m)**    Related Person.   Persons (including Entities) are "Related Persons" if: (A) the person bears a relationship to the other person described in section 267(b) or 707(b) of the Tax Code, or (B) the persons are members of a group acting in concert with respect to the acquisition of Securities or equity in the reorganized Debtors.

**(n)**    Security.   A "Security" shall be any claim against any of the Debtors, including, without limitation (i) any claim against any of the Debtors as a guarantor and (ii) the following classes of preferred stock of LBHI: (a) 5.94% Cumulative Preferred Stock, Series C; (b) 5.67% Cumulative Preferred Stock, Series D (c) 6.50% Cumulative Preferred Stock, Series F; (d) Floating Rate Cumulative Preferred Stock, Series G; and (e) 7.95% Non-Cumulative Perpetual Preferred Stock, Series J.    In calculating the amount of any Securities hereunder, any applicable intercreditor agreements, including subordination agreements, shall be given effect in accordance with their terms.   Nothing contained in this Paragraph 7(n) shall be deemed an admission of a party or be used by any party for any purpose other than compliance with the Order and shall not constitute an admission or evidence by any party with respect to Securities of the Debtors.

**(o)**    Substantial Securityholder.   A "Substantial Securityholder" is any person or Entity that Beneficially Owns an aggregate dollar amount of Securities, or any Entity controlled by such person or Entity through which such person or Entity Beneficially Owns Securities, of more than the Threshold Amount.

For the avoidance of doubt, section 382 of the Tax Code, the Treasury Regulations promulgated thereunder, and all relevant IRS and judicial authority shall apply in determining whether the Securities of several persons and/or Entities must be aggregated when testing for Substantial Securityholder status, treating Securities as if they were stock.

**(p)**    Tax Code.   "Tax Code" means the Internal Revenue Code of 1986, as amended from time to time, and the Treasury Regulations promulgated thereunder.

**(q)**    Threshold Amount.   "Threshold Amount" means the amount of Securities, as set forth in the Notice of 382(l)(5) Plan (as revised by any Amended Notice of 382(l)(5) Plan, as applicable) sufficient, in the determination of the Debtors, to entitle the Beneficial Owner thereof to the Applicable Percentage of the Affected Equity.   The amount determined in

10

the preceding sentence shall be disclosed in the Notice of 382(l)(5) Plan and may be adjusted thereafter as contemplated by this Order or any future order of the Bankruptcy Court.

**(r)**    <u>Treasury Regulations</u>. "Treasury Regulations" means the U.S. Department of Treasury regulations promulgated under the Tax Code, as amended from time to time.

**FAILURE TO FOLLOW THE RESTRICTIONS AND PROCEDURES SET FORTH IN THIS NOTICE WILL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.**

**ANY PROHIBITED PURCHASE OR OTHER ACQUISITION OF SECURITIES OF THE DEBTORS IN VIOLATION OF THE ORDER, INCLUDING, WITHOUT LIMITATION, THE FAILURE TO SELL OR OTHERWISE TRANSFER SECURITIES PURSUANT TO A SELL-DOWN NOTICE WILL CAUSE SUCH PURCHASER TO BE SUBJECT TO THE EQUITY FORFEITURE PROVISION.**

**THE DEBTORS MAY WAIVE, IN WRITING, ANY AND ALL RESTRICTIONS, STAYS, AND NOTIFICATION AND OTHER PROCEDURES CONTAINED IN THE ORDER.**

PLEASE TAKE FURTHER NOTICE that any person or entity desirous of acquiring an interest restricted by the Order may request relief for cause at any time and the Debtors may oppose such relief.

PLEASE TAKE FURTHER NOTICE that the requirements set forth in this Notice are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

ORDERED
February __, 2010 by
The Honorable James M. Peck
United States Bankruptcy Judge

**<u>Exhibit C</u>**

(Proposed Order)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                            :
**In re**                                                   :              **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* :              **08-13555 (JMP)**
                                                            :
                                         **Debtors.**       :              **(Jointly Administered)**
                                                            :
---------------------------------------------------------------- x

### ORDER PURSUANT TO SECTIONS 105(a) AND 362
### OF THE BANKRUPTCY CODE ESTABLISHING
### CERTAIN RESTRICTIONS AND PROCEDURES
### <u>APPLICABLE TO TRANSFERS OF THE DEBTORS' SECURITIES</u>

Upon the motion dated January 19, 2010 (the "<u>Motion</u>")[1] of Lehman Brothers

Holdings, Inc. ("<u>LBHI</u>") and its subsidiaries in the above-referenced chapter 11 cases, as debtors

and debtors in possession (the "<u>Debtors</u>" and, collectively with LBHI's wholly-owned non-

debtor domestic subsidiaries, "<u>Lehman</u>"), pursuant to sections 362 and 105(a) of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), seeking entry of a order (the "<u>Order</u>") to approve

certain restrictions and procedures applicable to transfers of Securities (as hereinafter defined),

as more fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the

Motion and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to(i) the Office of the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the

Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States

---

[1]  All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion, found at
the Debtors' website: http://www.lehman-docket.com.

Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities.; and the Court having reviewed the Motion and having heard the statements in support of the relief requested at the hearing on the Motion; and the Court having determined that the relief sought in the Motion pursuant to this Order is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is FOUND that:

1.      Pursuant to the Court's *Order Pursuant to sections 105(a) and 362 of the Bankruptcy Code Approving Certain Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating Thereto*, Lehman's consolidated net operating loss tax carryforwards ("NOLs") and certain other tax attributes (together with NOLs, the "Tax Attributes") are property of the Debtors' estates and are protected by the automatic stay prescribed in section 362 of the Bankruptcy Code;

2.      Under certain circumstances, the accumulation of Securities prior to the potential emergence of certain Debtors (or their successors) from chapter 11 could, following any such emergence, severely limit such Debtors' (or successors') ability to use the Tax Attributes for purposes of the Internal Revenue Code of 1986, as amended (the "Tax Code"), as set forth in the Motion;

3.       The restrictions and procedures applicable to the accumulation of

Securities are necessary and proper to preserve the availability of the Tax Attributes following

emergence and are therefore in the best interests of the Debtors, their estates, and their creditors;

and

4.       The relief requested in the Motion is authorized under sections 105(a) and

362 of the Bankruptcy Code.

THEREFORE, IT IS:

ORDERED that the Motion is granted; and it is further

ORDERED that the provisions of this Order shall be effective, *nunc pro tunc* to

January 19, 2010, the date of the filing of the Motion (the "Motion Date"); and it is further

ORDERED that all objections to the Motion not previously withdrawn are

overruled; and it is further

ORDERED that any acquisition of Securities and/or any failure to sell Securities

in violation of the restrictions and procedures set forth herein shall be null and void *ab initio* as

an act in violation of the automatic stay prescribed in section 362 of the Bankruptcy Code and

pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy Code;

and it is further

ORDERED that the following restrictions and procedures applicable to certain

transfers of Securities are approved:[2]

**1**       Notice of 382(l)(5) Plan; Amended Notice of 382(l)(5) Plan.

**(a)**       Notice of 382(l)(5) Plan.   Upon filing a chapter 11 plan and disclosure
statement that contemplates the potential utilization of section 382(l)(5) of
the Tax Code (a "382(l)(5) Plan"), the Debtors may, if, after consultation

---

[2] Capitalized terms used in Paragraphs 2 – 8 have the meaning ascribed in Paragraph 8, if not
otherwise defined herein.

with their attorneys and advisors and the attorneys and advisors for the Creditors' Committee, they determine that the application of section 382(l)(5) of the Tax Code is reasonably likely to be beneficial to the reorganized Debtors (or any successors thereto), (i) publish (or arrange for publication of) a notice and provide a written notice to the Notice Parties, disclosing the filing of such 382(l)(5) Plan and the potential issuance of a Sell-Down Notice (as defined in Paragraph 3(a) below) in connection therewith on the Debtors' website: http://www.lehman-docket.com and in the national editions of *The Wall Street Journal* and *The New York Times* (a "Notice of 382(l)(5) Plan"), (ii) identify the classes of Securities that are potentially subject to a Sell-Down Notice and (iii) identify the applicable Threshold Amounts (by class or other applicable breakdown) for status as a Substantial Securityholder.

**(b)**    Amended Notice of 382(l)(5) Plan.    The Debtors may determine subsequent to the date of the Notice of 382(l)(5) Plan or an Amended Notice of 382(l)(5) Plan (as defined below), to (i) adjust the Threshold Amount or (ii) identify additional classes of Securities that are potentially subject to a Sell-Down Notice.   In that case, the Debtors shall publish and provide notice of such additional amount and/or such additional class of Securities in the same manner as the Notice of 382(l)(5) Plan and such notice shall be an "Amended Notice of 382(l)(5) Plan."   The Amended Notice of 382(l)(5) Plan shall require (x) any person or Entity that previously filed a Notice of Substantial Securityholder Status to update information regarding such Substantial Securityholder's Beneficial Ownership of Securities and (y) any person or Entity that is a Substantial Securityholder as of the date of the most recent Amended Notice of 382(l)(5) Plan, but that was not previously required to file a Notice of Substantial Securityholder Status (an "Additional Substantial Securityholder"), to file with the Court and serve upon the Debtors', the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 below within ten (10) days of the date of the Amended Notice of 382(l)(5) Plan.

