**Hearing Date and Time: February 10, 2010 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time: February 3, 2010 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                                    :
In re                                                               :    Chapter 11 Case No.
                                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
                                                                    :
                                        Debtors.                    :    (Jointly Administered)
                                                                    :
-------------------------------------------------------------------x

## NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. TO AMEND THE ORDER AUTHORIZING DEBTORS TO ESTABLISH PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS

        PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman
Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases
(together, the "Debtors"), to amend the order authorizing the Debtors to establish procedures to
sell or abandon *de minimis* assets [Docket No. 4021], all as more fully described in the Motion,
will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United
States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling
Green, New York, New York, 10004 (the "Bankruptcy Court"), on **February 10, 2010 at 10:00
a.m. (Prevailing Eastern Time)** (the "Hearing").

        PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall
be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules
of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the
objecting party, the basis for the objection and the specific grounds thereof, shall be filed with
the Bankruptcy Court electronically in accordance with General Order M-242 (which can be
found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing
system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document
Format (PDF), WordPerfect, or any other Windows-based word processing format (with two
hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the
Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;
(ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y.
Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; so as to be so filed and received by no later than **February 3, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 20, 2010
      New York, New York

                      /s/ Shai Y. Waisman
                      Shai Y. Waisman

                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone: (212) 310-8000
                      Facsimile: (212) 310-8007

                      Attorneys for Debtors
                      and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                 :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

## MOTION OF LEHMAN BROTHERS HOLDINGS
## INC. TO AMEND THE ORDER AUTHORIZING DEBTORS TO
## ESTABLISH PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc., as debtor in possession ("LBHI", and together

with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), files this Motion and respectfully

represents:

### Background

        1.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

3.      On May 14, 2009, the Debtors filed the Motion Pursuant to Sections 105,

363 and 554(a) of the Bankruptcy Code for Authorization to Establish Procedures to Sell or

Abandon *De Minimis* Assets (the "Initial Motion").  [Docket No. 3572].  On June 17, 2009, this

Court entered an Order Pursuant to Sections 105, 363, and 554(a) of the Bankruptcy Code

Establishing Procedures for *De Minimis* Asset Sales and Abandonments (the "Existing Order").

[Docket No. 4021].

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Preliminary Statement

5.      Prior to the Commencement Date, the Debtors owned a very large number

of residential and commercial real estate loans.  Largely as the result of turmoil in the national

real estate market, certain of these loans (the "Non-Performing Loans") have gone into default.

At present, the Debtors' typically monetize the Non-Performing Loans pursuant to the

procedures set forth in the Order Establishing Procedures for the Debtors to Transfer Their

Interests in Respect of Residential and Commercial Loans Subject to Foreclosure to Wholly-Owned Non-Debtor Subsidiaries (the "SPE Order").  [Docket No. 5272]  Under the terms of the SPE Order, the Debtors are authorized to:

- transfer a Non-Performing Loan to a special purpose entity that has been set up to hold real property loans or real property assets directly (the "SPE").  The SPE, usually through a third party loan servicer (the "Servicer"), then initiates foreclosure proceedings and takes title to the real property that secured the relevant Non-Performing Loan;

    or

- transfer the foreclosure judgment or deed in lieu of foreclosure, related to a Non-Performing Loan, to an SPE.

In either case, following acquisition by the SPE, the properties that formerly secured the Non-Performing Loans are marketed and sold by the Servicer with the proceeds flowing to the SPE and then to LBHI or one of the other Debtors.

6.    As a result of foreclosures that occurred prior to entry of the SPE Order, however, LBHI already held title to a large number of residential and commercial properties in its own name.  In addition, due to errors by the Servicers in the conduct of foreclosure proceedings, title to such properties is still occasionally vested in LBHI or one of the other Debtors instead of an SPE (collectively, the "REO Properties").  As of the date hereof, there are approximately 500 REO Properties, the majority of which are single family residences.  Since title to the REO Properties is held directly by LBHI, the SPE Order may not be applicable.  In such situations, and out of an abundance of caution, the Debtors have been utilizing the procedures set forth in the Existing Order (the "*De Minimis* Sale Procedures") to dispose of REO Properties.

7.    In light of the large number of REO Properties, and the relatively modest value of each individual REO Property, the Debtors believe that an efficient and cost effective

process for disposing of the REO Properties is necessary for the effective administration of their

estates.  While the *De Minimis* Sale Procedures as they are currently constituted have allowed the

Debtors to reduce the time and expense associated with disposing of certain of the REO

Properties, a large percentage of the REO Properties exceed the limits set forth in the *De Minimis*

Sale Procedures for sales that do not require a waiting period.  The Debtors have been informed

by the Servicers that this waiting period results in significant transactional risk because many

potential purchasers are unwilling to tie up their capital on a firm offer that cannot be

consummated in short order.  Accordingly, the Debtors believe that further streamlining the

process for disposing of REO Properties is necessary and appropriate and in the best interests of

their estates and creditors.

