**Hearing Date and Time: February 10, 2010 at 10:00 a.m. EST**
**Objection Deadline: February 4, 2010 at 4:00 p.m. EST**

DECHERT LLP
Shmuel Vasser
James O. Moore
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to Aviva Investors North America, Inc.*
*and Victoria Reinsurance Company Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                         :
**In re:**                                               :        **Chapter 11**
                                                         :
**Lehman Brothers Holdings Inc.,** *et al.*,             :        **Case No. 08-13555 (JMP)**
                                                         :
                          **Debtors.**                   :        **Jointly Administered**
                                                         :
-------------------------------------------------------------X

### JOINT MOTION OF AVIVA INVESTORS NORTH AMERICA, INC. AND VICTORIA REINSURANCE COMPANY LTD. TO PERMIT LATE CLAIM FILING PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(B)(1)

Aviva Investors North America, Inc. ("Aviva"), in its capacity as Victoria's

investment advisor, and Victoria Reinsurance Company Ltd. ("Victoria"), an affiliate of Aviva,

hereby move this Court (the "Motion") for entry of an order pursuant to Federal Rule of

Bankruptcy Procedure 9006(b) permitting Victoria to file a late proof of claim against Lehman

Brothers Holdings Inc. ("LBHI"). In support of the Motion, Aviva and Victoria respectfully

state as follows:

### PRELIMINARY STATEMENT

This Motion seeks an order deeming the Claim (as defined below) relating to

Victoria's Lehman Programs Security to be filed timely under principles of excusable neglect.

For a single Lehman Programs Security, Aviva and Victoria did not timely file a proof of claim

because they had reason to believe that Victoria's original investment advisor would be filing the proof of claim on its behalf. Aviva and Victoria respectfully request that this Court permit Victoria to file a proof of claim based upon this security (the "Claim") after the filing deadline. A copy of the Claim is attached hereto as Exhibit A. Because (i) the late filing would cause no material prejudice to the Debtors, (ii) the length of delay and impact on the proceedings are both negligible, (iii) the delay resulted from miscommunications between Aviva, Victoria and its original investment advisor and (iv) both Aviva and Victoria have acted in good faith, the Motion should be granted.

## JURISDICTION

1.      The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The Motion is made pursuant to Rules 60(a) and (b) of the Federal Rules of Civil Procedure (each made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules")), section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006(b)(1) of the Bankruptcy Rules.

## BACKGROUND

2.      Aviva, Victoria and their affiliates are a group of insurance companies, some of which hold claims against various debtors in the LBHI bankruptcy cases.

3.      On July 2, 2009, the Bankruptcy Court entered the Order Pursuant to Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(c)(3) Establishing The Deadline For Filing Proofs Of Claim, Approving The Form And Manner Of Notice Thereof And Approving The Proof Of Claim Form [Docket No. 4271] (the "Bar Date Order"), which, among other things, established November 2, 2009 as the Securities Programs Bar Date. See Bar Date

Order at 12.  The Bar Date Order set forth special procedures to file claims in respect of Lehman

Programs Securities, including requirements that a holder of such claims (a) submit a

particularized Securities Programs Proof of Claim Form, (b) identify each Lehman Programs

Security by its International Securities Identification Number and/or Committee on Uniform

Securities Identification Procedures ("CUSIP") number, as applicable and (c) include an

electronic instruction reference number or blocking reference number from a clearing system.

Id. at 12-13.

4.      In the months leading up to the November 2, 2009 bar date, Aviva was

engaged in the arduous process of collecting information and preparing claim forms for its

United States and Canadian affiliates.  Aviva and its affiliates filed timely claims against various

LBHI debtors.

5.      In the course of its preparations, Aviva learned that Victoria held a

Lehman Programs Security and alerted its contact at the Royal Bank of Canada ("RBC"), which

acted as Victoria's investment advisor at the time.[1]  Based on correspondence with the

investment advisor in December 2008, Aviva had reason to believe that RBC would be filing a

proof of claim on Victoria's behalf for the Lehman Programs Security.  As a result, neither

Aviva nor Victoria filed a proof of claim form.  It was not until late December 2009 that Aviva

learned that RBC had not in fact filed the proof of claim and immediately requested that outside

counsel prepare this Motion.

---

[1]      On or about May 2009, Aviva replaced RBC as Victoria's investment advisor.  The claims of Aviva and its affiliates, however, were filed before the end of 2008.

6.     At no time did Victoria receive any notice from RBC with respect to its potential claim against LBHI. The first time Victoria became aware of its claim was when Aviva contacted Victoria in connection with this Motion.

7.     The Claim is against LBHI for the amount of $5,000,000. The Claim relates to a Lehman Program Security identified by CUSIP No. 524908PR5. The declarations of Shani Hatfield, in-house counsel at Aviva, and Jeanne Crawford, Vice President of Victoria's managers at USA Risk Group Barbados Ltd, attest to the above facts and are attached hereto as Exhibits B & C.

## ARGUMENT

### I.    Aviva's and Victoria's Actions Represent Excusable Neglect.

8.     Bankruptcy Rule 9006(b)(1) authorizes the Court in its discretion to permit the filing of an untimely proof of claim where the delay is the result of "excusable neglect." Excusable neglect is not defined by either the Federal Rules of Civil Procedure or the Bankruptcy Rules, nor is it defined in the Bankruptcy Code. The standard for permitting late filed claims for excusable neglect under Bankruptcy Rule 9006(b)(1) was established by the Supreme Court in the Pioneer decision. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380 (1993). In Pioneer, the Supreme Court stated that the excusable neglect standard is an "elastic concept" that "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 392, 395.

9.     The Supreme Court set forth four factors that should be considered in the excusable neglect analysis:

> [1] the danger of prejudice to the debtor, [2] the length of the delay
> and its potential impact on judicial proceedings, [3] the reason for
> the delay, including whether it was within the reasonable control of
> the movant, and [4] whether the movant acted in good faith.

See id. at 395. Based on the four-factor Pioneer analysis, the Motion should be granted.

10.    Moreover, not all of the factors need to weigh in favor of the moving party for relief to be granted.  See In re Enron, No. 01-16034 (AJG), 2003 WL 21756785, at *4 (Bankr. S.D.N.Y. July 30, 2003) ("[t]he relative weight, however, to be accorded to the factors identified in Pioneer requires recognizing that not all factors need to favor the moving party", granting relief even though the court found against the movant as to the reason for the delay). The decision whether to grant the requested relief rests within the Bankruptcy Court's discretion. See In re Enron Corp., 419 F.3d 115, 125 (2d Cir. 2005) ("[T]he discretion of a bankruptcy court to allow or disallow late filed claims is well established . . . .").

11.    Specifically, in Pioneer, the Supreme Court determined that a creditor acted with excusable neglect when the creditor failed to file a timely proof of claim because, among other things, the claims bar date was disclosed only in small print on a notice of a meeting of creditors and because the debtor was able to account for the creditor's claim in its amended plan of reorganization (i.e., the debtor was not prejudiced by the creditor's late claim). See Pioneer, 507 U.S. at 397-98. Similar circumstances exist here.  Because the LBHI bankruptcy cases are so inherently complex and unusual, the claims filing process is equally complex and outside the ordinary, with two separate bar dates and one related date for submission of certain questionnaires by which creditors had to file various types of claims.  With respect to the Securities Programs Bar Date, creditors were forced to obtain information which was not necessarily easily ascertainable, such as the Identification Number of the Note, as well as to review a 74-page list of securities in order to determine if their claims qualified.

A.    There Is No Prejudice to the Debtors.

12.    The first Pioneer factor heavily weighs in favor of permitting the late filing of the Claim because the delay in filing does not in any way "jeopardize the success of the

08-13555-mg    Doc 6718    Filed 01/21/10    Entered 01/21/10 12:53:35    Main Document
Pg 6 of 11

reorganization." <u>Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)</u>,

419 F.3d 115, 130 (2d Cir. 2005) (internal citations and quotations omitted).  First, no disclosure

statement or plan has been filed in these cases.  <u>See, e.g.</u>, <u>In re Enron</u>, No. 01-16034 (AJG), 2003

WL 21756785, at *4-5 (Bankr. S.D.N.Y. July 30, 2003) (permitting filing of late proof of claim

and finding no prejudice because claims review and reconciliation process was in early stages

and no plan or disclosure statement had yet been filed); <u>In re Infiltrator Sys., Inc.</u>, 241 B.R. 278,

281-82 (Bankr. D. Conn. 1999) (permitting late-filed claim because debtor had not yet proposed

plan).  Second, the Claim is inconsequential in comparison to the size of the estates and the

overall claims denominator.  Even to the extent that the Claim may have an effect, however

small, on the funds available to all creditors, the Second Circuit has found this to be of no weight

in the determination of prejudice to the debtor.  <u>See</u> <u>In re Enron</u>, 419 F.3d at 130 ("[W]e agree

with the observation that the [Supreme] Court must have had more in mind than a simple dollar-

for-dollar depletion of assets otherwise available for timely filed claims. . . . Otherwise, virtually

all late filings would be condemned by this factor . . . .") (internal citations and quotations

omitted).  As there is no actual harm by allowing Victoria to file the Claim, any hypothetical

harm that may be raised by the Debtors will not rise to the level of prejudice.  <u>See</u> <u>In re O'Brien

Envtl. Energy</u>, 188 F.3d 116, 127 (3d Cir. 1999) ("[P]rejudice is not an imagined or hypothetical

harm . . . .").

       13.     Nor would allowing Victoria to file the Claim open the proverbial

floodgates for other creditors.  This is a unique situation, and the relief sought here is

exceptionally limited and minor.  All that is being sought is for the Court to extend by

approximately two months the deemed timely filing date for one proof of claim.  To the

knowledge of Aviva and Victoria, at least three other creditors have sought and received such

- 6 -

relief, and the claims of those other creditors are likewise inconsequential in the context of this

case. It is inconceivable that such minor relief to prevent an injustice could in any way prejudice

the efficient administration of these estates. See In re Beltrami Enters., Inc., 178 B.R. 389, 392

(Bankr. M.D. Pa. 1994) (rejecting the floodgates argument because there was no evidence that

"hordes of claimants" would file claims). In any case, however, the Debtors' rights to object to

the Claim on any substantive basis are fully preserved.

      B.     The Length of Delay Is *De Minimis*.

      14.     The second Pioneer factor also heavily weighs in favor of permitting the

late filing of the Claim. The delay is *de minimis* because LBHI presumably is still in the early

stages of reviewing claims based on Lehman Programs Securities. Including the Claim among

the thousands of filed claims based on Lehman Programs Securities would not in any way

disrupt the judicial administration of this case. See, e.g., Pioneer, 507 U.S. at 398-99 (permitting

filing proof of claim twenty days after the bar date); In re Sage-Dey, Inc., 170 B.R. 46, 52-53

(Bankr. N.D.N.Y. 1994) (permitting filing of proof of claim six months after bar date); In re

Beltrami, 178 B.R. at 392 (Bankr. M.D. Pa. 1994) (permitting filing a two-year late proof of

claim).

      C.     The Reasons for the Delay Are Justifiable.

      15.     In Pioneer, the Court found that excusable neglect may extend to

"inadvertent delays" and that it is "not limited strictly to omissions caused by circumstances

beyond the control of the movant." 507 U.S. at 392. The Court also stated, "Congress plainly

contemplated that the courts would be permitted, where appropriate, to accept late filings caused

by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the

party's control." Id. at 388. Moreover, the extent to which a bar date order is unusual or outside

of the ordinary is another factor that courts weigh in determining justification. Id. at 399. In the

Lehman bankruptcy cases, the complex structure creating multiple bar dates for different types of claims created the possibility of confusion, similar to the confusion created by the bar date notice analyzed by the Supreme Court in <u>Pioneer</u>. Even if, as in <u>Pioneer</u> itself, that confusion was to some extent within the power of the moving party to resolve, this situation is exactly the kind of case in which <u>Pioneer</u> offers the opportunity for relief. <u>Pioneer</u>, 507 U.S. at 389-99.

16.    Aviva's and Victoria's delay is justifiable and excusable under the circumstances and in light of the actions taken by the Debtors. There were several reasons for the delay. First, as this Court has noted on numerous occasions, the Debtors' cases are unprecedented in their complexity. This complexity, albeit unavoidable, is reflected in the claims filing process. The Bar Date Order establishes two separate bar dates for different species of claims (and a related questionnaire deadline for some claims), excluding previous deadlines for filing claims in related cases, such as the LBI cases. While the Court has streamlined the process as much as possible, it still remains very difficult to navigate and outside of the ordinary, and was a contributing factor to delay. Other courts have considered this in their analysis. <u>See, e.g.</u>, <u>Pioneer</u>, 507 U.S. at 399. Second, and similarly, Aviva and its affiliates have had to file numerous claims across several bar dates in LBHI's chapter 11 cases.

17.    The facts here are also distinguishable from those cases where courts typically do not find excusable neglect because a creditor, for example, deliberately chose not to file proofs of claim, <u>see</u> In re D.A. Elia Constr. Corp., 246 B.R. 164, 171 (Bankr. W.D.N.Y. 2000) (counsel's claim of bar date notice inadequacy was a pretext because he systematically ignored all other bar date notices), failed to understand the bankruptcy rules regarding claims and bar dates, <u>see</u> In re New York Seven-Up Bottling Co., Inc., 153 B.R. 21, 23 (Bankr. S.D.N.Y. 1993) (creditor chose not to file proofs of claim based on the assumption that the claims were not

- 8 -

in dispute), mistakenly believed that the bar date was a later, incorrect date, see U.K. Northridge,

Inc. v. Au Coton, Inc. (In re Au Coton, Inc.), 171 B.R. 16, 17 (S.D.N.Y. 1994) (counsel

mistakenly believed that the bar date was June 1 when it was actually May 17), inadvertently

missed the claims bar date, see In re Enron, 419 F.3d at 120 (creditor was occupied with other

negotiations with the debtors), or offered no explanation for the delay in filing, see In re Calpine

Corp., Nos. 05-60200 (BRL), 07 Civ. 8493 (JGK), 2007 WL 4326738, at *7 (S.D.N.Y. Nov. 21,

2007) (creditor failed to provide an explanation for not including alleged related claims with the

filing of the original timely filed claims). Here, Aviva believed that RBC, Victoria's original

investment advisor, in fact had filed a timely claim on its behalf. Moreover, RBC did not notify

Victoria of its potential claim against LBHI.

> D.    Aviva and Victoria Have Acted in Good Faith.

18.    The circumstances of this filing demonstrate that Aviva and Victoria have

acted in good faith. Aviva, Victoria and their affiliates certainly intended and planned in utmost

good faith to file all of their claims in a timely fashion, as evidenced by previous filings in the

LBHI cases. Aviva, Victoria and their affiliates have also endeavored to gather all relevant

information regarding their claims in the most timely fashion possible. As the Supreme Court

held in Pioneer, "the lack of any prejudice to the debtor or to the interests of efficient judicial

administration, combined with the good faith of respondents and their counsel, weigh strongly in

favor of permitting the tardy claim." Pioneer, 507 U.S. at 398. Here, these three factors and also

the reason for the delay factor weigh in favor of the Motion. See id.

## II.    The Equities Favor the Granting of the Motion.

19.    The equities also support granting the Motion. The Supreme Court in

Pioneer stated that the determination of excusable neglect is an equitable one. See Pioneer, 507

U.S. 395. Subsequent cases have made clear that the determination involves a balancing of

several factors, no one of which is determinative.  See Praedium II Broadstone, LLC v. Wall St. Strategies, Inc., 2004 U.S. Dist. LEXIS 23308 (S.D.N.Y. Nov. 18, 2004) ("No single factor [under the Pioneer test] is controlling.").  The flexibility of the Pioneer standard, which allows that certain neglect may be excusable in some situations but not in others, "indicates that court should first look to the context of the motion and then determine how much leeway to grant a remiss party."  In re Coxeter, No. 05-19146 (REL), 2009 WL 4893170 at *4 (Bankr. N.D.N.Y. December 10, 2009).  The preference in American jurisprudence is that matters be resolved on their merits, not by procedural fiat.  Id. (citing Brien v. Kullman Indus., Inc., 71 F.3d 1073, 1077 (2d Cir. 1995)).

20.     Here, the balance of the equitable factors weighs heavily in favor of the movant.  Unlike many cases where a claim of "excusable neglect" has been rejected, there is no prejudice, there is no delay and there can be no dispute as to the good faith of the movants.

## NOTICE

21.     Aviva and Victoria have provided notice of the Motion pursuant to the Amended Order Implementing Certain Notice and Case Management Procedures entered in these cases [Docket No. 2837].  Aviva and Victoria submit that no other or further notice need be given.

## NO PRIOR REQUEST

22.     No prior motion for the relief requested herein has been made to this Court or any other court.

[Remainder of the page left blank intentionally.]

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Aviva and Victoria respectfully request that the Court enter the Order, in substantially the form attached hereto as Exhibit D, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9006(b)(1), deeming the proof of claim relating to Victoria's Lehman Programs Security to be timely filed.


Dated: January 21, 2010
        New York, New York

                          /s/ Shmuel Vasser
                          Shmuel Vasser
                          James O. Moore
                          Dechert LLP
                          1095 Avenue of the Americas
                          New York, New York 10036-6797
                          Telephone: (212) 698-3500
                          Facsimile: (212) 698-3599
                          shmuel.vasser@dechert.com
                          james.moore@dechert.com

                          *Counsel to Aviva Investors North America, Inc.*
                          *and Victoria Reinsurance Company Ltd.*

15471671