WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                     :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------------x

**NOTICE OF DEBTOR'S OBJECTION TO PROOF OF CLAIM**
**FILED BY LATSHAW DRILLING COMPANY, LLC (CLAIM NO. 18346)**

       PLEASE TAKE NOTICE that a hearing on the annexed objection, dated January 22, 2010 (the "Objection ") of Lehman Commercial Paper Inc. ("LCPI" and together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors"), to the proof of claim filed by Latshaw Drilling Company, LLC in LCPI's chapter 11 case shall be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

       PLEASE TAKE FURTHER NOTICE that responses or objections, if any, to the Objection must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  John Strasburger, Esq. and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,

New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received by no later than **February 24, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if a response or objection is not received by the Objection Deadline, the relief requested in the Objection shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 22, 2010
    New York, New York

            /s/ Jacqueline Marcus
            Jacqueline Marcus
            WEIL, GOTSHAL & MANGES LLP
            767 Fifth Avenue
            New York, New York 10153
            Telephone: (212) 310-8000
            Facsimile: (212) 310-8007

            Attorneys for Debtors
            and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
700 Louisiana
Suite 1600
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
John Strasburger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------------x

**DEBTOR'S OBJECTION TO PROOF OF CLAIM**
FILED BY LATSHAW DRILLING COMPANY, LLC (CLAIM NO. 18346)

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession, as

and for its objection to the proof of claim filed by Latshaw Drilling Company, LLC ("Latshaw")

in LCPI's chapter 11 case (the "Claim"), respectfully represents:

**Relief Requested**

    1.  LCPI seeks to disallow and expunge in its entirety the $18.09 million

Claim filed by Latshaw for "unfunded commitment damages." Latshaw, which is indebted to

LCPI for more than $45.4 million under a prepetition credit agreement, offers no evidence whatsoever to support its Claim. Consequently, its Claim is facially and fatally deficient and, accordingly, should be disallowed and expunged in its entirety.

### Jurisdiction

2.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

3.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LCPI's indirect parent, Lehman Brothers Holdings Inc. ("LBHI"), and its affiliated debtors in the above-referenced cases (together, the "Debtors," and collectively with their non-debtor affiliates, "Lehman") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LCPI commenced its chapter 11 case on October 5, 2008. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LCPI's affiliate, Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.      Lehman was among the nation's leading lenders, with $46.7 billion[1] of committed loans outstanding to borrowers in all industries for use in their general business operations, as of September 30, 2008, prior to LCPI's Commencement Date.  Lehman was also lender of record for over $4.3 billion of loans which it participated to other financial institutions. The loans held by the Debtors included both funded loans and unfunded or partially funded loans which the Debtors were obligated to fund in the future.

### Latshaw's Chapter 11 Case

8.      Approximately two months after filing its Claim, on November 11, 2009, Latshaw commenced its own voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Oklahoma (the "Oklahoma Court"). Latshaw, a company in the business of building and contracting out oil and gas rigs, is continuing to operate its business as a debtor and debtor in possession and its chapter 11 case is being administered under docket number 09-13572 (R).[2]

---

[1] Such figure excludes loans secured by real estate and private equity loans and advances.

[2] Despite the commencement of Latshaw's chapter 11 case, this Court is the appropriate forum to resolve LCPI's objection to the Claim.  Prosecuting this objection is not a violation of the automatic stay extant in Latshaw's chapter 11 case.  In re Metiom, Inc., 301 B.R. 634, 638-39 (Bankr. S.D.N.Y. 2003); Justus v. Financial News Network Inc. (In re Financial News Network Inc.), 158 B.R. 570, 572-73 (S.D.N.Y. 1993) (finding debtor's objection to proof of claim was not a violation of the automatic stay in claimant's bankruptcy case because debtor's act of objecting to claim was not an offensive act to seize or exercise control of property of the claimant's bankruptcy estate; rather, it was a defensive action by the debtor to "protect its own legal rights and its own bankrupt estate," which does not violate the automatic stay).

9.      Concurrently with the filing of its chapter 11 petition, Latshaw filed a motion and proposed order in the Oklahoma Court seeking to use LCPI's cash collateral on a nonconsensual basis.  (See Latshaw Docket No. 6).  With prompting from LCPI's counsel and upon consideration of the implications of the automatic stay extant in LCPI's chapter 11 case, however, Latshaw agreed with LCPI to terms for a consensual use of LCPI's cash collateral, initially through January 12, 2010, and then through April 30, 2010, which were approved by the Oklahoma Court.  (See Latshaw Docket Nos. 42, 64, and 116.)

10.      Although the Claim does not include any explanation or support therefor, Latshaw outlined for the Oklahoma Court in the *Affidavit of Trent B. Latshaw in Support of Petition and First Day Motions*, a copy of which is annexed hereto as Exhibit A (without exhibits), that it has allegedly incurred approximately $18 million in what it characterized as "direct damages" from LCPI.  (See Latshaw Aff. at ¶ 38.)  Latshaw also indicated that it intends to commence litigation against LCPI in the Oklahoma Court.  (See id.)

11.      Additionally, disregarding the unambiguous prohibition on setoff and recoupment in the Credit Agreement (defined below), Latshaw alleged in numerous pleadings in the Oklahoma court that it "should be permitted to recoup" the amount of its Claim from the amounts it owes to LCPI under the Credit Agreement.  (See Latshaw Aff. at ¶ 38; *Proposed Interim Order Authorizing Use of Cash Collateral*, Latshaw Docket No. 6, at 3.)  Going further, and again disregarding the unambiguous unconditional obligation to repay its debt to LCPI, Latshaw repeatedly alleged that it disputes, *inter alia*, LCPI's right to be repaid the entirety of the more than $45.4 million that Latshaw borrowed from LCPI.  (See, e.g., Latshaw Aff. at ¶ 40.)

**The Terms of Latshaw's Indebtedness to LCPI**

12.      On June 10, 2005, Latshaw and its parent company entered into a credit agreement with, among others, LCPI.  (See id. at ¶ 14.)  The credit agreement provided Latshaw

with a credit line of $45 million for five new rigs which Latshaw was building, which credit line was increased first to $60 million and subsequently to $80 million when Latshaw obtained contracts for additional rigs.  (Id. at ¶ 15.)  Ableco Finance LLC ("Ableco") joined LCPI as a lender for $20 million, or 25% of the total credit line.  In July 2008, Latshaw decided to build six additional rigs, and LCPI and Ableco agreed to increase Latshaw's credit line to $100 million. (Id. at ¶¶ 16-17.)  Accordingly, on July 11, 2008, the parties entered into that certain "$100,000,000 Amended and Restated Credit Agreement" (the "Credit Agreement"), a copy of which is annexed hereto as Exhibit B (without schedules or exhibits). (Id. at ¶ 17.)  LCPI honored Latshaw's subsequent $3 million draw request on August 26, 2008.  (Id. at 6, n.3.)

13.     On September 17, 2008, two days after LBHI commenced its chapter 11 case, Latshaw faxed a borrowing notice to LCPI to draw down the remaining $37 million of its credit line.  (Id. at ¶ 20.)  In the wake of its parent's chapter 11 filing, the largest in history, and its attendant loss of personnel and financial capabilities, LCPI did not respond to Latshaw's request.  Ableco, however, did fund its obligation, advancing Latshaw an additional $9.25 million on or about September 18, 2008.  (Id. ¶ 21.)

14.     In total, Latshaw owes LCPI and Ableco no less than approximately $45.4 million and $24 million, respectively, plus any and all interest, fees, expenses and other obligations and liabilities pursuant to the Credit Agreement.

15.     The Credit Agreement makes it clear that Latshaw is obligated to repay LCPI the full amount borrowed under the Credit Agreement.  Specifically, pursuant to section 2.4(a) of the Credit Agreement, Latshaw

> unconditionally promise[d] to pay to [LCPI] for the account of the appropriate Lender the entire unpaid principal amount of each Loan of such Lender on such date on which the Loans become due and payable….

Credit Agreement at ¶ 2.4(a) (emphasis added).[3]  Latshaw further agreed that

> [a]ll payments (including prepayments) to be made by [Latshaw]
> …, whether on account of principal, interest, fees or otherwise,
> shall be made <u>without setoff or counterclaim</u>….

<u>Id.</u> at ¶ 2.9(d) (emphasis added).  Finally, pursuant to section 9.12 of the Credit Agreement,

Latshaw

> knowingly, voluntarily and intentionally, irrevocably and
> unconditionally … WAIVE[D], TO THE MAXIMUM EXTENT
> NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO
> CLAIM OR RECOVER IN ANY LEGAL ACTION OR
> PROCEEDING … ANY SPECIAL, EXEMPLARY, PUNITIVE
> OR CONSEQUENTIAL DAMAGES" when it entered into the
> Credit Agreement.

<u>Id.</u> at ¶ 9.12(e).  The Credit Agreement is governed by the laws of the State of New York.  <u>Id.</u> at

¶ 9.11.

### <u>The Requirements of the Bar Date Order and Latshaw's Deficient Claim</u>

16.     By order, dated July 2, 2009 [Docket No. 4271] (the "<u>Bar Date Order</u>"),

this Court established September 22, 2009 (the "<u>Bar Date</u>"), as the deadline for each person or

entity to file proofs of claim based on prepetition claims (as defined in section 101(5) of the

Bankruptcy Code) against the Debtors (Bar Date Order at 2) and required, *inter alia*, that all

proofs of claim filed against the Debtors conform substantially to the form attached to the Bar

Date Order, "set forth with specificity the legal and factual basis for the alleged claim," and

"include supporting documentation or an explanation as to why documentation is not available."

(<u>Id.</u> at 2, 6.)  The Court-approved form proof of claim itself clearly instructed as follows:

---

[3] By way of clarification, by letter, dated September 18, 2008, from Ableco to Latshaw and
acknowledged by, *inter alia*, LCPI, Ableco directed Latshaw to remit all payments due to Ableco
under the Credit Agreement directly to Ableco.

Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements…. If the documents are voluminous, attach a summary….

Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d).

(Id. at Ex. B.)

17. The Bar Date Order further provided that any creditor that

fails to file a proof of claim in accordance with the Bar Date Order … shall be forever barred, estopped and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim…

(Id. at 9-10.) All of the foregoing information was repeated in the notice of the Bar Date which was mailed to all known creditors and published extensively. (See id. at Ex. A.)

18. On September 18, 2009, Latshaw filed its Claim, which consists, *in toto*, of two pages. The Claim, a true and correct copy of which is attached hereto as Exhibit C, was assigned claim number 18346 by the Debtors' Court-approved claims and noticing agent. The first page of the Claim, a proof of claim form consistent with the form attached to the Bar Date Order, alleges as the basis for the Claim only: "Contract – unfunded commitment damages – see attached proviso incorporated herein." The second page of the Claim contains a two paragraph "proviso" that does not even attempt to set forth with specificity the legal or factual basis for the Claim or include supporting documentation or an explanation as to why documentation is not available. The sole substance of the "proviso" is a reservation of rights to which Latshaw alludes it "may be entitled." Included in the extensive laundry list, without explanation, are the rights to "setoffs, or recoupment," which, as set forth above, Latshaw clearly waived and to which Latshaw is indisputably not entitled.

**Objection**

### I.    The Claim Should be Disallowed and Expunged Because It Fails to Comply with the Bar Date Order

19.    The Claim undoubtedly fails to comply with the Bar Date Order. It contains no specificity as to the legal or factual basis therefor and includes no supporting documentation or explanation as to why documentation was not available. (See Bar Date Order at 6.) Accordingly, this Court should therefore disallow and expunge the Claim in its entirety and hold that, pursuant to the Bar Date Order, Latshaw is "forever barred, estopped and enjoined from asserting such claim against the Debtors …, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim." (Id. at 10.)

### II.    Alternatively, the Claim Should be Disallowed and Expunged Because Latshaw Failed to Satisfy Its Burden of Proof

20.    It is undeniable that Latshaw failed to satisfy its burden of proving its Claim by a preponderance of the evidence, having offered no evidence whatsoever to support its Claim.

21.    The Claim is not *prima facie* evidence of the validity or the amount of any liability owed by LCPI because it was not properly filed by Latshaw. Bankruptcy Rule 3001(f) provides, in pertinent part, that a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of such claim. See FED. R. BANKR. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."). But Bankruptcy Rule 3001(a) provides, in relevant part, that "[a] proof of claim shall conform substantially to the appropriate Official Form." FED. R. BANKR. P. 3001(a). Each of (i) Official Form No. 10, (ii) the proof of claim form approved by this Court pursuant to the Bar Date Order, and (iii) the Claim completed and

filed by Latshaw contain the same two instructions, with which Latshaw failed to comply.  <u>See</u>

<u>supra</u> ¶ 16.  As set forth above, the Claim includes no documents or summary thereof to support

Latshaw's claim.  As such, the Claim was not filed in accordance with the Bankruptcy Rules and

is not entitled to a presumption of *prima facie* validity.  In any case, "it is clearly established law

that the Rule 3001(f) presumption governs only the burden of production, and that the ultimate

burden of proving the claim by a preponderance of the evidence remains with the claimant."

<u>Best Payphones, Inc. v. Verizon N.Y., Inc.</u> (<u>In re Best Payphones, Inc.</u>), 2006 U.S. Dist. LEXIS

10297 at *9 (S.D.N.Y. Mar. 14, 2006).

**III.  Alternatively, the Claim Should Be Disallowed and
Expunged to the Extent It Includes Consequential Damages**

22.    As evidenced above, Latshaw waived any right it may have had to claim

or recover from LCPI any special, exemplary, punitive or consequential damages.  <u>See</u> Credit

Agreement at ¶ 9.12(e).  Latshaw's President confirmed this in an affidavit submitted to the

Oklahoma Court.  (<u>See</u> Latshaw Aff. at ¶ 4 (stating that "the Credit Agreement does not permit

assessment of consequential damages")).

23.    Well after the Bar Date for filing claims in this Court, Latshaw

represented to the Oklahoma Court that "the sole precipitating factor" for its chapter 11 case was

LCPI's alleged breach of the Credit Agreement "by its failure to fund a Loan to Latshaw when

called upon to do so."  (<u>Id.</u>)  Latshaw claimed in the Oklahoma Court that it incurred

approximately $18 million – the amount of Latshaw's Claim in LCPI's case – in what it

opportunistically characterized as "direct" damages.  (<u>Id.</u> ¶ 38.)  But, as demonstrated below, the

types of damages that Latshaw described are not direct at all.  They are, in fact, quintessential

examples of consequential damages:  in one example alone, Latshaw claimed that more than

96% of the alleged damages (approximately $15.9 million plus interest accrued thereon) are

for equipment ordered, and for which delivery had been taken, for the construction of two new rigs which were to be built for a new customer with three-year contract terms. The two new rigs had to be cancelled on [LCPI's] refusal to fund the commitment….

(Id.)

24.     As the Second Circuit observed, general or market damages are "distinct categories of damages" from special or consequential damages. Rensselaer Polytechnic Inst. v. Varian, Inc., 2009 U.S. App. LEXIS 17855 at *5 (2d Cir. Aug. 12, 2009) (quoting Schonfeld v. Hilliard, 218 F.3d 164, 175 (2d Cir. 2000)). "A plaintiff is seeking general damages when he tries to recover the value of the very performance promised." Id. (quoting Schonfeld, 218 F.3d at 175). "General damages are sometimes called 'market' damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach." Schonfeld, 218 F.3d at 175-76. In New York, "[t]he law is well settled that upon a breach of contract to loan money the recovery is only nominal unless special damage is shown." Bond Street Knitters, Inc. v. Peninsula Nat'l Bank, 266 A.D. 503, 504 (N.Y. App. Div. 1943). Nominal damages in the case of a breach of a contract to loan money consist of the cost of obtaining replacement financing, for example, "if the loan was to be at the market rate of interest and upon breach the borrower secured money from another lender at the same rate and without any extra expense. Frequently a higher rate must be paid and there are additional expenses incurred. When such is the case, damages are awarded to the extent of the injury thus shown." 11 Joseph M. Perillo ed., CORBIN ON CONTRACTS § 59.3 (Matthew Bender). "'Special' or 'consequential' damages, on the other hand, seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." Rensselaer, 2009 U.S. App. LEXIS 17855 at *5 (quoting Schonfeld, 218 F.3d at 176). Courts have defined consequential

damages as "damages not arising 'within the scope' of plaintiff's transactions with defendant, but resulting in a foreseeable way from losses incurred by plaintiff because of defendant's breach." E.g., R.B. Matthews, Inc. v. Transamerica Transp. Serv., Inc., 945 F.2d 269, 274 (9th Cir. 1991), quoted in Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp. (In Enron Corp.), 367 B.R. 384, 408 (Bankr. S.D.N.Y. 2007). Even if proven, the alleged damages described by Latshaw to the Oklahoma Court would merely be consequential damages. They do not arise within the scope of the Credit Agreement, but stem from losses incurred by Latshaw in third-party dealings, which were allegedly a consequence of the breach. See Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp. (In Enron Corp.), 367 B.R. 384, 408-09 (Bankr. S.D.N.Y. 2007).

25. As set forth above, Latshaw provided no basis or support for its Claim and, for the reasons set forth above, see supra §§ I and II, the Claim should be expunged. Latshaw's unsupported, self-serving statements made in the Oklahoma Court months after the Bar Date established by this Court do not constitute, and should not be deemed to constitute, support for the Claim. But, Latshaw should be bound by the sworn statements of its President, describing Latshaw's damages as consequential, and Latshaw should be precluded from introducing alternative theories for the Claim. As Latshaw waived its right to consequential damages, any claim it may attempt to bolster with evidence of consequential damages should be expunged.

## IV. General Denial of Liability and Reservation of Rights

26. Alternatively and in addition to the foregoing, LCPI objects to the Claim and denies any and all liability to Latshaw. LCPI reserves its rights to supplement the facts asserted in this Objection and to further object to the Claim on any ground whatsoever,

including, but not limited to, Latshaw's failure to mitigate any damages it may be able to support.

27. Despite its assertions in the Oklahoma Court, Latshaw may not recoup the amount of the Claim against any amounts it owes as a debtor to LCPI for at least two reasons. Recoupment is "an equitable remedy that, of itself, gives no right to actual payment." Kings Terrace Nursing Home & Health Related Facility v. New York State Dep't of Soc. Servs. (In re Kings Terrace Nursing Home & Health Related Facility), 184 B.R. 200, 202 (S.D.N.Y. 1995). As the United States District Court for the Southern District of New York noted, "one thing is crystal clear: … there can be no recoupment unless there is an underlying right." Id. at 203 (citing 3 Theodore Sedgwick, A Treatise on the Measure of Damages § 1041 (9th ed. 1912) ("a defendant can recoup nothing that he [sic] could not recover in an action")). Because Latshaw has no valid claim, it is not entitled to exercise recoupment. Moreover, Latshaw "unconditionally" promised to repay amounts it borrowed from LCPI, "without setoff or counterclaim."[4] (Credit Agreement at ¶¶ 2.4(a), 2.9(d).) Latshaw cannot credibly dispute that it voluntarily waived any rights it may have had to recoupment. LCPI reserves all affirmative and defensive rights it may have in the event Latshaw attempts to recoup any amount of its Claim.

---

[4] Courts, including the United States Courts of Appeals for the Second and Tenth Circuits, and courts in the Northern District of Oklahoma and Southern District of New York have uniformly considered recoupment to be a "counterclaim." E.g., Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 n.2 (2d Cir. 2002) (noting the Second Circuit's "past observation that 'the distinction between a recoupment and a setoff retains little significance under the modern rules for asserting counterclaims in pleading'"); Inter-State Nat'l Bank v. Luther, 221 F.2d 382, 390 (10th Cir. Kan. 1955) ("Counterclaim under Rule 13, F.R.C.P., includes both setoff and recoupment, and is broader than either in that it includes other claims and may be used as a basis for affirmative relief."); In re Hentges, 350 B.R. 586, 602 (Bankr. N.D. Okla. 2006) ("The practice of netting out the claims of debtors and their creditors only makes sense when a counterclaim for recoupment on a creditor's claim is involved.") (internal citations omitted). Accord 5-553 Collier on Bankruptcy P 553.11 ("Setoff and recoupment are also treated as forms of counterclaim for procedural purposes.").

28.     LCPI reserves all rights it has to collect and prosecute claims for the return of the more than $45.4 million Latshaw borrowed from and unconditionally promised to repay to LCPI.

**Notice**

29.     No trustee has been appointed in these chapter 11 cases.  LCPI has served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to Latshaw; and (vii) all parties who have requested notice in these chapter 11 cases.  LCPI submits that no other or further notice need be provided.

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE LCPI respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  January 22, 2010
        New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :    08-13555 (JMP)
                                          :
                         Debtors.         :    (Jointly Administered)
                                          :
------------------------------------------------------------------x
```

### ORDER DISALLOWING AND EXPUNGING PROOF OF CLAIM
### FILED BY LATSHAW DRILLING COMPANY, LLC (CLAIM NO. 18346)

Upon consideration of the Debtor's Objection to Proof of Claim Filed by Latshaw

Drilling Company, LLC (Claim No. 18346), dated January 22, 2010 (the "Objection"), filed by

Lehman Commercial Paper Inc. ("LCPI" and together with its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors"), and the Court

having jurisdiction to consider the Objection and the relief requested therein in accordance with

28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Objection and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been

provided in accordance with the procedures set forth in the amended order entered February 13,

2009 governing case management and administrative procedures [Docket No. 2837] to (i) the

United States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no

other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of LCPI, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS[1]:

A.      The claim filed by Latshaw Drilling Company, LLC ("Latshaw") in LCPI's chapter 11 case (Claim No. 18346) (the "Claim") failed to comply with the requirements of this Court's order, dated July 2, 2009 (Docket No. 4271) (the "Bar Date Order").

B.      The Claim is not *prima facie* evidence of the validity or amount of any liability owed by LCPI because it was not properly filed by Latshaw.

C.      Latshaw failed to satisfy its burden of proof to support the Claim by a preponderance of the evidence.

D.      Pursuant to the Credit Agreement (as defined in the Objection), Latshaw waived any right it may have had to claim or recover from LCPI any special, exemplary, punitive or consequential damages.

E.      Pursuant to the Credit Agreement, Latshaw has an obligation to repay its obligations to LCPI without setoff or counterclaim.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      The Claim is hereby disallowed and expunged in its entirety.

2.      Epiq Systems, the Debtors' claims and noticing agent, is authorized and directed to delete the Claim from the Debtors' official claims registry.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See FED. R. BANKR. P. 7052.

3.      In accordance with the terms of the Bar Date Order, LCPI is forever

discharged from any and all indebtedness or liability with respect to Latshaw and the Claim.

4.      This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation and/or interpretation of this Order.


Dated: _____, 2010
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE