Hearing Date and Time: February 10, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  February 3, 2010 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
**In re**                                                                  :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
:
**Debtors.**                              :    **(Jointly Administered)**
:
:
------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR AN ORDER ENFORCING THE AUTOMATIC STAY AGAINST AND COMPELLING PAYMENT OF POST-PETITION FUNDS BY FIRST NATIONAL BANK

PLEASE TAKE NOTICE that a hearing on the annexed Debtors' Motion Pursuant To Sections 105(a) and 362 Of The Bankruptcy Code For An Order Enforcing The Automatic Stay And Compelling Payment Of Post-Petition Funds (the "Motion") filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for an order enforcing the automatic stay and compelling payment of funds deposited with First National Bank subsequent to the Commencement of LBHI's chapter 11 case, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green,

US_ACTIVE:\43270732\01\43270732_1.DOC\58399.0003

New York, New York 10004 (the "Bankruptcy Court"), on **February 10, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Peter Gruenberger, Esq., and Denise Alvarez, Esq. attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **February 3, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 22, 2010
     New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtors
and Debtors in Possession

Hearing Date and Time: February 10, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  February 3, 2010 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                                           :          Chapter 11 Case No.
                                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,     :          08-13555 (JMP)
                                                                                   :
                                  Debtors.                                 :          (Jointly Administered)
                                                                                   :
                                                                                   :
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE
FOR AN ORDER ENFORCING THE
AUTOMATIC STAY AGAINST AND COMPELLING
<u>PAYMENT OF POST-PETITION FUNDS BY FIRST NATIONAL BANK</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), file this motion (the "<u>Motion</u>") and respectfully represent:

**Preliminary Statement**

1. This motion is a straightforward application to enforce the automatic stay against First National Bank, a division of FirstRand Bank Limited (collectively, "<u>FirstRand</u>") and compel it to pay post-petition deposits acquired by FirstRand in a bank account belonging to

LBHI. FirstRand placed an administrative freeze on LBHI's bank account shortly after the commencement of LBHI's chapter 11 case in order to preserve its asserted ability to set off certain of LBHI's alleged pre-petition obligations against the funds contained in that account. As demonstrated below, over 552,000 South African Rand (nearly $75,000) was deposited and/or credited to LBHI's bank account after the Commencement of LBHI's chapter 11 case. *See infra ¶¶* 9-17. FirstRand's administrative freeze has prevented the Debtors from withdrawing all monies in the account, including all amounts deposited and/or wired into the account post-petition. FirstRand has not moved for relief from the automatic stay and threatens to exercise an illicit setoff against LBHI's funds held in that account.

2. FirstRand's refusal to pay LBHI the amounts contained in LBHI's bank account constitutes a violation of the automatic stay. FirstRand intends to setoff LBHI's alleged pre-petition obligations against funds contained in that account. However, section 553 of the Bankruptcy Code permits setoff only of a creditor's pre-petition debt against a debtor's pre-petition debt; setoff of a pre-petition debt against a post-petition obligation, as intended here, is precluded. *See infra ¶¶* 20-22. Thus, all funds credited to the account post-petition are not eligible for setoff and cannot – under any circumstances – be withheld by FirstRand. Moreover, FirstRand has failed to move for relief from the automatic stay for at least several months while maintaining a freeze of LBHI's account. This failure, alone, constitutes a violation of the automatic stay. Accordingly, the Debtors request that the Court enforce the automatic stay and compel FirstRand to pay the Debtors all funds deposited in LBHI's bank account post-petition.

## Background

3. Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.

5.  Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

6.  On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

**Jurisdiction**

7.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8.  FirstRand is subject to the personal jurisdiction of the Court. FirstRand filed a proof of claim against LBHI in its chapter 11 case, which was assigned number 33312 ("Claim No. 33312") by the Court-approved claims and noticing agent.

**Lehman's Account with FirstRand**

9.  Prior to the commencement of the Debtors' Chapter 11 cases, LBHI established and maintained a general deposit account with FirstRand, located in Johannesburg, South Africa. The account is identified as No. 9015175 and is denominated in South African Rand (the "FirstRand Account"). *See* Declaration of Adrian Teng in Support of Debtors' Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Compelling Payment of Post-Petition Funds by FirstRand ("Teng Decl." or "Teng Declaration") ¶ 3. As of November 18, 2009, the balance of the FirstRand Account was 16,578,333.64 South African Rand ("ZAR"). Teng Decl. at ¶ 10.

10.  On September 15, 2008 at 1:45 a.m. (Eastern Daylight Time) ("EDT"), LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Commencement Date"). There is a seven hour difference between the local time in Johannesburg and New York. Thus, at the time that LBHI commenced its chapter 11 case, it was approximately 8:45 a.m. in Johannesburg.

11.  Shortly after LBHI commenced its chapter 11 case, FirstRand placed an administrative freeze on the FirstRand Account, preventing the Debtors from withdrawing any amounts, but still allowing additional monies to be deposited and/or wired into the account. Teng Decl. ¶ 6.

12.  By letter dated December 4, 2008, LBHI requested that FirstRand confirm that it would not offset any alleged indebtedness by LBHI to FirstRand against the funds that were currently in the FirstRand Account. Teng Decl. ¶ 7, Exh. B at 2.

13.  FirstRand responded by letter dated May 12, 2009. Teng Decl.., Exh. C. In that letter, FirstRand confirmed that it maintained the FirstRand Account under LBHI's name, but refused to provide confirmation as to whether it would offset LBHI's alleged indebtedness

from the funds in the FirstRand Account. *Id.* at 1-2. Rather, FirstRand stated that LBHI was the guarantor of certain of Lehman Brothers International (Europe)'s alleged obligations and that it reserved its alleged right to "set off the balance in the account which we hold for them against amounts owed to them by us." *Id*. at 2.

14. Moreover, FirstRand has exercised – and intends to continue exercising – its alleged right to set off LBHI's alleged obligations against the funds contained in the FirstRand Account. Indeed, in Claim No. 33312, FirstRand admits that "it has exercised its right to set off the balance in the Debtor's Bank Account in the amount of $1,951,582.00 against the Debtor's obligations to [FirstRand] under the Guarantee" See Addendum to Claim No. 33312, ¶ 8. In addition, in October 2009, LBHI received the following message when it attempted to transfer certain funds out of the FirstRand Account:

> WE HAVE CLAIM AGAINST LEHMAN BROTHERS HOLDINGS INC. (LBHI) (WHICH ARISES AS A RESULT OF A GUARANTEE GIVEN BY LBHI TO US IN RESPECT OF OBLIGATIONS OF LEHMANS [SIC] BROTHERS INTERNATIONAL EUROPE). OUR CLAIM AGAINST LBHI IS FOR AN AMOUNT OF USD 5 659 405, 00. WE HAVE BEEN ADVISED BY OUR NEW YORK LAWYERS THAT WE ARE ENTITLED TO SET OFF AGAINST OUR CLAIM, THE CREDIT BALANCE IN LBHI ACCOUNT WITH US (9015175 BEING THE ACCOUNT TO WHICH YOUR INSTRUCTION RELATES) (THE ACCOUNT). BASED ON CURRENT EXCHANGE RATES, OUR CLAIM AGAINST LBHI FAR EXCEEDS THE BALANCE IN THE ACCOUNT. WE THEREFORE DECLINE YOUR REQUEST TO EFFECT THE TRANSFER.

Teng Decl. ¶ 9, Exh. D. As of the date hereof, approximately sixteen months from the Commencement Date, FirstRand has not moved for relief from the automatic stay.

**The Transaction Log**

15. FirstRand provided LBHI with the information contained in the transaction log attached to the Teng Declaration as Exhibit A. That transaction log sets forth the

dates and times when certain deposits and withdrawals were made to the FirstRand Account and the dates when those same deposits and withdrawals were booked to the account. *See* Teng Decl. ¶ 4, Exh. A.

16. As indicated in the transaction log, on Friday, September 15, 2008, the FirstRand Account had an opening balance of ZAR 28,253,683.68. *Id.* ¶ 5 and Exh. A at 1. On Monday, September 15, 2008, numerous credits and debits were booked to the FirstRand after the commencement of LBHI's chapter 11 case, resulting in a net cash movement of ZAR -12,227,814.09[1] *Id.* The closing balance of the FirstRand Account on September 15, 2008 was ZAR 16,025,869.59. *Id.*

17. As of November 18, 2009, the balance of the FirstRand Account was ZAR 16,578,333.64. *Id* ¶ 10. Thus, due to various deposits and/or wire transfers made after September 15, 2008, ZAR 552,464.05 was credited to the FirstRand Account between September 16, 2008 and November 18, 2009. As a result, over ZAR 552,000 on deposit in the FirstRand Account represents post-petition funds belonging to the debtor in possession. That amounts to approximately 74.9 thousand in U.S. dollars (based on a Reuters conversion rate of 1 ZAR to 0.135750 USD on 1/11/10 at 1:47 p.m. EST).

**Relief Requested**

18. The Debtors seek the entry of an Order (i) enforcing the automatic stay and directing FirstRand to release the administrative freeze placed on all funds deposited and/or wired into the FirstRand Account after the Commencement Date; and (ii) compelling FirstRand to pay to LBHI, all amounts deposited and/or wired into the FirstRand Account after the Commencement Date.

---

[1] These debits were made after the commencement of LBHI's chapter 11 case and are subject to further review. While the Debtors do not address the propriety of these debits at this time, they reserve their right to contest or object to such debits.

**All Funds Deposited and/or Wired into the FirstRand
Account After the Commencement Date Are Not Eligible for
Setoff and FirstRand Should be Compelled to Pay Such Funds to LBHI**

19. FirstRand claims that it has the right to setoff LBHI's alleged obligations against the funds contained in the FirstRand Account.

20. While the Bankruptcy Code does not establish an independent right of setoff, section 553 of the Bankruptcy Code preserves the right of setoff that may exist under applicable non-bankruptcy law. *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138-39 (2d Cir. 1998). Section 553(a) of the Bankruptcy Code states, in relevant part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset <u>a mutual debt</u> owing by such creditor to the debtor that <u>arose before the commencement of the case</u> under this title against a claim of such creditor against the debtor that <u>arose before the commencement of the case</u>. . . .

11 U.S.C § 553(a) (emphasis supplied). Therefore, the following prerequisites must be satisfied to be eligible for setoff under the Bankruptcy Code: "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed by the creditor must be mutual." *In re Lehman Bros. Holdings, Inc.,* 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009) (quoting *In re Bousa Inc.,* 2006 WL 2864964, *3 (Bankr. S.D.N.Y. Sept. 29, 2006)); *see also Bennett Funding,* 146 F.3d at 139.

21. There is no dispute that a debtor-creditor relationship exists between FirstRand and LBHI. "The deposit of cash into a bank account creates a debtor-creditor relationship between the bank (as debtor) and the holder of the account (as creditor), at which time the depositor 'parts with title to the funds in exchange for a debt owed to him by the bank.'" *Lehman Bros. Holdings,* 404 B.R. at 758 (quoting *Bennett Funding*, 146 F.3d at 139).

22. At issue is whether mutuality exists between the alleged debts of LBHI and FirstRand. "Debts are mutual when the debts and credits are in the same right and are between the same parties, standing in the same capacity." *Scherling v. Hellman Elec. Corp.,* 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995). "Courts have interpreted the same right to mean that a pre-petition debt cannot offset a post-petition debt." *Id.* As this Court held, "mutuality requires that funds must be held in [the debtor's] account prior to commencement of [the debtor's] bankruptcy in order for a [creditor] to be able to exercise the right of setoff." *Lehman Bros. Holdings,* 404 B.R. at 761. Thus, the mutuality requirement of section 553 precludes a creditor-bank from offsetting a debtor's pre-petition obligations from funds deposited with the creditor-bank post-petition. *See id.* at 758-61 (finding no mutuality between LBHI's alleged pre-petition debts to DnB Nor Bank ("DnB") and the funds credited to LBHI's DnB account post-petition); *In re Orr*, 234 B.R. 249, 254-55 (Bankr. N.D.N.Y. 1999) (holding that wages deposited in bank account post-petition were not subject to setoff); *In re Kleather*, 208 B.R. 406, 414 (Bankr. S.D. Ohio 1997) (stating that "it is clear that the right of setoff cannot exist in post-petition deposits" and denying bank's motion to offset amounts deposited in bank account post-petition against a pre-petition claim); *In re Springfield Casket Co.,* 21 B.R. 223, 228 (Bankr. S.D. Ohio 1982) ("[I]n the context of bankruptcy, postpetition debts may not provide the basis for setoff because mutuality ceases upon the filing of the bankruptcy estate, i.e. a claim owing to a creditor by a debtor may not be offset by a debt owing by the creditor to that debtor's estate, since the parties are not identical and mutuality has ceased.").

23. Here, there is no dispute that over ZAR 552,000 frozen in the FirstRand Account was deposited and/or credited to that account after the Commencement Date. Such funds constitute post-petition deposits which lack the requisite mutuality with LBHI's alleged pre-petition obligations. This renders them ineligible for setoff pursuant to section 553 of the

US_ACTIVE:\43270732\01\43270732_1.DOC\58399.0003        8

Bankruptcy Code. *See In re Lehman Bros.,* 404 B.R. at 760 (holding that "funds must be traceable to an identified account as a prepetition deposit before such funds can be available for setoff").

### FirstRand's Administrative Freeze of the FirstRand Account Violates the Automatic Stay

24.  The automatic stay is one of the fundamental protections afforded to debtors under the Bankruptcy Code. *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.,* 474 U.S. 494, 503 (1986). The automatic stay "is intended 'to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'" *SEC v. Brennan,* 230 F.3d 65, 70 (2d Cir. 2000) (quoting *In re United States Lines, Inc,* 197 F.3d 631, 640 (2d Cir. 1999)). As recognized by this Court and the United States Court of Appeals for the Second Circuit, the automatic stay

> is a crucial provision of bankruptcy law. It prevents disparate actions against debtors and protects creditors in a manner consistent with the bankruptcy goal of equal treatment . . . by ensuring that no creditor receives more than an equitable share of the bankrupt's estate.

*In re Drexel Burnham Lambert Group, Inc.,* No. 90B-10421, 1990 WL 302177, *5 (Bankr. S.D.N.Y. Dec. 14, 1990) (quoting *Lincoln Sav. Bank, FSB v. Suffolk County Treasurer,* 880 F.2d 1540, 1545 (2d. Cir. 1989)).

25.  The bankruptcy court may protect the debtor's estate, and ensure the equitable treatment of creditors, by enforcing the automatic stay pursuant to Section 362 of the Bankruptcy Code. A creditor's refusal to pay amounts owed to the debtor constitutes a violation of the automatic stay. Indeed, even where a valid right of setoff may exist, a creditor-bank must immediately move for relief from the automatic stay rather than indefinitely freeze the account. *See In re Adomah,* 340 B.R. 453, 458-59 (Bankr. S.D.N.Y. 2006) (finding violation of automatic

stay where bank imposed indefinite administrative freeze over debtor's bank account, including post-petition deposits, and failed to move for relief from the automatic stay), *aff'd,* 368 B.R. 134 (S.D.N.Y. 2007); *LNC Invs., Inc. v. First Fid. Bank,* 92 Civ. 7584, 2000 WL 1072460, *6 (S.D.N.Y. Aug. 3, 2000) (finding bank may "temporarily" withhold the return of debtor's deposit, but only if the bank moves "as quickly as possible in the bankruptcy court for more permanent relief"); *Eastern Airlines, Inc. v. Chem. Bank, Inc.*, No. 95 Civ. 3981, 1997 WL 282264, *1 (S.D.N.Y. May 27, 1998) (holding creditor-bank's freeze of four years, during which time bank never moved for relief from the automatic stay, was a stay violation); *In re Orr*, 234 B.R. at 255 (finding bank violated automatic stay by maintaining freeze of account for over two months and not moving for relief until debtor moved for contempt); *see also Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 19 (1995) (finding creditor-bank did not violate automatic stay by temporarily freezing debtor's account because the bank did not freeze the account "permanently and absolutely, but only while it sought relief under § 362(d) from the automatic stay," which it did within five days).

26.     Failure to promptly move for relief from the automatic stay constitutes a violation of the automatic stay, and as such, constitutes grounds for denying a creditor's request for setoff. *See Shugrue v. Fischer,* 164 B.R. 839, 844 (S.D.N.Y. 1994) (denying setoff where creditor's proof of claim "clearly evidences a decision to exercise the right of setoff without obtaining relief from the automatic stay"); *Official Comm. of Unsecured Creditors of Operation Open City, Inc. v. N.Y. Dep't of State*, 148 B.R. 184, 192-194 (Bankr. S.D.N.Y. 1992) (denying setoff where creditor "blatantly violated the automatic stay"), *aff'd,* 170 B.R. 818 (S.D.N.Y. 1994); *Blava In-Line v. Midlantic Nat'l Bank/North*, 133 B.R. 22, 36 (Bankr. S.D.N.Y. 1991) ("The bankruptcy court should deny setoff to those creditors who violate the automatic stay.")

(citing *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618 (2d Cir. 1989)).

27.  Moreover, even where a brief, temporary freeze may be permissible to allow the creditor to promptly seek relief, a creditor's refusal to turnover funds which are not subject to setoff violates the automatic stay. *Radcliffe v. Int'l Painters & Allied Trades Indus.*, 372 B.R. 401, 417 (Bankr. N.D. Ind. 2007) ("If a creditor does not have a validly enforceable right of setoff, even the safe harbor of temporary withholding provided by *Strumpf* will not insulate a creditor from an action for violation of the automatic stay under 11 U.S.C. § 362(a)."), *aff'd,* 390 B.R. 881 (N.D. Ind. 2008), *aff'd,* 563 F.3d 627 (7th Cir. 2009); *In re Harris*, 260 B.R. 753, 756 (Bankr. D. Md. 2001) (holding creditor violated automatic stay by freezing funds deposited post-petition).

28.  As demonstrated above, FirstRand placed on administrative freeze on LBHI's FirstRand Account shortly after the Commencement Date over sixteen months ago and has not moved for relief from the automatic stay. During this time, LBHI has been unable to access any of the funds credited to that account. FirstRand is not entitled to permanently or indefinitely withhold paying such funds to LBHI without seeking approval of the Bankruptcy Court. Moreover, as demonstrated above, at least ZAR 552,000 are post-petition deposits that are not eligible for setoff. FirstRand's indefinite freeze of the FirstRand Account constitutes a continuing violation of the automatic stay and should not be tolerated by the Court. Accordingly, the Debtors respectfully request that the Court direct FirstRand to immediately comply with the automatic stay by releasing the administrative freeze and compelling FirstRand to pay to LBHI all funds deposited and/or wired into the FirstRand Account after the Commencement Date.

**Notice**

29.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009, governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel for FirstRand; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

31.     WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  January 22, 2010
        New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession