1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555 (JMP)


- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


      Debtors.

- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          January 30, 2009

          4:38 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2  EMERGENCY TELEPHONIC HEARING re Debtors' Emergency Motion for

3  an Order Pursuant to Section 362(a) of the Bankruptcy Code

4  Enforcing the Automatic Stay

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Lisa Bar-Leib

3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4        Attorneys for Debtors

5        767 Fifth Avenue

6        New York, NY 10153

7

8    BY:  SHAI WAISMAN, ESQ.

9

10   WEIL, GOTSHAL & MANGES LLP

11       Attorneys for Debtors

12       1395 Brickell Avenue

13       Suite 1200

14       Miami, FL 33131

15

16   BY:  NELLIE P. CAMERIK, ESQ.

17       ELISA LEMMER, ESQ.

18

19   MILBANK, TWEED, HADLEY & MCCLOY LLP

20       Attorneys for the Official Committee of Unsecured

21        Creditors

22       One Chase Manhattan Plaza

23       New York, NY 10005

24

25   BY:  DENNIS C. O'DONNELL, JR.

4

1

2   WINTHROP COUCHOT PROFESSIONAL CORPORATION

3       Attorneys for SCC Entities

4       660 Newport Center Drive

5       Fourth Floor

6       Newport Beach, CA 92660

7

8   BY:  PAUL J. COUCHOT, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

PROCEEDINGS

1

2        THE COURT:  This is by counsel for the debtors in

3    connection with an emergency motion and a proposed order to

4    show cause fixing a hearing to consider that motion.  Who's on

5    the line?

6        MR. WAISMAN:  Good afternoon, Your Honor.  For the

7    debtors, Lehman Brothers Holding Inc. and Lehman Commercial

8    Papers, Shai Waisman from Weil Gotshal & Manges.

9        MR. COUCHOT:  Good afternoon, Your Honor.  This is

10   Paul Couchot of Winthrop Couchot in Newport Beach, California

11   on behalf of the what is referred to in the motion as the SCC

12   entities.

13       THE COURT:  Is there anyone else on the line?  Is

14   there anyone else who needs to be on the line?

15       MR. WAISMAN:  Your Honor, Shai Waisman.  The

16   creditors' committee, I believe, is joining.  They might be

17   delayed just -- by last minute nature of our request.  I

18   believe they're intending to join.

19       THE COURT:  I don't want to start this until

20   everybody who should be on the line has already joined.  So

21   maybe we should take a five minute break until they join.  It

22   might be worth having somebody who has e-mail access or an

23   ability to call offline to check and find out the status of

24   their attempt to join the line.  And also, if you could tell me

25   who you think from the committee's team will be participating.

6

1          MR. WAISMAN:  Your Honor, we have somebody calling as

2    we speak.  My understanding is that it will be Dennis O'Donnell

3    of the Milbank firm for the committee.

4          THE COURT:  Okay.  Let's just wait for a minute or

5    two.

6          MR. WAISMAN:  Okay.

7      (Off the record)

8          THE COURT:  So I'll turn it over to Mr. Waisman to

9    explain what it is that he's seeking this afternoon.

10         MR. WAISMAN:  Thank you, Your Honor.  And thank you

11   to the Court and all the parties who are facilitating this on

12   such short notice.  Your Honor, what we are requesting is an

13   emergency motion enforcing the automatic stay in these Chapter

14   11 cases.  The Court has had involvement with this matter

15   before -- well, I'll briefly run through the facts without

16   belaboring the record.

17         THE COURT:  I'm actually familiar with the facts.

18   You can put this on the record if you wish but I have received

19   copies of the debtors' moving papers, the emergency motion and

20   the affidavit which you prepared as well as the proposed order

21   to show cause.  I note that there is an attachment of the

22   transcript from a hearing that I remember very well that took

23   place in November where Mr. Kessler was involved when he was

24   one of your partners on behalf of the debtors in opposing

25   relief from the stay being sought by the SSC (sic) parties.

7

1   And so, you can go through the facts if you wish but I'm

2   telling you now that I'm familiar with the facts.

3          MR. WAISMAN:  Okay, Your Honor.  Thank you.  And I'll

4   therefore make it very short.  As Your Honor pointed out, the

5   SCC entities brought on an expedited hearing before the Court

6   requesting a modification of the stay to proceed with

7   unfettered discretion in their cases because if they did not

8   have that relief they could -- which immediately befall the

9   properties including various threats to health and welfare.  As

10  a result, this Court referred the matter for expedited

11  consideration on November 20th.

12         The movants made clear in that hearing that one of

13  the reasons they needed to seek relief from the stay or be

14  granted relief from the stay was because they intended to make

15  a motion in their case to use LCPI's cash collateral.  There

16  was lengthy discussion of that on the record.  At the

17  conclusion of the hearing, Your Honor -- and I was not

18  involved.  My partner, Mr. Kessler, who has since retired from

19  the firm, took the lead for LCPI in the matter but at the

20  conclusion, the Court was very clear with the SCC entities.

21  There were two ways to proceed.  Either they come back before

22  the Court with specific requests for relief that were clearly

23  tied to the Sonnax factors at which point the Court would

24  consider their requests and debtors' opposition, if any.  Or

25  the parties could work out their issues and settle the matter.

8

1   An order was entered subsequently, I believe, on the very next

2   day.  There was no appeal, no request for a rehearing.  And, in

3   fact, there was never a motion brought before Your Honor.

4           Quite astonishingly, instead of coming back to Your

5   Honor, the SCC entities decided about two months later to

6   disregard the automatic stay in these cases, disregard their

7   appearance before Your Honor, disregard Your Honor's

8   instruction, clear instructions as to how this matter was to

9   proceed, and filed a motion in their case, which is also

10  annexed to our emergency motion, and in the very first

11  paragraph, on page 2, paragraph 8, the first line, seeking

12  authorization for Palmdale Hills Property to use the surcharge

13  pursuant to 506(c) that purported cash collateral of Lehman

14  Commercial Paper Inc.  Lehman Commercial Paper Inc. remains a

15  debtor before this Court and the automatic stay remains in

16  place.  And we would ask that the automatic stay be enforced

17  and Your Honor's original order stand and that the SCC entities

18  not circumvent this Court and the automatic stay.  And if they

19  so choose to continue to prosecute a request for relief in cash

20  collateral do so in accordance with the Bankruptcy Code and the

21  directives of this Court.  And the SCC entities are, 'cause

22  they already have, likely a response that the stay has been

23  completely waived by actions in their cases and that we should

24  all forget what happened before Your Honor because the

25  California court has authority to modify the stay in these

9

1  cases.  This is exactly the position they've taken in their

2  case on this very issue.

3          THE COURT:  This is the first I'm hearing that.

4          MR. WAISMAN:  There have been -- in addition to this

5  motion, out of abundance of caution, LCPI responded in

6  California.  And its reply started off with there's an

7  automatic stay in place.  There was a hearing before Judge

8  Peck.  Judge Peck ruled and this is nothing more than an

9  attempt to circumvent the automatic stay and the Court's

10  ruling.

11          THE COURT:  Now just so I'm clear, Mr. Waisman, is

12  today's telephonic proceeding one in which you are seeking the

13  scheduling of a hearing or are you treating this as if it is

14  the hearing itself because I'm hearing what amounts to

15  substantive argument.  I'm just trying to understand what we're

16  doing.

17          MR. WAISMAN:  I'm treating this, Your Honor, as the

18  hearing itself.

19          THE COURT:  And is that something that --

20          MR. WAISMAN:  The SCC entities have requested to

21  proceed with their motion to use LCPI's cash collateral on

22  Tuesday of next week.

23          THE COURT:  Well, here's my confusion.  I just want

24  to make sure that I know what's going on.  And I was in another

25  meeting when I first heard about this.  Read the papers prior

10

1   to the start of this proceeding but when I read them, it was my

2   belief that you were seeking an order to show cause to schedule

3   this for a hearing sometime next week perhaps on Monday because

4   the order to show cause includes a blank date and indicates

5   that the motion is to be served on or before January 30 on all

6   parties entitled to receive notice of the motion.

7          So my first question is what are we doing right now.

8   And is this a consensual hearing on the merits of your motion

9   or is this is a consensual hearing with respect to the order to

10  show cause or is there no consent?  I just want to know what's

11  going on.

12          MR. COUCHOT:  May I speak, Your Honor?

13          THE COURT:  And is that Mr. Couchot?  Couchet?

14          MR. COUCHOT:  Yes, Your Honor.  Couchot.

15          THE COURT:  Couchot?

16          MR. COUCHOT:  Yes.  Your Honor --

17          THE COURT:  I remember that you --

18          MR. COUCHOT:  Your Honor, I'm appearing today and I

19  rearranged plans that I had because I was told that you wanted

20  me to make myself available.  So that's why I'm here.  I'm not

21  consenting to anything.  We filed a reply today that had a

22  deadline of noon today and our position on today's issue is set

23  forth in that reply.  And I disagree with the characterizations

24  made about what the motion was.  And I understand Your Honor

25  was there and you said you remember it very well.  But the

11

1    thrust of the motion was --

2          THE COURT:  You were there, too.  My recollection is

3    you were sitting in the courtroom as Morgan Lewis & Bockius was

4    arguing the motion.  And you were physically present and I was

5    looking right at you.

6          MR. COUCHOT:  Absolutely.

7          THE COURT:  Okay.  So we know who we are and we know

8    that we were both present at a time when I made an absolutely

9    clear ruling that you heard.  And are you telling me that you

10   decided I'll just try my luck in California before Judge Smith?

11         MR. COUCHOT:  No.  That's not what happened, Your

12   Honor.

13         THE COURT:  Well, you better tell me what happened.

14   You better tell me clearly and treat yourself as if you're

15   making a representation to the Court that's subject to

16   sanctions if it's not accurate.

17         MR. COUCHOT:  Yes, Your Honor.

18         THE COURT:  Go ahead.

19         MR. COUCHOT:  We believed that our motion was

20   primarily one of two things.  I was -- two different things.

21   One we were asking for the Court to give us relief from stay to

22   file a priming motion in California.  And on top of that, we

23   asked for a general relief as best we could to administer the

24   cases.  The emergency nature -- and in the general relief, we

25   listed several different things that, you know, might possibly

12

1   need to do and cash collateral was absolutely one of those

2   things.

3         The focus at the hearing, and I've reread the

4   transcript, was that the -- term sheet on a DIP financing that

5   clearly the judge -- Your Honor, in my view, after reviewing

6   even this right now made a determination that the priming lien

7   loan would violate the stay.

8         THE COURT:  No.  You're absolutely -- you are totally

9   and completely wrong.  And if you're trying to recharacterize

10   what I said, you better be careful.  I remember it and I've

11   also recently reviewed the transcript.  And I remember very

12   clearly the procedural history.  It was a general motion

13   seeking relief from the automatic stay without specificity.

14   Your counsel when you were present in court made an argument

15   that was wonting in all respects because of a failure to deal

16   with Second Circuit applicable precedent, the Sonnax standards.

17   And, in fact, when asked to identify how the Sonnax standards

18   applied failed completely and ducked the question.  I remember

19   the hearing extremely well.

20         MR. COUCHOT:  I agree that that occurred during the

21   hearing, Your Honor.  I'm not trying to --

22         THE COURT:  Now, if you are attempting through this

23   conversation to characterize my ruling or my order, you are out

24   of order.  If this is some kind of explanation as to how you

25   think this is permissible behavior, you are wrong.  It is

13

1    completely impermissible and sanctionable behavior and, in my

2    view, constitutes a willful violation of the automatic stay.

3    You could not have been on more direct and obvious notice than

4    you were.  I was looking right at you.

5            Now what are you going to do?

6            MR. COUCHOT:  Your Honor, if you're telling me that

7    your order -- I'm going to obey your order.

8            THE COURT:  Excuse me?

9            MR. COUCHOT:  I said I'm going to obey what you're

10    saying.  I'm going to comply with what you're saying today.

11            THE COURT:  Only because I've just said it?

12            MR. COUCHOT:  Your Honor --

13            THE COURT:  There was no motion for reconsideration.

14    There was no appeal.  And, in fact, if you remember clearly

15    what I suggested in the strongest possible terms, I suggested

16    that counsel meet and confer in an effort to develop a means by

17    which your client could deal with Lehman.  Did that happen?

18            MR. COUCHOT:  Yes, Your Honor.  It did.  We flew back

19    the next week and that was done personally.  Yes, we made -- I

20    called, I believe, Mr. Kessler the next day and requested a

21    face-to-face meeting.  And we flew back to New York and met

22    with Lehman, Mr. Kessler and with two representatives of

23    Alvarez & Marsal.

24            THE COURT:  And what was the result of that?

25            MR. COUCHOT:  Well --

14

1      THE COURT:  Now these are settlement discussions so

2  it may be you don't want to talk to me about it.

3      MR. COUCHOT:  Yes, that's my hesitancy, Your Honor.

4  I mean, I would love to tell you what happened but I -- suffice

5  it to say we were very far apart.

6      THE COURT:  And you apparently made the decision not

7  to file, which was your privilege if you chose to exercise it,

8  a follow-up motion for stay relief.  But instead, to act as if

9  what happened here didn't count, didn't matter?

10      MR. COUCHOT:  May I speak, Your Honor?

11      THE COURT:  Of course.

12      MR. COUCHOT:  There's a related case involving SunCal

13  entities and Lehman Commercial Paper before Judge Smith.  In

14  that case, Judge -- he's actually represented by Mr. Al Siegel,

15  who's the Chapter 11 trustee in that case -- moved for use of

16  cash collateral in Judge Smith's courtroom.  Lehman Commercial

17  adamantly opposed the motion.  Lehman Commercial did not raise

18  the stay as being invoked.  And in a fully briefed -- I think

19  there were two different hearings on the issue.  It never once

20  raised -- and in our view -- again, I know you disagree with me

21  but, in our view, cash collateral was not the focus and there

22  was no determination in your courtroom that cash collateral

23  violated -- the use of cash collateral would violate the stay.

24  What we heard -- what I heard was talk to Lehman, try to work

25  something out.  I'm not giving you general relief.  If you

1  think that you need relief from stay, come back and be

2  specific.  From our standpoint, at this point in time, Lehman

3  Commercial was not taking the position that the use of cash

4  collateral violated the stay.  And we did our own research and

5  we felt that that was the case.  And we figured, from our

6  thinking, we had a hearing -- we got a conference in front of

7  Judge Smith and I announced that we were going to use -- make a

8  motion for the use of cash collateral.  We even had a turnover

9  motion on this account and we worked conceptually with Lehman

10  at the divided briefing schedule.  We even had further talks to

11  try to work things out as recently as, I believe, yesterday or

12  the day before.  And it was only until we received their

13  opposition that we understand that they were taking a position

14  that the use of cash collateral violated the stay and that your

15  order did so, too, that your order had made that determination.

16  And I've looked at the transcript and I think you did make that

17  determination after a priming lien because that's what --

18  you're right. The general order and everything else you said

19  about that hearing is correct.  But the cash collateral issue

20  was one of the several -- list of things that really wasn't the

21  focus.  The focus was, in my opinion, was what you've

22  mentioned, was that we need to go through those factors and

23  that the priming lien motion you said would be burdensome to

24  the estate and would harm the estate and therefore, clearly, in

25  my mind you said there was a violation of the automatic stay.

16

1   But we proceeded with this motion in good faith that Lehman

2   Commercial was not taking the position that cash collateral

3   violated the stay.  In that related case that's in front of

4   Judge Smith.

5        THE COURT:  Okay.  Well, I know nothing about that

6   related case.  And this is not a hearing on possible sanctions

7   for willful violation of the automatic stay although that may

8   happen at some time in the future at which point the comments

9   you're making might be helpful.  They're not helpful to me now.

10       MR. COUCHOT:  I have the reply papers, Your Honor,

11  that has all that information in there that I could e-mail to

12  you as well.

13       THE COURT:  I don't need to see them tonight.

14       MR. COUCHOT:  Okay.

15       THE COURT:  The only thing that is before me now, and

16  I think I've already made clear what my position is, is that

17  you have no stay relief.  You know you have no stay relief.

18  And that denial of the motion brought by you and your local

19  counsel, Morgan Lewis & Bockius, in November speaks for itself

20  and there is a final order which denies that motion.  The legal

21  consequences of that denial are what they are.  I have no

22  knowledge, and I don't expect to get that knowledge now, as to

23  what happened in California.  To the extent relevant, I'll

24  learn it in due course.

25       The only thing which is before me is an emergency

17

1    motion to enforce the automatic stay.  It is enforced to the

2    extent applicable.  I'm not expanding it nor am I taking away

3    from counsel the ability to reach agreements to modify it.  But

4    if you don't come here and seek consensual relief from stay or

5    relief from stay with appropriate motion practice, you are at

6    full risk as is your client.  Act accordingly.

7          MR. COUCHOT:  Well, thank you for making that --

8    allowing me to make a record, Your Honor.

9          THE COURT:  Excuse me?

10         MR. COUCHOT:  I appreciate the fact that you allowed

11   me to make the record on that.  Thank you.

12         THE COURT:  I didn't think that's what just happened

13   but okay.  I just heard you make some statements about what you

14   believe may have given you cause to believe that what you were

15   doing was permissible.  I have not for a moment suggested that

16   I agree with you.  Nor is there a record here on the basis of

17   which I could make such a finding.  We're just having a

18   conversation.

19         MR. COUCHOT:  I understand, Your  Honor.

20         THE COURT:  Now what happens next, Mr. Waisman?

21         MR. WAISMAN:  Your Honor, I believe Your Honor's

22   ruling is clear.  I believe the stay is in force and --

23         THE COURT:  There could never be a doubt on that

24   question.

25         MR. WAISMAN:  I believe the SCC entities need to act

18

1   in accordance with the stay and whatever the stay applies to.

2   And I think that point has been made clear.  But I would expect

3   that there would be either a consensual resolution among the

4   parties or a motion on proper notice and properly briefed

5   before this Court for modification of the stay that Your Honor

6   will rule on one way or the other in due course and that there

7   would be any proceedings before that.

8          As for the other allegations of waiver and the like,

9   there's no need to belabor the record.  When and if those

10  issues are relevant, they'll be addressed.

11         MR. COUCHOT:  May I speak, Your Honor?

12         THE COURT:  Of course.

13         MR. COUCHOT:  This waiver is definitely not -- that

14  was made.  The issue is whether or not the use of cash

15  collateral violates the automatic stay and that the -- Palmers

16  indicates that it does not.  In addition to the fact that

17  Lehman Commercial did not waive its interrelated case, that it

18  vigorously contested the use of cash collateral.  And then,

19  thirdly, for the record, my review of it, the Court did not

20  make a finding that the use of cash collateral violated the

21  automatic stay.  And I --

22         THE COURT:  Mr. Couchot, the only record that exists

23  in this record, which is written down, we don't have to

24  characterize it --

25         MR. COUCHOT:  Right.

19

1          THE COURT:  -- relates to a general motion made by

2     your client for relief from the automatic stay.  That motion

3     was denied by final order without prejudice --

4          MR. COUCHOT:  Yes.

5          THE COURT:  -- with statements made on the record

6     that we don't need to recharacterize.  You and other counsel

7     involved no doubt have considered the legal consequences of the

8     actions that you have undertaken with eyes wide open.  I don't

9     want to hear now argument as to why you believe that the action

10    you have taken is not covered by the order that I entered after

11    denying your motion for relief from stay.  It was not a

12    specified targeted motion for relief from stay.  Quite the

13    contrary.  It was a completely general give us full and

14    complete relief from stay.  Motion denied.  That means that the

15    stay applies to the extent it applies.  As you well know as an

16    experienced bankruptcy lawyer, careful lawyers almost always,

17    when there's a close question, seek relief from stay to avoid

18    the very severe sanctions that flow from -- especially flow

19    from willful violations of the stay.  You're in the zone of a

20    willful violation.  And this is not the time for you to defend

21    yourself.  That time may come.

22          MR. COUCHOT:  Yes, Your Honor.

23          MR. WAISMAN:  Your Honor, Shai Waisman.  I actually

24    thought that the issue was resolved.  But based on the

25    statements that Keeping (ph.), I have concern as to what

20

1   resources this estate has to expend in defending what is

2   clearly within the stay and clearly within what was raised,

3   argued and ruled on before this Court.  I thought we were

4   concluded.

5          THE COURT:  I thought we were, too.  But then again,

6   every time I think we're done, I hear another argument from

7   California as to why there's some belief the use of cash

8   collateral is not covered by the automatic stay.  I'm not

9   deciding that now.  It's not before me.  But lawyers can figure

10  this out.  The use of cash --

11         MR. COUCHOT:  I am sorry, Your Honor --

12         THE COURT:  The use of cash collateral happens at the

13  beginning of most Chapter 11 cases and involves either consent

14  or adequate protection.  That's Bankruptcy 101.

15         Now, can we conclude this evening's hearing?  And if

16  so, how?

17         MR. WAISMAN:  I believe for the debtors we can

18  conclude the hearing.  I would think for the assistance of this

19  Court and this debtor, if Mr. Couchot could advise based on the

20  Court's comments tonight whether we're proceeding with an

21  attempt to use the debtor's cash collateral or the SCC entities

22  are going to regroup and advise how they will proceed next

23  including to fully vindicate their rights before this Court.

24  That would go a long way and be very helpful.  If we need to

25  defend against the use of cash collateral in California, we

21

1   will do so.  And at the same time, we will bring additional

2   motion practice before Your Honor.

3          MR. COUCHOT:  My recommendations to my client will be

4   to come back to New York and file a motion for use of cash

5   collateral -- I mean, for relief from stay for the use of cash

6   collateral.

7          THE COURT:  I'll tell you what.  If the lawyers

8   involved are going to have a conversation about how to resolve

9   the matter which is not before me but is before Judge Smith in

10  the Central District of California, that doesn't have to be on

11  this record.

12         MR. WAISMAN:  In that case, Your Honor, perhaps we

13  can take leave of the Court and Mr. Couchot and I can

14  conference afterwards and assuming these debtors are properly

15  convinced that there is no more of a -- no risk with violations

16  of the stay, the matter would be concluded.  And if not, it

17  would be our burden to come back to Your Honor.

18         THE COURT:  Fine.  If you need further access at any

19  time before the hearing is presently scheduled, you can have

20  such access on Monday.

21         MR. WAISMAN:  Thank you, Your Honor.  That's greatly

22  appreciated as is the access today and apologize to everybody

23  for the short notice.

24         THE COURT:  No.  This is an important matter and no

25  apologies are needed.

22

1          MR. COUCHOT:  Thank you, Your Honor.

2          MR. WAISMAN:  Thank you, Your Honor.

3          THE COURT:  Have a good weekend, all.  Bye.

4          MR. WAISMAN:  Bye.

5      (Whereupon these proceedings were concluded at 5:18 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

1

2                              I N D E X

3

4                            R U L I N G S

5     DESCRIPTION                                    PAGE     LINE

6     Previous ruling of 11/20/08 denying SCC entities'   16       24

7     relief from the automatic stay enforced

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1

2                         C E R T I F I C A T I O N

3

4       I, Lisa Bar-Leib, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       _____

8       LISA BAR-LEIB

9

10      Veritext LLC

11      200 Old Country Road

12      Suite 580

13      Mineola, NY 11501

14

15      Date:  February 2, 2009

16

17

18

19

20

21

22

23

24

25