Presentment Date and Time:  February 8, 2010 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline:  February 8, 2010 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): February 10, 2010 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                        :
**In re**                                   :        **Chapter 11 Case No.**
                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :        **08-13555 (JMP)**
                                        :
                    **Debtors.**            :        **(Jointly Administered)**
                                        :
-------------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF THE O'NEIL GROUP AS TAX SERVICES PROVIDERS *NUNC PRO TUNC* TO THE ENGAGEMENT DATE**

**PLEASE TAKE NOTICE** that the undersigned will present the annexed application (the "Application") of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code approving the retention and employment of The O'Neil Group as tax services provider in connection with these chapter 11 cases, *nunc pro tunc* to January 6, 2010, all as more fully described in the Application, to the Honorable James M. Peck, United States Bankruptcy Judge, for approval and signature on **February 8, 2010 at 12:00 p.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections to the Application, if any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy

Court for the Southern District of New York, shall set forth the name of the objecting party, the

basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with two hard copies

delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P.

Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004,

Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin,

Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured

Creditors appointed in these cases; and (v) The O'Neil Group, 4331 P Street, NW, Washington,

DC 20007, Attn:  Jacqueline M. O'Neil, **so as to be so filed and received by no later than**

**February 8, 2010 at 11:00 a.m. (prevailing Eastern Time)** (the "Objection Deadline").

       **PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely

filed and served, a hearing will be held on **February 10, 2010 at 10:00 a.m. (Prevailing**

**Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York,

Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York,

New York 10004-1408.  If an objection is filed the moving and objecting parties are required to

attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 27, 2010
       New York, New York


                                        /s/ Richard P. Krasnow
                                        Richard P. Krasnow, Esq.
                                        WEIL GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for the Debtor
                                        And Debtor in Possession

Presentment Date and Time:  February 8, 2010 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline:  February 8, 2010 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): February 10, 2010 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :        08-13555 (JMP)
                                          :
                       Debtors.           :        (Jointly Administered)
                                          :
-------------------------------------------------------------------x
```

### APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF THE O'NEIL GROUP AS TAX SERVICES PROVIDERS *NUNC PRO TUNC* TO THE ENGAGEMENT DATE

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Application and respectfully

represent:

### BACKGROUND

   1.  Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## JURISDICTION

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## LEHMAN'S BUSINESS

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York (the "Local Rules") in Support of First-Day

Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### RELIEF REQUESTED

8.      By this Application, the Debtors seek entry of an order pursuant to

sections 327(a) and 328(a) of the Bankruptcy Code approving the retention and employment of

The O'Neil Group as tax services providers in connection with their chapter 11 cases, *nunc pro*

*tunc* to January 6, 2010, (the "Engagement Date").  Pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code, the Debtors request that the Court approve the retention of The O'Neil Group

to perform certain tax services (collectively, the "Services"), all as more fully described in the

Declaration of Jacqueline M. O'Neil, a managing director of The O'Neil Group, sworn to

January 26, 2010, annexed hereto as Exhibit 1 (the "O'Neil Declaration") and in accordance with

the terms and conditions set forth in the agreements between the Debtors and The O'Neil Group,

including without limitations, the provisions described in the engagement letter, dated as of

January 26, 2010 (the "Engagement Letter"), a copy of which is attached as Exhibit A to the

O'Neil Declaration, as modified by Paragraph 17 of the O'Neil Declaration.

9.      The services to be provided under the Engagement Letter include, but are

not limited to, the preparation of Form 5471, 8865, and 8858 tax returns, as further described on

Attachment A to the Engagement Agreement at the blended rate described below.  In addition, to

the extent the Debtors require additional tax or other services beyond those described in the

Engagement Letter, The O'Neil Group will provide such services at the rates described below.

10.     The Debtors request that The O'Neil Group's retention be made effective

*nunc pro tunc* to the Engagement Date to allow The O'Neil Group to be compensated for work

performed on behalf of the Debtors on or after January 6, 2010, but prior to the submission of

this Application.  The O'Neil Group has been diligently preparing the Application materials and

performing the conflicts checks necessary to make the disclosures required by the Bankruptcy

Rules.  Retroactive approval is warranted, particularly since the services The O'Neil Group has

provided are of value to the estates and all parties in interest.  *See In re Hasset, Ltd.*, 283 B.R.

376, 379 (Bankr. E.D.N.Y. 2002) (approving *nunc pro tunc* retention application after

recognizing that "*nunc pro tunc* applications are disfavored in this Circuit, *see In re Hazen*

*Agricultural Products Service, Inc.*, 109 B.R. 602 (Bankr. W.D.N.Y. 1990), but have been

permitted when the attorney performs services of 'value' to the estate"); *see also In re Jarvis*, 53

F.3d 416 (1st Cir. 1995) (finding that a bankruptcy court may grant *post facto* application if

employment meets statutory requirements and delay results from extraordinary circumstances);

*In re Arkansas Co., Inc.*, 798 F.2d. 645 (3d Cir. 1986) (opining that bankruptcy courts have

discretion in extraordinary circumstances to retroactively approve a professional's employment);

*In re Triangle Chems. Inc.*, 697 F.2d 1280 (5th Cir. 1983) (holding that a bankruptcy court has

discretion, as a court of equity, to consider whether such approval of employment should be

granted *nunc pro tunc*).

## **BASIS FOR RELIEF**

11.    The Debtors seek approval to retain The O'Neil Group pursuant to section

327(a) of the Bankruptcy Code.  Section 327(a) provides, in relevant part, that the Debtors "with

the court's approval, may employ … professional persons, that do not hold or represent an

interest adverse to the estate, and that are disinterested persons, to represent or assist" the Debtor

in fulfilling its duties under the Bankruptcy Code.

## THE RETENTION OF THE O'NEIL GROUP

12.     Since the Commencement Date, the Debtors' internal tax department has not had the resources to prepare the necessary returns for the company.  Accordingly, by order of this Court, dated March 12, 2009 [Docket No. 3072], the Debtors engaged Huron Consulting Group ("Huron") to assist the Debtors with the filing of their tax returns for the 2008 filing year.  Huron, however, has informed the Debtors that it will no longer be providing tax services and, as a result, the Debtors have decided to engage The O'Neil Group to prepare and file the necessary tax returns going forward as detailed in the Engagement Letter.

13.     The O'Neil Group is a firm specializing in corporate tax compliance and accounting related services in both the ordinary course and crisis management and restructuring environments for public and private companies, and other constituents.  Furthermore, key members of The O'Neil Group provided international and state income tax compliance services for the Debtors during 2009 for the 2008 compliance period, as members of Huron.  As a result, The O'Neil Group has a strong foundation of knowledge and understanding of the Lehman Tax Department systems, processes and management.

14.     It is the Debtors' understanding that the tax return preparation work contemplated herein will be directly supervised, as it was in 2009 for Huron, by Jacqueline O'Neil, the Managing Director.  As described in the O'Neil Declaration, working with Ms. O'Neil will be 6 to 20 individuals with 8 to 20+ years experience with the analysis and preparation of federal, international, state, and local tax returns.

15.     The Debtors believe that The O'Neil Group possesses extensive tax expertise useful in these cases, and that The O'Neil Group is well-qualified to advise the Debtors.  In addition, The O'Neil Group has indicated a desire and willingness to act in these

chapter 11 cases and render the necessary professional services as tax services providers for the Debtors, on the terms set forth in the Engagement Letter and described herein, and to subject itself to the jurisdiction of the Court.

16.       The Debtors submit, therefore, that the retention of The O'Neil Group on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted in all respects.

## THE O'NEIL GROUP'S DISINTERESTEDNESS

17.       To the best of the Debtors' knowledge, information and belief, neither The O'Neil Group nor any professional employee of The O'Neil Group has any connection with, or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the O'Neil Declaration.

18.       The O'Neil Group has informed the Debtors that as of January 26, 2010, The O'Neil Group was not owed any money by the Debtors in respect of services provided by The O'Neil Group both prior to and following the Commencement Date.

19.       Based upon the O'Neil Declaration, the Debtors submit that The O'Neil Group is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  The Debtors have been informed that The O'Neil Group will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, The O'Neil Group will supplement its disclosure to the Court.

## PROFESSIONAL COMPENSATION

20.       Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain The O'Neil Group on reasonable terms and conditions.  Section 328 of the Bankruptcy Code

provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

21.     As recognized by numerous courts, Congress' intent in section 328(a) was to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

22.     Accordingly, section 328 permits the compensation of professionals, including tax service providers, on terms that reflect the nature of their services and market conditions.  In the previous weeks, the Debtors negotiated the terms of the Engagement Letter, which reflect commercially reasonable compensation and employment agreements.  Thus, the Debtors request approval of the Engagement Letter, including the fee and expense structure (the "Fee Structure") and the reimbursement provisions described therein, pursuant to section 328(a) of the Bankruptcy Code.

23.     Pursuant to the terms and conditions of the Engagement Letters, The O'Neil Group intends to charge the Debtors a single blended rate of $180 per hour for the services contemplated in the Engagement letter.

24.    To the extent the Debtors require additional tax services beyond those described in the Engagement Letter, The O'Neil Group will provide those services at the following hourly rates:

| Title | Hourly Rate |
|---|---|
| Tax Managing Director | $325 |
| Tax Director | $225 |
| Tax Manager | $165 |
| Tax Associate | $125 |

25.    The Debtors have been advised that to the extent the Debtors require additional services beyond the tax return preparation contemplated in the Engagement Agreement, and outside the scope of The O'Neil Group's tax services, The O'Neil Group and the Debtors will agree in writing on the scope of such services and the following hourly rates will apply:

| Title | Hourly Rate |
|---|---|
| Managing Director | $325 - $450 |
| Director | $225 - $350 |
| Manager | $165 - $250 |
| Associate | $125 - $185 |

26.    The O'Neil Group's hourly rates are revised periodically in the ordinary course of its business. The Debtors understand that The O'Neil Group will advise the Debtors of their new rates if a rate change occurs during the course of The O'Neil Group's engagement.

27.    In addition to the hourly rates set forth above, the Debtors shall reimburse The O'Neil Group for any direct expenses incurred in connection with The O'Neil Group's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letter.  The O'Neil Group's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals (at the IRS per diem rate), accommodations and other expenses (including any fees or reasonable expenses of The O'Neil Group's legal counsel, but not any such legal fees or expenses related to The O'Neil Group's efforts to be retained or to The O'Neil Group's fee applications in these chapter 11 cases) specifically related to this engagement.

28.    The compensation arragements provided for in the Engagement Letter are consistent with and typical of arrangements entered into by The O'Neil Group and other tax firms with respect to rendering comparable services for clients similar to the Debtors, both in and outside of bankruptcy.

29.    Considering the Services that The O'Neil Group will provide, and the market prices for The O'Neil Group's services, the Debtors submit that the Fee Structure (including reasonable reimbursements) is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code and fulfills the requirements of Rule 2014-1 of the Local Rules.

30.    Except as set forth in the O'Neil Declaration, The O'Neil Group has not shared or agreed to share any of its compensation in connection with this matter with any other person, as permitted by section 504 of the Bankruptcy Code.

## FEE APPLICATIONS

31.    The O'Neil Group will file interim and final fee applications for allowance of its compensation and expenses, with respect to the Services, and The O'Neil Group will seek compensation and reimbursement of expenses, as specified in the Engagement Letter, with the

payment of such fees and expenses to be approved in accordance with the procedures set forth in

sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and

orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may

be fixed by order of this Court, including but not limited to this Court's Third Amended Order

Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals, dated November June 25, 2009 [Docket No. 4165].  However, the services

contemplated by the Engagement Letter include procedures that are repetitive and that require

substantial blocks of uninterrupted time.  Accordingly, the Debtor's request that The O'Neil

Group be allowed to maintain its detailed time records to the nearest quarter hour instead of the

nearest tenth of an hour.

<u>**OTHER TERMS OF THE
ENGAGEMENT LETTER AS MODIFIED BY THE DECLARATION**</u>

32.    The Engagement Letter, has been modified pursuant to paragraph 17 of

the O'Neil Declaration, as follows:

a.    The provision in the Engagement Agreement's General Business Terms relating to arbitration in the event a dispute arises between the Debtors and The O'Neil Group is hereby revised to provide that the arbitration provision shall apply only to the extent that the United States Bankruptcy Court in the Southern District of New York, or the United States District Court in the Southern District of New York if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

b.    All requests of The O'Neil Group for payment of indemnity pursuant to the Engagement Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; <u>provided</u>, <u>however</u>, that in no event shall The O'Neil Group be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

c.      In no event shall The O'Neil Group be indemnified if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, The O'Neil Group's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

d.      In the event that The O'Neil Group seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in The O'Neil Group's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases.

e.      The Engagement Agreement's General Business Terms shall apply solely to claims of The O'Neil Group and the Debtors against each other, and shall not apply if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, The O'Neil Group's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.  Additionally, the phrase "for the portion of the engagement giving rise to liability" is deleted from this paragraph.

f.      To the extent this Order is inconsistent with the Engagement Agreement, this Order shall govern.

## NOTICE

33.      No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Application in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (v) The O'Neil Group.  The Debtors submit that no other or further notice need be provided.

34.      No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just.

Dated:  January 27, 2010
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT 1
**(Declaration of Jacqueline M. O'Neil)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                            :
**In re**                                   :       **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* :       **08-13555 (JMP)**
                                            :
                    **Debtors.**            :       **(Jointly Administered)**
                                            :
                              :             :
                                            :
------------------------------------------------------------x

**DECLARATION OF JACQUELINE M. O'NEIL  IN SUPPORT OF THE APPLICATION**
**FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF THE O'NEIL GROUP AS TAX COMPLIANCE**
**AND ADMINISTRATIVE ACCOUNTING SERVICE PROVIDER TO THE DEBTORS**

    I, Jacqueline M. O'Neil, hereby declare that the following is true to the best of my

knowledge, information and belief:

    1.  I am a Managing Director of The O'Neil Group, a tax consulting firm

which provides tax compliance and reporting services for multinational corporate clients.  Our

services include, income tax accounting, compliance and reporting, litigation and due diligence

support and corporate tax planning and reorganization.  I submit this declaration (the

"Declaration") on behalf of The O'Neil Group in support of the Application for an Order

Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule

2014(a) Authorizing the Employment and Retention of The O'Neil Group as Tax Compliance and Administrative Accounting Service Provider to the Debtors ("the Application") filed contemporaneously herewith by Lehman Brothers Holdings Inc. and certain of its direct and indirect subsidiaries ("Lehman" or "the Company"), debtors and debtors-in-possession in the above-captioned cases (collectively, "the Debtors"). Except as otherwise noted, I have personal knowledge of the matters set forth herein and if called as a witness, would testify competently thereto.

### Professional Qualifications

2.      The O'Neil Group is a firm specializing in corporate tax compliance and accounting related services in both the ordinary course and crisis management and restructuring environments for public and private companies, and other constituents. Working closely with client management, The O'Neil Group develops and implements comprehensive assistance programs to provide experienced resources on a cost effective basis to address, among other issues, the analysis and preparation of information to address corporate tax reporting, tax accounting and tax compliance.

3.      Key members of The O'Neil Group provided international and state income tax compliance services for Lehman during 2009 for the 2008 compliance period, as members of Huron Consulting Group. As a result, The O'Neil Group has a strong foundation of knowledge and understanding of the Lehman Tax Department systems, processes and management. They have also developed and implemented various best practices that should lead to a more efficient compliance process for 2009.

4.      The tax return preparation work contemplated herein will be directly supervised in 2010, as it was in 2009 for Huron Consulting Group, by Jacqueline O'Neil, the Managing Director. Ms. O'Neil is a CPA and tax attorney licensed in Maryland, Washington

DC and California. With over 20 years of career experience, she has served in tax and legal consulting in both public accounting and as in-house counsel. Ms. O'Neil has extensive experience in corporate tax planning and compliance work. Working with Ms. O'Neil will be 6 to 20 individuals with 8 to 20+ years experience with the analysis and preparation of federal, international, state, and local tax returns.

### Services to be Provided

5.    On or about, January 26, 2010, Lehman and The O'Neil Group entered into the Engagement Agreement, a copy of which is attached hereto as <u>Exhibit A</u> to the Application. The services that The O'Neil Group will render are described in greater detail in the Engagement Agreement. Any references to or summaries of the Engagement Agreement herein are qualified by the express terms of the Engagement Agreement, which shall govern if there is any conflict unless otherwise addressed herein. With the Company's chapter 11 filings, Lehman suffered a significant loss of experienced personnel who were responsible for, among other matters, tax compliance, including the filing of an estimated 900 Form 5471, 8865, and 8858 tax returns. These returns were prepared for 2008 by Huron Consulting Group, under the leadership of Jacqueline M. O'Neil, now with The O'Neil Group. At the present time Lehman's internal tax department does not have the resources to prepare the necessary returns. The O'Neil Group will provide the experienced personnel to work with Lehman's internal tax department and utilize Lehman tax software and prior year templates, statements, and document processes to prepare for filing the necessary tax returns detailed in the Engagement Agreement. At the present time, The O'Neil Group's services will address approximately 800 international information returns and several of the corporate combined state income tax returns. The O'Neil Group and Lehman estimate The O'Neil Group will require approximately ten thousand (8,900) person hours to complete. Any additional assistance with tax or accounting and reporting

matters could be undertaken upon the mutual agreement between The O'Neil Group and Lehman.

6.      The O'Neil Group is not now a "Creditor" of the Debtors within the meaning of section 101(10) of Chapter 11 of Title 11 of the Unites States Code (as amended, the "Bankruptcy Code").

7.      To the best of my knowledge, neither I, nor any professional involved on the The O'Neil Group team, is a holder of any of the Debtors' public securities.

8.      Further, to the best of my knowledge, neither I, nor any professional involved on the The O'Neil Group team, have any connection with the United States Trustee or any person employed in the Office of the United States Trustee in this District.  To the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, The O'Neil Group neither holds nor represents an interest adverse to the Debtors or their estates with respect to the matters on which The O'Neil Group is to be employed.

9.      It is The O'Neil Group's intent to update and expand its relationship search for additional parties in interest as directed by the Debtors in an expedient manner.  If any new relevant facts or relationships are discovered or arise which require further disclosure, The O'Neil Group will promptly file a supplemental declaration.

## Employment Terms and Compensation

10.     The O'Neil Group's retention is subject to the Court's approval of The O'Neil Group's Engagement Agreement attached hereto as Exhibit A to the Application.  The O'Neil Group will seek payment for compensation on an hourly basis, plus reimbursement of actual, necessary expenses incurred by The O'Neil Group and indemnification as more fully described in Exhibit A to the Application.  The O'Neil Group professionals generally bill at

hourly rates commensurate with the individual professional's experience and area of specialization.

11.    The O'Neil Group's current standard ranges of rate, which are subject to adjustment in the ordinary course, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $325 to $450 |
| Director | $225 to $350 |
| Manager | $165 to $250 |
| Associate | $125 to $185 |

12.    Based on The O'Neil Group's estimation of the level of effort and related experience required to perform the services contemplated in the Engagement Agreement, The O'Neil Group agrees to provide those services at a single blended billing rate of $180 per hour. This blended rate is subject to adjustment in connection with any future overall rate adjustment The O'Neil Group may implement on a ratable basis.

13.    If additional tax services beyond those anticipated herein are requested or required, such as the preparation of Form 1118, The O'Neil Group will provide those services at the following tax billing rates:

| Title | Hourly Rate |
|---|---|
| Tax Managing Director | $325 |
| Tax Director | $225 |
| Tax Manager | $165 |
| Tax Associate | $125 |

14.    In the event additional assistance is required beyond the tax return preparation contemplated herein and outside of the scope of The O'Neil Group's tax services,

The O'Neil Group will agree with the Debtors in writing on the scope of such services and The O'Neil Group's standard rates for the related service and personnel will apply.

15.    The O'Neil Group understands that payment of invoices for work subsequent to the Lehman chapter 11 filing is governed by the Court and such procedures for filing fee statements and notice as may be applicable to the Debtors' chapter 11 cases.

16.    To the best of my knowledge, (a) no commitments have been made or received by The O'Neil Group, nor any member thereof, as to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code and (b) The O'Neil Group has no agreement with any other entity to share with such entity any compensation received by The O'Neil Group in connection with this chapter 11 case.

17.    The O'Neil Group proposes that any Order approving The O'Neil Group's employment contain the following modifications to the terms in The O'Neil Group's Engagement Agreement:

a.    The provision in the Engagement Agreement's General Business Terms relating to arbitration in the event a dispute arises between the Debtors and The O'Neil Group is hereby revised to provide that the arbitration provision shall apply only to the extent that the United States Bankruptcy Court in the Southern District of New York, or the United States District Court in the Southern District of New York if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

b.    All requests of The O'Neil Group for payment of indemnity pursuant to the Engagement Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall The O'Neil Group be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

c.    In no event shall The O'Neil Group be indemnified if the Debtors or a representative of the estates asserts a claim for, and a court determines by final

order that such claim arose out of, The O'Neil Group's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

d.    In the event that The O'Neil Group seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in The O'Neil Group's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases.

e.    The Engagement Agreement's General Business Terms shall apply solely to claims of The O'Neil Group and the Debtors against each other, and shall not apply if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, The O'Neil Group's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.  Additionally, the phrase "for the portion of the engagement giving rise to liability" is deleted from this paragraph.

f.    To the extent this Order is inconsistent with the Engagement Agreement, this Order shall govern.

THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge, information and belief.

Dated:      New York, New York
            January 26, 2010


                                    THE O'NEIL GROUP LLC


                                    _Jacqueline M. O'Neil_
                                    Jacqueline M. O'Neil
                                    Managing Director

**The O'Neil Group**
**4431 P Street, NW**
**Washington, DC  20007**
**(202) 965-2878**

January 2̶8̶, 2010

Jeffry J. Ciongoli
Managing Director
Lehman Brothers Holdings Inc.
101 Hudson Street
Jersey City, NJ 07302

Re:  U.S. Tax Compliance and Reporting

Dear Mr. Ciongoli:

The O'Neil Group is pleased to present this proposal to Lehman Brothers Holdings Inc ("you" or "your") to provide Tax Compliance and Reporting services for tax years ending 2008 and 2009 (the "Services").

*Objectives and Scope*

We understand the engagement objectives and scope to be the completion of Foreign Tax Returns (Form 5471, 8865, 8858, 1120F and 1118) and assistance with the State and Local tax filing for 2009.  Our team will be working with your internal tax department on this project, using the prior year templates, statements and document retention process.  We will utilize the Lehman tax software for all preparation. The accounting information provided will be verified by internal Lehman tax members prior to distribution to The O'Neil Group.  It is critical that this information arrive timely and complete.  Prior to beginning a new return, we will verify key information with a member of your internal tax department to make sure that the entity is still a reportable CFC and that all information is complete and accurate.

Given the number of returns to be completed for the 2009 filing year, we plan to start working with your team on January 18, 2010.  Our initial team will then be able to evaluate the flow of new information and add team members as appropriate.  See anticipated Budget and Timeline attached.  This Budget does not include a detail time allocation for the preparation of amended 2008 tax returns.

*Our Services*

We will perform those services or tasks you request which are within our scope or practice, as discussed and outlined herein – see Schedule of Returns, Attachment A.  You agree to comply with all of our reasonable requests and to provide us timely access to all information and locations reasonably necessary to our performance of the services.

**The O'Neil Group**
**4431 P Street, NW**
**Washington, DC 20007**
**(202) 965-2878**

The successful delivery of our Services, and the fees charged, are dependent on (i) your timely and effective support and direction, (ii) the accuracy and completeness of the documentation provided, and (iii) timely decisions and approvals by your management.

The O'Neil Group estimates that the preparation of the returns listed on Attachment A will require approximately ten thousand (8,900) hours to complete. We understand that this estimate is consistent with the level of effort required to complete these returns in past years after giving consideration for the current circumstances.

In the event that the scope of our work changes due to the loss of internal Lehman support in the existing tax department, you will be responsible for any delays, additional costs, or other liabilities caused by or associated with any deficiencies in the assumptions or in carrying out your responsibilities. We will have the appropriate resources available to fill those gaps, should they occur, however, those additional hours for that additional expertise will be billed at our regular hourly rates, as outlined herein.

We understand that you intend our work, opinions, conclusions and communications to be covered by the attorney-client and work product privileges to the extent provided by law, and we will comply with any requests you make of us that are designed to preserve these privileges. In addition, we understand that you will provide us with instructions regarding any document retention or document production procedures you expect us to follow.

We are a management consulting firm and not a CPA firm, and do not provide attest services, audits or other engagements in accordance with the AICPA Statements on Auditing Standards. Any accounting related services that we may provide you will be in our role as business advisor to you. We will not be auditing any financial statements or performing attest procedures with respect to information in conjunction with this engagement. Our services are not designed, nor should they be relied upon, to identify weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

We will not make any final judgments or decisions regarding accounting treatment. Such final judgments or decisions must be made by others who have the ultimate responsibility for such decisions and who can evaluate the information we provide together with all other relevant information. You understand and agree that our services are not to be considered to be part of your internal control environment.

*Bankruptcy Court Approval*

You agree to file an appropriate motion prepared in consultation with The O'Neil Group as to matters relating to our retention and provision of the Services as contemplated hereunder, as soon as practical and this engagement letter shall be subject to the entry of a final order of the Court approving the retention of The O'Neil Group to perform the Services. The O'Neil Group shall not be required to perform any work under this engagement letter until the entry of the Court's order approving the arrangements. The order approving the retention to The O'Neil Group must be acceptable to The O'Neil Group in its sole discretion.

**The O'Neil Group**
**4431 P Street, NW**
**Washington, DC  20007**
**(202) 965-2878**

_Fees and Expenses_

The O'Neil Group's professionals generally bill at hourly rates commensurate with the individual professional's experience and area of specialization.  The current standard ranges of rates, which are subject to adjustment in the ordinary course, are as follows:

| _Title_ | _Hourly Rate_ |
|---|---|
| Managing Director | $325 to $450 |
| Director | $225 to $350 |
| Manager | $185 to $250 |
| Associate | $145 to $185 |

Based on our estimation of the level of effort and related experience required to perform the Services, The O'Neil Group agrees to provide the Services as specifically contemplated herein at a Blended Rate of $180 per hour.

However, preparation of the 1118 and any additional work will be provided at the reduced billing rates – outlined below. See estimated Budget attached hereto.

| The O'Neil Group Partners Team Member | Hourly Bill Rate |
|---|---|
| Tax Managing Director | 325 |
| Tax Senior Director | 225 |
| Tax Managers | 165 |
| Tax Associates | 125 |

In the event additional assistance is required, beyond the tax return preparation contemplated herein and outside of the scope of The O'Neil Group's tax services, we will agree with you in writing on the scope of such service and our standard rates for the related service and personnel will apply.

The O'Neil Group shall be reimbursed by Company for all reasonable expenses incurred by The O'Neil Group in the performance of the Services, including, but not necessarily limited to, travel time, travel and lodging expenses, tax software and supplies, and reasonable legal fees that may be incurred in connection with the engagement.  If requested, we will bill our meals and incidentals on a per diem basis – as per the IRS standard rates.

# The O'Neil Group
## 4431 P Street, NW
## Washington, DC  20007
## (202) 965-2878

The O'Neil Group will bill on a monthly basis in accordance with the *Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals,* dated June 25, 2009 (Docket No. 4165) and applicable local bankruptcy rules, except as otherwise allowed.  Payments will be made by ACH payment to:

Jacqueline O'Neil
Star One Federal Credit Union
PO Box 3643, Sunnyvale, CA  94088
Account: 01000190562787 savings
Routing # 321177968

*General Business Terms*

We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services. We assume full and sole responsibility for the payment of all compensation and expenses of our consultants.

Our fees and payment terms are set out above. Those fees do not include taxes and other governmental charges (which will be separately identified in our invoices). We reserve the right to suspend services if invoices are not timely paid, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension.

If you are required by the laws of any foreign tax jurisdiction to withhold income or profits taxes from our payment, then the amount payable by you upon which the withholding is based shall be paid to us net of such withholding.  You shall pay any such withholding to the applicable tax authority.  However, if after 120 days of the withholding, you do not provide us with official tax certificates documenting remittance of the taxes, then you shall pay to us an amount equal to such withholding.  The tax certificates shall be in a form sufficient to document qualification of the taxes for the foreign tax credit allowable against our corporation income tax. You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services and deliverables, excluding taxes on our income generally.

With respect to any information supplied in connection with this engagement and designated by either of us as confidential, or which the other should reasonably believe is confidential based on the subject Services or the circumstances of its disclosure, the other party agrees to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose.  This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) lawfully disclosed by a third party, (iv) independently developed or (v) disclosed pursuant to legal requirement or order.

Confidential Information made available hereunder, including copies thereof, shall be returned or destroyed upon request by the disclosing party; provided that the receiving party may retain other

**The O'Neil Group**
**4431 P Street, NW**
**Washington, DC  20007**
**(202) 965-2878**

archival copies for recordkeeping and quality assurance purposes and receiver shall make no unauthorized use of such copies.

Upon full and final payment of all amounts due to us in connection with this engagement, all right, title and interest in any deliverables we provide to you will become your sole and exclusive property, except as set forth below.  We will retain sole and exclusive ownership of all right, title and interest in our work papers, proprietary information, processes, methodologies, know how and software ("The O'Neil Group Property"), including such information as existed prior to the delivery of our services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of services. To the extent our reports or other documents delivered to you contain The O'Neil Group Property, we grant you a non-exclusive, non-assignable, royalty-free license to use it in connection with the subject of the engagement.  As discussed more fully elsewhere in this letter, your use of deliverables is limited to the Services and should not be published, used or relied on for any other purpose.

Our engagement with you is not intended to shift risk normally borne by you to us. In the event of a legal proceeding or other claim brought against us by a third party, including a subpoena or court order, you agree to indemnify and hold us and our personnel, agents and contractors harmless against all costs, fees, expenses, damages, and liabilities, including reasonable defense costs and legal fees, associated with such third-party claim arising from or relating to any services or work product that you use or disclose to others, or this engagement generally. The provisions of this section for indemnification will not apply to the extent a claim arises out of our gross negligence or willful misconduct, as finally adjudicated by a finder of fact.  We will not be liable for any special, consequential, incidental, indirect or exemplary damages or loss (nor any lost profits, savings or business opportunity). Further, our liability relating to this engagement will in no event exceed an amount equal to the fees we receive from you for the portion of the engagement giving rise to such liability.   Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

You may terminate this Agreement for convenience at any time on 30 days' prior written notice to us. We may terminate this Agreement for convenience at any time on 30 days' prior written notice to you.   We may terminate this Agreement if, within 15 days' notice, you fail to cure a material breach of this Agreement including in the event of non-payment of amounts due us. Further, we reserve the right to terminate the Agreement at any time, upon providing written notice to you, if conflicts of interest arise or become known to us that, in our sole judgment would impair our ability to perform the services objectively.   To the extent you terminate this Agreement for convenience, you will pay us for all services rendered, expenses incurred or commitments made by us to the effective date of termination. To the extent you terminate this Agreement for breach, you will pay us for all conforming services rendered and reasonable expenses incurred by us to the effective date of the termination.  The terms of this Agreement which relate to confidentiality, ownership and use, limitations of liability and indemnification, non-solicitation and payment obligations shall survive its expiration or termination.

This Agreement shall not provide third parties with any remedy, cause, liability, reimbursement, claim of action or other right in law or in equity for any Services governed by or subject to the provisions of this Agreement.

# The O'Neil Group
**4431 P Street, NW**
**Washington, DC  20007**
**(202) 965-2878**

No term of this Agreement will be deemed waived, and no breach of this Agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

We each acknowledge that we may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland without giving effect to conflict of law rules.  The parties hereto agree that any and all disputes or claims arising hereunder or under any Engagement letter shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association.  Any arbitration will be conducted in Washington, DC.  Any arbitration award may be entered in and enforced by any court having jurisdiction thereof, and the parties consent and commit themselves to the jurisdiction of the courts of the State of Maryland for purposes of any enforcement of any arbitration award. Except as may be required by law, neither party nor any arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties.

If any portion of this Agreement is found invalid, such finding shall not affect the enforceability of the remainder hereof, and such portion shall be revised to reflect our mutual intention.

This engagement letter constitutes the entire understanding and agreement between us with respect to the services described above, supersedes all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by both parties.

*   *   *   *   *   *

**The O'Neil Group**
**4431 P Street, NW**
**Washington, DC  20007**
**(202) 965-2878**

Please indicate your agreement to these terms by signing and returning to me the enclosed copy of this letter.    We appreciate the opportunity to be of service to you and look forward to working with you on this project.

Sincerely,

THE O'NEIL GROUP

By:   _Jacqueline O'Neil_

Jacqueline M. O'Neil, Managing Partner

Acknowledged:

[Complete legal name of Law Firm]

By:    _____

Title:   _____

Date:   _____

Acknowledged and Accepted:

[Complete legal name of Client]

By:    _____

Jeffry Ciongoli

Title:    Managing Director

Date:    1/26/10

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                  :
In re                                             :      **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :      **08-13555 (JMP)**
                                                  :
                              **Debtors.**        :      **(Jointly Administered)**
                                                  :
--------------------------------------------------------------------x

## ORDER GRANTING APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE TO RETAIN AND EMPLOY THE O'NEIL GROUP AS TAX SERVICES PROVIDERS *NUNC PRO TUNC* TO THE ENGAGEMENT DATE

Upon the Application, dated January 27, 2010 (the "Application"),[1] of Lehman

Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (together, the "Debtors"), pursuant to sections 327(a) and

328(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), for authority

to retain and employ The O'Neil Group as tax services providers, *nunc pro tunc* to January 6,

2010 (the "Engagement Date"), as more fully set forth in the Application; and upon

consideration of the Declaration of Jacqueline M. O'Neil , a managing director of The O'Neil

Group, sworn to January 26, 2010, filed in support of the Application, a copy of which is

attached to the Application as Exhibit 1 (the "O'Neil Declaration"); and the Court being

satisfied, based on the representations made in the Application and the O'Neil Declaration, that

The O'Neil Group represents or holds no interest adverse to the Debtors or their estates and is

disinterested under section 101(14) of the Bankruptcy Code; and the Court having jurisdiction to

consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in
the Application.

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District

of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application having been provided in

accordance with the procedures set forth in the order entered September 22, 2008 governing case

management and administrative procedures [Docket No. 285] to (i) the United States Trustee for

the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; and (vi) The O'Neil Group,

and it appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Application is in the best interests of the Debtors, their

estates and creditors, and all parties in interest and that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code,

the Debtors are authorized to retain and employ The O'Neil Group as their tax services

providers, *nunc pro tunc* to the Engagement Date, on the terms and conditions generally

described and set forth in the Engagement Letter, subject to the following modifications set forth

in Paragraph 17 of the O'Neil Declaration:

a.    The provision in the Engagement Agreement's General Business Terms relating
to arbitration in the event a dispute arises between the Debtors and The O'Neil
Group is hereby revised to provide that the arbitration provision shall apply only
to the extent that the United States Bankruptcy Court in the Southern District of

New York, or the United States District Court in the Southern District of New York if the reference is withdrawn, does not retain jurisdiction over a controversy or claim,

b.     All requests of The O'Neil Group for payment of indemnity pursuant to the Engagement Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall The O'Neil Group be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct,

c.     In no event shall The O'Neil Group be indemnified if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, The O'Neil Group's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct,

d.     In the event that The O'Neil Group seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in The O'Neil Group's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases,

e.     The Engagement Agreement's General Business Terms shall apply solely to claims of The O'Neil Group and the Debtors against each other, and shall not apply if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, The O'Neil Group's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.  Additionally, the phrase "for the portion of the engagement giving rise to liability" is deleted from this paragraph, and

f.     To the extent this Order is inconsistent with the Engagement Agreement, this Order shall govern;

and it is further

ORDERED that The O'Neil Group shall apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may be fixed by order of this Court, including but not limited to the Court's Third Amended Order Pursuant to Sections

105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures

for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket

No. 4165] and the Court's Order Appointing a Fee Committee and Approving a Fee Protocol

[Docket No. 3651] except that The O'Neil Group is permitted to maintain its detailed time

records to the nearest quarter hour; and it is further

       ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.


Dated:  February ___, 2010
      New York, New York

                                _____

                                UNITED STATES BANKRUPTCY JUDGE