Presentment Date and Time: February 8, 2010 at 12:00 p.m. noon (Prevailing Eastern Time)
Objection Deadline: February 8, 2010 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): February 10, 2010 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                        :        **Chapter 11 Case No.**
                                             :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, :        **08-13555 (JMP)**
                                             :
Debtors.                                     :        **(Jointly Administered)**
                                             :
                                             :
---------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF STIPULATION AND ORDER**
**MODIFYING ADEQUATE PROTECTION STIPULATION WITH**
**SUMITOMO MITSUI BANKING CORPORATION**

**PLEASE TAKE NOTICE** that the undersigned will present the annexed Stipulation and Order Modifying Adequate Protection Stipulation with Sumitomo Mitsui Banking Corporation (the "Stipulation") between Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtor in the above referenced chapter 11 cases, Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors-in-possession (together, the "Debtors") and Sumitomo Mitsui Banking Corporation ("SMBC") to the Honorable James M. Peck, United States Bankruptcy Judge, for signature on **February 8, 2010 at 12:00 noon (Prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Stipulation, with proof of service, is served and filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers and the undersigned so as to be received by **February 8, 2010 at 11:00 a.m. (Prevailing Eastern Time)**, there will not be a hearing and the Stipulation may be signed.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely served and filed, a hearing (the "Hearing") will be held to consider the Stipulation on **February 10, 2010 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 28, 2010
New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                      :    Case No. 08-13555 (JMP)
                                                              :
        Debtors.                                              :    (Jointly Administered)
                                                              :
------------------------------------------------------------- x

## STIPULATION AND ORDER
## MODIFYING ADEQUATE PROTECTION STIPULATION WITH
## SUMITOMO MITSUI BANKING CORPORATION

Lehman Brothers Holdings Inc. ("*LBHI*") and its affiliated debtor in the above referenced

chapter 11 cases, Lehman Commercial Paper Inc. ("*LCPI*"), as debtors and debtors-in-

possession (together, the "*Debtors*" and together with their debtor and non-debtor affiliates,

"*Lehman*") and Sumitomo Mitsui Banking Corporation ("*SMBC*"), by and through their

respective counsel hereby enter into this Stipulation and Order (this "*Stipulation*").

THE PARTIES HEREBY STIPULATE AND THE COURT HEREBY FINDS as

follows:

A.        Commencing on September 15, 2008 (the "*LBHI Commencement Date*"), LBHI

and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of

title 11 of the United States Code (the "*Bankruptcy Code*").  On October 5, 2008 (the "*LCPI*

*Commencement Date*"), LCPI and certain other affiliates of LBHI commenced with this Court

voluntary cases under chapter 11 of the Bankruptcy Code.

B.        Prior to the LBHI Commencement Date, LBHI and SMBC entered into a Loan

and Security Agreement dated as of May 27, 2008 (the "*Loan Agreement*") pursuant to which

SMBC made loans and other financial accommodations to LBHI, the proceeds of which are stated in the Loan Agreement to be used to finance assets owned by LCPI.

C.    Pursuant to the Loan Agreement, LBHI and LCPI pledged to SMBC certain financial assets together with any and all replacements, substitutions, distributions on or proceeds thereof (the "*Collateral*") to secure LBHI's obligations to SMBC.  As of the date hereof, the Collateral includes, without limitation, the corporate loans identified on Exhibit A hereto (the "*Pledged Assets*").

D.    SMBC has valid, perfected, and unavoidable first priority liens upon and security interests in the Collateral.

E.    As of the LBHI Commencement Date, the principal amount of $350,000,000, together with accrued and unpaid interest in an amount equal to $573,307.29, was outstanding under the Loan Agreement.  As of January 12, 2010, the principal amount of $134,913,621.19 was outstanding under the Loan Agreement (the "*Obligations*").

F.    On October 15, 2008, SMBC filed a Motion for an Entry of an Order Pursuant to 11 U.S.C. §362(d) and Fed. R. Bankr. P. 4001 Granting Relief from the Automatic Stay to Foreclose on its Collateral (the "*Motion*") [LCPI Doc. No. 17].  Objections to the Motion were resolved by entry of a Stipulation and Order Granting  Adequate Protection (the "*Original Stipulation*") on December 17, 2008 [LBHI Doc. No. 2286].  Shortly thereafter, on January 16, 2009, this Court entered the Amended Stipulation and Order Granting Adequate Protection [LBHI Doc. No. 2567] (the "*Amended Stipulation*") to facilitate the transfer of one of the Pledged Assets as contemplated by the parties.

G.    The adequate protection provided to SMBC was further supplemented pursuant to the Stipulation and Order Granting Further Adequate Protection to Sumitomo Mitsui Banking

Corporation, which was so ordered by the Court on June 17, 2009 [Docket No. 4007] (the "*Supplemental Stipulation,*" and, together with the Original Stipulation and the Amended Stipulation, the "*Prior Stipulations*"*).*

      H.      In accordance with the terms of the Prior Stipulations, the Debtors have consulted with SMBC regarding the management of the Pledged Assets. As a result of such consultation, the Debtors and SMBC have (1) determined that it is appropriate for the Debtors to sell $10 million in principal amount of the TXU debt described on Exhibit A hereto (the "*TXU Loan*") at this time and apply the proceeds to reduce the amount of the Obligations, and (2) agreed upon terms for the transfer to SMBC the principal amount of $40 million of the loan identified on Exhibit A as Altegrity Inc. 8/21/07 (the "*Altegrity Loan*") in exchange for a reduction in the Obligations.

      I.      LCPI hereby represents and warrants that it is the sole legal and beneficial owner of the Altegrity Loan, and has good title to the Altegrity Loan, free and clear of any options, pledges, interests, mortgages, security interests, liens, claims, rights of first refusal, purchase or repurchase rights, or any other third party rights of any kind or nature, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind, whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated, other than the claims and interests of SMBC under the Loan Agreement. Each of LBHI and LCPI hereby represents and warrants that as of the date hereof, it was not the owner or beneficiary of, and as of the date hereof, is not the owner or beneficiary of, credit insurance or credit default protection in respect of the Pledged Assets.

      J.      In order to save the estate and the Court the time and expense associated with the filing of additional stipulations to deal with future dispositions of the Pledged Assets and

payments to SMBC, the Debtors and SMBC have agreed, subject to approval of this Court, that transfers or sales of the Pledged Assets can be effectuated in the future without Court approval in each instance, provided that: (1) the Debtors and SMBC are in agreement with respect to the terms for the sale or transfer of the relevant Pledged Assets, and (2) the Creditors' Committee provides its approval of the terms of any proposed transfers or sales of Pledged Assets.

NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND UPON COURT APPROVAL HEREOF, IT IS ORDERED THAT:

1.      On the Effective Date hereof, the Debtors shall be authorized to sell the TXU Loan at a price equal to at least 82.5% of the face amount thereof and, within five (5) business days after completion of the sale of the TXU Loan, the Debtors shall pay the net proceeds thereof to SMBC. Such payment shall be made in immediately available funds by wire transfer to an account identified by SMBC. The amount of the Outstanding Obligations shall be reduced by the amount paid to SMBC pursuant to this paragraph 1.

2.      On the Effective Date, the Debtors shall be authorized to (a) irrevocably sell, transfer, assign, grant and convey the principal amount of $40 million of the Altegrity Loan and the related transferred rights to SMBC with effect on and after date the agent makes each transfer effective and (b) SMBC shall irrevocably acquire the principal amount of $40 million of the Altegrity Loan.

3.      To accomplish the assignment of the Altegrity Loan, the Debtors shall, within five (5) business days of the entry of this Stipulation, execute and deliver the Transfer Certificate specified by the credit agreement in substantially the form attached hereto as Exhibit B (the "*Transfer Certificate*"). Immediately upon the effective date of the transfer of the Altegrity Loan, in consideration thereof, the outstanding amount of LBHI's Obligations under the Loan

Agreement shall be reduced by an amount equal to the product of $40 million *multiplied* by .94.

No transfer fee shall be charged by LCPI to SMBC in connection with such transfer.

4.      From time to time after the Effective Date, provided that the Debtors, SMBC, and

the Creditors' Committee agree on the terms thereof, the Debtors shall be authorized to sell other

Pledged Assets at prevailing market prices, and pay the net proceeds of such sales to SMBC

which, in turn, shall apply such payments to reduce the outstanding amount of the Obligations.

5.      From time to time after the Effective Date, provided that the Debtors, SMBC, and

the Creditors' Committee agree on the terms thereof, the Debtors may transfer other Pledged

Assets to SMBC in exchange for a reduction of the outstanding amount of the Obligations.

6.      The Debtors are authorized and directed, without further Order of this Court, to

execute and deliver, and empowered and directed to perform under, consummate and implement,

the terms of this Stipulation and the Transfer Certificate, together with all additional documents

that may be reasonably necessary or desirable to consummate the transfer of the Pledged Assets,

including the Altegrity Loan, to SMBC and to take all further actions as may be reasonably

requested by SMBC for the purpose of performing its obligations under this Stipulation,

including, without limitation, the assignment and transfer of the Altegrity Loan to SMBC.

7.      Upon payment in full of the Obligations, SMBC shall execute and deliver UCC

termination statements and any additional documents reasonably necessary to reflect termination

of SMBC's security interest in any remaining Pledged Assets.

8.      SMBC agrees that it shall not seek further adequate protection or relief from the

automatic stay with respect to the Collateral for a period of six months from the Effective Date.

9.      To the extent permitted under applicable law, the terms and provisions of this

Stipulation shall be binding upon the Debtors and their successors and assigns, including, but not

limited to, any trustee appointed in these cases, in any superseding case or in any case related hereto, and shall survive for the benefit of SMBC and the Debtors.

10.     The automatic stay imposed by Section 362 of the Bankruptcy Code shall be, and hereby is, lifted and vacated to the extent necessary, if any, to authorize the payments required hereunder and to implement and effectuate the terms and conditions of this Stipulation.

11.     Except as supplemented by this Stipulation, all of the terms, conditions, covenants, provisions, representations, warranties and conditions of the Prior Stipulations shall remain in full force and effect and are hereby acknowledged, ratified, confirmed and continued as if fully restated hereby.  It is the intention of the Debtors and SMBC that this Stipulation shall not constitute a novation and shall in no way adversely affect, diminish or impair the Debtors' performance of their obligations under the Prior Stipulations.

12.     On and after the effectiveness of this Stipulation, each reference in the Prior Stipulations such as "this Stipulation", "hereunder", "hereof" or words of like import internally referring to the Prior Stipulations, shall mean and be a reference to the Prior Stipulations, as supplemented by this Stipulation.

13.     The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

14.     This Stipulation can only be amended or otherwise modified by a signed writing executed by the parties hereto.

15.     Each person who executes this Stipulation on behalf of a party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such party.

16.     This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

17.    This Stipulation shall not be effective unless and until it is approved by the Bankruptcy Court (the "*Effective Date*").  If this Stipulation is not approved by the Bankruptcy Court, it shall be deemed null and void and shall not be referred to or used for any purpose by any of the parties hereto or any of the other parties in the Debtors' chapter 11 cases.


*[Remainder of Page Left Intentionally Blank.
Signature Page Follows.]*

New York, New York
Dated:  January 28, 2010

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ Jacqueline Marcus

767 Fifth Avenue
New York, New York 10153
Telephone: 212.310.8000
Facsimile: 212.310.8007

*Attorneys for Debtors and Debtors in
Possession*

**MAYER BROWN LLP**

By: /s/ Frederick D. Hyman

1675 Broadway
New York, New York 10019
Telephone: 212.506.2500
Facsimile: 212.262.1910

*Attorneys for Sumitomo Mitsui Banking
Corporation*

**SO ORDERED** this _____ day of February 2010

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A
### (As of 1/14/10)

| CREDIT FACILITY | FACILITY | CURRENCY | OUTSTANDING |
|---|---|---|---|
| TXU ENERGY (10/10/07) CITI | Term Loan B-2 | USD | 24,622,165.87 |
| TXU ENERGY (10/10/07) CITI | Term Loan B-3 | USD | 46,354,909.08 |
| ALTEGRITY INC. (F/K/A/ US INVESTIGATION SERVICES) (08/21/97) | Term Loan | USD | 78,170,867.96 |
| WEST CORPORATION | Term Loan B-2 | USD | 7,686,723.85 |
| WEST CORPORATION | Term Loan B-4 | USD | 11,165,311.25 |

## EXHIBIT B

### FORM OF TRANSFER CERTIFICATE

## ASSIGNMENT AND ASSUMPTION

This Assignment and Assumption (the "<u>Assignment and Assumption</u>") is dated as of the Effective Date set forth below and is entered into by and between the Assignor (as defined below) and the Assignee (as defined below). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement (as defined below), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Assumption as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the respective Commitments or Loans identified below (including without limitation the Term Loans, the Revolving Loans, any Letters of Credit and Swingline Loans) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned by the Assignor to the Assignee pursuant to clauses (i) and (ii) above being referred to herein collectively as the "<u>Assigned Interest</u>"). Each such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and Assumption, without representation or warranty by the Assignor.

| | | |
|---|---|---|
| 1. | Assignor : | Lehman Commercial Paper Inc. |
| 2. | Assignee : | Sumitomo Mitsui Banking Corporation |
| 3. | Credit Agreement: | The Credit Agreement dated as of August 21, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Credit Agreement</u>"), among ALTEGRITY ACQUISITION CORP., a Delaware corporation ("Holdings"), ALTEGRITY MERGER CORP., a Delaware corporation ("<u>Merger Sub</u>"), to be merged with and into ALTEGRITY, INC., a Delaware corporation ("<u>the Company</u>"), the Lenders party thereto, and LEHMAN COMMERCIAL PAPER INC., as Administrative Agent and Collateral Agent for the Lenders, LEHMAN BROTHERS INC. and BANC OF AMERICA SECURITIES LLC, as joint lead arrangers and joint bookrunners. |

4..        Assigned Interest:

| Facility Assigned | Amount of Commitment/ Loans Assigned | Percentage Assigned of Commitment/ Loans |
|---|---|---|
| Term Loan | $40,000,000.00 | 5.6442367051768% |

5.        Effective Date of Assignment:   January _____, 2010

The terms set forth in this Assignment and Assumption are hereby agreed to:

LEHMAN COMMERCIAL PAPER INC.,as          SUMITOMO MITSUI BANKING
Assignor                                 CORPORATION, as Assignee

By: _____      By: _____
    Title:                                   Title:

CONSENTED TO AND ACCEPTED:

CONSENTED TO:

LEHMAN COMMERCIAL PAPER INC.,
    as Administrative Agent

ALTEGRITY, INC., as Borrower

By: _____

Title:

By: _____

Title:

STANDARD TERMS AND CONDITIONS FOR
ASSIGNMENT AND ACCEPTANCE

1.    Representations and Warranties.

1.1 Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Acceptance and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Loan Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement, any other Loan Document or any other instrument or document delivered pursuant thereto (other than this Assignment), or any other collateral thereunder, (iii) the financial condition of the Borrowers, any subsidiary, or any other person or any Loan Document or (iv) the performance or observance by the Borrowers, any of their subsidiaries or Affiliates or any other person of any of their respective obligations under the Credit Agreement or any other Loan Document.

1.2 Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Acceptance and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it is legally authorized to enter into this Assignment and Acceptance, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it is sophisticated with respect to decisions to acquire assets of the type represented by the Assigned Interest and either it, or the person exercising discretion in making its decision to acquire the Assigned Interest, is experienced in acquiring assets of such type, (v) it has received a copy of the Credit Agreement, and has received or has been accorded the opportunity to receive copies of the most recent financial statements referred to in Section 3.05(a) thereof or delivered pursuant to Section 5.04 thereof, as applicable, and such other documents and information as it deems appropriate to make its own credit analysis and decision to enter into this Assignment and Acceptance and to purchase the Assigned Interest, (vi) it has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Assignment and Acceptance and to purchase the Assigned Interest, and (vii) attached to the Assignment and Acceptance is any documentation required to be delivered by it pursuant to Section 2.20(e), 2.20(f) or 2.20(g) of the Credit Agreement, as applicable, duly completed and executed by the Assignee; (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Agreement are required to be performed by it as a Lender; and (c) appoints and authorizes each of the Administrative Agent, the Syndication Agent and any Collateral Agent to take such action as agent on its behalf and to exercise such powers under the Credit Agreement and the other Loan Documents as are delegated to or otherwise conferred upon the Administrative Agent, the Syndication Agent or such Collateral Agent, as the case may be, by the terms thereof, together with such powers as are reasonably incidental thereto.

1.3 Payments. From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

1.4 Effect of Assignment. Upon the delivery of a fully executed original hereof to the Administrative Agent, as of the Effective Date, (i) the Assignee shall be a party to the Credit Agreement and, to the extent provided in this Assignment, have the rights and obligations of a Lender thereunder and under the other Credit Documents and (ii) the Assignor shall, to the extent provided in this Assignment, relinquish its rights and be released from its obligations under the Credit Agreement and the other Loan Documents.

1.5 General Provisions. This Assignment and Acceptance shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment and Acceptance may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment and Acceptance by telecopy shall be ffective as delivery of a manually executed counterpart of this Assignment and Acceptance. This Assignment and Acceptance shall be governed by, and construed in accordance with, the law of the State of New York (including, without limitation, Section 5.1401 of the General Obligations Law).