# BCI EXHIBIT

# 26

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,**                          :    **08-13555 (JMP)**
*et al.*                                                    :
                **Debtors.**                                :    **(Jointly Administered)**
                                                            :
-------------------------------------------------------------x

### FIRST OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT
### OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

        **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

        **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

        **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

        **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]    For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and actually received by the following parties (the "Objection Notice Parties") no later than ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: October 6, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: /s/ Lindsee P. Granfield
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

3

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| 2 TRACK GLOBAL | CON0000000116467 | $0.00 | Master Agreement | N/A | 1270 Broadway, Suite 208, New York, NY 10001 | Lehman Brothers Holdings Inc. |
| 2 TRACK GLOBAL | CON0000000023046 | $0.00 | Amendment / Addendum / Schedule | N/A | 1270 Broadway, Suite 208, New York, NY 10001 | Lehman Brothers Holdings Inc. |
| 2 TRACK GLOBAL | CON0000000021886 | $0.00 | Amendment / Addendum / Schedule | N/A | 1270 Broadway, Suite 208, New York, NY 10001 | Lehman Brothers Holdings Inc. |
| 2 TRACK GLOBAL | CON0000000022734 | $0.00 | Transaction Schedule | N/A | 1270 Broadway, Suite 208, New York, NY 10001 | Lehman Brothers Holdings Inc. |
| 2 TRACK GLOBAL | CON0000000022735 | $0.00 | Transaction Schedule | N/A | 1270 Broadway, Suite 208, New York, NY 10001 | Lehman Brothers Holdings Inc. |
| 2 TRACK GLOBAL | CON0000000022736 | $0.00 | Transaction Schedule | N/A | 1270 Broadway, Suite 208, New York, NY 10001 | Lehman Brothers Holdings Inc. |
| 2 TRACK GLOBAL | CON0000000023882 | $0.00 | Transaction Schedule | N/A | 1270 Broadway, Suite 208, New York, NY 10001 | Lehman Brothers Holdings Inc. |
| ADITI TECHNOLOGIES PRIVATE LIMITED | CON0000000027775 | $0.00 | Master Agreement | N/A | 2002 156th Ave NE, Suite 200, Bellevue, WA 98007 | Lehman Brothers Holdings Inc. |
| ADITI TECHNOLOGIES PRIVATE LIMITED | CON0000000027792 | $0.00 | Supplement | N/A | 2002 156th Ave NE, Suite 200, Bellevue, WA 98007 | Lehman Brothers Holdings Inc. |
| ADVANCED TECHNOLOGY SUPPORT | 001814-LEHNY-2006 | $0.00 | Transaction Schedule | N/A | 10075 Red Run Blvd., Suite 550, Owings Mills, MD 21117 | Lehman Brothers Holdings Inc. |
| ADVANCED TECHNOLOGY SUPPORT | 022032-LEHNY-2006 | $0.00 | Transaction Schedule | N/A | 10075 Red Run Blvd, Suite 550, Owings Mills, MD 21117 | Lehman Brothers Holdings Inc. |
| ADVANCED TECHNOLOGY SUPPORT | 022033-LEHNY-2006 | $0.00 | Master Agreement | N/A | 10075 Red Run Blvd, Suite 550, Owings Mills, MD 21117 | Lehman Brothers Holdings Inc. |
| ADVANCED TECHNOLOGY SUPPORT | 022035-LEHNY-2006 | $0.00 | Supplement | N/A | 10075 Red Run Blvd, Suite 550, Owings Mills, MD 21117 | Lehman Brothers Holdings Inc. |
| ADVANCED TECHNOLOGY SUPPORT | CON0000000025514 | $0.00 | Amendment / Addendum / Schedule | N/A | 10075 Red Run Blvd, Suite 550, Owings Mills, MD 21117 | Lehman Brothers Holdings Inc. |
| ALLO COMMUNICATIONS | CON0000000020651 | $0.00 | Standalone Agreement | N/A | 610 Broadway, Imperial, NE 69033 | Lehman Brothers Holdings Inc. |
| ALLO COMMUNICATIONS | CON0000000022677 | $0.00 | Standalone Agreement | N/A | 610 Broadway, Imperial, NE 69033 | Lehman Brothers Holdings Inc. |
| ANGEL/POINTS, INC. | CON0000000022784 | $0.00 | Master Agreement | N/A | 30 Liberty Ship Way, Suite 3150 Sausalito, CA 94965 | Lehman Brothers Holdings Inc. |
| ANGEL/POINTS, INC. | CON0000000021993 | $0.00 | Supplement | N/A | 30 Liberty Ship Way, Suite 3150 Sausalito, CA 94965 | Lehman Brothers Holdings Inc. |
| ANGEL/POINTS, INC. | CON0000000021994 | $0.00 | Transaction Schedule | N/A | 30 Liberty Ship Way, Suite 3150 Sausalito, CA 94965 | Lehman Brothers Holdings Inc. |
| APCON | CON0000000021040 | $0.00 | Master Agreement | N/A | 9255 SW Pioneer Court, Wilsonville, OP 97070 | Lehman Brothers Holdings Inc. |
| APCON | CON0000000021182 | $0.00 | Supplement | N/A | 9255 SW Pioneer Court, Wilsonville, OP 97070 | Lehman Brothers Holdings Inc. |
| APCON | CON0000000021183 | $0.00 | Supplement | N/A | 9255 SW Pioneer Court, Wilsonville, OP 97070 | Lehman Brothers Holdings Inc. |
| APCON | CON0000000022557 | $0.00 | Transaction Schedule | N/A | 9255 SW Pioneer Court, Wilsonville, OP 97070 | Lehman Brothers Holdings Inc. |
| APCON, INC. | CON0000000022563 | $0.00 | Professional and Consulting | N/A | 9255 SW Pioneer Court, Wilsonville, OP 97070 | Lehman Brothers Holdings Inc. |
| APPINTELLIGENCE INC | 022051-LEHNY-2006 | $0.00 | Master Agreement | N/A | 17 Research Park Drive, Weldon Spring, MO 63304 | Lehman Brothers Holdings Inc. |
| APPINTELLIGENCE INC | CON0000000011748 | $0.00 | Amendment / Addendum / Schedule | N/A | 17 Research Park Drive, Weldon Spring, MO 63304 | Lehman Brothers Holdings Inc. |
| APPLABS INCORPORATED | CON0000000021860 | $0.00 | Master Agreement | N/A | 1601 market Street Suite 801, Philadelphia PA 19103 | Lehman Brothers Holdings Inc. |
| APPLABS INCORPORATED | CON0000000021861 | $0.00 | Professional and Consulting | N/A | 1601 market Street Suite 801, Philadelphia PA 19103 | Lehman Brothers Holdings Inc. |
| ASSENTIS TECHNOLOGIES, AG | CON0000000022106 | $0.00 | Master Agreement | N/A | Lettenstrasse 7, 5343 Rotkreuz, Switzerland | Lehman Brothers Holdings Inc. |
| ASSENTIS TECHNOLOGIES, AG | CON0000000033100 | $0.00 | Transaction Schedule | N/A | Lettenstrasse 7, 5343 Rotkreuz, Switzerland | N/A |

| Vendor Name+ | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| ASSENTIS TECHNOLOGIES, AG | CON000000031155 | $0.00 | Maintenance Renewal Quote | N/A | Lettenstrasse 7, 8343 Rolkreuz, Switzerland | N/A |
| ATEO | CON000000028274 | $0.00 | Amendment / Addendum / Schedule | N/A | 200 S Wacker Dr, Suite 3100, Chicago IL 60606 | N/A |
| ATEO Corp. | CON000000025129 | $0.00 | Master Agreement | N/A | 200 S Wacker Dr, Suite 3100, Chicago IL 60606 | LBHI |
| ATEO Corp. | CON000000025134 | $0.00 | Supplement | N/A | 200 S Wacker Dr, Suite 3100, Chicago IL 60606 | LBHI |
| ATEO Corp. | CON000000026107 | $0.00 | Transaction Schedule | N/A | 200 S Wacker Dr, Suite 3100, Chicago IL 60606 | LBHI |
| ATEO LTD | CON000000027816 | $0.00 | Master Agreement | N/A | 200 S Wacker Dr, Suite 3100, Chicago IL 60606 | LBHI |
| ATLANTIC INFORMATION SERVICES | CON000000026990 | $0.00 | TBD | David Romeo | 68 Lombard Street, London,EC3V 9LJ | N/A |
| Atlantic Information Services LLc | CON000000020019 | $0.00 | TBD | Scott Turley | 83 Wooster Heights Road, Danbury, CT 06810 | LBHI |
| BURNETT GROUP | CON000000016271 | $0.00 | | N/A | 1133 Broadway Suite 1615 NY, NY 10010 | LB |
| BURNETT GROUP | CON000000016272 | $0.00 | | N/A | 1133 Broadway Suite 1615 NY, NY 10010 | LB |
| CELOXICA, INC. | CON000000028417 | $0.00 | Master Agreement | | 1133 Broadway Suite 706 New York, NY 10010 | LBHI |
| CELOXICA, INC. | CON000000028418 | $0.00 | Master Agreement | | 1133 Broadway Suite 706 New York, NY 10010 | LBHI |
| CIENA COMMUNICATIONS, INC. | CON000000014372 | $0.00 | Trial | | 1201 Winterson Road, Linthicum MD 21090 | LBHI |
| CIENA COMMUNICATIONS, INC. | CON000000020834 | $0.00 | Master Agreement | | 1201 Winterson Road, Linthicum MD 21090 | LBHI |
| CIENA COMMUNICATIONS, INC. | CON000000020840 | $0.00 | Transaction Schedule | | 1201 Winterson Road, Linthicum MD 21090 | LBHI |
| CIENA COMMUNICATIONS, INC. | CON000000026732 | $0.00 | Amendment / Addendum / Schedule | | 1201 Winterson Road, Linthicum MD 21090 | LBHI |
| CIENA COMMUNICATIONS, INC. | CON000000026734 | $0.00 | Amendment / Addendum / Schedule | | 1201 Winterson Road, Linthicum MD 21090 | LBHI |
| COLLABNET, INC | CON000000030831 | $0.00 | Maintenance Renewal Quote | CollabNet, Inc. | 8000 Marina Blvd, Suite 600 Brisbane, CA 94005-1865 | LBHI |
| CollabNet, Inc. | N/A. | $0.00 | | CollabNet, Inc. | 8000 Marina Boulevard, Suit 600 Brisbane, CA 94005-1865 | LBHI |
| COLUMN TECHNOLOGIES INC | CON000000012716 | $0.00 | Master Agreement | | 1400 Opus Place Suite 110, Downers Grove, IL 6015 | LBHI |
| COLUMN TECHNOLOGIES INC | CON000000014574 | $0.00 | Side Letter | | 1400 Opus Place Suite 110, Downers Grove, IL 60515 | Unknown |
| CommScope | CON000000023407 | $0.00 | | | 1100 CommScope Place SE, Hickory, NC 28602 | LBHI |
| Commscope* | CON000000020833 | $0.00 | Master Agreement | | 1100 CommScope Place SE, Hickory, NC 28602 | LBHI |
| DATA KINETICS LTD | CON000000022342 | $0.00 | | N/A. | 2400 Lancaster Road, Ottawa, Ontario, Canada K1B 4S5 | N/A. |
| Davis Audio Visual | CON000000021779 | $0.00 | | N/A. | 2100 Olay St., Denver, CO 80211 | LBHI |
| Davis Audio Visual | CON000000025332 | $0.00 | | Justin Swartz | 2100 Olay St., Denver, CO 80211 | LBHI |
| DIRECTLINK TECHNOLOGIES, CORP | CON000000015925 | $0.00 | | N/A. | 2651 Bernville Road, Reading, PA 19512 | LBHI |
| DMD Systems Recovery Inc. | CON000000023567 | $0.00 | | N/A. | 1315 E. Gibson Lane, Building E, Phoenix, AZ 85034 | LBHI |
| DMD Systems Recovery Inc. | CON000000023568 | $0.00 | | N/A. | 1315 E. Gibson Lane, Building E, Phoenix, AZ 85034 | LBHI |
| DMD Systems Recovery Inc. | CON000000023569 | $0.00 | | N/A | 1315 E. Gibson Lane, Building E, Phoenix, AZ 85034 | LBHI |

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| DMD Systems Recovery Inc. | CON00000029570 | $0.00 | | N/A | 1315 E. Gibson Lane, Building E, Phoenix, AZ 85034 | LBHI |
| DMD Systems Recovery Inc. | CON00000029571 | $0.00 | | N/A | 1315 E. Gibson Lane, Building E, Phoenix, AZ 85034 | LBHI |
| DSI TECHNOLOGY ESCROW SERVICES | CON00000024400 | $0.00 | | Contract Administration | Contract Administration, 9265 Sky Park Court, Suite 202, San Diego, CA 92123 | N/A |
| E4E BUSINESS SOLUTIONS | CON00000027646 | $0.00 | Master Agreement | N/A | 109 Koramangala Industrial Layout, 4th Cross 5th block - Koramangala, Bangalore, 560-095 | Unknown |
| E4E BUSINESS SOLUTIONS | CON00000027647 | $0.00 | Supplement | N/A | 109 Koramangala Industrial Layout, 4th Cross 5th block - Koramangala, Bangalore, 560-095 | Unknown |
| E4E BUSINESS SOLUTIONS | CON00000027648 | $0.00 | Transaction Schedule | N/A | 109 Koramangala Industrial Layout, 4th Cross 5th block - Koramangala, Bangalore, 560-095 | Unknown |
| ENVIRONMENTAL SYSTEMS RESEARCH | 001554-LEHNY-2006 | $0.00 | Master Agreement | N/A | 380 New York Street, Redlands, CA 92373 | Lehman Brothers Holdings Inc. |
| Environmental Systems Research Institute | 005190-LEHNY-2004 | $0.00 | Master Agreement | N/A | 380 New York Street, Redlands, CA 92373 | Lehman Brothers Holdings Inc. |
| ESSENTIAL TRADING SYSTEMS CORP | CON00000013523 | $0.00 | Master Agreement | N/A | 21 Seguin Drive, Glastonbury CT 06033 | Lehman Brothers Holding Inc. |
| ESSENTIAL TRADING SYSTEMS CORP | CON00000023040 | $0.00 | Transaction Schedule | N/A | 21 Seguin Drive, Glastonbury CT 06033 | Lehman Brothers Holding Inc. |
| EVOLUTION CONSULTING GROUP PLC | 1652-LEHUK-2002 | $0.00 | Master Agreement | N/A | P.O. Box 4848, Silver Spring, MD 20914 | N/A |
| EVOLUTION CONSULTING GROUP PLC | CON00000016098 | $0.00 | Master Agreement | N/A | P.O. Box 4848, Silver Spring, MD 20914 | N/A |
| EVOLUTION CONSULTING GROUP PLC | CON00000024169 | $0.00 | Maintenance Renewal Quote | N/A | P.O. Box 4848, Silver Spring, MD 20914 | N/A |
| Exzac LLC | CON00000027470 | $0.00 | TBD | Alon Even-Chen | 591 Summit Ave, Suite 410 Jersey City, NJ 07306 | Lehman Brothers Holding Inc. |
| Exzac LLC | CON00000027471 | $0.00 | TBD | Alon Even-Chen | 591 Summit Ave, Suite 410 Jersey City, NJ 07306 | Lehman Brothers Holding Inc. |
| Exzac LLC | CON00000027472 | $0.00 | TBD | Alon Even-Chen | 591 Summit Ave, Suite 410 Jersey City, NJ 07306 | Lehman Brothers Holding Inc. |
| Fatwire Corporation | CON00000023852 | $0.00 | Trial | N/A | 330 old Country Road, Suite 207, Mineola, NY 11501 | LB Holdings Inc |
| FatWire Corporation | CON00000030220 | $0.00 | Transaction Schedule | N/A | 330 old Country Road, Suite 207, Mineola, NY 11501 | LB Holdings Inc |
| FIDELITY INFORMATION SERVICES | CON00000015695 | $0.00 | Amendment / Addendum / Schedule | N/A | 601 Riverside Ave, Jacksonville, FL 32204 | LB |
| Fidelity Information Services | CON00000028744 | $0.00 | TBD | N/A | N/A | LB Holding Inc. |
| FIDELITY INFORMATION SERVICES | CON00000025316 | $0.00 | Other | N/A | 601 Riverside Ave, Jacksonville, FL 32204 one F.N.B. Boulevard, Hermitage, PA 16148 | N/A |
| FIDELITY NATIONAL INFORMATION SERVICES | CON00000021799 | $0.00 | Side Letter | Marsha Currie | one F.N.B. Boulevard, Hermitage, PA 16148 | Lehman Brothers |
| FIDELITY NATIONAL INFORMATION SERVICES | CON00000023786 | $0.00 | Side Letter | Marsha Currie | one F.N.B. Boulevard, Hermitage, PA 16148 | Lehman Brothers |
| FIDELITY-INFORMATION SERVICES | CON00000012625 | $0.00 | Master Agreement | N/A | one F.N.B. Boulevard, Hermitage, PA 16148 | Unknown |
| FINANCIAL ENGINEERING ASSOCIATES, INC | CON00000020393 | $0.00 | Master Agreement | N/A | 2100 Milvia St., Berkeley, California 94704-1113 | LB Holdings Inc |
| FUJITSU | 004130-LEHTK-2004 | $0.00 | Standalone Agreement | N/A | 4-1-1 Kamikodanaka, Kawasaki, Kanagawa, 211-8588 JAPAN | N/A |
| FUJITSU | 004251-LEHTK-2004 | $0.00 | Standalone Agreement | N/A | 4-1-1 Kamikodanaka, Kawasaki, Kanagawa, 211-8588 JAPAN | N/A |
| GALATEA ASSOCIATES, LLC | CON00000023797 | $0.00 | | | 20 Holland St. Suite 405 Somerville, MA 02144 | LBHI |
| GALATEA ASSOCIATES, LLC | CON00000023798 | $0.00 | | | 20 Holland St. Suite 405 Somerville, MA 02144 | LBHI |
| GALATEA ASSOCIATES, LLC | CON00000025890 | $0.00 | | | 20 Holland St. Suite 405 Somerville, MA 02144 | LBHI |
| GLOBAL RESEARCH DISTRIBUTION | CON00000027923 | $0.00 | | | 128 West 28th Street New York, NY 10001 | LBHI |

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| GLOBAL RESEARCH DISTRIBUTION | CON0000027924 | $0.00 | | | 128 West 26th Street New York, NY 10001 | LBHI |
| GLOBAL RESEARCH DISTRIBUTION | CON0000027925 | $0.00 | | | 128 West 26th Street New York, NY 10001 | LBHI |
| GREYWARE AUTOMATION PRODUCTS | CON0000019417 | $0.00 | | | 3300 Big Horn Trail, Plano TX 75075 | LBHI |
| GREYWARE AUTOMATION PRODUCTS | CON0000019418 | $0.00 | | | 3300 Big Horn Trail, Plano TX 75075 | LBHI |
| GREYWARE AUTOMATION PRODUCTS | CON0000024804 | $0.00 | | | 3300 Big Horn Trail, Plano TX 75075 | LBHI |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                :

**In re**                            :       **Chapter 11 Case No.**

                                :

**LEHMAN BROTHERS HOLDINGS INC.,**  :      **08-13555 (JMP)**
*et al.*                         :

           **Debtors.**               :       **(Jointly Administered)**

                                :

-------------------------------------------------------------x

## SECOND OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

        **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

        **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

        **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

        **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]    For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "<u>Objection Notice Parties</u>") no later than ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: October 6, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: /s/ Lindsee P. Granfield
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

3

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| GROUP 1 SOFTWARE | CON000000004953 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000004954 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000023248 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000024766 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000028669 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000028992 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000028993 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000029065 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| GROUP 1 SOFTWARE | CON000000029066 | $0.00 | | | 4200 Parliament Place Suite 600 Lanham MD | LBHI |
| IESMARTSYSTEMS, LLC | CON000000028721 | $0.00 | Master Agreement | No contact | ieSmartSystems, LLC 15200 E. Hardy Street Houston, TX 77032 | LBHI |
| IESMARTSYSTEMS, LLC | CON000000028975 | $0.00 | Transaction Schedule | No contact | ieSmartSystems, LLC 15200 E. Hardy Street Houston, TX 77032 | LBHI |
| Incipient, Inc. | CON000000028510 | $0.00 | Trial | N/A | 220 3RD AVE, Waltham, MA 02451 | LBHI |
| INFOHRM GROUP INC | CON000000028824 | $0.00 | Master Agreement | N/A | The Infohrm Group, Inc 1023 15th St. NW, Level 9, Washington DC 20005 | LBHI |
| INFOHRM GROUP INC | CON000000028756 | $0.00 | Supplement | N/A | The Infohrm Group, Inc 1023 15th St. NW, Level 9, Washington DC 20006 | LBHI |
| INFOSOL, INC. | CON000000031032 | $0.00 | Maintenance Renewal Quote | N/A | InfoSol Inc 1831W. Rose Garden Lane, Suite B, Phoenix, AZ 85029 | Lehman Brothers |
| INNOVATION DATA PROCESSING INC | CON000000028556 | $0.00 | Amendment / Addendum / Schedule | NA | 275 Paterson Avenue, Little Falls, NJ 07424 | NA |
| INOVA SOLUTIONS, INC | CON000000014843 | $0.00 | Master Agreement | Lehman Brothers Inc. | 110 Avon Street, Charlottesville, VA 22902 | NA |
| INSTANT INFOSYSTEMS | CON000000021152 | $0.00 | Master Agreement | NA | 20000 Mariner Ave., STE 250, Torrance, CA 90503 | Lehman Brothers Holdings Inc. |
| INSTANT INFOSYSTEMS | CON000000021153 | $0.00 | Professional and Consulting | NA | 20000 Mariner Ave., STE 250, Torrance, CA 90503 | Lehman Brothers Holdings Inc. |
| INSTITUTIONAL INVESTOR | CON000000021092 | $0.00 | Amendment / Addendum / Schedule | Lehman Brothers Holdings Inc. | 225 Park Avenue South, New York, NY 10003 | NA |
| INSTITUTIONAL INVESTOR | CON000000022093 | $0.00 | Amendment / Addendum / Schedule | Lehman Brothers Holdings Inc. | 225 Park Avenue South, New York, NY 10003 | NA |
| INTERNET SECURITY SYSTEMS INC | CON000000011443 | $0.00 | Trial | Lehman Brothers Inc. | 600 Peachtree Dunwoody Road NE, 300 Embassy Row, Suite 500, Atlanta, GA 30328 | NA |
| INTERNET SECURITY SYSTEMS INC | CON000000027279 | $0.00 | Maintenance Renewal Quote | Lehman Brothers Inc. | 600 Peachtree Dunwoody Road NE, 300 Embassy Row, Suite 500, Atlanta, GA 30328 | NA |
| INTERNET SECURITY SYSTEMS INC | CON000000022287 | $0.00 | Maintenance Renewal Quote | Lehman Brothers Inc. | 600 Peachtree Dunwoody Road NE, 300 Embassy Row, Suite 500, Atlanta, GA 30328 | NA |
| Internet Security Systems, Inc. | 11440 | $0.00 | | Jon Ver Steeg Internet Security Systems, Inc. | 600 Peachtree Dunwoody Road NE, 300 Embassy Row, Suite 500, Atlanta, GA 30328 | LBHI |
| ITECH US, INC. | CON000000019475 | $0.00 | Master Agreement | No contact | 20 Kimball Ave.  Suite: 303N, S. Burlington VT 05403 | Lehman Brothers Holdings Inc. |

| Vendor Name+ | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| ITECH US, INC. | CON000000021512 | $0.00 | Supplement | No contact | 20 Kimball Ave., Suite: 303N, S. Burlington VT 05403 | Lehman Brothers Holdings Inc. |
| IVAR JACOBSON CONSULTING, LLC | CON000000021775 | $0.00 | Master Agreement | No contact | 36 Alexandar Street Alexandria, VA 22314 | LBHI |
| IVAR JACOBSON CONSULTING, LLC | CON000000021776 | $0.00 | Professional and Consulting | No contact | 36 Alexandar Street Alexandria, VA 22314 | LBHI |
| IXIA | CON000000022256 | $0.00 | Maintenance Renewal Quote | No contact | Ixia Worldwide 26601 West Agoura Road Calabasas, CA 91302 | Lehman Brothers |
| JadeLiquid | CON000000019296 | $0.00 | Maintenance Renewal Quote | Anthony Scotney | 301 Sandy Bay Road, Tasmania, Australia 7005 | LBHI |
| JadeLiquid | CON000000022712 | $0.00 | Maintenance Renewal Quote | Anthony Scotney | 301 Sandy Bay Road, Tasmania, Australia 7005 | LBHI |
| JCB PARTNERS | CON000000028805 | $0.00 | Master Agreement | N/A | 1050 17th Street, Suite 1710 Denver CO 80265 | LBHI |
| JCB PARTNERS | CON000000028806 | $0.00 | Transaction Schedule | N/A | 1050 17th Street, Suite 1710 Denver CO 80265 | LBHI |
| KELLY, LEGAN & GERARD, INC. | CON000000026351 | $0.00 | Master Agreement | General Council | 104 Fifth Ave, 19th Floor New York, NY 10011 | Unknown |
| Kelly, Legan & Gerard, Inc. | CON000000026352 | $0.00 | Supplement | General Council | 104 Fifth Ave, 19th Floor New York, NY 10011 | Unknown |
| KEYNOTE SYSTEMS, INC. | CON000000011421 | $0.00 | Master Agreement | Gena marrs, Assitant Contracts Administrator | 777 Mariners Island Blvd., San Mateo, CA 94404 | Unknown |
| KEYNOTE SYSTEMS, INC. | CON000000028735 | $0.00 | Amendment / Addendum / Schedule | Gena marrs, Assitant Contracts Administrator | 777 Mariners Island Blvd., San Mateo, CA 94404 | Unknown |
| KLD RESEARCH AND ANALYTICS INC | CON000000024135 | $0.00 | Amendment / Addendum / Schedule | Unknown | 250 Summer Street, 4th Floor, Boston, MA 02110 | Unknown |
| KLD RESEARCH AND ANALYTICS INC | CON000000025082 | $0.00 | Amendment / Addendum / Schedule | Unknown | 250 Summer Street, 4th Floor, Boston, MA 02110 | Unknown |
| KLD RESEARCH AND ANALYTICS INC | CON000000027687 | $0.00 | Amendment / Addendum / Schedule | Unknown | 250 Summer Street, 4th Floor, Boston, MA 02110 | Unknown |
| LAB ESCAPE, INC. | CON000000024573 | $0.00 | Master Agreement | LAB ESCAPE, INC. | 1465 Sand Hill Road, Suite 2052, Candler, NC 28715 | Lehman Brothers Holdings Inc. |
| LAB ESCAPE, INC. | CON000000024575 | $0.00 | Supplement | LAB ESCAPE, INC. | 1465 Sand Hill Road, Suite 2052, Candler, NC 28715 | Lehman Brothers Holdings Inc. |
| LATENTZERO INC | CON000000022257 | $0.00 | Amendment / Addendum / Schedule | n/a | 159 Federal Street, Boston MA 02110 | n/a |
| Levi, ray & Shoup, Inc. | 23384 | $0.00 | | Levi, Ray & Shoup, Inc. | 2401 West Monroe Street Springfield, IL 62704 | Lehman Bros. |
| Longview of America | CON000000022483 | $0.00 | TBD | Longview of America | 161 Washington Street, Suite 750, Conshohocken, PA 19428 | Lehman Brothers Holdings Inc. |
| Longview of America | CON000000022484 | $0.00 | TBD | Longview of America | 161 Washington Street, Suite 750, Conshohocken, PA 19428 | Lehman Brothers Holdings Inc. |
| Longview of America | CON000000022486 | $0.00 | TBD | Longview of America | 161 Washington Street, Suite 750, Conshohocken, PA 19428 | Lehman Brothers Holdings Inc. |
| Longview of America | CON000000022488 | $0.00 | TBD | Longview of America | 161 Washington Street, Suite 750, Conshohocken, PA 19428 | Lehman Brothers Holdings Inc. |
| Longview of America | CON000000022489 | $0.00 | TBD | Longview of America | 161 Washington Street, Suite 750, Conshohocken, PA 19428 | Lehman Brothers Holdings Inc. |

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| M.A. PARTNERS, LLC | CON000000019437 | $0.00 | Master Agreement | Operations Department | 330 Madison Avenue, 9th floor, New York, NY 10017 | LBHI |
| M.A. PARTNERS, LLC | CON000000019438 | $0.00 | Professional and Consulting | not listed | 330 Madison Avenue, 9th floor, New York, NY 10017 | LBHI |
| MAINSTAR SOFTWARE CORPORATION | CON000000023926 | $0.00 | Maintenance Renewal Quote | | PO Box 4132, Bellevue, WA 98009 | Unknown |
| MDY ADVANCED TECHNOLOGIES INC | CON000000012845 | $0.00 | Master Agreement | not listed | 21-00 Route 208, South Fair lawn, NJ 07410 | LBHI |
| MDY ADVANCED TECHNOLOGIES INC | CON000000022205 | $0.00 | Amendment / Addendum / Schedule | unknown | 21-00 Route 208, South Fair lawn, NJ 07410 | unknown |
| Mega International | 22929 | $0.00 | | Mega International | 2 Commercial Street Sharon Commerce Center Sharon, MA 02067 | LBHI; PLTS-1 is with LBI |
| MEGA INTERNATIONAL | CON000000022929 | $0.00 | Master Agreement | | 2 Commercial Street Sharon Commerce Center Sharon, MA 02067 | Unknown |
| MEGA INTERNATIONAL | CON000000022930 | $0.00 | Supplement | | 2 Commercial Street Sharon Commerce Center Sharon, MA 02067 | Unknown |
| MEGA INTERNATIONAL | CON000000022931 | $0.00 | Supplement | | 2 Commercial Street Sharon Commerce Center Sharon, MA 02067 | Unknown |
| MEGA INTERNATIONAL | CON000000023059 | $0.00 | Transaction Schedule | | 2 Commercial Street Sharon Commerce Center Sharon, MA 02067 | Unknown |
| MEGA INTERNATIONAL | CON000000023320 | $0.00 | Transaction Schedule | | 2 Commercial Street Sharon Commerce Center Sharon, MA 02067 | Unknown |
| MILLIMAN, INC. | CON000000023041 | $0.00 | Master Agreement | Melinda Wilson | 150 Field Drive, Suite 180, Lake Forest, II 60045 | Lehman Brothers |
| MILLIMAN, INC. | CON000000030653 | $0.00 | Master Agreement | Melinda Wilson | 150 Field Drive, Suite 180, Lake Forest, II 60045 | Lehman Brothers |
| MORSE GROUP LIMITED | 1000-1-EHUK-2002 | $0.00 | TBD | | MORSE GROUP LIMITED, 19 Beford Square London WC1B 3HH | N/A |
| MORSE GROUP LIMITED | CON000000023791 | $0.00 | Amendment / Addendum / Schedule | | MORSE GROUP LIMITED, 19 Beford Square London WC1B 3HH | N/A |
| Muller Data Corporation | CON000000023546 | $0.00 | Master Agreement | N/A | 22 Crosby Drive, Bedford, MA | N/A |
| Nansco Inc. | CON000000028437 | $0.00 | Master Agreement | Scott Kornbluth and Nansco Inc | 3481 Manchester Road,Wantagh, NY 11793 | LBHI |
| Nansco Inc. | CON000000028437 | $0.00 | Master Agreement | Scott Kornbluth and Nansco Inc | 3481 Manchester Road,Wantagh, NY 11793 | LBHI |
| Nansco Inc. | CON000000028465 | $0.00 | Transaction Schedule | Scott Kornbluth and Nansco Inc | 3481 Manchester Road,Wantagh, NY 11793 | LBHI |
| Nansco Inc. | CON000000028465 | $0.00 | Transaction Schedule | Scott Kornbluth and Nansco Inc | 3481 Manchester Road,Wantagh, NY 11793 | LBHI |
| National Software Escrow Agreement | CON000000028825 | $0.00 | Other | | national software escrow inc, 7005 mill road, brecksville ohio, 44141 | Lehman Brothers |
| National Software Escrow Agreement | CON000000028825 | $0.00 | Other | | national software escrow inc, 7005 mill road, brecksville ohio, 44141 | Lehman Brothers |
| National Software Escrow Agreement | CON000000028823 | $0.00 | Standalone Agreement | | national software escrow inc, 7005 mill road, brecksville ohio, 44141 | Unknown |
| NCR CORPORATION | 004024-LEHNY-2005 | $0.00 | Master Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | LBHI |
| NCR CORPORATION | 004024-LEHNY-2005 | $0.00 | Master Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | LBHI |
| NCR CORPORATION | CON000000024569 | $0.00 | Standalone Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |
| NCR CORPORATION | CON000000024569 | $0.00 | Standalone Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |
| NCR CORPORATION | CON000000024570 | $0.00 | Standalone Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |
| NCR CORPORATION | CON000000024570 | $0.00 | Standalone Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |

| Vendor Name+ | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| NCR CORPORATION | CON000000024571 | $0.00 | Maintenance Renewal Quote | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |
| NCR CORPORATION | CON000000024571 | $0.00 | Maintenance Renewal Quote | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |
| NCR CORPORATION | CON000000003422 | $0.00 | Standalone Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |
| NCR CORPORATION | CON000000003422 | $0.00 | Standalone Agreement | | NCR Corporation, 1700 S Patterson blvd, Dayton, Oh, 45479 | Unknown |
| NEOSCAPE, INC. | CON000000022564 | $0.00 | Master Agreement | | Neoscape Inc, 330 congress street, Boston, MA 02210 | LBHI |
| NEOSCAPE, INC. | CON000000022564 | $0.00 | Master Agreement | | Neoscape Inc, 330 congress street, Boston, MA 02210 | LBHI |
| NESS GLOBAL SERVICE, INC. | CON000000011662 | $0.00 | Master Agreement | | Ness Global services, Inc US Corporation, 160 technology Drive, Canonsburg , PA 15317 | LBHI |
| NESS GLOBAL SERVICE, INC. | CON000000011662 | $0.00 | Master Agreement | | Ness Global services, Inc US Corporation, 160 technology Drive, Canonsburg , PA 15317 | LBHI |
| NESS GLOBAL SERVICE, INC. | CON000000011743 | $0.00 | Amendment / Addendum / Schedule | | Ness Global services, Inc US Corporation, 160 technology Drive, Canonsburg , PA 15317 | LBHI |
| NESS GLOBAL SERVICE, INC. | CON000000011743 | $0.00 | Amendment / Addendum / Schedule | | Ness Global services, Inc US Corporation, 160 technology Drive, Canonsburg , PA 15317 | LBHI |
| NESS GLOBAL SERVICE, INC. | CON000000013479 | $0.00 | Master Agreement | | Ness Global services, Inc US Corporation, 160 technology Drive, Canonsburg , PA 15317 | Unknown |
| NESS GLOBAL SERVICE, INC. | CON000000013479 | $0.00 | Master Agreement | | Ness Global services, Inc US Corporation, 160 technology Drive, Canonsburg , PA 15317 | Unknown |
| NetEffect Inc. | CON000000024004 | $0.00 | Trial | | NetEffect Inc, 9211 waterford center blvd, austin, tx 78758 | LBHI |
| NetEffect Inc. | CON000000024004 | $0.00 | Trial | | NetEffect Inc, 9211 waterford center blvd, austin, tx 78758 | LBHI |
| NetEffect Inc. | CON000000024005 | $0.00 | Trial | | NetEffect Inc, 9211 waterford center blvd, austin, tx 78758 | LBHI |
| NetEffect Inc. | CON000000024005 | $0.00 | Trial | | NetEffect Inc, 9211 waterford center blvd, austin, tx 78758 | LBHI |
| NEW GENERATIONS SOFTWARE | CON000000028353 | $0.00 | Maintenance Renewal Quote | | New Generation Software Inc, 3835 north freeway blvd, Suite 200, sacremento CA 95834 | Unknown |
| NEW GENERATIONS SOFTWARE | CON000000028353 | $0.00 | Maintenance Renewal Quote | | New Generation Software Inc, 3835 north freeway blvd, Suite 200, sacremento CA 95834 | Unknown |
| NEXTEL COMMUNICATIONS | CON000000011347 | $0.00 | Master Agreement | | 6200 Sprint Pkwy, Overland Park, KS 66251 | Unknown |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                    :

**In re**                              :         **Chapter 11 Case No.**
                                      :

**LEHMAN BROTHERS HOLDINGS INC.,**  :        **08-13555 (JMP)**
*et al.*                                 :
          **Debtors.**                    :        **(Jointly Administered)**
                                      :

------------------------------------------------------------x

## THIRD OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

          **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

          **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

          **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

          **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]     For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "<u>Objection Notice Parties</u>") no later than ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: October 6, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: /s/ Lindsee P. Granfield
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

3

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| NSE.IT LIMITED | CON000000020644 | $0.00 | Amendment / Addendum / Schedule | | National Stock Exchange of India Ltd., Mumbai 400 051 India | Unknown |
| NSE.IT LIMITED | CON000000020645 | $0.00 | Supplement | | National Stock Exchange of India Ltd., Mumbai 400 051 India | Unknown |
| NSE.IT LIMITED | CON000000021664 | $0.00 | Master Agreement | | National Stock Exchange of India Ltd., Mumbai 400 051 India | Unknown |
| NSE.IT LIMITED | CON000000029919 | $0.00 | TBD | | National Stock Exchange of India Ltd., Mumbai 400 051 India | Unknown |
| OPEX CORPORATION | CON000000024516 | $0.00 | Amendment / Addendum / Schedule | | 305 Commerce Dr., Moorestown, NJ 08057 4234 | Unknown |
| OPEX CORPORATION | CON000000024624 | $0.00 | Amendment / Addendum / Schedule | | 305 Commerce Dr., Moorestown, NJ 08057 4234 | Unknown |
| PCS | CON000000022402 | $0.00 | Master Agreement | no attachment | 8682 Beach Blvd Ste 101B, Buena Park, CA 90620 | Unknown |
| PCS | CON000000022403 | $0.00 | Supplement | No attachment | 8682 Beach Blvd Ste 101B, Buena Park, CA 90620 | Unknown |
| Pebble Beach Resorts | | $15,000.00 | Contract: 2008 Economic Forum | Ann McAuliffe, Director of Sales | c/o The Inn at Spanish Bay, 2700 17 Mile Drive, Pebble Beach, CA 93953 | Lehman Brothers |
| Pebble Beach Resorts | | $5,000.00 | Contract: 2009 Economic Forum | Ann McAuliffe, Director of Sales | c/o The Inn at Spanish Bay, 2700 17 Mile Drive, Pebble Beach, CA 93953 | Lehman Brothers |
| Phi Software Inc. | CON000000027458 | $0.00 | Master Agreement | Nicholas Antzoulis | 138 Lookout Road, Mountain Lakes, New Jersey 07046 | LBHI |
| Portfolio Analytics Inc. | CON000000024466 | $0.00 | Master Agreement | | 1802 State Route 31, Unit 386, Clinton, NJ 08809 | LBHI |
| Portfolio Analytics Inc. | CON000000024466 | $0.00 | Supplement | | 1802 State Route 31, Unit 386, Clinton, NJ 08809 | LBHI |
| PREMIER PARTNERS INC | 001053-LEHNY-2005 | $0.00 | Master Agreement | | 48 Woodport Road, Second Floor, Sparta, NJ 07871 | Unknown |
| PREMIER PARTNERS INC | 00491R-LEHNY-2005 | $0.00 | Master Agreement | | 48 Woodport Road, Second Floor, Sparta, NJ 07871 | Unknown |
| PRENAX INC | CON000000028957 | $0.00 | Master Agreement | | 10 Ferry Street, Suite 429, Concord, NH 03301 | Unknown |
| PRENAX INC | CON000000030132 | $0.00 | Side Letter | | 10 Ferry Street, Suite 429, Concord, NH 03301 | Unknown |
| PRENAX UK LTD | CON000000025802 | $0.00 | TBD | | Prenax Ltd., 12 Oval Road, London NW1 7DH | Unknown |
| Primeon Inc* | CON000000022240 | $0.00 | Master Agreement | | 18 Commerce Way, Woburn, MA 01801 | Unknown |
| Primeon Inc* | CON000000030600 | $0.00 | Master Agreement | | 18 Commerce Way, Woburn, MA 01801 | Unknown |
| Professional Computer Services | CON000000022404 | $0.00 | Transaction Schedule | | 27 22nd St E, Dickinson, ND 58601 | Unknown |
| Professional Computer Services | CON000000027456 | $0.00 | Master Agreement | | 27 22nd St E, Dickinson, ND 58601 | Unknown |
| Professional Computer Services | CON000000027457 | $0.00 | Transaction Schedule | | 27 22nd St E, Dickinson, ND 58601 | Unknown |
| PSI DATA SYSTEMS LIMITED | CON000000019466 | $0.00 | Master Agreement | | Sunningdale Embassy Golf Links Business Park, Intermediate Ring Road, Bangalore, 560 071, India | Unknown |
| PSI DATA SYSTEMS LIMITED | CON000000019467 | $0.00 | Other | | Sunningdale Embassy Golf Links Business Park, Intermediate Ring Road, Bangalore, 560 071, India | Unknown |
| PYXIS MOBILE, INC. | CON000000021524 | $0.00 | Master Agreement | | 1601 Trapelo Road, Waltham, MA. 02451 | Unknown |
| PYXIS MOBILE, INC. | CON000000025083 | $0.00 | Supplement | | 1601 Trapelo Road, Waltham, MA. 02451 | Unknown |
| PYXIS MOBILE, INC. | CON000000025084 | $0.00 | Supplement | | 1601 Trapelo Road, Waltham, MA. 02451 | Unknown |
| PYXIS MOBILE, INC. | CON000000027593 | $0.00 | Transaction Schedule | | 1601 Trapelo Road, Waltham, MA. 02451 | Unknown |
| PYXIS MOBILE, INC. | CON000000027989 | $0.00 | Supplement | | 1601 Trapelo Road, Waltham, MA. 02451 | Unknown |
| Q2 Strategies, LLC | CON000000021465 | $0.00 | Master Non-IT | Q2 Strategies, LLC | 500 W 56th St Suite 1113, NY NY 10019 | LBHI |
| Q2 Strategies, LLC | CON000000021465 | $0.00 | Master Non-IT TS | Q2 Strategies, LLC | 501 W 56th St Suite 1113, NY NY 10019 | LBHI |

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| Q2 Strategies, LLC | CON000000031224 | $0.00 | Master TS #1 | Q2 Strategies, LLC | 502 W 56th St Suite 1113, NY NY 10019 | LBHI |
| Rational Consulting | CON000000028655 | $0.00 | | | 807 Davis Street, Unit 503 Evanston, IL 60201 | LBHI |
| Rational Consulting | CON000000026877 | $0.00 | | | 807 Davis Street, Unit 503 Evanston, IL 60201 | LBHI |
| Rational Consulting | CON000000026976 | $0.00 | | | 807 Davis Street, Unit 503 Evanston, IL 60201 | Not Specified |
| RCG INFORMATION TECHNOLOGY, INC. | CON000000032818 | $0.00 | | | 55 Broad Street NY, NY 10004 | LBHI |
| RESONATE INC | CON000000023491 | $0.00 | | | 385 Moffett Park Drive Sunnyvale, CA 94089 Attn: General Counsel | Unknown |
| RIDGE TECHNOLOGIES | 004376-LEHNY-2005 | $0.00 | | | 14 Aquarium Drive Secaucus, NJ 07094 | Unknown |
| RIDGE TECHNOLOGIES | 005010-LEHNY-2005 | $0.00 | | | 1111 Secaucus Rd Secaucus, NJ 07094 | Unknown |
| RIDGE TECHNOLOGIES | 005011-LEHNY-2005 | $0.00 | | | 1111 Secaucus Rd Secaucus, NJ 07094 | Unknown |
| ROBERT DERECTOR ASSOCIATES | CON000000011553 | $0.00 | | | 19 West 44th St. 10th Floor NY, NY 10035 | LBHI |
| ROBERT DERECTOR ASSOCIATES | CON000000022152 | $0.00 | | | 19 West 44th St. 10th Floor NY, NY 10035 | LBHI |
| SAGE SOFTWARE, INC | N/A | $0.00 | Trial | Sage Software, Inc. | 15195 NW Greenbrier Parkway, Beaverton, OR 97006 | Unknown |
| Sage Software, Inc. | | $0.00 | | | 8800 North Gainey Center Drive, Scottsdale, AZ | LBHI |
| SCIENTIFIC COMPUTING ASSOC INC | CON000000027357 | $0.00 | Standalone Agreement | | One Century Tower, New Haven, CT 06510 | N/A |
| SCIENTIFIC COMPUTING ASSOC INC | CON000000031139 | $0.00 | TBD | | One Century Tower, New Haven, CT 06510 | N/A |
| SELECT MINDS | CON000000022486 | $0.00 | Amendment / Addendum / Schedule | | SelectMinds Inc. 149 5th Ave 8th Floor NY, NY 10010 | Lehman Brothers Holdings, Inc. |
| SELECT MINDS | CON000000023388 | $0.00 | Master Agreement | | SelectMinds Inc. 149 5th Ave 8th Floor NY, NY 10010 | Lehman Brothers Holdings, Inc. |
| SGP INTERNATIONAL, INC. | CON000000013587 | $0.00 | Master Agreement | | SGP International, Inc. 16 East 40th St New York, NY 10016 | Lehman Brothers Holdings Inc. |
| SGP INTERNATIONAL, INC. | CON000000013588 | $0.00 | Supplement | | SGP International, Inc. 16 East 40th St New York, NY 10016 | Lehman Brothers Holdings Inc. |
| SGP INTERNATIONAL, INC. | CON000000013589 | $0.00 | Amendment / Addendum / Schedule | | SGP International, Inc. 16 East 40th St New York, NY 10016 | N/A |
| SHERPA SOFTWARE PARTNERS | CON000000032400 | $0.00 | Trial | | Sherpa Software Partners LP 1300 Old Pond Road Bridgeville, PA 15017 | Lehman Brothers Holdings Inc. |

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| SHERPA SOFTWARE PARTNERS | CON000000022836 | $0.00 | Master Agreement | | Sherpa Software Partners LP 1300 Old Pond Road Bridgeville, PA 15017 | Lehman Brothers Holdings Inc. |
| SHERPA SOFTWARE PARTNERS | CON000000022837 | $0.00 | Supplement | | Sherpa Software Partners LP 1300 Old Pond Road Bridgeville, PA 15017 | N/A |
| STATPRO, INC. | CON000000022859 | $0.00 | | | 255 Magdalen Road Earlsfield London SW18 3PA | Unknown |
| STATPRO, INC. | CON000000023102 | $0.00 | | | 255 Magdalen Road Earlsfield London SW18 3PA | Unknown |
| STATPRO, INC. | CON000000023132 | $0.00 | | | 255 Magdalen Road Earlsfield London SW18 3PA | Unknown |
| STATPRO, INC. | CON000000024376 | $0.00 | | | 255 Magdalen Road Earlsfield London SW18 3PA | Unknown |
| STEALTHBITS TECHNOLOGIES, INC. | CON000000020663 | $0.00 | | | 55 Harristown Road Glen Rock NJ 07452 | Unknown |
| STEALTHBITS TECHNOLOGIES, INC. | CON000000021216 | $0.00 | | | 55 Harristown Road Glen Rock NJ 07452 | Unknown |
| STEALTHBITS TECHNOLOGIES, INC. | CON000000021917 | $0.00 | | | 55 Harristown Road Glen Rock NJ 07452 | Unknown |
| STEALTHBITS TECHNOLOGIES, INC. | CON000000027163 | $0.00 | | | 55 Harristown Road Glen Rock NJ 07452 | Unknown |
| STERLING COMMERCE INC. | 10170-LEHUK-2002 | $0.00 | | | 4600 Lakehurst Court, Dublin, OH 43016-2000 | Unknown |
| STORAGE TECHNOLOGY CORP | CON000000023292 | $0.00 | | | One StorageTek Drive Louisville CO 80028-4309 | Unknown |
| STORAGE TECHNOLOGY CORP | CON000000028308 | $0.00 | | John L. Backust | One StorageTek Drive Louisville CO 80028-4309 | Unknown |
| STRATEGIC SYSTEMS SOLUTIONS LTD | CON000000021460 | $0.00 | | | 10h Floor Silkhouse Court 7-17 Tithebarn Street Liverpool L2 2LZ | Unknown |
| STRATEGIC SYSTEMS SOLUTIONS, INC. | CON000000021913 | $0.00 | | | 113 Rock Road, Horsham PA 19044 | Unknown |
| STRATEGIC SYSTEMS SOLUTIONS, INC. | CON000000021914 | $0.00 | | | 113 Rock Road, Horsham PA 19044 | Unknown |
| STRATEGIC SYSTEMS SOLUTIONS, INC. | CON000000029518 | $0.00 | | | 113 Rock Road, Horsham PA 19044 | Unknown |
| Studio 1440 | CON000000028764 | $0.00 | | | 762 Brookshade Parkway Alpharetta GA 30004 | Unknown |
| Studio 1440 | CON000000028756 | $0.00 | | | 762 Brookshade Parkway Alpharetta GA 30004 | Unknown |
| Studio 1440 | CON000000028758 | $0.00 | | | 762 Brookshade Parkway Alpharetta GA 30004 | Unknown |
| SYNCSORT INC. | CON000000028376 | $0.00 | | Contracts Administration Department | 50 Tice Boulevard Woodcliff NJ 07677 | Unknown |
| SYNCSORT INC. | CON000000028378 | $0.00 | | Contracts Administration Department | 50 Tice Boulevard Woodcliff NJ 07677 | Unknown |
| SYNCSORT INC. | CON000000027534 | $0.00 | | Contracts Administration Department | 50 Tice Boulevard Woodcliff NJ 07677 | Unknown |
| SYSTEMS MANAGEMENT INTERNATIONAL | 004280-LEHNY-2004 | $0.00 | | Steve Dossett | Baltic House Kingston Crescent Portsmouth Hants Po2 8QL | Unknown |
| SYSTEMS MANAGEMENT INTERNATIONAL LLC | CON000000028358 | $0.00 | | Steve Dossett | Baltic House Kingston Crescent Portsmouth Hants Po2 8QL | Unknown |
| T ZERO PROCESSING SERVICES, LLC | CON000000019509 | $0.00 | TBD | Jennifer Collet | 875 Third Avenue, 29th Floor NY NY 10022 | Lehman Brothers Holdings Inc |
| T ZERO PROCESSING SERVICES, LLC | 001425-LEHNY-2006 | $0.00 | Master Agreement | Clive de Ruig | 875 Third Avenue, 29th Floor NY NY 10022 | N/A |
| T ZERO PROCESSING SERVICES, LLC | 001599-LEHNY-2006 | $0.00 | Master Agreement | Clive de Ruig | 875 Third Avenue, 29th Floor NY NY 10022 | N/A |

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| Tabula Rosa Systems* | CON000000227652 | $0.00 | Trial | Paul J Babicki | 17 Cedar lane Titusville, NJ 08560 | Lehman Brothers Holdings Inc |
| TALKPOINT COMMUNICATIONS | 001280-LEHNY-2006 | $0.00 | Trial | Brian Iehon | 100 william St, 9th Fl, NY, Ny 10038 | Lehman Brothers Holdings Inc |
| TALKPOINT COMMUNICATIONS | CON000000227658 | $0.00 | Master Agreement | N/A | 100 william St, 9th Fl, NY, Ny 10038 | Lehman Brothers Holdings Inc |
| TALKPOINT COMMUNICATIONS | CON000000227340 | $0.00 | Supplement | N/A | 100 william St, 9th Fl, NY, Ny 10038 | Lehman Brothers Holdings Inc |
| TECHNO-COMP INC. | CON000000224166 | $0.00 | Master Agreement | N/A | One Executive Drive, Suite 250, Somerset, NJ 08873 | Lehman Brothers Holdings Inc |
| TECHNO-COMP INC. | CON000000224167 | $0.00 | Supplement | N/A | One Executive Drive, Suite 250, Somerset, NJ 08873 | Lehman Brothers Holdings Inc |
| TELEKURS (UK) LTD | CON000000221359 | $0.00 | TBD | N/A | 15 Appold Street, London, EC2A 2NE | Lehman Brothers |
| TELMEX USA, LLC | CON000000229662 | $0.00 | Amendment / Addendum / Schedule | N/A | 3350 SW 148 Avenue, Miramar, FL 33027 | Lehman Brothers Holdings Inc |
| TELMEX USA, LLC | CON000000228480 | $0.00 | Master Agreement | N/A | 3350 SW 148 Avenue, Miramar, FL 33027 | N/A |
| TERMA SOFTWARE | CON000000013694 | $0.00 | Master Agreement | N/A | 4430 Arapahoe Avenue, Suite 120, Boulder CO, 80303 | Lehman Brothers Holdings Inc |
| TERMA SOFTWARE | CON000000222536 | $0.00 | Supplement | N/A | 4430 Arapahoe Avenue, Suite 120, Boulder CO, 80303 | Lehman Brothers Holdings Inc |
| TERMA SOFTWARE | CON000000222537 | $0.00 | Transaction Schedule | N/A | 4430 Arapahoe Avenue, Suite 120, Boulder CO, 80303 | Lehman Brothers Holdings Inc |
| TRADE SETTLEMENT INC. | CON000000019543 | $0.00 | Supplement | | 27 West 24th street, Suite 405 New York, NY, 10010 | LBHI |
| TRADE SETTLEMENT INC. | CON000000224132 | $0.00 | TBD | | 27 West 24th street, Suite 405 New York, NY, 10010 | Unknown |
| TRAIANA INC | CON000000229971 | $0.00 | TBD | N/A | 51 East 42nd St., 10th floor, New York, NY 10017 | N/A |
| TRAIANA INC | CON000000039208 | $0.00 | TBD | N/A | 51 East 42nd St., 10th floor, New York, NY 10017 | N/A |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                    :

In re                              :           Chapter 11 Case No.
                                      :

**LEHMAN BROTHERS HOLDINGS INC.,**   :          **08-13555 (JMP)**
*et al.*                               :

           **Debtors.**                :          **(Jointly Administered)**
                                      :

------------------------------------------------------------x

## FOURTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

        **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

        **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

        **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

        **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]     For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

1

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "Objection Notice Parties") no later than ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: October 6, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: /s/ Lindsee P. Granfield
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

3

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| TRANSACTION NETWORK SERVICES | CON000000023330 | $0.00 | Amendment / Addendum / Schedule | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES | CON000000024008 | $0.00 | Amendment / Addendum / Schedule | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES | CON000000025714 | $0.00 | Standalone Agreement | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES | CON000000027018 | $0.00 | Amendment / Addendum / Schedule | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES LTD | CON000000027483 | $0.00 | TBD | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES LTD | CON000000027555 | $0.00 | Amendment / Addendum / Schedule | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES LTD | CON000000028015 | $0.00 | TBD | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES LTD | CON000000028031 | $0.00 | TBD | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES LTD | CON000000028092 | $0.00 | TBD | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TRANSACTION NETWORK SERVICES LTD | CON000000028153 | $0.00 | Amendment / Addendum / Schedule | NA | 11480 Commerce Park Drive Suite 600, Reston, VA 20191 | Lehman Brothers |
| TREEHOUSE SOFTWARE INC | CON000000020282 | $0.00 | Master Agreement | NA | 400 Broad Street Sewickley, PA 15143 | Shearson Lehman Brothers Inc |
| TRIPLE CREEK ASSOCIATES, INC | 001325-LEHNY-2006 | $0.00 | Supplement | NA | 7730 E. Belleview Ave. Suite 200A; Greenwood Village, Co 80111 | LBHI |
| TRIPLE CREEK ASSOCIATES, INC | 001327-LEHNY-2006 | $0.00 | Master Agreement | NA | 7730 E. Belleview Ave. Suite 200A; Greenwood Village, Co 80111 | LBHI |
| Tri-Star Design, Inc. | CON000000023332 | $0.00 | Professional and Consulting | NA | 34 Hayden Rowe St, Suite 176, Hopkinton, MA 01748 | LBHI |
| Tri-Star Design, Inc. | CON000000023333 | $0.00 | Transaction Schedule | NA | 34 Hayden Rowe St, Suite 176, Hopkinton, MA 01748 | LBHI |
| Tri-Star Design, Inc. | CON000000023954 | $0.00 | Master Agreement | NA | 34 Hayden Rowe St, Suite 176, Hopkinton, MA 01748 | NA |
| TUFIN SOFTWARE | CON000000014746 | $0.00 | Amendment / Addendum / Schedule | | 5 Jabolinsky Street, Ramat Gan, 52520, Israel | LBHI |
| TUFIN SOFTWARE | CON000000014894 | $0.00 | Transaction Schedule | | 5 Jabolinsky Street, Ramat Gan, 52520, Israel | LBHI |
| TUFIN SOFTWARE | CON000000015867 | $0.00 | | | 5 Jabolinsky Street, Ramat Gan, 52520, Israel | LBHI |
| UBS Securities LLC* | CON000000026748 | $0.00 | Master Agreement | Head of Credit Fixed Income Distribution, UBS / Corporate Legal, UBS | 100 Liverpool Street, London, EC2M 2RH | LBHI |
| UBS Securities LLC* | CON000000026748 | $0.00 | Master Agreement | Head of Credit Fixed Income Distribution, UBS / Corporate Legal, UBS | 100 Liverpool Street, London, EC2M 2RH | Unknown |
| UBS Securities LLC* | CON000000026748 | $0.00 | Master Agreement | Head of Credit Fixed Income Distribution, UBS / Corporate Legal, UBS | 100 Liverpool Street, London, EC2M 2RH | Unknown |
| UBS Securities LLC* | CON000000026748 | $0.00 | Master Agreement | | 100 Liverpool Street, London, EC2M 2RH | Unknown |

| Vendor Name* | Agreement ID | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|---|
| UNIFORM INFORMATION SERVICES | CON000000012557 | CON000000012557 | $0.00 | Master Agreement | N/A | 1250 Route 28, Branchburg, NJ 08876 | N/A |
| UNIFORM INFORMATION SERVICES | CON000000012557 | CON000000012557 | $0.00 | Master Agreement | N/A | 1250 Route 28, Branchburg, NJ 08876 | Unknown |
| UNIFORM INFORMATION SERVICES | CON000000012557 | CON000000012557 | $0.00 | Master Agreement | N/A | 1250 Route 28, Branchburg, NJ 08876 | Unknown |
| UNIFORM INFORMATION SERVICES | CON000000012557 | CON000000012557 | $0.00 | Master Agreement | N/A | 1250 Route 28, Branchburg, NJ 08876 | Unknown |
| UNIMAX SYSTEMS CORPORATION | CON000000021139 | | $0.00 | Trial | N/A | 430 First Ave N., Suite 790, Minneapolis, MN 55401 | LBHI |
| UNIMAX SYSTEMS CORPORATION | CON000000021139 | | $0.00 | Trial | N/A | 430 First Ave N., Suite 790, Minneapolis, MN 55401 | Unknown |
| UNIMAX SYSTEMS CORPORATION | CON000000021139 | | $0.00 | Trial | N/A | 430 First Ave N., Suite 790, Minneapolis, MN 55401 | Unknown |
| UNIMAX SYSTEMS CORPORATION | CON000000021139 | | $0.00 | Trial | N/A | 430 First Ave N., Suite 790, Minneapolis, MN 55401 | Unknown |
| UTC ASSOCIATES, INC | CON000000014706 | | $0.00 | Master Agreement | N/A | 82 Wall St, Suite 7901-702, New York, NY 10005 | LBHI |
| UTC ASSOCIATES, INC | CON000000023079 | | $0.00 | Transaction Schedule | N/A | 82 Wall St, Suite 7901-702, New York, NY 10005 | LBHI |
| Valtera Corporation | CON000000020761 | | $0.00 | Master Agreement | N/A | 1701 Golf Road, 2-1100, Rolling Meadows, IL 60008 | LBHI |
| Valtera Corporation | CON000000021356 | | $0.00 | Amendment / Addendum / Schedule | N/A | 1701 Golf Road, 2-1100, Rolling Meadows, IL 60008 | LBHI |
| VALUEMOMENTUM, INC. | CON000000023984 | | $0.00 | Master Agreement | N/A | 3001 Hadley Road, Unit 8, South Plainfield, NJ 07080 | LBHI |
| VALUEMOMENTUM, INC. | CON000000023865 | | $0.00 | Supplement | N/A | 3001 Hadley Road, Unit 8, South Plainfield, NJ 07080 | LBHI |
| VERICEPT | CON000000019698 | | $0.00 | Trial | N/A | 555 Seventeenth Street, Suite 1500, Denver, CO 80202-3913 | LBHI |
| VERREX | 001359-LEHNY-2005 | | $0.00 | Master Agreement | N/A | 1130 Route 22 West, Mountainside, NJ 07092 | N/A |
| VERREX | 001359-LEHNY-2006 | | $0.00 | Master Agreement | N/A | 1130 Route 22 West, Mountainside, NJ 07092 | N/A |
| VIGNETTE EUROPE LIMITED | CON000000026050 | | $0.00 | Master Agreement | N/A | 1301 South MoPac Expressway, Austin, TX 78746 | N/A |
| VIGNETTE EUROPE LIMITED | CON000000026050 | | $0.00 | Master Agreement | N/A | 1301 South MoPac Expressway, Austin, TX 78746 | N/A |
| WARDS COMMUNICATIONS | CON000000026901 | | $0.00 | Amendment / Addendum / Schedule | Lisa Williamson | 300 Town Center, Suite 275C, Southfield, MI 48075 | N/A |
| WARDS COMMUNICATIONS | CON000000026802 | | $0.00 | Amendment / Addendum / Schedule | Lisa Williamson | 300 Town Center, Suite 275C, Southfield, MI 48075 | N/A |
| Washington Speakers Bureau | | | $25,000.00 | Contract Ken Venturi | Harry Rhoads | 1663 Prince Street, Alexandria, VA 22314 | Lehman Brothers |
| WATCHFIRE, INC. | CON000000029801 | | $0.00 | Maintenance Renewal Quote | Sathit Chainam | IBM- PO Box 643500, Pittsburgh, PA 15264-3500 | N/A |
| WCN | CON000000023391 | | $0.00 | TBD | N/A | Level One West Woodman Works, The Crescent London SW19 8DR | LBHI |
| WCN | CON000000028277 | | $0.00 | TBD | N/A | Level One West Woodman Works, The Crescent London SW19 8DR | N/A |
| WCN | CON000000028278 | | $0.00 | TBD | N/A | Level One West Woodman Works, The Crescent London SW19 8DR | N/A |
| Workshare | CON000000025867 | | $0.00 | Master Agreement | N/A | 208 Utah Street, San Francisco, CA 94103 | N/A |
| WO Hong Kong Ltd* | CON000000029827 | | $0.00 | Supplement | N/A | Unit C-E, 19/F, Tsuen Wan International Centre, Tsuen Wan, Hong Kong | N/A |
| Xengsti* | CON000000030273 | | $0.00 | Trial | N/A | 10121 Miller Avenue, Suite 100, Cupertino, CA 95014 | LBHI |
| XPEDITE SYSTEMS INC. | CON000000011546 | | $0.00 | Amendment / Addendum / Schedule | N/A | One Industrial Way West, Eatontown, NJ 07724 | no notification clause |
| XPEDITE SYSTEMS INC. | CON000000012644 | | $0.00 | Amendment / Addendum / Schedule | N/A | One Industrial Way West, Eatontown, NJ 07724 | no notification clause |
| XPEDITE SYSTEMS INC. | CON000000012516 | | $0.00 | TBD | N/A | One Industrial Way West, Eatontown, NJ 07724 | no notification clause |

| Vendor Name* | Agreement ID | Cure Amount | Type II | Vendor Contact Name | Vendor Contact Address | Lehman Entity |
|---|---|---|---|---|---|---|
| ZUM, LLC | CON00000019893 | $0.00 | | | ZUM LLC  107 W 86th St. 4h NY NY 10024 | Unknown |
| ZUM, LLC | CON00000019895 | $0.00 | | | ZUM LLC  107 W 86th St. 4h NY NY 10024 | Unknown |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                    :
**In re**                                          :    **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,**    :    **08-13555 (JMP)**
*et al.*                                           :
            **Debtors.**                           :    **(Jointly Administered)**
                                                    :
-------------------------------------------------------------x

### FIFTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

       **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

       **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

       **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

       **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]    For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

1

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "Objection Notice Parties") no later than **MONDAY, OCTOBER 27th at 4:00 p.m. (EST)**, which date is ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt to resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

Dated: October 16, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: /s/ Lisa M. Schweitzer
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

3

| Address of Subject Property | Type | Cure Amount | Lehman Entity | Notification Contact 1 | Notification Contact 2 | Notification Address 1 | Notification Address 2 | Notification Address 3 |
|---|---|---|---|---|---|---|---|---|
| Greenwich - 8 Sound Shore Drive | Lease | $0.00 | LBHI | 8 Sound Shore Associates, LLC | William H. Nickerson | c/o Eugene A. Hoffman Management, Inc. | 230 Park Avenue, Suite 1520 | New York, New York 10169-0005 |
| | | | | | Jonathan B. Mills, Esq. | Cummings & Lockwood LLC | Six Landmark Square | Stamford, Connecticut 06901 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                   :

**In re**                               :         **Chapter 11 Case No.**
                                   :

**LEHMAN BROTHERS HOLDINGS INC.,**   :         **08-13555 (JMP)**
*et al.*                              :
          **Debtors.**                  :         **(Jointly Administered)**
                                   :
-----------------------------------------------------------------x

## SIXTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

         **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

         **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

         **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

         **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]     For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

1

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "Objection Notice Parties") no later than **THURSDAY, NOVEMBER 20th at 4:00 p.m. (EST)**, which date is ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: November 10, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: /s/ Lisa M. Schweitzer
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

| Name of Counterparty | Counterparty Contact | Counterparty Mailing Address | Name of Lehman Entity | Contract Name | Contract Date | Cure Amount |
|---|---|---|---|---|---|---|
| Practicing Law Institute | Rick Zahn | 810 7th Avenue, New York, NY 10019 | LBHI | Privileged Membership Program | 07/01/08 | 0.00 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                        :

**In re**                              :         **Chapter 11 Case No.**
                                          :

**LEHMAN BROTHERS HOLDINGS INC.,**  :        **08-13555 (JMP)**
*et al.*                                :
          **Debtors.**                 :         **(Jointly Administered)**
                                          :

-------------------------------------------------------------x

## SEVENTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

**PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

**PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]    For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

1

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "<u>Objection Notice Parties</u>") no later than **MONDAY, DECEMBER 1<u>st</u> at 4:00 p.m. (EST)**, which date is ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: November 20, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By:/s/ Lindsee P. Granfield
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

| Vendor Name | Notice address | Contracting Lehman Entity | Agreement Type | Date of Agreement | Cure Amount |
|---|---|---|---|---|---|
| India Index Products & Services Ltd | Exchange Plaza, C-1, Block G, Bandra Kurla Complex, Bandra East, Mumbai, India 400 051 | LBHI | Index Licence | 07/18/08 | $0.00 |
| Beeland Interests Inc. | 150 West Flagler Street, Suite 1400, Miami, FL 33130 | LBHI | Index Licence | 01/08/08 | $0.00 |
| Beeland Interests Inc. | 150 West Flagler Street, Suite 1400, Miami, FL 33130 | LBHI | Index Licence | 04/09/08 | $0.00 |
| Credit Suisse/Tremont or Channel Capital | 11 Madison Avenue New York, New York 10010 | | Index Licence | | $0.00 |
| Hedge Fund Net | 420 Lexington Avenue, Suite 2510, New York, NY 10170 | | Index Licence | | $0.00 |
| iTraxx / International Index Company Limited | 9 Cheapside London EC2V 6AD United Kingdom | | Index Licence | | $0.00 |
| Jefferies Financial Products and Reuters Amercia LLC | Jefferies: One Station Place, 3N, Stamford, CT 06902; Reuters: Three Times Square, NY, NY 10036 | LBHI | Index Licence | 11/27/06 | $0.00 |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | 4 World Financial Center, NY, NY 10080 | LBHI | Index Licence | 12/01/06 | $0.00 |
| Philadelphia Stock Exchange Incorporated | 1900 Market Street, Philadelphia, PA 19103 | LBHI | Index Licence | 09/05/05 | $0.00 |
| Philadelphia Stock Exchange Incorporated | 1900 Market Street, Philadelphia, PA 19103 | LBHI | Index Licence | 12/14/06 | $0.00 |
| Philadelphia Stock Exchange Incorporated | 1900 Market Street, Philadelphia, PA 19103 | LBHI | Index Licence | 12/18/06 | $0.00 |
| The Bank of New York Mellon | Bank of New York Mellon, 101 Barclay Street, 22nd Floor, New York, NY 10286, FAO ADR Division, Fax 212 571 3050 | LBHI | Index Licence | 07/01/08 | $0.00 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                          :        **Chapter 11 Case No.**

                                               :

**LEHMAN BROTHERS HOLDINGS INC.,**             :        **08-13555 (JMP)**
*et al.*                                        :

       **Debtors.**                       :        **(Jointly Administered)**

                                               :

----------------------------------------------------------------x

## EIGHTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

     **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

     **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

     **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]    For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

1

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "Objection Notice Parties") no later than **MONDAY, DECEMBER 1<u>st</u> at 4:00 p.m. (EST)**, which date is ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

Dated: November 21, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By:/s/ Lisa M. Schweitzer
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

| Vendor Name | Notification Contact | Notification Address | Contract Name | Date of Agreement | Lehman Entity | Cure Amount |
|---|---|---|---|---|---|---|
| Personnel Decisions International Corporation | Chris Satterfield | 2000 Plaza VII Tower, 45 South Seventh Street, Minneapolis, MN 55402 | Master Agreement Non IT Services | 6/1/2007 | LBHI | $0.00 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                      :
In re                                                 :        Chapter 11 Case No.
                                                      :
LEHMAN BROTHERS HOLDINGS INC.,                        :        08-13555 (JMP)
*et al.*                                              :
            Debtors.                                  :        (Jointly Administered)
                                                      :
------------------------------------------------------------x

## NINTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

PLEASE TAKE NOTICE that, on September 20, 2008, the United
States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")
entered an order (the "Sale Order") which, among other things, approved an Asset
Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11
cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively,
the "Debtors").

PLEASE TAKE FURTHER NOTICE that, in accordance with the Sale
Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the
"Purchaser") has the right to designate certain of the Debtors' unexpired leases and
executory contracts for assumption and assignment to Purchaser (collectively, the
"Purchased Contracts").[1]

PLEASE TAKE FURTHER NOTICE that, on October 3, 2008, the
Bankruptcy Court entered an order (the "Procedures Order") which, among other things,
approved expedited procedures for the assumption and assignment of Purchased
Contracts to the Purchaser.

PLEASE TAKE FURTHER NOTICE that the Purchaser hereby provides notice
of the (i) assumption and assignment of the Purchased Contracts identified below as of the date
hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C.
§ 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]    For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts
include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the
Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated
for assumption and assignment by the Purchaser in accordance with the terms of the Clarification
Letter.

1

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "<u>Objection Notice Parties</u>") no later than **MONDAY, DECEMBER 1st at 4:00 p.m. (EST)**, which date is ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: November 21, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By:/s/ Lisa M. Schweitzer
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

3

Please note: Contracts designated for assumption and assignment below include any and all vendor agreements for the provision of goods and/or services to Lehman Brothers Holdings Inc. ("LBHI") and/or Lehman Brothers Inc. ("LBI"), between each listed counterparty and LBI and/or LBHI, and that are related to the assets purchased by Barclays Capital Inc. from LBHI, LBI and/or LB 745 LLC. For the avoidance of doubt, this schedule and notice of the assumption and assignment of these contracts is being filed in both the In re: Lehman Brothers Holdings Inc. (Case No. 08-13555) (Jointly Administered) and In re Lehman Brothers, Inc. (Case No. 08-01420) cases. The cure amount listed for each counterparty represents an aggregate cure amount with respect to all such contracts between LBHI and/or LBI on the one hand and the counterparty on the other hand.

| Supplier Name | Cure Amount | Notification Contact | Notification Address 1 | Notification Address 2 | Notification City, State Zip |
|---|---|---|---|---|---|
| ABS BROKERAGE SERVICES, LLC | $77,728.43 | Richard Padillo | 194 Nassau Street | Suite 30 | Princeton, NJ 08542 |
| Acuity | $0.00 | Jeffrey Scott | 4709 West Golf Road | Suite 800 | Skokie, IL 60076 |
| ADP Payroll Services | $18,986.13 | Carolyn Fliek | 400 Covina Blvd | | San Dimas, CA 91773 |
| Alacra Inc. | $0.00 | Steven Goldstein | 88 Pine Street | | New York, NY 10005 |
| American Stock Exchange - Standard Billing | $0.00 | Stephanie Bicheler & Maryann Gallagher | P.O. Box 7777 -W9190 | | PHILADELPHIA, PA 19175-9190 |
| ARAXIS | $0.00 | | 3 Parsonage Glebe | British Isles | St. John's, Isle of Man IM4 3LT |
| ARCA TRADING Services | $1,429.97 | | 11 Wall Street | | New York, NY 10005 |
| Attachmate | $0.00 | | 1500 Dexter Avenue N. | | Seattle, WA 98109 |
| Automated QA Corp - SOFTWARE HOUSE INTERNATIONAL | $0.00 | | 100 Cummings Center | Suite 420B | Beverly, MA 01915 |
| BB & T CAPITAL | $5,065.00 | | 2 SOUTH 9TH STREET | P.O. BOX 1575 | RICHMOND 23218-1575 |
| BGC PARTNERS LP | $2,923.00 | Lee M. Amaitis, Chairman and CEO | One Churchill Place | Canary Wharf | London E14 5RD UK |
| BIA Financial Network | $0.00 | | 15120 ENTERPRISE CT., SUITE 100 | | CHANTILLY VA 20151 |
| Blue Sky Data Corporation | $4,200.00 | Linda A. Graves | 800 Turnpike Road | Suite 100 | Shrewsbury, NJ 07054 |
| BRUCKONSHAHI RESEARCH GROUP INC | $0.00 | Kevin Ray | 750 THIRD AVE | | New York, NY 10017 |
| CANACCORD ADAMS, INC | $0.00 | ATTN: GABRIELLA LaCROW | 99 HIGH STREET SUITE 100 | | Boston, MA 02210 |
| CARIS & COMPANY, INC. | $0.00 | Sandy Turley | 853 CAMINO DEL MAR - SUITE 100 | | del Mar, CA 92014 |
| CDR and CPR TECHNOLOGIES INC | $0.00 | John Wang | 6280 San Ignacio Avenue | Suite A | San Jose, CA 95119 |
| Charles River Systems, Inc. | $0.00 | | 7 New England Executive Park | | Burlington, MA 01803 |
| CHECKPOINT | $0.00 | | 800 Bridge Parkway | | Redwood City, CA 94065 |
| CHEEVERS & CO INC | $24,188.97 | | 440 S. LASALLE | SUITE 415 - 4TH FLOOR | CHICAGO IL 60605 |
| China Basin Ballpark Company | $0.00 | | 5-7th floors, Trade World, C-Wing, Kamala Compound | Senapati Bapat Marg, Lower Parel (West) | Mumbai-400013 |
| Clearcorp Dealing Systems | $0.00 | Golaka C Nath | Rabstejnska 1580/35 | 32300 Plzen 1-Bolevec | Czech Republic |
| COQSOFT | $0.00 | | 660 3rd Street | | San Fransisco, CA 94107 |
| CT Corp. | $0.00 | | 72 Summit Avenue | | Montvale, NJ 07645 |
| Data Inc | $0.00 | Arun Verma | 100 Legends Way, Suite 200 | | Boston MA 02114 |
| Delaware North Companies, Inc - Boston | $0.00 | Leah Leahly | 601 N. Brand Blvd | Suite 850 | Glendale, CA 91203 |
| Developer Xpress | $0.00 | | 165 Mulberry Street | | |
| Devils Arena Entertainment, LLC | $0.00 | | 170 Claremont Avenue | Suite 6 | Newark, NJ 07102 |
| Digital Image Design | $0.00 | W B Paley | 2595 North Dallas Parkway | Suite 101 | New York, NY 10027 |
| Direct Access Financial ("DAF") | $0.00 | | | | Frisco, TX 75034-8528 |
| DIVELEMENTS | $0.00 | | 2 North Street, Milborne Port | | Sherborne, Dorset DT9 5ES United Kingdom |
| DROWST TRADING, LLC | $365,886.30 | ATTN: NICOLE GIUDICE | 440 SOUTH LASALLE ST., SUITE 1908 | | Chicago, IL 60605 |
| DSVIEW | $0.00 | | 4491 Corporate Drive | | Huntsville, AL 35805 |
| Emerging Markets Economic | $0.00 | | UNIT 1602 16/F WORKINGTON TOWER | 78 BONHAM STRAND SHEUNG WAN | HONG KONG |
| EQUILEND LLC | $0.00 | | 17 STATE STREET, 9th Floor | | New York NY 10004 |
| EurekaHedge | $0.00 | | 101C TELOK AYER STREET | | SINGAPORE 068574 |
| EUREX CLEARING AG | $0.00 | Ekkehard Jaskulla | NEUE BORSENSTRABE 1 | | Franfurt Germany 60487 |
| Fidessa Corporation | $11,506.96 | | 17 State Street | | New York, NY 10004-1501 |
| Forefield Advisor | $0.00 | | 33 Boston Post Road West | Suite 190 | Marlboro, MA 01752 |
| Forrester Research, Inc. | $0.00 | Brittany Roberts, Esq | 1055 Massachusetts Ave. | | Cambridge, MA 03138 |
| GFINET INC | $169,985.00 | | 100 WALL STREET | ACCOUNTING DEPARTMENT | NEW YORK NY 10005 |

Page 1 of 3

**Please note:** Contracts designated for assumption and assignment below include any and all vendor agreements for the provision of goods and/or services to Lehman Brothers Holdings Inc. ("LBHI") and/or Lehman Brothers Inc. ("LBI"), between each listed counterparty and LBI and/or LBHI, and that are related to the assets purchased by Barclays Capital Inc. from LBHI, LBI and/or LB 745 LLC.  For the avoidance of doubt, this schedule and notice of the assumption and assignment of these contracts is being filed in both the In re: Lehman Brothers Holdings Inc. (Case No. 08-13555) (Jointly Administered) and In re Lehman Brothers, Inc. (Case No. 08-01420) cases.  The cure amount listed for each counterparty represents an aggregate cure amount with respect to all such contracts between LBHI and/or LBI on the one hand and the counterparty on the other hand.

| Supplier Name | Cure Amount | Notification Contact | Notification Address 1 | Notification Address 2 | Notification City, State Zip |
|---|---|---|---|---|---|
| Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, LTD | $0.00 | | 55 East Monroe Street | Suite 3300 | Chicago, Illinois 60603-5792 |
| Gryphon Networks | $4,667.00 | | 249 Vanderbilt Ave. | | Norwood, MA 02062 |
| Harland Clarke | $0.00 | | P.O. BOX 931898 | | Atlanta, GA 31193 |
| iDeal/iPreo | $0.00 | | 1359 Broadway, 2nd Fl. | | New York, NY 10018 |
| IDM COMPUTER SOLUTIONS | $0.00 | | 5559 Eureka Drive | Suite B | Hamilton, OH 45011 |
| INFRAGISTICS, INC. | $0.00 | | 50 Millstone Road | Building 200, suite 150 | Princeton, NJ 08520 |
| | | | | | |
| INTERNATIONAL SWAPS AND DERIVATIVES | $0.00 | 360 Madison Avenue | 16th Floor | New York, NY 10017 | 212-901-6000 |
| | | | | | |
| Intuit | $0.00 | Director Corp. Partner Development | 2632 Marine Way | | Mountain View, CA  94043 |
| IPC Network Services Inc | $2,291.77 | | Bucklersbury South | 83 Cannon Street | Londo EC4N 8EL |
| Jasna Polana | $2,599.60 | | 8 Lawrence Road | | Princeton, NJ 08540 |
| JEFFERIES & COMPANY, INC. | $0.00 | | 520 MADISON AVENUE | 5th Floor | New York, NY 10022 |
| JetBrains | $0.00 | | 1870 So. Amphlett Blvd | Suite 214 | San Mateo, CA 94402 |
| JIDE Software | $0.00 | | 15057 Cross Stone Drive | | San Diego CA, 992127 |
| JP MORGAN SECURITIES | $10,598.78 | | 270 PARK AVENUE | 6TH FLOOR | NEW YORK, NY 10017 |
| KIODEX, INC. | $0.00 | | 550 Lexington Avenue | 9th Floor | New York, NY 10022 |
| Kollinger Fax Letter | $0.00 | | 1729 H Street NW | | Washington, D.C. 20006-3938 |
| Kynex Inc | $0.00 | | 17-17 ROUTE 208 | | FAIR LAWN 07410 |
| Leimberg Services | $0.00 | | 144 West Eagle Road | | Havertown, PA 19083 |
| Mapliab Ltd | $0.00 | | Pacific Businesss Center | P.O. Box 34069 #381 | Seattle, WA 98124-1069 |
| MBG TELECOM SOFTWARE INC | $0.00 | Michael Greenspan | 370 Lexington Ave | | New York, NY 10017 |
| MCNAMARA TRADING COMPANY | $46,651.91 | | 1900 MARKET ST | | PHILADELPHIA, PA 19103 |
| MERCURY TECHNOLOGIES INC | $0.00 | | 32 Old Slip | 11th Floor | New York, NY 10005 |
| Metavante | $0.00 | Kristen Hagemeir | 4900 West Brown Deer Road | | Milwaukee, WI 53223 |
| Micro Design Services | $0.00 | | 2001 Rout 46 | suite 502 | Parsippany, NJ 07054 |
| MINDJET | $0.00 | | 1160 Battery Street, 4th Floor | | San Francisco, CA 94111 USA |
| MORTICE KERN SYSTEMS (MKS) | $0.00 | Larry Wasyilshyn | 410 Albert Street | | Waterloo, Ontario, CA N2I3v3 |
| NASD Regulation | $0.00 | | P.O BOX 7777-W9850 | | PHILADELPHIA, PA 19175-9850 |
| NETAPP FINANCIAL SOLUTIONS | $0.00 | | 495 East Java Drive | | Sunnyvale, CA 94089 USA |
| New Jersey Sports & Exporsition Authority | $0.00 | | 50 State Highway 120 | | East Rutherford, NJ 07073 |
| New Patriots Stadium, LLC | $0.00 | | 60 Washington Street | | Foxborough, MA 02035 |
| NYSE Regulation | $0.00 | | 11 Wall Street | | New York, NY 10005 |
| Perf Trac Analytics | $0.00 | | 58 W 40th Street | 4th Floor | New York, NY 10018 |
| Qualley Technology Services | $70,277.00 | Michael Kurtz | 300 Satellite Blvd. NW | | Suwanee, GA 30024 |
| QUEST SOFTWARE INC. | $84,960.40 | | PO box 51739 | | Los Angeles, CA  90051 |
| Quotevision | $0.00 | | Haymarket House | 5th Floor | LONDON  SW1Y 4EE |
| RCN | $0.00 | | 196 Van Buren Street | | Herndon, VA  20170 |
| REALPOINT LLC | $0.00 | | 410 Horsham Road | Suite A | Horsham, PA 19044 |
| RELIANCE | $0.00 | James Maxwell | 3384 Peachtree Road | | Atlanta, GA  30326 |
| REVOLUTION COMPUTING / Paradise | $16,100.00 | | 285 Church Street | | New Haven, CT  06510 |
| Riveria Country Club | $10,080.38 | Pat Velazquez | 1250 Capri Drive | | Pacific Palisades, CA 90272 |
| | | | | | |
| SCOOTER SOFTWARE | $0.00 | | 2828 Marshall Court, Suite 112 | | Madison, WI 53705-2276 |
| SOURCEMEDIA | $0.00 | | One State Street Plaza | 27th Floor | New York, NY 10004 |
| STEEMA | $0.00 | | Avinguda Montilivi 33 | 17003 Girona | Catalona, Spain |
| SUSQUEHANNA FINANCIAL GROUP | $0.00 | | 175 WEST JACKSON BLVD | Suite 1700 | Chicago, IL 60604 |
| SYNCFUSION, INC. | $0.00 | | 9001 Aerial Center Parkway | Suite 110 | Morrisville, NC 27560 |
| SynoTrak Database Application | $0.00 | | 601 Riverside Avenue | | Jacksonville, FL 32204 |
| TPS, LLC | $0.00 | | 322 Springfield Avenue | Suite 200 | Summit, NJ 07901 |
| Tortoise Optimization Inc | $0.00 | | 1282 SE Burton Road | Ste E | Pullman, WA  99163 |
| TOWNSEND ANALYTICS LTD | $0.00 | Kurt Phillips | 100 South Wacker Drive | | Chicago, IL60606 |
| Track Data | $0.00 | William Olsen | 95 Rockwell Place | | Brooklyn, NY  11217 |

Please note: Contracts designated for assumption and assignment below include any and all vendor agreements for the provision of goods and/or services to Lehman Brothers Holdings Inc. ("LBHI") and/or Lehman Brothers Inc. ("LBI"), between each listed counterparty and LBI and/or LBHI, and that are related to the assets purchased by Barclays Capital Inc. from LBHI, LBI and/or LB 745 LLC. For the avoidance of doubt, this schedule and notice of the assumption and assignment of these contracts is being filed in both the In re: Lehman Brothers Holdings Inc. (Case No. 08-13555) (Jointly Administered) and In re Lehman Brothers, Inc. (Case No. 08-01420) cases. The cure amount listed for each counterparty represents an aggregate cure amount with respect to all such contracts between LBHI and/or LBI on the one hand and the counterparty on the other hand.

| Supplier Name | Cure Amount | Notification Contact | Notification Address 1 | Notification Address 2 | Notification City, State Zip |
|---|---|---|---|---|---|
| TRADEWARE SYSTEMS LLC | $18,825.94 | | Tradeware Global LLC | 40 Wall Street 38th Floor | New York, NY 10005 |
| Tripwire, Inc. | $0.00 | | 101 SW Main Street | Suite 1500 | Portland, OR 97204 |
| Trusts + Estates | $0.00 | | P.O. BOX 5180 | | Brentwood, CA 37024 |
| Video Corporation of America | $143,014.37 | | 370 Seventh Ave | Suite 550 | New York, NY 10001 |
| Walkers SPV | $8,059.78 | | P.O. BOX 908 GT | WALKER HOUSE | CAYMAN ISLANDS |
| Wall Street Source | $0.00 | Marciano DeCesare | 26 West 17th Street | | New York, NY 10011 |
| WEDBUSH MORGAN SECURITIES | $15,546.00 | ATTN: MATTHEW MILLER | 1000 WILSHIRE BLVD 9TH FLR | | Los Angeles, CA 90017 |
| Winzip Computing INC | $0.00 | | PO Box 540 | | Mansfield, CT 06268 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                               :

**In re**                         :       **Chapter 11 Case No.**
                               :

**LEHMAN BROTHERS HOLDINGS INC.,**   :       **08-13555 (JMP)**
*et al.*                         :
         **Debtors.**            :       **(Jointly Administered)**
                               :

-------------------------------------------------------------x

## TENTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

        **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

        **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

        **PLEASE TAKE FURTHER NOTICE** that, on October 3, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

        **PLEASE TAKE FURTHER NOTICE** that the Purchaser hereby provides notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]   For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

1

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "<u>Objection Notice Parties</u>") no later than **MONDAY, DECEMBER 1st at 4:00 p.m. (EST)**, which date is ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the assignment or to the Cure Amount set forth below, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

2

Dated: November 21, 2008
New York, New York

**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**

By:/s/ Lisa M. Schweitzer
    Lindsee P. Granfield
    Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Barclays Capital Inc.*

3

Please note: Contracts designated for assumption and assignment below include any and all vendor agreements for the provision of goods and/or services to Lehman Brothers Holdings Inc. ("LBHI") and/or Lehman Brothers Inc. ("LBI"), between each listed counterparty and LBI and/or LBHI, and that are related to the assets purchased by Barclays Capital Inc. from LBHI, LBI and/or LB 745 LLC. For the avoidance of doubt, this schedule and notice of the assumption and assignment of these contracts is being filed in both the In re: Lehman Brothers Holdings Inc. (Case No. 08-13555) (Jointly Administered) and In re Lehman Brothers, Inc. (Case No. 08-01420) cases. The cure amount listed for each counterparty represents an aggregate cure amount with respect to all such contracts between LBHI and/or LBI on the one hand and the counterparty on the other hand.

| Supplier Name | Cure Amount | Notification Contact | Notification Address 1 | Notification Address 2 | Notification City, State Zip |
|---|---|---|---|---|---|
| Wisdom Software Inc - SOFTWARE HOUSE INTERNATIONAL | $0.00 | | | | Port Moody, CA BC |
| WOLVERINE EXECUTION SERVICES, LLC | $15,851.00 | | 175 W. JACKSON BLVD | SUITE 200 | Chicago, IL 60604 |
| Xceed Software Inc | $0.00 | | 155 Bould. Jean-Paul-Vincent | Suite 180 | Longueuil, Quebec CA J4n 1L6 |
| XTRACT RESEARCH, LLC | $0.00 | Michael Knox | 90 grove Street | Suite 205 | Ridgefield, CT  06877 |
| Zephyr | $0.00 | | P.O.BOX 12368 | | ZEPHYR COVE 89448 |

# BCI EXHIBIT

# 27

Case No.  08-CV-08869 (DLC)
Case No.  08-CV-08914 (DLC)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

*In re* LEHMAN BROTHERS HOLDINGS, INC, et al., *Debtor.*

BAY HARBOUR MANAGEMENT, L.C., et al., *Appellants,*

v.

LEHMAN BROTHERS HOLDINGS, INC., et al., *Appellees.*

*Appeal From The United States Bankruptcy Court*

*For the Southern District of New York*

Case No.  08-13555 (jointly administered)

## APPELLANTS' OPENING BRIEF

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner, Esq.
Andrew K. Glenn, Esq.
Ronald R. Rossi, Esq.
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Fax:  (212) 506-1800

*Counsel for Appellants*
*Bay Harbour Management L.C., Bay Harbour Master Ltd.,*
*Trophy Hunter Investments, Ltd., BHCO Master, Ltd.,*
*MSS Distressed & Opportunities 2 and Institutional Benchmarks*

# TABLE OF CONTENTS

Page

I.  STATEMENT OF BASIS OF APPELLATE JURISDICTION ............................. 1

II.  STATEMENT OF THE ISSUES TO BE PRESENTED ON APPEAL
AND APPLICABLE STANDARD OF APPELLATE REVIEW ........................... 1

III. STATEMENT OF THE CASE ............................................................................ 2

  A.  Nature of the Case ................................................................................. 2

  B.  Statement of Relevant Facts ................................................................. 5

    1.  Lehman's Collapse and Bankruptcy Filing ................................. 5

    2.  Lehman Proposes To Sell Its North American Investment
        Banking Operations and Certain Commercial Real Estate
        To Barclays Two Days After Filing Its Petition ........................... 6

    3.  Lehman Brothers International (Europe) Advises The
        Bankruptcy Court That $8 Billion In Securities And Cash
        Was Misappropriated By The Debtors ........................................ 9

    4.  Bay Harbour Objects to the Sale ............................................... 11

    5.  The Securities Investor Protection Corporation Seeks
        Protection For LBI's Customers ................................................ 12

    6.  The Sale Hearing ....................................................................... 13

  C.  Disposition by the Bankruptcy Court. ............................................... 15

  D.  The Appeal. ......................................................................................... 17

IV.  SUMMARY OF ARGUMENT ........................................................................ 18

V.  ARGUMENT ................................................................................................... 22

  A.  The Bankruptcy Court Erred in Concluding That Barclay's
      Was a Purchaser In Good Faith Pursuant to Section 363
      of The Bankruptcy Code. ................................................................... 22

  B.  The Bankruptcy Court Erred In Concluding That The Sale
      Complied With The Due Process Clause Of The Fifth Amendment
      Of The United States Constitution. .................................................... 25

C. The Bankruptcy Court Erred In Concluding, Pursuant To
Bankruptcy Code Sections 105(a) And 363(f), That The Sale
To Barclays Was Approved Free And Clear Of Liabilities. ............................. 28

CONCLUSION ............................................................................................................. 30

## TABLE OF AUTHORITIES

Page

**Cases**

City of New York v. N.Y., N.H. & Hartford R.R., 344 U.S. 293, 297 (1953) ................. 25

Goldberg v. Kelly, 397 U.S. 254, 270 (1970) .................................................... 26

Greene v. McElroy, 360 U.S. 474, 496 (1959) ................................................... 26

In re Abbotts Dairies, Inc., 788 F.2d 143, 147 (3d Cir. 1986) ............................... 22

In re Aneco Elec. Constr., Inc., 377 B.R. 338, 342 (Bankr. M.D. Fla. 2006) ................. 29

In re Arch Wireless, 332 B.R. 241, 252 (Bankr. D. Mass. 2005) ............................... 25

In re Colony Hill Assoc., 111 F.3d 269, 273 (2d Cir. 1997) ................................... 2

In re Dinova, 212 B.R. 437, 443 (B.A.P. 2d Cir. 1997) ....................................... 26

In re First Central Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004) ............................. 2

In re Lady H Coal Co., 199 B.R. 595, 605 (Bankr. W. Va. 1996) ........................... 28-29

In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) ...................................... 21

In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 8 (1st Cir. 1993) ................. 22-23

In re Perona Bros., Inc., 186 B.R. 833, 839 (D.N.J. 1995) ................................... 28

In re Stilwell, 120 F.2d 194 (2d Cir. 1941) .................................................. 26

Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997) ............... 22

Massa v. Addona (In re Massa), 187 F.3d 292, 296 (2d Cir. 1999) ............................. 26

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ........................ 25

Reliable Elec. Co. v. Olson Constr. Co., 726 F.2d 620, 623 (10th Cir. 1984) ............. 25-26

Silverman v. K.E.R.U. Realty Corp., In re Allou Distrib., Inc.,
    379 B.R. 5, 39 (Bankr. E.D.N.Y. 2007) ................................................. 29

T.C. Investors v. Joseph (In re M Capital Corp.),
    290 B.R. 743 (B.A.P. 9th Cir. 2003) .................................................. 25

TeseMilner v. TPAC, LLC In re TicketPlanet.com,
    313 B.R. 46, 48 (Bankr. S.D.N.Y. 2004) ............................................... 29

Thomas v. Namba (In re Thomas),
    287 B.R. 782, 785 (B.A.P. 9th Cir. 2002) .................................................. 24

United States v. United States Gypsum Co.,
    333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948)...................................... 23

W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus.),
    43 F.3d 714, 721 (1st Cir. 1994) .................................................................. 25

**Statutes**

11 U.S.C. § 363(b) ......................................................................... 21, 28

11 U.S.C. § 363(f)............................................................................... 28

11 U.S.C. § 541................................................................................... 29

Fed. R. Bankr.P. 8013............................................................................ 2

**Constitutional Provisions**

U.S. CONST. amend. V ...................................................................... 25

**Other Authorities**

3 COLLIERS ON BANKRUPTCY ¶ 363.11 (15th Ed. Rev. 2008) .......................................... 25

## I.    STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear this appeal

of a final order under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy

Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased

Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment

of Executory Contracts and Unexpired Leases in Case No. 08-13555 (JMP) and a final

order Approving, and Incorporating by Reference for the Purpose of this Proceeding, an

Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers

Holdings, Inc. Chapter 11 Proceeding in each of Case Nos. 08-01419 and 08-01420(JMP)

[Bankruptcy Court Docket No. 258, Case No. 08-01419 Docket No. 2, and Case No. 08-

1420 Docket No. 3][1] (collectively the "Sale Orders"), entered on September 20, 2008, by

the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court").

## II.    STATEMENT OF THE ISSUES TO BE PRESENTED ON APPEAL AND APPLICABLE STANDARD OF APPELLATE REVIEW

The Statement of the issues presented on appeal and applicable standards of

appellate review are as follows.

1.    Whether the Bankruptcy Court erred in its conclusion in the Sale Orders

that Barclays Capital, Inc. ("Barclays") was a purchaser in good faith pursuant to

section 363 of title 11, United States Code (the "Bankruptcy Code").

2.    Whether the Bankruptcy Court erred in concluding in the Sale Orders that

the sale pursuant to the Orders complied with the Due Process clause of the Fifth

---

[1]  All references to the "Bankruptcy Court Docket" refers to the docket in Chapter 11
Case No. 08-13555 (JMP).

Amendment of the United States Constitution where there was no ability for the

Bankruptcy Court and for parties in interest, including Appellants, to determine

whether Barclays was a purchaser in good faith pursuant to section 363 of the

Bankruptcy Code.

      3.     Whether the Bankruptcy Court erred in approving a sale free and clear of

liabilities to Barclays, an entity that the Bankruptcy Court could not have concluded to

be a purchaser in good faith under section 363 of the Bankruptcy Code.

     In deciding the above questions, this Court may review the Bankruptcy Court's

conclusions of law *de novo*, and may reverse its findings of fact where they are clearly

erroneous. See Fed. R. Bankr.P. 8013; In re Colony Hill Assoc., 111 F.3d 269, 273 (2d

Cir. 1997); In re First Central Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004).

## III.    STATEMENT OF THE CASE

     The following is Bay Harbour's Statement of the Case, in the form required under

Rule 8010(a)(1)(D) of the Federal Rules of Bankruptcy Procedure. The facts specifically

relevant to this appeal are set forth, *infra*, in the Statement of Relevant Facts.

### A.    Nature of the Case

     This appeal arises from the bankruptcy case of Lehman Brothers Holdings Inc.

("LBHI") and LB 745 LLC ("LB 745") (collectively, the "Debtors" and, together with

their non-debtor affiliates, "Lehman"). LBHI filed for relief under Chapter 11 of the

Bankruptcy Code on or about September 15, 2008 (the "Petition Date"). LB 745 filed a

voluntary chapter 11 petition a day later on September 16, 2008. Since those dates,

several Lehman affiliates have filed bankruptcy.

This appeal is brought by Bay Harbour Management L.C., Bay Harbour Master Ltd., Trophy Hunter Investments, Ltd., BHCO Master, Ltd., MSS Distressed & Opportunities 2 and Institutional Benchmarks (collectively, "Bay Harbour" or "Appellants"). Bay Harbour Master, Ltd., Trophy Hunter Investments, Ltd. and BHCO Master, Ltd are investment funds. MSS Distressed & Opportunities 2 and Institutional Benchmarks are managed accounts that formerly maintained prime brokerage accounts with Lehman Brothers Inc. ("LBI"), a registered broker-dealer and non-debtor subsidiary of LBHI, and Lehman Brothers International (Europe) ("LBIE"), Lehman's principal trading company, and broker-dealer, within Europe, that now have been assumed and assigned to Barclays. Bay Harbour is a creditor of LBI and counterparty to contracts with LBHI and LBIE and now with Barclays.

The events that give rise to this appeal moved at light speed through the Bankruptcy Court. A mere four days after Lehman, the fourth largest investment bank in the United States, filed bankruptcy, and a mere two days after Debtors sought to sell Lehman's North American investment banking and capital markets operation and supporting infrastructure, including its Manhattan and headquarters building, to Barclays (the "Barclays Sale" or "Sale"), the Bankruptcy Court approved the sale even though there was no real indication of what was being sold and for what nor transparency into the so-called sales "process."

On the day of the Sale hearing, just after Debtors informally announced material sale modifications to three overflowing courtrooms so that Appellants could neither hear nor comprehend what was now being sold, LBIE's Joint Administrators, in a written filing, disclosed the results of their preliminary investigation. The Joint Administrators'

3

investigation had identified more than $8 billion in cash and assets that had been

siphoned from LBIE, Lehman's London brokerage, as part of an $8 billion asset transfer

orchestrated by Debtors (the "Defalcated Funds"), such that, after Debtors initiated their

midnight bankruptcy filing, the Defalcated Funds were effectively "trapped." LBIE's

Joint Administrator further advised the Bankruptcy Court that because, according to

Debtors, LBI had negligible cash left at the Petition Date, it was likely that the Defalcated

Funds had been disbursed to third parties in the days and hours before Debtors

commenced their bankruptcy proceeding. As a result of the Debtors' misappropriation of

the $8 billion in cash and assets, LBIE's creditors would potentially be deprived of

billions of dollars in recoveries.

Bay Harbour, who had substantial amounts of assets on deposit at LBIE in its

customer account, filed an objection to the sale on the basis of what little information it

had, arguing, in part, that the Bankruptcy Court should not find that Barclays is a good

faith purchaser, among other reasons, without first determining whether some or all of the

Defalcated Funds had been manipulated by Debtors to prop up LBI for sale or otherwise

used for the Debtors' and its affiliates' (other than LBIE) operations.

At the Sale hearing, which took place without actual notice of material terms and

pre-Sale transactions and where it continued to be a challenge to even hear the

proceedings much less understand the constant modifications to the Sale, the Bankruptcy

Court left unanswered all questions pertaining to the fate of the Defalcated Funds,

Barclays' involvement in the $8 billion transfer and whether Barclays knew about or

benefited from this $8 billion transfer. Notwithstanding, after hearing no evidence from

any Barclays' representative, where LBIE's assertion that the Debtors had

4

misappropriated more than $8 billion went unrebutted, and having allowed no discovery,

the Bankruptcy Court nevertheless held that Barclays was a good faith purchaser under

section 363 of the Bankruptcy Code on little more than the testimony of a single Lehman

witness read into the record by counsel.

Given the unprecedented, rushed, and unconstitutional Sale process in the

Bankruptcy Court -- a process the Bankruptcy Court itself admitted "could never be

deemed a precedent for future cases" -- it was impossible for any creditor or the

Bankruptcy Court to make a meaningful assessment of whether Barclays was a good faith

purchaser entitled to take title to the Purchased Assets free and clear. This Court must

overturn the Bankruptcy Court's good faith finding and remand for further proceedings.

**B.    Statement of Relevant Facts**

1.    **Lehman's Collapse and Bankruptcy Filing.**

After more than 150 years of continuous operations, Lehman, the fourth largest

investment bank in the United States, collapsed overnight. *Affidavit of Ian T. Lowitt*

*Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New*

*York in Support of First-Day Motions and Applications* [Bankruptcy Court Docket No. 2]

at ¶¶5 and 20-31. While Lehman's collapse occurred during an unprecedented period of

distress in the financial markets, its demise can be directly traced to its disastrous

decision to take highly-leveraged investment gambles on domestic subprime residential

mortgages and structured credit products. (Id. ¶¶20-31.) When the market value of

these thinly traded and largely illiquid asset classes began to plummet, as compared to

their stated value as pledged collateral, Lehman's secured lenders steeply discounted

them causing Lehman severe liquidity problems in a rapidly tightening credit market.
(Id. ¶23.)

Lehman's loss of liquidity caused it to go into an economic death spiral. (Id.
¶¶20-31.) Unable to access the capital markets, Lehman was forced to use its own cash
to fund transactions and, as its cash dwindled, it became ever increasingly difficult for
Lehman to operate. (Id. ¶24.) As a result of Lehman's liquidity problems, a number of
major credit agencies put Lehman's credit ratings on negative watch and warned of
potential multiple downgrades. (Id.) At the same time, Lehman's assets continued to
diminish in value, mark to market obligations eroded its balance sheet, and its stock price
plummeted. (Id. ¶27.) As market confidence in Lehman's ability to continue as a going
concern all but evaporated, Lehman desperately tried to save itself through a sale,
restructuring or a Federal bailout. (Id. ¶¶27-30.)

Ultimately, the Federal government passed on providing Lehman with emergency
Federal funding, and Lehman filed for Chapter 11 under the Bankruptcy Code. (Id. ¶¶30-
31.)

> 2.     **Lehman Proposes To Sell Its North American Investment
>         Banking Operations and Certain Commercial Real Estate To
>         Barclays Two Days After Filing Its Petition.**

Two days after the Petition Date, on Wednesday, September 17, 2008, the
Debtors filed the *Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales
Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased
Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets*
[Bankruptcy Court Docket #60] (the "Sale Procedures Motion"). The Sales Procedure
Motion sought (among other relief) the Court's authorization and approval of the sale of

6

the "Purchased Assets" free and clear of all liens, claims, encumbrances, and interests,
and the assumption and assignment of certain pre-petition contracts and unexpired leases
relating to the Purchased Assets. (Id. ¶¶26-27.) In the Sale Procedures Motion, Debtors
requested expedited approval of the Sale arguing that, as a result of Lehman's profound
instability in the marketplace, "it is urgent to sell the Purchased Assets now or face
material disruption of their value." (Id. ¶11.)

Pursuant to the terms of the Barclays Sale, which were first filed with the
Bankruptcy Court on September 17, 2008, Barclays agreed, subject to the Bankruptcy
Court's and other regulatory approvals, to purchase the North American investment
banking and capital markets operations and supporting infrastructure of LBI. (Id. ¶¶ 9-10
and 14.) Barclays proposed to pay $250 million for LBI's investment banking
operations, which included hundreds of thousands of customer accounts holding
hundreds of billions of assets, and another approximately $1.45 billion to buy LBI's New
York headquarters building and certain of its data centers. (Id.) In essence, Barclays was
buying some commercial real estate and giving a fraction of a cent "tip" to the estates
when viewed against Lehman's over $600 billion in liabilities. In seeking the
Bankruptcy Court's approval of its Sale Procedures Motion, Debtors stressed that time
was of the essence due to the alleged rapidly wasting nature of LBI's assets. (Id. at ¶6.)

Later that day, only hours after the Sale Procedures Motion was docketed, the
Bankruptcy Court held a hearing and set the Barclays sale hearing for Friday, September
19, 2008, a scant 48 hours after Debtors initially sought Bankruptcy Court approval of the
Barclays Sale and with the terms in flux. *Transcript Of Hearing Held On September 17,
2008 At 4:28 PM* [Bankruptcy Court Docket #352] (the "Sale Procedures Hearing Tr.")

7

at 105:24-106:4. During the Sale Procedures Motion hearing, Debtors' counsel
commented upon the rapid pace of the negotiations between Debtors and Barclays and
described the proposed Sale as "a complex transaction with many moving parts" that was
evolving by the hour. (Sale Procedures Hearing Tr. 19:6-8.)

As Debtors' counsel further explained, Barclays had not approached the proposed
Sale from scratch but had some "familiarity" with Lehman as it had been negotiating to
acquire all of Lehman shortly before the Petition Date but had ultimately decided to take
a pass on enquiring all of Lehman's assets and operations. (Sale Procedures Hearing Tr.
25:19-26:2.) Neither Barclays nor Lehman provided any further information regarding
Barclays conduct in obtaining this "familiarity", in walking from the transaction, and in
re-engaging once Lehman was in extremis.

In seeking expedited approval of the Sale, Debtors' counsel argued that LBI was a
"wasting asset" that was "extremely fragile and sensitive." (Sale Procedures Hearing Tr.
21:4-5.) Debtors further claimed that if the Sale was not approved by Friday evening,
"there will be nobody in the [LBI] building. And [the transaction] will just disappear."
(Sale Procedures Hearing Tr. 26:3-9.) The Bankruptcy Court characterized the proposed
Sale as "an absolutely extraordinary transaction with extraordinary importance to the
capital markets globally," but failed to point to any evidence in the record that supported
its assertion. (Sale Procedures Hearing Tr. 26:24-27:1.) Indeed, with respect to the
proposed Sale, there was no "capital markets" issue, global or otherwise, that had any
bearing on the question of whether the proposed Sale was or was not in the best interest
of Lehman or its creditors or whether Barclays was a good faith purchaser.

8

Against the context of the Bankruptcy Court's own view that the expeditious closing of the Barclays Sale was somehow of worldwide concern to the continued functioning of the capital markets, it glossed over due process concerns, particularly the extremely short notice period and lack of information regarding the Defalcated Funds. (Sale Procedures Hearing Tr. 26:24-27:2.) The Debtors responded in part by contending that, while mindful of the due process arguments, they did not have an asset that would still be here in two weeks and thus could not afford to provide creditors and other interested parties any time to conduct any necessary due diligence. (Sale Procedures Hearing Tr. 28:23-29:19.) The best Debtors could do was make themselves available over the next day or two to answer questions. (Sale Procedures Hearing Tr. 28:23-29:19.)

Though Lehman's counsel pledged to be available around the clock to answer questions and to provide data regarding the Barclays Sale, (Sale Procedures Hearing Tr. 41:23-25.), in fact, they held one meeting at 3:00 pm the day before the Sale hearing where they solicited questions. Appellants attended and asked about the $8 billion transfer but Lehman offered no information in response.

3. **Lehman Brothers International (Europe) Advises
The Bankruptcy Court That $8 Billion In Securities
And Cash Was Misappropriated By The Debtors.**

On the Friday, September 19, 2008, the day of the Barclays Sale hearing, the Joint Administrators of LBIE, who had taken over LBIE's operations only days earlier pursuant to British insolvency laws, filed papers with the Bankruptcy Court advising that its "preliminary investigation" had "revealed evidence of substantial transfers of securities out of LBIE which merit close investigation." *Declaration of Dan Yoram Schwarzmann* at ¶25 [Bankruptcy Court Docket No. 223] (the "Schwarzmann Dec.") As

LBIE's Joint Administrators explained, "[a]s the market lost confidence in the Lehman
Group in recent weeks, many of its clients in the prime brokerage business began to
transfer their securities from the Lehman Group to other prime brokers." (Id.) According
to LBIE, the expatriated securities "were typically transferred from LBIE to LBI, the U.S.
broker-dealer, then to another Lehman Group entity located in Luxembourg, and from
there to a new prime broker." (Id. at ¶26.)

　　　　They further explained that, thereafter, "funds to reimburse LBIE in respect of the
securities and any margin posted in connection with the client accounts were to flow from
the new prime broker back through the chain of Lehman entities [including LBI] to
LBIE." (Id.) The Joint Administrators' preliminary investigation, which was just a few
days old, had revealed, however, that while funds were transferred from the new prime
brokers through the Luxembourg entity to LBI, the funds were never sent by LBI back to
LBIE. (Id.) As a result, LBIE's Joint Administrators had identified "more than $8 billion
in such funds" that are due to LBIE from LBI but that LBIE does not hold. (Id.)

　　　　LBIE's Joint Administrator advised the Bankruptcy Court that "transfers of this
magnitude could have a significant effect on the creditors of LBIE, potentially depriving
them of billions of dollars in recoveries." (Id. ¶27.) And that, because Debtors' counsel
informs LBIE that LBI had negligible cash left at the Petition Date, "it is likely that the
funds referred to above have been disbursed to third parties in the days before these
proceedings were commenced." (Id.) Accordingly, the Joint Administrators requested
that the proposed Sale not serve as an impediment with respect to LBIE's right to
potentially proceed against third parties to recover some or all of the Defalcated Funds.
(Id.)

10

4.    **Bay Harbour Objects to the Sale.**

On the day of the Barclays Sale hearing, with what little information it had, Bay

Harbour filed an objection to the Sale. *Objection of Bay Harbour Management L.C., Bay*

*Harbour Master Ltd., Trophy Hunter Investments Ltd., BHCO Master, Ltd., MSS*

*Distressed & Opportunities 2 and Institutional Benchmarks to the Debtors' Motion to (A)*

*Schedule a Sale Hearing, (B) Establish Sale Procedures, (C) Approve a Break-up Fee;*

*and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of*

*Contracts Relating to the Purchased Assets* [Bankruptcy Court Docket No. 175] (the

"Bay Harbour Objection") In it, Bay Harbour explained that it dealt with LBI employees

in its prime brokerage relationship and believed that its cash and securities safely would

be held for its account. (Id. ¶3.) Nonetheless, despite repeated assurances of the integrity

of the cash and securities deposited with LBI and LBIE, Bay Harbour's cash and

securities, which were indisputably Bay Harbour's and not LBI's or LBIE's property,

appeared to have been siphoned from London to the United States as part of the above-

described transfer of the Defalcated Funds and then "trapped" by the midnight

bankruptcy filing by the Sellers. (Id.)

Bay Harbour's objection also pointed out that, as of the Barclays Sale hearing, the

Debtors did not dispute the transfer of the Defalcated Funds from the United Kingdom

operations or that no consideration had been provided by LBI (or any else) in return. (Id.

¶4.) Nor was there any dispute that neither Debtors nor anyone else had disclosed the

fate of the Defalcated Funds; nor disclosed whether Barclays knew about, benefited from

or was otherwise involved with the transfer of the Defalcated Funds. (Id.)

11

Thus, as Bay Harbour further pointed out, even while LBIE has raised serious

unanswered questions regarding LBI's misappropriation of the Defalcated Funds, the

Barclays Sale contemplated that Barclays was to receive a substantial portion of

securities held by the Debtor and LBI as a good faith purchaser who takes free and clear,

without any investigation into Barclays' role in the transfer of the Defalcated Funds. (Id.

¶¶5-6.) Consequently, while it was possible that some of the assets being sold to

Barclays derived from the Defalcated Assets, or that the transfer of the Defalcated Funds

was manipulated to prop up LBI for sale or to fund the operations of the Debtors' and

their affiliates' (other than LBIE), or that Barclays otherwise benefited from the transfer,

or that Barclays prior termination of negotiations caused the transfer, the Court

nonetheless was being asked to provide its good faith seal of approval to Barclays

without having provided any creditor or person in interest even a single minute, much

less adequate time, to determine whether Barclays was or was not complicit. (Id. at ¶¶5-

8.)

     5.    **The Securities Investor Protection Corporation
Seeks Protection For LBI's Customers.**

On September 19, 2008, a few hours before the Sale hearing, the United States

District Court for the Southern District of New York entered an order, at the request of

the Securities Investor Protection Corporation ("SIPC"), placing LBI in liquidation under

the Securities Investor Protection Act of 1970 (the "SIPA Proceeding"). (Sale Orders at

¶E.) This Court then transferred the SIPA Proceeding to the Bankruptcy Court, which

now oversees, separately, (i) the Debtors' Chapter 11 Cases, and (ii) the SIPA

Proceeding.

12

6.    **The Sale Hearing**.

In the late afternoon on Friday, September 19, 2008, the Bankruptcy Court

conducted the Barclays Sale hearing that concluded shortly past midnight on Saturday,

September 20, 2008. *Transcript of Hearing Held on 9/19/2008 at 4:36 pm* [Bankruptcy

Court Docket No. 318] (the "Barclays Sale Hearing Tr.") During the Barclays Sale

hearing, the Debtors proffered testimony from two witnesses, neither of whom was able

to offer any substantive testimony regarding LBIE's sworn statements concerning the

misappropriation of the Defalcated Funds. (Barclays Sale Hearing Tr. 207:4-207:15.)

Barclays did not offer a single witness on any topic.

Counsel for Bay Harbour was afforded an opportunity to cross-examine Debtors'

witnesses and to present argument in support of Bay Harbour's objection. In so doing,

Bay Harbour's counsel pointed out that the misappropriation of the Defalcated Funds had

not been investigated and that, as a result, nobody, including the Bankruptcy Court, knew

about the circumstances giving rise to the transfer, including who was involved or who

stood to benefit. (Barclays Sale Hearing Tr. 206:11-206:25.)

In direct response, the Bankruptcy Court said that it "paid attention" to the fact

that little or no evidence concerning the misappropriation of the Defalcated Funds had

been presented but that it "made no impact" on the Bankruptcy Court because the

Bankruptcy Court "was confident" it would learn a lot about the issue during the course

of the Debtors' bankruptcy case. (Barclays Sale Hearing Tr. 207:1-207:10.) The

Bankruptcy Court went on to suggest that the questions surrounding the misappropriation

of the Defalcated Funds had no direct bearing on the question of whether it was in the

13

best interest of Debtors' estate to approve the Barclays Sale. (Barclays Sale Hearing Tr. 207:10-207:15.)

Counsel for Bay Harbour responded by pointing out that, because Barclays was seeking to cut off any rights aggrieved parties had to trace their ownership of the Defalcated funds back to them, the questions surrounding the misappropriation of the Defalcated Funds had a direct bearing on the Bankruptcy Court's consideration and approval of the Barclays Sale. And that, moreover, because the Debtors could not sell what they did not own and Barclays could not, in good faith, take what it helped misappropriate, no clean title to the Purchased Assets should pass until the questions raised by LBIE's Joint Administrator earlier that day had been investigated. (Barclays Sale Hearing Tr. 209:2-213:16.)

The Court disagreed, stating that all Bay Harbour was doing "is asserting on behalf of your client a claim derivative of the claim that the administrators would make. And you know what? I don't know if it's right. So because we are approaching 11:00 at night and dealing with no evidence with respect to the underlying premise of your argument I think it's time to move on." (Barclays Sale Hearing Tr. 213:11-213:16.) In response, Bay Harbour reiterated that no matter how many times Bay Harbour's share of the Defalcated Funds were moved within the various companies that comprised Lehman, those Funds still remained Bay Harbour's property and could not be sold. (Barclays Sale Hearing Tr. 213:18-213:25.)

In addition to rejecting Bay Harbour's argument that, given the total lack of investigation into the misappropriation of the Defalcated Funds, the Debtors should not be allowed to convey clean title to what they do not own and that Barclays should not be

14

provided clean title to property it might have been complicit in misappropriating, the Bankruptcy Court also expressly rejected Bay Harbour's argument that Debtors had failed to meet their burden of proof demonstrating that Barclays was a good faith purchaser. (Barclays Sale Hearing Tr. 215:6-215:15.)

In so doing, the Bankruptcy Court expressly found that "ample" evidence established that the Barclays Sale "was an arm's length transaction" that had been "negotiated aggressively" in "two stages after the deal fell apart." The Bankruptcy Court described the negotiations as "brisk" and noted that the negotiating parties were "concerned about the markets" and thus conducted the negotiations and Sale approval process "at breakneck speed." (Barclays Sale Hearing Tr. 215:23-216:8.) As further evidence of the good faith nature of the Barclays Sale, the Bankruptcy Court pointed out that there had been further negotiation and compromise concerning the sale price of the commercial real estate that was being sold to Barclays. (Id.)

### C.   Disposition by the Bankruptcy Court.

At the close of the September 19, 2008 Barclays Sale hearing (which extended into the early morning hours of September 20), the Court approved the Barclays Sale, subject to modifications made on the record at the hearing, by an opinion read into the record and approval orders entered in the Chapter 11 Cases and in the SIPA Proceeding. By so doing, the Bankruptcy Court expressly overruled Bay Harbour's objection, which had been filed with the Court that day, and found, among other things, that Barclays was a good faith purchaser under section 363 of the Bankruptcy Code and as such was entitled to take the Purchased Assets free and clear of any liabilities.

15

In ultimately overruling the dozens of Sale objections, including Appellants', it is

evident that the Bankruptcy Court believed that it had no choice but to approve the sale

immediately because of concerns about the global economy and that these generalized

concerns overshadowed the specific issues raised by Bay Harbour and other objectors.

The hearing transcript is peppered with the Bankruptcy Court's own ipse dixit findings

regarding the significance of the Sale. Thus, for example, the Bankruptcy Court found,

without citation to any evidence in the record, that:

- the Sale was "so significant" to the [capital] markets and the United States economy and to the world economy (Barclays Sale Hearing Tr. 84:10-84:12.);
- "palpable, potential, devastating damage to the markets [would] be caused if this transaction is not approved" (Barclays Sale Hearing Tr. 170:16-170:20.);
- "[w]e must close this deal this weekend not because the markets demand it, although that's certainly a part of it. Lehman Brothers became a victim. In effect, the only true icon to fall in the tsunami that has befallen the credit markets" (Barclays Sale Hearing Tr. 248:20-248:23.);
- "[w]hat we're doing is unheard of but imperative" (Barclays Sale Hearing Tr. 250:11-250:12.);
- "the consequences of not approving this transaction could prove to be truly disastrous" (Barclays Sale Hearing Tr. 250:16-250:18.);
- "The harm to the . . . national economy and the global economy could prove to be incalculable" (Barclays Sale Hearing Tr. 250:20-250:21.);
- "But I also know that this is so exceptional relative to the experience that I have both as a bankruptcy lawyer and judge to know that it could never be deemed a precedent for future cases unless someone could argue that there is a similar emergency. It's hard for me to imagine a similar emergency" (Barclays Sale Hearing Tr. 251:21-252:2.).

The Bankruptcy Court's belief that it needed to close the Barclays Sale that night or risk

further economic chaos, calls into serious question the Bankruptcy Court's ability to

consider whether, in rushing forward, it was objectively assessing evidence to determine

the best interests of Lehman's creditors, who had been largely excluded from any

meaningful participation in the process, and whether Barclays was a good faith purchaser.[2]

### D.    The Appeal.

On September 20, 2008, the Bankruptcy Court entered the Sale Orders. The following day, on September 21, 2008, Bay Harbour filed a Notice of Appeal, which was amended the following day. *Amended Notice of Appeal - Corrected Notice of Appeal filed by David M. Friedman on behalf of BHCO Master Ltd, Bay Harbour Management LC, Bay Harbour Master Ltd., Institutional Benchmarks, MSS Distressed & Opportunities 2, Trophy Hunter Investments Ltd.* [Bankruptcy Court Docket No. 262] Thereafter, on October 1, 2008, Bay Harbour filed a Designation of Record and Statement of Issues Presented on Appeal. *Designation of Record and Statement of Issues Presented on Appeal from Orders of the Bankruptcy Court Entered September 20, 2008 filed by David S. Rosner on behalf of BHCO Master Ltd, Bay Harbour Management LC, Bay Harbour Master Ltd., Institutional Benchmarks, MSS Distressed & Opportunities 2, Trophy Hunter Investments Ltd.* [Bankruptcy Court Docket No. 502] On October 10, 2008, LBHI filed, as amended, its Statement of Issues Presented on Appeal and Counterdesignation of Additional Items To Be Included in the Record on Appeal. *Lehman Brothers Holdings Inc. et al.'s Amended Statement of Issues Presented on Appeal and Counterdesignation of Additional Items to be Included in the Record on Appeal in Connection with the Appeal of Bay Harbour Management L.C., Bay Harbour Master Ltd. et al. from Orders of Bankruptcy Court Entered September 20, 2008*

---

[2]  It cannot be gainsaid then or now that the "sale" of Lehman, or any other recent major action in the financial world (i.e. non-bankruptcy sale of Bear Stearns, FDIC takeovers, bank mergers, TARP, etc.), provided a net benefit or harm to the nation's economy.

[Bankruptcy Court Docket No. 801] On October 13, 2008, Barclays filed its Statement of Issues Presented on Appeal and Counterdesignation of Additional Items To Be Included in the Record on Appeal. *Barclays Capital, Inc.'s Statement of Issues Presented on Appeal and Counterdesignation of Additional Items to be Included in the Record on Appeal in Connection with the Appeal of Bay Harbour Management L.C., Bay Harbour Master Ltd. et al. from Orders of Bankruptcy Court Entered September 20, 2008, dated October 13, 2008* [Bankruptcy Court Docket No. 897]

## IV.    SUMMARY OF ARGUMENT

The Sale Orders grant Barclays extraordinary relief and, in the process, run roughshod over the statutory protections afforded creditors under both the Bankruptcy Code and the United States Constitution. In seeking approval of the Barclays Sale, on two days' notice and without allowing creditors any opportunity to conduct discovery or meaningfully to investigate the Sale process, the Debtors argued that an extremely expedited Sale was necessary purportedly to stabilize confidence in the marketplace, save jobs, and minimize Debtors' losses. However laudable these goals, they are not relevant to a Section 363 sale transaction and cannot come at the expense of fundamental due process or innocent prime brokerage customers, such as Bay Harbour, who have been potentially defrauded out of billions of dollars.

It is uncontroverted that, on the day of the Barclays Sale Hearing, LBIE, in a sworn declaration, advised the Court that, shortly before the Petition Date, Debtors misappropriated more than $8 billion dollars by transferring securities and cash out of LBIE prime brokerage accounts without providing any consideration in return. LBIE's disclosure of the findings of its preliminary investigation regarding the transfer of the

18

Defalcated Funds, only hours before the Bankruptcy Court was to conduct a hearing to

approve a Sale that contemplated that Barclays, as a good faith purchaser who takes free

and clear, was to receive a substantial portion of securities held by the Debtor and LBI,

should have been sufficient to halt proceedings in a United States Federal Court to ensure

that the court was not approving the misappropriation of assets belonging to third parties,

not the Debtors. At a minimum, a Federal Court should not be a party, not only to further

transfers, but to a finding absolving a potentially complicit party of any liability for

having caused or benefited from the transfer.

Here, the Bankruptcy Court, after being appraised by LBIE that the Defalcated

Funds had been misappropriated by Debtors and additional funds might yet be missing,

did not even give a moment's pause before it went stampeding ahead with a Sale that it

asserted the world was depending upon it to close. Consequently, the adequacy of the

due process afforded creditors, like Bay Harbour, whose future rights potentially to

recover these assets from Barclays were about to be eliminated in ways expressly

prohibited by the Bankruptcy Code, failed to meet Constitutional muster.

Not surprisingly, in approving the Barclays Sale later that same evening, the

Bankruptcy Court, who neither conducted any investigation of its own nor allowed any

creditor the opportunity to take any discovery, ignored the elephant in the room that was

the Defalcated Funds issue. Instead, the Bankruptcy Court, even while allowing that the

misappropriation of the Defalcated Funds raised serious questions, simply decided that

the questions could be left for another day as the Bankruptcy Court deemed these

questions to have no bearing on its consideration of whether Barclays was a good faith

purchaser. The Bankruptcy Court's statement assumes the conclusion that Barclays was not involved with, nor had knowledge of, the Defalcated Funds.

The primary question before the Court on appeal is whether the Bankruptcy Court committed reversible error by finding that Barclays is a good faith purchaser where the question of whether Barclays, who had been in negotiations with Lehman regarding the purchase of all or some of Lehman's assets both shortly before and immediately after the Petition Date, knew about, benefited from or was otherwise involved in the transfer of the Defalcated Funds went uninvestigated and unanswered during the two-day notice period provided for in the Barclays Sale process. In refusing to even consider whether the Defalcated Funds question implicated Barclays' status as a good faith purchaser, the Bankruptcy Court committed three reversible errors.

First, by failing to consider Barclays' potential status as a good faith purchaser in light of uncontroverted evidence in the record regarding the misappropriation of the Defalcated Funds, the Bankruptcy Court erred when it concluded that Barclays was a good faith purchaser pursuant to Section 363 of the Bankruptcy Code. Quite simply, the Bankruptcy Court, having found ample smoke in the record, should not have then held that there was no underlying fire without first allowing for meaningful discovery into the facts. The Bankruptcy Court's finding that Barclays was a good faith purchaser, which is premature at best and ignores critical evidence raising serious doubts about its propriety, should not be left to stand.

Second, even accounting for the so-called extraordinary circumstances surrounding the Barclays Sale,[3] the Bankruptcy Court nevertheless committed reversible error by violating the due process clause of the Fifth Amendment of the Constitution. By rendering a good faith finding, after a two-day notice period, without allowing any potentially aggrieved creditor an opportunity to take discovery or conduct an investigation regarding Barclays' complicity, role or involvement in the transfer and dissipation of the Defalcated Funds, the Bankruptcy Court deprived interested parties the meaningful opportunity to be heard that substantive due process requires.

Third, the Bankruptcy Court erred in finding, pursuant to Bankruptcy Code Sections 105(a) and 363(f), that the Barclays Sale was free and clear of liabilities to Barclays. It is axiomatic that only bona fide good faith purchasers are entitled to a finding that they are taking assets free and clear. Because the record, when considered in its totality, does not support the Bankruptcy Court's good faith purchaser finding, unless and until a meaningful investigation is made and it is established that Barclays had no role in nor derived no benefit from the misappropriation and dissipation of the Defalcated Funds, the Bankruptcy Court's free and clear finding must be reversed and the Sale Order remanded for further proceedings.

---

[3] Few, if any, sales under § 363(b) of the Bankruptcy Code are not postured as "extraordinary" and the circumstances "exigent". See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that "the rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application").

## V.    ARGUMENT

### A.    The Bankruptcy Court Erred in Concluding That Barclay's Was a Purchaser In Good Faith Pursuant to Section 363 of The Bankruptcy Code.

The United States Court of Appeals for the Second Circuit has held that the "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings" and that "where there is a lack of such integrity, a good faith finding may not be made." Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997). A purchaser's good faith is precluded by a showing of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id. at 390; see also In re Abbotts Dairies, Inc., 788 F.2d 143, 147 (3d Cir. 1986) (same). The good-faith analysis thus focuses on "the purchaser's conduct in the course of the bankruptcy proceedings" and includes "the purchaser's actions in preparation for and during the sale itself." In re Gucci, 126 F.3d at 390. Here, any such analysis necessarily would have required that the Bankruptcy Court consider Barclays conduct in originally considering a purchase of Lehman's entire business, its decision to walk away from that proposed deal, and its conduct in returning to the negotiating table after Lehman's financial condition and bargaining power had substantially deteriorated.

While "good faith" is not defined by Section 363 of the Bankruptcy Code, most courts have adopted a traditional equitable definition of "one who purchases the assets for value, in good faith, and without notice of adverse claims." In re Gucci at 390 (emphasis added); In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 8 (1st Cir. 1993) ("a good faith purchaser 'is one who buys property in good faith and for value, without knowledge

22

of adverse claims'") (emphasis added). Here, under the traditional equitable definition of

"good faith," the Bankruptcy Court's finding that Barclays was a good faith purchaser

who purchased the assets "*without notice of adverse claims*" cannot withstand scrutiny.

By refusing to allow any meaningful inquiry into the question of whether Barclays had

any role in, or knowledge regarding, the misappropriation of the Defalcated Funds, the

Bankruptcy Court had no evidentiary basis to support its conclusion that Barclays

purchased the assets without knowledge that some or all of the Defalcated Funds were

being conveyed to them or had been used to prop up LBI in contemplation of its Sale.

 The Bankruptcy Court's factual findings that the transaction was at "arm's

length" and "aggressively negotiated" cannot cure the fatal defect in its good faith

holding, which did not address the adverse claims issue.  The evidence relied on by the

Bankruptcy Court to support its good faith finding says nothing about whether, in light of

the unrebutted evidence concerning the Defalcated Funds, Barclays had notice that the

Debtors did not own some or all of the assets it was selling, and thus could not convey

clean title, or had used these Defalcated Funds to prop up LBI or otherwise support the

Sale.  See United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525,

542, 92 L. Ed. 746 (1948) (holding that "a finding is clearly erroneous when although

there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed").

 Here, once LBIE raised the Defalcated Funds issue before approval of the Sale,

the Bankruptcy Court had two choices.  It could have allowed interested parties an

opportunity to conduct a substantive inquiry into whether Barclays was at all complicit in

the misappropriation and dissemination of the Defalcated Funds thus enabling the

23

Bankruptcy Court to decide the good faith question based on record evidence. Or, failing

that, it could have approved the Sale but reserved its holding on the good faith question

until such time as an investigation was completed. See Thomas v. Namba (In re

Thomas), 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002) ("a bankruptcy court may, in the

absence of a well-developed factual record, prefer to take the cautious approach of either

refusing to make 'good faith' findings or limiting remarks about 'good faith' to the

nonspecific observation that the court has no reason to doubt that the parties are

proceeding in 'good faith.'").

Unfortunately, perhaps misguided by a stated obligation to the "global capital

markets," rather than fealty to the Bankruptcy Code and Lehman creditor interests, the

Bankruptcy Court took neither of the above courses. Rather, the Bankruptcy Court

ignored the serious issues raised by Appellants and LBIE and determined that these same

issues had nothing to do with its own evaluation of Barclays' conduct as Purchaser or its

approval of the Barclays Sale. As much as the Bankruptcy Court, in light of the

professed emergent circumstances, might have wanted to believe Barclays had conducted

itself in good faith, the Bankruptcy Court committed reversible error when it foreclosed

any factual investigation into Barclays' conduct and then issued findings based on its

own speculation that Barclays was not complicit in or a beneficiary of the

misappropriation of the Defalcated Funds.

Moreover, the Bankruptcy Court had nothing but speculation to go on because

Barclays presented not a scintilla of evidence before or during the Sale hearing regarding

its own conduct throughout the course of its negotiations with Lehman. By substituting

its own speculation for credible, admissible evidence, the Bankruptcy Court improperly

relieved Barclays of its and the Debtors' burden of proof. See 3 COLLIERS ON

BANKRUPTCY ¶ 363.11 (15th Ed. Rev. 2008)(burden of proof to show good faith is on the

proponent of good faith and may not be assumed) (citing T.C. Investors v. Joseph (In re

M Capital Corp.), 290 B.R. 743 (B.A.P. 9th Cir. 2003)).

### B.    The Bankruptcy Court Erred In Concluding That The Sale Complied With The Due Process Clause Of The Fifth Amendment Of The United States Constitution.

A court cannot make a binding finding of fact without providing litigants notice

and a meaningful opportunity to be heard. See U.S. CONST. amend. V. The fundamental

rules of due process apply with equal force to bankruptcy proceedings. "The normal

operation of the Bankruptcy Code . . . is predicated on the satisfaction of constitutional

standards of due process." In re Arch Wireless, 332 B.R. 241, 252 (Bankr. D. Mass.

2005). The notice required by due process is "notice reasonably calculated under all the

circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co.,

339 U.S. 306, 314 (1950). "The statutory command for notice embodies a *basic principle*

*of justice - that a reasonable opportunity to be heard must precede judicial denial of a*

*party's claimed rights.*" City of New York v. N.Y., N.H. & Hartford R.R., 344 U.S. 293,

297 (1953) (emphasis added); W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage

Indus.), 43 F.3d 714, 721 (1st Cir. 1994) ("Bankruptcy Code § 102(1) [requiring

appropriate notice and appropriate hearing] is founded in fundamental notions of

procedural due process"). "Specifically, the reorganization process depends upon all

creditors and interested parties being properly notified of all vital steps in the proceeding

so they may have the opportunity to protect their interests." Reliable Elec. Co. v. Olson

Constr. Co., 726 F.2d 620, 623 (10th Cir. 1984); In re Stilwell, 120 F.2d 194 (2d Cir.
1941) (same).

The parties in interest, including Appellant, were not afforded due process to
conduct discovery into the background of the Barclays Sale, and there was thus no basis
for the Bankruptcy Court to give Barclays good faith purchaser protection. Cf. Greene v.
McElroy, 360 U.S. 474, 496 (1959) ("[W]here governmental action seriously injures an
individual, and the reasonableness of the action depends on fact findings, the evidence
used to prove the Government's case must be disclosed to the individual so that he has an
opportunity to show that it is untrue.") (quoted with approval in Goldberg v. Kelly, 397
U.S. 254, 270 (1970)). Rather, Appellants were provided a scant two-days' notice to
digest a complex, rapidly evolving Sale and were afforded no opportunity whatsoever to
conduct an investigation, even after one of Debtors' affiliates raised serious questions
regarding Debtors' and Barclays' conduct in connection with the Sale.

The Second Circuit has noted that "[t]he opportunity for a creditor to participate
in bankruptcy proceedings is of obvious importance." Massa v. Addona (In re Massa),
187 F.3d 292, 296 (2d Cir. 1999). Indeed, the Second Circuit has said that it will "'look
to the totality of the circumstances' in determining whether a creditor was adequately
apprised of the proceeding." Id. at 297; see also In re Dinova, 212 B.R. 437, 443 (B.A.P.
2d Cir. 1997) ("One circumstance to consider is whether the alleged inadequacy of notice
prejudiced the aggrieved party. Another circumstance is whether notice was given in
time for the aggrieved party to take meaningful action in response to the impending
deprivation of rights.") (citations omitted).

Here, the Bankruptcy Court, at the Sale Procedures hearing, noted that it was struggling with maintaining the proper balance between the need to approve the Sale on an incredibly expedited basis and the need to provide interested parties substantive due process. (Sale Procedures Hearing Tr. 26:20-28:22.) Whatever equipoise the Bankruptcy Court had struck at the Sale Procedures hearing between the need to proceed expeditiously and the need to provide meaningful process, that balance was thrown when, a day or so later, LBIE advised the Bankruptcy Court, in an unrebutted declaration, that the Debtors had misappropriated the Defalcated Funds. (Schwarzmann Dec. ¶¶25-27.)

Indeed, once the $8 billion went missing, a substantial portion of which is comprised of funds and assets held by LBIE as a prime-broker for the account of others, the Bankruptcy Court, to ensure that interested and potentially aggrieved parties were provided substantive due process, should have either delayed confirmation of the Sale until some investigation into the Defalcated Funds could be completed or, failing that, approved the Sale but reserved its finding on the question of whether Barclays was a good faith purchaser. Instead, the Court, after foreclosing all opportunity for aggrieved parties to develop the evidence through discovery, held, in part, that Barclays was entitled to a good faith purchaser finding because there was no evidence in the record (even though none could have been proffered without discovery), tending to establish that it had anything to do with the misappropriation of the Defalcated Funds. (Barclays Sale Hearing Tr. 215:18-216:18.)

However, substantive due process compels that a potentially aggrieved party be provided a meaningful opportunity to discover relevant evidence before a court concludes that there is an absence of evidence supporting its claimed rights. And it was Barclays

27

and the Debtors who bore the affirmative burden of proving good faith; not Appellants to

disprove it. Here, having neither provided aggrieved parties with an opportunity to

conduct an investigation nor reserved judgment on the question of whether Barclays was

a good faith purchaser, the Bankruptcy Court failed to provide substantive due process

thus precluding it from finding that Barclays was a good faith purchaser.

      **C.**    **The Bankruptcy Court Erred In Concluding, Pursuant To
Bankruptcy Code Sections 105(a) And 363(f), That The Sale
To Barclays Was Approved Free And Clear Of Liabilities.**

Although there may be exigencies justifying the sale of property *validly owned by*

*the Debtor*, those exigencies do not justify selling assets that are not property of the estate

and without a factual investigation into title and transfer. The unprecedented pace of the

Barclays Sale, the lack of disclosure of the facts leading up to the Barclays Sale, and the

broad scope of the transaction precluded parties in interest from conducting appropriate

and meaningful factual investigation through discovery.

Section 363 of the Code authorizes a trustee in bankruptcy to sell property of the

estate. 11 U.S.C. § 363(b)(1). Under section 363(f) of the Code, the trustee is further

permitted to sell the property free and clear of interests in the property. 11 U.S.C. §

363(f). However, courts have held that such sales "are subject to review on appeal as to

whether the purchaser acted in 'good faith'" under Section 363(m). See In re Perona

Bros., Inc., 186 B.R. 833, 839 (D.N.J. 1995) (remanding for the purpose of determining

whether the purchaser acted in "good faith").

Moreover, "[t]he well established rule that sales within a bankruptcy proceeding

occur free and clear of any interest is founded upon the principle that good faith

purchasers receive good title to the property and that any claims against the property

attach to the proceeds." In re Lady H Coal Co., 199 B.R. 595, 605 (Bankr. W. Va. 1996);

see also In re Aneco Elec. Constr., Inc., 377 B.R. 338, 342 (Bankr. M.D. Fla. 2006)

(same). Whatever the scope of definition of "interest", however, it is axiomatic that only

a good faith purchaser can receive good title. Id.

As discussed supra, the Bankruptcy Court's finding that Barclays is a good faith

purchaser is premature at best and flat out wrong at worst and, in addition, it violates

Appellants' substantive due process rights as it was rendered without providing

potentially aggrieved parties a reasonable opportunity to conduct the type of factual

investigation necessary to allow them to meaningfully be heard. Because the good faith

purchaser finding was made in error, the Bankruptcy Court's free and clear finding

similarly must fall.[4]

Here, the Defalcated Funds apparently include funds from customer accounts at

LBIE. LBI indisputably acted as agent for customers and promised to maintain the

customer's accounts pursuant to the prime brokerage agreement. Now, after Bay

---

[4] Debtors can only sell assets to which it has good title and that are property of the estate.
11 U.S.C. § 541. The Debtor cannot sell assets owned by third parties, nor can it sell
assets subject to a constructive trust because they are not property of the estate as a matter
of law. Indeed, New York law provides that a constructive trust arises against an entity
that, by fraud or by abuse of confidence, or by commission of a wrong or other form of
unconscionable conduct, artifice, concealment, or questionable means, either has
obtained or holds the legal right to property which in equity and in good conscience it
ought not to hold. Silverman v. K.E.R.U. Realty Corp., In re Allou Distrib., Inc. 379
B.R. 5, 39 (Bankr. E.D.N.Y. 2007); TeseMilner v. TPAC, LLC In re TicketPlanet.com,
313 B.R. 46, 48 (Bankr. S.D.N.Y. 2004). Without any investigation into the transfer of
the Defalcated Funds, it cannot be determined whether Barclays, by fraud or by abuse of
confidence, or by commission of a wrong or other form of unconscionable conduct,
artifice, concealment, or questionable means, unjustly enriched itself by acquiring assets
rightly belonging to potentially defrauded customers such as Bay Harbour.

Harbour deposited funds with LBI and LBIE in reliance on that promise, Barclays has been unjustly enriched to the extent that the Defalcated Funds have been transferred to Barclays free and clear of all associated claims. Because there was no evidentiary or equitable basis for the Bankruptcy Court's finding that Barclays is a good faith purchaser, the Bankruptcy Court erred in approving the Sale free and clear of any liability to Barclays.

## CONCLUSION

Based on the foregoing, Bay Harbour respectfully requests that the Court reverse the Bankruptcy Court's finding that Barclays was a purchaser in good faith pursuant to section 363 of the Bankruptcy Code and remand for further proceedings.

Dated: New York, New York
       November 14, 2008

                              Respectfully submitted,

                              KASOWITZ, BENSON, TORRES
                                & FRIEDMAN LLP

                              By: /s/ David S. Rosner
                                    David S. Rosner (DR-4214)
                                    Andrew K. Glenn (AG-9934)
                                    Ronald R. Rossi (RR-9423)

                                  1633 Broadway
                                  New York, New York 10019
                                  (212) 506-1700

                                  Attorneys for Appellants

30

# BCI EXHIBIT

# 28

SIDLEY AUSTIN LLP
Robert W. Hirth (RH-2526)
Lee S. Attanasio (LA-3054)
787 Seventh Avenue
New York, New York  10019
Tel:  (212) 839-5300
Fax:  (212) 839-5599

Attorneys for Plaintiff The Options Clearing Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re                                                 :

                                                      :       Case No. 08-01420 (JMP) SIPA

LEHMAN BROTHERS INC.,                                 :

            Debtor.                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE OPTIONS CLEARING CORPORATION,                     :

            Interpleader Plaintiff,                   :       Adversary Proceeding
                                                      :       No. _____
      v.                                              :

BARCLAYS CAPITAL INC., AUSTRALIA &                    :
NEW ZEALAND BANKING GROUP LTD.,                       :
BANK OF TOKYO-MITSUBISHI UFJ, LTD.,                   :
LLOYDS TSB BANK plc, and JAMES W.                     :
GIDDENS, in his capacity as Trustee for              :
Lehman Brothers Inc.                                  :

            Interpleader Defendants.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## INTERPLEADER COMPLAINT

Plaintiff The Options Clearing Corporation ("OCC"), by its attorneys, Sidley Austin LLP,

for its Interpleader Complaint, alleges as follows:

## NATURE OF THE ACTION

1.      This is an interpleader action brought under Rule 7022 of the Federal

Rules of Bankruptcy Procedure and Rule 22 of the Federal Rules of Civil Procedure for the

purpose of obtaining an adjudication of the respective rights of the interpleader defendants with

respect to certain funds held by OCC.

2.      With respect to the funds at issue, OCC faces competing claims by the

interpleader defendants and thus is exposed to multiple liability with respect to its disposition of

such funds absent Court resolution of the competing claims.  By way of this proceeding, OCC

seeks to extricate itself from the dispute by depositing the funds into the Court registry.

## JURISDICTION AND VENUE

3.      This adversarial proceeding arises from and is related to the liquidation

proceedings of Lehman Brothers Inc. ("LBI"), case captioned *In re Lehman Brothers Inc.*, Case

08-01420 (the "Liquidation Proceeding"), which is currently pending in the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to

the Securities Investor Protection Act of 1970 ("SIPA").

4.      The Court has jurisdiction over the subject matter of this adversarial

proceeding under 28 U.S.C. § 157 and 28 U.S.C. § 1334.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

6.      The Court has personal jurisdiction over the defendants under Rule

7004(f) of the Federal Rules of Bankruptcy Procedure.

## PARTIES

7.      Plaintiff OCC is a Delaware corporation with its principal place of

business located in Chicago, Illinois.  It is a registered clearing agency regulated by the

2

Securities and Exchange Commission and a registered derivatives clearing organization regulated as such by the Commodity Futures Trading Commission.

8.    Upon information and belief, defendant Barclays Capital Inc. ("Barclays") is a Connecticut corporation with its principal place of business located in New York, New York.

9.    Upon information and belief, defendant Australia & New Zealand Banking Group Ltd. ("ANZ") is a bank organized under the laws of Australia, and has an office located at 1177 Avenue of the Americas, New York, New York 10036.

10.    Upon information and belief, defendant Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") is a bank organized under the laws of Japan, and has an office located at 1251 Avenue of the Americas, New York, New York 10020.

11.    Upon information and belief, defendant Lloyds TSB Bank plc ("Lloyds") is a bank organized under the laws of the United Kingdom, and has an office located at 1251 Avenue of the Americas, New York, New York 10020.

12.    Upon information and belief, by order of the United States District Court for the Southern District of New York, defendant James W. Giddens was appointed as trustee (the "Trustee") for the liquidation of the business of LBI under SIPA.

## BACKGROUND

13.    At all relevant times prior to the commencement of the Liquidation Proceeding on September 19, 2008, LBI was a clearing member of OCC and maintained options and futures accounts at OCC.

14.    On September 19, 2008, and prior to the commencement of the Liquidation Proceeding, OCC exercised its rights pursuant to OCC Rules to draw down on the following five letters of credit deposited as margin in LBI's accounts: (1) No. SO4743/8200 issued by Australia & New Zealand Banking Group Ltd NY Branch in the amount of

3

$15,598,500.00; (2) No. SO4744/8200 issued by Australia & New Zealand Banking Group Ltd

NY Branch in the amount of $5,098,500.00; (3) No. S015193 issued by Bank of Tokyo-

Mitsubishi UFJ, Ltd NY Branch in the amount of $35,100,000.00; (4) No. NYSB2008730

issued by Lloyds TSB Bank plc in the amount of $25,000,000.00; and (5) No. SB237405 issued

by Bayerische Hypo-und Vereinsbank AG in the amount of $1.00.

15.    The proceeds of the five letters of credit drawn down in full by OCC on

September 19, 2008 totaled $80,797,001.00 (the "LC Proceeds").

16.    On September 19, 2008, the United States District Court for the Southern

District of New York entered an order placing LBI into liquidation under the auspices of the

Securities Investor Protection Corporation, appointing the Trustee and removing the Liquidation

Proceeding to the Bankruptcy Court.

17.    On September 19, 2008, the Bankruptcy Court entered an Order [Docket

No. 3] approving, and incorporating by reference for purposes of the Liquidation Proceeding, the

Order, entered in the bankruptcy case of Lehman Brothers Holdings, Inc., et al (Case No. 08-

13555), Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens

and Other Interests (the "Sale") and (B) Assumption and Assignment of Executory Contracts and

Unexpired Leases, dated September 19, 2008 (the "Sale Order") [Case No. 08-13555, Docket

No. 258]. The Bankruptcy Court found in Paragraph N of the Sale Order that "all securities,

cash, collateral and other property transferred to accounts of the Purchaser [Barclays] at OCC

shall be subject to all rights of OCC therein in accordance with the By-Laws and Rules of OCC

including, without limitation, the security interests and setoff rights of OCC with respect

thereto."

18.    As contemplated, authorized and approved by the Sale Order, on or about

September 20, 2008, LBI, OCC and Barclays entered into a Transfer and Assumption Agreement

4

effective as of the consummation of the Sale. The Agreement provides, among other things, that LBI "sells, assigns, transfers, and sets over to Barclays . . . all of [LBI's] rights, title, interests, powers, privileges, remedies, obligations, and duties in, to, under, and in respect of" LBI's options and futures accounts at OCC and that Barclays "assumes and agrees to perform each obligation arising out of or to be performed with respect to the activity" in the accounts.

19.    OCC has communicated with each of the parties in an effort to reach a resolution concerning who is entitled to the LC Proceeds. For example, by letter dated October 14, 2008, OCC informed each of the parties of its understanding of the issues and requested a meeting of all interested parties with the hope of reaching a mutually agreed upon resolution. OCC's efforts to reach a resolution without burdening the Court have been unsuccessful.

## THE DISPUTE

20.    By letter dated October 6, 2008, Lloyds advised OCC that the proceeds from the Lloyds letter of credit "should be returned to Lloyds on the ground that OCC no longer has any exposure to LBI since LBI's accounts and the obligations relating thereto have been assumed by Barclays. Further, Lloyds is subrogated to the rights of LBI for the return of any unused Standby L/C Proceeds."

21.    On or about October 20, 2008, ANZ indicated to OCC that it had no claim to the proceeds from the ANZ letters of credit and would likely be willing to release OCC from any liability with respect to any disposition of such proceeds provided that ANZ would not thereby incur any liability to any other party.

22.    By email dated November 7, 2008, Barclays advised OCC that Barclays is entitled to the LC Proceeds. Barclays further advised OCC that it had not "assumed any reimbursement obligations to the letter of credit issuers."

5

23.    By email dated November 10, 2008, BTMU advised OCC that it believed

that Barclay's position was without merit and demanded that OCC hold the proceeds from the

BTMU letter of credit until resolution of the dispute is reached by agreement or by a final court

order binding on the parties.

24.    By email dated November 14, 2008, counsel for the Trustee advised OCC

that it disagreed with Barclay's position, and that "until there has been a resolution as to which

party retains the corresponding reimbursement obligations to the LC Issuers, we do not think it

would be appropriate to regard Barclays as having succeeded to the benefit of the cash proceeds

that the LC Issuers provided to OCC. Moreover, we believe that LBI in any event is entitled to

any return of any cash collateral posted by LBI to secure, and Barclays should reimburse LBI for

any LBI-posted cash collateral that is used to satisfy, any reimbursement obligation of LBI to an

LC Issuer."

25.    OCC has informed the parties that it will not release the LC Proceeds to

any party absent an agreement among all interested parties or a determination binding on all

parties as to the rightful owner.

26.    OCC has no interest in the LC Proceeds and is a mere stakeholder.

27.    Because OCC is unable to determine which party is entitled to the LC

Proceeds, it commences this adversarial proceeding in the nature of interpleader against those

parties that claim, or may claim, an interest in the LC Proceeds.

28.    Unless the conflicting and adverse claims to the LC Proceeds are disposed

of in a single proceeding, OCC will be subject to multiple litigation. In addition, unless the

defendants in this adversarial proceeding are restrained or enjoined from commencing or

prosecuting suits against OCC, OCC will be subject to multiple claims with respect to the LC

Proceeds.

6

29.    OCC intends to deposit the LC Proceeds (totaling $80,797,001.00) into the registry of the Court.

## PLEA FOR RELIEF

**WHEREFORE**, OCC respectfully requests that the Court enter an order:

(a) Requiring defendants to interplead and settle all claims to the LC Proceeds between themselves and any other persons who claim or may claim an interest, beneficial or legal, in such proceeds;

(b) Instructing OCC to deposit the amount of the LC Proceeds into the registry of the Court to await a determination of ownership;

(c) Restraining defendants, and all claiming through or acting with them, from commencing or prosecuting any separate proceeding against OCC concerning or relating to the issues in this action;

(d) Relieving and discharging OCC from any and all liability to the defendants with respect to the LC Proceeds;

(e) Awarding OCC its costs and disbursements, including legal fees and expenses, with respect to this action and the distribution of the LC Proceeds; and

(f) Awarding OCC such other and further relief as the Court may deem just,

proper and equitable.

Dated: New York, New York
      December 4, 2008

                                      SIDLEY AUSTIN LLP

                            By: _____

                                      Robert W. Hirth (RH-2526)
                                      Lee Attanasio (LA-3054)
                                      787 Seventh Avenue
                                      New York, New York  10019
                                      (212) 839-5300

                                      Attorneys for Plaintiff
                                      The Options Clearing Corporation

**B104 (FORM 104)**

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>THE OPTIONS CLEARING CORPORATION | **DEFENDANTS**<br>BARCLAYS CAPITAL INC., AUSTRALIA & NEW ZEALAND BANKING GROUP LTD., BANK OF TOKYO-MISUBISHI UFJ, LTD., LLOYDS TSB BANK plc, and JAMES W. GIDDENS, in his capacity as Trustee for Lehman Brothers Inc. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Sidley Austin LLP<br>787 Seventh Avenue<br>New York, New York 10019, Attn: Robert W. Hirth, Esq., (212) 839-5300 | **ATTORNEYS** (If Known)<br>Hughes Hubbard & Reed LLP<br>c/o James W. Giddens, Trustee, Lehman Brothers Inc.<br>One Battery Park Plaza<br>New York, New York 10004 |
| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ■ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an interpleader action brought under Rule 7022 of the Federal Rules of Bankruptcy Procedure and Rule 22 of the Federal Rules of Civil Procedure for the purpose of obtaining an adjudication of the respective rights of the interpleader defendants with respect to certain funds held by The Options Clearing Corporation.

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et seq.
■ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought:  Interpleader | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>LEHMAN BROTHERS INC. | BANKRUPTCY CASE NO.<br>08-01420 | |
| DISTRICT IN WHICH CASE IS PENDING<br>SOUTHERN DISTRICT NEW YORK | DIVISION OFFICE<br>MANHATTAN | NAME OF JUDGE<br>JAMES M. PECK |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>Robert W. Hirth | | |
| DATE<br>12/5/08 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>ROBERT W. HIRTH | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

SIDLEY AUSTIN LLP
Robert W. Hirth (RH-2526)
Lee S. Attanasio (LA-3054)
787 Seventh Avenue
New York, New York  10019
Tel: (212) 839-5300
Fax:  (212) 839-5599

Attorneys for Plaintiff The Options Clearing Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re                                              :
                                                   :
                                                   :    Case No. 08-01420 (JMP) SIPA
LEHMAN BROTHERS INC.,                              :
                                                   :
          Debtor.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE OPTIONS CLEARING CORPORATION,                  :
                                                   :
          Interpleader Plaintiff,                  :    Adversary Proceeding
                                                   :    No. _____
     v.                                            :
                                                   :
BARCLAYS CAPITAL INC., AUSTRALIA &                 :
NEW ZEALAND BANKING GROUP LTD.,                    :
BANK OF TOKYO-MITSUBISHI UFJ, LTD.,                :
LLOYDS TSB BANK plc, and JAMES W.                  :
GIDDENS, in his capacity as Trustee for            :
Lehman Brothers Inc.                               :
                                                   :
          Interpleader Defendants.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RULE 7007.1 STATEMENT

Pursuant to Rule 7007.1 of the Federal Rules of Bankruptcy Procedure and to enable

Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the

undersigned counsel for interpleader plaintiff The Options Clearing Corporation ("OCC") hereby

certifies that the following are publicly held corporations that directly or indirectly own 10% or

more of OCC's equity interests:

      NASDAQ OMX Group, Inc.
      NYSE Euronext, Inc.
      Deutsche Börse AG

Dated: New York, New York
      December 4, 2008

                SIDLEY AUSTIN LLP


By: _____
             Robert W. Hirth (RH-2526)
             Lee Attanasio (LA-3054)
             787 Seventh Avenue
             New York, New York  10019
             (212) 839-5300

             Attorneys for Plaintiff
             The Options Clearing Corporation

NY1 6804538v.1

# BCI EXHIBIT

# 29

Hearing Date: _____ at _____.m. (prevailing Eastern Time)
Objection Deadline: _____ at 4:00 p.m. (prevailing Eastern Time)

James B. Kobak, Jr.
David W. Wiltenburg
Stephen Luger
Christopher K. Kiplok
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (JMP) SIPA |
| Debtor. | |

## MOTION UNDER 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019(a) FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT

James W. Giddens (the "Trustee"), as trustee for the SIPA liquidation of the

business of Lehman Brothers Inc. ("Debtor" or "LBI"), by and through his undersigned counsel,

hereby files this motion (the "Motion") pursuant to sections 105(a) and 363 of title 11 of the

United States Code, 11 U.S.C §§ 101-1330 (as amended, the "Bankruptcy Code") and Rule

9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of

a settlement and compromise among the Trustee, Barclays Capital Inc. ("Barclays") and

JPMorgan Chase Bank, N.A. ("JPMorgan") and as set forth in the settlement agreement, dated

December 5, 2008, attached hereto as Exhibit "1" (the "Settlement Agreement")[1] pursuant to which the Trustee, Barclays and JPMorgan have agreed to settle and compromise certain claims arising from transactions related to (i) the Replacement Transaction and (ii) the Purchase Agreement, as defined below. In support of the Motion, the Trustee respectfully represents as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code.

## II.    BACKGROUND

2.    Commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries (collectively, the "Chapter 11 Debtors") commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

3.    On September 16, 2008, certain of the Chapter 11 Debtors, LBI, and Barclays entered into an Asset Purchase Agreement (as amended and clarified from time to time, the "Purchase Agreement").

---

[1]    The Settlement Agreement attached hereto does not include a copy of Annex A, as to which Barclays, JPMorgan and the Trustee have filed a motion seeking permission to file under seal.

4.    On September 19, 2008 (the "Filing Date"), the Honorable Gerard E.
Lynch, Judge of the United States District Court for the Southern District of New York, entered
the Order Commencing Liquidation (the "LBI Liquidation Order") pursuant to the provisions of
the Securities Investor Protection Act ("SIPA") in the case captioned Securities Investor
Protection Corporation v. Lehman Brothers Inc., Case No. 08-CIV-8119 (GEL).

5.    The LBI Liquidation Order: (i) appointed the Trustee for the liquidation of
the business of the Debtor pursuant to SIPA section 78eee(b)(3); (ii) appointed counsel to the
Trustee pursuant to section 78eee(b)(3); and (iii) removed this case to this Court pursuant to
section 78eee(b)(1).

6.    On September 20, 2008, the Court entered an order approving the
Purchase Agreement and the various transactions contemplated therein. (Chapter 11 Cases
Docket No. 258.) On September 20, 2008, the Court entered a concurrent Order Approving, and
Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of
Purchased Assets and other Relief in the Lehman Brothers, Holdings Inc. Chapter 11 Proceeding
(Docket No. 3) thereby authorizing the Trustee to consummate the sale transaction on behalf of
LBI pursuant to the Purchase Agreement.

7.    The Settlement Agreement is designed to achieve the intended economic
outcome of certain transactions that were carried out under emergency conditions during the
days preceding and following the commencement of this SIPA proceeding. Under the leadership
of the Federal Reserve Bank of New York ("New York Fed"), the Securities and Exchange
Commission ("SEC") and the Secretary of the Treasury, the parties sought first to rescue
Lehman, and, when this proved impossible, to create circumstances that would permit an orderly
transfer of LBI customer accounts and an orderly liquidation of its business. The following

3

60416369_1 (4).DOC

factual summary, which includes discussion of events occurring prior to the Trustee's

appointment, is based upon the Declarations of Shari D. Leventhal ("Leventhal Decl."), Gerard

LaRocca ("La Rocca Decl.") and Jeffrey M. Moore ("Moore Decl.") in Support of Trustee's

Motion for Entry of an Order Approving a Settlement Agreement, submitted herewith.

### A.    The Replacement Transaction.

8.    During the week of September 15, 2008, following the chapter 11 filing of

LBHI, LBI continued to operate. As described by the New York Fed, this was a "carefully

thought out decision" designed to "facilitate an orderly wind-down" of LBI, and was supported

by New York Fed financing of LBI's payroll and operations. (Leventhal Decl. ¶6.) This

financing was on a fully secured basis, supported by LBI collateral. By September 17, the New

York Fed had funded to LBI $46.22 billion in cash and Treasury securities against $50.62 billion

in collateral. (Leventhal Decl. ¶9.)

9.    On September 17, 2008, Barclays agreed to replace the New York Fed in

funding LBI – that is, to "step into the shoes of the Fed." (See LaRocca Decl. ¶ 4; Leventhal

Decl. ¶7.) The parties understood this to mean that Barclays would provide funding through a

reverse repurchase transaction using essentially the same securities that had been pledged by LBI

to the New York Fed (the "Fed Portfolio"). (LaRocca Decl. ¶¶ 4-5.)

10.    The form of transaction selected by Barclays to effectuate the substitute

funding for LBI was a reverse repurchase transaction between Barclays and LBI, entered into on

September 18, 2008 (the "Replacement Transaction"). (Leventhal Decl. ¶12.) Pursuant to the

Replacement Transaction, LBI was to provide Barclays with $49.7 billion in securities in

exchange for $45 billion in cash. (Id.) This ratio was consistent with the ratio of cash to

securities used in the earlier repurchase agreement between LBI and the New York Fed on

September 17, 2008. (Id.)

4

11.    On September 18, 2008, Barclays initiated the process of transferring $45

billion to fund LBI overnight. A series of funds transfers were made using the Fedwire Funds

Service, which is operated by the New York Fed. By early evening of that date, the entire sum

of $45 billion had been transferred by Barclays to LBI. (Leventhal Decl. ¶11; LaRocca Decl. ¶

6.)

12.    Notwithstanding that both Depository Trust and Clearing Corporation

("DTCC") and the Fedwire Securities Service remained open for hours past their normal closing

times on September 18 in an effort to complete the delivery of the Fed Portfolio to Barclays,

operational issues interfered with the ability to transfer all of the securities. When DTCC closed

at 11 PM on September 18th, Barclays had received $42.7 billion of the approximately $49.7

billion in securities it was expecting under the terms of the Replacement Transaction. (Leventhal

Decl. ¶14.)

13.    LBI therefore agreed, either late on the night of September 18th or early in

the morning of September 19, 2008, to transfer $7 billion in cash (the "Subject Funds") to

Barclays at an account at JPMorgan. (Leventhal Decl. ¶15).   The expectation at that time was

that, the next day, LBI would transfer the remaining securities originally due under the

Replacement Transaction, and Barclays would transfer the Subject Funds to LBI. (Leventhal

Decl. ¶ 15; see LaRocca Decl. ¶ 7.)

14.    The transfer of the remaining securities was discussed on Friday

September 19 and into the weekend, but did not occur. (LaRocca Decl. ¶9.) On September 19,

SIPC commenced this proceeding and the Court approved the Purchase Agreement. The parties

then entered into the Clarification Letter to the Purchase Agreement (the "Clarification Letter"),

dated September 20, 2008. (LaRocca Decl. ¶10.) The closing pursuant to the Purchase

Agreement occurred early on Monday, September 22, 2008. (LaRocca Decl. ¶ 8; Leventhal

Decl. ¶19.)

   15. In the meantime, JPMorgan caused the Subject Funds to be transferred to

an LBI account at JPMorgan. (Leventhal Decl. ¶ 16.)

   16. The Clarification Letter provided that the Replacement Transaction was

terminated, and that the securities that had actually been delivered were "deemed to constitute

part of the Purchased Assets" under the Purchase Agreement. Accordingly, LBI would have no

further obligation to "repurchase" those securities under the repo and Barclays would not be

obligated to deliver such securities back to LBI. (LaRocca Decl. ¶ 10.)

   17. Barclays asserts that, at the time the Clarification Letter was finalized,

Barclays believed that the $7 billion in cash was in its account at JPMorgan (LaRocca Decl. ¶

11), and did not learn until Tuesday, September 23 (well after finalizing the Clarification Letter),

that the Subject Funds were not in Barclays' account at JPMorgan. (Id. ¶ 12.)

   18. As set forth in the accompanying affidavits, it is asserted that these events

left Barclays without the full consideration it had contracted for under the Replacement

Transaction and the Purchase Agreement. Barclays had neither the $7 billion nor its equivalent

value in securities that were originally to have been delivered pursuant to the Replacement

Transaction. (LaRocca Decl. ¶ 13; Leventhal Decl. ¶ 17.)

   19. The LBI Estate faces claims related to its retention of both the remainder

of the Fed Portfolio and the Subject Funds. The proposed settlement would convey to Barclays

cash and securities having a lesser value, due to "market events" since September 17. (Moore

Decl. ¶¶ 4-5.) The cash portion of the settlement consideration (leaving out distributions

received since September 19) is the sum of $1.25 billion and $7.1 million, which is $5.743

billion less than the amount that might be claimed. The securities portion of the settlement consideration, although difficult to value with precision, is today worth "substantially less" than $5.743 billion. (Moore Decl. ¶ 6.) The difference creates a settlement discount for the LBI Estate.

**B.    The Settlement Agreement.**

20.    The principal terms of the proposed Settlement Agreement are as follows:[2]

(a)  Barclays will receive (i) (x) the undelivered Fed Portfolio securities that have not been liquidated by JPMorgan (the "Settlement Securities"), together with (y) all principal and interest payments and any other distributions on the Settlement Consideration Fed Portfolio Securities (including, without limitation, the proceeds at maturity of any securities) attributable to the period on and after September 18, 2008, and (ii) $7,103,500 (representing the proceeds of certain Fed Portfolio Securities that initially were understood to be among the Settlement Consideration Fed Portfolio Securities but in fact have been liquidated by JPMorgan), plus, in the case of each of (i)(y) and (ii), interest accrued thereon from the time of receipt to the time of payment at the effective fed funds rate from time to time during such period.

(b)  To partially account for the undelivered Fed Portfolio Securities that will not be delivered to Barclays as part of the Settlement Securities (because they have been liquidated by JP Morgan) and the decline in value of the Settlement Securities since September 19, 2008, Barclays is to receive $1.25 billion in cash.

(c)  Barclays will receive $14,942,677.88 (representing principal and interest payments, and any other distributions, on the Delivered Securities attributable to the period on and after September 18, 2008 which were received in LBI and/or JPMorgan accounts and not heretofore paid to Barclays), plus interest accrued thereon from the time of receipt to the time of payment at the effective fed funds rate from time to time during such period (together with the payments described in paragraph (b), the "Settlement Payment").

---

2.  This summary is qualified in its entirety by reference to the Settlement Agreement, annexed hereto as Exhibit 1. In the event of any discrepancy between the Settlement Agreement and any description thereof contained in this Motion, the Settlement Agreement controls.

7

(d) The Settlement Securities and Settlement Payment will be remitted to Barclays from LBI accounts at JPMorgan. To facilitate the settlement, JPMorgan has agreed to release all liens on the Settlement Securities and Settlement Payment.

(e) The $7 billion of cash in LBI's account (referred to in paragraph 15 above) is acknowledged to have been applied against LBI's clearance advance obligations to JPMorgan, and the Settlement Securities, Settlement Payment and other amounts described in paragraphs 20(a) through (d) are not applied to such obligations.

(f) The parties will execute mutual limited releases.

### III.    RELIEF REQUESTED

21.    The Trustee has determined that protracted litigation over the foregoing events, with its attendant costs and risks, would not be in the best interest of the LBI Estate. By this Motion, the Trustee requests approval of the Settlement Agreement pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

### A.    Basis For Relief

22.    Under section 363(b) of the Bankruptcy Code, a debtor in possession or trustee may "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor. See Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141 (2d Cir. 1992); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts authority to

employ equitable principles in carrying out the Bankruptcy Code's provisions. See Momentum

Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136

(2d Cir. 1994).

      23.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by

the trustee and after notice and a hearing, the court may approve a compromise and settlement."

Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and

settlements if they are in the best interests of the estate." Vaughn v. Drexel Burnham Lambert

Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y.

1991). Accordingly, the Court is authorized to approve the settlement, on the terms set forth in

the Settlement Agreement.

      24.    In determining whether to approve a proposed settlement pursuant to

Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable,

reasonable, and in the best interests of the debtor's estate. Protective Comm. for Independent

Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424 (1968); In re Ionosphere

Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994). A decision to

approve a particular compromise or settlement is within the sound discretion of the bankruptcy

court. In re Drexel Burnham, 134 B.R. at 505. It is appropriate for the court to consider the

opinions of the trustee or debtor in possession that a settlement is fair and reasonable. Nellis v.

Shugrue, 165 B.R. 115, 122 (S.D.N.Y. 1994). In addition, the bankruptcy court should exercise

its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown &

Co., 217 B.R. 31 (Bankr. S.D.N.Y. 1998); see also Shugrue, 165 B.R. at 123 ("the general rule

[is] that settlements are favored and, in fact, encouraged by the approval process outlined

above").

25.    In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather, should "canvas the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Purofied Down Prods., 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits). "All that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." Florida Trailer & Equip. Co. v. Deal, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).

**B.    The Settlement Falls Within the Range of Reasonableness**

26.    In the instant case, both as an exercise of his business judgment for purposes of Section 363, and as a weighing of the reasonableness factors for purposes of Rule 9019, the Trustee has concluded that the Settlement Agreement should be approved.

27.    First, litigation based on LBI's retention of both the Subject Funds and the Fed Portfolio would be expensive and protracted, and would divert significant resources and attention of the Trustee, his counsel and staff.

28.    Second, the Estate is facing significant risk in the form of a claim in the amount of not less than $7 billion,. If such a claim were brought, it can be anticipated that a right to pre-judgment interest would also be claimed. Even at a relatively modest 6% rate (the CPLR currently specifies 9%), approximately $35 million per month of interest might be claimed to accrue while the issue remains unresolved. The settlement would avoid these risks in return for settlement consideration in an amount substantially less than the potential exposure.

10

29.    Finally, the Settlement Agreement is the product of arm's length negotiations between the Trustee, Barclays, and JPMorgan, with the assistance of the New York Fed and the Securities Investor Protection Corporation.

30.    Accordingly, the Trustee submits that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

31.    The Trustee's agreement to the settlement is based on the facts as set forth in the accompanying affidavits of knowledgeable representatives of Barclays and the New York Fed, and upon the Trustee's own review. The Trustee believes that the explanations set forth in the affidavits are reasonable and consistent with the facts known to him. As such, the proposed settlement avoids a large claim and the expense and distraction of litigation and produces a benefit to the LBI estate because the settlement consideration consists largely of securities which have declined in value.

32.    In consenting to this settlement, the Trustee does not take any position on any issue related to the Purchase Agreement or Clarification Letter or to the events and actions by various parties that preceded them that is not specifically covered by the Settlement Agreement. The Trustee will be investigating and reporting to the Court and creditors under §78-fff(d) of SIPA on many of these issues and the impact they and the Purchase Agreement and Clarification Letter have had on the wind-down of LBI and transfer of customer accounts. .

## IV.    NOTICE

33.    The Trustee will provide notice of the Motion pursuant to the Court's Order to Show Cause. The Trustee submits that no other or further notice need be given.

11

## V.    NO PRIOR REQUEST

34.    No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Trustee respectfully requests that the Court approve the Settlement Agreement and grant such additional and further relief as the Court deems just and appropriate.

Dated:    New York, New York
          December 5, 2008

                              HUGHES HUBBARD & REED LLP

                              By: /s/ James B. Kobak, Jr.
                                  James B. Kobak, Jr.
                                  David W. Wiltenburg
                                  Stephen Luger
                                  Christopher K. Kiplok
                                  Jeffrey S. Margolin
                                  One Battery Park Plaza
                                  New York, New York 10004
                                  Telephone:  (212) 837-6000
                                  Facsimile:  (212) 422-4726
                                  Email:  kobak@hugheshubbard.com

                              Attorneys for James W. Giddens, Trustee for
                              the SIPA Liquidation of Lehman Brothers
                              Inc.

60416369_1 (4).DOC