# BCI EXHIBIT

# 283

## Pomonis, Jennifer

| | |
|---|---|
| **From:** | Frelinghuysen, Anson |
| **Sent:** | Monday, September 22, 2008 6:05 AM |
| **To:** | 'marilyn.shaw@weil.com' |
| **Subject:** | Fw: Barclays Guaranty |

**Attachments:** Current Version - Clarification Letter_#1916861.DOC



Current Version -
Clarificatio...        2 please


---------------------------------
Anson B. Frelinghuysen
Hughes Hubbard & Reed LLP
Tel: 212.837.6208
Fax: 212.299.6208
Cell: 646.404.3033


----- Original Message -----
From: Kiplok, Christopher
To: Frelinghuysen, Anson
Sent: Mon Sep 22 06:04:06 2008
Subject: Fw: Barclays Guaranty


Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6810
FAX (212) 422-4726


----- Original Message -----
From: Michael A MAZZUCHI <mmazzuchi@cgsh.com>
To: Isaac Montal <imontal@dtcc.com>
Cc: erosen@cgsh.com <erosen@cgsh.com>; Giddens, James W.; John Petrofsky
<JPetrofsky@dtcc.com>; kcaputo@sipc.org <kcaputo@sipc.org>; Kiplok, Christopher; Larry
Thompson <lthompson@dtcc.com>; mmazzuchi@cgsh.comkobak <mmazzuchi@cgsh.comkobak>; Merrie
Witkin <mwitkin@dtcc.com>; sharbeck@sipc.org <sharbeck@sipc.org>; Hirshon, Sheldon
<SHirshon@proskauer.com>
Sent: Mon Sep 22 06:02:43 2008
Subject: Re: Barclays Guaranty


The current form of the clarification letter is attached.

Michael A. Mazzuchi
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
t: +1 202 974 1572 | f: +1 202 974 1999
www.clearygottlieb.com <http://www.clearygottlieb.com/>  | mmazzuchi@cgsh.com <mailto:
mmazzuchi@cgsh.com>

1

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

2

Confidential

HHR_00014462

# BARCLAYS CAPITAL INC.


As of September 20, 2008


Lehman Brothers Holdings Inc.
Lehman Brothers Inc.
LB 745 LLC
Attn:  Steven Berkenfeld, Esq.
Facsimile:  (646) 758-4226

Ladies and Gentlemen:

Reference is made to the Asset Purchase Agreement, dated as of September 16, 2008 (the "Original Agreement") as amended by the First Amendment thereto dated as of September 19, 2008 (the "First Amendment" and, the Original Agreement as so amended, the "Agreement"), by and among Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Inc. ("LBI"), LB 745 LLC ("745") and Barclays Capital Inc. ("Purchaser").  Each capitalized term used and not defined herein shall have the meaning ascribed to it in the Original Agreement.  This letter agreement (this "Letter") clarifies the intention of the parties with respect to certain provisions of the Agreement, supplements in certain respects the agreements of the parties stated therein and amends the Agreement in certain respects, and is binding on the parties hereto upon its execution and delivery.  All references herein to the Original Agreement are to the conformed copy attached hereto of the hand marked Original Agreement.

    1.    <u>Purchased Assets; Excluded Assets.</u>

    (a)    The Purchased Assets means (i) all of the assets of Seller used primarily in the Business or necessary for the operation of the Business (in each case, excluding the Excluded Assets) and (ii) none of the assets of Subsidiaries of LBHI (other than assets of LBI) except as otherwise specifically provided in the Agreement or this Letter.  Purchased Assets shall include:

    (i)    the items set forth in clauses (b), (c) and (f) through (o) and (q) through (s) of the definition of "Purchased Assets" in the Original Agreement;

    (ii)    with respect to clauses (a), (d) and (e) of the definition of "Purchased Assets" in the Original Agreement, instead of the items referred to in such clauses, (A) the securities owned by LBI and transferred to Purchaser or its Affiliates under the Barclays Repurchase Agreement (as defined below) as specified on Schedule A previously delivered by Seller and accepted by Purchaser, (B) such securities and other assets held in LBI's "clearance boxes" as of the time of the Closing, which at the close of business on September 21, 2008 were as specified on Schedule B previously delivered by Seller and accepted by Purchaser (provided, however, that Purchaser in its discretion may

<div align="center">1</div>

Confidential

HHR_00014463

elect within 60 days after the Closing to return any such securities to LBI); provided, that no securities owned by LBHI or any Subsidiary of LBHI (other than LBI and other than as specified in the Agreement or clause (iii) below) are Purchased Assets and (C) exchange-traded derivatives and collateralized short-term agreements;

       (iii)    the equity of Lehman Brothers Canada, Inc., Lehman Brothers Sudamerica SA and Lehman Brothers Uruguay SA; and

       (iv)    all prime brokerage business and accounts and repurchase agreement operations and securities lending operations of the Business (for the avoidance of doubt, other than those that are part of the IMD Business); and

       (v)    any rights or interests Seller may have with respect to any escrow or other account established in connection with the Global Research Analyst Settlement entered by the U.S. District Court on October 31, 2003 (the "Research Settlement"), or funds otherwise set aside for the procurement of independent research pursuant to the Research Settlement, but only to the extent that Purchaser is required to make payments in accordance with the Research Settlement as a result of its acquisition of LBI's investment banking and research operations.

       (b)    For the avoidance of doubt, the "Business" includes LBI's commodities business, government securities trading operations and mortgage-backed securities trading operations of LBI (but not any securities of such nature held by Seller except as otherwise specified herein or in the Agreement).

       (c)    The Excluded Assets shall mean the assets of Seller and its Subsidiaries referred to in clauses (a), (c) through (j), and (l) through (q) of the definition of "Excluded Assets" in the Original Agreement and the other assets identified in this Letter as Excluded Assets  Except as otherwise specified in the definition of "Purchased Assets," "Excluded Assets" shall include any cash, cash equivalents, bank deposits or similar cash items of Seller and its Subsidiaries; provided that "Excluded Assets" shall not include any and all property of any customer, or maintained by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business.  The following shall also be Excluded Assets: All of the investments held by Seller or their Subsidiaries in collateralized debt obligations, collateralized loan obligations, over-the-counter derivatives, TBA mortgage notes and similar asset-backed securities and corporate loans, other than those subject to the Barclays Repurchase Agreement, and until any securities pledged as collateral under Seller clearing arrangements with JP Morgan Chase & Co. or its Affiliates (other than those referred to in Section 1(a)(ii) of the Letter).  Also included in the Excluded Assets are the mortgage servicing rights for Ginnie Mae guaranteed securities.  Included in clause (h) of the definition of "Excluded Assets" in the Original Agreement are life insurance policies owned by Seller and its Subsidiaries.  For the avoidance of doubt, the equity interests and assets of Lehman Brothers Commodity Services, Inc., including the equity of, as well as the assets of the energy marketing and services business of Eagle Energy Management LLC, are Excluded Assets (rather than Purchased Assets).  The reference to "third parties" in clause (i) of the definition of "Excluded Assets" includes

<div align="center">2</div>

HHR_00014464

any person, including Affiliates of Seller. Clause (h) of the definition of Excluded Assets in the Original Agreement is hereby amended to remove the following clause: "other than customer account insurance supplemental to SIPC coverage included in the Business."

(d)    Sections 3 and 4 of the First Amendment are hereby deleted in their entirety and shall be of no effect *ab initio*. LBI hereby instructs Purchaser to pay at the Closing $250 million of the Cash Amount to the Depository Trust Clearance Corporation ("DTC") for deposit as collateral against LBI's obligations to DTC (including its affiliated clearing organizations). Such collateral account shall be maintained in accordance with the agreement among LBI, Purchaser and DTC entered into in connection with the Closing.

(e)    Seller hereby represents and warrants to Purchaser that LB I Group Inc has and had as of the date on which LB I Group Inc. transferred to LBI the equity of Townsend Analytics, Ltd., LB I Group Inc. no material indebtedness.

2.    IMD Business. For purposes of the Agreement, the IMD Business consists of the asset management and the alternatives – private equity businesses of Seller and the Subsidiaries, but not the private investment management business of Seller and the Subsidiaries (other than the CTS (Corporate Cash) business). As a result, Excluded Assets include the asset management business, the alternatives-private equity business and the CTS (Corporate Cash) business. The private investment management business (other than the CTS (Corporate Cash) business) (the "PIM Business") is a Purchased Asset and the Purchased Assets shall include the assets of the Seller used exclusively in the PIM Business. The forgivable notes issued by PIM employees to Seller or its Affiliates shall be an Excluded Asset. Excluded Liabilities shall include any pre-closing legal, tax or compliance Liabilities associated with IRA accounts for the benefit of clients of the PIM Business.

3.    Assumed and Excluded Liabilities. Clause (a) of the definition of "Assumed Liabilities" consists solely of all Liabilities incurred by Purchaser and arising after the Closing in connection with the Business. Clause (d) of the definition of "Assumed Liabilities" in the Original Agreement is understood as though it read as follows: "accounts payable incurred in the Ordinary Course of Business of Seller after, with respect to each entity comprising Seller, the date on which such entity commenced a voluntary case or cases under Chapter 11 or Chapter 7, as the case may be, of the Bankruptcy Code, associated with the Business (other than accounts payable arising out of or in connection with any Excluded Contract), including, for the avoidance of doubt, to the extent arising after such date (i) invoiced accounts payable and (ii) accrued but uninvoiced accounts payable." Consistent with the other provisions of this Letter, no Liabilities described in clause (i) of the definition of Assumed Liabilities shall be "Assumed Liabilities." For the avoidance of doubt, any Liabilities of Seller or its Subsidiaries under the $15.8 billion tri-party repurchase facility dated on or about September 18, 2008 funded by JP Morgan Chase shall be "Excluded Liabilities."

4.    Consideration. The parties, after considering the available appraisal information, have agreed upon the value of the Lehman headquarters at 745 Seventh Avenue , the Cranford New Jersey Data Center and the Piscataway New Jersey Data Center shall be in the aggregate $1,290,000,000 and shall not be subject to reduction with respect to any commission and, accordingly, the Cash Amount shall be $1,540,000,000 (subject to certain holdback amounts

3

HHR_00014465

relating to the real estate being transferred pursuant to the Agreement as provided by Section 12.2 of the Agreement).

5.    License. All marks containing the words "LEHMAN" or "LEHMAN BROTHERS" assigned under the Agreement shall be considered Licensed Marks under Section 8.9 of the Agreement. The license to use the Licensed Marks granted pursuant to Section 8.9 of the Agreement with respect to the investment banking and capital markets businesses of Seller and its Subsidiaries is limited to a term of 2 years from the Closing Date (without limiting the perpetual term of the license granted for use in connection with the IMD Business (including in respect of any one or more of the private equity or other investment funds within the IMD Business) or in connection with winding up of any operations or businesses of Seller or any of its Subsidiaries). The licenses pursuant to Section 8.9 are not assignable or sublicensable, except that such licenses are assignable and sublicensable (i) for use in connection with IMD Business or any portion of the IMD Business and (ii) to Seller's Subsidiaries or to a purchaser of any business of Seller and its Subsidiaries solely for use by such Subsidiaries or purchaser in connection with the winding up of such business.

6.    Subordinated Notes of LBI. The outstanding subordinated notes of LBI are not Assumed Liabilities, and such subordinated notes and any Liabilities associated with such subordinated notes therefore are Excluded Liabilities.

7.    Breakup Fee. 745 is jointly and severally liable with LBHI and LBI for Seller's obligations under the Agreement to pay the Breakup Fee and Expense Reimbursement (each of which has the meaning ascribed to it in the Breakup Fee and Competing Bid Order).

8.    Transfer of Customer Accounts. All customer accounts of LBI (other than customer who are Affiliates of LBI) shall be transferred to Purchaser. In connection therewith, Purchaser shall receive (i) for the account of the customer, any and all property of any customer, including any held by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business and (ii) to the extent permitted by applicable law, and as soon as practicable after the Closing, $769 million of securities, as held by or on behalf of LBI on the date hereof pursuant to Rule 15c3-3 of the Securities Exchange Act of 1934, as amended, or securities of substantially the same nature and value. Liabilities arising under Seller's arrangements with DTC and its affiliated clearing organizations shall be Excluded Liabilities.

9.    Deletion of Purchase Price Adjustment Provisions. Section 3.3 of the Original Agreement is hereby deleted in its entirety and shall be of no effect *ab initio*.

10.    Payables, Deposits and Receivables. No payables or deposits of a Seller or Subsidiary shall be Assumed Liabilities, except to the extent resulting from a Purchased Contract and except as provided in Section 8. No receivables shall be Purchased Assets, except to the extent resulting from a Purchased Contract.

11.    Intercompany Obligations. Except as expressly contemplated by this Letter, the Agreement or the Transition Services Agreement, Purchased Assets and Assumed Liabilities shall not include any intercompany receivables or payables or other obligations between or among any Seller and any of LBHI or any Subsidiary of LBHI. It is understood that

4

nothing contained in this Letter shall affect the rights or obligations of the parties to the Transition Services Agreement contemplated by the Agreement.

12.     Schedule 12.3. Following the Closing, the parties shall reasonably agree to an allocation of the purchase price (including the Assumed Liabilities) among the Purchased Assets for tax purposes and set forth such allocation on a Schedule 12.3 to be signed by the parties.

13.     Barclays Repurchase Agreement. Effective at Closing, (i) all securities and other assets held by Purchaser under the September 18, 2008 repurchase arrangement among Purchaser and/or its Affiliates and LBI and/or its Affiliates and Bank of New York as collateral agent (the "Barclays Repurchase Agreement") shall be deemed to constitute part of the Purchased Assets in accordance with Paragraph 1(a)(ii) above, (ii) Seller and Purchaser shall be deemed to have no further obligations to each other under the Barclays Repurchase Agreement (including, without limitation, any payment or delivery obligations), and (iii) the Barclays Repurchase Agreement shall terminate. Additionally, the Notice of Termination relating to the Barclays Repurchase Agreement dated September 19, 2008 is hereby deemed rescinded and void *ab initio* in all respects.

14.     Risk of Loss of Artwork. During such period that Purchaser has the right to possess the artwork following the Closing pursuant to Section 8.16 of the Agreement, Purchaser shall bear the risk of loss for such artwork. In the event that any artwork is damaged or lost during such period, Purchaser shall pay to Seller an amount equal to the damage or loss, consistent with the insured appraised value (as determined by an independent, recognized appraiser) for such artwork, assuming such artwork had not been lost or damaged.

15.     Records. The records referred to in Section 8.7 include all Documents that are Purchased Assets and shall be considered to include all electronic documents, including e-mail. The joint administrators of the Lehman European entities are parties to which records and personnel shall be made available in accordance with the terms of Section 8.7.

16.     Subleases. Notwithstanding anything to the contrary contained in Sections 4.2(d), 4.3(c), 8.14 or any other provision of the Agreement, with respect to the leased premises located in (i) 555 California Street, San Francisco, California ("SF Property"), (ii) 125 High Street, Boston, Massachusetts ("Boston Property"), (iii) 190 S. LaSalle Street, Chicago, Illinois ("Chicago Property"), and (iv) 10250 Constellation Boulevard, Los Angeles, California ("LA Property" and together with the SF Property, Boston Property and Chicago Property, the "Sublease Properties"), the parties agree as follows:

(a)     As contemplated in the Agreement, on the Closing Date, (i) the underlying leases affecting the Chicago Property, the LA Property and the Boston Property shall be assumed by LBHI or LBI in connection with its bankruptcy proceeding and each of such leases shall be assigned by Seller to Purchaser and Purchaser shall assume all of Seller's obligations thereunder pursuant to assignment and assumption agreements mutually acceptable to Seller and Purchaser, and (ii) the underlying lease affecting the SF Property shall be assumed by Seller in connection with the bankruptcy proceedings.

5

HHR_00014467

(b)     With respect to each Sublease Property, Seller and Purchaser shall, within a commercially reasonable period of time following the Closing Date, negotiate in good faith, and thereafter execute and deliver, a sublease agreement reasonably acceptable to both Purchaser and Seller and subject to the terms of the applicable underlying lease, pursuant to which a portion of the demised premises under such underlying lease (such portion of the premises to be agreed upon by the parties) shall be subleased to (A) with respect to the SF Property, the Purchaser, and (B) with respect to the LA Property, Chicago Property and Boston Property, the Seller (regardless of the creditworthiness of Seller) or any person who purchases the IMD Business (provided that any such purchaser entering into the sublease agreement as a subtenant shall be reasonably acceptable to the Purchaser) (the landlord under such sublease being referred to as the "Sublandlord" and the tenant under such sublease being referred to as the "Subtenant"), in each case, upon such terms as shall be mutually acceptable to the Sublandlord and Subtenant provided that (1) the Subtenant shall pay rent and other charges under such sublease agreement equal to its proportionate share of the rent and other charges payable by the Sublandlord to the landlord under the underlying lease (which proportionate share shall be based upon the relative square footage of the subleased space in proportion to the square footage of the overall demised space under the underlying lease), (2) the term of the sublease agreement shall be a period commencing on the Closing Date and ending on the day immediately preceding the expiration date of the underlying lease (as the same may be extended pursuant to the terms of the underlying lease), (3) any alterations or modifications which the Sublandlord and Subtenant mutually agree need to be made to the demised premises in order to segregate the subleased space from the remainder of the demised premises under the underlying lease shall be performed by the Sublandlord and the cost thereof (including the cost of any plans and specifications, drawings, permits, licenses, and other "soft" costs related thereto) shall be shared by the Sublandlord and Subtenant in proportion to the square footage of their respective spaces.  Prior to the execution and delivery of the sublease agreement for a particular Sublease Property, subject to reasonable premises security procedures and giving due regard to regulatory considerations (e.g., segregation) including the right to relocate such employees within the applicable premises, and for a commercially reasonable period after the Closing Date, (i) with respect to the SF Property, to the extent that Transferred Employees occupied any portion of the SF Property prior to Closing, such Transferred Employees shall be permitted to continue to occupy and use the SF Property to the same extent and for the same purposes as the SF Property was occupied by such Transferred Employees prior to the Closing; provided, that the foregoing shall be subject to Purchaser's ability to substitute a substantially similar number of new employees of Purchaser for any such Transferred Employees as provided in Paragraph 18 below, and (ii) with respect to each Sublease Property other than the SF Property, to the extent that Excluded Employees occupied any portion of such Sublease Property prior to Closing, such Excluded Employees shall be permitted to continue to occupy and use such Sublease Property to the same extent and for the same purposes as such Sublease Property was occupied by such Excluded Employees prior to the Closing; provided, that the foregoing shall be subject to Seller's ability to substitute a substantially similar number of new employees of Seller for any such Excluded Employees as provided in Paragraph 18 below.  In each case described in clauses (i) and (ii) above, no rent or other payments shall be made to the party which is the tenant under the underlying lease until execution and delivery of the

6

HHR_00014468

applicable sublease agreement at which time all rent calculated under the sublease agreement for the period from the Commencement Date (which date shall be the Closing Date) through end of the month in which the sublease agreement is executed shall be paid to the Sublandlord contemporaneously with the execution and delivery of the sublease agreement.

(c)    If any consent or approval from any landlord under an underlying lease is required pursuant to the terms of the underlying lease in order to effectuate the applicable sublease agreement and/or to the extent that any landlord under an underlying lease has recapture and/or termination rights that would be triggered by the proposed sublease arrangement to be reflected in the applicable sublease agreement, Seller and Purchaser will cooperate and use commercially reasonable efforts in obtaining such consent to the applicable sublease agreement and/or obtaining waivers from the landlord with respect to any such recapture and/or termination rights and shall otherwise comply in all respects with the terms and provisions of the underlying lease in connection with the execution and delivery of the applicable sublease agreement.

17.    <u>Deferred Transfers</u>.  Notwithstanding anything to the contrary contained in the Agreement, (a) the parties agree that during the nine month period after the Closing Date that Excluded Employees are permitted to occupy and use real property subject to a Transferred Real Property Lease in accordance with Section 8.11(f) of the Agreement, that the Seller and its Affiliates shall also be permitted to substitute a substantially similar number of new employees of Seller or its Affiliates for any such Excluded Employees, and that any such new employees of Seller or its Affiliates shall be permitted to occupy and use such real property to the same extent and on the same basis as the Excluded Employees in accordance with Section 8.11(f), and (b) the parties agree that during the nine month period after the Closing Date that Transferred Employees are permitted to occupy and use real property is not subject to a Transferred Real Property Lease in accordance with Section 8.11(g) of the Agreement, that the Purchaser and its Affiliates shall also be permitted to substitute a substantially similar number of new employees of Purchaser or its Affiliates for any such Transferred Employees, and that any such new employees of Purchaser or its Affiliates shall be permitted to occupy and use such real property to the same extent and on the same basis as the Transferred Employees in accordance with Section 8.11(g).

18.    <u>745 Seventh Avenue</u>.  The parties acknowledge that there is no mortgage encumbering 745's interest in the premises at 745 Seventh Avenue, New York, New York and that, notwithstanding Section 10.1(d) of the Agreement, only the $500,000,000 promissory note made by 745 in favor of LW-LLP Inc. will be fully repaid and extinguished.

19.    <u>Prorations</u>.  Notwithstanding Section 12.2 of the Agreement, to the extent that the parties are unable to agree upon all customary prorations for the Purchased Assets as of the Closing, they shall cooperate in finalizing all such prorations within thirty (30) days following the Closing Date.

20.    <u>Schedules</u>.  Corrected Schedules 1.1(a) and 1.1(b) are attached hereto.

Confidential

HHR_00014469

21.    <u>Definition of Excluded Contract.</u>  As used in the Agreement, the term "Excluded Contract" shall include any ISDA Master Agreement and any master swap agreement and any schedule thereto or supplement or amendment thereto.

22.    <u>PIM Business Leases.</u>

(a)  Notwithstanding anything to the contrary contained in the Agreement, Purchaser shall have a period of ten (10) days following the Closing Date to perform due diligence on the leases listed on Schedule 1(c) attached hereto (the "<u>PIM Leases</u>").  At any time during such period, Purchaser and its Affiliates shall have the option to cause Seller to assume and assign any or all of such PIM Leases to Purchaser, and Seller agrees to assume and assign such PIM Leases to Purchaser.  Upon assignment of a PIM Lease to Purchaser, such PIM Lease shall become a Transferred Real Property Lease.  With respect to any PIM Lease that becomes a Transferred Real Property Lease, during the nine month period after the Closing Date, to the extent that Excluded Employees occupied real property subject to such Transferred Real Property Leases prior to Closing, such Excluded Employees, and a substantially similar number of new employees of Seller or its Affiliates that may be substituted for any such Excluded Employees, shall be permitted to occupy and use such real property on the same basis as provided in Section 8.11(f) of the Agreement.

(b)  Notwithstanding the foregoing or anything to the contrary contained in Section 22(a) or any other provision of the Agreement, with respect to the PIM Lease for the premises located at 399 Park Avenue, New York, New York (the "<u>New York Property</u>"), the underlying lease shall not be subject to assignment to Purchaser and the Purchaser shall only have the option to require that Seller sublease to Purchaser or its Affiliates the sixth floor of the New York Property (or a portion of the sixth floor) (the "<u>NY Sublease Premises</u>"), and Seller agrees to sublease the NY Sublease Premises, subject to the parties' compliance with the terms of the underlying lease including, without limitation, any notice or consent requirements set forth therein.  If Purchaser elects to sublease the NY Sublease Premises as provided herein, all of the terms and conditions set forth in this letter agreement applicable to the SF Property shall also apply to the sublease of the NY Sublease Premises.

23.    <u>No Overseas Assets.</u>  Although LBI has been part of a global business and Purchaser remains interested in potentially acquiring other portions thereof and obtaining the services of the employees thereof, all assets and rights of the Lehman companies that would otherwise be Purchased Assets (other than Seller, 745 and any Subsidiaries sold pursuant to the Original Agreement or the Letter) that cannot be sold pursuant to Section 2.1 of the Original Agreement as a result of being subject to governmental conservatorship or administration shall be considered "Excluded Assets," except as notified by the administrator to LBI from time to time or until such assets and rights can be so sold.  Except with respect to Purchased Intellectual Property, no assets owned (in whole or in part) by any Subsidiary of LBHI (other than LBI, 745 and any Subsidiaries sold pursuant to the Original Agreement or the Letter) organized under the laws of a jurisdiction other than the United States of America or a state thereof are included among the Purchased Assets; provided, however, that to the extent any such asset is jointly owned by any such Subsidiary and Seller and used primarily in or necessary for the operation of the Business, Seller and Purchaser shall each use its commercially reasonable efforts to cause such Subsidiary to enter into arrangements reasonably acceptable to Purchaser to permit

8

Purchaser to acquire the interest of such Subsidiary in such asset or to have the use thereof (provided that neither Seller nor Purchaser shall be required to make any payment in order to establish such arrangement).

The representations and warranties of the parties contained in this Letter and in the Agreement shall not survive the Closing. This Letter shall be deemed to be made in and in all respects shall be interpreted, construed and governed by and in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within that state. This Letter may be executed in any number of counterparts (including by facsimile), each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

*[Remainder of page left blank.]*

9

Confidential

HHR_00014471

Sincerely,

BARCLAYS CAPITAL INC.


By: _____
Name:
Title:



Agreed to and accepted as of the date first written above:


LEHMAN BROTHERS HOLDINGS INC.


By: _____
Name:
Title:


LEHMAN BROTHERS INC.


By: _____
Name:
Title:


LB 745 LLC


By: _____
Name:
Title:

Confidential

# BCI EXHIBIT

# 284

**From:** Burian, Saul [SBurian@HLHZ.com]
**Sent:** Monday, September 22, 2008 6:17 AM
**To:** ldespins@milbank.com; CBell@milbank.com; Fazio, Michael
**Subject:** Re: Barclays

**Redacted**

Managing Director
Houlihan Lokey Howard & Zukin
245 Park Avenue
New York, New York 10167
Tel: 212-497-4245
Fax: 212-661-6347
Email: SBurian@hlhz.com

-----Original Message-----
From: Burian, Saul
To: 'ldespins@milbank.com' <ldespins@milbank.com>; 'CBell@milbank.com' <CBell@milbank.com>; Fazio, Michael
Sent: Mon Sep 22 06:13:40 2008
Subject: Re: Barclays

**Redacted**

Managing Director
Houlihan Lokey Howard & Zukin
245 Park Avenue
New York, New York 10167
Tel: 212-497-4245
Fax: 212-661-6347
Email: SBurian@hlhz.com

-----Original Message-----
From: Despins, Luc <LDespins@milbank.com>
To: Bell, Crayton L. <CBell@milbank.com>; Burian, Saul; Fazio, Michael
Sent: Mon Sep 22 05:21:05 2008
Subject: Fw: Barclays

**Redacted**

From: harvey.miller@weil.com
To: Despins, Luc
Sent: Mon Sep 22 08:18:27 2008
Subject: Re: Barclays



1

CONFIDENTIAL

HLHZ0009119

Closed 10 minutes ago.
We keep the cash and PAIB securities - $ 469. Barclay gets securities $763m Figures approx.

From: "Despins, Luc" [LDespins@milbank.com]
Sent: 09/22/2008 07:15 AM AST
To: Harvey Miller
Subject: Barclays

1. Did it close?

2. What happened to regulated capital?

===================================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.

===================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

===================================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.

===================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

2

CONFIDENTIAL

HLHZ0009120

# BCI EXHIBIT

# 285

**From:**        Edward Gilbert
**Sent:**        Sunday, September 21, 2008 03:00 PM
**To:**          jacob@jgfund.com; Nitin Bajpai; J. Christopher Flowers NY; David Schamis NY;
                 jjoros@jcfco.com; Sally Rocker NY
**Subject:**     Re: Barclays Investor Call Transcript from Wednesday where they described how great
                 the Lehman buy is / -$2bn goodwill after tax


Thanks, Jacob.
We will make sure this information is considered in the Lehman proceeding.
All the best.
Ed
-----Original Message-----
From: Jacob Goldfield <jacob@jgfund.com>
To: Nitin Bajpai; Edward Gilbert; J. Christopher Flowers NY; David Schamis NY; John Oros
<jjoros@jcfco.com>; Sally Rocker NY
Sent: Mon Sep 22 06:53:59 2008
Subject: Barclays Investor Call Transcript from Wednesday where they described how great the Lehman
buy is / -$2bn goodwill after tax



CONFIDENTIAL                                                                    CMTE0000911

# BCI EXHIBIT

# 286

| | |
|---|---|
| **From:** | Michael A MAZZUCHI |
| **Sent:** | Monday, September 22, 2008 7:51 AM |
| **To:** | McDaniel, James R. <jmcdaniel@sidley.com> |
| **Cc:** | Rovira, Alex R. <ARovira@Sidley.com>; erosen@cgsh.com; giddens@hugheshubbard.com; jcawley@theocc.com; kobak@hugheshubbard.com; Borrelli, Mark <mborrelli@sidley.com>; sharbeck@sipc.org; wnavin@theocc.com |
| **Subject:** | Re: urgent -- OCC account assumption |
| **Attach:** | DOC2515.PDF |

Sorry for the delay on this -- the executed agreement is attached in connection with the closing call which is starting now.

Michael A. Mazzuchi
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
t: +1 202 974 1572 | f: +1 202 974 1999
www.clearygottlieb.com | mmazzuchi@cgsh.com


"McDaniel, James R." <jmcdaniel@sidley.com>
22 September 2008  06:56 AM

To
mmazzuchi@cgsh.com, erosen@cgsh.com
cc
giddens@hugheshubbard.com, kobak@hugheshubbard.com, sharbeck@sipc.org,
wnavin@theocc.com, jcawley@theocc.com, "Borrelli, Mark" <mborrelli@sidley.com>,
"Rovira, Alex R." <ARovira@Sidley.com>
Subject
Re: urgent -- OCC account assumption


Thank you, Michael, please send the signed copy as soon as you possibly can.


-James R. McDaniel
Sidley Austin Brown & Wood LLP
10 S. Dearborn Street
Chicago, IL 60603
(312)853-2665 (voice)
(312)853-7036 (fax)
jmcdaniel@sidley.com
From: Michael A MAZZUCHI
To: McDaniel, James R.; Edward J ROSEN

CONFIDENTIAL                                                        BCI-CG00065014

Cc: giddens ; kobak ; Stephen P. Harbeck ; wnavin ; jcawley ; Borrelli, Mark;
Rovira, Alex R. Sent: Mon Sep 22 05:51:30 2008
Subject: Re: urgent -- OCC account assumption
This has been signed by Barclays and you will receive a fully executed copy
shortly.

From: "McDaniel, James R." [jmcdaniel@sidley.com]
Sent: 09/21/2008 03:02 PM EST
To: Edward ROSEN
Cc: giddens@hugheshubbard.com; kobak@hugheshubbard.com; "Stephen P. Harbeck"
<sharbeck@sipc.org>; Michael MAZZUCHI; wnavin@theocc.com; jcawley@theocc.com;
"Borrelli, Mark" <mborrelli@sidley.com>; "Rovira, Alex R." <ARovira@Sidley.com>
Subject: Understandings relating to the transfer of LBI's accounts at OCC

Ed:
Realizing that you have your hands full, we nevertheless need to communicate
OCC's position to you: 1) OCC's willingness to transfer the LBI accounts to
Barclays is conditioned upon obtaining Barclay's signature on the "Transfer and
Assumption Agreement" among OCC, the Trustee and Barclays. The Trustee and OCC
have signed the document, and the Trustee has consented to the use of the
signature page for certain hand marked changes that were prepared by Barclays.
Those changes were subsequently incorporated into the document in substantially
the same form with no material changes. We subsequently received a copy of the
document from Michael Mazzuchi of Cleary that added a paragraph 1(c) and then a
later version from Michael that deleted the same paragraph at Alex Rovira's
request. That paragraph is unacceptable to OCC, and it is OCC's understanding
that Barclays is in agreement that it will not be included in the document. For
the elimination of doubt, I have attached a copy of the document in pdf form
that is acceptable to OCC. OCC's willingness to transfer the LBI accounts at
OCC to Barclays is conditioned upon the execution of this agreement by
Barclays.
2) Having heard nothing further from you with respect to cash held by OCC in
respect of the LBI accounts, and in accordance with the terms of the Transfer
and Purchase Agreement, all such cash in the accounts will be transferred to
Barclays assuming that the transaction closes this evening.
3) If the transaction does not close tonight, OCC would need to immediately
liquidate and close out the LBI accounts and is preparing to do so. These
preparations are as a precautionary measure that OCC does not expect to have to
use.
I am available at my office to discuss anything that you need to discuss. We
would very much like to know what the plan is for execution of documents and
when we might expect to have OCC's Transfer and Assumption Agreement executed
by Barclays.
Thanks,
Jim
<<Untitled.pdf>>

James R. McDaniel
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312)853-2665
Fax: (312)853-7036

CONFIDENTIAL                                                              BCI-CG00065015

James R. McDaniel
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312)853-2665
Fax: (312)853-7036
This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

CONFIDENTIAL

BCI-CG00065016

## TRANSFER AND ASSUMPTION AGREEMENT

Agreement (the "Agreement") executed on September 20, 2008 with effect from and as of the close of business on Friday, September 19, 2008 among Lehman Brothers Inc. ("Lehman"), The Options Clearing Corporation, ("OCC", and Barclays Capital Inc. ("Barclays"). All defined terms (the first instance of which is indicated by underlining) not defined herein shall have the meaning assigned to such terms in OCC's By-Laws or Rules (collectively, the "Rules").

WITNESSETH:

WHEREAS, Lehman is a clearing member of OCC and carries one or more accounts (nos. 74, 84 and 273 (collectively the "Account")) that contain certain positions in cleared contracts into which Lehman has entered;

WHEREAS, Lehman maintains Clearing Fund and margin deposits with OCC;

WHEREAS, Lehman desires to terminate its OCC membership and transfer its rights, obligations and liabilities under and in respect of the Account pursuant to OCC's membership agreements and the Rules to Barclays, and Barclays desires to accept the transfer of all of Lehman's rights, obligations and liabilities under and in respect of the Account, including with respect to the Clearing Fund deposit and all margin deposits held by OCC with respect to the Account as of the effective date (the "Effective Date") of the consummation of the acquisition and assumption of certain assets and liabilities of Lehman by Barclays;

WHEREAS, OCC agrees to permit the transfer contemplated in the previous whereas clause;

NOW, THEREFORE, it is hereby agreed as follows:

1.    Transfer.

(a)    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lehman hereby sells, assigns, transfers, and sets over to Barclays, without recourse or without representation or warranty (other than as expressly provided herein), all of Lehman's rights, title, interests, powers, privileges, remedies, obligations, and duties in, to, under, and in respect of the Account, as of the Effective Date including with respect to: (i) the Clearing Fund deposit; (ii) all margin deposits held by OCC with respect to the Account; (iii) all settlement obligations with regard to transactions in cleared contracts; and (iv) all rights and obligations in respect of exercises of option contracts and assignments of such exercises.

(b)    As of the Effective Date, Barclays hereby accepts such sale, assignment, and transfer of the Account, agrees to be bound by and receive the benefits of maintaining such Account, and assumes and agrees to perform each obligation arising out of or to be performed with respect to the activity in the Account.

1

[Washington DC #397038 v3]

CONFIDENTIAL

2.    <u>Representations and Warranties</u>.

(a)    Lehman and Barclays each hereby represents and warrants to the other and to OCC as follows:

(i)    it is duly organized and validly existing and has the power and legal right to execute and deliver this Agreement and to transfer or assume the rights and obligations being transferred hereunder, as the case may be;

(ii)    the execution, delivery and performance of this Agreement have been duly authorized by all necessary action; and

(iii)    this Agreement is legal, valid and binding agreement, enforceable against it in accordance with its terms.

(b)    Lehman hereby represents and warrants that it is the legal and beneficial owner of the interest being transferred by it hereunder and that such interest is free and clear of any adverse claim (except for such claims or interests of OCC).

(c)    Barclays hereby: (i) represents and warrants that it has received such documents and other information as it has deemed appropriate to make its own credit analysis and decision to enter into this Agreement; (ii) agrees that it will, independently and without reliance upon Lehman or OCC and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions with respect to the Account; and (iii) agrees that it will perform in accordance with their terms all of the obligations that by the terms of the Rules and any related agreements entered into between it and OCC, are required to be performed by it.

3.    <u>Effective Date</u>.  This Agreement is being entered into on September 20, 2008, following the order of the United States Bankruptcy Court for the Southern District of New York (Manhattan) (Case No. 08-13555) approving execution of the Asset Purchase Agreement dated as of September 16, 2008, as amended on or before September 20, 2008, by Lehman and Barclays and the other parties thereto (the "Asset Purchase Agreement"); but this Agreement shall be effective as of close of business on the Effective Date.

4.    <u>Rights</u>.  As of the Effective Date, all rights, obligations and liabilities of Barclays pursuant to OCC's membership agreements and the Rules shall apply to the Account.

5.    <u>OCC Consent</u>.  OCC hereby consents to the transfer, assignment, assumption and release effected pursuant to this Agreement.

6.    <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the conflict of law principles thereof.

2

[Washington DC #397038 v3]

CONFIDENTIAL

BCI-CG00065018

7.    Amendments and Waivers.  This Agreement may be amended or any of
its provisions waived only by a written instrument executed and delivered by each of the
parties hereto.

8.    Counterparts.  This Agreement may be executed in any number of
counterparts and by different parties hereto in separate counterparts, each of which when
so executed shall be deemed to be an original and all of which taken together shall
constitute one and the same agreement.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this
Agreement by their duly authorized officers as of the date set forth above.

James W. Giddens as SIPA Trustee for

LEHMAN BROTHERS, INC. Lehman Brothers, Inc.

By: _James B. Kolak_

Print Name: _James B. Kolak, Jr._

Title: _Attorney for Trustee_

BARCLAYS CAPITAL INC.

By: _Gerard X. St Rocca_

Print Name: _(Gerard) S( G) Rocca_

Title: _____

THE OPTIONS CLEARING CORPORATION

By: _William H. Navin_

Print Name: _WILLIAM H. NAVIN_

Title: _Executive VP_

CHI 4634675v.2

CONFIDENTIAL

BCI-CG00065019

# BCI EXHIBIT

# 287

Harvey R
Miller/NY/WGM/US

09/22/2008 08:18 AM

To   "Despins, Luc" <LDespins@milbank.com>

cc

bcc

Subject   Re: Barclays

Closed 10 minutes ago.
We keep the cash and PAIB securities - $ 469. Barclay gets securities $763m Figures approx.

**From:** "Despins, Luc" [LDespins@milbank.com]
**Sent:** 09/22/2008 07:15 AM AST
**To:** Harvey Miller
**Subject:** Barclays

1. Did it close?

2. What happened to regulated capital?

=====================================================================================
==

**IRS Circular 230 Disclosure:** U.S. federal tax advice in the foregoing message from
**Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be
used, by any person for the purpose of avoiding tax penalties that may be imposed
regarding the transactions or matters addressed. Some of that advice may have been
written to support the promotion or marketing of the transactions or matters addressed
within the meaning of IRS Circular 230, in which case you should seek advice based on
your particular circumstances from an independent tax advisor.**

=====================================================================================
==

**This e-mail message may contain legally privileged and/or confidential information. If you
are not the intended recipient(s), or the employee or agent responsible for delivery of this
message to the intended recipient(s), you are hereby notified that any dissemination,
distribution or copying of this e-mail message is strictly prohibited. If you have received
this message in error, please immediately notify the sender and delete this e-mail message
from your computer.**

WGM-LEHMAN-E 00011662

# BCI EXHIBIT

# 288

Harvey R
Miller/NY/WGM/US

09/22/2008 09:38 AM

To    "Burian, Saul" <SBurian@HLHZ.com>

cc    "ldespins" <ldespins@milbank.com>

bcc

Subject    Re: Lehman📄

Yes.

**From:** "Burian, Saul" [SBurian@HLHZ.com]
**Sent:** 09/22/2008 06:15 AM MST
**To:** Harvey Miller
**Cc:** <ldespins@milbank.com>
**Subject:** Lehman

To be clear regarding your last email to Luc, do you mean that of the 2.2-2.3 of reserves, LBI keeps 1.5B and B gets 763mm? Essentially, we get all cash and cash equivalents and they took the portion of the reserves that were in securities?

Thanks.

Saul E. Burian

Managing Director
Houlihan Lokey Howard & Zukin
245 Park Avenue
New York, New York  10167
Tel: 212-497-4245
Fax: 212-661-6347
Email: SBurian@hlhz.com

---

Please consider the environment before printing.

This e-mail message and any attachments are for the sole use of the intended recipient(s) and may contain confidential information. If you are not an intended recipient, or an intended recipient's authorized agent, you are hereby notified that any dissemination, distribution or copying of this e-mail message or any attachments is strictly prohibited. If you have received this message in error, please notify the sender by reply e-mail and delete this e-mail message and any attachments from your computer system.

WGM-LEHMAN-E 00016433

# BCI EXHIBIT

# 289

**From:** Romain, Gary: Finance (LDN)
**Sent:** Mon, 22 Sep 2008 14:38:59 GMT
**To:** Trevelyan, James:
**CC:** Castell, Bill: ; Thorburn, Harry:
**Subject:** RE: Long Island

Just spoke to Patrick - since we've basically got no idea where negative goodwill will end up, would suggest not to bother with these numbers too much (and certainly not to distribute onwards).

Thanks,

Gary

**From:** Romain, Gary: Finance (LDN)
**Sent:** Monday, September 22, 2008 10:22 AM
**To:** Trevelyan, James:
**Cc:** Castell, Bill: ; Thorburn, Harry:
**Subject:** RE: Long Island

James,

We aren't managing to a number as such. The extent to which the cure payment will be required as an accrual in acquisition balabnce sheet is a point not yet finalised. The payment of full accrued bonus was written into the final docs so need to make the full accrual for that.

Regards,

Gary

**From:** Trevelyan, James:
**Sent:** Monday, September 22, 2008 10:19 AM
**To:** Romain, Gary: Finance (LDN)
**Cc:** Castell, Bill: ; Thorburn, Harry:
**Subject:** RE: Long Island

Thanks Gary.

Appreciate things are moving, but it seems we are now recognising cure payments in full rather than at zero, and the bonus payments in full also, rather than $1.3bn. So although on the face of it the net assets have gone up, our negative goodwill has gone down. Why the change? Are we managing to a negative goodwill number?

**From:** Romain, Gary : Barclays Capital
**Sent:** 22 September 2008 15:08
**To:** Thorburn, Harry : Barclays Corporate Development

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00052541

**Cc:**    Trevelyan, James : Barclays Corporate Development
**Subject:**    RE: Long Island

Harry,

This is the most recent acquisition balance sheet and negative goodwill calculation - there remain a number of moving parts.

[NB: It does not show solus level splits between BBPLC, BCI, LLCs, etc]

Regards,

Gary

<< File: Long Island - Acquisition Summary.xls >>

---

**From:**    Thorburn, Harry:
**Sent:**    Monday, September 22, 2008 8:34 AM
**To:**    Romain, Gary: Finance (LDN)
**Cc:**    Trevelyan, James:
**Subject:**    Long Island

Gary,

Further to my voicemail, James Trevelyan and I are trying to track down the most recent Long Island balance sheet and goodwill calculation. Do you have something you can send across today?

Regards,

Harry

---

**Harry Thorburn**
**Senior Manager**
Barclays Corporate Development
29th Floor, One Churchill Place, London, E14 5HP
Tel: +44 (0) 20 7116 7608
Mob: +44 (0) 7958 912 863
Fax: +44 (0) 20 7116 7706
e-mail: harry.thorburn@barclays.com

**HIGHLY CONFIDENTIAL**

# BCI EXHIBIT

# 290

**From:** King, Stephen: Markets (NYK)

**Sent:** Mon, 22 Sep 2008 19:38:11 GMT

**To:** James, Liz: Futures Sales (NYK); Stack, Tim: Futures (NYK); Kaplan, Alan: Legal (NYK); Joshi, Dixit: EDG (LDN); McKenna, Sean: Markets (NYK); Hughes, Jonathan: Legal (NYK); Moreira, Nicholas: EDG (NYK)

**Subject:** RE:

---

It is clear that lb has absolutely no idea what its occ risk position is. We know it is between 2bn short and 4bn long. They do not know what has been booked to what entity. We cannot see. We are now 4 days into making zero progress on this with them. I need:

1. someone to speak to at the occ so we can find out what our current position is.

REDACTED - PRIVILEGED

I will set up a call internally at 4pm to discuss. Sean mckenna will send the dial in.

I think at least mike schmansky from lehman should be on the call.

thanks

-----Original Message-----
From: James, Liz: Futures Sales (NYK)
Sent: Monday, September 22, 2008 3:32 PM
To: 'michael.nielsen@lehman.com'; 'zvargas@lehman.com'
Cc: King, Stephen: Markets (NYK); 'jeffrey.jennings@lehman.com'
Subject: Re:

The expiry on Saturday

----- Original Message -----
From: Nielsen, Michael <michael.nielsen@lehman.com>
To: James, Liz: Futures Sales (NYK); Vargas, Zurma <zvargas@lehman.com>
Cc: King, Stephen: Markets (NYK); Jennings, Jeffrey D <jeffrey.jennings@lehman.com>
Sent: Mon Sep 22 15:27:19 2008
Subject: RE:

Doesn't look like anything is expiring until October.

Michael B. Nielsen
Senior Vice President
Lehman Brothers Inc.
70 Hudson Street, 7th Floor
Jersey City, NJ 07302-4585

**HIGHLY CONFIDENTIAL**

Phone 201-499-3438
Fax 212-419-2102

-----Original Message-----
From: Liz.James@barclayscapital.com
[mailto:Liz.James@barclayscapital.com]
Sent: Monday, September 22, 2008 3:19 PM
To: Nielsen, Michael; Vargas, Zurma
Cc: Stephen.King@barclayscapital.com; Jennings, Jeffrey D
Subject: Re:

Mike were this pre or post expire?

----- Original Message -----
From: Nielsen, Michael <michael.nielsen@lehman.com>
To: Vargas, Zurma <zvargas@lehman.com>
Cc: King, Stephen: Markets (NYK); Jennings, Jeffrey D <jeffrey.jennings@lehman.com>; James, Liz: Futures Sales
(NYK)
Sent: Mon Sep 22 15:17:03 2008
Subject: RE:

Is this about futures?  If so we gave the positions to Liz on the weekend. Do you need them as well?

Michael B. Nielsen
Senior Vice President
Lehman Brothers Inc.
70 Hudson Street, 7th Floor
Jersey City, NJ 07302-4585
Phone 201-499-3438
Fax 212-419-2102

-----Original Message-----
From: Vargas, Zurma
Sent: Monday, September 22, 2008 3:10 PM
To: Nielsen, Michael
Subject: FW:

Mike who would have these

-----Original Message-----
From: Sean.Mckenna@barclayscapital.com
[mailto:Sean.Mckenna@barclayscapital.com]
Sent: Monday, September 22, 2008 2:48 PM
To: Vargas, Zurma
Cc: Stephen.King@barclayscapital.com; Jennings, Jeffrey D; Liz.James@barclayscapital.com
Subject:

Zurma - we met earlier today - we urgently need to get an update of Lehman's positions within OCC - please contact

HIGHLY CONFIDENTIAL                                                                            BCI-EX-(S)-00110719

me asap. Thanks.

Sean L. McKenna
Principal Mortgage Trading Group
Barclays Capital
200 Park Avenue
New York, NY 10166
Tel: 212 412-5938
Cell: 646 286-5956 / 347 749-0853
sean.mckenna@barcap.com

---

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Barclays. Any views or opinions presented are solely those of the author and do not necessarily represent those of Barclays. This e-mail is subject to terms available at the following link:

www.barcap.com/emaildisclaimer. By messaging with Barclays you consent to the foregoing. Barclays Capital is the investment banking division of Barclays Bank PLC, a company registered in England (number 1026167) with its registered office at 1 Churchill Place, London, E14 5HP. This email may relate to or be sent from other members of the Barclays Group.

---

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Barclays. Any views or opinions presented are solely those of the author and do not necessarily represent those of Barclays. This e-mail is subject to terms available at the following link:

www.barcap.com/emaildisclaimer. By messaging with Barclays you consent to the foregoing. Barclays Capital is the investment banking division of Barclays Bank PLC, a company registered in England (number 1026167) with its registered office at 1 Churchill Place, London, E14 5HP. This email may relate to or be sent from other members of the Barclays Group.

---

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00110720

# BCI EXHIBIT

# 291

From:          Edward Gilbert
Sent:          Monday, September 22, 2008 04:50 PM
To:            JBecker@WilmingtonTrust.com
Subject:       Re: LEHMAN (URGENT--POSSIBLE EMERGENCY COMMITTEE CALL TODAY)


Julie, you are welcome.
Interesting to understand what a bargain Barclays thinks it has.
All the best.
Ed
-----Original Message-----
From: Becker, Julie <JBecker@WilmingtonTrust.com>
To: Edward Gilbert
Sent: Tue Sep 23 00:25:14 2008
Subject: RE: LEHMAN (URGENT--POSSIBLE EMERGENCY COMMITTEE CALL TODAY)
Ed:
Thanks much for sharing this transcript.  Regards.
Julie

Julie J. Becker
Vice President
Wilmington Trust FSB
Corporate Client Services
8400 Normandale Lake Boulevard
Suite 925
Bloomington, Minnesota 55437
Drop Code: 7100/Minnesota
Phone: 612.751.4065
Email: jbecker@wilmingtontrust.com

From: Edward.Gilbert@shinseibank.com [mailto:Edward.Gilbert@shinseibank.com]
Sent: Sunday, September 21, 2008 5:53 PM
To: DODonnell@milbank.com; araboy@cov.com; ccromie@metlife.com; dyu@metlife.com; dcoffino@cov.com;
dkleiner@velaw.com; gerard.facendola@bnymellon.com; McGinley, James J.; jguiliano@bankofny.com;
Becker, Julie; mspeiser@stroock.com; mbeeler@cov.com; mhopkins@cov.com;
Nitin.Bajpai@shinseiinternational.com; noel.purcell@mizuhocbus.com; pcschmitter@bankofny.com;
robailey@bankofny.com; rreid@sheppardmullin.com; sjohnston@cov.com; Taylor.Siedell@shinseibank.com;
tpasuit@metlife.com
Cc: LDespins@milbank.com; DDunne@milbank.com; PAronzon@milbank.com; bgeer@hlhz.com;
Conor.Tully@fticonsulting.com; Dominic.Dinapoli@fticonsulting.com; esiegert@hlhz.com;
John.Siris@fticonsulting.com; Kevin.Lavin@fticonsulting.com; Michael.Eisenband@fticonsulting.com;
mfazio@hlhz.com; Philip.Stern@fticonsulting.com; Robert.Darefsky@fticonsulting.com;
Ron.Greenspan@fticonsulting.com; Samuel.Star@fticonsulting.com; sburian@hlhz.com;
William.Nolan@fticonsulting.com
Subject: RE: LEHMAN (URGENT--POSSIBLE EMERGENCY COMMITTEE CALL TODAY)





**redacted**

========================================================================
IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed,
Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the
purpose of avoiding tax penalties that may be imposed regarding the transactions or matters
addressed. Some of that advice may have been written to support the promotion or marketing of the
transactions or matters addressed within the meaning of IRS Circular 230, in which case you should
seek advice based on your particular circumstances from an independent tax advisor.
========================================================================
This e-mail message may contain legally privileged and/or confidential information. If you are not
the intended recipient(s), or the employee or agent responsible for delivery of this message to the
intended recipient(s), you are hereby notified that any dissemination, distribution or copying of
this e-mail message is strictly prohibited. If you have received this message in error, please
immediately notify the sender and delete this e-mail message from your computer.


This e-mail message and any attachments are confidential and may be legally privileged. If you are
not the intended recipient, we kindly ask you to notify the sender immediately by replying to the
above address. Any unauthorized copying, duplication, reproduction, manipulation, dissemination or
distribution hereof in any form is strictly prohibited. The statement set forth above serves for
information purposes only, and shall not have any legally binding effect. We do not guarantee the
accuracy and completeness of any information or materials contained herein. The information
contained herein, and the terms for access to or use of such information, are subject to deletion or
change at any time. It is not intended as an offer or solicitation for the purchase or sale of any
financial instrument or as an official confirmation of any transaction.
???????(????????)???????????????????????????????????????????????????????????????????????????????-
?????????????????????????????????????????????????????????????????????????????????????????????????-
?????????????????????????????????????????????????????????????????????????????????????


Visit our website at www.wilmingtontrust.com
Investment products are not insured by the FDIC or any other governmental agency, are not deposits
of or other obligations of or guaranteed by Wilmington Trust or any other bank or entity, and are
subject to risks, including a possible loss of the principal amount invested. This e-mail and any
files transmitted with it may contain confidential and/or proprietary information. It is intended
solely for the use of the individual or entity who is the intended recipient. Unauthorized use of
this information is prohibited. If you have received this in error, please contact the sender by
replying to this message and delete this material from any system it may be on.

# BCI EXHIBIT

# 292

| | |
|---|---|
| **From:** | Clackson, Patrick: Finance (LDN) |
| **Sent:** | Monday, September 22, 2008 8:07 PM |
| **To:** | Ricci, Rich: Barclays Capital |
| **Subject:** | RE: Scared to death |

Still deal of the century - I'm going for a beer

| | |
|---|---|
| **From:** | Ricci, Rich: Barclays Capital |
| **Sent:** | Monday, September 22, 2008 8:02 PM |
| **To:** | Clackson, Patrick: Finance (LDN) |
| **Subject:** | Scared to death |

1

Highly Confidential

BCI-EX-00079321

# BCI EXHIBIT

# 293

**From:**    Yang, Jasen: Markets (NYK)
**Sent:**    Tue, 23 Sep 2008 11:26:47 GMT
**To:**    Regan, David: Finance (LDN); Rudduck, Mark: Markets (LDN); Farrell, Don: Operations (NYK); Logozzo, Joseph: Markets (NYK)
**CC:**    Clark, Eric: Finance (NYK); Moreira, Nicholas: EDG (NYK); Washtell, Mark: Finance (LDN); Lacour, Franck: EDG (LDN); McKenna, Sean: Markets (NYK); Stack, Tim: Futures (NYK)
**Subject:** RE: Project Long Island Updated Assets - Cash Equities

I've not been involved in the process, but I believe we're close to having a position listing, but there needs to be clarity around the status of the trades LBI was clearing for LBSF.

Nick, can you shed more light on the status?

**From:** Regan, David: Finance (LDN)
**Sent:** Tuesday, September 23, 2008 6:35 AM
**To:** Yang, Jasen: Markets (NYK); Rudduck, Mark: Markets (LDN); Farrell, Don: Operations (NYK); Logozzo, Joseph: Markets (NYK)

**Cc:** Clark, Eric: Finance (NYK); Moreira, Nicholas: EDG (NYK); Washtell, Mark: Finance (LDN); Lacour, Franck: EDG (LDN)

**Subject:** RE: Project Long Island Updated Assets - Cash Equities

Hi Jasen,

Where are we on the listed options, are they going to be moved across to barcap systems, if so, do we have the trade details and is there clarification on where they will be booked and risk managed.

Many Thanks
Dave

**From:** Yang, Jasen: Markets (NYK)
**Sent:** 22 September 2008 13:06
**To:** Rudduck, Mark: Markets (LDN); Farrell, Don: Operations (NYK); Logozzo, Joseph: Markets (NYK); Regan, David: Finance (LDN)

**Cc:** Clark, Eric: Finance (NYK); Moreira, Nicholas: EDG (NYK); Konefal, Richard: Compliance (NYK); Lacour, Franck: EDG (LDN); Leyhane, Nick: EDG (LDN); McKenna, Sean: Markets (NYK)

**Subject:** RE: Project Long Island Updated Assets - Cash Equities

**HIGHLY CONFIDENTIAL**

I had understood that they are moving over (and presumably EDG will have responsibility for them), but the population is still be ascertained. I think the statements in the email from Lehman were correct at that time, but could well change today.

---

**From:**  Rudduck, Mark: Markets (LDN)
**Sent:**  Monday, September 22, 2008 8:04 AM
**To:**  Farrell, Don: Operations (NYK); Logozzo, Joseph: Markets (NYK); Regan, David: Finance (LDN); Yang, Jasen: Markets (NYK)

**Cc:**  Clark, Eric: Finance (NYK); Moreira, Nicholas: EDG (NYK); Konefal, Richard: Compliance (NYK); Lacour, Franck: EDG (LDN); Leyhane, Nick: EDG (LDN)

**Subject:**    RE: Project Long Island Updated Assets - Cash Equities
**Importance:**    High

Thanks for the clarification.

So who has the responsibility for managing these ?

---

**From:**  Farrell, Don: Operations (NYK)
**Sent:**  22 September 2008 12:52
**To:**  Logozzo, Joseph: Markets (NYK); Regan, David: Finance (LDN); Yang, Jasen: Markets (NYK)
**Cc:**  Clark, Eric: Finance (NYK); Rudduck, Mark: Markets (LDN); Moreira, Nicholas: EDG (NYK); Konefal, Richard: Compliance (NYK)

**Subject:**    RE: Project Long Island Updated Assets - Cash Equities

Yes, listed options remaining at OCC 074 for Lehman, not moving over.

---

**From:**  Logozzo, Joseph: Markets (NYK)
**Sent:**  Monday, September 22, 2008 7:47 AM
**To:**  Regan, David: Finance (LDN); Yang, Jasen: Markets (NYK); Farrell, Don: Operations (NYK)
**Cc:**  Clark, Eric: Finance (NYK); Rudduck, Mark: Markets (LDN); Moreira, Nicholas: EDG (NYK); Konefal, Richard: Compliance (NYK)

**Subject:**    RE: Project Long Island Updated Assets - Cash Equities

Dave,
With regards to listed options, please see the attached message from Operations.  It sounds to me as no listed options getting booked in Sophis.

Don Farrell,
Could you please confirm?

<< Message: RE: OCC query from Lehman >>

Regards,
Joe

---

**From:**  Regan, David: Finance (LDN)
**Sent:**  Monday, September 22, 2008 7:19 AM
**To:**  Yang, Jasen: Markets (NYK)

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00057528

Cc:    Logozzo, Joseph: Markets (NYK); Clark, Eric: Finance (NYK); Rudduck, Mark: Markets (LDN)
Subject:    RE: Project Long Island Updated Assets - Cash Equities

Hi Jasen,

Further to this, I have been advised by IT that if we have to rebook the amount of listed options I
have heard quoted (75k lines) that this would cause capacity issues in sophis.

As a result can you keep IT (Charles Rumbold) in the loop.

Regards
Dave

---

From:    Regan, David: Finance (LDN)
Sent:    22 September 2008 12:10
To:    Yang, Jasen: Markets (NYK); Sell, Stephen: Markets (NYK)
Cc:    Ireland, David: Finance (LDN); Washtell, Mark: Finance (LDN); Logozzo, Joseph: Markets (NYK); Clark, Eric: Finance (NYK)

Subject:    FW: Project Long Island Updated Assets - Cash Equities

Hi Jasen,

We are trying to ascertain the list of equities trades (and prices) that were purchased as part of
the LB deal and indeed when they are expected to be booked.

Issues are as follows :

CB's : need to understand special RegCap dispensation of BCI to see if we can effectively hedge
in the correct entity. Risk is if we cant that we will pay Tax on gains but no offset in losses.

Cash Equities : Need to know positions/ prices, when they will be booked in our systems. Nick
Leyhane is obviously trying to hedge. Again same issue from Tax.

Listed Options/ Futures : I have no visibility on this. Do you have any detail ?

Regards
Dave

---

From:    Leyhane, Nick: EDG (LDN)
Sent:    22 September 2008 12:00
To:    Regan, David: Finance (LDN)
Cc:    Washtell, Mark: Finance (LDN)
Subject:    RE: Project Long Island Updated Assets - Cash Equities

I do not have all the answers. There is a group run by Jasen Yang in NY coordinating. Check with
him and/or Stephen Sell.

---

From:    Regan, David: Finance (LDN)

HIGHLY CONFIDENTIAL

**Sent:** 22 September 2008 11:59
**To:** Leyhane, Nick: EDG (LDN)
**Cc:** Washtell, Mark: Finance (LDN)
**Subject:** RE: Project Long Island Updated Assets - Cash Equities

Hi Nick,

Apologies for more questions, but can you confirm if the actual trades (from LB) will be booked by the end of day as well.

Thanks
Dave

---

**From:** Leyhane, Nick: EDG (LDN)
**Sent:** 22 September 2008 11:49
**To:** Ireland, David: Finance (LDN); Rudduck, Mark: Markets (LDN)
**Cc:** Regan, David: Finance (LDN)
**Subject:** RE: Project Long Island Updated Assets - Cash Equities

I will be BTB to BCI by EOD

---

**From:** Ireland, David: Finance (LDN)
**Sent:** 22 September 2008 11:32
**To:** Leyhane, Nick: EDG (LDN); Rudduck, Mark: Markets (LDN)
**Cc:** Regan, David: Finance (LDN)
**Subject:** RE: Project Long Island Updated Assets - Cash Equities

$8bn long in BCI and $8bn short in BB Plc gives serious tax exposure from split hedge.

Exposure - worst case 45% additional tax on movement on profitable side, no relief on loss side.

Likely solution to back it all to BCI through OTC(s).  Let me know if we can discuss.

---

**From:** Regan, David: Finance (LDN)
**Sent:** 22 September 2008 10:33
**To:** Ireland, David: Finance (LDN)
**Subject:** FW: Project Long Island Updated Assets - Cash Equities

Hi Dave,

Looks like will be booked in BCI but don't know if there is UK equities.

Will follow up with desk and revert back. (as per your mail there maybe an issue with UK Stamp).

Rds
Dave

---

**From:** Leyhane, Nick: EDG (LDN)
**Sent:** 21 September 2008 21:20

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00057530

**To:**   Yang, Jasen: Markets (NYK); Copson, Paul: Finance (LDN); De Carolis, Andrea: Global Convertibles (LDN); King, Stephen: Markets (NYK); Long, Daniel: Markets (NYK); Mahon, John: Markets (LDN)

**Cc:**   Joshi, Dixit: EDG (LDN); Regan, David: Finance (LDN); Sell, Stephen: Markets (NYK); Mammola, Paolo: GFRM (LDN); Scalari, Alberto: GFRM (LDN); Guy, Lee: GFRM (LDN)

**Subject:**   RE: Project Long Island Updated Assets - Cash Equities

| $mm | Beta | 19-Sep-08 | 18-Sep-08 |
|---|---|---|---|
| ADRs | 694 | 607 | 554 |
| Equity | 6866 | 6570 | 6249 |
| Conv | 0 | 22 | 22 |
| ConvPref | 0 | 105 | 105 |
| ETF | 711 | 1645 | 1622 |
| MFND | 0 | 51 | 51 |
| Prefs | 0 | 67 | 67 |
| Warrants | 0 | 221 | 221 |
| Total | 8271 | 9288 | 8891 |

- we estimate the portfolio to be worth $9.3bn as of Friday close
- beta is lower due to the presence of short exposure ETFs and some merger arbitrage deals
- first risk mitigant is to continue selling S&P futures (we sold $1bn on Friday) to reduce the overall beta of the portfolio; will use **BBplc accounts** for now as we do not have traders in Asia able to execute for BCI
- expect to sell $500m-$1bn during Asia hours, then $1-2bn during European hours and then the remainder during NY trading session
- once the beta is immunised we will work to refine the sector exposures

| Sectors | Beta |
|---|---|
| Autos | 103 |
| Banks | 449 |
| Basic Resources | 491 |
| Chemicals | 128 |
| Construction | 51 |
| Financials | 567 |
| Food Bev | 202 |
| Health Care | 386 |
| Industrials | 1205 |
| Insurance | 548 |
| Media | 173 |
| Oils | 742 |
| Personal | 217 |
| Retail | 371 |
| Technology | 864 |
| Telecom | 185 |
| Utilities | 144 |
| Index | 1445 |

**Issues**

- there are > 70 names on this list where we would be purchasing >1% of market cap on an individual name; Compliance will revert on "large holdings"
- current short-selling restrictions in place means that we have to be confident that the transfers have settled before tackling the individual stock positions

**HIGHLY CONFIDENTIAL**

- BCI reg cap requirements? we **do not** have VAR treatment for ETF vs futures positions (most US brokerdealers would)
- these deltas **do not include the listed option portfolio** which may still be in place

Nick

**HIGHLY CONFIDENTIAL**

**BCI-EX-(S)-00057532**

# BCI EXHIBIT

# 294

**From:**   King, Stephen: Markets (NYK)
**Sent:**   Tue, 23 Sep 2008 11:27:24 GMT
**To:**     Ricci, Rich: Barclays Capital; Keegan, Mike : Barclays Capital; Clackson, Patrick: Finance (LDN)
**CC:**     Joshi, Dixit: EDG (LDN); Bommensath, Eric: Markets (NYK)
**Subject:** Risk

---

Rich, mike, patrick,

We have largely identified the day one remark gap and necessary primary hedges for the positions in the repo. Those hedges are almost executed, other than 2bn of sand futures which are work in progress.

We have not yet reviewed the other positions in the box we bought, but have not attributed value to the yet.

The big and difficult open issue remains the exchange traded derivatives. We believe we have idenitified all the exchanges capitured in this, and primariliy the exposure is via the occ. However, the size of the risk position is still unclear, as is the operational process by which these positions can be closed out or transferred. I have asked tim stack and nick moreira to facilitate on this, and we are attempting to leverage lb personel. We will be prioiritising this until we have a handle on the risk.

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00024515

# BCI EXHIBIT

# 295

**From:**   Evans, Michael: HR (LDN)

**Sent:**   Tue, 23 Sep 2008 13:15:33 GMT

**To:**   Diamond, Bob: Barclays Capital; del Missier, Jerry: Barclays Capital (NYK); Jenkins, Roger: Structuring (LDN); Ricci, Rich: Barclays Capital

**Subject:** Summary of Current Spend - 08h30, 23 Sept 2008

Here is the update of our present bonus and related spend. The report now includes:

- A summary of changes since the previous version
- A high-level summary table of the status of the UK/Europe and Asia initiatives - information is limited at this stage but will be more robust as we receive detail around costs and commitments

Regards,

Michael

<<...>>

EXHIBIT
2846
8/27/09
PENGAD 800-631-6989

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00027190

**Lehman Brothers**
**Summary Report**

## Summary of current spend position (all amounts in USDm)

| No. of people[1] | $m | Day 1 - 2008 Cost | | | One-time Deferred Cash Award | | | | 2nd Yr GB |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Actual | Original Model[2] | Over-Spend[2] | 2008 | 2009 | 2010 | Total | 2009 |
| 9 | "Elite 6"[2] | 141 | 117 | 24 | 13 | 40 | 18 | 71 | 0 |
| 393 | Other GB proposals | 721 | 607 | 114 | 44 | 132 | 59 | 234 | 111 |
| 402 | Total | 862 | 724 | 138 | 57 | 172 | 76 | 305 | 111 |
| 10,111 | Non-guaranteed population | | | | | | | | |
| (3,300) | Planned redundancies[1] | | | | | | | | |
| 6,768 | Residual pool available for non-GB people[1] | 538 | | | | | | | |
| 7,200 | Total Pool Funding Available | 1,400 | | | | | | | |

[1] Estimates; still moving and is net of an expected 3,300 redundancies expected to cost about $100m (not funded out of the 2008 bonus pool)
[2] "Elite 6" are actually 9 individuals: Donini, Hamaher, Lowitt, McDade, McGee, Nadal, Gelband, Lee, Felter
[2] Estimated pool requirement for 75% of 2007 total compensation for original 175-200 population, plus residual population now guaranteed at 65% of 2007 bonus

Material changes since last update:

- Committed spend has increased by $3m, all in IBD, to $862m in total
- 2nd year GBs for 2009 increased by $35m in IBD, offset by a $12m reduction in the deferred cash award in IBD
- Assuming the one-time deferred cash award is amortised from date of award (assumed to be 1st October 2008) through to vesting date (50% in October 2009, and 50% in October 2010) then roughly $60m will need to be expensed in 2008

### Other developments not reflected in the scorecard

- Private Investment Managers (PIM) – Deferred cash awards of up to $11.7m have been approved. This additional cost will not hit 2008. Further details are included in Attachment 2.
- IBD and Sales – Considering expanding GB population to include senior investment bankers and sales professionals in NY based on anecdotal evidence of "bid-aways" to other houses.
- Equities – Donini would like a further $25m to honour pre-deal Lehman guarantees

### Current funding pressures

Three funding pressures currently exist that are putting pressure on the original bonus pool estimate of $1.4bn (assumed to exclude funding for deferred cash awards):

- The "take-on" population has increased by roughly 600+ people; originally expected to "take-on" 9,900 people (pre-redundancies), now expected to be 10,500+ (pre-redundancies)
- The original intention was to guarantee approximately 175 to 200 people; currently we are proposing to guarantee nearly 400 people, more than twice as many as anticipated
- Certain individuals have received "top-ups" on the original proposal to guarantee 75% of 2007 Total Compensation; impact is $138m as shown above

HIGHLY CONFIDENTIAL
BCI-EX-(S)-00027191

**Lehman Brothers**
**Summary Report**

**Sensitivity analysis – Impact on the residual population of current level of GB proposals**

This considers the impact on the residual population that is not guaranteed (assumes 3,300 redundancies). Detailed analysis is shown in Attachment 3, but in summary:

- The target was to deliver 65% of 2007 Total Bonus
- The residual pool above yields roughly 50-55% of 2007 Total Bonus
- The "gap" to 65% delivery is now estimated at approximately $270m depending on guaranteed bonuses in the residual population and any other gross-ups and commitments that may exist.

Lastly, there is a population of people who received a zero bonus in 2007. If it assumed that these individuals will receive something in 2008[1], we would require an additional $75m to $100m in bonus pool assuming that this was not offset by other individuals (who received a bonus in 2007) receiving zero bonus in 2008.

**Proportionate guaranteed bonuses to date relative to 2007 proportions**

Attachment 4 shows further detailed analysis of actual guaranteed bonuses to date relative to 2007 proportionate bonus spend.

The main observations are noted here:

- 90% of the targeted guaranteed bonuses is directed towards Front Office roles
- The distribution of targeted guaranteed bonuses is skewed towards IBD and Equities with both businesses guaranteeing more than 50% of their 2007 total bonus pool value
- IBD represents 40% of the aggregate targeted guaranteed bonuses to date compared with 25% of the 2007 actual bonus pool

**UK/Europe and Asia Update**

Attachment 5 shows the current status of progress in UK/Europe and Asia. It is assumed that a £100m budget exists for these initiatives. Commitments so far are yet to be advised, but will be reported when available.

---

[1] Based on a simple average bonus of the area in which these individuals work

[Autodate], [Autodate]

**HIGHLY CONFIDENTIAL**                                     BCI-EX-(S)-00027192

**Lehman Brothers**
**Summary Report**

### Attachment 1 – Master Scorecard

| Division | Data | Total |
|---|---|---|
| Corporate | Headcount | 33 |
| | Total 2008 Cash | $31,534,875 |
| | Total 2008 EPP | $7,997,625 |
| | Business Proposed Bonus Award | $39,532,500 |
| | Barcap Bonus Pool (per Formula) | $39,963,750 |
| | 2009 Bonus Award | |
| | Special Cash Award | $18,448,500 |
| | Pool Difference (based on current proposal) | -$431,250 |
| EQ | Headcount | 77 |
| | Total 2008 Cash | $129,082,500 |
| | Total 2008 EPP | $36,867,500 |
| | Business Proposed Bonus Award | $165,950,000 |
| | Barcap Bonus Pool (per Formula) | $132,807,500 |
| | 2009 Bonus Award | |
| | Special Cash Award | $57,693,750 |
| | Pool Difference (based on current proposal) | $33,142,500 |
| FID | Headcount | 59 |
| | Total 2008 Cash | $88,166,431 |
| | Total 2008 EPP | $25,267,500 |
| | Business Proposed Bonus Award | $113,433,931 |
| | Barcap Bonus Pool (per Formula) | $95,424,907 |
| | 2009 Bonus Award | $3,475,000 |
| | Special Cash Award | $43,468,995 |
| | Pool Difference (based on current proposal) | $18,009,024 |
| IBD | Headcount | 192 |
| | Total 2008 Cash | $279,770,723 |
| | Total 2008 EPP | $78,561,975 |
| | Business Proposed Bonus Award | $358,332,699 |
| | Barcap Bonus Pool (per Formula) | $300,324,567 |
| | 2009 Bonus Award | $107,257,000 |
| | Special Cash Award | $93,588,000 |
| | Pool Difference (based on current proposal) | $58,008,132 |
| IMD | Headcount | 23 |
| | Total 2008 Cash | $13,298,312 |
| | Total 2008 EPP | $2,761,521 |
| | Business Proposed Bonus Award | $16,059,833 |
| | Barcap Bonus Pool (per Formula) | $11,489,247 |
| | 2009 Bonus Award | |
| | Special Cash Award | $7,256,255 |
| | Pool Difference (based on current proposal) | $4,570,586 |
| PS | Headcount | 14 |
| | Total 2008 Cash | $19,866,563 |
| | Total 2008 EPP | $5,502,188 |
| | Business Proposed Bonus Award | $25,368,750 |
| | Barcap Bonus Pool (per Formula) | $23,102,500 |
| | 2009 Bonus Award | |
| | Special Cash Award | $11,838,750 |
| | Pool Difference (based on current proposal) | $2,266,250 |
| SRM | Headcount | 1 |
| | Total 2008 Cash | $2,478,750 |
| | Total 2008 EPP | $746,250 |
| | Business Proposed Bonus Award | $3,225,000 |
| | Barcap Bonus Pool (per Formula) | $3,225,000 |
| | 2009 Bonus Award | |
| | Special Cash Award | $1,505,000 |
| | Pool Difference (based on current proposal) | $0 |
| Sr. Mgmt | Headcount | 9 |
| | Total 2008 Cash | $105,990,000 |
| | Total 2008 EPP | $34,610,000 |
| | Business Proposed Bonus Award | $140,600,000 |
| | Barcap Bonus Pool (per Formula) | $117,400,000 |
| | 2009 Bonus Award | |
| | Special Cash Award | $71,375,000 |
| | Pool Difference (based on current proposal) | $23,200,000 |
| Total Headcount | | 462 |
| Total Total 2008 Cash | | $670,188,154 |
| Total Total 2008 EPP | | $192,314,559 |
| Total Business Proposed Bonus Award | | $862,502,713 |
| Total Barcap Bonus Pool (per Formula) | | $723,737,471 |
| Total 2009 Bonus Award | | $110,732,000 |
| Total Special Cash Award | | $304,573,590 |
| Total Pool Difference (based on current proposal) | | $138,765,242 |

Notes:
Snr Mgt          2008 Bonus = 80% of 2007 TC (Plus Deferred cash = 50% 07 TC as a special cash award)
Tier 1           2008 Bonus = 75% of 2007 TC (Plus Deferred cash = 35% 07 TC as special cash award)
Disc 2008  pool = 55% of 2007 pool is not included in the above

HIGHLY CONFIDENTIAL                                            BCI-EX-(S)-00027193

**Lehman Brothers**
**Summary Report**

**Attachment 2 – Deferred cash awards for PIMs**

The following steps were approved with regards to various individuals in the PIM business to compete with market practice and give us the best chance to land these individuals and tie them in longer term. This cost will not hit 2008, but rather in 2010.

These individuals are currently operating on a commission basis for their compensation. Of this commission, up to 50% (depending on level) is deferred into RSUs related to Lehman stock. Currently, these RSU awards have no value.

We propose making deferred cash awards to these individuals that cliff-vest in 2 years. The deferred cash award would be equal to 50% of the original value of the RSU awards made to them in 2008. Thus, these individuals would suffer a 50% loss on the value of their 2008 awards, and any awards received prior to that have no value.

The RSUs awarded to this population in 2008 were $23.3m. Consequently, the maximum deferred cash award (payable in 2010) would be 50% of this i.e., $11.7m.

[Autodate], [Autodate]

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00027194

BCI-EX-(S)-00027195

**Lehman Brothers**
**Summary Report**

## Attachment 3 – Analysis of Targeted Spend against $1.4bn Funding

| Business Area | Business Unit | HC | 07 Bonus | A — Proportionate Funding[1] | B — Targeted GB[2] | C — Other 2008 GBs[3] | D=A-B-C — Residual Funding[4] | E — 65% of Residual 07 Bonus (post severances)[5] | F=E-D — Gap to 65%[6] |
|---|---|---|---|---|---|---|---|---|---|
| Front | EQ | 1,078 | 435.9 | 246.9 | 185.2 | 14.9 | 46.8 | 23.1 | [shaded] |
| | FID | 1,069 | 598.8 | 337.8 | 172.1 | 86.9 | 78.8 | 52.9 | 0.8 |
| | IBD | 1,245 | 620.7 | 350.1 | 359.8 | 15.3 | 22.3 | 66.9 | -13.9 |
| | IMD | 1,017 | 66.6 | 37.6 | 14.0 | 1.3 | 66.9 | 23.1 | 0.8 |
| | PI | 56 | 125.3 | 70.7 | 0.0 | 3.8 | 52.9 | 52.9 | -13.9 |
| | PS | 346 | 94.8 | 53.5 | 25.4 | 4.2 | 23.9 | 26.4 | 2.5 |
| Front Total | | 4,811 | 1,942.0 | 1,096.5 | 756.5 | 126.5 | 212.5 | 477.9 | 265.4 |
| Corporate | CORP | 2,550 | 349.2 | 197.0 | 64.3 | 18.6 | 114.1 | 124.8 | 10.7 |
| | IT | 2,491 | 148.6 | 83.8 | 16.2 | 5.1 | 62.5 | 55.9 | -5.7 |
| | OCS | 1,084 | 25.3 | 14.3 | 5.1 | 1.1 | 8.1 | 8.8 | 0.7 |
| | PI | 1 | 16.8 | 9.5 | 0.0 | 0.0 | 9.5 | 7.4 | -2.1 |
| Corporate Total | | 6,139 | 539.9 | 304.5 | 85.5 | 24.8 | 194.2 | 197.8 | 3.7 |
| Grand Total | | 10,950 | 2,481.9 | 1,400.0 | 842.0 | 151.3 | 406.7 | 675.7 | 269.0 |

Notes:

1 Illustrative allocation of $1.4bn pool, split across business areas in same proportion as 07 actual spend
2 Value of guarantees proposed to be awarded to employees on the target list
3 Guarantees to employees who are not on the target list
4 Remaining funding, by business, assuming proportionate allocation less 'Targeted' and 'Other' GBs.
5 65% of the comparative 07 actual bonus pool, relating to the non-targeted, non GB'd population (less estimated 3,300 proportional headcount 'reduction')
6 Cost to match proposed bonus pool of 65% of 07 actual

Observations

- After deducting targeted spend to date and other guaranteed bonuses, there remains a residual pool of $400m from the proposed $1.4bn funding
- Severances of 3,300 are assumed in the above analysis, with the headcount and associated bonus savings assumed to be directly proportional to the current distribution
- Achieving a pool wide 08 bonus benchmark of 65% of 07 values would currently require an additional $270m
- Assuming funding is allocated in line with 07 spend, Equities, IBD and FID have spent proportionately more than the other business areas with significant gaps to the benchmark
- Within the population, there are approx 1,400 recent joiners (last 2 years) who did not receive a bonus in 2007. After assuming a proportion of severance, benchmarking these to an approximate 65% of 07 averages would cost an estimated additional $75m to 100m

[Autodate], [Autodate]

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00027196

Lehman Brothers
Summary Report

Attachment 4 – Proportionate spend to date

| Business Area | Business Unit | 07 Bonus | Proportion of Total | Targeted GB | Proportion of Targeted GBs | Targeted GB as % of 07 P... |
|---|---|---|---|---|---|---|
| Front | EQ | 435.9 | 18% | 185.2 | 22% | 42% |
| | FID | 598.8 | 24% | 172.1 | 20% | 29% |
| | IBD | 620.7 | 25% | 359.8 | | |
| | IMD | 66.6 | 3% | 14.0 | 2% | 21% |
| | PI | 125.3 | 5% | 0.0 | 0% | 0% |
| | PS | 94.8 | 4% | 25.4 | 3% | 27% |
| Front Total | | 1,942.0 | 78% | 756.5 | 90% | 39% |
| Corporate | CORP | 349.2 | 14% | 64.3 | 8% | 18% |
| | IT | 148.6 | 6% | 16.2 | 2% | 11% |
| | OCS | 25.3 | 1% | 5.1 | 1% | 20% |
| | PI | 16.8 | 1% | 0.0 | 0% | 0% |
| Corporate Total | | 539.9 | 22% | 85.5 | 10% | 16% |
| Grand Total | | 2,481.9 | 100% | 842.0 | 100% | 34% |

Observations

- 90% of the targeted GB spend has been directed towards Front Office roles
- The distribution of targeted GBs is skewed towards IBD and Equities with IBD guaranteeing more than 50% of their 07 pool value
- IBD represents 43% of the targeted GBs relative to 25% of the 07 spend.

[Autodate], [Autodate]

HIGHLY CONFIDENTIAL

**Lehman Brothers**
**Summary Report**

## Attachment 5 – UK/Europe and Asia Update

| Business | Description | Est. cost £m² |
|---|---|---|
| Global Markets, Sales and Research (UK/EU) | • Prime Services / Equity Finance - Team of 25 candidates. Leads - Iain Abrahams and Al Hodge. Interviews took place last week and will be looking to close quickly. Shefield Howarth search firm, terms agreed. Update - Gunner Burkhart key to this move so we are trying to engage and also to leverage JdM – there is a sense that this is moving away from us.<br>• Prime Services / non Equity Finance - up to 170 candidates. Lead - Al Hodge. Update - progressing with targeted interviews.<br>• Equities Sales - Leads - Nick Howard and Omar Selim. Omar to make contact with Axel Kilian to assess interest / scope... Update – Axel Kilian does not appear to be interested. Considering contacting Ernest Morroz (Co-Head Equity Sales Europe) and Andrea Nigr (Southern Europe)<br>• Also received list of 16 Cash Equities sales guys (US product) via Lehman HR indicating that we need to offer. To be discussed with Ajay Nagpal.<br>• Equities Trading - Will be agreeing target names today/tomorrow. Update – received a list of 18 prop / algo traders across UK / Asia from Lehman HR. Dial Josh to discuss with Gerry Donini. Will then agree other target names.<br>• Research - Leads are Waqas Samad and Sudeep Surma. Team of 25. Will proceed today/tomorrow. Update – in progress.<br>• Sales (non Equities) - Leads are Nick Howard and Omar Selim. Identifying key 10-15 hires for review by JdM and GStB. Up-date – list is currently being reviewed by GStB – will then be escalated to JdM for review.<br>• Now progressing with a number of non-GB Lehman hires that were in progress prior to the bankruptcy. | TBA |
| IBD (UK/EU) | Project Destiny<br>• Bob F / team - command centre established in the Hilton; this is where they will meet candidates. Bob and his colleagues have called all of the people that we targeted to call today - Tier 1 circa 15 MDs<br>• General sentiment is that the Country guys (Italy, Germany, Benelux) responded far more positively to our approach; and also talked about other people in their teams that they would like to line up to meet with us; Bob planning to go to Milan and Paris to meet them on Thursday.<br>• The sector people based in London seemed more cautious; were receptive to calls and keen to talk but seem to have options; and were less immediately committed.<br>• Bob and his team will be meeting these Tier 1 people over the next 2 days and mapping out the people within their teams that would form Tier 2.<br>• JW's direct reports also have a number of people that they know, who have reached out to us - and they are meeting them today / tomorrow. (in parallel) | TBA |
| India | Exploring possibility of acquiring the off-shoring capabilities in India, circa 3,000 employees | £20-30m |
| **Total Spend To Date** | | TBA |
| **Budget** | | £100m |

² Includes estimated salaries, GBs, sign-on/SBO, and recruitment costs expected to be incurred in 2008

Page 7 of 7    [Autodate], [Autodate]

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00027197

# BCI EXHIBIT

# 296

**To:**    'jane.buyers-russo@jpmorgan.com'[jane.buyers-russo@jpmorgan.com];
'stephen.m.cutler@jpmorgan.com'[stephen.m.cutler@jpmorgan.com];
'HSNovikoff@WLRK.com'[HSNovikoff@WLRK.com]; 'Raislerk@sullcrom.com'[Raislerk@sullcrom.com]
**Cc:**    Giddens, James W.[giddens@hugheshubbard.com]; Frelinghuysen,
Anson[frelingh@hugheshubbard.com]; 'LVecchio@lehman.com'[LVecchio@lehman.com]
**From:**    Kiplok, Christopher
**Sent:**    Tue 9/23/2008 2:35:22 PM
**Importance:**    High
**Sensitivity:**    None
**Subject:**    Fw: Futures Accounts
**Categories:**    0x00000001

**Futures-Transposed acct info.doc**

James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc., authorizes the transfer of accounts listed in the attachment to Barclays on an expedited basis. For operational issues related to these transfers, please contact Mike Nielsen, (201) 499-3438.

Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6810
FAX (212) 422-4726

----- Original Message -----
From: Vecchio, Laura M <LVecchio@lehman.com>
To: Kiplok, Christopher
Sent: Tue Sep 23 14:26:40 2008
Subject: Futures Accounts

Chris,

This is the list of accounts associated with one of the two letters.

<<Futures-Transposed acct info.doc>>

Thanks,
Laura

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice.

--------

Confidential

IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidential

J.P. Morgan Chase & Co. 066-027-209  066-027-209 – USD – Cash   LBI Cust Seg Comm Funds Account

J.P. Morgan Chase & Co.  066-619491  001-00049 LB Inc  Customer Seg

J.P. Morgan Chase & Co.  930-1-031259  930-1-031259 – USD – Cash  LBI Customer Segregated CCA Funds Account

J.P. Morgan Chase & Co  066-619491011-00049LB Inc Customer Seg   066710642  011-00086 LBI Customer Foreign Futures & Foreign Options Secured

Chase  G69725  LBI Customer Seg – DTC safekeeping

Chase  G69938  LBI Customer Foreign Secured – DTC safekeeping

Confidential

# BCI EXHIBIT

# 297

**From:**    Lucas, Chris : Group Exec
**Sent:**    Wed, 24 Sep 2008 15:16:43 GMT
**To:**    Varley, John : Group Exec
**Subject:** Re: negative goodwill=economic profit?

I have not had a discussion on this but my current thinking is that it is hard to exclude it given it is both accounting profit and tier 1 for regulatory purposes

I will use the Beijing trip to think about it and discuss with you before concluding

-----Original Message-----
From: Varley, John : Group Exec
To: Lucas, Chris : Group Exec
Sent: Wed Sep 24 13:55:00 2008
Subject: negative goodwill=economic profit?

Chris
Bob believes that the negative goodwill constitutes economic profit.
It seemed to me that we needed to get an authoritative view on this from the group finance director before we start bandying it around!

Has Patrick consulted you on it?
John


John Varley
Group Chief Executive

Tel: 020 7116 1000 (cw 6006-1000)
Fax: 020 7116 7780 (cw 6006-7780)
e-mail address: john.varley@barclays.com
Address: One Churchill Place, London E14 5HP
COMPANY CONFIDENTIAL



EXHIBIT
353 A
9.4.09 AV

HIGHLY CONFIDENTIAL

# BCI EXHIBIT

# 298

**To:**    'jane.buyers-russo@jpmorgan.com'[jane.buyers-russo@jpmorgan.com];
'kevin.c.kelley@jpmorgan.com'[kevin.c.kelley@jpmorgan.com];
'inaba_gail@jpmorgan.com'[inaba_gail@jpmorgan.com];
'Robert.M.Macallister@chase.com'[Robert.M.Macallister@chase.com];
'HSNovikoff@WLRK.com'[HSNovikoff@WLRK.com]
**Cc:**    'tim.stack@barcap.com'[tim.stack@barcap.com];
'liz.james@barcap.com'[liz.james@barcap.com]; Giddens, James W.[giddens@hugheshubbard.com];
Kobak, James B.[kobak@hugheshubbard.com]; 'Jennings, Jeffrey D'[jeffrey.jennings@lehman.com];
'Vecchio, Laura M'[LVecchio@lehman.com]; Raislerk@sullcrom.com[Raislerk@sullcrom.com]
**From:**    Kiplok, Christopher
**Sent:**    Wed 9/24/2008 3:30:46 PM
**Importance:**    High
**Sensitivity:**    None
**Subject:**    LBI - Wire Transfer Instructions / Trustee Authorization
**Categories:**    urn:content-classes:message

James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc., authorizes the wire
transfers listed below to Barclays on an expedited, priority basis.  For operational issues related to the
transfers, please contact Mike Nielsen, (201) 499-3438.

Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6810
FAX (212) 422-4726

---------------------------------------------------------------------------
From: Vecchio, Laura M [mailto:LVecchio@lehman.com]
Sent: Wednesday, September 24, 2008 3:26 PM
To: Kiplok, Christopher
Subject: FW: Money movements

Chris,

Can you double check to see if I sent you this one.

Thanks,
Laura

---------------------------------------------------------------------------
From: Liz.James@barclayscapital.com [mailto:Liz.James@barclayscapital.com]
Sent: Wednesday, September 24, 2008 2:19 PM
To: Vecchio, Laura M
Cc: Jennings, Jeffrey D; Tim.Stack@barclayscapital.com
Subject: Money movements

Hi Laura,

Can you please ask the trustee to send the below to JP to get these cash amounts wired today.

Amount  Account
$21,480,270.77  J.P. Morgan Chase & Co. 066-027-209  – USD – Cash   LBI Cust Seg Comm Funds
Account
$20,050,864.41  J.P. Morgan Chase & Co.  066-619491  LB Inc  Customer Seg
$95,697,787.93  J.P. Morgan Chase & Co.  930-1-031259  – USD – Cash  LBI Customer Segregated
CCA Funds Account
$403,081,123.67  J.P Morgan Chase & Co 066-010322 Customer Segregated


Wire all of the above to:
 Bank Of New York, ABA 021000018 Account Number 8900692871, Barclays Capital Inc


Thanks,
Liz
_____        _____

Liz James
Futures Director
200 Park Avenue, New York, Ny 10166
Office: 212-412-6862
Fax: 212-412-1646
E-mail: liz.james@barcap.com
BarclaysCapital www.barcap.com

Confidential

# BCI EXHIBIT

# 299

REDACTED

> _____
> From:   Traugot, Dina
> Sent:   Wednesday, September 24, 2008 3:37 PM
> To:   'amanjit.arora@weil.com'; 'Ronit.Berkovich@weil.com'
> Cc:   Bortstein, Lawrence; Yulis, Alyssa
> Subject:   FW: Corporate Services Assets U S _9-24.xls

HIGHLY CONFIDENTIAL

CGSH00064547

>
> Ronit and Aman,
>
> Need your input as to the assets contained on the attached. Do these
> items fall into the Barclays bucket or the LBI/LBHI bucket? There are
> detailed breakdowns of the items on the attached spreadsheets.
>
> Many thanks,
> Dina
>
> _____
> From:   Dewar, Carol
> Sent:   Wednesday, September 24, 2008 1:40 PM
> To:   Traugot, Dina
> Subject:   Corporate Services Assets U S _9-24.xls
>
> <<Corporate Services Assets U S _9-24.xls>>
>
> Dina
>
> List of our assets, please call me to discuss the file. The key thing
> for us right now is can we use tickets for sporting events that
> businesses want to use for clients this coming weekend. Some dining
> data is incomplete as we obtain that data we will send you updated
> file.
>
> Our key assets are:
> Tickets
> Gifts
> Multi Media equipment
> Wine
> China etc in Exec Dining Room
>
>
> Carol
>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - -


This message is intended only for the personal and confidential use of the
designated recipient(s) named above. If you are not the intended recipient of
this message you are hereby notified that any review, dissemination,
distribution or copying of this message is strictly prohibited. This
communication is for information purposes only and should not be regarded as an
offer to sell or as a solicitation of an offer to buy any financial product, an
official confirmation of any transaction, or as an official statement of Lehman
Brothers. Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate
and it should not be relied upon as such. All information is subject to change
without notice.


--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this

communication (including any attachments) is not intended or written to be used
and cannot be used for the purpose of (i) avoiding U.S. tax related penalties
or (ii) promoting, marketing or recommending to another party any transaction
or matter addressed herein.

HIGHLY CONFIDENTIAL

CGSH00064549

CGSH00064550

**Assets:**

| Corporate Services Group | Asset | Description | Purchase Price | Value | Own | Leased | Comments | Entity Own |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | LBI   LBHI |
| **Dining, Meeting & Fitness:** | | | | | | | | |
| 745 Cafeteria | equipment | cooking and refrigeration | | | x | CRE list | |
| | furniture | seating area | | | x | CRE list | |
| 399 EDR | kitchen equipment | | | | | CRE list | |
| | Furniture | | | | | CRE list | |
| all NY/NJ café locations | Micros | pos system | 300,000 | 300,000 | x | | |
| | Debitek | payment system | | | x | | |
| | china service ware | | | | | | |
| | silverware | | | | | | |
| Executive Dining | Wine | Wine:Mailing List | 36,340 | 54,068 | X | | |
| | | Wine:Wine Room | 44,188 | 53,135 | X | | |
| | | Wine: Wine Cellar | 47,062 | 105,140 | X | | |
| | **Total** | | 127,590 | 212,343 | | | |
| | Furniture | Inventory Sits with Real Estate | | | | | |
| | China / serviceware | | | | | | |
| | smallwares | | | | | | |
| 745 EDR | Flatware and Silver | | 44,204 | 44,204 | X | | |
| | Linen | | 31,090 | 31,090 | X | | |
| | China - Wedgwood | | 22,474 | 22,474 | X | | |
| | China - Bernardaud | | 18,632 | 18,632 | X | | |
| | Glassware | | 7,919 | 7,919 | X | | |
| | **Total 745** | | 124,318 | 124,318 | | | |
| 399 EDR | Flatware and Silver | | 29,378 | 29,378 | X | | |
| | China (Bernardaud) | | 21,405 | 21,405 | X | | |
| | Miscellaneous(ie: Wastebaskets, drawer liner) | | 3,738 | 3,738 | X | | |
| | Glassware | | 3,366 | 3,366 | X | | |
| | Linen | | 3,628 | 3,628 | X | | |
| | Storage | | 3,592 | 3,592 | X | | |
| | Standard Bar | | 3,000 | 3,000 | X | | |
| | **Total 399** | | 68,106 | 68,106 | | | |
| **Fitness Services:** | | | | | | | | |
| LBFC 745 | equipment | | | | | CRE list - project | |
| Nuffield London | equipment | | | | | CRE list - project | |
| Qi Mumbai | equipment | | | | | CRE list - project | |
| Mountain-West Denver | equipment | | | | | CRE list - project | |
| | equipment | | | | | CRE list - project | |
| **CG/BHS:** | | | | | | | | |

HIGHLY CONFIDENTIAL

CGSH00064551

HIGHLY CONFIDENTIAL

CGSH0006452

**Business Information Services**

Archive
Reference Library

| | Memorabilia from Lehman's history Staff's reference materials | Unknown Unknown | Unknown Unknown | Owned Owned | Probably not worth much Probably not worth much |
|---|---|---|---|---|---|

**Corporate Events:**

Tickets

Season Tickets
Inventory

| | Firm season tickets Firm ticket inventory | 2,277,958 48,129 | 2,277,958 48,129 | X X | 2,067,958 48,129 | - - |

Gifts

Inventory

| | Americas gift inventory | 1,608,769 | 1,608,769 | X | |

**Multimedia:**

Americas

Equipment

| | | 23,164,532 | 10,688,609 | X | |

| | **Total Inventory** | **27,719,402** | **15,328,232** | X | |

HIGHLY CONFIDENTIAL

CGSH00064553

HIGHLY CONFIDENTIAL

210.000  MCD

38,000  NB

CGSH00064554

HIGHLY CONFIDENTIAL

| Location | Vendor | TEAM | SEATS | Total Season Cost | Amount still pending GL | Invoices Not Paid | # OF TKTS | Ownership | Contract Expiration |
|---|---|---|---|---|---|---|---|---|---|
| US | Madison Square Garden | NY KNICKS | | | | | | | |
| | | | 85K 1-4 | $42,265.00 | $42,265.00 | | 4 | FID/EQ/PS (44/44/12) | yearly renewal |
| | | | 86M 1-4 | $42,265.00 | $42,265.00 | | 4 | IMD | yearly renewal |
| US | TD Banknorth Center | BOSTON CELTICS | 111 row CC | $47,048.25 | $47,048.25 | | 4 | FID/EQ/IMD (40/40/20) | August-10 |
| US | Goldberg, Kohn | CHICAGO BULLS | 1/3 of Suite L4 (186 tickets) | $55,799.00 | $55,799.00 | | 12 | FID/EQ/IMD (40/40/20) | August-09 |
| | | GOLDEN STATE WARRIORS | Mezz Club C5 | $16,625.00 | | | 5 | FID | yearly renewal |
| US | Madison Square Garden | NY RANGERS | 59M 1-4 | $31,361.00 | $31,361.00 | | 4 | FID/EQ/PS (44/44/12) | yearly renewal |
| | | | 48L 1-4 | $31,361.00 | $31,361.00 | | 4 | FID/EQ/PS (44/44/12) | yearly renewal |
| | | | 85K 1-4 | $31,361.00 | $31,361.00 | | 4 | FID/EQ/PS (44/44/12) | yearly renewal |
| | | | 86M 1-4 | $31,361.00 | $31,361.00 | | 4 | IMD – 4 club | yearly renewal |
| US | NJ Devils Arena | NJ DEVILS | Sec 19 row 12 | $84,000.00 | $84,000.00 | | 4 | FID/EQ/IMD/IBD | yearly renewal |
| | | | Sec 19 row 14 | $31,690.00 | $31,690.00 | | 4 | FID/EQ/IMD/IBD | yearly renewal |
| US | TD Banknorth Center | BOSTON BRUINS | 111 row CC | $34,836.25 | $34,836.25 | | 4 | FID(40%)/ EQ(40%)/ IMD(20%) | August-10 |
| US | Goldberg, Kohn | CHICAGO BLACKHAWKS | 1/3 of Suite L4 (176 tickets) | $55,799.00 | $55,799.00 | | 12 | FID(40%)/ EQ(40%)/ IMD(20%) | August-09 |
| US | NY Yankees | NY YANKEES | Sec 30 row B | $84,822.00 | $45,035.00 | | 4 | CORP/IBD | yearly renewal - December |
| | | | Sec 30 row C | $41,710.00 | | | 2 | CORP/IBD | yearly renewal - December |
| | | | Sec 30 row H | $84,822.00 | | | 4 | FID/EQ/PS (44/44/12) | yearly renewal - December |
| | | | Sec 32 row K | $84,822.00 | | | 4 | FID/EQ/PS (44/44/12) | yearly renewal - December |

CGSH00064555

| Client Usage | Renewal Status (as of 4/23/08) | 2007 Target Client Usage | Target Client Divisions | Contract | Comments | Entity |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | No | Able to cancel - need to send letter | LBI |
| | | | | | Able to cancel - need to send letter | LBI |
| | | | | No | | |
| | | 15% | FID/EQ | Yes | | LBI |
| 57% | ESS to review contract | 13% | FID | Yes | | LBI |
| | NOT RENEWING | | | | | |
| | | | | No | | |
| 51% | Look to cancel 4 tickets | 29% | FID/EQ/PS | No | Able to cancel - need to send letter | LBI |
| | | | | No | Able to cancel - need to send letter | LBI |
| | | | | No | Able to cancel - need to send letter | LBI |
| | | | | No | Able to cancel - need to send letter | LBI |
| | | 21% | FID/EQ/PS | Yes | | LBI |
| | | | | No | | LBI |
| | | | | | | |
| | | 21% | FID/EQ | Yes | | LBI |
| 37% | ESS to review contract | 1% | FID | Yes | | LBI |
| 87% | Reassess at the end of 2008 | 28% | FID/EQ/PS/IBD | No | | LBI |
| | | | | No | | LBI |
| | | | | No | | LBI |
| | | | | No | | LBI |

HIGHLY CONFIDENTIAL

CGSH00064556

HIGHLY CONFIDENTIAL

| Juris. | Team | Property | Seat | Amount 1 | Amount 2 | Qty | IMD(4)/FID/EQ/PS (2) | Term |
|---|---|---|---|---|---|---|---|---|
| | NY Mets | | Main box 248 row C | $68,602.00 | | 6 | | yearly renewal - December |
| US | | NY METS | Sec 25 row D | $33,246.00 | $17,138.00 | 4 | IBD/IMD | yearly renewal - December |
| | | | Sec 63 row D | $33,246.00 | | 4 | FID/EQ/PS (44/44/12) | yearly renewal - December |
| US | NY Mets | NY METS (Playoffs) | Sec 105 row G | $26,054.00 | | 4 | FID/EQ/PS (44/44/12) | yearly renewal - December |
| | | | | $25,880.00 | $25,880.00 | 12 | | |
| US | NY Mets | NY METS (New stadium seat deposit) | | $11,340.00 | $11,340.00 | 8 | | yearly renewal - December |
| | Chicago Cubs | | | | | | | |
| US | Chicago Cubs | CHICAGO CUBS | Sec 117 row 17 | $20,992.00 | $2,332.00 | 4 | FID(25%)/EQ(25%)/IMD(25%)/IBD(25%) | yearly renewal - December |
| US | Chicago Cubs | CHICAGO CUBS (Playoffs) | | $6,460.00 | $6,460.00 | 4 | | |
| | Chicago White Sox | | | | | | | |
| US | Chicago White Sox | CHICAGO WHITE SOX | Sec 131S row 5 | $58,320.00 | $9,360.00 | 4 | FID(33%)/EQ(33%)/IMD(33%) | 2011 |
| US | Chicago White Sox | CHICAGO WHITE SOX (Playoffs) | | $14,425.00 | $14,425.00 | 4 | | |
| | San Francisco Giants | | | | | | | |
| US | San Francisco Giants | SAN FRANCISCO GIANTS | Club 220 row C | $22,893.64 | $3,271.00 | 4 | FID(25%)/EQ(25%)/IMD(35%)/IBD(15%) | 2013 |
| | Boston Red Sox | | Sec 12, box 15 row 1  Sec 12, box 15 row 2 | | | | | |
| US | Boston Red Sox | BOSTON RED SOX | | $180,920.00 | $35,738.00 | 8 | FID(40%)/EQ(40%)/IMD(20%) | December-09 |
| US | Boston Red Sox | BOSTON RED SOX (Playoffs) | | $35,840.00 | $35,840.00 | 8 | | |
| US | NY Giants | NY GIANTS | 107 row 23 | $2,755.00 | $2,480.00 | 3 | FID/EQ/IMD/ IBD | yearly renewal - April/May |
| US | NJ Sports & Exposition | NY GIANTS | Supersuite 230B | $208,100.00 | $182,087.00 | 29 | FID/EQ/IMD/PS (8%/41%/35%/10%) | July-10 |

CGSH00064557

| | | | | | | |
|---|---|---|---|---|---|---|
| 35% | Reassess at the end of 2008 | | FID/EQ/PS/ EXEC | No | | LBI |
| | | | | | | LBI |
| | | 22% | | No | | LBI |
| | | | | No | | LBI |
| | | | | No | | LBI |
| | | | | | | |
| | | | | No | | LBI |
| | | | | | | |
| | | | | No | | LBI |
| | | | | No | | |
| | ESS to review contract | | | Yes | | LBI |
| | | | | No | | |
| | | 12% | IBD/EQ/FID | Yes | | LBI |
| | | | | | | |
| | | 26% | FID/EQ | Yes | | LBI |
| | | | | Yes | | LBI |
| | | 39% | FID/EQ/PS | No | | LBI |
| | | | | | | |
| | | | | Yes | | LBI |

HIGHLY CONFIDENTIAL

# BCI EXHIBIT

# 300

**To:**       'jane.buyers-russo@jpmorgan.com'[jane.buyers-russo@jpmorgan.com];
'kevin.c.kelley@jpmorgan.com'[kevin.c.kelley@jpmorgan.com];
'inaba_gail@jpmorgan.com'[inaba_gail@jpmorgan.com];
'Robert.M.Macallister@chase.com'[Robert.M.Macallister@chase.com];
'pmindlin@wlrk.com'[pmindlin@wlrk.com]
**Cc:**       LVecchio@lehman.com[LVecchio@lehman.com];
jeffrey.jennings@lehman.com[jeffrey.jennings@lehman.com];
'Liz.James@barclayscapital.com'[Liz.James@barclayscapital.com];
Tim.Stack@barclayscapital.com[Tim.Stack@barclayscapital.com];
Raislerk@sullcrom.com[Raislerk@sullcrom.com];  Giddens, James W.[giddens@hugheshubbard.com];
Kobak, James B.[kobak@hugheshubbard.com]
**Bcc:**
              004336.00002.east@nyimport01.firm.hugheshubbard.com[004336.00002.east@nyimport01.firm.
hugheshubbard.com]
**From:**        Kiplok, Christopher
**Sent:**        Wed 9/24/2008 5:50:01 PM
**Importance:**  Low
**Sensitivity:** None
**Subject:**     LBI: Trustee Authorization / Collateral Move
**Categories:**  0x00000001


**Document.pdf**



Please see the enclosed.  Thank you.

Regards,

Chris

Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6810
FAX (212) 422-4726

Confidential

# Attachment Omitted

# BCI EXHIBIT

# 301

Questions on Barcap deal docs                                                    12/20/09 8:57 AM

**From:**   Stewart, Marie
**Sent:**   Wed. 24 Sep 2008 23:53:10 GMT
**To:**     Bailey, Emma
**CC:**     Beklner, Brett; Wong, Kristie; Chiu, Liliana; Kelly, Martin
**Subject:** Questions on Barcap deal docs

Emma:

Questions from our call earlier today are below.

I spoke to David Murgio of Weil re the Barclays Repurchase Agreement and
got his view on how it works (which is we sold assets and Repo is
terminated and there are no settle-up payments to be made). I also
mentioned that I was putting together a summary of the documents and he
offered to review it for us. He said he and his people are preparing
something similar.

Questions
1. LB Israel--not in current deal but might happen as separate deal in
near future. Pls advise status.

2. LB Brazil--not in current deal but might happen as separate deal in
near future. However, lease of Sao Paolo office is on Schedule 1(b) of
Clarification Letter. Pls advise status.

3. Item (e) on Page 3 of Asset Purchase Agreement (APA) says all
intercompany receivables are Excluded Assets and Section 2.4(g) on Page
12 of APA says all intercompany payables are Excluded Liabilities. Item
1(a)(iii) on Page 2 of CL says Purchased Assets includes the equity of
Lehman Brothers Canada Inc., Lehman Brothers Sudamerica SA and Lehman
Brothers Uruguay SA and Item (o) on Page 7 of APA says Purchased Assets
includes the stock of Townsend Analytics. As an accounting matter,
buying the stock of an entity means you get all assets and liabilities.
Our interpretation is that the operation of the Excluded Assets and
Excluded Liabilities clauses means any intercompany receivables and
payables should not be included in the balance sheets of the entities
acquired. Is that the intent?

4. Item (n) on Page 4 of APA says Excluded Assets includes all assets
primarily related to the IMD Business and derivatives contracts. Assume
that means derivative contracts the IMD Business/related to the IMD
Business and is not saying ALL derivative contracts are excluded?

5. Item 1(c) on Page 2 of Clarification Letter (CL) says "The following
shall also be Excluded Assets..., other than those subject to the
Barclays Repurchase Agreement and until any securities pledged as
collateral under the Seller clearing arrangements with JPM Chase (other
than those in Section 1(a)(ii)..." IS the word "until" not needed or is
the end of sentence not complete?

6. Item (n) on Page 7 of APA says Purchased Assets includes "General
trading tools supporting the Business." Does that mean analytic tools
and other types of software programs?

7. Item (o) on Page 7 of APA says Purchased Assets includes the stock
of Townsend Analytics. There are 2 Townsend entities--one is US and one
in UK. Does agreement cover stock of both?


Δ π EXHIBIT 507
Deponent Miller
Date 1/7/010 Rptr. KK
WWW.DEPOBOOK.COM

Questions on Barcap deal docs

12/20/09 8:57 AM

in UK. Does agreement cover stock of both?

8. Item(r) on Page 7 of APA says Purchased Assets includes Mercantile
Exchange license agreements re 355 South LaSalle Street, Chicago and 400
South LaSalle Street, Chicago. I assume this is CME licenses. Does this
also mean any assets we have recorded for CME exchange seats?

9. There are certain payables to syndicate members re syndicate fees
collected and certain prepaid expense assets for syndicate expenses
incurred by LBI for underwritings/IB deals done pre LBHI Bankruptcy. I
am assuming they stay with LBHI and do not transfer to Barclays because
they are not Purchased Assets or Assumed Liabilities. Is that correct?

10. There are certain payables for Soft Dollar balances. The seem to
have something to do with customer accounts that are probably moving to
Barclays. What we need is someone we can discuss this with as we aren't
sure if these balances would meet the definition of Assumed Liabilities.
I think they may be Excluded Liabilities under Section 2.4(c) on Page 12
of APA which says Excluded Liabilities includes "Liabilities incurred in
the Ordinary Course of Business existing prior to the Bankruptcy filing,
except as provided in the APA and other than cure payments under Section
2.5"

# BCI EXHIBIT

# 302

| | |
|---|---|
| **From:** | harvey.miller@weil.com |
| **Sent:** | Thursday, September 25, 2008 10:28 AM |
| **To:** | Despins, Luc <LDespins@milbank.com>; lori.fife@weil.com; Shai Y. Waisman <shai.waisman@weil.com>; Richard Krasnow <richard.krasnow@weil.com> |
| **Cc:** | Bell, Crayton L. <CBell@milbank.com> |
| **Subject:** | Re: Schedules to Barclays APA |

Luc,
I am sure that the schedules will be furnished asap. I don't believe it is helpful to suggest that ths schedules may have been manipulated post closing. You were invited to stay Monday AM as the schedules were reviewed and finalized
Incidentally what have you done
About your firms representation of Lehman? I am told that Milbank is in the top 15 law firms it uses.
Finally we need to talk ab out confidentiality and the role of the Committee vis a vis other creditors and the Ad Hoc committees.
Please call.

        Harvey

---

**From:** "Despins, Luc" [LDespins@milbank.com]
**Sent:** 09/25/2008 10:09 AM AST
**To:** Harvey Miller; Lori Fife
**Cc:** "Bell, Crayton L." <CBell@milbank.com>
**Subject:** Schedules to Barclays APA

Harvey and Lori, my partner Crayton Bell has made several requests for the asset schedules referred to in section 1a(ii) of the APA and has received NO response.

I hope that these schedules have not been changed since the closing. In any event, can we get them ASAP?

============================================================================

**IRS Circular 230 Disclosure:** U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.



CONFIDENTIAL

MTHM0005739

# BCI EXHIBIT

# 303

**From:**   Shapiro, Mark J.
**Sent:**   Thu, 25 Sep 2008 14:59:08 GMT
**To:**   House Joseph
**Subject:** Status

Joe, after the tumultuous week here at Lehman (now Barclays Capital), I
have finally come up for air and wanted to let you know that.  I was
thrust into having to lead the bankruptcy filing and sale to Barclays,
which I will tell you about sometime over drinks or dinner, and luckily
we were able to save most jobs in the US.   Things should pretty much
continue on for me as I expect to be the Head of the Restructuring and
Finance efforts at Barclays once the dust all settles.

Give me a call when you have a chance.  I understand the confi was
signed up relating to Delta/NWA and that information should be
forthcoming.  Regards, Mark

**HIGHLY CONFIDENTIAL**                                    BCI-EX-(S)-00002402

# BCI EXHIBIT

# 304

Rod Miller/NY/WGM/US
09/25/2008 11:45 AM

To  lgranfield@cgsh.com
cc  dmclaughlin@cgsh.com, lschweitzer@cgsh.com,
    rdavis@cgsh.com, vlewkow@cgsh.com,
    david.murglo@weil.com, lori.fife@weil.com,
    robert.messineo@weil.com
bcc
Subject  Re: Fw: Financing Facility Collateral List

The original schedule on the closing table was prepared by LBI, but was replaced by a schedule prepared
by BarCap as the one prepared by LBI did not perfectly track what BarCap had received in the Fed
transaction, which was the purpose of Schedule A. Schedule B was prepared by LBI as to what its
records indicated as of Sunday, September 21st as to what was in the unencumbered "box" and should
have matched what BarCap received Monday morning, although there may have been some deviations
between the time the information was prepared and the trade.

Hope this helps.

-- Rod

*Rod Miller*
Corporate Partner - Capital Markets
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8716
FaxL (212) 310-8007
Mob: (917) 685-6864
E-mail: rod.miller@weil.com

"Lindsee GRANFIELD"
<lgranfield@cgsh.com>

09/25/2008 11:32 AM

To  "Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>
cc  david.murglo@weil.com, "Lisa M SCHWEITZER" <lschweitzer@cgsh.com>, "Robert P DAVIS"
    <rdavis@cgsh.com>, robert.messineo@weil.com, rod.miller@weil.com, "Victor I LEWKOW"
    <vlewkow@cgsh.com>, lori.fife@weil.com
Sub  Re: Fw: Financing Facility Collateral List
ject

WGM-LEHMAN-E 00010378

Also, just to be clear, we have an inquiry into our client about this, so that we do not have agreement yet to release

Lindsee P. Granfield
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2738 | f: +1 212 225 3999
www.clearygottlieb.com | lgranfield@cgsh.com

Duane
MCLAUGHLIN/NY/C        To  robert.messineo@weil.com
gsh
                      cc  Robert P DAVIS/NY/Cgsh@cgsh, Victor I LEWKOW/NY/Cgsh@cgsh, Lindsee GRANFIELD/NY/Cgsh@cgsh,
25 September 2008          Lisa M SCHWEITZER/NY/Cgsh@Cgsh, rod.miller@weil.com, david.murgio@weil.com
11:29 AM
                     Sub  Fw: Financing Facility Collateral List
                     ject

Bob - Attached is the Schedule A that Lehman agreed to on the morning of the closing. This is different from the paper version that was on the closing table and that had handwritten notes. Can you send us the document that you believe is Schedule B. Before people start doing redactions, I want to make sure we all are clear on what the documents are. Thanks, Duane

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com

----- Forwarded by Victor I LEWKOW/NY/Cgsh on 09/23/2008 10:24 AM -----
rod.miller@weil.co
m                     To  vlewkow@cgsh.com, "David P. Murgio" <david.murgio@weil.com>,
22 September 2008         paolo.tonucci@lehman.com, "Mr. James Seery" <jseery@lehman.com>
07:38 AM
                      cc
                     Subj  Fw: Financing Facility Collateral List
                     ect

Schedule A to confirm

WGM-LEHMAN-E 00010379

----- Original Message -----
From: [Jasen.Yang@barclayscapital.com]
Sent: 09/22/2008 07:25 AM AST
To: Rod Miller
Subject: FW: Financing Facility Collateral List


> 
> From:                    Yang, Jasen: Markets (NYK)
> Sent:                    Monday, September 22, 2008 7:23 AM
> To:                      'road.miller@weil.com'
> Cc:                      King, Stephen: Markets (NYK)
> Subject:                 Financing Facility Collateral List
> 
>    <<Barclays Financing Collateral List (Ident - Amt) 09-22-2008.xls>>
> 
> Jasen Yang
> Barclays Capital
> 200 Park Avenue
> New York, New York 10166
> jasen.yang@barclayscapital.com
> Tel: (212) 412 7613
> Fax: (212) 412 5861
> 

This e-mail may contain information that is confidential, privileged or
otherwise protected from disclosure. If you are not an intended recipient of
this e-mail, do not duplicate or redistribute it by any means. Please delete
it and any attachments and notify the sender that you have received it in
error. Unless specifically indicated, this e-mail is not an offer to buy or
sell or a solicitation to buy or sell any securities, investment products or
other financial product or service, an official confirmation of any
transaction, or an official statement of Barclays. Any views or opinions
presented are solely those of the author and do not necessarily represent
those of Barclays. This e-mail is subject to terms available at the following
link: www.barcap.com/cmaildisclaimer. By messaging with Barclays you consent
to the foregoing.  Barclays Capital is the investment banking division of
Barclays Bank PLC, a company registered in England (number 1026167) with its
registered office at 1 Churchill Place, London, El4 5HP.  This email may
relate to or be sent from other members of the Barclays Group.

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.


Barclays Financing Collateral List (Ident - Amt) 09-22-2008.xls

WGM-LEHMAN-E 00010380

# Attachment Omitted

# BCI EXHIBIT

# 305



"Duane MCLAUGHLIN"
&lt;dmclaughlin@cgsh.com&gt;

09/25/2008 12:02 PM

To  lori.fife@weil.com

cc  "Lindsee GRANFIELD" &lt;lgranfield@cgsh.com&gt;

bcc

Subject  Fw: Non-actionable box

History:    ⤶ This message has been forwarded.

Lori - Per Lindsee's last email re: Schedule B, please see below.  Duane

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com
—— Forwarded by Duane MCLAUGHLIN/NY/Cgsh on 09/25/2008 12:00 PM ——

Duane
MCLAUGHLIN/NY/Cgsh

25 September 2008
11:59 AM

To  david.murgio@weil.com, robert.messineo@weil.com, rod.miller@weil.com

cc  Victor I LEWKOW/NY/Cgsh@cgsh, Robert P DAVIS/NY/Cgsh, Lindsee GRANFIELD/NY/Cgsh@cgsh, Lisa M SCHWEITZER/NY/Cgsh@cgsh

Subject  Fw: Non-actionable box

Per my conversation with Bob, attached is the list of what is in the "box" that we have (Schedule B).
Please confirm that this is the final version (and if not, what you believe the final version is).  Thanks,
Duane

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com
—— Forwarded by Duane MCLAUGHLIN/NY/Cgsh on 09/25/2008 11:55 AM ——

—— Forwarded by Victor I LEWKOW/NY/Cgsh on 09/23/2008 11:28 AM ——
david.murgio@weil.com

20 September 2008  05:28 PM

To  vlewkow@cgsh.com, rdavis@cgsh.com

cc

Subject  Fw: Non-actionable box

WGM-LEHMAN-E 00000792

Cash Box...

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail: david.murgio@weil.com

—— Forwarded by David Murgio/NY/WGM/US on 09/20/2008 05:26 PM ——
Rod Miller/NY/WGM/US

|  |  |
|---|---|
| 09/20/2008 01:24 PM | To "Robert Messineo" <robert.messineo@weil.com>, akeller@stblaw.com, "David P. Murgio" <david.murgio@weil.com> |
|  | cc |
|  | Subje Fw: Non-actionable box |
|  | ct |

----- Original Message -----
From: "Tonucci, Paolo" [paolo.tonucci@lehman.com]
Sent: 09/20/2008 12:57 PM AST
To: Rod Miller
Subject: Non-actionable box


This is the box to be delivered but subject to transferring from
custodians.

<<Non Actionable Box as of 0918.xls>>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - -

This message is intended only for the personal and confidential use of the
designated recipient(s) named above.  If you are not the intended recipient of
this message you are hereby notified that any review, dissemination,
distribution or copying of this message is strictly prohibited.  This
communication is for information purposes only and should not be regarded as
an offer to sell or as a solicitation of an offer to buy any financial
product, an official confirmation of any transaction, or as an official
statement of Lehman Brothers.  Email transmission cannot be guaranteed to be

WGM-LEHMAN-E 00000793

secure or error-free.   Therefore, we do not represent that this information is
complete or accurate and it should not be relied upon as such.   All
information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within
this communication (including any attachments) is not intended or written to
be used and cannot be used for the purpose of (i) avoiding U.S. tax related
penalties or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.


This message is being sent from a law firm and may contain
confidential or privileged information.   If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

Non Actionable Box as of 0918.xls

WGM-LEHMAN-E 00000794

# Attachment Omitted

# BCI EXHIBIT

# 306



**Robert**
Messineo/NY/WGM/US
09/25/2008 12:04 PM

To   David Murgio/NY/WGM/US@WGM

cc

bcc

Subject   Re: Fw: LEHMAN—Barclays:  Securities Positions Sold

Ok.  I think all we need for filing purposes is identification info., so the CUSIP and par value may be all
that is needed.  We just need to be sure it's the correct list of securities.

Robert L. Messineo
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Telephone = 212-310-8835
Telecopy = 212-833-3862
David Murgio/NY/WGM/US



**David Murgio/NY/WGM/US**
09/25/2008 12:02 PM

To   Robert Messineo/NY/WGM/US

cc

Subject   Re: Fw: LEHMAN—Barclays:  Securities Positions Sold

I've never seen thsi spreadsheet before.  The Lehman version has a lot more info on it... This Barclays
version only has two columns -- CUSIP and par value.

I'll send to Paolo.

_____    _____
David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

Robert Messineo/NY/WGM/US



**Robert**
Messineo/NY/WGM/US
09/25/2008 11:56 AM

To   David Murgio/NY/WGM/US@WGM

cc

Subject   Fw: LEHMAN—Barclays:  Securities Positions Sold

We also need to confirm the document that is Schedule B.  Did this have marks on it -- anything
that we need to consider redacting?

Robert L. Messineo

WGM-LEHMAN-E 00010399

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Telephone = 212-310-8835
Telecopy = 212-833-3862
—— Forwarded by Robert Messineo/NY/WGM/US on 09/25/2008 11:55 AM ——



Robert
Messineo/NY/WGM/US

09/25/2008 11:48 AM

To   David Murgio/NY/US/@WGM

cc   Rod Miller/NY/WGM/US@WGM, Shai
     Waisman/NY/WGM/US@WGM

Subject   LEHMAN--Barclays:  Securities Positions Sold


         Please see below and follow up with Duane on what is the correct version of the schedules.
Looking at the attachment, I believe that the amount listed is the par value (which I assume means the
principal amount of a debt security) or number of shares, so it is identification information only, and not
the marks.  We need to confirm this.  We were talking about redacting Lehman's / Barclays' marks but it
doesn't look like these were on the schedules.

Robert L. Messineo
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Telephone = 212-310-8835
Telecopy = 212-833-3862
—— Forwarded by Robert Messineo/NY/WGM/US on 09/25/2008 11:37 AM ——



"Lindsee GRANFIELD"
<lgranfield@cgsh.com>

09/25/2008 11:32 AM

To   "Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>

cc   david.murgio@weil.com, "Lisa M SCHWEITZER"
     <lschweitzer@cgsh.com>, "Robert P DAVIS"
     <rdavis@cgsh.com>, robert.messineo@weil.com,
     rod.miller@weil.com, "Victor I LEWKOW"
     <vlewkow@cgsh.com>, lori.fife@weil.com

Subject   Re: Fw: Financing Facility Collateral List


Also, just to be clear, we have an inquiry into our client about this, so that we do not have agreement yet
to release

Lindsee P. Granfield
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2738 | f: +1 212 225 3999
www.clearygottlieb.com | lgranfield@cgsh.com


Duane
MCLAUGHLIN/NY/
Cgsh
              To

| 25 September 2008 | | robert.messineo@weil.com |
|---|---|---|
| 11:29 AM | cc | Robert P DAVIS/NY/Cgsh@cgsh, Victor I LEWKOW/NY/Cgsh@cgsh, Lindsee GRANFIELD/NY/Cgsh@cgsh, Lisa M SCHWEITZER/NY/Cgsh@Cgsh, rod.miller@weil.com, david.murgio@weil.com |
| | Subject | Fw: Financing Facility Collateral List |

Bob - Attached is the Schedule A that Lehman agreed to on the morning of the closing.  This is different from the paper version that was on the closing table and that had handwritten notes.  Can you send us the document that you believe is Schedule B.  Before people start doing redactions, I want to make sure we all are clear on what the documents are.  Thanks, Duane

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com

---- Forwarded by Victor I LEWKOW/NY/Cgsh on 09/23/2008 10:24 AM -----
rod.miller@weil.com

| 22 September 2008 | To | vlewkow@cgsh.com, "David P. Murgio" <david.murgio@weil.com>, |
|---|---|---|
| 07:38 AM | | paolo.tonucci@lehman.com, "Mr. James Seery" <jseery@lehman.com> |
| | cc | |
| | Subject | Fw: Financing Facility Collateral List |

Schedule A to confirm

----- Original Message -----
From:  [Jasen.Yang@barclayscapital.com]
Sent: 09/22/2008 07:25 AM AST
To: Rod Miller
Subject: FW: Financing Facility Collateral List

WGM-LEHMAN-E 00010401

```
>
> From:                          Yang, Jasen: Markets (NYK)
> Sent:                          Monday, September 22, 2008 7:23 AM
> To:                            'road.miller@weil.com'
> Cc:                            King, Stephen: Markets (NYK)
> Subject:                       Financing Facility Collateral List
>
> <<Barclays Financing Collateral List (Ident - Amt) 09-22-2008.xls>>
>
> Jasen Yang
> Barclays Capital
> 200 Park Avenue
> New York, New York 10166
> jasen.yang@barclayscapital.com
> Tel: (212) 412 7613
> Fax: (212) 412 5861
>
```

---

This e-mail may contain information that is confidential, privileged or
otherwise protected from disclosure. If you are not an intended recipient of
this e-mail, do not duplicate or redistribute it by any means. Please delete
it and any attachments and notify the sender that you have received it in
error. Unless specifically indicated, this e-mail is not an offer to buy or
sell or a solicitation to buy or sell any securities, investment products or
other financial product or service, an official confirmation of any
transaction, or an official statement of Barclays. Any views or opinions
presented are solely those of the author and do not necessarily represent
those of Barclays. This e-mail is subject to terms available at the following
link: www.barcap.com/emaildisclaimer. By messaging with Barclays you consent
to the foregoing.  Barclays Capital is the investment banking division of
Barclays Bank PLC, a company registered in England (number 1026167) with its
registered office at 1 Churchill Place, London, E14 5HP.  This email may
relate to or be sent from other members of the Barclays Group.

---

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.



Barclays Financing Collateral List (Ident - Amt) 09-22-2008.xls

WGM-LEHMAN-E 00010402

# This file has been provided in native format

WGM-LEHMAN-E 00010403

# Attachment Omitted

# BCI EXHIBIT

# 307

Rod Miller/NY/WGM/US

09/25/2008 12:13 PM

To RAzerad@lehman.com

cc paolo.tonucci@lehman.com, david.murgio@weil.com

bcc

Subject Re: Unencumbered collateral 📄

Just want to confirm that this is the final schedule that was prepared to reflect what was available in the "box". Thanks.

"Azerad, Robert" <RAzerad@lehman.com>

09/21/2008 07:55 AM

To <rod.miller@weil.com>

cc "Tonucci, Paolo" <paolo.tonucci@lehman.com>

Subject Unencumbered collateral

Rod

Paolo Tonucci asked me to email you this file. Feel free to call me at 917-678-9112 if you have any questions.

Robert Azerad
Global Head of ALM
Lehman Brothers
Phone : (212) 320-7385; Fax: (646) 758 4235
Email : razerad@lehman.com

> <<Copy of depot_analysis_9-19-2008 5 Adjusted.xls>>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - -

This message is intended only for the personal and confidential use of the designated recipient(s) named above.  If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.  This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers.  Email transmission cannot be guaranteed to be secure or error-free.  Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such.  All information is subject to change without notice.

--------

WGM-LEHMAN-E 00015607

IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within
this communication (including any attachments) is not intended or written to
be used and cannot be used for the purpose of (i) avoiding U.S. tax related
penalties or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.



Copy of depot_analysis_9-19-2008 5 Adjusted.xls

WGM-LEHMAN-E 00015608

# This file has been provided in native format

WGM-LEHMAN-E 00015609

| | Market Value | | W/ Adj. LEH Paper |
|---|---|---|---|
| DTC 074 | 862,639,264 | | 862,639,264 |
| DTC 636 | 300,929,347.47 | | 300,929,347.47 |
| Euroclear 22780 | 32,390,617.24 | | 32,390,617.24 |
| CAD | 3,554,083 | | 3,554,083 |
| Bony Tri Pledge | ################## | Pledged but not confirmed for settlement | 777,263,571.04 |
| | ################## | | 1,976,776,882.53 |

# Remainder of Attachment Omitted



Robert
Messineo/NY/WGM/US
09/25/2008 12:36 PM

To Lori Fife/NY/WGM/US@WGM

cc Rod Miller/NY/WGM/US@WGM, shai.waisman@weil.com,
David Murgio/NY/WGM/US@WGM

bcc

Subject Re: Fw: Non-actionable box

Not yet. There is still some uncertainty about whether this is the final list that was to be attached to the A P A (as of Monday morning when we signed), which by the terms of the clarification letter was to be what was "in the box" at the end of the day on Sunday, the 2lst, and so could be different from what was actually delivered at the closing on Monday. (Accordingly, I thought this Schedule was final for purposes of the agreement but it seems that may not be the case.) David and Rod are working to confirm what the correct list is. Also, the attachment has a lot more info. than I think we need to file -- the "all detail" schedule has the marks on it -- so I think all the extraneous info. should be deleted in the version used for filing and treated as the version attached to the agreement. There is nothing in the documents that requires that this information be included, just what is needed to identify the positions.

Robert L. Messineo
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone = 212-310-8835
Telecopy = 212-833-3862
Lori Fife/NY/WGM/US

Lori Fife/NY/WGM/US
09/25/2008 12:22 PM

To Rod Miller/NY/WGM/US@WGM, Robert
Messineo/NY/WGM/US@WGM

cc shai.walsman@weil.com

Subject Fw: Non-actionable box

Is this okay to be filed as Schedule B?

Lori R. Fife, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel. 212 310- 8318
Fax 212 310- 8007
—— Forwarded by Lori Fife/NY/WGM/US on 09/25/2008 12:22 PM ——

"Duane MCLAUGHLIN"
<dmclaughlin@cgsh.com>
09/25/2008 12:02 PM

To lori.fife@weil.com

cc "Lindsee GRANFIELD" <lgranfield@cgsh.com>

Subject Fw: Non-actionable box

WGM-LEHMAN-E 00015610

**Lori - Per Lindsee's last email re: Schedule B, please see below.  Duane**

---

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com
—— Forwarded by Duane MCLAUGHLIN/NY/Cgsh on 09/25/2008 12:00 PM ——
Duane
MCLAUGHLIN/NY/Cgsh

| | |
|---|---|
| 25 September 2008<br>11:59 AM | To david.murgio@weil.com, robert.messineo@weil.com, rod.miller@weil.com |
| | cc Victor I LEWKOW/NY/Cgsh@cgsh, Robert P DAVIS/NY/Cgsh@cgsh, Lindsee<br>GRANFIELD/NY/Cgsh@cgsh, Lisa M SCHWEITZER/NY/Cgsh@cgsh |
| | Subject Fw: Non-actionable box |

Per my conversation with Bob, attached is the list of what is in the "box" that we have (Schedule B).
Please confirm that this is the final version (and if not, what you believe the final version is).  Thanks,
Duane

---

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com
—— Forwarded by Duane MCLAUGHLIN/NY/Cgsh on 09/25/2008 11:55 AM ——

—— Forwarded by Victor I LEWKOW/NY/Cgsh on 09/23/2008 11:28 AM ——
david.murgio@weil.com

| | |
|---|---|
| 20 September 2008  05:28 PM | To vlewkow@cgsh.com, rdavis@cgsh.com |
| | cc |
| | Subject Fw: Non-actionable box |

WGM-LEHMAN-E 00015611

Cash Box...

_____

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

---- Forwarded by David Murgio/NY/WGM/US on 09/20/2008 05:26 PM -----
Rod Miller/NY/WGM/US

09/20/2008 01:24 PM          To "Robert Messineo" <robert.messineo@weil.com>, akeller@stblaw.com, "David P. Murgio"
                                 <david.murgio@weil.com>
                             cc
                             Subje Fw: Non-actionable box
                             ct

----- Original Message -----
From: "Tonucci, Paolo" [paolo.tonucci@lehman.com]
Sent: 09/20/2008 12:57 PM AST
To: Rod Miller
Subject: Non-actionable box


This is the box to be delivered but subject to transferring from
custodians.

<<Non Actionable Box as of 0918.xls>>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - -

This message is intended only for the personal and confidential use of the
designated recipient(s) named above.  If you are not the intended recipient of
this message you are hereby notified that any review, dissemination,
distribution or copying of this message is strictly prohibited.  This
communication is for information purposes only and should not be regarded as
an offer to sell or as a solicitation of an offer to buy any financial
product, an official confirmation of any transaction, or as an official
statement of Lehman Brothers.  Email transmission cannot be guaranteed to be
secure or error-free.  Therefore, we do not represent that this information is
complete or accurate and it should not be relied upon as such.  All

WGM-LEHMAN-E 00015612

information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within
this communication (including any attachments) is not intended or written to
be used and cannot be used for the purpose of (i) avoiding U.S. tax related
penalties or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.


This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

Non Actionable Box as of 0918.xls

WGM-LEHMAN-E 00015613

# Attachment Omitted

# BCI EXHIBIT

# 309



David Murgio/NY/WGM/US          To    vlewkow@cgsh.com

09/25/2008 12:40 PM               cc    dmclaughlin@cgsh.com, lgranfield@cgsh.com,
                                        lschweitzer@cgsh.com, rdavis@cgsh.com,
                                        lori.fife@weil.com, robert.messineo@weil.com,
                                        rod.miller@weil.com
                                 bcc

                             Subject    Re: Fw: Financing Facility Collateral List

Attached is an electronic version of Schedule B that was on the closing table (with the hand markings) and distributed to Cleary.

Note that this version of Schedule B has marks and a lot more info than the version of Schedule A that Vic forwarded with his e-mail (which only included CUSIPs and Par Values).

Regards.

David


_____

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com


"Victor I LEWKOW"
<vlewkow@cgsh.com>
                           To   "Lindsee GRANFIELD" <lgranfield@cgsh.com>

09/25/2008 12:03 PM        cc   david.murglo@weil.com, "Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>, lori.fife@weil.com, "Lisa M
                                SCHWEITZER" <lschweitzer@cgsh.com>, "Robert P DAVIS" <rdavis@cgsh.com>,
                                robert.messineo@weil.com, rod.miller@weil.com

                           Su   Re: Fw: Financing Facility Collateral List
                           bje
                           ct


What we have, Rod,  is the list of the Box that you forwarded to Dave Murgio who forwarded it to me on Saturday, and has a Monday date on it.  Not sure if there was a later version.  Do you know?
We are also checking with Gerard (I hope we are) ,and I guess someone should check with Paolo also,

WGM-LEHMAN-E 00001414

but I don't know if he works for Lehman or Barclays now.

Vic

Victor I. Lewkow
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2370 | f: +1 212 225 3999 or 212 693 9773 | m: +1 646 644 4772
www.clearygottlieb.com | vlewkow@cgsh.com

| | |
|---|---|
| **Lindsee GRANFIELD/NY/Cgsh** | |
| 25 September 2008 11:58 AM | To rod.miller@weil.com |
| | cc david.murgio@weil.com, dmclaughlin@cgsh.com, lori.fife@weil.com, lschweitzer@cgsh.com, rdavis@cgsh.com, robert.messineo@weil.com, vlewkow@cgsh.com |
| | Subject Re: Fw: Financing Facility Collateral List Link |

Can you send us a copy of the final Schedule B?  Thanks.

Lindsee P. Granfield
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2738 | f: +1 212 225 3999
www.clearygottlieb.com | lgranfield@cgsh.com

| | |
|---|---|
| **rod.miller@weil.com** | |
| 25 September 2008 11:45 AM | To lgranfield@cgsh.com |
| | cc dmclaughlin@cgsh.com, lschweitzer@cgsh.com, rdavis@cgsh.com, vlewkow@cgsh.com, david.murgio@weil.com, lori.fife@weil.com, robert.messineo@weil.com |
| | Subject Re: Fw: Financing Facility Collateral List |

The original schedule on the closing table was prepared by LBI, but was replaced by a schedule prepared by BarCap as the one prepared by LBI did not perfectly track what BarCap had received in the Fed transaction, which was the purpose of Schedule A.  Schedule B was prepared by LBI as to what its records indicated as of Sunday, September 21st as to what was in the unencumbered "box" and should have matched what BarCap received Monday morning, although there may have been some deviations between the time the information was prepared and the trade.

Hope this helps.

-- Rod


*Rod Miller*

Corporate Partner - Capital Markets

Weil, Gotshal & Manges LLP

767 Fifth Avenue

New York, New York 10153

Tel: (212) 310-8716

FaxL (212) 310-8007

Mob: (917) 685-6864

E-mail: rod.miller@weil.com

| | | |
|---|---|---|
| "Lindsee GRANFIELD" <lgranfield@cgsh.com> | To | "Duane MCLAUGHLIN" <dmclaughlin@cgsh.com> |
| | cc | david.murgio@weil.com, "Lisa M SCHWEITZER" <lschweitzer@cgsh.com>, "Robert P DAVIS" <rdavis@cgsh.com>, robert.messineo@weil.com, rod.miller@weil.com, "Victor I LEWKOW" <vlewkow@cgsh.com>, lori.fife@weil.com |
| 09/25/2008 11:32 AM | Subject | Re: Fw: Financing Facility Collateral List |

Also, just to be clear, we have an inquiry into our client about this, so that we do not have agreement yet to release

Lindsee P. Granfield
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2738 | f: +1 212 225 3999
www.clearygottlieb.com | lgranfield@cgsh.com

Duane
MCLAUGHLIN/NY/
Cgsh

25 September 2008
11:29 AM

To robert.messineo@weil.com

cc Robert P DAVIS/NY/Cgsh@cgsh, Victor I LEWKOW/NY/Cgsh@cgsh, Lindsee GRANFIELD/NY/Cgsh@cgsh,
Lisa M SCHWEITZER/NY/Cgsh@Cgsh, rod.miller@weil.com, david.murgio@weil.com

Subject Fw: Financing Facility Collateral List

Bob - Attached is the Schedule A that Lehman agreed to on the morning of the closing.  This is different
from the paper version that was on the closing table and that had handwritten notes.  Can you send us
the document that you believe is Schedule B.  Before people start doing redactions, I want to make sure
we all are clear on what the documents are.  Thanks, Duane

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com

----- Forwarded by Victor I LEWKOW/NY/Cgsh on 09/23/2008 10:24 AM -----

rod.miller@weil.com

22 September 2008
07:38 AM

To vlewkow@cgsh.com, "David P. Murgio" <david.murgio@weil.com>,
paolo.tonucci@lehman.com, "Mr. James Seery" <jseery@lehman.com>

cc

Subject Fw: Financing Facility Collateral List

WGM-LEHMAN-E 00001417

Schedule A to confirm

----- Original Message -----
From:  [Jasen.Yang@barclayscapital.com]
Sent: 09/22/2008 07:25 AM AST
To: Rod Miller
Subject: FW: Financing Facility Collateral List

> _____
> From:               Yang, Jasen: Markets (NYK)
> Sent:               Monday, September 22, 2008 7:23 AM
> To:                 'road.miller@weil.com'
> Cc:                 King, Stephen: Markets (NYK)
> Subject:            Financing Facility Collateral List
>
> <<Barclays Financing Collateral List (Ident - Amt) 09-22-2008.xls>>
>
> Jasen Yang
> Barclays Capital
> 200 Park Avenue
> New York, New York 10166
> jasen.yang@barclayscapital.com
> Tel: (212) 412 7613
> Fax: (212) 412 5861
>

This e-mail may contain information that is confidential, privileged or
otherwise protected from disclosure. If you are not an intended recipient of
this e-mail, do not duplicate or redistribute it by any means. Please delete
it and any attachments and notify the sender that you have received it in
error. Unless specifically indicated, this e-mail is not an offer to buy or
sell or a solicitation to buy or sell any securities, investment products or
other financial product or service, an official confirmation of any
transaction, or an official statement of Barclays. Any views or opinions
presented are solely those of the author and do not necessarily represent
those of Barclays. This e-mail is subject to terms available at the following
link: www.barcap.com/emaildisclaimer. By messaging with Barclays you consent
to the foregoing.  Barclays Capital is the investment banking division of
Barclays Bank PLC, a company registered in England (number 1026167) with its
registered office at 1 Churchill Place, London, E14 5HP.  This email may
relate to or be sent from other members of the Barclays Group.

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender

immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and

any attachments without retaining a copy. Schedule B to Clarification Letter_#1919526.XLS

WGM-LEHMAN-E 00001419

# This file has been provided in native format

WGM-LEHMAN-E 00001420

|  | Market Value |  |
|---|---|---|
| DTC 074 | 862,639,264 | |
| DTC 636 | 300,929,347.47 | |
| Euroclear 22780 | 32,390,617.24 | |
| CAD | 3,554,083 | |
| Bony Tri Pledge | ############## | Pledged but not confirmed for settlement |
|  | ############# | |

**W/ Adj. LEH Paper**

862,639,264
300,929,347.47
32,390,617.24
3,554,083
777,263,571.04

1,976,776,882.53

# Remainder of Attachment Omitted

# BCI EXHIBIT

# 310



"Tonucci, Paolo"
<paolo.tonucci@lehman.co
m>

09/25/2008 04:47 PM

To   <david.murgio@weil.com>

cc   <rod.miller@weil.com>, <robert.messineo@weil.com>

bcc

Subject   RE: Financing Facility Collateral List [Schedule B]

This is not the right file.  I has not been finalised yet.  The attached is the first part of Sch B - those assets transferred on Friday.  These have been reconciled to Barclays records (from BONY).

The remainder has not yet been transferred, as discussed earlier, as we need to get clearance from the SIPC administrator.

Hope that makes sense.

Paolo

**From:** david.murgio@weil.com [mailto:david.murgio@weil.com]
**Sent:** 25 September 2008 16:31
**To:** Tonucci, Paolo
**Cc:** rod.miller@weil.com; robert.messineo@weil.com
**Subject:** Fw: Financing Facility Collateral List
**Importance:** High

Paolo-

Please see the exchange below.  Apparently, Barclays is questioning whether this document is the correct list for the unencumbered box.

Could you either take a look at the attached to see if you think this is the right list.  Or alternatively, just send me a new list.

David

_____

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

----- Forwarded by David Murgio/NY/WGM/US on 09/25/2008 04:27 PM -----
"Duane MCLAUGHLIN"
<dmclaughlin@cgsh.com>

To  david.murgio@weil.com

cc  lgranfield@cgsh.com, lori.fife@weil.com, lschweitzer@cgsh.com, rdavis@cgsh.com,

WGM-LEHMAN-E 00006304

09/25/2008 03:56 PM

robert.messineo@weil.com, rod.miller@weil.com, vlewkow@cgsh.com

Sub Re: Fw: Financing Facility Collateral List
ject

David - I checked this with Barclays and they do not believe this is the correct document.  This is missing a number of the securities that they were expecting to have in the clearance box (and that were on the prior spread sheet) and that were included on the list that was provided to them.  Can you confirm this with Lehman and alternatively let me know who the Lehman contact is to deal with this?  Thanks, Duane

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com

david.murgio@weil.
com
To vlewkow@cgsh.com
25 September 2008
12:40 PM
cc dmclaughlin@cgsh.com, lgranfield@cgsh.com, lschweitzer@cgsh.com, rdavis@cgsh.com, lori.fife@weil.com, robert.messineo@weil.com, rod.miller@weil.com

Subj Re: Fw: Financing Facility Collateral List
ect

Attached is an electronic version of Schedule B that was on the closing table (with the hand markings) and distributed to Cleary.

Note that this version of Schedule B has marks and a lot more info than the version of Schedule A that Vic forwarded with his e-mail (which only included CUSIPs and Par Values).

Regards.

David

WGM-LEHMAN-E 00006305

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only
for the personal and confidential use of the designated recipient(s) named above. If you are not
the intended recipient of this message you are hereby notified that any review, dissemination,
distribution or copying of this message is strictly prohibited. This communication is for
information purposes only and should not be regarded as an offer to sell or as a solicitation of an
offer to buy any financial product, an official confirmation of any transaction, or as an official
statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or
error-free. Therefore, we do not represent that this information is complete or accurate and it
should not be relied upon as such. All information is subject to change without notice. -------- IRS
Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained
within this communication (including any attachments) is not intended or written to be used and
cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting,
marketing or recommending to another party any transaction or matter addressed herein.

Friday transfers BONY records agreed.xls

WGM-LEHMAN-E 00006306

# Attachment Omitted

# BCI EXHIBIT

# 311



| | |
|---|---|
| David Murgio/NY/WGM/US | **To** Robert Messineo/NY/WGM/US, rod.miller@weil.com |
| 09/25/2008 05:10 PM | **cc** Rocio Clausen/NY/WGM/US@WGM |
| | **bcc** |
| | **Subject** Schedule A and first part of Schedule B |

I just spoke to Paolo.  He just sent me two spreadsheets.  Here's what we have so far...

- Schedule A is the Excel spreadsheet attached below entitled "Thursday Transfers to Barclays BONY agreed."  It is apparently complete.

- The <u>first</u> part of Schedule B is the Excel spreadsheet attached below entitled "Friday transfer BONY records agreed."  They are still finalizing the second part of Schedule B and will send them to us when complete.

Do you guys we should send what we have to Cleary now?  Or should we wait until the second part of Schedule B is complete.

David

---

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail: david.murgio@weil.com



Thursday Transfers to Barclays BONY agreed.xls



Friday transfers BONY records agreed.xls

WGM-LEHMAN-E 00010452

# This file has been provided in native format

WGM-LEHMAN-E 00010453

# Attachments Omitted

# BCI EXHIBIT

# 312



David Murgio/NY/WGM/US              To  rmoore@milbank.com
09/25/2008 10:07 PM                 cc  Lori Fife/NY/WGM/US
                                    bcc
                               Subject  Schedules

Bob-

As requested, please find attached the versions of the two schedules that have the names of the various
securities included.   As we discussed, these are not necessarily the final, reconciled lists of exactly what
went over to Barclays.  We are told, however, that they are very close and -- since they include the names
of the securities -- they may be more helpful to you.

Regards.

David


Schedule A:  BarCap collateral.xls

Schedule B:  Schedule B to Clarification Letter_#1919526.XLS

---

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com



EXHIBIT
460-B
12/7/09  vb

WGM-LEHMAN-E 00015992

# Attachments Omitted

# BCI EXHIBIT

# 313

**From:**    Noel Purcell
**Sent:**    Friday, September 26, 2008 10:42 AM
**To:**    dyu@metlife.com; Edward.Gilbert@shinseibank.com; jmcginley@wilmingtontrust.com; jguiliano@bankofny.com; jbecker@wilmingtontrust.com; gerard.facendola@bnymellon.com; Nitin.Bajpai@shinseiinternational.com; Taylor.Siedell@shinseibank.com; ccromie@metlife.com
**Bcc:**    Noel Purcell; Kevin Holmes; Donna L Demagistris; mspeiser@stroock.com; Martin Fineberg
**Subject:**    Lehman committee only call request



**Redacted**

During the past week, Lehman and its related entities (together with their advisors) have engaged in a fire sale disposition of several assets representing billions of dollars of value to the creditors of the debtor entity. We were told by all parties involved that the sale of the following entities had to be consummated immediately or risk losing some or all of the value of the asset for the creditors:

The Broker-Dealer
Lehman Asia
Lehman Europe
Eagle Energy

During the very hurried meetings we had in person and via conference call late last week regarding the Lehman Broker-Dealer, we were given a variety of reasons (by our own professionals) as to why our strategy should be to essentially abstain from any vote either way on the sale to Barclays. One of the major reasons, among many, was simply a lack of clarity on a number of salient points in the sale agreement. Our position was understood and agreed to by all members of the committee and a unanimous vote was provided in favor of that strategy for that asset. However, I believe we as a group made it clear to our professionals that this was not to become a pattern and that should be made clear to the Debtor and to the extent possible and appropriate, Judge Peck. From all actions beginning at that point and during the last week, it has become clear to me that our wishes are not being served appropriately by

CONFIDENTIAL

anyone in the process at this time.

While I fully respect the nature of the "melting ice cube" scenarios that
continues to be put in front of us, the simple lack of information and input as
to the basic nature of these asset sales is disturbing to say the least. In
addition, a number of our direct requests have been given seemingly low
priority by the Debtor and our own professionals to date. I am concerned that
if this process is not halted immediately, the disposition of the major assets
in the case will be determined with little to no input directly from this
Committee and that is totally unacceptable to Mizuho. A wave of "we have no
information so we pass on voting" answers is wholly unacceptable from our
position. If you share my view on this issue, I am sure you then share my
concerns.



Redacted

CONFIDENTIAL

**Redacted**



CONFIDENTIAL



Respectfully submitted,

Noel Purcell

CONFIDENTIAL

# BCI EXHIBIT

# 314

**From:** Tonucci, Paolo
**Sent:** Fri, 26 Sep 2008 16:00:23 GMT
**To:** Marsal, Bryan
**CC:** Blackwell, Alastair
**Subject:** FW: Schedule B

---

Bryan,

This is the collateral that is planned to be transferred from LBI,
subject to SIPC approval.

This forms part of the collateral in Sch B of the sales agreement with
Barclays.  It is being processed by Ops, so you may already have this
from Alastair.

Let me know if you have any questions.

Paolo

---

From: Tonucci, Paolo
Sent: 26 September 2008 11:52
To: 'david.murgio@weil.com'
Cc: Azerad, Robert
Subject: RE: Schedule B

I have spoken to them.

We are looking to make a transfer today 636 box in the attached file.
This will be Sch B Part 2.

The remainder is still being reconciled and expect to move on Monday.
The delay is because of the transfer of the PIM accounts and the need to
clean this up.

In the attached the sheet tabbed 636 is moving, subject to SIPC
approval, which we are requesting now.

Paolo

---

From: david.murgio@weil.com [mailto:david.murgio@weil.com]
Sent: 26 September 2008 11:25
To: Tonucci, Paolo

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00011738

Subject: Fw: Schedule B


Paolo- See below. Any word on this? Have you spoken to these guys?

Thanks.

David

---

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail: david.murgio@weil.com

----- Forwarded by David Murgio/NY/WGM/US on 09/26/2008 11:24 AM -----

"Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>


09/26/2008 10:29 AM


To
david.murgio@weil.com

cc
lori.fife@weil.com, robert.messineo@weil.com, rod.miller@weil.com,
Shai.Waisman@weil.com

Subject
Re: Schedule B



Can you follow up with Paulo to see if they have been in touch? I am
doing the same on the Barclays side. I was told one of Mike Keegan,
Steven King or Jasen Yang was the contact. Thanks.

---

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917
697 8734
<http://www.clearygottlieb.com/> www.clearygottlieb.com | <mailto:

HIGHLY CONFIDENTIAL                                                                    BCI-EX-(S)-00011739

dmclaughlin@cgsh.com> dmclaughlin@cgsh.com

david.murgio@weil.com

25 September 2008  08:12 PM

To
dmclaughlin@cgsh.com

cc
robert.messineo@weil.com, rod.miller@weil.com, lori.fife@weil.com,
Shai.Waisman@weil.com

Subject
Schedule B

Duane-

I've spoken to Paolo.  He suggests that whoever you are talking to at
Barclays call him tomorrow morning or even better (if they are on site)
come see him in his office.

In short, he believes that he and the right business person at Barclays
will be able to clear everything up relatively easily.

Regards.

David

_____

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not

HIGHLY CONFIDENTIAL

the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00011741

## Placeholder
## Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00011742

| CUSIP | Sec Desc | S&P | MOODY | QUANTITY | LEHMAN MKT VAL |
|---|---|---|---|---|---|
| | | CC | N/R | 19,650,000.00 | 13,830,002.95 |
| | | AAA | NR | 25,000.00 | 7,884.74 |
| | | NR | BAA2 | 4,750,000.00 | 3,697,152.58 |
| | | BB | NR | 25,000.00 | 16,104.19 |
| | | N/R | N/R | 4,450,000.00 | 107,912.50 |
| | | N/R | N/R | 25,000,000.00 | 8,046,904.29 |
| | | N/R | N/R | 11,027,410.00 | 3,588,954.88 |
| | | AAA | A3 | 198,973,015.00 | 1,941,753.56 |
| | | AAA | AAA | 165,000,000.00 | 33,995,782.65 |
| | | AAA | NR | 300,000.00 | 289,624.20 |
| | | AAA | AAA | 75,000.00 | 67,473.33 |
| | | AAA | NR | 7,889,000.00 | 7,581,145.36 |
| | | AAA | NR | 1,025,000.00 | 868,817.85 |
| | | AAA | AAA | 130,000.00 | 127,474.64 |
| | | AAA | N/R | 150,000.00 | 147,425.37 |
| | | AAA | NR | 60,000.00 | 54,104.71 |
| | | AAA | AAA | 120,000.00 | 110,597.45 |
| | | AAA | NR | 2,725,000.00 | 2,283,351.07 |
| | | N/R | N/R | 48,100,000.00 | 13,924,049.08 |
| | | AAA | AAA | 50,000.00 | 48,464.69 |
| | | AAA | AAA | 60,000,000.00 | 52,983,104.16 |
| | | NR | AAA | 25,208,000.00 | 21,125,853.24 |
| | | AAA | NR | 1,000.00 | 106.03 |
| | | AAA | AAA | 5,550,000.00 | 5,284,712.57 |
| | | BBB | BAA2 | 240,000.00 | 41,171.47 |
| | | AAA | AAA | 18,500,000.00 | 8,839,606.08 |
| | | AAA | AAA | 187,500.00 | 184,695.43 |
| | | AAA | NR | 30,000.00 | 27,480.11 |
| | | AAA | NR | 300,000.00 | 256,660.79 |
| | | N/R | AAA | 30,000.00 | 27,767.37 |
| | | AAA | AAA | 10,000,000.00 | 8,093,474.26 |
| | | AAA | AAA | 95,000,000.00 | 61,998,287.87 |
| | | CC | NR | 20,210,000.00 | 16,122,367.48 |
| | | NR | N/R | 5,000,000.00 | 1,971.46 |
| | | AAA | AAA | 4,858,411.00 | 238,722.24 |
| | | AAA | AAA | 189,391.00 | 27,587.16 |
| | | AAA | AAA | 150,000.00 | 145,258.43 |
| | | AAA | AAA | 4,000,000.00 | 3,759,550.07 |
| | | AAA | AAA | 30,000.00 | 27,986.49 |
| | | | | | 269,921,342.80 |

# BCI EXHIBIT

# 315



David Murgio/NY/WGM/US           To  Lori Fife/NY/WGM/US
09/26/2008 01:39 PM              cc

                                bcc

                           Subject  Fw: Schedule B

Lori-

Please be sure to take a look at the e-mail below.

The Cleary people are whining that Harvey is "yelling" at them about the need to disclose the Schedules
-- which is all well and good. However, keep in mind that our client has still been unable to generate the
final final list of securities in the "unencumbered box" (ie, what Schedule B is supposed to represent).   As
of this morning, we have parts 1 and 2 of this list, but apparently part 3 may not come until Monday.

Thanks.

David

_____

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

----- Forwarded by David Murgio/NY/WGM/US on 09/26/2008 01:34 PM -----



David Murgio/NY/WGM/US
09/26/2008 01:34 PM              To  dmclaughlin@cgsh.com

                                cc  dmclaughlin@cgsh.com, rdavis@cgsh.com, "lori fife"
                                    <lori.fife@weil.com>, "robert messineo"
                                    <robert.messineo@weil.com>, "rod miller"
                                    <rod.miller@weil.com>, "Shai Waisman"
                                    <Shai.Waisman@weil.com>
                           Subject  Re: Schedule B

Duane-

First, I understand that Paolo and the Barclays guys did in fact speak, so your team should know and
understand exactly what's going on with this -- probably better than any of the lawyers do.

Now, here's my understanding:

- The attached document entitled "Friday transfers BONY records agreed" is the first part of
  Schedule B (or more specifically, the first part of the list of securities that Barclays is actually
  getting).

- The attached document entitled "DTC 074 and 636 AVAILABLE COLL" is the second part of
  Schedule B (or more specifically, the first part of the list of securities that Barclays is actually

WGM-LEHMAN-E 00015821

getting).

- There will be a third part of Schedule B that is still being reconciled and that Lehman expects to move on Monday.  I'll send that to you as soon as I receive it.

- Schedule A was agreed to be the Barclays list from the Repo trade, which I believe is the attached document entitled "Barclays Financing Collateral List (Barc Ops)."  Our guys are still running their reconciliation to confirm that there are no errors in the Barclays list.  However, in the meantime, please confirm that this is the most recent Barclays list for this trade.

Thanks.

David



Friday transfers BONY records agreed.xls



DTC 074 and 636 AVAILABLE COLL .xls



Barclays Financing Collateral List (Barc Ops) 09-20-2008.xls

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

"Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>



| | |
|---|---|
| **"Duane MCLAUGHLIN"** <dmclaughlin@cgsh.com> 09/26/2008 01:07 PM | To  "Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>, "david murgio" <david.murgio@weil.com> |
| | cc  "lori fife" <lori.fife@weil.com>, "robert messineo" <robert.messineo@weil.com>, "rod miller" <rod.miller@weil.com>, "Shai Waisman" <Shai.Waisman@weil.com>, "Robert DAVIS" <rdavis@cgsh.com> |
| | Subject  Re: Schedule B |

David - Any word on this?  Can you send us the agreed schedule B?  Harvey

WGM-LEHMAN-E 00015822

just called Bob asking about this and stressing the importance of resolving
this now.  Can you also later Harvey know where this process is?  Thanks.

Duane McLaughlin | CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza | New York, New York 10006
T: +1.212.225.2106 | F: +1.212.225.3999, +1.212.693.9716 | M:
+1.917.697.8734
dmclaughlin@cgsh.com


        ----- Original Message -----
        From: Duane MCLAUGHLIN
        Sent: 09/26/2008 10:29 AM EDT
        To: david.murgio@weil.com
        Cc: lori.fife@weil.com; robert.messineo@weil.com; rod.miller@weil.com;
Shai.Waisman@weil.com
        Subject: Re: Schedule B
Can you follow up with Paulo to see if they have been in touch?  I am doing
the same on the Barclays side.  I was told one of Mike Keegan, Steven King
or Jasen Yang was the contact.  Thanks.

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697
8734
www.clearygottlieb.com | dmclaughlin@cgsh.com


              david.murgio@weil
              .com
                                                                         To
              25 September 2008      dmclaughlin@cgsh.com
              08:12 PM                                                   cc
                                     robert.messineo@weil.com,
                                     rod.miller@weil.com,
                                     lori.fife@weil.com,
                                     Shai.Waisman@weil.com
                                                                    Subject
                                     Schedule B




Duane-

I've spoken to Paolo.  He suggests that whoever you are talking to at
Barclays call him tomorrow morning or even better (if they are on site)

come see him in his office.

In short, he believes that he and the right business person at Barclays
will be able to clear everything up relatively easily.

Regards.

David


_____
David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com



This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

WGM-LEHMAN-E 00015824

# Attachments Omitted

# BCI EXHIBIT

# 316

| | |
|---|---|
| **From:** | Bell, Crayton L. [CBell@milbank.com] |
| **Sent:** | Friday, September 26, 2008 1:42 PM |
| **To:** | Burian, Saul; Fazio, Michael; Aalto, Tanja |
| **Subject:** | STRICTLY CONFIDENTIAL -- Clarification Letter Schedule |
| **Attachments:** | Schedule B to Clarification Letter_#1919526.XLS |



1

# BCI EXHIBIT

# 317

**To:**        Kiplok, Christopher[Kiplok@HughesHubbard.COM]
**From:**      Vecchio, Laura M
**Sent:**      Fri 9/26/2008 1:48:00 PM
**Importance:** Low
**Sensitivity:** None
**Subject:**   FW: 636 collateral
**Categories:** um:content-classes:message

Chris: Here are the instructions for the Barclays collateral.

We just confirmed with Barclays the following

We need to deliver the 269mm DTC 636 collat to Barclays corporate DTC
box 7256. They have asked us to deliver on DTC Code 30 for free.
Please ref 09.26.08 dtc 636 on the deliveries. Any questions please
call.

Thanks
Jim

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated recipient(s) named
above. If you are not the intended recipient of this message you are hereby notified that any review,
dissemination, distribution or copying of this message is strictly prohibited. This communication is for
information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to
buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman
Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not
represent that this information is complete or accurate and it should not be relied upon as such. All
information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication (including
any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding
U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction
or matter addressed herein.



# BCI EXHIBIT

# 318

**To:**    Kiplok, Christopher[Kiplok@HughesHubbard.COM]
**From:**    de la Vega, Danielle
**Sent:**    Fri 9/26/2008 2:21:56 PM
**Importance:**    Low
**Sensitivity:**    None
**Categories:**    urn:content-classes:message

<u>Document.pdf</u>

Please open the attached document. This document was digitally sent to
you using an HP Digital Sending device.

To view this document you need to use the Adobe Acrobat Reader. For more
information on the HP MFP Digital Sending Software or a free copy of the
Acrobat reader please visit:

    http://www.hp.com/go/HP_Digital_Sender_Module.com
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated recipient(s) named
above.  If you are not the intended recipient of this message you are hereby notified that any review,
dissemination, distribution or copying of this message is strictly prohibited.  This communication is for
information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to
buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman
Brothers.  Email transmission cannot be guaranteed to be secure or error-free.  Therefore, we do not
represent that this information is complete or accurate and it should not be relied upon as such.  All
information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication (including
any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding
U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction
or matter addressed herein.



Confidential

HHR_00009050

James W. Giddens, as Trustee for the SIPA liquidation of Lehman Brothers, Inc.,
authorizes the transfer of collateral referenced in the enclosed spreadsheet in accordance
with the wire instructions below on an expedited, priority basis as part of the transfer of
customer accounts to Barclays.

Wire Instructions:
Please wire from DTC 636 to Barclays corporate DTC box 7256. Please deliver on DTC
Code 30 for free. Please reference 09.26.08 dtc 636 on the deliveries.


Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6810
FAX (212) 422-4726

Counsel to the Trustee

Confidential

HHR_00009051

# BCI EXHIBIT

# 319



David Murgio/NY/WGM/US          To   Shai Waisman/NY/WGM/US@WGM
09/26/2008 08:23 PM              cc

                                bcc

                           Subject   Fw: Schedules Process Update

This is the e-mail from Paolo...

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail: david.murgio@weil.com

—— Forwarded by David Murgio/NY/WGM/US on 09/26/2008 08:22 PM ——



"Tonucci, Paolo"              To   "Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>,
<paolo.tonucci@lehman.co           <Jasen.Yang@barclayscapital.com>
m>                            cc   <Marcus.Morton@barclayscapital.com>,
09/26/2008 05:30 PM                <rdavis@cgsh.com>,
                                   <Richard.Smith3@barclayscapital.com>,
                                   <david.murgio@weil.com>, <lori.fife@weil.com>, "Lisa M
                                   SCHWEITZER" <lschweitzer@cgsh.com>, "Victor I
                                   LEWKOW" <vlewkow@cgsh.com>, "Lindsee GRANFIELD"
                                   <lgranfield@cgsh.com>
                         Subject   RE: Schedules Process Update

These are the latest, and I believe now clean schedules with no duplication.

These represent Sch A and Sch B Part 1.

Paolo

**From:** Duane MCLAUGHLIN [mailto:dmclaughlin@cgsh.com]
**Sent:** 26 September 2008 16:27
**To:** Jasen.Yang@barclayscapital.com
**Cc:** Marcus.Morton@barclayscapital.com; Tonucci, Paolo; rdavis@cgsh.com;
Richard.Smith3@barclayscapital.com; david.murgio@weil.com; lori.fife@weil.com; Lisa M SCHWEITZER;
Victor I LEWKOW; Lindsee GRANFIELD
**Subject:** Schedules Process Update

I wanted to send an email to the group to confirm where we are on this. I am copying David Murgio and
others from Weil as well. This is what the lawyers need by Sunday afternoon agreed by Barclays and
Lehman so Weil can prepare it for filing. It should be sent to me and to David Murgio from weil

(david.murgio@weil.com).

- Schedule A.  A list of the securities transferred under the Barclays Repo Agreement.  This file should just have the CUSIP, description and the par value.

- Schedule B.  A list of the securities in the "box" that have been or are being transferred to Barclays.  Again this file should have just the CUSIP, description and the par value.

We should not have overlap between Schedule A and Schedule B, as this will make it look like Barclays got more than it did.  If there is some fungibility as a technical matter between the two lists at any given point in time, then the most important thing is that it only be on one list and not the other.

Let us know if any further clarification is required.  If we would be helpful, we could have a quick all hands call to confirm.

Thanks,

Duane

---

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com | dmclaughlin@cgsh.com


Jasen.Yang@barclayscapital.
com

26 September 2008  04:00 PM

To dmclaughlin@cgsh.com
cc Richard.Smith3@barclayscapital.com, rdavis@cgsh.com, Marcus.Morton@barclayscapital.com, paolo.tonucci@lehman.com
Subject RE: FW: Urgent - Schedules


All,

I don't see a simple way to strip out the trades Lehman thinks occurred on Friday from the larger Schedule A file quickly (Paolo, have you had any luck?), plus we have no Barclays ops verification of which trades were Thursday vs. Friday.

I do think that our Schedule A of assets settled by EOD Friday, plus the Available Collateral file, would total the population of available collateral. (Paolo, do you agree?)

WGM-LEHMAN-E 00010486

Is there a way to define the disclosure in those terms?

Jasen
212 412 7613

---

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Barclays. Any views or opinions presented are solely those of the author and do not necessarily represent those of Barclays. This e-mail is subject to terms available at the following link: www.barcap.com/emaildisclaimer. By messaging with Barclays you consent to the foregoing. Barclays Capital is the investment banking division of Barclays Bank PLC, a company registered in England (number 1026167) with its registered office at 1 Churchill Place, London, E14 5HP. This email may relate to or be sent from other members of the Barclays Group.


This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Friday transfers BONY records agreed.xls    CORRECTED Thursday Transfers to Barclays BONY agreed.xls

# Attachments Omitted