# BCI EXHIBIT

# 320

Glenn West/DA/WGM/US          To  jmccarthy@alvarezandmarsal.com,
09/27/2008 12:53 PM               dehrmann@alvarezandmarsal.com
                              cc  David Murgio/NY/WGM/US@WGM, Robert
                                  Messineo/NY/WGM/US@WGM, Michael
                                  Lubowitz/NY/WGM/US@WGM, Gil
                                  Friedlander/DA/WGM/US@WGM, Arman
                                  Kuyumjian/NY/WGM/US@WGM, Shai
                                  Waisman/NY/WGM/US@WGM
                             bcc
                         Subject  Here is all we have at the moment that makes an effort to
                                  describe what Barclays got and didn't get

Can't find the email address of the other person you wanted me to send this to, so can you forward?



DOC2515.PDF



Lehman_Barclays Transaction Summary_#1919524.DOC

---

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

## LEHMAN BROTHERS / BARCLAYS TRANSACTION
## DIVISION OF ASSETS & LIABILITIES

### Definition of Business Sold

"Business" being sold includes the U.S. and Canadian investment banking and capital markets businesses of Seller, including:

- fixed income and equities cash trading business.

- brokerage, dealing, trading and advisory businesses.

- investment banking operations.

- LBI's business as a futures commission merchant.

- LBI's commodities business.

- government securities trading operations.

- mortgage-backed securities trading operations of LBI (but not any securities of such nature held by Seller except as otherwise specified).

- PIM Business. (See Purchased Asset discussion and discussion of Excluded Assets relating to PIM Business below.)

### Purchased Assets.

At the Closing, Barclays acquired all "Purchased Assets."

"Purchased Assets" means "(i) all of the assets of Seller used primarily in the Business or necessary for the operation of the Business (in each case, excluding the Excluded Assets) and (ii) none of the assets of Subsidiaries of LBHI (other than assets of LBI), except as otherwise specifically provided.")

### Securities and Trading Operations

- the securities set forth on Schedule A to the Clarification Letter (i.e., the securities subject to the Barclays Repurchase Agreement).

- the securities and other assets held in LBI's "clearance boxes" as of the time of the Closing; provided, however, that Purchaser in its discretion may elect within 60 days after the Closing to return any such securities or assets to LBI. (Note that Schedule B to the Clarification Letter sets forth the securities and other assets held in LBI's "clearance boxes" as of September 21, 2008.)

NY2:\1919524\03\15544031.DOC\73683.1037

WGM-LEHMAN-E 00005854

- all exchange-traded derivatives (and any property that may be held to security obligations under such derivative).

- all prime brokerage business and accounts and repurchase agreement operations and securities lending operations of the Business (for the avoidance of doubt, other than those that are part of the IMD Business).

- rights to "Lehman" indices and analytics that support the indices and all other indices and analytics used in the Business.

- general trading tools supporting the Business.

Intellectual Property

- the Purchased Intellectual Property (i.e., the Purchased Marks and all other Intellectual Property Rights, Software and Technology throughout the world that are used in, related to, or otherwise necessary for the Business, including all Intellectual Property Rights embodied in or arising from the Purchased Assets).

- the Purchased Marks (i.e., the Mark "LEHMAN" and "LEHMAN BROTHERS" throughout the world, all other Marks throughout the world containing or incorporating the name "LEHMAN," the Internet domain name www.lehman.com, all other Internet domain names containing or incorporating any Purchased Marks, and any other Mark throughout the world that is used in, related to, or otherwise necessary for the Business; in each case, together with all of the goodwill associated therewith and all registrations and applications for the foregoing and all common law rights thereto). (See also Intellectual Property & License under Excluded Assets below.)

- all income, royalties, damages and payments due or payable at the Closing or thereafter relating to the Purchased Intellectual Property (including damages and payments for past or future infringements or misappropriations thereof), the right to sue and recover damages for past or future infringements or misappropriations thereof and the right to fully and entirely stand in the place of Seller in all matters related thereto.

Contracts and Contractual Rights

- all deposits (including customer deposits, security deposits for rent, electricity, telephone or otherwise and required capital deposits) and prepaid charges and expenses of Seller and its Subsidiaries associated with the Business (other than any deposits or prepaid charges and expenses paid in connection with or relating to any Excluded Assets).

WGM-LEHMAN-E 00005855

- the Purchased Contracts (i.e., any Contract related to the assets purchased from Seller by Purchaser that Purchaser designates as a Related Contract within 60 days following the Closing).

- all rights of Seller under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees, contractors and agents of Seller or its Subsidiaries or with third parties to the extent relating to the Business or the Purchased Assets (or any portion thereof).

Subsidiaries

- Lehman Brothers Canada, Inc.

- Lehman Brothers Sudamerica SA

- Lehman Brothers Uruguay SA

- [Townsend Analytics]

Regulatory

- all Permits used by Seller in the Business to the extent assignable under applicable Law;

- any rights or interests Seller may have with respect to any escrow or other account established in connection with the Global Research Analyst Settlement entered by the U.S. District Court on October 31, 2003 (the "Research Settlement"), or funds otherwise set aside for the procurement of independent research pursuant to the Research Settlement, but only to the extent that Purchaser is required to make payments in accordance with the Research Settlement as a result of its acquisition of LBI's investment banking and research operations.

- Mercantile Exchange license agreements with respect to 335 South LaSalle Street, Chicago, IL and 400 South LaSalle Street, Chicago, IL.

PIM Business

- the PIM Business (i.e., the private investment management business (other than the CTS (Corporate Cash) business)).

- assets of the Seller used exclusively in the PIM Business.

Customer Accounts

WGM-LEHMAN-E 00005856

- Purchaser shall receive (i) for the account of the customer, any and all property of any customer, including any held by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business and (ii) to the extent permitted by applicable law, and as soon as practicable after the Closing, $769 million of securities, as held by or on behalf of LBI on the date hereof pursuant to Rule 15c3-3 of the Securities Exchange Act of 1934, as amended, or securities of substantially the same nature and value.   (Note that customer accounts (other than accounts of customers that are Affiliate of LBI) were transferred to Purchaser, subject to client direction and any regulatory requirements.)

Real Estate

- the Transferred Real Property Leases (listed on Schedule 1.1(b) attached hereto), together with all improvements, fixtures and other appurtenances thereto and rights in respect thereof.

- the Furniture and Equipment (i.e., all furniture, fixtures, furnishings, equipment, vehicles, leasehold improvements, and other tangible personal property owned or used by Seller and its Subsidiaries in the conduct of the Business, including all desks, chairs, tables, Hardware, copiers, telephone lines and numbers, telecopy machines and other telecommunication equipment, cubicles and miscellaneous office furnishings and supplies).

- all supplies owned by Seller and used in connection with the Business.

- any insurance proceeds from the occurrence after the date hereof and prior to Closing, of any casualty or event loss with respect to any Transferred Real Property Leases or any properties subject thereto.

- Any of the leases listed on Schedule 1(c) attached hereto (the "PIM Leases"), to the extent Purchaser determines, within ten (10) days following the Closing, to assume such PIM Lease.

Miscellaneous Assets

- all Documents that are used in, held for use in or intended to be used in, or that arise in connection with, or are necessary to carry on or are related to the operation of the Business, including Documents relating to products, services, marketing, advertising, promotional materials, Purchased Intellectual Property, personnel files for Transferred Employees and all files, customer files and documents (including credit information), account agreements, books and records required to be maintained in connection with the Business under applicable Law, compliance manuals, supervisory policies and procedures, customer lists, supplier lists, records, literature and correspondence, whether or not physically located on any of the premises referred to in clause (d)

WGM-LEHMAN-E 00005857

above, but excluding (i) personnel files for Excluded Employees of Seller or its Subsidiaries who are not Transferred Employees, (ii) such files as may be required under applicable Law regarding privacy, (iii) Documents which Seller is not permitted to transfer pursuant to any contractual confidentiality obligation owed to any third party, and (iv) any Documents primarily related to any Excluded Assets.

- all past and present goodwill and other intangible assets associated with or symbolized by the Business, including customer and supplier lists and the goodwill associated with the Purchased Intellectual Property.

**Excluded Assets**

From and after the Closing, LHBI and its Subsidiaries shall retain all right, title and interest in the "Excluded Assets."

"Excluded Assets" means all assets of LBHI and Subsidiaries, other than Purchased Assets. Excluded Assets include, but are not limited to, the following:

Cash, Receivables & Contracts

- any cash, cash equivalents, bank deposits or similar cash items of Seller and its Subsidiaries; provided that Excluded Assets shall not include any and all property of any customer, or maintained by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business.

- all receivables, except to the extent resulting from a Purchased Contract.

- all intercompany receivables.

- the Excluded Contracts (i.e., all Contracts other than Purchased Contracts), including any accounts receivable to the extent arising out of any Excluded Contract.

- all ISDA Master Agreements and master swap agreements and any schedules, supplements or amendments thereto.

Subsidiaries & Businesses

- all shares of capital stock, limited liability company membership, general and limited partnership, and other equity interests, of Seller and all of its Subsidiaries, other than the equity interests in those Subsidiaries specifically listed above as a Purchased Asset.

WGM-LEHMAN-E 00005858

- the IMD Business (<u>i.e.</u>, the asset management and the alternatives – private equity businesses of Seller and the Subsidiaries, but not the PIM Business).

- all assets primarily related to the IMD Business.

- Lehman Commercial Paper, Inc. and any assets thereof.

- the equity interests and assets of Lehman Brothers Commodity Services, Inc., including the equity of, as well as the assets of the energy marketing and services business of Eagle Energy Management LLC.

- assets related to the soliciting, placing, clearing and executing of buy and sell orders for derivatives contracts by Lehman Brothers Derivative Products Inc. and all activities related or ancillary thereto.

- the CTS (Corporate Cash) Business.

- the mortgage servicing rights for Ginnie Mae guaranteed securities.

- Excluded Assets include all assets owned (in whole or in part) by any Subsidiary of LBHI (other any Subsidiary expressly sold pursuant to the Agreement) organized under the laws of a jurisdiction other than the United States of America or a state thereof; <u>provided</u>, <u>however</u>, that to the extent any such asset is jointly owned by any such Subsidiary and Seller and used primarily in or necessary for the operation of the Business, Seller and Purchaser shall each use its commercially reasonable efforts to cause such Subsidiary to enter into arrangements reasonably acceptable to Purchaser to permit Purchaser to acquire the interest of such Subsidiary in such asset or to have the use thereof (provided that neither Seller nor Purchaser shall be required to make any payment in order to establish such arrangement).

<u>Securities & Investments of Seller</u>

- commercial real estate investments (including commercial loans, equity investments in such commercial real estate and other commercial real estate assets and all Archstone debt and equity positions).

- private equity investments.

- hedge fund investments.

- collateralized debt obligations.

- collateralized loan obligations.

WGM-LEHMAN-E 00005859

- over-the-counter derivatives (but not exchange rate derivatives, which are Purchased Assts).

- TBA mortgage notes.

- similar asset-backed securities.

- corporate loans (other than those subject to the Barclays Repurchase Agreement).

- any securities pledged as collateral under Seller clearing arrangements with JP Morgan Chase & Co. or its Affiliates (until, with respect to any security that is expressly listed as a Purchased Asset, such pledge is released).

<u>Exclusions Relating to PIM Business</u>

- any pre-closing legal, tax or compliance Liabilities associated with IRA accounts for the benefit of clients of the PIM Business.

- the forgivable notes issued by PIM employees to Seller or its Affiliates.

<u>Rights & Claims</u>

- any rights, claims or causes of action of Seller or any of its Subsidiaries against any person, including Affiliates of Seller, relating to assets, properties, business or operations of Seller or any of its Subsidiaries (other than those primarily related to Purchased Assets) arising out of events occurring on or prior to the Closing Date.

- any claim, right or interest of LBHI or any of its Subsidiaries in or to any refund, rebate, abatement or other recovery for Taxes, together with any interest due thereon or penalty rebate arising therefrom, for any Tax period (or portion thereof) ending on or before the Closing Date.

- all insurance policies or rights to proceeds thereof relating to the assets, properties, business or operations of Seller or any of its Subsidiaries and life insurance policies owned by Seller and its Subsidiaries.

<u>Real Property</u>

- all real property leases of Seller and its Subsidiaries, and all rights and obligations appurtenant thereto, as set forth on Schedule 1.1(a) hereto, other than the Transferred Real Property Leases.

<u>Intellectual Property & Licensed Marks</u>

WGM-LEHMAN-E 00005860

- any Intellectual Property Rights that do not constitute Purchased Intellectual Property.

- from and after the Closing, Seller receives a worldwide, nonexclusive, fully paid, royalty-free license under the trademarks "LEHMAN" and "LEHMAN BORTHERS," including any logos (the "Licensed Marks") including such names for any of its existing uses or in connection with the IMD Business and the unwinding of any of its other operations including use in corporate or other entity names. The license to use the Licensed Marks with respect to the investment banking and capital markets businesses of Seller and its Subsidiaries is limited to a term of 2 years from the Closing Date. The license to use the Licensed Marks in connection with the IMD Business is perpetual.

- from and after the Closing, Seller receives a perpetual, irrevocable, worldwide, nonexclusive, fully-paid, royalty-free license under all non-Mark Purchased Intellectual Property used in or covering any business of the Seller and/or its Affiliates (other than the Business) in the fields of investment management, investment research, portfolio management and other fields of the IMD Business, as well as the unwinding of any of Seller's other operations.

Miscellaneous

- any (i) confidential personnel and medical records pertaining to any Excluded Employee; (ii) other books and records that LBI is required by Law to retain, including, but not limited to, books and records required to be retained by Rules 17a-3 and 17a-4 of the Exchange Act with respect to the Purchased Assets or that LBHI reasonably determines are necessary to retain including, without limitation, Tax Returns, financial statements, and corporate or other entity filings; provided, however, that Purchaser shall have the right to make copies of any portions of such retained books and records that relate to the Business or any of the Purchased Assets; and (iv) minute books, stock ledgers and stock certificates of Subsidiaries.

- all artwork owned by Seller and its Subsidiaries.

- All assets and rights of the Lehman companies that would otherwise be Purchased Assets (other than Seller, 745 and any Subsidiaries sold pursuant to the Agreement), as a result of being subject to governmental conservatorship or administration, shall be considered "Excluded Assets," except as notified by the administrator to LBI from time to time or until such assets and rights can be so sold.

- any assets set aside, segregated, or otherwise specifically identified as being held for the purpose of satisfying Excluded Liabilities.

WGM-LEHMAN-E 00005861

**Assumed Liabilities:**

At the Closing, Barclays Capital Inc. assumed all "Assumed Liabilities." "Assumed Liabilities" means the following Liabilities:

- all Liabilities of Seller incurred by Purchaser and arising after the Closing in connection with the Business.

- all Liabilities of Seller under the Purchased Contracts arising after, with respect to each entity comprising Seller, the date on which such entity commenced a voluntary case or cases under Chapter 11 or Chapter 7, as the case may be, of the Bankruptcy Code.

- all Liabilities assumed under the Agreement in respect of certain employee benefits.

- all accounts payable incurred in the Ordinary Course of Business of Seller after, with respect to each entity comprising Seller, the date on which such entity commenced a voluntary case or cases under Chapter 11 or Chapter 7, as the case may be, of the Bankruptcy Code, associated with the Business (other than accounts payable arising out of or in connection with any Excluded Contract), including, for the avoidance of doubt, to the extent arising after such date (i) invoiced accounts payable and (ii) accrued but uninvoiced accounts payable).

- all Transfer Taxes applicable to the transfer of the Purchased Assets pursuant to this Agreement.

- all other Liabilities to the extent related to the Business, the Purchased Assets or the Transferred Employees arising after the Closing.

- all Liabilities under Transferred Real Property Leases from and after the Closing.

- all Liabilities relating to amounts required to be paid by Purchaser under the Agreement.

**Excluded Liabilities**

Notwithstanding anything to the contrary, Barclays Capital Inc. shall not assume any "Excluded Liabilities." "Excluded Liabilities" means the following Liabilities:

- all Liabilities of Seller and its Subsidiaries to the extent they do not arise out of the Business.

WGM-LEHMAN-E 00005862

- any intercompany receivables or payables or other obligations between or among any Seller and any of LBHI or any Subsidiary of LBHI.

- payables or deposits of a Seller or Subsidiary (except to the extent resulting from a Purchased Contract and except with respect to transferred customer accounts.

- all Liabilities arising out of Excluded Assets, including Contracts that are not Purchased Contracts.

- except as expressly provided in the Agreement, all Liabilities for Taxes of Seller for any Tax periods (or portions thereof) ending on or before the Closing Date.

- except as otherwise provided in this Agreement, Liabilities incurred in the Ordinary Course of Business existing prior to the filing of the Bankruptcy Case that are subject to compromise under the Bankruptcy Case (other than and other than any "cure amounts" that Purchaser is required to pay pursuant to Section 2.5 of the Agreement);

- except as expressly assumed pursuant to Article IX of the Agreement, any Liabilities relating to the employment, potential employment or termination of employment of any Person relating to or arising out of any period prior to the Closing, including without limitation any Liability under or relating to any employee benefit plan, program, agreement or arrangement, including in respect of equity compensation plans and tax-qualified or not tax-qualified pension or saving plans as to which the parties agree there shall be no transfer to or assumption of Liabilities by the Purchaser.

- all Liabilities relating to amounts required to be paid by Seller, hereunder, including upon any breach.

- all Liabilities under real property leases, other than Liabilities under Transferred Real Property Leases from the date of Closing forward.

- any Liabilities of Seller or its Subsidiaries under the $15.8 billion tri-party repurchase facility dated on or about September 18, 2008 funded by JP Morgan Chase;

- Liabilities arising under Seller's arrangements with Depository Trust Clearance Corporation and its affiliated clearing organizations.

- the outstanding subordinated notes of LBI and any Liabilities associated with such subordinated notes.

WGM-LEHMAN-E 00005863

Schedule 1(a)

| New York | Branches |
|---|---|
| 1301 Avenue of the Americas - 7th Floor | Atlanta - 3414 Peachtree Road |
| 1271 Avenue of the Americas | Calgary - 150 Sixth Avenue, Suite 3370 - PetroCanada |
| 399 Park Avenue | Columbia - Little Patuxent Parkway (NB) |
| 605 Third Avenue | Dallas - 200 Crescent Court |
| 85 Tenth Avenue | Dallas - 325 N. St. Paul Street (former Crossroads) |
| | Greenwich - 8 Sound Shore Drive |
| New Jersey | Houston - 600 Travis Street |
| Jersey City - 101 Hudson St. | Los Angeles - 10880 Wilshire Blvd. |
| Livingston - 2 Peachtree Hill Road (Co-location) | Menlo Park - 3000 Sand Hill Road |
| Florham Park - 230 Park Avenue | Miami - 1111 Brickell Avenue - Barclay's Financial Center |
| Hoboken - 111 River Street (Sublease) | Newport Beach - 680 Newport Center Dr, Suite150 |
| | Palm Beach - 450 Royal Palm Way (License agreement for 1,704 on 6th floor) |
| | Philadelphia - 1735 Market Street - Mellon Bank Center |
| | San Francisco - 555 California Street |
| | Tampa - 401 East Jackson Street, 24th flr (NB) |
| | Wilmington - 1000 West Street - Brandywine Building (LBB) |
| | |
| | South America Branches |
| | Buenos Aires - Av. Leandro N. Alem 855 - Torre Alem Plaza |
| | Mexico City - Av. Paseo de la Reforma 265 Col. Cuauhtemoc |
| | Montevideo - Ricon 477 |

WGM-LEHMAN-E 00005864

## Schedule 1(b)

WGM-LEHMAN-E 00005865

| City | St | Location | Lead Legal Entity | Tenant's Legal Entity | Lease Expiration | Square Footage Total | Square Footage Acquisition | Square Footage LD | Seats Total | Seats Acquisition | Seats LD | Occupancy Total | Occupancy Acquisition | Occupancy LD | CRE Assets Total | CRE Assets Acquisition | CRE Assets LD | IT Assets Total | IT Assets Acquisition | IT Assets LD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Boston | MA | 125 High Street | Lehman Brothers Holdings Inc. | Lehman Brothers Holdings Inc. | 05/30/16 | 45,429 | 42,998 | 22,431 | 231 | 231 | 116 | 2,742,237 | 1,462,521 | 1,280,716 | 2,676,793 | 2,083,193 | 2,473,600 | 397,138 | 198,276 | 199,862 |
| Chicago | IL | 190 South LaSalle Street | Lehman Brothers Holdings Inc. | SPV 190 S. LaSalle, L.P. | 12/31/10 | 125,292 | 66,059 | 66,059 | 621 | 255 | 255 | 6,235,150 | 3,245,487 | 2,572,071 | 5,756,611 | 4,660,117 | 4,585,650 | 1,238,070 | 565,377 | 590,291 |
| Columbia | OH | 4980 Corporate Exchange Drive | Lehman Brothers Bank FSB | Entities No. 147 Corporation | 12/31/08 | 1,432 | 1,432 | | 7 | 7 | | 28,800 | 28,800 | | 4,561 | 4,561 | | 533 | 533 | |
| Crawford | NJ | 37 Commerce Drive | Owens | Owens | Owned | 100,000 | 100,000 | | 49 | 49 | | 17,860,516 | 17,860,516 | | 81,326,187 | 81,326,187 | | 71,639,888 | 71,639,888 | |
| Elko Roy | TX | 270 Avenue Munoz Rivera Divco | Lehman Brothers Inc. | MCGS Unit V J.D. S.E. o/a MCGS Unit R.I.P | 06/30/12 | 3,234 | 3,234 | | 7 | 7 | | 92,707 | 92,707 | | 18,738 | 18,738 | | 2,835 | 2,835 | |
| Houston | TX | 4780 W. Sam Houston (Hotel) | Lehman Brothers Holdings Inc. | Guggenheim Corporate, L.P. | 01/31/18 | 39,371 | 39,371 | | 321 | 321 | 322 | 1,992,411 | 1,992,411 | | 4,012,543 | 4,012,543 | | 827,633 | 827,633 | |
| Jersey City | NJ | 70 Hudson Street | Lehman Brothers Holdings Inc. | 70 Hudson Street, LLC | 01/31/16 | 499,271 | 499,271 | | 2,203 | 2,203 | 2,203 | 16,331,217 | 16,331,217 | | 11,217,241 | 11,217,241 | | 6,144,418 | 6,144,418 | |
| Los Angeles | CA | 10250 Constellation Boulevard | Lehman Brothers Holdings Inc. | Constellation Place, LLC | 04/30/17 | 42,240 | 31,666 | 11,274 | 191 | 79 | 79 | 2,850,203 | 1,413,303 | 1,437,140 | 7,181,240 | 2,131,857 | 1,247,263 | 381,176 | 191,253 | 189,248 |
| Menlo Park | CA | 333 Ludford Drive | Lehman Brothers Inc. | Mid-Euclid Park Associates | 04/30/10 | 23,479 | 23,479 | | 154 | 154 | | 3,303,943 | 3,303,948 | | 1,330,591 | 1,330,591 | | 67,863 | 67,863 | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc. | 1301 Properties Owner LP | 12/31/00 | 305,666 | 305,666 | | | | | | | | | | | | | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc. | Phone Consulting Group, Inc. | 12/31/09 | 29,312 | 29,312 | | | | | | | | | | | | | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc. | Granada Bank Securities, Inc. | 12/31/09 | 132,208 | 132,208 | | 2,848 | 2,848 | 6,631 | 41,699,976 | 41,699,976 | | 43,620,303 | 43,620,303 | | 9,181,099 | 9,181,099 | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc. | WFOH, LLC | 04/30/10 | 41,108 | 41,108 | | | | | | | | | | | | | |
| New York | NY | 745 Seventh Avenue | LB 745 LLC | Bold Forty Ninth LLC (ground rod purposes) | Owned | 1,849,811 | 1,849,811 | | 6,631 | 6,631 | | 81,184,460 | 81,184,460 | | 238,071,661 | 238,071,661 | | 40,307,831 | 40,307,831 | |
| New York | NY | 45 Broadway | Lehman Brothers Inc. | Telecom, Inc. | 01/30/12 | 3,279 | 3,279 | | 21 | 21 | 21 | 110,807 | 110,807 | | 121,767 | 121,767 | | 25,010 | 25,010 | |
| Piscataway | NJ | 45 Corporate Place South | Lehman Brothers Holdings Inc. | Corporate Park Associates | 10/09/23 | 466,111 | 466,111 | | 150 | 150 | 156 | 23,737,662 | 23,737,662 | | 206,562,539 | 206,562,539 | | 43,546,088 | 43,546,088 | |
| Salt Lake City | UT | 6501 South 700 East | Lehman Brothers Holdings Inc. | Old Properties, Inc. | 11/28/11 | 4,706 | 4,706 | | 36 | 36 | | 137,127 | 137,127 | | 149,133 | 149,133 | | 126,280 | 126,280 | |
| San Diego | CA | 1450 Frazee Road | Lehman Brothers Holdings Inc. | San Diego - Frazee, LLC | 01/11/04 | 2,266 | 2,266 | | 7 | 7 | | 90,251 | 90,251 | | 59,313 | 59,313 | | 63,751 | 63,751 | |
| San Pedro | BRA | 701 Fifth Avenue | Lehman Brothers do Brasil LTDA | ADirectcom (De Investimentos Imobiliarios) LTDA | 01/31/15 | 3,441 | 3,441 | | 64 | 64 | | 1,711,708 | 1,711,708 | | 1,662,987 | 1,662,987 | | 1,833,261 | 1,833,261 | |
| Seattle | WA | 701 Fifth Avenue | Lehman Brothers Inc. | Lehman Brothers Inc. | 05/31/09 | 3,591 | 3,591 | | 9 | 9 | | 113,720 | 113,720 | | 26,003 | 26,003 | | 1,363 | 1,363 | |
| Toronto | CAN | 181 Bay Street | Lehman Brothers Canada, Inc. | Brookfield Properties LTD. | 11/30/11 | 3,273 | 3,273 | | 13 | 13 | 13 | 870,181 | 870,181 | | 439,096 | 439,096 | | 910 | 910 | |
| Washington | DC | 1001 K Street | Lehman Brothers Holdings Inc. | Gilbco Owners LP | 12/30/10 | 10,478 | 10,478 | | 36 | 36 | 36 | 723,646 | 723,646 | | 32,942 | 32,942 | | 18,393 | 18,393 | |
| New York | NY | 745 Seventh Avenue | Townsend Analytics, L.T.D. | Townsend Analytics and Aspatore Above. of America | | 7,471 | 7,471 | | 40 | 40 | | 250,000 | 250,000 | | | | | | | |
| **Total** | | | | | | 2,940,795 | 2,873,159 | 109,533 | 13,248 | 12,769 | 501 | 223,774,892 | 211,674,118 | 6,100,377 | 995,691,483 | 9,756,483 | | 176,185,036 | 174,849,553 | 1,349,544 |

Schedule 1(c)

PIM LEASES

| | City | State | Address | Tenant | Landlord |
|---|---|---|---|---|---|
| 1. | Atlanta | GA | 3414 Peachtree Road, NE | Lehman Brothers Inc. | Monarch Centre Associates, LLC |
| 2. | Dallas | TX | 200 Crescent Court | Lehman Brothers Inc. | Crescent TC Investors LP |
| 3. | Greenwich | CT | 8 Sound Shore Drive | Lehman Brothers Holdings Inc. | 8 Sound Shore Associates, LLC |
| 4. | Miami | FL | 1111 Brickell Avenue | Lehman Brothers Inc. | 1111 Brickell Office, LLC |
| 5. | Newport Beach | CA | 680 Newport Center Drive | Lehman Brothers Holdings Inc. | The Irving Company |
| 6. | Palm Beach | FL | 450 Royal Palm Way | Lehman Brothers Inc. | Palm Beach Centre 1, LLC |
| 7. | Philadelphia | PA | 1735 Market Street | Lehman Brothers Inc. | Nine Penn Center Associates, LP |
| 8. | New York | NY | 399 Park Avenue | Lehman Brothers Inc. | Boston Properties LP |

NY2:\1919524\03\15544031.DOC\73683.1037

WGM-LEHMAN-E 00005866

## General Information Regarding the Lehman Transaction:

- Effective on September 22, 2008 (the "Closing"), Barclays Capital Inc. ("Barclays") purchased certain assets owned by Lehman Brothers Inc., Lehman Brothers Holdings Inc. and one of their affiliates (the "Lehman Entities"). Barclays did not buy or merge with Lehman Brothers Inc.

- With the exception of certain assets that were expressly excluded from the sale, the assets purchased by Barclays comprised all of the assets of the Lehman Entities that were used in the U.S. and Canadian investment banking and capital markets businesses of the Lehman entities, including, among other things, the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and Lehman Brothers Inc.'s business as a futures commission merchant (the "Business"). Barclays has also acquired Lehman Brothers Inc.'s Manhattan headquarters.

- In general, Barclays is not liable in respect of any obligations of the Lehman Entities unless Barclays has expressly assumed such obligations.

- In general, Barclays has assumed liability in respect of the Business only if such liabilities are incurred by Barclays and arise after the Closing.

- During the period of 60 days following the Closing, Barclays also has the right to assume or reject contracts that are related to the assets that it has purchased from the Lehman Entities

WGM-LEHMAN-E 00005867

- The table below indicates the status of assets, products, agreements businesses and infrastructure after the Closing.

| | IN (Purchased Assets) | OUT (Excluded Assets) | Barclays may assume or reject for 60 days following Closing |
|---|---|---|---|
| **Assets:** | | | |
| Corporate Loans | | X | |
| OTC Derivatives (all underlyings) | | X | |
| Exchange Traded Derivatives (all underlyings) | X | | |
| Any property that may be held in order to secure obligations under Exchange Traded Derivatives | X | | |
| CDOs, CLOs, similar asset-backed securities | | X | |
| Securities owned by Lehman Brothers Inc. and transferred to Barclays under the "Barclays Repurchase Agreement" | X | | |
| Securities and other assets held in Lehman Brothers Inc.'s "clearance boxes" at the time of Closing | X | | X |
| TBA Mortgage Backed Securities | | X | |
| Intercompany payables and receivables (among Lehman entities) | | X | |
| Margining and collateral deposits that secure the obligations of a customer whose customer account is transferred to Barclays | X | | |
| Lehman Brothers Holdings Inc.'s and Lehman Brothers Inc.'s cash and bank deposits | | X | |
| Commercial Real Estate Investments (other than transferred real estate) | | X | |
| Equity of: Lehman Brothers Canada Inc.; Lehman Brothers Sudamerica SA; Lehman Brothers Uruguay SA; Townsend Analytics Ltd | X | | |

2

WGM-LEHMAN-E 00005868

| | | | |
|---|---|---|---|
| Equity of Lehman Commercial Paper, Inc. | | X | |
| Equity of Eagle Energy Management, LLC and Eagle Energy Partners 1, L.P. | | X | |
| Private Equity Investments | | X | |
| Hedge Fund Investments | | X | |
| Insurance policies | | X | |
| Rights to Lehman indices and supporting analytics | X | | |
| The mark "LEHMAN" and "LEHMAN BROTHERS" throughout the world and all other marks containing the name "LEHMAN" | X | | |
| The internet domain "www.lehman.com" | X | | |
| US and Canada Private Investment Management ("PIM") assets | X | | |
| **Products:** | | | |
| All products forming part of US and Canada investment banking and capital markets businesses | X | | |
| **Agreements/Accounts:** | | | |
| Prime Brokerage Accounts | X | | |
| Client Accounts | X | | |
| Repo Agreements | | X | |
| Securities Lending Agreements | | X | |
| ISDA Master Agreements or other master swap agreements | | X | |
| Mandate Letters; Engagement Letters | | | X |
| Bridge Loans, Credit Facility Commitments | | X | |
| **Businesses:** | | | |
| All US and Canada investment banking and capital markets businesses | X | | |
| Business of Lehman Commercial Paper, Inc. | | X | |
| Business of Eagle Energy Management, LLC and Eagle | | X | |

3

WGM-LEHMAN-E 00005869

| | | | |
|---|---|---|---|
| Energy Partners 1, L.P. | | | |
| US and Canada Investment Management business (other than PIM) | | X | |
| US and Canada PIM business | X | | |
| US and Canada Prime Brokerage business | X | | |
| US and Canada Commodities business | X | | |
| Futures Commission Merchant business of Lehman Brothers Inc. | X | | |
| US and Canada FX business | X | | |
| Mortgage Servicing business for GNMA guaranteed securities | | X | |
| **Infrastructure:** | | | |
| Government Securities Trading and mortgage-backed trading operations | X | | |
| Repo Agreement operations and securities lending operations | X | | |
| To the extent used in, related to or necessary for the Business, Intellectual Property Rights, software and technology embodied in or arising from the assets purchased by Barclays | X | | |
| Transition services provided by Lehman Brothers Holding Inc. or its affiliates to the Business. | X | | |

WGM-LEHMAN-E 00005870

# BCI EXHIBIT

# 321

**From:**    Azerad, Robert
**Sent:**    Sun, 28 Sep 2008 14:54:32 GMT
**To:**    Hraska, James W; Denig, Nancy
**CC:**    Tonucci, Paolo; Vergel de Dios, John
**Subject:**    Reconciliation Barclays - Lehman File

**Importance:** High

Jim and Nancy

Paolo received the following file from Barclays, which, i believe, is
supposed to represent the transfers that took place on Thursday and
Friday.

  <<Barclays Financing Collateral List (Barc Ops) 09-20-2008.xls>>
I tried to reconcile this file versus our own files (one for the
Thursday transfer, one for the Friday transfer), which I am attaching
for reference in case these are not the reference files

  <<CORRECTED Thursday Transfers to Barclays BONY agreed (5).xls>>
<<Copy of Trf09192008 (3) (2).xls>>

There are meaningful differences between the Barclays and Lehman files.
The attached files provide a summary by settlement system (Fed vs. DTC).
The most worrying difference appears to be CUSIP that show up in one
file but not in the other. For Fed settled securities, there are 5
CUSIPs that are in the Barclays file but not in the Lehman file and 5
CUSIPs that are in the Lehman file but not in the Barclays file
(hopefully these are the same securities). For DTC settled securities,
there are 1,165 CUSIPs that are in the Barclays file but not in the
Lehman file and 1,563 CUSIPs that are in the Lehman file but not in the
Barclays file! Additionally, there are differences in market value (this
would be expected however; nevertheless the difference on the Fed
settled securities ($187 million) appears large for what are meant to be
liquid securities).

  <<LEH BAR Reconciliation.xls>>

Can you work with the Barclays operations team (Paolo has been in
contact with Marcus Morton) to reconcile the differences? Let me know if
I can help.

Thanks

Robert



HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014389

## Placeholder
## Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014390

**Placeholder**
Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014391

## Placeholder
## Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014392

# Placeholder
## Document produced in native format

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00014393

|  | FED Settled | | |
|  | # of Records | # of CUSIPs | Mkt Value |
| Barclays File | 4,365 | 4,365 | 28,677,439,093 |
| LEH File | 4,964 | 4,365 | 28,490,469,091 |
| Difference | 599 | - | (186,970,002) |
| CUSIP in BAR file but not in LEH File | | 5 | See Missing CUSIP |
| CUSIP in LEH file but not in BAR File | | 5 | See Missing CUSIP |

|  | DTC Settled | | |
|  | # of Records | # of CUSIPs | Mkt Value | |
| | 6,316 | 6,285 | 15,426,958,432 | Thursday Transfer |
| | 3,538 | | 14,412,455,806 | Friday Transfer |
| | 2,969 | | 1,035,356,662 | |
| | 6,507 | 6,401 | 15,447,812,468 | Total |
| | 191 | 116 | 20,854,036 | |
| | 1,165 | | See Missing CUSIP | |
| | 1,563 | | See Missing CUSIP | |

# Remainder of Exhibit
# Filed Under Seal

# BCI EXHIBIT

# 322



David Murgio/NY/WGM/US
09/28/2008 10:50 PM

To  paolo.tonucci@lehman.com

cc  harvey.miller@weil.com, lori.fife@weil.com,
robert.messineo@weil.com, rod.miller@weil.com,
Shai.Waisman@weil.com

bcc

Subject  Re: Schedules A and B for Filing - FINAL

Paolo-

Please see below.  Can you confirm that you agree that these two files are correct.

Thanks.

David

---

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

"Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>



"Duane MCLAUGHLIN"
<dmclaughlin@cgsh.com>
09/28/2008 09:03 PM

To  david.murgio@weil.com, lori.fife@weil.com,
robert.messineo@weil.com, rod.miller@weil.com,
Shai.Waisman@weil.com, harvey.miller@weil.com

cc  Jasen.Yang@barclayscapital.com,
Marcus.Morton@barclayscapital.com, "Victor I LEWKOW"
<vlewkow@cgsh.com>, "Robert P DAVIS"
<rdavis@cgsh.com>, "Lisa M SCHWEITZER"
<lschweitzer@cgsh.com>, "David LEINWAND"
<dleinwand@cgsh.com>, "Lindsee GRANFIELD"
<lgranfield@cgsh.com>, paolo.tonucci@lehman.com,
Jonathan.Hughes@barclayscapital.com,
Daniel.Long@barclayscapital.com,
richard.smith3@barclayscapital.com

Subject  Schedules A and B for Filing - FINAL

Attached please find two files which include what Barclays believes should be included on Schedules A
and B.  These reflect conversation with Paolo over the weekend, and we believe are agreed between
Barclays and Lehman.  Please note that Barclays is not indicating that the listed securities have been
delivered or the value of any securities that are delivered.  In addition, Barclays notes that there may be
additional securities in the LBI clearance boxes that Barclays would also be entitled to receive under the
APA.  Please provide your sign off on these files as soon as possible so that they can be filed under seal
with the bankruptcy court in the morning.  As discussed, the schedules would be available to creditors

WGM-LEHMAN-E 00010539

that execute a confidentiality agreement.

Thanks,

Duane

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917 697 8734
www.clearygottlieb.com  |  dmclaughlin@cgsh.com

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

Schedule A Final.xls   Schedule B Final.xls

WGM-LEHMAN-E 00010540

# Attachments Omitted

# BCI EXHIBIT

# 323

**From:**  Tonucci, Paolo
**Sent:**  Mon, 29 Sep 2008 14:37:49 GMT
**To:**  david.murgio@weil.com
**CC:**  harvey.miller@weil.com; lori.fife@weil.com; robert.messineo@weil.com; rod.miller@weil.com; Shai.Waisman@weil.com
**Subject:** RE: Schedules A and B for Filing - FINAL

The two files reflect what we believe to have been transferred to Barclays, and what we expect to transfer to Barclays in the forthcoming days.  The Sch B file includes those assets that have not yet been transferred but we expect to transfer, as well as assets transferred on Friday 19 September.

We are awaiting final confirmation of the transfers to be made by our ops team, and hope to have that today.

Paolo

From: david.murgio@weil.com [mailto:david.murgio@weil.com]
Sent: 28 September 2008 22:51
To: Tonucci, Paolo
Cc: harvey.miller@weil.com; lori.fife@weil.com; robert.messineo@weil.com; rod.miller@weil.com; Shai.Waisman@weil.com
Subject: Re: Schedules A and B for Filing - FINAL

Paolo-

Please see below.  Can you confirm that you agree that these two files are correct.

Thanks.

David

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail: david.murgio@weil.com

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00012484

"Duane MCLAUGHLIN" <dmclaughlin@cgsh.com>

09/28/2008 09:03 PM

To
david.murgio@weil.com, lori.fife@weil.com, robert.messineo@weil.com,
rod.miller@weil.com, Shai.Waisman@weil.com, harvey.miller@weil.com

cc
Jasen.Yang@barclayscapital.com, Marcus.Morton@barclayscapital.com,
"Victor I LEWKOW" <vlewkow@cgsh.com>, "Robert P DAVIS"
<rdavis@cgsh.com>, "Lisa M SCHWEITZER" <lschweitzer@cgsh.com>, "David
LEINWAND" <dleinwand@cgsh.com>, "Lindsee GRANFIELD"
<lgranfield@cgsh.com>, paolo.tonucci@lehman.com,
Jonathan.Hughes@barclayscapital.com, Daniel.Long@barclayscapital.com,
richard.smith3@barclayscapital.com

Subject
Schedules A and B for Filing - FINAL

Attached please find two files which include what Barclays believes
should be included on Schedules A and B. These reflect conversation
with Paolo over the weekend, and we believe are agreed between Barclays
and Lehman. Please note that Barclays is not indicating that the listed
securities have been delivered or the value of any securities that are
delivered. In addition, Barclays notes that there may be additional
securities in the LBI clearance boxes that Barclays would also be
entitled to receive under the APA. Please provide your sign off on
these files as soon as possible so that they can be filed under seal
with the bankruptcy court in the morning. As discussed, the schedules
would be available to creditors that execute a confidentiality
agreement.

Thanks,

Duane

---

Duane McLaughlin
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006

**HIGHLY CONFIDENTIAL**

t: +1 212 225 2106 | f: +1 212 225 3999 or +1 212 693 9716 | m: +1 917
697 8734
 <http://www.clearygottlieb.com/> www.clearygottlieb.com | <mailto:
dmclaughlin@cgsh.com> dmclaughlin@cgsh.com

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00012486

# BCI EXHIBIT

# 324

| | | |
|---|---|---|
| **Harvey R<br>Miller/NY/WGM/US** | To | David Murgio/NY/WGM/US@WGM |
| | cc | |
| 09/29/2008 10:47 AM | bcc | |
| | Subject | RE: Schedules A and B for Filing - FINAL |

David,
 When were assets transferred to BarCap on the 19th? The sale wasn't approved until the morning of the 20th.
Where do we stand on the revised memo as to what was sold.

Harvey

Harvey R. Miller
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
212-310-8500 (phone)
212-310-8077 (fax)

WGM-LEHMAN-E 00016607

# BCI EXHIBIT

# 325



**From:**       Gordon, William (Bill) <WGordon@alvarezandmarsal.com>
**Sent:**       Monday, September 29, 2008 3:40 PM (GMT)
**To:**         William Gordon (william.gordon@lehman.com); Korycki, Mary
                <mkorycki@alvarezandmarsal.com>; Donaldson, Jeffrey
                <jdonaldson@alvarezandmarsal.com>; Lakhani, Al
                <ALakhani@alvarezandmarsal.com>
**Subject:**    FW: Here is all we have at the moment that makes an effort to
                describe what Barclays got and didn't get
**Attach:**     DOC2515.PDF; Lehman_Barclays Transaction
                Summary_#1919524.DOC

---

William B. Gordon
Senior Director
Alvarez & Marsal North America, LLC
600 Lexington Avenue
New York, NY 10022
O. 212 759-4433
C. 914 646-0422


**From:** Fogarty, James P.
**Sent:** Saturday, September 27, 2008 2:06 PM
**To:** Gordon, William (Bill)
**Subject:** Fw: Here is all we have at the moment that makes an effort to describe what Barclays
got and didn't get


With attachments


**From:** gdwest@weil.com
**To:** Fogarty, James P.
**Sent:** Sat Sep 27 13:43:44 2008
**Subject:** Fw: Here is all we have at the moment that makes an effort to describe what Barclays
got and didn't get

Glenn D. West
Weil, Gotshal & Manges LLP
Dallas Direct:  214.746.7780
NY Direct:  212.310.8033
Dallas Fax:  214.746.7777
NY Fax:  212.310.6717
Cellular:  214.215.4813
email: gdwest@weil.com

AM002287

U.S. Internal Revenue Service (IRS) Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*    *    *

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

—— Forwarded by Glenn West/DA/WGM/US on 09/27/2008 12:43 PM —--

Glenn West/DA/WGM/US

09/27/2008 11:53 AM

To jmccarthy@alvarezandmarsal.com, dehrmann@alvarezandmarsal.com

cc David Murgio/NY/WGM/US@WGM, Robert Messineo/NY/WGM/US@WGM, Michael Lubowitz/NY/WGM/US@WGM, Gil Friedlander/DA/WGM/US@WGM, Arman Kuyumjian/NY/WGM/US@WGM, Shai Waisman/NY/WGM/US@WGM

Subject Here is all we have at the moment that makes an effort to describe what Barclays got and didn't get

Can't find the email address of the other person you wanted me to send this to, so can you forward?

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail:  david.murgio@weil.com

AM002288

**General Information Regarding the Lehman Transaction:**

- Effective on September 22, 2008 (the "Closing"), Barclays Capital Inc. ("Barclays") purchased certain <u>assets</u> owned by Lehman Brothers Inc., Lehman Brothers Holdings Inc. and one of their affiliates (the "Lehman Entities"). Barclays did not buy or merge with Lehman Brothers Inc.

- With the exception of certain assets that were expressly excluded from the sale, the assets purchased by Barclays comprised all of the assets of the Lehman Entities that were used in the U.S. and Canadian investment banking and capital markets businesses of the Lehman entities, including, among other things, the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and Lehman Brothers Inc.'s business as a futures commission merchant (the "Business"). Barclays has also acquired Lehman Brothers Inc.'s Manhattan headquarters.

- In general, Barclays is not liable in respect of any obligations of the Lehman Entities unless Barclays has expressly assumed such obligations.

- In general, Barclays has assumed liability in respect of the Business only if such liabilities are incurred by Barclays and arise after the Closing.

- During the period of 60 days following the Closing, Barclays also has the right to assume or reject contracts that are related to the assets that it has purchased from the Lehman Entities

AM002289

- The table below indicates the status of assets, products, agreements businesses and infrastructure after the Closing.

| | IN (Purchased Assets) | OUT (Excluded Assets) | Barclays may assume or reject for 60 days following Closing |
|---|---|---|---|
| **Assets:** | | | |
| Corporate Loans | | X | |
| OTC Derivatives (all underlyings) | | X | |
| Exchange Traded Derivatives (all underlyings) | X | | |
| Any property that may be held in order to secure obligations under Exchange Traded Derivatives | X | | |
| CDOs, CLOs, similar asset-backed securities | | X | |
| Securities owned by Lehman Brothers Inc. and transferred to Barclays under the "Barclays Repurchase Agreement" | X | | |
| Securities and other assets held in Lehman Brothers Inc.'s "clearance boxes" at the time of Closing | X | | X |
| TBA Mortgage Backed Securities | | X | |
| Intercompany payables and receivables (among Lehman entities) | | X | |
| Margining and collateral deposits that secure the obligations of a customer whose customer account is transferred to Barclays | X | | |
| Lehman Brothers Holdings Inc.'s and Lehman Brothers Inc.'s cash and bank deposits | | X | |
| Commercial Real Estate Investments (other than transferred real estate) | | X | |
| Equity of: Lehman Brothers Canada Inc.; Lehman Brothers Sudamerica SA; Lehman Brothers Uruguay SA; Townsend Analytics Ltd | X | | |

2

AM002290

| | | | |
|---|---|---|---|
| Equity of Lehman Commercial Paper, Inc. | | X | |
| Equity of Eagle Energy Management, LLC and Eagle Energy Partners 1, L.P. | | X | |
| Private Equity Investments | | X | |
| Hedge Fund Investments | | X | |
| Insurance policies | | X | |
| Rights to Lehman indices and supporting analytics | X | | |
| The mark "LEHMAN" and "LEHMAN BROTHERS" throughout the world and all other marks containing the name "LEHMAN" | X | | |
| The internet domain "www.lehman.com" | X | | |
| US and Canada Private Investment Management ("PIM") assets | X | | |
| **Products:** | | | |
| All products forming part of US and Canada investment banking and capital markets businesses | X | | |
| **Agreements/Accounts:** | | | |
| Prime Brokerage Accounts | X | | |
| Client Accounts | X | | |
| Repo Agreements | | X | |
| Securities Lending Agreements | | X | |
| ISDA Master Agreements or other master swap agreements | | X | |
| Mandate Letters; Engagement Letters | | | X |
| Bridge Loans, Credit Facility Commitments | | X | |
| **Businesses:** | | | |
| All US and Canada investment banking and capital markets businesses | X | | |
| Business of Lehman Commercial Paper, Inc. | | X | |
| Business of Eagle Energy Management, LLC and Eagle | | X | |

3

AM002291

| | | | |
|---|---|---|---|
| Energy Partners 1, L.P. | | | |
| US and Canada Investment Management business (other than PIM) | | X | |
| US and Canada PIM business | X | | |
| US and Canada Prime Brokerage business | X | | |
| US and Canada Commodities business | X | | |
| Futures Commission Merchant business of Lehman Brothers Inc. | X | | |
| US and Canada FX business | X | | |
| Mortgage Servicing business for GNMA guaranteed securities | | X | |
| **Infrastructure:** | | | |
| Government Securities Trading and mortgage-backed trading operations | X | | |
| Repo Agreement operations and securities lending operations | X | | |
| To the extent used in, related to or necessary for the Business, Intellectual Property Rights, software and technology embodied in or arising from the assets purchased by Barclays | X | | |
| Transition services provided by Lehman Brothers Holding Inc. or its affiliates to the Business. | X | | |

4

AM002292

## LEHMAN BROTHERS / BARCLAYS TRANSACTION
## DIVISION OF ASSETS & LIABILITIES

### Definition of Business Sold

"Business" being sold includes the U.S. and Canadian investment banking and capital markets businesses of Seller, including:

- fixed income and equities cash trading business.

- brokerage, dealing, trading and advisory businesses.

- investment banking operations.

- LBI's business as a futures commission merchant.

- LBI's commodities business.

- government securities trading operations.

- mortgage-backed securities trading operations of LBI (but not any securities of such nature held by Seller except as otherwise specified).

- PIM Business. (See Purchased Asset discussion and discussion of Excluded Assets relating to PIM Business below.)

### Purchased Assets

At the Closing, Barclays acquired all "Purchased Assets."

"Purchased Assets" means "(i) all of the assets of Seller used primarily in the Business or necessary for the operation of the Business (in each case, excluding the Excluded Assets) and (ii) none of the assets of Subsidiaries of LBHI (other than assets of LBI), except as otherwise specifically provided.")

### Securities and Trading Operations

- the securities set forth on Schedule A to the Clarification Letter (i.e., the securities subject to the Barclays Repurchase Agreement).

- the securities and other assets held in LBI's "clearance boxes" as of the time of the Closing; provided, however, that Purchaser in its discretion may elect within 60 days after the Closing to return any such securities or assets to LBI. (Note that Schedule B to the Clarification Letter sets forth the securities and other assets held in LBI's "clearance boxes" as of September 21, 2008.)

AM002293

- all exchange-traded derivatives (and any property that may be held to security obligations under such derivative).

- all prime brokerage business and accounts and repurchase agreement operations and securities lending operations of the Business (for the avoidance of doubt, other than those that are part of the IMD Business).

- rights to "Lehman" indices and analytics that support the indices and all other indices and analytics used in the Business.

- general trading tools supporting the Business.

Intellectual Property

- the Purchased Intellectual Property (i.e., the Purchased Marks and all other Intellectual Property Rights, Software and Technology throughout the world that are used in, related to, or otherwise necessary for the Business, including all Intellectual Property Rights embodied in or arising from the Purchased Assets).

- the Purchased Marks (i.e., the Mark "LEHMAN" and "LEHMAN BROTHERS" throughout the world, all other Marks throughout the world containing or incorporating the name "LEHMAN," the Internet domain name www.lehman.com, all other Internet domain names containing or incorporating any Purchased Marks, and any other Mark throughout the world that is used in, related to, or otherwise necessary for the Business; in each case, together with all of the goodwill associated therewith and all registrations and applications for the foregoing and all common law rights thereto). (See also Intellectual Property & License under Excluded Assets below.)

- all income, royalties, damages and payments due or payable at the Closing or thereafter relating to the Purchased Intellectual Property (including damages and payments for past or future infringements or misappropriations thereof), the right to sue and recover damages for past or future infringements or misappropriations thereof and the right to fully and entirely stand in the place of Seller in all matters related thereto.

Contracts and Contractual Rights

- all deposits (including customer deposits, security deposits for rent, electricity, telephone or otherwise and required capital deposits) and prepaid charges and expenses of Seller and its Subsidiaries associated with the Business (other than any deposits or prepaid charges and expenses paid in connection with or relating to any Excluded Assets).

AM002294

- the Purchased Contracts (i.e., any Contract related to the assets purchased from Seller by Purchaser that Purchaser designates as a Related Contract within 60 days following the Closing).

- all rights of Seller under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees, contractors and agents of Seller or its Subsidiaries or with third parties to the extent relating to the Business or the Purchased Assets (or any portion thereof).

Subsidiaries

- Lehman Brothers Canada, Inc.

- Lehman Brothers Sudamerica SA

- Lehman Brothers Uruguay SA

- [Townsend Analytics]

Regulatory

- all Permits used by Seller in the Business to the extent assignable under applicable Law;

- any rights or interests Seller may have with respect to any escrow or other account established in connection with the Global Research Analyst Settlement entered by the U.S. District Court on October 31, 2003 (the "Research Settlement"), or funds otherwise set aside for the procurement of independent research pursuant to the Research Settlement, but only to the extent that Purchaser is required to make payments in accordance with the Research Settlement as a result of its acquisition of LBI's investment banking and research operations.

- Mercantile Exchange license agreements with respect to 335 South LaSalle Street, Chicago, IL and 400 South LaSalle Street, Chicago, IL.

PIM Business

- the PIM Business (i.e., the private investment management business (other than the CTS (Corporate Cash) business)).

- assets of the Seller used exclusively in the PIM Business.

Customer Accounts

AM002295

- Purchaser shall receive (i) for the account of the customer, any and all property of any customer, including any held by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business and (ii) to the extent permitted by applicable law, and as soon as practicable after the Closing, $769 million of securities, as held by or on behalf of LBI on the date hereof pursuant to Rule 15c3-3 of the Securities Exchange Act of 1934, as amended, or securities of substantially the same nature and value. (Note that customer accounts (other than accounts of customers that are Affiliate of LBI) were transferred to Purchaser, subject to client direction and any regulatory requirements.)

Real Estate

- the Transferred Real Property Leases (listed on Schedule 1.1(b) attached hereto), together with all improvements, fixtures and other appurtenances thereto and rights in respect thereof.

- the Furniture and Equipment (i.e., all furniture, fixtures, furnishings, equipment, vehicles, leasehold improvements, and other tangible personal property owned or used by Seller and its Subsidiaries in the conduct of the Business, including all desks, chairs, tables, Hardware, copiers, telephone lines and numbers, telecopy machines and other telecommunication equipment, cubicles and miscellaneous office furnishings and supplies).

- all supplies owned by Seller and used in connection with the Business.

- any insurance proceeds from the occurrence after the date hereof and prior to Closing, of any casualty or event loss with respect to any Transferred Real Property Leases or any properties subject thereto.

- Any of the leases listed on Schedule 1(c) attached hereto (the "PIM Leases"), to the extent Purchaser determines, within ten (10) days following the Closing, to assume such PIM Lease.

Miscellaneous Assets

- all Documents that are used in, held for use in or intended to be used in, or that arise in connection with, or are necessary to carry on or are related to the operation of the Business, including Documents relating to products, services, marketing, advertising, promotional materials, Purchased Intellectual Property, personnel files for Transferred Employees and all files, customer files and documents (including credit information), account agreements, books and records required to be maintained in connection with the Business under applicable Law, compliance manuals, supervisory policies and procedures, customer lists, supplier lists, records, literature and correspondence, whether or not physically located on any of the premises referred to in clause (d)

AM002296

above, but excluding (i) personnel files for Excluded Employees of Seller or
its Subsidiaries who are not Transferred Employees, (ii) such files as may be
required under applicable Law regarding privacy, (iii) Documents which
Seller is not permitted to transfer pursuant to any contractual confidentiality
obligation owed to any third party, and (iv) any Documents primarily related
to any Excluded Assets.

- all past and present goodwill and other intangible assets associated with or
  symbolized by the Business, including customer and supplier lists and the
  goodwill associated with the Purchased Intellectual Property.

**Excluded Assets**

From and after the Closing, LHBI and its Subsidiaries shall retain all right, title and
interest in the "Excluded Assets."

"Excluded Assets" means all assets of LBHI and Subsidiaries, other than Purchased
Assets. Excluded Assets include, but are not limited to, the following:

Cash, Receivables & Contracts

- any cash, cash equivalents, bank deposits or similar cash items of Seller and
  its Subsidiaries; provided that Excluded Assets shall not include any and all
  property of any customer, or maintained by or on behalf of LBI to secure the
  obligations of any customer, whose account(s) are being transferred to
  Purchaser as part of the Business.

- all receivables, except to the extent resulting from a Purchased Contract.

- all intercompany receivables.

- the Excluded Contracts (i.e., all Contracts other than Purchased Contracts),
  including any accounts receivable to the extent arising out of any Excluded
  Contract.

- all ISDA Master Agreements and master swap agreements and any schedules,
  supplements or amendments thereto.

Subsidiaries & Businesses

- all shares of capital stock, limited liability company membership, general and
  limited partnership, and other equity interests, of Seller and all of its
  Subsidiaries, other than the equity interests in those Subsidiaries specifically
  listed above as a Purchased Asset.

AM002297

- the IMD Business (*i.e.*, the asset management and the alternatives – private equity businesses of Seller and the Subsidiaries, but not the PIM Business).

- all assets primarily related to the IMD Business.

- Lehman Commercial Paper, Inc. and any assets thereof.

- the equity interests and assets of Lehman Brothers Commodity Services, Inc., including the equity of, as well as the assets of the energy marketing and services business of Eagle Energy Management LLC.

- assets related to the soliciting, placing, clearing and executing of buy and sell orders for derivatives contracts by Lehman Brothers Derivative Products Inc. and all activities related or ancillary thereto.

- the CTS (Corporate Cash) Business.

- the mortgage servicing rights for Ginnie Mae guaranteed securities.

- Excluded Assets include all assets owned (in whole or in part) by any Subsidiary of LBHI (other any Subsidiary expressly sold pursuant to the Agreement) organized under the laws of a jurisdiction other than the United States of America or a state thereof; provided, however, that to the extent any such asset is jointly owned by any such Subsidiary and Seller and used primarily in or necessary for the operation of the Business, Seller and Purchaser shall each use its commercially reasonable efforts to cause such Subsidiary to enter into arrangements reasonably acceptable to Purchaser to permit Purchaser to acquire the interest of such Subsidiary in such asset or to have the use thereof (provided that neither Seller nor Purchaser shall be required to make any payment in order to establish such arrangement).

Securities & Investments of Seller

- commercial real estate investments (including commercial loans, equity investments in such commercial real estate and other commercial real estate assets and all Archstone debt and equity positions).

- private equity investments.

- hedge fund investments.

- collateralized debt obligations.

- collateralized loan obligations.

AM002298

- over-the-counter derivatives (but not exchange rate derivatives, which are Purchased Assts).

- TBA mortgage notes.

- similar asset-backed securities.

- corporate loans (other than those subject to the Barclays Repurchase Agreement).

- any securities pledged as collateral under Seller clearing arrangements with JP Morgan Chase & Co. or its Affiliates (until, with respect to any security that is expressly listed as a Purchased Asset, such pledge is released).

Exclusions Relating to PIM Business

- any pre-closing legal, tax or compliance Liabilities associated with IRA accounts for the benefit of clients of the PIM Business.

- the forgivable notes issued by PIM employees to Seller or its Affiliates.

Rights & Claims

- any rights, claims or causes of action of Seller or any of its Subsidiaries against any person, including Affiliates of Seller, relating to assets, properties, business or operations of Seller or any of its Subsidiaries (other than those primarily related to Purchased Assets) arising out of events occurring on or prior to the Closing Date.

- any claim, right or interest of LBHl or any of its Subsidiaries in or to any refund, rebate, abatement or other recovery for Taxes, together with any interest due thereon or penalty rebate arising therefrom, for any Tax period (or portion thereof) ending on or before the Closing Date.

- all insurance policies or rights to proceeds thereof relating to the assets, properties, business or operations of Seller or any of its Subsidiaries and life insurance policies owned by Seller and its Subsidiaries.

Real Property

- all real property leases of Seller and its Subsidiaries, and all rights and obligations appurtenant thereto, as set forth on Schedule 1.1(a) hereto, other than the Transferred Real Property Leases.

Intellectual Property & Licensed Marks

AM002299

- any Intellectual Property Rights that do not constitute Purchased Intellectual Property.

- from and after the Closing, Seller receives a worldwide, nonexclusive, fully paid, royalty-free license under the trademarks "LEHMAN" and "LEHMAN BORTHERS," including any logos (the "Licensed Marks") including such names for any of its existing uses or in connection with the IMD Business and the unwinding of any of its other operations including use in corporate or other entity names. The license to use the Licensed Marks with respect to the investment banking and capital markets businesses of Seller and its Subsidiaries is limited to a term of 2 years from the Closing Date. The license to use the Licensed Marks in connection with the IMD Business is perpetual.

- from and after the Closing, Seller receives a perpetual, irrevocable, worldwide, nonexclusive, fully-paid, royalty-free license under all non-Mark Purchased Intellectual Property used in or covering any business of the Seller and/or its Affiliates (other than the Business) in the fields of investment management, investment research, portfolio management and other fields of the IMD Business, as well as the unwinding of any of Seller's other operations.

Miscellaneous

- any (i) confidential personnel and medical records pertaining to any Excluded Employee; (ii) other books and records that LBI is required by Law to retain, including, but not limited to, books and records required to be retained by Rules 17a-3 and 17a-4 of the Exchange Act with respect to the Purchased Assets or that LBHI reasonably determines are necessary to retain including, without limitation, Tax Returns, financial statements, and corporate or other entity filings; provided, however, that Purchaser shall have the right to make copies of any portions of such retained books and records that relate to the Business or any of the Purchased Assets; and (iv) minute books, stock ledgers and stock certificates of Subsidiaries.

- all artwork owned by Seller and its Subsidiaries.

- All assets and rights of the Lehman companies that would otherwise be Purchased Assets (other than Seller, 745 and any Subsidiaries sold pursuant to the Agreement), as a result of being subject to governmental conservatorship or administration, shall be considered "Excluded Assets," except as notified by the administrator to LBI from time to time or until such assets and rights can be so sold.

- any assets set aside, segregated, or otherwise specifically identified as being held for the purpose of satisfying Excluded Liabilities.

AM002300

**Assumed Liabilities:**

At the Closing, Barclays Capital Inc. assumed all "Assumed Liabilities." "Assumed Liabilities" means the following Liabilities:

- all Liabilities of Seller incurred by Purchaser and arising after the Closing in connection with the Business.

- all Liabilities of Seller under the Purchased Contracts arising after, with respect to each entity comprising Seller, the date on which such entity commenced a voluntary case or cases under Chapter 11 or Chapter 7, as the case may be, of the Bankruptcy Code.

- all Liabilities assumed under the Agreement in respect of certain employee benefits.

- all accounts payable incurred in the Ordinary Course of Business of Seller after, with respect to each entity comprising Seller, the date on which such entity commenced a voluntary case or cases under Chapter 11 or Chapter 7, as the case may be, of the Bankruptcy Code, associated with the Business (other than accounts payable arising out of or in connection with any Excluded Contract), including, for the avoidance of doubt, to the extent arising after such date (i) invoiced accounts payable and (ii) accrued but uninvoiced accounts payable).

- all Transfer Taxes applicable to the transfer of the Purchased Assets pursuant to this Agreement.

- all other Liabilities to the extent related to the Business, the Purchased Assets or the Transferred Employees arising after the Closing.

- all Liabilities under Transferred Real Property Leases from and after the Closing.

- all Liabilities relating to amounts required to be paid by Purchaser under the Agreement.

**Excluded Liabilities**

Notwithstanding anything to the contrary, Barclays Capital Inc. shall not assume any "Excluded Liabilities." "Excluded Liabilities" means the following Liabilities:

- all Liabilities of Seller and its Subsidiaries to the extent they do not arise out of the Business.

AM002301

- any intercompany receivables or payables or other obligations between or among any Seller and any of LBHI or any Subsidiary of LBHI.

- payables or deposits of a Seller or Subsidiary (except to the extent resulting from a Purchased Contract and except with respect to transferred customer accounts.

- all Liabilities arising out of Excluded Assets, including Contracts that are not Purchased Contracts.

- except as expressly provided in the Agreement, all Liabilities for Taxes of Seller for any Tax periods (or portions thereof) ending on or before the Closing Date.

- except as otherwise provided in this Agreement, Liabilities incurred in the Ordinary Course of Business existing prior to the filing of the Bankruptcy Case that are subject to compromise under the Bankruptcy Case (other than and other than any "cure amounts" that Purchaser is required to pay pursuant to Section 2.5 of the Agreement);

- except as expressly assumed pursuant to Article IX of the Agreement, any Liabilities relating to the employment, potential employment or termination of employment of any Person relating to or arising out of any period prior to the Closing, including without limitation any Liability under or relating to any employee benefit plan, program, agreement or arrangement, including in respect of equity compensation plans and tax-qualified or not tax-qualified pension or saving plans as to which the parties agree there shall be no transfer to or assumption of Liabilities by the Purchaser.

- all Liabilities relating to amounts required to be paid by Seller, hereunder, including upon any breach.

- all Liabilities under real property leases, other than Liabilities under Transferred Real Property Leases from the date of Closing forward.

- any Liabilities of Seller or its Subsidiaries under the $15.8 billion tri-party repurchase facility dated on or about September 18, 2008 funded by JP Morgan Chase;

- Liabilities arising under Seller's arrangements with Depository Trust Clearance Corporation and its affiliated clearing organizations.

- the outstanding subordinated notes of LBI and any Liabilities associated with such subordinated notes.

AM002302

Schedule 1(a)

**New York**
1301 Avenue of the Americas - 7th Floor
1271 Avenue of the Americas
399 Park Avenue
605 Third Avenue
85 Tenth Avenue

**New Jersey**
Jersey City - 101 Hudson St.
Livingston - 2 Peachtree Hill Road (Co-location)
Florham Park - 230 Park Avenue
Hoboken - 111 River Street (Sublease)

**Branches**
Atlanta - 3414 Peachtree Road
Calgary - 150 Sixth Avenue, Suite 3370 - PetroCanada
Columbia - Little Patuxent Parkway (NB)
Dallas - 200 Crescent Court
Dallas - 325 N. St. Paul Street (former Crossroads)
Greenwich - 8 Sound Shore Drive
Houston - 600 Travis Street
Los Angeles - 10880 Wilshire Blvd.
Menlo Park - 3000 Sand Hill Road
Miami - 1111 Brickell Avenue - Barclay's Financial Center
Newport Beach - 680 Newport Center Dr, Suite 150
Palm Beach - 450 Royal Palm Way (License agreement for 1,704 on 6th floor)
Philadelphia - 1735 Market Street - Mellon Bank Center
San Francisco - 555 California Street
Tampa - 401 East Jackson Street, 24th flr (NB)
Wilmington - 1000 West Street - Brandywine Building (LBB)

**South America Branches**
Buenos Aires - Av. Leandro N. Alem 855 - Torre Alem Plaza
Mexico City - Av. Paseo de la Reforma 265 Col. Cuauhtemoc
Montevideo - Ricon 477

NY2\1919524\03\15544031.DOC\73683.1037

AM002303

## Schedule 1(b)

| City | St | Location | Lease Legal Entity | Landlord Legal Entity | Lease Expiration | Square Footage Total | Square Footage Acquisition | Square Footage LB | Seats Total | Seats Acquisition | Seats LB | Occupancy Total | Occupancy Acquisition | Occupancy LB | CRE assets Total | CRE assets Acquisition | CRE assets LB | IT assets Total | IT assets Acquisition | IT assets LB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Boston | MA | 125 High Street | Lehman Brothers Holdings Inc | 125 High Street LP | 09/30/16 | 40,429 | 45,176 | 11,253 | 181 | 181 | | 1,416,201 | 1,416,201 | | 2,976,793 | 2,976,793 | | 937,190 | 937,190 | 189,290 |
| Chicago | IL | 190 South LaSalle Street | Lehman Brothers Holdings Inc | 190 190 S LaSalle, L.P. | 12/31/20 | 135,291 | 66,399 | 66,693 | 632 | 399 | 183 | 6,218,458 | 3,364,447 | 1,339,866 | 9,156,612 | 4,889,717 | 4,814,895 | 1,290,370 | 967,977 | 910,594 |
| Columbus | OH | 10 West Nationwide Blvd | Lehman Brothers Inc | Nationwide Realty Investors | 12/31/10 | 1,412 | 1,412 | | 2 | 2 | | 34,000 | 34,000 | | 4,461 | 4,461 | | 331 | 331 | |
| Cranford | NJ | 27 Commerce Drive | LB I 42 LLC | Cranford | 03/30/... | 120,000 | 120,000 | | 43 | 43 | | 17,606,716 | 17,606,716 | | 81,246,187 | 81,246,187 | | 11,093,998 | 11,093,998 | |
| | PA | 218 Venice Way | Lehman Brothers Inc | MCP5 (Val) V, L.P. E.Z. as NCP5 (Val) II, L.P | 06/30/11 | 2,214 | 2,214 | | 7 | 7 | | 83,791 | 83,791 | | 18,718 | 18,718 | | 3,545 | 3,545 | |
| Houston | TX | 4900 W San Houston (Brigh) | Lehman Brothers Holdings Inc | Gagardine Gmbrook... | 09/30/14 | 39,871 | 39,971 | | 122 | 122 | | 1,992,411 | 1,992,411 | | 4,053,545 | 4,053,545 | | 827,335 | 827,335 | |
| Jersey City | NJ | 70 Hudson Street | Lehman Brothers Holdings Inc | 70 Hudson Street, LLC | 09/30/16 | 690,277 | 690,271 | | 2,350 | 2,350 | | 16,101,551 | 16,101,551 | | 12,221,642 | 12,221,642 | | 6,614,818 | 6,614,818 | |
| Los Angeles | CA | 10250 Constellation Boulevard | Lehman Brothers Holdings Inc | Constellation Place, LLC | 04/30/17 | 61,360 | 23,666 | 21,214 | 192 | 79 | 113 | 2,800,205 | 1,411,883 | 1,387,320 | 7,086,610 | 5,578,857 | 1,547,960 | 331,116 | 160,316 | 170,800 |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc | 1301 Properties Owner LP | 12/31/20 | 35,524 | 35,979 | | 124 | 124 | | 2,303,548 | 2,303,548 | | 1,339,931 | 1,339,931 | | 47,063 | 47,063 | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc | Barclays Capital Real Estate | 12/31/20 | 330,666 | 330,666 | | | | | | | | | | | | | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc | Barclays Bank Plc/RAM... Inc | 12/31/20 | 35,251 | 35,251 | | | | | | | | | | | | | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc | WXQR, LLC | 12/31/20 | 41,000 | 41,000 | | | | | | | | | | | | | |
| New York | NY | 745 Seventh Avenue | LB I 745 LLC | Bear Properties LLC (ground lease payment) | Owned | 1,099,811 | 1,099,811 | | 6,652 | 6,652 | | 41,099,976 | 41,099,976 | | 55,820,895 | 53,920,895 | | 9,120,999 | 9,120,999 | |
| New York | NY | 61 Broadway | Lehman Brothers Inc | Tenurst, Inc | 01/30/12 | 3,219 | 3,219 | | 21 | 21 | | 160,887 | 160,887 | | 111,147 | 111,147 | | 40,247,951 | 40,247,951 | |
| Pittsburgh | PA | 600 Corporate Center... | Lehman Brothers Holdings Inc | Corporate Park Associates | 09/30/... | 608,131 | 608,131 | | 100 | 100 | | 3,933,603 | 3,933,603 | | 2,863,559 | 2,563,559 | | 34,503 | 34,503 | |
| San Luis O... | CA | 4010 South 700 East | Lehman Brothers Holdings Inc | ISJ Properties, Inc | 11/30/11 | 4,766 | 4,766 | | 28 | 28 | | 115,137 | 115,137 | | 140,333 | 140,333 | | 116,200 | 116,200 | |
| San Diego | CA | 11 SE Faure Road | Lehman Brothers Holdings Inc | San Diego Plaza, LLC | 01/30/10 | 2,466 | 2,466 | | 9 | 9 | | 95,531 | 95,531 | | 39,252 | 39,252 | | 63,734 | 63,734 | |
| San Pedro | CA | Faro Lima Sq | Lehman Brothers Inc/Brasil LTDA | Millenium Development Imobiliaria LTDA | 03/30/12 | 9,447 | 9,447 | | 64 | 64 | | 1,712,709 | 1,712,709 | | 1,667,954 | 1,667,954 | | 1,323,204 | 1,323,204 | |
| Seattle | WA | 901 Fifth Avenue | Lehman Brothers Inc | Sky-Columbia Center Property LLC | 03/31/10 | 3,591 | 3,591 | | 9 | 9 | | 152,156 | 152,156 | | 36,438 | 36,438 | | 1,267 | 1,267 | |
| Toronto | CAO | 181 Bay Street | Brookfield Properties, LTD | Brookfield Properties LTD | 11/30/11 | 7,215 | 3,215 | | 23 | 23 | | 972,193 | 972,193 | | 479,096 | 479,096 | | 910 | 910 | |
| Washington | DC | 1100 K Street | Lehman Brothers Inc | CGBL Owners 1100 K | 11/30/13 | 35,058 | 15,058 | | 33 | 33 | | 323,644 | 323,644 | | 21,842 | 21,842 | | 14,295 | 14,295 | |
| Chicago | IL | 190 South Wacker (TAL) | Townsend Analysis, L.T.D. | WBX-Wacker LLC | 03/31/10... | 72,697 | 72,697 | | 346 | 346 | | 2,783,461 | 2,783,461 | | nd | nd | | nd | nd | |
| New York | NY | 399 Park Avenue | Townsend Analysis, L.T.D. | AckInsidge Holdings, Inc | 03/31/10 | 117,825 | 15,825 | | 45 | 45 | | 206,035 | 206,035 | | nd | nd | | nd | nd | |
| New York | NY | 780 Third Avenue | Townsend Analysis, L.T.D. | Trustee Interest and Anicilla Amor. of Aniara | 03/31/10 | 5,471 | 5,471 | | 40 | 40 | | 204,000 | 204,000 | | nd | nd | | nd | nd | |
| | | Total | | | | 2,840,704 | 2,872,158 | 109,252 | 13,268 | 12,792 | 391 | 221,734,593 | 211,673,318 | 6,083,273 | 260,464,271 | 190,493,613 | 9,750,488 | 116,719,464 | 176,125,834 | 1,373,062 |

AM002304

Schedule 1(c)

PIM LEASES

| | City | State | Address | Tenant | Landlord |
|---|---|---|---|---|---|
| 1. | Atlanta | GA | 3414 Peachtree Road, NE | Lehman Brothers Inc. | Monarch Centre Associates, LLC |
| 2. | Dallas | TX | 200 Crescent Court | Lehman Brothers Inc. | Crescent TC Investors LP |
| 3. | Greenwich | CT | 8 Sound Shore Drive | Lehman Brothers Holdings Inc. | 8 Sound Shore Associates, LLC |
| 4. | Miami | FL | 1111 Brickell Avenue | Lehman Brothers Inc. | 1111 Brickell Office, LLC |
| 5. | Newport Beach | CA | 680 Newport Center Drive | Lehman Brothers Holdings Inc. | The Irving Company |
| 6. | Palm Beach | FL | 450 Royal Palm Way | Lehman Brothers Inc. | Palm Beach Centre 1, LLC |
| 7. | Philadelphia | PA | 1735 Market Street | Lehman Brothers Inc. | Nine Penn Center Associates, LP |
| 8. | New York | NY | 399 Park Avenue | Lehman Brothers Inc. | Boston Properties LP |

AM002305

# BCI EXHIBIT

# 326



David Murgio/NY/WGM/US          To   Harvey R Miller/NY/WGM/US@WGM
09/29/2008 12:24 PM              cc   Lori Fife/NY/WGM/US
                               bcc
                           Subject   RE: Schedules A and B for Filing - FINAL 

Harvey-

The securities transferred on the 19th were the securities transferred as collateral for that pre-closing repo trade, which under the clarification letter we effectively let Barclays keep free and clear as Purchased Assets as of the closing.

As for the memo (which I've attached), Rod's and Bob's comments are incorporated. Therefore, I believe it is complete, unless your team has anything more. The only caveats I have are the following:

1. The memo includes as Purchased Assets the stock of Townsend Analytics Ltd. That is correct, in that at the Closing we transferred this stock to Barclays and they currently own it. However, subsequent to the Closing, Barclays has told us that, for tax reasons, they would have preferred to acquire Townsend as an asset sale. Bob has told them that we are willing to help them, but they need to come up with a plan and tell us how they want it fixed. We are still waiting for them to make a proposal.

2. The memo includes the schedule of Transferred Real Estate Leases that was attached to the Clarification Letter. I understand that a few of the leases on this schedule should not have been transferred and that Lori is working with the real estate team to fix this, however, I don't know what the current status is. Therefore, the bottom line is that the Transferred Real Estate Schedule attached to this memo is correct -- in that those are the leases that were, in fact, transferred at closing -- however, some of those leases shouldn't have been transferred and we are trying to fix it.

I hope this is helpful.

Regards,

David

Lehman_Barclays Transaction Summary_#1919524.DOC

David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310 8764
Fax: (212) 310 8007
e-mail: david.murgio@weil.com

Harvey R Miller/NY/WGM/US

Harvey R
Miller/NY/WGM/US              To   David Murgio/NY/WGM/US@WGM
09/29/2008 10:47 AM           cc

WGM-LEHMAN-E 00020419

Subject   RE: Schedules A and B for Filing - FINAL

David,
 When were assets transferred to BarCap on the 19th? The sale wasn't approved until the morning of the 20th.
Where do we stand on the revised memo as to what was sold.

Harvey

Harvey R. Miller
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
212-310-8500 (phone)
212-310-8077 (fax)

WGM-LEHMAN-E 00020420

## LEHMAN BROTHERS / BARCLAYS TRANSACTION
## DIVISION OF ASSETS & LIABILITIES

### Definition of Business Sold

"Business" being sold includes the U.S. and Canadian investment banking and capital markets businesses of Seller, including:

- fixed income and equities cash trading business.

- brokerage, dealing, trading and advisory businesses.

- investment banking operations.

- LBI's business as a futures commission merchant.

- LBI's commodities business.

- government securities trading operations.

- mortgage-backed securities trading operations of LBI (but not any securities of such nature held by Seller except as otherwise specified).

- PIM Business. (See Purchased Asset discussion and discussion of Excluded Assets relating to PIM Business below.)

### Purchased Assets.

At the Closing, Barclays acquired all "Purchased Assets."

"Purchased Assets" means "(i) all of the assets of Seller used primarily in the Business or necessary for the operation of the Business (in each case, excluding the Excluded Assets) and (ii) none of the assets of Subsidiaries of LBHI (other than assets of LBI), except as otherwise specifically provided.")

### Securities and Trading Operations

- the securities set forth on Schedule A to the Clarification Letter (i.e., the securities subject to the Barclays Repurchase Agreement).

- the securities and other assets held in LBI's "clearance boxes" as of the time of the Closing; provided, however, that Purchaser in its discretion may elect within 60 days after the Closing to return any such securities or assets to LBI. (Note that Schedule B to the Clarification Letter sets forth the securities and other assets held in LBI's "clearance boxes" as of September 21, 2008.)

WGM-LEHMAN-E 00020421

- all exchange-traded derivatives (and any property that may be held to security obligations under such derivative).

- all prime brokerage business and accounts and repurchase agreement operations and securities lending operations of the Business (for the avoidance of doubt, other than those that are part of the IMD Business).

- rights to "Lehman" indices and analytics that support the indices and all other indices and analytics used in the Business.

- general trading tools supporting the Business.

Intellectual Property

- the Purchased Intellectual Property (i.e., the Purchased Marks and all other Intellectual Property Rights, Software and Technology throughout the world that are used in, related to, or otherwise necessary for the Business, including all Intellectual Property Rights embodied in or arising from the Purchased Assets).

- the Purchased Marks (i.e., the Mark "LEHMAN" and "LEHMAN BROTHERS" throughout the world, all other Marks throughout the world containing or incorporating the name "LEHMAN," the Internet domain name www.lehman.com, all other Internet domain names containing or incorporating any Purchased Marks, and any other Mark throughout the world that is used in, related to, or otherwise necessary for the Business; in each case, together with all of the goodwill associated therewith and all registrations and applications for the foregoing and all common law rights thereto). (See also Intellectual Property & License under Excluded Assets below.)

- all income, royalties, damages and payments due or payable at the Closing or thereafter relating to the Purchased Intellectual Property (including damages and payments for past or future infringements or misappropriations thereof), the right to sue and recover damages for past or future infringements or misappropriations thereof and the right to fully and entirely stand in the place of Seller in all matters related thereto.

Contracts and Contractual Rights

- all deposits (including customer deposits, security deposits for rent, electricity, telephone or otherwise and required capital deposits) and prepaid charges and expenses of Seller and its Subsidiaries associated with the Business (other than any deposits or prepaid charges and expenses paid in connection with or relating to any Excluded Assets).

WGM-LEHMAN-E 00020422

- the Purchased Contracts (i.e., any Contract related to the assets purchased from Seller by Purchaser that Purchaser designates as a Related Contract within 60 days following the Closing).

- all rights of Seller under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees, contractors and agents of Seller or its Subsidiaries or with third parties to the extent relating to the Business or the Purchased Assets (or any portion thereof).

## Subsidiaries

- Lehman Brothers Canada, Inc.

- Lehman Brothers Sudamerica SA

- Lehman Brothers Uruguay SA

- Townsend Analytics Ltd.

## Regulatory

- all Permits used by Seller in the Business to the extent assignable under applicable Law;

- any rights or interests Seller may have with respect to any escrow or other account established in connection with the Global Research Analyst Settlement entered by the U.S. District Court on October 31, 2003 (the "Research Settlement"), or funds otherwise set aside for the procurement of independent research pursuant to the Research Settlement, but only to the extent that Purchaser is required to make payments in accordance with the Research Settlement as a result of its acquisition of LBI's investment banking and research operations.

- Mercantile Exchange license agreements with respect to 335 South LaSalle Street, Chicago, IL and 400 South LaSalle Street, Chicago, IL.

## PIM Business

- the PIM Business (i.e., the private investment management business (other than the CTS (Corporate Cash) business)).

- assets of the Seller used exclusively in the PIM Business.

## Customer Accounts

WGM-LEHMAN-E 00020423

- Purchaser shall receive (i) for the account of the customer, any and all property of any customer, including any held by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business and (ii) to the extent permitted by applicable law, and as soon as practicable after the Closing, $769 million of securities, as held by or on behalf of LBI on the date hereof pursuant to Rule 15c3-3 of the Securities Exchange Act of 1934, as amended, or securities of substantially the same nature and value.   (Note that customer accounts (other than accounts of customers that are Affiliate of LBI) were transferred to Purchaser, subject to client direction and any regulatory requirements.)

Real Estate

- the Transferred Real Property Leases (listed on Schedule 1.1(b) attached hereto), together with all improvements, fixtures and other appurtenances thereto and rights in respect thereof.

- the Furniture and Equipment (i.e., all furniture, fixtures, furnishings, equipment, vehicles, leasehold improvements, and other tangible personal property owned or used by Seller and its Subsidiaries in the conduct of the Business, including all desks, chairs, tables, Hardware, copiers, telephone lines and numbers, telecopy machines and other telecommunication equipment, cubicles and miscellaneous office furnishings and supplies).

- all supplies owned by Seller and used in connection with the Business.

- any insurance proceeds from the occurrence after the date hereof and prior to Closing, of any casualty or event loss with respect to any Transferred Real Property Leases or any properties subject thereto.

- Any of the leases listed on Schedule 1(c) attached hereto (the "PIM Leases"), to the extent Purchaser determines, within ten (10) days following the Closing, to assume such PIM Lease.

Miscellaneous Assets

- all Documents that are used in, held for use in or intended to be used in, or that arise in connection with, or are necessary to carry on or are related to the operation of the Business, including Documents relating to products, services, marketing, advertising, promotional materials, Purchased Intellectual Property, personnel files for Transferred Employees and all files, customer files and documents (including credit information), account agreements, books and records required to be maintained in connection with the Business under applicable Law, compliance manuals, supervisory policies and procedures, customer lists, supplier lists, records, literature and correspondence, whether or not physically located on any of the premises referred to in clause (d)

WGM-LEHMAN-E 00020424

above, but excluding (i) personnel files for Excluded Employees of Seller or its Subsidiaries who are not Transferred Employees, (ii) such files as may be required under applicable Law regarding privacy, (iii) Documents which Seller is not permitted to transfer pursuant to any contractual confidentiality obligation owed to any third party, and (iv) any Documents primarily related to any Excluded Assets.

- all past and present goodwill and other intangible assets associated with or symbolized by the Business, including customer and supplier lists and the goodwill associated with the Purchased Intellectual Property.

### Excluded Assets

From and after the Closing, LHBI and its Subsidiaries shall retain all right, title and interest in the "Excluded Assets."

"Excluded Assets" means all assets of LBHI and Subsidiaries, other than Purchased Assets. Excluded Assets include, but are not limited to, the following:

#### Cash, Receivables & Contracts

- any cash, cash equivalents, bank deposits or similar cash items of Seller and its Subsidiaries; provided that Excluded Assets shall not include any and all property of any customer, or maintained by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business.

- all receivables, except to the extent resulting from a Purchased Contract.

- all intercompany receivables.

- the Excluded Contracts (i.e., all Contracts other than Purchased Contracts), including any accounts receivable to the extent arising out of any Excluded Contract.

- all ISDA Master Agreements and master swap agreements and any schedules, supplements or amendments thereto.

#### Subsidiaries & Businesses

- all shares of capital stock, limited liability company membership, general and limited partnership, and other equity interests, of Seller and all of its Subsidiaries, other than the equity interests in those Subsidiaries specifically listed above as a Purchased Asset.

WGM-LEHMAN-E 00020425

- the IMD Business (i.e., the asset management and the alternatives – private equity businesses of Seller and the Subsidiaries, but not the PIM Business).

- all assets primarily related to the IMD Business.

- Lehman Commercial Paper, Inc. and any assets thereof.

- the equity interests and assets of Lehman Brothers Commodity Services, Inc., including the equity of, as well as the assets of the energy marketing and services business of Eagle Energy Management LLC.

- assets related to the soliciting, placing, clearing and executing of buy and sell orders for derivatives contracts by Lehman Brothers Derivative Products Inc. and all activities related or ancillary thereto.

- the CTS (Corporate Cash) Business.

- the mortgage servicing rights for Ginnie Mae guaranteed securities.

- Excluded Assets include all assets owned (in whole or in part) by any Subsidiary of LBHI (other any Subsidiary expressly sold pursuant to the Agreement) organized under the laws of a jurisdiction other than the United States of America or a state thereof; provided, however, that to the extent any such asset is jointly owned by any such Subsidiary and Seller and used primarily in or necessary for the operation of the Business, Seller and Purchaser shall each use its commercially reasonable efforts to cause such Subsidiary to enter into arrangements reasonably acceptable to Purchaser to permit Purchaser to acquire the interest of such Subsidiary in such asset or to have the use thereof (provided that neither Seller nor Purchaser shall be required to make any payment in order to establish such arrangement).

Securities & Investments of Seller

- commercial real estate investments (including commercial loans, equity investments in such commercial real estate and other commercial real estate assets and all Archstone debt and equity positions).

- private equity investments.

- hedge fund investments.

- collateralized debt obligations.

- collateralized loan obligations.

WGM-LEHMAN-E 00020426

- over-the-counter derivatives (but not exchange rate derivatives, which are Purchased Assts).

- TBA mortgage notes.

- similar asset-backed securities.

- corporate loans (other than those subject to the Barclays Repurchase Agreement).

- any securities pledged as collateral under Seller clearing arrangements with JP Morgan Chase & Co. or its Affiliates (until, with respect to any security that is expressly listed as a Purchased Asset, such pledge is released).

Exclusions Relating to PIM Business

- any pre-closing legal, tax or compliance Liabilities associated with IRA accounts for the benefit of clients of the PIM Business.

- the forgivable notes issued by PIM employees to Seller or its Affiliates.

Rights & Claims

- any rights, claims or causes of action of Seller or any of its Subsidiaries against any person, including Affiliates of Seller, relating to assets, properties, business or operations of Seller or any of its Subsidiaries (other than those primarily related to Purchased Assets) arising out of events occurring on or prior to the Closing Date.

- any claim, right or interest of LBHI or any of its Subsidiaries in or to any refund, rebate, abatement or other recovery for Taxes, together with any interest due thereon or penalty rebate arising therefrom, for any Tax period (or portion thereof) ending on or before the Closing Date.

- all insurance policies or rights to proceeds thereof relating to the assets, properties, business or operations of Seller or any of its Subsidiaries and life insurance policies owned by Seller and its Subsidiaries.

Real Property

- all real property leases of Seller and its Subsidiaries, and all rights and obligations appurtenant thereto, as set forth on Schedule 1.1(a) hereto, other than the Transferred Real Property Leases.

Intellectual Property & Licensed Marks

WGM-LEHMAN-E 00020427

- any Intellectual Property Rights that do not constitute Purchased Intellectual Property.

- from and after the Closing, Seller receives a worldwide, nonexclusive, fully paid, royalty-free license under the trademarks "LEHMAN" and "LEHMAN BORTHERS," including any logos (the "Licensed Marks") including such names for any of its existing uses or in connection with the IMD Business and the unwinding of any of its other operations including use in corporate or other entity names. The license to use the Licensed Marks with respect to the investment banking and capital markets businesses of Seller and its Subsidiaries is limited to a term of 2 years from the Closing Date. The license to use the Licensed Marks in connection with the IMD Business is perpetual.

- from and after the Closing, Seller receives a perpetual, irrevocable, worldwide, nonexclusive, fully-paid, royalty-free license under all non-Mark Purchased Intellectual Property used in or covering any business of the Seller and/or its Affiliates (other than the Business) in the fields of investment management, investment research, portfolio management and other fields of the IMD Business, as well as the unwinding of any of Seller's other operations.

Miscellaneous

- any (i) confidential personnel and medical records pertaining to any Excluded Employee; (ii) other books and records that LBI is required by Law to retain, including, but not limited to, books and records required to be retained by Rules 17a-3 and 17a-4 of the Exchange Act with respect to the Purchased Assets or that LBHI reasonably determines are necessary to retain including, without limitation, Tax Returns, financial statements, and corporate or other entity filings; provided, however, that Purchaser shall have the right to make copies of any portions of such retained books and records that relate to the Business or any of the Purchased Assets; and (iv) minute books, stock ledgers and stock certificates of Subsidiaries.

- all artwork owned by Seller and its Subsidiaries.

- All assets and rights of the Lehman companies that would otherwise be Purchased Assets (other than Seller, 745 and any Subsidiaries sold pursuant to the Agreement), as a result of being subject to governmental conservatorship or administration, shall be considered "Excluded Assets," except as notified by the administrator to LBI from time to time or until such assets and rights can be so sold.

- any assets set aside, segregated, or otherwise specifically identified as being held for the purpose of satisfying Excluded Liabilities.

WGM-LEHMAN-E 00020428

**<u>Assumed Liabilities</u>**:

At the Closing, Barclays Capital Inc. assumed all "Assumed Liabilities." "Assumed Liabilities" means the following Liabilities:

- all Liabilities of Seller incurred by Purchaser and arising after the Closing in connection with the Business.

- all Liabilities of Seller under the Purchased Contracts arising after, with respect to each entity comprising Seller, the date on which such entity commenced a voluntary case or cases under Chapter 11 or Chapter 7, as the case may be, of the Bankruptcy Code.

- all Liabilities assumed under the Agreement in respect of certain employee benefits.

- all accounts payable incurred in the Ordinary Course of Business of Seller after, with respect to each entity comprising Seller, the date on which such entity commenced a voluntary case or cases under Chapter 11 or Chapter 7, as the case may be, of the Bankruptcy Code, associated with the Business (other than accounts payable arising out of or in connection with any Excluded Contract), including, for the avoidance of doubt, to the extent arising after such date (i) invoiced accounts payable and (ii) accrued but uninvoiced accounts payable).

- all Transfer Taxes applicable to the transfer of the Purchased Assets pursuant to this Agreement.

- all other Liabilities to the extent related to the Business, the Purchased Assets or the Transferred Employees arising after the Closing.

- all Liabilities under Transferred Real Property Leases from and after the Closing.

- all Liabilities relating to amounts required to be paid by Purchaser under the Agreement.

**<u>Excluded Liabilities</u>**

Notwithstanding anything to the contrary, Barclays Capital Inc. shall not assume any "Excluded Liabilities." "Excluded Liabilities" means the following Liabilities:

- all Liabilities of Seller and its Subsidiaries to the extent they do not arise out of the Business.

WGM-LEHMAN-E 00020429

- any intercompany receivables or payables or other obligations between or among any Seller and any of LBHI or any Subsidiary of LBHI.

- payables or deposits of a Seller or Subsidiary (except to the extent resulting from a Purchased Contract and except with respect to transferred customer accounts.

- all Liabilities arising out of Excluded Assets, including Contracts that are not Purchased Contracts.

- except as expressly provided in the Agreement, all Liabilities for Taxes of Seller for any Tax periods (or portions thereof) ending on or before the Closing Date.

- except as otherwise provided in this Agreement, Liabilities incurred in the Ordinary Course of Business existing prior to the filing of the Bankruptcy Case that are subject to compromise under the Bankruptcy Case (other than and other than any "cure amounts" that Purchaser is required to pay pursuant to Section 2.5 of the Agreement);

- except as expressly assumed pursuant to Article IX of the Agreement, any Liabilities relating to the employment, potential employment or termination of employment of any Person relating to or arising out of any period prior to the Closing, including without limitation any Liability under or relating to any employee benefit plan, program, agreement or arrangement, including in respect of equity compensation plans and tax-qualified or not tax-qualified pension or saving plans as to which the parties agree there shall be no transfer to or assumption of Liabilities by the Purchaser.

- all Liabilities relating to amounts required to be paid by Seller, hereunder, including upon any breach.

- all Liabilities under real property leases, other than Liabilities under Transferred Real Property Leases from the date of Closing forward.

- any Liabilities of Seller or its Subsidiaries under the $15.8 billion tri-party repurchase facility dated on or about September 18, 2008 funded by JP Morgan Chase;

- Liabilities arising under Seller's arrangements with Depository Trust Clearance Corporation and its affiliated clearing organizations.

- the outstanding subordinated notes of LBI and any Liabilities associated with such subordinated notes.

WGM-LEHMAN-E 00020430

Schedule 1(a)

| New York | Branches |
|---|---|
| 1301 Avenue of the Americas - 7th Floor | Atlanta - 3414 Peachtree Road |
| 1271 Avenue of the Americas | Calgary - 150 Sixth Avenue, Suite 3370 - PetroCanada |
| 399 Park Avenue | Columbia - Little Patuxent Parkway (NB) |
| 605 Third Avenue | Dallas - 200 Crescent Court |
| 85 Tenth Avenue | Dallas - 325 N. St. Paul Street (former Crossroads) |
| | Greenwich - 8 Sound Shore Drive |
| New Jersey | Houston - 600 Travis Street |
| Jersey City - 101 Hudson St. | Los Angeles - 10880 Wilshire Blvd. |
| Livingston - 2 Peachtree Hill Road (Co-location) | Menlo Park - 3000 Sand Hill Road |
| Florham Park - 230 Park Avenue | Miami - 1111 Brickell Avenue - Barclay's Financial Center |
| Hoboken - 111 River Street (Sublease) | Newport Beach - 680 Newport Center Dr, Suite150 |
| | Palm Beach - 450 Royal Palm Way (License agreement for 1,704 on 6th floor) |
| | Philadelphia - 1735 Market Street - Mellon Bank Center |
| | San Francisco - 555 California Street |
| | Tampa - 401 East Jackson Street, 24th flr (NB) |
| | Wilmington - 1000 West Street - Brandywine Building (LBB) |
| | |
| | South America Branches |
| | Buenos Aires - Av. Leandro N. Alem 855 - Torre Alem Plaza |
| | Mexico City - Av. Paseo de la Reforma 265 Col. Cuauhtemoc |
| | Montevideo - Ricon 477 |

WGM-LEHMAN-E 00020431

WGM-LEHMAN-E 00020432

## Schedule 1(b)

| City | St | Localities | Lessee Legal Entity | Landlord Legal Entity | Lease Expiration | Space/Storage Total | Space/Storage Acquisition | Space/Storage LB | Seats Total | Seats Acquisition | Seats LB | Company Total | Company Acquisition | Company LB | CRE Assets Total | CRE Assets Acquisition | CRE Assets LB | IT Assets Total | IT Assets Acquisition | IT Assets LB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Boston | MA | 125 High Street | Lehman Brothers Holdings Inc. | Lehman Brothers Holdings Inc. | 09/30/16 | 45,439 | 43,816 | 1,623 | 121 | 118 | 103 | 2,741,537 | 2,750,951 | 1,230,386 | 2,959,793 | 2,041,108 | 918,685 | 192,379 | 192,379 | 189,262 |
| Chicago | IL | 190 South LaSalle Street | Lehman Brothers Holdings Inc. | SP4 190 S. LaSalle, L.P. | 11/01/00 | 176,291 | 66,209 | 66,093 | 421 | 320 | 102 | 6,738,459 | 3,245,487 | 3,292,971 | 5,376,914 | 4,989,717 | 4,989,717 | 1,324,270 | 991,377 | 991,094 |
| Columbia | MD | 8400 Corporate Centre Drive | Lehman Brothers Inc. | Ekdahl No 147 Corporation | 12/31/05 | 1,452 | 1,452 | | 1 | 1 | | 29,800 | 29,800 | | 4,541 | 4,541 | | 925 | 925 | 925 |
| Cranford | NJ | 25 Commerce Drive | LB 745 LLC | Cranel | 10/31/01 | 103,000 | 103,000 | | 43 | 43 | | 17,926,914 | 17,906,514 | | 31,046,187 | 31,046,187 | | 71,893,888 | 71,893,888 | 71,893,888 |
| East Bay | FL | 270 Avenue Mezzul Bruev | Lehman Brothers Inc. | MCFR Uho' V I.P., S.E. d/b MCFR Uho' R LP | 06/30/01 | 3,224 | 3,224 | | 7 | 7 | | 93,797 | 93,797 | | 13,718 | 13,718 | | 3,855 | 3,855 | 3,855 |
| Houston | TX | 4500 W Sam (Sam Snead Cogee) | Lehman Brothers Holdings Inc. | Ungentaber Chommes, L.P. | 02/01/14 | 39,371 | 31,971 | | 101 | 121 | | 1,891,411 | 1,891,411 | | 4,952,543 | 4,952,543 | | 637,655 | 637,655 | |
| Jersey City | NJ | 70 Hudson Street | Lehman Brothers Holdings Inc. | 70 Hudson Street, LLC | 01/01/16 | 409,271 | 409,271 | | 1,290 | 1,290 | | 36,551,057 | 36,551,057 | | 12,217,541 | 12,217,541 | | 6,144,518 | 6,144,518 | 6,144,518 |
| Los Angeles | CA | 10250 Constellation Boulevard | Lehman Brothers Holdings Inc. | Constellation Place, LLC | 04/01/07 | 42,340 | 31,066 | 11,274 | 101 | 79 | | 2,365,203 | 1,411,243 | | 7,506,600 | 5,215,557 | 1,247,043 | 781,176 | 782,216 | 186,448 |
| Menlo Park | CA | 133 Lischild Drive | Lehman Brothers Inc. | McMitified Park Associates | 06/30/00 | 22,479 | 22,479 | | 134 | 134 | | 3,243,846 | 3,243,846 | | 1,339,251 | 1,339,251 | | 67,303 | 67,303 | 67,303 |
| New York | NY | 1201 Avenue of the Americas | Lehman Brothers Holdings Inc. | 1201 Properties Owner LP | 12/01/20 | 230,666 | 230,666 | | | | | | | | | | | | | |
| New York | NY | 1201 Avenue of the Americas | Lehman Brothers Holdings Inc. | Rome Crossing Shop, Inc. | 12/01/08 | 23,531 | 23,531 | | | | | | | | | | | | | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc. | Unotela Tecsa Securities, Inc. | 12/01/00 | 132,000 | 132,000 | | 3,848 | 3,848 | | 6,499,974 | 41,499,974 | | 33,820,053 | 33,820,055 | | 9,101,999 | 9,101,999 | 9,101,999 |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc. | WFOFI, LLC | 02/28/04 | 41,400 | 41,400 | | | | | | | | | | | | | |
| New York | NY | 745 Seventh Avenue | LB 745 LLC | Bold Poky Ninth LLC (ground red payment) | Owned | 1,040,811 | 1,040,811 | | 6,021 | 6,021 | | 81,184,669 | 81,184,669 | | 380,974,861 | 380,974,861 | | 40,287,921 | 40,287,921 | |
| New York | NY | 45 Broadway | Lehman Brothers Inc. | Trotvens, Inc. | 03/30/03 | 3,239 | 3,239 | | 11 | 11 | | 149,887 | 149,887 | | 111,747 | 111,747 | | 24,810 | 24,810 | |
| Piscataway | NJ | 40 Corporate Places South | Lehman Brothers Holdings Inc. | Corporate Park Associates | 10/09/05 | 466,131 | 466,131 | | 120 | 120 | | 28,377,663 | 28,377,663 | | 306,203,538 | 306,203,538 | | 414,416,088 | 414,416,088 | |
| Salt Lake City | UT | 4001 South 700 East | Lehman Brothers Holdings Inc. | TD Properties, Inc. | 11/30/01 | 4,906 | 4,906 | | 16 | 16 | | 117,137 | 117,137 | | 140,133 | 140,133 | | 156,180 | 156,180 | |
| San Diego | CA | 4909 Towne Centre | Lehman Brothers Inc. | San Diego Plaza, LLC | 04/30/10 | 3,666 | 3,666 | | 7 | 7 | | 90,351 | 90,351 | | 95,510 | 95,510 | | 63,254 | 63,254 | |
| San Pedro | USA | Park Lane Sq | Lehman Brothers Inc (final) LTDA | Millennium Dev Investiments Imobiliaria LTDA | 01/01/01 | 9,491 | 9,491 | | 64 | 64 | | 1,711,709 | 1,711,709 | | 1,661,087 | 1,661,087 | | 1,332,204 | 1,332,204 | |
| Seattle | WA | 701 Fifth Avenue | Lehman Brothers Inc. | WA-Columbia Omro Property LLC | 05/31/01 | 2,591 | 2,591 | | 9 | 9 | | 135,750 | 135,750 | | 10,408 | 10,408 | | 1,240 | 1,240 | |
| Toronto | CAN | 181 Bay River | Lehman Brothers Canada, Inc. | Brookfield Properties LTD | 11/05/11 | 1,273 | 1,273 | | 13 | 13 | | 970,145 | 970,145 | | 420,056 | 420,056 | | 910 | 910 | |
| Washington | DC | 1001 F Street | Lehman Brothers Holdings Inc. | Clifford Chance US LLP | 12/30/02 | 10,478 | 10,478 | | 33 | 33 | | 134,050 | | | 31,845 | 21,845 | | 18,393 | 18,393 | |

| | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| New York | NY | 200 Third Avenue | Lehman Brothers Holdings Inc. | | | | | | | | | | 154,050 | 154,050 | | | | | | |
| | | **Total** | | | | **3,863,756** | **3,871,158** | **139,382** | **13,266** | **12,745** | **301** | **223,774,393** | **221,674,313** | **6,100,377** | **1,065,442,271** | **995,691,653** | **6,730,468** | **185,338,636** | **176,140,590** | **1,249,644** |

Schedule 1(c)

PIM LEASES

|    | City | State | Address | Tenant | Landlord |
|----|------|-------|---------|--------|----------|
| 1. | Atlanta | GA | 3414 Peachtree Road, NE | Lehman Brothers Inc. | Monarch Centre Associates, LLC |
| 2. | Dallas | TX | 200 Crescent Court | Lehman Brothers Inc. | Crescent TC Investors LP |
| 3. | Greenwich | CT | 8 Sound Shore Drive | Lehman Brothers Holdings Inc. | 8 Sound Shore Associates, LLC |
| 4. | Miami | FL | 1111 Brickell Avenue | Lehman Brothers Inc. | 1111 Brickell Office, LLC |
| 5. | Newport Beach | CA | 680 Newport Center Drive | Lehman Brothers Holdings Inc. | The Irving Company |
| 6. | Palm Beach | FL | 450 Royal Palm Way | Lehman Brothers Inc. | Palm Beach Centre 1, LLC |
| 7. | Philadelphia | PA | 1735 Market Street | Lehman Brothers Inc. | Nine Penn Center Associates, LP |
| 8. | New York | NY | 399 Park Avenue | Lehman Brothers Inc. | Boston Properties LP |

WGM-LEHMAN-E 00020433

# BCI EXHIBIT

# 327

**To:**    'mwitkin@dtcc.com'[mwitkin@dtcc.com]; 'clambert@dtcc.com'[clambert@dtcc.com];
'dbrennan@dtcc.com'[dbrennan@dtcc.com]; 'imontal@dtcc.com'[imontal@dtcc.com];
'jcolangelo@dtcc.com'[jcolangelo@dtcc.com]; 'jkiechle@dtcc.com'[jkiechle@dtcc.com];
'lthompson@dtcc.com'[lthompson@dtcc.com]; "Susan Cossgrove'[scosgrove@dtcc.com];
'bkapogiannis@dtcc.com'[bkapogiannis@dtcc.com]
**Cc:**    'lvecchio@lehman.com'[lvecchio@lehman.com]; Kobak, James B.[kobak@hugheshubbard.com];
'Ullman, Neal (NY)'[Neal.Ullman@barclayscapital.com]; Gallagher, Bill[wigallag@barclayscapital.com]
**Bcc:**
    '004336.00002.east@nyimport01.firm.hugheshubbard.com'[004336.00002.east@nyimport01.firm
.hugheshubbard.com]
**From:**    Frelinghuysen, Anson
**Sent:**    Mon 9/29/2008 3:52:19 PM
**Importance:**    Low
**Sensitivity:**    None
**Subject:**    Transfer of Assets Pursuant to the Asset Purchase Agreement
**Reminder Topic:**    Follow up
**Categories:**    0x00000000

equity5101.xls
DTC 074 AVAILABLE COLL .xls

James W. Giddens, Trustee in the Securities Investor Protection Corporation liquidation of Lehman
Brothers Inc. authorizes the transfer of the assets detailed in the attached excel worksheets pursuant to
the Asset Purchase Agreement dated as of September 16, 2008.

The worksheet labeled "equity 5101" represents equity collateral.  Please deliver those positions from
DTC participant account #074 to DTC participant account #5101.

The worksheet labeled "DTC 074 Available COLL" represents fixed income collateral. Please deliver
these positions from DTC participant #074 to DTC participant account #7256.

For operational questions related to this request, please contact Neal Ullman or Bill Gallagher.

Thank you.

Anson

Confidential

# Attachments Omitted

# BCI EXHIBIT

# 328



**"Korycki, Mary"**
<mkorycki@alvarezandmars
al.com>

09/29/2008 08:19 PM

To   "Fogarty, James P." <Jfogarty@alvarezandmarsal.com>,
"Gordon, William \(Bill\)"
<WGordon@alvarezandmarsal.com>, "Donaldson, Jeffrey"
<jdonaldson@alvarezandmarsal.com>, "Lakhani, Al"
<ALakhani@alvarezandmarsal.com>, "Fox, William J."
<wfox@alvarezandmarsal.com>, "Korycki, Mary"
<mkorycki@alvarezandmarsal.com>,
<danelle.pitts@lehman.com>,
<paolo.tonucci@barclayscapital.com>,
<akirk@lehman.com>, <lori.fife@weil.com>,
<robert.messineo@weil.com>, <rod.miller@weil.com>

cc

bcc

Subject   Files for Tomorrows APA Schedules Meeting

Attached are the files for the APA Schedules meeting tomorrow at 11AM.

    1.    APA – Summary
    2.    Exhibit A-1 - Barclays Financing Collateral List (Barc Ops) 09-20-2008
    3.    Exhibit A-2 - Barclays Financing Collateral List (Barc Ops) 09-20-2008
    4.    Exhibit B-1 and B-2 - DTC 074 and 636 AVAILABLE COLL
    5.    Exhibit B-3 - DTC 074 and 636 AVAILABLE COLL
    6.    Exhibit B-4 - Friday transfers BONY records agreed
    7.    Exhibit B-5 - 636 collateral
    8.    Exhibit B-6 - Schedule B Final

Copies will be available for those attending the meeting in person.

Regards,

Mary A. Korycki
Senior Associate
Alvarez & Marsal North America, LLC
600 Lexington Avenue
Suite 7
New York, NY 10022
(646) 696-6176
www.alvarezandmarsal.com

This message is intended only for the use of the Addressee and may contain information that is
PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are herby notified that any
dissemination of this communication is strictly prohibited. If you have received this communication in
error, please erase all copies of the message and its attachments and notify us immediately. Thank you.

*************************************************************************
********
This message is intended only for the use of the addressee(s) and may contain information
that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient(s), you are
hereby notified that any dissemination of this communication is strictly prohibited.
If you have received this communication in error, please erase all copies of the

WGM-LEHMAN-E 00000868

message and its attachments and notify us immediately.

This email has been scanned by the MessageLabs Email Security System.
*******************************************************************************

******** APA-Summary_Final_09.30.08.pdf   Exhibit A-1 - Barclays Financing Collateral List (Barc Ops) 09-20-2008.pdf

Exhibit A-2 - Barclays Financing Collateral List (Barc Ops) 09-20-2008.pdf   Exhibit B-1 and B-2 - DTC 074 and 636 AVAILABLE COLL.pdf

Exhibit B-3 - DTC 074 and 636 AVAILABLE COLL.pdf   Exhibit B-4 - Friday transfers BONY records agreed.pdf

Exhibit B-5 - 636 collateral.pdf   Exhibit B-6 - Schedule B Final.pdf

WGM-LEHMAN-E 00000869

# Attachments Omitted

# BCI EXHIBIT

# 329

| | |
|---|---|
| **From:** | Gordon, William (Bill) <WGordon@alvarezandmarsal.com> |
| **Sent:** | Monday, September 29, 2008 3:40 PM (GMT) |
| **To:** | William Gordon (william.gordon@lehman.com); Korycki, Mary <mkorycki@alvarezandmarsal.com>; Donaldson, Jeffrey <jdonaldson@alvarezandmarsal.com>; Lakhani, Al <ALakhani@alvarezandmarsal.com> |
| **Subject:** | FW: Here is all we have at the moment that makes an effort to describe what Barclays got and didn't get |
| **Attach:** | DOC2515.PDF; Lehman_Barclays Transaction Summary_#1919524.DOC |

William B. Gordon
Senior Director
Alvarez & Marsal North America, LLC
600 Lexington Avenue
New York, NY 10022
O. 212 759-4433
C. 914 646-0422

**From:** Fogarty, James P.
**Sent:** Saturday, September 27, 2008 2:06 PM
**To:** Gordon, William (Bill)
**Subject:** Fw: Here is all we have at the moment that makes an effort to describe what Barclays got and didn't get

With attachments

**From:** gdwest@weil.com
**To:** Fogarty, James P.
**Sent:** Sat Sep 27 13:43:44 2008
**Subject:** Fw: Here is all we have at the moment that makes an effort to describe what Barclays got and didn't get

Glenn D. West
Weil, Gotshal & Manges LLP
Dallas Direct: 214.746.7780
NY Direct: 212.310.8033
Dallas Fax: 214.746.7777
NY Fax: 212.310.6717
Cellular: 214.215.4813
email: gdwest@weil.com

AM002287

U.S. Internal Revenue Service (IRS) Circular 230 Notice: To ensure compliance with
requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this
communication (including any attachments) is not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or matter addressed
herein.

*    *    *

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If
you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

----- Forwarded by Glenn West/DA/WGM/US on 09/27/2008 12:43 PM -----
Glenn West/DA/WGM/US

09/27/2008 11:53 AM

To    jmccarthy@alvarezandmarsal.com,
      dehrmann@alvarezandmarsal.com
cc    David Murgio/NY/WGM/US@WGM, Robert
      Messineo/NY/WGM/US@WGM, Michael
      Lubowitz/NY/WGM/US@WGM, Gil
      Friedlander/DA/WGM/US@WGM, Arman
      Kuyumjian/NY/WGM/US@WGM, Shai
      Waisman/NY/WGM/US@WGM
Subject    Here is all we have at the moment that makes an effort to describe
           what Barclays got and didn't get

Can't find the email address of the other person you wanted me to send this to, so can you
forward?

_____
David Murgio
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310 8764
Fax: (212) 310 8007
e-mail: david.murgio@weil.com

AM002288

## General Information Regarding the Lehman Transaction:

- Effective on September 22, 2008 (the "Closing"), Barclays Capital Inc. ("Barclays") purchased certain <u>assets</u> owned by Lehman Brothers Inc., Lehman Brothers Holdings Inc. and one of their affiliates (the "Lehman Entities"). Barclays did not buy or merge with Lehman Brothers Inc.

- With the exception of certain assets that were expressly excluded from the sale, the assets purchased by Barclays comprised all of the assets of the Lehman Entities that were used in the U.S. and Canadian investment banking and capital markets businesses of the Lehman entities, including, among other things, the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and Lehman Brothers Inc.'s business as a futures commission merchant (the "Business"). Barclays has also acquired Lehman Brothers Inc.'s Manhattan headquarters.

- In general, Barclays is not liable in respect of any obligations of the Lehman Entities unless Barclays has expressly assumed such obligations.

- In general, Barclays has assumed liability in respect of the Business only if such liabilities are incurred by Barclays and arise after the Closing.

- During the period of 60 days following the Closing, Barclays also has the right to assume or reject contracts that are related to the assets that it has purchased from the Lehman Entities

AM002289

- The table below indicates the status of assets, products, agreements businesses and infrastructure after the Closing.

| | **IN (Purchased Assets)** | **OUT (Excluded Assets)** | **Barclays may assume or reject for 60 days following Closing** |
|---|---|---|---|
| **Assets:** | | | |
| Corporate Loans | | X | |
| OTC Derivatives (all underlyings) | | X | |
| Exchange Traded Derivatives (all underlyings) | X | | |
| Any property that may be held in order to secure obligations under Exchange Traded Derivatives | X | | |
| CDOs, CLOs, similar asset-backed securities | | X | |
| Securities owned by Lehman Brothers Inc. and transferred to Barclays under the "Barclays Repurchase Agreement" | X | | |
| Securities and other assets held in Lehman Brothers Inc.'s "clearance boxes" at the time of Closing | X | | X |
| TBA Mortgage Backed Securities | | X | |
| Intercompany payables and receivables (among Lehman entities) | | X | |
| Margining and collateral deposits that secure the obligations of a customer whose customer account is transferred to Barclays | X | | |
| Lehman Brothers Holdings Inc.'s and Lehman Brothers Inc.'s cash and bank deposits | | X | |
| Commercial Real Estate Investments (other than transferred real estate) | | X | |
| Equity of: Lehman Brothers Canada Inc.; Lehman Brothers Sudamerica SA; Lehman Brothers Uruguay SA; Townsend Analytics Ltd | X | | |

2

AM002290

| | | | |
|---|:---:|:---:|:---:|
| Equity of Lehman Commercial Paper, Inc. | | X | |
| Equity of Eagle Energy Management, LLC and Eagle Energy Partners I, L.P. | | X | |
| Private Equity Investments | | X | |
| Hedge Fund Investments | | X | |
| Insurance policies | | X | |
| Rights to Lehman indices and supporting analytics | X | | |
| The mark "LEHMAN" and "LEHMAN BROTHERS" throughout the world and all other marks containing the name "LEHMAN" | X | | |
| The internet domain "www.lehman.com" | X | | |
| US and Canada Private Investment Management ("PIM") assets | X | | |
| **Products:** | | | |
| All products forming part of US and Canada investment banking and capital markets businesses | X | | |
| **Agreements/Accounts:** | | | |
| Prime Brokerage Accounts | X | | |
| Client Accounts | X | | |
| Repo Agreements | | X | |
| Securities Lending Agreements | | X | |
| ISDA Master Agreements or other master swap agreements | | X | |
| Mandate Letters; Engagement Letters | | | X |
| Bridge Loans, Credit Facility Commitments | | X | |
| **Businesses:** | | | |
| All US and Canada investment banking and capital markets businesses | X | | |
| Business of Lehman Commercial Paper, Inc. | | X | |
| Business of Eagle Energy Management, LLC and Eagle | | X | |

3

AM002291

| | | | |
|---|---|---|---|
| Energy Partners 1, L.P. | | | |
| US and Canada Investment Management business (other than PIM) | | X | |
| US and Canada PIM business | X | | |
| US and Canada Prime Brokerage business | X | | |
| US and Canada Commodities business | X | | |
| Futures Commission Merchant business of Lehman Brothers Inc. | X | | |
| US and Canada FX business | X | | |
| Mortgage Servicing business for GNMA guaranteed securities | | X | |
| **Infrastructure:** | | | |
| Government Securities Trading and mortgage-backed trading operations | X | | |
| Repo Agreement operations and securities lending operations | X | | |
| To the extent used in, related to or necessary for the Business, Intellectual Property Rights, software and technology embodied in or arising from the assets purchased by Barclays | X | | |
| Transition services provided by Lehman Brothers Holding Inc. or its affiliates to the Business. | X | | |

4

AM002292

# BCI EXHIBIT

# 330

**From:**  Jones, Craig L

**Sent:**  Wed, 01 Oct 2008 23:48:17 GMT

**To:**  Vecchio, Laura M

**CC:**  Dziemian, Daniel; Ciaravino, Vincent: Markets (NYK); Maher, Michael R; Willoughby, Scott

**Subject:** OCC Treasury Redemption

---

Laura - tomorrow morning there is a Treasury redemption at the OCC.  We would like SIPC to instruct the OCC to release the Treasuries back to Chase and then have SIPC advise Chase to pay the redemption proceeds to Barclays' account at BNY.  The instructions should be as follows:

**OCC Instructions**
Bill Eineke (OCC) - please release the redeeming T-Bill cusip 912795G88 maturing on 10/02/08 and Face Value of $19,000,000 back from the LYE account at Chase to Chase's redemption account XRD.

**Chase Instructions**:
Mike Mego (Chase) - please take in from the OCC LYE account the redeeming T-Bill cusip 912795G88 maturing on 10/02/08 and Face Value of $19,000,000 and wire the proceeds from XRD to the Barclays OCC account at the Bank of New York.  The wire instructions for the BNY account are as follows:

Pay: $19,000,000
Bank of New York
ABA 021000018
Barclays Capital LE OCC Account
Acct:890-0692-898

Let me know if you have any questions.
Thanks,
Craig

# BCI EXHIBIT

# 331

**To:**       Kiplok, Christopher[Kiplok@HughesHubbard.COM]
**From:**     Boscarino, Diane  M
**Sent:**     Thur 10/2/2008 3:14:50 PM
**Importance:** Low
**Sensitivity:** None
**Subject:**  James W
**Categories:** urn:content-classes:message

**Document.pdf**

I resent this as a pdf just in case.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this e-mail, do not duplicate or redistribute it by any means. Please delete it and any attachments and notify the sender that you have received it in error. Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Barclays. Any views or opinions presented are solely those of the author and do not necessarily represent those of Barclays. This e-mail is subject to terms available at the following link: www.barcap.com/emaildisclaimer. By messaging with Barclays you consent to the foregoing. Barclays Capital is the investment banking division of Barclays Bank PLC, a company registered in England (number 1026167) with its registered office at 1 Churchill Place, London, E14 5HP. This email may relate to or be sent from other members of the Barclays Group
--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

HHR_00009084

James W. Giddens, as Trustee for the SIPA liquidation of Lehman Brothers, Inc., authorizes the transfer of cash identified below in accordance with the wire instructions below on an expedited, priority basis as part of the transfer of customer accounts to Barclays.

Instructions:
Please take in from the OCC LYE account the redeeming T-Bill cusip 912795G88 maturing on 10/02/08 and Face Value of $19,000,000 and wire the proceeds from XRD to the Barclays OCC account at the Bank of New York. The wire instructions for the BNY account are as follows:

Pay: $19,000,000
Bank of New York
ABA 021000018
Barclays Capital LE OCC Account
Acct: 890-0692-898

October 2, 2008

Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6810
FAX (212) 422-4726

Counsel to the Trustee

Confidential

# BCI EXHIBIT

# 332

**From:** Tully, Conor
**Sent:** Mon, 06 Oct 2008 19:13:33 GMT
**To:** dfleming@lehman.com; cljones@lehman.com; tamir.shafer@lehman.com
**CC:** Fox, William J.; Star, Samuel; Kream, Ben
**Subject:** FW: Lehman - JPM Chase Transactions



Gentlemen,
I tried to summarize the discussion regarding the JP Morgan Chase collateral position as best I could based on the discussion we had on Friday. Please let me know if the following is accurate in your view, understanding that much of our discussion on Friday was based on incomplete and missing information. If we could set another call to discuss your comments and/or changes regarding this summary I would appreciate it. Ultimately if we can turn this into an accurate summary of the situation perhaps it could be shared with others so that it will save you retelling the story several more times.

**LBI Repo Transactions**
Close of business Wed Sept 17 – Lehman had a $45 billion repo with the Fed Primary Dealer Credit Facility (PDCF) against collateral with a market value of $49.7 billion
They also had a $15.8 billion overnight repo with Barclays. These were tri-party repos (with Chase in the middle as custodian [collateral and settlement agent]).

Close of business on Thursday the Fed wanted out of the repo and required Barclays to step into the trade. I am not totally clear on how this worked or if Barclays' agreed to this but I believe as part of the Barclays transaction they settled up with the Fed on Friday. (See the attached summary I received from A&M Jim Fogarty's group)
Lehman was also expecting that Barclays would roll the $15.8 billion repo (which they ultimately didn't agree to do).
In summary, at the end of the day on Thursday, Lehman expected to have a $60.8 billion repo with Barclays.

As an aside, this whole deal was developed on Wednesday night and was supposed to execute COB Thursday.

It was an incredible amount of work to simply reconcile and get the "trade to clear" that day.
The Fed and DTC clearing houses were kept open until midnight (reportedly and unprecedented event).
Chase stayed until 2:00 am to try and balance the trade. Currently Lehman does not have the detail necessary to reconcile everything. We understand access and cooperation may be starting to occur (but need to better understand this and what information is still needed).

On Thursday night the $15.8 billion was booked by Chase as a "HIC (Hold in Custody) Repo" between Barclays and Lehman, with a "fail on the cash"
On Friday morning Chase's top priority was to reconcile this trade and they contacted Barclays who DK'ed the transaction.
Discussed $7 billion of collateral "missing" but I believe this just means everything didn't clear so Chase ended up doing a $7.0 billion "Box Loan"
There were also issues with "collateral getting stuck" at DTC. The guesstimated amount is $800 million. On the HIC trade there was no haircut, so basically the loan was equal to the stated market value of the collateral.

In summary, it appears that once all the LBI reconciliations shake out, Chase will be short collateral but no one really knows how much because the information to figure that out apparently hasn't been provided by Chase or by DTC. We should however be able to venture a guess since Lehman should know what collateral it posted against the repos, however there does appear to be certain unknowns (such as how much collateral was stuck at DTC).

The estimated $23 billion negative balance in the Chase LBI account seems to be the $15.8 and the $7.0 billion above. These amounts are in theory covered by $7.0 billion of box positions and the $15.8 billion in collateral

related to the repo. Since there was no haircut on the $15.8 billion, it is reasonably likely that the value of that collateral is less than the $15.8 billion loan. In addition, if the $800 million amount "stuck at DTC" is correct, Chase would be short that amount as well. It is hard to tell how short Chase will end up but it is certainly largely dependant on the quality of the collateral pledged. We had a brief discussion of the quality of collateral pledged under the repos and it seems that some of it was far from high quality securities. We briefly discussed an amount (I think it was $5 billion) was related to Lehman commercial paper (or some other instrument credit linked to Lehman CP). Assuming the actual value of the collateral was $5 billion less than the repo and assuming $0.8 billion of trapped collateral at DTC this implies a MTM loss of $4.2 billion.

In trying to tie this together to the Barclays transaction I noted that the attached summary reflects a line called "Extinguish Liability to Fed" $38.0 billion. Is this the $45 billion Fed repo, reduced for the $7 billion box loan?

#### Now the LBHI part of the story....

After the Bear Sterns crisis, Chase had started to request protections to cover themselves for overnight exposure as clearing agent.
It first started with LCPI pledging a collateral package of about $5 billion. I believe the collateral was MBS assets that were owned by Lehman. They packaged them into a securitization and pledged them to Chase. Chase regularly asked for more collateral coverage and Lehman agreed, ultimately getting the collateral package up to $7 or 8 billion.
Chase also didn't like the fact that LCPI was the pledging counterparty and wanted the pledge from LBHI. This presented internal problems and challenges from an administrative perspective. But Lehman agreed and "made it happen" by having LCPI sell the loans to LBHI.
LBHI in turn pledged the collateral to back stop the Chase's LBI clearing risk.
Chase continued to push for more collateral. At some point (I think relatively close to the filing date and I believe well within 90 days) $1.7 billion of "money funds" were pledged. The day before the filing they pledged another $5.0 billion of cash.

In total it seems that about $15 billion of LBHI cash and cash equivalents were being held by Chase. If you add up the numbers mentioned above $8.0, $1.7 and $5.0 billion mentioned above you get $14.7 billion. Perhaps there was other collateral that Chase had such as the cash balances of certain Lehman entities.

Assuming that Chase has $15 billion of collateral and the MTM reduction of the collateral pledged under the repos was a loss of $5 billion, it appears that Chase could owe Lehman in the area of $10 billion net-net but still need to figure this out with more accuracy once Chase and DTC start sharing information.

**Conor P. Tully**
Managing Director
F T I
212.841.9335 direct
917.689.2593 mobile
212.841.9350 fax
conor.tully@fticonsulting.com

3 Times Square
11th Floor
New York, NY 10036
www.fticonsulting.com

Confidentiality Notice:
This email and any attachments may be confidential and protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the e-mail or any attachment is prohibited. If you have received this email in error, please notify us immediately by replying to the sender and then delete this copy and the reply from your system. Thank you for your cooperation.

Highly Confidential

**Lehman Holdings / Barclays Transaction**
*(Dollars in Billions)*

| Assets | | Liabilities | |
|---|---|---|---|
| Repo Assets | $ 38.07 | Extinguish Liability to Fed | $ 38.00 |
| Negotiated Mark Haircut | 5.00 | | |
| Assets Transferred Under Repo ("Stale" Marks) | 43.07 | | |
| | | Cash Purchased Price | |
| Unencumbered Box | 1.90 | (Building, Data Centers, Business) | 1.79 |
| Securities (15-c-3-3) | 0.80 | Assumed Cure | 2.25 |
| Buildings and Data Centers | 1.54 | Compensation Liability | 2.00 |
| | | Net "Book" Loss | 3.27 |
| | $ 47.31 | | $ 47.31 |

(a)  Assets Transferred Under Repo

| | Amount | Footnote |
|---|---|---|
| Fed Settled | $ 28.68 | A |
| DTC Settled | 14.39 | |
| | $ 43.07 | |

(b)  Unencumbered Box

| | Amount | | Footnote |
|---|---|---|---|
| | From | To | |
| Friday, 9/19 Transfers | $ 1.04 | $ 1.04 | B |
| Monday, 9/29 Transfers | 0.27 | 0.27 | C |
| To Move | 0.60 | 0.98 | D |
| | $ 1.90 | $ 2.29 | |

Highly Confidential

## Footnote A
### Securities Transferred Under Barclay's Repo Agreement

| Type | Amount |
|------|--------|
| [Source File: Barclays Financing Collateral List (Barc Ops 09-20-2008)] | |
| *Fed Settled* | |
| Agencies | $  9,446,640,784 |
| US Agency Pool | 9,189,607,782 |
| Treasuries | 5,405,505,432 |
| US Agency CMO | 4,634,565,146 |
| Sovereigns | 33,112 |
| US ABS Home Eq | 32,006 |
| Unknown Type | 1,054,831 |
| Subtotal - Fed Settled | 28,677,439,093 |
| | |
| *DTC Settled* | |
| COMN | 5,804,587,905 |
| CBND | 1,955,954,220 |
| CMO | 1,855,038,772 |
| ABS | 1,572,677,526 |
| ETF | 1,515,810,702 |
| CONV | 993,202,017 |
| ADR | 520,499,585 |
| MUBD | 433,648,790 |
| WRNT | 214,774,651 |
| MTN | 175,108,925 |
| CVPF | 98,545,761 |
| PRFD | 63,944,932 |
| FICO | 50,100,172 |
| MFND | 48,083,940 |
| CD | 33,963,125 |
| CP | 29,326,108 |
| GTC | 15,300,255 |
| FNST | 14,509,692 |
| FNMS | 12,083,704 |
| FIPR | 9,608,935 |
| UIT | 3,544,951 |
| IABD | 1,899,564 |
| ZCB | 1,063,356 |
| FMRM | 1,009,588 |
| FNRM | 991,293 |
| FNZC | 824,467 |
| FNAR | 399,415 |
| FHOR | 274,431 |
| EQTY | 174,229 |
| NOTE | 6,444 |
| TINT | 974 |
| CERT | - |
| Less Friday, 9/19 Transfers | (1,035,356,662) |
| Subtotal - DTC Settled | 14,391,601,770 |
| | |
| **Total - Transferred Under Repo Agreement** | **$ 43,069,040,864** |

Highly Confidential

**Footnote B**
**Unencumbered Box**

| Type | Amount |
|---|---|
| [Source File: Friday transfers BONY records agreed] | |
| *Friday Transfers* | |
| WARRANT | $    311,922,224 |
| COMMON | 257,334,878 |
| CBOND | 164,023,038 |
| MUNI | 112,935,324 |
| MEDNOTE | 49,981,187 |
| ETF | 31,519,237 |
| CBONDCNV | 29,174,714 |
| MUNIFLT | 23,210,000 |
| ADR | 14,165,248 |
| ASSETBK | 10,300,000 |
| PREFERED | 7,144,166 |
| CMO | 5,773,799 |
| BRADYSF | 2,552,430 |
| REIT | 2,193,875 |
| CEF | 1,991,804 |
| CFGN | 1,882,315 |
| MLP | 1,448,810 |
| MUNIGAIN | 961,927 |
| MUNICIPL | 872,459 |
| GOVAGNCY | 486,818 |
| UNTWOCMP | 233,606 |
| EUROFX | 214,534 |
| MUNIRIB | 75,000 |
| USTRES | 47,964 |
| GDR | 5,225 |
| PREFCONV | 4,400 |
| RIGHT | - |
| RTRUST | - |
| UNITSTK | - |
| Unknown Type | 4,901,679 |
| Total - Friday Transfers | $    1,035,356,662 |

Footnote C
Source: 636 collateral
Monday Transfers

Highly Confidential

| CUSIP | Sec Desc | S&P | MOODY | QUANTITY | LEHMAN MKT VAL |
|-------|----------|-----|-------|----------|----------------|
| | | CC | N/R | 19,650,000.00 | 13,830,002.95 |
| | | AAA | NR | 25,000.00 | 7,884.74 |
| | | NR | BAA2 | 4,750,000.00 | 3,697,152.58 |
| | | BB | NR | 25,000.00 | 16,104.19 |
| | | N/R | N/R | 4,450,000.00 | 107,912.50 |
| | | N/R | N/R | 8.5 | 8.69 |
| | | N/R | N/R | 25,000,000.00 | 8,046,904.29 |
| | | N/R | N/R | 11,027,410.00 | 3,588,954.88 |
| | | AAA | A3 | 198,973,015.00 | 1,941,753.56 |
| | | AAA | AAA | 165,000,000.00 | 33,995,782.65 |
| | | AAA | NR | 300,000.00 | 289,624.20 |
| | | AAA | AAA | 75,000.00 | 67,473.33 |
| | | AAA | NR | 7,889,000.00 | 7,581,145.36 |
| | | AAA | NR | 1,025,000.00 | 868,817.85 |
| | | AAA | AAA | 130,000.00 | 127,474.64 |
| | | AAA | N/R | 150,000.00 | 147,425.37 |
| | | AAA | NR | 60,000.00 | 54,104.71 |
| | | AAA | AAA | 120,000.00 | 110,597.45 |
| | | AAA | NR | 2,725,000.00 | 2,283,351.07 |
| | | N/R | N/R | 35,000,000.00 | 0.19 |
| | | N/R | N/R | 48,100,000.00 | 13,924,049.08 |
| | | AAA | AAA | 50,000.00 | 48,464.69 |
| | | AAA | AAA | 60,000,000.00 | 52,983,104.16 |
| | | NR | AAA | 25,208,000.00 | 21,125,853.24 |
| | | AAA | NR | 1,000.00 | 106.03 |
| | | AAA | AAA | 5,550,000.00 | 5,284,712.57 |
| | | BBB | BAA2 | 240,000.00 | 41,171.47 |
| | | AAA | AAA | 18,500,000.00 | 8,839,606.08 |
| | | AAA | AAA | 187,500.00 | 184,695.43 |
| | | AAA | NR | 30,000.00 | 27,480.11 |
| | | AAA | NR | 300,000.00 | 256,660.79 |
| | | N/R | AAA | 30,000.00 | 27,767.37 |
| | | AAA | AAA | 10,000,000.00 | 8,093,474.26 |
| | | AAA | AAA | 95,000,000.00 | 61,998,287.87 |
| | | CC | NR | 20,210,000.00 | 16,122,367.48 |
| | | NR | N/R | 5,000,000.00 | 1,971.46 |
| | | AAA | AAA | 4,858,411.00 | 238,722.24 |
| | | AAA | AAA | 189,391.00 | 27,587.16 |
| | | N/R | N/R | 73,049,000.00 | 1.01 |
| | | N/R | N/R | 4,500,000.00 | 0.00 |
| | | N/R | N/R | 34,750,000.00 | 0.31 |
| | | N/R | N/R | 1,500,000.00 | 15 |
| | | AAA | AAA | 150,000.00 | 145,258.43 |
| | | AAA | AAA | 4,000,000.00 | 3,759,550.07 |
| | | AAA | AAA | 30,000.00 | 27,986.49 |
| | | | | | 269,921,368.00 |

Chilled Securities 14,270,683.82

Securities delivered 255,650,684.18

Highly Confidential

**Footnote D**
Unencumbered Box

| Type | Amount |
|------|--------|
| **(1) [Source File: DTC 074 and 636 AVAILABLE COLL]** | |
| *Positions Not With No Memo Seg* | |
| MUNIFLT | $ 119,228,315.95 |
| CBONDCNV | 22,766,609 |
| COMMON | 15,116,859 |
| CBOND | 3,360,284 |
| MUNICIPL | 2,854,427 |
| CFGN | 1,329,599 |
| PREFCONV | 474 |
| MLP | 300 |
| ADR | 176 |
| CLASS | 0 |
| Unknown Type | 71,175,774 |
| Subtotal - Positions Not With No Memo Seg | 235,832,817 |
| | |
| *Positions With Memo Seg* | |
| COMMON | 84,943,728 |
| MUNIFLT | 48,901,119 |
| ETF | 28,705,112 |
| CBOND | 8,047,857 |
| ADR | 4,180,147 |
| PREFCONV | 1,126,793 |
| UNTCORPC | 401,452 |
| PREFERED | 25,172 |
| CBONDCNV | 22,498 |
| MLP | 7,542 |
| WARRANT | 1,958 |
| REIT | 89 |
| CLASS | 1 |
| PREFCUMU | - |
| RIGHT | - |
| Unknown Type | 572,622,425 |
| Subtotal - Positions With Memo Seg | 748,985,893 |
| | |
| Subtotal - Positions | $    984,818,710 |

# BCI EXHIBIT

# 333

**From:**   Romain, Gary: Finance (LDN)

**Sent:**   Tue, 21 Oct 2008 12 07 41 GMT

**To:**   Clackson, Patrick: Finance (LDN), Walker, James: Finance (NYK); Morton, Marcus: Finance (NYK); Nash, Phillip: Finance (NYK); Utley, Charles: Finance (NYK); Weidler, Chris: Finance (LDN); Gavenda, TJ: Finance (NYK); Billek, Mitchell: Finance (NYK); Redman, Paul: Finance (LDN); Bowell, Lee: Finance (LDN)

**CC:**   King, Stephen: Markets (NYK)

**Subject:** Balance sheet update

A balance sheet update is included below. Apologies if this duplicates information received from elsewhere.

DTC collateral

The transfers a week after closing date were understood to have cleared the box of unencumbered assets. This is largely true, although approx 30 securities have been identified for further transfer (MV approx $90m). Getting these assets is the first priority.

It is now thought that certain assets left in the box flagged as encumbered may be available for transfer with some effort from Ops and Legal with the SIPC trustee. Looking at this population (approx $700m) line by line is the second priority.

OCC collateral

REDACTED – PRIVILEGED

Futures customer balances

Lee is making progress and there is strong engagement from the business, legal, ops and IT. It is nonetheless included at a conservative $300m despite large potential upside. An update is attached:

<<..>>
PIM customer balances

Potential $330m upside not reflected since not agreed by the SEC - any update TJ?

Latest balance sheet

<<..>>



HIGHLY CONFIDENTIAL

BCI-EX-(S)-00109996

Regards,

Gary

Gary Romain
Director
Technical Accounting and Private Equity Finance

**Finance**
Barclays Capital | 10 The South Colonnade | Canary Wharf | London | E14 4PU
Tel: +44 (0)20 77734782  Mob: +44 (0)7733 005889
gary.romain@barclayscapital.com

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00109997

Long Island - Acquisition Summary [draft]

| | $b | $b | Notes | Entity split BCI $b | LLCs $b | Notes |
|---|---|---|---|---|---|---|
| Initial inventory - PCG mid | | 43.16 | | | | |
| Initial inventory - valuation adjustment | | (0.88) | | | | |
| JPM inventory | | 4.30 | (3) | | | |
| Bid-offer adjustment | | (0.74) | | | | |
| Inventory | | 46.04 | | 44.54 | 1.50 | (2) |
| Exchange traded options | | 0.57 | | 0.57 | - | |
| 15c3 asset | | 0.77 | (9) | 0.77 | - | |
| PIM customer balances | | - | (5), (11) | - | - | |
| Futures customer balances | | 0.30 | (10), (11) | 0.30 | - | |
| DTC clearance box | | 0.09 | (4) | 0.09 | - | |
| OCC clearance box | | - | (12) | - | - | |
| Cash receivable from JPM | | 1.25 | | 1.25 | - | |
| **Financial Assets** | | 49.02 | | 47.52 | 1.50 | |
| Subsidiaries (3 overseas + Townsend) | | 0.01 | (7) | - | 0.01 | |
| 7th Avenue | | 0.96 | | - | 0.96 | |
| Data Centres | | 0.33 | | - | 0.33 | |
| Intangible assets/operating leases | | 0.03 | (1) | - | 0.03 | |
| Prepayments/deposits | | 0.08 | (6) | - | 0.08 | |
| Fixtures, fittings, software, etc | | 0.77 | (6) | - | 0.77 | |
| **Total Assets** | | 51.20 | | 47.52 | 3.67 | |
| LBI repo liability | 44.70 | | | 44.70 | - | |
| Cure payment | 0.15 | | | 0.15 | - | |
| Bonus - cash element | 1.70 | | | 1.70 | - | |
| **Total Liabilities** | | 46.55 | | 46.55 | - | |
| **Net assets** | | 4.65 | | 0.97 | 3.67 | |
| Credit to equity - stock element of bonus | | 0.30 | | 0.30 | - | |
| Consideration: | | | | | | |
| Assets | 0.25 | | | | | |
| 7th Avenue | 0.96 | | | | | |
| Data Centres | 0.33 | | | | | |
| Stamp Duty | 0.03 | | | | | |
| Acquisition costs | 0.02 | | (8) | | | |
| **Total consideration** | | 1.59 | | 0.11 | 1.47 | |
| **Negative goodwill** | | 2.76 | | | | |
| FX rate at close | | 1.84358 | | | | |
| **Sterling equivalent** | | 1.50 | | | | |

Notes:

(1) E&Y are reviewing for intangible assets - the current number represents only exchange memberships.
(2) BCI vs LLC split is under discussion.
(3) Inventory receivable from JPM (both population and valuation) is uncertain. investigated by the business, Ops and Legal.
(5) Potential range of $0m to $330m - SEC agreement is required before amounts can be released.
(6) 50% of software assets/prepayments are included as an estimate of FV to Barclays. This will be trued-up as individual systems are assessed for suitability.
(7) Excluding fixed assets to avoid double-counting.
(8) Conservative estimate.
(9) Timing of receipt is uncertain and subject to SEC approval.
(10) Estimated receivable - timing and eventual amount is uncertain. Significant upside above $300m is possible.
(11) These are net amounts - once finalised they will be grossed up to reflect the relevant assets, receivables and payables.
(12) The status of excess margin in the OCC clearance box (approx $200m cash with BoNY, $300m treasuries with JPM) is under investigation

Subsequent to closing, retranslation of the net assets acquired is recognised in equity (CTR). Between the close date and 30 September, the resulting increase in equity at a consolidated level was approximately GBP85m.

**From:**    Bowell, Lee: Finance (LDN)
**Sent:**    Tue, 21 Oct 2008 00:06:39 GMT
**To:**      Billek, Mitchell: Finance (NYK); Gavenda, TJ: Finance (NYK)
**CC:**      Weidler, Chris: Finance (LDN); Redman, Paul: Finance (LDN); Graham, Scott: Finance (NYK); Redman, Paul: Finance (LDN); Romain, Gary: Finance (LDN)
**Subject:** RE: Futures

---

Gents

Today's update is as follows:
A balance sheet for CoB 19th Sept has been prepared. However, there are still approx net $700m of customer balances to be reviewed to determine whether these are attributable to Barcap. This review is not as straight forward due to some customer accounts containing both FX and Futures activity. This should be completed by Wednesday and will give us an initial figure as at 19th Sept for Barcap acquired assets.

There will still be a couple of significant items that require further investigation to substantiate the accuracy of the balance and ensure the correct allocation to Barcap. Cash breaks and trade errors are significant problems due to the large number of items/breaks caused by the system and operational issues over the last month. Ops have been working through these but they are still not all cleared. We will start working through with Ops tomorrow to see which accounts these have cleared against, but we do not know how long it will take to get materially comfortable in these areas. My view is that these are going to be the determining factors in how long it takes to complete the Futures acquisition balance sheet.

Other items to be completed in verifying the accuracy of the balance sheet are: (1) Price testing of Fund holdings; (2) Review of non-cash collateral to identify and excess/shortfall between that returnable to clients and held by Exchanges/Brokers; and (3) Product Control to calculated the accrual figures for all fees as at 19th Sept.

Also, once we have a net assets figure for 19th Sept, then we will compare to the estimates FO are producing based on current dates and investigate any significant variances.

A couple of meetings today with the business to discuss progress to date and the current plan. They are on-board with our approach and will be assisting with any required escalation with other areas (e.g IT, Ops, etc). FO and Legal also need to get a more definitive opinion on the collectibility of balances with Foreign Brokers and Lehman affiliates.

From tomorrow I will be producing a daily status report listing the items that are still to be closed out, why still outstanding, owner, expected completion date, etc. This report will be sent to the relevant contacts in FO, Finance and Ops.

Any questions, let me know.


Thanks
Lee

---

From: Bowell, Lee: Finance (LDN)
Sent: 18 October 2008 16:03

HIGHLY CONFIDENTIAL                                    BCI-EX-(S)-00109999

To: Billek, Mitchell: Finance (NYK); Gavenda, TJ: Finance (NYK)
Cc: Weidler, Chris: Finance (LDN); Redman, Paul: Finance (LDN); Graham, Scott: Finance
(NYK)
Subject: RE: Futures

See responses below. Going forward I will provide a few bullet points each day on progress. I
will also arrange a meeting/call on Tuesday as I hope to have a more complete picture and idea
of timescale then.

From: Billek, Mitchell: Finance (NYK)
Sent: 17 October 2008 17:14
To: Bowell, Lee: Finance (LDN); Gavenda, TJ: Finance (NYK)
Cc: Weidler, Chris: Finance (LDN); Redman, Paul: Finance (LDN); Graham, Scott: Finance
(NYK)
Subject: RE: Futures

Lee - Thanks for all your work researching this. Some questions and/or requests for clarification:

- You mention the business usually carries 800m of assets - that is net assets I assume?
Correct
- Minor question - if the business is now at a credit of 15m, the expected adjustment should read
815m?
The 15 goes in the correct direction so it is 800 - 15 = 785.
- Do you know the amount of the net interco receivables - assuming we would have the right of
offset - or gross if not?
The current net estimate is in the region of 300m, but I cannot provide much comfort on the
accuracy of this figure at the moment. I'm meeting with legal on Monday so should have more
clarity about our exposure and recoverability then.
- I see you copied Martin Kelly - has he been actively involved with Tennyson in reconciling
this? If not, we may want to follow up the note with a request for a meeting as this seems to be
our riskiest outstanding item.
Just included him as relates to work under his area. I will invite him to the briefing meeting
(mentioned above) on Tuesday.
- Who will be reviewing the balance sheet to determine which positions were and were not
acquired by Barcap?
We are currently working through this by discussions with Ops, legal, Product Control etc. I now
have a full TB for the 19th which we have started allocating to Barcap. Likely to be another
couple of days until we have a reasonably good split. I have started to document how we
concluded the split for each balance.
- Do you know what the FO estimate of net assets was for the acquisition date (i.e. to compare to
the 300m estimate in the draft opening balance sheet)?
The FO estimate currently stands at $840m as at 15th October. Once we have some firmer
figures for 19th Sept then we will compare and follow up to understand any differences.
- To estimate the net assets at acquisition, would it be a reasonable approach to get a p/l estimate
for the last 8 days and add that to the 9/30 net assets? Or would that be clouded by the positions
taken on by legacy Barclays post 9/22 to prop up the legacy Lehman desk?
There is so much noise around the 30th due to the Operational breaks and the balances not being

HIGHLY CONFIDENTIAL

correctly segregated in the system, that I'm not keen on this approach. The P&L for this business is not going to be massive and would not expected it to be that volatile so the FO figure for the 15th Oct is probably the best number we have currently.

From: Bowell, Lee: Finance (LDN)
Sent: Friday, October 17, 2008 4:13 PM
To: Gavenda, TJ: Finance (NYK)
Cc: Weidler, Chris: Finance (LDN); Romain, Gary: Finance (LDN); Redman, Paul: Finance (LDN); Duncan, Stuart: Finance (LDN); Tricarico, William: Finance (NYK); Tennyson, Peter A; Kelly, Martin; Graham, Scott: Finance (NYK); Billek, Mitchell: Finance (NYK); Stucchio, Anthony
Subject: Futures

TJ

As discussed with Paul, please find below a summary of the current situation with respect to the Future Customer balances.

Please let me know if you have any questions on this.

Thanks
Lee


Background
Barclays Capital took on the Futures Customer business from 22nd Sept, which including taking on all balances related to client activity.
This business was controlled in aggregate with the Futures Proprietary trading and FX business in a single system.
The initial focus on 22nd Sept was maintaining client service which led to the system being used before the businesses had been segregated and the balances split.
Lehman did provide excess cash to this business to ensure there was always sufficient cash to meet margin calls etc. The business usually carried at least $800m of assets in addition to the customer liabilities, however, this figure fluctuated daily.
The monitoring of excess / net assets was performed daily by calculating total assets and deducting liabilities. The accuracy of this number is therefore dependent on all the balances making up the net assets being correct.
Before this week, no attempt has yet been made at producing a balance sheet as at 19th Sept splitting the Barclays acquired net assets.
At 30th Sep, the Lehman Financial Controllers attempted to identify the Barclays related net assets, which resulted in an initial net debit of $150m 'suspense' figures in the 30th Sept balance sheet, which has now been reduced to a credit of $15m. Given that the expected acquired net assets should be in excess of $800m, this would require a minimum $785m adjustment to the presented balance sheet at 30 Sept.
The holding figure for the Futures Customer balance in the acquisition balance is $300m. This is a conservative estimate which includes allowances for not recovery of receivables from Lehman affiliates balances held by non-US exchanges in the name of LBI.

HIGHLY CONFIDENTIAL                                        BCI-EX-(S)-00110001

Proposed plan to determine Net Assets Acquired
Financial Control have requested IT load the CoB 19th Sept data in order to attempt to prepare a materially correct balance sheet at acquisition.
A draft balance sheet for the total Lehman's FX and Futures business should be ready COB today.
The balance sheet for CoB 19th Sept to be compared to the running FO estimate of net assets to ensure consistency and that any significant differences can be agreed to actual real world movements subsequent to the 19th Sept.
This will then need to be reviewed, split between Barcap acquired and not, and then substantiated back to supporting documentation to ensure valid balances and assess recoverability based on subsequent evidence.
A review to be performed of any discounting or excluded balances to ensure these can be supported.

Uncertainties around acquired balance sheet
Even though Barclays did not generally acquire intercompany receivables and payables, they did acquire all assets and liabilities related to the Futures business, which we are assuming to include those interco receivables and payables related to clients position at Lehman affiliates acting as brokers.          REDACTED - PRIVILEGED          .
                              REDACTED - PRIVILEGED
The balance sheet has historically been produced at month-end and requires a significant number of manual journals. Some of these journals are produced on system reports which can only be run at month-end. In order to complete a 19th Sept balance sheet then assumptions will need to be made or data collated from other sources.
The allocation of customer accounts between Barcap acquired and not has continually been revised in the 3 weeks since the 22nd Sept. Given that this has been a 'moving target' then I believe this split needs to be re-reviewed to ensure that the current population is correct.

Other issues identified
Currently it appears that the Customer business was not flat FX risk due to a currency mismatch between assets and liabilities. This risk had historically been managed by another part of the Lehman's business. However, since the 22nd Sept this risk has not been managed and as a result will have produced P&L volatility for an amount which is yet to be determined.
Since 22nd Sept, Barclays has met margin calls and settled other balances on behalf of the acquired Lehman business. As at 30th Sept, there were no formal records of these amounts and as such were not identifiable in the prepared 30th Sept balance sheet. Ops now have a record of these, but there are still a large number of breaks to be reconciled.
There are currently a very large number of breaks on reconciliation performed by Ops. Dedicated staff are working through these breaks, however, it could be weeks before the historical number of breaks have been reduced.

**HIGHLY CONFIDENTIAL**                                                    BCI-EX-(S)-00110002

# BCI EXHIBIT

# 334

**From:**   Raisler, Kenneth
**Sent:**   Tue, 21 Oct 2008 20:52:16 GMT
**To:**   Kaplan, Alan: Legal (NYK)
**Subject:** FW: $19M Matured Treasuries

---

REDACTED - PRIVILEGE

_____

Kenneth M. Raisler
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4675
E-mail: raislerk@sullcrom.com

-----Original Message-----
From: wnavin@theocc.com [mailto:wnavin@theocc.com]
Sent: Tuesday, October 21, 2008 4:50 PM
To: Raisler, Kenneth
Subject: $19M Matured Treasuries

Ken:

As you can see from the attached e-mail string, JPMC was holding $19 million of matured Treasuries that had been pledged to OCC by LBI as a clearing fund deposit.  Specimens of the forms used to pledge Treasuries as clearing fund and margin deposits are attached.

Counsel for the Trustee asked us to authorize JPMC to release the deposit to Barclays, and we did so (see letter dated October 9 attached to Jean Cawley's e-mail message of the same date.)  It appears from the correspondence that JPMC intended to release the deposit to Barclays, but we don't know whether they did or not.

We don't have an agreement between LBI and JPMC stating the terms on which the latter agreed to act as a clearing bank for LBI.  For what it's worth, we would have on file an Authorization to Draft acknowledged by JPMC giving OCC the right to draft funds from LBI's account at JPMC, but it's pretty bare-bones.  See attached specimen.

Best regards.

(See attached file: Margin and CF Depository Receipts and Security Agreements.pdf)(See attached file: Authorization to draft plus seg funds

account.doc)

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00139346

William H. Navin
Executive Vice President and General Counsel
The Options Clearing Corporation
312-322-1817
312-322-1836 (fax)
----- Forwarded by William Navin/TheOCC on 10/21/2008 03:35 PM -----

Jean
Cawley/TheOCC

|  |  | To |
| --- | --- | --- |
| 10/21/2008 03:07 PM |  | William Navin/TheOCC@TheOCC |
|  |  | cc |
|  |  | Subject |
|  |  | Fw: LBI Trustee Authorization |

----- Forwarded by Jean Cawley/TheOCC on 10/21/2008 03:06 PM -----

Jean
Cawley/TheOCC

|  |  | To |
| --- | --- | --- |
| 10/09/2008 04:47 PM |  | marcus.c.johnson@jpmchase.com |
|  |  | cc |
|  |  | inaba_gail@jpmorgan.com, <joseph.lodato@barclayscapital.com>, John Fennell/TheOCC@TheOCC, Joe Wegesin/TheOCC@TheOCC, <daniel.dziemian@barclayscapital.com>, "Ciaravino, Vincent: Markets (NYK)" <Vincent.Ciaravino@barclayscapital.com>, "Jones, Craig L" <craig.jones@barclayscapital.com> |
|  |  | Subject |
|  |  | Re: LBI Trustee Authorization (Document link: Jean Cawley) |

HIGHLY CONFIDENTIAL

Marcus,

We have determined the status of the government securities (US T-Bills ████████ referenced in the receipt you had forwarded to OCC earlier this week.  OCC already released its lien on the matured securities and proceeds thereof on October 2, 2008 and authorized the return of the proceeds to Barclays Capital Inc.  Please reference the attached.

Do not hesitate to contact me if you require any additional information from OCC.

Regards,

Jean M. Cawley
SVP-Deputy General Counsel
(312) 322-6269

(See attached file: Release of CF Deposit.pdf)

|  |  |
|---|---|
| marcus.c.johnson@jpmchase.com | |
| | To |
| 10/08/2008 12:35 PM | jcawley@theocc.com |
| | cc |
| | inaba_gail@jpmorgan.com |
| | Subject |
| | Re: LBI Trustee Authorization |

Not yet, but based on our prior call I wanted to get you all of the documents in advance so we have a process in

place to deal with these requests going forward.

jcawley@theocc.com

                                        To
10/08/2008 01:29        marcus.c.johnson@jpmchase.com
PM                                      cc
                inaba_gail@jpmorgan.com
                                Subject
                Re: LBI Trustee Authorization

Is there also a request for the transfer of these securities as well?

marcus.c.johnson@jpmchase.com

10/08/2008 11:45 AM                          To
                jcawley@theocc.com
                                cc
                inaba_gail@jpmorgan.c
                om
                                Subject
                LBI Trustee
                Authorization

**HIGHLY CONFIDENTIAL**

Jean:

FYI, these are the other agreements.


(See attached file: OCC Letters.pdf)


|  |  |
|---|---|
| jcawley@theocc.com | |
| | To |
| 10/08/2008 09:39 AM | marcus.c.johnson@jpmchase.com |
| | cc |
| | inaba_gail@jpmorgan.com |
| | Subject |
| | Re: LBI Trustee Authorization |


Marcus,

We will release our lien once we've ensured Barclays Capital has sufficient clearing fund deposits with us.  We're planning on taking care of that this morning.  Our question is whether we can follow our normal operational processes for releasing our lien on the pledged securities versus the letter and incumbency certificate you've referenced (which we have no problems doing).  We thought it might be simpler to follow existing protocol.  Let me know your thoughts.

Thank you.

Jean


marcus.c.johnson@jpmchase.com


|  |  |
|---|---|
| 10/07/2008 03:48 PM | To |

HIGHLY CONFIDENTIAL

jcawley@theocc.com
                    cc
inaba_gail@jpmorgan.c
om
                Subject
LBI Trustee
Authorization

Jean:

As discussed, I have attached the SIPC instruction below and the OCC agreement locking up the collateral.  Please
send us a letter with the instruction attached and indicate whether we are authorized to move these positions.  We
will also need an incumbency certificate proving the OCC person is authorized to gve us the instruction.  Feel free to
call me if you have questions.

Kind regards,

Marcus C. Johnson
Vice President & Assistant General Counsel
JPMorgan Chase & Co.
One Chase Manhattan Plaza, 25th Flr
New York, New York 10005
Tel: (212) 552-2130
Fax: (212) 383-0249
marcus.c.johnson@jpmchase.com

----- Forwarded by Marcus C Johnson/JPMCHASE on 10/07/2008 04:40 PM -----

        Marcus C
        Johnson/JPMCHASE
                            To
        10/07/2008 10:45    Lika Vaivao/JPMCHASE
        AM                      cc
                            Kathy Hagany/JPMCHASE@JPMCHASE,
                            Gail Inaba/JPMCHASE@JPMCHASE
                            Subject

BCI-EX-(S)-00139351

Fw: LBI Trustee Authorization

Lika:

As discussed, I have attached the SIPC instruction below and the OCC letter that prevents us from moving the collateral without OCC consent.  Please have the OCC send us a letter attaching the SIPC request and saying we can follow it or saying do not follow it.  We wil also need an incumbency certificate proving the OCC person is authorized to gve us the instruction. They can call me if they have questions.


Kind regards,

Marcus C. Johnson
Vice President & Assistant General Counsel
JPMorgan Chase & Co.
One Chase Manhattan Plaza, 25th Flr
New York, New York 10005
Tel: (212) 552-2130
Fax: (212) 383-0249
marcus.c.johnson@jpmchase.com
(See attached file: OCC Letter.pdf)
----- Forwarded by Marcus C Johnson/JPMCHASE on 10/07/2008 10:41 AM -----

| | | |
|---|---|---|
| "Frelinghuysen, Anson" <frelingh@hughesh ubbard.com> | To | "Kiplok, Christopher" <Kiplok@HughesHubbard.COM>, |
| 10/07/2008 10:27 AM | | <jane.buyers-russo@jpmorgan.com>, <michael.a.mego@jpmorgan.com>, <inaba_gail@jpmorgan.com>, <Robert.M.Macallister@chase.com>, <kevin.c.kelley@jpmorgan.com>, <Enid.D.Jean-Claude@chase.com>, <marcus.c.johnson@jpmchase.com> |
| | cc | "Vecchio, Laura M" <LVecchio@lehman.com>, "Greene, Steven" <greenes@HughesHubbard.com>, |

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00139352

"Friedenberg, Ellen"
<frieden@hugheshubbard.com>
Subject
RE: LBI Trustee Authorization

Jane,

Our records indicate that the attached instruction has not yet been acted upon. Please let us know if you need further information or confirm completion.

As ever, you assistance is appreciated.

Thank you.

Anson

-----Original Message-----
From: Kiplok, Christopher
Sent: Thursday, October 02, 2008 3:18 PM
To: jane.buyers-russo@jpmorgan.com; 'michael.a.mego@jpmorgan.com'; inaba_gail@jpmorgan.com;
'Robert.M.Macallister@chase.com'; kevin.c.kelley@jpmorgan.com; 'Enid.D.Jean-Claude@chase.com';
'marcus.c.johnson@jpmchase.com'

Cc: Vecchio, Laura M; Greene, Steven; Friedenberg, Ellen; Frelinghuysen, Anson; Kiplok, Christopher
Subject: LBI Trustee Authorization

Please see the attached, and thanks for your help.

Best regards,

Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6810
FAX (212) 422-4726

*******************************************************************

HIGHLY CONFIDENTIAL

This email and any files transmitted with it may contain privileged or confidential information. Use, disclosure, copying or distribution of this message by anyone other than the intended recipient is strictly prohibited. If you have received this email in error please notify the sender by reply email and destroy all copies of this message in your possession, custody or control.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*(See

attached file: Document.pdf)

------------------------------------------
This communication is for informational purposes only. It is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction. All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice. Any comments or statements made herein do not necessarily reflect those of JPMorgan Chase & Co., its subsidiaries and affiliates.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance

thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

Please refer to http://www.jpmorgan.com/pages/disclosures for disclosures relating to UK legal entities.[attachment "OCC Letter.pdf" deleted by Jean Cawley/TheOCC] [attachment "Document.pdf" deleted by Jean Cawley/TheOCC]

------------------------------------------
This communication is for informational purposes only. It is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction. All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice. Any comments or statements made herein do not necessarily reflect those of JPMorgan Chase & Co., its subsidiaries and affiliates.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance

thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

Please refer to http://www.jpmorgan.com/pages/disclosures for disclosures relating to UK legal entities.[attachment "OCC Letters.pdf" deleted by Jean Cawley/TheOCC]

------------------------------------------
This communication is for informational purposes only. It is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction. All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice. Any

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00139354

comments or statements made herein do not necessarily reflect those of JPMorgan Chase & Co., its subsidiaries and affiliates.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance

thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

Please refer to http://www.jpmorgan.com/pages/disclosures for disclosures relating to UK legal entities.


This e-mail is sent by a law firm and contains information that may
be privileged and confidential. If you are not the intended
recipient, please delete the e-mail and notify us immediately.

**HIGHLY CONFIDENTIAL**

CORPORATION

**THE OPTIONS CLEARING CORPORATION**
**AUTHORIZATION TO DRAFT**
**CLEARING MEMBER ACCOUNTS, INCLUDING**
**CUSTOMER SEGREGATED FUNDS ACCOUNT**

I hereby certify that I am the duly elected and qualified [Assistant] Secretary and keeper of the records and corporate seal of _____, a corporation duly organized, validly existing and in good standing under the laws of the _____; that the following is a true and correct copy of certain resolutions duly adopted:

    ❑  by written unanimous consent dated the _____ day of _____, 20__ and signed by all members of the Board of Directors of said corporation or a committee thereof which by resolution of the Board of Directors or as provided by the by-laws of said corporation has been designated as having the power and authority with respect to the acts noted in these resolutions, or

    ❑  at a meeting of the Board of Directors of said corporation or committee thereof which by resolution of the Board of Directors or as provided by the by-laws of said corporation has been designated as having the power and authority with respect to the acts noted in these resolutions, such meeting being convened and held in accordance with law and the by-laws of said corporation on the _____ day of _____, 20__, and at which meeting a quorum was present and acting throughout;

and that such resolutions are now in full force and effect and are not in contravention of or in conflict with, the by-laws or the charter or the articles of incorporation of said corporation:

**Resolved,** that THE OPTIONS CLEARING CORPORATION, a Delaware corporation (hereinafter called the "Clearing Corporation"), be and hereby is fully empowered and authorized to draw drafts and orders of any type whatsoever upon _____ (hereinafter called the "Bank") payable out of any funds at any time standing to the credit of this corporation in the corporation's account number _____ or any other account(s) with the Bank or otherwise available to this corporation from the Bank, except that the Clearing Corporation be and hereby is authorized to draw drafts and orders on the corporation's "Customer Segregated Funds Account" number _____ only to satisfy obligations in or arising from the corporation's segregated futures account at the Clearing Corporation.

**Further Resolved,** that the Bank be and hereby is authorized (a) to conclusively presume that all drafts and orders presented by the Clearing Corporation are authentic, genuine, properly authorized, in accordance with the rules of the Clearing Corporation and applicable law, and, in the case of drafts and orders on the Customer Segregated Funds Account, to satisfy obligations of the corporation in or arising from the corporation's segregated futures account at the Clearing Corporation and (b) to pay or certify all such drafts and orders drawn to the order of the Clearing Corporation without further inquiry or regard to the purpose or use of such drafts and orders or the proceeds thereof and without further inquiry or regard to the authority of the person or persons drawing such drafts or orders on behalf of the Clearing Corporation. Any such certifications shall have the same force and effect as though such drafts were checks of this corporation;

HIGHLY CONFIDENTIAL

**Further Resolved,** that if any account or accounts of this corporation with the Bank is or are overdrawn as a result of the drafts referred to in these resolutions, this corporation shall be liable to the Bank for payment of the amounts so overdrawn, together with any applicable interest thereon;

**Further Resolved,** that each of the foregoing resolutions shall continue in force until express written notice of its rescission or modification shall have been received by the Clearing Corporation and the Bank at least five business days before the effective date of such rescission or modification.  However, if the authority contained in them should be revoked or terminated by operation of law without such notice, it is resolved and hereby agreed for the purpose of inducing the Clearing Corporation and the Bank to act hereunder, that the Clearing Corporation and the Bank shall be saved harmless by this corporation from any loss suffered or liability incurred by either of them in so acting after such revocation or termination without such notice;

**Further Resolved,** that each of the foregoing resolutions replaces all prior similar resolutions and authorizations; and

**Further Resolved,** that the Secretary, any Assistant Secretary or any other officer of this corporation be and hereby is authorized to certify to the Clearing Corporation and the Bank copies of the foregoing resolutions, and the Clearing Corporation and the Bank are hereby authorized to rely on any such certificate until formally advised by like certificate of any changes therein, and are authorized to rely on any such additional certificates.

**In Witness Whereof,** I have executed this authorization and affixed the seal of this corporation this _____ day of _____, 20__ .


_____

[Assistant Secretary]


(Corporate Seal)


**Bank's Acknowledgment of Receipt**:

By:_____

Its:_____

Date:_____


authorization to draft (corp)

**HIGHLY CONFIDENTIAL**                                                                                      BCI-EX-(S)-00139357

revised 8/2002

CH1 2491200v4

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00139358



# The Options Clearing Corporation

**Clearing Fund
Depository Receipt and Security Agreement**

20____

**To:** _____ **Bank**

Pursuant to Article VIII of the By-laws of The Options Clearing Corporation (hereinafter referred to as the "Corporation"), the undersigned member of the Corporation hereby pledges, assigns, and\transfers to the Corporation and deposits with you as agent for the Corporation, to be held by you on behalf of the Corporation in accordance with and subject to the terms of this Clearing Fund Depository Receipt, the following securities issued or guaranteed by the United States of America.

| Quantity | Description | Current Market Value |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

The undersigned member hereby directs you to hold such securities and any proceeds thereof as agent for and on behalf of the Corporation, segregated from all property which you may from time to time hold in any other capacity. As continuing security for all existing and future indebtedness and obligations of the undersigned member to the Corporation, the undersigned member hereby pledges, assigns, and transfers such securities to the Corporation, and grants to the Corporation a security interest in such securities and any proceeds thereof. Subject to applicable law, the undersigned member hereby authorizes and empowers the Corporation, in its own right or as attorney-in-fact for the undersigned member, to sell or order the sale of all or any part of such securities at any time, without notice to the undersigned member, in any market and at any price deemed by the Corporation to be fair and reasonable in the circumstances, and the undersigned member agrees with you and the Corporation to pay all fees and expenses incident to any such sale. The undersigned member hereby authorizes and directs you to deliver such securities, or the proceeds thereof, to the Corporation or such other party as the Corporation shall designate upon the written order of the Corporation, which order may be given at any time without notice to the undersigned member. Except in connection with a delivery pursuant to the preceding sentence, such securities shall not be released by you, either to the undersigned or to any other party, without the prior written consent of the Corporation, evidenced by its execution of the Endorsement for Release set forth below. Until such securities shall have been delivered or released in accordance herewith, it is understood that the undersigned member shall be entitled to receive all interest paid thereon. The undersigned member agrees to pay your reasonable compensation and further agrees that, in case you shall become involved in litigation on account of this deposit, the undersigned member will, upon demand, pay you in addition to your charges as depositary, your reasonable attorneys' fees, disbursements and expenses in connection with such litigation.

Member: _____

By: _____

_____ 20____

Received the above described securities to be held by us as above directed.

**BANK STAMP**

**FIRM STAMP**

(Authorized Signature)

_____ **Bank**

By: _____
(Authorized Signature or Facsimile)

_____ 20____

### Endorsement for Release

The Corporation hereby authorizes the addressee hereof (Bank) to release the securities described herein or the proceeds thereof to the order of the depositing member.

The Options Clearing Corporation

By: _____
(Authorized Signature)

O0501 (6/90)

HIGHLY CONFIDENTIAL                                                                    BCI-EX-(S)-00139359

# ⬤ The Options Clearing Corporation

**Margin Depository Receipt and Security Agreement**

_____ 200_____

**To:** **Bank**

The undersigned member ("Member") of The Options Clearing Corporation (the "Corporation"), in order to deposit margin with the Corporation in accordance with Chapter VI of the Rules of the Corporation with respect to Member's (check one)

- ❑ proprietary combined market-makers' account
- ❑ non-proprietary combined market-makers' account
- ❑ associated combined market-makers' account
- ❑ proprietary separate market-maker's account
- ❑ non-proprietary separate market-maker's account
- ❑ JBO Participants' account

- ❑ portfolio margining account
- ❑ securities customers' account
- ❑ segregated futures account
- ❑ proprietary futures professional account
- ❑ segregated futures professional account
- ❑ firm account
- ❑ internal non-proprietary XM account

hereby pledges, assigns, and transfers to the Corporation and deposits with you as agent for the Corporation, to be held by you on behalf of the Corporation in accordance with and subject to the terms of this Margin Depository Receipt, the following Government securities and GSE debt securities, as those terms are defined in the By-Laws of the Corporation:

| Quantity | Description | CUSIP | Current Market Value |
|----------|-------------|-------|----------------------|
|          |             |       |                      |

Member hereby directs you to hold such securities and any proceeds thereof as agent for and on behalf of the Corporation segregated from all other property which you may from time to time hold in any other capacity. If this deposit is identified above as made with respect to the "segregated futures account," the "segregated futures professional account," or the "internal non-proprietary XM account," you acknowledge that you have been informed that the securities are those of commodity or commodity option customers and are being held in accordance with the provisions of the Commodity Exchange Act and Regulations of the Commodity Futures Trading Commission requiring the segregation of such securities, and you agree that the securities will be held under an account name clearly indicating that the securities are segregated customer funds. Member hereby pledges, assigns, and transfers such securities to the Corporation, and grants to the Corporation a security interest in such securities and any proceeds thereof for the obligations of the Member to the Corporation as set forth in the By-Laws of the Corporation governing the type of account indicated above. Member hereby authorizes and empowers the Corporation, in its own right or as attorney-in-fact for Member, to sell or order the sale of all or any part of such securities at any time, without notice to Member, in any market and at any price deemed by the Corporation to be fair and reasonable in the circumstances, and Member agrees with you and the Corporation to pay all fees and expenses incident to any such sale. Member hereby authorizes and directs you to deliver such securities, or the proceeds thereof, to the Corporation or such other party as the Corporation shall designate, upon the written order of the Corporation, which order may be given at any time without notice to Member. Except in connection with a delivery pursuant to the preceding sentence, such securities shall not be released by you, either to the undersigned or to any other party, without the prior written consent of the Corporation, evidenced by its execution of the Endorsement for Release set forth below. Until such securities shall have been delivered or released in accordance herewith, it is understood that Member shall be entitled to receive all interest paid thereon. Member agrees to pay your reasonable compensation and further agrees that, in case you shall become involved in litigation on account of this deposit, Member will, upon demand, pay you in addition to your charges as depositary, your reasonable attorneys' fees, disbursements and expenses in connection with such litigation.

Member:

_____

By:

_____
                                  200

Received the above described securities to be held by us as above directed.

**FIRM
STAMP**

_____
(Authorized Signature)

_____ **Bank**

By:_____
        (Authorized Signature or Facsimile)
                                        200

**BANK
STAMP**

**Endorsement for Release**

The Corporation hereby authorizes the addressee hereof (Bank) to release the securities described herein or the proceeds thereof to the order of Member.

The Options Clearing Corporation

By:_____

(Authorized Signature)

CH1 3050598v3

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00139360



THE OPTIONS CLEARING
CORPORATION

October 9, 2008

<u>Via E-Mail</u>

Marcus C. Johnson
Vice President & Assistant General Counsel
JPMorgan Chase & Co.
One Chase Manhattan Plaza, 25th Floor
New York, New York 10005

Re:    **Matured Government Security**

Dear Mr. Johnson:

Reference is made to the attached Clearing Fund Depository Receipt and Security Agreement ("Receipt"). Please note that The Options Clearing Corporation (OCC) has released its security interest in the pledged securities (as described in the Receipt) and has authorized the return of the securities or the proceeds thereof to Barclays Capital, Inc. The person releasing the securities or proceeds thereof on OCC's behalf is an authorized signer for OCC for such purposes.

Very truly yours,

Joseph T. Wegesin
Vice President – Treasury Operations

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00139361

## CERTIFICATE OF INCUMBENCY

The undersigned, Jean M. Cawley, does hereby certify:

1.    That she is a presently serving and duly elected Assistant Secretary of The Options Clearing Corporation, a Delaware corporation ("OCC"), and that she is duly authorized to execute this Incumbency Certificate.

2.    That Joseph T. Wegesin is the presently serving Vice President – Treasury Operations of OCC.

_____
Assistant Secretary

_____
Date

coi.occ

HIGHLY CONFIDENTIAL

JPMC CLEARANCE    Fax:469-221-2576    Apr 7 2008 10:05AM P001/001
SOURCES (773) 247-4141    FAX (773) 247-1515

## The Options Clearing Corporation

**Clearing Fund**
**Depository Receipt and Security Agreement**

April 7                2008

To: JP Morgan Chase                                                Bank

Pursuant to Article VIII of the By-laws of The Options Clearing Corporation (hereinafter referred to as the "Corporation"), the undersigned member of the Corporation hereby pledges, assigns, and transfers to the Corporation and deposits with you as agent for the Corporation, to be held by you on behalf of the Corporation in accordance with and subject to the terms of this Clearing Fund Depository Receipt, the following securities issued or guaranteed by the United States of America.

| Quantity | Description | Current Market Value |
|---|---|---|
| 19,000,000 · 80 | [redacted] 10/02/08 | 1.54 |

The undersigned member hereby directs you to hold such securities and any proceeds thereof as agent for and on behalf of the Corporation, segregated from all property which you may from time to time hold in any other capacity. As continuing security for all existing and future indebtedness and obligations of the undersigned member to the Corporation the undersigned member hereby pledges, assigns, and transfers such securities to the Corporation, and grants to the Corporation a security interest in such securities and any proceeds thereof. Subject to applicable law, the undersigned member hereby authorizes and empowers the Corporation, in its own right or as attorney-in-fact for the undersigned member, to sell or order the sale of all or any part of such securities at any time, without notice to the undersigned member, in any market and at any price deemed by the Corporation to be fair and reasonable in the circumstances, and the undersigned member agrees with you and the Corporation to pay all fees and expenses incident to any such sale. The undersigned member hereby authorizes and directs you to deliver such securities, or the proceeds thereof, to the Corporation or such other party as the Corporation shall designate upon the written order of the Corporation, which order may be given at any time without notice to the undersigned member. Except in connection with a delivery pursuant to the preceding sentence, such securities shall not be released by you, either to the undersigned or to any other party, without the prior written consent of the Corporation, evidenced by its execution of the Endorsement for Release set forth below. Until such securities shall have been delivered or released in accordance herewith, it is understood that the undersigned member shall be entitled to receive all interest paid thereon. The undersigned member agrees to pay your reasonable compensation and further agrees that, in case you shall become involved in litigation on account of this deposit, the undersigned member will, upon demand, pay you in addition to your charges as depositary, your reasonable attorneys' fees, disbursements and expenses in connection with such litigation.

Member:

By: _____    Lehman Brothers, Inc.

OCC

4/07                2008

Received the above described securities to be held by you as above directed

**BANK STAMP**

**FIRM STAMP**    Lehman Brothers, Inc.

_____ Chase                Bank

By: _____ Meyer
(Authorized Signature or Facsimile)

04 / 07 / 20 08

The Corporation hereby authorizes the addressee hereof (Bank) to release the securities described herein or the proceeds thereof to the order of the depositor

JPMORGAN CHASE BANK, N.A.
Broker & Dealer Clearance
Dept. 69199
14201 Dallas Pkwy - 12th Fl.
Dallas, Texas 75254

The Options Clearing Corporation

By: _____
(Authorized Signature)

HIGHLY CONFIDENTIAL

```
************** -COMM. JOURNAL- ****************** DATE OCT-02-2008 ***** TIME 14:07 ********

        MODE = MEMORY TRANSMISSION              START=OCT-02 14:02    END=OCT-02 14:07

        FILE NO.=269

   STN    COMM.    ONE-TOUCH/    STATION NAME/TEL NO.              PAGES     DURATION
   NO.              ABBR NO.

   001     OK        ☎           14694772576                      002/002   00:00:26
   002     OK        ☎           12144516082                      002/002   00:00:37


                                                  -OCC T1                      -

   ******************************* -           - ***** -    312 322 4534- ********
```



# The Options Clearing Corporation

1 N. Wacker Drive, 5th Floor, Chicago, IL 60606

## Facsimile Transmission Cover Page

Date:  _/0/2/08_

**Attention**:    · Dexter Clarke / Kellen Andrews
                  JPMorgan Chase (234/111)

Phone:            (469) 477-1776 / 1705
Fax:              (469) 477-2575/2576


From:             Jackson Coco
                  The Options Clearing Corporation

Phone:            (312) 322-4003
Fax:              (312) 322-4534


Number of pages to follow:  _1_

HIGHLY CONFIDENTIAL                                                BCI-EX-(S)-00139364

# BCI EXHIBIT

# 335

**To:**     Giddens, James W.[giddens@hugheshubbard.com]; Kobak, James
B.[kobak@hugheshubbard.com]; Levine, Carolyn B.[levinec@hugheshubbard.com]; Samuelson,
Chuck[samuelso@hugheshubbard.com]
**Cc:**     Alan.Kaplan@barclayscapital.com[Alan.Kaplan@barclayscapital.com];
raislerk@sullcrom.com[raislerk@sullcrom.com]; wnavin@theocc.com[wnavin@theocc.com];
jcawley@theocc.com[jcawley@theocc.com]; Borrelli, Mark[mborrelli@sidley.com]
**From:**       McDaniel, James R.
**Sent:**       Sun 11/9/2008 12:04:01 PM
**Importance:**     Low
**Sensitivity:**    None
**Subject:**        The Options Clearing Corporation-- Request for Transfer of Deposited Securities
to OCC
**Categories:**     urn:content-classes:message

<u>OCC Trustee letter JPM Comments  1-05-08 (5).DOC</u>
<u>Transfer and Assumption Agreement.pdf</u>
<u>Depository Receipts.pdf</u>

<<OCC Trustee letter JPM Comments 1-05-08 (5).DOC>> <<Transfer and Assumption Agreement.pdf>>
<<Depository Receipts.pdf>>

Ladies and Gentlemen:
The first document on the left above is a request to the Lehman Brothers, Inc. SIPA Trustee to direct
JPMorgan Chase to transfer to OCC certain securities deposited by LBI as collateral for LBI's obligations
in respect of its clearing accounts at OCC.  Those accounts, and the collateral securing those accounts,
were transferred to Barclays Capital Inc. pursuant to the second document attached above.  The
collateral is held by JPMC pursuant to certain "Depository Receipts" that are attached as the third
document above.  OCC's request is set forth in more detail in the first document.


Regards,
Jim McDaniel
Counsel to OCC



--------------------------------------------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we
inform you
that, unless expressly stated otherwise, any U.S. federal tax advice contained in this
communication, including attachments, was not intended or written to be used, and
cannot be
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on
such
taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or
referred
to by other parties in promoting, marketing or recommending any partnership or other
entity,
investment plan or arrangement, then (i) the advice should be construed as written in
connection
with the promotion or marketing by others of the transaction(s) or matter(s) addressed in

Confidential

this
communication and (ii) the taxpayer should seek advice based on the taxpayer's particular
circumstances from an independent tax advisor.

```
*******************************************************************************
***********************
This e-mail is sent by a law firm and may contain information that is
privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any
attachments and notify us
immediately.
*******************************************************************************
***********************
```

Confidential

November 9, 2008

James W. Giddens
SIPA Trustee for Lehman Brothers, Inc.

Mr. Giddens:

I am writing on behalf of The Options Clearing Corporation ("OCC") to request your assistance in facilitating the prompt transfer of $795,295,000 in face value of government securities (the "Deposited Securities") held in accounts at JPMorgan Chase Bank, N.A. ("JPMC") as collateral for OCC under certain "Clearing Fund Depository Receipt and Security Agreements" and "Margin Depository Receipt and Security Agreements" (collectively, the "Depository Receipts") executed by OCC, Lehman Brothers Inc. ("LBI") and JPMC. Copies of the Depository Receipts are enclosed herewith. While in our view not required, OCC asks that you instruct JPMC to transfer the Deposited Securities in accordance with OCC's instructions.

As you are aware, prior to the commencement of LBI's SIPA proceeding, LBI was a clearing member of OCC and carried clearing accounts with OCC (collectively, the "Account") that contained certain positions in options and futures. LBI also maintained Clearing Fund and margin deposits with OCC in order to secure its obligations to OCC in respect of the Accounts. However, on September 19, 2008, as part of the sale to Barclays Capital Inc. ("BCI"), the LBI SIPA Trustee, BCI and OCC entered into a "Transfer and Assumption Agreement" whereby LBI transferred to BCI "all of [LBI's] rights, title, interests, powers, privileges, remedies, obligations and duties in, to, under, and in respect of the Account [i.e., all of the clearing accounts of LBI at OCC] . . . including with respect to: (i) the Clearing Fund deposit; (ii) all margin deposits held by OCC with respect to the Account; (iii) all settlement obligations with regard to transactions in cleared contracts; and (iv) all rights and obligations in respect of exercises of options contracts and assignments of such exercises." Thus, pursuant to the terms of the Transfer and Assumption Agreement, the Deposited Securities, as part of LBI's Clearing Fund deposit and margin deposits, were included in the property transferred to BCI. A copy of the Transfer and Assumption Agreement is enclosed herewith for your convenience.

The Transfer and Assumption Agreement was authorized and approved by the sale order authorizing the sale of certain assets of LBHI and LBI to BCI (the "Sale Order") issued by Judge Peck on September 19, 2008 in the Lehman Brothers Holdings Inc. ("LBHI") bankruptcy cases (08-13555) and further approved and incorporated in the LBI SIPA proceeding by a separate order. Paragraph N of the Sale Order expressly provides that "all securities, cash, collateral and other property transferred to accounts of the Purchaser [BCI] at OCC shall be subject to all rights of OCC therein in accordance with the By-Laws and Rules of OCC including, without limitation, the security interests and setoff rights of OCC with respect thereto." Therefore, pursuant to the Transfer and Assumption Agreement, as authorized and approved by the Sale Order, BCI succeeded to all rights of LBI in the Deposited Securities subject, however, to OCC's rights in the Deposited Securities, which now secure BCI's obligations to OCC.

Under the terms of the Depository Receipts, LBI "authorizes and directs [JPMC] to deliver such securities, or the proceeds thereof, to the [OCC] or such other party as [OCC] shall designate,

CHI 446882?v.7

upon the written order of [OCC], which order may be given at any time without notice to [LBI]."
On Friday, October 31, 2008, OCC advised JPMC that it intended to deliver such a written order
requesting that JPMC deliver approximately $150 million of the Deposited Securities (those
representing Clearing Fund deposits) to OCC.  JPMC informed OCC that, in view of among
other things the fact that the Depository Receipts are prepetition agreements and it is not a party
to the Transfer and Assumption Agreement, it will not transfer the Deposited Securities to OCC
without the consent of the Trustee.

You may recall that in early October the Trustee affirmatively asked JPMC to transfer to BCI
approximately $19 million, representing the proceeds of matured Government securities that had
also been deposited with OCC as collateral by LBI through the use of an OCC Depository
Receipt.  The fact that those securities had matured and these have not does not change the
merits of the situation.  Accordingly, in order to facilitate the transfer of the Deposited Securities
and satisfy JPMC's request, OCC respectfully requests that the Trustee consent to these transfers
as well even though OCC believes that no such consent is needed.  In order to eliminate the need
to come to the Trustee multiple additional times, we are requesting that the Trustee consent to
the delivery to OCC of the entire balance of the Deposited Securities.


Regards,
James R. McDaniel
Counsel to OCC

Barclays Capital Inc. has no objection to the delivery of the Deposited Securities to OCC in
accordance with the instructions of OCC.

Kenneth Raisler
Counsel to Barclays Capital Inc.


I hereby confirm my consent as SIPA Trustee for LBI to the delivery of the Deposited Securities
to OCC in accordance with OCC's instructions.

James W. Giddens, as SIPA Trustee for Lehman Brothers, Inc.

_____    _____    _____

CH1 4468827v.7

Confidential                                                                                          HHR_00001145

# BCI EXHIBIT

# 336

**To:**      antoinette.cleary@bbh.com[antoinette.cleary@bbh.com]
**Cc:**      liz.james@barclayscapital.com[liz.james@barclayscapital.com];
tim.burke@barclayscapital.com[tim.burke@barclayscapital.com]; 'Scarpino, Todd (US - New
York)'[tscarpino@deloitte.com]
**From:**    Frelinghuysen, Anson
**Sent:**    Tue 11/18/2008 1:43:10 AM
**Importance:**    Low
**Sensitivity:**    None
**Subject:**    RE: LBI Trustee Authorization - Name Change (Brown Brothers)
**Categories:**    0x00000000

Liz,

Please put a draft of this letter together and I will review/sign as appropriate.

Thanks,

Anson

_____

**From:** antoinette.cleary@bbh.com [mailto:antoinette.cleary@bbh.com]
**Sent:** Monday, November 17, 2008 5:34 PM
**To:** Frelinghuysen, Anson
**Cc:** liz.james@barclayscapital.com; tim.burke@barclayscapital.com
**Subject:** RE: LBI Trustee Authorization - Name Change (Brown Brothers)


Tim/Liz, please provide me with a letter (signed by barclays and trustee):

Sample:

Please be advised that Barclays Capital Inc. acquired Lehman Brothers' fixed income and equity sales,
trading and research; prime services; investment banking; principal investing; and private investment
management businesses which includes the below accounts at Brown Brothers Harriman & Co.. Please find
attached a copy of the Bankruptcy Court approval of the acquistion. Please use this letter as
authorization to amend the Tax Payer ID to 06-1031656 and please change the account titles to reflect
Barclays Capital Inc.

| Account # | Short Account Title: |
|-----------|----------------------|
| 0105007   | NYMERC & LEHMAN HS |
| 0105015   | NYMERC & LEHMAN CUST |
| 0105023   | NY MERC & LEHMAN GTY |
| 0169300   | ICE & LEHMAN HOUSE |
| 0169318   | ICE & LEHMAN CUST |
| 0169326   | ICE & LEHMAN GTY |
| 2050045   | THE CC & LEHMAN HOUSE |
| 2050052   | THE CC & LEHMAN CUSTOMER |
| 5364492   | LEHMAN BROS HS |
| 5364500   | LEHMAN BROS CUST |
| 5364518   | LEHMAN BROS CUST SECURED |

Confidential

Please use the existing executed Custody and Margin Settlement Account Agreement dated July 23, 2002 between Barclays Capital Inc. and Brown Brothers Harriman & Co. which includes an authorization list for above listed accounts.

Antoinette T. Cleary
Senior Vice President
Brown Brothers Harriman & Co.
140 Broadway - 2nd Floor
New York, NY 10005
Telephone (212) 493-7881
Fax (212) 493-7606
antoinette.cleary@bbh.com

"Frelinghuysen, Anson" <frelingh@hugheshubbard.com>

11/15/2008 05:24 PM

| | |
|---|---|
| <antoinette.cleary@bbh.com> | To |
| <tim.burke@barclayscapital.com>, <liz.james@barclayscapital.com> | cc |
| RE: LBI Trustee Authorization - Name Change (Brown Brothers) | Subject |

Antoinette,

Please coordinate with Liz regarding paperwork and other requirements, which she should present to Deloitte for their review. Upon confirmation from them, I will provide the necessary authorization.

I left a message to this effect as well.

Best regards,

Anson

**Anson B. Frelinghuysen**
Hughes Hubbard & Reed LLP
One Battery Park Plaza

Confidential

New York, New York 10004
Tel: 212.837.6208
Fax: 212.299.6208
frelingh@hugheshubbard.com

**From:** antoinette.cleary@bbh.com [mailto:antoinette.cleary@bbh.com]
**Sent:** Friday, November 14, 2008 2:10 PM
**To:** Frelinghuysen, Anson
**Cc:** tim.burke@barclayscapital.com; liz.james@barclayscapital.com
**Subject:** Fw: LBI Trustee Authorization - Name Change (Brown Brothers)

Anson, confirming my voice mail, please give me a call asap to discuss the additional documentation i will
need in order to facilitate the below request.  I look forward to hearing from you.

best regards, antoinette

Antoinette T. Cleary
Senior Vice President
Brown Brothers Harriman & Co.
140 Broadway - 2nd Floor
New York, NY 10005
Telephone (212) 493-7881
Fax (212) 493-7606
antoinette.cleary@bbh.com
----- Forwarded by Antoinette Cleary/BBH on 11/14/2008 02:05 PM -----
**Jean Vukek-Rao/BBH**

11/12/2008 07:45 AM

|  |  | To |
| --- | --- | --- |
| Antoinette Cleary/BBH@BBH |  | cc |
|  |  | Subject |
| Fw: LBI Trustee Authorization - Name Change (Brown Brothers) |  |  |

----- Forwarded by Jean Vukek-Rao/BBH on 11/12/2008 07:43 AM -----

Confidential

"Frelinghuysen, Anson" <frelingh@hugheshubbard.com>

11/12/2008 12:23 AM

To

<Jean.vukek-rao@bbh.com>

cc

"Kiplok, Christopher" <Kiplok@HughesHubbard.COM>, <lvecchio@barclayscapital.com>, "Scarpino, Todd \(US - New York\)"
<tscarpino@deloitte.com>, <liz.james@barcap.com>

Subject

LBI Trustee Authorization - Name Change (Brown Brothers)

Ms. Vukek-Rao,

James W. Giddens, Trustee in the liquidation of Lehman Brothers Inc., authorizes the renaming
of the attached fund.  Please contact Liz James, cc'd hereto, for documentation requirements.

Thanks,

Anson

<<Re-Name - Brown Brothers.xls>>

---

**Anson B. Frelinghuysen**
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Tel: 212.837.6208
Fax: 212.299.6208
frelingh@hugheshubbard.com

****************************************************************
This email and any files transmitted with it may contain privileged or confidential
information. Use, disclosure, copying or distribution of this message by anyone other
than the intended recipient is strictly prohibited. If you have received this email in error
please notify the sender by reply email and destroy all copies of this message in your
possession, custody or control.
****************************************************************

Confidential

*************************** IMPORTANT NOTE *************************** The opinions expressed in this message and/or any attachments are those of the author and not necessarily those of Brown Brothers Harriman & Co., its subsidiaries and affiliates BBH. There is no guarantee that this message is either private or confidential, and it may have been altered by unauthorized sources without your or our knowledge. Nothing in the message is capable or intended to create any legally binding obligations on either party and it is not intended to provide legal advice. BBH accepts no responsibility for loss or damage from its use, including damage from virus. ********************************************************************

********************************************************************
This email and any files transmitted with it may contain privileged or confidential information. Use, disclosure, copying or distribution of this message by anyone other than the intended recipient is strictly prohibited. If you have received this email in error please notify the sender by reply email and destroy all copies of this message in your possession, custody or control.
********************************************************************

*************************** IMPORTANT NOTE *************************** The opinions expressed in this message and/or any attachments are those of the author and not necessarily those of Brown Brothers Harriman & Co., its subsidiaries and affiliates BBH. There is no guarantee that this message is either private or confidential, and it may have been altered by unauthorized sources without your or our knowledge. Nothing in the message is capable or intended to create any legally binding obligations on either party and it is not intended to provide legal advice. BBH accepts no responsibility for loss or damage from its use, including damage from virus. ********************************************************************

Confidential

HHR_00015200

# BCI EXHIBIT

# 337

**From:**          Jack G. Stern
**Sent:**          Wednesday, May 13, 2009 11:41 AM
**To:**            Andrew Borchini
**Cc:**            Briana Dema
**Subject:**       FW: Lehman/Barclays

### REDACTED - PRIVILEGED

-----Original Message-----
From: Jack G. Stern
Sent: Wednesday, May 13, 2009 10:35 AM
To: 'Robert W Gaffey'
Cc: William J Hine; Jennifer Del Medico
Subject: RE: Lehman/Barclays

Bob

When we spoke by phone on Monday I told you that I did not anticipate having a response
for you by Tuesday.  Please call me when you return and I can tell you where we stand.  As
to a confidentiality agreement, my current inclination (subject to client approval) is to
model an agreement on the stipulation we have with the Examiner, as many of your requests
call for information we will likely produce to the Examiner under those confidentiality
designations.  At this point, we continue to reserve all rights with respect to potential
objections to the scope of what you have proposed, but we hope that we can work
cooperatively to find some acceptable middle ground.

I look forward to speaking with you later.

Jack

-----Original Message-----
From: Robert W Gaffey [mailto:rwgaffey@JonesDay.com]
Sent: Wednesday, May 13, 2009 10:06 AM
To: Jack G. Stern
Cc: William J Hine; Jennifer Del Medico
Subject: Lehman/Barclays

Jack

I had hoped to hear from you yesterday about where your client stands on
our request for the voluntary production of documents and we are, as I have
said, anxious to move ahead either with the voluntary production of the
documents and interviews or a Rule 2004 motion if (or to the extent that)
we do not have an agreement.  Also, my notes of our meeting reflect that
you were going to send us a form of proposed confidentiality agreement, so
we would not be delayed in the negotiation of its terms, but I have not
received one.

 We need, as I have said,  to move ahead with this, having first requested
the documents and interviews in our letter dated April 13 .

I will be out of the office this morning, and will be back around 2 PM.
Please let me know where things stand.

Bob

Robert W. Gaffey
JONES DAY

222 East 41st Street
New York, New York 10017
(212) 326-7838 (direct)
(914) 391-5927 (cell)
(212) 755-7306 (fax)
rwgaffey@jonesday.com

==========
This e-mail (including any attachments) may contain information that is
private, confidential, or protected by attorney-client or other privilege.
If you received this e-mail in error, please delete it from your system
without copying it and notify sender by reply e-mail, so that our records
can be corrected.
==========

# BCI EXHIBIT

# 338

**From:** Hamish Hume
**Sent:** Thursday, May 28, 2009 10:31 AM
**To:** Addison Holladay; Andrew Borchini; Briana Dema; Christopher Green; Dawn Smalls; Hamish Hume; Jack G. Stern; Jesse Kramer; Jobe Danganan; Jonathan Krisbergh; Jonathan Schiller; Lisa Chauncey; Louis Smith; Nicholas Kemp; Shaun Blugh; Valerie Dew
**Subject:** FW: Rule 408 Settlement Discussions

**Importance:** High

REDACTED - PRIVILEGED

---

**From:** Kobak, James B. [mailto:kobak@hugheshubbard.com]
**Sent:** Thursday, May 28, 2009 10:23 AM
**To:** Jonathan.Hughes@barclayscapital.com
**Cc:** Giddens, James W.; KCAPUTO@sipc.org; Maguire, Bill; Kiplok, Christopher; lgranfield@cgsh.com; Jonathan Schiller; raislerk@sullcrom.com; Christine.Posadas@barclayscapital.com; Alan.Kaplan@barclayscapital.com; Hamish Hume
**Subject:** Rule 408 Settlement Discussions

Dear Jonathan--

I can arrange an early meeting, but not next week.  We can meet on June 12 as I previously indicated.  It is simply not feasible to schedule the meeting on our side for next week or earlier in that week given the schedules of those who absolutely should be there.

  To make our meeting as productive as possible, I would ask you to please provide me with some information concerning certain points that you make in your May 13 letter and which in some instances we have been seeking for some time:

1.      Your letter asserts generally that the Trustee has, "adopted positions that ignore and indeed contradict both the plain text of the agreements and what in fact occurred during the negotiations of the transaction, as well as the undertakings made by the Lehman side to induce Barclays to close this transaction."  It would be helpful for the Trustee to understand the chronology of what you and Barclays believe occurred during the negotiations and what specific undertakings you and others at Barclays believe were made to induce Barclays to close this transaction, including the individuals involved in those discussions. I'm not looking for anything comprehensive, just the points that you believe are pertinent.

2.      Specifically with respect to the DTCC letter, you assert that, "… both the DTCC Letter and Clarification Letter were negotiated contemporaneously over the weekend of September 20/21, and were in fact executed simultaneously as part of the Closing on the morning of September 22, 2008," and that, ""[b]y Sunday night, September 21, it became apparent that DTCC's exposure to LBI from processing the remaining transactions was substantially less than it had originally feared."  I would appreciate your providing me the different drafts of the clarifying and DTC letters and the correspondence between Barclays and DTCC regarding its exposure.

3.      You responded to my March 27 request for support for Barclays' claim that the Trustee delivered to Barclays a large portion of the securities in LBI's clearance boxes in the days following the closing.  You provided four examples of such deliveries of securities, but no supporting documents.  I presume you have

confirmed that your four examples do not relate to the repo transaction, but please confirm that presumption is correct.  As I requested in my March 27 letter, please provide me with the documents that support your claim that these and any other transfers of non-PIM securities were made by the Trustee after the closing.  My March 27 letter also asked that Barclays provide documentation to support your claim that none of the items that Barclays claims in its schedules could be considered the property of or subject to claims by customers or other Lehman entities including LBIE.  Since your May 13 letter provided no such support, I again ask that Barclays please provide this forthwith.

4.      Regarding the 15c3-3 reserve account, you assert that, "prior to the execution of the Clarification Letter, Lehman had indicated to Barclays that the SEC had informally signed off on this provision," and that, "[i]t was clearly represented and explained by Lehman to Barclays prior to the execution of the Clarification Letter that the 15c3-3 reserve account held securities and cash of LBI substantially in excess of the Rule 15c3-3 reserve requirements."  I would appreciate your advising me to whom you are referring and what specifically are the representations that they made.


While there is much more information that would be helpful to the Trustee, I have kept our request here to a minimum because we all want to move ahead here.  Please let me know when you can provide me with this information.


Best Regards,


*********************************************************************
This email and any files transmitted with it may contain privileged or confidential information. Use, disclosure, copying or distribution of this message by anyone other than the intended recipient is strictly prohibited. If you have received this email in error please notify the sender by reply email and destroy all copies of this message in your possession, custody or control.
*********************************************************************