WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                  :

**In re**                           :        **Chapter 11 Case No.**
                                    :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                    :

                 **Debtors.**     :        **(Jointly Administered)**
                                    :
                                    :
----------------------------------------------------------------x

### NOTICE OF REPORT OF ACTIVITIES THROUGH JANUARY 15, 2010 OF THE OFFICIAL REPRESENTATIVES AND OTHER PARTICIPATING AFFILIATES PURSUANT TO THE CROSS-BORDER INSOLVENCY PROTOCOL

        PLEASE TAKE NOTICE that on February 2, 2010, Lehman Brothers Holdings Inc. and its affiliated debtors filed the annexed Report of Activities Through January 15, 2010 of The Official Representatives And Other Participating Affiliates Pursuant To The Cross-Border Insolvency Protocol for The Lehman Brothers Group of Companies.

Dated: February 2, 2010
New York, New York

                                   /s/ Richard P. Krasnow
                                   Richard P. Krasnow
                                   WEIL, GOTSHAL &
                                   MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   Telephone: (212) 310-8000
                                   Facsimile: (212) 310-8007
                                   Attorneys for Debtors
                                   and Debtors in Possession.

US_ACTIVE:\43297128\01\43297128_1.DOC\58399.0003

# OFFICIAL REPRESENTATIVES AND OTHER PARTICIPATING AFFILIATES PURSUANT TO THE CROSS-BORDER INSOLVENCY PROTOCOL FOR THE LEHMAN BROTHERS GROUP OF COMPANIES

REPORT OF ACTIVITIES through January 15, 2010

# Introduction

On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), the parent entity of the Lehman Brothers group ("Lehman"), filed a chapter 11 petition with the U.S. Bankruptcy Court.

Prior to this date, Lehman was the fourth-largest U.S. investment bank, with 900+ operating entities located in 40+ countries and more than $600B in assets. LBHI managed substantially all of the material cash resources of the Lehman Brothers group centrally, and the inability of LBHI to settle obligations of its worldwide Affiliates led to insolvency proceedings for many of the Lehman affiliates (the "Affiliates") in the days and weeks subsequent to September 15.

As a result, entities which were once part of the Lehman consolidated group were immediately separated by numerous insolvency proceedings in various jurisdictions. Today there are 80+ proceedings in progress under the purview of 16 Official Representatives (the "Official Representatives").

The fragmentation of the Lehman group posed a litany of complicated issues and practical barriers to the eventual emergence or unwinding of those Affiliates. These hurdles - to name but a few - include:

- Assets and activities of Affiliates spread across jurisdictional borders.

- Complex agreements which commonly pertain to multiple Affiliates.

- Intercompany funding arrangements arising from Lehman's cash management system which gave rise to tens of billions of dollars in intercompany positions.

- Over 322,000 intercompany derivative and foreign exchange trade legs open at September 12, 2008 (the last trading date prior to the chapter 11 filing of LBHI).

- Securities lending positions between Affiliates approaching $300 billion in gross value.

- Various forms of asserted guarantees by LBHI in respect of the activities of Affiliates.

Due to the presence of these issues, Official Representatives of many of the Affiliates recognized the necessity for international cooperation. To further this, the Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies (the "Protocol") was developed. The Protocol is a non-binding agreement, the stated aim of which is to minimize costs and maximize fair recoveries for all creditors through information sharing, by coordination of activities and by a commitment to finding consensual, negotiated solutions wherever possible, in order to keep to a minimum the need to involve courts or other dispute resolution forms. This commitment informs all of the activities of Signatories and Participating Affiliates (defined below).

To date, 10 Official Representatives have signed the Protocol (the "Signatories," listed on Schedule A hereto) representing Affiliates in Australia, the Netherlands, the Netherlands Antilles, Hong Kong, Germany, Luxembourg, Singapore, Switzerland, and the United States. In addition to the Signatories, Official Representatives in Japan and Bermuda, (the "Participating Affililates" and, together with the Signatories, the "Signatories and Participating Affiliates") have participated in a series of activities and meetings designed to advance the objectives set forth in the Protocol. This report highlights the accomplishments to date of the Signatories and Participating Affiliates, as well as the ongoing activities and next steps.

# Report of Activities

## I.  First Protocol Meeting

The Signatories and Participating Affiliates gathered for the first time as a group on July 16-17, 2009, in London.  Rutger Schimmelpenninck (representing Lehman Brothers Treasury in the Netherlands) and Eddie Middleton (representing Lehman Brothers Asia Holdings and subsidiaries in Hong Kong) were appointed co-Chairmen of this First Protocol Meeting.  Each of the 12 Official Representatives in attendance provided the group with a brief Case Update of their respective proceedings, and then participated in discussion around a number of topics.

The main points of emphasis in the First Protocol Meeting were:

- **Global Close:**  The Official Representatives recognized that the resolution of intercompany claims is crucial for the administration of their respective proceedings, but that to attempt to reconcile their intercompany claims with the procedural and evidentiary rigors of court proceedings under a multiplicity of local insolvency laws and rules of evidence was likely to be a protracted and expensive labor that could take many years to complete. Accordingly, the objective of the First Protocol Meeting was primarily to discuss how the Official Representatives might agree to intercompany balances through a streamlined, consistent, coordinated, and transparent process that significantly reduces administrative expenses and minimizes the potential for costly litigation.

  The September 14, 2008 Global Close Balance Sheet is considered to be the critical starting point for achieving this goal, particularly with respect to general intercompany funding positions (i.e. the "non-trading" balances).  Subsequent to LBHI filing a chapter 11 petition and many of the other Affiliates entering into

insolvency proceedings in their respective jurisdictions, a globally-coordinated effort was undertaken to perform a consolidated close of the Lehman Brothers group as of September 14, 2008 (the "Global Close").  In the period from November 2008 – January 2009, the Global Close was executed by a team comprised of Lehman professionals from LBHI and Lehman Brothers International (Europe) ("LBIE"), as well as former Lehman professionals working for Barclays or Nomura.  The Global Close is considered a critical source of information, as it represents the last consolidated set of books and records of the Lehman Group prior to LBHI filing for bankruptcy.  Beginning with the First Protocol Meeting, the importance and usefulness of the Global Close for the purpose of agreeing intercompany balances has been stressed amongst the Signatories and Participating Affiliates.

In accordance with the information sharing provisions in the Protocol, LBHI distributed the September 14, 2008 Global Close Balance Sheet information for their respective entities to the Signatories and Participating Affiliates. Further, a draft "White Paper" describing the background and mechanics of the Global Close was provided to Signatories and Participating Affiliates, and presented at the First Protocol Meeting.

- **Trading positions:** The Affiliates engaged in heavy trading activity with each other, including derivatives, foreign exchange trades, and financing trades (repos, stock lending, etc.).  A significant point of emphasis in the First Protocol Meeting was for Affiliates to focus their attention toward the efforts of: (i) reconciling populations of intercompany trades; and (ii) agreeing to termination dates.  Only once those two exercises have been completed (an effort which is

ongoing) can the Affiliates then move on to the effort of valuing the trading positions. To that end, the Signatories and Participating Affiliates agreed to a milestone date by which they would have the steps of population reconciliation and agreement of termination dates finalized.

The meeting concluded with the Signatories and Participating Affiliates agreeing to take up various key topics in the Procedures Committee (see following).

## II.    Procedures Committee

One of the clauses of the Protocol states that the Official Representatives shall establish a committee (the "Procedures Committee") to "consensually resolve in good faith any differences in the accounting of Intercompany Claims to be filed in their respective Proceedings".

Following the First Protocol Meeting, each of the 12 Signatories and Participating Affiliates appointed a representative (or representatives) to the Procedures Committee. Ron Geraghty and Steve Nietupski (both of LBHI) assumed the role of co-Chairmen of the Procedures Committee.

The Procedures Committee met for the first time (via conference call) on August 5, 2009. Subsequent calls took place on August 24, September 9, September 30, October 28, November 11, December 2, and December 16.

The key goal of the inclusion of the Procedures Committee as an element of the Protocol was to provide a forum that facilitated open communication and continued involvement from all of the Affiliates. The Procedures Committee has

been a success to date in that regard. Topics addressed on the various calls have included:

- Ongoing updates regarding the reconciliation of trading populations. The Procedures Committee has determined that notices served terminating ISDA contracts should, in principle, be regarded as the appropriate date for recognizing trade termination dates (barring consensual agreement between the parties of an alternative).

- Continued discussion around the topic of appropriate termination dates under derivatives contracts.

- Promotion of the usage of the Global Close Balance Sheets as a key means toward reconciling non-trading balances in the most efficient manner.

- Exploration of a common approach toward an issue having to do with the release of certain Affiliates' assets held in custody by other Affiliates.

- Issues and strategies around data sharing amongst Affiliates.

- Providing guidance to Affiliates in regard to claims filing requirements in certain jurisdictions.

- Agendas for future in-person meetings such as the Global Close Seminar and Second Protocol Meeting (see descriptions of these meetings later).

- Ongoing discussions around settlement of intercompany trading and non-trading balances.

Procedures Committee calls will continue to occur approximately every two weeks.

## III.  Global Close Seminar

In response to inquiries from the other Official Representatives as to the robustness and reliability of the Global Close, LBHI hosted a Global Close Seminar (the "Seminar") on September 23-24, 2009.

The content of Global Close Seminar was developed and presented by a highly-experienced group of Lehman professionals, now working in the LBHI estate, with years of hands-on familiarity with the Lehman financial systems and organization.  The Seminar was attended by all of the Signatories and Participating Affiliates with the exception of Lehman Brothers Bankhaus.  The agenda for the Seminar included:

- Overview on the Global Close itself – why it was done, who was involved, and how it was executed.

- Presentation of the Information Technology environment used in the Global close, given by Barclays professionals who implemented the IT platform.

- A series of presentations around historical controls in place at Lehman that were leveraged to execute an effective close of books at September 14, 2008.

- Description and demonstrations of the various systems that drove intercompany balances.

- An opportunity for each Official Representative to work in a one-on-one workshop setting with experienced Lehman Brothers Legal Entity Controllers.

All of the attendees to the Global Close Seminar expressed their gratitude to LBHI for organizing this event.  Universal feedback was that the Seminar was useful, and advanced the objective of being able to rely on the Global Close as the appropriate starting point for reconciling intercompany balances.

## IV.  Second Protocol Meeting

The Signatories and Participating Affiliates, gathered again on October 15-16, 2009 in Amsterdam.  Rutger Schimmelpenninck and Eddie Middleton once again served as co-Chairmen of this Second Protocol Meeting.

Each of the Official Representatives were again given the opportunity to provide a brief Case Update of the proceedings in their respective jurisdictions.  Following the Case Updates, the meeting agenda turned to the following topics:

- **Global Close update:** In light of the various efforts (the Global Close Seminar, the Global Close White Paper, sharing of September 14, 2008 Balance Sheet information) that had been undertaken by LBHI to shed light on the Global Close, each Official Representative was asked if they now had a greater level of comfort around the notion of utilizing the Global Close for the purpose of reconciling intercompany balances.  A resolution was agreed to that the Global Close shall be used to determine non-trading intercompany balances, subject to: (i) further analysis of material breaks; and (ii)  approvals, where required, of

creditors' committees and/or Tribunals, as defined in the Protocol[1].

- **Intercompany Settlement Guidelines:** A document was presented by LBHI that set forth its proposed approach for settling intercompany trading and non-trading balances with each of the Affiliates. LBHI requested feedback from the other Official Representatives, and proposed integrating this feedback into a revised set of Guidelines that all Official Representatives could use as a common framework for commencing bilateral settlement discussions with each other, with the Procedures Committee continuing to serve as a forum for general oversight and discussion.

- **Update on reconciliation of Trading positions:** Since the First Protocol Meeting, the Signatories and Participating Affiliates had undertaken a concerted effort to reconcile trading populations and agree termination dates. The update provided at the Second Protocol Meeting was that, as of October 9, 2009, 27% of derivative trade legs had been agreed and reconciled, and 25% of ISDAs had been mutually agreed to have been terminated. This was considered to be a disappointing result at the time; however, further

---

[1] Lehman Re Ltd., as one of the Participating Affiliates, has reserved the right to negotiate and/or agree with relevant counterparties in respect of the nature of balances (i.e. trading or non-trading). The LBI Trustee is performing an ongoing analysis and therefore could not agree to the resolution at this time.

Japan commented that they continue to discuss positively, with internal and supervisor approval required.

progress has been made since the Second Protocol Meeting. It was agreed at the Second Protocol Meeting that the group would work toward having trade populations reconciled by December 31, 2009.

During the Second Protocol Meeting, some further discussion was held in respect of alternative approaches toward agreement of termination dates for derivatives. Various options were discussed, and ultimately, it was determined that the ISDA Termination Date was the technically correct and legally sound approach.

Further to the above, a series of topics relating to interactions with LBIE were discussed (refer to following section "Interaction with LBIE").

It was determined that the Third Protocol Meeting would take place in January 2010.

## V. Third Protocol Meeting

The Signatories and Participating Affiliates gathered for a third time on January 12-13 in New York. Rutger Schimmelpenninck and Eddie Middleton once again chaired this Third Protocol Meeting.

Each of the Official Representatives provided Case Updates of significant developments in their respective proceedings since the Second Protocol Meeting. Following the Case Updates, the agenda covered the following topics:

- **Data Sharing:** Representatives from LBHI discussed the efforts that had gone on since the chapter 11 filing to preserve Lehman Brothers data. LBHI has preserved access to 754 applications which were in use at Lehman prior to the bankruptcy, as well as terabytes of user-created data such as emails, archived hard

copy files, instant messaging, etc. Several of the Affiliates have submitted requests to LBHI regarding sharing of this data. To that end, LBHI discussed the legal framework in which data could be circulated among the Signatories and Participating Affiliates, and the potential limitations to data sharing.

- **LBHI Claims Update:** LBHI representatives provided the group with a high-level update on the magnitude and types of claims which have been submitted in the chapter 11 cases, as well as the resources LBHI has devoted to analyzing such claims. The importance of Affiliate cooperation in respect of intercompany claims was further emphasized.

- **Non-trading Update:** The Signatories and Participating Affiliates discussed progress made to date in respect of agreeing non-trading balances. The Signatories and Participating Affiliates confirmed the resolution of the Second Protocol Meeting regarding the Global Close, with further positive statements made regarding the usage of the Global Close figures as the appropriate starting point for non-trading reconciliation.[2] LBHI updated the group on ongoing discussions taking place with various Affiliates, including LBIE and other entities in Administration in the UK.

- **Trading Update:** An update was provided on the process of settling intercompany trading balances. Substantial progress has been made in the area of reconciling trade populations, with 97% of the derivative population within LBHI's

control facing Affiliates under the control of other Official Representatives now having been reconciled. Further, termination dates have been agreed for 72% of the master agreements governing the derivative trades between entities under LBHI control facing Affiliates under the control of other Official Representatives.

- The Third Protocol Meeting was supplemented by two seminars organized by LBHI (i) on best practices in regard to derivatives unwind strategies, for interested Affiliates with street-side derivatives trades, and (ii) for sharing common issues and strategies regarding structured products, for those Affiliates who issued structured notes, warrants, certificates, etc.

## VI. Interaction with LBIE

The Joint Administrators of LBIE[3] have not signed the Protocol and did not attend the First, Second, or Third Protocol Meetings. The Joint Administrators have also not participated in the Procedures Committee, but instead have proposed an alternative approach to the multi-lateral discussions held by the Signatories and Participating Affiliates in the form of a bilateral Memorandum of Understanding (the "MoU"). At a meeting in London on July 16, 2009, LBIE presented to attending Signatories and Participating Affiliates its role in the Global Close process and a draft version of its MoU.

The Signatories and Participating Affiliates have entered into bilateral agreements with LBIE, they have also taken a common

---

[2] See footnote 1.

[3] The stance to not sign the Protocol also pertains to the other UK entities in Administration and/or under the purview of the Joint Administrators.

approach in facing LBIE on certain topics. For example, for reasons of data privacy and confidentiality, LBIE has been unable to share any information which is commingled with that of another Affiliate or third party. A letter is being prepared which states that, in respect of all Affiliates who choose to sign the letter, those Affiliates will not object to LBIE sharing data with an Affiliate which contains commingled data of another Affiliate. The hope is that this will facilitate the flow of necessary information from LBIE.

LBIE will continue to have the opportunity to sign the Protocol, attend future Protocol Meetings, participate in the Procedures Committee, receive conclusion minutes of the Protocol Meetings, etc.

## VII. Ongoing Workstreams and Upcoming Activities

The group of Signatories and participating Affiliates continues to press forward with the various issues facing the International proceedings of the Lehman Brothers companies. Some highlights of ongoing work and future activities include:

- The process of agreeing intercompany derivatives trades began in November 2008, and continues with frequent meetings and information sharing between Affiliates. As of January 2010, over 90% of intercompany derivative trades have been reconciled, with a goal of completing the remaining 3% by February 28, 2010.

- LBHI has proposed to Affiliates that the LBHI platform, with appropriate oversight from Affiliate counterparties, be used for valuing Affiliates' derivatives and structured notes (where relevant).

- The Intercompany Settlement Guidelines are in the process of being updated to reflect comments received from Affiliates following their initial presentation at the Second Protocol Meeting. While most of the steps pertaining to trading balances (derivatives, financings) between Affiliates have been underway for some time, the process for agreeing non-trading intercompany balances is largely still ahead. Affiliates must undertake to address this now, with similar process and reporting as that in the derivatives reconciliation process to be implemented.

- The Procedures Committee continues to meet approximately every two weeks, with broad participation and a full agenda of topics present on every call.

- The Fourth Protocol Meeting is scheduled for April 21-23, 2010, in Hong Kong. The Signatories and Participating Affiliates have committed to holding such Protocol Meetings on a quarterly basis going forward.

Dated: January 15, 2010
New York, New York

_Edward S. Middleton, co-chair_

Edward S. Middleton, co-chair

_Rutger J. Schimmelpenninck, co-chair_

Rutger J. Schimmelpenninck, co-chair

# Schedule A

| Signatories | |
|---|---|
| **Signatory** | **Entities** |
| Rutger Schimmelpenninck, in his capacity as bankruptcy trustee ("curator") for Lehman Brothers Treasury Co. B.V. | • Lehman Brothers Treasury Co. B.V. |
| Edward Simon Middleton as one of the Joint and Several Liquidators, without personal liability, of and for and on behalf of the Lehman Hong Kong Group; and as Joint Official Liquidator of Lehman Brothers Equity Finance (Cayman) Limited (In Official Liquidation) | • Lehman Brothers Asia Holdings Limited (In Liquidation)<br>• Lehman Brothers Asia Limited (In Liquidation)<br>• Lehman Brothers Futures Asia Limited (In Liquidation)<br>• Lehman Brothers Securities Asia Limited (In Liquidation)<br>• LBQ Hong Kong Funding Limited (In Liquidation)<br>• Lehman Brothers Nominees (H.K.) Limited (In Liquidation)<br>• Lehman Brothers Asia Capital Company (In Liquidation)<br>• Lehman Brothers Commercial Corporation Asia Limited (In Liquidation)<br><br>• Lehman Brothers Equity Finance (Cayman) Limited (In Official Liquidation) |
| Chay Fook Yuen for himself, Yap Cheng Ghee and Tay Puay Cheng, as Joint and Several Liquidators, without personal liability, of and for and on behalf of the Lehman Singapore Group | • Lehman Brothers Investments Pte. Ltd. (In Creditors' Voluntary Liquidation)<br>• Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation)<br>• Lehman Brothers Commodities Pte. Ltd. (In Creditors' Voluntary Liquidation)<br>• Lehman Brothers Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation)<br>• Sail Investors Pte. Ltd. (In Creditors' Voluntary Liquidation)<br>• Lehman Brothers Asia Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation) |
| Lehman Brothers Holdings Inc., on its own behalf and on behalf of its affiliates that are debtors in cases pending under chapter 11 of Title 11 of the United States Code | Lehman Brothers Holdings Inc.<br>LB 745 LLC<br>PAMI Statler Arms LLC<br>Lehman Brothers Commodity Services Inc.<br>Lehman Brothers Special Financing Inc.<br>Lehman Brothers OTC Derivatives Inc.<br>Lehman Brothers Derivative Products Inc.<br>Lehman Commercial Paper Inc.<br>Lehman Brothers Commercial Corporation<br>Lehman Brothers Financial Products Inc.<br>Lehman Scottish Finance L.P.<br>CES Aviation LLC<br>CES Aviation V LLC<br>CES Aviation IX LLC<br>East Dover Limited<br>Luxembourg Residential Properties Loan Finance S.a.r.l.<br>BNC Mortgage LLC<br>Structured Asset Securities Corporation<br>LB Rose Ranch LLC<br>LB 2080 Kalakaua Owners LLC<br>Merit LLC<br>LB Somerset LLC<br>LB Preferred Somerset LLC |
| Dr. Michael C. Frege in his capacity as insolvency administration ("Insolvenzverwalter") of Lehman Brothers Bankhaus AG (in Insolvenz) | • Lehman Brothers Bankhaus AG (in Insolvenz) |

| | |
|---|---|
| Neil Singleton, as one of the joint and several administrators of the Lehman Australia Group | • Lehman Brothers Australia Granica Pty Limited (Subject to Deed of Company Arrangement),<br>• Lehman Brothers Real Estate Australia Commercial Pty Limited (Subject to Deed of Company Arrangement),<br>• Lehman Brothers Australia Real Estate Holdings Pty Limited (Subject to Deed of Company Arrangement),<br>• Lehman Brothers Australia Finance Pty Limited (Subject to Deed of Company Arrangement),<br>• Lehman Brothers Australia Holdings Pty Limited (Subject to Deed of Company Arrangement),<br>• Lehman Brothers Australia Limited (In Liquidation),<br>• LBHV 1 Pty Limited (Subject to Deed of Company Arrangement),<br>• HV 1 Pty Limited (DOCA),<br>• HV 2 Pty Limited (DOCA) |
| James W. Giddens, as Trustee for the Liquidation of Lehman Brothers Inc. under the Securities Investor Protection Act. | • Lehman Brothers Inc. |
| Mr. Michiel R.B. Gorsira in his capacity of Court appointed receiver ("curator") of Lehman Brothers Securities N.V. | • Lehman Brothers Securities N.V. |
| PricewaterhouseCoopers Ltd., Zurich, Christiana Suhr-Brunner and Pascal Portmann, appointed bankruptcy administrators of Lehman Brothers Finance S.A. in liquidation. | • Lehman Brothers Finance AG (in liquidation), a/k/a Lehman Brothers Finance SA (in liquidation) |
| Maître Jacques Delvaux and Maître Laurent Fisch, court appointed bankruptcy receivers of Lehman Brothers (Luxembourg) Equity Finance S.A., and court appointed Joint Liquidators of Lehman Brothers (Luxembourg) S.A. | • Lehman Brothers (Luxembourg) Equity Finance S.A. (en faillite)<br>• Lehman Brothers (Luxembourg) S.A. (in liquidation) |