**Presentment Date and Time:** February 16, 2010 at 12:00 p.m. (Prevailing Eastern Time)
**Objection Deadline:** February 16, 2010 at 11:00 a.m. (Prevailing Eastern Time)
**Hearing Date and Time (If an Objection is Filed):** March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

```
-----------------------------------------------------------------x
                                                                 :
In re                                          :  Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :  08-13555 (JMP)
                                                                 :
                    Debtors.                   :  (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x
```

## NOTICE OF PRESENTMENT OF APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN GIBSON, DUNN & CRUTCHER LLP, AS SPECIAL COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO SEPTEMBER 1, 2009

**PLEASE TAKE NOTICE** that the undersigned will present the annexed Application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), pursuant to sections 327(e) and 328(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to employ and retain Gibson, Dunn & Crutcher LLP as special counsel to the Debtors, effective *nunc pro tunc* to September 1, 2009, all as more fully described in the Application, to

the Honorable James M. Peck, United States Bankruptcy Judge, for approval and signature on **February 16, 2010 at 12:00 p.m. (Prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that objections to the Application, if any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166-0193, Attn: Michael A. Rosenthal, Esq., **so as to be so filed and received by no later than February 16, 2010 at 11:00 a.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **March 17, 2010, at 10 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York 10004-1408.  If an objection is filed the moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 5, 2010
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Presentment Date and Time:  February 16, 2010 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline:  February 16, 2010 at 11:00 a.m. (Prevailing Eastern Time)**
**Hearing Date and Time (If an Objection is Filed):  March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

-------------------------------------------------------------------x
:
In re                                                            :    Chapter 11 Case No.
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :    08-13555 (JMP)
                                                                 :
                             Debtors.                :    (Jointly Administered)
                                                                 :
-------------------------------------------------------------------x

### APPLICATION OF THE DEBTORS
### PURSUANT TO SECTIONS 327(e) AND 328(a) OF THE
### BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL
### RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION
### TO EMPLOY AND RETAIN GIBSON, DUNN & CRUTCHER LLP, AS
### SPECIAL COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO SEPTEMBER 1, 2009

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this application (the "Application") and respectfully represent:

**Background**

1.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.

7. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

8.  By this Application, the Debtors request authorization, pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to employ Gibson, Dunn & Crutcher LLP ("Gibson Dunn") as special counsel to the Debtors, effective *nunc pro tunc* to September 1, 2009. Specifically, Gibson Dunn has been engaged with respect to the representation of the Debtors in connection with the LB RE Transaction and the RE Holdings Transaction (both as defined and described herein) and other real estate, corporate, workout, enforcement, and finance matters similar to those described herein (the "Representative Matters").

## Qualifications of Gibson Dunn

9.  Gibson Dunn is an international law firm with approximately 1,000 attorneys. The firm maintains offices in New York City, Los Angeles, Orange County, San Francisco, Palo Alto, Dallas, Denver, and Washington, D.C., as well as in London, Paris, Munich, Brussels, Dubai, and Singapore.

10. Gibson Dunn has extensive expertise and experience in virtually all aspects of the law that may arise in connection with its representation of the Debtors. In particular, Gibson Dunn has substantial and relevant real estate, remedies, corporate, workout, and bankruptcy and restructuring expertise. For approximately 10 years the attorneys in Gibson Dunn's Real Estate and Corporate Transactions practice groups have represented the Debtors and

their non-debtor affiliates in connection with a number of real estate financings, transactions, enforcement actions, and workouts. Recently, Gibson Dunn's representation of the Debtors has consisted primarily of such matters and, in addition, its services rendered in connection with assisting the Debtors in their efforts to obtain control (the "LB RE Transaction") over the primary asset of LB RE Financing No. 3 Limited, a private limited company incorporated and registered in England and Wales ("LB RE"), which is in administration (insolvency proceedings) in the United Kingdom. LBHI directly and indirectly holds 98.1% of the claims against LB RE. Thus, it is the primary creditor of LB RE. LB RE is the holder of a €722,181,000 Class B Note due 2054 (the "B Note") issued by Excalibur Funding No. 1 PLC ("Excalibur"), an orphan special purpose vehicle that Lehman created in May 2008 to issue real estate backed commercial debt obligations. Pursuant to the LB RE Transaction, LBHI will (i) gain control over most of the commercial decisions relating to the B Note, (ii) secure the right to recover from LB RE amounts advanced to it in respect of the B Note, in priority to any other claims of creditors, and (iii) obtain the right, in certain circumstances, to acquire the B Note (or shares of LB RE). The Debtors will benefit from the LB RE Transaction in a number of ways as detailed in the Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for Authorization to Enter Into Agreements to Provide Funding to LB RE Financing No. 3 Limited (in administration) in Connection with Certain Real Estate Investment*s* [Docket No. 5651] (the "LB RE Transaction Approval Motion"), which was granted by the Court by an order dated November 23, 2009 [Docket No. 5907]. These include direct benefits such as ensuring that the B Note is effectively managed and indirect benefits such as creating synergies with other parties that have an interest in the underlying loan portfolio. Gibson Dunn negotiated and prepared the voluminous documents necessary to effectuate the LB RE Transaction.

11. In addition to the LB RE Transaction, Gibson Dunn has also been retained to provide services to, and represent, the Debtors in connection with their efforts to obtain control (the "RE Holdings Transaction") over some or all of the assets of LB UK RE Holdings Limited (in administration), a private limited company incorporated and registered in England and Wales ("RE Holdings"). LBHI is the primary creditor of RE Holdings, which is in administration in the United Kingdom. RE Holdings has interests in a variety of assets including, direct and indirect interests in properties in Europe, interests in non-performing loans and other assets, such as interests in funds, listed securities, and cash (together, the "RE Holdings Portfolio"). Pursuant to the RE Holdings Transaction, LBHI is seeking to gain control over some or all of the assets in the RE Holdings Portfolio to ensure that such assets are effectively managed and to improve the likelihood of recovery of value for LBHI and its creditors. Gibson Dunn expects that it will be required to negotiate and prepare the documents necessary to evaluate and effectuate the RE Holdings Transaction.

12. Gibson Dunn has represented the Debtors in connection with real estate, corporate, workout, enforcement, finance, and other similar matters. In these matters, Gibson Dunn has represented the Debtors in connection with workouts, loan originations, acquisitions and sales, distressed pay offs, deeds and assignments in lieu, foreclosures, and other remedial actions. Gibson Dunn professionals, therefore, have developed relevant experience and expertise regarding the Debtors that will assist them in providing effective and efficient services to the Debtors.

13. The Debtors believe that Gibson Dunn is both well-qualified and uniquely able to represent them with respect to the Representative Matters in an efficient and effective manner. If the Debtors are required to retain counsel other than Gibson Dunn with respect to the

Representative Matters, the Debtors, their estates, and all parties in interest will be unduly prejudiced by the time and expense necessary to enable such other counsel to become familiar with these matters.

## Scope of Services to be Provided

14. Subject to further order of this Court, it is proposed that Gibson Dunn be employed to render, among others, the following professional services:

(a) continue to negotiate and document the LB RE Transaction and related matters, including, without limitation, advising on matters arising in connection with the management by LBHI of the B Note and the management and realization by Excalibur of the collateral loan obligations which are owned by Excalibur;

(b) continue to represent the Debtors in real estate, corporate, workout, enforcement, finance, and other similar matters, including, in connection with the RE Holdings Transaction and related matters; and

(c) advise the Debtors generally on other real estate financings and transactions.

15. In order to minimize costs, Gibson Dunn is prepared to work closely with the Debtors and each of their other retained professionals to delineate clearly the professionals' respective duties so as to prevent unnecessary duplication of services whenever possible.

## Gibson Dunn as an Ordinary Course Professional

16. Gibson Dunn has previously been performing legal services on behalf of the Debtors as an Ordinary Course Professional in these chapter 11 cases pursuant to this Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, dated November 5, 2008 [Docket No. 1394] (the "OCP Order"). Pursuant to the procedures set forth in the OCP Order, such retention became effective *nunc pro tunc* to September 15, 2008 upon the filing of the affidavit of Jesse Sharf [Docket No. 2444] and the expiration of the relevant objection period.

17. The OCP Order authorizes the Debtors to pay compensation to and reimburse the expenses of Ordinary Course Professionals in the full amount billed by each such Ordinary Course Professional "upon receipt of reasonably detailed invoices indicating the nature of the services rendered and calculated in accordance with such professional's standard billing practices."  In accordance with the OCP Order, Gibson Dunn provided services to the Debtors and was compensated for those services upon the presentation of detailed invoices indicating the nature of the services rendered, which were calculated in accordance with Gibson Dunn's standard billing practices.  A schedule setting forth the dates and amounts of these payments is set forth in the Declaration of Jesse Sharf in Support of Debtors' Application for Authorization to Employ and Retain Gibson, Dunn & Crutcher LLP, as Special Counsel to the Debtors, Nunc Pro Tunc to September 1, 2009, Together With Disclosure of Compensation Pursuant to Bankruptcy Rule 2016(b) (the "Sharf Declaration"), attached hereto as Exhibit A.[1]

18. The OCP Order further provides that "payment to any one Ordinary Course Professional shall not exceed $1 million for the period prior to the conversion of, dismissal of, or entry of a confirmation in these chapter 11 cases (the 'Chapter 11 Period')" and that "in the event payment to any Ordinary Course Professional exceeds $1 million during the Chapter 11 Period, such Ordinary Course Professional shall be required to file a retention application to be retained as a professional pursuant to sections 327 and 328 of the Bankruptcy

---

[1] Gibson Dunn has outstanding bills for services rendered and expenses incurred prior to September 1, 2009.  The Debtors will pay for these services and expenses in the ordinary course of business pursuant to the OCP Order.  With respect to months in which an Ordinary Course Professional seeks more than $150,000 in fees and expenses, the OCP Order provides that the relevant professional is "required to file a fee application for the full amount of its fees and expenses for that month in accordance with sections 330 and 331 of the Bankruptcy Code, the [Bankruptcy Rules], the [Local Rules], the Fee Guidelines promulgated by the U.S. Trustee, and any and all orders of the Court…."  The Debtors have been advised that Gibson Dunn is in the process of preparing fee applications for the months in which its bills exceeded $150,000.  The Debtors have been further advised that Gibson Dunn has outstanding bills for services rendered and expenses incurred after September 1, 2009.  The Debtors will pay Gibson Dunn on account of these services and expenses pursuant to the Interim Compensation Order (as defined below) once Gibson Dunn's retention is approved.

Code…." Gibson Dunn has determined that its fees for services rendered and expenses incurred during the Chapter 11 Period exceeded $1 million (the "OCP Cap") in September 2009. Accordingly, the Debtors now seek to retain Gibson Dunn as special counsel in accordance with the OCP Order and pursuant to section 327(e) of the Bankruptcy Code.

19. Furthermore, the Debtors request that Gibson Dunn's retention be made effective *nunc pro tunc* to September 1, 2009 to ensure that Gibson Dunn is compensated for all of its services to the Debtors. Establishing September 1, 2009 as the date of Gibson Dunn's retention as special counsel in these cases will enable Gibson Dunn to smoothly transition its billing practices and procedures from its prior retention as an Ordinary Course Professional and will enable Gibson Dunn to be compensated for all of its services rendered to the Debtors which provided value to the Debtors' estates. The Debtors submit that the circumstances of Gibson Dunn's initial retention as an Ordinary Course Professional, effective as of the Commencement Date, and the compensation provisions under the OCP Order warrant retroactive approval of Gibson Dunn as special counsel, particularly since Gibson Dunn provided necessary services to the Debtors and such services are of value to the estate and all parties in interest. *See In re Hasset, Ltd.*, 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002) (approving *nunc pro tunc* retention application and recognizing that "*nunc pro tunc* applications are disfavored in this Circuit but have been permitted when the attorney performs services of 'value' to the estate") (internal citations omitted); *see also In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) (finding that a bankruptcy court may grant a *post facto* application if employment meets statutory requirements and delay results from extraordinary circumstances); *Matter of Arkansas Co. Inc.*, 798 F.2d. 645 (3d Cir. 1986) (opining that bankruptcy courts have discretion in extraordinary circumstances to retroactively approve a professional's employment). Gibson Dunn has been diligently preparing

these application materials and performing the conflicts checks necessary to make the disclosures required by the Bankruptcy Rules since it learned that its fees and expenses would exceed $1 million.  However, due to the extraordinary circumstances of the size of the Debtors' cases and the vast number of potentially interested parties, it has taken Gibson Dunn until the date hereof to complete its conflicts checks and preparation of these application materials.

### Payment of Gibson Dunn's Fees and Expenses

20.    The Debtors propose to pay Gibson Dunn its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Sharf Declaration,[2] and to reimburse Gibson Dunn according to its customary reimbursement policies, and respectfully submit that such rates are reasonable.  The Debtors understand that in connection with the reimbursement of reasonable and necessary expenses, it is Gibson Dunn's policy to charge its clients for expenses incurred in connection with providing certain client services, including, without limitation, travel, lodging, photocopying, postage, vendor charges, long distance and other telephone charges, delivery service, and other expenses incurred in providing professional services.

21.    All of Gibson Dunn's fees and expenses incurred during these chapter 11 cases on or after September 1, 2009[3] will be subject to approval of the Court upon proper application by Gibson Dunn in accordance with section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the guidelines promulgated by the U.S. Trustee, as those

---

[2] The names, positions, resident offices, and current hourly rates of the Gibson Dunn lawyers currently expected to have primary responsibility for providing services to the Debtors are listed in **Schedule 1**, which is attached to the Sharf Declaration.  Other attorneys may provide services as well, depending on the legal issues facing the Debtors.

[3] The Debtors intend to pay Gibson Dunn for its services rendered and expenses incurred prior to September 1, 2009 in accordance with the OCP Order.

procedures may be modified or supplemented by order of this Court, including this Court's Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "<u>Interim Compensation Order</u>") [Docket No. 4165] and this Court's Order Appointing Fee Committee and Approving Fee Protocol [Docket No. 3651].

### Basis for Relief Requested

22.     The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based on and made in reliance upon the Sharf Declaration.

23.     The retention of Gibson Dunn under the terms described herein is appropriate under Bankruptcy Code sections 327(e), 328(a) and 1107.  Section 327(e) provides for the appointment of special counsel where the proposed counsel does not possess any interest that is materially adverse to the debtor with regard to the matter(s) that will be handled by counsel.  Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Moreover, section 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

24.     Accordingly, section 327(e) of the Bankruptcy Code authorizes the retention of counsel who previously represented a debtor prepetition provided that: (a) the appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the specified special purpose for which counsel is being retained does not rise to the level of

conducting the bankruptcy case for the debtor in possession. *See In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999) (noting that "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is retained,* there is no conflict and the representation can stand") (emphasis in original); *In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994). As explained more fully below, the Debtors submit that each of these factors is satisfied with respect to Gibson Dunn and that, therefore, its retention should be approved under section 327(e) of the Bankruptcy Code.

### A. The Employment and Retention of Gibson Dunn is in the Best Interests of the Estates

25. As described more fully in the Sharf Declaration, the Debtors retained Gibson Dunn with respect to the Representative Matters effective as of September 15, 2008 pursuant to the procedures set forth in the OCP Order. Gibson Dunn has been working on the Representative Matters since that date, particularly, the LB RE Transaction and, more recently, the RE Holdings Transaction. As a result, Gibson Dunn is intimately familiar with the facts and circumstances surrounding the LB RE Transaction and the RE Holdings Transaction. The Debtors believe that the continued employment of Gibson Dunn as special counsel for the Debtors will enable the Debtors to avoid the unnecessary expense otherwise attendant to having another law firm familiarize itself with the matters described above. For these reasons, the Debtors submit that the continued employment of Gibson Dunn is in the best interests of the Debtors, their estates, and their creditors.

### B. Gibson Dunn Holds No Interest Adverse to the Debtors or the Debtors' Estates With Respect to the Representative Matters

26. To the best of the Debtors' knowledge, and except as may be set forth in the Sharf Declaration, Gibson Dunn does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters as to which Gibson Dunn is to be employed.

*See In re AroChem*, 176 F.3d at 622 (emphasizing that, under section 327(e) of the Bankruptcy Code, potential conflicts must be evaluated only with respect to the scope of the proposed retention).  The Debtors have been informed that Gibson Dunn will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if any new relevant facts or relationships are discovered, Gibson Dunn will supplement its disclosure to the Court.

27. Gibson Dunn has informed the Debtors that prior to the Commencement Date, it was owed approximately $2,871,402.68 from the Debtors.  Gibson Dunn has not received payment of any of these outstanding amounts.  Gibson Dunn is, therefore, a prepetition creditor of the Debtors.[4]  However, Gibson Dunn's status as a prepetition creditor of the Debtors should not be an impediment to its retention by LBHI under section 327(e) of the Bankruptcy Code.  *See* 3 Collier on Bankruptcy ¶ 327.04[9][d] at 327-63 to 327-64 (15th ed. rev. 2009) ("the disinterested test of section 327(a) does not apply to section 327(e) because the attorney may, in fact, be a creditor of the debtor for fees related to such prepetition representation of the debtor ); *see also In re DeVlieg, Inc.*, 174 B.R. at 503 (holding that proposed attorney due outstanding prepetition fees did not hold interest adverse to the debtor or its estate for the matters for which it was to be retained under the "more relaxed conflict-of-interest standard" of section 327(e)).

28. Based on the foregoing and the disclosures set forth in the Sharf Declaration, the Debtors submit that Gibson Dunn does not hold or represent any interest adverse to the Debtors or the Debtors' estates with respect to the matters on which Gibson Dunn is to be employed.

---

[4] Gibson Dunn is also owed amounts by certain non-debtor Lehman entities for services rendered to those entities. Gibson Dunn anticipates that it will receive payment from those entities for such services.

**C.     Gibson Dunn will not Conduct the Debtors' Bankruptcy Case**

29.     By separate applications, the Debtors have sought and obtained the Court's approval to retain and employ Weil, Gotshal & Manges LLP as the Debtors' general bankruptcy counsel [Docket No. 1660], and Curtis, Mallet-Prevost. Colt & Mosle LLP as conflicts counsel [Docket No. 1659]. By contrast, Gibson Dunn's postpetition work is comprised substantially of the Representative Matters. None of these matters involve the conduct of the bankruptcy cases themselves. Additionally, because Gibson Dunn is not serving as the Debtors' general bankruptcy counsel, the Debtors believe that Gibson Dunn has not rendered "services . . . in contemplation of or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code. Accordingly, the services rendered and functions to be performed by Gibson Dunn have not been and will not be duplicative of any bankruptcy-related work performed by other law firms retained by the Debtors. Furthermore, Gibson Dunn will coordinate with the Debtors' other professionals to ensure that its services are, to the maximum extent possible, complimentary to other professionals' services.

30.     As described above, the Debtors' proposed retention of Gibson Dunn as special counsel to the Debtors falls squarely within the scope of and purpose for which Congress enacted section 327(e). As stated above, the Debtors do not believe that Gibson Dunn holds or represents any interest adverse to the Debtors or their estates with respect to the matters for which Gibson Dunn is proposed to be retained. Accordingly, the Debtors submit that the retention of Gibson Dunn is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

**Notice**

31.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Application in accordance with the procedures set forth in the

amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on: (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) Gibson Dunn. The Debtors submit that no other or further notice need be provided.

32. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: February 5, 2010
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession