Duane Morris LLP
A Delaware Limited Liability Partnership
1540 Broadway
New York, NY 10036
Tel:  (212) 692.1000
Fax: (212) 208.4521
Lawrence J. Kotler, Esq.
ljkotler@duanemorris.com
Patricia H. Piskorski Heer, Esq.
phheer@duanemorris.com

30 South 17th Street
Philadelphia, PA 19103-4196
Rudolph J. Di Massa, Jr., Esq.
DiMassa@duanemorris.com

*Counsel for Pennsylvania Public School Employees'
Retirement System*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x
**In re:**                                                :        **Chapter 11**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al*   :        **Case Nos. 08-13555 (JMP)**
                                                          :        **(Jointly Administered)**
                                **Debtors.**              :
----------------------------------------------------------- x

**REPLY OF PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT
SYSTEM TO DEBTORS' OBJECTION TO MOTION FOR ENTRY OF AN ORDER
THAT ITS TIMELY FILED GUARANTEE QUESTIONNAIRE BE CONSIDERED A
TIMELY FILED PROOF OF CLAIM, OR, IN THE ALTERNATIVE, TO PERMIT A
LATE CLAIM FILING PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9006(b)(1)**

Pennsylvania Public School Employees' Retirement System ("PSERS") respectfully

submits this reply in response to the Objection to Motion of PSERS for Entry of an Order That

Its Timely Filed Guarantee Questionnaire be Considered a Timely Filed Proof of Claim, or in the

Alternative, to Permit a Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure

9006(b)(1) (the "Objection") filed by Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated

debtors (collectively, the "Debtors"), and respectfully states as follows:

I.    **The Guarantee Questionnaire Placed The Debtors On Notice Of Their Obligations and Was Timely Filed**

1.    The purpose of a proof of claim is to "enable the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims." *See e.g., In re Hooker Invs., Inc.,* 937 F.2d 833, 840 (2d Cir. 1991). Official Form 10 is constructed to provide such information to debtors. There is no question that PSERS filed a guarantee questionnaire in the Debtors' chapter 11 case (the "Guarantee Questionnaire"). There is also no question that the Guarantee Questionnaire contained all of the information that is required to be set forth on Official Claim Form No. 10 and certainly put the Debtors on notice of their obligations to PSERS. Indeed, by their own admission, the Debtors acknowledged that the Guarantee Questionnaire required claimants to provide information that is required by Official Form No. 10. *See Debtors' Omnibus Reply to Objections to Motion of the Debtors to Establish Deadline for Filing Proofs of Claim,* ¶ 30. As a consequence, the Debtors do not (nor can they) argue in the Objection that the Guarantee Questionnaire did not provide them with sufficient information to identify the amount of the debt or to which entity they owe the debt. Most pointedly, the Debtors do not dispute the underlying guarantee obligation with respect to these Notes.

2.    The only contentions of the Debtors of any real significance in the Objection regarding the Guarantee Questionnaire is that the Guarantee Questionnaire cannot be deemed an informal proof of claim because (i) PSERS did not file a proof of claim and (ii) the Guarantee Questionnaire was not timely filed. With respect to the second point, there is no question that the Guarantee Questionnaire was timely filed. Indeed, the Guarantee Questionnaire was filed on October 21, 2009—a day before the October 22nd deadline to file this form.

3.      More importantly, however, the bar date for Lehman Program Securities was November 2, 2009.  While the initial deadline for filing proofs of claim was September 22, 2009, this November 2 deadline was the deadline for filing claims against the Debtors based on certain notes (i) issued by LBHI and its affiliates to retail investors located outside of the United States and (ii) included on a list of Lehman Program Securities.  As set forth more particularly on the Bar Date Order, itself, the list of Lehman Program Securities was required to include "at a minimum issuances under . . . that certain U.S. $100,000,000,000 Euro Medium Term-Note Program."  *See* Bar Date Order at 13.  The Notes, based on which Claim PSERS requests the Court to deem timely filed, are notes PSERS purchased under the U.S. $100,000,000,000 Euro Medium Term-Note Program.  Accordingly, the Guarantee Questionnaire, which PSERS asserts falls within court approved "informal" proofs of claim, was timely filed as it was filed prior to the November 2, 2009 Lehman Program Securities Bar Date.  Moreover, the Debtors were fully aware of their obligations to the holders of these notes, which included PSERS, among others, well before even the September 22, 2009 bar date.  Indeed, the Bar Date Order which was entered on July 2, 2009, discusses the U.S. $100,000,000,000 Euro Medium Term-Note Program pursuant to which PSERS purchased the Notes.

4.      The Debtors' Objection is circular and without merit.  For the reasons set forth herein and in PSERS's Motion, this Court should deem the Guarantee Questionnaire filed by PSERS as an informal proof of claim.

## II.     Alternatively, PSERS's Failure To File A Proof of Claim Is the Result of Excusable Neglect

5.      In the alternative, PSERS respectfully requests that it be permitted to file the proposed proof of claim, which was attached to the Motion, as a "late claim" under the doctrine of excusable neglect.  In determining whether to permit a claimant to file a proof of claim

pursuant to Bankruptcy Rule 9006(b)(1), courts must use an "elastic" and equitable approach taking account of all relevant circumstances. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd P'ship*, 507 U.S. 380, 392, 395 (1993). All four of the *Pioneer* factors: (i) prejudice; (ii) good faith; (iii) reason for delay; and (iv) length of delay must be weighed and balanced together as part of the "elastic concept" referred to by the Supreme Court. *Pioneer*, 507 U.S. at 395. Not all the *Pioneer* factors need to weigh in favor of the moving party in order for relief to be granted, and relief can be granted even if the Court finds against the movant as to the reason for delay, especially in a case where all the other *Pioneer* factors strongly favor the moving party. *E.g., In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 21756785, at *6 (Bankr. S.D.N.Y. July 30, 2003).

6.      While the Second Circuit Court of Appeals has applied a "hard line" to the excusable neglect standard, this Court must still review all four *Pioneer* factors and balance them. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 125 (2d Cir. 2005) (holding that the bankruptcy court did not abuse its discretion by denying relief where the moving party failed to persuade the bankruptcy court on three of the four *Pioneer* factors). *Enron* is explicit that the bankruptcy court has discretion to grant such relief. *In re Enron Corp.*, 419 F.3d at 125. The exercise of that discretion is to be based upon an integrated, balanced and equitable consideration of all four *Pioneer* factors; although the reason for the delay may be the single most important factor of the four, a weighing and equitable balancing of all factors is still required. *See, e.g., Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250-51 (2d Cir. 1997); *see also Welch & Forbes, Inc. v. Cendant Corp.*, 235 F.3d 176, 183-84 (3d Cir. 2000) (district court's sole focus on reason for delay to the exclusion of the other three *Pioneer* factors was "beyond the sound exercise of discretion"); *JFE Steel Corp.*

*v. Nat'l Steel Corp.*, No. 04-2935, 2004 U.S. Dist. LEXIS 16744, at *7-8 (N.D. Ill. Aug. 24, 2004) (district court found that bankruptcy court's sole focus on reason for delay, and not on all four factors of *Pioneer* test, was improper); *In re Crane Rental Co.*, 341 B.R. 118, 122 (Bankr. D. Mass. 2006), *aff'd sub nom.*, *Crane Rental Co. v. Int'l Union of Operating Eng'rs Local 4 Trust Funds*, No. 06-40104, 2006 U.S. Dist. LEXIS 52571 (D. Mass. July 31, 2006) (allowing a late filed proof of claim for excusable neglect, despite the delay being an attorney's inadvertent mistake).

7.      In this case, PSERS has met each of the *Pioneer* factors.  Despite the Debtors pontificating about what PSERS in hindsight should or should not have done, the circumstances that existed at the time were that PSERS, a public pension and major institutional investor, held multiple claims against the various Lehman entities.  Each of these claims was different, involving different investment managers, applicable against different entities, subject to different forums and, more importantly, subject to different court-established deadlines.  Sorting out each claim among numerous investment advisers was in itself a complex process.  Based on its communications with the investment manager that purchased the Notes, PSERS believed that it had done everything necessary to protect its rights with the filing of a notice of claim in the Dutch Proceeding involving the issuer of the Notes and the filing of a claim against the guarantor of the Notes in the U.S. cases.

### A.      The Reasons For The Delay In Filing The Claim Are Justifiable and Excusable

8.      Courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  *Pioneer*, 507 U.S. at 388.

9.      First, peeling away the Debtors' extraneous and factually erroneous testimonials, the Debtors attempt to impose a *per se* rule to the *Pioneer* element regarding the reason for the delay – namely, that miscommunication can never constitute excusable neglect.   However, the Supreme Court has explicitly rejected applying *per se* rules to the determination of excusable neglect.   *See, e.g., Canfield*, 217 F.3d at 250 (Prior to *Pioneer*, the Second Circuit Court of Appeals had "adhered to a firm rule that the excusable neglect standard could never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules;" *Pioneer* overruled such *per se* rules).   This Court is not bound by any hard and fast rule and, in fact, *Enron* is explicit that the bankruptcy court has discretion to grant relief to a claimant to file a late proof of claim.   The Debtors here, however, seek to convert their Objection, in essence, into a motion under Federal Rules of Civil Procedure 12(b)(6), attempting to foreclose PSERS's opportunity to establish that its miscommunication with DB Advisors, its investment advisors, is excusable.   Indeed, the Debtors' arguments taken to their logical extreme would preclude any claimant from filing a late claim as, presumably, almost every circumstance would be within the "control" of such claimant.

10.      The Debtors seek to limit the *Pioneer* doctrine and restrict the concept of "excusable neglect" to only those circumstances beyond the control of the movant.   However, the Debtors omit integral portions of the *Pioneer* court's reasoning: 'Excusable neglect' . . . is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392.   "[R]eading Rule 9006(b)(1) inflexibly to exclude every instance of an inadvertent or negligent omission would ignore the most natural meaning of the word 'neglect' and would be at odds with the accepted meaning of that word in analogous contexts." *Id*. at 394-95.   Courts have applied *Pioneer's* doctrine for

"excusable neglect" and have exercised their discretion to grant relief, even in cases involving mistakes and inadvertence. *See, e.g., New Life Health Ctr. Co. v. IRS*, No. CIV -95-0094-PHXSMM, 1995 U.S. Dist. LEXIS 10472, at *7-8 (D. Ariz. July 7, 1995) (district court characterizing miscommunication between IRS employees as a "clearly unintentional and excusable" reason for delay); *In re Babcock*, No. 00-558, 2001 U.S. Dist. LEXIS 16741, at *9 (E.D. La. Oct. 11, 2001) (lawyer's need to file 7000 claims held as sufficient reason for delay).

11.    Courts have also specifically held that when the other three *Pioneer* factors strongly favor the movant's application for relief, mistakes and inadvertence can constitute "excusable neglect." *See, e.g., In re Enron Corp.*, 2003 WL 21756785, at *6 (court granted relief despite reason for delay weighing against movant, where other three factors weighed strongly for movant); *Collezione Europa USA, Inc. v. Dugan*, No. 04-78434, 2007 Bankr. LEXIS 4606, at *11, 20 (Bankr. N.D. Ga. Dec. 17, 2007) (holding that mistaken belief and carelessness in dealing with bar notices constituted neglect for purposes of Bankruptcy Rule 9006(b)(1) and "[i]f this kind of mistake were judged to be inexcusable, even though no other harm or misconduct were shown, the equitable underpinning of *Pioneer* would be emasculated"); *In re Garden Ridge Corp.*, 348 B.R. 642, 646 (Bankr. D. Del. 2006) (holding that carelessness in law firm's handling of bar notice alone did not support denial of relief where all factors except for reason for delay weighed in favor of creditor); *In re Spring Ford Indus.*, No. 02-15015, 2003 Bankr. LEXIS 683, at *16-17 (Bankr. E.D. Pa. June 20, 2003) (holding that reason for delay attributable to misrouted mail and a corporate reorganization did not prevent court from granting relief where other three *Pioneer* factors weighed strongly in movant's favor); *In re Hall*, 259 B.R. 680, 682 (Bankr. N.D. Ind. 2001) (relief granted allowing late filed proof of claim where miscommunication between

two lawyers who each thought the other had filed the proof of claim timely is the "type of 'inadvertence, mistake or carelessness' [which] is not beyond the scope of excusable neglect.").

12.    Contrary to the Debtors' superfluous allegations, the facts here, as set forth in the Declaration of Andrew Fiscus in Support of the Motion of PSERS, sufficiently support a finding that the misunderstanding between PSERS and DB Advisors is excusable.  PSERS was diligent in attempting to navigate the various Lehman bar dates, both domestically and internationally, and held a good faith belief that it was complying with all applicable bar dates.  In response to PSERS's request in filing claims related to the transactions that DB Advisors entered into on behalf of PSERS, DB Advisors informed PSERS that it would file a claim related to the Notes on PSERS's behalf.  PSERS had a good faith belief that DB Advisors did in fact file the Claim since (i) it filed a notice of claim with the administrator in the Dutch Proceeding and (ii) a Guarantee Questionnaire was filed.  The Guarantee Questionnaire required that a proof of claim be filed before the Guarantee Questionnaire was filed.  Accordingly, since the Guarantee Questionnaire was filed, PSERS had no reason to believe that the initially required proof of claim was not filed.

13.    The case law cited here by the Debtors in support of their assertion that "office mixups, clerical mistakes, and failure to follow office procedure do not generally constitute excusable neglect" is inapposite.  The cases cited by the Debtors all involve facts which are just not present here: inadvertent filing away of bar dates,[1] misplacing notices,[2] ignoring procedures,[3] failing to follow up,[4] and assuming completion of filing.[5]  PSERS did not inadvertently misplace

---

[1] *In re Dana Corp.*, No. 06-10354, 2008 WL 2885901 (Bankr. S.D.N.Y. July 23, 2008).

[2] *In re Pruitt v. Metcalf Eddy Inc.*, No. 03 Civ. 4780, 2006 WL 760279 (S.D.N.Y. Mar. 24, 2006).

[3] *In re Chateaugay Corp.*, No. 92 Civ. 8722, 1993 WL 1127180 (S.D.N.Y. Apr. 22, 1993).

[4] *In re Kmart Corp.*, 381 F.3d 709 (7th Cir. 2004).

or file away the bar date notice; rather, it diligently sought to have DB Advisors file the Claim. Nor did it just simply assume that DB Advisors would file the Claim. PSERS had specific conversations with DB Advisors and was informed that DB Advisors would file a claim on PSERS's behalf. Moreover, PSERS also knew that DB Advisors filed a notice, based upon these obligations, in the Dutch Proceeding. PSERS also knew that the Guarantee Questionnaire which required a previously filed proof of claim had been filed prior to the October 22 deadline. Thus, any failure to follow up was the result of PSERS's good faith belief that a proof of claim had been filed based on the facts that DB Advisors had informed PSERS it would file a claim; had filed a claim based upon these obligations in the Dutch Proceeding; and had filed the Guarantee Questionnaire, which, *inter alia*, required a proof of claim.

14.    Despite the Debtor's efforts to misconstrue the facts here, this is not typical of other "excusable neglect" cases where counsel simply "missed" a deadline. The excusable neglect here was a product of multiple factors. This Court can take into account the existence of multiple bar dates and an earlier attempt at redemption of the Notes. Moreover, as stated above, PSERS had every reason to believe that the Claim was properly filed (a belief which, in hindsight, proved to be a misunderstanding between PSERS and DB Advisors). This miscommunication, though, is because of the overtly complicated claim process in these cases. PSERS made a diligent effort to comply with the Bar Date Order and, as detailed above, has a justifiable reason for delay.

---

(Continued…)

[5] *In re Enron Corp*., No. 01-16034, 2006 WL 898031 (Bankr. S.D.N.Y. Mar. 29, 2006).

B.        **There is No Danger of Prejudice to the Debtors**

15.        PSERS's Claim of $36 million is a fraction of a percent of the $613 billion in total debts listed by the Debtors in Exhibit A to their Voluntary Petition -- and even smaller in relation to the $830 billion in filed claims.  Accordingly, the size of PSERS's Claim cannot be seriously said to have an impact on the administration of the case.  *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995).  This is particularly true in light of the fact that these claims are based upon a guarantee obligation and, as such, could be substantially reduced based upon distributions received in connection with the Dutch Proceeding.   In addition, no plan of reorganization has been filed and the Debtors concede that  the process of reviewing filed claims is still underway.

16.        The Debtors instead argue that granting relief to PSERS will lead claimants in similar positions to seek relief from the Court to have their claims deemed timely filed.  This is not an issue in relation to PSERS, because there are unique facts here.  First, PSERS has satisfied all the elements required under the *Pioneer* test.  In addition, PSERS's delay was not the result of mere "mistake or inadvertence" as suggested by the Debtors, but instead due to miscommunication that is reasonable in light of the very complex claims process in this case.  Through an unusual process, three bar dates were established in this case: an initial general bar date, a questionnaire bar date and a subsequent bar date for claims based on Lehman Programs Securities.  This confusion was further amplified by the Debtors' own mistake in listing the Medium Notes as obligations which were to be part of the Lehman Programs Securities.  As with the claimant in *Pioneer*, "the lack of any prejudice to the Debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim." 507 U.S. at 398.  And just as in *In re Enron*

*Corp.*, 2003 WL 21756785, "the circumstances surrounding [the] claim are sufficiently unique to counter the Debtors' concerns of possibly opening up the floodgates to other late-filed claims." *Id*. at *5.

### C.     The Length of Delay Is *De Minimis*

17.     The Debtors properly point out that PSERS filed the Motion seeking relief under Bankruptcy Rule 9006(b).  Bankruptcy Rule 9006(b) provides, in relevant part, that when an act is required to be done at a specified period of time, the court on motion made may permit the act to be done.  PSERS is doing exactly that by its Motion, moving for the Court to permit it to file the Claim.  Contrary to the disingenuous assertions of the Debtors, PSERS attached a proposed proof of claim to the Motion, which was and is part of the judicial record.

18.     When all four of the *Pioneer* factors are weighed and balanced together as part of the "elastic concept" of excusable neglect referred to by the Supreme Court, the facts set forth by the Movant fit squarely therein, and this Court should grant the requested relief.

**DUANE MORRIS LLP**

Dated:  February 5 , 2010                    By: */s/ Patricia H. Piskorski Heer*

                                                                    Patricia H. Piskorski Heer, Esq.
                                                                    Lawrence J. Kotler, Esq.
                                                                    Rudolph J. Di Massa, Jr., Esq.
                                                                    1540 Broadway
                                                                    New York, NY 10036
                                                                    Telephone:   (212) 692.1000
                                                                    Facsimile:   (212) 208.4521
                                                                    *Counsel for Pennsylvania Public School*
                                                                    *Employees' Retirement System*