WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman
Ronit J. Berkovich

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re                                                       :   Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :   08-13555 (JMP)
                                                            :
                    Debtors.                                :   (Jointly Administered)
                                                            :
                                                            :
------------------------------------------------------------x
                                                            :
                                                            :
                                                            :
LEHMAN BROTHERS HOLDINGS INC.,                              :
                    Plaintiffs,                             :   Adv. Pro. No. _____
                                                            :
           v.                                               :
                                                            :
JEFFREY SOFFER,                                             :
FONTAINEBLEAU RESORTS, LLC                                  :
                    Defendants.                             :
------------------------------------------------------------x


# COMPLAINT ON MEZZANINE GUARANTIES
# BY LEHMAN BROTHERS HOLDINGS INC. AGAINST
# JEFFREY SOFFER AND FONTAINEBLEAU RESORTS, LLC

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Plaintiff Lehman Brothers Holdings Inc., as debtor and debtor in possession in the above-referenced chapter 11 cases, ("Lehman"), brings this complaint primarily to recover damages based on debts secured by a series of written guaranties executed by defendants Jeffrey Soffer and Fontainebleau Resorts, LLC (together, the "Guarantors") in favor of Lehman, and alleges as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

2. This action is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

### PARTIES

4. Plaintiff LEHMAN BROTHERS HOLDINGS INC. is a Delaware corporation.

5. Defendant JEFFREY SOFFER is an individual and resident of Florida.

6. Defendant FONTAINEBLEAU RESORTS, LLC is a Delaware limited liability company.

7. Upon information and belief, Jeffrey Soffer is the indirect owner of Fontainebleau Resorts, LLC, which is the indirect owner of both Resort Borrower and Retail Borrower (as hereinafter defined).

## BACKGROUND

8.  Fontainebleau Resorts, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, and Fontainebleau Las Vegas Capital Corp. (together, the "Resort Borrower"); and Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC, and Fontainebleau Las Vegas Retail, LLC (together, the "Retail Borrower") engaged in ongoing construction and development of "Fontainebleau Las Vegas," a casino hotel resort with gaming, lodging, retail, convention, and entertainment amenities situated on approximately 24.4 acres at the sites of the former El Rancho Hotel and Algiers Hotel on the north end of the Las Vegas Strip in Las Vegas, Nevada (the "Project").[1]

9.  The Project consists of two components -- resort and retail. The Resort Borrower sought to develop the resort component – conceived as a 63-story glass skyscraper with thousands of guest rooms; an approximately 100,000 square-foot casino; hundreds of thousands of square footage of convention and meeting space; and a spa, rooftop pool, and theater for live entertainment and shows (the "Resort Component"), while the Retail Borrower sought to develop the retail component – conceived as approximately 286,500 square feet of restaurants, nightclubs, and related amenities (the "Retail Component"). Pursuant to a June 6, 2007 lease agreement, the Retail Borrower has leased the Retail Component from the Resort Borrower (the "Leased Property").

---

[1]  The Resort Borrower, excluding Fontainebleau Resorts, LLC, and Retail Borrower are debtors and debtors-in-possession in the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of Florida under Jointly Administered Chapter 11 Case No. 09-21481-BKC-AJC. Jeffrey Soffer and Fontainebleau Resorts, LLC, named as defendants in this action, did not seek voluntary bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10. The Resort Borrower and Retail Borrower sought loans to finance the construction and development of the Project. To finance the Resort Component, the Resort Borrower entered into a Credit Agreement (the "Resort Loan Agreement") with Bank of America, N.A., as administrative agent and lender (the "Resort Lender") on June 6, 2007 (the "Closing Date"), pursuant to which it obtained loans and other extensions of credit (the "Resort Loan").

11. In turn, the Retail Borrower turned to Lehman, requesting financing for the Retail Component of the Project. On the Closing Date, Fontainebleau Las Vegas Retail Mezzanine, LLC and Fontainebleau Las Vegas Retail Parent, LLC (together, the "Retail Mezzanine Borrower") entered into a loan agreement and certain other documents with Lehman. In connection with this financing, Lehman received three separate guaranties from the defendants in this action.

12. Resort Borrower eventually defaulted on its obligations under the Resort Loan. On or about April 20, 2009, the Resort Lender notified the Resort Borrower that one or more events of default had occurred under the Resort Loan Agreement (each, a "Resort Event of Default").

13. Thereafter, on June 9, 2009, the Resort Borrower, excluding Fontainebleau Resorts, LLC, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Retail Borrower subsequently filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on November 25, 2009.

14. The bankruptcy filings of Resort Borrower and Retail Borrower, as well as certain other events described below in more detail, constitute events of default under the terms of Loan Documents, (as hereinafter defined). Lehman is therefore entitled to and

hereby seeks payment and other relief under the terms of the various guaranties provided by defendants, the Guarantors.

## THE LOAN DOCUMENTS

15. On the Closing Date, Lehman entered into a mezzanine loan agreement (as amended, the "Retail Mezzanine Loan Agreement") with the Retail Mezzanine Borrower for a loan in the original aggregate principal amount of $85,000,000 (the "Retail Mezzanine Loan"), a copy of which is attached hereto as Exhibit A.

16. The Retail Mezzanine Loan is evidenced by a Promissory Note dated as of the Closing Date and made by the Retail Mezzanine Borrower payable to Lehman (the "Retail Mezzanine Promissory Note"), a copy of which is attached hereto as Exhibit B.

17. The Retail Mezzanine Loan is secured, in part, by three guaranties each dated as of the Closing Date and each made by both Guarantors in favor of Lehman: (i) a guaranty of payment (the "Mezzanine Payment Guaranty"), a copy of which is attached hereto as Exhibit C; (ii) a guarantee of recourse obligations (the "Mezzanine Recourse Guaranty"), a copy of which is attached hereto as Exhibit D; and (iii) a completion guaranty (the "Mezzanine Completion Guaranty"), a copy of which is attached hereto as Exhibit E.

18. The Retail Mezzanine Loan Agreement, the Mezzanine Promissory Note, the Mezzanine Payment Guaranty, the Mezzanine Completion Guaranty, and the Mezzanine Recourse Guaranty, together with all other documents executed and/or delivered in connection with the Retail Mezzanine Loan, are hereinafter collectively referred to as the "Loan Documents."

19. The funds advanced under the Loan Documents were used by the Retail Mezzanine Borrower for, among other things, the construction and development of the Project.

## THE DEFAULTS

20. Several defaults have occurred and are continuing under the Loan Documents.

21. For example, the Retail Mezzanine Loan Agreement provides that an event of default occurs if the Retail Borrower files a petition for bankruptcy pursuant to the Bankruptcy Code. As discussed above, the Retail Borrower filed bankruptcy petitions on November 25, 2009. The commencement of these bankruptcy proceedings constitute an event of default under the Retail Mezzanine Loan Agreement.

22. As another example, the Retail Mezzanine Loan Agreement provides that an event of default occurs if an event of default occurs under the Resort Loan prior to certain events, namely the "Satisfactory DSCR Date" and "Completion Date," as those terms are defined in the Loan Documents. An event of default occurred under the Resort Loan prior to the Satisfactory DSCR Date and Completion Date. Specifically, on April 20, 2009, the Resort Lender provided notice to the Resort Borrower that one or more events of default had occurred under the Resort Loan. At that time, neither the Satisfactory DSCR Date nor the Completion Date had occurred. Accordingly, an event of default occurred under the Retail Mezzanine Loan Agreement.

23. Based on the various defaults, on October 21, 2009, Lehman provided notice to the Retail Mezzanine Borrower and the Guarantors that an event of default had

occurred under the Loan Documents and that the loan was immediately due and payable in full.

24. To date, no payment has been made to Lehman under the Retail Mezzanine Loan.

A. **PAYMENT GUARANTY**

25. Under the Mezzanine Payment Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Lehman "the prompt and unconditional payment" of the Guaranteed Amount, defined as the maximum principal sum of the Retail Mezzanine Loan including all unpaid interest. *See* Ex. C, pg. 1.

26. The terms of the Mezzanine Payment Guaranty allow Lehman to seek full payment of the outstanding balance of the Retail Mezzanine Loan "upon any default of the Borrower" under the Loan Documents. Specifically, "Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full Guaranteed Amount or any portion thereof, without proceeding against Borrower or any other person . . . ." *See* Ex. C, pg. 5.

27. The Mezzanine Payment Guaranty also allows Lehman to seek full repayment if the Retail Mezzanine Borrower files petitions for bankruptcy pursuant to the Bankruptcy Code,

> if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower . . . Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor.

*See* Ex. C, pg. 3.

28.    The Mezzanine Payment Guaranty further mandates that Guarantors shall reimburse Agent "for all expenses (including reasonable counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Amount or any portion thereof or with the enforcement of this Guaranty." *See* Ex. C, pg. 2.

29.    As discussed above, Retail Mezzanine Borrower has defaulted under the Loan Documents and filed bankruptcy petitions.

30.    Thus, under the clear terms of the Mezzanine Payment Guaranty, the Guarantors are required to pay the outstanding balance of the Retail Mezzanine Loan, including all accrued and outstanding interest and fees, and reimburse Agent for all expenses incurred in connection with the collection and enforcement of the Payment Guaranty.

**B.    *COMPLETION GUARANTY***

31.    Under the Mezzanine Completion Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Lehman "the prompt and unconditional payment and performance of the Guaranteed Obligations." *See* Ex. E, pg. 1.

32.    The Mezzanine Completion Guaranty defines "Guaranteed Obligations" as, *inter alia*, the completion of (i) "the Retail Shell" (as defined in the Mezzanine Completion Guaranty), and "such improvements necessary to make the Retail Shell accessible to the general public"; and (ii) "no less than seventy percent (70%) of the tenant improvements". *See* Ex. E, pg. 1.

33.    The terms of the Mezzanine Completion Guaranty allow Lehman to demand that Guarantors satisfy the Guaranteed Obligations "[i]f Borrower does not . . .

satisfy the Guaranteed Obligations in accordance with the Loan Documents after the expiration of all applicable notice, grace and cure periods . . . ." *See* Ex. E, pg. 2.

34. Retail Mezzanine Borrower has not satisfied the Guaranteed Obligations in accordance with the Loan Documents.

35. The terms of the Mezzanine Completion Guaranty also provide that "upon any default of Borrower" under the Loan Documents, Lehman "may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of liability hereunder or any portion thereof, without proceeding against Borrower or any other person . . . ." *See* Ex. E, pg. 5.

36. Like the Mezzanine Payment Guaranty, the Mezzanine Completion Guaranty also states that,

> if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower . . . Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor.

*See* Ex. E, pg. 3.

37. Finally, the Mezzanine Completion Guaranty further mandates that Guarantors shall reimburse Lehman "for all expenses (including reasonable counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty." *See* Ex. E, pg. 2.

38. As discussed above, Retail Mezzanine Borrower has defaulted under the Loan Documents, failed to satisfy the Guaranteed Obligations, and filed bankruptcy petitions.

39. Thus, the Guarantors are required to perform the Guaranteed Obligations and Lehman may declare the Retail Mezzanine Loan due and payable and enforce any or all of its rights and remedies against the Guarantors.

C.  *RECOURSE GUARANTY*

40. Under the Mezzanine Recourse Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Lehman "the prompt and unconditional payment of the Guaranteed Recourse Obligations." *See* Ex. D, pg. 1.

41. The Mezzanine Recourse Guaranty defines "Guaranteed Recourse Obligations" as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 9.4 of the Loan Agreement." *See* Ex. D, pg. 1.

42. Under Section 9.4 of the Retail Mezzanine Loan Agreement, if the Leased Property becomes property of the estate in a voluntary bankruptcy proceeding, Lehman may seek recourse against the Retail Mezzanine Borrower to enforce the liability and obligations of the Retail Mezzanine Borrower to perform and observe the obligations contained in the Loan Documents. *See* Ex. A, pg. 124-26.

43. The Leased Property has become property of the estate in the voluntary bankruptcy proceeding of Retail Borrower.

44. The terms of the Mezzanine Recourse Guaranty also provide that "upon any default of Borrower with respect to a Guaranteed Recourse Obligation of Borrower," Lehman "may, at its option, proceed directly and at once, without notice, against

Guarantor to collect and recover the full amount of liability hereunder with respect to such default or any portion thereof, without proceeding against Borrower or any other person…". *See* Ex. D, pg. 4-5.

45. The Mezzanine Recourse Guaranty further mandates that Guarantors shall reimburse Lehman "for all expenses (including reasonable counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations…" *See* Ex. D, pg. 2.

46. Retail Mezzanine Borrower has not satisfied the Guaranteed Recourse Obligations.

47. Thus, under the terms of the Mezzanine Recourse Guaranty, the Guarantors are required to perform the Guaranteed Recourse Obligations, including full payment of the outstanding balance and accrued interest on the Retail Mezzanine Loan and reimburse Lehman for all expenses incurred in connection with the collection of the Guaranteed Recourse Obligations.

## EMPLOYMENT OF COUNSEL

48. Lehman has employed the undersigned counsel as its attorneys in connection with this matter and has obligated itself to pay said attorneys their market rate fees for their services and to reimburse them for expenses in connection herewith.

## SATISFACTION OF CONDITIONS PRECEDENT

49. All conditions precedent to the commencement of this action have been performed by Lehman or have otherwise occurred.

## THE UNJUST ENRICHMENT

50. Lehman provided funds to Retail Mezzanine Borrower.

51.     Guarantors knew that Lehman provided such funds with the expectation that they would be reimbursed.

52.     Guarantors were enriched by virtue of the acceptance of the funds from Lehman by Retail Mezzanine Borrower.

53.     For example, funds were used for the construction and development of the Project, providing a direct benefit to the Guarantors as indirect owners of the Retail Senior Borrower.

54.     It is inequitable for Guarantors to retain the benefit and enrichment that they received by virtue of the acceptance of the funds from Lehman by Retail Mezzanine Borrower.

## COUNT I BREACH OF CONTRACT
### (MEZZANINE PAYMENT GUARANTY)

55.     Lehman reasserts and realleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

56.     The Retail Mezzanine Loan is evidenced by the Loan Documents, including the Retail Mezzanine Promissory Note, delivered to Lehman on June 6, 2007 in favor of Lehman for $85,000,000.

57.     The Retail Borrower commenced bankruptcy proceedings pursuant to the Bankruptcy Code on November 25, 2009, constituting an event of default under the Retail Mezzanine Loan Agreement.

58.     Additionally, an event of default occurred under the Resort Loan Agreement prior to either the Satisfactory DSCR Date or the Completion Date, constituting an event of default under the Retail Mezzanine Loan Agreement.

59. Pursuant to the Mezzanine Payment Guaranty, the Guarantors guaranteed, upon the occurrence of an event of default under the Retail Mezzanine Loan Agreement, payment of all interest due and the maximum principal sum of the Retail Mezzanine Loan.

60. The Guarantors owe Lehman the total amount of outstanding principal, accrued interest, and other fees outstanding under the Retail Mezzanine Loan.

## COUNT II BREACH OF CONTRACT
## (MEZZANINE COMPLETION GUARANTY)

61. Lehman reasserts and realleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

62. The Retail Mezzanine Loan is evidenced by the Loan Documents, including the Retail Mezzanine Promissory Note, delivered to Lehman on June 6, 2007 in favor of Lehman for $85,000,000.

63. The Retail Borrower commenced bankruptcy proceedings pursuant to the Bankruptcy Code on November 25, 2009, constituting an event of default under the Retail Mezzanine Loan Agreement.

64. Additionally, an event of default occurred under the Resort Loan Agreement prior to either the Satisfactory DSCR Date or the Completion Date, constituting an event of default under the Retail Mezzanine Loan Agreement.

65. Pursuant to the Mezzanine Completion Guaranty, the Guarantors guaranteed, upon the occurrence of an event of default under the Retail Mezzanine Loan Agreement, completion of the Guaranteed Obligations, including, *inter alia*, the Retail Shell and certain tenant improvements.

66. The Retail Mezzanine Borrower defaulted under the Retail Mezzanine Loan Agreement and has not satisfied the Guaranteed Obligations under the Loan Documents. Thus, the Guarantors are required to perform the Guaranteed Obligations.

### COUNT III BREACH OF CONTRACT
### (MEZZANINE RECOURSE GUARANTY)

67. Lehman reasserts and realleges the allegations set forth in paragraphs 1 through 49 as thought fully set forth herein.

68. The Retail Mezzanine Loan is evidenced by the Loan Documents, including the Retail Senior Promissory Note, delivered to Lehman on June 6, 2007 in favor of Lehman for $85,000,000.

69. Pursuant to the Mezzanine Recourse Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Lehman "the prompt and unconditional payment of the Guaranteed Recourse Obligations." *See* Ex. D, pg. 1.

70. The Mezzanine Recourse Guaranty defines "Guaranteed Recourse Obligations" as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 9.4 of the Loan Agreement." *See* Ex. D, pg. 1..

71. Under Section 9.4 of the Retail Mezzanine Loan Agreement, if the Leased Property becomes property of the estate in a voluntary bankruptcy or insolvency proceeding, Lehman may seek recourse against the Retail Mezzanine Borrower to enforce the liability and obligations of the Retail Mezzanine Borrower to perform and observe the obligations contained in the Loan Documents. *See* Ex. A, pg. 124-26.

72. The Leased Property has become property of the estate in the bankruptcy proceedings of Retail Borrower.

73. The Guarantors are required to perform the Guaranteed Recourse Obligations, including repayment of the total amount of outstanding principal, accrued interest, and other fees outstanding under the Retail Mezzanine Loan.

## COUNT IV UNJUST ENRICHMENT

74. Lehman reasserts and realleges the allegations set forth in paragraphs 50 through 54 as though fully set forth herein.

75. Lehman conferred a benefit on Guarantors by providing funds to Retail Mezzanine Borrower.

76. Guarantors knew that Lehman provided the funds with the expectation that they would be reimbursed.

77. Guarantors were enriched at Lehman's expense by virtue of the acceptance of the funds from Lehman by Retail Mezzanine Borrower.

78. The aforementioned circumstances make it inequitable for Guarantors to retain the benefit that Lehman conferred on them.

## COUNT V TURNOVER OF PROPERTY

79. Lehman repeats and realleges each and every allegation set forth in paragraphs 1 through 49 as if set forth fully herein.

80. Pursuant to section 542(b) of the Bankruptcy Code, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, must pay the debt to, or on the order of the trustee or debtor in possession.

81. The total amount of outstanding principal on the Loan and accrued and unpaid interest is $129,300,480.15.

82.     Under the clear and unambiguous language of the Loan Documents, the Retail Mezzanine Borrower defaulted and the Guarantors are obligated to repay the full amount of the Retail Mezzanine Borrower's obligations under the Loan Documents.

83.     Pursuant to section 541 of the Bankruptcy Code, the debt owed to Lehman by the Guarantors is property of Lehman's estate.

84.     Accordingly, Lehman requests that Guarantors be directed to turnover these funds or their equivalent, including accrued interest and costs thereon, for the benefit of its estate and creditors pursuant to section 542 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff Lehman Brothers Holdings Inc. respectfully requests that this Court render a judgment in its favor against Defendants Jeffrey Soffer and Fontainebleau Resorts, LLC, jointly and severally, as follows:

1. awarding Lehman damages in an amount to be determined, plus interest, attorneys' fees, costs and expenses,

2. declaring that Guarantors are required to complete the Guaranteed Obligations, including the Retail Shell and other tenant improvements, and

3. awarding Lehman such other relief that this Court deems just, fair, and equitable.

Dated: February 11, 2010
       New York, New York

/s/ Ronit J. Berkovich
Shai Y. Waisman
Ronit J. Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession