WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman
Ronit J. Berkovich

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
In re                                                          :    Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                       :    08-13555 (JMP)
                                                               :
                       Debtors.                                :    (Jointly Administered)
                                                               :
                                                               :
---------------------------------------------------------------x
:
:
:
LEHMAN BROTHERS HOLDINGS INC.,                                 :
                       Plaintiffs,                             :    Adv. Pro. No. _____
                                                               :
       v.                                                      :
                                                               :
JEFFREY SOFFER,                                                :
FONTAINEBLEAU RESORTS, LLC                                     :
                       Defendants.                             :
---------------------------------------------------------------x

**COMPLAINT ON SENIOR GUARANTIES
BY LEHMAN BROTHERS HOLDINGS INC. AGAINST
JEFFREY SOFFER AND FONTAINEBLEAU RESORTS, LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Plaintiff Lehman Brothers Holdings Inc., as debtor and debtor in possession in the above-referenced chapter 11 cases, ("Lehman"), in its capacity as agent ("Agent"), on behalf of itself and the other lenders (collectively, the "Lenders") under the Co-Lending Agreement (as hereinafter defined) brings this complaint primarily to recover damages based on debts secured by a series of written guaranties executed by defendants Jeffrey Soffer and Fontainebleau Resorts, LLC (together, the "Guarantors") in favor of Agent for the benefit of the Lenders, and alleges as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

2. This action is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4. Plaintiff LEHMAN BROTHERS HOLDINGS INC. is a Delaware corporation.

5. Defendant JEFFREY SOFFER is an individual and resident of Florida.

6. Defendant FONTAINEBLEAU RESORTS, LLC is a Delaware limited liability company.

7. Upon information and belief, Jeffrey Soffer is the indirect owner of Fontainebleau Resorts, LLC, which is the indirect owner of both Resort Borrower and Retail Borrower (as hereinafter defined).

## BACKGROUND

8. Fontainebleau Resorts, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, and Fontainebleau Las Vegas Capital Corp. (together, the "Resort Borrower"); and Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC, and Fontainebleau Las Vegas Retail, LLC (together, the "Retail Borrower") engaged in ongoing construction and development of "Fontainebleau Las Vegas," a casino hotel resort with gaming, lodging, retail, convention, and entertainment amenities situated on approximately 24.4 acres at the sites of the former El Rancho Hotel and Algiers Hotel on the north end of the Las Vegas Strip in Las Vegas, Nevada (the "Project").[1]

9. The Project consists of two components -- resort and retail. The Resort Borrower sought to develop the resort component -- conceived as a 63-story glass skyscraper with thousands of guest rooms; an approximately 100,000 square-foot casino; hundreds of thousands of square footage of convention and meeting space; and a spa, rooftop pool, and theater for live entertainment and shows (the "Resort Component"), while the Retail Borrower sought to develop the retail component -- conceived as

---

[1] The Resort Borrower, excluding Fontainebleau Resorts, LLC, and Retail Borrower are debtors and debtors-in-possession in the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of Florida under Jointly Administered Chapter 11 Case No. 09-21481-BKC-AJC. Jeffrey Soffer and Fontainebleau Resorts, LLC, named as defendants in this action, did not seek voluntary bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

approximately 286,500 square feet of restaurants, nightclubs, and related amenities (the "Retail Component"). Pursuant to a June 6, 2007 lease agreement, the Retail Borrower has leased the Retail Component from the Resort Borrower (the "Leased Property").

10. The Resort Borrower and Retail Borrower sought loans to finance the construction and development of the Project. To finance the Resort Component, the Resort Borrower entered into a Credit Agreement (the "Resort Loan Agreement") with Bank of America, N.A., as administrative agent and lender (the "Resort Lender") on June 6, 2007 (the "Closing Date"), pursuant to which it obtained loans and other extensions of credit (the "Resort Loan").

11. In turn, the Retail Borrower requested financing for the Retail Component of the Project from Agent and the Lenders. On the Closing Date, Fontainebleau Las Vegas Retail, LLC (the "Retail Senior Borrower") entered into the Retail Senior Loan Agreement (as defined below) and certain other documents with Agent. In connection with this financing, Agent and the Lenders received three separate guaranties from the defendants in this action.

12. Resort Borrower eventually defaulted on its obligations under the Resort Loan. On or about April 20, 2009, the Resort Lender notified the Resort Borrower that one or more events of default had occurred under the Resort Loan Agreement (each, a "Resort Event of Default").

13. Thereafter, on June 9, 2009, the Resort Borrower, excluding Fontainebleau Resorts, LLC, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Retail Borrower subsequently filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on November 25, 2009.

14. The bankruptcy filings of Resort Borrower and Retail Borrower, as well as certain other events described below in more detail, constitute events of default under the terms of Loan Documents (as hereinafter defined). Agent is therefore entitled to and hereby seeks payment and other relief under the terms of the various guaranties provided by defendants, the Guarantors.

## THE LOAN DOCUMENTS

15. On the Closing Date, Agent entered into a loan agreement (the "Retail Senior Loan Agreement") with the Retail Senior Borrower for a loan in the original aggregate principal amount of $315,000,000 (as amended, the "Retail Senior Loan"), a copy of which is attached hereto as Exhibit A.

16. Contemporaneously, on the Closing Date, Agent and each of the other Lenders entered into that certain Co-Lending Agreement dated as of June 6, 2007 (the "Co-Lending Agreement") with respect to the Retail Senior Loan. A copy of the Co-Lending Agreement is attached hereto as Exhibit B.

17. The Retail Senior Loan is evidenced by a Promissory Note dated as of the Closing Date and made by the Retail Senior Borrower payable to Agent (the "Retail Senior Promissory Note"), a copy of which is attached hereto as Exhibit C.

18. The Retail Senior Loan is secured, in part, by three guaranties each dated as of the Closing Date and each made by both Guarantors in favor of Agent: (i) a guaranty of payment (the "Payment Guaranty"), a copy of which is attached hereto as Exhibit D; (ii) a guaranty of recourse obligations (the "Recourse Guaranty"), a copy of which is attached hereto as Exhibit E; and (iii) a completion guaranty (the "Completion Guaranty"), a copy of which is attached hereto as Exhibit F.

19. The Retail Senior Loan Agreement, the Retail Senior Promissory Note, the Payment Guaranty, the Completion Guaranty, and the Recourse Guaranty, together with all other documents executed and/or delivered in connection with the Retail Senior Loan, are hereinafter collectively referred to as the "Loan Documents."

20. The funds advanced under the Loan Documents were used by the Retail Senior Borrower for, among other things, the construction and development of the Project.

## THE DEFAULTS

21. Several defaults have occurred and are continuing under the Loan Documents.

22. For example, the Retail Senior Loan Agreement provides that an event of default occurs if the Retail Borrower files a petition for bankruptcy pursuant to the Bankruptcy Code. As discussed above, the Retail Borrower filed bankruptcy petitions on November 25, 2009. The commencement of these bankruptcy proceedings constitute an event of default under the Retail Senior Loan Agreement.

23. As another example, the Retail Senior Loan Agreement provides that an event of default occurs if an event of default occurs under the Resort Loan prior to certain events, namely the "Satisfactory DSCR Date" and "Completion Date," as those terms are defined in the Loan Documents. An event of default occurred under the Resort Loan prior to the Satisfactory DSCR Date and Completion Date. Specifically, on April 20, 2009, the Resort Lender provided notice to the Resort Borrower that one or more events of default had occurred under the Resort Loan. At that time, neither the Satisfactory

DSCR Date nor the Completion Date had occurred. Accordingly, an event of default occurred under the Retail Senior Loan Agreement.

24. Based on the various defaults, on October 21, 2009, Agent provided notice to the Retail Senior Borrower and the Guarantors that an event of default had occurred under the Loan Documents and that the loan was immediately due and payable in full.

25. To date, no payment has been made to Agent or the Lenders under the Retail Senior Loan.

A. *PAYMENT GUARANTY*

26. Under the Payment Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Agent "the prompt and unconditional payment" of the Guaranteed Amount, defined as the maximum principal sum of the Retail Senior Loan including all unpaid interest. *See* Ex. D, pg. 1.

27. The terms of the Payment Guaranty allow Agent to seek full payment of the outstanding balance of the Retail Senior Loan "upon any default of the Borrower" under the Loan Documents. Specifically, "Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full Guaranteed Amount or any portion thereof, without proceeding against Borrower or any other person . . . ." *See* Ex. D, pg. 5.

28. The Payment Guaranty also allows Agent to seek full repayment if the Retail Senior Borrower files petitions for bankruptcy pursuant to the Bankruptcy Code,

> if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower . . . Lender may, as against Guarantor, nevertheless, declare the Debt due and

payable and enforce any or all of its rights and remedies against Guarantor.

See Ex. D, pg. 3.

29. The Payment Guaranty further mandates that Guarantors shall reimburse Agent "for all expenses (including reasonable counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Amount or any portion thereof or with the enforcement of this Guaranty." See Ex. D, pg. 2.

30. As discussed above, Retail Senior Borrower has defaulted under the Loan Documents and filed bankruptcy petitions.

31. Thus, under the clear terms of the Payment Guaranty, the Guarantors are required to pay the outstanding balance of the Retail Senior Loan, including all accrued and outstanding interest and fees, and reimburse Agent for all expenses incurred in connection with the collection and enforcement of the Payment Guaranty.

**B.   *COMPLETION GUARANTY***

32. Under the Completion Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Agent "the prompt and unconditional payment and performance of the Guaranteed Obligations." See Ex. F, pg. 1.

33. The Completion Guaranty defines "Guaranteed Obligations" as, *inter alia*, the completion of (i) "the Retail Shell" (as defined in the Completion Guaranty), and "such improvements necessary to make the Retail Shell accessible to the general public"; and (ii) "no less than seventy percent (70%) of the tenant improvements". See Ex. F, pg. 1.

Pg 9 of 17

34. The terms of the Completion Guaranty allow Agent to demand that Guarantors satisfy the Guaranteed Obligations "[i]f Borrower does not satisfy the Guaranteed Obligations in accordance with the Loan Documents after the expiration of all applicable notice, grace and cure periods . . . ." *See* Ex. F, pg. 2.

35. Retail Senior Borrower has not satisfied the Guaranteed Obligations in accordance with the Loan Documents.

36. The terms of the Completion Guaranty also provide that "upon any default of Borrower" under the Loan Documents, Agent "may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of liability hereunder or any portion thereof, without proceeding against Borrower or any other person . . . ." *See* Ex. F, pg. 5.

37. Like the Payment Guaranty, the Completion Guaranty also states that,

> if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower . . . Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor.

*See* Ex. F, pg. 3.

38. Finally, the Completion Guaranty further mandates that Guarantors shall reimburse Agent "for all expenses (including reasonable counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty." *See* Ex. F, pg. 2.

39. As discussed above, the Retail Senior Borrower has defaulted under the Loan Documents, failed to satisfy the Guaranteed Obligations, and filed bankruptcy petitions.

40. Thus, the Guarantors are required to perform the Guaranteed Obligations and Agent may declare the Retail Senior Loan due and payable and enforce any or all of its rights and remedies against the Guarantors.

### C. *RECOURSE GUARANTY*

41. Under the Recourse Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Agent "the prompt and unconditional payment of the Guaranteed Recourse Obligations." *See* Ex. E, pg. 1.

42. The Recourse Guaranty defines "Guaranteed Recourse Obligations" as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 9.4 of the Loan Agreement." *See* Ex. E, pg. 1.

43. Under Section 9.4 of the Retail Senior Loan Agreement, if the Leased Property becomes property of the estate in a voluntary bankruptcy proceeding, Agent may seek recourse against the Retail Senior Borrower to enforce the liability and obligations of the Retail Senior Borrower to perform and observe the obligations contained in the Loan Documents. *See* Ex. A, pg. 127-29.

44. The Leased Property has become property of the estate in the voluntary bankruptcy proceeding of Retail Borrower.

45. The terms of the Recourse Guaranty also provide that "upon any default of Borrower with respect to a Guaranteed Recourse Obligation of Borrower," Agent "may, at its option, proceed directly and at once, without notice, against Guarantor to collect

and recover the full amount of liability hereunder with respect to such default or any portion thereof, without proceeding against Borrower or any other person..." *See* Ex. E, pg. 5.

46. The Recourse Guaranty further mandates that Guarantors shall reimburse Agent "for all expenses (including reasonable counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations..." *See* Ex. E, pg. 2.

47. Retail Senior Borrower has not satisfied the Guaranteed Recourse Obligations.

48. Thus, under the terms of the Recourse Guaranty, the Guarantors are required to perform the Guaranteed Recourse Obligations, including full payment of the outstanding balance and accrued interest on the Retail Senior Loan and reimburse Agent for all expenses incurred in connection with the collection of the Guaranteed Recourse Obligations.

## EMPLOYMENT OF COUNSEL

49. Agent has employed the undersigned counsel as its attorneys in connection with this matter and has obligated itself to pay said attorneys their market rate fees for their services and to reimburse them for expenses in connection herewith.

## SATISFACTION OF CONDITIONS PRECEDENT

50. All conditions precedent to the commencement of this action have been performed by Agent or have otherwise occurred.

## THE UNJUST ENRICHMENT

51. Agent, on behalf of the Lenders, provided funds to Retail Senior Borrower.

52. Guarantors knew that Agent and the Lenders provided such funds with the expectation that they would be reimbursed.

53. Guarantors were enriched by virtue of the acceptance of the funds from Agent and the Lenders by Retail Senior Borrower.

54. For example, funds were used for the construction and development of the Project, providing a direct benefit to the Guarantors as indirect owners of the Retail Senior Borrower.

55. It is inequitable for Guarantors to retain the benefit and enrichment that they received by virtue of the acceptance of the funds from Agent and the Lenders by Retail Senior Borrower.

## COUNT I BREACH OF CONTRACT
## (PAYMENT GUARANTY)

56. Agent reasserts and realleges the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

57. The Retail Senior Loan is evidenced by the Loan Documents, including the Retail Senior Promissory Note, delivered to Agent on June 6, 2007 in favor of Agent for $315,000,000.

58. The Retail Borrower commenced bankruptcy proceedings pursuant to the Bankruptcy Code on November 25, 2009, constituting an event of default under the Retail Senior Loan Agreement.

59. Additionally, an event of default occurred under the Resort Loan Agreement prior to either the Satisfactory DSCR Date or the Completion Date, constituting an event of default under the Retail Senior Loan Agreement.

60. Pursuant to the Payment Guaranty, the Guarantors guaranteed, upon the occurrence of an event of default under the Retail Senior Loan Agreement, payment of all interest due and the maximum principal sum of the Retail Senior Loan.

61. The Guarantors owe Agent, on behalf of the Lenders, the total amount of outstanding principal, accrued interest, and other fees outstanding under the Retail Senior Loan.

## COUNT II BREACH OF CONTRACT
## (COMPLETION GUARANTY)

62. Agent reasserts and realleges the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

63. The Retail Senior Loan is evidenced by the Loan Documents, including the Retail Senior Promissory Note, delivered to Agent on June 6, 2007 in favor of Agent for $315,000,000.

64. The Retail Borrower commenced bankruptcy proceedings pursuant to the Bankruptcy Code on November 25, 2009, constituting an event of default under the Retail Senior Loan Agreement.

65. Additionally, an event of default occurred under the Resort Loan Agreement prior to either the Satisfactory DSCR Date or the Completion Date, constituting an event of default under the Retail Senior Loan Agreement.

66. Pursuant to the Completion Guaranty, the Guarantors guaranteed, upon the occurrence of an event of default under the Retail Senior Loan Agreement, completion of the Guaranteed Obligations, including, *inter alia,* the Retail Shell and certain tenant improvements.

67. The Retail Senior Borrower defaulted under the Retail Senior Loan Agreement and has not satisfied the Guaranteed Obligations under the Loan Documents. Thus, the Guarantors are required to perform the Guaranteed Obligations.

## COUNT III BREACH OF CONTRACT
### (RECOURSE GUARANTY)

68. Agent reasserts and realleges the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

69. The Retail Senior Loan is evidenced by the Loan Documents, including the Retail Senior Promissory Note, delivered to Agent on June 6, 2007 in favor of Agent for $315,000,000.

70. Pursuant to the Recourse Guaranty, the Guarantors "absolutely and unconditionally" guaranteed to Agent "the prompt and unconditional payment of the Guaranteed Recourse Obligations." *See* Ex. E, pg. 1.

71. The Recourse Guaranty defines "Guaranteed Recourse Obligations" as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 9.4 of the Loan Agreement." *See* Ex. E, pg. 1.

72. Under Section 9.4 of the Retail Senior Loan Agreement, if the Leased Property becomes property of the estate in a voluntary bankruptcy proceeding, Agent may seek recourse against the Retail Senior Borrower to enforce the liability and

obligation of the Retail Senior Borrower to perform and observe the obligations contained in the Loan Documents. *See* Ex. A, pg. 127-29.

73. The Leased Property has become property of the estate in the bankruptcy proceedings of Retail Borrower.

74. The Guarantors are required to perform the Guaranteed Recourse Obligations, including repayment of the total amount of outstanding principal, accrued interest, and other fees outstanding under the Retail Senior Loan.

## COUNT IV UNJUST ENRICHMENT

75. Agent reasserts and realleges the allegations set forth in paragraphs 51 through 55 as though fully set forth herein.

76. Agent conferred a benefit on Guarantors by providing funds to Retail Senior Borrower.

77. Guarantors knew that Agent provided the funds with the expectation that they would be reimbursed.

78. Guarantors were enriched at Agent's expense by virtue of the acceptance of the funds from Agent by Retail Senior Borrower.

79. The aforementioned circumstances make it inequitable for Guarantors to retain the benefit that Agent conferred on them.

## COUNT V TURNOVER OF PROPERTY

80. Agent repeats and realleges each and every allegation set forth in paragraphs 1 through 50 as if set forth fully herein.

81. Pursuant to section 542(b) of the Bankruptcy Code, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, must pay the debt to, or on the order of the trustee or debtor in possession.

82. The total amount of outstanding principal on the Loan and accrued and unpaid interest is $168,229,209.64.

83. Under the clear and unambiguous language of the Loan Documents, the Retail Senior Borrower defaulted and the Guarantors are obligated to repay the full amount of the Retail Senior Borrower's obligations under the Loan Documents.

84. Pursuant to section 541 of the Bankruptcy Code, the debt owed to Agent by the Guarantors is property of Agent's estate.

85. Accordingly, Agent requests that Guarantors be directed to turnover these funds or their equivalent, including accrued interest and costs thereon, for the benefit of its estate and creditors pursuant to section 542 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff Lehman Brothers Holdings Inc. respectfully requests that this Court render a judgment in its favor against Defendants Jeffrey Soffer and Fontainebleau Resorts, LLC, jointly and severally, as follows:

1. awarding Agent, on behalf of Lenders, damages in an amount to be determined, plus interest, attorneys' fees, costs, and expenses,

2. declaring that Guarantors are required to complete the Guaranteed Obligations, including the Retail Shell and other tenant improvements, and

3. awarding Agent, on behalf of the Lenders, such other relief that this Court deems just, fair, and equitable.

Dated: February 11, 2010
      New York, New York

                /s/ Ronit J. Berkovich
                Shai Y. Waisman
                Ronit J. Berkovich
                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                Telephone: (212) 310-8000
                Facsimile: (212) 310-8007

                Attorneys for Debtors
                and Debtors in Possession