Hamish Anderson
Radford Goodman
Mark Craggs
Andrew Laderman
NORTON ROSE FULBRIGHT LLP
3 More London Riverside
London SE1 2AQ
United Kingdom
Telephone: +44 20 7283 6000
Facsimile: +44 20 7283 6500

U.K. Counsel for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (JMP) SIPA |
| | |
| Debtor. | |

## SUMMARY SHEET[1]

| | |
|---|---|
| **Name and Role of Applicant:** | Norton Rose Fulbright LLP<br>U.K. Counsel to the Trustee |
| **Compensation Period:** | May 1, 2013 through July 30, 2013 |
| **Fees Incurred for Counsel:** | US$ 157,643.18 |
| **Expenses Requested for Counsel:** | US$ 2,171.97[2] |
| **Expenses Requested for Counsel in respect of Barristers' Fees:** | US$ 50,074.04 |
| **Prior Fees and Expenses Requested by Counsel:** | US$ 20,692,100.53 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period:** | US$ 728.82 |

---

[1] Fees reflect a voluntary 10% discount from Norton Rose Fulbright LLP's standard rates at the request of the Securities Investor Protection Corporation ("SIPC").

[2] Please note that this figure excludes the professional fees of the barristers retained by Norton Rose Fulbright LLP on various aspects of the case (as to which, see paragraph 25 of the fee application).

## Hours, Rate, and Fees for Services Rendered[3]

**Partners**

| Name | Department | Year Qualified/ Admitted | Hours | Hourly Rate (£) | Approximate Fees (US$) |
|------|------------|--------------------------|-------|-----------------|------------------------|
| H Anderson | Banking | 1973 | 79.20 | 589.50 | 71,666.69 |
| K Lye | Litigation | 1998 | 1.3 | 477.00 | 951.85 |
| C Jojo | Litigation | 1980 | 2 | 598.50 | 1,837.40 |
| D Stuttaford | Tax | 1990 | 0.7 | 589.50 | 633.42 |
| | | **Totals** | **83.2** | | **75,089.36** |

**Of Counsel**

| Name | Department | Year Qualified/ Admitted | Hours | Hourly Rate (£) | Approximate Fees (US$) |
|------|------------|--------------------------|-------|-----------------|------------------------|
| M Kwok | Litigation | 1997 | 11.50 | 508.50 | 8,976.30 |
| | | **Totals** | **11.50** | | **8,976.30** |

**Associates**

| Name | Department | Year Qualified/ Admitted | Hours | Hourly Rate (£) | Approximate Fees (US$) |
|------|------------|--------------------------|-------|-----------------|------------------------|
| M Craggs | Banking | 2006 | 56 | 508.50 | 43,710.66 |
| A Laderman | Banking | 2012 | 30.5 | 297.00 | 13,904.80 |
| A Roycroft | Tax | 1999 | 0.7 | 508.50 | 546.38 |
| B Eeles | Litigation | 2010 | 6.4 | 472.50 | 4,641.84 |
| C T Yeo | Litigation | 2006 | 14.6 | 301.50 | 6,756.92 |
| | | **Totals** | **108.2** | | **69,560.60** |

---

[3] All applicable Norton Rose Fulbright LLP fees are charged at the relevant local currency. The totals are converted from Pounds Sterling into US Dollars at the point of delivery of Norton Rose Fulbright LLP's monthly invoices. For that reason, it is not possible to provide a summary per fee earner which can be exactly reconciled with the amounts invoiced. However, the amount claimed does reconcile exactly with the invoices rendered during the Compensation Period.

2

**Trainees**

| Name | Hours | Hourly Rate (£) | Approximate Fees (US$) |
|------|-------|-----------------|------------------------|
| S Collins | 7.8 | 171.00 | 2,047.38 |
| **Totals** | 7.8 | | 2,047.38 |

**Paralegals / Translators**

| Name | Hours | Hourly Rate (£) | Approximate Fees (US$) |
|------|-------|-----------------|------------------------|
| E Hau | 3.5 | 180.00 | 967.05 |
| **Totals** | 3.5 | | 967.05 |

**Court Clerk**

| Name | Hours | Hourly Rate (£) | Approximate Fees (US$) |
|------|-------|-----------------|------------------------|
| N Fisher | 0.7 | 373.50 | 401.33 |
| N Fisher | 1.4 | 391.50 | 841.33 |
| **Totals** | 2.1 | | 1,242.66 |

Hamish Anderson
Radford Goodman
Mark Craggs
Andrew Laderman
NORTON ROSE FULBRIGHT LLP
3 More London Riverside
London SE1 2AQ
United Kingdom
Telephone: +44 20 7283 6000
Facsimile: +44 20 7283 6500

U.K. Counsel for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS INC.,<br><br><div align="right">Debtor.</div> | Case No. 08-01420 (JMP) SIPA |

**SEVENTEENTH APPLICATION OF NORTON ROSE FULBRIGHT LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED
FROM MAY 1, 2013 THROUGH JULY 30, 2013**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Norton Rose Fulbright LLP ("NRF"), as U.K. counsel to James W. Giddens (the "Trustee") as Trustee for the liquidation of Lehman Brothers Inc. ("Debtor" or "LBI"), for its seventeenth application (the "Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78eee(b)(5),[1] sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), allowing and awarding interim compensation for services performed by NRF for the period commencing May 1, 2013

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

through and including July 30, 2013 (the "Compensation Period") and reimbursement of NRF's actual and necessary expenses (hereinafter also referred to as "disbursements and costs") incurred during the Compensation Period, respectfully represents:

## BACKGROUND

1.        On September 19, 2008 (the "Filing Date"), the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New York, entered the Order Commencing Liquidation (the "LBI Liquidation Order") pursuant to the provisions of SIPA in the case captioned Securities Investor Protection Corporation v. Lehman Brothers Inc., Case No. 08-CIV-8119 (GEL).

2.        The LBI Liquidation Order: (i) appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA; (ii) appointed Hughes Hubbard & Reed LLP ("HHR") counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (iii) removed this case to this Court pursuant to section 78eee(b)(4) of SIPA.

3.        On November 21, 2008, the Court entered the Order Authorizing the Trustee to Retain and Employ Norton Rose Fulbright LLP (then Norton Rose LLP) as U.K. Counsel Nunc Pro Tunc to October 27, 2008 (Docket No. 330) (the "NRF Appointment Order") (i) authorizing the Trustee to retain and employ NRF nunc pro tunc to October 27, 2008 as U.K. counsel to the Trustee and (ii) finding that NRF is disinterested pursuant to the provisions of section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014(a) and is therefore in compliance with the disinterestedness requirement in section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014(a).

4.        On June 20, 2013, the Court entered the Fifth Amended Order (ECF No. 6569) Establishing Procedures Governing Interim Monthly Compensation of the Trustee and HHR (the "Fifth Amended Administrative Fee Order").  The Fifth Amended Administrative Fee Order provided that special counsel to the Trustee shall not serve monthly statements, but file interim or final applications (as the case may be) for Court approval for allowance and payment of the compensation and reimbursement of

expenses and that the Trustee shall promptly pay one hundred percent (100%) of all fees and expenses approved by the Court in connection with such applications.

     5.     On June 21, 2013 NRF filed a notice with the Court (ECF No.6572) that the law practices of Norton Rose and Fulbright and Jaworski LLP combined effective June 3, 2013, with the consequence that Norton Rose LLP has been changed to Norton Rose Fulbright LLP.

     6.     In accordance with all applicable orders and guidelines described herein, NRF has filed sixteen prior applications for allowance of interim compensation and reimbursement of expenses incurred in prior Compensation Periods (the "Prior Interim Applications"). The following chart identifies the Prior Interim Applications and the orders entered with respect to such applications:

| Application | Order | | Interim Fees Approved | Interim Expenses[2] Approved |
|---|---|---|---|---|
| First Interim Application | March 27, 2009 | ECF No. 902 | $169,713.24 | $4,283.48 |
| Second Interim Application | August 24, 2009 | ECF No. 1513 | $299,186.21 | $9,971.05 |
| Third Interim Application | January 21, 2010 | ECF No. 2558 | $1,103,416.32 | $291,013.87 |
| Fourth Interim Application | June 2, 2010 | ECF No. 3338 | $2,184,690.82 | $921,674.14 |
| Fifth Interim Application | September 24, 2010 | ECF No. 3729 | $1,212,240.27 | $565,887.10 |
| Sixth Interim Application | November 16, 2010 | ECF No. 3889 | $1,233,266.08 | $872,831.77 |
| Seventh Interim Application | February 28, 2011 | ECF No. 4116 | $848,823.40 | $120,787.73 |
| Eighth Interim Application | May 26, 2011 | ECF No. 4302 | $971,180.36 | $162,208.69 |
| Ninth Interim Application | August 18, 2011 | ECF No. 4507 | $963,397.32 | $116,536.10 |
| Tenth Interim Application | November 17, 2011 | ECF No. 4733 | $1,029,886.24 | $166,960.26 |
| Eleventh Interim Application | February 15, 2012 | ECF No. 4909 | $948,165.24 | $233,046.85 |
| Twelfth Interim Application | May 21, 2012 | ECF No. 5082 | $1,173,167.29 | $92,896.02 |
| Thirteenth Interim Application | August 23, 2012 | ECF No. 5252 | $1,324,985.98 | $55,495.16 |
| Fourteenth Interim Application | December 11, 2012 | ECF No. 5456 | $1,670,811.21 | $337,602.41 |
| Fifteenth Interim Application | March 19, 2013 | ECF No. 5735 | $873,608.75 | $255,952.94 |
| Sixteenth Interim Application | June 20, 2013 | ECF No. 6205 | $453,929.37 | $24,484.86 |

---

[2] Expenses include any fees for retained barristers.

BD-#18829311-v4

## COMPENSATION REQUESTED

7.     This application has been prepared under the guidance of HHR. The declaration of Hamish Anderson, a partner of NRF, is attached hereto as Exhibit A.

8.     As described in the declaration of Hamish Anderson, NRF expended 216.3 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in a blended hourly rate of US$ 728.82 for fees incurred.

9.     At SIPC's request, NRF's fees in this case reflect a 10% public interest discount from NRF's standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of US$ 17,515.91.

10.     Exhibit B annexed hereto provides a schedule of the disbursements and costs for which reimbursement is requested. The requested disbursements and costs are customarily charged to and paid by NRF's bankruptcy and non-bankruptcy clients.

11.     Exhibit C annexed hereto is a summary by project categories of services performed by NRF from May 1, 2013 through July 30, 2013.[3]

12.     There is no agreement or understanding between NRF and any other person, other than members of NRF, for sharing of compensation to be received for services rendered in this case.

13.     To the extent that time or disbursement charges for services rendered or disbursements and costs incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, NRF reserves the right to request additional compensation for such services and reimbursement of such disbursements and costs in a future application.

## SUMMARY OF SERVICES

14.     A SIPA proceeding contemplates liquidation of the business of the broker-dealer, with special provisions regarding "customer" assets. NRF's services (highlighted here and summarized in greater detail below) relate principally to the U.K. aspects of the liquidation of the international enterprise that was LBI, with assistance

---

[3] Since October 27, 2008, NRF has implemented twenty-four (24) separate matter numbers for services rendered, together with a further twenty four (24) non-matter-specific work streams, for project categories to permit a more detailed analysis of the fees incurred. However, given the multitude of lawyers involved and the number of task codes, limited instances of inconsistencies as between different time entries are inevitable despite NRF's best efforts to ensure that narratives in respect of work completed are presented as consistently as possible.

from NRF's international network of offices wherever required, as contemplated by the NRF Appointment Order.

15.     In particular, NRF, in consultation with HHR, has devoted substantial time to coordinating with the Administrators of Lehman Brothers International (Europe) ("LBIE"), and the responsible office-holders appointed in the many other Lehman Brothers-related insolvency proceedings around the globe. NRF has also been advising the Trustee on the appropriate measures to be implemented for the closure of LBI branch offices worldwide, including in the U.K., Singapore and the People's Republic of China.

16.     During the Compensation Period, the principal work streams on which NRF has been engaged in respect of LBIE are as follows: (i) liaising with the Administrators of LBIE concerning matters arising out of the resolution of all claims between the LBI and LBIE estates and advising the Trustee on such claims and (ii) advising the Trustee in relation to court proceedings, commenced by the LBIE Administrators as an application to the U.K. High Court for directions in relation to the validity and effectiveness of "extended liens" over assets of both Lehman affiliates and non-affiliates (the "Extended Liens Application") and the dismissal of those proceedings.

17.     Throughout the Compensation Period, NRF advised the Trustee in relation to matters arising out of the English law aspects of the resolutions of claims between LBI and LBIE. In particular, NRF advised on certain facets of the settlement agreement between the Trustee and the Administrators approved by this Court on April 16, 2013, and which became effective in accordance with its terms on June 7, 2013.

18.     One of the conditions to the Settlement Agreement becoming effective was the requirement that the Administrators of LBIE obtain a specific order from the U.K. High Court. This process had involved NRF regularly meeting with Mr Gabriel Moss QC, as well as preparation for and attendance at the directions hearing. The hearing was held before Mr Justice David Richards at the U.K. High Court on May 1, 2013 and the order was granted at the hearing.

19.     While providing key advice regarding English law on the settlement of claims between LBIE and LBI, NRF continued to advise the Trustee on U.K. litigation and claim matters. The Extended Liens Application was made by the Administrators of LBIE on June 6, 2011 and sought determinations in respect of the

validity and effectiveness of "Extended Lien Provisions" (as defined therein) contained in agreements between LBIE and certain of its affiliates. The substantive hearing took place on September 27, 2012 and lasted for 6 days. Judgment was handed down on November 2, 2012 and was generally favourable to the Trustee. 314 Commonwealth Ave Inc. ("314CA") sought permission to appeal the Judgment of the U.K. High Court direct from the U.K. Court of Appeal and was ultimately granted permission to appeal on March 22, 2013. 314CA is a Delaware company, having Lehman Brothers Holdings Inc. as its ultimate parent company. Subsequently Lehman Brothers Finance AG ("LBF") and LBIE also filed applications seeking permission to appeal. On May 14, 2013, however, an order was given in the Court of Appeal pursuant to it was agreed that 314CA's appeal and LBF and LBIE's applications for permission to appeal would be dismissed.

20.    During the Compensation Period, NRF continued to advise the Trustee as to the implications of 314CA's appeal, LBF's application for permission to appeal and LBIE's applications for permission to appeal. NRF liaised extensively with the barrister team (Martin Moore QC and Nik Yeo) regarding the appeal. NRF also undertook correspondence with the Court and other parties as regards directions and the procedure for the appeal and its dismissal by consent.

21.    In all U.K. court proceedings in which it has been engaged on behalf of the Trustee during the Compensation Period, NRF has liaised extensively with Linklaters LLP, solicitors to the Administrators of LBIE, and the solicitors of other parties to the proceedings, as necessary. In addition, throughout the Compensation Period NRF has considered, and conducted appropriate research into, relevant issues of English law on behalf of the Trustee, with input from the Trustee's other advisers as necessary. Throughout, NRF has resourced its team with fee-earners of an appropriate level of seniority for the tasks in hand and in a manner commensurate with the mandates of SIPA.

22.    During the Compensation Period, in addition to the matters described above, NRF has assisted in the monitoring of Lehman insolvency proceedings of companies in respect of which LBI is a creditor in various jurisdictions, including England, Singapore and Hong Kong.

23.    NRF has been cognizant throughout the Compensation Period that its efforts, as with the efforts of professionals in other SIPA proceedings, bear on the

public interest. NRF regularly consults with the Trustee and SIPC, through HHR, to ensure that its efforts adhere to the mandates of SIPA and to avoid any potential duplication of effort with HHR or other professionals employed by the Trustee.

## DETAILED DESCRIPTION OF SERVICES

24.    The following is a more detailed overview of certain of the significant services rendered by NRF during the Compensation Period, organized in accordance with NRF's internal system of project or work codes.

a.    **LBIE matters**:

- Advising the Trustee with respect to the LBI estate's rights, duties and powers in connection with LBIE and the other English companies in administration.

- Advising the Trustee in relation to English law aspects of the resolution of all claims between LBI and LBIE.

    o  Liaising with Mr Gabriel Moss QC in relation to, and representing the Trustee at, the U.K. High Court hearing in respect of obtaining a specific order as a condition to the effectiveness of the settlement agreement.

    o  Advising on additional U.K. aspects of the settlement between LBI and LBIE that became effective on June 7, 2013.

    o  Maintaining a watching brief over the consensual proposal promulgated by LBIE to facilitate the return of the LBI omnibus recovery to LBIE clients.

- Extended Liens

    o  Coordinating with other Trustee professionals, the Administrators of LBIE and their counsel, as well as the teams advising other Lehman affiliates, in relation to "extended liens" over assets of both Lehman affiliates and non-affiliates.

    o  Advising the Trustee as to the Judgment and the subsequent appeal by 314CA and applications for permission to appeal by LBF and LBIE.

    o  Preparation of a Respondent's Notice and a skeleton argument.

o   Liaising with the barrister team of Martin Moore QC and Nik Yeo regarding the above matters.

o   Engaging in correspondence with the Court of Appeal regarding directions and the procedure for the appeal and its dismissal by consent.

**Other matters**

b.   Hong Kong proceedings

- Liaising with the joint liquidators of the Hong Kong Lehman Brothers companies where necessary, including with respect to their court application as to the validity and effectiveness of "extended lien" provisions.

- Monitoring the status/outcomes of various other court applications made in the course of the liquidations of the Hong Kong Lehman Brothers companies.

### ACTUAL AND NECESSARY DISBURSEMENTS AND COSTS INCURRED BY NRF

25.    As set forth in Exhibit B attached hereto, NRF has incurred US$ 2,171.97 in disbursements and costs in providing professional services during the Compensation Period. The categories of disbursements and costs include charges in respect of printing, photocopying, Companies House fees and courier fees incurred in the course of working on this matter. These charges reflect NRF's direct operating costs in all cases. Such expenses are levied as and when they are incurred and are not separately incorporated into the NRF hourly billing rates.

26.    NRF has instructed leading UK barristers to represent LBI where necessary.  During the Compensation Period, Mr Martin Moore QC of Erskine barristers' chambers and Mr Nik Yeo of Fountain Court Chambers incurred US$ 9,440.25 and US$ 22,443.60 respectively in professional fees in connection with professional services provided in the course of the Extended Liens Application.  Mr Gabriel Moss QC of 3-4 South Square barristers' chambers incurred US$17,916.84 in professional fees in connection with professional services provided in relation to an application to the English Court for directions connected to the resolution of claims between LBIE and LBI.  As a profession, barristers are essentially self-employed and it is common practice in the UK for firms of solicitors to instruct individual barristers directly, on behalf of the ultimate

client. Accordingly, the barristers concerned have been instructed by NRF and their professional fees, with SIPC's consent, are treated as disbursements on NRF's invoices for each relevant month within the Compensation Period.

27.     In view of the inherently international nature of this case, frequent long distance telephone calls and conference call services have been necessary. However, as is standard in the City of London market for legal services, the costs of all secretarial assistance to lawyers and other fee-earners, and other labor of an administrative nature, is reflected in the hourly rates for professional fees. No additional charges are levied for word processing and other document management functions.

28.     In summary, the actual disbursements and costs incurred in providing professional services were necessary, reasonable and justified under the circumstances to serve the needs of the estate, its customers and creditors.

## NRF'S REQUEST FOR INTERIM
## COMPENSATION SHOULD BE GRANTED

29.     NRF may submit applications to the Court for compensation for services rendered and reimbursement for disbursements and costs during the course of the liquidation, which may be done on an interim basis. SIPA §§ 78eee(b)(5)(A)-(B). Whenever an application for compensation and reimbursement of disbursements and costs is filed, SIPC shall file its recommendation with respect to such fees and disbursements with the Court prior to the hearing on such application. Id. at § 78eee(b)(5)(C). The Court "shall place considerable reliance on the recommendation of SIPC" as to the allowances requested in such applications, and to the extent that such allowances are to be paid by SIPC, without reasonable expectation of recoupment, the court shall award the amounts recommended by SIPC. Id.; see e.g., Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 274 n.21 (1992) (recognizing that "SIPC's recommendation to court on trustee's compensation is entitled to considerable reliance and is, under certain circumstances, binding."); In re Madoff, No. 08-1789, 2010 U.S. Dist. LEXIS 81492, at *15 (Bankr. S.D.N.Y. Aug. 6, 2010) ("There are no grounds for differing opinions [as to whether the bankruptcy court is required to approve fee applications that SIPC recommended be approved] because [the issue] is directly addressed by SIPA—the court shall...place considerable reliance on the recommendation

of SIPC.") (internal quotation omitted); In re Donald Sheldon & Co, Inc. 153 B.R. 661, 668 (Bankr. S.D.N.Y. 1993) (SIPA requires . . . that "[W]e place considerable reliance on the recommendation of SIPC in ruling on [the Trustee's] application [for fees]").

30. At this time, the Trustee anticipates that there will be sufficient funds available from the general estate to satisfy administrative expenses of the estate, including professional fees, without seeking to requisition funds from SIPC in order to pay these expenses. As a result, in determining the allowance of NRF's compensation, while "considerable reliance" shall be placed on SIPC's recommendation, the Court must duly consider the nature, extent and value of the services rendered. SIPA at § 78eee(b)(5)(C).

31. NRF submits that its request for interim allowance of compensation is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

32. In the instant case, NRF respectfully submits that the services for which it seeks compensation in this Application, as highlighted above, at the time rendered, were believed to be necessary for and beneficial to LBI's estate, customers, creditors and other parties-in-interest. NRF further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to these constituencies. In sum, the services rendered by NRF were necessary and beneficial and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the compensation sought herein is warranted.

## CONCLUSION

NRF respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements and costs requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding US\$ 157,643.18 as an interim payment for professional services rendered by NRF during the Compensation Period and US\$ 2,171.97 as interim reimbursement of the actual and necessary disbursements and costs incurred by NRF in connection with the rendition of such services, together with US\$ 50,074.04 as an interim payment for professional services rendered by Mr Martin Moore QC of Erskine barristers' chambers, Mr Gabriel Moss QC Of 3-4 South Square barristers' chambers and Mr Nik Yeo of Fountain Court barristers' chambers, authorizing the Trustee to pay all outstanding amounts in accordance with the Fifth Amended Administrative Fee Order; and (ii) granting NRF such other and further relief as the Court may deem just and proper.

Dated: August  2 1  , 2013

NORTON ROSE FULBRIGHT LLP

By: _____

Hamish Anderson
Radford Goodman
Mark Craggs
Andrew Laderman
3 More London Riverside
London SE1 2AQ
United Kingdom
Telephone: +44 20 7283 6000
Facsimile: +44 20 7283 6500

Email:
Hamish.anderson@nortonrosefulbright.com

U.K. Counsel for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.

# **EXHIBIT A**

BD-#18829630-v4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (JMP) SIPA |
| Debtor. | |

## DECLARATION OF HAMISH ANDERSON

HAMISH ANDERSON hereby makes the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a duly admitted solicitor of the Senior Courts of England and Wales and a partner of the firm of Norton Rose Fulbright LLP ("NRF"). I submit this certification in support of the seventeenth application of NRF, as U.K. counsel to James W. Giddens as Trustee (the "Trustee") for the liquidation of Lehman Brothers Inc., for allowance of interim compensation for services rendered and reimbursement of actual and necessary expenses incurred from May 1, 2013 through July 30, 2013 pursuant to section 78eee(b)(5) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C.§ 78eee(b)(5),[1] sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure.

2.      On November 21, 2008, the Court entered the Order Authorizing the Trustee to Retain and Employ Norton Rose Fulbright LLP (then Norton Rose LLP) as U.K. Counsel Nunc Pro Tunc to October 27, 2008 (Docket No. 330) authorizing the Trustee to retain and employ NRF nunc pro tunc to October 27, 2008 as U.K. counsel to the Trustee.

3.      I submit this affidavit pursuant to Bankruptcy Rule 2016(a) in support of NRF's application (the "Application") for (i) allowance of compensation in the

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

BD-#18829630-v4

amount of US$ 157,643.18 for professional services rendered by NRF from May 1, 2013
through July 30, 2013 (the "Compensation Period"), (ii) reimbursement in the amount of
US$ 2,171.97 for necessary disbursements and costs incurred by NRF during the
Compensation Period, and (iii) allowance of necessary disbursements in the amount of
US$ 50,074.04 in respect of the professional fees of Mr Martin Moore QC of Erskine
Court barristers' chambers, Mr Gabriel Moss QC of 3-4 South Square barristers'
chambers and Mr Nik Yeo of Fountain Court barristers' chambers for professional
services rendered during the Compensation Period.

       4.    As one of the lead partners at NRF staffed on this matter, I am
familiar with such services and with these proceedings. These statements are correct to
the best of my knowledge and belief, based upon conversations I have conducted with the
partners and associates of NRF and upon records kept by NRF in the normal course of
business.

       5.    I hereby certify that (i) I have read the Application; and (ii) to the
best of my knowledge and belief, the Application complies with the guidelines for fee
applications under Bankruptcy Rule 2016(a) and the Fifth Amended Administrative Fee
Order (as defined in the Application).

       6.    At the request of the Securities Investor Protection Corporation
("SIPC"), NRF's fees in this case reflect a 10% public interest discount from NRF's
standard rates.

       7.    I hereby certify that members of the staff of SIPC have been
provided with a copy of the Application.

       8.    I certify that, to the best of my knowledge and belief, (i) in
providing reimbursable non-legal services to the estate, NRF does not make a profit on
such services; and (ii) in seeking reimbursement for a service which NRF justifiably
purchased or contracted from a third party, NRF requests reimbursement only for the
amount billed to NRF by the third-party vendors and paid or to be paid by NRF to such
vendors.

       9.    It is NRF's practice not to include the costs of printing
photocopying and telephone and fax charges in its overhead, but rather to bill out these
expenses to clients. To the best of my knowledge and belief, charges in respect of these

costs reflect NRF's direct operating costs in all cases. They are levied as and when they are incurred and are not separately incorporated into the NRF hourly billing rates. Further, the costs of all secretarial assistance to lawyers and other fee-earners, and other labor of an administrative nature, is reflected in the hourly rates for professional fees. No additional charges are levied for word processing and other document management functions.

   10. NRF has not made any previous application for allowance of fees for professional services rendered during the Compensation Period.

   11. To the best of my knowledge and belief, there is no agreement or understanding between NRF and any other person, other than members of NRF, for sharing of compensation to be received for services rendered in this case.

   No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or shall be made by NRF.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

   Executed in London, England this _21_ day of August 2013.

            Hamish Anderson
            Norton Rose Fulbright LLP

# EXHIBIT B

**Expenses incurred for the period May 1, 2013 through July 30, 2013 (excluding barrister's fees)**

| Description | Total Amount |
| --- | --- |
| Document Reproduction | US$1,339.23 |
| Research Fees | US$38.38 |
| Telephone & Fax Charges | US$75.47 |
| Courier Fees | US$52.71 |
| General/Other Expenses | US$456.49 |
| Local Taxes/Charges | US$10.92 |
| Companies House Fees | US$79.82 |
| Transcription Fees | US$118.95 |
| **Total** | **US$ 2,171.97** |

**<u>EXHIBIT C</u>**

BD-#18830440-v3

**Summary by Project Categories of Services Performed by Norton Rose Fulbright LLP from May 1, 2013 through July 30, 2013**

| Project Category | Summary |
|---|---|
| LBIE General Aspects | General advice relating to the administration of LBIE, including advising the Trustee on English law aspects relating to the settlement of claims between the LBI and LBIE estates. |
| LBI General | Monitoring the progress of the insolvency proceedings of various LBI debtors in different jurisdictions; attending to sundry queries in relation to English insolvency law and work relating to matters which span several different work streams, such that it is not appropriate to allocate the time recorded to a particular work stream. |
| LBIE Extended Liens Application | Advice relating to the application to the High Court of Justice of England and Wales by the LBIE Administrators for directions in respect of the validity and effectiveness of security interests created by standard Lehman Brothers agreements, including advice relating to the appeal by 314CA of the first instance Judgment of Briggs J to the Court of Appeal and its subsequent dismissal. |
| Hong Kong Proceedings | Advice relating to the liquidations of various Lehman Brothers entities in Hong Kong and the treatment of claims in Hong Kong, including with respect to the court application as to the validity and effectiveness of "extended lien" provisions. |
| LBI Singapore Branch Office | Advice relating to the deregistration of LBI from Singapore's companies registry; advice relating to Singapore LBIE client money aspects. |