**Hearing Date and Time:  March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  March 12, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*                       :    **08-13555 (JMP)**
                                                                   :
                                              **Debtors.**         :    **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

**NOTICE OF HEARING REGARDING**
**DEBTORS' APPLICATION PURSUANT TO SECTION 327(a)**
**OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF DELOITTE TAX LLP AS**
**TAX SERVICES PROVIDERS *NUNC PRO TUNC* TO NOVEMBER 1, 2008**

    **PLEASE TAKE NOTICE** that a hearing on the annexed application (the
"Application") of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-
referenced chapter 11 cases (together, the "Debtors"), pursuant to section 327(a) of the
Bankruptcy Code approving the retention and employment of Deloitte Tax LLP ("Deloitte Tax")
as tax services provider in connection with these chapter 11 cases, *nunc pro tunc* to November 1,
2008, all as more fully described in the Application, will be held before the Honorable James M.
Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander
Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004
(the "Bankruptcy Court") on **March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the
"Hearing").

    **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application
shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of
New York, shall set forth the name of the objecting party, the basis for the objection and the
specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance
with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users
of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch
disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format (with two hard copies delivered directly to the chambers of the Honorable James M. Peck), and shall be served upon:  (i) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq., attorneys for the Debtors; (ii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iii) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (iv) Deloitte Tax LLP, 1633 Broadway, New York, New York, 10019, Attn: Roland Young, Esq., so as to be filed and received by no later than **March 12, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

   **PLEASE TAKE FURTHER NOTICE** that if an objection to the Application is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

   **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 16, 2010
  New York, New York

       /s/ Richard P. Krasnow    
       Richard P. Krasnow
       WEIL GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, New York 10153
       Telephone: (212) 310-8000
       Facsimile: (212) 310-8007

       Attorneys for the Debtors
       And Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                          :
In re                                                     :        **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                                          :
                                    **Debtors.**          :        **(Jointly Administered)**
                                                          :
-------------------------------------------------------------------x

**DEBTORS' APPLICATION PURSUANT TO**
**SECTION 327(a) OF THE BANKRUPTCY CODE FOR AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF DELOITTE TAX**
**LLP AS TAX SERVICES PROVIDERS** *NUNC PRO TUNC* **TO NOVEMBER 1, 2008**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Application and respectfully

represent:

**BACKGROUND**

        1.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York (the "Local Rules") in Support of First-Day

Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## JURISDICTION

4.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## RELIEF REQUESTED

5.    By this Application, the Debtors seek entry of an order pursuant to section

327(a) of the Bankruptcy Code approving the retention and employment of Deloitte Tax LLP

("Deloitte Tax") as tax services providers in connection with their chapter 11 cases, *nunc pro

tunc* to November 1, 2008.  Pursuant to section 327(a) of the Bankruptcy Code, the Debtors

request that the Court approve the retention of Deloitte Tax to perform certain tax services

(collectively, the "Services") all as more fully described in the Declaration of Samuel Lowenthal,

a partner of Deloitte Tax, sworn to February 16, 2010, annexed hereto as Exhibit 1 (the

"Lowenthal Declaration ") and in accordance with the terms and conditions set forth in the

agreements between the Debtors and Deloitte Tax, including without limitations, the provisions

described in the engagement letters, dated as of January 9, 2009 and January 15, 2010 and

related statements of work (the "<u>Engagement Letters</u>"), copies of which are attached as <u>Exhibit B</u>

to the Lowenthal Declaration, as modified by Paragraph 23 of this Application.

      6.     The services provided under the Engagement Letters include, but are not

limited to (i) assisting the Debtors in analysis of certain sales and use tax filings made for the

years 2004, 2005, 2006, 2007 and 2008; (ii) assisting the Debtors in the assessment of these

returns and identification of instances of overpayment of either sales or use tax by the Debtors;

(iii) assisting the Debtors in the preparation of the necessary claims for refund of any identified

overpayments; (iv) supporting the Debtors in the review process of these claims by interacting

with the appropriate state and local taxing authorities; (v) assisting the Debtors in their

supporting and documenting of their filing of a zero fixed base percentage with respect to their

claim of a research and development credit on their tax return pursuant to Internal Revenue Code

Section 41; (vi) assisting the Debtors in connection with tax matters related to their meal and

entertainment expenditures for 2008; (vii) assisting the Debtors in connection with certain

Internal Revenue Service and state examinations related to matters on which Deloitte Tax has

previously advised the Debtors, including, but not limited to, state income sourcing issues arising

from the Debtors' principal trading activities; (viii) assisting the Debtors with respect to the

maintenance (from a tax perspective) of any licenses, registrations, or certificates with respect to

a particular business line; (ix) assisting the Debtors with respect to tax matters related to FIN 48

issued by the Financial Accounting Standards Board; (x) assisting the Debtors with respect to tax

matters related to specific transactions for which Deloitte Tax had previously advised the

Debtors; and (xi) other tax services as requested by the Debtors and agreed to by Deloitte Tax.

7.      The Debtors request that Deloitte Tax's retention be made effective *nunc pro tunc* to November 1, 2008 to allow Deloitte Tax to be compensated for work performed on behalf of the Debtors on or after November 1, 2008, but prior to the submission of this Application.  In the chaos that followed the Commencement Date, Deloitte Tax stepped forward at the Debtors' request to provide limited services to the Debtors in order to meet certain tax filing deadlines.  Deloitte Tax incurred approximately $100,000 of fees in connection with such services and seeks compensation for such services in connection with this Application.  Since November 1, 2008, Deloitte has been preparing the Application materials and performing the conflicts checks necessary to make the disclosures required by the Bankruptcy Rules.  However, additional delays arose as a result of the necessity to address certain issues regarding Deloitte Tax's retention that were raised by the U.S. Trustee that have now been resolved.  Based on the extraordinary circumstances of these chapter 11 cases, retroactive approval is warranted, particularly since the services Deloitte Tax has provided are of value to the estates and all parties in interest.  *See In re Hasset, Ltd.*, 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002) (approving *nunc pro tunc* retention application after recognizing that "*nunc pro tunc* applications are disfavored in this Circuit, *see In re Hazen Agricultural Products Service, Inc.*, 109 B.R. 602 (Bankr. W.D.N.Y. 1990), but have been permitted when the attorney performs services of 'value' to the estate"); *see also In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) (finding that a bankruptcy court may grant *post facto* application if employment meets statutory requirements and delay results from extraordinary circumstances); *In re Arkansas Co., Inc.*, 798 F.2d. 645 (3d Cir. 1986) (opining that bankruptcy courts have discretion in extraordinary circumstances to retroactively approve a professional's employment); *In re Triangle Chems. Inc.*, 697 F.2d 1280 (5th Cir. 1983) (holding

that a bankruptcy court has discretion, as a court of equity, to consider whether such approval of employment should be granted *nunc pro tunc*).

## BASIS FOR RELIEF

8.     The Debtors seek approval to retain Deloitte Tax pursuant to section 327(a) of the Bankruptcy Code.  Section 327(a) provides, in relevant part, that the Debtors "with the court's approval, may employ … professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the Debtors in fulfilling their duties under the Bankruptcy Code.

## THE RETENTION OF DELOITTE TAX

9.     Deloitte Tax is a respected and experienced tax services provider, well recognized in the fields of tax and bankruptcy and is frequently engaged by companies that have chapter 11 cases pending in United States bankruptcy courts.  The Debtors believe that Deloitte Tax possesses extensive tax expertise useful in these cases, and that Deloitte Tax is well-qualified to advise the Debtors.  Furthermore, the Debtors selected Deloitte Tax because of their experience in providing tax services to debtors and creditors in chapter 11 and other distressed situations.  *See e.g.,  In re Lyondell Chemical Company, et al.*, Case No. 09-10023 (RG) (Bankr. S.D.N.Y. May 19, 2009) [Doc. No. 1757]; *In re Frontier Airlines Holdings, Inc., et al.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. Sept. 9, 2008) [Doc. No. 502]; *In re Calpine Corporation, et al.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Mar. 27, 2006) [Doc. No. 1127].

10.     Furthermore, Deloitte Tax has indicated a desire and willingness to act in these chapter 11 cases and render the necessary professional services as tax services providers for the Debtors, on the terms set forth in the Engagement Letters and described herein, and to subject itself to the jurisdiction of the Court.

11.     Therefore, the Debtors submit that the retention of Deloitte Tax on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted in all respects.

## DELOITTE TAX'S DISINTERESTEDNESS

12.     To the best of the Debtors' knowledge, information and belief, neither Deloitte Tax nor any professional employee of Deloitte Tax has any connection with, or any interest adverse to, the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Lowenthal Declaration.

13.     Deloitte Tax has informed the Debtors that as of February 16, 2010, Deloitte Tax was not owed any money by the Debtors in respect of services provided by Deloitte Tax both prior to and following the Commencement Date except as set forth in the Lowenthal Declaration.

14.     Based upon the Lowenthal Declaration, the Debtors submit that Deloitte Tax is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  The Debtors have been informed that Deloitte Tax will conduct an ongoing review to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Deloitte Tax will supplement its disclosure to the Court.

## PROFESSIONAL COMPENSATION

15.     The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, any applicable local rules for the United States Bankruptcy Court for the Southern District of New York, and further orders of the Court, propose to compensate Deloitte Tax at the following hourly rates for Services:

| Title | Hourly Rate |
|---|---|
| Partner/Principal/Director | $850 - $965 |
| Senior Manager | $675 - $825 |
| Manager | $550 - $700 |
| Senior and Staff | $200 - $560 |

Except as otherwise set forth in the Engagement Letters, the professional fees charged for the Services are calculated from the actual hours expended in providing the services multiplied by the hourly billing rates for the specific personnel involved.[1]

16.     As discussed above, Deloitte Tax provided limited services for the Debtors at their request just after the Commencement Date to assist the Debtors in meeting certain tax filing deadlines.  Deloitte Tax incurred approximately $100,000 of fees in connection with such services and now seeks compensation for such services.

17.     Deloitte Tax's hourly rates are revised periodically in the ordinary course of its business. The Debtors understand that Deloitte Tax will advise the Debtors of their new rates if a rate change occurs during the course of Deloitte Tax's engagement.

18.     In addition to the hourly rates set forth above, the Debtors shall reimburse Deloitte Tax for any direct expenses incurred in connection with Deloitte Tax's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letters. Deloitte Tax's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses (including any fees or reasonable expenses of Deloitte Tax's legal counsel, but not any such legal

---

[1] In connection with the Meals & Entertainment Engagement (as defined in the Lowenthal Declaration), Deloitte Tax reserves the rights to request payment of a contingent fee for such services as set forth in the Engagement Letter.

fees or expenses related to Deloitte Tax's efforts to be retained or to Deloitte Tax's fee applications in these chapter 11 cases) specifically related to this engagement.

19.     The compensation arragements provided for in the Engagement Letters are consistent with, and typical of, arrangements entered into by Deloitte Tax and other tax firms with respect to rendering comparable services for clients similar to the Debtors, both in and outside of bankruptcy.

20.     Considering the Services that Deloitte Tax will provide, and the market prices for Deloitte Tax's services, the Debtors submit that the Fee Structure (including reasonable reimbursements) is reasonable under the standards set forth in section 330(a) of the Bankruptcy Code and fulfills the requirements of Rule 2014-1 of the Local Rules.

21.     Except as set forth in the Lowenthal Declaration, Deloitte Tax has not shared or agreed to share any of its compensation in connection with this matter with any other non-affiliated person.

## FEE APPLICATIONS

22.     Deloitte Tax will file interim and final fee applications for allowance of its compensation and expenses, with respect to the Services, and Deloitte Tax will seek compensation and reimbursement of expenses, as specified in the Engagement Letters, with the payment of such fees and expenses to be approved in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may be fixed by order of this Court, including but not limited to the Court's Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, dated November 19, 2008 [Docket No. 1604].

## OTHER TERMS OF THE ENGAGEMENT LETTERS AS MODIFIED BY THE DECLARATION

23.    The terms of the Engagement Letters and paragraph 21 of the Lowenthal

Declaration have been modified as follows:

a.    Paragraph 15 of the General Business Terms of the Engagement Letters shall be deemed stricken and replaced with the following:

**Indemnification.**  The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims except to the extent such claims arise out of the gross negligence, bad faith or intentional misconduct of Deloitte Tax or its subcontractors.  In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

b.    All requests of Deloitte Tax for payment of indemnity pursuant to the Engagement Letters shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letters and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Deloitte Tax be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

c.    In no event shall Deloitte Tax be indemnified if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, Deloitte Tax's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

d.    In the event that Deloitte Tax seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letters, the invoices and supporting time records from such attorneys shall be included in Deloitte Tax's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases.

e.    Paragraph 16 of the General Business Terms of the Engagement Letters shall be deemed stricken and replaced with the following:

**Governing Law and Severability.**  These terms, the Engagement Letters (including exhibits), and all matters relating to this engagement shall be

governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or the Engagement Letters is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

## NOTICE

24.      No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Application in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

25.      No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: February 16, 2010
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**<u>EXHIBIT 1</u>**
**(Declaration of Samuel Lowenthal)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                              :
In re                                         :     Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :     08-13555 (JMP)
                                              :
                           Debtors.           :     (Jointly Administered)
                                              :
-------------------------------------------------------------------x

**DECLARATION OF SAMUEL LOWENTHAL IN SUPPORT**
**OF THE DEBTORS' APPLICATION TO RETAIN DELOITTE TAX LLP**
**AS TAX SERVICES PROVIDER NUNC PRO TUNC TO NOVEMBER 1, 2008**

SAMUEL LOWENTHAL, deposes and says:

      1.     I am a partner of the firm of Deloitte Tax LLP ("Deloitte Tax"), which has

an office located at Two World Financial Center, New York, New York.  I make this declaration

in support of the  above-captioned debtors' (the "Debtors") application to retain Deloitte Tax as

tax services providers nunc pro tunc to November 1, 2008 (the "Employment Application").  The

Debtors seek to retain Deloitte Tax pursuant to the engagement letters, dated January 9, 2009 and

January 15, 2010 and related statements of work (the "Engagement Letters") which are attached

hereto as Exhibit B.

      2.     The statements set forth in this Declaration are based upon my personal

knowledge, upon information and belief, and upon client matter records kept in the ordinary

course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

      3.     Except as set forth herein or as set forth on the attached Exhibit A, to my

knowledge based on reasonable inquiry, (1) Deloitte Tax, and the partners, principals, and

directors of Deloitte Tax that are anticipated to provide the services as part of the engagement

team on the engagement for which Deloitte Tax is to be retained in these chapter 11 cases (the

"Deloitte Tax Engagement Partners/Principals/Directors"), do not hold or represent any interest

adverse to any of the Debtors with respect to the matters on which Deloitte Tax is to be retained in these chapter 11 cases, and (2) Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Directors have no relationship to any of the Debtors, any of the Debtors' significant creditors, other known parties in interest in these chapter 11 cases, or to the Debtors' attorneys that are known to be assisting the Debtors in these chapter 11 cases, except as described herein or as set forth on the attached Exhibit A.

4.     As described below, Deloitte Tax has undertaken a search to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals or other entities with significant relationships with the Debtors identified on a schedule provided to Deloitte Tax by counsel to the Debtors.  Deloitte Tax and its affiliates have or may have provided professional services to, currently provide or may currently provide professional services to, and may in the future provide professional services to certain of the Debtors' creditors, other parties in interest, or to attorneys and accountants that were identified to us to be assisting the Debtors or various committees in these chapter 11 cases in matters unrelated to the services to be provided by Deloitte Tax in these chapter 11 cases.  Additionally, certain of these creditors, parties-in-interest, attorneys or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to, Deloitte Tax or its affiliates and the Deloitte Tax Engagement Partners/Principals/Directors in matters unrelated to the services to be provided by Deloitte Tax in these chapter 11 cases.

5.        Deloitte Tax provided prepetition tax services to certain of the Debtors and their affiliates.  Deloitte Tax received approximately $812,000 from the Debtors or their affiliates in the ninety days prior to the date of the commencement of these chapter 11 cases (the "Petition Date").  As of the Petition Date, approximately $735,000 was due and owing by the Debtors or their affiliates to Deloitte Tax in respect of services provided prior to such date.  In addition, Deloitte Tax may be owed in the future additional amounts by the Debtors or their affiliates pursuant to certain contingent fee arrangements including those arising under a meals and entertainment study undertaken by Deloitte Tax (the "Meals & Entertainment Engagement"); however, at this time, the contingencies have not yet occurred.  Subject to Court approval of the Employment Application, Deloitte Tax will withdraw the proof of claim filed against Lehman Brothers Holdings, Inc. and not seek recovery from the Debtors with respect to amounts owed to Deloitte Tax by the Debtors on the Petition Date.  Deloitte Tax reserves the right to seek payment from non-Debtor affiliates of the Debtors with respect to such prepetition claims or the Debtors, as an administrative claim, any amounts that may come due after the Petition Date, including, without limitation, any amounts pursuant to the Meals & Entertainment Engagement and any other contingent fee arrangements subject to any applicable fee application requirements and Court approval as necessary.

6.        Deloitte & Touche LLP ("Deloitte & Touche"), an affiliate of Deloitte Tax, provided prepetition professional services to certain of the Debtors and their affiliates. Deloitte & Touche received approximately $1,356,000 from the Debtors or their affiliates in the ninety days prior to the Petition Date.  As of the Petition Date, approximately $173,000 was due and owing by the Debtors or their affiliates to Deloitte & Touche in respect of services provided prior to such date.

7.     Among other services provided prior to the Petition Date, Deloitte & Touche provided certain services for counsel to the Debtors in connection with certain Internal Revenue Service matters.  These services were completed prior to the Petition Date.  Subsequent to the Petition Date, the law firm assisting the Debtors in these matters requested that Deloitte & Touche answer certain questions regarding such prior work and perform certain additional services related to these questions.  Deloitte & Touche billed the law firm for such services and understand that such fees have been included in the law firms' bills to the Debtors.

8.     Deloitte Financial Advisory Services LLP ("Deloitte FAS") and Deloitte Consulting LLP ("Deloitte Consulting"), affiliates of Deloitte Tax, also provided prepetition professional services to certain of the Debtors and their affiliates.  Deloitte FAS received approximately $22,000 in the ninety days prior to the Petition Date and Deloitte Consulting received approximately $250,000 in the ninety days prior to the Petition Date. No amounts were due and owing to these entities by the Debtors as of the Petition Date.

9.     To identify and disclose possible relationships with parties-in-interest in these chapter 11 cases, Deloitte Tax researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other such entities with significant relationships with the Debtors.  The identities of these parties in interest were provided to Deloitte Tax by counsel to the Debtors.

10.     Despite the efforts described above to identify and disclose Deloitte Tax's connections with the parties in interest in these chapter 11 cases, because Deloitte Tax is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise,

Deloitte Tax is unable to state with certainty that every client relationship or other connection

has been disclosed.  In this regard, if Deloitte Tax discovers additional material information that

it determines requires disclosure, it will file a supplemental disclosure declaration promptly with

the Court.

           11.      From this internal search, Deloitte Tax has determined that certain

relationships should be disclosed as follows.

        Deloitte Tax or its affiliates provide professional services unrelated to the services to be provided by Deloitte Tax in these chapter 11 cases to certain parties in interest or affiliates thereof in the Debtors' chapter 11 cases. Such connections are listed on Exhibit A.  The revenues associated with the services performed for each entity or its affiliates listed on Exhibit A represent less than 1% of the combined net revenues of Deloitte Tax and its affiliates in the last fiscal year for which information is available.

        Some of the services performed by Deloitte Tax or its affiliates for certain of these parties and other parties do relate to these chapter 11 cases (although such services are not related to the services to be provided by Deloitte Tax in these chapter 11 cases) and include such matters as:

        (i)      Assisting certain clients in gathering and analyzing data related to matters concerning prepetition transactions conducted with the Debtors and/or their affiliates.  The purpose of such efforts is to assist the clients in determining amounts that may be owed by certain of the Debtors or their affiliates to such clients

        (ii)      Assisting certain clients with postpetition transactional matters related to purchases or divestitures of assets of the Debtors and/or their affiliates. Such services include merger and acquisition due diligence related to such transactions, post-merger integration services designed to assist the clients with the integration of assets purchased from the Debtors or their affiliates into the purchasers' businesses and tax consulting related to tax effects for the purchasers of such assets.  For example, Deloitte & Touche and its affiliates provided certain post-merger integration services for Barclay's Capital, Inc. in connection with its purchase of various assets from the Debtors and/or its affiliates.  These services are substantially complete at this time.

Deloitte & Touche and its affiliates have completed or have substantially completed the engagements described in subparagraphs a(i) and a(ii) above; however, Deloitte & Touche and its affiliates expect to continue certain of such services in order to complete any engagements previously commenced. Deloitte Tax and its affiliates will not take new engagements to provide (x) pre-acquisition M&A due diligence services with respect to proposed sales of assets of the Debtors or (y) services to assist creditors of the Debtors in asserting claims against such Debtors, in each case, prior to the earlier of (A) the effective date of the Debtors' plan of reorganization or (B) termination of this engagement with the Debtors.

Prior to the Petition Date, Deloitte Tax or its affiliates provided professional services to nondebtor affiliates of the Debtors (or other entities in which a Debtor or Debtor affiliate had an investment or other interest) and continues to provide such services and additional services, including audit, tax, valuation and merger and acquisition support services, to such entities.

Deloitte Touche Tohmatsu ("DTT"), a Swiss Verein, is an association of various members firms including Deloitte LLP, an affiliate of Deloitte Tax. Certain of the non-US member firms of DTT or their affiliates (the "DTT Member Firms") have provided, currently provide or may in the future provide professional services to certain of the Debtors' affiliates and parties in interest including in connection with the Debtors and/or their non-Debtor affiliates.[1]

Deloitte & Touche, Deloitte Tax and certain of their affiliates provide services to James Giddens in his capacity as the trustee (the "Trustee") of Lehman Brothers, Inc. ("LBI"), in connection with LBI's proceeding under the Securities Investor Protection Act. No member of the Deloitte Tax engagement team providing the Tax Services (as defined below) to the Debtors currently provides or will provide services to the Trustee in connection with the referenced engagements; provided, however, that, subject to the prior consent of Lehman Brothers Holdings Inc. on behalf of the Debtors and the Trustee on behalf of LBI, certain personnel of the Deloitte Tax engagement team providing tax services for the Debtors may also provide similar or related tax services for the Trustee.[2]

Law firms identified on Exhibit A, including Weil, Gotshal & Manges LLP, the Debtors' counsel, have provided, currently provide and may in

---

[1]        Each of the DTT Member firms is a separate and independent legal entity. It is not Deloitte Tax's practice to undertake conflicts checks with DTT Member Firms for the purpose of identifying relationships that they may have with the Debtors and other parties-in-interest and Deloitte Tax does not maintain a database for the purpose of identifying all such relationships.

[2]        The reference to the term "engagement team" does not include certain national office personnel who may have some involvement with both engagement teams at a consultative level.

the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to these chapter 11 cases, and/or Deloitte Tax or its affiliates have provided, currently provide, and may in the future provide services to such firms (either directly for such firms or in connection with their representation of their clients).

In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its competitors which together with their affiliates, may be parties in interest in these chapter 11 cases, including Alvarez & Marsal North America LLC and Ernst & Young LLP.  For example, from time to time, Deloitte Tax or its affiliates and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

 Certain financial institutions or their respective affiliates (including Bank of America, Barclays Capital, Inc., Credit Suisse, HSBC, ING, JP Morgan Chase Bank, US Bank, and Wells Fargo Bank) listed on Exhibit A are lenders to an affiliate of Deloitte Tax.  Deloitte Tax is a guarantor of such indebtedness.  These financial institutions have also financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Tax and its affiliates.

Deloitte FAS provides financial advisory services to the Pension Benefit Guaranty Corporation (the "PBGC").  The Debtors and their pension plans are not the subject of these services for the PBGC.

Deloitte Tax or its affiliates have in the past provided, may currently provide and may in the future provide professional services for certain officers of the Debtors or their affiliates in matters unrelated to the services to be provided by Deloitte Tax in these chapter 11 cases.

Certain parties-in-interest may be adverse to, or involved in litigation matters with, Deloitte Tax or its affiliates in connection with matters unrelated to these chapter 11 cases.

12.    Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these chapter 11 cases, the United States Trustee for Region 2, the Assistant United States Trustee for the Southern District of New York, and the attorney therefor assigned to these chapter 11 cases.

13.    Except as may be disclosed herein, to the best of my knowledge, Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Directors do not hold or represent any interest adverse to the Debtors with respect to the matters for which Deloitte Tax is being retained in these chapter 11 cases, and I believe that Deloitte Tax is qualified to perform the Tax Services for the Debtors.

14.    Subject to the terms of the applicable Engagement Letter between the Debtors and Deloitte Tax, Deloitte Tax proposes to render, as may be requested by the Debtors and as may be agreed to by Deloitte Tax, various tax services (the "Tax Services") which may include the following:

- Assisting the Debtors in analysis of certain sales and use tax filings made for the years 2004, 2005, 2006, 2007 and 2008; assisting the Debtors in the assessment of these returns and identification of instances of overpayment of either sales or use tax by the Debtors; assisting the Debtors in the preparation of the necessary claims for refund of any identified overpayments; and supporting the Debtors in the review process of these claims by interacting with the appropriate state and local taxing authorities.

- Assisting the Debtors in their supporting and documenting of their filing of a zero fixed base percentage with respect to their claim of a research and development credit on their tax return pursuant to Internal Revenue Code Section 41.

- Assisting the Debtors in connection with tax matters related to their meal and entertainment expenditures for 2008. (Deloitte Tax may also assist the Debtors with Internal Revenue Service audits of the prior Meal & Entertainment Engagement).

- Assisting the Debtors in connection with certain Internal Revenue Service and state examinations related to matters on which Deloitte Tax has previously advised the Debtors, including, but not limited to, state income sourcing issues arising from the Debtors' principal trading activities.

- Assisting the Debtors with respect to the maintenance (from a tax perspective) of any licenses, registrations, or certificates with respect to a particular business line.

- Assisting the Debtors with respect to tax matters related to FIN 48 issued by the Financial Accounting Standards Board.

- Assisting the Debtors with respect to tax matters related to specific transactions for which Deloitte Tax had previously advised the Debtors.

- Other tax services as requested by the Debtors and agreed to by Deloitte Tax.

- Pursuant to the Engagement Letters (and related statements of work).

15.     Deloitte Tax intends to charge the following hourly rates for the Tax Services:

| Classification | Hourly Rate |
| --- | --- |
| Partner/Principal/Director | $850 - 965 |
| Senior Manager | $675 - 825 |
| Manager | $550 - 700 |
| Senior and Staff | $200 - 560 |

16.     In the normal course of business, Deloitte Tax may revise the hourly rates set forth above to reflect changes in responsibilities, increased experience, and increased costs of doing business.  Accordingly, Deloitte Tax requests that the aforementioned rates be revised to the hourly rates that will be in effect from time to time.  Changes in regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

17.     In connection with the Meals & Entertainment Engagement, Deloitte Tax reserves its right to request payment of a contingent fee for such services as set forth in the applicable engagement letter.  Except as otherwise set forth in any of the applicable Engagement Letters, the professional fees charged for Tax Services are calculated from the actual hours expended in providing the services multiplied by the hourly billing rates for the specific personnel involved.  In addition, reasonable expenses, including travel, report production,

delivery services, and other expenses incurred in providing the services, will be included in the total amount billed.

18.    At the request of the Debtors, Deloitte Tax provided limited services for the Debtors after the Petition Date to assist them in meeting certain tax filing deadlines.  Deloitte Tax incurred approximately $100,000 of fess in connection with such services and seeks compensation for such services.

19.    Deloitte Tax requests that it be permitted to submit monthly invoices for services rendered and expenses incurred. Such invoices will contain reasonable detail consistent with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to these chapter 11 cases.  Deloitte Tax requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments.

20.    All payments rendered pursuant to Deloitte Tax's retention by the Debtors must be approved by an Order of this Court and based upon the filing by Deloitte Tax of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

21.    For the Tax Services performed for the Debtors prior to the effective date of any plan of reorganization, Deloitte Tax has agreed to make the following changes to the Engagement Letters:

    a)    Paragraph 15 of the General Business Terms of the Engagement Letters shall be deemed stricken and replaced with the following:

        The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims except to the extent such claims arise out of the gross negligence, bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate

liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

b) Paragraph 16 of the General Business Terms of the Engagement Letters shall be deemed stricken and replaced with the following:

**Governing Law and Severability.** These terms, the Engagement Letters, including exhibits and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or the Engagement Letters is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

22.    Deloitte & Touche has completed a reorganization of some of its businesses, including its financial advisory services, tax services, solutions, human capital and outsourcing businesses. This reorganization is intended to align the organizational structure more closely with the manner in which business is conducted. These businesses are now being conducted by entities affiliated with Deloitte & Touche, including Deloitte Tax, Deloitte FAS, and Deloitte Consulting. Accordingly, some services incidental to the tasks to be performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now employed by or associated with Deloitte & Touche, Deloitte FAS, Deloitte Consulting or their respective subsidiaries, including subsidiaries located outside of the United States. The fees and expenses with respect to such services will be included in the fee applications of Deloitte Tax.

23.     Deloitte Tax has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration.  Deloitte Tax has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

Dated: February 16, 2010

/s/ Samuel Lowenthal
Declarant: Samuel Lowenthal
Title:      Partner, Deloitte Tax LLP

## EXHIBIT A
### (Connections to Parties in Interest)

Parties-in-Interest for whom Deloitte Tax LLP or its affiliates has provided or is currently providing services in matters unrelated to these chapter 11 cases or with whom such parties have other relationships, including banking relationships.

20 CCC Business Trust
4 Kids Entertainment
ABM Industries
Accenture, Inc.
Access Data
Acronis Inc
Advanced Micro Devices, Inc.
Aegis Mortgage Corporation
Aegon USA, Inc.
AerCap Holdings N.V.
AETNA Life Insurance Company
AEW Capital Management, LP
AFD Contract Furniture
Agilysys NJ, Inc.
AIG
Akerman, Senterfitt & Eidson PA
Akin, Gump, Strauss, Hauer & Feld
Allen & Overy LLP
Allianz Global Investors AG
Allison Transmission Inc.
Allstate Insurance Co.
Alta Communications
Alvarez & Marsal LLC
Andrews Kurth LLP
Aozora Bank Ltd.
Assicurazioni Generali SPA
Australia & New Zealand Banking Group Limited
Avista Corporation
Aviva Life Insurance Company
AXA
B.L. Harbert International LLC
Bain & Company, Inc.
Baker & McKenzie LLP
Ballard, Spahr, Anderson & Ingersoll, LLP
BancTec
Bank of America
Bank of China
Bank of New York Mellon Corporation
Bank of Nova Scotia
Barclays Capital, Inc.

Bayview Financial, L.P.
Bessemer Venture Partners
Bim Alternative Investments Sgr S.P.A.
BioSphere Medical, Inc.
Blackrock Advisors
Blakes Cassels & Graydon LLP
Bloomberg
Blue Cross & Blue Shield Assoc.
Blue Cross Blue Shield of IL
BlueLinx Holdings Inc.
BNC Holdings Inc.
BNP Paribas
Bremer Financial Corporation
Broadridge Financial Solutions
Brookfield Properties Corporation
Business Objects
CA Inc. (fka Computer Associates International)
Cadwalader, Wickersham & Taft LLp
Caisse De Depot et Placement du Quebec
Caixa Geral de Depositos
California Public Employees Retirement System
CAM Holdings, LLC
Canadian Imperial Bank of Commerce
Capital Research and Management
Carrington, Coleman, Sloman, & Blumenthal, L.L.P.
Cascade Investment LLC
CB Richard Ellis, Inc.
CDW
Centerbridge Partners L.P.
CHD Meridian Healthcare, LLC
Cheung Kong Bond Finance Limited
Chevron Corp. and Affiliates
Chrysler LLC
Chuo Mitsui Trust Holdings Incorporated
Citigroup, Inc.
City of Farmers Branch
Clayton Associates
Clear Channel Communications, Inc.
Clearbridge Advisors
Clifford Chance LLP
CMD Realty
CNX Gas Corporation
Cognizant Technology Solutions
Collinsville Building & Loan A
Colorado Housing and Finance Authority
Commerzbank AG and Affiliates

Commonwealth Bank
Comptroller of the Currency, Office of
CompuCom Systems, Inc.
Computer Associates, Inc.
Computer Systems Consulting, Inc
Consolidated Container Company LLC
Consumer Choice (aka First Choice)
Continental Casualty Company
Contrarian Capital Management, L.L.C.
Corporate Business Park
Cox, Castle & Nicholson LLP
Credit Suisse Group and Affiliates
Crescent TC Investors, L.P.
Crimson Exploration Inc.
Crossroads Management Advisors, LLC
CT Tower Investments Inc
Cushman & Wakefield and Affiliates
Cyveillance, Inc.
Danske Bank A/S S.A.
Davies Ward Phillips & Vineberg LLP
Davis Polk & Wardell
DBSI Inc.
DE Shaw & Co., L.P.
DEC Duke Energy Co.
Dechert LLP
Delaware Corporate Management Inc.
Delaware General Management
Delaware Group
Dell Computer Corp. and Affiliates
Deutsche Immobilien Fonds AG
Dewey & LeBoeuf LLP
Dewey Ballantine LLP
Dexia
Dia Kensetsu Co., Ltd.
Dimension Data Group
Dimension Data, Inc.
Direct Energy LP
Directed Energy, Inc.
DLA Piper
Dollar General Corporation
Dorsey & Whitney LLP
Dow Jones Reuters Business Interactive LLC
Dresdner Bank AG and Affiliates
Duke Energy Corporation
Eagle Energy
Eaton Corp

Emigrant Bank
EnergyCo, LLC
Enterprise Products Partners L.P.
Essex Group, Inc. and Affiliates
European Bank, Ltd.
ExlService Holdings, Inc.
Eze Castle Software Inc.
Federal Deposit Insurance Corporation
Federal Energy Regulatory Commission
Federal Express Corporation
Federal Highway Administration
Federal Home Loan Bank Board
Federal Home Loan Bank of Dallas
Federal Home Loan Mortgage Corporation
Federal Insurance Company
Federal National Mortgage Association
Federal Reserve Bank
Federal Reserve Bank of New York, The
Federal Reserve Board
Federated Investors, Inc
Fenway Partners, Inc.
Ferrari SPA
Fidelity Management & Research Company and Affiliates
Financial Industry Regulatory Authority Inc. (FINRA)
FIR Tree Inc.
First American Trust
First Choice Power GP, LLC
First Commercial Bank (Inc)
First Trust Advisors L.P. and Affiliates
First Wind Holdings
FirstBank of Puerto Rico
Florida Power & Light Company
FMR Corp and Affiliates
Fondiaria SAI SpA
Fondo Latinoamericano de Reservas
Four Point Entertainment
FPL Energy, LLC
Franklin Advisors, Inc.
Franklin Group Inc
Fred Hutchinson Cancer Res Ctr
Freshfields Bruckhaus Deringer LLP
Friedman, Billings, Ramsey Group, Inc.
Frontier Drilling, Inc.
FT Interactive Data Corp.
FTI Consulting, Inc.
Galleria Associates, L.P. The

Gartner Consulting
Gartner Law Firm, PC
Gartner, Inc.
GE Capital
General Motors Acceptance Corp
General Motors Corporation
Gensler, M Arthur Jr & Associates
Gibson Dunn & Crutcher LLP
GL Trade, SA
GLB Trading Inc.
GLG Corp Ltd.
GLG Partners
Global Trade Alliance, Inc.
Global Trade Centers, LLC
Global Trade Properties Limited
Globus Trading SA
Godiva Brands, Inc.
Guardian Life Insurance Company of America (The)
Guggenheim Capital LLC
Hahn Loeser & Parks LLP
Harbert Management Corporation
Harbinger Capital Partners
Hartford Life Insurance Company
Headstrong
Health Care Service Corporation (aka Blue Cross Blue Shield)
Heller & Ehrman LLP
Herbert Smith LLP
Hewlett-Packard Company (HP)
Hilcorp Energy Company
Hogan & Hartson, LLP
Houghton Mifflin Company
Houlihan Lokey Howard & Zukin Capital, Inc.
HSBC and Affiliates
Hua Nan Commercial Bank Limited
Hunton & Williams LLP
Huntsman Corporation
Huron Consulting Group Inc.
IBM Corporation
Ikon Office Solutions (fka, Associated Business Products)
Ikon Office Solutions, Inc.
Imperial Bank Ltd
Information Builders, Inc.
ING and Affiliates
Institutional Benchmarks Series (Master Feeder) Limited
Integreon Managed Solutions, Inc.
Intel Corporation

Interactive Data Corporation
International Business Machines Corporation
International Monetary Fund
Investcorp Bank, BSC
Investcorp SA
Iowa Telecommunications Services
Iron Mountain Inc. and Affiliates
Irvine Company Inc.
Jackson National Life Insurance Company
Jeffer Mangels Butler & Marmaro LLP
John Hancock Financial Services Incorporated
Jones Day LLP
JP Morgan Chase Bank N.A.
Kagiso Media Ltd.
Kapalua Bay Holdings, LLC
KBC Bank NV
KBC Financial Holding Inc
Kepner-Tregoe, Inc.
Korea Investment Trust Management & Securities Co. Ltd.
Kraft Foods, Inc.
Kramer Levin Naftalis & Frankel LLP
LandAmerica Financial Group Inc.
Latham & Watkins LLP
Lehman Brothers Holdings Inc.
Level 3 Communications
Lewis & Roca, LLP
Lexis Nexis
Liberty Insurance Services
Liberty National Life Insurance Co. Inc.
Linklaters
Liquid Engines
Lloyds TSB Bank plc
Mack-Cali Realty Corp
Mackenzie Financial Corporation
Marshall & Ilsley Corporation
McKenna Long & Aldridge LLP
Meridian COMP of New York, Inc.
Merrill Lynch & Company Inc.
Metavante Corporation
Metavante Technologies, Inc.
MetLife and Affiliates
Metropolitan West Asset Management LLC
MGM and Affiliates
Michael Stapleton & Associates
Microsoft Corporation
Milano Leasing S.P.A.

Milbank, Tweed, Hadley & McCloy LLP
Millennium Development
Miller, Canfield, Paddock, & Stone, P.L.C.
Mitsubishi UFJ Securities Co., Ltd.
Mitsui & Company Ltd.
Mizuho Corporate Bank, Ltd.
Moody's Investors Service
Morgan Stanley & Co.
Morrison & Foerster LLP
National Australia Bank Limited
National Bank of Australia
National Bank of Canada
National Cinemedia
National Futures Association
Natixis Asset Management Advisors
Net One Systems
Network Appliance, Inc.
Neuberger & Berman
New York Life Insurance Company
New York Stock Exchange
New York University
Newedge USA LLC
Newport Global Advisors
Nippon Life Insurance Company
Nomura Holdings Inc.
Normandy Real Estate Partners
Northrop Grumman
Novara
NPC Inc.
Occidental Energy Marketing, Inc.
Occidental Petroleum Corporation
Och-Ziff
OCI Holdings Limited
Office Depot, Inc.
Open Solutions, Inc.
Oppenheimer Funds
Oracle Credit Corporation
Orthovita, Inc.
P2 Direct Energy GP, LLC
Pacific Coast Capital Partners
Pacific Gas and Electric Company
Pacific Life Insurance Company
Paul, Hastings, Janofsky & Walker LLP
Paul, Weiss, Rifkind, Wharton & Garrison LLP
PCC Properties (Calgary) Ltd.
Pension Benefit Guaranty Corporation

Phillips Hager & North Investment Management
PIMCO Funds Global Investors
Pinnacle Foods Corporation
PNMR Services Company
Pricoa Relocation Hong Kong Limited
Providence Equity Partners
Prudential Financial, Inc.
Prudential Insurance Company of America
Prudential Plc
Public Service Company of North Carolina
Putnam
Quest Software, Inc.
Quinn Emanuel Urquhart Oliver and Hedges LLP
Red Man Pipe & Supply Co.
Reliant Energy, Inc.
Reliastar Financial Corp.
Residential Funding Company LLC
Reuters
Reynolds American Defined Benefit Master Trust
Reynolds American, Inc.
Rockwell Collins Business Services, Inc
Royal Bank of Scotland
RR Donnelley & Sons
Russell Investment  Group, Inc.
Ryland Group, Inc.
Schulte, Roth & Zabel LLP
Securities Investor Protection Corporation
Shinsei Bank Limited
Sills Cumis Epstein & Gross P.C.
Skadden, Arps, Slate, Meagher & Flom LLP
SMBC
Snell & Wilmer
Societe Generale
Sola International, Inc.
Sola Ltd.
Somerset Properties SPE, LLC
Sonnenschein Nath & Rosenthal LLP
Sony Corporation
Southern California Edison Company
Sprint Nextel Corp.
Squire, Sanders & Dempsey LLP
St. Joe Company
Standard & Poor's
Standard Chartered Bank
State Street Bank
State Street Corporation

Stewart & Stevenson LLC
Storage Technology Corp.
Stratus Inc.
Stroock & Stroock & Lavan
Structure Tone Inc.
Sumitomi Mitsui Financial Group
Sumitomo Mitsui Banking Corp.
Sun Life Assurance Company of Canada
Sun Trust Banks, Inc.
Svenska Handelsbanken AB
Swedbank AB
Swets Information Services Inc.
T Rowe Price Associates
Tata America International
Tata Consultancy Services
Teachers Insureance & Annuity Association
Telecom Italia Capital S.A
Telwares, Inc.
Texas Tower Limited
Thacher Proffitt & Wood LLP
Thayer Group Limited/Thayer Properties
The Bank of Tokyo Mitsubishi
The Carlyle Group
The Chuo Mitsui Trust and Banking Company, Limited
The Nielsen Company Us Inc
Third Avenue Management LLC
Thomson Financial
Thomson Reuters
Thrift Supervision, Office of
Thrivent Financial for Lutherans
Tibco Software Inc.
Tiger Asia Fund, L.P.
Tishman Speyer Properties, L.P.
Toronto-Dominion Bank
Trading Technologies International
Tradition Financial Services
Transaction Network Services
Transamerica Life Insurance Company
Trimont Real Estate Advisors Inc.
Triple Net Properties, LLC
Triple Point Technology Inc.
Trophy  Hunterr Investments
Tullett Prebon Holdings Corp.
Turnberry Fund
UBS (Union Bank of Switzerland)
UFJ Bank Limited

Union Bank of California
United California Bank, N.A.
University of Pittsburgh
University of Pittsburgh Medical Center
US Bank NA
Vail Resorts Inc.
Vanguard Group, Inc.
Verison Communications Inc.
Veyance Technologies, Inc.
Vignette Europe Limited
Washington Mutual
Wasserstein Perella Group Holdings, LLC
Weight Watchers International Inc.
Weil Gotshal & Manges LLP
Wellmont Health System
Wells Fargo
West Corporation
Western Asset Management Company
White & Case
Willkie Farr & Gallagher LLP
Wilmington Trust Company
Wilson Law Firm
WooriLB
WR Grace & Company
Yildiz Holdings, Inc.
Zurich American Insurance Company

## **EXHIBIT B**
### **(Engagement Letters)**

# Deloitte.

Deloitte Tax LLP
Two World Financial Center
New York, NY 10281-1414
USA

Tel: +1 212 436 2000
Fax: +1 212 436 5000
www.deloitte.com

January 9, 2009

Mr. Jeffry J. Ciongoli
Global Tax Director
Lehman Brothers Holdings Inc.
70 Hudson Street, 10ᵗʰ Floor
Jersey City, NJ 07302

Dear Mr. Ciongoli:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax advisory
services ("Advisory Services") for Lehman Brothers Holdings Inc. ("LBHI" or "Client")
during the upcoming year including January 1, 2009 through December 31, 2009. Deloitte Tax
professionals will generally be available to provide Advisory Services on federal, foreign, state
and local tax matters on an as-requested basis.

This engagement letter ("Engagement Letter") describes the scope of the Deloitte Tax Advisory
Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and
the fees Deloitte Tax expects to charge.

## SCOPE OF SERVICES

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Advisory
Services provided by Deloitte Tax to Client during the period set forth above, unless such
services are the subject of a separate written agreement entered into between Deloitte Tax and
Client.

As the specific Advisory Service desired by Client from Deloitte Tax is identified, Client and
Deloitte Tax will execute a separate work order ("Work Order") when such Advisory Service
involves contemplated fees in excess of $75,000. The request for Advisory Services should be in
a form of a Work Order as set forth in Exhibit A attached to this Engagement Letter (or a
substantially similar form). The request for Advisory Services should reference this Engagement
Letter and clearly describe the specific details of the Advisory Services anticipated pursuant to
the Work Order (including scope of work, deliverables, timing, client responsibilities and fees).

LBHI and Deloitte Tax further agree that in any project undertaken pursuant to this Engagement
Letter, or any subsequently executed Work Order, that the only party who will oversee Deloitte
Tax, or review its work product will be Jeff Ciongoli of LBHI, a member of his staff, or the
Board of LBHI.

It is contemplated that the Advisory Services requested from Deloitte Tax may include oral and
written opinions, consulting, recommendations and other communications rendered in response to
specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax
questions may be based upon a review of various documentation including, but not limited to,
legal opinions, books and records (collectively, "books and records") relevant to Client's
transactions and business activity that Client provides to Deloitte Tax. With respect to such
Advisory Services, Deloitte Tax is entitled to assume without independent verification the
accuracy of all representations, assumptions, information and data provided by Client and its

Rev 12/08

Member of
Deloitte Touche Tohmatsu

Lehman Brothers Holdings Inc.
Page 2

representatives.  Deloitte Tax may ask Client to clarify or supplement information provided in
this context.

## REPORTABLE TRANSACTIONS

The Internal Revenue Service ("IRS") and some states have promulgated rules that require
taxpayers to disclose their participation in reportable transactions by attaching a disclosure form
to their federal and/or state income tax returns and, when necessary, by filing a copy of that
disclosure form with the IRS and/or the applicable state tax agency.  These rules impose
significant requirements to disclose certain transactions and such disclosures may encompass
transactions entered into in the normal course of business.  The Advisory Services that are the
subject of this Engagement Letter do not include any obligation by Deloitte Tax to identify any
reportable transactions or disclosure obligations.  Any advisory services regarding reportable
transactions will be provided under the terms of a separate engagement letter.  Client is
responsible for ensuring that it has properly disclosed all reportable transactions; failure to make
required disclosure will result in substantial penalties.  Deloitte Tax will not be liable for any
penalties resulting from Client's failure to accurately and timely file any required reportable
transaction disclosure.

## TAX POSITIONS AND POTENTIAL PENALTIES

Deloitte Tax will discuss with Client tax positions that Deloitte Tax is aware of as a result of the
Advisory Services and for which Client or Deloitte Tax could be subject to potential penalties.
With respect to those tax positions, Deloitte Tax will discuss any opportunity to avoid such
penalties through adequate disclosure, if relevant, and the requirements for adequate disclosure.
Client should be aware that in certain instances, the standards to avoid a potential penalty
applicable to Deloitte Tax, as a tax return preparer, may exceed the accuracy related penalty
standards applicable to Client.

## ACKNOWLEDGEMENTS AND AGREEMENTS

The Advisory Services will be performed in accordance with the *Statement on Standards for
Consulting Services* established by the American Institute of Certified Public Accountants
("AICPA").  Advisory Services to be performed by Deloitte Tax will be established by mutual
agreement and can be changed or modified in the same manner.  Deloitte Tax will promptly
inform Client of any circumstances that warrant a change in the scope of the specific services to
be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the
Advisory Services are requested.

Client acknowledges and agrees that the Advisory Services provided pursuant to this Engagement
Letter will be based solely upon:

(a)     The representations, information, documents and other facts provided to Deloitte Tax by
        Client, its personnel and any representatives thereof;

(b)     The understanding that Deloitte Tax will only be responsible to provide tax advice with
        respect to the specific matter, transaction or question actually presented by Client,
        including the type of tax and the taxing jurisdiction specifically identified by Client (e.g.,
        federal, foreign, state, local, sales, excise, etc.);

(c)     Client's understanding that any tax advice provided pursuant hereto will be based upon
        the law, regulations, cases, rulings, and other tax authority in effect at the time specific

Lehman Brothers Holdings Inc.
Page 3

tax advice is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

(d)     Client's understanding and agreement that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion; and

(e)     Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Client before the appropriate tax authorities, if permissible, for an additional fee that is mutually agreed upon.

Although Deloitte Tax might in certain circumstances provide Client with drafts of a deliverable before it is finalized, Client understands that Client may not rely upon any of the analysis, conclusions, or recommendations unless and until the final deliverable is issued. Any part of our analysis, including the recommendations or conclusions may change between the time of any draft and the issuance of a final deliverable.

All rights and obligations of Deloitte Tax and Client described in this Engagement Letter will apply to each Work Order. In the event of any conflict or inconsistency between the terms of this Engagement Letter and the terms of any Work Order, the terms of this Engagement Letter shall control. Notwithstanding the immediately preceding sentence, in the event that a Work Order expressly provides that certain provisions therein shall control over specified provisions of this Engagement Letter, then, to the extent that such provisions of the Work Order conflict or are inconsistent with the specified provisions of this Engagement Letter, such provisions of the Work Order shall control. If a Work Order is not executed, as previously described, the terms of this Engagement Letter will apply to the Advisory Services provided.

## CONSENT FOR DISCLOSURE AND USE OF TAX INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Advisory Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Engagement Letter, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing services in connection with the Advisory Services under this Engagement Letter and preparation of tax returns, tax planning, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Rev 12/08

Lehman Brothers Holdings Inc.
Page 4

## PROFESSIONAL FEES AND EXPENSES

The Deloitte Tax professional fees for Advisory Services, other than for Advisory Services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, are based on the amount of professional time required and our standard hourly rates, which vary depending upon the experience level of the professionals involved, plus reasonable out-of-pocket expenses. Deloitte Tax will send Client periodic bills as the work is performed.

## ACCEPTANCE

This Engagement Letter including all exhibits and Work Orders, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Advisory Services described in this Engagement Letter, or any other advice that Deloitte Tax may provide to you, please feel free to contact Sam Lowenthal at (212) 436-4286, or Ed Mason at (212) 436-6930.

Very truly yours,                    AGREED AND ACCEPTED:

DELOITTE TAX LLP                     Lehman Brothers Holdings Inc. on behalf of
                                     itself and its subsidiaries and/or affiliates

By: _____       By: _____

      Samuel Lowenthal               Printed
                                     Name: _Jeffry J. Ciongoli_
                                     Title: _MANAGING DIRECTOR_
                                     Date: _1 28 09_

Rev 12/08

**Exhibit A**
**Work Order**

| Work Order Number: | Authorized Start Date: |
| --- | --- |

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and [Client] ("Client") dated [*Date*].

**Description of Advisory Services and Deliverable:**

**Estimated Timing for Advisory Services (including Critical Path, Milestones, and Deliverables, if applicable):**

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

**Client Responsibilities:**

**Other Terms (if applicable):**

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Advisory Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be used by Deloitte Tax and disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing services in connection with the Services under this Work Order and preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Rev 12/08

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Lehman Brothers Holdings Inc.**        **Deloitte Tax LLP**

By: _____       By: _____

Printed                              Printed

Name: _Jeffry J. Ciongoli_    Name: _____

Title: _MANAGING DIRECTOR_   Title: _____

Date: _1/28/09_              Date: _____

                                  Address: _____

Rev 12/08

# DELOITTE TAX LLP GENERAL BUSINESS TERMS

1.    **Services.**  It is understood and agreed that Deloitte Tax LLP's ("Deloitte Tax") services (the "Services") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. For purposes of these terms and the Engagement Letter, the "Client" shall mean Lehman Brothers Holdings Inc and its subsidiaries and/or affiliates. Lehman Brothers Holdings Inc. represents and warrants that it has the power and authority to execute the Engagement Letter on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.

2.    **Payment of Invoices.**  Deloitte Tax's invoices are due within thirty (30) days of the invoice date. Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date. The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

3.    **Term.**  Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services. This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. Deloitte Tax may terminate this engagement upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB") or the Securities and Exchange Commission) or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

4.    **Ownership of Deloitte Tax Property.**  To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property. Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing.

5.    **Limitation on Warranties.**  THIS IS A SERVICES ENGAGEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE. DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE CLIENT'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF PROFESSIONAL FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.

6.    **Limitation on Damages.**    The Client agrees that Deloitte Tax, its subcontractors and their respective personnel shall not be liable to the Client for any claims, liabilities or expenses relating to this

Rev 10/08

engagement ("Claims") for an aggregate amount in excess of the fees paid by the Client to Deloitte Tax pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In no event shall Deloitte Tax, its subcontractors or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this engagement. In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

7.      **Client Responsibilities.**  The Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client.  The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services.  The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities hereunder and timely decisions and approvals of the Client in connection with the Services.  Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client. The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services; (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8.      **Force Majeure.**  Except for the payment of money, neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

9.      **Limitation on Actions.**  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10.     **Independent Contractor.**  It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner or representative.  Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11.     **Confidentiality.**  To the extent that, in connection with this engagement, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the Client, Deloitte Tax will not disclose such information to any third party without the Client's consent.  The Client hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals and employees), or to other subcontractors, in each case, whether located within or outside of the United States, that are providing Services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto; or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax

Rev 10/08

in breach hereof, (ii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax independently of any disclosures made by the Client to Deloitte Tax of such information.  In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel.  The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge and ideas

12.    **Survival and Interpretation.**  The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties, limitations on damages, limitations on actions, confidentiality, survival and interpretation, assignment and subcontracting, waiver of jury trial, indemnification, governing law, venue, jurisdiction and severability, information and data, and third parties and internal use shall survive the expiration or termination of this engagement.  For purposes of these terms, Deloitte Tax shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor (or such entity's personnel) shall have any liability hereunder to the Client or any other person, and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax (or such entity's personnel) in connection with this engagement.  Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms.  Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings.  **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

13.    **Assignment and Subcontracting.**  Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party.  The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax.  Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

14.    **Waiver of Jury Trial.  DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15.    **Indemnification.**  The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims, to the extent such Claims arise out of any act or omission by the Client or any of its personnel.  In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

16.    **Governing Law, Venue, Jurisdiction and Severability.**  These terms, the Engagement Letter, including exhibits, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof).  Any action based on or arising out of this engagement or the Services provided or to be provided

3

Rev 10/08

hereunder shall be brought and maintained exclusively in any court of the State of New York or any federal court of the United States, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest permissible the intent of the parties set forth herein.

17.    **Information and Data.**  Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

18.    **Third Parties and Internal Use.**  Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

19.    **Certain Tax Disclosures and Reporting.**  In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter. The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

20.    **Accountant / Client Privilege – IRC §7525.**  The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters

4

before the IRS, if the United States is a party to the proceedings. The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege. The Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege, and Deloitte Tax will cooperate with the Client's reasonable instructions relating to the confidentiality privilege. Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties. The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege. Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules. The Client agrees to hold Deloitte Tax harmless from, and also assumes responsibility for, any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

Rev 10/08

## Deloitte Tax Privacy Notice

**Introduction**

This privacy notice applies to clients who obtain services from Deloitte Tax. Deloitte Tax refers to Deloitte Tax LLP and its subsidiaries.

**Information Collection**

Deloitte Tax may collect personally identifiable information ("PII") from you such as:

- Home address
- Home telephone number
- Date of birth
- Government identifiers (such as social security number)

In connection with our client acceptance process, Deloitte Tax may collect PII about you that may be considered sensitive. This could include, for example, history of any criminal activity.

Deloitte Tax may also collect PII about you from, among other places:

- Information you provide directly to us
- Information regarding the services that Deloitte Tax provides or has previously provided to you
- Information Deloitte Tax receives from our affiliated entities or third parties relating to the establishment of our relationship or the provision of services to you

This information can be received in any manner, including in in-person discussions, telephone conversations, and electronic or other written communications.

**Information Use**

Deloitte Tax collects PII about you to:

- Establish or maintain our relationship with you
- Provide you with services you have requested
- Keep you informed of services we think may be of interest to you

Without PII, Deloitte Tax may be unable to provide you with the services you have requested.

**Disclosure of Information**

Deloitte Tax may share PII about you with others as permitted by contractual agreement or as required by law, such as:

- Our affiliates
- Third parties in connection with the provision of services to you
- Government entities and regulatory bodies
- Those with whom you have requested us to share information

Deloitte Tax requires third parties who perform services for us to agree to treat PII about you confidentially and securely.

Unless restricted by law, regulation, contract or professional standards, Deloitte Tax may transfer PII about you outside the United States to other countries for the purposes described in this privacy notice.

Deloitte Tax will provide notice and obtain your consent before:

- Sharing PII about you with an unaffiliated third party who is not performing services for us, except if such sharing is otherwise permitted by this privacy notice, or
- Using sensitive PII about you for purposes not described in this privacy notice

Deloitte Tax does not sell or lease PII about you to others.

**Access**

You may request access to the PII that Deloitte Tax has about you. You may also request the correction, amendment or deletion of PII about you that is inaccurate. Deloitte Tax will treat requests for access, correction, amendment or deletion of PII about you in accordance with its internal policies and applicable legal requirements.

**Information Security**

Deloitte Tax maintains reasonable physical, administrative and technical safeguards to protect PII from loss, misuse, or unauthorized access, disclosure, alteration or destruction. Our personnel and the personnel of our affiliates are provided access to PII about you only if they have a need to know the information in connection with a legitimate business purpose, such as (i) the provision of services to you or (ii) to help identify other services that Deloitte Tax and its affiliates offer that may be of interest or use to you.

**Changes to This Privacy Notice**

Deloitte Tax reserves the right to change this privacy notice. Deloitte Tax will provide you with a revised privacy notice that reflects such changes as required by law.

**Questions**

If you have any questions or concerns regarding this notice, please contact your engagement partner/principal/director.

6

Exhibit A

## WORK ORDER

| Work Order Number: _n/A_ | Authorized Start Date: _ASAP_ |
|---|---|

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP and Lehman Brothers Holdings Inc. dated 1/09/09.

**Description of Tax Assistance and Deliverable:** Deloitte Tax will provide the tax assistance needed to LBHI to support and document its fixed base percentage with respect to its claim of R&D credit on its return pursuant to IRC Section 41.

**Estimated Timing for Services (including Critical Path, Milestones, and Deliverables, if applicable):**
Deloitte Tax professionals are available to begin work on this project immediately. It is estimated that this project will take approximately one month to complete. This estimate assumes that LBHI professionals, and required data will be made reasonably available to Deloitte Tax upon request.

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**
Deloitte Tax will invoice LBHI for the provided tax assistance on the basis of the actual time incurred in providing the tax assistance. Such time will be billed based upon our standard hourly rates for the level of the professional involved plus reasonable out-of-pocket expenses.

**Client Responsibilities:**
Deloitte Tax will need access to LBHI's systems and personnel during the course of the engagement. LBHI will provide such access and assistance in a timely fashion after Deloitte Tax's request for same.

**Other Terms (if applicable):**
None

| [Lehman Brothers Holdings Inc. | Deloitte Tax LLP |
|---|---|
| By: _____ | By: _____ |
| Printed Name: _Jeffrey J. Ciongoli_ | Printed Name: _Samuel Lowenthal_ |
| Title: _Managing Director_ | Title: _Partner_ |
| Date: _1/28/09_ | Date: _1/28/09_ |
| | Address: _____ |

Exhibit A

## WORK ORDER

| Work Order Number: | Authorized Start Date: |
|---|---|

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP and Lehman Brothers Holdings Inc. dated 1/09/09.

**Description of Tax Assistance and Deliverable:**

Deloitte Tax will analyze LBHI's Sales & Use Tax filings made for the years 2004, 2005, 2006, 2007 and 2008. Deloitte Tax will assess these returns and identify instances of overpayment of either Sales or Use tax by LBHI. Deloitte Tax will prepare the necessary claims for refund of any identified overpayments. Deloitte Tax will support LBHI in the review process of these claims by interacting with the appropriate State and Local taxing authorities.

**Estimated Timing for Services (including Critical Path, Milestones, and Deliverables, if applicable):**

Deloitte Tax professionals are available to begin work on this project. We will develop a plan that will outline procedures to identify, quantify, and document overpayment/credit claims for review and filing by LBHI. This plan will be discussed with LBHI prior to implementation to ensure that only the least intrusive procedures have been considered. It is estimated that this project will take approximately two months until the referenced potential claims for refund are identified, quantified and prepared. No timing estimate can be provided as to when Deloitte Tax will be required to support LBHI in the review of such claims before the state taxing authorities, or as to how long this process will take. This estimate assumes that LBHI professionals, and required data will be made reasonably available to Deloitte Tax upon request.

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

Deloitte Tax will invoice LBHI for the provided tax assistance on the basis of the actual time incurred in providing the tax assistance. Such time will be billed based upon our standard hourly rates for the level of the professional involved plus reasonable out-of-pocket expenses.

Should representation by legal counsel become necessary, LBHI will be responsible for the engagement of counsel and will be responsible for any attorney fees and related costs incurred asa result thereof. To the extent LBHI decides to pursue its recourse in the court system, we may no longer provide any services. Upon request, Deloitte Tax may be available to provide limited assistance (e.g., fact-based services related to prior services) to such outside counsel on behalf of LBHI. . The fees paid under this work order will not include such assistance. Deloitte Tax will advise LBHI's and proceed with any

additional services only upon LBHI's engagement of Deloitte Tax pursuant to a separately effected work order based upon mutually agreed upon terms as authorized by LBHI for any additional services.

---

**Client Responsibilities:**

Deloitte Tax will need access to LBHI's systems and personnel during the course of the engagement. LBHI will provide such access and assistance in a timely fashion after Deloitte Tax's request for same.

Based on our experience, we anticipate that the Department(s) of Revenue may have questions regarding information provided in the refund claim package(s) filed and/or may request additional documentation. LBHI agrees to provide documentation to Deloitte Tax in a reasonable time to enable us to communicate and respond to information requests from the Department(s) of Revenue. To the extent Deloitte Tax is required to interact with any jurisdictional Department of Revenue, Deloitte Tax will prepare an applicable Power of Attorney whereby LBHI may acknowledge Deloitte Tax's ability to communicate with a Department of Revenue concerning LBHI. Any such Power of Attorney will be limited to allowing Deloitte Tax to communicate with a Department of Revenue on behalf of LBHI and will not authorize Deloitte Tax to execute agreement, receive refunds and/or make payments on behalf of LBHI. Client will retain all decision making authority and responsibility.

**Other Terms (if applicable):** None

**Lehman Brothers Holdings Inc.**

By: _____

Printed
Name: _____ J CIONGUI _____

Title: _____ MD. _____

Date: _____ 2-9-09 _____

**Deloitte Tax LLP**

By: _____
        Kevin O'Brien, Tax Partner

Date: _____ 2/9/09 _____

Address: 100 Kimball Drive
                Parsippany, NJ 07054

# Deloitte.

Deloitte Tax LLP
Two World Financial Center
New York, NY 10281-1414
USA

Tel: +1 212 436 2000
Fax: +1 212 436 5000
www.deloitte.com

January 15, 2010

Mr. Jeffry J. Ciongoli
Managing Director & Head of Tax
Lehman Brothers Holdings Inc.
101 Hudson Street, 11th Floor
Jersey City, NJ 07302

Dear Mr. Ciongoli:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax advisory services ("Advisory Services") for Lehman Brothers Holdings Inc. ("LBHI" or "Client") during the upcoming year including January 1, 2010 through December 31, 2010. Deloitte Tax professionals will generally be available to provide Advisory Services on federal, foreign, state and local tax matters on an as-requested basis.

This engagement letter ("Engagement Letter") describes the scope of the Deloitte Tax Advisory Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

## SCOPE OF SERVICES

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Advisory Services provided by Deloitte Tax to Client during the period set forth above, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

As the specific Advisory Service desired by Client from Deloitte Tax is identified, Client and Deloitte Tax should execute a separate work order ("Work Order") when such Advisory Service involves contemplated fees in excess of $100,000. The request for Advisory Services should be in a form of a Work Order as set forth in Exhibit A attached to this Engagement Letter (or a substantially similar form). The request for Advisory Services should reference this Engagement Letter and clearly describe the specific details of the Advisory Services anticipated pursuant to the Work Order (including scope of work, deliverables, timing, client responsibilities and fees).

LBHI and Deloitte Tax further agree that in any project undertaken pursuant to this Engagement Letter, or any subsequently executed Work Order, that the only party who will oversee Deloitte Tax, or review its work product will be Jeff Ciongoli of LBHI, a member of his staff, or the Board of LBHI.

It is contemplated that the Advisory Services requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Advisory Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

Member of
Deloitte Touche Tohmatsu

Rev. 12/08

Lehman Brothers Holdings Inc.
January 15, 2010
Page 2

## REPORTABLE TRANSACTIONS

The Internal Revenue Service ("IRS") and some states have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their federal and/or state income tax returns and, when necessary, by filing a copy of that disclosure form with the IRS and/or the applicable state tax agency. These rules impose significant requirements to disclose certain transactions and such disclosures may encompass transactions entered into in the normal course of business. The Advisory Services that are the subject of this Engagement Letter do not include any obligation by Deloitte Tax to identify any reportable transactions or disclosure obligations. Any advisory services regarding reportable transactions will be provided under the terms of a separate engagement letter. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make required disclosure will result in substantial penalties. Deloitte Tax will not be liable for any penalties resulting from Client's failure to accurately and timely file any required reportable transaction disclosure.

## TAX POSITIONS AND POTENTIAL PENALTIES

Deloitte Tax will discuss with Client tax positions that Deloitte Tax is aware of as a result of the Advisory Services and for which Client or Deloitte Tax could be subject to potential penalties. With respect to those tax positions, Deloitte Tax will discuss any opportunity to avoid such penalties through adequate disclosure, if relevant, and the requirements for adequate disclosure. Client should be aware that in certain instances, the standards to avoid a potential penalty applicable to Deloitte Tax, as a tax return preparer, may exceed the accuracy related penalty standards applicable to Client.

## ACKNOWLEDGEMENTS AND AGREEMENTS

The Advisory Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Advisory Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Advisory Services are requested.

Client acknowledges and agrees that the Advisory Services provided pursuant to this Engagement Letter will be based solely upon:

(a)     The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

(b)     The understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.);

(c)     Client's understanding that any tax advice provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax advice is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such

Lehman Brothers Holdings Inc.
January 15, 2010
Page 3

changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

(d)     Client's understanding and agreement that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion; and

(e)     Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Client before the appropriate tax authorities, if permissible, for an additional fee that is mutually agreed upon.

Although Deloitte Tax might in certain circumstances provide Client with drafts of a deliverable before it is finalized, Client understands that Client may not rely upon any of the analysis, conclusions, or recommendations unless and until the final deliverable is issued. Any part of our analysis, including the recommendations or conclusions may change between the time of any draft and the issuance of a final deliverable.

All rights and obligations of Deloitte Tax and Client described in this Engagement Letter will apply to each Work Order. In the event of any conflict or inconsistency between the terms of this Engagement Letter and the terms of any Work Order, the terms of this Engagement Letter shall control. Notwithstanding the immediately preceding sentence, in the event that a Work Order expressly provides that certain provisions therein shall control over specified provisions of this Engagement Letter, then, to the extent that such provisions of the Work Order conflict or are inconsistent with the specified provisions of this Engagement Letter, such provisions of the Work Order shall control. If a Work Order is not executed, as previously described, the terms of this Engagement Letter will apply to the Advisory Services provided.

## CONSENT FOR DISCLOSURE AND USE OF TAX INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Advisory Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Engagement Letter, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing services in connection with the Advisory Services under this Engagement Letter and preparation of tax returns, tax planning, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Lehman Brothers Holdings Inc.
January 15, 2010
Page 4

## PROFESSIONAL FEES AND EXPENSES

The Deloitte Tax professional fees for Advisory Services, other than for Advisory Services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, are based on the amount of professional time required and our standard hourly rates, which vary depending upon the experience level of the professionals involved, plus reasonable out-of-pocket expenses. Deloitte Tax will send Client periodic bills as the work is performed.

## ACCEPTANCE

This Engagement Letter including all exhibits and Work Orders, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Advisory Services described in this Engagement Letter, or any other advice that Deloitte Tax may provide to you, please feel free to contact Sam Lowenthal at (212) 436-4286, or Ed Mason at (212) 436-6930.

Very truly yours,                          AGREED AND ACCEPTED:

DELOITTE TAX LLP                           Lehman Brothers Holdings Inc. on behalf of
                                           itself and its subsidiaries and/or affiliates

By: _____                 By: _____
                                            Printed
        Samuel Lowenthal                    Name: _____JEFFRY  J. CIONEOLI____
                                            Title: ___M.D, TAXES  LBHI____
                                            Date: ___1/25/10____

Rev 12/08

Exhibit A
Work Order

| Work Order Number: | Authorized Start Date: |
|---|---|

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Lehman Brothers Holdings Inc. ("Client") dated January 15, 2010.

**Description of Advisory Services and Deliverable:**

**Estimated Timing for Advisory Services (including Critical Path, Milestones, and Deliverables, if applicable):**

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

**Client Responsibilities:**

**Other Terms (if applicable):**

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Advisory Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be used by Deloitte Tax and disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing services in connection with the Services under this Work Order and preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Lehman Brothers Holdings Inc.**

By:_____

Printed

Name:_____

Title:_____

Date:_____

**Deloitte Tax LLP**

By:_____

Printed

Name:_____

Title:_____

Date:_____

Address:_____

Lehman Brothers Holdings Inc.
January 15, 2010
Page 7

## DELOITTE TAX LLP GENERAL BUSINESS TERMS

1.      **Services.**  It is understood and agreed that services (the "Services") provided by Deloitte Tax (as defined in paragraph 12 below) under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client.

2.      **Payment of Invoices.**  Deloitte Tax's invoices are due within thirty (30) days of the invoice date. Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date.  The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

3.      **Term.**  Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services.  This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period.  Deloitte Tax may terminate this engagement upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB") or the Securities and Exchange Commission) or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules.  Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

4.      **Ownership of Deloitte Tax Property.**  To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property.  Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing.  In the course of performing the Services, Deloitte Tax may provide to Client, solely for its convenience, spread sheets, models or other software tools.  Such items are provided to the Client in "as is" condition without warranty of any kind and Deloitte Tax assumes no responsibility for results obtained by anyone other than Deloitte Tax from the use of such items.

5.      Limitation on Warranties.  THIS IS A SERVICES ENGAGEMENT.  DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE.  DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  THE CLIENT'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF

Rev 02/09

Lehman Brothers Holdings Inc.
January 15, 2010
Page 8

**PROFESSIONAL FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.**

6.    **Limitation on Damages.**    The Client agrees that Deloitte Tax, its subcontractors and their respective personnel shall not be liable to the Client for any claims, liabilities or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by the Client to Deloitte Tax pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In no event shall Deloitte Tax, its subcontractors or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this engagement. In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

7.    **Client Responsibilities.**    The Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services. The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities hereunder and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client. The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services; (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8.    **Force Majeure.**    Except for the payment of money, neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

9.    **Limitation on Actions.**    No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10.    **Independent Contractor.**    It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner or representative. Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11.    **Confidentiality.**    To the extent that, in connection with this engagement, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the

Rev 02/09

Lehman Brothers Holdings Inc.
January 15, 2010
Page 9

Client, Deloitte Tax will not disclose such information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals and employees), or to other subcontractors, in each case, whether located within or outside of the United States, that are providing Services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto; or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax independently of any disclosures made by the Client to Deloitte Tax of such information. In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge and ideas.

12.     **Survival and Interpretation.**  The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties, limitations on damages, limitations on actions, confidentiality, survival and interpretation, assignment and subcontracting, waiver of jury trial, indemnification, governing law, venue, jurisdiction and severability, information and data, and third parties and internal use shall survive the expiration or termination of this engagement.  For purposes of these terms, Deloitte Tax shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor (or such entity's personnel) shall have any liability hereunder to the Client or any other person, and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax (or such entity's personnel) in connection with this engagement.  Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms.  Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings.  **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

13.     **Assignment and Subcontracting.**  Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party.  The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax.  Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

14.     Waiver of Jury Trial.  DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY

Rev 02/09

Lehman Brothers Holdings Inc.
January 15, 2010
Page 10

JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.

15.    **Indemnification.**  The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte Tax or its subcontractors.  In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

16.    **Governing Law, Venue, Jurisdiction and Severability.**  These terms, the Engagement Letter, including exhibits, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof).  Any action based on or arising out of this engagement or the Services provided or to be provided hereunder shall be brought and maintained exclusively in any court of the State of New York or any federal court of the United States, in each case located in New York County, the State of New York.  Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.  If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

17.    **Information and Data.**  Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax.  All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge.  Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data.  Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services.  The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services.  Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

18.    **Third Parties and Internal Use.**  Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter.  Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party").  This engagement is not intended for the express or implied benefit of any third party.  Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports or other Services of Deloitte Tax.  In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

Rev 02/09

Lehman Brothers Holdings Inc.
January 15, 2010
Page 11

19.    **Certain Tax Disclosures and Reporting.**  In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter.  The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

20.    **Accountant / Client Privilege – IRC §7525.**  The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings.  The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege.  The Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege, and Deloitte Tax will cooperate with the Client's reasonable instructions relating to the confidentiality privilege.  Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties.  The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege.  Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures.  In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules.  The Client agrees to hold Deloitte Tax harmless from, and also assumes responsibility for, any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

Rev 02/09

## Deloitte Tax Privacy Notice

**Introduction**

This privacy notice applies to clients who obtain services from Deloitte Tax.  Deloitte Tax refers to Deloitte Tax LLP as defined in paragraph 12 of the General Business Terms.

**Information Collection**

Deloitte Tax may collect personally identifiable information ("PII") from you such as:

- Home address
- Home telephone number
- Date of birth
- Government identifiers (such as social security number)

In connection with our client acceptance process, Deloitte Tax may collect PII about you that may be considered sensitive.  This could include, for example, history of any criminal activity.

Deloitte Tax may also collect PII about you from, among other places:

- Information you provide directly to us
- Information regarding the services that Deloitte Tax provides or has previously provided to you
- Information Deloitte Tax receives from our affiliated entities or third parties relating to the establishment of our relationship or the provision of services to you

This information can be received in any manner, including in in-person discussions, telephone conversations, and electronic or other written communications.

**Information Use**

Deloitte Tax collects PII about you to:

- Establish or maintain our relationship with you
- Provide you with services you have requested
- Keep you informed of services we think may be of interest to you

Without PII, Deloitte Tax may be unable to provide you with the services you have requested.

**Disclosure of Information**

Deloitte Tax may share PII about you with others as permitted by contractual agreement or as required by law, such as:

- Our affiliates
- Third parties in connection with the provision of services to you
- Government entities and regulatory bodies
- Those with whom you have requested us to share information

Deloitte Tax requires third parties who perform services for us to agree to treat PII about you confidentially and securely.

Unless restricted by law, regulation, contract or professional standards, Deloitte Tax may transfer PII about you outside the United States to other countries for the purposes described in this privacy notice.

Deloitte Tax will provide notice and obtain your consent before:

- Sharing PII about you with an unaffiliated third party who is not performing services for us, except if such sharing is otherwise permitted by this privacy notice, or
- Using sensitive PII about you for purposes not described in this privacy notice

Deloitte Tax does not sell or lease PII about you to others.

**Access**

You may request access to the PII that Deloitte Tax has about you.  You may also request the correction, amendment or deletion of PII about you that is inaccurate. Deloitte Tax will treat requests for access, correction, amendment or deletion of PII about you in accordance with its internal policies and applicable legal requirements.

**Information Security**

Deloitte Tax maintains reasonable physical, administrative and technical safeguards to protect PII from loss, misuse, or unauthorized access, disclosure, alteration or destruction. Our personnel and the personnel of our affiliates are provided access to PII about you only if they have a need to know the information in connection with a legitimate

Lehman Brothers Holdings Inc.
January 15, 2010
Page 13

business purpose, such as (i) the provision of services to you or (ii) to help identify other services that Deloitte Tax and its affiliates offer that may be of interest or use to you.

**Changes to This Privacy Notice**

Deloitte Tax reserves the right to change this privacy notice. Deloitte Tax will provide you with a revised privacy notice that reflects such changes as required by law.

**Questions**

If you have any questions or concerns regarding this notice, please contact your engagement partner/principal/director.

Rev 02/09

Exhibit A

## WORK ORDER

| Work Order Number: | Authorized Start Date: | 2/1/10 |
|---|---|---|

This Work Order incorporates the terms and conditions of the Engagement Letter
between Deloitte Tax LLP and Lehman Brothers Holdings Inc. dated 1/15/2010.

### Description of Tax Assistance and Deliverable:

Deloitte Tax will analyze LBHI's Sales & Use Tax filings made for the years 2004, 2005,
2006, 2007 and 2008. Deloitte Tax will assess these returns and identify instances of
overpayment of either Sales or Use tax by LBHI. Deloitte Tax will prepare the necessary
claims for refund of any identified overpayments. Deloitte Tax will support LBHI in the
review process of these claims by interacting with the appropriate State and Local taxing
authorities.

### Estimated Timing for Services (including Critical Path, Milestones, and Deliverables, if applicable):

Deloitte Tax professionals are available to begin work on this project. We will develop a
plan that will outline procedures to identify, quantify, and document overpayment/credit
claims for review and filing by LBHI. This plan will be discussed with LBHI prior to
implementation to ensure that only the least intrusive procedures have been considered.
It is estimated that this project will take approximately two months until the referenced
potential claims for refund are identified, quantified and prepared. No timing estimate
can be provided as to when Deloitte Tax will be required to support LBHI in the review
of such claims before the state taxing authorities, or as to how long this process will take.
This estimate assumes that LBHI professionals, and required data will be made
reasonably available to Deloitte Tax upon request.

### Fees and Expenses (if different from the provisions stated in the Engagement Letter):

Deloitte Tax will invoice LBHI for the provided tax assistance on the basis of the actual
time incurred in providing the tax assistance. Such time will be billed based upon our
standard hourly rates for the level of the professional involved plus reasonable out-of-
pocket expenses.

Should representation by legal counsel become necessary, LBHI will be responsible for
the engagement of counsel and will be responsible for any attorney fees and related costs
incurred asa result thereof. To the extent LBHI decides to pursue its recourse in the court
system, we may no longer provide any services. Upon request, Deloitte Tax may be
available to provide limited assistance (e.g., fact-based services related to prior services)
to such outside counsel on behalf of LBHI. . The fees paid under this work order will not
include such assistance. Deloitte Tax will advise LBHI's and proceed with any

additional services only upon LBHI's engagement of Deloitte Tax pursuant to a separately effected work order based upon mutually agreed upon terms as authorized by LBHI for any additional services.

**Client Responsibilities:**

Deloitte Tax will need access to LBHI's systems and personnel during the course of the engagement. LBHI will provide such access and assistance in a timely fashion after Deloitte Tax's request for same.

Based on our experience, we anticipate that the Department(s) of Revenue may have questions regarding information provided in the refund claim package(s) filed and/or may request additional documentation. LBHI agrees to provide documentation to Deloitte Tax in a reasonable time to enable us to communicate and respond to information requests from the Department(s) of Revenue. To the extent Deloitte Tax is required to interact with any jurisdictional Department of Revenue, Deloitte Tax will prepare an applicable Power of Attorney whereby LBHI may acknowledge Deloitte Tax's ability to communicate with a Department of Revenue concerning LBHI. Any such Power of Attorney will be limited to allowing Deloitte Tax to communicate with a Department of Revenue on behalf of LBHI and will not authorize Deloitte Tax to execute agreement, receive refunds and/or make payments on behalf of LBHI. Client will retain all decision making authority and responsibility.

**Other Terms (if applicable):** None

**Lehman Brothers Holdings Inc.**          **Deloitte Tax LLP**

By: _____          By: _____
                                              Kevin O'Brien, Tax Principal
Printed
Name: _____JEFFRY J CONELL___          Date: _____1/25/10_____
Title: _____MD TAKES_____
Date: _____1-25-10_____          Address:  100 Kimball Drive
                                              Parsippany, NJ  07054

## **EXHIBIT 2**
**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                         :

In re                                   :           **Chapter 11 Case No.**
                                           :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :           **08-13555 (JMP)**
                                           :

                      **Debtors.**         :           **(Jointly Administered)**
                                           :

-------------------------------------------------------------------x

## ORDER GRANTING THE DEBTORS' APPLICATION PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDERS *NUNC PRO TUNC* TO NOVEMBER 1, 2008

Upon the Application, dated February 16, 2010 (the "Application"),[4] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to section 327(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), for authority to retain and employ Deloitte Tax LLP ("Deloitte Tax") as tax services providers, *nunc pro tunc* to November 1, 2008, as more fully set forth in the Application; and upon consideration of the Declaration of Samuel Lowenthal, a partner of Deloitte Tax, sworn to February 16, 2010, filed in support of the Application, a copy of which is attached to the Application as Exhibit 1; and the Court being satisfied, based on the representations made in the Application and the Lowenthal Declaration, that Deloitte Tax represents or holds no interest adverse to the Debtors or their estates and is disinterested under section 101(14) of the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District

---

[4]       Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application having been provided in

accordance with the procedures set forth in the amended order entered February 13, 2009

governing case management and administrative procedures [Docket No. 2837] to (i) the United

States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no

other or further notice need be provided; and the Court having found and determined that the

relief sought in the Application is in the best interests of the Debtors, their estates and creditors,

and all parties in interest and that the legal and factual bases set forth in the Application establish

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that, pursuant to section 327(a) of the Bankruptcy Code, the Debtors

are authorized to retain and employ Deloitte Tax as their tax services providers, *nunc pro tunc* to

November 1, 2008, on the terms and conditions generally described and set forth in the

Engagement Letters, subject to the following modifications:

    a.    Paragraph 15 of the General Business Terms of the Engagement Letters
shall be deemed stricken and replaced with the following:

**Indemnification.**  The Client shall indemnify and hold harmless Deloitte
Tax, its subcontractors and their respective personnel from all Claims
except to the extent such claims arise out of the gross negligence, bad faith
or intentional misconduct of Deloitte Tax or its subcontractors.  In

08-13555-mg    Doc 7135    Filed 02/16/10    Entered 02/16/10 17:42:14    Main Document
Pg 70 of 71

circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

b.      All requests of Deloitte Tax for payment of indemnity pursuant to  the Engagement Letters shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letters and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Deloitte Tax be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

c.      In no event shall Deloitte Tax be indemnified if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, Deloitte Tax's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

d.      In the event that Deloitte Tax seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letters, the invoices and supporting time records from such attorneys shall be included in Deloitte Tax's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases.

e.      Paragraph 16 of the General Business Terms of the Engagement    Letters shall be deemed stricken and replaced with the following:

**Governing Law and Severability.**  These terms, the Engagement  Letters (including exhibits), and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or the Engagement Letters is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

; and it is further:

ORDERED that Deloitte Tax shall apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy

footerUS_ACTIVE:\43243831\04\43243831_4.DOC\58399.0003                3

Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by

the U.S. Trustee, and such other procedures as may be fixed by order of this Court, including but

not limited to the Court's Amended Order Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly

Compensation and Reimbursement of Expenses of Professionals; and it is further

ORDERED that, to the extent this Order is inconsistent with the Engagement

Letters, this Order shall govern; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: March ____, 2010
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE