Hearing Date & Time: March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: March 10, 2010 at 4:00 p.m. (Prevailing Eastern Time)

FAEGRE & BENSON LLP
Michael M. Krauss (MK-9699)
Abby E. Wilkinson
Michael F. Doty
Christopher J. Harayda
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for Santa Fe Partners, LLC;
Santa Fe Partners, LLC for and on behalf of
Anasazi Systematic Long Short LP and
Anasazi Market Neutral LP; and Santa Fe
Master Fund SPC for and on behalf of
Anasazi Market Neutral 2x, Segregated
Portfolio, Anasazi Market Neutral 3x,
Segregated Portfolio, Anasazi Systematic
Long Short B, Segregated Portfolio, Anasazi
Systematic European Long Short C,
Segregated Portfolio, Anasazi Japanese
Systematic Long Short D, Segregated
Portfolio, Anasazi Systematic European
Long Short E, Segregated Portfolio and
Anasazi Systematic Japanese Long Short F,
Segregated Portfolio

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
                                                                      :
In re                                                                 :    Chapter 11
                                                                      :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                              :    Case No. 08-13555 (JMP)
                                                                      :
                              Debtors.                                :    (Jointly Administered)
                                                                      :
                                                                      :
----------------------------------------------------------------------x

**SANTA FE ENTITIES' MOTION TO TREAT THEIR CLAIMS AS TIMELY FILED**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1

Santa Fe Partners, LLC ("Santa Fe") and certain related funds[1] (collectively, the "Funds" and together with Santa Fe, the "Santa Fe Entities"), by and through their attorneys, Faegre & Benson LLP, submit this consolidated motion and memorandum in support of their motion under Fed. R. Bankr. P. 9006(b)(1) to treat their claims against Lehman Brothers Holdings, Inc. ("LBHI") as timely filed, and in support of their motion, respectfully represent and state as follows:

## I.
## INTRODUCTION

The Santa Fe Entities failed to file timely proofs of claim against LBHI because they were not aware that they had claims against LBHI until October 14, 2009 – approximately three weeks after September 22, 2009 (the "Claims Bar Date"). After discovering their claims, the Santa Fe Entities promptly filed proofs of claim and completed Guarantee Questionnaires (as defined below) before 5:00 p.m. on October 22, 2009 (the "Questionnaire Bar Date"). Treating the Santa Fe Entities' claims as timely filed will not prejudice LBHI. The bifurcated bar dates in this case ensured that, even if the Santa Fe Entities had filed proofs of claim by the Claims Bar Date, LBHI would not have had sufficient information to review the claims until the Questionnaire Bar Date. The Santa Fe Entities' delay was not the result of carelessness, or even within the Santa Fe Entities' control. The Santa Fe Entities did not know that their claims existed before the Claims Bar Date. In addition, the Santa Fe Entities' delay in this case is quite small, and the Santa Fe Entities have acted in good faith at all relevant times.

These circumstances warrant a finding of excusable neglect, and the Santa Fe Entities are entitled to have their proofs of claim treated as timely filed.

---

[1] Each of: Anasazi Systematic Long Short LP; Anasazi Market Neutral LP; and Santa Fe Master Fund SPC for and on behalf of Anasazi Market Neutral 2x, Segregated Portfolio, Anasazi Market Neutral 3x, Segregated Portfolio, Anasazi Systematic Long Short B, Segregated Portfolio, Anasazi Systematic European Long Short C, Segregated Portfolio, Anasazi Japanese Systematic Long Short D, Segregated Portfolio, Anasazi Systematic European Long Short E, Segregated Portfolio and Anasazi Systematic Japanese Long Short F, Segregated Portfolio.

2

## II.
## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief sought in this motion is Fed. R. Bankr. P. 9006(b)(1) and 11 U.S.C. § 105(a).

## III.
## FACTUAL BACKGROUND

The Santa Fe Entities' claims should be treated as timely filed because the Santa Fe Entities were not aware that they had claims against LBHI until the Claims Bar Date had passed and then raced to submit all required information before the Questionnaire Bar Date. The Santa Fe Entities' claims arise from LBHI's guarantee of the obligations of Lehman Brothers International (Europe) ("LB Europe"), a subsidiary of LBHI.

**A.    The Santa Fe Entities' Relationship with Various Lehman Brothers Entities and the Execution of the Guarantees.**

In May and June of 2008, the Santa Fe Entities entered into various Customer Account Agreement Prime Brokerages (the "Prime Brokerage Agreements") with Lehman Brothers, Inc. ("LBI"). (Affidavit of James Leatherberry, dated February 9, 2010, (the "Leatherberry Aff."), ¶ 2.) Under the Prime Brokerage Agreements, the Santa Fe Entities agreed to open and maintain brokerage accounts (the "LBI Accounts") at LBI, and LBI agreed to serve as the Santa Fe Entities' primary broker. (*Id*.) LBI led the Santa Fe Entities to believe that LBI would maintain the LBI Accounts, and that the Santa Fe Entities' securities would remain in LBI's possession and control. (*Id*.)

Concurrently with the Prime Brokerage Agreements, the Santa Fe Entities entered into various Margin Lending Agreements ("MLAs") and Global Master Securities Lending

3

Agreements ("GMSLAs") with LB Europe.  (*Id*. at ¶ 3.)  Pursuant to these MLAs and GMSLAs, LB Europe agreed to loan securities to the Santa Fe Entities from time to time to satisfy the Santa Fe Entities' payments or delivery obligations under the Prime Brokerage Agreements.  (*Id*.)

The MLAs and GMSLAs purported to permit the transfer from the LBI Accounts to LB Europe of sufficient securities or cash necessary to collateralize the Santa Fe Entities' borrowing of securities from LB Europe.  (*Id*. at ¶ 4.)  Based on the MLAs, GMSLAs and other information, the Santa Fe Entities believed that LBI would maintain custody and control of any securities or cash not necessary to collateralize the Santa Fe Entities' borrowings, and that all such securities and cash would remain in the LBI Accounts.  (*Id*.)  However, unbeknownst to the Santa Fe Entities, LB Europe held and maintained all of the securities and cash that the Santa Fe Entities transferred to LBI.  (*Id*.)

On June 9, 2005, LBHI's board executed a resolution (the "Resolution") pursuant to which LBHI guaranteed the payment of all liabilities, obligations and commitments of certain subsidiaries, including LB Europe.  In addition, on January 4, 2008, LBHI executed a separate guarantee (the "Guarantee" and together with the Resolution, the "Guarantees") pursuant to which LBHI unconditionally guaranteed all of LB Europe's liabilities, obligations and commitments.  True and correct copies of the Guarantees are attached as <u>Exhibit A</u>.

**B.     The Santa Fe Entities' Claims in the Lehman Brothers International (Europe) Administration.**

On September 15, 2008, LB Europe entered an administration proceeding in the United Kingdom (the "LB Europe Administration").  Before the commencement of the LB Europe Administration and unbeknownst to the Santa Fe Entities, LB Europe rehypothecated certain of the Santa Fe Entities' securities.

4

On December 30, 2008, the Santa Fe Entities filed proofs of claim against LB Europe in the LB Europe Administration. (*Id*. at ¶ 5.) In these proofs of claim, the Santa Fe Entities seek the return of certain unrehypothecated long securities (the "Unrehypothecated Securities"). In addition, in the event that the value of any Unrehypothecated Securities has decreased since September 15, 2008 (the "Valuation Date"), or to the extent that LB Europe is no longer in possession of any of the Unrehypothecated Securities, the Santa Fe Entities also seek the amounts necessary to provide the Santa Fe Entities with the value of the Unreypothecated Securities as of the Valuation Date.

**C.    The Santa Fe Entities' Discovery of the Guarantees and Prompt Filing of Proofs of Claim.**

On September 18, 2008 (the "Petition Date"), LBHI filed a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.

On July 2, 2009, this Court entered (D.I. 4271) (the "Bar Date Order"), an order that, among other things, established the Claims Bar Date. The Bar Date Order also required creditors with claims based on guarantees to complete various supplemental questionnaires (such questionnaires, "Guarantee Questionnaires") before the Questionnaire Bar Date. LBHI requested the submission of Guarantee Questionnaires because LBHI required the information in the Guarantee Questionnaires to "reconcil[e] claims filed against multiple [d]ebtors based on one [d]ebtor's guarantee of an obligation of another." (Motion Of The Debtors, Pursuant To Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(c)(3), For Establishment Of The Deadline For Filing Proofs Of Claim, Approval Of The Form And Manner Of Notice Thereof And Approval Of The Proof Of Claim Form (the "Bar Date Motion"), ¶ 23 (D.I. 3654).)

On October 12, 2009, the Santa Fe Entities' counsel received copies of the Guarantees from a third party and, for the first time, learned that the Santa Fe Entities had claims against

5

LBHI. (Affidavit of Stephen M. Mertz, dated February 16, 2010 ("Mertz Aff."), ¶¶ 2-3.) On October 14, 2009, counsel informed the Santa Fe Entities as to the existence of the Guarantees. (*Id*. at ¶ 4.) Before October 14, 2009, the Santa Fe Entities were unaware of the Guarantees, or any claims that they had against LBHI. (Leatherberry Aff. at ¶ 7.)

On October 22, 2009, the Santa Fe Entities filed proofs of claim against LBHI based on the Guarantees. Copies of the proofs of claim the Santa Fe Entities filed against LBHI are attached as Exhibit B and incorporated by reference. The Santa Fe Entities also complied with the procedural requirements for claims based on guarantees by completing and submitting Guarantee Questionnaires before the Questionnaire Bar Date. As a result, LBHI had the Santa Fe Entities' proofs of claim and Guarantee Questionnaires before beginning the claims review process. Copies of the confirmations evidencing submission of the Santa Fe Entities' Guarantee Questionnaires are attached as Exhibit C and incorporated by reference.

## IV.
## DISCUSSION AND MEMORANDUM OF LAW

Under these circumstances, and pursuant to the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1), the Santa Fe Entities are entitled to have their proofs of claim treated as timely filed because they were not, and could not reasonably have been, aware that they had claims against LBHI until October 14, 2009, at which time the Claims Bar Date had already passed, and then immediately submitted all required information before the Questionnaire Bar Date. Bankruptcy Rule 9006(b)(1) authorizes this Court to permit the Santa Fe Entities' proofs of claim to be treated as timely filed "where the failure to act was the result of excusable neglect." In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court explained that the determination of whether neglect is

"excusable" under Bankruptcy Rule 9006(b)(1) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395.

The Supreme Court identified four factors to examine in deciding whether a party has committed excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the moving party is acting in good faith. *Id*.; *see also Midland Cogeneration Venture Ltd. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005) (citing *Pioneer*, 507 U.S. at 395). However, the *Pioneer* factors are not exhaustive. The ultimate "determination of whether neglect is 'excusable' is an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. (quoting *Pioneer*, 507 U.S. at 395).

In *Pioneer*, the Supreme Court held that it was an abuse of discretion *not* to find excusable neglect where an experienced bankruptcy attorney failed to file a timely proof of claim after receiving an ambiguous notice of the claims bar date. *Pioneer*, 507 U.S. at 398-99. Similarly, after applying the *Pioneer* factors, the Ninth Circuit found excusable neglect where a "sophisticated law firm, with . . . a sophisticated system to determine and calendar filing deadlines" failed to file a notice of appeal within the 30-day time period under the Federal Rules of Appellate Procedure. *Pincay v. Andrews*, 389 F.3d 853, 854, 860 (9th Cir. 2004).

The Santa Fe Entities are not experienced bankruptcy practitioners who failed to heed a notice establishing a claims bar date, nor did the Santa Fe Entities ignore any known claim. The Santa Fe Entities are innocent creditors who had no knowledge of their claims against LBHI before the Claims Bar Date, and who filed their claims and Questionnaires before the Questionnaire Bar Date.

7

Each of the four *Pioneer* factors tips sharply in favor of finding that the Santa Fe Entities' failure to file proofs of claim by the Claims Bar Date is the result of excusable neglect.

### A. Treating the Santa Fe Entities' Proofs of Claim as Timely Filed Will Not Prejudice LBHI.

The bifurcation of the claims deadline means that the Santa Fe Entities' delay in filing their proofs of claim has no impact on LBHI's bankruptcy case. At the debtors' request, the Bar Date Order contained two deadlines relating to proofs of claim: the Claims Bar Date, and the Questionnaire Bar Date. The debtors requested the bifurcated bar dates to streamline the process of reviewing claims by ensuring that they had all necessary information before beginning their review. The Santa Fe Entities filed their proofs of claim and completed Guarantee Questionnaires before the Questionnaire Bar Date. Accordingly, the Santa Fe Entities' failure to file proofs of claim before the Claims Bar Date does not affect the administration of LBHI's bankruptcy case, as LBHI requires the information provided in the Guarantee Questionnaire in order to review and reconcile the guarantee claims against it. (Bar Date Motion ¶ 23.). Because LBHI did not require creditors to complete Guarantee Questionnaires until the Questionnaire Bar Date, LBHI would not have had the information necessary to evaluate the Santa Fe Entities' claims until the Questionnaire Bar Date, even if the Santa Fe Entities had filed proofs of claim before the Claims Bar Date. Additionally, the claims reconciliation process was barely in its initial stages when the Santa Fe Entities filed their proofs of claim, and the debtors in these cases have only recently begun a comprehensive review and reconciliation of the more than 65,000 claims filed against them. (*See* Debtors' Motion Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rules 3007 And 9019(b) For Approval Of (I) Claim Objection Procedures and (II) Settlement Procedures (D.I. 6374).) Because LBHI would not have had sufficient information to review the Santa Fe Entities' claims before the Questionnaire

8

Bar Date, and because the claims reconciliation process was barely in its initial stages when the Santa Fe Entities filed their claims, the Santa Fe Entities' delay has no affect on the administration of LBHI's bankruptcy case.

Furthermore, treating the Santa Fe Entities' proofs of claim as timely filed will not disturb any plan of reorganization, as LBHI has not yet proposed a plan. In addition, LBHI was aware of the existence of the Guarantees, and if LBHI had reviewed the Santa Fe Entities' properly filed claims against LB Europe, LBHI could reasonably anticipate the Santa Fe Entities' claims under the Guarantees.

Treating the Santa Fe Entities' claims as timely filed is also unlikely to "precipitate a flood of similar [late-filed] claims." *Midland*, 419 F.3d at 130. This is simply not a case in which the Court, having allowed the Santa Fe Entities' claims, "would be hard-pressed to distinguish [the Santa Fe Entities'] situation from any other similar creditors." *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995). The fact that the Santa Fe Entities filed Guarantee Questionnaires before the Questionnaire Bar Date offers a natural point of distinction between the Santa Fe Entities and other late-filing creditors. The Guarantee Questionnaires contain all of the information that LBHI needs to review a claim. The Santa Fe Entities each completed and submitted Guarantee Questionnaires before the Questionnaire Bar Date. The Court can easily distinguish between the Santa Fe Entities (whose delay was slight, and which provided all information necessary to review their claims before the Questionnaire Bar Date), from creditors who failed to provide notice of their claims, or the information necessary to evaluate their claims, before the Questionnaire Bar Date.

Finally, a finding of excusable neglect will merely restore LBHI to its financial position on the Petition Date. In contrast, if the Santa Fe Entities' proofs of claim are not treated as

timely filed, the Santa Fe Entities will be prejudiced, and LBHI (and its creditors) may receive a windfall at the Santa Fe Entities' expense.

**B.    The Santa Fe Entities' Delay in Filing Their Proofs of Claim is Reasonable and Will Not Adversely Affect LBHI's Bankruptcy Case.**

For much the same reasons, the Santa Fe Entities' short delay in filing their proofs of claim will have no impact on the proceedings. The Santa Fe Entities were not aware of the Guarantees or of their claims against LBHI until October 14, 2009, approximately three weeks after the Claims Bar Date. (Leatherberry Aff. ¶ 7.)

After learning of the existence of the Guarantees, the Santa Fe Entities quickly asserted their claims against LBHI. The Santa Fe Entities filed proofs of claim against LBHI approximately one week after discovering their claims, and approximately one month after the Claims Bar Date. *See In re PT-1 Commc'ns.*, 292 B.R. 482, 487-90 (Bankr. E.D.N.Y. 2003) (allowing late-filed claim of a state agency where the agency was not aware of the claim's existence on the claims bar date and filed its proof of claim within three and a half months of learning of the claim's existence) (citing *In re Sitzberger*, 65 B.R. 256, 260 (Bankr. S.D. Cal. 1986) (finding the IRS's expediency in filing its late proof of claim within two months of becoming aware of debtor's tax liability to be "compelling" and permitting the IRS to file a late proof of claim)).

The Santa Fe Entities also submitted Guarantee Questionnaires prior to the Questionnaire Bar Date. Because LBHI needed this information to review and reconcile the Santa Fe Entities' proofs of claim, and because the Santa Fe Entities provided the information contained in the Guarantee Questionnaires before the Questionnaire Bar Date, the Santa Fe Entities' slight delay in filing their proofs of claim will have no impact on these proceedings. Finally, a decision to treat the Santa Fe Entities' proofs of claim as timely filed will not unfairly prejudice other

10

creditors, as doing so will not upset any creditor's reliance on any distribution pursuant to a plan of reorganization, as LBHI has not yet proposed any such plan.

**C.     The Santa Fe Entities' Failure to File Proofs of Claim Was Not Within Their Control.**

In following *Pioneer*, the Second Circuit has "focused on the third-factor: the reason for the delay, including whether it was in the reasonable control of the movant." *Silvanich v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003) (quoting *Pioneer*, 507 U.S. at 395).

The reason for the Santa Fe Entities' delay in filing proofs of claim is simple: the Santa Fe Entities had no knowledge of their claims against LBHI. The Santa Fe Entities were not aware of the existence of the Guarantees until October 14, 2009, approximately three weeks after the Claims Bar Date. (Leatherberry Aff. ¶¶ 6-7.) As a result, the Santa Fe Entities did not know that they possessed any claims against LBHI. (*Id*. at ¶ 7.) This lack of knowledge was entirely outside the Santa Fe Entities' control, as LBHI issued the Guarantees, but neither LBHI nor LB Europe provided notice of the Guarantees to the Santa Fe Entities. Absent notification from LB Europe or LBHI, the Santa Fe Entities had no reason to know about the Guarantees. However, approximately one week after discovering the Guarantees, and one month after the Claims Bar Date, the Santa Fe Entities filed their proofs of claim and completed Guarantee Questionnaires.

This is not a case in which the creditor missed the claims bar date by six months or more, or offered no reason for their inability to comply with the claims bar date. *Compare Midland*, 419 F.3d at 127, 134 (affirming denial of motion to file a late proof of claim where the creditor, despite having adequate notice of the bar date, waited for six months to file the late claims, and alleged only that its delay resulted from inadvertence); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 102-03 (Bankr. S.D.N.Y. 2007) (denying motion to file late proof of claim where the creditor filed the claim more than fifteen months after the claims bar date, and made no

11

attempt to explain the inadvertent mistake that caused its delay); *Keene Corp.*, 188 B.R. 912-13 (same where the creditor waited nine months to file the motion, during which time the debtors had negotiated a consensual plan of restructuring, and where the creditor offered no circumstance beyond its control for why the claim was not timely filed).

Here, in contrast, the creditors had no knowledge of their claims against LBHI until after the Claims Bar Date, and the creditors filed their claims less than two weeks after discovery and before the Questionnaire Bar Date. *See PT-1 Commc'ns*, 292 B.R. at 489-90 (allowing late-filed proof of claim where the creditor had no reasonable basis to know before the bar date that it had a claim against the debtor, and where the creditor filed a proof of claim within three months of discovery); *In re Sage-Dey, Inc.*, 170 B.R. 46, 53 (Bankr. N.D.N.Y. 1994) (extending the claims bar date where the creditor did not learn of its claim until approximately two weeks after the claims bar date, and where the creditor filed its proof of claim within six months of the bar date and before confirmation of the plan).

In this case, the Santa Fe Entities did not know of their claims before the Claims Bar Date, acted promptly on discovery of their claims, and submitted all required information before the Questionnaire Bar Date.

**D.    The Santa Fe Entities Are Acting in Good Faith in Seeking to Have Their Proofs of Claim Treated as Timely Filed.**

The Santa Fe Entities have acted in good faith at all relevant times. The Santa Fe Entities seek to assert claims against LBHI that they held as of the Petition Date. The Santa Fe Entities, through no fault of their own, had no knowledge of the existence of the Guarantees, and thus no knowledge of their need to file proofs of claim against LBHI, until after the Claims Bar Date. (Leatherberry Aff. ¶¶ 6-7.) The Santa Fe Entities do not seek to delay LBHI's bankruptcy case, the Santa Fe Entities do not seek to assert claims of dubious legitimacy, and the Santa Fe Entities

12

did not delay exercising their rights in order to gain a strategic advantage in the restructuring process. Had the Santa Fe Entities been aware of the existence of the Guarantees before the Claims Bar Date, they would have filed timely proofs of claim.

## V.
## CONCLUSION

In *PT-1 Commc'ns*, the court found excusable neglect, where (1) the creditor had no knowledge of the existence of its claims against the debtor prior to the claims bar date, (2) the danger of prejudice to the debtor was outweighed by the reasons for the creditor's delay, (3) the length of the delay was small, and (4) the creditor acted in good faith. *PT-1 Commc'ns*, 292 B.R. at 489-90. A finding of excusable neglect is even more justifiable here, as such a finding will not prejudice LBHI, the length of delay is very small, and any effect on LBHI or any other creditor is mitigated (if not eliminated) by the fact that the Santa Fe Entities filed their proofs of claim and submitted Guarantee Questionnaires before the Questionnaire Bar Date. The Santa Fe Entities' delay is not the result of carelessness nor was the reason for the delay within the Santa Fe Entities' control. In addition, the Santa Fe Entities moved quickly to file their claims as soon as they learned of the Guarantees' existence. Finally, each of the Santa Fe Entities has acted in good faith at all relevant times. For all of the foregoing reasons, the Santa Fe Entities' failure to file proofs of claim before the Claims Bar Date constitutes "excusable neglect." Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), this Court should grant the Santa Fe Entities' motion.

**WHEREFORE,** for all of the reasons set forth in this consolidated application and memorandum, as well as those set forth in the Affidavits of James Leatherberry and Stephen M. Mertz, the Santa Fe Entities respectfully request that the Court enter an order

substantially in the form attached hereto (A) requiring LBHI to treat the Santa Fe Entities' proofs of claim as timely filed and (B) granting such further relief as the Court deems just.

| | |
|---|---|
| February 17, 2010 | /s/ Michael M. Krauss |
| | Michael M. Krauss (MK-9699) |
| | Abby E. Wilkinson |
| | Michael F. Doty |
| | Christopher J. Harayda |
| | Faegre & Benson LLP |
| | 2200 Wells Fargo Center |
| | 90 South Seventh Street |
| | Minneapolis, MN 55402-3901 |
| | Telephone: (612) 766-7000 |
| | Facsimile: (612) 766-1600 |
| | |
| | Attorneys for Santa Fe Partners, LLC; Santa Fe Partners, LLC for and on behalf of Anasazi Systematic Long Short LP and Anasazi Market Neutral LP; and Santa Fe Master Fund SPC for and on behalf of Anasazi Market Neutral 2x, Segregated Portfolio, Anasazi Market Neutral 3x, Segregated Portfolio, Anasazi Systematic Long Short B, Segregated Portfolio, Anasazi Systematic European Long Short C, Segregated Portfolio, Anasazi Japanese Systematic Long Short D, Segregated Portfolio, Anasazi Systematic European Long Short E, Segregated Portfolio and Anasazi Systematic Japanese Long Short F, Segregated Portfolio |

fb.us.4526495.22