**<u>Exhibit A</u>**
**(The Agreement)**

EXECUTION COPY

## AGREEMENT FOR DEED/ASSIGNMENT IN LIEU OF FORECLOSURE

THIS AGREEMENT FOR DEED/ASSIGNMENT IN LIEU OF
FORECLOSURE (this "Agreement") is dated as of the ‌2‌ day of February, 2010, by and
among STAMFORD ASSOCIATES, L.P., a New York limited partnership ("SALP"),
SECURITY PACIFIC CAPITAL LEASING CORPORATION, a Delaware corporation
("SPCLC"); (SALP and SPCLC are hereinafter sometimes collectively referred to as the
"Stamford Entities"); STAMFORD INVESTMENT PARTNERS LP, a New York limited
partnership ("SIP"), STAMFORD REAL ESTATE CORPORATION, a Delaware corporation
("SREC"), SIP OWNER LLC, a Delaware limited liability company ("Grantee"), LEHMAN
BROTHERS HOLDINGS INC., a Delaware corporation ("LBHI"); (SIP, SREC, Grantee and
LBHI are hereinafter sometimes collectively referred to as the "Lehman Entities"); and
COMMONWEALTH LAND TITLE INSURANCE COMPANY ("Escrow Agent").

### R E C I T A L S

A.    SALP is the holder of all of the tenant's interest in the Ground Lease (as
hereinafter defined) (the "Ground Leasehold Interest") covering certain real property located at
695 East Main Street, Stamford, Connecticut and more particularly described on Exhibit A (the
"Land"), pursuant to that certain Ground Lease dated as of November 1, 1984, between Elm
Street Corporation, as lessor ("Elm Street"), and SALP, as lessee (the "Ground Lease").    SALP
is also the owner of the fee interests (the "Fee Interest") in the improvements (the
"Improvements") located on the Land, which Improvements consist of a six story office building
known as the General Re Financial Center.    The Improvements and the Ground Leasehold
Interest, together with all appurtenant rights, privileges, interests and easements belonging or in
any way relating thereto, subject to the Project Leases (as defined below), the lien of the
Mortgage (as defined below) and the other Loan Documents (as defined below) and the other
Permitted Exceptions (as defined below), being referred to herein as the "Property".

B.    SALP subleased the Land and leased the Improvements to SREC pursuant
to that certain Realty Lease and Sublease Agreement dated as of November 1, 1984, between
SALP, as lessor, and SREC, as lessee, as amended by letter agreement dated May 15, 1985
(collectively, the "Master Lease").

C.    SREC sub-subleased the Land and subleased the Improvements to General
Re Corporation ("Gen Re") pursuant to the certain Realty Sublease and Sub-Sublease Agreement
(the "Operating Lease") dated as of November 1, 1984, between SREC, as lessor, and Gen Re, as
lessee, which Operating Lease is scheduled to expire by its terms on January 31, 2010.    The
Ground Lease, the Master Lease and the Operating Lease are hereinafter sometimes collectively
referred to as the "Project Leases".

D.    SPCLC is the sole member of each of Stamford Investors GP LLC
("SALP GP"), a Delaware limited liability company that is the general partner of SALP, and

Stamford Investors LLC ("SALP LP"), a Delaware limited liability company that is a limited partner of SALP;

    E.    SIP is the owner and holder of a loan (the "Loan") evidenced by a $26,000,000 face amount Deferred Interest Subordinated Secured Note Due 2020, dated November 9, 1984 (the "Note"), and secured by that certain Second Mortgage and Security Agreement dated as of November 9, 1984, by and among SALP, as mortgagor, SREC, and SIP, as mortgagee (the "Mortgage"), which Mortgage is recorded in Book 3476, page 228 of the land records in Fairfield County, Connecticut, and encumbers the Property. The Note and the Mortgage are sometimes hereinafter collectively referred to as the "Loan Documents."

    F.    LBHI, as successor in interest to Shearson Lehman Brothers Holdings Inc. ("Shearson"), and pursuant to that certain Guarantee (the "Original Guaranty") dated as of May 1, 1985, given by Shearson for the benefit of SPCLC and its successors and assigns, guaranteed certain obligations of SREC, as lessee under the Master Lease and as lessor under the Operating Lease. The Original Guaranty was modified pursuant that certain Agreement Regarding Guarantee, dated as of November 15, 2005 (as modified, the "Guaranty"), by and among Shearson, SPCLC, SALP GP and SALP LP.

    G.    LBHI, as successor in interest to Shearson, and pursuant to that certain Tax Indemnification Agreement (the "Tax Indemnity") dated as of May 10, 1985, given by Shearson for the benefit of SPCLC and its successors and assigns, is an indemnitor of certain benefits accruing to SPCLC in connection with the ownership of the Improvements and interest deductions in respect of the Note.

    H.    SREC and SIP are wholly owned indirect subsidiaries of LBHI. Grantee is a wholly owned subsidiary of SIP. Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries (together with LBHI, collectively, the "Debtors"), commenced with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary cases (collectively, the "Bankruptcy Action") under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

    I.    (i) SALP and SPCLC have filed with the Bankruptcy Court a proof of claim filed September 17, 2009, as Claim No. 15799 (the "Guaranty Proof of Claim") against LBHI, wherein SALP and SPCLC are asserting claims that allegedly arise out of LBHI's obligations under the Guaranty, and (ii) SPCLC has filed a proof of claim filed September 17, 2009, as Claim No. 15794 (the "Tax Indemnity Proof of Claim") against LBHI, wherein SPCLC is asserting claims that allegedly arise out of LBHI's obligations under the Tax Indemnity. The Guaranty Proof of Claim and the Tax Indemnity Proof of Claim are sometimes hereinafter collectively referred to as the "Proofs of Claim" and have an aggregate face value of $416,353,324.71.

    J.    The parties hereto agree that it is in their best interests to avoid further cost and expense in resolving disputes which exist with respect to the Loan and other matters set forth herein and, in furtherance thereof, SALP has agreed to grant, and Grantee has agreed to accept and assume, a conveyance of the Project (as hereinafter defined) and SALP's rights and obligations in, to and under the Loan and the Loan Documents, pursuant to the terms of this

Agreement and subject to the performance of all of the obligations of the parties set forth herein (the "Project Transfer").

A G R E E M E N T

      **NOW, THEREFORE,** in consideration of the foregoing Recitals (which are hereby incorporated into the body of this Agreement), the covenants and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, it is agreed by and among the parties hereto as follows:

      1.    AS IS.  EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT, THE CONVEYANCE OF THE PROJECT AND SALP'S RIGHTS AND OBLIGATIONS IN, TO AND UNDER THE LOAN AND THE LOAN DOCUMENTS PURSUANT TO THIS AGREEMENT IS AND WILL BE MADE ON AN "AS IS," "WHERE IS," AND "WITH ALL FAULTS" BASIS, WITHOUT REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE, EXPRESS, IMPLIED OR OTHERWISE, INCLUDING ANY REPRESENTATION OR WARRANTY CONCERNING THE LOAN, THE LOAN DOCUMENTS, THE PROJECT LEASES, THE PROJECT AGREEMENTS (AS HEREINAFTER DEFINED), TITLE TO THE LAND, THE PROJECT OR ANY PORTION THEREOF, THE PHYSICAL CONDITION OF THE LAND, THE PROJECT OR ANY PORTION THEREOF (INCLUDING THE CONDITION OF THE SOIL OR THE IMPROVEMENTS), THE ENVIRONMENTAL CONDITION OF THE LAND, THE PROJECT OR ANY PORTION THEREOF (INCLUDING THE PRESENCE OR ABSENCE OF HAZARDOUS SUBSTANCES ON OR AFFECTING THE LAND OR THE IMPROVEMENTS), THE COMPLIANCE OF THE LAND, THE PROJECT OR ANY PORTION THEREOF WITH APPLICABLE LAWS AND REGULATIONS (INCLUDING ZONING AND BUILDING CODES OR THE STATUS OF DEVELOPMENT OR USE RIGHTS RESPECTING THE LAND, THE PROJECT OR ANY PORTION THEREOF), THE FINANCIAL CONDITION OF THE LAND, THE PROJECT OR ANY PORTION THEREOF OR ANY OTHER REPRESENTATION OR WARRANTY RESPECTING ANY INCOME, EXPENSES, CHARGES, LIENS OR ENCUMBRANCES, RIGHTS OR CLAIMS ON, AFFECTING OR PERTAINING TO THE LAND, THE PROJECT OR ANY PORTION THEREOF.  THE LEHMAN ENTITIES ACKNOWLEDGE THAT, PRIOR TO THE EXECUTION OF THIS AGREEMENT, THE LEHMAN ENTITIES SHALL HAVE EXAMINED, REVIEWED AND INSPECTED ALL MATTERS WHICH IN THE JUDGMENT OF ANY OF THE LEHMAN ENTITIES BEAR UPON THE PROJECT TRANSFER AND THE OTHER TRANSACTIONS PROVIDED HEREIN AND IN THE OTHER AGREEMENTS TO BE DELIVERED AT CLOSING.

      2.    Gen Re Rent Payment.

      a.    SREC shall cause the next installment of basic rent under the Ground Lease in the amount of $1,560,000 due and payable on February 1, 2010 to be paid on or prior to such date.  The final rent payment to be paid by Gen Re on February 1, 2010 pursuant to the Operating Lease in the amount of $13,607,500 (the "Gen Re Rent Payment"), shall be deposited with the Escrow Agent promptly upon receipt by SREC.  The Gen Re Rent Payment, less the Post Closing Escrow Amount (as defined below), shall be delivered to SALP on the

Closing Date (as defined below) as further set forth herein; provided, that the Escrow Agent shall promptly disburse all or a portion of the Gen Re Rent Payment as directed in any written notice signed by both SREC and SALP giving instructions to the Escrow Agent with respect to the disposition of the Gen Re Rent Payment or any portion thereof (a "Joint Disbursement Notice") delivered at any time.

   b.  In the event that the full amount of the Gen Re Rent Payment (i.e., $13,607,500), whether or not actually received by SREC, is not deposited with the Escrow Agent on or prior to February 3, 2010, this Agreement shall become terminable at the sole and absolute discretion of the Stamford Entities, provided, the Stamford Entities provide written notice to the Lehman Entities on or prior to February 5, 2010 of such election, and upon any such election to terminate this Agreement, all of the parties shall be restored to the status quo ante except for any claims that may exist for breach of this Agreement and, notwithstanding anything to the contrary in this Agreement, all of the rights and claims of each of the Stamford Entities and the Lehman Entities under the Project Leases, the Proofs of Claim, the Guaranty, the Tax Indemnity and the Loan Documents are reserved.

   c.  If, on or prior to February 26, 2010, (i) the Closing (as defined below) shall not have occurred for any reason whatsoever, and (ii) the Escrow Agent shall not have received a Joint Disbursement Notice with respect to the portion of the Gen Re Rent Payment then being held by the Escrow Agent (the "Balance"), the Escrow Agent shall refuse to comply with any requests or demands on it and shall continue to hold the Balance, together with any interest earned thereon, until Escrow Agent receives either (A) a Joint Disbursement Notice, or (B) a final order of a court of competent jurisdiction directing disbursement of the Balance in a specific manner, in either of which events Escrow Agent shall then promptly disburse the Balance (together with interest earned thereon) in accordance with such Joint Disbursement Notice or order; provided that the foregoing shall not prevent the Escrow Agent from causing the Balance to be placed into the registry of a court of competent jurisdiction (other than any bankruptcy court) pursuant to an action of interpleader commenced by the Escrow Agent as provided in Section 2(d) below.

   d.  The Escrow Agent shall be Commonwealth Land Title Insurance Company, c/o New York Land Services Inc., having an address at 630 Third Avenue, 12th Floor, New York, NY 10017.   The Gen Re Rent Payment shall be held by the Escrow Agent in trust in a Premium Commercial Money Market Deposit account at JP Morgan Chase Bank, N.A., bearing interest at the rate determined by JPMorgan Chase Bank, N.A.   SALP hereby acknowledges and understands that the sub-account into which the Gen Re Rent Payment is to be deposited cannot be established without SALP furnishing the Escrow Agent with an executed original Form W-9.   SALP represents and warrants to Escrow Agent that its Federal Taxpayer Identification Number is the number provided in the Form W-9 delivered to the Escrow Agent. References herein to the Gen Re Rent Payment shall include any and all interest accrued thereon which shall be delivered to the party which ultimately receives the Gen Re Rent Payment; provided, in the event that the Gen Re Rent Payment is split between more than one party, that such parties shall share such accrued interest in proportion to the amount of the Gen Re Rent Payment to which they are entitled.   The parties hereto acknowledge that the Escrow Agent, as the escrow agent, has no duties or responsibilities hereunder other than to hold and disburse the Gen Re Rent Payment pursuant to the terms of this Agreement.   Any fees payable to the Escrow

Agent shall be paid by the Lehman Entities.   In the event of any dispute regarding any action taken, or proposed to be taken, by the Escrow Agent with respect to the Gen Re Rent Payment, the Escrow Agent, in its sole discretion, may cause the Gen Re Rent Payment (or the Balance, as applicable) to be placed into the registry of a court of competent jurisdiction (other than any bankruptcy court) pursuant to an action of interpleader commenced by the Escrow Agent, and the party that does not prevail in such dispute agrees to pay directly, or reimburse the Escrow Agent for, any and all expenses so incurred by the Escrow Agent in connection with any such dispute, including, but not limited to, any reasonable attorneys' fees incurred by the Escrow Agent in any such action.   The Escrow Agent shall give written notice of any such deposit to the parties hereto.  Upon any such deposit, the Escrow Agent shall be relieved and discharged of all further obligations and responsibilities hereunder.   The parties hereto acknowledge that the Escrow Agent hereunder is acting solely as a stakeholder at their request and solely as a convenience to such parties and that the Escrow Agent shall not be deemed to be the agent of any of such parties and that the Escrow Agent shall not be liable for (i) any loss, cost or damage which it may incur as a result of serving as Escrow Agent hereunder, except for any loss, cost or damage arising out of its willful misconduct or gross negligence or failure to comply with the terms of this Agreement, (ii) any action taken or omitted to be taken in reliance upon any document, including any written instructions provided for in this Agreement, which the Escrow Agent shall in good faith believe to be genuine, and (iii) any loss or impairment resulting from the failure, insolvency or suspension of the financial institution at which the Gen Re Rent Payment has been deposited.   The parties hereto acknowledge that they are aware that the Federal Deposit Insurance Corporation (FDIC) coverage applies only to a cumulative maximum amount for each individual depositor for all of depositor's accounts at the same or related institution.  If for any reason during the Interim Period (hereinafter defined), any written or oral demand is made by any party or agent thereof upon the Escrow Agent for delivery to it of the Gen Re Rent Payment or any portion thereof (other than a Joint Disbursement Notice), the Escrow Agent shall give prompt written notice to all of the other parties hereto of such demand. The parties hereto will cooperate with each other in all reasonable respects in giving instructions to the Escrow Agent with respect to the disposition of the Gen Re Rent Payment in accordance with the provisions of this Agreement.

    3.  <u>Compliance with Master Lease</u>.   The parties hereto all acknowledge and agree that the Master Lease shall remain in full force and effect, and SREC and SALP acknowledge and agree to continue to be bound by the terms of the Master Lease during the Interim Period; provided, that SREC shall not be obligated to pay basic rent during the Interim Period if the February 1, 2010 installment of basic rent under the Ground Lease is paid to Elm Street and the Gen Re Rent Payment is deposited into escrow, pursuant to and in accordance with Section 2 hereof.   Without limiting the generality of the foregoing, SREC hereby reaffirms its obligation under the Master Lease, to the extent provided for in the Master Lease (a) to maintain the Property in the condition required under the Master Lease (including, without limitation, Section 7 thereof) and to insure the Property to the extent required in the Master Lease, all at its sole cost and expense, (b) to observe and perform or cause to be observed and performed, at its sole cost and expense, all of the covenants, terms and conditions imposed by the Ground Lease upon the tenant thereunder, to the end that SALP shall not have any responsibility for compliance with any of the provisions of the Ground Lease, and (c) to indemnify and hold harmless SALP against and from all liability as tenant or lessee under the Ground Lease during the term of the Master Lease.

4.    <u>Conveyance to Grantee of the Property</u>.

Subject to the terms and conditions hereof, SALP hereby agrees to convey, assign, and transfer to Grantee, and Grantee agrees to accept a conveyance of and assume, on the Closing Date, all of SALP's right, title and interest in and to and all of SALP's obligations arising from and after execution of this Agreement under, the following:

a.    the Ground Leasehold Interest;

b.    the Fee Interest;

c.    all of the interests of the landlord under the Master Lease (the "<u>Master Leasehold Interest</u>");

d.    all of the rights and obligations of the borrower under the Loan and the Loan Documents; (the "<u>Loan Interests</u>")

e.    all personal property owned by SALP, if any, and located on the Property or any portion thereof or used in connection with the operation of the Property or any portion thereof, or acquired by SALP for installation or use in connection with the operation of the Property or any portion thereof and not previously replaced by SALP, wherever located (collectively, the "<u>Personal Property</u>"), including, but not limited to, the fixtures, attachments, appliances, equipment, machinery, and other articles attached to the improvements located upon the Property or any portion thereof and all tangible personal property owned by SALP now or at the Closing Date located on or at the Property or any portion thereof or used or to be used in connection therewith, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems, air conditioning, heating, boilers, refrigerating, electronic monitoring, water, lighting, power, sanitation, waste removal, entertainment, recreational, window or structural cleaning rigs, maintenance and all other equipment of every kind), all indoor or outdoor furniture (including tables, chairs, planters, desks, sofas, shelves, lockers and cabinets), furnishings, appliances, inventory, rugs, carpets and other floor coverings, draperies, drapery rods and brackets, awnings, venetian blinds, partitions, chandeliers and all other indoor and outdoor lighting fixtures, and all other fixtures, apparatus, equipment, furniture, furnishings, and articles owned by SALP and used in connection with the operation of any of the Improvements, it being understood that the enumeration of any specific articles of property shall nowise result in the exclusion of or be held to exclude any items of personal property not specifically mentioned; and

f.    all intangible property owned by SALP, if any, used in connection with the operation of the Property or the Personal Property, or any portion thereof, including, without limitation, any and all licenses or use permits ("<u>Permits</u>") and the name "Stamford Financial Center" and similar names, and any other trade style, trade name and logos used in connection with the Property or any portion thereof (to the extent of the interests therein of SALP) (all such items being hereinafter collectively referred to as the "<u>Intangible Property</u>").

The Property, the Master Leasehold Interest, the Loan Interest, the Personal Property and the Intangible Property are sometimes collectively referred to herein as the "<u>Project</u>."

5.      Conditions Precedent.

a.      The following are conditions precedent (collectively, the "Stamford Conditions Precedent") to the obligations of the Stamford Entities to proceed with the Closing and any of such Stamford Conditions Precedent may be waived by either of the Stamford Entities in their sole and absolute discretion:

(i)      The Bankruptcy Court shall have entered a final, non-appealable order (the "Bankruptcy Court Approval") in the form attached hereto as Exhibit C, approving LBHI's entry into this Agreement and the transactions contemplated hereby;

(ii)      Each of the Lehman Entities shall have performed in all material respects all of its respective obligations required to be performed by it under this Agreement including, without limitation, entering into and delivering all documents contemplated herein; and

(iii)      All representations and warranties of each of the Lehman Entities in this Agreement shall be true and accurate in all material respects as of the Closing.

b.      The following are conditions precedent (collectively, the "Lehman Conditions Precedent" and together with the Stamford Conditions Precedent, collectively, the "Conditions Precedent") to the obligations of the Lehman Entities to proceed with the Closing and any of such Lehman Conditions Precedent may be waived by any of the Lehman Entities in their sole and absolute discretion:

(i)      The Bankruptcy Court Approval shall have been obtained;

(ii)      Each of the Stamford Entities shall have performed in all material respects all of its respective obligations required to be performed by it under this Agreement including, without limitation, entering into and delivering all documents contemplated herein;

(iii)      All representations and warranties of each of the Stamford Entities in this Agreement shall be true and accurate in all material respects as of the Closing;

(iv)      SALP shall be ready, willing and able to transfer all of its right, title and interest in and to the Project to Grantee, free and clear of any exceptions to title caused or created by SALP or any of its Affiliates in violation of the representations, warranties and covenants of the Stamford Entities set forth herein; and

(v)      The cost of removing any title exceptions that do not constitute Permitted Exceptions and were not caused or created by (I) SALP or any of its Affiliates in violation of the representations, warranties and covenants of the Stamford Entities set forth herein or (II) any of the Lehman Entities or their Affiliates (such title exceptions being hereinafter referred to as "3rd Party Exceptions") shall not exceed $500,000 in the aggregate; it being understood and agreed, notwithstanding anything to the contrary contained in this Agreement or in any Ancillary Document, that (A) the existence of 3rd Party Exceptions that can be disposed of for an aggregate liquidated amount of $500,000 or less shall not constitute a failure of a Lehman Condition Precedent, and (B) in no event shall any Stamford Entity be

required to remove, satisfy or otherwise dispose of any exception to title (including, without limitation, any Permitted Exception or any 3rd Party Exception) other than any such exception caused or created by SALP or any of its Affiliates in violation of the representations, warranties and covenants of the Stamford Entities set forth herein.

        c.      In the event that the Bankruptcy Court Approval is not obtained on or prior to February 22, 2010 for any reason whatsoever, then this Agreement shall become terminable at the sole and absolute discretion of either the Stamford Entities or the Lehman Entities upon written notice to the other parties hereto, and upon any such election to terminate this Agreement, all of the parties shall be restored to the status quo ante except for any claims that may exist for breach of this Agreement and, notwithstanding anything to the contrary in this Agreement, all of the rights and claims of each of the Stamford Entities and the Lehman Entities under the Project Leases, the Proofs of Claim, the Guaranty, the Tax Indemnity and the Loan Documents are reserved.

        6.      <u>Interim Period Covenants</u>.

        a.      From and after the date of this Agreement through and including the date of Closing or the termination of this Agreement in accordance with its terms (the "<u>Interim Period</u>") only and subject to the full and punctual performance by the Lehman Entities of their material obligations under this Agreement, neither of the Stamford Entities shall, without first obtaining the prior written consent of the Lehman Entities, take any action with respect to the Property, the Master Lease or the Ground Lease if and to the extent such actions would be binding on the Project, the Lehman Entities or any one of them after the Closing, including without limitation:

        (i)      entering into any leases, subleases, other occupancy agreements, security agreements, contracts or other agreements binding upon the Project or any portion thereof;

        (ii)      conveying or removing from the Property or from any other location where now located, any of the Personal Property or the Intangible Property;

        (iii)      selling, leasing, mortgaging, encumbering, pledging, releasing or otherwise alienating any collateral given or pledged to SIP in connection with the Loan or any of the rights, interests and properties to be conveyed to Grantee pursuant to this Agreement; or

        (iv)      entering into or causing any change, alteration, amendment, modification or termination of the Ground Lease, provided, that nothing contained in this Agreement shall prevent the Stamford Entities from negotiating in good faith a release of the Stamford Entities from any liability under the Ground Lease directly with Elm Street.

        b.      During the Interim Period only and subject to the full and punctual performance by the Stamford Entities of their material obligations under this Agreement, SIP shall not exercise any of its rights and remedies under the Loan Documents, including, without limitation:

(i)    suing for, taking or receiving from SALP or the Project (or any portion thereof), directly or indirectly, in cash or other property or by setoff or in any other manner, payment of all or any of the Note or any amounts due under the Loan Documents;

(ii)    declaring a default or "Event of Default" under any or all of the Loan Documents for any reason whatsoever, it being acknowledged and agreed that in no event may SIP declare any default or "Event of Default" under any of the Loan Documents with respect to any default or "Event of Default" that resulted, directly or indirectly, from any of the Lehman Entities or their Affiliates taking any action or omission in violation of the terms of the Loan Documents during the Interim Period;

(iii)    foreclosing or attempting to foreclose any of the Loan Documents, seeking or obtaining the appointment of a receiver for SALP or the Project (or any portion thereof), exercising any right or power of sale granted in the Loan Documents, attempting to realize upon or enforce rights against any portion of the Project, any interest therein or upon any security furnished by SALP or others, with respect to the Loan, or seeking relief from any stay imposed under the Bankruptcy Code, or exercising any other right or remedy granted in the Loan Documents or with respect to SALP, the Project or any collateral pledged or held under any or all of the Loan Documents; or

(iv)    exercising or pursuing any other rights or remedies available to SIP under the Loan Documents, or any rights or remedies available to SIP at law, in equity or otherwise with respect to the Loan.

c.    LBHI has filed a motion with the Bankruptcy Court to obtain the Bankruptcy Court Approval.  The Lehman Entities will not directly or indirectly take any action that is materially inconsistent with or that would materially delay or impede the Bankruptcy Court Approval, provided, notwithstanding the foregoing or anything to the contrary contained herein, (i) neither LBHI nor any of the other Lehman Entities shall have any obligation to file any or defend against any appeal to obtain the Bankruptcy Court Approval and (ii) nothing shall prevent LBHI from filing any further filings or disclosures that it may deem necessary with respect to the ownership of SALP.

7.    Closing.

The closing of the transaction contemplated by this Agreement (the "Closing") shall take place on the date ("Closing Date") that is two (2) business days after all of the Conditions Precedent have either been satisfied or waived by the appropriate party or on such earlier date as agreed to by the parties hereto.   If the Conditions Precedent are not satisfied such that the transactions contemplated herein are not closed by February 26, 2010, then this Agreement shall terminate and all of the parties shall be restored to the status quo ante except for any claims that may exist for breach of this Agreement and, notwithstanding anything to the contrary in this Agreement, all of the rights and claims of each of the Stamford Entities, the Lehman Entities and LBHI under the Project Leases, the Proofs of Claim, the Guaranty, the Tax Indemnity and the Loan Documents are reserved.   Upon Closing, the Allowed Claims shall be freely assignable by the Stamford Entities, subject to any orders that may be entered in connection with the Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy

Code for Approval of Certain Restrictions and Procedures Applicable to Transfers of the
Debtors' Securities [Docket No. 6699].   The Closing shall take place at the offices of Weil,
Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, or at such other place
as is mutually agreed upon by the parties hereto.

        8.    Global Override.

        Notwithstanding anything to the contrary contained in this Agreement, any
Project Lease and/or any Loan Document, the parties acknowledge and agree that compliance
with the tenant's obligations under the Ground Lease and the borrower's covenants under the
Loan Documents (other than the payment of any interest or principal thereunder) shall at all
times during the Interim Period be the sole obligation of SREC and any default or Event of
Default under the Ground Lease and/or the Loan Documents caused by SREC or any of its
Affiliates during the Interim Period shall not constitute a breach or default hereunder or under
the Loan Documents by any of the Stamford Entities or the failure of a Lehman Condition
Precedent.   The provisions of this Section shall survive the Closing or a termination of this
Agreement.

        9.    Closing Costs and Prorations.

        a.    Each of the parties hereto agrees to pay (i) all of its respective legal
costs, and (ii) any federal, state or other income taxes payable by any of such parties in
connection with the conveyance of the Project or any portion thereof.

        b.    The Lehman Entities shall be jointly and severally and solely
responsible for the cost and payment of (i) any real property or other transfer tax, conveyance
tax, documentary tax or stamp tax or similar tax or fee, whether payable to the State of
Connecticut or any municipality, arising in connection with the conveyance of the Project to any
of the Lehman Entities and (ii) record searches, title examinations, surveys and owner's and
mortgagee's title insurance policies (including endorsements thereto), if any, desired by any of
the Lehman Entities, provided, that neither of the Stamford Entities shall have any obligation to
pay   any other costs of the transactions described herein, except as otherwise provided in
Section 9(a) above.

        10.    Representations and Warranties.

        a.    SALP represents and warrants to the Lehman Entities as follows as
of the date hereof and as of the Closing Date:

        (1)    To the actual knowledge of SALP, neither SALP, nor any
of its Affiliates, have entered into any leases, subleases, rental agreements, tenancies, occupancy
agreements, contractual agreements, contract rights, service agreements, management
agreements, or any other agreements that would be binding on the Project (or any portion
thereof), or any of the Lehman Entities, after the Closing (collectively, "Project Agreements"),
other than (A) the Ground Lease, the Master Lease, the Loan Documents and the other
agreements described on Exhibit B attached hereto (collectively, the "Permitted Exceptions"),
(B) any Project Agreements disclosed in writing or otherwise known to any Lehman Entity or
any of its Affiliates, and (C) any Project Agreements executed by SALP during any period that

SALP was controlled by or under common control with any of the Lehman Entities or any of their respective Affiliates.

(2)    (A) To the actual knowledge of SALP, (i) there have been no modifications or amendments to, or any surrender, termination or cancellation of, the Ground Lease, (ii) SALP has not waived any of its rights thereunder and, (iii) Elm Street has not waived any of its rights thereunder, it being acknowledged that the Lehman Entities are aware of Elm Street's assertions that the lessee's purchase option under Section 34 of the Ground Lease has expired, which the Lehman Entities and SALP have disputed, and nothing contained in this Agreement shall be deemed to prejudice the Lehman Entities' or SALP's ability to continue to dispute such assertions, (B) to the actual knowledge of SALP, copies of all notices given or received by either of the Stamford Entities in connection with the Ground Lease in the last 5 years have been disclosed and delivered to the Lehman Entities, (C) to the actual knowledge of SALP, there has been no exercise by the lessor under the Ground Lease of any right of acquisition thereunder in the last 5 years including due to a default by the lessee thereunder, and (D) to the actual knowledge of SALP, no default or event which, with the giving of notice of the passage of time, would result in a default exists under the Ground Lease.

(3)    To the actual knowledge of SALP, (A) neither SALP, nor any of its Affiliates, have sold, pledged, mortgaged, encumbered, released, granted a security interest in or otherwise alienated the Project and/or any portion thereof as collateral for a loan, other than in connection with the Loan or any other of the Permitted Exceptions, the Loan Documents and/or the Project Leases, and (B) neither SALP, nor any of its Affiliates, have sold, pledged, mortgaged, encumbered, released, granted a security interest in or otherwise alienated any collateral given or pledged to SIP in connection with the Loan or any of the rights, interests and properties to be conveyed to Grantee pursuant to the Agreement.

(4)    Except as otherwise disclosed in writing or otherwise known to any Lehman Entity or any of its Affiliates, to the actual knowledge of SALP, (A) none of the Stamford Entities has received written notice in the last 5 years from any governmental or quasi-governmental authority asserting that the Project (or any portion thereof) or the operation thereof currently violates any applicable laws, ordinances, codes, or regulations (including, without limitations any zoning, building, fire, or safety laws, ordinances, codes or regulations) or any other restrictions affecting the use of the Project imposed by any governmental or quasi-governmental authority having jurisdiction over the Project; (B) none of the Stamford Entities has received written notice in the last 5 years asserting that the Property (or any portion thereof) or the operation thereof currently violates zoning, building, fire, or safety laws, ordinances, codes or regulations imposed by any governmental or quasi-governmental authority having jurisdiction over the Property (or any portion thereof); or (C) none of the Stamford Entities has received written notice in the last 5 years asserting that the operation of the Property (or any portion thereof) violates the terms of any restrictive covenants, easements, or other agreements restricting the use of any portion of the Property or the Project.

(5)    Except as otherwise disclosed in writing or otherwise known to any Lehman Entity or any of its Affiliates, to the actual knowledge of SALP, there are no pending or threatened litigation matters or regulatory proceedings against the Stamford Entities with respect to the Project (or any portion thereof).

b.      Each Stamford Entity represents and warrants to the Lehman Entities that (A) the persons executing this Agreement and all documents required to consummate the transactions contemplated hereby on behalf of such Stamford Entity, have been duly authorized to execute this Agreement and such other documents as are being delivered contemporaneously herewith on behalf of such Stamford Entity and to bind such Stamford Entity; (B) all consents and approvals required in connection with the consummation of the transactions contemplated by this Agreement by such Stamford Entity have been obtained; and (C) this Agreement has been, and all other documents to be delivered by such Stamford Entity at Closing have been or will be, duly authorized, executed and delivered by such Stamford Entity, and do not or will not violate the provisions of any of the Project Leases or any other agreements to which such Stamford Entity is a party.

c.      Each Lehman Entity represents and warrants to the Stamford Entities that (A) the persons executing this Agreement and all documents required to consummate the transactions contemplated hereby on behalf of such Lehman Entity, have been duly authorized to execute this Agreement and such other documents as are being delivered contemporaneously herewith on behalf of such Lehman Entity and to bind such Lehman Entity; (B) all consents and approvals required in connection with the consummation of the transactions contemplated by this Agreement by such Lehman Entity have been obtained (other than, in the case of LBHI, the Bankruptcy Court Approval); and (C) this Agreement has been, and all other documents to be delivered by such Lehman Entity at Closing have been or will be, duly authorized, executed and delivered by such Lehman Entity, and do not or will not violate the provisions of any of the Project Leases or any other agreements to which such Lehman Entity is a party.

d.      Each Stamford Entity represents and warrants to each Lehman Entity, and each Lehman Entity represents and warrants to each Stamford Entity, that no broker or finder has been engaged by it, respectively, in connection with the transactions contemplated under this Agreement.  In the event of a claim for broker's or finder's fee or commissions in connection with the transactions contemplated by this Agreement, then Grantee shall indemnify, defend and hold harmless the Stamford Entities from the same if it shall be based upon any statement or agreement alleged to have been made by any Lehman Entity, and SALP shall indemnify, defend and hold harmless the Lehman Entities from the same if it shall be based upon any statement or agreement alleged to have been made by any Stamford Entity.  The indemnification obligations under this Section shall survive the Closing or a termination of this Agreement.

e.      The representations and warranties set forth in <u>Section 10(a) and Section 10(d)</u> shall survive the Closing until December 1, 2010.  All other representations and warranties shall survive the Closing.

f.      As used in this Agreement, the words "to the actual knowledge of SALP" or words of similar import shall be deemed to mean, and shall be limited to, the actual (as distinguished from implied, imputed or constructive) knowledge of Steven Jacobs, and shall not be construed, by imputation or otherwise, to refer to the knowledge of any Stamford Entity or any parent, subsidiary or affiliate of any Stamford Entity or to any other officer, agent, manager, representative or employee of any Stamford Entity or to impose upon Steven Jacobs any duty to

investigate the matter to which such actual knowledge, or the absence thereof, pertains. Notwithstanding anything to the contrary contained in this Agreement, Steven Jacobs shall have no personal liability hereunder. The terms and provisions of this Section 10(f) shall survive the Closing or a termination of this Agreement.

g.      Notwithstanding anything contained in this Agreement to the contrary, each of the Lehman Entities hereby expressly waives, relinquishes and releases any right or remedy available to it at law, in equity or under this Agreement or any of the Ancillary Documents, to make a claim against the Stamford Entities, or to rescind this Agreement, any Ancillary Document and/or the transactions contemplated hereby or thereby, as a result of any Stamford Entity's representations or warranties being untrue, inaccurate or incorrect, or as a result of any breach or default by either of the Stamford Entities under this Agreement or any Ancillary Document, if on or prior to Closing any of the Lehman Entities or any of their respective Affiliates knew that such representation or warranty was untrue, inaccurate or incorrect, or that such breach or default had occurred, and the Lehman Entities nevertheless closed hereunder. In addition, notwithstanding anything to contrary contained herein, no Stamford Entity or any of its Affiliates shall have any liability for any representations or warranties made that are applicable during any period that SALP was controlled by or under common control with any of the Lehman Entities or any of their respective Affiliates. If any of the representations or warranties of any party hereunder that were true, accurate and correct as of the date of this Agreement shall become untrue, inaccurate or incorrect during the Interim Period, and the party who is the beneficiary of the representation or warranty has knowledge of such inaccuracy prior to the Closing, other than by reason of a breach or default by such party of its obligations under this Agreement, the same shall not give rise to a breach or default hereunder, and the sole remedy of the other parties shall be to (1) terminate this Agreement by giving written notice thereof to the other parties hereto on or prior to the scheduled date for Closing and, upon such termination, the parties shall have no further obligations one to the other hereunder except those obligations which, by their express terms, survive such termination, or (2) waive any potential adverse effect which may be brought about by such changes in conditions, and proceed to Closing without an adjustment of any amounts to be paid hereunder. Anything contained herein to the contrary notwithstanding, it is acknowledged and agreed that none of the Stamford Entities or any of their Affiliates have made any representation or warranty whatsoever, in this Agreement, any Ancillary Document or otherwise, with respect to any matter disclosed in writing or otherwise known to any Lehman Entity or any of its Affiliates on or prior to the date hereof, or relating to any matters arising or accruing from or relating to any period that SALP was controlled by or under common control with any of the Lehman Entities or any of their respective Affiliates, and any inconsistency of the foregoing matters with the representations and warranties made by the Stamford Entities or any of them in this Agreement shall not constitute a breach or default by the Stamford Entities or give rise to the failure of a Lehman Condition Precedent. The terms and provisions of this Section 10(g) shall survive the Closing.

h.      With respect to any claims for breaches of the representations and warranties of SALP contained in Section 10(a), in no event shall the Lehman Entities or any of them seek or obtain, and each of the Lehman Entities hereby waives, discharges and forever relinquishes and releases the Stamford Entities of and from, any and all rights of recovery or rights to receive damages in excess of $500,000. At Closing, a portion of the Gen Re Rent

Payment in the amount of $500,000 (the "Post Closing Escrow Amount") shall be escrowed with the Escrow Agent as security for post-Closing claims for breaches of the representations and warranties of SALP contained in Section 10(a). The terms and provisions of the escrow of the Post Closing Escrow Amount shall be the same as those provided for the Gen Re Rent Payment in Section 2(c) and (d) hereof, except that (i) if no claims are made by the Lehman Entities under this Agreement by December 1, 2010, the Post Closing Escrow Amount shall be released to SALP together with any interest earned thereon and (ii) if any claim is made by the Lehman Entities under this Agreement prior to December 1, 2010, the Post Closing Escrow Amount shall remain in escrow until resolution of all such claims. The terms and provisions of this Section 10(h) shall survive the Closing or a termination of this Agreement.

    11.    <u>Deliveries at Closing.</u>

    a.    On the Closing Date, the Stamford Entities shall deliver, or cause to be delivered, to the Lehman Entities, as the case may be, each of the following documents, duly executed and acknowledged by the applicable Stamford Entities, and other items:

    (1)    Recordable quitclaim deed (the "Deed") in the form of Exhibit E-1 attached hereto, conveying SALP's Fee Interest.

    (2)    Assignments of the ground lessee position in the Ground Lease and the master lessor position in the Master Lease (collectively, the "Lease Assignments") in the form of Exhibit E-2 and Exhibit E-3 attached hereto.

    (3)    Bill of sale in the form of Exhibit F attached hereto (the "Bill of Sale") conveying the Personal Property and the Intangible Property owned by SALP.

    (4)    Release (the "Mutual Release") in the form of Exhibit G attached hereto, releasing the Stamford Entities and the Lehman Entities from any and all obligations with respect to the Ground Lease, the Master Lease, the Operating Lease, the Loan, the Loan Documents, the Project, the Proofs of Claim, the Guaranty, the Tax Indemnity and all related matters, other than for claims of breach of this Agreement.

    (5)    Termination of the Guaranty and the Tax Indemnity (the "Guaranty and Tax Indemnity Termination") in the form of Exhibit H attached hereto, terminating the Guaranty and the Tax Indemnity.

    (6)    Notice of the Project Transfer to the ground lessor under the Ground Lease in the form of Exhibit I attached hereto.

    (7)    Notice to the Escrow Agent (the "Escrow Agent Direction Notice") in the form of Exhibit J attached hereto advising the Escrow Agent that the Project Transfer has closed and irrevocably instructing Escrow Agent to deliver the Gen Re Rent Payment to SALP.

    (8)    An assignment and assumption of the Loan (the "Loan Assignment and Assumption Agreement") in the form of Exhibit K attached hereto assigning the Loan from SALP to Grantee.

(9)    An affidavit as required by Section 1445 of the Internal Revenue Code of 1986, as amended, to the effect that the withholding of tax is not required under Section 1445 with respect to the Project Transfer.

(10)    All other deliveries required to be made by, or on behalf of, any of the Stamford Entities pursuant to the terms of this Agreement.

(11)    Such other documents and instruments as may be reasonably necessary in order to consummate the transactions contemplated by this Agreement, including, without limitation, any real property or other transfer tax or similar tax forms provided, however, that all such documents and instruments from the Stamford Entities shall be without recourse and contain no representations or warranties whatsoever.

b.    On the Closing Date, the Lehman Entities shall deliver, or cause to be delivered, to the Stamford Entities, as the case may be, each of the following documents, duly executed and acknowledged by the applicable Lehman Entities, and other items:

(1)    The Lease Assignments.

(2)    The Mutual Release.

(3)    The Escrow Agent Direction Notice.

(4)    The Loan Assignment and Assumption Agreement.

(5)    LBHI will file a notice of consummation (the "Notice of Consummation"), in the form attached hereto as Exhibit M, with the Bankruptcy Court, which shall serve as notice that (i) the Guaranty Proof of Claim (Claim No. 15799) has been amended and superseded by an allowed general unsecured claim in the allowed amount of $45,000,000 against LBHI for the benefit of SPCLC (to the exclusion of SALP)[1], and (ii) the Tax Indemnity Proof of Claim (Claim No. 15794) has been amended and superseded by an allowed general unsecured claim in the allowed amount of $20,000,000 against LBHI, which allowed claims (the "Allowed Proofs of Claim") shall not be subject to any reduction, disallowance, defense, counterclaim, setoff or subordination, and LBHI will serve the Notice of Consummation on the Stamford Entities and will cause Epiq Bankruptcy Solutions, LLC, the Bankruptcy Court–appointed claims and noticing agent, to reflect the Allowed Proofs of Claim in the official claims register in the Bankruptcy Action.

(6)    All other deliveries required to be made by either of the Lehman Entities pursuant to the terms of this Agreement.

(7)    Such other documents and instruments as may be reasonably necessary in order to consummate the transactions contemplated by this Agreement.

---

[1] Nothing contained herein shall impair the assignability of the claim or the proceeds thereof.

c.    The Stamford Entities shall cooperate with SIP and Grantee, at SIP's or Grantee's sole cost and expense and without incurring any liability whatsoever, in its efforts to obtain, at Closing, ALTA owner's and lender's title insurance policies (collectively, the "Title Policies"), with full extended coverage over the printed general exceptions in said policy, issued by a title insurance company selected by Grantee (the "Title Insurer") in an aggregate amount to be determined by SIP or Grantee, each in its sole discretion.

12.    Limitation on Liability.

a.    Notwithstanding anything to the contrary contained in this Agreement or any documents executed in connection herewith (collectively, the "Ancillary Documents"), no agent, advisor, representative, affiliate, employee, director, partner, member, beneficiary, investor, servant, shareholder or trustee of SALP or any other person or entity acting on SALP's behalf or otherwise related to or affiliated with SALP, including without limitation, SPCLC, shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made or entered into under or pursuant to the provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and each Lehman Entity and its successors and assigns and, without limitation, all other persons and entities, shall look solely to SALP's assets for the payment of any claim or for any performance, and each Lehman Entity, on behalf of itself and its successors and assigns, hereby waives any and all such personal liability.   The provisions of this Section 12(a) shall survive the Closing or a termination of this Agreement.

b.    Notwithstanding anything to the contrary contained in this Agreement or any Ancillary Documents, no agent, advisor, representative, affiliate, employee, director, partner, member, beneficiary, investor, servant, shareholder or trustee of any of the Lehman Entities or any other person or entity acting on any of the Lehman Entities' behalf or otherwise related to or affiliated with any of the Lehman Entities shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made or entered into under or pursuant to the provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and each Stamford Entity and its successors and assigns and, without limitation, all other persons and entities, shall look solely to SIP's, SREC's and/or LBHI's assets for the payment of any claim or for any performance, and each Stamford Entity, on behalf of itself and its successors and assigns, hereby waives any and all such personal liability.   The provisions of this Section 12(b) shall survive the Closing or a termination of this Agreement.

13.    No Obligations of SIP or Grantee to Third Parties.

The Stamford Entities acknowledge and agree that the consummation of the Closing, including without limitation, the acceptance by Grantee of the Ground Leasehold Interest, the Fee Interest and the Master Leasehold Interest (collectively, the "Project Interests") pursuant to the terms of this Agreement, shall neither create nor be deemed or construed as an assumption by any Lehman Entity of any obligations to third parties which have claims of any kind whatsoever against any of the Stamford Entities with respect to the Project (or any portion thereof), or other assets, rights and claims to be assigned to the Grantee at Closing and arising prior to the execution of this Agreement, and none of the Lehman Entities assumes or agrees to

discharge any liabilities pertaining to the Project (or any portion thereof) which arose, accrued or occurred prior to the execution of this Agreement, except to the extent expressly provided herein, in the Master Lease, and/or assumed in writing by the Grantee pursuant to the documents executed and delivered by the Stamford Entities at Closing, and/or otherwise relating to claims created or caused by or through any Lehman Entity or any of its Affiliates. This Agreement is made and entered into for the sole protection and benefit of the parties hereto, and no other person, persons, entity or entities shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary hereunder.

14.    Transfer of Project to Grantee.

a.    Absolute Conveyance.   The parties hereto acknowledge and agree that the conveyance of the Project to the Grantee pursuant to the conveyances provided for in this Agreement, is an absolute transfer, assignment and conveyance of all of SALP's right, title and interest in and to the Project in fact as well as in form and was not and is not now intended as a mortgage, trust conveyance, deed of trust or security instrument of any kind; that the consideration for such conveyance is exactly as recited herein and SALP shall have, from and after Closing, no further interest, including right of redemption or claims, in and to the Project (or any portion thereof) or to the proceeds and profits which may be derived therefrom of any kind whatsoever.

b.    No Merger.   The parties hereto acknowledge and agree that the interest of the Grantee in the Project acquired pursuant to the conveyances provided for in this Agreement shall not merge with the liens and security interests of SIP, as lender, in the Project under the Loan Documents.   It is the express intention of each of the parties hereto (and all of the conveyances to the Grantee provided for in this Agreement shall so recite) that such interests and liens in the Project shall not merge, but be and remain at all times separate and distinct, notwithstanding any union of said interest in SIP or any of its Affiliates at any time hereafter by purchase or otherwise, and that the liens and security interests of SIP, as lender, in, on and against the Project created by certain of the Loan Documents shall be and remain at all times a valid, perfected and continuous lien on the Project until expressly released by SIP.

15.    Risk of Loss.

The Lehman Entities shall bear the risk of all loss or damage to Project or any portion thereof from any casualty or condemnation occurring on or prior to the Closing Date, and the occurrence of any of the foregoing shall not be deemed to be a failure of a Lehman Condition Precedent or a breach or default by the Stamford Entities hereunder, subject to compliance by the Stamford Entities with their obligations under Section 6(a) hereof.   The parties expressly acknowledge and agree that the provisions of this Section 15, and not Section 5-1311 of the New York State General Obligations Law, shall govern the rights and obligations of the parties in the event of a fire or other casualty affecting the Project or any portion thereof.

16.    Sole Discretion.

Each party to this Agreement acknowledges that whenever pursuant to this Agreement, a party may approve or disapprove any act (or any action) or any document, delivery

or other item, or where such party's consent or approval is required in any respect or where any document or other item must be satisfactory to a party, except in those specific instances where such party has specifically agreed not to unreasonably withhold its consent pursuant to the terms of this Agreement, the decision of each to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory or to grant or withhold consent shall be in the sole, absolute and unfettered discretion of such party, without any express or implied obligation of reasonableness or good faith whatsoever and shall be final and conclusive. Each party acknowledges and agrees that in no circumstance shall any other party have any claim or cause of action, in contract or in tort, against such party as a result of the granting or withholding of any such consent or approval. The inclusion of references to such party's sole or absolute discretion in any particular provisions of this Agreement shall not limit or affect the applicability of the preceding two sentences to all provisions of this Agreement, including without limitation, those provisions wherein a specific reference to a party's sole and absolute discretion is not made.

17.    Waivers; Modifications; Entire Agreement.

The parties hereto each reserve the right to waive any of the Conditions Precedent to their respective obligations hereunder. No such waiver and no modification, amendment, discharge or change of this Agreement, except as otherwise provided herein, shall be valid unless the same is in writing and signed by the parties against whom the enforcement of such modification, waiver, amendment, discharge or change is sought. No waiver of any particular provision waives any other provision. All of the parties hereto acknowledge and agree that they are not relying upon any statements, representations, warranties, promises or covenants of any of the other parties hereto in entering into this Agreement other than such statements, representations, warranties, promises and covenants that are expressly made in this Agreement. This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes any and all prior agreements between the parties hereto respecting such matters, including, without limitation, that certain Pre-Negotiation Agreement dated as of April 8, 2009, by and among the Stamford Entities, the Lehman Entities, SALP GP and SALP LP.

18.    Reserved.

19.    Preservation of Rights.

Except to the extent expressly set forth herein, in the Mutual Release and/or the Loan Assignment and Assumption Agreement to be executed by the Lehman Entities and delivered at Closing, none of the instruments and documents, liens and security interests, evidencing and securing the Loan, shall be, or shall be deemed to be, affected, modified or impaired, nor shall the priority of any lien and/or security interest held by SIP be changed, modified, or affected, by the execution of this Agreement or the consummation of any of the transactions described or contemplated herein or therein. Notwithstanding anything to the contrary contained herein or in any Ancillary Document, the execution of this Agreement or the consummation of any of the transactions described or contemplated herein or in any Ancillary Document shall in no way be construed as an acknowledgement or admission of fact or liability by the Stamford Entities with respect to Loan or the Loan Documents, including, without limitation, the enforceability of the Loan Documents and the existence or non-existence of any

objections, claims, defenses, counterclaims or offsets, whether foreseeable or unforeseeable, relating to obligations under or in respect of the Loan or to the enforcement or exercise by SIP of any of its rights, powers or remedies under or in respect of the Loan Documents.   The terms and provisions of this Section 19 shall survive the Closing or a termination of this Agreement.

20.   <u>Notices</u>.

Any notice, demand, request or other communication required or permitted to be given under this Agreement shall be deemed given (a) when personally delivered, (b) one (1) business day after deposit with FedEx or other overnight courier for overnight delivery, charges prepaid, (c) after telephonic confirmation given by the party sending the notice to the party receiving notice that the notice has been transmitted by telecopy, or (d) by electronic mail, in each case addressed as follows:

a.   If intended for the Stamford Entities:

c/o BANK OF AMERICA
555 California Street, 4th Floor
San Francisco, California 94104
Attention: Steven Jacobs
Telephone #:  (415) 765-1826
Telecopy   #:  (415) 633-0136
Email:   steven.m.jacobs@baml.com

with a copy to:

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038-4982
Attention:   Brian Diamond, Esq.
Telephone #:   (212) 806-5569
Telecopy   #:   (212) 806-6006
Email: bdiamond@stroock.com

b.   If intended for the Lehman Entities:

LEHMAN BROTHERS HOLDINGS INC.
1271 Avenue of the Americas
New York, New York 10020
Attention:   Joelle Halperin, Esq.
Telephone #:   (646) 285-9066
Telecopy   #:   (646) 834-0874
Email: joelle.halperin@lehman.com

with a copy to:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue,
New York, New York 10153
Attention:  W. Michael Bond, Esq.
Telephone #:  (212) 310-8035
Telecopy  #:  (212) 310-8007
Email:  michael.bond@weil.com

c.    If intended for Escrow Agent:

COMMONWEALTH LAND TITLE INSURANCE COMPANY
c/o New York Land Services
630 Third Avenue, 12th Floor
New York, New York 10017
Attention:  Anthony DellaSalla
Telephone #:  (212) 490-2277
Telecopy  #:  (212) 490-8012
Email:  adellasalla@cltlt.com

or at such other address as the party to be served notice may have furnished in writing to the party seeking or desiring to serve notice as a place for service of notice.   Notices given in any other fashion shall be deemed effective only upon receipt.

21.    Further Assurance.

The parties hereto and each of them agree at any time and from time to time to execute any and all documents reasonably requested by the others to carry out the intent of this Agreement.

22.    Time is of Essence.

Time is of the essence with respect to each of the parties' obligations under this Agreement.

23.    Governing Law.

The validity, meaning and effect of this Agreement shall be determined in accordance with the laws of the State of New York performed, without giving effect to principles of conflict of laws.   Each of the parties to this Agreement hereby irrevocably and unconditionally submits to the exclusive jurisdiction of any State or Federal court sitting in the County of New York, State of New York over any suit, action or proceeding arising out of or relating to this Agreement; provided however that each of the parties to this Agreement hereby irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court.  If the Bankruptcy Court abstains from exercising jurisdiction or does not have jurisdiction with respect to such suit, action or proceeding, then any State or Federal court sitting

in the County of New York, State of New York shall have exclusive jurisdiction in respect of
such suit, action or proceeding arising out of or relating to this Agreement. Each of the parties to
this Agreement hereby expressly waives its right to object to such jurisdiction on the basis of
forum non conveniens.

24.    Counterparts.

This Agreement may be executed in two or more counterparts, each of which
shall be deemed an original, but all of which together shall constitute one and the same
instrument.

25.    Captions.

The captions in this Agreement are inserted for convenience of reference only and
in no way define, describe or limit the scope or intent of this Agreement or any of the provisions
hereof.

26.    Binding Effect.

This Agreement shall be binding upon and shall inure to the benefit of the parties
hereto and their respective heirs, executors, administrators, legal representatives, successors and
assigns if and to the extent that the rights hereunder may be assigned pursuant to the terms
hereof.

27.    Parties Not Partners.

Nothing contained in this Agreement or any of the documents to be executed
pursuant hereto shall constitute any one or more of the parties hereto as partners with one another
or agents for one another.   In no event do any of the parties hereto owe any of the others any
sort of fiduciary duty or obligation.

28.    Interpretation.

As used herein, the terms (a) "person" shall mean an individual, a corporation, a
partnership, a trust, an unincorporated organization or any agency or political subdivision
thereof; (b) "including" shall mean including, without limitation; and (c) the masculine shall
include the feminine and the neuter.

29.    Partial Invalidity.

Each of the parties hereto intends and believes that each provision of this
Agreement comports with all applicable local, state and federal laws.   However, if any provision
or provisions, or any portion of any provision or provisions, of this Agreement is found by a
court of law to be in violation of any applicable local, state or federal ordinance, statute, law,
regulation, administrative decision, or public policy, and if such court should declare such
portion, provision or provisions of this Agreement to be illegal, invalid, unlawful, void or
unenforceable as written, then it is the intent of each of the parties hereto that any such portion,
provision or provisions shall be given force to the fullest possible extent that they are legal, valid

and enforceable, that the remainder of this Agreement shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interests of the parties hereto under the remainder of this Agreement shall continue in full force and effect.

30.    Assignability.

None of the Lehman Entities shall have the right to assign any of their respective rights under this Agreement without the prior written consent of the Stamford Entities.   None of the Stamford Entities shall have the right to assign any of their respective rights under this Agreement without the prior written consent of the Lehman Entities; provided that no such consent shall be required for an assignment of the Allowed Proofs of Claim as provided in Section 7 hereof.   For purposes of this Agreement, the term "Affiliate" shall mean any individual or entity that is controlled by, controls or is under common control with the person in question.

31.    Recitals and Exhibits.

All recitals to this Agreement and all exhibits or schedules attached hereto are hereby made a part hereof and incorporated herein by reference for all purposes.

32.    Waiver of Jury Trial.

EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY, IRREVOCABLY AND INTENTIONALLY FOREVER WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (VERBAL OR WRITTEN) OR ACTION OF ANY PERSON OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THIS AGREEMENT (INCLUDING WITHOUT LIMITATION ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT OR ANY CLAIMS OR DEFENSES ASSERTING THAT THIS AGREEMENT WERE FRAUDULENTLY INDUCED OR ARE OTHERWISE VOID OR VOIDABLE).   THIS PROVISION IS A MATERIAL INDUCEMENT TO ENTER INTO THIS AGREEMENT.

33.    Remedies Cumulative; Litigation Expenses.

If any party shall be in default of its obligations under this Agreement or any of the Ancillary Documents, any other party's exercise of (or failure to exercise) any of its rights or remedies under this Agreement or any Ancillary Document shall not be deemed to be in lieu of, or a waiver of, any right or remedy contained in or granted to such other party pursuant to or in connection with any other agreement or claim, including, without limitation, the Guaranty, the Indemnity, the Proofs of Claim, any Project Lease or any Loan Document, as applicable.   No right, power or remedy of any party in this Agreement or the Ancillary Documents is intended to be exclusive of any other right, power or remedy conferred upon or reserved to or by the Guaranty, the Indemnity, the Proofs of Claim, any Project Lease, any Loan Document, this Agreement, the Ancillary Documents, or at law or in equity, but each and every remedy shall be

cumulative and concurrent, and shall be in addition to each and every other right, power and remedy given under the Guaranty, the Indemnity, the Proofs of Claim, any Project Lease, any Loan Document, this Agreement, the Ancillary Documents, or at law or in equity.   If any litigation is commenced in connection with this Agreement, the prevailing party in such litigation shall be entitled to reimbursement of all reasonable attorneys' fees and expenses incurred by such prevailing party in connection with such litigation from the non-prevailing party. Notwithstanding anything to the contrary contained in this Agreement, under no circumstances shall any party hereto or any other indemnitee hereunder be entitled to claim or receive any special or punitive damages.

**[THE REMAINDER OF THIS PAGE IS LEFT BLANK]**

**IN WITNESS WHEREOF**, the parties hereto have executed this
Agreement as of the day and year first written above.

**WITNESSES:**                                   **SALP:**

**STAMFORD ASSOCIATES, L.P.**, a New York
limited partnership

By:    Stamford Investors GP, LLC, a Delaware
limited liability company, its General Partner

By:    Security Pacific Capital Leasing
Corporation, a Delaware corporation, its Sole
Member

_____
Name

By:    _____
Name:    Steven M. Jacobs
Title:    Managing Director

_____
Name

**SPCLC:**

_____
Name

**SECURITY PACIFIC CAPITAL LEASING
CORPORATION**, a Delaware corporation
By:    _____
Name:    Steven M. Jacobs
Title:    Managing Director

_____
Name

**WITNESSES:**

Name ___RONNIE BAPTISTE___

Name ___Nancy Sharperson___

 

Name ___RONNIE BAPTISTE___

Name ___Nancy Sharperson___

**SIP:**

**STAMFORD INVESTMENT PARTNERS LP**, a New York limited partnership

By:    STAMFORD INVESTMENT
       REALTY INC., a Delaware
       corporation, its General Partner

    By: _____
    Name:  Jeff Fitts
    Title:   Vice President

**SREC:**

**STAMFORD REAL ESTATE CORPORATION**, a Delaware corporation

By: _____
Name:  Phil Cyburt
Title:   Vice President

**WITNESSES:**

Name  RONNIE BAPTISTE

Name  Nancy Sharperson

Name  RONNIE BAPTISTE

Name  Nancy Sharperson

**GRANTEE:**

**SIP OWNER LLC, a Delaware limited
liability company**

By:   Stamford Investment Partners
LP, a New York limited partnership

By:   _____
Name: Jeff Fitts
Title:   Vice President

**LBHI:**

**LEHMAN BROTHERS HOLDINGS
INC., a Delaware corporation**

By:   _____
Name:   Philip W. Cyburt
Title:   Authorized Signatory

SIGNATURE PAGE TO STAMFORD FINANCIAL CENTER AGREEMENT FOR DEED IN LIEU OF FORECLOSURE (#43273148)

Evidencing Its Agreement to Section 2 and
Section 10(h) Herein:

**WITNESSES:**

*Florence Yong*

Name  FLORENCE GONG

**ESCROW AGENT:**

**COMMONWEALTH LAND TITLE
INSURANCE COMPANY,** a
*Nebraska Corporation*

*Jaennin White*

Name  Jaennin White

By: _____
Name: _____ Neal Greenberg _____
Title: _____ Counsel _____

SIGNATURE PAGE TO STAMFORD FINANCIAL CENTER AGREEMENT FOR DEED IN LIEU OF FORECLOSURE (#43273148)

# ACKNOWLEDGMENT

State of California
County of San Francisco                )

On ___1/28/10___ before me, Eileen U. Harwell, Notary Public
(insert name and title of the officer)

personally appeared Steven M. Jacobs                                ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Eileen U. Harwell_    (Seal)

EILEEN U. HARWELL
Commission # 1754186
Notary Public - California
San Francisco County
My Comm. Expires Jun 28, 2011

# ACKNOWLEDGMENT

State of California
County of ~~San~~ Francisco                    )

On _____1/28/10_____ before me, Eileen U. Harwell, Notary Public
                                    (insert name and title of the officer)

personally appeared _____Steven M Jacobs_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.


Signature _Eileen U. Harwell_____    (Seal)

EILEEN U. HARWELL
Commission # 1754186
Notary Public - California
San Francisco County
My Comm. Expires Jun 28, 2011

STATE OF _New York_ )
                                    ) ss.:
COUNTY OF _New York_ )

On the __1__ day of _February_ in the year 2010, before me, the undersigned, personally appeared _____Jeffrey Fitts_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. __[SIP]__

_____
Signature and office of individual
taking acknowledgement

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011

My Commission Expires:

STATE OF _New York_ )
                                    ) ss.:
COUNTY OF _New York_ )

On the __1__ day of _February_ in the year 2010, before me, the undersigned, personally appeared _____Philip W. Cyburt_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. __[SREC]__

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011

ACKNOWLEDGMENT PAGE TO STAMFORD FINANCIAL CENTER AGREEMENT FOR DEED IN LIEU OF FORECLOSURE (#43273148)

STATE OF _New York_ )

COUNTY OF _New York_ ) ss.:

On the _1_ day of _February_ in the year 2010, before me, the undersigned, personally appeared _____ Jeffrey Fitts _, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.  [GRANTEE]

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011


STATE OF _New York_ )

COUNTY OF _New York_ ) ss.:

On the _1_ day of _February_ in the year 2010, before me, the undersigned, personally appeared Philip W. Cyburt _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.  [LBHI]

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011

ACKNOWLEDGMENT PAGE TO STAMFORD FINANCIAL CENTER AGREEMENT FOR DEED IN LIEU OF FORECLOSURE (#43273148)

STATE OF _New York_ )
                        ) ss.:
COUNTY OF _New York_ )

       On the _29_ day of _January_ in the year 2010, before me, the undersigned, personally appeared _Neal Greenberg_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. **[ESCROW AGENT]**

_____

Signature and office of individual
taking acknowledgement

My Commission Expires:

Teresa L. Hill
Notary Public, State of New York
No. 01HI6122925
Qualified in Kings County
Commission Expires February 28 20 _13_

## LIST OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Legal Description of the Land |
| B | Permitted Exceptions |
| C | Form of Bankruptcy Court Order |
| D | Reserved |
| E-1 | Form of Deed |
| E-2 | Form of Ground Leasehold Interest Assignment |
| E-3 | Form of Master Leasehold Interest Assignment |
| F | Form of Bill of Sale |
| G | Form of Mutual Release Agreement |
| H | Form of Termination of Guaranty and Tax Indemnity |
| I | Form of Notice of Project Transfer |
| J | Form of Escrow Agent Direction Notice |
| K | Form of Loan Assignment and Assumption |
| L | Reserved |
| M | Form of Notice of Consummation |

**EXHIBIT A TO AGREEMENT**

<u>**Legal Description of the Land**</u>

[TO BE ATTACHED]

**EXHIBIT B TO AGREEMENT**

**Permitted Exceptions**

**[SEE ATTACHED]**

EXHIBIT C TO AGREEMENT

<u>Form of Bankruptcy Court Order</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                             :

**In re**                                      :         **Chapter 11 Case No.**
                                              :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :       **08-13555 (JMP)**
                                            :

                         **Debtors.**        :         **(Jointly**
**Administered)**                                                    :

--------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY**
**CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**
**AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO COMPROMISE**
<u>**CERTAIN CLAIMS PURSUANT TO DEED IN LIEU OF FORECLOSURE AGREEMENT**</u>

        Upon the motion (the "<u>Motion</u>"), of Lehman Brothers Holdings Inc.

("<u>LBHI</u>" and together with its affiliated debtors in the above-referenced chapter 11 cases,

as debtors and debtors in possession, the "<u>Debtors</u>"), pursuant to section 105(a) of

chapter 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for authority to enter

into the Agreement[2] with Stamford Investment Partners, Stamford Real Estate

Corporation, Stamford Associates, L.P., and Security Pacific Capital Leasing Corporation

and take all corporate actions described therein, all as more particularly described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All

---

[2] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration

of the Motion and the relief requested therein being a core proceeding pursuant to 28

U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance

with the procedures set forth in the amended order entered February 13, 2009 governing

case management and administrative procedures [Docket No. 2837] to (i) the United

States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv)

the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and the Court having found

and determined that the relief sought in the Motion is in the best interests of LBHI, its

estate and creditors, and all parties in interest and that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to section 105(a) of the Bankruptcy Code and

Bankruptcy Rule 9019, LBHI (a) is duly authorized and empowered to execute, deliver,

implement, and fully perform any and all obligations, instruments, documents and papers,

that may be necessary or appropriate to consummate the transactions contemplated by the

Agreement substantially in accordance with the description set forth in the Motion; (b) is

duly authorized and empowered to take all other and further actions as may be necessary

to implement the transactions contemplated by the Agreement substantially in accordance

with the description set forth in the Motion; and (c) shall have the right both in

connection with and following consummation of the transactions contemplated under the

Agreement to consent to any amendment, restatement, waiver, supplement or other

modification of any of the transactions described therein substantially in accordance with

the description set forth in the Motion.   Any actions described in clauses (a), (b) and (c)

taken by LBHI or its affiliates may be taken without the necessity (x) of further court

proceedings or approval or (y) of any consent of any party other than LBHI, and shall be

conclusive and binding in all respects on all parties in interest in these cases; and it is

further

ORDERED that, on or after the date of consummation of the Agreement,

LBHI will file a notice of consummation (the "Notice of Consummation")[3] with the

Court and serve the Notice of Consummation on the Stamford Entities; and it is further

ORDERED that, following the filing of the Notice of Consummation, (i)

the Guarantee Claim [Claim No. 15799] shall be deemed amended and superseded by a

single allowed general unsecured claim in the amount of $45,000,000 solely (x) for the

benefit of SPCLC (to the exclusion of SALP)[4] and (y) against LBHI; and (ii) the Tax

Indemnity Claim [Claim No. 15794] shall be deemed amended and superseded by a

single allowed general unsecured claim in the amount of $20,000,000 solely against

LBHI (collectively, the "Amended and Superseded Claims"), which Amended and

Superseded Claims shall not be subject to any defense, counterclaim, reduction,

disallowance, setoff or subordination, and the Stamford Entities will also be deemed to

---

[3] A copy of the Notice of Consummation is attached hereto as Exhibit A.

[4] Nothing contained herein shall impair the assignability of the claim or the proceeds thereof.

waive any and all other claims that they may have against any of the other debtors in these chapter 11 cases arising out of or relating to the claims asserted in the Guaranty Claim and the Tax Indemnity Claim or the transactions or documents described therein; and it is further

ORDERED that Epiq Bankruptcy Solutions, LLC, the Debtors' court-appointed claims and noticing agent, is authorized and directed to make the modifications set forth in the preceding paragraph in the official claims register in these chapter 11 cases; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: February __, 2010
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

B-

**EXHIBIT A**
**(Consummation Notice)**

# EXHIBIT D TO AGREEMENT

**Reserved**

## EXHIBIT E-1 TO AGREEMENT

### Form of Deed

### QUITCLAIM DEED TO IMPROVEMENTS

   **KNOW YE**, that **STAMFORD ASSOCIATES, L.P.**, (hereinafter called "Grantor"), a New York limited partnership, having an address at c/o Bank of America, 555 California Street, 4th Floor, San Francisco, California, 94104, for the consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, received to the full satisfaction of **SIP OWNER LLC** (hereinafter called "Grantee"), a Delaware limited liability company, having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, New York 10020, does hereby remise, release and forever **QUITCLAIM** unto the said Grantee and unto the successors and assigns of the Grantee forever, all of the right, title, interest, claim and demand whatsoever as the Grantor has, may have or ought to have, in or to any and all buildings, fixtures, alterations and improvements located on, and together with any and all appurtenances pertaining to, those certain piece(s) or parcel(s) of land located at and known as 695 East Main Street, Stamford, Connecticut (said land hereinafter called the "Land" being more particularly described in Exhibit A attached hereto and made a part hereof; said buildings, fixtures, alterations and improvements located on the Land, together with all appurtenances pertaining thereto, hereinafter collectively called the "Improvements").

   **BEING THE SAME IMPROVEMENTS** set forth in that certain Ground Lease dated as of November 1, 1984, between Elm Street Corporation, as lessor, and Grantor, as lessee (the "Ground Lease"), which Ground Lease is being assigned by Grantor to Grantee pursuant to that certain Assignment and Assumption Agreement of even date herewith.

   **TO HAVE AND TO HOLD** the above granted and bargained Improvements, with the privileges and appurtenances thereof, unto Grantee and the successors and assigns of Grantee forever, so that neither Grantor nor its successors and assigns nor any other person or party under it or them shall hereafter have any claim, right or title in or to the Improvements or any part thereof, but therefrom it and they are by these presents forever barred and excluded.  This deed is an absolute assignment and conveyance of title in effect as well as in form and is intended to include and unconditionally convey all equitable and redemptive rights of Grantor and is not intended as a mortgage or security device or any kind.

   **AND FURTHERMORE**, the said Grantor and the said Grantee do hereby agree that the fee interest in and to the within referenced Improvements shall not hereby merge with the fee estate interest in the Land or any leasehold estate interest demised by any ground lease, lease or sublease; it being the intention of the said Grantor and the said Grantee that said interests shall remain at all times separate and distinct

notwithstanding any union of said interests and/or estates in any singe person or entity, whether by purchase or otherwise in connection with this conveyance.

      **AND FURTHERMORE**, NEITHER GRANTOR NOR GRANTEE INTEND THAT THERE BE, AND THERE SHALL NOT IN ANY EVENT BE, A MERGER OF THAT CERTAIN SECOND MORTGAGE AND SECURITY AGREEMENT DATED AS OF NOVEMBER 9, 1984, BY AND AMONG THE GRANTOR, AS MORTGAGOR, STAMFORD REAL ESTATE CORPORATION, AND STAMFORD INVESTMENT PARTNERS LP, AS MORTGAGEE (THE "MORTGAGE"), WHICH MORTGAGE IS RECORDED IN BOOK 3476, PAGE 228 OF THE LAND RECORDS IN FAIRFIELD COUNTY, CONNECTICUT, WITH THE IMPROVEMENTS, AND THE GRANTOR AND THE GRANTEE EXPRESSLY INTEND THAT THE INTERESTS OF THE MORTGAGEE AND GRANTEE IN THE MORTGAGE AND GRANTEE'S TITLE TO THE IMPROVEMENTS BE AND REMAIN AT ALL TIMES SEPARATE AND DISTINCT. THIS DEED IS NOT INTENDED TO NOR SHALL IT RELEASE THE LIENS AND SECURITY INTERESTS CONTAINED IN THE MORTGAGE.

      **AND FURTHERMORE**, the said Grantor and the said Grantee do hereby agree that the within conveyance shall not extinguish any leasehold interests or any fee interests in and to the Land or the Improvements or any subordinate ground leases, leases or subleases affecting the Land or the Improvements; it being the intention of the said Grantor and the said Grantee that said interests and estates shall remain intact and unaffected hereby.

      **IN WITNESS WHEREOF**, the undersigned has executed this instrument, by its duly authorized officer, as of the ___ day of _____, 20___.

**WITNESSES:**

      **STAMFORD ASSOCIATES, L.P.**, a New York limited partnership

_____

Name

    By:   Stamford Investors GP, LLC, a Delaware limited liability company, its General Partner

        By:   Security Pacific Capital Leasing Corporation, a Delaware corporation, its Sole Member

_____

Name

            By: _____

            Name: _____

            Title: Managing Director

STATE OF _____          )
                                  )
                      ss:                              _____
COUNTY OF _____             )


       On this _____ day of _____, 20___, personally appeared
_____, acting herein by _____, its _____,
hereunto duly authorized, signer and sealer of the foregoing instrument, who
acknowledged same to be his/her free act and deed, and the free act and deed of said
_____, before me.


                     _____
                     Notary Public
                     Commissioner of the Superior Court
                     My Commission Expires: _____

<u>Exhibit A</u>

<u>Legal Description of Land</u>

## EXHIBIT E-2 TO AGREEMENT

### Form of Lease Assignment-Ground Leasehold Interest

### ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is made as of _____, 2010, by and between STAMFORD ASSOCIATES, L.P., a New York limited partnership, with an office at c/o Bank of America, 555 California Street, 4th Floor, San Francisco, California 94104 ("Assignor") and SIP OWNER LLC, a Delaware limited liability company, with an office at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, New York 10020 ("Assignee").   In consideration of the provisions hereof, the parties hereby agree as follows:

1.      GROUND LEASE.      That certain Ground Lease dated as of November 1, 1984, by and between Elm Street Corporation, ("Elm Street"), as lessor, and Assignor, as lessee (the "Ground Lease"), demises (a) the land described on Exhibit A (the "Land"); and (b) appurtenances thereto as further described in the Ground Lease (together with the Land, the "Demised Premises").

2.      REFERENCES.      Except as otherwise provided in this Agreement, (a) reference to a numbered "Paragraph" refers to such paragraph in this Agreement; and (b) reference to a lettered Exhibit refers to an Exhibit that is attached to this Agreement, which shall be considered incorporated herein.

3.      ASSIGNMENT AND ASSUMPTION.   On the date hereof, Assignor assigns to Assignee, and Assignee accepts from Assignor, all of Assignor's right, title and interest in, to and under the Ground Lease.   From and after such assignment, Assignee undertakes and assumes for the benefit of Elm Street and Assignor the full and faithful performance of all the terms and conditions imposed on the tenant by the Ground Lease arising and/or accruing from and after the date of the Deed in Lieu Agreement (as defined below).   The parties further agree that (a) Elm Street's consent to such assignment is not required; and (b) on the date hereof, a notice of assignment, as required by Section 22.1 of the Ground Lease, shall be sent by certified mail to Elm Street as per the applicable notice provisions of the Ground Lease.

4.      ABSOLUTE ASSIGNMENT.   This Agreement is an absolute assignment and conveyance of title in effect as well as in form and is intended to include and unconditionally convey all equitable and redemptive rights of Assignor and is not intended as a mortgage or security device or any kind.

5.      NO MERGER.   NEITHER ASSIGNOR NOR ASSIGNEE INTEND THAT THERE BE, AND THERE SHALL NOT IN ANY EVENT BE, A MERGER OF THE MORTGAGE (AS DEFINED IN THE DEED IN LIEU AGREEMENT) WITH THE TITLE OR OTHER INTEREST OF ASSIGNEE IN, TO AND UNDER THE GROUND LEASE AND THE DEMISED PREMISES, AND ASSIGNOR AND ASSIGNEE EXPRESSLY INTEND THAT THE INTERESTS OF THE MORTGAGEE AND ASSIGNEE IN THE MORTGAGE AND ASSIGNEE'S TITLE TO THE LEASEHOLD ESTATE DEMISED UNDER THE GROUND LEASE BE AND REMAIN AT ALL TIMES SEPARATE AND DISTINCT.   THIS

AGREEMENT IS NOT INTENDED TO NOR SHALL IT RELEASE THE LIENS AND
SECURITY INTERESTS CONTAINED IN THE MORTGAGE.

6.      SUCCESSORS AND ASSIGNS.   This Agreement shall bind the parties and their
respective successors and assigns.   Without limiting the preceding sentence, this Agreement
shall run with the land, binding and inuring to the benefit of Assignee and its successors as
owners of the tenant's interest under the Ground Lease.

7.      RECOURSE.  This Assignment is made without recourse and without representation or
warranty, express, implied or by operation of law, or any kind and nature whatsoever, except for
such representations and warranties as may be expressly set forth in that certain Agreement for
Deed/Assignment in Lieu of Foreclosure, dated as of February __, 2010, by and among
Assignor, Assignee, Security Pacific Capital Leasing Corporation, Stamford Investment Partners
LP, Stamford Real Estate Corporation, Lehman Brothers Holdings Inc. and Commonwealth
Land Title Insurance Company (the "Deed in Lieu Agreement").

8.      COUNTERPARTS.  This Agreement may be executed in any number of counterparts,
each of which shall be deemed an original of this Agreement and all of which together shall
constitute one and the same instrument.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first written above.

**WITNESSES:**

**ASSIGNOR:**

**STAMFORD ASSOCIATES, L.P.**, a New York limited partnership

By:   Stamford Investors GP, LLC, a Delaware limited liability company, its General Partner

_____
Name

_____
Name

By:   Security Pacific Capital Leasing Corporation, a Delaware corporation, its Sole Member
By:   _____
Name:  _____
Title:  Managing Director

STATE OF_____    )
                       ) ss.:
COUNTY OF_____    )

On the _____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. **[Assignor]**

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

**WITNESSES:**

_____
Name

_____
Name

**ASSIGNEE:**

**SIP OWNER LLC**, a Delaware limited liability company,

    By: Stamford Investment Partners LP, a New York limited partnership

    By: _____

    Name: Jeff Fitts
    Title:  Vice President

STATE OF_____   )
                ) ss.:
COUNTY OF_____   )

    On the _____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. **[Assignee]**

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

EXHIBIT A

Legal Description of Property

## EXHIBIT E-3 TO AGREEMENT

### Form of Lease Assignment of Master Leasehold Interest

### ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is made as of _____, 2010, by and between STAMFORD ASSOCIATES, L.P., a New York limited partnership, with an office at c/o Bank of America, 555 California Street, 4th Floor, San Francisco, California 94104 ("Assignor") and SIP OWNER LLC, a Delaware limited liability company, with an office at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, New York 10020 ("Assignee").   In consideration of the provisions hereof, the parties hereby agree as follows:

1.     MASTER LEASE.     That certain Realty Lease and Sublease Agreement dated as of November 1, 1984, by and between Assignor, as lessor, and Stamford Real Estate Corporation, ("SREC") as lessee, as amended by letter agreement dated May 15, 1985 (collectively, the "Master Lease") demises (a) the land described on Exhibit A (the "Land"); and (b) improvements located thereon and the appurtenances thereto as further described in the Master Lease together with the Land, the "Demised Premises").

2.     REFERENCES.     Except as otherwise provided in this Agreement, (a) reference to a numbered "Paragraph" refers to such paragraph in this Agreement; and (b) reference to a lettered Exhibit refers to an Exhibit that is attached to this Agreement, which shall be considered incorporated herein.

3.     ASSIGNMENT AND ASSUMPTION.   On the date hereof, Assignor assigns to Assignee, and Assignee accepts from Assignor, all of Assignor's right, title and interest in, to and under the Master Lease.   From and after such assignment, Assignee undertakes and assumes for the benefit of SREC and Assignor the full and faithful performance of all the terms and conditions imposed on the landlord by the Master Lease arising and/or accruing from and after the date of the Deed in Lieu Agreement (as defined below).   The parties further agree that no consent to such assignment is required which has not been obtained on or prior to the date hereof.

4.     ABSOLUTE ASSIGNMENT.   This Agreement is an absolute assignment and conveyance of title in effect as well as in form and is intended to include and unconditionally convey all equitable and redemptive rights of Assignor and is not intended as a mortgage or security device or any kind.

5.     NO MERGER.   NEITHER ASSIGNOR NOR ASSIGNEE INTEND THAT THERE BE, AND THERE SHALL NOT IN ANY EVENT BE, A MERGER OF THE MORTGAGE (AS DEFINED IN THE DEED IN LIEU AGREEMENT) WITH THE TITLE OR OTHER INTEREST OF ASSIGNEE IN, TO AND UNDER THE MASTER LEASE AND THE DEMISED PREMISES, AND ASSIGNOR AND ASSIGNEE EXPRESSLY INTEND THAT THE INTERESTS OF THE MORTGAGEE AND ASSIGNEE IN THE MORTGAGE AND ASSIGNEE'S TITLE TO THE LANDLORD'S INTERESTS UNDER THE MASTER LEASE BE AND REMAIN AT ALL TIMES SEPARATE AND DISTINCT.   THIS AGREEMENT IS

NOT INTENDED TO NOR SHALL IT RELEASE THE LIENS AND SECURITY INTERESTS
CONTAINED IN THE MORTGAGE.

6.    SUCCESSORS AND ASSIGNS.    This Agreement shall bind the parties and their
respective successors and assigns.    Without limiting the preceding sentence, this Agreement
shall run with the land, binding and inuring to the benefit of Assignee and its successors as
owners of the landlord's interest under the Master Lease.

7.    RECOURSE.    This Assignment is made without recourse and without representation or
warranty, express, implied or by operation of law, or any kind and nature whatsoever, except for
such representations and warranties as may be expressly set forth in that certain Agreement for
Deed/Assignment in Lieu of Foreclosure, dated as of February __, 2010, by and among
Assignor, Assignee, Security Pacific Capital Leasing Corporation, Stamford Investment Partners
LP, Stamford Real Estate Corporation, Lehman Brothers Holdings Inc. and Commonwealth
Land Title Insurance Company (the "Deed in Lieu Agreement").

8.    COUNTERPARTS.    This Agreement may be executed in any number of counterparts,
each of which shall be deemed an original of this Agreement and all of which together shall
constitute one and the same instrument.

[SIGNATURE PAGE FOLLOWS]

E-3-

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first written above.

**WITNESSES:**                                         **ASSIGNOR:**

                                                       **STAMFORD ASSOCIATES, L.P.**, a New York
                                                       limited partnership

                                                       By:    Stamford Investors GP, LLC, a Delaware
                                                              limited liability company, its General Partner

_____
Name

_____                   By:    Security Pacific Capital Leasing
Name                                                          Corporation, a Delaware corporation, its Sole
                                                              Member
                                                              By:    _____
                                                              Name:  _____
                                                              Title:  Managing Director


STATE OF_____          )
                             ) ss.:
COUNTY OF_____            )

        On the _____ day of _____ in the year 2010, before me, the undersigned,
personally appeared _____, personally known to me or proved to me on the basis
of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within
instrument, and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument. **[Assignor]**


_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

**WITNESSES:**

_____
Name

_____
Name

**ASSIGNEE:**

**SIP OWNER LLC**, a Delaware limited liability company

By:  Stanford investment Partners LP, a New York limited partnership

By: _____

Name: Jeff Fitts
Title:  Vice President


STATE OF_____         )
                           ) ss.:
COUNTY OF_____           )

On the _____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. **[Assignee]**


_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

**EXHIBIT A**

**Legal Description of Property**

**EXHIBIT F TO AGREEMENT**

Form of Bill of Sale

BILL OF SALE

KNOW ALL PERSONS BY THESE PRESENTS:

THAT STAMFORD ASSOCIATES, L.P., a New York limited partnership ("Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash and other good and valuable consideration in hand paid, the receipt and legal sufficiency of which are hereby acknowledged, has GRANTED, SOLD, ASSIGNED, TRANSFERRED, CONVEYED and DELIVERED and does by these presents GRANT, SELL, ASSIGN, TRANSFER, CONVEY and DELIVER unto SIP OWNER LLC, a Delaware limited liability company ("Grantee"), all of Grantor's right, title and interest in, to and under (i) all personal property, if any, owned by Grantor and located on the Property (hereinafter defined) or used in connection with the operation of the Property, or acquired by Grantor for installation or use in connection with the operation of the Property and not previously replaced by Grantor, wherever located (collectively, the "Personal Property"), including, but not limited to, the fixtures, attachments, appliances, equipment, machinery, and other articles attached to the improvements located upon the Property and all tangible personal property, if any, owned by Grantor located on or at the Property or used or to be used in connection therewith, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems, air conditioning, heating, boilers, refrigerating, electronic monitoring, water, lighting, power, sanitation, waste removal, entertainment, recreational, window or structural cleaning rigs, maintenance and all other equipment of every kind), all indoor or outdoor furniture (including tables, chairs, planters, desks, sofas, shelves, lockers and cabinets), furnishings, appliances, inventory, rugs, carpets and other floor coverings, draperies, drapery rods and brackets, awnings, venetian blinds, partitions, chandeliers and all other indoor and outdoor lighting fixtures, and all other fixtures, apparatus, equipment, furniture, furnishings, and articles, if any, owned by Grantor and used in connection with the operation of the improvements on the Property, it being understood that the enumeration of any specific articles of property shall in no way result in the exclusion of or be held to exclude any items of property not specifically mentioned and (ii) all Intangible Property (as such term is defined in the Agreement (hereinafter defined)), if any, with respect to the Property, including without limitation, the permits listed and described on Exhibit B attached hereto (the "Permits").

**THE GRANT, SALE, ASSIGNMENT, TRANSFER, CONVEYANCE AND DELIVERY BEING MADE HEREBY IS MADE ON AN AS-IS WHERE-IS BASIS AND WITHOUT REPRESENTATION OR WARRANTY EXCEPT THOSE REPRESENTATIONS AND WARRANTIES MADE BY GRANTOR IN THAT CERTAIN AGREEMENT FOR DEED/ASSIGNMENT IN LIEU OF FORECLOSURE, DATED AS OF FEBRUARY __, 2010 BY AND AMONG GRANTOR, GRANTEE, SECURITY PACIFIC CAPITAL LEASING CORPORATION, STAMFORD INVESTMENT PARTNERS LP, STAMFORD REAL ESTATE CORPORATION, LEHMAN BROTHERS HOLDINGS INC. AND COMMONWEALTH LAND TITLE INSURANCE COMPANY (THE "AGREEMENT").** As used herein, the "Property" shall mean that certain real property located in Fairfield County, Connecticut and more particularly

described on <u>Exhibit A</u> attached hereto and incorporated herein, and the improvements located thereon.

Grantor does hereby agree (at no cost to Grantor) to perform, execute and/or deliver with reasonable promptness after its receipt from Grantee of written demand for same, any and all such further acts and assurances as Grantee may reasonably require to properly consummate the transfer of ownership of the Personal Property to Grantee.

TO HAVE AND TO HOLD the Personal Property and all other property as is hereinabove described unto Grantee and Grantee's successors, legal representatives and assigns, forever.

This Bill of Sale is an absolute conveyance of title in effect as well as in form and is intended to include and unconditionally convey any equitable or redemptive rights of Grantor and is not intended as a mortgage or security device of any kind.

This Bill of Sale is not intended to, and shall not, merge the equitable and legal titles in the property described above, nor shall this Bill of Sale release any liens or security interests securing any indebtedness encumbering such property, it being the intention of Grantor and Grantee to keep such liens separate and distinct and in full force and effect and to maintain the priority of such liens against any other liens or encumbrances affecting the above described property.

All of the covenants, terms and conditions set forth herein shall be binding upon and inure to the benefit of the parties hereto, their respective successors, personal and legal representatives, heirs, devises and assigns.

**IN WITNESS WHEREOF,** Grantor has executed and sealed this Bill of Sale on this __ day of _____, 2010.

**WITNESSES:**                              **GRANTOR:**

                                          **STAMFORD ASSOCIATES, L.P.,** a New York
                                          limited partnership

                                          By:    Stamford Investors GP, LLC, a Delaware
                                                    limited liability company, its General Partner

_____

Name

_____        By:    Security Pacific Capital Leasing

Name                                   Corporation, a Delaware corporation, its
                                     Sole Member
                                          By:    _____
                                          Name:  _____
                                          Title:  Managing Director

# EXHIBIT A

Property Description

### EXHIBIT G TO AGREEMENT

### Form of Mutual Release Agreement

MUTUAL RELEASE AGREEMENT

This Mutual Release ("Release") is made as of this __ day of February, 2010, by and among STAMFORD ASSOCIATES, L.P., a New York limited partnership ("SALP"), SECURITY PACIFIC CAPITAL LEASING CORPORATION, a Delaware corporation ("SPCLC"); (SALP and SPCLC are hereinafter sometimes collectively referred to as the "Stamford Entities"); STAMFORD INVESTMENT PARTNERS LP, a New York limited partnership ("SIP"), STAMFORD REAL ESTATE CORPORATION, a Delaware corporation ("SREC"), SIP OWNER LLC, a Delaware limited liability company ("Grantee"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("LBHI"); (SIP, SREC, Grantee and LBHI are hereinafter sometimes collectively referred to as the "Lehman Entities").

1. The Stamford Entities, for themselves and for each of their past, present and future agents, partners, members and other direct or indirect related entities (whether or not such entities are wholly-owned), in their capacity as such, and each of their past, present and future officers, agents, employees, servants, shareholders and attorneys, in their capacity as such (as well as their predecessors, successors and assigns) (collectively, the "Stamford Releasing Parties"), for and in consideration of the execution and delivery of that certain Agreement for Deed/Assignment in Lieu of Foreclosure, dated as of February __, 2010, by and among the Stamford Entities, the Lehman Entities and Commonwealth Land Title Insurance Company (the "Agreement"; capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement), and for other good and valuable consideration paid to the undersigned, the receipt and sufficiency of which are hereby acknowledged, does hereby forever release, waive, remise, acquit and discharge each of the Lehman Entities, and any and all of their divisions, subsidiaries, predecessors, parents, affiliates and other direct or indirect related entities (whether or not such entities are wholly-owned), in their capacity as such, and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders and attorneys, in their capacity as such (as well as their predecessors, successors and assigns) (collectively, the "Lehman Released Parties"), of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special or punitive), judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen at the present time and whether based on contract, tort, statute or other legal or equitable theory of recovery (collectively, "Claims") which the Stamford Releasing Parties, or any of them, now have or ever had against one or more of the Lehman Released Parties for or by reason of any Claims arising or accruing at any time in

connection with, arising out of, or in any way relating, directly or indirectly, to: (a) the Ground Lease, (b) the Master Lease, (c) the Operating Lease, (d) the Loan or any other indebtedness owed in connection therewith, (e) the Loan Documents, (f) the Project, including without limitation, any matters relating to the construction, development, renovation, alteration or conversion of any portion of the Project, (g) the Proofs of Claims, (h) the Guaranty, (i) the Tax Indemnity, (j) any rents, security deposits or other income from any portion of the Project, (k) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among any of the Stamford Releasing Parties and any of the Lehman Released Parties relating to the Loan or the Project, (l) any violation of any environmental laws, rules or regulations affecting, pertaining to, or otherwise applicable to the Project or any portion thereof, (m) the lender-borrower relationship evidenced by the Loan, (n) any previous pursuit of remedies by any of the Lehman Released Parties against the Stamford Entities with respect to the Loan, or (o) to any transactions, acts, occurrences, omissions or other matters arising or occurring between or among any of the Lehman Released Parties and any of the Stamford Releasing Parties and in any way related to the Project or the Loan or any of the foregoing matters described in Sections (a) – (n) above (collectively, the "Lehman Released Claims").  Without limiting the generality of the foregoing, and subject to the limitations set forth above, the Lehman Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Lehman Entities, or any of the other Lehman Released Parties, or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any of the Lehman Entities or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing.

2.    The Lehman Entities, for themselves and for each of their past, present and future agents, partners, members and other direct or indirect related entities (whether or not such entities are wholly-owned), in their capacity as such, and each of their past, present and future officers, agents, employees, servants, shareholders and attorneys, in their capacity as such (as well as their predecessors, successors and assigns) (collectively, the "Lehman Releasing Parties"), for and in consideration of the execution and delivery of the Agreement, and for other good and valuable consideration paid to the undersigned, the receipt and sufficiency of which are hereby acknowledged, does hereby forever release, waive, remise, acquit and discharge each of the Stamford Entities, and any and all of their divisions, subsidiaries, predecessors, parents, affiliates and other direct or indirect related entities (whether or not such entities are wholly-owned), in their

capacity as such, and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders and attorneys, in their capacity as such (as well as their predecessors, successors and assigns) (collectively, the "Stamford Released Parties"), of and from all Claims which the Lehman Releasing Parties, or any of them, now have or ever had against one or more of the Stamford Released Parties for or by reason of any Claims arising or accruing at any time in connection with, arising out of, or in any way relating, directly or indirectly, to: (a) the Ground Lease, (b) the Master Lease, (c) the Operating Lease, (d) the Loan or any other indebtedness owed in connection therewith, (e) the Loan Documents, (f) the Project, including without limitation, any matters relating to the construction, development, renovation, alteration or conversion of any portion of the Project, (g) the Proofs of Claims, (h) the Guaranty, (i) the Tax Indemnity, (j) any rents, security deposits or other income from any portion of the Project, (k) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among any of the Lehman Releasing Parties and any of the Stamford Released Parties relating to the Loan or the Project, (l) any violation of any environmental laws, rules or regulations affecting, pertaining to, or otherwise applicable to the Project or any portion thereof, (m) the lender-borrower relationship evidenced by the Loan, (n) any previous pursuit of remedies by any of the Lehman Released Parties against the Stamford Entities with respect to the Loan, or (o) to any transactions, acts, occurrences, omissions or other matters arising or occurring between or among any of the Lehman Released Parties and any of the Stamford Releasing Parties and in any way related to the Project or the Loan or any of the foregoing matters described in Sections (a) – (n) above (collectively, the "Stamford Released Claims").   Without limiting the generality of the foregoing, and subject to the limitations set forth above, the Stamford Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Stamford Entities, or any of the other Stamford Released Parties, or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any of the Stamford Entities or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing.   The Stamford Releasing Parties and the Lehman Releasing Parties are hereinafter sometimes collectively referred to as the "Releasing Parties", the Stamford Released Parties and the Lehman Released Parties hereinafter sometimes collectively referred to as the "Released Parties" and the Stamford Released Claims and the Lehman Released Claims hereinafter sometimes collectively referred to as the "Released Claims"

G-

3.      Notwithstanding anything contained herein to the contrary, the Releasing Parties and the Released Parties agree that this Release is a release in full in favor of the Released Parties with respect to the matters contained herein but that this Release does not release and nothing contained herein shall alter, affect or modify (a) the rights of any party under the Agreement, (b) those representations, warranties, agreements or obligations to be fulfilled or performed after the date hereof which are set forth in, or which survive after the date hereof pursuant to the Agreement; (c) any rights any party may have to institute, maintain and prosecute an action or actions for any fraud or intentional misrepresentation by any party to the Agreement pursuant to the Agreement; or (d) any rights any party may have to institute, maintain and prosecute an action or actions for any other claims against any other party with respect to any Claim that is not a Released Claim, or under (i) the Agreement or (ii) any of the instruments executed and delivered concurrently with or in connection with the Agreement.

4.      Without limiting the generality of the foregoing, the Releasing Parties expressly release any and all past and present Released Claims, which the Releasing Parties, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

5.      The Releasing Parties further expressly warrant and represent that neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered. The Releasing Parties hereby agree to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation, damage and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer or purported assignment or transfer.

6.      The Releasing Parties expressly warrant and represent that in executing and entering into this Release, the Releasing Parties are not relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Release or in the Agreement or any document or instrument delivered contemporaneously with the Agreement. The Releasing Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein or in the Agreement or any document or instrument delivered contemporaneously with the Agreement may turn out hereafter to be other than, different from, or contrary to the facts now known to it or believed by it to be true. Nevertheless, the Releasing Parties intend by this Release, and with the advice of independently selected counsel, to release fully, finally and forever the Released Claims and agree that this Release shall be

G-

effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

7.     The Releasing Parties hereby agree not to bring, or assist in bringing, any Released Claims, and Releasing Parties further agree that this Release is, will constitute, and may be pleaded as, a bar to any such Released Claims.   Neither the execution nor delivery of this Release by any party nor the payment of any consideration by any person incident to this Release is an admission of any wrongdoing whatsoever on the part of any party.   Each of the Releasing Parties for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the Released Parties from and against all loss, cost, liability, and expense (including attorneys' fees and expenses) incurred by the Released Parties or any of them in connection with, arising out of or in any way relating to any breach by Releasing Parties, or any of them, of the covenants and agreements set forth in this Release.

8.     The Releasing Parties each represent and warrant that it has obtained all applicable consents and approvals and has full power, authority and legal right to execute this Agreement and to keep and observe all of the terms of this Agreement on its part to be observed and performed.

9.     This Release shall inure solely to the benefit of and be binding upon the Releasing Parties and the respective Released Parties and shall not inure to the benefit of any third parties.

10.     If any provisions of this Release are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

11.     When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

12.     This Release shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

13.     This Release may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

14.     Capitalized terms used herein but not otherwise defined herein have the meaning set forth in the Agreement.

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

IN WITNESS WHEREOF, the undersigned have delivered this Release as of the date first written above.

**WITNESSES:**

**SALP:**

**STAMFORD ASSOCIATES, L.P.**, a New York limited partnership

By:   Stamford Investors GP, LLC, a Delaware limited liability company, its General Partner

_____
Name

By:   Security Pacific Capital Leasing Corporation, a Delaware corporation, its Sole Member

_____
Name

        By: _____
        Name: _____
        Title: Managing Director

**SPCLC:**

_____
Name

**SECURITY PACIFIC CAPITAL LEASING CORPORATION**, a Delaware corporation

_____
Name

By: _____
Name: _____
Title: _____

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

**WITNESSES:**                                    **SIP:**

_____         **STAMFORD INVESTMENT**
Name                                              **PARTNERS LP**, a New York limited
                                                  partnership

_____         By:    STAMFORD INVESTMENT
Name                                              REALTY INC., a Delaware
                                                  corporation, its General Partner

                                                  By:    _____
                                                  Name:    Jeff Fitts
                                                  Title:    Vice President

                                                  **SREC:**

_____         **STAMFORD REAL ESTATE**
Name                                              **CORPORATION**, a Delaware corporation

_____         By:    _____
Name                                              Name:    Phil Cyburt
                                                  Title:    Vice President

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

SIGNATURE PAGE TO STAMFORD MUTUAL RELEASE

G-

**WITNESSES:**

**GRANTEE:**

_____
Name

**SIP OWNER LLC**, a Delaware
limited liability company

By: Stamford Investment Partners LP,
a New York limited partnership

_____
Name

By: _____
Name: Jeff Fitts
Title:   Vice President

**LBHI:**

_____
Name

**LEHMAN BROTHERS HOLDINGS
INC.**, a Delaware corporation

_____
Name

By: _____
Name: _____
Title: _____


**[ACKNOWLEDGMENTS APPEAR ON THE FOLLOWING PAGE]**

STATE OF_____            )
                             ) ss.:
COUNTY OF_____             )

     On the ____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.  **[SALP]**

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:


STATE OF_____            )
                             ) ss.:
COUNTY OF_____             )

     On the ____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.  **[SPCLC]**

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:


**[ACKNOWLEDGMENTS APPEAR ON THE FOLLOWING PAGE]**

STATE OF_____    )
                      ) ss.:
COUNTY OF_____     )

     On the ____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.  **[SIP]**

_____

Signature and office of individual
taking acknowledgement

My Commission Expires:




STATE OF_____    )
                      ) ss.:
COUNTY OF_____     )

     On the ____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.  **[SREC]**

_____

Signature and office of individual
taking acknowledgement

My Commission Expires:


**[ACKNOWLEDGMENTS APPEAR ON THE FOLLOWING PAGE]**

STATE OF_____          )
                            ) ss.:
COUNTY OF_____           )

       On the _____ day of _____ in the year 2010, before me, the
undersigned, personally appeared _____, personally known to me or proved to
me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed
to the within instrument, and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument.   **[GRANTEE]**

_____

Signature and office of individual
taking acknowledgement

My Commission Expires:

STATE OF_____          )
                            ) ss.:
COUNTY OF_____           )

       On the _____ day of _____ in the year 2010, before me, the
undersigned, personally appeared _____, personally known to me or proved to
me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed
to the within instrument, and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument.   **[LBHI]**

_____

Signature and office of individual
taking acknowledgement

My Commission Expires:

# EXHIBIT H TO AGREEMENT

## Termination of Guaranty and Tax Indemnity

### TERMINATION AND RELEASE AGREEMENT
### (Guaranty and Tax Indemnity)

This Termination and Release Agreement, dated as of _____, 2010 (the "Agreement"), is entered into by and between STAMFORD ASSOCIATES, L.P. a New York limited partnership ("SALP") and SECURITY PACIFIC CAPITAL LEASING CORPORATION, a Delaware corporation ("SPCLC" and, together with SALP collectively, the "Parties") in favor of and for the benefit of Lehman Brothers Holdings Inc. ("LBHI"). Capitalized terms not otherwise defined herein shall have the respective meanings provided for such terms in the Deed in Lieu Agreement (as hereinafter defined).

### RECITALS

WHEREAS, LBHI's predecessor in interest, Shearson Lehman Brothers Holdings Inc., ("Shearson"), pursuant to that certain Guarantee (the " Original Guaranty") dated as of May 1, 1985, given by Shearson for the benefit of SPCLC and its successors and assigns, guaranteed certain obligations of Stamford Real Estate Corporation ("SREC"), as lessee under the Master Lease and as lessor under the Operating Lease;

WHEREAS, the Original Guaranty was modified pursuant that certain Agreement Regarding Guarantee, dated as of November 15, 2005 (as modified, the "Guaranty"), by and among Shearson, SPCLC, Stamford Investors GP LLC and Stamford Investors LLC;.

WHEREAS, Shearson, pursuant to that certain Tax Indemnity (the "Tax Indemnity") dated as of May 1, 1985, given by Shearson for the benefit of SPCLC and its successors and assigns, indemnified certain benefits accruing to SPCLC in connection with the ownership of the Improvements and interest deductions in respect of the Note;

WHEREAS, on or about December 31, 2001, SPCLC assigned its interest in the Guaranty to SALP in connection with SALP issuing certain notes due 2009 to various purchasers secured by a mortgage encumbering SALP's interests in the Property (the "2001 Financing") for a term expiring on January 31, 2010, at which time the Guaranty will automatically revert back to SPCLC;

WHEREAS, on September 15, 2008, LBHI commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on February ___, 2010, SALP, SPCLC, LBHI, SREC, Stamford Investment Partners LP and Commonwealth Land Title Insurance Company entered into that certain Agreement for Deed/Assignment in Lieu of Foreclosure (the "Deed in Lieu Agreement").

WHEREAS, pursuant to an order entered on _____, 2010 [Docket No. ____] (the "Order"), by the court (the "Bankruptcy Court") in the LBHI chapter 11 case, LBHI is authorized to enter into settlement agreements in connection with the transaction contemplated by the Agreement, which, includes, without limitation the delivery of the Mutual Release by all of the parties to the Deed in Lieu Agreement;

WHEREAS, LBHI filed a Notice of Consummation (as defined in the Order) with the Bankruptcy Court on the date hereof, pursuant to and in accordance with the Deed in Lieu Agreement, which shall serve as notice that pursuant to the Order (i) that certain proof of claim filed September 17, 2009 as Claim No. 15799 has been amended and superseded by an allowed general unsecured claim in the allowed amount of $45,000,000 against LBHI for the benefit of SPCLC (to the exclusion of SALP)[5], and (ii) that certain proof of claim filed September 17, 2009 as Claim No. 15794 has been amended and superseded by an allowed general unsecured claim in the allowed amount of $20,000,000 against LBHI, which allowed claims (the "Allowed Proofs of Claim") shall not be subject to any reduction, disallowance, defense, counterclaim, setoff or subordination;

WHEREAS, the Parties hereto desire to terminate the Guaranty and the Tax Indemnity pursuant to the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.  Notwithstanding any provisions of the Guaranty or the Tax Indemnity, the Guaranty and the Tax Indemnity are hereby irrevocably terminated and all rights, obligations, liabilities, covenants, interests and claims relating thereto which may have arisen prior to, on or after the date of this Agreement shall be and are hereby canceled, terminated and extinguished and of no further force or effect and LBHI shall be and is hereby released and discharged with respect to and from all obligations, liabilities or claims under or in connection with the Guaranty and the Tax Indemnity, provided, however, that nothing herein shall impair the validity, allowance or enforcement of the Allowed Proofs of Claim as provided in the Deed in Lieu Agreement.

2.  Each of the Parties represents and warrants that it has obtained all applicable consents and approvals and has full power, authority and legal right to execute this Agreement and to keep and observe all of the terms of this Agreement on its part to be observed and performed.

3.  If any provisions of this Agreement are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

---

[5] Nothing contained herein shall impair the assignability of the claim or the proceeds thereof.

4.   When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

5.   This Agreement shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

6.   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

7.   All of the recitals set forth in this Agreement are incorporated herein and made a part hereof, and the truth and accuracy thereof was a material inducement to the delivery of this Agreement by SALP and SPCLC.

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

IN WITNESS WHEREOF, the undersigned have executed and delivered this Termination and Release Agreement as of the date first stated above.

**WITNESSES:**

**SALP:**

**STAMFORD ASSOCIATES, L.P.**, a New York limited partnership

By:   Stamford Investors GP, LLC, a Delaware limited liability company, its General Partner

_____
Name

_____
Name

    By:   Security Pacific Capital Leasing Corporation, a Delaware corporation, its Sole Member
        By:   _____
        Name: _____
        Title:   Managing Director

**SPCLC:**

_____
Name

**SECURITY PACIFIC CAPITAL LEASING CORPORATION**, a Delaware corporation

_____
Name

By:   _____
Name: _____
Title:   _____

EXHIBIT I TO AGREEMENT

**Form of Notice Letter to Ground Lessor**

STAMFORD ASSOCIATES. L.P.
c/o BANK OF AMERICA
555 California Street, 4th Floor
San Francisco, California 94104


_____ __, 2010


<u>VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED</u>

Elm Street Corporation
_____
_____

Attention:   General Counsel

Re:   Ground Lease dated as of November 1, 1984 (the "<u>Ground
Lease</u>"), by and between Elm Street Corporation, as Lessor, and
Stamford Associates, L.P., as Lessee, for certain real property
located at 695 East Main Street, Stamford, Connecticut (the
"<u>Property</u>")

To Whom it May Concern:

Please be advised that, as of the date hereof, Stamford Associates, L.P.
(the "<u>Former Ground Lessee</u>") has transferred, sold, assigned and conveyed all of its
ground leasehold interest in and to the Property to SIP Owner LLC, a Delaware limited
liability company (the "<u>New Ground Lessee</u>").   A copy of the conformed Assignment
and Assumption Agreement between the Former Ground Lessee and the New Ground
Lessee is attached hereto.

Also enclosed is a mutual release (the "<u>Release</u>") between you and Former
Ground Lessee.   Please execute the Release and return to the Former Ground Lessee at
the address noted above and we will return a fully executed counterpart to you.

All communications or notices with respect to the Ground Lease should be
made to the New Ground Lessee at the following address:

SIP Owner LLC
c/o Lehman Brothers Holdings Inc.

1271 Avenue of the Americas
New York, New York 10020

or such address as may be designated by the New Ground Lessee in writing from time to
time.

Sincerely,

**STAMFORD ASSOCIATES, L.P.**, a New York limited
partnership

By:   Stamford Investors GP, LLC, a Delaware limited
liability company, its General Partner

By:   Security Pacific Capital Leasing
Corporation, a Delaware corporation, its Sole
Member

By:   _____

Name:   _____

Title:  Managing Director

## EXHIBIT J TO AGREEMENT

### Form of Escrow Agent Direction Notice

DIRECTION TO PAY

TO:            Commonwealth Land Title Insurance Company ("Escrow Agent")

FROM:        Stamford Associates, L.P. ("SALP") and Stamford Real Estate
Corporation ("SREC")

WHEREAS, pursuant to Section 2(b) of the Agreement for Deed/Assignment in
Lieu of Foreclosure (the "Agreement") dated as of _____, 2010, by and among
SALP, SREC, SIP Owner LLC, Security Pacific Capital Leasing Corporation, Stamford
Investment Partners LP, Lehman Brothers Holdings Inc. and Escrow Agent, Escrow
Agent is holding the Gen Re Rent Payment (as such term is defined in the Agreement).

SALP and SREC HEREBY IRREVOCABLY AUTHORIZE AND DIRECT
Escrow Agent to pay the Gen Re Rent Payment to Stamford Associates, L.P., pursuant to
the wire instructions provided below, and this shall be Escrow Agent's good and
sufficient authority for doing so.

[INSERT WIRE INSTRUCTIONS]

DATED as of the _____ day of _____, 2010.

**STAMFORD ASSOCIATES, L.P.**, a New York
limited partnership

By:    Stamford Investors GP, LLC, a Delaware
limited liability company, its General Partner

By:    Security Pacific Capital Leasing
Corporation, a Delaware corporation, its Sole
Member
By:    _____
Name:  _____
Title:  Managing Director

**STAMFORD REAL ESTATE CORPORATION**, a
Delaware corporation

By:    _____
Name:
Title:

**EXHIBIT K TO AGREEMENT**

**Form of Loan Assignment and Assumption**

ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is made as of _____, 2010, between STAMFORD ASSOCIATES, L.P., a New York limited partnership ("Assignor"), and **SIP OWNER LLC**, a Delaware limited liability company ("Assignee").

WHEREAS, Assignor is the mortgagor under a certain mortgage loan (the "Loan") evidenced by that certain $26,000,000 face amount Deferred Interest Subordinated Secured Note Due 2020, dated November 9, 1984 (the "Note"), and secured by that certain Second Mortgage and Security Agreement (the "Mortgage"), dated as of November 9, 1984, by and among Assignor, Stamford Real Estate Corporation, a Delaware corporation ("SREC"), and Stamford Investment Partners LP, a New York limited partnership ("SIP"), as mortgagee, which Mortgage is recorded in Book 3476, page 228 of the land records in Fairfield County, Connecticut, and encumbers the Property legally described on the attached Exhibit A. The Note and the Mortgage are sometimes hereinafter collectively referred to as the "Loan Documents;"

WHEREAS, on February ___, 2010, Assignor, Assignee, SREC, SIP, Security Pacific Capital Leasing Corporation, Lehman Brothers Holdings Inc. and Commonwealth Land Title Insurance Company entered into that certain Agreement for Deed/Assignment in Lieu of Foreclosure (the "Deed in Lieu Agreement").

WHEREAS, Assignor agrees to assign, and Assignee agrees to assume, all of Assignor's rights and obligations under the Loan Documents.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, the parties hereby agree as follows:

1.    Definitions.    All capitalized terms used herein and not defined shall have the respective meanings set forth in the Deed in Lieu Agreement.

2.    Assignment and Assumption of Rights, Interests and Obligations. Assignor hereby assigns, transfers and delivers to Assignee, and Assignee hereby acquires and assumes, effective as of the date hereof, all of Assignor's rights and obligations under the Loan Documents, and Assignee hereby assumes, as of the date hereof, all of the Assignor's right, title and interest, legal and equitable in, to and obligations under the Loan Documents.

3.    Binding Effect.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

4.    Recourse.  This Assignment is made without recourse and without representation or warranty, express, implied or by operation of law, or any kind and nature whatsoever, except for such representations and warranties as may be expressly set forth in the Deed in Lieu Agreement.

5.    Non-Merger.  Assignor and Assignee hereby agree that the within assignment and assumption shall not merge the interests of the mortgagor and the mortgagee under the Loan Documents; it being the intention of the said Assignor and the said Assignee that said interests shall remain at all times separate and distinct notwithstanding any union of said interests and/or estates in any single person or entity.

6.    Non-Extinguishment.  Assignor and Assignee hereby agree that the within assignment and assumption shall not extinguish any interests of mortgagor and mortgagee under the Loan Documents; it being the intention of the said Assignor and the said Assignee that said interests and estates shall remain intact and unaffected hereby.

7.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflict of laws.

8.    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall constitute an original and all of which, when taken together shall constitute, one and the same agreement.

**[THE REMAINDER OF THIS PAGE IS LEFT BLANK]**

IN WITNESS WHEREOF, the parties hereto have duly executed this
Assignment as of the day and year first above written.

**WITNESSES:**

**ASSIGNOR:**

**STAMFORD ASSOCIATES, L.P.**, a New York limited
partnership

By:   Stamford Investors GP, LLC, a Delaware limited
liability company, its General Partner

_____
Name

_____
Name

By:   Security Pacific Capital Leasing
Corporation, a Delaware corporation, its Sole
Member

By:   _____

Name:   _____

Title:   Managing Director

STATE OF_____         )
                            ) ss.:
COUNTY OF_____            )

On the ____ day of _____ in the year 2010, before me, the
undersigned, personally appeared _____, personally known to me or
proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument, and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on
the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed the instrument.   **[SALP]**

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:

**WITNESSES:**

_____

**SIP OWNER LLC**, a Delaware
limited liability company

By:   Stamford Investment Partners
LP, a New York limited liability
company

_____

By: _____
Name:   Jeff Fitts
Title:    Vice President

STATE OF_____          )
                                           ) ss.:
COUNTY OF_____          )

        On the _____ day of _____ in the year 2010, before me, the
undersigned, personally appeared _____, personally known to me or
proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument, and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on
the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed the instrument.   [SIP OWNER LLC]

_____
Signature and office of individual
taking acknowledgement

My Commission Expires:

Exhibit A

Property Description

**EXHIBIT L TO AGREEMENT**

**<u>Reserved</u>**

EXHIBIT M TO AGREEMENT

FORM OF NOTICE OF CONSUMMATION

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                                                    :
**In re**                                           :   **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC., *et al.*,**        :   **08-13555 (JMP)**
                                                    :
                              **Debtors.**          :   **(Jointly Administered)**
                                                    :
------------------------------------------------------------------ x

### NOTICE OF CONSUMMATION OF
### DEED IN LIEU OF FORECLOSURE AGREEMENT

       PLEASE TAKE NOTICE that Lehman Brothers Holdings Inc. ("LBHI"), pursuant to the Order Pursuant to Section 105(a) of the Bankruptcy Code And Federal Rule of Bankruptcy Procedure 9019 Authorizing Lehman Brothers Holdings Inc. to Compromise Certain Claims Pursuant to Deed in Lieu of Foreclosure Agreement [Docket No. __] (the "Order"), hereby provides notice that the transactions contemplated in that certain Agreement for Deed / Assignment in Lieu of Foreclosure, dated February __, 2010, have been consummated.

       PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, LBHI hereby instructs Epiq Bankruptcy Solutions, LLC, LBHI's court-appointed claims and noticing agent, to make the following modifications in the official claims register in

LBHI's chapter 11 case: (i) the Guarantee Claim[6] [Claim No. 15799] shall be amended and superseded by an allowed general unsecured claim in the allowed amount of $45,000,000 against LBHI for the benefit of SPCLC (to the exclusion of SALP)[7], which allowed claim shall not be subject to any reduction, disallowance, defense, counterclaim, setoff or subordination, and (ii) the Tax Indemnity Claim [Claim No. 15794] shall be amended and superseded by an allowed general unsecured claim in the amount of $20,000,000 against LBHI, which allowed claim shall not be subject to any reduction, disallowance, defense, counterclaim, setoff or subordination.

Dated: February __, 2010
New York, New York

---

[6] Capitalized terms that are used but not defined in this notice have the meanings ascribed to them in the Order.

[7] Nothing contained herein shall impair the assignability of the claim or the proceeds thereof.

M-

_____

Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors
and Debtors in Possession