# EXHIBIT B

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
Peter Feldman
John Bougiamas
230 Park Avenue
New York, New York 10169
Tel:  (212) 661-9100
Fax:  (212) 682-6104

Attorneys for Interpleader Defendant
The Bank of Tokyo-Mitsubishi UFJ, Ltd.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

In re                                              :
                                                   :
LEHMAN BROTHERS INC.,                              :    Case No. 08-01420 (JMP) SIPA
                                                   :
            Debtor.                                :
                                                   :
-------------------------------------------------- X
                                                   :
THE OPTIONS CLEARING CORPORATION,                  :
                                                   :
            Interpleader Plaintiff,                :
                                                   :    Adversary Proceeding
            v.                                     :    No. 08-01759 (JMP)
                                                   :
BARCLAYS CAPITAL INC., AUSTRALIA &                 :
NEW ZEALAND BANKING GROUP LTD.,                    :
BANK OF TOKYO-MITSUBISHI UFJ, LTD.,                :
LLOYDS TSB BANK plc, and JAMES W.                  :
GIDDENS, in his capacity as Trustee for            :
Lehman Brothers Inc.,                              :
                                                   :
            Interpleader Defendants.               :
                                                   :
-------------------------------------------------- X

## ANSWER AND AFFIRMATIVE DEFENSES TO INTERPLEADER COMPLAINT, STATEMENT OF CLAIM, COUNTERCLAIMS AND CROSS-CLAIMS OF THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.

Interpleader Defendant, The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), by and

through its undersigned counsel, Otterbourg, Steindler, Houston & Rosen, P.C., as and for its

Answer and Affirmative Defenses to the Interpleader Complaint (the "Complaint") filed by

Interpleader Plaintiff, The Options Clearing Corporation ("OCC"), respectfully alleges as

follows:

## ALLEGATIONS REGARDING
## NATURE OF THE ACTION

1.      Admits the allegations of paragraph "1" of the Complaint except denies that this

action is limited to adjudicating the respective rights of the interpleader defendants with respect

to certain funds held by OCC.

2.      Admits the allegations of paragraph "2" of the Complaint except denies that OCC

may extricate itself from the dispute by depositing the funds at issue (the "LC Proceeds") into the

Court Registry Investment System ("CRIS").

## ALLEGATIONS REGARDING
## JURISDICTION AND VENUE

3.      Admits the allegations contained in paragraph "3" of the Complaint.

4.      Admits the allegations contained in paragraph "4" of the Complaint.

5.      Admits the allegations contained in paragraph "5" of the Complaint.

6.      Admits the allegations contained in paragraph "6" of the Complaint.

## ALLEGATIONS REGARDING PARTIES

7.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph "7" of the Amended Complaint.

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "8" of the Amended Complaint.

9.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "9" of the Amended Complaint.

10.    Admits the allegations contained in paragraph "10" of the Complaint except denies that paragraph "10" correctly sets forth BTMU's name, which is "The Bank of Tokyo-Mitsubishi, UFJ, Ltd."

11.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "11" of the Complaint.

12.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Complaint except admits that Lehman Brothers, Inc. ("LBI") is the subject of a liquidation proceeding (the "Liquidation Proceeding") pursuant to the Securities Investment Act of 1970 and that defendant, James W. Giddens (the "Trustee") was appointed Trustee of LBI pursuant to Order of the District Court dated September 19, 2008 (the "September 19 Order"), and refers the Court to the original of the September 19, Order for the terms thereof.

## ALLEGATIONS REGARDING BACKGROUND

13.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Complaint.

14.    Denies the allegations contained in paragraph "14" of the Complaint as the same may relate to BTMU except admits that BTMU issued, at the request of LBI, as applicant, a letter of credit No. S015193, in the amount of $35,100,000, in favor of OCC, as beneficiary, (the

3

"BTMU LC") and on September 19, 2008, upon information and belief, prior to commencement of the Liquidation Proceeding, OCC presented a draw demand to BTMU (the "Draw Demand") for the full amount of the BTMU LC, and further denies that the presentment was a valid exercise of OCC's rights, and as to all other defendants, denies knowledge or information sufficient to form a belief as to the truth of the allegations.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the Complaint except admits that on September 19, 2008, BTMU, in response to the Draw Demand, remitted to OCC the full amount of the BTMU LC in the amount of $35,100,000 (the "BTMU LC Proceeds").

16.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "16" of the Complaint, except admits that LBI's Liquidation Proceeding is pending before this Court and refers the Court to the original of the September 19 Order for the terms thereof.

17.     Denies the allegations contained in paragraph "17" of the Complaint except admits the entry in the bankruptcy case of Lehman Brothers Holdings, Inc. et al. (case No. 08-13555), of the Order Authorizing and Approving (A) The Sale of the Purchased Assets Free and Clear off Liens and Upon Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Liens dated September 19, 2008 (Case No. 08-13555, Docket No. 258), and refers the Court to the order for the terms thereof.

18.     Denies the allegations contained in paragraph "18" of the Complaint and refers the Court to the original of the Transfer and Assumption Agreement alleged to have been executed by LBI, OCC and Barclays Capital, Inc. ("Barclays") on or about September 20, 2008 for the terms thereof.

4

19.     Denies the allegations contained in paragraph "19" of the Complaint except admits OCC has communicated with BTMU, including by letter dated October 14, 2008, and respectfully refers the Court to the communications for the contents thereof.

## ALLEGATIONS REGARDING THE DISPUTE

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "20" of the Complaint.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "21" of the Complaint.

22.     Denies the allegations contained in paragraph "22" of the Complaint except admits that BTMU received a copy of an e-mail dated November 7, 2008 (the "November 7 e-mail") from counsel to Barclays addressed to the parties to this Action, in which Barclays rejected any settlement discussions and asserted an entitlement to the LC Proceeds without assumption of any reimbursement obligation, and refers the Court to the November 7 e-mail for the full contents thereof.

23.     Denies the allegations contained in paragraph "23" of the Complaint, except admits that BTMU sent Barclays an e-mail dated November 10, 2008 in which, among other things, BTMU rejected Barclays' position and refers the Court to the e-mail for the full contents thereof.

24.     Denies the allegations contained in paragraph "24" of the Complaint except admits BTMU received a copy of an e-mail dated November 14, 2008 (the "November 14 e-mail") from counsel to the Trustee and refers the Court to the November 14 e-mail for the full contents thereof.

25.    Admits the allegations contained in paragraph "25" of the Complaint.

26.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "26" of the Complaint.

27.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "27" of the Complaint except denies that this adversary proceeding is limited to the claims of parties relating to their interests in the proceeds of the letters of credit drawn by OCC, including the BTMU LC Proceeds.

28.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "28" of the Complaint.

29.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "29" of the Complaint except admits that by Stipulation and Order entered January 22, 2009, OCC deposited into the CRIS the LC Proceeds in the amount of $80,797,001.

## AFFIRMATIVE DEFENSES

To the extent OCC seeks in the Complaint to be relieved and discharged from any and all liabilities to BTMU, and seeks its costs and disbursements, BTMU denies that such relief is appropriate and BTMU asserts the following Affirmative Defenses:

30.    OCC's claim is barred by doctrines of waiver and estoppel.

31.    OCC's claim is barred by the failure to satisfy conditions precedent.

32.    OCC's claim is barred by the doctrine of unjust enrichment.

33.    The deposit of BTMU LC Proceeds into the CRIS does not relieve OCC of any liability in this action.

6

## STATEMENT OF CLAIM, COUNTERCLAIMS AND CROSS-CLAIMS

### ALLEGATIONS COMMON TO BTMU'S
### AFFIRMATIVE STATEMENT OF CLAIM,
### CROSS-CLAIMS AND COUNTERCLAIMS

### Jurisdiction and Venue

34.    This adversary proceeding arises from and is related to the liquidation proceeding
(the "Liquidation Proceeding") of Lehman Brothers, Inc. ("LBI") pursuant to the Securities
Investment Act of 1970 ("SIPA")  The Court has jurisdiction over the subject matter of this
action, including BTMU's Affirmative Statement of Claim, Cross-Claims and Counterclaims,
under 28 U.S.C. §§ 157, 1332 and 1334 and Fed. R. Bankr. P. 7004(f).

35.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Parties

36.    The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") is a bank organized under
the laws of Japan, with a branch located at 1251 Avenue of the Americas, New York, New York
10020.

37.    Upon information and belief, The Options Clearing Corporation ("OCC") is a
Delaware corporation with its principal place of business located in Chicago, Illinois.

38.    Upon information and belief, Barclays Capital Inc. ("Barclays") is a Connecticut
corporation with its principal place of business located in New York, New York.

39.    Upon information and belief, the Trustee was appointed the trustee of LBI in
accordance with SIPA and pursuant to the Order of the District Court dated September 19, 2008
(the "September 19 Order").

7

## Background

40.     Upon information and belief, LBI was a clearing member ("Clearing Member") of OCC and maintained options and futures accounts at OCC (collectively, the "Account").

41.     In accordance with rules and by-laws of OCC ("OCC Rules"), LBI, as a Clearing Member, could deposit with OCC, assets (the "Margin Assets"), in various forms, including (a) cash, (b) securities, and (c) letters of credit in a form prescribed by OCC, to meet its settlement obligations under the Account (collectively the "Settlement Obligations").

42.     On September 1, 2008, in accordance with the Application and Agreement for Standby Letter of Credit between BTMU and LBI effective September 1, 2008 (the "Reimbursement Agreement"), at the request of LBI, as applicant, BTMU issued a letter of credit No. S015193, in the amount of $35,100,000.00, in favor of OCC, as beneficiary, (the "BTMU LC"). The BTMU LC is governed by Illinois law and incorporates and is subject to the Uniform Letter of Credit Terms dated April 16, 1999 of the Uniform Clearing Group.

43.     Pursuant to the terms of the BTMU LC, upon presentation of a draw demand, BTMU was obligated to wire funds to OCC within 60 minutes.

44.     Upon information and belief, OCC provides each Clearing Member with a margin report that, among other things, advises the Clearing Member of the amount of Margin Assets that are necessary with respect to the Clearing Member's accounts.

45.     The face amount available for OCC to draw under the BTMU LC would frequently change, increasing or decreasing periodically, depending, upon information and belief, on LBI's margin report. However, from September 1, 2008 until the BTMU LC was

8

drawn on September 19, 2008, and notwithstanding the market conditions affecting LBI's

business, the amount available to be drawn under the BTMU LC did not vary from $35,100,000.

46.    On September 19, 2009, upon information and belief, prior to commencement that

day of the Liquidation Proceeding, BTMU received a draw demand by facsimile from OCC for a

draw of the full value of the BTMU LC (the "Draw Demand") even though OCC did not require

the use of any of the proceeds from the BTMU LC for LBI's Settlement Obligations.

47.    BTMU complied with the Draw Demand and, in accordance with the Draw

Demand, wired $35,100,000 (the "BTMU LC Proceeds") to OCC's account at Harris Bank.

48.    Under the Reimbursement Agreement, after a draw by OCC on the BTMU LC,

LBI became obligated to reimburse BTMU, upon demand, for payment of the BTMU LC

Proceeds to OCC plus interest accrued and accruing, fees and costs as may be permissible under

the Reimbursement Agreement.

49.    In addition to the BTMU LC, upon information and belief, on September 19,

2008, OCC drew down, in full, letters of credit issued by other letter of credit issuers, including

Interpleader Defendants Lloyds TSB Bank and Australia & New Zealand Banking Group Ltd.

Upon information and belief, the total proceeds for all such letters of credit drawn on September

19 by OCC with respect to LBI, including the BTMU LC, totaled $80,797,001 (the "LC

Proceeds").

50.    Upon information and belief, shortly after the Draw Demand, the LBI Liquidation

Proceeding was commenced.

51.    OCC contends that it drew the BTMU LC and the other letter of credit issuers in

accordance with OCC Rules that it asserts allow OCC to draw a letter of credit "if the [OCC]

9

determines that such draw is advisable to protect the [OCC], other Clearing Members or the

general public."

52.    However, OCC did not require or use any of the LC Proceeds, including the

BTMU LC Proceeds, to satisfy any Settlement Obligations in the Account on September 19,

2008 or thereafter.

53.    On or about September 20, 2008, LBI, OCC and Barclays executed a Transfer and

Assumption Agreement (the "Assumption Agreement").

54.    The Assumption Agreement provides, among other things:

> Lehman desires to terminate its OCC membership and transfer its
> rights, obligations and liabilities under and in respect of the
> Account pursuant to OCC's membership agreements and the Rules
> to Barclays, and Barclays desires to accept the transfer of all of
> Lehman's rights, obligations and liabilities under and in respect of
> the Account, including with respect to the Clearing Fund deposit
> and all margin deposits held by OCC with respect to the Account
> as of the effective date (the "Effective Date") of the consummation
> of the acquisition and assumption of certain assets and liabilities of
> Lehman by Barclays. (Emphasis supplied)

55.    The Assumption Agreement further provides that LBI "sells, assigns, transfers,

and sets over to Barclays...all of [LBI's] rights, title, interests, powers, privileges, remedies,

obligations, and duties in, to, under, and in respect of" the Account.  Moreover, under the

Assumption Agreement, Barclays "assume[d] and agree[d] to perform each obligation arising out

of or to be performed with respect to the activity" in the Account.

56.    BTMU had no notice of the Assumption Agreement as the agreement was not

made public, or upon information and belief, filed with the Court or placed on the docket in the

Liquidation Proceeding.  BTMU only received notice of the Assumption Agreement almost a

month after the Draw Demand when OCC attached the Assumption Agreement to a letter dated

October 14, 2008 from OCC to the parties to this action (the "October 14, Letter")

57.     On September 22, 2008, OCC publicly announced that Barclays had accepted the

transfer of, and assumed all rights, obligations and liabilities, concerning the Account and that

LBI no longer carried any clearing accounts at OCC.

58.     Thereafter, in a series of letters to other parties, Barclays asserted that pursuant to

the Assumption Agreement, it purchased the Account inclusive of the BTMU LC Proceeds, but

denied that it assumed any corresponding obligation to reimburse BTMU for the BTMU LC

Proceeds delivered to OCC just hours before the Account was transferred.

59.     OCC admits that it has no interest in the BTMU LC Proceeds.

## AS AND FOR ITS STATEMENT OF CLAIM TO THE INTERPLEADER ESCROW

As and for its Statement of Claim to the BTMU LC Proceeds (and any interest thereon)

which were deposited by OCC, together with the other LC Proceeds, into the Court Registry

Investment System (the "Interpleader Escrow"), and in further response to the Complaint in this

action, BTMU alleges as follows:

60.     BTMU incorporates and re-alleges each and every allegation in paragraphs 34-59

above herein.

61.     Upon information and belief, OCC never deposited the BTMU LC Proceeds in

the Account or treated the BTMU LC Proceeds as cash margin of LBI, but rather, at all times

relevant, held the BTMU Proceeds in a suspense account and the BTMU LC Proceeds were not

acquired by Barclays under the Assumption Agreement.

62.    Neither the Trustee, on behalf of the LBI estate, nor Barclays has any interest in the BTMU LC Proceeds.

63.    The OCC admits it has no interest in the BTMU LC Proceeds and, in the October 14, Letter, proposed to return the BTMU LC Proceeds to BTMU.

64.    The BTMU LC Proceeds are readily identifiable and segregated in the Interpleader Escrow.

65.    By reason of the foregoing, OCC holds the BTMU LC Proceeds in constructive trust for BTMU and the Court should impress a lien in BTMU's favor over the Interpleader Escrow to the extent of the BTMU LC Proceeds and the Court should declare that the BTMU LC Proceeds belong to BTMU and direct that the BTMU LC Proceeds, plus interest accrued and accruing, be remitted to BTMU.

## FIRST COUNTERCLAIM AGAINST OCC
### (Breach of Warranty - UCC § 5-110)

In the alternative, for its First Counterclaim against Interpleader Defendant OCC, BTMU alleges as follows:

66.    BTMU incorporates and re-alleges each and every allegation in paragraphs 34-59 above herein.

67.    Under Section 5-117 of the Uniform Commercial Code in force in Illinois (the "UCC"), BTMU, as the paying issuer of the BTMU LC, is subrogated to the rights of LBI as against OCC.

68.    OCC contends that it drew down the BTMU LC in accordance with OCC Rules which it asserts allow OCC to draw a letter of credit "if the [OCC] determines that such draw is advisable to protect the [OCC], other Clearing Members or the general public."

69.    In conjunction with BTMU's honor of the Draw Demand, OCC warranted under UCC § 5-110 that the drawing does not breach any agreement between LBI and OCC.

70.    OCC breached the UCC § 5-110 warranty because the BTMU LC Proceeds were not, upon information and belief, required to meet any of LBI's Settlement Obligations and the draw was not otherwise in accordance with the OCC Rules or necessary to protect OCC, other Clearing Members or the general public as asserted by OCC. In fact, the OCC did not require the use of the BTMU LC Proceeds or any of the other LC Proceeds for LBI's Settlement Obligations or otherwise on September 19, 2008 or thereafter.

71.    BTMU is therefore entitled to judgment against OCC as subrogee of LBI in the amount of $35,100,000 plus interest and costs accrued and accruing as permitted by law.

## SECOND COUNTERCLAIM AGAINST OCC

### (Estoppel)

In the alternative, for its Second Counterclaim against Interpleader Defendant OCC, BTMU alleges as follows:

72.    BTMU incorporates and re-alleges each and every allegation in paragraphs 66-71 above as through fully set forth herein.

73.    The delivery by OCC to BTMU of the Draw Demand was predicated upon OCC's representation that the Draw Demand could be relied upon by BTMU as complying with OCC's obligations under its Rules.

13

74.    The Draw Demand did not comply with OCC's obligations because at the time OCC made the Draw Demand, OCC knew, upon information and belief, among other things, that (i) it would not require the BTMU LC Proceeds to satisfy any of LBI's Settlement Obligations; and (ii) Barclays would be assuming the Account.

75.    BTMU relied to its detriment on OCC's representation that the Draw Demand was in compliance with its right to draw.

76.    BTMU is therefore entitled to judgment against OCC in the amount of $35,100,000 plus interest and costs accrued and accruing as permitted by law.

## THIRD COUNTERCLAIM AGAINST OCC

### (Breach of Contract)

In the alternative, for its Third Counterclaim against Interpleader Defendant OCC, BTMU alleges as follows:

77.    BTMU incorporates and re-alleges each and every allegation in paragraphs 66-76 above as through fully set forth herein.

78.    Under Section 5-117 of the Uniform Commercial Code in force in Illinois ("UCC"), BTMU, as the paying issuer of the BTMU LC, is subrogated to the rights of LBI as against OCC.

79.    Upon information and belief, as set forth in OCC Rules and its agreements with LBI, OCC could make a demand under the BTMU LC for specified purposes only, none of which existed at the time of the draw.

80.    Upon information and belief, OCC made the Draw Demand under the BTMU LC even though there was no risk to OCC, its Clearing Members or to the general public, the

predicate asserted by OCC for the Draw Demand and the OCC did not require the use of any of the LC Proceeds for Settlement Obligations.

81.     The Draw Demand was thereby improper.

82.     OCC is obligated to return to LBI the BTMU LC Proceeds, as none were necessary for any Settlement Obligations of LBI.

83.     OCC is thereby in breach of its obligations to LBI for the improper presentment of the Draw Demand and for its failure to return the BTMU LC Proceeds to LBI.

84.     As a result of OCC's breach of its contract with LBI, BTMU is entitled to judgment against OCC as subrogee of LBI in the amount of $35,100,000 plus interest and costs accrued and accruing as permitted by law.

## FIRST CROSS-CLAIM AGAINST BARCLAYS

### (Breach of Reimbursement Agreement)

In the alternative, for its First Cross-Claim against Interpleader Defendant Barclays, BTMU alleges as follows:

85.     BTMU incorporates and re-alleges each and every allegation in paragraphs 34-59 above herein.

86.     Pursuant to the Reimbursement Agreement, as of the time of the draw, LBI incurred the obligation to reimburse BTMU for amounts paid by BTMU under the BTMU LC.

87.     Under the Assumption Agreement, Barclays assumed LBI's obligation to reimburse BTMU under the Reimbursement Agreement.

88.     Barclays has breached the Reimbursement Agreement by failing and refusing to reimburse BTMU for the BTMU LC Proceeds plus interest and attorneys' fees.

15

89.    BTMU has performed all conditions precedent under the Reimbursement Agreement.

90.    By reason of the foregoing, Barclays has breached the Reimbursement Agreement and BTMU is entitled to judgment against Barclays in the amount of $35,100,000 plus interest and costs accrued and accruing as may be permitted by law.

## SECOND CROSS-CLAIM AGAINST BARCLAYS

### (UCC § 5-108)

In the alternative, for its Second Cross-Claim against Interpleader Defendant Barclays, BTMU alleges as follows:

91.    BTMU incorporates and re-alleges each and every allegation in paragraphs 85-90 above herein.

92.    Under UCC § 5-108, upon OCC's draw of the BTMU LC, BTMU was entitled to reimbursement by LBI in immediately available funds not later than September 19, 2008, the date of BTMU's remittance of the funds pursuant to the Draw Demand.

93.    Pursuant to the Assumption Agreement, Barclays assumed LBI's obligation to BTMU under UCC § 5-108.

94.    Barclays has breached the Reimbursement Agreement by failing and refusing to reimburse BTMU for the BTMU LC Proceeds plus interest and attorneys' fees.

95.    By reason of the foregoing, Barclays has breached the Assumption Agreement, and BTMU is entitled to judgment against Barclays in the amount of $35,100,000, plus interest and costs accrued and accruing as may be permitted by law.

16

## THIRD CROSS-CLAIM AGAINST BARCLAYS

### (Implied Contract/Unjust Enrichment)

In the alternative, for its Third Cross-Claim against Interpleader Defendant Barclays, BTMU alleges as follows:

96.    BTMU incorporates and re-alleges each and every allegation in paragraphs 85-95 above herein.

97.    BTMU had no notice of the Assumption Agreement as the agreement was not made public, or upon information and belief, filed with the Court or placed on the docket in the Liquidation Proceeding. BTMU only received notice of the Assumption Agreement almost a month after the Draw Demand when OCC attached the Assumption Agreement to the October 14 letter.

98.    Barclays asserts that the BTMU LC Proceeds were acquired by it pursuant to the Assumption Agreement on or about the same day that BTMU wired the BTMU LC Proceeds to OCC's account at Harris Bank, as part of the transfer of the Account, but that Barclays did not assume the corresponding obligation to reimburse BTMU.

99.    By accepting the BTMU LC Proceeds without the corresponding liability, under the circumstances of this case, Barclays seeks an unjustified windfall and would be unjustly enriched at BTMU's expense. Equity and good conscience therefore require the Court to imply a contract in the nature of assumpsit pursuant to which Barclays is liable to BTMU for payment under the Reimbursement Agreement and the UCC.

100.    By reason of the foregoing, the Court should find an implied contract between BTMU and Barclays, and BTMU is entitled to judgment against Barclays in the amount of $35,100,000 plus interest and costs accrued and accruing as may be permitted by law.

17

## FOURTH CROSS-CLAIM AGAINST BARCLAYS

### (Breach of Assumption Agreement)

In the alternative, for its Fourth Cross-Claim against Interpleader Defendant Barclays,

BTMU alleges as follows:

101.    BTMU incorporates and re-alleges each and every allegation in paragraphs 85-100 above herein.

102.    On September 19, 2008, OCC made the Draw Demand to draw upon the BTMU LC in full.

103.    BTMU complied with the Draw Demand and, in accordance with the Draw Demand, wired the BTMU LC Proceeds to OCC's account at Harris Bank.

104.    After a draw on the BTMU LC, LBI became obligated to reimburse BTMU for payment of the BTMU LC Proceeds to OCC: (a) under the Reimbursement Agreement; (b) under UCC § 5-108; and (c) under equity.

105.    LBI's obligation to reimburse BTMU for the draw under the BTMU LC is one of the obligations of LBI that was transferred and assumed by Barclays in accordance with the Assumption Agreement.

106.    BTMU is a third-party beneficiary of the Assumption Agreement as the benefit intended to be conferred on BTMU by the Assumption Agreement was direct.

107.    Notwithstanding its agreement to assume LBI's reimbursement obligation to BTMU, Barclays has failed and refused to pay BTMU, asserting that it purchased the Account inclusive of the BTMU LC Proceeds on deposit, without any liability to BTMU under the Assumption Agreement or otherwise.

18

108.    By reason of the foregoing, Barclays has breached the Assumption Agreement and BTMU is entitled to judgment against Barclays in the amount of $35,100,000 plus interest and costs accrued and accruing as permitted by law.

## FIRST CROSS-CLAIM AGAINST TRUSTEE

### (Breach of Reimbursement Agreement)

In the alternative, for its First Cross-Claim against Interpleader Defendant Trustee as representative of LBI, BTMU alleges as follows:

109.    BTMU incorporates and re-alleges each and every allegation in paragraphs 34-59 above as through fully set forth herein.

110.    Pursuant to the Reimbursement Agreement, LBI became obligated to reimburse BTMU for all amounts drawn under the BTMU LC by OCC, plus interest accrued and accruing and costs.

111.    BTMU has performed all conditions precedent under the Reimbursement Agreement.

112.    By reason of the foregoing, BTMU is entitled to judgment under the Reimbursement Agreement in the amount of $35,100,000 plus interest and costs to the extent applicable.

## SECOND CROSS-CLAIM AGAINST TRUSTEE

### (Failure to Reimburse -- Illinois UCC § 5-108)

In the alternative, for its Second Cross-Claim against Interpleader Defendant Trustee, BTMU alleges as follows:

113.   BTMU incorporates and re-alleges each and every allegation in paragraphs 109-112 above as through fully set forth herein.

114.   UCC Section 5-108 requires LBI to reimburse BTMU for the BTMU LC Proceeds paid by BTMU to OCC.

115.   The Trustee has failed and refused to reimburse BTMU in the amount of $35,100,000, plus interest accrued and accruing and costs.

116.   By reason of the foregoing, BTMU is entitled to a judgment under the Reimbursement Agreement in the amount of $35,100,000 plus interest and costs to the extent applicable.

## THIRD CROSS-CLAIM AGAINST TRUSTEE

### (Costs)

For its Third Cross-Claim against Interpleader Defendant Trustee, BTMU alleges as follows:

117.   BTMU incorporates and re-alleges each and every allegation in paragraphs 109-116 above as fully set forth herein.

118.   Pursuant to the Reimbursement Agreement, LBI is obligated to reimburse BTMU for all costs and expenses BTMU incurs in collection of all amounts owed under the Reimbursement Agreement.

119.   By reason of the foregoing, BTMU is entitled to judgment in an amount to be determined for the costs and expenses of this action.

WHEREFORE, Interpleader Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd. demands judgment:

(A)     Pursuant to its Affirmative Defense and Statement of Claim to the

Interpleader Escrow, in its favor and against all adverse Interpleader

Defendants declaring that the BTMU LC Proceeds belong to BTMU and

requiring the distribution of the BTMU LC Proceeds (plus interest) that

have been, should be or will be deposited in the CRIS as aforesaid to

BTMU;

(B)     In the alternative, pursuant to its First through Third Counterclaims

against OCC, judgment against OCC in the amount of the BTMU LC

Proceeds plus interest and costs accrued and accruing as permitted by law;

(C)     In the alternative, pursuant to its First through Fourth Cross-Claims

against Barclays, judgment against Barclays in the amount of the BTMU

LC Proceeds plus interest and costs accrued and accruing as permitted by

law;

(D)     In the alternative, pursuant to its First and Second Cross-Claims against

the Trustee, fixing BTMU's claim against the LBI estate in the amount of

the BTMU LC Proceeds plus interest and cash accrued and accruing as

permitted by law;

(E)     Pursuant to its Third Cross-Claim, against the Trustee, fixing BTMU's

claim against the LBI estate for costs and expenses of collection; and

(F)    Awarding if such other and further relief as this Court deems just and

proper.

Dated: February 6, 2009
       New York, New York

OTTERBOURG, STEINDLER, HOUSTON &
  ROSEN, P.C.

By:    /s/ Peter Feldman
       Peter Feldman
       John Bougiamas
230 Park Avenue
New York, New York 10169
(212) 661-9100

Attorneys for the Interpleader-Defendant
The Bank of Tokyo-Mitsubishi UFJ, Ltd.

1202225