# EXHIBIT C

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
Harold G. Levison
Jonathan E. Minsker
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Interpleader Defendant*
  *Lloyds TSB Bank plc*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                      :

LEHMAN BROTHERS INC.,     :     Case No.: 08-01420 (JMP) SIPA
                       :

           Debtor.     :
------------------------------------------------------------x
------------------------------------------------------------x
THE OPTIONS CLEARING CORPORATION,  :

       Interpleader Plaintiff,    :

             v.         :     Adv. Proc. No. 08-01759 (JMP)
                       :

BARCLAYS CAPITAL INC., AUSTRALIA   :
NEW ZEALAND BANKING GROUP LTD.,  :
BANK OF TOKYO-MITSUBISHI UFJ, LTD.,  :
LLOYDS TSB BANK plc, and JAMES W.  :
GIDDENS, in his capacity as Trustee for Lehman  :
Brothers Inc.,              :
                       :
       Interpleader Defendants.  :
------------------------------------------------------------x

## ANSWER, STATEMENT OF CLAIM,
## COUNTERCLAIMS AND CROSS-CLAIMS OF LLOYDS TSB BANK PLC

      Interpleader Defendant Lloyds TSB Bank plc ("Lloyds"), pursuant to Fed. R. Civ. P. 8

and 22, Federal Bankruptcy Rules 7008 and 7022 and the Stipulation and Order Regarding

Pleading Schedule and Procedure, dated February 3, 2009, hereby answers, upon information and belief, the interpleader complaint (the "Complaint") filed by The Options Clearing Corporation (the "OCC"), submits its Statement of Claim and asserts counterclaims and cross-claims, as follows:

1.     Paragraph 1 of the Complaint does not contain factual allegations as to which a response is required inasmuch as it contains the OCC's characterization of the nature of this proceeding and the purpose for which the OCC purportedly initiated it, but to the extent a response is required, Lloyds denies the allegations contained in paragraph 1 of the Complaint.

2.     Paragraph 2 of the Complaint does not contain factual allegations as to which a response is required inasmuch as it contains the OCC's characterization of the nature of this proceeding and the purpose for which the OCC purportedly initiated it, but to the extent a response is required, Lloyds denies the allegations contained in paragraph 2 of the Complaint.

3.     Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint.

4.     Lloyds states that paragraph 4 of the Complaint contains legal conclusions as to which no response is required, but to the extent a response is required, Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint.

5.     Lloyds states that paragraph 5 of the Complaint contains legal conclusions as to which no response is required, but to the extent a response is required, Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

6.      Lloyds states that paragraph 6 of the Complaint contains legal conclusions as to which no response is required, but to the extent a response is required, Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

7.      Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8.      Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint.

9.      Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

10.      Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint.

11.      Lloyds admits the allegations contained in paragraph 11 of the Complaint.

12.      Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

13.      Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint.

14.      Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint, except states that on September 19, 2008, the OCC drew down on Letter of Credit No. NYSB2008730 issued by Lloyds in the amount of $25,000,000.00 (the "Lloyds LOC"), and denies that the OCC's draw down of the Lloyds LOC constituted a valid exercise of the OCC's rights.

15.    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint, except states that on September 19, 2008 the United States District Court for the Southern District of New York entered an order and respectfully refers the Court to that order for the contents thereof.

17.    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint, except states that on September 19, 2008 the Bankruptcy Court for the Southern District of New York entered an order and respectfully refers the Court to that order for the contents thereof.

18.    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19.    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint, except states that the OCC has communicated with Lloyds, including by letter dated October 14, 2008, and respectfully refers the Court to the letter for the contents thereof

20.    Lloyds denies the allegations contained in paragraph 20 of the Complaint, except states that on October 6, 2008 Lloyds's counsel sent a letter to the OCC, and respectfully refers the Court to the letter for the contents thereof.

21.    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained paragraph 21 of the Complaint.

22.    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

- 4 -

23.     Lloyds denies knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 23 of the Complaint.

24.     Lloyds denies knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 24 of the Complaint.

25.     Lloyds denies knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 25 of the Complaint, except states the OCC has
informed Lloyds that the OCC will not return the Lloyds LOC proceeds to Lloyds.

26.     Lloyds states that paragraph 26 of the Complaint contains legal conclusions to
which no response is required, but to the extent a response is required, Lloyds denies the
allegations of paragraph 26 of the Complaint.

27.     Lloyds states that paragraph 27 of the Complaint contains legal conclusions to
which no response is required, but to the extent a response is required, Lloyds denies the
allegations of paragraph 27 of the Complaint.

28.     Lloyds states that paragraph 28 of the Complaint contains legal conclusions to
which no response is required, but to the extent a response is required, Lloyds denies the
allegations of paragraph 28 of the Complaint.

29.     Lloyds denies knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 29 of the Complaint, except states that, pursuant to a
January 22, 2009 Stipulation and Order Regarding the Deposit of Funds, the parties agreed for
the OCC to deposit into the Court's Registry Investment System certain letter of credit proceeds
in the amount of $80,797,001, and that such proceeds were deposited on or about February 2,
2009.

- 5 -

## AFFIRMATIVE DEFENSES

1.    The OCC's claim is barred by the doctrine of estoppel.

2.    The OCCs claim is barred by the doctrine of waiver.

3.    The OCC's claim is barred by the failure to satisfy conditions precedent.

4.    The OCC's claim is barred by the doctrine of unjust enrichment.

## STATEMENT OF CLAIM

### Preliminary Statement

1.    This action arises out of Lloyds's issuance of a letter of credit in the amount of $25,000,000.00 at the request of applicant Lehman Brothers Inc. ("LBI") and for the benefit of the OCC.  On the same day that LBI commenced insolvency proceedings in this Court under the Securities Investor Protection Act (SIPA), the OCC drew down on the full amount of the Lloyds LOC and placed the proceeds in a "suspense" account, even though there were no obligations outstanding from LBI to the OCC with respect to accounts maintained at the OCC for the benefit of LBI (the "Account").  The day after the OCC drew down on the Lloyds LOC, LBI, the OCC, and Barclays Capital, Inc. ("Barclays") executed a Transfer and Assumption Agreement (the "Assumption Agreement"), which transferred the Account, and all liabilities and obligations relating thereto, to Barclays, effective as of the close of business the previous day.

2.    Because there were no outstanding obligations in the Account when the OCC drew down on the Lloyds LOC, because the proceeds of the Lloyds LOC were never placed into the Account and because the proceeds of the Lloyds LOC were instead placed in a "suspense" account, Lloyds is entitled to the return of the entirety of the proceeds of the Lloyds LOC, together with interest and attorneys' fees.

Statement of Facts

3.    On October 29, 2002, Lloyds and LBI entered into a Reimbursement Agreement

(the "Reimbursement Agreement") that referred to the issuance by Lloyds of standby letters of

credit for the account of LBI.  The Reimbursement Agreement provides that, among other things,

LBI will reimburse Lloyds, on demand, for any amounts drawn on letters of credit issued by

Lloyds for the account of LBI, and for all charges, costs, expenses, liability and obligations,

including reasonable attorneys' fees, incurred by Lloyds in connection with enforcement of its

remedies under the Reimbursement Agreement.

4.    On September 1, 2008, Lloyds issued the Lloyds LOC in favor of the OCC in the

initial amount of $60,000,00.  On September 9, 2008, the Lloyds LOC was amended to reduce

the available credit to $25,000,000.  Pursuant to the Terms of the Lloyds LOC, Lloyds was

obligated to wire funds to the OCC within 60 minutes of the presentation by the OCC of a

conforming demand for payment.  The Lloyds LOC is governed by Illinois law and incorporates

and is subject to the Uniform Clearing Group's Uniform Letter of Credit Terms, dated April 16,

1999.

5.    On September 19, 2008, the OCC issued a demand to Lloyds for payment of the

full amount of the Lloyds LOC.  The OCC claimed in an October 14, 2008 letter transmitted to

Lloyds and others that it had the right, under OCC Rule 604(c), to draw upon a letter of credit

deposited as margin "if the [OCC] determines that such draw is advisable to protect the [OCC],

other Clearing Members or the general public."  Notwithstanding the OCC's claim, there were no

amounts owed by LBI to the OCC with respect to the Account at the time the OCC drew down

the Lloyds LOC.

-7-

6.     On September 19, 2008, in response to the OCC's demand for payment of the

Lloyds LOC, Lloyds issued payment to the OCC of $25,000,000.00 and, on that same date, sent

a formal demand for reimbursement to LBI.

7.     On September 19, 2008, LBI commenced insolvency proceedings in this Court

under the SIPA, and the Court entered an Order, dated September 19, 2008, authorizing the sale

of substantially all of LBI's operating assets to Barclays.

8.     On September 20, 2008, LBI and Barclays entered into the Assumption

Agreement, a copy of which is attached hereto as Exhibit A.  The Assumption Agreement states

that:

> Lehman desires to terminate its OCC membership and transfer its rights,
> *obligations and liabilities* under and in respect of the Account pursuant to OCC's
> membership agreements and the [OCC's] Rules to Barclays, and Barclays desires
> to accept the transfer of all of Lehman's rights, *obligations and liabilities* under
> and in respect of the Account, including with respect to the Clearing Fund deposit
> and all margin deposits held by OCC with respect to the Account as of the
> effective date (the "Effective Date") of the consummation of the acquisition and
> assumption of certain assets and liabilities of Lehman by Barclays[.]

(Ex. A, preamble (emphasis added).)

9.     Thus, pursuant to the Assumption Agreement, LBI transferred to Barclays, and

Barclays accepted, "all of [LBI]'s rights, title, interests, powers, privileges, remedies, *obligations,*

*and duties*" in respect of the Account that existed as of the close of business on September 19,

2008.  (Ex. A, Section 1(a) (emphasis added).)

10.     Lloyds did not have notice of the Assumption Agreement inasmuch as the

agreement was not made public and was not disclosed to the Court or placed on the docket in

LBI's SIPA proceeding.  Lloyds first received notice of the Assumption Agreement when the

OCC included the agreement with its October 14, 2008 letter to the parties.

- 8 -

11.     On September 22, 2008, the OCC issued a memorandum stating that Barclays

"has accepted the transfer of, and assumed all rights, obligations and liabilities of [the Account],"

and that LBI "no longer carries any clearing accounts at OCC."

12.     By letter dated October 6, 2008, counsel to Lloyds demanded that the OCC return

the Lloyds LOC proceeds to Lloyds.

13.     By letter dated October 14, 2008, the OCC advised that the Lloyds LOC proceeds

were being held in a "suspense" account, along with the proceeds of other letters of credit drawn

by the OCC, and requested a meeting among all interested parties to attempt to resolve the

matter.  The OCC has acknowledged that it "has no interest" in the proceeds of the Lloyds LOC

(Complaint, ¶ 26), and suggested in its October 14, 2008 letter to the parties that the proceeds of

the letters of credit drawn by the OCC be returned to the issuing banks.

14.     By email dated October 30, 2008, counsel to the OCC reiterated its request to

convene a meeting to discuss resolution of this matter.

15.     By email dated November 7, 2008, counsel to Barclays informed the parties that

Barclays believed that the subject letter of credit proceeds, including the Lloyds LOC proceeds,

had been transferred to Barclays pursuant to the Assumption Agreement, but that Barclays did

not assume the accompanying reimbursement obligation under the Assumption Agreement.

Barclays concluded its email by stating that "we do not see a need for a meeting to discuss this

matter."

16.     By email dated November 14, 2008, the SIPA Trustee advised the parties that it

disagreed with Barclays position, and that it was the SIPA Trustee's view that "Barclays' position

is not consistent with the Transfer and Assumption Agreement."

17.    By letter dated December 4, 2008, Barclays reiterated to the parties its belief that Barclays is entitled to all letter of credit proceeds that are the subject of this action, but that it did not assume the obligation to reimburse the issuers.

18.    That same day, the OCC initiated this interpleader action.

19.    On January 22, 2009, the Court entered a Stipulation and Order Regarding the Deposit of Funds, pursuant to which the parties agreed that the OCC may deposit the Lloyds LOC proceeds, and certain other letter of credit proceeds, into the Court Registry Investment System, subject to further order of the Court. On February 2, 2009, those proceeds, in the amount of $ 80,797,001.00, were deposited into the Court Registry Investment System.

<u>The Proceeds of the Lloyds LOC Belong to Lloyds</u>

20.    Because there were no obligations or amounts owed by LBI to the OCC with respect to the Account at the time the OCC drew down on the Lloyds LOC, the proceeds of the Lloyds LOC were never applied to, and never became part of, the Account, and thus never belonged to LBI. To that end, as the OCC has acknowledged, the OCC has no interest in the proceeds of the Lloyds LOC, did not deposit such proceeds in the Account, and instead placed those proceeds into a "suspense" account. Moreover, the Lloyds LOC proceeds cannot belong to LBI because, as the OCC has proclaimed, and as LBI has acknowledged, LBI "no longer carries any clearing accounts at OCC."

21.    Nor do the proceeds in the suspense account belong to Barclays. Barclays only acquired assets in the Account pursuant to the Assumption Agreement, and did not acquire any assets held by the OCC in a segregated account that were unrelated to any margin account liabilities of LBI.

- 10 -

22.    Thus, the funds in the "suspense" account were improperly drawn by the OCC
and belong to Lloyds, and are being held in constructive trust for the benefit of Lloyds.

WHEREFORE, Lloyds demands judgment impressing a lien in Lloyds' favor over the
funds deposited by the OCC into the Court's Registry Investment System to the extent of the
Lloyds LOC proceeds, plus legal interest, ordering the distribution of such amounts to Lloyds,
and awarding such further relief as the Court deems just and proper.

## COUNTERCLAIMS AGAINST THE OCC

### Jurisdiction and Venue

1.    This adversary proceeding arises from and is related to the liquidation
proceedings of LBI, captioned *In re Lehman Brothers Inc.*, Case No. 08-1420, which is currently
pending in the United States Bankruptcy Court for the Southern District of New York pursuant
to SIPA.  The allegations in these counterclaims are made upon information and belief, except as
to paragraph 4 hereof.  These counterclaims are asserted in the alternative in the event the Court
determines in the underlying interpleader action that Lloyds is not entitled to the proceeds of the
Lloyds LOC.

2.    The Court has jurisdiction over the subject matter of this action under 28 U.S.C.
§§ 157, 1332 and 1334.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Parties

4.    Counterclaim Plaintiff Lloyds is a banking corporation organized under the laws
of the United Kingdom, with an office located in New York, New York.

5.    Counterclaim Defendant OCC is a Delaware corporation with its principal place
of business located in Chicago, Illinois.

<u>Count I</u>

(Breach of Contract)

6.      Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Counterclaim as if fully stated herein.

7.      The OCC demanded payment under the Lloyds LOC even though there were no obligations owed by LBI to the OCC with respect to the Account, and thus no risk to the OCC, its Clearing Members or to the general public posed by LBI's SIPA filing.  Thus, the OCC's demand for payment on the Lloyds LOC was wrongful.

8.      LBI entered into a contract with the OCC, pursuant to which the OCC was obligated not to make a wrongful demand for payment under the Lloyds LOC, and was obligated to return to LBI any excess funds held for the benefit of LBI.

9.      The OCC breached that contract by making a wrongful demand for payment under the Lloyds LOC, and by failing to pay to LBI the $25,000,000.00 drawn by the OCC pursuant to the Lloyds LOC.

10.     LBI has performed all material conditions of its contract with the OCC.

11.     Pursuant to §5-117(a) of the Illinois Uniform Commercial Code, Lloyds, as the paying issuer of the Lloyds LOC, is subrogated to the rights of LBI as against the OCC.

12.     As a result of the OCC's breach of its contract with LBI, Lloyds has been damaged in an amount to be determined at trial.

<u>Count II</u>

(Breach of Warranty -- Illinois UCC §5-110)

13.     Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 and 7 of this Counterclaim as if fully stated herein.

14.    Pursuant to §5-110 of the Illinois Commercial Code, by demanding payment pursuant to the Lloyds LOC, the OCC warranted to LBI that the contract between LBI and the OCC permitted payment of $25,000,000.00 to the OCC.

15.    The OCC breached that warranty because there were no amounts outstanding or obligations owed by LBI to the OCC with respect to the Account at the time the OCC demanded payment from Lloyds pursuant to the Lloyds LOC.

16.    Pursuant to §5-117(a) of the Illinois Uniform Commercial Code, Lloyds, as the paying issuer of the Lloyds LOC, is subrogated to the rights of LBI as against the OCC.

17.    As a result of the OCC's breach of the warranty set forth in §5-110 of the Illinois Uniform Commercial Code, Lloyds has been damaged in an amount to be determined at trial.

<u>Count III</u>

(Equitable Estoppel)

18.    Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Counterclaim as if fully stated herein.

19.    At the time the OCC demanded payment on the Lloyds LOC, the OCC had actual knowledge that there were no obligations outstanding under the Account, and thus no risk to the OCC, its Clearing Members or to the general public posed by LBI's SIPA filing. Indeed, the OCC's failure to deposit the Lloyds LOC proceeds in the Account, maintenance of those proceeds in a "suspense" account, acknowledgement that it has no interest in the Lloyds LOC proceeds, and subsequent initiation of this interpleader action constitutes an admission that its demand for payment pursuant to the Lloyds LOC was wrongful.

20.    At the time the OCC demanded payment on the Lloyds LOC, the OCC also knew that the Lloyds LOC required Lloyds to comply with a conforming payment demand within 60

- 13 -

minutes of receiving such a demand. Thus, the OCC knew that its wrongful demand for payment would cause Lloyds to mistakenly believe that the OCC's demand was authorized by the underlying agreements between the OCC and LBI, and that such wrongful demand would cause Lloyds to detrimentally change its position by making a payment of $25,000,000.00 to the OCC.

21.    Without knowledge of the wrongful nature of the OCC's demand for payment, Lloyds changed its position to its detriment by honoring the demand in accordance with its obligations under the Lloyds LOC.

22.    By reason of the foregoing, Lloyds has been damaged in an amount to be determined at trial.

WHEREFORE, Lloyds demands judgment against the OCC:

(i)    on counts I and II, for compensatory damages in an amount to be determined at trial, plus interest and the costs incurred by Lloyds in this action, including reasonable attorneys' fees;

(ii)    on count III, for compensatory damages in an amount to be determined at trial, plus interest; and

(iii)    on all counts, granting such further relief as the Court deems just and proper.

<u>CROSS-CLAIMS AGAINST BARCLAYS</u>

<u>Jurisdiction and Venue</u>

1.    This adversary proceeding arises from and is related to the liquidation proceedings of LBI, captioned *In re Lehman Brothers Inc.*, Case No. 08-1420, which is currently pending in the United States Bankruptcy Court for the Southern District of New York pursuant to SIPA. The allegations in these cross-claims are made upon information and belief, except as to paragraphs 4 and 10 hereof. These cross-claims are asserted in the alternative in the event the

Court determines in the underlying interpleader action that Lloyds is not entitled to the proceeds of the Lloyds LOC, that the proceeds of the Lloyds LOC became part of the Account, and that such proceeds were transferred to Barclays pursuant to the Assumption Agreement.

2.    The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 157, 1332 and 1334.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>The Parties</u>

4.    Cross-Claim Plaintiff Lloyds is a banking corporation organized under the laws of the United Kingdom, with an office located in New York, New York.

5.    Cross-Claim Defendant Barclays is a Connecticut corporation with its principal place of business located in New York, New York.

<u>Count I</u>

(Breach of Reimbursement Agreement)

6.    Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Cross-Claim as if fully stated herein.

7.    Pursuant to the Reimbursement Agreement, LBI incurred the obligation to reimburse Lloyds for amounts paid by Lloyds on letters of credit issued by Lloyds for the account of LBI.

8.    In the event the Court determines that the proceeds of the Lloyds LOC became part of the Account and were transferred to Barclays pursuant to the Assumption Agreement, then the obligation under the Reimbursement Agreement to reimburse Lloyds for amounts drawn on letters of credit issued to secure obligations with respect to the Account was assumed by Barclays pursuant to the Assumption Agreement.

9.      Barclays has breached the Reimbursement Agreement by failing and refusing to reimburse Lloyds in the amount of $25,000,000.00, plus interest and attorneys' fees.

10.     Lloyds has performed all conditions precedent under the Reimbursement Agreement.

11.     As a result of Barclays' breach of the Reimbursement Agreement, Lloyds has been damaged in an amount to be determined at trial.

<u>Count II</u>

(Failure to Reimburse -- Illinois UCC §5-108)

12.     Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Cross-Claim as if fully stated herein.

13.     In the event the Court determines that the proceeds of the Lloyds LOC became part of the Account and were transferred to Barclays pursuant to the Assumption Agreement, then the obligation to reimburse Lloyds for the amount drawn under the Lloyds LOC under Section 5-108 of Illinois Uniform Commercial Code were transferred to Barclays pursuant to the Assumption Agreement.

14.     Barclays has failed and refused to reimburse Lloyds in the amount of $25,000,000.00.

15.     As a result, Lloyds has been damaged in an amount to be determined at trial.

<u>Count III</u>

(Unjust Enrichment)

16.     Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Cross-Claim as if fully stated herein.

17.    In the event the Court determines that the proceeds of the Lloyds LOC became part of the Account and were transferred to Barclays pursuant to the Assumption Agreement, then Barclays will be unjustly enriched, at Lloyds's expense, if it is permitted to keep $25,000,000.00 in proceeds of the Lloyds LOC without also accepting the accompanying obligation under the Reimbursement Agreement and the Assumption Agreement to reimburse Lloyds for that amount.

18.    Equity and good conscience compels Barclays to return to Lloyds any proceeds of the Lloyds LOC that it receives, plus legal interest.

19.    Lloyds has no adequate remedy at law.

<u>Count IV</u>

(Breach of Assumption Agreement)

20.    Lloyds incorporates its Statement of Claim and paragraphs 1 through 15 of this Cross-Claim as if fully stated herein.

21.    The Assumption Agreement constitutes a valid and binding contract between LBI and Barclays.

22.    The Lloyds LOC was drawn down by the OCC the day before execution of the Assumption Agreement.

23.    In the event the Court determines that the proceeds of the Lloyds LOC became part of the Account and were transferred to Barclays pursuant to the Assumption Agreement, then the obligation to reimburse Lloyds also was transferred to Barclays.

24.    Thus, the Assumption Agreement was intended for the benefit of Lloyds.

25.    The benefit intended to be conferred on Lloyds by the Assumption Agreement was direct.

- 17 -

26.    Barclays breached the Assumption Agreement by wrongfully refusing to reimburse Lloyds for payment of the Lloyds LOC.

27.    As a result of Barclays' breach of the Assumption Agreement, Lloyds has been damaged in an amount to be determined at trial.

WHEREFORE, Lloyds demands judgment against Barclays:

(i)    on counts I, II and IV, for compensatory damages in an amount to be determined at trial, plus interest and the costs incurred by Lloyds in this action, including reasonable attorneys' fees;

(ii)    on count III, for compensatory damages in an amount to be determined at trial, plus interest; and

(iii)    on all counts, granting such further relief as the Court deems just and proper.

## CROSS-CLAIMS AGAINST THE SIPA TRUSTEE

### Jurisdiction and Venue

1.    This adversary proceeding arises from and is related to the liquidation proceedings of LBI, captioned *In re Lehman Brothers Inc.*, Case No. 08-1420, which is currently pending in the United States Bankruptcy Court for the Southern District of New York pursuant to SIPA. The allegations in these cross-claims are made upon information and belief, except as to paragraphs 4 and 9 hereof. These cross-claims are asserted in the alternative in the event the Court determines in the underlying interpleader action that Lloyds is not entitled to the proceeds of the Lloyds LOC and that Barclays did not assume the obligation to reimburse Lloyds under the Assumption Agreement.

2.    The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 157, 1332 and 1334.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Parties

4.  Cross-Claim Plaintiff Lloyds is a banking corporation organized under the laws of the United Kingdom, with an office located in New York, New York.

5.  Cross-Claim Defendant James W. Gidden was appointed by the United States District Court for the Southern District of New York as the trustee for the liquidation of LBI's business under SIPA (the "SIPA Trustee").

## Count I

### (Breach of Reimbursement Agreement)

6.  Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Cross-Claim as if fully stated herein.

7.  Pursuant to the Reimbursement Agreement, LBI incurred the obligation to reimburse Lloyds for amounts paid by Lloyds on letters of credit issued by Lloyds for the account of LBI.

8.  In the event the Court determines that Barclays did not assume LBI's obligation to reimburse Lloyds, then the SIPA Trustee has breached the Reimbursement Agreement by failing and refusing to reimburse Lloyds in the amount of $25,000,000.00, plus interest and attorneys' fees.

9.  Lloyds has performed all conditions precedent under the Reimbursement Agreement.

10.  As a result of the SIPA Trustee's breach of the Reimbursement Agreement, Lloyds has been damaged in an amount to be determined at trial.

Count II

(Failure to Reimburse -- Illinois UCC §5-108)

11.    Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Cross-Claim as if fully stated herein.

12.    In the event the Court determines that Barclays did not assume LBI's obligation to reimburse Lloyds, then Section 5-108 of Illinois Uniform Commercial Code requires LBI to reimburse Lloyds for the $25,000,000.00 paid by Lloyds to the OCC under the Lloyds LOC.

13.    The SIPA Trustee has failed and refused to reimburse Lloyds in the amount of $25,000,000.00.

14.    As a result, Lloyds has been damaged in an amount to be determined at trial.

Count III

(Unjust Enrichment)

15.    Lloyds incorporates its Statement of Claim and paragraphs 1 through 5 of this Cross-Claim as if fully stated herein.

16.    In the event the Court determines that Barclays did not assume LBI's obligation to reimburse Lloyds, then LBI's estate will be unjustly enriched, at Lloyds's expense, if it is permitted to keep $25,000,000.00 in proceeds of the Lloyds LOC, or to have received consideration from Barclays in exchange for the transfer of the right to receive the proceeds of the Lloyds LOC, without reimbursing Lloyds.

17.    Equity and good conscience compels the SIPA Trustee to return to Lloyds any proceeds of the Lloyds LOC that LBI's estate receives, or any consideration in respect of such proceeds, plus legal interest.

18.    Lloyds has no adequate remedy at law.

- 20 -

WHEREFORE, Lloyds demands judgment against the SIPA Trustee:

(i)     on counts I and II, for compensatory damages in an amount to be determined at trial, plus interest and the costs incurred by Lloyds in this action, including reasonable attorneys' fees;

(ii)    on count III, for compensatory damages in an amount to be determined at trial, plus interest; and

(iii)   on all counts, granting such further relief as the Court deems just and proper.

Dated: New York, New York
      February 6, 2009

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____
      Harold G. Levison
      Jonathan E. Minsker
1633 Broadway
New York, New York 10019-6799
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Interpleader Defendant
Lloyds TSB Bank plc*

# Exhibit A

## TRANSFER AND ASSUMPTION AGREEMENT

Agreement (the "Agreement") executed on September 20, 2008 with effect from and as of the close of business on Friday, September 19, 2008 among Lehman Brothers Inc. ("Lehman"), The Options Clearing Corporation, ("OCC", and Barclays Capital Inc. ("Barclays"). All defined terms (the first instance of which is indicated by underlining) not defined herein shall have the meaning assigned to such terms in OCC's By-Laws or Rules (collectively, the "Rules").

### WITNESSETH:

WHEREAS, Lehman is a clearing member of OCC and carries one or more accounts (nos. 74, 84 and 273 (collectively the "Account")) that contain certain positions in cleared contracts into which Lehman has entered;

WHEREAS, Lehman maintains Clearing Fund and margin deposits with OCC;

WHEREAS, Lehman desires to terminate its OCC membership and transfer its rights, obligations and liabilities under and in respect of the Account pursuant to OCC's membership agreements and the Rules to Barclays, and Barclays desires to accept the transfer of all of Lehman's rights, obligations and liabilities under and in respect of the Account, including with respect to the Clearing Fund deposit and all margin deposits held by OCC with respect to the Account as of the effective date (the "Effective Date") of the consummation of the acquisition and assumption of certain assets and liabilities of Lehman by Barclays;

WHEREAS, OCC agrees to permit the transfer contemplated in the previous whereas clause;

NOW, THEREFORE, it is hereby agreed as follows:

1.    Transfer.

(a)    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lehman hereby sells, assigns, transfers, and sets over to Barclays, without recourse or without representation or warranty (other than as expressly provided herein), all of Lehman's rights, title, interests, powers, privileges, remedies, obligations, and duties in, to, under, and in respect of the Account, as of the Effective Date including with respect to: (i) the Clearing Fund deposit; (ii) all margin deposits held by OCC with respect to the Account; (iii) all settlement obligations with regard to transactions in cleared contracts; and (iv) all rights and obligations in respect of exercises of option contracts and assignments of such exercises.

(b)    As of the Effective Date, Barclays hereby accepts such sale, assignment, and transfer of the Account, agrees to be bound by and receive the benefits of maintaining such Account, and assumes and agrees to perform each obligation arising out of or to be performed with respect to the activity in the Account.

2.    Representations and Warranties.

(a)    Lehman and Barclays each hereby represents and warrants to the other and to OCC as follows:

(i)    it is duly organized and validly existing and has the power and legal right to execute and deliver this Agreement and to transfer or assume the rights and obligations being transferred hereunder, as the case may be;

(ii)    the execution, delivery and performance of this Agreement have been duly authorized by all necessary action; and

(iii)    this Agreement is legal, valid and binding agreement, enforceable against it in accordance with its terms.

(b)    Lehman hereby represents and warrants that it is the legal and beneficial owner of the interest being transferred by it hereunder and that such interest is free and clear of any adverse claim (except for such claims or interests of OCC).

(c)    Barclays hereby: (i) represents and warrants that it has received such documents and other information as it has deemed appropriate to make its own credit analysis and decision to enter into this Agreement; (ii) agrees that it will, independently and without reliance upon Lehman or OCC and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions with respect to the Account; and (iii) agrees that it will perform in accordance with their terms all of the obligations that by the terms of the Rules and any related agreements entered into between it and OCC, are required to be performed by it.

3.    Effective Date.  This Agreement is being entered into on September 20, 2008, following the order of the United States Bankruptcy Court for the Southern District of New York (Manhattan) (Case No. 08-13555) approving execution of the Asset Purchase Agreement dated as of September 16, 2008, as amended on or before September 20, 2008, by Lehman and Barclays and the other parties thereto (the "Asset Purchase Agreement"); but this Agreement shall be effective as of close of business on the Effective Date.

4.    Rights.  As of the Effective Date, all rights, obligations and liabilities of Barclays pursuant to OCC's membership agreements and the Rules shall apply to the Account.

5.    OCC Consent.  OCC hereby consents to the transfer, assignment, assumption and release effected pursuant to this Agreement.

6.    Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the conflict of law principles thereof.

7.    Amendments and Waivers. This Agreement may be amended or any of
its provisions waived only by a written instrument executed and delivered by each of the
parties hereto.

8.    Counterparts. This Agreement may be executed in any number of
counterparts and by different parties hereto in separate counterparts, each of which when
so executed shall be deemed to be an original and all of which taken together shall
constitute one and the same agreement.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this
Agreement by their duly authorized officers as of the date set forth above.

*James W. Giddens as SIPA Trustee for*

~~LEHMAN BROTHERS, INC.~~ *Lehman Brothers, Inc.*

By: _____

Print Name: *James B. Kobak, Jr.*

Title: *Attorney for Trustee*


BARCLAYS CAPITAL INC.

By: _____

Print Name: *Gerard S. LaRocca*

Title: _____


THE OPTIONS CLEARING CORPORATION

By: _____

Print Name: *WILLIAM H. NAVIN*

Title: *EXECUTIVE VP*


CH 4434673v.2