**(c)**    Early Notice.    The Debtors reserve the right, in order to assist in determining their eligibility for section 382(l)(5) of the Tax Code, to request in a manner consistent with the publication of the Notice of 382(l)(5) Plan described above, information regarding the Beneficial Ownership of Securities prior to the filing of the Notice of 382(l)(5) Plan.

**2**    Notice of Substantial Securityholder Status.    Following a request for Beneficial Ownership information pursuant to (i) a Notice of 382(l)(5) Plan, (ii) an Amended Notice of 382(l)(5) Plan or (iii) Paragraph 1(c) above, any person or Entity that as of the date such request is made (the "Request Date") is or becomes a Substantial Securityholder shall file with the Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status (a "Notice of Substantial Securityholder Status"), in the form annexed to

the Motion as <u>Exhibit D</u>, within ten (10) days of the later of (i) the Request Date and (ii) the date such person becomes a Substantial Securityholder.   At the holder's election, the Notice of Substantial Securityholder Status that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors or the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the aggregate dollar amount of Securities that such holder Beneficially Owns.

**3**    <u>Sell-Down Notices</u>.

    **(a)**    <u>Sell-Down Notices</u>.   Following the issuance of a Notice of 382(l)(5) Plan, but no earlier than sixty (60) days prior to the then-scheduled hearing with respect to the 382(l)(5) Plan, if the Debtors determine it to be reasonably necessary to require the sale or transfer of all or a portion of the Beneficial Ownership of Securities held by a Substantial Securityholder on the basis that such sale or transfer is appropriate to reasonably ensure that the requirements of section 382(l)(5) of the Tax Code will be satisfied, and either the Creditors' Committee or the Court similarly so determines, the Debtors may file a motion requesting that the Court enter an order (the "<u>Sell-Down Order</u>") approving the issuance of a notice (the "<u>Sell-Down Notice</u>") that such Substantial Securityholder must sell, cause to sell or otherwise transfer all or a portion of its Beneficial Ownership of Securities (by class or other applicable breakdown) in excess of the Maximum Amount for such Substantial Securityholder (such excess amount, an "<u>Excess Amount</u>") to Permitted Transferees.   If the Court enters a Sell-Down Order approving the Debtors' issuance of a Sell-Down Notice, the Debtors shall provide a copy of such Sell-Down Order to the applicable Substantial Securityholders.

    **(b)**    <u>Requirement to Sell Down</u>.   Prior to (i) the effective date of the 382(l)(5) Plan or (ii) such earlier date set forth in the Sell-Down Order, which shall not be earlier than the day after the entry of the order confirming the 382(l)(5) Plan as may be specified by the Debtors (the "<u>Sell-Down Date</u>"), each Substantial Securityholder shall sell, cause to sell or otherwise transfer an amount of the Beneficial Ownership of Securities (if any) necessary to comply with the Sell-Down Notice (the "<u>Sell-Down</u>"); <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary in the Order and for the avoidance of doubt, no Substantial Securityholder shall be required to sell, cause to sell or otherwise transfer any Beneficial Ownership of Securities if such sale would result in such holder having Beneficial Ownership of an aggregate amount of Securities (by class or other applicable breakdown) that is less than such holder's Protected Amount (as hereinafter defined).   Each Substantial Securityholder shall sell, cause to sell or otherwise transfer its Beneficial Ownership of Securities subject to the Sell-Down to Permitted Transferees; <u>provided however</u> that such Substantial Securityholder shall not have a reasonable basis to believe that any such Permitted Transferee would own,

immediately after the contemplated transfer, an Excess Amount of Securities.

(c)    <u>Notice of Compliance</u>.   A Substantial Securityholder subject to the Sell-Down shall, within five (5) business days after the later of (i) entry of an order approving the 382(l)(5) Plan, (ii) the Sell-Down Date, and (iii) such other date specified in the Sell-Down Notice, as applicable, but in all events before the effective date of the 382(l)(5) Plan, and as a condition to receiving Affected Equity, serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice substantially in the form annexed to the Motion as <u>Exhibit E</u> that such Substantial Securityholder has complied with the terms and conditions set forth in this Paragraph 3 and that such Substantial Securityholder does not and will not hold an Excess Amount of Securities as of the Sell-Down Date and at all times through the effective date of the 382(l)(5) Plan (the "<u>Notice of Compliance</u>").   Any Substantial Securityholder who fails to comply with this provision shall not receive Affected Equity with respect to any Excess Amount of Securities.

4    <u>Advance Approval of Acquisitions</u>.   Any proposed transfer or acquisition of Securities from and after the date of the Sell-Down Order shall be subject to the following advance approval procedures:

(a)    <u>Acquisition of Securities</u>.   At least fifteen (15) business days prior to the proposed date of any transfer of Securities that would result in (i) an increase in the dollar amount of Securities Beneficially Owned by a Substantial Securityholder or (ii) any person or Entity becoming a Substantial Securityholder (a "<u>Proposed Securities Acquisition Transaction</u>"), such person, Entity, or Substantial Securityholder (each a "<u>Proposed Securities Transferee</u>") must file with the Court and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a Notice of Request to Purchase, Acquire, or Otherwise Accumulate a Security (a "<u>Securities Acquisition Request</u>"), in the form annexed to the Motion as <u>Exhibit F</u>, which describes specifically and in detail the intended acquisition of Securities, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements of Bankruptcy Rule 3001.   At the Proposed Securities Transferee's election, the Securities Acquisition Request that is filed with the Court (but not such request served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such transferee's taxpayer identification number and the aggregate dollar amount of Securities that such transferee Beneficially Owns and proposes to purchase or otherwise acquire.

(b)    <u>Approval Procedures</u>.   The Debtors may determine, in furtherance of the purposes of the provisions herein and after consultation with the attorneys for the Creditors' Committee, whether or not to approve a Securities

Acquisition Request.   A Securities Acquisition Request that is not approved in writing by the Debtors within ten (10) business days after the filing of a Securities Acquisition Request shall be deemed rejected.

**5**    Equity Forfeiture Provision.

**(a)**    Equity Forfeiture Provision.   Any Substantial Securityholder that violates its obligations under the Sell-Down Notice shall, pursuant to the Order, be precluded from receiving, directly or indirectly, any consideration consisting of a beneficial ownership of equity (as determined in accordance with the applicable rules of section 382 of the Tax Code, including Options, whether or not treated as exercised under Treasury Regulation section 1.382-4) of the Debtors (or any successor to the Debtors, including as determined for U.S. federal income tax purposes) that is attributable to the Excess Amount of Securities for such Substantial Securityholder, including any consideration in lieu thereof, provided that such Substantial Securityholder may be entitled to receive any other consideration to which such holder may be entitled by virtue of holding Securities (the "Equity Forfeiture Provision").   Any purported acquisition of, or other increase in the Beneficial Ownership of, equity of the Debtors (or any successor) that is precluded by the Equity Forfeiture Provision will be an acquisition of "Forfeited Equity."   Any acquirer of Forfeited Equity shall, immediately upon becoming aware of such fact, return or cause to return the Forfeited Equity to the Debtors (or any successor to the Debtors) or, if all or any portion of such Forfeited Equity shall have been sold prior to the time such acquirer becomes aware of such fact, such acquirer shall return or cause to return to the Debtors (or any successor to the Debtors) (i) any Forfeited Equity still held by such acquirer and (ii) the proceeds attributable to the sale of Forfeited Equity, calculated by treating the most recently sold equity as Forfeited Equity.   Any acquirer that receives Forfeited Equity and deliberately fails to comply with the preceding sentence shall be subject to such additional sanctions as the Court may determine.   Any Forfeited Equity returned to the Debtors shall be distributed (including a transfer to charity) or extinguished, in the Debtors' sole discretion, in furtherance of the 382(l)(5) Plan.

**(b)**    Notification Requirement.   In effecting any sale or other transfer of Securities pursuant to a Sell-Down Notice, a Substantial Securityholder shall, to the extent that it is reasonably feasible to do so within the normal constraints of the market in which such sale takes place, notify the acquirer of such Securities of the existence of the Order and the Equity Forfeiture Provision (it being understood that, in all cases in which there is direct communication between a salesperson and a customer, including, without limitation, communication via telephone, e-mail, and instant messaging, the existence of the Order and the Equity Forfeiture Provision shall be included in such salesperson's summary of the transaction).

7

**6**     Miscellaneous.

**(a)**     No Disclosure of Participation.   To permit reliance by the Debtors on Treasury Regulation section 1.382-9(d)(3), any Substantial Securityholder that participates in formulating any chapter 11 plan of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisors with regard to such a plan), shall not, and shall not be asked to, disclose (or otherwise make evident unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement) to the Debtors that any Securities in which such Substantial Securityholder has a Beneficial Ownership are Newly Traded Securities.   For this purpose, the Debtors acknowledge and agree that the following activities shall not constitute participation in formulating a chapter 11 plan if, in pursuing such activities, the relevant Substantial Securityholder does not disclose (or otherwise make evident) to the Debtors that such Substantial Securityholder has Beneficial Ownership of Newly Traded Securities:   filing an objection to a proposed disclosure statement or to confirmation of a proposed chapter 11 plan; voting to accept or reject a proposed chapter 11 plan; reviewing or commenting on a proposed business plan; providing information on a confidential basis to the attorneys for the Debtors or attorneys for the Creditors' Committee unconnected with the formulation of the chapter 11 plan; general membership on an official committee or an *ad hoc* committee; or taking any action required by the order of the Court.

**(b)**     Confidentiality.   Except to the extent necessary to demonstrate to the Court the need for the issuance of a Sell-Down Notice, other than information contained in the Notice of Substantial Securityholder Status that is public or in connection with an audit or other investigation by the Internal Revenue Service ("IRS") or other taxing authority, the Debtors shall keep such notices and any additional information provided by a Substantial Securityholder pursuant to the Order strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity; provided, however, that the Debtors may disclose the identity of the Substantial Securityholder to its counsel and professional advisors and/or the counsel and professional advisors of the Creditors' Committee and of any other person(s) that are subject to a nondisclosure agreement with the Debtors, each of whom shall keep all such notices strictly confidential and shall not disclose the identity of the Substantial Securityholder to any other person or Entity subject to further order of the Court; and provided, further, that to the extent the Debtors reasonably determine such confidential information is necessary to demonstrate to the Court the need for the issuance of a Sell-Down Notice, the Debtors shall seek to file such confidential information (determined by, among other things, whether such information was redacted in any public filing) under seal.

(c)  Exception.   No person or Entity shall be subject to the aforementioned provisions with respect to any transfer described in Treasury Regulation section 1.382-9(d)(5)(ii), provided that such transfer is not for a principal purpose of obtaining stock in the reorganized Debtors (or any successor) or permitting the transferee to benefit from the losses of the Debtors within the meaning of Treasury Regulation section 1.382-9(d)(5)(iii); provided, further, that any such transferee who becomes a Substantial Securityholder shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee, a notice of such status in the manner prescribed in Paragraph 2 above within fifteen (15) business days of the later of (i) the day of the entry of the Order by the Court and (ii) the date on which such person or Entity becomes a Substantial Securityholder.

7    Definitions.   For purposes of the Order, the following terms have the following meanings:

(a)  Affected Equity.   "Affected Equity" means the stock or other equity of the reorganized Debtors (or their successors), including Options, to be issued and distributed pursuant to the 382(l)(5) Plan.

(b)  Applicable Percentage.   "Applicable Percentage" means, if only one class of Affected Equity is to be issued pursuant to the terms of the 382(l)(5) Plan and holders within any class of Securities will receive a pro-rata distribution of the Affected Equity, 4.5% of the number of such shares or equity interests that the Debtors reasonably estimate will be issued at the effective date of such 382(l)(5) Plan, as determined for U.S. federal income tax purposes.   If more than one class of Affected Equity is to be distributed pursuant to the terms of the 382(l)(5) Plan or holders with a class of Securities may receive a disproportionate distribution of such Affected Equity relative to other holders in the same class, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the 382(l)(5) Plan and disclosure statement, and shall be expressed in a manner that makes clear the number of shares or other equity interests in each class of Affected Equity that would constitute the Applicable Percentage.

(c)  Beneficial Ownership.   "Beneficial Ownership" of a Security shall mean:

(x) the beneficial ownership of a Security as determined in accordance with applicable rules under section 382 of the Tax Code (for such purpose, treating a Security as if it is stock), and, to the extent provided in those rules from time to time, shall include (A) direct and indirect ownership (determined without regard to the rule that treats stock of an Entity to which the constructive ownership rules apply as

9

no longer owned by that Entity); and (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of Securities and/or stock; and

(y) the beneficial ownership of an Option (irrespective of the purpose for which such option was issued, created or acquired).

For the avoidance of doubt, beneficial ownership of a Security also includes the beneficial ownership of any right to receive any equity consideration to be distributed in respect of a Security pursuant to a chapter 11 plan or applicable bankruptcy court order.  Variations of the term "Beneficial Ownership" shall have correlative meanings.

**(d)**    <u>Creditors' Committee</u>. The "Creditors' Committee" shall mean any official committee of holders of unsecured Securities appointed pursuant to section 1102 of the Bankruptcy Code in the Debtors' chapter 11 cases.

**(e)**    <u>Entity</u>.   "Entity" shall have the meaning given to such term under Treasury Regulation section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition.

**(f)**    <u>Maximum Amount</u>.   "Maximum Amount" means for each person or Entity and by class or other applicable breakdown of Securities, the greater of (A) the applicable Threshold Amount and (B) the Protected Amount (if any) for such Substantial Securityholder.

**(g)**    <u>Newly Traded Securities</u>.   "Newly Traded Securities" means Securities (i) with respect to which an Entity acquired Beneficial Ownership after the date that was 18 months before the Commencement Date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury Regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Beneficial Ownership.

**(h)**    <u>Notice Parties</u>.   "Notice Parties" shall mean (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities.

**(i)**    <u>Option</u>.   An "Option" shall have the meaning given to such term under Treasury Regulation section 1.382-4(d)(9)(i), with respect to the

10

acquisition of a Security or any consideration (including equity) distributed in respect of any Security pursuant to a chapter 11 plan or applicable bankruptcy court order.

**(j)**    Order.   The "Order" shall mean the order, entered by the Bankruptcy Court, authorizing the implementation of these restrictions and procedures.

**(k)**    Permitted Transferee.   A "Permitted Transferee" with respect to a Substantial Securityholder is a person that is not a Related Person and whose holding of a Security would not result in such Substantial Securityholder having Beneficial Ownership of such Security.

**(l)**    Protected Amount.   "Protected Amount" means the amount of Securities (by class or other applicable breakdown) of which a holder had Beneficial Ownership on the Motion Date, increased by the amount of Securities of which such holder acquires, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date minus the amount of Securities of which such holder sells, directly or indirectly, Beneficial Ownership pursuant to trades entered into before the Motion Date that had not yet closed as of the Motion Date.

**(m)**    Related Person.   Persons (including Entities) are "Related Persons" if: (A) the person bears a relationship to the other person described in section 267(b) or 707(b) of the Tax Code, or (B) the persons are members of a group acting in concert with respect to the acquisition of Securities or equity in the reorganized Debtors.

**(n)**    Security.   A "Security" shall be any claim against any of the Debtors, including, without limitation (i) any claim against any of the Debtors as a guarantor and (ii) the following classes of preferred stock of LBHI: (a) 5.94% Cumulative Preferred Stock, Series C; (b) 5.67% Cumulative Preferred Stock, Series D (c) 6.50% Cumulative Preferred Stock, Series F; (d) Floating Rate Cumulative Preferred Stock, Series G; and (e) 7.95% Non-Cumulative Perpetual Preferred Stock, Series J.   In calculating the amount of any Securities hereunder, any applicable intercreditor agreements, including subordination agreements, shall be given effect in accordance with their terms.   Nothing contained in this Paragraph 7(n) shall be deemed an admission of a party or be used by any party for any purpose other than compliance with the Order and shall not constitute an admission or evidence by any party with respect to Securities of the Debtors.

**(o)**    Substantial Securityholder.   A "Substantial Securityholder" is any person or Entity that Beneficially Owns an aggregate dollar amount of Securities, or any Entity controlled by such person or Entity through which such person or Entity Beneficially Owns Securities, of more than the Threshold

11

Amount.

For the avoidance of doubt, section 382 of the Tax Code, the Treasury Regulations promulgated thereunder, and all relevant IRS and judicial authority shall apply in determining whether the Securities of several persons and/or Entities must be aggregated when testing for Substantial Securityholder status, treating Securities as if they were stock.

(p)    <u>Tax Code</u>.    "Tax Code" means the Internal Revenue Code of 1986, as amended from time to time, and the Treasury Regulations promulgated thereunder.

(q)    <u>Threshold Amount</u>.    "Threshold Amount" means the amount of Securities, as set forth in the Notice of 382(l)(5) Plan (as revised by any Amended Notice of 382(l)(5) Plan, as applicable) sufficient, in the determination of the Debtors, to entitle the Beneficial Owner thereof to the Applicable Percentage of the Affected Equity.    The amount determined in the preceding sentence shall be disclosed in the Notice of 382(l)(5) Plan and may be adjusted thereafter as contemplated by this Order or any future order of the Court.

(r)    <u>Treasury Regulations</u>. "Treasury Regulations" means the U.S. Department of Treasury regulations promulgated under the Tax Code, as amended from time to time.

8    <u>Noncompliance with the Trading Procedures</u>.    Any purchase, sale, or other transfer of Securities in violation of the procedures set forth herein shall be null and void *ab initio* and shall confer no rights on the transferee.

9    <u>Debtors' Right to Waive</u>.    The Debtors may waive, in writing, any and all restrictions, stays, and notification procedures contained in this Motion;

ORDERED that any person or Entity acquiring and/or failing to dispose of Securities in violation of the restrictions set forth herein, or failing to comply with the "Notice of Substantial Securityholder Status," "Securities Acquisition Request," and/or "Notice of Compliance" requirements, as may be the case, shall be subject to such sanctions as the Court may consider appropriate pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy Code; and it is further

ORDERED that the notices substantially in the form annexed to the Motion as <u>Exhibit D</u>, <u>Exhibit E</u>, <u>Exhibit F</u>, are approved; and it is further

12

ORDERED that nothing in this Order shall preclude any party-in-interest from seeking appropriate relief from the provisions of this Order or be deemed to prejudice, limit or waive the rights or claims of parties-in-interest to object to, or be heard in connection with, any request for the issuance of a Sell-Down Notice, including the right to request limits on the duration (and effect) of such Sell-Down Notice or any Equity Forfeiture Provision in connection therewith, all of which rights, claims and objections are expressly reserved; and it is further

ORDERED that within three (3) days of the entry of this Order, the Debtors shall serve notice of the entry of this Order (the "Procedures Notice") substantially in the form annexed to the Motion as Exhibit B describing the authorized Securities trading restrictions and procedures to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) all parties who have requested notice in these chapter 11 cases in accordance with the amended order entered on February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; (vii) parties who file notices of transfers of Securities under Bankruptcy Rule 3001(e)(2); and (viii) any indenture trustees or clearinghouses for Securities.; and it is further

ORDERED that the Debtors shall post the Procedures Notice on the Debtors' website: http://www.lehman-docket.com.   Additionally, the Debtors will submit the Procedures Notice for publication in the national editions of The Wall Street Journal and The New York Times; and it is further

13

ORDERED that nothing herein shall preclude any person or Entity desirous of purchasing or transferring any Securities from requesting relief from this Order in this Court subject to the Debtors' rights to oppose such relief; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED that the requirements set forth in this Order are in addition to the requirements of Bankruptcy Rule 3001(e), applicable securities, corporate, and other laws, and do not excuse compliance therewith; and it is further

ORDERED that the Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order; and it is further

ORDERED that the relief granted in this Order is intended solely to permit the Debtors to protect, preserve and maximize the value of their Tax Attributes.   Accordingly, except to the extent the Order expressly conditions or restricts trading in Securities, nothing in this Order or the Motion shall or shall be deemed to prejudice, impair or otherwise alter or affect the rights of any holders of Securities against the Debtors, including in connection with the treatment of any such Securities under any chapter 11 plan or any applicable bankruptcy court order.

Dated: February __, 2010
         New York, New York


                                        _____
                                        United States Bankruptcy Judge

## **Exhibit D**

(Notice of Substantial Securityholder Status)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
                                             :

In re                              :            **Chapter 11 Case No.**
                                               :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* :     **08-13555 (JMP)**
                                               :

                      **Debtors.**         :        **(Jointly Administered)**
                                               :

----------------------------------------------------------------- x

## NOTICE OF SUBSTANTIAL SECURITYHOLDER STATUS

        PLEASE TAKE NOTICE that [Name of Securityholder] ("Filer") is/has become a Substantial Securityholder with respect to Securities of Lehman Brothers Holdings, Inc. ("LBHI") and its subsidiaries in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") in Case No. 08-13555, pending in the United States Bankruptcy Court for the Southern District of New York.[1]

        PLEASE TAKE FURTHER NOTICE that, as of [Insert Date], Filer Beneficially Owns Securities in the aggregate amount of $_____ against the Debtors.   As to such Securities, the following table sets forth, by class or other applicable breakdown, the name of the Debtor issuer, a description of the Securities (including the amount of the Securities held of the issuer), and, if Filer's Beneficial Ownership of such Securities is attributable to the record or legal ownership by another person or Entity, the name of such record or legal owner:

| Debtor Issuer | Class | Description and Amount of Security | Legal or Record Owner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

(Attach additional page if necessary)

        PLEASE TAKE FURTHER NOTICE that the following table sets forth a summary of the Protected Amount for each class (or other applicable breakdown) of Securities listed above, and that Filer will provide any additional information in respect of the Securities that the Debtors reasonably request.   Filer's "Protected Amount" of Securities is the amount of Securities (by class or other applicable breakdown) owned on [Month Date, Year].

---

[1]  All terms not expressly defined in this Notice shall be construed to have the same meaning as such terms have in the Order.

| Debtor Issuer | Class | Protected Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE that the taxpayer identification number of Filer is _____.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, Filer hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments that purport to be part of this Notice are true, correct and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, this Notice is being filed with the Court and served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee.

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

[IF APPLICABLE] I am represented by [name of the law firm], [address], [phone], (Attn: [name]).

Respectfully submitted,

_____
(Name of Securityholder)

By:_____
    Name:_____
    Title:_____

Address:_____
       _____
       _____
Telephone:_____
Facsimile:_____

Date: _____

**<u>Exhibit E</u>**

(Notice of Compliance)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------- x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :          08-13555 (JMP)
                                          :
                        Debtors.          :          (Jointly Administered)
                                          :
---------------------------------------------------------------- x
```

## NOTICE OF COMPLIANCE

PLEASE TAKE NOTICE that [Name of Securityholder] ("Filer") hereby provides notice (the "Notice"), that Filer has complied in full with the terms and conditions set forth in Paragraph (3)(c) of the Order and that Filer does not and will not hold an "Excess Amount" (as defined in the Order) of Securities as of the Sell-Down Date and at all times through the effective date of the 382(l)(5) Plan.

PLEASE TAKE FURTHER NOTICE that the taxpayer identification number of Filer is _____.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, this Notice is being filed with the Court and served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee.

PLEASE TAKE FURTHER NOTICE that this Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

[IF APPLICABLE] I am represented by [name of the law firm], [address], [phone], (Attn: [name]).

Respectfully submitted,

_____
(Name of Substantial Securityholder)

By:_____
    Name:_____
    Title:_____

Address:_____
        _____
        _____
Telephone:_____
Facsimile:_____

Date: _____

## **Exhibit F**

(Securities Acquisition Request)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC**, *et al.*, : **08-13555 (JMP)**
                                              :
                            **Debtors.**      :        **(Jointly Administered)**
                                              :
-------------------------------------------------------------x

## NOTICE OF REQUEST TO PURCHASE, ACQUIRE, OR OTHERWISE ACCUMULATE A CLAIM

PLEASE TAKE NOTICE THAT [Name of Prospective Acquirer] ("Filer") hereby provides a notice of request to purchase, acquire or otherwise accumulate a Security[1] or Securities of Lehman Brothers Holdings, Inc. ("LBHI") and its subsidiaries in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") (the "Proposed Transfer").

PLEASE TAKE FURTHER NOTICE THAT, if applicable, on [Prior Date(s)], Filer filed a Notice of Substantial Securityholder Status with the Court and served copies thereof on the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee.

PLEASE TAKE FURTHER NOTICE THAT Filer currently Beneficially Owns (as defined in the notice) Securities of the Debtors in the aggregate amount of $_____.  As to such Securities, the following table sets forth, by class or other applicable breakdown, the name of the Debtor issuer, a description of the Securities (including the amount of the Securities held of such issuer), and, if Filer's Beneficial Ownership of such Securities is attributable to the record or legal ownership by another person or Entity, the name of such record or legal owner.

| Debtor Issuer | Class | Description and Amount of Claim | Legal or Record Owner |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

(Attach additional page if necessary)

---
[1] All terms not expressly defined in this Notice shall be construed to have the same meaning as such terms have in the Order.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to the Proposed Transfer, Filer requests to purchase, acquire or otherwise accumulate Securities of the Debtors in the aggregate amount of $_____.

If the Proposed Transfer is permitted to occur, Filer will Beneficially Own Securities of the Debtors in the aggregate amount of $_____ after the transfer.   As to such Securities, the following table sets forth, by class or other applicable breakdown, the name of the Debtor issuer, a description of the Securities (whether the amount of the Securities held of such issuer) and, if Filer's Beneficial Ownership of such Securities will be attributable to the record or legal ownership by another person or Entity, the name of such record or legal owner:

| Debtor Issuer | Class | Description and Amount of Claim | Legal or Record Owner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE that the following table sets forth a summary of the Protected Amount for each class (or other applicable breakdown) of Securities listed above,[2] and that Filer will provide any additional information in respect of the Securities that the Debtors reasonably request.   Filer's "Protected Amount" of Securities is the amount of Securities (by class or other applicable breakdown) owned on [Month Date, Year].   Filer's "Protected Amount" of Securities is the amount of Securities (by class or other applicable breakdown) owned on [Month Date, Year].

| Debtor Issuer | Class | Protected Amount |
|---|---|---|
| | | |
| | | |
| | | |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT the taxpayer identification number of Filer is _____.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, Filer hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

---

[2]  Only needs to be provided if no Notice of Substantial Securityholder Status has been previously filed with respect to such Claims.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, this Notice is being filed with the Court and served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee.

PLEASE TAKE FURTHER NOTICE that Filer hereby acknowledges that if the Proposed Transfer is not approved in writing by the Debtors within ten (10) business days after the filing of this Notice, such Proposed Transfer shall be deemed rejected and will not be effective *ab initio*.   If the Debtors provide written authorization approving the Proposed Transfer prior to the end of such ten (10) business day period, then such Proposed Transfer may proceed solely as specifically described in this Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions contemplated by Filer that may result in Filer purchasing, acquiring or otherwise accumulating additional Securities of the Debtors will each require an additional notice filed with the Court to be served in the same manner as this Notice.

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

[IF APPLICABLE] I am represented by [name of the law firm], [address], [phone], (Attn: [name]).

Respectfully submitted,

_____
(Name of Prospective Acquirer)

By:_____
   Name:_____
   Title:_____

Address:_____

   _____

Telephone:_____
Facsimile:_____

Date: _____