8.      In addition, property values in certain markets have become so depressed

that the Debtors have little or no prospect for achieving a reasonable return on the REO

Properties located therein.  In such situations, the Debtors believe that entering into short-term

leases for the REO Properties will provide the best opportunity to maximize the return on the

REO Properties for the Debtors' estates and creditors.

## Relief Requested

9.      By this Motion, the Debtors seek authority, pursuant to sections 105 and

363 of the Bankruptcy Code, to amend the Existing Order to allow the Debtors to (i)

consummate sales, pursuant to the Non-Noticed Sale Procedures (as described below), of REO

Properties where the value of each individual REO Property, as measured by the lesser of (x) the

amount of cash and other consideration to be received by the Debtors (the "Sale Price"), or (y)

the ledger value as recorded in the Debtors' books and records (the "Book Value"), is

$850,000.00 or less; and (ii) lease REO Properties to third parties for a term of not more than one

(1) year.

**Sale of REO Property**

10.     Pursuant to the Existing Order, the Debtors are permitted to sell REO Properties where the lesser of Sale Price or Book Value is less than $2,000,000 without further order from the Court.  For sales of REO Properties where the lesser Sale Price or Book Value is below $300,000, the Debtors are permitted to close such sales without providing notice to any parties (the "Non-Noticed Sale Procedures").  In contrast, where the lesser of a REO Property's Book Value or Sale Price is between $300,000 and $2,000,000, the Existing Order provides that the Debtors may consummate sales of such properties after filing a notice (the "Notice") of their intent to consummate a particular sale, serving the Notice on certain parties (the "Notice Parties"), and giving the Notice Parties ten days to object (the "Noticed Sale Procedures").

11.     A large percentage of the REO Properties exceed the limits set forth by the Non-Noticed Sale Procedures.  With respect to those REO Properties, the Debtors have been informed by the Servicers that the ten-day waiting period between when a potential purchaser expresses interest in a REO Property and the time at which the Debtors can accept and sign an unconditional sales contact is a significant impediment to the Servicer's ability to close sales.  In addition, while the procedures set forth in the Existing Order are streamlined compared to traditional motion practice, they still represent a transaction risk for, and administrative burden on, the Debtors and entail added expense for their estates.

**Lease of REO Property**

12.     In certain markets, residential housing sales are so depressed that, at least in the short term, continued marketing of REO Properties located therein is unlikely to result in a sale on reasonable terms.  In such situations, deferring efforts to sell in favor of short term leasing arrangements is likely to provide the Debtors with the best return on the REO Properties

both in the short term, through the receipt of rental payments, and over the long term, by allowing the housing market in a particular location to recover before pursuing a sale.  The Debtors believe that this arrangement will benefit their estates and creditors by (i) providing a revenue stream from the REO Properties to the Debtors to offset carrying costs such as property taxes and servicing fees while the Debtors wait for the market to improve, and (ii) reducing the likelihood of damage to the REO Properties though neglect or vandalism.

13.     The Debtors intend to conduct a review of all of the REO Properties to identify those REO Properties whose current valuation is significantly below historical levels. For each such REO Property, the Debtors will direct the relevant Servicer to evaluate the suitability of the REO Property for a short term rental.  Factors that will be considered include the REO Property's condition, its projected revenue stream and occupancy rate, and the medium term recovery prospects of the market in which the REO Property is located.  Based on these factors, the Debtors, in consultation with the relevant Servicers, will determine whether it is in their best interests to enter into a short term lease rather than continuing to market the REO Property.

14.     Where the Debtors determine that entering into a short term lease of a REO Property is likely to produce a greater overall return to their estates than an immediate sale, such REO Property may be offered for lease for a term of one year.  Lease rates will be set so as to ensure a positive net cash-flow and a reasonable rate of return to the estate (such procedures, the "Leasing Procedures").

## The Amended Procedures

15.     The Debtors propose to add the following paragraphs to the Existing Order:

If the Debtors propose to sell a REO Property for an amount that is less than or equal to $850,000 as measured by the lesser of Book Value or Sale Price, such a sale will be deemed to be a Non-Noticed *De Minimis* Sale and may be consummated according to the Non-Noticed *De Minimis* Sales procedures described above.

The Debtors are also authorized to lease any of the REO Properties to a third party for a period of 1 year or less without further approval of the court and without providing notice to any party.

A copy of the proposed amended order (the "Amended Order") is attached hereto as Exhibit A, and a blackline of the Amended Order showing material changes from the Existing Order is attached hereto as Exhibit B.

## **Basis For Relief Requested**

16.     The legal basis for the relief requested with respect to the expansion of the Non-Noticed Sales Procedures was set forth in the Initial Motion.  Expansion of the monetary threshold for the Non-Noticed Sales Procedures for REO Property is justified because such expansion will allow the sales of REO Property to operate more efficiently both by enabling the Servicers to take advantage of opportunities for sales on short notice and by reducing transactional risk and the Debtors' overhead by eliminating the need for the Debtors and their professionals to comply with the administrative requirements of the Noticed Sale Procedures with respect to certain of the REO Properties.  These improvements will allow the Debtors to maximize the return for their estates and creditors from the sales of the REO Properties.

17.     With respect to the Leasing Procedures, section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In order to approve the use, sale, or lease of property outside the ordinary course of business, a bankruptcy judge must "find from the evidence presented before him at the hearing a good business reason to grant such an application."  *Committee of Equity Security Holders v.*

*Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992). In evaluating the propriety of a particular transaction, courts in this district generally apply the business judgment rule. *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993), quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("[T]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'").

18.     Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

19.     The lease of property pursuant to the Leasing Procedures is both an exercise of sound business judgment and in the best interests of the Debtors' estates and their creditors. The Leasing Procedures give the Debtors the flexibility, with respect to each of the REO Properties, to evaluate whether an immediate or delayed sale is likely to provide a greater return for their estates. Where current market conditions are unfavorable, the Debtors will be able to secure a revenue stream from the REO Properties, which is expected to cover maintenance and administrative costs and provide an additional return for the Debtors' estates. Obtaining Court approval for each lease would result in unnecessary administrative costs attendant to drafting, serving, and filing pleadings, as well as time incurred by attorneys for Court appearances, which could drastically reduce the ultimate net value of the REO Properties.

### Notice

20.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the Office of the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; and (v) the United States Attorney for

the Southern District of New York.  No other or further notice need be provided.

    21.  Other than the Initial Motion, no previous request for the relief sought

herein has been made by the Debtors to this or any other court.

    WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: January 20, 2010
   New York, New York

         /s/ Shai Y. Waisman
         Shai Y. Waisman

         WEIL, GOTSHAL & MANGES LLP
         767 Fifth Avenue
         New York, New York 10153
         Telephone: (212) 310-8000
         Facsimile: (212) 310-8007

         Attorneys for Debtors
         and Debtors in Possession

**Exhibit A**
**(The Amended Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                             :

| | |
|---|---|
| In re | : |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : |
| | : |
| Debtors. | : |
| | : |

|  |
|---|
| Chapter 11 Case No. |
| 08-13555 (JMP) |
| (Jointly Administered) |

-------------------------------------------------------------------x

### AMENDED ORDER GRANTING DEBTORS'
### MOTION PURSUANT TO SECTIONS 105, 363, AND 554(a) OF
### THE BANKRUPTCY CODE FOR AUTHORITY TO ESTABLISH
### PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS

Upon the motion, dated January 20, 2010 (the "Motion"),[1] of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), to

amend the order, entered on June 17, 2009 [Docket No. 4021], pursuant to sections 105,

363, and 554(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code"), authorizing the Debtors to establish procedures to sell or abandon *de minimis*

assets; all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

Motion having been provided in accordance with the procedures set forth in the amended

order entered February 13, 2009 governing case management and administrative

procedures [Docket No. 2837]; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates and creditors, and

all parties in interest, and that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED THAT:

The relief requested in the Motion is GRANTED.

The *De Minimis* Sale Procedures are approved as follows:

    i.    The *De Minimis* Sale Procedures shall apply only to the sale of assets involving, in each case, assets whose book value, as recorded in the Debtors' books and records ("Book Value"), or sale price, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold ("Sale Price"), is $2,000,000.00 or less.  The Debtors shall be permitted to sell assets that are encumbered by liens and / or encumbrances only if those liens and / or encumbrances are capable of monetary satisfaction or the holders of those liens and / or encumbrances consent to the sale.  Further, the Debtors shall be permitted to sell assets co-owned by a Debtor and a third-party pursuant to the *De Minimis* Sale Procedures only to the extent that the sale does not violate section 363(h) of the Bankruptcy Code.

    ii.    If the Debtors propose to sell an asset for an amount that is less than or equal to $300,000.00 as measured by the lesser of Book Value or Sale Price, the Debtors may consummate such a Non-Noticed *De Minimis* Sale without further Court approval, and without providing notice of the Non-Noticed *De Minimis* Sale to any party.  The Debtors may take any actions that are reasonable and necessary to close a sale and obtain the

sale proceeds, including paying reasonable fees to third-party sale agents in connection with the Non-Noticed *De Minimis* Sale.

iii.    If the Debtors propose to sell a REO Property for an amount that is less than or equal to $850,000.00 as measured by the lesser of Book Value or Sale Price, such a sale will be deemed to be a Non-Noticed *De Minimis* Sale and may be consummated according to the Non-Noticed *De Minimis* Sales procedures described above.  Where a REO Property is sold for an amount that is greater than $300,000.00, but less than or equal to $850,000.00 (as measured by the lesser of Book Value or Sale Price) the Debtors shall include such property in the relevant Monthly Report (as defined below).

iv.    Except as provided above, if the Debtors propose to sell an asset for an amount that is greater than $300,000.00 but less than or equal to $2,000,000.00, as measured by the lesser of Book Value or Sale Price, the Debtors shall file a Sale Notice and serve a copy of such Sale Notice by facsimile, overnight delivery or hand delivery on the following parties:  (i) the Office of the United States Trustee for the Southern District of New York (the "UST"); (ii) counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii) counsel to the trustee administering the LBI estate (the "LBI Trustee"); (iv) Barclays Capital Inc. ("Barclays") and (v) all known parties holding or asserting liens or encumbrances on the assets that are the subject of the Noticed *De Minimis* Sale and their respective counsel, if known (collectively, the "Interested Parties").

v.    Irrespective of monetary threshold, if the Debtors propose to sell ownership of, or grant any exclusive rights under, any copyright, patent or trademark (in each case, whether registered or unregistered), the Debtors shall file a Sale Notice and serve a copy of such Sale Notice by facsimile, overnight delivery or hand delivery on the Creditors' Committee and Barclays.  Such transfers shall constitute Noticed De *Minimis Sales* solely as to Barclays and the Creditors' Committee for the purposes of this Order.

vi.  The Sale Notice shall include the following information with respect to the Noticed *De Minimis* Sale:

- A description of the asset that is the subject of the Noticed *De Minimis* Sale and its location;

- The identity of the purchaser under the Noticed *De Minimis* Sale and any relationship such party has with the Debtors;

- The identities of any parties known to the Debtors as holding liens or encumbrances on the asset subject to the Noticed *De Minimis* Sale and a statement indicating whether all such liens or encumbrances are capable of monetary satisfaction;

- The major economic terms and conditions of the Noticed *De Minimis* Sale;[2] and

- Instructions consistent with the terms described below regarding the procedures to assert objections to the Noticed *De Minimis* Sale ("Objections").

vii.  Interested Parties will have ten (10) calendar days (the "Notice Period") to object to a Noticed *De Minimis* Sale.  Any Objections to a Noticed *De Minimis* Sale shall be in writing, filed with this Court, and served on the Interested Parties and counsel to the Debtors so as to be received by all parties prior to expiration of the Notice Period.  Each Objection shall state with specificity the grounds for the Objection.  If an Objection to a Noticed *De Minimis* Sale is properly filed and served: (a) the Objection will be deemed a request for a hearing on the Objection and Noticed *De Minimis* Sale at the next scheduled hearing that is at least ten (10) calendar days after service of the Objection; and (b) the Noticed *De Minimis* Sale may not proceed absent (i) written withdrawal of the Objection; or (ii) entry of an order by the Court specifically approving the Noticed *De Minimis* Sale.  If

---

[2]      This information may be provided by attaching the applicable contract or contracts to the Sale Notice.

no Objections are filed and served in accordance with the Noticed *De Minimis* Sale Procedures prior to expiration of the Notice Period, the Noticed *De Minimis* Sale will be deemed final and fully authorized, without any further or final approval from this Court.

viii.    The Debtors may consummate a Noticed *De Minimis* Sale prior to expiration of the applicable Notice Period if the Debtors obtain each Interested Party's written consent to the Noticed *De Minimis* Sale.

ix.    If any significant economic terms of a Noticed *De Minimis* Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Debtors shall send a revised Sale Notice to all Interested Parties describing the Noticed *De Minimis* Sale, as amended.  If a revised Sale Notice is required, the Notice Period shall be extended for five (5) additional days.

x.    On or before the 15th day of every calendar month, the Debtors shall file with the Court, and serve on all parties entitled to notice in these cases, a report (a "Monthly Report") summarizing any Noticed *De Minimis* Sales that were consummated pursuant to the *De Minimis* Sale Procedures during the immediately preceding calendar month.  With respect to each applicable sale, each Monthly Report will include:

- A description of the asset that was the subject of the Noticed *De Minimis* Sale and its location;

- The identity of the purchaser under the Noticed *De Minimis* Sale and any relationship such party has with the Debtors;

- The identities of any parties known to the Debtors as holding liens or encumbrances on the asset subject to the Noticed *De Minimis* Sale; and

- The major economic terms and conditions of the Noticed *De Minimis* Sale.

The Sale Notice, in substantially the form annexed to the Initial Motion as Exhibit A, is approved.

All buyers shall take assets sold by the Debtors pursuant to the *De Minimis* Sale Procedures "as is" and "where is," without any representations or warranties from the Debtors as to quality or fitness of such assets for either their intended or any particular purpose.

Except as expressly provided in paragraph 7, all buyers shall take assets sold by the Debtors pursuant to the procedures approved by this Order free and clear of liens, claims and encumbrances, pursuant to section 363(f) of the Bankruptcy Code. All such liens, claims and encumbrances shall attach to the proceeds of the sale.

To the extent applicable, the ten-day stay of Federal Rule of Bankruptcy Procedure 6004(g) is hereby waived, and this Order shall be effective immediately. Furthermore, Non-Noticed and Noticed *De Minimis* Sales shall be deemed authorized pursuant to the terms of this Order and no further or additional waivers of the ten-day stay of Federal Rule of Bankruptcy Procedure 6004(g) shall be required for the Debtors to consummate a Non-Noticed and / or Noticed *De Minimis* Sale, subject to compliance with the notice and other procedures set forth in the *De Minimis* Sale Procedures.

With respect to all Noticed or Non-Noticed *De Minimis* Asset Sales consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and a Noticed or Non-Noticed *De Minimis* Asset Sale consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any

documents or instruments, or who may be required to report or insure any title or state of

title in or to any of the property sold pursuant to this Order, including without limitation,

all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, administrative agencies, governmental departments, secretaries of

state, and federal, state, and local officials, and each of such persons and entities is

hereby directed to accept this Order as sole and sufficient evidence of such transfer of

title and shall rely upon this Order in consummating the transactions contemplated

hereby.

       With respect to any sale of real property by Debtor LB Rose Ranch LLC

("Rose Ranch") pursuant to the procedures described herein ("Rose Ranch Sales"), Rose

Ranch is authorized to pay any property taxes that are then due and payable in relation to

the real property being sold, out of the proceeds of such sales, and without further motion

or notice.  For the avoidance of doubt, nothing in this Order limits or otherwise affects

Rose Ranch's right to contest such taxes in any manner or for any reason.  The provisions

of paragraph 4 of the Order regarding the transfer of title free and clear of liens claims

and encumbrances shall not apply to (i) the deed restrictions described in that certain

Declaration of  Deed Restrictions And Agreement Concerning The Sale, Occupancy And

Resale Of Property Described As Lots 297 Through 316, Ironbridge Planned Unit

Development, [Phase] II, Garfield County, Colorado, dated December 19, 2008, between

Rose Ranch, the Garfield County Housing Authority, and the Board of Commissioners of

Garfield County, Colorado; or (ii) any lien that may have arisen for real property taxes

due to the Treasurer of Garfield County, Colorado.

In addition, Rose Ranch shall provide written notice, which may be by email, to Ironbridge Homes, LLC, Ironbridge Mountain Cottages, LLC, and Ironbridge Aspen Collection, LLC (collectively, the "Ironbridge Entities"), of the proposed sale of any of the parcels of real property that were the subject of the notices of lien filed with this Court on March 17, 2009 [Docket Nos. 3138 and 3139], at least ten (10) calendar days in advance of the closing of such sales. Alternatively, if Rose Ranch obtains approval from Ironbridge of any such sale, Rose Ranch may close promptly. Further, Rose Ranch shall deposit funds into an escrow account (the "Escrow"), from the proceeds of such sales, after the satisfaction of any property taxes, commissions and other usual or customary closing costs, up to an aggregate of $509,817. Rose Ranch will provide the Ironbridge Entities with quarterly account statements for the Escrow and any funds in the Escrow shall not be disbursed without further order of this Court or upon the consent of Rose Ranch and the applicable Ironbridge Entity. For the avoidance of doubt, nothing in this Order or the establishment or funding of the Escrow shall affect or alter the priority of any claim the Ironbridge Entities may have against Rose Ranch or its property or limit or otherwise affect Rose Ranch's right to contest any of the Ironbridge Entities' purported liens, including those referenced in this paragraph, for any reason.

The Debtors are also authorized to lease any of the REO Properties to a third party for a period of 1 year or less without further approval of the court and without providing notice to any party.

The Debtors are also authorized to abandon assets that, in their business judgment, are not necessary to their winding down, are of inconsequential value to their

estates, or for which the costs associated with a sale exceed the proceeds that would be

generated from such sale.

The following procedures for the abandonment of assets by the Debtors

are hereby authorized and established in these chapter 11 cases:

i.    The Debtors shall give notice via facsimile, hand delivery, or overnight delivery service of each proposed abandonment to (i) the UST; (ii) the Creditors' Committee; (iii) the LBI Trustee; (iv) Barclays; and (v) any party known to the Debtors as having an interest in the asset to be abandoned (collectively, the "Abandonment Notice Parties"). Such notice shall describe the asset to be abandoned, the reason for the abandonment, the parties known to the Debtors as having an interest in the asset proposed to be abandoned, and the entity to which the asset is to be abandoned, if any (the "Abandonment Notice").

ii.    The Abandonment Notice Parties shall have five (5) business days from the date on which the Abandonment Notice is sent to object to the proposed abandonment. Any such objection shall be in writing and delivered to the Debtors' attorneys prior to the expiration of such period. If no written objection is received by Debtors' attorneys prior to the expiration of such five-day period, the Debtors are authorized to abandon the asset. The Debtors may, at any time, obtain approval to abandon an asset from the Abandonment Notice Parties. If no written objection is received by Debtors' counsel in accordance with the procedures herein, or if the Debtors obtain such approval from the Abandonment Notice Parties, the Debtors may abandon an asset promptly.

iii.    If any Abandonment Notice Party delivers an objection to the proposed abandonment so that it is received by Debtors' counsel on or before the fifth business day after the Abandonment Notice is sent, the Debtors and the objecting Abandonment Notice Party shall use good faith efforts to resolve the objection. If the Debtors and the objecting Abandonment Notice Party are unable to achieve a consensual resolution, the Debtors shall not proceed with the proposed abandonment pursuant to these procedures, but may seek Court approval of the

proposed abandonment upon expedited notice and an opportunity for a hearing, subject to the Court's availability.

iv.    On or before the 15th day of every calendar month, the Debtors shall file with the Court an addendum to the Monthly Report setting forth all abandonments by the Debtors during such month pursuant to the authority granted hereby.  The reports shall set forth a description of the asset, the reason for the abandonment, and the party to which the property was abandoned, if any.

The Abandonment Notice, in substantially the form annexed to the Initial Motion as Exhibit B, is approved.

Nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed sale or abandonment after notice and an opportunity for a hearing.

The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

For the avoidance of doubt, nothing in this Order shall (i) authorize the Debtors to sell, license or otherwise encumber any assets transferred by any of the Debtors or Lehman Brothers Inc. to Barclays; or (ii) impair or otherwise modify the rights of Barclays or the Debtors pursuant to the Stipulation and Order Between the Debtors and Barclays Capital Inc. Concerning Certain Gift Merchandise.  [Docket No. 3321].

This Court shall retain jurisdiction over any and all matters arising from

the interpretation or implementation of this Order.

Dated: February ___, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**(Blackline of the Amended Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                         :
In re                                    :        Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :        08-13555 (JMP)
                                         :
                    Debtors.             :        (Jointly Administered)
                                         :
----------------------------------------------------------------x
```

**AMENDED ORDER GRANTING DEBTORS'**
**MOTION PURSUANT TO SECTIONS 105, 363, AND 554(a) OF**
**THE BANKRUPTCY CODE FOR AUTHORITY TO ESTABLISH**
**PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS**

1.       Upon the motion, dated May 14, 2009January 20, 2010 (the "Motion"),[1] of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors" and together with their non-debtor affiliates, "Lehman")), to amend the order,

entered on June 17, 2009 [Docket No. 4021], pursuant to sections 105, 363, and 554(a) of

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), for

authorizationauthorizing the Debtors to establish procedures to sell or abandon *de*

*minimis* assets; all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated

July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the
Motion.

US_ACTIVE\21000437\06\21000437_6.DOC\

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set

forth in the amended order entered February 13, 2009 governing case management and

administrative procedures [Docket No. 2837]; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their

estates and creditors, and all parties in interest, and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED THAT:

The relief requested in the Motion is GRANTED.

The *De Minimis* Sale Procedures are approved as follows:

i.      The *De Minimis* Sale Procedures shall apply only to the sale of assets involving, in each case, assets whose book value, as recorded in the Debtors' books and records ("Book Value"), or sale price, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold ("Sale Price"), is $2,000,000.00 or less. The Debtors shall be permitted to sell assets that are encumbered by liens and / or encumbrances only if those liens and / or encumbrances are capable of monetary satisfaction or the holders of those liens and / or encumbrances consent to the sale. Further, the Debtors shall be permitted to sell assets co-owned by a Debtor and a third-party pursuant to the *De Minimis* Sale Procedures only to the extent that the sale does not violate section 363(h) of the Bankruptcy Code.

ii.      If the Debtors propose to sell an asset for an amount that is less than or equal to $300,000.00 as measured by the lesser of Book Value or Sale Price, the Debtors may consummate such a Non-Noticed *De Minimis* Sale without further Court approval, and without providing notice of the Non-Noticed *De Minimis* Sale to any

2

party.  The Debtors may take any actions that are reasonable and necessary to close a sale and obtain the sale proceeds, including paying reasonable fees to third-party sale agents in connection with the Non-Noticed *De Minimis* Sale.

iii.    If the Debtors propose to sell a REO Property for an amount that is less than or equal to $850,000.00 as measured by the lesser of Book Value or Sale Price, such a sale will be deemed to be a Non-Noticed *De Minimis* Sale and may be consummated according to the Non-Noticed *De Minimis* Sales procedures described above.  Where a REO Property is sold for an amount that is greater than $300,000.00, but less than or equal to $850,000.00 (as measured by the lesser of Book Value or Sale Price) the Debtors shall include such property in the relevant Monthly Report (as defined below).

iv.    iii. If Except as provided above, if the Debtors propose to sell an asset for an amount that is greater than $300,000.00 but less than or equal to $2,000,000.00, as measured by the lesser of Book Value or Sale Price, the Debtors shall file a Sale Notice and serve a copy of such Sale Notice by facsimile, overnight delivery or hand delivery on the following parties:  (i) the Office of the United States Trustee for the Southern District of New York (the "UST"); (ii) counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii) counsel to the trustee administering the LBI estate (the "LBI Trustee"); (iv) Barclays Capital Inc. ("Barclays") and (v) all known parties holding or asserting liens or encumbrances on the assets that are the subject of the Noticed *De Minimis* Sale and their respective counsel, if known (collectively, the "Interested Parties").

v.    iv. Irrespective of monetary threshold, if the Debtors propose to sell ownership of, or grant any exclusive rights under, any copyright, patent or trademark (in each case, whether registered or unregistered), the Debtors shall file a Sale Notice and serve a copy of such Sale Notice by facsimile, overnight delivery or hand delivery on the Creditors' Committee and Barclays.  Such transfers shall constitute Noticed De *Minimis Sales* solely as to

Barclays and the Creditors'' Committee for the purposes of this Order.

vi.    v. The Sale Notice shall include the following information with respect to the Noticed *De Minimis* Sale:

- A description of the asset that is the subject of the Noticed *De Minimis* Sale and its location;

- The identity of the purchaser under the Noticed *De Minimis* Sale and any relationship such party has with the Debtors;

- The identities of any parties known to the Debtors as holding liens or encumbrances on the asset subject to the Noticed *De Minimis* Sale and a statement indicating whether all such liens or encumbrances are capable of monetary satisfaction;

- The major economic terms and conditions of the Noticed *De Minimis* Sale;[2] and

- Instructions consistent with the terms described below regarding the procedures to assert objections to the Noticed *De Minimis* Sale ("Objections").

vii.    vi. Interested Parties will have ten (10) calendar days (the "Notice Period") to object to a Noticed *De Minimis* Sale. Any Objections to a Noticed *De Minimis* Sale shall be in writing, filed with this Court, and served on the Interested Parties and counsel to the Debtors so as to be received by all parties prior to expiration of the Notice Period. Each Objection shall state with specificity the grounds for the Objection. If an Objection to a Noticed *De Minimis* Sale is properly filed and served: (a) the Objection will be deemed a request for a hearing on the Objection and Noticed *De Minimis* Sale at the next scheduled hearing that is at least ten (10) calendar days after service of the

---

[2]    This information may be provided by attaching the applicable contract or contracts to the Sale Notice.

Objection; and (b) the Noticed *De Minimis* Sale may not proceed absent (i) written withdrawal of the Objection; or (ii) entry of an order by the Court specifically approving the Noticed *De Minimis* Sale.  If no Objections are filed and served in accordance with the Noticed *De Minimis* Sale Procedures prior to expiration of the Notice Period, the Noticed *De Minimis* Sale will be deemed final and fully authorized, without any further or final approval from this Court.

viii.    ~~vii.~~ The Debtors may consummate a Noticed *De Minimis* Sale prior to expiration of the applicable Notice Period if the Debtors obtain each Interested Party's written consent to the Noticed *De Minimis* Sale.

ix.    ~~viii.~~ If any significant economic terms of a Noticed *De Minimis* Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Debtors shall send a revised Sale Notice to all Interested Parties describing the Noticed *De Minimis* Sale, as amended.  If a revised Sale Notice is required, the Notice Period shall be extended for five (5) additional days.

x.    ~~ix.~~ On or before the 15th day of every calendar month, the Debtors shall file with the Court, and serve on all parties entitled to notice in these cases, a report (a "Monthly Report") summarizing any Noticed *De Minimis* Sales that were consummated pursuant to the *De Minimis* Sale Procedures during the immediately preceding calendar month.  With respect to each applicable sale, each Monthly Report will include:

- A description of the asset that was the subject of the Noticed *De Minimis* Sale and its location;

- The identity of the purchaser under the Noticed *De Minimis* Sale and any relationship such party has with the Debtors;

- The identities of any parties known to the Debtors as holding liens or encumbrances on the asset subject to the Noticed *De Minimis* Sale; and

- The major economic terms and conditions of the Noticed *De Minimis* Sale.

2.    The Sale Notice, in substantially the form annexed to the Initial Motion as Exhibit A, is approved.

3.    All buyers shall take assets sold by the Debtors pursuant to the *De Minimis* Sale Procedures "as is" and "where is," without any representations or warranties from the Debtors as to quality or fitness of such assets for either their intended or any particular purpose.

4.    Except as expressly provided in paragraph 7, all buyers shall take assets sold by the Debtors pursuant to the procedures approved by this Order free and clear of liens, claims and encumbrances, pursuant to section 363(f) of the Bankruptcy Code.  All such liens, claims and encumbrances shall attach to the proceeds of the sale.

5.    To the extent applicable, the ten-day stay of Federal Rule of Bankruptcy Procedure 6004(g) is hereby waived, and this Order shall be effective immediately. Furthermore, Non-Noticed and Noticed *De Minimis* Sales shall be deemed authorized pursuant to the terms of this Order and no further or additional waivers of the ten-day stay of Federal Rule of Bankruptcy Procedure 6004(g) shall be required for the Debtors to consummate a Non-Noticed and / or Noticed *De Minimis* Sale, subject to compliance with the notice and other procedures set forth in the *De Minimis* Sale Procedures.

6.    With respect to all Noticed or Non-Noticed *De Minimis* Asset Sales consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and a Noticed or Non-Noticed *De Minimis* Asset Sale consummated pursuant to this Order shall be binding upon and shall govern the acts of all

persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

7.     With respect to any sale of real property by Debtor LB Rose Ranch LLC ("Rose Ranch") pursuant to the procedures described herein ("Rose Ranch Sales"), Rose Ranch is authorized to pay any property taxes that are then due and payable in relation to the real property being sold, out of the proceeds of such sales, and without further motion or notice.  For the avoidance of doubt, nothing in this Order limits or otherwise affects Rose Ranch's right to contest such taxes in any manner or for any reason.  The provisions of paragraph 4 of the Order regarding the transfer of title free and clear of liens claims and encumbrances shall not apply to (i) the deed restrictions described in that certain Declaration of  Deed Restrictions And Agreement Concerning The Sale, Occupancy And Resale Of Property Described As Lots 297 Through 316, Ironbridge Planned Unit Development, [Phase] II, Garfield County, Colorado, dated December 19, 2008, between Rose Ranch, the Garfield County Housing Authority, and the Board of Commissioners of Garfield County, Colorado; or (ii) any lien that may have arisen for real property taxes due to the Treasurer of Garfield County, Colorado.

8.      In addition, Rose Ranch shall provide written notice, which may be by email, to Ironbridge Homes, LLC, Ironbridge Mountain Cottages, LLC, and Ironbridge Aspen Collection, LLC (collectively, the "Ironbridge Entities"), of the proposed sale of any of the parcels of real property that were the subject of the notices of lien filed with this Court on March 17, 2009 [Docket Nos. 3138 and 3139], at least ten (10) calendar days in advance of the closing of such sales.  Alternatively, if Rose Ranch obtains approval from Ironbridge of any such sale, Rose Ranch may close promptly.  Further, Rose Ranch shall deposit funds into an escrow account (the "Escrow"), from the proceeds of such sales, after the satisfaction of any property taxes, commissions and other usual or customary closing costs, up to an aggregate of $509,817.  Rose Ranch will provide the Ironbridge Entities with quarterly account statements for the Escrow and any funds in the Escrow shall not be disbursed without further order of this Court or upon the consent of Rose Ranch and the applicable Ironbridge Entity.  For the avoidance of doubt, nothing in this Order or the establishment or funding of the Escrow shall affect or alter the priority of any claim the Ironbridge Entities may have against Rose Ranch or its property or limit or otherwise affect Rose Ranch's right to contest any of the Ironbridge Entities' purported liens, including those referenced in this paragraph, for any reason.

The Debtors are also authorized to lease any of the REO Properties to a third party for a period of 1 year or less without further approval of the court and without providing notice to any party.

9.      The Debtors are also authorized to abandon assets that, in their business judgment, are not necessary to their winding down, are of inconsequential value to their

estates, or for which the costs associated with a sale exceed the proceeds that would be

generated from such sale.

10.    The following procedures for the abandonment of assets by the Debtors are

hereby authorized and established in these chapter 11 cases:

    i.    The Debtors shall give notice via facsimile, hand delivery, or overnight delivery service of each proposed abandonment to (i) the UST; (ii) the Creditors' Committee; (iii) the LBI Trustee; (iv) Barclays; and (v) any party known to the Debtors as having an interest in the asset to be abandoned (collectively, the "Abandonment Notice Parties"). Such notice shall describe the asset to be abandoned, the reason for the abandonment, the parties known to the Debtors as having an interest in the asset proposed to be abandoned, and the entity to which the asset is to be abandoned, if any (the "Abandonment Notice").

    ii.    The Abandonment Notice Parties shall have five (5) business days from the date on which the Abandonment Notice is sent to object to the proposed abandonment. Any such objection shall be in writing and delivered to the Debtors' attorneys prior to the expiration of such period. If no written objection is received by Debtors' attorneys prior to the expiration of such five-day period, the Debtors are authorized to abandon the asset. The Debtors may, at any time, obtain approval to abandon an asset from the Abandonment Notice Parties. If no written objection is received by Debtors' counsel in accordance with the procedures herein, or if the Debtors obtain such approval from the Abandonment Notice Parties, the Debtors may abandon an asset promptly.

    iii.    If any Abandonment Notice Party delivers an objection to the proposed abandonment so that it is received by Debtors' counsel on or before the fifth business day after the Abandonment Notice is sent, the Debtors and the objecting Abandonment Notice Party shall use good faith efforts to resolve the objection. If the Debtors and the objecting Abandonment Notice Party are unable to achieve a consensual resolution, the Debtors shall not proceed with the proposed abandonment pursuant to these procedures, but may seek Court approval of the

proposed abandonment upon expedited notice and an opportunity for a hearing, subject to the Court's availability.

iv.  On or before the 15th day of every calendar month, the Debtors shall file with the Court an addendum to the Monthly Report setting forth all abandonments by the Debtors during such month pursuant to the authority granted hereby.  The reports shall set forth a description of the asset, the reason for the abandonment, and the party to which the property was abandoned, if any.

~~11.~~      The Abandonment Notice, in substantially the form annexed to the Initial Motion as <u>Exhibit B</u>, is approved.

~~12.~~      Nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed sale or abandonment after notice and an opportunity for a hearing.

~~13.~~      The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

~~14.~~      For the avoidance of doubt, nothing in this Order shall (i) authorize the Debtors to sell, license or otherwise encumber any assets transferred by any of the Debtors or Lehman Brothers Inc. to Barclays; or (ii) impair or otherwise modify the rights of Barclays or the Debtors pursuant to the Stipulation and Order Between the Debtors and Barclays Capital Inc. Concerning Certain Gift Merchandise.  [Docket No. 3321].

15.                    This Court shall retain jurisdiction over any and all matters arising

from the interpretation or implementation of this Order.

Dated: ~~June~~February ___, ~~2009~~2010
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE